**FOLEY & LARDNER LLP**
Salvatore A. Barbatano
90 Park Avenue
New York, NY 10016
Telephone: (212) 682-7474
Facsimile: (212) 687-2329

Judy A. O'Neill (admitted *Pro Hac Vice*)
500 Woodward Ave., Suite 2700
Detroit, MI 48226
Telephone: (313) 234-7100
Facsimile: (313) 234-2800

*Attorneys for PBR Tennessee, Inc.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
                                                           )
In re:                                                     )
                                                           )       Chapter 11
DELPHI CORPORATION, et al.,                                )       Case No. 05-44481 (RDD)
                                                           )       Jointly Administered
         Debtors.                                          )
                                                           )
-----------------------------------------------------------x

**PBR TENNESSEE, INC'S OBJECTION TO ASSUMPTION OF EXECUTORY CONTRACT PURSUANT AND SUBJECT TO THE TERMS OF DEBTORS' FIRST AMENDED JOINT PLAN OF REORGANIZATION (AS MODIFIED) AND TO CONFIRMATION OF THE PLAN TO THE EXTENT SUCH PLAN INCLUDES ASSUMPTION OF THE EXECUTORY CONTRACT**

**(REDACTED VERSION)**

PBR Tennessee, Inc., formerly known as PBR Automotive Knoxville, Inc. ("PBR"), by its attorneys Foley & Lardner LLP, hereby submits this Objection (the "Objection") to the assumption of a Limited Liability Company Agreement, dated September 26, 1996 (the "JVA") and the assignment of the JVA to the purchaser, pursuant and subject to the First Amended Joint Plan of Reorganization of Delphi Corporation And Certain Affiliates, Debtors And Debtors In Possession (As Modified), dated June 1, 2009 (Docket No. 17032) (hereinafter, the "Plan").

ORLA_1388501.6

PBR objects to the assumption and assignment of the JVA by Delphi Tennessee and to confirmation of the Plan to the extent that it includes the assumption and assignment of the JVA. Accordingly, and in support of its Objection, PBR states as follows:

## STATEMENT OF FACTS

### A.     The JV Company/Structure

1. PBR Knoxville LLC, formerly known as PBR Automotive USA L.L.C. (the "JV Company") is a limited liability company formed under the laws of the state of Delaware, and in particular Chapter 18 of Title 6 of the Delaware Code, referred to as the Delaware Limited Liability Company Act (the "Delaware LLC Act").

2. Delphi Tennessee, which is one of the debtors under the Plan, and PBR are the only two members of the JV Company; ███████████████████████████████████████████████████████████████.

3. Delphi Tennessee is a wholly owned subsidiary of Delphi Automotive Stystems LLC ("Delphi Automotive"), another debtor under the Plan.

4. Delphi Automotive is a wholly owned subsidiary of Delphi Corporation ("Delphi"), the ultimate parent of both companies and the primary debtor in these proceedings (hereinafter, Delphi Tennessee, Delphi Automotive and Delphi shall be referred to at times, collectively, as the "Debtors").

5. On September 26, 1996, PBR and Delphi Tennessee entered into the JVA, which governs the management of the JV Company and the relationship of its members.[1]

---

[1] ███████████████████████████████████████

2

6.  The JV Company manufactures, markets and sells automotive brake calipers and other related products to various automotive manufactures throughout the United States, Canada and Mexico.

7.  The JV Company ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ These individuals are responsible for the oversight and management of the JV Company's business affairs.

8.  As a consequence, the membership interest and the governance of the business venture are aligned, thereby making the dynamics of the JV Company's management and membership integrated.

### B. Restriction On The Transferability Of Member Interests In The JV Company; Dissolution and Termination Of JVA.

9.  § 18-702 of the Delaware LLC Act restricts assignability of a limited liability company agreement. It provides:

> (a) A limited liability company interest is assignable in whole or in part except as provided in a limited liability company agreement. The assignee of a member's limited liability company interest shall have no right to participate in the management of the business and affairs of a limited liability company except as provided in a limited liability company agreement and upon: (1) *The approval of all of the members of the limited liability company other than the member assigning the limited liability company interest; or (2) Compliance with any procedure provided for in the limited liability company agreement.*

(emphasis supplied).

10. In addition, and in furtherance of the Delaware statute's prohibition, ███████████████████████████████████████████████████████████████████████████████████

ORLA_1388501.6

███████████████████████████████████████████████████████████

██████████████████████

11.  Thus, pursuant to ███ the Delaware LLC Act ██████ neither member of the JV Company may assign, transfer or otherwise dispose of its membership interest in the JV Company.

