Hearing Date and Time: July 23, 2009 at 10:00 a.m.
Objection Deadline: July 15, 2009 at 4:00 p.m.

UNITED STATES BANKRUPTCY COURT
SOUTEHRN DISTRICT OF NEW YORK

--------------------------------------------------x
                                                  :   Chapter 11
In re:                                            :
                                                  :   Case No. 05-44481 (RDD)
DELPHI CORPORATION, et. al.,                      :
                                                  :   (Jointly Administered)
        Debtors.                                  :
--------------------------------------------------x

## CREDITOR, OGURA CLUTCH COMPANY'S, OBJECTION TO DEBTOR'S MODIFIED PLAN

**NOW COMES** Creditor, Ogura Clutch Company ("Ogura"), by and through its undersigned attorneys, and objects to Delphi's Modified Plan as follows:

1.  Ogura and Delphi are parties to a Technical Information and Assistance Agreement dated June 16, 1999 (the "Agreement"). A copy of the Agreement is attached hereto as **Exhibit 1**. Pursuant to the Agreement, Delphi licenses various technical information from Ogura and Delphi has agreed to pay royalties to Ogura on a quarterly basis.

2.  At the time of the filing of its bankruptcy case, Delphi owed Ogura royalties of $37,257.60 pursuant to the Agreement. The unpaid royalties were owed for the 3rd and 4th quarters of 2005.

3.  The Agreement constitutes an executory contract within the meaning of 11 USC §365. On or about January 25, 2008, Delphi was successful in confirming a First Amended Joint Plan of Reorganization (the "Plan"). Under the Plan, Delphi assumed the Agreement and was responsible for payment to Ogura of the aforementioned cure amount of $37,257.60.

Despite being timely notified of the cure amount due under the Agreement, Delphi has yet to pay it.

    4.    Under the proposed Modified Plan, it appears that Delphi requests that the Agreement be assumed and assigned to its proposed purchaser. Ogura objects to the assumption and assignment of the Agreement unless the prepetition default of $37,257.60 has been fully cured and paid in accordance with 11 USC §365(b)(1) and (f)(2).

**WHEREFORE**, Creditor, Ogura Clutch Company, respectfully requests that this Court enter an Order prohibiting Delphi from assuming the parties' Technical Information and Assistance Agreement and/or assigning it to any third party unless Ogura Clutch Company receives payment of the sum of $37,257.60 owed to it under the Agreement.

    Respectfully submitted,

    DAKMAK PEURACH, P.C.

By: _____
Robert A. Peurach (P34446)
Atty. for Ogura Clutch Company
615 Griswold, Ste. 600
Detroit, MI 48226
313-964-0800/964-0581
rpeurach@gdakmak.com

Date: July 15, 2009

# TECHNICAL INFORMATION & ASSISTANCE AGREEMENT

This agreement is effective on June 16, 1999 by and between Ogura Clutch Company, Ltd., a corporation organized and existing under the laws of Japan and having a principal place of business at 678-2 Chome Aioi-Cho Kiryu, Gunma Japan 376 (hereinafter referred to as "Licensor"), and Delphi Harrison Thermal Systems, a division of Delphi Automotive Systems, LLC, a corporation organized and existing under the laws of the State of Delaware and having a place of business at A & E Building 6, 200 Upper Mountain Road, Lockport, NY 14094 U.S.A. (hereinafter referred to as "Licensee").

1. DEFINITIONS

1.1   "Effective Date" means the date on which all appropriate agencies of both parties have signed this Agreement.

1.2   "Technical Cooperation Period" means the period beginning on the Effective Date and ending at the agreed upon termination date of this agreement.

1.3   "Delphi Thermal" means the Delphi Harrison Thermal Systems Division of Licensee.

1.4   "Licensed Products" means the components identified in the attached Schedule and such other components as may be agreed upon by the parties.

1.5   "Technical Information" means the documentary technical information furnished to Licensee by Licensor under Article 2.

1.6   "Affiliate" means any corporation, association, partnership or other entity directly or indirectly owning or owned by Licensee, or under direct or indirect common ownership with Licensee. For purposes of this definition, "own" means direct or indirect ownership of more than 50% of the outstanding voting stock.



