UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | Chapter 11 |
| DELPHI CORPORATION, et al, | Case No. 05-44481-(RDD) |
| | (Jointly Administered) |
| Debtors. | |
| _____/ | |

**OBJECTIONS OF CREDITOR MICHAEL ANDRUD TO DEBTOR'S FIRST AMENDED PLAN OF REORGANIZATION (AS AMENDED)**

Michael Andrud ("Andrud"), by and through undersigned counsel, files this objection to Debtor's First Amended Plan of Reorganization (As Amended). Andrud states:

### A.   BACKGROUND

1. On October 8, 2005, (the "Petition Date") the Debtor commenced a voluntary case under Chapter 11 of Title 11 of the United States Code, 11 USC §101 et seq (the "Bankruptcy Code".)

2. On February 11, 2009, subsequent to the Petition Date, Debtor entered into a certain separation allowance plan agreement (the "Separation Agreement") with Andrud. A copy of the Separation Agreement is attached to this Motion. The Separation Agreement was deemed effective as of April 1, 2009, and called for semi-monthly payments totaling $173,400.00 beginning April 15, 2009, until paid in full.

3. Debtor has proposed a Master Disposition Agreement (Exhibit 1 to Docket number 16646) under the Bankruptcy Code by which, on emergence from Bankruptcy, it will or may be permitted to immediately terminate payments due under the Separation Agreement.

4. As part of the Separation Agreement, Andrud was induced to release all other claims against Debtor, including but not limited to benefits due as part of Andrud's pre-petition hiring agreement, and the ability to pursue any and all claims against Debtor

1

at any time after execution of the Separation Agreement. In addition, Andrud was induced to release all claims against General Motors Corporation. In seeking authorization to implement similar types of agreements, Debtor conceded that the agreements were post-petition, and were not part of any pre-petition employment benefit due to Claimant. See "KECP Motion", docket no.0213, Sec. A.

5. The above waivers and concessions were of substantial benefit to the ongoing business of Debtor, as the filing of such claims and/or lawsuits had the potential to discourage or drive away potential investors and purchasers, thereby preventing the emergence of Debtor from bankruptcy.

6. Additionally, Debtor used the Separation Plan as an inducement for management and executive level employees to remain with the company in order to stabilize it, and keep it viable so that investors and/or sources of financing could be located. Until approximately September, 2008, Debtor-in-Possession was, on execution of the Separation Agreements, paying its employees in an advance, lump sum payment, a fact which was known to the remaining managers and executive level employees, who were thereby induced to remain, with the understanding that they would receive the same treatment.

7. As of August 1, 2009, Debtor is or will be indebted to Andrud in the amount of $115,600.00, the amount of the agreed consideration remaining unpaid as of that date.

## B.  RELIEF REQUESTED

8. Andrud requests entry of an Order allowing his Administrative Claim, and requiring Debtor to immediately remit payment to Andrud in the amount of $115,600.00, or alternatively, compelling Debtor to complete the Separation Plan payments as scheduled.

## C.            ARGUMENT

9. Administrative expenses are defined as "actual, necessary costs and expenses of preserving the estate, including... wages, salaries, and commissions for services rendered after commencement of the case." 11 U.S.C. §503(b)(1)(A).

10. An expense is administrative if it arises out of a transaction between the creditor and the bankruptcy trustee or Debtor and to the extent that the consideration supporting the claimant's right to payment was given to and beneficial to the Debtor-in-Possession in the operation of the business. See: *In re Bethlehem Steel Corp* 479 F.3d 167, 172 (2nd Cir. 2007); *McMillan v LGV Steel,* 555 F.3d 218, 225-26 (6th Cir. 2009).

11. Andrud maintains that the above language entitles him to an administrative claim for post- petition payment of the Separation Agreement, as the Separation Agreement arose from a transaction with the bankruptcy estate; was entered into post-petition; and directly and substantially benefitted the estate by eliminating claimant's ability, (and the corresponding ability of all similarly situated claimants) to bring claims against the Debtor that would or might otherwise have acted as an impediment to the Debtor's emergence from bankruptcy. In addition, as the Debtor initiated Separation Agreements with management level employees commencing in 2006, and originally paid its entire obligation under the Separation Agreement in lump sum, the Separation Agreement acted as a benefit to Debtor to maintain stability and productivity during the bankruptcy process.

