UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | Chapter 11 |
| DELPHI CORPORATION, et al, | Case No. 05-44481-(RDD) |
| | (Jointly Administered) |
| Debtors. | |
| _____/ | |

**OBJECTIONS OF CREDITOR MICHAEL CLANCY TO DEBTOR'S FIRST AMENDED PLAN OF REORGANIZATION (AS AMENDED)**

Michael Clancy ("Clancy"), by and through undersigned counsel, files this objection to Debtor's First Amended Plan of Reorganization (As Amended). Clancy states:

**A.    BACKGROUND**

1. On October 8, 2005, (the "Petition Date") the Debtor commenced a voluntary case under Chapter 11 of Title 11 of the United States Code, 11 USC §101 et seq (the "Bankruptcy Code".)

2. On April 1, 2009 subsequent to the Petition Date, Debtor entered into a certain separation allowance plan agreement (the "Separation Agreement") with Clancy. A copy of the Separation Agreement is attached to this Motion. Payment of $234,000.00 was to begin on April 15, 2009, and continue in equal semi-monthly payments until paid in full. Six weeks later, Debtor filed its intention to terminate the Separation Agreement. Debtor now seeks to avoid $161,934.81, if it is permitted to terminate payments as of August 1, 2009.

3. Debtor has proposed a Master Disposition Agreement (Exhibit 1 to Docket number 16646) under the Bankruptcy Code by which, on emergence from Bankruptcy, it will or may be permitted to immediately terminate the above payments due under the Separation Agreement.

4. As part of the Separation Agreement, Clancy was induced to release all other claims against Debtor, including but not limited to benefits due as part of Clancy's pre-

1

    petition hiring agreement, and the ability to pursue any and all claims against Debtor at any time after execution of the Separation Agreement. In addition, Clancy was induced to release all claims against General Motors Corporation. In seeking authorization to implement similar types of agreements, Debtor conceded that the agreements were post-petition, and not part of any pre-petition employment benefit or entitlement due to Clancy. See "KECP Motion", docket no. 0213, Sec. A.

5.     The above waivers and concessions were of substantial benefit to the ongoing business of Debtor, as the filing of such claims and/or lawsuits had the potential to discourage or drive away potential investors and purchasers, thereby preventing the emergence of Debtor from bankruptcy.

6.     Additionally, Debtor used the Separation Plan as an inducement for management and executive level employees to remain with the company in order to stabilize it and keep it viable so that investors and/or sources of financing could be located. Until approximately September, 2008, Debtor-in-Possession was, on execution of the Separation Agreements, paying its employees in a lump sum payment, a fact which was known to the remaining managers and executive level employees, who were thereby induced to remain, with the understanding that they would receive the same treatment.

7.     As of August 1, 2009, Debtor is or will be indebted to Clancy in the amount of $161,934.81 which is the remaining consideration due under the Agreement.

### B.     RELIEF REQUESTED

8.     Clancy requests entry of an Order allowing his Administrative Claim, and requiring Debtor to immediately remit payment to Clancy in the amount of $161,934.81, or alternatively, compelling Debtor to complete the Separation Plan payments as scheduled.

### C.     ARGUMENT

9. Administrative expenses are defined as "actual, necessary costs and expenses of preserving the estate, including... wages, salaries, and commissions for services rendered after commencement of the case." 11 U.S.C. §503(b)(1)(A).

10. An expense is administrative if it arises out of a transaction between the creditor and the bankruptcy trustee or Debtor and to the extent that the consideration supporting the claimant's right to payment was given to and beneficial to the Debtor in the operation of the business. See: *In re Bethlehem Steel Corp* 479 F.3d 167, 172 (2nd Cir. 2007); *McMillan v LGV Steel,* 555 F.3d 218, 225-26 (6th Cir. 2009).

11. Clancy maintains that the above entitles him to an administrative claim for post-petition payment of the Separation Agreement, as the Separation Agreement arose from a transaction with the bankruptcy estate; was entered into post-petition; and directly and substantially benefitted the estate by eliminating claimant's ability, (and the corresponding ability of all similarly situated claimants) to bring claims against the Debtor that would or might otherwise have acted as an impediment to the Debtor's emergence from bankruptcy. In addition, as the Debtor initiated Separation Agreements with management level employees commencing in 2006, and originally paid its entire obligation under the Separation Agreement in lump sum, the Separation Agreement acted as a benefit to the Debtor-in-Possession to retain key employees to help it maintain stability and productivity during the bankruptcy process.

