UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In re                                                                                   Chapter 11

DELPHI CORPORATION, et al,                                       Case No. 05-44481-(RDD)
                                                                                        (Jointly Administered)
　　　　　　　Debtors.

_____/

**OBJECTIONS OF JONATHAN R. STEGNER TO DEBTOR'S FIRST AMENDED PLAN OF REORGANIZATION (AS AMENDED)**

Jonathan R. Stegner ("Stegner"), by and through undersigned counsel, files this objection to the Debtor's First Amended Plan of Reorganization (As Amended). Stegner states:

### A.　　BACKGROUND

1. On October 8, 2005, (the "Petition Date") the Debtor commenced a voluntary case under Chapter 11 of Title 11 of the United States Code, 11 USC §101 et seq (the "Bankruptcy Code".)

2. On August 6, 2008, subsequent to the Petition Date, Debtor entered into a certain separation allowance plan agreement (the "Separation Agreement") with Stegner, by which bi-weekly payments to Stegner from Debtor were to begin on September 16, 2008, and end on September 15, 2009. A copy of the Separation Agreement is attached to this Motion.

3. Debtor has proposed a Master Disposition Agreement (Exhibit 1 to Docket number 16646) under the Bankruptcy Code by which, on emergence from bankruptcy, it will or may be permitted to immediately terminate payments due under the Separation Agreement.

4. As part of the Separation Agreement, Stegner was induced to release all other claims against Debtor, including but not limited to benefits due as part of Stegner's pre-petition hiring agreement, and the ability to pursue any and all claims against Debtor

1

        at any time after execution of the Separation Agreement. In addition, Claimant was induced to release all claims against General Motors Corporation.

5. Claimant was employed as an executive by Debtor. See attached Separation Allowance Plan. On October 13, 2005, in its motion seeking authorization to implement a Key Employee Compensation Program ("KECP Motion", Docket Number 0213, Section A), Debtor acknowledged the importance of retaining its key employees and executives and requested this Court's permission to enter into the Separation Allowance Plan attached hereto. Debtor has therefore conceded that payments due under the plan are (a) post-petition; (b) that there is a substantial business benefit to Debtor in honoring these agreements; and (c) that the benefit is contractual, and not a pre-petition obligation that is or was a condition of pre-petition employment.

6. The above waivers and concessions were of substantial benefit to the ongoing business of Debtor, as the filing of such claims and/or lawsuits had the potential to discourage or drive away potential investors and purchasers, thereby preventing the emergence of Debtor from bankruptcy.

7. Additionally, Debtor used the Separation Plan as an inducement for management and executive level employees to remain with the company in order to stabilize it, and keep it viable so that investors and/or sources of financing could be located. Until approximately September, 2008, Debtor was, on execution of the Separation Agreements, paying its employees in an advance, lump sum payment, a fact which was known to the remaining managers and executive level employees, who were thereby induced to remain, with the understanding that they would receive the same treatment.

8. As of August 1, 2009, Debtor is or will be indebted to Stegner in the amount of $54,413.20, which is comprised of the payments remaining as of the foregoing date, under the Separation Agreement, which was executed on September 16, 2008, with payments scheduled through September 15, 2009.

### B.    RELIEF REQUESTED

9. Stegner requests entry of an Order allowing his Administrative Claim, and requiring Debtor to immediately remit payment to Stegner in the amount of $54,413.20, or alternatively, compelling Debtor to complete the Separation Plan payments as scheduled.

### C.    ARGUMENT

10. Administrative expenses are defined as "actual, necessary costs and expenses of preserving the estate, including... wages, salaries, and commissions for services rendered after commencement of the case." 11 U.S.C. §503(b)(1)(A).

11. An expense is administrative if it arises out of a transaction between the creditor and the bankruptcy trustee or Debtor and to the extent that the consideration supporting the claimant's right to payment was given to and beneficial to the Debtor in the operation of the business. See: *In re Bethlehem Steel Corp* 479 F.3d 167, 172 (2nd Cir. 2007); *McMillan v LGV Steel,* 555 F.3d 218, 225-26 (6th Cir. 2009).

