**HOGAN & HARTSON LLP**
Scott A. Golden (SG-6663)
875 Third Avenue
New York, New York 10022
Telephone: (212) 918-3000
Facsimile: (212) 918-3100

Attorneys for XM Satellite Radio Inc.

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ x
In re:                                              :    Chapter 11
                                                    :
DELPHI CORPORATION, et. al,                         :    Case No. 05-44481 (RDD)
                                                    :    (Jointly Administered)
                     Debtors.                       :
                                                    :
                                                    :
------------------------------------------------------------ x

**OBJECTION OF XM SATELLITE RADIO INC. TO THE NOTICE OF NON-ASSUMPTION OF CONTRACT AND TO THE FIRST AMENDED JOINT PLAN OF REORGANIZATION OF DELPHI CORPORATION AND CERTAIN AFFILIATES, DEBTORS AND DEBTORS-IN-POSSESSION, AS MODIFIED**

XM Satellite Radio Inc. ("XM"), by and through undersigned counsel, hereby files this objection to the Notice of Non-Assumption of contract and to the First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-In-Possession, as Modified (the "Modified Plan"). In support of this objection, XM states as follows:

1.    XM is in the business of broadcasting music, sports, news, talk, entertainment, traffic and weather channels for a subscription fee through its proprietary satellite radio system. XM's satellite radios are primarily distributed through automakers, retail locations and its website.

2.    XM and Delphi Automotive Systems LLC ("DAS") are parties to an OEM Receiver Production, Marketing and License Agreement, effective as of April 16, 2004, as

amended (the "OEM Contract").  Under the OEM Contract, DAS agreed to develop, produce and market certain radios for the XM satellite system, XM granted certain licenses to DAS in connection therewith and DAS agreed to pay XM certain royalties.  Under the OEM Contract, DAS, among other things, manufactured XM satellite radios for installation in various brands of vehicles.

3. As of the date DAS filed its chapter 11 petition, October 8, 2005 (the "Petition Date"), DAS owed XM $1,017,448.45 under the OEM Contract.[1]

4. The OEM Contract provides that its term shall be five years from April 16, 2004, but that post-expiration, under certain conditions, DAS may continue to exercise its rights under the OEM Contract to, among other things, fulfill certain commitments of DAS to third parties. The OEM Contract provides that DAS' post-expiration exercise of its rights under the OEM Contract is subject to DAS' obligations to abide by quality standards imposed by the contract and to pay royalties to XM as provided under the contract.

5. The OEM Contract contemplates that post-expiration certain of the parties rights and obligations thereunder may continue in effect for certain purposes and subject to certain conditions.

6. Following the April 16, 2009 expiration of the OEM Contract and continuing to the date hereof, DAS has in fact exercised its rights to fulfill commitments to third parties under the OEM Contract.  DAS continues to submit daily reports to XM with respect to such activity. DAS' reports show that from April 16, 2009 to July 13, 2009, DAS has manufactured and/or shipped approximately 159,792 XM satellite radios pursuant to the post-expiration terms of the OEM Contract.  Therefore, both DAS and XM continue to have rights and obligations under the OEM Contract.

7.     On or about July 2, 2009, XM received a Notice of Non-Assumption of the OEM Contract under the Modified Plan (the "Non-Assumption Notice").  The Non-Assumption Notice indicated that the OEM Contract would not be assumed under the Modified Plan because it has expired or terminated.

8..    For the reasons that follow, XM hereby objects to the Non-Assumption Notice and to the Modified Plan.

9.     Section 8.1(a) of the Modified Plan provides, in relevant part, that all executory contracts to which any of the Debtors is a party shall be automatically assumed unless they "shall have expired or terminated on or prior to the Effective Date."  DAS relied on Section 8.1(a) of the Modified Plan in sending XM the Non-Assumption Notice.

10.    However, as indicated above, pursuant to the express terms of the OEM Contract, the expiration of the OEM Contract did not automatically result in the expiration or termination of all of the parties rights and obligations under the OEM Contract with respect to existing commitments to third-parties.  Instead, DAS could elect, subject to certain conditions, to continue to exercise its rights (including the rights to develop, produce and market certain radios for the XM satellite system) under the OEM Contract post-expiration, subject to DAS having continuing obligations including the obligation to pay XM all royalties under the contract.  To the extent DAS made such election, XM continued to have certain rights and obligations under the OEM Contract post-expiration.

