July 6, 2009

Judge Robert D. Drain
United States Bankruptcy Court
One Bowling Green
New York, NY 10004-1408
Courtroom 610


RECEIVED JUL 13 2009 USBC-SDNY

RE: Case # 05-4481

Dear Judge Drain:

I am an ex-Delphi salaried employee. I lost my job after serving with GM/Delphi for 31 and a half years. My job loss was due to a headcount reduction in my business unit in order for Delphi to cut costs to attract a buyer for this business. In order to maintain health care coverage ( now terminated by Delphi) and an income, I started my retirement. On June 1st of this year, Delphi announced a plan to exit bankruptcy. Part of this plan was Delphi transferring the Delphi UAW pension to GM while assuming the salaried plan would be taken over by the Pension Benefit Guarantee Corporation (PBGC). I am writing this letter to state my objection to this part of the plan which assumes the transference of the Delphi salaried pension plan to the PBGC. I am opposing this on two points: (1) the assumption that Delphi cannot be a viable enterprise without having to terminate the salaried pension plan and (2) the possible abdication of the PBGC's responsibility to recoup assets to fund the salaried plan if it has to assume it.

In October 2005, only Delphi's North American operations declared bankruptcy. Delphi's other global business units did not. In fact Delphi has since built new facilities overseas. In May of this year Delphi announced that for the first quarter 2009 it had an operating **profit** of $556 million This was after it cut the health care plan and life insurance for salaried retirees. Interviews given by executives of Platinum Equity, the presumptive new owners of Delphi, have them stating they see Delphi becoming profitable by 2011 ( my assumption is that they are referring to only the North American operations since there is no mention that Delphi minus the NA operations is losing money). Delphi will be selling a large portion of its remaining US plants to GM thus garnering money and reducing Delphi's operating structure. **I ask the court to strongly question the assumption that cutting the salaried pension plan is absolutely critical to Delphi's future survivability.** The global auto market will eventually pick up and Delphi should be able to generate revenue. As stated before, the termination of the health and life insurance coverage for salaried retirees has reduced costs for Delphi ( one news article on the first quarter profit gave $1.2 billion as the amount of money that Delphi saved as a result of cutting salaried health care in retirement). Also since the salaried pension plan has been frozen, Delphi will not see pension cost increasing.

If the PBGC must assume the Delphi salaried pension plan, I question whether the PBGC is not taking on its responsibility to protect the pension plan. The PBGC has allowed Delphi to underfund the salaried pension plan by issuing numerous waivers. Delphi is

requesting of the PBGC that the PBGC drop its right to secured claims on Delphi assets and allow them to become an unsecured claim. These claims should be maintained in order to provide funds to shore up the underfunded plan. I believe there may be a conflict of interest in that Secretary of the Treasury Timothy Geithner sits on the Board of the PBGC and he was instrumental in crafting together the plan to rescue Delphi/GM . Possibly a deal may have been made by having the PBGC give up its claims thus helping the new owners of Delphi at the expense of the salaried retirees who have a claim against Delphi in terms of the pension plan. Recently several Representatives has sent a letter to requesting an investigation into how the GM/Delphi exit plans were crafted ( a copy of this letter is attached). You yourself questioned how the deal was constructed by calling for an open bid for Delphi's assets.

Delphi has numerous creditors. I ask the court not to overlook the creditors who are the salaried employees of GM/Delphi ( I write it this way since all of us spent most of our careers as GM employees before having to go with Delphi at the separation in 1999). We were the ones who labored to keep Delphi going. While Delphi had the legal right to terminate our health care and life insurance plans, Delphi has an obligation to our pension plan. Delphi must demonstrate to the court that its termination is absolutely critical to its future survival . If the plan must go to the PBGC, the PBGC must not be allowed to give away any rights it has on Delphi's assets and must carry out its responsibility to protect the salaried pension plan by seeking funds to bolster the underfunded plan. I ask that the court give a fair hearing to the salaried employees along with all the other creditors in this case.

Respectfully,

*John Batcha Jr.*

John Batcha Jr.
37616 Dartmouth Drive
Sterling Heights. MI 48310
586-979-1953

attached: 1) letter from US Represenatives re: how deal was constructed
2) Article re: Delphi profitability

# Congress of the United States
## Washington, DC 20515

June 24, 2009

The Honorable Timothy F. Geithner
Secretary of the Treasury
U.S. Department of Treasury
1500 Pennsylvania Avenue, NW
Washington, D.C. 20220

Dear Secretary Geithner:

We are writing in regards to the recent involvement by the U.S. Treasury Department's Automotive Task Force concerning the pension obligations of Delphi Corporation.

