Susan Przekop-Shaw
Dennis J. Raterink
Michigan Assistant Attorneys General
Labor Division
P.O. Box 30736
Lansing, MI 48909
(517) 373-1176/Fax: (517) 241-7987
Attorneys for Michigan Workers' Compensation Agency and
Michigan Funds Administration

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------x
In re:                                                              Case No. 05-44596 (RDD)

**DELPHI CORPORATION**, *et al.*,                                   Chapter 11

                    Debtors.                                  (Jointly Administered)
-----------------------------------------------------------x

**STATE OF MICHIGAN WORKERS' COMPENSATION AGENCY'S AND FUNDS ADMINISTRATION'S LIMITED OBJECTION TO DEBTORS' (A) SUPPLEMENT TO MOTION FOR ORDER (I) APPROVING MODIFICATIONS TO DEBTORS' FIRST AMENDED PLAN OF REORGANIZATION (AS MODIFIED) AND RELATED DISCLOSURES AND VOTING PROCEDURES (II) SETTING FINAL HEARING DATE TO CONSIDER MODIFICATIONS TO CONFIRMED FIRST AMENDED PLAN OF REORGANIZATION AND (B) REQUEST TO SET ADMINISTRATIVE EXPENSE CLAIMS BAR DATE AND ALTERNATIVE SALE HEARING DATE**

The State of Michigan Workers' Compensation Agency and Funds Administration[1] (Agency and Funds), by and through their counsel, Mike Cox, Attorney General, Susan Przekop-Shaw and Dennis J. Raterink, Assistant Attorneys General, file this Limited Objection to the Debtors' (A) Supplement To Motion For Order (I) Approving Modifications To Debtors' First Amended Plan Of Reorganization (As Modified) And Related Disclosures And Voting Procedures (II) Setting Final Hearing Date To Consider Modifications To Confirmed First

---

[1] This objection is filed solely on behalf of the State of Michigan Workers' Compensation Agency and Funds Administration and does not raise objections that other agencies of the State of Michigan may assert.

1

Amended Plan Of Reorganization And (B) Request To Set Administrative Expense Claims Bar Date And Alternative Sale Hearing Date ("Debtors' Motion") [Docket Item 16646].

I.  **Preliminary Statement**

The State of Michigan enacted the Worker's Disability Compensation Act (WDCA), MICH. COMP. LAWS § 418.101, *et seq* and MICH. ADMIN. CODE r. 418.1, *et seq* as amended, and in doing so, created a comprehensive mandatory workers' compensation scheme applicable to all Michigan employers and employees. This scheme includes an exclusive remedy through State administrative and judicial processes to address all questions arising under this scheme. MICH. COMP. LAWS 418.131. Thus, in filing this objection, neither the Agency nor Funds waives these State administrative and judicial processes. Any worker's compensation question created by Debtors in this federal bankruptcy must be resolved through Michigan's statutory processes consistent with Section 525 of the Bankruptcy Code.[2]

The Agency and Funds have no desire to delay the proposed reorganization or sale. The Agency and Funds, however, need to ensure that Debtors' injured workers have a continued source of payment to compensate them for their injuries and to protect Michigan's self-insured program for the benefit of all other Michigan self-insured employers and their employees. Based upon figures provided to the Agency by the Debtors, Debtors' estimated total workers' compensation obligations in Michigan amount to $121,802,946.25 with yearly payments approximately $24 million. Therefore, the Agency and Funds must object to the relief sought by Debtors to sell substantially all of its assets "free and clear of all Claims, liens, and encumbrances . . ." [First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-In-Possession (As Modified) ("The Plan") §7.6 (a),

---

[2] All statutory references are to the applicable section of the Bankruptcy Code, 11 U.S.C. ¶101 *et. seq.*

2

§7.7(b)(c). ]. Neither the proposed Order nor the Plan identifies any commitment to pay Debtors' workers' compensation obligations.

Specifically, the Agency and Funds object to the Debtors' Motion and Plan as they do not provide a firm commitment by the Purchasers to assume Debtors' workers' compensation obligations in Michigan. Moreover, the Plan refers to schedules and transactions sealed with the Court that are necessary to determine what if any liabilities the Purchasers plan to assume.

