David A. Rosenzweig
Johnathan C. Bolton
FULBRIGHT & JAWORSKI L.L.P.
666 Fifth Avenue
New York, New York 10103
Tel: (212) 318-3000
Fax: (212) 318-3400

Vincent A. D'Agostino
Eric H. Horn
Joseph A. Becht, Jr.
LOWENSTEIN SANDLER PC
65 Livingston Avenue
Roseland, New Jersey 07068
Tel: (973) 597-2500
Fax: (973) 597-2400

*Counsel to the AT&T Entities*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>Delphi Corporation, *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 05-44481 (RDD)<br><br>(Jointly Administered) |

**LIMITED OBJECTION OF THE AT&T ENTITIES TO THE FIRST AMENDED JOINT PLAN OF REORGANIZATION OF DELPHI CORPORATION AND CERTAIN AFFILIATES, DEBTORS AND DEBTORS-IN-POSSESSION, AS MODIFIED**

AT&T Corp., and its affiliates and subsidiaries, including, AT&T Solutions Inc. ("AT&T Solutions") and SBC Global Services Inc. ("SBC Global" and collectively, the "AT&T Entities"), by and through their undersigned counsel, hereby submit this limited objection (the "Objection") to the First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-in-Possession, as Modified, and respectfully state as follows:

## BACKGROUND

1. On October 8 and 14, 2005 (the "Petition Dates"), the Debtors filed their voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Court" or the "Bankruptcy Court").

2. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession under Bankruptcy Code §§ 1107(a) and 1108.

3. Prior to the Petition Dates, the AT&T Entities provided certain telecommunications and related services to the Debtors. During this time, the AT&T Entities were parties to several agreements with the Debtors (collectively, the "AT&T Contracts").

4. Post-petition, in August 2007, the Debtors entered into agreements with Computer Sciences Corporation ("CSC") under which the Debtors assigned all of their rights and obligations under the AT&T Contracts to CSC (the "Assignment and Assumption Agreements"). True and correct copies of the Assignment and Assumption Agreements are annexed hereto as **Exhibit A** and incorporated herein by reference for all purposes. Under the new arrangement, the AT&T Entities provided the services to CSC which acted as an integrator of telecommunication services for the Debtors. Although the Debtors sought and obtained the consent of the AT&T Entities to make the assignments, the Debtors did not file formal motions to assume and assign the AT&T Contracts under Section 365 of the Bankruptcy Code.

5. On December 10, 2007, the Debtors filed their First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-in-Possession (Docket No. 11386) (the "Plan") and the First Amended Disclosure Statement with respect to the Plan (Docket No. 11388).

6. On January 25, 2008, the Court entered an order confirming the Plan (Docket No. 12359) (the "Confirmation Order"), and the Confirmation Order became final on February 4, 2008. The Confirmation Order provided that all executory contracts were to be deemed automatically assumed in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, unless among other things, such executory contracts had expired or terminated on or prior to December 31, 2007 pursuant to their own terms. The Confirmation Order provided that if the Plan was not consummated, then the assumption or rejection of executory contracts affected by the Plan shall be null and void. The Confirmation Order provided that parties to executory contracts assumed by the Plan had to file a cure claim within 45 days after entry of the Confirmation Order.

7. Within the 45-day time period provided by the Confirmation Order, on March 6, 2008, AT&T Corp. and AT&T Solutions filed a Notice of Cure Claim in Accordance with the First Plan (the "AT&T Cure Claim") (Docket No. 12993). Pursuant to the AT&T Cure Claim, AT&T Corp. and AT&T Solutions asserted a cure claim in the aggregate amount of $4,056,663.77 in connection with amounts owing by the Debtors pursuant to the AT&T Contracts to which AT&T and AT&T Solutions were parties.

8. Similarly, on March 6, 2008, SBC Global filed a notice of Cure Claim in accordance with the Plan (the "SBC Cure Claim") (Docket No. 12995). Pursuant to the SBC Cure Claim, SBC Global asserted a cure claim in the aggregate amount of $3,244,533.05 in connection with amounts owing by the Debtors pursuant to the AT&T Contracts to which SBC Global is a party.

