**Hearing Date and Time**: July 23, 2009 at 10:00 a.m.
**Objection Deadline**: July 15, 2009

Robert V. Sartin, Esq.
Frost Brown Todd LLC
250 W. Main Street, Suite 2800
Lexington, Kentucky 40507
Tel: (859) 231-0000

*Attorney for Toyota Motor Engineering and*
*Manufacturing North America, Inc.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: | Chapter 11 |
| DELPHI CORPORATION, INC., et al., | Case No. 05-44481 (RDD) |
| Debtors. | (Jointly Administered) |

**OBJECTION OF TOYOTA MOTOR ENGINEERING & MANUFACTURING NORTH AMERICA, INC. TO (A) CONFIRMATION OF DEBTORS' MODIFICATIONS TO THE FIRST AMENDED PLAN OF REORGANIZATION AND (B) SECTION 363 IMPLEMENTATION AGREEMENT**

Comes Toyota Motor Engineering & Manufacturing North America, Inc., for itself and its manufacturing subsidiaries and affiliates (collectively, "Toyota"), a party-in-interest herein, through counsel, and for its objection (the "Objection") to (A) the Debtors' proposed Modifications to First Amended Plan of Reorganization (the "Modified Plan") [Docket No. 16646], and (B) the Section 363 Implementation Agreement [Docket No. 17558], respectfully states as follows:

### First Amended Plan of Reorganization

1.      Debtors, through certain Terms and Conditions by and among the Debtors and Toyota (the "Terms and Conditions") and related purchase orders (collectively, the "Contracts"), supply certain automobile parts to Toyota.  Pursuant to the Terms and Conditions, which govern all purchase orders between Debtors and Toyota, the Debtors have contractual obligations, including without limitation, warranty claims, arising out of or relating to products manufactured or sold by Debtors to Toyota (the "Contractual Obligations").

2.      Debtors' First Amended Plan of Reorganization was confirmed by this Court on January 25, 2008 (the "Plan") [Docket No. 12359].  Pursuant to the Plan, Toyota's Contracts were included within the definition of "Ordinary Course Customer Obligations."  *See* Plan, §1.141.  By its definition, Ordinary Course Customer Obligations included all ongoing Contractual Obligations.  The Ordinary Course Customer Obligations were in turn included in the definition of "Flow-Through Claims," which were treated under Section 5.2 of the Plan as follows:

> the legal, equitable and contractual rights of each holder of a Flow-Through Claim, if any, shall be unaltered by the First Amended Plan and shall be satisfied in the ordinary course of business at such time and in such manner as applicable Reorganized Debtor is obligated to satisfy each Flow-Through Claim.

Accordingly, Toyota's Contracts, including the Contractual Obligations, were preserved in their entirety and unaffected by the Plan, and Toyota expected to continue doing business as usual with one or more of the reorganized Debtors pursuant to the terms of those Contracts.

3.      Under the terms of the Plan, any party wishing to assert a cure was required to file a cure notice by March 10, 2008.  Any party not asserting a cure by March 10, 2008 was deemed to have waived its right to assert default requiring cure and was barred from asserting a claim

2

that arose prior to March 10, 2008. *See* Plan, §8.2(b). However, Section 8.1 of the Plan expressly provided that "notwithstanding the foregoing or anything else in this Article VIII… (iii) all executory contracts memorializing Ordinary Course Customer Obligations shall receive the treatment described in Article 5.2 of this Plan." *See* Plan, Section 8.1(a). Therefore, Toyota was not required to file a cure notice, as its unpaid Contractual Obligations were to be paid in the ordinary course of business pursuant to Sections 1.141 and 5.2 of the Plan.

### The Modified Plan

4.    On June 1, 2009, Debtors proposed certain modifications to the Plan pursuant to 11 U.S.C. § 1127 (the "Modified Plan") [Docket No. 16646]. The Modified Plan deleted the defined term "Ordinary Course Customer Obligation" and removed Ordinary Course Customer Obligations from inclusion in the Flow-Through Claims. *See* Modified Plan, §1.93. As such, Toyota's Contracts are no longer included in the Flow-Through Claims to be satisfied in the ordinary course of business.

5.    Under the Modified Plan, Toyota's Contracts are now included in the definition of "Other Executory Contracts." The Modified Plan provides that all executory contracts not otherwise rejected are automatically assumed, and Debtors may add or delete contracts from the list of those rejected/assumed up to and including July 23, 2009. *See* Modified Plan, §8.1. Finally, the Modified Plan provides that Other Executory Contracts to be assumed and assigned shall be satisfied solely by Cure. Under the Modified Plan, the deadline for filing a cure proposal still stands at March 10, 2008, as established by the original Plan.

6.    On June 15, 2009, the Debtors filed a Master Disposition Agreement detailing the terms of the assignment of certain of the Debtors' assets to one or more purchasers, including Parnassus Holdings, II, LLC ("Parnassus") and GM Components Holdings, LLC ("GM

Components" together with Parnassus, the "Purchasers" or each individually, a "Purchaser").

