**CONLIN, McKENNEY & PHILBRICK, P.C.**
Bruce N. Elliott (P28770) (admitted *Pro Hac Vice*)
350 S. Main Street, Suite 400
Ann Arbor, Michigan 48104-2131
(734) 761-9000

**Counsel for Brazeway, Inc.**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **In re:** § | | Chapter 11 |
| §| | |
| **DELPHI CORPORATION,** *et al.* § | | Case No. 05-44481 (RDD) |
| § | | |
| Debtors. § | | (Jointly Administered) |
| § | | |

### OBJECTION OF BRAZEWAY, INC. TO
### APPROVAL AND/OR CONFIRMATION OF
### FIRST AMENDED JOINT PLAN OF REORGANIZATION
### OF DELPHI CORPORATION AND CERTAIN AFFILIATES,
### DEBTORS AND DEBTORS-IN-POSSESSION (AS MODIFIED)

NOW COMES Brazeway, Inc. ("Brazeway"), by its undersigned attorneys and hereby makes its objection ("Objection") to the Approval and/or Confirmation of First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-in-Possession (collectively "Debtor"), as modified (the "Modified Plan") and states as follows:

### BACKGROUND

1. At all times pertinent to this Objection and to the matters set forth herein, Brazeway was and is supplying certain parts and materials to Debtor under contracts (the "Contracts") identified under various purchase orders (the "Original Purchase Orders"). The Original Purchase Orders identifying the Contracts are listed as follows:

<u>P.O. No.</u>
550161360
550028990
550028808

Copies of the Original Purchase Orders are attached as **Exhibit 1**[1].

2.      As indicated in the Original Purchase Orders, the expiration date for each purchase order and the relevant Contracts was December 31, 2010.

3.      Brazeway had pre-petition claims against the Debtor with respect to the Contracts as follows: A reclamation claim in the amount of $572,707.98 (the "Reclamation Claim") and a general unsecured claim in the amount of $1,308,594.45. Brazeway subsequently assigned those claims to JP Morgan Chase ("JP Morgan") who filed a timely proof of claim (Claim No. 14052). Subsequently, Brazeway and the Debtor had a dispute regarding the amount of the Reclamation Claim. Without giving personal notice to Brazeway or JP Morgan, and in direct contradiction to recent indications by the Debtor, Debtor moved to modify the amount of the Reclamation Claim to approximately $102,000 (see Debtor's Twenty-First Omnibus Claims Objection (Docket No. 9535)). Neither Brazeway nor JP Morgan were aware of the Claims Objection or Order entered thereon (Docket No.10728) until after the entry of the Order. Brazeway and JP Morgan timely filed a Motion for Reconsideration (Docket No. 11069).

4.      The dispute regarding the amount of the Reclamation Claim apparently became moot when on or about December 10, 2007, the Debtor served on Brazeway a notice of cure amount with respect to executory contracts identifying two of the three Contracts to be assumed and assigned (see attached **Exhibit 2**). Subsequently, the Debtor also sent a notice of cure amount with respect to the third executory contract to be assumed or assigned by notice dated February 1, 2008 indicating an

---

[1] Pricing information on copies of all of the exhibits attached to this Objection have been redacted or deleted.

-2-

intent to assume that Contract as well. A copy of that notice is attached as **Exhibit 3**. As a result of these notices, the parties entered into a Stipulation and Order regarding the Proof of Claim (including the Reclamation Claim) on June 12, 2008 (Docket No. 13732). A copy of the Stipulation and Order is attached as **Exhibit 4**. As indicated in the Stipulation and Order, the cure amount for the Contracts was deemed $1,835,146.48 (the "Agreed Cure Amount") leaving a general unsecured claim of only $46,155.95 to be treated as such in a confirmed plan of reorganization for the Debtor. The Debtor's First Amended Plan of Reorganization was confirmed January 25, 2008.

5.      Beginning in December 2008, as the Debtor was having increased difficulty in formulating, financing and effectuating a plan of reorganization, Debtor notified Brazeway that, certain purchase orders, "between your company and Delphi entities expire during calendar year 2008." A copy of Debtor's notice to Brazeway is attached as **Exhibit 5** (the "Change Notice"). As indicated in the Change Notice, the Original Purchase Orders were designated as having expired.[2] The Change Notice was never signed or agreed to by Brazeway and was in fact vigorously disputed. Morever, the assertion that the Contracts were to expire in 2008 was and continues to be totally incorrect. See **Exhibit 1**.

6.      At or about the time of the Change Notice and thereafter, Debtor issued revised purchase orders purportedly relating to production of the same parts as under the Original Purchase Orders (the "New Purchase Orders"). Copies of the New Purchase Orders are attached as **Exhibit 6**.

7.      Notwithstanding the "change" asserted by Debtor, virtually nothing has changed regarding production and delivery from the Original Purchaser Orders; the very same Brazeway machines which were producing the parts in Michigan for Debtor continue producing the same parts

---

[2] Debtor has never asserted that the Contracts were terminated.

