**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
_____

| | |
|---|---|
| In re | Chapter 11 |
| **DELPHI CORPORATION, et al.,** | Case No. 05-44481(RDD) |
|               **Debtors.** | (Jointly Administered) |

_____

**OBJECTION OF THE STATE OF NEW YORK TO DEBTORS'
MOTION FOR ENTRY OF ORDER APPROVING MODIFICATIONS TO
CONFIRMED AMENDED FIRST PLAN OF REORGANIZATION AND THE
MASTER DISPOSITION AGREEMENT ATTACHED THERETO**

The State of New York on behalf of the New York State Department of Environmental Conservation ("NYSDEC") respectfully submits the following objection to the motion by the Chapter 11 debtor Delphi Corporation ("Delphi") and its affiliated debtors for an order approving modifications to the confirmed Amended First Plan of Reorganization of Delphi et al. (the "Modified Plan") and the Master Disposition Agreement (the "MDA") attached thereto, for the following reasons:

1. Under the MDA, GM Components Holdings, LLC would acquire certain properties of Delphi. Among the properties to be acquired are two manufacturing facilities that are contaminated with hazardous substances, i.e., the Delphi Automotive Systems Site located at 1000 Lexington Avenue, Rochester, New York (the "Rochester Site"), and the Delphi Thermal Systems Facility located at 200 Upper Mountain, Lockport, New York (the "Lockport Facility").

2. The Rochester Site is listed on the State of New York's Registry of

Inactive Hazardous Waste Disposal Sites as Site No. 828064.  DEC classified the Rochester Site as Class 2, which means it is a site that poses a significant threat to public health or the environment for which action is required. The Lockport Facility includes the Delphi Harrison Thermal Systems Site, which is listed on the State of New York's Registry of Inactive Hazardous Waste Disposal Sites as Site No. 932113 (the "Lockport Superfund Site"), as well as three proposed Brownfield Cleanup Program Sites, i.e., Delphi Lockport Building 10 C932140, Delphi Lockport Building 7 C932138 and Delphi Lockport Building 8 C932139 (the "Proposed Brownfield Sites"), and petroleum spill site #0651261 located at Building 6 (the "Petroleum Site").

3.  Delphi, as the owner and operator of the Rochester Site and the Lockport Facility and the successor to the past owners and operators of both, is responsible for investigating and remediating the Rochester Site and the Lockport Facility under the environmental laws of the State of New York (Environmental Conservation Law, §27-1301 et seq.; 6 NYCRR Part 375) and under federal law (Resource Conservation and Recovery Act, 42 U.S.C. § 6901 et seq., and the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601 et seq.).

4.  Delphi Automotive Systems LLC, entered into an Order on Consent with NYSDEC on February 4, 2002 to investigate the contamination and study the feasibility of remedial alternatives for the Rochester Site.  NYSDEC is now reviewing the Feasibility Study and will soon select a permanent remedy for the Site.

5.  The Rochester Site is contaminated by petroleum, chlorinated

solvents, including, but not limited to, Trichloethylene, and heavy metals, including, but not limited to, lead. A number of source areas exist on the Rochester Site. Over large areas, contaminants up to 10 feet thick are floating on the top of the water table.

6. NYSDEC estimates that the remedy at the Rochester Site will cost approximately $10,000,000.

7. TCE-contaminated soils have been removed from the Lockport Superfund Site, but the remaining contamination will require implementation of a site management plan and completion of an environmental easement. The Proposed Brownfield Sites are contaminated by chlorinated solvents, including, but not limited to, PCE and TCE and other volatile organic compounds. These Sites require investigation of the nature and extent of contamination followed by selection and implementation of a remedy. The Petroleum Site will require further investigation and removal of underground storage tanks.

8. NYSDEC estimates that future remedial work at the Lockport Superfund Site will cost approximately $500,000. A preliminary estimate of future costs for the Proposed Brownfield Sites is $5,000,000. A preliminary estimate of future costs for the Petroleum Site is $500,000.

9. The MDA does not appear to confirm the obligation on the part of the proposed buyers of the Rochester Site and the Lockport Facility to complete the remedial work at those Sites. The MDA should be amended to state explicitly that the obligation to clean up the Rochester Site and the Lockport Facility will be assumed by the buyers of those sites, including GM Components Holdings, LLC.

10. The requested amendment is required to effectuate the U.S. Supreme

Court's decision in <u>Midlantic National Bank v. N.J. Department of Environmental Protection</u>, 474 U.S. 494, <u>reh</u>. <u>denied</u>, 475 U.S. 1090 (1986), which requires that the transfer of a debtor's contaminated property be accompanied by conditions that will adequately protect the public's health and safety.

11. A party that acquires property from a debtor may not ignore State environmental laws. As the U.S. Supreme Court stated in <u>Ohio v. Kovacs</u>, 469 U.S. 274, 284-85 (1985): "[W]e do not question that anyone in possession of the site . . . must comply with the environmental laws of the State of Ohio. Plainly, that person or firm may not maintain a nuisance, pollute the waters of the State or refuse to remove the source of such conditions." Contamination at the Sites constitutes a public nuisance and pollutes the waters of the State of New York.

12. Congress placed governmental entities in a different position than other entities in a bankruptcy. Governmental entities remain largely unaffected by the bankruptcy when enforcing police and regulatory authority. <u>See</u>, <u>e.g.</u>, 11 U.S.C. § 362(b)(4) (exempting governmental entities from the automatic stay when exercising police and regulatory authority). Environmental regulation is the classic example of the exercise of such authority. Congress further protects State regulatory authority by prohibiting the circumvention of State law in a bankruptcy. <u>See</u> 28 U.S.C. § 959(b) (requiring the operation and maintenance of estate assets in compliance with the laws of the State in which the assets are located).

13. The Bankruptcy Code is not intended to usurp the power of the State to assure the protection of public health and the environment that is afforded by these laws. <u>Cf</u>. <u>In re Quanta Resources Corp. v. City of New York</u>, 739 F.2d 912,

921-23 (3d Cir. 1984) (abandonment of contaminated property contravened applicable state law "and did so not merely technically, but with severely deleterious implications for the public safety").

14. To the extent that the MDA would adversely affect governmental authority, it is not authorized by the Bankruptcy Code.

Wherefore, the State of New York and NYSDEC request that approval of the MDA and the Modified Plan be denied unless they are amended to obligate GM Components Holdings, LLC to complete the remedial work required by NYSDEC at the Rochester Site and the Lockport Facility, and for such other and further relief as is just and proper.

Dated:  New York, New York
       July 14, 2009

                Respectfully submitted,

                ANDREW M. CUOMO
                Attorney General of the
                 State of New York
                Attorney for Plaintiff State of New York

                /s/
                _____
                EUGENE J. LEFF
                Assistant Attorney General &
                 Deputy Bureau Chief
                Office of the Attorney General
                120 Broadway
                New York, New York 10271
                (212) 416-8465