

Judge Robert D. Drain
United States Bankruptcy Court
One Bowling Green
New York, NY 10004-1408
Courtroom 610

Reference Case # 05-44481

Dear Judge Drain:

As a recently retired Delphi Salary Employee, I strongly object to the June 1, 2009 Master Disposition Agreement, Article 9.5.11

I believed at the time as I do now that I have a legal, enforceable contract entered into during bankruptcy. My expectation is that Delphi must fulfill this contract as I have. Severance payments were to be provided in exchange for my waiver of certain rights via the Release of Claims (severance payments are not a Delphi provided benefit).

I object for the following reasons:

1) Severance payment entitlement is by contract (Separation Agreement).

2) Employees waived certain rights (Release of Claims) to receive severance.
   (you provided an item of value to Delphi in exchange for severance payments)

3) The contracts were entered into during bankruptcy.

4) Severance payments are a contract liability (not a Delphi provided benefit).

5) You have a valid / binding / legal contract and you expect it to be honored.


I retired in May 2009 after 30 years of service fully expecting Delphi to honor the Separation Allowance Plan that I signed in January 2009. This contract and my pension were significant factors in determining my future. I am living overseas, working in a US military community and I now find that the companies that I worked for (both GM and Delphi) intend to abandon every obligation.

This obligation, in light of the costs incurred to date, is very small. However to those impacted by your decisions, it will drastically change lives

I ask the court to please not accept this as a matter of fact, but to send Delphi and its partners back to restructure a deal that is both legal and equitable. I believe that is the responsibility of the court.

Best Regards,

Kathleen Maddock

**Delphi Corporation**
**Separation Allowance Plan Release of Claims**

I have been separated from my employment with Delphi Corporation ("Delphi") effective <u>5/1/2009</u> under terms which make me eligible for benefits under the Separation Allowance Plan (the "Plan"). These benefits include Severance Pay in the total amount of <u>$45942</u>, less applicable deductions, to be paid in <u>12</u> semi monthly installments commencing on <u>5/15/2009</u>, and Other Transition Assistance, comprised of outplacement assistance and $2000 which I may, at my discretion, use to help pay for the continuation of health care coverage through Delphi; provided, however, that, if I am eligible to retire with corporate contributions for health care in retirement at the time of my separation, I am not eligible for this $2,000. I acknowledge that the consideration provided for in this Release of Claims is in excess of anything I would otherwise be entitled to receive absent my signing this Release of Claims.

In consideration for receiving these benefits, I, for myself, family, heirs, and representatives, release, remise, and forever discharge Delphi, General Motors Corporation, and their respective officers, shareholders, subsidiaries, affiliates, joint ventures, employee benefit plans, agents and employees, successors, and assigns from any and all manner of actions, causes of actions, suits, proceedings, damages, costs, and claims whatsoever in law or in equity (collectively "Claims"), which I have or may have based upon or in connection with my employment with or separation from Delphi. This release specifically includes all Claims under the Employee Retirement Income Security Act of 1974, as amended, which regulates employee benefit plans; Title VII of the Civil Rights Act of 1964, as amended, which prohibits discrimination in employment based on race, color, national origin, religion, or sex; the Americans with Disabilities Act, which prohibits discrimination in employment based on disability; the Age Discrimination and Employment Act, which prohibits discrimination in employment based on age; the Equal Pay Act, which prohibits wage discrimination; state fair employment practices or civil rights laws; and any other federal, state or local law, order, or regulation or the common law relating to employment or employment discrimination, including those which preclude any form of discrimination based on age. This includes, without limitation, Claims for breach of contract (either express or implied), slander, libel, defamation, and wrongful discharge. This release does not apply to Claims that are not subject to waiver under applicable law. This covers Claims I know about and Claims I do not know about; but does not cover Claims that arise after I separate from Delphi.

