ANDREW M. CUOMO
ATTORNEY GENERAL OF THE STATE OF NEW YORK
Nancy Hershey Lord, Assistant Attorney General
New York State Office of the Attorney General
The Capitol
Albany, NY 12224
Telephone: (518) 473-6992
Facsimile: (518) 408-2057

Hearing Date: July 23, 2009
Hearing Time: 10:00 a.m.

Attorney for the New York State
Workers Compensation Board

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------x

**In re**

**DELPHI CORPORATION, et. al,**

**Debtors.**
--------------------------------------------------------x

**Chapter 11**
**Case # 05-44481-(RDD)**

**(Jointly Administered)**

## LIMITED OBJECTION OF THE
## NEW YORK STATE WORKERS' COMPENSATION BOARD

The New York State Workers' Compensation Board (the "Board"), by its attorney,

ANDREW M. CUOMO, Attorney General of the State of New York, hereby submits this limited

objection to the Debtors' Modified Plan, the Master Disposition Agreement, and the transactions

set forth in the Master Disposition Agreement, as modified by the 363 Implementation

Agreement.  Simply stated, the Board objects, to the extent that as a result of the approval of any

of the foregoing (a) all outstanding workers compensation claims and past, present and future

liabilities for the compensation of Delphi Corporation employees (or the employees of its

applicable subsidiary) arising from injuries or illnesses occurring during their employment in the

State of New York are not going to be paid in full or assumed and paid in full in the ordinary

course and (b) there will be a failure to comply with the provisions of the New York State

Workers' Compensation Law and the rules, regulations and procedures promulgated thereunder.
In support of its Objection, the Board respectfully states as follows:

1.      The New York State Workers' Compensation Law ("WCL"), originally created in
1914 as the result of an historic agreement between employers and workers, ensures that in
exchange for guaranteed medical coverage and compensation for lost earnings, employees would
not sue their employers in the event of an on-the-job injury.  The WCL creates a comprehensive
mandatory workers' compensation system, serving to protect both injured workers and their
employers.  It includes an exclusive remedy through State administrative and judicial processes
to address all questions arising under the system.  In filing this limited objection, the Board does
not waive these State administrative and judicial processes, and asserts as part of its objection
that any New York Workers' Compensation issues created by the Modified Plan and the Master
Disposition Agreement, or the alternative 363 sale proposal, must be resolved pursuant to the
WCL through New York's statutory processes, so as to preserve the statutory scheme and the
authority afforded the Board and its Chairman.

2.      Pursuant to Article 8 of the WCL and the rules, regulations and policies
promulgated thereunder, the Board and its Chairman are responsible for administering all matters
relating to workers' compensation.

3.      Every employer, as defined by WCL § 2(3), must provide for the payment of
benefits to its employees as required by the WCL.  WCL §§ 10 & 50.

4.      The WCL provides three methods of providing workers' compensation coverage
to employees.  An employer may: 1) purchase a worker's compensation insurance policy from an
insurance company authorized by the New York Superintendent of Insurance to provide such

2

coverage, 2) purchase a policy from the New York State Insurance Fund, a quasi-public carrier, that writes workers' compensation insurance, or 3) self-insure with the permission of the Chairman of the Board, either individually or as part of a group.

5.      If an employer is permitted to self-insure individually, the proposed self-insurer must deposit with the Chairman specified securities, cash, surety bonds, or an irrevocable letter of credit, in an amount to be determined by the Chairman. The security deposit is intended to be the sole source for the payment of workers' compensation benefits if an individually self-insured employer defaults on making payments to its injured workers or to the beneficiaries of a worker killed due to a work-related accident or illness. Should an employer default on the payment of claims, and if the amount on deposit is insufficient to cover remaining unpaid claims, the rest of the self-insured employers are assessed to make up the shortfall.

6.      Delphi Corporation, or one or more of its subsidiaries (hereinafter "Delphi"), which has operated facilities in Rochester, New York ("Rochester") and Lockport, New York ("Lockport"), since its spin-off from General Motors Corporation in 1999, is an "employer" as defined by WCL §§ 2(3) and 50(3-a)(1)(a) - (c) and, consequently, was required to provide workers' compensation coverage for its employees.

7.      Delphi was permitted by the Board to self-insure individually and posted collateral in the form of a letter of credit. This means that employees seeking compensation for work related injuries or illnesses filed their claims directly with Delphi and were paid by Delphi.

8.      On the date Delphi filed its chapter 11 petition ("Petition Date") it was current on all of its payments to its employees arising from workers' compensation claims in New York.

9.      By virtue of "first day order" relief sought by Delphi pursuant to its "Human

3

Capital Obligations Motion," Delphi was granted the authority by this Court to pay all amounts

related to workers' compensation claims and incurred but not reported (IBNR) claims that arose

prior to the Petition Date as they became due in the ordinary course of business and to continue

paying workers compensation in the ordinary course.

