**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|   |   |   |
|---|---|---|
| In re: | ) | Chapter 11 |
|   | ) |   |
| DELPHI CORPORATION, et al. | ) | Case No. 05-44481 (RDD) |
|   | ) |   |
| Debtors | ) | Jointly Administered |
|   | ) |   |

**LIMITED RESPONSE TO DEBTORS' FIRST AMENDED**
**PLAN OF REORGANIZATION (AS MODIFIED)**

Hewlett-Packard Company ("HP") and Electronic Data Systems, LLC ("EDS") hereby make this limited response (the "Limited Response") to the above-captioned jointly administered Debtors' motion to approve the First Amended Joint Plan of Reorganization, dated December 10, 2007, as modified on January 25, 2008 and June 16, 2009 (the "Modified Plan") See Docket Nos. 1431, 16646.[1]  In support of the Limited Response, HP and EDS state as follows:

**PRELIMINARY STATEMENT**

1.      HP and EDS support approval of the Modified Plan but request that it be revised in order to clarify a number of ambiguities, perhaps unintended, in how certain executory contracts will be assigned to the Buyers pursuant to the Master Disposition Agreement.  The Debtors entered into separate postpetition agreements (as subsequently amended, the "HP Agreement" and "EDS Agreement"; together, the "IT Infrastructure Outsourcing Agreements") with HP and EDS respectively that, pursuant to the Modified Plan and the Master Disposition Agreement, each are to be assigned to one of the Buyers.  However, neither the Plan nor the

---

[1] Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the Plan.

- 1 -

KL2 2612517.3

Master Disposition Agreement specify which Buyer will assume the IT Infrastructure Outsourcing Agreements, nor do those documents provide sufficient provisions regarding adequate assurance with respect to the assignee's performance. Moreover, though both HP and EDS provide outsourced information technology ("IT Services") to the Debtors in connection with the GM Business, the Company Business and the Steering Business, neither the Modified Plan nor the Master Disposition Agreement explain how those portions of the IT Infrastructure Outsourcing Agreements relating to IT Services for businesses that are being acquired by the other Buyer will be impacted by the assignment.

2. EDS and HP therefore respond to the Modified Plan and request that the Debtors revise the Modified Plan and/or the proposed final order approving the Modified Plan in order to: (i) identify the Buyer that will be acquiring either of the IT Infrastructure Agreements; (ii) provide adequate assurance regarding the assignee's performance with respect to either such agreement; and (iii) explain how performance under either such agreement will be satisfied with respect to services for businesses ("Orphan Services") that are not being acquired by the Buyer assuming the applicable agreement.

## BACKGROUND

3. On September 20, 2006, Delphi Corporation ("Delphi"), one of the Debtors, entered into the HP Agreement with HP and the EDS Agreement with Electronic Data Systems Corporation and EDS Information Services, L.L.C. By their terms, the effectiveness of each of the IT Infrastructure Outsourcing Agreements was conditioned on this Court's approval.

4. Each IT Infrastructure Outsourcing Agreement is a global services contract under which Delphi contracts for global infrastructure services on behalf of itself and each of its subsidiaries and affiliates for a seven-year term. Pursuant to the IT Infrastructure Outsourcing Agreements, HP and EDS provide these services in every area of the Debtors'

KL2 2612517.3

business operations, including those that are being acquired by the GM Buyer (i.e., the GM Business) and those that are being acquired by the Company Buyer (i.e., the Company Business).

5. On October 23, 2006, the Court entered an order authorizing the Debtors to enter into the IT Infrastructure Outsourcing Agreements, thereby rendering the agreements effective. [Docket No. 5378].

6. On April 23, 2007 the Court entered an order authorizing the Debtors to amend the EDS Agreement. [Docket No. 7774].

7. On August 26, 2008, HP completed its acquisition of Electronic Data Systems Corporation and EDS Information Services L.L.C. (the "EDS Acquisition"). Pursuant to the EDS Acquisition, both of those entities were merged under EDS, now a wholly owned subsidiary of HP.

8. On June 1, 2009, Delphi, GM Components Holdings, LLC, Parnassus Holdings II, LLC and other buying and selling parties entered into the Master Disposition Agreement pursuant to which, if and when the Court approves the Modified Plan, the transactions contemplated by the Modified Plan will be consummated, including the transfer of substantially all of the Debtors' assets to the Company Buyer and the GM Buyer.

