| | |
|---|---|
| **MORRISON COHEN LLP**<br>909 Third Avenue<br>New York, New York 10022<br>(212) 735-8600<br>Joseph T. Moldovan<br>Michael R. Dal Lago | Hearing Date: July 23, 2009 at 10:00 a.m.<br>Objection Deadline: July 20, 2009 |

**MILLER & CHEVALIER CHARTERED**
655 Fifteenth Street, N.W.
Suite 900
Washington, D.C. 20005
(202) 626-5800
Anthony F. Shelley (pro hac vice admission pending)
Timothy P. O'Toole (pro hac vice admission pending)

*Attorneys for Dennis Black, Charles Cunningham,
and the Delphi Salaried Retiree Association*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
In re:                                                          :    Chapter 11
                                                                :
DELPHI CORPORATION, et al.,                :
                                                                :    Case No. 05-44481 (RDD)
                                      Debtors.         :    (Jointly Administered)
                                                                :
------------------------------------------------------------x

## MOTION OF DENNIS BLACK, CHARLES CUNNINGHAM, AND
## THE DELPHI SALARIED RETIREE ASSOCIATION UNDER RULE 2018(a)
## OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE FOR
## <u>AN ORDER AUTHORIZING INTERVENTION INTO THIS CASE</u>

Dennis Black and Charles Cunningham, who are participants in the Delphi Retirement Program for Salaried Employees, and the Delphi Salaried Retiree Association, which is an association of participants in the Delphi Retirement Program for Salaried Employees (collectively, "the Salaried Workers"), through their undersigned counsel Morrison Cohen LLP and Miller & Chevalier Chartered, hereby submit this Motion under Rule 2018(a) of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") for an Order Authorizing the Salaried

#1787432 v4 \021081 \0001

Workers to Intervene in the above-captioned chapter 11 case of Delphi Corporation, et al., debtors and debtors-in-possession ("Debtors" or, collectively, "Delphi").

1. The Salaried Workers are participants in The Delphi Retirement Program For Salaried Employees ("Salaried Workers Plan") consisting of approximately 15,000 men and women who worked over two-thirds (or 25, plus, years) of their careers at General Motors Corporation ("GM") as, among other things, engineers, managers, and clerical workers. They became Delphi salaried employees after Delphi was spun off from GM in 1999. Some of these workers spent as little as a few months as Delphi employees prior to retirement, though having spent many years at GM.

2. In accordance with a recent Motion[1] that was filed in this case ("Modification Motion"), the Debtors intend to modify their pending Plan of Reorganization ("Modified Reorganization Plan") and have stated unequivocally that the Salaried Workers Plan "shall be terminated." Modified Reorganization Plan § 7.17(c). More specifically, the Debtors suggest that the Salaried Workers Plan may be "involuntarily terminated by the PBGC." *Id.* at 10. To that end, the Modified Reorganization Plan contains a placeholder for a settlement agreement between the Pension Benefit Guaranty Corporation ("PBGC") and Delphi. Modified Reorganization Plan § 7.17(c). The Salaried Workers believe such a termination will likely result in a loss that could reach $300,000 per person during the 25-year life expectancy of most of the individual plan participants.

3. The Salaried Workers object to the Modified Reorganization Plan because it depends on a termination of the Salaried Workers Plan that is neither assured nor imminent. The Salaried Workers Plan's administrator, which currently is Delphi's Executive Committee

---

[1] The Motion is styled as *(A) Supplement Motion for Order (I) Approving Modifications to Debtors' First Amended Plan of Reorganization (As Modified) and Related Disclosures and Voting Procedures and (II) Setting Final Hearing Date to Consider Modifications to Confirmed First Amended Plan of Reorganization and (B) Request to Set Administrative Expense Claims Bar Date and Alternative Sale Hearing Date*.

#1787432 v4 \021081 \0001                    2

("Excom" or "Plan Administrator"), would play a critical role in any termination proceedings and any negotiations pertaining to the method of any such termination; but the Excom is hopelessly and inherently conflicted from performing such obligations. As a result, the Salaried Workers Plan, acting through its participants, pursuant to § 502(a)(3) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(3), is contemporaneously filing an action in the United States District Court for the Eastern District of Michigan to remove the Excom as the Salaried Workers Plan's administrator ("the Michigan District Court Action").[2]

    4.    It is a basic tenant of ERISA that a plan fiduciary's only duty is to the participants of the plan and that the fiduciary must be zealous in its representation of the interests of the participants. *See* ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1). The complaint that is being filed in the Michigan District Court Action will allege that the Excom has breached its fiduciary duty to the Salaried Workers Plan's participants under ERISA because, in its service of two masters, namely the participants and the Delphi Debtors, the Excom is fatally conflicted and must be replaced with a truly independent fiduciary who is concerned only with the rights and interests of the participants.

