# DELPHI

DATE: 6/24/2009

TOTAL PAGES (INCLUDES THIS PAGE): 13

TO: Honorable Judge Drain
Case #05-44481 (RDD)
U.S. Bankruptcy Ct. Fax 914-390-4073

FROM: **aB**

J. Allen Babb
Sr. Mfg. Engr.
Delphi Corp., Saginaw Div.

20941 Sandy Road
Tanner, Al. 35671
pH.: 256-552-5714
Fax: 256-552-5781
email: allen.babb@delphi.com
mail address: PO box 311, Athens, Al. 35612

ADDITIONAL COMMENTS:

Further Documents for Letter 6/18/2009 Entry
054481-18640 Court Docket 17181?

Can You Replace Previous Submission with This Packet?

Thanks,
J. Allen Babb

Please call me at –5714 for any questions.

17-Jun-2009

Honorable Robert D. Drain
Docket Number 05-44481 (RDD)
United States Bankruptcy Judge - Southern District of NY
One Bowling Green
New York, NY 10004-1408

In Regards: Delphi June 1, 2009 Master Disposition Agreement, Article 9.5.11, Docket Number 05-44481 (RDD).

I respectfully object to the position Delphi Corp. is taking towards the treatment of binding legal agreements for retention bonuses and/or severance agreements which states in Article 9.5.11 that the severance payments will be terminated upon the closing (emergence) date, for those employees that terminated prior to the June 1 date.

I especially object to the position Delphi advances in their "proposed" modifications to "alter" their legal agreement for myself to receive 12 months "retention" bonus (they used a standard severance form), to a newly modified 6 months pay, in return for the assigned duties I fulfilled for them prior to leaving the company this upcoming July. This offered and agreed upon document was witnessed in Nov. 2008 on our Athens, Al. site. Letters by Mr. Butler and Sheehan, officers of Delphi, in March of 2009 confirmed that our agreement would be grandfathered in, however, now it's to be tossed out.

What I can't reverse is the work that I contributed in the past year that prevented an entire new pressure hose program for GM Europe from collapsing, with a potential millions of dollars in penalties. The Saginaw Divisional Engineer in charge suddenly quit in Feb. 2008 and I took over this program, spent approximately 2 weeks a month in a small Mexican town at some risk to my well-being (110 days traveling last year) and managed to work with /train the 3-4 Hispanic Engineers that will do the job I was expected to do by myself in our Athens, Alabama plant (which is now being closed). I fulfilled more than would normally be expected of a person in my role. Now, Delphi has returned the favor by stripping my family of retiree healthcare, probably the pension if it goes to the PBGC, and the very last straw, our agreed upon severance being at least cut in half.

Definitely not a bond or stock speculator in Delphi, I'm a 52 year old Delphi salaried engineer, given a difficult job assignment traveling overseas frequently, who comes back home to find a closing plant, in a stagnant job market, with no way of recouping the four to five hundred thousand dollars in pensions and healthcare Delphi wishes to walk away from. If I was still the GM engineer I spent 20 years as before being forced into the "experiment gone bad" called Delphi (my transfer to GM was blocked as I was a mission critical employee), then I would not be as severely impacted, in fact, I'd have a pension, healthcare,, and a job most likely. What a deal.....

So, I would like to request that you please consider the Severance payment entitlement by my Nov. 2008 contract where I waived rights through a Release of Claims to be a contract entered in during bankruptcy and not just a Delphi provided benefit that can be altered on a whim. I expect them to honor their valid, binding, legal contract. This is not much money in the grand picture and the cost will disappear within 12 months, so it's not a long-term drag on profits.

Sincerely,

J. Allen Babb
Sr. Manuf. Engr.
6706 Wall Triana Hwy.
Madison, Al. 35757

## Delphi Corporation
### Separation Allowance Plan Release of Claims ALLEN BABB

I have been separated from my employment with Delphi Corporation ("Delphi") effective JUNE 30 (LDW) 2009 under terms which make me eligible for benefits under the Separation Allowance Plan (the "Plan"). These benefits include Severance Pay in the total amount of $87,420, less applicable deductions, to be paid in 24 semi monthly installments commencing on July 1, 2009, and Other Transition Assistance, comprised of outplacement assistance and $2000 which I may, at my discretion, use to help pay for the continuation of health care coverage through Delphi; provided, however, that, if I am eligible to retire with corporate contributions for health care in retirement at the time of my separation, I am not eligible for this $2000. I acknowledge that the consideration provided for in this Release of Claims is in excess of anything I would otherwise be entitled to receive absent my signing this Release of Claims.

