| | |
|---|---|
| Hearing Date and Time: | July 23, 2009 at 10:00 a.m. |
| Response Deadline: | July 16, 2009 at 4:00 p.m. |

Barbara S. Mehlsack
GORLICK, KRAVITZ & LISTHAUS, P.C.
17 State Street, 4TH fl.
New York, NY 10004
(212) 269-2500 (tel)
(212) 269-2540 (fax)
bmehlsack@gkllaw.com

Attorney for Int'l Union of Operating Engineers
Locals 18S, 101S, and 832S

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————  x

In re                                                     Chapter 11
DELPHI CORPORATION, *et al.*,                             Case No. 05-44481 (RDD)
                                                          (Jointly Administered)

          Debtors.

———————————————————————  x

## RESPONSE OF IUOE LOCALS 18S, 101S, 832S TO DEBTORS' THIRTY-FOURTH OMNIBUS CLAIMS OBJECTION

International Union of Operating Engineers Locals 18S, 101S and 832S ("IUOE Locals"), by their undersigned attorneys, hereby respond to the Debtor's Thirty-Fourth Omnibus Claims Objection as set forth below. The title of the claims objection to which the Response is directed is "National and Local Union Claims to be Provisionally Disallowed and Expunged."

### 1.    Nature and Amount of Claims

At the inception of the Chapter 11 case, the IUOE Locals were parties to collective bargaining agreements that provided for employees' participation in the Delphi Hourly Rated Pension Plan ("Delphi HRP"). The Delphi HRP provides: 1) at Article I that the Debtor must

1

"make such payments or contributions as will be sufficient to maintain the fund on a sound actuarial basis as well as to pay expenses incident to the operation and management of the Plan," and 2) at Article IX, that, except as to changes necessitated by certain requirements of the Internal Revenue Code, the Debtor may not amend, modify or terminate the Plan "in respect of employees who are represented under a collective bargaining agreement in contravention of the provisions of any such agreement as long as any such agreement is in effect."

The Debtors filed motions under §§1113 and 1114 seeking modifications to, *inter alia*, the IUOE Locals agreements. On or about July 31, 2006, the IUOE Locals filed contingent and unliquidated claims for, *inter alia*, future retirement benefits payable under the terms of the Delphi HRP and the collective bargaining agreements as well as for other future compensation payable under the agreements. As a result of the motions filed under §§1113 and 1114, the Debtor and the IUOE Locals, together with General Motors ("GM"), entered into modifications of their respective collective bargaining agreements, including Memoranda of Understanding and related agreements ("MOUs") entered into on July 31 to August 1, 2007 and an Implementation Agreement, entered into on September 25, 2008. The agreements were approved by orders of the Court.

The MOUs provide that the applicable terms of the IUOE Local collective bargaining agreements ("CBAs") regarding the Delphi HRP are modified in certain respects and that the CBAs as modified continue in effect to 2011. The MOUs allow for the freezing of the HRP and also provide that Delphi HRP participants who retired before and after the Freeze Date, as well as participants in the special attrition program, will continue to receive benefits, including applicable supplemental benefits, in the Delphi HRP as in effect immediately preceding the Effective Date of the MOUs (the later of the ratification date or the entry of the Court's approval

2

order). The MOUs provide that any waiver of claims in the agreements do not apply to vested pension benefits or to claims for benefits provided for or explicitly not waived under the provisions of the Agreements. (See MOU Section E, entitled "SETTLEMENT OF ALL EMPLOYEE, RETIREE AND UNION ASSERTED AND UNASSERTED CLAIMS," and Section F entitled "EFFECTIVE DATES AND BANKRUPTCY PROCEEDINGS").

The IUOE Locals, Delphi and GM subsequently entered into the Implementation Agreement, which provides that, contingent upon certain events, Delphi's assets and liabilities with respect to Delphi HRP participants would be transferred to the GM Hourly Rated Pension Plan in accordance with the terms of the Implementation Agreement and in the order specified therein. To date only some of those transfers have been effected and a total of 5 IUOE Local represented Delphi HRP participants are now participating in the GM HRP. The remaining IUOE Local represented active and retired employees of Delphi remain participants in the Delphi HRP.

