**Hearing Date and Time:  July 23, 2009 at 10 a.m.**

| | |
|---|---|
| WHITE & CASE LLP | Wachovia Financial Center |
| 1155 Avenue of the Americas | 200 South Biscayne Blvd., Suite 4900 |
| New York, New York 10036-2787 | Miami, Florida 33131 |
| (212) 819-8200 | (305) 371-2700 |
| Glenn M. Kurtz | Thomas E Lauria (Admitted *Pro Hac Vice*) |
| J. Christopher Shore | |
| Douglas P. Baumstein | |

ATTORNEYS FOR A-D ACQUISITION HOLDINGS, LLC
and APPALOOSA MANAGEMENT L.P.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re<br><br>DELPHI CORPORATION, et al.,<br><br>Debtors. | Chapter 11<br>Case No. 05-44481 (RDD)<br>(Jointly Administered) |

**LIMITED OBJECTION AND RESERVATION OF RIGHTS OF APPALOOSA
MANAGEMENT L.P. AND A-D ACQUISITION HOLDINGS, LLC WITH RESPECT
TO THE DEBTORS' PLAN MODIFICATION APPROVAL MOTION AND
RELATED DOCUMENTS**

Defendants Appaloosa Management L.P. ("AMLP") and A-D Acquisition Holdings, LLC ("ADAH" and, together with AMLP, "Appaloosa") respectfully submit this limited objection and reservation of rights (the "Limited Objection") with respect to the Motion for Order (I) Approving Modifications to Debtors' First Amended Plan of Reorganization (as Modified) and Related Disclosures and Voting Procedures and (II) Setting Final Hearing Date to Consider Modifications to Confirmed First Amended Plan of Reorganization (the "Plan Modification Approval Motion") (Docket No. 14310), as supplemented on June 1, 2009 (Docket No. 16646), the First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-in-Possession (as Modified) (the "Modified Plan") (Docket No. 17030) and the Supplement to First Amended Disclosure Statement with Respect to First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-in-Possession (as Modified) (Docket No. 17031), both dated June 16, 2009, and the exhibits to the Modified Plan, filed on July 2, 2009 (Docket No. 17557).

## PRELIMINARY STATEMENT

1.      Appaloosa supports the Debtors' decision to proceed to consummation of the Modified Plan as soon as practicable. Appaloosa raises this Limited Objection for the primary purpose of ensuring that its rights, obligations and positions in pending litigation with Delphi are not, to the extent possible, prejudiced by consummation of the Modified Plan or the Alternate 363 Sale. Specifically, Appaloosa requests that (i) the Modified Plan and supporting documentation (whether in a plan or sale context) be clarified with respect to the rights and obligations of the parties in the Adversary Proceeding (defined below), and (ii) the relevant documents make clear that ADAH's contingent administrative claims against Delphi are not treated in a disparate manner than other administrative claims.

2. As of July 15, Appaloosa, on behalf of certain Plan Investors, had reached a tentative understanding with Delphi as to the salient issues and was prepared to file a limited response memorializing that understanding. However, as of today, according to news reports, Delphi appears to have reached a tentative framework for an agreed-upon plan of reorganization or sale predicated upon an accepted credit bid from certain Delphi debtor-in-possession lenders (the "Tranche C Lenders"). It is unclear whether the contemplated Tranche C Lenders deal would alter the treatment of the Plan Investors' claims for administrative expenses as compared to the Modified Plan or otherwise affect the management of the Adversary Proceeding. As a result, Appaloosa is filing this objection pending receipt of additional information concerning the Tranche C Lender deal. In addition, Appaloosa reserves the right to file supplemental pleadings to this objection to address any terms of that deal prior to the July 23, 2009 hearing.

## STATEMENT OF FACTS

3. On October 8, 2005, Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates (together, the "Debtors") commenced cases under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York, which are being jointly administered.

4. ADAH, certain other plan investors (together with ADAH, the "Plan Investors"), and Delphi subsequently entered into the Equity Purchase and Commitment Agreement, dated as of August 3, 2007, as amended as of December 10, 2007 (the "EPCA").

5. The Court approved Delphi's entry into the EPCA in an order dated December 10, 2007. (Docket No. 11382)

6. In connection with Delphi's pending suit against Appaloosa and others (the "Adversary Proceeding"), ADAH has asserted claims against Delphi in its answer and counterclaims (the "Counterclaims") (see Adv. Proceeding No. 08-01232, Docket No. 105,

hereby incorporated by reference).   Pursuant to the EPCA and DIP orders in these cases (see, e.g., Docket No. 13489), the transaction fees requested by ADAH as part of the Counterclaims are allowed, contingent, superpriority administrative expenses of Delphi which are senior to the claims of the DIP lenders.  The remainder of the Counterclaims are contingent administrative claims.

