James B. Sumpter, Pro Se
21169 Westbay circle
Noblesville, IN 46062
Telephone: (317) 877-0736
Facsimile: (317) 877-1070
Jsump @ieee.org

Salaried Retiree of Debtors

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

— — — — — — — — — — — — ..x  Chapter 11 Case No. 05-44481 (RDD)

In re:

DELPHI CORPORATION, et. al.,  : (Jointly Administered)

    Debtors.

— — — — — — — — — — — — ·x

**EXPEDITED MOTION TO ENFORCE COBRA BENEFIT FOR DELPHI SALARIED RETIREES AND MOTION FOR COBRA SETTLEMENT (COBRA BENEFIT MOTION)**

This motion is in response to Debtors amended reorganization motion (0544481-18085 ) for an order pursuant to 11 U.S.C. §§ 102(1), 105(a), and 9006(c) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 9006-1 of the Local Rules of the United States Bankruptcy Court for the Southern District of New York (the "Local Rules"), which request the enforcement of COBRA Benefits to Delphi Salaried Retirees and a COBRA Settlement in lieu of lifetime benefits for Delphi Salaried Retires.

For the reasons set forth herein, the relief requested is warranted and necessary. In support of this COBRA Benefit Motion, the Movant respectfully represent as follows:

1.    On February 4, 2009 Debtors filed a motion seeking to eliminate all subsidies for

1

retiree benefit plans and programs for non-union salaried retirees effective April 1, 2009. [Docket No. 14705.] Debtors argued they did not need to comply with Section 1114 because they retained the right to amend or terminate the retiree benefits outside of bankruptcy, and therefore Section 1114 did not apply. *Id.* at ¶¶ 46-48. They further argued that, because Section 1114 did not apply to amendable benefits, no official committee of retirees should be appointed pursuant to Section 1114(d). *Id.* ¶ 49.

2.   In response, three groups of retirees and approximately 1,500 individually affected retirees opposed the Termination Motion. In addition, the retirees who filed the Original Motion to Appoint Section 1114 Committee renewed their motion, and several other retirees also sought the appointment of an official Section 1114(d) Committee. [Docket Nos. 14882 (incorporating Docket No. 874), 14886, 15283, 16297.]

4.   The Court heard argument on February 24, 2009. At the hearing, the Court concluded that the protections of Section 1114 do not apply to employee benefit plans and programs that may be unilaterally modified or terminated outside of bankruptcy, and therefore that no Section 1114(d) Committee need be appointed. The Court thus granted the Debtors' motion and authorized the Debtors' to terminate – as soon as April 1, 2009 – all subsidies for amendable retiree benefit plans and programs.

5.   The Court issued its written final order on March 11, 2009 granting the Debtors' motion and authorized the Debtors' to terminate – as soon as April 1, 2009 – all subsidies for amendable retiree benefit plans and programs. . [Docket No. 16448.]

6. On June 1, 2009 Debtors filed a SUPPLEMENT TO MOTION FOR ORDER APPROVING MODIFICATIONS TO DEBTORS' FIRST AMENDED PLAN OF REORGANIZATION [Docket No. 16647.]

7. Title 29 § 1163 and Title 26 § 4980B defines a proceeding in a case under title 11, United States Code, commencing on or after July 1, 1986, with respect to the employer from whose employment the covered employee retired at any time, as a COBRA qualifying event. (Pages 6 –17, Attachment B)

In both titles, the above paragraph for both code sections states that In the case of an event described in the above paragraph, a loss of coverage includes a substantial elimination of coverage with respect to a qualified beneficiary within one year before or after the date of commencement of the proceeding.

8. Title 29 § 1162 has a special rule for qualifying events described in item (7) above. The period of continuing coverage must extend for at least the period beginning on the date of the qualifying event and ending not earlier than the date of the death of the covered employee:

9. In its motion on March 13, 2009, the Debtor interpreted this section of Title 26 and Title 29 to mean that a reduction in coverage is a qualifying event only if it occurs in the time interval beginning 12 months before bankruptcy filing and ending 12 months after bankruptcy filing. Therefore, by practice contends that retirees are not entitled to "COBRA until death", and by implication then, there is no COBRA obligation for any successor employer to the company. [Docket No. 16457.]

However, the Debtor avoids the plain reading of the statute and ignores the intent of Congress; and the court, in its wisdom, has made no ruling confirming the Debtor's position.

10.   Title 29 states that Congress' intent in passing the ERISA statute was to protect retiree's pensions and health care benefits. Title 29, § 1163-(6) and Title 26, § 4980B-(f)(3)(f) were written to provide a special protection for retirees of companies in bankruptcy. Congress appears to have placed the "twelve months prior to bankruptcy" as a safe harbor for companies, while also providing a reasonable barrier against manipulation by companies whose management anticipated an eminent bankruptcy.

Since Congress recognized the potential risk corporate manipulation posed for retirees, it would be inconsistent to believe that congress would provide this protection for only the first twelve months of Bankruptcy. Otherwise, most, if not all, companies would do just as the Debtor has done, and wait to a time longer than twelve months after the commencement of Bankruptcy to reduce benefits. Such delaying tactics would avoid COBRA obligations, while making that section of Title 29 (also Title 26) meaningless in regards to Congress' intent to provide protection for retirees.

