**HOGAN & HARTSON LLP**
Scott A. Golden (SG-6663)
Dena Copulsky Kaufman (DC-9222)
875 Third Avenue
New York, New York 10022
Telephone: (212) 918-3000
Facsimile: (212) 918-3100


Attorneys for XM Satellite Radio Inc.


**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------------- x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| DELPHI CORPORATION, <u>et</u>. <u>al</u>, | : | Case No. 05-44481 (RDD) |
| | : | (Jointly Administered) |
| Debtors. | : | |
| | : | |
| | : | |

---------------------------------------------------------------- x


## OBJECTION OF XM SATELLITE RADIO INC. TO
## DEBTORS' PROPOSED ASSUMPTION AND ASSIGNMENT
## OF EXECUTORY CONTRACTS TO PARNASSUS HOLDINGS II, LLC

XM Satellite Radio Inc. ("<u>XM</u>"), by and through undersigned counsel, hereby files this

objection (the "<u>Objection</u>") to the Debtors' July 10, 2009 Notice of Filing of Notices of

Assumption and Assignment With Respect to Certain Executory Contracts or Unexpired Leases

to be Assumed and Assigned to Parnassus Holdings II, LLC Under Modified Plan of

Reorganization (the "<u>July 10th Notice</u>") and the July 13, 2009 Notice of Filing of Certain

Corrected Notices of Assumption and Assignment With Respect to Certain Executory Contracts

or Unexpired Leases to be Assumed and Assigned to Parnassus Holdings II, LLC Under

Modified Plan of Reorganization (the "July 13th Notice")[1] (collectively, the "Notices of Assumption and Assignment").  In support of the objection, XM states as follows:

1.      XM is in the business of broadcasting music, sports, news, talk, entertainment, traffic and weather channels for a subscription fee through its proprietary satellite radio system. XM's satellite radios are primarily distributed through automakers, retail locations and its website.

2.  On or about October 8, 2005 (the "Petition Date"), the above-captioned Debtors (the "Debtors") filed voluntary petitions under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

3.      Prior and subsequent to the Petition Date, XM and Delphi Automotive Systems LLC ("DAS"), one of the Debtors, entered into certain contracts (collectively, the "XM Contracts").

4.      Schedule 2 to the Notices of Assumption and Assignment sets forth certain contracts that the Debtors seek to assume and assign to Parnassus Holdings II, LLC ("Parnassus") and provides as follows with respect to XM:

---

[1]  XM notes that the Debtors' July 10, 2009 Notice of Filing of Notices of Assumption and Assignment with Respect to Certain Executory Contracts or Unexpired Leases to be Assumed and Assigned to GM Components Holdings, LLC or Steering Solutions Corporation, As Applicable, Under Modified Plan of Reorganization (the "GM Notice") lists certain contracts with XM .  XM assumes that the Debtors intended to remove such contracts from the GM Notice by the Debtors' filing of the July 13, 2009 Notice; however, to the extent that the Debtors are seeking to assume and assign any contracts with XM to GM Components Holdings, LLC or Steering Solutions Corporation, the GM Notice is hereby included in the term "Notices of Assumption and Assignment" as used in the Objection and the Objection applies equally to any proposed assumption and assignment to GM Components Holdings, LLC or Steering Solutions Corporation.

