CARSON FISCHER, P.L.C.
Counsel for Bing Metals Group, LLC.
4111 Andover Road, West-2nd Floor
Bloomfield Hills, MI  48302
(248) 644-4840
Patrick J. Kukla (P60465)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
                                                      :
In re:                                                :        Chapter 11
                                                      :        Case No.: 05-44481 (RDD)
DELPHI CORPORATION, *et al.*,         :        (Jointly Administered)
                                                      :
             Debtors.                           :
-----------------------------------------------------------------x

# BING METALS GROUP, LLC'S LIMITED OBJECTION TO NOTICE OF ASSUMPTION AND ASSIGNMENT WITH RESPECT TO CERTAIN EXECUTORY CONTRACTS OR UNEXPIRED LEASES TO BE ASSUMED AND ASSIGNED TO PARNASSUS HOLDINGS II, LLC UNDER MODIFIED PLAN OF REORGANIZATION

**Bing Metals Group, LLC** ("**Bing**"), by and through its attorneys, Carson Fischer, P.L.C., hereby states its limited objection to the proposed assumption and assignment of an executory contract with Bing.

## INTRODUCTION

1. On October 8, 2005 (the "**Petition Date**"), Delphi Corporation ("**Delphi**") and its affiliated debtors (collectively, the "**Debtors**") each filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

2. This Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

1

3. On June 16, 2009, the United States Bankruptcy Court (the **"Court"**) entered an order (the **"Modified Procedures Order"**) which, among other things, (a) approved solicitation with respect to modifications to the First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-In-Possession, as modified (the **"Modified Plan"**); (b) approved a related supplement to the disclosure statement approved by the Bankruptcy Court on December 10, 2007; and (c) set a final hearing date to consider approval of the Modified Plan.

4. In accordance with the Modification Procedures Order, the Debtors are required to provide notice (the **"Assignment Notice"**) of what executory contracts will be assumed and assigned to Parnassus Holdings II, LLC (**"Parnassus"**).

5. On or around July 16, 2009, Bing received the *Notice of Assumption and Assignment with Respect to Certain Executory Contracts or Unexpired Leases to be Assumed and Assigned to Parnassus Holdings II, LLC under Modified Plan of Reorganization* (the **"Bing Assignment Notice"**), which indicates that Debtors intend to assume and assign to Parnassus contract #D0550071708 (the **"Bing Contract"**) between Bing and the Debtors. No other description of the Bing Contract was provided. The proposed cure amount is $0.00 (the **"Proposed Cure Amount"**).

6. The Bing Assignment Notice purports to allow Bing ten days from the date of the Bing Assignment Notice in which to file objections to the proposed assumption and assignment. The Bing Assignment Notice is dated July 10, 2009. Bing's objection to the Bing Assignment Notice is timely-filed.

2

7. The Bing Assignment Notice further provides that in accordance with the Court's prior orders in connection with confirmation of the Debtors' plan and pursuant to the Modification Procedures Order, the Proposed Cure Amount has already been established with respect to any pre-petition default and that Bing is barred and enjoined from asserting that any other amounts are owing on account of any pre-petition default. However, the Bing Assignment Notice also provides that Bing **may** file an objection on the basis that a post-petition default exists which must be cured pursuant to 11 U.S.C. § 365.

**OBJECTION**

8. Bing files this limited objection to the assumption of the Bing Contract since as of the time of this objection, Bing has been unable to verify that the Bing Contract is an executory contract and, upon information and belief, the Proposed Cure Amount (taking into account post-petition amounts owed by the Debtors) is not accurate.

9. Section 365(a) of the Bankruptcy Code provides that a debtor, subject to court approval, "may assume or reject any executory contract or unexpired lease of the debtor." However, before a debtor can assume a contract pursuant to Section 365, it must first be established that an executory contract existed at the time of the bankruptcy filing. *In re Kong*, 162 B.R. 86, 91 (Bankr. E.D. N.Y. 1993).

