MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.
150 West Jefferson Avenue, Suite 2500
Detroit, MI 48226
Telephone: (313) 963-6420
Jonathan S. Green
Donald J. Hutchinson
Email: greenj@millercanfield.com
Email: hutchinson@millercanfield.com

Attorneys for Ford Motor Company and its affiliates

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
    In re:                                                                                  :         Chapter 11
                                                                                                 :
DELPHI CORPORATION, et. al.,                                      :         Case No. 05-44481-RDD
                                                                                                 :
                                                        Debtors.          :
------------------------------------------------------------------------X

**OBJECTION OF FORD MOTOR COMPANY AND ITS AFFILIATES
TO ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS
AND TO THE SUFFICIENCY OF THE DEBTORS' NOTICE**

Ford Motor Company (including Ford Customer Service Division) and its affiliates, including Ford Werke GmbH, Ford Motor Company of Canada Limited, and Ford Motor Company of Australia (collectively, "Ford"), state as follows for their Objection to Assumption and Assignment of Executory Contracts and to the Sufficiency of the Debtors' Notice:

**Background**

1.      On June 1, 2009, the Debtors filed their Supplement to Plan Modification Approval Motion. In that motion, the Debtors seek the Court's approval of modifications to their confirmed plan to implement and incorporate the provisions of a Master

DELIB:3111712.1\029982-00276

Disposition Agreement ("MDA") entered into among Delphi Corporation, GM Components Holdings, LLC ("GM Components"), a shell corporation formed by General Motors Corporation ("GM"), Parnassus Holdings II, LLC ("Parnassus"), a shell corporation formed by Platinum Equity Capital Partners II, L.P. ("Platinum"), and "the other sellers and other buyers" referenced in the MDA. Pursuant to the Court's MDA Sealing Order (Docket No. 17753), Schedule 1 ("Detail of Sellers and GM Buyers") and Schedule 2 ("Detail of Sellers and Company [Parnassus] Buyer") identifying the specific buyers and sellers of assets under the MDA have been filed under seal.

2.     The MDA provides for the sale of some of the Debtors' operating businesses to GM Components, or to some other nominee or nominees of GM, and the remainder of the Debtors' operating businesses to Parnassus, or to some other nominee or nominees of Platinum. The Debtors' remaining assets will remain with the Debtors for liquidation.

3.     In connection with the sale of the Debtors' operating businesses, the MDA further provides for the Debtors' assumption and assignment to GM Components, Parnassus, or to some other nominees of GM or Platinum, as the case may be, of all or most of the executory contracts connected with the Debtors' businesses that are being sold.

4.     On June 16, 2009, the Court entered the Modification Procedures Order which, among other things, sets forth the procedures by which the Debtors are to

provide notice to the non-debtor counterparties to the executory contracts proposed to be assumed and assigned.

5.  Pursuant to the Modification Procedures Order, the Debtors filed the July 10, 2009 Notice of Filing Parnassus Assumption and Assignment Notices, the July 10, 2009 Notice of Filing GM Assumption and Assignment Notices, the Parnassus Assumption and Assignment Notices Errata Schedule 2, and the July 13, 2009 Notice of Filing Certain Corrected Parnassus Assumption and Assignment Notices (collectively, "Executory Contract Assignment Notices").

6.  The Executory Contract Assignment Notices purport to identify the numerous executory contracts that the Debtors propose to assume and assign pursuant to the MDA and to provide notice to the non-debtor counterparties of the proposed assumption and assignment.

7.  Ford does not object to the idea of the Debtors' assumption and assignment of the Debtors' executory contracts with Ford to affiliates of GM or Platinum so long as: (A) Ford is properly notified of which specific contracts are being assumed and assigned and is given a reasonable opportunity to object and withhold its consent to the proposed assignment; (B) Ford is properly notified of the identity of the specific entity to which each contract is being assigned and is given a reasonable opportunity to object and withhold its consent to the proposed assignment to that entity; (C) Ford receives adequate assurance of performance by the proposed assignee as to the

proposed assignee's performance of the production obligations under the assumed contracts, the proposed assignee's adherence to the confidentiality provisions of the assumed contracts, and the proposed assignee's honoring and protecting Ford's trade secrets and other intellectual property rights; and (D) the assumption and assignment does not interrupt production and delivery of parts to Ford.  As matters presently stand, Ford has not been given sufficient notice of the assignment to permit Ford to exercise its rights to object and withhold its consent to the proposed assignment in an informed manner, and, further, Ford has not received the adequate assurance of future performance to which Ford is entitled under Bankruptcy Code § 365(b)(1)(C).  For these reasons, Ford must and does object both to the proposed assignment and to the sufficiency of the notice given to Ford.

