WALLER LANSDEN DORTCH & DAVIS, LLP
511 Union Street, Suite 2700
Nashville, TN 37219
(615)244-6380
(615) 244-6804 (fax)
David E. Lemke, Esq. (TN BPR # 13586) *Pro Hac Vice*
David.Lemke@wallerlaw.com

*Attorneys for Nissan North America, Inc.*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

| | |
|---|---|
| In re: | : |
| | : |
| **DELPHI CORPORATION, et al.,** | :  Chapter 11 |
| | :  Case No.  05-44481-RDD |
| Debtors. | :  Jointly Administered |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**NISSAN NORTH AMERICA, INC.'S OBJECTION TO ASSUMPTION AND
ASSIGNMENT OF EXECUTORY CONTRACTS AND TO
PROPOSED CURE AMOUNTS IN CONNECTION THERETO**

   Nissan North America, Inc. ("NNA"), on behalf of itself and certain related entities ("Nissan"), state as follows their Objection to Assumption and Assignment of Executory Contracts:

**Background**

   1.   On June 1, 2009, the Debtors filed their Supplement to Plan Modification Approval Motion. In that motion, the Debtors seek the Court's approval of modifications to their confirmed plan to implement and incorporate the provisions of a Master Disposition Agreement ("MDA") entered into among Delphi Corporation, GM Components Holdings, LLC ("GM Components"), a shell corporation formed by General Motors Corporation ("GM"), Parnassus Holdings II, LLC ("Parnassus"), a shell corporation formed by Platinum Equity Capital Partners II, L.P. ("Platinum"), and "the

other sellers and other buyers" referenced in the MDA. Pursuant to the Court's MDA Sealing Order (Docket No. 17753), Schedule 1 ("Detail of Sellers and GM Buyers") and Schedule 2 ("Detail of Sellers and Company [Parnassus] Buyer") identifying the specific buyers and sellers of assets under the MDA have been filed under seal.

2. The MDA provides for the sale of some of the Debtors' operating businesses to GM Components, or to some other nominee or nominees of GM, and the remainder of the Debtors' operating businesses to Parnassus, or to some other nominee or nominees of Platinum (collectively, the proposed purchasers referred to herein as the "proposed purchasers", "assignees", or "Buyers"). The Debtors' remaining assets will remain with the Debtors for liquidation.

3. In connection with the sale of the Debtors' operating businesses, the MDA further provides for the Debtors' assumption and assignment to GM Components, Parnassus, or to some other nominees of GM or Platinum, as the case may be, of all or most of the executory contracts connected with the Debtors' businesses that are being sold.

4. On June 16, 2009, the Court entered the Modification Procedures Order which, among other things, sets forth the procedures by which the Debtors are to provide notice to the non-debtor counterparties to the executory contracts proposed to be assumed and assigned.

5. Pursuant to the Modification Procedures Order, the Debtors filed the July 10, 2009 Notice of Filing Parnassus Assumption and Assignment Notices ("Parnassus Assumption"), the July 10, 2009 Notice of Filing GM Assumption and Assignment Notices ("GM Assumption"), the Parnassus Assumption and Assignment Notices Errata Schedule 2, and the July 13, 2009 Notice of Filing Certain Corrected Parnassus

Assumption and Assignment Notices (collectively, "Executory Contract Assignment Notices").

6. The Executory Contract Assignment Notices purport to identify the numerous executory contracts that the Debtors propose to assume and assign pursuant to the MDA and to provide notice to the non-debtor counterparties of the proposed assumption and assignment.

7. Nissan does not object to the idea of the Debtors' assumption and assignment of the Debtors' executory contracts with Nissan to the Buyers so long as: (A) Nissan receives adequate assurance of performance by the proposed assignee as to the proposed assignee's performance of the all obligations under the assumed contracts (including all production and warranty obligations), the proposed assignee's adherence to the confidentiality provisions of the assumed contracts, and the proposed assignee's honoring and protecting Nissan's trade secrets and other intellectual property rights; (B) the assumption and assignment does not interrupt production and delivery of parts to Nissan. As matters presently stand, Nissan has not received the adequate assurance of future performance to which Nissan is entitled under Bankruptcy Code § 365(b)(1)(C); (C) any and all cure amounts owing under contracts are paid by the proposed assignees (including the cure amounts set forth on Exhibit A hereto which relate specifically to the contracts that purport to be assigned to GM Components, and other such amounts as may be amended and supplemented) and (D) Nissan receives adequate assurance that the proposed assignee will honor all warranty obligations, arising before and after the assumption and assignment of the contracts to the assignees. For these reasons, Nissan objects to the proposed assignment.

