Paul J. Dobosz                                              **Hearing Date: July 23, 2009**
7052 Oakbay Drive
Noblesville, IN 46062-9753
(317) 877-2178

*A Delphi Salaried Retiree objecting pro se*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------x
                                                       :
In re                               :            Chapter 11
                                                       :
DELPHI CORPORATION, et al.,         :            Case No. 05-44481 (RDD)
                                                       :
Debtors.                            :            (Jointly Administered)
                                                       :
------------------------------------------------------x

**OBJECTION TO CONFIRMATION OF DEBTOR'S FIRST AMENDED PLAN OF
REORGANIZATION (AS MODIFIED) AND OBJECTION TO THE APPROVAL OF
DEBTOR'S PROPOSED SECTION 363 SALE**

  As a salaried retiree of Delphi Corporation (the "Debtor") with approximately 10 years of

employment with the "Debtor" and 27 years of employment with its predecessor General Motors

Corporation ("GM") prior to retirement, I hereby object to confirmation of the "Debtor's" First

Amended Plan of Reorganization as Modified ("the Plan") and to approval of the "Debtor's"

proposed Section 363 Sale ("the Sale") for reasons as follow:

  1. The "Debtor" has languished in chapter 11 of title 11 of the United States Code

for nearly four years. An earlier Plan of Reorganization was confirmed in 2008, but never

executed.  Subsequently, the "Debtor" has continued to operate its business as debtor in

possession under the supervision of the Court.  The "Debtor" had also continued to represent its

intention to fully fund all of its defined benefit pension plans upon confirmation of "the Plan".

A change in the treatment of certain ,but not all, defined benefit pension plans was first revealed in the most recent modification to "the Plan" filed with the Court on June 1, 2009.  With the revelation of this change, salaried retirees and employees of the "Debtor" have just cause to object with respect the "Debtor's" attempt to effectively discharge their vested pension rights as unsecured bankruptcy claims using the Court as its proxy.  This deliberately deceptive conduct on the part of the "Debtor" gives rise to this objection since the bankruptcy court lacks the jurisdiction to direct or approve sale or forfeiture of assets rightfully belonging to the beneficiaries of a vested pension plan, including liens against the "Debtor's" foreign assets by the PBGC.  Termination of a vested defined benefit pension plan to the PBGC and disposition of its assets is the purview of the Federal District Courts as proscribed in ERISA §4042(c), 29 U.S.C. 1342(c).

2.    During the subsequent operation of the business under supervision of the Court, the "Debtor" failed to make the required minimum funding contribution payments to both the salaried and hourly employee pension plans as required under ERISA thus incurring penalties in addition to the large unpaid amounts owed to the pension plans.   11 U.S.C §§ 503(B)(1)(A), 507(a)(1)  dictate that these amounts must be treated as administrative priority claims,  not as an unsecured bankruptcy claim as proposed in the "Debtor's" latest modification to "the Plan".  The formerly confirmed plan of reorganization required funding of all defined benefit plans as a condition for confirmation.  As modified, "The Plan", by effectively covering this liability (via funding by "GM") for one group of employees and retirees while failing to do likewise for remaining groups of similarly situated employees and retirees, violates the requirement to treat similarly situated creditors equally in bankruptcy as well as the requirement that shortfalls in required minimum funding contributions be treated as administrative claims .

3.      The "Debtor" has negotiated the transfer of certain defined benefit pension plan assets and obligations back to General Motors Corporation from which they were assumed at the time of separation in 1999 as a part of a proposed Section 363 Sale. This action was taken on behalf of a group of hourly employees and retirees covered by a collective bargaining agreement negotiated between the "Debtor" and the United Auto Workers union. The modified agreement between the "Debtor" and "GM" to transfer the pension liability was reached in secret, under the heavy influence of the Federal Auto Task Force, who despite having no legitimate stake in the "Debtor's" bankruptcy, shaped its outcome to the detriment of one group of creditors over another, giving rise to yet another objection.

4.      "The Plan" requires the PBGC to surrender liens on certain of the "Debtor's" assets in return for a cash payment of $30 million and to receive payment for the remaining liability (approximately $3 billion) in unsecured bankruptcy claims that will likely pay nothing. This is contrary to 11 U.S.C. §§ 545,547 (c) (6) that specifiy that  post petition liens by PBGC on controlled group property of a debtor must be treated as secured claims enforceable solely by the PBGC. If required to adhere to "the Plan" once confirmed, the PBGC, the "Debtor" will be in violation of 11 U.S.C. §§ 545, 547 (c) (6) thus this provision of "the Plan" cannot be lawfully confirmed.

5.      The disposition of the "Debtor's" salaried pension plan is not only inequitable; it is contrary to the law governing the criteria and jurisdiction for distress termination of defined benefit pension plans and the treatment of liens on the controlled group property of the "Debtor". Fortunately, the PBGC has not yet agreed to the "Debtor's" demands. Should the PBGC agree to "the Plan" as presented, it will be a breach of their fiduciary duty to beneficiaries of the pension plan, in addition to not being in accordance with applicable Federal laws.

6.      As is obvious by the existence of the numerous objectors to the "Debtor's"

Motion, the Modified Plan is deeply flawed and must not be confirmed.   "The Plan" allows an

unfair and illegal group of transactions to proceed including a secretly arranged Section 363 Sale.

These transactions wrongly favor one group of similarly situated creditors over another like

group.  I join with other creditors that have expressed strong objections to this plan for various

reasons in my objection to confirmation of "the Plan".


Accordingly, I object to both the Modified Plan and the Section 363 Sale, for reasons

stated and I respectfully ask the Court to reject the "Debtor's" Revised Plan of Reorganization

and Section 363 Sale and to provide salaried retirees and employees of the "Debtor" such relief

that it deems just and proper.


Dated: July7, 2009
Noblesville, Indiana

Respectfully submitted,

By: /s/ Paul J. Dobosz

Paul J. Dobosz
7052 Oakbay Drive
Noblesville, IN 46062-9753
(317) 877-2178

*A Delphi Salaried Retiree Objecting pro se*