**Hearing Date and Time:  July 23, 2009 at 10:00 a.m. (prevailing Eastern time)**

SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr.
Ron E. Meisler

SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, New York 10022
(212) 848-4000
Douglas P. Bartner
Andrew V. Tenzer
Michael S. Baker

SKADDEN, ARPS, SLATE, MEAGHER
   & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| | : | |
| In re | : | Chapter 11 |
| | : | |
| DELPHI CORPORATION, et al., | : | Case No. 05-44481 (RDD) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

EXPEDITED MOTION FOR ORDER (I) RATIFYING AND APPROVING
DEBTORS' ENTRY INTO SIXTEENTH AMENDMENT TO
ACCOMMODATION AGREEMENT AND RELATED DOCUMENTS
WITH CERTAIN PARTICIPATING DIP LENDERS AND (II) AUTHORIZING
DEBTORS TO PAY FEES AND EXPENSES IN CONNECTION THEREWITH

("SIXTEENTH ACCOMMODATION AMENDMENT MOTION")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this Expedited Motion For Order (I) Ratifying And Approving Debtors' Entry Into Sixteenth Amendment To Accommodation Agreement And Related Documents With Certain Participating DIP Lenders And (II) Authorizing Debtors To Pay Fees And Expenses In Connection Therewith (the "Motion"), and respectfully represent as follows:

Background

A.    The Chapter 11 Filings

1.    On October 8 and 14, 2005, the Debtors filed voluntary petitions in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as then amended (the "Bankruptcy Code").  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession under Bankruptcy Code sections 1107(a) and 1108.  This Court has ordered joint administration of these cases.

2.    No trustee or examiner has been appointed in these cases.  On October 17, 2005, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Creditors' Committee").  On April 28, 2006, the U.S. Trustee appointed an official committee of equity holders, which was disbanded on April 24, 2009. On February 26, 2009, the U.S. Trustee appointed an official committee of retired employees to represent certain of the Debtors' current active salaried employees, retirees, and their spouses for certain limited purposes.

3.    On December 10, 2007, the Debtors filed the First Amended Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession (Docket No. 11386) (the "Plan") and the First Amended Disclosure Statement with

2

respect to the Plan (Docket No. 11388) (the "December 10 Disclosure Statement").  The Court

subsequently entered an order approving the adequacy of the December 10 Disclosure Statement

and granting the related solicitation procedures motion (Docket No. 11389).  On January 25,

2008, the Court entered an order confirming the Plan (as modified) (Docket No. 12359) (the

"Confirmation Order"), and the order became final on February 4, 2008.  Although the Debtors

on April 4, 2008 had satisfied the conditions required to substantially consummate the Plan, as

confirmed by this Court (the "Confirmed Plan"), including obtaining $6.1 billion of exit

financing, Delphi's Plan Investors (as defined in the Confirmed Plan) refused to participate in a

closing that was commenced but not completed and refused to fund their Investment Agreement

(as defined in the Confirmed Plan) with Delphi.[1]  On May 16, 2008, Delphi filed complaints for

damages and specific performance against the Plan Investors and related parties who refused to

honor their equity financing commitments or participate in the closing that would have led to

Delphi's successful emergence from chapter 11.  Since that time, however, the Debtors

nevertheless have continued to work with their stakeholders to achieve their goal of emerging

from chapter 11 as soon as practicable.

        4.      On October 3, 2008, Delphi filed a motion (Docket No. 14310) (the "Plan

Modification Motion") under 11 U.S.C. § 1127 for an order approving (i) certain modifications

to the Confirmed Plan and December 10 Disclosure Statement and (ii) related procedures for re-

soliciting votes on the Confirmed Plan, as modified.  In light of the unprecedented decline in

global automotive production volumes and the deepening of the crisis in global debt and equity

---

[1]    Although two parties-in-interest (the Creditors' Committee and Wilmington Trust Company, as indenture
trustee) commenced actions to revoke the Confirmation Order, those adversary proceedings have been stayed
indefinitely by stipulated orders between those parties and the Debtors.  In addition, at the confirmation hearing
the Court reserved for itself the remedy of vacating the Confirmation Order (see Hr'g Tr., 45, 67-68, Jan. 17,
2008), which is a power available to the Court to address a result that is either fundamentally unfair or is the
product of an abuse of process.

markets, the Debtors adjourned the hearing on the Plan Modification Motion several times.  On

June 1, 2009 the Debtors filed a supplement to the Plan Modification Motion, supplementing the

relief sought in that motion (the "Motion Supplement").  Among other things, the Motion

Supplement sought approval of (i) certain modifications to the Confirmed Plan (the "Modified

