June 15, 2009

Honorable Robert D. Drain
Docket Number 05-44481 (RDD)
United States Bankruptcy Judge-Southern District of NY
One Bowling Green
New York, NY 10004-1408

Subject: Docket Number 05-44481 (RDD) Severance Payments for James Klenk

Dear Judge Drain,

On June 1, 2009, Master Disposition Agreement, Article 9.5.11 was submitted to the Court. This article declares that severance payments will be terminated upon the closing date (emergence date) of Delphi to any former salaried employees receiving such payments. I am one of those employees receiving severance payments that were separated from Delphi at the start of this year. I must therefore object to Article 9.5.11 as submitted. In November, 2008, I was presented with a Delphi Separation Allowance Plan Release of Claims which I was requested to sign. It detailed my obligations and Delphi obligations with regard to my separation. I was to receive severance payments totaling $94,140.00 over a period of 12 months beginning in January, 2009, and ending December, 2009. Delphi was to receive from me a waiver of certain rights. I signed this document in November, 2009, and Nancy Savage signed it as a representative of Delphi Human Resources. My separation began January 1, 2009, after working at Delphi 32 years.

It is my opinion that I have a legal contract that was signed during bankruptcy between Delphi and me. I was one of the first salaried groups that did not receive a lump sum payment on the separation date but was presented with a distribution timetable for the separation allowance over a 12 month period. I was told this was done to spread the cost over a year's time to assist Delphi.

The severance payments are a contract liability for Delphi. They are not a Delphi provided benefit. This contract was signed during bankruptcy, not prior. I waived certain rights to receive the severance payments and expect Delphi to honor the agreement. There is no mention on the signed agreement of Delphi's right to change such contract at any time. If Delphi had planned previously to not honor my contract (as well as many others forced to leave Delphi during the first quarter of this year) with emergence from bankruptcy, I would think this could be a case of fraud on their part. Perhaps they changed the severance distribution policy to a monthly distribution schedule (instead of a lump sum) with the thought of voiding their contract responsibility with emergence. Why are the executive contracts signed during bankruptcy valid with emergence and mine is not?

To rid them of this liability prior to emergence, Delphi should pay the balance due each effected former employee on a monthly severance payment plan with a lump sum payment.

I am still in the process of updating my skills and looking for new employment since my separation from Delphi. Please consider my objection. I have attached a copy of the Separation Allowance Plan Release of Claims as presented to me. The signed document is in Delphi's hands.

Thank you,

*James A. Klenk*

James A. Klenk
3869 Feather Heights Court
Dayton, OH 45440
Phone: 937-848-2764

Att: 1 Separation Allowance Plan Release of Claims

**Delphi Corporation**
**Separation Allowance Plan Release of Claims**

I have been separated from my employment with Delphi Corporation ("Delphi") effective January 1, 2009, under terms which make me eligible for benefits under the Separation Allowance Plan (the "Plan"). These benefits include Severance Pay in the amount of $94,140.00, less applicable deductions to be paid semi monthly commencing on January 1, 2009, Other Transition Assistance, comprised of outplacement assistance and $2000 which I may, at my discretion, use to help pay for the continuation of health care coverage through Delphi; provided, however, that, if I am eligible to retire with corporate contributions for health care in retirement at the time of my separation, I am not eligible for this $2,000. I acknowledge that the consideration provided for in this Release of Claims is in excess of anything I would otherwise be entitled to receive absent my signing this Release of Claims.

