**Hearing Date And Time: July 23, 2009 at 10:00 a.m.**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr.
Ron E. Meisler

   - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:   (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |  |
|---|---|---|
| In re | : | Chapter 11 |
| DELPHI CORPORATION, et al., | : | Case No. 05-44481 (RDD) |
|  | : | (Jointly Administered) |
| Debtors. | : |  |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

EMERGENCY MOTION FOR ORDER UNDER
SECTIONS 105(a) AND 362 OF THE BANKRUPTCY CODE (I) ENFORCING
AUTOMATIC STAY OR, IN ALTERNATIVE (II) EXTENDING AUTOMATIC STAY
PROVISIONS OF SECTION 362 OF THE BANKRUPTCY CODE TO CERTAIN OF
<u>ACTIONS AGAINST THE DEBTORS' OFFICERS AND DIRECTORS</u>

("EMERGENCY AUTOMATIC STAY ENFORCEMENT MOTION")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this emergency motion (the "Motion") for an order under 11 U.S.C. §§ 105 and 362 (i) enforcing the automatic stay or, in the alternative, (ii) extending the automatic stay provisions of section 362 of the Bankruptcy Code to stay all litigation associated with the Complaint For Equitable Relief filed on July 16, 2009 (the "Nonbankruptcy Complaint")[1] in the United States District Court For The Eastern District Of Michigan, Southern Division (the "Michigan District Court") by Dennis Black, Charles Cunningham, and the Delphi Salaried Retirees Association (together, the "DSRA") against Craig G. Naylor, David N. Farr, Martin E. Welch, and James P. Whitson (the "Delphi Directors and Officers").[2] In support of this Motion, the Debtors respectfully represent as follows:

Preliminary Statement

1.      The Debtors are bringing this Motion because the DSRA, which has sought to intervene in these cases and has objected the Debtors' Modified Plan,[3] has simultaneously filed the Nonbankruptcy Complaint and sought a TRO in the Michigan District Court seeking to prevent the Debtors from cooperating with a PBGC initiated termination of the Salaried Plan. Although the DSRA was careful not to name the Debtors

---

[1]   A copy of the Nonbankruptcy Complaint, as attached by Plaintiff's letter sent to this Court dated July 17, 2009, is attached hereto as Exhibit A.

[2]   The Complaint is filed against three members of the Delphi Board of Directors who the DSRA allege are named fiduciaries under the Delphi Retirement Program for Salaried Employees (the "Salaried Plan") and Delphi's Chief Tax Officer.

[3]   Capitalized terms not defined in this Preliminary Statement are defined below.

2

in the Nonbankruptcy Complaint filed in the Michigan District Court, there is a strong identity of interest between the Debtors and the Delphi Directors and Officers. The DSRA is trying to do indirectly what it cannot do directly to in a bold attempt to exercise control over property of the Debtors estates by blocking the PBGC Settlement Agreement, which, accordingly, threatens confirmation and substantial consummation of the Debtors' Modified Plan and the Master Disposition Agreement. The automatic stay therefore applies, or at the least should be extended, to bar the Michigan District Court Litigation.

## Background

B.    The Chapter 11 Filings

2.    On October 8 and 14, 2005, the Debtors filed voluntary petitions in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as then amended (the "Bankruptcy Code"). The Debtors continue to operate their businesses and manage their properties as debtors-in-possession under Bankruptcy Code sections 1107(a) and 1108.

