SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr.
Ron E. Meisler

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                              :
        In re                                 :   Chapter 11
                                              :
DELPHI CORPORATION, et al.,                   :   Case No. 05-44481 (RDD)
                                              :
                                              :   (Jointly Administered)
        Debtors.                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

NOTICE OF FILING OF EXHIBIT B TO SETTLEMENT
AGREEMENT BETWEEN DELPHI CORPORATION AND THE
PENSION BENEFIT GUARANTY CORPORATION

("NOTICE OF FILING OF DELPHI-PBGC SETTLEMENT AGREEMENT EXHIBITS")

        1.      On June 16, 2009, Delphi Corporation ("Delphi") and certain of its

subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (the

"Debtors"), filed the First Amended Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession (As Modified) (the "Modified Plan") (Docket No. 17030).

2. Also on June 16, 2009, the Court entered the Order (A)(I) Approving Modifications To Debtors' First Amended Plan Of Reorganization (As Modified) And Related Disclosures And Voting Procedures And (II) Setting Final Hearing Date to Consider Modifications to Confirmed First Amended Plan Of Reorganization And (B) Setting Administrative Expense Claims Bar Date And Alternative Transaction Hearing Date (the "Modification Procedures Order") (Docket No. 17032).

3. Paragraph 4 of the Modification Procedures Order requires that the Debtors file all exhibits and schedules (including all amendments thereto, the "Plan Exhibits") to the Modified Plan with the Court on or before July 2, 2009. In accordance with Exhibit 7.17 to the Modified Plan as filed by the Debtors on July 2, 2009, and with Article 14.3 of the Modified Plan, on July 21, 2009, the Debtors filed the Delphi-PBGC Settlement Agreement (Docket No. 18559).

4. The Delphi-PBGC Settlement Agreement filed on July 21 contemplated that Exhibits A and B to the agreement, the 414(l) True-Up Agreement and Waiver and Release Agreement, respectively, would be filed when finalized. The Waiver and Release Agreement has now been executed as attached hereto as <u>Exhibit 1</u> and thus, in accordance with the Debtors' July 21 filing, the Debtors are filing this notice.

Dated:  New York, New York
July 27, 2009

          SKADDEN, ARPS, SLATE, MEAGHER
           & FLOM LLP

By:   /s/ John Wm. Butler, Jr.
      John Wm. Butler, Jr.
      Ron E. Meisler
155 North Wacker Drive, Suite 2700
Chicago, Illinois 60606
(312) 407-0700

           – and –

By:   /s/ Kayalyn A. Marafioti
      Kayalyn A. Marafioti
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
  Debtors and Debtors-in-Possession

05-44481-rdd    Doc 18657    Filed 07/27/09    Entered 07/27/09 22:27:07    Main Document
Pg 3 of 17

# **EXHIBIT 1**

WAIVER AND RELEASE AGREEMENT

EXECUTION COPY

# WAIVER AND RELEASE AGREEMENT

THIS WAIVER AND RELEASE AGREEMENT, dated as of July 21, 2009 (the "Agreement"), is entered into by and among General Motors Company ("GMC"), Motors Liquidation Company ("Old GM") and Pension Benefit Guaranty Corporation (the "PBGC," and together with GMC and Old GM, each a "Party" and together the "Parties").

## RECITALS:

WHEREAS, on October 8 and 14, 2005, (the "Petition Date"), Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates (collectively, the "Debtors") filed voluntary petitions under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as then amended (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court");

WHEREAS, as of the date of this Agreement, Delphi or another Debtor is the plan sponsor of the Delphi Hourly-Rate Employees Pension Plan (the "Hourly Plan") and the Delphi Retirement Program for Salaried Employees, the Delphi Mechatronic Systems Retirement Program, the ASEC Manufacturing Retirement Program, the Packard-Hughes Interconnect Bargaining Retirement Plan ("Bargaining Plan"), and the Packard-Hughes Interconnect Non-Bargaining Retirement Plan (together, the "Pension Plans" and each, a "Pension Plan") under 29 U.S.C. § 1002(16)(B). Each of the Pension Plans is a single employer, defined benefit plan covered by the single employer plan termination provisions of Title IV of Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1301-1371;

