APPENDIX A

1127 CHART

**Appendix A**

**CONFIRMATION REQUIREMENTS OF FIRST AMENDED JOINT PLAN OF REORGANIZATION OF DELPHI CORPORATION
AND CERTAIN AFFILIATES, DEBTORS AND DEBTORS IN POSSESSION (AS MODIFIED)**

**THE MODIFIED PLAN COMPLIES WITH THE REQUIREMENTS OF SECTION 1127 OF THE BANKRUPTCY CODE, AS IT INCORPORATES SECTION 1129**

This chart summarizes the requirements for confirmation of the First Amended Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession (As Modified) (as it may be further amended or modified, the "Modified Plan") under section 1127 of the title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended and in effect on October 8, 2005 (the "Bankruptcy Code"), as it incorporates section 1129 of the Bankruptcy Code. This chart is provided in support of the Debtors' Debtors' Omnibus Reply In Support Of Modified Plan And Master Disposition Agreement (the "Memorandum"), filed with the Bankruptcy Court on July 27, 2009.

| Section 1127 ||
|---|---|
| Statutory Section | Modified Plan Compliance/Evidentiary Support |
| **Section 1127(b)** – The proponent of a plan may modify such plan at any time after confirmation of such plan and before substantial consummation of such plan, but may not modify such plan so that such plan as modified fails to meet the requirements of sections 1122 and 1123. A plan modified pursuant to section 1127(b) only becomes the plan if circumstances warrant such modification and the court, after notice and a hearing, confirms such plan as modified under section 1129. | As set forth in the analysis below, the Modified Plan meets the requirements for confirmation under sections 1122, 1123, and 1129. Further, the proposed modifications to the Confirmed Plan and the agreements for which approval is sought under the Modified Plan are warranted under the circumstances of these Chapter 11 Cases. For a description of the circumstances justifying the proposed modifications to the Confirmed Plan, see Sheehan Declaration ¶¶ 5-57, Joint Exhibit No. 48. |
| **Section 1127(c)** – The proponent of a modified plan must comply with section 1125. | The requirements of section 1127(c) have been satisfied because the Debtors have adhered to the disclosure requirements of section 1125. By order dated June 16, 2009 (Docket No. 17032) the Bankruptcy Court specifically found that the Supplement contained adequate information within the meaning of sections 1125 and 1127(c). In addition, the Bankruptcy Court approved all materials used in connection with the solicitation, the timing and method of delivery of the solicitation materials, and the rules for tabulating votes to accept or reject the Modified Plan. On or before June 20, 2009, in accordance with the modification procedures order, the Debtors caused the solicitation materials to be transmitted to claim and interest holders and other parties in interest, and on or before June 28, 2009, caused the notice of the confirmation hearing to be published in several national and regional newspapers as well as on www.delphidocket.com. See Gershbein Declarations, Joint Exhibits 39-41; Sullivan Declaration, Joint Exhibit 42; Gershbein Affidavit of Service, Joint Exhibit No. 28; Sullivan Affidavit of Service, Joint Exhibit No. 42; Affidavits of Publication, Joint Exhibit Nos. 25-27, 30-31, 33-36, 38. |

| | |
|---|---|
| **Section 1127(d)** – Any holder of a claim or interest that has accepted or rejected a plan is deemed to have accepted or rejected, as the case may be, such plan as modified, unless, within the time fixed by the court, such holder changes its previous acceptance or rejection. | The Bankruptcy Court's Modification Procedures Order entered June 16, 2009 (Docket No. 17032) provides that the facts and circumstances of these Chapter 11 Cases, "holder" under section 1127(d) means the current holder of a claim (as of June 8, 2009).  Modification Procedures Order at ¶ J.  Accordingly, as set forth in bold on page S-xxviii of the Supplement, the votes of creditors that previously cast a ballot in connection with the Confirmed Plan are not counted and such creditors were required to return a ballot in order to vote on the Modified Plan. |

