<u>APPENDIX E</u>

CURRENT VERSION OF DEBTORS' FORM OF SECTION 363 SALE APPROVAL ORDER

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                          :
        In re                             :        Chapter 11
                                          :
DELPHI CORPORATION, et al.,               :        Case No. 05-44481 (RDD)
                                          :
                          Debtors.        :        (Jointly Administered)
                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ORDER UNDER 11 U.S.C. §§ 363 AND 365 AND FED. R. BANKR. P. 2002, 6004,
6006, AND 9014 (A) AUTHORIZING AND APPROVING (I) SALE OF
SUBSTANTIALLY ALL OF DEBTORS' ASSETS FREE AND CLEAR OF LIENS,
CLAIMS, AND ENCUMBRANCES, (II) ASSUMPTION AND ASSIGNMENT OF
CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED
LEASES, AND (III) ASSUMPTION OF CERTAIN LIABILITIES

("363 SALE APPROVAL ORDER")

Upon the motion, dated October 3, 2008, as supplemented on June 1, 2009 (the

"Motion"), of Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors

and debtors-in-possession in the above-captioned cases (each, a "Debtor"), for, among other

things, entry of an order pursuant to 11 U.S.C. §§ 363, 365, and 1146 and Fed. R. Bankr. P. 2002,

6004, 6006, and 9014(a) (i) authorizing and approving the Debtors to complete the transactions

set forth in the Master Disposition Agreement among Delphi, Motors Liquidation Company,

General Motors Company ("GMCo."), GM Components Holdings, LLC, DIP Holdco III, LLC

and Other Sellers and Other Buyers Party thereto (such parties other than Delphi, collectively,

the "Purchasing Entities"), dated as of July [__], 2009, as modified by the 363 Implementation

Agreement (each as attached hereto as Exhibit 1 and Exhibit 2, respectively, and together, the

"Amended Master Disposition Agreement"), including the sale ("Sale") of substantially all the

Debtors' assets free and clear of liens, Claims,[1] and encumbrances to the Purchasing Entities, (ii)

the assumption and assignment of certain prepetition executory contracts and unexpired leases as

defined in the Amended Master Disposition Agreement (the "Pre-Petition Contracts") and the

assignment of certain postpetition executory contracts and unexpired leases as defined in the

Amended Master Disposition Agreement (the "Post-Petition Contracts," and collectively with the

Pre-Petition Contracts, the "Assumed and Assigned Contracts") to the Purchasing Entities, (iii)

the assumption of certain liabilities as defined in the Amended Master Disposition Agreement

(the "Assumed Liabilities") by the Purchasing Entities, and (iv) approval of the agreement

between the Debtors and the Pension Benefit Guaranty Corporation ("PBGC") that provide for,

among other things, resolution of the Debtors' pension plans and related claims (the "PBGC

Settlement Agreement"); and the Court having entered an order on June 16, 2009 (the

"Modification Procedures Order") (Docket No. 17032), as supplemented on June 29, 2009

(Docket No. 17376), July 17, 2009 (Docket No. 18352), and July 21, 2009 (Docket No. 18551),

which among other things, established a sale hearing on July 29, 2009 (the "Alternative Sale

Hearing") as an alternative to the Final Plan Modification Hearing to allow the Debtors to enter

into and perform their obligations under the Master Disposition Agreement, as modified by the

363 Implementation Agreement; and the Alternative Sale Hearing having been held on July 29,

2009, at which time all interested parties were offered an opportunity to be heard with respect to

the Motion; and the Court having reviewed and considered the Motion and the arguments of

counsel made, and the evidence proffered or adduced, at the Alternative Sale Hearing; and it

appearing that the relief requested in the Motion is in the best interests of the Debtors, their

---

[1]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the
Amended Master Disposition Agreement.

estates, creditors, stakeholders, and all other parties-in-interest; and after due deliberation thereon, and sufficient cause appearing therefor,

IT IS HEREBY FOUND AND DETERMINED THAT:[2]

A.     Jurisdiction And Venue.  The Court has jurisdiction over the Motion and the transactions contemplated by the Agreement pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (N).  Venue of these cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

B.     Predicates For Relief Requested.  The statutory predicates for the relief sought in the Motion are sections 363 and 365 of 11 U.S.C. §§ 101-1330, as amended and in effect on October 8, 2005 (the "Bankruptcy Code"), and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014.

C.     Proper Notice.  As evidenced by the affidavits of service previously filed with the Court, and based on the representations of counsel at the Alternative Sale Hearing, (i) proper, timely, adequate, and sufficient notice of the Motion, the Alternative Sale Hearing, the Sale, and the assumption and assignment of the Pre-Petition Contracts, and the Cure Amounts as approved herein has been provided in accordance with 11 U.S.C. §§ 102(l), 363, and 365 and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014 and such notice was good, sufficient, and appropriate under the circumstances and (ii) no other or further notice of the Motion, the Alternative Sale Hearing, the Sale, or the assumption and assignment of the Pre-Petition Contracts as provided herein is necessary or shall be required.

---

[2]    Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.  See Fed. R. Bankr. P. 7052.

D.      Supplemental Procedures.  At the June 10, 2009 hearing on the approval

of the Supplemental Plan Modification Approval Motion, the Court entered procedures to

facilitate the Debtors' consideration of potential alternative transactions to the proposed

disposition agreement among Delphi, GM Components Holdings, LLC, Parnassus Holdings II,

LLC, and Other Sellers and Other Buyers Party thereto, dated as of June 1, 2009.  Subsequently,

procedures for such a process were approved by the Court, as documented in the Supplemental

Procedures (Exhibit N to the Modification Procedures Order) and the Supplemental Modification

Procedures Order (collectively, the "Procedures").  Pursuant to the Procedures, three third-party

bidders were qualified to submit potential alternative transactions.  The DIP Agent acting on

behalf of the Required Lenders was deemed qualified to submit potential alternative transactions

under the Procedures, and a Pure Credit Bid (as defined in the Supplemental Modification

Procedures Order) was deemed to be a qualified alternative transaction under the Procedures.

The Procedures' qualified alternative transaction proposal deadline passed on July 10, 2009

without the submission of any potential third-party alternative transactions.  On July 17, 2009,

the Court entered the Second Supplemental Modification Procedures Order adjourning the

auction from July 17, 2009 to July 21, 2009.  On July 21, 2009, the Court entered the Third

Supplemental Modification Procedures Order further adjourning the auction from July 21, 2009

to July 24, 2009.  The auction subsequently commenced on July 26, 2009 and concluded on July

27, 2009.  The Debtors, the DIP Agent, and the DIP Lenders have complied with the Procedures

in all respects and the Creditors' Committee has discharged its duties under the Procedures.

E.      DIP Loan.  The Debtors are indebted to the DIP Lenders under that certain

Amended and Restated Revolving Credit, Term Loan and Guaranty Agreement, dated as of May

9, 2008 (as such agreement has been and may be amended, modified or supplemented from time

to time (the "DIP Credit Agreement") with JPMorgan Chase Bank N.A. as Administrative Agent

(the "DIP Agent") in the aggregate amount of approximately $[_____], as of July 29,

2009, inclusive of principal and interest but excluding fees, expenses and certain other amounts

due thereunder (the "DIP Loan").

F.    DIP Agent Notices.  The DIP Agent timely delivered to the Debtors all

documents required under the Modification Procedures Order, as amended and supplemented by

the Supplemental Modification Procedures Order.  On July 9, 2009, the DIP Agent, as instructed

by the Required Lenders, transmitted a Notice Of Intent To Credit Bid to the Debtors.  On July

14, 2009, the DIP Agent, as instructed by the Required Lenders, transmitted a Notice Of

Rejection And Disapproval Of The Master Disposition Agreement By the Required Lenders.  On

July 15, 2009, the DIP Agent, as instructed by the Required Lenders, transmitted a Notice Of

Intent To Exercise Remedies.  On July 16, 2009, the DIP Agent, pursuant to a direction delivered

by the Required Lenders, and in accordance with the Procedures, submitted Pure Credit Bid

Support Letter (as defined in the Supplemental Procedures Order).

G.    Auction Proceedings And Selection Of Highest Or Otherwise Best Offer.

On July 26 and 27, 2009, the Debtors conducted the Auction in accordance with the Procedures.

