1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case No. 05-44481-rdd

- - - - - - - - - - - - - - - - - - - -x

In the Matter of:


DELPHI CORPORATION, ET AL.,


        Debtors.


- - - - - - - - - - - - - - - - - - - -x


                United States Bankruptcy Court

                One Bowling Green

                New York, New York


                July 24, 2009

                10:02 AM


B E F O R E:

HON. ROBERT D. DRAIN

U.S. BANKRUPTCY JUDGE

2

1

2    Hearing re:   Emergency Motion for Order under Sections 105(a)

3    and 362 of The Bankruptcy Code (I) Enforcing Automatic Stay or,

4    in Alternative (II) Extending Automatic Stay Provisions of

5    Section 362 of the Bankruptcy Code to Certain Actions Against

6    the Debtors' Officers and Directors

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24    Transcribed by:  Hana Copperman

25

3

1

2   A P P E A R A N C E S :

3   SKADDEN ARPS SLATE MEAGHER & FLOM, LLP

4         Attorneys for Debtors

5         333 West Wacker Drive

6         Chicago, Illinois 60606

7

8   BY:   ALBERT L. HOGAN, III, ESQ.

9         JOHN WM. BUTLER, ESQ.

10

11   MORRISON COHEN LLP

12         Attorneys for Dennis Black and Charles Cunningham

13         909 Third Avenue

14         New York, NY 10022-4731

15

16   BY:   JOSEPH T. MOLDOVAN, ESQ.

17         MICHAEL R. DAL LAGO, ESQ.

18

19   WILLKIE FARR & GALLAGHER LLP

20         Attorneys for Collective of DIP Lenders

21         787 Seventh Avenue

22         New York, NY 10019

23

24   BY:   MICHAEL J. KELLY, ESQ.

25         (TELEPHONICALLY)

4

1              P R O C E E D I N G S

2          THE COURT:  Please be seated.  Okay.  Good morning.

3    We're here on Delphi Corporation.

4          MR. HOGAN:  Good morning, Judge.  Al Hogan from

5    Skadden Arps Slate Meagher & Flom on behalf of the debtors.

6    Judge, we are here this morning on the debtors' emergency

7    automatic stay enforcement motion, filed at docket number

8    18579.  Judge, after the hearing yesterday I spent a

9    considerable amount of time with opposing counsel attempting to

10   resolve our issues consistent with Your Honor's guidance.  As

11   reflected in the letter submitted to chambers this morning by

12   opposing counsel, unfortunately that wasn't the case.  And the

13   crux of the issue, Judge, is that the debtors and the DSRA

14   have a fundamental disagreement over whether the DSRA's

15   activities, both taken and, apparently, as planned, would, or

16   could, violate the automatic stay as it pertains to those

17   actions that have been or may be taken against the debtors or

18   their representatives.

19          And, Judge, we believe that the answer to that

20   question is clearly yes, that their actions in Michigan and the

21   actions that they appear intending on taking will, in fact,

22   violate the automatic stay inasmuch as it relates to the

23   activities that the debtors are undertaking in this court.  We

24   also believe, Judge, and I want to talk a little bit about the

25   letter that was submitted, but we also believe, Judge, that

5

1    given the status of these cases right now, given the very

2    dynamic situation in which we find ourselves, that it's

3    important, actually, that we obtain the order that we sought

4    through this emergency motion.

5           Quite honestly, we need to start getting certainty

6    around the multitude of variables that we're dealing with to

7    bring our plan modification motion before Your Honor, hopefully

8    next week.  And so we believe quite strongly, notwithstanding

9    the letter that the DSRA submitted, that the entry of the order

10   that we've submitted to chambers this morning should follow

11   from this hearing.

12          So, Judge, I want to talk a little bit about how we

13   crafted that order first.  In our proposed order we paid a lot

14   of attention to what Your Honor guided us with respect to

15   yesterday in terms of your thinking on this matter.  We tried

16   to faithfully incorporate that guidance, and what we perceived

17   as a key component of that was your focus and your reference on

18   the UAL case that the debtors not attempt through the

19   proceedings here to advocate or otherwise lessen the rights

20   that DSRA may have with respect to the propriety of the PBGC's

21   actions with respect to the salary plans.

