|  |  |
|---|---|
| Hearing Date and Time: | July 29, 2009 at 10:00 a.m. |
| Objection Deadline: | July 15, 2009 |

Barbara S. Mehlsack
GORLICK , KRAVITZ & LISTHAUS, P.C.
17 State Street, 4TH fl.
New York, NY 10004
(212) 269-2500

Attorney for Int'l Union of Operating Engineers
Locals 18S, 101S, and 832S.

Marianne Goldstein Robbins
PREVIANT, GOLBERG, UELMEN, GRATZ
MILLER & BRUEGGEMAN, s.c.
1555 N River Center Drive, Suite 202
Milwaukee, WI 53212
(414) 271-4500

Attorney for Int'l Brotherhood of Elec. Workers and
Int'l Ass'n of Machinists & Aerospace Workers


UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————— x

In re
DELPHI CORPORATION, *et al.*,

        Debtors.
————————————————————— x

Chapter 11
Case No. 05-44481 (RDD)
(Jointly Administered)

### AMENDED OBJECTION OF IUOE LOCALS AND IBEW AND IAM TO DEBTORS' MOTION FOR ORDER AUTHORIZING AND APPROVING MODIFIED PLAN OF REORGANIZATION OR ALTERNATE TRANSACTION

#### Preliminary Statement

The International Union of Operating Engineers Locals 832S, 18S, and 101S (the

"IUOE"), and the International Brotherhood of Electrical Workers and its Local 663 (the

"IBEW"), and the International Association of Machinists and Aerospace Workers and its

District 10 and Tool and Die Makers Lodge 78 (the "IAM") (all collectively the

"Unions") jointly by their respective attorneys hereby file this Amended Objection to the Debtors' Motion for Approval of the Debtors' Modified Plan and/or Alternate Transaction.

The Unions filed a timely Preliminary Objection on July 13, 2009, reserving the right to modify or supplement that objection prior to the hearing on the Motion. Subsequent to the Union's filing and continuing to today, the Debtor has filed modifications to the various agreements before the Court on this motion. This Amended Objection is filed pursuant to the Union's reservation and incorporates the Union's earlier arguments while responding to the changing landscape, in particular the Debtor's modifications to its Proposed Plan regarding the Delphi Hourly Rate Pension Plan ("Delphi HRP"), the Settlement Agreement with the PBGC and Exhibit B thereto, which is a "Waiver and Release Agreement" by and between General Motors Company ("GMC") Motors Liquidation Company ("Old GM") and the PBGC.

## Argument

**I.     The proposed Plan of Reorganization together with the PBGC Settlement Agreement and Exhibit B thereto violate the Unions' MOUs**

**A.     The MOUs require that the Debtors assume the Union's agreements, that any termination be in accordance with applicable law and that any reduction in benefits as a result of a termination must be equitable and across the board for all participants  The Implementation Agreement did not abrogate those provisions of the  MOUs.**

1.     The Unions represent active, inactive and retired employees of the Debtors who are participants in the Delphi HRP. [1] The Unions collectively represent some 120 participants in the Delphi HRP who have not been transferred to the GM HRP.  The other

---

[1] In addition, IUOE Local 832S represents active employees at the Rochester facility who will become employees of GM upon transfer of the facility, pursuant to the terms of the Master Disposition Agreement.

participants in the Delphi HRP, who number in the tens of thousands, are represented by other labor organizations.

2.      Between July 31, and August 1, 2007, the Unions entered into Memoranda of Agreement with the Debtors and General Motors Corporation ("MOUs") which modified the Unions' respective collective bargaining agreements with Delphi.   The MOUs provide at Section 4 that nothing contained in them constitutes an assumption of the MOUs and the Unions' collective bargaining agreements as modified by the MOUs *"except as provided for in Section F. 3"* (Emphasis supplied) The MOUs provide at Subsection Section F 3 (c) that any order of the court approving the MOUs must provide, *inter alia,* that any plan of reorganization consistent with the MOUs and any confirmation order entered in connection therewith must provide that the MOUs and the collective bargaining agreements listed on Attachment A to the each of the MOUs must be assumed, and the Court's order approving the MOUs so provides.

