Hearing Date and Time: August 20, 2009 at 10:00 a.m. (prevailing Eastern Time)
Objection Deadline: August 13, 2009 at 4:00 p.m. (prevailing Eastern Time)

ALSTON & BIRD LLP
Dennis J. Connolly (DC-9932)
David A. Wender (admitted *pro hac vice*)
One Atlantic Center
1201 West Peachtree Street
Atlanta, Georgia 30309-3424
Telephone (404) 881-7000
Facsimile (404) 881-7777

*Counsel for Furukawa Electric Company, Ltd.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
                                                            :
In re:                                                      :    Chapter 11
                                                            :
   DELPHI CORPORATION, *et. al.*,                :    Case No. 05-44481 (RDD)
                                                            :
                Debtors.  :    Jointly Administered
------------------------------------------------------------x

**MOTION OF FURUKAWA ELECTRIC COMPANY, LTD.
FOR ALLOWANCE OF AN ADMINISTRATIVE EXPENSE CLAIM
PURSUANT TO 11 U.S.C. § 503(b)(1)(A) AND, IN THE ALTERNATIVE,
FOR LEAVE TO FILE A LATE ADMINISTRATIVE EXPENSE
<u>CLAIM PURSUANT TO BANKRUPTCY RULE 9006(B)</u>**

COMES NOW, Furukawa Electric Company, Ltd. ("<u>Furukawa</u>"), and, pursuant to Section 503(b)(1)(A) of Title 11 of the United States Code (the "<u>Bankruptcy Code</u>") and Rule 9006(b)(1) of the Federal Rules of Bankruptcy Procedure ("<u>Bankruptcy Rule</u>"), files this Request for Allowance of an Administrative Expense Claim and, in the Alternative, for Leave to File a Late Administrative Expense Claim (the "<u>Motion</u>"). In support of the Motion, Furukawa respectfully shows the Court as follows:

**PRELIMINARY STATEMENT**

Furukawa and certain of the above-captioned debtors (the "Debtors") are parties to the Agreements (defined below) whereby Furukawa provides technical support and intellectual property necessary for certain of the Debtors' manufacturing and business operations. Through this Motion, Furukawa requests payment of postpetition obligations (the "Claim," further described below) incurred by the Debtors' continued enjoyment of services and proprietary information provided under the Agreements.

Pursuant to the Court's order setting the Administrative Bar Date (the "Administrative Bar Date Order"), the Court set July 15, 2009 (the "Bar Date") as the date by which creditors were required to file administrative claims in respect of all postpetition obligations due and owing as of June 1, 2009. Because the Administrative Bar Date Order does not apply to amounts not due as of June 1, 2009 (the "Due Date"), Furukawa is filing this Motion seeking allowance of the Claim (the Claim relates to amounts not due as of June 1, 2009).

Furukawa is also filing this Motion out of an abundance of caution, in the event the Debtors contend that a portion of the Claim that relates to certain amounts owing by Delphi Furukawa Wiring Systems LLC ("DFWS") for the Joint Venture Royalty (defined below), was subject to the Bar Date and is, thus, untimely. Though only this portion of the Claim may arguably be subject to the Bar Date, this portion of the Claim is not subject to the Bar Date because Furukawa and the Debtors agreed to delay the exact payment dates for the Joint Venture Royalty. To the extent the Debtors contend that any portion of the Claim is untimely, Furukawa disputes this contention and, in the alternative, hereby requests leave to file a late claim for the contested portion.

## BACKGROUND

1. On October 8 and 14, 2005 (the "Petition Date"), the Debtors commenced their cases in this Court under Chapter 11 of the Bankruptcy Code.

2. Furukawa and the Debtors are parties to, among other contracts, the following contracts.

### A. The Technical Consulting Agreement

3. Delphi Automotive Systems, LLC ("DASLLC") and Furukawa are parties to a Tacoma License and Technical Support Agreement, dated March 3, 2005 (the "Technical Consulting Agreement").

