BARNES & THORNBURG LLP
Attorneys for Autocam Corporation
171 Monroe Avenue, NW, Suite 1000
Grand Rapids, Michigan 49503
Telephone: (616) 742-3930
Facsimile: (616) 742-3999

Patrick E. Mears (PM-6473)
Telephone: (616) 742-3936
Email: pmears@btlaw.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| In re | ) | Chapter 11 Case |
| DELPHI CORPORATION, *et al*. | ) | No. 05-44481 |
| Debtors. | ) | (Jointly Administered) |

## AMENDED AND RESTATED OBJECTION OF AUTOCAM CORPORATION TO PROPOSED ASSIGNMENT OF EXECUTORY CONTRACTS TO THIRD PARTIES

Autocam Corporation and its various affiliates (collectively, "Autocam"), by and through its undersigned counsel, for its Amended and Restated Objection to the proposed assignment of certain executory contracts between Autocam and various Chapter 11 debtors to third parties, states as follows:

**A.    The Autocam Executory Contracts and Related Purchase Orders**

1.    Delphi Corporation and a number of its affiliates commenced these Chapter 11 cases by filing separate Chapter 11 petitions with this Court beginning on October 8, 2005. On January 25, 2008, this Court entered an order confirming the Chapter 11 debtors' First Amended Chapter 11 Plan, as modified (the "Confirmed Plan"). On July 30, 2009, this Court entered an

Order Approving Modifications Under 11 U.S.C. 1127(b) to the Confirmed Plan (the "Modified Plan"), which order is hereinafter referred to as the "Plan Modification Order."

2.  Autocam is a business corporation having its headquarters in Kentwood, Michigan, and is a "Tier II" automotive supplier. Prior to and after the commencement of these Chapter 11 cases in October, 2005, Autocam became a party to a number of long-term executory contracts for the manufacture and sale of automotive components and systems to certain of the Delphi Chapter 11 debtors (collectively, the "Debtors"). The Modified Plan characterizes these executory contracts as "Material Supply Agreements", *viz.*, "any agreement to which any of the Debtors is a party and pursuant to which the Debtors purchase materials which are directly incorporated into one or more of the Debtors' products." Modified Plan § 1.150.

3.  There are at present four (4) such long-term executory contracts in existence involving Autocam and certain of the Chapter 11 debtors herein (collectively, the "Contracting Debtors"). These four contracts (collectively, the "Autocam Executory Contracts") are described in more detail in Autocam's Exhibit List (Docket No. 18610) and in its Affidavit (Docket No. 18603) previously filed in these Chapter 11 cases. In these prior filings, these four contracts are identified as (i) "Contract No. 1: DEAC"; (ii) "Contract No. 2: M-1"; (iii) "Contract No. 3: M-2"; and (iv) "Contract No. 4: M-3.5." The Autocam Affidavit and Exhibit List also identify all outstanding purchase orders issued pursuant to each Autocam Executory Contract (collectively, the "Purchase Orders").

4.  The Autocam Executory Contracts are multiple-year, master requirements contracts extending for "the life of the part." Pursuant to these master agreements, the Purchase Orders were issued at intervals reflecting the parties' then-current production needs, price changes, etc. The Autocam Executory Contracts were executed <u>prepetition</u> while many Purchase

2

Orders were issued <u>postpetition</u>. The prepetition Autocam Executory Contracts and the Purchase Orders issued thereunder constitute single, integrated agreements that must be assumed, assigned or rejected in their entirety pursuant to the applicable provisions of 11 U.S.C. § 365.[1] For example, if the Contracting Debtors propose to assume and assign one or more of the prepetition Autocam Executory Contracts, three consequences invariably follow. First, because all Autocam Executory Contracts predate October 8, 2005, section 365 of the Federal Bankruptcy Code (the "Code") applies to all attempted assignments of Autocam Executory Contracts and their related Purchase Orders. Second, the Debtors may not assign one or more Purchase Orders without assigning the Autocam Executory Contracts to which they relate along with all other Purchase Orders issued pursuant to such Autocam Executory Contracts. Finally, because section 365(f)(2)(B) of the Code applies to these proposed assignments, the Debtors must provide, at a minimum, adequate assurance of future performance of the assignee's contractual obligations after the assignment even though that contract is not in default.

