**Hearing Date and Time: August 20, 2009 at 10:00 a.m. (prevailing Eastern time)**
**Objection Deadline and Time: August 13, 2009 at 4:00 p.m. (prevailing Eastern time)**

DUANE MORRIS LLP
COUNSEL TO PLYMOUTH RUBBER COMPANY, LLC

1540 Broadway
New York, NY 10036-4086
Telephone: 212.692.1022
Gerard S. Catalanello, Esq.
James J. Vincequerra, Esq.
William Heuer, Esq.

and

DUANE MORRIS LLP
470 Atlantic Avenue, Suite 500
Boston, Massachusetts 02210-2600
Telephone: 857.488.4200
Paul D. Moore, Esq.
Jeffrey D. Sternklar, Esq.
Kara M. Zaleskas, Esq.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| DELPHI CORPORATION, *et al.*, | Case No. 05-44481 (RDD) |
| Debtors. | (Jointly Administered) |

### MOTION OF PLYMOUTH RUBBER COMPANY, LLC FOR ORDER DEEMING ADMINISTRATIVE CLAIM OF PLYMOUTH RUBBER COMPANY, LLC TIMELY FILED AND FOR RELATED RELIEF

Plymouth Rubber Company, LLC ("Plymouth Rubber"), by and through its undersigned

counsel, hereby moves, pursuant to, *inter alia*, §§ 105, 503 and 507 of title 11 of the United States

Code, 11 U.S.C. §§ 101 *et seq*. (the "Bankruptcy Code"), Fed. R. Bankr. P. 3008, 9006 and 9014,

and Fed. R. Civ. P. 60(b), made applicable herein pursuant to Fed. R. Bankr. P. 9024, for an order

deeming Plymouth Rubber's unliquidated administrative claim (the "Administrative Claim") timely

and unaffected by the entry of the Modification Procedures Order (hereinafter defined), or for entry

of an order extending the Administrative Claims Bar Date (hereinafter defined) to permit Plymouth

Rubber to file the Administrative Claim, a true and correct copy of which is attached hereto as

**Exhibit A**.

As grounds for this motion (the "Motion"), Plymouth Rubber respectfully states as follows:

## I.    PRELIMINARY STATEMENT

By this Motion, Plymouth Rubber seeks relief from this Court that effectively will render

moot any timeliness objections that Delphi Automotive Systems, LLC ("Delphi Automotive") may

assert with respect to Plymouth Rubber's Administrative Claim.  Plymouth Rubber submits that it is

entitled to such relief on several grounds, not the least of which is that Plymouth Rubber did not

actually learn of the administrative expense bar date established by this Court (the "Administrative

Claims Bar Date")[1] until the day after it had passed, on July 16, 2009.  The reason that Plymouth

Rubber did not discover the imposition of the Administrative Claims Bar Date until after it had

passed is that Plymouth Rubber was forced to shut down, and currently is in the process of winding

up, as a direct result of Delphi Automotive's contractual breaches and tortious conduct which form

the bases on Plymouth Rubber's Administrative Claim.  Indeed, at this point, Plymouth Rubber's

sole "business operations" consist of:  (i) defending against, and prosecuting claims in, a lawsuit

commenced by Delphi Automotive against Plymouth Rubber in Michigan state court;[2] (ii) defending

---

[1]    As set forth in greater detail herein, Plymouth Rubber contests that the Administrative Claims Bar Date
applies to Plymouth Rubber, as the Modification Procedures Order (hereinafter defined) could not, and therefore did
not, modify the provisions of the Confirmation Order (hereinafter defined) that established a different process and
deadline for filing administrative expense claims.  *See infra* § IV.D. *See also* Confirmation Order, ¶ 40; Plan
Modification Order (hereinafter defined), ¶ A ("The Confirmation Order has not been revoked, withdrawn, or
vacated and remains in full force and effect, *except as may be modified by this order*.") (emphasis added).

[2]    As set forth herein, Delphi Automotive, the initiator of the Michigan Action (hereinafter defined), chose
Michigan state court, and not this Court, to address the post-confirmation disputes between Delphi Automotive and
Plymouth Rubber.  At no time prior to when Plymouth Rubber received the Administrative Claims Bar Date did
Delphi Automotive ever indicate that Plymouth Rubber's claims would be subject to the Administrative Claims Bar
Date or to the jurisdiction of this Court, nor has Delphi Automotive ceased participating in mediation involving the
Administrative Claim after the passing of the Bar Date, as both Delphi Automotive and Plymouth Rubber

2

against, and prosecuting claims in, a lawsuit involving Plymouth Yongle Tape (Shanghai) Co., Ltd.

("Yongle"), Plymouth Rubber and Delphi Automotive in the United States District Court for the

District of Massachusetts; (iii) winding up Plymouth Rubber's business affairs.  As detailed herein, if

this Court determines that Administrative Claims Bar Date applies to Plymouth Rubber and that the

Administrative Claim should not be deemed timely filed for other reasons, this Court should expand

the time, pursuant to Fed. R. Bankr. P. 9006(b), for Plymouth Rubber to file its Administrative

Claim.  *See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993).

Even accounting for the Second Circuit's "hard line" approach when applying the *Pioneer* factors to

motions under Bankruptcy Fed. R. Bankr. P. 9006(b)(1) and other federal rules premised on

"excusable neglect," all four factors weigh in favor of this Court finding that Plymouth Rubber's

failure to timely file the Administrative Claim stems from excusable neglect.  *See*, *e.g.*, *In re Enron*

*Corp.*, Case No. 01-16034 (AJG), 2003 Bankr. LEXIS 2113, at *21-22 (Bankr. S.D.N.Y. Sept. 23,

2003) (unpublished opinion in which court permitted late-filed claim, noting that the "floodgate"

concerns that usually weigh against permitting a late-filed claim to be deemed timely filed do not

apply when the claim is unique).

    Notwithstanding the foregoing, Plymouth Rubber contests the application and/or the

enforceability of the Administrative Claims Bar Date with respect to the Administrative Claim on

several other grounds, including the following:

        (a)    First, the Administrative Claims Bar Date does not apply to Plymouth Rubber

because the Debtors failed to provide Plymouth Rubber with "notice reasonably calculated, *under all*

*the circumstances*, to apprise interested parties of the pendency of the action and afford them an

opportunity to present their objections [or claims]," *Mullane v. Cent. Hanover Bank & Trust Co.*, 339

U.S. 306, 314 (1950) (emphasis added); *see also In re Grand Union Co.*, 204 B.R. 864, 881 (Bankr.

---

participated a mediation session on July 20, 2009 with full knowledge and understanding that Plymouth Rubber had
not filed the Administrative Claim.

D. Del. 1997).  In this case, Delphi Automotive failed to serve a copy of the *Notice of Bar Date for Filing Proofs of Administrative Expense* upon Plymouth Rubber's known counsel of record in pending post-confirmation litigation (as defined in greater detail herein, the "Actions").  Delphi Automotive's counsel had an obligation to communicate directly with Plymouth Rubber's counsel in matters relating to the Actions pursuant to the Model Rules of Professional Conduct of the American Bar Association (collectively, the "Model Rules").  Certainly, had Delphi Automotive served the Administrative Claims Bar Date Notice on Plymouth Rubber's counsel, then Plymouth Rubber would have been on actual notice of the Administrative Claims Bar Date before it had passed.  Because Plymouth Rubber was not afforded proper and reasonable notice, the Administrative Claims Bar Date should be deemed inapplicable to the Administrative Claim.

> (b)    Second, this Court should deem the claim timely filed under the "informal proof of claim doctrine," and Plymouth Rubber's "formal" claim should relate back to the dates on which it asserted its claims against Delphi Automotive in the Actions in late 2008 and early 2009.  *See In re Dana Corp.*, Case No. 06-10354 (BRL), 2008 Bankr. LEXIS 2241, at *6-8 (Bankr. S.D.N.Y. July 23, 2008) (acknowledging that "[c]ourts have long recognized the concept of informal proofs of claim where a creditor evidences intent to state a claim against an estate, but where the filings fail to conform to the technical requirements of a proof of claim.")[3]  As set forth in greater detail below, the Administrative Claim is identical to the counterclaims raised in the Actions, and, accordingly, this Court "should freely allow amendments to [Plymouth Rubber's] proofs of claim

---

[3]    Although the "informal proof of claim" doctrine is a widely accepted equitable principle employed by bankruptcy courts in every jurisdiction, some jurisdictions have adopted different criteria in determining what constitutes a valid "informal proof of claim."  *See In re Griffin Trading Co.*, 270 B.R. 883, 897 (Bankr. N.D. Ill. 2001) (discussing the various tests adopted by the circuits).  *Compare Wright v. Holm (In re Holm)*, 931 F.2d 620, 622 (9th Cir. 1991) (noting that there is no requirement that the document purporting to be an informal proof of claim be filed with the court) *against In re Enron Corp.*, 370 B.R. 90, 99 (Bankr. S.D.N.Y. 2007) (noting four criteria, including that informal claim must be a pleading filed with the bankruptcy court or otherwise included in bankruptcy court's judicial record).  In the instant matter, had Delphi Automotive commenced the Michigan Action as an adversary proceeding before this Court, and Plymouth Rubber had raised the Michigan Counterclaims therein, there would be little dispute that all four requirements cited by the *Dana* and *Enron* bankruptcy courts for application of the "informal proof of claim doctrine" would have been satisfied.

