**Hearing Date And Time: August 20, 2009 at 10:00 a.m.**
**Objection Deadline: August 13, 2009 at 4:00 p.m.**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler

　　- and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti

Attorneys for Delphi Corporation, et al.,
　Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x
　　　　　　　　　　　　　　　　　　　　　　　　:
　　In re　　　　　　　　　　　　　　　　　　　: 　Chapter 11
　　　　　　　　　　　　　　　　　　　　　　　　:
DELPHI CORPORATION, et al.,　　　　　　　　　　: 　Case No. 05-44481 (RDD)
　　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　Debtors.　　　 : 　(Jointly Administered)
　　　　　　　　　　　　　　　　　　　　　　　　:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

MOTION FOR ORDER PURSUANT TO 11 U.S.C. §§ 105(a) AND 503(b) FOR ORDER
AUTHORIZING DEBTORS TO APPLY CLAIMS OBJECTION PROCEDURES
<u>TO ADMINISTRATIVE EXPENSE CLAIMS</u>

("MOTION FOR AUTHORITY TO APPLY CLAIMS OBJECTION PROCEDURES
TO ADMINISTRATIVE EXPENSE CLAIMS")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this motion (the "Motion") for an order pursuant to 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 3007 authorizing the Debtors to apply the claims objection procedures (the "Claim Objection Procedures") set forth in the Order Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 2002(m), 3007, 7016, 7026, 9006, 9007, And 9014 Establishing (I) Dates For Hearings Regarding Objections To Claims And (II) Certain Notices And Procedures Governing Objections To Claims, entered December 7, 2006 (Docket No. 6089) (the "Claim Objection Procedures Order") to administrative expense claims filed against the Debtors in accordance with the requirements of the Modification Procedures Order (as defined below) and the Modified Plan (as defined below) (the "Administrative Claims").[1] In support of this Motion, the Debtors respectfully represent as follows:

Background

A.   The Chapter 11 Filings

1. On October 8 and 14, 2005, the Debtors filed voluntary petitions in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as then amended (the "Bankruptcy Code"). The Debtors continue to operate their businesses and manage their properties as debtors-in-possession under Bankruptcy Code sections 1107(a) and 1108. This Court has ordered joint administration of these cases.

2. No trustee or examiner has been appointed in these cases. On October 17, 2005, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Creditors' Committee"). On April 28, 2006, the U.S.

---

[1] For the purposes of this Motion, the term "Administrative Claims" shall not include Professional Claims (as defined in the Modified Plan), which shall be subject to the provisions of Article 10.3 of the Modified Plan.

2

Trustee appointed an official committee of equity holders, which was disbanded on April 24, 2009. On February 26, 2009, the U.S. Trustee appointed an official committee of retired employees to represent certain of the Debtors' current active salaried employees, retirees, and their spouses for certain limited purposes.

        3.      This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

        4.      The statutory predicates for the relief requested herein are sections 105(a) and 503(b) of the Bankruptcy Code.

B.     <u>Plan Confirmation And Postconfirmation Matters</u>

        5.      On December 10, 2007, the Debtors filed their first amended joint plan of reorganization (Docket No. 11386) (the "Plan") and related disclosure statement (Docket No. 11388). The Court entered an order confirming the Plan (as modified) (Docket No. 12359) (the "Confirmation Order") on January 25, 2009, and the order became final on February 4, 2008.

        6.      The Plan, as confirmed by this Court (the "Confirmed Plan"), was based upon a series of global settlements and compromises that involved nearly every major constituency in the Debtors' reorganization cases, including Delphi's labor unions and General Motors Company (formerly known as General Motors Corporation) ("GM"). The effectiveness of certain of these agreements, including the Debtors' two comprehensive agreements with GM, was conditioned on consummation of the Confirmed Plan. Although the Debtors on April 4, 2008 had satisfied the conditions required to substantially consummate the Confirmed Plan, including obtaining $6.1 billion of exit financing, Delphi's Plan Investors (as defined in the Confirmed Plan) refused to participate in the closing and refused to fund their Investment Agreement (as defined in the Confirmed Plan) with Delphi. On May 16, 2008, Delphi filed

3

complaints for damages and specific performance against the Plan Investors and related parties who refused to honor their equity financing commitments or participate in the closing that would have led to Delphi's successful emergence from chapter 11 in April 2008. These suits remain pending.

