**Hearing Date and Time:  August 20, 2009 at 10:00 a.m.**
**Objection Deadline:  August 13, 2009 at 4:00 p.m.**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler

   - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:   (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                :

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| DELPHI CORPORATION, et al., | : | Case No. 05-44481 (RDD) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

NOTICE OF MOTION UNDER 11 U.S.C. § 363 AND FED. R. BANKR. P. 2002 AND 6004 FOR
ORDER AUTHORIZING AND APPROVING ENTRY BY DELPHI AUTOMOTIVE
SYSTEMS TENNESSEE, INC. INTO LETTER AGREEMENT WITH ROBERT
BOSCH LLC FOR SALE OF INTEREST IN PBR KNOXVILLE LLC

("NOTICE OF PBR KNOXVILLE SALE MOTION")

PLEASE TAKE NOTICE that on July 31, 2009, Delphi Corporation ("Delphi")
and certain of its subsidiaries and affiliates, including Delphi Automotive Systems Tennessee,
Inc. ("DAST"), debtors and debtors-in-possession (collectively, the "Debtors"), filed its Motion
Under 11 U.S.C. § 363 And Fed. R. Bankr. P. 2002 And 6004 For Order Authorizing And
Approving Entry By Delphi Automotive Systems Tennessee, Inc. Into Letter Agreement With
Robert Bosch LLC For Sale Of Interest In PBR Knoxville LLC (the "Motion") under 11 U.S.C. §
363 and Fed. R. Bankr. P. 2002 and 6004 for an order authorizing and approving, but not
directing, the entry by DAST into that certain Letter Agreement dated July 30, 2009 (the
"Agreement") with Robert Bosch LLC for the sale of DAST's entire forty-nine percent (49%)
membership interest in PBR Knoxville LLC, an existing joint venture between DAST and PBR
Tennessee Inc.

PLEASE TAKE FURTHER NOTICE that a hearing to consider the Motion will
be held on **August 20, 2009 at 10:00 a.m. (prevailing Eastern Time)** (the "Hearing") before the
Honorable Robert D. Drain, United States Bankruptcy Court for the Southern District of New
York (the "Bankruptcy Court"), One Bowling Green, Room 610, New York, New York 10004.

PLEASE TAKE FURTHER NOTICE that objections, if any, to the approval of
the Motion must (a) be in writing, (b) conform to the Federal Rules of Bankruptcy Procedure, the
Local Bankruptcy Rules for the Southern District of New York, and the Supplemental Order
Under 11 U.S.C. §§ 102(1) and 105 and Fed. R. Bankr. P. 2002(m), 9006, 9007, and 9014
Establishing (I) Omnibus Hearing Dates, (II) Certain Notice, Case Management, and
Administrative Procedures, entered March 20, 2006 (Docket No. 2883) (the "Supplemental Case
Management Order") and the Fourteenth Supplemental Order Under 11 U.S.C. §§ 102(1) And
3105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing

2

Dates And Certain Notice, Case Management, And Administrative Procedures, entered May 1,

2009 (Docket No. 16589) (together with the Supplemental Case Management Order, the "Case

Management Orders"), (c) be filed with the Bankruptcy Court in accordance with General Order

M-242 (as amended) – registered users of the Bankruptcy Court's case filing system must file

electronically, and all other parties-in-interest must file on a 3.5 inch disk (preferably in Portable

Document Format (PDF), WordPerfect, or any other Windows-based word processing format),

(d) be submitted in hard-copy form directly to the chambers of the Honorable Robert D. Drain,

United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of

New York, One Bowling Green, Room 610, New York, New York 10004, and (e) be served

upon (i) Delphi Corporation, 5725 Delphi Drive, Troy, Michigan 48098 (Att'n: General Counsel),

(ii) counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, 155 North Wacker

Drive, Chicago, Illinois 60606 (Att'n: Ron E. Meisler and Joseph N. Wharton), (iii) counsel for

the agent under the postpetition credit facility, Davis Polk & Wardwell, 450 Lexington Avenue,

New York, New York 10017 (Att'n: Donald Bernstein and Brian Resnick), (iv) counsel for the

official committee of unsecured creditors, Latham & Watkins LLP, 885 Third Avenue, New

York, New York 10022 (Att'n: Robert J. Rosenberg and Mark A. Broude), (v) counsel for the

certain of the DIP lenders, Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, New

York 10019-6099 (Att'n:  Marc Abrams and Michael J. Kelly) and Dechert LLP, 1095 Avenue of

the Americas, New York, New York 10036-6797 (Att'n:  Glenn E. Siegel and James O. Moore),

(vi) counsel for Robert Bosch LLC, Warner, Norcross & Judd LLP, 900 Fifth Third Center, 111

Lyon Street NW, Grand Rapids, Michigan 49503-2487 (Att'n:  Gordon J. Toering), (vii) counsel

for PBR Tennessee Inc., Foley & Lardner LLP, One Detroit Center, 500 Woodward Ave., Suite

2700, Detroit, Michigan 48226-3489 (Att'n:  Judy A. O'Neill) and Foley & Lardner LLP, 100

North Tampa Street, Suite 2700, Tampa, Florida 33602 (Att'n:  Jennifer Hayes), and (viii) the

Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street,

Suite 2100, New York, New York 10004 (Att'n: Brian Masumoto), in each case so as to be

**received** no later than **4:00 p.m.** (prevailing Eastern time) on **August 13, 2009** (the "Objection

Deadline").

PLEASE TAKE FURTHER NOTICE that only those objections made as set forth

herein will be considered by the Bankruptcy Court at the Hearing.  If no objections to the Motion

are timely filed and served in accordance with the procedures set forth herein, the Bankruptcy

Court may enter an order granting the Motion without further notice.

Dated:  New York, New York
      July 31, 2009

SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP

By: /s/ John Wm. Butler, Jr.
    John Wm. Butler, Jr.
    John K. Lyons
    Ron E. Meisler
155 North Wacker Drive
Chicago, Illinois  60606
(312) 407-0700

- and -

By: /s/ Kayalyn A. Marafioti
    Kayalyn A. Marafioti
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

**Hearing Date and Time:  August 20, 2009 at 10:00 a.m.**
**Objection Deadline:  August 13, 2009 at 4:00 p.m.**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:   (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                 :

|  |  |  |
|---|---|---|
| In re | : | Chapter 11 |
|  | : |  |
| DELPHI CORPORATION, et al., | : | Case No. 05-44481 (RDD) |
|  | : |  |
| Debtors. | : | (Jointly Administered) |
|  | : |  |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MOTION UNDER 11 U.S.C. § 363 AND FED. R. BANKR. P. 2002 AND 6004 FOR
ORDER AUTHORIZING AND APPROVING ENTRY BY DELPHI AUTOMOTIVE
SYSTEMS TENNESSEE, INC. INTO LETTER AGREEMENT WITH ROBERT
BOSCH LLC FOR SALE OF INTEREST IN PBR KNOXVILLE LLC

("PBR KNOXVILLE SALE MOTION")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, including Delphi Automotive Systems Tennessee, Inc. ("DAST"), debtors and debtors-in-possession (collectively, the "Debtors"), hereby submit this motion (the "Motion") under 11 U.S.C. § 363 and Fed. R. Bankr. P. 2002 and 6004 for an order authorizing and approving, but not directing, the entry by DAST into that certain Letter Agreement dated July 30, 2009 (the "Agreement") with Robert Bosch LLC ("Bosch") for the sale of DAST's entire forty-nine percent (49%) membership interest in PBR Knoxville LLC ("PBR Knoxville"), an existing joint venture between DAST and PBR Tennessee Inc. ("PBR Tennessee").  In support of the Motion, the Debtors respectfully represent as follows:

Background

A.    The Chapter 11 Filings

1.    On October 8 and 14, 2005, the Debtors filed voluntary petitions in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as then amended (the "Bankruptcy Code").  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession under Bankruptcy Code sections 1107(a) and 1108.  This Court has ordered joint administration of these cases.

2.    No trustee or examiner has been appointed in these cases.  On October 17, 2005, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Creditors' Committee").  On April 28, 2006, the U.S. Trustee appointed an official committee of equity holders, which was disbanded on April 24, 2009.  On February 26, 2009, the U.S. Trustee appointed an official committee of retired employees to represent certain of the Debtors' current active salaried employees, retirees, and their spouses for certain limited purposes.

2

3.    This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

4.    The statutory predicates for the relief requested herein are section 363 of the Bankruptcy Code and rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

B.    Plan Confirmation And Postconfirmation Matters

5.    On December 10, 2007, the Debtors filed their first amended joint plan of reorganization (Docket No. 11386) (the "Plan") and related disclosure statement (Docket No. 11388).  The Court entered an order confirming the Plan (as modified) (Docket No. 12359) (the "Confirmation Order") on January 25, 2009, and the order became final on February 4, 2008.

6.    The Plan, as confirmed by this Court (the "Confirmed Plan"), was based upon a series of global settlements and compromises that involved nearly every major constituency in the Debtors' reorganization cases, including Delphi's labor unions and General Motors Company (formerly known as General Motors Corporation) ("GM").  The effectiveness of certain of these agreements, including the Debtors' two comprehensive agreements with GM, was conditioned on consummation of the Confirmed Plan.  Although the Debtors on April 4, 2008 had satisfied the conditions required to substantially consummate the Confirmed Plan, including obtaining $6.1 billion of exit financing, Delphi's Plan Investors (as defined in the Confirmed Plan) refused to participate in the closing and refused to fund their Investment Agreement (as defined in the Confirmed Plan) with Delphi.  On May 16, 2008, Delphi filed complaints for damages and specific performance against the Plan Investors and related parties who refused to honor their equity financing commitments or participate in the closing that would

have led to Delphi's successful emergence from chapter 11 in April 2008.  These suits remain pending.

7.      After the Plan Investors refused to fund their obligations under the Investment Agreement, as the Debtors continued working with their stakeholders to evaluate their options to emerge from chapter 11, the Debtors sought approval of two comprehensive agreements with GM:  an amended and restated "Global Settlement Agreement" (the "Amended GSA") and an amended and restated "Master Restructuring Agreement" (the "Amended MRA"). On September 26, 2008, this Court entered an order authorizing the Debtors' implementation of the Amended GSA and the Amended MRA, which became effective on September 29, 2008.

8.      Through the Amended GSA and Amended MRA, the Debtors addressed, at least in part, two goals of their transformation plan:  (i) obtaining financial support from GM for certain of Delphi's legacy and labor costs and GM's business commitments to Delphi going forward and (ii) working to solve Delphi's pension funding situation.  Under the Amended GSA and Amended MRA, GM agreed to contribute substantial additional value to the Debtors and eliminate significant elements of conditionality to the performance of GM's obligations.  Delphi estimated the value of the net consideration received under the Amended GSA and Amended MRA to be approximately $10.6 billion (increased from approximately $6.0 billion under the original GSA and MRA).

9.      During the fall of 2008 the Debtors were able to formulate certain modifications to the Confirmed Plan.  Accordingly, on October 3, 2008, Delphi filed a motion under 11 U.S.C. § 1127 for an order approving (i) certain modifications to the Confirmed Plan and related disclosure statement and (ii) related procedures for re-soliciting votes on the Confirmed Plan, as modified (Docket No. 14310) (the "Plan Modification Motion").

4

Subsequently, however, substantial uncertainty and significant decline in capacity in global debt and equity markets, the global economic downturn generally, and an unprecedented decline in global automotive production volumes adversely impacted Delphi's ability to develop a revised recapitalization plan and successfully consummate a confirmed plan of reorganization. Moreover, as a result of market turbulence, the Debtors were unable to extend the maturity date of their DIP credit facility (the "DIP Facility") on terms reasonably acceptable to the Debtors and their other stakeholders. Accordingly, with the support of the administrative agent (the "DIP Agent") and the requisite lenders under the DIP Facility, the Debtors entered into an accommodation agreement (as subsequently amended) which allows the Debtors, among other things, to continue using certain of the proceeds of the DIP Facility.

10.     In light of these factors, the Debtors adjourned the hearing on the Plan Modification Motion several times. On June 1, 2009 the Debtors filed a supplement to the Plan Modification Motion (the "Motion Supplement"), which sought approval of (i) certain modifications to the Confirmed Plan (the "Modified Plan"), (ii) supplemental disclosure, and (iii) procedures for re-soliciting votes on the Modified Plan. In addition, to further support the Debtors' liquidity, GM agreed to make certain advances and to accelerate payment of certain payables to the Debtors, including entry into an amended and restated agreement as of June 1, 2009 to provide the Debtors up to $250 million of additional pre-emergence liquidity to support Delphi's transformation plan and its reorganization plan.[1] The Motion Supplement was approved with modifications by order entered June 16, 2009 (the "Modification Procedures Order") and

---

[1]     GM sought chapter 11 protection on June 1, 2009. Concurrently with its filing for chapter 11 protection, GM filed a motion seeking Bankruptcy Court approval to continue to provide financing to certain of its suppliers, including by lending funds directly to suppliers such as Delphi in the manner as set forth in the GM Arrangement. The Bankruptcy Court granted GM both interim and final approval of this motion and expressly provided that without further Court order, GM could continue payments and accommodations to financially or operationally distressed suppliers whether relating to the period prior to or following the commencement of GM's cases.

was later supplemented and amended by orders entered June 29, 2009 (Docket No. 17376), July 17, 2009 (Docket No. 18352), and July 21, 2009 (Docket No. 18551).

