**Hearing Date & Time:  August 17, 2009 at 10:00 a.m. (prevailing Eastern time)**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti

Attorneys for Delphi Corporation, et al.,
 Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
: 
In re : Chapter 11
:
DELPHI CORPORATION, et al., : Case No. 05-44481 (RDD)
:
Debtors. : (Jointly Administered)
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DEBTORS' OMNIBUS REPLY TO CERTAIN OBJECTIONS TO
NONASSUMPTION OF CERTAIN CONTRACTS AND LEASES,
ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND
<u>UNEXPIRED LEASES, AND CURE AMOUNTS</u>

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this omnibus reply (the "Reply") to certain objections to nonassumption, assumption and assignment of executory contracts and unexpired leases, and cure amounts that were previously adjourned to the hearing scheduled for August 17, 2009 pursuant to the Notice Of Adjournment Of Hearing On Objections To Notices Of Nonassumption, Cure Amounts, And Assumption And Assignment Of Executory Contracts And Unexpired Leases To August 17, 2009 (Docket No. 18649) and paragraph 40 of the Modification Approval Order (Docket No. 18707). Capitalized terms used and not otherwise defined herein have the meanings ascribed to them in the First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-In-Possession (As Modified) (the "Modified Plan"). In support of this Reply, the Debtors respectfully represent as follows:

Preliminary Statement

1.  Various contract counterparties (the "Objectors") have objected to (i) nonassumption of certain contracts and leases, (ii) adequate assurance of future performance, (iii) assumption and/or assignment with respect to executory contracts or unexpired leases to be assumed and/or assigned under the Modified Plan; and/or (iv) cure amounts (together, the "Section 365 Objections"). The Debtors request (i) an order overruling certain of the Section 365 Objections on the merits, (ii) a finding by this Court that the determinations in the Modification Approval Order regarding adequate assurance of future performance under section 365(f)(2) of the Bankruptcy Code apply to the adequate assurance of future performance arguments raised in the Section 365 Objections addressed herein, (iii) an order that Postpetition Obligation Objections (defined below) shall be treated as Administrative Claims, and (iv) an

2

order resolving certain Section 365 Objections as agreed to by the parties. Contemporaneous with the filing of this Reply, the Debtors are filing a notice of adjournment, adjourning the remaining Section 365 Objections to hearings scheduled for August 28, 2009 and September 24, 2009, subject to further adjournment by the Debtors in accordance with the Modification Approval Order.

        2.        As of the filing of this Reply, 61 Objectors have filed Section 365 Objections. This Reply specifically addresses the objections of American Aikoku Alpha, Inc. and Spartech Corporation and Spartech Polycom, Inc.[1] In addition, the Debtors have worked with various counterparties and accordingly 14 Objectors have withdrawn, settled, or otherwise resolved their Section 365 Objections (the "Resolved Objections"). Hearings on the remaining 45 Objectors' Section 365 Objections have been adjourned to the August 28 and September 24, 2009 hearings. The Debtors hope to reach, or in some cases have reached in principle, agreements to resolve many of the adjourned objections and will continue to work to achieve consensual resolutions of the remaining Section 365 Objections prior to these hearings.

---

[1] Pursuant to this Reply, the Debtors specifically address the following Section 365 Objections: (i) Limited Objection Of American Aikoku Alpha, Inc. To The First Amended Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-in-Possession, As Modified, dated July 9, 2009 (Docket No. 17767), (ii) Limited Objection Of American Aikoku Alpha, Inc. To The First Amended Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession Possession, As Modified, dated July 9, 2009 (Docket No. 17773), (iii) Limited Objection Of American Aikoku Alpha, Inc. To Notice Of Assumption And Assignment With Respect To Certain Executory Contracts Or Unexpired Leases To Be Assumed And Assigned To GM Components Holdings, LLC Or Steering Solutions Services Corporation, As Applicable, Under Modified Plan Of Reorganization, dated July 17,2009 (Docket No. 18395), and (iv) Objection Of Spartech Corporation And Spartech Polycom, Inc. To DIP Holdco 3, LLC's Assumption And Assignment Notice, dated August 6, 2009 (Docket No. 18754).

