DUANE MORRIS LLP
1540 Broadway
New York, NY 10036-4086
Telephone: 212-692-1000
Gerard S. Catalanello, Esq.
James J. Vincequerra, Esq.

and

Paul D. Moore, Esq.
Jeffrey D. Sternklar, Esq.
Kara M. Zaleskas, Esq.
DUANE MORRIS LLP
470 Atlantic Avenue, Suite 500
Boston, Massachusetts 02210-2600
Telephone: 857-488-4200

*Counsel to Plymouth Rubber Company, LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| DELPHI CORPORATION, *et al.*, | Case No. 05-44481 (RDD) |
| Debtors. | (Jointly Administered) |

**REPLY OF PLYMOUTH RUBBER COMPANY, LLC TO DEBTORS'
OBJECTION TO MOTION REGARDING ADMINISTRATIVE CLAIM**

Plymouth Rubber Company, LLC ("**Plymouth Rubber**"), by and through its undersigned counsel, hereby submits this reply (the "**Reply**") to the *Debtors' Objection to Motion of Plymouth Rubber Company, LLC for Order Deeming Administrative Expense Claim of Plymouth Rubber Company, LLC Timely Filed and For Related Relief*, Docket No. 18792 (the "**Objection**").[1]

---

[1] Capitalized terms used herein shall have the meanings ascribed to them in the Objection or in the *Motion Of Plymouth Rubber Company, LLC For Order Deeming Administrative Claim Of Plymouth Rubber Company, LLC Timely Filed And For Related Relief*, Docket No. 18714 (the "**Motion**").

> **A.    The Debtors Did Not Accord Plymouth Rubber Due And Adequate Notice Of The Administrative Claims Bar Date.**

1.    The Debtors' primary argument in opposition to the Motion relies on two faulty premises: (i) that <u>Plymouth Rubber Company, Inc.</u>, the corporation which filed a claim against the Debtors approximately four years ago, and accordingly, to which the Debtors directed the Notices, is the same entity as <u>Plymouth Rubber Company, LLC</u>; and (ii) that Fed. R. Bankr. P. 2002(g) is applicable in determining whether Plymouth Rubber received due and adequate notice of the Administrative Claims Bar Date. Because neither of these presumptions is correct, the Debtors' arguments raised in the Objection regarding the sufficiency of notice of the Administrative Claims Bar Date to Plymouth Rubber, and whether the circumstances relating thereto evidence "excusable neglect," are baseless, and therefore should be dismissed by this Court.

> *1.    The Debtors' Assumption That Plymouth Rubber Is The Same Entity As Plymouth Rubber Company, Inc. Is Wrong.*

2.    Plymouth Rubber is **not** the same entity as Plymouth Rubber Company, Inc. It is a successor entity with different ownership, different corporate form and, importantly, different counsel.

3.    To fully comprehend the difference between the "Plymouth Rubber" entities, it is crucial to understand their histories. On July 5, 2005, <u>Plymouth Rubber Company, Inc.</u>, a Massachusetts corporation, filed for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Massachusetts. Pursuant to Plymouth Rubber Company, Inc.'s plan of reorganization, the effective date of which occurred on or around August 31, 2006, Plymouth Rubber Company, Inc. ceased to be, and <u>Plymouth Rubber Company, LLC</u> emerged as its successor, the reorganized debtor, with new equity and new directors. Victor Bass, Esq. and Burns & Levinson served as Plymouth Rubber Company, Inc.'s general bankruptcy counsel during the course of Plymouth Rubber Company, Inc.'s bankruptcy case. At no point on or after the formation of Plymouth Rubber did Mr. Bass or Burns & Levinson serve as counsel to Plymouth Rubber.

