**Hearing Date And Time: September 24, 2009 at 10:00 a.m. (prevailing Eastern time)**
**Response Date And Time: September 17, 2009 at 4:00 p.m. (prevailing Eastern time)**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
155 North Wacker Drive
Chicago, Illinois 60606
John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler

   - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Kayalyn A. Marafioti

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                              :

In re                             :    Chapter 11
                                :

DELPHI CORPORATION, et al.,     :    Case No. 05-44481 (RDD)
                                :

                                :    (Jointly Administered)
            Debtors.         :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DEBTORS' THIRTY-FIFTH OMNIBUS OBJECTION PURSUANT TO 11 U.S.C. § 502(b) AND
FED. R. BANKR. P. 3007 TO (I) EXPUNGE (A) BOOKS AND RECORDS CLAIM, (B)
CERTAIN SALARIED PENSION AND OPEB CLAIMS, (C) CERTAIN WAGE AND BENEFIT
CLAIMS, AND (D) CERTAIN INDIVIDUAL WORKERS' COMPENSATION BOOKS AND
RECORDS CLAIMS AND (II) MODIFY AND ALLOW CERTAIN CLAIMS**

**("THIRTY-FIFTH OMNIBUS CLAIMS OBJECTION")**

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this Thirty-Fifth Omnibus Objection Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To (I) Expunge (A) Books And Records Claim, (B) Certain Salaried Pension And OPEB Claims, (C) Certain Wage And Benefit Claims, And (D) Certain Individual Workers' Compensation Books And Records Claims And (II) Modify And Allow Certain Claims (the "Thirty-Fifth Omnibus Claims Objection" or the "Objection"), and respectfully represent as follows:

<u>Background</u>

A.    <u>The Chapter 11 Filings</u>

1.    On October 8 and 14, 2005, the Debtors filed voluntary petitions in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as then amended (the "Bankruptcy Code").  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession under Bankruptcy Code sections 1107(a) and 1108.  This Court has ordered joint administration of these cases.

2.    No trustee or examiner has been appointed in these cases.  On October 17, 2005, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Creditors' Committee").  On April 28, 2006, the U.S. Trustee appointed an official committee of equity holders, which was disbanded on April 24, 2009. On February 26, 2009, the U.S. Trustee appointed an official committee of retired employees to represent certain of the Debtors' current active salaried employees, retirees, and their spouses for certain limited purposes.

3.      This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

4.      The statutory predicates for the relief requested herein are sections 502(b) of the Bankruptcy Code and Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

B.    Plan Confirmation And Postconfirmation Matters

5.      On December 10, 2007, the Debtors filed their first amended joint plan of reorganization (Docket No. 11386) (the "Plan") and related disclosure statement (Docket No. 11388.  This Court entered an order confirming the Plan (as modified) (Docket No. 12359) (the "Confirmation Order") on January 25, 2009, and the order became final on February 4, 2008.

6.      The Plan, as confirmed by this Court (the "Confirmed Plan"), was based upon a series of global settlements and compromises that involved nearly every major constituency in the Debtors' reorganization cases, including Delphi's labor unions and General Motors Company (formerly known as General Motors Corporation) ("GM").  The effectiveness of certain of these agreements, including the Debtors' two comprehensive agreements with GM, was conditioned on consummation of the Confirmed Plan.  The Debtors on April 4, 2008 had satisfied the conditions required to substantially consummate the Confirmed Plan, including obtaining $6.1 billion of exit financing, but Delphi's Plan Investors (as defined in the Confirmed Plan) refused to participate in the closing and refused to fund their Investment Agreement (as defined in the Confirmed Plan) with Delphi.  On May 16, 2008, Delphi sued the Plan investors and related parties for damages and specific performance.  These suits remain pending.

7.      After the Plan Investors refused to fund their obligations under the Investment Agreement, the Debtors continued working with their stakeholders to evaluate their

3

options to emerge from chapter 11 and also sought approval of two comprehensive agreements

with GM:  an amended and restated "Global Settlement Agreement" (the "Amended GSA") and

an amended and restated "Master Restructuring Agreement" (the "Amended MRA").  On

September 26, 2008, this Court entered an order authorizing the Debtors' implementation of

these agreements, which became effective on September 29, 2008.

        8.      Through the Amended GSA and Amended MRA, the Debtors partially

addressed two goals of their transformation plan:  (i) obtaining financial support from GM for

certain of Delphi's legacy and labor costs and GM's business commitments to Delphi going

forward and (ii) working to solve Delphi's pension funding situation.  Under the Amended GSA

and Amended MRA, GM agreed to contribute substantial additional value to the Debtors –

estimated by Delphi to be approximately $10.6 billion (increased from approximately $6.0

billion under the original GSA and MRA) – and eliminate significant elements of conditionality

to the performance of GM's obligations.

