1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case No. 05-44481

- - - - - - - - - - - - - - - - - - - -x


In the matter of:


DELPHI CORPORATION, et al.,


        Debtors.


- - - - - - - - - - - - - - - - - - - -x


        United States Bankruptcy Court

        One Bowling Green

        New York, New York


        August 17, 2009

        10:08 AM


B E F O R E:

HON. ROBERT D. DRAIN

U.S. BANKRUPTCY JUDGE

2

1

2    HEARING re Objections to Notices of Nonassumption, Cure Amounts

3    and Assumption and Assignment of Executory Contracts and

4    Unexpired Leases

5

6    HEARING re Objection of American Aikoku Alpha, Inc. to Notice

7    of Nonassumption under the Modified Plan with Respect to

8    Certain Expired or Terminated Contracts or Leases Previously

9    Deemed to be Assumed or Assumed and Assigned under Confirmed

10    Plan of Reorganization

11

12    HEARING re Objection of Spartech Corporation and Spartech

13    Polycom, Inc. to Dip Holdco 3, LLC's Assumption and Assignment

14    Notice

15

16    HEARING re Notice of Filing of Notices of Assumption and

17    Assignment with Respect to Certain Executory Contracts or

18    Unexpired Leases to be Assumed and Assigned to Parnassus

19    Holdings II, LLC Under Modified Plan of Reorganization

20

21

22

23

24

25    Transcribed by:  Lisa Bar-Leib

3

1

2    A P P E A R A N C E S :

3    SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

4         Attorneys for Delphi Corporation

5         155 N. Wacker Drive

6         Chicago, IL 60606

7

8    BY:   JOHN K. LYONS, ESQ.

9          CARL T. TULLSON, ESQ.

10         MICHAEL W. PERL (TELEPHONICALLY)

11

12   MASUDA FUNAI EIFERT & MITCHELL, LTD.

13        Attorneys for American Aikoku Alpha, Inc.

14        203 North LaSalle Street

15        Suite 2500

16        Chicago, IL 60601

17

18   BY:   GARY VIST, ESQ.

19

20

21

22

23

24

25

4

1              P R O C E E D I N G S

2           THE COURT:  Please be seated.  Okay.  Delphi

3    Corporation?

4           MR. LYONS:  Good morning, Your Honor.  John Lyons on

5    behalf of the debtors.  And I have here also with me Carl

6    Tullson, my colleague, and Dean Unrue and Karen Kraft from the

7    company and then on the line, Michael Perl from Skadden as

8    well.

9           THE COURT:  Okay.

10          MR. LYONS:  Your Honor, we are here today to have the

11   first hearing on certain objections to nonassumptions of

12   certain contracts and leases and assumption and assignment of

13   executory contracts and unexpired leases and cure amounts under

14   the modified plan.  Before we get into the one contested matter

15   for today, I'm happy to report that we have made progress and

16   we have resolved a number of the objections that are

17   outstanding.  So far, we've resolved seventeen objections filed

18   by fifteen parties.  We will have -- we still, however, have

19   objections of thirty-seven parties that have been adjourned to

20   August 28th and the objections of eight parties that are being

21   adjourned to the September 24th hearing.  And if Your Honor

22   would check off the agenda, that would cover on our agenda that

23   we filed with today, that would cover items 2 through 13 on the

24   agenda.

25          Item number 2, which was previously noticed as a

5

1    contested matter, has been resolved, that of Spartech.

2              THE COURT:  The Spartech one?

3              MR. LYONS:  Spartech was resolved over the weekend,

4    Your Honor.

5              THE COURT:  Okay.  Okay.

6              MR. LYONS:  So, again, that leaves for today the

7    objection of American Aikoku Alpha, Inc.  And we're prepared to

8    argue that.  We did have a meet and confer over the weekend and

9    the parties have agreed on a joint exhibit binder that would be

10   admissible for all purposes which Your Honor has.

11             THE COURT:  Okay.

12             MR. LYONS:  So we will just argue from that as

13   appropriate.

14             THE COURT:  Okay.

15             MR. LYONS:  Okay.  Without anything further, Your

16   Honor, I'll proceed on the American Aikoku objection.

17             THE COURT:  All right.

18             MR. LYONS:  American Aikoku filed three virtually

19   identical objections to the modified plan.  One was to the

20   modified plan and one was relating to two contract related

21   objections arguing that a prior stipulation entered into

22   between the debtors and American Aikoku in connection with the

23   sale of the steering business, a transaction that was never

24   consummated with Platinum Equities -- Your Honor is aware from

25   the last modification hearing -- would require the debtor to

6

1    pay cure for a certain purchase order.  The purchase order at

2    issue and it's stated in our papers is PO SAG901I2815.  I will

3    refer to that, Your Honor, as appropriate, the pre-petition or

4    the post-petition purchase order.  It -- for adminis -- as we

5    stated in our papers, Your Honor, it is the debtors' contention

6    that the parties entered into a new post-petition purchase

7    order in January 2008.  It referred to the same number for

8    administrative convenience purposes only.  And we delineated

9    the two different POs in our papers.  The PO that controlled

10   the kind of business before January 2008, we call the pre-

11   petition purchase order.  And the purchase order that governed

12   the relationship between the parties after that date, we'll

13   refer to as the post-petition purchase order.

14             THE COURT:  Okay.

15             MR. LYONS:  With respect to the pre-petition purchase

16   order, the debtors entered into this order January 14, 1997 and

17   it had an expiration term of December 31st, 2010.  And, Your

18   Honor, that is referenced in Exhibit number 13 in the joint

19   exhibit binder.  That would be the pre-petition purchase order.

20             THE COURT:  Okay.

21             MR. LYONS:  On January 28th, the debtors and American

22   Aikoku entered into a new post-petition purchase order, which

23   is referenced in the exhibit binder as Exhibit number 14,

24   through various alterations.  And the alterations are contained

25   at Exhibits 15 through 20 in the exhibit binder.  That changed

1    various aspects of the master purchase order.

2         In particular, the amendments and the new purchase

3    order contained a clause, which I'll refer to as the 180

4    clause -- that was a term of art Delphi's GSM used for this

5    clause -- which basically said this is a new purchase order.

6    It amends, supersedes and replaces any other previous purchase

7    order and, in particular, it will cut off the ability of the

8    other contract party to seek any cure.  And conversely, with

9    respect to the debtor, it would be a post-petition

10   administrative purchase order and would not be subject to

11   assumption or rejection.

12        So, again, when this purchase order was issued and

13   the alteration was issued, the clause contained that language

14   that made it clear that the post-petition purchase order would

15   not be subject to assumption or rejection nor would the other

16   counterparty be entitled to a cure payment since the contract

17   could no longer be assumed.

18        Your Honor, this was issued and sent to American

19   Aikoku and the parties operate under that purchase order.  In

20   particular, American Aikoku did ship product against that

21   purchase order and was paid in accordance with the new terms.

22   It's the debtors' contention that under applicable law,

23   acceptance by performance is recognized in Michigan and under

24   the Michigan UCC which is the controlling law here.  And I

25   believe Your Honor may even have ruled that in one of the other

8

1    matters we had before Your Honor during the claims process.

2        So it's the debtors' view that as of January 2008,

3    the parties had a post-petition agreement.  There no longer was

4    a pre-petition agreement since that pre-petition agreement had

5    been replaced and superseded by the express terms of the 180

6    clause and, therefore, there is no ability of the debtor to

7    assume that contract nor is there any right of American Aikoku

8    to be paid cure.

9        Now, of course, Delphi certainly has the rights to

10   assign the post-petition purchase order.  That is in accordance

11   with the terms of the contract and not under any power under

12   365 of the Bankruptcy Code.

13       So, Your Honor, we believe it's rather

14   straightforward that the clear intent of the parties as

15   referenced in the 180 clause and as accepted by American Aikoku

16   through acceptance of performance renders the purchase order at

17   issue a post-petition contract not subject to assumption nor

18   any right is there for American Aikoku to demand cure.

19       THE COURT:  Okay.  Could I ask you why -- I mean,

20   this again is based upon -- American Aikoku's claim and

21   objection is based upon the stipulation and order from May

22   2008.  Are the debtors still relying on the argument that that

23   stipulation and order doesn't apply to this transaction?

24       MR. LYONS:  Yes.

25       THE COURT:  You are?

9

1          MR. LYONS:  Yes.

2          THE COURT:  So this is an additional argument that

3    you've just made.

4          MR. LYONS:  Yes.

5          THE COURT:  Not the only argument.

6          MR. LYONS:  Right.  Well -- correct, Your Honor.

7    Yeah.  The stipulation, again, as Your Honor's ordered, is not

8    effective 'cause the sale with Platinum Equity never closed.

9    But in order to show -- 'cause I know Mr. Vist had mentioned

10   that he believed the contract had not yet expired.  And the

11   additional evidence and the arguments we presented in our reply

12   show that that contract was amended and superseded and replaced

13   by a post-petition purchase order.

14         THE COURT:  Okay.  Is this a contract that -- well,

15   the January 2008 PO as altered, that's something that the

16   debtors do propose to assign to the buyer under its terms or is

17   it -- yes?

18         MR. LYONS:  Yes --

19         THE COURT:  Okay.  All right.

20         MR. LYONS:  -- in accordance with its terms.

21         THE COURT:  Okay.  All right.  Very well.

22         MR. LYONS:  Your Honor, I have nothing more unless

23   Your Honor has questions and I'll yield the podium to Mr. Vist.

24         THE COURT:  Okay.

25         MR. VIST:  Good morning, Judge.

10

1        THE COURT:  Good morning.

2        MR. VIST:  Gary Vist for American Aikoku.  To address

3   the latest argument from counsel, we do believe that the

4   stipulation that has been entered in May of 2008 obviously came

5   after the alleged January 29, 2008 change in the purchase

6   order.  The Exhibit 14 that counsel was referring to actually

7   doesn't have a date on it.  Exhibits 15 through 20 does but

8   Exhibit 14 does not.  But taking what counsel has stated as

9   true that the PO has changed in January of 2008, obviously, if

10  that was the case and if Delphi, as counsel stated, had no

11  ability to assume the pre-petition contract as of January 29,

12  2008 date then the question is why was Delphi actually

13  including that purchase order and assuming it and issuing cure

14  payment for it in the May 2008 stipulation.

15        We believe that the stipulation would actually

16  trump -- the terms of the stipulation would trump counsel's

17  argument.  We do believe that this purchase order has been

18  assumed through the stipulation.  And the arguments are if you

19  look at Exhibit 10, which is a copy of one of American Aikoku's

20  objections -- Exhibit C to it is the copy of the stipulation.

21  The stipulation does provide, and we did discuss it at the

22  prior hearing, that "As soon as reasonably practical upon the

23  closing of the sale of the steering and half-shaft business,

24  American Aikoku shall receive a cure payment of approximately

25  414,000 dollars to cure all defaults under the purchase

1    orders."

2           Again, the stipulation was not contemplated to apply

3    only to a sale that was pending at that point.  There is no

4    mention that it is pending -- that it is only pertinent to the

5    sale that was pending at that point.  It's not limited to a

6    particular buyer.  None of the terms are capitalized to

7    indicate that it is limited to a particular buyer.  It was

8    American Aikoku's understanding that by entering into this

9    stipulation, whenever the steering business is going to be sold

10   then the cure payment would be made.

11          THE COURT:  What evidence is there on that?

12          MR. VIST:  Basically, again, other than discussions

13   among me and Mr. Tullson, the evidence from our perspective is

14   that none of the terms are capitalized.  The stipulation is not

15   limited to a particular sale.  Also, item 3 --

16          THE COURT:  What about the title of the stipulation?

17          MR. VIST:  Well, it's in connection with sale of

18   steering and half-shaft business.

19          THE COURT:  To buyers.  It's resolving an objection

20   to a specific transaction.

21          MR. VIST:  Well, it says to buyers.  It doesn't say

22   that it's limited to a particular buyer.  At least that is our

23   argument.

24          Also, item 3 of the "Therfores" in the stipulation on

25   page 7 says that "upon the Court's entry of the stipulation,

12

1  American Aikoku shall be deemed to have withdrawn with

2  prejudice the first steering objection and the second steering

3  objection.  Those two objections dealt with assumption issues

4  and with the cure amounts.  We have withdrawn them with

5  prejudice, and we can no longer assert them, again, through

6  discussions with counsel.

7        THE COURT:  Well, let me pursue that.

8        MR. VIST:  Sure.

9        THE COURT:  So your contention is that if the debtors

10  propose to assign this contract for whatever consideration they

11  were going to get --

12        MR. VIST:  Yes.

13        THE COURT:  -- to a buyer that American Aikoku didn't

14  believe could provide adequate assurance of future performance,

15  a different buyer than these people, to say, I don't know,

16  Chrysler, the day before it was going to file for Chapter 11,

17  you contended American Aikoku had waived all of its objections

18  to the assignment of that contract?

19        MR. VIST:  Well, what we believe we had withdrawn

20  with prejudice is the objections to the assignment and to the

21  cure.  I think the 365 objections would be a separate animal

22  that we would deal with if a buyer was deemed to be

23  problematic.  I still believe even with the sale to Platinum,

24  if it had gone through, had American Aikoku believed that that

25  was a problematic buyer, I still think we would have preserved

13

1    the 365 objection.  But they wouldn't be able to object to the

2    assumption or to cure.

3              THE COURT:  Okay.  But there wasn't a sale to

4    Platinum.

5              MR. VIST:  Correct.

6              THE COURT:  All right.

7              MR. VIST:  But again, our position is that the

8    stipulation is not limited to a particular sale, that this was

9    a stipulation entered for the sale of the steering business of

10   Delphi to a prospective buyer, whoever that buyer is going to

11   be.

12             Our position also is that the notice of

13   nonassumption, under which we are here today, it lists this

14   particular purchase order -- it actually doesn't say whether

15   it's a pre-petition number or a post-petition number and this

16   hearing is basically the first time that I hear that we've got

17   a pre-petition and a post-petition division of the same

18   purchase order number.  But it says -- the title of the notice

19   is "Notice of Nonassumption under the Modified Plan with

20   Respect to Certain Expired or Terminated Contracts or Leases

21   Previously Deemed to be Assumed or Assumed and Assigned under

22   Confirmed Plan of Reorganization".  So by the debtor including

23   this PO on the notice, the debtor is agreeing that this PO has

24   been assumed or assumed and assigned.

25             THE COURT:  No.  But -- that seems particularly

14

1    facile to me.  I mean, the plan of reorganization they're

2    referring to never went effective.

3              MR. VIST:  I understand.  But it shows that they have

4    assumed this contract.  They're now trying to nonassume.  If it

5    hasn't been assumed, as they're arguing, they wouldn't even be

6    including it in the notice of nonassumption because the notice

7    of nonassumption is limited to contracts that have previously

8    been assumed.  They have assumed this contract.  I understand

9    what they're trying to do now.  They're trying to get out of

10   that assumption.  And obviously, the nonassumption and the

11   modified plan gives them the right to do so if there is a

12   rejection, if there is a termination, if there is expiration.

13   My argument is they cannot do it with respect --

14             THE COURT:  Is the only point you're making that this

15   contract really wasn't superseded by the January 2008 purchase

16   order?

17             MR. VIST:  Correct.

18             THE COURT:  Okay.  I understand that point.

19             MR. VIST:  Yes.  And therefore, we believe that the

20   stipulation does control.  And item 5 says "To the extent any

21   order related to the sale of the steering and half-shaft

22   business" -- again, no capitalization -- "alters, conflicts

23   with or derogates from the provisions of this stipulation, this

24   stipulation shall control."  So we believe that this contract

25   has been assumed.  We believe that the cure amount is due.  We

15

1    have withdrawn our objections to the assumption and to the cure

2    amounts with prejudice and therefore we believe we're

3    entitled -- you know, four of the five purchase orders are

4    being assumed and assigned to GM.  This is the first time I

5    hear that, again, the post-petition PO is actually also being

6    assigned.  We received no notice of that.  The only thing we

7    received is the notice of nonassumption which lists, obviously,

8    the same purchase order number.  And therefore, we believe that

9    we're entitled to the full cure amount and we intend to perform

10   going forward under those circumstances under all five purchase

11   orders.

12           THE COURT:  Okay.  As I look through this exhibit,

13   it's all documentary, right?  There's no declaration, there's

14   no witness here today for me to decide as to what was intended

15   by either the January 2008 purchase order or the May 2008

16   stipulation?

17           MR. VIST:  Not from our side.  I'm the only one

18   that's involved in this.

19           THE COURT:  Okay.

20           MR. VIST:  I can't speak for Mr. Lyons.

21           THE COURT:  Okay.  All right.

22           MR. VIST:  Thank you, Judge.

23           MR. LYONS:  Very quickly.  I mean, again, I think the

24   only evidentiary issues which are undisputed is that the post-

25   petition purchase order was issued.  American Aikoku actually

16

1   produced it back to us and that the parties performed under

2   that post-petition purchase order.  I mean, it's all set forth

3   in our reply.  I don't think there's a need for a proffer.  We

4   do have Mr. Unrue here if necessary.

5          THE COURT:  But -- I understand that but that kind of

6   leaves open that if that was the case, why would the debtors

7   bother to do the May 2008 stipulation?  I mean, if the parties

8   had agreed to waive any cure claims, why would they then

9   provide for payment of the cure claims in the May 2008

10  stipulation?

11         MR. LYONS:  Your Honor, to be blunt, it was a

12  mistake.  There were hundreds of thousands of purchase orders

13  that Delphi is routinely updating, amending and superseding and

14  the claims cure team would take new data from GSM, which would

15  be Global Supply Management, which would be refreshed.  And,

16  frankly, that's why the stipulation ultimately was entered.  It

17  should have been -- if we were able to check the nanosecond

18  that that contract was amended and superseded, Delphi would

19  have caught it.  But it just slipped through basically.

20         THE COURT:  But counsel is saying it wasn't a mutual

21  mistake.  I mean, if it was just one party's mistake, it would

22  seem to me that, at least conceivably, the stipulation could

23  amend the terms of the PO as far as the cure amount goes.

24         MR. LYONS:  Well, but, Your Honor, the stipulation

25  didn't deal with the contracts.  The stipulation dealt with the

1  contracts as they were.  I mean, Delphi has all automotive

2  purchasers.  They have very strict purchasing terms and

3  conditions, guidelines as to how contracts are amended, how

4  contracts are superseded.  Delphi issued the three alterations

5  in accordance with the Global Supply Management system to amend

6  those contracts.  Certainly, American Aikoku had all these

7  amendments and alterations as well since they then had those

8  and then shipped against them.  So if you look at what was the

9  contract of the parties, you have to look at those documents.

10         THE COURT:  But if you rely -- I mean, this hasn't

11  been briefed but if you're relying on a course of dealing and

12  course of performance, can't that be altered by a subsequent

13  agreement?

14         MR. LYONS:  Well, it needs to be an alteration made

15  in accordance with Delphi's terms and conditions which American

16  Aikoku has agreed to do.  And it must be in writing by the

17  buyer to alter or change any purchase order.

18         THE COURT:  But couldn't this stipulation constitute

19  an alteration?

20         MR. LYONS:  Well, Your Honor, no, because when the

21  parties entered into the modification in January of 2008, it

22  was agreed that this is a new post-petition contract.  I don't

23  think Delphi could then agree down the road and say no, it's a

24  pre-petition contract because to do so, Your Honor, would, in

25  essence, try to pay a pre-petition claim without authority.

18

1        THE COURT:  Well, I understand that point.

2        MR. LYONS:  I mean, we just wouldn't have had the

3   power to have done it.  But --

4        THE COURT:  But that's a 549 issue, though.

5        MR. LYONS:  Well, it would be a 549 issue.  And, Your

6   Honor, back to the first point, I mean, I know this was argued

7   extensively at the plan modification hearing, and I'm happy to

8   rehash Mr. Butler's arguments, but I think it's clear from the

9   face of the stipulation this thing was conditioned upon the

10  sale to Platinum.

11       THE COURT:  No.  I agree with that.  I don't have --

12       MR. LYONS:  And the stipulation --

13       THE COURT:  I don't have any sympathy for that point.

14  But there is an agreement that the debtors want to assign,

15  right?

16       MR. LYONS:  Yes.

17       THE COURT:  I mean, this fourth purchase order

18  that's -- there's roughly, what is it, 200 -- if one assumes

19  that the January 2008 purchase order was subsequently modified

20  by this stipulation then there would be a cure, according to

21  American Aikoku, of 275,000 dollars.  And if that was what the

22  debtor was proposing to assign to the buyer under the modified

23  plan, then the debtor would have to pay that.  On the other

24  hand, if what is being assigned is the post-petition contract

25  with the waiver of the cure claim then you don't have to do it.

19

1      And I think that's separate and apart from an argument which I

2      don't accept that this stipulation was intended to be binding

3      under any transaction whereby the steering business was sold.

4              MR. LYONS:  Right.

5              THE COURT:  I just don't -- that's not -- for the

6      reasons I said in July, I don't think that's how this could be

7      read given the context of it including the recitals in it.  But

8      that still, I think, leaves the issue of what is the agreement

9      that the debtors are proposing to assign to the buyer.  And I

10     understand your argument.  The 2008 purchase order is very

11     clear and Michigan law is clear that it can be binding if the

12     parties perform.  But then there's this subsequent stipulation

13     which suggests that the parties still treated the other

14     contract as having an existence and a cure amount --

15             MR. LYONS:  Well, Your Honor.

16             THE COURT:  -- that would need to be paid upon an

17     assignment.

18        (Pause)

19             MR. LYONS:  I mean, Your Honor, the stipulation

20     itself, it really doesn't purport to amend or any way modify

21     the parties' agreement.  I mean, the parties' agreement was the

22     January 2008 agreement which, again, was a new post-petition

23     contract.  I mean, it was -- frankly, Your Honor, it was just

24     issued in error.  There was -- again, as I said, Delphi had a

25     database which was trying to talk to the other database and --

20

1          THE COURT:  But does that matter?  I mean, if

2   American Aikoku wasn't taking advantage of you and didn't know

3   about -- assumed this was not a mistake then does it matter?

4          MR. LYONS:  Well, no.  I don't think they could have

5   relied on that stipulation to amend the parties' contract.  The

6   only way a contract could be modified was in accordance with

7   Delphi's terms and conditions.

8          THE COURT:  But how would --

9          MR. LYONS:  And they agreed to abide by those terms

10  and conditions.

11         THE COURT:  But then what was the point of entering

12  into it?  I mean, it was a mistake, you're saying?

13         MR. LYONS:  Yes.

14         THE COURT:  Well, I mean, I'm not prepared to rule on

15  this point.  I think that there's --

16         MR. LYONS:  Okay.

17         THE COURT:  -- more to it that I would need to hear.

18  And among other things, there's the 549 issue --

19         MR. LYONS:  Right.

20         THE COURT:  -- as to whether notwithstanding that

21  this is set out in the form of a stipulation approved by the

22  Court whether it -- as reflective of facts that weren't

23  described to the Court is an improper modification of --

24  improper post-petition transaction that would be avoidable.  It

25  doesn't say anything about modifying an earlier purchase order,

21

1    in other words.  So the issue is whether that effect of the

2    stipulation was something that the debtor didn't obtain proper

3    permission to do.

4            MR. LYONS:  Well --

5            THE COURT:  I mean, I think that's a legitimate

6    point.  I mean -- in other words, if you're transacting with a

7    debtor, there may be a circumstance where you don't have to

8    have a mutual mistake to render the post-petition transaction

9    void since you're not transacting just with the debtor, you're

10   transacting with a whole process of court approval and -- I'm

11   not prepared to rule on that today but it seems to me that is

12   another issue that the parties should consider.

13           MR. LYONS:  Well, let me -- Your Honor, I guess --

14   for purposes of, though -- even if we were unable to enter into

15   that stipulation because there was no cure and then there was

16   no pre-petition agreement to cure --

17           THE COURT:  Right.

18           MR. LYONS:  -- that would end up with no cure claim.

19           THE COURT:  Well, I understand.  It would be

20   avoidable.

21           MR. LYONS:  And secondly --

22           THE COURT:  But on the other hand, there may be

23   evidence out there to the effect that the parties fully -- they

24   may have been completely aware of the January 2008 purchase

25   order's provision but nevertheless meant to vary it pursuant to

1    this stipulation.  But --

2           MR. LYONS:  Well, the terms of the stipulation do not

3    purport to vary the contract.  I mean, that -- and that's

4    before Your Honor.

5           THE COURT:  Well, I understand.  I understand.

6    That's why I think probably 549 would apply.

7           MR. LYONS:  Right.  So -- but in either outcome, Your

8    Honor, I think at the end of the day, Your Honor would hold

9    that there is no contract that is subject to assumption either

10   because under 549 the stipulation shouldn't have been entered

11   into or the stipulation is, frankly, as Your Honor has already

12   ruled is not effective because the sale never closed with

13   Platinum Equity.

14          THE COURT:  Well, that's on the first argument that

15   Aikoku makes.  But I don't think that goes to the second one.

16   'Cause it recognizes an agreement.  I mean, it purports to

17   recognize an agreement that the debtors contend didn't exist at

18   that time.  So, I mean, there's an inconsistency there.

19          MR. LYONS:  But there is no evidence in the record,

20   Your Honor, and certainly, I would think American Aikoku would

21   have put it in if they somehow thought that this was an

22   amendment to that January purchase order.

23          THE COURT:  Well, but they contend that they didn't

24   know that this -- I mean, it could have been completely

25   academic.  If the debtors don't intend to assign this contract,

23

1   it's an academic issue.  It doesn't matter.  If they do intend

2   to assign it, which was just stated, then I think it does

3   matter because what is the contract intended to be assigned at

4   that point?  Is it the 2008 purchase order or is it the -- or

5   was that purchase order subsequently revised pursuant to the

6   stipulation?  Not that the -- again, not that the stipulation

7   means that the debtors must assign the contract.  But if they

8   choose to assign a contract, what is that contract?  That's the

9   remaining open issue, I think.

10          MR. LYONS:  And the contract would be -- well, I

11   don't think there's any --

12          THE COURT:  And the debtors contend it's the 2008 PO,

13   the January 2008 PO, and American Aikoku says, well, not so

14   fast because it looks like that PO was amended pursuant to this

15   agreement which still seemed to recognize an efficiency claim.

16          MR. LYONS:  Certainly -- well, Your Honor, the

17   stipulation itself does not purport to amend the contract and

18   the January modification.  But I suppose Your Honor --

19          THE COURT:  It doesn't address it at all.  It doesn't

20   say anything about the January modification which is why maybe

21   549 applies.

22          MR. LYONS:  Okay, Your Honor.  I understand your

23   ruling and what Your Honor --

24          THE COURT:  Well, it's not a complete ruling.  I'm

25   just saying I'm not ready to address that second level issue

24

1   today.  I think that neither side is really focused for

2   understandable reasons.  I'm not faulting either side for

3   this -- on what I think are two remaining issues, legal issues.

4   One is, under Michigan law, what does it take to modify an

5   acceptance by performance of a PO like this which I -- you

6   know, based on what's before me, it would appear to me to be

7   the case that the PO was accepted by performance.

8                MR. LYONS:  Yes.

9                THE COURT:  On the other hand, it may have been

10  modified by the May 2008 stipulation.  I don't know.  That's an

11  issue in Michigan law and I don't know what it would take in

12  terms of the writing or agreement to modify an agreement that

13  had been previously accepted by performance.  That's one issue.

14               The second issue is given that the January 2008 PO

15  had a very important modification in it of the debtors' and

16  American Aikoku's rights whereby any deficiency claim would not

17  count anymore as far as an assignment was concerned which, in

18  this case, is a 275,000 dollar issue.  Does the failure to

19  disclose that the PO had been accepted by performance or that

20  it existed -- does that render this May 2008 stipulation

21  voidable under Section 549 of the Bankruptcy Code?  Because

22  clearly, it would seem to me that it would be out of the

23  ordinary course to waive a right not to have to be paid 276,000

24  dollars -- or, in fact, the entire stipulation is bigger than

25  that.  It's 415,000 dollars.  That would seem to me out of the

25

1   ordinary course and wasn't really considered, wasn't on notice

2   to anybody, effectively.  So that's a second issue.

3        Now, maybe American Aikoku can say something on that

4   legal theory -- and the debtors certainly haven't brought

5   anything under 549 either.  But it would seem to me that that's

6   a second thing that I'd want to hear about before I ruled on

7   what contract is properly the contract that is subject to

8   assignment to the buyers.

9        And if American Aikoku can point to some other

10  documents or evidence of waiver, I think that's fair -- you

11  know, waiver of the rights under the 2008 agreement.

12  Certainly, these documents don't do it as far as I can see.

13  I'm not particularly moved by the notice of rejection.

14        MR. LYONS:  And if, though, Your Honor did find that

15  it was voidable -- the stipulation --

16        THE COURT:  Well then, that's easy.  That is --

17        MR. LYONS:  Then that's easy?

18        THE COURT:  Yeah.

19        MR. LYONS:  But if it were not voidable then you

20  still have -- it was conditioned upon the closing to Platinum

21  Equity.  And since that never occurred, I guess the

22  stipulation's ineffective.

23        THE COURT:  No.  But again, I'm not -- and I will

24  rule on the first of -- I might as well do it today even though

25  there won't be an order on this until both issues have been

26

1   covered.  But I do not believe, based on my reading of the May

2   stipulation and its context, which includes the Bankruptcy Code

3   as a whole, that you can read that stipulation as saying that

4   any transaction involving the sale of the steering business

5   will be one pursuant to which these contracts will be assumed

6   and assigned and the cure payments will be made.  I don't

7   believe that's the case.  I don't believe that the parties were

8   agreeing to subject themselves to that much commitment to

9   uncertain facts.  I don't think American Aikoku was agreeing to

10  say it was withdrawing its objection to the assignment to

11  anybody.  And similarly, I don't believe the debtor was

12  agreeing -- and certainly, the creditors weren't withholding

13  their objection that this contract must be assigned to anyone

14  that's buying the steering business with the related cure.

15  So -- and that's where your arguments about Platinum come in.

16  I think it was limited to the two notice for Platinum sales

17  since it resolved the objection to those sales.

18          On the other hand, again, I don't think the fact that

19  it references and is effective upon a sale to Platinum really

20  is dispositive on the issue of whether this contract itself was

21  no longer in existence because it was being treated as if it

22  was in existence in this stipulation.  So --

23          MR. LYONS:  The pre-petition contract, you mean.

24          THE COURT:  Right, the pre-petition contract.  So,

25  again, I'm not ruling on that second point now.  I think you

27

1    all ought to brief those two issues for me.

2           On the first issue -- again, I don't want to go over

3    this a third time, but I believe that the context of this

4    stipulation, this May 2008 stipulation, is set forth in the

5    title and in the recitals -- is that it resolves an objection

6    by American Aikoku to the assumption and assignment of

7    executory contract to the buyers in connection with the

8    proposed Platinum transaction.  And there were two objections

9    because the transaction was amended and it was noticed a second

10   time.  Each time it was a transaction involving a specific sale

11   with specific consideration to the estate to Platinum.  And

12   that was the objection that -- those were the two objections,

13   rather, that were resolved by this stipulation.  And the -- I

14   believe that the stipulation makes that clear in the references

15   to the objections.

16          But more importantly, or as importantly, the debtors

17   tied their -- the debtors did not purport to assume the

18   contract at the time.  It was conditioned upon the transaction

19   occurring.  American Aikoku contends, based on both the whereas

20   clause at the bottom of page 6 as well as paragraph 5, that the

21   cure payment would be made upon the closing of any sale of the

22   steering and half-shaft business, although the word "any"

23   doesn't appear in either of those paragraphs.  However, it's

24   based upon the fact that the sale of the steering and half-

25   shaft business is not a defined term and so American Aikoku

1   contends can be read to encompass any sale.  However, again, I

2   wasn't approving and the debtors weren't asserting that they

3   were -- and they hadn't moved for authority to assume and

4   assign the contract upon any sale.  Rather they were moving to

5   assume and assign the contract, a specific sale to Platinum.

6   And it was in that context that the cure payment of $413,980.96

7   was agreed upon.

8          This stipulation was not set up as approval of the

9   assumption and assignment of the contract in connection with

10  any sale of the steering and the half-shaft business.  The

11  debtors would have to obtain authority to assume and assign

12  each time unless it pertained to the specific transaction where

13  they had sought authority which was the Platinum proposed

14  purchase of the steering and half-shaft business.  The

15  assumption and assignment of a contract is too important a

16  transaction and too fact specific for this to be properly read

17  as a blanket approval of assumption and assignment of the

18  contract for either party but certainly for the debtors.  So, I

19  believe it can't be read as the Courts having granted approval

20  of the assumption and assignment of the contract under any

21  circumstances where the steering and half-shaft business were

22  to be sold.

23          So that aspect of American' Aikoku's objection is

24  denied.  The remaining issue then is which contract is in

25  existence at this point, the January 2008 purchase order as

29

1    performed including, I guess, with various alterations going

2    through -- as set forth in Exhibits 15 through 20 and any other

3    exhibits that might show a subsequent course of performance.

4    Or was the provision dealing with a waiver of cure rights in

5    the January 2008 purchase order modified by the stipulation

6    somehow?  And that if it was, is that a voidable under 549 of

7    the Bankruptcy Code?

8            MR. LYONS:  Okay, Your Honor.

9            THE COURT:  I'm just not prepared on today's record

10   to deal with those two issues.  I think you can sort of tell

11   where I'm leaning on it and consistent with my other ruling on

12   this which is that the creditors and, ultimately, the Court are

13   given more notice before a transaction as sweeping, as Aikoku

14   contends this is, actually can be approved than was given here

15   in connection with the May 2008 stipulation.  So my leaning is

16   to suggest that it is voidable under 549 but I don't think the

17   parties have sufficiently addressed that issue.

18           MR. LYONS:  Okay, Your Honor.  Do you have any

19   briefing date you'd like to have the supplemental briefs?

20           THE COURT:  Two weeks from today?  Is that going to

21   give you enough time?

22           MR. LYONS:  That's acceptable.

23           THE COURT:  It's kind of the end of the summer.  I

24   know people are taking vacations or --

25           MR. LYONS:  No -- would Your Honor require another

30

1    hearing or would you rule on the briefs or would you notify us

2    if you wanted --

3              THE COURT:  Well, it depends on whether the parties

4    are just relying on documents or if they think that there's

5    testimony that would be --

6              MR. LYONS:  Okay.

7              THE COURT:  -- relevant on this point.  So I don't

8    know yet.

9              MR. LYONS:  Okay.  So we will submit --

10             MR. VIST:  We're fine with two weeks, Your Honor.

11             MR. LYONS:  We'll exchange briefs.

12             THE COURT:  Okay.  Two weeks from today then.

13             MR. LYONS:  And we'll then exchange briefs then.

14             THE COURT:  Okay.

15             MR. LYONS:  Great.  Okay, thank you, Your Honor.  I

16   don't think there's anything else on this agenda.

17             THE COURT:  Okay.  Thank you.

18             MR. VIST:  Thank you, Judge.

19             MR. LYONS:  Thank you.

20             THE COURT:  Okay.  And once I get the briefs, I'll

21   let you know whether I want a hearing or not.

22             MR. LYONS:  Okay.  Very good.

23        (Whereupon these proceedings were concluded at 10:51 a.m.)

24

25

31

1

2                              I N D E X

3

4                            R U L I N G S

5    DESCRIPTION                                    PAGE      LINE

6    Aspect of Aikoku's objection with respect       28        24

7    to their position that the stipulation

8    is not limited to a specific sale,

9    namely, the Platinum Equity sale

10   transaction, overruled

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

32

1

2                              C E R T I F I C A T I O N

3

4        I, Lisa Bar-Leib, certify that the foregoing transcript is a

5        true and accurate record of the proceedings.

6

7        _____

8        LISA BAR-LEIB

9        AAERT Certified Electronic Transcriber (CET**D-486)

10

11

12       Veritext LLC

13       200 Old Country Road

14       Suite 580

15       Mineola, NY 11501

16

17       Date:  August 18, 2009

18

19

20

21

22

23

24

25