**MASUDA FUNAI EIFERT & MITCHELL, LTD.**
Gary Vist (admitted *Pro Hac Vice*)
203 N. LaSalle Street, Suite 2500
Chicago, Illinois 60601
(312) 245-7500

**DUANE MORRIS LLP**
Joseph H. Lemkin
744 Broad Street, 12th Floor
Newark, New Jersey 07102
(973) 424-2000

**Attorneys for American Aikoku Alpha, Inc.**


UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
_____x
In re:                         )    Chapter 11
                               )
DELPHI CORPORATION, et. al.,   )    Case No. 05-44481 (RDD)
                               )    (Jointly Administered)
                               )
         Debtors.              )
_____x


**BRIEF IN SUPPORT OF AN OBJECTION OF AMERICAN AIKOKU ALPHA,
INC. TO NOTICE OF NON-ASSUMPTION UNDER THE MODIFIED PLAN
WITH RESPECT TO CERTAIN EXPIRED OR TERMINATED CONTRACTS
OR LEASES PREVIOUSLY DEEMED TO BE ASSUMED OR ASSUMED AND
<u>ASSIGNED UNDER CONFIRMED PLAN OF REORGANIZATION</u>**

American Aikoku Alpha, Inc. ("American Aikoku"), by and through undersigned counsel, hereby files this brief in support of its objection to Debtor's Notice of Non-Assumption under the Modified Plan with Respect to Certain Expired or Terminated Contracts or Leases Previously Deemed to be Assumed or Assumed and Assigned under Confirmed Plan of Reorganization (the "Non-Assumption Notice"), and states as follows:

## I. FACTUAL BACKGROUND

On or about January 14, 1997, American Aikoku Alpha, Inc. ("American Aikoku") and Delphi Corporation ("Delphi") entered into a Purchase Order SAG90I2815 (the "Purchase Order").

On or about May 8, 2008, this Court has entered a Stipulation and Agreed Order (the "Stipulation") resolving American Aikoku's cure objections and providing that American Aikoku would receive a cure payment in the total amount of $413,908.96 to cure all defaults under various purchase orders, which includes the cure under the Purchase Order in the amount of $275,636.94. A copy of the Stipulation is attached hereto as Exhibit "A".

On or about July 2, 2009, Delphi issued a Notice of Non-Assumption Under the Modified Plan with Respect to Certain Expired or Terminated Contracts or Leases Previously Deemed to be Assumed or Assumed and Assigned Under Confirmed Plan of Reorganization (the "Notice of Non-Assumption"), listing the Purchase Order in Schedule 1 thereto. On or about July 9, 2009, American Aikoku filed an Objection to the Notice of Non-Assumption, arguing that American Aikoku is entitled to receive a cure payment under the Purchase Order in the amount of $275,636.94.

In response, Delphi argued that American Aikoku is not entitled to receive the cure payment under the Purchase Order because, on January 29, 2008, the Purchase

2

Order was replaced by a new purchase order bearing the same number (the "January 29, 2008 Version"). According to Delphi, the January 29, 2008 Version precludes American Aikoku from receiving the cure payment under the Purchase Order. However, for the reasons stated below, Delphi's argument fails. Delphi also stated during the last court hearing that it intends to assume and assign the purchase order bearing number SAG90I2815. However, before Delphi is able to do that, it has to fully cure its default under the Purchase Order by issuing a cure payment to American Aikoku in the amount of $275,636.94.

## II. ARGUMENT

### A. The terms of the January 29, 2008 Version are not applicable to the Purchase Order.

#### 1. The January 29, 2008 Version has been superseded by a subsequent agreement.

As set forth above, on May 8, 2008, Delphi and American Aikoku have entered into the Stipulation covering the Purchase Order. According to the terms of the Stipulation, Delphi was going to assume the Purchase Order and issue a cure payment under the Purchase Order in the amount of $275,636.94, which was a part of the total cure payment in the amount of $413,908.96, and which Delphi has agreed was due and owing to American Aikoku as of the date of the Stipulation. Those terms are in direct conflict with the January 29, 2008 Version, which stated that, as of that date, American

3

Aikoku was no longer able to assert a right to the payment of cure under the Purchase Order.

When there are several agreements relating to the same subject matter, the intention of the parties must be gleaned from all the agreements. Culver v. Castro, 338 N.W.2d 232 (Mich.App. 1983). It is a fundamental precept of contract law that parties may agree to discharge or modify a contract. Ashland Sales and Service Co. v. Dysard, 145 F.3d 1329 (6th Cir. 1998). The parties through previous or subsequent conduct may place their own construction upon a contract's terms. Comenos v. Viacom International, Inc., 857 F.Supp. 1160 (E.D.Mich. 1994). If parties to a prior agreement enter into a subsequent contract that completely covers the same subject, but the second agreement contains terms that are inconsistent with those of the prior agreement, and the two documents cannot stand together, the later document supersedes and rescinds the earlier agreement. Omnicom of Michigan v. Gianetti Investment Co., 561 N.W.2d 138 (Mich.App. 1997); Wilkinson Corp. v. Wood Group Esp, Inc., 2005 WL 2758623 (Mich. App. 2005). However, if the second agreement does not completely cover the subject of the first agreement, the second agreement supersedes only the same portions of the prior agreement as the second agreement covers, and only those same portions of the first agreement are rescinded. Omnicom of Michigan v. Gianetti Investment Co., 561 N.W.2d 138 (Mich.App. 1997); NIB Foods, Inc. v. Mally, 246 N.W.2d 317 (Mich.App. 1976).

In Omnicom, on April 5, 1991, the parties entered into an installation agreement which included a release of plaintiff's liability for damage to the sprinkler system. On

4

June 1, 1991, the same parties entered into an access agreement, which covered the same subject as the first agreement but without the installation-related issues. The access agreement provided that plaintiff would be liable for damage to the defendant's property. The Court held that "looking to both documents to glean the parties' intent, it is clear that the parties intended for plaintiff to be held liable for all damage except damage to the sprinkler system."

Similarly, in our case, the portion of the January 29, 2008 Version dealing with the waiver of cure payment covers the same subject as the May 8, 2008 Stipulation. Thus, the pertinent terms of the January 29, 2008 Version are superseded by the Stipulation and are rescinded. Therefore, if Delphi intends to assign the Purchase Order, as it indicated it plans on doing, it must first assume it and issue a cure payment to American Aikoku in the amount of $275,636.94.

In addition, Delphi had plenty of opportunities and time to inform American Aikoku, prior to the Stipulation being entered by this Court, that American Aikoku has waived its right to cure payment on the Purchase Order and that the Purchase Order was no longer in existence as of January 29, 2008. First, on or about March 7, 2008, American Aikoku filed a Notice of Cure Claims, stating that the correct cure amount for the Purchase Order is $275,636.94. Then, as the e-mails between counsel for American Aikoku and Delphi, copies of which are attached hereto as a Group Exhibit "B", show, the Stipulation and settlement terms were discussed over a period of almost one (1) month. On April 10, 2008, Mr. Tullson stated that Delphi is willing to offer an allowed

total cash cure amount of $413,908.96 (which includes a cure payment for the Purchase Order). On April 30, 2008, Mr. Tullson advised that the Stipulation has been circulated internally and is now with Delphi for final sign off. On May 6, 2008, after Delphi itself apparently gave a final sign off, Mr. Tullson advised that the Stipulation remains subject to final internal review. Finally, on May 7, 2008, Mr. Tullson requested that American Aikoku's counsel affix his electronic signature to the Stipulation so that it may be submitted to the Court.

Thus, throughout an almost entire month of discussions, and through internal reviews by both Delphi and Delphi's counsel, there was no mention to American Aikoku of any "post-petition purchase order", of any terms of the January 29, 2008 Version, of any waiver by American Aikoku of its right to receive cure payment under the Purchase Order, or of any objections to a full amount due and owing American Aikoku under the Purchase Order being included in the Stipulation. Delphi's course of conduct is yet another clear indication that Delphi itself did not regard the January 29, 2008 Version as being in effect, and that Delphi considered the Purchase Order to still be valid and enforceable.

  **2.**  **Both the January 29, 2008 Version and Delphi's argument are inconsistent with other documents, rendering the January 29, 2008 Version ambiguous and unenforceable.**

Delphi further asserts that the January 29, 2008 Version created a new, "post-petition purchase order" bearing the same number as the Purchase Order. However, that assertion, and the language of the January 29, 2008 Version, is inconsistent with other

6

documents issued by Delphi. More specifically, on January 29, 2008, Delphi issued Alteration 77273, Alteration 77274, Alteration 77275, Alteration 77276, Alteration 77277, and Alteration 77278 to the Purchase Order SAG9OI2815. Copies of those documents are attached hereto as Group Exhibit "C". If those alterations pertain to the January 29, 2008 Version, then it is very puzzling, and making it unlikely that the January 29, 2008 Version is really the "new" purchase order, as to why the January 29, 2008 Version would need to have six (6) alterations issued to it the very same date as the date of the January 29, 2008 Version. If Delphi's argument is to be believed, one would expect the January 29, 2008 Version to already contain all the details of the transaction and not to be modified the same date it is issued. On the other hand, if those alterations pertain to the Purchase Order, which goes back to 1997, then it is once again very puzzling, and once again making it unlikely that the January 29, 2008 Version is really a "new" purchase order, as to why Delphi would be issuing six (6) alterations to the Purchase Order the same day as it purportedly replaced the Purchase Order with the January 29, 2008 Version.

Taking all these documents together, there is significant uncertainty and ambiguity as to what exactly transpired on January 29, 2008 as far as the Purchase Order is concerned. It is well established that a contract should be construed most strongly against its maker. Comenos v. Viacom International, Inc., 857 F.Supp. 1160 (E.D.Mich. 1994), Division of Triple T Serv., Inc. v. Mobil Oil Corp., 304 N.Y.S.2d 191 (1969). Since it is undisputed that Delphi drafted the January 29, 2008 Version, this Court must construe the terms of the January 29, 2008 Version in the light most favorable to

Pg 8 of 11

American Aikoku, and in doing so, must find that Purchase Order SAG90I2815 has never been divided into an "old" Purchase Order and "new" Purchase Order, but is the same Purchase Order as has been entered into in 1997 and is still in existence today. In accordance with this finding, Delphi is then required to assume the Purchase Order and issue a cure payment to American Aikoku in the amount of $275,636.94 if it wishes to assign the Purchase Order to GM or another purchaser.

      **B.**      **The January 29, 2008 Version was issued in violation of Section 549 of the Bankruptcy Code.**

A Chapter 11 debtor-in-possession's transactions other than those in the ordinary course of business must be authorized by the court after notice and a hearing. Crystal. In the event a transaction is undertaken without notice and hearing and is not in an ordinary course of business, it may be avoided under Section 549 of the Bankruptcy Code. In re Southeast Hotel Properties Limited Partnership, 90 F.3d 151 (4th Cir. 1996). Section 549 was designed to protect creditors against unauthorized transactions by the debtor. In the Matter of Tippett, 542 F.3d 684 (9th Cir. 2008). The purpose of requiring notice and hearing if a transaction is other than in the ordinary course of business is so that creditors, who have a vital interest in maximizing realization from assets of the estate, have an opportunity to review the terms of the proposed transaction and to object if they deem the terms and conditions are not in their best interest. In re Crystal Apparel, Inc., 220 B.R. 816 (Bankr.S.D.NY. 1998). This provision was designed to protect creditors by giving them an opportunity to be heard when transactions are not ordinary. In re Roth American, Inc., 975 F.2d 949 (3rd Cir. 1992). Creditors have a right to consider whether

8

the proposed transaction imposes a financial cost that exceeds the possible benefit of entering into the agreement. In re Cook and Sons Mining, Inc., 2005 WL 2386238 (E.D.Ky. 2005). Thus, the issue is whether the transaction is the type of transaction which creditors would expect to have advance notice of and have a chance to object to. In re Waterfront Companies, Inc. v. Johnson, 56 B.R.31 (Bankr.D.Minn. 1985).

The bankruptcy code does not define "ordinary course of business," but courts have fashioned a test to determine whether a transaction was in the ordinary course of business. A transaction is in the ordinary course of business only if it is "most likely" the case that 1) the transaction does not expose a hypothetical creditor to economic risks different from those accepted when such creditor initially extended credit to the debtor, and 2) the transaction at issue is comparable to the types of transactions entered into by similar businesses. Boyer v. Gildea, 374 B.R. 645 (N.D.Ind. 2007). The first part of the test is called the "vertical" dimension, or creditor's expectation test, and the second part is called the "horizontal" dimension. In re Crystal Apparel, Inc., 220 B.R. 816 (Bankr.S.D.NY. 1998). If either dimension of the test is not satisfied, the disputed transaction is not in the ordinary course of business. In re Crystal.

Under the vertical test, creditor's reasonable expectations are based in large part upon the debtor's specific pre-petition business practices and norms and the expectation that the debtor will conform to those practices and norms while operating as a debtor-in-possession, and, therefore, a fundamental characteristic of an ordinary post-petition business transaction is its similarity to a pre-petition business practice. Boyer v. Gildea,

9

374 B.R. 645 (N.D.Ind. 2007). The January 29, 2008 Version fails the vertical test, as the post-petition transaction requesting American Aikoku to waive its claim in the amount of $275,636.94 is extraordinarily different from Delphi's pre-petition practices and certainly exposes American Aikoku to economic risks that are very different from those accepted when American Aikoku initially extended credit to Delphi and continued to do so through its pre-petition relationship with Delphi.

A number of court decisions support the notion that an act that was required of American Aikoku by the January 29, 2008 Version was an unusual and an out-of-ordinary act. *See*, United States v. Geupal Construction Co., 423 F.2d 818 (7th Cir. 1970) (it would be unusual for the seller to waive payment for materials which met the quality standards of the contract when delivered); In re Southern Industrial Banking Corp., 173 B.R. 901 (Bankr. E.D.Tenn. 1994) (the agreement committing a party in advance to waive the interest penalty it would ordinarily exact is unusual); In re Coast Trading Co., Inc., 744 F.2d 686 (9th Cir. 1984) (special arrangements made with the purpose of avoiding the consequences of bankruptcy are clearly outside of the ordinary course of business, and specific references to the pre-petition contracts confirm the extraordinary nature of the transaction). Thus, the January 29, 2008 Version was not issued in the ordinary course of business. Since Delphi failed to notice the proposed terms of the January 29, 2008 Version for hearing and failed to get this Court's authorization for its alleged January 29, 2008 transaction with American Aikoku, that transaction should be avoided and the January 29, 2008 Version should be set aside.

With respect to the horizontal test, American Aikoku is not aware of any other creditor with which Delphi attempted to enter into a similar transaction. However, since Delphi has failed the vertical dimension of the "ordinary course" test, it has failed the test as a whole, and Delphi's January 29, 2008 Version was not an ordinary transaction.

### III.    CONCLUSION

For all the reasons set forth above, the January 29, 2008 Version should be found invalid and set aside, and Delphi should be required to assume the Purchase Order and issue a cure payment to American Aikoku in the amount of $275,636.94 before it can assign the Purchase Order.

Date:   August 31, 2009

                                            **AMERICAN AIKOKU ALPHA, INC.**

                                            _/s/ Gary Vist_
                                            By One of its Attorneys

                                            Gary Vist
                                            MASUDA FUNAI EIFERT &
                                            MITCHELL, LTD.
                                            203 N. LaSalle Street, Suite 2500
                                            Chicago, Illinois 60601
                                            (312) 245-7500

                                            -and-

                                            Joseph H. Lemkin
                                            DUANE MORRIS LLP
                                            744 Broad Street, 12th Floor
                                            Newark, New Jersey 07102
                                            (973) 424-2000

C:\Documents and Settings\GVIST\Desktop\Work\Aikoku\brief.doc