SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti

Attorneys for Delphi Corporation, et al.,
  Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                        :
          In re                         :          Chapter 11
                                        :
DELPHI CORPORATION, et al.,             :          Case No. 05-44481 (RDD)
                                        :
                       Debtors.         :          (Jointly Administered)
                                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DEBTORS' SUPPLEMENTAL REPLY TO AMERICAN AIKOKU ALPHA, INC.'S
OBJECTIONS TO NONASSUMPTION OF PURCHASE ORDER SAG90I2815

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates,

debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"),

hereby submit this supplemental reply (the "Supplemental Reply") to certain objections filed by

American Aikoku Alpha, Inc. ("American Aikoku") regarding the Debtors' notice of

nonassumption of prepetition purchase order SAG90I2815 (the "Prepetition Purchase Order").

Preliminary Statement

1.        In their Omnibus Reply (Docket No. 18800) and the uncontested joint

exhibits introduced at the August 17, 2008 hearing (the "Hearing"), the Debtors established that

Delphi and American Aikoku entered into a new postpetition contract on January 29, 2008 (the

"Postpetition Purchase Order").  Although the Postpetition Purchase Order continued to refer to

the same purchase order number as the Prepetition Purchase Order for administrative

convenience, the Postpetition Purchase Order established different terms for pricing and duration,

and expressly stated that it was a new postpetition contract that was not subject to rejection or

assumption under section 365 of the Bankruptcy Code.  Accordingly, the Debtors argued that

they are neither required nor authorized to cure prepetition defaults under the Prepetition

Purchase Order in connection with their proposed assignment of the Postpetition Purchase Order.

2.        At the Hearing, the Court requested supplemental briefing regarding the

effect of a May 2008 stipulation, in which the Debtors mistakenly included the Prepetition

Purchase Order and prepetition amounts due thereunder within the lump sum cure amount to be

paid to American Aikoku in connection with the proposed sale of the Steering Business to

Steering Solutions Corporation, an affiliate of Platinum Equity (the "Steering Stipulation").[1]

---

[1]    The contract which the Debtors should have sought to assign in connection with the proposed sale of the
      Steering Business was the Postpetition Purchase Order.

Although the Steering Stipulation is no longer effective since it was contingent on a sale that

never occurred, American Aikoku argued at the Hearing that the Steering Stipulation binds the

Debtors to pay the cure amount reflected therein in connection with any sale of the Steering

Business.  As requested by the Court, this Supplemental Reply addresses (i) whether the Steering

Stipulation somehow modified the Postpetition Purchase Order to require payment of cure and, if

so, (ii) whether such modification would be voidable under applicable law, including section 549

of the Bankruptcy Code.

> 3.      As set forth more fully below, American Aikoku has performed under the

Postpetition Purchase Order for more than 18 months and the Steering Stipulation did not modify

the Postpetition Purchase Order.  First, the plain terms of the Steering Stipulation make no

mention of modifying the Postpetition Purchase Order and do not otherwise indicate any intent to

do so.  Second, the express terms of Delphi's Terms and Conditions, to which American Aikoku

agreed to be bound, provide that the Postpetition Purchase Order may be modified only by a

written contract amendment issued by Delphi.  The Steering Stipulation was not such a written

contract amendment.  Third, the parties' course of dealing shows that each time the parties

intended to modify their contract, such modifications were documented with a Delphi-issued

purchase order alteration as contemplated in Delphi's Terms and Conditions.

> 4.      Moreover, even if this Court were to find that the Steering Stipulation was

an attempt to modify the Postpetition Purchase Order to require the Debtors to pay American

Aikoku for prepetition defaults, the modification would be voidable under section 549 of the

Bankruptcy Code because the modification would, in essence, improperly authorize the payment

of a prepetition claim.

3

<u>Argument</u>

A.      <u>The Steering Stipulation Did Not Modify The Terms Of Purchase Order SAG90I2815</u>

5.      American Aikoku has performed under the Postpetition Purchase Order for more than 18 months and the Steering Stipulation did not modify the Postpetition Purchase Order.  Importantly, the Steering Stipulation, by its plain terms, does not modify the Postpetition Purchase Order and makes no mention of modifying the Postpetition Purchase Order.  As set forth more fully in the chronology below, the argument that the Steering Stipulation modified the Postpetition Purchase Order is not supported by (i) the express terms of Delphi's Terms and Conditions, (ii) the parties' course of dealing, or (iii) the intent of the parties.

(a)      <u>History Of Cure Notices For The Prepetition Purchase Order</u>

6.      On December 21, 2007, the Debtors sent American Aikoku a Cure Election Notice listing five purchase orders, including the Prepetition Purchase Order, as executory contracts entitled to receive a cure payment.  The Cure Election Notice listed a prepetition cure amount of $5,823.94.  On January 11, 2008, American Aikoku responded to the Cure Election Notice and indicated that it disagreed with the Debtors' asserted cure amount.

7.      On January 23, 2008, six days before the Debtors and American Aikoku entered into the Postpetition Purchase Order, the Debtors sent an Assumption Notice (Docket No. 12323) and a Cure Notice (Docket No. 12324) indicating that the Debtors intended to assume and assign the Prepetition Purchase Order in connection with the Debtors' proposed sale of their Steering Business to Steering Solutions Corporation.  The Cure Notice listed the same cure amount contained in the December 21, 2007 Cure Election Notice.

8.      On January 28 and 29, 2008, American Aikoku filed objections (Docket Nos. 12369 and 12376) to the Cure Notice (the "American Aikoku Steering Objections").  From

4

January 28, 2008 to May 28, 2008, counsel for the Debtors worked with counsel for American

Aikoku to resolve the American Aikoku Steering Objections.  On May 8, 2008, this Court

approved the Steering Stipulation resolving the American Aikoku Steering Objections.

(b)    Entry Into The Postpetition Purchase Order

9.    Separately, on January 29, 2008, the parties modified[2] the Prepetition

Purchase Order pursuant to a series of alterations issued in accordance with Delphi's Standard

Terms and Conditions.  Each of these alterations[3] were issued pursuant to Delphi's purchase

order management system.  The resulting Postpetition Purchase Order, containing each of these

alterations, was admitted into evidence as Joint Exhibit 14 at the Hearing.  As set forth in the

Debtors' Omnibus Reply and as the record of the Hearing reflects, American Aikoku agreed to

the terms of the Postpetition Purchase Order by performing under the contract without asserting

any reservation of rights under the previous contract.  See MICH. COMP. LAWS ANN. §

440.2206(1) (West 2009) (order to buy goods may be accepted by prompt shipment); see also In

re Delphi Corporation, Hr'g Tr. at 19, Aug. 17, 2009 ("The 2008 purchase order is very clear and

Michigan law is clear that it can be binding if the parties perform.").

10.    Purchase order SAG90I2815 incorporates Delphi's Terms and Conditions,

which provide that the terms of the purchase order "may only be modified by a written contract

amendment issued by Buyer."  (Delphi's General Terms and Conditions ¶ 29.)  Delphi's Standard

Terms and Conditions may not be modified unless Delphi "expressly agrees to accept such

proposals in writing."  (Delphi's General Terms and Conditions ¶ 1.)

---

[2]    Under Michigan law, modification of a contract includes abandonment of a contract, or any other change agreed
to by the parties, but does not include one party's unilateral termination or cancellation of the contract.  See
MICH. COMP. LAWS ANN. § 440.2209 cmt. 3 (West 2009).

[3]    Copies of the alterations were admitted into evidence at the Hearing as Joint Exhibits 15-20.

11.     The Steering Stipulation contains no provision that modifies either the

Postpetition Purchase Order directly or Delphi's General Terms and Conditions.  Indeed, the

Steering Stipulation does not reference any of the terms of either the Prepetition Purchase Order

or the Postpetition Purchase Order, but merely includes prepetition amounts due under the

Prepetition Purchase Order within a lump sum cure payment covering several purchase orders

that the Debtors intended to assume and assign in connection with the prior proposed sale of the

Steering Business.  The Debtors' inclusion of the Prepetition Purchase Order in the Steering

Stipulation was simply the result of Delphi's M&A team and Claims team being unaware that the

business parties[4] for American Aikoku and Delphi had entered into the Postpetition Purchase

Order shortly after the Debtors sent American Aikoku their Assumption Notice and Cure Notice

for the Prepetition Purchase Order.  The Debtors are unaware of any discussions regarding the

status of purchase order SAG90I2815 during the course of negotiating the Steering Stipulation.

Paragraph 29 of Delphi's Terms and Conditions therefore controls the manner in which the

parties may modify the contract.  See Rory v. Continental Insurance Co., 473 Mich. 457, 468

(2005) (contracts are to be enforced as written); see also Quality Products & Concepts Co. v.

Nagel Precision, Inc., 469 Mich. 362, 375 (2003).[5]  Because the Steering Stipulation did not

---

[4]   Only Delphi's purchasing department enters into purchase order alterations, whereas only the Delphi Claims
      team negotiates claims asserted against the Debtors in these bankruptcy cases.  The Debtors are counterparties
      to hundreds of thousands of purchase orders and changes are routinely negotiated by Delphi's purchasing
      department.  The Claims team cannot monitor all of these changes on a real time basis.  Instead, the Claims
      team refreshes its database of purchase orders either periodically or upon events that would impact cure (e.g.,
      the closing of a divestiture).

[5]   While the Debtors did not intend to modify the Postpetition Purchase Order by entering into the Steering
      Stipulation, there is authority under Michigan law that parties may enter into a subsequent agreement that may
      modify the terms of a prior contract.  However, these cases do not involve modifications accomplished in a
      manner that violated the terms of the prior agreement for how the contract could be modified.  See, e.g.,
      Omnicom of Michigan v. Giannetti Inv. Co., 221 Mich. App. 341, 347, 561 N.W. 2d 138, 141 (1997)
      (subsequent agreement showed intent of parties to be held liable for certain damages and therefore superseded
      prior agreement); Culver v. Castro, 126 Mich. App. 824, 826-28, 338 N.W.2d 232, 234 (1983) (April 18, 1978
      land contract was destroyed by parties and superseded by new land contract entered into on April 22, 1978).

6

constitute a "written contract amendment issued by Buyer," the Steering Stipulation did not

modify the Postpetition Purchase Order under Michigan law.

(c)    <u>Course Of Dealing Between American Aikoku And Delphi</u>

12.    Moreover, to the extent that any ambiguity exists regarding what constitutes a

written contract amendment issued by Delphi, Michigan law provides that the parties' course of

dealing "establishes a common basis of understanding for interpreting their expressions."  <u>See</u> MICH.

COMP. LAWS ANN. § 440.1205(1) (West 2009).  The course of dealing between American Aikoku

and the Debtors supports the Debtors' contention that the Postpetition Purchase Order was not

modified by the Steering Stipulation.  Delphi's Terms and Conditions should be construed

consistently with the course of dealing between Delphi and American Aikoku to enter into

purchase order alterations to modify the contractual relationship.  <u>See</u> MICH. COMP. LAWS ANN. §

440.1205(4) (West 2009) ("The express terms of an agreement and an applicable course of

dealing or usage of trade shall be construed wherever reasonable as consistent with each other.").

13.    The evidence before this Court shows that alterations issued by Delphi are

the means by which the contractual relationship between Delphi and American Aikoku is

modified.  For example, Alteration Number 77273 changed the expiration date from December

31, 2010 to December 31, 2011.  Alteration Number 77274 adding language providing that as of

January 29, 2008, the parties were entering into a new postpetition agreement and that American

Aikoku waived any right to receive cure under the Bankruptcy Code.[6]  Alteration Number 77275

---

6    The Postpetition Purchase Order expressly stated the following:

> As of its effective date, this purchase order constitutes a new agreement between the buyer and seller and
> supersedes and replaces any prior purchase orders or other agreements between the buyer and seller with
> respect to the subject matter hereof.  For the avoidance of doubt, the purchase order number assigned hereto
> by the buyer is utilized for administrative convenience only and this purchase order shall not be deemed an
> amendment to or modification of any prior purchase orders issued by buyer and accepted by seller, even if
> such prior purchase orders were assigned an identical purchase order number by the buyer. Each of the
> *(cont'd)*

7

implemented a new price for part no. 26001257 for the 2008 year at 169 JPY.  Alteration

Number 77276 implemented a new price for part no. 26001257 for the 2009 year at 165 JPY.

Alteration Number 77277 implemented a new price for part no. 26001257 for the 2010 year at

162 JPY.  Finally, Alteration Number 77278 implemented a new price for part no. 26001257 for

2008 as 159 JPY.  As set forth above, each of these alterations, included as Joint Exhibits 15-20

from the Hearing, was reflected in the new Postpetition Purchase Order set forth at Joint Exhibit

14.

           14.      Indeed, apart from its assertion that the Steering Stipulation altered the

Postpetition Purchase Order, American Aikoku has proffered no evidence showing that the

parties ever modified purchase order SAG90I2815, or any other purchase order subject to

Delphi's General Terms and Conditions by any means other than purchase order alterations

issued by Delphi.  Accordingly, purchase order SAG90I2815 may only be modified by an

alteration issued by Delphi (i.e., "a written contract amendment issued by Buyer").  Because the

Steering Stipulation does not on its face constitute such an alteration, it could not have modified

the Postpetition Purchase Order under Michigan law.

_____
*(cont'd from previous page)*

> buyer and the seller acknowledges and agrees that any prior purchase orders or other agreements between the buyer and seller, which are superseded and replaced by this purchase order as of its effective date **shall no longer be subject to assumption or rejection under the United States Bankruptcy Code and the seller hereunder waives any right to assert any of the rights incident to assumption or rejection, including, but not limited to, the payment of cure with respect to any such prior purchase orders or other agreements.** To the extent that any prior purchase orders or other agreements between the buyer and seller with respect to the subject matter hereof also provided for the supply or other goods or services by the seller to the buyer, such prior agreements shall be superseded and replaced only with respect to the subject matter hereof and all other provisions of such prior purchase orders or other agreements shall remain in full force and effect in accordance with their terms.

(Emphasis added.)

B.      Modifying The Postpetition Purchase Order To Allow Payment Of Prepetition Amounts
        Owed To American Aikoku Would Violate Section 549 Of The Bankruptcy Code

            15.     As this Court noted at the Hearing, the Postpetition Purchase Order clearly

stated that it constituted a new postpetition agreement between American Aikoku and the

Debtors that was not subject to assumption or rejection under section 365 of the Bankruptcy

Code.  Michigan law is also clear that a contract can be binding if the parties perform.  See In re

Delphi Corporation, Hr'g Tr. at 19, Aug. 17, 2009.  The Steering Stipulation, by contrast, made

no express claim to alter or modify the contractual relationship between the parties.  Even if it

did, such "amendment" would be impermissible under section 549 of the Bankruptcy Code since

it would allow a prepetition claim to be paid in cash in contravention of the absolute priority rule.

The Debtors erroneously submitted the Steering Stipulation for approval under this Court's

Amended and Restated Settlement Procedures Order.[7]  However, the Amended and Restated

Settlement Procedures Order does not give the Debtors authority to pay prepetition claims in

cash.

            (a)     Authorizing Payment Of A Prepetition Claim Violates Section 549
                    Of The Bankruptcy Code

            16.     American Aikoku asserts that entry of the Steering Stipulation entitles it to

receive $275,636.94 because it "shows that [the Debtors] have assumed" purchase order

SAG90I2815.  See In re Delphi Corporation, Hr'g Tr. at 13, Aug. 17, 2009. The Steering

Stipulation does not show that the Debtors have already assumed the purchase order because the

Steering Sale referred to in the Steering Stipulation never closed.  Moreover, the Steering

---

[7]     See Amended and Restated Order Under 11 U.S.C. §§ 363, 502 and 503 and Fed. R. Bankr. P. 9019(b)
        Authorizing Debtors to Compromise or Settle Certain Classes of Controversy and Allow Claims Without
        Further Court Approval (Docket No. 8401) ("Amended and Restated Settlement Procedures Order"), entered by
        this Court on June 26, 2007.

9

Stipulation does not entitle American Aikoku to a payment[8] of $275,636.94 because neither the

Steering Stipulation nor the Amended and Restated Settlement Procedures Order authorized the

Debtors to pay prepetition claims in cash absent a valid cure obligation.  Indeed, any such

payment would violate section 549 of the Bankruptcy Code, which provides that a postpetition

transfer of property of the estate may be avoided.  See In re Pan Trading Corp., 125 B.R. 869,

877 (S.D.N.Y. 1991) (voiding postpetition payment of $25,000 prepetition fine under

Bankruptcy Code section 549); In re Garland Coal & Mining Co., 67 B.R. 514, 519 (Bankr. W.D.

Ark. 1986) (postpetition payments made to creditors after petition was filed are subject to being

set aside under Bankruptcy Code section 549).

    17.  The agreement to pay cure in connection with the assumption of the

purchase order was based on a mistake, because the purchase order was modified on January 29,

2008 and was no longer a prepetition executory contract subject to assumption under section 365

of the Bankruptcy Code.[9]  If a transaction is undertaken without notice and a hearing that is not

in the ordinary course of business, it may be avoided under section 549 of the Bankruptcy Code.

See, In re Roth Am. Inc., 975 F.2d 949, 952 n.3 (3d Cir. 1992) (noting that in the event a

transaction is undertaken without notice and hearing and is not in ordinary course of business, it

may be avoided under Bankruptcy Code section 549); see also In re Southeast Hotel Properties

Ltd. P'ship, 99 F.3d 151, 153 n. 3 (4th Cir. 1996) (same).

---

[8] The agreement to pay $275,636.94 was not an agreement to cure defaults under section 365 of the Bankruptcy Code, because section 365's cure requirement is inapplicable to postpetition contracts.  See In re Anglo Energy Ltd., 41 B.R. 337, 341 (Bankr. S.D.N.Y. 1984) ("Section 365(a) is not applicable to post-petition contracts.").

[9] Importantly, when American Aikoku performed under the Postpetition Purchase Order, its acceptance of the Postpetition Purchase Order waived "any right to assert any of the rights incident to assumption or rejection, including, but not limited to, the payment of cure."  (See Alteration Number 77274.)

18.     Although section 549(a)(2) of the Bankruptcy Code provides that a debtor can pay a prepetition claim if it is authorized by the Court, neither the Steering Stipulation itself, nor the Amended and Restated Settlement Procedures Order, authorizes the payment of a prepetition claim absent a cure payment obligation under a valid prepetition contract.  Moreover, payment of a prepetition claim in cash is not in the ordinary course of the Debtors business and the Debtors' creditors were not put on notice that the Steering Stipulation could result in such payment.  Instead, the Steering Stipulation resolved the American Aikoku Steering Objections and authorized the Debtors to pay cure amounts to cure defaults under purchase orders that were erroneously believed to be prepetition contracts in the context of the Debtors' sale of their Steering Business to Steering Solutions Corporation.

19.     Thus, payment of $275,636.94 for prepetition amounts owed under the ineffective Prepetition Purchase Order would, in essence, constitute payment of a prepetition claim avoidable under section 549 of the Bankruptcy Code.  Accordingly, American Aikoku's request for payment of cure in the amount of $275,636.94 should be denied.

## Conclusion

20.     For the reasons stated above, American Aikoku's objections at Docket Nos. 17767, 17773, and 18395 should be overruled.

WHEREFORE, the Debtors respectfully request that this Court (i) enter an order

overruling American Aikoku's objections entered at Docket Nos. 17767, 17773, and 18395 and

(ii) grant the Debtors such other and further relief as is just.

Dated: New York, New York
        August 31, 2009

                                        SKADDEN, ARPS, SLATE, MEAGHER
                                          & FLOM LLP

                                        By:  /s/ John Wm. Butler, Jr.
                                            John Wm. Butler, Jr.
                                            John K. Lyons
                                            Ron E. Meisler
                                        155 North Wacker Drive
                                        Chicago, Illinois 60606
                                        (312) 407-0700

                                                    - and -

                                        By:  /s/ Kayalyn A. Marafioti
                                            Kayalyn A. Marafioti
                                        Four Times Square
                                        New York, New York 10036
                                        (212) 735-3000

                                        Attorneys for Delphi Corporation, et al.,
                                                Debtors and Debtors-in-Possession