**Hearing Date And Time: September 24, 2009 at 10:00 a.m.
Objection Deadline: September 17, 2009 at 4:00 p.m.**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr.
Ron E. Meisler

   - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                               :
    In re                              :    Chapter 11
                                               :
DELPHI CORPORATION, et al.,    :    Case No. 05-44481 (RDD)
                                               :
                                               :    (Jointly Administered)
                      Debtors.         :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MOTION FOR ORDER, SOLELY AS TO CREDITORS' COMMITTEE, EXTENDING
DEBTORS' EXCLUSIVE PERIODS WITHIN WHICH TO FILE AND SOLICIT
ACCEPTANCES OF REORGANIZATION PLAN UNDER 11 U.S.C. § 1121(d)

("SECOND § 1121(d) CREDITORS' COMMITTEE EXCLUSIVITY EXTENSION MOTION")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this motion (the "Motion") for an order under 11 U.S.C. § 1121(d) further extending, solely as between the Debtors and the Creditors' Committee (as defined below), the Debtors' exclusive periods within which to file and solicit acceptances of a plan of reorganization, and respectfully represent as follows:

Background

A.     The Chapter 11 Filings

1.     On October 8 and 14, 2005, the Debtors filed voluntary petitions in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as then amended (the "Bankruptcy Code"). The Debtors continue to operate their businesses and manage their properties as debtors-in-possession under Bankruptcy Code sections 1107(a) and 1108. This Court has ordered joint administration of these cases.

2.     No trustee or examiner has been appointed in these cases. On October 17, 2005, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Creditors' Committee"). On April 28, 2006, the U.S. Trustee appointed an official committee of equity holders, which was disbanded on April 24, 2009. On February 26, 2009, the U.S. Trustee appointed an official committee of retired employees to represent certain of the Debtors' current active salaried employees, retirees, and their spouses for certain limited purposes.

3.     On April 30, 2008, the Debtors obtained an extension, subject to certain exceptions described below, of their exclusive right under section 1121 of the

Bankruptcy Code to file one or more reorganization plans until 30 days after substantial consummation of the Confirmed Plan or any modified plan and the exclusive right to solicit and obtain acceptances for those plans until 90 days after substantial consummation of the Confirmed Plan or any modified plan.[1] The Debtors' exclusive right to file a plan, solely as between the Debtors and the Creditors' Committee (the "Plan Proposal Period"), has been extended through and including September 30, 2009, and the right to solicit a plan, solely as between the Debtors and the Creditors' Committee (the "Solicitation Period," and, together with the Plan Proposal Period, the "Exclusive Periods"), has been extended through and including November 30, 2009.[2]

    4.  This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

    5.  The statutory predicate for the relief requested herein, solely as between the Debtors and the Creditors' Committee, is section 1121(d) of the Bankruptcy Code, as amended and in effect on October 8, 2005.

B.  <u>Plan Confirmation And Postconfirmation Matters</u>

    6.  On December 10, 2007, the Debtors filed their first amended joint plan of reorganization (Docket No. 11386) (the "Plan") and related disclosure statement (Docket No. 11388). The Court entered an order confirming the Plan (as modified)

---

[1] See Order Under 11 U.S.C. § 1121(d) Extending Debtors' Exclusive Periods Within Which To File And Solicit Acceptances Of Reorganization Plan, dated April 30, 2008 (Docket No. 13483).

[2] See Order, Solely As To Creditors' Committee, Extending Debtors' Exclusive Periods With Which To File And Solicit Acceptances Of Reorganization Plan Under 11 U.S.C. § 1121(d), dated July 24, 2009 (Docket No. 18636) (the " Postconfirmation Exclusivity Order").

3

(Docket No. 12359) (the "Confirmation Order") on January 25, 2008, and the order became final on February 4, 2008.

       7.      The Plan, as confirmed by this Court (the "Confirmed Plan"), was based upon a series of global settlements and compromises that involved nearly every major constituency in the Debtors' reorganization cases, including Delphi's labor unions and General Motors Company ("GM").[3] The effectiveness of certain of these agreements, including the Debtors' two comprehensive agreements with GM, was conditioned on consummation of the Confirmed Plan. Although the Debtors on April 4, 2008 had satisfied the conditions required to substantially consummate the Confirmed Plan, including obtaining $6.1 billion of exit financing, Delphi's Plan Investors (as defined in the Confirmed Plan) refused to participate in the closing and refused to fund their Investment Agreement (as defined in the Confirmed Plan) with Delphi. On May 16, 2008, Delphi filed complaints for damages and specific performance against the Plan Investors and related parties who refused to honor their equity financing commitments or participate in the closing that would have led to Delphi's successful emergence from chapter 11 in April 2008. These suits remain pending.

       8.      During the fall of 2008 the Debtors formulated certain modifications to the Confirmed Plan. On October 3, 2008, Delphi filed a motion under 11 U.S.C. § 1127 for an order approving these modifications and also sought approval of a related disclosure statement and procedures for re-soliciting votes on the Confirmed Plan, as modified

---

[3] General Motors Corporation ("Old GM") sought chapter 11 protection on June 1, 2009. On July 10th, 2009, General Motors Corporation sold a substantial amount of its assets to a new legal entity, General Motors Company ("New GM"). For convenience, Old GM and New GM are referred to herein, as applicable, as GM.

4

(Docket No. 14310) (the "Plan Modification Motion").  Subsequently, however, substantial uncertainty and significant decline in capacity in global debt and equity markets, the global economic downturn generally, and an unprecedented decline in global automotive production volumes adversely impacted Delphi's ability to develop a revised recapitalization plan and successfully consummate the modified plan of reorganization.  Moreover, as a result of market turbulence, the Debtors were unable to extend the maturity date of their DIP credit facility (the "DIP Facility") on terms reasonably acceptable to the Debtors and their other stakeholders.  Accordingly, with the support of the administrative agent (the "DIP Agent") and the requisite lenders under the DIP Facility, the Debtors entered into an accommodation agreement (as subsequently amended) to allow the Debtors, among other things, to continue using certain of the proceeds of the DIP Facility.

        9.     In light of these factors, the Debtors adjourned the hearing on the Plan Modification Motion several times.  On June 1, 2009, the Debtors filed a supplement to the Plan Modification Motion (the "Motion Supplement") which sought approval of certain additional modifications to the Confirmed Plan (the "Modified Plan") as well as supplemental disclosure and procedures for re-soliciting votes on the Modified Plan.  The Motion Supplement was approved, with modifications, by order entered June 16, 2009 (the "Modification Procedures Order") and was later supplemented and amended by orders entered June 29, 2009 (Docket No. 17376), July 17, 2009 (Docket No. 18352), and July 21, 2009 (Docket No. 18551).

        10.    Also on June 1, 2009, while facing the most difficult economic period in decades with the most precipitous drop in U.S. vehicle sale volumes in half a

century, Delphi reached an agreement to effect its emergence from chapter 11 through a transaction with Parnassus Holdings II, LLC ("Parnassus"), an affiliate of Platinum Equity, and with the support of GM Components Holdings LLC ("GM Components"), an affiliate of GM.  In the exercise of the Debtors' fiduciary responsibilities to maximize the value of their estates for the benefit of all of their stakeholders, the Debtors executed an agreement (the "Platinum-GM Master Disposition Agreement") to reflect the foregoing transactions through a plan of reorganization.  The agreement and the changes to the Confirmed Plan were filed as part of the Motion Supplement on June 1, 2009.

11. The Modification Procedures Order, among other things, authorized the Debtors to commence solicitation of votes on the Modified Plan and set forth a comprehensive set of supplemental procedures for evaluating non-solicited alternative transactions to the Platinum-GM Master Disposition Agreement (as supplemented and amended, the "Supplemental Procedures").  The Supplemental Procedures provided for, among other things, an auction open to DIP Lenders making a Pure Credit Bid (as defined therein) and other Qualified Bidders (as defined therein).

12. Pursuant to the Supplemental Procedures, the Debtors held an auction on July 26 and 27, 2009 at which the DIP Agent submitted a Pure Credit Bid on behalf of the DIP lenders that was supported by the requisite majority of the two most senior tranches of the DIP Facility (the "Required Lenders").  The Pure Credit Bid involved a credit bid of 100% of the principal and interest due and owing in respect of the DIP Facility under the DIP Credit Agreement (after giving effect to the application of any cash collateral to the DIP Facility) and was based upon an alternative Master Disposition

Agreement (the "DIP Lender-GM Master Disposition Agreement") pursuant to which DIP Holdco 3, LLC ("DIP Holdco 3") would replace Parnassus as a purchaser, subject to the terms of the DIP Lender-GM Master Disposition Agreement.  DIP Holdco 3 is an entity controlled by certain of the DIP lenders that together constitute the Required Lenders under the DIP Facility.  At the conclusion of the auction, after careful consideration, Delphi's board of directors determined that the Pure Credit Bid was superior to the Platinum-GM Master Disposition Agreement, and approved it, subject to the parties' reaching a final agreement as to the terms and conditions of the Modification Approval Order and other items.  Subsequently, the Debtors made certain further modifications to the Modified Plan to address the results of the auction.

13. After holding a final plan modification hearing on July 29 and 30, 2009, the Court entered an order approving the Modified Plan (Docket No. 18707) (the "Plan Modification Order") on July 30, 2009.  Upon the effectiveness of the Modified Plan, Delphi will contemporaneously effectuate transactions, including the DIP Lender-GM Master Disposition Agreement, through which DIP Holdco 3 will operate Delphi's U.S. and non-U.S. businesses going forward with $3.6 billion in emergence capital and capital commitments but without the labor-related legacy costs associated with the North American sites which, together with Delphi's global steering business, are being acquired by GM Components.  DPH Holdings Corporation will emerge as a reorganized entity that retains certain residual non-core and non-strategic assets and liabilities that are expected to be divested over time.

14.     Consummation of these transactions through the Modified Plan, which embodies concessions made by parties-in-interest to resolve these chapter 11 cases, will provide for the satisfaction of all of the Debtors' administrative claims, secured claims, and priority claims and a potential distribution to holders of general unsecured claims. Moreover, Delphi's emerging businesses, through GM and DIP Holdco 3, will continue to develop and deliver high-quality products to their customers globally.

Relief Requested

15.     The Debtors seek to extend the Exclusive Periods (solely as to the Creditors' Committee) under section 1121(d) of the Bankruptcy Code to prevent any lapse in exclusivity as between the Debtors and the Creditors' Committee. The Debtors seek entry of an order further extending (a) the Plan Proposal Period, solely as between the Debtors and the Creditors' Committee, through and including November 30, 2009 and (b) the Solicitation Period, solely as between the Debtors and the Creditors' Committee, through and including January 31, 2010. Although the Debtors are requesting a further extension of the Exclusive Periods solely as between the Debtors and the Creditors' Committee, the Debtors nonetheless anticipate emerging from chapter 11 as soon as reasonably practicable. As explained above, the Exclusive Periods as to all other parties-in-interest are currently extended until after substantial consummation of the Confirmed Plan or any modified plan.

Basis For Relief

16.     As noted above, the Debtors on July 30, 2009 obtained approval of the Modified Plan. The Debtors intend to consummate the Modified Plan as soon as practicable. Solely out of an abundance of caution, the Debtors move to extend the

Exclusive Periods to prevent any lapse in exclusivity as between the Debtors and the Creditors' Committee.

17.    As a policy matter, the Exclusive Periods are intended to afford chapter 11 debtors a full and fair opportunity to rehabilitate their businesses and to negotiate, propose, confirm, and consummate a reorganization plan without the deterioration and disruption of their businesses that might be caused by the filing of competing reorganization plans by non-debtor parties.  In re Dow Corning Corp., 208 B.R. 661, 670 (Bankr. E.D. Mich. 1997) (stating that primary consideration in determining whether to terminate exclusive periods "should be whether or not doing so would facilitate moving the case forward").  A further prophylactic extension of the Exclusive Periods is justified here by the significant progress the Debtors have made towards emerging from chapter 11 since they last sought an extension of the Exclusive Periods.  Indeed, the Debtors are on the brink of exiting chapter 11 and extending the Exclusive Periods will permit the Debtors to remain focused on consummating the transactions set forth in the DIP Lender-GM Master Disposition Agreement and thereby emerging from chapter 11.  Therefore a further extension of the Exclusive Periods is justified.

Applicable Authority

18.    Under the Bankruptcy Code, a bankruptcy court may confirm only one plan of reorganization.  See 11 U.S.C. § 1129(c).  Because the Plan was confirmed on January 25, 2008 pursuant to the Confirmation Order that became final on February 4, 2008 and the modifications to the Confirmed Plan were approved on July 30, 2009 pursuant to the Plan Modification Order that became final on August 10, 2009, and because those orders cannot be revoked unless "procured by fraud," see 11 U.S.C.

§ 1144, no other plan of reorganization may now be filed or solicited in these cases. Instead, unless the Modified Plan is withdrawn by the Debtors in accordance with the discretion granted to them by Article 14.7(a) of the Modified Plan, only modifications to the Modified Plan proposed and prosecuted by the Debtors in accordance with section 1127 of the Bankruptcy Code may be considered by the Court. Thus, section 1129(c) of the Bankruptcy Code operates to extend the exclusive periods until the Modified Plan (as modified or otherwise) becomes effective. The Creditors' Committee, however, has expressly reserved in the Postconfirmation Exclusivity Order its rights to address, if any of the Exclusive Periods expires, whether 11 U.S.C. § 1129(c) prevents the Creditors' Committee from filing and soliciting a competing plan of reorganization.

19.     Nevertheless, section 1121(d) of the Bankruptcy Code permits the court to extend a debtor's exclusive periods upon a demonstration of cause:

> On request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section.

11 U.S.C. § 1121(d). The court in In re McLean Industries, Inc., 87 B.R. 830 (Bankr. S.D.N.Y. 1987), identified the following factors as relevant to the determination of "cause" to extend a debtor's Exclusive Periods:

(a)   the existence of good-faith progress toward reorganization;

(b)   existence of an unresolved contingency;

(c)   the size and complexity of the debtor's case;

(d)   a finding that the debtor is not seeking to extend exclusivity to pressure creditors "to accede to [the debtor's] reorganization demands"; and

    (e)  the fact that the debtor is paying its bills as they come due.

Id. at 834; accord In re Hoffinger Indus., Inc., 292 B.R. 639, 644 (B.A.P. 8th Cir. 2003) (stating that not all factors "are relevant in every case" and court has discretion to "decide which factors are relevant and give the appropriate weight to each").

    20.  In other cases of similar size and complexity to Delphi's, courts have extended the debtors' exclusive rights to propose a plan of reorganization for periods similar to those requested by the Debtors. See, e.g., In re Solutia Inc., No. 03-17949 (Bankr. S.D.N.Y. May 1, 2007) (extending periods for more than 43 months); In re W.R. Grace & Co., No. 01-01139 (Bankr. D. Del. Oct. 3, 2006) (extending exclusive periods for more than six years). In these cases, based upon the preceding factors and as is true of other cases of similar size and complexity, sufficient cause exists for a prophylactic extension of the Exclusive Periods as between the Debtors and the Creditors' Committee.

C.  The Debtors Have Made Good-Faith Progress Toward Reorganization

    21.  An extension of a debtor's exclusive periods is justified by a debtor's progress in resolving issues facing its creditors and estates. McLean Indus., 87 B.R. at 834; In re AMKO Plastics, Inc., 197 B.R. 74, 77 (Bankr. S.D. Ohio 1996). As set forth below, the Debtors' progress in these cases thus far is significant and compels a further extension of the Exclusive Periods, should it be necessary.

    22.  Key accomplishments. The Debtors have continued to make progress in their reorganization in significant ways. Most importantly, since the Debtors last sought an extension of their Exclusive Periods, the Debtors obtained Court approval of the Modified Plan by entry of the Plan Modification Order on July 30, 2009 after garnering the support of the administrative agent, the Creditors' Committee, GM, the Pension Benefit

Guaranty Corporation (the "PBGC"), the Required Lenders, certain state and federal agencies, Wilmington Trust Company as indenture trustee, and various other parties with respect to the Modified Plan following the auction process that led to the DIP Lender-GM Master Disposition Agreement. The Debtors also obtained Court approval of the Delphi-PBGC Settlement Agreement, which provides for the consideration and means by which the liens and other claims of the PBGC will be released so that the transactions contemplated by the Modified Plan can be consummated, and entered into an "Agreement for Appointment of Trustee and Termination of Plan," whereby the PBGC has become trustee of Delphi's salaried and hourly defined benefit pension plans.

23.     The Debtors also obtained two Court orders (Docket Nos. 18805 and 18842) reflecting the resolution or withdrawal of 34 objections filed by 28 counterparties to (a) nonassumption, (b) adequate assurance of future performance, (c) assumption and/or assignment with respect to executory contracts or unexpired leases to be assumed and/or assigned under the Modified Plan, and/or (d) cure amounts; obtained Court approval to sell their minority interest in a non-core joint venture, PBR Knoxville LLC, for $1.75 million; and agreed to further amendments of the Accommodation Agreement.

24.     <u>Claims reconciliation</u>.  The Debtors have reconciled most of the nearly 17,000 proofs of claim filed in these cases, which assert in the aggregate approximately $34.0 billion in liquidated amounts plus certain unliquidated amounts. As of August 31, 2009, the Debtors have objected to approximately 14,000 claims asserting nearly $10.6 billion (plus additional unliquidated amounts) and this Court has granted relief with respect to approximately $10.0 billion in asserted liquidated claims (plus

additional unliquidated claims). Most recently, the Debtors filed their 35th Omnibus Claims Objection.

25. In summary, because the Debtors have continued to make significant, good-faith progress in their chapter 11 cases, a further extension of the Exclusive Periods solely as between the Debtors and the Creditors' Committee is justified.

D.     Unresolved Contingencies Still Exist

26. Courts have also cited the need to resolve an important contingency as justification for extending a debtor's exclusive periods. The tasks of closing the transactions in DIP Lender-GM Master Disposition Agreement and consummating the Modified Plan remain significant for both their magnitude and complexity and amply satisfy the contingency component described in the McLean Industries test.

E.     These Cases Are Large And Complex

27. In large, complex chapter 11 cases, courts consistently extend the debtor's exclusive periods to afford the debtor time to stabilize its business, analyze reliable information to diagnose problems, formulate a long-term business plan, and obtain confirmation of a reorganization plan. Here, the size and complexity of the Debtors' chapter 11 cases alone constitute sufficient cause to extend the Exclusive Periods as between the Debtors and the Creditors' Committee. See, e.g., In re Texaco Inc., 76 B.R. 322, 324-25, 326-27 (Bankr. S.D.N.Y. 1987) (granting extension of exclusive periods based on debtor's size in $28.5 billion asset case with over 300,000 creditors and stockholders).

28. The Debtors' cases are indisputably large and multi-dimensional. The scope of actions required to effectuate Delphi's restructuring requirements is

13

exceedingly complex. At the time of its chapter 11 filing, Delphi ranked as the fifth largest public company business reorganization in terms of revenues and the thirteenth largest public company business reorganization in terms of assets. By any measure, the Debtors' chapter 11 cases are sufficiently large and complex to warrant an extension of the Exclusive Periods, as between the Debtors and Creditors' Committee. Moreover, in addition to the typical issues that can be anticipated to arise in a large chapter 11 case, the Debtors face numerous challenges that are unique to the distressed automobile industry and some that affect most large businesses that rely on the capital markets. The extension of the exclusive periods is necessary to continue progress in addressing these complexities.

F.      The Debtors Are Using Exclusivity For A Proper Purpose

29.     Courts have denied extensions of exclusive periods when plan negotiations among parties-in-interest have broken down and the continuation of exclusivity would merely give the debtor unfair bargaining leverage over the other parties-in-interest. See Teachers Ins. & Annuity Ass'n of Am. v. Lake in the Woods (In re Lake in the Woods), 10 B.R. 338, 345 (E.D. Mich. 1981). Here, however, the Debtors' request for an extension of the Exclusive Periods as between the Debtors and the Creditors' Committee is not a negotiation tactic. The Debtors negotiated with certain of their stakeholders, including and the administrative agent, the Creditors' Committee, GM, the PBGC, the Required Lenders , and Wilmington Trust Company as indenture trustee, and obtained their support for the Modified Plan. The Debtors have continued to negotiate with certain of their stakeholders, including reaching the Accommodation Agreement (and the amendments thereto) with the administrative agent, the majority of the tranche A lenders and tranche B lenders, and certain tranche C lenders, whereby the Debtors can continue to

use certain of the proceeds of the DIP credit facility through 8 p.m. (prevailing Eastern time) on September 17, 2009 (subject to certain conditions). Now that the Debtors have obtained an order confirming the Modified Plan, the Debtors are working to consummate the transactions set forth in the DIP Lender-GM Master Disposition Agreement, which transactions are necessary for the Debtors to emerge from chapter 11.

G. The Debtors Are Paying Their Bills As They Come Due

30. Courts considering an extension of exclusivity may also assess a debtor's liquidity and solvency. See In re Ravenna Indus., Inc., 20 B.R. 886, 890 (Bankr. N.D. Ohio 1982). The Debtors have satisfied this test by paying their bills as they come due, including the statutory fees paid quarterly to the United States Trustee, and by obtaining Court approval of certain amendments to the Accommodation Agreement to preserve the Debtors' liquidity.

H. The Debtors Have Shown Cause To Further Extend The Exclusive Periods

31. As described above, the Debtors have made significant and productive strides in these chapter 11 cases. Based on this progress and all the other applicable factors, sufficient cause exists to extend the Exclusive Periods as between the Debtors and the Creditors' Committee. Accordingly, the Debtors submit that the relief requested herein is in the best interests of the Debtors, their estates, and other parties-in-interest.

Notice

32. Notice of this Motion has been provided in accordance with the Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case

Management, And Administrative Procedures, entered March 20, 2006 (Docket No. 2883), and the Fifteenth Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And Administrative Procedures, entered August 27, 2009 (Docket No. 18839).  In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

WHEREFORE the Debtors respectfully request that the Court enter an order (a) extending the Debtors' exclusive periods, solely as between the Debtors and the Creditors' Committee, (i) to file a plan of reorganization through and including November 30, 2009 and (ii) to solicit acceptance of a plan of reorganization through and including January 31, 2010 and (b) granting the Debtors such other and further relief as is just.

Dated:   New York, New York
         September 4, 2009

                          SKADDEN, ARPS, SLATE, MEAGHER
                            & FLOM LLP

                          By:   /s/ John Wm. Butler, Jr.
                                John Wm. Butler, Jr.
                                Ron E. Meisler
                          155 North Wacker Drive
                          Chicago, Illinois 60606
                          (312) 407-0700

                                - and –

                          By:   /s/ Kayalyn A. Marafioti
                                Kayalyn A. Marafioti
                          Four Times Square
                          New York, New York 10036
                          (212) 735-3000

                          Attorneys for Delphi Corporation, et al.,
                            Debtors and Debtors-in-Possession