| | |
|---|---|
| SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP<br>155 North Wacker Drive<br>Chicago, Illinois 60606<br>(312) 407-0700<br>John Wm. Butler, Jr.<br>Ron E. Meisler | SHEARMAN & STERLING LLP<br>599 Lexington Avenue<br>New York, New York 10022<br>(212) 848-4000<br>Douglas P. Bartner<br>Andrew V. Tenzer<br>Michael S. Baker |

SKADDEN, ARPS, SLATE, MEAGHER
   & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                  :
   In re                             :   Chapter 11
                                  :
DELPHI CORPORATION, et al.,      :   Case No. 05-44481 (RDD)
                                  :
                  Debtors.    :   (Jointly Administered)
                                  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

EXPEDITED MOTION FOR ORDER (I) UNDER 11 U.S.C. § 363 AUTHORIZING
DEBTORS TO FUND FEE AND EXPENSE AGREEMENTS IN CONNECTION WITH
THIRTY-THIRD AMENDMENT TO ACCOMMODATION AGREEMENT AND (II) UNDER
11 U.S.C. § 364 FOR APPROVAL OF ACCOMMODATION AGREEMENT AMENDMENTS
<u>THROUGH EFFECTIVE DATE OF MODIFIED PLAN OF REORGANIZATION</u>

("PRE-EFFECTIVE DATE ACCOMMODATION AMENDMENT MOTION")

        Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates,

debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"),

hereby submit this Expedited Motion For Order (I) Under 11 U.S.C. § 363 Authorizing Debtors

To Fund Fee And Expense Agreements In Connection With Thirty-Third Amendment To Accommodation Agreement And (II) Under 11 U.S.C. § 364 For Approval Of Accommodation Agreement Amendments Through Effective Date Of Modified Plan Of Reorganization (the "Motion"), and respectfully represent as follows:

Background

A.  The Chapter 11 Filings

    1.    On October 8 and 14, 2005, the Debtors filed voluntary petitions in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as then amended (the "Bankruptcy Code"). The Debtors continue to operate their businesses and manage their properties as debtors-in-possession under Bankruptcy Code sections 1107(a) and 1108. This Court has ordered joint administration of these cases.

    2.    No trustee or examiner has been appointed in these cases. On October 17, 2005, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Creditors' Committee"). On April 28, 2006, the U.S. Trustee appointed an official committee of equity holders, which was disbanded on April 24, 2009. On February 26, 2009, the U.S. Trustee appointed an official committee of retired employees to represent certain of the Debtors' current active salaried employees, retirees, and their spouses for certain limited purposes.

    3.    This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

    4.    The statutory predicates for the relief requested herein are sections 363 and 364 of the Bankruptcy Code and rule 6004(h) of the Federal Rules of Bankruptcy Procedure.

2

B.  Plan Confirmation And Postconfirmation Matters

5.  On December 10, 2007, the Debtors filed their first amended joint plan of reorganization (Docket No. 11386) (the "Plan") and related disclosure statement (Docket No. 11388). The Court entered an order confirming the Plan (as modified) (Docket No. 12359) (the "Confirmation Order") on January 25, 2008, and the order became final on February 4, 2008.

6.  During the fall of 2008 the Debtors formulated certain modifications to the Confirmed Plan. On October 3, 2008, Delphi filed a motion under 11 U.S.C. § 1127 for an order approving these modifications and also sought approval of a related disclosure statement and procedures for re-soliciting votes on the Confirmed Plan, as modified (Docket No. 14310) (the "Plan Modification Motion"). Subsequently, however, substantial uncertainty and significant decline in capacity in global debt and equity markets, the global economic downturn generally, and an unprecedented decline in global automotive production volumes adversely impacted Delphi's ability to develop a revised recapitalization plan and successfully consummate the modified plan of reorganization. Moreover, as a result of market turbulence, the Debtors were unable to extend the maturity date of their DIP credit facility (the "DIP Facility") on terms reasonably acceptable to the Debtors and their other stakeholders. Accordingly, with the support of the administrative agent (the "DIP Agent") and the requisite lenders under the DIP Facility, the Debtors entered into an accommodation agreement (as subsequently amended) to allow the Debtors, among other things, to continue using certain of the proceeds of the DIP Facility.

7.  On June 1, 2009, the Debtors filed a supplement to the Plan Modification Motion (the "Motion Supplement") which sought approval of certain additional modifications to the Confirmed Plan (the "Modified Plan") as well as supplemental disclosure and procedures for re-soliciting votes on the Modified Plan. The Motion Supplement was approved, with modifications, by order entered June 16, 2009 (the "Modification Procedures Order") and was

3

later supplemented and amended by orders entered June 29, 2009 (Docket No. 17376), July 17, 2009 (Docket No. 18352), and July 21, 2009 (Docket No. 18551).

8. Also on June 1, 2009, while facing the most difficult economic period in decades with the most precipitous drop in U.S. vehicle sale volumes in half a century, Delphi reached an agreement to effect its emergence from chapter 11 through a transaction with Parnassus Holdings II, LLC ("Parnassus"), an affiliate of Platinum Equity, and with the support of GM Components Holdings LLC ("GM Components"), an affiliate of GM. In the exercise of the Debtors' fiduciary responsibilities to maximize the value of their estates for the benefit of all of their stakeholders, the Debtors executed an agreement (the "Platinum-GM MDA") to reflect the foregoing transactions through a plan of reorganization. The agreement and the changes to the Confirmed Plan were filed as part of the Motion Supplement on June 1, 2009.

9. The Modification Procedures Order, among other things, authorized the Debtors to commence solicitation of votes on the Modified Plan and set forth a comprehensive set of supplemental procedures for evaluating non-solicited alternative transactions to the Platinum-GM MDA (as supplemented and amended, the "Supplemental Procedures"). The Supplemental Procedures provided for, among other things, an auction open to DIP Lenders making a Pure Credit Bid (as defined therein) and other Qualified Bidders (as defined therein).

10. Pursuant to the Supplemental Procedures, the Debtors held an auction on July 26 and 27, 2009 (the "Auction") at which the DIP Agent submitted a Pure Credit Bid on behalf of the DIP Lenders that was supported by the requisite majority of the two most senior tranches of the DIP Facility (the "Required Lenders"). The Pure Credit Bid involved a credit bid of 100% of the principal and interest due and owing in respect of the DIP Facility under the DIP Credit Agreement (after giving effect to the application of any cash collateral to the DIP Facility) and was based upon an alternative Master Disposition Agreement (the "Master Disposition

4

Agreement") pursuant to which DIP Holdco 3, LLC ("DIP Holdco 3") would replace Parnassus as a purchaser, subject to the terms of the Master Disposition Agreement. DIP Holdco 3 is an entity controlled by certain of the DIP lenders that together constitute the Required Lenders under the DIP Facility. At the conclusion of the Auction, after careful consideration, Delphi's board of directors determined that the Pure Credit Bid was superior to the Platinum-GM MDA, and approved it, subject to the parties' reaching a final agreement as to the terms and conditions of the Modification Approval Order and other items. Subsequently, the Debtors made certain further modifications to the Modified Plan to address the results of the Auction.

    11.  After holding a final plan modification hearing on July 29 and 30, 2009, the Court entered an order approving the Modified Plan (Docket No. 18707) (the "Plan Modification Order") on July 30, 2009. Upon the effectiveness of the Modified Plan, Delphi will contemporaneously effectuate transactions, including the Master Disposition Agreement, through which DIP Holdco 3 will operate Delphi's U.S. and non-U.S. businesses going forward with $3.6 billion in emergence capital and capital commitments but without the labor-related legacy costs associated with the North American sites which, together with Delphi's global steering business, are being acquired by GM Components. DPH Holdings Corporation will emerge as a reorganized entity that retains certain residual non-core and non-strategic assets and liabilities that are expected to be divested over time.

    12.  Consummation of these transactions through the Modified Plan, which embodies concessions made by parties-in-interest to resolve these chapter 11 cases, will provide for the satisfaction of all of the Debtors' administrative claims, secured claims, and priority claims and a potential distribution to holders of general unsecured claims. Moreover, Delphi's emerging businesses, through GM and DIP Holdco 3, will continue to develop and deliver high-quality products to their customers globally.

C.  The Accommodation Agreement And Amendments Thereto

13. Since January 5, 2007, the Debtors have been operating in these chapter 11 cases by utilizing the DIP Facility,[1] which is comprised of three tranches: (i) a first priority revolving credit facility ("Tranche A"), (ii) a first priority term loan ("Tranche B"), and (ii) a second priority term loan ("Tranche C").[2] The DIP Facility is governed by an Amended and Restated Revolving Credit, Term Loan and Guaranty Agreement dated as of May 9, 2008 (as amended, the "Credit Agreement"). Since the fourth quarter of 2008 and following the maturity of the DIP Facility on December 31, 2008, the Debtors have continued to use certain of the proceeds of the DIP Facility pursuant to an accommodation agreement (as amended, the "Accommodation Agreement")[3] entered into with the DIP Agent with the consent of the requisite percentage of lenders (the "DIP Lenders") under the Credit Agreement (i.e., the Required Lenders).[4] This Court authorized the Debtors to enter into the Accommodation Agreement by order entered on December 3, 2008 (the "DIP Accommodation Order") (Docket No. 14515) and the parties subsequently effectuated the agreement on December 12, 2008.

14. Subsequent to entering into the Accommodation Agreement, the Debtors and the requisite percentage of DIP Lenders, including those who participated in the

---

[1] The history of the DIP Facility is described in detail in the Debtors' Expedited Motion For Order (I) Supplementing January 5, 2007 DIP Refinancing Order (Docket No. 6461) And Authorizing Debtors To Enter Into And Implement Accommodation Agreement With Agent And Participating Lenders And (II) Authorizing Debtors To (A) Enter Into Related Documents And (B) Pay Fees In Connection Therewith, filed on November 7, 2008 (Docket No. 14408) (the "Accommodation Motion").

[2] As of the date of this Motion the Debtors owe approximately $230 million to the Tranche A lenders, $310 million to the Tranche B lenders, and $2.75 billion to the Tranche C lenders.

[3] A copy of the Accommodation Agreement is attached as Exhibit A to the DIP Accommodation Order (as defined below).

[4] Although under the terms of the Second Amended and Restated DIP Credit Agreement the Debtors were not required to seek the Tranche C lenders' consent to the Accommodation Agreement, to encourage Tranche C lenders to assist the Debtors with their emergence capital funding efforts, the Debtors nevertheless sought and obtained this Court's approval of certain incentives for those Tranche C lenders which consented to the Accommodation Agreement.

6

Accommodation Agreement (the "Participant Lenders"), have executed a series of amendments to the Accommodation Agreement. Because the first several amendments to the Accommodation Agreement, and certain supplements to it, involved the payment of certain fees and expenses to the Participant Lenders, in an exercise of caution the Debtors agreed to seek this Court's authorization to enter into such amendments and use estate funds to pay such fees and expenses.[5] Since the Court approved the third amendment to the Accommodation Agreement on May 21, 2009, the Debtors and the Participant Lenders have entered into thirty separate amendments to the Accommodation Agreement. These amendments provided for, among other things, short extensions of the period during which the Debtors could continue using certain of the proceeds of the DIP Facility (the "Accommodation Period"). In connection with amendments four through thirty-two of the Accommodation Agreement, other than amendment sixteen, the Debtors did not incur any new obligations to the DIP Lenders to pay fees or expenses. The Debtors sought and obtained this Court's approval for amendment sixteen.[6] The Debtors have not sought approval of any amendments to the Accommodation Agreement subsequent to this Court's approval of the Modified Plan.

Relief Requested

15. By this Motion, the Debtors seek entry of an order (i) authorizing them to fund fee and expense agreements in connection with the thirty-third amendment to the Accommodation Agreement (the "Thirty-Third Amendment"), which was reached on September

---

[5] See, e.g., Accommodation Amendment Order entered on February 25, 2009 (Docket No. 16377), Final Accommodation Supplemental Second Amendments Order entered on April 23, 2009 (Docket No. 16575), and Final Accommodation Third Amendment Order entered on May 21, 2009 (Docket No. 16633).

[6] See Order (I) Ratifying and Approving Debtors' Entry into Sixteenth Amendment to Accommodation Agreement and Related Documents with Certain Participating DIP Lenders and (II) Authorizing Debtors to Pay Fees and Expenses in Connection Therewith, July 24, 2009 (Docket No. 18633).

17, 2009 and extends the Accommodation Period through September 29, 2009,[7] and (ii) approving Accommodation Agreement amendments through the Effective Date of the Modified Plan.

## Basis For Relief

16.  Subsequent to obtaining this Court's approval of the Modified Plan on July 30, 2009, the Debtors have been working with the counterparties to the Master Disposition Agreement approved in connection with the Modified Plan and other stakeholders to consummate the Modified Plan and its underlying transactions.  The Debtors currently anticipate substantially consummating the Modified Plan following the receipt of remaining global regulatory approvals and emerging from chapter 11 during the week of October 5, 2009. Following this Court's approval of the Pure Credit Bid from the DIP Agent, the related Master Disposition Agreement, and the Modified Plan, the Debtors and the DIP Agent have continued to enter into additional amendments to the Accommodation Agreement.  As an accommodation to the DIP Lenders and to continue to foster an appropriate working relationship with the Debtors' new owners, the Debtors have agreed to these amendments notwithstanding the Pure Credit Bid and the representations, made at the Auction in connection therewith that the Accommodation Agreement was to be extended through a single amendment until the Effective Date of the Modified Plan.  These amendments have benefited the Debtors' estates by providing transparency to other stakeholders regarding the Debtors' financing arrangements and ensuring the continuation of certain hedge obligations.

17.  Although the Debtors do not believe that these amendments are necessarily required in light of the Master Disposition Agreement and the Modified Plan (except in the extraordinary circumstance that the Master Disposition Agreement were to be terminated,

---

[7]  The Thirty-Third Amendment is attached hereto as <u>Exhibit A</u>.

since the rights of the DIP Lenders are fully preserved in such circumstances), the fact that there are benefits to the Debtors' estates and the DIP Agent and DIP Lenders have requested such amendments warrant the relief requested in this Motion.  Additionally, the DIP Agent and DIP Lenders have requested under the Thirty-Third Amendment that the Debtors obtain a further order of the Court confirming the Debtors' authority under section 363 of the Bankruptcy Code to fund and/or continue to fund certain fee and expense agreements entered into with the DIP Agent and several lead members of the DIP Facility which were responsible for formulating the Pure Credit Bid and are now assisting the Debtors with moving towards substantial consummation of the Modified Plan.

18. In consideration for arranging the amendment to the accommodation agreement, the DIP Agent has requested the payment of certain fees and expenses in accordance with its fee letter dated September 17, 2009 (the "Amendment No. 33 Fee Letter").  Of the thirty-two prior amendments to the Accommodation Agreement that have been negotiated and received, the DIP Agent has received fees in connection with only three of the prior amendments.[8]  The fees and expenses payable under the Amendment No. 33 Fee Letter are <u>de minimis</u> and the Debtors expect that these will be the only fees and expenses required to be paid to the DIP Agent prior to the closing date of the Master Disposition Agreement in connection with the structuring and arrangement of the Accommodation Agreement.

19. In addition to the Amendment No. 33 Fee Letter, the Debtors have also entered into certain new and amended expense side letters in which the Debtors have agreed to reimburse reasonable and out-of-pocket expenses of certain advisors to the DIP Lenders who are assisting the parties to prepare for the closing of the Master Disposition Agreement or who have

---

[8] Such fees were paid pursuant to five separate fee letters, all of which were in connection with the first through third Accommodation Agreement amendments and the supplements thereto.

9

otherwise played a significant role in the formation of the Pure Credit Bid. Seeking this Court's approval and paying these fees and expenses is consistent with prior practices and accordingly the Debtors hereby seek this Court's authorization to make payments in accordance with those amended letters.[9]

20. In addition, the Debtors propose that their execution and delivery of the DIP Amendments as of September 17, 2009, together with all other documentation executed in connection therewith (the "Thirty-Third Amendment Documents"), be ratified and approved and that they be authorized, but not directed, to perform and take all actions necessary to effectuate the Thirty-Third Amendment and any subsequent amendments through the Effective Date. The Debtors also seek a final ruling that the Thirty-Third Amendment Documents and each of the instruments and documents as may be necessary to effectuate the Thirty-Third Amendment or any subsequent amendments through the Effective Date constitute valid and binding obligations of the Debtors, the DIP Agent, and the DIP Lenders, enforceable against each party thereto in accordance with their respective terms.

21. The Debtors propose that the DIP Refinancing Order,[10] as supplemented by subsequent Supplemental DIP Orders[11] (the DIP Refinancing Order and the Supplemental

---

[9] As this Court is aware, in connection with prior amendments to the Accommodation Agreement, the Debtors have entered into similar expense side letters. On express agreement of the parties, these letters have always been kept confidential, with copies being provided to counsel to the Creditors' Committee (on a professional's eyes only basis) and the United States Trustee, if requested, and made available for the Court's review prior to its approval of the Debtors' reimbursement of a DIP Lender's expenses. Consistent with prior practice, the Amendment No. 33 Fee Letter and new and amended expense side letters will be provided, upon request, to these parties.

[10] Order Under 11 U.S.C. §§ 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), And 364(e) And Fed. R. Bankr. P. 2002, 4001 And 6004(g) (I) Authorizing Debtors To Obtain Post-Petition Financing And (II) Authorizing Debtors To Refinance Secured Post-Petition Financing And Prepetition Secured Debt (Docket No. 6461) (the "DIP Refinancing Order").

[11] The DIP Refinancing Order has been supplemented by (i) the DIP Extension Order (Docket No. 10957), (ii) the Second DIP Extension Order (Docket No. 13489) (as supplemented by the Supplemental Second DIP Extension Order (Docket No. 13699)), (iii) the DIP Accommodation Order (Docket No. 14515), (iv) the Accommodation

10

DIP Orders, together, the "DIP Order"), be deemed supplemented by any order approving this Motion but otherwise continue in full force and effect.

Applicable Authority

D.   This Court Should Authorize The Thirty-Third Amendment

   (a)   The Thirty-Third Amendment Is An Appropriate Use Of
         Estate Property Under Section 363(b)(1) Of The Bankruptcy Code

22.   The Debtors submit that entry of an order authorizing the Debtors to fund fee and expense agreements in connection with the Thirty-Third Amendment is appropriate and in the best interests of the Debtors' estates. Bankruptcy Code section 363(b)(1) permits a debtor-in-possession to use property of the estate "other than in the ordinary course of business" after notice and a hearing. 11 U.S.C. § 363(b)(1). Use of estate property outside the ordinary course of business may be authorized if the debtor demonstrates a sound business justification for it. See Comm. Of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1071 (2d Cir. 1983) (business judgment rule requires finding that good business reason exists to grant debtor's application under section 363(b)); see also In re Delaware & Hudson Ry. Co., 124 B.R. 169, 178-79 (D. Del. 1991).

23.   Based on the foregoing, the Debtors submit that entry of the requested relief is appropriate. The Debtors are seeking to assure the DIP Lenders of payment of only their fees and expenses that have been reasonably incurred in connection with the formation and implementation of the Master Disposition Agreement. The agreements and the Thirty-Third Amendment have been negotiated in good faith, at arm's length, and in the exercise of the

---

Amendment Order (Docket No. 16377), (v) the Interim Accommodation Supplemental Second Amendment Order (Docket No. 16549), (vi) the Final Accommodation Supplemental Second Amendment Order (Docket No. 16575), (vii) the Interim Accommodation Third Amendment Order (Docket No. 16609), (viii) Interim Fourth Amendment to DIP Credit Agreement Order (Docket No. 16610), (ix) the Final Accommodation Third Amendment Order (Docket No. 16633), (x) the Final Fourth Amendment to DIP Credit Agreement Order (Docket No. 16634), and (xi) the Accommodation Sixteenth Amendment Order (Docket No. 18633) (collectively, the "Supplemental DIP Orders").

Debtors' business judgment. Bankruptcy courts routinely defer to a debtor's business judgment on most business decisions. See Group of Institutional Investors v. Chicago, Milwaukee, St. Paul & Pac. R.R. Co., 318 U.S. 523, 550 (1943); In re Simasko Prod. Co., 47 B.R. 444, 449 (Bankr. D. Colo. 1985). In considering whether a debtor has exercised its business judgment, a court is not free to second-guess particular provisions but rather must determine whether the proposed action "as a whole is within reasonable business judgment." In re Crowthers McCall Pattern, Inc., 114 B.R. 877, 888 (Bankr. S.D.N.Y. 1990).

        24.     The Second Circuit has held that, although the Bankruptcy Court sits as an "overseer of the wisdom with which the bankruptcy estate's property is being managed by the . . . debtor-in-possession," it must nevertheless resist becoming "arbiter of disputes between creditors and the estate." Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.), 4 F.3d 1095, 1099 (2d Cir. 1993). Once the debtor articulates a valid business justification, a presumption arises that "'in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.'" Official Comm. Of Subordinated Bondholders v. Integrated Resources, Inc. (In re Integrated Resources, Inc.), 147 B.R. 650, 656 (S.D.N.Y. 1992) (citation omitted). Thereafter, "[p]arties opposing the proposed exercise of a debtor's business judgment have the burden of rebutting the presumption of validity." Id. To satisfy its burden, it is not enough for an objector simply to raise and argue an objection. Rather, an objector "is required to produce some evidence respecting its objections." In re Lionel Corp., 722 F.2d at 1071.

        25.     The Debtors have exercised sound business judgment in determining that it is appropriate to fund fee and expense agreements in connection with the Thirty-Third Amendment and that such relief is reasonable and in the best interests of the Debtors' estates. Accordingly, the Debtors should be granted authority to pay the relevant fees and expenses and

to take the other actions contemplated by the agreements and the Thirty-Third Amendment as requested herein.

      (b)      **The Thirty-Third Amendment And Any Subsequent Accommodation Agreement Amendments Should Be Approved Under Section 364(c) Of The Bankruptcy Code**

26.      To the extent that section 364 is applicable to the relief sought herein, the Thirty-Third Amendment and any subsequent amendments through the Effective Date are fully appropriate under that statutory provision. The requirement for obtaining postpetition credit under section 364(c) is a finding, made after notice and a hearing, that the debtors are "unable to obtain unsecured credit allowable under section 503(b)(1) of [the Bankruptcy Code]." 11 U.S.C. § 364(c). This Court already made this finding in the DIP Refinancing Order, which approved the Debtors' DIP Facility. This finding is even more justified today because the credit markets have deteriorated precipitously from the strong credit environment that existed in January 2007 when the Court entered the DIP Refinancing Order. Moreover, in light of the short duration of this extension as well as the interconnectedness between the DIP Facility and the emergence transactions as approved by this Court, it is impractical to find any new lenders which would provide the necessary financing on better terms than provided in the DIP Facility, through the Thirty-Third Amendment, and through any subsequent amendments through the Effective Date. Because the DIP Facility will remain in place, subject to the terms of the Accommodation Agreement, as amended by the accommodation amendments, the Debtors should be permitted to continue to grant the liens in accordance with section 364(c) of the Bankruptcy Code.

27.      Section 364(c) financing is appropriate when the trustee or debtor-in-possession is unable to obtain unsecured credit allowable as an ordinary administrative claim. See In re Ames Dep't Stores, Inc., 115 B.R. 34, 37-39 (Bankr. S.D.N.Y. 1990) (debtor must show

13

that it has made a reasonable effort to seek other sources of financing under sections 364(a) and (b) of the Bankruptcy Code); In re Crouse Group, Inc., 71 B.R. 544, 549 (Bankr. E.D. Pa. 1987) (secured credit under section 364(c)(2) of the Bankruptcy Code is authorized, after notice and hearing, upon showing that unsecured credit cannot be obtained).

28. Courts have articulated a three-part test to determine whether a debtor is entitled to financing under section 364(c) of the Bankruptcy Code. Specifically, courts look to whether

(a) the debtor is unable to obtain unsecured credit under section 364(b), i.e., by allowing a lender only an administrative claim;

(b) the credit transaction is necessary to preserve the assets of the estate; and

(c) the terms of the transaction are fair, reasonable, and adequate, given the circumstances of the debtor-borrower and the proposed lender.

In re Ames Dep't Stores, 115 B.R. at 37-39. This Court found that these conditions were met when it entered the DIP Refinancing Order. Because the DIP Facility will remain in place, subject to the provisions of the Accommodation Agreement, as amended by the Thirty-Third Amendment and any subsequent amendment, this Court's prior findings should continue to apply.

(c) The Thirty-Third Amendment And Any Subsequent Amendments
Should Be Approved Under Section 364(d) Of The Bankruptcy Code

29. To the extent that section 364(d) of the Bankruptcy Code is implicated by the Thirty-Third Amendment or any subsequent amendments of the Accommodation Agreement through the Effective Date, the agreements are appropriate and should be approved under that provision. Section 364(d)(1) provides that the Court may, after notice and a hearing, authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if–

14

> (a) the trustee is unable to obtain such credit otherwise; and
>
> (b) there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.

11 U.S.C. § 364(d)(1). The determination of adequate protection is a fact-specific inquiry to be decided on a case-by-case basis. In re Mosello, 195 B.R. 277, 288 (Bankr. S.D.N.Y. 1996). "'Its application is left to the vagaries of each case . . . but its focus is protection of the secured creditor from diminution in the value of its collateral during the reorganization process.'" Id. (quoting In re Beker Indus. Corp., 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986)). In this case, the Debtors have already established that they are unable to obtain credit without priming liens. This amendment will not impair the priming lien structure under the DIP Facility, as amended, including the adequate protection provided to parties whose liens have been primed. Accordingly, to the extent that the Thirty-Third Amendment or any subsequent amendment provides for an extension of credit, the Debtors submit that such extension of credit meets the requirements of section 364(d)(1).

(d) The Amended DIP Facility Should Be Accorded The Benefits Of Section 364(e)

30. Section 364(e) of the Bankruptcy Code provides that the "reversal or appeal of an authorization . . . to obtain credit or incur debt, or of a grant . . . of a priority or a lien, does not affect the validity of any debt so incurred, or any priority or lien so granted, to an entity that extended such credit in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and the incurring of such debt, or the granting of such priority or lien, were stayed pending appeal." The Thirty-Third Amendment has been negotiated in good faith. The Debtors expect that, as has been true of the amendments previously negotiated, the parties will act in good faith and at arms'-length in negotiating the terms of any

15

subsequent amendments as well.  Other than as disclosed in the Thirty-Third Amendment and the related fee and expense letters, no consideration is being provided to any party to, or guarantor of, obligations arising under the amended DIP Facility.  Accordingly, the amended DIP Facility should be accorded the benefits of section 364(e) of the Bankruptcy Code for all the reasons set forth herein.

      (e)    <u>Compliance With General Order No. M-274</u>

      31.    The Debtors believe that the relief requested in this Motion and the notice to be provided are in compliance with the Guidelines for Financing Requests (the "Guidelines"), adopted under General Order No. M-274 of the Board of Judges for the Southern District of New York.  The Debtors do not believe that entering into the Thirty-Third Amendment or any subsequent amendment through the Effective Date creates or will create any incremental right that would trigger the application of the Extraordinary Provision (as defined in the Guidelines) requirements beyond that which was already satisfied in the DIP Motion[12] and approved by this Court pursuant to the DIP Refinancing Order.  Accordingly, the Debtors submit that they have satisfied the Guidelines.

E.    <u>Waiver Of The Ten-Day Stay Provided By Bankruptcy Rule 6004</u>

      32.    Bankruptcy Rule 6004(h)[13] provides:  "An order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 10 days after entry of the order, unless the court orders otherwise."  The Debtors request that this Court waive this ten-day stay to allow the Debtors to fulfill the requirements of the Thirty-Third Amendment, including authorization for the payment of related fees and expenses prior to September 26,

---

[12]    Expedited Motion For Order Under 11 U.S.C. §§ 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), And 364(e) And Fed. R. Bankr. P. 2002, 4001 And 6004(g) (I) Authorizing Debtors To Obtain Post-Petition Financing And (II) Authorizing Debtors To Refinance Secured Post-Petition Financing And Prepetition Secured Debt dated December 18, 2006 (Docket No. 6180)

[13]    Formerly Bankruptcy Rule 6004(g).

16

2009, as the Debtors continue to expeditiously move towards the closing of the Master Disposition Agreement and emergence from chapter 11 pursuant to the Modified Plan. Although the Court did not grant similar relief from Bankruptcy Rule 6004(h) in granting the Accommodation Order, the Debtors submit that the ability to effectuate the Thirty-Third Amendment immediately would further the Debtors' efforts to consummate the Modified Plan within the coming weeks. The Court did grant similar relief in entering each of the Supplemental DIP Orders, other than the DIP Accommodation Order, and other courts in this district have waived this ten-day stay upon a showing of business need. See In re Adelphia Commc'ns Corp., 327 B.R. 143, 175 (Bankr. S.D.N.Y. 2005) ("As I find that the required business need for a waiver has been shown, the order may provide for a waiver of the 10-day waiting period under Fed. R. Bankr. P. 6004(g)."); In re PSINet Inc., 268 B.R. 358, 379 (Bankr. S.D.N.Y. 2001) (requiring demonstration of "a business exigency" for a waiver of the ten-day stay under Bankruptcy Rule 6004(h)).

## Notice Of Motion

33.    Notice of this Motion will be provided in accordance with the proposed order to show cause submitted to the Court on September 18, 2009. In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

WHEREFORE the Debtors respectfully request that the Court enter an order (i) authorizing them to fund fee and expense agreements in connection with the Thirty-Third Amendment, (ii) approving Accommodation Agreement amendments through the Effective Date of the Modified Plan, and (iii) granting the Debtors such other and further relief as is just.

Dated:    New York, New York
          September 18, 2009

SKADDEN, ARPS, SLATE, MEAGHER
 & FLOM LLP

By:    /s/ John Wm. Butler, Jr.
       John Wm. Butler, Jr.
       John K. Lyons
       Ron E. Meisler
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

- and -

By:    /s/ Kayalyn A. Marafioti
       Kayalyn A. Marafioti
Four Times Square
New York, New York 10036
(212) 735-3000

- and -

SHEARMAN & STERLING LLP

By:    /s/ Douglas P. Bartner
       Douglas P. Bartner
       Andrew V. Tenzer
       Michael S. Baker
599 Lexington Avenue
New York, New York 10022
(212) 848-4000

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession