1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case No. 08-44481-rdd

- - - - - - - - - - - - - - - - - - - -x

In the Matter of:


DELPHI CORPORATION, et al.,


        Debtors.


- - - - - - - - - - - - - - - - - - - -x


                United States Bankruptcy Court

                One Bowling Green

                New York, New York


                September 24, 2009

                10:03 AM


B E F O R E:

HON. DELPHI CORPORATION

U.S. BANKRUPTCY JUDGE

2

1

2   Forty-Seventh Omnibus Hearing

3

4   Hearing RE:   Second § 1121(d) Creditors' Committee Exclusivity

5   Extension Motion - Motion For Order, Solely As To Creditors'

6   Committee, Extending Debtors' Exclusive Periods Within Which To

7   File And Solicit Acceptances Of Reorganization Plan Under 11

8   U.S.C. § 1121(d) (Docket No. 18884)

9

10   Hearing RE:   Pre-Effective Date Accommodation Amendment

11   Motion - Expedited Motion For Order (I) Under 11 U.S.C. § 363

12   Authorizing Debtors To Fund Fee And Expense Agreements In

13   Connection With Thirty-Third Amendment To Accommodation

14   Agreement And (II) Under 11 U.S.C. § 364 For Approval Of

15   Accommodation Agreement Amendments Through Effective Date Of

16   Modified Plan Of Reorganization (Docket No. 18913)

17

18   Hearing RE:   Debtors' Thirty-Fifth Omnibus Claims Objection -

19   Debtors' Thirty-Fifth Omnibus Objection Pursuant To 11 U.S.C. §

20   502(b) And Fed. R. Bankr. P. 3007 To (I) Expunge (A) Books And

21   Records Claim, (B) Certain Salaried Pension And OPEB Claims,

22   (C) Certain Wage And Benefit Claims, And (D) Certain Individual

23   Workers' Compensation Books And Records Claims And (II) Modify

24   And Allow Certain Claims (Docket No. 18826)

25

3

1

2      Claims and Contracts Hearing

3

4      Hearing RE:  (I) Certain Objections To Non-assumption Of

5      Certain Contracts And Leases, Assumption And Assignment Of

6      Executory Contracts And Unexpired Leases, And Cure Amounts, And

7      (II) Certain Other Claims Matters

8

9      Hearing RE:  Doc #17767; Aikoku Alpha, Inc. Objection to Notice

10     of Non-assumption Under the Modified Plan with Respect to

11     Certain Expired or Terminated Contracts or Leases Previously

12     Deemed to Be Assumed or Assigned Under Confirmed Plan

13

14

15

16

17

18

19

20

21

22

23

24     Transcribed by:  Hana Copperman and Pnina Eilberg

25

4

1

2      A P P E A R A N C E S :

3      SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

4             Attorneys for Debtor

5             155 West Wacker Drive

6             Chicago, IL 60606

7

8      BY:   JOHN WM. BUTLER, JR., ESQ.

9             RON E. MEISLER, ESQ.

10            CARL T. TULLSON, ESQ.

11

12

13     SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

14            Attorneys for Debtor

15            Four Times Square

16            New York, NY 10036

17

18     BY:   KAYALYN A. MARAFIOTI, ESQ.

19

20     LATHAM & WATKINS, LLP

21            Attorneys for Creditors' Committee

22            885 Third Avenue

23            New York, New York 10022

24

25     BY:   ADAM J. GOLDBERG, ESQ.

5

1

2    DECHERT LLP

3         Attorneys for Kensington International, Manchester

4         Securities, Springfield Associates, LLC

5         1095 Avenue of the Americas

6         New York, NY 10036

7

8    BY:   GLENN E. SIEGEL, ESQ.

9

10

11   TOGUT, SEGAL & SEGAL LLP

12        Conflicts Counsel

13        One Penn Plaza

14        New York, NY 10119

15

16   BY:   NEIL BERGER, ESQ.

17

18

19   BARNES & THORNBURG LLP

20        Attorneys for Autocam Corporation

21        11 South Meridian Street

22        Indianapolis, IN 46204

23

24   BY:   JOHN T. GREGG, ESQ.

25        (TELEPHONICALLY)

6

1

2    MASUDA FUNAI EIFERT & MITCHELL, LTD.

3         Attorneys for American Aikoku

4         203 North LaSalle Street

5         Chicago, IL 60601

6

7    BY:   GARY VIST, ESQ.

8         (TELEPHONICALLY)

9

10

11   MONARCH ALTERNATIVE CAPITAL LP

12        Interested Party

13        535 Madison Avenue

14        New York, NY 10022

15

16   BY:   ROBERT BURNS, ESQ.

17        (TELEPHONICALLY)

18

19

20

21

22

23

24

25

7

1               P R O C E E D I N G S

2          THE COURT:  Be seated.  Okay.  Delphi Corporation.

3          MR. BUTLER:  Your Honor, good morning.  Jack Butler,

4     along with Kayalyn Marafioti, here for the company's forty-

5     seventh omnibus hearing.  Your Honor, just a word of note, we

6     have two agenda today.  There are two separate hearings that

7     have been scheduled for this morning.  The first is the omnibus

8     hearing.  There are seven matters on that hearing.  Only a few

9     of those matters are going forward, and only the claims

10    objection matter has objections filed, and we're not going to

11    deal with those objections today, as is our custom.

12          And then there is a separate hearing agenda with

13    respect to certain objections to non-assumption of certain

14    contracts and leases, another of the 365 matters that we've

15    been involved with in these cases as we move towards

16    substantial consummation of the modified plan.  That agenda has

17    thirty-six matters on it, and our understanding is that Your

18    Honor may have a bench ruling with respect to one matter.

19    There is the Court's consideration of the proposed order that

20    was attached to our omnibus reply, and there were a couple of

21    stipulations that the Skadden and Togut firms will have to

22    present to the Court with respect to that, but there's no other

23    contested matter that's going to go forward with respect to

24    that agenda.

25          Our request to the Court, if the Court's willing, is

8

1   that we would deal with the omni matters now, take a five

2   minute recess, change out the teams, let some of us be excused

3   who are not involved in the other portion of the second

4   hearing, and for Delphi Mr. Meisler and Mr. Berger would handle

5   the second hearing.

6           THE COURT:  That's fine.

7           MR. BUTLER:  Thanks.  So, Your Honor, we're going to

8   move forward, then, with the omni hearing.  Both agendas have

9   been made available in the courtroom for people in the

10  courtroom, and the first two matters are matters that are being

11  adjourned.  The first one, Furukawa's administrative expense

12  motion, filed at docket number 18706, there has been

13  substantial discussion between Furukawa and Delphi in seeking

14  to resolve this.  Furukawa has agreed to adjourn this matter

15  without date, and it would be their obligation, if they want to

16  proceed with it, to re-notice it in connection with the case

17  management order.

18          THE COURT:  Okay.

19          MR. BUTLER:  Matter number 2 is the AT&T

20  administrative expense motion claim at docket number 18737.

21  Again, there's been substantial progress on this matter, and

22  the parties have agreed to adjourn this off of the omni track

23  onto the claims track, and it would be adjourned to the October

24  7, 2009 claims hearing.

25          THE COURT:  Okay.  That's fine.

9

1          MR. BUTLER:  Thank, Your Honor.  Moving to the first

2     of the uncontested matters, matter number 3 on the agenda is

3     the Section 1121(d) creditors' committee exclusivity extension

4     motion at docket number 18884.  The request is to move the

5     applicable dates to November 30, 2009 and January 31, 2010.

6     This, at this moment, is entirely prophylactic.  We're moving

7     towards substantial consummation of the modified plan in

8     October.  This is done strictly as a prophylactic measure in

9     case the plan is not substantially consummated, which we think

10    is highly unlikely at this moment, and there are no objections

11    to the request.

12          THE COURT:  Okay.  Let me just -- I have no problem

13    with the motion, and I'll grant that relief.  Let me just you

14    separately, do you have a closing date yet or --

15          MR. BUTLER:  We do, Your Honor.  Our intention is to

16    close as soon as practical after all of the global regulatory

17    clearances have come in.  We believe that's going to happen

18    during the week of October 5th.  We've indicated in the

19    financing motion, which I'll take up shortly, that we expect to

20    close during the week of October 5th.  That's the current

21    expectation.  The exact day tends -- is really focused on

22    trying to sort through regulatory clearances outside of the

23    United States, which our people are actively focused on here.

24          I would comment that the parties continue, both the

25    parties to the pure credit bid that was accepted and General

10

1    Motors, as new owners working with Delphi, continue to go

2    through a hundred plus page closing checklist.  There are

3    meetings almost every day.  There is the usual give-and-take,

4    and it goes on.  One actually has to negotiate all the

5    documents required for a closing of this complexity.  I don't

6    think there's anything, certainly from Delphi's perspective,

7    that rises at this moment to the level needing any guidance

8    from Your Honor in connection with the plan modification order.

9    People continue to work through things.  I think everyone, on

10   all sides, is trying to come to what I call appropriate social

11   resolutions of issues where a clarification is needed here or a

12   perspective is needed there or people are applying the words to

13   actual real life situations across the, frankly, across the

14   globe as people sort through all of these issues.  I think

15   people are working together and trying in good faith to move

16   towards substantial consummation of the plan.

17          If we think, at some point, Your Honor, we need

18   guidance we'll contact chambers, but at that moment I think

19   people are making good progress on their own.  I hope that will

20   continue, and, as I say, I think it is the parties'

21   expectations that the plan effective date will occur during the

22   week of October 5th.

23          THE COURT:  Okay.  All right.

24          MR. BUTLER:  Your Honor, the next matter on the agenda

25   is the debtors' pre-effective date accommodation amendment

11

1    motion at docket number 18913.  This is, you may recall, Your

2    Honor, the last time we were before the Court in connection

3    with the accommodation agreement was in connection with the

4    sixteenth amendment to the accommodation agreement.  That order

5    was granted on July 24th.  We also obtained authority to pay

6    certain fees and expenses of parties to the accommodation

7    agreement at that time.  We haven't sought approval of any

8    amendments to the accommodation agreement subsequent to the

9    Court's approval of the modified plan, and the debtors have

10   expressed their views in the motion we filed that certainly the

11   approval of the, continuing approval of these accommodation

12   agreement amendments as we move to the modified plan may not

13   actually be necessary, given the record at the auction and the

14   record at the plan modification hearing with respect to the

15   accommodation agreement, which is to be extended through the

16   closing date of the modified plan.  But, on the other hand, the

17   parties are working together.  There are agreements that our

18   DIP lenders would like us to confirm.  They'd like the comfort

19   order of this Court on certain of these matters, so we've come

20   back for this hearing.

21        We've asked in this hearing, and there are no

22   objections to it -- we discussed it with the committee -- that

23   the approval here include the approval of any further

24   extensions through the date of the modified plan.  There are

25   some amendments to fee letters, and an additional fee letter

12

1    that's been put in place here.  I point out there is a de

2    minimis fee letter that has been made available for Your

3    Honor's review and for the committee's review involving the

4    administrative agent, which has been compensated, I think, for

5    only two or three of the thirty-three amendments that they've

6    had to process through.  And the company has agreed to these

7    letters.  We don't expect there to be any further letters

8    between now and the closing date.  We believe these amendments

9    reflect all the letters that we'll be dealing with.

10           So, Your Honor, I can go through what's in the motion,

11   but it's, as I understand it, otherwise uncontested, and I can

12   answer any questions Your Honor might have.

13           THE COURT:  Well, I don't have a problem with, I

14   guess, with approving extensions of the accommodation

15   agreement.  And I don't think I have a problem with the agent's

16   fee letter in that as long as the amendments are necessary, and

17   I guess it's retroactive, too.  I mean, it deals with prior

18   amendments as well.

19           MR. BUTLER:  Correct, Your Honor.

20           THE COURT:  I was puzzled by the changes to the, and

21   the addition of, I think, one other fee letter.  The changes

22   add a lot of different professionals, and it all seems to be

23   related to the closing of the transaction.  In other words, it

24   seems to me, I guess, just reading between the lines of the

25   other fee letters, that the non-debtor parties to these letters

13

1   are wearing their buyer hat.  Maybe I'm wrong about that, but I

2   got that sense, and I didn't know where that was coming from.

3   MR. BUTLER:  Well, Your Honor, I think, again, like

4   many other issues in this case, particularly as we move towards

5   a consensual substantial modification of the modified plan, the

6   company working with the parties to the Master Disposition

7   Agreement are seeking to have what we think are appropriate

8   negotiated outcomes of what otherwise could be disputes.  And

9   the general view here is that there are costs being incurred in

10  connection with the transition team, that is the implementation

11  of the pure credit bid, and it is, at least for what I will

12  call the lead members of that pure credit bid, the two or three

13  funds that are leading it and that are really at the central of

14  the day-to-day, work of the day-to-day transition, the view is

15  that that expense ought to be, because a pure credit bid is an

16  exercise of a remedy under the DIP agreement, that, in fact, it

17  should be paid for by the debtors.  And the debtors have

18  concluded, in their business judgment, that looking at this

19  transaction as a whole and trying to work towards a consensual

20  closing, that these particular amendments to the expense

21  letters are not inappropriate.  They --

22  THE COURT:  Well, does the MDA say that each side will

23  bear its own fees and expenses or is it silent on that?

24  MR. BUTLER:  I think it's silent on that point, Your

25  Honor.  That's my recollection.  I don't think it requires.  I

14

1    just don't recall.  Mr. Siegel is here.

2          MR. SIEGEL:  THE MDA can be interpreted, in our view,

3    in either way in good faith.  I wouldn't go as far as Mr.

4    Butler, but I do think that you can read the document in either

5    way, and we believe the appropriate way to read it is what is

6    set forth in the debtors' motion today.

7          THE COURT:  Well, the motion doesn't really discuss

8    this issue at any --

9          MR. SIEGEL:  No, no.  What I mean by that is that all

10   the parties to the MDA have been noticed of this and have

11   actually approved this amendment.

12         THE COURT:  All right.

13         MR. SIEGEL:  So that those parties have all decided

14   that this interpretation of the document is the one that they

15   think makes the most sense.

16         THE COURT:  Well, I guess that leads to my next

17   question, which may be the only question that's worth knowing

18   the answer to here, which is whose ox is being gored here?

19   I.e. there's clearly going to be additional money spent by the

20   debtors.  Are the buyers essentially paying themselves out of

21   their own assets, or is some other constituency in the case

22   adversely affected by this money being paid out?

23         MR. BUTLER:  Your Honor, I think it's a good question.

24   I think I have an answer and perspective on that.

25         THE COURT:  Okay.

15

1          MR. BUTLER:  First, this is not a request for

2     reimbursement under the Master Disposition Agreement.  This is

3     a request for reimbursement under the DIP financing agreement,

4     and that's a distinction, I think, with a difference, but I

5     think it still is important for the question you're asking,

6     because under the terms of the Master Disposition Agreement the

7     monies that are being spent now on this, the reimbursements

8     that are being spent, are coming from two sources, monies that

9     have been funded by General Motors and cash collateral that the

10    lenders have, which is being consumed.

11         THE COURT:  Okay.

12         MR. BUTLER:  Both of those things are occurring.  It

13    is anticipated that around the time the closing occurs there

14    will be very little, if any, cash collateral left, and GM's

15    monies will have been consumed.  All right?  And then we'll

16    have the transaction occur, and, as you know, under the terms

17    of the Master Disposition Agreement the DIP loan is converted

18    to equity.  General Motors waives its administrative claims for

19    all of those things.  So the sources of funding, if you will,

20    for these expenses are those two sources.

21         THE COURT:  And the people who are providing those two

22    sources have notice of this and have agreed to it?

23         MR. BUTLER:  Correct, Your Honor.  The people who have

24    it are General Motors on the one hand and the DIP lenders who

25    have approved this amendment on the other.  And this is --

16

1          THE COURT:  Including the fee letters?

2          MR. BUTLER:  Correct.  And this is --

3          THE COURT:  Okay.

4          MR. BUTLER:  And the fee letters, that's why I said

5     it's a distinction with a difference.  If this was a master

6     disposition agreement issue it would be more complicated.  The

7     fact that the DIP lenders have not only approved these but

8     required that they be funded in connection with the thirty-

9     third amendment, and the required lenders have approved the

10    thirty-third amendment, that, I think, is an important

11    distinction for the purposes that we discussed.  I also think

12    it's important to know, remember under the Master Disposition

13    Agreement, that if there is a cash balance left in the company

14    on the closing date that cash balance gets swept back to

15    General Motors.  So it's not as though if we had --

16          THE COURT:  Okay.

17          MR. BUTLER: -- a lot of money left that somehow that

18    would fall into some bucket for somebody that they would let us

19    have.

20          THE COURT:  All right.

21          MR. BUTLER:  So it's --

22          THE COURT:  All right.

23          MR. BUTLER:  Those are the mechanics of it, and that's

24    how the --

25          THE COURT:  Well, I guess that resolves any doubts I

1    had about this.  You are, effectively, paying yourselves then.

2    Or -- and/or GM is aware of this and has not objected.

3        MR. SIEGEL:  GM, because of the way the LSA was set

4    up, GM has to approve every single one of these amendments, the

5    accommodation agreement, and they approved this one.

6        THE COURT:  Okay.  In light of that I'll approve the

7    motion in full, including their aspect of it that seeks

8    approval of these fee letters.

9        MR. BUTLER:  Thank you, Your Honor.

10       THE COURT:  Okay.

11       MR. BUTLER:  Your Honor, the fifth matter on the

12   agenda is the debtors' thirty-fifth omnibus claims objection at

13   docket number 18826.  This is an objection focused, among other

14   things, on employee related claims and allowed settled claims.

15   There are 470 proofs of claim that are on the objection.  We

16   have withdrawn, as I'll describe in a moment, seven claims from

17   the objection that we're not seeking relief on today.  And

18   there have been responses filed covering twelve claims, as

19   well, that are now contested, and we won't be dealing with

20   those today.  Those we'll move over to the claims tract,

21   leaving 451 proofs of claim that we're asking Your Honor to

22   deal with today, as I'll describe.

23       The 470 claims we originally filed on the thirty-fifth

24   omnibus claims objection asserted approximately 37 million

25   dollars in claims plus unliquidated amounts.  We, as I

18

1    indicated, received ten timely filed responses.  Those cover

2    twelve proofs of claim, asserting aggregate claims of about 1.9

3    million in liquidated amounts together with unliquidated

4    amounts.  We filed an omnibus reply, which includes a chart

5    summarizing these responses, indicating the claims covered by

6    these responses that we adjourn to a future hearing date in

7    accordance with the claims order.

8            There are seven proofs of claim that we're withdrawing

9    today and one proof of claim we're modifying in connection with

10   the proposed order we're asking the Court to consider.  We're

11   withdrawing objections as to the proof of claim number 12669

12   filed by Contrarian Fund, LLC.  Proof of claim numbers 10681,

13   13249 and 13341 filed by Henkel Corporation.  Proof of claim

14   number 7247 filed by Exxon Mobil Oil Corporation.  Proof of

15   claim number 416 filed by Hitachi Corporation and proof of

16   claim number 13572 filed by United Plastics Group, Inc.  We

17   have withdrawn these after conferring with counsel to these

18   claimants and have concluded, based on those discussions, that

19   these claims either should be resolved on another track or that

20   there were errors in the assertions made in the motion and that

21   we should withdraw the objections.

22           THE COURT:  Okay.

23           MR. BUTLER:  With respect to proof of claim number

24   9263, which was filed by Trans-Tron Ltd., and subsequently

25   transferred in part to Bear Stearns Investment Products, the

19

1    proposed order has a different modification as to how the claim

2    will be allowed in terms of the split between Trans-Tron and

3    Bear Stearns.  The amount allocated to Trans-Tron will be

4    reduced by approximately 218,000 dollars, and, ultimately,

5    there will be an allocation to Bear Stearns of $2,240,718.54,

6    with the balance being to Trans-Tron.

7            Your Honor, after taking effect, then, to these seven

8    withdrawals and this modification, the relief we're seeking

9    today on an uncontested basis deals with 451 claims, asserting

10   liquidated claims of approximately 28.1 million plus certain

11   unliquidated amounts.  Briefly, in looking at these claims,

12   there are 244 pension and OPEB claims, in the aggregate amount

13   of approximately 12.2 million, which we're asking the Court to

14   disallow and expunge.  There are 23 wage and benefit claims in

15   the amount of 473,000, which we're asking the Court to disallow

16   and expunge.  There are 166 individual workers' compensation

17   claims in the amount of approximately 5 million, which we're

18   asking the Court to disallow and expunge.  There's one modified

19   and allowed claim that asserted priority treatment, in part,

20   because of a reclamation claim.  We're asking Your Honor to

21   allow as an entirely unsecured claim in the amount of 610,000.

22   And there are seventeen claims allowed pursuant to settlement,

23   and we're asking Your Honor to allow these claims as unsecured

24   claims in the aggregate amount of about 9.9 million.

25            We've laid all this out, Your Honor, in the proposed

20

1    order.  We have followed the normal claims protocol here, and

2    we have given particularized notice of this motion to the

3    claimants involved.

4        THE COURT:  Okay.  In light of that, and, in

5    particular, in light of the individualized notice to each

6    claimant and the fact that the debtors are now asking me to

7    disallow or reclassify or reconfigure only claims where there's

8    no opposition or there's, in a couple of cases, agreement, I'll

9    grant that relief.

10       MR. BUTLER:  Thank you, Your Honor.  Your Honor, the

11   other two matters on the agenda for the omni today were in the

12   adversary proceeding involving the CSC case at case number 09-

13   01271.  These involved a debtors' motion for determination at

14   docket number 30 and plaintiff's motion for leave to file an

15   amended complaint at docket number 36.  The parties have agreed

16   to adjourn both those motions off of this agenda to a date to

17   be determined between the parties and the Court.

18       THE COURT:  Okay.

19       MR. BUTLER:  So I've nothing to report on those.

20       THE COURT:  Does that mean there's some progress in

21   maybe resolving this matter or --

22       MR. BUTLER:  I wouldn't go so far as to make --

23       THE COURT:  To say that.

24       MR. BUTLER:  -- those statements.

25       THE COURT:  All right.

1        MR. BUTLER:  As you know, my colleague, Mr. Hogan, is

2    dealing with this --

3        THE COURT:  All right.

4        MR. BUTLER:  -- and he told me that they just, the

5    parties agreed they did not want to proceed today on those

6    motions.

7        THE COURT:  Okay.  All right.

8        MR. BUTLER:  All right?

9        THE COURT:  Okay.  So you can hand up those orders,

10    and I'll just stay out here, but we can take a break.

11        MR. BUTLER:  Great.  We'll take about five minutes,

12    Your Honor, and we're going to switch out.  And those of us

13    involved in the omni that aren't involved in the claims would

14    ask to be excused, Your Honor.

15        THE COURT:  That's fine.

16        MR. BUTLER:  Thank you.

17        (Recess from 10:24 a.m. to 10:26 a.m.)

18        THE COURT:  Corporation.

19        MR. MEISLER:  Good morning, Your Honor.  Ron Meisler

20    of Skadden, Arps on behalf of Delphi Corporation and its

21    affiliated debtors.  Your Honor, this is the second half of our

22    hearing.  This is the claims and contract hearing.  Your Honor,

23    we have thirty-six matters on the agenda.  Your Honor, matter

24    1, American Aikoku, we understand that Your Honor is prepared

25    to rule today.

22

1          THE COURT:  I'll give a ruling at the end of this

2     hearing.

3          MR. MEISLER:  Terrific.  Thank you very much.  Your

4     Honor, we also have -- we have another thirty-five matters.

5     Please note that matters 20 through 36 are continued matters.

6     If Your Honor likes I'm happy to go into those.

7          THE COURT:  No, that's fine.

8          MR. MEISLER:  Terrific.

9          THE COURT:  I mean, I think the agenda is self-

10    explanatory.

11         MR. MEISLER:  Thank you, Your Honor.  Your Honor, I'd

12    first like to just give the bigger picture if it's okay with

13    the Court.  Your Honor, we started with sixty-two objectors,

14    and we're happy to announce that at the conclusion of this

15    hearing, should Your Honor enter the proposed order, we will

16    have taken care of three-quarters of our objectors.

17         THE COURT:  And, again, this is to the proposed

18    assumption and assignment of their contracts, right?

19         MR. MEISLER:  That is correct, Your Honor.

20         THE COURT:  Okay.

21         MR. MEISLER:  Your Honor, today we have seventeen

22    objectors that we resolved their issues.  I think of it,

23    actually, as sixteen and a half, because there's one objection

24    by AB Automotive, otherwise known as the TT Group, and that

25    objection, Your Honor, we resolved more than twenty contract

23

1    issues with the TT Group.  However, this is one counterparty,

2    BI Technologies, and that contract counterparty, we still have

3    an issue with and we've continued it to another date.

4         So, Your Honor, for that reason you'll see AB

5    Automotive and its affiliates listed both as a consensual

6    matter and, as well, as a continued matter.

7         THE COURT:  Okay.

8         MR. MEISLER:  Your Honor, that leaves, again, as I

9    said, we have sixteen objectors plus the AB Automotive Group as

10   objectors that we will hopefully get to a consensual

11   resolution, and when we come back in October we hope to present

12   stipulations and otherwise represent to the Court that we've

13   resolved these issues.

14        Your Honor, with respect to matter number 2, which we

15   have as contested matter, and matter number 3, neither of them

16   today are contested matters.  Your Honor, the Linamar objection

17   has been resolved.  It's been resolved by e-mail confirmation.

18   And, Your Honor, I'm happy to go into the details of this

19   particular matter, but, again, it is resolved, and, therefore,

20   it is on our proposed order.

21        THE COURT:  Okay.  That's fine.

22        MR. MEISLER:  Your Honor, with respect to the Timken

23   Company, Your Honor, I have been in touch with Timken's counsel

24   fairly regularly.  We have agreed to adjourn this matter to the

25   October 21st hearing so that we can try and reach a consensual

VERITEXT REPORTING COMPANY

24

1  resolution.  Your Honor, I do believe that we're close, but,

2  again, in order to try and reach that consensual resolution we

3  elected, consensually, to move this to the October 21st

4  hearing.

5          THE COURT:  Okay.

6          MR. MEISLER:  Your Honor, moving forward to the

7  uncontested section of the agenda, matters 4 through 19, again,

8  they are all consensual.  Matters 4 and 5, Bosch and Autocam, I

9  believe each of their counsel wants to make a statement.  I am

10  happy to go through each and every one of the settlements, Your

11  Honor, however you choose to proceed.

12          THE COURT:  Well, let me hear from counsel on the

13  Bosch and Autocam matters first.

14          MR. BERGER:  Judge, Neil Berger, Togut, Segal, for the

15  debtors.  I'm not certain if Mr. Toering is on the line for

16  Bosch.

17          THE COURT:  I don't have him on the list of people who

18  are on the line.

19          MR. BERGER:  Your Honor, may I be heard on this

20  matter?

21          THE COURT:  Sure.

22          MR. BERGER:  I think it's important that we have a

23  record.  I'll start with the why I'm here and then explain how

24  to resolve this and the debtors' perspective.  Bosch's counsel

25  wrote me an e-mail late last night.  We have a signed

1    stipulation resolving their limited response to the notice on

2    the modified plan.  Mr. Toering, on behalf of Bosch, expressed

3    concern about Bosch being bound by the modified plan.  Your

4    Honor, there's a provision in the order that we'll present

5    today.  It's the same form as you previously approved in the

6    first and second omni orders that provides that the resolved

7    contract counterparties be subject to the findings and

8    conclusions in Your Honor's order which approve the

9    modifications of the plan, particularly Your Honor's findings

10    and conclusions concerning the debtors' authority to assume and

11    assign unexpired agreements.  We have that in there because we

12    believe that's settled.  Counterparties, like anyone else who

13    received notice of the plan and didn't object to the modified

14    plan provisions, ought to be bound by the plan provisions.  It

15    means implementation, classification, injunction, Your Honor's

16    findings about adequate assurance of future performance and

17    cure, and the debtors' general authority to assume and assign

18    contracts.

19          Bosch's response to the notice regarding the modified

20    plan was limited to the contracts that are addressed in our

21    settlement agreement.  Bosch's response, generally, actually,

22    specifically, was we don't have enough information.  We don't

23    know whether or not we ought to object and whether or not we

24    have a cure.  These are intellectual property rights, and under

25    non-applicable, non-bankruptcy law in many instances the

1    counterparty has the ability to withhold consent.

2         We provided specific information about the

3    intellectual property agreements that we sought to assume and

4    assign.  We and Bosch, my colleague is here today, worked with

5    Bosch and their counsel and we came to a settlement about how

6    those contracts would be assumed and assigned, and they

7    granted, and then there were a certain subset of contracts that

8    neither party could find and we deferred the issue of consent

9    until some other time if, and when, it every became relevant.

10   We have a signed stipulation.  That stipulation specifically

11   references Your Honor's order approving the modified plan.  We

12   think that Bosch is time barred from objecting to any provision

13   of the modified plan or Your Honor's order, which is now final,

14   as to any issue other than the contracts that are subject to

15   our settlement agreement.  And our settlement agreement has a

16   consensual resolution as to the disposition of those

17   agreements.

18         For that reason, Your Honor, for those reasons, we

19   think that Bosch, like any other settled counterparty, ought to

20   be subject to the plan provisions.  There are specific

21   provisions in the settlement agreement that specifically

22   reserve the parties' rights, claims and defenses pertaining to

23   those agreements.  But, more generally, this counterparty's

24   resolve ought to be subject to our plan.

25         THE COURT:  Well, is that an issue I need to decide

27

1    today?  I mean, if you have an agreement --

2         MR. BERGER:  Well, we're go--

3         THE COURT: -- on the specific contracts it doesn't

4    sound like there's any remaining issue.

5         MR. BERGER:  There is no remaining issue on the

6    particular contract.

7         THE COURT:  Oh.

8         MR. BERGER:  We would like Bosch included in the

9    exhibit of resolved counterparties and be subject to the omni

10   order that we're submitting this morning.

11        THE COURT:  You have a separate stipulation?

12        MR. BERGER:  And, yes, Your Honor, you're leading me

13   to my last point, is that the stipulation is a more specific

14   document that regulates the parties' conduct concerning to the

15   contract between Bosch and Delphi.  We'll be governed by that.

16   It's the more general provisions of the plan and Your Honor's

17   findings about adequate assurance we'd like them to be bound

18   by.

19        THE COURT:  But the stipulation agrees to the

20   assumption, right?

21        MR. BERGER:  Correct.

22        THE COURT:  So I think I could just so order the

23   stipulation.  I mean, I don't see why I need to do anything

24   else.  The confirmation order is what it is.  It's out there.

25   I don't --

28

1          MR. BERGER:  Sorry.

2          THE COURT:  In a way, this would just give them

3    another issue to appeal.  I don't see why you'd --

4          MR. MEISLER:  Your Honor, if I may, Ron Meisler of

5    Skadden, Arps?  Pursuant to the order approving the modified

6    plan, all the 365 objectors were carved out.

7          THE COURT:  Well, I -- okay.  Go ahead.

8          MR. MEISLER:  So they were carved out of that order,

9    and at least what was contemplated on the debtors' side was

10   that once we resolved the objection they would then be bound by

11   the order confirming the modified plan.  And that's all we're

12   simply doing.

13         THE COURT:  Well, but doesn't that order specifically

14   deal with that set of facts?  The carve out recognizes that

15   once the cure issues are resolved the order is binding on them

16   too, doesn't it, as I remember?

17         MR. MEISLER:  Your Honor, I think it's uncertain, and

18   for that reason, as a precautionary measure, we have a very

19   simple first decretal paragraph that simply explains that the

20   parties that have been resolved are now subject to the terms of

21   the confirmation order approving the modified plan.

22         THE COURT:  Well, and that's fine for anyone that

23   doesn't oppose it.  I'm just reluctant to create an issue if

24   there's some amorphous dispute over it with Bosch which isn't

25   ripe.  I just don't think -- I mean, you have a settlement with

29

1    them.  They're agreeing to the assumption and assignment.  I

2    don't see what else.  I mean, that's the only aspect of the

3    carve out of the order that would apply, and now that's

4    resolved.  Are you concerned Bosch is going to do something or

5    is this just hypothetical?

6         MR. BERGER:  I don't think there's a concern that

7    they're going to do anything, but, as I said earlier, there's a

8    reservation of rights as to the contracts.  We don't want to be

9    in a situation, Your Honor, where there's some question about

10   whether or not we're able to enforce provisions of the plan.  I

11   presume, I'm gathering, and I don't mean --

12        THE COURT:  Well, I don't see why you -- I mean, the

13   plan -- so I don't understand.  It's an assumption and

14   assignment order, but it says that it may not, it may

15   conceivably not be assignable?

16        MR. BERGER:  No, no.  No.  Not at all.  It would be

17   outside of the scope of the assumption and assignment if Bosch

18   came back to this Court, or we had to come back to this Court

19   to enforce some provision of the plan.

20        THE COURT:  Right.  So --

21        MR. BERGER:  I wouldn't want Bosch to have the ability

22   to say we are not bound by the plan because --

23        THE COURT:  But there's no reason why they could say

24   that.  And their time to appeal that is past.  I'm just

25   reluctant to create an issue that they could appeal when

30

1    they've already missed their time to appeal.

2            MR. MEISLER:  Your Honor, one example, however, would

3    be just suppose that they feel that they're not bound by the

4    third party releases.

5            THE COURT:  But that wasn't part of the carve out.

6    Right?  The carve out just dealt with the assumption and

7    assignment issues, didn't it?  I mean, I don't have -- maybe I

8    should -- do you have the carve out?

9            MR. BERGER:  Your Honor?

10           THE COURT:  Then I could take a look at it.  But my

11   recollection of it was that the only aspect of the carve out

12   was as to the findings with regard to cure and adequate

13   assurance of future performance for people that had not had

14   notice that their contract was going to be assumed and

15   assigned.

16           MR. BERGER:  Your Honor --

17           THE COURT:  I mean, every other aspect of the plan is

18   binding on them.

19           MR. BERGER:  Your Honor, we appreciate your

20   observations to take them on board.  And with the record that

21   we've made this morning --

22           THE COURT:  Okay.

23           MR. BERGER:  -- we'll modify the order, the omnibus

24   order, and we'll have Your Honor, ask Your Honor to --

25           THE COURT:  Well, I don't know.  I mean, if everyone

31

1   else -- the only reason I'm hesitating on Bosch is you've

2   suggested to me that maybe Bosch has a different view of this.

3            MR. BERGER:  I can't hear you.  I'm sorry.

4            THE COURT:  The only reason I'm hesitating on this is

5   with regard to Bosch.  If the other parties to executory

6   contracts that you've now resolved are on board with having

7   this language in the omnibus order, I don't have any problem of

8   having it in there.  I do have a problem with forcing it on

9   someone who thinks that it shouldn't be forced on them,

10  particularly if it's not really an issue today, because that

11  would just, to me, invite an additional round of litigation

12  with that one person, who I think is just Bosch.  I don't have

13  a problem with it being in the order as to everybody else.

14           MR. BERGER:  Very well, Your Honor.

15           THE COURT:  And if you have a stipulation, a separate

16  stipulation with Bosch that makes it clear that their contracts

17  are going to be assumed and assigned, I could so order that and

18  they're bound.  And I think they're clearly bound by the rest

19  of the plan.

20           MR. BERGER:  With that said, Your Honor, we'll submit

21  the order without Bosch being listed and we'll take it from

22  there.

23           THE COURT:  Okay.  Because you have a separate

24  stipulation with them, right?

25           MR. BERGER:  I do have a stipulation.  I have it on

32

1    disc with me this morning, Your Honor.

2           THE COURT:  Okay.  So you can just write "so ordered"

3    on that, or we can write "so ordered" on it.

4           MR. BERGER:  On the stipulation?

5           THE COURT:  Yes.

6           MR. BERGER:  Well, I don't want to step over bounds,

7    Your Honor.  I've never signed your name on a "so ordered"

8    block --

9           THE COURT:  No, no.  But it has a "so ordered" block.

10          MR. BERGER:  It does.  It does.

11          THE COURT:  So I could just write my name on it.

12          MR. BERGER:  Yes.  That's fine.

13          THE COURT:  Fine.  Okay.

14          MR. BERGER:  It's hard for me to hear you from the

15   podium this morning.

16          THE COURT:  I'm sorry.

17          MR. BERGER:  I thought you were asking that I can form

18   your signature.

19          THE COURT:  No, no, no.  I didn't know whether you had

20   a "so ordered" block on it.

21          MR. BERGER:  Okay, Your Honor.  Thank you.

22          THE COURT:  All right.  It just doesn't seem to me

23   that given the issue they've raised hypothetically now, that we

24   should give them another opportunity to appeal something that

25   they sat on before.

33

1          MR. BERGER:  Yes, Your Honor, and, hopefully, we'll

2     never have to confront an issue about it.

3          THE COURT:  It doesn't sound like you will --

4          MR. BERGER:  No.

5          THE COURT: -- if you've already dealt with it --

6          MR. BERGER:  Okay.  Thank you.

7          THE COURT: -- with the contracts.

8          MR. MEISLER:  Thank you, Your Honor.

9          THE COURT:  Okay.

10          MR. MEISLER:  Your Honor, in regard to matter number

11     5, Autocam Corporation, counsel to Autocam had asked to make a

12     very short statement.

13          THE COURT:  Okay.  Are they on the phone?

14          MR. GREGG:   Good morning, Your Honor.  John Gregg on

15     behalf of Autocam Corporation

16          THE COURT:  Good morning.

17          MR. GREGG:  Autocam is withdrawing its objection to

18     the debtors' proposed assigning of executory contracts.

19     They've found the representations set forth in paragraph 7 of

20     the debtors' second omnibus reply, which states that Delphi is

21     essentially assigning all of Autocam's contracts, GM

22     components.  The one caveat is that Autocam is not prepared to

23     withdraw its objection to the extent the debtors seek to assign

24     the agreements to any other party other than --

25          THE COURT:  Okay.  But that's who you're assigned them

34

1    to, right?

2          MR. MEISLER:  That's correct, Your Honor,

3          THE COURT:  All right.  So that's fine, and that's

4    noted on the record.

5          MR. GREGG:  Thank you, Your Honor.

6          THE COURT:  Okay.

7          MR. MEISLER:  Thank you, Your Honor.

8          THE COURT:  Your Honor, matters 6 through 19 have all

9    been consensually resolved.  Several by stip, some by

10   withdrawals, some by e-mail confirmation.

11         THE COURT:  Okay.

12         MR. MEISLER:  Your Honor, as I mentioned, I'm happy to

13   proceed with each matter individually and give you a summary.

14         THE COURT:  I don't think so.  The only issue I have

15   is the debtor is clearly free to withdraw, or the party is free

16   to withdraw.  And, obviously, you can submit a stipulation.

17   I'm not quite sure what the effect of the e-mail -- I mean, did

18   the e-mail stipulation say that we're prepared to agree to this

19   and withdraw as long as you agree to the following?  I just

20   want to make sure you --

21         MR. MEISLER:  Exactly.

22         THE COURT:  All right.

23         MR. MEISLER:  It simply -- in a sense it's a letter

24   agreement.

25         THE COURT:  That's fine.  So that -- I don't think you

35

1   need separate approval for those.

2           MR. MEISLER:  Thank you, Your Honor.

3           THE COURT:  Okay.

4           MR. MEISLER:  Your Honor, on that note, as I

5   mentioned, matters 20 through 36 are continued.  Your Honor,

6   the agenda lists the -- matter 20 which is the Sweetens motion.

7   Your Honor, the agenda lists that as adjourned to October 21st.

8   Your Honor, I understand that we also have October 22nd set as

9   a claims hearing and the Sweetens have requested that we have

10  that hearing on the 22nd.

11          THE COURT:  I'm sorry.  This is for November 22nd?

12          MR. MEISLER:  October 22nd.  I'm sorry.

13          THE COURT:  What number is this?

14          MR. MEISLER:  Matter number 20.  Motion of Donald R.

15  Sweeten and Sara E. Sweeten to compel debtors' performance

16  under lease of non-residential real property.

17          THE COURT:  Well, that's fine.  In fact, I'm not going

18  to be here October 21st.  So that hearing -- the original

19  hearing date just isn't going to work.  I don't know how that

20  is still on.  I'm going to be at the NCBJ -- I'm going to be

21  flying back from the NCBJ that day.

22          MR. MEISLER:  Okay.

23          THE COURT:  So --

24          MR. MEISLER:  So, Your Honor, that should work out

25  well and that means that --

36

1       THE COURT:  Well, it should work out well for them but

2   if there are any other matters that you have on for the 21st,

3   they should get moved.

4       MR. MEISLER:  I agree.  That, of course, makes sense.

5       THE COURT:  Okay.

6       MR. MEISLER:  Your Honor, this matter, the Sweetens

7   matter, may be an evidentiary hearing.

8       THE COURT:  Okay.  Do you have other matters on -- a

9   lot of other matters on for that day?

10      MR. MEISLER:  Your Honor, I would expect that if

11  there's any unresolved contractual issues or objectors, I would

12  imagine that we would try and put those on for the hearing on

13  the 22nd of October so that we can wrap up our contract

14  objections.

15      THE COURT:  Well, I just don't want to get caught in

16  having, you know, a three or four hour evidentiary hearing and

17  then have several other evidentiary hearings that day.  So, if

18  you're going to have other evidentiary hearings, you should

19  probably move them to a different day than the 22nd.

20      MR. MEISLER:  Of course, Your Honor.  We'll work with

21  your chambers to make sure we have it scheduled appropriately.

22      THE COURT:  Okay.  All right.

23      MR. MEISLER:  Your Honor, on that note, we have

24  completed our hearing for today.

25      THE COURT:  Okay.  Let me just -- okay, I just -- I

37

1    didn't have anything in my book for October 21st so I'm just

2    troubled that there was something on the calendar for that

3    date.   I -- Matt, can you make sure that you check with Dorothy

4    and Rosemary to be -- and clear on that?   Okay.   Thank you.

5            MR. MEISLER:   Thank you, Your Honor.

6            THE COURT:   Okay.   So, anyone who wishes to leave and

7    is not particularly interested in the American Aikoku dispute

8    should feel free to do so, at this point.

9            MR. BERGER:   Your Honor, may I just hand up my

10   stipulations before that?

11           THE COURT:   Yes.

12           MR. BERGER:   Thank you.

13           THE COURT:   Oh that -- I know, the air conditioner --

14   it's hot today so the air conditioner's going.

15           MR. MEISLER:   Your Honor, we also have a stipulation

16   for Federal Screw --

17           THE COURT:   Right, I saw that.

18           MR. MEISLER:   -- which we submitted.

19           THE COURT:   So that'll get entered today.

20           MR. MEISLER:   Thank you.

21           THE COURT:   Yeah.   Okay.   Okay.   I have on the

22   calendar the objection of American Aikoku Alpha Inc.   And

23   that's A-I-K-O-K-U Alpha Inc, to notice of non-assumption under

24   modified plan with respect to certain expired or terminated

25   contracts or leases previously deemed to be assumed or assumed

1    and assigned under the original confirmed plan.  This American

2    Aikoku matter has been the subject of quite a bit of activity

3    in the court and although its resolution involves relatively

4    simple issues, it's made somewhat complicated by the procedural

5    posture that it's in.

6          The debtors in this case had a number of executory

7    contracts with American Aikoku and proposed in a motion filed

8    in connection with a proposed sale of their steering business

9    to an entity named Platinum in late 2007 to assume and assign

10   certain American Aikoku contracts to Platinum as part of that

11   transaction.  In January of 2008, American Aikoku objected to

12   that proposed assumption and assignment.  It did so twice in

13   objection and then a modified objection from -- in the -- in

14   January of 2008 -- I'm sorry.  In July of  -- now I have my

15   dates mixed up.

16         I'm sorry.  In January of 2008, American Aikoku

17   objected to the assumption and assignment of its contract in

18   respect of the proposed sale of the steering and half-shaft

19   business.  That was the second objection to the proposed sale

20   and assumption and assignment and it was filed in January 29th

21   2008.  It also responded to a cure notice set out by Delphi on

22   January 23, 2008 in connection with the proposed assumption and

23   assignment of the contracts to the buyer in that proposed

24   transaction.

25         The parties subsequently negotiated a resolution of

39

1    that dispute which was memorialized in a stipulation dated May

2    8th 2008 which fixed American Aikoku's cure claim and resolved

3    American Aikoku's objection to the proposed assumption and

4    assignment.  The Platinum equity purchase of the steering and

5    half-shaft business did not close and consequently, the

6    contracts were not at that time -- were not assumed and

7    assigned, there being no assignee to assign them to.

8         Thereafter, the debtors made a motion to modify the

9    Chapter 11 plan that in the meantime had been confirmed in this

10   case.  And, in connection with that motion, sought to obtain an

11   order providing that contracts that would have been previously

12   deemed to be assumed or assigned pursuant to the original

13   confirmed Chapter 11 plan, would now, under the revised plan,

14   not be assumed.  That notice was sent out to American Aikoku on

15   July 2, 2009.

16        American Aikoku objected to that result, contending

17   that, notwithstanding that the originally confirmed plan in

18   this case contemplated the assumption and assignment of its

19   contract under its own terms which involved, among other

20   things, the acquisition of the equity and the debtors by a

21   group of investors which subsequently did not close, that the

22   May 8th 2008 stipulation required the debtors to assume its

23   contracts under any circumstances.

24        That dispute raised a series of issues related to the

25   interpretation of the May 8th stipulation all in the context of

40

1    the debtors' determination, based on the changed circumstances

2    that they faced including the remarkable and unforeseen

3    downturn in the global auto business, not to continue with the

4    American Aikoku contracts.

5            Thereafter, the debtors obtained approval of their

6    current or present Chapter 11 plan's confirmation.  That

7    Chapter 11 plan, which is the Chapter 11 plan at this point in

8    this case, contemplates the acquisition of the debtor's various

9    businesses and assets by either GM with respect to specific

10   assets or a group of the debtor's   debtor-in-possession

11   lenders or in certain instances the retention of those assets -

12   - certain assets by the reorganized debtors.

13           The Court, nevertheless, was faced with the objection

14   by American Aikoku to the non-assumption of its contracts.  I

15   say nevertheless because it became clear at the hearing, held

16   by the Court on August 17th 2009, that the debtors now proposed

17   to assign to the DIP group buyer -- I'm sorry -- and/or to GM

18   and I actually think it's to GM, the American Aikoku agreements

19   not anymore wanting them to be rejected.

20           Ostensibly, that would've resolved the disputes

21   between the parties since it would've rendered the issues

22   pertaining to the May 8th stipulation moot in that the debtors

23   would have to cure prepetition defaults or provide adequate

24   assurance for prompt cure of prepetition defaults under Section

25   365(b)(1)(A) of the Bankruptcy Code in order to implement such

1    assumption and assignment.

2          However, the debtors, in connection with the briefing

3    of the hearing for August 17th of this year, contended that,

4    notwithstanding the May 8th 2008 stipulation which referred to

5    a significant cure claim of well over 400,000 dollars of

6    prepetition debt under these contracts, the parties, that is

7    American Aikoku and the debtors, had several months before, in

8    January of 2008, agreed to a modified contract covering the

9    same subject matter which superseded the contract referred to

10   in the May 8th stipulation.  And in that agreement agreed that,

11   in connection with any assumption and assignment of that

12   contract, there would be no cure claim whatsoever.

13         Therefore, the debtors contend that the parties, by

14   their agreement, at this point, are not dealing with a

15   prepetition executory contract at all but instead are dealing

16   with a postpetition agreement governed by the terms of the

17   January 2008 modification and that, therefore, the debtors are

18   free, as per the terms of that agreement, to assign that

19   contract to the buyer in connection with the current confirmed

20   Chapter 11 plan without the need to pay anything to American

21   Aikoku in respect of its prepetition claim.

22         That is the issues before the Court have morphed into

23   issues pertaining to the interpretation of and the effect of

24   the January 2009 modification of the agreement and the effect

25   on it, if any, of the subsequent May 8th stipulation as opposed

42

1    to issues involving the assumption and assignment of a

2    prepetition contract.

3            Having laid out that procedural background, let me

4    return then to a couple of fundamental legal points which

5    govern this dispute.  First, it is clearly the case that a

6    debtor in Chapter 11 is not authorized to pay prepetition debt

7    except under two circumstances outside of a confirmed Chapter

8    11 plan that goes effective.

9            The first circumstance is highly unusual.  It involves

10   the situation where the debtor, before a plan is confirmed,

11   obtains authorization from the Bankruptcy Court on notice to

12   pay pre-bankruptcy unsecured debt, notwithstanding that all

13   unsecured creditors are not being paid, because of the net

14   benefit to the estate of doing so.  And in most courts, the

15   necessity to do so, to prevent the estates from having an

16   injury that would be greater than the net effect of paying the

17   debt.  See, generally, In re Kmart Corporation 359 F.3d 866

18   (7th Cir. 2004), rehearing and rehearing en banc denied, 2004

19   U.S. App. Lexis 9050 (7th Cir. May 6, 2004), cert. denied, 543

20   U.S. 995 (2004).

21           As the 7th Circuit said in that case, "pre-filing

22   debts are not administrative expenses.  They are the antithesis

23   of administrative expenses.  Filing a petition for bankruptcy

24   effectively creates two firms.  The debts of the pre-filing

25   entity may be written down so that the post-filing entity may

1    reorganize and continue in business if it has a positive cash

2    flow.   Treating pre-filing debts as administrative claims, that

3    is claims entitled to a hundred percent payment and that should

4    be paid currently against the post-filing entity, would impair

5    the ability of bankruptcy law to prevent old debts from sinking

6    a viable firms -- firm."

7          Nevertheless, the Kmart decision and decisions in this

8    district, recognize that under limited and exceptional

9    circumstances, pursuant to Section 363 (b) of the Bankruptcy

10   Code, a court may provide authorization to pay prepetition

11   debt, again, if such payment is necessary to preserving the

12   debtors' business, an opportunity for reorganization and the

13   net benefit of such payment, including the difference between a

14   hundred cents being paid now and tiny bankruptcy dollars being

15   paid later, flows to the debtors' estate.   Id. see also In re

16   Shadow Gay Corporation, 80 B.R. 279, 287 (S.D.N.Y. 1987) and In

17   re Ionosphere Clubs Inc., 98 B.R. 174, 178 through 179 (Bankr.

18   S.D.N.Y. 1989).

19         In that case, although laying out the exception to the

20   general rule that prepetition debts may not be paid outside of

21   their payment with usually tiny bankruptcy dollars under a

22   plan, a court has authority to grant payment.   Judge Lifland

23   found that the payment requested in that case was not critical

24   to the debtors' reorganization and directed that such payment

25   not be made.   In other words then, it is extremely unusual to

1    pay prepetition unsecured debt outside of a plan and such

2    payment should only be made after sufficient notice and Court

3    approval is granted on the basis that I've just outlined.

4         The other way in which prepetition debt may be paid

5    outside of a plan as specified in the Bankruptcy Code under

6    Section 365(b)(1)(A) which provides that as a condition to a

7    debtors assuming an executory contract, the debtor must cure or

8    provide adequate assurance that it will promptly cure any

9    defaults under the prepetition contract, including -- well,

10   specifically monetary defaults.  See also South Street Seaport

11   Limited Partnership v. Burger Boys In re Burger Boys 94 F.3d.

12   755, 763, (2nd Cir. 1996).

13        The debtors' determination to assume and/or to assume

14   and assign an executory contract is expressly, under Section

15   365(a), subject to Bankruptcy Court approval on notice.  And

16   the request for such approval is a contested matter under the

17   Bankruptcy Code.  Id. -- again, it's page 763.  The standard

18   for approving a request to assume and/or to assume and assign

19   executory contract in this circuit is set forth in Orion

20   Pictures Corporation v. Showtime Networks, Inc.  In re Orion

21   Pictures Corporation, 4 F.3d 1095 (2nd Cir. 1993) where the

22   Second Circuit stated that in deciding such a motion, the

23   Bankruptcy Court has to determine whether it's a proper

24   exercise of the debtors' business judgment.  Id. at 1099.

25        One of the key features of the assumption of an

45

1    executory contract, as I noted, is the payment of any

2    prepetition defaults.  It clearly would not make good business

3    sense to agree to pay prepetition defaults that did not exist.

4    Here, I have already determined and stated on the record that,

5    based on my review of American Aikoku's objections to the

6    proposed assumption and assignment of its contract filed in

7    January of 2008, as well as the debtors' response thereto and

8    the ultimate stipulation pursuant to which they resolved those

9    issues, that was, again, added into on May 28th 2008, the

10   parties resolved a specific objection to a specific proposed

11   assumption and assignment sought pursuant to a specific

12   contested matter.  And that the proposed treatment of American

13   Aikoku's contracts, pursuant to the May 28th stipulation, was

14   limited to the assumption and assignment proposed by the

15   debtors at that time which, as I've noted, did not -- was not

16   consummated.

17        The contention that was made by American Aikoku that

18   the agreement to treat it's contracts, under any circumstances

19   in the future, as being automatically assumed and assigned,

20   simply does not fit into the context of Section 365 that I've

21   just described.  Clearly American Aikoku, I believe, was not

22   agreeing to permit its contract to be assumed and assigned to

23   anyone but was focusing on the specific transaction that had

24   been noticed by the debtor.  And, similarly, the debtors had

25   not agreed to assume and assign the contract under any

46

1    circumstances, given that they did not have an assignee other

2    than, at the time, than the proposed transaction, that there

3    was no relief sought to obtain approval to assign the contract

4    and assume it under any circumstances but only, again, in the

5    context of the specific contested matter that was before the

6    Court.

7         And finally, based on the fact that I would not have

8    approved such an agreement, given that the debtors' business

9    judgment in agreeing to pay in excess of 400,000 dollars of

10   cure costs and create an administrative liability for any

11   breach of the contract post-assumption would not, as a matter

12   of business judgment, be appropriate except in a specific

13   context that the Court could evaluate, which again, was the

14   proposed sale of the steering and half-shaft business to

15   Platinum contemplated in late 2007/early 2008 and/or the

16   debtors' emergence under its first confirmed plan both of which

17   transactions ultimately failed to be consummated.

18        So for those reasons, I had previously determined that

19   American Aikoku whose objection to the notice of non-assumption

20   was not well taken and should be denied.

21        Subsequently the debtors again, as I noted, in August

22   of this year pointed out that, apparently unbeknownst to the

23   parties who negotiated the May 28, 2008 stipulation and in any

24   event not identified in the May 28, 2008 stipulation, the

25   debtor and American Aikoku had agreed, on January 29, 2008, to

47

1    enter into a new agreement that would supersede and replace the

2    American Aikoku contracts.

3        "And that such agreement, in addition to stating that

4    it is a new agreement between the buyer and seller and

5    supersedes and replaces any prior purchase orders or other

6    agreements between the buyer and seller with respect to the

7    subject matter hereof also reflects that each of the buyer and

8    the seller acknowledges and agrees that any prior purchase

9    orders or other agreements between the buyer and seller, which

10   are superseded and replaced by this purchase order as of its

11   effective date, shall no longer be subject to assumption or

12   rejection under the United States Bankruptcy Code.  And the

13   seller hereby waives any right to assert any of the rights

14   incident to assumption or rejection, including but not limited

15   to the payment of cure with respect to any such prior purchase

16   orders or other agreements."  I'm reading from purchase order

17   SAG 90 I 2815 dated January 29, 2008.  Which again, states on

18   every page this changes, amends or supersedes a purchase order

19   now in your possession which was sent by Delphi to American

20   Aikoku and which is in the record of this matter.

21       Given that purchase order, which there's no dispute

22   was subsequently performed, it would appear to me that both

23   parties are now, under Michigan law, bound by the terms of that

24   purchase order unless there's been any intervening amendment of

25   that purchase order, see Kvaerner U.S. Inc. vs. Hakim Plast

1   Company, 74 F.2d 709, 714 (ED Michigan, 1999).  See also

2   Michigan Comp Law annotated section 440.22061 West 2009 as well

3   as the terms of the purchase order itself which states that if

4   seller accepts this contract in writing or commences any of the

5   work or services which are the subject of this contract, seller

6   will be deemed to have accepted this contract.  Again, it's

7   clear to me that the parties are bound by the terms of the

8   purchase order.

9          It was, nevertheless, argued by American Aikoku on

10  August 17th that the May 28, 2008 stipulation revived the

11  executory prepetition nature of the parties' agreement and

12  recreated or gave new life to the obligation of Delphi to cure

13  any prepetition defaults under that agreement, as agreed to by

14  the parties in the stipulation upon the assumption and

15  assignment of the contract.

16         The hearing on August 17th was not an evidentiary

17  hearing and it appeared to me that the change in direction, the

18  procedural change in direction of this matter whereby now the

19  debtors were actually seeking to have the January 29, 2008

20  purchase order assigned to the buyer under the presently

21  confirmed plan, that the parties should have some additional

22  time to address the issue of the propriety of that assignment

23  without any court approval and the continued validity of the

24  January 29, 2008 purchase order in light of the May 28, 2008

25  stipulation.

49

1       The parties did submit supplemental pleadings on that.

2   Neither party has raised an evidentiary issue or requested an

3   evidentiary hearing as to their intent in entering into the May

4   28, 2008 stipulation in light of the January 29, 2008 contract

5   which superseded the -- or purported to supersede the executory

6   prepetition contract.

7       So it appears to me that what I have before me is

8   simply a legal issue based upon -- that should be decided based

9   upon the foregoing basic legal propositions regarding the times

10  when a debtor is authorized to pay prepetition debt that I've

11  discussed, as well as my review of the purchase order from

12  January of 2008 and the May 28, 2008 stipulation.

13      Based on my review of those documents and the case law

14  and authorities that I've just described, I conclude that the

15  debtor did not have authority pursuant to the May 28, 2008

16  stipulation, to resurrect its prepetition contract and agreed

17  to pay the debt owing prepetition under that contract.  In

18  light of the debtors having previously agreed with American

19  Aikoku that that debt would no longer be entitled to a cure

20  payment under Section 365 and that that contract would not

21  longer be subject to assumption and assignment under Section

22  365 of the Bankruptcy Code.

23      In essence, such an agreement would have been an

24  agreement to pay prepetition debt and clearly that agreement

25  was not so described in the stipulation or to the Court.  And

50

1   the Court did not, therefore, consider whether the debtor met

2   the very difficult standard of obtaining authorization to pay

3   prepetition debt outside of a plan or outside of assumption of

4   a contract under Section 365.

5        Again, the contract had previously been modified so

6   that it was now a postpetition contract and the parties had

7   agreed that there would be no cure claim.  So under K-Mart,

8   Chateauguay and Ionosphere, the Court would never have

9   authorized the debtor to have entered into the May 28, 2008

10  stipulation if that would have been the effect of the

11  stipulation.  It wouldn't have met the test of those cases, nor

12  would it have met the business judgment test of Orion Pictures

13  since it would never have been a valid exercise of the debtor's

14  business judgment to pay over 400,000 dollars of prepetition

15  debt that it had previously agreed with American Aikoku that it

16  didn't need to pay.

17       Such a transaction would have obviously required

18  notice and a hearing.  And absent proper notice and a hearing

19  would be avoidable if the debtor tried to implement it, which

20  of course it's not attempting to do.  See In Re Roth America,

21  Inc., 975 F.2d, 949, 952, note 3, (3rd Cir. 1992) as well as

22  Section 549(a) of the Bankruptcy Code.

23       The stipulation also makes this relatively clear in

24  that the parties stated, on page 7, that the debtors are

25  authorized to enter into this stipulation with regards to the

51

1    claims matters addressed herein, either because the claims

2    involve ordinary course controversies or pursuant to that

3    certain amended and restated order under 11 U.S.C. 363 502 and

4    503 and Federal Rule of Bankruptcy Procedure 9019(b)

5    authorizing debtors to compromise or settle certain classes of

6    controversy and allow claims without further Court approval,

7    entered by this Court on June 26, 2007.

8            As I've stated clearly, given that American Aikoku's

9    interpretation of the May 28th stipulation would have

10   resurrected and required full payment of over 400,000 of

11   prepetition debt it would not have been an ordinary course

12   transaction or controversy.  Moreover, the amended and restated

13   June 26, 2007 order, referred to in the paragraph I just

14   quoted, states in paragraph 7, "The debtor shall not pay any

15   prepetition claims without a separate Bankruptcy Court order."

16           Clearly the May 28, 2008 stipulation did not authorize

17   the payment of a prepetition claim except in the context of an

18   assumption or a rejection in connection with the specific

19   transactions contemplated by that stipulation.  So it is clear

20   to me that the parties did not intend, by the May 28th

21   stipulation, to resurrect a contract that had been superseded

22   by the January 29, 2008 purchase order.

23           It is also clear to me that even if they intended to

24   do so they did not succeed in doing so and could not have

25   succeeded in doing so and that they would not have obtained

52

1    court approval to do so if the matter had been properly

2    noticed, which it wasn't.

3         So for all of those reasons, I conclude that if the

4    debtors do not intend to assign their rights under the American

5    Aikoku contract, they are not required to do so -- they are not

6    required to assume and assign it and they're not required to

7    pay the cure amount provided in the May 28th stipulation.

8         And further, that if the debtors intend to assign the

9    contract as reflected in the January 29, 2008 purchase order,

10    they are free to do so without the need to pay any prepetition

11    claim of American Aikoku because that purchase order was not

12    modified by the May 28th stipulation.  And even if it had been

13    modified by the May 28th stipulation, which again I conclude

14    the parties did not intend to do, the May 28th stipulation did

15    not suffice as a basis for obtaining court approval of such an

16    extraordinary transaction that would have resurrected and

17    required the payment of a substantial amount of prepetition

18    debt outside of a plan.

19         So the debtors can submit an order consistent with my

20    ruling.

21         MR. MEISLER:  Your Honor, we will submit an order to

22    chambers.

23         THE COURT:  Okay.  You should cc counsel for American

24    Aikoku in that e-mail.

25         MR. MEISLER:  Thank you, Your Honor.

53

1          (Proceedings Concluded at 11:28 a.m.)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

54

1

2                                   I N D E X

3

4                               RULINGS

5                         Page      Line

6    Granting of Second §      9        13

7    1121(d) Creditors'

8    Committee Exclusivity

9    Extension Motion

10

11   Granting of Pre-Effective 17       6

12   Date Accommodation

13   Amendment Motion

14

15   Granting of Debtors'      20       9

16   Thirty-Fifth Omnibus

17   Claims Objection

18

19   Debtors are not Required  52       3

20   to Assign and Assign or

21   Pay Cure Amounts

22   Provided in May 28, 2008

23   Stipulation

24

25

55

1

2                          C E R T I F I C A T I O N

3

4        I, Hana Copperman, certify that the foregoing transcript is a

5        true and accurate record of the proceedings.

6

7        _____

8        HANA COPPERMAN

9        AAERT Certified Electronic Transcriber (CET**D-487)

10       Also Transcribed By:    Pnina Eilberg (CET**D-488)

11       Veritext LLC

12       200 Old Country Road

13       Suite 580

14       Mineola, NY 11501

15

16       Date: September 25, 2009

17

18

19

20

21

22

23

24

25