**Hearing Date And Time: October 22, 2009 at 10:00 a.m. (prevailing Eastern time)**
**Objection Deadline: October 15, 2009 at 4:00 p.m. (prevailing Eastern time)**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
155 North Wacker Drive
Chicago, Illinois 60606
John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler

   - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Kayalyn A. Marafioti

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x
                                                           :
         In re                                             :    Chapter 11
                                                           :
DELPHI CORPORATION, et al.,                                :    Case No. 05-44481 (RDD)
                                                           :
                                                           :    (Jointly Administered)
                    Debtors.                               :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

SUPPLEMENTAL MOTION PURSUANT TO FED. R. BANKR. P. 7004(a) AND
9006(b)(1) AND FED. R. CIV. P. 4(m) TO EXTEND DEADLINE TO
SERVE PROCESS FOR AVOIDANCE ACTIONS FILED IN CONNECTION
<u>WITH PRESERVATION OF ESTATE CLAIMS PROCEDURES ORDER</u>

("SUPPLEMENTAL POSTCONFIRMATION EXTENSION OF AVOIDANCE
ACTION SERVICE DEADLINE MOTION")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this Supplemental Motion Pursuant To Fed. R. Bankr. P. 7004(a) And 9006(b)(1) And Fed. R. Civ. P. 4(m) To Extend Deadline To Serve Process For Avoidance Actions Filed In Connection With Preservation Of Estate Claims Procedures Order (the "Motion"), and respectfully represent as follows:

## Background

A.    The Chapter 11 Filings

    1.    On October 8 and 14, 2005, the Debtors filed voluntary petitions in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as then amended (the "Bankruptcy Code").  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession under Bankruptcy Code sections 1107(a) and 1108.  This Court has ordered joint administration of these cases.

    2.    No trustee or examiner has been appointed in these cases.  On October 17, 2005, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Creditors' Committee").  On April 28, 2006, the U.S. Trustee appointed an official committee of equity holders, which was disbanded on April 24, 2009. On February 26, 2009, the U.S. Trustee appointed an official committee of retired employees to represent certain of the Debtors' current active salaried employees, retirees, and their spouses for certain limited purposes.

    3.    This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

2

        4.      The statutory predicates for the relief requested herein are rules 7004 and 9004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and rule 4(m) of the Federal Rules of Civil Procedure.

B.      <u>Plan Confirmation And Postconfirmation Matters</u>

        5.      On December 10, 2007, the Debtors filed their first amended joint plan of reorganization (Docket No. 11386) (the "Plan") and related disclosure statement (Docket No. 11388). On January 25, 2008, the Court entered an order (Docket No. 12359) (the "Confirmation Order") confirming the Plan, as modified (the "Confirmed Plan"). The Confirmation Order became final on February 4, 2008.

        6.      During the fall of 2008 the Debtors formulated certain modifications to the Confirmed Plan. On October 3, 2008, Delphi filed a motion under 11 U.S.C. § 1127 for an order approving these modifications and also sought approval of a related disclosure statement and procedures for re-soliciting votes on the Confirmed Plan, as modified (Docket No. 14310) (the "Plan Modification Motion"). Subsequently, however, substantial uncertainty and significant decline in capacity in global debt and equity markets, the global economic downturn generally, and an unprecedented decline in global automotive production volumes adversely impacted Delphi's ability to develop a revised recapitalization plan and successfully consummate the modified plan of reorganization. Moreover, as a result of market turbulence, the Debtors were unable to extend the maturity date of their DIP credit facility (the "DIP Facility") on terms reasonably acceptable to the Debtors and their other stakeholders. Accordingly, with the support of the administrative agent (the "DIP Agent") and the requisite lenders under the DIP Facility, the Debtors entered into an accommodation agreement (as subsequently amended) to allow the Debtors, among other things, to continue using certain of the proceeds of the DIP Facility.

7. On June 1, 2009, the Debtors filed a supplement to the Plan Modification Motion (the "Motion Supplement") which sought approval of certain additional modifications to the Confirmed Plan (the "Modified Plan") as well as supplemental disclosure and procedures for re-soliciting votes on the Modified Plan. The Motion Supplement was approved, with modifications, by order entered June 16, 2009 (the "Modification Procedures Order") and was later supplemented and amended by orders entered June 29, 2009 (Docket No. 17376), July 17, 2009 (Docket No. 18352), and July 21, 2009 (Docket No. 18551).

8. Also on June 1, 2009, while facing the most difficult economic period in decades with the most precipitous drop in U.S. vehicle sale volumes in half a century, Delphi reached an agreement to effect its emergence from chapter 11 through a transaction with Parnassus Holdings II, LLC ("Parnassus"), an affiliate of Platinum Equity, and with the support of GM Components Holdings LLC ("GM Components"), an affiliate of GM. In the exercise of the Debtors' fiduciary responsibilities to maximize the value of their estates for the benefit of all of their stakeholders, the Debtors executed an agreement (the "Platinum-GM MDA") to reflect the foregoing transactions through a plan of reorganization. The agreement and the changes to the Confirmed Plan were filed as part of the Motion Supplement on June 1, 2009.

9. The Modification Procedures Order, among other things, authorized the Debtors to commence solicitation of votes on the Modified Plan and set forth a comprehensive set of supplemental procedures for evaluating non-solicited alternative transactions to the Platinum-GM MDA (as supplemented and amended, the "Supplemental Procedures"). The Supplemental Procedures provided for, among other things, an auction open to DIP Lenders making a Pure Credit Bid (as defined therein) and other Qualified Bidders (as defined therein).

10. Pursuant to the Supplemental Procedures, the Debtors held an auction on July 26 and 27, 2009 (the "Auction") at which the DIP Agent submitted a Pure Credit Bid on

4

behalf of the DIP Lenders that was supported by the requisite majority of the two most senior tranches of the DIP Facility (the "Required Lenders"). The Pure Credit Bid involved a credit bid of 100% of the principal and interest due and owing in respect of the DIP Facility under the DIP Credit Agreement (after giving effect to the application of any cash collateral to the DIP Facility) and was based upon an alternative Master Disposition Agreement (the "Master Disposition Agreement") pursuant to which DIP Holdco 3, LLC ("DIP Holdco 3") would replace Parnassus as a purchaser, subject to the terms of the Master Disposition Agreement. DIP Holdco 3 is an entity controlled by certain of the DIP lenders that together constitute the Required Lenders under the DIP Facility. At the conclusion of the Auction, after careful consideration, Delphi's board of directors determined that the Pure Credit Bid was superior to the Platinum-GM MDA, and approved it, subject to the parties' reaching a final agreement as to the terms and conditions of the Modification Approval Order and other items. Subsequently, the Debtors made certain further modifications to the Modified Plan to address the results of the Auction.

    11.  After holding a final plan modification hearing on July 29 and 30, 2009, the Court entered an order approving the Modified Plan (Docket No. 18707) on July 30, 2009. Upon the effectiveness of the Modified Plan, Delphi will contemporaneously effectuate transactions, including the Master Disposition Agreement, through which DIP Holdco 3 will operate Delphi's U.S. and non-U.S. businesses going forward with $3.6 billion in emergence capital and capital commitments but without the labor-related legacy costs associated with the North American sites which, together with Delphi's global steering business, are being acquired by GM Components. DPH Holdings Corporation ("DPH Holdings") will emerge as a reorganized entity that retains certain residual non-core and non-strategic assets and liabilities that are expected to be divested over time.

12. Consummation of these transactions through the Modified Plan, which embodies concessions made by parties-in-interest to resolve these chapter 11 cases, will provide for the satisfaction of all of the Debtors' administrative claims, secured claims, and priority claims and a potential distribution to holders of general unsecured claims. Moreover, Delphi's emerging businesses, through GM Components and DIP Holdco 3, will continue to develop and deliver high-quality products to their customers globally.

C.   The Establishment Of Procedures to Preserve Estate Claims

13. Before the entry of the Confirmation Order, this Court on August 16, 2007 entered that certain Order Under 11 U.S.C. §§ 102(1)(A), 105(a), 107, 108(a)(2), And 546(a) And Fed. R. Bankr. P. 7004, 9006(c), And 9018 (i) Authorizing Debtors To Enter Into Stipulations Tolling Statute Of Limitations With Respect To Certain Claims, (ii) Authorizing Procedures To Identify Causes Of Action That Should Be Preserved, And (iii) Establishing Procedures For Certain Adversary Proceedings Including Those Commenced By Debtors Under 11 U.S.C. § 541, 544, 545, 547, 548, Or 553 ("Preservation Of Estate Claims Procedures Order") (Docket No. 9105). On March 28, 2008, this Court entered the Order Pursuant To Fed. R. Bankr. P. 7004(a) And 9006(b)(1) And Fed. R. Civ. P. 4(m) To Extend Deadline To Serve Process For Avoidance Actions Filed In Connection With Preservation Of Estate Claims Procedures Order (Docket No. 13277) (the "Deadline Extension Order").

14. The purpose of the Preservation Of Estate Claims Procedures Order was two-fold: on the one hand, it permitted the Debtors to preserve their right to pursue (or abandon) certain avoidance actions before the then-impending expiration of the two-year statute of limitations to file such actions; on the other hand, it established procedures to avoid having to force all potential defendants to retain counsel and defend against the adversary proceedings when, in fact, the Debtors anticipated that most of them would be resolved upon the Debtors'

6

emergence from chapter 11 and thus never pursued. To that end, the Preservation Of Estate Claims Procedures Order and the Deadline Extension Order (i) allowed the Debtors to file adversary proceeding complaints under seal, (ii) directed the Clerk of Court to delay issuing summonses for complaints unless and until the Debtors notified the Clerk of Court of their intent to prosecute such actions, (iii) stayed each adversary action unless and until the Debtors make service of process on the respective defendants, and (iv) extended the deadline under Fed. R. Civ. P. 4(m) by which the Debtors would have to serve process to May 31, 2008, so that the complaints would not be subject to dismissal under Fed. R. Civ. P. 4(m). Such relief was intended to allow the Debtors to preserve potentially valuable assets without disrupting the Confirmed Plan process or business relationships or prejudicing the rights of any defendants. In accordance with the Preservation Of Estate Claims Procedures Order, the Debtors commenced 742 adversary proceedings (the "Adversary Proceedings") by filing complaints under seal.

15. On April 10, 2008, after the Debtors' plan investors failed to participate in a closing and fulfill their obligations to fund the Confirmed Plan, the Debtors filed a Motion Pursuant to Fed. R. Bankr. P. 7004(a) And 9006(b)(1) And Fed R. Civ. P. 4(m) To Extend Deadline To Serve Process For Avoidance Actions Filed In Connection With Preservation Of Estate Claims Procedures Order (the "Postconfirmation Extension Motion") (Docket No. 13361), seeking to extend the service deadline set forth in the Deadline Extension Order until 30 days after substantial consummation of the Confirmed Plan or any modified plan. The Court granted this extension by order entered April 30, 2008 (the "Postconfirmation Extension Order") (Docket No. 13484).

Relief Requested

16. By this Motion, the Debtors request entry of an order under Bankruptcy Rule 9006(b)(1) and Federal Rule Of Civil Procedure 4(m), made applicable by Bankruptcy

Rule 7004(a), to further extend the deadline by which the Debtors would be required to serve a summons and complaint upon each defendant under the Preservation Of Estate Claims Procedures Order, as modified by the Deadline Extension Order and the Postconfirmation Extension Order. Specifically, the Debtors request that the existing service deadline set forth in the Deadline Extension Order be extended to 180 days after substantial consummation of the Modified Plan.

Basis For Relief

17.     A further extension of the time for service in the Adversary Proceedings is necessary due to the complex nature of the transactions set forth in the Modified Plan and the Master Disposition Agreement. At the time of the Debtors' request to extend their Fed. R. Civ. P. 4(m) deadline to serve defendants in the Adversary Proceedings until 30 days after substantial consummation of a plan of reorganization, the Confirmed Plan contemplated that the Debtors would maintain essentially the same identity and corporate organization following substantial consummation and that the reorganized company would retain few causes action. As noted above, however, the transaction set forth in the Modified Plan and the Master Disposition Agreement divides the Debtors' business among three separate parties: DPH Holdings LLC, GM Components, and DIP Holdco 3. The Debtors anticipate that, in the months following effectiveness of the Modified Plan, a significant amount of time and resources will be devoted to supporting the transition of operations among these three entities and implementing the Modified Plan. Moreover, Exhibit 7.19 of the Modified Plan lists significantly more causes of action that will be retained by DPH Holdings than originally retained under the Confirmed Plan, including

177 of the Adversary Proceedings filed under seal (the "Retained Adversary Proceedings").[1] Consequently, the Debtors do not believe that DPH Holdings will be able to evaluate each of the retained Adversary Proceedings – for example, to assess the ongoing relationship with certain defendants and whether events since initiating the Adversary Proceedings have impacted the Debtors' estimated recoveries – and make a determination whether to pursue such Adversary Proceedings within 30 days after substantial consummation of the Modified Plan.

18. In addition, the extension now sought in this Motion will relieve the Debtors and defendants in the Adversary Proceedings from incurring unnecessary costs. Although the Debtors ultimately may determine not to prosecute certain of the Adversary Proceedings listed on Exhibit 7.19 of the Modified Plan, the Debtors would have to effect service to each of the 177 Retained Adversary Proceedings soon after substantial consummation to allow the Debtors enough to timely serve each defendant and meet the deadline set forth in the Postconfirmation Extension Order. In turn, defendants who are parties to Retained Adversary Proceedings that the Debtors otherwise might not ultimately pursue could be forced to unnecessarily incur litigation expenses associated with the defense of such Adversary Proceedings.

19. The Debtors believe that there is good cause for the extension of the Fed. R. Civ. P. 4(m) deadline because such an extension would reduce the administrative and economic burdens of the Retained Adversary Proceedings on the Debtors and the potential

---

[1] Under the Modified Plan, the Debtors will not retain any of the causes of action asserted in the Adversary Proceedings except those listed on Exhibit 7.19 to the Modified Plan. Although the Debtors' request for an extension of the Fed. R. Civ. P. 4(m) deadline is applicable to all of the Adversary Proceedings, upon substantial consummation of the Modified Plan – which may occur prior to the scheduled hearing on this Motion – the extension will affect only those actions specifically retained pursuant to section 7.19 of the Modified Plan.

defendants.  Specifically, the Debtors believe that the resources that they and the defendants would need to expend prematurely to issue and serve 177 summonses and complaints in the Retained Adversary Proceedings – and the potential need thereafter to prosecute and defend such adversary proceedings – would not be in the best interests of the Debtors' estates, the Debtors' stakeholders, and other parties-in-interest.  The Debtors submit that these reasons comprise good cause for the requested extension.

Applicable Authority

20.     The Bankruptcy Rules and Federal Rules of Civil Procedure grant this Court discretion to adopt and implement guidelines which will aid in the administration of Adversary Proceedings, including discretion to grant the proposed extension of the service of process deadline.  See Zapata v. City of New York, 502 F.3d 192, 195 (2d Cir. 2007) (Rule 4(m) authorizes court to grant extensions of service period); In re Sheehan, 253 F.3d 507, 511 (9th Cir. 2001) ("The time for service in an adversary proceeding may be extended under two different rules: Rule 4(m) of the Federal Rules of Civil Procedure, and Bankruptcy Rule 9006(b).").

21.     Bankruptcy Rule 9006(b)(1) provides for the enlargement of time to perform acts required under the Bankruptcy Rules: "[W]hen an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion . . . order the period enlarged if the request therefor is made before the expiration of the period originally prescribed or as extended by a previous order . . . ."  Fed. R. Bankr. P. 9006(b)(1).

22.     Moreover, Fed. R. Civil P. 4(m), made applicable here by Bankruptcy Rule 7004(a), requires courts, upon a showing of good cause, to extend the period for service of process after the filing of a complaint.  See Bank of Cape Verde v. Bronson, 167 F.R.D. 370, 371-72 (S.D.N.Y. 1996) (good cause existed when future events would likely have "obviated the

need to serve the [] complaint" and when plaintiff requested extension before Fed. R. Civ. P. 4(m) deadline expired). Even absent good cause, this Court has discretion to extend the 120-day service period. See Zapata, 502 F.3d at 196; Mejia v. Castle Hotel Inc., 164 F.R.D. 343, 345 (S.D.N.Y. 1996).

23. The Debtors accordingly request that the Court extend the Debtors' Fed. R. Civ. P. 4(m) deadline to serve each defendant in the Adversary Proceedings commenced in connection with the Preservation Of Estate Claims Procedures Order with a summons and a copy of the complaint until 180 days after substantial consummation of the Modified Plan, without prejudice to the Debtors' right to seek further extensions of the deadline and without prejudice to the right of each of Laneko Engineering Co., Wachovia Bank, National Association, and Laneko Engineering Co., Inc.[2] to seek a shortening of the deadline.

Notice Of Motion

24. Although notice is not required by Fed. R. Bankr. P. 9006(b)(1), see Law Debenture Trust Co. v. Calpine Corp. (In re Calpine Corp.), 356 B.R. 585, 595 (S.D.N.Y. 2007); Kernisant v. City of New York, 225 F.R.D. 422, 431 n.13 (E.D.N.Y. 2005); Brady v. Marks, 7 F. Supp. 2d 247, 255 (W.D.N.Y. 1998), notice of this Motion has been provided in accordance with the Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And Administrative Procedures, entered March 20, 2006 (Docket No. 2883), and the Fifteenth Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P.

---

[2] Causes of action against Laneko Engineering Co., Wachovia Bank, National Association, and Laneko Engineering Co. Inc. were previously disclosed on Exhibit 7.24 of the Confirmed Plan as actions that would be retained, and these causes of action have again been retained pursuant to section 7.19 of the Modified Plan.

2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And Administrative Procedures, entered August 27, 2009 (Docket No. 18839). Notice has also been provided to Laneko Engineering Co., Wachovia Bank, National Association, and Laneko Engineering Co., Inc. In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

WHEREFORE the Debtors respectfully request that the Court enter an order (a) granting the relief requested herein and (b) granting the Debtors such other and further relief as is just.

Dated: New York, New York
October 2, 2009

SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP

By: /s/ John Wm. Butler, Jr.
John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler
155 North Wacker Drive
Chicago, Illinois 60606

- and -

By: /s/ Kayalyn A. Marafioti
Kayalyn A. Marafioti
Four Times Square
New York, New York 10036

Attorneys for Delphi Corporation, et al.,
Debtors and Debtors-in-Possession