DELPHI CORPORATION, et al.

1
2
3
4
5
6
7
8                           **EXHIBIT A**
9
10       **MODIFIED BENCH RULING, AMENDING AND SUPERSEDING**
11                **SEPTEMBER 24, 2009 ORAL RULING**
12
13
14
15
16
17
18
19
20
21
22
23
24
25

- 2 -
DELPHI CORPORATION, et al.

```
 1   UNITED STATES BANKRUPTCY COURT

 2   SOUTHERN DISTRICT OF NEW YORK

 3   - - - - - - - - - - - - - - - - - -x

 4   In the Matter of:

 5                                                  Chapter 11

 6   DELPHI CORPORATION, et al.,         Case No. 08-44481(rdd)

 7

 8

 9         Debtors.

10

11   - - - - - - - - - - - - - - - - - -x

12

13                United States Bankruptcy Court

14                One Bowling Green

15                New York, New York

16

17   B E F O R E:

18   HON. ROBERT D. DRAIN

19   U.S. BANKRUPTCY JUDGE

20

21

22

23   Forty-Seventh Omnibus Hearing

24

25   Hearing RE:   Doc #17767; Aikoku Alpha, Inc. Objection to Notice
```

DELPHI CORPORATION, et al.

1   of Non-assumption Under the Modified Plan with Respect to

2   Certain Expired or Terminated Contracts or Leases Previously

3   Deemed to Be Assumed or Assigned Under Confirmed Plan

4

5   A P P E A R A N C E S :

6   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

7           Attorneys for Debtor

8           155 West Wacker Drive

9           Chicago, IL 60606

10  BY:     JOHN WM. BUTLER, JR., ESQ.

11          RON E. MEISLER, ESQ.

12          CARL T. TULLSON, ESQ.

13

14  SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

15          Attorneys for Debtor

16          Four Times Square

17          New York, NY 10036

18  BY:     KAYALYN A. MARAFIOTI, ESQ.

19

20  LATHAM & WATKINS, LLP

21          Attorneys for Creditors' Committee

22          885 Third Avenue

23          New York, New York 10022

24  BY:     ADAM J. GOLDBERG, ESQ.

25

1    MASUDA FUNAI EIFERT & MITCHELL, LTD.

2          Attorneys for American Aikoku

3          203 North LaSalle Street

4          Chicago, IL 60601

5    BY:   GARY VIST, ESQ.

6

7          THE COURT:  I have informed the parties that I would

8    give them my ruling today on the objection of American Aikoku

9    Alpha, Inc. to the Delphi debtors' Notice of Non-Assumption of

10   certain contracts or leases which were slated to be assumed or

11   assumed and assigned under the debtors' original confirmed and

12   now superseded plan, including American Aikoku's contract

13   presently at issue.  There has been quite a bit of litigation

14   in this Court over the fate of American Aikoku's contract.

15   Although resolution of the issue now before me is relatively

16   simple, it is somewhat complicated by the procedural history of

17   the American Aikoku litigation, which reflects several changes

18   of direction by the debtors during the course of these chapter

19   11 cases over whether the were proposing to assume or, instead,

20   reject the American Aikoku contract at issue. (Indeed, the

21   present matter before me is no longer premised upon the

22   debtors' decision not to assume the American Aikoku contract

23   but, rather, the debtors' position that the contract should be

24   assigned to their current buyer, but as a postpetition contract

25   with no cure amount.)  That history is relevant to the merits

DELPHI CORPORATION, et al.

1    of the present dispute.

2             The debtors in this case had a number of executory

3    contracts with American Aikoku and proposed in a motion filed

4    in connection with a proposed sale of their "steering and half-

5    shaft business" to an entity named Platinum in late 2007 to

6    assume and assign under section 365 of the Bankruptcy Code an

7    American Aikoku contract to Platinum as part of that

8    transaction.  In January of 2008, American Aikoku objected to

9    that proposed assumption and assignment.  In fact, it did so

10   twice, in an objection and then in a modified objection to the

11   assumption and assignment in respect of the proposed sale of

12   the steering and half-shaft business.  It also responded to a

13   cure notice sent out by Delphi on January 23, 2008 in

14   connection with the proposed assumption and assignment of the

15   contract to the buyer in that proposed transaction.

16            The parties subsequently negotiated a resolution of

17   that dispute, which was memorialized in a stipulation dated May

18   28, 2008 that fixed the amount of American Aikoku's cure claim

19   and resolved American Aikoku's objection to the proposed

20   assumption and assignment.  The Platinum entity's proposed

21   purchase of the steering and half-shaft business did not close,

22   however, and, consequently, the contract was not at that time

23   assumed and assigned, there being no assignee to assign it to.

24            Thereafter, the debtors made a motion to modify their

25   chapter 11 plan that in the meantime had been confirmed in this

1   case, because the proposed investors under that chapter 11 plan

2   also determined not to proceed to close their proposed

3   transaction.  And, in connection with that motion, the debtors

4   sought an order providing that certain contracts (including

5   American Aikoku's), which were previously deemed to be assumed

6   or assigned pursuant to that original confirmed Chapter 11

7   plan, now, under the proposed modified plan, would not

8   necessarily be assumed.  That Notice of Non-Assumption was

9   served on American Aikoku on July 2, 2009.

10              American Aikoku objected to such a result, contending

11  (notwithstanding (a) that the originally confirmed plan in this

12  case contemplated the assumption and assignment of its contract

13  solely under its own terms and was conditioned on, among other

14  things, a multi-billion dollar capital investment by a group of

15  investors who, as noted, did not close that transaction, and,

16  of course, (b) that the sale of the steering and half-shaft

17  business to Platinum that was the basis for the May 28, 2008

18  stipulation did not occur, either) that the May 28, 2008

19  stipulation required the debtors to assume its contract under

20  *any* circumstances involving the sale of the steering and half-

21  shaft business.

22              That dispute raised a series of issues related to the

23  interpretation of the May 28, 2008 stipulation that originally

24  were addressed in the context of the debtors' determination,

25  based on their changed circumstances (including a mind-boggling

1    downturn in the global auto business), no longer to assume the

2    American Aikoku contract.

3            Thereafter, however, the debtors obtained approval of

4    confirmation of their current chapter 11 plan.  That chapter 11

5    plan, which is the chapter 11 plan now in this case,

6    contemplates the acquisition of certain of the debtors' various

7    businesses and assets either by GM, with respect to specific

8    assets, or by a group of the debtors' debtor-in-possession

9    lenders, with respect to certain other assets, or the retention

10   of certain other assets by the reorganized debtors.

11           Although the Court was still faced with American

12   Aikoku's objection by to the non-assumption of its contract,

13   it became clear at the hearing held on August 17, 2009 that the

14   debtors now proposed to _assign_ the American Aikoku agreement to

15   GM in connection with the present chapter 11 plan.  That is,

16   the debtors no longer wanted to reject the American Aikoku

17   contrac.

18           At first glance, that change of heart by the debtors

19   could well have rendered the dispute between the parties moot

20   in that the debtors would normally have to cure all prepetition

21   monetary defaults or provide adequate assurance of their prompt

22   cure under section 365(b)(1)(A) of the Bankruptcy Code in order

23   to implement such an assumption and assignment, the very result

24   that American Aikoku had sought.

25           However, the debtors, in connection with the briefing

1   for the August 17 hearing, contended that, notwithstanding the

2   May 28, 2008 stipulation, which fixed the amount of American

3   Aikoku's cure claim at well over 400,000 dollars, American

4   Aikoku and the debtors had several months before, in January of

5   2008, agreed to a _modified_ contract covering the same subject

6   matter that superseded the contract referred to in the May 28,

7   2008 stipulation.  And in that agreement, the debtors now

8   contend, the parties agreed that, in connection with any future

9   assumption and assignment of that contract, there would be _no_

10  cure claim whatsoever.

11          The debtors, therefore, contend that the parties, by

12  their January 2008 agreement, at this point are not dealing

13  with a prepetition executory contract at all but, instead, are

14  dealing with a postpetition contract governed by the terms of

15  the January 2008 modification and, therefore, that the debtors

16  are free, under the terms of that agreement, to assign that

17  contract to GM in connection with the current confirmed Chapter

18  11 plan without the need to pay anything to American Aikoku in

19  respect of its prepetition claim.

20          That is, the issues before the Court have morphed into

21  issues pertaining to the interpretation and effect of the

22  January 2009 modification of the underlying supply agreement

23  and the effect on it, if any, of the subsequent May 28, 2008

24  stipulation.

25          Having summarized that procedural background, let me

05-44481-rdd    Doc 18968-1    Filed 10/09/09    Entered 10/09/09 11:03:11    Exhibit A    Pg 9 of 20
Modified Bench Ruling
DELPHI CORPORATION, et al.
- 9 -

1   return, then, to a few fundamental legal points that govern

2   this dispute.

3           First, it is clearly the case that a debtor in chapter

4   11 is not authorized to pay prepetition unsecured debt, like

5   that claimed by American Aikoku, unless pursuant to a confirmed

6   and effective chapter 11 plan with two exceptions. The first

7   exception arises only in highly unusual circumstances where the

8   debtor obtains authorization from the bankruptcy court, on

9   notice, to pay pre-bankruptcy unsecured debt, notwithstanding

10  that all unsecured creditors are not being paid, because of the

11  net benefit to the estate of doing so and, in most courts, the

12  necessity to do so to protect the estate from an injury that

13  would be greater than the net adverse effect of paying the

14  debt.  See generally, In re Kmart Corp., 359 F.3d 866 (7th Cir.

15  2004), rehearing and rehearing en banc denied, 2004 U.S. App.

16  Lexis 9050 (7th Cir. May 6, 2004), cert. denied, 543 U.S. 995

17  (2004).

18          As the 7th Circuit said in that case, "Pre-filing

19  debts are not administrative expenses; they are the antithesis

20  of administrative expenses.  Filing a petition for bankruptcy

21  effectively creates two firms: the debts of the pre-filing

22  entity may be written down so that the post-filing entity may

23  reorganize and continue in business if it has a positive cash

24  flow.  Treating pre-filing debts as 'administrative' claims

25  [that is, claims entitled to current hundred percent payment]

1   against the post-filing entity would impair the ability of

2   bankruptcy law to prevent old debts from sinking a viable

3   firm." Id. at 872.

4           Nevertheless, the Kmart decision and decisions in this

5   district recognize that under limited and exceptional

6   circumstances, pursuant to section 363(b) of the Bankruptcy

7   Code a court may authorize a debtor to pay prepetition debt

8   outside of a chapter 11 plan -- again, if such payment is

9   necessary to preserve the debtor's business and reorganization

10  and the net benefit of such payment, including the difference

11  between full payment of the claim now versus the alternative of

12  later paying it with "tiny bankruptcy dollars," flows to the

13  debtor's estate. Id. at 872-73. See also In re Chateaugay

14  Corp., 80 B.R. 279, 287 (S.D.N.Y. 1987), and In re Ionosphere

15  Clubs, Inc., 98 B.R. 174, 178 (Bankr. S.D.N.Y. 1989).

16          In Ionosphere, although articulating the foregoing

17  exception to the general rule that prepetition debts may not be

18  paid outside a plan, Judge Lifland found that the proposed

19  payment was not in fact critical to the debtors' reorganization

20  and withheld authority for it, id. at 178-79, highlighting

21  again that it is extremely unusual to be permitted to pay

22  prepetition unsecured debt outside of a plan and that such

23  payment may be made only after sufficient notice and Court

24  approval is granted on the basis that I've just outlined.

25          The other way in which prepetition debt may be paid

1   outside of a plan is specified in Bankruptcy Code section

2   365(b)(1)(A), which provides that, as a condition to a debtor's

3   assumption of an executory contract, the debtor must cure or

4   provide adequate assurance that it will promptly cure any

5   monetary defaults thereunder, including prepetition monetary

6   defaults.  See also South St. Seaport Ltd. P'shp v. Burger Boys

7   (In re Burger Boys), 94 F.3d 755, 763 (2d Cir. 1996).

8           The debtor's determination to assume and/or to assume

9   and assign an executory contract is expressly, under section

10  365(a), subject to Bankruptcy Court approval, on notice.  The

11  request for such approval starts a contested matter under the

12  Bankruptcy Code.  Id.  The standard for approving a request to

13  assume and/or to assume and assign an executory contract in

14  this Circuit is set forth in Orion Pictures Corp. v. Showtime

15  Networks (In re Orion Pictures Corp.), 4 F.3d 1095 (2d Cir.

16  1993), cert. dismissed, 511 U.S. 1026 (1994), where the Second

17  Circuit stated that in deciding such a motion, the bankruptcy

18  court has to determine whether the proposed assumption or

19  assumption and assignment is a proper exercise of the debtor's

20  business judgment.  Id. at 1099.

21          One of the key features of the assumption of an

22  executory contract is, as I noted, the requirement to pay any

23  prepetition monetary defaults.  It clearly would not be a good

24  exercise of business judgment to agree to pay prepetition

25  amounts that did not exist or that had been previously waived.

DELPHI CORPORATION, et al.

1    Here, I have already determined as previously stated on the
2    record that, based on my review of American Aikoku's objections
3    to the proposed assumption and assignment of its contract filed
4    in January of 2008, as well as the debtors' response thereto
5    and the stipulation pursuant to which they resolved those
6    issues, entered into on May 28, 2008, the parties resolved a
7    specific objection to a specific proposed assumption and
8    assignment sought pursuant to a specific contested matter, and,
9    therefore, that the proposed treatment of American Aikoku's
10   contract pursuant to the May 28, 2008 stipulation was limited
11   to the assumption and assignment proposed by the debtors at
12   that time -- which, as I've noted, was not consummated.
13        American Aikoku's contention that the May 28, 2008
14   stipulation really was an agreement to treat its contract,
15   under any circumstances, as being automatically assumed and
16   assigned to any future assignee, simply does not fit into the
17   context of section 365 that I've just described.  Clearly in
18   the May 28, 2008 stipulation American Aikoku was not agreeing
19   to permit its contract to be assumed and assigned to anyone but
20   was focusing on the specific transaction that had then been
21   noticed by the debtors.  And, similarly, the debtors had not
22   agreed to assume and assign the contract under any
23   circumstances, given that they did not have any transaction in
24   mind other than the proposed steering and half-shaft business
25   transaction noticed for approval at the time.  In any event,

1    they did not seek to obtain approval to assume and assign the

2    contract under any circumstances but only, again, in the

3    context of the specific contested matter that was before the

4    Court. The futility of such a request, had it been made, is

5    shown by the debtors' subsequent changes of direction after

6    various proposed transactions fell through only to be

7    superseded by later transactions, until the present transaction

8    with GM.

9              I simply would not have approved such an open-ended

10   agreement, given that the debtors' business judgment in

11   agreeing to pay in excess of 400,000 dollars of cure costs and

12   create an administrative liability for any breach of the

13   contract post-assumption would not, as a matter of business

14   judgment, be appropriate except in a specific context that the

15   Court could evaluate.

16             So, for those reasons, I previously determined that

17   American Aikoku's objection to the debtors' July 2, 2009 Notice

18   of Non-Assumption was not well taken and should be denied.

19             Subsequently the debtors, again, as I noted, in August

20   of this year pointed out that (apparently unbeknownst to the

21   parties who negotiated the May 28, 2008 stipulation and in any

22   event in no way identified in the May 28, 2008 stipulation)

23   Delphi and American Aikoku had agreed, on January 29, 2008, to

24   enter into a new agreement that would supersede and replace the

25   American Aikoku contract, and that such agreement, in addition

1   to stating that it is "a new agreement between the buyer and
2   seller and supersedes and replaces any prior purchase orders or
3   other agreements between the buyer and seller with respect to
4   the subject matter hereof" also states that "each of the buyer
5   and the seller acknowledges and agrees that any prior purchase
6   orders or other agreements between the buyer and seller, which
7   are superseded and replaced by this purchase order as of its
8   effective date, shall no longer be subject to assumption or
9   rejection under the United States Bankruptcy Code, and the
10  seller hereby waives any right to assert any of the rights
11  incident to assumption or rejection, including but not limited
12  to the payment of cure with respect to any such prior purchase
13  orders or other agreements."  I'm reading from purchase order
14  SAG 90 I 2815, dated January 29, 2008, which, again, states on
15  every page that it "changes, amends or supersedes a purchase
16  order now in your possession."  That purchase order was sent by
17  Delphi to American Aikoku and is an exhibit in the record of
18  this matter.

19          Given the existence of that superseding purchase order
20  and the fact that there's no dispute that it was subsequently
21  performed by both parties, it appears to me that both parties
22  are now, under Michigan law, bound by its terms unless they
23  have been subsequently modified.  See Kvaerner U.S., Inc. v.
24  Hakim Plast Co., 74 F.Supp.2d 709, 714 (E.D. Mich. 1999).  See
25  also Michigan Comp. Law Annot. section 440.22061 (West 2009),

14

1    as well as the terms of the purchase order itself, which states

2    that "if seller accepts this contract in writing or commences

3    any of the work or services which are the subject of this

4    contract, seller will be deemed to have accepted this

5    contract."

6           American Aikoku argued at the August 17 hearing,

7    however, that the May 28, 2008 stipulation revived the

8    executory, prepetition nature of the parties' agreement and

9    recreated or gave new life to Delphi's obligation to cure any

10   prepetition defaults under that agreement, as agreed to by the

11   parties in the stipulation, upon the assumption and assignment

12   of the contract.

13          The hearing on August 17 was not an evidentiary

14   hearing, and it appeared to me that Delphi's change of course,

15   the procedural change in direction of this matter whereby now

16   the debtors were actually seeking to have the January 29, 2008

17   purchase order assigned to GM under the present confirmed plan,

18   required that the parties have some additional time to address

19   the issue of the propriety of that assignment without any court

20   approval and the continued validity of the January 29, 2008

21   purchase order in light of the May 28, 2008 stipulation.

22          The parties submitted supplemental pleadings on that

23   issue, as requested by the Court.  Neither party has raised any

24   evidentiary issue, however, or requested an evidentiary hearing

25   as to the parties' intentions in entering into the May 28, 2008

 1    stipulation in light of the January 29, 2008 purchase order.

 2              So it appears to me that what I have before me is

 3    simply a legal issue that should be decided based upon the

 4    foregoing basic legal propositions regarding the times when a

 5    debtor is authorized to pay prepetition debt, as well as my

 6    review of the January 29, 2008 purchase order and the May 28,

 7    2008 stipulation.

 8              Based on my review of those documents and the case law

 9    and authorities that I've just described, I conclude that the

10    debtors did not have authority pursuant to the May 28, 2008

11    stipulation to resurrect the parties' pre-January 29, 2008

12    contract and agree to pay the prepetition cure owing under that

13    superseded contract.  In light of the parties having agreed in

14    the January 29, 2008 purchase order that American Aikoku would

15    no longer be entitled to a cure payment under section 365 and

16    that that contract would no longer be subject to assumption and

17    assignment under section 365 of the Bankruptcy Code, the

18    debtors would not have received authority to "revive" the

19    contract and cure claim even if they had requested it when they

20    submitted the May 28, 2008 stipulation for approval, which, of

21    course, they did not request.

22              In essence, such an agreement would have been an

23    agreement to pay prepetition debt, and clearly that agreement

24    was not so described in the stipulation or to the Court.  The

25    Court did not, therefore, consider whether the debtors met the

1   difficult burden to obtain authorization to pay prepetition

2   debt outside of a plan or outside of the assumption of a

3   contract under section 365, or whether such agreement would

4   have made good business sense, which it clearly would not.

5           The contract had previously been modified so that it

6   was now a postpetition contract and the parties had agreed that

7   there would be no cure claim.  So, under Kmart, Chateauguay and

8   Ionosphere, the Court would never have authorized the debtors

9   to have entered into the May 28, 2008 stipulation if that would

10  have been its effect.  Nor would such a request have met the

11  business judgment test of Orion, as it would never have been a

12  valid exercise of the debtors' business judgment to pay over

13  400,000 dollars of prepetition debt that it had previously

14  agreed with American Aikoku it didn't need to pay.

15          Such a transaction would obviously have required

16  notice and a hearing.  And, absent proper notice and a hearing,

17  it would be avoidable if the debtors tried to implement it,

18  which, of course, they're not attempting to do.  See In Re Roth

19  American, Inc., 975 F.2d 949, 952 n.3 (3d Cir. 1992), as well

20  as section 549(a) of the Bankruptcy Code.

21          The May 28, 2008 stipulation also makes this point,

22  because the parties stated, on page 7, that "the Debtors are

23  authorized to enter into this stipulation with regards to the

24  claims matters addressed herein, either because the claims

25  involve ordinary course controversies or pursuant to that

05-44481-rdd    Doc 18968-1    Filed 10/09/09    Entered 10/09/09 11:03:11    Exhibit A     Pg 18 of 20
Modified Bench Ruling
DELPHI CORPORATION, et al.

1   certain Amended and Restated Order under 11 U.S.C. §§ 363 502

2   and 503 and Federal Rule of Bankruptcy Procedure 9019(b)

3   Authorizing Debtors to Compromise or Settle Certain Classes of

4   Controversy and Allow Claims Without Further Court Approval,

5   entered by this Court on June 26, 2007." As I've stated, given

6   that American Aikoku's interpretation of the May 28, 2008

7   stipulation would have resurrected and required full payment of

8   over 400,000 of prepetition debt, it would not have been an

9   "ordinary course controversy." Moreover, the amended and

10  restated June 26, 2007 order, referred to in the paragraph that

11  I just quoted, states in paragraph 7 that, "The debtors shall

12  not pay any prepetition claims without a separate Bankruptcy

13  Court order."

14           The May 28, 2008 stipulation did not authorize the

15  payment of a prepetition claim except in the context of an

16  assumption and assignment in connection with the specific

17  transaction contemplated by that stipulation. So it is clear

18  to me that the parties did not intend in the May 28 2008

19  stipulation to resurrect a contract that had been superseded by

20  the January 29, 2008 purchase order.

21           It is also clear to me that even if they intended to

22  do so they did not succeed in doing so and could not have

23  succeeded in doing so in that they would not have obtained

24  Court approval to do so if the matter had been properly

25  noticed, which it wasn't.

1          So, for all of those reasons, I conclude that if the
2   debtors do not presently intend to assume or to assume and
3   assign their rights under the American Aikoku contract, they
4   are not required to do.  Further, I conclude that if the
5   debtors intend to assign the contract as set forth in the
6   January 29, 2008 purchase order, they are free to do so without
7   the need to pay any prepetition cure amount to American Aikoku,
8   because that purchase order was not modified by the May 28,
9   2008 stipulation, and, even if it had been modified by the May
10  28, 2008 stipulation, which, again, I conclude the parties did
11  not intend to do, the May 28, 2008 stipulation did not suffice
12  as a basis for obtaining Court approval of such an
13  extraordinary transaction resurrecting and requiring the
14  payment of a substantial amount of prepetition debt outside of
15  a plan.
16         The debtors can submit an order consistent with my
17  ruling.
18
19
20
21
22
23
24
25

DELPHI CORPORATION, et al.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25