IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x | | |
|---|---|---|
| In re | : | Chapter 11 |
| DELPHI CORPORATION, et al., | : | Case No. 05-44481 (RDD) |
| Debtors. | : | (Jointly Administered) |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x | | |

**AFFIDAVIT OF PUBLICATION OF ALICE WEBER IN THE NEW YORK TIMES**

NYT The New York Times
620 8TH AVENUE • NEW YORK, NY 10018

SEC. B PG. 7

ine: Delphi Legal Information Website: http://www.delphidocket.com

8

UPTCY COURT
NEW YORK

) Chapter 11
et al., ) Case No. 05-44481 (RDD)
tors. ) (Jointly Administered)

APPROVING MODIFICATIONS TO FIRST AN OF REORGANIZATION OF DELPHI AIN AFFILIATES, DEBTORS AND DEBTORS- (B) OCCURRENCE OF EFFECTIVE DATE

**The Plan.** On January 25, 2008 (the lited States Bankruptcy Court for the Southern nkruptcy Court") entered an order confirming n Of Reorganization Of Delphi Corporation And nd Debtors-In-Possession, dated January 25, , in the Chapter 11 Cases of Delphi Corporation es and affiliates, the debtors and debtors-in- tioned cases (collectively, the "Debtors").

**fications To The Confirmed Plan.** On July Approval Date"), the Bankruptcy Court entered Approval Order") approving certain modifica- embodied in the First Amended Joint Plan Of orporation And Certain Affiliates, Debtors And Modified) (the "Modified Plan"), attached as on Approval Order. Unless otherwise defined r Approving Modifications To First Amended n Of Delphi Corporation And Certain Affiliates, ossession And (B) Occurrence Of Effective Date, ses used herein have the meaning(s) given to nd the Modification Approval Order.

On October 6, 2009, the Effective Date of the The Modified Plan was substantially consum- curred at the offices of Skadden, Arps, Slate, ew York City, New York; provided however, that emplated by the Master Disposition Agreement occur at the closing are effective for tax and 11:58 p.m., local time, on the Closing Date as osition Agreement.

**ms And Termination Of Interests.** Pursuant ankruptcy Code, except as otherwise specifically an, Confirmation Order, or Modification Approval d rights that are provided in the Modified Plan action, discharge, and release, effective as of the d Causes of Action, whether known or unknown, on, obligations of, rights against, and Interests in assets or properties, regardless of whether any distributed or retained pursuant to the Modified Claims, rights, and Interests, including, but not erests that arose before the Effective Date, and ified in sections 502(g), 502(h), or 502(i) of the case whether or not (a) a proof of claim or inter- n, debt, right, or Interest is filed or deemed filed Bankruptcy Code, (b) a Claim or Interest based ght, or Interest is allowed under section 502 of (c) the holder of such a Claim, right, or Interest an. Due to the occurrence of the Effective Date, al Order shall be a judicial determination of the ainst and Interests in the Debtors.

e 11.13 of the Modified Plan, the satisfaction, ursuant to Article XI of the Modified Plan shall inst any Person commencing or continuing any process, or act to collect, offset, or recover any of Action satisfied, released, or discharged under e fullest extent authorized or provided by the ng, without limitation, to the extent provided for 524 and 1141 thereof.

ributions pursuant to the Modified Plan, each m shall be deemed to have specifically consented hin Article XI of the Modified Plan.

**btors Of Certain Parties.** Pursuant to section ruptcy Code, but subject to Article 11.13 of the as of the Effective Date, each Debtor, in its individ- btor-in-possession for and on behalf of its Estate, arge and be deemed to have conclusively, abso- revocably, and forever released and discharged all from any and all claims or Causes of Action existing any manner arising from, based on, or relating to, Debtors, the subject matter of, or the transactions ny Claim or Interest that is treated in the Modified ntractual arrangements between any Debtor and restructuring of Claims and Interests prior to or in any act, omission, occurrence, or event in any man- Claims, Interests, restructuring, or the Chapter 11 Debtors, including Reorganized DPH Holdings, and ies that will be continuing the Debtors' businesses shall be bound, to the same extent the Debtors are and discharges set forth above. Notwithstanding in the Modified Plan shall be deemed to release r GM from their obligations under the Delphi-GM or the transactions contemplated thereby, except in the Master Disposition Agreement, (ii) any of s, or GM from their obligations under the Union ts or the transactions contemplated thereby, (iii) n their obligations under the Master Disposition of the Debtors or the Plan Investors or their affiliates under the Investment Agreement or the transac- ereby.

**lders Of Claims And Interests.** On the Effective who votes to accept the Modified Plan and (b) to nissible under applicable law, as such law may be ed subsequent to the Effective Date, each entity which has held, holds, or may hold a Claim against or , in consideration for the obligations of the Debtors Debtors under the Modified Plan and Cash, General bution, and other contracts, instruments, releases, ents to be delivered in connection with the Modified Plan (each, a "Release Obligor"), shall have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged all Released Parties for and from any claim or Cause of Action existing as of the Effective Date in any manner arising from, based on, or relating to, in whole or in part, the Debtors, the subject matter of, or the transaction or event giving rise to, the claim of such Release Obligor, the business or contractual arrangements between any Debtor and Release Obligor or any Released Party, the restructuring of the claim prior to the Chapter 11 Cases, or any act, omission, occurrence, or event in any manner related to such subject matter, transaction, obligation, restructuring, or the Chapter 11 Cases, including, but not limited to, any claim relating to, or arising out of the Debtors' Chapter 11 Cases, the negotiation and filing of the Modified Plan, the filing of the Chapter 11 Cases, the formulation, preparation, negotiation, dissemination, filing, implementation, administration, confirmation, or consummation of the Modified Plan, the Disclosure Statement, the Plan Exhibits, the Delphi-PBGC Settlement Agreement, the Credit Bid, the Master Disposition Agreement, the Union Settlement Agreements, any employee benefit plan, instrument, release, or other agreement or document created, modified, amended or entered into in connection with either the Modified Plan or any other agreement with the Unions, including but not limited to the Union Settlement Agreements, or any other act taken or not taken consistent with the Union Settlement Agreements in connection with the Chapter 11 Cases; provided, however, that (A) Article 11.5 of the Modified Plan is subject to and limited by Article 11.13 of the Modified Plan and (B) 11.5 of the Modified Plan shall not release any Released Party from any Cause of Action held by a governmental entity existing as of the Effective Date based on (i) the Internal Revenue Code or other domestic state, city, or municipal tax code, (ii) the environmental laws of the United States or any domestic state, city, or municipality, (iii) any criminal laws of the United States or any domestic state, city, or municipality, (iv) the Exchange Act, the Securities Act, or other securities laws of the United States or any domestic state, city, or municipality, (v) the Employee Retirement Income Security Act of 1974, as amended, or (vi) the laws and regulations of the Bureau of Customs and Border Protection of the United States Department of Homeland Security. Notwithstanding the foregoing, all releases given by GM to (i) the Debtors and the Debtors' Affiliates shall be as set forth in the Delphi-GM Global Settlement Agreement and (ii) the Unions shall be as set forth in the Union Settlement Agreements.

8. **Assumption And Assignment Of Executory Contracts And Unexpired Leases.** Subject to the terms of the Modified Plan, Modification Approval Order, and any related Bankruptcy Court orders, upon the occurrence of the Effective Date, each executory contract or unexpired lease assumed, or assumed and assigned, as applicable, pursuant to Article VIII of the Modified Plan, shall vest in and be fully enforceable by the applicable Reorganized Debtor or its assignee in accordance with its terms. On the Effective Date, all executory contracts and unexpired leases as to which any Debtor is a party are deemed automatically assumed by the applicable Reorganized Debtor in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code as of the Effective Date, unless such executory contracts or unexpired leases (a) have been previously rejected by the Debtors by Final Order of the Bankruptcy Court, (b) are the subject of a motion to reject, or that otherwise authorizes rejection, filed on or before the Modification Approval Date, (c) have been rejected or assumed pursuant to a motion to sell or transfer property or assets filed by the Debtors prior to the Effective Date, (d) have expired or terminated on or prior to the Effective Date (and were not otherwise extended) pursuant to their own terms, (e) are listed on the schedule of rejected contracts on Exhibit 8.1(a) to the Modified Plan, or (f) are otherwise rejected pursuant to the terms of the Modified Plan and/or upon the direction of either Buyer pursuant to the Master Disposition Agreement. Subject to the foregoing sentences, entry of the Modification Approval Order by the Bankruptcy Court approved the rejections, assumptions, and assumptions and assignments contemplated by the Modified Plan, the Modification Approval Order, the Master Disposition Agreement, and related documents pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date.

9. **Bar Dates**

(a) **Administrative Bar Date.** Requests for payment of an Administrative Claim (other than as set forth in Article X of the Modified Plan), must be filed with the Claims Agent and served on counsel for the Debtors and the Creditors' Committee no later than November 5, 2009 or shall be disallowed automatically without the need for any objection from the Debtors or Reorganized Debtors. Unless the Debtors or the Reorganized Debtors object to an Administrative Claim on or prior to May 4, 2010 (unless such objection period is extended by the Bankruptcy Court), such Administrative Claim shall be deemed allowed in the amount requested. In the event that the Debtors or the Reorganized Debtors object to an Administrative Claim, the Bankruptcy Court shall determine the allowed amount of such Administrative Claim.

(b) **Professional Claims And Final Fee Applications.** All final requests for payment of Professional Claims and requests for reimbursement of expenses of members of the Statutory Committees must be filed no later than December 31, 2009. After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior orders of the Bankruptcy Court, the allowed amounts of such Professional Claims and expenses shall be determined by the Bankruptcy Court. Pursuant to the Bankruptcy Court's prior orders, any requirement that Professionals comply with sections 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered terminated on the Confirmation Date, and the Reorganized Debtors have employed and paid Professionals in the ordinary course of business thereafter.

(c) **Substantial Contribution Bar Date.** Except as otherwise provided in the Modification Approval Order, any Person who requests compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to sections 503(b)(3), (4), and (5) of the Bankruptcy Code shall file an application with the clerk of the Bankruptcy Court on or before November 20, 2009, and serve such application on counsel for the Debtors, the Creditors' Committee, the United States Trustee for the Southern District of New York, and such other parties as may be decided by the Bankruptcy Court and the Bankruptcy Code on or before November 20, 2009, or be forever barred from seeking such compensation or expense reimbursement.

Dated: New York, New York, October 6, 2009

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

| By: /s/ John Wm. Butler, Jr. | By: /s/ Kayalyn A. Marafioti |
|---|---|
| John Wm. Butler, Jr., John K. Lyons, Ron E. Meisler, 155 North Wacker Drive, Chicago, Illinois 60606, (312) 407-0700 | Kayalyn A. Marafioti, Four Times Square, New York, New York 10036, (212) 735-3000 |

Attorneys for Delphi Corporation, et al., Debtors and Debtors-in-Possession

# CERTIFICATION OF PUBLICATION

OCT 15 2009 20

I, Alice Weber, in my capacity as a Principal Clerk of the Publisher of The New York Times a daily newspaper of general circulation printed and published in the City, County and State of New York, hereby certify that the advertisement annexed hereto was published in the editions of The New York Times on the following date or dates, to wit on

OCT 15 2009 20

Alice Weber

Approved:

Maria Pannullo

THIS CERTIFICATION NOT VALID WITHOUT NYT RAISED SEAL

# Obama Seeks $250 Check For Retirees And Veterans

By JACKIE CALMES

WASHINGTON — President Obama urged Congress on Wednesday to authorize a second $250 stimulus check to be sent early next year to an estimated 57 million Social Security recipients, veterans and people with disabilities.

In effect, the payment would be in lieu of a cost-of-living increase for Social Security beneficiaries next year. The White House request, and receptive statements from Congressional Democratic leaders, anticipated an announcement on Thursday from the Social Security Administration that there would be no cost-of-living adjustment for 2010 because the inflation rate has been negative as the recession has driven down prices.

By contrast, a year ago the cost of living adjustment was 5.8 percent, reflecting strong inflation and high energy prices.

White House officials put the cost of the checks at $13 billion.

*Money in lieu of a cost-of-living increase in Social Security.*

The first $250 checks went out in May as part of the $787 billion two-year stimulus package. As with that package, the officials said Mr. Obama would not ask Congress to offset the cost with other savings because the checks were intended to stimulate the economy, and budget cuts or tax increases would defeat that.

The money would go to all Social Security beneficiaries, regardless of their income, as well as disabled veterans, those eligible for railroad retirement payments and people who receive federal and state government pensions instead of Social Security.

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re<br>DELPHI CORPORATION, et al.,<br>Debtors. | Chapter 11<br>Case No. 05-44481 (RDD)<br>(Jointly Administered) |

NOTICE OF (A) ORDER APPROVING MODIFICATIONS TO FIRST AMENDED JOINT PLAN OF REORGANIZATION OF DELPHI CORPORATION AND CERTAIN AFFILIATES, DEBTORS AND DEBTORS-IN-POSSESSION AND (B) OCCURRENCE OF EFFECTIVE DATE

1. **Confirmation Of The Plan.** On January 25, 2008 (the "Confirmation Date"), the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") entered an order confirming the First Amended Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession, dated January 25, 2008 (the "Confirmed Plan"), in the Chapter 11 Cases of Delphi Corporation and certain of its subsidiaries and affiliates, the debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors").

2. **Approval Of Modifications To The Confirmed Plan.** On July 30, 2009 (the "Modification Approval Date"), the Bankruptcy Court entered an order (the "Modification Approval Order") approving certain modifications to the Confirmed Plan embodied in the First Amended Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession (As Modified) (the "Modified Plan"), attached as Exhibit A to the Modification Approval Order. Unless otherwise defined in this Notice Of (A) Order Approving Modifications To First Amended Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession And (B) Occurrence Of Effective Date, capitalized terms and phrases used herein have the meaning(s) given to them in the Modified Plan and the Modification Approval Order.

3. **Effective Date.** On October 6, 2009, the Effective Date of the Modified Plan occurred. The Modified Plan was substantially consummated at a closing that occurred at the offices of Skadden, Arps, Slate, Meagher & Flom LLP in New York City, New York; provided however, that all of the transactions contemplated by the Master Disposition Agreement and related agreements to occur at the closing are effective for tax and accounting purposes as of 11:58 p.m., local time, on the Closing Date as defined in the Master Disposition Agreement.

4. **Discharge Of Claims And Termination Of Interests.** Pursuant to section 1141(d) of the Bankruptcy Code, except as otherwise specifically provided in the Modified Plan, Confirmation Order, or Modification Approval Order, the distributions and rights that are provided in the Modified Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims and Causes of Action, whether known or unknown, against, liabilities of, liens on, obligations of, rights against, and Interests in the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Modified Plan on account of such Claims, rights, and Interests, including, but not limited to, Claims and Interests that arose before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not (a) a proof of claim or interest based upon such Claim, debt, right, or Interest is filed or deemed filed under section 501 of the Bankruptcy Code, (b) a Claim or Interest based upon such Claim, debt, right, or Interest is allowed under section 502 of the Bankruptcy Code, or (c) the holder of such a Claim, right, or Interest accepted the Modified Plan. Due to the occurrence of the Effective Date, the Modification Approval Order shall be a judicial determination of the discharge of all Claims against and Interests in the Debtors.

5. **Injunctions.**

(a) Subject to Article 11.13 of the Modified Plan, the satisfaction, release, and discharge pursuant to Article XI of the Modified Plan shall act as an injunction against any Person commencing or continuing any action, employment of process, or act to collect, offset, or recover any Claim, Interest, or Cause of Action satisfied, released, or discharged under the Modified Plan to the fullest extent authorized or provided by the Bankruptcy Code, including, without limitation, to the extent provided for or authorized by sections 524 and 1141 thereof.

(b) By accepting distributions pursuant to the Modified Plan, each Holder of an Allowed Claim shall be deemed to have specifically consented to the injunctions set forth in Article XI of the Modified Plan.

6. **Release By Debtors Of Certain Parties.** Pursuant to section 1123(b)(3) of the Bankruptcy Code, but subject to Article 11.13 of the Modified Plan, effective as of the Effective Date, each Debtor, in its individual capacity and as a debtor-in-possession for and on behalf of its Estate, shall release and discharge and be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged all Released Parties for and from any and all claims or Causes of Action existing as of the Effective Date in any manner arising from, based on, or relating to, in whole or in part, the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Modified Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, or any act, omission, occurrence, or event in any manner related to any such Claims, Interests, restructuring, or the Chapter 11 Cases. The Reorganized Debtors, including Reorganized DPH Holdings, and any newly-formed entities that will be continuing the Debtors' businesses after the Effective Date, shall be bound, to the same extent the Debtors are bound, by the releases and discharges set forth above. Notwithstanding the foregoing, nothing in the Modified Plan shall be deemed to release (i) any of the Debtors or GM from their obligations under the Delphi-GM Definitive Documents or the transactions contemplated thereby, except to the extent set forth in the Master Disposition Agreement, (ii) any of the Debtors, the Unions, or GM from their obligations under the Union Settlement Agreements or the transactions contemplated thereby, (iii) any of the Buyers from their obligations under the Master Disposition Agreement, or (iii) any of the Debtors or the Plan Investors or their affiliates from their obligations under the Investment Agreement or the transactions contemplated thereby.

7. **Release By Holders Of Claims And Interests.** On the Effective Date, (a) each Person who votes to accept the Modified Plan and (b) to the fullest extent permissible under applicable law, as such law may be extended or interpreted subsequent to the Effective Date, each entity (other than a Debtor) which has held, holds, or may hold a Claim against or Interest in the Debtors, in consideration for the obligations of the Debtors and the Reorganized Debtors under the Modified Plan and Cash, General Unsecured MDA Distribution, and other contracts, instruments, releases, agreements, or documents to be delivered in connection with the Modified Plan (each, a "Release Obligor"), shall have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged all Released Parties for and from any claim or Cause of Action existing as of the Effective Date in any manner arising from, based on, or relating to, in whole or in part, the Debtors, the subject matter of, or the transaction or event giving rise to, the claim of such Release Obligor, the business or contractual arrangements between any Debtor and Release Obligor or any Released Party, the restructuring of the claim prior to the Chapter 11 Cases, or any act, omission, occurrence, or event in any manner related to such subject matter, transaction, obligation, restructuring, or the Chapter 11 Cases, including, but not limited to, any claim relating to, or arising out of the Debtors' Chapter 11 Cases, the negotiation and filing of the Modified Plan, the filing of the Chapter 11 Cases, the formulation, preparation, negotiation, dissemination, filing, implementation, administration, confirmation, or consummation of the Modified Plan, the Disclosure Statement, the Plan Exhibits, the Delphi-PBGC Settlement Agreement, the Credit Bid, the Master Disposition Agreement, the Union Settlement Agreements, any employee benefit plan, instrument, release, or other agreement or document created, modified, amended or entered into in connection with either the Modified Plan or any other agreement with the Unions, including but not limited to the Union Settlement Agreements, or any other act taken or not taken consistent with the Union Settlement Agreements in connection with the Chapter 11 Cases; provided, however, that (A) Article 11.5 of the Modified Plan is subject to and limited by Article 11.13 of the Modified Plan and (B) 11.5 of the Modified Plan shall not release any Released Party from any Cause of Action held by a governmental entity existing as of the Effective Date based on (i) the Internal Revenue Code or other domestic state, city, or municipal tax code, (ii) the environmental laws of the United States or any domestic state, city, or municipality, (iii) any criminal laws of the United States or any domestic state, city, or municipality, (iv) the Exchange Act, the Securities Act, or other securities laws of the United States or any domestic state, city, or municipality, (v) the Employee Retirement Income Security Act of 1974, as amended, or (vi) the laws and regulations of the Bureau of Customs and Border Protection of the United States Department of Homeland Security. Notwithstanding the foregoing, all releases given by GM to (i) the Debtors and the Debtors' Affiliates shall be as set forth in the Delphi-GM Global Settlement Agreement and (ii) the Unions shall be as set forth in the Union Settlement Agreements.

8. **Assumption And Assignment Of Executory Contracts And Unexpired Leases.** Subject to the terms of the Modified Plan, Modification Approval Order, and any related Bankruptcy Court orders, upon the occurrence of the Effective Date, each executory contract or unexpired lease assumed, or assumed and assigned, as applicable, pursuant to Article VIII of the Modified Plan, shall vest in and be fully enforceable by the applicable Reorganized Debtor or its assignee in accordance with its terms. On the Effective Date, all executory contracts and unexpired leases as to which any Debtor is a party are deemed automatically assumed by the applicable Reorganized Debtor in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code as of the Effective Date, unless such executory contracts or unexpired leases (a) have been previously rejected by the Debtors by Final Order of the Bankruptcy Court, (b) are the subject of a motion to reject, or that otherwise authorizes rejection, filed on or before the Modification Approval Date, (c) have been rejected or assumed pursuant to a motion to sell or transfer property or assets filed by the Debtors prior to the Effective Date, (d) have expired or terminated on or prior to the Effective Date (and were not otherwise extended) pursuant to their own terms, (e) are listed on the schedule of rejected contracts on Exhibit 8.1(a) to the Modified Plan, or (f) are otherwise rejected pursuant to the terms of the Modified Plan and/or upon the direction of either Buyer pursuant to the Master Disposition Agreement. Subject to the foregoing sentences, entry of the Modification Approval Order by the Bankruptcy Court approved the rejections, assumptions, and assumptions and assignments contemplated by the Modified Plan, the Modification Approval Order, the Master Disposition Agreement, and related documents pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date.

9. **Bar Dates**

(a) **Administrative Bar Date.** Requests for payment of an Administrative Claim (other than as set forth in Article X of the Modified Plan), must be filed with the Claims Agent and served on counsel for the Debtors and the Creditors' Committee no later than November 5, 2009 or shall be disallowed automatically without the need for any objection from the Debtors or Reorganized Debtors. Unless the Debtors or the Reorganized Debtors object to an Administrative Claim on or prior to May 4, 2010 (unless such objection period is extended by the Bankruptcy Court), such Administrative Claim shall be deemed allowed in the amount requested. In the event that the Debtors or the Reorganized Debtors object to an Administrative Claim, the Bankruptcy Court shall determine the allowed amount of such Administrative Claim.

(b) **Professional Claims And Final Fee Applications.** All final requests for payment of Professional Claims and requests for reimbursement of expenses of members of the Statutory Committees must be filed no later than December 31, 2009. After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior orders of the Bankruptcy Court, the allowed amounts of such Professional Claims and expenses shall be determined by the Bankruptcy Court. Pursuant to the Bankruptcy Court's prior orders, any requirement that Professionals comply with sections 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered terminated on the Confirmation Date, and the Reorganized Debtors have employed and paid Professionals in the ordinary course of business thereafter.

(c) **Substantial Contribution Bar Date.** Except as otherwise provided in the Modification Approval Order, any Person who requests compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to sections 503(b)(3), (4), and (5) of the Bankruptcy Code shall file an application with the clerk of the Bankruptcy Court on or before November 20, 2009, and serve such application on counsel for the Debtors, the Creditors' Committee, the United States Trustee for the Southern District of New York, and such other parties as may be decided by the Bankruptcy Court and the Bankruptcy Code on or before November 20, 2009, or be forever barred from seeking such compensation or expense reimbursement.

Dated: New York, New York, October 6, 2009

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

| | |
|---|---|
| By: /s/ John Wm. Butler, Jr.<br>John Wm. Butler, Jr., John K. Lyons, Ron E. Meisler, 155 North Wacker Drive, Chicago, Illinois 60606, (312) 407-0700 | By: /s/ Kayalyn A. Marafioti<br>Kayalyn A. Marafioti, Four Times Square, New York, New York 10036, (212) 735-3000 |

Attorneys for Delphi Corporation, et al., Debtors and Debtors-in-Possession

## NOTICE OF VOTING RIGHTS AND HEARING TO CONSIDER WHETHER TO CONFIRM THE PLAN OF REORGANIZATION OF PITTSBURGH CORNING CORPORATION

**PITTSBURGH CORNING CORPORATION ("PCC")** has proposed a Modified Third Amended Plan of Reorganization (the "Plan"). Those with claims against PCC; those with asbestos personal injury claims (as defined in the Plan) against PCC or its parent corporations

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In re : Chapte
MOTORS LIQUIDATION COMPANY : 09-5002
f/k/a GENERAL MOTORS CORPORATION, *et al.*, :
Debtors. : (Jointly

**NOTICE OF DEADLINES FOR FILING PROOFS OF CLAI CLAIMS UNDER SECTION 503(b)(9) OF THE BANKRU**

TO ALL PERSONS AND ENTITIES WITH CLAIMS (INCLUDING SECTION 503(b)(9) OF THE BANKRUPTCY CODE) AGAINST FORTH BELOW:

| Name of Debtor | Case Number | Tax Identification Number | Other N Debtors in |
|---|---|---|---|
| Motors Liquidation Company (f/k/a **General Motors Corporation**) | 09-50026 | 38-0572515 | General Mo GMC Truck NAO Fleet GM Corpor GM Corpor Auction D National Ca National Ca Automotive Research |
| MLCS, LLC (f/k/a **Saturn, LLC**) | 09-50027 | 38-2577506 | Saturn, LL Saturn Corp Saturn Mot Corporatic GM Saturn Saturn Corp Delaware |
| MLCS Distribution Corporation (f/k/a **Saturn Distribution Corporation**) | 09-50028 | 38-2755764 | Saturn Dist Corporatic |
| MLC of Harlem, Inc. (f/k/a **Chevrolet-Saturn of Harlem, Inc.**) | 09-13558 | 20-1426707 | Chevrolet-S Harlem, In CKS of Ha |

**PLEASE TAKE NOTICE THAT**, on September 16, 2009, Bankruptcy Court for the Southern District of New York (th ing jurisdiction over the chapter 11 cases of Motors Liquidatio General Motors Corporation) and its affiliated debtors, as debtors i lectively, the "**Debtors**") entered an order (the "**Bar Date Order November 30, 2009, at 5:00 p.m. (Eastern Time)** as the last date person or entity (including, without limitation, individuals, partners joint ventures, and trusts) to file a proof of claim ("**Proof of Claim** tition claims, including a claim under section 503(b)(9) of the Ba described more fully below (a "**503(b)(9) Claim**"), against any o "**General Bar Date**"); and (ii) **November 30, 2009, at 5:00 p.** as the last date and time for each governmental unit (as defined in the Bankruptcy Code) to file a Proof of Claim based on prepetition of the Debtors (the "**Governmental Bar Date**" and, together wit Date, the "**Bar Dates**").

The Bar Date Order, the Bar Dates and the procedures set forth b of Proofs of Claim apply to all claims against the Debtors (other t below as being specifically excluded) that arose prior to **June 1,** which the Debtors commenced their cases under chapter 11 of titl States Code (the "**Bankruptcy Code**").

**If you have any questions relating to this Notice, please feel f ixPartners at 1-800-414-9607 or by e-mail at claims@motor In addition, you may contact the Official Committee of Uns through its website at www.motorsliquidationcreditorscom 1-212-715-3275.**

**YOU SHOULD CONSULT AN ATTORNEY IF YOU HAVE A INCLUDING WHETHER YOU SHOULD FILE A PROOF O**

**1. WHO MUST FILE A PROOF OF CLAIM**

You **MUST** file a **Proof of Claim** to vote on a chapter 11 plan ors or to share in any of the Debtors' estates if you have a claim **June 1, 2009**, including a 503(b)(9) Claim, and it is not one of claims described in Section 2 below. Acts or omissions of the before **June 1, 2009** may give rise to claims against the Debtors th the applicable Bar Date, notwithstanding that such claims may n become fixed or liquidated or certain prior to **June 1, 2009.**

Pursuant to section 101(5) of the Bankruptcy Code and as used word "claim" means: (a) a right to payment, whether or not such judgment, liquidated, unliquidated, fixed, contingent, matured, un undisputed, legal, equitable, secured, or unsecured; or (b) a right tc edy for breach of performance if such breach gives rise to a right tc or not such right to an equitable remedy is reduced to judgment matured, unmatured, disputed, undisputed, secured, or unsecure include unsecured claims, secured claims, priority claims, and 50 defined in Section 2(d) below).

**2. WHO NEED NOT FILE A PROOF OF CLAIM**

You need not file a Proof of Claim if:

(a) Your claim is listed on the Schedules (as defined below scribed in the Schedules as "disputed", "contingent", (ii) you do **not** dispute the amount or nature of the cla Schedules, and (iii) you do **not** dispute that the claim is specific Debtor against which the claim is listed on the S
(b) Your claim has been paid in full;
(c) You hold an interest in any of the Debtors, which interest ly upon the ownership of common or preferred stock, me partnership interests, or warrants or rights to purchase, such a security or interest; **provided, however**, that in wish to assert claims (as opposed to ownership interests Debtors that arise out of or relate to the ownership or pur including claims arising out of or relating to the sale, is tion of the interest, must file Proofs of Claim on or befor Date, unless another exception identified herein applies;
(d) You hold a claim allowable under sections 503(b) an Bankruptcy Code as an administrative claim; **provide (9) Claims are subject to the General Bar Date as pr** tion 503(b)(9) provides in part: "…there shall be allo expenses…including…(9) the value of any goods rece within 20 days before the date of commencement of a in which the goods have been sold to the debtor in the such debtor's business." **Accordingly, if you have a 50 must file a Proof of Claim on or before the General I**
(e) You hold a claim that has been allowed by an order of t or before the applicable Bar Date;
(f) You hold a claim against any of the Debtors for which a fixed by the Court (whereupon you will be required to f