**Hearing Date And Time: November 18, 2009 at 10:00 a.m.**
**Objection Deadline: November 11, 2009 at 4:00 p.m.**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
155 North Wacker Drive
Chicago, Illinois 60606
John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler

   - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Kayalyn A. Marafioti

Attorneys for DPH Holdings Corp., et al.,
   Reorganized Debtors

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.dphholdingsdocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |  |
|---|---|---|
| In re | : | Chapter 11 |
|  | : |  |
| DELPHI CORPORATION, et al., | : | Case No. 05-44481 (RDD) |
|  | : |  |
|  | : | (Jointly Administered) |
| Debtors. | : |  |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

REORGANIZED DEBTORS' MOTION FOR ORDER UNDER 11 U.S.C. § 105 AND
FED. R. BANKR. P. 7041 AND 9014 (I) DISMISSING CERTAIN OFF-CALENDAR
MOTIONS AND CONTESTED MATTERS AND (II) OVERRULING,
WITHDRAWING, OR OTHERWISE DISMISSING OR DEEMING MOOT CERTAIN
OBJECTIONS LODGED IN CONNECTION WITH PROCEDURES SET FORTH IN
<u>DEBTORS' 2007 SOLICITATION PROCEDURES MOTION</u>

("MOTION TO DISMISS OFF-CALENDAR MOTIONS AND OVERRULE MOOT OBJECTIONS")

DPH Holdings Corp. and certain of its affiliated reorganized debtors in the above-captioned cases (the "Reorganized Debtors" or "DPH Holdings") hereby submit this motion (the "Motion") for an order (i) dismissing certain off-calendar motions and contested matters and (ii) resolving certain contested matters by overruling, withdrawing, or otherwise dismissing or deeming moot certain objections that were lodged pursuant to the procedures set forth in the 2007 Solicitation Procedures Motion (defined below) under 11 U.S.C. § 105 and Fed. R. Bankr. P. 7041 and 9014, and respectfully represent as follows:

Background

1. On October 8 and 14, 2005, Delphi Corporation and certain of its affiliates (the "Debtors"), predecessors of the Reorganized Debtors, filed voluntary petitions in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as then amended (the "Bankruptcy Code").

2. On September 6, 2007, the Debtors filed their Motion For Order Approving (I) Disclosure Statement, (II) Record Date, Voting Deadline, And Procedures For Temporary Allowance Of Certain Claims, (III) Hearing Date To Consider Confirmation Of Plan, (IV) Procedures For Filing Objections To Plan, (V) Solicitation Procedures For Voting On Plan, (VI) Cure Claim Procedures, (VII) Procedures For Resolving Disputes Relating To Postpetition Interest, And (VIII) Reclamation Claim Procedures (Docket No. 9266) (the "2007 Solicitation Procedures Motion").  On December 10, 2007, the Debtors filed their first amended joint plan of reorganization (Docket No. 11386) (the "Confirmed Plan") and related disclosure statement (Docket No. 11388). The

Court entered an order confirming the Confirmed Plan (as modified) (Docket No. 12359) (the "Confirmation Order") on January 25, 2009, and the order became final on February 4, 2008.

    3.  On October 3, 2008, the Debtors filed a motion under 11 U.S.C. § 1127 for an order approving (i) certain modifications to the Confirmed Plan and related disclosure statement and (ii) related procedures for re-soliciting votes on the Confirmed Plan, as modified (Docket No. 14310) (the "Plan Modification Motion"). On June 1, 2009, the Debtors filed a supplement to the Plan Modification Motion, which sought approval of (i) certain modifications to the Confirmed Plan (the "Modified Plan"), (ii) supplemental disclosure, and (iii) procedures for re-soliciting votes on the Modified Plan. After holding a final plan modification hearing on July 29 and 30, 2009, the Court entered an order approving the Modified Plan (Docket No. 18707) on July 30, 2009.

    4.  On October 6, 2009, the Debtors substantially consummated the Modified Plan, the Effective Date[1] occurred, and the transactions under the Master Disposition Agreement and related agreements closed. In connection therewith, DIP Holdco LLP (subsequently renamed Delphi Automotive LLP, a United Kingdom limited liability partnership), as assignee of DIP Holdco 3 LLC, through various subsidiaries and affiliates acquired substantially all of the Debtors' global core businesses, and GM Components Holdings, LLC, a Delaware limited liability company, and Steering Solutions Services Corporation, a Delaware corporation, acquired certain U.S. manufacturing plants and the Debtors' non-core steering business, respectively. The Reorganized Debtors have

---

[1] Capitalized terms used but not defined in this Motion have the meanings ascribed to them in the Modified Plan.

emerged from chapter 11 as DPH Holdings and affiliates and remain responsible for the post-Effective Date administration, including, without limitation, the disposition of certain retained assets and payment of certain retained liabilities as provided for under the Modified Plan, and the eventual closing of these chapter 11 cases.

Relief Requested

5. The Reorganized Debtors seek entry of an order (i) dismissing certain off-calendar motions and contested matters and (ii) resolving certain contested matters by overruling, withdrawing, or otherwise dismissing or deeming moot objections that were lodged pursuant to the procedures set forth in the 2007 Solicitation Procedures Motion. As explained in more detail below, the Reorganized Debtors believe that these pleadings should be dismissed, withdrawn, or overruled under section 105 of the Bankruptcy Code and Fed. R. Bankr. P. 7041 and 9014 either because the movants have failed to prosecute these matters or because the relief sought is otherwise moot.

Basis For Relief

6. As noted above, on October 6, 2009 the Modified Plan became effective and the Debtors emerged from chapter 11. The Reorganized Debtors are currently administering the Modified Plan and are working to close the chapter 11 cases as soon as practicable. To be eligible for closure, the estates of the relevant Debtor entity must be "substantially administered." See 11 U.S.C. § 350(a); Fed. R. Bankr. P. 3022. One of the factors courts consider in determining whether an estate has been fully administered is whether all motions, contested matters, and adversary proceedings have been finally resolved. This Motion reflects the Reorganized Debtors' efforts to administer these chapter 11 cases by minimizing the number of outstanding dormant pleadings on the

4

docket. Specifically, the motions and contested matters set forth in this Motion are should either be (i) dismissed under Fed. R. Bankr. P. 7041 and 9014 for a failure to prosecute such motions or (ii) overruled as moot.

Applicable Authority

7.   Fed. R. Bankr. P. 7041 and 9014 make Fed. R. Civ. P. 41 applicable to contested matters before the bankruptcy court. Fed. R. Civ. P. 41(b) provides that "if the plaintiff fails to prosecute . . . , a defendant may move to dismiss the action or any claim against it." Unless a court orders otherwise, dismissal under Fed. R. Civ. P. 41(b) "operates as an adjudication on the merits." The decision to dismiss for lack of prosecution lies within the trial court's discretion." Madison-Onondaga Corp. and Samuel G. Nappi v. John C. Kanaley (In re Kanaley), 241 B.R. 795, 800 (Bankr. S.D.N.Y. 1999) (citations omitted).

8.   A court's consideration of dismissal under Fed. R. Civ. P. 41(b) is guided by five factors:

(a)   the duration of the plaintiff's failures;

(b)   whether the plaintiff had notice that further delays would result in dismissal;

(c)   whether the defendant is likely to be prejudiced by further delays;

(d)   a balancing of the need to alleviate court calendar congestion with a party's right to due process; and

(e)   the efficacy of lesser sanctions.

In re Kanaley, 241 at 801; see also Nita v. Connecticut Dept. of Envtl. Protection, 16 F.3d 482, 485 (2d Cir. 1994).

9.  The Reorganized Debtors seek to dismiss twelve motions that have not been prosecuted in years, as identified on Exhibits A-1 to A-3. As discussed below, dismissal is proper not only because movants have failed to prosecute these motions, but also because the relief sought is many of these motions is now moot. Moreover, the factors set forth in In re Kanaley, especially the prejudice to non-moving Reorganized Debtors due to unnecessarily prolonging these chapter 11 cases, favor dismissal.[2]

10. The Reorganized Debtors also seek entry of an order disposing of 71 separate contested matters. Each of these contested matters identified on Exhibits B-1 to B-5 hereto arises from the procedures set forth in the 2007 Solicitation Procedures Motion. As explained in more detail below, each of these contested matters is now moot. As will be further reflected below, entry of an order overruling or otherwise resolving these contested matters is proper under section 105 of the Bankruptcy Code. By this Motion, the Reorganized Debtors seek to dispose of the motions and contested matters identified on Exhibits A-1 to B-5 hereto in furtherance of the closure of these chapter 11 cases.

B.  Certain Off-Calendar Motions Should Be Dismissed

  (i)  Motions For Relief From The Automatic Stay Should Be Dismissed

11. Each of the motions set forth on Exhibit A-1 seeks relief from the automatic stay under section 362 of the Bankruptcy Code. The movants identified on Exhibit A-1 have not prosecuted their motions in years and therefore these actions should

---

[2] Bankruptcy Rule 3022 provides that "after an estate is fully administered in a chapter 11 reorganization case, the court, on its own motion or on motion of a party-in-interest, shall enter a final decree closing the case." As noted by the Second Circuit in In re Aquatic Development Group, Inc., 352 F.3d 671 (2d Cir. 2003), the Advisory Committee Notes state that the bankruptcy court, in determining whether an estate has been fully administered, should consider whether all motions, contested matters, and adversary proceedings have been fully resolved. Id. at 676 n. 5; see also In re Gates Community Chapel of Rochester, Inc., 212 B.R. 220, 223-24 (Bankr. W.D.N.Y. 1997) (citing Advisory Committee Notes to 1991 Amendments to Bankruptcy Rule 3022).

be dismissed pursuant to Fed. R. Bankr. P. 7041(b).  Indeed, the most recent motion identified on Exhibit A-1 was filed on January 25, 2007 – nearly three years ago. Allowing these motions to remain on the docket is prejudicial to the Reorganized Debtors' efforts to administer these chapter 11 cases efficiently.  Accordingly, the motions for relief from the automatic stay identified on Exhibit A-1 should be dismissed pursuant to Fed. R. Bankr. P. 7041.

        (ii)    Motions Filed By Dissolved Committees To Prosecute Claims That Have Been Released By The Debtors Should Be Dismissed As Moot

12.    The Equity Committee and the Creditors' Committee each filed motions (the "STN Motions") to prosecute the Debtors' claims and defenses against certain third parties, including, without limitation, General Motors Corporation (the "Proposed Defendants").  A list of the STN Motions is attached hereto as Exhibit A-2.  The STN Motions are moot because the Debtors' claims and defenses against the Proposed Defendants have been settled and/or released pursuant to the Amended Global Settlement Agreement and the Modified Plan.  (See GSA And MRA Amendment Order, Docket No. 14287, ¶ 5; Amended GSA § 4.01; Modified Plan §§ 7.19, 11.4, 11.7.)  In fact, any underlying claims of the Reorganized Debtors against either General Motors Corporation or any of the other Proposed Defendants are released or otherwise waived because (a) claims against General Motors Corporation were explicitly released pursuant to the Amended Global Settlement Agreement ((See GSA And MRA Amendment Order, Docket No. 14287, ¶ 5; Amended GSA § 4.01) and (b) no such actions were retained pursuant to the Modified Plan.  (See Modified Plan § 7.19 and Exhibit 7.19.)  Because the rights of the Equity Committee and the Creditors' Committee to pursue these claims are derivative of

7

the Reorganized Debtors' rights and the Reorganized Debtors have not retained such rights, these motions are moot and should therefore be dismissed. See Horowitz v. Alloy Automotive Co., 992 F. 2d 100, 104 (7th Cir. 1993) (adversary proceeding rendered moot should be dismissed).

13. Another reason the STN Motions are moot is because the Equity Committee and the Creditors' Committee have each been disbanded. Accordingly, neither committee exists to prosecute these motions. For the foregoing reasons, the motions listed on Exhibit A-2 should be dismissed with prejudice.

(iii) Computer Patent Annuities Limited's Motion To Compel Assumption Or Rejection Of Executory Contracts Should Be Dismissed As Moot

14. On September 19, 2006, Computer Patent Annuities Limited ("CPA") filed its Motion By Computer Patent Annuities Limited For An Order Compelling Debtor To Assume Or Reject Executory Contract, Or In The Alternative, For Adequate Protection (Docket No. 5153) (the "CPA Motion"). The CPA Motion is listed on Exhibit A-3 attached hereto. CPA has not prosecuted the CPA Motion since it was filed three years ago, warranting dismissal under Fed. R. Bankr. P. 7041. Moreover, pursuant to the Modified Plan and the Modification Approval Order, the Debtors have made their decision to assume, assume and assign, or reject all executory contracts and unexpired leases. (See Plan Modification Order ¶¶ CC, 28; Modified Plan § 8.1.) Pursuant to notices delivered in July 2009, the Debtors notified CPA that the contract would be assigned to DIP Holdco 3, LLC. Accordingly, the CPA Motion listed on Exhibit A-3 should be dismissed with prejudice because it is moot.

C.     Any Contested Matters Regarding Payment Of Postpetition Interest On General Unsecured Claims Under The Confirmed Plan Are Now Moot

15.     Under the Confirmed Plan, holders of general unsecured claims, other than TOPrS claims, were to be entitled to payment of postpetition interest from the petition date through December 31, 2007 at either (i) the Michigan statutory rate or (ii) at the applicable contractual non-default rate. Pursuant to the order granting the 2007 Solicitation Procedures Motion, entered on December 10, 2007 (Docket No. 11389) (the "Solicitation Procedures Order"), the Debtors distributed a notice regarding postpetition interest rate to thousands of affected claimants as part of their solicitation package (the "Interest Rate Notices"). In the event parties disputed the rate set forth in the Interest Rate Notices, the notices contained procedures for parties to follow to assert an interest rate other than the Michigan statutory rate.

16.     After receiving these notices, 55 parties challenged the Michigan statutory rate (the "Interest Rate Dispute Parties"). A list of the Interest Rate Dispute Parties is attached hereto as <u>Exhibit B-1</u>.[3] Under the Modified Plan, however, holders of general unsecured claims are not entitled to postpetition interest. Accordingly, each of the contested matters between the Debtors and the parties identified on <u>Exhibit B-1</u> is now moot. Therefore, the Reorganized Debtors request entry of an order withdrawing the Omnibus Postpetition Interest Objection and deeming these contested matters moot.

---

[3]     The Debtors objected to the notices submitted by the Interest Rate Dispute Parties pursuant to their Debtors' Omnibus Objection To Claims For Postpetition Interest (Docket No. 12833) (the "Omnibus Postpetition Interest Objection").

D.   **Certain Objections To Cure Amount Notices Issued Pursuant To The Plan Are Now Moot And Should Be Overruled**

17.   Under the procedures set forth in the Solicitation Procedures Order and the Confirmation Order, the Debtors sent out Cure Amount Notices (as defined in the Confirmed Plan) to counterparties whose Material Supply Agreements (as defined in the Confirmed Plan) were being assumed pursuant to the Confirmed Plan. The Cure Amount Notices set forth the cure amount and allowed the counterparty to elect payment of its cure amount in cash or plan currency. These Cure Amount Notices were delivered in December 2007 and all counterparties were required to return the notices on or before January 11, 2008 indicating (i) whether they disputed the cure amount and (ii) their election to receive payment of the cure amount in cash or plan currency. The Debtors received numerous objections to these Cure Amount Notices (each, an "8.2(a) Cure Objection").

(i)   **Certain Objections Are Moot Due To Subsequent Notices Of Non-Assumption**

18.   Because the Cure Amount Notices were delivered approximately 21 months ago, certain of the Material Supply Agreements to be assumed and cured under the Confirmed Plan expired or were otherwise terminated and thus are no longer executory. Thus, pursuant to paragraphs L and 34 of the Modification Procedures Order (Docket No. 17032), the Debtors issued a Notice of Non-Assumption of Executory Contracts (the "Non-Assumption Notice") notifying certain contract counterparties who previously received a Cure Amount Notice that certain Material Supply Agreements were no longer being assumed or cured.

19.   The parties listed on Exhibit B-2 filed 8.2(a) Cure Objections in calendar year 2008, objecting to Cure Amount Notices received in connection with the

10

Confirmed Plan, but subsequently, pursuant to the Modification Procedures Order, received a Notice of Non-Assumption because such contracts are no longer being assumed. Recipients of such notices had an opportunity to object if they disputed the Debtors' determination not to assume a contract. The deadline to object to the Non-Assumption Notice has passed and the parties listed on Exhibit B-2 did not object to the Notices of Non-Assumption. Accordingly, the affected counterparties can no longer challenge the determination that the Material Supply Agreements listed on the Notices of Non-Assumption are not being assumed and cured. The objections to the Cure Amount Notices filed by the parties listed on Exhibit B-2 are now inapplicable, and therefore the Reorganized Debtors request that the objections listed on Exhibit B-2 be overruled.

    (ii)  Certain Stipulations Render Reservations Of Rights Moot

  20.  As set forth on Exhibit B-3 attached hereto, two counterparties filed reservations of rights with respect to Cure Amount Notices that they received pursuant to the Solicitation Procedures Order and the Confirmation Order. Since those reservations of rights were filed, the Debtors and each applicable counterparty have executed a stipulation resolving their cure disputes.[4] Accordingly, the Reorganized Debtors believe that the reservations of rights filed by the counterparties set forth on Exhibit B-3 should be deemed withdrawn or otherwise dismissed.

---

[4] See Stipulation And Order Resolving Objections By AT&T To Approval And/Or Confirmation Of The Debtors' First Amended Joint Plan Of Reorganization (Docket No. 18963); Stipulation And Agreed Order Resolving Objection Of Clarion Corporation Of America To Notice Of Assumption And Assignment (Docket No. 18844).

    (iii)  Reservation Of Rights Regarding Non-Assumption Of Non-Executory Contract Is Now Moot

  21.  As set forth on <u>Exhibit B-4</u> attached hereto, on January 11, 2008 Atmel Corporation ("Atmel") filed a reservation of rights asserting that purchase order P71057 was not listed as an executory contract to be assumed under the Confirmed Plan. [Nevertheless, purchase order P71057 is not an executory contract or unexpired lease and therefore it was not assumed or assumed and assigned pursuant to the Modified Plan. The Reorganized Debtors believe that Atmel has not pursued it reservation of rights during the last 20 months because Atmel similarly believes that there is no further right to preserve. Atmel's failure to prosecute this reservation of rights is prejudicial to the Reorganized Debtors because outstanding pleadings on the docket impedes the Reorganized Debtors' ' efforts to administer these chapter 11 cases. Accordingly, the Reorganized Debtors believe that the reservation of rights listed on <u>Exhibit B-4</u> should be overruled.

    (iv)  Liquidity Solutions, Inc.'s Objection To Cure Amount Notices Should Be Overruled

  22.  As set forth on <u>Exhibit B-5</u> attached hereto, on January 11, 2008 Liquidity Solutions, Inc. ("LSI") filed an objection (Docket No. 11921) requesting that any cure amounts be paid in cash and that cure payments be directed to LSI, as assignee. Under the Modified Plan as approved by the Plan Modification Order, all cure amounts will be paid in cash and cure payments will be made only to the counterparty. (Plan Modification Order ¶ 30; Modified Plan § 8.2(a)(iii).) Accordingly, the Reorganized Debtors believe that the objection listed on <u>Exhibit B-5</u> should be overruled.

Notice

23. Notice of this Motion has been provided in accordance with the Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And Administrative Procedures, entered March 20, 2006 (Docket No. 2883), and the Fifteenth Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And Administrative Procedures, entered August 26, 2009 (Docket No. 18839). In light of the nature of the relief requested, the Reorganized Debtors submit that no other or further notice is necessary.

WHEREFORE the Reorganized Debtors respectfully request that the Court enter an order (a) dismissing the motions set forth on Exhibits A-1 to A-3, (b) overruling, withdrawing, or otherwise dismissing or deeming moot the objections and contested matters set forth on Exhibits B-1 to B-5, and (c) granting the Reorganized Debtors such other and further relief as is just.

Dated:   New York, New York
         October 29, 2009

        SKADDEN, ARPS, SLATE, MEAGHER
          & FLOM LLP

By:   /s/ John Wm. Butler, Jr.
    John Wm. Butler, Jr.
    John K. Lyons
    Ron E. Meisler
155 North Wacker Drive
Chicago, Illinois 60606

- and -

By:   /s/ Kayalyn A. Marafioti
    Kayalyn A. Marafioti
Four Times Square
New York, New York 10036

Attorneys for DPH Holdings Corp., et al.,
   Reorganized Debtors