# EXHIBIT C

LOCKHEED MARTIN CORPORATION

CORPDOC 3



## GENERAL PROVISIONS AND FAR FLOWDOWN PROVISIONS FOR SUBCONTRACTS/PURCHASE ORDERS (ALL AGENCIES) FOR NON-COMMERCIAL ITEMS UNDER A U.S. GOVERNMENT PRIME CONTRACT

**SECTION I: GENERAL PROVISIONS**

1   Acceptance of Contract/Terms and Conditions
2   Applicable Laws
3   Assignment
4   Communication With Lockheed Martin Customer
5   Contract Direction
6   Definitions
7   Disputes
8   Electronic Contracting
9   Export Control
10  Extras
11  Furnished Property
12  Gratuities/Kickbacks
13  Independent Contractor Relationship
14  Information of Lockheed Martin
15  Information of Seller
16  Insurance/Entry on Lockheed Martin Property
17  Intellectual Property
18  Offset Credit/Cooperation
19  Packing and Shipment
20  Parts Obsolescence

21  Payments, Taxes, and Duties
22  Precedence
23  Priority Rating
24  Quality Control System
25  Release of Information
26  Severability
27  Survivability
28  Timely Performance
29  Waivers, Approvals, and Remedies
30  Warranty

**SECTION II: FAR FLOWDOWN PROVISIONS**
A   Incorporation of FAR Clauses
B   Government Subcontract
C   Notes
D   Amendments Required by Prime Contract
E   Preservation of the Government's Rights
F   FAR Flowdown Clauses
G   Certifications and Representations

## SECTION I: GENERAL PROVISIONS

1.  **ACCEPTANCE OF CONTRACT/TERMS AND CONDITIONS**

    (a)  This Contract integrates, merges, and supersedes any prior offers, negotiations, and agreements concerning the subject matter hereof and, together with Exhibits, Attachments, and any Task Order (s) issued hereunder, constitutes the entire agreement between the Parties.

    (b)  SELLER's acknowledgment, acceptance of payment, or commencement of performance, shall constitute SELLER's unqualified acceptance of this Contract.

    (c)  **Additional or differing terms or conditions proposed by SELLER or included in SELLER's acknowledgment are objected to by LOCKHEED MARTIN and have no effect unless expressly accepted in writing by LOCKHEED MARTIN.**

2.  **APPLICABLE LAWS**

    (a)  This Contract shall be governed by and construed in accordance with the laws of the State from which this Contract is issued, excluding its choice of laws rules, except that any provision in this Contract that is (i) incorporated in full text or by reference from the Federal Acquisition Regulations (FAR); or (ii) incorporated in full text or by reference from any agency regulation that implements or supplements the FAR or; (iii) that is substantially based on any such agency regulation or FAR provision, shall be construed and interpreted according to the federal common law of government contracts as enunciated and applied by federal judicial bodies, boards of contracts appeals, and quasi-judicial agencies of the federal Government.

    (b)  (1)  SELLER agrees to comply with all applicable laws, orders, rules, regulations, and ordinances. SELLER shall procure all licenses/permits, pay all fees, and other required charges and shall comply with all applicable guidelines and directives of any local, state and/or federal governmental authority.

    (2)  IF: (i) LOCKHEED MARTIN's contract price or fee is reduced; (ii) LOCKHEED MARTIN's costs are determined to be unallowable; (iii) any fines, penalties or interest are assessed on LOCKHEED MARTIN; or (iv) LOCKHEED MARTIN incurs any other costs or damages; as a result of any violation of applicable laws, orders, rules, regulations, or ordinances by SELLER, its officers, employees, agents, suppliers, or subcontractors at any tier, LOCKHEED MARTIN may proceed as provided for in (4) below.

    (3)  Where submission of cost or pricing data is required or requested at any time prior to or during performance of this Contract, if SELLER or its lower-tier subcontractors:  (i) submit and/or certify cost or pricing data that are defective; (ii) with notice of applicable cutoff dates and upon LOCKHEED MARTIN's request to provide cost or pricing data, submit cost or pricing data, whether certified or not certified at the time of submission, as a prospective subcontractor, and any such data are defective as of the applicable cutoff date on LOCKHEED MARTIN's Certificate of Current Cost or Pricing Data; (iii) claim an exception to a requirement to submit cost or pricing data and such exception is invalid; (iv) furnish data of any description that is inaccurate; or, if (v) the U.S. Government alleges any of the foregoing; and, as a result, (1) LOCKHEED MARTIN's contract price or fee is reduced; (2) LOCKHEED MARTIN's costs are determined to be unallowable; (3) any fines, penalties, or interest are assessed on LOCKHEED MARTIN; or (4) LOCKHEED MARTIN incurs any other costs or damages; LOCKHEED MARTIN may proceed as provided for in (4) below.

    (4)  **Upon the occurrence of any of the circumstances identified in (2) and (3) above, LOCKHEED MARTIN may make a reduction of corresponding amounts (in whole or in part) in the price of this Contract or any other contract with SELLER, and/or may demand payment (in whole or in part) of the corresponding amounts.  SELLER shall promptly pay amounts so demanded.**

(c)    SELLER represents that each chemical substance constituting or contained in Work sold or otherwise transferred to LOCKHEED MARTIN hereunder is on the list of chemical substances compiled and published by the Administrator of the Environmental Protection Administration pursuant to the Toxic Substances Control Act (15 U.S.C. Sec. 2601 et seq.) as amended.

(d)    SELLER shall provide to LOCKHEED MARTIN with each delivery any Material Safety Data Sheet applicable to the Work in conformance with and containing such information as required by the Occupational Safety and Health Act of 1970 and regulations promulgated there under, or its state approved counterpart.

**3.    ASSIGNMENT**

Any assignment of SELLER's Contract rights or delegation of SELLER's duties shall be void, unless prior written consent is given by LOCKHEED MARTIN.  SELLER may assign rights to be paid amounts due, or to become due, to a financing institution if LOCKHEED MARTIN is promptly furnished a signed copy of such assignment reasonably in advance of the due date for payment of any such amounts.  Amounts assigned shall be subject to setoffs or recoupment for any present or future claims of LOCKHEED MARTIN against SELLER.  LOCKHEED MARTIN shall have the right to make settlements and/or adjustments in price without notice to any assignee.

**4.    COMMUNICATION WITH LOCKHEED MARTIN CUSTOMER**

LOCKHEED MARTIN shall be solely responsible for all liaison and coordination with the LOCKHEED MARTIN customer, including the U. S. Government, as it affects the applicable prime contract, this Contract, and any related contract.

**5.    CONTRACT DIRECTION**

(a)    Only the LOCKHEED MARTIN Procurement Representative has authority to make changes in or amendments to this Contract.  Changes and amendments must be in writing.

(b)    LOCKHEED MARTIN engineering and technical personnel may from time to time render assistance or give technical advice or discuss or effect an exchange of information with SELLER's personnel concerning the Work hereunder.  No such action shall be deemed to be a change under the "Changes" clause of this Contract and shall not be the basis for equitable adjustment.

(c)    Except as otherwise provided herein, all notices to be furnished by the SELLER shall be sent to the LOCKHEED MARTIN Procurement Representative.

**6.    DEFINITIONS**

The following terms shall have the meanings set forth below:

(a)    "Contract" means the instrument of contracting, such as "PO", "Purchase Order", or "Task Order", or other such type designation, including all referenced documents, exhibits and attachments.  If these terms and conditions are incorporated into a "master" agreement that provides for releases, (in the form of a Purchase Order or other such document) the term "Contract" shall also mean the release document for the Work to be performed.

(b)    "FAR" means the Federal Acquisition Regulation, issued as Chapter 1 of Title 48, Code of Federal Regulations.

(c)    "LOCKHEED MARTIN" means LOCKHEED MARTIN CORPORATION, acting through its companies or business units as identified on the face of this Contract. If a subsidiary or affiliate of LOCKHEED MARTIN CORPORATION is identified on the face of this Contract then "LOCKHEED MARTIN" means that subsidiary or affiliate.

(d)    "LOCKHEED MARTIN Procurement Representative" means a person authorized by LOCKHEED MARTIN's cognizant procurement organization to administer and/or execute this Contract.

(e)    "PO" or "Purchase Order" means this Contract.

(f)    "SELLER" means the party identified on the face of this Contract with whom LOCKHEED MARTIN is contracting.

(g)    "Task Order" means a separate order issued under this Contract.

(h)    "Work" means all required labor, articles, materials, supplies, goods, and services constituting the subject matter of this Contract.

**7.    DISPUTES**

All disputes under this Contract which are not disposed of by mutual agreement may be decided by recourse to an action at law or in equity.  Until final resolution of any dispute hereunder, SELLER shall diligently proceed with the performance of this Contract as directed by LOCKHEED MARTIN.

**8.    ELECTRONIC CONTRACTING**

The parties agree that if this Contract is transmitted electronically neither party shall contest the validity of this Contract, or any Acknowledgement thereof, on the basis that this Contract or Acknowledgement contains an electronic signature.

**9.    EXPORT CONTROL**

(a)    SELLER agrees to comply with all applicable U.S. export control laws and regulations, specifically including, but not limited to, the requirements of the Arms Export Control Act, 22 U.S.C.2751-2794, including the International Traffic in Arms Regulation (ITAR), 22 C.F.R. 120 et seq.; and the Export Administration Act, 50 U.S.C. app. 2401-2420, including the Export Administration Regulations, 15 C.F.R. 730-774; including the requirement for obtaining any export license or agreement, if applicable. Without limiting the foregoing, SELLER agrees that it will not transfer any export controlled item, data, or services, to include transfer to foreign persons employed by or associated with, or under contract to SELLER or SELLER's lower-tier suppliers, without the authority of an export license, agreement, or applicable exemption or exception.

(b)    SELLER agrees to notify LOCKHEED MARTIN if any deliverable under this Contract is restricted by export control laws or regulations.

(c)    SELLER shall immediately notify the LOCKHEED MARTIN Procurement Representative if SELLER is, or becomes, listed in any Denied Parties List or if SELLER's export privileges are otherwise denied, suspended or revoked in whole or in part by any U.S. Government entity or agency.

(d)   If SELLER is engaged in the business of either exporting or manufacturing (whether exporting or not) defense articles or furnishing defense services, SELLER represents that it is registered with the Office of Defense Trade Controls, as required by the ITAR, and it maintains an effective export/import compliance program in accordance with the ITAR.

(e)   Where SELLER is a signatory under a LOCKHEED MARTIN export license or export agreement (e.g., TAA, MLA), SELLER shall provide prompt notification to the LOCKHEED MARTIN Procurement Representative in the event of changed circumstances including, but not limited to, ineligibility, a violation or potential violation of the ITAR, and the initiation or existence of a U.S. Government investigation, that could affect the SELLER's performance under this Contract.

**(f)   SELLER shall be responsible for all losses, costs, claims, causes of action, damages, liabilities and expense, including attorneys' fees, all expense of litigation and/or settlement, and court costs, arising from any act or omission of SELLER, its officers, employees, agents, suppliers, or subcontractors at any tier, in the performance of any of its obligations under this clause.**

10.   **EXTRAS**
Work shall not be supplied in excess of quantities specified in this Contract.  SELLER shall be liable for handling charges and return shipment costs for any excess quantities.

11.   **FURNISHED PROPERTY**
(a)   LOCKHEED MARTIN may provide to SELLER property owned by either LOCKHEED MARTIN or its customer (Furnished Property). Furnished Property shall be used only for the performance of this Contract.

(b)   Title to Furnished Property shall remain in LOCKHEED MARTIN or its customer. SELLER shall clearly mark (if not so marked) all Furnished Property to show its ownership.

(c)   Except for reasonable wear and tear, SELLER shall be responsible for, and shall promptly notify LOCKHEED MARTIN of, any loss or damage.  Without additional charge, SELLER shall manage, maintain, and preserve Furnished Property in accordance with good commercial practice.

(d)   At LOCKHEED MARTIN's request, and/or upon completion of this Contract, the SELLER shall submit, in an acceptable form, inventory lists of Furnished Property and shall deliver or make such other disposal as may be directed by LOCKHEED MARTIN.

(e)   The Government Property Clause contained in Section II shall apply in lieu of paragraphs (a) through (d) above with respect to Government-furnished property, or property to which the Government may take title under this Contract.

12.   **GRATUITIES/KICKBACKS**
(a)   No gratuities (in the form of entertainment, gifts or otherwise) or kickbacks shall be offered or given by SELLER, to any employee of LOCKHEED MARTIN for the purpose of obtaining or rewarding favorable treatment as a supplier.

(b)   **By accepting this Contract, SELLER certifies and represents that it has not made or solicited and will not make or solicit kickbacks in violation of FAR 52.203-7 or the Anti-Kickback Act of 1986 (41 USC 51-58), both of which are incorporated herein by this specific reference, except that paragraph (c)(1) of FAR 52.203-7 shall not apply.**

13.   **INDEPENDENT CONTRACTOR RELATIONSHIP**
(a)   SELLER is an independent contractor in all its operations and activities hereunder.  The employees used by SELLER to perform Work under this Contract shall be SELLER's employees exclusively without any relation whatsoever to LOCKHEED MARTIN.

(b)   **SELLER shall be responsible for all losses, costs, claims, causes of action, damages, liabilities, and expenses, including attorneys' fees, all expenses of litigation and/or settlement, and court costs, arising from any act or omission of SELLER, its officers, employees, agents, suppliers, or subcontractors at any tier, in the performance of any of its obligations under this Contract.**

14.   **INFORMATION OF LOCKHEED MARTIN**
Information provided by LOCKHEED MARTIN to SELLER remains the property of LOCKHEED MARTIN.  SELLER agrees to comply with the terms of any proprietary information agreement with LOCKHEED MARTIN and to comply with all proprietary information markings and restrictive legends applied by LOCKHEED MARTIN to anything provided hereunder to SELLER. SELLER agrees not to use any LOCKHEED MARTIN provided information for any purpose except to perform this Contract and agrees not to disclose such information to third parties without the prior written consent of LOCKHEED MARTIN.

15.   **INFORMATION OF SELLER**
SELLER shall not provide any proprietary information to LOCKHEED MARTIN without prior execution of a proprietary information agreement by the parties.

16.   **INSURANCE/ENTRY ON LOCKHEED MARTIN PROPERTY**
(a)   In the event that SELLER, its employees, agents, or subcontractors enter the site(s) of LOCKHEED MARTIN or its customers for any reason in connection with this Contract then SELLER and its subcontractors shall procure and maintain for the performance of this Contract worker's compensation, comprehensive general liability, bodily injury and property damage insurance in reasonable amounts, and such other insurance as LOCKHEED MARTIN may require.  In addition, SELLER and its subcontractors shall comply with all site requirements. SELLER shall provide LOCKHEED MARTIN thirty (30) days advance written notice prior to the effective date of any cancellation or change in the term or coverage of any of SELLER's required insurance, provided however such notice shall not relieve SELLER of its obligations to procure and maintain the required insurance.  If requested, SELLER shall send a "Certificate of Insurance" showing SELLER's compliance with these requirements. SELLER shall name LOCKHEED MARTIN as an additional insured for the duration of this Contract.  Insurance maintained pursuant to this clause shall be considered primary as respects the interest of LOCKHEED MARTIN and is not contributory with any insurance which LOCKHEED MARTIN may carry. "Subcontractor" as used in this clause shall include SELLER's subcontractors at any tier.  SELLER's obligations for procuring and maintaining insurance coverages are freestanding and are not affected by any other language in this Contract.

(b)   SELLER shall indemnify and hold harmless LOCKHEED MARTIN, its officers, employees, and agents from any losses, costs, claims, causes of action, damages, liabilities, and expenses, including attorneys' fees, all expenses of litigation and/or settlement, and court costs, by reason of property damage or loss or personal injury to any person caused in whole or in part by the actions or omissions of SELLER, its officers, employees, suppliers, or subcontractors.

17. **INTELLECTUAL PROPERTY INFRINGEMENT**
    (a)   **SELLER warrants that the Work performed or delivered under this Contract will not infringe or otherwise violate the intellectual property rights of any third party in the United States or any foreign country. SELLER agrees to defend, indemnify, and hold harmless LOCKHEED MARTIN and its customers from and against any claims, damages, losses, costs, and expenses, including reasonable attorneys' fees, arising out of any action by a third party that is based upon a claim that the Work performed or delivered under this Contract infringes or otherwise violates the intellectual property rights of any person or entity.**

    (b)   All data, copyrights, reports, and works of authorship developed in performance of this Contract shall be the sole property of LOCKHEED MARTIN, shall be used by SELLER solely in work for LOCKHEED MARTIN. To the extent that any of the deliverable items may not, by operation of law, be works made for hire, SELLER hereby assigns to LOCKHEED MARTIN the ownership of copyright in the deliverable items and LOCKHEED MARTIN shall have the right to obtain and hold in its own name copyrights, registrations, and similar protection which may be available in the deliverable items. SELLER agrees to give LOCKHEED MARTIN or its designees all assistance reasonably required to perfect such rights. SELLER certifies the originality of all deliverable items and states that no portion is protected by any copyright or similar right vested in any third party.

18. **OFFSET CREDIT/COOPERATION**
    This Contract has been entered into in direct support of LOCKHEED MARTIN's international offset programs. All offset benefit credits resulting from this Contract are the sole property of LOCKHEED MARTIN to be applied to the offset program of its choice. SELLER agrees to assist LOCKHEED MARTIN in securing appropriate offset credits from the respective country government authorities.

19. **PACKING AND SHIPMENT**
    (a)   Unless otherwise specified, all Work is to be packed in accordance with good commercial practice.

    (b)   A complete packing list shall be enclosed with all shipments. SELLER shall mark containers or packages with necessary lifting, loading, and shipping information, including the LOCKHEED MARTIN Contract number, item number, dates of shipment, and the names and addresses of consignor and consignee. Bills of lading shall include this Contract number.

    (c)   Unless otherwise specified, delivery shall be FOB Place of Shipment.

20. **PARTS OBSOLESCENCE**
    LOCKHEED MARTIN may desire to place additional orders for Work purchased hereunder. SELLER shall provide LOCKHEED MARTIN with a "Last Time Buy Notice" at least twelve (12) months prior to any action to discontinue any Work purchased under this Contract.

21. **PAYMENTS, TAXES, AND DUTIES**
    (a)   Unless otherwise provided, terms of payment shall be net thirty (30) days from the latest of the following: (i) LOCKHEED MARTIN's receipt of the SELLER's proper invoice; (ii) Scheduled delivery date of the Work; or (iii) Actual delivery of the Work. LOCKHEED MARTIN shall have a right of setoff against payments due or at issue under this Contract or any other contract between the parties.

    (b)   Each payment made shall be subject to reduction to the extent of amounts which are found by LOCKHEED MARTIN not to have been properly payable, and shall also be subject to reduction for overpayments.

    (c)   Payment shall be deemed to have been made as of the date of mailing LOCKHEED MARTIN's payment or electronic funds transfer.

    (d)   Unless otherwise specified, prices include all applicable federal, state, and local taxes, duties, tariffs, and similar fees imposed by any government, all of which shall be listed separately on the invoice.

22. **PRECEDENCE**
    Any inconsistencies in this Contract shall be resolved in accordance with the following descending order of precedence: (i) Face of the Purchase Order and/or Task Order, release document or schedule, (including any continuation sheets), as applicable, including any special provisions; (ii) Any master-type agreement (such as corporate or blanket agreements); (iii) These General Provisions; and (iv) Statement of Work.

23. **PRIORITY RATING**
    If so identified, this Contract is a "rated order" certified for national defense use, and the SELLER shall follow all the requirements of the Defense Priorities and Allocation System Regulation (15 CFR Part 700).

24. **QUALITY CONTROL SYSTEM**
    (a)   SELLER shall provide and maintain a quality control system to an industry recognized Quality Standard and in compliance with any other specific quality requirements identified in this Contract.

    (b)   Records of all quality control inspection work by SELLER shall be kept complete and available to LOCKHEED MARTIN and its customers.

25. **RELEASE OF INFORMATION**
    Except as required by law, no public release of any information, or confirmation or denial of same, with respect to this Contract or the subject matter hereof, will be made by SELLER without the prior written approval of LOCKHEED MARTIN.

26. **SEVERABILITY**
    Each paragraph and provision of this Contract is severable, and if one or more paragraphs or provisions are declared invalid, the remaining paragraphs and provisions of this Contract will remain in full force and effect.

27. **SURVIVABILITY**
    (a)   If this Contract expires, is completed, or is terminated, SELLER shall not be relieved of those obligations in the following provisions:

Applicable Laws
Electronic Contracting
Export Control
Independent Contractor Relationship
Information of Lockheed Martin
Insurance/Entry or Lockheed Martin Property
Intellectual Property
Release of Information
Warranty

   (b)   Those U. S. Government flowdown provisions that by their nature should survive.

28.   **TIMELY PERFORMANCE**
   (a)   SELLER's timely performance is a critical element of this Contract.

   (b)   Unless advance shipment has been authorized in writing by LOCKHEED MARTIN, LOCKHEED MARTIN may store at SELLER's expense, or return, shipping charges collect, all Work received in advance of the scheduled delivery date.

   (c)   If SELLER becomes aware of difficulty in performing the Work, SELLER shall timely notify LOCKHEED MARTIN, in writing, giving pertinent details. This notification shall not change any delivery schedule.

   (d)   In the event of a termination for convenience or change, no claim will be allowed for any manufacture or procurement in advance of SELLER's normal flow time unless there has been prior written consent by LOCKHEED MARTIN.

29.   **WAIVERS, APPROVALS, AND REMEDIES**
   (a)   Failure by LOCKHEED MARTIN to enforce any provisions of this Contract shall not be construed as a waiver of the requirements of such provisions, or as a waiver of the right of LOCKHEED MARTIN thereafter to enforce each such provision.

   (b)   LOCKHEED MARTIN's approval of documents shall not relieve SELLER of its obligation to comply with the requirements of this Contract.

   (c)   The rights and remedies of LOCKHEED MARTIN in this Contract are in addition to any other rights and remedies provided by law or in equity.

30.   **WARRANTY**
SELLER warrants that all Work furnished pursuant to this Contract shall strictly conform to applicable specifications, drawings, samples, descriptions, and other requirements of this Contract and be free from defects in design, material, and workmanship. This warranty shall begin upon final acceptance and extend for a period of one (1) year. If any non-conforming Work is identified within the warranty period, SELLER, at LOCKHEED MARTIN's option, shall promptly repair, replace, or reperform the Work. Transportation of replacement Work and return of non-conforming Work shall be at SELLER's expense. If repair, replacement, or reperformance of Work is not timely, LOCKHEED MARTIN may elect to return, reperform, repair, replace, or reprocure the non-conforming Work at SELLER's expense. All warranties shall run to LOCKHEED MARTIN and its customers.

## SECTION II: FAR FLOWDOWN PROVISIONS

A.   **INCORPORATION OF FAR CLAUSES**

The Federal Acquisition Regulation (FAR) clauses referenced below are incorporated herein by reference, with the same force and effect as if they were given in full text, and are applicable, including any notes following the clause citation, to this Contract. If the date or substance of any of the clauses listed below is different from the date or substance of the clause actually incorporated in the Prime Contract referenced by number herein, the date or substance of the clause incorporated by said Prime Contract shall apply instead. The Contracts Disputes Act shall have no application to this Contract. Any reference to a "Disputes" clause shall mean the "Disputes" clause of this Contract.

B.   **GOVERNMENT SUBCONTRACT**

This Contract is entered into by the parties in support of a U.S. Government Contract.

As used in the FAR clauses referenced below and otherwise in this Contract:

1.   "Commercial Item" means a commercial item as defined in FAR 2.101.

2.   "Contract" means this Contract.

3.   "Contracting Officer" shall mean the U.S. Government Contracting Officer for LOCKHEED MARTIN's government prime contract under which this Contract is entered.

4.   "CONTRACTOR" means the SELLER, as defined in this CORPDOC 3, acting as the immediate (first-tier) subcontractor to LOCKHEED MARTIN.

5.   "Prime Contract" means the contract between LOCKHEED MARTIN and the U.S. Government or between LOCKHEED MARTIN and its higher-tier contractor who has a contract with the U.S. Government.

6.   "Subcontract" means any contract placed by the CONTRACTOR or lower-tier subcontractors under this Contract.

C.   **NOTES**

1. Substitute "LOCKHEED MARTIN" for "Government" or "United States" as applicable throughout this clause.

2. Substitute "LOCKHEED MARTIN Procurement Representative" for "Contracting Officer", "Administrative Contracting Officer", and "ACO" throughout this clause.

3. Insert "and LOCKHEED MARTIN" after "Government" or "Contracting Officer", as appropriate, throughout this clause.

4. Insert "or LOCKHEED MARTIN" after "Government" throughout this clause.

5. Communication/notification required under this clause from/to the CONTRACTOR to/from the Contracting Officer shall be through LOCKHEED MARTIN.

D.  **AMENDMENTS REQUIRED BY PRIME CONTRACT**

CONTRACTOR agrees that upon the request of LOCKHEED MARTIN it will negotiate in good faith with LOCKHEED MARTIN relative to amendments to this Contract to incorporate additional provisions herein or to change provisions hereof, as LOCKHEED MARTIN may reasonably deem necessary in order to comply with the provisions of the applicable Prime Contract or with the provisions of amendments to such Prime Contract. If any such amendment to this Contract causes an increase or decrease in the cost of, or the time required for, performance of any part of the work under this Contract, an equitable adjustment shall be made pursuant to the "Changes" clause of this Contract.

E.  **PRESERVATION OF THE GOVERNMENT'S RIGHTS**

If LOCKHEED MARTIN furnishes designs, drawings, special tooling, equipment, engineering data, or other technical or proprietary information (Furnished Items) to which the U. S. Government owns or has the right to authorize the use of, nothing herein shall be construed to mean that LOCKHEED MARTIN, acting on its own behalf, may modify or limit any rights the Government may have to authorize the CONTRACTOR's use of such Furnished Items in support of other U. S. Government prime contracts.

F.  **FAR FLOWDOWN CLAUSES**

REFERENCE    TITLE

1.  **The following FAR clauses apply to this Contract:**

(a) 52.211-5    MATERIAL REQUIREMENTS (AUG 2000) (Note 2 applies)

(b) 52.215-20    REQUIREMENTS FOR COST OR PRICING DATA OR INFORMATION OTHER THAN COST OR PRICING DATA (OCT 1997) (Note 2 applies.)

(c) 52.215-21    REQUIREMENTS FOR COST OR PRICING DATA OR INFORMATION OTHER THAN COST OR PRICING DATA - MODIFICATIONS (OCT 1997) (Note 2 applies.)

(d) 52.219-8    UTILIZATION OF SMALL BUSINESS CONCERNS (OCT 2000)

(e) 52.222-21    PROHIBITION OF SEGREGATED FACILITIES (FEB 1999)

(f) 52.222-26    EQUAL OPPORTUNITY (APR 2002) (Only subparagraphs (b)(1)-(11) applies.)

(g) 52.225-13    RESTRICTIONS ON CERTAIN FOREIGN PURCHASES (FEB 2000)

(h) 52.227-14    RIGHTS IN DATA - GENERAL (JUN 1987)

(i) 52.234-1    INDUSTRIAL RESOURCES DEVELOPED UNDER DEFENSE PRODUCTION ACT TITLE III (DEC 1994) (Note 2 applies.)

(j) 52.242-13    BANKRUPTCY (JUL 1995) (Note 2 applies.)

(k) 52.242-15    STOP-WORK ORDER (AUG 1989) (Notes 1 and 2 apply.)

(l) 52.243-1    CHANGES - FIXED PRICE (AUG 1987) (Notes 1 and 2 apply.)

(m) 52.244-6    SUBCONTRACTS FOR COMMERCIAL ITEMS AND COMMERCIAL COMPONENTS (DEC 2001)

(n) 52.246-2    INSPECTION OF SUPPLIES - FIXED PRICE (AUG 1996) (Note 2 applies. Note 3 applies, except in paragraphs (f), (j), and (l) where Note 1 applies.)

(o) 52.246-4    INSPECTION OF SERVICES - FIXED PRICE (AUG 1996) (Note 2 applies. Note 3 applies, except in paragraphs (e) and (f) where Note 1 applies.)

(p) 52.247-64    PREFERENCE FOR PRIVATELY OWNED U.S. FLAG COMMERCIAL VESSELS (JUN 2000) (Note 2 applies.)

(q) 52.249-2    TERMINATION FOR CONVENIENCE OF THE GOVERNMENT (FIXED-PRICE) (SEP 1996) (Notes 1 and 2 apply. In paragraph (n) "Government" means "LOCKHEED MARTIN and the Government" and "Contracting Officer" means "LOCKHEED MARTIN or the Contracting Officer." In paragraph (c) "120 days" is changed to "60 days." In paragraph (d) "15 days" is changed to "30 days," and "45 days" is changed to "60 days." In paragraph (e) "1 year" is changed to "6 months." Paragraph (j) is deleted. In paragraph (l) "90 days" is changed to "45 days." Settlements and payments under this clause may be subject to the approval of the Contracting Officer.)

(r) 52.249-8    DEFAULT (FIXED PRICE SUPPLY AND SERVICE) (APR 1984) (Notes 1 and 2 apply, except Note 1 is not applicable to paragraph (e). Timely performance is a material element of this Contract.)

2. **The following FAR clauses apply to this Contract if the value of this Contract equals or exceeds $10,000:**

   (a) 52.222-36  AFFIRMATIVE ACTION FOR WORKERS WITH DISABILITIES (JUN 1998)

3. **The following FAR clauses apply to this Contract if the value of this Contract equals or exceeds $25,000:**

   (a) 52.222-35  EQUAL OPPORTUNITY FOR SPECIAL DISABLED VETERANS, VETERANS OF THE VIETNAM ERA, AND OTHER ELIGIBLE VETERANS (DEC 2001)

   (b) 52.222-37  EMPLOYMENT REPORTS ON SPECIAL DISABLED VETERANS, VETERANS OF THE VIETNAM ERA, AND OTHER ELIGIBLE VETERANS (DEC 2001)

4. **The following FAR clauses apply to this Contract if the value of this Contract equals or exceeds $100,000:**

   (a) 52.203-6  RESTRICTIONS ON SUBCONTRACTOR SALES TO THE GOVERNMENT (JUL 1995)

   (b) 52.203-12  LIMITATION ON PAYMENTS TO INFLUENCE CERTAIN FEDERAL TRANSACTIONS (JUN 1997) (Note 5 applies.)

   (c) 52.215-2  AUDIT AND RECORDS-NEGOTIATION (JUN 1999) (Applicable if (1) CONTRACTOR is required to furnish cost or pricing data, or (2) the Contract requires CONTRACTOR to furnish cost, funding, or performance reports. Note 3 applies.)

   (d) 52.215-14  INTEGRITY OF UNIT PRICES (OCT 1997) (Delete paragraph (b) of the clause.)

   (e) 52.222-4  CONTRACT WORK HOURS AND SAFETY STANDARDS ACT - OVERTIME COMPENSATION (SEP 2000)

   (f) 52.223-14  TOXIC CHEMICAL RELEASE REPORTING (OCT 2000) (Note 2 applies. Delete subparagraph (e).)

   (g) 52.227-1  AUTHORIZATION AND CONSENT (JUL 1995) (Applicable only if the Prime Contract contains this clause.)

   (h) 52.227-2  NOTICE AND ASSISTANCE REGARDING PATENT AND COPYRIGHT INFRINGEMENT (AUG 1996) (Notes 2 and 4 apply.)

   (i) 52.248-1  VALUE ENGINEERING (FEB 2000) (Note 1 applies, except in subparagraphs (c)(5) and (m), where Note 3 applies.)

5. **The following FAR clauses apply to this Contract if the value of this Contract equals or exceeds $500,000:**

   a) 52.219-9  SMALL BUSINESS SUBCONTRACTING PLAN (JAN 2002) (Applicable if the CONTRACTOR is not a small business. Note 2 applies to subparagraph (c) only. The CONTRACTOR's subcontracting plan is incorporated herein by reference.)

6. **The following FAR clauses apply to this Contract if the value of this Contract equals or exceeds $550,000:**

   (a) 52.215-12  SUBCONTRACTOR COST OR PRICING DATA (OCT 1997) (Applicable if not otherwise exempt under FAR 15.403.)

   (b) 52.215-13  SUBCONTRACTOR COST OR PRICING DATA - MODIFICATIONS (OCT 1997) (Applicable for modifications if not otherwise exempt under FAR 15.403.)

7. **The following FAR clauses apply to this Contract as indicated:**

   (a) 52.204-2  SECURITY REQUIREMENTS (AUG 1996) (Applicable if the Work requires access to classified information. )

   (b) 52.215-10  PRICE REDUCTION FOR DEFECTIVE COST OR PRICING DATA (OCT 1997) (Applicable if submission of cost or pricing data is required. Notes 2 and 4 apply. Rights and obligations under this clause shall survive completion of the Work and final payment under this Contract.)

   (c) 52.215-11  PRICE REDUCTION FOR DEFECTIVE COST OR PRICING DATA - MODIFICATIONS (OCT 1997) (Applicable if submission of cost or pricing data is required for modifications. Notes 2 and 4 apply. Rights and obligations under this clause shall survive completion of the Work and final payment under this Contract.)

   (d) 52.215-15  PENSION ADJUSTMENTS AND ASSET REVERSIONS (DEC 1998) (Applicable if this Contract meets the applicability requirements of FAR 15.408(g). Note 5 applies.)

   (e) 52.215-16  FACILITIES CAPITAL COST OF MONEY (OCT 1997) (Applicable only if this Contract is subject to the Cost Principles at FAR Subpart 31.2 and the CONTRACTOR proposed facilities capital cost of money in its offer.)

   (f) 52.215-17  WAIVER OF FACILITIES CAPITAL COST OF MONEY (OCT 1997) (Applicable only if this Contract is subject to the Cost Principles at FAR Subpart 31.2 and the CONTRACTOR did not propose facilities capital cost of money in its offer.)

   (g) 52.215-18  REVERSION OR ADJUSTMENT OF PLANS FOR POST-RETIREMENT BENEFITS (PRB) OTHER THAN PENSIONS (OCT 1997) (Applicable if this Contract meets the applicability requirements of FAR 15.408(j). Note 5 applies.)

   (h) 52.215-19  NOTIFICATION OF OWNERSHIP CHANGES (OCT 1997) (Applicable if this Contract meets the applicability requirements of FAR 15.408(k). Note 2 applies.)

   (i) 52.223-3  HAZARDOUS MATERIAL IDENTIFICATION AND MATERIAL SAFETY DATA (JAN 1997) (Applicable if the Contract involves hazardous material. Notes 2 and 3 applies.)

7

CORPDOC 3 (7/02)

(j) 52.223-7   NOTICE OF RADIOACTIVE MATERIALS (JAN 1997) (Applicable to Work containing covered radioactive material. In the blank insert "30". Notes 1 and 2 apply.)

(k) 52.223-11   OZONE-DEPLETING SUBSTANCES (MAR 2001) (Applicable if the Work was manufactured with or contains ozone-depleting substances.)

(l) 52.225-1   BUY AMERICAN ACT—BALANCE OF PAYMENTS PROGRAM—SUPPLIES (FEB 2002) (Applicable if this Contract requires furnishing of Work containing other than domestic components.)

(m) 52.225-5   TRADE AGREEMENTS (FEB 2002) (Applicable if the Work contains other than domestic components.)

(n) 52.225-8   DUTY FREE ENTRY (FEB 2000) (Applicable if supplies will be imported into the Customs Territory of the United States. In subparagraph (b)(1) the notice provision shall be 20 days. Notes 3 and 5 apply.)

(o) 52.227-9   REFUND OF ROYALTIES (APR 1984)  (Applicable when reported royalty exceeds $250. Notes 1 and 2 apply.)

(p) 52.227-10   FILING OF PATENT APPLICATIONS-CLASSIFIED SUBJECT MATTER (APR 1984) (Applicable if the Work or any patent application may cover classified subject matter.)

(q) 52.227-11   PATENT RIGHTS-RETENTION BY THE CONTRACTOR (SHORT FORM) (JUN 1997) (Applicable if this Contract is for experimental, developmental, or research Work and CONTRACTOR is a small business concern or domestic nonprofit organization. Reports required by this clause shall be filed with the agency identified in this Contract. If no agency is identified, contact the LOCKHEED MARTIN Procurement Representative identified on the face of this Contract.)

(r) 52.227-12   PATENT RIGHTS-RETENTION BY THE CONTRACTOR (LONG FORM)  (JAN 1997) (Applicable if this Contract is for experimental, developmental, or research Work and CONTRACTOR is a large business concern. Reports required by this clause shall be filed with the agency identified in this Contract. If no agency is identified, contact the LOCKHEED MARTIN Procurement Representative identified on the face of this Contract.)

(s) 52.228-5   INSURANCE – WORK ON A GOVERNMENT INSTALLATION (JAN 1997) (Applicable if this Contract involves Work on a Government installation. Notes 2 and 4 apply.)

(t) 52.230-2   COST ACCOUNTING STANDARDS (APR 1998) (When referenced in this Contract, full CAS coverage applies. In subparagraph (a)(4)(ii) and (a)(5), Note 1 applies. Delete paragraph (b) of the clause.)

(u) 52.230-3   DISCLOSURE AND CONSISTENCY OF COST ACCOUNTING PRACTICES (APR 1998) (When referenced in this Contract, modified CAS coverage applies. In subparagraphs (a)(3)(ii) and (a)(4), Note 1 applies. Delete paragraph (b) of the clause.)

(v) 52.230-6   ADMINISTRATION OF COST ACCOUNTING STANDARDS (NOV 1999) (Applicable if FAR 52.230-2 or FAR 52.230-3 applies.)

(w) 52.233-3   PROTEST AFTER AWARD (AUG 1996) (In the event LOCKHEED MARTIN's customer has directed LOCKHEED MARTIN to stop performance of the work under the Prime Contract under which this Contract is issued pursuant to FAR 33.1, LOCKHEED MARTIN may, by written order to CONTRACTOR, direct CONTRACTOR to stop performance of the Work called for by this Contract, The following: "30 days" means "20 days" in paragraph (b)(2). Note 1 applies except the first time "Government" appears in paragraph (f). In paragraph (f) add after "33.104(h)(1)" "and recovers those costs from LOCKHEED MARTIN". Note 2 applies.)

(x) 52.237-2   PROTECTION OF GOVERNMENT BUILDINGS, EQUIPMENT AND VEGETATION (APR 1984)(Applicable if Work is performed on a Government installation.  Note 2 applies.)

(y) 52.243-6   CHANGE ORDER ACCOUNTING (APR 1984)  (Applicable only if Prime Contract requires Change Order Accounting. See Note 2. .)

(z) 52.245-2   GOVERNMENT PROPERTY (FIXED PRICE CONTRACTS) (DEC 1989) ( Applicable if Government property is furnished in the performance of this Contract. Note 1 applies, except in the phrases "Government property", "Government-furnished property", and in references to title to property. Note 2 applies.  The following is added as paragraph (m): "Contractor shall provide to LOCKHEED MARTIN immediate notice of any disapproval, withdrawal of approval, or non-acceptance by the Government of its property control system.")

(aa) 52.245-17   SPECIAL TOOLING (DEC 1989) (Applicable if this Contract involves the use of special tooling.  Note 2 applies.)

(bb) 52.245-18   SPECIAL TEST EQUIPMENT (FEB 1993)  (Applicable if this Contract involves the acquisition or fabrication of Special Test Equipment. Notice to acquire shall be through LOCKHEED MARTIN. Notes 4 and 5 applies.)

(cc) 52.247-63   PREFERENCE FOR U.S.-FLAG AIR CARRIERS (JAN 1997) (Applicable if this Contract involves international air transportation.)

G.  **CERTIFICATIONS AND REPRESENTATIONS**

(1)  **This clause contains certifications and representations that are material representations of fact upon which LOCKHEED MARTIN will rely in making awards to CONTRACTOR.  By submitting its written offer, or providing oral offers/quotations at the request of LOCKHEED MARTIN, or accepting any Contract, CONTRACTOR certifies to the representations and certifications as set forth below in this clause.  These certifications shall apply whenever these terms and conditions are incorporated by reference in any Contract, agreement, other contractual document, or any quotation, request for quotation (oral or written), request for proposal or solicitation (oral or written), issued by LOCKHEED MARTIN. CONTRACTOR shall immediately notify LOCKHEED MARTIN of any change of status with regard to these certifications and representations.**

(2)  The following clauses of the Federal Acquisition Regulation (FAR) are incorporated herein by reference, with the same force and effect as if they were given in full text, and are applicable to any order, agreement, or subcontract.  In each clause incorporated below, substitute "LOCKHEED MARTIN" for "Government" and "Contracting Agency" and "LOCKHEED MARTIN Procurement Representative" for "Contracting Officer" throughout.

(a)  **FAR 52.203-11 Certification and Disclosure Regarding Payments to Influence Certain Federal Transactions** (Applicable to solicitations and contracts exceeding $100,000)

(1)  The definitions and prohibitions contained in the clause at FAR 52.203-12, Limitation on Payments to Influence Certain Federal Transactions are hereby incorporated by reference in paragraph (b) of this certification.

(2)  CONTRACTOR certifies that to the best of its knowledge and belief that on and after December 23, 1989--

(a)  No Federal appropriated funds have been paid or will be paid to any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress on his or her behalf in connection with the awarding of any Federal contract, the making of any Federal grant, the making of any Federal loan, the entering into of any cooperative agreement, and the extension, continuation, renewal, amendment or modification of any Federal contract, grant, loan, or cooperative agreement;

(b)  If any funds other than Federal appropriated funds (including profit or fee received under a covered Federal transaction) have been paid, or will be paid, to any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress on his or her behalf in connection with a solicitation or order, the offeror shall complete and submit, with its offer, OMB standard form LLL, Disclosure of Lobbying Activities, in accordance with its instructions, and

(c)  CONTRACTOR will include the language of this certification in all subcontracts at any tier and require that all recipients of subcontract awards in excess of $100,000 shall certify and disclose accordingly.

(3)  Submission of this certification and disclosure is a prerequisite for making or entering into a contract as imposed by section 1352, title 31, United States Code.  Any person who makes an expenditure prohibited under this provision or who fails to file or amend the disclosure form to be filed or amended by this provision, shall be subject to a civil penalty of not less than $10,000, and not more than $100,000, for each such failure.

(b)  **FAR 52.209-5 Certification Regarding Debarment, Suspension, Proposed Debarment, and Other Responsibility Matters.**

(1)  CONTRACTOR certifies that, to the best of its knowledge and belief, that CONTRACTOR and/or any of its Principals, (as defined in FAR 52.209-5,) are not presently debarred, suspended, proposed for debarment, or declared ineligible for the award of contracts by any Federal agency.

(2)  CONTRACTOR shall provide immediate written notice to LOCKHEED MARTIN if, any time prior to award of any contract, it learns that its certification was erroneous when submitted or has become erroneous by reason of changed circumstances.

(c)  **FAR 52.222-22 Previous Contracts and Compliance Reports.**

CONTRACTOR represents that if CONTRACTOR has participated in a previous contract or subcontract subject to the Equal Opportunity clause (FAR 52.222-26) (i) CONTRACTOR has filed all required compliance reports and (ii) that representations indicating submission of required compliance reports, signed by proposed subcontractors, will be obtained before subcontract awards.

(d)  **FAR 52.222-25 Affirmative Action Compliance.**

CONTRACTOR represents (1) that CONTRACTOR has developed and has on file at each establishment, affirmative action programs required by the rules and regulations of the Secretary of Labor (41 CFR 60-1 and 60-2), or (2) that in the event such a program does not presently exist, CONTRACTOR will develop and place in operation such a written Affirmative Action Compliance Program within 120 days from the award of this Contract.

(e)  **FAR 52.223-13 Certification Of Toxic Chemical Release Reporting** (Applicable to competitive solicitations/contracts which exceed $100,000)

(1)  Submission of this certification is a prerequisite for making or entering into this contract imposed by Executive Order 12969, August 8, 1995.

(2)  CONTRACTOR certifies that—

(a)  As the owner or operator of facilities that will be used in the performance of this contract that are subject to the filing and reporting requirements described in section 313 of the Emergency Planning and Community Right-to-Know Act of 1986 (EPCRA) (42 U.S.C. 11023) and section 6607 of the Pollution Prevention Act of 1990 (PPA) (42 U.S.C. 13106), CONTRACTOR will file and continue to file for such facilities for the life of the contract the Toxic Chemical Release Inventory Form (Form R) as described in sections 313(a) and (g) of EPCRA and section 6607 of PPA; or

(b)  None of its owned or operated facilities to be used in the performance of this contract is subject to the Form R filing and reporting requirements because each such facility is exempt for at least one of the following reasons:

(i)  The facility does not manufacture, process or otherwise use any toxic chemicals listed under section 313(c) of EPCRA, 42 U.S.C. 11023(c);

(ii)     The facility does not have 10 or more full-time employees as specified in section 313(b)(1)(A) of EPCRA, 42 U.S.C. 11023(b)(1)(A);

(iii)     The facility does not meet the reporting thresholds of toxic chemicals established under section 313(f) of EPCRA, 42 U.S.C. 11023(f) (including the alternate thresholds at 40 CFR 372.27, provided an appropriate certification form has been filed with EPA);

(iv)     The facility does not fall within Standard Industrial Classification Code (SIC) major groups 20 through 39 or their corresponding North American Industry Classification System (NAICS) sectors 31 through 33; or

(v)     The facility is not located within any State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, Guam, American Samoa, the United States Virgin Islands, the Northern Mariana Islands, or any other territory or possession over which the United States has jurisdiction.

10

# Purchase Order 850681275

Amendment Number: 0

Lockheed Martin Business Unit: Missiles & Fire Control - CPS

Order Date: 02/19/2004

Document Type: Purchase Order

Status: Accepted

## Buyer

LOCKHEED MARTIN CORPORATION
LOCKHEED MARTIN SOUTHEAST
MATERIAL ACQUISITION CENTER
5600 SAND LAKE ROAD, MP 141
ORLANDO FL 32819

Order Contact: ARAYA, MICHELLE
Telephone: 4073561412   Badge: 5E43
Email: michelle.araya@lmco.com
Fax: 4073568718

## Seller

ID: II2803
Corp ID: LM0077981
DELPHI CONNECTION
17150 VON KARMAN AVENUE
IRVINE CA 92614

Confirmed With: 8DPD039
Confirmed Date: 02/19/2004

## Bill To

ID: 0571572578
LOCKHEED MARTIN CORPORATION
MISSILES AND FIRE CONTROL-ORL
PHONE (407) 356-5141
5600 SAND LAKE ROAD, ACCOUNTS PAYABLE, MP 265
ORLANDO FL 328198907

## Ship To

ID: 057157257.
CAUTION:
THIS PO MAY CONTAIN MULTIPLE
ITEMS WITH DIFFERING SHIP-TO
ADDRESSES. SEE INDIVIDUAL, ITEMS FOR SHIP-TO
INFORMATION

## FOB

## Terms of Sale

Type: Discount Not Applicable
Basis: Invoice Receipt Date
Net Days: 30

*This transmittal is signed electronically by the procurement representative or buyer identified;*
*Upon acknowledgement by seller, this transmittal is signed electronically by Seller authorized representative;*
*written signature not required if signed electronically.*

Lockheed Martin
Authorized Procurement Representative
*Electronically signed by:*

ARAYA, MICHELLE                          Date 02/19/2004

Accepted
Seller Authorized Representative
*Electronically signed by:*

Karen May                                Date 02/19/2004

# Purchase Order 850681275

Amendment Number: 0

Lockheed Martin Business Unit: Missiles & Fire Control - CPS

Order Date: 02/19/2004
Document Type: Purchase Order
Status: Accepted

## Carrier

Routing Sequence: Origin/Delivery Carrier (Any Mode)
Routing: SEE EACH LINE ITEM FOR ROUTING

## Order Details

Business System: 8146
Transmittal Date: 02/19/2004
Transmittal Time: 1328
Document Purpose: Original
Purchase Order Type: Release or Delivery Order
Release Number: 8DPD039
Supplier Ack Date: 02/19/2004
Supplier Representative: Karen May
Contract Type: Firm Fixed Price

## Notes

This Purchase Order and attachment(s), if any, is being transmitted electronically and executed by electronic signature in lieu of a hard copy
Purchase Order/release and is the only document that the Seller will receive. By receipt and acknowledgment of this Purchase Order, or by
performance, Seller agrees that this electronic Purchase Order shall have the same force and effect as if executed and sent in hard copy.
Both parties agree that the validity of this Purchase Order shall not be contested on the basis that this Purchase Order contains an electronic
signature. Seller certifies that those representations and certification contained in the referenced terms and conditions are current and
accurate.

Letters & Notes: PO HEADER TEXT

```
THIS PO IS IN ACCORDANCE WITH AGREEMENT 8DPD039                        20040219

THIS IS A RATED CONTRACT CERTIFIED FOR NATIONAL DEFENSE.  THE
CONTRACTOR IS REQUIRED TO FOLLOW ALL PROVISIONS OF THE DEFENSE
PRIORITIES AND ALLOCATIONS SYSTEM REGULATION (15 CFR 700).  THE
RATING(S) ON THIS CONTRACT IS/ARE AS SPECIFIED BELOW.

ITEM      QUANTITY       DPAS   PRIME CONTRACT

0001        117.0000     DOA2   LMMTI-99-0086-EM01
0001         48.0000     DOA2   LMMTI-99-0086-EM01(394L)

THIS IS A RELEASE AGAISNT AGREEMENT 8DPD039 ALL TERMS AND
CONDITION NEGOTIATED IN THSI AGREEMENT APPLY TO THIS
PROCUREMENT
OUR PO# MUST APPEAR ON ALL CORRESPONDENCE, PACKAGES,
AND SHIPPING DOCUMENTS.

.
LOCKHEED MARTIN CORPORATION'S POLICY IS IN FULL COMPLIANCE
WITH ANTI-KICKBACK PROCEDURES (FAR 52.203.7). TO REPORT A
SUSPECTED VIOLATION CALL 1-800-LM-ETHIC (1-800-563-8442).

ACCEPTANCE IS HEREBY GRANTED PER THE TERMS AND CONDITIONS
OF THIS PURCHASE ORDER. SIGN AND RETURN COPY TO THE BUYER
WHEN PO EXCEEDS $100,000.

LOCKHEED MARTIN IS COMMITTED TO E-COMMERCE AND INVITES OUR
SUPPLIERS TO VISIT OUR PROCUREMENT WEB PAGE FOR GENERAL PO
INFORMATION & PAPERLESS INITIATIVES (USE LOWER CASE LETTERS)
HTTP://WWW.LOCKHEEDMARTIN.COM/SUPPLIERNET
.
```

# Purchase Order 850681275

Amendment Number: 0

Lockheed Martin Business Unit: Missiles & Fire Control - CPS

Order Date: 02/19/2004
Document Type: Purchase Order
Status: Accepted

| Line | Item | Quantity | Unit | Price | Price Unit | Currency | Eng Chg | Item Total |
|------|------|----------|------|-------|------------|----------|---------|------------|
| 0001 | 13587576 | 165 | Each | $475.00 | Price per Each | | | $78,375.00 |

## Description

Part Number Description: CAB AY PRINT FLEX GI
Drawing Revision Number: --/001

## Schedule

Quantity: 165, UM: EA, Required Date (Date Due - Contract): 01/07/2005

## Item Ship To

ID: 0571572578S11
LOCKHEED MARTIN CORPORATION
OCALA FACILITY
MISSILES AND FIRE CONTROL-ORL
498 OAK ROAD
OCALA FL 34472

## Condition of Sale

No Substitution Allowed
Manufacturer
SEE TEXT FOR APPROVED SUPPLIER/MANUFACTURER

## Fob

Payment Method: Collect
FOB (Transportation): Origin (Shipping Point)

## Carrier

Routing Sequence: Origin/Delivery Carrier (Any Mode)
Transportation Method/Type: Motor
Routing: SP 401-X

## Tax

Tax ID Number: SEE TEXT
Exemption Status: 3 Exempt (For Resale)

## Notes

Letters & Notes: PO LINE ITEM TEXT

```
APPROVED SUPPLIER/MANUFACTURER:
DELPHI CONNECTION SYSTEMS
IRVINE                     CA92614
SOURCE INSPECTION REQUIREMENTS:  LMC SI REQ'D - GROUP2
     THE FOLLOWING CLAUSES APPLY TO THIS LINE ITEM (SEE LEGEND):
008673883  011318566  011318567 011318568 TCR808    TCRB58     TCRC01     TCRC04
TCRC23    TCRC25    TCRC28    TCRE12   TCRE22    TQ02       TSPPWA     U8BCODEPO
U8PSP401  T00084
              LEGEND TO TEXT OF INVOKED CLAUSES
 011318568 **   DIACS APPROVED MANUFACTURERS FROM 88A SCREEN **
           01  VENDOR: 053669  PACKARD-HUGHES

                          VPN: 13587576
 011318567 CAB AY PRINT FLEX GIMBAL
 011318566 PROGRAM CODE IS 8AJ
 008673883 STORAGE CONDITIONS:  12 MONTHS FROM DATE OF SHIPMENT AT
           60-87 DEG F.
 U8PSP401  *********   SPECIAL PROVISION 401   *********
           ALL CLAUSES OF THIS SPECIAL PROVISION ARE INCORPORATED
           BY REFERENCE AND SHALL APPLY AS IF INDIVIDUALLY CITED
           HEREIN.
           ADDITIONAL INSTRUCTIONS ARE AVAILABLE AT:
           WWW.LOCKHEEDMARTIN.COM/SUPPLIERNET (LOWER CASE)
           ++++++++++++++++++++++++++++++++++++++++++++++++++++++
           UNLESS OTHERWISE INDICATED, F.O.B. ORIGIN/SHIPPING POINT,
           FREIGHT COLLECT, USING DESIGNATED SURFACE TRANSPORTATION
           SHALL APPLY TO THIS P.O.
```

# Purchase Order 850681275

Amendment Number: 0

Lockheed Martin Business Unit: Missiles & Fire Control - CPS

Order Date: 02/19/2004

Document Type: Purchase Order

Status: Accepted

---

|  |  |
|---|---|
|  | ALL SHIPPING PIECES, PACKING LIST, BILLS OF LADING AND FREIGHT BILLS MUST BE MARKED WITH THE LOCKHEED MARTIN P.O. NUMBER...FAILURE TO COMPLY WITH THESE INSTRUCTIONS WILL NOT OBLIGATE LOCKHEED MARTIN TO REIMBURSE SELLER FOR TRANSPORTATION OR FREIGHT COSTS AND COULD RESULT IN SELLER BEING BILLED FOR THE SHIPPING COSTS IF AIR SHIPMENT HAS BEEN AUTHORIZED BY LOCKHEED MARTIN, FAILURE TO MARK THE FREIGHT BILL WITH THE LOCKHEED MARTIN P.O., WILL NOT OBLIGATE LOCKHEED MARTIN TO REIMBURSE THE SELLER FOR TRANSPORTATION OR FREIGHT COSTS, AND COULD RESULT IN THE SELLER BEING BILLED FOR THE SHIPPING COSTS. |
| U8BCODEPO | LOCKHEED MARTIN CORPORATION, IN AN EFFORT TO STREAMLINE THE RECEIVING/PAYMENT PROCESS, HAS IMPLEMENTED THE ABILITY TO PROCESS RECEIPTS THROUGH THE USE OF BAR-CODING.  BY ACCEPTANCE OF THIS PURCHASE ORDER, YOU AGREE TO BAR-CODE YOUR SHIPMENTS TO LOCKHEED MARTIN IN ACCORDANCE WITH THE 'LOCKHEED MARTIN SOURCING AND RECEIVING BAR-CODE SHIPPING LABEL INSTRUCTIONS' AVAILABLE FOR REVIEW ON THE WORLD WIDE WEB AT: HTTPS://EMBASTION.EXTERNAL.LMCO.COM/BAR-CODING/ THIS SITE ALSO PROVIDES A FREE, EASY TO USE TOOL FOR PRODUCING BAR CODE LABELS RIGHT FROM YOUR P.C. ADDRESS ANY QUESTIONS OR CONCERNS VIA EMAIL TO: BRUCE.MALEC@LMCO.COM   OR   IRENE.YOUNG@LMCO.COM |
| T00084 | LOCKHEED MARTIN MISSILES & FIRE CONTROL HAS OBTAINED A DIRECT PAYMENT CERTIFICATE FROM THE STATE OF FLORIDA.  THIS CERTIFICATE PERMITS LOCKHEED MARTIN MISSILES & FIRE CONTROL TO PURCHASE TANGIBLE PERSONAL PROPERTY WITHOUT THE PAYMENT OF FLORIDA SALES AND USE TAX TO THE SUPPLIER OF SUCH PROPERTY. LOCKHEED MARTIN MISSILES & FIRE CONTROL HAS BEEN AUTHORIZED TO SELF-ACCRUE AND REMIT THE USE TAX DIRECTLY TO THE STATE OF FLORIDA. IF YOU DO NOT HAVE A COPY OF OUR CERTIFICATE PLEASE CALL (407) 356-3857. LOCKHEED MARTIN MISSILES & FIRE CONTROL IS COMMITTED TO OPERATING ITS FACILITIES IN AN ENVIRONMENTALLY RESPONSIBLE MANNER ACCORDING TO ISO 14001 STANDARDS.  THAT INCLUDES: COMPLYING WITH ALL ENVIRONMENTAL LAWS AND REGULATIONS, WORKING TO REDUCE HAZARDOUS WASTES, AIR EMISSIONS, SOLID WASTES, INDUSTRIAL WASTEWATER GENERATION, AND IMPLEMENTING A POLLUTION PREVENTION PROGRAM.  WE ENCOURAGE OUR SUPPLIERS, INCLUDING THOSE COMPANIES TO WHOM WE OFFLOAD WORK, TO BE ENVIRONMENTALLY RESPONSIBLE IN THEIR OPERATIONS. |
| TSPPWA | **  ANSI/J-STD-001 - STANDARD REQUIREMENTS FOR SOLDERED ELECTRICAL AND ELECTRONIC ASSEMBLIES - CLASS 3. SUPPLIER AND/OR THEIR SUB-TIER SUPPLIERS SHALL CONFORM TO THIS SPECIAL PROCESS REQUIREMENT WHICH MUST BE APPROVED BY LOCKHEED MARTIN QUALITY REPRESENTATIVES.   A CERTIFICATION OF COMPLIANCE IS REQUIRED WITH EACH LOT OF MATERIAL. A LIST OF LOCKHEED MARTIN APPROVED SPECIAL PROCESSORS CAN BE FOUND ON THE CPS SUPPLIER GATEWAY VIA THE INTERNET AT SUPPLIER.EXTERNAL.LMCO.COM |
| TQ02 | **  MIL-I-45208 INSPECTION SYSTEM. THE SUPPLIER'S INSPECTION SYSTEM SHALL COMPLY WITH MIL-I-45208 "INSPECTION SYSTEM REQUIREMENTS," AS A MINIMUM.  THE SUPPLIER'S INSPECTION SYSTEM SHALL BE SUBJECT TO RANDOM AUDITS AND APPROVAL BY LOCKHEED MARTIN QUALITY REPRESENTATIVES AT ALL REASONABLE TIMES FOR ALL SHIFTS AND LOCATIONS IN WHICH ARTICLES ARE PRODUCED UNDER THIS ORDER.  UNLESS OTHERWISE SPECIFIED IN THIS ORDER, MATERIAL REVIEW BOARD (MRB) AUTHORITY IS NOT DELEGATED TO THE SUPPLIER.  ALL DECISIONS TO "REPAIR" OR "USE-AS-IS" AND ALL "STANDARD REPAIR PROCEDURES" UTILIZED BY THE SUPPLIER IN THE PERFORMANCE OF THIS ORDER REQUIRE PURCHASER APPROVAL PRIOR TO IMPLEMENTATION.  EXPRESSIONS USED HEREIN ARE AS DEFINED IN MIL-STD-1520. |
| TCR808 | ** SUPPLIER RETENTION THIS QUALITY CLAUSE MODIFIES ALL QUALITY CLAUSES REFERENCING |

# Purchase Order 850681275

Amendment Number: 0

Lockheed Martin Business Unit: Missiles & Fire Control - CPS

Order Date: 02/19/2004

Document Type: Purchase Order

Status: Accepted

DOCUMENTATION INCLUDING THOSE REQUIRING DOCUMENTATION TO BE
PROVIDED WITH SHIPMENT.

QUALITY DATA REQUIRED TO BE PROVIDED WITH SHIPMENT AS
DIRECTED BY TEXT NOTE INCLUDES:

FIRST ARTICLE INSPECTION DATA
SPECIAL PROCESSOR TRACEABILITY
SOLDERABILITY CERTIFICATIONS

UNLESS OTHERWISE SPECIFIED BY THE CONTRACT, THE CONTRACTOR
SHALL MAINTAIN ON FILE ALL DOCUMENTATION IDENTIFIED BY THIS
CONTRACT FOR A MINIMUM OF FOUR (4) YEARS FROM THE DATE OF
FINAL PAYMENT. THE CONTRACTOR MUST APPLY THIS REQUIREMENT
TO LOWER-TIER SUPPLIERS IF THE INSPECTION OR TEST RECORDS
ARE NOT FORWARDED TO THE CONTRACTOR. THESE RECORDS SHALL BE
AVAILABLE FOR RELEASE UPON REQUEST BY LOCKHEED MARTIN OR ITS
CUSTOMERS

TCRE22   ** FIRST ARTICLE INSPECTION.
ON THE FIRST INITIAL PRODUCTION AND THE FIRST ARTICLE
PRODUCED, SUBSEQUENT TO DESIGN CHANGE INCORPORATION, THE
CONTRACTOR SHALL PERFORM AND DOCUMENT A COMPREHENSIVE
INSPECTION AND TEST OF THAT ARTICLE TO ASSURE ARTICLES'
CONFORMANCE WITH ALL DRAWING AND SPECIFICATION REQUIREMENTS.
WHEN MULTICAVITY MOLDS/DIES ARE USED, FIRST ARTICLE
INSPECTION IS REQUIRED FOR EACH CAVITY.

A NEW FIRST ARTICLE INSPECTION SHALL BE REQUIRED IF: (1) A
SIGNIFICANT DESIGN OR PROCESS CHANGE HAS BEEN MADE THAT
AFFECTS THE ORIGINAL FIRST ARTICLE AND IS APPLICABLE ONLY TO
THOSE CHARACTERISTICS AFFECTED BY THE CHANGE; OR (2) THE
ITEM HAS NOT BEEN PRODUCED FOR A PERIOD OF 12 MONTHS; OR
(3) A CHANGE IN FACILITIES UTILIZED TO PRODUCE THE ARTICLE
HAS TAKEN PLACE.

THE CONTRACTOR'S REPORT SHALL PROVIDE, AS A MINIMUM:
CONTRACT NUMBER, PART NUMBER, REVISION LEVEL, PART NAME,
CONTRACTOR'S NAME, DRAWING REQUIREMENTS (INCLUDING
TOLERANCES), METHOD USED TO OBTAIN RESULTS AND ACTUAL
RESULTS OF EACH MEASUREMENT.  PART(S) USED FOR THE
INSPECTION SHALL BE IDENTIFIED WHEN SHIPPED TO LOCKHEED
MARTIN AS "FIRST ARTICLE INSPECTON SAMPLE".  FIRST
ARTICLE DATA, REGARDLESS OF FORMAT, SHALL ACCOMPANY THE
FIRST SHIPMENT TO BE DELIVERED AND AN ADDITIONAL COPY SENT
TO LOCKHEED MARTIN, ATTENTION:  SUPPLIER QUALITY, MAIL POINT
192.  IF THE PART REQUIRES FUNCTIONAL TESTING, IN ADDITION
TO THE ACTUAL TEST RESULTS, THE CONTRACTOR SHALL FURNISH A
DIAGRAM OF THE TEST SET-UP, THE TEST EQUIPMENT USED, THE
TOLERANCES OF THE TEST EQUIPMENT, AND THE CALIBRATION DATE
OF THE TEST EQUPMENT USED.

TCRE12   ** SOFTWARE MANAGEMENT.
THE CONTRACTOR SHALL IMPLEMENT AND MAINTAIN A SYSTEM WHICH
ASSURES DISCIPLINE AND CONTROL OF DEVELOPMENT, USE, AND
MAINTENANCE OF SOFTWARE USED IN MANUFACTURE, INSPECTION,
TEST, OR ACCEPTANCE OF DELIVERABLE HARDWARE.  THIS SYSTEM
SHALL ENCOMPASS SOFTWARE USED TO CALIBRATE INSTRUMENTS USED
IN THE MANUFACTURING, INSPECTION, TEST AND ACCEPTANCE
PROCESS.  THE CONTRACTOR SHALL ALSO MAINTAIN A SYSTEM,
DESCRIBED BY DOCUMENTED PROCEDURES WHICH ASSURES THAT
EFFECTIVENESS OF THE SOFTWARE DEVELOPMENT, UTILIZATION, AND
MAINTENANCE PROCESS.  THE CONTRACTOR'S SYSTEM, INCLUDING THE
PROCEDURES, ARE SUBJECT TO LOCKHEED MARTIN REVIEW AND
EVALUATION THROUGHOUT THE PERIOD OF THIS CONTRACT.  THE
SYSTEM, INCLUDING THE PROCEDURES, ARE SUBJECT TO LOCKHEED
MARTIN DISAPPROVAL IF THEY MAY ADVERSELY IMPACT THE
QUALITY OF DELIVERABLE HARDWARE COVERED BY THIS CONTRACT.

TCRC28   ** TEST REPORTS.

# Purchase Order 850681275

Amendment Number: 0

Lockheed Martin Business Unit: Missiles & Fire Control - CPS

Order Date: 02/19/2004

Document Type: Purchase Order

Status: Accepted

FUNCTIONAL TEST REPORTS OF ITEMS TO BE DELIVERED UNDER THIS
CONTRACT SHALL BE PRESENTED TO THE LOCKHEED MARTIN QUALITY
REPRESENTATIVE FOR REVIEW AND APPROVAL.  THE REPORTS SHALL
CONTAIN THE CONTRACT NUMBER, CONTRACTOR'S NAME AND ADDRESS,
PART NUMBER, PART NAME, SERIAL NUMBER, ANY RUN TIME, TESTS
CONDUCTED, ACTUAL RESULTS OF TESTS, AND APPROVAL SIGNATURE
OF THE CONTRACTOR'S QUALITY REPRESENTATIVE.  AFTER APPROVAL
BY THE LOCKHEED MARTIN QUALITY REPRESENTATIVE, THE TEST
REPORT SHALL BE MAINTAINED ON FILE BY THE CONTRACTOR AND
SHALL BE AVAILABLE FOR REVIEW FOR A MINIMUM PERIOD OF THREE
(3) YEARS FROM DATE OF FINAL PAYMENT, UNLESS OTHERWISE
SPECIFIED BY THE CONTRACT.

TCRC25    ** TIME AND TEMPERATURE SENSITIVE MATERIAL.
TIME AND TEMPERATURE STORAGE CONDITIONS MUST BE ATTACHED
TO THE PACKAGING SHEET AND ACCOMPANY EACH SHIPMENT TO BE
DELIVERED HEREUNDER. THE OUTER-MOST SHIPPING BOX MUST BE
MARKED TO INDICATE "TIME AND TEMPERATURE SENSITIVE
MATERIAL," AND "TEMPERATURE STORAGE RANGE IN DEGREES."

TCRC23    ** LOCKHEED MARTIN SOURCE SURVEILLANCE.
SOURCE SURVEILLANCE SHALL BE CONDUCTED BY LOCKHEED MARTIN
AT THE CONTRACTOR'S FACILITIES OR WHERE DESIGNATED IN THIS
CONTRACT PRIOR TO SHIPMENT.  INSPECTION/TEST AND IN-PROCESS
INSPECTION/TEST OF THE ARTICLES DEFINED IN THIS CONTRACT
SHALL BE PERFORMED BY THE CONTRACTOR, AND SHALL BE SUBJECT
TO WITNESS BY A LOCKHEED MARTIN QUALITY REPRESENTATIVE.
THE CONTRACTOR SHALL CONTACT THE LOCKHEED MARTIN QUALITY
REPRESENTATIVE PRIOR TO THE START OF FABRICATION SO THAT
MANDATORY IN-PROCESS INSPECTION/TEST POINTS CAN BE AGREED
UPON.  THE CONTRACTOR SHALL HAVE AVAILABLE AND PRESENT UPON
REQUEST DOCUMENTED EVIDENCE OF HIS INSPECTION/TEST PERFOR-
MANCE, INCLUDING IN-PROCESS AND/OR FINAL TEST.  THIS MAY BE
USED FOR THE ACCEPTANCE OF HARDWARE OR MATERIAL.  REQUIRED
DOCUMENTATION FOR SHIPMENT MUST BE COMPLETED AND SIGNED BY
THE CONTRACTOR'S AUTHORIZED QUALITY PERSONNEL AND BE AVAIL-
ABLE FOR THE LOCKHEED MARTIN QUALITY REPRESENTATIVE'S
REVIEW.

TCRC04    ** ACCEPTANCE TEST PROCEDURES.
THE CONTRACTOR SHALL PREPARE SEPARATE DETAILED TEST PROCE-
DURES, ENCOMPASSING TESTS REQUIRED FOR ACCEPTANCE.  EACH
ITEM OF HARDWARE, OR PART THEREOF, WHICH REQUIRE ACCEPTANCE
TESTING, SHALL BE COVERED BY AN ACCEPTANCE TEST PROCEDURE.
FINAL ACCEPTANCE TEST PROCEDURES REQUIRE LOCKHEED MARTIN
APPROVAL PRIOR TO THE DELIVERY OF THE FIRST UNIT OF HARD-
WARE.  SUBSEQUENT CHANGES ARE SUBJECT TO LOCKHEED MARTIN
APPROVAL PRIOR TO INCORPORATION.  WHERE THESE TESTS ARE PER-
FORMED UTILIZING EQUIPMENT CONTROLLED BY COMPUTER SOFTWARE
OR FIRMWARE, THE SOFTWARE OR FIRMWARE ASSOCIATED WITH, OR
AFFECTING, THOSE TESTS REQUIRE LOCKHEED MARTIN APPROVAL AT
THE SAME TIME(S) AS THE REMAINDER OF THE ACCEPTANCE TEST
PROCEDURE.

TCRC01    ** LOCKHEED MARTIN ACCEPTANCE AT DESTINATION.
ARTICLES ORDERED UNDER THIS CONTRACT ARE SUBJECT TO FINAL
ACCEPTANCE AT THE LOCKHEED MARTIN FACILITY AS SET FORTH ON
THE FACE OF THE CONTRACT.

TCRB58    ** MRB
UNLESS OTHERWISE SPECIFIED IN THIS PURCHASE ORDER, THE
CONTRACTOR AND/OR ANY OF THEIR SUPPLIERS/SUBCONTRACTORS DO
NOT HAVE AUTHORITY TO PROCESS "USE-AS-IS", "REPAIR",
"STANDARD REPAIR PROCEDURES (SRPS)" OR "NON-SRPS" VIA THEIR
MATERIAL REVIEW BOARD (MRB).  THESE DISPOSITIONS, AS WELL AS
DEVIATIONS AND REQUEST FOR WAIVERS, REQUIRING MRB
DISPOSITION SHALL BE SUBMITTED TO LOCKHEED MARTIN FOR
APPROVAL (THIS DOES NOT INCLUDE REWORK OR SCRAP).  THE
SUPPLIER/SUBCONTRACTOR SHALL UTILIZE ITS APPROPRIATE

# Purchase Order 850681275

Amendment Number: 0

Lockheed Martin Business Unit: Missiles & Fire Control - CPS

Order Date: 02/19/2004

Document Type: Purchase Order

Status: Accepted

---

NONCONFORMING MATERIAL DISPOSITION FORM AND SUBMIT IT TO THE
BUYER OF RECORD FOR LOCKHEED MARTIN APPROVAL.

**Total: $78,375.00**

End of Document

Pricing Agreement Number **DPD039**                    *LOCKHEED MARTIN*

15.    Neither this Agreement nor any of the Exhibits attached hereto may be amended except in
       writing signed by an authorized representative of LOCKHEED MARTIN's Corporate
       Shared Services-Global Supply Chain Management Strategic Sourcing Solutions
       organization.


LOCKHEED MARTIN CORPORATION          DELPHI CONNECTION SYSTEMS

By: _____            By: _____
Name: Ihsan A. Shahid                Name: _____
Title: Project Manager               Title: _____
Date: 5/01/03                        Date: _____

Pricing Agreement Number __DPD039__

# Exhibit "E"

## Modifications to LMC Terms and Conditions:

**CORPDOC 1, General Provisions (7/02)**

Clause 17 – Inspection and Acceptance
(e)  Seller's liability for nonconforming items (when applicable) shall not exceed the repair, replacement or refund of said items.  Seller shall not be liable for indirect, incidental, special or consequential damages.

Clause 19 – Intellectual Property
(a)  Ownership consideration for inventions or intellectual property rights made or conceived by Seller in the performance of this contract as well as rights of a nonexclusive, irrevocable, worldwide license shall be attributable to the Buyer if and only if Buyer has specifically paid for these services within the context of this order. In those instances where Buyer has clearly funded Seller for all developmental work, which has subsequently resulted in inventions and/or discoveries, the right, title and interest in and to such discoveries, shall be subject to the further agreement of Buyer and Seller.

Clause 23 – Payments, Taxes, and Duties
(a)  Payment terms shall be Net 30 from receipt of Seller's invoice.

Clause 33 – Warranty
Seller's liability for nonconforming items (when applicable) shall not exceed the repair, replacement or refund of said items.

**CORPDOC 2, General Provisions and FAR Flowdown Provisions (7/02)**

Clause 19 – Inspection and Acceptance
(e)  Seller's liability for nonconforming items (when applicable) shall not exceed the repair, replacement or refund of said items.  Seller shall not be liable for indirect, incidental, special or consequential damages.

Clause 21 – Intellectual Property
(b)  Ownership consideration for inventions or intellectual property rights made or conceived by Seller in the performance of this contract as well as rights of a nonexclusive, irrevocable, worldwide license shall be attributable to the Buyer if and only if Buyer has specifically paid for these services within the context of this order. In those instances where Buyer has clearly funded Seller for all developmental work, which has subsequently resulted in inventions and/or

**Pricing Agreement Number _ DPD039 _**

discoveries, the right, title and interest in and to such discoveries, shall be subject to the further agreement of Buyer and Seller.

Clause 36 – Warranty
Seller's liability for nonconforming items (when applicable) shall not exceed the repair, replacement or refund of said items.


**CORPDOC 3, General Provisions and FAR Flowdown Provisions (7/02)**

Clause 21 – Payments, Taxes, and Duties
(a) Payment terms shall be Net 30 from receipt of Seller's invoice.

Clause 30 – Warranty
Seller's liability for nonconforming items (when applicable) shall not exceed the repair, replacement or refund of said items.