Hearing Time: TBD
Objection Deadline: TBD

**HAYNES AND BOONE, LLP**
1221 Avenue of the Americas, 26th Floor
New York, New York 10020
Telephone:  (212) 659-7300
Facsimile:  (212) 884-8211
Lenard M. Parkins (NY Bar# 4579124)
Jonathan Hook (NY Bar# 4187449)

*Attorneys for Highland Capital Management, L.P.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------x
In re                                    :    Chapter 11
                                         :
Delphi Corporation, et al.,              :    Case No. 05-44481 (RDD)
                                         :
                       Debtors.          :    (Jointly Administered)
-------------------------------------------------------x
```

**APPLICATION OF HIGHLAND CAPITAL MANAGEMENT, L.P. PURSUANT TO 11 U.S.C. §§ 503(b)(3) AND 503(b)(4) FOR ALLOWANCE AND REIMBURSEMENT OF REASONABLE PROFESSIONAL FEES AND ACTUAL, NECESSARY EXPENSES IN MAKING A SUBSTANTIAL CONTRIBUTION IN THESE CHAPTER 11 CASES**

TO:    THE HONORABLE JUDGE ROBERT D. DRAIN
       UNITED STATES BANKRUPTCY JUDGE

Highland Capital Management, L.P. ("Highland"), a creditor of the above-captioned

Debtors (collectively, the "Debtors") and a party-in-interest in the above-captioned chapter 11

cases (the "Cases"), by and through its undersigned counsel, hereby files this application (the

"Application") pursuant to sections 503(b)(3) and 503(b)(4) of title 11 of the United States Code,

11 U.S.C.§§ 101, *et seq.* (the "Bankruptcy Code") for (a) allowance of an administrative expense

claim in the aggregate amount of $2,529,793.59 (the "Administrative Claim"), consisting of (i)

$2,020,498.35 in fees incurred by Haynes and Boone, LLP ("Haynes and Boone") and $400,000

in fees incurred by Loughlin, Meghji & Company, Inc. ("Loughlin, Meghji"), totaling

$2,420,498.35 (together, the "Requested Fees"), and (ii) $61,295.57 in expenses incurred by Haynes and Boone and $47,999.67 in expenses incurred by Loughlin, Meghji, totaling $109,295.24 (together, the "Requested Expenses"), for the actual, reasonable fees and expenses incurred in making a substantial contribution in the Cases, and (b) requesting payment thereon. In support of the Application, Highland respectfully states as follows:

**[page intentionally left blank]**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................................... 7

JURISDICTION ................................................................................................................... 8

SUMMARY OF PROFESSIONAL COMPENSATION AND EXPENSES REQUESTED ........ 8

BACKGROUND ................................................................................................................... 10

I.      The Chapter 11 Cases ................................................................................................. 10

II.     Retention of Haynes and Boone and Loughlin, Meghji .................................................. 10

III.    The Debtors' Initial Financing Agreement with Appaloosa........................................... 10

IV.     Highland's Competing Bids.......................................................................................... 12

V.      Highland's Actions Regarding the Approval Order ....................................................... 13

VI.     Termination of Amended First Appaloosa EPA ............................................................ 14

VII.    Confirmation of Plan with Second Appaloosa EPA ...................................................... 15

VIII.   Modification of Confirmed Plan................................................................................... 15

DESCRIPTION OF PROFESSIONAL SERVICES ................................................................ 16

I.      Services Rendered and Expenses Incurred by Haynes and Boone and Loughlin, Meghji 16

        A.  First Investment Proposal ...................................................................................... 16

        B.  Objections to the First Appaloosa EPA and Participation in Approval Hearing........ 17

        C.  Second Investment Proposal .................................................................................. 18

RELIEF REQUESTED.......................................................................................................... 18

BASIS FOR RELIEF............................................................................................................. 19

I.      Highland Provided a Substantial Contribution to the Debtors' Chapter 11 Cases .......... 19

        A.  Highland Provided a Substantial, Tangible and Cognizable Benefit to the Estate..... 21

(i)    Highland's Actions Resulted in a More Favorable Investment Agreement for the Debtors' Estates Prior to Court Approval of the Amended First Appaloosa EPA ........................................................................................................................ 22

(ii)    Highland's Actions Resulted in a More Favorable Investment Agreement for the Debtors' Estates Prior to Court Approval of the Second Appaloosa EPA ........ 23

B.    Highland's Efforts Went Above and Beyond the Protection of Its Interests as a Creditor or Equity Holder ........................................................................................... 24

C.    Highland's Services Were Not Duplicated by Other Parties ...................................... 25

II.    Highland Is Entitled to Reimbursement for Professional Services Rendered and Expenses Incurred by Its Professionals in Making a Substantial Contribution ................................ 25

A.    The Amounts Incurred by Highland's Professionals Are Reimbursable Under Section 503(b) of the Bankruptcy Code ................................................................................... 25

B.    The Professional Services Provided Were Reasonable and the Expenses Incurred Were Actual, Necessary Costs ................................................................................... 26

CONCLUSION ....................................................................................................................... 28

## <u>TABLE OF AUTHORITIES</u>

<u>Pages</u>

<span style="font-variant:small-caps">Cases</span>

*Hall Financial Group, Inc. v. DP Partners, Partnership* (*In re DP Partners, Partnreship*),
106 F.3d 667 (5th Cir. 1997) ........................................................................................ 19, 22

*In re 9085 E. Mineral Office Building Limited*,
119 B.R. 246 (Bankr. D. Colo. 1990) ........................................................................... 19, 20

*In re Baldwin-United Corp.*,
79 B.R. 321 (Bankr. S.D. Ohio 1987) ................................................................................. 21

*In re Bethlehem Steel Corp.*,
2003 WL 21738964 (Bankr. S.D.N.Y., July 28, 2003) ........................................................ 20

*In re Dana Corp.*,
390 B.R. 100 (Bankr. S.D.N.Y. 2008) .......................................................................... 19, 24

*In re Granite Partners*,
213 B.R. 440 (Bankr. S.D.N.Y. 1997) .......................................................................... 19, 24

*In re McLean Indus., Inc.*,
88 B.R. 36 (Bankr. S.D.N.Y. 1988) .................................................................................... 21

*In re Richton International Corp.*,
15 B.R. 854 (Bankr. S.D.N.Y. 1981) ................................................................................. 19

*In re Texaco, Inc.*,
90 B.R. 622 (Bankr. S.D.N.Y. 1988) .................................................................................. 26

*In re Tyson*,
2005 WL 3789356 (Bankr. S.D.N.Y., June 3, 2005) ........................................................... 24

*In re U.S. Lines, Inc.*,
103 B.R. 427 (Bankr. S.D.N.Y. 1989) ................................................................................ 19

*In re Villa Luisa, L.L.C.*,
354 B.R. 345 (Bankr. S.D.N.Y. 2006) ............................................................................... 23

*Roberts v. Petroleum World, Inc.* (*Ex parte Roberts*),
93 B.R. 442 (D.S.C. 1988) ................................................................................................ 22

*Trade Creditor Group v. L. J. Hooker Corp. (In re Hooker Investors, Inc.)*,
188 B.R. 117 (S.D.N.Y. 1995), *aff'd*, 104 F.3d 349 (2d Cir. 1996) ........................................ 20

## OTHER AUTHORITIES

11 U.S.C. § 330.................................................................................................................. 26

11 U.S.C. § 503(b)(4) ............................................................................................. 19, 25, 26

11 U.S.C. § 503(b)(3)(D) ................................................................................................... 19

28 U.S.C. §§ 157................................................................................................................... 6

28 U.S.C. § 157(b) ............................................................................................................... 8

28 U.S.C. §§ 1334................................................................................................................. 6

28 U.S.C. §§ 1408................................................................................................................. 7

28 U.S.C. §§ 1409................................................................................................................. 7

## PRELIMINARY STATEMENT

1.        Highland is filing this Application for reimbursement of professional fees and expenses it incurred in making a substantial contribution in these Cases.  Prior to Highland's involvement in 2006, Appaloosa Management L.P., along with other investors (collectively, "Appaloosa") presented the Debtors with an equity purchase proposal to facilitate the Debtors' exit from bankruptcy.  Highland recognized the negative effect of Appaloosa's plan proposal on all of the Debtors' constituencies other than Appaloosa, and took the laboring oar in challenging the Appaloosa proposal. Like the official committees in these Cases, (*i.e.*, the official committee of unsecured creditors (the "Creditors' Committee") and the committee of equity security holders (the "Equity Committee")), Highland filed an objection (the "Highland Objection").   More importantly, however, Highland backed up its objection with a $4.7 billion deal proposal (the "Highland Bid"), creating a competitive bidding environment as a foil to Appaloosa's unilateral ability to proceed with its proposal.  Unable to dismiss Highland's objection and alternative plan proposal as it could the other objections, which were unsupported by any money, Appaloosa was compelled to materially enhance its original proposal, to the benefit of the Debtors and all of their constituencies.

2.        The success of large multi-faceted bankruptcy cases often depends upon the willingness of individual stakeholders to step forward, thoroughly examine the issues, and, if warranted, press for relief, even when those contributions require material expenses and costs. In these Cases, Highland was the only real party-in-interest to put its money where its mouth was, and, accordingly, should be reimbursed for its expenses.

**JURISDICTION**

3.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157

and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding

pursuant to 28 U.S.C. § 157(b)(2)(A) and (B).

**SUMMARY OF PROFESSIONAL COMPENSATION
AND EXPENSES REQUESTED**

4.      This Application has been prepared in accordance with Rule 2016 of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rule 2016-1 of the Local

Rules of Bankruptcy Procedure (the "Local Rules"), the Guidelines for Fees and Disbursements

for Professionals in Southern District of New York Bankruptcy Cases adopted by the Court on

June 20, 1991, as amended (the "Local Guidelines"), the United States Trustee Guidelines for

Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11

U.S.C. § 330 adopted on January 30, 1996 (the "UST Guidelines"), the Order Confirming the

First Amended Joint Plan of Reorganization (the "Confirmation Order"),[1] and the Order

Approving Modifications to the First Amended Joint Plan of Reorganization (the "Modification

Order," together with the Bankruptcy Rules, the Local Rules, the Local Guidelines, and the

Amended Local Guidelines, the UST Guidelines, and the Confirmation Order, the

"Guidelines").[2]

5.      This Application covers the period from March 28, 2006 through October

29, 2009 (the "Compensation Period").  In connection with the fees for professional services

rendered by Haynes and Boone during such period, the aggregate charge to Highland for which

reimbursement is requested equals $2,020,498.35. In addition, this Application seeks $61,295.57

in reimbursement of actual, necessary expenses incurred by Haynes and Boone.  Highland also

---

[1]      Docket No. 11386.
[2]      Docket No. 12355.

paid for the services of Loughlin, Meghji, Highland's financial advisor, who provided necessary services to Highland during the Compensation Period for negotiated fees of $150,000 for the month of January 2007, $150,000 for the month of February 2007, and $100,000 for the month of July 2007. Additionally, Loughlin, Meghji charged Highland in the aggregate $47,999.67 for its actual, necessary expenses.

6.      In total, Highland requests allowance and payment of the Administrative Claim in the amount of $2,529,793.59, consisting of the Requested Fees in the amount of $2,420,498.35 and Requested Expenses in the amount of $109,295.24.

7.      Attached hereto as **Exhibit "A"** is a list of relevant pleadings and other documents prepared and filed by Haynes and Boone, on behalf of Highland.  Pursuant to the Guidelines, attached hereto as **Exhibit "B"** is a schedule setting forth all Haynes and Boone professionals and paraprofessionals who have performed services in these Cases during the Compensation Period, the capacity in which each individual is employed by Haynes and Boone, the department in which each individual practices, the hourly billing rate for each individual, the aggregate number of hours expended by such individual and, where applicable, the year in which each professional was first licensed to practice law.

8.      Haynes and Boone maintained computerized records of the time spent by its professionals and paraprofessionals in connection with these Cases. Based on their voluminous nature, and subject to redaction for attorney-client and work-product privileges, and other applicable law, copies of these computerized records will be provided separately as necessary or upon request. Similarly, copies of records listing detailed descriptions of the expenses incurred by Haynes and Boone and Loughlin, Meghji, for which Highland seeks reimbursement, will be provided separately as necessary or upon request. Attached hereto as

**Exhibit "C"** is a schedule specifying the categories of Haynes and Boone's expenses and the total amount for which reimbursement is sought for each expense category.

9.      Loughlin, Meghji charged Highland for its fees at a monthly negotiated rate, but charged Highland for its actual, necessary expenses in addition to the negotiated rate. Attached as **Exhibit "D"** are schedules listing Loughlin, Meghji's fees and expenses.

## BACKGROUND

### I.      The Chapter 11 Cases

10.      On October 8 and 14, 2005 (the "Petition Date"),[3] the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (the "Court").

### II.      Retention of Haynes and Boone and Loughlin, Meghji

11.      In December of 2006, Highland initiated discussions with the Debtors regarding a possible investment in the Debtors.  Haynes and Boone represented Highland as its legal counsel in these Cases.  Pursuant to this retention, Highland agreed to pay Haynes and Boone its customary hourly rates for attorneys and paraprofessionals, as well as reasonable costs and expenses. Haynes and Boone represented Highland in all matters related to Highland's $4.7 billion proposal and its objections to the Appaloosa transactions in 2006 and 2007.  Loughlin, Meghji advised Highland in these matters, and Highland agreed to pay Loughlin, Meghji a negotiated monthly rate and reasonable costs and expenses.

### III.      The Debtors' Initial Financing Agreement with Appaloosa

---

[3]      All but three of the Debtors filed voluntary petitions on October 8, 2005.  The other three filed on October 14, 2005.

12.     On December 18, 2006, the Debtors filed an expedited motion (the "Framework Motion") seeking court approval of an equity purchase agreement between Appaloosa and the Debtors (the "First Appaloosa EPA"). The Debtors were looking for a viable exit strategy, and initially, only Appaloosa stepped up to the plate. With the goal of emerging from bankruptcy in 2007, the Appaloosa deal provided the Debtors with a means to do so, but in a manner that, in a best-case scenario, would transfer control of the company over to Appaloosa for far less than what the company was then apparently worth, and, in a worst-case scenario, would leave the Debtors in the lurch should Appaloosa decide to walk the deal. All the while, the Appaloosa deal was structured to chill any alternative proposals by including a massive break-up fee payable to Appaloosa in addition to costs.

13.     The First Appaloosa EPA provided for a $100,000,000 alternative transaction fee (*i.e.*, a break-up fee), the payment of which was dependent upon actions taken by parties other than the Debtors, namely GM. (Debtors' Omnibus Reply, ¶ 19, Jan. 10, 2007.)[4] Further, Appaloosa was permitted to terminate the First Appaloosa EPA even after the Court approved the disclosure statement pursuant to a plan of reorganization incorporating the agreement, creating what amounted to an entirely risk-free investment for Appaloosa. (Debtors' Omnibus Reply, ¶ 18, Jan. 10, 2007.)[5]

14.     Highland,[6] along with the United States Trustee (the "UST"),[7] the Creditors' Committee,[8] the Equity Committee,[9] and the ad hoc trade committee,[10] filed timely objections to the Framework Motion, voicing concerns regarding the highly inequitable terms of

---

[4]     Docket No. 6531.
[5]     Docket No. 6531. Appaloosa could essentially walk the deal, leaving the Debtors in the lurch even after the court approved a disclosure statement detailing a plan incorporating the Appaloosa deal.
[6]     Docket No. 6330.
[7]     Docket No. 6401.
[8]     Docket No. 6209.
[9]     Docket No. 6211.
[10]    Docket No. 6254.

the First Appaloosa EPA, and the unnecessarily large break-up fee, which could be triggered by actions of non-Debtors.

15.        Rather than sit on the sidelines, Highland assembled a competing bid to give force to the Highland Objection. While others objected to the Appaloosa deal—the only game in town—the Highland Objection was supported by a formal proposal which it believed was a higher and better proposal for the Debtors.

## IV.    Highland's Competing Bid

16.        On December 21, 2006, Highland drafted and submitted the Highland Bid to the Debtors in the form of a commitment letter.[11]

17.        Additionally, Highland analyzed the First Appaloosa EPA and determined that Appaloosa's proposed equity investment was an underpayment for the equity to be received by Appaloosa, which resulted in negative economics to all the Debtors' stakeholders, and contained an unnecessary preferred-stock grant that granted to Appaloosa far too much control over the Debtors. (Highland Commitment Letter, at p. 2, December 21, 2006.)[12]  On December 28, 2006, Highland submitted the Highland Bid, what it believed to be a higher and better offer, with the Highland Objection.[13]  Under the terms of the Highland Bid, Highland would provide $4.7 billion of capital without requiring a $1.2 billion preferred stock grant to Highland, with a $20 million break-up fee, and which allowed for a board of directors independent from plan investor control.[14]

18.        According to the Debtors, "[d]ue to the objections and the [Highland Bid], the Debtors agreed to postpone the hearing on the Framework Motion from January 5 to January

---

[11]        Docket No. 6330 (Exhibit A).
[12]        Docket No. 6330 (Exhibit A).
[13]        Docket No. 6330.
[14]        Docket No. 6330.

11, 2007." (Disclosure Statement to Plan, September 6, 2007, at p. DS-40.)[15] Furthermore, "[t]hrough a series of negotiations spanning the Christmas and New Year holidays, the Debtors were able to clarify certain ambiguities in and make certain changes to the [First Appaloosa EPA]." (Disclosure Statement to Plan, September 6, 2007, at p. DS-40.)[16]

19.     After the Highland Bid was presented to the Debtors and the Court, significant negotiations took place between the Debtors, Appaloosa, and the two official committees, leading to numerous clarifications and modifications to the First Appaloosa EPA prior to the January 11-12, 2007 Approval Hearing.[17]   These negotiations culminated in an amended equity purchase agreement between the Debtors and Appaloosa (the "Amended First Appaloosa EPA") which benefitted the Debtors tremendously.  (Debtors' Omnibus Reply, Jan. 11, 2007;[18] Disclosure Statement to Plan, September 6, 2007, at DS-40.)[19]  While the Debtors ultimately did not adopt the Highland Bid, they certainly used it to create negotiating leverage with Appaloosa.  The Highland Bid provided the environment in which the Debtors could seek concessions from Appaloosa. Without Highland, Appaloosa had the Debtors backed into a corner, faced with choosing to forego exit from bankruptcy or doing a deal that was outrageously lopsided in favor of Appaloosa.

## V.    Highland's Actions Regarding the Approval Order

20.     In addition to submitting the Highland Bid, Highland pursued the Highland Objection. Despite providing greater protections to the Debtors' estate and stakeholders than the First Appaloosa EPA did, Highland did not think these improvements went far enough. After the Court approved the Appaloosa transaction and rejected the Highland Bid,

---

[15]        Docket No. 11388.
[16]        Docket No. 11388.
[17]        Docket Nos. 6832; 6847; 7118; 7181.
[18]        Docket No. 6531.
[19]        Docket No. 11388.

Highland did not press its legal options any further. Highland's actions were calculated to provide a significantly better deal for the Debtors and their stakeholders, and to simultaneously provide a foil to Appaloosa, the only game in town, so that the Debtors and the official committees could negotiate from a position of strength with Highland's alternative proposal pending. Since further litigation would only diminish this recovery, Highland did not pursue it.

## VI.    Termination of the Amended First Appaloosa EPA

21.    On July 7, 2007, the Debtors terminated the Amended First Appaloosa EPA due to a valuation dispute with Appaloosa. (Disclosure Statement to Plan, at p. DS-118, Dec. 10, 2007.)[20] The Debtors made it known that they expected to enter into new framework agreements at some point in July of 2007.

22.    In late June and early July of 2007, while the Debtors were negotiating potential amendments to the Amended First Appaloosa EPA, the Debtors received an amended draft of the agreement from Appaloosa and a draft of a potential investment from Highland. (Disclosure Statement to Plan, September 6, 2007, at p. DS-118.)[21] Through a series of meetings and negotiating sessions during the first two weeks of July, the Debtors developed a set of competing investment proposals from Highland and Appaloosa.  Again, the Debtors played the Highland and Appaloosa offers against each other.  On July 18, 2007, the Debtors announced that they had accepted a new proposal for an equity purchase agreement with Appaloosa (the "Second Appaloosa EPA"). Again, Highland's actions gave the Debtors the tools to negotiate with Appaloosa in a competitive environment.

23.    On July 27, 2007, Highland filed a statement with the Court expressing disappointment, but did not file an objection to the Debtors' motion to approve the Second

---

[20]    Docket No. 11388.
[21]    Docket No. 11388.

Appaloosa EPA.  On August 2, 2007, the Second Appaloosa EPA was approved by the Court at an uncontested hearing.

## VII.    Confirmation of Plan with Second Appaloosa EPA

24.    On December 10, 2007, the Debtors filed their First Amended Joint Plan of Reorganization (the "Plan"),[22] incorporating the Second Appaloosa EPA. On January 25, 2008, the Court confirmed the Plan, with the Confirmation Order becoming final on February 4, 2008.[23]

25.    On April 4, 2008, Appaloosa terminated the Second Appaloosa EPA, thereby rendering the Debtors unable to fully consummate the Plan. (Supplement to Disclosure Statement, at p. S-iv, June 16, 2009.)[24] On May 16, 2008, the Debtors filed complaints against Appaloosa seeking redress of the unjustified breach of the Second Appaloosa EPA and related damages. (Supplement to Disclosure Statement, at p. S-iv, June 16, 2009.)[25]

## VIII.    Modification of Confirmed Plan

26.    On July 30, 2009, the Court entered an order approving modifications to the Plan (the "Modified Plan") which called for a reorganization pursuant to a sale under § 363 of the Bankruptcy Code.[26] On October 6, 2009, following consummation of a sale via credit bid by certain of the Debtors' secured creditors, the Modified Plan became effective and the Debtors exited bankruptcy.

---

[22]    Docket No. 11386.
[23]    Docket No. 12355.
[24]    Docket No. 17031
[25]    Docket No. 17031.
[26]    Docket No. 17032.

**DESCRIPTION OF**
**PROFESSIONAL SERVICES**

I.    **Services Rendered and Expenses Incurred by Haynes and Boone and Loughlin, Meghji**

A.    **First Investment Proposal**

27.    The fees of and expenses incurred by Haynes and Boone related directly to the 2006-2007 Appaloosa transactions and the Highland Bid and other efforts to level the playing field for the Debtors in its negotiations with Appaloosa. Haynes and Boone was required to perform a massive amount of due diligence in a very short time, and at a significant, but necessary, expense, in order to facilitate presenting the only meaningful, money-backed objection to Appaloosa's proposals. Among other things, Haynes and Boone professionals analyzed securities, tax, and other issues, and performed analyses of the claims against the Debtors' estates.  This foundational diligence supported the Highland Bid, which was the only way to successfully challenge the Appaloosa proposals.

28.    Haynes and Boone drafted several letters to the Debtors and the Debtors' board of directors, informing them of Highland's interest in negotiating a potential investment transaction.  Further, Haynes and Boone prepared and filed several form 13D statements with the Securities and Exchange Commission (the "SEC") publicly announcing Highland's communications with the Debtors, as well as expressing its willingness to negotiate a potential investment agreement.

29.    After the First Appaloosa EPA was announced, Haynes and Boone thoroughly analyzed the nature and the terms of that proposal, as well as the various amendments and iterations of the agreement as Appaloosa and the Debtors made further modifications.

Additionally, Haynes and Boone negotiated directly with Debtors' counsel, as well as counsel to other parties-in-interest in seeking acceptance of Highland's superior proposal.

30.    Likewise instrumental during this period, Loughlin, Meghji was required to provide extensive financial advice to Highland with regard to assembling the Highland Bid and negotiating with the Debtors.

**B.    Objections to the First Appaloosa EPA and Participation in Approval Hearing**

31.    As a corollary to the services provided to Highland in connection with the Highland Bid, Haynes and Boone also advised and represented Highland in connection with the litigation of the Framework Motion in late 2006 and early 2007.  After the Debtors filed the Framework Motion, Haynes and Boone prepared and filed, on behalf of Highland, the Highland Objection.  The Highland Objection not only pointed out the material deficiencies of the First Appaloosa EPA, but also submitted the Highland Bid.

32.    Additionally, prior to the hearing, Haynes and Boone served discovery requests and subpoenas for depositions upon representatives of the Debtors and the plan investors, including Appaloosa. On extremely tight schedules (mere days before the Framework Hearing), Haynes and Boone prepared for and participated in the depositions of representatives for each of these parties. In some cases, Haynes and Boone took the lead in examining the key deponents in respect of the facts and circumstances relating to the Framework Motion and the proposed transaction with Appaloosa. Haynes and Boone attorneys attended and participated in numerous depositions, including those of John Sheehan, Robert S. Miller, John D. Opie, Patrick Daugherty, and David Resnick.

33.    Additionally, Highland propounded a number of document requests and interrogatories on the Debtors, their advisors, Appaloosa, and others, and responded to document requests as well.

34.    Throughout this process, Loughlin, Meghji continued to provide Highland with financial advice.

**C.    Second Investment Proposal**

35.    After the Court approved the Amended First Appaloosa EPA, in January of 2007, and after Delphi terminated the Amended First Appaloosa EPA, Haynes and Boone and Loughlin, Meghji advised Highland with respect to its further negotiations with the Debtors in July of 2007. In connection with Highland's negotiations, Haynes and Boone prepared all of the necessary documentation, and continued to negotiate with Debtors' counsel with respect to Highland's offers. Haynes and Boone and Loughlin, Meghji also analyzed the relevant provisions and impact of Second Appaloosa EPA.

**<u>RELIEF REQUESTED</u>**

36.    Pursuant to Bankruptcy Code section 503(b), Highland seeks allowance of the Administrative Claim in the amount of $2,529,793.59, consisting of the Requested Fees in the amount of $2,420,498.35 and Requested Expenses in the amount of $109,295.24. The Administrative Claim amount represents reimbursement of the reasonable fees and expenses incurred by Highland on behalf of the Debtors' estate consisting of fees in the amount of $2,020,498.35 for services rendered by Haynes and Boone and $400,000 for services rendered by Loughlin, Meghji, and reimbursement of necessary and actual expenses incurred by Haynes and Boone with respect thereto in the amount of $61,295.57, and incurred by Loughlin, Meghji with respect thereto in the amount of $47,999.67.

37.    Highland submits that the fees and expenses paid to Haynes and Boone and Loughlin, Meghji are reasonable and the services rendered by such professionals provided a substantial contribution to these Cases.  As a direct result of the efforts of Haynes and Boone in representing and advising, and Loughlin, Meghji in advising Highland on the means to provide the only real alternative to Appaloosa's bids, the Debtors' stakeholders received enhancements and modifications to the First Appaloosa EPA which resulted in the Amended First Appaloosa EPA, with the enhancements identified by the Debtors in its Omnibus Reply. (Debtors' Omnibus Reply, Jan. 11, 2007.)[27]  Additionally, Haynes and Boone's representation of Highland and Loughlin, Meghji's advising of Highland was instrumental in creating a second competitive environment following the Debtors' termination of the Amended First Appaloosa EPA, which in turn led to a plan that was confirmed by the Court on January 25, 2008. Accordingly, Highland is entitled to allowance of the Administrative Claim in the total aggregate amount of the Requested Fees and Requested Expenses, and requests payment thereon as soon as is practicable or as otherwise ordered by this Court.

## **BASIS FOR RELIEF**

**I.    Highland Provided a Substantial Contribution to the Debtors' Chapter 11 Cases**

38.    Bankruptcy Code section 503(b)(3)(D) mandates recovery as administrative expenses the actual, necessary expenses incurred by a creditor in making a substantial contribution in a chapter 11 case. 11 U.S.C. § 503(b)(3)(D);[28] *see also Hall Fin.*

---

[27]    Docket No. 6531.

[28]    Bankruptcy Code section 503(b)(3)(D) provides, in pertinent part, […] (b) After notice and a hearing, there shall be allowed administrative expenses, […] including […] (3) the actual, necessary expenses, […] incurred by […] (D) a creditor, […] in making a substantial contribution in a case under chapter 9 or 11 of this title […].

11 U.S.C. § 503(b)(3)(D).

*Group, Inc. v. DP Partners, P'ship* (*In re DP Partners, P'ship*), 106 F.3d 667, 671 (5th Cir.

1997) ("This statutory mandate permits of no discretionary calls by the court.").

39.    The reimbursement of stakeholders who make a substantial contribution to

a chapter 11 case is designed to promote meaningful participation in the reorganization process.

*In re Dana Corp.*, 390 B.R. 100, 108 (Bankr. S.D.N.Y. 2008); *In re Granite Partners*, 213 B.R.

440, 445 (Bankr. S.D.N.Y. 1997); *see also In re 9085 E. Mineral Office Bldg. Ltd.*, 119 B.R.

246, 253 (Bankr. D. Colo. 1990) (warning that a narrow application of substantial contribution

awards would have a chilling effect upon the Bankruptcy Code's goal of encouraging

meaningful creditor participation); *In re Richton Int'l Corp.*, 15 B.R. 854, 855-56 (Bankr.

S.D.N.Y. 1981) (noting that "[t]he policy aim of authorization of such compensation is to

promote meaningful creditor participation in the reorganization process" and that

"[c]oncommitant with the aim of creditor participation is the authorization of compensation for

counsel to creditors") (citations omitted). To that end, and as described further below, section

503(b)(4) provides for reasonable compensation for professional services rendered by an

attorney or accountant to a party who has made a substantial contribution. 11 U.S.C. § 503(b)(4).

40.    Although the Bankruptcy Code does not define "substantial contribution,"

this Court has held that an applicant has substantially contributed to a chapter 11 case if it has

provided "an actual and demonstrable benefit to the debtor's estate, its creditors, and to the

extent relevant, the debtor's shareholders." *In re Dana Corp.*, 390 B.R. at 108 (quoting *In re*

*U.S. Lines, Inc.*, 103 B.R. 427, 429 (Bankr. S.D.N.Y. 1989)). Courts in the Second Circuit have

considered various factors in determining whether a creditor has conferred an actual

demonstrable benefit, including: (i) whether the services benefited the creditor, the estate itself or

all of the parties in the bankruptcy case; (ii) whether the services resulted in a significant and

demonstrably positive benefit to the estate; and (iii) whether the services duplicated the efforts

by others. *Trade Creditor Group v. L. J. Hooker Corp.* (*In re Hooker Invs., Inc.*), 188 B.R. 117,

120 (S.D.N.Y. 1995), *aff'd*, 104 F.3d 349 (2d Cir. 1996); *In re Bethlehem Steel Corp.*, 2003 WL

21738964, at *6 (Bankr. S.D.N.Y., July 28, 2003).

       41.     Further, courts exercise their discretion and examine the totality of the

relevant facts when determining whether services substantially contribute in a chapter 11 case.

*See In re U.S. Lines*, 103 B.R. at 430 (discussing the role of the court in determining substantial

contribution issues); *see also In re 9085 E. Mineral Bldg.*, 119 B.R. at 253 (awarding

compensation where applicant's efforts, when "viewed as a whole," made a substantial

contribution to the debtor's estate).  Applying these substantial contribution factors as a whole,

Highland is entitled to reimbursement of the Administrative Claim because it has conferred an

actual and demonstrable benefit to the Debtors' estates.

## A.      Highland Provided a Substantial, Tangible and Cognizable Benefit to the Estates

       42.     Highland produced a demonstrable benefit to the Debtors' estates by

objecting to the First Appaloosa EPA while making a $4.7 billion proposal that competed with

the First Appaloosa EPA. The result was the Amended First Appaloosa EPA.  Thereafter, in July

of 2007, Highland's renewed interest in acquiring the Debtors was used by the Debtors in their

negotiations with Appaloosa that led to the Second Appaloosa EPA, resulting in a confirmed

plan. Since enactment of the Bankruptcy Code, courts have found that applicants have conferred

an actual and demonstrable benefit to a chapter 11 case where the applicant can show that it

opposed an earlier plan or settlement, and as a result, the court ultimately confirmed a more

favorable plan or settlement. *See In re Baldwin-United Corp.*, 79 B.R. 321, 344 (Bankr. S.D.

Ohio 1987) (awarding substantial contribution claim in a case where creditor's initial bid drew

competing bids); *see also In re McLean Indus., Inc.*, 88 B.R. 36, 39 (Bankr. S.D.N.Y. 1988) (awarding substantial contribution claim in a case where a creditor's objection led to an increase in a bid).  Highland did just that.

**(i)     Highland's Actions Resulted in a More Favorable Investment Agreement for the Debtors' Estates Prior to Court Approval of the Amended First Appaloosa EPA**

43.     Highland's efforts in these Cases resulted in a benefit for the Debtors' estates in the form of an agreement with Appaloosa on more favorable terms under the Amended First Appaloosa EPA. Courts in the Second Circuit have routinely granted applications under Bankruptcy Code section 503(b)(3) where the applicant has demonstrated that it provided a benefit to the debtor's estate.  *See, e.g.*, *In re McLean Indus.*, 88 B.R. at 39 (awarding substantial contribution claim fees upon finding a benefit conferred upon the estate).

44.     Highland put forth the only moneyed alternative proposal to the Debtors for the Debtors' benefit, in opposition to the initial Appaloosa deal. By objecting to the First Appaloosa EPA and submitting its own proposal, Highland benefitted the Debtors by creating a bidding environment resulting in concrete benefits to the Debtors as described in the Debtors' Omnibus Reply. (Debtors' Omnibus Reply, Jan. 11, 2007.)[29]

45.     These benefits realized by the Debtors' estates were a direct result of Highland's $4.7 billion bid.  No party besides Highland even indicated a desire to present an alternative proposal to the First Appaloosa EPA.  But for the Highland Objection filed in the context of Highland's $4.7 billion alternative investment proposal, Appaloosa would not have had any economic incentive to agree to the modifications reflected in the Amended First Appaloosa EPA. Thus, Highland provided a substantial contribution to the Cases.

---

[29]     Docket No. 6531.

**(ii)     Highland's Actions Resulted in a More Favorable Investment Agreement for the Debtors' Estates Prior to Court Approval of the Second Appaloosa EPA**

46.     Additionally, Highland's participation in negotiations and bidding following the Debtors' termination of the Amended First Appaloosa EPA resulted concrete benefits to the Debtors' stakeholders as reflected in the Second Appaloosa EPA. Courts have granted creditors' substantial contribution requests where the applicant opposed a plan or settlement, and as a result of that objection, the court ultimately confirmed a more favorable plan or settlement.  In *Hall Fin. Group*, 106 F.3d at 670, 673-74, the Fifth Circuit found that an applicant had made a substantial contribution by filing a competing plan and setting off a bidding war with the debtor partially resulting in the availability of an additional $3 million for distribution to creditors under the prevailing plan of reorganization. *See also Roberts v. Petroleum World, Inc.* (*Ex parte Roberts*), 93 B.R. 442, 444-45 (D.S.C. 1988) (affirming bankruptcy court's finding that creditor made a substantial contribution by opposing plan that failed to provide for payment of interest to unsecured creditors and plan ultimately confirmed provided for such payments).

47.     Highland objected to the First Appaloosa EPA because it was, as originally proposed, too overreaching and dilutive of creditors' and equity holders' interests. Highland also felt that Appaloosa was getting too much control of the Debtors for the price that it was paying.

48.     As to the Second Appaloosa EPA in July of 2007, Highland's involvement again created a competitive bidding environment with Appaloosa.  A competitive bidding environment is used by debtors to enhance their recoveries.  Indeed, the Debtors here used the competitive environment to negotiate the Second Appaloosa EPA which led to a confirmed plan.

B.    **Highland's Efforts Went Above and Beyond the Protection of Its Interests as a Creditor or Equity Holder**

49.    Highland's actions in the Cases cannot be viewed as merely the actions of a creditor acting in its own interests.  Although courts in some situations have determined that an applicant is not entitled to a substantial contribution reimbursement because such party is presumed to be acting in its own interest as the creditor or equity holder in the debtor, *see, e.g.*, *In re Villa Luisa, L.L.C.*, 354 B.R. 345, 348 (Bankr. S.D.N.Y. 2006) ("The burden of proving substantial contribution rests on the petitioning creditor and it is exceedingly difficult since the general presumption is that the creditor is acting in its own interest."), any such presumption is rebutted here. Highland's actions were not taken solely to protect its interests as a creditor of the Debtors.

50.    Once the First Appaloosa EPA was announced, Highland pursued and offered a counter proposal to the Debtors because Highland was willing to invest far more and expose itself to greater risk than Appaloosa was, in order to more fairly distribute the Debtors' value for all creditor and equity constituents. Highland's efforts described herein were those of a participant in the Debtors' reorganization who saw an opportunity to create more value for the estate and its stakeholders. In using its position to negotiate with the Debtors for better investment proposals, Highland acted in a capacity more than a mere creditor. Highland sought to provide a better deal than that provided by Appaloosa, for its benefit and that of the Debtors' estate. While courts have noted that unsuccessful bidders are not the most common recipients of administrative claim awards, *see In re Tyson*, 2005 WL 3789356, at *4 (Bankr. S.D.N.Y., June 3, 2005), in this case, Highland's actions were essential to creating the atmosphere in which the Debtors could negotiate workable agreements for the best interests of their stakeholders. In fact, Highland's bid gave teeth to its objections, and to the objections of other parties in interest.

C.    **Highland's Services Were Not Duplicated by Other Parties**

51.    No other party in interest did what Highland did in these Cases.  Highland put forward a $4.7 billion bid and created a competitive bidding environment as a foil to unilateral action by Appaloosa.  Highland's actions were not duplicated by any other constituency in this case.  *In re Dana Corp.*, 390 B.R. at 108; *In re Granite Partners*, 213 B.R. at 446.  Only Highland submitted an alternative investment offer and entered into serious negotiations with the Debtor concerning its alternate proposal.

II.    **Highland Is Entitled to Reimbursement for Professional Services Rendered and Expenses Incurred by Its Professionals in Making a Substantial Contribution**

A.    **The Amounts Incurred by Highland's Professionals Are Reimbursable Under Bankruptcy Code section 503(b)**

52.    Highland is entitled to reimbursement of the reasonable fees and expenses incurred by Haynes and Boone while representing Highland as its legal counsel and Loughlin, Meghji while acting as its financial advisor. Bankruptcy Code section 503(b)(4) specifically provides that an applicant is entitled to, as an administrative expense,

> reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under [section 503(b)(3) of the Bankruptcy Code], based on the time, the nature, comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant […].

11 U.S.C. § 503(b)(4).

53.    As explained above, Highland provided a substantial contribution to these Cases and, thus, is entitled to reimbursement of its actual, necessary costs under Bankruptcy Code section 503(b)(3)(D). Accordingly, because Haynes and Boone and Loughlin, Meghji provided professional services to Highland in these Cases, Highland is entitled to be reimbursed for such reasonable fees and its actual, necessary expenses under section 503(b)(4).

B.    **The Professional Services Provided Were Reasonable and the Expenses Incurred Were Actual, Necessary Costs**

54.    Once a court determines an applicant has made a substantial contribution in a chapter 11 case under section 503(b), the court then must scrutinize the applicant's request for reimbursement of professional services for reasonableness under Bankruptcy Code section 503(b)(4). *See In re Texaco, Inc.*, 90 B.R. 622, 627, 630-32 (Bankr. S.D.N.Y. 1988) (analyzing fees for reasonableness after finding a substantial contribution to the estate). Under Bankruptcy Code section 503(b)(4), as well as section 330 (governing professionals' fees generally), the reasonableness of professional charges is measured based on the time, nature, extent, and value of the services and whether related expenses are actual and necessary. *See* 11 U.S.C. §§ 503(b)(4) and 330.

55.    Throughout these Cases, both Haynes and Boone and Loughlin, Meghji expended a significant amount of time and effort, on behalf of Highland, in making a substantial contribution in these Cases. The professional services provided were rendered in an efficient manner by professionals that have achieved a high degree of expertise in the field of business reorganizations and restructurings. The Administrative Claim is commensurate with compensation allowances in cases of similar size and nature, considering the complexity, importance, and nature of the issues and tasks involved, as well as the timeframe in which those services were provided.

56.    The fees charged by Haynes and Boone for which reimbursement is sought in these Cases were determined in accordance with Haynes and Boone's existing billing rates and procedures in effect during the Compensation Period. Haynes and Boone's rates in these Cases are the same rates they charge for professional and paraprofessional services rendered in comparable bankruptcy and nonbankruptcy related matters. Such fees are reasonable

based on the customary compensation charged by comparably skilled practitioners in comparable cases in a competitive national market.  Loughlin, Meghji's fees were negotiated with Highland and were comparable to similar services rendered.

57.    Highland also seeks reimbursement for expenses incurred by Haynes and Boone and Loughlin, Meghji in providing professional services during the Compensation Period. These expenses are reasonable and necessary in light of the size and complexity of the Debtors' Cases and the proposed investment agreement. Moreover, the expenses are reasonable and necessary given the expedited time frame in which the Framework Motion was prosecuted and the extremely tight schedule for discovery requests and deposition prior to the hearing. This expedited schedule required Haynes and Boone professionals to devote considerable time during the evenings and on weekends to perform legal services on behalf of Highland. Professionals who worked late into the evenings or on weekend were reimbursed for their reasonable meal costs and their transportation costs, and reimbursement is being sought for these items.

58.    In addition, some Haynes and Boone professionals were required to travel to prepare for and attend hearing before this Court and to negotiate with the other constituents in these Cases, and to prepare for and participate in the depositions taken in respect of the Framework Motion. On occasion Loughlin, Meghji professionals were required to travel. These individuals were reimbursed for their airfare, hotel rooms, and other travel-related expenses.

59.    The rates charged by Haynes and Boone for Westlaw and Lexis computerized research varied according to the type of searches conducted.  In addition, some long-distance telephone calls were required and, on several occasions, express delivery of documents and other materials was required as a result of the circumstances of these Cases.

60.     Haynes and Boone's regular practice is not to include the foregoing charges in overhead when establishing billing rates and to charge its clients only for these and other out-of-pocket expenses actually incurred during the regular course of the rendition of services. Haynes and Boone and Loughlin, Meghji made every effort to minimize their expenses in these Cases. The actual expenses incurred in providing professional services were absolutely necessary, reasonable, and justified under the circumstances.

### **CONCLUSION**

61.     For the foregoing reasons, Highland respectfully requests the Court enter an order (i) allowing its Administrative Claim as set forth herein in the total aggregate amount of $2,529,793.59, (ii) directing payment thereof, and (iii) granting such other and further relief as is just and proper.


**[page intentionally left blank]**

## NOTICE

62.     In accordance with the Modification Order, this Application has been served on (i) counsel for the Debtors, (ii) counsel for the Creditors' Committee, and (iii) the United States Trustee for the Southern District of New York.  In light of the nature of the relief requested herein, Highland submits that no other notice is necessary.

Dated: November 20, 2009
          New York, New York

                                   _/s/  Lenard M. Parkins_____
                                   **HAYNES AND BOONE, LLP**
                                   1221 Avenue of the Americas, 26th Floor
                                   New York, New York 10020
                                   Telephone:  (212) 659-7300
                                   Facsimile:  (212) 884-8211
                                   Lenard M. Parkins (NY Bar# 4579124)
                                   Jonathan Hook (NY Bar# 4187449)

                                   **ATTORNEYS FOR HIGHLAND
CAPITAL MANAGEMENT, L.P.**