KENNEDY, JENNIK & MURRAY, P.C.
Thomas M. Kennedy (TK 0993)
Susan M. Jennik (SJ 4607)
113 University Place, 7th floor
New York, NY 10003
Telephone: (212) 358-1500

Attorneys for IUE-CWA

**Objection Date:  To be determined**
**Hearing Date:  To be determined**

------------------------------------------------------------x
UNITED STATES BANKRUPTCY COURT          :
SOUTHERN DISTRICT OF NEW YORK            :
                                                                         :
In re:                                                               :
                                                                         :
DELPHI CORPORATION, et al.,                     :
                                                                         :
                                 Debtors.                   :
------------------------------------------------------------x

Chapter 11

Case No. 05-44481 (RDD)

(Jointly Administered)

## MOTION OF IUE-CWA PURSUANT TO SECTIONS 503(b)(3)(D) AND (b)(4) OF THE BANKRUPTCY CODE FOR ALLOWANCE AND PAYMENT OF FEES INCURRED IN MAKING A SUBSTANTIAL CONTRIBUTION TO THE DEBTORS' CHAPTER 11 CASE

IUE-CWA, by its counsel, Kennedy, Jennik & Murray, P.C., submits this motion ("the

Motion") for the entry of an Order, pursuant to sections 503(b)(3)(D) and (b)(4) of title 11 of the

United States Code ("the Bankruptcy Code") and Rule 2016 of the Federal Rules of Bankruptcy

Procedure, allowing as administrative expenses a portion of the legal fees and expenses incurred

by IUE-CWA during the period from January 3, 2006 to May 6, 2009 (the "Application Period")

in the amount of $1,238,304.85 in connection with the work of Kennedy, Jennik & Murray, P.C.

("the Kennedy Firm") regarding litigation in the Debtors' chapter 11 case.[1]  IUE-CWA requests

---

[1]  The IUE-CWA financial advisor, Chanin Capital Partners, was paid $4,133,333.33 throughout this case.  IUE-CWA is not submitting a claim for this amount since this claim would then be deducted from the total, pursuant to the order approving the payment of the unions' financial advisor fees, and would not affect the result (Docket No. 2224).

reimbursement because it believes it has made a "substantial contribution" to the Chapter 11

case.  In support of this Motion, IUE-CWA respectfully states as follows:

## PRELIMINARY STATEMENT

1.      The IUE-CWA is a labor organization which represented 8,500 employees of

Delphi Corp. ("Delphi") and approximately 3,000 Delphi retirees at the time this bankruptcy

case began.  The IUE-CWA advocated vigorously for the interests of its members and retirees, a

significant constituency in this case.  During this case, IUE-CWA successfully challenged

proposed conduct by the Debtors that would have been harmful to the estate and took part in

litigation and entered into settlements with the Debtors which advantaged the estate and made it

possible for the Debtors to reorganize and emerge from bankruptcy.

2.      The IUE-CWA respectfully submits that its efforts constitute a "substantial

contribution" to the Debtors' estate under § 503(b)(3)(D) of the Bankruptcy Code and that its

request for reimbursement of $1,238,304.85 for fees and expenses incurred should be approved

as an administrative expense of the estate.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and

1334.  Venue of this proceeding and this Motion is proper before this Court pursuant to 28

U.S.C. §§ 1408 and 1409.  This matter is a core proceeding pursuant to 28 U.S.C. §

157(b)(2)(A), (B) and (O).  The statutory predicates for the relief sought herein are §§

503(b)(3)(D) and (b)(4) of the Bankruptcy Code.

**BACKGROUND**

4.      IUE-CWA is a labor organization which represented employees of Delphi Corp.

At the time this case was filed, IUE-CWA represented 8,500 Delphi employees.  From the

beginning of this case, IUE-CWA also played an active role in the litigation of this action.  The

following are the areas in which IUE-CWA made a substantial contribution to the estate:

- Objections to motions authorizing Debtors to implement Key Employee

  Compensation Plans and Management Compensation Plan (Docket Nos. 1164, 1168,

  1333, 2717, 4524, 4630, 4892, 7335, 9467, 1582, 12026, 12156, 12207, 12216);

- Objections to motion for order under 11 U.S.C. § 1113 and 1114 authorizing rejection

  of collective bargaining agreement and under § 1114(g) authorizing modification of

  retiree welfare benefits ("1113-1114 Motion") (Docket Nos. 3332-3336, 3338-3341,

  3343-3344, 3427, 3817, 4364) and negotiation of settlement agreements in resolution

  of the 1113-1114 Motion, including:

  o  The IUE-CWA Memorandum consenting to the sale of the New Brunswick

     Facility and providing for an Attrition Plan for employees at that facility

     (Docket No. 3927, Ex. A);

  o  The IUE-CWA Special Attrition Program Agreement (Docket No. 4461, Ex.

     2);

  o  The Memorandum of Understanding among IUE-CWA, Delphi and General

     Motors Corporation including modification of IUE-CWA collective

     bargaining agreements and retiree welfare benefits for certain IUE-CWA-

     represented retirees (Docket No. 9106, Ex. 1);

  o Consent to the sale of the facilities at Gadsden, Alabama and Kettering, Ohio resulting in a further reduction of the IUE-CWA represented workforce by 600 employees (Docket Nos. 11579 and 13485); and

- Objections to motions for orders authorizing and approving the equity purchase and commitment agreement and the Plan framework support agreement (Docket Nos. 6242, 6496, 6500, 11013).

  5. At great cost to the IUE-CWA members and retirees, as well as to the organization itself, IUE-CWA agreed to a resolution of the 1113-1114 Motion that included plant shut downs, plant sales, modified collective bargaining terms, the elimination of retiree health benefits, and the termination of the Delphi Hourly Pension Plan. The sacrifices made by the IUE-CWA members and retirees substantially contributed to the Debtors' ultimate emergence from bankruptcy.

## RELIEF REQUESTED

### I. IUE-CWA REQUESTS A "SUBSTANTIAL CONTRIBUTION" CLAIM OF $1,238,304.85 FOR REASONABLE AND NECESSARY FEES AND EXPENSES INCURRED IN CONNECTION WITH THIS CASE

  6. By this Motion, IUE-CWA respectfully requests that this Court enter an Order, pursuant to §§ 503(b)(3)(D) and 503(b)(4) of the Bankruptcy Code, allowing as administrative expenses certain fees for services rendered by the Kennedy Firm on behalf of IUE-CWA, and for certain related expenses, in connection with the Debtors' chapter 11 case in the amount of $1,238,304.85. IUE-CWA has not requested reimbursement of all fees of the Kennedy Firm incurred on behalf of IUE-CWA. Rather, IUE-CWA is seeking reimbursement of only fees incurred in the following categories:

4

- Objection to and settlement of the 1113-1114 Motion to modify collective bargaining agreements and retiree medical benefits;

- Objections to proposed management compensation plans;

- Objections to proposed plan and sale agreements that would not have benefited the estate as originally presented; and

Thus, IUE-CWA has tailored its "substantial contribution" motion only to the services provided by the Kennedy Firm, and related expenses, that resulted in a demonstrable benefit to the Debtors' estate in connection with the Plan process. IUE-CWA respectfully submits that the services performed by the Kennedy Firm on behalf of IUE-CWA, and related expenses, for which it seeks reimbursement herein were reasonable, necessary and appropriate, and have resulted in a substantial benefit to the Debtors' estate.

## II.    LEGAL STANDARD FOR DETERMINING WHETHER A SUBSTANTIAL CONTRIBUTION HAS BEEN MADE

7.    Pursuant to § 503(b)(3)(D) of the Bankruptcy Code, this Court may allow, as an administrative expense, the payment of the expenses of a "creditor, an indenture trustee, an equity holder, or a committee representing creditors or equity holders other than a committee appointed under section 1102 of this title, in making a substantial contribution in a case under chapter 9 or 11 of this title." *Cargill Financial Services Corp. v. Envirodyne Industries, Inc.*, 1995 WL 461854, at *3 (N.D. Ill. July 12, 1995): *In re Texaco, Inc.*, 90 B.R. 622, 627 (Bankr. S.D.N.Y. 1988); *In re McLean Industries, Inc.*, 88 B.R. 36, 39 (Bankr. S.D.N.Y. 1988). IUE-CWA is a creditor in this case.

8.    Courts have held that "[t]he basic test of recovery is that a claimant must have made a 'substantial contribution' to the estate as demonstrated by benefit to the estate, the

5

creditors and, to the extent relevant, the stockholders." *McLean Industries,* 88 B.R. at 38; *see also Cargill,* 1995 WL 461854, at *3 ("[C]ourts consider whether the efforts of the applicant resulted in an actual and demonstrable benefit to the debtor's estate"); *In re Woodhall,* 141 B.R. 700, 701 (Bankr. D. Ariz. 1992) ("The principal test for determining whether a compensable contribution has been made is the extent of benefits to the estate.").

9.      Section 503(b)(3)(D) is designed to encourage participation by creditors or other parties-in-interest. *See, e.g., Woodhall,* 141 B.R. at 701; *see also In re Consolidated Banc Shares, Inc.,* 785 F.2d 1249, 1253 (5th Cir. 1986) ("[T]he policy aim of authorizing fee awards to creditors is to promote meaningful creditor participation in the reorganization process").

10.     Courts have also held that actions taken by creditors in opposition to a plan can qualify as a "substantial contribution" to the estate if they materially advance the interests of significant constituencies in the case. In *Texaco,* attorneys for equity holders bringing shareholder derivative actions sought a "substantial contribution" claim for their work in obtaining additional disclosures in the disclosure statement, and pursuing discovery in connection with a chapter 11 plan proposed by the debtor, and otherwise opposing the debtor's plan on behalf of the shareholder plaintiffs. 90 B.R. at 626-28.

11.     The Court agreed that a "substantial contribution had been made by the shareholder plaintiffs. The Court stated that it "finds that the work performed by some of the Derivative Attorneys, which resulted in adequate disclosure to the shareholders and elucidation of the acts, was a substantial contribution to the debtors' Chapter 11 cases." *Id.* at 629; *see also In re Rail Pass Express, Inc.,* 227 B.R. 136, 138 (Bankr. S.D. Ohio 1998) (holding that a "substantial contribution" claim was warranted for creditor's work in opposing debtor's plan.)

12.    Unions have been found to have made substantial contributions in bankruptcy cases where they agreed to wage concessions allowing the debtor to successfully reorganize. *In re Asarco LLC,* 2007 WL 4132680 (Bankr. S.D. Texas Aug. 23, 2007); *In re Trans World Airlines, Inc.,* 1993 WL 559245 (D. Del. June 22, 1993); *see also In re Bethlehem Steel Corp. v. v. Bethlehem Steel Corp.,* 2003 WL 21738964, at *12 (S.D.N.Y. July 28, 2003) (Mukasey, J.) (approving the Bankruptcy Court's decision to allow the debtor to reimburse the United Steelworkers for attorneys fees incurred during the course of the case because the finding that "the transaction was in the best interests of Bethlehem and all parties in interest was not clearly erroneous.")

13.    In this case, the Debtors have recognized that the union negotiations and resulting agreements substantially contributed to the Debtors.  Section G(5) of the IUE-CWA Memorandum of Understanding states:

> The parties also acknowledge that (i) the consideration provided by IUE-CWA pursuant to this Agreement and all attachments to this Agreement constitutes a substantial contribution to Delphi's plan or [sic] reorganization, (ii) that this contribution is necessary to the success of Delphi's plan of reorganization, and (iii) IUE-CWA would not have made this contribution without obtaining the terms and releases provided for herein.

(Docket No. 9106, Ex. A.)

## III.    THE IUE-CWA HAS MADE A SUBSTANTIAL CONTRIBUTION TO THE DEBTORS' CHAPTER 11 CASES

14.    IUE-CWA played an active role in litigating significant issues in these cases.  By its participation in many motions before this Court, IUE-CWA made substantial contributions in the interests of the Debtors' estate and other creditors.

7

### A.    Objections to Proposed Management Compensation Plans

15.    IUE-CWA filed objections to Debtors' motions authorizing them to implement a
Key Employee Compensation Plan ("KECP") (Docket Nos. 1164, 1168, 1333, 2717, 4524, 4630,
4892, 7335, 9467).  In each case, IUE-CWA argued that the implementation of a KECP was
inappropriate, not within the sound business judgment of the Debtors, and imprudent.  IUE-
CWA pointed out that the award of bonuses to executives would undermine the Debtors'
successful emergence since it would interfere with collective bargaining negotiations in which
the Debtors were seeking substantial concessions from unionized employees.  Union employees
would certainly perceive that it was unfair for them to shoulder the burden of reorganizing the
Debtors, while the executives who were responsible for managing the business were being
rewarded while the Debtors were in bankruptcy.

16.    The important role of IUE-CWA regarding Debtors' proposed management
compensation plans was most evident with the Debtors' motions for approval of a Plan of
Reorganization which included a management compensation plan and a salaried employee
compensation program which would have resulted in $80 million being paid to approximately
400 employees. IUE-CWA played a leading role in challenging these proposed plans (Docket
Nos. 11582, 12026, 12156, 12207, 12216).  During the discovery process and the hearing before
this Court, IUE-CWA counsel presented essential evidence of the flaws in the process used by
the Debtors to develop the proposed plans.  This Court reduced the emergence bonuses to $16.5
million rather than the $87 million proposed by the Debtors (Docket No. 12478).

### B.    Objection to and Settlement of 1113-1114 Motion

17.    IUE-CWA vigorously prosecuted its objection to the 1113-1114 Motion seeking
rejection of collective bargaining agreements and modification of retiree welfare benefits

(Docket Nos. 3332-3336, 3338-3341, 3343-3344, 3427, 3817).   The IUE-CWA again played a leading role in the discovery process relating to the 1113-1114 Motion. Its lengthy objection to the 1113-1114 Motion argued that Debtors had not satisfied the requirements of the Bankruptcy Code because it had not attempted to negotiate with the IUE-CWA.  Ultimately, the 1113-1114 Motion was withdrawn and the Debtors entered into meaningful negotiations with the IUE-CWA resulting in the IUE-CWA MOU and other agreements including:

- The IUE-CWA Memorandum consenting to the sale of the New Brunswick Facility and providing for an Attrition Plan for employees at that facility (Docket No. 3927, Ex. A.)  The Memorandum was approved by this Court on June 26, 2006, stating:

> The Debtors have demonstrated good, sufficient, and sound business purpose and justification in that, among other things, the Debtors and their advisors diligently and in good faith analyzed the terms and conditions of the IUE-CWA Memorandum … and determined that the terms and conditions thereof and in particular the terms and conditions of the IUE-CWA New Brunswick Attrition Plan … set forth in the IUE-CWA Memorandum is an appropriate plan under the circumstances and is in the best interests of the Debtors, their estates, and their creditors.

(Docket No. 4363 at 5.)

- A special attrition program providing incentives for employees to take voluntary retirements and offering buyouts to employees who resigned from Delphi.  IUE-CWA submitted a statement in support of the Debtors' Motion for approval of the IUE-CWA Special Attrition Program (Docket No. 4364).  The IUE-CWA Special Attrition Program Agreement was approved by this Court with a finding that it was "in the best interests of the Debtors, their estates, their creditors, and other parties in interest" (Docket No. 4461 at 3.)  Pursuant to the Special Attrition Program Agreement approximately 6,000 employees agreed to leave the employment of Delphi, reducing the IUE-CWA represented employees to 2,000 (Docket No. 3038, ¶ 11).

9

- The Memorandum of Understanding among IUE-CWA, Delphi and General Motors Corporation including modification of IUE-CWA collective bargaining agreements and retiree welfare benefits for certain IUE-CWA-represented retirees was also approved by this Court as being in the best interests of the Debtors' and other parties in interest. (Docket No. 9106 at 2). Pursuant to the Memorandum of Understanding, the IUE-CWA agreed to significant modification of the collective bargaining agreements, including the cessation of accrual of pension benefits under the Delphi HRP; the elimination of any future entitlement to retiree health benefits, except as provided for by the GM Benefit Guaranty; and significantly reduced employee wages. (Docket No. 9106, Ex. 1, Att. A.) These modifications were projected to save Delphi billions of dollars.

- Consent to the sale of the facilities at Gadsden, Alabama and Kettering, Ohio resulting in a further reduction of the IUE-CWA represented workforce by 600 employees. (Docket Nos. 11579 and 13485.)

## C.    Objections to Plan of Reorganization Motions

18.    IUE-CWA filed a limited objection to Debtors' motion for order authorizing and approving the equity purchase and commitment agreement ("EPCA") pursuant to §§ 105(a), 363(b), 503(b) and 507(a) and the Plan framework support agreement pursuant to §§ 105(a), 363(b) and 1125(e) (Docket No. 6179) to contest payments to proposed investors in the Debtors upon reorganization. IUE-CWA objected to payment of commitment fees in excess of $76 million, expenses of $13 million, an alternate transaction fee in excess of $100 million, extraordinarily broad corporate governance powers to be granted to the proposed investors and the Debtors' indemnification obligations to the proposed investors (Docket Nos. 6242, 6496,

6500). The EPCA was modified regarding the provisions of the commitment fee and the IUE-CWA resolved its objection (Docket Nos. 6832, 7118).

19.     IUE-CWA filed an objection to the motion for order under 11 U.S.C. §§ 105(a), 363(b), 503(b) and 507(a) authorizing and approving amendment to Delphi-Appaloosa equity purchase and commitment agreement opposing the lock-up arrangements the Debtors were making with the proposed investors so that none of them could participate in any alternative investment plans to the detriment of the creditors (Docket No.11013).  Again, the EPCA modified and the IUE-CWA objection was resolved (Docket No. 11389).

## IV.    THE FEES AND RELATED EXPENSES INCURRED BY IUE-CWA WERE ACTUAL, REASONABLE AND NECESSARY

20.     Once a court has determined that a creditor has made a substantial contribution to a chapter 11 case, the court must consider the reasonableness and appropriateness of the attorneys' fees and expenses requested.  11 U.S.C. § 503(b)(4); *see also, Texaco,* 90 B.R. at 631-32; *In re Nine Associates, Inc.,* 76 B.R. 943, 945 (S.D.N.Y. 1987).  The fees and related expenses incurred by the IUE-CWA were actual, reasonable and appropriate.

21.     IUE-CWA is only seeking reimbursement in connection with a limited amount of the Kennedy Firm's services rendered in connection with these cases.  IUE-CWA is not seeking reimbursement for the Kennedy Firm's services rendered to IUE-CWA as a member of the Unsecured Creditors' Committee or for communications with and among IUE-CWA representatives.  The request for reimbursement is limited to the negotiation of settlement agreements with the Debtors and litigation in which IUE-CWA played a role.

22.     The Kennedy Firm has provided substantial backup for the fees incurred for which IUE-CWA requests reimbursement.  The Kennedy Firm has maintained detailed written

records of the time expended by its attorney in the rendition of their professional services to IUE-CWA. Such time records were generated contemporaneously with the performance of the professional services described therein and in the ordinary course of the Kennedy Firm's practices. The individual time records were recorded by the attorney who rendered the described service. The Kennedy Firm has provided a schedule of the time records maintained by the Kennedy Firm of the hours worked and the charges incurred for which IUE-CWA seeks reimbursement (Exhibit A). The total time spent by all attorneys during the Application Period was 2,695.65 hours of legal service to IUE-CWA for a total charge of $1,185,701.25 calculated in accordance with the hourly rates to which IUE-CWA had agreed. The related expenses total $52,603.60.

23.    The fees sought herein are based upon hourly rates generally paid for services of this kind. IUE-CWA respectfully submits that the fees sought herein are relatively modest given the complexity of this case, the interests served by IUE-CWA, the dollar amounts at issue and the benefits obtained by the services. Accordingly, IUE-CWA respectfully submits that the fees sought herein are "reasonable compensation for professional services rendered" under § 503(b)(4) of the Bankruptcy Code and should be approved.

## NOTICE

24.    Pursuant to Rule 2002(a)(6) of the Federal Rules of Bankruptcy Procedure and Notice of (A) Order Approving Modification To First Amended Joint Plan Or Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtor-In-Possession And (B) Occurrence Of Effective Date (Docket No. 18958, at 4), notice of this Application has been

given to counsel for the Debtors, the Creditors' Committee and United States Trustee for the

Southern District of New York.

WHEREFORE, IUE-CWA respectfully requests that this Court enter an order,

substantially in the form of the proposed order attached hereto, granting this Motion and

allowing as administrative expenses the fees and related expenses incurred by IUE-CWA for the

work of the Kennedy Firm in the aggregate amount of $1,238,304.85 and granting such other and

further relief as may be just and proper.


Dated: November 19, 2009
      New York, NY


                    Respectfully submitted,

                    Kennedy, Jennik & Murray, P.C.
                    Counsel for IUE-CWA


                    By: _____
                        Thomas M. Kennedy (TK 0993)
                        Susan M. Jennik (SJ 4607)
                    113 University Place, 7th floor
                    New York, NY  10003
                    Tel. (212) 358-1500