UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

_____  x

In re:                                :          Chapter 11
                                      :
    DELPHI CORPORATION,               :
                                      :          Case No. 05-44481(RDD)
              *et al.*,               :
                                      :          Jointly Administered
              Debtors.                :
_____  x

## FINAL APPLICATION OF W.Y. CAMPBELL & COMPANY FOR
## COMPENSATION AND REIMBURSEMENT EXPENSES

Name of Applicant:                                    W.Y. Campbell & Company

Authorized to Provide Professional Services to:       DELPHI CORPORATION, et al.

Date of Retention:                                    As of September 1, 2006

Period for which interim compensation
and reimbursement are sought:                         October 1, 2007 through January 25, 2008

Period for which final compensation and
reimbursement are sought:                             September 1, 2006 through January 25, 2008

Amount of compensation (not previously approved)
sought as actual, reasonable, and necessary:          $ 190,322.50

Amount of expense reimbursement
(not previously approved) sought as
actual, reasonable, and necessary:                    $ 5,015.72

This is a(n):            ___ Monthly        __ Interim        _X_ Final Application

If this is not the first application filed, disclose the following for prior application:

| Date Filed | Period Covered | Requested Fees | Requested Expenses | Approved Fees | Approved Expenses |
|---|---|---|---|---|---|
| 7/10/2007 | 9/2006 – 5/2007 | $450,000.00 | $53,778.18 | $450,000.00 | $52,149.21 |
| 11/30/2007 | 6/2007 – 9/2007 | $200,000.00 | $ 7,979.74 | $200,000.00 | $ 7,979.74 |

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————————————  x

In re:                                              :          Chapter 11
                                                    :
        DELPHI CORPORATION,                         :
                                                    :          Case No. 05-44481(RDD)
                    *et al.*,                       :
                                                    :          Jointly Administered
                        Debtors.                    :
————————————————————————  x

## FINAL APPLICATION OF W.Y. CAMPBELL & COMPANY FOR COMPENSATION AND REIMBURSEMENT EXPENSES

W.Y. Campbell & Company ("W.Y. Campbell") as financial advisor and investment banker for Delphi Corporation and its Subsidiaries and Affiliates (collectively, "Delphi") as Debtors and Debtors-in-Possession in the above captioned cases (the "Reorganization Cases"), submits this Final Application (the "Final Application") seeking interim and final allowance and payment of compensation for the period from October 1, 2007 through the confirmation date, January 25, 2008 (the "Application Period") as well as final allowance of $650,000 in fees and $60,128.95 in expenses previously approved by this Court on an Interim Basis under (i) 11 U.S.C. §§ 330 and 331 (the "Bankruptcy Code"), (ii) Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (iii) Administrative Order M-150, Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Case (the "Amended Guideline"), (iv) the Order of this Court dated November 4, 2005 as amended (the "Fee Order") establishing Monthly Compensation and Reimbursement of Expenses of Chapter 11 Professionals, and (v) the Order of this Court, dated December 4, 2006 (the "Retention Order") Authorizing Retention of W.Y. Campbell & Company as Investment

Banker and Financial Advisor for the Debtors, *nunc pro tunc* to September 1, 2006. See **Exhibit A**, Retention Order.

As more fully described below, W.Y. Campbell submits this Final Application for allowance of compensation for professional services as financial advisors and investment bankers rendered by W.Y. Campbell to Delphi. W.Y. Campbell certifies that the Debtors and their reorganization counsel have received a copy of this Final Application and that a copy has been served on the office of the U.S. Trustee and Counsel for the Official Committee of Unsecured Creditors. In support of this Final Application, W.Y. Campbell respectfully represents as follows:

## **BACKGROUND**

1.      On October 8, 2005 (the "Initial Filing Date"), Delphi and certain of its U.S. subsidiaries (the "Initial Filers") filed voluntary petitions in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1130, as amended (the "Bankruptcy Code"). On October 14, 2005, three additional U.S. subsidiaries of Delphi (together with the Initial Filers, collectively, the "Debtors") also sought reorganization relief. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(b) and 1108 of the Bankruptcy Code. This court entered orders directing the joint administration of the Debtor's chapter 11 cases (docket nos. 28 and 404).

2.      On October 17, 2005, the Office of the United States Trustee appointed an official committee of unsecured creditors. No trustee or examiner has been appointed in the Debtors' cases.

2

3.    On May 5, 2006 the Bankruptcy Court entered its Order (Docket No. 3630) establishing a Fee Committee, which thereafter established its Fee Protocol.

4.    The Bankruptcy Court entered its Order (Docket No. 12359 ) confirming Debtors' Plan of Reorganization on January 25, 2008 (the "Confirmation Date").

### RETENTION OF W.Y. CAMPBELL

5.    By letter agreement dated October 17, 2006, and amended as of November 16, 2006 (the "Engagement Letter"), the Debtors retained W.Y. Campbell to assist Debtors with the formulation, analysis, negotiation, and implementation of the divestiture or other strategic initiatives relating to the Debtors' Mount Business.  A copy of the Engagement Letter is attached as **Exhibit B**.

6.    W.Y. Campbell refers this Court to the Engagement Letter for a full recitation of its terms.  In sum, Debtors retained W.Y. Campbell to:

      a.    to the extent deemed desirable by the Debtors, identify, review, evaluate, and initiate potential M&A Transactions or other transactions;

      b.    to the extent W.Y. Campbell deems necessary, appropriate, and feasible, or as the Company may request, review and analyze the assets and the operating and financial strategies of the Mount Business;

      c.    assist in the definition of objectives related to value and terms of divestiture;

      d.    assist in identification of the Mount Business' proprietary attributes;

      e.    assist in the identification and solicitation of appropriate transaction parties;

      f.    prepare and distribute confidentiality agreements and appropriate descriptive selling materials (to include Offering Memorandums, Management Presentations, and other documentation as may be required or appropriate);

      g.    the initiation of discussions and negotiations with prospective transaction parties;

3

h.  assist the Company and its other professionals in reviewing and evaluating the terms of any proposed M&A Transactions or other transaction, in responding thereto and, if directed, in developing and evaluating alternative proposals for an M&A Transaction or other transaction, whether in connection with a Plan or otherwise;

i.  review and analyze any proposals the Company receives from third parties in connection with an M&A Transaction and other transactions;

j.  assist or participate in negotiations with the parties in interest in connection with an M&A Transaction or other transaction;

k.  advise and attend meetings of the Company's Board of Directors, creditor groups, official constituencies and other interested parties, as the Company may determine to be necessary or desirable;

l.  if requested, participate in hearings before the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") or such district or other bankruptcy courts as the Company may request and provide relevant testimony with respect to the matters described herein and issues arising with respect thereto in connection with any proposed Plan;

m.  assist the Debtors' internal and external counsel to enable counsel to provide legal advise to the Company; and

n.  render such other financial advisory and investment banking services as may be reasonably requested by the Company in connection with any of the foregoing.

## COMPENSATION

7.  Pursuant to the Engagement Letter and as more fully set forth in Retention Order, in consideration for the services provided to the Debtors, the Debtors have agreed to pay W.Y. Campbell the following amounts, pursuant to Section 328 of the Bankruptcy Code, and subject to the final approval of the Bankruptcy Court:

a.  Commencing as of the effective date of the Engagement letter, and whether or not a M&A Transaction is proposed or consummated, a cash advisory fee (the "Monthly Fee") of $50,000 per month payable by the Company in advance on the first day of each month.

b.  A fee (the "M&A Fee") equal to the greater of (i) product of (A) the Aggregate Consideration as defined on Exhibit C to the Engagement letter

        times (b) 1.75%, or (ii) $1,250,00.00.  The M&A Fee shall be due and payable upon the closing of such M&A Transaction.

c.      To the extent that services of the type described in Paragraph 5(L) are requested, representative of W.Y. Campbell shall be paid $750 per hour for all time spent testifying at such hearings and shall not be paid for preparation time or time spent in court while not testifying.

d.      To the extent the Debtors request W.Y. Campbell to perform additional services not contemplated by this Agreement, such additional fees shall be mutually agreed upon by W.Y. Campbell and the Debtors, in writing, in advance.

8.      Pursuant to the Engagement Letter and the Retention Order, the Debtors will reimburse W.Y. Campbell for reasonable out-of-pocket expenses incurred in connection with the provision of services under the Engagement Letter, including, without limitation, the reasonable fees, disbursements and other charges of W.Y. Campbell's outside counsel.  Out-of-pocket expense include expenses incurred in connection with travel and lodging, data processing and communication charges, database, research, postage and courier services.

9.      W.Y. Campbell has submitted monthly statement of fees and disbursements covering the period for October 2007, November 2007, December 2007, and January 2008 (through the Confirmation Date) seeking $152,258.00 representing 80% of its Monthly Advisory Fees from October 2007 through January 25, 2007 and $5,015.72 in out-of-pocket expenses to (i) the Debtors, (ii) counsel for the Debtors, (iii) counsel for the official committee of unsecured creditors, (iv) the Office of the United States Trustee, (v) counsel for the agent under the Debtors' pre-petition credit facility, (vi) counsel for the agent under the Debtors' post-petition credit facility and (vii) members of any Committee appointed in these cases for the purpose of reviewing fees and expenses.

## RELIEF REQUESTED

10.     By this Application, W.Y. Campbell seeks an Order (i) granting interim an d final allowance and approval of compensation for services rendered during Application Period consisting of $190,322.50 of fees plus the reimbursement of reasonable and necessary expenses incurred by W.Y. Campbell during the Application Period in the amount of $5,015.72, (ii) authorizing and directing the Debtors to make payments in respect of 100% of such fees, to the extent not yet received by W.Y. Campbell for the Application Period, including, without limitation, the 20% holdback amount withheld pursuant to the terms of the Fee Order, (iii) authorizing and directing the Debtors to pay 100% of such expenses, to the extent not yet received by W.Y. Campbell for the Application Period, and (iv) granting final allowance and approval of compensation for services rendered by W.Y. Campbell beginning in September 2006 through September 30, 2007 consisting o $650,000 of fees plus reimbursement of reasonable and necessary expenses incurred in the amount of $60,128.95 as set forth in (a) the First Interim Fee Application of W.Y. Campbell filed on July 10, 2007 [Docket No. 8511] and approved on an interim basis by the Court in an Order dated October 29, 2007 [Docket No. 10753] and (b) the Second Interim Fee Application of W.Y. Campbell filed on November 30, 2007 [Docket No. 11166] and approved on an interim basis by the Court in an Order dated February 25, 2008 [Docket No. 12909].

11.     W.Y. Campbell performed all services for which it seeks compensation for and on behalf of the Debtors.  W.Y. Campbell has not entered into any agreement, express or implied, with any party in interest for the purpose of fixing or sharing fees or other compensation to be paid for professional services rendered in these cases.

12.     Attached as **Exhibit C** are invoices for the total compensation and expenses sought by W.Y. Campbell for the Application Period and a breakdown of W.Y. Campbell's

6

expenses incurred during the Application Period. Attached as **Exhibit D** are daily time logs detailing the activities and services performed by W.Y. Campbell on behalf of the Debtors during the Application Period. The resumes of key professional of W.Y. Campbell providing services to the Debtors are attached as **Exhibit E**.

<u>**LEGAL BASIS FOR REQUESTED COMPENSATION**</u>

13.     W.Y. Campbell is entitled to receive the fees requested in accordance with the express terms of the Engagement Letter and the provisions of Section 328(a) of the Bankruptcy Code which permits a debtor, with the Court's approval, to employ a professional person "on reasonable terms and conditions of employment, including on a retainer, on an hourly basis, or on a contingent fee basis." 11 U.S.C. § 328(a).

14.     Moreover, Section 330 of the Bankruptcy Code provides for the award of compensation to professionals "subject to" the provisions of Section 328 of the Bankruptcy Code. 11 U.S.C. § 330.

15.     Congress intended Section 328(a) to enable debtors to retain professionals pursuant to specific fee arrangements to be determined at the time of the court's approval of the retention, subject to reversal only if the terms are found to be improvident in light of "developments not capable of being anticipated at the time of the fixing of such terms and conditions." 11 U.S.C. § 328(a). <u>See also</u> *Donaldson, Lufkin, & Jenrette Sec. Corp. v. Nat'l Gypsum Co.*, 123 F.3d 861, 862-63 (5th Cir. 1997)("[I]f the most competent professionals are to be available for complicated capital restructuring and the development of successful corporate reorganization, they must know what they will receive for their expertise and commitment.").

16.     Pursuant to the Retention Order, this Court approved the retention of W.Y. Campbell under the terms of the Engagement Letter, subject to the standard of review provided under Section 328(a). <u>See</u> Exhibit A at ¶ 4.

17.    The compensation for services rendered during the Application Period has been earned and is due and payable in full under the terms of the Engagement Letter. W.Y. Campbell submits that there have been no developments since the entry of the Retention Order that were "not capable of being anticipated" and that would justify any modification to the terms of W.Y. Campbell's retention. Thus, W.Y. Campbell submits that the fees and expense reimbursements sought should be allowed and approved by the Court under Sections 328(a) and 330 of the Bankruptcy Code.

18.    Senior level professionals with extensive experience in the area of investment banking and bankruptcy have directed W.Y. Campbell's team. The services rendered by W.Y. Campbell have been performed by Andre A. Augier, Managing Director; Kurt Haras, Director; Gregory McGowan, Senior Associate; and Alexander Schroeder, Analyst. W.Y. Campbell's assigns seniors bankers, experienced junior bankers, and financial analysts to each restructuring assignment. In this case, Andre A. Augier has overall responsibility for the case. His responsibilities include developing strategy with respect to the case, directing negotiations, and interfacing with other senior professionals involved with the case. Kurt Haras is responsible for the day-to-day coordination of the case and the review of the financial analyses. As the experienced junior banker on the case, Gregory McGowan assists in the day-to-day coordination of the case and performs, with the analyst Alexander Schroeder, extensive financial analyses. Mr. Augier, Mr. Haras, Mr. McGowan, and Mr. Schroeder coordinate their actions so as not to duplicate efforts. Given the different roles of these professionals and overlapping responsibilities, there are times where it is appropriate for two or more bankers to be present at a meeting.

8

19.     The amount of fees and expenses sought in this application and W.Y. Campbell's billing process are consistent with market practices for investment banking firms both in and out of a bankruptcy context.

20.     W.Y. Campbell does not bill its clients based on the number of hours expended by its professionals.  It generally bills its client on a retainer basis (generally monthly), plus a transaction fee or fee based upon completion.  As a result, W.Y. Campbell does not have hourly rates for its professionals and W.Y. Campbell's professionals generally do not maintain time records for the work performed for its client.  Consistent with the terms of the Retention Order, however, W.Y. Campbell has maintained daily time logs detailing the activities and services performed by its professionals on behalf of the Debtors, in half-hour increments, during the Application Period.  A copy of these records is attached as **Exhibit D**.

21.     In light of the complexity of this case, as well as the corporate and financial structure of the Debtors, the amount of activity during the Application Period, and the level of services rendered by W.Y. Campbell to the Debtors, W.Y. Campbell considers the compensation sought both fair and reasonable.  In addition, it is consistent with the terms of the Engagement Letter.

## SUMMARY OF SERVICES RENDERED

22.     All services rendered by W.Y. Campbell during the Application Period were performed at the request or direction of the Debtors or legal professionals of Skadden, Arps, Slate, Meagher, & Flom LLP ("Skadden") or O'Melveny & Myers LLC ("O'Melveny").

23.     During the Application Period, W.Y. Campbell has provided a broad range of necessary financial advisory services with respect to the formulation, analysis, negotiation, and implementation of the divestiture of the Debtors' Powertrain and Suspension Mounts Product Line.

24.    In sum, W.Y. Campbell continued with its efforts to actively market the Debtors' Mount Business to prospective buyers and engaged in negotiations with these prospective buyers.  Through this process, W.Y. Campbell successfully narrowed the interested parties into concrete prospective buyers ready and willing to actively negotiate the best offer for the Debtors' Mount Business which will result in the highest and best offer for this estate of the Debtors' estate.  During the Application Period, W.Y. Campbell identified a Buyer Group for Debtors' Mount Business and actively negotiated on behalf of the Debtors' with this Buyer Group.  As of January 25, 2008 W.Y. Campbell & Company had identified a party that was interested in acquiring the Debtors' Powertrain and Suspension Mounts Product Line.  The interested party was performing a due diligence analysis of the Powertrain and Suspension Mounts Product Line and was in the process of scheduling facility tours and interviews with management.  This work is described in further detail in the monthly time sheets submitted by W. Y. Campbell & Company, attached as **Exhibit D**.

## EXPENSES INCURRED DURING THE APPLICATION PERIOD

25.    W.Y. Campbell incurred reasonable and necessary out-of-pocket expenses aggregating $5,015.72.  Details of the expenses incurred during the Application Period are also provided in **Exhibit C**.  W.Y. Campbell submits that all such expenses were necessarily incurred, are reasonable in the amount and represent only the actual costs incurred.

26.    W.Y. Campbell charges for expenses to the Debtors are determined in the same manner as for clients in non-bankruptcy matters.  Out-of-pocket expenses incurred by W.Y. Campbell are charged to a client or are otherwise necessary in connection with services rendered for such particular client.  W.Y. Campbell does not factor general overhead expenses into disbursements charged to clients in connection with Chapter 11 cases.  W.Y. Campbell follows

10

its general internal policies with respect to out-of-pocket expenses billed to the Debtors as set

forth below, with any exceptions fully explained:

(a)    W.Y. Campbell's general policy permits its employees to bill lunch or dinner meals to a client if the employee is required to provide services to the client during such mealtime due to extreme time constraints. W.Y. Campbell's employees are permitted to order meals in the office if required to work after 8:00 p.m. on weekdays or more than five (5) consecutive hours on weekends or holidays. Meal expenses incurred during meetings which employees and other meeting participants are required to attend are billed at cost.

(b)    Messengers and couriers are used by W.Y. Campbell to deliver hard copy documents relating to a client matter, which require receipt on an expedited basis; otherwise W.Y. Campbell uses the regular postal system. Any charges for either messengers or couriers are billed to the client at cost.

(c)    All airfare and other transportation charges incurred by W.Y. Campbell's employees directly in connection with services to the client are billed to client at cost.

(d)    The research/database category consists of the cost of using databases to which W.Y. Campbell subscribes to search for and obtain information used in W.Y. Campbell's financial analyses. W.Y. Campbell pays the vendor's standard rate for such database services. In certain instances, W.Y. Campbell has determined that paying a flat annual or monthly fee for such services is less costly than contracting for such services on a per use basis. Such annual or monthly services are allocated to clients based on such clients' use of each service. The research category also consists of charges from outside services, which supply, for a fee, financial documents from regulatory agencies, which cannot be obtained from databases subscribed to by W.Y. Campbell.

(e)    W.Y. Campbell bills photocopying charges at the rate of $.10 per page for black and white copies and $1.00 per page for color copies.

(f)    With respect to local travel, W.Y. Campbell's general policy enables employees to travel by car, to and from meetings while rendering services to a client on a client related matter, for which the client is charged. W.Y. Campbell's employees are not permitted to charge personal commuting expenses to a client unless the employee is traveling after 8:00 p.m. and has been required to work late as a result of the time exigencies of that client's matters.

(g)    Telephone expenses are charged based on W.Y. Campbell's actual costs of telephone charges with respect to client matters. Cellular phone charges are based on vendor's actual invoices.

**CONCLUSION**

Beginning in September 2006 and through the confirmation date, W.Y. Campbell continued to rendered substantial services to Debtors related to the Debtors' Mount Business including formulating, analyzing, negotiating, and implementing strategic initiatives which were substantial and instrumental to Debtors in furtherance of their restructuring efforts. W.Y. Campbell respectfully submits that the compensation requested by this application is reasonable in light of the nature and value of the services provided to the Debtors.

WHEREFORE, W.Y. Campbell respectfully requests that this Court enter an Order (i) granting interim an d final allowance and approval of compensation for services rendered during Application Period consisting of $190,322.50 of fees plus the reimbursement of reasonable and necessary expenses incurred by W.Y. Campbell during the Application Period in the amount of $5,015.72, (ii) authorizing and directing the Debtors to make payments in respect of 100% of such fees, to the extent not yet received by W.Y. Campbell for the Application Period, including, without limitation, the 20% holdback amount withheld pursuant to the terms of the Fee Order, (iii) authorizing and directing the Debtors to pay 100% of such expenses, to the extent not yet received by W.Y. Campbell for the Application Period, and (iv) granting final allowance and approval of compensation for services rendered by W.Y. Campbell beginning in September 2006 through September 30, 2007 consisting o $650,000 of fees plus reimbursement of reasonable and necessary expenses incurred in the amount of $60,128.95 as set forth in (a) the First Interim Fee Application of W.Y. Campbell filed on July 10, 2007 [Docket No. 8511] and approved on an interim basis by the Court in an Order dated October 29, 2007 [Docket No. 10753] and (b) the Second Interim Fee Application of W.Y. Campbell filed on November 30, 2007 [Docket No.

11166] and approved on an interim basis by the Court in an Order dated February 25, 2008

[Docket No. 12909].


Dated:  Detroit, MI
        November 30, 2009

                                        W.Y. CAMPBELL & CO

                                        By: _____
                                            Andre Augier, Managing Director

DETROIT 21924-17 1035067v1

# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                        :
            In re                       :    Chapter 11
                                        :
DELPHI CORPORATION, et al.,             :    Case No. 05-44481 (RDD)
                                        :
                          Debtors.  :    (Jointly Administered)
                                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - -x
```

ORDER UNDER 11 U.S.C. §§ 327(a)
AND 328 AUTHORIZING EMPLOYMENT AND
RETENTION OF W.Y. CAMPBELL & COMPANY AS
FINANCIAL ADVISOR AND INVESTMENT BANKER
TO DEBTORS NUNC PRO TUNC TO SEPTEMBER 1, 2006

("W.Y. CAMPBELL RETENTION ORDER")

Upon the application, dated November 6, 2006 (the "Application"), of Delphi

Corporation and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the

above-captioned cases (collectively, the "Debtors"), for an order (the "Order") under 11 U.S.C.

§§ 327(a) and 328 authorizing the employment and retention of W.Y. Campbell & Company

("Campbell") as financial advisor and investment banker to the Debtors as of September 1, 2006;

and upon this Court having determined that the relief requested in the Application is in the best

interests of the Debtors, their estates, their creditors, and other parties-in-interest; and this Court

being satisfied that Campbell is disinterested and represents no interest adverse to the Debtors or

their estates as to the matters upon which Campbell is to be engaged; and it appearing that proper

and adequate notice of the Application has been given and that no other or further notice is

necessary; and after due deliberation thereon; and good and sufficient cause appearing therefor, it

is hereby

ORDERED, ADJUDGED, AND DECREED THAT:

1.      The Application is GRANTED.

2.      Pursuant to 11 U.S.C. §§ 327(a) and 328, the Debtors are authorized to employ and retain Campbell as financial advisor and investment banker to the Debtors on the terms set forth in the Engagement Letter and the amendment to the Engagement Letter (together, the "Letter Agreement"), nunc pro tunc to September 1, 2006.  A copy of the Letter Agreement is attached hereto as Exhibit 1.

3.      Campbell shall file fee applications for interim and final allowance of compensation and reimbursement of expenses pursuant to the procedures set forth in sections 330 and 331 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code"), any applicable Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York (the "Local Rules"), any orders of this Court, and any procedures as may be fixed by order of this Court.

4.      Subject to the following paragraph, the compensation and reimbursement of expenses to be paid to Campbell shall be in accordance with the terms of the Letter Agreement, which fees and expense reimbursements shall not hereafter be subject to challenge except under the standard of review under section 328(a) of the Bankruptcy Code.

5.      The Office of the United States Trustee retains all rights to object to Campbell's fee applications (including expense reimbursements) in respect of fees and expenses accruing during Campbell's engagement pursuant to this Order, on all grounds, including, but not limited to, the reasonableness standard provided for in section 330 of the Bankruptcy Code.

6.    All requests of Campbell for payment of indemnity pursuant to the Letter Agreement shall be made by means of an application (interim or final as the case may be) and shall be subject to review by this Court to ensure that payment of such indemnity conforms to the terms of the Letter Agreement and is reasonable based on the circumstances of the litigation or settlement in respect of which such indemnity is sought.

7.    In no event shall Campbell or any of the Indemnified Parties (as defined in the Letter Agreement) be indemnified if a court determines by a final order that such claim for indemnification arose out of Campbell's or such Indemnified Party's own bad faith, self-dealing, breach of fiduciary duty (if any), gross negligence, or willful misconduct.

8.    In the event that Campbell seeks reimbursement for attorneys' fees from the Debtors pursuant to the Letter Agreement, the invoices and supporting time records from such attorneys shall be included in Campbell's own applications (both interim and final), and such invoices and time records shall be subject to the Office of the United States Trustee's guidelines for compensation and reimbursement of expenses and the approval of this Court under the standards of sections 330 and 331 of the Bankruptcy Code without regard to whether such attorneys have been retained under section 327 of the Bankruptcy Code and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code.

9.    To the extent that any term of this Order is inconsistent with the Letter Agreement, such term of this Order shall govern.

10.    Notwithstanding anything to the contrary in the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, any orders of this Court, or any guidelines regarding submission and approval of fee applications, Campbell and its professionals (a) shall only be required to maintain contemporaneous time records for services rendered in one-half-hour

increments, and (b) except as otherwise set forth in the Letter Agreement, shall not be required to conform to or provide any schedule of hourly rates.

11.    This Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

12.    The requirement under Local Rule 9013-1(b) for the service and filing of a separate memorandum of law is deemed satisfied by the Application.

Dated:   New York, New York
         December 4, 2006

                                   /s/Robert D. Drain
                                   UNITED STATES BANKRUPTCY JUDGE

**Exhibit 1**
**Letter Agreement**



## W. Y. CAMPBELL & COMPANY
INVESTMENT BANKING

ONE WOODWARD AVENUE • 26TH FLOOR • DETROIT, MI 48226
313-496-9000 • 313-496-9001 FAX

October 17, 2006

Robert J. Dellinger
Executive Vice President &
   Chief Financial Officer
Delphi Corporation
5725 Delphi Drive
Troy, Michigan 48098-2815

Dear Mr. Dellinger:

This letter agreement (this "Agreement"), by and among Delphi Corporation (together with its direct and indirect subsidiaries, the "Company") and W.Y. Campbell & Company ("Campbell"), shall confirm the terms and conditions of the retention of Campbell as financial advisor and investment banker to the Company in connection with a possible M&A Transaction (as defined below) and/or other transaction or series of transactions involving the Mount Business of the Company, effective as of September 1, 2006.  As used herein, the term "Mount Business" shall mean collectively, the Company's assets, liabilities and business involving the engineering, manufacturing or selling of power train or suspension mounts anywhere in the world.

**Section 1.   Services to be Rendered.** In connection with the formulation, analysis, negotiation and implementation of the divestiture or other strategic alternatives relating to the Mount Business, whether pursuant to an M&A Transaction, any series or combination of transactions or otherwise, Campbell will perform the following services, and, in connection therewith advise the Company, as requested by the Company (collectively, the "Services"):

   (a)    to the extent deemed desirable by the Company, identify, review, evaluate and initiate potential M&A Transactions or other transactions;

   (b)    to the extent Campbell deems necessary, appropriate and feasible, or as the Company may request, review and analyze the assets and the operating and financial strategies of the Mount Business;

   (c)    assist in the definition of objectives related to value and terms of divestiture;

   (d)    assist in identification of the Mount Business' proprietary attributes;

   (e)    assist in the identification and solicitation of appropriate transaction parties;

(f)    prepare and distribute of confidentiality agreements and appropriate descriptive selling materials (to include Offering Memorandums, Management Presentations, and other documentation as may be required or appropriate);

(g)    the initiation of discussions and negotiations with prospective transaction parties;

(h)    assist the Company and its other professionals in reviewing and evaluating the terms of any proposed M&A Transaction or other transaction, in responding thereto and, if directed, in developing and evaluating alternative proposals for an M&A Transaction or other transaction, whether in connection with a Plan (as defined below) or otherwise;

(i)    review and analyze any proposals the Company receives from third parties in connection with an M&A Transaction or other transaction;

(j)    assist or participate in negotiations with the parties in interest in connection with an M&A Transaction or other transaction;

(k)    advise and attend meetings of the Company's Board of Directors, creditor groups, official constituencies and other interested parties, as the Company determines to be necessary or desirable;

(l)    if requested, participate in hearings before the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") or such district or other bankruptcy courts as the Company may request and provide relevant testimony with respect to the matters described herein and issues arising with respect thereto in connection with any proposed Plan (as defined below);

(m)    assist the Company's internal and external counsel to enable such counsel to provide legal advice to the Company, as contemplated under Section 7 hereof; and

(n)    render such other financial advisory and investment banking services as may be reasonably requested by the Company in connection with any of the foregoing.

As used herein, the term "M&A Transaction" shall mean, collectively, whether accomplished in whole or in part pursuant to a plan of reorganization (a "Plan") confirmed in connection with the Chapter 11 cases (the "Chapter 11 Case") commenced on October 8, 2005 and October 14, 2005 by the Debtors listed on Exhibit A hereto ("Debtors"), via a Section 363 Sale, a creditor's sale, or otherwise, (i) any merger, consolidation, reorganization, recapitalization, financing, refinancing, business, combination or other transaction pursuant to which the Mount Business (or control thereof) is acquired by, or combined with, any person, group of persons, partnership, corporation or other entity (an "Acquirer"), or (ii) any acquisition, directly or indirectly, by an Acquirer (or one or more persons acting in concert together with an Acquirer pursuant to a written agreement or otherwise), whether in a single transaction, multiple related transaction, or a series of related transactions, of (A) a majority of the assets or operations of the Mount Business, or (B) any outstanding or newly issued shares of the Company's capital stock or any securities convertible into, or options, warrants or other rights to acquire such capital stock or other equity securities of the Company, for the

2



purpose of effecting a recapitalization or change of control of the Mount Business, or (iii) any transaction similar to the foregoing. Notwithstanding the foregoing, an M&A Transaction does not include a transaction involving the acquisition of substantially all of the Company's existing business, whether pursuant to the acquisition of stock or assets under a plan of reorganization or a sale of substantially all of the Company's assets under Section 363 of the Bankruptcy Code under which the Mount Business remains with the reorganized Debtor(s) and/or acquired business regardless of whether the equity of the reorganized Debtor(s) is owned by the existing shareholders, its employees and/or pre-petition creditors; provided, however, that notwithstanding such acquisition of the stock or assets of the Company's business, the provisions in Section 9 hereof shall remain fully enforceable against the Company or its estate following such acquisition in the event the acquirer subsequently undertakes an M&A Transaction with a third party during the eighteen (18) month period set forth in Section 9 hereof.

In performing its services pursuant to this Agreement, and notwithstanding anything to the contrary herein, Campbell is not assuming any responsibility for the Company's decision to pursue (or not to pursue) or to effect (or not to effect) any M&A Transaction, or other transaction; provided that nothing contained herein shall increase the Company's obligations set forth in Exhibit B hereto. Campbell shall not have any obligation or responsibility to provide accounting, audit, "crisis management" or business consultant services to the Company, and shall have no responsibility for designing or implementing operating, organizational, administrative, cash management or liquidity improvements.

Section 2.  Information Provided by the Company.

(a)    The Company will cooperate with Campbell and furnish to, or cause to be furnished to, Campbell any and all information reasonably available to the Company which Campbell deems appropriate to enable Campbell to render services hereunder (all such information being the "Information"). The Company recognizes and confirms that Campbell (i) will use and rely on the information and on information available from generally recognized public sources in performing the services contemplated by this Agreement without having assumed any obligation to verify independently any such information; (ii) does not assume responsibility for the accuracy or completeness of the information provided by the Company and such other information, and (iii) will not act in the official capacity of appraiser of specific assets of the Company or any other party. Each party confirms that the information to be furnished by it, when delivered, to the best of its knowledge will be true and correct in all material respects, will be prepared in good faith, and will, to the knowledge of the delivering party, not contain any material misstatement of fact or omit to state any material fact. Each party will promptly notify the other party if it learns of any material inaccuracy or misstatement in, or material omission from, any information theretofore it delivered to the other party. The Company acknowledges that in the course of this engagement it may be necessary for Campbell and the Company to communicate electronically.

(b)    Each party acknowledges that although it will use commercially reasonable procedures to check for the most commonly known viruses, the electronic transmission of information cannot be guaranteed to be secure or error-free. Furthermore such information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete or otherwise be adversely affected or unsafe to use. Accordingly, each

3



party agrees that the other party shall have no liability with respect to any error or omission arising from or in connection with: (i) the electronic communication of information; or (ii) the other party's reliance on such information.

**Section 3. Application for Retention of Campbell.** Campbell and the Company hereby acknowledge that the Debtors will apply promptly to the Bankruptcy Court pursuant to Sections 327(a) and 328(a) of the Bankruptcy Code, Rule 2014 of the Federal Rules of Bankruptcy Procedure, applicable local rules and procedural orders of the Bankruptcy Court and procedural guidelines established by the Office of the United States Trustee, for approval of this Agreement and Campbell's retention by the Debtors under the terms of this Agreement, *nunc pro tunc* to September 1, 2008, the effective date of this Agreement, substantially in the form of the order attached hereto as Exhibit C (the "Retention Order"). The Debtors shall continue to use their best efforts to obtain Bankruptcy Court approval and authorization of this Agreement, subject only to the subsequent review by the Bankruptcy Court under the standard of review provided in Section 328(a) of the Bankruptcy Code, and not subject to the standard of review set forth in Section 330 of the Bankruptcy Code, except as otherwise provided in the Retention Order. Campbell shall not have any obligation to provide any services under this Agreement unless its retention under the terms of this Agreement is approved by entry of a final order in substantially the form of the Retention Order.

Campbell acknowledges that in the event that the Bankruptcy Court approves its retention by the Debtors pursuant to the application process described in this Section 3, payment of Campbell's fees and expenses hereunder shall be subject to the jurisdiction and approval of the Bankruptcy Court under Section 328(a) of the Bankruptcy Code and any order approving such Advisor's retention except as otherwise provided in the Retention Order. In the event that Campbell's engagement hereunder is approved by the Bankruptcy Court, the Company shall pay all fees and expenses hereunder as promptly as practicable in accordance with the terms hereof and the Retention Order. In so seeking Campbell's retention under Section 328(a) of the Bankruptcy Code, the Company acknowledges that it believes that Campbell's general professional experience and expertise, its knowledge of the industry in which the Company operates and the capital markets and its merger and acquisition capabilities will inure to the benefit of the Company in pursuing any M&A Transaction or other transaction that the value to the Company of Campbell's services hereunder derives in substantial part from that expertise and experience and that, accordingly, the structure and amount of the Monthly Fees, the M&A Fee, (as each is defined below), the expense reimbursements provided for herein and the indemnification and exculpation provisions provided herein and in Exhibit B hereto are reasonable regardless of the number of hours to be expended by Campbell's professionals in performance of the services to be provided hereunder.

**Section 4. Campbell's Fees.** Subject to the provisions of the Retention Order, as compensation for the services rendered hereunder, the Company, and its successors, if any, agree to pay to Campbell (via wire transfer or other mutually acceptable means) the following fees in cash. All amounts to which Campbell becomes entitled under this Agreement, including all fees payable under this Section 4 and Exhibit C hereto, all expense reimbursements payable under Section 8 hereof and any amounts that become payable under Section 8 hereof and Exhibit B hereto, shall be paid directly to Campbell.

4



(a)    Commencing as of the effective date of this letter, and whether or not a M&A Transaction is proposed or consummated, a cash advisory fee (the "Monthly Fee") of $50,000 per month payable by the Company in advance on the date hereof and on the first day of each subsequent month, which in the aggregate shall not under any circumstance be less than $600,000.

(b)    A fee (the "M&A Fee") equal to the greater of (i) product of (A) the Aggregate Consideration as defined on Exhibit C hereto, times (B) 1.75%, or (ii) $1,250,000.  The M&A Fee shall be due and payable in cash upon the closing of such M&A Transaction.

(c)    To the extent that services of the type described in Section 1(i) are requested representatives of Campbell shall be paid $750 per hour for all time spent preparing for, attending or testifying at such hearings.

(d)    To the extent the Company requests Campbell to perform additional services not contemplated by this Agreement, such additional fees as shall be mutually agreed upon by Campbell and the Company, in writing, in advance.

The Company and Campbell acknowledge and agree that (i) the hours worked, (ii) the results achieved and (iii) the ultimate benefit to the Company of the work performed, in each case, in connection with this engagement, may be variable, and that the Company and Campbell have taken such factors into account in setting the fees hereunder; provided, however, that with respect to the hours worked, Campbell shall devote whatever resources as are required to fulfill the purposes of this engagement on a timely basis.

**Section 5.** <u>Credit</u>.  Campbell shall credit against the M&A Fee 100% of the aggregate Monthly Fees.

**Section 6.** <u>Expenses</u>. Without in any way reducing or affecting the Monthly Fees, the M&A Fee or the provisions of Exhibit B hereto, and subject to the provisions of the Retention Order, the Company shall reimburse Campbell for its reasonable expenses incurred in connection with the performance of its engagement hereunder, and the enforcement of this Agreement, including without limitation the reasonable fees, disbursements and other charges of Campbell's counsel. Reasonable expenses shall also include, but not be limited to, expenses incurred in connection with travel and lodging, data processing and communication charges, data base, research, postage and courier services. Consistent with and subject to final approval by the Bankruptcy Court and subject to the provisions of the Retention Order, the Company shall promptly reimburse Campbell for such expenses under this Section 6 upon presentation of an invoice or other similar documentation with reasonable detail. The Company has advised Campbell regarding its expense reimbursement guidelines, and Campbell agrees to comply with such guidelines in the understanding that the Company shall only be obligated to make reimbursements for expenses consistent with such guidelines.

**Section 7.** <u>Sharing of Information with Counsel</u>.  As you are aware, the Company has also retained the law firm of Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden") to provide legal advice to the Company in connection with the legal aspects of the Chapter 11 Case and the M&A Transactions that may occur. The Company also employs inside counsel to advise the Company on those same matters. The Company believes that

5

from time to time information or analyses prepared by Campbell may be required to enable Skadden and/or the Company's inside counsel to render appropriate legal services and advice to the Company. The Company also anticipates that from time to time privileged communications may need to be shared with Campbell in order to permit Campbell to provide the most comprehensive advice to the Company and to counsel to the Company in order to support such counsel's provision of legal advice to the Company. In addition, the Company and Campbell share a common interest for this purpose, and the Company intends that any such sharing of privileged information will occur only in pursuit of such common interest and without waiver of the attorney-client privilege or of any other privileges that may apply.

This letter will confirm Campbell's agreement that, to the extent directed by the Company, Campbell will provide information or advice within its field of expertise to assist Skadden and the Company's inside counsel in rendering legal services or advice to the Company.

This letter will also confirm the parties' agreement that, to the extent privileged information is shared with Campbell, such sharing is made solely for the purpose of facilitating Campbell's provision of services pursuant to this Agreement and in recognition that Campbell and the Company share a common interest for that purpose. Campbell will maintain the confidentiality of all privileged communications that are shared with it and will not disclose such privileged matters to any other person without the consent of the Company or as required by law or by court order. In order to assist Campbell in this regard, the Company agrees that privileged communications that are shared with Campbell will be labeled as such.

**Section 8. Indemnity.** Subject to the provisions of the Retention Order, the Company agrees to the provisions of Exhibit B hereto which provides for indemnification and exculpation by the Company of Campbell and certain related persons. Such indemnification and exculpation is an integral part of this Agreement and the terms thereof are incorporated by reference as if fully stated herein. Such indemnification and exculpation shall survive any termination, expiration or completion of this Agreement or Campbell's engagement hereunder.

**Section 9. Term.** The term of Campbell's engagement shall extend until the later of the consummation of an M&A Transaction, provided that this Agreement may be terminated by either the Company or Campbell at any time, with or without cause, effective upon receipt of written notice. If terminated, Campbell shall be entitled to payment of any fees for any monthly periods which are due and owing to Campbell upon the effective date of termination (including the minimum fee under Section 4(a)), and Campbell will be entitled to reimbursement of any and all reasonable expenses described in Section 6. Termination of Campbell's engagement hereunder shall not affect or impair the Company's continuing obligation to indemnify Campbell and certain related persons as provided in Exhibit B. Without limiting any of the foregoing, if this Agreement is terminated by the Company (other than for a material breach thereof which is not cured within a reasonable period of time, after receipt by Campbell of written notice thereof), the M&A Fee shall be payable in the event that an M&A Transaction for which an M&A Fee would otherwise be due under this Agreement is closed at any time prior to the expiration of eighteen (18) months after such termination, or a letter of intent or definitive agreement with respect thereto is executed at any time prior to eighteen (18) months

6



after such termination (which letter of intent or definitive agreement subsequently results in the consummation at any time of an M&A Transaction).

Section 10. Miscellaneous.

(a)    *Administrative Expense Priority.* The Company agrees that Campbell's post petition compensation as set forth herein and payments made pursuant to reimbursement and indemnification provisions of this Agreement shall be entitled to priority as expenses of administration under Sections 503(b)(1)(A) and 507(a)(1) of the Bankruptcy Code and shall be entitled to the benefits of any "carve-outs" for professional fees and expenses in effect in such Chapter 11 Cases pursuant to one or more financing orders entered by the Bankruptcy Court on an equal basis with all other professionals. The Company represents that the current "carve-out" which exist are sufficient to satisfy all fees and expenses due Campbell hereunder and all other professionals.

(b)    *Survival, Successors & Assigns.* Sections 4 through 10 hereof, inclusive, including the provisions set forth in Exhibits A and B hereto, shall survive the termination or expiration of this Agreement. The benefits of this Agreement and the indemnification and other obligations of the Company to Campbell and certain related persons contained in Exhibit B hereto shall inure to the respective permitted successors and assigns of Campbell and of the indemnified parties, and the obligations and liabilities assumed in this Agreement and Exhibit B by the Company shall be binding upon its successors and assigns. Campbell shall not have the right to assign any of its rights under this Agreement without the prior written consent of the Company.

(c)    *Benefit of Agreement; No Reliance by Third Parties.* The advice (oral or written) rendered by Campbell pursuant to this Agreement is intended solely for the benefit and use of the Company and its affiliates, and their respective officers and directors in considering the matters to which this Agreement relates, and the Company agrees that such advice may not be relied upon by any other person, used for any other purpose or reproduced, disseminated, quoted or referred to at any time, in any manner or for any purpose without the prior written consent of Campbell, which shall not be unreasonably withheld or delayed, provided that nothing contained herein shall prohibit disclosure of such advice in the event and only to the extent the Company has been advised by counsel that such disclosure is necessary to satisfy applicable legal or regulatory requirements.

(d)    *Nature of Relationship.* The relationship of Campbell to the Company hereunder shall be that of independent contractors and Campbell shall have no authority to bind, represent or otherwise act as agent, executor, administrator, trustee, lawyer or guardian for the Company, nor shall Campbell have the authority to manage money or property of the Company. The parties hereto acknowledge and agree that by providing the services contemplated hereunder, Campbell will not act, nor will it be deemed to have acted, in any managerial or fiduciary capacity whatsoever with respect to the Company or any third party including security holders, creditors or employees of the Company.

(e)    *Public Announcements.* With the prior written consent of the Company, which shall not be unreasonably withheld, the Company acknowledges that Campbell may at its option and expense, after announcement of an M&A Transaction or other

7



transaction, place announcements and advertisements or otherwise publicize such transaction in such financial and other newspapers and journals as it may choose, stating that Campbell acted as financial advisor and investment banker to the Company in connection with such transaction. The Company further consents to Campbell's public use or display of the Company's logo, symbol or trademark as part of Campbell's general marketing or promotional activities after the announcement of an M&A Transaction, provided that such use or display is in the nature of a public record or tombstone announcement in relation to such transaction, and, provided further, that the Company approves of such announcements, advertising or other publication, which approval shall not be unreasonably withheld.

(f)     CHOICE OF LAW: JURISDICTION. THIS AGREEMENT HAS BEEN NEGOTIATED, EXECUTED AND DELIVERED AT AND SHALL BE DEEMED TO HAVE BEEN MADE IN MICHIGAN. THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, WITHOUT GIVING EFFECT TO SUCH STATE'S PRINCIPLES OF CONFLICTS OF LAWS.

(g)     Waiver of Jury Trial. Each of the parties hereto hereby knowingly, voluntarily and irrevocably waives any right it may have to a trial by jury in respect of any claim upon, arising out of or in connection with this Agreement, any M&A Transaction, or other transaction. Each of the parties hereto hereby certifies that no representative or agent of any other party hereto has represented expressly or otherwise that such party would not seek to enforce the provisions of this waiver. Each of the parties hereto hereby acknowledges that it has been induced to enter into this Agreement by and in reliance upon, among other things, the provisions of this paragraph.

(h)     Entire Agreement. This Agreement embodies the entire agreement and understanding of the parties hereto and supersedes any and all prior agreements, arrangements and understandings relating to the matters provided for herein. No alteration, waiver, amendment, change or supplement hereto shall be binding or effective unless the same is set forth in writing signed by a duly authorized representative of each of the parties hereto.

(i)     Authority. Subject to entry of the Retention Order, each party hereto represents and warrants that it has all requisite power and authority to enter into this Agreement, including Exhibits A and B attached hereto and to consummate the transactions contemplated hereby. Subject to entry of the Retention Order, each party hereto further represents that this Agreement has been duly and validly authorized by all necessary corporate action and has been duly executed and delivered by each of the parties hereto and constitutes the legal, valid and binding agreement thereof, enforceable in accordance with its terms. Campbell will assume that any instructions, notices or requests have been properly authorized by the Company if they are given or purported to be given by a director, officer, employee or authorized agent of the Company, or by a person that is reasonably believed by Campbell to be a director, officer, employee or authorized agent of the Company.

(j)     Counterparts. This Agreement may be executed in as many counterparts as may be deemed necessary and convenient, and by the different parties hereto on separate counterparts, each of which when so executed shall be deemed an original, but all such counterparts shall constitute one and the same instrument. Delivery of an

8



executed counterpart of a signature page to this Agreement by telecopy shall be
effective as delivery of a manually executed counterpart to this Agreement.

If the foregoing correctly sets forth the understanding and agreement between Campbell
and the Company, please so indicate by signing the enclosed copy of this letter,
whereupon it shall become a binding agreement between the parties hereto as of the
date first above written.

Sincerely

W. Y. CAMPBELL & COMPANY

William Y. Campbell
Managing Director

Confirmed and agreed by:

DELPHI CORPORATION

BY: _____

Its: _EVP &/CFO_____

On: _10-19-06_____

9

## Exhibit A

### Debtors

Delphi Corporation, ASEC Manufacturing General Partnership, ASEC Sales General Partnership, Aspire, Inc., Delco Electronics Overseas Corporation, Delphi Automotive Systems (Holding), Inc., Delphi Automotive Systems Global (Holding), Inc., Delphi Automotive Systems Human Resources LLC, Delphi Automotive Systems International, Inc., Delphi Automotive Systems Korea, Inc., Delphi Automotive Systems LLC, Delphi Automotive Systems Overseas Corporation, Delphi Automotive Systems Risk Management Corp., Delphi Automotive Systems Services LLC, Delphi Automotive Systems Tennessee, Inc., Delphi Automotive Systems Thailand, Inc., Delphi China LLC, Delphi Connection Systems, Delphi Diesel Systems Corp., Delphi Electronics (Holding) LLC, Delphi Foreign Sales Corporation, Delphi Integrated Service Solutions, Inc., Delphi International Holdings Corp., Delphi International Services, Inc., Delphi Liquidation Holding Company, Delphi LLC, Delphi Mechatronic Systems, Inc., Delphi Medical Systems Colorado Corporation, Delphi Medical Systems Corporation, Delphi Medical Systems Texas Corporation, Delphi NY Holdings Corporation, Delphi Services Holding Corporation, Delphi Technologies, Inc., DREAL, Inc., Environmental Catalysts, LLC, Exhaust Systems Corporation, Packard Hughes Interconnect Company, Specialty Electronics, Inc., Specialty Electronics International Ltd., Delphi Furukawa Wiring Systems LLC, Delphi Receivables LLC and MobileAria, Inc.



Exhibit B

Subject to the terms of the Retention Order, Delphi Corporation (collectively with its direct and indirect subsidiaries, the "Company") agrees to indemnify and hold harmless W. Y. Campbell & Company ("Campbell") and its affiliates, counsel and other professional advisors, and the respective directors, officers, controlling persons, agents and employees of each of the foregoing (Campbell and all of such other persons collectively, the "Indemnified Parties"), from and against any losses, claims or proceedings, including without limitation stockholder actions, damages, judgments, assessments, investigation costs, settlement costs, fines, penalties, arbitration awards and any other liabilities, reasonable costs, reasonable fees and reasonable expenses (collectively, "Losses") (a) directly or indirectly related to or arising out of (i) oral or written information provided by the Company, the Company's employees or other agents, which either the Company or an Indemnified Party provides to any person or entity or (ii) any other action or failure to act by the Company, the Company's employees or other agents or any Indemnified Party at the Company's request or with the Company's consent, in each case in connection with, arising out of, based upon, or in any way related to the letter agreement the "Agreement") entered into between the Company and Campbell regarding the retention of Campbell as financial advisor and investment banker to the Company, the retention of and services provided by Campbell under the Agreement, or any M&A Transaction or other transaction pursuant to the Agreement; or (b) otherwise directly or indirectly in connection with, arising out of, based upon, or in any way related to the engagement of Campbell under this Agreement or any transaction or conduct in connection therewith, provided that the Company shall not be required to indemnify an Indemnified Party for such Losses if and only to the extent that it is finally judicially determined by a court of competent jurisdiction that such Losses arose (x) because of the gross negligence, willful misconduct or fraud of such Indemnified Party or (y) because of a material breach of a term or condition of the Agreement by such Indemnified Party.

Subject to the terms of the Retention Order, the Company shall further reimburse any Indemnified Party promptly after obtaining the necessary approval of the Bankruptcy Court, if any, for any reasonable legal or other fees, disbursements or expenses as they are incurred (a) in investigating, preparing or pursuing any action or other proceeding (whether formal or informal) or threat thereof, whether or not in connection with pending or threatened litigation or arbitration and whether or not any Indemnified Party is a party, in each case to the extent relating to Losses for which indemnification is available hereunder (each, an "Action") and (b) in connection with enforcing such Indemnified Party's rights under the Agreement; provided, however, that in the event and only to the extent that it is finally judicially determined by a court of competent jurisdiction that such Losses of such Indemnified Party arose (x) because of the gross negligence, willful misconduct or fraud of such Indemnified Party or (y) because of a material breach of a term or condition of the Agreement by such Indemnified Party, such Indemnified Party will promptly remit to the Company any amounts reimbursed under this paragraph, plus interest at the annual rate of the Prime Rate (as reported in the Wall Street Journal or, if the Wall Street Journal is no longer published, in a similar publication of national distribution) plus 400 basis points, calculated from the date of the Company's reimbursement to the Indemnified Party to the date of the Indemnified Party's repayment to the Company. Similarly, the Company will pay Campbell interest on any payments

11



due under this Exhibit B at the Prime Rate plus 400 basis points from the date such payments are due until paid.

Upon receipt by an Indemnified Party of notice of any Action, such Indemnified Party shall notify the Company in writing of such Action, but the failure to so notify shall not relieve the Company from any liability hereunder (i) if the Company had actual notice of such Action or (ii) unless and only to the extent that the Company is prejudiced thereby. The Company shall have the right to assume the defense of any such Action including the employment of counsel reasonably satisfactory to Campbell and will not, without the prior written consent of Campbell (which shall not be unreasonably withheld or delayed), settle, compromise, consent or otherwise resolve or seek to terminate any pending or threatened Action (whether or not any Indemnified Party is a party thereto) unless such settlement, compromise, consent or termination (a) contains an express, unconditional release of each Indemnified Party which is a party to the Action from all liability relating to such Action and (b) does not include an admission of fault, culpability or a failure to act by or on behalf of any Indemnified Party. Any Indemnified Party shall be entitled to retain separate counsel of its choice and participate in the defense of any Action in connection with any of the matters to which the Agreement relates, but the fees and expenses of such counsel shall be at the expense of such Indemnified Party unless (x) the Company has failed promptly to assume the defense and employ counsel or (y) the named parties to any such Action (including any impleaded parties) include such Indemnified Party and the Company, and such Indemnified Party shall have been advised by counsel that there may be one or more legal defenses available to it which are different from or in addition to those available to the Company; provided, that the Company shall not in such event be responsible under the Agreement for the fees and expenses of more than one firm of separate counsel (in addition to local counsel) in connection with any such Action in the same jurisdiction.

Subject to the terms of the Retention Order, the Company agrees that if any right of any Indemnified Party set forth in the preceding paragraphs is finally judicially determined to be unavailable (except by reason of the gross negligence, wilful misconduct or fraud of such Indemnified Party or because of a material breach of a term or condition of the Agreement by such Indemnified Party), or is insufficient to hold such Indemnified Party harmless against such Losses as contemplated herein, then the Company shall contribute to such Losses (a) in such proportion as is appropriate to reflect the relative benefits received by the Company and its creditors and stockholders, on the one hand, and such Indemnified Party, on the other hand, in connection with the transactions contemplated hereby, and (b) if (and only if) the allocation provided in clause (a) is not permitted by applicable law, in such proportion as is appropriate to reflect not only the relative benefits referred to in clause (a) but also the relative fault of the Company and such Indemnified Party; provided, that, in no event shall the aggregate contribution of all such Indemnified Parties exceed the amount of fees received by Campbell under the Agreement. Benefits received by Campbell shall be deemed to be equal to the compensation paid by the Company to Campbell in connection with the Agreement. Relative fault shall be determined by reference to, among other things, whether any alleged untrue statement or omission or any other alleged conduct relates to information provided by the Company or other conduct by the Company (or the Company's employees or other agents) on the one hand or by Campbell on the other hand.

Subject to the terms of the Retention Order, the Company also agrees that no Indemnified Party shall have any liability (whether direct or indirect, in contract or tort or

otherwise) to the Company for or in connection with advice or services rendered or to be rendered by any Indemnified Party pursuant to the Agreement, the transactions contemplated hereby or any Indemnified Party's actions or inactions in connection with any such advice, services or transactions except for and only to the extent that such Losses of the Company are finally judicially determined by a court of competent jurisdiction to have arisen (x) because of the gross negligence, willful misconduct or fraud of, or (y) because of a material breach of a term or condition of the Agreement by such Indemnified Party in connection with any such advice, actions, inactions or services.

The rights of the Indemnified Parties and the Company hereunder shall be in addition to any other rights that any Indemnified Party or the Company may have at common law, by statute or otherwise. Except as otherwise expressly provided for in the Agreement, if any term, provision, covenant or restriction contained in the Agreement is held by a court of competent jurisdiction or other authority to be invalid, void, unenforceable or against its regulatory policy, the remainder of the terms, provisions, covenants and restrictions contained in the Agreement shall all remain in full force and effect and shall in no way be affected, impaired or invalidated. The reimbursement, indemnity and contribution obligations of the Company set forth herein shall apply to any modification of the Agreement and shall remain in full force and effect regardless of any termination of, or the completion of any Indemnified Party's services under or in connection with, the Agreement.

Nothing contained in this letter agreement is intended to obligate the Company to enter into the Agreement, it being understood and agreed that the Company will not execute the Agreement unless and until the Company is satisfied, in its sole discretion, with the terms and conditions of the Agreement, and all internal approvals which the management of the Company determines are necessary or desirable have been obtained.

13



**Exhibit C**

**W.Y. CAMPBELL & COMPANY**

**Aggregate Consideration Definitions**

For purposes hereof, the term "Aggregate Consideration" shall mean the total amount of all cash, securities, contractual arrangements (including any put or call agreements) and other properties paid or payable, directly or indirectly in connection with an M&A Transaction (including (i) amounts paid pursuant to covenants not to compete, employment contracts, employee benefit plans, management fees or other similar arrangements, and (ii) amounts paid to holders of any warrants, stock purchase rights or convertible securities of the Company and to holders of any options or stock appreciation rights issued by the Company, whether or not vested). Aggregate Consideration shall also include the amount of any short-term debt and long-term liabilities of the Company (including the principal amount of any indebtedness for borrowed money and capitalized leases and the full amount of any off-balance sheet financings) (x) repaid or retired in connection with or in an effort to consummate an M&A Transaction or (y) existing on the Company's balance sheet at the time of an M&A Transaction (if such M&A Transaction takes the form of a merger, consolidation or a sale of stock or partnership interests) or assumed in connection with an M&A Transaction (if such M&A Transaction takes the form of a sale of assets). For purposes of calculating the amount of revolving credit debt in the preceding sentence, the arithmetic mean of the amount of revolving credit debt outstanding on the last day of each month during the 12 months preceding the closing of the M&A Transaction will be used. In the event such M&A Transaction takes the form of a sale of assets, Aggregate Consideration shall include (i) the value of any current assets not purchased, minus (ii) the value of any current liabilities not assumed. In the event such M&A Transaction takes the form of a recapitalization, restructuring, spin-off, split off or similar transaction, Aggregate Consideration shall include the fair market value of (i) the equity securities of the Company retained by the Company's security holders following such M&A Transaction and (ii) any securities received by the Company's security holders in exchange for or in respect of securities of the Company following such M&A Transaction (all securities received by such security holders being deemed to have been paid to such security holders in such M&A Transaction). The value of securities that are freely tradable in an established public market will be determined on the basis of the last market closing price prior to the consummation of an M&A Transaction. The value of securities, lease payments and other consideration that are not freely tradable or have no established public market, or if the consideration utilized consists of property other than securities, the value of such property shall be the fair market value thereof as determined in good faith by Campbell and the Company. Aggregate Consideration shall be deemed to include the face amount of any indebtedness for borrowed money, including, without limitation, obligations assumed, retired or defeased, directly or indirectly, in connection with, or which survive the closing of, such M&A Transaction. If the consideration to be paid is computed in any foreign currency, the value of such foreign currency shall, for purposes hereof, be converted into U.S. dollars at the prevailing exchange rate on the date or dates on which such consideration is payable.

Percentages rounded to two decimal places.

DETROIT 21834-1 866487V7

14



 **W. Y. CAMPBELL & COMPANY**
INVESTMENT BANKING

ONE WOODWARD AVENUE • 26TH FLOOR • DETROIT, MI 48226
313-496-9000 • 313-496-9001 FAX

November 16, 2006

Robert J. Dellinger
Executive Vice President &
 Chief Financial Officer
Delphi Corporation
5725 Delphi Drive
Troy, Michigan 48098-2815

Dear Mr. Dellinger:

As you know, on October 17, 2006, Delphi Corporation (together with its direct and indirect subsidiaries, the "Company") and W.Y. Campbell ("Campbell") entered into a letter agreement to retain Campbell as financial advisor and investment banker to the Company in connection with a possible M&A Transaction and/or other transaction or series of transactions involving the Mount Business of the Company, effective as of September 1, 2006 (the "Engagement Letter").[1]

Section 4(c) of the Engagement Letter is hereby amended to read in its entirety as follows:

" (c)    To the extent that services of the type described in Section 1(l) are requested, representatives of Campbell shall be paid $750 per hour only for time spent testifying at such hearings and shall not be paid for preparation time or time spent in Court while not testifying."

Except as expressly amended hereby, the Engagement Letter is in all respects ratified and confirmed and all the terms thereof shall be and remain in full force and effect.

---

[1]    Capitalized terms used herein and not otherwise defined shall have the meanings assigned to such terms in the Engagement Letter.

Please indicate your agreement with the above amendment by signing the enclosed copy of this letter agreement in the space designated below and returning it to us whereupon this amendment shall be binding upon the parties hereto.

Sincerely,

W. Y. CAMPBELL & COMPANY

/s/ André A. Augier

André A. Augier
Managing Director

Confirmed and agreed by:

DELPHI CORPORATION


BY: /s/ Robert J. Dellinger _____

Its: Executive Vice President & Chief Financial Officer _____

On: November 21, 2006 _____

2

# EXHIBIT B



# W. Y. CAMPBELL & COMPANY
## INVESTMENT BANKING

ONE WOODWARD AVENUE • 26TH FLOOR • DETROIT, MI 48226
313-496-9000 • 313-496-9001 FAX

October 17, 2006

Robert J. Dellinger
Executive Vice President &
  Chief Financial Officer
Delphi Corporation
5725 Delphi Drive
Troy, Michigan 48098-2815

Dear Mr. Dellinger:

This letter agreement (this "Agreement"), by and among Delphi Corporation (together with its direct and indirect subsidiaries, the "Company") and W.Y. Campbell & Company ("Campbell"), shall confirm the terms and conditions of the retention of Campbell as financial advisor and investment banker to the Company in connection with a possible M&A Transaction (as defined below) and/or other transaction or series of transactions involving the Mount Business of the Company, effective as of September 1, 2006. As used herein, the term "Mount Business" shall mean collectively, the Company's assets, liabilities and business involving the engineering, manufacturing or selling of power train or suspension mounts anywhere in the world.

**Section 1.** <u>Services to be Rendered.</u> In connection with the formulation, analysis, negotiation and implementation of the divestiture or other strategic alternatives relating to the Mount Business, whether pursuant to an M&A Transaction, any series or combination of transactions or otherwise, Campbell will perform the following services, and, in connection therewith advise the Company, as requested by the Company (collectively, the "Services"):

(a)    to the extent deemed desirable by the Company, identify, review, evaluate and initiate potential M&A Transactions or other transactions;

(b)    to the extent Campbell deems necessary, appropriate and feasible, or as the Company may request, review and analyze the assets and the operating and financial strategies of the Mount Business;

(c)    assist in the definition of objectives related to value and terms of divestiture;

(d)    assist in identification of the Mount Business' proprietary attributes;

(e)    assist in the identification and solicitation of appropriate transaction parties;

(f)    prepare and distribute of confidentiality agreements and appropriate descriptive selling materials (to include Offering Memorandums, Management Presentations, and other documentation as may be required or appropriate);

(g)    the initiation of discussions and negotiations with prospective transaction parties;

(h)    assist the Company and its other professionals in reviewing and evaluating the terms of any proposed M&A Transaction or other transaction, in responding thereto and, if directed, in developing and evaluating alternative proposals for an M&A Transaction or other transaction, whether in connection with a Plan (as defined below) or otherwise;

(i)    review and analyze any proposals the Company receives from third parties in connection with an M&A Transaction or other transaction;

(j)    assist or participate in negotiations with the parties in interest in connection with an M&A Transaction or other transaction;

(k)    advise and attend meetings of the Company's Board of Directors, creditor groups, official constituencies and other interested parties, as the Company determines to be necessary or desirable;

(l)    if requested, participate in hearings before the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") or such district or other bankruptcy courts as the Company may request and provide relevant testimony with respect to the matters described herein and issues arising with respect thereto in connection with any proposed Plan (as defined below);

(m)    assist the Company's internal and external counsel to enable such counsel to provide legal advice to the Company, as contemplated under Section 7 hereof; and

(n)    render such other financial advisory and investment banking services as may be reasonably requested by the Company in connection with any of the foregoing.

As used herein, the term "M&A Transaction" shall mean, collectively, whether accomplished in whole or in part pursuant to a plan of reorganization (a "Plan") confirmed in connection with the Chapter 11 cases (the "Chapter 11 Case") commenced on October 8, 2005 and October 14, 2005 by the Debtors listed on Exhibit A hereto ("Debtors"), via a Section 363 Sale, a creditor's sale, or otherwise, (i) any merger, consolidation, reorganization, recapitalization, financing, refinancing, business, combination or other transaction pursuant to which the Mount Business (or control thereof) is acquired by, or combined with, any person, group of persons, partnership, corporation or other entity (an "Acquirer"), or (ii) any acquisition, directly or indirectly, by an Acquirer (or one or more persons acting in concert together with an Acquirer pursuant to a written agreement or otherwise), whether in a single transaction, multiple related transaction, or a series of related transactions, of (A) a majority of the assets or operations of the Mount Business, or (B) any outstanding or newly issued shares of the Company's capital stock or any securities convertible into, or options, warrants or other rights to acquire such capital stock or other equity securities of the Company, for the

2



purpose of effecting a recapitalization or change of control of the Mount Business, or (iii) any transaction similar to the foregoing. Notwithstanding the foregoing, an M&A Transaction does not include a transaction involving the acquisition of substantially all of the Company's existing business, whether pursuant to the acquisition of stock or assets under a plan of reorganization or a sale of substantially all of the Company's assets under Section 363 of the Bankruptcy Code under which the Mount Business remains with the reorganized Debtor(s) and/or acquired business regardless of whether the equity of the reorganized Debtor(s) is owned by the existing shareholders, its employees and/or pre-petition creditors; provided, however, that notwithstanding such acquisition of the stock or assets of the Company's business, the provisions in Section 9 hereof shall remain fully enforceable against the Company or its estate following such acquisition in the event the acquirer subsequently undertakes an M&A Transaction with a third party during the eighteen (18) month period set forth in Section 9 hereof.

In performing its services pursuant to this Agreement, and notwithstanding anything to the contrary herein," Campbell is not assuming any responsibility for the Company's decision to pursue (or not to pursue) or to effect (or not to effect) any M&A Transaction, or other transaction; provided that nothing contained herein shall increase the Company's obligations set forth in Exhibit B hereto. Campbell shall not have any obligation or responsibility to provide accounting, audit, "crisis management" or business consultant services to the Company, and shall have no responsibility for designing or implementing operating, organizational, administrative, cash management or liquidity improvements.

### Section 2.    Information Provided by the Company.

(a)    The Company will cooperate with Campbell and furnish to, or cause to be furnished to, Campbell any and all information reasonably available to the Company which Campbell deems appropriate to enable Campbell to render services hereunder (all such information being the "Information"). The Company recognizes and confirms that Campbell (i) will use and rely on the information and on information available from generally recognized public sources in performing the services contemplated by this Agreement without having assumed any obligation to verify independently any such information; (ii) does not assume responsibility for the accuracy or completeness of the information provided by the Company and such other information, and (iii) will not act in the official capacity of appraiser of specific assets of the Company or any other party. Each party confirms that the information to be furnished by it, when delivered, to the best of its knowledge will be true and correct in all material respects, will be prepared in good faith, and will, to the knowledge of the delivering party, not contain any material misstatement of fact or omit to state any material fact. Each party will promptly notify the other party if it learns of any material inaccuracy or misstatement in, or material omission from, any information theretofore it delivered to the other party. The Company acknowledges that in the course of this engagement it may be necessary for Campbell and the Company to communicate electronically.

(b)    Each party acknowledges that although it will use commercially reasonable procedures to check for the most commonly known viruses, the electronic transmission of information cannot be guaranteed to be secure or error-free. Furthermore such information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete or otherwise be adversely affected or unsafe to use. Accordingly, each

3



party agrees that the other party shall have no liability with respect to any error or omission arising from or in connection with: (i) the electronic communication of information; or (ii) the other party's reliance on such information.

**Section 3.  Application for Retention of Campbell.** Campbell and the Company hereby acknowledge that the Debtors will apply promptly to the Bankruptcy Court pursuant to Sections 327(a) and 328(a) of the Bankruptcy Code, Rule 2014 of the Federal Rules of Bankruptcy Procedure, applicable local rules and procedural orders of the Bankruptcy Court and procedural guidelines established by the Office of the United States Trustee, for approval of this Agreement and Campbell's retention by the Debtors under the terms of this Agreement, *nunc pro tunc* to September 1, 2006, the effective date of this Agreement, substantially in the form of the order attached hereto as Exhibit C (the "Retention Order"). The Debtors shall continue to use their best efforts to obtain Bankruptcy Court approval and authorization of this Agreement, subject only to the subsequent review by the Bankruptcy Court under the standard of review provided in Section 328(a) of the Bankruptcy Code, and not subject to the standard of review set forth in Section 330 of the Bankruptcy Code, except as otherwise provided in the Retention Order.  Campbell shall not have any obligation to provide any services under this Agreement unless its retention under the terms of this Agreement is approved by entry of a final order in substantially the form of the Retention Order.

Campbell acknowledges that in the event that the Bankruptcy Court approves its retention by the Debtors pursuant to the application process described in this Section 3, payment of Campbell's fees and expenses hereunder shall be subject to the jurisdiction and approval of the Bankruptcy Court under Section 328(a) of the Bankruptcy Code and any order approving such Advisor's retention except as otherwise provided in the Retention Order.  In the event that Campbell's engagement hereunder is approved by the Bankruptcy Court, the Company shall pay all fees and expenses hereunder as promptly as practicable in accordance with the terms hereof and the Retention Order.  In so seeking Campbell's retention under Section 328(a) of the Bankruptcy Code, the Company acknowledges that it believes that Campbell's general professional experience and expertise, its knowledge of the industry in which the Company operates and the capital markets and its merger and acquisition capabilities will inure to the benefit of the Company in pursuing any M&A Transaction or other transaction that the value to the Company of Campbell's services hereunder derives in substantial part from that expertise and experience and that, accordingly, the structure and amount of the Monthly Fees, the M&A Fee, (as each is defined below), the expense reimbursements provided for herein and the indemnification and exculpation provisions provided herein and in Exhibit B hereto are reasonable regardless of the number of hours to be expended by Campbell's professionals in performance of the services to be provided hereunder.

**Section 4.  Campbell's Fees.** Subject to the provisions of the Retention Order, as compensation for the services rendered hereunder, the Company, and its successors, if any, agree to pay to Campbell (via wire transfer or other mutually acceptable means) the following fees in cash. All amounts to which Campbell becomes entitled under this Agreement, including all fees payable under this Section 4 and Exhibit C hereto, all expense reimbursements payable under Section 8 hereof and any amounts that become payable under Section 8 hereof and Exhibit B hereto, shall be paid directly to Campbell.

4 .



(a)    Commencing as of the effective date of this letter, and whether or not a  M&A Transaction is proposed or consummated, a cash advisory fee (the "Monthly Fee") of $50,000 per month payable by the Company in advance on the date hereof and on the first day of each subsequent month, which in the aggregate shall not under any circumstance be less than $600,000.

(b)    A fee (the "M&A Fee") equal to the greater of (i) product of (A) the Aggregate Consideration as defined on Exhibit C hereto, times (B) 1.75%, or (ii) $1,250,000.  The M&A Fee shall be due and payable in cash upon the closing of such M&A Transaction.

(c)    To the extent that services of the type described in Section 1(i) are requested representatives of Campbell shall be paid $750 per hour for all time spent preparing for, attending or testifying at such hearings.

(d)    To the extent the Company requests Campbell to perform additional services not contemplated by this Agreement, such additional fees as shall be mutually agreed upon by Campbell and the Company, in writing, in advance.

The Company and Campbell acknowledge and agree that (i) the hours worked, (ii) the results achieved and (iii) the ultimate benefit to the Company of the work performed, in each case, in connection with this engagement, may be variable, and that the Company and Campbell have taken such factors into account in setting the fees hereunder; provided, however, that with respect to the hours worked, Campbell shall devote whatever resources as are required to fulfill the purposes of this engagement on a timely basis.

**Section 5.  Credit.**  Campbell shall credit against the M&A Fee 100% of the aggregate Monthly Fees.

**Section 6.  Expenses.**  Without in any way reducing or affecting the Monthly Fees, the M&A Fee or the provisions of Exhibit B hereto, and subject to the provisions of the Retention Order, the Company shall reimburse Campbell for its reasonable expenses incurred in connection with the performance of its engagement hereunder, and the enforcement of this Agreement, including without limitation the reasonable fees, disbursements and other charges of Campbell's counsel. Reasonable expenses shall also include, but not be limited to, expenses incurred in connection with travel and lodging, data processing and communication charges, data base, research, postage and courier services. Consistent with and subject to final approval by the Bankruptcy Court and subject to the provisions of the Retention Order, the Company shall promptly reimburse Campbell for such expenses under this Section 6 upon presentation of an invoice or other similar documentation with reasonable detail. The Company has advised Campbell regarding its expense reimbursement guidelines, and Campbell agrees to comply with such guidelines in the understanding that the Company shall only be obligated to make reimbursements for expenses consistent with such guidelines.

**Section 7.  Sharing of Information with Counsel.**  As you are aware, the Company has also retained the law firm of Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden") to provide legal advice to the Company in connection with the legal aspects of the Chapter 11 Case and the M&A Transactions that may occur. The Company also employs inside counsel to advise the Company on those same matters. The Company believes that

5

from time to time information or analyses prepared by Campbell may be required to enable Skadden and/or the Company's inside counsel to render appropriate legal services and advice to the Company. The Company also anticipates that from time to time privileged communications may need to be shared with Campbell in order to permit Campbell to provide the most comprehensive advice to the Company and to counsel to the Company in order to support such counsel's provision of legal advice to the Company. In addition, the Company and Campbell share a common interest for this purpose, and the Company intends that any such sharing of privileged information will occur only in pursuit of such common interest and without waiver of the attorney-client privilege or of any other privileges that may apply.

This letter will confirm Campbell's agreement that, to the extent directed by the Company, Campbell will provide information or advice within its field of expertise to assist Skadden and the Company's inside counsel in rendering legal services or advice to the Company.

This letter will also confirm the parties' agreement that, to the extent privileged information is shared with Campbell, such sharing is made solely for the purpose of facilitating Campbell's provision of services pursuant to this Agreement and in recognition that Campbell and the Company share a common interest for that purpose. Campbell will maintain the confidentiality of all privileged communications that are shared with it and will not disclose such privileged matters to any other person without the consent of the Company or as required by law or by court order. In order to assist Campbell in this regard, the Company agrees that privileged communications that are shared with Campbell will be labeled as such.

**Section 8.** Indemnity. Subject to the provisions of the Retention Order, the Company agrees to the provisions of Exhibit B hereto which provides for indemnification and exculpation by the Company of Campbell and certain related persons. Such indemnification and exculpation is an integral part of this Agreement and the terms thereof are incorporated by reference as if fully stated herein. Such indemnification and exculpation shall survive any termination, expiration or completion of this Agreement or Campbell's engagement hereunder.

**Section 9.** Term. The term of Campbell's engagement shall extend until the later of the consummation of an M&A Transaction, provided that this Agreement may be terminated by either the Company or Campbell at any time, with or without cause, effective upon receipt of written notice. If terminated, Campbell shall be entitled to payment of any fees for any monthly periods which are due and owing to Campbell upon the effective date of termination (including the minimum fee under Section 4(a)), and Campbell will be entitled to reimbursement of any and all reasonable expenses described in Section 5. Termination of Campbell's engagement hereunder shall not affect or impair the Company's continuing obligation to indemnify Campbell and certain related persons as provided in Exhibit B. Without limiting any of the foregoing, if this Agreement is terminated by the Company (other than for a material breach thereof which is not cured within a reasonable period of time, after receipt by Campbell of written notice thereof), the M&A Fee shall be payable in the event that an M&A Transaction for which an M&A Fee would otherwise be due under this Agreement is closed at any time prior to the expiration of eighteen (18) months after such termination, or a letter of intent or definitive agreement with respect thereto is executed at any time prior to eighteen (18) months

6



after such termination (which letter of intent or definitive agreement subsequently results in the consummation at any time of an M&A Transaction).

Section 10.  Miscellaneous.

(a)  Administrative Expense Priority. The Company agrees that Campbell's post petition compensation as set forth herein and payments made pursuant to reimbursement and indemnification provisions of this Agreement shall be entitled to priority as expenses of administration under Sections 503(b)(1)(A) and 507(a)(1) of the Bankruptcy Code and shall be entitled to the benefits of any "carve-outs" for professional fees and expenses in effect in such Chapter 11 Cases pursuant to one or more financing orders entered by the Bankruptcy Court on an equal basis with all other professionals. The Company represents that the current "carve-out" which exist are sufficient to satisfy all fees and expenses due Campbell hereunder and all other professionals.

(b)  Survival, Successors & Assigns. Sections 4 through 10 hereof, inclusive, including the provisions set forth in Exhibits A and B hereto, shall survive the termination or expiration of this Agreement. The benefits of this Agreement and the indemnification and other obligations of the Company to Campbell and certain related persons contained in Exhibit B hereto shall inure to the respective permitted successors and assigns of Campbell and of the indemnified parties, and the obligations and liabilities assumed in this Agreement and Exhibit B by the Company shall be binding upon its successors and assigns. Campbell shall not have the right to assign any of its rights under this Agreement without the prior written consent of the Company.

(c)  Benefit of Agreement; No Reliance by Third Parties. The advice (oral or written) rendered by Campbell pursuant to this Agreement is intended solely for the benefit and use of the Company and its affiliates, and their respective officers and directors in considering the matters to which this Agreement relates, and the Company agrees that such advice may not be relied upon by any other person, used for any other purpose or reproduced, disseminated, quoted or referred to at any time, in any manner or for any purpose without the prior written consent of Campbell, which shall not be unreasonably withheld or delayed, provided that nothing contained herein shall prohibit disclosure of such advice in the event and only to the extent the Company has been advised by counsel that such disclosure is necessary to satisfy applicable legal or regulatory requirements.

(d)  Nature of Relationship. The relationship of Campbell to the Company hereunder shall be that of independent contractors and Campbell shall have no authority to bind, represent or otherwise act as agent, executor, administrator, trustee, lawyer or guardian for the Company, nor shall Campbell have the authority to manage money or property of the Company. The parties hereto acknowledge and agree that by providing the services contemplated hereunder, Campbell will not act, nor will it be deemed to have acted, in any managerial or fiduciary capacity whatsoever with respect to the Company or any third party including security holders, creditors or employees of the Company.

(e)  Public Announcements. With the prior written consent of the Company, which shall not be unreasonably withheld, the Company acknowledges that Campbell may at its option and expense, after announcement of an M&A Transaction or other

7



transaction, place announcements and advertisements or otherwise publicize such transaction in such financial and other newspapers and journals as it may choose, stating that Campbell acted as financial advisor and investment banker to the Company in connection with such transaction. The Company further consents to Campbell's public use or display of the Company's logo, symbol or trademark as part of Campbell's general marketing or promotional activities after the announcement of an M&A Transaction, provided that such use or display is in the nature of a public record or tombstone announcement in relation to such transaction, and, provided further, that the Company approves of such announcements, advertising or other publication, which approval shall not be unreasonably withheld.

(f)    *CHOICE OF LAW: JURISDICTION.* THIS AGREEMENT HAS BEEN NEGOTIATED, EXECUTED AND DELIVERED AT AND SHALL BE DEEMED TO HAVE BEEN MADE IN MICHIGAN. THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, WITHOUT GIVING EFFECT TO SUCH STATE'S PRINCIPLES OF CONFLICTS OF LAWS.

(g)    *Waiver of Jury Trial.* Each of the parties hereto hereby knowingly, voluntarily and irrevocably waives any right it may have to a trial by jury in respect of any claim upon, arising out of or in connection with this Agreement, any M&A Transaction, or other transaction. Each of the parties hereto hereby certifies that no representative or agent of any other party hereto has represented expressly or otherwise that such party would not seek to enforce the provisions of this waiver. Each of the parties hereto hereby acknowledges that it has been induced to enter into this Agreement by and in reliance upon, among other things, the provisions of this paragraph.

(h)    *Entire Agreement.* This Agreement embodies the entire agreement and understanding of the parties hereto and supersedes any and all prior agreements, arrangements and understandings relating to the matters provided for herein. No alteration, waiver, amendment, change or supplement hereto shall be binding or effective unless the same is set forth in writing signed by a duly authorized representative of each of the parties hereto.

(i)    *Authority.* Subject to entry of the Retention Order, each party hereto represents and warrants that it has all requisite power and authority to enter into this Agreement, including Exhibits A and B attached hereto and to consummate the transactions contemplated hereby. Subject to entry of the Retention Order, each party hereto further represents that this Agreement has been duly and validly authorized by all necessary corporate action and has been duly executed and delivered by each of the parties hereto and constitutes the legal, valid and binding agreement thereof, enforceable in accordance with its terms. Campbell will assume that any instructions, notices or requests have been properly authorized by the Company if they are given or purported to be given by a director, officer, employee or authorized agent of the Company, or by a person that is reasonably believed by Campbell to be a director, officer, employee or authorized agent of the Company.

(j)    *Counterparts.* This Agreement may be executed in as many counterparts as may be deemed necessary and convenient, and by the different parties hereto on separate counterparts, each of which when so executed shall be deemed an original, but all such counterparts shall constitute one and the same instrument. Delivery of an

8



executed counterpart of a signature page to this Agreement by telecopy shall be effective as delivery of a manually executed counterpart to this Agreement.

If the foregoing correctly sets forth the understanding and agreement between Campbell and the Company, please so indicate by signing the enclosed copy of this letter, whereupon it shall become a binding agreement between the parties hereto as of the date first above written.

Sincerely

W. Y. CAMPBELL & COMPANY

William Y. Campbell
Managing Director

Confirmed and agreed by:

DELPHI CORPORATION

BY: _____

Its: EVP & CFO

On: 10-19-06

9

**Exhibit A**

**Debtors**

Delphi Corporation, ASEC Manufacturing General Partnership, ASEC Sales General Partnership, Aspire, Inc., Delco Electronics Overseas Corporation, Delphi Automotive Systems (Holding), Inc., Delphi Automotive Systems Global (Holding), Inc., Delphi Automotive Systems Human Resources LLC, Delphi Automotive Systems International, Inc., Delphi Automotive Systems Korea, Inc., Delphi Automotive Systems LLC, Delphi Automotive Systems Overseas Corporation, Delphi Automotive Systems Risk Management Corp., Delphi Automotive Systems Services LLC, Delphi Automotive Systems Tennessee, Inc., Delphi Automotive Systems Thailand, Inc., Delphi China LLC, Delphi Connection Systems, Delphi Diesel Systems Corp., Delphi Electronics (Holding) LLC, Delphi Foreign Sales Corporation, Delphi Integrated Service Solutions, Inc., Delphi International Holdings Corp., Delphi International Services, Inc., Delphi Liquidation Holding Company, Delphi LLC, Delphi Mechatronic Systems, Inc., Delphi Medical Systems Colorado Corporation, Delphi Medical Systems Corporation, Delphi Medical Systems Texas Corporation, Delphi NY Holdings Corporation, Delphi Services Holding Corporation, Delphi Technologies, Inc., DREAL, Inc., Environmental Catalysts, LLC, Exhaust Systems Corporation, Packard Hughes Interconnect Company, Specialty Electronics, Inc., Specialty Electronics International Ltd., Delphi Furukawa Wiring Systems LLC, Delphi Receivables LLC and MobileAria, Inc.



**Exhibit B**

Subject to the terms of the Retention Order, Delphi Corporation (collectively with its direct and indirect subsidiaries, the "Company") agrees to indemnify and hold harmless W. Y. Campbell & Company ("Campbell") and its affiliates, counsel and other professional advisors, and the respective directors, officers, controlling persons, agents and employees of each of the foregoing (Campbell and all of such other persons collectively, the "Indemnified Parties"), from and against any losses, claims or proceedings, including without limitation stockholder actions, damages, judgments, assessments, investigation costs, settlement costs, fines, penalties, arbitration awards and any other liabilities, reasonable costs, reasonable fees and reasonable expenses (collectively, "Losses") (a) directly or indirectly related to or arising out of (i) oral or written information provided by the Company, the Company's employees or other agents, which either the Company or an Indemnified Party provides to any person or entity or (ii) any other action or failure to act by the Company, the Company's employees or other agents or any Indemnified Party at the Company's request or with the Company's consent, in each case in connection with, arising out of, based upon, or in any way related to the letter agreement  the "Agreement") entered into between the Company and Campbell regarding the retention of Campbell as financial advisor and investment banker to the Company, the retention of and services provided by Campbell under the Agreement, or any M&A Transaction or other transaction pursuant to the Agreement; or (b) otherwise directly or indirectly in connection with, arising out of, based upon, or in any way related to the engagement of Campbell under this Agreement or any transaction or conduct in connection therewith, provided that the Company shall not be required to indemnify an Indemnified Party for such Losses if and only to the extent that it is finally judicially determined by a court of competent jurisdiction that such Losses arose (x) because of the gross negligence, willful misconduct or fraud of such Indemnified Party or (y) because of a material breach of a term or condition of the Agreement by such Indemnified Party.

Subject to the terms of the Retention Order, the Company shall further reimburse any Indemnified Party promptly after obtaining the necessary approval of the Bankruptcy Court, if any, for any reasonable legal or other fees, disbursements or expenses as they are incurred (a) in investigating, preparing or pursuing any action or other proceeding (whether formal or informal) or threat thereof, whether or not in connection with pending or threatened litigation or arbitration and whether or not any Indemnified Party is a party, in each case to the extent relating to Losses for which indemnification is available hereunder (each, an "Action") and (b) in connection with enforcing such Indemnified Party's rights under the Agreement; provided, however, that in the event and only to the extent that it is finally judicially determined by a court of competent jurisdiction that the Losses of such Indemnified Party arose (x) because of the gross negligence, willful misconduct or fraud of such Indemnified Party or (y) because of a material breach of a term or condition of the Agreement by such Indemnified Party, such Indemnified Party will promptly remit to the Company any amounts reimbursed under this paragraph, plus interest at the annual rate of the Prime Rate (as reported in the Wall Street Journal or, if the Wall Street Journal is no longer published, in a similar publication of national distribution) plus 400 basis points, calculated from the date of the Company's reimbursement to the Indemnified Party to the date of the Indemnified Party's repayment to the Company.  Similarly, the Company will pay Campbell interest on any payments

11



due under this Exhibit B at the Prime Rate plus 400 basis points from the date such payments are due until paid.

Upon receipt by an Indemnified Party of notice of any Action, such Indemnified Party shall notify the Company in writing of such Action, but the failure to so notify shall not relieve the Company from any liability hereunder (i) if the Company had actual notice of such Action or (ii) unless and only to the extent that the Company is prejudiced thereby. The Company shall have the right to assume the defense of any such Action including the employment of counsel reasonably satisfactory to Campbell and will not, without the prior written consent of Campbell (which shall not be unreasonably withheld or delayed), settle, compromise, consent or otherwise resolve or seek to terminate any pending or threatened Action (whether or not any Indemnified Party is a party thereto) unless such settlement, compromise, consent or termination (a) contains an express, unconditional release of each Indemnified Party which is a party to the Action from all liability relating to such Action and (b) does not include an admission of fault, culpability or a failure to act by or on behalf of any Indemnified Party. Any Indemnified Party shall be entitled to retain separate counsel of its choice and participate in the defense of any Action in connection with any of the matters to which the Agreement relates, but the fees and expenses of such counsel shall be at the expense of such Indemnified Party unless (x) the Company has failed promptly to assume the defense and employ counsel or (y) the named parties to any such Action (including any impleaded parties) include such Indemnified Party and the Company, and such Indemnified Party shall have been advised by counsel that there may be one or more legal defenses available to it which are different from or in addition to those available to the Company; provided, that the Company shall not in such event be responsible under the Agreement for the fees and expenses of more than one firm of separate counsel (in addition to local counsel) in connection with any such Action in the same jurisdiction.

Subject to the terms of the Retention Order, the Company agrees that if any right of any Indemnified Party set forth in the preceding paragraphs is finally judicially determined to be unavailable (except by reason of the gross negligence, willful misconduct or fraud of such Indemnified Party or because of a material breach of a term or condition of the Agreement by such Indemnified Party), or is insufficient to hold such Indemnified Party harmless against such Losses as contemplated herein, then the Company shall contribute to such Losses (a) in such proportion as is appropriate to reflect the relative benefits received by the Company and its creditors and stockholders, on the one hand, and such Indemnified Party, on the other hand, in connection with the transactions contemplated hereby, and (b) if (and only if) the allocation provided in clause (a) is not permitted by applicable law, in such proportion as is appropriate to reflect not only the relative benefits referred to in clause (a) but also the relative fault of the Company and such Indemnified Party; provided, that, in no event shall the aggregate contribution of all such Indemnified Parties exceed the amount of fees received by Campbell under the Agreement. Benefits received by Campbell shall be deemed to be equal to the compensation paid by the Company to Campbell in connection with the Agreement. Relative fault shall be determined by reference to, among other things, whether any alleged untrue statement or omission or any other alleged conduct relates to information provided by the Company or other conduct by the Company (or the Company's employees or other agents) on the one hand or by Campbell on the other hand.

Subject to the terms of the Retention Order, the Company also agrees that no Indemnified Party shall have any liability (whether direct or indirect, in contract or tort or

12



otherwise) to the Company for or in connection with advice or services rendered or to be rendered by any Indemnified Party pursuant to the Agreement, the transactions contemplated hereby or any Indemnified Party's actions or inactions in connection with any such advice, services or transactions except for and only to the extent that such Losses of the Company are finally judicially determined by a court of competent jurisdiction to have arisen (x) because of the gross negligence, willful misconduct or fraud of, or (y) because of a material breach of a term or condition of the Agreement by such Indemnified Party in connection with any such advice, actions, inactions or services.

The rights of the Indemnified Parties and the Company hereunder shall be in addition to any other rights that any Indemnified Party or the Company may have at common law, by statute or otherwise. Except as otherwise expressly provided for in the Agreement, if any term, provision, covenant or restriction contained in the Agreement is held by a court of competent jurisdiction or other authority to be invalid, void, unenforceable or against its regulatory policy, the remainder of the terms, provisions, covenants and restrictions contained in the Agreement shall all remain in full force and effect and shall in no way be affected, impaired or invalidated. The reimbursement, indemnity and contribution obligations of the Company set forth herein shall apply to any modification of the Agreement and shall remain in full force and effect regardless of any termination of, or the completion of any Indemnified Party's services under or in connection with, the Agreement.

Nothing contained in this letter agreement is intended to obligate the Company to enter into the Agreement, it being understood and agreed that the Company will not execute the Agreement unless and until the Company is satisfied, in its sole discretion, with the terms and conditions of the Agreement, and all internal approvals which the management of the Company determines are necessary or desirable have been obtained.



Exhibit C

## W.Y. CAMPBELL & COMPANY

### Aggregate Consideration Definitions

For purposes hereof, the term "Aggregate Consideration" shall mean the total amount of all cash, securities, contractual arrangements (including any put or call agreements) and other properties paid or payable, directly or indirectly in connection with an M&A Transaction (including (i) amounts paid pursuant to covenants not to compete, employment contracts, employee benefit plans, management fees or other similar arrangements, and (ii) amounts paid to holders of any warrants, stock purchase rights or convertible securities of the Company and to holders of any options or stock appreciation rights issued by the Company, whether or not vested). Aggregate Consideration shall also include the amount of any short-term debt and long-term liabilities of the Company (including the principal amount of any indebtedness for borrowed money and capitalized leases and the full amount of any off-balance sheet financings) (x) repaid or retired in connection with or in an effort to consummate an M&A Transaction or (y) existing on the Company's balance sheet at the time of an M&A Transaction (if such M&A Transaction takes the form of a merger, consolidation or a sale of stock or partnership interests) or assumed in connection with an M&A Transaction (if such M&A Transaction takes the form of a sale of assets). For purposes of calculating the amount of revolving credit debt in the preceding sentence, the arithmetic mean of the amount of revolving credit debt outstanding on the last day of each month during the 12 months preceding the closing of the M&A Transaction will be used. In the event such M&A Transaction takes the form of a sale of assets, Aggregate Consideration shall include (i) the value of any current assets not purchased, minus (ii) the value of any current liabilities not assumed. In the event such M&A Transaction takes the form of a recapitalization, restructuring, spin-off, split off or similar transaction, Aggregate Consideration shall include the fair market value of (i) the equity securities of the Company retained by the Company's security holders following such M&A Transaction and (ii) any securities received by the Company's security holders in exchange for or in respect of securities of the Company following such M&A Transaction (all securities received by such security holders being deemed to have been paid to such security holders in such M&A Transaction). The value of securities that are freely tradable in an established public market will be determined on the basis of the last market closing price prior to the consummation of an M&A Transaction. The value of securities, lease payments and other consideration that are not freely tradable or have no established public market, or if the consideration utilized consists of property other than securities, the value of such property shall be the fair market value thereof as determined in good faith by Campbell and the Company. Aggregate Consideration shall be deemed to include the face amount of any indebtedness for borrowed money, including, without limitation, obligations assumed, retired or defeased, directly or indirectly, in connection with, or which survive the closing of, such M&A Transaction. If the consideration to be paid is computed in any foreign currency, the value of such foreign currency shall, for purposes hereof, be converted into U.S. dollars at the prevailing exchange rate on the date or dates on which such consideration is payable.

Percentages rounded to two decimal places.

DETROIT 21824-1 864467W

14





**W. Y. CAMPBELL & COMPANY**
INVESTMENT BANKING

ONE WOODWARD AVENUE • 26TH FLOOR • DETROIT, MI 48226
313-496-9000 • 313-496-9001 FAX

November 16, 2006

Robert J. Dellinger
Executive Vice President &
    Chief Financial Officer
Delphi Corporation
5725 Delphi Drive
Troy, Michigan 48098-2815

Dear Mr. Dellinger:

As you know, on October 17, 2006, Delphi Corporation (together with its direct and indirect subsidiaries, the "Company") and W.Y. Campbell ("Campbell") entered into a letter agreement to retain Campbell as financial advisor and investment banker to the Company in connection with a possible M&A Transaction and/or other transaction or series of transactions involving the Mount Business of the Company, effective as of September 1, 2006 (the "Engagement Letter").[1]

Section 4(c) of the Engagement Letter is hereby amended to read in its entirety as follows:

"(c)    To the extent that services of the type described in Section 1(l) are requested, representatives of Campbell shall be paid $750 per hour only for time spent testifying at such hearings and <u>shall</u> not <u>be paid</u> for preparation time or time spent in Court while not testifying."

Except as expressly amended hereby, the Engagement Letter is in all respects ratified and confirmed and all the terms thereof shall be and remain in full force and effect.

---

[1]  Capitalized terms used herein and not otherwise defined shall have the meanings assigned to such terms in the Engagement Letter.

Please indicate your agreement with the above amendment by signing the enclosed copy of this letter agreement in the space designated below and returning it to us whereupon this amendment shall be binding upon the parties hereto.

Sincerely,

W. Y. CAMPBELL & COMPANY

/s/ André A. Augier

André A. Augier
Managing Director

Confirmed and agreed by:

DELPHI CORPORATION


BY: /s/ Robert J. Dellinger

Its: Executive Vice President & Chief Financial Officer

On: November 21, 2006

2

# EXHIBIT C

**W. Y. CAMPBELL & COMPANY**
INVESTMENT BANKING

ONE WOODWARD AVENUE • 26 TH FLOOR • DETROIT, MI 48226
313-496-9000 • *313-496-9001 FAX*

December 7, 2007

Delphi Corporation
5725 Delphi Drive
Troy, MI 48098

Attention:   General Counsel

| | |
|---|---|
| Monthly Advisory Fees:   (October 2007) | $50,000.00 |
| (Montly Advisory Fee $50,000/month x 1) | |
| 80% of Advisory Fees: | x .80 |
| | $40,000.00 |
| Out of Pocket expenses:   (October 2007) | $ 3,149.26 |
| (see attached) | |
| **Total amount due:** | **$43,149.26** |

Wire Transfer Instructions for the account of:

**W. Y. Campbell & Company**
Comerica Bank
ABA# 072000096 (routing number)
Account # 1850605484

# W.Y. CAMPBELL & COMPANY
## INVESTMENT BANKING

ONE WOODWARD AVENUE • 26 TH FLOOR • DETROIT, MI 48226
313-496-9000 • *313-496-9001 FAX*

---

Comerica                                                                12/7//07

## Monthly Client Expense Report
### 10/1/07 Through 10/31/07

Delphi Mounts

| | |
|---|---|
| 55100-Legal | 2364.93 |
| 56230-Telephone | 176.03 |
| 56350-Reference Data Base | 608.30 |

TOTAL EXPENSESDUE                              $3,149.26

## Wire Transfer Instructions for the account of:
### W. Y. Campbell & Company
Comerica Bank
ABA# 072000096 (routing number)
Account # 1850605484
Swift code #MNBDUS33

**DELPHI CORPORATION**

**Telephone**

| Date Incurred | Description | City | Cost | Method of Computation |
|---|---|---|---|---|
| 10/1/2007 10/31/2007 | Conference Calls | Detroit, MI | 176.03 | vendor |
| | | | 176.03 | |

**DELPHI CORPORATION**

**Reference/Data Base**

| Date Incurred | Description | City | Cost | Method of Computation |
|---|---|---|---|---|
| 10/15/07 | Reference | Detroit | 100.00 | vendor |
| 10/22/07 | Reference | Detroit | 125.00 | vendor |
| 9/14/07 | Reference | Detroit | 383.30 | vendor |
| | | | 608.30 | |

IN ACCOUNT WITH

**DICKINSON WRIGHT** PLLC

500 WOODWARD AVENUE, SUITE 4000
DETROIT, MICHIGAN 48226-3425
TELEPHONE: (313) 223-3500
http://www.dickinsonwright.com
FEDERAL I.D. #38-1364333

September 26, 2007
Invoice No. 591940

021924 W.Y. CAMPBELL & COMPANY
021924-00017 DELPHI ENGAGEMENT
W.Y. CAMPBELL & COMPANY
ONE WOODWARD AVE., 26TH FLOOR
DETROIT, MI 48226

ATTN: MR. WILLIAM CAMPBELL

*Delphi Mounts*

*Delphi Dampers*

| DATE | SERVICES | HOURS |
|------|----------|-------|
| 07/03/07 ARB | Exchange emails with client re: status of signing application. | .30 – M |
| 07/09/07 SGH | Follow up on fee application. | .20 – M |
| 07/09/07 ARB | Exchange emails with client re: signature page for fee application. Coordinate filing of same. | .20 – M |
| 07/10/07 SGH | Review and respond to correspondence. Follow up on fee application and periodic filings with A.Bach. | .30 – M |
| 07/10/07 ARB | Email to client re: filing of fee application. Review procedure for filing monthly statements. TC to client re: advice for monthly statements that must be sent to Debtors and others. | .60 – M |
| 07/11/07 ARB | TC with client re: monthly fee statements and filing of interim fee application. Edit and revise memo on fee application procedure and email same to client. Confer with SGH re: same. | .80 – M |
| 07/24/07 ARB | TC with client re: email from fee examiner. (.2) Review documents from fee examiner and advise client re: same. (.3) | .50 – M |
| 07/26/07 RMB | Misc t/cs, confs and correspondence re new engagement ltr; revise engagement ltr. | 1.60 – D |
| 07/26/07 SGH | Telephone conversations with R.Bolton. | .20 – D |
| 07/26/07 ARB | TC with representative from LCC re: fee review process. TC with client re: same. | .40 – M |



IN ACCOUNT WITH

DICKINSON
WRIGHT PLLC

500 WOODWARD AVENUE, SUITE 4000
DETROIT, MICHIGAN 48226-3425
TELEPHONE: (313) 223-3500
http://www.dickinsonwright.com
FEDERAL I.D. #38-1364333

---

021924-00017
W.Y. CAMPBELL & COMPANY
DELPHI ENGAGEMENT

Invoice No. 591940
Page    2

| 07/27/07 | RMB | Draft revised engagement ltr for new transaction. | 1.20 |
| 07/27/07 | AWM | Drafting of foreign tax language for engagement letter. | .50 |
| 07/27/07 | ARB | Review email from client with June data for submission to Debtor. Exchange emails with client re: deficiencies in information. | .50 |
| 07/30/07 | RMB | Complete revision of Damper engagement ltr; t/cs and correspondence re same. | .80 |
| 07/31/07 | RMB | Misc t/cs and correspondence re Damper engagement ltr. | .80 |
| 08/06/07 | RMB | Follow up re engagement ltr. | .40 |
| 08/10/07 | ARB | Exchange emails with representative at Legal Cost Control re: uploading of fee application. | .30 |
| 08/13/07 | ARB | Exchange emails with client re: supporting documentation for filing with LCC. TC to LCC re: user name and password issues. | .40 |
| 08/14/07 | ARB | Several emails with contact at Legal Cost re: issues uploading of fee application. TC with client re: same. | .80 |
| 08/24/07 | RMB | Misc t/cs, correspondence and confs re Delphi Damper engagement letter. | 1.20 |
| 08/27/07 | RMB | Misc t/cs, confs and correspondence re finalizing engagement letter for Damper business. | 1.20 |
| 08/30/07 | AWM | Matters relating to review of revised tax language, call with Delphi tax dept. (Dan Berberick) regarding the same. | .60 |
| 08/30/07 | ARB | Confer with client re: filing of monthly statements. Review and analyze fee application orders re: same. Coordinate filing of monthly statement with Legal Cost Control. | 1.10 |
| 08/31/07 | RMB | Follow up on Damper engagement letter. | .70 |



500 WOODWARD AVENUE, SUITE 4000
DETROIT, MICHIGAN 48226-3425
TELEPHONE: (313) 223-3500
http://www.dickinsonwright.com
FEDERAL I.D. #38-1364333

021924-00017                                     Invoice No. 591940
W.Y. CAMPBELL & COMPANY                          Page    3
DELPHI ENGAGEMENT

                                                      ============
                  TOTAL SERVICES. . . . . . . . . .$      5,420.50


DATE                    DISBURSEMENTS                       VALUE
            TELECOMMUNICATIONS                                8.63
            CERT. COPIES/OFFL RECORDS                        53.20
            REPRODUCTION-INSIDE FIRM                        212.00
            TELEPHONE                                         8.55
                                                      ------------
                  TOTAL DISBURSEMENTS. . . . . . .$        282.38
                                                      ------------
                  TOTAL CURRENT CHARGES. . . . . .$      5,702.88
                                                      ============

**W.Y. CAMPBELL & COMPANY**
INVESTMENT BANKING

ONE WOODWARD AVENUE • 26 TH FLOOR • DETROIT, MI 48226
313-496-9000 • *313-496-9001 FAX*

January 9, 2008

Delphi Corporation
5725 Delphi Drive
Troy, MI 48098

Attention:   General Counsel

| | |
|---|---|
| Monthly Advisory Fees:   (November 2007) | $50,000.00 |
| (Montly Advisory Fee $50,000/month x 1) | |
| 80% of Advisory Fees: | x .80 |
| | $40,000.00 |
| Out of Pocket expenses:   (November 2007) (see attached) | $ 1,086.99 |
| **Total amount due:** | **$41,086.99** |

Wire Transfer Instructions for the account of:

**W. Y. Campbell & Company**
Comerica Bank
ABA# 072000096 (routing number)
Account # 1850605484

**W.Y. CAMPBELL & COMPANY**
INVESTMENT BANKING

ONE WOODWARD AVENUE • 26 TH FLOOR • DETROIT, MI 48226
313-496-9000 • *313-496-9001 FAX*

Comerica                                                                        1/9/08

## Monthly Client Expense Report
### 11/1/07 Through 11/30/07

### Delphi Mounts

| | |
|---|---:|
| 55100-Legal | 414.97 |
| 55625-Federal Express | 418.52 |
| 55905-Reproduction | 78.50 |
| 56000-Reference/Data Base | 175.00 |

**TOTAL EXPENSESDUE**                              **$1,086.99**

Wire Transfer Instructions for the account of:
**W. Y. Campbell & Company**
Comerica Bank
ABA# 072000096 (routing number)
Account # 1850605484
Swift code #MNBDUS33

**DELPHI CORPORATION**

**Meals**

| Date Incurred | Description | City | Cost | Method of Computation | Incurred By |
|---|---|---|---|---|---|
| | 11/1/2007 11/30/2007 | Detroit | 414.97 | vendor | various |

414.97

**DELPHI CORPORATION**

**Federal Express**

| Date Incurred | Description | City | Cost | Method of Computation |
|---|---|---|---|---|
| 11/30/2007 | Federal Express | Detroit, MI | 418.52 | vendor |

**DELPHI CORPORATION**

**Reproduction Costs**

| Date Incurred | Description | City | Cost | Method of Computation |
|---|---|---|---|---|
| 11/1/2007 | color copies | Detroit, MI | 48.00 | 1.00/page |
| 11/30/2007 | b/w copies | Detroit, MI | 30.50 | .10/page |
| | | | 78.50 | |

**DELPHI CORPORATION**

**Reference/Data Base**

| Date Incurred | Description | City | Cost | Method of Computation |
|---|---|---|---|---|
| 11/15/07 | Reference | Detroit | 175.00 | vendor |
| | | | 175.00 | |

ACCOUNT WITH

# DICKINSON WRIGHT PLLC

500 WOODWARD AVENUE, SUITE 4000
DETROIT, MICHIGAN 48226-3425
TELEPHONE: (313) 223-3500
http://www.dickinsonwright.com
FEDERAL I.D. #38-1364333

October 31, 2007
Invoice No. 600023

021924   W.Y. CAMPBELL & COMPANY
021924-00017 DELPHI ENGAGEMENT
         W.Y. CAMPBELL & COMPANY
         ONE WOODWARD AVE., 26TH FLOOR
         DETROIT, MI  48226

         ATTN: MR. WILLIAM CAMPBELL

| DATE | SERVICES | HOURS |
|------|----------|-------|
| 09/04/07 RMB | Misc t/cs, confs and correspondence re engagement letter. | 1.20 |
| 09/04/07 AWM | Matters relating to tax provision in Delphi engagement letter, email and discussion with RMB regarding the same. | 1.10 |
| 09/05/07 ARB | TC with client re: July invoice. Coordinate uploading of same to Legal Cost Control. | .30 |
| 09/06/07 RMB | Misc t/cs, confs and correspondence re engagement letter. | 1.20 |
| 09/07/07 RMB | Misc t/cs, confs and correspondence re engagement ltr. | 1.10 |
| 09/12/07 AWM | Email relating to engagement letter and UK Form FD 13 | .50 |
| 09/14/07 ARB | Review audit from legal cost control.  Email to client re: same. | .50 |
| 09/28/07 ARB | Review client's responses to Legal Cost Control's audit of fee application.  Email to client re: same. | .30 |

```
                                        ============
        TOTAL SERVICES. . . . . . . . . .$      2,339.00

        TOTAL DISBURSEMENTS. . . . . . . $           .00
                                         ------------
        TOTAL CURRENT CHARGES. . . . . . $      2,339.00
                                        ============
```

377.25

Mounts  -  414.97
Dampers  -  1924.03

**W.Y. CAMPBELL & COMPANY**
INVESTMENT BANKING

ONE WOODWARD AVENUE • 26 TH FLOOR • DETROIT, MI 48226
313-496-9000 • *313-496-9001 FAX*

February 9, 2008

Delphi Corporation
5725 Delphi Drive
Troy, MI 48098

Attention:   General Counsel

| | |
|---|---|
| Monthly Advisory Fees:   (December 2007)<br>(Montly Advisory Fee $50,000/month x 1) | $50,000.00 |
| 80% of Advisory Fees: | x .80 |
| | $40,000.00 |
| **Total amount due:** | **$40,000.00** |

Wire Transfer Instructions for the account of:

**W. Y. Campbell & Company**
Comerica Bank
ABA# 072000096 (routing number)
Account # 1850605484

**W. Y. CAMPBELL & COMPANY**
INVESTMENT BANKING

ONE WOODWARD AVENUE • 26 TH FLOOR • DETROIT, MI 48226
313-496-9000 • *313-496-9001 FAX*

March 7, 2008

Delphi Corporation
5725 Delphi Drive
Troy, MI 48098

Attention:   General Counsel

Monthly Advisory Fees:   (January 1-25,  2008)                   $40,322.50
(Montly Advisory Fee $50,000/month x 1)

80% of Advisory Fees:                                                x .80

                                                                 $32,258.00

January monthly expenses                                      $    779.47

**Total amount due:**                                         **$33,037.47**

Wire Transfer Instructions for the account of:

**W. Y. Campbell & Company**
Comerica Bank
ABA# 072000096 (routing number)
Account # 1850605484

**W. Y. CAMPBELL & COMPANY**
INVESTMENT BANKING

ONE WOODWARD AVENUE • 26 TH FLOOR • DETROIT, MI 48226
313-496-9000 • *313-496-9001 FAX*

Comerica

2/28/08

### Monthly Client Expense Report
1//1/08 Through 1/31/08

#### Delphi Mounts

55100-Legal                                                      654.20
55625-Federal Express                                            125.27

TOTAL EXPENSESDUE                              $ 779.47

Wire Transfer Instructions for the account of:
**W. Y. Campbell & Company**
Comerica Bank
ABA# 072000096 (routing number)
Account # 1850605484
Swift code #MNBDUS33


.



IN ACCOUNT WITH

**DICKINSON WRIGHT** PLLC

500 WOODWARD AVENUE, SUITE 4000
DETROIT, MICHIGAN 48226-3425
TELEPHONE: (313) 223-3500
http://www.dickinsonwright.com
FEDERAL I.D. #38-1364333

November 29, 2007
Invoice No. 604156

021924   W.Y. CAMPBELL & COMPANY
021924-00017 DELPHI ENGAGEMENT
W.Y. CAMPBELL & COMPANY
ONE WOODWARD AVE., 26TH FLOOR
DETROIT, MI  48226

ATTN: MR. WILLIAM CAMPBELL

*Delphi Mounts*

| DATE | SERVICES | HOURS |
|---|---|---|
| 10/03/07 ARB | Review email from fee committee re: recommendation to pay client's fees and expenses for fifth interim period.  TC with client re: same.  TC with SGH re: same. | .50 |
| 10/12/07 ARB | TC with client re: request for documentation from debtor and filing August and September monthly statements. | .20 |
| 10/15/07 ARB | Review email from M. Kahn at Skadden re: monthly fee statements.  TC with client re: same.  TC with M. Kahn at Skadden re: same. TC with client re: protocol for filing monthly fee statements.  Review August statement and coordinate filing of same with Legal Cost Control.  Review letter re: monthly fee statements.  Email to M. Kahn re: same. | 1.90 |
| 10/23/07 ARB | Review proposed order re: fifth interim compensation period.  Email to client re: same. | .30 |
| 10/24/07 ARB | Exchange emails with client re: payment of interim fees; May and June fees.  TC with client re: same. | .30 |

TOTAL SERVICES. . . . . . . . . .$    608.00

| DATE | DISBURSEMENTS | VALUE |
|---|---|---|
|  | REPRODUCTION-INSIDE FIRM | 46.20 |

TOTAL DISBURSEMENTS. . . . . . .$    46.20

TOTAL CURRENT CHARGES. . . . . .$    654.20

**DELPHI CORPORATION**

**Meals**

| Date Incurred | Description | City | Cost | Method of Computation | Incurred By |
|---|---|---|---|---|---|
| | 1/1/2008 1/31/2008 | Detroit | 654.20 | vendor | various |

654.20

**DELPHI CORPORATION**

**Federal Express**

| Date Incurred | Description | City | Cost | Method of Computation |
|---|---|---|---|---|
| 1/31/2008 | Federal Express | Detroit, MI | 125.27 | vendor |

# EXHIBIT D

Task Codes

**10 Administration**
11 Meetings and Calls
12 Preparation of Fee Documents
13 Travel Time
14 Administration Items
15 Legal Items
16 Term Sheet

**20 Facility Tours**
21 Prep for Facility Tours
22 Facility Tour
23 Internal Meetings - Facility tour

**30 Offering Documents**
31 Drafting of Offering Documents
32 Review of Offering Documents
33 Internal Meetings - Offering Documents
34 Delphi Meeting/Discussions - Offering Documents
35 Drafting of Management Presentation
36 Review of Management Presentation
37 Internal Meetings - Management Presentation
38 Delphi Meetings/Discussions - Management Presentation
39 Data Review

**40 Financial**
41 Review of Financial Data
42 Modeling of Financial Data
43 Internal Meetings - Financial Data
44 Delphi Meetings/Discussions - Financial Data

**50 Marketing**
51 Buyer Research
52 Internal Meetings - Marketing
53 Delphi Meetings/Discussions - Marketing
54 Discussions with Potential Buyers
55 Management Presentations
56 Send Offering Materials
57 Review Management Presentation
58 Industry Research

**60 Due Diligence**
61 Delphi Discussions/Meetings - Data Room
62 Review of Data Room Material
63 Discussions with Buyers- Data Room Material
64 Buyer/Delphi/WYCC calls - Data Room
65 Analysis of Financials/Data Room Material

Confidential

W.Y. CAMPBELL & COMPANY
Delphi Corporation - Powertrain and Suspension Mounts Product Line
Summary of Hours
October 2007

| Name | Function | Title | Number of Hours |
|------|----------|-------|-----------------|
| André Augier | Investment Banking | Managing Director | 36.5 |
| Kurt Haras | Investment Banking | Director | 52.5 |
| Greg McGowan | Investment Banking | Senior Associate | 76.5 |

**Total** **227.5**

Confidential

W.Y. CAMPBELL & COMPANY

**Delphi - Mounts Product Line**

*Time Sheet - Andre Auger*

| Date | Time | Task Code | Task | Description of Time Spent |
|---|---|---|---|---|
| Monday, October 01, 2007 | 1.0 hrs | 11 | Meetings and Calls | Internal Meeting - Project Planning, Due-Diligence Planning |
| Monday, October 01, 2007 | 1.0 hrs | 11 | Meetings and Calls | Conf. Call with Delphi |
| Monday, October 01, 2007 | 1.0 hrs | 66 | Due Diligence Items | Preparation for Conf. Call with Delphi |
| Monday, October 01, 2007 | 1.0 hrs | 11 | Meetings and Calls | Phone/email correspondence with Buyer Group |
| Monday, October 01, 2007 | 0.5 hrs | 11 | Meetings and Calls | Phone/email correspondence with Delphi |
| Monday, October 01, 2007 | 1.5 hrs | 11 | Meetings and Calls | Phone/email correspondence with Buyer Group |
| Tuesday, October 02, 2007 | 1.5 hrs | 11 | Meetings and Calls | Phone/email correspondence with Delphi |
| Tuesday, October 02, 2007 | 0.5 hrs | 11 | Meetings and Calls | Phone/email correspondence with Buyer Group and Delphi |
| Wednesday, October 03, 2007 | 2.5 hrs | 61 | Delphi Discussions/Meetings - Due Diligence | Meeting with Buyer Group and Delphi |
| Wednesday, October 03, 2007 | 1.0 hrs | 66 | Due Diligence Items | Preparation for meeting with Buyer Group and Delphi |
| Wednesday, October 03, 2007 | 1.5 hrs | 11 | Meetings and Calls | Phone/email correspondence with Buyer Group |
| Wednesday, October 03, 2007 | 0.5 hrs | 11 | Meetings and Calls | Phone/email correspondence with Delphi |
| Wednesday, October 03, 2007 | 0.5 hrs | 11 | Meetings and Calls | Phone/email correspondence with Buyer Group |
| Friday, October 05, 2007 | 0.5 hrs | 11 | Meetings and Calls | Phone/email correspondence with Buyer Group |
| Friday, October 05, 2007 | 1.0 hrs | 54 | Discussions with Potential Buyers | Discussions with Potential Buyer Groups |
| Monday, October 08, 2007 | 0.5 hrs | 11 | Meetings and Calls | Internal Meeting - Project Planning, Due-Diligence Planning |
| Monday, October 08, 2007 | 1.0 hrs | 11 | Meetings and Calls | Phone/email correspondence with Buyer Group |
| Monday, October 08, 2007 | 0.5 hrs | 11 | Meetings and Calls | Phone/email correspondence with Buyer Group |
| Tuesday, October 09, 2007 | 0.5 hrs | 11 | Meetings and Calls | Phone/email correspondence with Delphi |
| Tuesday, October 09, 2007 | 1.0 hrs | 66 | Due Diligence Items | Preparation for meeting with Buyer Group and Delphi |
| Wednesday, October 10, 2007 | 1.0 hrs | 11 | Meetings and Calls | Phone/email correspondence with Buyer Group |
| Wednesday, October 10, 2007 | 1.0 hrs | 11 | Meetings and Calls | Phone/email correspondence with Buyer Group |
| Friday, October 12, 2007 | 0.5 hrs | 11 | Meetings and Calls | Internal Meeting - Project Planning, Due-Diligence Planning |
| Monday, October 15, 2007 | 1.0 hrs | 11 | Meetings and Calls | Phone/email correspondence with Buyer Group |
| Monday, October 15, 2007 | 1.5 hrs | 11 | Meetings and Calls | Phone/email correspondence with Delphi |
| Monday, October 15, 2007 | 0.5 hrs | 11 | Meetings and Calls | Phone/email correspondence with Buyer Group |
| Wednesday, October 17, 2007 | 1.0 hrs | 54 | Discussions with Potential Buyers | Discussions with Potential Buyer Groups |
| Wednesday, October 17, 2007 | 1.0 hrs | 11 | Meetings and Calls | Phone/email correspondence with Buyer Group |
| Thursday, October 18, 2007 | 0.5 hrs | 11 | Meetings and Calls | Internal Meeting - Project Planning, Due-Diligence Planning |
| Monday, October 22, 2007 | 1.5 hrs | 11 | Meetings and Calls | Phone/email correspondence with Buyer Group |
| Monday, October 22, 2007 | 1.0 hrs | 11 | Meetings and Calls | Phone/email correspondence with Delphi |
| Tuesday, October 23, 2007 | 0.5 hrs | 11 | Meetings and Calls | Phone/email correspondence with Buyer Group |
| Tuesday, October 23, 2007 | 2.0 hrs | 11 | Meetings and Calls | Phone/email correspondence with Buyer Group |
| Wednesday, October 24, 2007 | 1.5 hrs | 54 | Discussions with Potential Buyers | Discussions with Potential Buyer Groups |
| Thursday, October 25, 2007 | 1.0 hrs | 11 | Meetings and Calls | Phone/email correspondence with Buyer Group |
| Friday, October 26, 2007 | 0.5 hrs | 11 | Meetings and Calls | Phone/email correspondence with Delphi |
| Friday, October 26, 2007 | 0.5 hrs | 11 | Meetings and Calls | Internal Meeting - Project Planning, Due-Diligence Planning |
| Monday, October 29, 2007 | 1.0 hrs | 11 | Meetings and Calls | Phone/email correspondence with Delphi |
| Tuesday, October 30, 2007 | 1.0 hrs | 11 | Meetings and Calls | Phone/email correspondence with Buyer Group |
| Wednesday, October 31, 2007 | 0.5 hrs | 11 | Meetings and Calls | Phone/email correspondence with Buyer Group |
| **Total Hours - October** | **36.5 hrs** | | | |

W.Y. CAMPBELL & COMPANY

Confidential

# Delphi - Mounts Product Line

*Time Sheet - Kurt Havas*

| Date | Time | Task Code | Task | Description of Time Spent |
|---|---|---|---|---|
| Monday, October 01, 2007 | 1.0 hrs | 11 | Meetings and Calls | Internal Meeting - Project Planning, Due-Diligence Planning |
| Monday, October 01, 2007 | 1.0 hrs | 11 | Meetings and Calls | Conf. Call with Delphi |
| Monday, October 01, 2007 | 2.0 hrs | 66 | Due Diligence Items | Preparation for Conf Call with Delphi |
| Monday, October 01, 2007 | 1.5 hrs | 11 | Meetings and Calls | Facilitation of due diligence request items |
| Tuesday, October 02, 2007 | 2.0 hrs | 66 | Due Diligence Items | Preparation for meeting with Buyer Group and Delphi |
| Tuesday, October 02, 2007 | 1.0 hrs | 11 | Meetings and Calls | Phone/email correspondence with Buyer Group |
| Tuesday, October 02, 2007 | 0.5 hrs | 11 | Meetings and Calls | Phone/email correspondence with Delphi |
| Wednesday, October 03, 2007 | 2.5 hrs | 61 | Delphi Discussions/Meetings - Due Diligence | Meeting with Buyer Group and Delphi |
| Wednesday, October 03, 2007 | 1.0 hrs | 66 | Due Diligence Items | Preparation for meeting with Buyer Group and Delphi |
| Wednesday, October 03, 2007 | 0.5 hrs | 11 | Meetings and Calls | Facilitation of due diligence request items |
| Wednesday, October 03, 2007 | 1.0 hrs | 11 | Meetings and Calls | Phone/email correspondence with Delphi |
| Thursday, October 04, 2007 | 1.0 hrs | 54 | Discussions with Potential Buyers | Correspondence with additional interested parties |
| Friday, October 05, 2007 | 1.0 hrs | 11 | Meetings and Calls | Phone/email correspondence with Buyer Group |
| Friday, October 05, 2007 | 1.0 hrs | 54 | Discussions with Potential Buyers | Correspondence with additional interested parties |
| Friday, October 05, 2007 | 0.5 hrs | 11 | Meetings and Calls | Phone/email correspondence with Delphi |
| Monday, October 08, 2007 | 0.5 hrs | 11 | Meetings and Calls | Internal Meeting - Project Planning, Due-Diligence Planning |
| Monday, October 08, 2007 | 1.5 hrs | 11 | Meetings and Calls | Phone/email correspondence with Buyer Group |
| Monday, October 22, 2007 | 0.5 hrs | 11 | Meetings and Calls | Correspondence with additional interested parties |
| Monday, October 08, 2007 | 1.0 hrs | 11 | Meetings and Calls | Phone/email correspondence with Delphi |
| Tuesday, October 09, 2007 | 1.0 hrs | 11 | Meetings and Calls | Preparation for meeting with Buyer Group and Delphi |
| Wednesday, October 10, 2007 | 1.5 hrs | 66 | Due Diligence Items | Facilitation of due diligence request items |
| Thursday, October 11, 2007 | 1.0 hrs | 11 | Meetings and Calls | Phone/email correspondence with Delphi |
| Thursday, October 11, 2007 | 0.5 hrs | 11 | Meetings and Calls | Phone/email correspondence with Buyer Group |
| Friday, October 12, 2007 | 0.5 hrs | 11 | Meetings and Calls | Correspondence with additional interested parties |
| Friday, October 12, 2007 | 2.0 hrs | 54 | Discussions with Potential Buyers | Internal Meeting - Project Planning, Due-Diligence planning |
| Monday, October 15, 2007 | 1.0 hrs | 11 | Meetings and Calls | Phone/email correspondence with Buyer Group |
| Monday, October 15, 2007 | 1.5 hrs | 11 | Meetings and Calls | Phone/email correspondence with Delphi |
| Monday, October 15, 2007 | 1.0 hrs | 11 | Meetings and Calls | Facilitation of due diligence request items |
| Tuesday, October 16, 2007 | 2.0 hrs | 11 | Meetings and Calls | Correspondence with additional interested parties |
| Wednesday, October 17, 2007 | 1.0 hrs | 54 | Discussions with Potential Buyers | Phone/email correspondence with Buyer Group |
| Thursday, October 18, 2007 | 0.5 hrs | 11 | Meetings and Calls | Phone/email correspondence with Delphi |
| Thursday, October 18, 2007 | 0.5 hrs | 11 | Meetings and Calls | Facilitation of due diligence request items |
| Friday, October 19, 2007 | 1.5 hrs | 11 | Meetings and Calls | Internal Meeting - Project Planning, Due-Diligence Planning |
| Monday, October 22, 2007 | 1.5 hrs | 11 | Meetings and Calls | Phone/email correspondence with Buyer Group |
| Monday, October 22, 2007 | 0.5 hrs | 11 | Meetings and Calls | Phone/email correspondence with Delphi |
| Tuesday, October 23, 2007 | 2.0 hrs | 11 | Meetings and Calls | Phone/email correspondence with Delphi |
| Tuesday, October 23, 2007 | 1.0 hrs | 54 | Discussions with Potential Buyers | Correspondence with additional interested parties |
| Wednesday, October 24, 2007 | 1.5 hrs | 11 | Meetings and Calls | Phone/email correspondence with Delphi |
| Wednesday, October 24, 2007 | 1.5 hrs | 11 | Meetings and Calls | Facilitation of due diligence request items |
| Thursday, October 25, 2007 | 0.5 hrs | 11 | Meetings and Calls | Internal Meeting - Project Planning, Due-Diligence Planning |
| Friday, October 26, 2007 | 0.5 hrs | 11 | Meetings and Calls | Phone/email correspondence with Buyer Group |
| Friday, October 26, 2007 | 1.0 hrs | 11 | Meetings and Calls | Correspondence with additional interested parties |
| Monday, October 29, 2007 | 1.0 hrs | 54 | Discussions with Potential Buyers | Phone/email correspondence with Delphi |
| Monday, October 29, 2007 | 0.5 hrs | 11 | Meetings and Calls | Phone/email correspondence with Delphi |
| Tuesday, October 30, 2007 | 0.5 hrs | 11 | Meetings and Calls | Phone/email correspondence with Delphi |
| Tuesday, October 30, 2007 | 1.0 hrs | 11 | Meetings and Calls | Phone/email correspondence with Delphi |
| Wednesday, October 31, 2007 | 0.5 hrs | 54 | Discussions with Potential Buyers | Correspondence with additional interested parties |
| **Total Hours - October** | **52.5 hrs** | | | |

Confidential

**Delphi - Mounts Product Line**

W.Y. CAMPBELL & COMPANY

*Time Sheet - Greg McGowan*

| Date | Time | Task Code | Task | Description of Time Spent |
|---|---|---|---|---|
| Monday, October 01, 2007 | 1.0 hrs | 11 | Meetings and Calls | Internal Meeting - Project Planning, Due-Diligence Planning |
| Monday, October 01, 2007 | 1.0 hrs | 11 | Meetings and Calls | Conf. Call with Delphi |
| Monday, October 01, 2007 | 2.5 hrs | 66 | Due Diligence Items | Preparation for Conf Call with Delphi |
| Tuesday, October 02, 2007 | 5.0 hrs | 66 | Due Diligence Items | Preparation for meeting with Buyer Group and Delphi |
| Tuesday, October 02, 2007 | 2.0 hrs | 66 | Due Diligence Items | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Wednesday, October 03, 2007 | 3.0 hrs | 66 | Due Diligence Items | Preparation for meeting with Buyer Group and Delphi |
| Thursday, October 04, 2007 | 2.0 hrs | 66 | Due Diligence Items | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Tuesday, October 02, 2007 | 2.0 hrs | 54 | Discussions with Potential Buyers | Correspondence with additional interested parties |
| Thursday, October 04, 2007 | 0.5 hrs | 11 | Meetings and Calls | Phone/con/all correspondence with Delphi |
| Friday, October 05, 2007 | 1.0 hrs | 66 | Due Diligence Items | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Friday, October 05, 2007 | 1.5 hrs | 54 | Discussions with Potential Buyers | Correspondence with additional interested parties |
| Monday, October 08, 2007 | 0.5 hrs | 11 | Meetings and Calls | Internal Meeting - Project Planning, Due-Diligence Planning |
| Monday, October 08, 2007 | 2.0 hrs | 66 | Due Diligence Items | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Monday, October 08, 2007 | 1.5 hrs | 54 | Discussions with Potential Buyers | Correspondence with additional interested parties |
| Monday, October 08, 2007 | 1.0 hrs | 11 | Meetings and Calls | Phone/conf/all correspondence with Delphi |
| Tuesday, October 09, 2007 | 2.5 hrs | 66 | Due Diligence Items | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Tuesday, October 09, 2007 | 2.0 hrs | 54 | Discussions with Potential Buyers | Correspondence with additional interested parties |
| Wednesday, October 10, 2007 | 4.5 hrs | 66 | Due Diligence Items | Preparation for meeting with Buyer Group and Delphi |
| Thursday, October 11, 2007 | 2.5 hrs | 61 | Delphi Discussions/Meetings - Due Diligence | Meeting with Buyer Group and Delphi |
| Thursday, October 11, 2007 | 2.5 hrs | 66 | Due Diligence Items | Preparation for meeting with Buyer Group and Delphi |
| Thursday, October 11, 2007 | 1.0 hrs | 66 | Due Diligence Items | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Thursday, October 11, 2007 | 1.5 hrs | 54 | Discussions with Potential Buyers | Correspondence with additional interested parties |
| Thursday, October 11, 2007 | 0.5 hrs | 11 | Meetings and Calls | Phone/conf/all correspondence with Delphi |
| Friday, October 12, 2007 | 1.0 hrs | 66 | Due Diligence Items | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Friday, October 12, 2007 | 1.0 hrs | 11 | Meetings and Calls | Internal Meeting - Project Planning, Due-Diligence Planning |
| Monday, October 15, 2007 | 2.5 hrs | 66 | Due Diligence Items | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Tuesday, October 16, 2007 | 1.0 hrs | 66 | Due Diligence Items | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Tuesday, October 16, 2007 | 1.0 hrs | 54 | Discussions with Potential Buyers | Correspondence with additional interested parties |
| Thursday, October 18, 2007 | 2.5 hrs | 66 | Due Diligence Items | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Thursday, October 18, 2007 | 1.0 hrs | 11 | Meetings and Calls | Phone/conf/all correspondence with Delphi |
| Friday, October 19, 2007 | 1.0 hrs | 66 | Due Diligence Items | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Friday, October 19, 2007 | 2.0 hrs | 54 | Discussions with Potential Buyers | Correspondence with additional interested parties |
| Monday, October 22, 2007 | 1.5 hrs | 11 | Meetings and Calls | Internal Meeting - Project Planning, Due-Diligence Planning |
| Monday, October 22, 2007 | 2.0 hrs | 66 | Due Diligence Items | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Wednesday, October 24, 2007 | 1.0 hrs | 66 | Due Diligence Items | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Thursday, October 25, 2007 | 2.0 hrs | 66 | Due Diligence Items | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Thursday, October 25, 2007 | 1.5 hrs | 54 | Discussions with Potential Buyers | Correspondence with additional interested parties |
| Friday, October 26, 2007 | 2.5 hrs | 66 | Due Diligence Items | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Friday, October 26, 2007 | 1.0 hrs | 11 | Meetings and Calls | Phone/conf/all correspondence with Delphi |
| Monday, October 29, 2007 | 1.0 hrs | 11 | Meetings and Calls | Internal Meeting - Project Planning, Due-Diligence Planning |
| Monday, October 29, 2007 | 2.0 hrs | 66 | Due Diligence Items | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Monday, October 29, 2007 | 2.0 hrs | 54 | Discussions with Potential Buyers | Correspondence with additional interested parties |
| Tuesday, October 30, 2007 | 2.5 hrs | 66 | Due Diligence Items | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Wednesday, October 31, 2007 | 1.0 hrs | 66 | Due Diligence Items | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| **Total Hours - October** | **76.5 hrs** | | | |

Delphi Mounts - Time Sheet

Confidential

W.Y. CAMPBELL & COMPANY

**Delphi - Mounts Product Line**

*Time Sheet - Alex Schroeder*

| Date | Time | Task Code | Task | Description of Task |
|------|------|-----------|------|---------------------|
| Monday, October 01, 2007 | 1.0 hrs | 11 | Meetings and Calls | Internal Meeting - Project Planning, Due-Diligence Planning |
| Monday, October 01, 2007 | 1.0 hrs | 11 | Meetings and Calls | Conf. Call with Delphi |
| Monday, October 01, 2007 | 2.5 hrs | 66 | Due Diligence Items | Preparation for Conf. Call with Delphi |
| Tuesday, October 02, 2007 | 5.5 hrs | 66 | Due Diligence Items | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Tuesday, October 02, 2007 | 1.5 hrs | 66 | Due Diligence Items | Preparation for meeting with Buyer Group and Delphi |
| Wednesday, October 03, 2007 | 2.0 hrs | 66 | Due Diligence Items | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Wednesday, October 03, 2007 | 2.0 hrs | 66 | Due Diligence Items | Preparation for meeting with Buyer Group and Delphi |
| Thursday, October 04, 2007 | 2.0 hrs | 66 | Due Diligence Items | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Thursday, October 04, 2007 | 1.0 hrs | 54 | Discussions with Potential Buyers | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Friday, October 05, 2007 | 1.5 hrs | 66 | Due Diligence Items | Correspondence with additional interested parties |
| Friday, October 05, 2007 | 1.5 hrs | 54 | Discussions with Potential Buyers | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Monday, October 08, 2007 | 0.5 hrs | 11 | Meetings and Calls | Correspondence with additional interested parties |
| Monday, October 08, 2007 | 1.0 hrs | 54 | Discussions with Potential Buyers | Internal Meeting - Project Planning, Due-Diligence Planning |
| Tuesday, October 09, 2007 | 1.5 hrs | 66 | Due Diligence Items | Correspondence with additional interested parties |
| Tuesday, October 09, 2007 | 1.0 hrs | 54 | Discussions with Potential Buyers | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Wednesday, October 10, 2007 | 4.0 hrs | 66 | Due Diligence Items | Correspondence with additional interested parties |
| Wednesday, October 10, 2007 | 1.0 hrs | 66 | Due Diligence Items | Preparation for meeting with Buyer Group and Delphi |
| Wednesday, October 10, 2007 | 1.0 hrs | 54 | Discussions with Potential Buyers | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Thursday, October 11, 2007 | 3.0 hrs | 66 | Due Diligence Items | Preparation for meeting with Buyer Group and Delphi |
| Thursday, October 11, 2007 | 1.5 hrs | 66 | Due Diligence Items | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Friday, October 12, 2007 | 2.0 hrs | 66 | Due Diligence Items | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Monday, October 15, 2007 | 1.0 hrs | 11 | Meetings and Calls | Internal Meeting - Project Planning, Due-Diligence Planning |
| Monday, October 15, 2007 | 1.5 hrs | 66 | Due Diligence Items | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Monday, October 15, 2007 | 1.5 hrs | 54 | Discussions with Potential Buyers | Correspondence with additional interested parties |
| Wednesday, October 17, 2007 | 1.5 hrs | 66 | Due Diligence Items | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Thursday, October 18, 2007 | 1.5 hrs | 66 | Due Diligence Items | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Thursday, October 18, 2007 | 1.0 hrs | 54 | Discussions with Potential Buyers | Correspondence with additional interested parties |
| Friday, October 19, 2007 | 1.0 hrs | 11 | Meetings and Calls | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Monday, October 22, 2007 | 1.5 hrs | 11 | Meetings and Calls | Internal Meeting - Project Planning, Due-Diligence Planning |
| Monday, October 22, 2007 | 1.0 hrs | 66 | Due Diligence Items | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Tuesday, October 23, 2007 | 1.0 hrs | 66 | Due Diligence Items | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Wednesday, October 24, 2007 | 1.5 hrs | 66 | Due Diligence Items | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Wednesday, October 24, 2007 | 1.5 hrs | 54 | Discussions with Potential Buyers | Correspondence with additional interested parties |
| Thursday, October 25, 2007 | 1.0 hrs | 54 | Discussions with Potential Buyers | Correspondence with additional interested parties |
| Friday, October 26, 2007 | 2.0 hrs | 66 | Due Diligence Items | Internal Meeting - Project Planning, Due-Diligence Planning |
| Saturday, October 27, 2007 | 1.5 hrs | 54 | Discussions with Potential Buyers | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Monday, October 29, 2007 | 1.0 hrs | 11 | Meetings and Calls | Correspondence with additional interested parties |
| Monday, October 29, 2007 | 1.0 hrs | 66 | Due Diligence Items | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Tuesday, October 30, 2007 | 1.5 hrs | 66 | Due Diligence Items | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| **Total Hours - October** | **62.0 hrs** | | | |

Delphi Mounts - Time Sheet

Confidential

W.Y. CAMPBELL & COMPANY
Delphi Corporation - Powertrain and Suspension Mounts Product Line
Summary of Hours
November 2007

| Name | Function | Title | Number of Hours |
|------|----------|-------|-----------------|
| André Augier | Investment Banking | Managing Director | 40.5 |
| Kurt Haras | Investment Banking | Director | 47.0 |
| Greg McGowan | Investment Banking | Senior Associate | 63.5 |
| Alex Schroeder | Investment Banking | Analyst | 69.0 |
| **Total** | | | **220.0** |

Delphi Mounts - Time Sheet

Confidential

W.Y. CAMPBELL & COMPANY

Delphi - Mounts Product Line

*Time Sheet - Andre Auger*

| Date | Time | Task Code | Task | Description of Time Spent |
|---|---|---|---|---|
| Thursday, November 01, 2007 | 0.5 hrs | 54 | Discussions with Potential Buyers | Phone/email correspondence with Buyer Group |
| Thursday, November 01, 2007 | 0.5 hrs | 11 | Meetings and Calls | Phone/email correspondence with Delphi |
| Friday, November 02, 2007 | 1.0 hrs | 54 | Discussions with Potential Buyers | Phone/email correspondence with Buyer Group |
| Monday, November 05, 2007 | 1.0 hrs | 11 | Meetings and Calls | Internal Meeting - Project Planning, Due-Diligence Planning |
| Monday, November 05, 2007 | 2.0 hrs | 11 | Meetings and Calls | Meeting at Delphi |
| Monday, November 05, 2007 | 1.5 hrs | 54 | Discussions with Potential Buyers | Phone/email correspondence with Buyer Group |
| Monday, November 05, 2007 | 1.0 hrs | 11 | Meetings and Calls | Phone/email correspondence with Delphi |
| Monday, November 05, 2007 | 2.5 hrs | 11 | Meetings and Calls | Preparation for meeting at Delphi |
| Tuesday, November 06, 2007 | 0.5 hrs | 54 | Discussions with Potential Buyers | Phone/email correspondence with Buyer Group |
| Tuesday, November 06, 2007 | 0.5 hrs | 11 | Meetings and Calls | Phone/email correspondence with Delphi |
| Wednesday, November 07, 2007 | 3.0 hrs | 54 | Discussions with Potential Buyers | Phone/email correspondence with Buyer Group |
| Thursday, November 08, 2007 | 1.5 hrs | 54 | Discussions with Potential Buyers | Phone/email correspondence with Buyer Group |
| Thursday, November 08, 2007 | 0.5 hrs | 11 | Meetings and Calls | Phone/email correspondence with Delphi |
| Friday, November 09, 2007 | 1.5 hrs | 54 | Discussions with Potential Buyers | Phone/email correspondence with Buyer Group |
| Monday, November 12, 2007 | 1.5 hrs | 11 | Meetings and Calls | Internal Meeting - Project Planning, Due-Diligence Planning |
| Monday, November 12, 2007 | 1.5 hrs | 54 | Discussions with Potential Buyers | Phone/email correspondence with Buyer Group |
| Monday, November 12, 2007 | 1.5 hrs | 11 | Meetings and Calls | Phone/email correspondence with Delphi |
| Tuesday, November 13, 2007 | 1.5 hrs | 54 | Discussions with Potential Buyers | Phone/email correspondence with Buyer Group |
| Tuesday, November 13, 2007 | 1.0 hrs | 11 | Meetings and Calls | Phone/email correspondence with Delphi |
| Wednesday, November 14, 2007 | 1.0 hrs | 54 | Discussions with Potential Buyers | Phone/email correspondence with Buyer Group |
| Thursday, November 15, 2007 | 0.5 hrs | 54 | Discussions with Potential Buyers | Phone/email correspondence with Buyer Group |
| Thursday, November 15, 2007 | 0.5 hrs | 11 | Meetings and Calls | Phone/email correspondence with Delphi |
| Friday, November 16, 2007 | 1.0 hrs | 54 | Discussions with Potential Buyers | Phone/email correspondence with Buyer Group |
| Monday, November 19, 2007 | 1.5 hrs | 11 | Meetings and Calls | Internal Meeting - Project Planning, Due-Diligence Planning |
| Monday, November 19, 2007 | 1.5 hrs | 54 | Discussions with Potential Buyers | Phone/email correspondence with Buyer Group |
| Monday, November 19, 2007 | 0.5 hrs | 11 | Meetings and Calls | Phone/email correspondence with Delphi |
| Tuesday, November 20, 2007 | 0.5 hrs | 54 | Discussions with Potential Buyers | Phone/email correspondence with Buyer Group |
| Wednesday, November 21, 2007 | 1.0 hrs | 54 | Discussions with Potential Buyers | Phone/email correspondence with Buyer Group |
| Wednesday, November 21, 2007 | 1.0 hrs | 11 | Meetings and Calls | Phone/email correspondence with Delphi |
| Monday, November 26, 2007 | 1.0 hrs | 11 | Meetings and Calls | Internal Meeting - Project Planning, Due-Diligence Planning |
| Monday, November 26, 2007 | 1.5 hrs | 54 | Discussions with Potential Buyers | Phone/email correspondence with Buyer Group |
| Tuesday, November 27, 2007 | 1.5 hrs | 54 | Discussions with Potential Buyers | Phone/email correspondence with Buyer Group |
| Tuesday, November 27, 2007 | 0.5 hrs | 11 | Meetings and Calls | Phone/email correspondence with Delphi |
| Wednesday, November 28, 2007 | 1.0 hrs | 54 | Discussions with Potential Buyers | Phone/email correspondence with Buyer Group |
| Thursday, November 29, 2007 | 0.5 hrs | 54 | Discussions with Potential Buyers | Phone/email correspondence with Buyer Group |
| Thursday, November 29, 2007 | 1.0 hrs | 11 | Meetings and Calls | Phone/email correspondence with Delphi |
| Friday, November 30, 2007 | 0.5 hrs | 54 | Discussions with Potential Buyers | Phone/email correspondence with Buyer Group |
| **Total Hours - November** | **40.5 hrs** | | | |

Delphi Mounts - Time Sheet

Confidential

**Delphi – Mounts Product Line**

*Time Sheet – Kurt Huras*

W.Y. CAMPBELL & COMPANY

| Date | Time | Task Code | Task | Description of Time Spent |
|---|---|---|---|---|
| Thursday, November 01, 2007 | 1.5 hrs | 54 | Discussions with Potential Buyers | Phone/email correspondence with Buyer Group |
| Friday, November 02, 2007 | 1.0 hrs | 54 | Discussions with Potential Buyers | Phone/email correspondence with Buyer Group |
| Monday, November 05, 2007 | 1.0 hrs | 11 | Meetings and Calls | Internal Meeting - Project Planning, Due-Diligence Planning |
| Monday, November 05, 2007 | 2.0 hrs | 11 | Meetings and Calls | Meeting at Delphi |
| Monday, November 05, 2007 | 1.0 hrs | 54 | Discussions with Potential Buyers | Phone/email correspondence with Buyer Group |
| Monday, November 05, 2007 | 2.5 hrs | 11 | Meetings and Calls | Preparation for meeting at Delphi |
| Tuesday, November 06, 2007 | 0.5 hrs | 54 | Discussions with Potential Buyers | Phone/email correspondence with Buyer Group |
| Wednesday, November 07, 2007 | 1.5 hrs | 54 | Discussions with Potential Buyers | Phone/email correspondence with Buyer Group |
| Thursday, November 08, 2007 | 1.5 hrs | 54 | Discussions with Potential Buyers | Phone/email correspondence with Buyer Group |
| Friday, November 09, 2007 | 1.0 hrs | 54 | Discussions with Potential Buyers | Phone/email correspondence with Buyer Group |
| Monday, November 12, 2007 | 1.5 hrs | 11 | Meetings and Calls | Internal Meeting - Project Planning, Due-Diligence Planning |
| Monday, November 12, 2007 | 2.0 hrs | 54 | Discussions with Potential Buyers | Phone/email correspondence with Buyer Group |
| Tuesday, November 13, 2007 | 1.0 hrs | 54 | Discussions with Potential Buyers | Phone/email correspondence with Buyer Group |
| Tuesday, November 13, 2007 | 1.0 hrs | 51 | Buyer Research | Review of Buyer research |
| Wednesday, November 14, 2007 | 1.0 hrs | 54 | Discussions with Potential Buyers | Phone/email correspondence with Buyer Group |
| Thursday, November 15, 2007 | 1.0 hrs | 54 | Discussions with Potential Buyers | Correspondence with additional interested parties |
| Thursday, November 15, 2007 | 1.0 hrs | 54 | Discussions with Potential Buyers | Phone/email correspondence with Buyer Group |
| Thursday, November 15, 2007 | 0.5 hrs | 11 | Meetings and Calls | Phone/email correspondence with Delphi |
| Friday, November 16, 2007 | 0.5 hrs | 54 | Discussions with Potential Buyers | Phone/email correspondence with Buyer Group |
| Friday, November 16, 2007 | 1.5 hrs | 11 | Meetings and Calls | Phone/email correspondence with Delphi |
| Friday, November 16, 2007 | 2.0 hrs | 51 | Buyer Research | Review of buyer research |
| Monday, November 19, 2007 | 1.5 hrs | 54 | Discussions with Potential Buyers | Correspondence with additional interested parties |
| Monday, November 19, 2007 | 1.0 hrs | 11 | Meetings and Calls | Internal Meeting - Project Planning, Due-Diligence Planning |
| Monday, November 19, 2007 | 1.0 hrs | 54 | Discussions with Potential Buyers | Phone/email correspondence with Buyer Group |
| Monday, November 19, 2007 | 2.0 hrs | 51 | Buyer Research | Review of buyer research |
| Tuesday, November 20, 2007 | 1.0 hrs | 54 | Discussions with Potential Buyers | Correspondence with additional interested parties |
| Tuesday, November 20, 2007 | 1.0 hrs | 54 | Discussions with Potential Buyers | Phone/email correspondence with Buyer Group |
| Tuesday, November 20, 2007 | 1.0 hrs | 51 | Buyer Research | Review of buyer research |
| Wednesday, November 21, 2007 | 1.0 hrs | 54 | Discussions with Potential Buyers | Phone/email correspondence with Buyer Group |
| Wednesday, November 21, 2007 | 0.5 hrs | 54 | Discussions with Potential Buyers | Correspondence with additional interested parties |
| Monday, November 26, 2007 | 1.0 hrs | 11 | Meetings and Calls | Internal Meeting - Project Planning, Due-Diligence Planning |
| Monday, November 26, 2007 | 1.5 hrs | 54 | Discussions with Potential Buyers | Phone/email correspondence with Buyer Group |
| Monday, November 26, 2007 | 0.5 hrs | 51 | Buyer Research | Review of buyer research |
| Tuesday, November 27, 2007 | 1.5 hrs | 54 | Discussions with Potential Buyers | Phone/email correspondence with Buyer Group |
| Wednesday, November 28, 2007 | 1.5 hrs | 54 | Discussions with Potential Buyers | Correspondence with additional interested parties |
| Wednesday, November 28, 2007 | 1.0 hrs | 54 | Discussions with Potential Buyers | Phone/email correspondence with Buyer Group |
| Thursday, November 29, 2007 | 1.0 hrs | 51 | Buyer Research | Review of buyer research |
| Friday, November 30, 2007 | 1.0 hrs | 54 | Discussions with Potential Buyers | Correspondence with additional interested parties |
| Friday, November 30, 2007 | 0.5 hrs | 54 | Discussions with Potential Buyers | Phone/email correspondence with Buyer Group |
| **Total Hours - November** | **47.0 hrs** | | | |

Confidential

**Delphi - Mounts Product Line**

*Time Sheet - Greg McGowan*

W.Y. CAMPBELL & COMPANY

| Date | Task | Time | Task Code | Description of Time Sheet |
|---|---|---|---|---|
| Thursday, November 01, 2007 | Discussions with Potential Buyers | 1.0 hrs | 54 | Correspondence with additional interested parties |
| Thursday, November 01, 2007 | Discussions with Potential Buyers | 1.5 hrs | 54 | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Friday, November 02, 2007 | Discussions with Potential Buyers | 0.5 hrs | 54 | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Monday, November 05, 2007 | Discussions with Potential Buyers | 0.5 hrs | 54 | Correspondence with additional interested parties |
| Monday, November 05, 2007 | Discussions with Potential Buyers | 1.0 hrs | 54 | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Monday, November 05, 2007 | Meetings and Calls | 1.0 hrs | 11 | Internal Meeting - Project Planning, Due-Diligence Planning |
| Monday, November 05, 2007 | Meetings and Calls | 3.5 hrs | 11 | Preparation for meeting at Delphi |
| Tuesday, November 06, 2007 | Discussions with Potential Buyers | 2.0 hrs | 54 | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Wednesday, November 07, 2007 | Discussions with Potential Buyers | 0.5 hrs | 54 | Correspondence with additional interested parties |
| Wednesday, November 07, 2007 | Discussions with Potential Buyers | 1.0 hrs | 54 | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Thursday, November 08, 2007 | Discussions with Potential Buyers | 0.5 hrs | 54 | Correspondence with additional interested parties |
| Thursday, November 08, 2007 | Discussions with Potential Buyers | 1.5 hrs | 54 | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Friday, November 09, 2007 | Discussions with Potential Buyers | 2.5 hrs | 54 | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Monday, November 12, 2007 | Discussions with Potential Buyers | 1.5 hrs | 54 | Correspondence with additional interested parties |
| Monday, November 12, 2007 | Discussions with Potential Buyers | 1.0 hrs | 54 | Correspondence with Buyer Group/Facilitation of Due Diligence Planning |
| Monday, November 12, 2007 | Meetings and Calls | 1.5 hrs | 11 | Internal Meeting - Project Planning, Due-Diligence Planning |
| Monday, November 12, 2007 | Meetings and Calls | 1.5 hrs | 11 | |
| Monday, November 12, 2007 | Buyer Research | 1.5 hrs | 51 | Database review - Buyer research |
| Tuesday, November 13, 2007 | Discussions with Potential Buyers | 1.5 hrs | 54 | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Tuesday, November 13, 2007 | Buyer Research | 4.0 hrs | 51 | Database review - Buyer research |
| Wednesday, November 14, 2007 | Discussions with Potential Buyers | 1.0 hrs | 54 | Correspondence with additional interested parties |
| Wednesday, November 14, 2007 | Discussions with Potential Buyers | 2.0 hrs | 54 | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Thursday, November 15, 2007 | Discussions with Potential Buyers | 1.0 hrs | 54 | Correspondence with additional interested parties |
| Thursday, November 15, 2007 | Discussions with Potential Buyers | 1.0 hrs | 54 | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Friday, November 16, 2007 | Discussions with Potential Buyers | 1.5 hrs | 54 | Correspondence with additional interested parties |
| Friday, November 16, 2007 | Discussions with Potential Buyers | 1.0 hrs | 54 | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Friday, November 16, 2007 | Buyer Research | 5.0 hrs | 51 | Database review - Buyer research |
| Monday, November 19, 2007 | Discussions with Potential Buyers | 0.5 hrs | 54 | Correspondence with additional interested parties |
| Monday, November 19, 2007 | Discussions with Potential Buyers | 1.0 hrs | 54 | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Monday, November 19, 2007 | Meetings and Calls | 1.0 hrs | 11 | Internal Meeting - Project Planning, Due-Diligence Planning |
| Monday, November 19, 2007 | Buyer Research | 1.0 hrs | 51 | Database review - Buyer research |
| Tuesday, November 20, 2007 | Discussions with Potential Buyers | 0.5 hrs | 54 | Correspondence with additional interested parties |
| Tuesday, November 20, 2007 | Discussions with Potential Buyers | 1.0 hrs | 54 | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Tuesday, November 20, 2007 | Buyer Research | 3.0 hrs | 51 | Database review - Buyer research |
| Wednesday, November 21, 2007 | Discussions with Potential Buyers | 2.0 hrs | 54 | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Monday, November 26, 2007 | Discussions with Potential Buyers | 1.0 hrs | 54 | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Monday, November 26, 2007 | Meetings and Calls | 1.0 hrs | 11 | Internal Meeting - Project Planning, Due-Diligence Planning |
| Monday, November 26, 2007 | Buyer Research | 1.5 hrs | 51 | Database review - Buyer research |
| Tuesday, November 27, 2007 | Discussions with Potential Buyers | 1.0 hrs | 54 | Correspondence with additional interested parties |
| Tuesday, November 27, 2007 | Discussions with Potential Buyers | 1.5 hrs | 54 | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Wednesday, November 28, 2007 | Discussions with Potential Buyers | 0.5 hrs | 54 | Correspondence with additional interested parties |
| Wednesday, November 28, 2007 | Discussions with Potential Buyers | 2.0 hrs | 54 | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Wednesday, November 28, 2007 | Buyer Research | 0.5 hrs | 51 | Database review - Buyer research |
| Thursday, November 29, 2007 | Discussions with Potential Buyers | 1.5 hrs | 54 | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Friday, November 30, 2007 | Discussions with Potential Buyers | 1.0 hrs | 54 | Correspondence with additional interested parties |
| Friday, November 30, 2007 | Discussions with Potential Buyers | 1.0 hrs | 54 | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| **Total Hours - November** | | **63.5 hrs** | | |

Delphi Mounts - Time Sheet

Confidential

W.Y. CAMPBELL & COMPANY

# Delphi - Mounts Product Line

*Time Sheet - Alex Schroeder*

| Date | Task | Task Code | Time | Description of Task |
|------|------|-----------|------|---------------------|
| Thursday, November 01, 2007 | Discussions with Potential Buyers | 54 | 1.0 hrs | Correspondence with additional interested parties |
| Thursday, November 01, 2007 | Discussions with Potential Buyers | 54 | 1.0 hrs | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Friday, November 02, 2007 | Discussions with Potential Buyers | 54 | 1.0 hrs | Correspondence with additional interested parties |
| Friday, November 02, 2007 | Discussions with Potential Buyers | 54 | 1.5 hrs | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Monday, November 05, 2007 | Discussions with Potential Buyers | 54 | 0.5 hrs | Correspondence with additional interested parties |
| Monday, November 05, 2007 | Discussions with Potential Buyers | 54 | 2.0 hrs | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Monday, November 05, 2007 | Meetings and Calls | 11 | 1.0 hrs | Internal Meeting - Project Planning, Due-Diligence Planning |
| Monday, November 05, 2007 | Meetings and Calls | 11 | 3.5 hrs | Preparation for meeting at Delphi |
| Tuesday, November 06, 2007 | Discussions with Potential Buyers | 54 | 1.0 hrs | Correspondence with additional interested parties |
| Tuesday, November 06, 2007 | Discussions with Potential Buyers | 54 | 2.5 hrs | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Wednesday, November 07, 2007 | Discussions with Potential Buyers | 54 | 1.0 hrs | Correspondence with additional interested parties |
| Wednesday, November 07, 2007 | Discussions with Potential Buyers | 54 | 2.0 hrs | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Thursday, November 08, 2007 | Discussions with Potential Buyers | 54 | 1.0 hrs | Correspondence with additional interested parties |
| Thursday, November 08, 2007 | Discussions with Potential Buyers | 54 | 1.5 hrs | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Friday, November 09, 2007 | Buyer Research | 51 | 0.5 hrs | Database review - Buyer research |
| Friday, November 09, 2007 | Discussions with Potential Buyers | 54 | 1.0 hrs | Correspondence with additional interested parties |
| Friday, November 09, 2007 | Discussions with Potential Buyers | 54 | 1.0 hrs | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Monday, November 12, 2007 | Discussions with Potential Buyers | 54 | 1.0 hrs | Correspondence with additional interested parties |
| Monday, November 12, 2007 | Discussions with Potential Buyers | 54 | 1.0 hrs | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Monday, November 12, 2007 | Meetings and Calls | 11 | 1.5 hrs | Internal Meeting - Project Planning, Due-Diligence Planning |
| Monday, November 12, 2007 | Buyer Research | 51 | 3.0 hrs | Database review - Buyer research |
| Tuesday, November 13, 2007 | Discussions with Potential Buyers | 54 | 1.0 hrs | Correspondence with additional interested parties |
| Tuesday, November 13, 2007 | Discussions with Potential Buyers | 54 | 1.5 hrs | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Wednesday, November 14, 2007 | Discussions with Potential Buyers | 54 | 1.0 hrs | Correspondence with additional interested parties |
| Wednesday, November 14, 2007 | Discussions with Potential Buyers | 54 | 1.0 hrs | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Wednesday, November 14, 2007 | Buyer Research | 51 | 2.0 hrs | Database review - Buyer research |
| Thursday, November 15, 2007 | Discussions with Potential Buyers | 54 | 0.5 hrs | Correspondence with additional interested parties |
| Thursday, November 15, 2007 | Discussions with Potential Buyers | 54 | 1.0 hrs | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Thursday, November 15, 2007 | Buyer Research | 51 | 2.0 hrs | Database review - Buyer research |
| Friday, November 16, 2007 | Discussions with Potential Buyers | 54 | 0.5 hrs | Correspondence with additional interested parties |
| Friday, November 16, 2007 | Discussions with Potential Buyers | 54 | 0.5 hrs | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Monday, November 19, 2007 | Discussions with Potential Buyers | 54 | 0.5 hrs | Correspondence with additional interested parties |
| Monday, November 19, 2007 | Discussions with Potential Buyers | 54 | 1.0 hrs | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Monday, November 19, 2007 | Meetings and Calls | 11 | 1.0 hrs | Internal Meeting - Project Planning, Due-Diligence Planning |
| Monday, November 19, 2007 | Buyer Research | 51 | 1.0 hrs | Database review - Buyer research |
| Tuesday, November 20, 2007 | Discussions with Potential Buyers | 54 | 0.5 hrs | Correspondence with additional interested parties |
| Tuesday, November 20, 2007 | Discussions with Potential Buyers | 54 | 1.5 hrs | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Tuesday, November 20, 2007 | Buyer Research | 51 | 1.5 hrs | Database review - Buyer research |
| Wednesday, November 21, 2007 | Discussions with Potential Buyers | 54 | 1.5 hrs | Correspondence with additional interested parties |
| Wednesday, November 21, 2007 | Discussions with Potential Buyers | 54 | 2.0 hrs | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Monday, November 26, 2007 | Discussions with Potential Buyers | 54 | 1.5 hrs | Correspondence with additional interested parties |
| Monday, November 26, 2007 | Discussions with Potential Buyers | 54 | 2.0 hrs | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Monday, November 26, 2007 | Meetings and Calls | 11 | 1.0 hrs | Internal Meeting - Project Planning, Due-Diligence Planning |
| Tuesday, November 27, 2007 | Discussions with Potential Buyers | 54 | 1.5 hrs | Correspondence with additional interested parties |
| Tuesday, November 27, 2007 | Discussions with Potential Buyers | 54 | 2.5 hrs | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Wednesday, November 28, 2007 | Discussions with Potential Buyers | 54 | 1.5 hrs | Correspondence with additional interested parties |
| Wednesday, November 28, 2007 | Discussions with Potential Buyers | 54 | 1.5 hrs | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Wednesday, November 28, 2007 | Buyer Research | 51 | 1.0 hrs | Database review - Buyer research |
| Thursday, November 29, 2007 | Discussions with Potential Buyers | 54 | 1.0 hrs | Correspondence with additional interested parties |
| Thursday, November 29, 2007 | Discussions with Potential Buyers | 54 | 1.0 hrs | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Friday, November 30, 2007 | Discussions with Potential Buyers | 54 | 1.0 hrs | Correspondence with additional interested parties |
| Friday, November 30, 2007 | Discussions with Potential Buyers | 54 | 0.5 hrs | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Friday, November 30, 2007 | Buyer Research | 51 | 1.0 hrs | Database review - Buyer research |
| **Total Hours - November** | | | **69.0 hrs** | |

Delphi Mounts - Time Sheet

W.Y. CAMPBELL & COMPANY
Delphi Corporation - Powertrain and Suspension Mounts Product Line
Summary of Hours
December 2007

| Name | Function | Title | Number of Hours |
|------|----------|-------|-----------------|
| André Augier | Investment Banking | Managing Director | 39.0 |
| Kurt Haras | Investment Banking | Director | 54.5 |
| Greg McGowan | Investment Banking | Senior Associate | 60.0 |
| Alex Schroeder | Investment Banking | Analyst | 59.5 |
| **Total** | | | **213.0** |

Delphi Mounts - Time Sheet

Confidential

Confidential

Delphi - Mounts Product Line

W.Y. CAMPBELL & COMPANY

*Time Sheet - Andre Augier*

| Date | Time | Task Code | Task | Description of Time Spent |
|------|------|-----------|------|---------------------------|
| Monday, December 03, 2007 | 1.5 hrs | 11 | Meetings and Calls | Internal Meeting - Project Planning, Due-Diligence Planning |
| Monday, December 03, 2007 | 1.0 hrs | 54 | Discussions with Potential Buyers | Phone/email correspondence with Buyer Group |
| Monday, December 03, 2007 | 1.0 hrs | 11 | Meetings and Calls | Phone/email correspondence with Delphi |
| Tuesday, December 04, 2007 | 1.0 hrs | 41 | Review of Financial Data | Review of new financial data sent by Laura Adams |
| Tuesday, December 04, 2007 | 0.5 hrs | 54 | Discussions with Potential Buyers | Phone/email correspondence with Buyer Group |
| Tuesday, December 04, 2007 | 0.5 hrs | 11 | Meetings and Calls | Phone/email correspondence with Delphi |
| Wednesday, December 05, 2007 | 1.0 hrs | 54 | Discussions with Potential Buyers | Phone/email correspondence with Buyer Group |
| Wednesday, December 05, 2007 | 0.5 hrs | 11 | Meetings and Calls | Phone/email correspondence with Delphi |
| Thursday, December 06, 2007 | 0.5 hrs | 41 | Review of Financial Data | Review of revised financial data |
| Thursday, December 06, 2007 | 1.0 hrs | 54 | Discussions with Potential Buyers | Phone/email correspondence with Buyer Group |
| Thursday, December 06, 2007 | 0.5 hrs | 11 | Meetings and Calls | Phone/email correspondence with Delphi |
| Friday, December 07, 2007 | 0.5 hrs | 54 | Discussions with Potential Buyers | Phone/email correspondence with Buyer Group |
| Friday, December 07, 2007 | 1.0 hrs | 11 | Meetings and Calls | Phone/email correspondence with Delphi |
| Monday, December 10, 2007 | 1.5 hrs | 11 | Meetings and Calls | Internal Meeting - Project Planning, Due-Diligence Planning |
| Monday, December 10, 2007 | 1.5 hrs | 54 | Discussions with Potential Buyers | Phone/email correspondence with Buyer Group |
| Monday, December 10, 2007 | 0.5 hrs | 11 | Meetings and Calls | Phone/email correspondence with Delphi |
| Tuesday, December 11, 2007 | 3.0 hrs | 54 | Discussions with Potential Buyers | Phone/email correspondence with Buyer Group |
| Tuesday, December 11, 2007 | 0.5 hrs | 11 | Meetings and Calls | Phone/email correspondence with Delphi |
| Wednesday, December 12, 2007 | 0.5 hrs | 54 | Discussions with Potential Buyers | Phone/email correspondence with Buyer Group |
| Wednesday, December 12, 2007 | 1.0 hrs | 11 | Meetings and Calls | Phone/email correspondence with Delphi |
| Thursday, December 13, 2007 | 2.0 hrs | 54 | Discussions with Potential Buyers | Phone/email correspondence with Buyer Group |
| Thursday, December 13, 2007 | 0.5 hrs | 11 | Meetings and Calls | Phone/email correspondence with Delphi |
| Friday, December 14, 2007 | 1.0 hrs | 54 | Discussions with Potential Buyers | Phone/email correspondence with Buyer Group |
| Friday, December 14, 2007 | 0.5 hrs | 11 | Meetings and Calls | Phone/email correspondence with Delphi |
| Monday, December 17, 2007 | 1.0 hrs | 11 | Meetings and Calls | Internal Meeting - Project Planning, Due-Diligence Planning |
| Monday, December 17, 2007 | 1.0 hrs | 54 | Discussions with Potential Buyers | Phone/email correspondence with Buyer Group |
| Monday, December 17, 2007 | 0.5 hrs | 11 | Meetings and Calls | Phone/email correspondence with Delphi |
| Tuesday, December 18, 2007 | 2.5 hrs | 54 | Discussions with Potential Buyers | Phone/email correspondence with Buyer Group |
| Tuesday, December 18, 2007 | 1.0 hrs | 11 | Meetings and Calls | Phone/email correspondence with Delphi |
| Wednesday, December 19, 2007 | 1.0 hrs | 54 | Discussions with Potential Buyers | Phone/email correspondence with Buyer Group |
| Wednesday, December 19, 2007 | 0.5 hrs | 11 | Meetings and Calls | Phone/email correspondence with Delphi |
| Thursday, December 20, 2007 | 0.5 hrs | 54 | Discussions with Potential Buyers | Phone/email correspondence with Buyer Group |
| Thursday, December 20, 2007 | 0.5 hrs | 11 | Meetings and Calls | Phone/email correspondence with Delphi |
| Friday, December 21, 2007 | 0.5 hrs | 41 | Review of Financial Data | Review of updated financial data sent by Laura Adams |
| Friday, December 21, 2007 | 0.5 hrs | 54 | Discussions with Potential Buyers | Phone/email correspondence with Buyer Group |
| Friday, December 21, 2007 | 1.0 hrs | 11 | Meetings and Calls | Phone/email correspondence with Delphi |
| Monday, December 24, 2007 | 1.0 hrs | 54 | Discussions with Potential Buyers | Phone/email correspondence with Buyer Group |
| Wednesday, October 26, 2007 | 0.5 hrs | 11 | Meetings and Calls | Internal Meeting - Project Planning, Due-Diligence Planning |
| Wednesday, October 26, 2007 | 0.5 hrs | 54 | Discussions with Potential Buyers | Phone/email correspondence with Buyer Group |
| Wednesday, December 26, 2007 | 1.0 hrs | 11 | Meetings and Calls | Phone/email correspondence with Delphi |
| Thursday, December 27, 2007 | 1.0 hrs | 54 | Discussions with Potential Buyers | Phone/email correspondence with Buyer Group |
| Thursday, December 27, 2007 | 0.5 hrs | 11 | Meetings and Calls | Phone/email correspondence with Delphi |
| Friday, December 28, 2007 | 0.5 hrs | 54 | Discussions with Potential Buyers | Phone/email correspondence with Buyer Group |
| Friday, December 28, 2007 | 0.5 hrs | 11 | Meetings and Calls | Phone/email correspondence with Delphi |
| **Total Hours - December** | **39.0 hrs** | | | |

Delphi Mounts - Time Sheet

Confidential

**Delphi - Mounts Product Line**

Time Sheet - Kurt Haras

W.Y. CAMPBELL & COMPANY

| Date | Time | Task Code | Task | Description of Time Spent |
|---|---|---|---|---|
| Monday, December 03, 2007 | 1.5 hrs | 11 | Meetings and Calls | Internal Meeting - Project Planning, Due-Diligence Planning |
| Monday, December 03, 2007 | 1.0 hrs | 41 | Review of Financial Data | Review of new financial data sent by Laura Adams |
| Monday, December 03, 2007 | 1.0 hrs | 54 | Discussions with Potential Buyers | Phone/email correspondence with Buyer Group |
| Monday, December 03, 2007 | 2.0 hrs | 11 | Meetings and Calls | Phone/email correspondence with Delphi |
| Tuesday, December 04, 2007 | 1.0 hrs | 41 | Review of Financial Data | Review of new financial data sent by Laura Adams |
| Tuesday, December 04, 2007 | 1.0 hrs | 54 | Discussions with Potential Buyers | Phone/email correspondence with Buyer Group |
| Tuesday, December 04, 2007 | 1.0 hrs | 11 | Meetings and Calls | Phone/email correspondence with Delphi |
| Tuesday, December 04, 2007 | 3.0 hrs | 54 | Discussions with Potential Buyers | Correspondence with additional interested parties |
| Wednesday, December 05, 2007 | 1.0 hrs | 41 | Review of Financial Data | Review of revised financial data |
| Wednesday, December 05, 2007 | 0.5 hrs | 54 | Discussions with Potential Buyers | Phone/email correspondence with Buyer Group |
| Wednesday, December 05, 2007 | 0.5 hrs | 11 | Meetings and Calls | Phone/email correspondence with Delphi |
| Thursday, December 06, 2007 | 0.5 hrs | 41 | Review of Financial Data | Review of revised financial data |
| Thursday, December 06, 2007 | 0.5 hrs | 54 | Discussions with Potential Buyers | Phone/email correspondence with Buyer Group |
| Thursday, December 06, 2007 | 1.0 hrs | 54 | Discussions with Potential Buyers | Correspondence with additional interested parties |
| Friday, December 07, 2007 | 0.5 hrs | 54 | Discussions with Potential Buyers | Phone/email correspondence with Buyer Group |
| Friday, December 07, 2007 | 0.5 hrs | 11 | Meetings and Calls | Phone/email correspondence with Delphi |
| Monday, December 10, 2007 | 1.5 hrs | 11 | Meetings and Calls | Internal Meeting - Project Planning, Due-Diligence Planning |
| Monday, December 10, 2007 | 1.5 hrs | 54 | Discussions with Potential Buyers | Phone/email correspondence with Buyer Group |
| Monday, December 10, 2007 | 0.5 hrs | 11 | Meetings and Calls | Phone/email correspondence with Delphi |
| Monday, December 10, 2007 | 2.0 hrs | 54 | Discussions with Potential Buyers | Correspondence with additional interested parties |
| Tuesday, December 11, 2007 | 3.0 hrs | 54 | Discussions with Potential Buyers | Phone/email correspondence with Buyer Group |
| Wednesday, December 12, 2007 | 0.5 hrs | 54 | Discussions with Potential Buyers | Phone/email correspondence with Buyer Group |
| Thursday, December 13, 2007 | 2.0 hrs | 54 | Discussions with Potential Buyers | Phone/email correspondence with Buyer Group |
| Thursday, December 13, 2007 | 1.0 hrs | 54 | Discussions with Potential Buyers | Correspondence with additional interested parties |
| Friday, December 14, 2007 | 0.5 hrs | 54 | Discussions with Potential Buyers | Phone/email correspondence with Buyer Group |
| Friday, December 14, 2007 | 0.5 hrs | 11 | Meetings and Calls | Phone/email correspondence with Delphi |
| Friday, December 14, 2007 | 3.0 hrs | 54 | Discussions with Potential Buyers | Correspondence with additional interested parties |
| Monday, December 17, 2007 | 1.0 hrs | 11 | Meetings and Calls | Internal Meeting - Project Planning, Due-Diligence Planning |
| Monday, December 17, 2007 | 1.0 hrs | 54 | Discussions with Potential Buyers | Phone/email correspondence with Buyer Group |
| Monday, December 17, 2007 | 0.5 hrs | 54 | Discussions with Potential Buyers | Correspondence with additional interested parties |
| Tuesday, December 18, 2007 | 0.5 hrs | 54 | Discussions with Potential Buyers | Phone/email correspondence with Buyer Group |
| Tuesday, December 18, 2007 | 1.0 hrs | 54 | Discussions with Potential Buyers | Correspondence with additional interested parties |
| Wednesday, December 19, 2007 | 1.0 hrs | 54 | Discussions with Potential Buyers | Phone/email correspondence with Buyer Group |
| Wednesday, December 19, 2007 | 1.0 hrs | 11 | Meetings and Calls | Phone/email correspondence with Delphi |
| Wednesday, December 19, 2007 | 3.0 hrs | 54 | Discussions with Potential Buyers | Correspondence with additional interested parties |
| Thursday, December 20, 2007 | 0.5 hrs | 54 | Discussions with Potential Buyers | Phone/email correspondence with Buyer Group |
| Thursday, December 20, 2007 | 1.5 hrs | 41 | Review of Financial Data | Phone/email correspondence with Delphi |
| Thursday, December 20, 2007 | 2.5 hrs | 54 | Discussions with Potential Buyers | Correspondence with additional interested parties |
| Friday, December 21, 2007 | 1.0 hrs | 41 | Review of Financial Data | Review of updated financial data sent by Laura Adams |
| Friday, December 21, 2007 | 1.0 hrs | 54 | Discussions with Potential Buyers | Phone/email correspondence with Buyer Group |
| Friday, December 21, 2007 | 0.5 hrs | 11 | Meetings and Calls | Phone/email correspondence with Delphi |
| Friday, December 21, 2007 | 0.5 hrs | 54 | Discussions with Potential Buyers | Correspondence with additional interested parties |
| Monday, December 24, 2007 | 0.5 hrs | 54 | Discussions with Potential Buyers | Phone/email correspondence with Buyer Group |
| Wednesday, December 26, 2007 | 0.5 hrs | 11 | Meetings and Calls | Internal Meeting - Project Planning, Due-Diligence Planning |
| Wednesday, December 26, 2007 | 0.5 hrs | 54 | Discussions with Potential Buyers | Phone/email correspondence with Buyer Group |
| Thursday, December 27, 2007 | 0.5 hrs | 54 | Discussions with Potential Buyers | Phone/email correspondence with Buyer Group |
| Friday, December 28, 2007 | 1.0 hrs | 54 | Discussions with Potential Buyers | Phone/email correspondence with Buyer Group |
| Friday, December 28, 2007 | 1.0 hrs | 54 | Discussions with Potential Buyers | Correspondence with additional interested parties |
| **Total Hours - December** | **54.5 hrs** | | | |

Delphi Mounts - Time Sheet

W.Y. CAMPBELL & COMPANY

**Delphi - Mounts Product Line**

*Time Sheet - Greg McGowan*

| Date | Time | Task Code | Task | Description of Time Spent |
|---|---|---|---|---|
| Monday, December 03, 2007 | 1.5 hrs | 11 | Meetings and Calls | Internal Meeting - Project Planning, Due-Diligence Planning |
| Monday, December 03, 2007 | 2.5 hrs | 41 | Review of Financial Data | Review of new financial data sent by Laura Adams |
| Tuesday, December 04, 2007 | 3.0 hrs | 41 | Review of Financial Data | Review of new financial data sent by Laura Adams |
| Tuesday, December 04, 2007 | 5.0 hrs | 42 | Modeling of Financial Data | Modeling of new financial data |
| Wednesday, December 05, 2007 | 4.5 hrs | 42 | Modeling of Financial Data | Modeling of new financial data |
| Wednesday, December 05, 2007 | 3.0 hrs | 41 | Review of Financial Data | Review of revised financial data |
| Friday, December 07, 2007 | 0.5 hrs | 54 | Discussions with Potential Buyers | Correspondence with additional interested parties |
| Monday, December 10, 2007 | 1.5 hrs | 11 | Meetings and Calls | Internal Meeting - Project Planning, Due Diligence Planning |
| Monday, December 10, 2007 | 0.5 hrs | 54 | Discussions with Potential Buyers | Correspondence with additional interested parties |
| Tuesday, December 11, 2007 | 0.5 hrs | 54 | Discussions with Potential Buyers | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Wednesday, December 12, 2007 | 1.0 hrs | 54 | Discussions with Potential Buyers | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Wednesday, December 12, 2007 | 2.5 hrs | 51 | Buyer Research | Database review - Buyer research |
| Wednesday, December 12, 2007 | 1.0 hrs | 54 | Discussions with Potential Buyers | Correspondence with additional interested parties |
| Thursday, December 13, 2007 | 1.0 hrs | 54 | Discussions with Potential Buyers | Correspondence with additional interested parties |
| Friday, December 14, 2007 | 0.5 hrs | 54 | Discussions with Potential Buyers | Correspondence with additional interested parties |
| Monday, December 17, 2007 | 1.0 hrs | 11 | Meetings and Calls | Internal Meeting - Project Planning, Due Diligence Planning |
| Monday, December 17, 2007 | 0.5 hrs | 54 | Discussions with Potential Buyers | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Monday, December 17, 2007 | 1.0 hrs | 54 | Discussions with Potential Buyers | Correspondence with additional interested parties |
| Tuesday, December 18, 2007 | 1.0 hrs | 54 | Discussions with Potential Buyers | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Tuesday, December 18, 2007 | 2.5 hrs | 51 | Buyer Research | Database review - Buyer research |
| Tuesday, December 18, 2007 | 1.0 hrs | 54 | Discussions with Potential Buyers | Correspondence with additional interested parties |
| Thursday, December 20, 2007 | 2.5 hrs | 41 | Review of Financial Data | Review of updated financial data sent by Laura Adams |
| Thursday, December 20, 2007 | 1.0 hrs | 54 | Discussions with Potential Buyers | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Thursday, December 20, 2007 | 1.0 hrs | 54 | Discussions with Potential Buyers | Correspondence with additional interested parties |
| Friday, December 21, 2007 | 3.0 hrs | 41 | Review of Financial Data | Review of updated financial data sent by Laura Adams |
| Friday, December 21, 2007 | 6.0 hrs | 42 | Modeling of Financial Data | Modeling of updated financial data |
| Friday, December 21, 2007 | 0.5 hrs | 54 | Discussions with Potential Buyers | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Wednesday, December 26, 2007 | 0.5 hrs | 11 | Meetings and Calls | Internal Meeting - Project Planning, Due Diligence Planning |
| Wednesday, December 26, 2007 | 0.5 hrs | 54 | Discussions with Potential Buyers | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Thursday, December 27, 2007 | 1.0 hrs | 54 | Discussions with Potential Buyers | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Thursday, December 27, 2007 | 4.0 hrs | 51 | Buyer Research | Database review - Buyer research |
| Thursday, December 27, 2007 | 1.0 hrs | 54 | Discussions with Potential Buyers | Correspondence with additional interested parties |
| Friday, December 28, 2007 | 1.0 hrs | 54 | Discussions with Potential Buyers | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Friday, December 28, 2007 | 2.5 hrs | 51 | Buyer Research | Database review - Buyer research |
| **Total Hours - December** | **60.0 hrs** | | | |

Delphi Mounts - Time Sheet

Confidential

Confidential

W.Y. CAMPBELL & COMPANY

Delphi - Mounts Product Line

Time Sheet - Alex Schroeder

| Date | Time | Task Code | Task | Description of Task |
|---|---|---|---|---|
| Monday, December 03, 2007 | 1.5 hrs | 11 | Meetings and Calls | Internal Meeting - Project Planning, Due-Diligence Planning |
| Monday, December 03, 2007 | 3.0 hrs | 41 | Review of Financial Data | Review of new financial data sent by Laura Adams |
| Tuesday, December 04, 2007 | 3.5 hrs | 41 | Review of Financial Data | Review of new financial data sent by Laura Adams |
| Tuesday, December 04, 2007 | 6.0 hrs | 42 | Modeling of Financial Data | Modeling of new financial data |
| Wednesday, December 05, 2007 | 4.0 hrs | 42 | Modeling of Financial Data | Modeling of new financial data |
| Thursday, December 06, 2007 | 1.0 hrs | 54 | Discussions with Potential Buyers | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Friday, December 07, 2007 | 0.5 hrs | 54 | Discussions with Potential Buyers | Correspondence with additional interested parties |
| Monday, December 10, 2007 | 1.5 hrs | 11 | Meetings and Calls | Internal Meeting - Project Planning, Due-Diligence Planning |
| Monday, December 10, 2007 | 2.0 hrs | 54 | Discussions with Potential Buyers | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Tuesday, December 11, 2007 | 1.0 hrs | 54 | Discussions with Potential Buyers | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Tuesday, December 11, 2007 | 0.5 hrs | 54 | Discussions with Potential Buyers | Correspondence with additional interested parties |
| Wednesday, December 12, 2007 | 3.0 hrs | 51 | Buyer Research | Database review - Buyer Research |
| Wednesday, December 12, 2007 | 0.5 hrs | 54 | Discussions with Potential Buyers | Correspondence with additional interested parties |
| Thursday, December 13, 2007 | 2.0 hrs | 54 | Discussions with Potential Buyers | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Friday, December 14, 2007 | 1.0 hrs | 54 | Discussions with Potential Buyers | Correspondence with additional interested parties |
| Monday, December 17, 2007 | 1.0 hrs | 11 | Meetings and Calls | Internal Meeting - Project Planning, Due-Diligence Planning |
| Monday, December 17, 2007 | 2.0 hrs | 54 | Discussions with Potential Buyers | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Monday, December 17, 2007 | 1.0 hrs | 54 | Discussions with Potential Buyers | Correspondence with additional interested parties |
| Tuesday, December 18, 2007 | 3.5 hrs | 51 | Buyer Research | Database review - Buyer research |
| Tuesday, December 18, 2007 | 0.5 hrs | 54 | Discussions with Potential Buyers | Correspondence with additional interested parties |
| Wednesday, December 19, 2007 | 1.0 hrs | 54 | Discussions with Potential Buyers | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Thursday, December 20, 2007 | 3.0 hrs | 41 | Review of Financial Data | Review of updated financial data sent by Laura Adams |
| Thursday, December 20, 2007 | 2.5 hrs | 54 | Discussions with Potential Buyer | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Thursday, December 20, 2007 | 1.5 hrs | 54 | Discussions with Potential Buyers | Correspondence with additional interested parties |
| Friday, December 21, 2007 | 1.0 hrs | 41 | Review of Financial Data | Review of updated financial data sent by Laura Adams |
| Friday, December 21, 2007 | 4.0 hrs | 42 | Modeling of Financial Data | Modeling of updated financial data |
| Friday, December 21, 2007 | 1.5 hrs | 54 | Discussions with Potential Buyers | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Wednesday, December 26, 2007 | 0.5 hrs | 11 | Meetings and Calls | Internal Meeting - Project Planning, Due-Diligence Planning |
| Thursday, December 27, 2007 | 2.0 hrs | 54 | Discussions with Potential Buyers | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Thursday, December 27, 2007 | 1.0 hrs | 54 | Discussions with Potential Buyers | Correspondence with additional interested parties |
| Friday, December 28, 2007 | 2.5 hrs | 51 | Buyer Research | Database review - Buyer research |
| **Total Hours - December** | **65.5 hrs** | | | |

Delphi Mounts - Time Sheet

Confidential

W.Y. CAMPBELL & COMPANY
Delphi Corporation - Powertrain and Suspension Mounts Product Line
Summary of Hours
January 2008

| Name | Function | Title | Number of Hours |
|---|---|---|---|
| André Augier | Investment Banking | Managing Director | 35.5 |
| Kurt Haras | Investment Banking | Director | 69.5 |
| Greg McGowan | Investment Banking | Vice President | 54.0 |
| Alex Schroeder | Investment Banking | Analyst | 52.5 |
| **Total** | | | **211.5** |

Delphi - Mounts Product Line

*Time Sheet - Andre Augier*

W.Y. CAMPBELL & COMPANY

| Date | Time | Task Code | Task | Description of Time Spent |
|---|---|---|---|---|
| Friday, January 04, 2008 | 1.0 hrs | 54 | Discussions with Potential Buyers | Phone/email correspondence with Buyer Group |
| Monday, January 07, 2008 | 1.5 hrs | 11 | Meetings and Calls | Internal Meeting - Project Planning, Due-Diligence Planning |
| Monday, January 07, 2008 | 1.0 hrs | 54 | Discussions with Potential Buyers | Phone/email correspondence with Buyer Group |
| Wednesday, January 09, 2008 | 1.0 hrs | 54 | Discussions with Potential Buyers | Phone/email correspondence with Buyer Group |
| Thursday, January 10, 2008 | 1.0 hrs | 54 | Discussions with Potential Buyers | Phone/email correspondence with Buyer Group |
| Friday, January 11, 2008 | 1.0 hrs | 54 | Discussions with Potential Buyers | Phone/email correspondence with Buyer Group |
| Monday, January 14, 2008 | 1.0 hrs | 39 | Data Review | Review materials for AHG meeting |
| Monday, January 14, 2008 | 1.0 hrs | 11 | Meetings and Calls | Internal Meeting - Project Planning, Due-Diligence Planning |
| Monday, January 14, 2008 | 2.5 hrs | 11 | Meetings and Calls | Delphi AHG Meeting at Delphi HQ |
| Monday, January 14, 2008 | 1.0 hrs | 39 | Data Review | Review materials for AHG meeting |
| Monday, January 14, 2008 | 1.0 hrs | 54 | Discussions with Potential Buyers | Phone/email correspondence with Buyer Group |
| Tuesday, January 15, 2008 | 1.0 hrs | 54 | Discussions with Potential Buyers | Phone/email correspondence with Buyer Group |
| Tuesday, January 15, 2008 | 1.0 hrs | 11 | Meetings and Calls | Phone/email correspondence with Delphi |
| Wednesday, January 16, 2008 | 0.5 hrs | 54 | Discussions with Potential Buyers | Phone/email correspondence with Delphi |
| Friday, January 18, 2008 | 1.0 hrs | 54 | Discussions with Potential Buyers | Phone/email correspondence with Buyer Group |
| Friday, January 18, 2008 | 1.5 hrs | 54 | Discussions with Potential Buyers | Phone/email correspondence with Buyer Group |
| Monday, January 21, 2008 | 1.5 hrs | 11 | Meetings and Calls | Phone/email correspondence with Delphi |
| Monday, January 21, 2008 | 0.5 hrs | 11 | Meetings and Calls | Internal Meeting - Project Planning, Due-Diligence Planning |
| Tuesday, January 22, 2008 | 1.0 hrs | 54 | Discussions with Potential Buyers | Phone/email correspondence with Buyer Group |
| Tuesday, January 22, 2008 | 1.0 hrs | 11 | Meetings and Calls | Phone/email correspondence with Delphi |
| Wednesday, January 23, 2008 | 0.5 hrs | 11 | Meetings and Calls | Phone/email correspondence with Buyer Group |
| Thursday, January 24, 2008 | 0.5 hrs | 54 | Discussions with Potential Buyers | Phone/email correspondence with Delphi |
| Friday, January 25, 2008 | 3.0 hrs | 54 | Discussions with Potential Buyers | Phone/email correspondence with Buyer Group |
| Friday, January 25, 2008 | 1.0 hrs | 54 | Discussions with Potential Buyers | Meeting with Potential Buyer Group |
| Monday, January 28, 2008 | 2.0 hrs | 11 | Meetings and Calls | Phone/email correspondence with Buyer Group |
| Monday, January 28, 2008 | 1.0 hrs | 11 | Meetings and Calls | Internal Meeting - Project Planning, Due-Diligence Planning |
| Tuesday, January 29, 2008 | 4.0 hrs | 54 | Discussions with Potential Buyers | Phone/email correspondence with Delphi |
| Tuesday, January 29, 2008 | 0.5 hrs | 54 | Discussions with Potential Buyers | Meeting with Potential Buyer Group |
| Thursday, January 31, 2008 | 1.0 hrs | 54 | Discussions with Potential Buyers | Phone/email correspondence with Buyer Group |
| Thursday, January 31, 2008 | 1.0 hrs | 11 | Meetings and Calls | Phone/email correspondence with Delphi |
| **Total Hours - January** | **35.5 hrs** | | | |

Confidential

# Delphi - Mounts Product Line

*Time Sheet - Kurt Harost*

W.Y. CAMPBELL & COMPANY

| Date | Time | Task Code | Task | Description of Time Spent |
|---|---|---|---|---|
| Wednesday, January 02, 2008 | 1.0 hrs | 11 | Meetings and Calls | Facilitation of due diligence request items |
| Wednesday, January 02, 2008 | 0.5 hrs | 54 | Discussions with Potential Buyers | Phone/email correspondence with Buyer Group |
| Thursday, January 03, 2008 | 1.5 hrs | 54 | Discussions with Potential Buyers | Facilitation of due diligence request items |
| Thursday, January 03, 2008 | 1.0 hrs | 54 | Discussions with Potential Buyers | Facilitation of due diligence request items |
| Friday, January 04, 2008 | 1.0 hrs | 11 | Meetings and Calls | Phone/email correspondence with Buyer Group |
| Friday, January 04, 2008 | 0.5 hrs | 11 | Meetings and Calls | Facilitation of due diligence request items |
| Monday, January 07, 2008 | 1.5 hrs | 54 | Discussions with Potential Buyers | Phone/email correspondence with Buyer Group |
| Monday, January 07, 2008 | 1.5 hrs | 11 | Meetings and Calls | Internal Meeting - Project Planning, Due-Diligence Planning |
| Tuesday, January 08, 2008 | 0.5 hrs | 54 | Discussions with Potential Buyers | Phone/email correspondence with Buyer Group |
| Tuesday, January 08, 2008 | 1.5 hrs | 11 | Meetings and Calls | Phone/email correspondence with Buyer Group |
| Wednesday, January 09, 2008 | 1.0 hrs | 54 | Discussions with Potential Buyers | Facilitation of due diligence request items |
| Wednesday, January 09, 2008 | 1.5 hrs | 11 | Meetings and Calls | Phone/email correspondence with Buyer Group |
| Wednesday, January 09, 2008 | 0.5 hrs | 54 | Discussions with Potential Buyers | Facilitation of due diligence request items |
| Thursday, January 10, 2008 | 1.5 hrs | 11 | Meetings and Calls | Phone/email correspondence with Buyer Group |
| Thursday, January 10, 2008 | 1.0 hrs | 54 | Discussions with Potential Buyers | Facilitation of due diligence request items |
| Friday, January 11, 2008 | 1.5 hrs | 39 | Data Review | Review materials for AHG meeting |
| Friday, January 11, 2008 | 1.0 hrs | 11 | Meetings and Calls | Phone/email correspondence with Buyer Group |
| Monday, January 14, 2008 | 1.0 hrs | 54 | Discussions with Potential Buyers | Internal Meeting - Project Planning, Due-Diligence Planning |
| Monday, January 14, 2008 | 0.9 hrs | 11 | Meetings and Calls | Delphi AHG Meeting at Delphi HQ |
| Monday, January 14, 2008 | 2.5 hrs | 11 | Meetings and Calls | Review materials for AHG meeting |
| Monday, January 14, 2008 | 1.0 hrs | 39 | Data Review | Facilitation of due diligence request items |
| Monday, January 14, 2008 | 0.5 hrs | 11 | Meetings and Calls | Phone/email correspondence with Buyer Group |
| Monday, January 14, 2008 | 0.5 hrs | 54 | Discussions with Potential Buyers | Phone/email correspondence with Delphi |
| Tuesday, January 15, 2008 | 1.0 hrs | 11 | Meetings and Calls | Phone/email correspondence with Delphi |
| Tuesday, January 15, 2008 | 1.0 hrs | 54 | Discussions with Potential Buyers | Facilitation of due diligence request items |
| Tuesday, January 15, 2008 | 0.5 hrs | 11 | Meetings and Calls | Phone/email correspondence with Buyer Group |
| Wednesday, January 16, 2008 | 1.5 hrs | 54 | Discussions with Potential Buyers | Phone/email correspondence with Delphi |
| Wednesday, January 16, 2008 | 1.0 hrs | 11 | Meetings and Calls | Phone/email correspondence with Delphi |
| Thursday, January 17, 2008 | 1.5 hrs | 54 | Discussions with Potential Buyers | Facilitation of due diligence request items |
| Thursday, January 17, 2008 | 1.0 hrs | 11 | Meetings and Calls | Phone/email correspondence with Delphi |
| Friday, January 18, 2008 | 0.5 hrs | 11 | Meetings and Calls | Phone/email correspondence with Delphi |
| Friday, January 18, 2008 | 0.5 hrs | 54 | Discussions with Potential Buyers | Phone/email correspondence with Buyer Group |
| Monday, January 21, 2008 | 1.5 hrs | 11 | Meetings and Calls | Phone/email correspondence with Delphi |
| Monday, January 21, 2008 | 1.0 hrs | 54 | Discussions with Potential Buyers | Internal Meeting - Project Planning, Due-Diligence Planning |
| Monday, January 21, 2008 | 1.0 hrs | 11 | Meetings and Calls | Phone/email correspondence with Buyer Group |
| Tuesday, January 22, 2008 | 1.5 hrs | 11 | Meetings and Calls | Phone/email correspondence with Delphi |
| Tuesday, January 22, 2008 | 1.0 hrs | 54 | Discussions with Potential Buyers | Facilitation of due diligence request items |
| Tuesday, January 22, 2008 | 1.0 hrs | 11 | Meetings and Calls | Phone/email correspondence with Buyer Group |
| Wednesday, January 23, 2008 | 3.0 hrs | 54 | Discussions with Potential Buyers | Conference Call with Potential Buyer Group |
| Wednesday, January 23, 2008 | 1.0 hrs | 11 | Meetings and Calls | Facilitation of due diligence request items |
| Wednesday, January 23, 2008 | 1.0 hrs | 54 | Discussions with Potential Buyers | Phone/email correspondence with Buyer Group |
| Wednesday, January 23, 2008 | 1.0 hrs | 11 | Meetings and Calls | Phone/email correspondence with Delphi |

Confidential

W.Y. CAMPBELL & COMPANY

## Delphi - Mounts Product Line
*Time Sheet - Greg McGowan*

| Date | Hours | | Description |
|---|---|---|---|
| Friday, January 04, 2008 | 0.5 hrs | Discussions with Potential Buyers | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Monday, January 07, 2008 | 1.5 hrs | Meetings and Calls | Internal Meeting - Project Planning, Due Diligence Planning |
| Monday, January 07, 2008 | 1.0 hrs | Discussions with Potential Buyers | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Tuesday, January 08, 2008 | 5.0 hrs | Discussions with Potential Buyers | Analysis of updated financial figures |
| Wednesday, January 09, 2008 | 6.0 hrs | Modeling of Financial Data | Analysis of updated financial figures |
| Wednesday, January 09, 2008 | 1.0 hrs | Modeling of Financial Data | Analysis of updated financial figures |
| Thursday, January 10, 2008 | 2.5 hrs | Discussions with Potential Buyers | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Thursday, January 10, 2008 | 0.5 hrs | Modeling of Financial Data | Analysis of updated financial figures |
| Friday, January 11, 2008 | 5.0 hrs | Discussions with Potential Buyers | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Friday, January 11, 2008 | 4.0 hrs | Data Review | Preparation of materials for AHG meeting |
| Friday, January 11, 2008 | 1.0 hrs | Modeling of Financial Data | Analysis of updated financial figures |
| Monday, January 14, 2008 | 1.0 hrs | Discussions with Potential Buyers | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Monday, January 14, 2008 | 1.0 hrs | Meetings and Calls | Internal Meeting - Project Planning, Due Diligence Planning |
| Monday, January 14, 2008 | 5.0 hrs | Data Review | Preparation of materials for AHG meeting |
| Tuesday, January 15, 2008 | 1.0 hrs | Discussions with Potential Buyers | Preparation of materials for AHG meeting |
| Thursday, January 17, 2008 | 0.5 hrs | Discussions with Potential Buyers | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Friday, January 18, 2008 | 1.0 hrs | Discussions with Potential Buyers | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Friday, January 18, 2008 | 1.5 hrs | Meetings and Calls | Internal Meeting - Project Planning, Due Diligence Planning |
| Monday, January 21, 2008 | 1.0 hrs | Discussions with Potential Buyers | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Tuesday, January 22, 2008 | 0.5 hrs | Discussions with Potential Buyers | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Wednesday, January 23, 2008 | 1.0 hrs | Discussions with Potential Buyers | Internal Meeting - Project Planning, Due Diligence Planning |
| Thursday, January 24, 2008 | 3.0 hrs | Discussions with Potential Buyers | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Friday, January 24, 2008 | 1.0 hrs | Discussions with Potential Buyers | Conference Call with Potential Buyer Group |
| Friday, January 25, 2008 | 1.0 hrs | Discussions with Potential Buyers | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Friday, January 25, 2008 | 1.0 hrs | Discussions with Potential Buyers | Conference Call with Potential Buyer Group |
| Monday, January 28, 2008 | 2.0 hrs | Discussions with Potential Buyers | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Monday, January 28, 2008 | 0.5 hrs | Meetings and Calls | Internal Meeting - Project Planning, Due Diligence Planning |
| Tuesday, January 29, 2008 | 1.5 hrs | Discussions with Potential Buyers | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Wednesday, January 30, 2008 | 1.0 hrs | Discussions with Potential Buyers | Conference Call with Potential Buyer Group |
| Thursday, January 31, 2008 | 0.5 hrs | Discussions with Potential Buyers | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| **Total Hours - January** | **54.0 hrs** | Discussions with Potential Buyers | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |

Page 1 of 1

Delphi Mounts - Time Sheet

Confidential

Confidential

W.Y. CAMPBELL & COMPANY

Delphi - Mounts Product Line

*Time Sheet - Alex Schroeder*

| Date | Time | Task Code | Task | Description of Task |
|------|------|-----------|------|---------------------|
| Friday, January 04, 2008 | 0.5 hrs | 54 | Discussions with Potential Buyers | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Monday, January 07, 2008 | 1.5 hrs | 11 | Meetings and Calls | Internal Meeting - Project Planning, Due-Diligence Planning |
| Monday, January 07, 2008 | 1.0 hrs | 54 | Discussions with Potential Buyers | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Tuesday, January 08, 2008 | 5.0 hrs | 42 | Modeling of Financial Data | Analysis of updated financial figures |
| Tuesday, January 08, 2008 | 0.5 hrs | 54 | Discussions with Potential Buyers | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Wednesday, January 09, 2008 | 5.0 hrs | 42 | Modeling of Financial Data | Analysis of updated financial figures |
| Thursday, January 10, 2008 | 2.0 hrs | 42 | Modeling of Financial Data | Analysis of updated financial figures |
| Thursday, January 10, 2008 | 0.5 hrs | 54 | Discussions with Potential Buyers | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Friday, January 11, 2008 | 4.0 hrs | 39 | Data Review | Preparation of materials for AHG meeting |
| Friday, January 11, 2008 | 2.5 hrs | 42 | Modeling of Financial Data | Analysis of updated financial figures |
| Friday, January 11, 2008 | 1.0 hrs | 54 | Discussions with Potential Buyers | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Monday, January 14, 2008 | 1.0 hrs | 11 | Meetings and Calls | Internal Meeting - Project Planning, Due-Diligence Planning |
| Monday, January 14, 2008 | 6.0 hrs | 39 | Data Review | Preparation of materials for AHG meeting |
| Monday, January 14, 2008 | 1.0 hrs | 54 | Discussions with Potential Buyers | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Tuesday, January 15, 2008 | 1.0 hrs | 54 | Discussions with Potential Buyers | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Thursday, January 17, 2008 | 1.0 hrs | 54 | Discussions with Potential Buyers | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Friday, January 18, 2008 | 1.0 hrs | 54 | Discussions with Potential Buyers | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Monday, January 21, 2008 | 1.5 hrs | 11 | Meetings and Calls | Internal Meeting - Project Planning, Due-Diligence Planning |
| Monday, January 21, 2008 | 2.0 hrs | 54 | Discussions with Potential Buyers | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Wednesday, January 23, 2008 | 3.0 hrs | 54 | Discussions with Potential Buyers | Conference Call with Potential Buyer Group |
| Thursday, January 24, 2008 | 1.0 hrs | 54 | Discussions with Potential Buyers | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Friday, January 25, 2008 | 2.0 hrs | 54 | Discussions with Potential Buyers | Conference Call with Potential Buyer Group |
| Friday, January 25, 2008 | 2.0 hrs | 54 | Discussions with Potential Buyers | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Monday, January 28, 2008 | 2.0 hrs | 11 | Meetings and Calls | Internal Meeting - Project Planning, Due-Diligence Planning |
| Monday, January 28, 2008 | 1.0 hrs | 54 | Discussions with Potential Buyers | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Tuesday, January 29, 2008 | 2.0 hrs | 54 | Discussions with Potential Buyers | Conference Call with Potential Buyer Group |
| Tuesday, January 29, 2008 | 0.5 hrs | 54 | Discussions with Potential Buyers | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Wednesday, January 30, 2008 | 0.5 hrs | 54 | Discussions with Potential Buyers | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| Thursday, January 31, 2008 | 1.0 hrs | 54 | Discussions with Potential Buyers | Correspondence with Buyer Group/Facilitation of Due Diligence Requests |
| **Total Hours - January** | **52.5 hrs** | | | |

Delphi Mounts - Time Sheet

# EXHIBIT E



ANDRÉ A. AUGIER – Managing Director

André A. Augier is a Managing Director of W.Y. Campbell & Company having joined the Company in 1988. Prior to joining W.Y. Campbell & Company, Mr. Augier was employed as an officer with transactional responsibility in the Corporate Finance Department at First of Michigan Corporation where he worked extensively in the divestiture arena. Previously, Mr. Augier held a position with the firm's Public Finance Department where, acting as an underwriter and financial advisor, he initiated and structured tax-exempt public debt offerings. Mr. Augier is fluent in French, a graduate of Michigan State University's School of Business where he received his B.A. in Finance and of Walsh College where he received his Masters of Science in Finance with Honors.

EMAIL ANDRÉ



**KURT L. HARAS – Director**

Kurt L. Haras is a Director of W.Y. Campbell & Company. Prior to joining W.Y. Campbell & Company in 2001, Mr. Haras served as an officer in the Corporate Finance department at Fahnestock & Company, where he was involved in mergers, acquisitions, public offerings, private placements, and business valuations. Prior to joining Fahnestock, he worked for PricewaterhouseCoopers LLP in the Corporate Value Consulting practice where he performed business valuations for estate, tax, and transaction purposes. Mr. Haras graduated from Michigan State University with a B.A. in Accounting and is a certified public accountant. Mr. Haras is currently enrolled in the Executive M.B.A. program at the University of Michigan.

EMAIL KURT



**GREGORY McGOWAN – Senior Associate**

Gregory McGowan is a Senior Associate at W.Y. Campbell &
Company. Prior to joining W.Y. Campbell & Company in 2006, Mr.
McGowan served with both Woodward Capital Advisors and Deloitte
& Touche Corporate Finance LLC where he worked on numerous
investment banking advisory assignments with large public
companies and small privately held companies in the execution of
middle market transactions. He specializes in the advisory of mergers
acquisitions, divestitures, capital raising and joint ventures.

Mr. McGowan earned a Bachelor of Arts degree with honors in
Finance from Michigan State University where he was elected to Beta
Gamma Sigma. He is Series 7 and 63 licensed.

EMAIL GREGORY



**ALEXANDER J. SCHROEDER – Analyst**

Alexander J. Schroeder joined W.Y. Campbell & Company as an Analyst in 2006. Prior to joining the firm, Mr. Schroeder was an Analyst at Duff & Phelps LLC in the Corporate Value Consulting practice. At Duff & Phelps, Mr. Schroeder performed business valuations for financial reporting, tax, and transaction purposes. Mr. Schroeder has also worked for General Motors Corporation and Lear Corporation. Mr. Schroeder graduated with honors from Michigan State University with a Bachelor of Arts degree in Finance.

EMAIL ALEXANDER