**Hearing Date And Time: December 18, 2009 at 10:00 a.m. (prevailing Eastern time)**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
155 North Wacker Drive
Chicago, Illinois 60606
John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler

   - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Kayalyn A. Marafioti

Attorneys for DPH Holdings Corp., et al.,
 Reorganized Debtors

DPH Holdings Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

DPH Holdings Legal Information Website:
http://www.dphholdingsdocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| | : | |
| In re | : | Chapter 11 |
| | : | |
| DPH HOLDINGS CORP., et al., | : | Case No. 05-44481 (RDD) |
| | : | |
| Reorganized Debtors. | : | (Jointly Administered) |
| | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

REORGANIZED DEBTORS' OBJECTION TO MOTION OF
MICHIGAN SELF-INSURERS' SECURITY FUND TO PERMIT
<u>LATE FILED CLAIM PURSUANT TO FED. R. BANK. P. 9006(b)</u>
("OBJECTION TO MICHIGAN SELF-INSURERS' SECURITY FUND'S
MOTION TO FILE LATE CLAIM")

DPH Holdings Corp. ("DPH Holdings") and certain of its affiliated reorganized debtors in the above-captioned cases (together with DPH Holdings, the "Reorganized Debtors"), hereby object (the "Objection"), pursuant to rule 9006 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules"), to the Motion Of Michigan Self-Insurers' Security Fund To Permit Late Filed Claim Pursuant To Fed. R. Bank. P. 9006(B) (Docket No. 19048) (the "Motion"), dated November 9, 2009, filed by Michigan's Self-Insurers' Security Fund (the "Michigan Security Fund").  In support of this Objection, the Reorganized Debtors respectfully represent as follows:

Preliminary Statement

1.      On April 20, 2006 the Debtors[1] caused two copies of the Notice Of Bar Date For Filing Proofs Of Claim (the "Bar Date Notice") to be served on the Michigan Self Insurers Association, an association of self-insured employers in Michigan, at the address that it shares with the Michigan Security Fund, which was established by Michigan statute to provide workers' compensation benefits to employees of bankrupt self-insured employers.  In addition, four copies of the Bar Date Notice were served on the Michigan Department of Energy, Labor and Economic Growth, Workers' Compensation Agency (the "Workers' Compensation Agency"). The Bar Date Notice stated that July 31, 2006 was the deadline for creditors to file proofs of claim in the Debtors' chapter 11 cases (the "Bar Date").[2]  The Michigan Security Fund does not dispute that it received the Bar Date Notice or that it had actual knowledge of the Bar Date.  Yet the Michigan Security Fund waited until July 29, 2009, <u>almost three years</u> after the Bar Date, to file four untimely proofs of claim against the Debtors – proofs of claim numbers 19501, 19502,

---

[1] Capitalized terms not defined in this Preliminary Statement are defined below.

[2] The Bar Date was established pursuant to paragraph 2 of the Order Under 11 U.S.C. §§ 107(b), 501, 502, And 1111(a) And Fed R. Bankr. P. 1009, 2002(a)(7), 3003(c)(3), And 5005(a) Establishing Bar Dates For Filing Proofs Of Claim And Approving Form And Manner Of Notice Thereof, entered by this Court on April 12, 2006 (Docket No. 3206) (the "Bar Date Order").

2

19541, and 19542[3] (the "Michigan Security Fund Claims"), asserting, among other things, a $25 million priority claim that, if allowed, would severely deplete DPH Holdings' cash reserves and imperil its solvency. The Michigan Security Fund's failure to file a proof of claim by the Bar Date was a conscious and willful decision, and was, at a minimum, without excusable neglect.

        2.      In its Motion, the Michigan Security Fund asserts that it failed to timely file proofs of claim because "the Debtors had paid all benefits due to its workers' compensation claimants as of the Bar Date." (Motion ¶ 23.) The Michigan Security Fund's stated rationale for ignoring the Bar Date, however, does not address why it chose to ignore the plain language of the Bar Date Notice. The Bar Date Notice provided that parties

> MUST file a proof of claim to vote on a chapter 11 plan filed by the Debtors or to share in distributions from the Debtors' bankruptcy estates if you have a claim against any of the Debtors that arose prior to the applicable Petition Date . . . . Claims based on acts or omissions of the Debtors that occurred before the applicable Petition Date must be filed on or prior to the General Bar Date, even if such claims are not now fixed, liquidated, or certain or did not mature or become fixed, liquidated, or certain before the applicable Petition Date.

(Bar Date Notice at 1-2.)

        3.      As the Michigan Security Fund acknowledges, the Debtors were paying their workers' compensation claims in the ordinary course because the Human Capital Obligations Order entered by this Court on October 13, 2005 authorized, <u>but did not direct</u>, the Debtors to make payments on these prepetition claims. A claimant's failure to file a proof of claim as required by the Bar Date Order and the Bar Date Notice because the Debtors were authorized to pay such claimant's prepetition claim does not constitute excusable neglect and weighs in favor of denial of the Motion.

---

[3] According to the Motion, proof of claim number 19541 is a duplicate of proof of claim number 19501 and proof of claim number 19542 is a duplicate of proof of claim number 19502. (Motion at 6.)

3

4.  The Michigan Security Fund offers no evidence that would excuse its late filing under the excusable neglect standard outlined by the U.S. Supreme Court in <u>Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership</u>, 507 U.S. 380, 395 (1993), and as applied in the Second Circuit.  See, e.g., <u>Midland Cogeneration Venture Ltd. P'ship v. Enron Corp. (In re Enron Corp.)</u>, 419 F.3d 115, 122-24 (2d Cir. 2005) (interpreting and applying <u>Pioneer</u> standard).

5.  First, the Michigan Security Fund asserts that it failed to timely file a proof of claim because it "did not believe it possessed a claim against the Debtors as of the Bar Date." (Motion ¶ 23.)  To the contrary, the Michigan Security Fund knew that it had a contingent claim, but decided not to file a proof of claim because it wagered that filing a proof of claim would ultimately prove unnecessary.  The Bar Date Notice was unequivocal in requiring parties with contingent claims to file by the Bar Date. (Bar Date Notice at 2 (stating that filing required "even if such claims are not now fixed, liquidated, or certain").)  As this Court previously ruled in denying the U.S. Equal Employment Opportunity Commission's motion for leave to file a late claim, parties with contingent claims must file protective claims by the Bar Date.  <u>In re Delphi Corp., et al.</u>, Hr'g Tr. at 54, Feb. 29, 2008 (the "February 29, 2008 Transcript")[4] ("Moreover, at least from the record, the EEOC has not explained why it could not file a protective proof of claim.").

6.  Second, the Michigan Security Fund asserts that it did not file a proof of claim by the Bar Date because the Confirmed Plan treated prepetition workers' compensation claims as flow-through claims.  This argument also misses the mark.  The Debtors first disclosed the terms of the Confirmed Plan on December 10, 2007, over sixteen months after the Bar Date,

---

[4] A copy of the relevant portions of the February 29, 2008 Transcript is attached hereto as <u>Exhibit A</u>.

4

rendering it impossible that the Michigan Security Fund relied on the Confirmed Plan in deciding not to file a timely proof of claim. Moreover, the December 10, 2007 disclosure statement contained approximately 15 pages of risk factors describing various risks which could prevent the substantial consummation of the Confirmed Plan.

7. The calculated decision of the Michigan Security Fund to wait three years to file a proof of claim because, under certain scenarios, it might be paid in full without filing a proof of claim, is not a valid basis for the Michigan Security Fund's failure to follow the clear dictates of the Bar Date Notice. The failure to file a timely proof of claim in these cases was within the sole control of the Michigan Security Fund and, therefore, does not constitute excusable neglect. Moreover, an allowed $25 million priority claim would be severely prejudicial to the Reorganized Debtors and would imperil their solvency.

8. For these reasons, and as described in more detail below, the Michigan Security Fund Claims should not be deemed timely. This Court should, therefore, deny the Michigan Security Fund leave to file late proofs of claim and disallow and expunge the Michigan Security Fund Claims in their entirety with prejudice.

## Background

9. On October 8 and 14, 2005, Delphi Corporation and certain of its affiliates (the "Debtors"), predecessors of the Reorganized Debtors, filed voluntary petitions in this Court for reorganization relief under chapter 11 of title 11 of the U.S. Code, 11 U.S.C. §§ 101-1330, as then amended (the "Bankruptcy Code").

A.    The Human Capital Obligations Order

10. On October 12, 2005, the Debtors filed their Motion For Order Under 11 U.S.C. §§105(a), 363, 507, 1107, And 1108 (I) Authorizing Debtors To Pay Prepetition Wages And Salaries To Employees And Independent Contractors; (II) Authorizing Debtors To Pay

5

Prepetition Benefits And Continue Maintenance Of Human Capital Benefit Programs In The Ordinary Course; And (III) Directing Banks To Honor Prepetition Checks For Payment Of Prepetition Human Capital Obligations (Docket No. 12) (the "Human Capital Obligations Motion").  Among other things, the Human Capital Obligations Motion sought "authority, but not direction, to pay all amounts related to workers' compensation claims and [incurred but not reported] claims that arose prior to the Petition Date as they become due in the ordinary course of business and to continue paying workers compensation in the ordinary course."  (Id. ¶ 75.)

11.    On October 13, 2005, this Court entered the Order Under 11 U.S.C. §§ 105(a), 363, 507, 1107, And 1108 (I) Authorizing Debtors To Pay Prepetition Wages And Salaries To Employees And Independent Contractors; (II) Authorizing Debtors To Pay Prepetition Benefits And Continue Maintenance Of Human Capital Benefit Programs In The Ordinary Course; And (III) Directing Banks To Honor Prepetition Checks For Payment Of Prepetition Human Capital Obligations (Docket No. 198) (the "Human Capital Obligations Order").  The Human Capital Obligations Order granted the relief sought in the Human Capital Obligations Motion and authorized, but did not direct, the Debtors to pay their workers' compensation obligations.  (Human Capital Obligations Order ¶ 2.)  The order further provided that "[n]either the provisions of this Order, nor any payments made by the Debtors pursuant to the Motion or this Order, shall be deemed to change the classification of any claim or to in any way change the rights or create new rights of any Employee or other person . . . ." (Human Capital Obligations Order ¶ 10).  In other words, nothing in the Human Capital Obligations Order suggested that a party was not required to file a proof of claim if they were receiving payments on prepetition claims as authorized by the order.

6

B.      <u>The Michigan Security Fund's Notice Of Appearance In These Chapter 11 Cases</u>

12.     On November 15, 2005, Michael A. Cox, Attorney General for the State of Michigan, and Dennis J. Raterink, Assistant Attorney General, filed a Limited Appearance And Request For Service Of All Pleadings (Docket No. 1039) (the "Notice of Appearance"), as attorneys for the Workers' Compensation Agency.

C.      <u>The Bar Date For Asserting Prepetition Claims</u>

13.     On April 12, 2006, this Court entered the Order Under 11 U.S.C. §§ 107(b), 501, 502, And 1111(a) And Fed. R. Bankr. P. 1009, 2002(a)(7), 3003(c)(3), And 5005(a) Establishing Bar Dates For Filing Proofs Of Claim And Approving Form And Manner Of Notice Thereof (Docket No. 3206) (the "Bar Date Order").  The Bar Date Order established July 31, 2006 as the Bar Date, approved the Bar Date Notice to be used to notify parties of the Bar Date, and included a form to be used to submit a proof of claim (the "Proof of Claim Form").

14.     On or before April 20, 2006, in accordance with the Bar Date Order, the Debtors caused Kurtzman Carson Consultants LLC ("KCC"), the claims and noticing agent in these chapter 11 cases, to transmit to the Michigan Self Insurers Association and the Workers' Compensation Agency the Bar Date Notice, which set forth certain procedures for asserting a proof of claim, and a copy of the Proof of Claim Form.

15.     KCC served the Bar Date Notice by first class mail at each of the addresses below:

| Michigan Self Insurers Association<br>600 S Adams Rd Ste 300<br>Ad Chg As Per Afc 08 15 03 Am<br>Birmingham, MI 48009-6827 | Michigan Self Insurers Association<br>600 S Adams Rd Ste 300<br>Birmingham, MI 48009-6827 |
|---|---|

7

| | |
|---|---|
| Michigan Department of Labor and Economic Growth, Worker's Compensation Agency<br>Dennis J. Raterink<br>PO Box 30736<br>Lansing, MI 48909-7717 | Michigan Department of Labor and Economic Growth, Worker's Compensation Agency<br>Dennis J Raternink<br>PO Box 30736<br>Lansing, MI 48909-7717 |
| Michigan Department of Labor and Economic Growth, Worker's Compensation Agency<br>Michael Cox<br>PO Box 30736<br>Lansing, MI 48909-7717 | Michigan Department of Labor and Economic Growth, Worker's Compensation Agency<br>Michael Cox<br>PO Box 30736<br>Lansing, MI 48909-7717 |

(See Affidavit Of Service Of Evan Gershbein, dated April 28, 2006 (Docket No. 3501), the relevant portions of which, including the Bar Date Notice, are attached hereto as Exhibit B.) The Michigan Security Fund and the Michigan Self Insurers Association share the same address.

16. Importantly, in the Motion the Michigan Security Fund does not dispute that it received multiple copies of the Bar Date Notice. The Bar Date Notice provided that parties:

> MUST file a proof of claim to vote on a chapter 11 plan filed by the Debtors or to share in distributions from the Debtors' bankruptcy estates if you have a claim against any of the Debtors that arose prior to the applicable Petition Date. Claims based on acts or omissions of the Debtors that occurred before the applicable Petition Date must be filed on or prior to the General Bar Date, even if such claims are not now fixed, liquidated, or certain or did not mature or become fixed, liquidated, or certain before the applicable Petition Date.

(Bar Date Notice at 1-2.)

17. The Bar Date Notice also set forth in conspicuous and unmistakable language the consequences of the failure to file a proof of claim by the Bar Date:

> ANY HOLDER OF A CLAIM WHICH IS NOT EXCEPTED FROM THE REQUIREMENTS OF THIS NOTICE, AS SET FORTH IN SECTION 4 ABOVE, AND WHICH FAILS TO TIMELY FILE A PROOF OF CLAIM IN THE APPROPRIATE FORM, WILL BE BARRED FROM ASSERTING SUCH CLAIM AGAINST THE DEBTORS AND THEIR CHAPTER 11 ESTATES, FROM VOTING ON ANY PLAN OF

8

>REORGANIZATION FILED IN THESE CASES, AND FROM
>PARTICIPATING IN ANY DISTRIBUTION IN THE
>DEBTORS' CASES ON ACCOUNT OF SUCH CLAIM.

(<u>Id.</u> at 5.)

   18. In the same way that the Human Capital Obligations Order made clear that allowing the Debtors to pay prepetition workers' compensation claims did not confer the recipient of any such payments with special rights, the Bar Date Notice made clear that parties were required to file a proof of claim by the Bar Date to receive a distribution from the Debtors' estates, even if the claim was merely contingent. (Bar Date Notice at 2; <u>see also</u> February 29, 2008 Transcript at 54 (denying motion for leave to file late claim where movant "ha[d] not explained why it could not file a protective proof of claim" and noting that definition of "claim" under the Bankruptcy Code expressly includes contingent claims).)

   19. Moreover, other state workers' compensation agencies and statutory guarantors of workers' compensation obligations understood that the Bar Date Order required claims to be filed by the Bar Date. The Ohio Bureau of Workers Compensation timely filed proofs of claim numbers 1294 and 1301 on December 25, 2005, the New Jersey Self Insurers Guaranty Association timely filed proof of claim number 11631 on July 27, 2006, and the Alabama Workers Compensation Self Insurers Guaranty Association Inc. timely filed proof of claim number 15624 on July 31, 2006.

 D. <u>The Debtors' Plan Of Reorganization</u>

   20. On September 6, 2007, more than a year after the Bar Date, the Debtors filed their first joint plan of reorganization (Docket No. 9263) and related disclosure statement (Docket No. 9264). On December 10, 2007, the Debtors filed their first amended joint plan of reorganization (Docket No. 11386) (the "Confirmed Plan") and related disclosure statement (Docket No. 11388). This Court entered an order confirming the Confirmed Plan (as modified)

(Docket No. 12359) (the "Confirmation Order") on January 25, 2008, and the order became final on February 4, 2008.

21. Under the terms of the Confirmed Plan, workers' compensation claims were to be treated as claims that would flow through the bankruptcy and be satisfied by the Debtors in the ordinary course of business. (Confirmed Plan §§ 1.86; 5.2.) The Confirmed Plan also contained certain conditions precedent to the substantial consummation of the plan, including a condition addressing the financing needed to consummate the Confirmed Plan. (Confirmed Plan arts. 12.2(a), (h).)

22. On April 4, 2008, the Debtors announced that although they had met the conditions required to substantially consummate the Confirmed Plan, the plan investors who had supported the Confirmed Plan refused to participate in the closing that was commenced and attended by all required parties other than the plan investors. Over the course of the next year, the Debtors worked diligently with their parties-in-interest and other third parties to take actions that would allow the Debtors to formulate modifications to its Confirmed Plan and to emerge from chapter 11.

23. As a result of these efforts, on October 3, 2008, the Debtors filed a motion under section 1127 of the Bankruptcy Code for an order approving certain modifications to the Confirmed Plan and related disclosure statement and related procedures for re-soliciting votes on the Confirmed Plan, as modified (Docket No. 14310) (the "Plan Modification Motion") and on June 1, 2009, the Debtors filed a supplement to the Plan Modification Motion, which sought approval of certain modifications to the Confirmed Plan (the "Modified Plan"), supplemental disclosures, and procedures for re-soliciting votes on the Modified Plan. On June 16, 2009, the Debtors filed an amended disclosure statement with respect to the Modified Plan (the "Modified Plan Disclosure Statement").

24. On July 15, 2009, the Michigan Security Fund filed its State Of Michigan Workers' Compensation Agency And Funds Administration's Limited Objection To Debtors' (A) Supplement To Motion For Order (I) Approving Modifications To Debtors' First Amended Plan Of Reorganization (As Modified) And Related Disclosures And Voting Procedures And (II) Setting Final Hearing Date To Consider Modifications To Confirmed First Amended Plan Of Reorganization And (B) Request To Set Administrative Expense Claims Bar Date And Alternative Sale Hearing Date (Docket No. 18264) (the "Objection to the Modified Plan"). In the Objection to the Modified Plan, the Michigan Security Fund objected to the plan because it did not provide "any commitment to pay Debtors' workers' compensation obligations." (Objection to the Modified Plan at 2.)

25. After holding a final plan modification hearing on July 29 and 30, 2009, this Court entered an order on July 30, 2009 that, among other things, overruled the Objection to the Modified Plan and approved the Modified Plan (Docket No. 18707).

26. On October 6, 2009 (the "Effective Date"), the Debtors substantially consummated the Modified Plan and the transactions under the Master Disposition Agreement and related agreements closed. In connection therewith, DIP Holdco LLP (subsequently renamed Delphi Automotive LLP, a United Kingdom limited liability partnership), as assignee of DIP Holdco 3 LLC, through various subsidiaries and affiliates, acquired substantially all of the Debtors' global core businesses, and GM Components Holdings, LLC, a Delaware limited liability company, and Steering Solutions Services Corporation, a Delaware corporation, acquired certain U.S. manufacturing plants and the Debtors' non-core steering business, respectively.

27. The Reorganized Debtors have emerged from chapter 11 as DPH Holdings and affiliates and remain responsible for certain post-Effective Date administrative

11

activities, including, without limitation, the disposition of certain retained assets and payment of certain retained liabilities as provided for under the Modified Plan, and the eventual closing of these chapter 11 cases. Because the Reorganized Debtors no longer operate an ongoing business and do not have the resources to continue to pay workers' compensation claims, the Reorganized Debtors stopped paying workers' compensation claims as of the Effective Date, as this Court understood when it approved the Modified Plan. In particular, counsel for the Debtors made clear to this Court that because the Michigan Security Fund did not file claims by the Bar Date, such claims were subject to discharge and would not receive any distributions under the Modified Plan. In re Delphi Corp., Hr'g Tr. at 75, July 29, 2009 (the "July 29, 2009 Transcript") ("Because the agency's unfiled pre-petition workers' [compensation] claims aren't entitled to receive distributions under the Bankruptcy Code, the conclusion that we think is inevitable from that that the modified plan comports with 1129(a)(3) of the code."). A copy of the relevant portions of the July 29, 2009 Transcript is attached hereto as Exhibit C.

E.     Filing Of The Michigan Security Fund Claims And The Motion

        28.     On July 29, 2009, three years after the Bar Date, the Michigan Security Fund filed the Michigan Security Fund Claims with KCC, asserting a priority tax claim in the amount of $25,460,432.50 "based on excise taxes for unpaid workers' compensation obligations" and a general unsecured claim in the amount of $36,293,480.00 "for unpaid workers' compensation obligations." (Motion ¶ 15.) On October 15, 2009, the Reorganized Debtors objected to each of the Michigan Security Fund Claims pursuant to the Reorganized Debtors' Thirty-Sixth Omnibus Objection Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To (I) Modify And Allow Claim And (II) Expunge Certain (A) Duplicate SERP Claims, (B) Books And Records Claims, (C) Untimely Claims, And (D) Pension, Benefit, And OPEB Claims (the "Thirty-Sixth Omnibus Claims Objection") (Docket No. 18983). On November 9, 2009, the

12

Michigan Security Fund filed its response to the Thirty-Sixth Omnibus Claims Objection and the Motion. By the Motion, the Michigan Security Fund seeks a determination that the failure to timely file the Michigan Security Fund Claims was the result of excusable neglect.

Argument

F.    The Michigan Security Fund Received The Bar Date Notice

29.    The Michigan Security Fund does not dispute that it received the Bar Date Notice. The Debtors provided adequate service of the Bar Date Notice and the Michigan Security Fund was therefore obligated to file any proofs of claim by the Bar Date.[5]

30.    Because the Michigan Security Fund received the Bar Date Notice, it was obligated to file the Michigan Security Fund's Claims before the Bar Date in accordance with the procedures referenced in the Bar Date Order, or be barred, estopped, and enjoined from asserting those claims against the Debtors. Accordingly, this Court should deny the Motion and expunge the untimely Michigan Security Fund's Claims.

G.    The Michigan Security Fund Has Not Met Its Burden Of Proof For Establishing Excusable Neglect

31.    Because the Michigan Security Fund received proper notice of the Bar Date, it can obtain the relief requested in the Motion only if it meets its burden to establish excusable neglect pursuant to Bankruptcy Rule 9006(b)(1). See In re R.H. Macy & Co., 161 B.R. 355, 360 (Bankr. S.D.N.Y. 1993) ("the burden of proving 'excusable neglect' is on the creditor seeking to extend the bar date").

---

[5]    As discussed above, the Michigan Security Fund was served with the Bar Date Notice. Because the Debtors served a copy of the Bar Date Notice on the attorneys who filed the Notice of Appearance on behalf of the Michigan Security Fund and on the Michigan Security Fund directly, the Debtors' mailing of the Bar Date Notice was proper and legally sufficient. Courts uniformly presume that an addressee receives a properly mailed item when the sender presents proof that it properly addressed, stamped, and deposited the item in the mail. See, e.g., Hagner v. United States, 285 U.S. 427, 430 (1932) ("The rule is well settled that proof that a letter properly directed was placed in a post office creates a presumption that it reached its destination in usual time and was actually received by the person to whom it was addressed.").

13

32. The Michigan Security Fund has not met its burden for establishing excusable neglect under the test outlined by the U.S. Supreme Court in <u>Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership</u>, 507 U.S. 380, 395 (1993). In <u>Pioneer</u>, the Supreme Court held that excusable neglect is the failure to comply with a filing deadline because of negligence. <u>Id.</u> at 394. In examining whether a creditor's failure to file a claim by the bar date constituted excusable neglect, the Supreme Court found that the factors include "the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and [d] whether the movant acted in good faith." <u>Id.</u> at 395. The Second Circuit has held the most important factor is the reason for the delay, including whether it was within the reasonable control of the movant. <u>Midland Cogeneration Venture Ltd. P'ship v. Enron Corp. (In re Enron Corp.)</u>, 419 F.3d 115, 122-24 (2d Cir. 2005). As this Court has consistently ruled on motions under Bankruptcy Rule 9006(b)(1) in this context, a movant must first show that its failure to file a timely claim constituted "neglect," as opposed to willfulness or a knowing omission. Then, a movant must show by a preponderance of the evidence that the neglect was "excusable." (<u>See</u>, <u>e.g.</u>, Order Pursuant to 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 (I) Denying United States Of America's Motion For Leave To File Late Claim And (II) Disallowing And Expunging Proof Of Claim Number 16727, entered March 25, 2009 (Docket No. 16515) at Ex. A at 2 (citing <u>Pioneer</u> and <u>Midland Cogeneration</u>).).

(i) <u>Reason For The Delay</u>

33. The most important factor – the reason for the delay – weighs heavily in favor of the Debtors. The Michigan Security Fund received the Bar Date Notice but failed to file

14

a timely proof of claim. The explanations set forth in the Motion demonstrate that the failure to file a timely proof of claim was entirely within the Michigan Security Fund's control.[6]

34. The Michigan Security Fund appears to argue that it did not file timely proofs of claim because it was receiving payments for workers' compensation obligations as authorized under the Human Capital Obligations Order. (Motion ¶¶ 23-24.) The Human Capital Obligations Order made clear, however, that the Debtors were "authorized, but not required" to pay workers' compensation claims. (Human Capital Obligations Order ¶ 2.) As noted above, workers' compensation agencies or statutory guarantors of workers' compensation claims in Ohio, Alabama, and New Jersey filed proofs of claim by the Bar Date, notwithstanding the fact that the Debtors were authorized to pay all workers' compensation claims in the ordinary course.

35. Likewise, the Bar Date Order and the Bar Date Notice made clear that any party who fails to timely file a proof of claim "will be barred from asserting such claim" and "from participating in any distribution in the debtors' cases on account of such claim against the debtors and their chapter 11 estates." (Bar Date Notice at 5.) Moreover, this Court has previously held that parties who have contingent claims are required to file protective claims by the Bar Date, as set forth in the Bar Date Notice. (See February 29, 2008 Transcript at 54 (denying motion for leave to file late claim where movant failed to file claim by Bar Date and "ha[d] not explained why it could not file a protective proof of claim").). Unlike the workers' compensation agencies and statutory guarantors in Ohio, Alabama, and New Jersey, the Michigan Security Fund consciously chose not to file proofs of claim by the Bar Date. The

---

[6] To the extent that the Michigan Security Fund argues that the Reorganized Debtors are estopped from relying on the terms of the Bar Date Order because, under the Confirmed Plan, workers' compensation claims would be treated as flow-through claims (Motion ¶ 14), this argument has already been considered and rejected by this Court. At the July 29, 2009 final plan modification approval hearing, this Court rejected the Michigan Security Fund's estoppel argument in the context of its Objection to the Modified Plan. (See July 29, 2009 Transcript at 81 ("I don't see a basis for estoppel given that the document upon which estoppel is asserted [the Confirmed Plan] contemplates the possibility of the treatment that is currently being afforded to the claims of the agency, to the extent it has an assertable claim, as well as all other unsecured creditors.").)

15

Michigan Security Fund's decision does not constitute excusable neglect, but rather resulted from an unreasonable assumption that if the Michigan Security Fund did not file a timely proof of claim, the Debtors would continue to pay workers' compensation claims even though they were under no obligation to do so.

36.    Courts in the Second Circuit have "taken a hard line" in applying the Pioneer test and focus on the reason for the delay, including whether it was within the reasonable control of the movant. Silivanch v. Celebrity Cruises Inc., 333 F.3d 355, 368 (2d Cir. 2003). "[T]he equities will rarely if ever favor a party who fails to follow the clear dictates of a court rule [and] where the rule is entirely clear, we continue to expect that a party claiming excusable neglect will, in the ordinary course, lose under the Pioneer test." Midland Cogeneration, 419 F.3d at 122-23. Because the Michigan Security Fund failed to follow this Court's order to file proofs of claim by Bar Date, the reason for the three-year delay was entirely within the control of the Michigan Security Fund.

(ii)    Danger Of Prejudice To The Debtor

37.    Allowing the Michigan Security Fund to pursue its untimely proof of claim would prejudice the Reorganized Debtors, as well as other creditors in these cases who filed timely proofs of claim, by opening the floodgates to any potential claimant who failed to file a proof of claim on or before the Bar Date.[7] This is especially true if this Court were to adopt the Michigan Security Fund's theory that payment of its claims pursuant to the Human Capital Obligations Order constituted a valid reason to ignore the Bar Date. Courts often have cited the danger of opening the floodgates to potential claimants as a reason for enforcing bar dates and rejecting untimely claims. See, e.g., In re Enron Corp., 419 F.3d at 132; In re Kmart

---

[7]    Granting the Motion would also prejudice parties who filed timely proofs of administrative expense by encouraging parties to file untimely proofs of administrative expense after the bar dates established by this Court for such proofs of administrative expense.

16

Corp., 381 F.3d 709, 714 (7th Cir. 2004) (noting that if court allowed all similar late-filed claims, "Kmart could easily find itself faced with a mountain of such claims"); In re Enron Creditors Recovery Corp., 370 B.R. 90, 103 (Bankr. S.D.N.Y. 2007) ("'It can be presumed in a case of this size with tens of thousands of filed claims, there are other similarly situated potential claimants. . . . Any deluge of motions seeking similar relief would prejudice the Debtors' reorganization process.'" (citation omitted)); In re Dana Corp., 2007 WL 1577763, at *6 (Bankr. S.D.N.Y. May 30, 2007) ("the floodgates argument is a viable one").

        38.    Furthermore, one of the Michigan Security Fund Claims – proof of claim number 19502 – asserts priority treatment for $25,460,432.50 as an excise tax claim for unpaid workers' compensation obligations. As noted above, after the failure to substantially consummate the Confirmed Plan, the Debtors worked diligently to address the deterioration in the financial markets and the Debtors value and formulate what eventually became the Modified Plan. In these efforts, the Debtors relied in part upon the then-current state of the claims register to calculate post-emergence liquidity needs to satisfy tax claims and other priority claims and otherwise formulate and substantially consummate the Modified Plan. To this end, the Modified Plan Disclosure Statement stated that the estimated aggregate amount of priority tax claims was $17.3 to $17.4 million and the aggregate amount of other priority claims was $0.00. If allowed in the asserted amount, the Michigan Security Fund's priority claim would far exceed the aggregate amount of priority tax claims to be paid pursuant to the Modified Plan. Given this Court's recent ruling that allowing a late administrative expense claim for $20 million could have a "very significant impact" on the feasibility of the Modified Plan, the $25 million priority claim of the Michigan Security Fund is likewise highly prejudicial to the Reorganized Debtors. In re Delphi Corp., Hr'g Tr. at 52, Aug. 20, 2009 (the "August 20, 2009 Transcript"). A copy of the relevant portions of the August 20, 2009 Transcript is attached hereto as Exhibit D.

39. In addition, allowing the Michigan Security Fund to prevail on the Motion may inspire many other similarly situated potential claimants – particularly those with priority claims – to file similar motions. Any potential claimant who, by its own error or conscious decision, failed to file a timely proof of claim may seek to follow the Michigan Security Fund's lead. Accordingly, establishing a precedent for allowing untimely claims without a compelling justification would greatly prejudice the Reorganized Debtors and their creditors and would undermine the Modified Plan.

40. Another prejudicial element of the untimely Michigan Security Fund Claims is the fact that the Michigan Security Fund did not file its claims until July 29, 2009 – the day of the commencement of the final plan modification hearing. Neither the Debtors, its stakeholders with which it negotiated the Modified Plan, nor this Court took the Michigan Security Fund Claims into account because those claims were not filed until July 29, 2009 and long after the Debtors negotiated and formulated modifications to their Confirmed Plan. Courts have recognized the heightened level of prejudice that results from untimely claims that are filed late in the plan process. See, e.g., Manousoff v. Macy's Northeast, Inc. (In re R.H. Macy & Co.), 166 B.R. 799, 802 (S.D.N.Y. 1994) (prejudice to debtor includes not only size of late claim, but disruptive effect claim would have upon plan close to completion); In re New York State Trap Rock Corp., 153 B.R. 648, 652 (Bankr. S.D.N.Y. 1993) (late claim filed one day after debtor filed plan obviously prejudicial to debtor because allowing such claim would frustrate debtor's hope for prompt confirmation of plan).

41. Moreover, although the Reorganized Debtors do not dispute that denial of the Motion may cause hardship on the Michigan Security Fund, the impact on the creditor, as the Michigan Security Fund acknowledges, is not a factor considered under the Pioneer analysis. (Motion ¶ 26.) Accordingly, the Michigan Security Fund's argument is without legal import.

18

       (iii)  <u>Length Of The Delay</u>

    42.  Courts considering excusable neglect in this jurisdiction have characterized delays of six months as "substantial."  <u>See</u> <u>In re Dana Corp.</u>, 2007 WL 1577763, at *5, (citing <u>In re Enron</u>, 419 F.3d at 125 (delay of more than six months after bar date was "substantial")).  Here, the Michigan Security Fund waited <u>over three years</u> to file its late claims.  Accordingly, these <u>Pioneer</u> factors weigh in favor of denial of the Motion.

Conclusion

    43.  The Michigan Security Fund has failed to provide any evidence of circumstances justifying the extraordinary relief it seeks under <u>Pioneer</u>'s the excusable neglect standard and has not met its burden for establishing excusable neglect.  The Motion should, therefore, be denied and the Michigan Security Fund Claims disallowed and expunged in their entirety with prejudice.

WHEREFORE the Reorganized Debtors respectfully request that this Court enter an order (a) denying the Motion, (b) disallowing and expunging the Michigan Security Fund Claims in their entirety with prejudice, and (c) granting them such other and further relief as is just.

Dated: New York, New York
       December 11, 2009

                SKADDEN, ARPS, SLATE, MEAGHER
                  & FLOM LLP

                By: /s/ Ron E. Meisler
                   John Wm. Butler, Jr.
                   John K. Lyons
                   Ron E. Meisler
                155 North Wacker Drive
                Chicago, Illinois 60606
                (312) 407-0700

                      - and –

                   Kayalyn A. Marafioti
                Four Times Square
                New York, New York 10036
                (212) 735-3000

                Attorneys for DPH Holdings Corp., et al.,
                   Reorganized Debtors