# **EXHIBIT C**

1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case No. 05-44481-rdd

- - - - - - - - - - - - - - - - - - - - -x

In the Matter of:


DELPHI CORPORATION,



        Debtor.



- - - - - - - - - - - - - - - - - - - - -x



            U.S. Bankruptcy Court

            One Bowling Green

            New York, New York


            July 29, 2009

            3:22 PM




B E F O R E:

HON. ROBERT D. DRAIN

U.S. BANKRUPTCY JUDGE

1   agency never filed any proofs of claim on a timely basis, never
2   filed a motion to file an untimely claim and you have a right
3   to file a tardy claim.  And, therefore, it's not to receive a
4   distribution under the modified plan as to the discharge of any
5   pre-petition liabilities.
6           I don't believe the Michigan agency is asserting that
7   they can file an untimely claim.  Although, I was advised prior
8   to the commencement of this hearing that they may have filed
9   such a claim in the last several days.  But I've not been able
10  to confirm it myself.
11          Just on that point, Your Honor, the Michigan Agency
12  was served, these are indisputable facts, I believe.  The
13  Michigan Agency was served with the bar date notice almost
14  three years ago but did not file a claim.  It hasn't sought to
15  file a late claim.  It hasn't made a requisite showing of
16  excusable neglect.  Other comparable agencies around the
17  country did file proofs of claims.  So it's not as though
18  workers' comp agencies around the country didn't realize that
19  it needed to do so.  And I don't believe that the agency can be
20  surprised by the outcome that is occurring in this case, vis-a-
21  vis the agency.  And, obviously, to the extent that the claim
22  was filed in the last couple of days, the debtors will
23  vigorously oppose that attempt on the grounds, among other
24  things, that their failure to file a proof of claim was a
25  conscious and a willful decision, and was without, at minimum,

1  excusable neglect.
2         Your Honor, we have been in conversation and dialogue
3  with regulatory authorities across the country about this case,
4  including most affected workers' compensation agencies.  And
5  what we shared with them and every agency had a different set
6  of facts, some filed claims, some didn't.  Some had letters of
7  credit, some didn't.  Some had insurance policies, some didn't.
8  Some had issues where they were substantially resolved and
9  others had issues that had to be dealt with.  But we have
10 consistently addressed a common theme.  That if a regulatory
11 agency for workers' comp had not filed a proof of claim before
12 the bar date that state would not be entitled to a distribution
13 under the modified plan and we would oppose any attempt to file
14 a late claim.
15        It's also I think very clear, Your Honor, especially
16 as Your Honor considers bar date orders, and this I don't think
17 we need to deal with in any detail in this hearing, but all
18 creditors, whether they're private or governmental, have to
19 abide by bar date orders, unless they forfeit distributions
20 under a plan, and I can't think of anything more compelling at
21 this point in time, then a claim that would intend to undue the
22 fabric of the compact that's been agreed to among stakeholders
23 in this case that will permit this company to complete a
24 modified plan of reorganization.
25        I also point out, Your Honor, that Michigan has

1  previously filed several proof of claims relating to taxes and
2  other matters, and Your Honor, actually adjudicated some of the
3  State of Michigan's claims in other hearings.
4       The argument the Michigan agency makes that its claims
5  are superior to the claims of all other creditors because of
6  state regulatory requirements, and therefore, the debtors are
7  compelled to honor workers' compensation obligations, simply
8  doesn't pass muster, particularly the focus of the preemption
9  concepts in federal law.  To the extent that this statue in
10 Michigan purports to establish the priority of their claims
11 over all other claims that statute is preempted by the
12 Bankruptcy Code and is of no further force and affect.  And in
13 our papers we have quoted to a number of cases, including In re
14 Law Corp. at 162 Bankruptcy 234, a 1993 Bankruptcy Court
15 decision in the District of Minnesota.  In re Redford Roofing
16 Company, an Illinois case in the Northern District, a 1995
17 case, it's 54 B.R. 254, 255.  And we tried to make clear that
18 to all the agencies we worked with and in Michigan that,
19 frankly, this Court is not going to use, and we believe in all
20 respects, absent a consent which does not exist here in the
21 plan or otherwise, is not going to use its equitable powers or
22 other principles to alter the Bankruptcy Code's priority
23 scheme.  And we have looked to U.S. v. Nolan, the Supreme Court
24 case at 517 U.S. 535, 1996 case, which I think addresses that
25 concept.

75

1  Your Honor, I think that the -- in terms of the
2  argument here that there's a violation of 1129(a)(3) of the
3  plan because they will not be paid in full.  Because the
4  agency's unfiled pre-petition workers' comp claims aren't
5  entitled to receive distributions under the Bankruptcy Code,
6  the conclusion that we think is inevitable from that that the
7  modified plan comports with 1129(a)(3) of the code.
8  They also point to an argument which is I think a bit
9  confusing.  They basically say that neither New Delphi, the
10 company buyer, or General Motors' subsidiary that's acquiring
11 four of the KEIP sites in Michigan plus the steering business,
12 that they can't -- they won't be able to qualify self-insurers
13 following confirmation of the modified plan and they won't be
14 able to comply with state law as it relates to fulfilling
15 workers' compensation obligations.  And, therefore, that's a
16 further violation of 1129(a)(3).
17 I don't understand that because in Michigan there are
18 multiple paths to be able to comply with that statute.  Self-
19 insurance is only one of them.  You can pool your workers'
20 compensation obligations.  There are other ways you can meet
21 the requirements.  And I don't believe there's anything they've
22 introduced in their objection, or anything in this record, that
23 would establish that there is no ability of either a General
24 Motors or the company buyer, to comply on a post-effective day
25 basis with the laws of the State of Michigan.

76

1      THE COURT: And what about the reorganized debtor,
2 that the assets that remain behind?
3      MR. BUTLER: I think that's the same situation, Your
4 Honor, particularly -- and we'll get to that. The fact of the
5 matter is, that our reorganized DPH Holdings which is going to
6 hold assets that are going to be wound down is going to have
7 actually no employees. It's going to have an authorized
8 representative which I'm going to identify in this hearing, as
9 part of the hearing. And it's going to contract out on a
10 management services basis the activities it needs to undertake
11 to complete that. And so I don't believe that that particular
12 activity, and reorganized DPH Holdings, may last for any period
13 of years while it undertakes its work, but it's not going to
14 have anyone, I think, going to necessarily be subject to those
15 laws. To the extent that the company --
16      THE COURT: If it did it would be a very small number
17 of people.
18      MR. BUTLER: It would be a very small number of people
19 and the company would -- obviously, reorganized Delphi, DPH
20 Holdings, expects to comply with all laws that are applicable
21 to it.
22      The other thing that they argue is that there's a
23 violation here. I addressed it briefly before. There's a
24 violation here under 28 U.S.C. 959(b) because they say that we,
25 as debtor-in-possession, won't comply with those applicable

1   laws.  But, again, I don't believe -- they've used that statute
2   and the argument to basically say that because the pre-
3   petition, what I believe will be discharged workers' comp
4   claims, aren't going to be paid that that is somehow a
5   violation of the Bankruptcy Code and of 28 U.S.C. 959(b).  And
6   I don't think you can basically turn the Bankruptcy Code on its
7   head and say okay, I didn't file a claim I'm going to be
8   discharged, those workers' comp claims aren't going to be paid
9   and, therefore, that's an independent basis under 959 to argue
10  that there's a violation.  Because that gets you sort of in the
11  circular -- a circulatory of argument I don't think the Court
12  should sustain.
13              State law may well establish priorities for the
14  benefit of workers' compensation claimants outside of
15  bankruptcy, but as I said before the Bankruptcy Code in our
16  view, clearly preempts conflicting state statutes as discussed.
17              And I think the only other thing I'd like to address,
18  Your Honor, is their reliance on Bickford v. Load Star Energy
19  Inc. at 310 B.R. 70 at page 76.  This was an Eastern District
20  of Kentucky case decided in 2004.  And that's a case that
21  apparently required payment of a pre-petition claim in full.
22  In Bickford a district court reversed a bankruptcy court order
23  enjoining state officials for enforcing a post-petition bonding
24  requirement against holders of surface mining permits in the
25  ground that bonding requirements served, not only the state's

78

1    pecuniary interest, but also protect the state's citizens
2    against dangers of unreclaimed land and came within the police
3    power exception of the automatic stay.
4            In contrast, here, the Michigan Agency is not
5    challenging the debtors' post-petition compliance with the
6    state workers' compensation statutes and regulations because
7    we, in fact, are in compliance and will remain in compliance
8    with the post-petition obligations imposed on us.
9            Rather, they're asking the Court to say because we are
10   not prepared to pay or to find a way through the MDA parties to
11   pay pre-petition claims that for which no proof of claim was
12   filed, that we are -- and because -- and notwithstanding the
13   preemption provisions that are applicable here, our failure to
14   do that somehow brings us back under -- apparently, under their
15   argument, the police power exception, and makes the Bickford
16   case applicable.
17           We simply believe it is not.  We ask Your Honor to
18   find that the objection is without merit and to overrule it.
19           THE COURT:  Okay.  I understood that the agency wanted
20   to rest on its papers, but having heard the argument does it
21   have anything further to say?
22           Okay.  I'm going to overrule this objection to
23   approval of the plan modification motion.
24           First, I seriously question the standing of the
25   Michigan Workers' Compensation Agency, given that it did not

79

1  file a claim by the bar date established in this case, and has
2  not sought over the last -- I guess it's over three years since
3  the bar date was established, to do so under Rule 9006.
4       But even assuming that the agency did have standing to
5  protect that hypothetical and currently barred claim, I believe
6  that the objection is not well taken.  As I read it, the
7  objection is focused upon the debtors' obligations with respect
8  to pre-petition workers' compensation claims which under the
9  Bankruptcy Code's priority scheme are not entitled to payment
10 in full given the value of these debtors as established by the
11 exhibits, including Mr. Shore's.
12      The federal priority scheme under the Bankruptcy Code
13 cannot be modified by state action.  In that regard, I agree
14 with the debtors and their citation to In Re Olga Coal Company,
15 194 B.R. 741 at 746 (Bankr. S.D.N.Y.), as well as In re Redford
16 Roofing Company, 54 B.R. 254, 255 (Bankr. M.D. Illinois 1985).
17      The argument that Michigan made by regulation override
18 the priority scheme of the Bankruptcy Code, I believe also is
19 inaccurate, at least as it applies to these claims.  This is, I
20 believe, a true pecuniary claim seeking payment of pre-petition
21 obligations.  And, therefore, I believe does not run afoul of
22 28 U.S.C. 959(b).  If it did, then the amounts would have been
23 sought and paid years ago.
24      The objection also, although, not that clearly, raises
25 perhaps an issue as to the payment of performance of workers'

1   compensation obligations going forward, that is after the
2   closing of the transactions contemplated by the plan
3   modification motion. The debtors have confirmed their
4   agreement as the reorganized debtor to comply with their
5   obligations under the Michigan regulations with regard to
6   workers' compensation post-closing, based upon the exhibits and
7   the underlying agreements before me. I believe that the
8   debtors are correct that those obligations will be minimal and
9   that the debtors will lack sufficient resources to perform the.
10         As far as the performance by GM, that is New GM, and
11  the DIP lender acquirers going forward, to the extent that is
12  an issue before me, I believe that they are (a) sufficiently
13  incentivized to perform their obligations in respect of workers
14  compensation going forward, and, secondly, have sufficient
15  wherewithal to do so. Again, based upon the record before me.
16         The last basis for the objection is an argument that
17  the payment under the confirmed Chapter 11 plan of these
18  obligations or the provisions for their payment under the
19  confirmed Chapter 11 plan now estop the debtors under various
20  estoppel theories from treating them as a claim subject to the
21  priority rules of the Bankruptcy Code. I conclude that there
22  is not a basis for estoppel on those facts. The plan
23  modification exhibits make crystal clear that the debtors
24  financial circumstances have drastically changed between the
25  confirmation of the present plan on file and the plan

81

1  modification, such that clearly the debtors' resources are not
2  sufficient to pay a "par plus accrued recovery" to unsecured
3  creditors, as the original plan provided. And, instead, the
4  debtors' estates have the value as detailed in the declarations
5  that have been submitted, and as borne out by the auction
6  process that provides for greatly reduced ability to pay pre-
7  petition claims. Therefore, if the debtors today in fact tried
8  to pay these claims in full or a par plus accrued recovery,
9  they would be violating the Bankruptcy Code.
10           Clearly, the confirmed plan had as a condition to its
11  going effective, the closing of the EPCA or investor agreement,
12  which did not occur. The plan obviously since it had that
13  condition to its going effective contemplated the possibility
14  of its not going effective, including the breach or termination
15  of the EPCA. Consequently, I don't see a basis for estoppel
16  given that the document upon which estoppel is asserted
17  contemplates the possibility of the treatment that is currently
18  being afforded to the claims of the agency, to the extent it
19  has an assertible claim, as well as all other unsecured
20  creditors.
21           Moreover, as far as equitable estoppel is concerned,
22  as I said it would be highly inequitable to elevate these
23  claims which are substantially similar to other unsecured
24  claims over those claims.
25           So for those reasons, I'll deny the objection.

```
                                                                   245
 1
 2                      C E R T I F I C A T I O N
 3
 4      I, Clara Rubin, certify that the foregoing transcript is a true
 5      and accurate record of the proceedings.
 6      Clara Rubin   Digitally signed by Clara Rubin
                      DN: cn=Clara Rubin, c=US
                      Reason: I am the author of this document
 7      _____
                      Date: 2009.08.07 14:49:50 -04'00'
 8      Clara Rubin
 9      AAERT Certified Electronic Transcriber (CET**D-491)
10      Also Transcribed By:    Esther Accardi (CET**D-485)
                                Dena Page
11
12
        Veritext LLC
13
        200 Old Country Road
14
        Suite 580
15
        Mineola, NY 11501
16
17
        Date: July 30, 2009
18
19
20
21
22
23
24
25
```