# **EXHIBIT D**

1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case No. 05-44481-rdd

- - - - - - - - - - - - - - - - - - - - - -x

In the Matter of:

DELPHI CORPORATION, et al.,

        Debtors.

- - - - - - - - - - - - - - - - - - - - - -x

        U.S. Bankruptcy Court

        One Bowling Green

        New York, New York

        August 20, 2009

        10:20 AM

B E F O R E:

HON. ROBERT D. DRAIN

U.S. BANKRUPTCY JUDGE

50

1  case, in that I accept that Plymouth Rubber was clearly in
2  wind-down mode, where it only had one employee, who, consistent
3  with the very limited nature of its operations (which from
4  Mr. Collins' affidavit, which is uncontroverted, pertained
5  almost entirely to the two pending litigations) meant that
6  Mr. Collins checked the post office box only roughly once every
7  two weeks.  In addition, the time for the bar date notice was
8  shortened here from the normal time that would usually be
9  provided.  And, finally, there was potentially some room for
10 confusion, given that the notice was addressed to "Inc." as
11 opposed to "LLC."
12         On the other hand, I find it very hard to understand
13 why, given Mr. Collins' sole function, which appears to be to
14 monitor the mail, and the fact that he did so only roughly once
15 every two weeks, he did not open the mail, but instead simply
16 forwarded it to Mr. Schultz of Versa.  It would not seem to me
17 that he should have done that, given that Plymouth had
18 established the P.O. box that he checked as opposed to setting
19 up an automatic forwarding from Plymouth's address to Versa's.
20 It would appear, instead, to me appropriate for Mr. Collins to
21 have acted as someone who actually read the mail as opposed to
22 as a second mailman for delivery purposes.
23         So, clearly, it was within Plymouth's control to have
24 had notice of the bar date, at least by July 9th.  Moreover,
25 Plymouth did not file its claim until after the hearing on plan

51

1  modification, which it needn't have waited for.  It had the
2  claim or was aware of the late claim issue on July 16th, but,
3  nevertheless, waited two weeks thereafter to do so.  So, all
4  things being considered, it appears to me that while this is a
5  somewhat close case, the neglect here was largely within the
6  control of Plymouth.
7      Secondly, while the time between the bar date and the
8  filing of the claim was relatively short, I conclude that there
9  was prejudice to the debtor and other parties that resulted
10  from the delay.  If, in fact, the responsibility for paying
11  this administrative claim, to the extent it is allowed, rested
12  with either GM or the DIP lender acquisition vehicle, it would
13  appear to me, particularly given the balance of factors on
14  whether the delay was within Plymouth's control, that the lack
15  of prejudice to the estate would have argued for letting the
16  claim be filed late.  (The fact that some party receives a
17  smaller distribution or another third party pays more money as
18  a result of a claim being allowed to be filed late is not
19  sufficient prejudice, it is not the type of prejudice that the
20  courts have in mind when they evaluate the prejudice factor
21  under Pioneer.)
22      However, here, I believe there is prejudice to the
23  estate.  And also, again, some blame should be laid on Plymouth
24  for causing this prejudice by not filing the claim until after
25  the plan modification hearing.  As represented by Mr. Butler,

52

1  who clearly was involved in the preparation for the plan
2  modification hearing and the debtors' efforts to determine
3  whether, in fact, the MDA would result in a feasible plan, the
4  calculation of likely administrative claims against a surviving
5  debtor entity was a key factor in moving forward with the
6  hearing on July 29th.
7     It's been stated that a demand number under the
8  counterclaim by Plymouth is approximately twenty million
9  dollars.  That number would have had a significant impact on
10 the debtors' presentation of the modification of the plan on
11 July 29th and the Court's consideration of whether the plan is
12 feasible or was feasible, and would have, if asserted as a
13 recovery against the debtors -- the surviving debtors, as an
14 administrative claim it could have had a very significant
15 impact on feasibility.  Consequently, it would appear to me
16 that although the delay was short, it was very significant, and
17 that both the debtors as well as the other parties to the MDA,
18 and ultimately the Court, moved ahead in reliance on that claim
19 not being asserted.
20    So, that prejudice, as well as my conclusion that the
21 lateness of the claim, first in terms of its being verbally
22 asserted only on July 16th and then actually formally asserted
23 after the plan modification hearing, was largely, if not
24 entirely, within the control of Plymouth, leads me to deny
25 Plymouth's motion.

53

1        Obviously, to the extent that it is asserting a right
2   to setoff or recoupment, the lateness of the claim should not
3   matter, so that what this ruling effectively does is preclude
4   Plymouth from an affirmative recovery against the debtor's
5   estate as opposed to, again, a recoupment or setoff right in
6   the Michigan and Massachusetts litigation.
7        So Mr. Butler, you can submit an order to that effect.
8        MR. BUTLER:  Yes, Your Honor.
9        THE COURT:  Okay.
10       MR. BUTLER:  Your Honor, the last matter on the agenda
11  for today, matter number 8, is a motion for authority to apply
12  the claims objection procedures to administrative expense
13  claims, filed at docket number 18715.  Your Honor, by this
14  motion, what we're seeking to do is to use the claims
15  procedures that Your Honor is familiar with, that have been
16  running on a separate claims track for the last two and a half
17  years, to apply those to administrative claims.  And I think it
18  goes without saying that the -- and I think Your Honor has
19  observed in the past, that the procedures that have been
20  adopted by the Court here back on December 7th of 2006 at
21  docket number 6089, have served the debtors well and have dealt
22  with an expeditious treatment of almost 17,000 proofs of claim,
23  and through some 34 omnibus claims objections that addressed
24  over 14,000 of those claims, and have resulted in the
25  disallowance or withdrawal of over 10,000 of those claims.  So

1
2         C E R T I F I C A T I O N
3
4    I, Clara Rubin, certify that the foregoing transcript is a true
5    and accurate record of the proceedings.
6    Clara Rubin
         Digitally signed by Clara Rubin
         DN: cn=Clara Rubin, c=US
         Reason: I am the author of this document
         Date: 2009.08.31 15:13:37 -04'00'
7    _____
8    Clara Rubin
9    AAERT Certified Electronic Transcriber (CET**D-491)
10
11   Veritext LLC
12   200 Old Country Road
13   Suite 580
14   Mineola, NY 11501
15
16   Date: August 21, 2009
17
18
19
20
21
22
23
24
25