Hearing Date & Time: December 18, 2009 at 10:00 a.m. (prevailing Eastern Time)

Objections due: December 17, 2009 at 4:00 p.m. (prevailing Eastern Time)

teiner (NG 1644)
Dean M. Gloster (Admitted *Pro Hac Vice*)
Kelly A. Woodruff (Admitted *Pro Hac Vice*)
FARELLA BRAUN + MARTEL LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
Telephone:  (415) 954-4400
Facsimile:  (415) 954-4480

Attorneys for OFFICIAL COMMITTEE OF
ELIGIBLE SALARIED RETIREES


UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| -----------------------------------------------------x | Chapter 11 |
| In re: | Case No. 05-44481 (RDD) |
| DPH HOLDINGS CORP., <u>et al.</u>, | (Jointly Administered) |
| Reorganized Debtors. | |
| -----------------------------------------------------x | |

EXPEDITED MOTION UNDER 11 U.S.C. § 105 TO EXPAND VOLUNTARY EMPLOYEE
BENEFIT ASSOCIATION BENEFITS TO HOURLY EMPLOYEE RETIREES

("EXPANSION OF VEBA BENEFITS MOTION")

**Introduction**

The Official Committee of Eligible Salaried Retirees appointed by this Court under 11 U.S.C. § 1114 (the "Salaried Retiree 1114 Committee") respectfully submits this motion (the "Motion") under 11 U.S.C. § 105 for entry of an order expanding eligibility for the benefits offered by its Voluntary Employee Benefit Association ("VEBA") authorized by prior order of this Court (Docket No. 16547) to include hourly employee-retirees of the Debtor and their

2

dependants.  In support of the Motion, the Salaried Retiree 1114 Committee respectfully represent as follows:

## Introduction

The Salaried Retiree 1114 Committee seeks a slight modification of an order which encompasses the settlement agreement with the Debtors.  The modification sought has no bearing upon the Debtors' obligations (which have already been fulfilled), nor does it impose any burden upon any other party (or former party) of this bankruptcy proceeding.  Rather, as explained in this motion, part of the language of the settlement was originally included to ensure that the benefits provided by the VEBA set up by the Salaried Retiree 1114 Committee could allow retirees and their dependants to take full advantage of the Health Coverage Tax Credit ("HCTC") to provide its participants access to the tax subsidies that reduced pre-Medicare insurance premiums by 80%.  When the Order was drafted, however, it was not then anticipated that any non-salaried retirees (including those represented by unions) would need or desire to be part of VEBA (or that it would be an advantage to have those union members included.)  Accordingly, the language of the settlement order was drafted in such a manner that it did not expressly provide that any non-salaried retirees could be participants of the VEBA set up by the Salaried Retiree 1114 Committee.  Since that time, hourly employees have also had their pensions taken over by the Pension Benefit Guaranty Corporation ("PBGC"), making them eligible for the HCTC, and retirees of the IUE-CWA who worked for the Debtors have expressed interest in participating in the VEBA.  The VEBA has found it to be jointly beneficial for its current members to expand the scope of its VEBA to include those members.  Accordingly, to avoid any ambiguity that might later raise questions about the hourly employee's eligibility for the HCTC,, a modification of the settlement order is requested to remove any implied and

3

unintended limitation of it scope so that other retirees of Delphi needing access to HCTC healthcare programs can obtain HCTC-qualified benefits through the VEBA set up through the order, when mutually beneficial to the existing VEBA participants.

<u>Background</u>

1.	On October 8 and 14, 2005, the Debtors filed voluntary petitions in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as then amended (the "Bankruptcy Code"). The Debtors continue to operate their businesses and manage their properties as debtors-in-possession under Bankruptcy Code sections 1107(a) and 1108. This Court has ordered joint administration of these cases.

2.	On February 4, 2009, the Debtors filed a motion seeking the Court's approval to cease contributions to retiree welfare benefit plans after March 31, 2009. (Docket No. 14705 (the "OPEB Termination Motion.").)

3.	At a hearing on February 24, 2009, the Court determined that Delphi could terminate unvested retiree welfare benefits without following the procedures set forth in section 1114 of the Bankruptcy Code, as memorialized in the Court's subsequent order (Docket No. 16380 (the "Provisional Salaried OPEB Termination Order")). Although the Court also provisionally determined that Delphi's welfare benefit plans were in fact unvested, at-will benefits, the Court directed the United States Trustee to appoint a Retirees' Committee under the discretionary provisions of section 1114 (the Salaried Retiree 1114 Committee) for the principal purpose of determining whether evidence existed that any retiree or group of retirees had vested benefits, and to meet and confer with the Debtors over any consensual modifications to the Provisional Salaried OPEB Termination Order in return for waiving or settling the right to appeal from entry of that order. (*Id.*)

4. After discovery and an additional hearing on March 11, 2009 the Court finalized its ruling authorizing Delphi to cease OPEB contributions as of April 1, 2009. (Docket No. 16448 (the "Final OPEB Termination Order."))

5. The Salaried Retiree 1114 Committee filed a notice of appeal to the United States District Court for the Southern District of New York from the Final OPEB Termination Order. (Docket No. 16458.)

6. Pursuant to this Court's order appointing the Salaried Retiree 1114 Committee, the Salaried Retiree 1114 Committee undertook extensive but rapid negotiations with the Debtors to reach a settlement, particularly in light of recent changes to the law that permitted a VEBA set up by a section 1114 committee or authorized by a bankruptcy court to offer a benefit eligible for the Health Coverage Tax Credit ("HCTC.") The HCTC is a federal tax credit, codified in Internal Revenue Code Section 35(e)(1), 26 U.S.C. § 35(e)(1), that now pays 80% of the cost of health and prescription drug benefits for eligible retirees who are at least age 55 but not yet 65 and who are receiving benefits from the Pension Benefit Guaranty Corporation ("PBGC") because of termination of their defined benefit pension plan and turnover of the plan to the PBGC. *See* 26 U.S.C. § 35(e)(1)(J)(iii).

7. The Salaried Retiree 1114 Committee reached agreement with the Debtors, and on April 1, 2009, the Debtors filed an expedited motion seeking approval from this Court for the compromise and settlement (the "Settlement") with the Salaried Retiree 1114 Committee. (Docket No. 16535.)

8. Among other things, under the Settlement, the Debtors agreed that the Debtors would pay $8.75 million in overall subsidy payments to the Salaried Retiree 1114 Committee for the benefit of Delphi's salaried retirees, not subject to reduction because of

5

enrollment levels, and comprised of (i) a $1 million hardship fund, payable at the beginning of May 2009; (ii) $500,000 VEBA set-up costs, payable at the beginning of May 2009 (which the Salaried Retirees 1114 Committee could also use for hardship fund or subsidizing retiree medical benefit costs); (iii) $1.25 million per month for five months, payable monthly at the beginning of each of June through October 2009; and (iv) one final payment of $1 million on November 1, 2009. (*Id.*)

9.  This Court's approved the Settlement by an order entered April 3, 2009 ("the Settlement Approval Order.") (Docket No. 16547.) The Settlement Approval Order also authorized the Salaried Retiree 1114 Committee to form a VEBA to offer a benefit eligible for the HCTC. (*Id.*)

10. After entry of the Settlement Approval Order, the Debtors made the full payments required under the Settlement Approval Order and the defined benefit pension plan of the salaried retirees of the Debtors was terminated. On August 10, 2009 PBGC took over responsibility for the terminated defined benefit pension plan of the salaried retirees, triggering eligibility for the HCTC. (See http://www.pbgc.gov/faq/delphifaq.html)

11. The Salaried Retirees 1114 Committee formed the DSRA Trust VEBA (the "DSRA VEBA"), and the board of the DSRA VEBA was appointed. Working with a third party broker of record, the Salaried Retiree 1114 Committee obtained competitive quotes from various vendors, negotiated attractive insurance benefits (health, prescription drug, dental and vision care) with various vendors and selected Marsh as the third party administrator of the benefits. Coordinating with the IRS about rolling out information on HCTC benefit eligibility, the Salaried Retiree 1114 Committee and the DSRA VEBA board rolled out the benefits for salaried retirees and their dependants on September 1, 2009, within a month of the PBGC

6

assuming responsibility for the pensions. To date, there are 3012 participants, 2400 of whom are participating in the IRS HCTC subsidy program. A hardship process was also established to provide assistance to retirees with extraordinary needs.

12. The Salaried Retiree 1114 Committee is still obligated to provide this Court with a final accounting of the funds received from the Debtors. The Salaried Retiree 1114 Committee expects to be able to do so promptly requesting and receiving required information for an accounting from the DSRA VEBA in the next 30 days.

<u>Hourly Employee Benefit Eligibility</u>

13. Unfortunately, not only the salaried retirees of the Debtors had their pensions terminated and turned over to the PBGC. Various pension plans of the Debtors for the benefit of hourly workers, including those workers represented by various unions, were also terminated and turned over to the PBGC. (See http://www.pbgc.gov/faq/delphifaq.html) In addition to the bulk of its work force represented by the United Auto Workers ("UAW"), Debtors' hourly employees and retirees included many workers represented by other unions (collectively, the "Splinter Unions") including: the International Union of Electronic, Electrical, Salaried, Machine and Furniture Workers, Communications Workers of America ("IUE"); the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union AFL-CIO ("USW" or "United Steelworkers"); the International Brotherhood of Electrical Workers ("IBEW"); the International Association of Machinists and Aerospace Workers ("IAMAW"); and the International Union of Operating Engineers ("IUOE").

14. Particularly for the retired Splinter Unions' members eligible for the HCTC, the benefits offered by the VEBA set up by the Salaried Retirees 1114 Committee may be much more attractive than retirement benefits offered to them by General Motors, the buyer of

certain assets of the Debtors, under agreements made by General Motors to offer certain minimal benefits for retired members of the Splinter Unions who were formerly employees of the Debtors.

15.    The VEBA board and members of the Salaried Retirees 1114 Committee have had recent discussions with the IUE and other Splinter Unions about expanding eligibility for benefits offered by the VEBA from salaried retirees and their dependants to also include hourly retirees and their dependants, and the VEBA board as a result voted to expand eligibility, contingent on this Court's approval, to ensure that the hourly retirees would be eligible for HCTC subsidies.  There is great time urgency to the relief sought, because hourly retirees must make elections of benefits effective January 1, 2010.

Relief Requested

16.    The HCTC statute provides that a benefit eligible for the HCTC subsidy includes one offered by a VEBA either set up by a section 1114 retiree committee in a bankruptcy case or otherwise "pursuant to an order of a bankruptcy court."  26 U.S.C. § 35(e)(1)(K).

17.    The current VEBA was set up by a section 1114 retiree committee, but one which represented only salaried retirees, and was authorized by an order of this Court, but that order was entered approving a settlement of an appeal of an order terminating only the benefits of salaried retirees.  Out of an abundance of caution, to ensure that there is no technical objection to the HCTC eligibility of hourly retirees who enroll in the VEBA benefit, the Salaried Retiree 1114 Committee is seeking an additional order of this Court authorizing the VEBA to provide benefits for hourly retirees and their dependants, intended to be eligible for the HCTC subsidies.

18. Entry of an order expanding the VEBA benefit eligibility to include hourly retirees will provide a cost effective, 80% HCTC-subsidized robust health care, prescription drug, and related benefits to eligible hourly retirees and their dependants, at no cost to the Debtors, while eliminating the smaller subsidy costs that General Motors, a successor to the Debtors after agreements purchasing assets, would otherwise pay for Splinter Union retirees who enroll in the VEBA benefit instead of the less extensive General Motors-offered benefit.

19. At the same time, expanding the pool of eligible retirees to include hourly retirees makes possible economies of scale and enhances the long term viability of the VEBA benefit, by increasing the pool of eligible beneficiaries, thereby making the program more attractive to vendors who negotiate price and terms of future benefits when current contracts expire.

20. Although Debtors have confirmed a plan of reorganization, this Court continues to have jurisdiction over the case and the interpretation of its prior orders. Under comparable circumstances, other bankruptcy courts have authorized VEBAs to offer HCTC-eligible benefits years after confirmation of bankruptcy plans in such cases, in view of the recent revisions to the HCTC. *See*, *e.g.*, *In re Delta Air Lines*, S.D.N.Y. Bankruptcy Court Case No. 05-17923-cgm, Docket No. 7486. (November 18, 2009 Order authorizing VEBA for retired pilots who had their pension turned over to the PBGC.)

21. Opening eligibility of the DSRA VEBA benefit to hourly retirees and their dependants will not require payment of significant ongoing funds from the settlement for the benefit of salaried retirees, because the program will be essentially self-supporting, with the cost of administering the health benefit program included in the cost of those benefits paid by participants and subsidized by the HCTC.

WHEREFORE the Salaried Retiree 1114 Committee respectfully requests that this Court enter an order clarifying the Court's prior order approving the Settlement and authorizing the Salaried Retiree 1114 Committee to form a VEBA to offer HCTC-eligible benefits, to provide that the VEBA formed under that order is authorized to offer benefits to hourly retirees of the Debtors.

Dated:    San Francisco, California
          December 15, 2009

FARELLA BRAUN & MARTEL LLP

By:    */s/ Neil A. Goteiner*
       Neil A. Goteiner
       Dean M. Gloster
       Kelly A. Woodruff

235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

Attorneys for OFFICIAL COMMITTEE OF ELIGIBLE SALARIED RETIREES

24397\2107611.6