|  |  |
|---|---|
| | Hearing Date and Time: December 18, 2009 at 10 a.m. |
| | Response Date and Time: December 16, 2009 at 4 p. m. |

PREVIANT, GOLBERG, UELMEN, GRATZ
MILLER & BRUEGGEMAN, s.c.
1555 N River Center Drive, Suite 202
Milwaukee, WI 53212
(414) 271-4500
Marianne Goldstein Robbins
Attorney for Int'l Brotherhood of Elec. Workers &
Attorney for Int'l Ass'n of Machinists & Aerospace
    Workers

GORLICK KRAVITZ & LISTHAUS P.C.
17 State Street
New York, N.Y. 10004
(212) 269-2500
Barbara S. Mehlsack
Attorney for Int'l Union of Operating Engineers
Locals 18S, 101S, 832S

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— x

In re                                             Chapter 11
DELPHI CORPORATION, et al.,                       Case No. 05-44481 (RDD)
                                                  (Jointly Administered)
            Debtors.

———————————————————— x

**SUPPLEMENTAL RESPONSE TO REORGANIZED DEBTORS' SUPPLEMENTAL REPLY TO RESPONSES OF CERTAIN CLAIMANTS TO DEBTORS' OBJECTIONS TO (A) PROOFS OF CLAIM NOS. 13663 AND 13730 FILED BY THE INTERNATIONAL UNION OF OPERATING ENGINEERS (THE "IUOE"), LOCAL 101-S, (B) PROOFS OF CLAIM NOS. 13734 AND 15071 FILED BY THE IUOE, LOCAL 18-S, (C) PROOFS OF CLAIM NOS. 13699 AND 15075 FILED BY THE IUOE, LOCAL 832-S, (D) PROOFS OF CLAIM NOS. 13863 AND 14334 FILED BY THE INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS AND ITS DISTRICT 10 AND TOOL AND DIE MAKERS LODGE 78, AND (E) PROOFS OF CLAIM NOS. 13875 AND 14350 FILED BY INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL 663**

("**UNIONS' SUPPLEMENTAL RESPONSE TO SUPPLEMENTAL REPLY REGARDING CERTAIN UNION CLAIMS**")

The International Union of Operating Engineers Locals 101-S, 18-S, and 832-S ("IUOE"), the International Association Of Machinists and Aerospace Workers and its District 10 and Tool and Die Makers Lodge 78 ("IAM"), and the International Brotherhood Of Electrical 0057orkers, Local 663 ("IBEW"), (collectively "Unions") hereby respond to the Reorganized Debtors' Supplemental Reply Regarding Certain Union Claims [Docket No. 19157; hereinafter "Debtors' Suppl. Reply"] as follows:

**A.    Background**

1.    The IUOE, IBEW and IAM are parties to collective bargaining agreements that provide for employees' participation in the Delphi Hourly Rated Pension Plan ("Delphi HRP"). The Delphi HRP provides: 1) at Article I that the Debtor must "make such payments or contributions as will be sufficient to maintain the fund on a sound actuarial basis as well as to pay expenses incident to the operation and management of the Plan," and 2) at Article IX, that, except as to changes necessitated by certain requirements of the Internal Revenue Code, the Debtor may not amend, modify or terminate the Plan "in respect of employees who are represented under a collective bargaining agreement in contravention of the provisions of any such agreement as long as any such agreement is in effect."

2.    On or about July 31, 2006, the IUOE, IAM and IBEW Locals filed proofs of claims for prior contract violations and contingent and unliquidated claims for a future retirement benefits including OPEB and pension benefits payable under the terms of the Delphi HRP. The claims for future retirement benefits are made by the Unions as agent for participants and beneficiaries of the Delphi HRP.

2

3. The Debtors filed motions under §§1113 and 1114 seeking modifications to the IUOE, IBEW and IAM collective bargaining agreements. As a result of the motions filed under §§1113 and 1114, the Debtors and the IUOE, IBEW and the IAM agreed to modify and extend the collective bargaining agreements to September 14, 2011, through Memoranda of Understanding and related agreements ("MOUs") entered into on or about July 31, 2007. The agreements were approved by order of the Court. The MOUs provided that the applicable terms of the IUOE, IBEW and IAM collective bargaining agreements ("CBAs") regarding the Delphi HRP were modified in certain respects.

4. The MOUs provided for a freeze of the Delphi HRP and also provided that Delphi HRP participants retired before and after the Freeze Date, as well as participants in the special attrition program would continue to receive benefits including applicable supplemental benefits in the Delphi HRP as in effect immediately preceding the Effective Date of the agreement (the later of the ratification date or the entry of the Court's approval order). The MOUs did not modify the provision in Article I of the HRP that the Debtor must "make such payments or contributions as will be sufficient to maintain the fund on a sound actuarial basis as well as to pay expenses incident to the operation and management of the Plan,"

5. The MOUs also expressly provide that any waiver of claims in the MOUs do not apply to vested pension benefits or the claims for benefits provided for or explicitly not waived under the provisions of the Agreements. (See MOU Sections E. 2. and F. 2. and 3. a). The waiver and release language in the MOUs only goes into effect, pursuant to Section F. 2.(b) upon, "the substantial consummation of a plan of reorganization ….which incorporates, approves and is consistent with all the terms of this Agreement…"

6. The IUOE, IBEW and IAM, Delphi and GM subsequently entered into the Implementation Agreement, dated September 25, 2008, which provides in Attachment B, ¶10, that contingent upon certain events, specifically, that the Agreement: "shall not be effective unless the confirmation order approving the Plan incorporates and approves all of the terms of this Term Sheet…"

7. Among the terms in the MOU's are provisions which modify Delphi's pension obligations under the existing collective bargaining agreements. Specifically:

> a. Delphi will, as of the first of the month next following the Effective Date or as soon as practicable thereafter in accordance with the applicable law (the "Freeze Date"), amend the Delphi HRP so as to freeze benefit accruals for future credited service in the Delphi HRP…
>
> b. With regard to such amendment and freeze of the Delphi HRP, Delphi will cause the frozen Delphi HRP to pay benefits in accordance with the terms of the Delphi HRP and applicable law. These benefits will not be reduced from the levels in effect as of the date immediately preceding the Effective Date unless they are similarly reduced for other retired Delphi HRP participants.

The MOU's additionally provide that benefits, including supplemental benefits, shall be paid to retirees and future retirees who are participants in the Delphi HRP as in effect as of the effective date of those agreements. (See MOUs, ¶ D 2.b. (1)-(4)).

8. Under the Implementation Agreements, Delphi's assets and liabilities with respect to Delphi HRP participants were to be transferred to the GM Hourly Rated Pension Plan in accordance with the terms of the Agreement in the order specified therein; the only Delphi liabilities Debtors did not retain are those which are transferred to the GM Hourly Rated Pension Plan ("GM HRP"). To date only some of those transfers have been affected and 120 of the Delphi HRP participants represented by the Unions remain in the Delphi HRP.

9. Delphi did not make the contributions necessary to maintain adequate funding of the pension benefits provided under the Delphi HRP as amended by the MOUs and the Implementation Agreement.

10. On or about, July 15, 2009, the IUOE, IBEW and IAM filed responses to the Thirty Fourth Omnibus Claims Objection in which they asserted *inter alia* that any waivers and releases in the Settlement Agreements did not apply to claims for vested pension benefits and that it was premature of the Debtors to argue the invalidity of the Unions' contingent pension claims when the disposition of the Delphi HRP was not yet determined.

11. Since then, the disposition of the Delphi HRP has been agreed to by the PBGC and Delphi and the Delphi HRP has been terminated. As a result of pre-termination and post-termination agreements arrived at by General Motors, Delphi and the PBGC, the participants and beneficiaries represented by the Unions are the only participants and beneficiaries among a similarly situated group of participants and beneficiaries who were previously employed at both General Motors and Delphi whose retirement benefits from the Delphi HRP are being significantly reduced as a result of the underfunding and termination of the Delphi HRP.

12. On July 21, 2009, Delphi entered an agreement with the PBGC which acknowledged that, but for the parties' agreement, "the PBGC would have been entitled to a general unsecured claim in the approximate amount of $7 billion plus potential for additional recovery depending upon the outcome of litigation that would have ensued related to the Contingent PBGC Adequate Protection Liens." (Notice of Filing of Settlement Agreement Between Delphi Corporation and the Pension Benefit Guaranty Corporation, dated July 21, 2009, Exh. 1, p. 4; [Docket No. 18559]). The settlement agreement between Delphi and the PBGC reduced the admittedly valid PBGC claim to $3 billion, less than half the claim amount to which

the PBGC was admittedly entitled. (Id.) The reduced claim amount will limit the PBGC's recovery from Delphi and as a result reduce the amount of non-guaranteed benefits which the Union represented Delphi retirees and employees will receive in pension benefits.

13. On December 8, 2009, the Debtors filed their Supplemental Reply Regarding Certain Union Claims, alleging that the Unions' Proofs of Claim Nos. 13663, 13730, 13734, 15071, 13699, 15075, 13863, 14334, 13875 and 14350 fail to state a claim against the Debtors under Rule 7012, Fed. R. Bankr. P. (See Debtors' Suppl. Reply, ¶18). Specifically, the Debtors allege that there is no set of facts under which the Unions would be entitled to relief because "the union claims do not state any claims arising under Section 301 of the Labor Management Relations Act ("LMRA"), and therefore claimants have not "proved" any set of facts that support a right to payment from the Reorganized Debtors. (Debtors' Suppl. Reply, ¶26).

### B. Standard of Review in Challenge to Sufficiency of Claim

14. As Debtors acknowledge, the standard for review of the sufficiency of a proof of claim is similar to that on a motion to dismiss under Bankruptcy Rules 7012 and 9014. Claims should only be expunged "if it plainly appears that the non-movant 'can prove no set of facts in support of his claim which would entitle him to relief.'" In re Lopez, 339 BR 82, 86 (Bankr. S.D.N.Y. 2006).

15. As will be set forth below, the Unions have clearly met their burden to allege facts sufficient to support their claim.

### C. The Unions' Claims Have Not Been Released

16. The MOU's provide: 1) under Paragraph E. 2., that, "There shall be no waiver of rights, if any, to vested pension benefits…" and 2) at Paragraph F. entitled at subparagraph 3 a) which reads: "On the effective date of such plan of reorganization, the [Unions]…waive and

6

release any and all claims of any nature… (provided, however, that claims for benefits provided for or explicitly not waived under the provisions of this Agreement… are not waived)." As a result of these provisions, the waiver and release even if in effect, do not alter the Unions' claims for pension benefits on behalf of the participants they represent since these "are provided for and explicitly not waived" in the MOUs. The Debtors' claim of waiver does not constitute a valid objection to the IUOE, IBEW and IAM pension claims.

### D.   Unions Claims Other Than For Pension Benefits

17. Pursuant to the MOUs agreement, grievances were not released but rather were subject to resolution and payment in the ordinary course of business (MOU, § E.2.). Any order expunging claims for pending grievances should include in the order that Debtor will proceed to resolution on the grievances, notwithstanding the closure of individual facilities at which grievances are pending. If the Debtors maintain that they are no longer willing to resolve these disputes in the ordinary course of business, the proof of claim for the grievances should not be expunged.

### E.   The Unions' §301 Claim For Pension Benefits May Not Be Expunged

18. To the extent that the Debtors' grounds for expunging the Unions' claims are based upon their assertion that the Unions do not assert claims under §301, those grounds must be rejected as the Unions' claims clearly do assert claims under §301 of the LMRA. Section 301 of the Labor-Management Relations Act provides for the enforcement of agreements between employers and the unions representing their employees:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. §185(a). The unions have asserted pension rights under collective bargaining agreements in effect until September 14, 2011. The amended collective bargaining agreements, as well as the MOU Agreements and the Implementation Agreements are all contracts under §301 of the LMRA.

19. Because the Delphi HRP was insufficiently funded and terminated, the participants of the Delphi HRP who were not transferred to the GM plans will receive a significantly reduced payment of their vested benefits and reduced (if any) non-guaranteed pension benefits, in violation of the Unions' collective bargaining agreement and the MOU Agreements. Furthermore, the reduction Delphi HRP benefits affects only those current or former Delphi employees represented by the IUOE, IBEW and IAM who were not transferred to the GM plan, in violation of section D.2.b. of the MOUs which provides equal treatment of all participants. These contract violations are claims under §301 of the LMRA.

20. To the extent that the Union claims are claims under §301 and the Debtors rely upon the decision of the Sixth Circuit in United Steelworkers of Amer. v. United Engineering, Inc., 52 F.3d 1386 (6th Cir. 1995), that decision is not the law in the Second Circuit. In United Steelworkers, *supra,* the Court decided that §301 claims for pension benefits were preempted by Title IV of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 USC §§1301. As Debtors acknowledge, however, the same court has found that not all §301 claims for pension benefits are preempted by ERISA and further that the original case was decide on the "narrow grounds" that ERISA had been amended to provide that plan sponsors were not liable for non-guaranteed benefits. Local No. 1654 International Brotherhood of Electrical Workers v. L.G. Phillips Display Components Co., 137 Fed. Appx. 776 (6th Cir. 2005). The case was not decided on the grounds that Title IV makes the PBGC the exclusive right to

prosecute claims on behalf of plan participants or the plan and in fact other courts have expressly held that the PBGC does not have such exclusive right. <u>Wilmington Shipping Company v. New England Life Insurance Co.</u> 496 F. 3d 326,339 (4th Cir. 2007). While the holding in <u>Wilmington</u> applied to claims for breach of fiduciary duty under ERISA, it is equally apposite to §301 claims under the circumstances of this case.

21.    In the instant case, the agreements between the Unions and the Debtors effectively provide that the Debtors would be liable for non-guaranteed benefits, as the Debtors promised not to reduce benefits for participants represented by the IUOE, IBEW and IAM that are not similarly reduced for other participants. Other similarly situated participants in the Delphi HRP are and will be receiving non-guaranteed benefits either because they have been transferred to the General Motors HRP or because agreements have been made for payment of their non-guaranteed benefits. The Unions respectfully submit that under such circumstances the holding of <u>United Steel Workers</u>, <u>supra</u> is inapplicable.

**F.    The Claims On Behalf of Participants Claims For Breach Of Fiduciary Duty under Title I of ERISA which are not preempted by Title IV.**

22.    The Unions have filed claims on behalf participants in the Delphi HRP that are based upon claims for breach of fiduciary duty against the Debtors under Title I of ERISA. Those claims are not preempted by Title IV of ERISA. <u>Wilmington Shipping Company,</u> *supra,* at 339-341. <u>Harpster v. AARQUE Management Corp.</u>, 2005 U.S. Dist. LEXIS 30811; 35 EBC (BNA) 2531 (N.D. Ohio 2005).

23.    The Unions, as the claims agents for their respective members who are participants in the Delphi HRP, are entitled to maintain the participants' claims and have standing to pursue this matter. See <u>Hunt v. Washington State Apple Advertising Comm'n</u>, 432

U.S. 333, 343 (1977) (an association has standing to bring suit on behalf of its members when its members would otherwise have standing to sue in their own right, the interests it seeks to protect are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit); *see also* Pa. Federation of Brotherhood of Maintenance of Way Employees v. Vanguard Fiduciary Trust Co., 2004 U.S. Dist. LEXIS 1987 (E.D. Pa. Feb. 4, 2004) (denying Motion to Dismiss plaintiff union for lack of standing under ERISA §502(a)(2) and (3) where plan participant-union members had standing, enforcement of plan's negotiated terms were germane to union's purpose, and where injunctive relief and/or damages requested would be paid proportionately to each participant injured.); see also S. Ill. Carpenters Welfare Fund v. Carpenters Welfare Fund, 326 F.3d 919, 922 (7th Cir. 2003) (Seventh Circuit recognized that a union has Article III and "associational" standing to sue on behalf of its members who are plan participants, as the union was not seeking anything for itself, because the real plaintiffs were the participants).

24.     Under ERISA, plan participants are empowered to bring a civil action "(A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan," see 29 USC §1132(a)(3), including such claims as a breach of fiduciary duty.

25.     Debtors, as plan sponsor, owed a fiduciary duty to plan participants including the plan participants upon whose behalf the unions have filed a claim for lost pension benefits.

26.     A fiduciary must discharge his or her duties solely in the interests of the participants and beneficiaries, for the exclusive purpose of providing benefits to them, with the care, skill, prudence, and diligence under the circumstances then prevailing of the traditional

"prudent man." Donovan v. Bierwirth, 680 F.2d 263, 271 (2d Cir. 1982). Any person, an employer included, exercising discretionary acts that affect the assets of a pension plan, becomes a fiduciary with respect to those acts. Id.; 29 U.S.C. §1002(21)(A)(i). As such, where an employer makes decisions regarding the disposition of plan assets following plan termination, those decisions are subject to the fiduciary and "prudent man" standard of care. District 65, UAW v. Harper & Row Publishers, Inc., 670 F. Supp. 550, 556 (S.D.N.Y. 1987) (decisions regarding the disposition of plan assets upon termination constitute discretionary acts that affect the assets of a pension plan, which render an employer liable as a fiduciary, because its acts with respect to implementing the termination decision required discretionary decisions on its part).

27. Debtors violated their fiduciary duty to the IUOE, IBEW and IAM represented participants by failing to properly fund the Delphi HRP while it was sponsor, representing to the IUOE, IBEW and IAM participants that it would not act to reduce benefits to participants represented by those Unions if benefits were not reduced for other plan participants and negotiating and entering agreements with the PBGC and GM which reduced the assets which would be available to pay benefits in excess of non-guaranteed benefits upon termination.

28. Pursuant to §502(a)(3), individual participants are entitled to recovery for Debtor's breach of its fiduciary duty in failing to adequate fund the HRP and limiting the assets transferred to the PBGC for its allowed claim to less than half the amount to which the PBGC was entitled thereby reducing the pension benefits of the participants to which it had a fiduciary duty, while misrepresenting to those participants that it would not effect a reduction in their benefits if other participants benefits were not similarly reduced.

29. The claims asserted by the Unions on behalf of the participants are for the Debtors to do equity by restoring the benefits that have been reduced for the participants represented by

the Unions to the same levels that are being received or will be received by other similarly situated participants in the plan, who were either transferred to the GM HRP by Delphi or are or will be receiving non-guaranteed benefits by virtue of agreements reached among Delphi, GM and the PBGC.

## CONCLUSION

Wherefore, the Unions respectfully request that the Court deny the objection of the Debtors to the Unions' proofs of claim in their entirety.

Dated this 16th day of December, 2009.

        s/Marianne Goldstein Robbins
        Marianne Goldstein Robbins
        PREVIANT, GOLBERG, UELMEN, GRATZ
        MILLER & BRUEGGEMAN, s.c.
        1555 N River Center Drive, Suite 202
        Milwaukee, WI 53212
        (414) 271-4500
        Attorney for IBEW and IAM

        s/Barbara S. Mehlsack
        Barbara S. Mehlsack
        GORLICK KRAVITZ & LISTHAUS P.C.
        17 State Street
        New York, N.Y. 10004
        (212) 269-2500
        Attorney for IUOE

s:\docs\ele663\71259\m0366767.doc