**Hearing Date and Time: December 18, 2009 at 10:00 a.m.**

Dennis J. Raterink (P52678)
Michigan Assistant Attorney General
(Pro Hac Vice)
Labor Division
P.O. Box 30736
Lansing, MI 48909
(517) 373-1176

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

_____

In Re:                                               Chapter 11

DPH HOLDINGS CORP., et al.,                          Case No. 05-44481 (RDD)

      Reorganized Debtors.                           (Jointly Administered)

_____


### REPLY OF MICHIGAN SELF-INSURERS' SECURITY FUND TO REORGANIZED DEBTORS' OBJECTION TO MOTION TO PERMIT LATE FILED CLAIM PURSUANT TO FED. R. BANK. P. 9006(b)

Michigan's Self-Insurers' Security Fund (SISF), by and through its counsel, Mike Cox, Attorney General, and Dennis J. Raterink, Assistant Attorney General, hereby replies to Reorganized Debtors' Objection to Motion of Michigan Self-Insurers' Security Fund to Permit Late Filed Claim Pursuant to Fed. R. Bank. P. 9006(b), filed December 11, 2009.

In its objection to the SISF's motion, Reorganized Debtors argue that the SISF has not met the standard set for motions filed under Bankruptcy Rule 9006(b)(1), as interpreted by the U.S. Supreme Court in *Pioneer Investment Services Co. v Brunswick Associates Ltd. Partnership*, 507 U.S. 380; 113 S.Ct. 1489; 123 L.Ed.2d 74 (1993).

The SISF has met the *Pioneer* standards. It has articulated the reasons for the delay; debtors have not established that the claims would prejudice them; the length of the delay is

1

understandable under the factual circumstances at play; and debtors do not dispute that the SISF's actions have been undertaken in good faith.

However, Reorganized Debtors objection requires responses in regards to two issues: (1) inaccurate or incomplete factual statements; and (2) incorrect interpretations of the SISF's arguments.

## Factual Issues

In regards to the factual issues, Reorganized Debtors' Objection contains several statements that require explanation or correction. First, debtors indicate that the undersigned filed a Limited Appearance on behalf of the Workers' Compensation Agency on November 15, 2005.[1] This statement is correct but incomplete. On June 11, 2009, due to reorganization within the Michigan Attorney General's office, the undersigned filed an appearance solely on behalf of Michigan's Self-Insurers' Security Fund and Susan Przekop-Shaw, a fellow Assistant Attorney General, filed an appearance solely on behalf of the Michigan Workers' Compensation Agency.

Next, debtors state that the claims agent transmitted the Bar Date Notice to the "Michigan Self-Insurers Association.[2]" However, for the record, Michigan's Self-Insurers' Security Fund and the "Michigan Self-Insurers Association" are not the same or related entities.

Similarly, debtors state that the "Michigan Security Fund and the Michigan Self-Insurers Association share the same address.[3]" This is incorrect. Upon information and belief, the address listed for the Michigan Self-Insurers Association is correct. However, Michigan's Self-

---

[1] Reorganized Debtors' Objection to Motion of Michigan Self-Insurers' Security Fund to Permit Late Filed Claim Pursuant to Fed. R. Bank. P. 9006(b), p 7, paragraph 12
[2] Reorganized Debtors' Objection to Motion of Michigan Self-Insurers' Security Fund to Permit Late Filed Claim Pursuant to Fed. R. Bank. P. 9006(b), p 7, paragraph 14
[3] Reorganized Debtors' Objection to Motion of Michigan Self-Insurers' Security Fund to Permit Late Filed Claim Pursuant to Fed. R. Bank. P. 9006(b), p 8, paragraph 15

Insurers' Security Fund is a separate entity whose address, at all times germane to this case, was 7201 West Saginaw Highway, Suite 110, Lansing, MI. [4]

## Legal Issues

Reorganized Debtors' Objection attempts to refute the SISF's argument that it meets the standard for "excusable neglect" under Bankruptcy Rule 9006(b)[5], as interpreted by *Pioneer Investment Services Co. v Brunswick Associates Ltd. Partnership*, 507 U.S. 380 (1993). The decision lists four factors to consider when reviewing a request to file late claims:

> [T]he determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission. These include . . . the danger of prejudice to the debtor, the length of delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.
> [*Pioneer*, at 395]

Debtors challenge the SISF's rationale on three of the factors, conceding only that the SISF has acted in good faith.

Reason for the Delay:

The SISF failed to file a proof of claim in this matter due to an erroneous determination that it did not possess a claim against Debtors until such time as Debtors stopped paying workers' compensation benefits to its Michigan workers. This is because the Michigan statute does not provide the SISF subrogation rights of any kind until the employer stops making benefit

---

[4] These corrections addressed, the SISF does not dispute that the Bar Date Notice was received in a timely fashion.
[5] Fed. R. Bank. P. 9006(b)

3

payments and the SISF begins payments.[6]  By the time this erroneous determination was discovered, debtors had made several statements, through its pleadings in this Court and through direct communication with the Michigan Workers' Compensation Agency, indicating that it would continue to pay its workers' compensation obligations in Michigan and would remain self-insured going forward.  Based on these statements, the SISF determined that there was no need for a filing of a Proof of Claim.  Among the statements:

Debtors indicated in its First Amended Disclosure Statement:[7]

> Under the Plan, all workers' compensation obligations, regardless of whether they arise from prepetition or post-petition events, and regardless of whether a proof of claim has been filed, will flow through the Plan and continue to be paid by the Debtors in the ordinary course.

Debtors' First Amended Joint Plan of Reorganization stated that workers compensation claims would be treated as "Flow-Through Claims," which would be "unaltered by the Plan."[8]

Debtors' first letter to the Michigan Workers' Compensation Agency stated:[9]

> Delphi intends to abide by all applicable laws of the State of Michigan respecting workers' compensation obligations, and intends to continue to provide its Michigan-based employees with workers' compensation in accordance with Michigan law on a self-insured basis.

Debtors' second letter to the Michigan Workers' Compensation Agency, sent after Debtors filed a motion to modify their confirmed plan, stated:[10]

---

[6] MICH. COMP. LAWS §418.537
[7] Debtors' First Amended Disclosure Statement with Respect to First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-in-Possession (pgs DS-159-160) (December 10, 2007)
[8] Debtors' First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-in-Possession, ¶ 1.86, 5.2
[9] Defendant's Motion Exhibit 1: Letter from Delphi to Bruno Czykra, Deputy Director, Workers' Compensation Agency of January 25, 2008

4

> The modifications to the Plan of Reorganization do not include any changes in regards to workers' compensation nor change any aspect of the letter I sent on January 25, 2008 letter to the State of Michigan Workers' Compensation Agency. To reiterate, in connection with Delphi's emergence from Chapter 11, Delphi intends to abide by all applicable laws of the State of Michigan regarding workers' compensation obligations and intends to continue to provide its Michigan-based employees with workers' compensation in accordance with Michigan law on a self-insured basis.

It was not until June 1, 2009, with Debtors' motion to modify its confirmed plan, that the SISF became aware that Debtor was not going to remain self-insured, it was not going to pay past claims, and it would walk away from its workers' compensation obligations in Michigan.

There is precedent to support the granting of the SISF motion, based on the erroneous determination that it did not possess a claim. In the case of *In re Crane Rental Company, Inc.*, 334 B.R. 73 (WD Mass - 2005), the Court found that a pension fund's failure to file a timely proof of claim was based on "excusable neglect." Much like the facts of this case, the pension fund argued that it failed to file a timely claim due to three reasons: (1) the Debtor continued to make contributions to the Fund, (2) the Fund believed that it did not have a claim until the Debtor withdrew from the plan, and (3) the Fund had no notice that the Debtor was liquidating its assets until well after the proof of claim deadline.

The court assessed this rationale and found that the Fund's failure to file was "careless," but that it met the standards of *Pioneer*. The court then assessed the other factors: prejudice, delay, and good faith, found that they were in the Fund's favor, and approved the late claim.

Debtors argue among the four factors listed by the Supreme Court in *Pioneer*, this Court should focus on one factor, "the reason for the delay." Moreover, Debtors urge this Court to put

---

[10] Defendant's Motion Exhibit 2: Letter from Delphi to Jack Nolish, Director, Workers' Compensation Agency of October 17, 2008

5

even more emphasis on whether the reason for the delay was "within the reasonable control of the movant."

While it can be argued that the "reason for delay" was within the "reasonable control" of the SISF, this does not mean that its Motion to Allow Late Claims should be denied. This Court must recall the language of *Pioneer*, when it discussed the purpose of Rule 9006(b):

> Congress plainly contemplated that the courts would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control.
> [*Pioneer*, at 388]

Later, the Court added:

> Although inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute "excusable" neglect, it is clear that <u>"excusable" neglect under Rule (6)(b) is a somewhat "elastic concept" and is not limited strictly to omissions caused by circumstances beyond the control of the movant</u>.
> [*Pioneer*, at 392]

In the end, while the SISF's determination that it need not file a Proof of Claim before the deadline was erroneous, it does fall within the guidelines created in *Pioneer* and should be construed as a supporting factor in the SISF's motion.

Debtors point to the fact that other states did file contingent claims in regards to workers' compensation liabilities. This may be correct, but it is not relevant to the standards created in *Pioneer* and Rule 9006(b). Moreover, it might be noted that New York and Michigan, the two states where Debtor likely had the highest amount of workers' compensation liability, both did not file Proofs of Claim before the filing deadline. Is this a coincidence? Likely not. New York's objection to the Debtors' motion to modify its confirmed plan contained many similar

6

allegations of relying on the pleadings and statements of Debtor, in assuring New York that it would remain self-insured and pay its workers' compensation claims.[11]

Length of Delay:

While the length of time between the proof of claim deadline and the SISF filings is lengthy, it is explained by the reasons for the delay listed above. The necessity of filing a proof of claim did not become evident to the SISF until June 1, 2009, when debtors announced its intentions to abandon its Michigan workers' compensation obligations. The SISF claims were filed less than 60 days later. While this factor may not mitigate in favor of the SISF's motion, it should not be weighed heavily against it, either.

Danger of Prejudice to the Debtor

Debtors Objections lists three factors as to why allowing the SISF claims would be prejudicial: (1) it may "open the floodgates" to other entities who failed to file a timely proof of claim; (2) that the SISF priority claim would cause prejudice to Debtor (although it is not clearly specified); and (3) that the SISF proofs of claim were more prejudicial because they were filed on the day of the commencement of the final plan modification hearing. These asserted rationales do not support Debtors' objection.

   1.    Floodgates

While this rationale is widely asserted, it has no true relevance here. The mere fact that a party obtains relief for its "excusable neglect" does not support a contention that every other

---

[11] Limited Objection of the New York State Workers' Compensation Board, (Docket #18294)

7

entity who failed to file a timely claim will now seek leave to do the same. If any other party asserted that its neglect should be excused, that claim would be subject to the same scrutiny that Debtors and this Court have applied to the SISF's motion.

Debtors' notion of a "potential floodgate" was responded to best by the U.S. Bankruptcy Court for the Northern District of Georgia in a similar case:

> Respondent has not identified any other party in a similar posture. Moreover, the methodology for deciding whether to excuse neglect in failing to file a timely claim is an equitable one and very fact specific. . . . The notion that creditors lacking any equitable grounds to support excusable neglect would file similar motions is speculative, particularly since any such creditor would incur significant costs in the process. [*In re Rhodes, Inc.*, 2007 Bankr. LEXIS 4606 (N.D. Georgia – 2007), pp. 13-14]

2. Prejudice from Priority Claim

Debtors assert that the SISF's excise tax claim, which should receive priority treatment, would be "highly prejudicial to the Reorganized Debtors." It should be noted that Debtors have failed to list any specific ways in which the SISF's general unsecured claim creates prejudice.

Debtors point to the fact that the Modified Disclosure Statement had listed an aggregate amount of Priority Tax claims at $17.3 to $17.4 million, and point out that the SISF claim would be for over $25 million. However, Debtors fails to point out exactly how this creates prejudice.

Debtors indicate that they relied upon the claims register to calculate post-emergence liquidity needs to satisfy tax claims. If Debtors are forming this is a notice issue, they should be hard pressed to claim that they were unaware of their own workers' compensation obligations in Michigan. Debtors own filings with the Michigan Funds Administration indicate that it recognized that its total payments in workers compensation obligations in Michigan for the 2008

8

calendar year alone were over $24 million dollars.[12] Pleadings filed with this Court have detailed the intricate agreements between debtors and General Motors regarding the financing of the extensive workers' compensation obligations during the pendency of the bankruptcy. To now argue that it did not know of its obligations in Michigan strains credulity.

If debtors are arguing that allowing the SISF to file late claims is prejudicial to other creditors, that idea must be rejected. Prejudice to any entity other than the debtor should not be considered:

> The absence of any mention in *Pioneer* of the obvious effect of allowing a late claim on the amounts of distributions to other claimants shows that the Supreme Court did not consider this effect by itself to be an indicator in prejudice to the estate. Unsecured creditors may receive less than they would otherwise receive and thereby be "prejudiced" as they would be to the extent any other claim in the same or higher class be allowed, but the analysis under Rule 9006(b)(1) pursuant to *Pioneer* is concerned with possible prejudice to the estate only. [*In Re Rhodes, Inc.*, 2007 Bankr. LEXIS 4606 (ND Georgia – 2007), pp. 12-13]

In this Court's final review of this claim, it may determine that the SISF's priority claim would create unallowable prejudice to debtors that would cause the Court to deny the SISF's motion. If that possibility occurs, the SISF requests that the Court convert its priority claim to a general unsecured claim. As debtors have failed to articulate any prejudice created by the SISF's existing general unsecured claim, presumably there would be none after such a conversion, either.

3.   <u>Lateness of the claim</u>

Debtors have failed to articulate how the fact that the SISF filings were done late in the

---

[12] Exhibit 1: Document signed by Mark Fraylick, Delphi Corporation Manager, Workers' Compensation

9

Plan approval process created any greater or lesser amount of prejudice.

## Conclusion

When considering the totality of the circumstances surrounding the SISF's failure to file a timely proof of claim, this Court should determine that the failure was based on "excusable neglect." The SISF has articulated the reasons for the delay; there is no prejudice shown to the debtors; the length of the delay is understandable under the factual circumstances at play; and debtors do not dispute that the SISF's actions have been undertaken in good faith.

The SISF requests that it be allowed to file its two late proofs of claim: the priority tax claim based on excise taxes for unpaid workers' compensation obligations in the amount of $25,460,432.50,[13] and the general unsecured claim for unpaid workers' compensation obligations for $36,293,480.00.[14]

                                        Respectfully submitted,

                                        Michael A. Cox
                                        Attorney General

                                        /s/ Dennis J. Raterink
                                        Assistant Attorney General

                                        Attorneys for Self-Insurers' Security Fund

                                        Labor Division
                                        P.O. Box 30736
                                        Lansing, MI 48909
                                        Telephone: (517) 373-1176
                                        raterinkd@michigan.gov
                                        (P52678)

Dated: December 17, 2009

---

[13] Claim Number 19502
[14] Claim Number 19501

## CERTIFICATE OF SERVICE (efile)

I hereby certify that on December 17, 2009, I electronically filed the above document(s) and its exhibit(s) with the Clerk of the Court using the ECF System, which will provide electronic copies to counsel of record.

A courtesy copy of the aforementioned document was placed in UPS receiving box labeled for overnight delivery to:

| | |
|---|---|
| Judge Robert D. Drain<br>U.S. Bankruptcy Court,<br>Southern District of New York<br>300 Quarropas Street<br>White Plains, NY 10601-4140 | Kayalyn A. Marafioti<br>Skadden, Arps, Slate,<br>  Meagher & Flom, LLP P<br>Four Times Square<br>New York, New York 10036 |
| John Wm. Butler, Jr.<br>John K. Lyons<br>Ron E. Meisler<br>Skadden, Arps, Slate,<br>  Meagher & Flom, LLP<br>155 North Wacker Drive<br>Chicago, Illinois 60606 | |

/s/ Dennis J. Raterink
Assistant Attorney General

Attorney for Self-Insurers' Security Fund

Labor Division
P.O. Box 30736
Lansing, MI 48909
Telephone: (517) 373-1176
raterinkd@michigan.gov
(P52678)