**Hearing Date and Time:  December 18, 2009 at 10:00 a.m. (prevailing Eastern time)**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
155 North Wacker Drive
Chicago, Illinois 60606
John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler

- and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Kayalyn A. Marafioti

Attorneys for DPH Holdings Corp., et al.,
    Reorganized Debtors

DPH Holdings Corp. Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

DPH Holdings Corp. Legal Information Website:
http://www.dphholdingsdocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| DPH HOLDINGS CORP., et al., | : | Case Number 05-44481 (RDD) |
| | : | (Jointly Administered) |
| Reorganized Debtors. | : | |

REORGANIZED DEBTORS' SUPPLEMENTAL REPLY TO THE SUPPLEMENTAL RESPONSE TO THE
REORGANIZED DEBTORS' SUPPLEMENTAL REPLY TO RESPONSES OF CERTAIN CLAIMANTS
TO DEBTORS' OBJECTIONS TO (A) PROOFS OF CLAIM NOS. 13663 AND 13730 FILED BY THE
INTERNATIONAL UNION OF OPERATING ENGINEERS (THE "IUOE"), LOCAL 101-S, (B) PROOFS
OF CLAIM NOS. 13734 AND 15071 FILED BY THE IUOE, LOCAL 18-S, (C) PROOFS OF CLAIM NOS.
13699 AND 15075 FILED BY THE IUOE, LOCAL 832-S, (D) PROOFS OF CLAIM NOS. 13863 AND
14334 FILED BY THE INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE
WORKERS AND ITS DISTRICT 10 AND TOOL AND DIE MAKERS LODGE 78, AND (E)
PROOFS OF CLAIM NOS. 13875 AND 14350 FILED BY THE INTERNATIONAL
<u>BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL 663</u>

("SECOND SUPPLEMENTAL REPLY TO UNIONS' SUPPLEMENTAL RESPONSE
REGARDING CERTAIN UNION CLAIMS")

DPH Holdings Corp. ("DPH Holdings") and certain of its affiliated reorganized debtors in the above-captioned cases (together with DPH Holdings, the "Reorganized Debtors") hereby submit the Reorganized Debtors' Supplemental Reply To The Supplemental Response To the Reorganized Debtors' Supplemental Reply To Responses Of Certain Claimants To Debtors' Objections To (A) Proofs Of Claim Nos. 13663 And 13730 Filed By The International Union Of Operating Engineers (The "IUOE"), Local 101-S, (B) Proofs Of Claim Nos. 13734 And 15071 Filed By The IUOE, Local 18-S, (C) Proofs Of Claim Nos. 13699 And 15075 Filed By The IUOE, Local 832-S, (D) Proofs Of Claim Nos. 13863 And 14334 Filed By The International Association Of Machinists And Aerospace Workers And Its District 10 And Tool And Die Makers Lodge 78, And (E) Proofs Of Claim Nos. 13875 And 14350 Filed By The International Brotherhood Of Electrical Workers, Local 663, and respectfully represent as follows:

1. In the Unions' Supplemental Response To Supplemental Reply Regarding Certain Union Claims (Docket No. 19190), the International Union of Operating Engineers, Local 101-S, Local 18-S, and Local 832-S (the "IUOE"), the International Association of Machinists and Aerospace Workers and its District 10 and Tool and Die Makers Lodge 78 (the "IAM"), and the International Brotherhood of Electrical Workers, Local 663 (the "IBEW," together with the IUOE and the IAM, the "Unions") raise arguments that have already been overruled by this Court and do not meet their burden of proof to establish a claim against the Debtors.[1]  Therefore, the Unions are not entitled to a presumption of <u>prima facie</u> validity and have failed to state a claim against the Reorganized Debtors.

---

[1] Capitalized terms used and not otherwise defined herein have the meanings ascribed to them in the Reorganized Debtors' Supplemental Reply Regarding Certain Union Claims (the "Supplemental Reply") (Docket No. 19157).

2

2.   The Unions do nothing more than retread old ground in their Supplemental Response To Supplemental Reply Regarding Certain Union Claims.  The thrust of the Unions' argument is that the Debtors breached their collective bargaining agreements with the Unions by entering into the Delphi-PBGC Settlement Agreement, which caused reduced pension benefits to Union-represented individuals.  The Unions argue that such a claim was preserved by virtue of the "vested pension benefit" carve-out of the releases agreed to by each Union on behalf of its represented active employees and retirees contained in the Unions' settlement agreements with the Debtors (collectively, the "IUOE, IBEW, and IAM Settlement Agreements")[2] and incorporated into the Modified Plan, Article XI, Section 11.6.

3.   This argument has already been specifically refuted by this Court.  The Plan Modification Order specifically authorized the Debtors to enter into the Delphi-PBGC Settlement Agreement and other effectuating documentation "without violating the Labor MOUs or other applicable collective bargaining agreements, the Union 1113/1114 Settlement Approval Orders, section 1113(f) of the Code or any other applicable law."  (See Plan Modification Order, Paragraph 60(b).)

4.   Accordingly, any Union argument to the contrary is entirely without merit and is now barred as a matter of res judicata.  It is well-settled in the Second Circuit and elsewhere that a judgment on the merits of an action will bind the parties or their privies from relitigating the same matter in a second proceeding.  If a later suit is based on a different cause of

---

[2]   The IUOE, IBEW, and IAM Settlement Agreements, are attached to, and approved by, the Order Under 11 U.S.C. §§ 363, 1113, And 1114 And Fed. R. Bankr. P. 6004 And 9019 Approving (I) Memoranda Of Understanding Among IUOE, IBEW, IAM, Delphi, And General Motors Corporation Including Modification Of IUOE, IBEW, And IAM Collective Bargaining Agreements And Retiree Welfare Benefits For Certain IUOE, IBEW, And IAM-Represented Retirees And (II) Modification Of, And Term Sheet Regarding, Retiree Welfare Benefits For Certain Non-Represented Hourly Active Employees And Retirees (the "IUOE, IBEW, And IAM 1113/1114 Settlement And Retiree Benefit Approval Order") (Docket No. 9107) entered by this Court on August 16, 2007.

action than the earlier suit, the doctrine of collateral estoppel (issue preclusion) renders the prior judgment conclusive as to those matters necessarily litigated and determined in the prior proceeding.  If there is "an identity of parties and identity of issues between the prior and subsequent suits," Chase Manhattan Bank, NA v. Celotex Corp., 56 F.3d 343, 345 (2d Cir. 1995), res judicata (claim preclusion) assures the finality of the prior judgment by precluding a party or its privies from relitigating not only those claims that actually were litigated, but also those claims that could have been litigated but were not, based on the same set of operative facts.  Id.; see also, e.g., Allen v. McCurry, 449 U.S. 90, 94-95 (1980); Jackson v. Hayakawa, 605 F.2d 1121, 1125-26 (9th Cir. 1979); Grossman v. Axelrod, 466 F. Supp. 770, 774-75 (S.D.N.Y. 1979), aff'd, 646 F.2d 768 (2d Cir. 1981).  For the purposes of claim preclusion, the definition of a "cause of action" encompasses any claim arising out of the same set of operative facts, including those matters that were not actually decided in the previous dispute. See 18 Charles Alan Wright & Arthur R. Miller, Federal Practice And Procedure § 4401-02 (2d ed. 2002).  The doctrines of issue preclusion and claim preclusion are drawn from considerations of judicial economy, a public policy that favors certainty in the legal system, and are predicated on the well-founded principle that a prevailing party should be permitted "to enjoy the benefits of its victory and avoid further costs."  Chase, 56 F.3d at 345; see also, Allen, 449 U.S. at 94; Alpert's Newspaper Delivery Inc. v. New York Times, No. CV-86-2846, 1988 WL 95146, at *3 (E.D.N.Y. Aug. 26, 1988), aff'd, 876 F.2d 266 (2d Cir. 1989).

       5.     In order to backdoor their way into holding the Debtors liable for entering into the Delphi-PBGC Settlement Agreement and causing reduced pension benefits to Union-represented individuals, the Unions attempt to advance two more discrete theories of liability.

6.  First, the Unions claim section 301 of the LMRA allows them to recover in a cause of action for breach of their collective bargaining agreements with the Debtors for failing to provide HRP benefits and on a basis that the Union represented Delphi HRP participants are being treated inequitably as compared to the GM HRP participants.

7.  This argument fails for a number of reasons. As set forth above, the Plan Modification Order permitted the Debtors to enter into the Delphi-PBGC Settlement Agreement and other effectuating documentation without violating their collective bargaining agreements with the Unions or any applicable law. The Unions have no cause of action, under section 301 of the LMRA or otherwise, for breach of their collective bargaining agreements or for any asserted inequitable treatment perceived by the Union for the entirety of its participants not yet being transferred into the GM HRP. Significantly, the Unions have already raised this inequitable treatment argument before this Court to no avail.[3] To the extent that the Unions are solely aggrieved with GM, there is no reason to keep their claims against the Debtors alive.

8.  Further, the Unions cannot make claims for lost benefits under the HRP (under ERISA or section 301 of LMRA) because PBGC "owns" these claims, i.e., they are preempted by Title IV of ERISA. <u>In re Adams Hard Facing Company</u>, 129 B.R. 662 (W.D. Okla. 1991); <u>United Steelworkers of America v. United Engineering, Inc.</u>, 52 F.3d 1386 (6th Cir. 1995); <u>See</u> also <u>In re Lineal Group</u>, 226 B.R. 608 (M.D. Tenn. 1998) (state law claims for lost benefits after plan termination are preempted).

---

[3] For instance, the Plan Modification Order overruled the Unions' arguments of inequitable treatment at the July 29, 2009 Plan Modification hearing (see Transcript Regarding Hearing Held on July 29, 2009 at 172 (Docket No. 18829)).

5

9. Second, the Unions' claim that they are entitled to recover benefits lost as a result of Delphi's alleged breach of fiduciary duty under section 502(a)(3) of ERISA by failing properly to fund the HRP. This argument also fails for multiple reasons.

10. Even if such a breach of fiduciary duty claim was legally cognizable – and it is not – it would have been waived pursuant to the express waiver language of the IUOE, IBEW, and IAM Settlement Agreements, which was specifically incorporated into the Modified Plan, Article XI, Section 11.6. The waiver of the Unions' claims pursuant to releases entered into in connection with IUOE, IBEW, and IAM Settlement Agreements is more fully described in the Thirty-Fourth Omnibus Claims Objection and the Supplemental Reply, but broadly excludes all claims by employees and former employers of the Unions with the exception of a few limited categories. Additionally, the Debtors note that a significant number of Union represesteds have already signed individual releases of claims in connection with their attrition option selections. For the reasons described above, the "vested pension benefits" exception does not save the Unions' Proofs of Claim.[4]

11. In accordance with the IUOE, IBEW, And IAM 1113/1114 Settlement And Retiree Benefit Approval Order, each Union's Proofs of Claim which is the subject of this Sufficiency Hearing was specifically referred to and specifically "deemed waived and withdrawn with prejudice" as of the effective date of the Modified Plan. (See IUOE, IBEW, And IAM 1113/1114 Settlement And Retiree Benefit Approval Order, decretal paragraphs 10, 12, 14.)

---

[4] The Unions seem to concede that any outstanding grievance claims should be expunged if the order expunging such grievance claims requires their resolution in the ordinary course of business. (See Unions' Supplemental Response To Supplemental Reply Regarding Certain Union Claims, Paragraph 17.) However, since the Unions have not pointed to any particular outstanding grievances, it is the Debtors' position that such limitation in an order expunging the Unions' grievances is not necessary.

6

12.     Under Southern District of New York case law, the Unions have no standing to bring claim under section 502 of ERISA for fiduciary breach. Unions are not among the enumerated entities with standing, i.e., participants, beneficiaries, fiduciaries, Secretary of Labor. Toussaint v. JJ Weiser & Co., 2005 WL 356834, at *6 (S.D.N.Y. 2005); Local 100, Transport Workers Union, AFL-CIO v. Rosen, 2007 WL 2042511, at *3 (S.D.N.Y. 2007); District 65, UAW v. Harper & Row Publishers Inc., 576 F. Supp. 1468, 1476 (S.D.N.Y. 1983) ("[U]nion has no standing under the clear language of ERISA ... to assert claims [because union] is not a participant, beneficiary or fiduciary."); See Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for S. Cal., 463 U.S. 1, 27 (1983) ("ERISA carefully enumerates the parties entitled to seek relief under § 502; it does not provide anyone other than participants, beneficiaries, or fiduciaries with an express cause of action for a declaratory judgment on the issues in this case. A suit for similar relief by some other party does not 'arise under' that provision."); McCabe v. Trombley, 867 F. Supp. 120, 125 (N.D.N.Y. 1994) ("Standing for employee organizations is not mentioned in the statute, and this court cannot substitute its will for that of Congress.").[5]

13.     In summary, even if the Unions' Proofs of Claim were not already released by the IUOE, IBEW, and IAM Settlement Agreements as incorporated into the Modified Plan, and even if such claims were not already "deemed waived and withdrawn with prejudice," the

---

[5] Even if the Unions had standing to bring a fiduciary breach claim under section 502 of ERISA, the claim additionally fails because funding a pension plan is not a fiduciary act that is subject to ERISA's fiduciary rules. As noted by the Unions, an entity is a fiduciary only to the extent it exercises discretionary authority or control over management of the plan or authority or control over management or disposition of plan assets or has any discretionary authority or responsibility in administering the plan. ERISA § 3(21), 29 U.S.C. § 1002(21). See, e.g. Hughes Aircraft Company v. Jacobson, 525 U.S. 432, 444 (1999) (distinguishing between fiduciary and non-fiduciary or "settlor" acts). In this regard, "a corporate employer does not have a fiduciary obligation to make trust fund contributions, see 29 U.S.C. § 1002(21)(A) (defining 'fiduciary')." Sasso v. Cervoni (2d Cir. 1993). Accordingly, the Unions' fiduciary breach claim against Delphi for failing to contribute to the HRP must fail.

7

Union Claims for lost pension benefits under the HRP fail for the additional reasons set forth above.

                14.       None of the IUOE, IBEW, and IAM, in their Proofs of Claim or in their responses to the Debtors' objection to their Proofs of Claim, have proved any set of facts that support a right to payment from the Reorganized Debtors. Accordingly, the Reorganized Debtors assert that (a) those claimants have not met their burden of proof to establish a claim against the Debtors, (b) the Union Claims are not entitled to a presumption of <u>prima facie</u> validity pursuant to Bankruptcy Rule 3001(f), and (c) the Union Claims fail to state a claim against the Reorganized Debtors under Bankruptcy Rule 7012. Because the IUOE, IBEW, and IAM cannot provide facts or law supporting their claims, each of the Unions' Claims should be disallowed and expunged in its entirety.

WHEREFORE the Reorganized Debtors respectfully request this Court enter an order (a) sustaining the objections with respect to the Union Claims, (b) disallowing and expunging each Union Claim in its entirety, and (c) granting such further and other relief this Court deems just and proper.

Dated:   New York, New York
         December 17, 2009

SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP

By:   /s/ John Wm. Butler, Jr.
      John Wm. Butler, Jr.
      John K. Lyons
      Ron E. Meisler
155 North Wacker Drive
Chicago, Illinois 60606

   - and -

By:   /s/ Kayalyn A. Marafioti
      Kayalyn A. Marafioti
Four Times Square
New York, New York 10036

Attorneys for DPH Holdings Corp., et al.,
   Reorganized Debtors