**Hearing Date and Time:  TBD**
**Objection Deadline:  TBD**

Bonnie Steingart
Jennifer Rodburg
Richard Slivinski
FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP
One New York Plaza
New York, New York 10004
Telephone:  212.859.8000
Facsimile:  212.859.4000

*Counsel for the Official Committee of Equity Security Holders*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| In re: | Chapter 11 |
| Delphi Corporation, <u>et al.</u>, | Case No.  05-44481 (RDD) |
| | (Jointly Administered) |
| Debtors. | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**COMBINED SIXTH INTERIM AND FINAL APPLICATION OF
FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP, AS
COUNSEL FOR THE OFFICIAL COMMITTEE OF EQUITY
SECURITY HOLDERS, FOR COMPENSATION FOR
PROFESSIONAL SERVICES RENDERED AND
REIMBURSEMENT OF EXPENSES INCURRED AND POSTED
DURING THE PERIOD FROM
MAY 8, 2006 THROUGH JANUARY 25, 2008**

TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:

Fried, Frank, Harris, Shriver & Jacobson LLP ("Fried Frank"), as counsel for the

Official Committee of Equity Security Holders (the "Equity Committee") of Delphi Corporation

("Delphi," and together with the other above-captioned debtors, the "Debtors") in the above-

captioned cases (the "Chapter 11 Cases") under chapter 11 of title 11 of the United States Code

(the "Bankruptcy Code"), hereby submits this combined sixth interim and final fee application (the "Final Fee Application") for (i) allowance of compensation for the reasonable and necessary legal services rendered by Fried Frank on behalf of the Equity Committee and reimbursement of actual and necessary expenses incurred and posted for the period from October 1, 2007 through and including January 25, 2008 (the "Sixth Interim Period"),[1] and (ii) allowance, on a final basis, of compensation in the amount of $11,066,482.50[2] for the reasonable and necessary legal services rendered by Fried Frank on behalf of the Equity Committee (the "Fees") and reimbursement in the amount of $509,892.97[3] for the actual and necessary expenses incurred and posted (the "Expenses") for the period from May 8, 2006 through and including January 25, 2008 (the "Compensation Period").  Fried Frank submits this Final Fee Application pursuant to: (i) sections 330 and 331 of the Bankruptcy Code and in accordance with Article 10.3 of the Debtors' First Amended Joint Plan of Reorganization (the "First Amended Plan") (Docket No. 11386), which was confirmed by an order of this Court dated January 25, 2008 (the "Confirmation Order") (Docket No. 12359),[4] (ii) the Order Under 11 U.S.C. § 331 Establishing Procedures For Interim Compensation and Reimbursement of Expenses of Professionals, entered November 4, 2005 (Docket No. 869) (as supplemented by Docket Nos. 2747, 2986, 3630, 4545,

---

[1]     Fried Frank's Sixth Interim Period corresponds to the Debtors' seventh interim fee period because Fried Frank was retained by the Equity Committee after the Debtors' first interim fee period.

[2]     As discussed below and set forth in the attached exhibits, Fried Frank's fees totaled $11,181,377.50 for the Compensation Period.  Fried Frank agreed to reduce its fees by a total of $114,895.00 during the interim compensation process.  As such, Fried Frank is hereby requesting final allowance of $11,066,482.20 for reasonable and necessary legal services.

[3]     As discussed below and set forth in the attached exhibits, Fried Frank's expenses totaled $528,235.97 for the Compensation Period.  Fried Frank agreed to reduce its expenses by a total of $18,343.00 during the interim compensation process.  As such, Fried Frank is hereby requesting final allowance of $509,892.97 for reasonable and necessary expenses.

[4]     On June 16, 2009, the Debtors filed a motion for, among other things, approval of certain modifications to the First Amended Plan and Confirmation Order (the "Modified Plan") (Docket No. 17032).  On July 30, 2009, the court entered an order approving the Modified Plan (the "Plan Modification Order") (Docket No. 18707).  Pursuant to the Plan Modification Order, the Confirmation Order has not been revoked, withdrawn, or vacated and remains in full force and effect, except as modified by the Plan Modification Order.  Article 10.3 of the Modified Plan was not altered by entry of the Plan Modification Order.

5310, 6145, 12367 and 12884, the "Interim Compensation Order"), (iii) the Amended Guidelines

for Fees and Disbursements of Professionals in the Southern District of New York Bankruptcy

Cases, adopted by this Court on April 19, 1995 (the "Amended Guidelines") and (iv) the United

States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of

Expenses filed under 11 U.S.C. § 330, adopted on January 30, 1996 (the "UST Guidelines").  In

support of this Final Fee Application, Fried Frank respectfully states as follows:

PRELIMINARY STATEMENT

1.      On April 28, 2006, the United States Trustee appointed the Equity Committee in

the Chapter 11 Cases.  The Equity Committee retained Fried Frank on May 8, 2006, subject to

Bankruptcy Court approval, which was subsequently obtained on June 19, 2006.  On April 23,

2009, the Court directed the disbandment of the Equity Committee, at which time the Equity

Committee's role in the case ceased and Fried Frank was relieved of its role and responsibility in

the Chapter 11 Cases on behalf of the Equity Committee.

2.      During the course of Fried Frank's representation of the Equity Committee

throughout the Chapter 11 Cases, Fried Frank devoted considerable time, effort and resources to

maximizing the value of the Debtors' estates and to protecting and advancing the interests of

Delphi's equity security holders.  As discussed in further detail below, Fried Frank's

representation of the Equity Committee required that Fried Frank advise and assist the Equity

Committee with respect to numerous issues and fluctuating business conditions during the

Compensation Period.  Specifically, during its retention, Fried Frank devoted a significant

amount of professional effort to reviewing, analyzing and advising the Equity Committee with

respect to, among other things, (i) the Debtors' performance of its duties and powers under the

Bankruptcy Code and the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (ii)

the Debtors' negotiations and settlement agreements with their labor unions and General Motors

3

Corp. ("GM"); (iii) the Debtors' motion for an order under 11 U.S.C. §§ 1113 and 1114

authorizing rejection of collective bargaining agreements and authorizing modification of retiree

welfare benefits; (iv) the Equity Committee's evaluation of various claims by and against GM

and responding to the Official Committee of Unsecured Creditors' (the "Creditors' Committee")

motion for standing to bring claims against GM on behalf of the Debtors; (v) the Equity

Committee's evaluation and negotiation of various framework restructuring proposals presented

by the Debtors; (vi) the Equity Committee's evaluation of various claims by and against GM and

in connection with a Global Settlement Agreement and the Master Restructuring Agreement with

GM (the "GM Settlement Agreement"); (vii) the Debtors' proposals and agreements related to

potential plan sponsors and their investments, including the Equity Purchase and Commitment

Agreement (the "EPCA"); (viii) the Debtors' chapter 11 plan of reorganization (the "Plan") and

amended versions and modifications thereof and related disclosure statement (the "Disclosure

Statement"); (ix) an attempted consensual resolution of the Chapter 11 Cases prior to entry of the

Confirmation Order; and (x) the numerous hearings that occurred during the Chapter 11 Cases,

including, among others, contested hearings on the EPCA and the Plan.

3.      The Debtors' equity security holders did not receive a distribution from the

Debtors' estates as a result of the severe downturn in the economy and in the automotive industry

in particular.  However, prior to the withdrawal of certain investors that had committed to the

Plan confirmed on January 25, 2008, the Plan had provided for a recovery to equity as a result of

the Equity Committee's efforts.  Moreover, until its disbandment, the Equity Committee

continued to advocate for a recovery for its constituents and protect their interests.  In that

regard, throughout the Compensation Period, the Equity Committee, and Fried Frank acting on

the Equity Committee's behalf, made significant contributions to the Debtors' restructuring and

served an important role in facilitating the Debtors' bankruptcy and reorganization process.  The

4

Equity Committee vigorously represented the interests of Delphi's Equity Holders in the Chapter 11 Cases for over two and a half years.

4.    During the Compensation Period, 19,724.40 recorded hours were expended by Fried Frank's partners, counsel, associates and paraprofessionals in the rendition of Fried Frank's professional services.  Fried Frank's professional and ancillary services were rendered in a highly efficient manner, by attorneys with high levels of skill in the areas for which they rendered services.  This experienced group of attorneys made every effort to ensure that the Equity Committee functioned in as efficient and expeditious a manner as possible.  In light of the foregoing and as set forth in further detail herein, Fried Frank respectfully submits that it is reasonable and appropriate that this Court approve Fried Frank's request for final allowance of $11,576,375.47, consisting of $11,066,482.50 in Fees and $509,892.97 for reimbursement of actual and necessary Expenses during the Compensation Period.  These amounts include compensation for Fried Frank's Sixth Interim Period in the amount of $2,918,899.00 in fees and $138,683.55 for reimbursement of actual and necessary expenses.  Of the total compensation sought, $583,779.80 remains unpaid, which represents the 20% holdback with respect to the fees requested in the monthly statements during Fried Frank's Sixth Interim Period.

BACKGROUND

5.    On October 8 and 14, 2005, Delphi and certain of its U.S. subsidiaries and affiliates filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York.  Pursuant to sections 1107 and 1108 of the Bankruptcy Code, the Debtors operated their businesses and managed their properties as debtors-in-possession.  This Court entered orders directing the joint administration of the Chapter 11 Cases.

5

6.       On October 17, 2005, the Office of the United States Trustee (the "UST")
appointed the Creditors' Committee.  No trustee or examiner was appointed in the Chapter 11
Cases.

7.       On March 30, 2006, the Court entered an order (the "Equity Committee Order")
directing the UST to appoint a committee of equity security holders pursuant to section 1102 of
the Bankruptcy Code.

8.       On April 28, 2006, the UST appointed the Equity Committee.  On May 8, 2006,
the Equity Committee determined, subject to Court approval, to retain Fried Frank as its counsel.
The retention of Fried Frank nunc pro tunc to May 8, 2006 was approved by this Court by order
dated June 19, 2006 (the "Retention Order").[5]

9.       On May 5, 2006, the Court entered an order establishing a Joint Fee Review
Committee, among other things.

10.      On January 25, 2008 (the "Confirmation Date"), this Court entered the
Confirmation Order.  The Confirmation Order terminated the requirement that professionals
comply with sections 327 through 331 of the Bankruptcy Code in seeking compensation for
services rendered after the Confirmation Date.  Thereafter, the Debtors paid Fried Frank's fees
and expenses incurred after the Confirmation Date in the ordinary course of business.

11.      Pursuant to the Debtors' sixth interim fee application order, entered February 27,
2008 (Docket No. 12884), the requirement for the filing of an interim fee application for Fried
Frank's Sixth Interim Period (October 1, 2007 through and including January 25, 2008) was
dispensed with and the Court directed that fee applications for that period be included in and
filed with a final fee application no later than the last day of the second full month after the

---

[5]        A copy of the Retention Order is attached hereto as **Exhibit A**.

effective date of the First Amended Joint Plan of Reorganization of Delphi or May 31, 2008,

whichever was later.

12.    On April 23, 2009, this Court entered an order directing the UST to disband the

Equity Committee, and the Equity Committee was disbanded on that date.

13.    On October 6, 2009, the Debtors' First Amended Plan (as modified) became

effective.

<u>JURISDICTION AND VENUE</u>

14.    This Court has jurisdiction over the Final Fee Application pursuant to 28 U.S.C.

§ 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper before this

Court pursuant to 28 U.S.C. § 1409.

<u>PREVIOUS REQUESTS AND COMPENSATION RECEIVED</u>

15.    On July 31, 2006, Fried Frank filed its first interim fee application for the period

from May 8, 2006 through May 31, 2006 (the "First Interim Fee Application").  The First

Interim Fee Application sought the allowance of (i) fees in the amount of $598,265.00 and (ii)

expenses in the amount of $5,451.63.  After discussions with the Joint Fee Review Committee,

Fried Frank agreed to reduce its fees sought in the First Interim Fee Application by $10,700.00.

In accordance with the omnibus order granting second interim applications for the February 1,

2006 through May 31, 2006 period, Fried Frank was awarded $587,565.00 in professional fees

and $5,451.63 in expenses in respect of its First Interim Fee Application.  Fried Frank has

received payment of these fees and expenses.

16.    On November 30, 2006, Fried Frank filed its second interim fee application for

the period from June 1, 2006 through September 30, 2006 (the "Second Interim Fee

Application").  The Second Interim Fee Application sought the allowance of (i) fees in the

amount of $2,673,791.00 and (ii) expenses in the amount of $162,011.61.  After discussions with

7

the Joint Fee Review Committee, Fried Frank agreed to reduce its fees sought in the Second

Interim Fee Application by $40,000.00.  In accordance with an omnibus order entered by the

Court on February 22, 2007 approving payment of professional fees and expenses for the period

from June 1, 2006 through September 30, 2006 period, Fried Frank was awarded $2,633,791.00

in professional fees and $162,011.61 in expenses in respect of its Second Interim Fee

Application.  Fried Frank has received payment of these fees and expenses.

17.    On March 29, 2007, Fried Frank filed its third interim fee application for the

period from October 1, 2006 through January 31, 2007 (the "Third Interim Fee Application").

The Third Interim Fee Application sought the allowance of (i) fees in the amount of

$2,701,363.00 and (ii) expenses in the amount of $133,271.20.  After discussions with the Joint

Fee Review Committee, Fried Frank agreed to reduce its fees sought in the Third Interim Fee

Application by $23,400.00 and its expenses by $15,400.00.  In accordance with an omnibus

order entered by the Court on June 27, 2007 approving payment of professional fees and

expenses for the period from October 1, 2006 through January 31, 2007 period, Fried Frank was

awarded $2,677,963.00 in professional fees and $117,871.20 in expenses in respect of its Third

Fee Application.  Fried Frank has received payment of these fees and expenses.

18.    On July 31, 2007, Fried Frank filed its fourth interim fee application for the

period from February 1, 2007 through May 31, 2007 (the "Fourth Interim Fee Application").

The Fourth Interim Fee Application sought the allowance of (i) fees in the amount of

$1,126,528.00 and (ii) expenses in the amount of $55,322.84.  After discussions with the Joint

Fee Review Committee, Fried Frank agreed to reduce its fees sought in the Fourth Interim Fee

Application by $23,000.00 and its expenses by $1,800.00.  In accordance with an omnibus

order entered by the Court on October 29, 2007 approving payment of professional fees and

expenses for the period from February 1, 2007 through May 31, 2007 period, Fried Frank was awarded

8

$1,103,528.00 in professional fees and $53,522.84 in expenses in respect of its Fourth Interim

Fee Application.  Fried Frank has received payment of these fees and expenses.

19.    On November 30, 2007, Fried Frank filed its fifth interim fee application for the

period from June 1, 2007 through September 30, 2007 (the "Fifth Interim Fee Application").

The Fifth Interim Fee Application sought the allowance of (i) fees in the amount of

$1,162,531.50 and (ii) expenses in the amount of $33,495.14.  After discussions with the Joint

Fee Review Committee, Fried Frank agreed to reduce its fees sought in the Fifth Interim Fee

Application by $17,795.00 and its expenses by $1,143.00.  In accordance with an omnibus order

entered by the Court on February 25, 2008 approving payment of professional fees and expenses

for the period from June 1, 2007 through September 30, 2007 period, Fried Frank was awarded

$1,144,736.50 in professional fees and $32,352.14 in expenses in respect of its Fifth Interim

Fee Application.  Fried Frank has received payment of these fees and expenses.

20.    During Fried Frank's Sixth Interim Period, which corresponds to the Debtors'

seventh interim fee period, Fried Frank submitted monthly fee statements in accordance with the

Interim Compensation Order for the periods October 1, 2007 through October 31, 2007,

November 1, 2007 through November 30, 2007, December 1, 2007 through December 31, 2007,

and January 1, 2007 through January 25, 2008.  To date, Fried Frank has received payment equal

to 80% of fees and 100% of expenses previously requested for Fried Frank's Sixth Interim

Period.

## COMPLIANCE WITH APPLICABLE ORDERS AND GUIDELINES

21.    This Final Fee Application has been prepared in compliance with the Interim

Compensation Order, the Amended Guidelines, and the UST Guidelines.  Pursuant to the

Amended Guidelines, a certification regarding compliance is attached hereto as **Exhibit B**.

## SUMMARY OF APPLICATION

22.     During its retention in the Chapter 11 Cases, Fried Frank acted as counsel to the

Equity Committee and advised the Equity Committee with respect to the numerous issues that

confronted the Debtors and the Debtors' equity security holders, consistent with the Bankruptcy

Code and the Equity Committee Order.  As more fully described below, the professional services

rendered by Fried Frank included, among others:

> (i)     assisting, advising and representing the Equity Committee in the
> performance of its duties and powers under the Bankruptcy Code and
> Bankruptcy Rules, and assisting the Equity Committee in becoming fully
> versed in issues of the Chapter 11 Cases;
>
> (ii)     assisting, advising and representing the Equity Committee in reviewing
> and determining the Equity Committee's rights and obligations;
>
> (iii)     assisting, advising and representing the Equity Committee in its meetings
> with the Debtors, the Creditors' Committee, equity holders, GM and
> potential investors;
>
> (iv)     assisting, advising and representing the Equity Committee in the various
> labor issues involving the Debtors, their unions, and their workforce,
> including the Debtors' motion authorizing rejection of collective
> bargaining agreements and authorizing modification of retiree welfare
> benefits (the "1113/1114 Motion"), the memoranda of understanding
> among Delphi, GM and Delphi's labor unions (the "Memoranda of
> Understanding") and the Debtors' attrition programs;
>
> (v)     assisting, advising and representing the Equity Committee in its evaluation
> of various claims by and against GM, including reviewing and responding
> to the Creditors' Committee's motion for standing to bring claims against
> GM on behalf of the Debtors and in connection with the Global Settlement
> Agreement and the Master Restructuring Agreement with GM (the "GM
> Settlement Agreement");
>
> (vi)     assisting, advising and representing the Equity Committee in its evaluation
> and negotiation of various framework restructuring proposals and
> numerous versions of such proposals put forth by certain potential plan
> investors;
>
> (vii)     assisting, advising and representing the Equity Committee in its evaluation
> and negotiation of the various term sheets, restructuring proposals and
> drafts developed by various parties-in-interest in the Chapter 11 Cases,

including agreements with plan investors, and in reviewing, responding and representing the Equity Committee with respect to the Debtors' motions for approval of the EPCA and amendments to the EPCA;

(viii)    assisting, advising and representing the Equity Committee with respect to the Debtors' Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-in-Possession filed with the Court on September 7, 2007 (the "September Plan") and the disclosure statement with respect to the September Plan (the "September Disclosure Statement"), and amendments and revisions thereto and in reviewing and responding to the Debtors' motion for an order approving the September Disclosure Statement (the "September Disclosure Statement Motion") and amendments and revisions thereto;

(ix)    assisting, advising and representing the Equity Committee in reviewing and negotiating the terms of the First Amended Plan and the First Amended Disclosure Statement and in reviewing the Debtors' motion for an order approving the First Amended Disclosure Statement (the "First Amended Disclosure Statement Approval Motion");

(x)    assisting, advising and representing the Equity Committee in connection with seeking a consensual resolution of the Chapter 11 Cases prior to entry of the Confirmation Order;

23.    During the Compensation Period, partners, counsel and associates of Fried Frank devoted many hours to the Chapter 11 Cases and diligently addressed the issues and concerns of the Equity Committee in an effort to assist with the reorganization of the Debtors' business.

24.    By this Final Fee Application, Fried Frank requests payment in the amount of $583,779.80, which amount corresponds to the 20% holdback for the actual and necessary professional services rendered during the Sixth Interim Period.  In addition, by this Final Fee Application, Fried Frank requests final approval and allowance of fees for professional services rendered on behalf of the Equity Committee during the Chapter 11 Cases in the aggregate amount of $11,066,482.50, most of which has been approved by this Court on an interim basis.

25.    During the Compensation Period, the partners, counsel, associates and paraprofessionals of Fried Frank devoted 19,724.40 hours to the rendition of professional services on behalf of the Equity Committee.  A schedule setting forth the number of hours

11

expended by each of the partners, counsel, associates and paraprofessionals of Fried Frank

accompanies this Final Fee Application as **Exhibit C**.

26.    In addition, Fried Frank is requesting final approval and allowance of

reimbursement of disbursements in the aggregate amount of $509,892.97 for expenses incurred

and posted during the Compensation Period, which includes reimbursement of the actual and

necessary expenses incurred or posted during the Sixth Interim Period in the amount of

$138,683.55.  With respect to the disbursements incurred and posted, Fried Frank has eliminated

a number of disbursements that are non-compensable.  A schedule setting forth the categories of

expenses for which Fried Frank is seeking reimbursement and the total amount for each expense

category during the Compensation Period is attached hereto as **Exhibit D**.

27.    Pursuant to section II.D of the UST Guidelines, a schedule setting forth a

description of the project categories utilized by Fried Frank in the Chapter 11 Cases, the number

of hours expended by the partners, counsel, associates, and paraprofessionals of Fried Frank by

project category, and the aggregate fees associated with each project category is attached hereto

as **Exhibit E.**

28.    No agreement or understanding exists between Fried Frank and any other entity

for the sharing of compensation to be received for services rendered in or in connection with the

Chapter 11 Cases.

<u>REASONABLE AND NECESSARY SERVICES RENDERED BY FRIED FRANK</u>

29.    Set forth below is a description of the services rendered during the Compensation

Period.  The attorneys and paraprofessionals of Fried Frank maintained daily detailed records of

their time concurrently with the rendition of professional services.  To the fullest extent possible,

the details of each and every conference, telephone conversation, negotiating session, letter,

memorandum, factual investigation, drafting activity and research project that occupied the time

12

of a Fried Frank professional were set forth in such time records.  Accompanying this Final Fee

Application as **Exhibit F** are compilations of the contemporaneous daily time entries recorded

by Fried Frank's attorneys and paraprofessionals during the Compensation Period.  Those entries

describe in detail the services rendered by each attorney and paraprofessional, as corrected to

reflect errors that were found in Fried Frank's review.  The following is intended to serve as a

summary description of the principal professional services Fried Frank rendered, and to highlight

the benefits that were thereby conferred upon the Equity Committee.

General Committee Matters

30.    Fried Frank rendered a total of 3,422.40 hours and $2,046,636.00 in services

falling within the category of "General Committee Matters."  This category includes time spent

participating in various meetings and telephone conferences with the Debtors, the Creditors'

Committee and other key parties in the Chapter 11 Cases.  In addition, Fried Frank spent

numerous hours (i) researching and discussing general issues related to the Debtors' restructuring

and (ii) preparing and revising memoranda necessary to understand those issues that do not fall

into the more specific categories set forth in this Final Fee Application.

31.    This category includes time spent related to the general management of the Equity

Committee and its members including but not limited to time spent (i) getting up to speed with

regard to all of the relevant issues in the Chapter 11 Cases upon being retained by the Equity

Committee, (ii) working to obtain access to, and then to review and analyze, certain documents

provided by the Debtors to the Securities and Exchange Commission (the "SEC") in connection

with the SEC's investigation of the Debtors' accounting practices, (iii) reviewing and analyzing

the multi-district litigations pending against Delphi, (iv) reviewing, analyzing and commenting

on correspondence in connection with proposals from potential equity investors, (v) performing

research under the Bankruptcy Code and drafting correspondence, and (vi) working with the

13

Debtors to negotiate the terms under which the Debtors would consent to the Equity

Committee's retention of a financial advisor.

Plan and Disclosure Statement

32.    Fried Frank rendered a total of 1726.50 hours and $1,060,738.00 in services

falling within the category of "Plan and Disclosure Statement."  This category includes time

Fried Frank attorneys spent reviewing, analyzing and commenting on drafts of documents related

to the Debtors' various plans of reorganization and disclosure statements, including related

motions and exhibits.

33.    The Debtors circulated multiple drafts of chapter 11 plans and disclosure

statements, each of which substantially impacted the rights and recovery afforded Delphi's

equity security holders.  Accordingly, Fried Frank assisted and advised the Equity Committee in

plan negotiations and analyses to prevent the unnecessary loss or reduction to Delphi's equity

holders' recovery.  Specifically, the Equity Committee proposed variations of a chapter 11 plan

that provided Delphi's equity security holders with a combination of warrants, rights to

participate in an equity offering to help fund the Plan and primary equity attributable to some

portion of the proposed distribution to be received by the Debtors' senior management under the

Plan.  Fried Frank also spent substantial time reviewing and analyzing various drafts of the

proposed Plan and proposed Disclosure Statement and preparing for hearings on the proposed

Disclosure Statement, including drafting and filing an objection related thereto.  Fried Frank also

addressed and analyzed issues with respect to the solicitation package and September Disclosure

Statement Motion, composed a letter to existing shareholders to be included in solicitation

materials, and reviewed final documentation for the issuance of securities and warrants under the

September Plan.  Fried Frank also spent significant amounts of time reviewing and commenting

on various drafts and had numerous telephone calls regarding the Debtors' revised Plan and

Disclosure Statement as well as related filings.

34.    The Debtors, GM, the Creditors' Committee and the Equity Committee ultimately

negotiated a consensual plan of reorganization that obviated the need for a contested

confirmation hearing involving the statutory committees or GM and resulted in equity security

holders receiving (i) a primary distribution of shares of the common stock of reorganized Delphi,

(ii) warrants to purchase shares of the common stock of reorganized Delphi, and (iii) par value

rights to purchase shares of the common stock of reorganized Delphi.  In addition, with respect

to the filing of the First Amended Plan, this category also includes time reviewing and

negotiating final documentation drafted for the anticipated issuance of warrants and other

securities under the First Amended Plan.  While equity ultimately did not receive a recovery, this

was beyond the control of the Equity Committee, which had negotiated for and received a

meaningful recovery for equity prior to the disintegration of the capital markets and the

withdrawal of certain investors.

Meetings and Communications with Equity Holders

35.    Fried Frank rendered a total of 2,217.90 hours and $1,513,227.00 in services

falling within the category of "Meetings and Communications with Equity Holders."  This

category includes time Fried Frank spent preparing for and attending meetings with the Equity

Committee, including the Equity Committee regularly-scheduled weekly teleconferences, and

related communications with the Equity Committee.  The weekly teleconferences served to keep

the Equity Committee updated on developments and issues facing the Debtors and equity holders

during the Compensation Period.  This category also includes time Fried Frank spent attending

monthly joint statutory committee meetings with members of the Equity Committee hosted by

the Debtors and time spent communicating with equity holders who are not members of the
Equity Committee.

Hearings

36.    Fried Frank rendered a total of 496.60 hours and $312,998.00 in services falling
within the category of "Hearings."  This category includes time Fried Frank attorneys spent
attending and participating in hearings, chambers conferences, claims hearings and status
conferences held before this Court during the Compensation Period.  Significant hearings
attended included hearings on, among other things, (i) the Debtors' motions to reject certain
executory contracts with GM (ii) the 1113/1114 Motion; (ii) the Debtors' motions to approve the
Memoranda of Understanding and settlement agreements with respect to certain of the Debtors'
labor unions; (iii) the Debtors' motions to approve the GM Settlement Agreements; (iv) the
EPCA and subsequent amendments thereto; (v) the Debtors' September Disclosure Statement
Motion and First Amended Disclosure Statement Motion; and (vi) the Debtors' motion for
confirmation of the First Amended Plan.

Miscellaneous Litigation and Motions

37.    Fried Frank rendered a total of 4,817.80 hours and $2,659,479.50 in services
falling within the category of "Miscellaneous Litigation and Motions."  This category includes
time spent by Fried Frank reviewing and analyzing various pleadings filed during the
Compensation Period and not referenced above or falling within another category and, when
necessary, analyzing, researching and preparing memoranda and responsive pleadings and
preparing for hearings and status conferences.  This category also includes time spent negotiating
with the Debtors or other parties in interest and litigating issues related to the Equity
Committee's efforts to address various motions, including related discovery.

16

38.      In particular, Fried Frank professionals reviewed and filed a response to various framework agreements among parties in interest regarding the Debtors' restructuring.  The Equity Committee's efforts resulted in improved terms in the framework agreements that benefited the estate.  In addition, this category includes time spent by Fried Frank reviewing and drafting pleadings regarding the Debtors' multi-district litigation, the SEC's investigation of the Debtors' accounting practices and the Debtors' program to retain key employees.  Fried Frank also devoted a significant amount of resources and attention to analyzing, researching, drafting and filing objections to various iterations of the EPCA amendments and participating in related discovery.  This category also includes time spent by Fried Frank professionals reviewing, analyzing and addressing the refinancing of the debtor-in-possession financing and protocols regarding asset sales.

Tax

39.      Fried Frank rendered a total of 90.70 hours and $58,236.50 in services falling within the category of "Tax."  Fried Frank devoted time to reviewing, analyzing and commenting on tax issues in connection with the various iterations of the Debtors' Plan and Disclosure Statement.  This category included addressing issues related to net operating losses, and the tax structure of various investment proposals.

Pension

40.      Fried Frank rendered a total of 79.10 hours and $32,475.00 in services falling within the category of "Pension."  This category includes time Fried Frank spent addressing issues relating to the Debtors' pension plans and pension liabilities in the Chapter 11 Cases.  This includes time spent researching, reviewing and analyzing the impact of the framework agreements on the Debtors' pension liabilities and assessing excise tax impositions in bankruptcy and pension funding requirements.

17

Collective Bargaining Agreements

41.    Fried Frank rendered a total of 1.90 hours and $798.00 in services falling within the category of "Collective Bargaining Agreements."  This category includes time Fried Frank spent reviewing and analyzing the various agreements between the Debtors and their unions and agreements between the Debtors and GM relating to the Debtors' labor force.

1113/1114 Issues

42.    Fried Frank rendered a total of 657.50 hours and $291,389.00 in services falling within the category of "1113/1114 Issues."  This category includes time Fried Frank spent analyzing, researching, and addressing issues related to sections 1113 and 1114 of the Bankruptcy Code and the 1113/1114 Motion, including communicating with the Equity Committee with respect to the issues raised and reviewing the declarations submitted by various witnesses and the deposition testimony of those witnesses.  This category also includes time spent preparing to participate in proceedings regarding the Debtors' motion for approval of the 1113/1114 Motion and time spent reviewing and analyzing documents in connection with the settlement agreements between the Debtors and various labor unions.

Other Labor Matters

43.    Fried Frank rendered a total of 351.00 hours and $179,177.00 in services falling within the category of "Other Labor Matters."  This category includes time Fried Frank spent reviewing labor issues that did not fall into either the category of "Collective Bargaining Agreements" or the category of  "1113/1114 Issues," including reviewing and analyzing the Memoranda of Understanding and the agreements between the Debtors and GM relating to the Debtors' labor force.  In addition, Fried Frank prepared and revised memoranda relating to various OPEB issues and their costs and benefits.  Fried Frank also reviewed and analyzed the Debtors' attrition programs and responded to questions posed by various members of the Equity

18

Committee regarding these programs.  Fried Frank also drafted and filed a limited objection to
the Debtors' supplemental attrition program.

Relationship with Primary Customer

44.    Fried Frank rendered a total of 3,086.80 hours and $1,419,735.50 in services
falling within the category of "Relationship with Primary Customer."  This category includes
time Fried Frank spent reviewing and analyzing the relationship between the Debtors and GM,
including potential claims GM may have asserted against the Debtors in the Chapter 11 Cases
and the causes of action and defenses the Debtors had against GM.  In addition, in response to a
request from counsel to the Debtors, Fried Frank devoted a substantial amount of time during the
Compensation Period preparing a letter to counsel to the Debtors discussing the claims, causes of
actions, and defenses the Equity Committee believed existed against GM and the basis for such
claims, causes of action, and defenses.  Fried Frank reviewed and analyzed the Creditors
Committee's motion for standing to pursue the Debtors' claims against GM on the Debtors'
behalf and spent a significant amount of time during the Compensation Period drafting an
objection and supplemental objection to that motion.  Fried Frank also spent time reviewing and
summarizing the various documents produced to the Equity Committee by the Debtors and by
GM in connection with the Equity Committee's investigation and analysis of potential claims,
causes of action, and defenses against GM.

Fee Applications and Retention

45.    Fried Frank rendered a total of 723.50 hours and $282,680.50 in services falling
within the category of "Fee Applications and Retention."  This category includes time Fried
Frank spent preparing and reviewing its First Interim Fee Application, Second Interim Fee
Application, Third Interim Fee Application, Fourth Interim Fee Application, Fifth Interim Fee

19

Application and Fried Frank's monthly fee statements during the Chapter 11 Cases, including the Sixth Interim Period.

Settlement and Restructuring

46.    Fried Frank rendered a total of 2,052.70 hours and $1,323,807.50 in services falling within the category of "Settlement and Restructuring."  Fried Frank devoted time analyzing, discussing and negotiating term sheets, proposals and drafts in connection with the EPCA, the Debtors' settlement agreements with GM and the labor unions and the Debtors' Plan and Disclosure Statement.  As part of the Plan process, Fried Frank also researched, prepared and reviewed potential alternate proposals and discussed such proposals with the members of the Equity Committee.  In connection with these proposals, Fried Frank worked with Houlihan Lokey Howard & Zukin, the Equity Committee's financial advisor, and the Equity Committee to evaluate the various recoveries proposed to be provided to equity holders, including the terms of certain securities to be distributed to equity holders.  Additionally, Fried Frank assisted the Equity Committee in considering and pursuing alternative framework options.

47.    During the Compensation Period, Fried Frank also spent time attending meetings and conferences with the Debtors, Creditors' Committee, Plan Investors and other potential investors, and communicating with the Equity Committee with respect to restructuring proposals and responding to questions posed by various members of the Equity Committee.  Fried Frank also spent substantial time reviewing, researching, analyzing and drafting memoranda regarding the treatment of equity holders.

EXPENSES

48.    As noted above, Fried Frank incurred and posted disbursements in the amount of $509,892.97 for actual and necessary expenses incurred and recorded during the Compensation Period.  These disbursements are itemized in **Exhibit D**.

20

49.     Fried Frank's billing rates do not include components for duplicating, word processing, and other extraordinary charges that may be incurred by particular clients because of the exigencies of time and volume of demand.  Fried Frank's billing method, whereby only the clients who use copying, word processing and other office services are charged for such services, maximizes fairness to all clients.  Fried Frank commenced a comprehensive study and review to determine its actual costs per page for duplicating.  Such study and review determined that, at the present time, Fried Frank's actual duplicating cost is 12¢ per page.  In November 2006, Fried Frank became aware that the Fee Committee was taking the position that reimbursement for photocopies should be limited to 10¢ per page.  Fried Frank believes that, pursuant to the Local Guidelines, photocopies should be reimbursed at Fried Frank's 12¢ per page actual cost. However, upon learning of the Fee Committee's position, Fried Frank immediately and voluntarily adjusted its charges from that point forward to 10¢ per page.

50.     Fried Frank's billing rates do not include a component for word processing as part of overhead.  Some time ago, Fried Frank analyzed its method of charging clients for word processing services and, specifically, whether it was appropriate to charge clients for word processing as part of overhead or based on the extent to which word processing was used.  After such analysis, Fried Frank elected to keep its charges for word processing as a disbursement. Fried Frank concluded that it was fairer to its clients not to increase its billing rates to account for word processing services that might or might not be used by the client.  In this way, only clients who used such services would be charged for services.

51.     The time constraints imposed by the time-sensitive circumstances of these Chapter 11 Cases and by the size and complexity of these Chapter 11 Cases required Fried Frank's attorneys and other employees to devote substantial amounts of time during the evenings and on weekends to the performance of legal services on behalf of the Equity Committee.  As a

21

consequence, Fried Frank was required to incur overtime secretarial charges to discharge its

professional responsibilities.

52.     Fried Frank attempted to reduce overtime secretarial charges and to limit them to

instances where such were necessary, by encouraging its attorneys to use a secretarial pool.  If a

secretary was not needed at the attorney's desk for the entire evening, the attorney was required

to bring his or her work to the firm's secretarial pool.  The client was then only charged for the

word processing charges associated with the document, rather than charging the client for a

secretary spending an entire evening at a desk whether or not the attorney actually used the

secretary for the entire time.

53.     Fried Frank incurred expenses for delivery of documents.  Furthermore, Fried

Frank's attorneys and other employees who worked overtime and late into the evenings were

reimbursed for their reasonable meal costs and their transportation costs home.  Such

transportation costs are necessary expenses because it is a Fried Frank policy to ensure safe

transportation for its attorneys and staff after the hours when public transportation cannot be

deemed safe.  Fried Frank's regular practice is to charge its clients for these and other out-of-

pocket disbursements incurred during the regular course of the rendition of services.

54.     Fried Frank made every effort to minimize its disbursements in providing its legal

services to the Equity Committee.  The expenses incurred in the rendition of professional

services were necessary, reasonable and justified under the circumstances to serve the needs of

the Equity Committee and were billed at rates and in accordance with practices customarily

employed by Fried Frank and generally accepted by Fried Frank's clients.

### FRIED FRANK'S FEES AND EXPENSES ARE FAIR AND REASONABLE

55.     In accordance with the factors enumerated in section 330 of the Bankruptcy Code,

Fried Frank believes that the total fees and expenses for the Compensation Period are fair and

reasonable in view of the time spent, the complexity and intricacy of the proceedings, and the problems and issues encountered. Fried Frank and the Equity Committee worked diligently throughout the Compensation Period to address key issues in the Chapter 11 Cases as expeditiously as possible. Therefore, in accordance with the factors enumerated in 11 U.S.C. §330(a)(3), Fried Frank believes that the compensation sought herein should be approved.

## APPLICABLE AUTHORITY

56.     In awarding compensation pursuant to section 328 of the Bankruptcy Code to counsel for an official equity committee, this Court must take into account the reasonableness of the terms and conditions of employment. Section 328(a) of the Bankruptcy Code provides in pertinent part:

> (a)     The trustee, or a committee appointed under section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis. Notwithstanding such terms and conditions, the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.

11 U.S.C. § 328(a).

57.     In awarding compensation to professionals pursuant to section 330 of the Bankruptcy Code, this Court must take into account the cost of comparable non-bankruptcy services, among other factors. Section 330(a) of the Bankruptcy Code provides in pertinent part:

> (1)    . . . [T]he court may award to a trustee, an examiner, a professional person employed under section 327 or 1103 -
>
> (A)     reasonable compensation for actual, necessary services rendered by the trustee, examiner, professional person,

or attorney and by any paraprofessional person employed by
any such person; and

      (B)    reimbursement for actual, necessary expenses.
\*   \*   \*

    (3)   (A)   In determining the amount of reasonable
compensation to be awarded, the court shall consider the nature,
the extent, and the value of such services, taking into account all
relevant factors, including -

      (A)    the time spent on such services;

      (B)    the rates charged for such services;

      (C)    whether the services were necessary to the
administration of, or beneficial at the time at which the service
was rendered toward the completion of, a case under this title;

      (D)    whether the services were performed within a
reasonable amount of time commensurate with the complexity,
importance, and nature of the problem, issue, or task addressed;

      (E)    with respect to a professional person, whether the
person is bond certified or otherwise has demonstrated skill
and experience in the bankruptcy field; and

      (F)    whether the compensation is reasonable based on
the customary compensation charged by comparably skilled
practitioners in cases other than cases under this title.

11 U.S.C. § 330(a).

    58.    In accordance with the factors enumerated in section 330 of the Bankruptcy Code,

Fried Frank respectfully submits that the fees and expenses incurred in the course of rendering

professional services were actual, necessary and reasonable, based upon the nature, extent and

value of such services, the time spent thereon, and the costs of comparable services in non-

bankruptcy cases, so as to best serve the needs of the Equity Committee and the Debtors' estates.

Fried Frank submits further that the legal services described herein among partners, associates

and paraprofessionals were executed in accordance with the principles outlined above and,

moreover, in a manner consistent with the overall goal of Fried Frank to provide the highest

quality of legal representation at a reasonable cost. Fried Frank has demonstrated by this Final

Fee Application that the work it did on behalf of the Equity Committee was necessary,

reasonable and beneficial to the Debtors' equity security holders, unsecured creditors and the

Debtors' estates.

59.    This Final Fee Application clearly reflects (i) the number of hours of recorded

time Fried Frank has devoted to the performance of legal services; (ii) the number of hours

worked by each of Fried Frank's professionals and paraprofessionals and the hourly rate

customarily charged by such persons; (iii) a detailed description of the services provided by

Fried Frank's professionals and paraprofessionals during each of those hours; and (iv) the quality

and nature of the services provided by each of Fried Frank's professionals and paraprofessionals.

Fried Frank submits that its Fees and Expenses were actual, necessary, reasonable and justified

and should, therefore, be allowed in full.

<u>COMPENSATION REQUESTED</u>

60.    Given the circumstances of the Chapter 11 Cases, the professional services

rendered by Fried Frank required an expenditure of a great deal of time and effort. During the

Compensation Period, 19,724.40 recorded hours were expended by Fried Frank's partners,

counsel, associates and paraprofessionals in the rendition of Fried Frank's professional services.

61.    Fried Frank believes that its services were rendered in a highly efficient manner,

by attorneys with high levels of skill in the areas for which they rendered services. The core

group of attorneys working on this matter expended considerable time in connection with the

Equity Committee's general legal needs and in furtherance of the Equity Committee's goal of

furthering the interests of all equity security holders. This experienced group of attorneys made

every effort to ensure that the Chapter 11 Cases progressed in the most efficient and expeditious

manner and resulted in the successful reorganization of the Debtors.

25

62.     For all the foregoing reasons, Fried Frank respectfully requests approval and

allowance of its compensation in the amount of $11,066,482.50, with an authorization for, and

direction to, the Debtors to disburse such amounts to Fried Frank.  This Final Fee Application is

Fried Frank's final fee application for allowance of fees and disbursements incurred by Fried

Frank as counsel to the Equity Committee.  An allowance of compensation in the amount sought

in this Final Fee Application would result in a blended aggregate average billing rate of

approximately $604.03 per hour (excluding paraprofessionals) and a blended rate of

approximately $566.88 per hour (based on recorded hours).

<u>NOTICE</u>

63.     In compliance with the Interim Compensation Order, notice of the filing of this

Final Fee Application has been provided to all parties who have filed a notice of appearance with

the Clerk of this Court and requested notice of pleadings in these Chapter 11 Cases.  In addition,

the Final Fee Application in its entirety has been served on the following parties: (i) Delphi

Corporation, 5725 Delphi Drive, Troy, Michigan 48098, Att'n: Sean Corcoran, Esq., (ii) counsel

to the Debtors, Skadden, Arps, Slate & Meagher & Flom LLP, 333 West Wacker Drive, Suite

2100, Chicago, Illinois 60606, Att'n.: John Wm. Butler Jr., (iii) the Office of the United States

Trustee for the Southern District of New York, 33 Whitehall Street, Suite 2100, New York, New

York 10004, Att'n: Brian Masumoto, Esq., (iv) counsel for the Official Committee of Unsecured

Creditors, Latham & Watkins LLP, 885 Third Avenue, New York, New York 10022-4802,

Att'n: Robert J. Rosenberg, Esq., (v) counsel for the agent under the Debtors' prepetition credit

facility, Simpson Thacher & Bartlett LLP, 425 Lexington Avenue, New York, New York 10017,

Att'n: Kenneth S. Ziman, Esq. and (vi) counsel for the agent under the Debtors' postpetition

credit facility, Davis Polk & Wardwell, 450 Lexington Avenue, New York, New York 10017,

Att'n: Donald Bernstein, Esq. and Brian Resnick, Esq.  In light of the nature of the relief

requested, the Equity Committee submits that no other or further notice is necessary.

<u>CONCLUSION</u>

64.     For the reasons set forth above, Fried Frank respectfully submits that the

professional services rendered and disbursements incurred and posted on behalf of the Equity

Committee were of substantial benefit to the Equity Committee, other equity holders, creditors

and the Debtors.  Fried Frank submits further that it provided such services in an economical and

efficient manner.  Accordingly, Fried Frank respectfully requests that the relief requested in this

Final Fee Application be granted in full.


*[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]*

WHEREFORE, Fried Frank hereby requests approval, on a final basis, of this combined sixth interim and final fee application for (i) payment in the amount of $583,779.80, representing the 20% holdback of professional fees incurred and posted for the Sixth Interim Period and rendered on behalf of the Equity Committee, and (ii) approval, on a final basis, of compensation in the amount of $11,066,482.50 for the reasonable and necessary legal services rendered by Fried Frank on behalf of the Equity Committee and reimbursement in the amount of $509,892.97 for the actual and necessary expenses incurred and posted for the Compensation Period, which period includes the Sixth Interim Period.  Fried Frank further requests that the total amount of $11,576,375.47 be treated as an administrative expense of the Debtors' estates.

Dated:  New York, New York
   December 21, 2009

     FRIED, FRANK, HARRIS, SHRIVER
       & JACOBSON LLP

     By:  _/s/ Bonnie Steingart_____
       Bonnie Steingart
       Jennifer Rodburg
       Richard Slivinski

     One New York Plaza
     New York, New York 10004
     Telephone:  212.859.8000
     Facsimile:  212.859.4000

     *Counsel for the Official Committee of Equity*
     *Security Holders*

7307482