**Hearing Date:  To Be Determined**
**Objection Deadline:  To Be Determined**

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------X

| | | |
|---|---|---|
| In Re: | : | Chapter 11; Case No. 05-44481 (RDD) |
| | : | (Jointly Administered) |
| Delphi Corporation., <u>et al.</u>, | : | |
| | : | |
| | : | |
| | : | |
| Debtors. | : | |

---------------------------------------------------------X

## COVER SHEET FOR APPLICATION FOR
## <u>PROFESSIONAL COMPENSATION</u>

| | |
|---|---|
| Name of Applicant: | Houlihan Lokey Howard & Zukin Capital ("<u>Houlihan Lokey</u>") |
| Authorized To Provide Professional Services To: | Official Equity Committee of Equity Security Holders of Delphi Corporation, et al., (the "<u>Official Equity Committee</u>") |
| Date of Order Authorizing Employment: | October 11, 2006 (nunc pro tunc to July 31, 2006) |

### Seventh Interim Period

| | |
|---|---|
| Seventh Interim Application Period for which Compensation and Reimbursement has not been Previously Sought: | October 1, 2007 through January 25, 2008 |
| Amount of Fees Sought as Actual, Reasonable, and Necessary | $666,129.03 |
| Amount of Expense Reimbursement Sought as Actual, Reasonable, and Necessary | $10,500.73 |

### Final Period

| | |
|---|---|
| Final Application Period for which Compensation and Reimbursement is Sought: | July 31, 2006 through January 25, 2008 |
| Amount of Fees Sought as Actual, Reasonable, and Necessary | $3,121,774.19 |
| Amount of Expense Reimbursement Sought as Actual, Reasonable, and Necessary | $109,900.56 |

## HOURS EXPENDED BY CATEGORY

| Project Category | Total Hours for Third through Sixth Interim Periods |
|---|---|
| Labor Matters | 908.0 |
| General Motors Corporation | 921.7 |
| Divestitures & Closings | 897.7 |
| Financial Analysis, Due Diligence & Other Matters | 3,710.2 |
| Case Administration & Correspondence | 496.3 |
| **TOTAL** | **6,934.0** |

| Project Category | Total Hours for Seventh Interim Period |
|---|---|
| Labor Matters | 106.7 |
| General Motors Corporation | 116.9 |
| Divestitures & Closings | 121.2 |
| Financial Analysis, Due Diligence & Other Matters | 653.7 |
| Case Administration & Correspondence | 30.5 |
| **TOTAL** | **1,028.9** |

| Project Category | Total Hours for Application Period |
|---|---|
| Labor Matters | 1,014.7 |
| General Motors Corporation | 1,038.7 |
| Divestitures & Closings | 1,018.9 |
| Financial Analysis, Due Diligence & Other Matters | 4,363.9 |
| Case Administration & Correspondence | 526.8 |
| **TOTAL** | **7,962.9** |

## THIRD THROUGH SIXTH INTERIM PERIODS

| Fee Statement Date(s) | Fee Periods | Fees Requested | Expenses Requested [1] | Amount of Fees Paid | Amount of Expenses Paid |
|---|---|---|---|---|---|
| 11/15/06 | 07/31/06-09/30/06 | $355,645.16 | $28,061.94 | $355,645.16 | $28,061.94 |
| 12/14/06 | 10/01/06-10/31/06 | $175,000.00 | $7,753.04 | $175,000.00 | $7,753.04 |
| 01/12/07 | 11/01/06-12/31/06 | $350,000.00 | $13,229.44 | $350,000.00 | $13,229.44 |
| 02/12/07 | 01/01/07-01/31/07 | $175,000.00 | $5,654.32 | $175,000.00 | $5,654.32 |
| 04/04/07 | 02/01/07-02/28/07- | $175,000.00 | $12,526.25 | $175,000.00 | $12,526.25 |
| 05/17/07 | 03/01/07-03/31/07 | $175,000.00 | $11,352.78 | $175,000.00 | $11,352.78 |
| 06/22/07 | 04/01/07-04/30/07 | $175,000.00 | $9,732.28 | $175,000.00 | $9,732.28 |
| 07/10/07 | 05/01/07-05/31/07 | $175,000.00 | $3,516.77 | $175,000.00 | $3,516.77 |
| 07/30/07 | 06/01/07-06/30/07 | $175,000.00 | $3,473.58 | $175,000.00 | $3,473.58 |
| 09/13/07 | 07/01/07-07/31/07 | $175,000.00 | $1,701.90 | $175,000.00 | $1,701.90 |
| 09/19/07 | 08/01/07-08/30/07 | $175,000.00 | $0.00 | $175,000.00 | $0.00 |
| 10/16/07 | 09/01/07-09/30/07 | $175,000.00 | $2,397.53 | $175,000.00 | $2,397.53 |
| **Third through Sixth Interim Periods** | **07/31/06-09/30/07** | **$2,455,645.16** | **$99,399.83** | **$2,455,645.16** | **$99,399.83** |

Note: $0.00 of fees requested and $0.00 of expenses requested in relation to the Third through Sixth Interim Periods remain outstanding.

---

1 Expenses Requested are shown net of credits made to Monthly Invoices submitted to the Debtors. For the months that have been adjusted, gross expenses requested are as follows: February 2007 - $12,771.10; March 2007 - $11,502.16; April 2007 - $9,784.45. Neither Expenses Requested nor Amount of Expenses Paid include additional expense reductions recommended by Legal Cost Control. Such expense reductions total $4,500.00 for the Third Interim Period; $5,900.00 for the Fourth Interim Period, and $7,946.30 for the Fifth Interim Period.

### SEVENTH INTERIM PERIOD

| Fee Statement Date(s) | Fee Periods | Fees Requested | Expenses Requested | Amount of Fees Paid | Amount of Expenses Paid |
|---|---|---|---|---|---|
| 11/16/07 | 10/01/07-10/31/07 | $175,000.00 | $2,600.04 | $140,000.00 | $2,600.04 |
| 01/10/08 | 11/01/07-11/30/07 | $175,000.00 | $5,556.85 | $140,000.00 | $5,556.85 |
| 02/22/08 | 12/01/07-12/31/07 | $175,000.00 | $2,000.50 | $140,000.00 | $2,000.50 |
| 03/18/08 | 01/01/08-01/25/08 | $141,129.03 | $343.34 | $112,903.23 | $343.34 |
| **Seventh Interim Period** | **10/01/07-01/25/08** | **$666,129.03** | **$10,500.73** | **$532,903.23** | **$10,500.73** |

Note: $133,225.80 of fees requested and $0.00 of expenses requested in relation to the Seventh Interim Period remain outstanding.

## SUMMARY OF APPLICATION PERIOD

| Fee Statement Date(s) | Fee Periods | Fees Requested | Expenses Requested | Amount of Fees Paid | Amount of Expenses Paid |
|---|---|---|---|---|---|
| Third through Sixth Interim Periods | 07/31/06-09/30/07 | $2,455,645.16 | $99,399.83 | $2,455,645.16 | $99,399.83 |
| Seventh Interim Period | 10/01/07-01/25/08 | $666,129.03 | $10,500.73 | $532,903.23 | $10,500.73 |
| **Application Period** | **07/31/06-01/25/08** | **$3,121,774.19** | **$109,900.56** | **$2,988,548.39** | **$109,900.56** |

Note: $133,225.80 of fees requested and $0.00 of expenses requested in relation to the Seventh Interim Period remain outstanding.

**EXPENSE SUMMARY**

| Expense Category | Total Expenses for Third through Sixth Interim Periods |
|---|---|
| Airfare | $56,408.35 |
| Lodging | 18,731.07 |
| Ground Transportation | 9,647.85 |
| Meals | 7,789.41 |
| Telephone | 462.86 |
| Delivery / Messenger | 729.43 |
| Duplication / Office Expense | 2,558.80 |
| Information Resources | 3,072.06 |
| **TOTAL** | **$99,399.83** |

| Expense Category | Total Expenses for Seventh Interim Periods |
|---|---|
| Airfare | $3,012.31 |
| Lodging | 2,250.00 |
| Ground Transportation | 613.78 |
| Meals | 119.59 |
| Telephone | 0.00 |
| Delivery / Messenger | 201.70 |
| Duplication / Office Expense | 150.30 |
| Information Resources | 4,153.05 |
| **TOTAL** | **$10,500.73** |

| Expense Category | Total Expenses for Application Period |
|---|---|
| Airfare | $59,420.66 |
| Lodging | 20,981.07 |
| Ground Transportation | 10,261.63 |
| Meals | 7,909.00 |
| Telephone | 462.86 |
| Delivery / Messenger | 931.13 |
| Duplication / Office Expense | 2,709.10 |
| Information Resources | 7,225.11 |
| **TOTAL** | **$109,900.56** |

HOULIHAN LOKEY respectfully requests that this Court enter an order awarding Houlihan Lokey a final allowance of compensation and expenses in the amount of $3,231,674.75 as set forth below and as indicated in the attached Affidavit of P. Eric Siegert, an officer of the firm.  Houlihan Lokey further respectfully requests that the Debtors pay to Houlihan Lokey $133,225.80 from the assets of their estates as an administrative expense and that the Court provide such other and further relief as may be just and equitable.

| | |
|---|---|
| *Professional Fees* | *$3,121,774.19* |
| *Out-of-Pocket Expenses* | *$109,900.56* |
| *Total Fees and Expenses* | *$3,231,674.75* |
| *Less: Amounts Received (including expense credits)* | *$3,098,448.95* |
| *Net Unpaid* | *$133,225.80* |

Dated: December 17, 2009
Minneapolis, Minnesota
Houlihan Lokey Howard & Zukin Capital
225 South Sixth Street, Suite 4950
Minneapolis, MN 55402


By      */s/ P. Eric Siegert_____*
        P. Eric Siegert
        Senior Managing Director
        Houlihan Lokey Howard & Zukin Capital

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------X
In Re:                                                      :      Chapter 11; Case No. 05-44481 (RDD)
                                                            :      (Jointly Administered)
Delphi Corporation., <u>et al.</u>, :                       :
                                                            :
                                                            :
                                                            :
        Debtors                                             :
------------------------------------------------------------ X

**SEVENTH INTERIM & FINAL FEE APPLICATION OF HOULIHAN LOKEY**
**HOWARD & ZUKIN CAPITAL FOR ALLOWANCE**
**OF COMPENSATION AND REIMBURSEMENT OF EXPENSES**

TO THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE:

Houlihan Lokey Howard & Zukin Capital ("<u>Houlihan Lokey</u>"), as financial advisor to the
Official Equity Committee of Equity Security Holders of Delphi Corporation et al., (the "<u>Official</u>
<u>Equity Committee</u>"), hereby submits this seventh and final application (the "<u>Application</u>") for (i)
allowance of monthly compensation for professional services rendered and reimbursement of actual
and necessary expenses incurred for the period from October 1, 2007 through and including January
25, 2008 (the "Seventh Interim Period"), and (ii) final allowance of monthly compensation for
professional services rendered and reimbursement of actual and necessary expenses incurred for the
period July 31, 2006 through January 25, 2008 (the "<u>Final Period</u>" and collectively with the Seventh
Interim Period, the "<u>Application Period</u>"), and respectfully represents:

<u>INTRODUCTION</u>

1.      By this Application, Houlihan Lokey requests an order of this Court, pursuant to Sections
        328(a) and 1103 of Title 11 of the United States Code (the "<u>Bankruptcy Code</u>") and Rule
        2014 of the Federal Rule of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), allowing the
        amounts requested herein as compensation for professional services rendered as financial
        advisor to the Official Equity Committee during the Application Period.

RETENTION OF HOULIHAN LOKEY

2.      On October 8, 2005, Delphi Corporation and thirty-eight of its domestic subsidiaries
(collectively, "Delphi" or the "Company") filed voluntary petitions for relief under chapter
11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District
of New York (the "Court").  On October 14, 2005, three additional domestic subsidiaries of
Delphi filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.
Pursuant to Sections 1107 and 1108 of the Bankruptcy Code, the Debtors are continuing to
operate their businesses and manage their properties as debtors in possession.

3.      On October 17, 2005, the Office of the United States Trustee for the Southern District of
New York (the "UST") appointed an official committee of unsecured creditors (the
"Creditors' Committee").

4.      On December 22, 2005, Appaloosa Management L.P. filed a motion seeking an order
directing the UST to appoint a committee of equity security holders (the "Equity Committee
Motion") pursuant to Section 1102 of the Bankruptcy Code.  A hearing on the Equity
Committee Motion was held on March 21 and March 22, 2006.  On March 22, 2006 the
Court issued an oral ruling on the Equity Committee Motion (the "Bench Decision") and, by
order dated March 30, 2006 (the "Equity Committee Order"), the Court granted the Equity
Committee Motion and directed the UST to appoint the Official Equity Committee.

5.      Pursuant to the terms set forth in the Equity Committee Order, which did not provide for the
retention by the Official Equity Committee of "any professionals, including, investment
bankers, accountants, or actuaries, other than a law firm" without prior leave of the Court,
the Official Equity Committee submitted a motion on July 31, 2006 to approve a Motion for
Order Granting the Official Committee of Equity Security Holders Leave to File an
Application to Retain and Employ a Financial Advisor, which was approved without
objection on August 17, 2006.

6.    On or about July 31, 2006, the Official Equity Committee and Houlihan Lokey executed a letter agreement (the "Retainer Agreement") memorializing the terms of the Official Equity Committee's engagement of Houlihan Lokey effective as of July 31, 2006, as attached hereto as **Exhibit A**.

7.    On September 21, 2006, the Official Equity Committee filed its Application of the Official Equity Committee of Equity Security Holders of Delphi Corporation, et al. to retain Houlihan Lokey Howard & Zukin Capital as Financial Advisor nunc pro tunc to July 31, 2006 (the "Retention Application").

8.    On October 11, 2006, having received no objections thereto, the Court signed an order granting the Retention Application (the "Retention Order").

9.    The Retention Application and the Retainer Agreement provide, among other things, for the payment of fees to Houlihan Lokey for services rendered during this bankruptcy case of $175,000.00 per month (the "Monthly Fee") plus reimbursement of reasonable out-of-pocket expenses, subject to Court approval.  The terms of the Retention Agreement do not provide for incremental fees above and beyond the Monthly Fee.

10.    Houlihan Lokey voluntarily reduced the Monthly Fee.  Beginning in November 2008, and continuing through January 2009, Houlihan Lokey voluntarily reduced its fee by over 70% from $175,000.00 per month to $50,000.00 per month.  Beginning in February 2009, Houlihan Lokey voluntarily eliminated its monthly fee, even though it continued to provide services to the Official Equity Committee until it was disbanded on April 23, 2009.

11.    On November 4, 2005, the Court signed an Administrative Order under Section 331 of title 11 of the United States Code, 11 U.S.C.§§ 101-1330, establishing procedures for interim compensation and reimbursement of expenses of court-approved professionals (the "Compensation Order") (as supplemented by Docket Nos. 2747, 2986, 3630, 4545, 5310, 6145, 8446, 8450, 12367, and 12909).

12.     By this application, Houlihan Lokey seeks allowance on a final basis of $3,121,774.19 (entirely consisting of monthly fees), and reimbursement of actual and necessary expenses in the amount of $109,900.56 for the period July 31, 2006 through January 25, 2008.  These amounts include compensation for the Seventh Interim Period in the amount of $666,129.03 in monthly fees and reimbursement of actual and necessary expenses in the amount of $10,500.73.  Of the total compensation sought, $133,225.80.00 remains unpaid.  Of the total reimbursement of actual and necessary expenses sought, $0.00 remains unpaid.  Copies of Houlihan Lokey's monthly fee statements submitted during the Seventh Interim Period are attached hereto as **Exhibit B**.  Houlihan Lokey's prior interim fee applications and monthly invoices are fully incorporated herein by reference.

13.     Houlihan Lokey has not received payment or promise of payment for services rendered in this Case other than pursuant to the Retainer Agreement and under the Retention Order and Compensation Order.

14.     No agreement or understanding exists between Houlihan Lokey and any other entity for sharing compensation to be received for services rendered in connection with this Case.

15.     Out-of-pocket expenses incurred by Houlihan Lokey are charged to a client if the expenses are incurred for the client or are otherwise necessary in connection with services rendered for such particular client.  Houlihan Lokey does not factor general overhead expenses into disbursements charged to its clients in connection with Chapter 11 cases.  Houlihan Lokey has followed internal policies with respect to out-of-pocket expenses billed as set forth below.

    (a)     Houlihan Lokey's general policy permits its employees to bill lunch or dinner meals to a client if the employee is required to provide services to the client during such mealtime due to extreme time constraints.  Houlihan Lokey employees are permitted to order meals in the office if the employee is required to work after 8:00 p.m.

    (b)     Messengers and couriers are used by Houlihan Lokey to deliver hard copy documents relating to the client matter that require receipt on an expedited basis;

otherwise, Houlihan Lokey uses the regular postal system.  Any charges for messengers and couriers are billed to a client at cost.

(c)     Research and other expenses include charges from outside computer/electronic service companies that supply, for a fee, research and/or financial documents to Houlihan Lokey.  The services provided by these companies primarily consist of the retrieval of financial documents from regulatory agencies and/or the retrieval of research that would not otherwise be available to Houlihan Lokey.

(d)     With respect to local travel, Houlihan Lokey's general policy enables employees to travel by private car service, taxi, or subway to and from meetings while rendering services to a client on a client related matter, for which the client is charged.  Further, Houlihan Lokey employees are permitted to charge personal commuting expenses to a client as long as the employee is traveling after 8:00 p.m., primarily due to safety reasons.

PROFESSIONAL SERVICES RENDERED DURING THE APPLICATION PERIOD

16.     The Official Equity Committee selected Houlihan Lokey because of Houlihan Lokey's extensive knowledge and reputation in financial restructuring, because of its familiarity with the issues involved in this case and because the Official Equity Committee believed that Houlihan Lokey possessed the requisite resources and was well qualified to represent the Official Equity Committee in this case.

17.     The services that Houlihan Lokey was required to perform and performed have been substantial and necessary in these Chapter 11 cases.  Houlihan Lokey attempted to perform such services with the minimum amount of duplication with the Official Equity Committee's other advisors.

18.     Throughout the duration of Houlihan Lokey's retention by the Official Equity Committee, Houlihan Lokey has staffed the engagement consistent with the Official Equity Committee's objectives and in a manner that provided for thorough and efficient representation of the interests of the Official Equity Committee.  Houlihan Lokey's activities in this case have been supervised on a day-to-day basis by Tanja I. Aalto, Managing Director and by P. Eric

Siegert, Senior Managing Director.   In addition, the following professionals have also provided services: David R. Hilty, Managing Director; Steve E. Hughes, Director; David Burns, Senior Vice President; Richard Miller, Associate; Scott Alford, Associate; Alvin Tan, Associate; Oliver Mathews, Associate; and Daniel F. Crowley III, Associate.

19.     During the time period covered by this Application, Houlihan Lokey has worked extensively with other professionals retained by the Official Equity Committee, certain members of the senior management of the Debtors, and other parties in interest in the case.  Houlihan Lokey's work has covered the specific issues for which it is engaged, as well as a broad variety of financial, operational and other issues relevant to these Chapter 11 cases.

20.     Houlihan Lokey does not ordinarily bill clients on an hourly basis for financial restructuring services and does not typically track the time spent by professionals on a specific engagement.  However, Houlihan Lokey has instructed the professionals working on this matter to keep summary time records that approximate the time spent on the case by major categories.  Although these time records do not include all time spent by professionals of Houlihan Lokey on this matter, they do provide a summary of the critical involvement of Houlihan Lokey in these cases.  Houlihan Lokey believes that all time entries and requested expenses are in substantial compliance with the Local Rules of this Court. A summary of the hours spent, the names of each professional rendering services to the Official Equity Committee, and a summary of the scope of Houlihan Lokey's services are reflected in time records, which have been maintained by each of Houlihan Lokey's employees involved in this case during this Application Period, which monthly summary time records are attached hereto as **Exhibit C**.  In addition, Houlihan Lokey has included each of its professional's biographies in **Exhibit D** attached hereto.

21.     In summary, Houlihan Lokey has provided financial advisory services to the Official Equity Committee in the following categories during the Application Period:

      A.     **Labor Matters**

          Houlihan Lokey was retained in part to advise the Official Equity Committee

in analyzing matters relating to the Company's workforce.

Regarding labor matters, during the Application Period, Houlihan Lokey spent considerable time studying the Company's labor issues and reviewing voluminous supporting documents, including, but not limited to: (i) news articles regarding labor issues between General Motors Corporation ("GM") and Delphi; (ii) news articles and court motions related to Dana Corporation and other automotive suppliers' labor negotiations with their unions; and (iii) various Delphi court motions relating to Section 1113/1114 issues.

In addition, Houlihan Lokey performed detailed analyses of the Memorandum of Understanding among the Debtors, GM, and the United Automobile, Aerospace & Agricultural Implement Workers of America International Union (the "UAW").  In conjunction with these analyses, Houlihan Lokey provided its clients with a comprehensive overview of the impact of that understanding upon the Debtors and the Debtors' pro forma financial and economic profile.

Also, Houlihan Lokey reviewed voluminous data and information contained in the confidential diligence presentations provided by PriceWaterhouseCoopers (the "PWC Reports") relating to Delphi's labor structure.

Furthermore, Houlihan Lokey studied and reported to its clients on negotiations between Delphi and the UAW regarding the Debtors' proposed management incentive plans and executive bonuses.

Finally, Houlihan Lokey had extensive correspondence in the form of e-mail, face-to-face meetings, and conference calls with the Debtors and their advisors. These calls addressed a wide range of labor matters, and notably involved numerous discussions about the driving labor assumptions embedded in the Company's various financial model scenarios.

### B.    General Motors Corporation

Houlihan Lokey was retained in part to advise the Official Equity Committee in analyzing matters relating to the relationship and business arrangements between the Company and GM.

Regarding GM, during the Application Period, Houlihan Lokey's efforts to a

great extent related to analyzing GM's involvement in the framework agreement negotiations between the Debtors and the various involved parties, which included GM. In part, these analyses studied the consideration exchanged between and among GM and Delphi under the various plan investor proposals, which were set forth by Appaloosa Management L.P., Highland Capital Management L.P., and other potential investors. In juxtaposing the consideration exchanged between and among Delphi and GM, Houlihan Lokey elucidated the cost-benefit analysis of the actual and contemplated support provided by GM to Delphi.

Key components of these analyses related to the amount and form of *economic* consideration that Delphi would receive from—and provide to—GM. In this endeavor, Houlihan Lokey studied and analyzed, among other things: the amount and form of the cash, debt, and equity securities to be issued to GM; the specific elements of the quantified Delphi obligations being assumed by GM; and proofs of claim filed by GM but assumed to be waived.

The scope of this analysis included the many non-economic forms of support exchanged between GM and Delphi. In this endeavor, Houlihan Lokey studied and analyzed, among other things: contributions by GM related to wind-down sites and asset sales; issues regarding pension sharing obligations; labor and pricing subsidies; Delphi's pro forma operational footprint (as related to long-term supply contracts with GM); and other factors impacting GM's economic contribution to Delphi. In particular, Houlihan Lokey dedicated significant time and resources to understanding the effect and implications of GM's possible assumption of Delphi labor obligations, especially with regards to UAW laborers and the associated postretirement benefits. This undertaking regarding non-economic consideration was important because of the significant amount of non-economic consideration that composed the total consideration that GM provided to Delphi.

Due to the duration and dynamic nature of Delphi's restructuring, Houlihan Lokey's analyses required frequent updates and entailed numerous iterations.

To prepare the various analyses discussed above, Houlihan Lokey monitored and participated in numerous weekly update conference calls between representatives of the Debtors, the Debtors' advisors, the Creditors' Committee, and the Official

Equity Committee.  In addition, Houlihan Lokey worked closely with the Company's advisors, and reviewed voluminous documents relating to the framework negotiations and GM's involvement in Delphi's restructuring process.

## C.    Divestitures & Closings

Houlihan Lokey was retained in part to assist the Official Equity Committee in analyzing matters relating to the Company's efforts to divest material property and/or businesses and the impact thereof.

Regarding the Company's divestitures, during the Application Period, Houlihan Lokey reviewed materials related to sale process updates of certain of the Company's divisions, including the following businesses of the Debtors: Steering; Cockpit & Interior; Global Catalyst; and, Integrated Closure Systems.  The materials that Houlihan Lokey reviewed included confidential presentations provided by the Company and its advisors, as well as public and court-filed documents.  In addition, Houlihan Lokey participated in regular conference calls during which the Company and its advisors provided verbal updates of the various divestitures and closings. Houlihan Lokey also received updates on these topics during the joint statutory committee meetings, which were generally held each month at the Company's bankruptcy counsel's New York offices.

In addition to the above, Houlihan Lokey attended the auction of the Debtors' Global Catalyst business, which resulted successfully in a sale to Umicore.  Houlihan Lokey also reviewed and analyzed the terms of the closure of Delphi's facility in Cadiz, Spain.

To keep the Official Equity Committee apprised of the progress of the Company's divestitures and closings, Houlihan Lokey composed and distributed detailed summaries of the terms, conditions, and anticipated proceeds of each sale process.  Houlihan Lokey also provided verbal updates to its clients during both regularly and specially scheduled conference calls.

## D.    Financial Analysis, Due Diligence & Other Matters

Due to the complexity of these chapter 11 cases, Houlihan Lokey found it

necessary to perform incremental work not reflected in paragraphs 20(a), 20(b) and 20(c) of this application in order to provide effective counsel to the Official Equity Committee regarding the issues for which Houlihan Lokey was engaged. Houlihan Lokey is not seeking any additional compensation for these services. The majority of this work has taken the form of financial analyses and review of due diligence materials in areas deemed critical to provide the services contemplated in the Retention Application. In addition, Houlihan Lokey performs, and regularly updates, detailed analyses on publicly traded companies that operate in the automotive supplier industry. These analyses facilitate Houlihan Lokey's development and maintenance of comprehensive understanding of market valuation dynamics and industry outlook. Such analyses are critical, as Houlihan Lokey must have a thorough understanding of the automotive industry as a whole in order to provide sound strategic advice to its clients.

During the Application Period, Houlihan Lokey spent extensive time analyzing the terms of various plan investor proposals and, together with the Official Equity Committee's legal advisors, advising the Official Equity Committee on how to respond to a number of issues, including: a back-stopped rights offering; multiple issues of preferred stock with different strike prices; valuation and dilution impact of warrants; and, the treatment of various classes under the proposals, in terms of both absolute consideration received and the form of that consideration. Houlihan Lokey also expended considerable time reviewing various exit financing proposals. Houlihan Lokey also engaged in lengthy discussions with the Debtors and its advisors as to how the credit markets would impact the Debtors' ability to raise exit financing.

Houlihan Lokey reviewed numerous iterations of the Debtors' business plan and related back-up materials, as well as several versions of the plan of reorganization, disclosure statement, and other plan documents. Houlihan Lokey routinely conveyed to the Official Equity Committee's counsel its detailed comments on each new draft of the business plan and related back-up materials.

In addition, Houlihan Lokey performed and distributed to the Official Equity Committee numerous analyses evaluating the hypothetical distributions to equity

holders under the various investments proposed by potential investor groups. These analyses were sophisticated, as they examined the value provided by a variety of financial products (including primary equity, warrants, call options, and rights offerings) across a range of potential enterprise values and timeframes. In developing these analyses, Houlihan Lokey tracked a wide array of market data including, for example, the volatilities of the equity securities of Delphi's competitors and other businesses in the automotive industry.

Additionally, Houlihan Lokey closely tracked the trading prices of the Debtors' securities in the context of evaluating the market's view of publicly disclosed restructuring proposals. Houlihan Lokey also represented the Official Equity Committee in several in-person negotiations regarding proposed investments in the Debtors among the Debtors, the Delphi Statutory Committees, and potential investors in the reorganized Debtors. In addition to representing its clients in negotiations, Houlihan Lokey attended on behalf of the Official Equity Committee monthly joint statutory committee meetings, which generally entailed detailed review of the Debtors' financial and operational performance. Finally, Houlihan Lokey regularly analyzed the Debtors' monthly operating reports as they were filed with the court, as well as the Debtors' SEC filings.

### E.    Case Administration & Correspondence

This category includes various services related to these Chapter 11 cases generally, including correspondence with parties-of-interest pertaining to these Chapter 11 proceedings, as well as items such as retention matters, addressing questions of individual members of the Official Equity Committee, and reviewing documents filed with the Court with regard to these Chapter 11 cases. This category also includes other Chapter 11 procedures, communications and administrative functions and matters not falling into any of the other categories listed above. During the Application Period, Houlihan Lokey participated in regularly scheduled weekly conference calls with the Official Equity Committee to keep the Official Equity Committee current on the process of the chapter 11 proceedings.

26.    Based on the above, and in accordance with the Retainer Agreement, Houlihan Lokey respectfully requests Court allowance of compensation and expenses in the amount of $3,231,674.75 for services rendered by Houlihan Lokey during the Application Period.

<u>DISBURSEMENTS</u>

27.    Attached hereto as **Exhibit E** is a summary of the out-of-pocket expenses incurred by Houlihan Lokey in connection with its services on behalf of the Official Equity Committee in the aggregate amount of $109,900.56.  These out-of-pocket expenses consist of expenses incurred during this Application Period and may also include expenses that were incurred in prior application periods but for which reimbursement was not sought due to delays in Houlihan Lokey's receipt of such billing information from various third-parties.

28.    In accordance with the applicable factors enumerated in the Bankruptcy Code, it is respectfully submitted that the amount requested by Houlihan Lokey is fair and reasonable given (a) the complexity of these cases, (b) the time expended, (c) the nature and extent of the services rendered, (d) the value of such services, and (e) the costs of comparable services, both financial and otherwise, agreed to by Houlihan Lokey and other investment bankers in similar engagements, both inside and outside of bankruptcy.  Moreover, Houlihan Lokey has reviewed the requirements of the Compensation Order and believes that this Application complies with that Order.

WHEREFORE, HOULIHAN LOKEY respectfully requests that this Court enter an order awarding Houlihan Lokey a final allowance of compensation and expenses in the amount of $3,231,674.75 as set forth below and as indicated in the attached Affidavit of P. Eric Siegert, an officer of the firm. Houlihan Lokey further respectfully requests that the Debtors pay to Houlihan Lokey $133,225.80 from the assets of their estates and that the Court provides such other and further relief as may be just and equitable.

| | |
|---|---|
| *Professional Fees* | *$3,121,774.19* |
| *Out-of-Pocket Expenses* | *$109,900.56* |
| *Total Fees and Expenses* | *$3,231,674.75* |
| *Less: Amounts Received (including expense credits)* | *$3,098,448.95* |
| *Net Unpaid* | *$133,225.80* |

Dated:  December 17, 2009
Minneapolis, Minnesota
Houlihan Lokey Howard & Zukin Capital
225 South Sixth Street, Suite 4950
Minneapolis, MN 55402


By          */s/ P. Eric Siegert_____*
             P. Eric Siegert
             Senior Managing Director
             Houlihan Lokey Howard & Zukin Capital

Hearing Date:  To Be Determined
Objection Deadline:  To Be Determined


UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK


| | | |
|---|---|---|
| In re: | : | |
| | : | Chapter 11; 05-44481 (RDD) |
| DELPHI CORPORATION, et al., | : | Jointly Administered |
| | : | |
| | : | |
| Debtors. | : | |


AFFIDAVIT PURSUANT TO SECTION 504
OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 2014


P. Eric Siegert, being duly sworn, deposes and says:

1.       I am a Senior Managing Director of the firm of Houlihan Lokey Howard & Zukin Capital
("Houlihan Lokey"), which maintains offices at, among other locations, 225 South Sixth Street,
Suite 4950, Minneapolis, Minnesota, 55402.

2.       This affidavit is submitted pursuant to Section 504 of the Bankruptcy Code and
Bankruptcy Rule 2014 in connection with and in support of Houlihan Lokey's fee application
(the "Application") for allowance of compensation and reimbursement of expenses incurred for
services rendered as financial advisor to the Official Equity Committee of Equity Security
Holders of Delphi Corporation et al., (the "Official Equity Committee") for the interim period
from October 1, 2007 through and including January 25, 2008 (the "Seventh Interim Period")
and for the final period from July 31, 2006 through January 25, 2008 (the "Final Period" and
collectively with the Seventh Interim Period, the "Application Period").  The facts contained in
the foregoing Application are true and correct to the best of my knowledge, information and
belief.

3.       The Application respectfully requests that this Court enter an Order awarding Houlihan
Lokey $3,121,774.19 as compensation for services rendered during the Application Period and
$109,900.56 as reimbursement of reasonable actual and necessary expenses incurred in
connection with such services.

4.       No agreement or understanding exists between Houlihan Lokey and any other persons or
parties to share in any compensation received in connection with this Case other than as among
members of Houlihan Lokey.

5.     The fees and disbursement requested in the Application are billed at rates in accordance with practices customarily employed by Houlihan Lokey and generally accepted by Houlihan Lokey's clients.

6.     Houlihan Lokey has at all times, to the extent practicable, minimized disbursements incurred in connection with its representation of the Official Equity Committee.  In providing a reimbursable service, Houlihan Lokey does not make a profit on that service.  In charging for a particular service, Houlihan Lokey does not include in the amount for which reimbursement is sought the amortization of the cost of any investment, equipment or capital outlay.  In seeking reimbursement for service that is justifiably purchased or contracted for from a third party, Houlihan Lokey requests reimbursement only for the amount billed to Houlihan Lokey by the third-party vendor and paid by Houlihan Lokey to such vendor.

Dated: December 17, 2009

/s/ P. Eric Siegert
P. Eric Siegert
Senior Managing Director
Houlihan Lokey Howard & Zukin Capital

Affirmed to and subscribed before me this 17th day of December, 2009.



Notary Public

My Commission Expires:
September 25, 2010

22