**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

———————————————————————

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| DELPHI CORPORATION, <u>et al.</u>, | ) | Case No. 05-44481 (RDD) |
| | ) | |
| Debtors. | ) | |
| | ) | Jointly Administered |

———————————————————————

**FINAL FEE AND EXPENSE APPLICATION COVER**
**SHEET OF JEFFERIES & COMPANY, INC. INVESTMENT BANKER TO**
**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

**Name of Applicant:**  Jefferies & Company, Inc.

**Role in Case:**  Investment Banker to the Official Committee of Unsecured Creditors

**Date of Retention:**  June 19, 2006 (*nunc pro tunc* to October 18, 2005)

**Period for which final compensation and reimbursement are sought:**  October 18, 2005 through January 25, 2008[1]

**Amount of Compensation sought on a final basis as actual, reasonable, and necessary:**  $4,759,561.30

**Final Amount of Expense Reimbursement sought on a final basis as actual, reasonable, and necessary:**  $144,674.92

**This is a(n):**  ___ interim  <u>x</u>  final application.

———————————————————

[1] Pursuant to paragraph 33 of the Confirmation Order and paragraph 9(b) of the Effective Date Notice (both as defined in the Application), any requirement that professionals comply with sections 327 through 331 of the Bankruptcy Code in seeking compensation for services rendered terminated on January 25, 2008 (the "Confirmation Date"). Consequently, since the Confirmation Date, the Debtors have employed and paid Professionals, including Jefferies & Company, Inc., in the ordinary course of business without any further notice to, action by or order or approval of the Court or any other party. As such, this Application does not request compensation or expense reimbursement with respect to services rendered and expenses incurred after January 25, 2008.

## SECTION I:  PRIOR INTERIM APPLICATIONS

| Fee Application, Filing Date, Docket No. | Period Covered | Total Fees Requested | Total Expenses Requested | Amount of Fees Authorized | Amount of Expenses Authorized |
|---|---|---|---|---|---|
| First Interim Fee Application<br><br>Filed 05/30/06<br><br>Docket No. 3962 | 10/18/2005 through 1/31/2006 | $604,032.26 | $22,677.57 | $600,498.93 | $22,677.57 |
| Second Interim Fee Application<br><br>Filed 07/31/06<br><br>Docket No. 4789 | 2/1/2006 through 5/31/2006 | $700,000.00 | $61,446.36 | $696,466.67 | $61,446.34 |
| Third Interim Fee Application<br><br>Filed 12/4/06<br><br>Docket No. 7019 | 6/1/2006 through 9/30/2006 | $700,000.00 | $34,333.35 | $696,466.67 | $34,333.35 |
| Fourth Interim Fee Application<br><br>Filed 3/30/07<br><br>Docket No. 7490 | 10/1/2006 through 1/31/2007 | $700,000.00 | $14,879.04 | $700,000.00 | $9,879.04 |

| Fee Application, Filing Date, Docket No. | Period Covered | Total Fees Requested | Total Expenses Requested | Amount of Fees Authorized | Amount of Expenses Authorized |
|---|---|---|---|---|---|
| Fifth Interim Fee Application<br><br>Filed 07/31/07<br><br>Docket No. 8804 | 2/1/2007 through 5/31/2007 | $700,000.00 | $4,381.39 | $700,000.00 | $3,931.39 |
| Sixth Interim Fee Application<br><br>Filed 11/30/07<br><br>Docket No. 11186 | 6/1/2007 through 9/30/2007 | $700,000.00 | $4,893.39 | $700,000.00 | $4,053.39 |
| **Prior Fee Application Total** | **10/18/2005 through 9/30/2007** | **$4,104,032.26** | **$142,611.10** | **$4,093,432.27** | **$136,321.08** |

## SECTION II:  EXPENSE SUMMARY

### FINAL COMPENSATION PERIOD

| Expense Category | Amount |
|---|---|
| Accommodations | $2,419.54 |
| Courier | $1,296.50 |
| Equipment Rental | $10.54 |
| Financial Research | $5,171.10 |
| Legal | $45,146.94 |
| Meals | $30,881.21 |
| Phone/Fax | $3,207.55 |
| Presentation Services | $10,385.78 |
| Subscriptions | $5,790.03 |
| Transportation – Misc | $23,901.16 |
| Transportation - Air | $2,395.11 |
| Transportation - Ground | $20,359.48 |
| **TOTAL** | **$150,964.94** |

**OCTOBER 1, 2007 THROUGH JANUARY 25, 2008**

| Expense Category | Amount |
|---|---|
| Accommodations | $405.70 |
| Courier | $576.62 |
| Financial Research | $71.84 |
| Meals | $1,924.02 |
| Phone/Fax | $93.59 |
| Presentation Services | $1,578.00 |
| Transportation - Ground | $3,704.07 |
| **TOTAL** | **$8,353.84** |

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| DELPHI CORPORATION, et al., | ) | Case No. 05-44481 (RDD) |
| | ) | |
| Debtors. | ) | |
| | ) | Jointly Administered |
| _____ | ) | |

## <u>FINAL FEE AND EXPENSE APPLICATION OF JEFFERIES & COMPANY, INC. AS INVESTMENT BANKER TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS</u>

Pursuant to sections 330 and 503(b)(1)(A) of chapter 11 of Title 11 of the United States

Code (the "<u>Bankruptcy Code</u>"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the

"<u>Bankruptcy Rules</u>"), the Amended Guidelines for Fees and Disbursements for Professionals in

Southern District of New York Bankruptcy Cases adopted by the Court on April 19, 1995 (the

"<u>Local Guidelines</u>") and the United States Trustee Guidelines for Reviewing Applications for

Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330, adopted on

January 30, 1996 (the "<u>UST Guidelines</u>," and, collectively with the Local Guidelines, the

"<u>Guidelines</u>"), Jefferies & Company, Inc. ("<u>Jefferies</u>"), as investment banker to the Official

Committee of Unsecured Creditors (the "<u>Committee</u>") appointed in the chapter 11 cases of

Delphi Corporation and its debtor affiliates (collectively, the "<u>Debtors</u>"), respectfully submits

this final application (the "<u>Application</u>")[1] for final allowance of compensation in the amount of

$4,759,561.30 for professional services rendered by Jefferies during the period beginning

October 18, 2005 through and including January 25, 2008 (the "<u>Final Compensation Period</u>")

---

[1] This request includes compensation in the amount of $570,161.29 for professional services rendered by Jefferies during the period beginning October 1, 2007 through and including January 25, 2008 and reimbursement of actual and necessary expenses totaling $8,353.84 incurred during this period.

and reimbursement of its actual and necessary expenses in the amount of $144,674.92 incurred

during the Final Compensation Period.[2]

In support of this Application, Jefferies respectfully represents as follows:

## Background

1.      On October 8, 2005 (the "Petition Date"), thirty-nine of the above-captioned

Debtors filed with this Court voluntary petitions for relief under chapter 11 of the Bankruptcy

Code.  On October 14, 2005, three additional Debtors filed voluntary petitions under chapter 11

of the Bankruptcy Code.  For the duration of these chapter 11 cases, the Debtors operated their

businesses as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

2.      The Committee was appointed in these cases by the Office of the United States

Trustee for the Southern District of New York (the "U.S. Trustee") on October 17, 2005.[3]

3.      On November 17, 2005, the Committee filed that certain Application of the

Official Committee of Unsecured Creditors for Order Authorizing and Approving the

Employment and Retention of Jefferies & Company, Inc. as Investment Banker, Nunc Pro Tunc

to October 18, 2005 (the "Retention Application").  On January 6, 2006, this Court entered an

order approving the retention of Jefferies, *nunc pro tunc* to October 18, 2005.

4.      By Order dated November 4, 2005 (the "Administrative Order"), this Court

established a procedure for interim compensation and reimbursement of expenses for all

professionals in these cases.  In particular, the Administrative Order provided that, absent

---

[2] As set forth in more detail in this Application, the Debtors have been paying their professionals, including Jefferies, in the ordinary course of business since the Debtors' Amended Plan (as defined below) was confirmed by this Court on January 25, 2008 (the "Confirmation Date").  Thus, this Application does not seek allowance of any fees and expenses incurred by Jefferies since the Confirmation Date.

[3] As of the Confirmation Date, the Committee was comprised of the following members: (a) [Capital Research and Management Company]; (b) Freescale Semiconductor, Inc.; (c) IUE-CWA; (d) Wilmington Trust Company, as Indenture Trustee; [and] (e) Tyco Electronics Corporation [and (f) SABIC Innovative Plastics US LLC].  The Pension Benefit Guaranty Corporation and the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America were *ex officio* members of the Committee.

2

objections to the monthly fee statements, the Debtors would be authorized to pay each professional serving such monthly fee statements an amount equal to 80 percent of the fees and 100 percent of the expenses requested in their respective monthly fee statements.

5.    On May 30, 2006, Jefferies filed its first fee application covering the period from October 18, 2005 through January 31, 2006 and seeking compensation in the amount of $604,032.26 and reimbursement of expenses in the amount of $22,677.57.  On February 16, 2007, this Court entered an order approving the first fee application and allowing fees and expenses in the amounts of $600,498.93 and $22,677.57, respectively.

6.    On July 31, 2006, Jefferies filed its second fee application covering the period from February 1, 2006 through May 31, 2006 and seeking compensation in the amount of $700,000.00 and reimbursement of expenses in the amount of $61,446.34.  On February 20, 2007, this Court entered an order approving the second fee application and allowing fees and expenses in the amounts of $696,466.67 and $61,446.34, respectively.

7.    On December 4, 2006, Jefferies filed its third fee application covering the period from June 1, 2006 through September 30, 2006 and seeking compensation in the amount of $700,000.00 and reimbursement of expenses in the amount of $34,333.35.  On February 22, 2007, this Court entered an order approving the third fee application and allowing fees and expenses in the amounts of $696,466.67 and $34,333.35, respectively.

8.    On March 30, 2007, Jefferies filed its fourth fee application covering the period from October 1, 2006 through January 31, 2007 and seeking compensation in the amount of $700,000.00 and reimbursement of expenses in the amount of $14,879.04.  On July 2, 2007, this Court entered an order approving the fourth fee application and allowing fees and expenses in the amounts of $700,000.00 and $9,879.04, respectively.

3

9.      On July 31, 2007, Jefferies filed its fifth fee application covering the period from February 1, 2007 through May 31, 2007 and seeking compensation in the amount of $700,000.00 and reimbursement of expenses in the amount of $4,381.39.  On October 29, 2007, this Court entered an order approving the fifth fee application and allowing fees and expenses in the amounts of $700,000.00 and $3,931.39, respectively.

10.     On November 30, 2007, Jefferies filed its sixth fee application covering the period from June 1, 2007 through September 30, 2007 and seeking compensation in the amount of $700,000.00 and reimbursement of expenses in the amount of $4,893.39.  On February 27, 2008, this Court entered an order approving the sixth fee application and allowing fees and expenses in the amounts of $700,000.00 and $4053.39, respectively.  The first, second, third, fourth, fifth and sixth fee applications filed by Jefferies in these cases are referred to herein as the "Prior Fee Applications."

11.     Pursuant to the Administrative Order, Jefferies served monthly fee statements in these chapter 11 cases for the months of October, 2007, November, 2007, December, 2007 and January 1 through January 25, 2008 (collectively, the "Monthly Statements").  To date, the Debtors have paid to Jefferies $386,695.56 in fees and $8,353.84 in expenses incurred during the period from October 1, 2007 through January 25, 2008 in accordance with the procedures set forth in the Administrative Order.  No interim fee application was filed with respect to this period.

12.     On December 10, 2007, the Debtors filed their First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors And Debtors-In-Possession (the "Initial Plan").  On January 25, 2008 (the "Confirmation Date"), this Court entered an order confirming the Initial Plan (the "Confirmation Order").

4

13.    On July 30, 2009, this Court entered an order approving certain modifications to the Initial Plan embodied in the First Amended Joint Plan of Reorganization of Delphi Corporation And Certain Affiliates, Debtors and Debtors-In-Possession (As Modified) (the "Modified Plan").

14.    On October 6, 2009, (i) the Effective Date (as defined in the Modified Plan) of the Modified Plan occurred, (ii) the Modified Plan was substantially consummated and (iii) the Debtors filed the Notice of (A) Order Approving Modifications to First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-In-Possession and (B) Occurrence of Effective Date (the "Effective Date Notice").  Pursuant to paragraph 9(b) of the Effective Date Notice, all final requests for payment of Professional Claims (as defined in the Modified Plan) and requests for reimbursement of expenses of members of the Statutory Committees (as defined in the Modified Plan) must be filed no later than December 31, 2009.

15.    Pursuant to paragraph 33 of the Confirmation Order and paragraph 9(b) of the Effective Date Notice, any requirement that Professionals comply with sections 327 through 331 of the Bankruptcy Code in seeking compensation for services rendered terminated on the Confirmation Date.  Consequently, since the Confirmation Date, the Debtors have employed and paid Professionals, including Jefferies, in the ordinary course of business without any further notice to, action by or order or approval of the Court or any other party.  As such, this Application does not request compensation or expense reimbursement with respect to services rendered or seek allowance of fees and expenses incurred after January 25, 2008.

16.    By this Application, Jefferies seeks final allowance of compensation and reimbursement of expenses incurred during the Final Compensation Period.

5

17.     The supervisory responsibility for Jefferies' efforts on behalf of the Committee has been undertaken by Thomas C. Carlson.  Mr. Carlson is a managing director in Jefferies' New York office.

### Summary of Services Performed During the Compensation Period

18.     Jefferies has rendered 1,257.1 hours of investment banking services in representation of the Committee during the Final Compensation Period.  Based upon the nature of the services rendered, the time required to provide such services, the value of such services to the Committee and the cost of comparable services in non-bankruptcy cases, Jefferies believes that the allowed compensation for services rendered to the Committee should be not less than $4,759,561.30 for the Final Compensation Period.

### Jefferies' Activities on Behalf of the Committee

19.     Jefferies provided a wide variety of investment banking, financial and restructuring advisory services for the Committee during the Compensation Period.

### Asset Analysis and Recovery

20.     Jefferies' activities in this project area included reviewing financial aspects of dispositions of assets.  As part of the Debtors' proposed "Transformation" plan, several asset sale processes have been implemented.  Jefferies worked closely with Rothschild to evaluate each sale process as well as alternative strategies to ensure value is being maximized to all stakeholders.  For several asset sale processes, the Debtors retained financial advisors other than Rothschild.  For example, for the Catalyst business sale process, the Debtors retained Credit Suisse, a prominent investment banking firm.  In those circumstances, Jefferies coordinated due diligence meetings with those parties.

6

21.     Jefferies reported its findings to the Committee through written and oral

presentations.

**Employee Benefits / Pensions**

22.     During the Compensation Period, the Debtors successfully negotiated new labor

agreements with all of its unions.  In conjunction with completing those agreements, Jefferies

completed a number of analyses reviewing the new labor agreements and subsequent impact on

the estate.  To facilitate these analyses, Jefferies coordinated several due diligence sessions with

the Debtors and its professionals.  Jefferies reported its findings to the Committee through

several written and oral presentations

23.     Separately, Jefferies provided ongoing updates to the Committee regarding status

of the implementation of labor programs and the impact of the Debtors' changing workforce.

**Committee Meetings and Discussions**

24.     During the Compensation Period, the Committee regularly held in-person

meetings, conference calls, and/or email discussions regarding issues relating to the Debtors'

cases.  Jefferies' professionals participated in these discussions, providing recommendations and

advice with respect to a number of business and financial issues, as well as updates on ongoing

dialogue, activities and negotiations with the Debtors.  The primary points of discussion during

this Compensation Period included proposals submitted by Appaloosa and its plan investors,

ongoing asset sales, labor negotiations, and preliminary exit financing concepts.  These meetings

provided a forum for Committee members to exchange ideas and raise questions over matters of

concern to unsecured creditors.  The meetings also provided a forum for Jefferies to

communicate the findings of its various due diligence activities and to update the Committee on

the Debtors' financial performance.  Jefferies also participated in meetings and telephone

conferences with individual Committee members to discuss the status of the Debtors' cases and future steps to be taken during the Chapter 11 process.

**Communications with Non-Committee Creditors**

25.     Throughout the period, Jefferies conducted numerous conversations with the holders of the Debtors' bonds and other unsecured creditors that do not serve on the Committee. Jefferies communicated with these parties on behalf of the Committee with respect to any publicly disclosed developments in these cases and responded to such creditors' concerns and questions.

**Communications with the Debtors, Other Parties-in-Interest and Non-Committee Professionals**

26.     Jefferies' activities in this project area included assisting the Committee in preparing for and participating in meetings and negotiations with the Debtors, Appaloosa and its plan investors, General Motors and other parties-in-interest with respect to the framework agreements.  This project category includes Jefferies' attendance and participation in due diligence and strategy sessions with the Debtors, their advisors, including FTI Consulting, Rothschild, and Skadden, Arps, Slate, Meagher & Flom, and other parties-in-interest.

**Plan and Disclosure Statement Analysis**

27.     On September 6, 2007, the Debtors filed their first Plan of Reorganization and Disclosure Statement (the "Plan") (Docket Nos. 9263 and 9264).  The Plan was filed pursuant to the framework provided by the Delphi-Appaloosa Equity Purchase and Commitment Agreement (the "EPCA") as approved by the Court on August 2, 2007 (Docket No. 8856).  Leading up to the filing of the Plan, Jefferies actively reviewed and provided comments on drafts of the documents.  Jefferies reviewed the documents to assure the deal terms included in the EPCA

8

were correctly addressed.  To the extent Jefferies believed the Plan was not correctly interpreting

the EPCA deal terms, Jefferies would communicate this to the Debtors by way of the other

Committee professionals and Rothschild.

**Business Analysis**

28. Jefferies' activities in this project area included working with the Committee to

understand, evaluate and comment on the Debtors' business plan and providing assistance in

negotiations with the Debtors regarding the EPCA and associated framework analyses.

29. During the Compensation Period, the Debtors completed its business plan for

purposes of including it in the Plan.  In conjunction with Mesirow, Jefferies worked with the

Debtors and its professionals to evaluate and analyze its contents.  The due diligence process

included participation in meetings with the Debtors and its professionals to understand the

assumptions and drivers of the business plan.  These discussions included understanding the

critical components of the business plan and contingency considerations in case certain

assumptions were not realized.  Jefferies considered all of the information collected during due

diligence activities and used such information, as well as proprietary information available

within Jefferies to provide advice to the Committee regarding the Debtors' business plan.

30. Jefferies played an integral role in the development of the framework included in the

Plan and the subsequent modifications made pursuant to the Potential Amendments to the Plan

(Docket No. 10759).  Along with the Committee's representatives, Jefferies participated in

negotiations with the Debtors, Appaloosa and its plan investors, General Motors and other

parties-in -interest with respect to the framework discussions.  These negotiations involved the

use of Jefferies proprietary models to evaluate implications of proposals to unsecured creditors

and the estate.  The expectation of Jefferies throughout these discussions was providing real-time

analyses and guidance with respect to deal terms and impact on unsecured creditors and the

estate. These financial analyses included an evaluation of the Debtors' debt capacity at

emergence, ownership dilution to existing and future shareholders, value transfer among

constituent groups, and recovery sensitivities under a range of assumptions. In addition to

relying on its past experiences negotiating similar types of transactions, Jefferies also evaluated

other types of transactions to provide additional support for its analyses. The outcome of these

negotiating sessions and analyses were communicated to the Committee through a number of

both written and oral presentations. Additionally, to the extent Committee members requested

additional analysis or due diligence, Jefferies provided that information as well.

31. In conjunction with negotiations for the framework supporting the Plan, the Debtors

and its advisors discussed available exit financing alternatives. As part of these discussions,

Jefferies reviewed current financings in the Debt Capital Markets as well as proposals set forth

by the Debtors. These proposals were reviewed in conjunction with the Debtors business plan

and framework discussions.

32. Jefferies also reviewed the Debtors' monthly operating reports ("MOR"), quarterly

and annual financial reports, and any other financial information that was relevant to the

Debtors' operations. Other Jefferies activities included responding to questions by the

Committee regarding specific issues related to the Debtors' financial operations.

**<u>Industry Analysis</u>**

33. In connection with Jefferies' due diligence of the Debtors, Jefferies analyzed financial

and valuation metrics related to the automotive industry. This included reviewing and analyzing

performance metrics, evaluating trading of industry related securities, and analyzing merger and

acquisition transactions within the industry.  Additionally, Jefferies monitored historical and current industry bankruptcy cases.

34. To keep the Committee informed of current industry news, valuation metrics, and other related automotive industry information, Jefferies provided a daily memo detailing current news to the Committee and a weekly report providing valuation metrics for a broad list of automotive companies and other relevant automotive industry performance metrics.

**Case Administration and Fee / Employment Applications**

35. This project also includes the preparation of Jefferies' fee applications, general and administrative tasks such as billing and related communications, as well as other day to day operations that do not fall into other project areas

**Disbursements**

36.     Jefferies expended a total of $144,674.92 for reasonable and necessary expenses in connection with its representation of the Committee during the Final Compensation Period.  In accordance with the Guidelines, Section II of the Cover Sheet attached hereto contains an organized summary of these expenses.[4]

37.     Jefferies does not include a profit component in its disbursements, and charges the Debtors only for actual out-of-pocket expenses.

---

[4] Because Jefferies did not file an interim fee application with respect to the period from October 1, 2007 through January 25, 2008, Section II of the Cover Sheet also contains an organized summary of expenses incurred from October 1, 2007 through January 25, 2008.

## Certification

38.     As required by the Guidelines, attached hereto as Exhibit B is a certification that the facts set forth in this Application are true and correct, and that this Application complies with the Guidelines.

## Jefferies is a Disinterested Person and Holds No Adverse Interest

39.     All professional services and expenses for which allowance is requested in this Application were performed by Jefferies on behalf of the Committee and not on behalf of any other entity or person.  As described in the Affidavit of Thomas C. Carlson of Jefferies & Company, Inc. Pursuant to Sections 329, 504 and 1103 of the Bankruptcy Code and Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (together with subsequent supplemental affidavits, the "Carlson Affidavit") previously filed by Jefferies in these cases: (i)  Jefferies holds neither a claim against, nor an interest in, the Debtors, and has not acquired or transferred any beneficial interest in the Debtors, directly or indirectly, since the commencement of these cases; (ii) Jefferies represents no interest adverse to the Debtors with respect to matters upon which it is engaged and (iii) Jefferies is a "disinterested person" under section 101(14) of the Bankruptcy Code.

40.     No agreement or understanding exists between Jefferies and any other person or entity for the sharing of compensation received or to be received for services rendered in connection with these cases, except that fees will be shared with other partners of Jefferies as permitted by Rule 2016 of the Bankruptcy Rules and section 504 of the Bankruptcy Code.

12

WHEREFORE, Jefferies respectfully requests that this Court enter an order: (i) allowing

on a final basis compensation of professional services rendered during the Final Compensation

Period in the amount of $4,759,561.30 and reimbursement of actual and necessary expenses

incurred by Jefferies during the Final Compensation Period in the amount of $144,674.92 (which

amounts include the fees and expenses requested for the period from October 1, 2007 through

January 25, 2008); (ii) authorizing and directing the Debtors to pay to Jefferies the full amount of

such compensation previously held back pending this Application, and (iii) granting such other

and further relief as is just.

Dated: New York, New York
      December 29, 2009

JEFFERIES & COMPANY, INC.

By: _____
Thomas C. Carlson
520 Madison Avenue, 7th Floor
New York, New York 10022
Telephone:  (212) 284-2045

Investment Banker for the Official Committee
of Unsecured Creditors

State of New York
County of New York

Subscribed and sworn before me this 24th day
of December, 2009 by Thomas C. Carlson

_Patrick Morrow_

PATRICK MORROW
Notary Public, State of New York
No. 01MO6150702
Qualified in New York County
Commission Expires Aug. 7, 2010

**EXHIBIT A-1**

**OCTOBER, 2007 MONTHLY FEE STATEMENT**

**Jefferies & Company, Inc.**
**Summary of Hours Worked**
**October 1, 2007 - October 31, 2007**

| Name | Position | Hours Worked |
|---|---|---|
| Bill Derrough | Managing Director, Recapitalization and Restructuring Group | 55.0 |
| Isaac Lee | Senior Vice President, Recapitalization and Restructuring Group | 74.0 |
| David Groban | Associate, Recapitalization and Restructuring Group | 139.0 |
| Nathan Brawn | Analyst, Recapitalization and Restructuring Group | 79.0 |
| Mark Schellinger | Analyst, Automotive Investment Banking Group | 45.0 |
| | **Total** | **392.0** |

**Jefferies & Company, Inc.**
**Summary of Hours Worked by Category**
**October 2007**

|  | October |
|---|---|
| 1.  Asset Analysis and Recovery | 13.8 |
| 2.  Asset Disposition | - |
| 3.  Business Operations | - |
| 4.  Case Administration | - |
| 5.  Claims Administration and Objections | - |
| 6.  Employee Benefits / Pensions | - |
| 7.  Fee / Employment Applications | 5.0 |
| 8.  Fee / Employment Objections | - |
| 9.  Financing | - |
| 10. Litigation | - |
| 11. Meeting of Creditors | 66.0 |
| 12. Plan and Disclosure Statement | 13.5 |
| 13. Relief from Stay Proceedings | - |
|  |  |
| 15. Accounting / Auditing | - |
| 16. Business Analysis | 247.5 |
| 17. Corporate Finance | - |
| 18. Data Analysis | - |
| 19. Litigation Consulting | - |
| 20. Reconstruction Accounting | - |
| 21. Tax Issues | - |
| 22. Valuation | - |
| 23. Industry Analysis | 46.3 |
| **Total Hours** | **392.0** |

**Jefferies & Company, Inc.**
**Summary of Hours Worked by Category (by Banker)**
**October 2007**

| | Derrough; Bill | Lee; Isaac | Groban; David | Brawn; Nathan | Schellinger; Mark | Total |
|---|---|---|---|---|---|---|
| Asset Analysis and Recovery | - | - | 6.0 | - | 7.8 | 13.8 |
| Asset Disposition | - | - | - | - | - | - |
| Business Operations | - | - | - | - | - | - |
| Case Administration | - | - | - | - | - | - |
| Claims Administration and Objections | - | - | - | - | - | - |
| Employee Benefits / Pensions | - | - | - | - | - | - |
| Fee / Employment Applications | - | - | 1.0 | 4.0 | - | 5.0 |
| Fee / Employment Objections | - | - | - | - | - | - |
| Financing | - | - | - | - | - | - |
| Litigation | - | - | - | - | - | - |
| Meeting of Creditors | 15.0 | 18.0 | 18.0 | 13.0 | 2.0 | 66.0 |
| Plan and Disclosure Statement | - | - | 9.5 | 4.0 | - | 13.5 |
| Relief from Stay Proceedings | - | - | - | - | - | - |
| | | | | | | |
| Accounting / Auditing | - | - | - | - | - | - |
| Business Analysis | 40.0 | 56.0 | 102.0 | 49.5 | - | 247.5 |
| Corporate Finance | - | - | - | - | - | - |
| Data Analysis | - | - | - | - | - | - |
| Litigation Consulting | - | - | - | - | - | - |
| Reconstruction Accounting | - | - | - | - | - | - |
| Tax Issues | - | - | - | - | - | - |
| Valuation | - | - | - | - | - | - |
| Industry Analysis | - | - | 2.5 | 8.5 | 35.3 | 46.3 |
| **Total** | **55.0** | **74.0** | **139.0** | **79.0** | **45.0** | **392.0** |

3

# EXHIBIT A-2

## NOVEMBER, 2007 MONTHLY FEE STATEMENT

### Jefferies & Company, Inc.
### Summary of Hours Worked
### November 1, 2007 - November 30, 2007

| Name | Position | Hours Worked |
|------|----------|-------------:|
| Bill Derrough | Managing Director, Recapitalization and Restructuring Group | 57.8 |
| Isaac Lee | Senior Vice President, Recapitalization and Restructuring Group | 79.3 |
| David Groban | Associate, Recapitalization and Restructuring Group | 137.5 |
| Nathan Brawn | Analyst, Recapitalization and Restructuring Group | 87.8 |
| Mark Schellinger | Analyst, Automotive Investment Banking Group | 48.3 |
| | **Total** | **410.5** |

Other Jefferies professionals who participated but do not keep hours:

| | |
|---|---|
| Judy Kester | Associate General Counsel |
| Robert Ming | Vice President, Legal Department |
| Lloyd Feller | General Counsel |
| Ginna Redding | Co-Director Compliance |
| Stuart Rosenthal | Senior Compliance Manager |
| Rudy Rodriguez | Paralegal |

**Jefferies & Company, Inc.**
**Summary of Hours Worked by Category**
**November 2007**

|  | November |
|---|---|
| 1. Asset Analysis and Recovery | - |
| 2. Asset Disposition | - |
| 3. Business Operations | - |
| 4. Case Administration | - |
| 5. Claims Administration and Objections | - |
| 6. Employee Benefits / Pensions | - |
| 7. Fee / Employment Applications | 8.5 |
| 8. Fee / Employment Objections | - |
| 9. Financing | - |
| 10. Litigation | - |
| 11. Meeting of Creditors | 49.0 |
| 12. Plan and Disclosure Statement | 17.0 |
| 13. Relief from Stay Proceedings | - |
|  |  |
| 15. Accounting / Auditing | - |
| 16. Business Analysis | 298.3 |
| 17. Corporate Finance | - |
| 18. Data Analysis | - |
| 19. Litigation Consulting | - |
| 20. Reconstruction Accounting | - |
| 21. Tax Issues | - |
| 22. Valuation | - |
| 23. Industry Analysis | 37.8 |
| **Total Hours** | **410.5** |

**Jefferies & Company, Inc.**
**Summary of Hours Worked by Category (by Banker)**
**November 2007**

| | Derrough; Bill | Lee; Isaac | Groban; David | Brawn; Nathan | Schellinger; Mark | Total |
|---|---|---|---|---|---|---|
| Asset Analysis and Recovery | - | - | - | - | - | - |
| Asset Disposition | - | - | - | - | - | - |
| Business Operations | - | - | - | - | - | - |
| Case Administration | - | - | - | - | - | - |
| Claims Administration and Objections | - | - | - | - | - | - |
| Employee Benefits / Pensions | - | - | - | - | - | - |
| Fee / Employment Applications | - | - | 4.5 | 4.0 | - | 8.5 |
| Fee / Employment Objections | - | - | - | - | - | - |
| Financing | - | - | - | - | - | - |
| Litigation | - | - | - | - | - | - |
| Meeting of Creditors | 7.0 | 13.0 | 16.0 | 13.0 | - | 49.0 |
| Plan and Disclosure Statement | - | 3.0 | 7.0 | 7.0 | - | 17.0 |
| Relief from Stay Proceedings | - | - | - | - | - | - |
| | | | | | | |
| Accounting / Auditing | - | - | - | - | - | - |
| Business Analysis | 50.8 | 63.3 | 108.0 | 52.3 | 24.0 | 298.3 |
| Corporate Finance | - | - | - | - | - | - |
| Data Analysis | - | - | - | - | - | - |
| Litigation Consulting | - | - | - | - | - | - |
| Reconstruction Accounting | - | - | - | - | - | - |
| Tax Issues | - | - | - | - | - | - |
| Valuation | - | - | - | - | - | - |
| Industry Analysis | - | - | 2.0 | 11.5 | 24.3 | 37.8 |
| **Total** | **57.8** | **79.3** | **137.5** | **87.8** | **48.3** | **410.5** |

# EXHIBIT A-3

## DECEMBER, 2007 MONTHLY FEE STATEMENT

**Jefferies & Company, Inc.**
**Summary of Hours Worked**
**December 1, 2007 - December 31, 2007**

| Name | Position | Hours Worked |
|------|----------|-------------:|
| Bill Derrough | Managing Director, Recapitalization and Restructuring Group | 30.8 |
| Isaac Lee | Senior Vice President, Recapitalization and Restructuring Group | 45.3 |
| David Groban | Associate, Recapitalization and Restructuring Group | 71.0 |
| Nathan Brawn | Analyst, Recapitalization and Restructuring Group | 45.0 |
| Mark Schellinger | Analyst, Automotive Investment Banking Group | 26.8 |
| | **Total** | **218.8** |

4

# Jefferies & Company, Inc.
## Summary of Hours Worked by Category
### December 2007

|     |                                        | December |
| --- | -------------------------------------- | -------- |
| 1.  | Asset Analysis and Recovery            | 37.5     |
| 2.  | Asset Disposition                      | -        |
| 3.  | Business Operations                    | -        |
| 4.  | Case Administration                    | -        |
| 5.  | Claims Administration and Objections   | -        |
| 6.  | Employee Benefits / Pensions           | -        |
| 7.  | Fee / Employment Applications          | 4.5      |
| 8.  | Fee / Employment Objections            | -        |
| 9.  | Financing                              | -        |
| 10. | Litigation                             | -        |
| 11. | Meeting of Creditors                   | 10.0     |
| 12. | Plan and Disclosure Statement          | 21.5     |
| 13. | Relief from Stay Proceedings           | -        |
|     |                                        |          |
| 15. | Accounting / Auditing                  | -        |
| 16. | Business Analysis                      | 123.0    |
| 17. | Corporate Finance                      | -        |
| 18. | Data Analysis                          | -        |
| 19. | Litigation Consulting                  | -        |
| 20. | Reconstruction Accounting              | -        |
| 21. | Tax Issues                             | -        |
| 22. | Valuation                              | -        |
| 23. | Industry Analysis                      | 22.3     |
|     | **Total Hours**                        | **218.8** |

**Jefferies & Company, Inc.**
**Summary of Hours Worked by Category (by Banker)**
**December 2007**

| | Derrough; Bill | Lee; Isaac | Groban; David | Brawn; Nathan | Schellinger; Mark | Total |
|---|---|---|---|---|---|---|
| Asset Analysis and Recovery | - | 2.5 | 23.5 | - | 11.5 | 37.5 |
| Asset Disposition | - | - | - | - | - | - |
| Business Operations | - | - | - | - | - | - |
| Case Administration | - | - | - | - | - | - |
| Claims Administration and Objections | - | - | - | - | - | - |
| Employee Benefits / Pensions | - | - | - | - | - | - |
| Fee / Employment Applications | - | - | 1.0 | 3.5 | - | 4.5 |
| Fee / Employment Objections | - | - | - | - | - | - |
| Financing | - | - | - | - | - | - |
| Litigation | - | - | - | - | - | - |
| Meeting of Creditors | 2.5 | 2.5 | 2.5 | 2.5 | - | 10.0 |
| Plan and Disclosure Statement | - | 2.5 | 5.5 | 13.5 | - | 21.5 |
| Relief from Stay Proceedings | - | - | - | - | - | - |
| | | | | | | |
| Accounting / Auditing | - | - | - | - | - | - |
| Business Analysis | 28.3 | 37.8 | 37.0 | 17.5 | 2.5 | 123.0 |
| Corporate Finance | - | - | - | - | - | - |
| Data Analysis | - | - | - | - | - | - |
| Litigation Consulting | - | - | - | - | - | - |
| Reconstruction Accounting | - | - | - | - | - | - |
| Tax Issues | - | - | - | - | - | - |
| Valuation | - | - | - | - | - | - |
| Industry Analysis | - | - | 1.5 | 8.0 | 12.8 | 22.3 |
| **Total** | **30.8** | **45.3** | **71.0** | **45.0** | **26.8** | **218.8** |

# EXHIBIT A-4

## JANUARY, 2008 MONTHLY FEE STATEMENT

**Jefferies & Company, Inc.**
**Summary of Hours Worked**
**January 1, 2008 - January 25, 2008**

| Name | Position | Hours Worked |
|------|----------|-------------:|
| Bill Derrough | Managing Director, Recapitalization and Restructuring Group | 32.3 |
| Isaac Lee | Senior Vice President, Recapitalization and Restructuring Group | 52.5 |
| David Groban | Associate, Recapitalization and Restructuring Group | 44.0 |
| Nathan Brawn | Analyst, Recapitalization and Restructuring Group | 41.8 |
| Mark Schellinger | Analyst, Automotive Investment Banking Group | 65.3 |
| | **Total** | **235.8** |

# Jefferies & Company, Inc.
## Summary of Hours Worked by Category
## January 2008

|  | January |
|---|---|
| 1. Asset Analysis and Recovery | 36.3 |
| 2. Asset Disposition | - |
| 3. Business Operations | - |
| 4. Case Administration | - |
| 5. Claims Administration and Objections | - |
| 6. Employee Benefits / Pensions | - |
| 7. Fee / Employment Applications | - |
| 8. Fee / Employment Objections | - |
| 9. Financing | - |
| 10. Litigation | - |
| 11. Meeting of Creditors | 36.0 |
| 12. Plan and Disclosure Statement | 46.0 |
| 13. Relief from Stay Proceedings | - |
|  |  |
| 15. Accounting / Auditing | - |
| 16. Business Analysis | 87.3 |
| 17. Corporate Finance | - |
| 18. Data Analysis | - |
| 19. Litigation Consulting | - |
| 20. Reconstruction Accounting | - |
| 21. Tax Issues | - |
| 22. Valuation | - |
| 23. Industry Analysis | 30.3 |
| **Total Hours** | **235.8** |

**Jefferies & Company, Inc.**
**Summary of Hours Worked by Category (by Banker)**
**January 2008**

| | Derrough; Bill | Lee; Isaac | Groban; David | Brawn; Nathan | Schellinger; Mark | Total |
|---|---|---|---|---|---|---|
| Asset Analysis and Recovery | - | - | 15.5 | 6.5 | 14.3 | 36.3 |
| Asset Disposition | - | - | - | - | - | - |
| Business Operations | - | - | - | - | - | - |
| Case Administration | - | - | - | - | - | - |
| Claims Administration and Objections | - | - | - | - | - | - |
| Employee Benefits / Pensions | - | - | - | - | - | - |
| Fee / Employment Applications | - | - | - | - | - | - |
| Fee / Employment Objections | - | - | - | - | - | - |
| Financing | - | - | - | - | - | - |
| Litigation | - | - | - | - | - | - |
| Meeting of Creditors | 9.0 | 9.0 | 9.0 | 2.5 | 6.5 | 36.0 |
| Plan and Disclosure Statement | - | 19.0 | - | 13.0 | 14.0 | 46.0 |
| Relief from Stay Proceedings | - | - | - | - | - | - |
| | | | | | | |
| Accounting / Auditing | - | - | - | - | - | - |
| Business Analysis | 23.3 | 24.5 | 19.5 | 7.0 | 13.0 | 87.3 |
| Corporate Finance | - | - | - | - | - | - |
| Data Analysis | - | - | - | - | - | - |
| Litigation Consulting | - | - | - | - | - | - |
| Reconstruction Accounting | - | - | - | - | - | - |
| Tax Issues | - | - | - | - | - | - |
| Valuation | - | - | - | - | - | - |
| Industry Analysis | - | - | - | 12.8 | 17.5 | 30.3 |
| **Total** | **32.3** | **52.5** | **44.0** | **41.8** | **65.3** | **235.8** |

# EXHIBIT B


# CERTIFICATION IN SUPPORT OF FEE APPLICATION

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
_____

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| DELPHI CORPORATION, <u>et al.</u>, | ) | Case No. 05-44481 (RDD) |
| | ) | |
| Debtors. | ) | |
| | ) | Jointly Administered |
| _____ | ) | |

### CERTIFICATION WITH RESPECT TO FINAL APPLICATION OF JEFFERIES & COMPANY, INC. FOR ALLOWANCE AND PAYMENT OF COMPENSATION AND REIMBURSEMENT OF EXPENSES AS INVESTMENT BANKER TO THE <u>OFFICIAL COMMITTEE OF UNSECURED CREDITORS</u>

Thomas C. Carlson, a managing director at Jefferies & Company, Inc. ("<u>Jefferies</u>") as investment banker to the Official Committee of Unsecured Creditors (the "<u>Committee</u>") appointed in the chapter 11 cases of Delphi Corporation and its debtor affiliates (the "<u>Debtors</u>"), in compliance with the Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases adopted by the Court on April 19, 1995 (the "<u>Local Guidelines</u>") and the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330, adopted on January 30, 1996 (the "<u>UST Guidelines</u>," and, collectively with the Local Guidelines, the "<u>Guidelines</u>"), hereby certifies as follows:

1.    I have reviewed the Final Fee and Expense Application of Jefferies & Company, Inc. as Investment Banker to the Official Committee of Unsecured Creditors, dated December __, 2009 (the "<u>Application</u>"),[6] for the period from October 18, 2005 through January 25, 2008 (the

---

[6] Capitalized terms used but not otherwise defined herein shall have those meanings ascribed to them in the Application.

"<u>Final Compensation Period</u>") which seeks approval of certain fees and expenses incurred by Jefferies as investment banker to the Committee in connection with the above captioned chapter 11 cases.

As required by Section B. 1 of the Local Guidelines, I certify that:

(a)        I have read the Application;

(b)        to the best of my knowledge, information, and belief formed after reasonable inquiry, the fees and disbursements sought in the Application fall within the Local Guidelines;

(c)        the fees and disbursements sought are charged in accordance with practices customarily employed by Jefferies and generally accepted by Jefferies's clients; and

(d)        in providing a reimbursable service, Jefferies does not make a profit on that service, whether the service is performed by Jefferies in-house or through a third party.

2.        As required by Section B. 2 of the Local Guidelines, to the best of my knowledge, all of Jefferies's Monthly Statements for the months of October, 2007, November, 2007, December, 2007 and January 1 through January 25, 2008 were sent to members of the Committee, the Debtors and the Office of the United States Trustee for the Southern District of New York, among others, not later than 20 days after the end of the month to which each Monthly Statement applied.

3.        As required by Section B. 3 of the Local Guidelines, I certify that the members of the Committee, the Debtors and the Office of the United States Trustee for the Southern District of New York, among others, will each be provided with a copy of the Application at least ten days in advance of the hearing to consider the Application.

2

I certify the foregoing to be true and correct.

Dated: December 29, 2009
New York, New York

Thomas C. Carlson

Sworn to before me this
29th day of December 2009

PATRICK MORROW
Notary Public, State of New York
No. 01MO6150702
Qualified in New York County
Commission Expires Aug. 7, 2010

3