UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- x
                                         :
In re:                                   :        Chapter 11
                                         :
DELPHI CORPORATION, et al.,              :        Case No. 05-44481 (RDD)
                                         :
          Debtors.                       :        (Jointly Administered)
                                         :
---------------------------------------------------------------- x

**SUMMARY SHEET FOR SEVENTH INTERIM AND FINAL APPLICATION OF KPMG LLP, AS TAX AND TRANSACTION SERVICES ADVISORS AND ADVISORY AND VALUATION SERVICES ADVISORS FOR THE DEBTORS, FOR ENTRY OF AN ORDER (I) ALLOWING COMPENSATION FOR PROFESSIONAL SERVICES RENDERED AND REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES INCURRED FROM OCTOBER 1, 2007 THROUGH JANUARY 25, 2008 AND ALL SUBSEQUENT MONTHLY PERIODS THROUGH THE EFFECTIVE DATE OF OCTOBER 6, 2009; (II) ALLOWING COMPENSATION FOR PROFESSIONAL SERVICES RENDERED AND REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES INCURRED FROM OCTOBER 8, 2005 THROUGH OCTOBER 6, 2009; (III) AUTHORIZING AND DIRECTING THE DEBTORS TO RELEASE PRIOR HOLDBACK AMOUNTS; AND (IV) AUTHORIZING AND DIRECTING THE DEBTORS TO PAY ALL UNPAID FEES AND EXPENSES**

| | |
|---|---|
| **NAME OF APPLICANT:** | KPMG LLP |
| **ROLE IN THE CASE:** | Tax and Transaction Services Advisors and Advisory and Valuation Services Advisors to the Debtors |
| **PERIOD FOR WHICH INTERIM COMPENSATION SOUGHT:** | October 1, 2007 through October 6, 2009 |
| **CURRENT INTERIM APPLICATION:** | Fees Requested:  $7,670,101.45  (Oct. 1, 2007 - Jan. 25, 2008)<br>$13,131,728.98  (Jan. 26, 2008 - Oct. 6, 2009)<br>$20,801,830.43  (Total)<br>Expenses Requested: $796,230.29    (Oct. 1, 2007 - Jan. 25, 2008)<br>$1,196,219.81    (Jan. 26, 2008 - Oct. 6, 2009)<br>$1,992,450.10    (Total) |
| **NUMBER OF HOURS OF SERVICES RENDERED DURING INTERIM PERIOD** | 41,946.9 |

| **PERIOD FOR WHICH FINAL COMPENSATION SOUGHT:** | October 8, 2005 through and including October 6, 2009 |
|---|---|
| **FINAL APPLICATION:** | Total Fees Requested (discounted/adjusted): $52,000,509.44 |
| | Total Expenses Requested:                 $4,774,859.76 |
| **NUMBER OF HOURS OF SERVICES RENDERED DURING FINAL PERIOD** | 135,089.2 |
| **THIS APPLICATION IS** | _X_  Interim   _X___  Final |

## INTERIM COMPENSATION PREVIOUSLY REQUESTED

| Date / Docket No. | Interim Period | Requested | | | Payments | | Outstanding Amount |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | | Requested Fees | Requested Expenses | Total Requested | Fees Approved and Paid to Date | Expenses Approved and Paid to Date | |
| 04-28-06 / 3507 | 1st | $1,439,122.50 | $17,631.00 | $1,456,753.50 | $1,439,122.50 | $17,631.00 | $0.00 |
| 08-06-06 / 4863 | 2nd | $7,383,043.00 | $430,790.04 | $7,813,833.04 | $7,383,043.00 | $430,790.04 | $0.00 |
| 11-30-06 / 6000 | 3rd | $1,969,703.80 | $176,339.61 | $2,146,043.41 | $1,694,703.80[1] | $176,339.61 | $0.00 |
| 04-02-07 / 7533 | 4th | $2,994,667.15 | $265,285.42 | $3,259,952.57 | $2,938,564.15 | $265,285.42 | $0.00 |
| 07-31-07 / 8815 | 5th | $13,751,307.25 | $1,023,285.08 | $14,774,592.33 | $13,601,307.25 | $1,016,485.08 | $0.00 |
| 11-30-07 / 11190 | 6th | $4,327,419.31 | $875,878.51 | $5,203,297.82 | $4,141,938.31 | $875,878.51 | $0.00 |
| | Totals | $31,865,263.01 | $2,789,209.66 | $34,654,472.67 | $31,198,679.01 | $2,782,409.66 | $0.00 |

---

[1] After taking a voluntary reduction of $275,000.00 in fees, KPMG has been paid $10,516,869.30 in compensation for professional services rendered and $624,760.65 for reimbursement of expenses for the First, Second and Third Interim Fee Periods.

Period for which Seventh Interim Compensation and Reimbursement is sought:

**October 1, 2007 through January 25, 2008 and all subsequent monthly periods through the effective date of October 6, 2009 ("Seventh Interim Period")**

Period for which Final Allowance of Compensation and Reimbursement is sought:

**October 8, 2005 through October 6, 2009
(the "Final Period")**

| | |
|---|---|
| Seventh Interim Period Compensation Incurred: | $20,956,830.43 |
| Seventh Interim Period Compensation Requested: | $20,801,830.43 |
| Final Period Compensation Incurred: | $52,822,093.44 |
| Final Period Compensation Requested: | $52,000,509.44 |
| Seventh Interim Period Expenses Incurred: | $1,992,450.10 |
| Seventh Interim Period Expenses Requested: | $1,992,450.10 |
| Final Period Expenses Incurred: | $4,781,659.76 |
| Final Period Expenses Requested: | $4,774,859.76 |
| Total Seventh Interim Period Application Amount: | $22,794,280.53 |
| Total Final Period Application Amount: | $56,775,369.20 |

**Summary of Hours and Discounted Fees Incurred By Professional**
**October 1, 2007 through October 6, 2009[2]**

| Name of Professional Person | Position | Hourly Billing Rate | Total Billed Hours | Total Compensation |
|---|---|---|---|---|
| Stoffregen, Philip A. | Partner | $665 | 13.0 | $ 8,645.00 |
| Forsythe, Duncan M. | Partner | $648 | 2.5 | $ 1,618.75 |
| Khan, Adil | Partner | $600 | 24.9 | $ 14,940.00 |
| Voigt, Kevin P. | Partner | $566 | 6.0 | $ 3,396.00 |
| Heckler, Brian | Partner | $525 | 16.8 | $ 8,820.00 |
| Silberg, Gary | Partner | $525 | 69.5 | $ 36,487.50 |
| Steciak, William | Partner | $525 | 11.2 | $ 5,880.00 |
| Gabriel, Kenneth S | Partner | $525 | 57.0 | $ 29,925.00 |
| Khan, Adil | Partner | $525 | 14.0 | $ 7,350.00 |
| Musur, Robert | Partner | $500 | 50.6 | $ 25,300.00 |
| Gary, Daniel | Partner | $500 | 46.0 | $ 23,000.00 |
| Smith, Andrew W | Partner | $500 | 0.8 | $ 400.00 |
| Heckler, Brian | Partner | $500 | 52.0 | $ 26,000.00 |
| Forsythe, Duncan M. | Partner | $500 | 8.3 | $ 4,150.00 |
| Bascom, Kimber | Partner | $500 | 1.0 | $ 500.00 |
| Kempke, Darin | Partner | $500 | 8.4 | $ 4,200.00 |
| Lamm, Jordan | Partner | $500 | 12.5 | $ 6,250.00 |
| Steciak, William | Partner | $500 | 5.0 | $ 2,500.00 |
| Curran, John D | Partner | $500 | 0.5 | $ 250.00 |
| Smith, Andrew W. | Partner | $500 | 33.0 | $ 16,500.00 |
| Voigt, Kevin P. | Partner | $500 | 24.6 | $ 12,300.00 |
| Orlando, Joseph | Partner | $480 | 496.3 | $ 238,224.00 |
| Forsythe, Duncan M. | Partner | $480 | 4.0 | $ 1,920.00 |
| Juran, Kevin A. | Partner | $480 | 2.2 | $ 1,056.00 |
| Stoffregen, Philip A. | Partner | $480 | 48.0 | $ 23,040.00 |
| Zywan, Darin A. | Partner | $480 | 5.0 | $ 2,400.00 |
| Vangyia, Karen | Partner | $300 | 5.0 | $ 1,500.00 |
| Voigt, Kevin P. | Managing Director | $566 | 3.1 | $ 1,754.60 |
| Laures, Paul | Managing Director | $500 | 218.0 | $ 109,000.00 |
| Harmening, Thomas C. | Managing Director | $500 | 77.6 | $ 38,800.00 |
| Voigt, Kevin P. | Managing Director | $500 | 484.9 | $ 242,475.00 |
| McNamara, Neal | Managing Director | $500 | 5.4 | $ 2,700.00 |

[2] Out of an abundance of caution, KPMG is requesting allowance of compensation for professional services rendered to the Debtors and reimbursement of actual and necessary expenses through October 6, 2009, the effective date of the Plan.

| Name of Professional Person | Position | Hourly Billing Rate | Total Billed Hours | Total Compensation |
|---|---|---|---|---|
| Schroeder, Christopher M | Managing Director | $500 | 48.9 | $ 24,450.00 |
| Dailey, Bill | Managing Director | $465 | 61.4 | $ 28,551.00 |
| Gorski, Thomas | Managing Director | $465 | 763.2 | $ 354,888.00 |
| Steciak, William | Managing Director | $465 | 8.8 | $ 4,092.00 |
| Yong,Doyoung | Managing Director | $455 | 87.5 | $ 39,812.50 |
| McNamara, Neal | Managing Director | $440 | 18.7 | $ 8,228.00 |
| Voigt, Kevin P. | Managing Director | $425 | 2.3 | $ 977.50 |
| Laures, Paul | Managing Director | $395 | 31.5 | $ 12,442.50 |
| Nagvanshi, Manpreet | Director | $465 | 698.0 | $ 324,570.00 |
| Wells, Nathan | Director | $465 | 483.0 | $ 224,595.00 |
| McNamara, Neal | Director | $465 | 34.0 | $ 15,810.00 |
| Hori, David | Director | $465 | 61.6 | $ 28,644.00 |
| Basu, Sanjay | Director | $465 | 144.0 | $ 66,960.00 |
| Peterson, Todd D | Director | $465 | 22.2 | $ 10,323.00 |
| Champion, Jon | Director | $450 | 112.8 | $ 50,760.00 |
| McNamara, Neal | Director | $440 | 554.0 | $ 243,760.00 |
| Mulligan, Michael | Director | $440 | 296.9 | $ 130,636.00 |
| Wollmeringer, Peter | Director | $440 | 1.8 | $ 792.00 |
| Nikiforova,Vesselina Petkova | Director | $440 | 44.4 | $ 19,536.00 |
| Pittman, John | Director | $440 | 40.7 | $ 17,908.00 |
| Ryan,Daniel | Director | $440 | 69.9 | $ 30,756.00 |
| Champion, Jon | Director | $435 | 678.4 | $ 295,104.00 |
| Yong,Doyoung | Director | $396 | 3.5 | $ 1,386.00 |
| Shulman, Laurence | Director | $396 | 7.8 | $ 3,088.80 |
| Mulligan, Michael | Director | $395 | 526.5 | $ 207,967.50 |
| Schroeder, Christopher M | Director | $375 | 10.0 | $ 3,750.00 |
| Doughty, Anthony | Senior Manager | $490 | 48.6 | $ 23,814.00 |
| Avichai, Samuel | Senior Manager | $465 | 2.0 | $ 930.00 |
| Francis,Benedict | Senior Manager | $455 | 8.5 | $ 3,867.50 |
| Friedman,Steven Marc | Senior Manager | $455 | 4.0 | $ 1,820.00 |
| Bradford, Davis | Senior Manager | $450 | 892.6 | $ 401,670.00 |
| Ricafort, Michael | Senior Manager | $450 | 166.0 | $ 74,700.00 |
| Samuel, Ari | Senior Manager | $440 | 0.5 | $ 220.00 |
| Homant, Bradley | Senior Manager | $440 | 3.0 | $ 1,320.00 |
| Loy,Jason A | Senior Manager | $440 | 458.0 | $ 201,520.00 |
| Schroeder, Christopher M | Senior Manager | $440 | 841.7 | $ 370,348.00 |
| Avichai, Samuel | Senior Manager | $440 | 2.0 | $ 880.00 |
| Frucci,Jay M. | Senior Manager | $440 | 17.6 | $ 7,744.00 |

| Name of Professional Person | Position | Hourly Billing Rate | Total Billed Hours | Total Compensation |
|---|---|---|---|---|
| Janssen, James | Senior Manager | $440 | 30.5 | $ 13,420.00 |
| Miller, Vivian | Senior Manager | $440 | 68.0 | $ 29,920.00 |
| Sliva, John A | Senior Manager | $440 | 215.5 | $ 94,820.00 |
| Doughty, Anthony | Senior Manager | $440 | 13.6 | $ 5,984.00 |
| Frucci, Jay M. | Senior Manager | $395 | 86.1 | $ 34,009.50 |
| Miller, Vivian | Senior Manager | $395 | 188.0 | $ 74,279.75 |
| Sliva, John A | Senior Manager | $395 | 22.0 | $ 8,690.00 |
| Courrier, Danielle | Senior Manager | $368 | 5.0 | $ 1,837.50 |
| Gewirtz, Andrew R. | Senior Manager | $368 | 5.0 | $ 1,837.50 |
| Lodes, Teresa | Senior Manager | $368 | 1.2 | $ 441.00 |
| Sinaikin, Stephanie | Manager | $455 | 5.0 | $ 2,275.00 |
| Hai, Doron | Manager | $435 | 93.0 | $ 40,455.00 |
| Ricafort, Michael | Manager | $435 | 811.8 | $ 353,133.00 |
| Muldoon, Charles | Manager | $435 | 1,074.2 | $ 467,277.00 |
| McStravick, Mark | Manager | $435 | 1,129.8 | $ 491,463.00 |
| Duffy, Kevin | Manager | $435 | 998.3 | $ 434,260.50 |
| Tetrault, Paul | Manager | $435 | 444.0 | $ 193,140.00 |
| Novoa, Chris | Manager | $435 | 6.0 | $ 2,610.00 |
| Wilson, Bill | Manager | $435 | 723.0 | $ 314,505.00 |
| Palmeri, Robert | Manager | $435 | 292.0 | $ 127,020.00 |
| De Rechter, Remco | Manager | $425 | 159.8 | $ 67,915.00 |
| Wilson, Brian A | Manager | $425 | 31.9 | $ 13,557.50 |
| Lang, Timothy E. | Manager | $400 | 4.0 | $ 1,600.00 |
| Sellers, Monica | Manager | $400 | 249.7 | $ 99,880.00 |
| Kielkucki, Cynthia | Manager | $400 | 104.0 | $ 41,600.00 |
| Hai, Doron | Manager | $400 | 741.2 | $ 296,484.00 |
| Peczkowski, Bart | Manager | $400 | 380.2 | $ 152,080.00 |
| Harris, Patrick | Manager | $400 | 317.5 | $ 127,000.00 |
| Sobczak, Donald D | Manager | $400 | 180.5 | $ 72,200.00 |
| Brauher, James | Manager | $400 | 302.0 | $ 120,800.00 |
| Klacking, Donald | Manager | $400 | 13.1 | $ 5,240.00 |
| Pittman, John | Manager | $360 | 869.3 | $ 312,948.00 |
| Jacobson, Scott | Manager | $360 | 75.9 | $ 27,324.00 |
| Kielkucki, Cynthia | Manager | $360 | 912.0 | $ 328,320.00 |
| Markos, Abedi | Manager | $360 | 40.0 | $ 14,400.00 |
| Waibel, Kirk | Manager | $360 | 40.0 | $ 14,400.00 |
| Bunnell, Brian | Manager | $360 | 477.3 | $ 171,828.00 |
| Novoa, Chris | Manager | $360 | 63.0 | $ 22,680.00 |

| Name of Professional Person | Position | Hourly Billing Rate | Total Billed Hours | Total Compensation |
|---|---|---|---|---|
| Rivera, Roberto | Manager | $360 | 57.6 | $ 20,736.00 |
| Caffrey,Ryan A. | Manager | $360 | 92.6 | $ 33,336.00 |
| Elder,Michael D | Manager | $360 | 125.8 | $ 45,288.00 |
| Nielsen,James M. | Manager | $360 | 46.0 | $ 16,560.00 |
| Nizhnikov, Alexander | Manager | $360 | 17.5 | $ 6,300.00 |
| Wildermuth, Corinna | Manager | $360 | 0.6 | $ 216.00 |
| Niekro, Ronald | Manager | $315 | 95.5 | $ 30,082.50 |
| Courrier,Danielle | Manager | $298 | 3.0 | $ 894.00 |
| Courrier,Danielle | Manager | $280 | 9.0 | $ 2,520.00 |
| Sarsfield,Robert P | Manager | $280 | 14.0 | $ 3,920.00 |
| McPherson, Jean M | Manager | $235 | 12.0 | $ 2,820.00 |
| Hopkins, Victoria | Senior Associate | $300 | 617.7 | $ 185,310.00 |
| Wachter, Ryan | Senior Associate | $300 | 1,120.9 | $ 336,270.00 |
| Chemng'orem,Patrick | Senior Associate | $300 | 560.7 | $ 168,210.00 |
| Lotysz,Joseph M | Senior Associate | $300 | 32.4 | $ 9,720.00 |
| Ly, David | Senior Associate | $300 | 654.0 | $ 196,200.00 |
| Thomas,Joshua A. | Senior Associate | $300 | 61.0 | $ 18,300.00 |
| Fisher, Warren | Senior Associate | $300 | 907.8 | $ 272,340.00 |
| Gheware, Ashish G | Senior Associate | $300 | 323.0 | $ 96,900.00 |
| Agrawal, Alok | Senior Associate | $300 | 390.0 | $ 117,000.00 |
| Cheema, Prabkirat S | Senior Associate | $300 | 318.5 | $ 95,550.00 |
| Du, Jing | Senior Associate | $300 | 352.0 | $ 105,600.00 |
| Hall, Keith | Senior Associate | $300 | 1.0 | $ 300.00 |
| Rivera, Rodrigo Estrada | Senior Associate | $300 | 128.0 | $ 38,400.00 |
| Sledge, Robert | Senior Associate | $300 | 39.9 | $ 11,970.00 |
| Stone, Erica | Senior Associate | $300 | 47.5 | $ 14,250.00 |
| Mordini, Richard | Senior Associate | $250 | 855.6 | $ 213,900.00 |
| Holloway, Shontai | Senior Associate | $250 | 124.1 | $ 31,025.00 |
| Elder,Michael D | Senior Associate | $250 | 221.1 | $ 55,275.00 |
| Nizhnikov, Alexander | Senior Associate | $250 | 90.0 | $ 22,500.00 |
| Sadagopan, Ragu | Senior Associate | $250 | 16.5 | $ 4,125.00 |
| Du, Jing | Senior Associate | $250 | 105.4 | $ 26,350.00 |
| Guth,Anthony D. | Senior Associate | $250 | 282.5 | $ 70,625.00 |
| Duan, Lei | Senior Associate | $250 | 30.0 | $ 7,500.00 |
| Macapagal, Catherine | Senior Associate | $250 | 20.8 | $ 5,200.00 |
| Sorrenti, Joseph | Senior Associate | $250 | 234.8 | $ 58,700.00 |
| Jones, David | Senior Associate | $250 | 22.5 | $ 5,625.00 |
| Lovoy, Steve | Senior Associate | $250 | 245.7 | $ 61,425.00 |

| Name of Professional Person | Position | Hourly Billing Rate | Total Billed Hours | Total Compensation |
|---|---|---|---|---|
| Thomas,Joshua A. | Senior Associate | $250 | 69.0 | $ 17,250.00 |
| Barry,James F. | Senior Associate | $250 | 1.0 | $ 250.00 |
| Brennan,Kevin | Senior Associate | $250 | 46.5 | $ 11,625.00 |
| Caffrey,Ryan A. | Senior Associate | $250 | 25.8 | $ 6,450.00 |
| Jain,Ankur | Senior Associate | $250 | 99.0 | $ 24,750.00 |
| Mutemba,Muposeni K. | Senior Associate | $250 | 132.5 | $ 33,125.00 |
| Riyanto,Michael | Senior Associate | $250 | 95.6 | $ 23,900.00 |
| Sawica, Patrick | Senior Associate | $250 | 121.8 | $ 30,450.00 |
| Sheode, Janhavi | Senior Associate | $250 | 144.0 | $ 36,000.00 |
| Tatum, Pamela | Senior Associate | $250 | 16.0 | $ 4,000.00 |
| Taylor, Jeremy | Senior Associate | $250 | 41.4 | $ 10,350.00 |
| Thomas, Josh | Senior Associate | $250 | 32.0 | $ 8,000.00 |
| Wilkinson,Augustine J. | Senior Associate | $250 | 41.0 | $ 10,250.00 |
| Parikh, Nihar | Senior Associate | $238 | 26.5 | $ 6,307.00 |
| Beaudry, Dave | Senior Associate | $238 | 5.0 | $ 1,190.00 |
| Gorzkowski,Bogumila | Senior Associate | $228 | 21.1 | $ 4,800.25 |
| Murray,Jennifer A | Senior Associate | $228 | 22.8 | $ 5,187.00 |
| Okabe,Tomonori | Senior Associate | $228 | 43.5 | $ 9,896.25 |
| Sinniah, Dinesh | Senior Associate | $228 | 0.8 | $ 182.00 |
| Stidham, Jeff | Senior Associate | $228 | 15.4 | $ 3,503.50 |
| Woods,Tonya | Senior Associate | $228 | 7.3 | $ 1,660.75 |
| Jones, David | Senior Associate | $225 | 143.5 | $ 32,287.50 |
| Mordini, Richard | Senior Associate | $225 | 23.0 | $ 5,175.00 |
| Yan, Jay | Senior Associate | $225 | 6.5 | $ 1,462.50 |
| Jobe, Amanda | Senior Associate | $165 | 145.5 | $ 24,007.50 |
| Wirekoa-Fobena, Veronica | Senior Associate | $165 | 40.5 | $ 6,682.50 |
| Hren,Evelyn | Associate | $245 | 1,022.4 | $ 250,488.00 |
| Jatwani,Sundeep Prakash | Associate | $245 | 634.9 | $ 155,550.50 |
| Zhu,Jiang | Associate | $245 | 642.5 | $ 157,412.50 |
| Mutuku,James Sila | Associate | $245 | 421.7 | $ 103,316.50 |
| Bair,Melinda K. | Associate | $228 | 1.5 | $ 341.25 |
| Woolf,Jais Michael | Associate | $228 | 1.3 | $ 295.75 |
| Tatum, Pamela | Associate | $200 | 1,672.9 | $ 334,580.00 |
| Campbell, Celeste H. | Associate | $200 | 84.7 | $ 16,940.00 |
| Shaffer,Wendy | Associate | $200 | 454.3 | $ 90,860.00 |
| Gwinn, Cameron | Associate | $200 | 591.5 | $ 118,300.00 |
| Smith, Elizabeth | Associate | $200 | 582.6 | $ 116,520.00 |

| Name of Professional Person | Position | Hourly Billing Rate | Total Billed Hours | Total Compensation |
|---|---|---|---|---|
| Sawica, Patrick | Associate | $200 | 94.4 | $ 18,880.00 |
| Du, Jing | Associate | $200 | 279.3 | $ 55,860.00 |
| Chi, Alyssa | Associate | $200 | 56.0 | $ 11,200.00 |
| Hirchak, James D. | Associate | $200 | 10.2 | $ 2,040.00 |
| Howell, Barbara | Associate | $200 | 4.0 | $ 800.00 |
| Jain, Ankur | Associate | $200 | 61.0 | $ 12,200.00 |
| Levine, Clifton | Associate | $200 | 2.6 | $ 520.00 |
| McGrath, Pat | Associate | $200 | 7.7 | $ 1,540.00 |
| Notton, Michael J. | Associate | $200 | 0.5 | $ 100.00 |
| Talsma, Tiffany | Associate | $200 | 197.0 | $ 39,400.00 |
| Akal, Saadiq | Associate | $195 | 472.9 | $ 92,215.50 |
| Wong, Wei | Associate | $195 | 572.9 | $ 111,715.50 |
| Malek, Nir | Associate | $195 | 588.0 | $ 114,660.00 |
| Patel, Pareen | Associate | $195 | 195.0 | $ 38,025.00 |
| Ghazali, Kashif H | Associate | $193 | 8.5 | $ 1,636.25 |
| Petrov, Petar K | Associate | $193 | 2.5 | $ 481.25 |
| Siebert, Thomas A | Associate | $165 | 640.8 | $ 105,732.00 |
| Sona, Edward | Associate | $165 | 3.0 | $ 495.00 |
| Sawica, Patrick | Associate | $165 | 763.2 | $ 125,928.00 |
| Mutemba, Muposeni K. | Associate | $165 | 537.0 | $ 88,605.00 |
| Schippers, Jorge | Associate | $165 | 114.6 | $ 18,909.00 |
| Toney, Sjar | Associate | $165 | 66.7 | $ 11,005.50 |
| Whipple, Sara | Associate | $165 | 61.5 | $ 10,147.50 |
| Doshi, Shivani | Associate | $165 | 5.0 | $ 825.00 |
| Jain, Ankur | Associate | $165 | 80.9 | $ 13,356.75 |
| Mitchell, Jason | Associate | $165 | 7.4 | $ 1,221.00 |
| Pollard, Jennifer | Associate | $165 | 87.1 | $ 14,371.50 |
| Riyanto, Michael | Associate | $165 | 38.7 | $ 6,385.50 |
| Scavuzzo, Joseph | Associate | $165 | 34.1 | $ 5,626.50 |
| Smith, Elizabeth | Associate | $165 | 114.6 | $ 18,909.00 |
| Rodin, Lindsay | Associate | $150 | 39.6 | $ 5,940.00 |
| Pfannenstiel, Paige | Associate | $100 | 114.0 | $ 11,400.00 |
| Stiltner, Janet | Paraprofessional | $100 | 203.5 | $ 20,350.00 |
| Garza, Juanita F | Paraprofessional | $100 | 359.7 | $ 35,970.00 |
| Shah, Ronak | Paraprofessional | $100 | 77.5 | $ 7,750.00 |
| Sona, Edward | Paraprofessional | $100 | 2.0 | $ 200.00 |
| Greene, Brittany Lasette | Paraprofessional | $100 | 52.2 | $ 5,220.00 |
| Total Hours and Fees | | | 41,946.9 | $ 13,785,746.90 |

*TAX - International Executive Services*

| | No. of Employees | Mthly Calculat-ions | Tax Returns | Pay-ments At Host | Monthly Mexican Taxes | Recon-ciliation Fee | Amend-ed Returns | Cost Estimat-es | Total Compensation |
|---|---|---|---|---|---|---|---|---|---|
| Non-US Expatriates | 7 | | $875 | | | | | | $6,125.00 |
| Non-US Expatriates | 2 | | | | | | $800.00 | | $1,600.00 |
| Non-US Expatriates | 579 | | | $375 | | | | | $217,125.00 |
| Non-US Expatriates | | | | | | $176,475 | | | $176,475.00 |
| Non-US Expatriates | 4,216 | $70 | | | | | | | $295,120.00 |
| Non-US Expatriates | 87 | | | | | | | $850 | $73,950.00 |
| US Inbound Expatriates | 661 | | $875 | | | | | | $578,375.00 |
| US Inbound Expatriates | 1 | | $1,750 | | | | | | $1,750.00 |
| US Inbound Expatriates | 12 | | | | $40 | | | | $480.00 |
| US Inbound Expatriates | 187 | | | $375 | | | | | $70,125.00 |
| US Inbound Expatriates | 50 | | | | | | $800.00 | | $40,000.00 |
| US Inbound Expatriates | 4,670 | $110 | | | | | | | $513,700.00 |
| US Inbound Expatriates | 32 | | | | | | | $850 | $27,200.00 |
| US Outbound Expatriates | 1,673 | | $875 | | | | | | $1,463,875.00 |
| US Outbound Expatriates | 50 | | | | $40 | | | | $2,000.00 |
| US Outbound Expatriates | 436 | | | $375 | | | | | $163,500.00 |
| US Outbound Expatriates | | | | | | $124,800 | | | $124,800.00 |
| US Outbound Expatriates | 213 | | | | | | $800.00 | | $170,400.00 |
| US Outbound Expatriates | 5,067 | $250 | | | | | | | $1,266,750.00 |
| US Outbound Expatriates | 36 | | | | | | | $850 | $30,600.00 |
| J-1 Trainees | 152 | | $375 | | | | | | $57,000.00 |
| J-1 Trainees- Santana, Maria | 1 | | ($375) | | | | | | ($375.00) |
| Mexico Border Employees | 2,310 | | $375 | | | | | | $866,250.00 |
| Mexico Border Employees | 3,791 | | | | $40 | | | | $151,640.00 |
| US Outbound Expatriates | | | | | | $212,950 | | | $212,950.00 |
| US Outbound Expatriates | | | | | | $153,725 | | | $153,725.00 |
| US Outbound Expatriates | 1 | | | | | | | ($850) | ($850.00) |
| US Outbound Expatriates | | | | | | ($2,500) | | | ($2,500.00) |
| US Inbound Expatriates | 1 | | | | | | $375.00 | | $375.00 |
| Non-US Trainees | 14 | | | $375 | | | | | $5,250.00 |
| Non-US Expatriates | 156 | $110 | | | | | | | $17,160.00 |
| Non-US Expatriates | 3 | | $1,750 | | | | | | $5,250.00 |
| Non-US Expatriates | | | | | | $351,565 | | | $351,565.00 |
| Non-US Expatriates | | | | | | $333,210 | | | $333,210.00 |
| Non-US Expatriates | | | | | | ($2,575) | | | ($2,575.00) |
| Mexico Border Employees Monthly | 7,110 | $40 | | | | | | | $284,760.00 |
| Mexico Border Employees | 1,353 | $40 | | | | | | | $54,120.00 |
| Mexico Border Employees | 149 | | | | | | $375.00 | | $55,875.00 |
| Credit: Non-US Expatriates | | | | | | | | | ($17,480.00) |
| Credit: Mexico Border Employee | | | | | | | | | ($1,000.00) |

| | |
|---|---:|
| Subtotal Tax - International Executive Services | **$7,748,300.00** |
| Subtotal Fees | **$21,534,046.90** |
| Voluntary Reduction in Fee Statement and Non-Working Travel Time | ($590,267.47) |
| Interiors - Less Reduction due to Difference in Billing Rates in October's 2007 fee statement | ($8,950.00) |
| IES - Less Reduction due to Partial Credits-Credit was issued in the November 2007 fee statement but relates to IES tax returns from February 2007. | ($1,567.00) |
| Interiors - Adjustment due to Difference in Billing Rates in November and December 2007 fee statements | $528.00 |
| Voluntary Reduction for Pharmacy Rebate Review | ($8,610.00) |
| Interiors - Adjustment due to Difference in Billing Rates in October, November and December 2007 fee statements | $31,650.00 |
| Subtotal Fees Requested | **$20,956,830.43** |
| Less reduction of $155,000 in fees for the period of January 1, 2008 through January 25, 2008 | $155,000.00 |
| Total Fees Requested | **$20,801,830.43** |
| Out of Pocket Expenses | $1,992,450.10 |
| Total Fees and Out of Pocket Expenses | **$22,794,280.53** |
| **Blended Rate** | **$332.22** |

Summary of Out-of-Pocket Expenses
October 1, 2007 through October 6, 2009

| Category | Amount |
|---|---:|
| Airfare | $864,937.23 |
| Ground Transportation | $329,778.11 |
| Lodging | $706,273.83 |
| Meals | $30,251.93 |
| Other | $61,209.00 |
| Total expenses | $1,992,450.10 |

**KING & SPALDING LLP**
**1185 Avenue of the Americas**
**New York, New York 10036**
**Telephone: (212) 556-2100**
**Facsimile: (212) 556-2222**
**H. Slayton Dabney, Jr., Esq. (HD - 4311)**

**Attorneys for KPMG LLP**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------------- x
                                        :
**In re:**                              :        **Chapter 11**
                                        :
**DELPHI CORPORATION, et al.,**         :        **Case No. 05-44481 (RDD)**
                                        :
        **Debtors.**                    :        **(Jointly Administered)**
                                        :
---------------------------------------------------------------- x

**SEVENTH INTERIM AND FINAL APPLICATION OF KPMG LLP, AS
TAX AND TRANSACTION SERVICES ADVISORS AND ADVISORY AND
VALUATION SERVICES ADVISORS FOR THE DEBTORS, FOR ENTRY OF AN
ORDER (I) ALLOWING COMPENSATION FOR PROFESSIONAL SERVICES
RENDERED AND REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES
INCURRED FROM OCTOBER 1, 2007 THROUGH JANUARY 25, 2008 AND ALL
SUBSEQUENT MONTHLY PERIODS THROUGH THE EFFECTIVE DATE OF
OCTOBER 6, 2009; (II) ALLOWING COMPENSATION FOR PROFESSIONAL
SERVICES RENDERED AND REIMBURSEMENT OF ACTUAL AND NECESSARY
EXPENSES INCURRED FROM OCTOBER 8, 2005 THROUGH OCTOBER 6, 2009;
(III) AUTHORIZING AND DIRECTING THE DEBTORS TO RELEASE PRIOR
HOLDBACK AMOUNTS; AND (IV) AUTHORIZING AND DIRECTING THE
<u>DEBTORS TO PAY ALL UNPAID FEES AND EXPENSES</u>**

TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:

        KPMG LLP ("KPMG"), a professional services firm, serves as tax and transaction

services advisors and advisory and valuation services advisors to Delphi Corporation and certain

of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases

(collectively, the "Debtors").  KPMG submits this seventh interim and final application (the

"Application"), pursuant to sections 330(a) and 331 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for entry of an order: (i) allowing compensation for professional services rendered and reimbursement of actual and necessary expenses incurred from October 1, 2007 through January 25, 2008 and all subsequent monthly periods through the effective date of October 6, 2009 ("Seventh Interim Period"); (ii) allowing compensation for professional services and reimbursement of expenses for the period October 8, 2005 through October 6, 2009 (the "Final Period"); (iii) authorizing and directing the Debtors to release prior holdback amounts; and (iv) authorizing and directing the Debtors to pay all unpaid fees and expenses.

## Background

1.      On October 8, 2005 (the "Petition Date"), 39 of 42 Debtors, and on October 14, 2005, the remaining Debtors, filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

2.      This Court entered orders directing the joint administration of the Debtors' chapter 11 cases under Bankruptcy Rule 1015(b) (Docket Nos. 28 and 404) and the Debtors operated their businesses and managed their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.      On October 17, 2005, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Creditors' Committee"). No trustee or examiner has been appointed in the Debtors' cases.  On May 11, 2006, the U.S. Trustee appointed the committee of equity security holders (the "Equity Committee").

4.      On January 25, 2008, the Court entered an Order confirming the Debtors' First
Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors
and Debtors-in-Possession (as amended, supplemented and/or modified, the "Plan").

5.      On October 6, 2009, the Plan became effective.

### Jurisdiction

6.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and
1334.   Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.   This matter is a core
proceeding under 28 U.S.C. § 157(b)(2).

7.      The statutory predicate for the relief requested herein are sections 330 and 331
of the Bankruptcy Code and Bankruptcy Rule 2016.

### KPMG LLP Retention

8.      On February 14, 2006, the Debtors filed an application pursuant to sections
327(a), 328(a) and 1107(b) of the Bankruptcy Code and Bankruptcy Rule 2014, for
authorization to retain KPMG as Tax and Transaction Services Advisors to the Debtors,
effective nunc pro tunc to October 8, 2005 (the "KPMG Retention Application"), pursuant to
the terms of the engagement letters as described therein (the "Engagement Letters").  On March
3, 2006, the Court entered an order approving the KPMG Retention Application pursuant to the
terms and conditions of such order, effective nunc pro tunc to October 8, 2005 (the "KPMG
Retention Order").

9.      On April 20, 2006, the Debtors filed a supplemental application (the "KPMG
First Supplemental Retention Application") for authorization to retain KPMG as Advisory and
Valuation Services Advisors to the Debtors effective nunc pro tunc to February 16, 2006, and
for authorization to expand the scope of the retention of KPMG to include the matters set forth

in certain additional engagement letters, by and between the Debtors and KPMG, each as described therein (the "First Supplemental Engagement Letters").  On May 2, 2006, this Court entered an order approving the KPMG First Supplemental Retention Application pursuant to the terms of such order, effective nunc pro tunc to (i) February 16, 2006 for the employment and retention of KPMG as Advisory and Valuation Services Advisors to the Debtors, (ii) January 1, 2006 for the continued retention of KPMG as Tax Advisors to the Debtors, and (iii) January 18, 2006 for the additional International Executive Tax Services to be rendered by KPMG to the Debtors (the "KPMG First Supplemental Retention Order").

10.    On November 10, 2006, the Debtors filed a supplemental application (the "KPMG Second Supplemental Retention Application") for authorization to retain KPMG to provide the Debtors with (i) certain improvements to the International Tax Reporting Package and Process, effective nunc pro tunc to August 1, 2006, (ii) certain Internal Reporting Initiatives, effective nunc pro tunc to July 10, 2006, (iii) a certain Special Investigation, (iv) certain Transfer Pricing Services, effective nunc pro tunc to May 19, 2006, (v) certain improvements to the Financial Close, Consolidation, and Management Reporting Processes, and (vi) certain additional services, each as described therein (the "Second Supplemental Engagement Letters").  On December 6, 2006, this Court entered an order approving the KPMG Second Supplemental Retention Application pursuant to the terms of such order (the "KPMG Second Supplemental Retention Order").

11.    On March 16, 2007, the Debtors filed a supplemental application (the "KPMG Third Supplemental Retention Application") for authorization to employ and retain KPMG to (i) enter into the Master Professional Services Agreement (the "Master Agreement") and the applicable Statements of Work ("SOWs") with the Debtors, effective nunc pro tunc to February

9, 2007, (ii) provide the Debtors with certain Global Mobility Services related to international assignees, effective nunc pro tunc to February 9, 2007, (iii) continue to provide the Debtors with certain Tax Consulting Services, effective nunc pro tunc to February 9, 2007, (iv) continue to provide the Debtors with certain International Assignment Services related to the Debtors' international assignees, effective nunc pro tunc to January 31, 2007, (v) provide the Debtors with certain Fresh Start Services, effective nunc pro tunc to November 16, 2006, and (vi) provide the Debtors with certain additional services (including the renewal and extension of existing services, additional phase services under existing engagements, and additional services under future SOWs between the Debtors and KPMG in accordance with the Master Agreement).    On March 30, 2007, this Court entered an order approving the KPMG Third Supplemental Retention Application pursuant to the terms of such order (the "KPMG Third Supplemental Retention Order" and, together with the KPMG Retention Order, the KPMG First Supplemental Retention Order and the KPMG Second Supplemental Retention Order, the "Retention Orders").    Copies of the Retention Orders are attached hereto as Exhibit A.

## Procedures and Interim Fee Applications

12.    The Application has been prepared in accordance with (i) the Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases, adopted by the Court on April 19, 1995 (the "Local Guidelines"), (ii) the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330, adopted on January 30, 1996 (the "UST Guidelines"), and (iii) the (A) Order Under 11 U.S.C. § 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals, dated November 4, 2005 (the "Interim Compensation Order"), (B) the Supplemental Order Under 11 U.S.C. § 331

Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals, dated March 8, 2006 (the "Supplemental Interim Compensation Order"), (C) the Second Supplemental Order Under 11 U.S.C. § 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals, dated March 28, 2006 (the "Second Supplemental Interim Compensation Order), (D) the Third Supplemental Order Under 11 U.S.C. § 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals, dated May 5, 2006 (the "Third Supplemental Interim Compensation Order"), (E) the Fourth Supplemental Order Under 11 U.S.C. § 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals, dated July 12, 2006 (the "Fourth Supplemental Interim Compensation Order"), (F) the Fifth Supplemental Order Under 11 U.S.C. § 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals, dated October 13, 2006 (the "Fifth Supplemental Interim Compensation Order"), and (G) the Sixth Supplemental Order Under 11 U.S.C. § 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals, dated December 12, 2006 (the "Sixth Supplemental Interim Compensation Order," collectively, the foregoing orders and supplemental orders, hereinafter known as the "Administrative Orders" and, collectively with the Local Guidelines and UST Guidelines, the "Guidelines").  Pursuant to the Local Guidelines, a certification regarding compliance with same is annexed hereto as <u>Exhibit B</u>.

13.    On April 28, 2006, KPMG filed its first interim fee application (the "First Interim Fee Application") for the allowance of compensation for professional services performed by KPMG for the period commencing October 5, 2005 through January 31, 2006 (the "First Interim Fee Period") and for reimbursement of its actual and necessary expenses

incurred during the First Interim Fee Period. KPMG sought allowance of fees for services to the Debtors during the First Interim Fee Period in the aggregate amount of $1,439,122.50 and for reimbursement of expenses incurred in connection with these services in the amount of $17,631.00.

14.    On August 6, 2006, KPMG filed its second interim fee application (the "Second Interim Fee Application") for the allowance of compensation for professional services performed by KPMG for the period commencing February 1, 2006 through May 31, 2006 (the "Second Interim Fee Period") and for reimbursement of its actual and necessary expenses incurred during the Second Interim Fee Period. KPMG sought allowance of fees for services to the Debtors during the Second Interim Fee Period in the aggregate amount of $7,383,043.00 and for reimbursement of expenses incurred in connection with these services in the amount of $430,790.04.

15.    On November 30, 2006, KPMG filed its third interim fee application (the "Third Interim Fee Application") for the allowance of compensation for professional services performed by KPMG for the period commencing June 1, 2006 through September 30, 2006 (the "Third Interim Fee Period") and for reimbursement of its actual and necessary expenses incurred during the Third Interim Fee Period. KPMG sought allowance of fees for services to the Debtors during the Third Interim Fee Period in the aggregate amount of $1,969,703.80 and for reimbursement of expenses incurred in connection with these services in the amount of $176,339.61.

16.    After taking a voluntary reduction of $275,000.00 in fees, KPMG has been paid $10,516,869.30 in compensation for professional services rendered and $624,760.65 for reimbursement of expenses for the First, Second and Third Interim Fee Periods.

17.    On April 2, 2007, KPMG filed its fourth interim fee application (the "Fourth Interim Fee Application") for the allowance of compensation for professional services performed by KPMG for the period commencing October 1, 2006 through January 31, 2007 (the "Fourth Interim Fee Period") and for reimbursement of its actual and necessary expenses incurred during the Fourth Interim Fee Period.  KPMG sought allowance of fees for services to the Debtors during the Fourth Interim Fee Period in the aggregate amount of $2,994,667.15 and for reimbursement of expenses incurred in connection with these services in the amount of $265,285.42.  After taking a voluntary reduction of $56,103.00 in fees, KPMG has been paid $2,938,564.15 in compensation for professional services rendered and $265,285.42 for reimbursement of expenses during the Fourth Interim Fee Period.

18.    On or about July 31, 2007, KPMG filed its fifth interim fee application (the "Fifth Interim Fee Application") for the allowance of compensation for professional services performed by KPMG for the period commencing February 1, 2007 through May 31, 2007 (the "Fifth Interim Fee Period") and for reimbursement of its actual and necessary expenses incurred during the Fifth Interim Fee Period.  KPMG sought allowance of fees for services to the Debtors during the Fifth Interim Fee Period in the aggregate amount of $13,751,307.25 and for reimbursement of expenses incurred in connection with these services in the amount of $1,023,285.08.  After taking a voluntary reduction of $150,000.00 in fees and $6,800 in expenses, KPMG has been paid $13,601,307.25 in compensation for professional services rendered and $1,016,485.08 for reimbursement of expenses during the Fifth Interim Fee Period.

19.    On or about November 30, 2007, KPMG filed its sixth interim fee application (the "Sixth Interim Fee Application" and, together with the First Interim Fee Application, the Second Interim Fee Application, the Third Interim Fee Application, the Fourth Interim Fee

Application, and the Fifth Interim Fee Application, the "Prior Fee Applications") for the allowance of compensation for professional services performed by KPMG for the period commencing June 1, 2007 through September 30, 2007 (the "Sixth Interim Fee Period") and for reimbursement of its actual and necessary expenses incurred during the Sixth Interim Fee Period. KPMG sought allowance of fees for services to the Debtors during the Sixth Interim Fee Period in the aggregate amount of $4,327,419.31 and for reimbursement of expenses incurred in connection with these services in the amount of $875,878.51. After taking a voluntary reduction of $185,481.00 in fees, KPMG has been paid $4,141,938.31 in compensation for professional services rendered and $875,878.51 for reimbursement of expenses for the Sixth Interim Fee Period.

20.    This Application incorporates by reference the Prior Fee Applications, including the detailed time and expense records supporting the Prior Fee Applications and the narrative summaries of the services rendered by KPMG during the course of its retention.

## Requested Fees and Reimbursement of Expenses

21.    By this Application, KPMG respectfully requests entry of an order (i)  approving and allowing, on an interim and final basis, compensation for professional services in the amount of $20,801,830.43 and reimbursement of expenses in the amount of $1,992,450.10 incurred on behalf of the Debtors during the Seventh Interim Period; (ii) approving and allowing on a final basis compensation in the amount of $52,000,509.44 and reimbursement of expenses in the amount of $4,774,859.76 for the Final Period; and (iii) authorizing and directing the Debtors to pay, to the extent not already paid, all fees and expenses incurred by KPMG during the Seventh Interim Period, including any unpaid holdback amounts, requested pursuant to this Application. KPMG's request for compensation is broken down as follows:

9

| October 1, 2007 through January 25, 2008 | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | **Requested/Incurred** | | | **Payments** | | |
| **Billing Period** | **Hrs Billed** | **Fees** | **Expenses** | **Monthly Total** | **Fees Paid** | **Expenses Paid** | **Balance Due** |
| 10/1/07 - 10/31/07 | 3,696.40 | $1,238,635.40 | $141,296.08 | $1,379,931.48 | $990,908.32 | $141,296.08 | $247,727.08 |
| 11/1/07 - 11/30/07 | 3,602.50 | $2,102,182.80 | $192,394.60 | $2,294,577.40 | $1,681,746.24 | $192,394.60 | $420,436.56 |
| 12/1/07 - 12/31/07 | 3,456.30 | $1,026,069.25 | $144,854.99 | $1,170,924.24 | $820,855.40 | $144,854.99 | $205,213.85 |
| 1/1/08 - 1/25/08 | 6,255.70 | $3,458,214.00 | $317,684.62 | $3,775,898.62 | $2,642,571.20[3] | $317,684.62 | $660,642.80 |
| Credit/Writeoff | | | | | | | ($109.21) |
| **Subtotal** | **17,010.90** | **$7,825,101.45** | **$796,230.29** | **$8,621,331.74** | **$6,136,081.16** | **$796,230.29** | **$1,533,911.08** |
| **January 26, 2008 through October 6, 2009** | | | | | | | |
| 1/25/08 - 1/31/08 | 1,255.5 | $400,685.50 | $45,558.33 | $446,243.83 | $400,685.50 | $45,558.33 | $0.00 |
| 2/1/08 - 2/29/08 | 5,195.3 | $2,129,836.50 | $206,913.56 | $2,336,750.06 | $2,129,836.50 | $206,913.56 | $0.00 |
| 3/1/08 - 3/31/08 | 5,760.5 | $1,764,849.75 | $208,912.97 | $1,973,762.72 | $1,764,849.75 | $208,912.97 | $0.00 |
| 4/1/08 - 4/30/08 | 3,333.2 | $1,388,249.50 | $130,888.53 | $1,519,138.03 | $1,388,249.50 | $130,888.53 | $0.00 |
| 5/1/08 - 5/31/08 | 2,117.2 | $680,501.00 | $139,575.36 | $820,076.36 | $680,501.00 | $139,575.36 | $0.00 |
| 6/1/08 - 6/30/08 | 1,713.9 | $894,402.25 | $146,758.83 | $1,041,161.08 | $894,402.25 | $146,758.83 | $0.00 |
| 7//1/08 - 7/31/08 | 1,540.0 | $666,458.63 | $120,179.32 | $786,637.95 | $666,458.63 | $120,179.32 | $0.00 |
| 8/1/08 - 8/31/08 | 798.4 | $264,950.00 | $81,533.83 | $346,483.83 | $264,950.00 | $81,533.83 | $0.00 |
| 9/1/08 - 9/30/08 | 500.3 | $166,451.75 | $41,921.66 | $208,373.41 | $166,451.75 | $41,921.66 | $0.00 |
| 10/1/08 - 10/31/08 | 297.0 | $424,993.00 | $16,792.54 | $441,785.54 | $424,993.00 | $16,792.54 | $0.00 |
| 11/1/08 - 11/30/08 | 48.6 | $11,633.10 | $0.00 | $11,633.10 | $11,633.10 | $0.00 | $0.00 |
| 12/1/08 - 12/31/08 | 128.3 | $39,246.50 | $0.00 | $39,246.50 | $39,246.50 | $0.00 | $0.00 |
| 1/1/09 - 1/31/09 | 153.8 | $1,802,943.25 | $0.00 | $1,802,943.25 | $1,802,943.25 | $0.00 | $0.00 |
| 2/1/09 - 2/29/09 | 0.0 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3/1/09 - 3/31/09 | 962.4 | $279,960.50 | $11,468.88 | $291,429.38 | $279,960.50 | $11,468.88 | $0.00 |
| 4/1/-09 - 4/30/09 | 280.7 | $1,085,158.50 | $22,297.00 | $1,107,455.50 | $1,085,158.50 | $22,297.00 | $0.00 |
| 4/1/-09 - 4/30/09 (Supplemental) fee statement) | 18.9 | $580,293.50 | $0.00 | $580,293.50 | $580,293.50 | $0.00 | $0.00 |
| 5/1/09 - 5/31/09 | 14.9 | $89,945.00 | $23,419.00 | $113,364.00 | $89,945.00 | $23,419.00 | $0.00 |
| 6/1/09 - 6/30/09 | 15.2 | $73,920.00 | $0.00 | $73,920.00 | $73,920.00 | $0.00 | $0.00 |
| 7/1/09 - 7/31/09 | 12.1 | $71,762.00 | $0.00 | $71,762.00 | $71,762.00 | $0.00 | $0.00 |
| 8/1/09 - 8/31/09 | 154.0 | $112,724.75 | $0.00 | $112,724.75 | $112,724.75 | $0.00 | $0.00 |
| 9/1/09 - 10/6/09 | 635.9 | $202,764.00 | $0.00 | $202,764.00 | $0.00 | $0.00 | $202,764.00 |
| **Subtotal** | **24,936.00** | **$13,131,728.98** | **$1,196,219.81** | **$14,327,948.79** | **$12,928,964.98** | **$1,196,219.81** | **$202,764.00** |

---

[3] After taking a voluntary reduction of $155,000.00 in fees for the January 1, 2008 through January 25, 2008 Monthly Fee Period, KPMG is requesting payment of the holdback amount of $660,642.80.

| Totals | | 41,946.9 | $20,956,830.43 | $1,992,450.10 | $22,949,280.53 | $19,065,046.14 | $1,992,450.10 | $1,736,675.08 |
|---|---|---|---|---|---|---|---|---|

22.      KPMG is the United States member firm of KPMG International.  The KPMG global network encompasses independent professional services practices conducted by separate legal entities throughout the world.  KPMG International, a Swiss cooperative, serves as a coordinating entity for a network of member firms operating under the KPMG name.  KPMG International is a member-based entity with no shareholders and no permanent capital.  Each of the member firms of KPMG International ("KPMG Member Firms") is separate and legally distinct.

23.      Prior to the Petition Date, KPMG subcontracted with certain other KPMG Member Firms to provide services to the Debtors as set forth in the Engagement Letters, the First Supplemental Engagement Letters, the Second Supplemental Engagement Letters, and the Third Supplemental Engagement Letters (including the Master Agreement and applicable SOWs).  Pursuant to the KPMG Retention Order, the KPMG Supplemental Retention Order, the KPMG Second Supplemental Order, and the KPMG Third Supplemental Retention Order, during the Final Period, KPMG Member Firms have continued to assist KPMG in the provision of services under the Engagement Letters, the First Supplemental Engagement Letters, the Second Supplemental Engagement Letters, and the Third Supplemental Engagement Letters (including the Master Agreement and the applicable SOWs).

24.      KPMG charges its fees in these cases in accordance with billing rates and procedures in effect during the Final Period.  The rates KPMG charges for the services rendered by its professionals in these chapter 11 cases are the same rates KPMG charges for professional services rendered in comparable non-bankruptcy related matters.  Such fees are reasonable

based on the customary compensation charged by comparably skilled practitioners in comparable non-bankruptcy cases.

25.     Annexed hereto as <u>Exhibit C</u> is a schedule setting forth all KPMG professionals who have performed services in these chapter 11 cases during the Seventh Interim Period, the capacities in which each such individual is employed by KPMG, the hourly billing rate charged by KPMG for services performed by such individual, aggregate number of hours expended in this matter and fees billed therefor.

26.     Annexed hereto as <u>Exhibit D</u> is a schedule specifying the categories of expenses, in these chapter 11 cases during the Seventh Interim Period, for which KPMG is seeking reimbursement and the total amount for each such expense category.

27.     Annexed hereto as <u>Exhibit E</u> is a summary of KPMG's time records billed during the Seventh Interim Period, utilizing the project categories as described below.  Detailed time and expense records are not being filed but copies of these records can be made available to parties-in-interest upon request.

<u>**Summary of Services**</u>

28.     In accordance with the Engagement Letters, the First Supplemental Engagement Letters, the Second Supplemental Engagement Letters, and the Third Supplemental Engagement Letters (including the Master Agreement and the applicable SOWs), KPMG has provided such services as KPMG and the Debtors deemed appropriate and feasible in order to advise the Debtors in the course of these chapter 11 cases, including, but not limited to, the following:

    i.   International Tax Package Improvement;

    ii.  International Executive Services;

    iii.   Fee Statements and Fee Applications;

    iv.   Transaction Services - Project Rhodes;

    v.   Tax Consulting Services;

    vi.   Financial Close, Consolidation and Management - Record-to-Report Phase III and IV;

    vii.   Electronics & Safety - Assess Product Line Reporting;

    viii.   Transaction Services - Project Rhodes/Evergreen III;

    ix.   Fresh Start Services;

    x.   Impairment Services - Q04;

    xi.   Project Shark Target;

    xii.   Transaction Services - Project Rhodes Discontinued Operations;

    xiii.   Electronics & Safety - PBU - Product Line Performance Reporting;

    xiv.   Interiors Discontinued Operations - Financial Management;

    xv.   Legal Entity Valuations;

    xvi.   Loan Staff Agreement;

    xvii.   Interiors Discontinued Operations - Project Management;

    xviii.   AHG Divestiture Accounting-ODD;

    xix.   Steering Day-1 Readiness Assessment;

    xx.   Packard SAP Assessment;

    xxi.   Tax Accounting for Divestitures;

    xxii.   Steering Carve-Out;

    xxiii.   Pharmacy Rebate Review;

    xxiv.   HFM COA Design Assistance;

    xxv.   Assistance with Accounting for Income Taxes;

    xxvi.   FAS 142 Impairment Analysis;

    xxvii.   Record to Report - Tax Accounting;

    xxviii.   Project Shark -FAS 141; and

    xxix.   UK Legal Entity Valuations.

29.    The services provided by KPMG to the Debtors are not unnecessarily duplicative of those provided by any other of the Debtors' professionals, and KPMG has coordinated any services performed at the Debtors' request with the Debtors' other professionals, including financial advisors, accountants, and counsel, as appropriate, to avoid duplication of efforts.

30.    The following is a summary of certain of the significant professional services rendered by KPMG during the Seventh Interim Period, as well as the compensation sought for such services:

**Compensation by Project Category**
**October 1, 2007 through October 6, 2009**

| Category | Hours | Compensation Amount |
|---|---|---|
| Tax - International Tax Package Improvement | 400.7 | $158,276.50 |
| Tax - International Executive Services | 325.2 | $107,877.80 |
| Tax - International Executive Services – Tax Returns | - [(1)] | $7,748,300.00 |
| Fee Statements and Fee Applications | 2,796.7 | $271,190.00 |
| Non Working Travel Time | 1,687.9 | $275,337.88 |
| Transaction Services - Project Rhodes | 96.6 | $16,292.50 |
| Tax Consulting Services | 55.2 | $26,496.00 |
| Financial Close, Consolidation and Management - Record-to-Report Phase III and IV | 10,368.3 | $3,992,274.00 |
| Electronics & Safety - Assess Product Line Reporting | 353.4 | $137,299.50 |
| Transaction Services - Project Rhodes/Evergreen III | 14.0 | $3,356.50 |
| Fresh Start Services | 10,957.9 | $3,451,280.15 |
| Impairment Services - Q04 | 138.6 | $40,871.50 |
| Project Shark "Target" | 35.3 | $9,902.50 |
| Transaction Services - Project Rhodes Discontinued Operations | 818.3 | $237,065.50 |
| Electronics & Safety - PBU - Product Line Performance Reporting | 37.6 | $8,538.50 |
| Interiors Discontinued Operations - Financial Management | 2,246.5 | $731,816.50 |
| Legal Entity Valuations | 588.9 | $193,282.50 |
| Loan Staff Assistance | 3,433.1 | $899,800.00 |
| Interiors Discontinued Operations - Project Management | 1,025.7 | $369,212.50 |
| AHG Divestiture Accounting-ODD | 1,170.7 | $432,768.00 |
| Steering Day-1 Readiness Assessment | 436.0 | $187,407.50 |
| Packard SAP Assessment | 1,375.1 | $469,264.00 |
| Tax Accounting for Divestitures | 482.1 | $149,679.50 |
| Steering Carve-Out | 256.1 | $84,950.00 |
| Pharmacy Rebate Review | 317.0 | $37,800.00 |
| HFM COA Design Assistance | 1,785.6 | $662,958.00 |

| | | |
|---|---|---|
| Assistance with Accounting for Income Taxes | 71.6 | $28,282.00 |
| FAS 142 Impairment Analysis | 190.7 | $62,581.50 |
| Record to Report - Tax Accounting | 245.6 | $86,545.00 |
| Project Shark -FAS 141 | 42.1 | $13,050.00 |
| UK Legal Entity Valuations | 194.4 | $63,074.60 |
| Subtotal fees | | $20,956,830.43 |
| Less reduction of $155,000 in fees for the period of January 1, 2008 through January 25, 2008 | | $(155,000.00) |
| Total hours and fees requested | **41,946.9** | **$20,801,830.43** |

(1) These compensation charges are based on tax return rates.

## **Description of Services Provided**

31.    The following is a more detailed description of the significant professional

services rendered by KPMG during the Seventh Interim Period.

(a)    **International Tax Process Improvement**

  i.    Collaborate with Debtors to identify improvements to the international tax reporting package and process;

 ii.    Assist with the development, implementation, and testing of improvements to the international tax reporting package and processes;

iii.    Assist with the development of training materials for the improved international tax reporting package and processes;

 iv.    Assist with training of Debtors' personnel on the new international tax reporting package and process;

  v.    Assist Debtors with reviewing the implementation of the international tax reporting package and processes; and

 vi.    Provide other services related to the development and implementation of the improved international tax reporting package and processes as appropriate.

(b)    **International Executive Services (IES)**

  i.    **Global Mobility Advisory Services**

Pre-Assignment Services including but not limited to:

   a.    Prepare cost projection including revisions;
   b.    Prepare draft international assignment agreement;
   c.    Prepare draft pay calculation;
   d.    Finalize international assignment agreement and pay calculation and participate in consultation session;

e.  Calculate Relocation Allowance and Mobility Premium to be paid in month prior to assignment and provide to payroll;

f.  Calculate first year spending account to be paid in first month of assignment and provide to payroll; and

g.  Obtain Social Security Certificates of Coverage.

During Assignment Services including but not limited to:

a.  Calculate annual spending account on assignment anniversary date and provide to payroll;

b.  Answer Expatriates' policy–related inquiries including policy interpretation based on Debtors' provided assumptions;

c.  Serve as focal point for Expatriates' general questions and issues;

d.  Prepare periodic adjustments to compensation items according to Debtors' policy and/or changes to Expatriates' pay or family status;

e.  Prepare payroll changes per pay period and forward to Debtors for approval and processing;

f.  Prepare annual year-end compensation summaries;

g.  Monitor data provider subscriptions and invoices;

h.  Track key dates and notify Expatriates and/or management of required actions;

i.  Track tax equalization settlements, forward to Debtors for approval and processing; and

j.  Conduct annual customer satisfaction survey and report results to Debtors.

Repatriation Services

a.  Calculate Relocation Allowance less outstanding tax and pro-rata spending account due from employee.

Other Services

a.  Other services requested by Debtor related to international assignments.

ii.    **International Assignment Services**

Expatriates Assigned from the U.S. and Expatriates Assigned to the U.S.

a.  Collect tax data;

b.  Calculate annual hypothetical tax withholding;

c.  Prepare required home and host country individual income tax returns during, and one year after, assignment;

d.  Prepare requests for extension of time to file tax returns(s);

e.  Prepare U.S. estimated tax vouchers;
f.  Prepare year-end U.S. withholding calculations;
g.  Prepare tax equalization calculations;
h.  Determine and arrange for timely payment of local taxes in the host country;
i.  Conduct pre-departure and/or post-arrival consultation sessions; and
j.  Handle routine correspondence with the IRS and foreign tax authorities, including review of assessments.

Expatriates Assigned to and from non-U.S. Countries

a.  Collect tax data;
b.  Calculate annual hypothetical tax withholding;
c.  Prepare required home and host country individual income tax returns during, and one year after, assignment;
d.  Prepare requests for extension of time to file tax returns(s);
e.  Determine and arrange for timely payment of local taxes in the host country;
f.  Prepare tax equalization calculations;
g.  Conduct pre-departure and/or post-arrival consultation sessions; and
h.  Handle routine correspondence with foreign tax authorities, including review of assessments.

Employees Assigned to the Mexican Border

a.  Collect tax data;
b.  Prepare U.S. income tax return(s);
c.  Prepare requests for extension of time to file tax returns(s);
d.  Prepare tax equalization calculations;
e.  Prepare monthly non-resident Mexican tax calculations;
f.  Conduct post-arrival consultation session; and
g.  Handle routine correspondence with the IRS.

J-1 Visa Trainees

a.  Collect tax data;
b.  Prepare U.S. income tax return(s);
c.  Prepare requests for extension of time to file tax returns(s);
d.  Conduct post-arrival consultation session; and
e.  Handle routine correspondence with the IRS.

Cost Estimates

a.  Prepare cost projection including revisions;
b.  Prepare draft international assignment agreement;

    c.  Prepare draft pay calculation;

    d.  Finalize international assignment agreement and pay calculation and participate in consultation session;

    e.  Calculate Relocation Allowance and Mobility Premium to be paid in month prior to assignment and provide to payroll;

    f.  Calculate first year spending account to be paid in first month of assignment and provide to payroll;

    g.  Calculate annual spending account on assignment anniversary date and provide to payroll; and

    h.  Calculate Relocation Allowance less outstanding tax and pro-rata spending account due from employee.

Global Coordination

    a.  Centralized hypothetical tax calculation process;

    b.  Tax planning review;

    c.  On-going benchmarking of Debtors' current tax equalization policy;

    d.  Dedicated website for Debtors;

    e.  Dedicated website for Debtors' employees;

    f.  Unlimited access to all KPMG publications;

    g.  Status reports and client service reports; and

    h.  KPMG International Executive Services Flash Alert Newsletters.

Other Services

    a.  Other services requested by Debtor related to international assignments.

**(c)    Fee Statements and Fee Applications**

    i.  The billing procedures required by the US Trustee Guidelines differ from KPMG's normal billing procedures and as such, the Local Rules and the Interim Compensation Order entered in this case have required significant effort to (i) inform the timekeepers of their responsibilities, (ii) compile and review summary schedules of fees and expenses incurred, and (iii) draft the narrative and schedules included in this Final Application.

**(d)    Transaction Services - Project Rhodes**

    i.  Assist in the identification and collection of financial information and financial statements related to carve-out of the Debtor Affiliate businesses from Debtors;

    ii.  Assist with the project coordination with Debtor Affiliate, Debtors

and other advisors;

 iii. Assist with the identification of potential transaction issues (e.g. carve-out issues, allocation issues, redundant/stranded costs);

 iv. Assist in the organization and management of financial information and workpapers used to support Debtor Affiliate's by business line stand-alone financial statements;

 v. Review information provided by management relating to the carve-out business lines from Debtors;

 vi. Coordinate with Debtor Affiliate and Debtors and their external accountants on accounting matters;

 vii. Review and comment on the business plan prepared by Debtor Affiliate and/or Debtors; and

 viii. Meet with Debtors and Debtors' advisors to discuss possible accounting structuring alternatives relating to matters identified.

**(e) Tax Consulting Services**

 i. Provide advice and assistance to the Debtors regarding various tax issues.

**(f) Financial Close, Consolidation and Management**

 i. Prepare detailed work stream statements of work for the next phase;

 ii. Review statements of work with the Debtors' work stream stakeholders;

 iii. Establish PMO infrastructure for the next phase;

 iv. Identify and secure resources (Debtors and KPMG) for the next phase;

 v. Conduct weekly meeting with KPMG work stream leads to review and share project activities, issues, challenges across KPMG work stream teams;

 vi. Collect and aggregate weekly work stream status/activity/deliverables for presentation to Chief Accounting Office (CAO) and Controller on a weekly basis;

 vii. Prepare for and attend monthly status meetings with the Debtors' Chief Financial Officer (CFO);

 viii. Present Record to Report framework and plans to CEO;

 ix. Monitor individual work stream and overall project status against initial work plan and related deliverables;

 x. Attend and facilitate weekly project status updates with the CAO and Controller and his staff;

 xi. Prepare for and attend monthly Finance Task Team meeting (FTT) monthly Audit Committee meeting, quarterly Debtor Operations

Meeting (DOM), and monthly Controllers Roundtable meetings based on requests from the CAO and Controller;

xii. Prepare initial draft of Debtor Controllership architecture based on results of workshop for management approval;

xiii. Work with Divisional CFOs, populate the Division organization structure developed as part of the Phase II design activities;

xiv. Conduct interviews and workshops to design a regional controllership function and organization structure;

xv. Develop and schedule with Controllership organization a pilot testing and implementation program;

xvi. Assist in development of business case for purchase of Hyperion as a solution to Debtors' budget and forecasting;

xvii. Assist in development of business requirements for Debtor's new consolidation software solutions;

xviii. Draft Region and Division Controllership organization charts;

xix. Assist in establishment of pre-close and post-close meetings as part of close procedure;

xx. Identify and draft recommended roles and responsibilities of Debtor A;

xxi. Draft close tracking and Key Performance Indicator metrics;

xxii. Review existing process and control documentation for the monthly tax provision process;

xxiii. Identify business requirements for recording monthly tax provision with the goal of minimizing the manual efforts;

xxiv. Identify requirements to be incorporated into the General Ledger (G/L) and Hyperion systems to facilitate the automation of tax provision schedules;

xxv. Develop SOPA remediation tracking;

xxvi. Develop templates and tools for use by accounting staff;

xxvii. Prepare global close calendar and tracking process;

xxviii. Identify training requirements for process changes and assist in delivery of up to 3 training classes;

xxix. Identify areas of current SOX documentation that may need to be updated;

xxx. Provide assessment and gap analysis to leading practices for Enterprise-wide consolidation process including:

a. Identifying existing month-end consolidation activities that need to be transferred to the divisions as part of divisional consolidation process;

b. Updating close tasks and activities, related to the enterprise wide consolidation process, to be included in the global close calendar; and

c. Documenting roles and responsibilities/job descriptions of Corporate Consolidation team related to the new enterprise wide consolidation;

xxxi.    Prepare revisions to Consolidation Process Manual related to changes in Enterprise-wide consolidation process and "Service Center" consolidation process;

xxxii.    Develop Corporate "Service Center" model of consolidating smaller divisions (Debtors and Debtor Affiliates) utilizing the Debtor Affiliates Division consolidation manual;

xxxiii.    Prepare and conduct monthly All Hands meeting to communicate strategy of Pilot program;

xxxiv.    Develop current state process flow for Tax assessment such as US provision, Non-US provision, WW provision and FIN 48 process flow;

xxxv.    Develop future state process flow for Tax assessment such as US provision, Non-US provision, WW provision and FIN 48 process flow;

xxxvi.    Prepare Gap Analysis as part of Tax provision assessment;

xxxvii.    Identify alternatives and recommendation as part of Tax provision assessment;

xxxviii.    Identify accounts used by tax provision;

xxxix.    Develop training documents for Hyperion consolidation activities;

xl.    Prepare documentation of divisional sub consolidation pilot results;

xli.    Draft report detailing critical success factors necessary to launch close and sub-consolidation module at divisions;

xlii.    Draft proposed monthly divisional closing and consolidation calendar;

xliii.    Draft list of SAP close process enhancements and reports;

xliv.    Draft recommended organization structure as part of Divisional Consolidation Mechanics work stream;

xlv.    Identify Divisional Task list detailing key activities and responsible parties for management approval;

xlvi.    Conduct risk assessment of fixed assets and general accounting by analysis of individual trial balances;

xlvii.    Prepare analysis for Investor Relations detailing earnings guidance trends, timing of SEC filings and marketplace considerations;

xlviii.    Conduct workshop as part of Sub Consolidation Pilot;

xlix.    Develop GAP analysis of current Debtors' SAP 4.6 intercompany implementation design to functionality inherent with SAP 4.6;

l.    Identify benefits of activating SAP 4.6 intercompany functionality;

li.    Develop document detailing classification of divisional out of balances such as MIT, EXP and Re-class;

lii.    Identify, and where possible, implement improvement opportunities to intercompany re-bills and cross charges;

liii.    Identify out of balance "trends";

liv.    Develop current state process flow and narrative for the External Reporting function;

lv.    Coordinate meetings and focus groups between Debtors and other companies to discuss External Reporting leading practices;

lvi.    Draft intercompany policy and procedures;

lvii.    Prepare and conduct intercompany network workshop;

lviii.    Identify Hyperion HFM design opportunities for automation of data requirements for the external reporting function; and

lix.    Identify business process improvement opportunities for the External Reporting process.

**(g)    Electronics & Safety Product Assess Product Line Reporting**

i.    Gather information and determine reporting requirements;

ii.    Identify opportunities for immediate improvement to product line reporting;

iii.    Classify and prioritize opportunities for short term, immediate reporting improvements; and

iv.    Summarize findings in report.

**(h)    Transaction Services – Project Rhodes/Evergreen III**

i.    Assist in the identification and collection of financial information related to the 2006 carve-out of the Debtor Affiliates businesses from Debtors;

ii.    Assist with the project coordination with Debtors, Debtors Affiliates and other advisors;

iii.    Assist with the identification of potential transaction issues relating to the 2006 financials (e.g., carve-out issues, allocation issues, redundant/stranded costs);

iv.    Assist in the organization and management of 2006 financial information and workpapers used to support Debtor Affiliates stand-alone business line financial statements;

v.    Review information provided by management relating to the carve-out of Debtor Affiliate business lines from Debtor for 2006 financials;

vi.    Assist in the organization and management of 2006 financial information and workpapers in the data room; and

vii.    Research disclosure requirements and drafting example disclosures commonly required for SEC registrants that are relevant to the financial statements to enable Debtors to populate those disclosures with Debtor Affiliates -specific amounts.

**(i)      Fresh Start Services**

    i.    Assist management with planning an approach, consideration of alternatives, research, analysis, implementation assistance and assistance with preparing documentation related to Debtors' accounting and reporting the emergence from bankruptcy and adopting Fresh Start reporting;

    ii.    Meet with certain of Debtors' officers, employees and outside consultants;

    iii.    Assist with gathering data, analyzing data and provide advice related to Debtors' analyses;

    iv.    Assist Debtors in developing accounting and financial reporting and tax planning and reporting;

    v.    Allocate to Debtors' assets and liabilities the reorganization value of Debtors in accordance with the procedures specified in Statement of Financial Accounting Standards No. 141 ("FAS141");

    vi.    Provide data services to assist in planning for embedding the "fresh start" adjustments into the financial reporting processes of Debtors; and

    vii.    Provide project management services to Debtors senior management and its fresh start project manager, this service is designed to advise Debtors regarding project timelines, milestones, deliverables, interdependencies, risks and resources.

**(j)      Impairment Services – Q04"**

    i.    Analyze potential impairment charges as of the quarter ended March 31, 2007 under SFAS 144 including assessment under Step 1 of SFAS 144 for those plants identified by Debtors management to be included in our studies.

**(k)      Project Shark "Target"**

    i.    Provide financial due diligence assistance (excluding procedure 16); and

    ii.    Provide assistance related to intangible assets (FAS 141).

**(l)      Transaction Services - Project Rhodes - Discontinued Operations**

    i.    Finalize detailed work plan with Debtor Affiliates and Debtors;

    ii.    Build and populate the discontinued operations templates with the historical allocations identified;

    iii.    Document the allocations and assumptions in the template in a manner that facilitates the audit process;

iv.  Interview Debtor Affiliates and Debtors corporate personnel regarding historical allocations and corporate journal vouchers recorded;

v.  Conduct interviews with specific groups and individuals to collect historical information and document methodologies;

vi.  Assist with the assessment of allocations and corporate journal vouchers relative to the requirements of discontinued operations reporting and disclosure;

vii.  Assist with the preparation of a carve out balance sheet, profit and loss, and cash flow statement for the periods to be presented; and

viii.  Assist with Debtors' technical accounting memorandum on the application of discontinued operations accounting for the Steering Division and support in the audit process.

**(m)  Electronics & Safety Product Business Units' Product Line Performance Reporting**

i.  Validate Debtor Affiliates Product Line Performance Reporting (PLPR) report dimensions and attributes;

ii.  Complete prototype business requirements document for Debtor Affiliates prototype PLPR solution;

iii.  Complete division pre-workshop communication package for workshop held on 6/26/08;

iv.  Complete PLPR report inventory depicting required data elements, sample views by customer and opportunity to identify KPIs;

v.  Complete PLPR report layout examples outlining report dimensions and attributes;

vi.  Complete a high level technical landscape document to illustrate the transformation from Access to a data warehouse environment;

vii.  Complete next steps plan for prototype build out and evaluation;

viii.  Conduct multi-division workshop on 6/26/08 to gather cross division business requirements; and

ix.  Incorporate outcome of division workshop into final business requirements document for Debtor Affiliates prototype PLPR solution.

**(o)  Interiors Discontinued Operations – Financial Management**

i.  Planning, process design and data requests

a.  Develop a Statement of Work which outlines scope, approach, responsibilities, project timetable, deliverables, and budget;

b.  Obtain realigned adjusted Hyperion balances;

c.  Provide guidance to Debtor Affiliates employees in the development of templates to organize the information for various periods;

    d.  Interview specific groups and individuals to collect historical information and document methodologies;

    e.  Assess whether allocation adjustments and CJVs qualify for discontinued operation presentation in order to apply similar rationale to other periods.  Confirm preliminary assessment with Debtors' management; and

    f.  Assess impact and plan process for Power Management Split out from Debtor Affiliates.

ii.    Data Accumulation

    a.  Interview Debtor Affiliates and Debtors corporate personnel regarding historical allocations and CJVs recorded;

    b.  Review elements of each of the allocations (e.g., within the benefits allocation, isolate allocated amounts for pension, OPEB, vacation, holiday pay, etc.) and the methodologies used to allocate costs in the various periods; and

    c.  Provide assistance to Debtors' management in their documentation of the allocations and assumptions in the template in a manner that facilitates Debtors' management's review of the work performed.

iii.    Assessment

    a.  Assist Debtor's management in applying agreed upon treatment to 2006 allocation adjustments and CJVs for discontinued operations presentation to similar type adjustments identified in other periods; and

    b.  For allocation adjustments, CJVs, corporate held accruals and reserves, and restatement adjustments which were not evaluated as part of initial assessment of 2006 adjustments, assist Debtor Affiliates management in assessing whether such amounts qualify for discontinued operations reporting and confirm with Debtors' management.

iv.    Bridge schedule assistance

    a.  Assist Debtors' management in building the balance sheet and P&L bridge schedules for the periods reflected in the table.

v.    Cash flow statement template preparation

    a.  Populate cash flow templates for various periods.

vi.    Technical accounting memorandum

    a.  Review Debtors' prepared technical accounting memorandum on the application of discontinued operations and provide comments on technical merits.

vii.      Program management

    a.  Program Debtors' management responsibilities, including but not limited to:
- team level scope development;
- team and program level status reporting, issue escalation Debtors' management, work stream planning and calendar Debtors' managements;
- team and program level meeting facilitation;
- day-1 readiness and cutover Debtors management; and
- team and program level communications and presentation facilitation.

    b.  Summarize the key separation planning, execution, and training activity outcomes via weekly report-outs to separation team leadership, and make recommendations.

**(p)    Legal Entity Valuations**

i.    Provide our opinion of the fair market value of the equity of the following legal entities:

    a.  Delphi Deutschland GmbH – Germany;
    b.  Delphi Deutschland Verwaltungs GmbH – Germany;
    c.  Delphi Delco Electronics Europe GmbH – Germany;
    d.  Fuba Automotive GmbH Co. KG – Germany;
    e.  Delphi Poland SA – Poland;
    f.  Delphi Automotive Systems de Brazil Ltda – Brazil; and
    g.  Delphi Diesel Systems do Brazil Ltda – Brazil

**(q)    Loan Staff Assistance**

i.    Assist Debtors' personnel in supporting the proposed sale of the Interior division under the direction and supervision of Assistant Finance Director, focusing on the following areas:

    a.  Accounts Receivables
    b.  Accounts Payables
    c.  Financial Reporting
    d.  Fixed Asset
    e.  Inventory

**(r)    Interiors Discontinued Operations – Project Management**

i.    Work stream A

    a.  Conduct scoping interviews with Debtors' Project Sponsor and Debtors' Process Owner;
    b.  Collect and analyze background information for PBU Forecasting Process;

    c.   Conduct workshop and interviews to validate current state PBU Forecasting process;

    d.   Document current state PBU Forecasting process and identified process weaknesses and limitations;

    e.   Gather and analyze driver & allocation data for existing Activity Base Costing model;

    f.   Identify and recommend short-term and long term opportunities to improve the PBU forecasing process including action plans for short-term opportunities;

    g.   Recommend new drivers & allocation methods for Activity Base Costing model; and

    h.   Develop a summary report of findings, observations and recommendations for overall PBU forecasting process.

ii.    Work stream B

    a.   Assist with business requirement identification;

    b.   preparing a Future state design, considerations, requirement gathering, SIPOC matrix;

    c.   Analyze and make recommendations for data flow simplification/redesign; and

    d.   Assist with the design and development of new PBU forecasting technology enabler.

iii.    Work stream C

    a.   Identify and document long term process improvement opportunities based on better practices; and

    b.   Prepare summary report on long term process improvement opportunities for the PBU forecast.

iv.    Work stream D

    a.   Conduct interviews/workshops with internal customer, stakeholders, process owners;

    b.   Analyze & compare Key Performance Indicators data with better practices data;

    c.   Develop recommendations for new Key Performance Indicators; and

    d.   Prepare a summary report of Key Performance Indicator findings and recommendations.

**(s)    AHG Divestiture Accounting-ODD**

i.    Program management procedures - assist Debtors with program management related to structuring, leading, and maintaining transition activities related to proposed dispositions, including assisting with:

    a.   team and program level status reporting, issue escalation and

work stream planning;

    b. "Day-1" readiness and "cutover planning";

    c. team and program level communication and meeting facilitation;

    d. key separation planning, execution, and

    e. summarization of outstanding issues via weekly report-outs to separation team leadership.

ii. Divestiture Accounting procedures - assist Debtors' management with the preparation of supporting documentation for accounting and reporting relating to closed dispositions including:

    a. summarization and tracking of journal entries recorded by trial balance upon disposition;

    b. obtaining and organizing supporting documentation for the journal entries;

    c. obtaining details and summarizing the calculation of gain/loss on disposition;

    d. coordination of the gathering of final signed agreements relating to the disposition; and

    e. coordination of obtaining accounting details necessary for the completion of Debtors' technical accounting position memo on the disposition.

**(t)**    **Steering Day-1 Readiness Assessment**

i. Assist Debtors' Finance with program management related to structuring and maintaining transition activities related to proposed disposition, including assisting with:

    a. team and program level status reporting, issue escalation and work stream planning;

    b. "Day-1" readiness and "cutover planning";

    c. team and program level communication and meeting facilitation; and

    d. key separation planning, execution, and summarization of outstanding issues via weekly report-outs to separation team leadership.

**(u)**    **Packard SAP Assessment**

i. Provide a detailed assessment of the SAP operating environment, internal controls and user interactions with respect to Inventory and related processes at Packard.

(v)     **Tax Accounting for Divestitures**

    i.    Provide tax consulting services with respect to Debtors' tax reporting for the planned divestitures including but not limited to:

    a.  Work with personnel responsible for pre-tax analysis for the divestitures;

    b.  Evaluate the corporate allocations and corporate journal vouchers (CJVs) for tax reporting impacts;

    c.  Review of existing tax provision information for impacted year (2002 through 2006, with emphasis on 2004 through 2006);

    d.  Develop tax reporting expectations based on this information between continuing and discontinued operations;

    e.  Develop templates to update existing tax reporting information for changes related to the divestitures;

    f.  Document assumptions and related tax allocation used to bridge historical tax reporting information into the continuing and discontinued operations presentation;

    g.  Review this information with Debtors' personnel for their approval and provide the template and documentation information for Debtors' personnel use to update in 2008 when 2007 year-end tax reporting information is available; and

    h.  review the 2007 quarterly tax calculations through September and provide allocation of tax expense between continuing and discontinued operations by quarter based on assumptions consistent with the above analysis for Debtors' review and use for 2008 financial reporting with 2007 comparison information and related template and documentation information.

(w)     **Steering Carve-Out**

    i.    Assist in the identification and collection of financial information related to the 2007 carve-out of the Debtors Affiliates from Debtors; and

    ii.    Assist with the identification of potential transaction issues relating to the 2007 financials (e.g. carve-out issues, allocation issues, redundant/stranded costs).

(x)     **Pharmacy Rebate Review**

    i.    Obtain Medco Claims data to assess the completeness and accuracy of rebates paid to Debtors and whether rebates paid were in agreement with the terms of the contract; and

    ii.    Evaluate and assess the transparency of manufacturer rebates payments made to Debtors.

(y)      **HFM COA Design Assistance**

    i.    Provide Project Management Office assistance for the Chart of Accounts Workstream 2; and

    ii.    Act as liaison between the Corporate Consolidation and Division Consolidation Record-to-Report Project and Debtor's System 9 Design team.

(z)      **Assistance with Accounting for Income Taxes**

    i.    Provide assistance with accounting for income taxes services with respect to Debtors' Domestic and International Tax Accounting Software Tools; and

    ii.    Assist Debtor with the development of enhancements to the Domestic Tax Staging, Annual and Quarterly Provision Accounting Packages and International Annual Provision Accounting package and testing enhancements.

(aa)      **FAS 142 Impairment Analysis**

    i.    Step 1 SFAS 142:  Perform valuation studies necessary to determine the fair values for each of the reporting units with goodwill as of the Valuation Date; and

    ii.    Step 2 of SFAS 142:  Perform valuation studies necessary to determine the implied fair value of goodwill including the valuation of tangible and identified intangible assets.

(bb)      **Record to Report - Tax Accounting**

    i.    Assist Debtor with the interviewing/collection information from Debtors personnel relating to interactions with the Tax Accounting Group; and

    ii.    Analyze results of interaction interviews, develop related observations, and document process flows for processes not previously identified.

(cc)      **Project Shark -FAS 141**

    i.    Provide a calculation of value for certain intangible assets arising from Debtors' acquisition of SEI.

(dd)      **UK Legal Entity Valuations**

    i.    Provide opinion of the fair market value of the equity of the

Debtors Affiliates Limited entities.

32.    The foregoing professional services performed by KPMG were necessary and appropriate to the administration of the Debtors' chapter 11 cases.  The professional services performed by KPMG were in the best interests of the Debtors and other parties-in-interest.  Compensation for the foregoing services, as requested, is commensurate with the complexity, importance, and nature of the problems, issues, or tasks involved.  The professional services were performed expediently and in an efficient manner.

33.    The professional services performed by KPMG on behalf of the Debtors during the Seventh Interim Period required an aggregate expenditure of 41,946.86 recorded hours by KPMG's professionals.  Of the aggregate time expended, 41,251.96 recorded hours were expended by partners, managing directors, directors, senior managers, managers, senior associates and associates of KPMG.

34.    During the Seventh Interim Period, KPMG billed the Debtors for time expended by professionals based on hourly rates ranging from $100 to $665 per hour.  Allowance of compensation in the amount requested would result in a blended hourly billing rate of approximately $332.22 (based on 41,251.96 recorded hours for professionals at KPMG's billing rates in effect at the time of the performance of services).  As noted above, annexed hereto as Exhibit C is a schedule listing each KPMG professional and paraprofessional who performed services in these cases during the Seventh Interim Period, the hourly rate charged by KPMG for services performed by each such individual and the aggregate number of hours and charges by each such individual.

## Actual and Necessary Disbursements of KPMG LLP

35.     As set forth in Exhibit D, KPMG has disbursed $1,992,450.10 for expenses incurred in providing professional services during the Seventh Interim Period.  The actual expenses incurred in providing professional services were necessary, reasonable, and justified to serve the needs of the Debtors, their estates, and creditors and KPMG has made every effort to minimize its disbursements in these cases.

## The Requested Compensation Should Be Allowed

36.     Section 331 of the Bankruptcy Code provides for interim compensation of professionals and incorporates the substantive standards of section 330 to govern the Court's award of such compensation.  11 U.S.C. § 331.  Section 330 provides that a court may award a professional employed under section 327 of the Bankruptcy Code "reasonable compensation for actual, necessary services rendered . . . and reimbursement for actual, necessary expenses."  *Id.* § 330(a)(1).  Section 330 also sets forth the criteria for the award of such compensation and reimbursement:

> In determining the amount of reasonable compensation to be awarded . . . , the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –
>
> > (A)     the time spent on such services;
> >
> > (B)     the rates charged for such services;
> >
> > (C)     whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
> >
> > (D)     whether the services were performed within a     reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

> (E)    with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
>
> (F)    whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

37.    The services for which KPMG seeks compensation and the expenditures for which KPMG seeks reimbursement in this Application were necessary for and beneficial to the orderly administration of the Debtors' estates and their rehabilitation and reorganization effort. KPMG worked assiduously to anticipate or respond to the Debtors' needs and assist in the Debtors' chapter 11 processes. These services and expenditures were necessary to and in the best interests of the Debtors' estates and creditors. Accordingly, the compensation requested herein is reasonable in light of the nature, extent, and value of such services to the Debtors, their estates, and all parties in interest.

38.    In accordance with sections 327(a) and 328(c) of the Bankruptcy Code, KPMG has been a "disinterested person," as such term is defined in section 101(14) of the Bankruptcy Code, and has not held or represented any interest adverse to the Debtors' estates, at all times during the Final Period.

39.    In sum, the services rendered by KPMG were necessary and beneficial to the Debtors' estates and were consistently performed in a timely manner commensurate with the complexity, importance, and nature of the issues involved, and approval of the compensation for professional services and reimbursement of expenses sought herein is warranted.

## **Conclusion**

WHEREFORE, KPMG respectfully requests that the Court enter an order: (i) allowing

KPMG compensation for actual and necessary professional services rendered during the Seventh

Interim Period in the aggregate amount of $20,801,830.43 and reimbursement for actual and

necessary expenses incurred during the Seventh Interim Period in the aggregate amount of

$1,992,450.10; (ii) approving and allowing, on a final basis, compensation in the amount of

$52,000,509.44 and reimbursement of expenses in the amount of $4,774,859.76 for the Final

Period; (iii) authorizing and directing the Debtors to release prior holdback amounts; (iv)

authorizing and directing the Debtors to pay KPMG the total amount of $1,736,675.08 of

outstanding fees and expenses in connection with KPMG's representation of the Debtors during

the Seventh Interim Period; (v) granting KPMG such other and further relief as the Court deems

just and proper.


Dated: December 31, 2009
New York, New York


                                   KING & SPALDING LLP


                                   By: /s/ H. Slayton Dabney, Jr.
                                       H. Slayton Dabney, Jr., Esq.
                                       1185 Avenue of the Americas
                                       New York, NY  10036-4003
                                       Tel:  (212) 556-2100
                                       Fax:  (212) 556-2222


                                       *Attorneys for KPMG LLP*

<u>Exhibit A</u>

Copies of the Retention Orders

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                            :
     In re                              :    Chapter 11
                                            :
DELPHI CORPORATION, et al.,                 :    Case No. 05-44481 (RDD)
                                            :
                   Debtors.   :    (Jointly Administered)
                                            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - -x

ORDER UNDER 11 U.S.C. §§ 327(a), 328(a), AND 1107(b)
AUTHORIZING EMPLOYMENT AND RETENTION OF
KPMG LLP AS TAX AND TRANSACTION SERVICES ADVISORS
TO DEBTORS, EFFECTIVE NUNC PRO TUNC TO OCTOBER 8, 2005

("KPMG RETENTION ORDER")

Upon the application dated February 14, 2006 (the "Application") of Delphi

Corporation and certain of its domestic subsidiaries and affiliates, debtors and

debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), for an order (the

"Order") under 11 U.S.C. §§ 327(a), 328(a), and 1107(b) and Fed. R. Bankr. P. 2014 authorizing

the employment and retention of KPMG LLP ("KPMG") as tax and transaction services advisors

to the Debtors, effective nunc pro tunc to October 8, 2005; and upon the Affidavit of Patrick N.

Karpen, sworn to February 9, 2006, in support of the Application; and this Court having

determined that the relief requested in the Application is in the best interests of the Debtors, their

estates, their creditors, and other parties-in-interest; and it appearing that proper and adequate

notice of the Application has been given and that no other or further notice is necessary; and

after due deliberation thereon; and good and sufficient cause appearing therefor, it hereby is

ORDERED, ADJUDGED, AND DECREED THAT:

1.    The Application is GRANTED on a final basis.



2.    Subject to the terms of this Order, the Debtors' employment of KPMG as one of their tax and transaction services advisors pursuant to the terms and conditions of the Application is approved pursuant to sections 327(a), 328(a), and 1107(b) of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code") and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), effective nunc pro tunc to October 8, 2005.

3.    KPMG shall be compensated for fees and expenses in accordance with the standards and procedures set forth in sections 330 and 331 of the Bankruptcy Code and all applicable Bankruptcy Rules, Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York (the "Local Rules"), guidelines established by the Office of the United States Trustee (the "U.S. Trustee"), and further orders of this Court.

4.    Notwithstanding anything to the contrary set forth in the engagement letters attached to the Application (the "Engagement Letters"), KPMG, without the Debtors' prior written approval, may subcontract a portion of its responsibilities under the Engagement Letters to any of the member firms of KPMG International (the "KPMG Member Firms"); provided, however, that KPMG shall remain fully and solely responsible for all of KPMG's liabilities and obligations under the Engagement Letters.

5.    Notwithstanding anything to the contrary set forth in the Engagement Letters, KPMG shall be solely responsible for all of KPMG's liabilities and obligations under the Engagement Letters, whether incurred or performed, in whole or in part, by KPMG, any affiliate of KPMG, any KPMG Member Firm, or any of their respective affiliates.  The Debtors shall have no recourse, and shall bring no claim, against any KPMG Member Firm other than KPMG, or against any subcontractors, members, shareholders, directors, officers, managers, partners,

2

agents, representatives, or employees of any KPMG Member Firm (or any of their respective

successors or permitted assigns), or any of their respective assets, with respect to the services or

otherwise under the Engagement Letters.

6.    All requests of KPMG for payment of indemnity pursuant to the Application

shall be made by means of an application (interim or final as the case may be) and shall be

subject to review by this Court to ensure that payment of such indemnity conforms to the terms

of the Application and is reasonable based upon the circumstances of the litigation or settlement

in respect of which indemnity is sought; provided, however, that in no event shall KPMG be

indemnified for a claim that a court determines by final order to have arisen out of KPMG's own

bad-faith, self-dealing, breach of fiduciary duty (if any), gross negligence, or willful misconduct.

7.    In the event that KPMG seeks reimbursement for attorneys' fees from the

Debtors pursuant to the Application, the invoices and supporting time records from such

attorneys shall be included in KPMG's own applications (both interim and final) and such

invoices and time records shall be subject to the U.S. Trustee's guidelines for compensation and

reimbursement of expenses and the approval of this Court under the standards of sections 330

and 331 of the Bankruptcy Code, without regard to whether such attorney has been retained

under section 327 of the Bankruptcy Code and without regard to whether such attorneys' services

satisfy section 330(a)(3)(C) of the Bankruptcy Code.

8.    KPMG's limitations of liability, as set forth in the Engagement Letters, shall

not apply to claims arising out of KPMG's own bad-faith, self-dealing, breach of fiduciary duty

(if any), gross negligence, or willful misconduct.

9.    Any party-in-interest shall have the right to raise the issue of the application

of KPMG's prepetition retainer to postpetition fees and expenses.

10.    To the extent that this Order is inconsistent with the Engagement Letters, this Order shall govern.

11.    With the exception of KPMG, the KPMG Member Firms providing services under the Engagement Letters shall be permitted to use category codes to describe the time spent on services rendered, rather than the more detailed descriptions usually required for fee applications.

12.    This Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

13.    The requirement under Local Rule 9013-1(b) for the service and filing of a separate memorandum of law is deemed satisfied by the Application.

Dated:    New York, New York
          March 3, 2006


                                        /s/Robert D. Drain
                                        _____
                                        UNITED STATES BANKRUPTCY JUDGE



NO OBJECTION:

DEIRDRE A. MARTINI
UNITED STATES TRUSTEE

By: /s/ Alicia M. Leonhard
    Alicia M. Leonhard
    Attorney

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                              :
    In re                 :   Chapter 11
                                              :
DELPHI CORPORATION, et al.,                   :   Case No. 05-44481 (RDD)
                                              :
               Debtors.   :   (Jointly Administered)
                                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ORDER UNDER 11 U.S.C. §§ 327(a), 328(a), AND 1107(b) AUTHORIZING
(I) EMPLOYMENT AND RETENTION OF KPMG LLP AS ADVISORY AND VALUATION
ADVISORS TO DEBTORS, EFFECTIVE <u>NUNC</u> <u>PRO</u> <u>TUNC</u> TO FEBRUARY 16, 2006,
(II) CONTINUED RETENTION OF KPMG LLP AS TAX ADVISORS TO DEBTORS,
EFFECTIVE <u>NUNC</u> <u>PRO</u> <u>TUNC</u> TO JANUARY 1, 2006, AND (III) ADDITIONAL
INTERNATIONAL EXECUTIVE TAX SERVICES TO BE RENDERED BY KPMG LLP TO
<u>DEBTORS EFFECTIVE NUNC PRO TUNC TO JANUARY 18, 2006</u>

("KPMG LLP SUPPLEMENTAL RETENTION ORDER")

          Upon the supplemental application dated April 20, 2006 (the "Application") of

Delphi Corporation and certain of its domestic subsidiaries and affiliates, debtors and

debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), for an order (the

"Order") under 11 U.S.C. §§ 327(a), 328(a), and 1107(b) and Fed. R. Bankr. P. 2014 authorizing

(i) the employment and retention of KPMG LLP as advisory and valuation advisors to the

Debtors, effective <u>nunc</u> <u>pro</u> <u>tunc</u> to February 16, 2006, (ii) the continued retention of KPMG LLP

as tax advisors to the Debtors, effective <u>nunc</u> <u>pro</u> <u>tunc</u> to January 1, 2006, and (iii) additional

international executive tax services to be rendered by KPMG LLP to the Debtors, effective <u>nunc</u>

<u>pro</u> <u>tunc</u> to January 18, 2006; and this Court having determined that the relief requested in the

Application is in the best interests of the Debtors, their estates, their creditors, and other parties-

in-interest; and it appearing that proper and adequate notice of the Application has been given

and that no other or further notice is necessary; and after due deliberation thereon; and good and

sufficient cause appearing therefor, it hereby is

ORDERED, ADJUDGED, AND DECREED THAT:

1.    The Application is GRANTED on a final basis.

2.    Subject to the terms of this Order, the Debtors' employment of KPMG LLP as

one of their advisory and valuation advisors pursuant to the terms and conditions of the

Application is approved pursuant to sections 327(a), 328(a), and 1107(b) of title 11 of the United

States Code, 11 U.S.C. §§ 101-1532, as amended (the "Bankruptcy Code") and Rule 2014 of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), effective nunc pro tunc to

February 16, 2006.

3.    Subject to the terms of this Order, the Debtors' continued employment of

KPMG LLP as tax advisors to the Debtors pursuant to the terms and conditions of the

Application is approved pursuant to sections 327(a), 328(a), and 1107(b) of the Bankruptcy Code

and Rule 2014 of the Bankruptcy Rules, effective nunc pro tunc to January 1, 2006.

4.    Subject to the terms of this Order, the Debtors' employment of KPMG LLP to

perform additional international executive tax services pursuant to the terms and conditions of

the Application is approved pursuant to sections 327(a), 328(a), and 1107(b) of the Bankruptcy

Code and Rule 2014 of the Bankruptcy Rules, effective nunc pro tunc to January 18, 2006.

5.    KPMG LLP shall be compensated for fees and expenses in accordance with

the standards and procedures set forth in sections 330 and 331 of the Bankruptcy Code and all

applicable Bankruptcy Rules, Local Bankruptcy Rules for the United States Bankruptcy Court

for the Southern District of New York (the "Local Rules"), guidelines established by the Office

of the United States Trustee (the "U.S. Trustee"), and further orders of this Court.

2

6.    KPMG LLP, shall ensure that it does not charge the Debtors' estates for duplicative services.

7.    Notwithstanding anything to the contrary set forth in the engagement letters attached to the Application (the "Engagement Letters"), KPMG LLP, without the Debtors' prior written approval, may subcontract a portion of its responsibilities under the Engagement Letters to any of the member firms of KPMG International (the "KPMG Member Firms"); <u>provided</u>, <u>however</u>, that KPMG LLP shall remain fully and solely responsible for all of KPMG LLP's liabilities and obligations under the Engagement Letters.

8.    Notwithstanding anything to the contrary set forth in the Engagement Letters, KPMG LLP shall be solely responsible for all of KPMG LLP's liabilities and obligations under the Engagement Letters, whether incurred or performed, in whole or in part, by KPMG LLP, any affiliate of KPMG LLP, any KPMG Member Firm, or any of their respective affiliates.  The Debtors shall have no recourse, and shall bring no claim, against any KPMG Member Firm other than KPMG LLP, or against any subcontractors, members, shareholders, directors, officers, managers, partners, agents, representatives, or employees of any KPMG Member Firm (or any of their respective successors or permitted assigns), or any of their respective assets, with respect to the services or otherwise under the Engagement Letters.

9.    All requests of KPMG LLP for payment of indemnity pursuant to the Application shall be made by means of an application (interim or final as the case may be) and shall be subject to review by this Court to ensure that payment of such indemnity conforms to the terms of the Application and is reasonable based upon the circumstances of the litigation or settlement in respect of which indemnity is sought; <u>provided</u>, <u>however</u>, that in no event shall KPMG LLP be indemnified for a claim that a court determines by final order to have arisen out

3

of KPMG LLP's own bad-faith, self-dealing, breach of fiduciary duty (if any), gross negligence, or willful misconduct or any other exception to indemnification contained in the Application.

10.    In the event that KPMG LLP seeks reimbursement for attorneys' fees from the Debtors pursuant to the Application, the invoices and supporting time records from such attorneys shall be included in KPMG LLP's own applications (both interim and final) and such invoices and time records shall be subject to the U.S. Trustee's guidelines for compensation and reimbursement of expenses and the approval of this Court under the standards of sections 330 and 331 of the Bankruptcy Code, without regard to whether such attorney has been retained under section 327 of the Bankruptcy Code and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code.

11.    KPMG LLP's limitations of liability, as set forth in the Engagement Letters, shall not apply to claims arising out of KPMG LLP's own bad-faith, self-dealing, breach of fiduciary duty (if any), gross negligence, or willful misconduct or any other limitation thereon set forth in the Application.

12.    Any party-in-interest shall have the right to raise the issue of the application of KPMG LLP's prepetition retainer to postpetition fees and expenses.

13.    To the extent that this Order is inconsistent with the Engagement Letters, this Order shall govern.

14.    With the exception of KPMG LLP, the KPMG Member Firms providing services under the Engagement Letters shall be permitted to use category codes to describe the time spent on services rendered, rather than the more detailed descriptions usually required for fee applications.

4

15.    This Court shall retain jurisdiction to hear and determine all matters arising

from the implementation of this Order.

16.    The requirement under Local Rule 9013-1(b) for the service and filing of a

separate memorandum of law is deemed satisfied by the Application.

Dated:    New York, New York
          May 2, 2006


/s/Robert D. Drain
_____
UNITED STATES BANKRUPTCY JUDGE

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                             :

|  |  |  |
|---|---|---|
| In re | : | Chapter 11 |
|  | : |  |
| DELPHI CORPORATION, et al., | : | Case No. 05-44481 (RDD) |
|  | : |  |
| Debtors. | : | (Jointly Administered) |
|  | : |  |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ORDER UNDER 11 U.S.C. §§ 327(a), 328(a), 1107(b) AND FED. R. BANKR.
P. 2014 AUTHORIZING EMPLOYMENT AND RETENTION OF KPMG LLP TO
ASSIST DEBTORS IN (I) CERTAIN IMPROVEMENTS TO INTERNATIONAL
TAX REPORTING PACKAGE AND PROCESSES EFFECTIVE <u>NUNC PRO
TUNC</u> TO AUGUST 1, 2006, (II) CERTAIN INTERNAL REPORTING
INITIATIVES EFFECTIVE <u>NUNC PRO TUNC</u> TO MAY 9, 2006, (III) A
SPECIAL INVESTIGATION EFFECTIVE <u>NUNC PRO TUNC</u> TO JULY 10,
2006, (IV) CERTAIN TRANSFER PRICING SERVICES EFFECTIVE <u>NUNC
PRO TUNC</u> TO MAY 19, 2006, (V) CERTAIN IMPROVEMENTS TO FINANCIAL
CLOSE, CONSOLIDATION AND MANAGEMENT REPORTING
<u>PROCESSES, AND (VI) CERTAIN ADDITIONAL SERVICES</u>

Upon the Second Supplemental Application dated November 10, 2006 (the

"Second Supplemental Application")[1] of Delphi Corporation and certain of its domestic

subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases

(collectively, the "Debtors"), for an order (the "Second Supplemental Retention Order") pursuant

to sections 327(a), 328(a), and 1107(b) of title 11 of the United States Code, as amended (the

"Bankruptcy Code") and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules") authorizing the employment and retention of KPMG LLP ("KPMG") to

assist the Debtors in (i) certain improvements to the international tax reporting package and

processes effective <u>nunc pro tunc</u> to August 1, 2006 (representing phase II of the services under

---

[1]      Capitalized terms used herein but not otherwise defined shall have those meanings set forth in the Second
Supplemental Application.



the previously approved International Project Engagement Letter dated May 24, 2005, and the

Revised International Project Engagement Letter dated September 12, 2005, both of which were

previously approved by the Court), (ii) certain internal reporting initiatives effective nunc pro

tunc to May 9, 2006, (iii) a special investigation effective nunc pro tunc to July 10, 2006, (iv)

certain transfer pricing services effective nunc pro tunc to May 19, 2006 (representing services

of the type contemplated in paragraph 16(a)(ii) of the Original Application), (v) certain

improvements to the financial close, consolidation and management reporting processes, and (vi)

certain additional services (including the renewal and extension of existing services and

additional phase services under existing engagements by and between the Debtors and KPMG)

of a nature consistent with the services and compensation terms covered in retention applications

previously approved by the Court ("Additional Services"); and there being no objection to the

Second Supplemental Application and this Court having determined that the relief requested in

the Second Supplemental Application is in the best interests of the Debtors, their estates, their

creditors, and other parties-in-interest; and it appearing that proper and adequate notice of the

Second Supplemental Application has been given and that no other or further notice is necessary;

and after due deliberation thereon; and good and sufficient cause appearing therefor, it hereby is

ORDERED, ADJUDGED, AND DECREED THAT:

1.    The Second Supplemental Application is GRANTED on a final basis.

2.    Subject to the terms of this Second Supplemental Retention Order, the

Debtors' employment and retention of KPMG to assist the Debtors in certain improvements to

the international tax reporting package and processes pursuant to the terms and conditions of the

Second Supplemental Application and the International Tax Package Improvement Project

2

Engagement Letter is approved pursuant to sections 327(a), 328(a), and 1107(b) of the Bankruptcy Code and Bankruptcy Rule 2014, effective <u>nunc</u> <u>pro</u> <u>tunc</u> to August 1, 2006.

3.     Subject to the terms of this Second Supplemental Order, the Debtors' employment and retention of KPMG to assist the Debtors in certain internal reporting initiatives pursuant to the terms and conditions of the Second Supplemental Application and the Internal Reporting Engagement Letter is approved pursuant to sections 327(a), 328(a), and 1107(b) of the Bankruptcy Code and Bankruptcy Rule 2014, effective <u>nunc</u> <u>pro</u> <u>tunc</u> to May 9, 2006.

4.     Subject to the terms of this Second Supplemental Order, the Debtors' employment and retention of KPMG to assist the Debtors in a special investigation pursuant to the terms and conditions of the Second Supplemental Application and the Special Investigation Engagement Letter is approved pursuant to sections 327(a), 328(a), and 1107(b) of the Bankruptcy Code and Bankruptcy Rule 2014, effective <u>nunc</u> <u>pro</u> <u>tunc</u> to July 10, 2006.

5.     Subject to the terms of this Second Supplemental Order, the Debtors' employment and retention of KPMG to assist the Debtors in certain transfer pricing services pursuant to the terms and conditions of the Second Supplemental Application and the Transfer Pricing Services Engagement Letter is approved pursuant to sections 327(a), 328(a), and 1107(b) of the Bankruptcy Code and Bankruptcy Rule 2014, effective <u>nunc</u> <u>pro</u> <u>tunc</u> to May 19, 2006.

6.     Subject to the terms of this Second Supplemental Order, the Debtors' employment and retention of KPMG to assist the Debtors in certain improvements to the financial close, consolidation and management reporting processes pursuant to the terms and conditions of the Second Supplemental Application and the Financial Close, Consolidation And Management Reporting Project Engagement Letter is approved pursuant to sections 327(a), 328(a), and 1107(b) of the Bankruptcy Code and Bankruptcy Rule 2014.

3

7.    Subject to the terms of this Second Supplemental Order, the Debtors' employment and retention of KPMG to assist the Debtors in certain Additional Services is approved pursuant to the terms and conditions of the Second Supplemental Application and sections 327(a), 328(a), and 1107(b) of the Bankruptcy Code and Bankruptcy Rule 2014.

8.    KPMG shall be compensated for fees and expenses in accordance with the standards and procedures set forth in sections 330 and 331 of the Bankruptcy Code and all applicable Bankruptcy Rules, Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York (the "Local Rules"), guidelines established by the Office of the United States Trustee (the "U.S. Trustee"), and further orders of this Court.

9.    KPMG shall take reasonable steps to ensure that it does not charge the Debtors' estates for duplicative services.

10.    Notwithstanding anything to the contrary set forth in the Second Supplemental Engagement Letters and any Engagement Confirmation of Additional Services, without the Debtors' prior written approval, KPMG may subcontract a portion of its responsibilities under the Second Supplemental Engagement Letters and any Engagement Confirmation of Additional Services with certain other member firms of KPMG International (the "KPMG Member Firms"); provided, however, that KPMG shall remain fully and solely responsible for all of KPMG's liabilities and obligations under the Second Supplemental Engagement Letters and any Engagement Confirmation of Additional Services.

11.    Notwithstanding anything to the contrary set forth in the Second Supplemental Engagement Letters and any Engagement Confirmation of Additional Services, KPMG shall be solely responsible for all of KPMG's liabilities and obligations under the Second Supplemental Engagement Letters and any Engagement Confirmation of Additional Services,

4

whether performed, in whole or in part, by KPMG, any affiliate of KPMG, any KPMG Member Firm, or any of their respective affiliates.  The Debtors shall have no recourse, and shall bring no claim, against any KPMG Member Firm other than KPMG, or against any subcontractors, members, shareholders, directors, officers, managers, partners, agents, representatives, or employees of any KPMG Member Firm (or any of their respective successors or permitted assigns), or any of their respective assets, with respect to the services, or otherwise under the Second Supplemental Engagement Letters and any Engagement Confirmation of Additional Services.

12.    All requests of KPMG for payment of indemnity pursuant to the Second Supplemental Engagement Letters and any Engagement Confirmation of Additional Services shall be made by means of an application (interim or final as the case may be) and shall be subject to review by this Court to ensure that payment of such indemnity conforms to the terms of the Second Supplemental Engagement Letters and any Engagement Confirmation of Additional Services and is reasonable based upon the circumstances of the litigation or settlement in respect of which indemnity is sought; provided, however, that in no event shall KPMG be indemnified for a claim that a court determines by a final order to have risen out of KPMG's own bad-faith, self-dealing, breach of fiduciary duty, gross negligence, or willful misconduct, if any.

13.    In the event that KPMG seeks reimbursement for attorney's fees from the Debtors pursuant to the Second Supplemental Engagement Letters and any Engagement Confirmation of Additional Services, the invoices and supporting time records from such attorneys shall be included in KPMG's own applications (both interim and final) and such invoices and time records shall be subject to the U.S. Trustee's guidelines for compensation and

reimbursement of expenses and the approval of this Court under the standard of sections 330 and

331 of the Bankruptcy Code, without regard to whether such attorney has been retained under

section 327 of the Bankruptcy Code and without regard to whether such attorney's services

satisfy section 330(a)(3)(C) of the Bankruptcy Code.

14.    KPMG's limitation of liability, as set forth in the Second Supplemental

Engagement Letters and any Engagement Confirmation Additional Services, shall not apply to

claims arising out of KPMG's own bad-faith, self-dealing, breach of fiduciary duty, gross

negligence, or willful misconduct, if any.

15.    Any dispute or claim between KPMG and the Debtors arising out of or

relating to the Second Supplemental Engagement Letters and any Engagement Confirmation of

Additional Services or any other services provided by or on behalf of KPMG to the Debtors or at

the Debtors' request (including any dispute or claim involving any person or entity for whose

benefit the services in question are or were provided) will be resolved in accordance with the

dispute resolution procedures as set forth in the Second Supplemental Engagement Letters and

any Engagement Confirmation of Additional Services, provided, however, that any dispute or

claim relating to their engagement also may be brought before this Court.

16.    Notwithstanding anything to the contrary set forth in the Second

Supplemental Engagement Letters and any Engagement Confirmation of Additional Services,

the Debtors or KPMG may terminate any of the Second Supplemental Engagement Letters and

any Engagement Confirmation of Additional Services in the event of breach by the other party,

which breach is not cured within thirty days after notice by the non-breaching party, provided,

however, that the terminating party shall notify the other.  In addition, the terminating party shall

provide the Court, the U.S. Trustee, the Creditors' Committee, and the Fee Committee with ten business days' notice of termination.

17.    Any party-in-interest shall have the right to raise the issue of the application of KPMG's prepetition retainer to postpetition fees and expenses.

18.    To the extent that this Second Supplemental Retention Order is inconsistent with the Second Supplemental Engagement Letters and any Engagement Confirmation of Additional Services, this Second Supplemental Retention Order shall govern.

19.    With the exception of KPMG, the KPMG Member Firms providing services under the Second Supplemental Engagement Letters and any Engagement Confirmation of Additional Services shall be permitted to use category codes to describe the time spent on services rendered, rather than the more detailed descriptions usually required for fee applications.

20.    This Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Second Supplemental Retention Order.

21.    The requirement under Local Rule 9013-1(b) for the service and filing of a separate memorandum of law is deemed satisfied by the Second Supplemental Application.

Dated:    New York, New York
          December 6, 2006


                                        /s/Robert D. Drain
                            _____
                              UNITED STATES BANKRUPTCY JUDGE

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                             :

     In re                         :     Chapter 11
                               :

DELPHI CORPORATION, et al.,     :     Case No. 05-44481 (RDD)
                               :

             Debtors.     :     (Jointly Administered)
                               :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ORDER UNDER 11 U.S.C. §§ 327(a), 328(a), 1107(b) AND
FED. R. BANKR. P. 2014 AUTHORIZING EMPLOYMENT AND
RETENTION OF KPMG LLP TO (I) ENTER INTO MASTER PROFESSIONAL
SERVICES AGREEMENT WITH DEBTORS, (II) CONTINUE TO PROVIDE DEBTORS
WITH GLOBAL MOBILITY ADVISORY SERVICES RELATED TO INTERNATIONAL
ASSIGNEES EFFECTIVE <u>NUNC</u> <u>PRO</u> <u>TUNC</u> TO FEBRUARY 9, 2007, (III) CONTINUE TO
PROVIDE DEBTORS' WITH TAX CONSULTING SERVICES EFFECTIVE <u>NUNC</u> <u>PRO</u>
<u>TUNC</u> TO FEBRUARY 9, 2007, (IV) CONTINUE TO PROVIDE DEBTORS WITH
INTERNATIONAL ASSIGNMENT SERVICES RELATED TO INTERNATIONAL
ASSIGNEES EFFECTIVE <u>NUNC</u> <u>PRO</u> <u>TUNC</u> TO
JANUARY 31, 2007, (V) PROVIDE DEBTORS WITH CERTAIN FRESH
START SERVICES EFFECTIVE <u>NUNC</u> <u>PRO</u> <u>TUNC</u> TO NOVEMBER 16, 2006,
<u>AND (VI) PROVIDE DEBTORS WITH CERTAIN ADDITIONAL SERVICES</u>

          Upon the Third Supplemental Retention Application, dated March 16, 2007 (the

"Third Supplemental Retention Application"),[1] of Delphi Corporation and certain of its domestic

subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases

(collectively, the "Debtors"), for an order (the "Third Supplemental Retention Order") pursuant

to sections 327(a), 328(a), and 1107(b) of title 11 of the United States Code, 11 U.S.C. §§ 101-

1330, as amended and in effect on October 8, 2005 (the "Bankruptcy Code") and Rule 2014 of

the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") authorizing the

employment and retention of KPMG LLP ("KPMG") to (i) enter into the Master Professional

---

[1]     Capitalized terms used herein but not otherwise defined shall have those meanings set forth in the Third
Supplemental Retention Application.



Services Agreement with the Debtors (the "Master Agreement"), effective nunc pro tunc to

February 9, 2007, (ii) continue to provide the Debtors with global mobility advisory services

("Global Mobility Services"), effective nunc pro tunc to February 9, 2007, (iii) continue to

provide the Debtors with tax consulting services ("Tax Consulting Services"), effective nunc pro

tunc to February 9, 2007, (iv) continue to provide the Debtors with international assignment

services related to international assignees ("International Assignment Services"), effective nunc

pro tunc to January 31, 2007, (v) provide the Debtors with certain fresh start services ("Fresh

Start Services"), effective nunc pro tunc to November 16, 2006, and (vi) provide the Debtors

with certain additional services (including the renewal and extension of existing services,

additional phase services under existing engagements, and additional services under future

statements of work between the Debtors and KPMG in accordance with the Master Agreement)

(the "Additional Services"); and no objection to the Third Supplemental Retention Application

having been made; and this Court having determined that the relief requested in the Third

Supplemental Retention Application is in the best interests of the Debtors, their estates, their

creditors, and other parties-in-interest; and it appearing that proper and adequate notice of the

Third Supplemental Retention Application has been given and that no other or further notice is

necessary; and after due deliberation thereon; and good and sufficient cause appearing therefor, it

is hereby

ORDERED, ADJUDGED, AND DECREED THAT:

1.    The Third Supplemental Retention Application is GRANTED on a final

basis.

2.    Subject to the terms of this Third Supplemental Retention Order, and

pursuant to the terms and conditions of the Third Supplemental Retention Application, the

2

Debtors are authorized to enter into the Master Agreement and the Master Agreement is

approved, pursuant to sections 327(a), 328(a), and 1107(b) of the Bankruptcy Code and

Bankruptcy Rule 2014, effective <u>nunc</u> <u>pro</u> <u>tunc</u> to February 9, 2007.

3.    Subject to the terms of this Third Supplemental Retention Order, the Debtors'

employment and retention of KPMG to continue to provide the Debtors with additional Global

Mobility Services pursuant to the terms and conditions of the Third Supplemental Retention

Application and the Master Agreement and the corresponding Global Mobility SOW is approved

pursuant to sections 327(a), 328(a), and 1107(b) of the Bankruptcy Code and Bankruptcy Rule

2014, effective <u>nunc</u> <u>pro</u> <u>tunc</u> to January 31, 2007.

4.    Subject to the terms of this Third Supplemental Retention Order, the Debtors'

employment and retention of KPMG to continue to provide the Debtors with Tax Consulting

Services pursuant to the terms and conditions of the Third Supplemental Retention Application

and the Master Agreement and the corresponding Tax Consulting SOW is approved pursuant to

sections 327(a), 328(a), and 1107(b) of the Bankruptcy Code and Bankruptcy Rule 2014,

effective <u>nunc</u> <u>pro</u> <u>tunc</u> to February 9, 2007.

5.    Subject to the terms of this Third Supplemental Retention Order, the Debtors'

employment and retention of KPMG to continue to provide the Debtors with International

Assignment Services pursuant to the terms and conditions of the Third Supplemental Retention

Application and the Master Agreement and the corresponding International Assignment SOW is

approved pursuant to sections 327(a), 328(a), and 1107(b) of the Bankruptcy Code and

Bankruptcy Rule 2014, effective <u>nunc</u> <u>pro</u> <u>tunc</u> to January 31, 2007.

6.    Subject to the terms of this Third Supplemental Retention Order, the Debtors'

employment and retention of KPMG to provide the Debtors with the Fresh Start Services

pursuant to the terms and conditions of the Third Supplemental Retention Application and the Master Agreement and the corresponding Fresh Start Services SOW is approved pursuant to sections 327(a), 328(a), and 1107(b) of the Bankruptcy Code and Bankruptcy Rule 2014, effective nunc pro tunc to November 16, 2006.

7.    Subject to the terms of this Third Supplemental Retention Order, the Debtors' employment and retention of KPMG to provide the Debtors with certain Additional Services pursuant to the terms and conditions of the Third Supplemental Retention Application and the Master Agreement and the corresponding future statements of work is approved pursuant to sections 327(a), 328(a), and 1107(b) of the Bankruptcy Code and Bankruptcy Rule 2014.

8.    KPMG shall be compensated for its fees and expenses in accordance with the standards and procedures set forth in sections 330 and 331 of the Bankruptcy Code and all applicable Bankruptcy Rules, Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York (the "Local Rules"), guidelines established by the Office of the United States Trustee (the "U.S. Trustee Guidelines"), and further orders of this Court.

9.    KPMG shall take reasonable steps to ensure that it does not charge the Debtors' estates for duplicative services.

10.    Notwithstanding anything to the contrary set forth in the Master Agreement or SOWs, without the Debtors' prior written approval, KPMG may subcontract a portion of its responsibilities under the Master Agreement or SOWs with certain other member firms of KPMG International (the "KPMG Member Firms"); provided, however, that KPMG shall remain fully and solely responsible for all of KPMG's liabilities and obligations under the Master Agreement and SOWs whether performed, in whole or in part, by KPMG, any affiliate of KPMG, any KPMG Member Firm or any of the other respective affiliates.

11.    Any dispute or claim between KPMG and the Debtors arising out of, or relating to, the Master Agreement or any SOWs shall be brought before this Court.

12.    All requests of KPMG for payment of indemnity pursuant to the Master Agreement or SOWs shall be made by means of an application (interim or final as the case may be) and shall be subject to review by this Court to ensure that payment of such indemnity conforms to the terms of the Master Agreement or SOW and is reasonable based upon the circumstances of the litigation or settlement in respect of which indemnity is sought; provided, however, that in no event shall KPMG be indemnified for a claim that a court determines by a final order to have risen out of KPMG's own bad faith, self-dealing, breach of fiduciary duty, gross negligence, or willful misconduct, if any.

13.    In the event that KPMG seeks reimbursement for attorney's fees from the Debtors pursuant to the Master Agreement or SOWs, the invoices and supporting time records from such attorneys shall be included in KPMG's own applications (both interim and final) and such invoices and time records shall be subject to the U.S. Trustee Guidelines for compensation and reimbursement of expenses and the approval of this Court under the standard of sections 330 and 331 of the Bankruptcy Code, without regard to whether such attorney has been retained under section 327 of the Bankruptcy Code and without regard to whether such attorney's services satisfy section 330(a)(3)(C) of the Bankruptcy Code.

14.    KPMG's liability for any losses incurred by the Debtors as a result of breach of contract, negligence, or other tort committed by KPMG, regardless of the theory of liability asserted, as set forth in the International Assignment SOW and the Global Mobility SOW, shall be limited to no more than two times the total amount of fees paid to KPMG for services rendered under the International Assignment SOW and the Global Mobility SOW.

15.    KPMG's liability for any losses incurred by the Debtors as a result of breach of contract, negligence, or other tort committed by KPMG, regardless of the theory of liability asserted, as set forth in the Tax Consulting SOW shall be limited to no more than five times the total amount of fees paid to KPMG for services rendered under the Tax Consulting SOW.

16.    KPMG's liability for any losses incurred by the Debtors as a result of breach of contract, negligence, or other tort committed by KPMG, regardless of the theory of liability asserted, as set forth in the Fresh Start SOW, shall be limited to no more than the total amount of fees paid to KPMG for services rendered under the Fresh Start SOW.

17.    KPMG's limitation of liability, as set forth above and in the Master Agreement and SOWs shall not apply to claims arising out of KPMG's own bad faith, self-dealing, breach of fiduciary duty, gross negligence, or willful misconduct, if any.

18.    The Master Agreement expires, upon its terms, on December 31, 2007, whereupon KPMG and the Debtors may extend the Master Agreement for successive one year periods.  Each SOW shall become effective as of the date of the commencement of services to be rendered under such SOW, or, if earlier, the date of execution of such SOW.  Each SOW shall remain effective until the completion of the services to be rendered under the applicable SOW.

19.    Notwithstanding anything to the contrary set forth in the Master Agreement or SOWs, KPMG and the Debtors may terminate the Master Agreement or any SOW in the event of a material breach of the Master Agreement that is not cured within 30 days after receipt of written notice of such breach.  Additionally, under the Master Agreement, the Debtors may terminate any SOW for convenience at any time upon 30 days' prior written notice.  KPMG may terminate any SOW at any time upon 30 days' notice to the Debtors in the event of any change in law, rule, regulation, or professional standards that would cause the continued provision of the

services under such SOW by KPMG to violate such law, rule, regulation, or professional

standard or in the event of a sale by KPMG of the practice providing the services under such

SOW if the Debtors elect not to consent to an assignment to the party acquiring such practice

from KPMG.  The terminating party shall provide the Court, the Office of the United States

Trustee, counsel for the Creditors' Committee, and counsel for the Fee Committee with ten

business days' notice of termination.

       20.    Any party-in-interest shall have the right to raise the issue of the application

of KPMG's prepetition retainer to postpetition fees and expenses.

       21.    To the extent that this Third Supplemental Retention Order is inconsistent

with the Master Agreement or SOWs, this Third Supplemental Retention Order shall govern.

       22.    With the exception of KPMG, the KPMG Member Firms providing services

under the Master Agreement or SOW shall be permitted to use category codes to describe the

time spent on services rendered, rather than the more detailed descriptions usually required for

fee applications.

       23.    This Court shall retain jurisdiction to hear and determine all matters arising

from the implementation of this Third Supplemental Retention Order.

24.    The requirement under Local Rule 9013-1(b) for the service and filing of a

separate memorandum of law is deemed satisfied by the Third Supplemental Retention

Application.


Dated:    New York, New York
         March 30, 2007


                                        /s/Robert D. Drain
                                    _____
                                     UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT B

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
----------------------------------------------------------------- x
                                        :
In re:                                  :         Chapter 11
                                        :
DELPHI CORPORATION, et al.,             :         Case No. 05-44481 (RDD)
                                        :
                 Debtors.               :         (Jointly Administered)
                                        :
                                        :
----------------------------------------------------------------- x
```

CERTIFICATION OF GARY A. SILBERG UNDER GUIDELINES
FOR FEES AND DISBURSEMENTS FOR PROFESSIONALS IN
RESPECT OF SEVENTH INTERIM AND FINAL FEE APPLICATION
OF KPMG LLP, AS TAX AND TRANSACTION SERVICES ADVISORS
AND ADVISORY AND VALUATION SERVICES ADVISORS TO THE DEBTORS

I, Gary A. Silberg, hereby certify that:

1.      I am a Certified Public Accountant and a Partner of KMPG LLP ("KPMG"), with

responsibility for the chapter 11 cases of Delphi Corporation and its above-captioned affiliated

debtors (collectively, the "Debtors"), in respect of compliance with (i) the Amended Guidelines

for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy

Cases, adopted by the Court on April 19, 1995 (the "Local Guidelines"), (ii) the Guidelines for

Reviewing Applications for Compensation & Reimbursement of Expenses filed under 11 U.S.C.

§ 330 promulgated by the Office of the United States Trustee (the "UST Guidelines"), and

(iii) the Order Under 11 U.S.C. § 331 Establishing Procedures for Interim Compensation and

Reimbursement of Expenses for Professionals, entered November 4, 2005 (as supplemented, the

"Fee Order" and, together with the Local Guidelines and the UST Guidelines, the "Guidelines").

2.      This certification is made, pursuant to the Guidelines, in respect of the Seventh

Interim and Final Application of KPMG LLP, as tax and transaction services advisors and

advisory and valuation services advisors to the Debtors, for the Period from October 8, 2005

through October 6, 2009 (the "Fee Application"), by which KPMG LLP seeks, among other things, (i) allowance of interim compensation and reimbursement of expenses for the period commencing October 1, 2007 through October 6, 2009 and (ii) allowance of final compensation and reimbursement of expenses for the period commencing October 8, 2005 through October 6, 2009.

3.     In accordance with section B.1 of the Local Guidelines, I certify that:

a.     I have read the Fee Application;

b.     To the best of my knowledge, information and belief formed after reasonable inquiry, the fees and disbursements sought by KPMG in the Fee Application fall within the Guidelines;

c.     The fees and disbursements sought by KPMG in the Fee Application have been billed at rates and in accordance with practices customarily employed by KPMG and generally accepted by KPMG's clients; and

d.     KPMG will not make a profit on the reimbursement of any expenses for which it seeks reimbursement in the Fee Application, regardless of whether the service for which such expenses has been requested was performed in-house or by a third party.

4.     I certify that KPMG has complied with the requirement under the Fee Order that it provide the Debtors, counsel for the Debtors, counsel for the Official Committee of Unsecured Creditors, counsel for the Debtors' prepetition and postpetition lenders, the Office of the United States Trustee for the Southern District of New York, and the members of the Fee Committee since their appointment, following each calendar month for which compensation is sought, with a statement of KPMG's fees and disbursements accrued during the previous month.

5.     I certify that (i) Delphi Corporation, 5725 Delphi Drive, Troy, Michigan 48098 (Attn: General Counsel), (ii) counsel for the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Suite 2100, Chicago, Illinois 60606 (Attn: John Wm. Butler, Jr., Esq.); (iii) counsel for the agent under the Debtors' prepetition credit facility, Simpson Thacher

2

& Bartlett LLP, 425 Lexington Avenue, New York, New York 10017 (Attn: Marissa Wesely, Esq.); (iv) counsel for the agent under the Debtors' postpetition credit facility, Davis Polk & Wardwell, 450 Lexington Avenue, New York, New York 10017 (Attn: Donald Bernstein, Esq.); (v) counsel for the Official Committee of Unsecured Creditors, Latham & Watkins, LLP, 885 Third Avenue, New York, New York 10022 (Attn: Robert J. Rosenberg, Esq.); and (vi) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, Suite 2100, New York, New York 10004 (Attn: Alicia M. Leonhard, Esq.), are each being provided with a copy of the Fee Application.

Dated: Chicago, Illinois
      December 31, 2009

                                                Gary A. Silberg
                                                Partner, KPMG LLP
                                                303 East Wacker Drive
                                                Chicago, Illinois 60601
                                                Telephone: (312) 665-1916

**EXHIBIT C**

Delphi Corporation, et al.
Summary of Hours and Discounted Fees Incurred By Professional
October 1, 2007 through October 6, 2009

| Name of Professional Person | Position | Hourly Billing Rate | Total Billed Hours | Total Compensation |
|---|---|---|---|---|
| Stoffregen,Philip A. | Partner | $665 | 13.0 | $ 8,645.00 |
| Forsythe,Duncan M. | Partner | $648 | 2.5 | $ 1,618.75 |
| Khan, Adil | Partner | $600 | 24.9 | $ 14,940.00 |
| Voigt, Kevin P. | Partner | $566 | 6.0 | $ 3,396.00 |
| Heckler, Brian | Partner | $525 | 16.8 | $ 8,820.00 |
| Silberg, Gary | Partner | $525 | 69.5 | $ 36,487.50 |
| Steciak, William | Partner | $525 | 11.2 | $ 5,880.00 |
| Gabriel, Kenneth S | Partner | $525 | 57.0 | $ 29,925.00 |
| Khan, Adil | Partner | $525 | 14.0 | $ 7,350.00 |
| Musur, Robert | Partner | $500 | 50.6 | $ 25,300.00 |
| Gary, Daniel | Partner | $500 | 46.0 | $ 23,000.00 |
| Smith, Andrew W | Partner | $500 | 0.8 (1) | $ 400.00 |
| Heckler, Brian | Partner | $500 | 52.0 | $ 26,000.00 |
| Forsythe,Duncan M. | Partner | $500 | 8.3 | $ 4,150.00 |
| Bascom, Kimber | Partner | $500 | 1.0 (1) | $ 500.00 |
| Kempke, Darin | Partner | $500 | 8.4 | $ 4,200.00 |
| Lamm, Jordan | Partner | $500 | 12.5 | $ 6,250.00 |
| Steciak, William | Partner | $500 | 5.0 | $ 2,500.00 |
| Curran, John D | Partner | $500 | 0.5 (1) | $ 250.00 |
| Smith,Andrew W. | Partner | $500 | 33.0 | $ 16,500.00 |
| Voigt, Kevin P. | Partner | $500 | 24.6 | $ 12,300.00 |
| Orlando, Joseph | Partner | $480 | 496.3 | $ 238,224.00 |
| Forsythe,Duncan M. | Partner | $480 | 4.0 | $ 1,920.00 |
| Juran,Kevin A. | Partner | $480 | 2.2 (1) | $ 1,056.00 |
| Stoffregen,Philip A. | Partner | $480 | 48.0 | $ 23,040.00 |
| Zywan,Darin A. | Partner | $480 | 5.0 (1) | $ 2,400.00 |
| Vangyia, Karen | Partner | $300 | 5.0 (1) | $ 1,500.00 |
| Voigt, Kevin P. | Managing Director | $566 | 3.1 | $ 1,754.60 |
| Laures, Paul | Managing Director | $500 | 218.0 | $ 109,000.00 |
| Harmening,Thomas C. | Managing Director | $500 | 77.6 | $ 38,800.00 |
| Voigt, Kevin P. | Managing Director | $500 | 485.0 | $ 242,475.00 |
| McNamara, Neal | Managing Director | $500 | 5.4 | $ 2,700.00 |
| Schroeder, Christopher M | Managing Director | $500 | 48.9 | $ 24,450.00 |
| Dailey, Bill | Managing Director | $465 | 61.4 | $ 28,551.00 |
| Gorski, Thomas | Managing Director | $465 | 763.2 | $ 354,888.00 |
| Steciak, William | Managing Director | $465 | 8.8 | $ 4,092.00 |
| Yong,Doyoung | Managing Director | $455 | 87.5 | $ 39,812.50 |
| McNamara, Neal | Managing Director | $440 | 18.7 | $ 8,228.00 |
| Voigt, Kevin P. | Managing Director | $425 | 2.3 | $ 977.50 |
| Laures, Paul | Managing Director | $395 | 31.5 | $ 12,442.50 |
| Nagvanshi, Manpreet | Director | $465 | 698.0 | $ 324,570.00 |
| Wells, Nathan | Director | $465 | 483.0 | $ 224,595.00 |
| McNamara, Neal | Director | $465 | 34.0 | $ 15,810.00 |
| Hori, David | Director | $465 | 61.6 | $ 28,644.00 |
| Basu, Sanjay | Director | $465 | 144.0 | $ 66,960.00 |
| Peterson, Todd D | Director | $465 | 22.2 | $ 10,323.00 |
| Champion, Jon | Director | $450 | 112.8 | $ 50,760.00 |

**EXHIBIT C**

Delphi Corporation, et al.
Summary of Hours and Discounted Fees Incurred By Professional
October 1, 2007 through October 6, 2009

| Name of Professional Person | Position | | Hourly Billing Rate | Total Billed Hours | | Total Compensation |
|---|---|---|---|---|---|---|
| McNamara, Neal | Director | | $440 | 554.0 | $ | 243,760.00 |
| Mulligan, Michael | Director | | $440 | 296.9 | $ | 130,636.00 |
| Wollmeringer, Peter | Director | | $440 | 1.8 (1) | $ | 792.00 |
| Nikiforova,Vesselina Petkova | Director | | $440 | 44.4 | $ | 19,536.00 |
| Pittman, John | Director | | $440 | 40.7 | $ | 17,908.00 |
| Ryan,Daniel | Director | | $440 | 69.9 | $ | 30,756.00 |
| Champion, Jon | Director | | $435 | 678.4 | $ | 295,104.00 |
| Yong,Doyoung | Director | | $396 | 3.5 | $ | 1,386.00 |
| Shulman, Laurence | Director | | $396 | 7.8 (1) | $ | 3,088.80 |
| Mulligan, Michael | Director | | $395 | 526.5 | $ | 207,967.50 |
| Schroeder, Christopher M | Director | | $375 | 10.0 | $ | 3,750.00 |
| Doughty, Anthony | Senior Manager | | $490 | 48.6 | $ | 23,814.00 |
| Avichai, Samuel | Senior Manager | | $465 | 2.0 (1) | $ | 930.00 |
| Francis,Benedict | Senior Manager | | $455 | 8.5 | $ | 3,867.50 |
| Friedman,Steven Marc | Senior Manager | | $455 | 4.0 (1) | $ | 1,820.00 |
| Bradford, Davis | Senior Manager | | $450 | 892.6 | $ | 401,670.00 |
| Ricafort, Michael | Senior Manager | | $450 | 166.0 | $ | 74,700.00 |
| Samuel, Ari | Senior Manager | | $440 | 0.5 (1) | $ | 220.00 |
| Homant, Bradley | Senior Manager | | $440 | 3.0 (1) | $ | 1,320.00 |
| Loy,Jason A | Senior Manager | | $440 | 458.0 | $ | 201,520.00 |
| Schroeder, Christopher M | Senior Manager | | $440 | 841.7 | $ | 370,348.00 |
| Avichai, Samuel | Senior Manager | | $440 | 2.0 (1) | $ | 880.00 |
| Frucci,Jay M. | Senior Manager | | $440 | 17.6 | $ | 7,744.00 |
| Janssen, James | Senior Manager | | $440 | 30.5 | $ | 13,420.00 |
| Miller,Vivian | Senior Manager | | $440 | 68.0 | $ | 29,920.00 |
| Sliva,John A | Senior Manager | | $440 | 215.5 | $ | 94,820.00 |
| Doughty, Anthony | Senior Manager | | $440 | 13.6 | $ | 5,984.00 |
| Frucci,Jay M. | Senior Manager | | $395 | 86.1 | $ | 34,009.50 |
| Miller,Vivian | Senior Manager | | $395 | 188.1 | $ | 74,279.75 |
| Sliva,John A | Senior Manager | | $395 | 22.0 | $ | 8,690.00 |
| Courrier,Danielle | Senior Manager | | $368 | 5.0 | $ | 1,837.50 |
| Gewirtz,Andrew R. | Senior Manager | | $368 | 5.0 (1) | $ | 1,837.50 |
| Lodes, Teresa | Senior Manager | | $368 | 1.2 (1) | $ | 441.00 |
| Sinaikin,Stephanie | Manager | | $455 | 5.0 (1) | $ | 2,275.00 |
| Hai, Doron | Manager | | $435 | 93.0 | $ | 40,455.00 |
| Ricafort, Michael | Manager | | $435 | 811.8 | $ | 353,133.00 |
| Muldoon, Charles | Manager | | $435 | 1,074.2 | $ | 467,277.00 |
| McStravick, Mark | Manager | | $435 | 1,129.8 | $ | 491,463.00 |
| Duffy, Kevin | Manager | | $435 | 998.3 | $ | 434,260.50 |
| Tetrault, Paul | Manager | | $435 | 444.0 | $ | 193,140.00 |
| Novoa, Chris | Manager | | $435 | 6.0 | $ | 2,610.00 |
| Wilson, Bill | Manager | | $435 | 723.0 | $ | 314,505.00 |
| Palmeri, Robert | Manager | | $435 | 292.0 | $ | 127,020.00 |
| De Rechter, Remco | Manager | | $425 | 159.8 | $ | 67,915.00 |
| Wilson, Brian A | Manager | | $425 | 31.9 | $ | 13,557.50 |
| Lang,Timothy E. | Manager | | $400 | 4.0 (1) | $ | 1,600.00 |
| Sellers, Monica | Manager | (2) | $400 | 249.7 | $ | 99,880.00 |
| Kielkucki, Cynthia | Manager | (2) | $400 | 104.0 | $ | 41,600.00 |

**EXHIBIT C**

Delphi Corporation, et al.
Summary of Hours and Discounted Fees Incurred By Professional
October 1, 2007 through October 6, 2009

| Name of Professional Person | Position | Hourly Billing Rate | Total Billed Hours | Total Compensation |
|---|---|---|---|---|
| Hai, Doron | Manager | $400 | 741.2 | $ 296,484.00 |
| Peczkowski, Bart | Manager | $400 | 380.2 | $ 152,080.00 |
| Harris, Patrick | Manager | $400 | 317.5 | $ 127,000.00 |
| Sobczak, Donald D | Manager | $400 | 180.5 | $ 72,200.00 |
| Brauher, James | Manager | $400 | 302.0 | $ 120,800.00 |
| Klacking, Donald | Manager | $400 | 13.1 | $ 5,240.00 |
| Pittman, John | Manager | $360 | 869.3 | $ 312,948.00 |
| Jacobson, Scott | Manager | $360 | 75.9 | $ 27,324.00 |
| Kielkucki, Cynthia | Manager | $360 | 912.0 | $ 328,320.00 |
| Markos, Abedi | Manager | $360 | 40.0 | $ 14,400.00 |
| Waibel, Kirk | Manager | $360 | 40.0 | $ 14,400.00 |
| Bunnell,Brian | Manager | $360 | 477.3 | $ 171,828.00 |
| Novoa, Chris | Manager | $360 | 63.0 | $ 22,680.00 |
| Rivera, Roberto | Manager | $360 | 57.6 | $ 20,736.00 |
| Caffrey,Ryan A. | Manager | $360 | 92.6 | $ 33,336.00 |
| Elder,Michael D | Manager | $360 | 125.8 | $ 45,288.00 |
| Nielsen,James M. | Manager | $360 | 46.0 | $ 16,560.00 |
| Nizhnikov, Alexander | Manager | $360 | 17.5 | $ 6,300.00 |
| Wildermuth, Corinna | Manager | $360 | 0.6 [1] | $ 216.00 |
| Niekro, Ronald | Manager | $315 | 95.5 | $ 30,082.50 |
| Courrier,Danielle | Manager | $298 | 3.0 | $ 894.00 |
| Courrier,Danielle | Manager | $280 | 9.0 | $ 2,520.00 |
| Sarsfield,Robert P | Manager | $280 | 14.0 | $ 3,920.00 |
| McPherson, Jean M | Manager | $235 | 12.0 | $ 2,820.00 |
| Hopkins, Victoria | Senior Associate | $300 | 617.7 | $ 185,310.00 |
| Wachter, Ryan | Senior Associate | $300 | 1,120.9 | $ 336,270.00 |
| Chemng'orem,Patrick | Senior Associate | $300 | 560.7 | $ 168,210.00 |
| Lotysz,Joseph M | Senior Associate | $300 | 32.4 | $ 9,720.00 |
| Ly, David | Senior Associate | $300 | 654.0 | $ 196,200.00 |
| Thomas,Joshua A. | Senior Associate | $300 | 61.0 | $ 18,300.00 |
| Fisher, Warren | Senior Associate | $300 | 907.8 | $ 272,340.00 |
| Gheware, Ashish G | Senior Associate | $300 | 323.0 | $ 96,900.00 |
| Agrawal, Alok | Senior Associate | $300 | 390.0 | $ 117,000.00 |
| Cheema, Prabkirat S | Senior Associate | $300 | 318.5 | $ 95,550.00 |
| Du, Jing | Senior Associate | $300 | 352.0 | $ 105,600.00 |
| Hall, Keith | Senior Associate | $300 | 1.0 [1] | $ 300.00 |
| Rivera, Rodrigo Estrada | Senior Associate | $300 | 128.0 | $ 38,400.00 |
| Sledge, Robert | Senior Associate | $300 | 39.9 | $ 11,970.00 |
| Stone, Erica | Senior Associate | $300 | 47.5 | $ 14,250.00 |
| Mordini, Richard | Senior Associate | $250 | 855.6 | $ 213,900.00 |
| Holloway, Shontai | Senior Associate | $250 | 124.1 | $ 31,025.00 |
| Elder,Michael D | Senior Associate | $250 | 221.1 | $ 55,275.00 |
| Nizhnikov, Alexander | Senior Associate | $250 | 90.0 | $ 22,500.00 |
| Sadagopan, Ragu | Senior Associate [3] | $250 | 16.5 | $ 4,125.00 |
| Du, Jing | Senior Associate | $250 [4] | 105.4 | $ 26,350.00 |
| Guth,Anthony D. | Senior Associate [3] | $250 | 282.5 | $ 70,625.00 |
| Duan, Lei | Senior Associate | $250 | 30.0 | $ 7,500.00 |
| Macapagal, Catherine | Senior Associate | $250 | 20.8 | $ 5,200.00 |

## EXHIBIT C

Delphi Corporation, et al.
Summary of Hours and Discounted Fees Incurred By Professional
October 1, 2007 through October 6, 2009

| Name of Professional Person | Position | Hourly Billing Rate | Total Billed Hours | Total Compensation |
|---|---|---|---|---|
| Sorrenti, Joseph | Senior Associate | $250 | 234.8 | $ 58,700.00 |
| Jones, David | Senior Associate | $250 | 22.5 | $ 5,625.00 |
| Lovoy, Steve | Senior Associate | $250 | 245.7 | $ 61,425.00 |
| Thomas,Joshua A. | Senior Associate | $250 | 69.0 | $ 17,250.00 |
| Barry,James F. | Senior Associate | $250 | 1.0 [1] | $ 250.00 |
| Brennan,Kevin | Senior Associate | $250 | 46.5 | $ 11,625.00 |
| Caffrey,Ryan A. | Senior Associate | $250 | 25.8 | $ 6,450.00 |
| Jain,Ankur | Senior Associate | $250 | 99.0 | $ 24,750.00 |
| Mutemba,Muposeni K. | Senior Associate | $250 | 132.5 | $ 33,125.00 |
| Riyanto,Michael | Senior Associate | $250 | 95.6 | $ 23,900.00 |
| Sawica, Patrick | Senior Associate | $250 | 121.8 | $ 30,450.00 |
| Sheode, Janhavi | Senior Associate | $250 | 144.0 | $ 36,000.00 |
| Tatum, Pamela | Senior Associate | $250 | 16.0 | $ 4,000.00 |
| Taylor, Jeremy | Senior Associate | $250 | 41.4 | $ 10,350.00 |
| Thomas, Josh | Senior Associate | $250 | 32.0 | $ 8,000.00 |
| Wilkinson,Augustine J. | Senior Associate | $250 | 41.0 | $ 10,250.00 |
| Parikh, Nihar | Senior Associate | $238 | 26.5 | $ 6,307.00 |
| Beaudry, Dave | Senior Associate | $238 | 5.0 [1] | $ 1,190.00 |
| Gorzkowski,Bogumila | Senior Associate | $228 | 21.1 | $ 4,800.25 |
| Murray,Jennifer A | Senior Associate | $228 | 22.8 | $ 5,187.00 |
| Okabe,Tomonori | Senior Associate | $228 | 43.5 | $ 9,896.25 |
| Sinniah, Dinesh | Senior Associate | $228 | 0.8 [1] | $ 182.00 |
| Stidham, Jeff | Senior Associate | $228 | 15.4 | $ 3,503.50 |
| Woods,Tonya | Senior Associate | $228 | 7.3 | $ 1,660.75 |
| Jones, David | Senior Associate | $225 | 143.5 | $ 32,287.50 |
| Mordini, Richard | Senior Associate | $225 | 23.0 | $ 5,175.00 |
| Yan, Jay | Senior Associate | $225 | 6.5 [1] | $ 1,462.50 |
| Jobe, Amanda | Senior Associate | $165 | 145.5 | $ 24,007.50 |
| Wirekoa-Fobena, Veronica | Senior Associate | $165 | 40.5 | $ 6,682.50 |
| Hren,Evelyn | Associate | $245 | 1,022.4 | $ 250,488.00 |
| Jatwani,Sundeep Prakash | Associate | $245 | 634.9 | $ 155,550.50 |
| Zhu,Jiang | Associate | $245 | 642.5 | $ 157,412.50 |
| Mutuku,James Sila | Associate | $245 | 421.7 | $ 103,316.50 |
| Bair,Melinda K. | Associate | $228 | 1.5 [1] | $ 341.25 |
| Woolf,Jais Michael | Associate | $228 | 1.3 [1] | $ 295.75 |
| Tatum, Pamela | Associate | $200 | 1,672.9 | $ 334,580.00 |
| Campbell, Celeste H. | Associate | $200 | 84.7 | $ 16,940.00 |
| Shaffer,Wendy | Associate | $200 | 454.3 | $ 90,860.00 |
| Gwinn, Cameron | Associate | $200 | 591.5 | $ 118,300.00 |
| Smith, Elizabeth | Associate | $200 | 582.6 | $ 116,520.00 |
| Sawica, Patrick | Associate | $200 | 94.4 | $ 18,880.00 |
| Du, Jing | Associate | $200 [4] | 279.3 | $ 55,860.00 |
| Chi, Alyssa | Associate | $200 | 56.0 | $ 11,200.00 |
| Hirchak,James D. | Associate | $200 | 10.2 | $ 2,040.00 |
| Howell, Barbara | Associate | $200 | 4.0 [1] | $ 800.00 |
| Jain,Ankur | Associate | $200 | 61.0 | $ 12,200.00 |
| Levine, Clifton | Associate | $200 | 2.6 [1] | $ 520.00 |
| McGrath, Pat | Associate | $200 | 7.7 [1] | $ 1,540.00 |

**EXHIBIT C**

Delphi Corporation, et al.
Summary of Hours and Discounted Fees Incurred By Professional
October 1, 2007 through October 6, 2009

| Name of Professional Person | Position | Hourly Billing Rate | Total Billed Hours | Total Compensation |
|---|---|---|---|---|
| Notton,Michael J. | Associate | $200 | 0.5 (1) | $ 100.00 |
| Talsma, Tiffany | Associate | $200 | 197.0 | $ 39,400.00 |
| Akal, Saadiq | Associate | $195 | 472.9 | $ 92,215.50 |
| Wong, Wei | Associate | $195 | 572.9 | $ 111,715.50 |
| Malek, Nir | Associate | $195 | 588.0 | $ 114,660.00 |
| Patel, Pareen | Associate | $195 | 195.0 | $ 38,025.00 |
| Ghazali,Kashif H | Associate | $193 | 8.5 | $ 1,636.25 |
| Petrov,Petar K | Associate | $193 | 2.5 (1) | $ 481.25 |
| Siebert, Thomas A | Associate | $165 | 640.8 | $ 105,732.00 |
| Sona, Edward | Associate | $165 | 3.0 (1) | $ 495.00 |
| Sawica, Patrick | Associate | $165 | 763.2 | $ 125,928.00 |
| Mutemba,Muposeni K. | Associate | $165 | 537.0 | $ 88,605.00 |
| Schippers, Jorge | Associate | $165 | 114.6 | $ 18,909.00 |
| Toney, Sjar | Associate | $165 | 66.7 | $ 11,005.50 |
| Whipple, Sara | Associate | $165 | 61.5 | $ 10,147.50 |
| Doshi, Shivani | Associate | $165 | 5.0 (1) | $ 825.00 |
| Jain,Ankur | Associate | $165 | 81.0 | $ 13,356.75 |
| Mitchell, Jason | Associate | $165 | 7.4 (1) | $ 1,221.00 |
| Pollard,Jennifer | Associate | $165 | 87.1 | $ 14,371.50 |
| Riyanto,Michael | Associate | $165 | 38.7 | $ 6,385.50 |
| Scavuzzo, Joseph | Associate | $165 | 34.1 | $ 5,626.50 |
| Smith, Elizabeth | Associate | $165 | 114.6 | $ 18,909.00 |
| Rodin,Lindsay | Associate | $150 | 39.6 | $ 5,940.00 |
| Pfannenstiel, Paige | Associate | $100 | 114.0 | $ 11,400.00 |
| Stiltner, Janet | Paraprofessional | $100 | 203.5 | $ 20,350.00 |
| Garza,Juanita F | Paraprofessional | $100 | 359.7 | $ 35,970.00 |
| Shah, Ronak | Paraprofessional | $100 | 77.5 | $ 7,750.00 |
| Sona, Edward | Paraprofessional | $100 | 2.0 (1) | $ 200.00 |
| Greene,Brittany Lasette | Paraprofessional | $100 | 52.2 | $ 5,220.00 |
| **Total Hours and Fees** | | | **41,946.9** | **$ 13,785,746.90** |

*TAX - International Executive Services (IES)*

| | Number of Employees | Monthly Calculations | Tax Returns | Payments At Host | Monthly Mexican Taxes | Recon- ciliation Fee | Amended Returns | Cost Estimates | Total Compensation |
|---|---|---|---|---|---|---|---|---|---|
| Non-US Expatriates | 7 | | $875 | | | | | | $ 6,125.00 |
| Non-US Expatriates | 2 | | | | | 800.00 | | | $ 1,600.00 |
| Non-US Expatriates | 579 | | | $375 | | | | | $ 217,125.00 |
| Non-US Expatriates | | | | | | $176,475 | | | $ 176,475.00 |
| Non-US Expatriates | 4,216 | $70 | | | | | | | $ 295,120.00 |
| Non-US Expatriates | 87 | | | | | | | $850 | $ 73,950.00 |
| US Inbound Expatriates | 661 | | $875 | | | | | | $ 578,375.00 |
| US Inbound Expatriates (5) | 1 | | $1,750 | | | | | | $ 1,750.00 |
| US Inbound Expatriates | 12 | | | | $40 | | | | $ 480.00 |
| US Inbound Expatriates | 187 | | | $375 | | | | | $ 70,125.00 |
| US Inbound Expatriates | 50 | | | | | 800.00 | | | $ 40,000.00 |
| US Inbound Expatriates | 4,670 | $110 | | | | | | | $ 513,700.00 |
| US Inbound Expatriates | 32 | | | | | | | $850 | $ 27,200.00 |
| US Outbound Expatriates | 1,673 | | $875 | | | | | | $ 1,463,875.00 |

*TAX - International Executive Services (IES), cont.*

## EXHIBIT C

Delphi Corporation, et al.
Summary of Hours and Discounted Fees Incurred By Professional
October 1, 2007 through October 6, 2009

| | Number of Employees | Monthly Calculations | Tax Returns | Payments At Host | Monthly Mexican Taxes | Recon-ciliation Fee | Amended Returns | Cost Estimates | Total Compensation |
|---|---|---|---|---|---|---|---|---|---|
| US Outbound Expatriates | 50 | | | | $40 | | | | $ 2,000.00 |
| US Outbound Expatriates | 436 | | | $375 | | | | | $ 163,500.00 |
| US Outbound Expatriates | | | | | | $124,800 | | | $ 124,800.00 |
| US Outbound Expatriates | 213 | | | | | | 800.00 | | $ 170,400.00 |
| US Outbound Expatriates | 5,067 | $250 | | | | | | | $ 1,266,750.00 |
| US Outbound Expatriates | 36 | | | | | | | $850 | $ 30,600.00 |
| J-1 Trainees | 152 | | $375 | | | | | | $ 57,000.00 |
| J-1 Trainees- Santana, Maria [5] | 1 | | ($375) | | | | | | $ (375.00) |
| Mexico Border Employees | 2,310 | | $375 | | | | | | $ 866,250.00 |
| Mexico Border Employees | 3,791 | | | | $40 | | | | $ 151,640.00 |
| US Outbound Expatriates | | | | | | $212,950 | | | $ 212,950.00 |
| US Outbound Expatriates | | | | | | $153,725 | | | $ 153,725.00 |
| US Outbound Expatriates | 1 | | | | | | | ($850) | $ (850.00) |
| US Outbound Expatriates | | | | | | ($2,500) | | | $ (2,500.00) |
| US Inbound Expatriates | 1 | | | | | | 375.00 | | $ 375.00 |
| Non-US Trainees | 14 | | $375 | | | | | | $ 5,250.00 |
| Non-US Expatriates | 156 | $110 | | | | | | | $ 17,160.00 |
| Non-US Expatriates | 3 | | $1,750 | | | | | | $ 5,250.00 |
| Non-US Expatriates | | | | | | $351,565 | | | $ 351,565.00 |
| Non-US Expatriates | | | | | | $333,210 | | | $ 333,210.00 |
| Non-US Expatriates | | | | | | ($2,575) | | | $ (2,575.00) |
| Mexico Border Employees | | $40 | | | | | | | |
| Monthly | 7,110 | | | | | | | | $ 284,760.00 |
| Mexico Border Employees | 1,353 | $40 | | | | | | | $ 54,120.00 |
| Mexico Border Employees | 149 | | | | | | 375.00 | | $ 55,875.00 |
| Credit: Non-US Expatriates | | | | | | | | | $ (17,480.00) |
| Credit: Mexico Border Employee | | | | | | | | | $ (1,000.00) |
| **Subtotal Tax - International Executive Services** | | | | | | | | | **$ 7,748,300.00** |
| | | | | | | | | | |
| **Subtotal Fees** | | | | | | | | | **$ 21,534,046.90** |
| | | | | | | | | | |
| Voluntary Reduction in Fee Statement and Non-Working Travel Time | | | | | | | | | $ (590,267.47) |
| Interiors - Less Reduction due to Difference in Billing Rates in October's 2007 fee statement | | | | | | | [6] | | $ (8,950.00) |
| IES - Less Reduction due to Partial Credits-Credit was issued in the November 2007 fee statement but relates to IES tax returns from February 2007 | | | | | | | | | $ (1,567.00) |
| Interiors - Adjustment due to Difference in Billing Rates in November and December 2007 fee statements | | | | | | | [7] | | $ 528.00 |
| Voluntary Reduction for Pharmacy Rebate Review | | | | | | | | | $ (8,610.00) |
| Interiors - Adjustment due to Difference in Billing Rates in October, November and December 2007 fee statements | | | | | | | [8] | | $ 31,650.00 |
| **Subtotal Fees Incurred** | | | | | | | | | **$ 20,956,830.43** |
| | | | | | | | | | |
| Less reduction of $155,000 in fees for the period of January 1, 2008 through January 25, 2008 | | | | | | | | | $ (155,000.00) |
| **Total Fees Requested** | | | | | | | | | **$ 20,801,830.43** |
| | | | | | | | | | |
| Out of Pocket Expenses | | | | | | | | | $ 1,992,450.10 |
| | | | | | | | | | |
| **Total Fees and Out of Pocket Expenses** | | | | | | | | | **$ 22,794,280.53** |

**Blended Rate** — $ 332.22

Detailed time and expense records are not being filed but copies of these records can be made available to parties in interest upon request.

**EXHIBIT C**

Delphi Corporation, et al.
Summary of Hours and Discounted Fees Incurred By Professional
October 1, 2007 through October 6, 2009

Notes:

[1] - Although these timekeepers billed eight hours or less during any one month period, they are not Transitory Timekeepers because of (i) the nature of the services that they provided, (ii) the timing of the services they provided relative to the time of the month, or (iii) their supervisory role dictated a limited but valuable participation in the project.

[2] Cynthia Kielkucki and Monica Sellers were promoted from the position of Sr. Associate to Manager on October 1, 2007.

[3] Ragu Sadagopan and Anthony Guth were promoted from the position of Associate to Sr. Associate on October 1, 2007.

[4] -  Jing Du is a Senior Associate with a $300 billing rate.  KPMG mistakenly billed her at a rate of $200 in the January 2008 fee statement.  This billing modification results in a upward adjustment of $11,600.  The total adjustment for Jing Du, as identified in footnotes 3 and 4, is $43,250.   To the extent further detail is necessary, KPMG would be happy to provide such detail.

[5] Maria Santana was incorrectly billed as a J-1 Visa in February but should have been billed as U.S. Inbound Expatriate.  The entire amount of $1750 is being billed under U.S. Inbound Expatriate and a credit of ($375) is being reported under J-1 Visa for the net due of $1,375.

[6] - This adjustment is necessary to correct a billing error on the October, 2007 fee statement.  To the extent further detail is necessary, KPMG would be happy to provide such detail.

[7] - This adjustment is necessary to correct a billing error on the November and December 2007 fee statement regarding Exhibit D23.  To the extent further detail is necessary, KPMG would be happy to provide such detail.

[8] - This adjustment is necessary to correct a billing rate error on the October, November and December 2007 fee statement.  Jing Du is a Senior Associate with a $300 billing rate.  KPMG mistakenly billed her at a rate of $250 in the October 2007 and $200 in the November and December 2007 fee statements.  This billing modification results in a upward adjustment of $31,650 for the months reference above.  To the extent further detail is necessary, KPMG would be happy to provide such detail.

**EXHIBIT D**

Delphi Corporation, et al.
Summary of Out-of-Pocket Expenses
October 1, 2007 through October 6, 2009

| Category | Amount |
| --- | --- |
| Airfare | $864,937.23 |
| Ground Transportation | $329,778.11 |
| Lodging | $706,273.83 |
| Meals | $30,251.93 |
| Other | $61,209.00 |
| Total expenses | $1,992,450.10 |

**EXHIBIT E**

Delphi Corporation et al.
Compensation by Project Category
October 1, 2007 through October 6, 2009

| Category | Hours | | Compensation Amount |
|---|---|---|---|
| Tax - International Tax Package Improvement | 400.7 | $ | 158,276.50 |
| Tax - International Executive Services | 325.2 | $ | 107,877.80 |
| Tax - International Executive Services - Tax Returns | - [1] | $ | 7,748,300.00 |
| Fee Statements and Fee Applications | 2,796.7 | $ | 271,190.00 |
| Non Working Travel Time | 1,687.9 | $ | 275,337.88 |
| Transaction Services - Project Rhodes | 96.6 | $ | 16,292.50 |
| Tax Consulting Services | 55.2 | $ | 26,496.00 |
| Financial Close, Consolidation and Management - Record-to-Report Phase III and IV | 10,368.3 | $ | 3,992,274.00 |
| Electronics & Safety - Assess Product Line Reporting | 353.4 | $ | 137,299.50 |
| Transaction Services - Project Rhodes/Evergreen III | 14.0 | $ | 3,356.50 |
| Fresh Start Services | 10,957.9 | $ | 3,451,280.15 |
| Impairment Services - Q04 | 138.6 | $ | 40,871.50 |
| Project Shark "Target" | 35.3 | $ | 9,902.50 |
| Transaction Services - Project Rhodes Discontinued Operations | 818.3 | $ | 237,065.50 |
| Electronics & Safety - PBU - Product Line Performance Reporting | 37.6 | $ | 8,538.50 |
| Interiors Discontinued Operations - Financial Management | 2,246.5 | $ | 731,816.50 |
| Legal Entity Valuations | 588.9 | $ | 193,282.50 |
| Loan Staff Agreement | 3,433.1 | $ | 899,800.00 |
| Interiors Discontinued Operations - Project Management | 1,025.7 | $ | 369,212.50 |
| AHG Divestiture Accountng-ODD | 1,170.7 | $ | 432,768.00 |
| Steering Day-1 Readiness Assessment | 436.0 | $ | 187,407.50 |
| Packard SAP Assessment | 1,375.1 | $ | 469,264.00 |
| Tax Accounting for Divestitures | 482.1 | $ | 149,679.50 |
| Steering Carve-Out | 256.1 | $ | 84,950.00 |
| Pharmacy Rebate Review | 317.0 | $ | 37,800.00 |
| HFM COA Design Assistance | 1,785.6 | $ | 662,958.00 |
| Assistance with Accounting for Income Taxes | 71.6 | $ | 28,282.00 |
| FAS 142 Impairment Analysis | 190.7 | $ | 62,581.50 |
| Record to Report - Tax Accounting | 245.6 | $ | 86,545.00 |
| Project Shark -FAS 141 | 42.1 | $ | 13,050.00 |
| UK Legal Entity Valuations | 194.4 | $ | 63,074.60 |
| | | | |
| Subtotal fees | | $ | 20,956,830.43 |
| Less reduction of $155,000 in fees for the period of January 1, 2008 through January 25, 2008 | | $ | (155,000.00) |
| Total hours and fees requested | 41,946.9 | $ | 20,801,830.43 |

[1]  These compensation charges are based on tax return rates.