Hearing Date and Time: TBD
Objection Deadline: TBD

Joseph D. Frank (JF-6085)
Jeremy C. Kleinman (JK-0080)
FRANK/GECKER LLP
325 North LaSalle Street, Suite 625
Chicago, Illinois 60654
(312) 276-1400 – telephone
(312) 276-0035 – facsimile

Counsel for Jones Lang LaSalle Americas, Inc.

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| DPH HOLDINGS CORP., *et al.*, | ) | Case No. 05-44481 (RDD) |
| f/k/a DELPHI CORPORATION, *et al.*, | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | |

**JONES LANG LASALLE AMERICAS, INC.'S FINAL APPLICATION FOR
ALLOWANCE AND PAYMENT OF COMPENSATION AND
<u>REIMBURSEMENT OF EXPENSES PURSUANT TO 11 U.S.C. §§ 328, 330 AND 331</u>**

TO THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE:

Jones Lang LaSalle Americas, Inc. ("JLL") submits this Final Application (the "Final Application"), pursuant to 11 U.S.C. §§ 328 and 330 and the First, Second, Third, Fourth, Fifth and Sixth Orders Under 11 U.S.C. § 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals (the "Compensation Orders"), requesting: (i) final allowance of previously-awarded interim compensation in the amount of $1,259,205.45 and reimbursement of expenses in the amount of $61,316.27; (ii) final allowance of additional compensation in the amount of $36,095.64 for professional services performed as the real estate administrative and transaction services provider to Delphi Corporation and its related Debtor entities (collectively, the "Debtors") during the period of October 1, 2007 through December 31,

2007 (the "Final Application Period"), for which JLL has not previously applied; and (iii) payment of the amount of $144,701.33 remaining due after application of all monthly and periodic interim compensation and expense reimbursements received to date.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this Final Application pursuant to 28 U.S.C. § 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B) and (M).

2. Venue of these cases and this Final Application is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief sought herein are 11 U.S.C. §§ 105(a), 328 and 330 and Fed. R. Bankr. P. 2016.

## BACKGROUND

4. On October 8, 2005 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the United States Bankruptcy Code (11 U.S.C. §§ 101 *et seq.*) (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York. At the time of their bankruptcy filing, the Debtors owned and leased real property throughout the world.

5. Throughout their chapter 11 cases, the Debtors managed their property and operated their businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

6. JLL is a global integrated real estate services provider specializing in facility services, transactional services and lease administration services. JLL has provided professional transaction management and lease administration services to companies both in and outside of bankruptcy. JLL provided real estate transaction management services to the Debtors before their bankruptcy filing.

JLL's Retention

7.   On November 9, 2005, the Debtors filed the Application for Order under 11 U.S.C. §§ 327(a) and 328 and Fed. R. Bankr. P. 2014(a) Authorizing Employment and Retention of Jones Lang LaSalle Americas, Inc. as Real Estate Administrative and Transaction Services Provider to Debtors (Docket No. 996) (the "JLL Retention Application").  In the JLL Retention Application, the Debtors sought authority to retain JLL to perform professional services related to the Debtors' current real estate holdings and real property lease portfolios and with respect to potential future real estate and real property lease opportunities.

8.   The specific terms of the Debtors' initial postpetition engagement of JLL was set forth in the Real Estate Services Agreement between Delphi Automotive Systems LLC and Jones Lang LaSalle Americas, Inc., dated September 2, 2005, as amended by that certain First Amendment to Real Estate Services Agreement dated November 9, 2005 (the "Engagement Agreement"), a copy of which was attached to the JLL Retention Application.  Pursuant to the Engagement Agreement, JLL expanded the range of administrative and transaction services it provided to the Debtors, assigning lease analysts to assist the Debtors with the analysis, maintenance and performance of their leasehold interests in the United States and assigning transaction managers and related professionals to assist the Debtors with their real estate needs throughout North America, South America, Europe and Asia.  In addition, JLL developed and maintained a proprietary lease administration database that permitted the Debtors to manage their worldwide leased real property portfolio (the "Delphi+ Lease Administration Database") with greater efficiency.

9.   On December 1, 2005, this Court entered an order granting the JLL Retention Application (Docket No. 1385) (the "JLL Order"), retroactive to November 3, 2005, and

approving the terms of the Engagement Agreement.  JLL provided real estate transaction services and lease administration services to the Debtors pursuant to the Engagement Agreement from November 3, 2005 through June 30, 2007, the date on which the Debtors elected to terminate the Engagement Agreement.  During that time, JLL facilitated the sale of several international real property holdings, resulting in a reduction in the Debtor's transaction management needs.  In connection with termination of the Engagement Agreement, the Debtors requested that JLL enter into a separate consulting agreement, pursuant to which JLL would continue to provide similar lease administration and transaction management services to the Debtors within a more limited geographic scope.  JLL agreed to do so.

10.    On or about July 1, 2007, JLL and the Debtors entered into the Consulting Agreement dated July 1, 2007 (the "Consulting Agreement"), a copy of which was filed as an attachment to the Supplemental Affidavit of James C. Becker in Support of Application for Order under 11 U.S.C. §§ 327(a) and 328 and Fed. R. Bankr. P. 2014(a) Authorizing Employment and Retention of Jones Lang LaSalle Americas Inc. as Real Estate Administrative and Transaction Services Provider to Debtors (Docket No. 2097).  In the Consulting Agreement, JLL agreed to continue to provide, on an exclusive basis, the dedicated services of one Lease Analyst and one Transaction Manager, each to be stationed at the Debtors' Troy, Michigan headquarters and to provide continued access to the Delphi+ Lease Administration System.  On October 4, 2007, the Debtors filed their Supplemental Application for Order under 11 U.S.C. §§ 327(a) and 328 and Fed. R. Bankr. P. 2014(a) Modifying the Scope of Employment and Retention of Jones Lang LaSalle Americas, Inc. as Real Estate Administrative and Transaction Services Provider to Debtors (the "Supplemental Application") seeking court authorization and approval for JLL to provide professional services to the Debtors under the revised scope of the

Consulting Agreement and under two listing agreements for certain of the Debtors' real property holdings in Ohio and Michigan (the "Listing Agreements"). Pursuant to the terms of the Listing Agreements, JLL received compensation from the sale proceeds of the two properties in question. That compensation was approved in connection with the orders authorizing the property sales and is not included in this Final Application.

11.     On October 23, 2007, the Bankruptcy Court entered its order granting the Supplemental Application retroactive to July 1, 2007 (with respect to the Consulting Agreement) and June 1, 2007 (with respect to the Listing Agreements) and approving the terms of the Consulting Agreement and Listing Agreements.

JLL's Entitlement to Compensation

12.     Under the initial Engagement Agreement, JLL was entitled to compensation for the services of its professionals according to the following formula:

> Jones Lang LaSalle will be entitled to a fee for Administrative Services in an amount equal to the sum of: (i) the cost of salary of all Administrative Services Account Personnel working exclusively on the Delphi account (excluding bonuses, benefit expenses and payroll taxes) in accordance with a salary schedule acceptable to Delphi . . . and (ii) an overhead allocation and profit factor equal to seventy-five (75%) percent for Administrative Services Account Personnel of (i) above.
>
> and
>
> Jones Lang LaSalle will be entitled to a fee for Transaction Services Account Personnel in an amount equal to the sum of: (i) the cost of salary of all Transaction Services Account Personnel working exclusively on the Delphi account (excluding bonuses, benefit expenses and payroll taxes) in accordance with a salary schedule acceptable to Delphi . . . and (ii) an overhead allocation and profit factor equal to fifty-five (55%) percent for Transaction Services Account Personnel of (i) above.

Engagement Agreement ¶¶ IA, IIA.

13.     Under the Consulting Agreement, JLL was entitled to receive: (i) monthly compensation for the services of its Transaction Manager in the amount of $12,031.88; (ii)

{ JLL / 004 / 00013083.DOC /}            - 5 -

monthly compensation for the services of its dedicated Lease Analyst in the amount of $6,339.38; and (iii) reimbursement of travel related expenses, as detailed in Exhibit A to the Consulting Agreement.

14. In addition to the compensation structures outlined above, section 6.4(B) of both the Engagement Agreement and Consulting Agreement provides that JLL is entitled to receive additional compensation related to maintenance of the Delphi+ Lease Administration System discussed above. Section 6.4(B) of the Engagement Agreement contemplates that JLL would be entitled receive an annual fee of $18,000 relating to the maintenance and administration of the Delphi+ Lease Administration System (the "Lease Administration Fee"). Although the Engagement Agreement did not specify the timing of the payment of the Lease Administration Fee, JLL routinely invoiced the Debtors on a monthly basis as part of its request for payment of monthly compensation at a rate of $1,500.00 per month ($1/12^{th}$ of $18,000). Section 6.4(B) of the Consulting Agreement clarifies the timing of payment, requiring that the Debtors pay $1,500.00 per month.

15. On August 28, 2007, the Debtors informed JLL that they would no longer require access to the Delphi+ Lease Administration System. In addition, because the Debtors were directly hiring Janice Lannoo, the Lease Analyst supplied by JLL, as an employee, the Debtors no longer required JLL to dedicate the services of a Lease Analyst as part of its engagement. Nevertheless, the Debtors did not wish to end JLL's engagement in total and still required the services of a Transaction Manager to assist with ongoing transactions that were still active when the Consulting Agreement expired, by its terms, on December 31, 2007. To facilitate this continued engagement, JLL and the Debtors executed an Amendment to the Consulting Agreement (the "Amendment"), pursuant to which JLL committed to provide 50% of the

professional services of Brian Collins to the Debtors in exchange for reduced compensation in the monthly amount of $6,226.50, with any additional hours of services beyond the 50% allocation to be compensated at an hourly rate of $72.00.

16.     In light of this further reduction in the scope of JLL's retention, the Debtors designated JLL as an "ordinary course professional" in their bankruptcy cases.  From January 1, 2008, through confirmation of the Debtor's plan of reorganization (the "Plan") on January 25, 2008 and beyond, JLL has been treated as an ordinary course professional and paid according to the procedures for ordinary course professionals previously approved by this Court.  As a result, in this Application, JLL seeks allowance and payment of compensation only through December 31, 2007.

17.     Although the scope of JLL's engagement changed during the course of its retention, its billing practices in each phase of its engagement have remained consistent with its general billing practices for large scale real estate engagements.  In the ordinary course of JLL's business and in similar engagements both inside and outside of bankruptcy, JLL often charges its clients a set monthly fee for each professional providing service on an exclusive basis.  JLL does not charge its clients on an hourly basis for the particular tasks its professionals perform, and JLL does not require its professionals to record the specific tasks performed or the amount of time spent on those tasks each day.  These billing practices are customary in JLL's industry and have been employed throughout each of the prior Application Periods for which allowance and interim payment compensation has already been approved.

**RELIEF REQUESTED**

18.     By this Final Application, JLL requests that the Court allow, on a final basis (i) previously awarded compensation totaling $1,259,205.45 for professional services rendered by JLL to the Debtors during the Application Period under the Engagement Agreement and

{ JLL / 004 / 00013083.DOC /}            - 7 -

Consulting Agreement and reimbursement of related expenses totaling $61,316.27; and (ii) additional compensation totaling $36,095.64 for which JLL has not previously applied.

19. Over the course of the Debtors' chapter 11 cases, several JLL professionals dedicated their time, often on an exclusive basis, to provide the Debtors with comprehensive services to address the Debtors' needs with respect to their real property and lease portfolios throughout the world and to explore new opportunities that would enhance the value of those portfolios.

20. The services provided by JLL's professionals to the Debtors under the Engagement Agreement and the Consulting Agreement generally fall within two categories: (i) the analysis and administration of the Debtors' existing leases; and (ii) the investigation, analysis, pursuit and management of new real estate purchase, sale and lease transactions. A more detailed summary of the services provided in each category and a description of the qualifications of the professionals providing these services follows.

**Lease Administration Services**

21. Throughout the Debtors' bankruptcy case, JLL assisted the Debtors to track, analyze and efficiently manage the Debtors' active lease portfolio. Specifically, JLL's services relating to the Debtors' real property leases included: abstracting and interpreting commercial lease documents; processing payments in satisfaction of the Debtors' various lease obligations; billing and collecting on account of third-party tenant obligations to the Debtors; communicating with various landlords and tenants on the Debtors' behalf; assisting with the resolution of outstanding rent issues; reviewing annual landlord reconciliation statements and calculations to ensure accuracy and lease compliance; and handling other administrative landlord/tenant issues arising in the Debtors' bankruptcy.

22. These Lease Administration Services were provided by two individuals: Janice Lannoo and Louis Jankow.

23. Janice Lannoo is a graduate of the Detroit Business Institute and has at least 12 years of experience in the field of commercial real estate lease administration and analysis. Ms. Lannoo previously worked in the real estate department of a large trucking company, and has expertise in areas of abstracting, auditing, accounts payable, utilities and property tax obligations, generating rent payments and performing annual landlord reconciliations. Ms. Lannoo performed similar lease administrative services for the Debtors prior to their bankruptcy filing and has provided lease administrative services to the Debtors throughout the Debtors' bankruptcy cases.[1]

24. Lois Jankow also served as a Lease Analyst at the Debtor's headquarters in Troy, Michigan. Ms. Jankow is a Senior Lease Administrator with a degree in Accounting from Oakland University. Ms. Jankow has over 15 years in the field of real estate lease administration. Prior to joining JLL, Ms. Jankow served as an Assistant Controller- Real Estate Department, for Central Transport, Inc. and was Supervisor of Accounts Payable- Real Estate Accounting, at Kmart Corporation and provided services to the Debtors prior to the Debtors' bankruptcy filing.

25. As a result of the efforts of Ms. Lannoo and Ms. Jankow, the Debtors were able to efficiently evaluate their leasehold interests, timely enforce their rights under these leases and make decisions with respect to these leases to assist their financial reorganization.

---

[1] On or about September 1, 2007, Janice Lannoo became an employee of the Debtors, ending her employment with JLL. Because she is serving a similar function as an employee of the Debtors, she was not replaced by JLL in its engagement.

**Transaction Management Services**

26. Throughout the Debtors' bankruptcy, JLL provided extensive real estate transaction management services to the Debtors, dedicating the services of five professionals on four continents to investigate, identify and, to the extent advisable, pursue advantageous sale, purchase and lease opportunities for the Debtors both domestically and throughout the world. These professionals provided services to the Debtors that include: selecting locations for new leased and owned facilities; negotiating new lease and purchase transactions with landlords; collaborating with the Debtors' in-house and outside legal counsel to draft and revise legal documentation for the Debtors' real estate transactions; finding and managing third-party real estate brokers; managing the entry into new license agreements, easements, and other real estate related matters, as well as renewals of the same; and coordinating the Debtors' portfolio management efforts with personnel in the Debtors' Facilities Services Group (FSG), and their environmental services and business divisions. These services directly assisted the Debtors in their reorganization efforts allowing the Debtors to pursue advantageous real estate opportunities.

27. The following JLL professionals provided transaction management services exclusively to the Debtors during various segments of JLL's engagement with the Debtor: Clifton Chauncey Hitchcock (Debtors' Troy, Michigan headquarters)and Brian Collins (Debtors' Troy, Michigan headquarters); Jas Lozinski (Debtors' offices in Luton, Bedfordshire, United Kingdom); Kim Robinson (Debtors' offices in Luton, Bedfordshire, United Kingdom) Monica Lee (Debtors' offices in Sao Paulo, Brazil), Joel Chia (Debtors' offices in Singapore), and Eric

Zhang (Debtors' offices in Shanghai, China).[2] A description of the respective experience and areas of expertise of the JLL professionals follows:

28.    Brian Collins served as a Transaction Manager at the Debtors' headquarters in Troy, Michigan, assisting the Debtors with transactions throughout North America. Mr. Collins graduated with a Bachelor of Science degree in Architecture and a Bachelor of Arts degree in Economics from the University of Michigan and has considerable experience planning and implementing transactions related to large corporate facilities and related real estate holdings. As a Transaction Manager for JLL, Mr. Collins previously provided transaction management and consulting services to General Motors with respect to its 600 million square-foot global real estate portfolio. Prior to joining JLL in 2002, Mr. Collins served for ten years as a Senior Planning Consultant for the Hysen Group.

Prior to Mr. Collins, Clifton Chauncey Hitchcock served as a Transaction Manager at the Debtors' headquarters in Troy, Michigan. Mr. Hitchcock graduated from the Michigan State University – Detroit College of Law in 2000 with honors. He has managed leasing activity in the Detroit metropolitan area for three years and has considerable experience with termination and renegotiation of leases. In addition, he has experience performing real-estate transaction due diligence. Prior to becoming a Transaction Manager at JLL, Mr. Hitchcock held positions as a leasing manager, a city planning commissioner, a litigation attorney and a judicial law clerk.

29.    Jas Lozinski served as the European Real Estate Manager for the Debtors at their Luton, Bedfordshire, England location, assisting the Debtors with respect to real estate transactions throughout Europe and its surrounding countries. With more than 20 years of

---

[2] Due to the scope of the services required by the Debtors in the South American region, JLL agreed, as a financial accommodation to the Debtors, to provide the professional services of Monica Lee on a non-exclusive basis for a flat monthly fee of $3,105.00.

{ JLL / 004 / 00013083.DOC /}    - 11 -

experience, his credentials extend to consolidation, site selection and consultancy throughout Europe, with special expertise in automotive and manufacturing projects.  Mr. Lozinski earned his degree in Valuation and Estate Management at Bristol University, Bristol, England.

30.    Eric Zhang served as the Transaction Manager to the Debtors for real estate transactions throughout Asia and Australia.  Mr. Zhang was headquartered in Shanghai, China.  Mr. Zhang holds a Bachelors Degree in Engineering and a Masters Degree in Land Economy.  He has more than seven years of experience in the field of real estate within the Asian-Pacific market.  His experience includes real estate market analysis, research reports, development, feasibility, valuation and investment studies, undertaking real estate selection, acquisition and disposition, financial review of real estate transactions and real estate transaction contract negotiations.

Previously, Joel Chia served as a Transaction Manager to the Debtors with respect to the Asian-Pacific region.  Mr. Chia was based in Singapore, where he provided services to the Debtors with respect to real estate transactions and potential real estate transactions throughout Asia.  Mr. Chia earned a Bachelor of Civil Engineering degree with honors from National University of Singapore and has more than ten years experience in the property development and construction industry.

31.    Kim Robinson served as the Transaction Coordinator for the Debtors and, in that capacity, she assisted the European Real Estate Manager, Jas Lozinski, in providing services to the Debtors with respect to pending and potential real estate transactions throughout Europe.  Ms. Robinson has 15 years experience in IT software, managing relationships in various sales and marketing roles, and works with the Debtors' European Facilities Group.

32.     Monica Lee served as a Transaction Manager for the Debtors at their Sao Paulo, Brazil location, providing professional advisory and transactional services to the Debtors with respect to transactions throughout South America.  Prior to joining JLL, Ms. Lee worked in a similar capacity for Colliers International.  Ms. Lee is a registered Real Estate Broker (CRECI). In addition, Ms. Lee was assisted in her duties by Ms. Sueli Nagata.  Pursuant to the terms of the Engagement Agreement, JLL does not seek additional compensation for the services rendered by Ms. Nagata.

**Transaction Management Services**

33.     As contemplated by the Consulting Agreement, after termination of the Engagement Agreement, JLL greatly reduced the geographic scope of the transaction Management Services its professionals provided, eliminating all international transaction management services previously provided to the Debtors.  From July 1, 2007 through December 31, 2007, JLL dedicated 100% of the services of Transaction Manager Brian Collins to the Debtors.  Mr. Collins, who was stationed at the Debtors' Troy, Michigan headquarters throughout this engagement, provided transaction management services to the Debtors with respect to current and potential real estate transactions throughout North America.  These services included assisting the Debtors with lease renewals, new space acquisitions, and property dispositions and providing support to the Debtors' Operations Support Group and corporate real estate organization.

34.     For the convenience of the Court and parties in interest, a summary of the professionals rendering services to the Debtors at various phases throughout the Debtors' bankruptcy case for which JLL seeks compensation follows:

| PROFESSIONAL | POSITION | LOCATION | EXPERIENCE | MONTHLY COMPENSATION |
|---|---|---|---|---|
| Brian Collins | Transaction Manager | Troy, Michigan | 14 years experience; Bachelor of Science Degree in Architecture; Bachelor of Arts Degree in Economics | $12,031.88 |
| Clifton Chauncey Hitchcock | Transaction Manager | Troy, Michigan | 3 years experience; Law Degree | $9,041.67 |
| Jas Lozinski | Transaction Manager | Luton, Bedfordshire, United Kingdom | 20 years experience; Valuation & Estate Management Degree | 23,203.92 |
| Eric Zhang | Transaction Manager | Shanghai, China | 7 years experience; Bachelor Degree in Engineering; Masters Degree in Land Economy | 6,719.13 |
| Joel Chia | Transaction Manager | Singapore | 10 years experience; Civil Engineering Degree | $6,491.91 |
| Monica Lee | Transaction Manager | Sao Paulo, Brazil | 11 years experience in the real estate market; Degree in Architecture and Urban Design | 3,105.00 |
| Kim Robinson | Transaction Coordinator | Luton, Bedfordshire, United Kingdom | 15 years experience in various sales and marketing roles | 3,448.81 |
| Janice Lannoo | Lease Analyst | Troy, Michigan | 14 years experience; Bachelor of Science Degree in Accounting | 6,339.38 |
| Lois Jankow | Lease Analyst | Troy, Michigan | 11 years experience | $8,750.00 |

35.    As part of JLL's engagement, a number of other JLL professionals dedicated time and provided professional services to the Debtors during the Debtors' bankruptcy cases. However, based on the terms of the Engagement Agreement and the Consulting Agreement, JLL does not seek any additional compensation for services rendered by these JLL professionals.

{ JLL / 004 / 00013083.DOC /}                - 14 -

36. As set forth in the Interim Applications, JLL has previously sought and obtained interim allowance of $1,259,205.45, as follows:

| COMPENSATION | | |
|---|---|---|
| **Application Period** | **Total Amount Requested** | **Total Amount Allowed** |
| 11/3/05 – 1/31/06 | $180,103.84 | $180,103.84 |
| 2/1/06 – 5/31/06 | $226,598.36 | $226,598.36 |
| 6/1/06 – 9/30/06 | $241,213.58 | $241,213.58 |
| 10/1/06 – 1/31/07 | $255,134.15 | $255,134.15 |
| 2/1/07 – 5/31/07 | $248,033.00 | $248,033.00 |
| 6/1/07 – 9/30/07 | $108,122.52 | $108,122.52 |
| **TOTAL** | **$1,259,205.45** | **$1,259,205.45** |

37. Between October 1, 2007 and December 31, 2007, the services provided to the Debtors were limited to the Transaction Manager services provided by Brian Collins. Pursuant to the terms of the Consulting Agreement, JLL is entitled to monthly compensation in the amount of $12,031.88 for these services.

38. In connection with the services JLL rendered to the Debtors during the period of its engagement, JLL also incurred expenses for which it sought reimbursement. These expenses generally fell into two categories: travel expenses and legal expenses. Because JLL provided one or two Professionals to cover several different extremely broad geographic areas, JLL's professionals traveled, at the Debtors' direction, within their assigned region. In each instance, JLL's professional traveled in economy class. With respect to JLL's professionals stationed in the Debtors' international offices, expenses were often submitted in the applicable currency for that office and were determined for purposes of JLL's interim fee applications, based on the conversion rates in place at the time these expenses were submitted by the professionals to JLL for payment.

39. A summary of the expenses for which interim allowance of reimbursement was sought and obtained follows:

| Dates | Amount Requested | Amount Allowed |
|---|---|---|
| 11/3/05 – 1/31/06 | $4,208.73 | $4,208.73 |
| 2/1/06 – 5/31/06 | $11,066.58 | $11,066.58 |
| 6/1/06 – 9/30/06 | $12,936.12 | $12,936.12 |
| 10/1/06 – 1/31/07 | $7,592.66 | $7,592.66 |
| 2/1/07 – 5/31/07 | $17,100.73 | $8,381.33[3] |
| 6/1/07 – 9/30/07 | $17,130.85 | $17,130.85 |
| **TOTAL** | $70,035.67 | $61,316.27 |

40.     In connection with the discharge of its duties to the Debtors, and in order to comply with the disclosure, reporting and application requirements imposed upon JLL in this case by the Bankruptcy Code, the JLL Order and the Compensation Orders, JLL has retained Joseph Frank, Jeremy Kleinman and the law firm of Frank/Gecker LLP ("F/G") as counsel. In connection with this engagement, F/G rendered services to JLL that included preparing monthly statements of interim compensation and reimbursement of expenses; coordinating entry into the Consulting Agreement; preparing the Supplemental Application and the Supplemental Affidavit of James C. Becker in support thereof; preparing JLL's Interim Applications for compensation; advising JLL regarding the protection of confidential information relating to the services rendered by JLL's professionals and related expenses; and communicating with the Debtors' attorneys and/or the Court-appointed Fee Review Committee (the "FRC"). These services were primarily rendered by attorneys Joseph Frank and Jeremy Kleinman and paralegal Christina Carpenter. Mr. Frank is a partner at F/G and has 16 years of experience in the field of bankruptcy law. During the course of this engagement, Mr. Frank's customary hourly billing rate was $500.00 per hour. Jeremy Kleinman is an associate at F/G with eight years of experience in the field of bankruptcy law. During the course of this engagement, Mr. Kleinman's customary hourly billing rate was $310.00 per hour. Ms. Carpenter's customary

---

[3] After filing its interim fee application, JLL determined that one of its international charges, in the amount of $8,719.40, should not have been charged against the Debtors and voluntarily reduced the amount of reimbursement sought.

{ JLL / 004 / 00013083.DOC /}    - 16 -

hourly billing rate is $145.00.  Detailed invoices demonstrating the services rendered to JLL in order to assist JLL in the discharge of its duties have been provided in connection with the various interim applications submitted by JLL.

41.     This Final Application has been prepared in accordance with the Compensation Orders, this Court's Administrative Orders dated June 24, 1991 and April 21, 1995, and the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330, dated January 30, 1996.

42.     All services for which JLL requests compensation were performed for the Debtors and not on behalf of any other person or entity.

43.     The professional services and related expenses for which JLL requests final allowance of compensation and reimbursement were rendered in connection with the Debtors' bankruptcy case.  These services and expenses have been necessary and beneficial to the Debtors, their estates, creditors and other parties in interest.

44.     In addition to the compensation set forth above, JLL has earned success fees and commissions from certain third parties in connection with the transaction management services it provided to the Debtors.  These fees and commissions have been paid, from certain third parties with whom the Debtors have entered into real estate leases in the United States and Europe and Asia to be paid over time.  The success fees and commissions earned by JLL are expressly contemplated in the terms of the Engagement Agreement, which also requires that a portion of those commissions and fees be subject to "revenue sharing" with the Debtors (and are recognized by the Consulting Agreement to the extent the commissions were earned under the Engagement Agreement).  During the course of the engagement, JLL earned and/or received fees and commissions from real estate transactions in Asia, Africa, Mexico and the United States totaling

not less than $1,749,908.77. Pursuant to the revenue sharing provisions set forth in Section II G of Exhibit B of the Engagement Agreement, JLL has paid not less than $457,933.69 to the Debtors from the total funds received.

45. JLL has received no payment and no promise of payment from any source for the services of the professionals referenced above in connection with this case, except as disclosed herein. In addition, other than as permitted under section 504(b)(1) of the Bankruptcy Code, there is no agreement or understanding between JLL and any other person or entity for the sharing of compensation to be received for services rendered in these cases.

46. Prior to the filing of this Final Application, JLL served three statements of monthly interim compensation and expenses covering the time period of October 1, 2007 through December 31, 2007. Detailed descriptions of these statements follow.

47. On November 29, 2007, JLL served its Statement of Monthly Compensation and Expenses for professional services rendered to the Debtors during the time period of October 1, 2007 through October 31, 2007 (the "October Statement"), reflecting total fees due in the amount of $12,031.88. A copy of the October Statement is attached hereto as **Exhibit A**.

48. On December 26, 2007, JLL served its Statement of Monthly Compensation and Expenses for professional services rendered to the Debtors during the time period of November 1, 2007 through November 30, 2007 (the "November Statement"), reflecting total fees due in the amount of $12,031.88. A copy of the November Statement is attached hereto as **Exhibit B**.

49. On January 31, 2008, JLL served its Statement of Monthly Compensation and Expenses for professional services rendered to the Debtors during the time period of December 1, 2007 through December 31, 2007 (the "December Statement"), reflecting total fees due in the amount of $12,031.88. A copy of the December Statement is attached hereto as **Exhibit C**.

50. JLL has previously requested and received the following amounts of monthly interim compensation on account of services rendered between October 1, 2007 and December 31, 2007:

| **SUMMARY OF FEE STATEMENTS** | | | | | |
|---|---|---|---|---|---|
| | | **REQUESTED** | | **PAID** | |
| **Date Served** | **Period Covered** | **Fees** | **Expenses** | **Fees** | **Expenses** |
| 11/29/07 | 10/1/07 – 10/31/07 | $12,031.88 | $0.00 | $9,625.50 | $0.00 |
| 12/26/07 | 11/01/07 – 11/30/07 | $12,031.88 | $0.00 | $9,625.50 | $0.00 |
| 1/31/08 | 12/01/07 – 12/31/07 | $12,031.88 | $0.00 | $12,031.88 | $0.00 |
| **TOTAL:** | | **$36,095.64** | **$0.00** | **$31,282.88** | **$0.00** |

51. The above-referenced payments were made pursuant to this Court's Compensation Orders and remain subject to this Court's review in connection with the present Final Application.

52. JLL has today served this Final Application upon all parties referenced in the Compensation Orders. The services for which JLL now seeks compensation have been essential to the administration of the Debtors' estates and have provided substantial benefits to the Debtors and their creditors.

WHEREFORE, Jones Lang LaSalle Americas, Inc. respectfully requests that the Court enter an order (i) allowing, on a final basis, previously awarded interim compensation totaling $1,259,205.45 and reimbursement of expenses totaling $61,316.27; (ii) allowing, on a final basis, additional compensation totaling $36,095.64 for the period of October 1, 2007 through December 31, 2007; (iii) authorizing and directing the Debtors to pay to JLL the sum of $144,701.33, which is the amount remaining due after application of all interim compensation payments received to date; and (iv) granting such other and further relief as this Court deems just and proper.

Dated: December 31, 2009
JONES LANG LASALLE AMERICAS, INC.

By:  */s/ Joseph D. Frank*

Joseph D. Frank (JF-6085)
Jeremy C. Kleinman (JK 0080)
FRANK/GECKER LLP
325 North LaSalle Street, Suite 625
Chicago, Illinois  60654
(312) 276-1400 – telephone
(312) 276-0035 – facsimile
*Counsel to Jones Lang LaSalle Americas, Inc.*