12.  Further, ████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
██████████████████

13.  Given the automatic stay in bankruptcy, Delphi Tennessee and PBR have entered into numerous letter agreements in which they ███████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
████████

14.  ████████████████████████████████████████████████
███████████████████████████████████████████████████████████
██████████████████████████████████

ORLA_1388501.6

### C. The Plan Of Reorganization And The Effect Of The Assumption Of The JVA

15. As described in the Debtors' Supplement To Plan Modification Approval Motion (Docket No. 16646), three entities will emerge after the bankruptcy: (1) GM Component Holdings LLC ("GM"), (2) Parnassus Holdings II, LLC ("Parnassus") and (3) Reorganized DPH Holdings Co. ("DPH").

16. DPH will be the parent holding company of the reorganized Debtors.

17. On the "Effective Date" (defined in the Plan), the sole share of DPH will be issued to DPH Holdings Share Trust (the "Trust").

18. The Trust will be administered by the Post-Confirmation Plan Administrator, for the purposes of liquidating the assets and distributing their proceeds for the benefit of the Beneficiaries (as defined in the Plan).

19. If not terminated for other reasons, the Trust shall terminate upon the full administration and distribution of the Trust Property in accordance with the Plan.

20. The Plan provides for the assumption of various executory contracts, of which the JVA is included. Specifically, Section 8.1(a) of the Plan, in relevant part, states:

> All executory contracts and unexpired leases as to which any of the Debtors is a party shall be deemed automatically assumed by the applicable Reorganized Debtor in accordance with the provisions and requirements of § 365 and 1123 of the Bankruptcy Code as of the Effective Date, unless. . . . are listed on the schedule of rejected contracts attached hereto as Exhibit 8.1(a) – <u>Rejected Contracts</u>, or (vi) are otherwise rejected pursuant to the terms of this Plan and/or upon the direction of either Buyer pursuant to the Master Disposition Agreement.

21. The JVA is not listed as a rejected contract on Exhibit 8.1(a) of the Plan, and it has not been otherwise rejected by the Debtors. Further, the Debtors have indicated to PBR that Delphi Tennessee intends to assume the. By virtue of the transfer of the stock of Delphi Tennessee pursuant to the Master Disposition Agreement (the "MDA")(Docket No. 16936) (the

foregoing transaction shall be hereinafter referred to as the "Contemplated DT Stock Transfer"), the Debtor effectively will assign the JVA to Parnassus. As a result of the assumption and the stock transfer, Parnassus will acquire the interest of Delphi Tennessee under the JVA.

22. The MDA includes a sale of the stock/shares of certain "Company Sale Securities" to Parnassus. The term "Company Sale Securities" includes all outstanding shares of the Sale Companies and, upon information and belief, all of the outstanding shares of the JV Company.

23. The ultimate effect of the assumption of the JVA and the Contemplated DT Stock Transfer would be to substitute a third party (Parnassus) to be PBR's primary business partner in the JV Company.

24. As a result of the assumption and Contemplated DT Stock Transfer, the membership interest of Delphi Tennessee would be transferred, causing a change in (a) the dynamics of the business and the relationship of the members, particularly as to financial affairs and the sharing of financial and other resources; (b) the short and long term business objectives of the JV Company; (c) the common interests of the Members and the Board as contemplated when the JV Company was established; and (d) the ultimate governance of the JV Company.

## SUMMARY OF ARGUMENT

25. Since PBR has not consented to Debtors' assumption of the JVA as proposed in the Plan, this Court must deny assumption of the JVA pursuant to the Plan, and confirmation of the Plan to the extent that the Plan contains assumption of the JVA and with the Contemplated DT Stock Transfer because: (a) §365(c)(1) does not permit assumption where the operative agreement and corresponding state law prohibits assignment; and (b) ████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████ Rather, the JVA must be rejected because (a) the JVA must be

6

ORLA_1388501.6

assumed or rejected by confirmation of the Plan, and it cannot be assumed, leaving rejection the only option; (b) Delphi Tennessee's inability to assume the JVA results in the *de facto* rejection of the agreement under applicable case law, and/or gives PBR the right to terminate the JVA.

## ARGUMENT

I. **THE JVA IS AN EXECUTORY CONTRACT THAT CANNOT BE ASSUMED OR ASSIGNED UNDER § 365(C)(1) BECAUSE PBR HAS NOT CONSENTED TO THE ASSUMPTION OR THE ASSIGNMENT.**

### A. The Court Must Look To Applicable State Law To Determine Whether The JVA Is Not Subject to Assumption An Assignment Under §365(c)(1).

26. § 365(c)(1) of the Bankruptcy Code states:

> (c) The trustee may not assume or assign any executory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, if— (1) (A) applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to an entity other than the debtor or the debtor in possession, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties; and (B) such party does not consent to such assumption or assignment.

27. Thus, the first inquiry must be whether applicable law excuses a party, other than the debtor to such contract, from accepting performance from an entity other than the debtor.

28. Because (a) the Delaware LLC Act prohibits assignment, absent a provision in the JVA to the contrary, and (b) ███████████████████████████████ ███████, the JVA is not assumable under Section 365.

### 1. Delaware Law Prohibits Delphi Tennessee's Assumption of the JVA with the Contemplated DT Stock Transfer; Thus, the JVA Is Not Subject To Assumption Under § 365(c)(1).

29. The Delaware LLC Act codifies the view that, absent a contractual provision to the contrary, members of a Delaware limited liability company need not fear that they will have

7

ORLA_1388501.6

as fellow members, bankruptcy trustees or assigns of bankruptcy trustees. *Milford Power Co., LLC v. PDC Milford Power, LLC*, 866 A.2d 738, 754 (Del. Ch. 2004). Indeed, the Delaware LLC Act expressly recognizes the unique relationships that exist among members of limited liability companies and protects solvent members from being forced into relationships they did not choose, that result from the bankruptcy of one of their chosen co-investors. *Id.* In this regard, and in examining the interplay between Bankruptcy Code §§ 365(c)(1), 365(e)(1) and the Delaware LLC, the court in *Milford* held that:

> These sections, taken together, bear on this case because they express a federal policy limitation on the Bankruptcy Code's invalidation of *ipso facto* clauses. In essence, § 365(e)(2) and § 365(c)(1) (taken together, the "Assumability Exceptions") are an expression of Congress's recognition that certain types of executory contracts to which debtors are parties (e.g., personal services contracts) should not be assumable by a Bankruptcy Trustee in circumstances when state law would not require the non-debtor parties to accept substitute performance. In the case of an LP or LLC agreement that makes the debtor-partner or member a key part of the entity's management on a going-forward basis, there is . . . a strong argument that these sections preclude a Bankruptcy Trustee from assuming at least those aspects of the contract granting the debtor managerial rights even if the Trustee is the debtor in possession- i.e., when the debtor itself is in charge of the bankrupt estate.

30.     Essentially, the Delaware LLC Act excuses a non-debtor member from doing business in a limited liability company with a debtor, absent permission to do so in the operating agreement. The JVA falls squarely within this exception and prohibits Delphi Tennessee from assuming the JVA under the Plan, with the effective transfer to Parnassus through the Contemplated DT Stock Transfer.

ORLA_1388501.6

## 2. The JVA Prohibits Its Members From Assigning The Membership Interests, In Furtherance Of The Prohibition In The Delaware LLC Act.

31. As stated above, the JVA prohibits its members from assigning, transferring or otherwise disposing of their membership interest at any time. The objective of this prohibition is to maintain the purpose for which the JV Company was formed–to merge the specific and common business interests of PBR and Delphi Tennessee for the specific purposes outlined in the JVA, as contemplated when the JVA was signed (i.e., these two parties would be the only two members and no substitutes would be permitted).

32. Given the express language of the Delaware statute ▮▮▮▮, it is indisputable that under NO circumstance can PBR or Delphi Tennessee transfer or assign their membership interest in the JV Company to a third party. To do so would be a material ▮▮▮▮ ▮ violation of § 18-702 of Delaware LLC Act. Thus, based on prevailing law, the JVA is not subject to assumption pursuant to § 365(c)(1) of the Bankruptcy Code.

33. In these prohibitions, Delaware law ▮▮▮▮ mirror partnership law. In *In re Weiss*, 376 B.R. 867 (Bankr.N.D.Ill. 2007) and *In re DeLuca*, 194 B.R. 65, 74 (Bankr.E.D.Va. 1996), the Courts addressed the issue of the assignability of an interest in a limited liability company to a third party by drawing an analogy to case law analyzing the transfer of interests in partnerships. In each instance, the court felt such analogy was appropriate and persuasive because a "limited liability company (LLC) is a conceptual hybrid, sharing some of the characteristics of partnerships and some of corporations; LLC combines a corporate-styled liability shield and the pass-through tax benefits of a partnership." *DeLuca*, 194 B.R *at 74*.

34. The *DeLuca* court, in particular, opined that the hybrid LLC should be analogized to a partnership because a substantial overlap exists between the characteristics of a partnership and an LLC: (1) the absence of free transferability of the ownership interests of a member or a

ORLA_1388501.6

partner; (2) the right to participate in the profits, losses and distributions; and (3) the right to participate in the management of the company. Concluding that the treatment of partnerships' interests in bankruptcy provides the closest analogy to the interests of an LLC member, the court scrutinized the existing case law regarding the effect of a bankruptcy filing on the interest of a general partner to determine the effect of a filing on a LLC interests. *Id.* See also *In re Tsiaoushis*, 383 B.R. 616 (Bankr.E.D.Va. 2007) (analyzing bankruptcy implications on an operating agreement for a limited liability company by considering common law principles applicable to partnerships); Accord, *In re Ehmann*, 319 B.R. 200 (Bankr.D.Az. 2005); *In re Garrison*, 253 B.R. 700 (Bankr.E.D.Va. 2000).

35.  Courts have held that in the analogous partnership context, § 365 prohibits assumption and assignment, absent the non-debtor partner's consent. *In re O'Conner*, 258 F.3d 392 (5th Cir. 2001). In *O'Connor*, the Fifth Circuit Court of Appeals held that (1) under § 365(c)(1), a partnership agreement for a Louisiana partnership was not assumable absent the other partners' consent and (2) the focus "for determining whether the agreement is not subject to assumption under § 365(c)(1) is . . . applicable law" (i.e., Louisiana State law). *Id.* at 402.

36.  In reaching its conclusion that the partnership agreement was not subject to assumption under § 365(c)(1), the *O'Conner* court reasoned that the agreement was not assumable under 11 U.S.C. § 365(c)(1) because, under the applicable non-bankruptcy (Louisiana) law, the non-debtor partners had not consented to performance by a third party (in this case the Trustee), and further stated that "a partner cannot make a third person a member of the partnership without his partners' consent." *Id.* at 402.[2]. *See also In re Dews*, 152 B.R. 982

---

[2] *In re Allentown Ambassadors, Inc.*, 361 B.R. 422 (Bankr.E.D.Pa. 2007), the court came to the same conclusion as *O'Conner* in the limited liability context, that (a) it is appropriate to consider partnership law in evaluating the application of § 365 to the assignment/assumption of an operating

10

(D. Colo. 1993)(under Colorado law, purported transfer of partnership interest is executory contract pending consent of other partners; absent consent, the contract cannot be assumed); *In re Catron*, 158 B.R. 629 (E.D. Va. 1993)(holding that: (1) under Virginia law, debtor's general partnership interest constituted personal services contract with other partners; (2) partner as debtor in possession was separate entity from partner as prepetition partner, and thus, requirement of consent of partners for assumption was applicable; (3) clause in partnership agreement giving partners right to purchase debtor-partner's interest was not *ipso facto* discrimination against debtor in violation of Bankruptcy Code; and (4) partners were entitled to relief from stay to purchase debtor's partnership interests); *In re Manor Place Dev. Assocs., L.P.*, 144 B.R. 679 (Bankr. D.N.J. 1992); *In re Priestley*, 93 B.R. 253 (D.NM 1988)(New Mexico law prohibits assignment of partnership interest without consent, and thus contract, was not assumable without consent.).

37. Because (a) Delaware law prohibits the assignment of a membership interest to the extent that the operating agreement prohibits such assignment or transfer; and (b) ▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊, PBR should not have to do business with a new partner.

38. Here, by assumption of the JVA and the Contemplated DT Stock Transfer, PBR will be forced to do business with a new partner, Parnassus. Parnassus is not the same entity with whom PBR decided to do business.

---

agreement; and (b) the courts must defer to relevant state law to determine whether an operating agreement is assignable. Though the Allentown court concluded that, under the particular facts of that case, there was not an unequivocal prohibition against assignment based on its analysis of North Carolina law and the record before the court at the time, it clearly follows the reasoning applied by the *Deluca* and *O'Connor* Courts. Under that reasoning, because (a) ▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊ (b) the Delaware LLC Act (discussed below) does not equivocate like the North Carolina statute at issue in *Allentown*; but rather, unequivocally prohibits assignment, without the permission to do so in the operating agreement, the JVA is not assumable under § 365(c).

ORLA_1388501.6

39. As in the partnership and limited liability company cases discussed above, the Bankruptcy Code should not be used to force such a result. As such, the JVA is **_not_** subject to assumption under § 365(c)(1) of the Bankruptcy Code.

II. **BECAUSE THE JVA CANNOT BE ASSUMED, IT SHOULD EITHER BE DEEMED REJECTED OR PBR SHOULD BE PERMITTED TO TERMINATE IT.**

40. Section 365 of the Bankruptcy Code requires that an executory contract either be assumed or rejected by confirmation. § 365(d)(2) As stated above, the JVA cannot be assumed, so therefore it must be deemed rejected.

41. Thus it follows that since the JVA cannot be assumed under § 365(c)(1), or assigned under Delaware law, it should not be permitted to pass through the bankruptcy because the end result would be for it to pass through to the liquidating trust, an unintended result as it would circumvent the prohibition against assumption under § 365(c)(1) and assignment under Delaware law.

42. As stated earlier, the Trust will be the sole shareholder of DPH and the Post-Confirmation Reorganized DPH Holdings Share Trust will be administered by the Post-Confirmation Plan Administrator. The purpose of the Trust is to implement Article VII of the Plan and to distribute the Trust Proceeds for the benefit of the Beneficiaries (i.e., to liquidate), and the Trust shall terminate upon the full administration and distribution of the Trust Property in accordance with the Plan.

43. Delphi Tennessee's remaining assets will be liquidated in a liquidating trust, leaving no purpose to the continuation of its membership interest under the JVA. As the Court reasoned in *O'Connor*, supra, because the JVA is not subject to assumption under § 365(c)(1) and the remaining assets of Delphi Tennessee will be liquidated, there is a *de facto* assumption of the JVA:

12

> The Trustee contends that, under the pass-through theory, the contract passes to the Reorganized Debtor, rather than to the pre-bankruptcy Debtor (O'Connor). But here, the Reorganized Debtor is a *liquidating trust* and the executory contract is a partnership agreement; the contract could *not* pass through bankruptcy *unaffected* if it passed to the Reorganized Debtor. It would be *affected:* the Trustee would become a partner without the consent of the non-debtor partners, constituting a *de facto* assumption prohibited by § 365(c)(1).

*O'Conner*, 258 F.3d at 427.

45.    Thus, in the event Delphi Tennessee is not compelled to reject the JVA, this Court should determine that it should be *de facto* rejected in these circumstances as (a) Delphi Tennessee's rights are not subject to assumption or assignment under § 365(c)(1); (b) the assets not sold pursuant to the Plan will be liquidated; (c) a trustee will takeover Delphi Tennessee's membership, which is unacceptable to PBR and will constitute an effective assumption and assignment to the trustee; and (d) the executory contract is a limited liability operating agreement which (like a partnership agreement) cannot pass through bankruptcy unaffected if it passed to the liquidating trustee. In the alternative, this Court should grant such other relief as is appropriate.

## CONCLUSION

This Court must deny Debtors' assumption of the JVA and the Plan to the extent that it includes assumption of the JVA based on the application of 11 U.S.C. § 365(c)(1) as further clarified under the Delaware LLC Act. It is irrefutable that applicable law ███████ ███ prohibit the assignment of Delphi Tennessee's membership interest in the JV Company. Indeed, only PBR and Delphi Tennessee are permitted to be members (the whole purpose in establishing the JV Company) and to select the individuals who manage their joint business interest. Allowing Delphi Tennessee to assume the JVA and subsequently assign it to another person would completely change the dynamics and purpose of the business. The Delaware LLC

ORLA_1388501.6

Act expressly prohibits these types of unilateral assignments (particularly by members in bankruptcy) to protect the remaining members from having to do business with persons whom they did not choose. Lastly, this Court should also determine that a *de facto* rejection has occurred, thereby permitting PBR to exercise its rights under Sections 13 and 15 of the JVA.

WHEREFORE, PBR respectfully requests that the Court deny assumption of the JVA pursuant to the Plan; and confirmation of the Plan, to the extent that the Plan contains assumption of the JVA, and to adjudge that the JVA has been *de facto* rejected.

Dated: New York, New York
July 14, 2009

**FOLEY & LARDNER LLP**

By: /s/ Salvatore A. Barbatano
Salvatore A. Barbatano
90 Park Avenue
New York, NY 10016
Telephone: (212) 682-7474
Facsimile: (212) 687-2329

By: /s/ Judy A. O'Neill
Judy A. O'Neill (admitted *Pro Hac Vice*)
500 Woodward Ave., Suite 2700
Detroit, MI 48226
Telephone: (313) 234-7100
Facsimile: (313) 234-2800

*Attorneys for PBR Tennessee, Inc.*

ORLA_1388501.6