TAAOGUR5.DOC Pg. 1
16JUN99 CVA

2. TECHNICAL INFORMATION & ASSISTANCE TO BE FURNISHED

2.1 Licensor shall, promptly following the Effective Date, furnish to Licensee Technical Information on Licensed Products, consisting of one set of reproducible copies or microfilm of the following technical documents:

- (a) assembly and parts drawings;
- (b) material specifications;
- (c) inspection procedures;
- (d) manufacturing equipment drawings, manuals, and specifications;
- (e) manufacturing tooling drawings and specifications;
- (f) process layouts;
- (g) process descriptions, instructions, and specifications;
- (h) process control plans;
- (i) quality plans;
- (j) as requested by Licensee and agreed upon by Licensor, drawings of special tools, fixtures, dies, jigs, gauges and patterns; and
- (k) list of equipment and parts suppliers.

2.2 The Technical Information to be furnished under paragraph 2.1 shall be delivered to Licensee at Delphi Thermal's Moraine, Ohio plant, or sent to such other place as may be agreed upon by the parties, and shall be current at the time it is delivered or sent. Licensor will thereafter during the Technical Cooperation Period deliver to Licensee at Delphi Thermal's Moraine, Ohio plant, or send to Licensee at such other place as may be agreed upon by the parties, one set of copies of such revisions, changes, improvements, and modifications to the aforesaid Technical Information as may be made by Licensor.

2.3 Nothing in this Agreement shall be construed to require that Licensor furnish Licensee with any Technical Information on any products other than Licensed Products or which may not be furnished because of a government contract, act, regulation or restriction or the proprietary interest of a third party.

2.4 At the request of Licensee, Licensor shall, during the Technical Cooperation Period, provide training for Licensee's employees at either Ogura's Plant in Japan or Madison Heights, Michigan or Delphi Thermal's Moraine, Ohio plant, as appropriate concerning the manufacture of Licensed Products. All salaries and other expenses of Licensee's employees during such training shall be paid by Licensee.

2.5     At the request of the Licensee, during the life of the technical cooperation period, Licensor shall send employees to Licensee's plant in Moraine, OH to train and otherwise advise on matters concerning the manufacture of Licensed Products for such periods as Licensee shall consider appropriate. Licensee will reimburse Licensor for providing any such employees for such periods including related travel time on a per-diem basis to be agreed upon. Such items to be reimbursed by Licensee shall include the cost of transportation of any such employee and of his hotel and other reasonable expenses incidental to his visit. Licensor shall assume all costs related to salaries and benefits of their own employees for the first 110 man days of training and advising. Licensee shall reimburse Licensor for the pro rata share of each such employee's salary and benefit programs for services under sections 2.4 and 2.5 after 110 man days of training and advising have been provided by Licensor.

2.6     All Technical Information furnished hereunder and all other communication between the parties, including oral communication, shall be in English.

2.7     Licensor shall not be responsible for any liabilities of any kind whatsoever which Licensee may incur as a result of its using the Technical Information and assistance furnished hereunder or as a result of its manufacture and sale of Licensed Products and Licensee shall defend and hold Licensor harmless [and indemnify against all claims of third parties against Licensor based thereon.]

2.8     In recognition of the confidential nature of the Technical Information furnished hereunder, Licensee agrees to protect such information with the same care and in the same manner that it would protect similar information of its own and any intentional transfer is strictly prohibited, except to Affiliates, which agree in writing to be bound by use and disclosure obligations of Licensee.

2.9     Each party shall promptly advise the other of any significant error it may discover in the Technical Information. In the event of such an error, Licensor shall correct the error in the Technical Information and shall furnish the corrected Technical Information to Licensee without charge.

2.10    Licensee shall reserve the right to incorporate and utilize its own manufacturing methods and philosophy with the Technical Information provided by the Licensor in its manufacture of Licensed Products. Licensor agrees to support Licensee in the development of Licensee's manufacturing operation, regardless of changes to Licensor's process technology incorporated by Licensee.

TAAOGUR5.DOC Pg. 3
16JUN99 CVA

3.  LICENSE

3.1    Licensor hereby grants Licensee a nonexclusive, global, license, with a right to sublicense Affiliates, to use the Technical Information furnished under Article 2 to make Licensed Products for use only on compressors manufactured by Licensee or its Affiliates, and also to sell Licensed Products to original equipment manufacturers, and Licensee's other authorized channels of distribution including, but not limited to dealers and authorized remanufacturers of Licensee's compressors, for use as replacement parts on compressors manufactured by Licensee or its Affiliates. Any sublicense by Licensee will require advance notice of (30) days to Licensor.

3.2    Licensee may sub license Technical Information to entities in which Licensee holds a minority ownership position at any time after a period of 10 years from the Effective Date provided written notice is provided to Licensor. Any other marketing rights for Licensed Products must be specially authorized in advance by resolution of the board of Directors of the Licensor.

3.3    Licensor will not assert any of Licensor's patents against Licensee that would otherwise be infringed by Licensee's use of the Technical Information.


4.  RECORDS AND PAYMENTS

4.1    Licensee shall pay Licensor a royalty of $0.15/unit for each Licensed product sold (as a complete clutch assembly as part of an A/C compressor) by Licensee or it's affiliates during the Royalty Period up to a maximum cumulative royalty payment of $1,000,000. When the total cumulative royalty payments reach this amount no further royalty payments will be required and the royalty obligation shall be considered paid in full. No initial fee shall be paid. Royalty is to be paid on complete clutch assemblies comprised of components as outlined in attached schedule.

4.2    Licensee shall furnish quarterly written reports to Licensor at its offices at 678-2 Chome Aioi-Cho Kiryu, Gunma, Japan 376, Attention: Yasuhiro Ogura within sixty (60) days after the first of January, April, July and October of each year during the Royalty Period and within ninety (90) days after its termination, setting forth the quantities of all Licensed Products sold by Licensee during the preceding quarter. Licensee shall remit all amounts due, in United States dollars, by international money transfer no later than (30) days following the due date of the written quarterly report. All payments shall be remitted directly to: Such location or account as advised by Licensor

4.3    Each report provided by Licensee under paragraph 4.2 shall be accompanied by information showing that the royalties then due have been remitted.

4.4    Licensee shall deduct from payments due any taxes which it is required to pay for the account of Licensor. Licensee shall, on behalf of and in the name of Licensor, pay any such taxes and arrange to furnish Licensor with proper withholding statements for the same. After payment of such tax, Licensee shall furnish Licensor with a copy of the pertinent receipt for such tax issued by the recipient tax agency, if any are issued. Any deductions from payments for tax withholdings will be in accordance with and defined by tax treaties as agreed to by the USA and Japan.

4.5    Licensee shall keep accurate records in sufficient detail to enable the royalties payable under paragraph 4.1 to be readily determined. Licensee shall permit authorized representatives of Licensor to examine such records during usual business hours for the purpose of verifying the reports and payments required hereunder during, and for one (1) year after, the Royalty Period. Such access to Licensee's records shall be provided at Licensee's place of business once per year.

4.6    Licensor shall invoice Licensee for any payments due Licensor under paragraphs 2.4 and 2.5. Licensee shall make such payments to Licensor in United States dollars without deductions of any kind, within thirty (30) days of receipt of Licensor's invoice.

4.7    Licensee shall obtain all approvals required under the laws and regulations of the U.S.A. to enable Licensee to comply with its obligations hereunder.

5.    TRADEMARKS

Licensee shall never, except as may be provided in written agreements with Licensor, use or authorize the use of any trademarks or trade names or other distinctive marks or signs owned by Licensor or any mark, name, word or sign which so nearly resembles any of the foregoing marks, names, words or signs as to be likely to cause confusion or mistake, or to deceive the public.

6.    ASSIGNABILITY

This Agreement may be assigned by Licensee to Delphi Technologies Inc, or any other entity set up by Licensee for the primary purpose of owning and managing its intellectual property. Such assignment shall constitute an assumption of the obligations by the assignee, not a discharge thereof. No other assignment of this Agreement may be made by Licensee without Licensor's prior consent in writing.

7.    RELATIONSHIP OF THE PARTIES

This Agreement does not constitute either party the agent or legal representative of the other, and neither party is granted any express or implied right or authority to assume or to create any obligation or responsibility on behalf of or in the name of the other, or to bind the other in any manner. No employee of either party shall in any sense be an employee of the other.

8.  WAIVERS

The failure of either party to this Agreement at any time to require performance of any provision thereof shall never affect the full right of such party to require such performance at any time thereafter, but not retroactively, nor shall the waiver by either party of a breach of any provision thereof ever constitute a waiver of any succeeding breach of the same or any other provision thereof, or constitute a waiver of the provision itself.

9.  NOTICES

Any notice required or permitted to be given under the provisions of this Agreement shall be in writing in English and delivered personally or by registered airmail.

>   Notices to Licensor shall be addressed to:
>       Ogura Clutch Company, Ltd.
>       678-2 Chome Aioi-Cho Kiryu
>       Gunma Japan 376
>       Attn: Yasuhiro Ogura
>
>   Notices to Licensee shall be addressed to:
>       Delphi Harrison Thermal Systems of
>       Delphi Automotive Systems
>       A & E Building 6, 200 Upper Mountain Road
>       Lockport, New York 14094 U.S.A.
>       Attn:  President
>               Ronald M. Pirtle

The parties by notice hereunder may designate other addresses to which notices shall be directed. In case of delivery of notice by airmail, notice shall be deemed given as of the date the notice is received.

10. DISPUTE RESOLUTION

The parties to this Agreement will work together in good faith to remedy any difficulties, which may arise in connection therewith. In the event disputes do arise in connection with this Agreement which the parties are unable to settle amicably, they shall be finally settled by arbitration under the rules of Commercial Arbitration of the American Arbitration Association.

11. TERMINATION

11.1   This Agreement may be terminated by either party by its giving one hundred eighty (180) days written notice to the other party in the event of failure by such other party to fulfill any of its obligations under this Agreement; provided, however, that if during the period of such notice such other party remedies such failure, this Agreement shall continue with the same force and effect as if such notice had not been given.

11.2   Licensee's rights under Article 3 shall cease and Licensee shall promptly cease the manufacture and sale of Licensed Products in the event of any termination of this Agreement by Licensor for a material breach of the Agreement by Licensee. Any such termination shall not relieve Licensee from its obligation to make all payments called for under this Agreement.

11.3   Licensee's rights under Article 3 shall continue and Licensee shall retain the right to manufacture Licensed Products in the event of any termination of this Agreement by Licensee for a material breach of Licensor, provided Licensee continues to comply with articles 3.1 and 4.1 of the Agreement.

11.4   In the event of termination by Licensor, if Licensee has not committed a material breach of the Agreement, Licensee's rights under Article 3 shall continue, provided Licensee continues to comply with articles 3.1 and 4.1 of the Agreement.

11.5   Termination of this Agreement for any reason will not affect the right of Licensee to make clutch products other than Licensed Products.

12. SOLE AGREEMENT

This Agreement is the sole agreement between the parties which relates to the furnishing of technical information and assistance on Licensed    Products. No modification of this Agreement shall be effective unless made by an amendment in writing executed by authorized persons on behalf of the parties.

13. GOVERNING LANGUAGE

This Agreement is written in the English language and executed in two (2) counterparts, each of which shall be deemed an original. The English language text of the Agreement shall prevail over any translation thereof.

## SCHEDULE

All clutch assemblies (including pulley and bearing assemblies, clutch driver assemblies, and coil and housing assemblies) developed for use with Delphi A/C compressors (including V5, V7, H6, CVC, LVC, Scroll, and any other models to be determined at a later date) including, but not limited to the following:

| Part Name | Part Number | Description |
|---|---|---|
| Pulley and Bearing Assy. | HR 151291 | 110 mm dia., 6 groove |
|  | HR 152074 | 110 mm dia., 4 groove |
|  | HR 151291 | 110 mm dia., 6 groove, EXCEPT no friction material |
|  | 6581517 | 121 mm dia., 5 groove |
|  | 6581628 | 116 mm dia., 6 groove |
|  | 6581009 | 105 mm dia., 5 groove |
|  | 6580954 | 110 mm dia., 5 groove |
|  | TBD | 126 mm dia., 6 groove |
| Clutch Driver | HR 151292 | 3 eye damper |
|  | 47042930 | 3 eye damper |
|  | TBD | LVC metal leaf spring |
| Coil & Housing Assy. |  |  |
|  | 6581609 | Bobbin, SLC, no diode |
|  | 6581632 | Bobbin, SLC, diode |
|  | HR 151289 | SLC, w/option for diode and/or thermal fuse |

Hearing Date and Time: July 23, 2009 at 10:00 a.m.
Objection Deadline: July 15, 2009 at 4:00 p.m.

UNITED STATES BANKRUPTCY COURT
SOUTEHRN DISTRICT OF NEW YORK

----------------------------------------------------x
In re:                                               :    Chapter 11
                                                     :
DELPHI CORPORATION, et. al.,                         :    Case No. 05-44481 (RDD)
                                                     :
                                                     :    (Jointly Administered)
           Debtors.                                  :
----------------------------------------------------x

**PROOF OF SERVICE OF CREDITOR, OGURA CLUTCH COMPANY'S,
OBJECTION TO DEBTOR'S MODIFIED PLAN**

STATE OF MICHIGAN )
                  ) SS
COUNTY OF WAYNE   )

   Theresa A. Speir, hereby certifies that on the 15th day of July, 2009, a copy of Creditor, Ogura Clutch Company's, Objection to Debtor's Modified Plan was filed and served via-electronically on all registered users of the ECF System and by placing same in an envelope with sufficient postage thereon and depositing same in a United States mail receptacle in the City of Detroit, State of Michigan on the Hon. Robert D. Drain and all attorneys of record as set forth in paragraph 2 of the Notice of (1) Approval of Supplement; (2) Hearing on Modifications to Plan, et. al. attached hereto.

*[signature]*
Theresa A. Speir
615 Griswold, Ste. 600 Ford Bldg.
Detroit, MI 48226
313-964-0800/964-0581 (fax)

disclosure statement approved by the Bankruptcy Court on December 10, 2007 (the "Supplement") with respect to the Modified Plan and providing, among other things, that:

1. <u>Final Modification Hearing Date</u>. The hearing to consider approval of the Modified Plan (the "Final Modification Hearing"), will commence on **July 23, 2009 at 10:00 a.m.** (prevailing Eastern time) or as soon thereafter as counsel can be heard, before the Honorable Robert D. Drain, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 610, New York, New York 10004. The Final Modification Hearing may be adjourned from time to time by announcing the adjournment in open court, and the Modified Plan may be further modified, if necessary, under 11 U.S.C. § 1127 before, during, or as a result of the Final Modification Hearing, without further notice to parties-in-interest.

2. <u>Objections To Approval Of Modified Plan</u>. **July 15, 2009 at 4:00 p.m.** (prevailing Eastern time) (the "Objection Deadline") is fixed as the last date and time for filing and serving objections to approval of the Modified Plan. To be considered, objections, if any, to approval of the Modified Plan must (a) be in writing, (b) conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, the Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And Administrative Procedures, entered by this Court on March 20, 2006 (Docket No. 2883), the Fourteenth Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And Administrative Procedures, entered May 1, 2009 (Docket No. 16589), and the Modification Procedures Order, (c) be filed with the Bankruptcy Court in accordance with General Order M-242 (as amended) – registered users of the Bankruptcy Court's case filing system must file electronically, and all other parties-in-interest must file on a 3.5 inch disk (preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format), (d) be submitted in hard-copy form directly to the chambers of the Honorable Robert D. Drain, United States Bankruptcy Judge, One Bowling Green, Room 632, New York, New York 10004, and (e) be served upon (i) Delphi Corporation, 5725 Delphi Drive, Troy, Michigan 48098 (Att'n: General Counsel), (ii) counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Suite 2100, Chicago, Illinois 60606 (Att'n: John Wm. Butler, Jr. and Ron E. Meisler) and Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, New York, New York 10036 (Att'n: Kayalyn A. Marafioti and Gregory W. Fox), (iii) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, Suite 2100, New York, New York 10004 (Att'n: Brian Masumoto), (iv) counsel for the official committee of unsecured creditors, Latham & Watkins LLP, 885 Third Avenue, New York, New York 10022 (Att'n: Robert J. Rosenberg, Mark A. Broude, and Mitchell A. Seider), (v) counsel for the agent under the postpetition credit facility, Davis Polk & Wardwell, 450 Lexington Avenue, New York, New York 10017 (Att'n: Donald Bernstein and Brian Resnick), (vi) counsel for the Tranche C Collective, Willkie Farr & Gallagher LLP, 787 Seventh Avenue New York, New York 10019 (Att'n: Richard Mancino and Marc Abrams), (vii) counsel for the United States Department of the Treasury, Cadwalader, Wickersham & Taft LLP, One World Financial Center, New York, New York 10281 (Att'n: John J. Rapisardi and Oren B. Haker), (viii) counsel for the United States Department of Justice, 86 Chambers Street, 3rd Floor, New York, New York 10007 (Att'n: Matthew L. Schwartz and Joseph N. Cordaro), (ix) counsel for General Motors Corporation, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Att'n: Jeffrey L. Tanenbaum and Robert J. Lemons), and (x) counsel for Parnassus Holdings II, LLC, Schulte Roth & Zabel LLP, 919 Third Avenue, New York, New York 10022 (Att'n: Adam C. Harris and David J. Karp), in each case so as to be **received no later than the Objection Deadline**. **Objections not timely filed and served in the manner set forth above may not be considered and may be deemed overruled.**

3. <u>Temporary Allowance Of Claims</u>. The following persons or entities, among others, are not entitled to vote on the Modified Plan and, therefore, will not receive a ballot: holders of (a) unimpaired claims, (b) claims and interests who will receive no distribution under the Modified Plan, (c) claims and