    Based on the legislative history of §503(b)(1)(A), policy considerations and the rules of statutory construction, the United States Supreme Court has found that where expenses meet the preceding criteria, those expenses are administrative, and as such are entitled to priority over pre-petition unsecured claims. *Hartford Underwriters Ins. Co. v Union Planners Bank, N.A.,* 530 U.S. 1, 5, 120 S. Ct. 1942, 147 L. Ed. 2d, 1 (2000).

12. The Second Circuit Court of Appeals has held that in the determination of whether a payment accompanying termination is entitled to priority as an administrative

expense, "[T]he key inquiry is whether it represents a new benefit earned at termination or an acceleration of a benefit the employed earned over the course of his or her employment." *In re Bethlehem Steel Corp* supra, at 172, citing *Strauss-Duparquet, Inc. v Local Union Number 3, International Brotherhood of Electrical Workers,* 386 F.2d 649 (2nd Cir. 1967). The *Bethlehem* court stated that "regardless of when the Debtor-in-Possession becomes obliged to make the payment, it can only be an administrative expense if the Debtor received the consideration for the obligation after the commencement of bankruptcy proceedings." *In Re Bethlehem,* supra, at 172-173.

13. The *Bethlehem* court also stated that "...the employees in *Strauss-Duparquet* earned the severance payment when they were terminated during the pendency of bankruptcy proceedings, because the payment compensated them for the hardships associated with termination." *In re Bethlehem,* supra, at 173.

14. *In re Bethlehem* also stated that "severance payments that compensate for the hardships associated with termination are understood to have been earned by the employees by their termination...". *Id* at 173. *In re Bethlehem* also held that " a payment may be titled a priority under *Strauss-Duparquet*...if it provides a new benefit at termination that employees would not otherwise receive. *The key inquiry is if the payment is a new benefit earned at termination or instead an acceleration of benefits to which the employee was previously entitled. The former is an administrative expense of the Debtor-in-Possession, while the latter is not." Id*. at 175 (emphasis supplied).

15. Administrative expenses also include the "actual, necessary costs and expenses of preserving the estate..." under §503(b)(1)(A). *In re Worldcom, Inc. (* S.D. N.Y. 5-19-2009 at p. 3) . Because the waiver that formed a portion of the consideration for the Separation Agreement helped preserve the estate of the Debtor, and encouraged retention of employees necessary to shepherd the Debtor through bankruptcy, thereby helping to preserve the estate of the Debtor, payments due under the Separation Agreement also qualify as administrative expenses, with the elevated status  that accompanies that category.

16. In this case, the Debtor wishes to avoid the remaining payments for which it is obligated. It seeks to avoid its Separation Agreement obligations by actions contrary to the intent of Section 503(b)(1), which would result in the Debtor benefitting from disobeying both the mandate of the statute, and decisions of the Second and Sixth Circuit Courts and the United States Supreme Court, an untenable interpretation. Granting administrative priority to the financial obligations of the Separation Agreement is consistent with the intent of Section 503 (b)(1), and necessary to effect its objectives.

## MEMORANDUM OF LAW

17. Because the legal points and authorities upon which this Motion relies are incorporated herein, Andrud respectfully requests that the requirement of the service and filing of a separate Memorandum of Law under Local Rule 9013-1(b) be deemed satisfied.

WHEREFORE, Andrud respectfully requests that this Court enter an Order (I) granting his request as an administrative claim pursuant to 11 U.S.C. §503(b)(1)(A), and (II) requiring immediate payment of the balance of the Separation Agreement Plan, or in the alternative, payment over the time period specified in the Separation Agreement Plan.

                                              Russell & Stoychoff, P.C.

Dated: July 14, 2009                /s/Paul M. Stoychoff, P35906
                                              Lyle D. Russell, P27039 (Pro Hac Vice Motion Pending )
New York, New York            Attorney for Claimant
                                              4468 W. Walton Blvd.
                                              Waterford, MI 48329
                                              248-618-0300
                                              Email:   Pmstoych@yahoo.com
                                                        Lylerussell@magnusoft.com