Based on the legislative history of §503(b)(1)(A), policy considerations and the rules of statutory construction, the United States Supreme Court has found that where expenses meet the preceding criteria, those expenses are administrative, and as such are entitled to priority over pre-petition unsecured claims. *Hartford Underwriters Ins. Co. v Union Planners Bank, N.A.,* 530 U.S. 1, 5, 120 S. Ct. 1942, 147 L. Ed. 2d, 1 (2000).

12. The Second Circuit Court of Appeals has held that in the determination of whether a payment accompanying termination is entitled to priority as an administrative expense, "[T]he key inquiry is whether it represents a new benefit earned at termination or an acceleration or of a benefit the employed earned over the course of his or her employment." *In re Bethlehem Steel Corp* supra, at 172, citing *Strauss-Duparquet, Inc. v Local Union Number 3, International Brotherhood of Electrical*

*Workers,* 386 F.2d 649 (2nd Cir. 1967).  The *Bethlehem* court stated that "regardless of when the Debtor-in-Possession becomes obliged to make the payment, it can only be an administrative expense if the Debtor received the consideration for the obligation after the commencement of bankruptcy proceedings."  *In Re Bethlehem,* supra, at 172-173.

13. The *Bethlehem* court also stated that "...the employees in *Strauss-Duparquet* earned the severance payment when they were terminated during the pendency of bankruptcy proceedings, because the payment compensated them for the hardships associated with termination."  *In re Bethlehem,* supra, at 173.

14. *In re Bethlehem* also stated that "severance payments that compensate for the hardships associated with termination are understood to have been earned by the employees by their termination..." *Id* at 173.  *In re Bethlehem* also held that " a payment may be titled a priority under *Strauss-Duparquet*...if it provides a new benefit at termination that employees would not otherwise receive. *The key inquiry is if the payment is a new benefit earned at termination or instead an acceleration of benefits to which the employee was previously entitled.  The former is an administrative expense of the Debtor-in-Possession, while the latter is not." Id*. at 175 (emphasis supplied).

15. Administrative expenses also include the "actual, necessary costs and expenses of preserving the estate..." under §503(b)(1)(A) . *In re Worldcom, Inc. (* S.D. N.Y. 5-19-2009 at p. 3) .  Because the waiver that formed a portion of the consideration for the Separation Agreement helped preserve the estate of the Debtor, and encouraged retention of employees necessary to shepherd the Debtor through bankruptcy, thereby helping to preserve the estate, payments due under the Separation Agreement also qualify as administrative expenses, with the elevated status that accompanies that category.

16. In this case, the Debtor wishes to avoid the remaining payments for which it is obligated.  It seeks to avoid its Separation Agreement obligations by invoking arguments contrary to the intent of Section 503(b)(1), would result in the Debtor benefitting from disobeying both the mandate of the statute, and decisions

4

of the Second and Sixth Circuit Courts and the Unites States Supreme Court, an untenable interpretation. Granting administrative priority to the financial obligations of the Separation Agreement is consistent with the intent of Section 503 (b)(1), and necessary to effect its objectives.

### **MEMORANDUM OF LAW**

17. Because the legal points and authorities upon which this Motion relies are incorporated in here, Clamcy respectfully requests that the requirement of the service and filing of a separate Memorandum of Law under Local Rule 9013-1(b) be deemed satisfied.

WHEREFORE, Clancy respectfully requests that this Court enter an Order (I) granting his request as an administrative claim pursuant to 11 U.S.C. §503(b)(1)(A), and (II) requiring immediate payment of the balance of the Separation Agreement Plan; or in the alternative, payment over the time period specified in the Separation Agreement Plan; or as a second alternative, conduct a hearing to ascertain the facts that support this claim, and thereafter grant Clancy's requested relief.

Russell & Stoychoff, P.C.

Dated: July 14, 2009

/s/Paul M. Stoychoff, P35906
Lyle D. Russell, P27039 (Pro Hac Vice Motion Pending )

New York, New York

Attorney for Claimant
4468 W. Walton Blvd.
Waterford, MI 48329
248-618-0300
Email:   Pmstoych@yahoo.com
          Lylerussell@magnusoft.com