12. Stegner maintains that the above language entitles him to an administrative claim for post- petition payment of the Separation Agreement. Additionally, based on the legislative history of §503(b)(1)(A), policy considerations and the rules of statutory construction, the United States Supreme Court has found that where expenses meet the preceding test, those expenses are administrative, and as such are entitled to priority over pre-petition unsecured claims. *Hartford Underwriters Ins. Co. v Union Planners Bank, N.A.,* 530 U.S. 1, 5, 120 S. Ct. 1942, 147 L. Ed. 2d, 1 (2000).

13. The Second Circuit Court of Appeals has held that in determining whether a payment accompanying termination is entitled to priority as an administrative expense, "[T]he key inquiry is whether it represents a new benefit earned at termination or an acceleration or of a benefit the employed earned over the course of his or her employment." *In re Bethlehem Steel Corp* supra, at 172, citing *Strauss-Duparquet, Inc. v Local Union Number 3, International Brotherhood of Electrical Workers,* 386 F.2d 649 (2nd Cir. 1967). The *Bethlehem* court stated that "regardless of when the Debtor-in-Possession becomes obliged to make the payment, it can only be an administrative expense if the Debtor received the consideration for the obligation after the commencement of bankruptcy proceedings." *In Re Bethlehem,* supra, at 172-173.

14. The *Bethlehem* court also stated that "...the employees in *Strauss-Duparquet* earned the severance payment when they were terminated during the pendency of bankruptcy proceedings, because the payment compensated them for the hardships associated with termination." *In re Bethlehem,* supra, at 173.

15. *In re Bethlehem* also stated that "severance payments that compensate for the hardships associated with termination are understood to have been earned by the employees by their termination..." *Id* at 173. *In re Bethlehem* also held that " a payment may be titled a priority under *Strauss-Duparquet*...if it provides a new benefit at termination that employees would not otherwise receive. *The key inquiry is if the payment is a new benefit earned at termination or instead an acceleration of benefits to which the employee was previously entitled. The former is an administrative expense of the Debtor-in-Possession, while the latter is not." Id.* at 175 (emphasis supplied).

16. Administrative expenses also include the "actual, necessary costs and expenses of preserving the estate..." under §503(b)(1)(A). *In re Worldcom, Inc. (* S.D. N.Y. 5-19-2009 at P. 3) . Because the waiver that formed a portion of the consideration for the Separation Agreement helped preserve the estate of the Debtor, and encouraged retention of employees necessary to shepherd the Debtor through bankruptcy,

      payments due under the Separation Agreement also qualify as administrative expenses, with the elevated status that accompanies that category.

17.    In this case, the Debtor wishes to avoid the remaining payments for which it is obligated. Seeking to eliminate its Separation Agreement obligations by invoking arguments contrary to the intent of Section 503(b)(1), would result in the Debtor benefitting from disobeying both the mandate of the statute, and decisions of the Second and Sixth Circuit Courts and the United States Supreme Court, an untenable interpretation. Granting administrative priority to the financial obligations of the Separation Agreement is consistent with the intent of Section 503 (b)(1), and necessary to effect its objectives.

## MEMORANDUM OF LAW

18.    Because the legal points and authorities upon which this Motion relies are incorporated in here, Stegner respectfully requests that the requirement of the service and filing of a separate Memorandum of Law under Local Rule 9013-1(b) be deemed satisfied.

WHEREFORE, Stegner respectfully requests that this Court enter an Order (I) granting his request as an administrative claim pursuant to 11 U.S.C. §503(b)(1)(A), and (II) requiring immediate payment of the balance of the Separation Agreement Plan; or in the alternative, payment over the time period specified in the Separation Agreement Plan; or as a second alternative, conduct a hearing to ascertain the facts that support this objection, and thereafter grant Stegner's requested relief..

                                                           Russell & Stoychoff, P.C.

Dated: July 14, 2009                         /s/Paul M. Stoychoff, P35906
                                                   Lyle D. Russell, P27039 (Pro Hac Vice Motion Pending )
New York, New York                      Attorney for Claimant
                                                     4468 W. Walton Blvd.
                                                     Waterford, MI 48329
                                                     248-618-0300
                                                     Email:  Pmstoych@yahoo.com
                                                                         Lylerussell@magnusoft.com