11.    DAS has in fact continued to exercise its rights under the OEM Contract post-expiration and continuing to this day.  Therefore, each of DAS and XM continue to have certain rights and obligations under the OEM Contract.

---

[1] In addition, DAS owes XM royalty payments that became due and owing subsequent to the Petition Date.

12. Accordingly, XM objects to the non-assumption of the OEM Contract on the basis that the OEM Contract has expired. Because DAS has continued to exercise its rights under the OEM Contract post-expiration, the expiration of the OEM Contract did not terminate or result in the expiration of all of the parties rights and obligations under the OEM Contract. As such, the OEM Contract should not be deemed an expired contract under the Modified Plan and should be assumed under the Modified Plan.

13. Indeed, DAS should not be permitted to treat the OEM Contract as expired for one purpose (i.e., non-assumption under the Modified Plan) and continue to treat the OEM Contract as continuing for another purpose (i.e., for DAS to continue to exercise its rights and obtain benefits under the OEM Contract post-expiration). In fact, what DAS appears to be trying to do in not assuming the contract but continuing to receive benefits thereunder is the equivalent of a debtor trying to assume part of a contract and reject the remainder. This type of "cherrypicking," where a debtor tries to assume benefits but reject burdens under a contract, is not permitted under the Bankruptcy Code. See, e.g., In re The Leslie Fay Companies, Inc., 166 B.R. 802, 808 (Bankr. S.D.N.Y. 1994) ("If an executory contract is assumed, it is said to be assumed *cum onere*, with all of its benefits and burdens [citation omitted] An executory contract can not be assumed in part and rejected in part."). If DAS wants to continue to exercise its rights and obtain benefits under the OEM Contract it should be required to assume the OEM Contract.

14. Moreover, under the Bankruptcy Code, a debtor must either assume or reject an executory contract. XM submits that, because DAS has continued to exercise its rights under the OEM Contract post-expiration, the OEM Contract remains an executory contract since there remain certain continuing obligations on the part of XM and DAS.[2] Accordingly, DAS must

---

[2] Although the Bankruptcy Code "does not define the term 'executory contracts,' courts have long employed the definition articulated by Professor Countryman, i.e., 'a contract under which the obligation of both the bankrupt and

either assume or reject the OEM Contract. XM submits, therefore, if DAS is not going to assume the OEM Contract, DAS must reject the OEM Contract and cease exercising its rights thereunder or pay XM all royalty payments due under the OEM Contract.

15. In addition to the foregoing, it is not clear to XM whether DAS intends to assign the OEM Contract, or its continuing rights thereunder, to Parnassus Holdings II, LLC or any other entity or person under the Modified Plan or pursuant to a section 363 sale if the Modified Plan does not get confirmed. To the extent the OEM Contract is no longer an executory contract, the anti-assignment provisions of section 365(f) of the Bankruptcy Code do not apply and, therefore, pursuant to the terms of the OEM Contract, XM submits that DAS has no right to assign the OEM Contract, or any continuing rights thereunder, to any party. Similarly, to the extent the OEM Contract is an executory contract and is rejected by DAS, DAS cannot assign the OEM Contract, or any continuing rights thereunder, to any party pursuant to section 365(f) of the Bankruptcy Code.

---

the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other.'" In re Wireless Data, Inc., 547 F.3d 484, 488 (2nd Cir. 2008); see also, National Labor Relations Board v. Bildisco and Bildisco, 465 U.S. 513, 522-23 n. 6, 104 S.Ct. 1188, 1194 n.6 (1984) (holding that an executory contract is one "on which performance remains due to some extent on both sides").

\\\NY - 068843/000022 - 1151729 v4

WHEREFORE, for the reasons set forth herein, (i) XM objects to the Non-Assumption Notice and to the Modified Plan to the extent they result in the non-assumption of the OEM Contract, (ii) XM submits that the OEM Contract should be deemed assumed under the Modified Plan, (iii) if the OEM Contract is not deemed assumed under the Modified Plan it must be rejected and DAS must cease exercising its rights or pay XM all royalties due thereunder, and (iv) XM objects to any assignment of the OEM Contract to any party without the prior consent of XM.

Dated: July 14, 2009
      New York, New York

                    HOGAN & HARTSON LLP

                    By:   /s/ Scott A. Golden
                           Scott A. Golden (SG-6663)
                           875 Third Avenue
                           New York, New York 10022
                           (212) 918-3000 (telephone)
                           (212) 918-3100 (facsimile)

Attorneys for XM Satellite Radio Inc.

\\\NY - 068843/000022 - 1151729 v4