We are concerned about the inequitable decision to default the Delphi Corporation's salaried retiree pension plan to the Pension Benefit Guarantee Corporation (PBGC), while General Motors agreed to assume the auto parts supplier's hourly retiree pension obligations. Through referral to the PBGC, salaried retirees' pension payments are likely to be cut drastically, as much as 70 percent by some estimates. It is fundamentally unfair that two groups of retirees from the same company, who worked side-by-side for so many years, and who are faced with the same unfortunate situation, are being treated so differently by the federal government.

At a minimum, in the interest of transparency and accountability, we believe the 15,000 salaried Delphi retirees nationwide – not to mention the American taxpayers who now own a 60-percent stake in the new GM – deserve a full and public explanation of how this inequitable decision was made.

For this reason, we respectfully request that you direct the Auto Task Force to make public all documents concerning how this decision was reached, including all pertinent documents, written communications and memoranda between the Automotive Task Force, General Motors, Delphi Corporation and their agents or representatives.

Thank you for your urgent consideration of this important matter. We look forward to hearing from you.

Sincerely,

CHRISTOPHER J. LEE
Member of Congress

BRIAN HIGGINS
Member of Congress

_____
ROBERT LATTA
Member of Congress

_____
DANIEL MAFFEI
Member of Congress

_____
VERNON EHLERS
Member of Congress

_____
MARY JO KILROY
Member of Congress

_____
GREGG HARPER
Member of Congress

_____
STEVE DRIEHAUS
Member of Congress

_____
MICHAEL TURNER
Member of Congress

_____
PARKER GRIFFITH
Member of Congress

_____
MIKE ROGERS (MI)
Member of Congress

_____
SILVESTRE REYES
Member of Congress

_____
TODD R. PLATTS
Member of Congress

_____
ERIC MASSA
Member of Congress

_____
GINNY BROWN-WAITE
Member of Congress

_____
JIM GERLACH
Member of Congress

_____
DAVID CAMP
Member of Congress

_____
DAN BURTON
Member of Congress

_____
PETER HOEKSTRA
Member of Congress

_____
THADDEUS McCOTTER
Member of Congress

_____
CANDICE MILLER
Member of Congress

_____
DALE KILDEE
Member of Congress



# DELPHI BOSS SEES PROFIT

By JOSH KOSMAN

June 27, 2009 --

Things appear to be looking up for bankrupt auto supplier Delphi Corp.

CEO Rodney O'Neal told employees last week he expects the company to be profitable in early 2010 after it completes its sale to private-equity firm Platinum Equity Partners, considerably earlier than most observers had expected.

What's more, O'Neal told executives that Delphi is bidding for more than $13 billion in new business later this year, according to a person with direct knowledge of what O'Neal said.

O'Neal's comments come as a second source said that Delphi, currently on federal life support as it seeks a buyer, has revealed that other possible suitors have emerged over the past few days, and that some might look to bid on the company before a court-imposed July 10 deadline.

While Delphi this past spring agreed to be acquired by Platinum, a group of hedge funds holding nearly $3 billion in debt balked at getting paid back less than 20 cents on the dollar. Debt traders said the Delphi debt is currently trading at 30 cents on the dollar.

A judge agreed and ordered the company to re-open its auction.

Delphi could not be reached for comment.

Who the other bidders are could not be determined at press time. Conventional wisdom had been that the group of hedge funds, led by Elliott Associates, would likely take a run at the company.

Activist billionaire investor Carl Icahn was also discussed as a potential suitor; he had previously offered to buy Delphi. However, a source familiar with Icahn's thinking said he has lost interest in Delphi. Icahn could not be reached for comment.

US Bankruptcy Court Judge Robert Drain earlier this month set up a short auction process to determine if there were others interested in the company.

In the Platinum deal, the private-equity firm is putting down $500 million, while Uncle Sam-owned General Motors is providing $2 billion in cash and a $500 million loan. GM has also agreed to assume Delphi's debt in exchange for four plants. Delphi is a key GM supplier.

**Home**

NEW YORK POST is a registered trademark of NYP Holdings, Inc. NYPOST.COM, NYPOSTONLINE.COM, and NEWYORKPOST.COM
are trademarks of NYP Holdings, Inc.
Copyright 2009 NYP Holdings, Inc. All rights reserved.