If the Debtor's Motion, Plan, and proposed Order are not amended to address these concerns, the Debtors' requested relief potentially: (1) violates Debtors' workers' compensation self-insurance authority in Michigan; (2) leaves Debtors' injured workers without a source of workers' compensation benefit payments; (3) decimates the Michigan' self-insurance fund program statutorily created as a means for the Michigan self-insured employers to operate in Michigan without acquiring workers' compensation insurance to cover their employees, and (4) violates 28 U.S.C. §959(b).

## II.    Debtors' and Purchaser's Michigan Self-Insurance Status

1.    In Michigan, all matters pertaining to workers' compensation are governed by the Workers' Compensation Disability Act (WDCA) MICH. COMP. LAWS § 418.101, *et seq*. The State of Michigan established the Agency and its Director, bestowed them with all powers granted under the WDCA, and charged them with enforcing the WDCA.

2.    In Michigan, an employer has three ways in which it can fulfill its mandatory obligations under the WDCA. An employer can insure against liability by entering a contract and paying its premium with an insurer authorized to transact workers' compensation insurance business within this state (MICH. COMP. LAWS § 418.611(1)(b)); joining with other employers to pool their workers' compensation obligations under conditions established by the Agency,

(MICH. COMP. LAWS § 418.611(2)); or, acquiring the Agency's authority to be a self insurer (MICH. COMP. LAWS § 418.611(1)(a)).

3.    Here, the Debtors have been self-insured in Michigan since 1999 and until filing of their Motion have assured the Agency in writing that it would continue to meet its Michigan workers' compensation obligations in order to maintain that self-insured status. The Debtors' Motion, Plan, and Master Disposition Agreement ("MDA"), however, lacks any detail to determine whether Debtors and/or Purchasers will meet their statutory workers' compensation obligations.

    A.    <u>The Plan and the MDA do not create a sufficient commitment on behalf of the Purchasers to assume Debtors' workers' compensation obligations in Michigan.</u>

4.    Debtors indicate that "Debtors have reached an agreement with Parnassus Holdings II, LLC ("Parnassus"), an affiliate of Plantinum Capital Equity Partners, L.P., and with support from the Treasury Department, GM Components Holding, LLC ("GM Components") an affiliate of GM, whereby the Debtors would sell certain of their North American assets to GM Components and contemporaneously effectuate transactions through which Parnassus would operate certain of Delphi's U.S. and non-U.S. businesses going forward with emergence capital commitments of approximately $3.6 billion and without the legacy costs associated with the North American sites that are being acquired by GM Components together with Delphi's global Steering business." (Debtors' Motion, ¶7, pp 7-8) Subsequent to the filing of this Motion, this Court entered an Order on June 16, 2009 requiring Debtors to implement an open and competitive bidding process for their businesses. At this time, the Purchasers continue to be unknown and thus, the Agency and the Funds have no assurance that Sellers and Purchasers will be in compliance with Michigan law.

4

5.  The Plan and the Master Disposition Agreement, attached to Debtors' Motion, fails to detail which of Debtors' specific assets will be purchased and which of Debtors' specific liabilities will be assumed by the Purchasers. In fact, neither the Plan nor the MDA references workers' compensation. Instead the reader is referred to various schedules under seal or not otherwise attached to Debtors' pleadings including but not limited to Schedules 1.1.B Assumed Administrative Liabilities; 2.3.2 Administrative Claims; 4.10 Compliance with Law; 4.13.1 Employee Lists; 4.13.2 Employee Benefit Plan; 4.13.5 Proceedings relating to Employee Benefit Plan; 4.13.9 Contributions to Seller Employee Benefit Plan; and the "Transition Services Agreement" (MDA, p 69.)

6.  The MDA does make the representation that each Seller represents its applicable "Business is currently in material compliance with all material Laws." (MDA §4.10.) But without the requisite facts, neither the Agency nor the Fund can represent compliance with the WDCA.

7.  By providing a potential avenue to shift any workers' compensation obligations from an assumed liability of the Purchasers to a retained liability of the Debtor, the Purchasers have, in effect, made no commitment to assume any workers' compensation obligations in any state.

B.  Current Status of Debtors' Workers' Compensation Obligations

8.  The Agency and the Funds acquired, through the General Motors Corporation Chapter 11 bankruptcy proceedings in the Southern District of New York. *In re: GM,* Case No. 05-44481, General Motors Company's commitment to assume workers' compensation liabilities for those Delphi operations whose purchases are approved by this Court in exchange in part for being granted self-insurer status as a Michigan employer. Dependent upon this Court's ruling, this agreement may cover certain Delphi pending workers' compensation obligations.

9.  The Agency discovered in the last week the existence of workers' compensation insurance coverage for Delphi's Michigan operations between October 1, 2000 through September 30, 2002 and October 1, 2003 through the date of this filing. The Agency will be providing notice to Pacific Employers Insurance Company and Ace American Insurance Company of their responsibility for these dates of coverage. If these insurance companies challenge the Agency's finding then Delphi and the potential Purchasers will remain responsible for the statutory benefits due to Michigan injured workers.

10. None of the current pleadings reflect what action has or will take place in regard to the Delphi's Flint East operations. Although Flint East originally was identified as an UAW Footprint Facility in the first Master Restructuring Agreement filed with this Court on September 12, 2008, no reference to this facility can be found in the Debtors' amended pleadings. With no knowledge as to how this operation and its employees will be treated in the future, the Agency and the Funds cannot take the necessary steps to protect the workers' compensation obligations incurred by injured employees at this operation.

11. In order to acquire and maintain self-insurer status in Michigan, an employer must demonstrate that it can meet <u>all present and future obligations</u> under the WDCA. Michigan treats as present obligations any workers' compensation benefits coming due no matter when they occurred and thus, an entity that intends to continue the operations of a self-insured employer must pay for such obligations. MICH. COMP. LAWS § 418.611(5). Moreover, in order to maintain or acquire self-insured status, the Agency determines whether an employer demonstrates fiscal responsibility and viability. MICH. COMP. LAWS § 418.611(1)(a); MICH. ADMIN. CODE r. 408.43a (2007); r.408.43c (1999). If these requirements are not met, the Agency may deny or revoke an employer's self-insured authority - - leaving the employer the statutory

6

obligation to acquire workers' compensation insurance in order to operate as an employer in Michigan.

12. Without knowing the exact parameters of Debtors' final agreement or the Purchasers' intentions in regard to this transaction, including the full extent of the assumption of Debtors' workers' compensation obligations, the Agency and Funds have no option but to object to Debtors' Sale Motion.

13. As the Purchasers have not made a firm commitment to assume all of Debtors' workers' compensation obligations, a significant possibility exists that the Debtors will retain the workers' compensation obligations. At this juncture, Debtors' retained assets may be insufficient to secure the payment of their workers' compensation obligations. Under such circumstances, the Agency may be statutorily obligated to immediately revoke the Debtors' self-insured authority. If Debtors' self-insured authority was revoked, the Debtors would be required to immediately acquire workers' compensation insurance coverage in order to operate in Michigan. MICH. COMP. LAWS § 418.611 (1).

14. Additionally, should the Purchasers fail to assume the entirety of Debtors' workers' compensation obligations, the workers' compensation benefits of transferred employees could be affected, as the Purchasers, being new employers in Michigan, could be prohibited from obtaining self-insurance authority in Michigan:

> An employer that is in business less than 5 years shall not be considered for self-insured authority unless its workers' disability compensation liability will be guarantied [sic] by a parent corporation or combinable affiliated entity that has been in business not less than 5 years and that would qualify for self-insured authority in Michigan. [MICH. ADMIN. CODE r. 408.43a(2) (2007)]

Without self insured status, the Purchasers would need to acquire workers' compensation insurance coverage in order to operate in Michigan.

7

15. Due to the lack of Debtors' and Purchasers' commitment as to Michigan's pending workers' compensation claims, the Funds Administration filed administrative expense claims with this Court in the amount of $5,557,750 and intend to file excise tax claims in the amount of $25,460,432.50 if General Motors Company is approved as a purchaser and substantially higher if it is not.

### III. Debtors' proposed sale could leave Debtors' injured workers without a source of benefit payments.

16. The Funds Administration is an entity made up of three funds: (1) The Second Injury Fund, (2) the Silicosis Dust Disease and Logging Fund and (3) the Self-Insurers' Security Fund, statutorily created to provide benefits under the WDCA to injured workers. MICH. COMP. LAWS §§ 418.501-418.561. The Self-Insurers' Security Fund is responsible for paying workers' compensation benefits to injured workers who were employed by any self-insured employer that became insolvent. MICH. COMP. LAWS § 418.537.

17. If the Purchasers do not assume the Debtors' workers' compensation obligations and Debtors' retained assets are insufficient to pay its workers' compensation obligations, Michigan's Self-Insurers' Security Fund would be forced to assume Debtors' workers' compensation obligations, if no other source of funding is available.

18. If this Fund was required to assume Debtors' workers' compensation obligations, the Self-Insurers' Security Fund would be insolvent in a matter of weeks. Based upon figures provided to the Agency by the Debtors, Debtors' estimated total workers compensation obligations may exceed $121 million, with yearly payment obligations of over $24 million. Even if the Funds Administration levies emergency assessments on existing self-insured employers, including Debtors themselves, the Self-Insurers' Security Fund's maximum possible

8

balance would be approximately $9 million – substantially less than needed to cover the Debtors' statutory obligations of over $121 million.

19.  The concern about a source for payment of benefits applies not only to Debtors' injured employees, but to all injured employees in Michigan entitled to benefits from an insolvent self-insured employer. If the proposed reorganization plan or sale is approved and the Debtors are unable or unwilling to continue paying their workers' compensation obligations, the Self-Insurers' Security Fund would eventually become insolvent, leaving all eligible injured workers of Michigan's self-insured employers without a source of benefits.

**IV.    Debtors' Proposed Order may violate 28 U.S.C. §959(b).**

20.  Debtors should not be able to preempt Michigan law through this proposed Order for no provision of the Bankruptcy Code preempts all applicable state law. "Implicit in Section 959(b) is the notion that the goals of the federal bankruptcy laws, including rehabilitation of the debtor, do not authorize transgression of state laws setting requirements for the operation of the business. . . .*In re Quanta Resources Corp.,* 739 F.2d 912, 919 (3d Cir. 1984), *aff'd sub nom., Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Prot.,* 474 U.S. 494 (1986).

21.  Debtors' Motion, Plan, and MDA, if approved as proposed, could result in Debtors or Purchasers lacking any method to secure their workers' compensation obligations in Michigan. Debtors cannot be provided with an avenue to avoid regulatory requirements that otherwise are applicable to all employers in Michigan. As recently stated by another bankruptcy court:

> As bankruptcy is not intended to be a safe haven from compliance with regulatory requirements generally applicable to the ongoing operations of a debtor, the compliance obligations of operating debtors include adherence to bonding and financial assurance requirements imposed by laws generally applicable to the business of the debtor. [*James Bickford v Lodestar Energy, Inc,* 310 BR 70 (ED Kentucky 2004)]

9

22.   Debtors therefore must take adequate steps to assure that their Michigan' statutory obligations are met and all state laws are followed. Otherwise, Debtors are violating federal law.

V.   **Conclusion**

23.   The Agency and Funds submit that the arguments and authorities set forth in this Limited Objection satisfy the requirements of Local Bankruptcy Rule 9013-1(b) and that submission of a separate memorandum of law should not be required.

24.   The Agency and Funds are filing the instant objection in the interests of time and as a courtesy to creditors, the Purchasers, and this Court. Significant legal concerns exist that Debtors' pleadings and proposed order as currently written violate Michigan law and that if approved, have devastating ramifications on Debtors' injured workers, Michigan's self-insured employers, and their employees. The Agency and Funds respectfully reserve their right to supplement this objection, in accordance with the deadlines set by this Court.

Respectfully submitted,

MIKE COX
Michigan Attorney General

Dated: July 14, 2009

Susan Przekop-Shaw (P30496)
Dennis J. Raterink (P52678)
Michigan Assistant Attorneys General
Labor Division
P.O. Box 30736
Lansing, Michigan 48909
Telephone: (517) 373-1176
Fax: (517) 241-7987

10