9. On May 29, 2008, the Court entered an Order (the "Cure Proposal Order") (Docket No. 13696), provisionally allowing certain cure proposals at their respective reconciled

amounts. The Cure Proposal Order set the AT&T Entities' cure amounts as follows: (i) the AT&T Cure Claim -- $4,048,148.31; and (ii) the SBC Cure Claim -- $3,082,258.90.

10. On October 3, 2008, the Debtors filed a motion (Docket No. 14310) for entry of an order approving (i) certain modifications to the confirmed Plan and related modifications to the Disclosure Statement and (ii) related procedures for re-soliciting votes on the confirmed Plan. That motion was supplemented by the Debtors' motion dated June 1, 2009 (the "Plan Modification Motion") (Docket No. 16646).

11. On June 16, 2009, the Debtors filed their First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-in-Possession, as Modified (Docket No. 17030) (the "Modified Plan") and the First Amended Disclosure Statement, as Modified with respect to the Modified Plan (Docket No. 17031).

12. Also on June 16, 2009, the Court entered an Order (Docket No. 17032) approving the Plan Modification Motion. Such order established, among other things, procedures for the re-solicitation of votes for the Modified Plan, and established key dates and deadlines related to confirmation of the Modified Plan.

13. Section 8.1(a) of the Modified Plan provides that all executory contracts and unexpired leases to which any Debtor is a party shall be deemed automatically assumed in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code as of the Effective Date (as defined in the Modified Plan), unless such executory contracts or unexpired leases (i) have been previously rejected by the Debtors by final order of the Bankruptcy Court, (ii) shall be the subject of a motion to reject, or that otherwise authorizes rejection, filed on or before the date of entry of an order approving the Modified Plan, (iii) shall be rejected or assumed pursuant to a motion to sell or transfer property or assets filed by the

Debtors prior to the Effective Date pursuant to their own terms, (iv) shall have expired or terminated (and not otherwise extended) on or prior to the Effective Date pursuant to their own terms, (v) are listed on the schedule of rejected contracts attached as Exhibit 8.1(a) -- Rejected Contracts to the Modified Plan or (vi) are otherwise rejected pursuant to the terms of the Modified Plan and/or upon the direction of either Buyer (as defined in the Modified Plan) pursuant to the Master Disposition Agreement.  *See* Modified Plan at § 8.1(a).

14. On July 2, 2009, the Debtors filed their Notice of Filing of Plan Exhibits with respect to the Modified Plan (Docket No. 17557).  These exhibits included Exhibit 7.7, Certain Schedules And Exhibits To Master Disposition Agreement ("Exhibit 7.7"), and Exhibit 8.1(A) Executory Contracts and Unexpired Leases to be Rejected ("Exhibit 8.1(A)").  Exhibit 7.7 contains Schedule 9.3, Assumed and Assigned Contracts.  AT&T Corp. and AT&T Solutions were listed on this schedule as having an "Assumed Contract."  Notably, none of the AT&T Entities' contracts were listed on Exhibit 8.1(A) as a "Rejected Contract."

15. However, also on or about July 2, 2009, the Debtors served the AT&T Entities with two Notices of Non-Assumption under the Modified Plan with Respect to Certain Expired or Terminated Contracts or Leases Previously Deemed to be Assumed or Assumed and Assigned under Confirmed Plan of Reorganization (the "Non-Assumption Notices").  The Non-Assumption Notice stated that certain contracts will not be assumed, or assumed and assigned by the Debtors as provided in the Modified Plan.  The contracts listed on the Non-Assumption Notices are identified as follows: (i) AT&T Solutions Inc. -- contract MNA1999-1119; (ii) AT&T Corp. -- contract MTSA1999-1119; and (iii) SBC Global Services Inc. -- contract MA Feb. 2003 (collectively, the "Non-Assumed Contracts").  The Non-Assumed Contracts may be among the AT&T Contracts whose cure amounts were provisionally allowed pursuant to the

Cure Proposal Order.

## LIMITED OBJECTION

**A.     The Debtors Should Clarify Their Position With Regard to The AT&T Contracts.**

16.     The AT&T Entities file this limited objection requesting that the Debtors clarify their intentions with respect to the AT&T Contracts. As noted *supra*, the AT&T Entities have received conflicting schedules and/or notices regarding the Debtors' intentions relative to the AT&T Contracts. Indeed, on July 2, 2009, the Debtors filed Exhibit 7.7 which scheduled AT&T Corp.'s and AT&T Solutions' contacts as "assumed contracts." Notwithstanding this, the AT&T Entities received the Non-Assumption Notices which indicate that the Debtors are <u>not</u> assuming some or all of the AT&T Contracts.

17.     Accordingly, the AT&T Entities respectfully submit that the Debtors should be required to clarify their intention (*i.e.*, assumption or rejection) relative to the AT&T Contracts. To the extent that the Debtors have previously assumed and assigned the AT&T Contracts, the Debtors cannot now reject those contracts and, in particular, the significant cure claims associated therewith.

**B.     The AT&T Contracts Have Already Been Assumed.**

18.     To the extent the Debtors remove the AT&T Contracts from Exhibit 7.7, the AT&T Entities submit that such contracts have already been assumed. The AT&T Contracts were among the contracts to be assumed under the Plan and the cure claims under the contracts were provisionally allowed under the Cure Proposal Order. The Court should not permit the Debtors to receive the benefits of the AT&T Contracts post-petition, assign those valuable contracts to a third party, and then purport to reject them to escape paying the cure amounts due thereunder.

19.     The Debtors have already assumed certain contracts pursuant to the Assignment and Assumption Agreements entered into in 2007.  The Debtors' assumption of those AT&T Contracts in 2007 was effective even without a Court order since the Debtors unequivocally demonstrated their intent to assume and assign the contracts by entering into the Assignment and Assumption Agreements.  Based on their prior actions, the Debtors are estopped from taking the position that those AT&T Contracts were not previously assumed.

20.     In the case of *In re Frontier Properties, Inc.*, 979 F.2d 1358 (9th Cir. 1992), the Ninth Circuit considered the issue of whether a bankruptcy trustee's letter stating that he assumed a contract was an effective assumption under section 365, such that the trustee could not later file a motion to reject that contract.  The trustee argued that his assumption was invalid because he did not file a motion seeking court approval under § 365(a) and did not provide the assurances required by § 365(b)(1) regarding cure of defaults and future performance.  *See id*. at 1365.  However, the Court found that the trustee's letter, that was sent in accordance with a prior stipulation entered into by the parties, constituted a valid assumption of the contract.  *See id*. at 1366.  The Court also found that the trustee's subsequent rejection of that contract constituted a breach under § 365(g)(2)(A) entitling the contract-party to an administrative claim for its damages.

21.     Similarly, in the case of *Carlisle Homes, Inc. v. Azzari* (*In re Carlisle Homes, Inc.*), 103 B.R. 524, 536 (Bankr. D.N.J. 1988), the U.S. District Court of New Jersey found that a debtor had validly assumed a contract by writing a letter informing the counter-party of his intent to exercise an option under that contract.  The counter-party argued that the debtor had failed to obtain a court order approving the assumption and therefore, the option had expired.  *See id*. at 531.  In examining this issue, the Court found that, by virtue of the debtor's letter that

-7-

was sent before the option period had expired under the contract, the debtor had thereby informed the non-debtor party to the contract of its intention to exercise the option. *See id*. at 535. In finding that the debtor had assumed the contract through its actions, the Court explained that a debtor may assume or reject an executory contract by "'clearly communicating in an unequivocal manner its intention to either assume or reject to the [offeror].'" *Id*. (citing *In re 1 Potato 2, Inc.*, 58 B.R. 752, 754-55 (Bankr. D. Minn. 1986)).

22. The *Carlisle Homes* Court explained that assumption or rejection of a contract by a debtor is separate and distinct from the Court's approval of such assumption or rejection. The Court explained:

> Court approval . . . is not a condition precedent to an effective assumption or rejection but rather, the statutory language in section 365(a) serves to indicate that the decision of the trustee or debtor-in-possession, and its business judgment, is subject to review and possible reversal by the court.….Section 365 contemplates two distinct actions, one by the trustee (or debtor in possession) and one by the court. The trustee assumes or rejects, and the court approves. The Code does not specify how the trustee is to assume or reject a lease, but the trustee's action is different from the court's. Such is the import of section 365(a), which says that 'the trustee, subject to the court's approval, may assume or reject any . . . . unexpired lease of the debtor.'

*Id.* at 536 (citations omitted).

23. Likewise, in the case of *United States v. Midwest Service and Supply Company, Inc.* (*In re Midwest Service and Supply Company, Inc*.), 44 B.R. 262, 265 (D. Utah. 1983), the U.S. District Court in Utah found that a debtor had impliedly assumed certain executory contracts with the U.S. government when it sought the benefit of those contracts post-petition, but attempted to avoid the corresponding obligations imposed under those contracts. At issue in *Midwest Service* was whether the U.S. government violated the automatic stay when it sought recoupment of certain prepetition overpayments it had made under the contracts before

they had been assumed. *See id*. at 265. The debtor claimed that the government could not seek to recoup overpayments under those contracts since there was no formal court order allowing the debtor to assume the contracts. *See id*. The U.S. government argued that since the debtor had accepted the benefits of the contracts post-petition, the debtor should also be subject to the burdens of those contracts. *See id*. at 264. The District Court agreed, explaining:

> having sought the benefit of post-petition performance under the contracts, the debtor must also accept the burden of the liquidation portion of the progress payment contract clause. As long as the debtor continues to receive the benefits under a contract it must also bear the burdens of obligations imposed under the contract. *In re Yonkers Hamilton Sanitarium, Inc*., 22 B.R. 427, 435 (Bankr. S.D.N.Y. 1982). The fact that neither the debtor nor the government applied to the court for a formal assumption or rejection of the contracts is not dispositive. That neither party to an executory contract takes action with respect to assumption or rejection does not mean that the contract has no significance. Even where court approval was not obtained, the debtor-in-possession may be deemed to have adopted the contract where it received benefits *In re Shoppers Paradise, Inc*., 8 B.R. 271, 279 (Bankr. S.D.N.Y. 1980).

*Id*. at 265.

24.    The rule of *Midwest Service* is applicable here. In this case, the Debtors took actions post-petition to assign certain AT&T Contracts to a third party, CSC. The Debtors subsequently agreed to the cure amounts due under those assigned contacts and did not discharge their obligations to provide those cure payments to the AT&T Entities. The Court should not permit the Debtors to avoid having to make the previously-agreed cure payments to the AT&T Entities by now claiming that the AT&T Contracts can be rejected.

25.    Further, by operation of law, the Debtors have necessarily already assumed certain AT&T Contracts. Section 365(f)(2) of the Bankruptcy Code provides that:

> The trustee may assign an executory contract or unexpired lease of the debtor **only if**—

>    (A) the trustee **assumes** such contract or lease in accordance with the provisions of this section; **and**
>
>    (B) **adequate assurance of future performance by the assignee of such contract or lease is provided**, whether or not there has been a default in such contract or lease..

11 U.S.C. § 365(f)(2).

26.  Since the Debtors assigned certain AT&T Contracts to CSC in 2007, by operation of section 365(f)(2), they must have assumed those AT&T Contracts before doing so. The legislative history of section 365 supports this interpretation. Congress's intent in imposing conditions under section 365 was "to insure that the contracting parties receive the full benefit of their bargain if they are forced to continue performance." *In re Superior Toy & Mfg. Co.*, 78 F.3d 1169, 1174 (7th Cir.1996) ("'If the trustee is to assume a contract or lease, the court will have to insure that the trustee's performance under the contract or lease gives the other contracting party the full benefit of his bargain.'" (quoting S.Rep. No. 989, 95th Cong., 2d Sess. 59 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5845; H.R.Rep. No. 595, 95th Cong., 2d Sess. 348 (1978), reprinted in 1978 U.S.C.C.A.N. 5963, 6304-05.)). In this case, the AT&T Entities have performed all of their obligations under the AT&T Contracts post-petition. The Debtors elected, post-petition, to assign their rights and obligations under certain of the AT&T Contracts to a third party. By doing so, the Debtors necessarily had to comply with their obligations under section 365(f)(2) of the Bankruptcy Code.

27.  In addition, the Court should require the Debtors to pay the cure costs as a matter of equity. The bankruptcy court is essentially a court of equity. *See, e.g., National Labor Relations Board v. Bildisco & Bildisco*, 465 U.S. 513, 527 (1984). Bankruptcy court "proceedings [are] inherently proceedings in equity," *Local Loan Co. v. Hunt*, 292 U.S. 234, 240 (1934), and the bankruptcy court "applies the principles and rules of equity jurisprudence,"

*Pepper v. Litton*, 308 U.S. 295, 304 (1939), including principles of estoppel, *see generally, e.g., Momentum Mfg. Corp. v. Employee Creditors Comm. (In re Momentum Mfg. Corp.)*, 25 F.3d 1132, 1136 (2d Cir. 1994) (debtor that had represented that employees would receive severance payments, and thereby obtained needed votes from the employees in favor of reorganization plan, was estopped from amending plan to eliminate severance); *In re Garfinkle*, 672 F.2d 1340, 1346-48 (11th Cir.1982) (purchasers estopped from seeking recovery of deposit made pursuant to court-approved contract).

28.  Equitable estoppel is grounded on notions of fair dealing and good conscience and is designed to aid the law in the administration of justice where injustice would otherwise result. *See e.g, Readco, Inc. v. Marine Midland Bank*, 81 F.3d 295, 301 (2d Cir. 1996). The doctrine of equitable estoppel is "imposed by law in the interest of fairness to prevent the enforcement of rights which would work fraud or injustice upon the person against whom enforcement is sought and who, in justifiable reliance upon the opposing party's words or conduct, has been misled into acting upon the belief that such enforcement would not be sought." *Id*.

29.  One species of equitable estoppel is promissory estoppel, which may be applied where there has been a clear and unambiguous promise, reasonable and foreseeable reliance on the promise, and an unconscionable injury as a result of the reliance. *See, e.g., Merex A.G. v. Fairchild Weston Sys., Inc.*, 29 F.3d 821, 824 (2d Cir. 1994), *cert. denied*, 516 U.S. 1084 (1995). Based on equitable principles, once a party accepts the proceeds and benefits of a contract, that party is estopped from renouncing the burdens the contract places upon him. *See, e.g., Eastern Air Lines, Inc. v. Insurance Company of the State of Pennsylvania (In re Ionosphere Clubs, Inc.)*, 85 F.3d 992 (2d Cir. 1996).

30. In this case, the Debtors assumed and assigned certain of the AT&T Contracts to a third party and agreed to the cure amounts due. The AT&T Contracts were assumed on the condition that a plan become consummated. The Plan (as modified) will shortly be consummated. During the past year, the AT&T Entities continued to perform and acted on reliance on the assumption of the contracts. The Debtors thus are equitably estopped from arguing that these AT&T Contracts have not already been assumed and a cure payment is not now due.

**WHEREFORE**, the AT&T Entities respectfully request that the Court (i) instruct Debtors to clarify their intentions relative to the AT&T Contracts, (ii) find that certain of the AT&T Contracts were previously assumed by Debtors, (iii) order that all applicable cure costs under the AT&T Contracts be paid to the AT&T Entities and (iv) grant the AT&T Entities all such other and further relief as is deemed just and proper.

Dated: July 15, 2009

Respectfully submitted,

FULBRIGHT & JAWORSKI L.L.P.

By: /s/ David A. Rosenzweig
David A. Rosenzweig
Johnathan C. Bolton
666 Fifth Avenue
New York, New York 10103
Tel: (212) 318-3000
Fax: (212) 318-3400

and

By: /s/ Eric H. Horn
Vincent A. D'Agostino
Eric H. Horn
Joseph A. Becht, Jr.
LOWENSTEIN SANDLER PC
65 Livingston Avenue
Roseland, New Jersey 07068
Phone: (973) 597-2500
Fax: (973) 597-2400

*Counsel to the AT&T Entities*