Section 35 of the Modification Procedures Order [Docket No. 17032], provides that the Debtors

shall serve notice indicating which contracts are being assigned to each Purchaser [Docket No.

18075], and the counterparty to any such contract has ten days thereafter to object to the

proposed assignment, but shall not be entitled to dispute previously established cure amounts.[1]

To the extent the Modified Plan is not approved, the Debtors intend to pursue a Section 363 sale

of their assets pursuant to the Section 363 Implementation Agreement (the "363 Agreement").

## Objection

7.      Toyota hereby informs the Court that it is filing this objection as a precautionary

measure, as the parties are now negotiating in good faith to resolve existing Contractual

Obligations which must be assumed and/or cured.  The parties expect to have these issues

resolved shortly.

8.      Toyota objects to the Modified Plan and the 363 Agreement because the proposed

treatment of its Contracts thereunder is in violation of Section 365 of title 11 of the United States

Code (the "Bankruptcy Code").  One of the most basic tenets of §365 of the Bankruptcy Code is

that if a trustee or debtor in possession wishes to assume an executory contract that is in default,

the trustee or debtor in possession must at the time of assumption (i) cure the default, or provide

assurance that the default will be promptly cured; and (ii) provide adequate assurance of future

performance under such contract.  11 U.S.C. § 365(b)(1).  It is also axiomatic that a debtor or

trustee cannot assume the benefits of a contract without also assuming the concomitant burdens

thereunder.  *See generally In re Italian Cook Oil Corp.,* 190 F. 2d 994, 997 (3d Cir. 1951).

---

[1] Toyota has just recently received the notice of assignment and is evaluating which Contracts are being assigned to which Purchaser and reserves all rights to file a timely objection to such assignments, if necessary.

9.      The Debtors' treatment of Toyota's Contracts under the Modified Plan and/or the 363 Agreement is in violation of §365 of the Bankruptcy Code because they propose (i) to assume the benefits of the Contracts without assuming the burdens; (ii) to assume the Contracts without cure; and (iii) to assume the Contracts without providing Toyota adequate assurance of future performance.

### A.      Debtors cannot assume and assign the benefits of the Contracts without also assuming and assigning the burdens thereunder.

10.      Under the terms of the original Plan, any unpaid Contractual Obligations of Debtors to Toyota were to be paid in the ordinary course of business.  Under the terms of the Modified Plan and/or 363 Agreement, it is not entirely clear what will happen to Contractual Obligations, as the Modified Plan has deleted the ordinary course treatment of such obligations but not provided for any alternative treatment.  Upon information and belief, it is the intention of the Debtors and/or the Purchasers to assume and assign Toyota's Contracts while excluding any Contractual Obligations thereunder for products sold or manufactured prior to the Closing. Assumption and assignment of the benefits of a contract while excluding the burdens of such contract is in violation of §365 of the Bankruptcy Code.

11.      A debtor in bankruptcy cannot assume and assign the benefits of an executory contract without also assuming and assigning the burdens under that contract, such as the Contractual Obligations.  "Equity will not countenance the debtor's exercise of §365 to relieve itself of conditions which are clearly vested by the contracting parties as an essential part of their bargain."  *Matter of East Hampton Sand and Gravel Co., Inc.*, 25 B.R. 193, 198 (Bkrtcy. E.D. N.Y. 1982).  *See also In re Italian Cook Oil Corp.,* 190 F. 2d 994, 997 (3d Cir. 1951) (stating that "the debtor may not blow hot and cold.  If he accepts the contract he accepts it *cum onere*.  If he receives the benefits he must adopt the burdens.  He cannot accept one and reject the other.");

5

*City of Covington v. Covington Landing Limited Partnership,* 71 F. 3d 1221, 1226 (6th Cir. 1995) (stating that "when the debtor assumes the lease or the contract under §365, it must assume both the benefits and the burdens of the contract. Neither the debtor nor the bankruptcy court may excise material obligations owing to the non-debtor contracting party"); *In re ANC Rental Corp., Inc.*, 277 B.R. 226, 238 (Bkrtcy. D. Del. 2002) (holding that 11 U.S.C. §365 does not permit a debtor to modify an assumed executory contract).  The Debtors and/or Purchasers are clearly not entitled under §365 of the Bankruptcy Code to assume the benefits of Toyota's Contracts without also assuming the burden of the ongoing Contractual Obligations for products sold or manufactured prior to the Closing; as such, Toyota objects to the Modified Plan and/or the 363 Agreement as they are in violation of 11 U.S.C. § 365.

> **B.    The Modified Plan and/or the 363 Agreement propose to assume and assign Toyota's Contracts without curing the defaults thereunder.**

12.    The Modified Plan and/or the 363 Agreement are also in violation of Section 365 of the Bankruptcy Code because they propose to assume and assign Toyota's Contracts without curing the defaults thereunder.

13.    A debtor cannot assume an executory contract that is in default without curing that default or providing assurance that such default will be promptly cured.   11 U.S.C. § 365(b)(1).  *See also Eastern Airlines, Inc. v. Insurance Co. of the State of Pennsylvania (In re Ionosphere Clubs, et al.)*, 85 F. 3d 992, 999 (2nd Cir. 1996) (holding that "if the debtor is in default on the contract, it will not be allowed to assume the contract unless, at the time of the assumption, it, *inter alia,* (a) cures, or provides adequate assurance that it will promptly cure, the default").  The cure provision exists "to insure that contracting parties receive the full benefit of their bargain if they are forced to continue performance."  *Id.*, citing *In re Superior Toy & Manufacturing Co.,* 78 F. 3d 1169, 1174 (7th Cir. 1996).

14.     Under the original Plan, Toyota had no need to file a cure proposal, as the defaults under the Contracts were to be cured through the ordinary course of business.  The Modified Plan has changed the treatment of Toyota's Contracts in such a way as to make assertion of cure necessary for Toyota, but the Modified Plan and Master Disposition Agreement, as amended by the 363 Agreement purport to enforce the original Plan's cure deadline of March 10, 2008, and state that any party who did not assert a cure prior to that date has irrevocably waived its right to cure.  The Debtors are attempting to use procedure to circumvent the cure requirements of §365 of the Bankruptcy Code and enforce a deadline that passed over a year ago to prevent Toyota from asserting a cure when the need to do so has only just arisen.

15.     If the Debtors wish to change the treatment of certain contracts under the Modified Plan and/or the 363 Agreement and eliminate cure through the ordinary course of business, they must be compelled to open a window for such parties to assert their cure amounts. Any other result would allow the Debtors to assume executory contracts in default without curing these defaults, all in clear violation of the plain terms of §365(b)(1) of the Bankruptcy Code.

16.     The Contracts obligate Debtors to the Contractual Obligations, all of which must be assumed, paid and/or otherwise cured if the Contracts are to be assumed and assigned under the Modified Plan and/or the 363 Agreement. Toyota has made the Debtors aware of the nature and amount of the Contractual Obligations and has provided the Debtors, with particularity, the legal and factual basis for the Contractual Obligations. Given the confidential and proprietary nature of the Contractual Obligations, Toyota believes it is in the best interest of both Toyota and Debtors not to place these details in the record at this time; particularly given, as noted above, that the parties believe they may achieve a settlement among themselves and the respective

Purchaser as to both the amount and treatment of the Contractual Obligations. Toyota reserves the right to supplement this Objection, under seal or otherwise, with any and all additional information that may be required in the absence of a settlement agreement.

**C.    The Debtors must provide adequate assurance of future performance.**

17.    Finally, Section 365(b)(1) requires that the Debtors provide Toyota adequate assurance of future performance if they wish to assume and assign Toyota's Contracts.  The requirement of adequate assurance of future performance should be given a "practical, pragmatic construction based on… the circumstances of [the] case." *In re PRK Enterprises, Inc.,* 235 B.R. 597, 603 (Bkrtcy. E.D. Tex. 1999) (quoting *In re Prime Motor Inns, Inc.,* 166 B.R. 933, 997 (Bkrtcy. S.D. Fla. 1994).    Adequate assurance of future performance does require that performance be more probable than not.  *Id.*  To date, the Debtors have not provided any assurance of Purchasers' future performance.   The Debtors' failure to provide adequate assurance of future performance pursuant to 11 U.S.C. §365(b)(1) is in violation of Section 365 of the Bankruptcy Code, and as such, Toyota requests that this Court deny confirmation of the Modified Plan .

<u>Conclusion</u>

18.    Toyota objects to the Modified Plan because its treatment of Toyota's Contracts is in violation of Section 365 of the Bankruptcy Code.  Upon information and belief, the Debtors are attempting to assume and assign the benefits of Toyota's Contracts without also assuming and assigning the burdens of those Contracts.  Section 365 of the Bankruptcy Code does not permit the Debtors to take the good and leave the bad in this fashion.  Secondly, the Debtors are attempting to preserve a cure deadline set forth in the original Plan while eliminating Toyota's ordinary course treatment, putting Toyota in the impossible position of just having discovered

that it needs to file a cure notice when the deadline for so doing passed over a year ago. The Debtors should not be able to manipulate this Court's procedures in order to allow them to circumvent the cure provisions of 11 U.S.C. § 365. Finally, Toyota cannot be bound by assumption and assignment of its Contracts because neither the Debtors nor the Purchaser have provided Toyota with adequate assurance of future performance, as mandated by 11 U.S.C. § 365. For all these reasons, Toyota respectfully requests that this Court deny approval of the Modified Plan and/or the 363 Agreement.

WHEREFORE, Toyota respectfully requests that this Court enter an order (i) denying approval of the Debtors' Modified Plan and/or the Section 363 Implementation Agreement; and (ii) granting Toyota such other and further relief as may be just and appropriate under the circumstances.

Respectfully Submitted,

FROST BROWN TODD LLC

/s/ Robert V. Sartin
Robert V. Sartin, Esq.
250 W. Main Street, Suite 2800
Lexington, KY 40507
Tel: (859) 231-0000
Fax: (859) 231-0011
E-mail: rsartin@fbtlaw.com
*Attorneys for Toyota Motor Engineering and Manufacturing North America, Inc.*

LEXLibrary 399928v.4