-3-

from Brazeway's location in Kentucky. They continue to be shipped by Brazeway to the Debtor's same facilities under the same terms and conditions as existed under the Original Purchase Orders. In other words, there has been absolutely no substantive change in connection with the Contracts except that Delphi has now designated them with a new purchase order number. See, for example, attached **Exhibit 7,** which is a document prepared by Debtor and as indicated therein, the only substantive "change" is the number of the purchase order. In fact, the Debtor did not even bother to change the purchase order number for one of the Contracts (identified as Purchase Order 550028808).

8. On July 2, 2009, Debtor sent to Brazeway a Notice of Non-Assumption Under the Modified Plan with Respect to Certain Expired or Terminated Contracts or Leases Previously Deemed to be Assumed or Assumed and Assigned Under Confirmed Plan of Reorganization (the "Notice of Non-Assumption"). The Notice of Non-Assumption indicated that the Original Purchase Orders had been either terminated or expired by their terms.[3] A copy of the Notice of Non-Assumption is attached as **Exhibit 8**. On July 10, 2009, Brazeway filed its Objection to Debtor's Notice of Non-Assumption Under the Modified Plan with Respect to Certain Expired or Terminated Contracts or Leases (Docket No. 18022). That objection set forth many of the same facts and arguments contained herein.

9. On July 10, 2009, the Debtor filed their Notices of Assumption and Assignment with Respect to Certain Executory Contracts or Unexpired Leases to be Assumed and Assigned to Onassis Holdings II, LLC and GM Components Holdings, LLC or Steering Solutions Services Corporation,

---

[3] Brazeway notes that the Notice of Non-Assumption was not sent to Brazeway's counsel or to the Brazeway offices in Adrian, Michigan, but rather to the Brazeway lock box at JP Morgan Chase located in Detroit, Michigan. Brazeway actually received a copy of the notice on July 10, 2009.

-4-

as applicable under the modified plan (Docket Nos. 18076, 18077), along with a Notice of Filing of Amended Cure Amount for Executory Contract or Unexpired Lease in Connection with Cure Amounts Previously Deemed to be Established Under Confirmed Plan of Reorganization (Docket No. 18075). None of the foregoing notices reference Brazeway or any of the Contracts.

        10. While apparently taking the position that the Contracts have expired, and that any agreements between Debtor and Brazeway currently in place constitute "Post-Petition Contracts" (as defined in the Master Disposition Agreement attached as an exhibit to Debtor's Supplement for Order Approving Modifications to Debtor's First Amended Plan of Reorganization (as modified), Docket No. 16646), Debtor has failed to identify such contracts in any of the documents heretofore filed. See, for example, Debtor's Notice of Filing of Certain Exhibits and Schedules to Master Disposition Agreement (Docket No. 16936). Debtor has recently filed a Supplemental Ex Parte Application for Order Authorizing Debtors to File Certain Exhibits and Schedules to the Master Disposition Agreement under Seal (Docket No. 17561). Included among the exhibits filed therewith under seal is Schedule 4.14.1 (Material Contracts) and Schedule 4.14.2 (Default/Post-Petition Contracts). Accordingly, despite repeated requests, Brazeway has no written assurance from the Debtor that <u>any</u> contracts with Brazeway will be assumed and assigned as a part of the Modified Plan. Furthermore, Section 9.3 of the Master Disposition Agreement (as amended) provides that:

> Pursuant to the Plan Modification Motion, Delphi has moved to assume and assign to the applicable Buyers the Pre-Petition Contracts listed on Schedule 9.3 and assign the Post-Petition Contracts to the applicable Buyer (collectively the "Assumed and Assigned Contracts") and will provide notice thereof to the Contract counter-parties and all other parties in accordance with the Modification Procedures Order and all applicable Bankruptcy Rules as modified by Orders of the Bankruptcy Court.

The foregoing clearly contemplates providing contract counter-parties, whether pre-petition contracts or post-petition contracts, with reasonable and adequate notice of any proposed assumption or assignments. No such notification has yet been provided to Brazeway.

## ARGUMENT

11.     Bankruptcy Code §1129(a) requires that a plan shall be confirmed only if, among other things, the plan and the proponent of the plan comply with the applicable provisions of the Bankruptcy Code. *11 U.S.C. §1129(a)(1) and (2)*. The Debtor has failed to satisfy these requirements as set forth below.

12.     It is obvious to see that the Contracts have neither been terminated nor are they expired; Brazeway continues to supply parts and materials to the Debtor in the identical way and under identical terms as existed at the time of the notices of assumption and assignment of the Contracts set forth in **Exhibits 2 and 3**. Moreover, while Brazeway has been deprived of reasonable notice as required in the Master Disposition Agreement, Brazeway has received every indication from employees of the Debtor that the agreements related to the production of these parts will be assumed and assigned as a part of the prospective sale pursuant to Section 363 of the Bankruptcy Code (*11 U.S.C. §363*) as anticipated in Debtor's Modified Plan. However, there is nothing set forth in the Modified Plan which describes the terms and conditions of any such assumptions and assignments.

13.     Debtor has unilaterally and without justification attempted to avoid payment of the applicable pre-petition and post-petition cure amounts as well as providing adequate assurance of future performance required under Section 365 of the Bankruptcy Code (*11 U.S.C. §365*).

14.     Section 365 of the Bankruptcy Code provides, in relevant part:

"(b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee -
(A) cures or provides adequate assurance that the trustee will promptly cure such default...
(C) provides adequate assurance of future performance under such contract.

Based on the requirements of Section 365, the Debtor or Buyer ( as defined in the Modified Plan) must cure all defaults as of the effective date of actual assumption and assignment, as well as providing adequate assurance of future performance. *In re Ionosphere Clubs, Inc.,* 85 F.3d 992, 999 (2d Cir. 1996). This includes all post-petition defaults as well. *In re Stoltz* (315 F.2d 80 (2d Cir. 2002)) Thus, if the Contracts are assumed and assigned, the Agreed Cure Amount as well as all unpaid post-petition obligations under the Contracts must be paid in full at the time of the assumption and assignment.

15. As set forth above, the Debtor has incorrectly and ineffectively attempted to deem the Contracts as expired, thus avoiding payment of the cure obligations including the Agreed Cure Amount. The Modified Plan, as it may be executed by Debtor, apparently provides that the Contracts may be assumed and assigned to the Buyer without payment of the Agreed Cure Amount and all unpaid post-petition obligations, all in derogation of Brazeway's rights and remedies and contrary to the provisions of Bankruptcy Code Section 365. Moreover, Brazeway has not agreed to the assumption and assignment of the Contracts (or any other agreements as designated by Debtor related to the production of the applicable parts) without satisfying the requirements of Section 365.

16. Furthermore, under the Modified Plan, Debtor purports to satisfy post-petition claims for administrative expenses under Bankruptcy Code Section 503(b) but only claims accrued up to June 1, 2009. These administrative expenses have a claim priority as provided in Bankruptcy Code Section 507(a)(2).

17. The Bankruptcy Code requires that the court shall confirm a plan only if, among other things, the plan provides that with respect to a claim of a kind specified in Section 507(a)(2), on the effective date of the plan, the holder of such claim will receive on account of such claim cash equal to the allowed amount of such claim. *11 U.S.C. §1129(a)(9)*

18. Brazeway has administrative claims incurred prior to June 1, 2009 for which it has timely filed a proof of claim. Furthermore, there are currently existing and Brazeway anticipates additional administrative expenses to be incurred by the Debtor with Brazeway on or after June 1, 2009 and up to the effective date of the Modified Plan.

19. Under the Modified Plan, including the provisions contemplated in the Master Disposition Agreement with the filed exhibits, there is no indication that all of the administrative expenses accrued on or <u>after</u> June 1, 2009 will be paid in full in cash as required by Bankruptcy Code Section 1129(a)(9) above. As in the case of the Post-Petition Contracts, the Master Disposition Agreement schedules relating to the Administrative Liabilities to be assumed by the Buyers (Schedule 1.1.A) have been filed under seal (Docket No. 17561).

20. Because the legal points and authorities upon which this Objection relies are incorporated herein do not represent novel theories of law, Brazeway respectfully requests that the requirement of service and filing of a separate memorandum of law under Local Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York be deemed satisfied.

21. Brazeway hereby incorporates into this Objection all of those grounds set forth by any other creditor or party in interest in any objection to approval and/or confirmation of the Modified Plan and further reserves the right to supplement this Objection and to raise additional grounds for objection to approval and/or confirmation of the Modified Plan as well as reserving all rights and remedies available with respect to the Contracts and any other agreements between or including Brazeway and the Debtor.

## **REQUEST FOR RELIEF**

WHEREFORE, Brazeway respectfully requests this Court to deny approval and/or confirmation of Debtor's First Amended Plan of Reorganization (as modified) without:

A. Determining that Debtor's Notice of Non-Assumption is of no force and effect, that the Contracts are and remain the same executory contracts whether indicated by the Original Purchase Orders or the New Purchase Orders, that the Contracts are not deemed expired and remain in full force and effect, and that the Debtor, the Buyer(s) or other persons responsible for payment under the Modified Plan be required to pay the entire Agreed Cure Amount of $1,835,146.48 together with all post-petition obligations due under the Contracts in cash as well as provide for adequate assurance of future performance as a condition to any assumption and assignment of the Contracts; and

B. Requiring the Debtor or other responsibly party under the Modified Plan to pay in cash and in full on the Effective Date all administrative expenses incurred by Debtor with Brazeway and allowed under 11 U.S.C. §503(b) up to and including the Effective Date of the Modified Plan; and

C. Granting such other and further relief as is just and proper

             /s/ Bruce N. Elliott
             Bruce N. Elliott (P28770)
             (admitted *Pro Hac Vice*)
             CONLIN, McKENNEY & PHILBRICK, P.C.
             Counsel for Brazeway, Inc.
             350 South Main Street, Suite 400
             Ann Arbor, Michigan 48104-2131
             Telephone: (734) 761-9000
             Facsimile: (734) 761-9001

Dated: July 15, 2009

M:\ATTY-SHARED\CLM\B\BRAZEWAY\DELPHI\OBJECTION TO FIRST AMD PLAN OF REORG.WPD