I understand that, by accepting benefits under the Plan, I will no longer be entitled to receive any disability benefits (short-term, long-term, or total and permanent) under the Delphi Life and Disability Benefits Program for Salaried Employees of the Delphi Retirement Program for Salaried Employees relating to any disability that arose or arises at any time, and if I am currently receiving or am eligible to receive disability benefits as of the effective date of this Release of Claims, I understand that such benefits or eligibility for such benefits will cease upon the effective date of this Release of Claims.

I have been given a minimum of forty-five (45) calendar days to review this Release of Claims and a written notice of the ages and job titles of all individuals in the same job classification or organizational unit who were (i) selected and (ii) who were not eligible or not selected for separation. I understand that I may use as much of this forty-five (45) day period as I wish. I have been advised to consult an attorney before signing this Release of Claims, but understand that whether or not I do so is exclusively my decision. I understand that I may revoke this Release of Claims within seven (7) days of my signing it. To be effective, the revocation must be in writing and must be received by Human Resources before the close of business on the seventh (7th) day after I sign this Release of Claims.

I acknowledge that Delphi has made no prior representations, promises, or agreements relating to my employment and separation contrary to this Release of Claims. I understand that I am not eligible for benefits Delphi provides under any other separation program and that I will not be eligible for any enhancements Delphi may subsequently make to the benefits provided under the Plan. This Release of Claims constitutes the entire and only understanding between Delphi and me regarding my separation. If any provision or portion of this Release of Claims is held unenforceable or invalid, all remaining provisions of this Release of Claims remain in full force and effect.

BY SIGNING BELOW, I ACKNOWLEDGE THAT I HAVE READ THIS RELEASE OF ALL KNOWN AND UNKNOWN CLAIMS. I AFFIRM THAT I UNDERSTAND AND VOLUNTARILY AGREE TO ITS TERMS.

Signed: _Kathleen Maddock_
**Maddock, Kathleen**

Delphi Identification Number (DIN): **1018540**

Dated: 1-20-09

Accepted: _Lisa M Bennett_
Delphi Corporation

July 7, 2009

Judge Robert D. Drain
United States Bankruptcy Court
One Bowling Green
New York, NY 10004-1408
Courtroom: 610

Reference case # 05-44481

Dear Judge Drain:

As a retired Delphi Salary Employee I strongly object to the recently filed Delphi Modified Plan of Reorganization.

This plan is structured to only benefit a few Delphi Senior Executives, General Motors, the UAW and Platinum Equity. It is totally at the expense of Delphi creditors, "Non-UAW" hourly workers, the retired salary employees and the American taxpayer. Also, It is clear that this whole deal is being brokered by the US Treasury, with Tim Geithner.

GM is receiving viable, ongoing revenue producing plants at no cost other than accepting the UAW pension plans.

Delphi Senior Executives will retain their positions and potentially receive either generous retention or severance bonus' from the new owners.

The UAW will continue under the GM umbrella for pensions and benefits, which are being financed by the US Government.

Platinum Equity will now own a company with revenue producing operations that have excellent profit potential and they will pay literally nothing for this. Why are they paying more for the Alcoa AFL unit which is much smaller and has far fewer assets?

I firmly believe that this is truly a liquidation of Delphi thinly disguised as an "emergence." Worst of all, the valuable assets of this company are being given away and the only money left for creditors and retirees will be in the disposition of already closed, nonrevenue producing plants (DPH).

Perhaps even more disturbing, is the settlement Delphi is requesting of the PBGC. They have requested that the PBGC drops its right to secured claims and becomes an unsecured claim. This is ludicrous. These claims should be maintained and provide funds to decrease the underfunded position of Delphi's Salaried Retirement Plan. The court will have to address this issue because I am sure that the PBGC will negotiate away its rights because of its unique position in relationship to the US Treasury Department and Tim Geithner, who is brokering the whole GM/Delphi Process.

I ask the court to please not accept this modified plan, but to send Delphi and its partners- GM, the US Treasury, Platinum and the UAW, back to restructure a deal that is equitable to the "Non-UAW" retirees, salaried retirees, and the creditors. I believe that is the responsibility of the court.

Best Regards,

Kathleen Maddock