10. In its "Human Capital Obligations Motion," Delphi provided the following

justification for the relief sought relating to workers compensation claims:

> [i]f the Debtors are unable to pay their prepetition workers'
> compensation obligations, the Debtors expect that the letters of
> credit, security deposits, and/or surety bonds will be drawn,
> resulting in millions of dollars of claims again the estates. Further,
> the Debtors believe that if they are not permitted to honor their
> workers' compensation obligations (a) alternative arrangements for
> workers' compensation coverage would most certainly be more
> costly, (b) failure to provide coverage may, in some states, subject
> the Debtors or their officers to severe penalties and possibly a shut
> down, and (c) the Debtors may have their qualified self-insured
> employer status revoked in the respective states, resulting in much
> higher costs to the Debtor's estate. Thus, the Debtors believe that
> their failure to pay amounts relating to these workers'
> compensation claims would make it more difficult to successfully
> reorganize.

11. Following the entry of the Order granting Delphi's "Human Capital Obligations

Motion," Delphi's Supervisor for Workers Compensation, Deborah J. France, wrote the First

Deputy to the Governor of the State of New York stating: "[i]t is Delphi's intent to continue to

pay its workers compensation obligations in accordance with the terms of the bankruptcy court

order granting Delphi's 'Human Capital Obligations Motion.'" A copy of the letter is attached

hereto as Exhibit A.

12. During the course of Delphi's chapter 11 it has continued to pay all of its workers'

compensation obligations, regardless of the date when the claims arose.

4

13.     Also, during the period since the Petition Date, representatives of New York State
and representatives of Delphi have held in-person and telephonic meetings during which Delphi
made repeated representations and provided oral assurances to representatives of the State and
the Board that the workers' compensation obligations arising from the Rochester and Lockport
facilities would continue to be met.  Upon information and belief, such representations and
assurances were made by Delphi to New York State in an effort to convince the Chairman of the
Board not to revoke Delphi's privilege to self- insure, based upon the Board's determination that
the dollar value of the collateral posted by Delphi was significantly less than Delphi's workers'
compensation claims liability exposure.  In a letter from the Board to Deborah France, dated May
25, 2007, the Board detailed the recent recalculation of the Board security deposit requirements
for 2007.  Delphi was advised that its revised security deposit requirements were recalculated
based upon reports Delphi submitted to the Board in November 2006.  The net increase required
by the Chair on behalf of the Board was $132 million, which the Board offered to accept in
installment payments over a multi-year period.  Delphi responded by urging the Board to give
Delphi time until after its emergence from chapter 11 to post the additional security, stating that
any immediate efforts to post the required deposit could jeopardize Delphi's ability to confirm a
plan of reorganization and emerge from chapter 11.

14.     In July 2007, the Board requested that Delphi modify a certain proposed order that
was to be presented to the Court under 11 U.S.C. §§ 363, 1113 and 1114 and Fed. R. Bankr. P.
6004 and 9019, approving the memorandum of understanding among the United Auto Workers,
Delphi, and General Motors Corporation, including modification of the United Auto Workers
collective bargaining agreements and retiree welfare benefits for certain United Auto Worker-

5

represented retirees. The modification was sought in order to clarify and confirm that those

claims being waived by employees in favor of Delphi on the effective date of its reorganization

plan would not include the waiver of claims for workers' compensation benefits against Delphi,

its subsidiaries, or its affiliates. Delphi agreed to make the requested change by modifying

paragraph 9a of the Order to make clear that workers' compensation claims would not be waived.

A copy of the proposed Order reflecting the mark-up of paragraph 9a to show the agreed upon

change, together with the covering e-mail from counsel to Delphi, is attached hereto as Exhibit

B.

### The Confirmed Plan and Approved Disclosure Statement

15.     In late September 2007, after representatives of the Board reviewed Delphi's

proposed disclosure statement, filed in connection with its proposed joint plan of reorganization,

counsel for the Board advised counsel to Delphi of the Board's intention to file an objection to

the adequacy of the disclosure based upon the statement's failure to address the situation between

Delphi and the Board regarding the shortfall in its posted collateral and the potential

ramifications to Delphi if the matter were not addressed and corrected to the satisfaction of the

Chairman of the Board.

16.     As a result of those conversations and e-mails, Delphi agreed to modify its

proposed disclosure statement to include the following:

> (d) State of New York Workers' Compensation Board Claims
>
> Under the laws of the various jurisdictions in which they operate,
> the Debtors are required to maintain workers' compensation
> policies and to provide Employees with workers' compensation
> coverage for claims arising from or related to workplace illnesses
> or injuries arising during their employment with the Debtors.

6

Therefore, and in accordance with applicable requirements of local law, the Debtors maintain workers' compensation policies in all states in which they operate.

In the State of New York, the Debtors currently provide their Employees with self-insured workers' compensation. Pursuant to workers' compensation policies, Employees seeking reimbursement for work-related injuries file their claims directly against the Debtors. In connection with their self-insured workers' compensation, the Debtors are required by some of the states in which they operate as a self insured, including New York, to post security such as cash, securities, irrevocable letters of credit, security deposits, or surety bonds for the benefit of the respective state. Failure of the Debtors to pay their workers' compensation obligations can result in a draw down in the affected state of such letters of credit, security deposits, and/or surety bonds. Further, failure to maintain the requisite security could give a state the right to revoke the Debtors' self-insured employer status. By virtue of the provisions of a first day order entered in the Chapter 11 Cases, the Debtors were authorized to pay all amounts related to workers' compensation claims and incurred but not reported claims. To date, the Debtors have paid all workers' compensation obligations to their Employees arising in the State of New York. Under the Plan, all workers' compensation obligations, regardless of whether they arise from prepetition or postpetition events, and regardless of whether a proof of claim has been filed, will flow through the Plan and continue to be paid by the Debtors in the ordinary course.

The Debtors have been advised by the State of New York Workers' Compensation Board ("NYSWCB") that because of recalculations by the NYSWCB based upon reports submitted by the Debtors, the amount of security currently posted by the Debtors with New York is substantially inadequate and would require a significant increase to be in compliance with the updated requirements. The Debtors do not agree with the revised calculation and take issue with the conclusions of the NYSWCB. As a result, representatives of the Debtors and the NYSWCB have been in continuing discussions to try to resolve this issue. If this issue is not resolved to the satisfaction of the NYSWCB, it is likely that the State of New York will seek to terminate Delphi's ability to maintain self-insured status pursuant to provisions of the New York State's Workers' Compensation Law. Delphi reserves its right to

7

> challenge any such effort. In the event the Debtors' ability to
> maintain self-insured status is revoked, alternative arrangements
> for workers' compensation coverage would most certainly be more
> costly. (Emphasis added.)

*First Amended Disclosure Statement With Respect to First Amended Joint Plan of Reorganization of Delphi
Corporation and Certain Affiliates, Debtors and Debtors-in-Possession; In re Delphi Corporation, et. al.;
Chapter 11, USBC SDNY; Case No. 95-44481(RDD); Docket entry # 11388; pgs DS159-160.*

17.     Delphi's disclosure statement containing the foregoing provision was approved by

the Court on December 10, 2007, as the First Amended Disclosure Statement.

18.     On January 25, 2008, the Court entered an Order confirming the First Amended

Joint Plan of Reorganization of Delphi Corporation and Certain Affiliate, Debtors and Debtors-

in-Possession (the "Confirmed Plan"), which Order became final on February 4, 2008.

19.     Under the Confirmed Plan, all workers' compensation claims were classified

within Class B, which consisted of all "Flow-Through Claims against the applicable Debtor or

consolidated group of Debtors." The Confirmed Plan defined a "Flow Through Claim" as

follows:

> a "claim arising from (a) an Ordinary Course Customer Obligation
> to a customer of Delphi as of the date of the commencement of the
> hearing on the Disclosure Statement, (b) an Environmental
> Obligation (excluding those environmental obligations that were
> settled or capped during the Chapter 11 Cases (to the extent in
> excess of the capped amount)), (c) *an Employee-Related
> Obligation (including worker compensation and unemployment
> compensation claims*) asserted by a hourly employee that is not
> otherwise waived pursuant to the Union Settlement Agreements,
> (d) *any Employee-Related Obligation asserted by a salaried, non-
> executive employee who was employed by Delphi as of the date of
> the commencement of the hearing on the Disclosure Statement,
> (e) any Employee Related Obligation asserted by a salaried
> executive employee who was employed by Delphi as of the date of
> the commencement of the hearing on the Disclosure Statement
> and has entered into a new employment agreement as described
> in Article 7.8 of this Plan, and* (f) litigation exposures and other

8

> liabilities arising from litigation that are covered by insurance, but
> only in the event that the party asserting the litigation ultimately
> agrees to limited its recovery to available insurance proceeds;
> provided, however, (emphasis in original) that all Estate Causes of
> Action and defenses to any Flow-Through Claim shall be fully
> preserved. (bold italic emphasis supplied).

*First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-in-Possession ¶ 1.86.*

20.    Article V, ¶5.2 of the Confirmed Plan provides for the following treatment for

Flow-Through Claims:

> The legal, equitable, and contractual rights of each holder of a
> Flow-Through claim, if any, shall be unaltered by the Plan and
> shall be satisfied in the ordinary course of business at such time
> and in such manner as the applicable Reorganized Debtor is
> obligated to satisfy each Flow-Through Claim (subject to the
> preservation and flow-through of all Estate Causes of Action and
> defenses with respect thereto, which shall be fully preserved.

21.    During the period following the Confirmed Plan, the Board met with Delphi and

again urged Delphi to commit to a plan under which Delphi would increase the amount of

collateral posted with the Board, failing which the Board would consider revoking Delphi's

privilege to continue to operate as a self-insurer.  Delphi countered with more pleas for

forbearance and again advised the Board that it would continue to meet all of its workers'

compensation payments to its employees.  It further advised the Board that Delphi now had

General Motors' agreement to reimburse Delphi for all workers' compensation payments made

by Delphi under the provisions of the Amended and Restated Master Restructuring Agreement,

which, in Delphi's view, would provide the Board with any further assurance it would need that

the payments would continue to flow.

9

The Modified Plan

22. Delphi now seeks to modify the Confirmed Plan pursuant to section 1127 of the Bankruptcy Code (the "Modified Plan"). The central feature of the Modified Plan is the Master Disposition Agreement.

23. Under the Modified Plan, the definition and thereby the scope of Flow-Through Claims has been eviscerated to the detriment of the Board and any and all employees that have compensation claims against Delphi. Everything has been eliminated from the definition except the phrase "an Employee-Related Obligation," which too has been redefined within renumbered ¶1.93 by eliminating after the phrase: "(including worker compensation and unemployment compensation claims)."

24. According to the Supplement To First Amended Disclosure Statement With Respect to First Amended Joint Plan Of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-in Possession, a Flow-Through Claim now includes only "a claim arising from an Employee-Related Obligation Asserted by a salaried employee who was employed by Delphi as of the date of the commencement of the hearing on the Disclosure Statement for severance or indemnification except that all Estate Causes of Action and defenses to any Flow-Through Claim will be fully preserved. Flow-Through Claims (which no longer include workers' compensation claims) remain unimpaired by the Modified Plan and are to be satisfied by the relevant Buyer in accordance with the Master Disposition Agreement.

25. The treatment of workers' compensation claims to the extent they are not Administrative Expense Claims has now disappeared from the Modified Plan. Adding insult to

10

injury, the Modified Plan fails to provide an opportunity for holders of workers' compensation "flow through" claims under the Confirmed Plan to file claims, notwithstanding that there are new provisions for holders of other Employee-Related Obligations to file claims after the Effective Date of the Modified Plan.

26. The Board respectfully submits that the Modified Plan's change in treatment of workers' compensation claims is plainly, simply, and manifestly unfair. Delphi should be precluded by principles of promissory estoppel and/or equitable estoppel from excluding workers' compensation claims from Class B flow-through claims based upon Delphi's post-petition conduct - both pre- and post-confirmation. Delphi made promises, representations and assurances upon which the Board justifiably relied to its detriment. The Board respectfully seeks to reserve the right to show the requisite elements for promissory estoppel, to wit, that Delphi made a clear and unambiguous promise for which there was reasonable and forseeable reliance by the Board, as a consequence of which the Board was injured. *See In re Leslie Fay, Cos.*, 212 B.R. 747 (Bankr. S.D.N.Y. 1997); *In re WorldCom, Inc.*, 362 B.R. 96, 114 (Bankr. S.D.N.Y. 2007) (" ' A promise is an expression of intention that the promisor will conduct himself in a specified way or bring about a specified result in the future, communicated in such a manner to a promisee that he may justly expect performance and may reasonably rely thereon.' Choate v. TRW, Inc., 304 U.S. App. D.C. 312, 14 F. 3d 74 (D.C. Cir. 1994) (quoting 1 Corbin On Contracts § 13 (1963)") The Board further seeks to reserve the right to conduct discovery in connection with a potential equitable estoppel claim.

## The Master Disposition Agreement

27. The Master Disposition Agreement sets forth that GM Components Holdings,

11

LLC, a recently formed non-debtor subsidiary corporation of GM, or such other entity as GM

Components Holdings, LLC designates (the "GM Buyer"), will be buying the assets that

comprise the Delphi facilities in Rochester, New York and Lockport, New York, with the

exception of the technical center associated with the Rochester, New York facility, located in

Henrietta, New York, which is to be purchased by Parnassus Holdings II, LLC ("Parnassus"),

with substantial support from GM. The Master Disposition Agreement, among other things, also

provides for the termination of the Amended and Restated Master Restructuring Agreement, the

agreement that provided reimbursement to Delphi for payment of workers' compensation claims.

28.      If the Master Disposition Agreement is consummated, the GM Buyer will also be

an "Employer" as defined by WCL § 2(3) and thus required to provide workers' compensation

coverage for its employees. While the motion filed by GM in GM's bankruptcy case, seeking

approval to proceed with the Master Disposition Agreement, stated that as consideration for the

assets it seeks to purchase, the GM Buyer will assume "certain ordinary course of business

liabilities associated with the GM Purchased Assets," the Master Disposition Agreement fails to

sufficiently address how the GM Buyer intends to fulfill the continuing workers' compensation

obligations for the employees at the Rochester and Lockport plants and the method it shall seek to

utilize to address those and future obligations. Failure to address these issues raised by the

Master Disposition Agreement will cause the Modified Plan to have been proposed by a means

forbidden by the WCL, in violation of 11 U.S.C.§ 1129(3).

29.      Thus, the Board must also oppose the Master Disposition Agreement: 1) to the

extent the assumption of liabilities by the GM Buyer, as described in section 2.2 of the Master

Disposition Agreement, or any applicable schedule to said section, fails to include a) workers'

12

compensation liabilities due to employees arising from their employment at the Rochester and
Lockport facilities; b) any obligations to the Board that result from Delphi's failure to adequately
respond to its obligations as an employer and a self-insurer under the WCL and the rules,
regulations, and policies promulgated thereunder or to adequately address the demands of the
Chairman of the Board; c) claims due to the Board arising from actual, necessary costs and
expenses of preserving the Delphi estate by refraining from revoking Delphi's privilege to
maintain self-insured status to date; and 2) based upon its failure to address the manner in which
the GM Buyer intends to comply with the provisions of the WCL as an employer obligated to
provide for the payment of benefits to its employees including, but not limited to, all Transferred
Employees as defined in the Master Disposition Agreement.

30.     The Board also asserts the same objection with regard to Parnassus in connection
with its proposed acquisition of the technical center associated with the Rochester facility, which
is located in Henrietta, New York.

31.     In the event that the facilities at Rochester and Lockport are conveyed to a third
party through the vehicle of a § 363 sale, the Board asserts the same objections set forth above
regarding to the payment of workers' compensation obligations and compliance with the WCL
and the rules, regulations and procedures promulgated thereunder.

WHEREFORE, the Board respectfully requests that any Order approving the Debtors'
Modified Plan, the Master Disposition Agreement, and/or the transactions set forth in the Master
Disposition Agreement, as modified by the 363 Implementation Agreement require (a) the full
payment by Delphi, or full assumption and subsequent payment in the ordinary course by the GM
Buyer and Parnassus or such other purchaser under a 363 sale, of all outstanding workers'

13

compensation claims and past, present, and future liabilities for the compensation of Delphi

Corporation employees (or the employees of its applicable subsidiary) arising from injuries or

illnesses occurring during their employment in the State of New York; and (b) compliance with

the provisions of the WCL and the rules, regulations, and procedures promulgated thereunder, and

2) preservation of the authority created under the WCL for the Board, its Chairman, and the

applicable administrative and judicial bodies to resolve any New York workers' compensation

issues that may arise in connection with compensation coverage of the employees at the Rochester

and Lockport, New York facilities.

Dated: Albany, New York
       July 15, 2009

                                        ANDREW M. CUOMO
                                        Attorney General of the State of New York
                                        Attorney for the New York State Workers'
                                        Compensation Board

                                By:     /s/ Nancy Hershey Lord
                                        Nancy Hershey Lord (NHL-3067)
                                        Assistant Attorney General
                                        The Capitol
                                        Albany, NY 12224
                                        Telephone: (518) 473-6992
                                        Facsimile: (518) 408-2057

14

# EXHIBIT "A"

# DELPHI

VIA E-MAIL
Original to Follow Via Federal Express

October 14, 2005

William F. Howard
First Deputy to the Governor
State of New York
Executive Chamber
Albany, NY 12224

Dear Mr. Howard:

You have asked for a letter stating Delphi's intentions regarding payment of workers
compensation benefits. It is Delphi's intent to continue to pay its workers' compensation
obligations in accordance with the terms of the bankruptcy court order granting Delphi's "Human
Capital Obligations Motion".

For access to court documents and regular updates on other information regarding Delphi's
chapter 11 filing, please visit www.delphidocket.com. For general information about Delphi's
restructuring, please visit www.delphi.com.

Should you wish to discuss further, please do not hesitate to contact me at 248.813.1252.

Sincerely,

Deborah J. France

Deborah J. France
Supervisor, Workers' Compensation

Cc:    David P. Wehner, Chairman - NYS Workers' Compensation Board
       Senator George D. Maziarz, Chairman - Senate Labor Committee
       Deb Ayers, Regional Director - Delphi Government, Community Relations

# EXHIBIT "B"

## Nancy Lord - Delphi UAW order

| From: | "Marafioti, Kayalyn" <KMARAFIO@skadden.com> |
|---|---|
| To: | <nancy.lord@oag.state.ny.us> |
| Date: | 7/12/2007 12:07 PM |
| Subject: | Delphi UAW order |
| Attachments: | marked UAW MOU order .doc |

Nancy -- As we discussed, I'm attaching a copy of Delphi's proposed order approving the MOU with the UAW, marked to show a new proviso in paragraph 9(a). The proviso makes clear the fact that workers' compensation claims are not being waived. This change has been approved by Delphi's labor counsel but has not yet been reviewed by the UAW or GM. Please confirm that this revision will allay your concerns about the workers' comp issue. Regards, Kayalyn

Kayalyn A. Marafioti
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square
New York, New York  10024
212.735.2350 (telephone)
917.777.2350 (facsimile)
kmarafio@skadden.com / kayalyn.marafioti@skadden.com

------------------------------------------------------------------------------
To ensure compliance with Treasury Department regulations, we advise you that, unles

****************************************************
This e-mail and any attachments thereto, is intended only for use by the addressee(s

Further information about the firm, a list of the Partners and their professional qu
****************************************************
==============================================================================

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                              :
     In re                                    :   Chapter 11
                                              :
DELPHI CORPORATION, et al.,                   :   Case No. 05-44481 (RDD)
                                              :
                       Debtors.               :   (Jointly Administered)
                                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
```

## ORDER UNDER 11 U.S.C §§ 363, 1113, AND 1114
## AND FED. R. BANKR. P. 6004 AND 9019 APPROVING MEMORANDUM OF
## UNDERSTANDING AMONG UAW, DELPHI, AND GENERAL MOTORS CORPORATION
## INCLUDING MODIFICATION OF UAW COLLECTIVE BARGAINING AGREEMENTS
## AND RETIREE WELFARE BENEFITS FOR CERTAIN UAW-REPRESENTED RETIREES

### ("UAW 1113/1114 SETTLEMENT APPROVAL ORDER")

Upon the motion ("UAW 1113/1114 Settlement Approval Motion" or the

"Motion"), dated June 29, 2007, of Delphi Corporation ("Delphi") and certain of its subsidiaries

and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the

"Debtors"), for an order under 11 U.S.C. §§ 363, 1113, and 1114 of the Bankruptcy Code and Fed.

R. Bankr. P. 6004 and 9019 approving (i) a memorandum of understanding regarding Delphi's

restructuring entered into among the United Automobile, Aerospace and Agricultural Implement

Workers of America (the "UAW"), Delphi, and General Motors Corporation ("GM"), dated June

22, 2007 (with the attachments thereto, the "UAW Settlement Agreement" or the "Memorandum

of Understanding"), that (a) modifies, extends, or terminates provisions of the existing collective

bargaining agreements among Delphi, the UAW, and its various locals (the "UAW CBAs"), and (b)

provides that Delphi and GM will undertake certain financial obligations to Delphi's

UAW-represented employees and retirees to facilitate these modifications, (ii) withdrawal without

prejudice of the Debtors' Motion For Order Under 11 U.S.C. § 1113(c) Authorizing Rejection Of
Collective Bargaining Agreements And Under 11 U.S.C. § 1114(g) Authorizing Modification Of
Retiree Welfare Benefits, dated March 31, 2006 (the "1113/1114 Motion") solely as it pertains to
the UAW and approving the parties' settlement of the 1113/1114 Motion solely as it pertains to the
UAW, and (iii) modification of retiree welfare benefits for certain UAW-represented retirees of
the Debtors, all as more fully set forth in the UAW 1113/1114 Settlement Approval Motion; and
the Court having been advised by counsel to the UAW that the UAW Settlement Agreement was
ratified by the UAW membership as of June 28, 2007, such that the only remaining condition to
the effectiveness of the UAW Settlement Agreement pursuant to Section K.1 thereof is this Court's
entry of an approval order satisfactory in form and substance to the UAW, GM, and Delphi; and
this Court having been advised by counsel to the UAW, GM, and Delphi that the form and
substance of this Order is satisfactory to each of the UAW, GM, and Delphi as required by Section
K.1 of the UAW Settlement Agreement; and this Court having determined that the relief requested
in the Motion is in the best interests of the Debtors, their estates, their creditors, and other
parties-in-interest; and it appearing that proper and adequate notice of the Motion has been given
and that no other or further notice is necessary; and after due deliberation thereon; and good and
sufficient cause appearing therefor, it is hereby

ORDERED, ADJUDGED, AND DECREED THAT:

1.      The Motion is GRANTED.

2.      The Debtors are hereby authorized to enter into the UAW
Settlement Agreement, a copy of which is attached hereto as Exhibit 1, and to implement
the terms of such UAW Settlement Agreement.

2

3. Each of the signatories to the UAW Settlement Agreement (each

such party, a "Signatory," and collectively, the "Signatories") is directed to take all actions

necessary or appropriate to effectuate the terms of this order and the terms of the UAW

Settlement Agreement, including, without limitation, any and all actions necessary or

appropriate to such Signatory's implementation of and performance under the UAW

Settlement Agreement.

4. The UAW Settlement Agreement is binding on the Debtors, GM,

and the UAW subject to its terms and constitutes a valid and binding amendment to the

UAW CBAs with authorized representatives of all individuals who were or are in a

bargaining unit represented by the UAW, as permitted by section 1113 of the Bankruptcy

Code and the UAW CBAs as amended, or otherwise, and the UAW CBAs, in accordance

with the UAW Settlement Agreement, are binding on the Debtors and the UAW.

5. The UAW Settlement Agreement constitutes a valid and binding

amendment to existing retiree health and welfare benefits, as permitted by section 1114 of

the Bankruptcy Code, or otherwise.

6. Notice of the UAW 1113/1114 Settlement Approval Motion was

properly and timely served in accordance with the Amended Eighth Supplemental Order

Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And

9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And

Administrative Procedures, entered on October 26, 2006 (Docket No. 5418), the

Supplemental Order Under 11 U.S.C. Sections 102(1) And 105 And Fed. R. Bankr. P.

2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice,

Case Management, And Administrative Procedures, entered on March 17, 2006 (Docket

3

No. 2883), and by service upon (a) the UAW at 8000 East Jefferson, Detroit, Michigan
48214, (b) counsel to the UAW, Cohen, Weiss, and Simon LLP at 330 West 42nd Street,
25th Floor, New York, N.Y. 10036-6976, and (c) the active Delphi hourly employees and
hourly retirees who are represented by the UAW at their individual addresses, pursuant to
an informational form of notice, a copy of which was attached to the UAW 1113/1114
Settlement Approval Motion as Exhibit 1.

7.      The Debtors are authorized to withdraw, without prejudice, their
1113/1114 Motion solely as it pertains to the UAW.  The 1113/1114 Motion is settled
solely as it pertains to the UAW.

8.      As provided for in the Motion and with the consent of the UAW and
Delphi, Sections H.3 and J.3 of the UAW Settlement Agreement are clarified to provide for
the continuance of CHR accruals through October 1, 2007 and to provide that the UAW
will receive on the Effective Date an allowed prepetition general unsecured claim against
Delphi in the amount of $140 million consisting of UAW-GM Center for Human
Resources ("CHR")  existing accruals of $134 million and UAW-Delphi Legal Services
Plan accruals of $6 million (such allowed claim amount to be adjusted by the difference
between accruals through October 1, 2007 and expenditures until the effective date of the
Debtors' plan of reorganization (the "Delphi Reorganization Plan")) in complete settlement
of the UAW and the CHR claims asserted as to CHR Joint Funds[1] and the UAW-Delphi
Legal Services Plan accruals and expenses.  The allowed claim provided for in this
paragraph shall be paid pursuant to the plan of reorganization following substantial
consummation of a plan of reorganization.  The amount of $30 million will be directed to

---

[1]     Capitalized terms used and not otherwise defined herein have the meanings ascribed to
them in the Memorandum of Understanding.

4

the CHR and the balance will be paid directly to the DC VEBA established pursuant to the

settlement agreement approved by the court in the case of International Union, UAW, et al.

v. General Motors Corp., Civil Action No. 05-73991. Until the effective date of a Delphi

Reorganization Plan, Delphi shall continue to make CHR and Legal Service Plan payments

consistent with past practices in the ordinary course of business.

        9.      As a condition precedent to the effectiveness of certain obligations

of the parties pursuant to Section K.2 of the UAW Settlement Agreement and as provided

in Section K.3 of the UAW Settlement Agreement, any Delphi Reorganization Plan that is

consistent with the UAW Settlement Agreement and any confirmation order entered into

with respect to such plan shall include the following provisions:

        (a)      On the effective date of the Delphi Reorganization Plan, the UAW,
all employees and former employees of Delphi represented or
formerly represented by the UAW, and all persons or entities with
claims derived from or related to any relationship with such
employees or former employees of Delphi, shall waive and release
and be deemed to have waived and released any and all claims of
any nature, whether liquidated or unliquidated, contingent or
non-contingent, asserted or unasserted, existing and/or arising in the
future against Delphi, its subsidiaries, or affiliates, the Delphi HRP,
the Delphi Health Care Program for Hourly Employees and the
Delphi Life and Disability Benefits Program for Hourly Employees,
GM, its subsidiaries or affiliates, the GM HRP, the GM Health Care
Program for Hourly Employees and the GM Life and Disability
Benefits Program for Hourly Employees, and the officers, directors,
employees, fiduciaries, and agents of each, arising directly or
indirectly from or in any way related to any obligations under the
UAW CBAs and the collective bargaining agreement between GM
and the UAW related to such employees and the UAW-GM-Delphi
Memorandum of Understanding Benefit Plan Treatment related to
such employees (provided, however, that claims for benefits
provided for or explicitly not waived under the provisions of the
UAW Settlement Agreement are not waived; and provided further
that claims for workers' compensation benefits against Delphi, its
subsidiaries, or affiliates, are not waived).

        (b)      A plan exculpation and release provision (which provision shall be
at least as comprehensive as the plan exculpation and release

5

provision under the Delphi Reorganization Plan) for the UAW released parties (which shall include the UAW and each of their current or former members, officers, committee members, employees, advisors, attorneys, accountants, investment bankers, consultants, agents, and other representatives) with respect to any liability such person or entity may have in connection with or related to the Delphi bankruptcy cases, the formulation, preparation, negotiation, dissemination, implementation, administration, confirmation or consummation of any of the Delphi Reorganization Plan, the disclosure statement concerning the plan, the UAW Settlement Agreement, or the Agreements on Attachment E thereto, or any contract, employee benefit plan, instrument, release, or other agreement or document created, modified, amended, or entered into in connection with either the Delphi Reorganization Plan or any agreement between the UAW or Delphi, or any other act taken or omitted to be taken consistent with the UAW Settlement Agreement in connection with the Delphi bankruptcy.

(c)   The UAW Settlement Agreement and the agreements referenced in Attachment E thereof and listed on Exhibit 2 attached hereto shall be assumed under 11 U.S.C. § 365.

10.   Nothing contained in the UAW Settlement Agreement shall

constitute an assumption of any agreement described therein, including, without limitation, any UAW CBA (except as provided for in Section K.3 of the UAW Settlement Agreement) or any commercial agreement between GM and Delphi, nor shall anything therein be deemed to create an administrative or priority claim with respect to GM or convert a prepetition claim into a postpetition claim or an administrative expense with respect to any party. The UAW Settlement Agreement is without prejudice to any interested party (including the parties to the UAW Settlement Agreement and the Debtors' statutory committees) in all other aspects of Delphi's chapter 11 cases and each party to the UAW Settlement Agreement shall reserve all rights not expressly waived therein.

11.   In furtherance of the UAW Settlement Agreement, as soon as reasonably practicable after the Effective Date, Delphi shall pay approximately (but in no event more than) $993,000 in cash severance and vacation payments to former

UAW-represented hourly employees of Manufacturers Products Co. ("MPC"), a former

distressed supplier which provided parts to Delphi pursuant to an accommodation

agreement. These MPC-related payments are to be in full satisfaction of all claims against

the Debtors arising from or related to MPC, and the Debtors and their estates shall be

released from any liability from MPC and its former UAW-represented employees with

respect thereto. In order to receive payment from Delphi pursuant to this paragraph, any

payment recipient shall execute a complete release and discharge in favor of the Debtors,

accordingly all claims filed in the Debtors' chapter 11 cases arising from or relating to the

subject matter of severance and/or vacation claims by MPC employees or former

employees are hereby expunged and released, including claim number 13270.

    12.  This Court shall retain jurisdiction to hear and determine all matters

arising from the implementation and performance of this order and the UAW Settlement

Agreement, and over each of the Signatories in connection therewith through the effective

date of a plan of reorganization proposed by the Debtors and confirmed by this Court (and

thereafter to the extent provided for in such reorganization plan); provided, however, that

the Court's jurisdiction shall not extend to any bilateral agreements of the UAW and GM.

    13.  Notwithstanding Rule 6004(g) of the Federal Rules of Bankruptcy

Procedure or any other Bankruptcy Rule, (a) this order shall take effect immediately upon

its entry, (b) upon entry of this order, the Debtors are authorized to take any and all

necessary actions to implement the terms of the UAW Settlement Agreement, including

executing any amendments to existing collective bargaining agreements consistent in all

material respects with the UAW Settlement Agreement, and (c) the UAW Settlement

7

Agreement shall become effective upon entry of this order and, to the extent required,

satisfaction of the conditions set forth in the UAW Settlement Agreement.

        14.    The requirement under Rule 9013-1(b) of the Local Bankruptcy

Rules for the United States Bankruptcy Court for the Southern District of New York for the

service and filing of a separate memorandum of law is deemed satisfied by the Motion.

Dated: New York, New York
       July \_\_\_, 2007


_____
UNITED STATES BANKRUPTCY JUDGE

8