9. Also on June 1, 2009, the Debtors submitted a supplement (the "Motion Supplement") to the motion, filed on October 3, 2008, for an order approving modifications to the Plan (the "Plan Modification Approval Motion"). See Docket Nos. 14310, 16646. The Debtors submitted the Master Disposition Agreement to the Court for approval as part of the Motion Supplement.

10. Paragraph 9.3 of the Master Disposition Agreement provides, in relevant part, that:

- 3 -

KL2 2612517.3

> Delphi will move to assume and assign to the applicable Buyers the Pre-Petition Contracts listed on Schedule 9.3 and assign the Post-Petition Contracts to the applicable Buyer (collectively, the "**Assumed and Assigned Contracts**") and will provide notice thereof to the Contract counterparties and all other parties in accordance with all applicable Bankruptcy Rules as modified by orders of the Bankruptcy Court.  With respect to any Assumed and Assigned Contracts that are "shared" and relate to the business, assets or entity acquired hereunder by more than one Buyer, then the applicable Buyers will agree that one of the Buyers will become the assignee of the shared Assumed and Assigned Contract . . . .

11.     Paragraph 9.9.12 of the Master Disposition Agreement provides, in relevant part, that:

> Sellers, without having to incur additional costs, shall cooperate with GM with respect to GM entering into new agreements with Sellers' outsourced service providers and software license providers, including Electronic Data Systems Corporation, EDS Information Systems, LLC and its affiliates (collectively, "**EDS**") . . . and the Hewlett Packard Company and its affiliates (collectively, "**HP**"); <u>provided</u> that there is no material out-of-pocket cost or other material adverse financial impact to Sellers or their Affiliates.

## ARGUMENT

12.     Section 365(f)(2) provides that a trustee or debtor-in-possession may assign an executory contract only if, among other requirements, "adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease."

13.     The IT Infrastructure Outsourcing Agreements (each "Post-Petition Contracts" as that term is defined in the Master Disposition Agreement) are to be assigned to the "applicable Buyer" pursuant to paragraph 9.3 of the Master Disposition Agreement.  However, nothing in the Master Disposition Agreement identifies *which* buyer – the GM Buyer or the Company Buyer – will be assuming either of the IT Infrastructure Outsourcing Agreements.

Without identifying the applicable Buyer(s), the Master Disposition Agreement and the Modified Plan fall short of section 365(f)(2)'s requirement that HP and EDS be provided adequate assurance of future performance. While paragraphs 5.7 and 7.7 of the Master Disposition Agreement summarily assert that the Company and the GM Buyer each grant adequate protection of future performance, these assurances are meaningless without greater specificity with respect to which contracts are being assumed by which entity.

14. Moreover, the summary assertions of "adequate assurance" provided for in paragraphs 5.7 and 7.7 of the Master Disposition Agreement are insufficient because the nature of the services provided under the IT Infrastructure Outsourcing Agreements extend to all of the Debtors' business operations, but the applicable Buyer will only acquire certain businesses. The Master Disposition Agreement provides no insight into how the Buyer that will be assuming the IT Infrastructure Outsourcing Agreements will provide adequate assurance with respect to the Orphan Services (i.e., those services that relate to businesses being acquired by the other Buyer).

15. While paragraph 9.9.12 of the Master Service Agreement suggests that GM Buyer will attempt to enter into new agreements with HP and EDS, it is unclear how these attempts relate to the assumption of the existing IT Infrastructure Outsourcing Agreements or how performance with respect to the Orphan Services will be assured.

16. HP and EDS submit that the foregoing ambiguities in the Master Service Agreement can be remedied by revising the Modified Plan and the proposed final order approving the Modified Plan to: (i) identify the Buyer that will be acquiring each of the IT Infrastructure Agreements; (ii) provide adequate assurance regarding the assignee's performance with respect to either such agreement; and (iii) explain how performance under either such agreement will be satisfied with respect to Orphan Services. Subject to the Debtors' satisfaction

KL2 2612517.3

of these limited and simple requests, HP and EDS support the Debtors' efforts to obtain approval of the Modified Plan and to consummate the Master Disposition Agreement.

WHEREFORE, HP and EDS respectfully request that the Court enter an order approving the Modified Plan subject to the modifications requested herein.

Dated: July 15, 2009
New York, New York

        KRAMER LEVIN NAFTALIS & FRANKEL LLP

        /s/ Jordan Kaye
        Mark Chass
        Jordan D. Kaye
        1177 Avenue of the Americas
        New York, New York 10036
        Telephone: (212) 715-9100

        Counsel for Hewlett-Packard Company and
        Electronic Data Systems, LLC