    5.    Because any termination of the Salaried Workers Plan is highly speculative at this juncture (both because of the Michigan District Court Action and because the termination process is otherwise complicated and lengthy and its conclusion is solely within the province of a federal district court to whom the PBGC may petition for termination, *see* 29 U.S.C. § 1342(c)), the Salaried Workers have simultaneously with the filing of this Motion, filed an Objection ("Objection") to the Debtors' proposed modifications to the First Amended Plan of

---

[2] Because this is an action in equity against directors of a corporation in their role as ERISA fiduciaries, the automatic stay that protects the Debtors from suit is inapplicable. *See In re Nashville Album Productions, Inc.*, 33 B.R. 123, 124 (M.D. Tenn. 1983) (§ 362 does not prohibit entities from proceeding against officers, directors and/or stockholders of a corporation which has filed a bankruptcy petition. Section 362 only stays actions against the debtor or actions seeking to obtain property of the estate."); *see also In re UAL, Inc.*, 337 B.R. 904, 910 (N.D. Ill.. 2006) ("[t]he termination proceeding neither invokes a substantive right provided by Title 11 nor, by its nature, could it arise only in the context of a bankruptcy case").

#1787432 v4 \021081 \0001        3

Reorganization of Delphi, dated (as modified) June 1, 2009 ("Proposed Plan Modifications") insofar as the Proposed Plan Modifications seek to have this Court approve any action by the Debtors that affects or may affect the rights of the Salaried Workers and all other similarly situated participants in the Salaried Workers Plan.

6.  The purpose of the instant Motion is to ensure – in an abundance of caution – that the Objection of the Salaried Workers, as the beneficiaries of the Salaried Workers Plan, will be heard by this Court in opposition to the Modification Motion.

## RELEVANT BACKGROUND

7.  On October 8 and 14, 2005, the Debtors filed a voluntary petition for relief under chapter 11 of Title 11 of the United States Code ("Bankruptcy Code").[3]

8.  On December 10, 2007, the Bankruptcy Court entered an Order approving the Debtors' *Amended Disclosure Statement With Respect To First Amended Joint Plan of Reorganization of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession* and the Debtors commenced solicitation of the *First Amended Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession.* Ultimately, the plan was confirmed by Order, dated January 25, 2008 ("Confirmed Plan").

9.  According to the Debtors, a key component of the necessary exit financing of the Confirmed Plan was an investment agreement that the Debtors entered into with certain investors ("Plan Investors"). On April 4, 2008, Delphi announced that the Plan Investors refused to participate in the closing on the exit financing and, therefore, the Confirmed Plan never went effective.

---

[3] These cases were filed prior to October 17, 2005, the effective date for the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). Thus, any references to the Bankruptcy Code herein shall be to the pre-BAPCPA Bankruptcy Code, as applicable.

10. In its efforts to emerge from bankruptcy, the Debtors have now sought modification of the Confirmed Plan pursuant to section 1127 of the Bankruptcy Code and to this end, on June 1, 2009, filed the Modification Motion.

11. A critical component of the Modification Motion is the termination of the Salaried Workers Plan, which, under the Confirmed Plan was to continue unaffected. To effect this termination, the Modification Motion states that the Debtors, GM, the U.S. Treasury, and the PBGC anticipate entering into a settlement agreement to settle the PBGC's various claims against the Debtors and members of the Debtors' "controlled group" as defined in the Internal Revenue Code and/or ERISA. Pursuant to that settlement agreement (which has not been filed) and as set forth in the Modified Reorganization Plan, the Debtors will grant the PBGC an allowed general unsecured nonpriority claim in the amount of $3 billion, which will receive the treatment given to holders of General Unsecured Claims and the PBGC will receive a cash payment in the amount of $30 million. *See* Exhibit 2 to the Modification Motion, the Supplement to the Disclosure Statement.

## RELIEF REQUESTED

12. As stated above, the Salaried Workers are simultaneously filing the Objection to the modifications proposed by the Debtors. The Salaried Workers believe that they have standing to file the Objection as a matter of right under Sections 1109 and 1128 of the Bankruptcy Code.

13. Specifically, Section 1109 of the Bankruptcy Code provides that:

> A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders committee, a creditor, an equity security holder, or an indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter.

#1787432 v4 \021081 \0001                    5

14. Similarly, Section 1128 provides that, "[a] party in interest may object to confirmation of a plan."

15. Although the Bankruptcy Code does not specifically define party-in-interest, "the general theory behind [Section 1109] is that anyone holding a direct financial stake in the outcome of the case should have an opportunity (either directly or through an appropriate representative) to participate in the adjudication of any issue that may ultimately shape the disposition of his or her interest." Collier on Bankruptcy, ¶ 1109.01[1], 15th Ed., <u>citing</u> *In re Ionosphere Clubs, Inc.*, 208, B.R. 812, 814 (S.D.N.Y. 1997). Moreover, Courts have applied a very broad standard in determining whether a person or entity is a party in interest. Generally, a party in interest typically includes any person with a direct financial stake in the outcome of the case. *See Futuresource LLC v. Reuters Ltd.*, 312 F.3d 281, 284 (7th Cir. 2002) (quoting *Treatise*); *Nintendo Co. v. Patten (In re Alpex Computer Corp.*), 71 F.3d 353, 356 (10th Cir. 1995) ("Although 11 U.S.C. § 1109(b) broadly defines a 'party interest, the phrase invites interpretation and 'is generally understood to include all person whose pecuniary interests are, directly affected by the bankruptcy proceedings.'") (quoting *Yadkin Valley Bank & Trust Co. v. McGee (In re Hutchinson*), 5 F.3d 750, 756 (4th Cir. 1993)); *In re Ionosphere Clubs, Inc.*, 21 C.B.C.2d 331, 21 B.R. 983, 986 (Bankr. S.D.N.Y. 1989) (section 1109(b) is not exclusive in its listing of parties in interest, but "if a party is not affected by the reorganization process it should not be considered a party in interest").

16. Under this standard, the Salaried Workers qualify as parties in interest in this case. It is undeniable that if the modifications to the Confirmed Plan, including the representation concerning the Salaried Workers Plan termination, are approved, the Salaried Workers will be drastically impacted financially. As stated above and in the Objection (which is incorporated in its entirety herein by reference), the proposed modifications purport to include

the termination of the pension benefits for approximately 15,000 former employees of Delphi. This, in turn, will likely result in a loss that could reach $300,000 per person during the 25 years life expectancy of most of the individual plan participants. Clearly, a potential termination and diminution of a pension plan is adequate cause for a party to be deemed to have a direct stake in the outcome of a case. Moreover, the Salaried Workers would be greatly prejudiced if they were not afforded an opportunity to be heard and object under the Bankruptcy Code to the modifications to the Plan.

17. However, in an abundance of caution, the Salaried Workers respectfully request that, to the extent that they are not deemed by this Court to be a party in interest, the Court enter an Order, under Rule 2018(a) of the Bankruptcy Rules, permitting the Salaried Workers to intervene in this case.

18. Rule 2018(a) of the Bankruptcy Code provides as follows:

> In a case under the Code, after hearing on such notice as the Court directs and for cause shown, the court may permit any interested entity to intervene generally or with respect to any specified matter.

19. This Rule is designed to allow intervention by entities that would not otherwise have a right to take part in a bankruptcy case. It generally provides that intervention is warranted if the entity demonstrates that no other entity exists to adequately protect its position and that intervention would not result in undue delay or prejudice. *See In re Ionosphere Clubs, Inc.*, 21 C.B.C.2d 331, 342, 101 B.R. 844, 849-53 (Bankr. S.D.N.Y. 1989) (citing a two prong test for intervention: whether intervenor's interests are already adequately represented and whether intervention would cause undue delay or prejudice to the original parties); *In re La Sierra Fin. Servs. Inc.*, 290 B.R. 718, 728 (B.A.P. 9th Cir. 2002) (citing *Treatise); In re Torrez*, 132 B.R. 924, 25 C.B.C.2d 1325 (Bankr. E.D. Pa. 1991).

20. The gravamen of the Salaried Workers' Objection is that no other entity exists to adequately protect its position concerning the impermissibility of resolving the Salaried Workers Plan termination questions in conjunction with the Modification Motion. As detailed in the Objection, involuntary termination of the Salaried Workers Plan is a complicated process, whose outcome is neither assured nor imminent. Selecting the method of termination, moreover, is a fiduciary function in which the current fiduciary, Excom, cannot participate because of a patent conflict of interest. This disqualifying conflict is the subject of the Michigan District Court Action, further complicating matters involving the Salaried Workers Plan termination. While the precise nature of the conflict of interest issues raised in that lawsuit are not before this Court, given the dubious nature of the position that the Excom is faced with, it cannot be said that the Salaried Workers have an independent voice -- or any meaningful voice -- in this bankruptcy case. In sum, the Salaried Workers' position is not being adequately protected for purposes of Rule 2018(a) of the Bankruptcy Rules.

21. In addition, the Salaried Workers intervention will not result in any delay or prejudice that would not otherwise be warranted. The Salaried Workers do not seek any extension of time and are prepared to go forward with their Objection on the return date for the Modification Motion. However, even if the intervention by the Salaried Workers did cause some delay, such delay, under the circumstances, would be appropriate.

22. The Debtors are requesting approval of the Modified Reorganization Plan in an expedited fashion, including the Salaried Workers Plan's termination. Any such modification would be unlawful as it would not fairly comply with the many procedural and substantive safeguards set forth in ERISA in connection with terminating pension plans. These unlawful modifications, moreover, will have a severe impact on 15,000 former employees of Delphi, which must not be taken lightly. Any delay that is caused by the Salaried Workers intervention

surely must be viewed, therefore, as being wholly justified and the Objection of the Salaried Workers should be heard.

23.    Moreover, the Salaried Workers believe that if there is a delay in this process, it will be slight. Specifically, if a neutral third-party were to replace the Debtors as the Plan Administrator, that third-party can simply pick up where the negotiations have left off. The Salaried Workers suspect that, because the settlement agreement has yet to be filed with the Court, the negotiations are neither complete, nor too far along to warrant considerable delay. Rather, the time appears ripe for a third-party to step in without regard for delay, particularly given the severe consequences that will impact the Salaried Workers without such relief.

24.    For these reasons, the Salaried Workers respectfully submit that they be granted authorization to intervene in this matter in accordance with Rule 2018(a) of the Bankruptcy Rules.

## NOTICE

25.    In accordance with the Debtors' Case Management Order, dated October 14, 2005, a copy of this Motion has been served (i) by regular mail upon all parties to the Master Service List, and (b) by overnight mail and electronic mail or facsimile delivery upon the Debtors, the Official Committee of Unsecured Creditors, the Office of the United States Trustee, counsel to the Post-Petition Lenders, counsel for the Tranche C Collective, counsel for the United States Department of Treasury, United States Department of Justice, counsel for General Motors Corporation, and counsel for Parnassus Holdings II, LLC.  A certificate of service follows this Motion evidencing the same.  The Salaried Workers believe that the type of notice described herein is reasonable and appropriate in light of the requested relief.

## MEMORANDUM OF LAW

26. The Salaried Workers respectfully submit that this Motion does not raise any novel issues of law and, in light of the authority cited herein, the Salaried Workers respectfully request that the requirement under Rule 9013-1(b) of the Local Rules for the submission of a memorandum of law be waived.

27. No previous application has been made to this or any other court for the relief requested herein.

WHEREFORE, the Salaried Workers respectfully request that they be authorized – to the extent necessary – to intervene in this case and that this Court grant such other and further relief as may be appropriate.

Dated: New York, New York
       July 15, 2009

*Attorneys for Dennis Black, Charles Cunningham, and the Delphi Salaried Retiree Association*

**MORRISON COHEN LLP**

By: */s/ Joseph T. Moldovan*
    Joseph T. Moldovan
    Michael R. Dal Lago

    909 Third Avenue
    New York, New York   10022
    (212) 735-8600

**MILLER & CHEVALIER CHARTERED**

    Anthony F. Shelley (admission pending)
    Timothy P. O'Toole (admission pending)

    655 Fifteenth Street, N.W.
    Suite 900
    Washington, D.C. 20005
    (202) 626-5800