In consideration for receiving these benefits, I, for myself, family, heirs, and representatives, release, remise, and forever discharge Delphi, General Motors Corporation, and their respective officers, shareholders, subsidiaries, affiliates, joint ventures, employee benefit plans, agents and employees, successors, and assigns from any and all manner of actions, causes of actions, suits, proceedings, damages, costs, and claims whatsoever in law or in equity (collectively "Claims"), which I have or may have based upon or in connection with my employment with or separation from Delphi. This release specifically includes all Claims under the Employee Retirement Income Security Act of 1974, as amended, which regulates employee benefit plans; Title VII of the Civil Rights Act of 1964, as amended, which prohibits discrimination in employment based on race, color, national origin, religion, or sex; the Americans with Disabilities Act, which prohibits discrimination in employment based on disability; the Age Discrimination and Employment Act, which prohibits discrimination in employment based on age; the Equal Pay Act, which prohibits wage discrimination; state fair employment practices or civil rights laws; and any other federal, state or local law, order, or regulation or the common law relating to employment or employment discrimination, including those which preclude any form of discrimination based on age. This includes, without limitation, Claims for breach of contract (either express or implied), slander, libel, defamation, and wrongful discharge. This release does not apply to Claims that are not subject to waiver under applicable law. This covers Claims I know about and Claims I do not know about; but does not cover Claims that arise after I separate from Delphi.

I understand that, by accepting benefits under the Plan, I will no longer be entitled to receive any disability benefits (short-term, long-term, or total and permanent) under the Delphi Life and Disability Benefits Program for Salaried Employees of the Delphi Retirement Program for Salaried Employees relating to any disability that arose or arises at any time, and if I am currently receiving or am eligible to receive disability benefits as of the effective date of this Release of Claims, I understand that such benefits or eligibility for such benefits will cease upon the effective date of this Release of Claims.

I have been given a minimum of forty-five (45) calendar days to review this Release of Claims and a written notice of the ages and job titles of all individuals in the same job classification or organizational unit who were (i) selected and (ii) who were not eligible or not selected for separation. I understand that I may use as much of this forty-five (45) day period as I wish. I have been advised to consult an attorney before signing this Release of Claims, but understand that whether or not I do so is exclusively my decision. I understand that I may revoke this Release of Claims within seven (7) days of my signing it. To be effective, the revocation must be in writing and must be received by Nov. 28, 2008 before the close of business on the seventh (7th) day after I sign this Release of Claims.

I acknowledge that Delphi has made no prior representations, promises, or agreements relating to my employment and separation contrary to this Release of Claims. I understand that I am not eligible for benefits Delphi provides under any other separation program and that I will not be eligible for any enhancements Delphi may subsequently make to the benefits provided under the Plan. This Release of Claims constitutes the entire and only understanding between Delphi and me regarding my separation. If any provision or portion of this Release of Claims is held unenforceable or invalid, all remaining provisions of this Release of Claims remain in full force and effect.

BY SIGNING BELOW, I ACKNOWLEDGE THAT I HAVE READ THIS RELEASE OF ALL KNOWN AND UNKNOWN CLAIMS. I AFFIRM THAT I UNDERSTAND AND VOLUNTARILY AGREE TO ITS TERMS.

Signed: _____

Delphi Identification Number (DIN): 1016071

Dated: Nov. 21, 2008

Accepted: _____
Delphi Corporation

Revised November 2008

Babb, Allen

\* EMAIL CORRESPONDENCE ON 12 MOS. SEVERANCE

**From:** Cargile, Curt
**Sent:** Tuesday, April 15, 2008 7:16 PM
**To:** Babb, Allen
**Subject:** FW: Special Voluntary Separation Program
**Importance:** High

Allen
I am sure you have received answers already to most of your questions but let me at least follow up on the issue of Saginaw vs. Athens severance plans. If you reside in Athens even though you may be on a Saginaw functional headcount, you are included in the Athens severance plan. I asked this again of Mike Gannon and he agreed with this completely. We have others who are included in staff groups in Saginaw but again everyone who resides in Athens and does not decide to accept ongoing employment with NEWCO after Athens has closed, will receive severance as stated in the Athens plan. I.e. 12 months. Hope this clearly states our position. Curt

---

**From:** Fuller, Harry
**Sent:** Tuesday, April 15, 2008 2:23 PM
**To:** Babb, Allen
**Cc:** Cargile, Curt; Gannon, Mike ; Sloan, Steve
**Subject:** RE: Special Voluntary Separation Program
**Importance:** High

Allen:

I will give my response, and if Curt or Mike have anything to add, they can amend my response.

First, let me state that Allen has been and still is included in our Alabama number for severance consideration. I recently submitted a new listing which includes all those who physically "sit" in Alabama and perform their work in "Alabama" regardless of their reporting relationship to Saginaw; that included Allen. The receipt of the email at the bottom was simply a result of Allen's name being on the headcount list in Saginaw, and it automatically generated an email for him. However, we will continue to include Allen in our listing of employees who will receive separation pay eligibility within the Alabama guidelines and at the Alabama Site.

Allen, in regard to the issue that pertains to severance being used to "grow" into retirement eligibility, no one knew at that time that the Master Sale Agreement (MSA) would include in it a provision for "continuation of service" with NEWCO. That is, your time worked with NEWCO will be used in the calculation of your total credited service for retirement eligiblity purposes. With that being the case, using severance to do the same thing is no longer a necessary option. Yes, your "service" with Delphi to determine retirement eligibility **will** include your NEWCO time throughout the period while your services are still required. With that in place, your 29 years as of June 1 will continue to grow towards a 30-year retirement eligiblity just as it would have had you remained with Delphi.

What almost all of us have thought over the years is that corporate paid healthcare in retirement for those who are retirement eligible is a part of our pension program. Actually, it is a totally separate piece. We have always linked it to the pension program, when, indeed, it is not. It is a healthcare benefit and not a pension benefit. With that stated, you are also correct in stating that the NEWCO provided healthcare for those who become retirement eligible under NEWCO, has still not been determined as to what the healthcare benefits package will look like. The last I recall hearing was that the final rendering of this might not be until at least fall of this year. However, in the meantime, those who become retirement eligible during 2008 and decide to retire, will have Delphi paid healthcare through the calendar year 2008. Beginning 2009, both the NEWCO salaried active healthcare package and those becoming retirement eligible under NEWCO will have a NEWCO package available to them. Since our annual enrollment occurs in the November time period each year, I can only assume we will receive new NEWCO information in the Aug/Sept/Oct time frame to prepare us for the usual November enrollment period.

-----Original Message-----
**From:** Babb, Allen
**Sent:** Tuesday, April 15, 2008 12:31 PM
**To:** Cargile, Curt; Gannon, Mike
**Cc:** Sloan, Steve ; Fuller, Harry
**Subject:** FW: Special Voluntary Separation Program

6/23/2009

**Importance:** High

Curt-
Mike-

I'm sure you've heard a lot of this, but, here we go again (sorry). Last August, in front of the Alabama workforce, it was stated by both of you that if an employee were to reach 29 years seniority by the separation date from Delphi, and, in the case our salary and benefits were to be disadvantaged when going to work for NEWCO, then we would be able to apply our severance pay to allow us to grow into a 30 year retirement. My 29th year starts on June 1 – thanks for the delay of Day One, I think? And since there is no information available on retirement healthcare under NEWCO, I can only assume that it's going to be worse. Unfortunately, we still don't have a final answer on the 29 year + package and whether this is going to happen or not. I think we've all been patient enough and surely this is being worked on still?

Assuming the above doesn't happen, THEN:

 As I now work for the Central ME group from Saginaw (Brian Stainforth) and show on his budget, but also still show on the Alabama headcount, I was told that the Saginaw site voluntary separation agreement doesn't apply to me. <u>If that's true, is it just a clerical error that I received the email below</u>?

Curt and I both talked in January that, in his opinion, that the Alabama severance plan still applies to my situation even though I work (from Alabama) for Saginaw Divisional now instead of Plt.23 . It was further discussed that, if, at any point between now and the final closure of the Alabama site, that we can mutually agree on my separation and the Alabama severance package still applies. This is the course I prefer to take. I know there is a need for my continued help with Hoses and I believe I still add value to the company. The receipt of the email below makes me concerned that this option discussed in January may not be available to me if needed next year.

<u>I would prefer to have an answer in writing ( email is fine) which path I will be considered part of – the Saginaw Separation path or the "preferred" Alabama severance path</u>???

Thanks,

Allen Babb
Sr. Mfg. Engr.
Global Hose programs
Ph. 256-552-5714

---

**From:** Steering Vol Sep Program HR, Saginaw
**Sent:** Thursday, April 10, 2008 3:55 PM
**To:** Remenar, Robert ; Abate, Joseph; Abuaita, Ray; Ackett, Lori ; Aden, David ; Alden, Troy ; Allard, Dan ; Alonzo, Alan; Alsobrooks, Daniel E; Alva, Meenakshi; Alverson, Lois ; Amberg, Barbara L; Amberkar, Aparna ; Ambrose, Greg ; Anabtawi, Raed; Ancel, Daniel N; Anders, William ; Anderson, Corey ; Anderson, Jill; Anderson, Conrad ; Andres, John ; Andrus, Jim; Andrus, Mark B; Anspaugh, Mike ; Anton, Jill; Aparo, Frank ; Appold, Michael ; Arlt, George ; Armitage, Al J; Arndt, Brian; Arnes, Joe ; Arnold, Paul E; Ashland, Christopher J; Attenberger, Cathy ; Augustine, Michael ; Autio, Arthur; Avery, Steven L; Ayala, Kathy ; Ayala, John; Azar, Hassan B; Babb, Allen ; Babinski, John ; Bacon, Chris ; Bader, Jeff M; Bader, Patrick A; Badour, Lisa; Bailey, Mark ; Baird, Steve ; Baird, Nancy ; Baker, Julian O; Baker, Ray ; Bal, Randy ; Baldwin, Andrea L; Bales, Greg ; Banning, Todd A; Banning, Todd; Bannister, Steve ; Baranowski, Steve; Bardwell, Fred; Barrett, Thomas A; Barrie, Glenn W; Barshaw, Todd; Bartelt, William ; Bartz, Gilbert ; Baskins, Richard M; Baskins, Karrie S; Bassi, Pete J; Bauer, Matt; Bauman, Bill ; Baxter, Uwe ; Beach, Tim ; Beam, Robert ; Beadle, Alan J; Bebow, Marty; Beckman, Dominik K; Bedore, Brent ; Bell, Curtis ; Bellhorn, Kevin ; Bellinger, Jon ; Bender, Jeff ; Bennett, Timothy; Bennett, Michael; Bentoski, Casey; Berg, Kris ; Berg, David L; Berg, Fred ; Berg, George ; Berger, Jeff; Bernthal, Tim ; Berube, Matthew ; Beyer, Gary ; Beyer, Michael A; Beyer, Tom ; Beyerlein, Jeffrey; Beyerlein, Thomas L; Beyerlein, Bob ; Bicknell, Jon ; Bierlein, Laura ; Birchmeier, Carl; Birchmeier, Paul J; Birkmeier, Gary ; Birsching, Joel E; Bishop, Kay ; Bishop, Roy ; Biskupski, Scott J; Bitterman, Chris ; Bitterman, Kevin ; Bittner, Debbie ; Bitzer, Dawn; Bladecki, April S; Bladecki, Mike ; Blakely, Marcus ; Blaylock, Joe ; Bodtker, Joen ; Boettcher, Rebecca; Bogardus, Sherry; Bolourchi, Farhad ; Bolton, Mina ; Bond, April M; Bondy, Julie A; Bonner,

Marshall ; Boomer, Daniel M; Born, Scott ; Bostek, Kimberly; Boswell, Karen ; Bourassa, Kathy ; Bourassa, Larry ; Bourdon, William C; Bowerman, Jason A; Brackens, Tracie; Braddock, Bregitte; Bradley, Ann ; Bradley, Steve ; Braman, Brian ; Breault, Jeremy R; Brender, Rhonda ; Brenner, Eric ; Briggs, Linda ; Bright, Ralph M; Bright, Timothy R; Bright, Deb; Bright, Ben ; Bright, Phil G; Briguglio, Dominick; Bringer, Bill ; Brinkman, Charles A; Bronz, Jennifer; Brooks, Kim; Brooks, Vincent J; Brown, Kip ; Brown, Loran; Brown, Kathleen ; Brown, Mike E; Brown, Patrick J; Brumels, Mark; Brundrett, Todd; Burk, Steve ; Burk, Matt R; Burke, Jody J; Burkett, Ken ; Burkhard, Terry ; Burkhard, Harley ; Burns, Kevin M; Burns, Wayne A; Burns, James S; Burr, Larry ; Buscarino, Tim ; Busch, Alan; Buse, Mark ; Bushong, Becki ; Buska, Mike ; Buter, Doug ; Butko, Louis; Buza, Les ; Buzzell, Steve ; Byers, David ; Byrne, Jim ; Callaghan, Maria O; Callaghan, Robert ; Cammin, Clane; Campbell, Mark C; Canales, Luis; Card, Lynn ; Cardenas, Manuel F; Cargile, Curt; Carman, Randy ; Cashatt, Edith G; Cashatt, Dan ; Castanier, Carl R; Castner, Chris; Champagne, Anthony ; Chandy, Ashok ; Chapa, Lucy ; Charlebois, Christopher ; Chasseur, Tim; chernenko, William ; Chesson, Roy ; Childs, Timothy M; Choinard, Larry ; Christensen, Randy T; Christians, Kelly M; Chronowski, Thomas; Chumley, Terri J; Ciszecky, Mike; Clark, James R; Clark, Michael W; Clark, Jennifer A; Clayton, Michael ; Cliffe, Jim ; Coatoam, Tom ; Cole, David A; Cole, Karen L; Collier, Terry ; Collier, Bruce ; Collier, Kevin; Collier-Hallman, Steve ; Colosky, Mark ; Comstock, Luke ; Conlee, Patrick N; Cook, Craig ; Cook, Virginia; Cook, David A; Cook, Dave B; Cook, Robert ; Cornell, Duane ; Cowan, Bryan ; Cressey, Terry C; Crishon, Dan ; Cristoforo, Ben S; Cunningham, Ed ; Curell, Michael ; Curry, David J; Czarnecki, Nicholas B; Czerny, Barbara J.; Czerny, John M; Czolgosz, Jim ; Czyzio, Chris ; Daenzer, Troy ; Daenzer, Keith ; Dana, Stephen ; Danks, John ; Dashner, Scott ; Davis, Troy; Davison, Jim ; Davison, Tammy S; Dawe, Steve ; Day, Chad E; De Zorzi, Vincent; DeCrick, Ilona; Deeter, Douglas F; Degroat, Mark; Deibel, David Sr; DeLap, Ronald; Delay, Janelle A; Delisle, Ricky; Delong, Ruth A; Demaray, William; Demerly, Jon ; Deneut, Brett; Derocher, Robert C; Derop, Don ; Derry, Kevin ; Deshmukh, Avanti; Desimpelare, Rob ; Detwiler, Eric ; Diaz, James; Dickey, Mark T; Dickinson, Al ; Dietzel, Edward ; Diffin, Dan J; Dils, Paula ; Dodak, Tony ; Doerr, Paul ; Doherty, Delbert ; Dombrowski, Colleen ; Dominguez, Ivan ; Donnenwerth, Mitchell ; Dorr, John R; Doty, Jami ; Douglas, Kevin P; Douponce, Mike ; Downing, Patrick ; Dralle, Daniel; Drinan, Tom ; D'Silva, Siddharth; Dubay, Robert ; Dubay, Kurt ; Dudley, Marc A; Duensing, Lydia ; DuRussel, William ; Dutsky, Jason; Duvendack, Paul T; Dycus, Carrie; Dykema, Mike; Dziekan, Lee M; Eaton, Jerry ; Eden, Terri; Ehlman, Bryan E; Eickholt, Bill F; Eickholt, Michael ; Elliott, Conroy; Elliott, Mike

**Subject:** Special Voluntary Separation Program
**Importance:** High

Attached for your information, review and consideration is the Special Voluntary Separation Program plan language (Employee Policy and Benefit Information, Notice of Persons Eligible and Release of Claims).

During the meetings that were held on Friday April 4, 2008 and Tuesday April 8, 2008, you were asked to apply by April 21, 2008 if you were interested in participating in this program. During the meetings many employees asked for additional time to make their decision, and we have decided to provide a total of 45 days for you to consider this program. Since we will now be utilizing the standard 45 day decision period, we have also decided to utilize the signed Release of Claims form as your intention to participate in the program rather than the e-mail box.

Employees may apply for the program prior to the end of the 45 day period. However, final eligibility decisions will not be made until the consideration period expires on May 27, 2008, and employees will not be disadvantaged by utilizing the full consideration period.

Employees must apply by returning a signed Release of Claims form to Salaried HR no later than 9 AM on May 27, 2008. This program is contingent upon the closing (the "Closing") of the sale of Delphi's global Steering and Halfshaft business to Steering Solutions Corporation and will go into effect on the first day following the closing of the sale to Steering Solutions Corporation ("Day One"). The actual last date of work for employees impacted by this program will be the last day of the first month following Closing. For example, if Day One is June 1, 2008, your last official day of work will be June 30, 2008 and your separation will be effective July 1, 2008.

Following are the Salaried HR representatives by Staff:

| | | |
|---|---|---|
| Karrie Baskins | Manufacturing, PC&L | 7-4675 |
| Cheryl Evangelista | Engineering, GSM Steering Systems BU | 7-6162 |
| Kathy Keith | HR | 7-5104 |
| Sarah Maday | Customer Satisfaction, Program Management, Finance, Sales, IT, Marketing and Planning Halfshafts and Aftermarket BU | 7-5169 |

6/23/2009

Rick Jankowiak
Director, Global Salaried HR

6/23/2009

# DELPHI

December 5, 2008

To All Delphi U.S. Salaried Employees:

Delphi is operating in unprecedented and difficult times. While we have done an outstanding job thus far supporting our customers, managing our supply base, and growing our business for the future, we continue to face great challenges.

We have continued to examine every aspect of our business as part of our restructuring efforts. We realigned our product portfolio, renegotiated labor agreements, eliminated many jobs, and changed compensation, benefits, and policies to restructure globally and to emerge from Chapter 11 in the United States. However, given recent events, we must immediately adjust to rapidly declining volumes and conserve cash globally. We have been implementing reductions in capital spending and inventory in line with falling volumes. In addition to these efforts, we are reviewing salaried compensation, benefits and policies globally, making changes as necessary to ensure competitiveness and affordability.

As part of this review, the following changes are effective January 1, 2009 for U.S. salaried employees:

**Short Term Layoff Policy:** In order to address business conditions including short term volume swings, OEM program delays or other temporary business slow downs, Delphi has established a salaried temporary layoff policy. Delphi may identify salaried employees who will be placed on short term layoff in one week increments for a maximum of 13 weeks. While on layoff, employees will remain on active status but receive 50% of base pay for each week(s) on layoff. Employees will continue to accrue credited service for eligibility to retire under the Delphi Retirement Program for Salaried Employees, but employee and company contributions to the Delphi Salaried Retirement Savings Program (SRSP) will be based upon the reduced weekly earnings. Most other benefits will not be impacted (e.g. health care, life insurance, etc.).

**The Flexible Compensation Payment:** The $1,200 per employee Flex Comp Payment for employees hired prior to 2001 will be suspended for 2009 and not paid. Suspension of this payment will result in approximately $10M of cash avoidance in the first quarter of 2009. The additional four days provided as part of this payment for employees hired prior to 2001 are also suspended. All employees are eligible to purchase additional vacation days during the annual Vacation Purchase process which will be rolled out in early January.

**The Tuition Assistance Program:** Tuition Assistance will be suspended for all classes commencing in 2009.

**Adoption Assistance Program:** Adoption Assistance will be suspended for all of 2009.

**Relocation Policy:** Changes have been made to the loss on sale provisions of the U.S. relocation policy. Specific change details can be found on my.delphi.com.

**Delphi Separation Allowance Plan for U.S. Salaried Employees:** Based upon expected long-term volume reductions and projected revenues in the near term and the need to continue to size the company for those reduced volumes, additional salaried employment and contract service reductions will occur. As we benchmark our salaried severance program against companies of similar size and revenue, we are changing our U.S. salaried Separation Allowance Plan policy.



February 5, 2009

To Delphi Global Salaried Employees:

The challenges created by a weakened global economy continue to have a dramatic impact on the automotive industry and on Delphi, with customer volumes at levels not likely to recover in the short term. We have and will continue to support our customers and manage our supply chain through this turbulent time. All of us are working on cost-reduction initiatives that have helped make a difference. However, it is essential that we take significant and immediate actions to further address the current challenges.

As a result, based on a country by country examination, merit plans and variable pay or "bonus" plans at each location will be suspended, reduced in fund size or re-timed for the latter part of 2009, based upon market conditions as well as local country and labor requirements, as applicable. One such action is the suspension of the 2009 incentive compensation plan for Delphi's worldwide executives.

We continue to review our compensation, policy, and benefit programs against the market in each country where we do business to ensure they are both competitive as well as affordable. As a result of this review, program and/or policy changes may be required.

The global economy, global companies' responses to these challenges, and our business plan to exit Chapter 11 bankruptcy in the U.S. create a very dynamic situation with respect to salaried employee plans and policies. Please understand that recommended changes are only implemented after careful consideration of market conditions, affordability, and the impact on employees with the intent of maintaining a viable global business now and in the future.

*You will be notified locally of specific changes that may affect you in the very near future. Questions regarding this letter may be directed to your Human Resources Department for more information.

Sincerely,

John D. Sheehan
Vice President and CFO
Delphi

Kevin M. Butler
Vice President Human Resources
Delphi

World Headquarters and Customer Center  5725 Delphi Drive  Troy, MI  48098-2815  USA



February 5, 2009

To Delphi U.S. Salaried Employees:

As referenced in the letter distributed today to Delphi's global salaried workforce, Delphi, like others in the automotive sector, continues to face serious challenges created by a weakened global economy and its effect on the automotive industry.  U.S. light vehicle sales for 2009 are down roughly 22% from an already slower 2008, and down nearly 40% from volumes experienced at the beginning of this decade. At current forecasts, 2009 U.S. light vehicle sales will reach their lowest level since 1982.

Delphi must respond to these market and economic realities by taking a series of difficult but necessary actions, applicable to U.S. salaried employees.

- The U.S. 2009 merit plan and annual incentive payments (AIP) for eligible executives and U.S. non-executive salaried employees will be suspended in 2009.  Suspending these programs in the U.S. and other locations will assist in generating cash flow in 2009.

- Additionally, effective April 1, 2009, Delphi will cease to provide health care and life insurance in retirement to salaried employees and retirees.

    In these extraordinary economic times, it is necessary for Delphi to discontinue these benefits in order to work towards further modifications to its plan of reorganization that will enable the company to emerge from chapter 11 reorganization as soon as practicable.  Delphi acknowledges these actions will impose a real hardship on former beneficiaries of these programs.  However, the company's recognition of this hardship, which allowed Delphi to continue these benefits in a more robust economic environment, regretfully does not support continuing these programs in the current economic environment.

    On February 4, 2009, Delphi filed a motion with the U.S. Bankruptcy court regarding the aforementioned benefits in retirement.  The benefits are generally referred to as Other Post Employment Benefits (OPEB).  You will receive a copy of the motion in the mail at your home address.  A copy of the motion can also be found on www.delphidocket.com. Any responses to the motion will need to be filed with the Bankruptcy Court no later than February 17, 2009.

    The change does not impact active employees hired prior to January 1, 1993 until they retire.  Active employees who were hired after January 1, 1993 but prior to January 1, 2001 will no longer receive the 1% Corporate contribution made into their 401(k) account in lieu of health and life coverage in retirement.  Employees hired on or after January 1, 2001 are not affected by this change because they did not have any health or life coverage in retirement based upon their date of hire. Effective April 1, 2009, current and future retirees will have access to Delphi coverages but will be required to pay the full cost of coverages continued.  Impacted retirees will be notified of these changes in a separate communication and will be provided the information about continuing their coverages at their own expense. Questions about this change and/or the ability to purchase alternative coverage may be directed to the National Benefits Center at 1-866-335-7444.

World Headquarters and Customer Center   5725 Delphi Drive   Troy, MI 48098-2815   USA

Page 2

- ✱ In December 2008, Delphi advised U.S. salaried employees that the Separation Allowance Plan severance schedule would be changed to cap at 6 months based upon length of service. The March 1, 2009 implementation date accommodated previously approved commitments to employees (e.g. specific wind down situations). Additionally, the date was based upon our projected customer volumes and workforce reduction plans at that time. However, rapidly deteriorating business conditions make it necessary to apply the new schedule to all classified salaried employees who were provided release of claims agreements after January 5, 2009. ✱ MINE WAS DATED NOV. 21, 2008!

- Effective January 1, 2009, all vacations will vest on a month-to-month basis. Employees who retire or separate from service will be eligible only for prorated vacation days prior to their last day of work based upon their date of separation in the calendar year. This change will be reflected in all Separation Allowance Plan documents presented to employees beginning today.

- Service Awards will be suspended until further notice. At the point in time Delphi is able to reinstate this program, missed anniversary dates during the suspended period will be recognized.

- Cash payments ($50) to be made in May 2009 to employees who completed Health Risk Assessment Questionnaires will be suspended until further notice. This suspension includes employees who have already completed forms.

Delphi is among many companies throughout the world examining all policies, compensation and benefits in response to a weakened global economy. This week, Delphi employees in all regions of the world are being advised of similar changes affecting their site, country or region.

In this dynamic environment, it is possible that additional cost cutting measures will be necessary in response to changing business conditions; in that event, we will do our best to notify you as early as we can if and when further measures are needed. Except as otherwise directed, should you have questions about this letter or the information provided, please contact your local HR department.

We regret that these changes are necessary, but please understand the changes are only implemented after careful consideration of many factors, including the impact on Delphi people. We believe these changes are necessary to exit bankruptcy and maintain a viable global business.

Sincerely,

John D. Sheehan
Vice President and CFO
Delphi

Kevin M. Butler
Vice President Human Resources
Delphi

To All Delphi U.S. Salaried Employees
Page 2

*SIGNED MINE NOV. 21, 2008*

✱ Effective March 1, 2009, for employees who have not previously signed a release of claims agreement, the Severance Pay available to classified salaried employees separated as the result of an Eligible Termination under the Separation Allowance Plan will be realigned and capped at 6 months as listed below:

| Years of Service | Severance |
|---|---|
| 0 but less than 5 years of service: | 1 month |
| 5 but less than 10 years of service: | 2 months |
| 10 but less than 15 years of service: | 3 months |
| 15 but less than 20 years of service: | 4 months |
| 20 but less than 25 years of service: | 5 months |
| 25 or more years of service: | 6 months |

Also, as previously communicated to affected individuals, commencing with separations initiated in November, Severance Pay will be paid in semi-monthly installments (consistent with payroll processing) rather than in a lump sum.

Information regarding all of these changes can be found on my.delphi.com.

We will continue to monitor competitive trends and practices. There may be additional changes in the near future, particularly if competitive practices continue to shift and the global economy continues to decline. If additional changes are required, we will notify you as soon as practical.

We realize these measures personally impact you, but hope you understand that the decisions are necessary and were made only after thoughtful and thorough consideration.

The Delphi leadership team remains grateful for your dedication and hard work in support of our customers and to ensure a stronger, viable Delphi. Questions regarding this letter may be directed to your local HR Department.

Sincerely,

John D. Sheehan
Vice President and CFO
Delphi

Kevin M. Butler
Vice President Human Resources
Delphi

World Headquarters and Customer Center   5725 Delphi Drive   Troy, MI 48098-2815   USA