Delphi has filed a motion with this Court seeking approval of a Modified Plan of Reorganization. The Plan and the Motion make no provision for disposition of the assets and liabilities of the Delphi HRP except to recite that upon consummation of the Modified Plan, the HRP "shall no longer be the responsibility of the Debtors and will be addressed by GM." The Debtors have filed a Declaration in support of their motion by Rick Westenberg, which states that GM, the U.S. Treasury and the PBGC are engaging in discussions to satisfy this condition. On July 15, 2009, the PBGC represented that the Debtors and the PBGC are "working toward a consensual resolution" concerning the Delphi HRP but that "no agreement has yet been reached on the terms set forth in the Motion or otherwise." (PBGC Statement July 15, 2009). The IUOE Locals have objected to the Debtors' Motion on the dual grounds that: 1) the Debtors have failed

3

to provide adequate information as to the future of the Delphi HRP; and 2) the Debtors' unilateral attempt to relieve Delphi of the responsibility for the Delphi HRP via the Modified Plan violates the terms of the MOUs and is in violation of §1113 of the Bankruptcy Code.

The claims of the IUOE Locals are contingent and unliquidated claims for future pension benefits in the event that the ultimate disposition of the Delphi HRP results in the reduction of participants' future benefits, including supplemental benefits. In addition, while the proposed Master Disposition Agreement ("MDA") provides for employment of certain active IUOE represented employees at the Rochester plant after the plant is purchased by GM, because of the uncertainty arising out of the parallel GM and Delphi bankruptcies, IUOE Local 832S has contingent claims arising out of any possible future breach of any other terms of the IUOE Local 832S CBA.

Pursuant to Bankruptcy Rule 3018, the IUOE Locals have estimated the amounts involved in their claims. The IUOE Locals have estimated that the aggregate liability for future pension benefits for participants represented by the three IUOE Locals is $8,849,200. The IUOE Locals submit that the allowable amount of their claims would be the present value of the future payment amounts by which pension benefits may be reduced as a result of any future disposition of the assets and liabilities of the Delphi HRP under Delphi's proposed Modified Plan. As Delphi has not yet disclosed what the disposition will be, it is not possible to calculate such amounts. In addition, IUOE Local 832S has estimated that breach of its collective bargaining agreement, the term of which runs to 2011, would result in claims for future compensation under the contract of $1,672,095. IUOE Local 832S believes that the amount that would be the allowable amount of the claim is the present value of the amount resulting from the elimination or reduction of future compensation coming due under the contract.

4

2.    **The Debtors' Objections**

The Debtors have represented that their objection to the IUOE Locals "National and Local Union Claims to be Provisionally Disallowed and Expunged" is based upon their contention that the IUOE Locals and their members have agreed to waive and release any claims for future pension benefits and employee wages as of the effective date of the proposed Modified Plan. (Thirty Fourth Omnibus Objection at ¶¶42-45). In addition, the Debtors have objected to other pension claims filed by individuals who appear to be participants in the Delphi Salaried and/or Hourly Pension Plans on the grounds that: 1) the assets of the Trusts and Plans are not assets of the Debtors' estates and therefore the Plans alone are obligated for the claims; and 2) only the PBGC in the event of a Plan termination has the right to make claims against employers for benefits under terminated plans. (Thirty-fourth Omnibus Claims Objection ¶¶31, 32). To the extent the Debtors would claim those objections also apply to the IUOE Locals' pension claims the IUOE Locals make this response to those objections as well.

3.    **None of the Debtors' objections are valid as there is no waiver and any other arguments are premature.**

A.    **The IUOE Locals have not waived the right to assert claims for pensions or with respect to any other rights provided for under the MOUs.**

In the first instance, as conceded by the Debtors, the waivers are not yet effective. The waivers would not be effective until and unless the Modified Plan is approved. As noted above, the IUOE Locals have objected to the Modified Plan to the extent the Plan's treatment of the rights and obligations of the Debtors vis-à-vis the IUOE Locals are not consistent with the Debtors' agreements with the Locals and are in violation of §1113 of the Bankruptcy Code.

Secondly, the MOUs do not provide for a waiver of the right to assert claims for the

failure to pay future benefits under the terms of the Delphi HRP in effect as of the effective date
of the MOUs.    As noted above, the MOUs expressly provide that benefits, including
supplemental benefits, shall be paid to retired and to-be-retired participants in the Delphi HRP as
in effect as of the effective date of those agreements. (MOUs, paragraph D entitled
"MODIFICATIONS TO EXISTING LOCAL AGREEMENTS").    While the MOUs provide for
waivers, the MOUs also provide: 1) under Paragraph E entitled "SETTLEMENT OF ALL
EMPLOYEE, RETIREE, AND UNION ASSERTED AND UNASSERTED CLAIMS," that
"There shall be no waiver of rights, if any, to vested pension benefits..."; and 2) at Paragraph F
entitled "EFFECTIVE DATES AND BANKRUPTCY PROCEEDINGS" at subparagraph 3 that
"On the effective date of such plan of reorganization, the IUOE (etc)... waive and release any
and all claims of any nature... *(Provided, however, that claims for benefits provided for or
explicitly not waived under the provisions of this Agreement... are not waived)*. (Emphasis
provided).

As a result, the Debtors' claim of waiver does not constitute a valid objection to the
IUOE Locals' pension claims.    Nor does it constitute a valid objection to other claims under the
collective bargaining agreement between IUOE Local 832S and Delphi as modified and
reaffirmed by the MOU, should implementation of the MDA result in a breach of the Debtors'
obligations under the IUOE Local 832S CBA. [1]

---

[1] IUOE Locals have filed an objection to the Debtor's motion for approval of the Modified Plan to the extent it may
seek to achieve a unilateral modification of the Debtor's IUOE CBAs outside the §1113 process.    While the MDA
provides that the IUOE Local 832-represented employees are among the employees to be transferred to the GM
buyer and the Local's contract is to be assumed and assigned to the purchaser, to the extent that the MDA gives
Delphi the option to proceed with the Rochester transaction without effecting a full assumption of the CBA and its
assignment to new GM, that would constitute a breach of the CBA as well as a violation of §1113.

**B.    The Debtor's other objections to pension claims are not valid objections because they are not based in law or are premature.**

The Debtors have asserted with respect to the individual participant Pension Claims that they are not valid claims on two grounds. The first ground, citing *In re Springfield Furniture, Inc.*, 145 B.R. 520 (Bankr. E.D.Va. 1992) is a contention by the Debtor that *Springfield Furniture* stands for the proposition that because Pension Plans are separate legal entities distinct from the Debtors' estates, participants may assert claims only against plans, not debtors. That is simply not a correct statement of the case or of the law. *Springfield Furniture* stands only for the proposition that assets of a pension plan are not assets of the estate and are not available to the estate. It does not follow from there that unions may not assert contractual claims against plan sponsors for failure to meet their collective bargaining obligations.

The second ground asserted by the Debtor is that the PBGC alone has the right to recover against an employer for underfunding of a terminated plan. The Debtor cites to Section 1362 of ERISA, 29 U.S.C. §1362, and a decision of the Sixth Circuit which held that a union's action under §301 for breach of a collective bargaining agreement to recover non-guaranteed benefits from an employer who had sought to effect a distress termination under 29 U. S. C. §1362 was preempted by ERISA. *United Steel Workers v. United Engineering*, 52 F. 3d 1386 (6th Cir. 1995). However the Sixth Circuit has made it clear that the *United Steel Workers* decision does not mean that all §301 claims involving pension rights created by collective bargaining agreements are superseded by ERISA. [2]

---

[2] The IUOE Locals refer the Court to a subsequent unreported decision by the Sixth Circuit *Local 1654 IBEW v. L.G. Philips Display Components Company,* 137 Fed. App. 776 (6th Cir. 2005) a copy of which is annexed hereto, in which the court noted that §301 claims involving pension right created by collective bargaining agreements are not *per se* preempted by ERISA and that *United Steel Workers* was decided on the narrow ground that in a terminated plan context (under the provisions in effect prior to 2006), ERISA preempted non-PBGC claims for non-guaranteed benefits.

The only case in the Second Circuit to which the Debtor cites in support of its preemption argument, *IAM v. Rome Cable Corporation*, 810 F. Supp 402 (N.D.N.Y. 1993), is also not dispositive of the issue of the validity of the IUOE Locals pension claims in this situation. That case too involved a distress termination, in which, under the provisions of ERISA in effect at the time, a trustee had been appointed to recoup non-guaranteed benefits from the plan sponsor. *Id* at 405.

Delphi has not terminated the Delphi HRP and the HRP has not yet been taken over by the PBGC. Indeed the Debtors have represented that it is GM that will "address" the plan. It is premature for this Court to evaluate the validity of the IUOE Local's claims premised upon ERISA's plan termination provisions, when the plan is not yet terminated and the Debtors and the PBGC acknowledge that none of the conditions that may apply to such a termination have been resolved. As a result, the objection based upon §1362 is not ripe for decision by this Court. The only fact that is certain is that the Debtors have made a statement indicating that they do not intend to comply with their agreements with the IUOE Locals regarding their HRP obligations. That is certainly a sufficient basis for the IUOE Locals' claims for future pension benefits that would be lost by reason of that noncompliance.

**4.    Conclusion**

For the foregoing reasons, at this time the Debtor's objections to the IUOE Locals' contingent claims for pension and other collectively bargained obligations must be rejected in their entirety.

8

Dated:          New York, NY
                July 16, 2009


Respectfully submitted,

Barbara S. Mehlsack
GORLICK KRAVITZ & LISTHAUS, P.C.
17 State Street, 4th Floor
New York, NY 10004
(212) 269 2500 (tel)
(212) 269 2540 (fax)
bmehlsack@gkllaw.com



LEXSEE

**LOCAL NO. 1654, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, AFL-CIO, Plaintiff-Appellant v. L. G. PHILIPS DISPLAY COMPONENTS COMPANY, Defendant-Appellee**

**No. 04-3304**

**UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT**

*137 Fed. Appx. 776; 2005 U.S. App. LEXIS 10858*

**June 7, 2005, Filed**

**NOTICE:**    [**1]  NOT RECOMMENDED FOR FULL-TEXT PUBLICATION. SIXTH CIRCUIT RULE 28(g) LIMITS CITATION TO SPECIFIC SITUATIONS. PLEASE SEE RULE 28(g) BEFORE CITING IN A PROCEEDING IN A COURT IN THE SIXTH CIRCUIT. IF CITED, A COPY MUST BE SERVED ON OTHER PARTIES AND THE COURT. THIS NOTICE IS TO BE PROMINENTLY DISPLAYED IF THIS DECISION IS REPRODUCED.

**SUBSEQUENT HISTORY:** Summary judgment granted by *IBEW, AFL-CIO, Local No. 1654 v. L.G. Philips Display Components Co., 2006 U.S. Dist. LEXIS 5633 (N.D. Ohio, Jan. 30, 2006)*

**PRIOR HISTORY:**    On Appeal from the United States District Court for the Northern District of Ohio. 02-07021. James G. Carr, Chief District Judge.
*IBEW, Local 1654 v. L.G. Philips Display Components Co., 2004 U.S. Dist. LEXIS 2027 (N.D. Ohio, Jan. 30, 2004)*

**COUNSEL:** For LOCAL NO. 1654, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, AFL-CIO, Plaintiff-Appellant: Leonard S. Sigall, Reynoldsburg, OH

For L.G. PHILIPS DISPLAY COMPONENTS COMPANY, Defendant-Appellee: Robert J. Brown, Thompson Hine, Dayton, OH; Scott T. Stirling, Thompson Hine, Dayton, OH

**JUDGES:** Before: MARTIN and ROGERS, Circuit Judges; FORESTER, Chief District Judge. ·

> *    The Honorable Karl S. Forester, United States Chief District Judge for the Eastern District of Kentucky, sitting by designation.

**OPINION**

[*777] Local 1654 of the IBEW appeals the summary judgment for the defendant em-

137 Fed. Appx. 776, *; 2005 U.S. App. LEXIS 10858, **

ployer in this action asserting a breach of a collective bargaining agreement under *§ 301 of the Labor Management Relations Act, 29 U.S.C. § 185,* **[**2]** and a state law claim of fraud. Counsel for the employer waived oral argument. Counsel for the union requested oral argument, but did not reiterate the request after being informed by the court that it was considering submitting the appeal for consideration on the briefs. This panel unanimously agrees that oral argument is not needed in this case. *Fed. R. App. P. 34(a).*

Defendant operated a plant in Ohio manufacturing television picture tubes that employed approximately 1400 workers. It announced its intention to close the plant and move its operation to Mexico. The union and the employer thereafter negotiated the final agreement to govern the period until the plant closed. The union pressed for allowing the employees to receive their retirement benefits in a lump sum at the time of the closing, an option that had previously been available only to those employees old enough to be eligible for immediate or early retirement. The employer agreed to this, and the agreement was ratified by the union membership. Subsequently, the employer provided the union with a table of factors which would be used to compute the lump sum retirement benefits. The **[**3]** union then filed this action alleging a breach of the agreement contending that defendant knew it had relied on a table of factors previously provided to it which resulted in much larger lump sum benefits. During discovery, the union learned that the employer had the correct table of factors during the negotiation but had not furnished it to the union. The complaint was then amended to add a claim of fraud.

Defendant moved for summary judgment, contending that the claims were preempted by the Employee Retirement Income Security Act, *29 U.S.C. § 1001 et seq.* The district court granted the motion, finding the claims preempted and therefore not addressing them

on the merits. The parties reiterate their arguments on appeal.

This court reviews de novo summary judgment. *Aloisi v. Lockheed Martin Energy Sys., Inc., 321 F.3d 551, 555 (6th Cir. 2003).* Here summary judgment was proper on the claim of fraud. State law claims for the recovery of employee benefits are preempted by ERISA, *Cromwell v. Equicor-Equitable HCA Corp., 944 F.2d 1272, 1276 (6th Cir. 1991),* as are federal common law claims. *Muse v. IBM, 103 F.3d 490, 495 (6th Cir. 1996).* **[**4]** The fraud claim in this case, first asserted as a state law claim in the amended complaint, but thereafter argued as a federal common law claim, was therefore properly found preempted by the district court.

Claims involving rights created by collective bargaining agreement are governed by the Labor Management Relation Act and are not superseded by ERISA. *Aloisi, 321 F.3d at 556.* This court has held on a number of occasions that such an action can be maintained under ERISA or *§ 301* of the labor act. *Id.; Golden v. Kelsey-Hayes Co., 73 F.3d 648, 659 n.11* **[*778]**     *(6th Cir. 1996); Biros v. Spalding-Evenflo Co., 934 F.2d 740, 742 (6th Cir. 1991)* (and cases cited). In finding the claim for a breach of the agreement preempted by ERISA, the district court relied on *USW v. United Eng'g, 52 F.3d 1386 (6th Cir. 1995).* However, *United Steelworkers* was decided on the narrow ground that ERISA preempted claims for non-guaranteed pension benefits against plan sponsors, because ERISA had been amended to provide that plan sponsors were not liable for non-guaranteed benefits. *Id. at 1393-94.* **[**5]** The district court also did not consider that the union would not have standing to pursue a claim for benefits under ERISA, as it is not a participant or beneficiary of an ERISA plan. *Teagardener v. Republic-Franklin Inc. Pension Plan, 909 F.2d 947, 951 (6th Cir. 1990).*

Thus the judgment is reversed and the case returned to the district court.