## ARGUMENT

### I.

### AS CURRENTLY CONSTRUCTED, THE MODIFIED PLAN FAILS TO PRESERVE THE STATUS QUO IN THE ADVERSARY PROCEEDING

7.    As Appaloosa's primary concern, the Modified Plan fails to address adequately how the Adversary Proceeding will be managed and prosecuted post-confirmation and fails to ensure that consummation of the Modified Plan will not substantially prejudice the Plan Investors' rights and obligations in that Adversary Proceeding.

8.    First, the Master Disposition Agreement, dated as of June 1, 2009 (the "MDA") (Modified Plan Ex. 7.7), provides that following the closing contemplated in that agreement, GM or GM Buyer (as defined in the MDA) will control the prosecution or settlement of the Appaloosa Claim, which is defined as Delphi's claims arising from or relating to the EPCA, including the Adversary Proceeding.  (MDA at 3, 92)  Thus, the MDA only provides that Delphi's affirmative claims will be transferred to GM or GM Buyer, but does not address who will continue to control Delphi's defense of the Plan Investors' counterclaims.

9.    The MDA presumably contemplates a situation in which, despite the intertwined and overlapping nature of Delphi's claims and defenses, GM or GM Buyer may be tasked with prosecuting Delphi's claims, while Delphi continues to defend against the Counterclaims.  Such arrangement may lead to confusion, with Delphi and GM/GM Buyer taking inconsistent

positions or making conflicting arguments with respect to the exact same subject matter. It also raises questions as to which party's admissions will be binding in the Adversary Proceeding. Appaloosa therefore requests that the MDA be clarified to specify how Delphi's defense to the Counterclaims will be managed post-closing.

10.     Appaloosa further submits that only one party should be permitted to prosecute Delphi's affirmative claims and defenses to the Counterclaims. At the least, Appaloosa submits that only one set of counsel should be permitted to prosecute Delphi's claims and defenses in order to minimize confusion and burden on the Court.

11.     <u>Second</u>, although the Modified Plan provides that up to approximately $145 million of the net proceeds of any recovery Delphi may obtain on the Appaloosa Claim must be transferred to the DIP Facility Second Priority Term Claims (Modified Plan § 7.9(a)), the Modified Plan and related documents do not include any documentation of any obligation on the part of assignee GM or GM Buyer to transfer such funds. That absence creates unnecessary confusion as to who is the real party in interest in the Adversary Proceeding.

12.     Appaloosa therefore requests that the Modified Plan and related documents be revised to set forth the basis of such contractual obligation.

13.     <u>Third</u>, the Modified Plan does not explicitly preserve any rights the Plan Investors may have to offset the Counterclaims against any recovery that Delphi may obtain against the Plan Investors. As currently structured, the Modified Plan seems to contemplate that the Plan Investors' claims would remain against DPH Holdings Co. whereas General Motors would hold the right of recovery against the Plan Investors. That transfer would alter the <u>status quo</u> by removing the Plan Investors' right of set-off. The Modified Plan should be clear that if there were to be cross-recoveries, such amounts may be set off. Indeed, by separating the affirmative

claims against the Plan Investors from the Counterclaims, the potential remains that the party owning the affirmative claims against the Plan Investors will be incentivized to prosecute such claim without regard to potential negative consequences to the estate arising from the potential incurrence of additional administrative claims.

14. In connection with addressing Appaloosa's concerns, Delphi made the following representations to Appaloosa:

- From an administrative standpoint, after consummation, the Plan Investor litigation will continue to be run by one set of counsel (presumably Friedman Kaplan and Sussman Godfrey) representing both GM and Delphi.

- There is not yet definitive documentation requiring GM to pass the first $145 million in recovery to the Tranche C Lenders.

- Delphi will address with GM whether it will agree to reduce its recoveries in the investor litigation dollar for dollar with any recoveries of the Plan Investors on their counterclaims to address the setoff concerns.

Assuming satisfactory resolution of the above issues, including clear documentation of GM's obligations to the Tranche C Lenders and an agreement from GM or acknowledgment by the Court that the Plan Investors' rights of set off are not impaired by the Modified Plans' separation of the liabilities and claims in the Adversary Proceeding between two different entities, Appaloosa's objections would be resolved.

## II.

### DELPHI'S PROPOSED TREATMENT OF THE PLAN INVESTORS' CONTINGENT COUNTERCLAIMS IS IMPROPER

15. Under the Modified Plan, as represented by the Debtors to Appaloosa, the Plan Investors' Litigation Claims would be retained liabilities of Reorganized DPH Holdings Co. The Debtors have informed Appaloosa that, despite the carveout in the DIP orders for the Plan Investors' Counterclaims for certain transaction expense, none of those fees have been reserved from distributions to the Tranche A and B DIP lenders. Further, Delphi has made no reservation

for any of the Plan Investors' Counterclaims, including the transaction expenses.  Such failures have resulted or could result in an impairment of all or a portion of the Counterclaims, resulting in disparate treatment of administrative claims.  Bankruptcy Code § 1123(a)(4) provides that"[n]otwithstanding any otherwise applicable nonbankruptcy law, a plan shall—(4) provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such claim or interest."  Section 1129(a)(9) of the Bankruptcy Code requires that a plan may only be confirmed if, except if a holder of an administrative claim agrees to such treatment, "the holder of such claim will receive on account of such claim cash equal to the allowed amount of such claim."  Notwithstanding such issues, Appaloosa is prepared to withdraw these objections to the Modified Plan based on confirmation of the following representations made by the Debtors:

- Subsequent to consummation of either the Modified Plan or a Section 363 sale, the Plan Investors' counterclaims will be retained liabilities of Reorganized DPH Holdings Co. (in the Modified Plan context) or with Parnassus or its affiliated assignee ("Parnassus Newco") (in the Section 363 context).  Reorganized DPH Holdings' assets (under a plan) include a $50 million extension of credit from GM, approximately $26 million in receivables from GM, between 15 and 21 shut down plants, that are estimated by Debtors to have $30 million in value and approximately $8 million in a cash escrow account to cover administrative claims for hourly employees and about $1 million for certain IP assets and the right to Delphi's avoidance actions.

- In the event of confirmation of Modified Plan, the Tranche C Lenders will not have claims against any assets held by Reorganized DPH Holdings, including Delphi's avoidance actions.  In the event Delphi proceeds with a Section 363 sale, Delphi would sell the assets contemplated to be held by DPH Holdings, including the avoidance actions, to Parnassus Newco, with the exception that most of the 15-21 properties would remain assets of old Delphi (with two properties being subject to the Section 363 sale to Parnassus).  In such case, the administrative claims not otherwise assumed by Parnassus and GM under the master disposition agreement, including the Plan Investors' Counterclaims, would be assumed by Parnassus Newco.

16. In the event Appaloosa's understanding is incorrect, or the proposed transaction with the Tranche C Lenders alters Appaloosa's treatment, Appaloosa reserves the right to raise additional objections to the proposed disparate treatment of its claims, including by the provision in the Modified Plan of releases to parties who received payment of administrative claims, and the failure to observe the carve out in the DIP orders for Appaloosa's transaction fees or otherwise to adequately address the Counterclaims.

## **RESERVATION OF RIGHTS**

17. Appaloosa expressly reserves its rights to supplement and amend this Limited Objection, seek discovery with respect to same, and introduce evidence at any hearing relating to the Modified Plan and related documents, without in any way limiting any other rights that it may have. Appaloosa also expressly reserves the right to object to confirmation of any plan of reorganization on any grounds, as may be appropriate. Appaloosa explicitly reserves each and every claim, defense and position it has in the Adversary Proceeding.

## **MEMORANDUM OF LAW**

18. Because the legal points and authorities upon which this Limited Objection relies are incorporated herein, Appaloosa respectfully represents that the requirements of Local Rule 9013-1(a) of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Southern District of New York have been satisfied.

## **CONCLUSION**

19. For the foregoing reasons, Appaloosa respectfully requests that, absent the modifications proposed herein, the Court not approve the Modified Plan and grant such other and further relief as the Court deems just and proper.


Dated: July 16, 2009
      New York, New York

By:    /s/ J. Christopher Shore
WHITE & CASE LLP
J. Christopher Shore (JCS-6031)
Douglas P. Baumstein (DB-1948)
1155 Avenue of the Americas
New York, New York 10036-2787
(212) 819-8200

Thomas E Lauria (Admitted *Pro Hac Vice)*
Wachovia Financial Center
200 South Biscayne Boulevard
Miami, Florida 33131
(305) 371-2700

Attorneys for AMLP and ADAH