### Relief Requested

11.   The Movant is seeking entry of an order, which does the following:

1.   Delay action on the Debtor's motion [Docket No. 16646], until a coordinated rulings has been issue by the Department of Treasury and the Department of labor (pursuant to the Movant's request of July 8, 2009, to both departments **(Attachment B).**

**OR**

2.   Orders the debtor to provide salaried retirees COBRA coverage retroactively from April 1, 2009, until the death of each eligible retiree, in conformance with relevant sections of Title 26 and Title 29.

3.   Orders the debtor to immediately reimburse salaried retiree's premiums paid in

excess of the 102% COBRA rate mandated by statute.

4. Instruct that all potential successor employers, transferees and asset purchasers be advised by debtor prior to any transaction that they may have continuing coverage liabilities **(I.R.B 2001-8, page 688 – Attachment C)**

5. Order the debtor, prior to (or at the latest simultaneous to) any reorganization, in lieu of lifetime continuing coverage, to make a one time payment of $532,169,000.00 (Five hundred thirty-two million, one hundred-sixty-nine thousand dollars), to be adjusted with any payment data corrections and less reimbursed premiums; to the Delphi Salaried Retirees VEBA Trust., as full settlement. (See attachment A.)

**Benefit of Relief**

12. The benefit of the relief sought is that it will:

    i. Insure that the Debtor has a successful reorganization.

    ii. Help the Debtor avoid potentially large tax sanctions regarding COBRA regulations and notification requirements.

    iii. Insure that purchaser of certain assets, transferees of certain assets and / or successor employers avoid unexpected COBRA liabilities **(I.R.B 2001-8, page 688 - Attachment C)**

    iv. Avoid expensive and disruptive post reorganization litigation for Delphi Salaried Retirees and Successor Employers, asset transferees and asset purchasers.

    v. Insure that Congress' intent "to protect retiree health benefits when reduced during Title 11 proceedings" is met.

    vi. Ensure that Delphi Salaried Retirees do not carry a disproportionate and unfair portion of the Debtor reorganization expense.

**Memorandum of Law**

13. It is respectfully requested that the Court waive the requirement contained in Local Bankruptcy Rule 9013-1(b) that a separate memorandum of law be submitted.

**No Prior Request**

14. No prior motion for the relief sought herein has been made by the Movant to this or any other court.

WHEREFORE the Movant respectfully request that this Court enter an order in the form attached hereto granting the relief requested herein, and such other and further relief as may be just, necessary and appropriate.

Dated: Noblesville, Indiana
July 10, 2009

By: *James B. Sumpter*

James B. Sumpter, Pro Se
21169 Westbay circle
Noblesville, IN 46062
Telephone: (317) 877-0736
Facsimile: (317) 877-1070
jsump@ieee.org

Salaried Retiree of Debtors

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

– – – – – – – – – – – – –--x Chapter 11 Case No. 05-44481 (RDD)

In re:

DELPHI CORPORATION, et. al.,   :(Jointly Administered)

    Debtors.

– – – – – – – – – – – – –·x

**ORDER TO ENFORCE COBRA BENEFIT FOR DELPHI SALARIED RETIREES AND ORDER OF COBRA SETTLEMENT (COBRA BENEFIT MOTION)**

    Upon the motion dated July 10, 2009 the ( "COBRA Benefit Motion") filed by the James B. Sumpter, a salaried retiree of Debtors pursuant to 11 U.S.C. §§ 102(1), 105(a), and Rules 8005 and 9006(c) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 9006-1 of the Local Rules of the United States Bankruptcy Court for the Southern District of New York (the "Local Rules") requesting that the Court enforce Salaried Retiree bankruptcy related, Cobra Benefit rights

    ORDERED that:

    1.    The Debtor shall provide salaried retirees COBRA coverage retroactively from April 1, 2009, and ending not earlier than the death of each eligible retiree, in conformance with relevant sections of Title 26 and Title 29.

    2.    The debtor shall reimburse salaried retiree's, by August 23, 2009, premiums paid in excess of the 102% COBRA rate mandated by statute.

    3.    The debtor shall advise all potential successor employers, transferees and asset purchasers that they may have continuing coverage liabilities pursuant to **I.R.B 2008-1, page 688,** until this order is fully implemented.

    4.    The Debtor, prior to (or at the latest simultaneous to) any reorganization, in lieu of lifetime continuing coverage, shall make a one time payment of $532,169,000.00 ((Five hundred

7

thirty-two million, one hundred-sixty-nine thousand dollars), to be adjusted with any payment data corrections (conforming to attachment A in the COBRA Benefit Motion, in agreement with James B. Sumpter, Movant) and less reimbursed premiums; to the Delphi Salaried Retirees VEBA Trust., as full settlement.

Dated:    New York, New York
July __, 2009

_____
HONORABLE ROBERT D. DRAIN UNITED STATES BANKRUPTCY JUDGE