| [2] Non-Debtor Counterparty | Applicable Manufacturing Facility | Contract(s) | Cure Amount (If Any) | Rejected Contracts (If Any) |
|---|---|---|---|---|
| XM SATELLITE RADIO | All contracts between XM SATELLITE RADIO and Delphi related to products shipped to XM SATELLITE RADIO from Delphi's DPSS facility. | See prior column | $0.00 | |
| XM SATELLITE RADIO | All contracts between XM SATELLITE RADIO and Delphi related to products shipped to XM SATELLITE RADIO from Delphi's DPSS facility. | See prior column | $0.00 | |
| XM SATELLITE RADIO | All contracts between XM SATELLITE RADIO and Delphi related to products shipped to XM SATELLITE RADIO from Delphi's DPSS facility. | See prior column | $0.00 | |
| XM SATELLITE RADIO | All contracts between XM SATELLITE RADIO and Delphi related to products shipped to XM SATELLITE RADIO from Delphi's DPSS facility. | See prior column | $0.00 | |
| XM SATELLITE RADIO | All contracts between XM SATELLITE RADIO and Delphi related to products shipped to XM SATELLITE RADIO from Delphi's DPSS facility. | See prior column | $0.00 | |
| XM SATELLITE RADIO | All contracts between XM SATELLITE RADIO and Delphi related to products shipped to XM SATELLITE RADIO from Delphi's DPSS facility. | See prior column | $0.00 | |
| XM SATELLITE RADIO | All contracts between XM SATELLITE RADIO and Delphi related to products shipped to XM SATELLITE RADIO from Delphi's DPSS facility. | See prior column | $0.00 | |
| XM SATELLITE RADIO | All contracts between XM SATELLITE RADIO and Delphi related to products shipped to XM SATELLITE RADIO from Delphi's DPSS facility. | See prior column | $0.00 | |
| XM SATELLITE RADIO | All contracts between XM SATELLITE RADIO and Delphi related to products shipped to XM SATELLITE RADIO from Delphi's DPSS facility. | See prior column | $0.00 | |
| XM SATELLITE RADIO | All contracts between XM SATELLITE RADIO and Delphi related to products shipped to XM SATELLITE RADIO from Delphi's DPSS facility. | See prior column | $0.00 | |

and

| Non-Debtor Counterparty | Applicable Manufacturing Facility | Contract(s) | Cure Amount (If Any) | Rejected Contracts (If Any) |
|---|---|---|---|---|
| XM SATELLITE RADIO | E&S | All contracts between XM SATELLITE RADIO, INC and Delphi related to intellectual property. | $0.00 | |
| XM SATELLITE RADIO | E&S | All contracts between XM SATELLITE RADIO, INC and Delphi related to intellectual property. | $0.00 | |

5.    XM is unable to determine which of the XM Contracts the Debtors are seeking to assume and assign to Parnassus from the information provided on Schedule 2 of the Notices of Assumption and Assignment.  Among other things, such schedule does not set forth the dates of

---

[2]  XM notes that the list of contracts contained in this table were not included on Schedule 2 to the July 13th Notice; thus, it is unclear whether the Debtors are still seeking to assume and assign such contracts.

the contracts, the type of contract or the title of the contract.  Without knowing which of the XM

Contracts the Debtors are seeking to assume and assign, XM cannot effectively analyze the

proposed assumption and assignment or the proposed cure amount.

6.    Accordingly, unless and until the Debtors provide XM with a description of the

specific XM Contracts (including the date and title of the contract) that the Debtors seek to

assume and assign and a reasonable opportunity to analyze the proposed assumption and

assignment, XM objects to any proposed assumption and assignment of the XM Contracts.

7.    Further, to the extent that the Debtors are seeking to assume and assign any of the

XM Contracts that *are* executory contracts for the purposes of section 365 of the Bankruptcy

Code *and* that contain non-exclusive patent, copyright, trademark or similar licenses, XM objects

on the basis that such contracts cannot be assigned without XM's consent pursuant to section

365(c) of the Bankruptcy Code.[3]  See, e.g., In re Patient Educ. Media, Inc., 210 B.R. 237 (Bankr.

S.D.N.Y. 1997) (non-exclusive copyright license not assignable without consent of licensor); In

re Golden Books Family Entert., 269 B.R. 300 (Bankr. D. Del. 2001) (non-exclusive copyright

license not assignable without consent of licensor); In re Access Beyond Technologies, Inc., 237

B.R. 32 (Bankr. D. Del. 1999) (non-exclusive patent license not assignable without consent of

licensor); Everex Systems, Inc. v. Cadtrax Corp. (In re CFLC, Inc.), 89 F.3d 673 (9th Cir. 1996)

(non-exclusive patent license not assignable without consent of licensor); In re N.C.P. Marketing

Group, Inc., 337 B.R. 230, 237 (D. Nev. 2005) (". . . we find that under applicable trademark law,

trademarks are personal and non-assignable without the consent of the licensor"); In re

---

[3]  Section 365(c) of the Bankruptcy Code, in relevant part, states: "(c) The trustee may not assume or assign any
executory contract . . . of the debtor, whether or not such contract . . . prohibits or restricts assignment of rights or
delegation of duties, if—    (1) (A) applicable law excuses a party, other than the debtor, to such contract . . .
from accepting performance from or rendering performance to an entity other than the debtor or the debtor in
possession, whether or not such contract . . . prohibits or restricts assignment of rights or delegation of duties; and
(B) such party does not consent to such assumption or assignment"

Wellington Vision, Inc., 364 B.R. 129 (Dist. S.D. Fla. 2007) (license to use trademarks not assignable without licensor consent).

8.      In addition, to the extent that the Debtors are seeking to assume and assign any XM Contracts that *are not* executory contracts for the purposes of section 365 of the Bankruptcy Code *and* that contain a provision that prohibits or otherwise restricts assignment (an "Anti-Assignment Provision"), XM objects to any such assignment without XM's consent.

9.      Courts have held that the term "executory contract" in section 365 of the Bankruptcy Code does not encompass post-petition contracts entered into by a debtor in possession.  See In re Dant & Russell, Inc., 853 F.2d 700, 706 (9th Cir. 1988) ("section [365] contemplates a prepetition lease or executory contract which is unexpired on the date of the petition"); In re Bay Cities Metal Products, Inc., 43 F.3d 1478 (9th Cir. 1994) (unpublished decision); In re Schuld Mfg. Co., Inc., 43 B.R. 535, 536 - 537 (Bankr. W.D.Wis. 1984) ("the power to accept or reject is limited to contracts which were executory at the commencement of the bankruptcy proceedings").  Thus, section 365 of the Bankruptcy Code does not apply to such post-petition contracts.  See In re Linton Properties, LLC, 400 B.R. 1, 5 (Bankr. D.C. 2009) (". . . when the trustee enters into a completely new contract postpetition, she has no power to reject that contract (as it is not a contract 'of the debtor' under §365(a))"); In re Airport Executive Ctr., Ltd., 138 B.R. 628, 629 (Bankr. M.D.Fla. 1992); In re Mushroom Transp. Co., Inc., 78 B.R. 754 (Bankr. E.D. Pa. 1987); In re IML Freight, Inc., 37 B.R. 556, 555 (Bankr. D. Utah 1984) ("post-petition agreements entered into between the Trustee for the estate and [third parties] were not executory contracts of the debtor and therefore are not subject to Section 365 of the Code"); In re Anglo Energy Ltd., 41 B.R. 337, 341 (Bankr. S.D.N.Y. 1984) ("Section 365(a) is not applicable to post-petition contracts.").

10.     Accordingly, section 365(f) of the Bankruptcy Code, which renders anti-assignment provisions in executory contracts unenforceable, is not applicable to post-petition contracts.

11.     Thus, XM objects to the proposed assumption and assignment of any XM Contracts which were entered into subsequent to the Petition Date and contain an Anti-Assignment Provision without XM's consent.

12.     XM hereby reserves the right to amend or supplement this Objection pending a determination of which XM Contracts the Debtors are seeking to assume and assign.

WHEREFORE, for the reasons set forth herein, XM objects to any proposed assumption

and assignment of any of the XM Contracts with any of the Debtors to Parnassus or any other

party pursuant to the Notices of Assumption and Assignment without XM's consent.

Dated:          July 17, 2009
                New York, New York


HOGAN & HARTSON LLP



By:  _____/s/ Scott A. Golden_____
            Scott A. Golden (SG-6663)
            Dena Copulsky Kaufman (DC-9222)
            875 Third Avenue
            New York, New York 10022
            (212) 918-3000 (telephone)
            (212) 918-3100 (facsimile)



Attorneys for XM Satellite Radio Inc.