10. The Bankruptcy Code does not define the term "executory contract." In construing the term "executory contract" the majority of courts, including the United States Court of Appeals for the Second Circuit, have adopted the "Countryman

3

Definition" formulated by Professor Vern Countryman. See *In re U.S. Wireless Data, Inc.*, 547 F.3d 484, 488 (2d Cir. 2008). Under the Countryman Definition an executory contract is "a contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other." See Countryman, *Executory Contracts in Bankruptcy*, 57 Minn. L. Rev. 439, 446 (1973). See also *U.S. Wireless Data* at 488 (2d Cir. 2008);

11.    Bing has been unable to ascertain whether the Bing Contract is an executory contract. Previously, Bing had received a notice from the Debtors that certain other contracts between the Debtors and Bing were not being assumed since the contracts had expired by their terms.

12.    Additionally, to the extent that the Bing Contract and other contracts between the Debtors and Bing are part of an integrated whole, all of the contracts, not just the Bing Contract must be assumed together. *In re Kopel*, 232 B.R. 57, 64 (Bankr. E.D. N.Y. 1999).

13.    Assuming that the Bing Contract is an executory contract, in order to assume and assign the Bing Contract, the Debtors must cure all existing monetary defaults, including post-petition monetary defaults.

14.    As of the date of this objection, Bing is owed at least $662,705.83 for post-petition goods and services provided to the Debtors (the "Post-Petition Default"). In accordance with the Court's Notice of Bar Date for Filing Proofs of Administrative

4

Expense, Bing timely filed an administrative expense claim for the amount of the Post-Petition Default incurred as of June 1, 2009.

15. Section 365(b) provides that a debtor may not assume an executory contract on which there has been a default, unless the debtor (i) cures the default or provides adequate assurance that it will promptly cure the default; (ii) compensates or provides adequate assurance that the debtor will promptly compensate the non-debtor party for any actual monetary loss caused by the debtor's default; and (iii) provides adequate assurance of future performance under the contract. See 11 U.S.C. § 365(b); *In re U.S. Wireless Data, Inc.*, 547 F.3d 484, 489 (2d. Cir. 2008) Daat 489; *In re Chateaugay Corp.*, 10 F.3d 944, 954 (2nd Cir. 1993).

16. The payment of cure claims strives to restore the debtor-creditor relationship to pre-default conditions by bringing the contract back into compliance with its terms. *U.S. Wireless* at 489; *In re Taddeo*, 685 F.2d 24, 26-27 (2nd Cir. 1982).

17. Thus, in order to assume the Bing Contract, the Debtors must cure all existing defaults, including the Post-Petition Default.

18. Since receiving the Bing Assignment Notice, Bing has worked diligently to reconcile the amount of the Post-Petition Default that is related to the Bing Contract. While this reconciliation is ongoing, upon information and belief, some, if not all of the Post-Petition Default relates to the Bing Contract and therefore must be cured if the Bing Contract is to be assumed and assigned. Additionally, to the extent that the Bing Contract is part of an integrated whole with other contracts between the Debtors and Bing, the entire Post-Petition Default must be paid.

5

19.    Bing is continuing its efforts to reconcile the cure amount owed and to ascertain whether the Bing Contract is an executory contract, however, given the objection deadline contained in the Bing Assignment Notice, Bing files this limited objection to preserve its right to ascertain the status of the Bing Contract and the correct cure amount owed.

20.    Bing reserves the right to amend this objection and reserves the right to assert additional objections to the proposed assumption and assignment of the Bing Contract at any hearing on this objection.

WHEREFORE, based upon the foregoing, Bing respectfully requests that the Court condition the Debtors' assumption and assignment (i) upon a determination that the Bing Contract is an executory contract and (ii) upon payment of the correct cure amount owed, including any and all post-petition defaults and grant Bing such other and further relief as the Court deems just and proper.

    CARSON FISCHER, P.L.C.
*Attorneys for Bing Metals Group, LLC.*

By: /s/ *Patrick J. Kukla*
    Patrick J. Kukla (P60465)
    4111 Andover Road, West-2nd Flr.
    Bloomfield Hills, MI 48302
    Tele: (248) 644-4840

Dated: July 17, 2009