## **Insufficiency of Notice**

8.    The Modification Procedures Order affords non-debtor counterparties only 10 days to file and serve written objections to the proposed assignment and assumption of the Debtors' executory contracts.

9.    Especially given the tight deadline set by the Court, the Executory Contract Assignment Notices were not reasonably calculated to provide notice to Ford of which of Ford's executory contracts the Debtors proposed to assume and assign, and to which entities.  The July 10, 2009 Notice of Filing Parnassus Assumption and Assignment Notices, the July 10, 2009 Notice of Filing GM Assumption and Assignment Notices consist of thousands of pages of confusing information that is generally

meaningless to Ford and similarly situated non-debtor counterparties. To compound the confusion, both of these July 10, 2009 notices apparently contained errors that had to be corrected by the Parnassus Assumption and Assignment Notices Errata Schedule 2, and the July 13, 2009 Notice of Filing Certain Corrected Parnassus Assumption and Assignment Notices, but it is not at all clear to outsiders what the initial errors were, or how they were corrected.

10. Further confusion was introduced by the appearance of the name "Steering Solutions Services Corporation" in the Executory Contract Assignment Notices. Steering Solutions Services Corporation ("SSSC") was previously formed as a shell entity by Platinum to acquire the assets of the Debtors' steering business several months ago. Although that sale was approved by the Court, the contract for sale was ultimately cancelled with the agreement of both parties. Now, although "Steering Solutions Services Corporation" is not mentioned in the MDA, its name suddenly appears once again in the Executory Contract Assignment Notices alongside GM Components and Parnassus. After some investigation, Ford has been informed by the Debtors that the SSSC shell entity was sold by Platinum to GM. None of this was explained in the Executory Contract Assignment Notices.

11. Apparently on July 10, 2009, Kurtzman Carson, the Debtors' claims agent, mailed truncated versions of the Executory Contract Assignment Notices to the attention of various former and current employees of Ford, but mailed these to the offices of Miller Canfield, the undersigned counsel of record for Ford, without specifying an

attorney name. These were received on July 16, 2009, just two business days before Ford's objection deadline. The Kurtzman Carson notices were not co-extensive with the Ford contracts listed on the Executory Contract Assignment Notices filed with the Court. More confusing, "corrected" versions of the Kurtzman Carson notices were sent by Debtors' attorneys by Federal Express to the attention of the various former and current employees of Ford, but once again addressed to Miller Canfield. These "corrected" versions were actually received the day before the original Kurtzman Carson notices which they purported to correct.

12.     Generally, Ford is a customer that purchases component parts from some of the Debtors. The Executory Contract Assignment Notices list Ford as the non-debtor counter-party to approximately 259 contracts that the Debtors propose to assume and assign. Beyond that, the Executory Contract Assignment Notices do not provide any information that would enable Ford to identify the contracts. A number of the line items in the Executory Contract Assignment Notices contain multi-digit numbers under the heading "Contract(s)," but these do not appear to correspond to Ford purchase order numbers in most, if not all, cases. Twenty-six of the line items contain the identical notation, "All contracts between FORD MOTOR COMPANY and Delphi related to intellectual property," without naming the contract, specifying whether the item is a license or some other type of agreement, or identifying or describing the intellectual property in any manner. None of the line items identify which of the Debtors is the counterparty or provide the date of the contract. In short, the Executory Contract

Assignment Notices do not provide sufficient information to allow Ford to identify the contracts that the Debtors propose to assume and assign.

13. Further, the Executory Contract Assignment Notices do not identify the specific entity to which the contracts will be assigned. This information is material because GM is a major competitor of Ford, and the Executory Contract Assignment Notices indicate that the Debtors propose to assign some of the Debtors' executory contracts to GM Components or SSSC (both now identified as "affiliates" of GM) or to some other unspecified affiliate of GM or Parnassus or some other unspecified affiliate of Platinum. It is important to Ford that key supply contracts that involve important Ford trade secrets or intellectual property not be assigned to either GM, a major Ford competitor, or a close affiliate of GM without appropriate safeguards to protect the confidentiality, and restrict the use, of the intellectual property, trade secrets, and other confidential information owned by Ford that has been provided to the Debtors under the existing agreements.

14. Furthermore, identifying the specific contracts "related to intellectual property" that the Debtors propose to assign and identifying to which party the contracts will be assigned is important because Ford is excused under applicable non-bankruptcy law from accepting performance from a substitute for the Debtors under certain types of intellectual property agreements. Under Bankruptcy Code § 365(c)(1), the Debtors cannot assume and assign such contracts without Ford's consent. *See, e.g., In re Sunterra Corp.*, 361 F.3d 257 (4th Cir. 2004); *Institut Pasteur v. Cambridge Biotech*

*Corp.*, 104 F.3d 489 (1st Cir. 1997); *In re CFLC, Inc.*, 89 F.3d 673 (9th Cir. 1996); *In re Wellington Vision, Inc.*, 364 B.R. 129 (S.D.Fla. 2007); *In re Access Beyond Technologies, Inc.*, 237 B.R. 32, 44 (Bankr.D. Del. 1999). Ford might consent to the assignment, but cannot do so without identifying which contracts are being assigned and to what entity.

15. On information and belief, at least some of the Ford contracts that the Debtors propose to assign are post-petition contracts. Post-petition contracts are not governed by Bankruptcy Code § 365. *In re Dant & Russell, Inc.*, 853 F.2d 700, 706 (9th Cir. 1988); *In re Merry-Go-Round Enterprises, Inc.,* 208 B.R. 637 (Bankr. D. Md. 1997), *aff'd*, 180 B.R. 149 (4th Cir. 1999); *In re Leslie Fay Cos., Inc.*, 168 B.R. 294, 300 (Bankr. S.D.N.Y. 1994); *In re Airport Executive Center*, 138 B.R. 628, 629 (Bankr. M.D. Fla. 1992); *In re IML Freight, Inc.*, 37 B.R. 556, 558-559 (Bankr. D. Utah 1984). Section 42.04 of Ford's Production Purchasing Global Terms and Conditions ("Production Global Terms") and Section 21 of Ford's Global Terms and Conditions for Non-Production Goods and Services ("Non-Production Global Terms" together with the Production Global Terms, "Global Terms"), incorporated by reference into each of Ford's purchase orders, prohibit the Debtors from assigning its supply contracts with Ford without Ford's prior written consent. Bankruptcy Code § 365(f) might nullify this term in pre-petition executory contracts, but § 365(f) is not applicable to post-petition contracts.

**Adequate Assurance of Future Performance**

16.     Ford is entitled to adequate assurance of future performance under Bankruptcy Code § 365(f)(2) as a condition of the assignment of Debtors' executory contracts with Ford to a third party.  Adequate assurance of future performance requires more than just the financial wherewithal of the assignee to perform.  What "adequate assurance" is required depends on the facts and circumstances of each individual case, and adequate assurance should be defined by "commercial rather than legal standards."  *Cinicola v. Scharffenberger*, 248 F. 3d 110, 120 (3d Cir. 2001); *In re Fleming Companies, Inc.*, 2007 WL 2390776 (3d Cir. 2007);  *Seacoast Products, Inc. v. Spring Valley Farms, Inc.* 34 B.R. 379, 381 (D. N.C. 1983);  *In re Carlisle Homes, Inc.*, 103 B.R. 524, 538 (Bankr. D. N.J. 1988);  *Ramco-Gershenson Properties v. Service Merchandise Co., Inc.*, 293 B.R. 169-176-77 (Bankr. M.D. Tenn. 2003).  In addition to the financial capability of the proposed assignee, courts have considered many other factors in determining whether adequate assurance of future performance exists, including the assignee's "willingness" to perform under the contract,  *In re Embers 86th Street, Inc.*, 184 B.R. 892 (Bankr. S.D. N.Y. 1995); *In re Bypagh, Inc.,* 56 B.R. 598 (Bankr. S.D. N.Y. 1986);  *In re Alipat*, 36 B.R. 274 (Bankr. Mo. 1984);  testimony regarding whether the assignee intends to comply with the contract,  *In re Glyco Genesys, Inc.*, 352 B.R. 568 (Bankr. D. Mass. 2006);  *In the Matter of Bronx-Westchester Mack Corporation*, 20 B.R. 139 (Bankr. S.D. N.Y. 1982);  *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1310 (5th Cir. 1985);  *Seacoast Products, Inc. v. Spring Valley Farms, Inc.*, 34 B.R. 379, 381 (D. N.C. 1983);  the "likelihood" that the non-debtor party will receive the benefit of its bargain from the

assignee, *Traffic Safety Devices v. Safety Barriers, Inc.*, 2006 WL 2709229 (E.D. Tenn. 2006); *In re Bygaph, Inc.*, 56 B.R. 596 (Bankr. S.D. N.Y. 1986); the expertise of the assignee in the subject matter of the contract, *In re Glyco Genesys, Inc.*, 352 B.R. 568 (Bankr. D. Mass. 2006); the assignee's business plan, *In re Washington Capital Aviation & Leasing*, 156 B.R. 167 (Bankr. E.D. Va. 1993); *In re Embers 86th Street, Inc.*, 184 B.R. 892 (Bankr. S.D. N.Y. 1995); whether the assignee has demonstrated the ability to operate a similar business successfully, *In re Alipat*, 36 B.R. 274 (Bankr. Mo. 1984); *In re Old South Coors, Inc.*, 27 B.R. 923 (Bankr. N.D. Miss. 1983); *In re Service Merchandise* 297 B.R. 675, 682 (Bankr. M.D. Tenn. 2002); *In re Bygaph, Inc.*, 56 B.R. 596 (Bankr. S.D. N.Y. 1986); and the general economic outlook in the industry which is the subject matter of the contract, *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1310 (5th Cir. 1985); *Seacoast Products, Inc. v. Spring Valley Farms, Inc.*, 34 B.R. 379, 381 (D. N.C. 1983).

17.    Because the Executory Contract Assignment Notices do not identify the proposed assignees of the Ford Contracts or specify the adequate assurance of future performance of each assignee, as required by Fed.R.Bankr.P. 6006(f)(4), it is impossible to assess the ability of the proposed assignees' ability to perform the Ford contracts that are being assigned, not only in terms of the assignee's financial capability of performing, but also the assignee's know how and technical capability of performing the required work.

**Confidential Information**

18.     Of critical concern to Ford in the present case is that the Debtors have gained access to Ford's trade secrets and other confidential commercial information in connection with most, if not all, of the Debtors' contracts with Ford, including but not limited to joint development, production and service parts contracts.  Although protection of confidential information is critical regardless of the assignee, because the Debtors apparently propose to assign at least some of Ford's executory contracts to an affiliate of Ford's competitor, GM, adequate assurance of future performance must at a minimum require in this particular case that the proposed assignees must agree in writing: (a) to strictly observe the provisions of Ford's Global Terms restricting access to and use of Ford's trade secrets and other confidential information, including but not limited to Sections 15, 16, and 17 of the Production Global Terms and Sections 13, 14, and 15 of the Non-Production Global Terms; (b) not to provide access to any Ford trade secrets and other confidential information to any employee or agent of GM or any dual employee or agent of the assignee and GM without Ford's prior written consent; and (c) absent Ford's prior written consent to the contrary, the assignee will use Ford trade secrets and confidential information solely for the production of parts for Ford.

**Contracts Related to Intellectual Property and Post-Petition Contracts**

19.     As noted above, Ford is excused under applicable non-bankruptcy law from accepting performance from a substitute for the Debtors under certain types of intellectual property agreements, and, under Bankruptcy Code § 365(c)(1), the Debtors may not assume or assign those contracts without Ford's consent.  Likewise,

Bankruptcy Code § 365 is inapplicable to post-petition contracts between Ford and the Debtors, and Ford's Global Terms prohibit the assignment of Ford's post-petition contracts with the Debtors without Ford's prior written consent.  Ford objects to the Debtors' assignment of contracts related to intellectual property and of post-petition contracts without Ford's consent.  Once the contracts that the Debtors propose to assign are identified to Ford's satisfaction, Ford may consent to the assignment, but Ford reserves the right to withhold its consent.

20.    It is possible and Ford's desire that these objections and other concerns can be resolved so that Ford would be able to withdraw these objections prior to the hearing and consent to the Debtors' proposed assignment.  It is not Ford's intent to provoke the Debtors' rejection of its executory contracts with Ford.  Rather, these objections are filed in order to preserve Ford's rights.

## **Conclusion**

For the reasons stated above, Ford objects to the assumption and assignment of the executory contracts between Ford and the Debtors and requests that the Court grant such other and further relief as may be appropriate and just.

        Respectfully submitted,

        MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

        By /s/ Donald J. Hutchinson
            Jonathan S. Green (*admitted pro hac vice*)
            Donald J. Hutchinson
        150 West Jefferson Avenue, Suite 2500
        Detroit, MI 48225
        Telephone: (313) 963-6420
        Email: greenj@millercanfield.com
        Email: hutchinson@millercanfield.com

        Attorneys for Ford Motor Company

Dated: July 17, 2009

## CERTIFICATE OF SERVICE

      Donald J. Hutchinson hereby certifies that, on the 17th day of July, 2009, he served a copy of the foregoing document, ***Objection of Ford Motor Company and Its Affiliates to Assumption and Assignment of Executory Contracts and to the Sufficiency of the Debtors' Notice*** upon each of the persons listed on the attached Exhibit A, by Federal Express Priority Overnight Mail so as to be received by each of the persons listed on the attached Exhibit before 4:00 p.m. EDT on July 20, 2009.

Dated: July 17, 2009      By /s/ Donald J. Hutchinson
                                    Donald J. Hutchinson (MI P39545)
                                    Miller, Canfield, Paddock and Stone, P.L.C.
                                    150 West Jefferson Avenue, Suite 2500
                                    Detroit, MI 48226
                                    Telephone: (313) 963-6420
                                    Fax: (313) 496-8450
                                    Email: hutchinson@millercanfield.com

# EXHIBIT A

## SERVICE LIST

The Honorable Robert D. Drain
United States Bankruptcy Judge
United States Bankruptcy Court
One Bowling Green
Room 632
New York, NY 10004

Delphi Corporation
Attention: General Counsel
5725 Delphi Drive
Troy, MI 48098

Skadden, Arps, Slate, Meagher & Flom LLP
Attention: John Wm. Butler, Jr. and Ron
 E. Meisler
155 North Wacker Drive
Chicago, IL 60606

Skadden, Arps, Slate, Meagher & Flom LLP
Attention: Kayalyn A. Marafioti and Gregory W. Fox
Four Times Square
New York, NY 10036

Office of the United States Trustee
Attention: Brian Masumoto
33 Whitehall Street, Suite 2100
New York, NY 10004

Latham & Watkins LLP
Attention: Robert J. Rosenberg, Mark A. Broude, and
 Mitchell A. Seider
885 Third Avenue
New York, NY 10017

David Polk & Wardell
Attention: Donald Bernstein and Brian Resnick
450 Lexington Avenue
New York, NY 10017

- 2 -

Willkie Farr & Gallagher LLP
Attention: Richard Mancino and Marc Abrams
787 Seventh Avenue
New York, NY 10281

Cadwalader, Wickersham & Taft LLP
Attention: John J. Rapisardi and Oren B. Haker
One World Financial Center
New York, NY 10281

United States Department of Justice
Attention: Matthew L. Schwartz and Joseph N. Cordaro
86 Chambers Street, 3rd Floor
New York, NY 10007

Weil, Gotshal & Manges LLP
Attention: Jeffrey L. Tanenbaum and Robert J. Lemons
767 Fifth Avenue
New York, NY 10153

Schulte Roth & Zabel LLP
Attention: Adam C. Harris and David J. Karp
919 Third Avenue
New York, NY 10022