**Adequate Assurance of Future Performance**

8.   Nissan is entitled to adequate assurance of future performance under Bankruptcy Code § 365(f)(2) as a condition of the assignment of Debtors' executory contracts with Nissan to a third party. Adequate assurance of future performance requires more than just the financial wherewithal of the assignee to perform. What "adequate assurance" is required depends on the facts and circumstances of each individual case, and adequate assurance should be defined by "commercial rather than legal standards." *Cinicola v. Scharffenberger*, 248 F. 3d 110, 120 (3d Cir. 2001); *In re Fleming Companies, Inc.*, 2007 WL 2390776 (3d Cir. 2007); *Seacoast Products, Inc. v. Spring Valley Farms, Inc.* 34 B.R. 379, 381 (D. N.C. 1983); *In re Carlisle Homes, Inc.*, 103 B.R. 524, 538 (Bankr. D. N.J. 1988); *Ramco-Gershenson Properties v. Service Merchandise Co., Inc.*, 293 B.R. 169-176-77 (Bankr. M.D. Tenn. 2003). In addition to the financial capability of the proposed assignee, courts have considered many other factors in determining whether adequate assurance of future performance exists, including the assignee's "willingness" to perform under the contract, *In re Embers 86th Street, Inc.*, 184 B.R. 892 (Bankr. S.D. N.Y. 1995); *In re Bypagh, Inc.,* 56 B.R. 598 (Bankr. S.D. N.Y. 1986); *In re Alipat*, 36 B.R. 274 (Bankr. Mo. 1984); testimony regarding whether the assignee intends to comply with the contract, *In re Glyco Genesys, Inc.*, 352 B.R. 568 (Bankr. D. Mass. 2006); *In the Matter of Bronx-Westchester Mack Corporation*, 20 B.R. 139 (Bankr. S.D. N.Y. 1982); *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1310 (5th Cir. 1985); *SeacoastProducts, Inc. v. Spring Valley Farms, Inc.*, 34 B.R. 379, 381 (D. N.C. 1983); the "likelihood" that the non-debtor party will receive the benefit of its bargain from the assignee, *Traffic Safety Devices v. Safety Barriers, Inc.*, 2006 WL 2709229 (E.D. Tenn. 2006); *In re Bygaph, Inc.*,

56 B.R. 596 (Bankr. S.D. N.Y. 1986); the expertise of the assignee in the subject matter of the contract, *In re Glyco Genesys, Inc.*, 352 B.R. 568 (Bankr. D. Mass. 2006); the assignee's business plan, *In re Washington Capital Aviation & Leasing*, 156 B.R. 167 (Bankr. E.D. Va. 1993); *In re Embers 86th Street, Inc.*, 184 B.R. 892 (Bankr. S.D. N.Y. 1995); whether the assignee has demonstrated the ability to operate a similar business successfully, *In re Alipat*, 36 B.R. 274 (Bankr. Mo. 1984); *In re Old South Coors, Inc.*, 27 B.R. 923 (Bankr. N.D. Miss. 1983); *In re Service Merchandise* 297 B.R. 675, 682 (Bankr. M.D. Tenn. 2002); *In re Bygaph, Inc.*, 56 B.R. 596 (Bankr. S.D. N.Y. 1986); and the general economic outlook in the industry which is the subject matter of the contract, *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1310 (5th Cir. 1985); *Seacoast Products, Inc. v. Spring Valley Farms, Inc.*, 34 B.R. 379, 381 (D. N.C. 1983).

9.    Nissan requests that the Contracts in both the GM Assumptions and Parnassus Assumptions assume and honor all obligations under the contracts, including specifically all production and warranty obligations occurring prior to and after the assumption and assignment of the contracts and objects to any assumption and/or assignment of Contracts which do not assume all warranty obligations.

### ASSERTION OF POST-PETITION CURE AMOUNTS OWING

10.    Nissan objects to the assumption and/or assignment of GM Assumption and asserts its cure claim in the amount of $249,138.70 (as such amount may be supplemented and/or amended) as set forth on Exhibit A hereto.

11.    Nissan objects to assumption and/or assignment of those Contracts for which no Assumption Notices have been received. As of the date of this filing, is not clear whether Nissan has even been served with copies of the Assumption Notices and as with prior

notices, Nissan suspects that Assumption Notices sent to various locations. Given the quick turnaround to review and interpret the Assumption Notices, Nissan is forced to make this protective filing, as there was insufficient time to reconcile the Assumption Notices with internal records. Accordingly, Nissan reserves all rights to supplement its cure claims asserted herein against GM Components and/or to assert and amend claims against the proposed Platinum Buyer.

**ADDITIONAL OBJECTIONS**

12. Moreover, neither of the Assumption Notices appear to include that certain Master Purchase Agreement, dated as of June 14, 2004 (the "MPA"), by and between the Debtors and NNA, which governs (and shall govern) the production relationship between NNA and the proposed purchasers. To the extent that the Buyers are seeking to continue production of NNA parts, NNA requires that the Debtors assume the MPA and all obligations thereunder, including without limitation warranty and other obligations and assign said MPA to the Buyers.

13. Because the Executory Contract Assignment Notices do not specify the adequate assurance of future performance of each assignee, as required by Fed.R.Bankr.P. 6006(f)(4), it is impossible to assess the ability of the proposed assignees' ability to perform the Nissan contracts that are being assigned, not only in terms of the assignee's financial capability of performing, but also the assignee's know how and technical capability of performing the required work, and willingness to honor all obligations.

14. Nissan hereby reserves any and all rights with respect to the Contracts, including without limitation their assumption, assignment, or cure. In addition, Nissan hopes to engage in discussions with the Debtors and Buyers regarding the full scope of

2982722.1                                  6

agreements that will ultimately be assumed and/or assigned, together with any applicable cure amounts (in addition to the cure asserted herein) to the ultimate purchasers of the Delphi steering business and Indian operations.

Dated: July 20, 2009

        Respectfully submitted:

        **Waller Lansden Dortch & Davis, LLP**

        /s/  David E. Lemke
        David E. Lemke, Esq. (TN 13586) *Pro Hac Vice*
        511 Union St., Suite 2700
        Nashville, TN  37219-8966
        Telephone: (615) 244-6380
        Facsimile: (615) 244-6804
        Email: David.Lemke@WallerLaw.com

        **Attorneys for Nissan North America, Inc.**

## CERTIFICATE OF SERVICE

In accordance with Local Bankruptcy Rule 9078-1, the undersigned certifies that on July 20, 2009 a true and correct copy of the preceding pleading was served upon the parties via the Court's CM/ECF noticing system and upon the parties listed below by hand delivery, facsimile, and/or email:

| | |
|---|---|
| Honorable Robert D. Drain<br>United States Bankruptcy Judge<br>United States Bankruptcy Court<br>For the Southern District of New York<br>One Bowling Green, Room 610<br>New York, NY 10004 | Delphi Corporation<br>Attn: General Counsel<br>5725 Delphi Drive<br>Troy, MI 48098 |
| Kayalyn A. Marafioti<br>Gregory W. Fox<br>Skadden, Arps, Slate, Meagher & Flom LLP<br>Four Times Square<br>New York, New York 10036 | John Wm. Butler, Jr.<br>Ron E. Meisler<br>Skadden, Arps, Slate, Meagher & Flom LLP<br>333 West Wacker Drive, Suite 2100<br>Chicago, IL 60606 |
| Donald Bernstein<br>Brian Resnick<br>Davis Polk & Wardwell<br>450 Lexington Avenue<br>New York, NY 10017 | Robert J. Rosenberg<br>Mark A. Broude<br>Mitchell A. Seider<br>Latham & Watkins LLP<br>885 Third Avenue<br>New York, NY 10022 |
| Office of the United States Trustee for the Southern District of New York<br>Attn: Brian Masumoto<br>33 Whitehall Street, Suite 2100<br>New York, NY 10004 | Willkie Farr & Gallagher LLP,<br>(Att'n: Richard Mancino and Marc Abrams),<br>787 Seventh Avenue<br>New York, New York 10019 |
| Cadwalader, Wickersham & Taft LLP<br>Att'n: John J. Rapisardi and Oren B. Haker<br>One World Financial Center<br>New York, New York 10281 | United States Department of Justice, 86 Chambers Street, 3rd Floor, New York, New York 10007 (Att'n: Matthew L. Schwartz and Joseph N. Cordaro) |
| Weil, Gotshal & Manges LLP<br>Att'n: Jeffrey L.Tanenbaum and Robert J. Lemons<br>767 Fifth Avenue<br>New York, New York 10153 | Schulte Roth & Zabel LLP<br>Att'n: Adam C. Harris and David J. Karp<br>919 Third Avenue<br>New York, New York 10022 |

/s/ David E. Lemke