Plan"), (ii) a supplement to the Disclosure Statement (the "Disclosure Statement Supplement"),

and (iii) procedures for re-soliciting votes on the Modified Plan.  The Motion Supplement was

approved with modifications by order entered June 16, 2009 (the "Modification Procedures

Order") and was supplemented and amended, with respect to procedures through which

proposals for alternative transactions to the Master Disposition Agreement (defined below)

would be evaluated and administered, by orders entered June 29, 2009[2] (the "Supplemental

Modification Procedures Order") and July 17, 2009 (the "Second Supplemental Modification

Procedures Order") (Docket No. 18352).  Pursuant to the Modification Procedures Order, the

final hearing on approval of the Modified Plan is scheduled for July 23, 2009 (the "Final Plan

Modification Hearing").

        5.      This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157

and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core

proceeding under 28 U.S.C. § 157(b)(2).

        6.      The statutory predicates for the relief requested herein are sections 363

and 364 of the Bankruptcy Code and rule 6004(h) of the Federal Rules of Bankruptcy Procedure

(the "Bankruptcy Rules").

---

[2]   See Order Amending and Supplementing (i) Order (A)(I) Approving Modifications to Debtors' First Amended
Plan of Reorganization (As Modified) and Related Disclosures and Voting Procedures and (II) Setting Final
Hearing Date to Consider Modifications to Confirmed First Amended Plan of Reorganization and (B) Setting
Administrative Expenses Claims Bar Date and Alternative Transaction Hearing Date (Docket No. 17032) and
(ii) the Protective Order Governing Production and Use of Confidential and Highly Confidential Information in
Connection with (A) Supplement to Plan Modification Approval Motion and (B) Supplement to GM
Arrangement Fourth and Fifth Amendment Approval Motion (Docket No. 16920), dated June 29, 2009 (Docket
No. 17376).

4

B.    Plan Confirmation And Postconfirmation Matters

7.    The Confirmed Plan is based upon a series of global settlements and
compromises that involve nearly every major constituency in the Debtors' reorganization cases,
including Delphi's labor unions and GM.  The effectiveness of certain of these agreements,
including the Debtors' two comprehensive agreements with GM (the "Original GSA" and the
"Original MRA"), was conditioned on consummation of the Confirmed Plan.  After the Plan
Investors refused to fund their obligations under the Investment Agreement, as the Debtors
continued working with their stakeholders to evaluate their options to emerge from chapter 11,
the Debtors sought approval of two comprehensive agreements with GM: the Amended and
Restated Global Settlement Agreement (the "Amended GSA") and the Amended and Restated
Master Restructuring Agreement (the "Amended MRA").  On September 26, 2008, this Court
entered an order authorizing the Debtors' implementation of the Amended GSA and the
Amended MRA, the provisions of which became effective on September 29, 2008.

8.    Through the Amended GSA and Amended MRA, the Debtors addressed,
at least in part, two goals of their transformation plan:  (i) obtaining financial support from GM
for certain of Delphi's legacy and labor costs and GM's business commitments to Delphi going
forward and (ii) working to solve Delphi's pension funding situation.  Under the Amended GSA
and Amended MRA, GM agreed to contribute substantial additional value to the Debtors and
eliminate significant elements of conditionality to the performance of GM's obligations.  Delphi
estimated the value of the net consideration received under the Amended GSA and Amended
MRA to be approximately $10.6 billion (increased from approximately $6.0 billion under the
Original GSA and Original MRA).

9.    As a result of all the factors described above, during the fall of 2008 the
Debtors were able to formulate certain modifications to the Confirmed Plan which were set forth

in the Plan Modification Motion.  Since the filing of the proposed modifications, however, substantial uncertainty and a significant decline in capacity in the credit markets, the global economic downturn generally, and the current economic climate in the automotive industry adversely impacted Delphi's ability to develop a revised recapitalization plan and successfully consummate a confirmed plan of reorganization.  Moreover, as a result of the market turbulence, the Debtors were unable to extend the maturity date of their DIP credit facility on terms reasonably acceptable to the Debtors and their other stakeholders.  Accordingly, with the support of the agent and the requisite lenders to the DIP credit facility, the Debtors entered into an accommodation agreement (as subsequently amended) which allows the Debtors, among other things, to continue using certain of the proceeds of the postpetition financing facility through July 21, 2009.  In addition, to further support the Debtors' liquidity, GM agreed to make certain advances and to accelerate payment of certain payables to the Debtors, including entry into an amended and restated agreement as of June 1, 2009, to provide the Debtors up to $250 million of additional pre-emergence liquidity to support Delphi's transformation plan and its reorganization plan.[3]

10.    Also on June 1, 2009, while facing the most difficult economic period in decades with the most precipitous drop in U.S. vehicle sale volumes in half a century, Delphi reached an agreement to effect its emergence from chapter 11 through a transaction with Parnassus Holdings II, LLC ("Parnassus"), an affiliate of Platinum Equity, and with the support of GM Components Holdings LLC ("GM Components"), an affiliate of GM.  In the exercise of

---

[3]    GM sought chapter 11 protection on June 1, 2009.  Concurrently with its filing for chapter 11 protection, GM filed a motion seeking Bankruptcy Court approval to continue to provide financing to certain of its suppliers, including by lending funds directly to suppliers such as Delphi in the manner as set forth in the GM Arrangement.  The Bankruptcy Court granted GM both interim and final approval of this motion and expressly provided that without further Court order, GM could continue payments and accommodations to financially or operationally distressed suppliers whether relating to the period prior to or following the commencement of GM's cases.

the Debtors' fiduciary responsibilities to maximize the value of their estates for the benefit of all

of their stakeholders, the Debtors executed an agreement (the "Master Disposition Agreement")

to reflect the foregoing transactions through a plan of reorganization.  The agreement and the

changes to the Confirmed Plan were filed as part of the Motion Supplement, on June 1, 2009.

      11.     On June 16, 2009, the Bankruptcy Court entered the Modification

Procedures Order which, among other things, authorized the Debtors to commence solicitation of

votes on the Modified Plan.  Under the Modified Plan, instead of having a plan investor

sponsoring their plan and emerging as the majority owner of the continuing business enterprise,

however, Delphi has agreed to contemporaneously effectuate transactions through which

Parnassus or another successful bidder at the Auction (as defined below) will operate Delphi's

U.S. and non-U.S. businesses going forward with emergence capital and capital commitments of

approximately $3.6 billion and without the labor-related legacy costs associated with the North

American sites that, together with Delphi's global Steering business, are being acquired by GM

Components Holding LLC.  A new company, DPH Holdings Co., will emerge as a reorganized

entity that retains certain other residual non-core and non-strategic assets and liabilities that are

expected to be divested over time.

      12.     If the Debtors are unable to obtain confirmation of the Modified Plan, the

Debtors have committed to seeking approval of the transactions set forth in the Master

Disposition Agreement pursuant to a sale under section 363 of the Bankruptcy Code independent

of and not pursuant to, or contingent on, any plan of reorganization.  On July 2, 2009, the

Debtors filed an agreement (Docket No. 17558) to implement a sale transaction under section

363 of the Bankruptcy Code as required by the Master Disposition Agreement.  The

Modification Procedures Order also established July 23, 2009 as an alternative sale hearing date,

to be used, only if necessary, to consider the sale of substantially all the Debtors' assets pursuant to section 363 of the Bankruptcy Code.

13.    Consummation of these transactions through the Modified Plan, which embodies concessions made by parties-in-interest to resolve these chapter 11 cases, will provide for the satisfaction of all of the Debtors' administrative claims, secured claims, and priority claims and a potential distribution to holders of general unsecured claims.  Moreover, Delphi's emerging businesses will continue to develop technology and products and produce them for the benefit of their customers either under the guidance of Platinum Equity or in conjunction with an alternative transaction, if any.  In the meantime, Delphi will marshal all of its resources to continue to deliver high-quality products to its customers globally.  Additionally, the Company will seek to preserve and continue the strategic growth of its non-U.S. operations and maintain its prominence as one of the world's premier auto suppliers.

C.    The Accommodation Agreement And Amendments Thereto

14.    Since January 5, 2007, the Debtors have been operating in these chapter 11 cases by utilizing the proceeds of a refinanced debtor-in-possession facility (the "DIP Facility")[4] comprised of three tranches:  (i) a first priority revolving credit facility ("Tranche A"), (ii) a first priority term loan ("Tranche B"), and (ii) a second priority term loan ("Tranche C").[5] The DIP Facility is governed by an Amended and Restated Revolving Credit, Term Loan and Guaranty Agreement dated as of May 9, 2008 (as amended, the "Credit Agreement").

---

[4]    The history of the DIP Facility is described in detail in the Debtors' Expedited Motion For Order (I) Supplementing January 5, 2007 DIP Refinancing Order (Docket No. 6461) And Authorizing Debtors To Enter Into And Implement Accommodation Agreement With Agent And Participating Lenders And (II) Authorizing Debtors To (A) Enter Into Related Documents And (B) Pay Fees In Connection Therewith, filed on November 7, 2008 (Docket No. 14408) (the "Accommodation Motion").

[5]    As of the date of this Motion the Debtors owe approximately $249 million to the Tranche A lenders, $337 million to the Tranche B lenders, and $2.75 billion to the Tranche C lenders.

15.    In the fourth quarter of 2008, facing frozen global credit markets and one of the worst bear markets in the history of the global capital markets, the Debtors negotiated an accommodation agreement (as amended, the "Accommodation Agreement")[6] with the administrative agent (the "Agent") under the DIP Facility and obtained consent to this agreement from the requisite percentage of lenders (the "DIP Lenders") under the Credit Agreement (i.e., DIP Lenders holding more than 50% of Tranche A and Tranche B debt under the DIP Facility) (the "Required Lenders").[7]  Under the Accommodation Agreement the Debtors could continue using certain of the proceeds of the DIP Facility through June 30, 2009 (the "Accommodation Period"), subject to the terms and conditions set forth in that agreement, as amended.  This Court authorized the Debtors to enter into the Accommodation Agreement by order entered on December 3, 2008 (the "DIP Accommodation Order") (Docket No. 14515) and the parties subsequently effectuated the agreement on December 12, 2008.

16.    During the past several months, to remain in compliance with the Accommodation Agreement and maximize available liquidity, the Debtors and the requisite percentage of DIP Lenders who participated in the Accommodation Agreement (the "Participant Lenders") amended the Accommodation Agreement a number of times.  Because, the first several amendments to the Accommodation Agreement, and certain supplements thereto, involved the payment of certain fees and expenses to the Participant Lenders, in an exercise of caution the Debtors agreed to seek this Court's authorization to enter into such amendments and

---

[6]    A copy of the Accommodation Agreement is attached as Exhibit A to the DIP Accommodation Order (as defined below).

[7]    Although under the terms of the Second Amended and Restated DIP Credit Agreement the Debtors were not required to seek the Tranche C lenders' consent to the Accommodation Agreement, to encourage Tranche C lenders to assist the Debtors with their emergence capital funding efforts, the Debtors nevertheless sought and obtained this Court's approval of certain incentives for those Tranche C lenders which consented to the Accommodation Agreement.

use estate funds to pay such fees and expenses.[8]  Since the Court approved the third amendment

to the Accommodation Agreement on May 21, 2009, the Debtors and the Participant Lenders

have entered into twelve separate amendments to the Accommodation Agreement.  These

amendments provided for, among other things, short extensions of certain deadlines in the

Accommodation Agreement in connection with obtaining the Participant Lenders' approval of

the terms of the Debtors' and GM's proposal for a global resolution of these chapter 11 cases to

prevent the termination of the Accommodation Period.[9]  The Debtors did not incur any new

obligations to the DIP Lenders to pay fees or expenses in connection with amendments four

through fifteen of the Accommodation Agreement.

　　　　　　17.　　In connection with the pending auction scheduled on July 21, 2009 for the

purpose of the Debtors' consideration of alternative transactions to the Master Disposition

Agreement (the "Auction"), the Agent, at the direction of the Required Lenders, has notified the

Debtors that the Required Lenders may submit a Pure Credit Bid in accordance with this Court's

Plan Modification Order, Supplemental Plan Modification Order, and Second Supplemental Plan

Modification Order.[10]  To facilitate ongoing negotiations relating to the Auction, on July 17,

2009 the requisite DIP Lenders and the Debtors agreed to a sixteenth amendment to the

Accommodation Agreement (the "Sixteenth Amendment"), which resulted in an extension of the

Accommodation Period to July 21, 2009 at 10:00 p.m. (prevailing Eastern time).  In connection

---

[8]  See, e.g., Accommodation Amendment Order entered on February 25, 2009 (Docket No. 16377), Final
Accommodation Supplemental Second Amendments Order entered on April 23, 2009(Docket No. 16575), and
Final Accommodation Third Amendment Order entered on May 21, 2009 (Docket No. 16633).

[9]  These amendments have extended the outside termination date of the Accommodation Period past the original
date of June 30, 3009.  Pursuant to the fifteenth amendment to the Accommodation Agreement, that outside
termination date was extended to July 17, 2009 at 11:59 p.m. (prevailing Eastern time).

[10]  A Pure Credit Bid is defined in the Supplemental Modification Procedures Order as "an offer to purchase all or
any portion of the assets of the Debtors in connection with which the only consideration that the Debtors and
this Court are asked (pursuant to the terms of the Pure Credit Bid) to evaluate in connection with the bid
consists of the offset of claims under the DIP Credit Agreement against the purchase price of such assets."
Supplemental Modification Procedures Order at ¶ 5.

with the Sixteenth Amendment, a group of DIP Lenders has requested that the Debtors pay their

reasonable and documented out-of-pocket expenses incurred in connection with the Debtors'

restructuring, and the Debtors have agreed to do so.  Accordingly, in an exercise of caution and

to facilitate a potential consensual resolution of these chapter 11 cases, the Debtors have

undertaken to seek this Court's approval of the Sixteenth Amendment, including the payment of

related fees and expenses, on an expedited basis.

Relief Requested

18.    By this Motion, the Debtors seek entry of an order authorizing them to (i)

enter into the Sixteenth Amendment with the Participant Lenders party thereto and (ii)(a) enter

into related documents and (b) pay fees and expenses in connection therewith.  In connection

with the Sixteenth Amendment, certain of the DIP Lenders have requested that the debtors pay,

and the Debtors have agreed to seek this Court's authorization to pay, certain expenses.[11]

Accordingly, the Debtors are seeking the Court's approval of the Sixteenth Amendment and the

payment of related fees and expenses on an expedited basis at a hearing to be scheduled by order

to show cause.

Basis For Relief

19.    Since filing the Modified Plan on June 1, 2009, with this Court's guidance,

the Debtors, the DIP Lenders, GM, Platinum Equity, and the Creditors' Committee have spent

many hours working to craft procedures pursuant to which the DIP Lenders could participate in

the Auction and exercise their statutory credit bid rights.  To facilitate the Auction and the

Debtors' consideration of a potential alternative transaction by means of a DIP Lender Pure

---

[11]    These DIP Lenders have further requested that the Debtors seek a hearing on this matter at the Final Plan
Modification Hearing, which is currently scheduled for July 23, 2009.  As with prior amendments to the
Accommodation Agreement, the Debtors were required to obtain authority from this Court to pay the expenses
of certain professional advisors to the DIP Lenders in order to receive requisite lender support for the
amendment.

Credit Bid, a continuation of the Accommodation Period is necessary.  Accordingly, on July 17,

2009, before the scheduled termination of the Accommodation Period, the Debtors and the

requisite Participant Lenders entered into the Sixteenth Amendment.

            20.      Substantially similar to the twelve amendments before it, pursuant to the

Sixteenth Amendment, the DIP Lenders and the Debtors have agreed to modify the

Accommodation Agreement to avoid a termination of the Accommodation Period.  This

termination would occur if the Debtors do not receive from the DIP Lenders the requisite

approval of the Debtors' and GM's proposed resolution of these chapter 11 cases by a specified

date.  Specifically, unless extended further, pursuant to the Sixteenth Amendment, the

Accommodation Period would terminate on July 21, 2009 at 10:00 p.m. (prevailing Eastern

time).

            21.      The Sixteenth Amendment, like the previous twelve amendments, also

requires that the Debtors pay all outstanding invoices for fees and expenses reimbursable under

the Credit Agreement and/or certain expense side letters.  As this Court is aware, in connection

with prior amendments to the Accommodation Agreement, the Debtors have entered into certain

side letters pursuant to which the Debtors have agreed to pay certain out-of-pocket expenses of

certain parties to the Credit Agreement, including amounts due to professionals retained by such

parties.  On express agreement of the parties, these letters have always been kept confidential,

with copies being provided to counsel to the Creditors' Committee (on a professional's eyes only

basis) and the United States Trustee, if requested, and made available for the Court's review prior

to its approval of the Debtors' reimbursement of a DIP Lender's expenses.  In connection with the

Sixteenth Amendment, the Debtors have entered into an expense side letter with a group of DIP

Lenders that did not previously have such an arrangement.  Consistent with prior practices, the

Debtors hereby seek this Court's authorization to make payments in accordance with that letter.[12]

22.     The Debtors accordingly propose that at the Final Plan Modification

Hearing, currently scheduled for July 23, 2009, their execution and delivery of the Sixteenth

Amendment as of July 17, 2009, together with all other documentation executed in connection

therewith (the "Sixteenth Amendment Documents"), be ratified and approved and that they be

authorized, but not directed, to perform and take all actions necessary to effectuate the Sixteenth

Amendment and to pay the related fees and expenses contemplated thereby.  The Debtors also

seek a ruling that the Sixteenth Amendment Documents and each of the instruments and

documents as may be necessary to effectuate the Sixteenth Amendment constitute valid and

binding obligations of the Debtors, the Agent, and the Participant Lenders, enforceable against

each party thereto in accordance with their respective terms.

23.     The Debtors propose that the DIP Refinancing Order,[13] as supplemented

by subsequent Supplemental DIP Orders[14] (the DIP Refinancing Order and the Supplemental

DIP Orders, together, the "DIP Order"), be deemed supplemented by any order approving this

Motion but otherwise continue in full force and effect.

---

[12]    As has been the practice in connection with prior amendments to the Accommodation Agreement, the expense
side letter will be provided, upon request, to counsel to the Creditors' Committee (on a professionals' eyes only
basis) and the U.S. Trustee, and will be made available to this Court for review.

[13]    Order Under 11 U.S.C. §§ 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), And 364(e) And Fed.
R. Bankr. P. 2002, 4001 And 6004(g) (I) Authorizing Debtors To Obtain Post-Petition Financing And (II)
Authorizing Debtors To Refinance Secured Post-Petition Financing And Prepetition Secured Debt (Docket No.
6461) (the "DIP Refinancing Order").

[14]    The DIP Refinancing Order has been supplemented by (i) the DIP Extension Order (Docket No. 10957), (ii) the
Second DIP Extension Order (Docket No. 13489) (as supplemented by the Supplemental Second DIP Extension
Order (Docket No. 13699)), (iii) the DIP Accommodation Order (Docket No. 14515), (iv) the Accommodation
Amendment Order (Docket No. 16377), (v) the Interim Accommodation Supplemental Second Amendment
Order (Docket No. 16549), (vi) the Final Accommodation Supplemental Second Amendment Order (Docket
No. 16575); (vii) the Interim Accommodation Third Amendment Order (Docket No. 16609), (viii) Interim
Fourth Amendment to DIP Credit Agreement Order (Docket No. 16610), (ix) the Final Accommodation Third
Amendment Order (Docket No. 16633), and (x) the Final Fourth Amendment to DIP Credit Agreement Order
(Docket No. 16634) (collectively, the "Supplemental DIP Orders").

<u>Applicable Authority</u>

D.      <u>This Court Should Authorize Sixteenth Amendment</u>

(a)      The Sixteenth Amendment Is An Appropriate Use Of Estate
        <u>Property Under Section 363(b)(1) Of The Bankruptcy Code</u>

24.      The Debtors submit that entry of an order authorizing the entry into and
implementation of the Sixteenth Amendment, including the payment of related fees, is necessary
and appropriate and in the best interests of the Debtors' estates.  Bankruptcy Code section
363(b)(1) permits a debtor-in-possession to use property of the estate "other than in the ordinary
course of business" after notice and a hearing.  11 U.S.C. § 363(b)(1).  Use of estate property
outside the ordinary course of business may be authorized if the debtor demonstrates a sound
business justification for it.  <u>See</u> <u>Comm. Of Equity Sec. Holders v. Lionel Corp.</u> (In re Lionel
Corp.), 722 F.2d 1063, 1071 (2d Cir. 1983) (business judgment rule requires finding that good
business reason exists to grant debtor's application under section 363(b)); <u>see also</u> <u>In re Delaware
& Hudson Ry. Co.</u>, 124 B.R. 169, 178-79 (D. Del. 1991).

25.      Based on the foregoing, the Debtors submit that entry of an order
approving the proposed Sixteenth Amendment is necessary and appropriate to avoid the
termination of the Accommodation Period prior to the Auction.  The proposed Sixteenth
Amendment was negotiated in good faith, at arm's length, and in the exercise of the Debtors'
business judgment.  Bankruptcy courts routinely defer to a debtor's business judgment on most
business decisions, including the decision to borrow money.  <u>See</u> <u>Group of Institutional Investors
v. Chicago,  Milwaukee, St. Paul & Pac. R.R. Co.</u>, 318 U.S. 523, 550 (1943); <u>In re Simasko
Prod. Co.</u>, 47 B.R. 444, 449 (Bankr. D. Colo. 1985).  In considering whether a debtor has
exercised its business judgment, a court is not free to second-guess particular provisions but

rather must determine whether the proposed action "as a whole is within reasonable business

judgment." In re Crowthers McCall Pattern, Inc., 114 B.R. 877, 888 (Bankr. S.D.N.Y. 1990).

26.     The Second Circuit has held that, although the Bankruptcy Court sits as an

"overseer of the wisdom with which the bankruptcy estate's property is being managed by the . . .

debtor-in-possession," it must nevertheless resist becoming "arbiter of disputes between creditors

and the estate." Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.), 4

F.3d 1095, 1099 (2d Cir. 1993).  Once the debtor articulates a valid business justification, a

presumption arises that "'in making a business decision the directors of a corporation acted on an

informed basis, in good faith and in the honest belief that the action taken was in the best

interests of the company.'" Official Comm. Of Subordinated Bondholders v. Integrated

Resources, Inc. (In re Integrated Resources, Inc.), 147 B.R. 650, 656 (S.D.N.Y. 1992) (citation

omitted).  Thereafter, "[p]arties opposing the proposed exercise of a debtor's business judgment

have the burden of rebutting the presumption of validity." Id.  To satisfy its burden, it is not

enough for an objector simply to raise and argue an objection.  Rather, an objector "is required to

produce some evidence respecting its objections." In re Lionel Corp., 722 F.2d at 1071.

27.     The Debtors have exercised sound business judgment in determining that

it is appropriate and necessary to enter into the Sixteenth Amendment to protect liquidity that,

absent the Sixteenth Amendment, would otherwise be required to be repaid to the DIP Lenders

under the Accommodation Agreement.  The Debtors believe that the proposed terms of the

Sixteenth Amendment, taken as a whole, are reasonable, necessary, and in the best interests of

the Debtors' estates.  Accordingly, the Debtors should be granted authority to enter into the

Sixteenth Amendment and take the other actions contemplated by the Sixteenth Amendment as

requested herein.

(b)     The Sixteenth Amendment Should Be Approved
        Under Section 364(c) Of The Bankruptcy Code

28.     To the extent that section 364 is applicable to the relief sought, the

agreement is fully appropriate under that statutory provision.  The requirement for obtaining

postpetition credit under section 364(c) is a finding, made after notice and a hearing, that the

debtors are "unable to obtain unsecured credit allowable under section 503(b)(1) of the [the

Bankruptcy Code]."  11 U.S.C. § 364(c).  This Court already made this finding in the DIP

Refinancing Order, which approved the Debtors' DIP Facility.  This finding is even more

justified today because the credit markets have deteriorated precipitously from the strong credit

environment that existed in January 2007 when the Court entered the DIP Refinancing Order.

Because the DIP Facility will remain in place, subject to the terms of the Accommodation

Agreement, as amended by the Accommodation Amendment, the Debtors should be permitted to

continue to grant the liens in accordance with section 364(c) of the Bankruptcy Code.

29.     Section 364(c) financing is appropriate when the trustee or debtor-in-

possession is unable to obtain unsecured credit allowable as an ordinary administrative claim.

See In re Ames Dep't Stores, Inc., 115 B.R. 34, 37-39 (Bankr. S.D.N.Y. 1990) (debtor must show

that it has made a reasonable effort to seek other sources of financing under sections 364(a) and

(b) of the Bankruptcy Code); In re Crouse Group, Inc., 71 B.R. 544, 549 (Bankr. E.D. Pa. 1987)

(secured credit under section 364(c)(2) of the Bankruptcy Code is authorized, after notice and

hearing, upon showing that unsecured credit cannot be obtained).

30.     Courts have articulated a three-part test to determine whether a debtor is

entitled to financing under section 364(c) of the Bankruptcy Code.  Specifically, courts look to

whether

(a)     the debtor is unable to obtain unsecured credit under section 364(b), i.e.,
        by allowing a lender only an administrative claim;

16

(b)     the credit transaction is necessary to preserve the assets of the estate; and

(c)     the terms of the transaction are fair, reasonable, and adequate, given the circumstances of the debtor-borrower and the proposed lender.

In re Ames Dep't Stores, 115 B.R. at 37-39.  This Court found that these conditions were met when it entered the DIP Refinancing Order.  Because the DIP Facility will remain in place, subject to the provisions of the Accommodation Agreement, as amended by the Sixteenth Amendment, this Court's prior findings should continue to apply.

(c)     The Sixteenth Amendment Should Be Approved
         Under Section 364(d) Of The Bankruptcy Code

31.     To the extent that section 364(d) of the Bankruptcy Code is implicated by the Sixteenth Amendment, the agreement is appropriate and should be approved under that provision.  Section 364(d)(1) provides that the Court may, after notice and a hearing, authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if–

(a)     the trustee is unable to obtain such credit otherwise; and

(b)     there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.

11 U.S.C. § 364(d)(1).  The determination of adequate protection is a fact-specific inquiry to be decided on a case-by-case basis.  In re Mosello, 195 B.R. 277, 288 (Bankr. S.D.N.Y. 1996).  "'Its application is left to the vagaries of each case . . . but its focus is protection of the secured creditor from diminution in the value of its collateral during the reorganization process.'"  Id. (quoting In re Beker Indus. Corp., 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986)).  In this case, the Debtors have already established that they are unable to obtain credit without priming liens.  The

17

Accommodation Amendment will not impair the priming lien structure under the DIP Facility, as amended, including the adequate protection provided to parties whose liens have been primed. Accordingly, to the extent that the Sixteenth Amendment provides for an extension of credit, the Debtors submit that such extension of credit meets the requirements of section 364(d)(1).

      (d)      The Amended DIP Facility Should
                  Be Accorded The Benefits Of Section 364(e)

      32.      Section 364(e) of the Bankruptcy Code provides that the "reversal or appeal of an authorization . . . to obtain credit or incur debt, or of a grant . . . of a priority or a lien, does not affect the validity of any debt so incurred, or any priority or lien so granted, to an entity that extended such credit in food faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and the incurring of such debt, or the granting of such priority or lien, were stayed pending appeal."  The Sixteenth Amendment was negotiated in good faith and no consideration is being provided to any party to, or guarantor of, obligations arising under the amended DIP Facility, other than as disclosed in the Sixteenth Amendment. Accordingly, the amended DIP Facility should be accorded the benefits of section 364(e) of the Bankruptcy Code for all the reasons set forth herein.

      (e)      Compliance With General Order No. M-274

      33.      The Debtors believe that the relief requested in this Motion and the notice to be provided are in compliance with the Guidelines for Financing Requests (the "Guidelines"), adopted under General Order No. M-274 of the Board of Judges for the Southern District of New York.  The Debtors do not believe that entering into the Sixteenth Amendment creates any incremental right that would trigger the application of the Extraordinary Provision (as defined in

the Guidelines) requirements beyond that which was already satisfied in the DIP Motion[15] and

approved by this Court pursuant to the DIP Refinancing Order.  Accordingly, the Debtors submit

that they have satisfied the Guidelines.

E.    Waiver Of The Ten-Day Stay Provided By Bankruptcy Rule 6004

34.    Bankruptcy Rule 6004(h)[16] provides:  "An order authorizing the use, sale,

or lease of property other than cash collateral is stayed until the expiration of 10 days after entry

of the order, unless the court orders otherwise."  The Debtors request that this Court waive this

ten-day stay because the Sixteenth Amendment will provide immediate relief necessary to

facilitate the Debtors' ability to negotiate with the Agent and the DIP Lenders and, potentially,

reach a consensual resolution of these chapter 11 cases.  Although the Court did not grant similar

relief from Bankruptcy Rule 6004(h) in granting the Accommodation Order, the Debtors submit

that the ability to effectuate the Sixteenth Amendment immediately would further the Debtors'

complex restructuring efforts, which they are pursuing within tight time constraints.  The Court

did grant similar relief in entering each of the Supplemental DIP Orders, other than the DIP

Accommodation Order, and other courts in this district have waived this ten-day stay upon a

showing of business need.  See In re Adelphia Commc'ns Corp., 327 B.R. 143, 175 (Bankr.

S.D.N.Y. 2005) ("As I find that the required business need for a waiver has been shown, the

order may provide for a waiver of the 10-day waiting period under Fed. R. Bankr. P. 6004(g).");

In re PSINet Inc., 268 B.R. 358, 379 (Bankr. S.D.N.Y. 2001) (requiring demonstration of "a

business exigency" for a waiver of the ten-day stay under Bankruptcy Rule 6004(h)).

---

[15]    Expedited Motion For Order Under 11 U.S.C. §§ 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1),
And 364(e) And Fed. R. Bankr. P. 2002, 4001 And 6004(g) (I) Authorizing Debtors To Obtain Post-Petition
Financing And (II) Authorizing Debtors To Refinance Secured Post-Petition Financing And Prepetition Secured
Debt dated December 18, 2006 (Docket No. 6180)

[16]    Formerly Bankruptcy Rule 6004(g).

<u>Notice Of Motion</u>

35.     Notice of this Motion will be provided in accordance with the proposed order to show cause submitted to the Court on July 20, 2009.  In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

WHEREFORE the Debtors respectfully request that the Court enter an order (i) ratifying and approving the Debtors' entry into the Sixteenth Amendment and related documents with the Participant Lenders thereto, (ii) authorizing the Debtors to pay fees and expenses in connection therewith, and (iii) granting the Debtors such other and further relief as is just.

Dated:       New York, New York
              July 20, 2009

SKADDEN, ARPS, SLATE, MEAGHER
 & FLOM LLP

By:    /s/ John Wm. Butler, Jr.
        John Wm. Butler, Jr.
        John K. Lyons
        Ron E. Meisler
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

- and -

By:    /s/ Kayalyn A. Marafioti
        Kayalyn A. Marafioti
Four Times Square
New York, New York 10036
(212) 735-3000

- and -

SHEARMAN & STERLING LLP

By:    /s/ Douglas P. Bartner
        Douglas P. Bartner
        Andrew V. Tenzer
        Michael S. Baker
599 Lexington Avenue
New York, New York  10022
(212) 848-4000

Attorneys for Delphi Corporation, et al.,
     Debtors and Debtors-in-Possession