In consideration for receiving these benefits, I, for myself, family, heirs, and representatives, release, remise, and forever discharge Delphi, General Motors Corporation, and their respective officers, shareholders, subsidiaries, affiliates, joint ventures, employee benefit plans, agents and employees, successors, and assigns from any and all manner of actions, causes of actions, suits, proceedings, damages, costs, and claims whatsoever in law or in equity (collectively "Claims"), which I have or may have based upon or in connection with my employment with or separation from Delphi. This release specifically includes all Claims under the Employee Retirement Income Security Act of 1974, as amended, which regulates employee benefit plans; Title VII of the Civil Rights Act of 1964, as amended, which prohibits discrimination in employment based on race, color, national origin, religion, or sex; the Americans with Disabilities Act, which prohibits discrimination in employment based on disability; the Age Discrimination and Employment Act, which prohibits discrimination in employment based on age; the Equal Pay Act, which prohibits wage discrimination; state fair employment practices or civil rights laws; and any other federal, state or local law, order, or regulation or the common law relating to employment or employment discrimination, including those which preclude any form of discrimination based on age. This includes, without limitation, Claims for breach of contract (either express or implied), slander, libel, defamation, and wrongful discharge. This release does not apply to Claims that are not subject to waiver under applicable law. This covers Claims I know about and Claims I do not know about; but does not cover Claims that arise after I separate from Delphi.

I understand that, by accepting benefits under the Plan, I will no longer be entitled to receive any disability benefits (short-term, long-term, or total and permanent) under the Delphi Life and Disability Benefits Program for Salaried Employees of the Delphi Retirement Program for Salaried Employees relating to any disability that arose or arises at any time, and if I am currently receiving or am eligible to receive disability benefits as of the effective date of this Release of Claims, I understand that such benefits or eligibility for such benefits will cease upon the effective date of this Release of Claims.

I have been given a minimum of forty-five (45) calendar days to review this Release of Claims and a written notice of the ages and job titles of all individuals in the same job classification or organizational unit who were (i) selected and (ii) who were not eligible or not selected for separation. I understand that I may use as much of this forty-five (45) day period as I wish. I have been advised to consult an attorney before signing this Release of Claims, but understand that whether or not I do so is exclusively my decision. I understand that I may revoke this Release of Claims within seven (7) days of my signing it. To be effective, the revocation must be in writing and must be received by Nancy Savage, before the close of business on the seventh (7th) day after I sign this Release of Claims.

I acknowledge that Delphi has made no prior representations, promises, or agreements relating to my employment and separation contrary to this Release of Claims. I understand that I am not eligible for benefits Delphi provides under any other separation program and that I will not be eligible for any enhancements Delphi may subsequently make to the benefits provided under the Plan. This Release of Claims constitutes the entire and only understanding between Delphi and me regarding my separation. If any provision or portion of this Release of Claims is held unenforceable or invalid, all remaining provisions of this Release of Claims remain in full force and effect.

BY SIGNING BELOW, I ACKNOWLEDGE THAT I HAVE READ THIS RELEASE OF ALL KNOWN AND UNKNOWN CLAIMS. I AFFIRM THAT I UNDERSTAND AND VOLUNTARILY AGREE TO ITS TERMS.

Signed: _____
James A Klenck

Social Security Number (last 4): 0993

Dated: November 9, 2008

Accepted: _____
Delphi Corporation

Revised October 2008

Page 7 of 9

- Severance Payments will begin the first regularly scheduled payroll following the date of separation if Human Resources received the signed Release of Claims and the seven-day revocation period has expired prior to the payroll processing cutoff. Otherwise, the Severance Payments will begin on the first available payroll processing date following receipt of the signed Release of Claims and expiration of the seven-day revocation period
- Payments may be reduced by any amount owed by the Employee to the Corporation.
- Severance Payments are issued as payroll live check, direct deposit will discontinue

### Other Transition Assistance

Other Transition Assistance consists of (1) the opportunity to utilize Delphi-provided outplacement services to assist employees in obtaining employment outside the Corporation and (2) a $2,000 payment included in the last regularly scheduled payroll check which the Employee, at his or her discretion, may use toward COBRA health care continuation coverage through Delphi if the employee is not eligible to retire with Corporate contributions for health care in retirement at the time of the separation. Employees who are eligible to retire with corporate contributions for health care in retirement at the time of the separation are not eligible for this $2,000 payment. The local HR Representative will assist in scheduling outplacement service. Use of the outplacement service should commence within sixty days of separation and will generally be limited to six months in duration.

- Eligible Employees who sign a Release of Claims will receive Severance Pay and Other Transition Assistance.
- Eligible Employees who do not sign a Release of Claims will not be eligible for Other Transition Assistance.

### Vacation

- During Transformation employees impacted by involuntary programs will vest vacation on a monthly basis. Employees may use or receive payment for vacation based on last month worked. Example: Separation effective 5/1/2008, vacation vested four (4) months or 33.3%. Vacation for an employee with 5 yrs service = 120 hours, (120 x .333=39.96) hours vested, round to nearest whole or 40 hours of entitlement. Employees eligible for the four (4) additional days, (hired before 12/31/2000) will vest under the same criteria above.
- Retirement-eligible employees will receive 100% of their annual vacation entitlement, including additional vacation days (if length of service date is on or before 12/31/2000), if effective date of retirement is on or after March 1. For retirements effective February 1, the maximum allowable vacation days is equal to number of working days for the month of January.
- Employees impacted by the involuntary programs will be allowed to revoke their deductions for purchased days with their final regularly scheduled paycheck. Employees may use or receive payment for days purchased through payroll deductions; however no payment may be received after the plan year. Employees who have used more days than deducted through payroll will have the remaining dollars deducted from their last regularly scheduled paycheck. Vested vacation must be utilized prior to purchase days.

### Company Car Allowance

- Company car allowances will be discontinued at the end of the pay period in which the last day of work occurred.

### Tuition Assistance

- Separated employees who have started a class prior to their employment being severed will be able to use Tuition Assistance for the class.
- Separated employees who are not in class prior to their employment being severed may not use Tuition Assistance.

Revised October 2008                                                                                           Page 3 of 9

## POLICY PROVISIONS

### Eligibility

Separation Allowance Plan benefits are payable to U.S. employees compensated as regular or flexible service salaried employees, who are separated from employment as the result of an Eligible Termination which includes without limitation:

- Mutually Satisfactory Release;
- Certain Special Separations which may include:
  - The closing of an office or business location;
  - A reduction in force;
  - Downsizing;
  - Restructuring, reorganization or re-engineering of a business group, unit or department;
  - Job elimination; or
  - Other circumstances Delphi determines which may or may not be characterized as a Limited Program of Terminations

Separation Allowance Plan benefits are not payable in the event of employment termination as a result of:
- Retirement;
- Quit (which includes an employee's failure to accept a suitable offer of employment);
- Discharge (for personal misconduct);
- Voluntary termination of employment unless the termination results from participation in a special incentive separation program which treats the separation as an Eligible Termination.
- Transfers between the Corporation and any of its wholly owned or substantially wholly owned domestic and foreign subsidiaries or other entity owned by Delphi;
- Separation arising out of outsourcing, the sale of a corporate unit, merger or other combination, spin-off, reorganization, liquidation, dissolution, or other winding up involving Delphi where the employee continues or is offered the opportunity to continue employment;
- A court decree;
- Death;
- Release due to unsatisfactory performance while in the Orientation and Development period;
- Final Release.

### Severance Pay

Eligible Employees who <u>do not</u> sign a Release of Claims will be eligible to receive one (1) month's base pay.

Eligible Employees who <u>sign and do not</u> revoke a Release of Claims will be eligible to receive Severance Pay according to the following schedule:

| Length of Service | Months of Severance Pay |
|---|---|
| 0 but less than 5 | 3 months |
| 5 but less than 10 | 4 months |
| 10 but less than 15 | 6 months |
| 15 but less than 20 | 8 months |
| 20 but less than 25 | 10 months |
| 25 or more | 12 months |

Severance Pay will be:
- Based on the employee's unbroken length of service, calculated on full, 12 month, years of service.
- Calculated on the last monthly base salary except for those employees returning to "regular active" from "flexible service" status. An Employee who, at the time he or she is notified of their Eligible Termination, was a "flexible service" employee for less than 60 days and who, immediately prior to being classified "flexible service", was a "regular active" employee will be returned to "regular active" status for purposes of determining Severance Pay.
- Paid in semi-monthly payments based on the above table
- Taxable

Revised October 2008

Page 2 of 9