3.    On October 3, 2008, Delphi filed a motion (Docket No. 14310) (the "Plan Modification Motion") under 11 U.S.C. § 1127 for an order approving (i) certain modifications to the Confirmed Plan and December 10 Disclosure Statement and (ii) related procedures for re-soliciting votes on the Confirmed Plan, as modified. In light of the unprecedented decline in global automotive production volumes and the deepening of the crisis in global debt and equity markets, the Debtors adjourned the hearing on the Plan Modification Motion several times. On June 1, 2009 the Debtors filed a supplement to the Plan Modification Motion, supplementing the relief sought in that motion (the "Motion Supplement"). Among other things, the Motion Supplement sought approval of

(i) certain modifications to the Confirmed Plan (the "Modified Plan"), (ii) a supplement to the Disclosure Statement (the "Disclosure Statement Supplement"), and (iii) procedures for re-soliciting votes on the Modified Plan. The Motion Supplement was approved with modifications by order entered June 16, 2009 (the "Modification Procedures Order") and was supplemented and amended, with respect to procedures through which proposals for alternative transactions to the Master Disposition Agreement (defined below) would be evaluated and administered, by orders entered June 29, 2009[4] (the "Supplemental Modification Procedures Order") and July 17, 2009 (the "Second Supplemental Modification Procedures Order") (Docket No. 18352). Pursuant to the Modification Procedures Order, the final hearing on approval of the Modified Plan is scheduled for July 23, 2009.

      4.      This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

      5.      The statutory predicates for the relief requested herein, solely as between the Debtors and the Creditors' Committee, are section 105 and 362 of the Bankruptcy Code, as amended and in effect on October 8, 2005.

---

[4] See Order Amending and Supplementing (i) Order (A)(I) Approving Modifications to Debtors' First Amended Plan of Reorganization (As Modified) and Related Disclosures and Voting Procedures and (II) Setting Final Hearing Date to Consider Modifications to Confirmed First Amended Plan of Reorganization and (B) Setting Administrative Expenses Claims Bar Date and Alternative Transaction Hearing Date (Docket No. 17032) and (ii) the Protective Order Governing Production and Use of Confidential and Highly Confidential Information in Connection with (A) Supplement to Plan Modification Approval Motion and (B) Supplement to GM Arrangement Fourth and Fifth Amendment Approval Motion (Docket No. 16920), dated June 29, 2009 (Docket No. 17376).

C.  Postconfirmation Matters

6.  On June 1, 2009, while facing the most difficult economic period in decades with the most precipitous drop in U.S. vehicle sale volumes in half a century, Delphi reached an agreement to effect its emergence from chapter 11 through a transaction with Parnassus Holdings II, LLC ("Parnassus"), an affiliate of Platinum Equity, and with the support of GM Components Holdings LLC ("GM Components"), an affiliate of GM. In the exercise of the Debtors' fiduciary responsibilities to maximize the value of their estates for the benefit of all of their stakeholders, the Debtors executed an agreement (the "Master Disposition Agreement") to reflect the foregoing transactions through a plan of reorganization. The agreement and the changes to the Confirmed Plan were filed as part of the Motion Supplement, on June 1, 2009.

7.  On June 16, 2009, the Bankruptcy Court entered the Modification Procedures Order which, among other things, authorized the Debtors to commence solicitation of votes on the Modified Plan. Under the Modified Plan, instead of having a plan investor sponsoring their plan and emerging as the majority owner of the continuing business enterprise, however, Delphi has agreed to contemporaneously effectuate transactions through which Parnassus or another successful bidder at the Auction (as defined below) will operate Delphi's U.S. and non-U.S. businesses going forward with emergence capital and capital commitments of approximately $3.6 billion and without the labor-related legacy costs associated with the North American sites that, together with Delphi's global Steering business, are being acquired by GM Components Holding LLC. A new company, DPH Holdings Co., will emerge as a reorganized entity that retains

certain other residual non-core and non-strategic assets and liabilities that are expected to be divested over time.

8. If the Debtors are unable to obtain confirmation of the Modified Plan, the Debtors have committed to seeking approval of the transactions set forth in the Master Disposition Agreement pursuant to a sale under section 363 of the Bankruptcy Code independent of and not pursuant to, or contingent on, any plan of reorganization. On July 2, 2009, the Debtors filed an agreement (Docket No. 17558) to implement a sale transaction under section 363 of the Bankruptcy Code as required by the Master Disposition Agreement. The Modification Procedures Order, as subsequently amended by the Third Supplemental Modification Procedures Order (Docket No. 18551), also established July 29, 2009 as an alternative sale hearing date, to be used, only if necessary, to consider the sale of substantially all the Debtors' assets pursuant to section 363 of the Bankruptcy Code.

9. Consummation of these transactions through the Modified Plan, which embodies concessions made by parties-in-interest to resolve these chapter 11 cases, will provide for the satisfaction of all of the Debtors' administrative claims, secured claims, and priority claims and a potential distribution to holders of general unsecured claims. Moreover, Delphi's emerging businesses will continue to develop technology and products and produce them for the benefit of their customers either under the guidance of Platinum Equity or in conjunction with an alternative transaction, if any. In the meantime, Delphi will marshal all of its resources to continue to deliver high-quality products to its customers globally. Additionally, the Company will seek to preserve and continue the

strategic growth of its non-U.S. operations and maintain its prominence as one of the world's premier auto suppliers.

D. <u>Delphi's Salaried Plan And The PBGC Settlement Agreement</u>

10. The Debtors' goal throughout these Chapter 11 Cases was to preserve the benefits accrued under the existing defined benefit U.S. pension plans (including the Subsidiary Plans) for both the Debtors' hourly and salaried workforce. The Debtors had originally intended to assume and continue the Pension Plans on a frozen basis upon emergence from chapter 11.

11. Despite the Debtors' effort to preserve their other pension plans, the Debtors were unable to secure sufficient capital to achieve that objective. Several of the Debtors pension plans, including their Salaried Plan, are severely underfunded. In connection with the Salaried Plan, the Pension Benefit Guaranty Corporation (the "PBGC") has asserted that the Debtors and certain non-U.S. affiliates of the Debtors are liable for contributions due to the plan under the Internal Revenue Code ("IRC") and ERISA. 26 U.S.C. §§ 412, 430(a); 29 U.S.C. §§ 1082, 1083 ("Minimum Funding Obligations").

12. Accordingly, the PBGC has filed with the Recorder of Deeds for the District of Columbia certain Notices Of Federal Lien Under 26 U.S.C. § 412(n) and/or § 430(k) (the "412(n)/430(k) Lien Notices") with respect to liens that the PBGC asserts against certain non-U.S. affiliates of the Debtors on account of unpaid Minimum Funding Obligations in connection with, among other pension plans, the Salaried Plan.

13. To bring about a global resolution of the Debtors' pension issues and the claims asserted by the PBGC, the Debtors entered into a settlement with the PBGC on July 21, 2009 (the "PBGC Settlement Agreement").[5]

14. The release of the PBGC's purported rest of world liens is a condition to the effectiveness of the Master Disposition Agreement.[6] Sections 10.3.4 and 10.4.4 of the Master Disposition Agreement provides that "[t]he Pension Benefit Guaranty Corporation shall have agreed to remove any Encumbrances of the Pension Benefit Guaranty Corporation" on each of the buyer's acquired assets and the assets of the securities of the companies the buyers are purchasing pursuant to the Master Disposition Agreement.[7] The PBGC Settlement Agreement, together with the GM-PBGC Agreement, satisfies these conditions upon the effectiveness of those agreements.

15. The PBGC Settlement Agreement, however, must be approved by the Bankruptcy Court and attached as an exhibit to the Modified Plan. (See Article 7.17(c) of the Modified Plan ("Pursuant to section 1123(b)(3) of the Bankruptcy Code and

---

[5] See Notice of Filing of Settlement Agreement Between Delphi Corporation and the Pension Benefit Guaranty Corporation ("Notice of Filing of Delphi-PBGC Settlement Agreement") (Docket No. 18559), dated July 21, 2009.

[6] Article 12.2(b) of the Modified Plan provides that for the Modified Plan to go effective, "all conditions precedent to the consummation of the Master Disposition Agreement shall have been waived or satisfied in accordance with the terms thereof." Likewise, Article 12.2(d) provides that "The Debtors or the Reorganized Debtors, as the case may be, shall have entered into the Delphi-PBGC Settlement Agreement and all conditions precedent to the consummation thereof shall have been waived or satisfied in accordance with the terms thereof."

[7] Under the Master Disposition Agreement, " 'Encumbrance' means: (i) with respect to the Sale Securities, any voting trust, shareholder agreement, proxy, preemptive right, right of first refusal, or other similar restriction; and (ii) with respect to the Acquired Assets (including the Sale Securities or any other shares of capital stock owned by Sellers, Buyers or their respective Affiliates) or any other property or asset, any lien, charge, claim, pledge, security interest, conditional sale agreement or any other title retention agreement, lease, mortgage, security interest, option or other encumbrance (including the filing of, or agreement to give, any financing statement under the Uniform Commercial Code of any jurisdiction or a similar law relating to security interests in and over Personal Property)." (emphasis added).

8

Bankruptcy Rule 9019, this Plan constitutes the Debtors' request to authorize and approve the settlement with the PBGC . . . attached hereto substantially in the form of Exhibit 7.17.").) Without approval of the PBGC Settlement Agreement, the Modified Plan cannot be confirmed, much less go effective.

E. The DSRA's Plan Objection And Motion To Intervene In These Cases

16. On July 15, 2009, the day before the DSRA commenced the Michigan District Court Litigation, DSRA filed an objection (Docket No. 18277) (the "Objection") to the Debtors' Modified Plan and a Motion Of Dennis Black, Charles Cunningham, And The Delphi Salaried Retiree Association Under Rule 2018(a) Of The Federal Rules Of Bankruptcy Procedure For An Order Authorizing Intervention Into This Case (Docket No. 18303) (the "Motion to Intervene") in this Court. The Objection and Motion to Intervene make many of the same arguments asserted in the Michigan District Court Litigation. In particular, the DSRA objects to the Modified Plan because it contemplates the termination of the Salaried Plan by the PBGC. (See Objection at ¶¶ 14-16) The Objection also asserts that (i) the Delphi Directors and Officers are "under an inherent conflict of interest" as they seek to enter into an agreement consenting to the PBGC involuntarily terminating the Salaried Plan and (i) that the termination could leave the plan beneficiaries "without any rights or recourse to contest termination."[8] (Objection

---

[8] The DSRA's argument is both without merit. The decision to terminate the Salaried Plan is a decision that Delphi is entitled to make under the terms of the Salaried Plan. See Salaried Plan § 6(a) (Exhibit A at p. 146). In making this decision, Delphi acts in its "settlor" or non-fiduciary capacity. See, e.g., Curtiss-Wright v. Schoonejongen, 514 U.S. 73, 78 (1995); Lockheed Corp. v. Spink, 517 U.S. 882, 890 (1996); Hughes Aircraft Company v. Jacobson, 525 U.S. 432, 444 (1999). Accordingly, termination of the Salaried Plan does not raise the fiduciary issues described in the complaint. Pursuant to its authority under section 6 of the Salaried Plan, Delphi's board of directors has directed the plan administrator, which is Delphi, to execute a termination and trusteeship agreement if such an agreement is proposed by PBGC. Appointing an independent fiduciary to consider whether the Salaried Plan should be terminated

9

at ¶ 17.) The Debtors intend to respond on the merits to the arguments set forth in the Objection in their papers filed in advance of the July 29, 2009 hearing to consider confirmation of the Modified Plan.

F. The Michigan District Court Complaint

17. As set forth above, on July 16, 2009 the DSRA filed their Nonbankruptcy Complaint in the Michigan District Court against the Delphi Directors and Officers. The primary claim in the Nonbankruptcy Complaint is a challenge to Delphi's right to enter into a termination and trusteeship agreement with the PBGC under 29 U.S.C. § 1342 with regard to the Salaried Plan. (See Nonbankruptcy Complaint at ¶ 41.) DSRA have alleged that entering into an agreement with the PBGC to effectuate a termination of the Salaried Plan pursuant to 29 U.S.C. § 1342 constitutes a breach of fiduciary duty on the part of the Delphi Directors and Officers. (Id. at ¶ 60.) To address this alleged breach, DSRA has asked the Michigan District Court to enjoin the Delphi Directors and Officers from entering into any agreement with PBGC to terminate the Salaried Plan, to remove them as named fiduciaries under the Salaried Plan, and to appoint an independent fiduciary to protect the interests of the Salaried Plan participants. (Id. at ¶ 61.)

18. Although DSRA concedes that termination of a pension plan is normally a "settlor" decision not subject to fiduciary obligations, they contend that "the plan administrator's selection of a *particular method of plan termination* is a fiduciary function." (Id. at ¶ 40.) By agreeing to enter into a termination and trusteeship agreement with the PBGC, DSRA argues, Delphi has relieved the PBGC of its obligation to prove in

---

as a fiduciary matter is inconsistent with Supreme Court authority establishing that the decision to terminate a pension plan is not a fiduciary decision.

10

federal court that it has compiled an adequate administrative record and that the requirements for involuntary termination under 29 U.S.C. § 1342 have been satisfied. (Id. at ¶ 57.) The Nonbankruptcy Complaint also asserts a secondary claim that the fiduciaries have failed to disclose "significant" information regarding the planned termination to plan participants. (See Nonbankruptcy Complaint at ¶ 59.)

G. The DSRA Seeks A TRO In The Michigan Court

19. On July 21, 2009, the DSRA filed a motion for a temporary restraining order and preliminary injunction (the "Nonbankruptcy TRO Motion")[9] in the Michigan District Court seeking an order "preventing Defendants from negotiating, signing, or further effectuating any agreement with the [PBGC] to summarily terminate their [Salaried Plan]." (See Nonbankruptcy TRO Motion at 1.)

20. The Debtors' response to the Nonbankruptcy TRO Motion is due on July 23, 2009 at 4 p.m. (prevailing Eastern time). Upon information and belief, the hearing before the Michigan District Court to consider the Nonbankruptcy TRO Motion is tentatively scheduled for the morning of July 27, 2009. The DSRA seeks a TRO on the Monday before Delphi's Plan Modification hearing that would enjoin the Debtors' directors and officers "from negotiating, signing, or further effectuating any agreement with the [PBGC] to summarily terminate Plaintiffs' pension plan under the Employment Retirement Income Security Act . . . until further order of [the district] Court." (See Exhibit B.)

---

[9] A copy of the Nonbankruptcy TRO Motion and proposed order is attached hereto as Exhibit B.

<u>Relief Requested</u>

21.     The Debtors seek entry of an order enforcing, or in the alternative, extending the automatic stay to the litigation commenced against certain Delphi Directors and Officers in the Michigan District Court (the "Michigan District Court Litigation").

<u>Basis For Relief</u>

22.     The automatic stay applies to the Michigan District Court Litigation against the Delphi Directors and Officers because there is a strong identity of interest between the Debtors and the Delphi Directors and Officers. <u>See</u> 11 U.S.C. § 362(a)(3). DSRA is trying to do indirectly what they cannot do directly, i.e., enjoin the Debtors from consummating their agreement with the PBGC that would result in the termination of the Salaried Plan. Although the assets of the Salaried Plan are not assets of the bankruptcy estate, the Debtors' rights as Plan Administrator are property of the estate. The right of the Debtors to decide whether the Delphi Directors and Officers should remain Named Fiduciaries under the Salaried Plan, or whether anyone should be appointed in their place, is also property of the estate. The automatic stay therefore applies to the Michigan District Court Litigation to the extent it seeks to enjoin the agreement with the PBGC or replace the Delphi Directors and Officers. The Debtors seek immediate relief on this ground.

23.     The automatic stay also applies to the remainder of the Nonbankruptcy Complaint, which seeks a broad injunction against any act or practice that violates ERISA or the Salaried Plan. In addition to being inappropriate because such an injunction would merely require compliance with applicable law, a duty owed by all, the intimidating and harassing effect of such an injunction would interfere with the Debtors' operation of their business as debtors in possession and create a situation where the

conduct of the individuals though which the Debtors act would potentially be subject to conflicting orders of different courts. This Bankruptcy Court is the court that oversees the Debtors' conduct of their chapter 11 cases, including its internal corporate governance.

24. The Nonbankruptcy Complaint, although based on what the Debtors believe to be misunderstandings of (i) the PBGC Settlement Agreement, (ii) the involvement of the Delphi Directors and Officers in consenting to a termination of the Salaried Plan, and (iii) well settled ERISA law, nevertheless represents a significant risk to the Debtors' reorganization efforts. In the event the Michigan District Court rules in favor of the DSRA, the Debtors' already tight timetable for executing an emergence transaction would be jeopardized.

25. Furthermore, on July 15, 2009, the day before the DSRA filed their Nonbankruptcy Complaint in the Michigan District Court, DSRA filed both their Motion and their Objection to the Modified Plan in this Court. By filing their Motion in the this Court before filing their Nonbankruptcy Complaint in the Michigan District Court, the DSRA have elected to proceed in New York and the "second action" commenced in Michigan should be stayed pending the outcome in the proceedings before this Court.

26. Although the Debtors do not believe that the actions brought against the Delphi Directors and Officers in the Michigan District Court prohibit the Debtors from consenting to the termination of the Salaried Plan, the relief sought by the DSRA is aimed at prohibiting the confirmation of the Modified Plan and jeopardizes the ability of the Debtors to close the transactions set forth in the Master Disposition Agreement. In the event this Court finds that the automatic stay does not apply to the Michigan District Court

Litigation, the stay should be extended because "unusual circumstances" exist such that the Debtors are the real party defendant and a judgment against the Delphi Directors and Officers would in effect be a judgment or finding against the Debtors. See A.H. Robins Co. v. Piccinin, 788 F.2d 994, 999, cert. denied, 479 U.S. 876 (4th Cir. 1986); In re Lomas Financial Corp. v. Northern Trust Company, 117 B.R. 64, 68 (S.D.N.Y. 1990).

Applicable Authority

H.  The Automatic Stay Should Bar The Continuation Of The Michigan District Court Litigation

        27.    The automatic stay imposed by section 362 of the Bankruptcy Code is one of the most fundamental and significant protections that the Bankruptcy Code affords a debtor. Midlantic Nat'l Bank v. N.J. Dep't of Envt'l. Prot., 474 U.S. 494, 503 (1986); see also In re Drexel Burnham Lambert Group, Inc., 113 B.R. 830, 837 (Bankr. S.D.N.Y. 1990) ("[A]utomatic stay is key to the collective and preservative nature of a bankruptcy proceeding."). The automatic stay broadly extends to all matters that may have an effect on a debtor's estate, enabling bankruptcy courts to ensure that the debtor has the opportunity to rehabilitate and reorganize its operations. See Manville Corp. v. Equity Sec. Holders Comm. (In re Johns-Manville Corp.), 801 F.2d 60, 62–64 (2d Cir. 1986); see also Fid. Mortgage Investors v. Camelia Builders, Inc., 550 F.2d 47, 53 (2d Cir. 1976) ("Such jurisdiction is necessary 'to exclude any interference by the acts of others or by proceedings in other courts where such activities or proceedings tend to hinder the process of reorganization.'") (citation omitted).

        28.    The Debtors' rights as Plan Administrator are property of the estate. The right of the Debtors to decide whether the Delphi Directors and Officers should remain

Named Fiduciaries under the Salaried Plan, or whether anyone should be appointed in their place, is also property of the estate. Moreover, the Michigan District Court Litigation implicates section 362(a)(3) of the Bankruptcy Code because it seeks to prohibit the Debtors from concluding their settlement with the PBGC, without which the Modified Plan cannot be confirmed, much less go effective.

29. Pursuant to sections 105(a) and 362(a) of the Bankruptcy Code, a Bankruptcy Court may properly conclude that proceedings against non-debtor codefendants are stayed in the presence of "unusual circumstances," such as where there is such an identity between the debtor and the third party defendant, that the debtor may be said to be the real party defendant and that the judgment against the third party defendant will in effect be a judgment or finding against the debtor. Queenie Ltd. v. Nygard Int'l, 321 F.3d 282, 288 (2d Cir. 2003) (noting that automatic stay applies to litigation against a non-debtor include actions where "there is such an identity between the debtor and the third party defendant that the debtor may be said to be the real party defendant") (citing A.H. Robins Co. v. Piccinin, 788 F.2d 994, 999, cert. denied, 479 U.S. 876 (4th Cir. 1986)); In re Lomas Financial Corp. v. Northern Trust Company, 117 B.R. 64, 68 (S.D.N.Y. 1990). Polytop Corp. v. Globe Plastics, Inc., 31 B.R. 226 (D.R.I. 1983) (concluding that state court action against employee of debtor violated the automatic stay).

30. Moreover, as this Court held in an earlier proceeding in these cases:

> In my view, where there is an identity of interest, based on Queenie v. Nygard, and Lomas, and North Star, and the like, the debtor does not have to show that the continued prosecution of the litigation would otherwise adversely affect the estate such as by distracting management or potentially imposing a serious monetary burden on the estate. That is because I don't believe that the Court

15

>should consider, where there's an identity of interest, a preliminary injunction type of analysis but simply satisfy itself that there is an identity of interest, or not. Because if the plaintiff is doing indirectly what it can't do directly, I believe 11 U.S.C. Section 362(a)(3) is implicated.

See Modified Bench Ruling In Reference To Order Denying Motion By Wachovia Bank, National Association, For Relief From Automatic Stay To Proceed With Litigation Against Larry Graves, A Delphi Employee, In The Circuit Court Of The Second Judicial District Of Hinds County Mississippi, Entered on May 22, 2007 (Docket No. 7995).

31. All of these facts satisfy the "unusual circumstances" standard set forth in A.H. Robins and adopted by Courts in this Circuit. A judgment against the Delphi Officers and Directors will in effect be a judgment against Delphi as a result of its immediate adverse economic impact to the Debtors' estates.

32. Accordingly, the Debtors submit that the relief requested herein is in the best interests of the Debtors, their estates, and other parties-in-interest.

### Notice

33. Notice of this Motion has been provided upon the parties and in the manner set forth in the Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And Administrative Procedures, entered March 20, 2006 (Docket No. 2883), and the Fourteenth Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And Administrative Procedures, entered May 1, 2009 (Docket No. 16589). The Debtors communicated to counsel for DSRA their intention to file this Motion and served the Motion upon counsel for DSRA by email, fax, and by hand simultaneously with filing. In light of the present

16

circumstances and given the nature of the relief requested, the Debtors submit that no other or further notice is necessary under section 102(1) of the Bankruptcy Code.

WHEREFORE the Debtors respectfully request that the Court enter an order (a) enforcing, or, in the alternative, extending the automatic stay with respect to the Michigan District Court Litigation and (b) granting the Debtors such other and further relief as is just.

Dated:   New York, New York
         July 23, 2009

        SKADDEN, ARPS, SLATE, MEAGHER
         & FLOM LLP

        By:   /s/ John Wm. Butler, Jr.
              John Wm. Butler, Jr.
              Ron E. Meisler
        155 North Wacker Drive
        Chicago, Illinois 60606
        (312) 407-0700

        - and –

        By:   /s/ Kayalyn A. Marafioti
              Kayalyn A. Marafioti
        Four Times Square
        New York, New York 10036
        (212) 735-3000

        Attorneys for Delphi Corporation, et al.,
          Debtors and Debtors-in-Possession