WHEREAS, PBGC has asserted that the Debtors and certain non-U.S. affiliates of the Debtors are liable for contributions due to the Pension Plans under the Internal Revenue Code ("IRC") and ERISA, 26 U.S.C. §§ 412, 430(a); 29 U.S.C. §§ 1082, 1083 ("Minimum Funding Obligations");

WHEREAS, PBGC has filed with the Recorder of Deeds for the District of Columbia certain Notices Of Federal Lien Under 26 U.S.C. § 412(n) and/or § 430(k) (the "412(n)/430(k) Lien Notices") with respect to liens that PBGC asserts against certain non-U.S. affiliates of the Debtors on account of unpaid Minimum Funding Obligations in connection with one or more of the Pension Plans;

WHEREAS, on October 26, 2007, the Bankruptcy Court entered an Order Under 11 U.S.C. §§ 363(c), 1107, and 1108, and Cash Management Order, and Alternatively, Under 11 U.S.C. §§ 363(b)(1) and 364(c), Confirming Authority of Delphi Automotive Systems (Holding), Inc. to Complete Intercompany Transfer of Funds, dated October 26, 2007 (Docket No. 10725) and on May 29, 2008 entered its Order Under 11 U.S.C. §§ 361 and 363, Fed. R. Bankr. P. 9019, And Cash Management Order Authorizing DASHI To Grant Adequate Protection To Pension Benefit Guaranty Corporation In Connection With Certain Intercompany Transfer Of Repatriated Funds (Docket No. 13694) which, among other things, granted conditional adequate protection liens to the PBGC in the priority and with the validity set forth in such orders (the "Contingent PBGC Adequate Protection Liens");

1

WHEREAS, on January 25, 2008, the Bankruptcy Court entered an order confirming the First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-In-Possession, as amended;

WHEREAS, on June 1, 2009, the Debtors filed their (A) Supplement to Motion for Order (I) Approving Modifications to Debtors' First Amended Plan of Reorganization (as Modified) and Related Disclosures and Voting Procedures and (II) Setting Final Hearing Date to Consider Modifications to Confirmed First Amended Plan of Reorganization and (B) Request to Set Administrative Expense Claims Bar Date and Alternative Sale Hearing Date (Docket No. 16646) ("Supplement to Plan Modification Approval Motion") seeking approval of further modifications to their confirmed First Amended Joint Plan of Reorganization and a Supplement to its First Amended Disclosure Statement.  Delphi's First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-In-Possession (As Modified), (the "Modified Plan"), if approved by the Bankruptcy Court, provides for Delphi to emerge from chapter 11 reorganization through a transaction with Parnassus Holdings II, LLC ("Parnassus"), an affiliate of Platinum Equity ("Platinum Equity"), and with the support of GM Components Holdings, LLC, an affiliate of GMC, pursuant to a Master Disposition Agreement dated July   , 2009 (the "Master Disposition Agreement").  In the event that the Debtors are not able to implement the transactions contemplated in the Master Disposition Agreement through the Modified Plan, the Debtors have requested that the Bankruptcy Court set a hearing date to approve the Master Disposition Agreement as contemplated by the Procedures Order (as defined below)) pursuant to section 363 of the Bankruptcy Code (the "Alternative Sale Hearing"), which hearing date shall be no later than July 29, 2009 (unless otherwise agreed to by the parties thereto);

WHEREAS, the Supplement to Plan Modification Approval Motion was approved with modifications by order entered June 10, 2009 (Docket No. 17032) and was supplemented and amended by order entered June 29, 2009 (Docket No. 17376) (the "Procedures Order");

WHEREAS, sections 10.3.4 and 10.4.4 of the Master Disposition Agreement provide that, as a condition to closing the transactions contemplated in the Master Disposition Agreement, PBGC shall have agreed to remove any encumbrances of the PBGC on the assets of the Debtors and their affiliates to be sold under the Master Disposition Agreement; and

WHEREAS, in furtherance of the sale transactions contemplated in the Master Disposition Agreement, PBGC has entered into a separate Settlement Agreement dated as of July 21, 2009 ("Delphi Settlement Agreement") with Delphi as attached hereto as Exhibit A relating to the termination of all of the Pension Plans;

WHEREAS, the Delphi Settlement Agreement, together with this Agreement, are intended to resolve any and all asserted or unasserted liens and claims of the PBGC against Delphi and any member of Delphi's "controlled group" as defined in section 4001(a)(14) of ERISA, 29 U.S.C. § 1301(a)(14) (collectively, the "Delphi Group"), all securities or other assets of the Delphi Group, GMC and all other purchasers of securities or other assets of the Delphi Group, and members of their controlled groups (as defined above) and their assets, in connection with the consummation of the transactions contemplated by the Master Disposition Agreement or an alternative transaction in which the consideration to be received by GMC is economically equivalent to the

2

consideration to be received pursuant to the transactions contemplated by the Master Disposition Agreement ("Alternative Transaction"), including the resolution of the Contingent PBGC Adequate Protection Liens, the 412(n)/430 Lien Notices, claims relating to the Minimum Funding Obligations and claims for unfunded benefit liabilities pursuant to 29 U.S.C. § 1362;

WHEREAS, Delphi and Old GM have previously identified a number of circumstances where assets and liabilities transferred between the Pension Plans, on one hand, and the General Motors Retirement Program for Salaried Employees (the "GM SRP") or the General Motors Hourly-Rate Employees Pension Plan (the "GM HRP" and collectively with the GM SRP, the "GM Pension Plans")), on the other hand, did not reflect the agreed transfers of certain participants between such plans at the time of the Delphi spin-off from Old GM in 1999, and the final true-up of the September 29, 2008 transfer from the Hourly Plan to the GM HRP pursuant to the Amended and Restated Global Settlement Agreement between Delphi and Old GM dated September 12, 2008, as amended, remains uncompleted (with the 1999 transfers, collectively, the "True-Up Transfers");

NOW THEREFORE, in consideration of the premises set forth above and by execution of this Agreement, GMC, Old GM and PBGC agree as follows:

1.  Consideration to PBGC

    (a)  Cash Consideration. At the Effective Time (as defined below), GMC, solely in its capacity as a purchaser of certain assets under and in furtherance of the transactions contemplated by the Master Disposition Agreement or an Alternative Transaction, shall pay $70 million in cash (the "Cash Consideration") to the PBGC by wire transfer of immediately available funds. GMC shall not be treated, by making such payment to the PBGC, as an employer or sponsor with respect to any of the Pension Plans.

    (b)  Waterfall Participation. Effective as of (i) the later of the Effective Time or, as to all Pension Plans, either the execution and delivery of a trusteeship agreement between PBGC and the plan administrator of the applicable Pension Plan, or PBGC's filing of an action in a United States district court seeking a plan termination pursuant to 29 U.S.C. § 1342, or (ii) such later date as may be approved by PBGC, GMC shall assign or otherwise transfer to PBGC, or cause the Other Purchaser (as defined below) to issue directly to PBGC on behalf of GMC, a direct, non-voting equity interest in Parnassus or such other person or persons that acquire the Company Acquired Assets pursuant to the Master Disposition Agreement or in an Alternative Transaction (Parnassus or such other persons, the "Other Purchaser") entitling the holder thereof to distributions consistent with Exhibit B attached hereto and otherwise in accordance with paragraph 1(c) hereof ("Waterfall Right").

    (c)  Rights and Limitations. The Waterfall Right shall not be subject to limitations or restrictions greater than the limitations and restrictions applicable to the equity interest in the Other Purchaser acquired at the Effective Time by GMC or any of its affiliates (the Other Purchaser shall not be treated as an affiliate of GMC for

3

purposes of this paragraph), except those limitations and restrictions that are reasonably acceptable to PBGC. Without limiting the foregoing, the Waterfall Right shall not be subject to any restriction on transferability other than reasonable and customary limitations and restrictions that (A) are not more restricted than any such limitations and restrictions that apply to equity interests in the Other Purchaser acquired at the Effective Time by GMC or any of its affiliates, (B) are necessary or appropriate to comply with applicable securities or other laws, (C) are necessary or appropriate to avoid changing the tax status of the Other Purchaser or accelerating the end of the tax year of the Other Purchaser, or (D) are reasonably acceptable to PBGC. The organizational documents of the Other Purchaser (A) shall reflect the terms set forth in this Agreement and such other provisions, not inconsistent with this Agreement, reasonably acceptable to PBGC and (B) shall not be amended, without the consent of PBGC, which shall not be unreasonably withheld or delayed, in any manner that (i) adversely affects, in any material respect, the economic rights of PBGC (or its permitted transferee) thereunder, including, without limitation, rights of transferability, (ii) adversely affects, in any material respect, the non-economic rights of PBGC (or its permitted transferee)thereunder disproportionately to other Members having comparable rights or (iii) except upon consummation of an initial public offering approved by the Board of Managers, informational rights of PBGC (or its permitted transferee) thereunder.

2.  **Releases By PBGC**

    (a)  <u>Release of Liens and Claims</u>.  At the Effective Time, PBGC shall, and hereby as of the Effective Time does, unconditionally and forever release and discharge (i) all liens relating to the Pension Plans asserted and/or assertable by PBGC against each current or former member of the Delphi Group, each of the Sale Companies and JV Companies (each as defined in the Master Disposition Agreement), GMC or other purchaser of securities or other assets pursuant to the Master Disposition Agreement or an Alternative Transaction, Old GM, and each member of the "controlled group" as defined in section 4001(a)(14) of ERISA, 29 U.S.C. § 1301(a)(14), of any of the aforementioned persons, and the assets of any of them, including the GM Sale Securities and the Company Sale Securities (as such terms are defined in the Master Disposition Agreement), (ii) the Contingent PBGC Adequate Protection Liens (which, for the avoidance of doubt, include any Encumbrances (as defined in the Master Disposition Agreement) on the GM Acquired Assets (as defined in the Master Disposition Agreement), Company Acquired Assets (as defined in the Master Disposition Agreement), assets of the Sale Companies and JV Companies, or assets of the entities that issued the GM Sales Securities or Company Sales Securities, (iii) all 412(n)/430(k) Lien Notices relating to the Pension Plans, (iv) all disputes, controversies, suits, actions, causes of action, claims, assessments, demands, debts, sums of money, damages, judgments, liabilities, liens, and obligations of any kind whatsoever, against the Delphi Group and each other person described in clause (i) above, and the assets of each such person, relating to Minimum Funding Obligations or to premiums

4

pursuant to 29 U.S.C. §§ 1306 and 1307 relating to the Pension Plans, and (v) all other disputes, controversies, suits, actions, causes of action, claims, assessments, demands, debts, sums of money, damages, judgments, liabilities, liens, and obligations of any kind whatsoever, relating to the Pension Plans against the Sale Companies, JV Companies, GMC, Old GM, Parnassus or other purchasers of securities or other assets pursuant to the Master Disposition Agreement or an Alternative Transaction, all members of the "controlled group" as defined in section 4001(a)(14) of ERISA, 29 U.S.C. § 1301(a)(14), of any of the aforementioned persons, and their assets.

(b)  Release of Claims Relating To Pension Plan Terminations. Effective as of the later of the Effective Time or, as to all Pension Plans, either the execution and delivery of a trusteeship agreement between PBGC and the plan administrator, or PBGC's commencement of an action in a United States District Court seeking a plan termination pursuant to 29 U.S.C. § 1362, the PBGC unconditionally and forever releases and discharges (i) the Delphi Group and each of its members and each of its (or their) current and former shareholders, partners, members, officers, directors, employees, agents, owners, and each of its (or their) heirs, agents, executors, administrators, attorneys, predecessors, successors and assigns (collectively referred to hereinafter as the "Delphi Releasees") and (ii) the Sale Companies, the JV Companies, GMC, Old GM, Parnassus, Platinum Equity and all other purchasers or transferees of assets pursuant to the Master Disposition Agreement or an Alternative Transaction, and current or former members of the "controlled group" as defined in section 4001(a)(14) of ERISA, 29 U.S.C. § 1301(a)(14) of any of the aforementioned persons, and the assets of any of them, including the GM Acquired Assets and the Company Acquired Assets, and each of its (or their) current and former shareholders, partners, members, officers, directors, employees, agents, owners, and each of its (or their) heirs, agents, executors, administrators, attorneys, predecessors, successors and assigns (collectively referred to hereinafter as the "Purchaser Releasees" and together with the Delphi Releasees, the "PBGC Releasees"), in each case from any and all disputes, controversies, suits, actions, causes of action, claims, assessments, demands, debts, sums of money, damages, judgments, liabilities, liens, and obligations of any kind whatsoever, upon any legal or equitable theory (whether contractual, common law, statutory, federal, state, local or otherwise), whether known or unknown, that PBGC ever had, now has, or hereafter can, shall or may have, from the beginning of time, by reason of any matter, cause or thing whatsoever, relating to all Pension Plans that have terminated except for this Agreement and actions to enforce this Agreement. Nothing herein is intended to (i) limit or otherwise affect the rights and obligations of the parties under the Delphi Settlement Agreement or (ii) release or discharge any person or entity from liability arising as a result of such person's or entity's breach of fiduciary duty under ERISA. PBGC shall execute and deliver, upon the termination of each Pension Plan and upon the reasonable request of any PBGC Releasee, confirmation of the foregoing releases and such other documents as may be necessary or appropriate to effect the foregoing releases.

5

(c)  PBGC acknowledges and agrees that 29 U.S.C. § 1306(a)(7) does not apply to the Delphi Group as of the date hereof and to the termination of the Pension Plans by PBGC.

(d)  PBGC shall withdraw all 412(n)/430(k) Lien Notices relating to the Pension Plans, including but not limited to any notices related to the Contingent PBGC Adequate Protection Liens, and shall use its reasonable best efforts to complete such withdrawals within 60 days after the Effective Time.

3.  Releases by GMC.  At the Effective Time, GMC (on its behalf and on behalf of the GM Sale Companies and Steering JV Companies (as defined in the Master Disposition Agreement)) and Old GM each unconditionally and forever releases and discharges PBGC and each of its current and former officers, directors, employees, agents, and each of its agents, attorneys, successors and assigns, in each case from any and all disputes, controversies, suits, actions, causes of action, claims, assessments, demands, debts, sums of money, damages, judgments, liabilities, liens, and obligations of any kind whatsoever, upon any legal or equitable theory (whether contractual, common law, statutory, federal, state, local or otherwise), whether known or unknown, that GMC, the GMC Sale Companies, the Steering JV Companies and Motor Liquidation Company ever had, now have, or hereafter can, shall or may have, from the beginning of time, by reason of any matter, cause or thing whatsoever, against PBGC relating to all Pension Plans that have terminated, under ERISA or otherwise, except for this Agreement, actions to enforce this Agreement and any changes to PBGC's Valuation and Allocation of Recoveries Policy, PBGC Operating Policy Manual Section 8.2-1, as of the date hereof which adversely affects the amount of pension benefits paid by PBGC to participants in any of the Pension Plans.

4.  Additional Provisions Relating to GMC and PBGC.

(a)  True-Up Transfers.  Notwithstanding the foregoing provisions of this Agreement, GMC and PBGC acknowledge and agree that the True-Up Transfers shall be completed in accordance with Section 414(l) of the Internal Revenue Code, and nothing herein is intended to restrict or otherwise limit (i) the completion of the True-Up Transfers or (ii) additional 414(l) transfers or similar transfers of assets and liabilities between the GM Pension Plans, on one hand, and the Pension Plans or, after the termination of the applicable Pension Plan, PBGC, on the other hand, as may be mutually agreed by GMC and PBGC after the Effective Time.

(b)  GM-UAW Benefit Guarantee.  Old GM assumed and assigned to GMC the Benefit Guarantee Agreement between Old GM and the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (the "UAW"), dated September 30, 1999 ("GM-UAW Benefit Guarantee") pursuant to which Old GM agreed to provide certain benefits which were not guaranteed by PBGC in accordance with Title IV of ERISA in the event of the termination of the Hourly Plan.  Notwithstanding the provisions of paragraphs 2(a) and (b), and paragraph 3 hereof, none of PBGC, GMC or any of its subsidiaries, or Old GM shall release or discharge any disputes, controversies,

6

suits, actions, causes of action, claims, assessments, demands, debts, sums of money, damages, judgments, liabilities, liens, and obligations of any kind whatsoever, upon any legal or equitable theory (whether contractual, common law, statutory, federal, state, local or otherwise), whether known or unknown, that any of them ever had, now have, or hereafter can, shall or may have, from the beginning of time, by reason of any matter, cause or thing whatsoever, against each other relating to the calculation of the amount of or the ERISA Title IV coverage of the GM-UAW Benefit Guarantee or any similar contractual guarantee by GMC or any of its subsidiaries, excepting the validity and application of PBGC's Valuation and Allocation of Recoveries Policy, PBGC Operating Policy Manual Section 8.2-1, as of the date hereof.

5. <u>Waiver</u>.  Except with respect to any requirement for court approval or judicial determination, each Party may waive in writing the benefit of the other Party's compliance with any particular provision of this Agreement.  No waiver by a Party with respect to any breach or default or of any right to remedy and no course of dealing or performance, will be deemed to constitute a continuing waiver of any breach or default or of any other right or remedy, unless such waiver is expressed in writing signed by the Party to be bound.  The failure of a Party to exercise any right will not be deemed a waiver of such right or rights in the future.

6. <u>Conditions Precedent</u>.  The effectiveness of this Agreement ("<u>Effective Time</u>") shall be subject to and concurrent with the last to occur of:  (a) the closing of the transactions contemplated by the Delphi Settlement Agreement, (b) the closing of the transactions contemplated by the Master Disposition Agreement or an Alternative Transaction and (c) the receipt by PBGC of the Cash Consideration and the Waterfall Right.

7. <u>Further Assurances Regarding the Pension Plans</u>.  From time to time, the PBGC, GMC and/or Old GM shall execute and deliver, or cause to be executed and delivered, all such documents and instruments and shall take, or cause to be taken, all such further or other actions (subject to any limitation set forth in this Agreement), as any such Party may reasonably deem necessary or desirable to consummate the transactions as contemplated by this Agreement.

8. <u>Notices</u>.  Any notice required or permitted to be given under this Agreement shall be in writing and shall be deemed to have been given upon the earlier of receipt or (i) five business days after deposit in the United States mail, registered or certified mail, first-class postage prepaid, return receipt requested, (ii) one business day after deposit with Federal Express or similar overnight courier, or (iii) same day if delivered by hand, and addressed as provided in <u>Exhibit C</u> attached hereto or such other address as any Party may, from time to time, specify in writing to the others.

9. <u>Governing Law</u>.  This Agreement shall be governed by, and construed and enforced in accordance with federal law and, except to the extent preempted by federal law, the laws of the State of New York, without regard to conflicts of law principles that would require the application of the laws of another jurisdiction.

10. **Enforcement Of Agreement.** GMC, Old GM, Other Purchaser and PBGC agree that irreparable damage would occur in the event that any provision of this Agreement was not performed in accordance with its specific terms or were otherwise breached. It is accordingly agreed that GMC, Old GM, Other Purchaser and PBGC shall be entitled to an injunction or injunctions to prevent breaches of this Agreement and enforce specifically the terms and provisions hereof, this being in addition to all other remedies at law or in equity.

11. **Authority.** Each of the Parties represents that it has the authority to enter into this Agreement and to enter into the transactions contemplated thereby.

12. **Non-Severability.** Each of the terms of this Agreement is a material and integral part hereof. Should any provision of this Agreement be held unenforceable or contrary to law, the entire Agreement shall be deemed null and void.

13. **Representations And Warranties.** The Parties hereto acknowledge that they are executing this Agreement without reliance on any representations, warranties, or commitments other than those representations, warranties, and commitments expressly set forth in this Agreement.

14. **Entire Understanding.** This Agreement, together with the Delphi Settlement Agreement, constitutes the entire understanding of the Parties in connection with the subject matter hereof. This Agreement may not be modified, altered, or amended except by an agreement in writing signed by the Parties.

15. **Third Party Beneficiaries.** Except for the Purchaser Releasees for purposes of paragraphs 2(a), (b) and (c), and the releasees described in paragraph 3 hereof, and the Other Purchaser for purposes of paragraph 10, no provision of this Agreement, nor anything expressed or implied herein, is intended to confer upon any Person, other than the Parties hereto, any claims, rights, or remedies hereunder.

16. **No Party Deemed Drafter.** This Agreement is being entered into among competent persons who are experienced in business and represented by counsel, and has been reviewed by the Parties hereto and each of their counsel. Therefore, any ambiguous language in this Agreement shall not be construed against any particular party as the drafter of such language.

762775.03-Chicago Server 2A - MSW

17. <u>Counterparts</u>.  This Agreement may be executed in any number of counterparts and by the different Parties hereto in separate counterparts, each of which shall be deemed to be an original, but all of which taken together shall constitute one and the same agreement. Delivery of an executed counterpart of this Agreement by facsimile or electronic mail shall be equally as effective as delivery of an original executed counterpart of this Agreement.

**Accepted and agreed to by:**

**General Motors Company**

By: _(signature)_
Name: WALTER G. BORST
Title: TREASURER
Dated: July    , 2009

**Pension Benefit Guaranty Corporation**

By: _____
Name:
Title:
Dated: July    , 2009

**Motors Liquidation Company**

By: _____
Name:
Title:
Dated: July    , 2009

Execution Copy                              10

17. <u>Counterparts</u>.  This Agreement may be executed in any number of counterparts and by the different Parties hereto in separate counterparts, each of which shall be deemed to be an original, but all of which taken together shall constitute one and the same agreement. Delivery of an executed counterpart of this Agreement by facsimile or electronic mail shall be equally as effective as delivery of an original executed counterpart of this Agreement.

**Accepted and agreed to by:**

| **General Motors Company** | **Pension Benefit Guaranty Corporation** |
|---|---|
| By: _____ | By: _____ |
| Name: | Name: |
| Title: | Title: |
| Dated: July ___, 2009 | Dated: July ___, 2009 |

**Motors Liquidation Company**
By: _____[signature]_____
Name: A.A. KOCH
Title: PRESIDENT
Dated: July 24, 2009

Execution Copy                           9

17. <u>Counterparts</u>.   This Agreement may be executed in any number of counterparts and by the different Parties hereto in separate counterparts, each of which shall be deemed to be an original, but all of which taken together shall constitute one and the same agreement. Delivery of an executed counterpart of this Agreement by facsimile or electronic mail shall be equally as effective as delivery of an original executed counterpart of this Agreement.

**Accepted and agreed to by:**

**General Motors Company**

By: _____
Name:
Title:
Dated:   July       , 2009

**Pension Benefit Guaranty Corporation**

By: _____
Name: Terrence Deneen
Title: CIPO
Dated:   July 27, 2009

**Motors Liquidation Company**

By: _____
Name:
Title:
Dated:   July       , 2009

Execution Copy                                            9

# **EXHIBIT A**

DELPHI SETTLEMENT AGREEMENT

(previously filed at Docket No. 18559)



# Distribution Waterfall

WAIVER AND RELEASE AGREEMENT
EXHIBIT B

($ millions)

| Cum | GM - DIP Lender Agreement | | |
|---|---|---|---|
| | GM | DIP | Total |
| 1,000 | 61.40% | 38.60% | 100% |
| 2,642 | 72.22% | 27.78% | 100% |
| 3,642 | 26.25% | 73.75% | 100% |
| > 3,642 | 35.00% | 65.00% | 100% |

## Distributions Reflecting GM - PBGC Agreement

| Total | PBGC Share (% of GM) | Cumulative Distributions | | |
|---|---|---|---|---|
| | | GM | DIP | PBGC[1] |
| 1,000 | 20% | 491.2 | 386.0 | 122.8 |
| 2,000 | 20% | 1,069.0 | 663.8 | 267.2 |
| 2,500 | 15% | 1,375.9 | 802.7 | 321.4 |
| 3,500 | 5% | 1,687.2 | 1,475.0 | 337.8 |
| 4,000 | 25% | 1,809.1 | 1,812.4 | 378.4 |
| 5,500 | 50% | 2,071.6 | 2,787.4 | 640.9 |
| 6,000 | 25% | 2,202.9 | 3,112.4 | 684.7 |
| 7,000 | 10% | 2,517.9 | 3,762.4 | 719.7 |

[1] Does not include upfront payment of $70M by GM to PBGC
Note: Does not reflect UCC settlement payments, which commence after $7.2 billion of total distributions

GM Confidential

1