| **Section 1129(a)(1)**–A modified plan must comply with the provisions of title 11.  The substantive provisions that are most relevant in the context of section 1129(a)(1), as made applicable to the Modified Plan pursuant to section 1127(b), are sections 1122 (classification requirements) and 1123 (mandatory plan contents). The Modified Plan complies with each of these provisions of title 11. ||
|---|---|
| Statutory Section | Modified Plan Compliance/Evidentiary Support |
| **Section 1122** – A plan may place a claim or interest in a particular class only if such claim or interest is substantially similar to the other claims or interests in such class.  A plan proponent has considerable discretion in classifying claims and interests so long as it can articulate differences among the legal nature or priority of the claims and interests. | The Modified Plan's classification scheme meets these requirements.  Under this classification scheme, no dissimilar Claims are classified together, and, to the extent similar Claims are classified separately, the Debtors have legitimate reasons for the separate classifications.  With respect to General Unsecured Claims and the PBGC General Unsecured Claim, those Claims are classified in separate Classes because of the unique nature of the PBGC General Unsecured Claim.  In light of the unique attributes of the PBGC General Unsecured Claim, the Debtors have legitimate reasons – none of which are related to voting considerations – for separating that Claim from other General Unsecured Claims.  The rationale for the Modified Plan's classification scheme is explained in the Sheehan Declaration.  See Sheehan Declaration ¶¶ 71-84, Joint Exhibit No. 48. |
| **Section 1123(a)**–Identifies the mandatory requirements for the contents of a plan of reorganization.  The Modified Plan fully complies with each of these requirements. ||
| **Section 1123(a)(1)** – A plan must designate classes of claims and interests. | Article III of the Modified Plan designates 66 classes of claims and 5 classes of interests.  See Sheehan Declaration ¶ 71, Joint Exhibit No. 48; Modified Plan, Joint Exhibit No. 1. |
| **Section 1123(a)(2)** – A plan must designate classes of claims that are unimpaired. | Article IV of the Modified Plan designates Classes 1B through 12B, 1J through 12J, and 1K through 12K as unimpaired.  See Sheehan Declaration ¶¶ 73, 81, Joint Exhibit No. 48; Modified Plan, Joint Exhibit No. 1. |
| **Section 1123(a)(3)** – A plan must specify the treatment of any class of claims or interests that is impaired. | Article V of the Modified Plan designates treatment of the following impaired classes of claims and interests:  Classes 1A-1 through 6A-1, 1C-1 through 12C-1, 1C-2 through 12C-2, 1D through 12D, 1E, 1F through 12F, 1G-1, 1G-2, 1H, 8H, and 1I.  See Sheehan Declaration ¶¶ 72, 74-80, Joint Exhibit No. 48; Modified Plan, Joint Exhibit No. 1. |

| | |
|---|---|
| **Section 1123(a)(4)** – A plan must provide for the same treatment of each claim or interest within each class. | Article V of the Modified Plan describes the treatment of each class of claims and interests. Each Claim or Interest of a particular Class will receive the same treatment, unless the holder of a particular Claim or Interest agrees to a less favorable treatment. See Sheehan Declaration ¶¶ 72-82, Joint Exhibit No. 48; Modified Plan, Joint Exhibit No. 1. |
| **Section 1123(a)(5)** – A plan must provide adequate means for the plan's implementation. | Article VII of the Modified Plan contains provisions that provide adequate means for the Modified Plan's implementation, including provisions that relate to, among other things, (a) continued corporate existence, (b) substantive consolidation, (c) certain restructuring transactions, (d) the Reorganized DPH Holdings certificate of incorporation and bylaws, (e) the selection of directors and officers of Reorganized DPH Holdings and its affiliates, (f) the consummation of disposition transactions, (g) the approval of Master Disposition Agreement, (h) the approval of the DIP Transfer and the transfer of collateral to the DIP Agent pursuant to the DIP Transfer, (i) the Post-Confirmation Reorganized DPH Holdings Share Trust, (j) the receipt of Emergence Capital, (k) the Management Compensation Plan, (l) the procedures for asserting certain claims related to SERP and Prepetition Employee-Related Obligations, (m) the cancellation of certain securities and agreements, (n) the sources of cash for distributions under the Modified Plan, (o) the establishment of a distribution account for holding the proceeds of the General Unsecured MDA Distribution, if any, (p) the assumption and assignment of collective bargaining agreements, (q) pension matters and the Delphi-PBGC Settlement Agreement, (r) the salaried OPEB settlement, (s) the retention of Retained Actions, (t) reservations of rights with respect to avoidance causes of action that will be abandoned pursuant to Article 7.19 of the Modified Plan, (u) the Debtors' retention of the exclusive right to amend or modify the Modified Plan and solicit acceptances with respect to such amendments or modifications through and until the Effective Date, (v) the dismissal of complaints filed by the Creditors' Committee and the Senior Notes Indenture Trustee seeking revocation of the Confirmation Order, (w) corporate action to be taken by the Debtors and Reorganized Debtors, (x) the authority of certain Delphi officers to take necessary or appropriate actions to effective and further evidence the terms and conditions of the Modified Plan, (y) the closing of the sale of assets subsequent to Effective Date free and clear of liens, Claims, and encumbrances pursuant to sections 363 and 1123 of the Bankruptcy Code, and (z) the exemption from stamp taxes and any other similar tax or governmental assessment. See Sheehan Declaration ¶ 83, Joint Exhibit No. 48.<br><br>Matters relating to the implementation of Modified Plan, such as substantive consolidation, the MDA, the DIP Transfer, pension, the potential distribution for holders of general unsecured claims, management compensation, and the settlements embodied in the Modified Plan are discussed in, and supported by, the Sheehan Declaration. See Sheehan Declaration ¶¶ 85-101, 112, Joint Exhibit No. 48; Modified Plan, Joint Exhibit No. 1. |

| | |
|---|---|
| **Section 1123(a)(6)** – A plan must provide that the debtor's charter include a provision prohibiting the issuance of non-voting securities. | The form of Certificate of Incorporation attached to the Modified Plan as Exhibit 7.4(a) includes a provision prohibiting the issuance of nonvoting equity securities, and allocates the voting power among the classes of voting securities in an appropriate manner.  See Sheehan Declaration ¶ 102, Joint Exhibit No. 48. |
| **Section 1123(a)(7)** – A plan must contain provisions that are consistent with the interests of creditors and equity security holders and with public policy with respect to the manner and selection of any officer, director, or trustee under the plan. | The Debtors stated in the July 2, 2009 Notice Of Filing Plan Exhibits that they will announce the names of the officers and directors of Reorganized DPH Holdings on the record at the Final Modification Hearing.  Furthermore, as provided in the form of Bylaws of Reorganized DPH Holdings attached to the Modified Plan as Exhibit 7.4(b), directors of Reorganized DPH Holdings will be elected by the stockholders of Reorganized DPH Holdings at annual meetings, and the officers of Reorganized DPH Holdings will be chosen by the board of directors.  As for the Affiliate Debtors, the existing directors and officers shall continue to serve in their current capacities after the Effective Date, as provided in Article 7.5 of the Modified Plan.  These selection procedures are consistent with the interests of creditors, equity security holders, and public policy, as required by section 1123(a)(7) of the Bankruptcy Code.  See Sheehan Declaration ¶¶ 103-105, Joint Exhibit No. 48. |
| **Section 1123(b)**–Identifies various discretionary provisions that may be included in a plan of reorganization. ||
| Statutory Section | Modified Plan Compliance/Evidentiary Support |
| **Section 1123(b)(1)** – A plan may impair or leave unimpaired any class of claims or interests. | Article IV of the Modified Plan impairs certain Classes of claims and interests while leaving Classes 1B through 12B, 1J through 12J, and 1K through 12K unimpaired.  See Sheehan Declaration ¶¶ 72-82, Joint Exhibit No. 48; Modified Plan, Joint Exhibit No. 1. |
| **Section 1123(b)(2)** – A plan may provide for the assumption, rejection, or assignment of any executory contract or unexpired lease not previously rejected. | Article 8.1 of the Modified Plan provides for the assumption and rejection of various contracts and unexpired leases.  Evidence supporting the Debtors' business determinations respecting assumption, assignment, and rejection; reorganized DPH Holdings' ability to cure monetary defaults under assumed contracts and leases and applicable third parties' ability to do so if such contract is being assigned; and such parties' ability to continue performing under such contracts and leases is provided in the Declarations of John Sheehan and Keith Stipp, the Debtors' Executive Director in charge of restructuring.  See Sheehan Declaration ¶¶ 106-111, Joint Exhibit No. 48; Stipp Declaration ¶¶ 29-40, Joint Exhibit No. 50. |

4

| | |
|---|---|
| **Section 1123(b)(3)** – A plan may provide for the settlement or adjustment of any claim or interest belonging to a debtor or provide for the retention and enforcement of any claim or interest. | Article 7.16 of the Modified Plan explains that the agreements reached with the six unions will be automatically assumed by the applicable reorganized Debtor and assigned as set forth in the MDA.  Modified Plan, Joint Exhibit No. 1.<br><br>Article 7.17 provides for a request by the Debtors for the Bankruptcy Court to authorize and approve the Delphi-PBGC Settlement Agreement, entered into on July 21, 2009.  For a discussion describing the attributes of the Debtors' settlement with the PBGC, see Sheehan Declaration ¶¶ 99-101, Joint Exhibit No. 48.<br><br>Article 7.18 provides for the Debtors to continue to make scheduled payments to certain salaried retirees in connection with the Debtors' court-approved settlement with such retirees.  For a discussion describing the attributes of the Debtors' settlement with these retirees, see Sheehan Declaration ¶ 132, Joint Exhibit No. 48.<br><br>Article 7.19 provides for the retention of certain causes of action, and Exhibit 7.19 of the Modified Plan lists such retained actions.  Modified Plan, Joint Exhibit No. 1; Modified Plan Exhibits, Joint Exhibit No. 2. |
| **Section 1123(b)(4)** – A plan may provide for the sale of all or substantially all of the property of the estate. | Pursuant to Article 7.7 of the Modified Plan the Debtors do seek approval of the Master Disposition Agreement, or an alternative transaction, pursuant to which the Debtors propose to sell a substantial portion of their assets.  See Sheehan Declaration ¶ 4, Joint Exhibit No. 48; Stipp Declaration ¶¶ 3-17, Joint Exhibit No. 50. |
| **Section 1123(b)(5)** – A plan may modify the rights of holders of claims, or leave unaffected the rights of holders of any class of claims. | The Modified Plan modifies the rights of holders of claims in impaired Classes and leaves unaffected the rights of holders of other claims in unimpaired Classes.  See Sheehan Declaration ¶¶ 72-82, Joint Exhibit No. 48;  Modified Plan, Joint Exhibit No. 1. |
| **Section 1123(b)(6)** – A plan may include any other appropriate provisions not inconsistent with the provisions of title 11. | The Modified Plan includes numerous other provisions designed to ensure its implementation is consistent with the Bankruptcy Code, including:  (a) procedures for objecting to and resolving disputed claims, (b) delivering distributions on account of allowed claims, (c) indemnification obligations, (d) releases of certain parties, (e) releases by holders of claims, and (f) exculpation of various entities and individuals with respect to actions related to or taken in furtherance of the Debtors' cases.  See Sheehan Declaration ¶¶ 114-120, Joint Exhibit No. 48. |

5

| Section 1129(a)(2) | |
|---|---|
| Statutory Section | Modified Plan Compliance/Evidentiary Support |
| **Section 1129(a)(2)** – The proponent of a plan must comply with the applicable provisions of title 11. The principal purpose of this section is to ensure compliance with the disclosure and solicitation requirements set forth in section 1125. Section 1125 prohibits the solicitation of acceptances or rejections of a plan from holders of claims or interests unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved by the court as containing adequate information. | The requirements of section 1129(a)(2), as it applies to the Modified Plan pursuant to 1127(c), have been satisfied because the Debtors have adhered to the disclosure requirements of sections 1125, 1126, and 1127(c) of the Bankruptcy Code. By order dated June 16, 2009 (Docket No. 17032), the Bankruptcy Court specifically found that the Supplemental Disclosure Statement complied with sections 1125 and 1127(c) of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure. In addition, the Bankruptcy Court approved all materials used in connection with the solicitation, the timing and method of delivery of the solicitation materials, and the rules for tabulating votes to accept or reject the Modified Plan. On or before June 20, 2009, in accordance with the modification procedures order, the Debtors caused the solicitation materials to be transmitted to claim and interest holders and other parties in interest, and on or before June 28, 2009, caused the notice of the confirmation hearing to be published in several national and regional newspapers as well as on www.delphidocket.com. See Gershbein Declarations, Joint Exhibits 39-41; Sullivan Declaration, Joint Exhibit 42; Gershbein Affidavit of Service, Joint Exhibit No. 28; Sullivan Affidavit of Service, Joint Exhibit No. 42; Affidavits of Publication, Joint Exhibit Nos. 25-27, 30-31, 33-36, 38. |

| Section 1129(a)(3) | |
|---|---|
| Statutory Section | Modified Plan Compliance/Evidentiary Support |
| **Section 1129(a)(3)** – The plan must be proposed in good faith and not by any means forbidden by law. A plan has been proposed in good faith if it has been proposed based upon a reasonable likelihood that the plan will achieve a result consistent with the objectives and purposes of the Bankruptcy Code. A plan proponent must simply demonstrate that the plan is reasonably likely to succeed and that a reorganization is possible. | The Modified Plan is the result of complex and extensive arms'-length discussions among Delphi and its various stakeholder groups, including the Creditors' Committee, the Equity Committee (before it was disbanded), GM, the DIP Lenders, Platinum and other potential bidders, the Auto Task Force, and the PBGC. The Debtors have proposed the Modified Plan in the exercise of their fiduciary duties to maximize the value of their Estates for the benefit of all stakeholders, and they believe that the Modified Plan accomplishes that objective. The Declarations of Messrs. Sheehan, Miller, Naylor, and Shaw discuss the good faith nature of the negotiations and the Debtors' considerations surrounding the development of the Modified Plan and the agreements upon which it is based. See Miller Declaration *passim*, Joint Exhibit No. 46; Naylor Declaration, *passim*, Joint Exhibit No. 47; Sheehan Declaration *passim*, Joint Exhibit No. 48; Shaw Declaration, *passim*, Joint Exhibit No. 51; Presentations to Delphi's Board of Directors and Statutory Committees, Joint Exhibit Nos. 150-174; Other Presentations, Joint Exhibit Nos. 178-190. |

| Section 1129(a)(4) | |
|---|---|
| Statutory Section | Plan Compliance/Evidentiary Support |
| **Section 1129(a)(4)** – This section requires that any payment made by a plan proponent, debtor, or person issuing securities or acquiring property under a plan in connection with the plan or bankruptcy case must have been disclosed and approved by the court, or be subject to the approval of the court, as reasonable. | With respect to past payments covered by this section, the Debtors have made all such payments pursuant to the Court's orders, including the Interim Compensation Order, as supplemented by subsequent orders, and paragraph 33 of the Confirmation Order. As for future payments covered by this section, all such payments are subject to the Court's approval as provided in Article X and the Article XIII of the Modified Plan and the Court's prior orders. See Sheehan Declaration ¶ 121, Joint Exhibit No. 48; Modified Plan, Joint Exhibit No. 1. |

| Section 1129(a)(5) | |
|---|---|
| Statutory Section | Modified Plan Compliance/Evidentiary Support |
| **Section 1129(a)(5)** – This section requires that a plan may be confirmed only if the proponent discloses the identity of those individuals who will serve as director, officer, or voting trustee of the reorganized debtor, the identity of any insider to be employed or retained by the reorganized debtor, and the compensation to be paid to such insider. The appointment or continuation in office of such persons must be consistent with the interests of creditors, equity security holders, and public policy. | Article 7.5 of the Modified Plan provides that the Debtors will file a notice listing the directors and officers of Reorganized DPH Holding, and that, absent the filing of a notice on or before the Final Modification Hearing stating otherwise, the existing directors and officers of the Affiliate Debtors will continue to serve in their current capacities. In the July 2, 2009 Notice Of Filing Plan Exhibits the Debtors gave further notice that they will announce the names of the directors and officers of Reorganized DPH Holdings on the record at the Final Modification Hearing. The July 2, 2009 Notice Of Filing Plan Exhibits also included Exhibit 7.11 to the Modified Plan, which describes, among other things, the Management Compensation Plan with respect to the directors and officers of the Reorganized DPH Holdings. Proceeding in this manner is consistent with the interests of the Debtors' stakeholders and public policy. See Sheehan Declaration ¶¶ 103-105, Joint Exhibit No. 48; Modified Plan, Joint Exhibit No. 1; Modified Plan Exhibits, Joint Exhibit No. 2. |

| Section 1129(a)(6) | |
|---|---|
| Statutory Section | Plan Compliance/Evidentiary Support |
| **Section 1129(a)(6)** – This section requires that, after confirmation of a plan, any governmental regulatory commission with jurisdiction over the rates of the debtor has approved any rate change provided for in the plan, or such rate change is expressly conditioned on such approval. Section 1129(a)(6) is applicable only to debtors subject to governmental regulatory authority. | The Modified Plan does not provide for any rate change over which any regulatory commission has or will have jurisdiction. As such, the Modified Plan satisfies section 1129(a)(6) of the Bankruptcy Code, as incorporated by section 1127(b) of the Bankruptcy Code. See Sheehan Declaration ¶ 122, Joint Exhibit No. 48; Modified Plan, Joint Exhibit No. 1. |

7

| Section 1129(a)(7) ||
| --- | --- |
| Statutory Section | Modified Plan Compliance/Evidentiary Support |
| **Section 1129(a)(7)** – This section requires that the plan must be in the best interests of creditors. The best interests of creditors test requires that, with respect to each impaired class of claims or interests, each holder of a claim or interest either has accepted the plan or will receive or retain property of a value, as of the effective date of the plan, that is not less than the amount that such holder would receive or retain if the debtor were hypothetically liquidated under chapter 7 of the Bankruptcy Code. | The Modified Plan satisfies the best interests of creditors test. The liquidation analysis attached as Appendix C to the Supplement demonstrates that the members of each Impaired Class will receive at least as much under the Modified Plan as they would in a liquidation in a hypothetical chapter 7 case. Holders of Claims will receive a better recovery through the distributions contemplated by the Modified Plan because it is unlikely that any holders of Claims would receive any distribution under a hypothetical chapter 7 case due to the liquidation value of the Debtors' assets and the size of the DIP Lenders' Claims. A discussion of how the Modified Plan satisfies the best interests test is found in the Eisenberg Declaration. See Eisenberg Declaration, *passim*, Joint Exhibit No. 52. |

| Section 1129(a)(8) ||
| --- | --- |
| Statutory Section | Modified Plan Compliance/Evidentiary Support |
| **Section 1129(a)(8)** – This section provides that the plan must be accepted by the requisite classes of claims and interests. Section 1129(a)(8) is the only confirmation requirement that is not mandatory. If section 1129(a)(8) is not satisfied with respect to certain classes of claims or interests, a plan nevertheless may be confirmed under the "cramdown" provisions of section 1129(b). | Although the Debtors have not satisfied this section because not all of the impaired classes accepted the Modified Plan, that does not defeat the Modified Plan, but rather merely triggers the cramdown provisions of section 1129(b) of the Bankruptcy Code, which, as set forth below, the Debtors have satisfied. |

8

| Section 1129(a)(9) ||
|---|---|
| Section 1129(a)(9) requires that the plan provide for mandatory treatment of certain priority claims under a plan of reorganization. The Modified Plan meets these requirements. ||
| Statutory Section | Modified Plan Compliance/Evidentiary Support |
| **Section 1129(a)(9)(A)** – This section provides that administrative claims under section 507(a)(1) must receive cash equal to the allowed amount of the claims on the effective date of the plan. | Subject to the Master Disposition Agreement and Article X of the Modified Plan, a holder of an Allowed Administrative Claim will receive, on the Effective Date or as soon thereafter as is reasonably practicable, (i) Cash equal to the unpaid portion of such Allowed Administrative Claim or (ii) such other less favorable treatment as the Debtors or the Reorganized Debtors and the holder may agree upon in writing. See Modified Plan, art. 2.1, Joint Exhibit No. 1; Sheehan Declaration ¶ 123, Joint Exhibit No. 48; Stipp Declaration ¶ 26, Joint Exhibit No. 50. Moreover, as provided in the Master Disposition Agreement and related transaction documents, the DIP Lenders will receive the Company Acquired Assets (subject to the Company Assumed Liabilities), the Company Sales Securities, the GM Acquired Assets (subject to the GM Assumed Liabilities), and the GM Sales Securities (all as defined in the Master Disposition Agreement) in full and final satisfaction of 100% of the principal and interest due and owing in respect of the DIP Facility under the DIP Credit Agreement, after giving effect to the application of any cash collateral to the DIP Facility. A majority of the two most senior tranches of the DIP Facility (i.e., the "Required DIP Lenders") have consented to that treatment on behalf of all of the DIP Lenders, and they have provided instructions to the DIP Agent to that effect, in accordance with the DIP Credit Agreement. |
| **Section 1129(a)(9)(B)** – This section requires that holders of claims of a kind specified in sections 507(a)(3) through (7) must receive, if the class in which such claimants are members has accepted the plan, deferred cash payments of a value, as of the effective date of the plan, equal to the allowed amount of these claims or, if the class in which such claimants are members has not accepted the plan, cash equal to the allowed amount of these claims on the effective date of the plan. | The Modified Plan establishes that, except as otherwise agreed by a holder of an Allowed Other Priority Claim, "on the Effective Date, or as soon thereafter as is reasonably practicable, each such holder shall receive . . . an amount in Cash equal to the Allowed amount of such Claim." See Sheehan Declaration ¶ 82, Joint Exhibit No. 48; Modified Plan, art 5.13, Joint Exhibit No. 1. |
| **Section 1129(a)(9)(C)** – This section requires that the holders of claims of a kind specified in section 507(a)(8) must receive deferred cash payments over a period not to exceed six years from the date of assessment of these claims with a value equal to the allowed amount of these claims on the effective date of the plan. | Under Article 2.2 of the Modified Plan, a holder of an Allowed Priority Tax Claim will generally receive (i) equal Cash payments during a period not to exceed six years after the assessment of the tax on which such Claim is based, totaling the aggregate amount of such Claim, plus simple interest at the rate required by applicable law on any outstanding balance from the Effective Date, or such lesser rate as is agreed to by a particular taxing authority, (ii) such other treatment as is agreed to by the holder and is on more favorable terms to the Debtors or the Reorganized Debtors, or (iii) payment in full in Cash. See Sheehan Declaration ¶ 124, Joint Exhibit No. 48; Modified Plan, art. 2.2, Joint Exhibit No. 1. |

| Section 1129(a)(10) ||
|---|---|
| Statutory Section | Modified Plan Compliance/Evidentiary Support |
| **Section 1129(a)(10)** – This section requires that the plan must be accepted by at least one impaired class of claims, without including any acceptance of the plan by an insider. | There are five impaired, non-insider classes that have accepted the Modified Plan. Class A-1 is a grouping of 120 separate subclasses of Secured Claims (excluding the Contingent PBGC Secured Claims) against the Delphi-DAS Debtors and Delphi Diesel Systems Corp. The holder of claims representing three subclasses of Secured Claims in Class A-1 voted in favor of the Modified Plan. Class C-2 (PBGC Claims) and Class D (GM Unsecured Claims) are also impaired classes of claims that have voted to accept the Modified Plan. See Gershbein Declaration, Joint Exhibit No. 39; Sullivan Declaration, Joint Exhibit No. 42. |

| Section 1129(a)(11) ||
|---|---|
| Statutory Section | Modified Plan Compliance/Evidentiary Support |
| **Section 1129(a)(11)** – This section requires that a plan must be feasible. The feasibility test requires the court to determine whether the plan offers the debtor a reasonable assurance of success. Section 1129(a)(11) does not, however, require a guarantee of success. | The Debtors and their financial advisors analyzed the Reorganized Debtors' ability to perform in a timely manner their obligations under the Modified Plan, and have concluded that there is a reasonable likelihood that the Modified Plan will succeed. The Debtors' management team has evaluated the budget of Reorganized DPH Holdings as compared with the anticipated needs of Reorganized DPH Holdings and believes that the budgeted amounts are sufficient to fund its operations. The budget developed by the Debtors represents a reasonable projection of future performance, and it demonstrates that the Reorganized Debtors will have the ability to meet future obligations under the Modified Plan. There is ample evidence that the Modified Plan is not likely to be followed by the liquidation or the need for further financial reorganization of Reorganized DPH Holdings. The Modified Plan therefore meets the feasibility requirement under section 1129(a)(11) of the Bankruptcy Code, as incorporated by section 1127(b) of the Bankruptcy Code. See Sheehan Declaration ¶¶ 126-127, Joint Exhibit No. 48; Stipp Declaration ¶¶ 28-40, Joint Exhibit No. 50; Modified Plan, Joint Exhibit No. 1. |

| Section 1129(a)(12) ||
|---|---|
| Statutory Section | Modified Plan Compliance/Evidentiary Support |
| **Section 1129(a)(12)** – This section requires a plan to provide that all fees payable under 28 U.S.C. § 1930 to the United States Trustee, as determined by the court at the hearing on confirmation of the plan, have been paid or the plan provides for the payment of all such fees on the effective date of the plan. | Pursuant to Article 14.2 of the Modified Plan, all fees payable pursuant to 28 U.S.C. § 1930 plus accrued interest under 31 U.S.C. § 3717 have been or will be paid on or before the Effective Date and the Reorganized Debtors shall continue to pay fees pursuant to 28 U.S.C. §1930 until the Chapter 11 Cases are closed. See Sheehan Declaration ¶ 128, Joint Exhibit No. 48; Modified Plan, Joint Exhibit No. 1. |

| Section 1129(a)(13) ||
|---|---|
| Statutory Section | Modified Plan Compliance/Evidentiary Support |
| **Section 1129(a)(13)** – This section requires a plan of reorganization to provide for the continuation of payment of all retiree benefits, as that term is defined in section 1114, at the level established by agreement or by court order pursuant to section 1114 at any time prior to confirmation of the plan, for the duration of the period the debtor has obligated itself to provide such benefits. | Through Article 7.16 and Article 7.18, the Modified Plan provides for the continuation of retiree benefits in compliance with section 1129(a)(13) of the Bankruptcy Code, as incorporated by section 1127(b) of the Bankruptcy Code. The retiree benefits available to the Debtors' hourly employees are set forth in a series of Court-approved MOUs and implementation agreements among Delphi and its labor unions. Under Article 7.16 of the Modified Plan, the MOUs will be assumed and assigned as set forth in the Master Disposition Agreement and pursuant to an order to be entered by the Court. Salaried employees' retiree benefits are governed by the settlement agreement the Court approved pursuant to its April 2, 2009 "Salaried OPEB Settlement Order." Article 7.18 of the Modified Plan provides that "[t]he Debtors will continue the payments on the schedule authorized under the [Salaried OPEB Settlement Order]." See Sheehan Declaration ¶¶ 129-133, Joint Exhibit No. 48; Modified Plan, Joint Exhibit No. 1. |

11

| Section 1129(b) ||
|---|---|
| Statutory Section | Modified Plan Compliance/Evidentiary Support |
| **Section 1129(b)** – This section provides that a bankruptcy court is required to confirm a plan over the dissent of one or more classes of impaired claims or interests if the plan: (i) meets all requirements for confirmation set forth in section 1129(a) except the requirement of section 1129(a)(8); (ii) does not discriminate unfairly; and (iii) is otherwise fair and equitable with respect to each impaired class of claims or interests that has not accepted the plan. | The Modified Plan satisfies the requirement of section 1129(b) with respect to Classes E, G-1, G-2, H, and I, which are deemed to have rejected the Modified Plan, and Classes 1A-1, 3A-1, and 4A-1 and Classes 1C-1 through 12C-1, which voted against the Modified Plan. The Modified Plan meets all of the requirements of section 1129(a), except the requirement of section 1129(a)(8), with respect to each of the non-accepting Classes. As explained below, the Modified Plan does not discriminate unfairly and is otherwise fair and equitable with respect to the non-accepting impaired Classes. |
| **Section 1129(b)(1) – "Unfair Discrimination Test"** This section requires that the Plan not discriminate unfairly as to any dissenting class. | The Modified Plan does not discriminate unfairly as to any dissenting class. There is no unfair discrimination against holders of General Unsecured Claims in Class C-1 because there is a rational basis for treating those classes in a manner that is different from the PBGC Claims in Class C-2 and the GM Unsecured Claim in Class D. The Debtors placed the PBGC Claims in a separate class because of the exceptional issues related to those claims and their unique treatment under the Delphi-PBGC Settlement Agreement. With respect to the GM Unsecured Claim, GM will waive the General Unsecured Claim on the closing date of the Master Disposition Agreement pursuant to section 3.1.1 of that agreement. GM therefore will not receive a distribution under the Modified Plan on account of the GM Unsecured Claim, but instead will receive the benefit of the remaining releases provided for in section 4.01 of the Amended GSA. Similarly, the Classes that have been deemed to reject the Modified Plan are being treated in the same manner as one another. They are not receiving distributions under the Modified Plan. See Sheehan Declaration ¶¶ 134-135, Joint Exhibit No. 48. |
| **Section 1129(b)(1) – "No Premium Payments"** The fair and equitable component of section 1129(b)(1) also requires that no class may be paid more than in full. | No Class is being paid more than in full. See Sheehan Declaration ¶ 135, Joint Exhibit No. 48. |
| **Section 1129(b)(2)(A)** – This section requires that holders of secured claims (i)(A) retain the liens securing such claims, whether the property subject to such liens is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims and (B) that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan of at least the value of such holder's interest in the estate's interest in such property; (ii) for the sale, subject to section 363 (k) of this title, of any property that is subject to the liens securing such claims, free and clear of such liens, with such liens to attach to the proceeds of such sale, and the treatment of such liens on proceeds under clause (i) or (iii) of this subparagraph; or (iii) for the realization by such holders of the indubitable equivalent of such claims. | The Modified Plan satisfies this section. Article 5.1 of the Modified Plan provides that each holder of an Allowed Secured Claim will receive (i) distributions of Cash payments in equal installments over a period not to exceed seven years from the Effective Date plus interest, with all valid, enforceable, and perfected prepetition liens on the Debtors' property with respect to such Claims surviving the Effective Date or (ii) its collateral free and clear of liens, Claims, and encumbrances, provided that such collateral was property of the Estate as of the day prior to the Effective Date. Each of these types of treatment satisfy section 1129(b)(2)(A). See Modified Plan, Joint Exhibit No. 1. |

| | |
|---|---|
| **Section 1129(b)(2)(B) – "Absolute Priority Test"** – This section requires that for a class of unsecured claims, for the treatment of such class to be considered fair and equitable, the plan provide that each holder of a claim of such class receive or retain on account of such claim, property of a value, as of the effective date, equal to the allowed amount of such claim, or in the alternative, any interest junior to the claims of such class shall not receive or retain any property under the plan on account of such junior claim or interest. | The Modified Plan is fair and equitable with respect to all nonaccepting holders of unsecured claims. Although the holders of General Unsecured Claims are not being paid in full, no holder of Claims or Interests junior to the General Unsecured Claims will receive or retain any property under the Modified Plan on account of their junior Claims or Interests. See Sheehan Declaration ¶¶ 74-79, 135, Joint Exhibit No. 48; Modified Plan, Joint Exhibit No. 1. |
| **Section 1129(b)(2)(C)** – For a plan to be fair and equitable with respect to a dissenting class of impaired equity interests, the plan must provide either: (1) that each interest holder in the class will receive or retain property of a value equal to the greatest of any fixed liquidation preference, any fixed redemption price, or the value of the holder's interest; or (2) that no holder of an interest that is junior to the interests of that class will receive or retain any property under the plan on account of such junior interest. | The Modified Plan is fair and equitable with respect to dissenting impaired Classes of Interests because "the holder of any interest that is junior to the interests of such class will not receive or retain under the plan on account of such junior interest any property," in accordance with section 1129(b)(2)(C)(ii) of the Bankruptcy Code. Indeed, no holder of an impaired Interest will receive any property under the Modified Plan on account of its impaired Interest. See Sheehan Declaration ¶¶ 79-80 , 135, Joint Exhibit No. 48; Modified Plan, Joint Exhibit No. 1. |

| **Section 1129(c)** | |
|---|---|
| Statutory Section | Modified Plan Compliance/Evidentiary Support |
| **Section 1129(c)** – This section provides that the bankruptcy court can only confirm one plan. | If confirmed under section 1127(b), the Modified Plan would become the plan and, thus, only one plan would be confirmed by the Court. |

| **Section 1129(d)** | |
|---|---|
| Statutory Section | Modified Plan Compliance/Evidentiary Support |
| **Section 1129(d)** – This section provides that the bankruptcy court cannot confirm a plan if the principal purpose of the plan is the avoidance of taxes or application of section 5 of the Securities Act. | The principal purpose of the Modified Plan is not tax avoidance or avoidance of section 5 of the Securities Act. |