At the Auction, pursuant to a direction of the Required Lenders, the DIP Agent on behalf of the

DIP Lenders made a credit bid (the "DIP Lenders' Bid") for the Acquired Assets and Sale

Securities on behalf of the DIP Lenders, which was submitted in conformity with the

Supplemental Modification Procedures Order and section 363(k) of the Bankruptcy Code, in an

amount equal to 100% of the principal and interest due and owing in respect of the DIP Loan

under the DIP Credit Agreement, after giving effect to the application of any cash collateral to

the amount of the DIP Loans.  The DIP Agent, pursuant to the direction of the Required Lenders,

5

submitted the DIP Lenders' Bid, which constituted a Pure Credit Bid as defined in the Procedures, in accordance with the Procedures.  The DIP Lenders' Bid complied with the provisions of section 363(k) of the Bankruptcy Code, and was duly authorized under the DIP Credit Agreement and the other Loan Documents (as defined in the DIP Credit Agreement), and was a valid and good faith exercise by the DIP Agent of the DIP Agent's rights, responsibilities, and obligations under the DIP Credit Agreement and the other Loan Documents.  In compliance with the Procedures and the Supplemental Order, on July 27, 2009, the Debtors' board of directors met and selected the DIP Lenders' Bid as the highest or otherwise best offer and deemed it the Successful Alternative Transaction (as defined in the Supplemental Procedures).  The Successful Alternative Transaction shall be consummated as set forth in the Amended Master Disposition Agreement and as authorized in this order.  The Debtors have demonstrated compelling circumstances and a good, sufficient and sound business purpose and justification for the sale under the Amended Master Disposition Agreement under section 363(b) and (f) of the Bankruptcy Code.

    H. <u>Good Faith of Purchasing Entities</u>.  The Amended Master Disposition Agreement and the transactions contemplated thereby were negotiated, proposed and entered into by the Debtors and the Purchasing Entities, and the Pure Credit Bid was made by the DIP Agent, without collusion, in good faith, and from arm's-length bargaining positions.  None of the Debtors, the Purchasing Entities, or the DIP Agent has engaged in any conduct that would cause or permit the Amended Master Disposition Agreement to be avoided under 11 U.S.C. § 363(n).  The Purchasing Entities (and, to the extent applicable, the DIP Agent) are purchasers of property in good faith under section 363(m) of the Bankruptcy Code or similar applicable state law and, as such, are entitled to all of the protections afforded thereby with respect to all of the

transactions contemplated by the Pure Credit Bid and the Amended Master Disposition

Agreement.  The Purchasing Entities and the DIP Agent are not "insiders" of any of the Debtors,

as that term is defined in section 101 of the Bankruptcy Code.

I.    Highest Or Otherwise Best Offer.  The terms and conditions set forth in the

Agreement, and the transactions contemplated thereby, including the amount of the purchase

price, represent fair and reasonable terms and conditions, constitute the highest or otherwise best

offer obtainable for the Acquired Assets and Sale Securities, and are fair and adequate.  The

Debtors' methodology for valuing the Pure Credit Bid was reasonable and appropriate, and such

methodology was applied consistently and fairly.  Further, the Auction was duly noticed and

conducted in a noncollusive, fair, and good faith manner, and, pursuant to the Procedures, a

reasonable opportunity has been given to any party to make a higher or otherwise better offer.

The Successful Alternative Transaction was the highest or otherwise best bid at the Auction, and

the Debtors' decision to accept such Pure Credit Bid as the Successful Alternative Transaction,

approval of the Amended Master Disposition Agreement, and consummation of the transactions

contemplated in the Amended Master Disposition Agreement and the exhibits thereto are

appropriate under the circumstances of these cases and are in the best interests of the Debtors,

their creditors, their estates, and other parties in interest.  The Hearing constituted the hearing to

approve entry of either an order confirming the Modified Plan or approving an alternative sale

transaction, and no further hearing is needed.

J.    Required Lenders.  Pursuant to Section 7.01 of the DIP Credit Agreement,

Section 15 of the Security and Pledge Agreement and applicable law, DIP Lenders holding

Tranche A Loans (as defined in the DIP Credit Agreement) and LC Exposure (as defined in the

DIP Credit Agreement) and a portion of the Tranche B Loan (as defined in the DIP Credit

7

Agreement) representing in the aggregate more than 50% of the sum of the Tranche A Total

Commitment Usage (as defined in the DIP Credit Agreement) and the principal amount of the

Tranche B Loan (as defined in the DIP Credit Agreement) outstanding constitute "Required

Lenders" as that term is used in the DIP Credit Agreement.  The Pure Credit Bid was made at the

direction of the Required Lenders, including the following lenders, who together constitute

Required Lenders under the DIP Credit Agreement: (i) Black Diamond Offshore Ltd.; (ii)

Double Black Diamond Offshore Ltd.; (iii) GCOF SPV I; (iv) GCP II SPV I; (v) Greywolf

Capital Overseas Master Fund; (vi) Greywolf Capital Partners II LP; (vii) Greywolf CLO I, Ltd.;

(viii) Greywolf Structured Products Master Fund, Ltd.; (ix) Kensington International Limited; (x)

Manchester Securities Corp.; (xi) Monarch Master Funding Ltd.; (xii) SPCP Group, LLC; and

(xiii) Springfield Associates, LLC.

K.    Authority For Pure Credit Bid. The terms of the DIP Credit Agreement

and the Security and Pledge Agreement empower the Required Lenders to direct the DIP Agent

to credit bid the entire amount of the DIP Loans of all of the DIP Lenders on the DIP Lenders'

behalf following an event of default.  Section 8.01 of DIP Credit Agreement authorizes the DIP

Agent to take "such actions on its behalf and to exercise such powers as are delegated to such

Agent by the terms [thereof], together with such actions and powers as are reasonably incidental

thereto."  Those actions and powers include credit bidding under section 363(k) of the

Bankruptcy Code and specifically the making of the Pure Credit Bid as described in this order.

Under section 7.01 of the DIP Credit Agreement, following an event of default, the Required

Lenders can direct the DIP Agent to exercise any and all remedies "under the Loan Documents

and applicable law" on behalf of the DIP Lenders.  Applicable law for this purpose includes

section 363(k) of the Bankruptcy Code.  Under section 15(a) of the Security and Pledge

Agreement, the DIP Agent may exercise remedies under the agreements or remedies "otherwise available to it," including "all the rights and remedies of a secured party on default under the Uniform Commercial Code" and the right to "sell the Collateral or any part thereof in one or more parcels at public or private sale." Section 10.07 of the DIP Credit Agreement provides that remedies under the DIP Credit Agreement are cumulative "and not exclusive of any other remedies provided by law."  Section 7.01 of the DIP Credit Agreement provides that, upon an event of default, the DIP Agent may, and at the request of the Required Lenders shall, "exercise any and all remedies under the Loan Documents and under applicable law available to the [DIP Agent] and the Lenders."  Pursuant to and in accordance with the foregoing authority of the DIP Agent and in conformity with the Procedures:  (i) by letter dated July 9, 2009, the DIP Agent, on behalf of itself and the DIP Lenders, properly notified the Debtors and other interested parties of the DIP Lenders' intention to submit a credit bid in connection with the sale by the Debtors of their property pursuant to section 363(b); (ii) by letter dated July 16, 2009, the DIP Agent, on behalf of itself and the DIP Lenders, properly submitted a Pure Credit Bid Support Letter (within the meaning of the Supplemental Procedures Modification Order), (iii) on July 26, 2009 the DIP Agent duly submitted on behalf of itself and all of the DIP Lenders a Pure Credit Bid that was duly authorized by all necessary action of the DIP Lenders and that became the Successful Alternative Transaction, and (iv) the DIP Agent is entering into an Assignment Agreement by and among DIP Holdco 3, LLC, the DIP Agent, and GM Components Holdings LLC pursuant to which the Agent is assigning the right to receive certain assets purchased pursuant to the Pure Credit Bid to DIP Holdco 3, LLC and other assets to GM Components Holdings LLC in exchange for certain consideration to be distributed by the DIP Agent to the DIP Lenders pursuant to the DIP Distributions.

L.    Notice.  A reasonable opportunity to object or be heard with respect to the

Motion and the relief requested therein has been afforded to all interested persons and entities,

including without limitation: (i) the Office of the United States Trustee for the Southern District

of New York, (ii) counsel for the official committee of unsecured creditors appointed in these

chapter 11 cases (the "Creditors' Committee"), (iii) counsel for the agent under the postpetition

credit facility, Davis Polk & Wardwell, 450 Lexington Avenue, New York, New York 10017

(Att'n: Donald Bernstein and Brian Resnick), (iv) counsel for other DIP Lender groups, including

the Tranche C Collective and the Manchester Entities, (v) all entities known to have asserted any

Property Interests (as defined below), except for Permitted Encumbrances, in, upon, or against

the Acquired Assets, (vi) all United States federal, state, and local regulatory or taxing

authorities or recording offices, including but not limited to environmental regulatory authorities,

which have a reasonably known interest in the relief requested by the Motion, (vii) all

counterparties to Assumed and Assigned Contracts, (viii) the United States Attorney's office, (ix)

the United States Department of Justice, (x) the Securities and Exchange Commission, (xi) the

Internal Revenue Service, (xii) all entities on the Master Service List (as defined by the

Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006,

9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management,

And Administrative Procedures (Docket No. 2883) (the "Supplemental Case Management

Order")), (xiii) counsel to General Motors Company and Motors Liquidation Company and their

affiliates; (xiv) counsel to Parnassus Holdings II, LLC and its affiliates, (xv) counsel to the

International Union, United Automobile, Aerospace and Agricultural Works of America and its

Local Unions; (xvi) counsel to all other labor unions representing the Debtors' hourly employees;

(xvii) the PBGC; and (xviii) such other entities as are required to be served with notices under the Supplemental Case Management Order.

M.     Not Sub Rosa Plan.  The consummation of the Amended Master Disposition Agreement outside of a plan of reorganization neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of a liquidating plan of reorganization for the Debtors.  The Amended Master Disposition Agreement does not constitute a sub rosa plan of reorganization.

N.     No Fraudulent Transfer.  The consideration provided by the Purchasing Entities (including, for this purpose, by the DIP Agent in connection with the DIP Lenders Bid) pursuant to the Amended Master Disposition Agreement (i) is fair and reasonable, (ii) is the highest or otherwise best offer for the Acquired Assets and Sale Securities, and (iii) constitutes reasonably equivalent value (as those terms are defined in each of the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, and section 548 of the Bankruptcy Code) and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia.  No other persons or entity or group of entities has offered to purchase the Acquired Assets or the Sale Securities for greater economic value to the Debtors' estates than the Purchasing Entities.  Approval of the Amended Master Disposition Agreement and the consummation of the transactions contemplated thereby is in the best interests of the Debtors, their estates, creditors, and other parties-in-interest.

O.     Purchasing Entities Not Successors To Estates.  None of the Purchasing Entities is a mere continuation of the Debtors or their estates.  The Purchasing Entities are a separate and distinct group from the Debtors, and there is no continuity of ownership or enterprise between any of the Purchasing Entities and the Debtors following the Closing.  None

11

of the Purchasing Entities is holding itself out to the public as a continuation of the Debtors. None of the Purchasing Entities is a successor to the Debtors or their estates and the consummation of the Amended Master Disposition Agreement does not amount to a consolidation, merger, or de facto merger of any of the Purchasing Entities and the Debtors.

P.    Validity Of Transfer.  Each Seller has full corporate power and authority to execute (or cause to be executed) the Amended Master Disposition Agreement and all other documents contemplated thereby, and the sale of the Acquired Assets and the Sale Securities in accordance with the Amended Master Disposition Agreement by the Sellers and related matters have been duly and validly authorized by all necessary corporate action of each of the Sellers. Each Seller has all of the corporate power and authority necessary to consummate the transactions contemplated by the Amended Master Disposition Agreement and has taken all corporate action necessary to authorize and approve the Amended Master Disposition Agreement and the consummation by such Seller of the transactions contemplated thereby.  No consents or approvals, other those expressly provided for in the Amended Master Disposition Agreement, are required for the Sellers to consummate the transactions set forth therein.

Q.    Sale Free And Clear Of Certain Interests.  On the Effective Date, the transfer of the Acquired Assets and the Sale Securities to the Purchasing Entities will be a legal, valid, and effective transfer of the Acquired Assets and the Sale Securities, and will vest, effective as of the Closing, (i) the Purchasing Entities with all right, title, and interest of the Sellers to the Acquired Assets and the Sale Securities free and clear (with the exception of the Assumed Liabilities and Permitted Encumbrances) of liens, claims, encumbrances, and other interests (collectively, the "Property Interests"), including, but not limited to, (1) those that purport to give to any party a right or option to effect any forfeiture, modification, right of first

12

refusal, or termination of the Purchasing Entities' interest in the Acquired Assets or the Sale

Securities, or any similar rights, (2) those relating to taxes arising under or out of, in connection

with, or in any way relating to the operation of the Debtors' assets prior to the Closing, and (3) (a)

those arising under all mortgages, deeds of trust, security interests, conditional sale or other title

retention agreements, pledges, liens, judgments, demands, encumbrances, rights of first refusal,

or charges of any kind or nature, if any, including, but not limited to, any restriction on the use,

voting, transfer, receipt of income, or other exercise of any attributes of ownership, and (b) all

debts or obligations arising in any way in connection with any agreements, acts, or failures to act,

of any of the Debtors or any of the Debtors' predecessors or affiliates, Claims (as that term is

defined in the Bankruptcy Code), obligations, liabilities, demands, guaranties, options, rights,

contractual or other commitments, restrictions, interests, and matters of any kind and nature,

whether known or unknown, contingent or otherwise, whether arising prior to or subsequent to

the commencement of the Chapter 11 Cases, and whether imposed by agreement, understanding,

law, equity or otherwise, including, but not limited to, Claims otherwise arising under doctrines

of successor liability and related theories; any liability or obligation calculable with reference to

the Debtors' businesses or operations; except as otherwise set forth herein or in the Amended

Master Disposition Agreement, any pension, welfare, compensation, or other employee benefit

plans, agreements, practices, and programs, including, without limitation, any pension plan of a

Debtor, any other employee, worker's compensation, occupational disease, or unemployment or

temporary disability related Claim, any products liability or similar Claims, whether pursuant to

any state or federal laws or otherwise, including, without limitation, asbestos Claims, including

those in any way relating to any manufacturing, sales, or distribution of asbestos-containing

products prior to the Closing, or exposure to asbestos in any of the Debtors' facilities or premises

13

prior to the Closing; any bulk sales or similar law; any brokerage commissions or similar claims relating to any of the Debtors' assets; tort Liabilities, including all Liabilities relating to personal injury and other tort claims of any nature and related matters, of Debtors and their Affiliates, or relating to the Business or any assets or properties of Debtors and their Affiliates; and any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended, in each case, to the fullest extent permitted by law.  The Purchasing Entities would not have entered into the Amended Master Disposition Agreement and would not consummate the transactions contemplated thereby, thus adversely affecting the Debtors, their estates, and their creditors, if the sale of the Acquired Assets and the Sale Securities to the Purchasing Entities, the assignment of the Acquired Contracts to the Purchasing Entities, the assumption of the Assumed Liabilities by the Purchasing Entities and the Company Sale Securities were not free and clear of all Property Interests or if the Purchasing Entities would, or in the future could, be liable for any of the Property Interests, other than Assumed Liabilities and Permitted Encumbrances.  The Purchasing Entities shall not be required or deemed to purchase any Excluded Assets.  Without limiting the generality of the foregoing, the DIP Agent shall not be a transferee of any of the Acquired Assets or the Sale Securities, nor shall it be responsible for any liabilities or obligations relating thereto or any obligations or representations of the Purchasing Entities with respect to the Amended Master Disposition Agreement, the Acquired Assets, the Sale Securities, or otherwise.  The Debtors may sell their interests in the Acquired Assets free and clear of all Property Interests, except for Permitted Encumbrances and Assumed Liabilities, because, in each case, one or more of the standards set forth in 11 U.S.C. § 363(f)(1)-(5) has been satisfied.  All holders of Property Interests, except for Permitted Encumbrances and Assumed Liabilities, who

did not object to the Sale, or withdrew their objections to the Sale, are deemed to have consented to the Sale pursuant to 11 U.S.C. § 363(f)(2).

R.    Operation Of Facilities.  The Purchasing Entities are entitled to operate the facilities being acquired after the Closing under the current Permits held by the applicable Seller until such Permits are assigned to the Purchasing Entities or the Purchasing Entities obtain similar Permits in their own name.

S.    Assumption And Assignment Of Contracts.  The Debtors have demonstrated that it is an exercise of their sound business judgment to assume and/or assign the Assumed and Assigned Contracts, as applicable, to the Purchasing Entities in connection with the consummation of the Sale, and the assumption and/or assignment of the Assumed and Assigned Contracts is in the best interests of the Debtors, their estates, and their creditors.  The Assumed and Assigned Contracts being assigned to, and the liabilities being assumed by, the Purchasing Entities are an integral part of the Acquired Assets being purchased by the Purchasing Entities and, accordingly, such assumption and/or assignment of Assumed and Assigned Contracts and liabilities is reasonable and enhances the value of the Debtors' estates.

T.    Cure And Adequate Assurance.  The Purchasing Entities have (i) cured, or have provided adequate assurance of cure, of any default existing prior to the Closing of the Sale under all of the Assumed and Assigned Contracts, within the meaning of 11 U.S.C. § 365(b)(1)(A), and (ii) provided compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date hereof under any of the Assumed and Assigned Contracts, within the meaning of 11 U.S.C. § 365(b)(1)(B).  The Purchasing Entities have provided adequate assurance of their future performance of and under the Assumed and Assigned Contracts, within the meaning of 11 U.S.C.

15

§§ 365(b)(1)(C) and 365(f)(2)(B).  Pursuant to 11 U.S.C. § 365(f), the Assumed and Assigned

Contracts to be assumed and assigned under the Amended Master Disposition Agreement shall

be assigned and transferred to, and remain in full force and effect for the benefit of, the

Purchasing Entities notwithstanding any provision in the contracts or other restrictions

prohibiting their assignment or transfer.

        U.      <u>Objections To Assumption And Assignment</u>.  Notwithstanding anything to

the contrary herein, this order shall not provide for the assumption and assignment of executory

contracts and unexpired leases covered by the objections on <u>Exhibit 3</u> hereto (the "Section 365

Objections") except to the extent that any objection was expressly considered and ruled on at the

Alternative Sale Hearing; <u>provided</u>, <u>however</u>, that to the extent counterparties to assumed and

assigned contracts or unexpired leases (a) failed to file and serve an objection to the MDA

Assumption and Assignment Notices (as defined in the Modification Procedures Order), or (b)

notwithstanding anything to the contrary in the Modification Procedures Order, failed to

challenge the adequate assurance of future performance of the applicable Purchasing Entity

within 10 days of service of notice that certain contracts will be assumed by the Debtors and

assigned to the Purchasing Entity (the "New Purchaser Assumption and Assignment Notice"),

such parties shall be bound by all findings and conclusions and decretal paragraphs herein

pertaining to the assumption and assignment of executory contracts and unexpired leases, and

shall be forever barred from objecting to or otherwise contesting the MDA Assumption and

Assignment Notices or the New Purchaser Assumption and Assignment Notice on grounds

inconsistent with this order.  The hearing on the Section 365 Objections; objections to the notices

sent to counterparties pursuant to the Modification Procedures Order, including without

limitation the notice of amended cure amount described herein (the "Amended Cure Amount

16

Notice") and the notice of non-assumption described herein (the "Notice of Non-Assumption");

and any objections to the New Purchaser Assumption and Assignment Notices not addressed by

this order is hereby scheduled for August 17, 2009, at 10:00 a.m. (prevailing Eastern time),

subject to further adjournment by the Debtors at least three days prior to such hearing upon

notice to the Court and the applicable counterparty.  Once adjourned, such objection shall be

scheduled for an available hearing date following 20-days' notice provided by the Debtors or the

Reorganized Debtors, as applicable, to the applicable counterparty, or such other date as may be

agreed upon.

          V.     <u>Sale In Best Interest Of Debtors And Their Stakeholders</u>.  The Debtors

have demonstrated (i) good, sufficient, and sound business purposes and justification for the Sale

because, among other things, the Debtors and their advisors diligently and in good faith analyzed

other available options and determined that (a) the terms and conditions set forth in the Amended

Master Disposition Agreement, (b) the transfer to Purchasing Entities of the Acquired Assets

pursuant to the terms of the Amended Master Disposition Agreement, and (c) the Purchase Price

together with the assumption of the GM Assumed Liabilities and the Company Assumed

Liabilities agreed to as reflected in the Amended Master Disposition Agreement are all fair and

reasonable and together constitute the highest or otherwise best value obtainable for the

Acquired Assets and (ii) that compelling circumstances for the Sale pursuant to 11 U.S.C. §

363(b) prior to the effective date of the Debtors' Confirmed Plan, as it may be modified, exist

because, among other things, absent the Sale the value of the Acquired Assets will be

substantially diminished.  Approval of the Amended Master Disposition Agreement and

consummation of the Sale of the Acquired Assets and assignment of the Assumed and Assigned

Contracts at this time are in the best interests of the Debtors, their stakeholders, their estates, and
other parties-in-interest.

        W.    <u>PBGC Settlement Agreement</u>.  The Debtors have demonstrated good,
sufficient, and sound business purposes and justification for entering into the Delphi-PBGC
Settlement Agreement, which was executed by Delphi and the PBGC on July 21, 2009.  The
PBGC Settlement Agreement was filed with the Bankruptcy Court on July 21, 2009 (Docket No.
18559).  The record reflects that the Debtors will be unable to reorganize under the Modified
Plan or any other conceivable plan of reorganization so long as the Debtors' liability under the
Pension Plans covered by the Delphi-PBGC Settlement Agreement exists.  The record also
reflects that clear grounds exist under Section 4042 of ERISA, 29 U.S.C. § 1342, for the PBGC
to initiate involuntary terminations of the Pension Plans, for the Debtors to enter into termination
and trusteeship agreements with the PBGC, and that the PBGC has determined to seek
involuntary terminations to reduce the PBGC's own exposure under the Pension Plans.  The
consideration provided under the Delphi-PBGC Settlement Agreement is fair and reasonable,
and is in the best interests of the estate, in light of the potential amount of a PBGC claim arising
out of plan termination and the need to obtain releases from the PBGC to effectuate the sale
pursuant to this Modified Plan and under the Amended Master Disposition Agreement.  For the
reasons set forth in the Debtors' Omnibus Reply, the Court finds that neither (1) the Delphi-
PBGC Settlement Agreement, (2) the potential involuntary termination of the Delphi HRP, nor
(3) the Debtors' consent to a termination and trusteeship agreement with the PBGC as a result of
the PBGC having decided to implement an involuntary termination of the Delphi HRP or the
Packard Hughes Bargaining Interconnect Bargaining Retirement Plan violates (a) the Labor
MOUs,  or any modifications thereto, (b) the orders of this Court pursuant to 11 U.S.C. §§ 363,

1113, and 1114 approving each of the Labor MOUs on terms and conditions described in those

orders (the "Union 1113/1114 Settlement Approval Orders"), (c) the Local Agreement Between

Delphi Connection Systems (formerly Packard-Hughes Interconnect) And Electronic And Space

Technicians Local 1553, or (d) section 1113(f) of the Bankruptcy Code.

NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND

DECREED THAT:

### Approval Of The Amended Master Disposition Agreement

1.        Pursuant to 11 U.S.C. § 363(b), the Amended Master Disposition

Agreement and all of the terms and conditions thereof are hereby approved.  All Objections to

the Sale that have not been withdrawn, waived, or settled, and all reservations of rights included

therein, are overruled on the merits.

2.        Pursuant to 11 U.S.C. § 363(b), the Debtors are authorized, but not

directed, to perform their obligations under the Amended Master Disposition Agreement and

comply with the terms thereof and consummate the Sale in accordance with and subject to the

terms and conditions of the Amended Master Disposition Agreement.  The Successful

Alternative Transaction was the highest or otherwise best bid at the Auction for the Acquired

Assets and Sale Securities set forth in the Amended Master Disposition Agreement.  The Sellers

are authorized to consummate the sale under the Amended Master Disposition Agreement,

pursuant to and in accordance with the terms and conditions of this order and the Amended

Master Disposition Agreement.  The Successful Alternative Transaction satisfies the

requirements of sections 363(k) of the Bankruptcy Code and constitutes a Pure Credit Bid in

accordance with the Procedures in an amount equal to 100% of the principal and interest due and

owing in respect of the DIP Loan under the DIP Credit Agreement, after giving effect to the

application of any cash collateral to the DIP Loan, and consummation of the transactions

contemplated by the Amended Master Disposition Agreement and the Disposition and

Assignment Agreement, and the making of the DIP Distributions (as hereinafter defined) comply

with and have been fully authorized under the DIP Credit Agreement and the Loan Documents.

3.      Each of the signatories to the Amended Master Disposition Agreement is

authorized, but not directed, to take all actions necessary or appropriate to effectuate the terms of

this order.

4.      The Debtors are authorized, but not directed, to execute and deliver, and

empowered to perform under, consummate, and implement, the Amended Master Disposition

Agreement, together with all additional instruments and documents as may be reasonably

necessary or desirable to implement the Amended Master Disposition Agreement, including but

not limited to any ancillary agreements thereto such as the Wind Down Funding Letter

Agreement, and to take all further actions as may be requested by the Purchasing Entities for the

purpose of assigning, transferring, granting, conveying, and conferring to the Purchasing Entities

or reducing to possession the Acquired Assets, the Assumed and Assigned Contracts, or as may

be necessary or appropriate to the performance of the obligations as contemplated by the

Amended Master Disposition Agreement.

5.      Binding Order.  This order and the Amended Master Disposition

Agreement shall be binding in all respects upon all stakeholders (whether known or unknown) of

the Debtors, the Purchasing Entities, all successors and assigns of the Purchasing Entities and the

Debtors, all affiliates and subsidiaries of the Purchasing Entities and the Debtors (including the

reorganized or reconstituted Debtors after the effective date of the Plan or any modification

thereto), and any subsequent trustees appointed in the Debtors' chapter 11 cases or upon a

conversion to chapter 7 under the Bankruptcy Code, and shall not be subject to rejection.  To the

extent that any provision of this order is inconsistent with the terms of the Amended Master

Disposition Agreement, this order shall govern.

6.      Amendment Of Documents.  The Amended Master Disposition

Agreement, the Direction and Assignment Agreement, and any related agreements, documents,

or other instruments may be modified, amended, or supplemented by the parties thereto and in

accordance with the terms thereof, without further order of the Court, provided that any such

modification, amendment, or supplement is consented to by the Debtors and does not have a

material adverse effect on the Debtors' estates or creditors or result in a material, substantive

modification of the Amended Master Disposition Agreement; provided, however, any provision

in the Amended Master Disposition Agreement or Company Buyer Operating Agreement

regarding distributions to holders of general unsecured claims of the Debtors shall not be

amended, modified, or waived to reduce or eliminate such distributions.  Any such modification,

amendment, or supplement shall promptly be filed with the Court, and shall be marked to

indicate any such change unless such change is obvious.

Sale And Transfer Of The Acquired Assets

7.      Sale Of Assets To The Purchasing Entities.  Pursuant to the terms of the

Amended Master Disposition Agreement, sections 363 of the Bankruptcy Code, as applicable,

and this order, on the Effective Date the Debtors shall consummate the transfer, free and clear of

any Claims, liens, and encumbrances pursuant to the terms of the Amended Master Disposition

Agreement and this order to the Purchasing Entities of the Acquired Assets, the Sale Securities,

the Assumed Contracts, and the Assumed Liabilities in accordance with the Amended Master

Disposition Agreement.

21

8.        Transfer Of Acquired Assets And Sale Securities Free And Clear.

(a)        Except for the Assumed Liabilities specifically assumed or the

Permitted Encumbrances expressly allowed in the Amended Master Disposition Agreement,

following Closing, the Purchasing Entities and the DIP Agent shall have no liability or

responsibility for any liability or other obligation of the Debtors arising under or related to the

Debtors or their assets, in each case to the extent permitted by applicable law.  Without limiting

the generality of the foregoing, the DIP Agent, and except as otherwise specifically provided in

this order or in the Amended Master Disposition Agreement, following Closing, the Purchasing

Entities shall not be liable for any Claims against the Debtors or any of their predecessors or

Affiliates, and the Purchasing Entities shall have no successor or vicarious liability of any kind

or character including, but not limited to, any theory of antitrust, environmental, successor or

transferee liability, labor law, de facto merger, substantial continuity, or product line, whether

known or unknown as of the Closing, now existing or hereafter arising, whether fixed or

contingent, with respect to the Debtors or any obligations of the Debtors arising prior to the

Closing.

(b)        Except for the Assumed Liabilities specifically assumed or the

Permitted Encumbrances expressly allowed in the Amended Master Disposition Agreement,

pursuant to the Amended Master Disposition Agreement, the Debtors may sell the Acquired

Assets and Sale Securities free and clear of all Property Interests because one or more of the

standards set forth in sections 363(f)(1)-(5) of the Bankruptcy Code have been satisfied.  The

sale, transfer, assignment, and delivery of the Acquired Assets and Sale Securities shall not be

subject to any Property Interests, and Property Interests of any kind or nature whatsoever shall

remain with, and continue to be obligations of, the Debtors, except as expressly provided in the

Amended Master Disposition Agreement.  Upon the Closing, all Persons holding Property

Interests against or in the Debtors, or the Acquired Assets, or the Sale Securities of any kind or

nature whatsoever shall be, and hereby are, forever barred, estopped, and permanently enjoined

from asserting, prosecuting, or otherwise pursuing such Property Interests of any kind or nature

whatsoever against the Purchasing Entities, their property, their successors and assigns, the

Acquired Assets, the Sale Securities, or any Person who holds the Sale Securities, as an alleged

successor or otherwise, with respect to any Property Interest of any kind or nature whatsoever

such Person or entity had, has, or may have against or in a Debtor, a Debtor's estate, their

respective officers, directors, shareholders, the Acquired Assets, or the Sale Securities, other than

as specifically set forth herein, including, without limitation, the right to enforce Assumed

Liabilities under the Amended Master Disposition Agreement.  Upon the Closing, other than

with respect to Assumed Liabilities and Permitted Encumbrances, no holder of a Property

Interest in the Debtors shall interfere with the Purchasing Entities' title to or use and enjoyment

of the Acquired Assets or any Person's title to or use of the Sale Securities based on or related to

such Property Interest or otherwise.

9.      Financing Statements And Related Actions.

(a)      Except with respect to Assumed Liabilities and Permitted

Encumbrances, if any Person or entity which has filed financing statements, mortgages,

mechanic's liens, lis pendens, or other documents or agreements evidencing Property Interests in

the Debtors or the Acquired Assets shall not have delivered to the Debtors prior to the Closing,

in proper form for filing and executed by the appropriate parties, termination statements,

instruments of satisfaction, or releases of all Property Interests which the Person or entity has

with respect to the Debtors or the Acquired Assets or otherwise, then, effective upon the Closing,

(a) the Debtors are hereby authorized and directed to execute and file such statements, instruments, releases, and other documents on behalf of the Person or entity with respect to the Debtors or the Acquired Assets and (b) the Purchasing Entities are hereby authorized to file, register, or otherwise record a certified copy of this order, which shall constitute conclusive evidence of the release of all Property Interests in the Debtors or the Acquired Assets of any kind or nature whatsoever.  The foregoing provision notwithstanding, the provisions of this order authorizing the sale and assignment free and clear shall be self-executing, and notwithstanding the failure of Debtors, the Purchasing Entities, or any other party to execute, file or obtain release, termination statements, assignments, or other instruments to effectuate, consummate, and/or implement the provisions hereof or the Agreement with respect to the sale and assignment of the Acquired Assets, all Claims and liens against and Property Interests (other than the Assumed Liabilities and Permitted Encumbrances) in the Acquired Assets shall be deemed released as provided herein.

(b)    Except with respect to the Assumed Liabilities, on the Closing, each of the Sellers' creditors and any other holder of a Property Interest is authorized and directed to execute such documents and take such other actions as may be necessary to release its Property Interests in the Acquired Assets, if any, as such Property Interests may have been recorded or may otherwise exist.

10.    Fair Value.  The consideration provided by the Purchasing Entities for the Acquired Assets and the Sale Securities under the Amended Master Disposition Agreement is fair and reasonable, and the Disposition Transactions may not be avoided under section 363(n) of the Bankruptcy Code.  The consideration provided by the Purchasing Entities for the Acquired Assets and the Sale Securities under the Amended Master Disposition Agreement constitutes

24

reasonably equivalent value and fair consideration under the Bankruptcy Code and under the
laws of the United States, any state, territory, possession, or the District of Columbia.

11.    Good Faith.  The transactions contemplated by the Amended Master
Disposition Agreement are undertaken by the Purchasing Entities, and to the extent applicable,
the DIP Agent, without collusion and in good faith, as that term is used in section 363(m) of the
Bankruptcy Code, and, accordingly, the reversal or modification on appeal of the authorization
provided herein to consummate the Disposition Transactions shall not affect the validity of the
Disposition Transactions (including the assumption and assignment of any of the Acquired
Contracts), unless such authorization is duly stayed prior to Closing is pending such appeal.  The
Purchasing Entities, and to the extent applicable, the DIP Agent, are entitled to all of the
protections afforded by section 363(m) of the Bankruptcy Code.

12.    Possession Of Acquired Assets.  All entities who are in possession of
some or all of the Acquired Assets on the Closing are hereby directed to surrender possession of
the Acquired Assets to the Purchasing Entities at Closing.

13.    Permits.  Applicable permitting authorities shall allow the Purchasing
Entities to operate the facilities being acquired after the Closing under the current Permits held
by the applicable Seller until such Permits are assigned to Purchasing Entities or Purchasing
Entities obtain similar Permits in their own name.

14.    Discharge Of DIP Loan And Cancellation Of Liens.  Upon the occurrence
of the Closing and the making of the distributions to the DIP Agent, the DIP Lenders, and the
Hedging Counterparties contemplated by the Amended Master Disposition Agreement and the
schedule of proposed DIP Lender distributions delivered by the DIP Agent to the Debtors (the
"DIP Distributions"), except as explicitly set forth in the Amended Master Disposition

25

Agreement , (i) the DIP Loan shall be fully discharged, released, terminated, and if necessary,

deemed waived, (ii) all Claims, liens, security interests, and obligations related thereto on

Collateral wherever located shall be fully discharged, released, terminated, and if necessary,

deemed waived without need for any further action, and (iii) the Debtors and the Reorganized

Debtors shall be fully discharged and released of all obligations of any kind relating to the DIP

Loan, and the Debtors and Reorganized Debtors shall have no further obligation to the DIP

Lenders under and relating to the DIP Loan; provided however that notwithstanding the above,

(w) the letters of credit under the DIP Loan shall receive the treatment set forth in the Amended

Master Disposition Agreement, (x) the Reorganized Debtors shall continue to be obligated on an

unsecured basis in respect of the indemnity to the DIP Agent as specified in the Credit

Agreement and section 13(d) of the DIP Facility Order, (y) DIP Lender professional fees that

have accrued prior to the Effective Date shall be assumed by the GM Buyer and shall be treated

as set forth in the Amended Master Disposition Agreement, and (z) the Hedging Agreements

shall be paid or assumed by the GM Buyer as set forth in the Amended Master Disposition

Agreement.  To the extent that the DIP Lenders or the DIP Agent have filed or recorded publicly

any liens and/or security interests to secure the Debtors' obligations under the DIP Loan, the DIP

Lenders or the DIP Agent, as the case may be, shall take any and all commercially reasonable

steps requested by the Company Buyer, GM Buyer, or Reorganized Debtors as may be necessary

to cancel and/or extinguish such publicly filed liens and/or security interests.  Notwithstanding

anything to the contrary contained in this order or the Amended Master Disposition Agreement,

all obligations and liens under the DIP Credit Agreement and the Loan Documents shall remain

in full force and effect and shall be enforceable in accordance with their terms until the Closing

under the Amended Master Disposition Agreement shall have occurred and the DIP Distributions

26

have been made, and the DIP Agent is hereby authorized, as an appropriate discharge of its

duties and responsibilities under the Loan Documents, to take such actions as it may deem

necessary or appropriate in connection with consummation of the transactions contemplated by

the Amended Master Disposition Agreement and the Disposition and Assignment Agreement,

and effecting the DIP Distributions, and the DIP Agent shall not be liable to any party for taking

any such action.

           15.    <u>Assertion Of Property Interests</u>.  Except as expressly set forth in the

Amended Master Disposition Agreement, all persons and entities, including, but not limited to,

all debt security holders, equity security holders, United States Federal, state, and local

governmental, tax, and regulatory authorities, lenders, trade creditors, and other stakeholders,

holding Property Interests of any kind or nature whatsoever against or in the Debtors or the

Acquired Assets (whether legal or equitable, secured or unsecured, matured or unmatured,

contingent or non-contingent, senior or subordinated), arising under or out of, in connection with,

or in any way relating to, the Businesses, the Acquired Assets, the operation of the Businesses by

the Debtors prior to the Closing of the Sale, or the transfer of the Acquired Assets to the

Purchasing Entities, hereby are forever barred, estopped, and permanently enjoined from

asserting against the Purchasing Entities, their successors or assigns, their property, or the

Acquired Assets, such persons' or entities' Property Interests.  Nothing in this order or the

Amended Master Disposition Agreement releases, nullifies, or enjoins the enforcement of any

Liability to a governmental unit under environmental laws or regulations (or any associated

liabilities for penalties, damages, cost recovery, or injunctive relief) that any entity would be

subject to as the owner, lessor, or operator of property after the Closing Date.  Nothing contained

in this order or in the Amended Master Disposition Agreement shall in any way (i) diminish the

obligation of the Buyer to comply with environmental laws or (ii) diminish the obligations of the

Debtors to comply with environmental laws consistent with their rights and obligations as

debtors in possession under the Bankruptcy Code.  Notwithstanding the above, nothing herein

shall be construed to permit any United States federal, state, or local governmental agency to

obtain penalties from the Purchasing Entities for days of violation of environmental laws and

regulations prior to Closing.

16.    Liability Under Environmental Laws.  Nothing in this Order or the

Amended Master Disposition Agreement releases, nullifies, or enjoins the enforcement of any

Liability to a governmental unit under Environmental Laws or regulations (or any associated

Liabilities for penalties, damages, cost recovery, or injunctive relief) that the Purchasing Entities

would be subject to as the owner, lessor, or operator of property after the date of entry of this

Order.  Notwithstanding the foregoing sentence, nothing in this Order shall be interpreted to

deem the Purchasing Entities to be the successors to the Debtors under any state law successor

liability doctrine with respect to any Liabilities under Environmental Laws or regulations for

penalties for days of violation prior to entry of this Order.

17.    New York Environmental Liability.  GM Components, as Buyer of the

Delphi Automotive Systems Site located at 1000 Lexington Avenue, Rochester, New York,

identified in the New York State Department of Environmental Conservation ("NYSDEC")

Environmental Site Remediation Database as Site Code 828064 (the "Rochester Facility"), and

the Delphi Thermal Systems Facility located at 200 Upper Mountain, Lockport, New York,

identified in the NYSDEC Environmental Site Remediation Database as Site Codes C932138,

C932139, C932140, and 932113 and in the NYSDEC Spill Incidents Database as Site Code

0651261 (collectively, the "Lockport Facility"), acknowledges that it shall be responsible for

28

conducting investigation and remediation of the Rochester Facility and the Lockport Facility in accordance with applicable Environmental Laws.  GM Components and NYSDEC shall confer in good faith to identify the remaining investigation and remediation required under applicable Environmental Laws for the Rochester and Lockport Facilities.

18.    Michigan Environmental Liability. GM Components and GM Global Steering Holdings LLC, as Purchasing Entities of certain Michigan facilities of Delphi under the Amended Master Disposition Agreement, both acknowledge that they shall be responsible for conducting investigation and remediation of the Delphi Michigan facilities acquired by them under the Amended Master Disposition Agreement in accordance with applicable Environmental Laws.  GM Components, GM Global Steering Holdings LLC, and the Michigan Department of Environmental Quality (MDEQ) shall confer in good faith to identify the remaining investigation and remediation required under applicable Environmental Laws with respect to the Delphi Michigan facilities GM Components and GM Global Steering Holdings LLC are acquiring under the Amended Master Disposition Agreement.   Neither GM Components nor GM Global Steering Holdings LLC will assert any defense to liability under Michigan Compiled Laws (MCL) 324.20126(1)(c)(i) and (ii) with respect to the Delphi facilities each is acquiring under the Amended Master Disposition Agreement.  Other than with respect to the Administrative Agent's right to exercise remedies against certain assets serving as collateral under the DIP Credit Agreement, DIP Order, and other related agreements, up until the closing of the Amended Master Disposition Agreement, all persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtors to sell and transfer the Acquired Assets to the Purchasing Entities, in each case in accordance with the terms of the Amended Master Disposition Agreement or this order.

29

Assumption And Assignment Of The Pre-Petition Contracts To The Purchasing Entities

19.    Assumption And Assignment.  Except with respect to those Pre-Petition Contracts that comprise the Section 365 Objections, pursuant to 11 U.S.C. § 365, and subject to and conditioned upon the Closing of the Sale, the Debtors' assumption and assignment to the applicable Purchasing Entities, and the Purchasing Entities' assumption on the terms set forth in the Amended Master Disposition Agreement, of the Pre-Petition Contracts is hereby approved, and the requirements of 11 U.S.C. §§ 365(b)(1) and 365(f) with respect thereto are hereby deemed satisfied.  The Debtors are hereby authorized in accordance with 11 U.S.C. §§ 105(a), 363, and 365 to (a) assume and/or assign to the applicable Purchasing Entities, effective upon the Closing of the Sale, the Assumed and Assigned Contracts free and clear of all Property Interests, except for Assumed Liabilities and Permitted Encumbrances of any kind or nature whatsoever and (b) execute and deliver to the Purchasing Entities such documents or other instruments as may be necessary to assign and transfer the Assumed and Assigned Contracts and Assumed Liabilities to the Purchasing Entities.

20.    Transfer Of Pre-Petition Contracts.  The Pre-Petition Contracts shall be transferred to, and remain in full force and effect for the benefit of, the Purchasing Entities in accordance with their respective terms, notwithstanding any provision in any such Pre-Petition Contract (including those of the type described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer and, pursuant to 11 U.S.C. § 365(k), the Debtors shall be relieved from any further liability with respect to the Pre-Petition Contracts after such assignment to and assumption of such contracts by the Purchasing Entities.

21.    <u>Cure</u>.  All defaults or other obligations of the Debtors under the Pre-Petition Contracts arising or accruing prior to the Closing of the Sale (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be cured by the Purchasing Entities in the manner set forth in section 9.3 of the Amended Master Disposition Agreement, either (i) at the Closing of the Sale or as soon thereafter as practicable or (ii) absent an agreement as to the Cure Amount between the Purchasing Entities, the Debtors, and the non-Debtor counterparty to a Pre-Petition Contract prior to the Closing of the Sale, by order of this Court, provided however, that for any Pre-Petition Contract having contested Cure Amounts as of the Closing, the applicable Buyer shall establish an escrow account funded with cash sufficient to pay the face amount of the disputed Cure Amounts asserted, the excess funds of which shall be returned to such Buyer as Cure Amounts are resolved.  The Purchasing Entities shall have no liability or obligation arising or accruing prior to the date of the Closing of the Sale, except as otherwise expressly provided in the Amended Master Disposition Agreement.  Cure shall be payable only to the counterparty to any Pre-Petition Contract.  Each non-Debtor counterparty to any Pre-Petition Contract shall be deemed to have consented to the assumption and assignment of its Pre-Petition Contract(s) to the applicable Buyer(s) and shall be forever barred, estopped, and permanently enjoined from asserting against the Debtors or the Purchasing Entities (or the property of any of them, including the Acquired Assets) any default, breach, claim, pecuniary loss, counterclaim, defense, breach, setoff, or condition to assignment existing, arising, or accruing as of the Closing of the Sale or any purported written or oral modification to such Pre-Petition Contract.  The failure of the Debtors or the Purchasing Entities to enforce prior to the Closing of the Sale one or more terms or conditions of any Pre-Petition Contracts shall not be a waiver of such terms or conditions or of

the Debtors' or Purchasing Entities' rights to enforce every term and condition of any such Pre-Petition Contracts.  There shall be no rent accelerations, assignment fees, increases (including of rates), or any other fees charged to the Debtors or the Purchasing Entities as a result of the assumption and assignment of the Pre-Petition Contracts.

22.    <u>Assignment Of Postpetition Contracts, Leases, And Purchase Orders To Buyers</u>.  The Debtors' postpetition contracts, leases, and purchase orders shall remain in full force and effect and shall be assignable pursuant to their terms and under applicable law.  To the extent postpetition contracts, leases, or purchase orders supersede or replace expired or otherwise terminated prepetition contracts, leases, or purchase orders, the non-Debtor parties to such postpetition contracts, leases, or purchase orders shall not be entitled to Cure for defaults arising under the expired or otherwise terminated prepetition contract, lease, or purchase order, regardless of whether such postpetition contract, lease, or purchase order is identified by the same reference number or contract number as the expired or otherwise terminated prepetition contract, lease, or purchase order.

23.    <u>Objections To Assumption And Assignment Not Addressed At Final Modification Hearing</u>.

(a)    Assumption and assignment of the executory contracts and unexpired leases covered by the Section 365 Objections, except to the extent that any objection was expressly considered and ruled on at the Alternative Sale Hearing, shall be subject to further approval by the Court.  The hearing on the Section 365 Objections; objections to the notices sent to counterparties pursuant to the Modification Procedures Order, including without limitation the Amended Cure Amount Notice and the Notice of Non-Assumption; and any objections to the New Purchaser Assumption and Assignment Notices not addressed by this order shall be held on

32

August 17, 2009, at 10:00 a.m. (prevailing Eastern time), subject to further adjournment by the

Debtors at least three days prior to such hearing upon notice to the Court and the applicable

counterparty.  Once adjourned, such objection shall be scheduled for an available hearing date

following 20 days' notice provided by the Debtors or the Reorganized Debtors, as applicable, to

the applicable counterparty, or such other date as may be agreed upon.

(b)      Notwithstanding any outstanding Section 365 Objections, the

Debtors are hereby authorized and directed in accordance with sections 105(a), 363(b), and 365

of the Bankruptcy Code and the terms of the Amended Master Disposition Agreement to (a)

assume and assign to the Purchasing Entities, upon the Effective Date, the Acquired Contracts

free and clear of all Property Interests of any kind or nature whatsoever other than the Assumed

Liabilities and (b) execute and deliver to the Purchasing Entities such documents or other

instruments as the Purchasing Entities deem may be necessary to assign and transfer the

Acquired Contracts and Assumed Liabilities to the Purchasing Entities.

24.      Freely Assignable.  Any provisions in any Acquired Contract that prohibit

or condition the assignment of such Acquired Contract or allow the non-Debtor party to such

Acquired Contract to terminate, recapture, impose any penalty, condition renewal or extension,

or modify any term or condition upon the assignment of such Acquired Contract, constitute

unenforceable anti-assignment provisions which are void and of no force and effect; provided

however, if any contract, permit, or other asset of the Department of Defense, the General

Services Administration, the Department of Energy or any other department or agency of the

United States designated by the President, which by the terms of the Amended Master

Disposition Agreement is intended to be included in the GM Acquired Assets or Company

Acquired Assets, is determined under 41 U.S.C. § 15 incapable of being assigned or transferred

33

(whether pursuant to Sections 363 or 365 of the Bankruptcy Code) to the Buyers upon Closing without the consent of another party thereto, the issuer thereof, or any third party, the Amended Master Disposition Agreement shall not constitute an assignment thereof, or an attempted assignment thereof, unless and until any such consent is obtained.

        25.    <u>Assignment Of Real Property Leases</u>.  Upon the Effective Date, in accordance with sections 363(b) and 365 of the Bankruptcy Code, the Purchasing Entities shall be fully and irrevocably vested in all right, title and interest of each Acquired Contract. Notwithstanding any outstanding Section 365 Objections, any portions of the property leases with respect to any of the Leased Real Property which purport to permit the landlords thereunder to cancel the remaining term of any of such leases if Sellers discontinue their use or operation of the Leased Real Property are void and of no force and effect, and shall not be enforceable against the Purchasing Entities, its assignees and sublessees, and the landlords under such leases shall not have the right to cancel or otherwise modify such leases or increase the rent, assert any Claim, or impose any penalty by reason of such discontinuation, Sellers' cessation of operations, the assignment of such leases to the Purchasing Entities, or the interruption of business activities at any of the leased premises.

Additional Provisions

        26.    <u>Approval Of PBGC Settlement Agreement</u>.

        (a)    The PBGC Settlement Agreement is hereby authorized and approved pursuant to section 363(b).  The Debtors are authorized, but not directed, to enter into the PBGC Settlement Agreement and to perform in accordance with its terms.  All parties are authorized to enter into such other documentation as may be reasonably necessary to effectuate the terms of the PBGC Settlement Agreement, including the execution and delivery of

34

termination and trusteeship agreements and any and all waivers, releases, discharges, exculpations, or other agreements or documents.  Section 4042 of ERISA, 29 U.S.C. § 1342, authorizes PBGC to seek termination of a pension plan upon making certain findings notwithstanding the provisions of a collective bargaining agreement and further permits the PBGC and the plan administrator to agree to termination of a plan without an adjudication. Section § 4041(a)(3) of ERISA, 29 U.S.C. § 1341(a)(3).

(b)    The Court finds that the Debtors may enter into such agreements with respect to the Delphi HRP or the Bargaining Plan (as defined in the PBGC Settlement Agreement) without violating the Labor MOUs or other applicable collective bargaining agreements, the Union 1113/1114 Settlement Approval Orders, Section 1113(f) of the Code or any other applicable law, and the Court expressly authorizes the Debtors to do so.  Nothing in this order prohibits employees or unions adversely affected by any plan termination from (a) seeking to intervene in any district court action filed by the PBGC under section 4042 of ERISA, 29 U.S.C. § 1342, to terminate the plans or (b) pursuing any independent action against the PBGC regarding the termination of the plan under section 4003(f) of ERISA, 29 U.S.C. § 1303(f).

27.    <u>Reasonably Equivalent Value</u>.  The consideration provided by the Purchasing Entities for the Acquired Assets under the Amended Master Disposition Agreement is hereby deemed to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code, the Uniform Fraudulent Conveyance Act, the Uniform Fraudulent Transfer Act, and the laws of the United States and any state, territory, or possession thereof, or the District of Columbia.

28.    <u>Miscellaneous</u>

35

(a)     The transfer of the Acquired Assets and the Sale Securities to the
Purchasing Entities pursuant to the Amended Master Disposition Agreement constitutes a legal,
valid, and effective transfer of the Acquired Assets and the Sale Securities, and shall vest the
Purchasing Entities with all right, title, and interest of the Sellers in and to the Acquired Assets
and the Sale Securities free and clear of all Property Interests other than the Assumed Liabilities
and Permitted Encumbrances.

(b)     Except as provided in the Amended Master Disposition Agreement
or this order, after the Closing, the Sellers and their estates shall have no further liabilities or
obligations with respect to any Assumed Liabilities and all holders of such Claims are forever
barred and estopped from asserting such Claims against the Debtors, their successors or assigns,
their property or their assets or estates.  The Purchasing Entities shall only be liable for such
liabilities to the extent set forth in the Amended Master Disposition Agreement.  All holders of
Claims are forever barred and estopped from asserting Claims against the Purchasing Entities
and the Acquired Assets and the Sale Securities related to the Excluded Assets.

(c)     This Order (a) shall be effective as a determination that, except for
the Assumed Liabilities, at the Closing all Property Interests of any kind or nature whatsoever
existing as to the Acquired Assets prior to the Closing have been unconditionally released,
discharged, and terminated, and that the conveyances described herein have been effected, and (b)
shall be binding upon and shall govern the acts of all entities including, without limitation, all
filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of
deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of
state, federal, state, and local officials, and all other Persons and entities who may be required by
operation of law, the duties of their office, or contract, to accept, file, register, or otherwise

record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Acquired Assets.

(d)    Each and every federal, state, and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Amended Master Disposition Agreement.

(e)    The Amended Master Disposition Agreement, the Direction and Assignment Agreement, and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment, or supplement is consented to by the Debtors and does not have a material adverse effect on the Debtors' estates or creditors or result in a material, substantive modification of the Amended Master Disposition Agreement; provided, however, any provision in the Amended Master Disposition Agreement or Company Buyer Operating Agreement regarding distributions to holders of general unsecured claims of the Debtors shall not be amended, modified, or waived to reduce or eliminate such distributions.  Any such modification, amendment, or supplement shall promptly be filed with the Court, and shall be marked to indicate any such change unless such change is obvious.

(f)    Notwithstanding anything contained herein to the contrary, the term "Acquired Assets" as defined in the Amended Master Disposition Agreement does not include property that is not property of the Debtors' estates, such as funds that are trust funds under any applicable state lien laws.

37

29.    <u>Binding Effect</u>.  The terms and provisions of the Amended Master
Disposition Agreement and this order shall be binding in all respects upon the Debtors, their
estates, and their stakeholders, the Purchasing Entities and their affiliates, successors, and assigns,
and any affected third parties, including, but not limited to, all entities asserting an Interest
and/or Claim against or in the Acquired Assets to be sold to the Purchasing Entities pursuant to
the Amended Master Disposition Agreement, notwithstanding any subsequent appointment of
any trustee or other fiduciary under any section of any chapter of the Bankruptcy Code, as to
which trustee or other fiduciary such terms and provisions likewise shall be binding.

30.    <u>No Revocation Of Permits Or Licenses</u>.  To the extent permitted by
section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any permit or
license relating to the operation of the Acquired Assets sold, transferred, or conveyed to the
Purchasing Entities on account of the filing or pendency of these chapter 11 cases or the
consummation of the Sale.

31.    <u>Approval In Entirety</u>.  The failure specifically to include or to reference
any particular provision of the Amended Master Disposition Agreement in this order shall not
diminish or impair the effectiveness of such provision, it being the intent of the Court that the
Amended Master Disposition Agreement be authorized and approved in its entirety.

32.    <u>Computer Sciences Corporation</u>.  Notwithstanding anything contained
herein to the contrary, nothing in this order shall in any way prejudice the rights, claims, causes
of action, counterclaims, defenses, affirmative defenses, or remedies of the Debtors or Computer
Sciences Corporation regarding the matters pending in Adversary Proceeding No. 09-01271
(RDD), and nothing in this order shall in any way provide any preclusive relief with respect to
the same.

38

33.    <u>Jurisdiction</u>.  This Court retains exclusive jurisdiction to interpret,

construe, enforce, and implement the terms and provisions of this order, the Amended Master

Disposition Agreement, all amendments thereto, any waivers and consents thereunder, and of

each of the agreements executed in connection therewith in all respects, including, but not

limited to, retaining jurisdiction to (a) compel delivery of the Acquired Assets to the Purchasing

Entities, (b) compel delivery of the purchase price or performance of other obligations owed

pursuant to the Amended Master Disposition Agreement, (c) resolve any disputes arising under

or related to the Amended Master Disposition Agreement, except as otherwise provided therein,

(d) interpret, implement, and enforce the provisions of this order, (e) protect the Purchasing

Entities against any Property Interests, except for Permitted Encumbrances against or in the

Debtors or the Acquired Assets, of any kind or nature whatsoever, attaching to the proceeds of

the Sale, and (f) determine all disputes among the Debtors, the Purchasing Entities, and any non-

Debtor parties to any Assumed and Assigned Contracts concerning, inter alia, the Debtors'

assumption and/or assignment of any Assumed and Assigned Contract to the Purchasing Entities

under the Amended Master Disposition Agreement.

Dated:  New York, New York
           _____, 2009


                              _____
                              UNITED STATES BANKRUPTCY JUDGE

39