22          Conversely, we understood that Your Honor was inclined

23   to believe, and we agree completely, that actions that the DSRA

24   may take outside this Court that go beyond protecting those

25   statutory interests that they have with respect to the

6

1   propriety of the PBGC's actions, where they actually expand

2   those and seek to impinge upon the debtors' rights and the

3   debtors' obligations under, for example, the PBGC settlement

4   agreement, we took Your Honor's guidance yesterday to lean in

5   the direction that that would violate the automatic stay.  We

6   believe so very clearly, and so we've incorporated those two

7   balancing concepts in the order that we've submitted to Your

8   Honor.

9           Before I go through the order I want to just speak a

10  little bit about why we believe that your guidance yesterday

11  was the correct one and why entry of the order would be

12  appropriate.  Judge, earlier in this case, with respect to a

13  question on the automatic stay, there was a phrase in one of

14  your rulings where you said that a party cannot do indirectly

15  what you're clearly prohibited from doing directly.  And,

16  technically, the Second Circuit mechanics for approaching this

17  question is looking at an identity of interests.  Another

18  comment, previously, with respect to this identical issue, is

19  that where you have a situation such that the action against a

20  codefendant in some other court is, in essence, an action

21  against the debtor, the automatic stay has been found to apply

22  and/or extend to the codefendant.  And that's previous

23  citations with respect to the Nygard case, the North Star

24  construction case and the Lomas Financial Corporation case.

25          And so, Judge, really, when you focus on the issue, in

7

1   this case the DSRA, in its Michigan action and what they appear

2   to be planning on doing with respect to intervention, is

3   attempting to exercise some neatly tailored drafting to avoid

4   naming the debtors but, in fact, is making it so they don't --

5   they don't want to facially violate the automatic stay, and we

6   appreciate that.  But what they're really doing is naming other

7   parties, codefendants, in a way that directly affects what the

8   debtors' obligations are and what the debtors, frankly, control

9   of their property is in this Court.

10          So when you look at what they were seeking in the TRO,

11   what they were seeking to do is to enjoin some named defendants

12   from executing an agreement with the PBGC.  Now, Judge, the

13   reason why those three named defendants, I would submit the

14   straw man that was set up in that Michigan action, is that

15   those three named defendants were acting as the plan

16   administrator.  And so they could go off to another Court and

17   seek to enjoin those folks.

18          But the simple fact is, Judge, under the salaried plan

19   Delphi Corporation is the plan sponsor.  Delphi Corporation is

20   the plan administrator.  And so under the PBGC settlement

21   agreements Delphi Corporation has undertaken certain

22   obligations with respect to the PBGC, one of which is that the

23   plan administrator, upon entry of an order by this Court

24   confirming our plan of reorganization, the plan administrator

25   is going to execute some agreements with the PBGC resulting in

8

1    a termination of the salaried plans.

2         That is clearly within the province of Delphi

3    Corporation as the plan administrator, and it's clearly

4    required under the PBGC settlement agreement.  And, Your Honor,

5    I don't have to belabor the importance of the PBGC settlement

6    agreement to the debtors' restructuring.  It resolves a 7

7    billion dollar claim.  It's necessary for closing of the master

8    disposition agreement.  Without it the plan can't be

9    consummated if it -- it certainly can't be consummated.  So

10   it's quite clear, when you understand what was actually being

11   attempted in that Michigan action, that the plaintiffs were

12   seeking to restrain Delphi Corporation from executing a

13   document that is required under the PBGC settlement agreement.

14        So when it's understood thus, the identity of

15   interests is compelling in this case, and we think that the

16   automatic stay directly applies.

17        THE COURT:  Well, I have that pleading before me, but

18   I don't know what they're going to be doing now, right?  I

19   don't have a record of what these individuals, or this group,

20   intends to do going forward, right?  Because they've withdrawn

21   that pleading at this point.

22        MR. HOGAN:  Well, Judge, it appears that they've

23   withdrawn the pleading in the Michigan action, but there's no

24   question that they filed that action, they filed the temporary

25   restraining order, and in the time we brought on the motion I

9

1    believe they're in violation of the automatic stay.

2         There's also no question that they intend to intervene

3    in what appears to be the PBGC actions, which, by the way, were

4    not filed pursuant to the PBGC settlement agreement.  Those

5    were actions that the PBGC independently took.  The PBGC

6    settlement agreement with the debtors contemplates them taking

7    action under the settlement agreement after the plan

8    modification order is approved.

9         THE COURT:  Right.

10        MR. HOGAN:  And so, and one thing I want to point out

11   in --

12        THE COURT:  But, conceivably, all they would do in

13   that action would be what's covered under your paragraph 4.  I

14   mean, I don't really know what they're going to do.  So aren't

15   you asking me to sort of given an advisory opinion when the

16   stay is out there already, and everyone knows the safest thing

17   to do is to come and seek relief from the stay before taking an

18   action that might overstep it?

19        MR. HOGAN:  Judge, I suspect that your guidance would

20   certainly lead people to take that action in the future.  But

21   what I would submit, Judge, is that given the rapid nature with

22   which things are developing --

23        THE COURT:  Rabid?

24        MR. HOGAN:  Rapid.  Rapid.

25        THE COURT:  A-P.

10

1          MR. HOGAN:  The very --

2          THE COURT:  R-A-P.

3          MR. HOGAN:  R-A-P.

4          THE COURT:  Okay.

5          MR. HOGAN:  There's a lot of moving parts to this

6     particular piece of a larger puzzle where there's a lot of

7     moving parts.

8          THE COURT:  But that's why it's all the more important

9     to proceed carefully to seek relief from the stay if there's

10    any concern about a violation of it, I would think.

11         MR. HOGAN:  I would agree with that, Judge.  I'm just

12    troubled by the activities that we've seen so far.  Frankly,

13    I'm troubled by the fact that what happened here was an attempt

14    to intervene in these cases, file an objection in these cases,

15    then filing an action in the Michigan Court, a TRO there.  Now,

16    apparently, a withdrawal of some of their objections here.

17    Although, Judge, the motion to intervene was granted yesterday,

18    so the DSRA has intervened in these cases.  If they want to

19    withdraw their objection I suppose they can do that.  Now it

20    appears that they want to go to the PBGC action, so I'm

21    troubled by the number of forum -- it seems to be a fair amount

22    of forum sampling going on here.  And I really do think, given

23    the circumstances, that entering an order making it clear what

24    can and cannot happen, and it's really based on what activities

25    we've already seen and what's promised.  They're promising that

11

1    they're going to go to the PBGC action.  And, Judge, one thing

2    that they say --

3         THE COURT:  But they're not promising that they're

4    seeking an injunction, are they?  I mean, they're not saying

5    that at this point.

6         MR. HOGAN:  Judge, I --

7         THE COURT:  It's unlike the earlier pleading where

8    they say we're going to go seek an injunction.

9         MR. HOGAN:  Judge, I think that's right.  I don't

10   think they come out and say we're going to seek an injunction.

11   But they do say in their papers that the filing by the PBGC

12   establishes the PBGC action and the Michigan District Court as

13   the exclusive forum for all litigation concerning the Delphi

14   Retirement Program for Salaried Employees, the salaried plan.

15   That is --

16        THE COURT:  Well, obviously that's not right, because

17   you have a motion for approval of the settlement with the PBGC

18   in front of me.

19        MR. HOGAN:  That's exactly correct.  And as to who --

20        THE COURT:  But they're not seeking a ruling on that

21   from me.  That's just a statement, right?

22        MR. HOGAN:  It's a statement, Judge, but it causes a

23   lot of concern that what we're going to see in that action are

24   activities which are designed to either directly influence what

25   Delphi does or what was done in the Michigan action.  Again,

12

1    the plan administrator is Delphi Corporation, and so, Judge, we

2    believe strongly that the only Court that can operate as to

3    limit the plan administrator's obligation, exercise of its

4    obligations, is this Court.

5            THE COURT:  Okay.

6            MR. HOGAN:  And so the order that we're proposing

7    absolutely maintains their right to go intervene in that

8    action.  Absolutely maintains their rights to seek a

9    determination under 1303(f) with respect to the propriety of

10   the PBGC's actions.  It just makes it very clear that as to

11   what's before this Court, the operations of Delphi as the

12   debtor here, as the plan sponsor, and as the plan

13   administrator, which is clearly defined under the salaried

14   plan, that they can't go and try and do in that Court -- they

15   can't go and try and bind those entities as to those

16   activities.

17           And so, Judge, when we look at the order that I

18   proposed Your Honor, we believe it's clearly called for.  It

19   gives us some certainty and some clear guidance as to this

20   aspect of our case, which is, again, moving at a very rapid

21   pace.

22           And so, Your Honor, I can lead you through the order,

23   but I think it's pretty straightforward.  Again, it preserves

24   their right --

25           THE COURT:  No, I've read it.  I mean, the key

13

1    paragraphs are two and four.

2         MR. HOGAN:  That's correct, Your Honor.  And here,

3    again, it preserves their rights, their full statutory rights,

4    to do what they want to do in the Michigan Court.  It makes it

5    clear that Delphi Corporation is plan sponsor, plan

6    administrator.  Those activities should be dealt with here in

7    this Court.  And we believe it's an appropriate order to enter

8    at this juncture in the cases.

9         THE COURT:  Okay.

10        MR. HOGAN:  Okay?  Thank you, Judge.

11        MR. MOLDOVAN:  Good morning, Your Honor.

12   Joseph Moldovan, Morrison Cohen --

13        THE COURT:  Good morning.

14        MR. MOLDOVAN: -- on behalf of Dennis Black and

15   Charles Cunningham.  One housekeeping matter.  I apologize,

16   Your Honor.  My ERISA counsel, the Washington law firm, has

17   been trying to get onto CourtCall but was informed that they

18   were not authorized to do so, so I don't have them on the

19   phone.  I'd like the --

20        THE COURT:  I don't know if they asked to be on it.

21        MR. MOLDOVAN:  Well, they were on the call yesterday,

22   Your Honor, and I believe they tried to get on today and were

23   told they were not authorized.

24        THE COURT:  They're set up each day separately.

25        MR. MOLDOVAN:  And I think they were told they weren't

14

1    authorized.

2         THE COURT:  Is the operator from the CourtCall on the

3    call now?  This is Judge Drain.  You can hook them in.  I'm

4    telling you it's okay to hook them in.

5         OPERATOR:  Judge, I have Amy Laban (ph.) on line.

6         MR. MOLDOVAN:  We'll send him an e-mail if that's all

7    right, Your Honor, and ask him to try to dial in.

8         THE COURT:  Yes.

9         MR. MOLDOVAN:  Thank you.

10        OPERATOR:  If you need me to dial out to someone I

11   would be more than happy to do that if you give me a name and

12   number.

13        MR. MOLDOVAN:  Thank you, Your Honor.  I apologize for

14   this.

15        THE COURT:  No problem.

16        MR. MOLDOVAN:  The name is Timothy O'Toole, and the

17   number is 202-626-5552.

18        OPERATOR:  You said that's 14:21 Timothy O'Toole?

19        MR. MOLDOVAN:  That's correct.

20        OPERATOR:  We'll have him joined momentarily.  Does he

21   need to have an open line, sir?

22        THE COURT:  Does he need what?

23        OPERATOR:  Does he need to have an open line?

24        THE COURT:  Yes.

25        OPERATOR:  Okay.

15

1          THE COURT:  Okay.

2          MR. MOLDOVAN:  Thank you.

3          THE COURT:  You can go ahead.

4          MR. MOLDOVAN:  Thank you, Your Honor.

5          THE COURT:  You can go ahead.

6          MR. MOLDOVAN:  I think I can respond relatively

7    briefly and, also, address some of the points that Your Honor

8    raised both today and yesterday.  The action in Michigan has

9    been dismissed.

10         THE COURT:  Brought by your clients?

11         MR. MOLDOVAN:  That's correct, Your Honor.

12         THE COURT:  Right.

13         MR. MOLDOVAN:  It was dismissed at --

14         THE COURT:  So that would effectuate paragraph 3 of

15   this proposed order.

16         MR. MOLDOVAN:  That would effectuate it.

17         THE COURT:  Right.

18         MR. MOLDOVAN:  But paragraph 3 is, therefore, no

19   longer necessary.

20         THE COURT:  Right.

21         MR. MOLDOVAN:  As is a finding for a determination by

22   this Court that the stay applies, because there is no action

23   pending.  This is no justiciable controversy, and, therefore, I

24   believe that the issue is moot.  I do understand the concerns

25   that have been raised by Delphi's counsel, but, nevertheless,

16

1    procedurally I believe that the issue before this Court with

2    respect to their enforcement motion has been mooted by the

3    dismissal of the Michigan action.

4           We do not know, Your Honor, what the retirees, re --

5    salaried workers will do.  To the extent that they participate

6    in the PBGC filed action in Detroit they will be bound by the

7    rules of that Court, the rules of ERISA and the rules of this

8    Court and Your Honor's guidance yesterday with respect to the

9    automatic stay.

10          THE COURT:  And, ultimately, they will be bound by the

11   automatic stay.

12          MR. MOLDOVAN:  Yes, Your Honor.

13          THE COURT:  Okay.

14          MR. MOLDOVAN:  To the extent that they seek an action

15   or seek to do anything which implicates the stay, either in its

16   explicit capacity or by extension under Section 105 or the

17   doctrines that have been enunciated by this circuit in Calpine,

18   Queenie and others.

19          And we are mindful of those.  And we are mindful of

20   Your Honor's comments yesterday about the necessity of taking

21   action in this Court prior to taking action in some other Court

22   where the stay might be implicated.

23          It is, I think, critical just to make a couple of

24   points, because I do think that the letter we submitted to this

25   Court is comprehensive of the issues that have been raised by

17

1   the debtors, and, also, address the issues that have been

2   raised by Your Honor.

3        First, there has been no forum shopping here.  Your

4   Honor was concerned yesterday and expressed your concern about

5   gamesmanship.  I hope that in the letter that we presented we

6   stated to the Court why we believe in good faith that those

7   actions taken in different forum were taken and addressed to

8   Courts solely based upon those Courts specific jurisdiction and

9   venue.

10       THE COURT:  All right.  Well, on that score I accept

11  that you and your cocounsel were somewhat in the dark and

12  facing a tight deadline.  My focus was more on preventing

13  confusion or duplicate rulings or potentially conflicting

14  rulings on the same facts going forward and encouraging you all

15  to avoid gamesmanship going forward.  And that obviously

16  pertains in the future, also, in respect of actions that people

17  may be taking.

18       I will note that, for example, the complaint that was

19  brought in Michigan sued these individuals not only in their

20  fiduciary capacity but in their individual capacity and clearly

21  could be read, since it does that, when it sought preliminary

22  injunctive relief as even going so far as to enjoin them from

23  taking any action, including as an employee of Delphi or as an

24  executive of Delphi, from taking action.  So there was clearly

25  a potential there for real overlapping relief being sought.

18

1    But my concern was more to avoid it now that the picture was

2    clearer and to make sure that people focused on it going

3    forward.

4          MR. MOLDOVAN:  And, Your Honor, we will.  And Your

5    Honor we did not -- it is not my understanding that it was the

6    intention in that complaint to seek any action against the

7    individuals except in their fiduciary capacity.

8          THE COURT:  Right.  But they were --

9          MR. MOLDOVAN:  I understand.

10          THE COURT:  That's not how they were named.

11          MR. MOLDOVAN:  I understand that, Your Honor.

12          THE COURT:  Okay.

13          MR. MOLDOVAN:  With respect to the issues that we

14    raised about what actions the salaried workers could take, or,

15    as debtors' counsel stated, appear intending on taking.

16    Whatever actions those are are subject to the rules and

17    guidance of, as I said, the Court in Michigan and also whatever

18    rights they have under ERISA.  I don't believe that this Court

19    or that Delphi should be suggesting, or would be suggesting,

20    that workers don't have rights under ERISA.  Where those rights

21    touch on the debtors there may be a tension and something that

22    needs to be resolved.  The ERISA rights that we are expressly

23    dealing with here are, I think, fairly clearly set forth, and

24    when we stated in our letter that the Michigan Court is the

25    sole Court that has jurisdiction and that the various ERISA

19

1    issues raised may only be raised to a district court, those

2    related to termination of the plan by the PBGC are not --

3         THE COURT:  All right.  But, again, Mr. Moldovan, all

4    sorts of creditors have rights, underlying non-bankruptcy

5    rights.  Trade creditors of Delphi have rights against Delphi

6    under their contracts.  And tort claimants have rights against

7    Delphi under their contracts, and there may be some tort

8    claimants who have an exclusive forum to pursue those rights.

9    That doesn't mean that the automatic stay goes away for them to

10   have the ability to pursue those rights.  They still have to

11   come to this Court and ask for relief from the automatic stay

12   to go ahead and pursue those non-bankruptcy rights.  That's, I

13   mean, the stay comes first.  That's why it's automatic.  So --

14        MR. MOLDOVAN:  I don't.

15        THE COURT:  I appreciate that there is a forum under

16   ERISA for certain rights to be heard, and I appreciate that

17   people may have those rights, ultimately, but that doesn't stop

18   the automatic stay from applying where it applies.

19        MR. MOLDOVAN:  I don't suggest that it does, Your

20   Honor.  And I won't --

21        THE COURT:  Okay.  All right.  There was sort of an

22   implication in your letter that perhaps it did.

23        MR. MOLDOVAN:  No.  That is not my --

24        THE COURT:  Okay.

25        MR. MOLDOVAN:  That was not the intent of the letter.

20

1        THE COURT:  All right.

2        MR. MOLDOVAN:  The stay, I'm well aware of the impact

3    of the stay --

4        THE COURT:  All right.

5        MR. MOLDOVAN:  -- and the importance of the stay,

6    especially in my debtor practice.

7        THE COURT:  Okay.

8        MR. MOLDOVAN:  The order that has been presented to

9    this Court by Delphi contains within it certain findings which,

10   as I've stated, we believe are completely unnecessary and

11   mooted by the dismissal of the action.  We believe that we have

12   been properly warned by this Court as to the likely consequence

13   of an action taken in violation of what this Court's directions

14   are, and we will be guided by that in the actions that we take,

15   whatever they may be, in whatever forum.

16        We believe, therefore, that there is no reason for

17   this Court to enter this order presented by the debtors, or any

18   order, for that matter, other than an order stating that by

19   virtue of the dismissal the motion for enforcement has been

20   mooted.  We have already acceded to the provision in paragraph

21   3, as Your Honor has noted, and all paragraph 4 does is state

22   that we have whatever rights we have.  We don't need --

23        THE COURT:  Well, paragraph 2 is the one you don't

24   want to have entered.

25        MR. MOLDOVAN:  Yes.  Paragraph 2.  I was going to get

21

1    to that.  Paragraph 2 is a finding of fairly significant import

2    for this case and potentially others, and one that this Court

3    need not, and, in my view, ought not, make.  It would have the

4    effect of potentially meaning that a participant in a plan

5    where any of these salaried workers could not, in any manner,

6    raise challenges in the PBGC action, which would, pending in

7    Detroit, which we concede is the forum in which plan

8    termination is now pending.  We are not dealing with the

9    settlement with the PBGC, which is exclusively the province of

10   this Court.  And we believe that the language in that order is

11   so broad as to potentially hamper any legitimate exercise by

12   the salaried workers of their rights.  And we believe it is

13   unnecessary.

14         Again, we understand Your Honor's direction to the --

15         THE COURT:  Well, again, I mean, when you say

16   legitimate you mean legitimate without the automatic stay

17   applying.

18         MR. MOLDOVAN:  No, no, no.  Your Honor --

19         THE COURT:  I mean lots of people have legitimate

20   rights.

21         MR. MOLDOVAN:  Mindful --

22         THE COURT:  You know, all the people with allowed

23   claims have legitimate rights --

24         MR. MOLDOVAN:  No.

25         THE COURT:  --but the --

22

1          MR. MOLDOVAN:  Your Honor, mindful of the effect of

2     the stay --

3          THE COURT:  Right.

4          MR. MOLDOVAN:  I'm simply stating that we could not

5     exercise rights under ERISA in that action at all.  And,

6     therefore I think that this is --

7          THE COURT:  Well, you could come and get relief from

8     the stay to exercise them.

9          MR. MOLDOVAN:  Your Honor, we could.  But there may be

10    things that we're permitted to do in that action that are not

11    implicated by the stay.  I don't know.  I'm not an ERISA

12    lawyer.  They're on the phone, I hope.  But it is my

13    understanding that there is a certain procedure that the PBGC

14    will employ, to the extent that the salaried workers who want

15    to participate in that process, they may take such action as is

16    necessary.  And to the extent that they do anything which would

17    in any way affect this estate, I'll be back before this Court

18    seeking appropriate relief.

19         THE COURT:  Okay.  All right.  Before we go a lot

20    further I do want to point out a case to both of you that is

21    influencing my thinking on this.  It's one of the many cases in

22    the LTV bankruptcy dealing with pension issues.  And it's In re

23    Chateaugay Corp. at 76 B.R. 945 (S.D.N.Y. 1987), a district

24    court case in which there was an appeal from a very broad order

25    entered by Judge Lifland early in the case that essentially

23

1    channeled pension litigation, with some exceptions, into the

2    bankruptcy court.

3            And I think it's relevant here for a couple of

4    reasons.  One is one of the appellants was a plaintiff, or a

5    group of plaintiffs, in a lawsuit where LTV was the

6    administrator of the plan, along with LTV officers and

7    directors, who were also plan fiduciaries.  As with many

8    lawsuits under that scenario, which are described here, the

9    plaintiffs in those lawsuits understood that the stay prevented

10   the lawsuit proceeding against LTV in its capacity as plan

11   administrator.  But here the appellants, from Judge Lifland's

12   sort of blanket order, pursued their action against the other

13   plan fiduciaries.  And the district court said they couldn't.

14   They were prevented from doing that because of the overlapping

15   interest.

16           The Court also said there were other situations where

17   he was uncomfortable with sort of the blanket nature of the

18   order, because you really need to have the facts before you

19   before you can really determine whether the stay could be, at

20   least, extended or a 105 injunction could issue.

21           So, to my mind, that does argue for not entering this

22   order, particularly given the representations you've given to

23   me.  You've appeared in front of me a lot, and I understand

24   that I can rely on those representations.  But I think, again,

25   this is not an area where you can feel comfortable to sort of,

24

1   you know, ready, shooting and then aiming afterwards.  And I'm

2   not saying that's what you're going to do, because you said

3   just the opposite of that.  But it seems to me there's, you

4   know, it's very clear to me, for example, you used the Chrysler

5   situation.  If someone who opposed the Chrysler sale sought an

6   injunction on Chrysler's board acting to implement the sale

7   saying well, they're fiduciaries for us, because the debtor's

8   insolvent and that would violate the stay.  I mean, it's just

9   the board is acting as Chrysler's agent.

10          Someone might be able to sue Fiat.  A creditor of Fiat

11   might be able to sue Fiat and say this is a bad idea for Fiat

12   to enter into this deal.  That, to my mind, probably wouldn't

13   violate the automatic stay, because it's Fiat's problem.

14          I can certainly conceive of many things that your

15   clients might do, including some of the relief they had

16   previously sought that would fall into the former category and

17   not the latter category.  And I think that that's about all I

18   am prepared to say today, particularly given your

19   acknowledgement on behalf of your clients that they're not

20   going to ready, shoot, aim here in the action in which they're

21   seeking to intervene in Michigan.

22          MR. MOLDOVAN:  Thank you.

23          THE COURT:  Obviously, if there is some action that,

24   despite all of that, is taken without coming here for stay

25   relief, and, obviously, lots of people seek stay relief without

25

1    acknowledging that the stay applies.  But it's always the

2    safest thing to do.  But if that's not done debtors can get me

3    on very short notice.

4         MR. HOGAN:  Judge, we appreciate that guidance.  The

5    LTV case, in particular, that you mentioned, we'll read that,

6    because one of our main concerns is the confusion between

7    people acting in capacities as sponsors, as administrators, so

8    I appreciate that.

9         THE COURT:  Well, I mean, you know the Second Circuit

10   has long acknowledged that, and everyone else has, that a

11   sponsor can be an administrator.  And --

12        MR. HOGAN:  Then that's --

13        THE COURT:  I think that that --

14        MR. HOGAN:  Right.

15        THE COURT: -- obviously, leaving aside the ultimate

16   result.  And Sonnax recognizes, for example, one can get stay

17   relief.  One of the factors is is the debtor acting as a

18   fiduciary.  That's one of the Sonnax factors arguing for stay

19   relief.  But I just think it's important to move carefully in

20   this area and seek relief if there's any question here.  And,

21   obviously, if people are acting, essentially, as the debtors'

22   agent, they have fiduciary duties if they're acting as the

23   debtors' agent.  And to my mind that raises a real issue about

24   the automatic stay.

25        MR. MOLDOVAN:  Fully understood, Your Honor.

26

1        THE COURT:  It doesn't mean that relief might not be

2   granted from the automatic stay, but it just raises the issue

3   of having that look under the statutory injunction at 362

4   before moving ahead.

5        MR. HOGAN:  Judge, I appreciate that guidance, and in

6   terms of the disposition of our emergency stay motion, I don't

7   think it would be appropriate to deny that.  I don't want to

8   create any confusion.

9        THE COURT:  No, it's not denied.  I think it's moot.

10  To the extent that you're seeking any other relief, other than

11  enforcing the stay, I can keep it on the calendar, and that

12  might, you know.  But I'm telling you, whether or not it stayed

13  on the calendar or not you can call chambers, put in a call to

14  Mr. Moldovan, and I'll give you a hearing very quickly --

15       MR. MOLDOVAN:  You Honor --

16       THE COURT: -- if something happens.

17       MR. MOLDOVAN:  I've been before you for many years,

18  and I'm not suicidal.  If we choose to do something I'll be

19  back.

20       THE COURT:  Okay.

21       MR. HOGAN:  Okay.

22       THE COURT:  All right.

23       MR. HOGAN:  Judge, we appreciate that.

24       THE COURT:  Thank you.

25       MR. HOGAN:  Thank you.

27

1          THE COURT:     Okay.

2      (Proceedings concluded at 10:35 AM)

28

1

2                          C E R T I F I C A T I O N

3

4      I, Hana Copperman, certify that the foregoing transcript is a

5      true and accurate record of the proceedings.

6

7      _____

8      HANA COPPERMAN

9      AAERT Certified Electronic Transcriber (CET**D-487)

10

11     Veritext LLC

12     200 Old Country Road

13     Suite 580

14     Mineola, NY 11501

15

16     Date: July 27, 2009

17

18

19

20

21

22

23

24

25