3.      Thus the MOUs themselves did not effect an assumption of the Agreements but mandate their assumption via the confirmation of a plan of reorganization consistent with the MOUs.   Absent a plan of reorganization consistent with the MOUs the Debtor would have to proceed under Section 1113 to modify or abrogate the MOUs.

4.      The MOUs also provide at Section D (2) (b), in connection with Delphi's freezing of the HRP, that Delphi will "cause the frozen plan to pay benefits in accordance with the terms of the Plan" and that those benefits "will not be reduced from the level in effect as of the date immediately preceding the Effective Date (of the MOUs) *unless they are similarly reduced for other retired Delphi HRP participants.* (Emphasis supplied*).*

3

5.    MOU Section D (2) (b) 2 then goes on to provide that the Unions agree that Delphi reserves its right to "seek termination of the Delphi HRP consistent with applicable law" and "in this regard" that Delphi HRP participants who retire both before and after the Freeze Date will receive *"all benefits"* provided for in the Delphi HRP, including but not limited to any applicable supplements and benefit redetermination provided for by the terms of the plan in effect as of the date immediately preceding the Effective Date of the MOUs. ( Emphasis supplied).

6.    These provisions of the MOUs taken together mean only that the Unions recognized Delphi's right to seek a voluntary termination under the distress termination provisions of Title IV of ERISA in accordance with the statutory requirements.    The voluntary termination provisions of Title IV are found at ERISA Sections 3041(a) through (e) and require adherence by a terminating plan sponsor to the terms of any existing collective bargaining agreements. 29 U.S.C. §1341(a) (3).

7.    Section 3 ( c ) of Attachment C to the MOUs, which provides for the Special Attrition Program, does not effect a contrary result, as that provision simply recites that Attachment C does not prejudice any party's position ( including any third party) in connection with any plan termination proceeding and any proceeding under Sections 1113 and 1114 or any collective bargaining matters.  It certainly does not effect a waiver of the Unions' rights under the MOUs or their collective bargaining agreements

8.    Thereafter, on September 26, 2008, the Debtors, the Unions and GM entered into the Implementation Agreement, which provided for the transfer of assets and liabilities from the Delphi HRP to the GM HRP in two segments and on a proportionate basis based upon the number of each union's participants in each group of participants

4

who were to be transferred.  The Implementation Agreement did not modify the terms of
the MOUs set forth above.

**B.    The effect of the Modified Plan and the PBGC Settlement Agreement
together with Exhibit B is to abrogate the statutory and contractual rights of
the Unions and plan participants.**

9.    Section 1113(f) of the Bankruptcy Code provides that no provision of
Title 11 may be construed to permit a debtor in possession to unilaterally terminate or
alter the provisions of a collective bargaining agreement except after compliance with the
provisions of Section 1113.

10.    The Debtor is seeking to use Plan of Reorganization provisions of the
Code or, in the alternative, the Section 363 sale provisions to abrogate the Union's rights
under the MOUs and related agreements.

11.    Furthermore, the PBGC Settlement Agreement combined with the Release
and Waiver Provisions of Exhibit B has the potential to render meaningless the Unions'
rights under ERISA Section 1303 to challenge the conduct of the PBGC in determining to
terminate the HRP and give up its priority claims.

12.    The Debtors' current version of the Modified June 2009 Modified Plan
filed today with the Debtors' Omnibus Reply in Support of Modified Plan and Master
Disposition Agreement provides with respect to the HRP at Section 7.17 "Pension
Matters and PBGC Settlement" that

> (a)    Delphi HRP.  Upon the entry of the Modification approval Order,
> PBGC will determine whether to initiate and/or proceed with an
> involuntary termination under 29 U.S.C. § 1342 of the Delphi HRP;
> *provided, however, that upon the Effective Date, the Delphi HRP shall no
> longer be the responsibility of the Debtors or the Reorganized Debtors.* [2]

---

[2] The PBGC has issued a Notice of Determination to Delphi that the HRP should be terminated pursuant to
ERISA §4042(a) (2) and (4) because it will be unable to pay benefits when due and the "possible long run
loss" to the PBGC may be expected to increase "unreasonably" and proposing an agreement for termination

The prior version of Subsection (a) provided that " Upon the Effective Date, the Delphi HRP shall no longer be the responsibility of the Debtors and will be addressed by GM.

13.     As GM has refused to assume directly the obligations of the Delphi HRP, the Debtors have sought to effect through the Modified Plan and Settlement Agreement, the unilateral abrogation of their contractual and statutory responsibilities for the maintenance of the HRP via an allegedly involuntary termination under Section 4042 of ERISA, 29 U.S.C., 29 U.S.C.§ 1342. While the Debtors claim that a favorable resolution of their motion is dictated by the decisions of the bankruptcy, district and appellate courts, considering the various Flight Attendants' challenges to the termination of their defined benefit plans, the facts of this case are sufficiently distinguishable from the facts of the UAL cases, so as to compel a different result.

14.     In the instant case, the Debtors' proposed Modified Plan mandates that the Debtors be relieved of their responsibilities for the HRP under ERISA and the MOUs. Absent the assumption of that responsibility by GM, the termination of the HRP by the PBGC is a foregone conclusion.  The Settlement Agreement requires that the PBGC support the confirmation of the Modified Plan and entry of an order by this Court approving the Plan or a sale under Section 363 to effectuate the transactions contemplated under the MDA. The Settlement Agreement provides that in the event this Court were to find that the Debtors' agreement to an ERISA Section 4042 violates the Debtors' obligations to the Unions, the PBGC must seek an order of the appropriate District Court terminating the HRP.  Thus the Modified Plan effectively mandates that

of the Plan, naming of the corporation as the statutory trustee and establishing a termination date of July 22, 2009.

6

the PBGC terminate the HRP, unlike the agreement *In re UAL Corp*, 428 F. 3d 677, 681 (7th Cir 2005).

15.    Under Title IV of ERISA, termination of the HRP will result in a substantial reduction in the benefits payable to participants represented by the IUOE, IBEW and IAM.    Title IV of ERISA contemplates that when the PBGC assumes responsibility for an underfunded plan, it pays benefits only up to certain guaranteed levels.

16.    As set forth below in more detail, the Debtors seek approval of an Exhibit B to the Settlement Agreement with the PBGC, which is an agreement between the PBGC and new GM that contemplates the preservation of certain additional benefits for some but not all participants in the HRP, an express violation of the Debtors' obligations under Section D. 2.(b) of the MOUs not to effect a reduction of pension benefits for IUOE, IBEW and IAM represented participants below the level of other retired HRP participants.

17.    The Implementation Agreement provides a specific pro rata order for 414(l) transfer of pension assets and liabilities from the Delphi HRP to the GM HRP which has now been assumed by GMC. Delphi and the PBGC have not provided Exhibit A to the PBGC settlement: the True –up transfers. Therefore the Unions cannot determine whether they are in conformance with the Implementation Agreement.

18.    The ultimate purpose of Debtors' Motion to approve the Modified Plan or Section 363 Sale is to absolve Debtors and their purchasers of all responsibility for the Delphi HRP. This potentially violates the Unions' rights under 29 U.S.C. Section 1303 and the rights of the HRP participants to bring claims for breach of fiduciary duty.

7

19.    As Debtors concede, 29 U.S.C. 1303 (f) provides that any participant or the employee organization representing participants who are adversely affected by any action of the PBGC may bring an action against the PBGC for appropriate equitable relief.

20.    The Debtors' agreement with the PBGC seeks to release Delphi and the Sale Companies including GMC, Old GM and all other purchasers from all claims relating to the HRP termination. This will limit the potential remedies available to participants or Unions in any §4003 action, as the releases will the prejudice the PBGC's ability to comply with an order for equitable relief. The PBGC will not be able to assert claims against the released entities to fund equitable relief, such as restoration of the Delphi HRP.

21.    Actions for breach of fiduciary duties are specifically excluded from the PBGC settlement releases. However approval of the PBGC settlement with its releases of Delphi and its purchasers would have the practical effect of restricting the remedies available to participants bringing such actions. For example if it were found the Delphi HRP sponsors had breached their fiduciary duty by failing to protect HRP participants' benefits in the course of the present transactions, the release of purchasers may prevent effective relief for breach of fiduciary duty.

## C.    Delphi's arguments that the PBGC settlement complies with the Union agreements must be rejected.

22.    Additionally it does not appear that a so called PBGC initiated termination is an involuntary termination. Rather Delphi has sought to abrogate its responsibility for the HRP under the MOUs and because GMC has refused to accept responsibility for the

8

HRP in return for the asset transfers and other relief it is getting from Delphi, Delphi (and

GMC) have turned to the PBGC to relieve and release them from their responsibilities.

23.    The Delphi PBGC agreement is not consistent with *In re UAL Corp.* 428

F.3d 677 (7th Cir. 2005) and that case is not dispositive of the issues before this Court,

because the court in *UAL* relied on the fact that the agreement with the PBGC did not

mandate termination. *Id.* at 681. Here the settlement  agreement mandates that on the

failure of this Court to find that the Settlement Agreement does not violate the MOUs,

"PBGC *shall* seek issuance of an order by the United States District Court terminating

the...Hourly Plan." (Emphasis supplied). This mandate contradicts any claim that the

agreement is contingent on an independent PBGC determination.

## II.    Debtors cannot circumvent the requirements for a Chapter 11 plan of reorganization by mean of an alternative Section 363 sale.

24.    Should their motion for approval of the Modified Plan prove unsuccessful,

Debtors seek, as an alternative, to effectuate the same disposition of assets and

distribution of proceeds through a sale of assets pursuant to 11 U.S.C. § 363. Debtors,

however, cannot evade the plan confirmation process in this manner.

> A debtor cannot enter into a transaction that "would amount to a sub rosa
> plan of reorganization" or an attempt to circumvent the chapter 11
> requirements for confirmation of a plan of reorganization. If, however, the
> transaction has "a proper business justification" which has the potential to
> lead toward confirmation of a plan and is not to evade the plan
> confirmation process, the transaction may be authorized.

*In re GMC*, 2009 Bankr. LEXIS 1687, 54-55 (Bankr. S.D.N.Y. July 5, 2009)

25.    Here there can be no question Debtors' purpose is to "evade the plan

confirmation process." If Debtors enter a 363 sale, it will be only because they have

9

sought and failed to obtain plan confirmation for the very same transactions. Thus, their actions are a *per se* violation of the confirmation process.

26.     The Modified Plan and the Sale alternative do not meet the requirements for either a Section 363 sale or a plan of reorganization because assets are being transferred in contravention of the absolute priority ranking established by the Bankruptcy Code. This point is demonstrated by the proposed PBGC settlement, which has now been included as an exhibit to the Modified Plan.

27.     As the PBGC settlement discloses, the PBGC has $7 billion in claims against Debtors and a secured interest in Debtors' assets. The PBGC's proofs of claims disclose that more than $1 billion of its claims are priority claims. The Modified Plan/363 Sale and PBGC settlement proposes to reduce the PBGC's claim to a $3 billion unsecured claim, thereby subverting the priority ranking required by 11 U.S.C. Section 507, to the detriment of Delphi HRP participants. *Cf In re GMC*, 2009 Bankr. LEXIS 1687, 54-55 (Bankr. S.D.N.Y. July 5, 2009) footnote 54 (discussing the factors to consider in evaluating whether a sale is a *sub rosa* plan and identifying among the factors (a) "proportionate value of the assets to the estate as a whole" and allowing the GM sale because, "that the sale would not change distribution priorities in any ultimate plan,")

## Conclusion

It is respectfully submitted that for the foregoing reasons the Court should deny Debtor's Motion to Approve the Modified Plan or the Alternative Transaction.

Dated:     New York, NY
           July 28, 2009

/s/ Barbara S. Mehlsack
Barbara S. Mehlsack
GORLICK, KRAVITZ &
LISTHAUS, P.C.
17 State Street, 4th Fl.
New York, NY 10004
(212) 269-2500
Attorneys for IUOE


/s/ Marianne Goldstein Robbins
Marianne Goldstein Robbins
PREVIANT, GOLBERG,
UELMEN,GRATZ MILLER &
BRUEGGEMAN, s.c.
1555 N River Center Drive, Suite
202
Milwaukee, WI 53212
(414) 271-4500
Attorneys for IBEW and IAM