4. Pursuant to the Technical Consulting Agreement, Furukawa provides certain technical assistance to the Debtors through access to licensed technical information, including, without limitation certain proprietary information related to the design and manufacture of electrical and electronic distribution systems (the "Distribution Systems") for the Toyota Corolla and Tacoma. *See* Technical Consulting Agreement §§ 8.4, 16.7(c), attached hereto as Exhibit 1.

5. Under the terms of the Technical Consulting Agreement, Furukawa is to be paid a quarterly royalty payment equal to one-half of one percent of sale proceeds of the Distribution Systems. *See* Technical Consulting Agreement § 3.1. The Debtors currently owe Furukawa $44,697.19 (the "Technical Royalty") in royalty payments under the Technical Consulting Agreement. *See* Requests for Payment dated May 26, 2009 and May 28, 2009 from Furukawa to the Debtors, attached hereto as Exhibit 2.[1]

---

[1] Pursuant to the Technical Consulting Agreement, Furukawa is entitled to royalty payments equal to one-half of one percent of sale proceeds of the Distribution Systems. Accordingly, Furukawa reserves its right to supplement and/or amend this Motion to assert additional administrative proofs of claims with respect to any such additional administrative amounts owed by the Debtors. The Claim also includes estimated

- 3 -

### B. The Personnel Consulting Agreement

6. DASLLC and Furukawa are parties to a Tacoma-Corolla Consulting and Technical Support Agreement, dated June 28, 2005 (the "Personnel Consulting Agreement").

7. Pursuant to the Personnel Consulting Agreement, Furukawa provides certain technical assistance to the Debtors through personnel with specialized expertise, including, without limitation, certain proprietary information related to the design and manufacture of the Distribution Systems for the Toyota Corolla and Tacoma. *See* Personnel Consulting Agreement §§ 8.4, 16.7(c), attached hereto as Exhibit 3.

8. Under the terms of the Personnel Consulting Agreement, Furukawa is to be paid a quarterly royalty payment equal to one-half of one percent of sale proceeds of the Distribution Systems. *See* Personnel Consulting Agreement § 11.1. The Debtors currently owe Furukawa $44,697.19 (the "Personnel Royalty") in royalty payments under the Personnel Consulting Agreement.[2] *See* Requests for Payment dated May 26, 2009 and May 28, 2009 from Furukawa to the Debtors, attached hereto as Exhibit 4.

### C. The Joint Venture License Agreement

9. Delphi Technologies, Inc. ("Delphi"), DASLLC, Furukawa, and DFWS are parties to an Intellectual Property License, Restricted Use, and Technical Assistance Agreement, dated December 8, 2004 (the "Joint Venture License Agreement") (together

---

amounts for all administrative amounts incurred to date under the Technical Consulting Royalty.

[2] Pursuant to the Personnel Consulting Agreement, Furukawa is entitled to royalty payments equal to one-half of one percent of sale proceeds of the Distribution Systems. Accordingly, Furukawa reserves its right to supplement and/or amend this Motion to assert additional administrative proofs of claims with respect to any such additional administrative amounts owed by the Debtors. The Claim also includes estimated amounts for all administrative amounts incurred to date under the Personnel Consulting Royalty.

with the Technical Consulting Agreement and Personnel Consulting Agreement, the "<u>Agreements</u>").

10.     Pursuant to the Joint Venture License Agreement, Furukawa granted DFWS a nonexclusive, royalty bearing license to use the Furukawa-Japan Background Intellectual Property (as defined in the Joint Venture License Agreement).  *See* Joint Venture License Agreement § 1.5, attached hereto as <u>Exhibit 5</u>.

11.     Under the terms of the Joint Venture License Agreement, DFWS agreed to pay Furukawa a quarterly royalty payment equal to one percent of sale proceeds of wiring harness assemblies (the "<u>Harnesses</u>").  *See* Joint Venture License Agreement § 6.1.  The Debtors currently owe Furukawa $1,082,725.59 (the "<u>Joint Venture Royalty</u>") (together with the Technical Royalty, Personnel Royalty, the "<u>Royalty Payments</u>") in royalty payments under the Joint Venture License Agreement.[3]  *See* Requests for Payment dated December 19, 2008, January 26, 2009 and April 22, 2009 from Furukawa to the Debtors, attached hereto as <u>Exhibit 6</u>.

12.     On July 2, 2009, the Debtors filed their Notice of Filing of Plan Exhibits With Respect to First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors, and Debtors-in-Possession (As Modified) [Docket No. 17557] (the "<u>July 2 Notice</u>") in which the Debtors, among other things, provided notice that Delphi and DASLLC (each counterparty except DFWS) intended to reject the Joint Venture License Agreement.

---

[3] Pursuant to the Joint Venture License Agreement, Furukawa is entitled to royalty payments equal to one percent of sale proceeds of the Harnesses.  Accordingly, Furukawa reserves its right to supplement and/or amend this Motion to assert additional administrative proofs of claims with respect to any such additional administrative amounts owed by the Debtors. The Claim also includes estimated amounts for all administrative amounts incurred to date under the Joint Venture Royalty.

- 5 -

13. On July 13, 2009, the Debtors filed their Notice of Filing of Certain Corrected Notices of Assumption and Assignment With Respect to Certain Executory Contracts or Unexpired Leases to be Assumed and Assigned to Parnassus Holdings II, LLC Under Modified Plan of Reorganization [Docket No. 18169] (the "Corrected Assumption Notice") in which the Debtors stated their intent to assume all non-rejected contracts covering the use of Furukawa's intellectual property and proprietary information.

14. On July 15, 2009, Furukawa submitted a Limited Response and Reservation of Rights (the "Limited Response") to the July 2 Notice [Docket No. 18256] and on July 20, 2009, Furukawa submitted its Response and Reservation of Rights [Docket No. 18472] (collectively, the "Responses") to the Corrected Assumption Notice, noting, among other things, that the July 2 Notice and the Corrected Assumption Notice failed to provide clarity regarding DFWS's intent to assume or reject the Joint Venture License Agreement.[4]

15. After Furukawa submitted the Responses, Furukawa attempted to ascertain DFWS's intent through counsel and directly through its joint venture partners. Despite Furukawa's efforts to obtain clarity, the Debtors have not provided any clarity. In fact, in three separate amendments to the July 2 Notice, on July 20, July 28 and July 30 [Docket Nos. 18492; 18683; 18704], the Debtors continue to list every Debtor-counterparty to the Joint Venture License Agreement other than DFWS. Moreover, Furukawa is informed that DFWS does not intend to immediately cease operations.[5] Thus, as of the filing of this Motion, DFWS's intent remains unclear.

---

[4] As noted above, DFWS is also a party to the Joint Venture License Agreement.
[5] Upon information and belief, DFWS cannot continue its operations without utilizing the Furukawa

### D. The Postpetition Claim

16.    The Debtors owe Furukawa a total amount of $1,172,119.97 for the Royalty Payments (the "Claim").

## RELIEF REQUESTED

### A. Request for Immediate Payment of Postpetition Obligations.

17.    Section 503(b)(1)(A) of the Bankruptcy Code entitles parties to administrative priority for "the actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1)(A). Administrative priority under Section 503(b)(1)(A) of the Bankruptcy Code can be granted to a party showing that it (i) contracted with the estate and (ii) provided some demonstrable benefit. *Trustees of Amalgamated Ins. Fund v. McFarlin's*, 789 F.2d 98, 101 (2d Cir. 1986) (administrative claim allowed when consideration is supplied to and benefits the debtor in possession).

18.    Administrative priority can also be granted under Section 503(b)(1)(A) of the Bankruptcy Code based on the debtor's continued and similar use of benefits under a prepetition agreement in the postpetition period. *See In re Beverage Canners Int'l Corp.*, 255 B.R. 89, 92-93 (Bankr. M.D. Fla. 2000). Where the debtor continues to utilize the benefits under a prepetition contract, this lowers a party's burden to show a postpetition benefit to the estate. *See Id.* at 93 (when debtor uses benefits of prepetition contract in contracted-for-capacity, courts will assume debtor received benefit of its bargain).

19.    Since the Petition Date, the Debtors have continued to utilize the specialized personnel, technical information and intellectual property provided under the Agreements.

---

intellectual property licensed to DFWS under the Joint Venture License Agreement.

20.     Moreover, the Royalty Payments are directly tied to the revenue generated by the Debtors' sale of the Distribution Systems and Harnesses, manufactured and designed with the support provided in the Agreement.  Thus, Furukawa is entitled to an administrative expense claim equal to the Royalty Payments that reflect the actual benefit received by the Debtors under the Agreements.  *See Id.* (calculating administrative expense under license agreement as pro rata value of annual royalty because "presumptively, the value of consideration received under an executory contract is the amount set forth in such contract").

21.     Based on the above, the Claim is entitled to administrative priority pursuant to Section 503(b)(1)(A) of the Bankruptcy Code.

### B. Request for Leave to File a Late Request for Payment of Postpetition Obligations.

22.     In addition to the relief requested above, Furukawa also seeks leave to file a late claim for a portion of the Claim relating to the Joint Venture Royalty in the event the Debtors contend that this portion of the Claim was subject to the Bar Date. Originally, the Debtors were scheduled to make payments to Furukawa based on the Joint Venture Royalty on January 31, 2009 and April 30, 2009 in the total amount of $808,975.59 (the "Joint Venture Claim").[6]  However, the Joint Venture Claim was not subject to the Bar Date because Furukawa, Delphi, DASLLC and DFWS (the "Parties") mutually agreed to modify the original payment dates for the underlying Joint Venture Royalty to facilitate DFWS's ongoing operations.  The Parties have yet to set the modified payment dates and, thus, no amounts were due and owing as of the Due Date.

---

[6] This figure does not represent all amounts due under the Joint Venture Royalty because the remaining amounts were not at any time scheduled for payment before the Due Date.  *See* Requests for Payments attached hereto in Exhibit 6.

- 8 -

In any case, because of the actual benefit conferred on the estate by the Joint Venture License Agreement, Furukawa is entitled to administrative priority for the Joint Venture Claim, irrespective of the future payment date set by the Parties.

23.    In October of 2008, DFWS representatives contacted the Parties and requested that the payments then due to Furukawa under the Joint Venture Royalty be suspended to improve DFWS' 2008 financials. In an electronic mail message dated October 9, 2008 (the "October 2008 Email"), DFWS, through its representative, stated:

> Nick, Phil & I have been spending a great deal of time discussing the state of the DFWS business and what we all can do to improve the 2008 financials. We have a potential solution that we would like Furukawa to consider. This plan would minimize the 2008 injections and keep the total injections within the amounts agreed to in Exhibit C of the JV Agreement. Here is a summary of our proposal:
>
> Royalties – Suspense the 2008 royalty for Delphi, Suspend the July - December Royalty for Furukawa.

The October 2008 Email is attached hereto as Exhibit 7.[7]

24.    In addition to DFWS' proposal to suspend the payments due for the Joint Venture Royalty in July-December 2008, the Parties have and continue to discuss suspension of the other payments due in 2008 and 2009 under the Joint Venture Royalty (the "Negotiations"). See Exhibit 8 containing further communication regarding the Negotiations.

25.    Because the original payment dates for the Joint Venture Royalty have been modified by consent of the Parties, the Joint Venture Claim was not due and owing as of the Due Date and is thus not subject to the Bar Date.

---

[7] See also Request for Payment dated December 19, 2008 requesting payment for the Joint Venture Royalty due for July, August and September of 2008 attached hereto in Exhibit 6.

26.    To the extent that the Debtors contend the Joint Venture Claim is untimely, if at all, Furukawa requests leave to file the Joint Venture Claim under Bankruptcy Rule 9006(b).  FED.R.BANKR.P. 9006(B); *see also PT-I Comm, Inc.*, 403 B.R. 250 (Bankr. E.D.N.Y. 2009) (analyzing allowance of late-filed administrative expense claim under Bankruptcy Rule 9006(b)).

27.    Pursuant to Bankruptcy Rule 9006(b), leave to file a late claim may be granted where the failure to file is due to "excusable neglect." *Id.*; *see also Pioneer Investment Services Co. v. Brunswick Ass. Ltd. Partnership*, 507 U.S. 380, 382 (1993) ("Rule 9006(b)(1) empowers a bankruptcy court to permit a late filing if the movant's failure to comply with an earlier deadline 'was the result of excusable neglect.'") (citation omitted).  "Neglect" includes failure caused by inadvertence, mistake or carelessness. *Id.* at 387. Whether excusable neglect exists is an equitable determination "taking account of all relevant circumstances surrounding the party's omission." *Id.* at 395.  Accordingly, the Supreme Court has identified four relevant factors:

> The danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

*Id.* at 394.

28.    Leave to file the Joint Venture Claim is warranted based on the absence of prejudice to the Debtors, lack of delay to the bankruptcy proceedings and Furukawa's good faith. *See Pioneer*, 507 U.S. at 398 ("the lack of any prejudice to the debtor or to the interest of efficient judicial administration, combined with the good faith of respondents and their counsel, weigh strongly in favor of permitting the tardy claim.").

29.     <u>Prejudice to the Debtor</u>.  Here, the Debtors are not prejudiced by the Joint Venture Claim.  In determining whether a debtor has been prejudiced by a late-filed claim courts consider the (i) "size of the late claim in relation to the estate," (ii) "whether a disclosure statement or plan has been filed or confirmed with knowledge of the existence of the claim," and (iii) "the disruptive effect that the late filing would have on a plan close to completion or upon the economic model upon which the plan was formulated and negotiated."  *In re Keene Corp.*, 188 B.R. 903, 910 (Bankr. S.D.N.Y. 1995).  The Debtors' plan of reorganization (the "<u>Plan</u>") was confirmed on January 17, 2008 and, thus, the Joint Venture Claim does not alter the economic model underlying the Plan.  *Id.* ("loathe" to introduce a claim that might hurt difficult resolution process).  The Debtors were also specifically aware of the Joint Venture Claim as result of the Negotiations and evidenced by the notice filed by the Debtors on July 13, 2009, two days before the Bar Date, of its intent to reject the Joint Venture License Agreement and Personnel Consulting Agreement.  *See* Docket No. 17557.

30.     Additionally, the Joint Venture Claim is specific to the Joint Venture License Agreement and not one that could open the floodgates for similar claims like the asbestos claim in *In re Keene*.  *In re Keene Corp.*, 188 B.R. at 910 (allowance of a late-filed asbestos claim could open floodgates where only 275 of the 2,069 creditors in asbestos litigation had filed a proof of claim).

31.     <u>Length of Delay</u>.  The delay in filing the Joint Venture Claim is minimal.  Furukawa files the Joint Venture Claim only 15 calendar days after the Bar Date and 21 calendar days after it received actual notice of the Bar Date.  The Debtors' economic model has not changed between the Bar Date and the time of the Joint Venture Claim,

such as entry of a resolution or confirmation of a plan. *See R.H. Macy & Co., Inc. v. Macy's Northeast, Inc.*, 166 B.R. 799 (Bankr. S.D.N.Y. 1994). The Plan was confirmed over a year before the Bar Date.

32. <u>Reason for the Delay</u>. Because the Joint Venture Claim was not due and owing before the Due Date, Furukawa was unaware of its obligation, if any, to file the Joint Venture Claim when it received the notice of the Bar Date (the "<u>Notice</u>"). While courts consider a claimant's culpability in its failure to file, a claimant does not have to be completely without fault. *In re Infiltrator Systems, Inc.*, 241 B.R. 278, 281 (Bankr. D. Conn. 1999). In *In re Infiltrator Systems, Inc.,* a bar date motion notified parties that claims due to failure of the debtor's water management system had to be filed by the bar date. *Id.* Because the claimant had not experienced a system failure, he failed to submit a proof of claim by the bar date. Though the claimant could have investigated the impact of the bar date on potential creditors, it was not unreasonable for the claimant to determine that he did not presently hold a claim. *Id.* (citing *Pioneer*, 507 U.S. at 392-94) (excusable neglect can be caused by negligence)).

33. Similarly, it was not unreasonable for Furukawa to believe that the Debtors could not request modified payment dates and, at the same time, require Furukawa to submit the Joint Venture Claim based on the unmodified payment dates. In later discussion with its counsel regarding the Debtors' possible rejection of the Joint Venture License Agreement, Furukawa realized it might need to protect its rights to administrative priority and filed this Motion as diligently as possible. Furukawa's inadvertence in realizing that the Debtors may contend the Joint Venture Claim was due and owing before the Due Date is distinguished from other cases finding a claimant's

culpability precluded excusable neglect. *See In re Best Products Co, Inc.*, 140 B.R. 353, 359 (Bankr. S.D.N.Y. 1992) (claimants were aware of claim for three years but failed to file proof of claim).

34.    Additionally, Furukawa did not have much time to realize its mistake. Furukawa did not receive the Notice until July 9, 2009, five calendar days before the Bar Date. Moreover, Furukawa did not anticipate the Notice as the Debtors' request for the Bar Date (the "Bar Date Motion") was inconspicuously added as a supplement to an earlier motion requesting multiple forms of relief unrelated to administrative expense claims. *See* Docket No. 16646. The Bar Date Motion was titled SUPPLEMENT TO MOTION FOR ORDER (I) APPROVING MODIFICATIONS TO DEBTORS' FIRST AMENDED PLAN OF REORGANIZATION (AS MODIFIED) AND RELATED DISCLOSURES AND VOTING PROCEDURES AND (II) SETTING A FINAL HEARING DATE TO CONSIDER MODIFICATIONS TO CONFIRMED FIRST AMENDED PLAN OF REORGANIZATION AND (B) REQUEST TO SET ADMINISTRATIVE CLAIMS BAR DATE AND ALTERNATIVE SALES HEARING DATE. *See Pioneer*, 507 U.S. at 398 (finding excusable neglect where "'peculiar and inconspicuous placement of the bar date in a notice regarding a creditors['] meeting,' left a 'dramatic ambiguity' in the notification"). There have been 2,055 pleadings filed since the Bar Date Motion was filed on June 1, 2009. *See* Docket No. 16646-18701. In a case where hundreds of pleadings are filed each week, placing an important request for relief in a supplement to a motion requesting multiple forms of relief does not sufficiently place creditors on alert.

35. This type of ambiguity is not isolated to the establishment of the Bar Date. As described in paragraphs 12 through 16 above, the Debtors have failed to provide notice of DFWS's intent to reject the Joint Venture License Agreement. Additionally, despite repeated attempts to determine DFWS's intent, Furukawa has yet to receive a response from the Debtors on whether DFWS intends to reject the Joint Venture License Agreement. Thus, to date, the Debtors have failed to provide any clarity.

36. <u>Good Faith of the Movant</u>. As stated above, Furukawa reasonably believed that it was not required to file the Joint Venture Claim by the Bar Date. There is no indication that Furukawa has not made the Joint Venture Claim in good faith. *See In re Infiltrator*, 341 B.R. at 282 (where claimant's delay in filing was consistent with explanation given, delay did not show lack of good faith).

## PRIOR REQUEST

37. No prior motion for the relief requested herein has been made to this or any other Court.

## CONCLUSION

WHEREFORE, Furukawa respectfully requests that this Court enter an Order compelling the Debtors to: (i) make payment to Furukawa in an amount equal to the Royalty Payments (as set forth above) within three business days of the Court granting the relief requested herein; and (ii) make royalty payments as specified under the Agreements for all subsequent months.

DATED: July 30, 2009

                                                ALSTON & BIRD LLP

                                               /s/   David A. Wender
                                               Dennis J. Connolly (DC-9932)
                                               David A. Wender (admitted *pro hac vice*)

                                               One Atlantic Center
                                               1201 West Peachtree Street
                                               Atlanta, Georgia 30309-3424
                                               Telephone (404) 881-7000
                                               Facsimile (404) 881-7777

                                               *Counsel for Furukawa Electric Company, Ltd.*