**B.    Assumption and Assignment of Executory Contracts Under the Modified Plan**

5.    Section 8.1(a) of the Modified Plan states that, unless otherwise provided therein, all executory contracts "shall be deemed automatically assumed in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code as of the Effective Date." Upon such assumption and the occurrence of the Effective Date, those contracts "shall vest in and be fully enforceable by the applicable Reorganized Debtor in accordance with their

---

[1] Executory contracts may not be assumed in part or rejected in part. *See*, *e.g.*, *In re Nitec Paper Corp.*, 43 B.R. 492 (S.D.N.Y. 1984); *In re Teligent, Inc.*, 268 B.R. 723 (Bankr. S.D.N.Y. 2001); *In re Village of Rathskeller, Inc.*, 147 B.R. 665, 671 (Bankr. S.D.N.Y. 1992). Rather, debtor must either assume the entire agreement, *cum onere*, or reject the entire agreement. *See*, *e.g.*, *In re Adelphi Bus. Solutions, Inc.*, 322 B.R. 51 (Bankr. S.D.N.Y. 2005); *In re Storage Technology Corp.*, 53 B.R. 471 (Bankr. D. Colo. 1985) (trustee cannot construe various parts of transaction as separate agreements when they are clearly interdependent).

3

terms", except as may be modified by the Modified Plan or any relevant order entered by this Court.  Modified Plan § 8.1(a).

6. Section 8.2(a) of the Modified Plan specifically addresses "Material Supply Agreements" such as those between Autocam and certain of the Delphi debtors.  This Modified Plan provision states that any defaults under contracts to be assumed by Delphi shall be satisfied by "Cure."[2]  Upon information and belief, the concept of "Cure" as used in the Modified Plan only applies to prepetition executory contracts in default.

7. The Modified Plan originally contained a request by the Debtors to approve the Master Disposition Agreement dated as of June 1, 2009, between and among (i) Delphi Corporation, (ii) GM Components Holdings, LLC ("Components"), (iii) General Motors Corporation, (iv) Parnassus Holdings II, LLC ("Parnassus") and (v) certain other entities (the "MDA").  However, the Modified Plan in its final, confirmed form now provides that executory contracts previously designated for assignment to Parnassus or Components will now be first assigned to a new entity, "DIP Holdco 3, LLC" (the "Initial Assignee").   Thereafter, the Initial Assignee will transfer certain of these contracts to Components or some other entity or entities affiliated or associated with General Motors Corporation.

8. On or about July 10, 2009, the Debtors served a certain Notice of Assumption and Assignment With Respect to Certain Executory Contracts or Unexpired Leases to be Assumed and Assigned to GM Components Holdings, LLC or Steering Solutions Services Corporation, as Applicable, Under Modified Plan of Reorganization dated such date and directed to Autocam (the "Assignment Notice").  Schedule 1 attached to the Assignment Notice identified the

---

[2] "Cure" is defined in Section 1.47 of the Modified Plan.

4

following two (2) Purchase Orders involving Autocam that the Debtors seek to assume and assign to GM Components, LLC:

    (a)    Autocam Corporation EFT No. D 0550049056 with no cure amount stated.

    (b)    Autocam Corporation EFT No. D 0550049056 with no cure amount stated.

The Assignment Notice lists cure amounts for these two Purchase Orders at "$0."[3] A copy of the Assignment Notice including Schedule 1 is attached hereto as <u>Exhibit A</u>. These two Purchase Orders were issued prepetition and relate to Contract No. 1: DEAC. However, the Assignment Notice does not mention either Contract No. 1: DEAC or the other Purchase Orders related to that contract.[4]

9.    On Page 3 of the Assignment Notice, the Delphi debtors asserted that adequate assurance of future performance for contracts assigned to buyers associated with General Motors Corporation "because of the significant resources of General Motors Corporation." No other proof of adequate assurance has been supplied to Autocam. For example, Debtors have not provided Autocam with any financial information concerning DIP Holdco 3, LLC, Components and/or any other potential subsequent assignee that would indicate their financial ability to perform their payment and other obligations under any Autocam Executory Contracts assigned to

---

[3] As of the date of this Amended and Restated Objection, Autocam believes that the Debtors are current on their postpetition payment obligations under the Autocam Executory Contracts and Purchase Orders. However, Autocam reserves all of its rights and remedies against the Debtors and any other entities in the event of a later default.

[4] Upon information and belief, Debtors are or may be attempting to assign an Autocam Executory Contract or Purchase Order they identify as number "SAG 90115450." Autocam cannot identify this contract with reference to its business records. Nevertheless, for the reasons stated herein, Autocam objects to the assumption and assignment of this contract.

5

them. Specifically, Autocam has not received any documentation concerning the ownership, capital structure and/or cash flow of any potential assignee.

11. 10. In addition to the foregoing, counsel to the Debtors have advised Autocam's counsel that (i) the individual Purchase Orders can be assigned piecemeal in the absence of the relevant Autocam Executory Contract(s); and (ii) if any Purchase Order was entered into postpetition, it may be assigned without having to establish "adequate assurance of future performance" by the proposed assignee under 11 U.S.C. 365(f)(2)(B).

11. On July 17, 2009, Autocam served and filed its Objection to the Assignment Notice, a copy of which is attached hereto as <u>Exhibit B</u>. The hearing on the Assignment Notice and Autocam's Objection thereto has been adjourned to August 17, 2009.

12. On or about July 28, 2009, the Debtors filed and served on Autocam their Notice of Filing of Notice of Assumption and Assignment With Respect to Certain Executory Contracts or Unexpired Leases to be Assumed and Assigned to DIP Holdco 3, LLC Under Modified Plan of Reorganization (the "Second Assignment Notice"). A copy of the Second Assignment Notice is attached hereto as <u>Exhibit C</u>. The actual Notice and Assumption document attached to the Second Assignment Notice does not list any Autocam Executory Contracts or Purchase Orders. However, on the basis of conversations with Debtors' counsel, Autocam believes that this Second Assignment Notice relates to the two Purchase Orders listed in the Assignment Notice and, perhaps, the contract previously described herein as "SAG 90115450." The Second Assignment Notice apparently supersedes the Assignment Notice and identifies a new entity, DIP Holdco 3, LLC, as the proposed assignee of the aforesaid two Purchase Orders and the SAG contract (the "Buyer Assumed Contracts").

6

13. Upon information and belief, the Debtors desire that the Buyer Assumed Contracts will ultimately be assigned to GM Components, LLC or some other, as yet unidentified, General Motors-related entity.

14. Delphi has failed in the Modified Plan and the Second Assignment Notice, to provide adequate assurance of future performance with respect to (i) the Buyer Assumed Contracts as being assigned to DIP Holdco 3, LLC, Components or any other entity; and (ii) any other Autocam Executory Contracts that the Debtors are proposing to be assigned or any contract that Debtors may later propose to assign to any third party. Adequate assurance of future performance by the proposed assignee must be established by a Chapter 11 debtor as a precondition to any assignment of an executory contract, even if there are no existing defaults under that contract. 11 U.S.C. § 365(f)(2)(B). No such evidence has been presented to this Court or to Autocam as of this date.

## WAIVER OF MEMORANDUM

15. Autocam respectfully requests that this Court waive the requirement contained in Rule 9013 of the Local Bankruptcy Rules for the Southern District of New York that a separate memorandum of law be submitted because the issues raised in this Objection are not novel. To the extent that this Court determines that a memorandum of law is required, Autocam requests that it be allowed to submit one at a date to be determined by the Court.

## RELIEF REQUESTED

WHEREFORE, Autocam Corporation and its affiliates respectfully request the entry of an Order prohibiting Debtors from assigning any of the Autocam Executory Contracts and Purchase Orders to a third party or parties and granting Autocam such other and further relief as may be just and proper under the circumstances.

<table>
<tr><td>Dated: July 31, 2009<br>Grand Rapids, Michigan</td><td>BARNES & THORNBURG LLP<br>Counsel to Autocam Corporation<br><br>By:   /s/Patrick E. Mears<br>       Patrick E. Mears (PM-6473)<br>Business Address:<br>171 Monroe Avenue, NW<br>Suite 1000<br>Grand Rapids, Michigan  49503<br>Telephone:  (616) 742-3936<br>Facsimile:  (616) 742-3999<br>Email:  pmears@btlaw.com</td></tr>
</table>