4

that relate back to the filing date of the informal claim when the purpose is to cure a defect in the

claim as filed or to describe the claim with greater particularity." *Wall St. Plaza, LLC v. JSJF Corp.*

*(In re JSJF Corp.)*, 344 B.R. 94, 102-103 (B.A.P. 9th Cir. 2006) (*citing Sambo's Restaurants, Inc. v.*

*Wheeler (In re Sambo's Restaurants, Inc.)*, 754 F.2d 811, 816-17 (9th Cir. 1985).

        (c)    <u>Third</u>, the *Order (A)(I) Approving Modifications to Debtors' First Amended*

*Plan of Reorganization (As Modified) and Related Disclosures and Voting Procedures and (II)*

*Setting Final Hearing Date to Consider Modifications to Confirmed First Amended Plan of*

*Reorganization and (B) Setting Administrative Claims Bar Date and Alternative Transaction*

*Hearing Date*, Docket No. 17032 (the "<u>Modification Procedures Order</u>") was ineffective to supplant

the terms of the Confirmation Order to the extent that it attempted to modify the Administrative

Claims Bar Date. The Confirmation Order provides, in relevant part, that "all other requests for

payment of an Administrative Claim (other than as set forth in the Plan) must be filed, in

substantially the form of the Administrative Claim Request Form attached as Exhibit 10.5 to the

Plan, with the Claims Agent and served on counsel for the Debtors and the Statutory Committees *no*

*later than 45 days after the Effective Date*." Confirmation Order, ¶ 40. The Confirmation Order

does not provide this Court with the discretion to modify this deadline, and the Debtors have not

expressly sought to modify the Confirmation Order to extend such authority to this Court.[4] *See*

Confirmation Order, ¶ 40; *see generally* Supplemental Modifications Motion (hereinafter defined).

Indeed, the Supplemental Modifications Motion falls well short of demonstrating the "exceptional

circumstances" that would warrant the Debtors' relief of establishing an administrative claims bar

date earlier than that provided in the Confirmation Order, as required pursuant to Fed. R. Civ. P.

60(b), made applicable herein pursuant to Fed. R. Bankr. P. 9024. *See also Paddington Partners v.*

---

[4]      Presumably, the Debtors are relying on the language of the Plan to support its position that this Court has
the discretion to set the Administrative Claims Bar Date. *See* Plan, § 1.3. However, the Confirmation Order, by its
own terms, controls in the event of a conflict with the Plan, *see* Confirmation Order, ¶ 53.

*Bouchard*, 34 F.2d 1132, 1142 (2d Cir. 1994) (noting that movant must establish "exceptional

circumstances" before court may enter relief),

(d)    <u>Finally</u>, pursuant to the *First Amended Joint Plan Of Reorganization Of Delphi

Corporation And Certain Affiliates, Debtors And Debtors-In-Possession*, Docket No. 11386) (as

subsequently modified on January 25, 2008, the "<u>Plan</u>"), Plymouth Rubber holds, and continues to

hold, an Allowed Administrative Claim.    *See* Plan § 2.1.    There is no dispute that Plymouth Rubber's

claim constitutes "liabilities incurred by the Debtors in the ordinary course of business during the

Chapter 11 Cases," which, pursuant to the Plan, were deemed allowed upon the entry of the

Confirmation Order (hereinafter defined).    Disallowance of the Allowed Administrative Claim,

therefore, could only be effective if the Debtors provided Plymouth Rubber with "notice and a

hearing."    *See* Fed. R. Bankr. P. 3008 ("A party in interest may move for reconsideration of an order

allowing or disallowing a claim against the estate.    The court after a hearing on notice shall enter an

appropriate order."); *see also* 11 U.S.C. §502(j) ("A claim that has been allowed or disallowed may

be reconsidered for cause.    A reconsidered claim may be allowed or disallowed according to the

equities of the case.")[5]    Because the Debtors have not properly sought reconsideration of the

Administrative Claim, Plymouth Rubber's continues to hold an Allowed Administrative Claim which

cannot be disallowed absent a proper proceeding before this Court.

In sum, this Court may adopt any one of the foregoing rationales to permit Plymouth

Rubber's Administrative Claim to be deemed timely filed, and thus to prevent the substantial

injustice that will result if Delphi Automotive is permitted to use the happenstance of its bankruptcy

case to play "gotcha" in order to avoid the outcomes of the Actions.

---

[5]    Neither § 502(j) of the Bankruptcy Code, nor Rule 3008 of the Federal Rules of Bankruptcy Procedures, limits their applications to prepetition claims.  *See*, *e.g.*, *MicroAge, Inc. v. Viewsonic Corp. (In re MicroAge, Inc.)*, 291 B.R. 503, 507-508 (9th Cir. BAP 2002) (noting that "claim" as defined by the Code does not limit the application of § 502(d) to administrative claims, and implying that § 502(j) would provide debtor right to seek reconsideration of allowed administrative claim).

## II.    JURISDICTION

1.      The Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334.  This

matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue of this proceeding

and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are, *inter alia*, § 105, 503 and 507

of the Bankruptcy Code, Fed. R. Bankr. P. 3008, 9006 and 9014, and Fed. R. Civ. P. 60(b), made

applicable herein pursuant to Fed. R. Bankr. P. 9024.

## III.    BACKGROUND

*A.     Pre-Confirmation Events In The Debtors' Bankruptcy Cases.*

3.      On October 8, 2005 and October 14, 2005 (collectively, the "Petition Date"), the

Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

4.      On August 30, 2006, Delphi Automotive, one of the Debtors, issued purchase order

#P6850008 to Plymouth Rubber to supply 100% of Delphi Automotive's requirements for certain

parts (hereinafter the "Original Purchase Order").  *See First Amended Complaint and Jury Demand*,

Case No. 08-094507-CK, Docket No. 12/22/2008-AMC (Mich. Ct. Claims Dec. 22, 2008)

(hereinafter, the "Michigan Complaint"), at ¶ 20.

5.      Pursuant to the Original Purchase Order, Delphi Automotive agreed to purchase

100% of certain of its parts requirements (the "Delphi Products") from Plymouth Rubber.  Pursuant

to the contracts between Plymouth Rubber and a joint venturer, Plymouth Yongle Tape (Shanghai)

Co., Ltd. ("Yongle"),[6] Yongle supplied Plymouth Rubber with the Delphi Products which were, in

---

[6]      In 2004, Plymouth Rubber and Hebei Huaxia Group entered into a joint venture agreement and formed
Plymouth Yongle Tape (Shanghai) Co., Ltd. ("Yongle").  In recognition of the cost-savings that could be achieved
by moving operations to a then-new manufacturing facility China, Plymouth Rubber contributed certain of its
intellectual property to Yongle in exchange for the exclusive right in the Western Hemisphere to purchase and sell
proprietary products (the "Proprietary Product Line").  Thus, as part of the business arrangement, Plymouth Rubber
granted Yongle the right to use its intellectual property during the approved term of operation of Yongle, but Yongle
was not free to use such proprietary information to make the Proprietary Product Line or sell these products in the
Western Hemisphere other than for sale through Plymouth Rubber.

turn, sold and delivered to Delphi Automotive in accordance with the terms of the Original Purchase

Order.  As a result of the Original Purchase Order, Delphi Automotive was far and away Plymouth

Rubber's largest customer.

6.        On December 10, 2007, the Debtors filed the *First Amended Joint Plan Of*

*Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In- Possession*,

Docket No. 11386) (as subsequently modified on January 25, 2008, the "Plan") and the *First*

*Amended Disclosure Statement with Respect to the Plan*, Docket No. 11388 (the "December 10

Disclosure Statement").  The Plan provides, in relevant part:

> **2.1       Administrative Claims.**  Subject to the provisions of Article X of
> this Plan, on the first Periodic Distribution Date occurring after the later of (a) the
> date when an Administrative Claim becomes an Allowed Administrative Claim or (b)
> the date when an Administrative Claim becomes payable pursuant to any agreement
> between a Debtor (or a Reorganized Debtor) and the holder of such Administrative
> Claim, a holder of an Allowed Administrative Claim shall receive, in full satisfaction,
> settlement, release, and discharge of, and in exchange for, such Administrative Claim,
> (i) Cash equal to the unpaid portion of such Allowed Administrative Claim or (ii)
> such other less favorable treatment which the Debtors (or the Reorganized Debtors)
> and the holder of such Allowed Administrative Claim shall have agreed upon in
> writing; provided, however, that (x) holders of the DIP Facility Revolver Claim, DIP
> Facility First Priority Term Claim, DIP Facility Second Priority Term Claim, and the
> Investment Agreement Claims shall be deemed to have Allowed Administrative
> Claims as of the Effective Date in such amount as the Debtors and such holders of
> such DIP Facility Revolver Claim, DIP Facility First Priority Term Claim, DIP
> Facility Second Priority Term Claim, and the Investment Agreement Claims shall
> have agreed upon in writing or as determined by the Bankruptcy Court, which Claims
> shall be paid in accordance with Article X of this Plan, and (y) **liabilities incurred**
> **by the Debtors in the ordinary course of business during the Chapter 11 Cases**
> **or arising under contracts assumed during the Chapter 11 Cases prior to the**
> **Effective Date shall be deemed Allowed Administrative Claims and paid by the**
> **Debtors or the Reorganized Debtors in the ordinary course of business in**
> **accordance with the terms and conditions of any agreements relating thereto**;
> provided that (i) any cure payments associated with the assumed contracts shall be
> paid in accordance with Sections 2.1(a) or 2.1(b), except as otherwise provided in
> Article VIII, and (ii) the contracts shall not have been rejected pursuant to Section
> 8.1(a) of the Plan.  Holders of Administrative Claims shall not be entitled to
> Postpetition Interest unless the documents governing such Administrative Claims
> explicitly so provide.

> **10.5      Other Administrative Claims.** All other requests for payment of an
> Administrative Claim (other than as set forth in Article 10.1, Article 10.2, Article
> 10.3, or Article 10.4 of this Plan) must be filed, in substantially the form of the

Administrative Claim Request Form attached hereto as Exhibit 10.5, with the Claims Agent and served on counsel for the Debtors and the Statutory Committees **no later than 45 days after the Effective Date**.  Any request for payment of an Administrative Claim pursuant to this Article 10.5 that is not timely filed and served shall be disallowed automatically without the need for any objection from the Debtors or the Reorganized Debtors.  The Debtors or the Reorganized Debtors may settle an Administrative Claim without further Bankruptcy Court approval.  Unless the Debtors or the Reorganized Debtors object to an Administrative Claim within 60 days after the Administrative Claims Bar Date (unless such objection period is extended by the Bankruptcy Court), such Administrative Claim shall be deemed allowed in the amount requested. In the event that the Debtors or the Reorganized Debtors object to an Administrative Claim, the Bankruptcy Court shall determine the allowed amount of such Administrative Claim.  Notwithstanding the foregoing, no request for payment of an Administrative Claim need be filed with respect to an Administrative Claim which is paid or payable in the ordinary course of business.

Plan, §§ 2.1, 10.5 (emphasis, in bold, added).

7.      On January 25, 2008, the Court entered an order confirming the Plan, Docket No.

12359 (the "Confirmation Order"), and the order became final on February 4, 2008.  The

Confirmation Order provides, in relevant part:

40.      Other Administrative Claims. *All other requests for payment of an Administrative Claim (other than as set forth in the Plan) must be filed, in substantially the form of the Administrative Claim Request Form attached as Exhibit 10.5 to the Plan, with the Claims Agent and served on counsel for the Debtors and the Statutory Committees no later than 45 days after the Effective Date*.  Any request for payment of an Administrative Claim pursuant to this paragraph that is not timely filed and served shall be disallowed automatically without the need for any objection from the Debtors or the Reorganized Debtors.

* * *

53.      References To Plan Provisions. The failure to include or specifically reference any particular provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Plan be confirmed in its entirety.  The provisions of the Plan and of this Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each; *provided, however, that if there is determined to be any inconsistency between any Plan provision and any provision of this Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of this Confirmation Order shall govern and any such provision of this Confirmation Order shall be deemed a modification of the Plan and shall control and take precedence.*

Confirmation Order, ¶¶ 40, 53 (emphasis added).  Thus, although the Plan provides this Court with

the discretion to set the "Administrative Claims Bar Date" for such date other than the date that arises

9

45 days after the Effective Date, the later date provided in the Confirmation Order (and elsewhere in the Plan) effectively trumps § 1.3 of the Plan.  *See* Plan, § 1.3, Confirmation Order, ¶¶ 40, 53.

**B.**    **The Post-Confirmation Business Relationship Between Delphi Automotive and Plymouth Rubber.**

8.    On or around January 30, 2008, Delphi Automotive agreed to revise the terms of the Original Purchase Order and issued a new Purchase Order (the "2008 Purchase Order") which restated substantially all of the terms of the Original Purchase Order but reflected an increase in pricing that had been requested by Plymouth Rubber.  *See* Michigan Complaint, ¶ 22.  The 2008 Purchase Order was effective from January 1, 2008 (retroactive) through and including December 31, 2008 unless terminated pursuant to the terms thereof.  *Id.*

9.    Thereafter, a series of disputes arose between Delphi Automotive and Plymouth Rubber regarding, among other things, alleged defects of the Delphi Products, pricing, and supply obligations.  *See*, *generally*, Michigan Complaint.

10.    In or around May, 2008, Delphi Automotive and Yongle commenced discussions regarding displacing Plymouth Rubber as Delphi Automotive's exclusive supplier.  Thereafter, Delphi Automotive purported to terminate the 2008 Purchase Order and contracted directly with Yongle to supply the Delphi Products.  *See*, *e.g.*, *Plymouth Rubber Company, LLC's Amended Answer and Counterclaim to Amended Complaint*, Case No. 08-11599, Docket No. 15 (D. Mass. Nov. 25, 2008) (the "Mass. Counterclaim"), at 14.  The activities of Yongle and Delphi Automotive constituted breaches of their respective obligations to Plymouth Rubber as well as commercial torts the effect of which caused Plymouth Rubber substantial damage.  *Id.*

**C.**    **The Post-Confirmation Litigation Concerning Plymouth Rubber's Claims Against Delphi Automotive.**

11.    On or around September 12, 2008, Delphi Automotive commenced an action against Plymouth Rubber in the Circuit Court for the County of Oakland, State of Michigan, Case No. 08-094507-CK (the "Michigan Action").  On or around December 8, 2008, Plymouth Rubber filed the

*Defendant's Answer, Affirmative Defenses, Counterclaim and Jury Demand*, in which it asserted counterclaims against Delphi Automotive, seeking an award of damages, legal fees and other costs, arising on account of its alleged contractual breaches of the Purchase Order.[7]

12.    On September 18, 2008, Yongle commenced an action against Plymouth Rubber in the United States District Court for the District of Massachusetts, Case No. 08-11599-JGD (the "Massachusetts Action," and collectively with the Michigan Action, the "Actions").  In the Massachusetts Action, Plymouth Rubber asserted counterclaims against both Yongle and Delphi Automotive for various torts that they committed against Plymouth Rubber stemming essentially from transactions which occurred beginning in May, 2008.

13.    On or around January 12, 2009, Delphi Automotive moved to dismiss the Massachusetts Action.  *See* Case No. 08-11599-MLW, Docket Nos. 24-27 (collectively, the "Dismissal Pleadings").  In addition to asserting lack of subject matter jurisdiction and the effect of the forum selection clause in the underlying contract between Delphi Automotive and Plymouth Rubber, Delphi Automotive also argued that the court "should abstain from adjudicating this matter" in favor of the pending Michigan Action.[8]

14.    Plymouth Rubber's Administrative Claim against Delphi Automotive stems exclusively from the counterclaims that it asserted in the Actions.

15.    The Actions are currently pending before their respective courts, although Yongle, Delphi Automotive and Plymouth Rubber (collectively, the "Parties") agreed to mediate their disputes on a consolidated basis.

---

[7]    Plymouth Rubber's claims against Delphi Automotive are not subject to the provisions of § 362(a) of the Bankruptcy Code, as they indisputably arise post-petition and post-confirmation. *See*, *e.g.*, 3 COLLIER ON BANKRUPTCY ¶ 362.03[3][c] (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2007) ("Actions on claims that arise after the commencement of the case are not stayed.  Such a stay would discourage others from dealing with the trustee or debtor in possession.")

[8]    This Court likewise should abstain from entering any order that impairs or prejudices Plymouth Rubber's rights in the Actions, as to permit Delphi Automotive to collaterally attack Plymouth Rubber's claims would be inequitable and would permit Delphi Automotive to escape the consequences of its own decision to litigate the matters relating to these disputes outside of this forum.

16.      At no point during the numerous correspondence by and among counsel to the Parties did counsel for Delphi Automotive assert that its pending, post-confirmation bankruptcy case imposed additional obligations on Plymouth Rubber including, without limitation, the need to file formal administrative claims.  There are no connections between Plymouth Rubber's state law claims asserted in the Actions and Delphi Automotive's bankruptcy case, and nowhere has Delphi Automotive alleged otherwise.

**D.      *Debtors' Efforts To Modify The Plan.***

17.      On or around June 1, 2009, the Debtors filed the *(A) Supplement to Motion for Order (I) Approving Modifications to Debtors' First Amended Plan of Reorganization (As Modified) and Related Disclosures and Voting Procedures and (II) Setting Final Hearing Date to Consider Modifications to Confirmed First Amended Plan of Reorganization and (B) Request to Set Administrative Claims Bar Date and Alternative Sale Hearing Date*, Docket No. 16646 (the "Supplemental Modifications Motion").  Nowhere in the Supplemental Modifications Motion did the Debtors seek to amend, vacate or modify the Confirmation Order to the extent that it established the deadline for filing Administrative Claims as "45 days after the Effective Date."  *See*, *e.g.*, Supplemental Motion, ¶¶ 64-66 (discussing statutory predicates for approval of bar date, equating rules governing bar date for filing pre-petition claims with administrative claims); Confirmation Order, ¶ 40.  Pursuant to the Supplemental Modifications Motion, the Debtors sought this Court's approval of substantial modifications to the Plan, including, among other provisions, the procedures for the payment of Administrative Claims.

18.      On or around June 16, 2009, this Court entered the Modification Procedures Order. The Modification Procedures Order does not provide that it supersedes or otherwise modifies, alters, amends or affects the Confirmation Order.

19.      On or around June 20, 2009, the Debtors, by and through their claims agent, served, among other things, the *Notice of Bar Date for Filing Proofs of Administrative Expense* (the

12

"Administrative Claims Bar Date Notice") on the parties identified on the Service Affidavit. According to the Service Affidavit, the Debtors did not serve the Administrative Claims Bar Date Notice upon any of the following: (i) "Plymouth Rubber Company, LLC," (ii) Matthew Lund and/or Mary Deon, counsel of record for Plymouth Rubber in the Michigan Action, or (iii) Michael Gottfried or Patricia Rich, counsel of record for Plymouth Rubber in the Massachusetts Action.

**E.      *Service Of The Administrative Claims Bar Date Notice.***

20.      Plymouth Rubber experienced significant financial difficulties, primarily as a result of Delphi Automotive's post-confirmation contractual breaches and tortious conduct, and accordingly, in October, 2008, Plymouth Rubber was forced to shut down operations and to lay off all of its employees.  *See Declaration of Stephen Collins* (the "Collins Dec."), a true and correct copy of which is attached hereto as **Exhibit B**, at ¶ 2.

21.      In late 2008, Plymouth Rubber began winding up its affairs.  Plymouth Rubber's manager, Versa Capital Management, Inc. ("Versa"), is headquartered in Philadelphia, Pennsylvania, and accordingly, Plymouth Rubber retained Mr. Stephen Collins, a former employee of Plymouth Rubber, to assist in the winding up of its activities and affairs, and to provide Versa with a contact in Massachusetts.  *Id*. at ¶ 3

22.      As Plymouth Rubber was winding up its affairs, Plymouth Rubber moved out of its offices, located at 500 Turnpike Street, Canton, Massachusetts, and notified the post office to forward its mail to Post Office Box 358, Canton, Massachusetts).  *Id*. at ¶ 5.  An affiliate of Versa leases office space at 275 Turnpike Street, Canton, Massachusetts (the "Wind-Down Office"), and Plymouth Rubber uses some of that leased space to store business documents and other equipment which may be necessary in the winding up process.  *Id*.  About once or twice a week, Mr. Collins reports to the Wind-Down Office, reviews the mail that has arrived and, when appropriate, forwards the mail to Mr. Randall Schultz, an operating principal of Versa.  *Id*.

23.     On or around July 9, 2009, during one of his periodic visits to the Wind-Down Office, Mr. Collins collected all of the mail which had been forwarded to Plymouth Rubber's post office box. *Id*. at ¶ 6. Mr. Collins took the three notices which had been forwarded to Plymouth Rubber from Kurtzman Carson Consultants LLC, placed them in an envelope, and delivered them to Mr. Schultz by first class mail on July 10, 2009. *Id*. Mr. Collins was unaware that the notices contained any time-sensitive materials.

24.     Mr. Schultz received the package that had been sent from Mr. Collins on July 16, 2009. *See Declaration of Randy Schultz* (the "Schultz Dec."), a true and correct copy of which is attached hereto as **Exhibit C**, at ¶ 2. Mr. Schultz immediately opened the package, recognized that it contained the Administrative Claims Bar Date Notice, and delivered it by hand to Versa's counsel, Mr. Thomas Kennedy. *Id.*, at ¶ 4. Mr. Kennedy immediately contacted Plymouth Rubber's outside counsel, Duane Morris LLP, and forwarded the material to them. *See Declaration of Kara Zaleskas* ("Zaleskas Dec."), attached hereto as **Exhibit D**, at ¶ 2

25.     Later that same day, counsel for Plymouth Rubber contacted Ronald Meisler, Esq., one of the Debtors' bankruptcy counsel, left a voicemail message identifying Plymouth Rubber's concerns regarding the alleged passing of the Administrative Claims Bar Date and the defective notice that Delphi Automotive provided to Plymouth Rubber. Zaleskas Dec., ¶ 3. On July 17, 2009, Plymouth Rubber requested that Delphi Automotive stipulate to deeming Plymouth Rubber's Administrative Claim as timely filed and to waiving any objections to the claim on timeliness grounds. Zaleskas Dec., ¶ 4. On July 20, 2009, after a mediation relating to the Actions and involving all of the Parties had been held, the Debtors informed Plymouth Rubber that it would not agree to deem Plymouth Rubber's Administrative Claim as timely filed. *Id*. at ¶ 5.

**F.     Entry of Plan Modification Order.**

26.     On July 30, 2009, this Court entered the *Order Approving Modifications Under 11 U.S.C. § 1127(b) To (I) First Amended Joint Plan Of Reorganization Of Delphi Corporation And*

14

*Certain Affiliates, Debtors And Debtors-In-Possession, As Modified And (II) Confirmation Order*

*(Docket No. 12359)*, Docket No. 18707 (the "<u>Plan Modification Order</u>").  The Plan Modification

Order provides, in relevant part:

> A.    <u>Entry of Confirmation Order</u>.  On January 25, 2008 (the "Confirmation
> Date"), the Court entered the Confirmation Order.  ***The Confirmation Order has not
> been revoked, withdrawn, or vacated and remains in full force and effect, except as
> may be modified by this order.***  No parties sought to revoke the Confirmation Order
> except the official committee of unsecured creditors (the "Creditors' Committee")
> and Wilmington Trust Company ("WTC"), each of which filed adversary complaints
> seeking revocation of the Confirmation Order but did not prosecute them, and both of
> which shall be deemed to have withdrawn such complaints.  Since the Confirmation
> Date, the Debtors have operated their businesses and managed their properties as
> debtors-in-possession in accordance with the Confirmation Order.

Plan Modification Order, ¶ A (emphasis added).  Pursuant to the Plan Modification Order, at all

times prior to the entry thereof, the Confirmation Order, and specifically paragraph 40 thereof,

remained the binding and effective procedure for preserving administrative claims against the

Debtors.

## IV.    <u>ARGUMENT</u>

*A.    **To The Extent That The Administrative Claims Bar Date Is Deemed To Apply To The
Administrative Claim, Plymouth Rubber Is Entitled To An Enlargement Of The
Administrative Bar Date Pursuant To Fed. R. Bankr. P. 9006(b)(1) Because Its Alleged
Failure To Timely File Its Administrative Claims Was The Product Of Excusable Neglect.***

27.    Although Plymouth Rubber contests that application of the Administrative Claims

Bar Date to the Administrative Claim for the reasons set forth in greater detail below, this Court need

not even address that issue because, even *assuming arguendo* that it does, Plymouth Rubber is

entitled to relief pursuant to Fed. R. Bankr. P. 9006(b) and the Supreme Court's ruling in *Pioneer

Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993).  As this Court

acknowledged in its January 20, 2009 decision: ¶

> The United States Supreme Court has adopted a two-part framework for the movant
> to establish its "excusable neglect" under Rule 9006(b)(1).  First, the failure to file the
> proof of claim must have been caused by "neglect," which the Court defined as
> "inadvertence, mistake, or carelessness," including "intervening circumstances
> beyond the party's control."  A tactical, or simply a knowing, decision not to file a

timely claim will not suffice.  Second, the movant's neglect must have been "excusable," which is to be determined in the exercise of the court's equitable discretion taking into account all relevant circumstances surrounding the failure to file a timely claim, guided, however, by the following four factors:  "the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith."

*In re Delphi Corp.*, Case No. 05-44481 (RDD), 2009 Bankr. LEXIS 571, at *19-20 (Bankr. S.D.N.Y. Jan. 20, 2009), *citing Pioneer*, 507 U.S. at 388, 395  (internal citations omitted).  In the instant case, Plymouth Rubber did not knowingly, or strategically, decide not to file its Administrative Claim prior to the Administrative Claims Bar Date, and accordingly, the first prong of this analysis is satisfied.  *See Candelario v. Centennial Healthcare Corp. (In re Centennial Healthcare Corp.)*, 2005 Bankr. LEXIS 2684, at *23 (Bankr. N.D. Ga. Dec. 28, 2005) (noting that "[d]ebtors do not contend, and there is no evidence, that [m]ovant acted in bad faith in not requesting payment of administrative expenses in a timely manner.  Doing nothing was not in her interest.  She had nothing to gain and everything to lose by ignoring the [Administrative Claims Bar Date] Notice").  Thus, all that is left for this Court to decide is whether Plymouth Rubber satisfies the four *Pioneer* factors.  Based on the circumstances, Plymouth Rubber submits that the Pioneer factors weigh in favor of extending the Administrative Claims Bar Date with respect to its Administrative Claim.

> 1.    *The Danger Of Prejudice To The Delphi Automotive.*

28.    There is no danger of any prejudice to Delphi Automotive if Plymouth Rubber's Administrative Claim is deemed timely filed.  Because the confirmed Plan (and the proposed modified plan) provides that administrative claims are to be paid in full, there is no prejudice resulting from the acceptance of an unliquidated administrative claim which is in the process of being liquidated in other fora.  With respect to this Court's previous decisions denying motions seeking relief pursuant to Fed. R. Bankr. P. 9006(b) regarding prepetition claims, this Court noted that "if the Court permitted the late filing of the Department's Claim, it would establish a precedent for the late filing of numerous other claims that would, in the aggregate, jeopardize the claims cap under the

16

chapter 11 plan." *Delphi*, 2009 Bankr. LEXIS 571, at *18. These concerns are not present in the

instant case, as (i) the Plan, even before the universe of administrative claims were or could have

been known, provided that all administrative claims would be deemed allowed claims which would

be paid in full in the ordinary course of business, and (ii) Plymouth Rubber's claim – addressed in

litigation commenced by Delphi Automotive itself – is unique, and accordingly, permitting Plymouth

Rubber's Administrative Claim to be deemed timely filed will not "open the floodgates" for the filing

of other, allegedly time-barred administrative claims. *See Candelario,* 2005 Bankr. LEXIS 2684, at

*19-20 (noting that the effect of allowing movant's application for payment of an administrative

expense claim to be timely "would have little, if any, impact on Debtors' Chapter 11 cases. Debtors'

reorganization is virtually completed. Movant's claim is similar to other claims that the reorganized

Debtors have geared up to defend. There has been no suggestion that payment of the claim would

adversely affect any other claimant or otherwise give rise to additional litigation in this Court.")

> 2.     *The Length Of The Delay And Its Potential Impact On The Proceedings.*

29.     The Administrative Claims Bar Date occurred on July 15, 2009. On July 16, 2009, a

mere one day later, Plymouth Rubber's counsel contacted Delphi Automotive's bankruptcy counsel

to advise that Plymouth Rubber held the Administrative Claim against the Debtors' estates. *See*

Zaleskas Dec., at ¶ 3. By July 17, 2009, Plymouth Rubber's counsel had provided Delphi

Automotive's bankruptcy counsel with all of the information relating to the nature of its

administrative claims, including, among other things, the cases and claim numbers of the Actions.

By that date, the Debtors had, at best, commenced an assessment of the administrative claims that

had been filed, and could not have been in any position to determine the extent of their administrative

claim liability. Accordingly, the delay was *de minimus*, and will have no impact on the Debtors'

bankruptcy case.

DM3\1096267.5

    *3.*      *The Reason For The Delay.*

30.     Although all four *Pioneer* factors should be considered, the Second Circuit places the greatest weight on the reason for the delay, and whether it was in the claimant's reasonable control. *Delphi*, 2009 Bankr. LEXIS 571, at *11, *citing In re Musicland Holdings Corp.*, 356 B.R. 603, 607 (Bankr. S.D.N.Y. 2006).  In the typical case, three of the *Pioneer* factors - the length of the delay, the danger of prejudice, and the movant's good faith - usually weigh in favor of the party seeking the extension.  *Id.*  Accordingly, the Second Circuit focuses on the third *Pioneer* factor: the reason for the delay, including whether it was within the reasonable control of the claimant.  *Id*. at *11-12.  The equities will rarely, if ever, favor a party who fails to follow the clear dictates of a court rule, and where the rule is entirely clear, courts generally expect that a party claiming excusable neglect will, in the ordinary course, lose under the *Pioneer* test.  *Id*. at *12, *citing Midland Cogeneration Venture Ltd. P'ship v. Enron Corp. (In re Enron Corp.)*, 419 F.3d 115, 122-23 (2d Cir. 2005).

31.     In this case, there are a number of factors which mitigate Plymouth Rubber's perceived negligence in failing to file its Administrative Claim in advance of the Administrative Claims Bar Date.

32.     First, the Administrative Claims Bar Date Notice did not reach Plymouth Rubber until July 16, 2009, after the Administrative Claims Bar Date.  *See* Schultz Dec., at ¶ 2.  The reason why there was an extensive delay between when the Debtors served the Administrative Claims Bar Date Notice and when Plymouth Rubber received it stems primarily from Delphi Automotive's bad acts in effectively putting Plymouth Rubber out of business.

33.     In late 2008, Plymouth Rubber was forced to cease operations, primarily as a result of the events giving rise to Plymouth Rubber's counterclaims in the Actions.  *See* Collins Dec., ¶ 2.  Plymouth Rubber terminated its employees, cancelled the lease of its facilities at 500 Turnpike Street, Canton Massachusetts and ordered its mail to be forwarded to a post office box.  *See id.* at ¶¶

18

2-5.  Versa retained, on a part-time basis, a former employee of Plymouth Rubber to provide winding

up consulting services.  *See id.* at ¶ 3.

34.      According to the Service Affidavit, the Administrative Claims Bar Date Notice was

mailed on or around June 20, 2009 to Plymouth Rubber's former offices located at 500 Turnpike

Street, Canton Massachusetts.  On or around June 25, 2009, the Administrative Claims Bar Date

Notice was forwarded to Plymouth Rubber's post office box.  *See* Schultz Dec., Ex. 1.  On or around

July 9, 2009, Mr. Collins collected the mail and delivered it to Mr. Schultz on July 10, 2009.  *See*

Collins Dec., ¶ 6.  Mr. Schultz received the package sent by Mr. Collins on July 16, 2009.  *See*

Schultz Dec., ¶ 2.  Plymouth Rubber could not have timely filed the Administrative Claim because it

did not know, nor reasonably could have known, of the occurrence of the Administrative Claims Bar

Date until after it had passed.

35.      Additionally, even if Plymouth Rubber could have learned of the Administrative

Claims Bar Date in advance thereof, Delphi Automotive still should have provided Plymouth

Rubber's known counsel with a copy of the Administrative Claims Bar Date Notice.  As this Court

has noted, "*where the rule is entirely clear*, courts generally expect that a party claiming excusable

neglect will, in the ordinary course, lose under the *Pioneer* test."  *Delphi*, 2009 Bankr. LEXIS 571, at

*12 (emphasis added).  In this case, the rule is not entirely clear – whether Delphi Automotive had an

obligation to provide notice of the Administrative Claims Bar Date to Plymouth Rubber's attorneys

is certainly unsettled among the bankruptcy courts. *See infra,* n.9.  Even assuming that no such duty

exists, Delphi Automotive nevertheless should have heeded the Model Rules, particularly since

Plymouth Rubber's Administrative Claim is identical to the counterclaims asserted in the Actions,

*see* New York Lawyer's Code of Professional Responsibility, DR 7-104 [1200.35] ("During the

course of the representation of a client a lawyer *shall not*: .. [c]ommunicate or cause another to

communicate on the subject of the representation with a party the lawyer knows to be represented by

a lawyer in that matter unless the lawyer has the prior consent of the lawyer representing such other party or is authorized by law to do so.") (emphasis added).

36.    Assuming Plymouth Rubber had known of the Administrative Claims Bar Date, which it had not, this Court could still find that the confusion caused by the conflicting terms of the Plan and Confirmation Order, on the one hand, and the Modification Procedures Order, on the other, warrant granting relief to Plymouth Rubber.  *See infra*, § IV.D.  *See also In re Premier Mbrshp. Servs., LLC*, 276 B.R. 709, 716 (Bankr. S.D. Fla. 2002) (noting that "[w]hen both the debtor and creditor are guilty of significant negligence in the handling of a claim and the debtor is aware of a creditor's claim, then … a tie goes to the [creditor]."), *citing Farley, Inc. v. Ohio Bureau of Workers' Compensation*, 213 B.R. 138, 143 (N.D.Ill. 1997), *citing In re Dartmoor Homes, Inc.*, 175 B.R. 659 (Bankr. N.D. Ill. 1994).

### 4.    The Good Faith Of Plymouth Rubber.

37.    As acknowledged by many courts, it is difficult to assess the "good faith" of the claimant in determining whether this fourth *Pioneer* factor has been satisfied.  *See*, *e.g.*, *Delphi*, 2009 Bankr. LEXIS 571, at *17.  In many cases, courts simply acknowledge that no question or challenge had been raised with respect to the good faith of the claimant.  *Id.*  In this case, Plymouth Rubber has evidenced its good faith by: (i) immediately notifying the Debtors of its Administrative Claim; and (ii) diligently seeking to resolve this matter with Delphi Automotive's bankruptcy counsel in advance of filing the instant motion.  Moreover, notwithstanding Delphi Automotive's unwillingness to accept Plymouth Rubber's Administrative Claim as timely filed, Plymouth Rubber expended time and resources in participating in the mediation held on July 20, 2009, an expensive concession given the threat that Delphi Automotive inappropriately could attempt to use the passing of the Administrative Claims Bar Date as leverage in its negotiations.

38.    Indeed, as a result of Delphi Automotive's post-Administrative Claims Bar Date conduct, Delphi Automotive should be estopped from asserting Administrative Claims Bar Date as a

defense to the Counterclaims and/or to otherwise relieve it of its obligation to pay the Administrative

Claim once it is liquidated in the Actions or otherwise fixed to a sum certain pursuant to a

compromise.

39.     Based on the foregoing, Plymouth Rubber submits that all four *Pioneer* factors weigh

in its favor that its failure to submit the Administrative Claim was the product of excusable neglect,

and accordingly, this Court should enter an order extending the Administrative Claims Bar Date and

deeming Plymouth Rubber's Administrative Claim as timely filed.

**B.      This Court Should Find That Delphi Automotive Failed To Provide Plymouth Rubber
         With Adequate And Reasonable Notice Of The Administrative Claims Bar Date.**

40.     In the event that the Administrative Claims Bar Date applied to Plymouth Rubber

(which Plymouth Rubber contests, *see infra*, § IV.D), then this Court should nevertheless find that

Delphi Automotive's failure to provide notice "reasonably calculated, *under all the circumstances*, to

apprise [Plymouth Rubber] of the pendency of the [bar date]," renders it inapplicable to Plymouth

Rubber. *See Grand Union*, 204 B.R. at 871, *citing Mullane*, 339 U.S. at 314. Based on the unique

circumstances giving rise to Plymouth Rubber's claims, and in light of Delphi Automotive's

obligation, under the Model Rules, to communicate with Plymouth Rubber's counsel for matters

arising in connection with its claims and counterclaims, this Court must find Delphi Automotive's

notice to Plymouth Rubber defective.

41.     Several bankruptcy courts have addressed the sufficiency of notice when a party has

failed to serve counsel for another party. *See*, *e.g.*, *Grand Union*, 204 B.R. at 875, 877-81

(discussing numerous cases addressing the sufficiency of notice when claimant's attorney not

served). In reaching their conclusions on this issue, courts look to the circumstances of the cases to

determine whether the debtor should have provided notice to the claimant's attorney. *Id.*, at 880 n.13

(listing cases in which the court refused to require notice to claimant's attorney and refusing to apply

reasoning of those cases, noting "I believe that these cases are not persuasive authority in deciding the subject motions because the cases are factually quite different from the situation here.")

42.    Because of the discussion of numerous cases,[9] the *Grand Union* case is particularly instructive in determining whether, in the instant case, serving the Administrative Claims Bar Date Notice on Plymouth Rubber alone, and not on its known counsel of record in the Actions, was sufficient.  In *Grand Union*, the United States Bankruptcy Court for the District of Delaware was charged with determining whether the debtor's notice of the bar date to several tort claimants, but not to their known counsel with whom the debtor had been dealing prior to the commencement of the bankruptcy case, satisfied the claimants' due process rights and constituted sufficient notice.  204 B.R. at 873.  After extensive analysis of the issues, the court reasoned that when an attorney knows that a claimant is represented by counsel, he is duty-bound under the Model Rules to communicate with the claimants' counsel with respect to all matters relating to the claims that are the subject of the representation.  *Id.* at 875-76.

43.    Notably, none of the cases discussed in *Grand Union* seemingly involve pending, "live" litigation that had been commenced by the reorganized debtor. And, Delphi Automotive's bankruptcy counsel knew, or should have known, that Plymouth Rubber was represented by counsel

---

[9]    The *Grand Union* court discusses or cites no less than twelve cases that address the issue of sufficiency of notice when a claimant is represented by counsel.  The court first reviewed two cases - *Graham v. United States*, 96 F.3d 446 (9th Cir. 1996) and *In re Williams*, 51 B.R. 627, 629 (Bankr. S.D. Ohio 1985) - in which the courts found that notice to the claimants alone was insufficient.  *Grand Union*, 204 B.R. at 876-878.  The *Graham* and *Williams* courts found that where an attorney knows that a party is represented by counsel, he has a duty to deal with that party only through the attorney.  *Id.*  The *Grand Union* court then proceeded to discuss several cases - *In re Solvation, Inc.*, 48 B.R. 670 (Bankr. D. Mass. 1985), *Dependable Ins. Co. v. Horton (In re Horton)*, 149 B.R. 49 (Bankr. S.D.N.Y. 1992), and *Midlantic National Bank v. Kouterick (In re Kouterick)*, 161 B.R. 755 (Bankr. D.N.J. 1993) - in which the courts rejected the holdings of *Graham* and *Williams*, finding that notice to a claimant when its attorney has not entered a notice of appearance in the bankruptcy case constitutes reasonable and sufficient notice. *Id.* at 878-79.  The *Grand Union* court further acknowledged, without much discussion, that there were other cases, including *In re R.H. Macy & Co.*, 161 B.R. 355 (Bankr. S.D.N.Y. 1993) and six bankruptcy cases (identified in a footnote) which followed what appeared to be the majority view that absent the filing of a notice appearance, the debtor does not have a duty to provide notice to a claimant's attorney.  *Id.* at 880 and n.13.  The *Grand Union* court declined to follow the holdings in all of these cases, noting that they were factually distinguishable.  *Id.*

in its prosecution of its counterclaims in the Actions.[10]  These facts weigh heavily in favor of

applying the mandates of Rule 4.2 of the Model Rules, including the unequivocal limitation that "a

lawyer shall not communicate about the subject of the representation with a party the lawyer knows

to be represented by another lawyer in the matter," in determining whether notice was sufficient.

*See*, *e.g.*, *Grand Union*, 204 B.R. at 875-76.

44.    Moreover, even though the Debtors served the Administrative Claims Bar Date

Notices in accordance with Fed. R. Bankr. P. 2002(g), such provision is applicable only to the notices

that are required to be sent pursuant to that Rule.  Importantly, notices regarding the establishment of

administrative claims bar dates are not required to be sent pursuant to Rule 2002, and accordingly, no

presumption that the Debtors properly served the Administrative Claims Bar Date Notice should

arise in their favor.  Indeed, the Debtors did not serve "Plymouth Rubber Company, LLC," the entity

against which Delphi Automotive had commenced the Michigan Action, and therefore a known

administrative claimant; rather, the Debtors seemingly relied on their extensive – extremely outdated

– lists created in connection with the creditor matrix and claims register in hopes that they would

cover all known administrative claimants.  Pursuant to *Mullane* and the numerous cases which hold

---

[10]    In the Michigan Action, Delphi Automotive is represented by Dykema Gossett PLLC ("Dykema") and, importantly, by co-counsel James G. Derian, Esq., in-house counsel of Delphi Automotive.  At the time that the Debtors were preparing their service list of the Administrative Claims Bar Date Notice, Mr. Derian was well aware of the pending Actions as well as Plymouth Rubber's financial and operating conditions.  Notwithstanding his involvement in the Actions and his knowledge of these facts, which should have prompted him to notify Plymouth Rubber and its counsel of the pending Administrative Claims Bar Date, Mr. Derian made no mention of this upcoming event.  Rather, all of the parties seemingly interpreted the pendency of the Actions in other fora, and the upcoming mediation session scheduled to occur after the Administrative Claims Bar Date, as providing an exception to the Administrative Claims Bar Date to Plymouth Rubber.  Indeed, Mr. Derian attended the mediation session on July 20, 2009 and negotiated as if the claims of Plymouth Rubber remained intact and would not be barred as a result of Plymouth Rubber's alleged failure to file a formal Administrative Expense Form with Kurtzman Carson Consultants LLC.

In addition to Mr. Derian's direct knowledge of these circumstances (which must be imputed to the Delphi Corporation itself), on information and belief, pursuant to the Interim Compensation Order entered early in this case, Dykema has been serving monthly invoices to, among others, the Debtors' bankruptcy counsel.  Accordingly, a cursory review of Dykema's invoices (and time records) by Debtors' counsel would have revealed the pending Michigan Action and the fact that Plymouth Rubber is represented by counsel that should be served with a copy of the Administrative Claims Bar Date Notice.

that a debtor must serve known claimants notices that are reasonably calculated to apprise them of the upcoming action or event, the notices provided to Plymouth Rubber should be deemed deficient.

45.    For the foregoing reasons, this Court should adopt the rationale of *Grand Union* and find that the Debtors' service of the Administrative Claims Bar Date Notice on Plymouth Rubber, and not upon its known counsel of record, was constitutionally deficient.  Accordingly, because Plymouth Rubber did not receive proper notice of the Administrative Claims Bar Date, it cannot be bound by it, and the Administrative Claim should be deemed timely filed.

**C.    *This Court Should Find That Plymouth Rubber's Counterclaims Constitute Proper "Informal Proofs Of Claim" Which Were Timely Filed And To Which Plymouth Rubber's Formal Administrative Claims Relate Back.***

46.    In the event that this Court finds that the Administrative Claims Bar Date applied to the Administrative Claim, and if this Court finds that, notwithstanding the preceding argument, service of the Administrative Claims Bar Date Notice was reasonable and sufficient, this Court should apply the "informal proof of claim" doctrine to Plymouth Rubber's counterclaims and deem Plymouth Rubber's formal Administrative Claim as timely filed.

47.    Courts have long recognized the concept of informal proofs of claim where a creditor evidences intent to state a claim against an estate, but where the filings fail to conform to the technical requirements of a proof of claim. *Dana Corp*., 2008 Bankr. LEXIS at *6, *citing In re M.J Waterman & Assocs.*, 227 F.3d 604, 608 (6th Cir. 2001) and *In re Operation Open City, Inc.*, 148 B.R. 184, 189 n. 5 (Bankr. S.D.N.Y. 1992) (noting that courts in the Second Circuit have recognized the concept of informal proofs of claims). Whether a filed document constitutes an informal proof of claim depends upon whether it makes a demand upon the estate and expresses an intent to hold the estate liable. *Id.*, *citing In re Fink*, 366 B.R. 870, 878-79 (Bankr. N.D. Ind. 2007) and *Wilkens v. Simon Brothers, Inc.*, 731 F.2d 462, 465 (7th Cir. 1984).  "Stated another way, the question is whether the supposedly informal proof of claim asserts a claim against the estate and an intent to

share in a distribution of its assets." *Id.*, *citing Donovan Wire & Iron*, 822 F.2d 38, 39 (8th Cir.

1987), *In re Int'l Horizons, Inc.*, 751 F.2d 1213, 1217 (5th Cir. 1985), and *Fink*, 366 B.R. at 878-79.

48.     Unlike several of the other circuits, the Second Circuit seemingly has not yet

endorsed one particular test for applying the "informal proof of claim" doctrine.  *See*, *e.g.*, *Griffin

Trading*, 270 B.R. at 897 (noting that the Fifth, Sixth, Tenth and Eleventh Circuits apply a five part

test that requires the claim to have been filed with the bankruptcy court, while the Eighth and Ninth

Circuits impose no such requirement).  Accordingly, this Court is free to adopt either of these tests in

order to insure that a fair and just result is reached.  *See*, *e.g.*, *Sambo's Restaurants*, 754 F.2d at 816-

17 (noting that in the absence of prejudice to an opposing party, the bankruptcy courts, as courts of

equity, should freely allow amendments to proofs of claim that relate back to the filing date of the

informal claim when the purpose is to cure a defect in the claim as filed or to describe the claim with

greater particularity).

49.     The bankruptcy case of *Dana Corp.* appears to be the most recent case within the

Second Circuit to address the "informal proof of claim" doctrine.  *See* 2008 Bankr. LEXIS at *6-7.

In that case, the bankruptcy court rejected the applicability of the "informal proof of claim" doctrine

to the claimant's earlier motion for relief from stay, noting that the claimant's motion "did not

evidence any intent to recover from the Debtors' estates" because the stay motion "expressly

disclaimed seeking any recovery against the Debtors and purported to limit any recovery to liability

insurance." *Id.* at *9-10.

50.     In the instant case, there is no doubt that the counterclaims asserted by Plymouth

Rubber in each of the Actions evidence a clear intent to recover from Delphi Automotive's estate.

Indeed, Delphi Automotive's strongest argument to persuade this Court to decline to apply the

"informal proof of claim" doctrine is the fact that Plymouth Rubber did not raise the counterclaims in

any pleading before this Court.  *See*, *e.g.*, *Dana Corp.*, 2008 Bankr. LEXIS at *7-8 (noting that there

are generally four requirements in order for the "informal proof of claim" doctrine to apply: the

documents (1) have been timely filed with the bankruptcy court and have become part of the judicial

record; (2) state the existence and nature of the debt; (3) state the amount of the claim against the

estate, and (4) evidence the creditor's intent to hold the debtor liable for the debt.)  *But see First Am.*

*Bank & Trust of Minot v. Butler Mach. Co. (In re Haugen Const. Serv., Inc.)*, 876 F.2d 681, 682 (8th

Cir. 1989) (documents need not be filed with the bankruptcy court in order to constitute valid

informal proofs of claim); *Sambo's Restaurants*, 754 F.2d at 816 (same).  However, in light of the

circumstances of this case, and the fact that Delphi Automotive pursued its claims in the Michigan

state court, and not in this Court, it is inequitable to limit the applicability of the "informal proof of

claim" doctrine on the grounds that Plymouth Rubber did not assert its counterclaims, or otherwise

file a pleading relating to the Actions, with this Court.[11]

51.    Therefore, this Court should find that Plymouth Rubber's counterclaims in the

Actions and served upon Delphi Automotive well before the Administrative Claims Bar Date

constitute informal proofs of claim which Plymouth Rubber may amend, rendering the "formal"

Administrative Claim timely filed.  *See Hayes*, 327 B.R. at 461-462 (claimant's nondischargeability

complaint against debtor constituted informal proof of claim to which formal proof of claim related

back and accordingly, was deemed timely).

**D.    *This Court Should Find That Prior To The Entry Of The Plan Modification Order: (I) The Confirmation Order Remained In Full Force And Effect, And It Dictated The Deadline For Filing Plymouth Rubber's Administrative Claim, Or (II) The Modification Procedures Order Was Ineffective To Disallow The "Allowed Administrative Claims" Of Plymouth Rubber.***

52.    In their haste to press this Court to authorize and Administrative Claims Bar Date and

approve the sufficiency of the Administrative Claims Bar Date Notice, the Debtors seemingly did not

review either the Plan or the Confirmation Order, as the Supplemental Modifications Motion failed to

address both: (i) the continuing binding effect of the Confirmation Order until expressly superseded

---

[11]    Certainly, had Plymouth Rubber asserted its claims with this Court, and not in Actions, then Delphi Automotive would be seeking to object to those claims in its bankruptcy case on the grounds that they were not properly asserted as counterclaims in the Actions.

by a modified confirmation order, and (ii) Allowed Administrative Claims" held by all administrative

claimants whose claims arose from "liabilities incurred by the Debtors during their chapter 11 cases."

*See* Plan, § 2.1.

> 1.    *Prior To The Entry Of The Plan Modification Order, The Confirmation Order Remained Binding On The Debtors And Their Creditors, And The Debtors Could Not Alter The Procedures And Deadlines For Filing Administrative Claims As Provided Therein.*

53.    Section 1127 of the Bankruptcy Code provides that a proponent of the plan or

reorganized debtor may modify a confirmed plan so long as the plan has not been substantially

consummated.  *See* 11 U.S.C. §1127(b).  The modifications to the plan may be approved by the

bankruptcy court only if the modified plan satisfies the requirements of §§ 1122 and 1123, and the

bankruptcy court confirms the modified plan pursuant to § 1129 of the Bankruptcy Code.  *See id.*

Unless and until the bankruptcy court enters an order altering, modifying or vacating (in whole or in

part) a final confirmation order, the terms of the final confirmation order remain valid and

enforceable.  *See, e.g.*, *In re Logan Place Props., Ltd.*, 327 B.R. 811, 815 (Bankr. S.D. Tex. 2005)

(noting that Fed. R. Civ. P. 60, made applicable pursuant to Fed. R. Bankr. P. 9024, permits courts to

provide relief with respect to existing confirmation order, but only to the extent that movant complies

with § 1127(b) of the Bankruptcy Code); *see also* Confirmation Order, ¶ 5 ("This Confirmation

Order and the terms of the Plan (subject to the provisions of Articles 12.2 and 12.3 of the Plan) shall

be deemed binding upon (a) the Debtors, (b) the Reorganized Debtors, (c) all holders of Claims

against and Interests in the Debtors …").

54.    In the Supplemental Modifications Motion, the Debtors had not requested, pursuant

to Fed. R. Civ. P. 60(b), made applicable herein pursuant to Fed. R. Bankr. P. 9024, and § 1127 of

the Bankruptcy Code, for this Court to approve amendments to paragraph 40 of the Confirmation

Order, which established the binding procedure and deadline for filing administrative claims.  And,

although this Court expressly found that "cause exist[ed] for establishing July 15, 2009 as the

27

Administrative Expense Bar Date," *see* Modification Procedures Order, ¶ P, this Court did not find

that the Debtors established the existence of "exceptional circumstances" warranting relief under

Rule 60(b).  *See Third Ave. Rest. Corp. v. New York Life Ins. Co. (In re 1115 Third Ave. Rest. Corp.)*,

185 B.R. 12, 14 (S.D.N.Y. 1995) ("[B]ecause Rule 60(b) provides for extraordinary relief, a motion

pursuant to that rule should be granted only if the moving party demonstrates exceptional

circumstances.") (internal citations and quotations omitted).  Accordingly, the Modification

Procedures Order was ineffective to alter the terms of the Confirmation Order.  *See also* Plan

Modification Order, ¶ A.

56.        The Confirmation Order unequivocally provides that "requests for payment of an

Administrative Claim (other than as set forth in the Plan) must be filed, in substantially the form of

the Administrative Claim Request Form attached as Exhibit 10.5 to the Plan, with the Claims Agent

and served on counsel for the Debtors and the Statutory Committees ***no later than 45 days after the***

***Effective Date***.  Any request for payment of an Administrative Claim pursuant to this paragraph that

is not timely filed and served shall be disallowed automatically without the need for any objection

from the Debtors or the Reorganized Debtors."  Confirmation Order, ¶ 40 (emphasis added); *see also*

Plan, § 10.5 (mirroring language of Confirmation Order, omitting any reference to discretion of

Court to establish bar date by separate order).  In other words, the Confirmation Order, and § 10.5 of

the Plan, provide that any administrative claim that meets the following three requirements: (i)

prepared on a form substantially identical to the one attached as Exhibit 10.5 to the Plan; (ii) filed

with the Claims Agent and served on counsel for the Debtors and the Statutory Committees, (iii)

within 45 days after the Effective Date, shall not automatically be disallowed. *See id*.

56.        The Debtors presumably relied on § 1.3 of the Plan in asserting that this Court had

the authority to modify the Administrative Claims Bar Date.  *See* Plan, § 1.3(the bar date "shall be 45

days after the Effective Date, *unless otherwise ordered by the Bankruptcy Court*.") The Debtors'

reliance on this language, in light of the Confirmation Order's provisions that it shall control in the

event of a conflict with the terms of the Plan, was misplaced.  Therefore, the Debtors are not entitled

to unilaterally amend the terms of the Confirmation Order, including the procedures for submitting

Administrative Claims, unless and until it has complied with §1127(b) of the Bankruptcy Code.  *See*,

*e.g.*, *Logan Place*, 327 B.R. at 815 (noting that "[w]hile Rule 60 ordinarily allows for relief from

final orders, the Code specifically states that relief from a confirmation order is limited to fraud, and

modification is limited to the provision of § 1127. This Court agrees with courts finding fraud under

§ 1144 as the exclusive means by which a plan can be revoked, and § 1127 as the exclusive means by

which a plan can be modified.")

57.    Because the Modification Procedures Order was not entered in accordance with the

requirements of § 1127(b) of the Bankruptcy Code, which requires notice and a hearing conducted in

accordance with § 1129, and because the Confirmation Order remained a binding, enforceable order

on, among others, the Debtors, the purported establishment of the Administrative Claims Bar Date

was ineffective.

58.    On July 30, 2009, this Court approved of the Plan Modification Order, which, by its

own terms, is the only order which effectively modified the Confirmation Order.  It is clear that the

Plan Modification Order presupposes that the Confirmation Order granted the Debtors the discretion

and/or the right to request the establishment of an Administrative Claims Bar Date other than as

provided in the Confirmation Order, which it did not.  Accordingly, the Plan Modification Order

improperly establishes a retroactive administrative claims bar date, and deprives Plymouth Rubber,

the holder of an "Allowed Administrative Claim" as of July 30, 2009, of its rights and claims without

due process.[12]

---

[12]    Plymouth Rubber does not contest that the Debtors could amend the Plan and Confirmation Order and
establish an Administrative Claims Bar Date at a time earlier than as originally prescribed by the Plan and
Confirmation, only that the Administrative Claims Bar Date could only be established as of a date after the entry of
the Plan Modifications Order.

29

     2.     *The Debtors Did Not Seek Reconsideration Of The Allowed Administrative Claims Which Had Been Allowed Pursuant To The Terms Of The Plan And Confirmation Order.*

59.     By the Supplemental Procedures Motion, the Debtors sought to disallow the "Allowed Administrative Claims" arising under the Plan and Confirmation Order.  Because the Debtors did not comply with Fed. R. Civ. P. 3008 by giving "notice and an opportunity to be heard" to Plymouth Rubber regarding the attempted disallowance of Plymouth Rubber's "Allowed Administrative Claim" under the Plan, Plymouth Rubber continues to hold an "Allowed Administrative Claim."

60.     As set forth above, until this Court entered the Plan Modification Order, the Debtors, among others, remained bound by the terms and conditions of the Plan and Confirmation Order.  That means, simply, that Plymouth Rubber, whose Administrative Claim arises from "liabilities incurred by the Debtors in the ordinary course of business during the Chapter 11 Cases," continues to hold an "Allowed Administrative Claim."  The Modification Procedures Order could not, and did not, disallow those claims, and the Plan Modification Order likewise contains no provision disallowing Plymouth Rubber's Allowed Administrative Claim, upon reconsideration, as required under Fed. R. Bankr. P. 3008.  The Debtors certainly may challenge Plymouth Rubber's Allowed Administrative Claim by filing an objection and/or seeking reconsideration, but no such relief has been requested.

61.     Even to the extent that the Supplemental Procedures Motion could be deemed to be such a request, it is, at a minimum, procedurally deficient.[13]  Fed. R. Bankr. P. 3008 provides, in relevant part, "[a] party in interest may move for reconsideration of an order allowing or disallowing a claim against the estate.  The court *after a hearing on notice* shall enter an appropriate order."  Fed.

---

[13]     The Supplemental Procedures Motion is also substantively deficient with respect to seeking relief pursuant to Fed. Re. Bankr. P. 3008, as that rule impliedly requires satisfaction of one of the conditions of Fed. R. Civ. P. 60.  As the Debtors did not present any evidence or argument that "relief from a judgment" was warranted in these circumstances, the Supplemental Procedures Motion fails on a substantive level.

30

R. Bankr. P. 3008 (emphasis added).  "Claim," as defined under § 101(5) of the Bankruptcy Code, is

defined to include any "right to payment," and is not limited to only prepetition claims.  *See, e.g.*, *In*

*re Plastech Engineered Prods., Inc.*, 394 B.R. 147, 154 (Bankr E.D. Mich. 2008) ("The definition of

claim makes no distinction as to whether such right accrued pre- or post-bankruptcy")

62.      In this case, the Debtors did not provide Plymouth Rubber notice of the Supplemental

Procedures Motion or the scheduled hearing thereon.  *See Affidavit of Service*, Docket No. 16657.

Indeed, the Modification Procedures Order purports to disallow any "late filed" administrative claims

without a hearing.  Accordingly, the Modification Procedures Order cannot disallow the "Allowed

Administrative Claims," as it purports to do pursuant to Paragraph 41 thereof, because the Debtors

failed to provide due and adequate notice that the Allowed Administrative Claims were subject to

reconsideration and potential disallowance.

63.      Accordingly, because the Plan and Confirmation Order remain valid and enforceable

and have not yet been modified in accordance with § 1127(b), Plymouth Rubber's claims against

Delphi Automotive continue to be "Allowed Administrative Claims" which have not been altered by

the entry of the Modification Procedures Order.

## V.      PRIOR REQUEST

64.      No prior motion for the relief requested herein has been made to this Court or to any

other court.

## VI.      CONCLUSION

65.      Based on any of the foregoing different, but equally compelling and applicable,

grounds raised herein, this Court should enter an order which effectively renders Plymouth Rubber's

alleged failure to timely file a formal administrative claim on or before the Administrative Claims

Bar Date of no force and effect.  This Court can reach this result by: (a) extending the Administrative

Claims Bar Date pursuant to Fed. R. Bankr. P. 9006(b), by application of the Supreme Court's

holding in *Pioneer*; (b) finding that Administrative Claims Bar Date did not apply to Plymouth

Rubber due to the insufficiency of notice, (c) declaring Plymouth Rubber's previously filed

counterclaims "informal proofs of claim" which are subject to amendment and which effectively will

cure any timeliness defect, (d) finding that the Confirmation Order had not been amended by the

Modification Procedures Order, and accordingly, Plymouth Rubber's Administrative Claim, which

has been filed with Kurtzman Carson Consultants, LLC and served, with this Motion, on the parties

entitled to received the Administrative Claim pursuant to the Confirmation Order, is timely filed

pursuant to the terms of the Confirmation Order, or (e) declaring that Plymouth Rubber continues to

hold an "Allowed Administrative Claim" pursuant to the Plan and Confirmation Order, and that this

Court has not yet properly reconsidered the allowance of Plymouth Rubber's Administrative Claim.

Each and every one of these reasons provides this Court with the opportunity to avoid the substantial

injustice that will be triggered if Delphi Automotive is permitted, in the first instance, to pursue its

claims against Plymouth Rubber in the Michigan Action, and then, subsequently, to use the orders of

this Court to circumvent any judgment that is rendered against it.  Indeed, the only fair result is for

this Court to deem Administrative Claim timely filed, for any of the foregoing reasons, and to allow

Plymouth Rubber and Delphi Automotive to resolve their disputes in the currently pending Actions.

Dated:  New York, New York　　　　　　　　**DUANE MORRIS** LLP
　　　　　July 31, 2009

　　　　　　　　　　　　　　　　By:　　/s/ James J. Vincequerra＿＿＿＿＿
　　　　　　　　　　　　　　　　　　　Gerard S. Catalanello (GC-0945)
　　　　　　　　　　　　　　　　　　　James J. Vincequerra (JV-6270)
　　　　　　　　　　　　　　　　　　　1540 Broadway
　　　　　　　　　　　　　　　　　　　New York, NY 10036-4086
　　　　　　　　　　　　　　　　　　　Telephone: 212.692.1022

　　　　　　　　　　　　　　　　　　　and

　　　　　　　　　　　　　　　　　　　Paul D. Moore, Esq.
　　　　　　　　　　　　　　　　　　　Jeffrey D. Sternklar, Esq.
　　　　　　　　　　　　　　　　　　　Kara M. Zaleskas, Esq.
　　　　　　　　　　　　　　　　　　　DUANE MORRIS LLP
　　　　　　　　　　　　　　　　　　　470 Atlantic Avenue, Suite 500
　　　　　　　　　　　　　　　　　　　Boston, Massachusetts 02210-2600
　　　　　　　　　　　　　　　　　　　Telephone: 857.488.4200
　　　　　　　　　　　　　　　　　　　*Counsel to Plymouth Rubber Company, LLC*