7. After the Plan Investors refused to fund their obligations under the Investment Agreement, as the Debtors continued working with their stakeholders to evaluate their options to emerge from chapter 11, the Debtors sought approval of two comprehensive agreements with GM: an amended and restated "Global Settlement Agreement" (the "Amended GSA") and an amended and restated "Master Restructuring Agreement" (the "Amended MRA"). On September 26, 2008, this Court entered an order authorizing the Debtors' implementation of the Amended GSA and the Amended MRA, which became effective on September 29, 2008.

8. Through the Amended GSA and Amended MRA, the Debtors addressed, at least in part, two goals of their transformation plan: (i) obtaining financial support from GM for certain of Delphi's legacy and labor costs and GM's business commitments to Delphi going forward and (ii) working to solve Delphi's pension funding situation. Under the Amended GSA and Amended MRA, GM agreed to contribute substantial additional value to the Debtors and eliminate significant elements of conditionality to the performance of GM's obligations. Delphi estimated the value of the net consideration received under the Amended GSA and Amended MRA to be approximately $10.6 billion (increased from approximately $6.0 billion under the original GSA and MRA).

9. During the fall of 2008 the Debtors were able to formulate certain modifications to the Confirmed Plan. Accordingly, on October 3, 2008, Delphi filed a motion under 11 U.S.C. § 1127 for an order approving (i) certain modifications to the Confirmed Plan

4

and related disclosure statement and (ii) related procedures for re-soliciting votes on the Confirmed Plan, as modified (Docket No. 14310) (the "Plan Modification Motion"). Subsequently, however, substantial uncertainty and significant decline in capacity in global debt and equity markets, the global economic downturn generally, and an unprecedented decline in global automotive production volumes adversely impacted Delphi's ability to develop a revised recapitalization plan and successfully consummate a confirmed plan of reorganization. Moreover, as a result of market turbulence, the Debtors were unable to extend the maturity date of their DIP credit facility (the "DIP Facility") on terms reasonably acceptable to the Debtors and their other stakeholders. Accordingly, with the support of the administrative agent (the "DIP Agent") and the requisite lenders under the DIP Facility, the Debtors entered into an accommodation agreement (as subsequently amended) which allows the Debtors, among other things, to continue using certain of the proceeds of the DIP Facility.

10. In light of these factors, the Debtors adjourned the hearing on the Plan Modification Motion several times. On June 1, 2009 the Debtors filed a supplement to the Plan Modification Motion (the "Motion Supplement"), which sought approval of (i) certain modifications to the Confirmed Plan (the "Modified Plan"), (ii) supplemental disclosure, and (iii) procedures for re-soliciting votes on the Modified Plan. In addition, to further support the Debtors' liquidity, GM agreed to make certain advances to the Debtors, including entry into an amended and restated agreement as of June 1, 2009 to provide the Debtors up to $250 million of additional pre-emergence liquidity to support Delphi's transformation plan and its reorganization plan.[2] The Motion Supplement was approved with modifications by order entered June 16, 2009

---

[2] GM sought chapter 11 protection on June 1, 2009. Concurrently with its filing for chapter 11 protection, GM filed a motion seeking Bankruptcy Court approval to continue to provide financing to certain of its suppliers, including by lending funds directly to suppliers such as Delphi in the manner as set forth in the GM

5

(the "Modification Procedures Order") (Docket No. 17032) and was later supplemented and amended by orders entered June 29, 2009 (Docket No. 17376), July 17, 2009 (Docket No. 18352), and July 21, 2009 (Docket No. 18551).

11. Also on June 1, 2009, while facing the most difficult economic period in decades with the most precipitous drop in U.S. vehicle sale volumes in half a century, Delphi reached an agreement to effect its emergence from chapter 11 through a transaction with Parnassus Holdings II, LLC ("Parnassus"), an affiliate of Platinum Equity, and with the support of GM Components Holdings LLC ("GM Components"), an affiliate of GM. In the exercise of the Debtors' fiduciary responsibilities to maximize the value of their estates for the benefit of all of their stakeholders, the Debtors executed an agreement (the "Platinum-GM Master Disposition Agreement") to reflect the foregoing transactions through a plan of reorganization. The agreement and the changes to the Confirmed Plan were filed as part of the Motion Supplement, on June 1, 2009.

12. On June 16, 2009, the Bankruptcy Court entered the Modification Procedures Order which, among other things, authorized the Debtors to commence solicitation of votes on the Modified Plan and set forth a comprehensive set of supplemental procedures for evaluating non-solicited alternative transactions to the Platinum-GM Master Disposition Agreement (as supplemented and amended, the "Supplemental Procedures"). The Supplemental Procedures provided for, among other things, an auction open to Qualified Bidders (as defined therein) and DIP Lenders making a Pure Credit Bid (as defined therein).

---

Arrangement. The Bankruptcy Court granted GM both interim and final approval of this motion and expressly provided that without further Court order, GM could continue payments and accommodations to financially or operationally distressed suppliers whether relating to the period prior to or following the commencement of GM's cases.

6

13. Pursuant to the Supplemental Procedures, the Debtors held an auction on July 26 and 27, 2009 at which the DIP Agent submitted a Pure Credit Bid on behalf of the DIP lenders that was supported by the requisite majority of the two most senior tranches of the DIP Facility (the "Required Lenders"). The Pure Credit Bid involved a credit bid of 100% of the principal and interest due and owing in respect of the DIP Facility under the DIP Credit Agreement (after giving effect to the application of any cash collateral to the DIP Facility) and was based upon an alternative Master Disposition Agreement (the "DIP Lender-GM Master Disposition Agreement") pursuant to which DIP Holdco 3, LLC ("DIP Holdco 3") would replace Parnassus as a purchaser, subject to the terms of the DIP Lender-GM Master Disposition Agreement. DIP Holdco 3 is an entity controlled by certain of the DIP lenders that together constitute the Required Lenders under the DIP Facility. At the conclusion of the auction, after careful consideration, Delphi's board of directors determined that the Pure Credit Bid was superior to the Platinum-GM Master Disposition Agreement, and approved it, subject to the parties' reaching a final agreement as to the terms and conditions of the Modification Approval Order and other items. Subsequently, the Debtors made certain further modifications to the Modified Plan to address the results of the auction.

14. After holding a final plan modification hearing on July 29 and 30, 2009, the Court entered an order approving the Modified Plan (Docket No. 18707) on July 30, 2009. Upon the effectiveness of the Modified Plan, Delphi will contemporaneously effectuate transactions, including the DIP Lender-GM Master Disposition Agreement, through which DIP Holdco 3 will operate Delphi's U.S. and non-U.S. businesses going forward with emergence capital and capital commitments but without the labor-related legacy costs associated with the North American sites which, together with Delphi's global steering business, are being acquired

by GM Components. A new company, DPH Holdings Co., will emerge as a reorganized entity that retains certain other residual non-core and non-strategic assets and liabilities that are expected to be divested over time.

        15.    Consummation of these transactions through the Modified Plan, which embodies concessions made by parties-in-interest to resolve these chapter 11 cases, will provide for the satisfaction of all of the Debtors' administrative claims, secured claims, and priority claims and a potential distribution to holders of general unsecured claims. Moreover, Delphi's emerging businesses, through GM and DIP Holdco 3, will continue to develop and deliver high-quality products to their customers globally.

C.    <u>The Previously Authorized Claims Objection Procedures For Prepetition Claims</u>

        16.    On April 12, 2006, this Court entered an Order Under 11 U.S.C. §§ 107(b), 501, 502, And 1111(a) And Fed R. Bankr. P. 1009, 2002(a)(7), 3003(c)(3), And 5005(a) Establishing Bar Dates For Filing Proofs Of Claim And Approving Form And Manner Of Notice Thereof (Docket No. 3206) (the "Bar Date Order"). Among other things, the Bar Date Order established July 31, 2006 (the "Bar Date") as the last date for all persons and entities holding or wishing to assert "Claims," as such term is defined in 11 U.S.C. § 101(5) (each, a "Claim"), against a Debtor (collectively, the "Claimants") to file a proof of claim with respect to each such Claim.[3]

---

[3]    On December 20, 2007, this Court entered the Order Under New Bankruptcy Rule 3007 And 11 U.S.C. § 105(a) Authorizing Debtors To Continue Claims Objection Procedures Under Order Dated December 7, 2006 Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 2002(m), 3007, 7016, 7026, 9006, 9007, And 9014 Establishing (I) Dates For Hearings Regarding Objections To Claims And (II) Certain Notices And Procedures Governing Objections To Claims (Docket No. 11561). Among other things, this order authorized the Debtors to continue certain of their current practices and procedures for filing and serving notice of omnibus Claims objections pursuant to the Claims Objection Procedures Order, including omnibus Claims objections to more than 100 Claims, notwithstanding amendments to rule 3007 of the Federal Rules of Bankruptcy Procedure, effective December 1, 2007, that impose certain additional requirements upon debtors in the prosecution of claims objections.

17.     As of May 26, 2009, the Debtors had received approximately 16,800 proofs of claim with aggregate face amounts of approximately $34 billion plus certain unliquidated amounts. The Debtors have sought to resolve these Claims expeditiously and cost-effectively. To reduce the costs of reconciling and reducing these Claims, upon the Debtors' motion, this Court on December 7, 2006 entered the Claims Objection Procedures Order, which established the Claims Objection Procedures. Since the entry of the Claims Objection Procedures Order, the Debtors have successfully used the Claims Objection Procedures to resolve most of the proofs of Claims. Indeed, as of June 30, 2009, the Debtors have filed 33 omnibus claims objections, objecting to approximately 14,000 proofs of claim which asserted approximately $10.6 billion in aggregate liquidated amounts plus additional unliquidated amounts. As of June 30, 2009, this Court has entered orders disallowing and/or claimants have withdrawn approximately 9,800 of those proofs of claim, which reduced the amount of asserted claims by approximately $9.5 billion in aggregate liquidated amounts plus additional unliquidated amounts. In addition, this Court has entered orders modifying approximately 4,000 claims, reducing the aggregate amounts asserted on those claims by approximately $352 million, which amounts are subject to further objection by the Debtors at a later date on any basis.

D.      The Bar Dates And Deadlines Respecting Administrative Claims

18.     Under the Modified Plan, certain Administrative Claims, such as payroll and trade claims not yet due under customary trade terms, will be assumed by DIP Holdco 3 or GM Components pursuant to the DIP Lender-GM Master Disposition Agreement and will be subsequently paid in the ordinary course of business. In addition, certain other Administrative Claims that are generally not related to the businesses being transferred to DIP Holdco 3 or GM Components will be retained by DPH Holdings Co. and will be subsequently paid in the ordinary

9

course of business.  No payments will be made on account of any Administrative Claim until the Claim is allowed.

          19.      Pursuant to the Article 10.2 of the Modified Plan and paragraph 38 of the Modification Procedures Order, this Court established July 15, 2009 (the "July 15 Bar Date") as the bar date for asserting an Administrative Claim for the period from the commencement of these cases through June 1, 2009.[4]  On or before June 20, 2009, in accordance with the Modification Procedures Order, the Debtors caused Kurtzman Carson Consultants LLC ("KCC") and Financial Balloting Group LLC ("FBG") or their agents to transmit with the resolicitation materials in connection with the Modified Plan a Notice Of Bar Date For Filing Proofs Of Administrative Expense describing the procedures for asserting an Administrative Claim.  In addition, Articles 1.5 and 10.5 of the Modified Plan establish 30 days after the Effective Date (as defined in the Modified Plan) (the "Post-Emergence Bar Date") as the bar date for asserting an Administrative Claims for the period after June 1, 2009 and the Effective Date, unless otherwise ordered by this Court.  Professional Claims are not subject to the Post-Emergence Bar Date and are instead subject to the provisions of Article 10.3 of the Modified Plan.

          20.      The Debtors published the notice of the July 15 Bar Date in the <u>Detroit News & Free Press</u>, <u>New York Times</u> (National Edition), <u>Wall Street Journal</u> (National, Europe and Asian Editions) and <u>USA Today</u> (Worldwide Edition) and electronically through posting on the Delphi Legal Information Website on or before June 22, 2009.

          21.      Article 2.1 of the Modified Plan provides that the Debtors or the Reorganized Debtors may settle an Administrative Claim without further approval of this Court.

---

[4]    On July 15, 2009, this Court entered the Stipulation and Agreed Order Modifying Paragraph 38 of Modification Procedures Order Establishing Administrative Expense Bar Date (Docket No. 18259) to provide that paragraph 38 of the Modification Procedures Order should be amended to require parties to submit an Administrative Expense Claim Form for Claims for the period from the commencement of these cases through May 31, 2009 rather than through June 1, 2009.

Unless the Debtors or the Reorganized Debtors object to an Administrative Claim within 180 days after the Post-Emergence Bar Date, such Administrative Claim will be deemed allowed in the amount requested. <u>See</u> Art. 10.2 and 10.5 Modified Plan. In addition, Articles 10.2 and 10.5 of the Modified Plan each provide that if the Debtors or the Reorganized Debtors object to an Administrative Claim, this Court will determine the allowed amount of such Administrative Claim.

22. The Modified Plan is silent, however, as to what procedures may be used to object to Administrative Claims, if necessary. To supplement the requirements of the Modified Plan regarding Administrative Claims, the Debtors believe it is important to establish proven procedures that would streamline the reconciliation, settlement, and adjudication of Administrative Claims.

<u>Relief Requested</u>

23. By this Motion, the Debtors request entry of an order under sections 105(a) and 503(b) of the Bankruptcy Code authorizing the Debtors to use the Claims Objection Procedures to address disputed Administrative Claims and providing that all Administrative Claims should be subject to the Claims Objection Procedures.

<u>Basis For Relief</u>

24. As of July 15, 2009, the Debtors had received 2,466 Administrative Claims asserting in the aggregate approximately $1 billion in liquidated amounts plus certain unliquidated amounts. By this Motion, the Debtors seek this Court's authority to use the Claims Objection Procedures to address disputed Administrative Claims. As noted above, the Debtors and their professionals have used these procedures to successfully reduce the majority of their prepetition claims in a timely and effective manner. The Debtors submit that it would be in the

best interests of the Debtors, their estates, and their creditors to use the same procedures with respect to disputed Administrative Claims.

## Applicable Authority

25.   Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  "'Section 105 is an omnibus provision phrased in general terms as to be the basis for a broad exercise of power in the administration of a bankruptcy case.'"  In re Elmendorf, 345 B.R. 786, 502 (Bankr. S.D.N.Y. 2006) (quoting In re Flores, 291 B.R. 44, 54 (Bankr. S.D.N.Y. 2003)).  Accordingly, section 105 of the Bankruptcy Code authorizes this Court to permit the Debtors to use the Claims Objection Procedures Order to address Administrative Claims.  Section 503(b) of the Bankruptcy Code provides that administrative expenses shall be allowed after notice and a hearing.  11 U.S.C. § 503(b).

26.   As noted above, the Modified Plan gives DPH Holdings Co. the responsibility to make payments to holders of valid Administrative Claims.  Nonetheless the Debtors need a mechanism to review, reconcile, and provide for the adjudication of disputes prior to the allowance of Administrative Claims following notice and a hearing as required under section 503(b) of the Bankruptcy Code.  The use of the Claims Objection Procedures does not conflict with or override provisions in the Modified Plan with respect to Administrative Claims, but merely provides a mechanism to implement them.  Although the Claims Objection Procedures were originally intended to be used to process prepetition claims, the Debtors submit that these procedures can be used just as effectively with the Administrative Claims to reconcile and, if necessary, litigate disputed Administrative Claims.  Accordingly, the Debtors respectfully request this Court to permit the Debtors to use the time-tested practices and procedures under the Claims Objection Procedures Order in their processing of Administrative Claims.

Notice

27.     Notice of this Motion has been provided in accordance with the Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And Administrative Procedures, entered March 20, 2006 (Docket No. 2883), and the Fourteenth Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And Administrative Procedures, entered May 1, 2009 (Docket No. 16589).  In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

WHEREFORE, the Debtors respectfully request that the Court enter an order (a) authorizing the Debtors to apply the Claims Objection Procedures set forth in the Claims Objection Procedures Orders to Administrative Claims, (b) providing that all Administrative Claims be subject to the Claims Objection Procedures, and (c) granting the Debtors such other and further relief as is just.

Dated:     New York, New York
           July 31, 2009

                     SKADDEN, ARPS, SLATE, MEAGHER
                      & FLOM LLP

                     By:    /s/ John Wm. Butler, Jr.
                          John Wm. Butler, Jr.
                          John K. Lyons
                          Ron E. Meisler
                     155 North Wacker Drive
                     Chicago, Illinois 60606
                     (312) 407-0700

                            - and -

                     By:    /s/ Kayalyn A. Marafioti
                          Kayalyn A. Marafioti
                     Four Times Square
                     New York, New York 10036
                     (212) 735-3000

                     Attorneys for Delphi Corporation, et al.,
                       Debtors and Debtors-in-Possession