11.    Also on June 1, 2009, while facing the most difficult economic period in decades with the most precipitous drop in U.S. vehicle sale volumes in half a century, Delphi reached an agreement to effect its emergence from chapter 11 through a transaction with Parnassus Holdings II, LLC ("Parnassus"), an affiliate of Platinum Equity, and with the support of GM Components Holdings LLC ("GM Components"), an affiliate of GM.  In the exercise of the Debtors' fiduciary responsibilities to maximize the value of their estates for the benefit of all of their stakeholders, the Debtors executed an agreement (the "Platinum-GM Master Disposition Agreement") to reflect the foregoing transactions through a plan of reorganization.  The agreement and the changes to the Confirmed Plan were filed as part of the Motion Supplement, on June 1, 2009.

12.    On June 16, 2009, the Bankruptcy Court entered the Modification Procedures Order which, among other things, authorized the Debtors to commence solicitation of votes on the Modified Plan and set forth a comprehensive set of supplemental procedures for evaluating non-solicited alternative transactions to the Platinum-GM Master Disposition Agreement (as supplemented and amended, the "Supplemental Procedures").  The Supplemental Procedures provided for, among other things, an auction open to Qualified Bidders (as defined therein) and DIP Lenders making a Pure Credit Bid (as defined therein).

13.    Pursuant to the Supplemental Procedures, the Debtors held an auction on July 26 and 27, 2009 at which the DIP Agent submitted a Pure Credit Bid on behalf of the DIP lenders that was supported by the requisite majority of the two most senior tranches of the DIP Facility.  The Pure Credit Bid involved a credit bid of 100% of the principal and interest due and

owing in respect of the DIP Facility under the DIP Credit Agreement (after giving effect to the

application of any cash collateral to the DIP Facility) and was based upon an alternative Master

Disposition Agreement (the "DIP Lender-GM Master Disposition Agreement") pursuant to

which DIP Holdco 3, LLC ("DIP Holdco 3"), an entity controlled by the DIP lenders, would

purchase the assets and assume the liabilities that Parnassus would have purchased and assumed

under the Platinum-GM Master Disposition Agreement.  At the conclusion of the auction, after

careful consideration, Delphi's board of directors determined that the Pure Credit Bid was

superior to the Platinum-GM Master Disposition Agreement, and approved it, subject to the

parties' reaching a final agreement as to the terms and conditions of the Modification Approval

Order and other items.  Subsequently, the Debtors made certain further modifications to the

Modified Plan to address the results of the auction.

14.    After holding a final plan modification hearing on July 29 and 30, 2009,

the Court entered an order approving the Modified Plan (Docket No. 18707) on July 30, 2009.

Upon the effectiveness of the Modified Plan, Delphi will contemporaneously effectuate

transactions, including the DIP Lender-GM Master Disposition Agreement, through which DIP

Holdco 3 will operate Delphi's U.S. and non-U.S. businesses going forward with emergence

capital and capital commitments but without the labor-related legacy costs associated with the

North American sites which, together with Delphi's global steering business, are being acquired

by GM Components.  A new company, DPH Holdings Co., will emerge as a reorganized entity

that retains certain other residual non-core and non-strategic assets and liabilities that are

expected to be divested over time.

15.    Consummation of these transactions through the Modified Plan, which

embodies concessions made by parties-in-interest to resolve these chapter 11 cases, will provide

7

for the satisfaction of all of the Debtors' administrative claims, secured claims, and priority

claims and a potential distribution to holders of general unsecured claims.  Moreover, Delphi's

emerging businesses, through GM and DIP Holdco 3, will continue to develop and deliver high-

quality products to their customers globally.

C.    Background Regarding PBR Knoxville LLC

16.    On September 26, 1996, PBR Automotive Knoxville Inc. and PBR

Automotive Tennessee Inc. formed a joint venture by entering into a Limited Liability Company

Agreement (the "LLC Agreement") to govern their management and ownership of the joint

venture, which at the time was called PBR Automotive USA L.L.C.[2]  The joint venture was

primarily created for the purpose of manufacturing and selling automotive brake components,

particularly those suitable for certain models of GM trucks.  PBR Automotive Knoxville Inc.

owned 51% of the joint venture and PBR Automotive Tennessee Inc. owned 49% of the joint

venture.  Since then, PBR Automotive Knoxville Inc. changed its name to PBR Tennessee Inc.

and currently is the entity holding the 51% membership interest in the joint venture.  On or about

May 31, 1999, DAST acquired PBR Automotive Tennessee Inc.'s 49% interest and currently

DAST still owns that 49% membership interest (the "Membership Interest") in the joint venture.

The LLC Agreement allows each member of the joint venture (a "Member") to participate in

managing the company, and the joint venture is primarily financed through member

contributions, cash flow from operations, and a recent loan (the "Joint Venture Loan") provided

by Robert Bosch Finance LLC, an affiliate of Bosch.  The period for repayment of amounts

outstanding under the Joint Venture Loan has been extended to August 31, 2009 as a result of the

---

[2]    PBR Tennessee is an indirect subsidiary of Pacifica Group Limited ("Pacifica").  The indirect majority
owner of Pacifica is Robert Bosch GmbH, which is the parent company of Bosch.  As a result, PBR
Tennessee is affiliated with Bosch.

Agreement.  The LLC Agreement contains a prohibition on the transfer of membership interests.

Accordingly, DAST and PBR Tennessee are generally restricted from transferring their

respective membership interests without the other members' consent.

Relief Requested

17.    By this Motion, the Debtors seek entry of an order under section 363 of

the Bankruptcy Code and Bankruptcy Rules 2002 and 6004 (a) authorizing and approving, but

not directing, DAST's entry into and performance under the Agreement, a copy of which is

attached hereto as Exhibit A, through which DAST would sell its Membership Interest to Bosch

free and clear of any and all claims, liens, mortgages, security interests, encumbrances, charges,

or any other restrictions other than any restrictions contained in the LLC Agreement.

Basis For Relief

18.    DAST has determined in its business judgment that it is in its best interests

to sell its ownership interest in PBR Knoxville for $1.75 million.[3]  The continued ownership of

the Membership Interest would potentially require DAST to make further capital investments in

PBR Knoxville under the terms of the LLC Agreement, and the Debtors decided in connection

with their Transformation Plan that the manufacture of brake parts such as those produced by the

joint venture are no longer a core business.

19.    Bosch is an affiliate of PBR Tennessee, DAST's joint venture partner and,

as set forth above, an affiliate of Bosch currently provides financing to the joint venture.  Bosch

is a long-term leading Tier 1 supplier of the type of brake parts produced by PBR Knoxville and

---

[3]    Notwithstanding the fact that the $1.75 million purchase price is well within the limit for sales of assets
pursuant to this Court's Order Under 11 U.S.C. § 363 Approving Procedures To Sell Certain De Minimis
Assets Free And Clear Of Liens, Claims, And Encumbrances And To Pay Market Rate Broker
Commissions In Connection With Such Sales Without Further Court Approval (Docket No. 766) (the "De
Minimis Asset Sale Order"), the Debtors have determined to conduct the sale of the Membership Interests
pursuant to separate motion instead of the De Minimis Asset Sale Order out of an abundance of caution to
ensure more complete disclosure of the relationship of the parties in connection with the sale.

9

previously purchased a production facility from the Debtors to produce similar parts.[4]

Worldwide, Bosch is one of the largest independent auto parts suppliers, and has a strong

presence in the production and sale of brake parts.  DAST believes that as a result Bosch is

uniquely suited to provide value, in readily available cash, for DAST's Membership Interest.

DAST believes that such a sale is particularly advantageous in light of the potential restrictions

on transfer of the Membership Interest, the August 31, 2009 expiration of the period for

repayment of amounts outstanding under the Joint Venture Loan, and the fact that there is no

ready market for the Membership Interests.  Accordingly, DAST believes that consummating the

sale provided for by the Agreement is in the best interests of its estate, its creditors, and its other

stakeholders.[5]

D.      Material Terms Of The Agreement[6]

            20.      The significant terms of the Agreement are as follows:

            (a)      Purchase Price:  $1.75 million in cash to be paid by Bosch upon
the closing of the sale under the Agreement by wire transfer of immediately available funds.

            (b)      Asset Sold:  DAST's entire 49% Membership Interest in PBR
Knoxville, free and clear of any and all claims, liens, mortgages, security interests,
encumbrances, charges, or any other restrictions other than any restrictions contained in the LLC
Agreement.

---

[4]      See Order Under 11 U.S.C. §§ 363 And 365 And Fed. R. Bankr. P. 2002, 6004, 6006, And 9014
         Authorizing And Approving (I) Sale Of Delphi Automotive Systems LLC's Mexico Brake Plant Assets
         Free And Clear Of Liens, Claims, And Encumbrances, (II) Assumption And Assignment Of Certain
         Executory Contracts And Unexpired Leases, And (III) Assumption Of Certain Liabilities (the "Mexico
         Brake Plant Asset Sale Approval Order"), entered July 19, 2007 (Docket No. 8705).

[5]      However, to the extent that before the objection deadline with respect to this Motion a third party bidder
         submits a more valuable offer (in DAST's reasonable discretion) for the Membership Interest in PBR
         Knoxville, DAST would consider such an offer in the exercise of its fiduciary duty and reserves the right to
         take appropriate actions under the circumstances to maximize value for its estate, its creditors, and its other
         stakeholders.

[6]      In the event of any discrepancy between the Agreement and this summary, the provisions of the Agreement
         control.

(c)    Joint Venture Loan Repayment:  The period for repayment of amounts owing under the Joint Venture Loan would continue to be extended until the earlier of the closing of the sale under the Agreement or August 31, 2009.

(d)    Licenses And Intellectual Property:  The Debtors have provided and continue to provide certain intellectual property to PBR Knoxville, some of which intellectual property is governed by license agreements.  PBR Knoxville would continue to be entitled to use any intellectual property previously provided on either a royalty-free basis or in continued compliance with the terms of any applicable license agreement.

(e)    Resolution Of Proofs Of Claim:  At the time of the Agreement, PBR Knoxville, a related PBR entity, and PBR Tennessee were all engaged with the Debtors in adjudicating various proofs of claim filed by those entities, and stipulations resolving those claims are attached as exhibits to the Agreement.  These stipulations are not the subject of this Motion, but would be finalized pursuant to this Court's Amended And Restated Order Under 11 U.S.C. §§ 363, 502, And 503 And Fed. R. Bankr. P. 9019(b) Authorizing Debtors To Compromise Or Settle Certain Classes Of Controversy And Allow Claims Without Further Court Approval (Docket No. 8401), entered June 26, 2007.

(f)    Termination.  The Agreement provides that the closing of the sale provided therein must occur before August 31, 2009, provided that DAST will use commercially reasonable efforts to consummate the sale by August 20, 2009, and Bosch may extend the closing deadline under certain circumstances up to September 15, 2009.

21.    As set forth above, DAST has sound business reasons for entering into the Agreement and consummating the sale of its Membership Interest to Bosch.  The sale would result in cash proceeds of $1.75 million and will prevent DAST from expending further investment in PBR Knoxville, which operates a business line that is no longer a core business line for the Debtors.  It might be difficult to sell the Membership Interest to an unaffiliated party.  Bosch is uniquely suited to provide value for the Membership Interest because of its expertise in the business conducted by the joint venture and Bosch's relationship with the other joint venture member, PBR Tennessee.  Accordingly, in its business judgment, DAST has determined that it is in the best interest of its estate, its creditors, and its other stakeholders to enter into and perform under the Agreement.

11

<u>Applicable Authority</u>

E.      <u>Approval Of The Agreement</u>

22.     Bankruptcy Code section 363(b)(1) permits a debtor-in-possession to use property of the estate "other than in the ordinary course of business" after notice and a hearing. 11 U.S.C. § 363(b)(1).  Uses of estate property outside the ordinary course of business may be authorized if the debtor demonstrates a sound business justification for it.  <u>See</u> <u>Comm. Of Equity Sec. Holders v. Lionel Corp.</u> (In re Lionel Corp.), 722 F.2d 1063, 1071 (2d Cir. 1983) (business judgment rule requires finding that good business reason exists to grant debtor's application under section 363(b)); <u>see also</u> <u>In re Delaware & Hudson Ry. Co.</u>, 124 B.R. 169, 178-79 (D. Del. 1991).

23.     The Second Circuit has held that, although the bankruptcy court sits as an "overseer of the wisdom with which the bankruptcy estate's property is being managed by the . . . debtor-in-possession," it must nevertheless resist becoming "arbiter of disputes between creditors and the estate."  <u>Orion Pictures Corp. v. Showtime Network, Inc.</u> (In re Orion Pictures Corp.), 4 F.3d 1095, 1098-99 (2d Cir. 1993).  The Court's consideration of a debtor's section 363(b) motion is a summary proceeding, intended merely as a means to "efficiently review the . . . debtor's decision[s] . . . in the course of the swift administration of the bankruptcy estate.  It is not the time or place for prolonged discovery or a lengthy trial with disputed issues."  <u>Id.</u> at 1098-99.

24.     Once a debtor articulates a valid business justification, a presumption arises that "in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company."  <u>Official Comm. of Subordinated Bondholders v. Integrated Resources, Inc.</u> (In re Integrated Resources, Inc.), 147 B.R. 650, 656 (S.D.N.Y. 1992).  Thereafter,"[p]arties opposing

the proposed exercise of a debtor's business judgment have the burden of rebutting the

presumption of validity." Id.   To satisfy its burden, it is not enough for an objector simply to

raise and argue an objection. Rather, an objector "is required to produce some evidence

respecting its objections." Lionel, 722 F.2d at 1071. As a rule, the debtor's business judgment

"should be approved by the court unless it is shown to be 'so manifestly unreasonable that it

could not be based upon sound business judgment, but only on bad faith, or whim or caprice.'" In

re Aerovox, Inc., 269 B.R. 74, 81 (Bankr. D. Del. 2001) (quoting In re Interco, Inc., 128 B.R.

229, 234 (Bankr. E.D. Mo. 1991)).

       25.    DAST submits that the decision to enter into the Agreement and to

complete this proposed transaction represents a proper exercise of DAST's business judgment.

DAST also submits that the terms and conditions of the Agreement are fair and reasonable and

that the company negotiated the terms with Bosch in good faith and at arm's length.  Moreover,

the structure of the transaction will increase DAST's liquidity while permitting DAST to avoid

further capital contributions to the joint venture.  Because of these contemplated benefits, this

Court should approve the relief requested herein.

F.     Transfer Of Membership Interest Free And Clear Of Liens

       26.    Under section 363(f) of the Bankruptcy Code, a debtor-in-possession may

transfer property free and clear of any lien, claim, or interest in such property if, among other

things, at least one of the five factors under section 363(f)(5) is satisfied.  See 11 U.S.C. § 363(f).

Section 363(f) enables DAST to transfer the membership interest free and clear of liens.  DAST

believes that it satisfies at least one of the five conditions of 11 U.S.C. § 363(f) for any lien in its

Membership Interest, and DAST submits that any such lien would be adequately protected by

attachment to the proceeds of the sale, subject to any claims and defenses DAST may possess

with respect thereto.  Accordingly, DAST requests that its Membership Interest be transferred to

Bosch free and clear of any and all claims, liens, mortgages, security interests, encumbrances,

charges, or any other restrictions other than any restrictions contained in the LLC Agreement.

G.    Bosch Is A Good Faith Purchaser Under Section 363(m) Of The Bankruptcy Code

27.    Section 363(m) of the Bankruptcy Code provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).  Although the Bankruptcy Code does not define "good faith," the Second

Circuit Court of Appeals in In re Gucci has held that the:

> good faith of a purchaser is shown by the integrity of his conduct during the course of the sale proceedings; where there is a lack of such integrity, a good faith finding may not be made.  A purchaser's good faith is lost by "fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders."

Licensing by Paolo, Inc. v. Sinatra (In re Gucci), 126 F.3d 380, 390 (2d. Cir. 1997) (quoting In re

Rock Indus. Mach. Corp., 572 F.2d 1195, 1198 (7th Cir. 1978) (interpreting former Bankruptcy

Rule 805, the precursor of section 363(m))); see also Evergreen Int'l Airlines Inc. v. Pan Am

Corp. (In re Pan Am Corp.), No. 91 Civ. 8319, 1992 WL 154200, at *4 (S.D.N.Y. June 18, 1992);

In re Sasson Jeans, Inc., 90 B.R. 608, 610 (S.D.N.Y. 1988).

28.    DAST submits, and, if necessary, will present evidence at the hearing on

this Motion, that the Agreement reflects a intensely negotiated, arm's length transaction.

Throughout the negotiations, Bosch has at all times acted in good faith.  As a result, in exchange

for the Membership Interests, DAST will receive cash proceeds of $1.75 million, which

represents, in DAST's business judgment, the best possible offer for the Membership Interests.

As a result of the foregoing, DAST requests that this Court make a finding that the terms and

14

conditions of the Agreement are fair and reasonable and that Bosch has purchased the

Membership Interests in good faith within the meaning of section 363(m) of the Bankruptcy

Code.

<u>Notice</u>

29.    Notice of this Motion has been provided in accordance with the

Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006,

9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management,

And Administrative Procedures, entered March 20, 2006 (Docket No. 2883), and the Fourteenth

Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006,

9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management,

And Administrative Procedures, entered May 1, 2009 (Docket No. 16589).  In light of the nature

of the relief requested, the Debtors submit that no other or further notice is necessary.

WHEREFORE, the Debtors respectfully request that this Court enter an order (a) authorizing and approving, but not directing, DAST's entry into the Agreement and its sale of its Membership Interest consistent therewith and (b) granting the Debtors such other and further relief as is just.

Dated: New York, New York
July 31, 2009

SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP

By: /s/ John Wm. Butler, Jr.
    John Wm. Butler, Jr.
    John K. Lyons
    Ron E. Meisler
155 North Wacker Drive
Chicago, Illinois  60606
(312) 407-0700

- and -

By: /s/ Kayalyn A. Marafioti
    Kayalyn A. Marafioti
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

16

Exhibit A
Agreement

July 30, 2009

<u>PERSONAL & CONFIDENTIAL</u>

Delphi Automotive Systems Tennessee, Inc.
c/o Delphi Automotive Systems LLC
5725 Delphi Drive
Troy, Michigan 48098-2815
Attn: Fred Bellar

Dear Mr. Bellar:

This Letter Agreement (sometimes "Agreement") sets forth the terms and conditions under which Robert Bosch LLC ("**Purchaser**") shall acquire the entire (i.e., forty nine percent (49%)) membership interest (the "**Interest**") in PBR Knoxville LLC (the "**Company**") held by Delphi Automotive Systems Tennessee, Inc. ("**Seller**"), a wholly owned subsidiary of Delphi Automotive Systems LLC.

1.     <u>Form of Transaction</u>.  At Closing, as defined below, Seller shall transfer the Interest to Purchaser free and clear of all claims, liens, mortgages, security interests, encumbrances, charges, or any other restrictions other than any restrictions contained in the Operating Agreement (as defined below).

2.     <u>Purchase Price; Payment</u>.  At Closing, Purchaser shall pay to Seller, by wire transfer of immediately available funds, the sum of One Million Seven Hundred Fifty Thousand Dollars ($1,750,000.00) in exchange for the Interest.

3.     <u>Closing</u>.  Subject to the satisfaction or waiver of the conditions set forth below, the Closing of the purchase of the Interest (the "**Closing**") shall occur on or before August 31, 2009.  Notwithstanding the foregoing, Purchaser and Seller will each use commercially reasonable efforts to cause the Closing to occur on August 20, 2009.  If the Closing does not occur on or before August 31, 2009 due to the failure to satisfy one or more conditions, the Closing may occur, at Purchaser's discretion, as soon as all conditions have been satisfied but no later than fifteen days thereafter.

4.     <u>Conditions</u>.  The transfer of and payment for the Interest contemplated by this Agreement is subject to completion of the following conditions at or prior to Closing.

(a)     a due diligence review of Seller's ownership rights to the Interest

Delphi Corporation
Mr. Bellar
July 30, 2009
Page 2

reflecting that the Interest can be transferred to Purchaser free and clear of all claims, liens, mortgages, security interests, encumbrances, charges, or other restrictions other than any restrictions contained in the Operating Agreement.

(b)     the execution of the certain Stipulations and Agreed Orders by the intended signatories as set forth in those Stipulations and Agreed Orders in substantially the form as set forth in Exhibit A, the filing of notices of presentment of those Stipulations and Agreed Orders with the Bankruptcy Court, and service of those notices of presentment on parties-in-interest who are affected by those Stipulations and Agreed Orders. Such Stipulations and Agreed Orders shall be filed with the Bankruptcy Court within three business days of execution of this Letter Agreement or as soon thereafter as the Stipulations and Agreed Orders have been executed.

(c)     the amendment of the Operating Agreement, as set forth in Item 10 below, including the ratification, adoption and approval of the amendment by PBR Tennessee, Inc.("PBRT"), to allow for the transfer of the Interest as contemplated by this Agreement.

(d)     a confirmation, in the form of a legal opinion from counsel for Purchaser, that all obligations of the Company with respect to its secured loan from Robert Bosch Finance LLC (the "Company Loan") will remain in place and are not affected.

(e)     approval of the transactions contemplated by this Letter Agreement by the Bankruptcy Court pursuant to Section 363 of the Bankruptcy Code (collectively "Sale Approval").

The conditions set forth in Sections 4(a) and 4(d) above may be waived in a signed writing by Purchaser in its sole discretion. The conditions set forth in Sections 4(b) and 4(c) may be waived only in a signed writing by both Purchaser and Seller, in each case, in their respective sole discretion.

5.     Representations and Warranties.

(a)     Seller represents and warrants that: (i) Seller is the record and beneficial owner and holder of the entire Interest, free and clear of any charge, claim, condition, equitable interest, mortgage, lien, option, pledge, security interest, right of first refusal or restriction of any kind, including any restriction on use, voting, transfer, receipt of income or exercise of any other attribute of ownership other than restrictions set forth in the Operating Agreement; (ii) subject to receipt of the Sale Approval, Seller has full capacity, power and authority to enter into and perform this Letter Agreement and to carry out the transactions contemplated by this Letter Agreement or arrange to carry them out; and (iii) subject to receipt of the Sale Approval, this Letter Agreement is binding upon Seller and is enforceable against Seller in accordance with its

Delphi Corporation
Mr. Bellar
July 30, 2009
Page 3

terms.

(b)    Purchaser represents and warrants that: (i) Purchaser has full power and authority to enter into this Letter Agreement and to carry out the transactions contemplated by this Letter Agreement; and (ii) this Letter Agreement is binding upon Purchaser and is enforceable against Purchaser in accordance with its terms.

6.    <u>Loan Repayment</u>.  Purchaser will cause Robert Bosch Finance LLC to continue to extend the period for repayment of the principal and interest and all other amounts owing under the Company Loan until the earlier of Closing or August 31, 2009.

7.    <u>Release</u>.

(a)    Effective upon the Closing except as set forth in Section 7(d) below, the Delphi Affiliated Parties (as defined below) shall completely and unconditionally release the Purchaser Affiliated Parties (as defined below) and all of the Purchaser Affiliated Parties' respective directors, managers, officers, employees, attorneys, agents and representatives from any and all claims, liabilities, actions and causes of action, known or unknown, arising directly or indirectly out of or related to the Company or its operations prior to the Closing.

(b)    Effective upon the Closing, except as set forth below, the Purchaser Affiliated Parties shall completely and unconditionally release the Delphi Affiliated Parties and all of the Delphi Affiliated Parties' respective directors, managers, officers, employees, attorneys, agents and representatives from any and all claims, liabilities, actions and causes of action, known or unknown, arising directly or indirectly out of or related to the Company or its operations prior to the Closing. Notwithstanding the foregoing, the Purchaser Affiliated Parties are not releasing or waiving any proofs of claim that they have filed in the Chapter 11 bankruptcies of the Delphi Affiliated Parties other than as set forth in the Stipulations and Agreed Orders referenced in Section 4(b) above.

(c)    As used in this Section 7: (i) the term "Delphi Affiliated Parties" shall mean, jointly and severally, Seller, Delphi Corporation and its Affiliates that are in Chapter 11 bankruptcy; (ii) the term "Purchaser Affiliated Parties" shall mean, jointly and severally, the Company, Pacific Group Ltd. and its Affiliates, and Purchaser and its Affiliates; and (iii) the term "Affiliates" shall mean any entity directly or indirectly controlling, controlled by, or under common control with, that entity and any officer, director or controlling person of that entity.

(d)    Notwithstanding anything to the contrary contained herein, the foregoing releases shall not be deemed to constitute a waiver by Seller or any of its Affiliates of the right to collect or to release Company or any other party from its obligation to pay royalties or other amounts due under any license agreements between Company and Seller or any of Seller's

Delphi Corporation
Mr. Bellar
July 30, 2009
Page 4

Affiliates, including, without limitation, that certain License Agreement for System 4 Calipers dated November 14, 2006 and that certain Strategic Development Agreement regarding System 2 and System 3 rear and front calipers (collectively, the **"License Agreements"**), and all such License Agreements shall remain in full force and effect until expiration or termination in accordance with their terms. It is understood by the parties that the current rights of Delphi and the Company under the Strategic Development Agreement allow for the use of Delphi's System 3 front and rear caliper designs only for the balance of the program life of the GMT 900 program, including Original Equipment Service (OES) parts after the OE production program life has ended in order to fulfill all obligations to the customer. Royalty payments under the Strategic Development Agreement will continue to be calculated based on past practice for sales of product in that period. Company may freely assign the Strategic Development Agreement and the rights granted pursuant to the Strategic Development Agreement without the consent of Delphi Technologies, Inc., Delphi Corporation or any Delphi Affiliated Party in connection with the disposition of all or substantially all of the business to which the rights pertain, or in connection with the transfer of the operations of the Company to one or more of its Affiliates, and at any other time by Company with the prior consent of Delphi Technologies, Inc. and any other necessary Delphi Affiliated Party, which consent shall not be unreasonably withheld. Purchaser shall cause the Company to bring any past due amounts under the License Agreements current on or before Closing.

8.    <u>Intellectual Property License.</u>    Company has received from Delphi Affiliated Parties information and data that may qualify as intellectual property of Delphi Technologies, Inc. or other Delphi Affiliated Parties (collectively, the **"Delphi IP"**). Company has received licenses from Delphi Technologies, Inc. and other Delphi Affiliated Parties to utilize certain Delphi IP in accordance with the terms of such License Agreements. The parties acknowledge that Delphi IP is currently used in connection with the business of Company, and the parties intend for Company, following Purchaser's acquisition of the Interest from Seller, to have the unlimited right to continue to use Delphi IP other than the Delphi IP that is governed by a License Agreement without further payment of any kind whatsoever to any Delphi Affiliated Party. Accordingly, Delphi Technologies, Inc. and Delphi Corporation (on behalf of itself and all Delphi Affiliated Parties): (a) grants to Company the perpetual, irrevocable, royalty-free, worldwide right to use Delphi IP other than Delphi IP governed by any License Agreement in connection with the manufacture, use, sale, offer for sale, importation and other exploitation of brake calipers by the Company; (b) discharges and releases Company and its Affiliates from the obligation to make any payments related to the Delphi IP other than the Delphi IP governed by a License Agreement; and (c) agrees not to assert any claim of infringement of the Delphi IP other than the Delphi IP governed by a License Agreement against Company or any of its Affiliates, or their customers, mediate or immediate, because of the manufacture, use, sale, offer for sale, importation or other exploitation of brake calipers by the Company. Company may freely assign the preceding rights without the consent of Delphi Technologies, Inc., Delphi Corporation or any Delphi Affiliated Party in connection with the disposition of all or substantially all of the

Delphi Corporation
Mr. Bellar
July 30, 2009
Page 5

business to which the rights pertain, or in connection with the transfer of the operations of the
Company to one or more of its Affiliates, and at any other time by Company with the prior
consent of Delphi Technologies, Inc. and any other necessary Delphi Affiliated Party, which
consent shall not be unreasonably withheld.  Subject to receipt of the Sale Approval, Dephi
Technologies, Inc. and Delphi Corporation represent and warrant that they have full capacity,
power and authority to enter into and grant the license set forth in this Section 8, such license
shall be binding on their successors and assigns, and is enforceable in accordance with its terms.

     9.    Modification Approval Order.  In the event that an order (the "**Modification
Approval Order**") confirming certain modifications to the confirmed First Amended Joint Plan
of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-In-
Possession (As Modified) (the "**Modified Plan**") is entered on or before the Closing, Seller shall
affirm at the hearing on approval of the Modified Plan and shall include a provision in the
Modification Approval Order that (a) the objection filed by PBRT to the Modified Plan (the
"**PBRT Objection**") will be scheduled for a hearing on August 17, 2009, at 10:00 a.m.
(prevailing Eastern time) (the "**August 17 Hearing**"); provided, however, that notwithstanding
any provisions in the Modification Approval Order, this Agreement constitutes notice to PBRT
of the adjournment of the hearing on the PBRT Objection from the August 17 Hearing in the
Bankruptcy Court regarding all objections to the Modified Plan relating to assumption and/or
assignment (the "**Assumption Objections**") to a date to be determined in accordance with the
applicable procedures for the Assumption Objections (the "**Assumption Hearing**") and (b) the
Debtors shall have the right to reject the Operating Agreement for a period of six days after entry
of a Final Order establishing cure or adequate assurance on terms not reasonably acceptable to
the Debtors. The parties agree that the Modification Approval Order shall in no way provide for
the assumption and/or assignment of the Operating Agreement and the rights of the parties with
respect to the assumption and/or assignment of the Operating Agreement and the PBRT
Objection will be preserved and will not be prejudiced until the Bankruptcy Court holds a
hearing on the PBRT Objection. For the avoidance of doubt, until the Bankruptcy Court rules on
the PBRT Objection to the Modified Plan at the Assumption Hearing, neither the confirmation or
the consummation of the Modified Plan, nor the closing of the Master Disposition Agreement
will affect the assumption and/or assignment of the Operating Agreement or the PBRT
Objection. The Modification Approval Order shall provide that, notwithstanding anything in the
Modified Plan or the Master Disposition Agreement to the contrary, the Bankruptcy Court shall
retain jurisdiction over the PBRT Objection, the assumption and/or assignment of the Operating
Agreement, the Assumption Hearing, and this Letter Agreement.  In the event that the
transactions contemplated by this Letter Agreement close, then the PBRT Objection shall
become moot and as soon as practicable PBRT shall withdraw the PBRT Objection with
prejudice.

     10.    Amendment of Limited Liability Company Agreement.  Seller shall ratify, adopt
and approve the following amendment to the limited liability operating agreement between Seller

Delphi Corporation
Mr. Bellar
July 30, 2009
Page 6

and PBR Tennessee Inc. entered into on September 26, 1996 (the "**Operating Agreement**") to allow for the transfer contemplated by this Letter Agreement: At the end of Section 9.1 of the Operating Agreement, the following language is to be added: "; provided, however, the Members agree that the transfer of the entire membership interest in the Company owned by Delphi Automotive Systems Tennessee, Inc. or any other Delphi affiliate as contemplated in that certain Letter Agreement dated July 30, 2009 shall be permitted, and shall not constitute a violation of this Agreement."

     11.    <u>Taxes</u>.  The parties will cooperate as reasonably requested in preparation of the United States partnership tax return, on all tax matters related to the transaction, and on all tax compliance matters that pertain to the partnership in general, and as part of the purchase and sale agreement.

     12.    <u>Miscellaneous</u>.  All of the terms of this Letter Agreement will be binding upon, inure to the benefit of and be enforceable by and against the successors and authorized assigns of the parties.  Nothing in this Letter Agreement, express or implied, is intended to confer upon any other person any rights or remedies under or by reason of this Letter Agreement, this Letter Agreement being for the exclusive benefit of the parties and their respective successors and authorized assigns.  No party will assign any of its respective rights or obligations under this Letter Agreement to any other person without the prior written consent of all of the other parties.  This Letter Agreement and the agreements referred to in this Letter Agreement set forth the entire agreement and understanding of the parties in respect of the transactions contemplated by this Letter Agreement and supersede all prior agreements, arrangements and understandings relating to the subject matter hereof.  This Letter Agreement may be amended, modified, superseded or canceled and any of the terms, covenants, representations, warranties or conditions hereof may be waived only by a written instrument executed by the parties or, in the case of a waiver, by or on behalf of the party waiving compliance.  Any provision, or clause of any provision, of this Letter Agreement that may be found to be contrary to Michigan law or otherwise unenforceable will not affect the remaining terms of this Letter Agreement, which will be construed as if the unenforceable provision or clause was absent from this Letter Agreement.  This Letter Agreement will be governed by and construed in accordance with the laws of the state of Michigan as applicable to contracts made and to be performed in the state of Michigan without regard to conflict of laws principles.  This Letter Agreement may be executed in counterparts, each of which when so executed will be deemed to be an original and such counterparts will together constitute one and the same agreement.  Each of the parties acknowledges and agrees that the other parties may be damaged irreparably in the event any of the provisions of this Letter Agreement are not performed in accordance with their specific terms or otherwise are breached.  Accordingly, each of the parties agrees that the other parties shall be entitled to seek an injunction or injunctions to prevent breaches of the provisions of this Letter Agreement and to enforce specifically this Letter Agreement and the terms and provisions hereof in any action instituted in any court of the United States or any state thereof having jurisdiction

Delphi Corporation
Mr. Bellar
July 30, 2009
Page 7

over the parties, in addition to any other remedy to which they may be entitled, at law or in equity.

[remainder of page left intentionally blank]

Delphi Corporation
Mr. Bellar
July 30, 2009
Page 8

The parties below agree to the terms and conditions set forth in this Letter Agreement as of the date first written above.

ROBERT BOSCH LLC                          DELPHI AUTOMOTIVE SYSTEMS
                                          TENNESSEE, INC.

By: _____           By: _____
Its: *Executive Vice President, Finance,*
*Controlling ; Administration*            Its: _____

                                                                    "Seller"

And By: _____

Its: *Vice President, General Counsel & Secretary*

                "Purchaser"


Solely for purposes of Sections 7 and 8 of this        Solely for purposes of Section 8 of this
Letter Agreement                                       Letter Agreement

DELPHI CORPORATION (on behalf of                       DELPHI TECHNOLOGIES, INC.
itself and its Affiliates)


By: _____           By: _____

Its: _____          Its: _____

1687092

Delphi Corporation
Mr. Bellar
July 30, 2009
Page 8


        The parties below agree to the terms and conditions set forth in this Letter Agreement as of the date first written above.

ROBERT BOSCH LLC                         DELPHI AUTOMOTIVE SYSTEMS
                                         TENNESSEE, INC.


By:_____             By: _____

    Its:_____                Its: _____

                                                             "Seller"


And By:_____

    Its:_____

                  "Purchaser"


Solely for purposes of Sections 7 and 8 of this      Solely for purposes of Section 8 of this
Letter Agreement                                     Letter Agreement

DELPHI CORPORATION (on behalf of         DELPHI TECHNOLOGIES, INC.
itself and its Affiliates)


By: _____              By:_____

    Its: _____                 Its:_____

1687092

Delphi Corporation
Mr. Bellar
July 30, 2009
Page 8


The parties below agree to the terms and conditions set forth in this Letter Agreement as of the date first written above.

ROBERT BOSCH LLC                    DELPHI AUTOMOTIVE SYSTEMS
                                    TENNESSEE, INC.


By:_____        By:_____

    Its:_____            Its:_____

                                                        "Seller"


And By:_____

    Its:_____

                    "Purchaser"


Solely for purposes of Sections 7 and 8 of this    Solely for purposes of Section 8 of this
Letter Agreement                                   Letter Agreement

DELPHI CORPORATION (on behalf of    DELPHI TECHNOLOGIES, INC.
itself and its Affiliates)


By:_____        By:_____ T.G. FORBES _____

    Its:_____            Its:_____ VICE-PRESIDENT ____

1687092

**EXHIBIT A**

**FORM OF STIPULATION AND AGREED ORDERS**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York, 10036
(212) 735-3000
Kayalyn A. Marafioti

Attorneys for Delphi Corporation, et al.,
Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                :

|  |  |  |
|---|---|---|
| In re | : | Chapter 11 |
|  | : |  |
| DELPHI CORPORATION, et al., | : | Case No. 05–44481 (RDD) |
|  | : |  |
| Debtors. | : | (Jointly Administered) |
|  | : |  |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

JOINT STIPULATION AND AGREED ORDER (I) WITHDRAWING DEBTORS'
OBJECTIONS TO PROOF OF CLAIM NUMBER 5980 AND RESPONSES OF PBR
KNOXVILLE LLC TO CLAIMS OBJECTIONS, (II) ALLOWING PROOF OF CLAIM
NUMBER 5980, AND (III) DISALLOWING PROOF OF CLAIM NUMBER 15847
(PBR KNOXVILLE LLC)

    Delphi Corporation and certain of its subsidiaries and affiliates, including Delphi

Automotive Systems LLC ("DAS LLC") and Delphi Automotive Systems Tennessee, Inc. ("DAST"), debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors") and PBR Knoxville LLC ("PBR Knoxville"), respectfully submit this Joint Stipulation And Agreed Order (I) Withdrawing Debtors' Objections To Proof Of Claim Number 5980 And Responses Of PBR Knoxville LLC To Claims Objections, (II) Allowing Proof Of Claim Number 5980, And (III) Disallowing Proof Of Claim Number 15847 (PBR Knoxville LLC) and agree and state as follows:

WHEREAS, on October 8, 2005, the Debtors filed voluntary petitions under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as then amended, in the United States Bankruptcy Court for the Southern District of New York.

WHEREAS, on May 16, 2006, PBR Knoxville filed proof of claim number 5980 against Delphi, asserting an unsecured non-priority claim in the amount of $9,157,458.38 and a secured claim in the amount of $63,308.80, for a combined total of $9,225,767.18 ("Claim No. 5980") arising from the sale of goods to DAS LLC.

WHEREAS, on July 19, 2006, PBR Knoxville transferred the unsecured non-priority portion of Claim No. 5980 in the amount of $9,157,458.38 (the "Transferred Portion") to Merrill Lynch Credit Products, LLC pursuant to a notice of transfer (Docket No. 4611) (the "Claim Transfer").

WHEREAS, on August 4, 2006, Merrill Lynch Credit Products, LLC transferred its portion of Claim No. 5980 to Special Situations Investing Group, Inc. pursuant to a notice of transfer (Docket No. 4862).

WHEREAS, on August 9, 2006, PBR Knoxville filed proof of claim number 15847 against DAST, asserting an unliquidated claim ("Claim No. 15847").

WHEREAS, on October 31, 2006, the Debtors objected to Claim No. 15847

pursuant to the Debtors' (I) Third Omnibus Objection (Substantive) Pursuant to 11 U.S.C. §

502(b) and Fed.R.Bankr.P. 3007 to Certain (A) Claims with Insufficient Documentation, (B)

Claims Unsubstantiated by Debtors' Books and Records, and (C) Claims Subject to Modification

and (II) Motion to Estimate Contingent and Unliquidated Claims Pursuant to 11 U.S.C. § 502(c)

(the "Third Omnibus Claims Objection").

        WHEREAS, on November 22, 2006, PBR Knoxville filed its Response to the

Debtors' Second Omnibus Objection (Procedural) Pursuant to 11 U.S.C. § 502(B) and

Fed.R.Bankr.P.3007 to Certain (I) Equity Claims, (II) Claims Duplicative of Consolidated

Trustee or Agent Claims, and (III) Duplicate and Amended Claims and Debtors' (I) Third

Omnibus Objection (Substantive) Pursuant to 11 U.S.C. § 502(B) and Fed.R.Bankr.P.3007 to

Certain (A) Claims with Insufficient Documentation, (B) Claims Unsubstantiated by Debtors'

Books and Records, and (C) Claims Subject to Modification and (II) Motion to Estimate

Contingent and Unliquidated Claims Pursuant to 11 U.S.C. § 502(C) (Docket No. 5740) (the

"Third Objection Response").

        WHEREAS, on October 27, 2007, the Debtors objected to Claim No. 5980

pursuant to the Debtors' Twenty-Second Omnibus Objection Pursuant To 11 U.S.C. § 502(b) and

Fed. R. Bankr. P. 3007 To Certain (A) Duplicate Or Amended Claims, (B) Equity Claims, (C)

Insufficiently Documented Claims, (D) Claims Not Reflected On Debtors' Books and Records,

(E) Untimely Claims, and (F) Claims Subject To Modification, Tax Claims Subject To

Modification, Modified Claims Asserting Reclamation, Claims Subject To Modification That

Are Subject To Prior Orders, And Modified Claims Asserting Reclamation That Are Subject To

Prior Orders (Docket No. 10738) (the "Twenty-Second Omnibus Claims Objection").

        WHEREAS, on November 20, 2007, PBR Knoxville filed its Response of PBR

Knoxville LLC To Debtors' Twenty Second Omnibus Objection Pursuant to 11 U.S.C. § 502(b)

And Fed. R. Bankr. P. 3007 To Certain (A) Duplicate Or Amended Claims, (B) Equity Claims, (C) Insufficiently Documented Claims, (D) Claims Not Reflected On Debtors' Books And Records, (E) Untimely Claims, And (F) Claims Subject To Modification, Tax Claims Subject To Modification, Modified Claims Asserting Reclamation, Claims Subject To Modification That Are Subject to Prior Orders, And Modified Claims Asserting Reclamation That Are Subject To Prior Orders (Docket No. 10989) (the "Twenty-Second Objection Response").

      WHEREAS, on November 14, 2008, the Debtors objected to Claim No. 5980 pursuant to the Debtors' Thirty-Second Omnibus Objection Pursuant to 11 U.S.C. § 502(b) and Fed. R. Bankr. P. 3007 Regarding (A) Asserted Amount Claims, (B) Claims Subject to Modification, and (C) Claims to be Expunged (Docket No. 14442) (the "Thirty-Second Omnibus Claims Objection").

      WHEREAS, on December 10, 2008, PBR Knoxville filed its Limited Response Of PBR Knoxville LLC To Debtors' Thirty-Second Omnibus Objection Pursuant To 11 U.S.C. 502(b) And Fed. R. Bankr. P. 3007 Regarding (A) Asserted Amount Claims, (B) Claims Subject to Modification, and (C) Claims to be Expunged (Docket No. 14577) (the "Thirty- Second Objection Response," together with the Third Objection Response and the Twenty-Second Objection Response, the "Responses").

      WHEREAS, to resolve the Twenty-Second Omnibus Claims Objection and the Thirty-Second Omnibus Claims Objection with respect to Claim No. 5980 and provide for the disallowance and expungement of Claim No. 15847, DAS LLC and PBR Knoxville entered into this Joint Stipulation and Agreed Order.

      WHEREAS, PBR Knoxville represents that it has full capacity, power, and authority to enter into and perform this Joint Stipulation and to withdraw its Responses to the Third Omnibus Claims Objection, the Twenty-Second Omnibus Claims Objection and the

Thirty-Second Omnibus Claims Objection with prejudice.

THEREFORE, the Debtors and PBR Knoxville stipulate and agree as follows:

1.      The Debtors are hereby deemed to have withdrawn the Twenty-Second Omnibus Claims Objection and the Thirty-Second Omnibus Claims Objection with respect to Claim No. 5980.

2.      PBR Knoxville is hereby deemed to have withdrawn its Responses to the Third Omnibus Claims Objection, the Twenty-Second Omnibus Claims Objection, and the Thirty-Second Omnibus Claims Objection with prejudice.

3.      Claim No. 5980 shall be allowed in the amount of $9,225,767.18 and shall be treated as an allowed general unsecured non-priority claim against the estate of DAS LLC.

4.      Claim No. 15487 shall be disallowed and expunged in its entirety.

So Ordered in New York, New York, this _____ day of July, 2009

_____
UNITED STATES BANKRUPTCY JUDGE

AGREED TO AND
APPROVED FOR ENTRY:

John Wm. Butler, Jr.                           Judy O'Neill
John K. Lyons                                  FOLEY & LARDNER LLP
Ron E. Meisler                                 500 Woodward Ave., Suite 2700
SKADDEN, ARPS, SLATE, MEAGHER                  Detroit, MI 48226
  & FLOM LLP                                    (313) 234-7100
155 North Wacker Drive                         Attorneys for PBR Knoxville LLC
Chicago, Illinois  60606-1285
(312) 407-0700

                    - and –

Kayalyn A. Marafioti
SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP Four Times Square
New York, New York  10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York, 10036
(212) 735-3000
Kayalyn A. Marafioti

Attorneys for Delphi Corporation, et al.,
 Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                             :
                             :
     In re                    :    Chapter 11
                             :
DELPHI CORPORATION, et al.,    :    Case No. 05–44481 (RDD)
                             :
              Debtors.    :    (Jointly Administered)
                             :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

JOINT STIPULATION AND AGREED ORDER (I) WITHDRAWING DEBTORS'

OBJECTIONS TO PROOF OF CLAIM NUMBER 2548 AND RESPONSES OF
PBR AUSTRALIA PTY LTD. TO CLAIMS OBJECTIONS AND
(II) ALLOWING PROOF OF CLAIM NUMBER 2548
(PBR AUSTRALIA PTY LTD.)

Delphi Corporation and certain of its subsidiaries and affiliates, including Delphi

Automotive Systems LLC ("DAS LLC"), debtors and debtors-in-possession in the above-

captioned cases (collectively, the "Debtors") and PBR Australia Pty Ltd. ("PBR Australia")

respectfully submit this Joint Stipulation And Agreed Order (I) Withdrawing Debtors' Objections

To Proof Of Claim Number 2548 And Responses Of PBR Australia Pty Ltd. To Claims

Objections And (II) Allowing Proof Of Claim Number 2548 (PBR Australia Pty Ltd.) (the "Joint

Stipulation and Agreed Order") and agree and state as follows:

WHEREAS, on October 8, 2005, the Debtors filed voluntary petitions under

chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as then amended, in the

United States Bankruptcy Court for the Southern District of New York.

WHEREAS, on April 4, 2006, PBR Australia filed proof of claim number 2548

against Delphi, asserting an unsecured non-priority claim in the amount of $562,192.18 (the

"Claim") arising from the sale of goods to DAS LLC.

WHEREAS, on July 19, 2006 and September 26, 2006, PBR Australia transferred

$338,801.98 of the Claim (the "Transferred Portion") to Merrill Lynch Credit Products, LLC

pursuant to two notices of transfer (Docket Nos. 4613 and 5193, respectively) (collectively, the

"Claims Transfers").


WHEREAS, on August 4, 2006 and September 26, 2006, Merrill Lynch Credit

Products, LLC transferred the Transferred Portion of the Claim to Special Situations Investing

Group, Inc. pursuant to two notices of transfer (Docket Nos. 4860 and 5195, respectively).

WHEREAS, on July 13, 2007, the Debtors objected to the Claim pursuant to the

Debtors' Nineteenth Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed.

R. Bankr. P. 3007 To Certain (A) Insufficiently Documented Claims, (B) Claims Not Reflected

On Debtors' Books And Records, (C) Untimely Claim, And (D) Claims Subject To Modification,

Tax Claims Subject To Modification, Modified Claims Asserting Reclamation, And

Consensually Modified And Reduced Claims (Docket No. 8617) (the "Nineteenth Omnibus

Claims Objection").

WHEREAS, on August 8, 2007, PBR Australia filed its Response Of PBR

Australia Party Ltd. To Debtors' Nineteenth Omnibus Objection (Substantive) Pursuant To 11

U.S.C. § 502(B) And Fed. R. Bankr. P. 3007 To Certain (A) Insufficiently Documented Claims,

(B) Claims Not Reflected On Debtors' Book And Records, (C) Untimely Claim, And (D) Claims

Subject To Modification, Tax Claims Subject To Modification, Modified Claims Asserting

Reclamation, And Consensually Modified And Reduced Claims (Docket No. 8939) (the

"Response").

WHEREAS, on November 14, 2008, the Debtors objected to the Claim pursuant

to the Debtors' Thirty-Second Omnibus Objection Pursuant to 11 U.S.C. § 502(b) and Fed. R.

Bankr. P. 3007 Regarding (A) Asserted Amount Claims, (B) Claims Subject to Modification,

and (C) Claims to be Expunged (Docket No. 14442) (the "Thirty-Second Omnibus Claims

Objection").

WHEREAS, on December 10, 2008, PBR Australia filed its Response Of PBR

Australia Party Ltd. To Debtors' Thirty-Second Omnibus Objection Pursuant To 11 U.S.C.

502(b) And Fed. R. Bankr. P. 3007 Regarding (A) Asserted Amount Claims, (B) Claims Subject

to Modification, and (C) Claims to be Expunged (Docket No. 14575) (the "Second Response").

WHEREAS, to resolve the Nineteenth Omnibus Claims Objection and the Thirty-

Second Omnibus Claims Objection, the Debtors and PBR Australia entered into this Joint

Stipulation and Agreed Order.

WHEREAS, PBR Australia represents that it has full capacity, power, and

authority to enter into and perform this Joint Stipulation and Agreed Order and to withdraw its

Responses to the Nineteenth Omnibus Claims Objection and its Second Response to the Thirty-

Second Omnibus Claims Objection with prejudice or agree to have its Responses withdrawn

with prejudice.

THEREFORE, the Debtors and PBR Australia stipulate and agree as follows:

5.      The Debtors are hereby deemed to have withdrawn the Nineteenth

Omnibus Claims Objection and the Thirty-Second Omnibus Claims Objection with respect to the

Claim.

6.      PBR Australia is hereby deemed to have withdrawn its Response to the

Nineteenth Omnibus Claims Objection and its Second Response to the Thirty-Second Omnibus

Claims Objection with prejudice.

7.      The Claim shall be allowed in the amount of $562,192.18 and shall be

treated as an allowed general unsecured non-priority claim against the estate of DAS LLC.

So Ordered in New York, New York, this ____ day of July __, 2009

_____
UNITED STATES BANKRUPTCY JUDGE

AGREED TO AND
APPROVED FOR ENTRY:

_____          _____
John Wm. Butler, Jr.                        Judy O'Neill
John K. Lyons                               FOLEY & LARDNER LLP
Ron E. Meisler                              500 Woodward Ave., Suite 2700
SKADDEN, ARPS, SLATE, MEAGHER               Detroit, MI 48226
  & FLOM LLP                                (313) 234-7100
155 North Wacker Drive                      Attorneys for PBR Australia Pty Ltd.
Chicago, Illinois  60606-1285
(312) 407-0700

                    - and –

    Kayalyn A. Marafioti
Four Times Square
New York, New York  10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York, 10036
(212) 735-3000
Kayalyn A. Marafioti

Attorneys for Delphi Corporation, et al.,
  Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| | : | |
| | : | |
| In re | : | Chapter 11 |
| | : | |
| DELPHI CORPORATION, et al., | : | Case No. 05–44481 (RDD) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

JOINT STIPULATION AND AGREED ORDER DISALLOWING AND EXPUNGING
PROOF OF CLAIM NUMBER 15883
(PBR TENNESSEE, INC.)

Delphi Corporation and certain of its subsidiaries and affiliates, including Delphi Automotive Systems Tennessee, Inc. ("DAST"), debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors") and PBR Tennessee, Inc. ("PBR Tennessee") respectfully submit this Joint Stipulation And Agreed Order Disallowing And Expunging Proof Of Claim Number 15883 (PBR Tennessee, Inc.) (the "Stipulation") and agree and state as follows:

WHEREAS, on October 8, 2005, the Debtors filed voluntary petitions under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as then amended, in the United States Bankruptcy Court for the Southern District of New York.

WHEREAS, on August 9, 2006, PBR Tennessee filed proof of claim number 15883 against DAST, asserting an unliquidated claim (the "Claim").

WHEREAS, on October 31, 2006, the Debtors objected to the Claim pursuant to the Debtors' (I) Third Omnibus Objection (Substantive) Pursuant to 11 U.S.C. § 502(b) and Fed.R.Bankr.P. 3007 to Certain (A) Claims with Insufficient Documentation, (B) Claims Unsubstantiated by Debtors' Books and Records, and (C) Claims Subject to Modification and (II) Motion to Estimate Contingent and Unliquidated Claims Pursuant to 11 U.S.C. § 502(c) (the "Third Omnibus Claims Objection").

WHEREAS, on November 22, 2006, PBR Tennessee filed its Response to the Debtors' Second Omnibus Objection (Procedural) Pursuant to 11 U.S.C. § 502(B) and Fed.R.Bankr.P.3007 to Certain (I) Equity Claims, (II) Claims Duplicative of Consolidated Trustee or Agent Claims, and (III) Duplicate and Amended Claims and Debtors' (I) Third

Omnibus Objection (Substantive) Pursuant to 11 U.S.C. § 502(B) and Fed.R.Bankr.P.3007 to

Certain (A) Claims with Insufficient Documentation, (B) Claims Unsubstantiated by Debtors'

Books and Records, and (C) Claims Subject to Modification and (II) Motion to Estimate

Contingent and Unliquidated Claims Pursuant to 11 U.S.C. § 502(C) (Docket No. 5740) (the

"Third Objection Response").

       WHEREAS, to resolve the Third Omnibus Claims Objection with respect to the

Claim, DAST and PBR Tennessee entered into this Stipulation, pursuant to which PBR

Tennessee acknowledges and agrees that the Claim shall be disallowed and expunged in its

entirety.

       WHEREAS, DAST  is authorized to enter into this Stipulation either because the

Claim involves ordinary course controversies or pursuant to that certain Amended And Restated

Order Under 11 U.S.C. §§ 363, 502, And 503 And Fed. R. Bankr. P. 9019(b) Authorizing

Debtors To Compromise Or Settle Certain Classes Of Controversy And Allow Claims Without

Further Court Approval (Docket No. 8401) entered by this Court on June 26, 2007.

       THEREFORE, DAST and PBR Tennessee stipulate and agree as follows:

    1.   The Claim shall be disallowed and expunged in its entirety.

    2.   PBR Tennessee shall withdraw its Response with prejudice.

So Ordered in New York, New York, this ____ day of July __, 2009

                     _____
                     UNITED STATES BANKRUPTCY JUDGE

AGREED TO AND
APPROVED FOR ENTRY:

John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler
SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP
155 North Wacker Drive
Chicago, Illinois  60606-1285
(312) 407-0700

            - and –

  Kayalyn A. Marafioti
Four Times Square
New York, New York  10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

Judy O'Neill
FOLEY & LARDNER LLP
500 Woodward Ave., Suite 2700
Detroit, MI 48226
(313) 234-7100

Attorneys for PBR Tennessee, Inc.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                    :
        In re                       :        Chapter 11
                                    :
DELPHI CORPORATION, et al.,          :        Case No. 05-44481 (RDD)
                                    :
                Debtors.            :        (Jointly Administered)
                                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
```

ORDER UNDER 11 U.S.C. § 363 AND FED. R. BANKR. P. 2002 AND 6004
AUTHORIZING AND APPROVING ENTRY BY DELPHI AUTOMOTIVE
SYSTEMS TENNESSEE, INC. INTO LETTER AGREEMENT WITH
<u>ROBERT BOSCH LLC FOR SALE OF INTEREST IN PBR KNOXVILLE LLC</u>

("PBR KNOXVILLE SALE ORDER")

Upon the motion, dated July 31, 2009 (the "Motion"),[1] of Delphi Corporation ("Delphi")

and certain of its subsidiaries and affiliates, including Delphi Automotive Systems Tennessee,

Inc. ("DAST"), debtors and debtors-in-possession in the above-captioned cases (collectively, the

"Debtors"), for an order pursuant to 11 U.S.C. § 363 and Fed. R. Bankr. P. 2002 and 6004

authorizing and approving, but not directing, the entry by DAST into that certain Letter

Agreement (the "Agreement"), a copy of which is attached hereto as <u>Exhibit 1</u>, with Robert

Bosch LLC ("Bosch") for the sale of DAST's entire forty-nine percent (49%) membership

interest in PBR Knoxville LLC ("PBR Knoxville"), an existing joint venture between DAST and

PBR Tennessee Inc. ("PBR Tennessee"); and upon the record of the hearing held on the Motion;

and after due deliberation thereon, and sufficient cause appearing therefor,

---

[1]    Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Motion.

IT IS HEREBY FOUND AND DETERMINED THAT:[2]

A.    The Agreement has been negotiated and documented in good faith and from arm's length bargaining positions.  Bosch is a good faith purchaser under section 363(m) of the Bankruptcy Code.

B.    The transactions contemplated by the Agreement satisfy the requirements of section 363 of the Bankruptcy Code.

C.    The relief requested in the Motion and granted herein, including the execution of and performance of the Agreement by DAST, is in the best interests of DAST, its estate, its creditors, and its other stakeholders.

D.    The Debtors have given adequate notice of the Motion, including notice as required under rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure, and no other or further notice of the Motion or the hearing on the Motion is necessary.

E.    The terms and conditions of the Agreement are fair and reasonable.

NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

1.    The Motion is GRANTED.

2.    DAST is authorized, but not directed, to enter into the Agreement and to perform its obligations thereunder.

3.    The Agreement and all of the terms and conditions thereof are hereby approved pursuant to section 363 of the Bankruptcy Code and rule 6004 of the Federal Rules of

---

[2]    Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.  See Fed. R. Bankr. P. 7052.

Bankruptcy Procedure, and accordingly the terms and conditions of such Agreement are valid, binding and enforceable.

4.      DAST is authorized, but not directed, to execute and deliver, and empowered to perform under, consummate, and implement, the Agreement, together with all additional instruments and documents as may be necessary or desirable to implement the Agreement.

5.      Upon execution and delivery of the Agreement and the transfer by DAST of the Membership Interest to Bosch, the Membership Interest shall be free and clear of any and all claims, liens, mortgages, security interests, encumbrances, charges, or any other restrictions other than any restrictions contained in the LLC Agreement.

6.      This Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this order.

Dated:   New York, New York
         August __, 2009


_____
  UNITED STATES BANKRUPTCY JUDGE

Exhibit A
<u>Agreement</u>

July 30, 2009

<u>PERSONAL & CONFIDENTIAL</u>

Delphi Automotive Systems Tennessee, Inc.
c/o Delphi Automotive Systems LLC
5725 Delphi Drive
Troy, Michigan 48098-2815
Attn: Fred Bellar

Dear Mr. Bellar:

   This Letter Agreement (sometimes "Agreement") sets forth the terms and conditions under which Robert Bosch LLC ("**Purchaser**") shall acquire the entire (i.e., forty nine percent (49%)) membership interest (the "**Interest**") in PBR Knoxville LLC (the "**Company**") held by Delphi Automotive Systems Tennessee, Inc. ("**Seller**"), a wholly owned subsidiary of Delphi Automotive Systems LLC.

   1. <u>Form of Transaction</u>.  At Closing, as defined below, Seller shall transfer the Interest to Purchaser free and clear of all claims, liens, mortgages, security interests, encumbrances, charges, or any other restrictions other than any restrictions contained in the Operating Agreement (as defined below).

   2. <u>Purchase Price; Payment</u>.  At Closing, Purchaser shall pay to Seller, by wire transfer of immediately available funds, the sum of One Million Seven Hundred Fifty Thousand Dollars ($1,750,000.00) in exchange for the Interest.

   3. <u>Closing</u>.  Subject to the satisfaction or waiver of the conditions set forth below, the Closing of the purchase of the Interest (the "**Closing**") shall occur on or before August 31, 2009.  Notwithstanding the foregoing, Purchaser and Seller will each use commercially reasonable efforts to cause the Closing to occur on August 20, 2009.  If the Closing does not occur on or before August 31, 2009 due to the failure to satisfy one or more conditions, the Closing may occur, at Purchaser's discretion, as soon as all conditions have been satisfied but no later than fifteen days thereafter.

   4. <u>Conditions</u>.  The transfer of and payment for the Interest contemplated by this Agreement is subject to completion of the following conditions at or prior to Closing.

    (a) a due diligence review of Seller's ownership rights to the Interest

Delphi Corporation
Mr. Bellar
July 30, 2009
Page 2

reflecting that the Interest can be transferred to Purchaser free and clear of all claims, liens, mortgages, security interests, encumbrances, charges, or other restrictions other than any restrictions contained in the Operating Agreement.

(b)    the execution of the certain Stipulations and Agreed Orders by the intended signatories as set forth in those Stipulations and Agreed Orders in substantially the form as set forth in Exhibit A, the filing of notices of presentment of those Stipulations and Agreed Orders with the Bankruptcy Court, and service of those notices of presentment on parties-in-interest who are affected by those Stipulations and Agreed Orders. Such Stipulations and Agreed Orders shall be filed with the Bankruptcy Court within three business days of execution of this Letter Agreement or as soon thereafter as the Stipulations and Agreed Orders have been executed.

(c)    the amendment of the Operating Agreement, as set forth in Item 10 below, including the ratification, adoption and approval of the amendment by PBR Tennessee, Inc.("**PBRT**"), to allow for the transfer of the Interest as contemplated by this Agreement.

(d)    a confirmation, in the form of a legal opinion from counsel for Purchaser, that all obligations of the Company with respect to its secured loan from Robert Bosch Finance LLC (the "Company Loan") will remain in place and are not affected.

(e)    approval of the transactions contemplated by this Letter Agreement by the Bankruptcy Court pursuant to Section 363 of the Bankruptcy Code (collectively "Sale Approval").

The conditions set forth in Sections 4(a) and 4(d) above may be waived in a signed writing by Purchaser in its sole discretion. The conditions set forth in Sections 4(b) and 4(c) may be waived only in a signed writing by both Purchaser and Seller, in each case, in their respective sole discretion.

5.    Representations and Warranties.

(a)    Seller represents and warrants that: (i) Seller is the record and beneficial owner and holder of the entire Interest, free and clear of any charge, claim, condition, equitable interest, mortgage, lien, option, pledge, security interest, right of first refusal or restriction of any kind, including any restriction on use, voting, transfer, receipt of income or exercise of any other attribute of ownership other than restrictions set forth in the Operating Agreement; (ii) subject to receipt of the Sale Approval, Seller has full capacity, power and authority to enter into and perform this Letter Agreement and to carry out the transactions contemplated by this Letter Agreement or arrange to carry them out; and (iii) subject to receipt of the Sale Approval, this Letter Agreement is binding upon Seller and is enforceable against Seller in accordance with its

Delphi Corporation
Mr. Bellar
July 30, 2009
Page 3

terms.

(b)    Purchaser represents and warrants that: (i) Purchaser has full power and authority to enter into this Letter Agreement and to carry out the transactions contemplated by this Letter Agreement; and (ii) this Letter Agreement is binding upon Purchaser and is enforceable against Purchaser in accordance with its terms.

6.    <u>Loan Repayment</u>.  Purchaser will cause Robert Bosch Finance LLC to continue to extend the period for repayment of the principal and interest and all other amounts owing under the Company Loan until the earlier of Closing or August 31, 2009.

7.    <u>Release</u>.

(a)    Effective upon the Closing except as set forth in Section 7(d) below, the Delphi Affiliated Parties (as defined below) shall completely and unconditionally release the Purchaser Affiliated Parties (as defined below) and all of the Purchaser Affiliated Parties' respective directors, managers, officers, employees, attorneys, agents and representatives from any and all claims, liabilities, actions and causes of action, known or unknown, arising directly or indirectly out of or related to the Company or its operations prior to the Closing.

(b)    Effective upon the Closing, except as set forth below, the Purchaser Affiliated Parties shall completely and unconditionally release the Delphi Affiliated Parties and all of the Delphi Affiliated Parties' respective directors, managers, officers, employees, attorneys, agents and representatives from any and all claims, liabilities, actions and causes of action, known or unknown, arising directly or indirectly out of or related to the Company or its operations prior to the Closing. Notwithstanding the foregoing, the Purchaser Affiliated Parties are not releasing or waiving any proofs of claim that they have filed in the Chapter 11 bankruptcies of the Delphi Affiliated Parties other than as set forth in the Stipulations and Agreed Orders referenced in Section 4(b) above.

(c)    As used in this Section 7: (i) the term "Delphi Affiliated Parties" shall mean, jointly and severally, Seller, Delphi Corporation and its Affiliates that are in Chapter 11 bankruptcy; (ii) the term "Purchaser Affiliated Parties" shall mean, jointly and severally, the Company, Pacific Group Ltd. and its Affiliates, and Purchaser and its Affiliates; and (iii) the term "Affiliates" shall mean any entity directly or indirectly controlling, controlled by, or under common control with, that entity and any officer, director or controlling person of that entity.

(d)    Notwithstanding anything to the contrary contained herein, the foregoing releases shall not be deemed to constitute a waiver by Seller or any of its Affiliates of the right to collect or to release Company or any other party from its obligation to pay royalties or other amounts due under any license agreements between Company and Seller or any of Seller's

Delphi Corporation
Mr. Bellar
July 30, 2009
Page 4

Affiliates, including, without limitation, that certain License Agreement for System 4 Calipers dated November 14, 2006 and that certain Strategic Development Agreement regarding System 2 and System 3 rear and front calipers (collectively, the **"License Agreements"**), and all such License Agreements shall remain in full force and effect until expiration or termination in accordance with their terms. It is understood by the parties that the current rights of Delphi and the Company under the Strategic Development Agreement allow for the use of Delphi's System 3 front and rear caliper designs only for the balance of the program life of the GMT 900 program, including Original Equipment Service (OES) parts after the OE production program life has ended in order to fulfill all obligations to the customer. Royalty payments under the Strategic Development Agreement will continue to be calculated based on past practice for sales of product in that period. Company may freely assign the Strategic Development Agreement and the rights granted pursuant to the Strategic Development Agreement without the consent of Delphi Technologies, Inc., Delphi Corporation or any Delphi Affiliated Party in connection with the disposition of all or substantially all of the business to which the rights pertain, or in connection with the transfer of the operations of the Company to one or more of its Affiliates, and at any other time by Company with the prior consent of Delphi Technologies, Inc. and any other necessary Delphi Affiliated Party, which consent shall not be unreasonably withheld. Purchaser shall cause the Company to bring any past due amounts under the License Agreements current on or before Closing.

8.    <u>Intellectual Property License</u>.    Company has received from Delphi Affiliated Parties information and data that may qualify as intellectual property of Delphi Technologies, Inc. or other Delphi Affiliated Parties (collectively, the **"Delphi IP"**). Company has received licenses from Delphi Technologies, Inc. and other Delphi Affiliated Parties to utilize certain Delphi IP in accordance with the terms of such License Agreements. The parties acknowledge that Delphi IP is currently used in connection with the business of Company, and the parties intend for Company, following Purchaser's acquisition of the Interest from Seller, to have the unlimited right to continue to use Delphi IP other than the Delphi IP that is governed by a License Agreement without further payment of any kind whatsoever to any Delphi Affiliated Party. Accordingly, Delphi Technologies, Inc. and Delphi Corporation (on behalf of itself and all Delphi Affiliated Parties): (a) grants to Company the perpetual, irrevocable, royalty-free, worldwide right to use Delphi IP other than Delphi IP governed by any License Agreement in connection with the manufacture, use, sale, offer for sale, importation and other exploitation of brake calipers by the Company; (b) discharges and releases Company and its Affiliates from the obligation to make any payments related to the Delphi IP other than the Delphi IP governed by a License Agreement; and (c) agrees not to assert any claim of infringement of the Delphi IP other than the Delphi IP governed by a License Agreement against Company or any of its Affiliates, or their customers, mediate or immediate, because of the manufacture, use, sale, offer for sale, importation or other exploitation of brake calipers by the Company. Company may freely assign the preceding rights without the consent of Delphi Technologies, Inc., Delphi Corporation or any Delphi Affiliated Party in connection with the disposition of all or substantially all of the

Delphi Corporation
Mr. Bellar
July 30, 2009
Page 5

business to which the rights pertain, or in connection with the transfer of the operations of the Company to one or more of its Affiliates, and at any other time by Company with the prior consent of Delphi Technologies, Inc. and any other necessary Delphi Affiliated Party, which consent shall not be unreasonably withheld. Subject to receipt of the Sale Approval, Dephi Technologies, Inc. and Delphi Corporation represent and warrant that they have full capacity, power and authority to enter into and grant the license set forth in this Section 8, such license shall be binding on their successors and assigns, and is enforceable in accordance with its terms.

9.    Modification Approval Order. In the event that an order (the "**Modification Approval Order**") confirming certain modifications to the confirmed First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-In-Possession (As Modified) (the "**Modified Plan**") is entered on or before the Closing, Seller shall affirm at the hearing on approval of the Modified Plan and shall include a provision in the Modification Approval Order that (a) the objection filed by PBRT to the Modified Plan (the "**PBRT Objection**") will be scheduled for a hearing on August 17, 2009, at 10:00 a.m. (prevailing Eastern time) (the "**August 17 Hearing**"); provided, however, that notwithstanding any provisions in the Modification Approval Order, this Agreement constitutes notice to PBRT of the adjournment of the hearing on the PBRT Objection from the August 17 Hearing in the Bankruptcy Court regarding all objections to the Modified Plan relating to assumption and/or assignment (the "**Assumption Objections**") to a date to be determined in accordance with the applicable procedures for the Assumption Objections (the "**Assumption Hearing**") and (b) the Debtors shall have the right to reject the Operating Agreement for a period of six days after entry of a Final Order establishing cure or adequate assurance on terms not reasonably acceptable to the Debtors. The parties agree that the Modification Approval Order shall in no way provide for the assumption and/or assignment of the Operating Agreement and the rights of the parties with respect to the assumption and/or assignment of the Operating Agreement and the PBRT Objection will be preserved and will not be prejudiced until the Bankruptcy Court holds a hearing on the PBRT Objection. For the avoidance of doubt, until the Bankruptcy Court rules on the PBRT Objection to the Modified Plan at the Assumption Hearing, neither the confirmation or the consummation of the Modified Plan, nor the closing of the Master Disposition Agreement will affect the assumption and/or assignment of the Operating Agreement or the PBRT Objection. The Modification Approval Order shall provide that, notwithstanding anything in the Modified Plan or the Master Disposition Agreement to the contrary, the Bankruptcy Court shall retain jurisdiction over the PBRT Objection, the assumption and/or assignment of the Operating Agreement, the Assumption Hearing, and this Letter Agreement. In the event that the transactions contemplated by this Letter Agreement close, then the PBRT Objection shall become moot and as soon as practicable PBRT shall withdraw the PBRT Objection with prejudice.

10.    Amendment of Limited Liability Company Agreement. Seller shall ratify, adopt and approve the following amendment to the limited liability operating agreement between Seller

Delphi Corporation
Mr. Bellar
July 30, 2009
Page 6

and PBR Tennessee Inc. entered into on September 26, 1996 (the "**Operating Agreement**") to allow for the transfer contemplated by this Letter Agreement: At the end of Section 9.1 of the Operating Agreement, the following language is to be added: " ; provided, however, the Members agree that the transfer of the entire membership interest in the Company owned by Delphi Automotive Systems Tennessee, Inc. or any other Delphi affiliate as contemplated in that certain Letter Agreement dated July 30, 2009 shall be permitted, and shall not constitute a violation of this Agreement."

    11.    <u>Taxes</u>.  The parties will cooperate as reasonably requested in preparation of the United States partnership tax return, on all tax matters related to the transaction, and on all tax compliance matters that pertain to the partnership in general, and as part of the purchase and sale agreement.

    12.    <u>Miscellaneous</u>.  All of the terms of this Letter Agreement will be binding upon, inure to the benefit of and be enforceable by and against the successors and authorized assigns of the parties. Nothing in this Letter Agreement, express or implied, is intended to confer upon any other person any rights or remedies under or by reason of this Letter Agreement, this Letter Agreement being for the exclusive benefit of the parties and their respective successors and authorized assigns. No party will assign any of its respective rights or obligations under this Letter Agreement to any other person without the prior written consent of all of the other parties. This Letter Agreement and the agreements referred to in this Letter Agreement set forth the entire agreement and understanding of the parties in respect of the transactions contemplated by this Letter Agreement and supersede all prior agreements, arrangements and understandings relating to the subject matter hereof. This Letter Agreement may be amended, modified, superseded or canceled and any of the terms, covenants, representations, warranties or conditions hereof may be waived only by a written instrument executed by the parties or, in the case of a waiver, by or on behalf of the party waiving compliance. Any provision, or clause of any provision, of this Letter Agreement that may be found to be contrary to Michigan law or otherwise unenforceable will not affect the remaining terms of this Letter Agreement, which will be construed as if the unenforceable provision or clause was absent from this Letter Agreement. This Letter Agreement will be governed by and construed in accordance with the laws of the state of Michigan as applicable to contracts made and to be performed in the state of Michigan without regard to conflict of laws principles. This Letter Agreement may be executed in counterparts, each of which when so executed will be deemed to be an original and such counterparts will together constitute one and the same agreement. Each of the parties acknowledges and agrees that the other parties may be damaged irreparably in the event any of the provisions of this Letter Agreement are not performed in accordance with their specific terms or otherwise are breached. Accordingly, each of the parties agrees that the other parties shall be entitled to seek an injunction or injunctions to prevent breaches of the provisions of this Letter Agreement and to enforce specifically this Letter Agreement and the terms and provisions hereof in any action instituted in any court of the United States or any state thereof having jurisdiction

Delphi Corporation
Mr. Bellar
July 30, 2009
Page 7

over the parties, in addition to any other remedy to which they may be entitled, at law or in
equity.

[remainder of page left intentionally blank]

Delphi Corporation
Mr. Bellar
July 30, 2009
Page 8

　　　　The parties below agree to the terms and conditions set forth in this Letter Agreement as of the date first written above.

ROBERT BOSCH LLC

DELPHI AUTOMOTIVE SYSTEMS TENNESSEE, INC.

By:＿＿＿＿＿＿＿＿＿＿＿＿

Its: _Executive Vice President, Finance,_
_Controlling & Administration_

By:＿＿＿＿＿＿＿＿＿＿＿＿

Its:＿＿＿＿＿＿＿＿＿＿＿＿

"Seller"

And By:＿＿＿＿＿＿＿＿＿＿＿＿

Its: _Vice President, General Counsel & Secretary_

"Purchaser"

Solely for purposes of Sections 7 and 8 of this Letter Agreement

DELPHI CORPORATION (on behalf of itself and its Affiliates)

Solely for purposes of Section 8 of this Letter Agreement

DELPHI TECHNOLOGIES, INC.

By:＿＿＿＿＿＿＿＿＿＿＿＿

Its:＿＿＿＿＿＿＿＿＿＿＿＿

By:＿＿＿＿＿＿＿＿＿＿＿＿

Its:＿＿＿＿＿＿＿＿＿＿＿＿

1687092

Delphi Corporation
Mr. Bellar
July 30, 2009
Page 8


        The parties below agree to the terms and conditions set forth in this Letter Agreement as
of the date first written above.

ROBERT BOSCH LLC                    DELPHI AUTOMOTIVE SYSTEMS
                                    TENNESSEE, INC.


By:_____        By: _____

    Its:_____            Its:_____

                                                                    "Seller"


And By:_____

    Its:_____

                "Purchaser"


Solely for purposes of Sections 7 and 8 of this    Solely for purposes of Section 8 of this
Letter Agreement                                   Letter Agreement

DELPHI CORPORATION (on behalf of                   DELPHI TECHNOLOGIES, INC.
itself and its Affiliates)

By: _____                  By:_____

    Its:_____                   Its:_____

1687092

Delphi Corporation
Mr. Bellar
July 30, 2009
Page 8


    The parties below agree to the terms and conditions set forth in this Letter Agreement as of the date first written above.

ROBERT BOSCH LLC                    DELPHI AUTOMOTIVE SYSTEMS
                                    TENNESSEE, INC.


By:_____        By:_____

    Its:_____        Its:_____

                                                        "Seller"


And By:_____

    Its:_____

                "Purchaser"


Solely for purposes of Sections 7 and 8 of this    Solely for purposes of Section 8 of this
Letter Agreement                                   Letter Agreement

DELPHI CORPORATION (on behalf of    DELPHI TECHNOLOGIES, INC.
itself and its Affiliates)


By:_____        By:___*T. G. FORBES*___

    Its:_____        Its:___VICE-PRESIDENT___

1687092

**<u>EXHIBIT A</u>**

**<u>FORM OF STIPULATION AND AGREED ORDERS</u>**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler

   - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York, 10036
(212) 735-3000
Kayalyn A. Marafioti

Attorneys for Delphi Corporation, et al.,
Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                        :

|  |  |  |
|---|---|---|
| In re | : | Chapter 11 |
|  | : |  |
| DELPHI CORPORATION, et al., | : | Case No. 05–44481 (RDD) |
|  | : |  |
| Debtors. | : | (Jointly Administered) |
|  | : |  |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

JOINT STIPULATION AND AGREED ORDER (I) WITHDRAWING DEBTORS'
OBJECTIONS TO PROOF OF CLAIM NUMBER 5980 AND RESPONSES OF PBR
KNOXVILLE LLC TO CLAIMS OBJECTIONS, (II) ALLOWING PROOF OF CLAIM
NUMBER 5980, AND (III) DISALLOWING PROOF OF CLAIM NUMBER 15847
(PBR KNOXVILLE LLC)

Delphi Corporation and certain of its subsidiaries and affiliates, including Delphi

Automotive Systems LLC ("DAS LLC") and Delphi Automotive Systems Tennessee, Inc.

("DAST"), debtors and debtors-in-possession in the above-captioned cases (collectively, the

"Debtors") and PBR Knoxville LLC ("PBR Knoxville"), respectfully submit this Joint

Stipulation And Agreed Order (I) Withdrawing Debtors' Objections To Proof Of Claim Number

5980 And Responses Of PBR Knoxville LLC To Claims Objections, (II) Allowing Proof Of

Claim Number 5980, And (III) Disallowing Proof Of Claim Number 15847 (PBR Knoxville

LLC) and agree and state as follows:

      WHEREAS, on October 8, 2005, the Debtors filed voluntary petitions under

chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as then amended, in the

United States Bankruptcy Court for the Southern District of New York.

      WHEREAS, on May 16, 2006, PBR Knoxville filed proof of claim number 5980

against Delphi, asserting an unsecured non-priority claim in the amount of $9,157,458.38 and a

secured claim in the amount of $63,308.80, for a combined total of $9,225,767.18 ("Claim No.

5980") arising from the sale of goods to DAS LLC.

      WHEREAS, on July 19, 2006, PBR Knoxville transferred the unsecured non-

priority portion of Claim No. 5980 in the amount of $9,157,458.38 (the "Transferred Portion") to

Merrill Lynch Credit Products, LLC pursuant to a notice of transfer (Docket No. 4611) (the

"Claim Transfer").

      WHEREAS, on August 4, 2006, Merrill Lynch Credit Products, LLC transferred

its portion of Claim No. 5980 to Special Situations Investing Group, Inc. pursuant to a notice of

transfer (Docket No. 4862).

      WHEREAS, on August 9, 2006, PBR Knoxville filed proof of claim number

15847 against DAST, asserting an unliquidated claim ("Claim No. 15847").

      WHEREAS, on October 31, 2006, the Debtors objected to Claim No. 15847

pursuant to the Debtors' (I) Third Omnibus Objection (Substantive) Pursuant to 11 U.S.C. §

502(b) and Fed.R.Bankr.P. 3007 to Certain (A) Claims with Insufficient Documentation, (B)

Claims Unsubstantiated by Debtors' Books and Records, and (C) Claims Subject to Modification

and (II) Motion to Estimate Contingent and Unliquidated Claims Pursuant to 11 U.S.C. § 502(c)

(the "Third Omnibus Claims Objection").

        WHEREAS, on November 22, 2006, PBR Knoxville filed its Response to the

Debtors' Second Omnibus Objection (Procedural) Pursuant to 11 U.S.C. § 502(B) and

Fed.R.Bankr.P.3007 to Certain (I) Equity Claims, (II) Claims Duplicative of Consolidated

Trustee or Agent Claims, and (III) Duplicate and Amended Claims and Debtors' (I) Third

Omnibus Objection (Substantive) Pursuant to 11 U.S.C. § 502(B) and Fed.R.Bankr.P.3007 to

Certain (A) Claims with Insufficient Documentation, (B) Claims Unsubstantiated by Debtors'

Books and Records, and (C) Claims Subject to Modification and (II) Motion to Estimate

Contingent and Unliquidated Claims Pursuant to 11 U.S.C. § 502(C) (Docket No. 5740) (the

"Third Objection Response").

        WHEREAS, on October 27, 2007, the Debtors objected to Claim No. 5980

pursuant to the Debtors' Twenty-Second Omnibus Objection Pursuant To 11 U.S.C. § 502(b) and

Fed. R. Bankr. P. 3007 To Certain (A) Duplicate Or Amended Claims, (B) Equity Claims, (C)

Insufficiently Documented Claims, (D) Claims Not Reflected On Debtors' Books and Records,

(E) Untimely Claims, and (F) Claims Subject To Modification, Tax Claims Subject To

Modification, Modified Claims Asserting Reclamation, Claims Subject To Modification That

Are Subject To Prior Orders, And Modified Claims Asserting Reclamation That Are Subject To

Prior Orders (Docket No. 10738) (the "Twenty-Second Omnibus Claims Objection").

        WHEREAS, on November 20, 2007, PBR Knoxville filed its Response of PBR

Knoxville LLC To Debtors' Twenty Second Omnibus Objection Pursuant to 11 U.S.C. § 502(b)

And Fed. R. Bankr. P. 3007 To Certain (A) Duplicate Or Amended Claims, (B) Equity Claims, (C) Insufficiently Documented Claims, (D) Claims Not Reflected On Debtors' Books And Records, (E) Untimely Claims, And (F) Claims Subject To Modification, Tax Claims Subject To Modification, Modified Claims Asserting Reclamation, Claims Subject To Modification That Are Subject to Prior Orders, And Modified Claims Asserting Reclamation That Are Subject To Prior Orders (Docket No. 10989) (the "Twenty-Second Objection Response").

WHEREAS, on November 14, 2008, the Debtors objected to Claim No. 5980 pursuant to the Debtors' Thirty-Second Omnibus Objection Pursuant to 11 U.S.C. § 502(b) and Fed. R. Bankr. P. 3007 Regarding (A) Asserted Amount Claims, (B) Claims Subject to Modification, and (C) Claims to be Expunged (Docket No. 14442) (the "Thirty-Second Omnibus Claims Objection").

WHEREAS, on December 10, 2008, PBR Knoxville filed its Limited Response Of PBR Knoxville LLC To Debtors' Thirty-Second Omnibus Objection Pursuant To 11 U.S.C. 502(b) And Fed. R. Bankr. P. 3007 Regarding (A) Asserted Amount Claims, (B) Claims Subject to Modification, and (C) Claims to be Expunged (Docket No. 14577) (the "Thirty- Second Objection Response," together with the Third Objection Response and the Twenty-Second Objection Response, the "Responses").

WHEREAS, to resolve the Twenty-Second Omnibus Claims Objection and the Thirty-Second Omnibus Claims Objection with respect to Claim No. 5980 and provide for the disallowance and expungement of Claim No. 15847, DAS LLC and PBR Knoxville entered into this Joint Stipulation and Agreed Order.

WHEREAS, PBR Knoxville represents that it has full capacity, power, and authority to enter into and perform this Joint Stipulation and to withdraw its Responses to the Third Omnibus Claims Objection, the Twenty-Second Omnibus Claims Objection and the

Thirty-Second Omnibus Claims Objection with prejudice.

THEREFORE, the Debtors and PBR Knoxville stipulate and agree as follows:

1.      The Debtors are hereby deemed to have withdrawn the Twenty-Second Omnibus Claims Objection and the Thirty-Second Omnibus Claims Objection with respect to Claim No. 5980.

2.      PBR Knoxville is hereby deemed to have withdrawn its Responses to the Third Omnibus Claims Objection, the Twenty-Second Omnibus Claims Objection, and the Thirty-Second Omnibus Claims Objection with prejudice.

3.      Claim No. 5980 shall be allowed in the amount of $9,225,767.18 and shall be treated as an allowed general unsecured non-priority claim against the estate of DAS LLC.

4.      Claim No. 15487 shall be disallowed and expunged in its entirety.

So Ordered in New York, New York, this _____ day of July, 2009

_____
UNITED STATES BANKRUPTCY JUDGE

AGREED TO AND
APPROVED FOR ENTRY:

| | |
|---|---|
| John Wm. Butler, Jr. | Judy O'Neill |
| John K. Lyons | FOLEY & LARDNER LLP |
| Ron E. Meisler | 500 Woodward Ave., Suite 2700 |
| SKADDEN, ARPS, SLATE, MEAGHER | Detroit, MI 48226 |
| & FLOM LLP | (313) 234-7100 |
| 155 North Wacker Drive | Attorneys for PBR Knoxville LLC |
| Chicago, Illinois 60606-1285 | |
| (312) 407-0700 | |

- and –

Kayalyn A. Marafioti
SKADDEN, ARPS, SLATE, MEAGHER
   & FLOM LLP Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York, 10036
(212) 735-3000
Kayalyn A. Marafioti

Attorneys for Delphi Corporation, et al.,
  Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |  |
|---|---|---|
| | : | |
| In re | : | Chapter 11 |
| | : | |
| DELPHI CORPORATION, et al., | : | Case No. 05–44481 (RDD) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

JOINT STIPULATION AND AGREED ORDER (I) WITHDRAWING DEBTORS'

OBJECTIONS TO PROOF OF CLAIM NUMBER 2548 AND RESPONSES OF
PBR AUSTRALIA PTY LTD. TO CLAIMS OBJECTIONS AND
<u>(II) ALLOWING PROOF OF CLAIM NUMBER 2548</u>
(PBR AUSTRALIA PTY LTD.)

Delphi Corporation and certain of its subsidiaries and affiliates, including Delphi

Automotive Systems LLC ("DAS LLC"), debtors and debtors-in-possession in the above-

captioned cases (collectively, the "Debtors") and PBR Australia Pty Ltd. ("PBR Australia")

respectfully submit this Joint Stipulation And Agreed Order (I) Withdrawing Debtors' Objections

To Proof Of Claim Number 2548 And Responses Of PBR Australia Pty Ltd. To Claims

Objections And (II) Allowing Proof Of Claim Number 2548 (PBR Australia Pty Ltd.) (the "Joint

Stipulation and Agreed Order") and agree and state as follows:

WHEREAS, on October 8, 2005, the Debtors filed voluntary petitions under

chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as then amended, in the

United States Bankruptcy Court for the Southern District of New York.

WHEREAS, on April 4, 2006, PBR Australia filed proof of claim number 2548

against Delphi, asserting an unsecured non-priority claim in the amount of $562,192.18 (the

"Claim") arising from the sale of goods to DAS LLC.

WHEREAS, on July 19, 2006 and September 26, 2006, PBR Australia transferred

$338,801.98 of the Claim (the "Transferred Portion") to Merrill Lynch Credit Products, LLC

pursuant to two notices of transfer (Docket Nos. 4613 and 5193, respectively) (collectively, the

"Claims Transfers").


WHEREAS, on August 4, 2006 and September 26, 2006, Merrill Lynch Credit

Products, LLC transferred the Transferred Portion of the Claim to Special Situations Investing

Group, Inc. pursuant to two notices of transfer (Docket Nos. 4860 and 5195, respectively).

WHEREAS, on July 13, 2007, the Debtors objected to the Claim pursuant to the

Debtors' Nineteenth Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed.

R. Bankr. P. 3007 To Certain (A) Insufficiently Documented Claims, (B) Claims Not Reflected

On Debtors' Books And Records, (C) Untimely Claim, And (D) Claims Subject To Modification,

Tax Claims Subject To Modification, Modified Claims Asserting Reclamation, And

Consensually Modified And Reduced Claims (Docket No. 8617) (the "Nineteenth Omnibus

Claims Objection").

WHEREAS, on August 8, 2007, PBR Australia filed its Response Of PBR

Australia Party Ltd. To Debtors' Nineteenth Omnibus Objection (Substantive) Pursuant To 11

U.S.C. § 502(B) And Fed. R. Bankr. P. 3007 To Certain (A) Insufficiently Documented Claims,

(B) Claims Not Reflected On Debtors' Book And Records, (C) Untimely Claim, And (D) Claims

Subject To Modification, Tax Claims Subject To Modification, Modified Claims Asserting

Reclamation, And Consensually Modified And Reduced Claims (Docket No. 8939) (the

"Response").

WHEREAS, on November 14, 2008, the Debtors objected to the Claim pursuant

to the Debtors' Thirty-Second Omnibus Objection Pursuant to 11 U.S.C. § 502(b) and Fed. R.

Bankr. P. 3007 Regarding (A) Asserted Amount Claims, (B) Claims Subject to Modification,

and (C) Claims to be Expunged (Docket No. 14442) (the "Thirty-Second Omnibus Claims

Objection").

WHEREAS, on December 10, 2008, PBR Australia filed its Response Of PBR

Australia Party Ltd. To Debtors' Thirty-Second Omnibus Objection Pursuant To 11 U.S.C.

502(b) And Fed. R. Bankr. P. 3007 Regarding (A) Asserted Amount Claims, (B) Claims Subject

to Modification, and (C) Claims to be Expunged (Docket No. 14575) (the "Second Response").

        WHEREAS, to resolve the Nineteenth Omnibus Claims Objection and the Thirty-

Second Omnibus Claims Objection, the Debtors and PBR Australia entered into this Joint

Stipulation and Agreed Order.

        WHEREAS, PBR Australia represents that it has full capacity, power, and

authority to enter into and perform this Joint Stipulation and Agreed Order and to withdraw its

Responses to the Nineteenth Omnibus Claims Objection and its Second Response to the Thirty-

Second Omnibus Claims Objection with prejudice or agree to have its Responses withdrawn

with prejudice.

        THEREFORE, the Debtors and PBR Australia stipulate and agree as follows:

    5.     The Debtors are hereby deemed to have withdrawn the Nineteenth

Omnibus Claims Objection and the Thirty-Second Omnibus Claims Objection with respect to the

Claim.

    6.     PBR Australia is hereby deemed to have withdrawn its Response to the

Nineteenth Omnibus Claims Objection and its Second Response to the Thirty-Second Omnibus

Claims Objection with prejudice.

    7.     The Claim shall be allowed in the amount of $562,192.18 and shall be

treated as an allowed general unsecured non-priority claim against the estate of DAS LLC.

So Ordered in New York, New York, this _____ day of July __, 2009

_____

UNITED STATES BANKRUPTCY JUDGE

AGREED TO AND
APPROVED FOR ENTRY:

| | |
|---|---|
| John Wm. Butler, Jr. | Judy O'Neill |
| John K. Lyons | FOLEY & LARDNER LLP |
| Ron E. Meisler | 500 Woodward Ave., Suite 2700 |
| SKADDEN, ARPS, SLATE, MEAGHER | Detroit, MI 48226 |
|   & FLOM LLP | (313) 234-7100 |
| 155 North Wacker Drive | Attorneys for PBR Australia Pty Ltd. |
| Chicago, Illinois  60606-1285 | |
| (312) 407-0700 | |

- and –

Kayalyn A. Marafioti
Four Times Square
New York, New York  10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
  Debtors and Debtors-in-Possession

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York, 10036
(212) 735-3000
Kayalyn A. Marafioti

Attorneys for Delphi Corporation, et al.,
  Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                             :

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| DELPHI CORPORATION, et al., | : | Case No. 05–44481 (RDD) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

JOINT STIPULATION AND AGREED ORDER DISALLOWING AND EXPUNGING
PROOF OF CLAIM NUMBER 15883
(PBR TENNESSEE, INC.)

Delphi Corporation and certain of its subsidiaries and affiliates, including Delphi

Automotive Systems Tennessee, Inc. ("DAST"), debtors and debtors-in-possession in the above-

captioned cases (collectively, the "Debtors") and PBR Tennessee, Inc. ("PBR Tennessee")

respectfully submit this Joint Stipulation And Agreed Order Disallowing And Expunging Proof

Of Claim Number 15883 (PBR Tennessee, Inc.) (the "Stipulation") and agree and state as

follows:

WHEREAS, on October 8, 2005, the Debtors filed voluntary petitions under

chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as then amended, in the

United States Bankruptcy Court for the Southern District of New York.

WHEREAS, on August 9, 2006, PBR Tennessee filed proof of claim number

15883 against DAST, asserting an unliquidated claim (the "Claim").

WHEREAS, on October 31, 2006, the Debtors objected to the Claim pursuant to

the Debtors' (I) Third Omnibus Objection (Substantive) Pursuant to 11 U.S.C. § 502(b) and

Fed.R.Bankr.P. 3007 to Certain (A) Claims with Insufficient Documentation, (B) Claims

Unsubstantiated by Debtors' Books and Records, and (C) Claims Subject to Modification and (II)

Motion to Estimate Contingent and Unliquidated Claims Pursuant to 11 U.S.C. § 502(c) (the

"Third Omnibus Claims Objection").

WHEREAS, on November 22, 2006, PBR Tennessee filed its Response to the

Debtors' Second Omnibus Objection (Procedural) Pursuant to 11 U.S.C. § 502(B) and

Fed.R.Bankr.P.3007 to Certain (I) Equity Claims, (II) Claims Duplicative of Consolidated

Trustee or Agent Claims, and (III) Duplicate and Amended Claims and Debtors' (I) Third

Omnibus Objection (Substantive) Pursuant to 11 U.S.C. § 502(B) and Fed.R.Bankr.P.3007 to

Certain (A) Claims with Insufficient Documentation, (B) Claims Unsubstantiated by Debtors'

Books and Records, and (C) Claims Subject to Modification and (II) Motion to Estimate

Contingent and Unliquidated Claims Pursuant to 11 U.S.C. § 502(C) (Docket No. 5740) (the

"Third Objection Response").

       WHEREAS, to resolve the Third Omnibus Claims Objection with respect to the

Claim, DAST and PBR Tennessee entered into this Stipulation, pursuant to which PBR

Tennessee acknowledges and agrees that the Claim shall be disallowed and expunged in its

entirety.

       WHEREAS, DAST  is authorized to enter into this Stipulation either because the

Claim involves ordinary course controversies or pursuant to that certain Amended And Restated

Order Under 11 U.S.C. §§ 363, 502, And 503 And Fed. R. Bankr. P. 9019(b) Authorizing

Debtors To Compromise Or Settle Certain Classes Of Controversy And Allow Claims Without

Further Court Approval (Docket No. 8401) entered by this Court on June 26, 2007.

       THEREFORE, DAST and PBR Tennessee stipulate and agree as follows:

    1.   The Claim shall be disallowed and expunged in its entirety.

    2.   PBR Tennessee shall withdraw its Response with prejudice.

So Ordered in New York, New York, this ____ day of July __, 2009

                                   _____

                                  UNITED STATES BANKRUPTCY JUDGE

AGREED TO AND
APPROVED FOR ENTRY:

John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler
SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP
155 North Wacker Drive
Chicago, Illinois  60606-1285
(312) 407-0700

         - and –

   Kayalyn A. Marafioti
Four Times Square
New York, New York  10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

Judy O'Neill
FOLEY & LARDNER LLP
500 Woodward Ave., Suite 2700
Detroit, MI 48226
(313) 234-7100

Attorneys for PBR Tennessee, Inc.