A.   The Objections Of American Aikoku Alpha, Inc. And Spartech Corporation And Spartech Polycom, Inc. Should Be Overruled

3.   As set forth more fully below, several of the Section 365 Objections erroneously dispute the Debtors' proposed treatment of certain contracts under the Modified Plan and the Master Disposition Agreement.

(a)   American Aikoku's Objection

4.   On July 2, 2009, the Debtors served American Aikoku Alpha, Inc. ("American Aikoku") with their Notice of Nonassumption Under the Modified Plan with Respect to Certain Expired or Terminated Contracts or Leases Previously Deemed to be Assumed or Assumed and Assigned Under Confirmed Plan of Reorganization (the "Notice of Nonassumption"), which identified Purchase Order SAG90I2815 as a contract that had expired, would not be assumed by the Debtors, and was not entitled receive a cure payment. See Affidavit of Service of Evan Gershbein re: Notice of Nonassumption Under the Modified Plan with Respect to Certain Expired or Terminated Contracts or Leases Previously Deemed to be Assumed or Assumed and Assigned Under Confirmed Plan of Reorganization (Docket No. 17728).

5.   American Aikoku has filed three essentially identical objections[2] claiming that the Debtors are required to assume Purchase Order SAG90I2815 and pay $275,636.94 to cure defaults under that contract. In its objections, American Aikoku argues that a stipulation

---

[2] On July 9, 2009, American Aikoku filed its Limited Objection Of American Aikoku Alpha, Inc. To The First Amended Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession, As Modified (Docket No. 17767) and its Limited Objection Of American Aikoku Alpha, Inc. To The First Amended Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession Possession, As Modified (Docket No. 17773). On July 17, 2009, American Aikoku filed its Limited Objection Of American Aikoku Alpha, Inc. To Notice Of Assumption And Assignment With Respect To Certain Executory Contracts Or Unexpired Leases To Be Assumed And Assigned To GM Components Holdings, LLC Or Steering Solutions Services Corporation, As Applicable, Under Modified Plan Of Reorganization (Docket No. 18395).

4

from May 2008, which established the cure amount to be paid in connection with the Debtors' proposed sale of their Steering Business to Steering Solutions Corporation, meant that the Debtors were required to pay the cure amount associated with prepetition Purchase Order SAG90I2815 (the "Prepetition Purchase Order") even if the Debtors were no longer assuming and assigning that contract. On July 29, 2009, this Court ruled that the May 2008 stipulation did not require this cure payment because the transaction with Steering Solutions Corporation did not close.

     6.   The stipulation had been based on an Assumption Notice (Docket No. 12323) and a Cure Notice (Docket No. 12324) served on or about January 23, 2008. In the meantime, on January 29, 2008, Delphi and American Aikoku entered into a new postpetition contract (the "Postpetition Purchase Order"). Although the contract continued to refer to the same purchase order number for administrative convenience, the parties modified their relationship by (i) negotiating an additional year beyond the scheduled expiration of the previous contract, (ii) altering the pricing in response to a quote provided by American Aikoku, and (iii) adding a provision that made clear that the Postpetition Purchase Order would no longer be subject to assumption or rejection under the Bankruptcy Code and that American Aikoku waived any right to cure. The Postpetition Purchase Order expressly stated the following:

> As of its effective date, this purchase order constitutes a new agreement between the buyer and seller and supersedes and replaces any prior purchase orders or other agreements between the buyer and seller with respect to the subject matter hereof. For the avoidance of doubt, the purchase order number assigned hereto by the buyer is utilized for administrative convenience only and this purchase order shall not be deemed an amendment to or modification of any prior purchase orders issued by buyer and accepted by seller, even if such prior purchase orders were assigned an identical purchase order number by the buyer. Each of the buyer and the seller acknowledges and agrees that any prior purchase orders or other agreements between the buyer and seller, which are

5

>superseded and replaced by this purchase order as of its effective date shall no longer be subject to assumption or rejection under the United States Bankruptcy Code and the seller hereunder waives any right to assert any of the rights incident to assumption or rejection, including, but not limited to, the payment of cure with respect to any such prior purchase orders or other agreements. To the extent that any prior purchase orders or other agreements between the buyer and seller with respect to the subject matter hereof also provided for the supply or other goods or services by the seller to the buyer, such prior agreements shall be superseded and replaced only with respect to the subject matter hereof and all other provisions of such prior purchase orders or other agreements shall remain in full force and effect in accordance with their terms.

American Aikoku has performed under the Postpetition Purchase Order for more than 18 months and therefore has waived any right to assert cure for prepetition defaults arising under the Prepetition Purchase Order.

       7.    "Assent to an offer may be indicated through actions." Kvaerner U.S., Inc. v. Hakim Plast Company, 74 F. Supp. 2d 709, 714 (E.D. Mich. 1999). American Aikoku has agreed to the terms of the Postpetition Purchase Order, including the extended term of the purchase order, by performing under the contract without asserting any reservation of rights under the previous contract. See MICH. COMP. LAWS ANN. § 440.2206(1) (West 2009) (order to buy goods may be accepted by prompt shipment). The Postpetition Purchase Order expressly incorporates Delphi's standard Terms and Conditions, providing that "Seller acknowledges and agrees that Buyer's general terms and conditions and customer specific requirements are incorporated in, and a part of, this contract." Delphi's General Terms and Conditions also state that acceptance of the offer to contract made by the Debtors through Purchase Order SAG90I2815 can be accepted either in writing or by performance. (Delphi's General Terms and Conditions ¶ 1.) Under the terms of the Postpetition Purchase Order, as well as the General Terms and Conditions, American Aikoku accepted the terms of the purchase order when it

performed in response to receipt of the Postpetition Purchase Order.  Moreover, American Aikoku accepted the 169.00 JPY piece price set forth in the Postpetition Purchase Order (not the 175.00 JPY piece price set forth in the Prepetition Purchase Order).[3]

8.      Furthermore, American Aikoku has waived its right to contest the validity of the Postpetition Purchase Order.  A waiver occurs when a party "with full knowledge of material facts, does or forbears to do something inconsistent with the existence of the right in question or his intention to rely on that right."  Fitzgerald v. Hubert Herman, 179 N.W.2d 252, 254 (Mich.App. 1970) (citations omitted).  American Aikoku received the Postpetition Purchase Order with the new term eliminating any right to cure payments, accepted the contract through performance, and did nothing to preserve its rights to cure payments under the Prepetition Purchase Order.  Accordingly, American Aikoku's objection should be overruled.

(b)     Spartech Corporation and Spartech Polycom, Inc.'s Objection

9.      On August 6, 2009, Spartech Corporation and Spartech Polycom, Inc. (together, "Spartech") filed their Objection Of Spartech Corporation And Spartech Polycom, Inc. To DIP Holdco 3, LLC's Assumption And Assignment Notice (Docket No. 18754).

10.     In accordance with paragraph 35 of the Modification Procedures Order (Docket No. 17032), on July 10, 2009, the Debtors served certain notices of assumption and assignment on certain parties whose contracts were going to be assumed by the Debtors and assigned to Parnassus (the "Parnassus Assumption and Assignment Notices").  Spartech received a Parnassus Assumption and Assignment Notice.  On July 27, 2009, the Debtors announced that DIP Holdco 3, LLC was the successful bidder for the Debtors' business that was previously

---

[3]   Once a contract modification has been established the only hurdle that must be overcome is that of good faith.  See MICH. COMP. LAWS ANN. 440.2209 (West 2009).  Under applicable Michigan law, consideration is not required for modifications.  See MICH. COMP. LAWS ANN. 440.2209(1) (2009).

7

being transferred to Parnassus. On that same day, the Debtors served a notice of assumption and assignment on the applicable counterparties notifying them that the contracts that were previously being assumed by the Debtors and assigned to Parnassus would now be assigned to DIP Holdoc 3, LLC. In accordance with paragraph 35 of the Modification Procedures Order, the DIP Holdco 3, LLC Assumption and Assignment Notice provided counterparties with an opportunity to object to adequate assurance of future performance of DIP Holdco 3, LLC. All other objections to assumption and assignment had to have been filed within ten days of service of the Parnassus Assumption and Assignment Notices.

11. Although Spartech did not object to the Parnassus Assumption and Assignment Notice, Spartech's objection to the DIP Holdco 3, LLC Assumption and Assignment Notice primarily asserts issues regarding the Debtors' assumption and assignment of Spartech's contracts that do not relate to adequate assurance. Accordingly, Spartech's objection is untimely as to all issues other than adequate assurance of future performance. In any event, the Debtors believe that that they have adequately identified Spartech's contracts to be assumed and assigned by listing contract number 55538 and the associated cure amount of $4,581.50.[4]

12. Although not properly raised in its objection to the DIP Holdco 3, LLC Assumption and Assignment Notice, the Debtors believe that the postpetition amount of $236,453.00 asserted in Spartech's objection references postpetition obligations under postpetition contracts which will be paid in the ordinary course. Accordingly, the asserted amount due is not on account of a default and therefore is not a cure claim or a proper

---

[4] Spartech also references its Notice of Proposed Cure Claim (Docket No. 13042), which asserted a cure claim of $1,832,945.29. Each of the purchase orders referenced in the Notice of Proposed Cure Claim are either expired purchase orders or postpetition purchase orders which will not be assumed by the Debtors and are not entitled to cure under section 365 of the Bankruptcy Code. Spartech has not presented any evidence supporting its Proposed Cure Claim. The Debtors believe that Spartech's Proposed Cure Claim has been resolved and that the only outstanding issue is payment of certain postpetition trade payables.

8

administrative expense claim. Spartech's objection to adequate assurance of future performance is addressed below.

B.  The Debtors Have Provided Adequate Assurance To Spartech Corporation And Spartech Polycom, Inc. As Required By Section 365 Of The Bankruptcy Code

13. Spartech's objection (Docket No. 18754) also asserts that the Debtors have failed to provide adequate assurance of future performance as required by section 365(f)(2) of the Bankruptcy Code. As set forth in the Modification Approval Order, the Debtors and the applicable Buyers have provided adequate assurance for each of the contracts and leases that are being assumed by the Debtors or the Buyers pursuant to the Modified Plan and the MDA Documents (the "Assumed Contracts And Leases"). (See Modification Approval Order ¶ DD.) In addition, certain parties, including Spartech Corporation and Spartech Polycom, Inc., have also requested clarification with respect to the treatment of postpetition obligations. As set forth below, outstanding postpetition obligations shall receive the treatment set forth in the Modified Plan and the Master Disposition Agreement.

(a)  The Debtors And The Buyers Have Provided Adequate Assurance Of Future Performance Under 11 U.S.C. § 365(f)(2)(B)

14. The Buyers' represented on the record at the hearing to consider approval of the Modified Plan that they are sufficiently capitalized to perform their obligations under the Assumed Contracts And Leases. The Debtors request that these findings be applied to overrule the Section 365 Objections addressed herein requesting adequate assurance of future performance pursuant to section 365(f)(2) of the Bankruptcy Code.

15. A debtor in possession may assign an executory contract or unexpired lease if it does so in accordance with section 365(a) and provides adequate assurance of future performance by the assignee. See 11 U.S.C. § 365(f)(2). Although not defined in the Bankruptcy Code, the meaning of "adequate assurance of future performance" depends on the facts of each

9

case, and Congress intended that it be given "practical, pragmatic construction." In re Sanshoe Worldwide Corp., 139 B.R. 585, 592 (S.D.N.Y. 1992) (citing In re Bygaph, 56 B.R. 596, 605 (Bankr. S.D.N.Y. 1986)); In re Natco Indus., Inc., 54 B.R. 436, 440 (Bankr. S.D.N.Y. 1985), aff'd, 993 F.2d 300 (2d Cir. 1993).

        16.     Adequate assurance under section 365 does not require an absolute guarantee of performance. See, e.g., Bygaph, 56 B.R. at 605-06 (adequate assurance of future performance present when prospective lease assignee with adequate financial resources has expressed willingness to devote funding sufficient to afford business strong likelihood of succeeding); In re Westview 74th St. Drug Corp., 59 B.R. 747, 754 (Bankr. S.D.N.Y. 1986) ("The test is not one of guaranty but simply whether it appears that the [obligations] will be paid and . . . met"); Natco, 54 B.R. at 440 ("As designed by Congress, the phrase [adequate protection] does not mean absolute insurance that the debtor will thrive and make a profit.") (citing In re Alipat, Inc., 36 B.R. 274, 278 (Bankr. E.D. Mo. 1984)). Among other things, adequate assurance may be provided by demonstrating the assignee's financial health and experience in managing the type of enterprise or property assigned. See, e.g., Richmond Leasing Co. v. Capital Bank, N.A., 762 F.2d 1303, 1309-10 (5th Cir. 1985) (adequate assurance was present where debtors' income was sufficient to make lease payments).

        17.     In approving the Modified Plan, the Court approved transactions with DIP Holdco 3, LLC and GM Components Holdings LLC that involve significant capital infusions. DIP Holdco 3, LLC has also entered into a commitment agreement for more than $3 billion of financing. Moreover, in approving the Modified Plan, this Court found that the Modified Plan and the transactions set forth in the Master Disposition Agreement "include a very significant commitment to continue funding by the two primary DIP lenders, Elliot Associates and Silver

Point, as well as by GM." <u>See</u> July 30, 2009 Hr'g Tr. at 54.  The Debtors and the Buyers have provided adequate assurance of future performance as required by section 365(f) of the Bankruptcy Code.  Accordingly, the Debtors request that the Court enter an order finding that the Buyers have provided adequate assurance of future performance under section 365(f) of the Bankruptcy Code and overrule Spartech's objection to assumption and assignment of Spartech's contracts to DIP Holdco 3, LLC in its entirety.

      (b)   <u>The Debtors Have Provided Adequate Assurance Of Prompt Cure Under 11 U.S.C. § 365(b)(1)(A)</u>

18.    The Debtors or the Buyers have cured, or provided adequate assurance that the Reorganized Debtors or the Buyers will cure defaults (if any) under or relating to each of the Assumed Contracts And Leases.  (<u>See</u> Modification Approval Order ¶ DD.)

19.    Pursuant to the terms of the Modified Plan and the Master Disposition Agreement, all applicable Cure Amounts in connection with the Assumed Contracts And Leases will be paid.  Any unpaid postpetition obligations arising under the Assumed and Assigned Contracts shall receive the treatment provided to Administrative Claims under Articles II and X of the Modified Plan.  Accordingly, the Debtors request that the Court enter an order finding that the Debtors have provided adequate assurance under section 365(b) of the Bankruptcy Code.

C.   <u>Claims For Postpetition Obligations That Are Entitled To Administrative Claim Treatment Need No Further Adequate Assurance Of Prompt Cure</u>

20.    Several of the Section 365 Objections assert claims for cure amounts based on obligations incurred after the Petition Date (the "Postpetition Obligation Objections").  It has been the Debtors' practice throughout these chapter 11 cases, however, to pay all postpetition expenses as they become due.  As a result, the Debtors' believe that most, if not all, of the valid, outstanding postpetition obligations referenced in the Postpetition Obligation Objections will be satisfied in the ordinary course of business.  And it was based on this premise

– that the Debtors' postpetition obligations are paid in the ordinary course – that the allocations for cure and Administrative Claim liabilities assumed by the Buyers were developed under the Master Disposition Agreement.[5]

21. The Debtors acknowledge the requirement under section 365(b) of the Bankruptcy Code that any postpetition defaults ultimately must be cured, or adequate assurance of prompt cure must be provided, before executory contracts are assumed and assigned. The Administrative Claims reconciliation process set forth in Articles II and X of the Modified Plan, however, meets this requirement. Accordingly, with respect to those Objectors who have filed Administrative Claims asserting the same amounts as are encompassed by the Postpetition Obligations, the Debtors contend that no further adequate assurance of prompt cure need be shown. To the extent that a counterparty who has asserted a Postpetition Obligation Objection has asserted and is found to be entitled to an Allowed Administrative Claim, the distribution received by the counterparty will be identical to any cure payment that the counterparty would otherwise be entitled to on account of the alleged postpetition obligations.

22. Likewise, with respect to Objectors who have asserted Postpetition Obligations Objections but who have not yet filed Administrative Claims, the Debtors propose that such claims should be dealt with in accordance with the procedures set forth in the Modified Plan for the payment of Administrative Claims.[6] To that end, the availability of the Administrative Claims process provides the Objectors with adequate assurance that valid

---

[5] Specific information regarding the Administrative Claim liabilities assumed by the Buyers is detailed on Schedule 1.1.A, which has been filed under seal with the Court.

[6] Pursuant to Articles II and X of the Modified Plan, any counterparty who wished to assert a postpetition default was required to file an Administrative Claim.

12

postpetition defaults will be promptly cured.[7] Thus, the Postpetition Obligations Objections should be overruled.

D.     Summary Of Resolved Objections

23.    As of the filing of this Reply, the Debtors have resolved 16 Section 365 Objections filed by 14 Objectors, as identified on Exhibit 1 attached hereto. The Debtors are continuing to work on resolutions to the remaining Section 365 Objections and, as explained above, are contemporaneously filing a notice of adjournment with respect to certain unresolved objections to provide additional time for the Debtors and the applicable counterparties to work out consensual resolutions to the outstanding objections. The Debtors believe that the proposed order attached hereto adequately addresses the issues raised by the Objections set forth on Exhibit 1. Thus, the Debtors request that the Court grant the relief requested.

---

[7] Nevertheless, to the extent that a counterparty asserting a Postpetition Obligation Objection is barred from pursuing an Administrative Claim, the Debtors propose that the counterparty should be allowed to reassert its claim for cure under section 365 of the Bankruptcy Code. In no event, however, should any counterparty with an allowed or disallowed Administrative Claim be entitled to relitigate the same postpetition obligation by asserting a cure claim under section 365.

WHEREFORE, the Debtors respectfully request that this Court (i) overrule the Section 365 Objections filed by American Aikoku and Spartech to the extent they have not been withdrawn, (ii) overrule Spartech's Objection and find that the Debtors and the Buyers have provided adequate assurance of future performance with respect to the Spartech Contracts, (iii) order that the Resolved Objections shall be subject to all findings and conclusions and decretal paragraphs of the Modification Approval Order, (iv) order that Postpetition Obligation Objections shall be treated as Administrative Claims, (v) enter an order in substantially the form attached hereto, and (vi) grant the Debtors such other and further relief as is just.

Dated: New York, New York
       August 14, 2009

>                SKADDEN, ARPS, SLATE, MEAGHER
>                 & FLOM LLP
>
> By:  /s/ John Wm. Butler, Jr.
>      John Wm. Butler, Jr.
>      John K. Lyons
>      Ron E. Meisler
> 155 North Wacker Drive
> Chicago, Illinois 60606
> (312) 407-0700
>
>                      - and -
>
> By:  /s/ Kayalyn A. Marafioti
>      Kayalyn A. Marafioti
> Four Times Square
> New York, New York 10036
> (212) 735-3000
>
> Attorneys for Delphi Corporation, et al.,
>        Debtors and Debtors-in-Possession