4. Accordingly, the Debtors' service of the Administrative Claim Bar Date Notice upon Plymouth Rubber Company, Inc.'s bankruptcy counsel, Victor Bass, Esq. and Burns & Levinson, did not accord Plymouth Rubber due and adequate notice of the Administrative Claim Bar Date. As Delphi Automotive is aware, Plymouth Rubber, and not Plymouth Rubber Company, Inc., is the entity that asserted claims in the Actions against Delphi Automotive on account of their post-petition transactions. Indeed, when seeking to pursue their alleged claims against "Plymouth Rubber," Delphi Automotive sued <u>Plymouth Rubber Company, LLC</u>, not <u>Plymouth Rubber Company, Inc.</u>, in Michigan state court. The Debtors' arguments that Administrative Claim Bar Date Notice was properly served upon Plymouth Rubber by serving bankruptcy counsel for a different entity are without merit.

> 2. *The Debtors' Assumption That Their Alleged Compliance With Fed. R. Bankr. P. 2002(g) Gives Rise To A Presumption That The Debtors Properly Served Plymouth Rubber Is Wrong.*

5. Additionally, the Debtors' reliance on Fed. R. Bankr. P. 2002(g) for their position that they were not required to serve Plymouth Rubber's known counsel of record similarly is misplaced. Fed. R. Bankr. P. 2002(g) provides, in relevant part, that "*[n]otices required to be mailed under Rule 2002* to a creditor … shall be addressed as such entity … has directed in its last request in the particular case." Fed. R. Bankr. P. 2002(g) (emphasis added). Fed. R. Bankr. P. 2002(a), (b) and (f) identify certain types of *pre-confirmation* transactions of which the clerk, or the debtor, must provide notice in accordance with the other provisions of Rule 2002. Notice of an administrative claims bar date is not among the types of notices governed by Rule 2002.

6. The policy rationale behind drawing a distinction between pre-confirmation transactions, which require "special notice" in accordance with the requirements of Rule 2002, and post-confirmation transactions, is self-evident: post-confirmation, the reorganized debtor is not in the process of altering the rights of its creditors pursuant to the Code and/or a plan of reorganization; the reorganized debtor already has accomplished that goal through the confirmation process.

3

Therefore, a post-confirmation debtor cannot look to Rule 2002 to provide a "safe harbor" when determining whether notice to its administrative claimants satisfies their fundamental right of due process notice. Rather, the sufficiency of notice should be governed by the same rules and requirements to which any entity outside of bankruptcy would be bound.[2] Certainly, a reorganized debtor that continues to do business with a supplier or, in this case, that pursues a post-confirmation state court action against a supplier, has updated contact information for such claimant (or, as in this case, its counsel) which will be more reliable than the address and contact information provided in an earlier proof of claim.

7. In this case, it is undisputed that Delphi Automotive had contact information for Plymouth Rubber and its counsel of record in the Actions, but nevertheless chose **not** to serve the Administrative Claims Bar Date Notice on counsel of record.

8. And, despite the Debtors' assertions to the contrary, Plymouth Rubber's counsel was not required to file a notice of appearance in order to "preserve" Plymouth Rubber's right to due process notice, as "a claimant's knowledge of a reorganization does not deprive that claimant of his right to assume that he will be provided the statutory 'reasonable notice' before his claim is expunged."[3] *Randbre Corp. v. Ladney (In re Randbre Corp.)*, 66 B.R. 482, 485 (Bankr. S.D.N.Y. 1986).

9. In sum, since: (i) Rule 2002 does not "trump" the Debtors' obligation to serve the Administrative Claims Bar Date Notice on Plymouth Rubber's counsel, and (ii) the Debtors did not

---

[2] Outside of bankruptcy, because the Administrative Claims Bar Date Notice relates to the subject matter of the Actions and operates as an attempt to "dismiss" the Actions, Delphi Automotive would have been required to serve Plymouth Rubber's counsel of record in the Actions, and would have been prohibited from directly serving Plymouth Rubber.

[3] The Debtors seemingly believe that Plymouth Rubber's, and its counsel's, failure to file a notice of appearance in the Debtors' bankruptcy case should be weighed against it in determining whether "excusable neglect" exists. Plymouth Rubber never contemplated that its counterclaims would be adjudicated before this Court, as nothing in the Actions indicated that this Court would exercise jurisdiction over those claims. Indeed, had Delphi Automotive moved to dismiss or otherwise to remove the Massachusetts Action to this Court, Plymouth Rubber would have been put on notice that these matters allegedly remained subject to the jurisdiction of this Court.

4

serve the Administrative Claims Bar Date Notice on Plymouth Rubber's counsel, the Debtors failed to provide "notice reasonably calculated, *under all the circumstances*, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections [or claims]," *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (emphasis added). Accordingly, Plymouth Rubber is not bound by the terms of the Administrative Claims Bar Date Notice, as Plymouth did not receive proper notice thereof.

> **B.  Even If This Court Determines That The Debtors Provided Due And Appropriate Notice To Plymouth Rubber, Plymouth Rubber's Failure To Timely File A Proof Of Claim Stems From Excusable Neglect.**

10. As set forth in the Motion, all four *Pioneer* factors weigh in favor of this Court extending the Administrative Claims Bar Date with respect to Plymouth Rubber's administrative claim. *See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993); *see also* Motion, ¶¶ 27-39.

11. The Debtors do not contest that two of the four *Pioneer* factors weigh in Plymouth Rubber's favor: (i) the delay was insignificant; and (ii) the good faith of Plymouth Rubber. Rather, in opposing Plymouth Rubber's request for this Court to extend the Administrative Claims Bar Date pursuant to Fed. R. Bankr. P. 9006, the Debtors focus on the remaining two *Pioneer* factors, namely: (i) the danger of prejudice to Delphi Automotive if Plymouth Rubber's administrative claim is deemed timely filed, and (ii) the reason for the delay.

> *1.  Extending The Administrative Claims Bar Date With Respect To Plymouth Rubber's Administrative Claim Will Not Prejudice The Debtors.*

12. The Debtors state two arguments why extending the Administrative Claims Bar Date with respect to Plymouth Rubber's administrative claim will prejudice the Debtors and their estates: (i) it is "unfair" to the administrative claimants that timely filed their claims; and (ii) the extension will "open the floodgates" to other administrative claimants. *See* Objection, ¶¶ 30-31. As to the first point, pursuant to both the Confirmed Plan and the Modified Plan, all administrative claimants are to

receive payment of their claims in full, and accordingly, no prejudice, vis-à-vis the other administrative claimants, arises on account of granting Plymouth Rubber an extension of time to file its administrative claim. Each and every administrative creditor will receive exactly what it is entitled under the Modified Plan regardless of whether Plymouth Rubber's claim is "deemed timely," and thus no other administrative claimant should complain that the "deemed timely" designation of Plymouth Rubber's administrative claim operates to prejudice their rights and remedies.

13. As to the second point, the Debtors have offered nothing to substantiate their presumption that there are numerous "similarly situated" administrative claimants which failed to timely assert their administrative claims and that will seek relief from the Administrative Claims Bar Date. *See*, *e.g.*, *Ontario Die Co. v. Bruno Mach. Corp. (In re Bruno Mach. Corp.)*, Case No. 1:06-CV-001172, 2007 U.S. Dist. LEXIS 51201, *12-13 (N.D.N.Y July 12, 2007) ("Lastly, Debtor has made no argument that there would be a flood of similar claims *and there are no facts present to infer such a flood.*") (emphasis added); *Wall St. Plaza, LLC v. JSJF Corp. (In re JSJF Corp.)*, 344 B.R. 94, 102-103 (B.A.P. 9th Cir. 2006), *citing and quoting Manus Corp. v. NRG Energy, Inc. (In re O'Brien Envtl. Energy, Inc.)*, 188 F.3d 116 (3d Cir. 1999) ("There has been no allegation, let alone evidence in the record, that payment of the cure claim . . . would pose any problem, actually or legally, or would adversely impact any of appellees. Finally, to the extent [debtor] argues that allowance of this claim would open the floodgates to other future claims against them, [debtor] has not alleged that any other creditor promptly sought to be excused from the March 8 order so as to now be entitled to relief on the basis of excusable neglect.")

14. Indeed, given the unique circumstances involving Plymouth Rubber's administrative claim, *i.e.*, that it arises from the Debtors' post-petition tortious and contractual liability which is being pursued in pending litigation, there are likely very few, if any at all, "similarly situated" administrative claimants. *See In re Enron Corp.*, Case No. 01-16034 (AJG), 2003 Bankr. LEXIS 2113, at *21-22 (Bankr. S.D.N.Y. Sept. 23, 2003) (the "floodgate" concerns that usually weigh

6

against permitting a late-filed claim to be deemed timely filed do not apply when the claim is unique).

15. The Debtors assert that "establishing a precedent for allowing untimely claims *without a compelling justification* would greatly prejudice the Debtors, their estates, and their creditors and undermine the Debtors' restructuring efforts." Objection, ¶ 31 (emphasis added). As set forth in the Motion, there is a compelling justification for granting Plymouth Rubber relief: the failure of Delphi Automotive, or its counsel, to even mention the pending Administrative Claims Bar Date despite ongoing communications between Plymouth Rubber and Delphi Automotive in connection with the Actions. It is equally important that this Court refrain from establishing a precedent that a debtor may play fast and loose with its obligation to provide reasonable and appropriate notice to known administrative claimants.

    2.     *The Reason For Delay Was Not Solely In The Control Of Plymouth Rubber.*

16. As set forth above, this Court should dismiss the Debtors' argument that the Debtors' service of the Administrative Claims Bard Date Notice upon Victor Bass, Esq. and Burns & Levinson constituted due and proper notice to Plymouth Rubber, as neither Mr. Bass, nor any other attorney with Burns & Levinson, served as counsel to Plymouth Rubber Company, LLC. *See*, *e.g.*, Objection, ¶¶ 5,8,9,18 and 29.

17. Moreover, the Debtors cannot escape liability from their oversight in failing to serve Plymouth Rubber's known counsel of record by hiding behind Fed. R. Bankr. P. 2002(g), as that Rule is immaterial as to whether notice of an administrative claims bar date complies with the due process notice requirements set forth by the Supreme Court in *Mullane*.

18. Accordingly, the limited question before this Court, therefore, is whether Plymouth Rubber's mail forwarding procedure was reasonable under the circumstances. To answer this question, the Court need only consider the circumstances: (i) Plymouth Rubber began winding down its affairs in late 2008; (ii) Plymouth Rubber was forced to terminate all of its employees, except that

it retained one employee, on a consultancy basis, to work part-time to collect mail and handle other ministerial tasks; (iii) in or around May, 2009, Plymouth Rubber moved its offices, resulting in a delay caused by the forwarding of mail from the incorrect address to Plymouth Rubber's mailbox; and (iv) the Administrative Claims Bar Date Notice was delivered during the height of the "summer vacation" period, *i.e.*, the period immediately preceding the July 4, 2009 holiday weekend.

19. In other words, this case does not involve the "typical" *Pioneer* scenario where a creditor received notice of the bar date and failed to open the notice, or read the notice, or forward the notice to the proper agent or responsible person, or otherwise to comprehend the significance of the notice itself. Based on the foregoing reasons alone, Plymouth Rubber has established its burden that the reason for the delay weighs in favor of extending the Administrative Claims Bar Date.

20. Moreover, the Debtors, and not Plymouth Rubber, opted to run the risk that by seeking, and being granted, an accelerated timeframe for noticing out the Administrative Claims Bar Date, notices that required additional delivery (*e.g.*, because of an outdated address provided in a proof of claim, or creditor matrix, that was prepared almost four years ago) would not reach their intended recipients prior to the Administrative Claims Bar Date. *See*, *e.g.*, Supplemental Modifications Motion, ¶ 65-66.[4] Delphi simply cannot deny that it bears some responsibility for Plymouth Rubber's failure to timely file its administrative claim.

21. Based on the foregoing, all four *Pioneer* factors weigh in favor of this Court extending the Administrative Claims Bar Date pursuant to Fed. R. Bankr. P. 9006.

---

[4] Indeed, had the Debtors not been authorized to reduce the 35-day period generally prescribed with respect to notice of a bar date, Plymouth Rubber's claim would have been timely filed, as Plymouth Rubber would have filed its claim in advance of the "July 25, 2009" bar date which otherwise would have arisen.

8

**C. *The Debtors' Conclusory Statements Dismissing Plymouth Rubber's Other Arguments That The Administrative Claims Bar Date Order Was Procedurally Or Substantively Deficient Are Unsupported By The Law.***

22. In the Motion, Plymouth Rubber cited several other grounds for, and forms of, relief which would effectively render Plymouth Rubber's failure to file its administrative claim prior to the Administrative Claims Bar Date of no consequence. The Debtors dispute the Plymouth Rubber's contentions, but do not provide substantial analysis in support of their conclusory statements that Plymouth Rubber's arguments lack merit. The flaws in the Debtors' arguments are summarized below.

*1. Informal Proof Of Claim Doctrine.*

23. With respect to whether Plymouth Rubber's counterclaims constitute "informal proofs of claim," the Debtors fail to acknowledge that the Second Circuit has not adopted a "bright line" test for the application of this equitable doctrine. Indeed, the Eighth and Ninth Circuits expressly disavow the requirement that a claimant must file its "informal proof of claim" with the bankruptcy court in order for the doctrine to apply.

24. Moreover, in the instant case, this Court should weigh the fact that Delphi Automotive commenced the Michigan Action in Michigan state court, thereby preventing Plymouth Rubber from being able to file its counterclaims with this Court. *See Houbigant, Inc. v. ACB Mercantile, Inc. (In re Houbigant, Inc.)*, 190 B.R. 185, 186 (Bankr. S.D.N.Y. 1995) (noting that the debtor commenced the adversary proceeding before the bankruptcy court, but that the case had been removed to the district court by agreement). Certainly, it is inequitable if the Debtors are permitted to reap a windfall by choosing Michigan state court for the Michigan Action, and then by failing to properly notify Plymouth Rubber's counsel in that Action of the pending Administrative Claims Bar Date.

### 2. Improper Modification Of Plan And Confirmation Order.

25. With respect to Plymouth Rubber's contention that this Court lacked the authority to set the Administrative Claims Bar Date outside of a confirmation hearing pursuant to § 1127(b) of the Bankruptcy Code, the Debtors state, without support, that:

> "[T]his Court had the authority to establish an administrative expense claim bar date independent of the Confirmation Order and the Confirmed Plan. Nothing in either the Confirmation Order or the Confirmed Plan limits this Court's ability to establish a bar date for an interim period in these chapter 11 cases."

Objection, ¶ 36. However, the clear and unambiguous provisions of the Plan and the Confirmation Order provide otherwise. They set a specific date – 45 days from the Effective Date – as the date by which administrative claims must be filed. *See* Plan, § 10.5, Confirmation Order, ¶ 40. Neither of these provisions[5] provides that the Debtor, or this Court, may modify the Administrative Claims Bar Date without first complying with, among other provisions, §1127(b). *See Cohen v. TIC Financial Systems (In re Ampace)*, 279 B.R. 145, 153-54 (Bankr. D. Del. 2002) ("I find that because the Objections Deadline was extended via motions filed pursuant to Rule 9006, and without prior notice and a hearing in accordance with § 1127(b), the orders granting such motions ineffective. As such, the original Objections Deadline of March 14, 2000 remained unaltered and the Trustee's failure to object to Defendant's Claims on or before that deadline resulted in such Claims, totaling $472,546.74, being 'allowed' pursuant to the terms of the Plan.")

26. The Debtors contend that the Federal Rules of Bankruptcy Procedure provide ample support for their position that they were entitled to request the establishment of the Administrative

---

[5] As set forth in the Motion, the definition of "Administrative Claims Bar Date" provides that the bar date "shall be 45 days after the Effective Date, *unless otherwise ordered by the Bankruptcy Court*." Plan, § 1.3 (emphasis added). This is a definitional provision, and does not, by itself, grant the Debtors or this Court the authority to amend the Administrative Claims Bar Date. As set forth in *Ampace*, in order to accelerate the Administrative Claims Bar Date, the Debtors were required to comply with § 1127(b), which they did not do.

10

Claims Bar Date. Even if Fed. R. Bankr. P. 3003(c)(3)[6] normally would provide this Court with the authority to establish a (prepetition) bar date, such discretion is superseded by the terms of the Plan and Confirmation Order, which "is in effect a contract between the parties[,] and the terms of the plan describe [the] rights and obligations" of the Debtors and their creditors. *Ernst & Young LLP v. Baker O'Neal Holdings, Inc.*, 304 F.3d 753, 755 (7th Cir. 2002). By the terms of the Plan and the Confirmation Order, the "Administrative Claims Bar Date" would not arise until 45-days after the Effective Date, and the Debtors do not have the authority to unilaterally modify such "contract" to fit its change in circumstances absent compliance with § 1127 of the Code.

27. Finally, even though the Debtors contend that Paragraph 50 of the Confirmation Order reserves all of the Debtors' rights prior to consummation of the Plan, such rights nevertheless are limited by the terms of § 1127 of the Code. Accordingly, absent notice and a hearing to approve a modification to the Plan, the Debtors were powerless to request for this Court to establish the Administrative Claims Bar Date. *See Ampace*, 279 B.R. at 154 n.20 ("The Court signed the orders granting the Trustee's Extension Motions in error. Because these types of extension motions are submitted to the Court for approval on a routine basis, the Court granted the Trustee's requests based on the assumption that the Plan, like most plans, included language providing that the Objections Deadline was subject to being extended by the Bankruptcy Court upon motion of the Liquidating Trustee without notice or a hearing. Given that the language in §1127(b) provides that a modified plan 'becomes the plan only if… the court, *after notice and a hearing*, confirms such plan as modified,' 11 U.S.C. § 1127(b) (emphasis added), as a matter of law, the orders granting the Trustee's Extension Motions are ineffective.")

---

[6] Rule 3003 applies to "proofs of claim and interests," and therefore is not applicable to the establishment of an administrative claims bar date. *See* Fed. R. Bankr. P. 3003(c)(3).

11

### 3. At All Times Relevant To This Matter, Plymouth Rubber Held, And Continues To Hold, An Allowed Administrative Claim.

28. As set forth in the Motion, pursuant to § 2.1 of the Confirmed Plan, "liabilities incurred by the Debtors in the ordinary course of business during the Chapter 11 Cases … shall be deemed Allowed Administrative Claims and paid by the Debtors or the Reorganized Debtors in the ordinary course of business." Relying on its position that the tort and contractual claims of Plymouth Rubber are not "liabilities incurred by the Debtors in the ordinary course of business during the Chapter 11 Cases," the Debtors allege that "[u]nder either the Modified Plan or the Confirmed Plan, disputed and unliquidated claims such as the claims asserted by Plymouth Rubber are not 'Allowed Administrative Claims.'" Objection, ¶ 38 (emphasis in original). However, the Debtors are wrong.

29. The Sixth Circuit's decision in *Caradon Doors & Windows, Inc. v. Eagle-Picher Industries, Inc. (In re Eagle-Picher Indus.)*, 447 F.3d 461, 468 (6th Cir. 2006),[7] is directly on point with Plymouth Rubber's position that Delphi Automotive's tort and breach of contract liabilities to Plymouth Rubber constitute "liabilities incurred by the Debtors in the ordinary course of business during the Chapter 11 Cases." In *Caradon Doors*, the Sixth Circuit was faced with determining whether the alleged patent infringement liability of the debtors constituted "liabilities incurred in the ordinary course of business by any of the [d]ebtors in [p]ossession." 447 F.3d at 465-66. Pursuant to the terms of the plan, if such extra-contractual liabilities constituted "liabilities incurred in the ordinary course of business by any of the [d]ebtors in [p]ossession," then the administrative claimant would not be bound by the administrative claims bar date. *Id.* In determining that the administrative claimant's post-petition patent infringement claims against the debtor constituted "liabilities incurred in the ordinary course of business," the Sixth Circuit concluded:

> The problem for [the debtor], it seems to us, is that any narrowing of the definition of recoverable administrative expenses accomplished by § 2.1 does not apply to [the

---

[7] A copy of *Caradon Doors & Windows, Inc. v. Eagle-Picher Industries, Inc. (In re Eagle-Picher Indus.)*, 447 F.3d 461, 468 (6th Cir. 2006) is attached hereto as **Exhibit A**.

claimant's] claims. While the provision says that recoverable administrative expenses must be ordinary-course liabilities, [*the debtor*] *fails to explain why contract, tort or patent-infringement claims arising from postpetition sales would exceed the scope of that requirement.* The sales between [the claimant] and [the debtor] arose from the ordinary course of the debtor's business-selling door skins. And the liabilities at issue arose directly from those ordinary-course sales, whether because the products were defective, whether because the terms of the contracts were not followed or whether because the products infringed an existing patent.

*Caradon Doors*, 447 F.3d at 465-67 (emphasis added). As the "disputed" language of the Plan, and the language interpreted in *Caradon Doors*, are substantially identical to one another, this Court should hold that, based on the language in the Plan, Plymouth Rubber holds an Allowed Administrative Claim which has not been reconsidered, and disallowed, pursuant to Fed. R. Bankr. P. 3008.[8]

30. Based on the foregoing, Plymouth Rubber is holding an Allowed Administrative Claim which, as a matter of law, cannot be challenged on timeliness grounds.

### D. *Conclusion.*

31. This Court must grant Plymouth Rubber the relief that it has requested in order to prevent the substantial injustice which will result if the Debtors are permitted to ignore their obligation to provide due and adequate notice to Plymouth Rubber.

**[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK.]**

---

[8] The Debtors seemingly do not contest that if this Court were to find that Plymouth Rubber holds an Allowed Administrative Claim pursuant to § 2.1 of the Plan, that the proper procedure for reconsideration arises pursuant to Fed. R. Bankr. P. 3008, with which the Debtors have not complied.

WHEREFORE, Plymouth Rubber respectfully requests that this Court enter an order: (i) approving the Motion, (ii) deeming Plymouth Rubber's administrative claim timely filed, and (iii) granting such other and further relief as this Court deems just and proper.

Dated: New York, New York
       August 18, 2009

**DUANE MORRIS LLP**

By: /s/ James J. Vincequerra
Gerard S. Catalanello (GC-0945)
James J. Vincequerra (JV-6270)
1540 Broadway
New York, NY 10036-4086
Telephone: 212.692.1022

and

Paul D. Moore, Esq.
Jeffrey D. Sternklar, Esq.
Kara M. Zaleskas, Esq.
DUANE MORRIS LLP
470 Atlantic Avenue, Suite 500
Boston, Massachusetts 02210-2600
Telephone: 857.488.4200
*Counsel to Plymouth Rubber Company, LLC*