        9.      During the fall of 2008 the Debtors were able to formulate certain

modifications to the Confirmed Plan.  Accordingly, on October 3, 2008, Delphi sought an order

under 11 U.S.C. § 1127 approving (i) certain modifications to the Confirmed Plan and related

disclosure statement and (ii) related procedures for re-soliciting votes on the Confirmed Plan, as

modified (Docket No. 14310) (the "Plan Modification Motion").  Subsequently, however,

substantial uncertainty and significant decline in capacity in global debt and equity markets, the

global economic downturn generally, and an unprecedented decline in global automotive

production volumes adversely impacted Delphi's ability to develop a revised recapitalization plan

and successfully consummate a confirmed plan of reorganization.  Moreover, as a result of

market turbulence, the Debtors were unable to extend the maturity date of their DIP credit

facility (the "DIP Facility") on terms reasonably acceptable to the Debtors and their other

stakeholders.  Accordingly, with the support of the administrative agent (the "DIP Agent") and

the requisite lenders under the DIP Facility, the Debtors entered into an accommodation

agreement (as subsequently amended) which allows the Debtors, among other things, to continue

using certain of the proceeds of the DIP Facility.

10.    In light of these factors, the Debtors adjourned the hearing on the Plan

Modification Motion several times.  On June 1, 2009, the Debtors filed a supplement to the Plan

Modification Motion (the "Motion Supplement"), which sought approval of (i) certain additional

modifications to the Confirmed Plan (the "Modified Plan"), (ii) supplemental disclosure, and (iii)

procedures for re-soliciting votes on the Modified Plan.  In addition, to further support the

Debtors' liquidity, GM agreed to make certain advances to the Debtors, including entry into an

amended and restated agreement as of June 1, 2009 to provide the Debtors up to $250 million of

additional pre-emergence liquidity to support Delphi's transformation and reorganization plans.[1]

The Motion Supplement was approved with modifications by order entered June 16, 2009 (the

"Modification Procedures Order") and was later supplemented and amended by orders entered

June 29, (Docket No. 17376), July 17, (Docket No. 18352), and July 21, 2009 (Docket No.

18551).

11.    Also on June 1, 2009, while facing the most difficult economic period in

decades with the most precipitous drop in U.S. vehicle sale volumes in half a century, Delphi

---

[1]    GM sought chapter 11 protection on June 1, 2009.  Concurrently with its filing for chapter 11 protection, GM
filed a motion seeking Bankruptcy Court approval to continue to provide financing to certain of its suppliers,
including by lending funds directly to suppliers such as Delphi in the manner set forth in the GM Arrangement.
The Bankruptcy Court granted GM both interim and final approval of this motion and expressly provided that
without further Court order, GM could continue payments and accommodations to financially or operationally
distressed suppliers whether relating to the period prior to or following the commencement of GM's
reorganization cases.

reached an agreement to effect its emergence from chapter 11 through a transaction with

Parnassus Holdings II, LLC ("Parnassus"), an affiliate of Platinum Equity, and with the support

of GM Components Holdings LLC ("GM Components"), an affiliate of GM (the "Platinum-GM

Master Disposition Agreement") under a plan of reorganization.  The agreement and the changes

to the Confirmed Plan were filed as part of the Motion Supplement on June 1, 2009.

12.    On June 16, 2009, the Bankruptcy Court entered the Modification

Procedures Order.  Among other things, the order authorized the Debtors to commence

solicitation of votes on the Modified Plan and set forth a comprehensive set of supplemental

procedures for evaluating non-solicited alternative transactions to the Platinum-GM Master

Disposition Agreement (as supplemented and amended, the "Supplemental Procedures"), which

contemplated an auction open to Qualified Bidders (as defined therein) and DIP Lenders making

a Pure Credit Bid (as defined therein).

13.    Pursuant to the Supplemental Procedures, the Debtors held an auction on

July 26 and 27, 2009 at which the DIP Agent submitted a Pure Credit Bid on behalf of the DIP

lenders that was supported by the requisite majority of the two most senior tranches of the DIP

Facility (the "Required Lenders").  The Pure Credit Bid involved a credit bid of 100% of the

principal and interest due and owing in respect of the DIP Facility under the DIP Credit

Agreement (after giving effect to the application of any cash collateral to the DIP Facility) and

was based upon an alternative Master Disposition Agreement (the "DIP Lender-GM Master

Disposition Agreement") pursuant to which DIP Holdco 3, LLC ("DIP Holdco 3") would replace

Parnassus as a purchaser, subject to the terms of the DIP Lender-GM Master Disposition

Agreement.  DIP Holdco 3 is an entity controlled by certain of the DIP lenders that together

constitute the Required Lenders under the DIP Facility.  At the conclusion of the auction, after

careful consideration, Delphi's board of directors determined that the Pure Credit Bid was superior to the Platinum-GM Master Disposition Agreement, and approved it, subject to the parties' reaching a final agreement as to the terms and conditions of the Modification Approval Order and other items.  Subsequently, the Debtors made certain further modifications to the Modified Plan to address the results of the auction.

14.    After holding a final plan modification hearing on July 29 and 30, 2009, this Court entered an order approving the Modified Plan (Docket No. 18707) on July 30, 2009. Upon the effectiveness of the Modified Plan, Delphi will contemporaneously effectuate transactions, including the DIP Lender-GM Master Disposition Agreement, through which DIP Holdco 3 will operate Delphi's U.S. and non-U.S. businesses going forward with emergence capital and capital commitments but without the labor-related legacy costs associated with the North American sites which, together with Delphi's global steering business, are being acquired by GM Components.  A new company, DPH Holdings Co., will emerge as a reorganized entity that retains certain residual non-core and non-strategic assets and liabilities that are expected to be divested over time.

15.    Consummation of these transactions through the Modified Plan, which embodies concessions made by parties-in-interest to resolve these chapter 11 cases, will provide for the satisfaction of all of the Debtors' administrative claims, secured claims, and priority claims and a potential distribution to holders of general unsecured claims.  Moreover, Delphi's emerging businesses, through GM and DIP Holdco 3, will continue to develop and deliver high-quality products to their customers globally.

C.    <u>Bar Date, Proofs Of Claim, And Omnibus Claims Objections</u>

16.    On April 12, 2006, this Court entered an Order Under 11 U.S.C. §§ 107(b), 501, 502, And 1111(a) And Fed R. Bankr. P. 1009, 2002(a)(7), 3003(c)(3), And 5005(a)

Establishing Bar Dates For Filing Proofs Of Claim And Approving Form And Manner Of Notice

Thereof (Docket No. 3206) (the "Bar Date Order").  Among other things, the Bar Date Order

established July 31, 2006 (the "Bar Date") as the last date for all persons and entities holding or

wishing to assert "Claims," as such term is defined in 11 U.S.C. § 101(5) (each, a "Claim"),

against a Debtor (collectively, the "Claimants") to file a proof of claim with respect to each such

Claim.

       17.    On or prior to April 20, 2006, Kurtzman Carson Consultants LLC, the

claims and noticing agent in these cases (the "Claims Agent"), provided notice of the Bar Date

by mailing a notice of Bar Date approved by this Court (the "Bar Date Notice"), together with a

proof of claim form, to (a) the persons or entities set forth in the Debtors' Schedules of Assets

and Liabilities and Statements of Financial Affairs filed with this Court on January 20, 2006 (and

subsequently amended on February 1, 2006 and April 18, 2006) (collectively, the "Schedules and

Statements")[2] and (b) the persons and entities included in the notice database compiled by the

Debtors, but not listed on any of the Schedules and Statements.  In total, the Debtors provided

Bar Date Notices to more than 500,000 persons and entities.

       18.    In addition, the Debtors published the Bar Date Notice in more than two

dozen newspapers throughout the country and abroad[3] and also published it electronically by

---

[2]    The Schedules and Statement were subsequently amended on October 12, 2007, January 17, 2008, and October 10, 2008.

[3]    Specifically, notice was published in the <u>New York Times</u> (National Edition), the <u>Wall Street Journal</u> (National, European, and Asian Editions), <u>USA Today</u> (Worldwide Edition), the <u>Automotive News</u> (National Edition), and in local editions of the following publications: the <u>Adrian Daily Telegram</u>, the <u>Arizona Daily Star</u>, the <u>Buffalo News</u>, the <u>Chicago Sun Times</u>, the <u>Clinton News</u>, the <u>Columbia Dispatch</u>, the <u>Daily Leader</u>, <u>Dayton Daily News</u>, the <u>Detroit Free Press</u>, the <u>El Paso Times</u>, the <u>Fitzgerald Herald Leader</u>, the <u>Flint Journal</u>, the <u>Gadsden Times</u>, the <u>Grand Rapids Press</u>, the <u>Greenville News</u>, the <u>Indianapolis Star</u>, the <u>Kansas City Star</u>, the <u>Kokomo Tribune</u>, the <u>Lansing State Journal</u>, the <u>Laurel Leader</u>, the <u>Los Angeles Daily News</u>, the <u>Milwaukee Journal Sentinel</u>, the <u>Mobile Beacon</u>, the <u>Mobile Register</u>, the <u>Oakland Press</u>, the <u>Olathe Daily News</u>, the <u>Rochester</u>

*(cont'd)*

posting on the Delphi Legal Information Website, www.delphidocket.com, on or before April 24,
2006.

19.    Approximately 16,800 proofs of claim (the "Proofs of Claim") have been
filed against the Debtors in these cases.  Since September 2006 the Debtors have filed 34
omnibus Claims objections, pursuant to which this Court has disallowed and expunged 9,847
Claims and modified approximately 4,200 Claims.  In addition, the hearings with respect to 265
Claims remain adjourned pursuant to the Claims Objection Procedures Order (as defined below).

20.    On October 31, 2006, the Debtors filed a Motion For Order Pursuant To
11 U.S.C. §§ 502(b) And 502(c) And Fed. R. Bankr. P. 2002(m), 3007, 7016, 7026, 9006, 9007,
And 9014 Establishing (i) Dates For Hearings Regarding Disallowance Or Estimation Of Claims
And (ii) Certain Notices And Procedures Governing Hearings Regarding Disallowance Or
Estimation Of Claims (Docket No. 5453), in which the Debtors requested this Court, among
other things, to approve certain procedures for contested claim objections (the "Claims Objection
Procedures Motion").  On December 7, 2006, this Court entered an order granting the Claims
Objection Procedures Motion (Docket No. 6089) (the "Claims Objection Procedures Order").

21.    On November 30, 2007, the Debtors filed a Motion Under New
Bankruptcy Rule 3007(c) And 11 U.S.C. § 105(a) For Order Authorizing Debtors To Continue
Claims Objection Procedures Under Order Dated December 7, 2006 Pursuant To 11 U.S.C. §
502(b) And Fed. R. Bankr. P. 2002(m), 3007, 7016, 7026, 9006, 9007, And 9014 Establishing (I)
Dates For Hearings Regarding Objections To Claims And (II) Certain Notices And Procedures
Governing Objections To Claims (Docket No. 11187) (the "Supplemental Claims Objection

---

(cont'd from previous page)
    Democrat and Chronicle, the Saginaw News, the Sandusky Register, the Tribune Chronicle, the Tulsa World,
    the Tuscaloosa News, and The Vindicator.

Procedures Motion").  In that motion, the Debtors requested this Court, among other things, to

authorize the Debtors to continue certain of their current practices and procedures for filing and

serving notice of omnibus Claims objections pursuant to the Claims Objection Procedures Order,

including omnibus Claims objections to more than 100 Claims.  By order entered December 20,

2007, this Court granted the Supplemental Claims Objection Procedures Motion (Docket No.

11561).

   22. In this Objection, the Debtors are objecting to 470 Proofs of Claim, all of

which are set forth on Exhibit H hereto in alphabetical order by Claimant and cross-referenced

by proof of claim number and basis of objection.

Relief Requested

   23. By this Objection, the Debtors seek entry of an order pursuant to section

502(b) of the Bankruptcy Code and Bankruptcy Rule 3007 disallowing and expunging (a) the

Claim set forth on Exhibit A hereto because it asserts liabilities and a dollar amount that are not

reflected on the Debtors' books and records, (b) the Claims for liabilities owing in connection

with the Debtors' pension plans and other post-employment benefits programs set forth on

Exhibit B hereto because the Debtors are not liable for such Claims, (c) the Claims set forth on

Exhibit C hereto filed for certain wages and benefits because such Claims are not reflected on the

Debtors' books and records, and (d) the Claims set forth on Exhibit D hereto because they were

asserted by individual current or former employees of the Debtors for workers' compensation

benefits not reflected on the Debtors' books and records.

   24. Second, the Debtors seek entry of an order pursuant to section 502(b) of

the Bankruptcy Code and Bankruptcy Rule 3007(a) allowing the Claims set forth on Exhibit E

hereto, each of which asserts priority treatment in part based on a reclamation claim and has been

10

modified pursuant to an order entered by this Court reclassifying all reclamation claims as general unsecured nonpriority claims for all purposes, including for purposes of voting and distribution under any plan of reorganization of the Debtors, as general unsecured nonpriority claims in the asserted amount and (b) modifying and allowing the Claims set forth on Exhibit F hereto because the Debtors have reached a settlement in principle with each such Claim holder to have such Claim allowed in the amount and classification and to reflect the Debtors listed in the "Claim As Allowed" column of Exhibit F.

Objections To Claims

D.    Books And Records Claims

25.    During their Claims review, the Debtors determined that a certain Proof of Claim asserts a dollar amount that is not owing pursuant to the Debtors' books and records (the "Books And Records Claim").  Accordingly, the Debtors believe that the party asserting the Books And Records Claim is not a creditor of the Debtors.  The Debtors determined that they are not liable for the Books And Records Claim because the Debtors' books and records do not reflect the existence of the asserted Claim or of the Claimant asserting such Claim.

26.    A claimant's proof of claim is entitled to the presumption of prima facie validity under Bankruptcy Rule 3001(f) only until an objecting party refutes "'at least one of the allegations that is essential to the claim's legal sufficiency.'"  WorldCom, 2005 WL 3832065, at *4 (quoting Allegheny, 954 F.2d at 174).  Once such an allegation is refuted, "'the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence.'"  Id.

27.    Set forth on Exhibit A hereto is the Books And Records Claim that the Debtors have identified as the Claim for which the Debtors are not liable.  The Debtors object to the Books And Records Claim because the Debtors have no liability in respect thereof.  If this

Court does not disallow and expunge this Claim in full, the Debtors expressly reserve all of their rights to further object to the Books And Records Claim at a later date on any basis whatsoever.

28.    Accordingly, the Debtors (a) object to the Books And Records Claim and (b) seek entry of an order disallowing and expunging the Books And Records Claim in its entirety.

E.    Pension And OPEB Claims

29.    During their Claims review, the Debtors also determined that certain Proofs of Claim assert liabilities or dollar amounts that are not owing by the Debtors for one or both of the following reasons.  First, certain Proofs of Claim assert liabilities or dollar amounts (the "Pension Liabilities") in connection with the following pension plans:  the Delphi Hourly-Rate Employees Pension Plan, the Delphi Retirement Program for Salaried Employees, the Delphi Mechatronic Systems Retirement Program, the ASEC Manufacturing Retirement Program, the Packard-Hughes Interconnect Bargaining Retirement Plan, and the Packard-Hughes Interconnect Non-Bargaining Retirement Plan (together, the "Pension Plans").[4]  Such Claims are not owing by the Debtors because (a) such Claims are not enforceable against the Debtors or property of the Debtors for the purposes of section 502(b)(1) of the Bankruptcy Code because the Pension Plans are separate legal entities distinct from the Debtors' estates and (b) due to the termination of the Pension Plans, such Claims may not be asserted by plan participants because, under ERISA, the Pension Benefit Guaranty Corporation (the "PBGC") is the sole entity entitled to assert pension claims against the Debtors' estates.  Set forth on Exhibit B hereto are the Claims

---

[4]    Each of these Pension Plans is a single employer, defined benefit plan covered by Title IV of Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1301 et seq.

that the Debtors have identified as Claims asserted by pension plan participants for which the

Debtors are not liable (the "Pension Claims").

30.       Second, certain Proofs of Claim assert liabilities or dollar amounts (the

"Salaried OPEB Liabilities") on account of certain employee benefit plans and programs that

provided post-retirement health and life insurance benefits ("Salaried OPEB") to salaried retirees

and their surviving spouses that are not owing by the Debtors because Salaried OPEB was

terminable at will and did not give rise to a right to payment (the "Salaried OPEB Claims") upon

termination.  Certain Proofs of Claim assert both Pension Liabilities and Salaried OPEB

Liabilities (together with the Pension Claims and the Salaried OPEB Claims, the "Pension And

OPEB Claims").

31.       Set forth on <u>Exhibit B</u> hereto are the Pension And OPEB Claims that the

Debtors have identified as Claims for which the Debtors are not liable.  The Debtors object to the

Pension And OPEB Claims because the Debtors have no liability in respect thereof.  If this Court

does not disallow and expunge the Pension And OPEB Claims in full, the Debtors expressly

reserve all of their rights to further object to the Pension And OPEB Claims at a later date on any

basis whatsoever.

32.       <u>Pension Claims</u>.  First, the Pension Claims are not Claims enforceable

against the Debtors or property of the Debtors for the purposes of section 502(b)(1) of the

Bankruptcy Code because the Pension Plans are separate legal entities distinct from the Debtors'

estates.  <u>See</u> <u>In re Springfield Furniture, Inc.</u>, 145 B.R. 520, 528 (Bankr. E.D. Va. 1992) (holding

that defined benefit pension plan and trust holding assets of plan are separate and distinct legal

entities and thus "the assets of the Trust (and Plan) are not assets of the Debtors' bankruptcy

estate").  The Pension Plans – not the Debtors – are obligated to pay benefits to Pension Plan

participants, so any claims arising from the Pension Plans are claims against the Pension Plans rather than the Debtors.

33.    Second, to the extent that any of the Pension Plans is terminated, under ERISA, the PBGC has the sole and total right to recover against employers for pension plan underfunding and participants have no right to make claims against their employers for benefits under terminated plans.  See 29 U.S.C. § 1362; see also United Steelworkers of Amer. v. United Eng'g, Inc., 52 F.3d 1386, 1390 (6th Cir. 1995); Int'l Ass'n of Machinists and Aerospace Workers v. Rome Cable Corp., 810 F. Supp. 402 (N.D.N.Y. 1993); In re Lineal Group, Inc., 226 B.R. 608 (Bankr. M.D. Tenn. 1998).

34.    Salaried OPEB Claims.  This Court has previously determined that the Debtors' Salaried OPEB was not vested and was provided on an at will basis.  See Final Order Under 11 U.S.C. §§ 105, 363 (b)(1), 1108, And 1114 (d) (I) Confirming Debtors' Authority to Terminate Employer-Paid Post-Retirement Health Care Benefits And Employer-Paid Post-Retirement Life Insurance Benefits For Certain (a) Salaried Employees And (b) Retirees and Their Surviving Spouses And (II) Amending Scope And Establishing Deadline For Completion Of Retirees' Committee's Responsibilities, dated March 11, 2009 (Docket No. 16448) (the "Final OPEB Termination Order").[5]

35.    The cancellation of a benefit provided on an at will basis does not give rise to a "claim" as defined in section 101(5) of the Bankruptcy Code because the retiree has no "right to payment."  See, e.g., In re Ionosphere Clubs, Inc., 134 B.R. 515, 519 n. 4 (Bankr. S.D.N.Y. 1991) (noting that terminating plans which are terminable at will gave rise to no claims

---

[5]    "The Debtors' Salaried OPEB benefits have not vested and the Debtors have reserved the right to modify or terminate Salaried OPEB benefits."  Final OPEB Termination Order at ¶ 2.

whatsoever); In re Wellman, Inc., No. 08-10595, slip op. at 6 (Bankr. S.D.N.Y. Jan. 23, 2009)

(sustaining debtors' objection to disallow portion of claims for modified severance benefits that

exceeded amounts owed under amended severance plan, reasoning that because old severance

plan was terminable at will, claims under old severance plan were not enforceable).

36.    Accordingly, the Debtors (a) object to the Pension And OPEB Claims and

(b) seek entry of an order disallowing and expunging the Pension And OPEB Claims in their

entirety.

F.    Wage And Benefit Claims

37.    During their Claims review, the Debtors also determined that certain

Proofs of Claim assert liabilities or dollar amounts in connection with wages and benefits that are

not owing by the Debtors because such Claims have been paid by the Debtors pursuant to the

Order Under 11 U.S.C. §§ 105(a), 363, 507, 1107, And 1108 (i) Authorizing Debtors To Pay

Prepetition Wages And Salaries To Employees And Independent Contractors; (ii) Authorizing

Debtors To Pay Prepetition Benefits And Continue Maintenance Of Human Capital Benefit

Programs In the Ordinary Course; And (iii) Directing Banks To Honor Prepetition Checks For

Payment Of Prepetition Human Capital Obligations, entered October 13, 2005 (Docket No. 198)

(collectively, the "Wage And Benefit Claims").

38.    Set forth on Exhibit C hereto are the Wage And Benefit Claims that the

Debtors have identified as Claims for which the Debtors are not liable.  The Debtors object to the

Wage And Benefit Claims because the Debtors have no liability in respect thereof.  If this Court

does not disallow and expunge the Wage And Benefit Claims in full, the Debtors expressly

reserve all of their rights to further object to the Books And Records Claim at a later date on any

basis whatsoever.

39.    The Debtors seek to disallow and expunge the Wage And Benefit Claims because such Claims seek prepetition wages, salaries, commissions, vacation, sick leave, and/or employee benefit contributions.  Each of these Claimants, however, has already received payments in satisfaction of their claims.  Thus, the Debtors seek to disallow and expunge the Wage And Benefit Claims.

40.    Accordingly, the Debtors (a) object to the Wage And Benefit Claims listed on Exhibit C and (b) seek entry of an order disallowing and expunging in their entirety the Wage And Benefit Claims.

G.    Individual Workers' Compensation Books And Records Claims

41.    During their Claims review, the Debtors determined that certain Proofs of Claim that were filed by individual current or former employees for workers' compensation benefits that asserted liabilities or dollar amounts that are not owing pursuant to the Debtors' books and records (the "Individual Workers' Compensation Books And Records Claims").  The Debtors believe that the parties asserting the Individual Workers' Compensation Books And Records Claims are not creditors of the Debtors.  Therefore, their Claims should be expunged.

42.    A Claimant's proof of claim is entitled to the presumption of prima facie validity under Bankruptcy Rule 3001(f) only until an objecting party refutes "'at least one of the allegations that is essential to the claim's legal sufficiency.'"  In re WorldCom, Inc., No. 02-13533, 2005 WL 3832065, at *4 (Bankr. S.D.N.Y. 2005) (quoting In re Allegheny Int'l, Inc., 954 F.2d 167, 173-74 (3d Cir. 1992)).  Once such an allegation is refuted, "'the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence.'"  Id.

43.    Set forth on Exhibit D hereto is a list of Individual Workers' Compensation Books And Records Claims that the Debtors have identified as Claims for which the Debtors are not liable.  If this Court does not disallow and expunge these Claims in full, the

Debtors expressly reserve all of their rights to further object to the Individual Workers'

Compensation Books And Records Claims at a later date on any basis whatsoever.

44.    Accordingly, the Debtors (a) object to the Individual Workers'

Compensation Books And Records Claims and (b) seek entry of an order disallowing and

expunging the Individual Workers' Compensation Books And Records Claims in their entirety.

H.    Modified And Allowed Claims

45.    Finally, during their Claims review, the Debtors determined that two

Proofs of Claim filed against the Debtors assert priority treatment in part based on a reclamation

claim which was modified pursuant to the Order Under 11 U.S.C. § 546(c) And Amended

Reclamation Procedures Order Classifying Reclamation Claims As General Unsecured

Nonpriority Claims For All Purposes, entered by this Court on July 15, 2009 (Docket No. 18312).

The Debtors have determined that each of these two Claims should be allowed as a general

unsecured nonpriority Claim in the aggregate asserted amount of its priority and general

unsecured portions because the variance between the dollar amount for each Modified And

Allowed Claim as reflected in the Debtors' books and records and the asserted amount of each

such Claim is de minimis.  Therefore, the Modified And Allowed Claims should be allowed in

the aggregate amounts asserted in the applicable Proofs of Claim as general unsecured

nonpriority claims.  Litigation respecting the Modified And Allowed Claims would cause the

Debtors to incur additional costs but would yield minimal benefits for the Debtors and their

estates.

46.    Set forth on Exhibit E hereto are the Modified And Allowed Claims that

the Debtors have identified as Claims that should be allowed in the amount asserted on the

corresponding Proof of Claim as general unsecured nonpriority claims.  The Debtors seek to

have each of the Modified And Allowed Claims allowed in the corresponding amount as general unsecured nonpriority claims listed on <u>Exhibit E</u>.

47. Accordingly, the Debtors seek entry of an order allowing each of the Modified And Allowed Claims and request that each such Claim be revised to reflect the classification listed in the "Claims As Allowed" column of <u>Exhibit E</u>.

I.    <u>Allowed Claims Pursuant To Settlements</u>

48.    The Debtors have reached settlements in principle with the holders of certain Proofs of Claim (the "Claims Allowed Pursuant To Settlement").  Accordingly, the Debtors seek to have each Claim Allowed Pursuant To Settlement modified and allowed to make them consistent with the settlements reached between the parties.

49.    Set forth on <u>Exhibit F</u> are the Claims that the Debtors have identified as the Claims Allowed Pursuant To Settlement.  The Debtors request that the Claim amounts be modified as reflected on <u>Exhibit F</u> and that such Claims be allowed.  The Debtors are authorized to seek allowance of each of the Claims Allowed Pursuant To Settlement because either (a) the Claims involve ordinary course controversies or (b) they have authority to do so under the Amended And Restated Order Under 11 U.S.C. §§ 363, 502, And 503 And Fed. R. Bankr. P. 9019(b) Authorizing Debtors To Compromise Or Settle Certain Classes Of Controversy And Allow Claims Without Further Court Approval (Docket No. 8401) entered on June 26, 2007.

50.    Accordingly, the Debtors seek entry of an order modifying and allowing the Claims Allowed Pursuant To Settlement and request that each such Claim be revised to reflect the amount, classification, and Debtor listed in the "Claim As Allowed" column of <u>Exhibit F</u>.

51.     For each Modified And Allowed Claim and Claim Allowed Pursuant to

Settlement (together, the "Allowed Claims") that the Debtors seek to allow pursuant to this

Objection, such allowance is conditioned upon the following releases and reservations of rights:

(a)     The allowance of the Allowed Claim would act as an injunction against any "Person" (as that term is defined in 101(41) of the Bankruptcy Code) commencing any action, employment of process, or act to collect, offset, or recover with respect to each such Allowed Claim.

(b)     The allowance of the Allowed Claim would resolve all of the responses filed by Claimants to prior omnibus claims objections with respect to such Allowed Claim.

(c)     Without further order of this Court, the Debtors would be authorized to offset or reduce the Allowed Claim for purposes of distribution to holders of allowed claims entitled to receive distributions under any plan of reorganization of the Debtors by the amount of any cure payments made on account of the assumption, pursuant to section 365 of the Bankruptcy Code, of an executory contract or unexpired lease to which the counterparty associated with the Allowed Claim is a party.

## Separate Contested Matters

52.     Pursuant to the Claims Objection Procedures Order, to the extent that a

response is filed with respect to any Claim listed in this Thirty-Fifth Omnibus Claims Objection,

each such Claim and the objection to such Claim asserted in this Objection will be deemed to

constitute a separate contested matter as contemplated by Bankruptcy Rule 9014.  Pursuant to the

Claims Objection Procedures Order, any order entered by this Court with respect to an objection

asserted in this Thirty-Fifth Omnibus Claims Objection will be deemed a separate order with

respect to each Claim.

## Reservation Of Rights

53.     The Debtors expressly reserve the right to amend, modify, or supplement

this Thirty-Fifth Omnibus Claims Objection and to file additional objections to any other Claims

(filed or not) which may be asserted against the Debtors, including without limitation the right to

object to any Claim not objected to in this Objection on the basis that it has been asserted against

the wrong Debtor entity.  Should one or more of the grounds for objection stated in this

Objection be dismissed, the Debtors reserve their rights to object on other stated grounds or on

any other grounds that the Debtors discover during the pendency of these cases.  In addition, the

Debtors reserve the right to seek further reduction of any Claim to the extent that such Claim has

been paid.

Responses To Objections

59.    Responses to this Thirty-Fifth Omnibus Claims Objection are governed by

the provisions of the Claims Objection Procedures Order.  The following summarizes the

provisions of that Order, but is qualified in all respects by the express terms thereof.

J.    Filing And Service Of Responses

60.    To contest an objection, responses (each, a "Response"), if any, to this

Thirty-Fifth Omnibus Claims Objection must (a) be in writing, (b) conform to the Federal Rules

of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York,

and the Claims Objection Procedures Order, (c) be filed with the Bankruptcy Court in

accordance with General Order M-242 (as amended) – registered users of the Bankruptcy Court's

case filing system must file electronically, and all other parties-in-interest must file on a 3.5 inch

disk (preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based

word processing format), (d) be submitted in hard copy form directly to the chambers of the

Honorable Robert D. Drain, United States Bankruptcy Judge, United States Bankruptcy Court

for the Southern District of New York, One Bowling Green, Room 632, New York, New York

10004, and (e) be served upon (i) Delphi Corporation, 5725 Delphi Drive, Troy, Michigan 48098

(Att'n: General Counsel) and (ii) counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom

20

LLP, 155 North Wacker Drive, Chicago, Illinois 60606 (Att'n: John Wm. Butler, Jr., John K.

Lyons, and Joseph N. Wharton), in each case so as to be **received no later than 4:00 p.m.**

**(prevailing Eastern time) on September 17, 2009**.

K.    <u>Contents Of Responses</u>

61.    Every Response to this Thirty-Fifth Omnibus Claims Objection must

contain at a minimum the following:

(a)    the title of the claims objection to which the Response is directed;

(b)    the name of the Claimant and a brief description of the basis for
the amount of the Claim;

(c)    a concise statement setting forth the reasons why the Claim should
not be disallowed and expunged, including, but not limited to, the
specific factual and legal bases upon which the Claimant will rely
in opposing the claims objection;

(d)    unless already set forth in the Proof of Claim previously filed with
this Court, documentation sufficient to establish a prima facie right
to payment; <u>provided</u>, <u>however</u>, that the Claimant need not
disclose confidential, proprietary, or otherwise protected
information in the Response; <u>provided further</u>, <u>however</u>, that the
Claimant must disclose to the Debtors all information and provide
copies of all documents that the Claimant believes to be
confidential, proprietary, or otherwise protected and upon which
the Claimant intends to rely in support of its Claim, subject to
appropriate confidentiality constraints;

(e)    to the extent that the Claim is contingent or fully or partially
unliquidated, the amount that the Claimant believes would be the
allowable amount of such Claim upon liquidation of the Claim or
occurrence of the contingency, as appropriate; and

(f)    the address(es) to which the Debtors must return any reply to the
Response, if different from the address(es) presented in the claim.

L.    <u>Timely Response Required</u>

62.    If a Response is properly and timely filed and served in accordance with

the foregoing procedures, the hearing on the relevant Claims covered by the Response will be

adjourned to a future hearing, the date of which will be determined by the Debtors, by serving

notice to the Claimant as provided in the Claims Objection Procedures Order.  With respect to all uncontested objections, the Debtors request that this Court conduct a final hearing on September 24, 2009 at 10:00 a.m. (prevailing Eastern time).  The procedures set forth in the Claims Objection Procedures Order will apply to all Responses and hearings arising from this Thirty-Fifth Omnibus Claims Objection.

63.    Pursuant to the Claims Objection Procedures Order, only those Responses made in writing and timely filed and received will be considered by this Court.  If a Claimant whose Proof of Claim is subject to this Thirty-Fifth Omnibus Claims Objection and who is served with this Thirty-Fifth Omnibus Claims Objection fails to file and serve a timely Response in compliance with the Claims Objection Procedures Order, the Debtors may present to this Court an appropriate order seeking relief with respect to such Claim consistent with the relief sought in this Thirty-Fifth Omnibus Claims Objection without further notice to the Claimant, provided that, upon entry of such an order, the Claimant will receive notice of the entry of such order as provided in the Claims Objection Procedures Order; provided further, however, that if the Claimant files a timely Response which does not include the required minimum information required by the Claims Objection Procedures Order, the Debtors may seek disallowance and expungement of the relevant Claim or Claims only in accordance with the Claims Objection Procedures Order.

64.    To the extent that a Claim would be subject to estimation pursuant to section 502(c) of the Bankruptcy Code, if the Claimant has filed a Response in accordance with the procedures outlined above which (a) acknowledges that the Claim is contingent or fully or partially unliquidated and (b) provides the amount that the Claimant believes would be the allowable amount of such Claim upon liquidation of the Claim or occurrence of the contingency,

as appropriate (the "Claimant's Asserted Estimated Amount"), <u>pursuant to the Claims Objection Procedures Order the Debtors may elect to accept provisionally the Claimant's Asserted Estimated Amount as the estimated amount of such Claim pursuant to section 502(c) of the Bankruptcy Code for all purposes other than allowance, but including voting and establishing reserves for purposes of distribution under a reorganization plan, subject to further objection and reduction as appropriate and section 502(j) of the Bankruptcy Code</u>, by providing notice as described more fully in the Claims Objection Procedures Order.

Replies To Responses

65.     Replies to any Responses will be governed by the Claims Objection Procedures Order.

Service Of Thirty-Fifth Omnibus Claims Objection Order

66.     Service of any order with regard to this Thirty-Fifth Omnibus Claims Objection will be made in accordance with the Claims Objection Procedures Order.

Further Information

67.     Questions about this Thirty-Fifth Omnibus Claims Objection or requests for additional information about the proposed disposition of Claims hereunder should be directed to the Debtors' counsel by e-mail to delphi@skadden.com, by telephone at 1-800-718-5305, or in writing to Skadden, Arps, Slate, Meagher & Flom LLP, 155 North Wacker Drive, Chicago, Illinois 60606 (Att'n: John Wm. Butler, Jr., John K. Lyons, and Joseph N. Wharton).  Questions regarding the amount of a Claim or the filing of a Claim should be directed to the Claims Agent at 1-888-249-2691 or www.delphidocket.com.  <u>Claimants should not contact the Clerk of the Bankruptcy Court to discuss the merits of their Claims.</u>

<u>Notice</u>

68.    Notice of this Motion has been provided in accordance with the

Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006,

9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management,

And Administrative Procedures, entered March 20, 2006 (Docket No. 2883), and the Fourteenth

Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006,

9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management,

And Administrative Procedures, entered May 1, 2009 (Docket No. 16589).  In light of the nature

of the relief requested, the Debtors submit that no other or further notice is necessary.

69.    Pursuant to the Claims Objection Procedures Order, the Debtors will

provide each Claimant whose Proof of Claim is subject to an objection pursuant to this Thirty-

Fifth Omnibus Claims Objection with a personalized Notice Of Objection To Claim which

specifically identifies the Claimant's Proof of Claim that is subject to an objection and the basis

for such objection as well as a copy of the Claims Objection Procedures Order.  A form of the

Notice Of Objection To Claim to be sent to the Claimants listed on <u>Exhibits A</u>, <u>B</u>,  <u>C</u>, and <u>D</u> is

attached hereto as <u>Exhibit I</u>.  A form of the Notice Of Objection To Claim to be sent to the

Claimants listed on <u>Exhibits E</u> and <u>F</u> is attached hereto as <u>Exhibit J</u>.  Claimants will receive a

copy of this Thirty-Fifth Omnibus Claims Objection without <u>Exhibits A</u> through <u>J</u> hereto.

Claimants will nonetheless be able to review <u>Exhibits A</u> through <u>J</u> hereto free of charge by

accessing the Debtors' Legal Information Website (www.delphidocket.com).  In light of the

nature of the relief requested, the Debtors submit that no other or further notice is necessary.

WHEREFORE the Debtors respectfully request that this Court enter an order (a) granting the relief requested herein and (b) granting the Debtors such other and further relief as is just.

Dated:   New York, New York
         August 21, 2009

SKADDEN, ARPS, SLATE, MEAGHER
   & FLOM LLP


By:   /s/ John Wm. Butler, Jr.
      John Wm. Butler, Jr.
      John K. Lyons
      Ron E. Meisler
155 North Wacker Drive
Chicago, Illinois 60606

      - and -


By:   /s/ Kayalyn A. Marafioti
      Kayalyn A. Marafioti

Four Times Square
New York, New York 10036

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession