**Hearing Date and Time:  To Be Determined**
**Objection Deadline:  To Be Determined**

O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006
(202) 383-5300
Robert A. Siegel (RS 0922)
Tom A. Jerman (TJ 1129)

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x
                                                           :
       In re                                               :        Chapter 11
                                                           :
DELPHI CORPORATION, et al.,                                :        Case No. 05-44481 (RDD)
                                                           :
                                      Debtors.             :        (Jointly Administered)
                                                           :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

**COVER SHEET PURSUANT TO UNITED STATES TRUSTEE
GUIDELINES FOR REVIEWING APPLICATIONS FOR COMPENSATION
AND REIMBURSEMENT OF EXPENSES FILED UNDER 11 U.S.C. § 330**

**O'MELVENY & MYERS LLP'S SEVENTH AND FINAL APPLICATION FOR
ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES**

| NAME OF APPLICANT: | O'Melveny & Myers LLP |
|---|---|
| | |
| **TIME PERIOD:** | October 1, 2007 through January 25, 2008 |
| | |
| **ROLE IN THE CASE:** | Special Labor Counsel to Debtors |
| | |
| **DATE OF FINAL RETENTION ORDER:** | November 4, 2005 |
| | |
| **CURRENT APPLICATION:** | |
| | |
| Fees Incurred: | $   7,988.00 |
| Expenses Incurred: | $   1,007.23 |
| | |
| **PRIOR APPLICATIONS:** | |
| | |
| Fees Previously Requested: | $  5,994,270.00 |
| Fees Previously Awarded: | $  5,863,117.99 |
| Expenses Previously Requested: | $  2,156,975.16 |
| Expenses Previously Awarded: | $  2,156,939.16 |
| | |
| **INTERIM OR FINAL APPLICATION:** | Final |

**PRIOR FEE APPLICATIONS**

| PRIOR FEE APPLICATION | DATE FILED | PERIOD COVERED | INTERIM FEES REQUESTED (AWARDED) | INTERIM EXPENSE REIMBURSEMENT REQUESTED (AWARDED) |
|---|---|---|---|---|
| First | 04/27/06 | October 8, 2005 through January 31 2006 | $1,322,746.50 ($1,291,079.83) | $90,169.23 ($90,169.23) |
| Second | 07/31/06 | February 1, 2006 through May 31, 2006 | $3,118,474.00 ($3,086,807.33) | $874,459.13 ($874,459.13) |
| Third | 11/30/06 | June 1, 2006 through September 30, 2006 | $958,052.25 ($926,385.58) | $552,004.05 ($552,004.05) |
| Fourth | 03/30/07 | October 1, 2006 through January 31, 2007 | $151,934.25 ($128,177.25) | $288,188.20 ($288,188.20) |
| Fifth | 07/31/07 | February 1, 2007 through May 31, 2007 | $258,751.00 ($250,600.00) | $347,012.84 ($346,976.84) |
| Sixth | 11/30/07 | June 1, 2007 through September 30, 2007 | $184,312.00 ($180,068.00) | $5,141.71 ($5,141.71) |

## SCHEDULE OF HOURS AND COMPENSATION
## DURING THE FINAL APPLICATION PERIOD

| PARTNERS<br><br>NAME OF PROFESSIONAL | YEAR ADMITTED | DEPARTMENT | BILLING RATES | HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| Tom A. Jerman | 1981 | Adversarial/Labor | $ 795.00 | 2.20 | $        1,749.00 |
| **Total Partners** | | | | **2.20** | **$        1,749.00** |

| COUNSEL & ASSOCIATES<br><br>NAME OF PROFESSIONAL | YEAR ADMITTED | DEPARTMENT | BILLING RATES | HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| Jessica Kastin | 2002 | Adversarial/Labor | $ 550.00 | 4.50 | $        2,475.00 |
| Stacy Hauf | 2006 | Adversarial | $ 360.00 | 8.90 | $        3,204.00 |
| **Total Counsel & Associates** | | | | **13.40** | **$        5,679.00** |

**Blended Hourly Rate = $423.81**

| NAME OF PARA-PROFESSIONAL | DEPARTMENT | BILLING RATES | HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|
| Michael Montalto | Adversarial | $   35.00 | 0.50 | $          17.50 |
| Michelle Woo | Adversarial | $ 175.00 | 3.10 | $         542.50 |
| **Total Paraprofessionals** | | | **3.60** | **$         560.00** |

**Blended Hourly Rate = $155.56**

**Hearing Date and Time:  To Be Determined**
**Objection Deadline:  To Be Determined**

O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006
(202) 383-5300
Robert A. Siegel (RS 0922)
Tom A. Jerman (TJ 1129)

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                              :
          In re                               :    Chapter 11
                                              :
DELPHI CORPORATION, et al.,                   :    Case No. 05-44481 (RDD)
                                              :
                            Debtors.          :    (Jointly Administered)
                                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### SEVENTH AND FINAL APPLICATION OF O'MELVENY & MYERS LLP FOR ORDER AUTHORIZING AND APPROVING COMPENSATION AND REIMBURSEMENT OF EXPENSES

TO THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE:

O'Melveny & Myers LLP ("O'Melveny"), special labor counsel for Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors, and debtors-in-possession in the above-captioned case (collectively, the "Debtors"), hereby submits its seventh and final application for the allowance of compensation and reimbursement of expenses (the "Seventh and Final Application"), pursuant to sections 330(a)(1) and 331 of chapter 11, title 11 of the United States Code (the "Bankruptcy Code"), and Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and requests entry of the order, the proposed form of which is attached hereto as Exhibit "A." O'Melveny submits this Seventh and Final Application for (a) allowances of compensation for professional services rendered by O'Melveny to the Debtors, (b) reimbursement of actual and necessary disbursements incurred by O'Melveny in rendition of required professional services on behalf of the Debtors, and (c) approval of all fees and expenses previously awarded to O'Melveny on an interim basis in connection with previous fee applications. In support of the Seventh and Final Application, O'Melveny respectfully represents as follows:

## I.
## PRELIMINARY STATEMENT

1.    As hereinafter set forth in detail, the activities performed by O'Melveny, in conjunction with the Debtors and the Debtors' other retained professionals, were winding down during the period from October 1, 2007 through January 25, 2008 (the "Final Application Period"), although all work to date has yielded significant benefits to the estates and their creditors.

2.    O'Melveny requests that this Court authorize total compensation to O'Melveny in the amount of $8,995.23, which includes reimbursement of fees in the amount of $7,988.00, including the 20 percent holdback in the amount of $1,597.60, and expenses in the amount of $1,007.23 for the Final Application Period.

3.    In addition to approving the compensation requested by O'Melveny for the Final Application Period, the Court should approve all fees and expenses previously awarded to O'Melveny on an interim basis in connection with the previous fee applications. The professional services rendered by O'Melveny, during the period from October 8, 2005 through and including January 25, 2008, as special labor counsel to Debtors, were necessary and beneficial to Debtors' estates, and were consistently performed in a timely manner, commensurate with the complexity, importance, and nature of the issues involved; and approval of the compensation sought herein is therefore warranted.

## II.
## BACKGROUND

A.    The Chapter 11 Filings

4.    On October 8 and 14, 2005 (the "Petition Dates"), Delphi and certain of its U.S. subsidiaries and affiliates filed voluntary petitions in this Court for reorganization relief under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On October 8, 2005 and October 19, 2005, this Court entered orders directing the joint administration of the Debtors' chapter 11 cases (Docket Nos. 28 and 404 respectively).

5.    On October 17, 2005, the Office of the United States Trustee appointed an official committee of unsecured creditors (the "Creditors' Committee"). On April 28, 2006, the

U.S. Trustee appointed an official committee of equity security holders (the "Equity

Committee").  No trustee or examiner has been appointed in the Debtors' cases.

6.     On September 6, 2007, the Debtors filed a Joint Plan Of Reorganization Of

Delphi Corporation And Certain Affiliates, Debtors, And Debtors-In-Possession (Docket No.

9263) and a Disclosure Statement With Respect To Joint Plan Of Reorganization Of Delphi

Corporation And Certain Affiliates, Debtors, And Debtors-In-Possession (Docket No. 9264).

7.     This Court has jurisdiction over this Seventh and Final Application pursuant

to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This

matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

8.     The statutory predicates for relief requested herein are §§ 330 and 331 of the

Bankruptcy Code, Rule 2016 of the Bankruptcy Rules, and Local Rule 2014-1.

B.     Current Business Operations Of The Debtors

9.     Delphi and its subsidiaries and affiliates (collectively, the "Company") as of

December 31, 2006 had global net sales of approximately $26.4 billion and global assets of

approximately $15.54 billion.[1]  At the time of its chapter 11 filing, Delphi ranked as the fifth

largest public company business reorganization in terms of revenues, and the thirteenth largest

public company business reorganization in terms of assets.  Delphi's non-U.S. subsidiaries are

not chapter 11 debtors and continue their business operations without supervision from the

Bankruptcy Court.

10.     The Company is a leading global technology innovator with significant

engineering resources and technical competencies in a variety of disciplines, and is one of the

largest global suppliers of vehicle electronics, transportation components, integrated systems and

---

[1] The aggregated financial data used in this Seventh and Final Application generally consists of
consolidated information from Delphi and its worldwide subsidiaries and affiliates as disclosed in the Company's
form 10-K filed on February 27, 2007.

modules, and other electronic technology.  Delphi supplies products to nearly every major global

automotive original equipment manufacturer.

11.    As part of its growth strategy, Delphi has established an expansive global

presence with a network of manufacturing sites, technical centers, sales offices, and joint

ventures located in every major region of the world.  As of the Initial Filing Date, the Debtors

employed approximately 180,000 employees worldwide.  The Debtors' 50,600 U.S. employees

worked in approximately 44 manufacturing sites, 13 technical centers, and Delphi's Troy,

Michigan headquarters.  Approximately 34,750 of the Debtors' U.S. employees were hourly

employees as of the Initial Filing Date, and 96 percent of these were represented by

approximately 49 different international and local unions.  Outside the United States, Delphi's

foreign entities employed more than 134,000 people on the Initial Filing Date, supporting 120

manufacturing sites and 20 technical centers in nearly 40 countries around the globe.

12.    Delphi was incorporated in Delaware in 1998 as a wholly-owned subsidiary

of GM.  Prior to January 1, 1999, GM conducted Delphi's business through various divisions and

subsidiaries.  Effective January 1, 1999, the assets and liabilities of these divisions and

subsidiaries were transferred to Delphi in accordance with the terms of a Master Separation

Agreement between Delphi and GM.  In connection with these transactions, Delphi accelerated

its evolution from a North American-based, captive automotive supplier to a global supplier of

components, integrated systems, and modules for a wide range of customers and applications.

Although GM is still Delphi's single largest customer, today more than half of Delphi's revenue

is generated from non-GM sources.

C.    Events Leading to Chapter 11 Filing

13.    In the first two years following Delphi's separation from GM, Delphi generated approximately $2 billion in net income.  Every year thereafter, however, with the exception of 2002, Delphi has suffered losses.  In calendar year 2004, Delphi reported a net operating loss of $482 million on $28.6 billion in net sales.[2]  Reflective of a downturn in the marketplace, in 2005 Delphi incurred net losses of approximately $2.8 billion on net sales of $26.9 billion.

14.    The Debtors believe that Delphi's financial performance has deteriorated because of: (a) increasingly unsustainable U.S. legacy liabilities and operational restrictions driven by collectively bargained agreements, including restrictions preventing the Debtors from exiting non-strategic, non-profitable operations, all of which have the effect of creating largely fixed labor costs; (b) a competitive U.S. vehicle production environment for domestic OEMs resulting in the reduced number of motor vehicles that GM produces annually in the United States and related pricing pressures; and (c) increasing commodity prices.

15.    In light of these factors, Delphi determined that it would be imprudent and irresponsible to defer addressing and resolving its U.S. legacy liabilities, product portfolio, operational issues, and forward looking revenue requirements.  Because discussions with its unions and GM were not progressing sufficiently, Delphi commenced these chapter 11 cases for its U.S. businesses to complete the Debtors' transformation plan and preserve value for its stakeholders.

16.    Through the reorganization process, the Debtors intend to achieve competitiveness for Delphi's core U.S. operations by modifying or eliminating non-competitive

---

[2] Reported net losses in calendar year 2004 were $4.8 billion, reflecting a $4.1 billion tax charge, primarily related to the recording of a valuation allowance on the U.S. deferred tax assets as of December 31, 2004.

legacy liabilities and burdensome restrictions under current labor agreements and realigning Delphi's global product portfolio and manufacturing footprint to preserve Delphi's core businesses. This requires negotiation with key stakeholders over their respective contributions to the restructuring plan or, absent consensual participation, the utilization of the chapter 11 process to achieve the necessary cost savings and operational effectiveness. The Debtors believe that a substantial segment of Delphi's U.S. business operations must be divested, consolidated, or wound-down during these cases.

17.    Upon the conclusion of the reorganization process, the Debtors expect to emerge as a stronger, more financially sound business with viable U.S. operations that are well-positioned to advance global enterprise objectives. In the meantime, Delphi will marshal all of its resources to continue to deliver value and high-quality products to its customers globally. Additionally, Delphi will preserve and continue the strategic growth of its non-U.S. operations and maintain its prominence as the world's premier auto supplier.

### III.
### RETENTION OF O'MELVENY

18.    The Debtors filed their application to employ O'Melveny with the Court on October 8, 2005. O'Melveny charges legal fees on an hourly basis at its attorneys' individual hourly rates, which are based on the attorney's seniority and experience, and which are adjusted from time to time. O'Melveny also charges the Debtors for reasonable and actual out-of-pocket expenses incurred, such as court services, computerized research, delivery services, photocopies, long distance phone calls, fees associated with ongoing litigation, travel and other costs necessarily incurred in connection with its representation of the Debtors.[3] O'Melveny's fee

---

[3] As discussed more fully below, O'Melveny provides discounts to the Debtors, as regards certain expenses. Specifically, O'Melveny does not charge the Debtors for outgoing facsimiles and charges the Debtors for only one-half of total travel time and $0.10 per copy.

structure and reimbursement policies were disclosed in the Debtors' application to employ

O'Melveny, to which no party objected and this Court approved by order entered on November

4, 2005, a copy of which is attached hereto as Exhibit "B."

## IV.
## FEE PROCEDURES AND MONTHLY FEE STATEMENTS

19.    On November 4, 2005, this Court entered an Order Under 11 U.S.C. § 331

Establishing Procedures For Interim Compensation And Reimbursement Of Expenses Of

Professionals (Docket No. 869) (the "Initial Interim Compensation Order"). This order was

subsequently amended on March 8, 2006 (Docket No. 2747), March 28, 2006 (Docket No.

2986), May 5, 2006 (Docket No. 3630), July 12, 2006 (Docket No. 4545), October 13, 2006

(Docket No. 5310), and December 11, 2006 (Docket No. 6145) (collectively and together with

the Initial Compensation Order, the "Interim Compensation Order").

20.    Pursuant to the UST Guidelines, O'Melveny certifies that the Debtors have

received a copy of this Seventh and Final Application, but have not yet completed their review.

In addition, pursuant to paragraph 2(a) and 2(j) of the Interim Compensation Order, as

supplemented, as well as the Fee Review Protocol (as defined below), O'Melveny certifies that a

copy of this Seventh and Final Application is being served via overnight mail upon (i) the

Debtors, (ii) co-counsel for the Debtors, (iii) the United States Trustee for the Southern District

of New York, (iv) the Creditors' Committee, (v) counsel for the agent under the Debtors'

prepetition credit facility, (vi) counsel for the agent under the Debtors' postpetition credit

facility, (vii) counsel to the Equity Committee, (viii) the members of the Fee Review Committee,

and (ix) Legal Cost Control ("LCC"), the Fee and Expense Analyst to the Fee Review

Committee. O'Melveny is also serving, concurrently with this filing, notice of the filing of and

the hearing on the Seventh and Final Application on parties as required by paragraph 8 of the

Interim Compensation Order.  O'Melveny submits that no other or further notice need be given.

21.    In accordance with the Interim Compensation Order, O'Melveny has

previously submitted six interim fee applications.  All prior fee applications have been approved

by the court as follows:

a.    On April 27, 2006, O'Melveny filed its first interim fee application

for the interim allowance of compensation for professional services performed by O'Melveny for

the period commencing October 8, 2005 through January 31, 2006 (the "First Interim Period")

and for reimbursement of its actual and necessary expenses incurred during the First Interim

Period.  O'Melveny sought allowances of fees for the services to Debtors during the First Interim

Period in the amount of $1,322,746.50 and for reimbursement of expenses incurred in connection

with such services in the amount of $90,169.23.  By order dated February 15, 2007, this Court

awarded $1,291,079.83 in compensation and $90,169.23 in expenses.

b.    On July 31, 2006, O'Melveny filed its second interim fee application

for the interim allowance of compensation for professional services performed by O'Melveny for

the period commencing February 1, 2006 through May 31, 2006 (the "Second Interim Period")

and for reimbursement of its actual and necessary expenses incurred during the Second Interim

Period.  O'Melveny sought allowances of fees for the services to Debtors during the Second

Interim Period in the amount of $3,118,474.00 and for reimbursement of expenses incurred in

connection with such services in the amount of $874,459.13.  By order dated February 15, 2007,

this Court awarded $3,086,807.33 in compensation and $874,459.13 in expenses.

c.    On November 30, 2006, O'Melveny filed its third interim fee

application for the interim allowance of compensation for professional services performed by

O'Melveny for the period commencing June 1, 2006 through September 30, 2006 (the "Third

Interim Period") and for reimbursement of its actual and necessary expenses incurred during the

Third Interim Period.  O'Melveny sought allowances of fees for the services to Debtors during

the Third Interim Period in the amount of $958,052.25 and for reimbursement of expenses

incurred in connection with such services in the amount of $552,004.05.  By order dated

February 15, 2007, this Court awarded $926,385.58 in compensation and $552,004.05 in

expenses.

    d.  On March 30, 2007, O'Melveny filed its fourth interim fee

application for the interim allowance of compensation for professional services performed by

O'Melveny for the period commencing October 1, 2006 through January 31, 2007 (the "Fourth

Interim Period") and for reimbursement of its actual and necessary expenses incurred during the

Fourth Interim Period.  O'Melveny sought allowances of fees for the services to Debtors during

the Fourth Interim Period in the amount of $151,934.25 and for reimbursement of expenses

incurred in connection with such services in the amount of $288,188.20.  By order dated June 27,

2007, this Court awarded $128,177.25 in compensation and $288,188.20 in expenses.

    e.  On July 31, 2007, O'Melveny filed its fifth interim fee application for

the interim allowance of compensation for professional services performed by O'Melveny for the

period commencing February 1, 2007 through May 31, 2007 (the "Fifth Interim Period") and for

reimbursement of its actual and necessary expenses incurred during the Fifth Interim Period.

O'Melveny sought allowances of fees for the services to Debtors during the Fifth Interim Period

in the amount of $258,751.00 and for reimbursement of expenses incurred in connection with

such services in the amount of $347,012.84.  By order dated October 29, 2007, this Court

awarded $250,600.00 in compensation and $346,976.84 in expenses.

f.      On November 30, 2007, O'Melveny filed its sixth interim fee application for the interim allowance of compensation for professional services performed by O'Melveny for the period commencing June 1, 2007 through September 30, 2007 (the "Sixth Interim Period") and for reimbursement of its actual and necessary expenses incurred during the Sixth Interim Period.  O'Melveny sought allowances of fees for the services to Debtors during the Sixth Interim Period in the amount of $184,312.00 and for reimbursement of expenses incurred in connection with such services in the amount of $5,141.71.  By order dated February 25, 2008, this Court awarded $180,068.00 in compensation and $5,141.71 in expenses.

22.      To minimize costs to the Debtors' estates and avoid duplicative efforts in the review of fee applications filed in these Reorganization Cases, the Debtors, the Creditors' Committee, and the U.S. Trustee negotiated the formation of a joint fee review committee (the "Fee Review Committee") to review, comment on, and if necessary, object to the various fee applications filed in these Reorganization Cases.  As part of the Third Supplemental Interim Compensation Order, this Court authorized the establishment of the Fee Review Committee and approved a protocol regarding the Fee Review Committee, its composition, mandate, and procedures (the "Fee Review Protocol") (Docket No. 3630).  Additionally, on August 17, 2006, this Court entered an order authorizing the Fee Review Committee to retain Legal Cost Control, Inc. as fee analyst to assist the Fee Review Committee (Docket No. 4959).

23.      In compliance with the Interim Compensation Order, on or before the last day of the month following each calendar month for which compensation was sought, O'Melveny served by overnight delivery to (i) the Debtors, (ii) co-counsel for the Debtors, (iii) the United States Trustee for the Southern District of New York, (iv) counsel for the official committee of unsecured creditors, (v) counsel for the agent under the Debtors' prepetition credit

11

facility, (vi) counsel for the agent under the Debtors' postpetition credit facility, and (vii) the

members of the Fee Review Committee a monthly statement of all professional fees and

disbursements incurred during the preceding calendar month.  The parties had at least 15 days

after receipt to review any such statement.  In the event any party had an objection to the

compensation or reimbursement sought in a particular statement, such person was required to

serve the objection no later than the 45th day following the month for which compensation was

sought.  If there were no objections, at the expiration of the 45-day period, the Debtors were

ordered to promptly pay 80 percent of the fees and 100 percent of the expenses identified in each

monthly statement.  O'Melveny submitted monthly statements for each month during the Final

Application Period and no objections were received.

       24.    O'Melveny received from Debtors a retainer of $300,000 prepetition.

Pursuant to the terms of its Engagement Letter, a copy of which is attached hereto as Exhibit

"C," O'Melveny has applied $212,474.75 of that retainer in the First and Second Interim Periods.

No monies, however, were used from the retainer during the Final Application Period, and the

retainer balance remains $857.46.

       25.    To the best of O'Melveny's knowledge, information and belief, the Debtors

have paid all postpetition expenses in the ordinary course, and there are currently no unpaid,

undisputed ordinary course, prepetition operating expenses in these cases.

       26.    To the best of O'Melveny's knowledge, information and belief, the Debtors

have sufficient funds on hand to pay the compensation and reimbursement of expenses requested

herein.

27.    To the best of O'Melveny's knowledge, information and belief, the Debtors have filed with the United States Trustee all monthly operating reports presently due, and have paid all quarterly fees to the United States Trustee that are presently due.

28.    O'Melveny is providing in this Seventh and Final Application a general description of services rendered during the Final Application Period.  Moreover, the actual time records of each professional are appended as Exhibit "D" to the Seventh and Final Application, thereby providing a detailed accounting of the services provided for consideration by the United States Trustee and this Court.

**V.**
**SUMMARY OF COMPENSATION REQUESTED AND SERVICES**
**RENDERED TO THE ESTATES DURING THIS PERIOD**[4]

29.    O'Melveny seeks approval of professional fees in the amount of $7,988.00 and reimbursement of expenses in the amount of $1,007.23 for the Final Application Period.  In accordance with the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 (Appendix A to 28 C.F.R. § 58), dated May 17, 1996 (the "UST Guidelines"), O'Melveny has classified all services performed for which compensation is sought for this period.  Exhibit "E" is a table listing the names of all attorneys and paraprofessionals who have worked for the Debtors during the Final Application Period, and their respective hourly rates and amounts billed, in addition to other summary information required by the UST Guidelines.  Exhibit "F" to this Seventh and Final Application sets forth with particularity each category of expenses incurred by O'Melveny on behalf of the Debtors.

---

[4] O'Melveny has taken every effort to ensure that this Seventh and Final Application is prepared in accordance with the Guidelines for Reviewing Applications For Compensation & Reimbursement of Expenses filed under 11 U.S.C. § 330 (the "UST Guidelines") to the extent applicable.

30.    In staffing this case, in budgeting and incurring charges and disbursements, and in preparing and submitting this Seventh and Final Application, O'Melveny has been mindful of the need to be efficient while providing adequate and vigorous representation to the Debtors.  As described in detail herein, O'Melveny believes that the requests made in this Seventh and Final Application comply with this Court's standards in the context of the unique circumstances surrounding these unusually large and complex cases.

31.    Pursuant to the Fee Review Protocol, effective October 1, 2006, O'Melveny has recorded all work under using the U.S. Trustee's Project Codes.  All O'Melveny professionals keep a record of the time spent rendering such services in billing increments of one-tenth of an hour.  As noted above, Exhibit "D" contains O'Melveny's detailed invoices for this matter number, as sent to the Debtors.

32.    The tasks to which O'Melveny gave attention during the Final Application Period are summarized more fully below.  Although recitation of every item of professional services that O'Melveny performed would unduly burden the Court, the following summary highlights the major tasks to which O'Melveny devoted substantial time and attention during the Final Application Period.

33.    <u>Sections 1113/1114 Advice – Labor (Project Code 10)</u>.  During the Final Application Period, O'Melveny continued to advise the Debtors regarding all labor aspects of its bankruptcy proceedings, including the Debtors' ongoing efforts to negotiate significant labor cost and employee benefit savings with unions representing the Debtors' hourly employees. O'Melveny continued to work closely with financial, operational and labor relations personnel of the client, as well as advisors to the client, to assist in negotiations strategy, and information

sharing.  Specifically, as a part of these efforts, O'Melveny provided advice and counseling on

strategic labor planning and labor aspects of the Debtors' restructuring and transformation plans.

34.    Fee Application – Labor (Project Code 07).  During the Final Application

Period, O'Melveny prepared the relevant application for interim allowance of compensation and

reimbursement of expenses and communicated with the Fee Review Committee and LCC

regarding fees and expenses.  In particular, O'Melveny billed 13.6 hours and $4,369.00 in fees in

preparing and filing O'Melveny's Sixth Interim Application, which application totaled

$184,312.00 in fees and $5,141.71 in expenses.

35.    In aggregate, attorneys and paraprofessionals at O'Melveny billed an

aggregate of 19.20 hours working on behalf of the Debtors during the Final Application Period.

As noted above, Exhibit "E" sets forth the name, hourly rate, hours billed, and total fees incurred

by each O'Melveny attorney and paraprofessional during this time.

## VI.
## LIST OF EXPENSES

36.    In connection with its representation of the Debtors during the Final

Application Period, O'Melveny advanced necessary expenses totaling $1,007.23.  A detailed

description of expenses incurred during the case is attached hereto as Exhibit "F."

37.    O'Melveny requests reimbursement for expenses including costs advanced

for computerized research, delivery services, photocopies, long distance phone calls, fees

associated with ongoing litigation, travel, and other costs necessarily incurred in connection with

its representation of the Debtors.  O'Melveny made every effort to limit expenditures and to use

the most economical means available for accomplishing the tasks requiring such expenditures.

15

38.    Of the expenses, copying charges total $745.70.  O'Melveny's standard in-house charge for photocopying is $0.15 per page.  The Debtors, however, are charged only $0.10 per page.

39.    O'Melveny also incurred costs for sending correspondence regarding the case.  O'Melveny charges $1.25 per page for outgoing facsimiles plus long distance phone charges, if applicable, but does not charge for incoming facsimiles.  The Debtors, however, have not been charged for facsimiles other than for long distance charges associated with the transmissions.  O'Melveny attempted to avoid overnight delivery expenses whenever possible.

## VII.
## HOURLY RATES

40.    The hourly rates of all professionals and paraprofessionals rendering services in this case for the Final Application Period are set forth in Exhibit "E."  O'Melveny submits that these rates are reasonable and within the range of customary rates in the Southern District of New York for professionals of similar experience and expertise in cases other than those under title 11.  Exhibit "E" also sets forth the year of admittance to each attorney's bar, the number of hours billed during the Final Application Period, and the total fees attributable to each professional and paraprofessional, as well as other summary information required by the UST Guidelines.

41.    O'Melveny sought to control its fees by administering the case efficiently and coordinating the efficient prosecution of matters.  Staffing of matters within the case was done with the intent to provide the optimal level of representation given the importance and complexity of a particular matter, and to avoid duplication of other professional efforts, including those of bankruptcy counsel Skadden, Arps, Slate, Meagher & Flom (Illinois).

# VIII.
# LEGAL ARGUMENT

A.      The Legal Standard

42.     Section 331 of the Bankruptcy Code provides for interim compensation of

professionals and incorporates the substantive standards of section 330, as applies to final

allowances, to govern the Court's award of such compensation.  11 U.S.C. § 331.  Section 330

provides that a court may award a professional employed under section 327 of the Bankruptcy

Code "reasonable compensation for actual, necessary services rendered . . . and reimbursement

for actual, necessary expenses."  11 U.S.C. § 330(a)(1).  Section 330 also sets forth the criteria

for the award of such compensation and reimbursement:

> In determining the amount of reasonable compensation to be
> awarded . . . the court should consider the nature, the extent, and
> the value of such services, taking into account all relevant factors,
> including –
>
> (A)    the time spent on such services;
>
> (B)    the rates charged for such services;
>
> (C)    whether the services were necessary to the administration of, or
> beneficial at the time at which the service was rendered toward the
> completion of, a case under this title;
>
> (D)    whether the services were performed within a reasonable amount
> of time commensurate with the complexity, importance, and nature
> of the problem, issue, or task addressed; [and] . . .
>
> (F)    whether the compensation is reasonable based on the customary
> compensation charged by comparably skilled practitioners in cases
> other than cases under this title.

11 U.S.C. § 330(a)(3).

43.     To grant a request for compensation, this Court must find that such request

is reasonable.  The Second Circuit, in evaluating the reasonableness of a requested fee, has

adopted the twelve-factor test of Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th

Cir. 1974), which includes such factors as the time and labor involved; the novelty and difficulty of the questions; the skill requisite to perform the legal service properly; customary fee; the amount involved and the results obtained; experience, reputation, and ability of the attorneys; and awards in similar cases. See United States Football League v. Nat'l Football League, 887 F.2d 408, 425 (2d Cir. 1989) (awarding plaintiffs-appellees attorney's fees against defendants-appellants for work done in connection with an antitrust suit). The reasonableness of a compensation request is determined by taking into account the nature, extent and value of the services provided by the professional and the cost of comparable services. See Colbert v. Furumoto Realty, Inc., 144 F. Supp. 2d 251, 260 (S.D.N.Y. 2001); see also Zolfo, Cooper & Co. v. Sunbeam-Oster Co., 50 F.3d 253 (3d Cir. 1995); In re Busy Beaver Bldg. Ctr., Inc., 19 F.3d 833, 849 (3d Cir. 1994).[5]

B.      O'Melveny's Fees Are Reasonable

44.    The professional services rendered by O'Melveny during the Final Application Period required a high degree of professional competence and expertise. The provision of such services, therefore, has required the expenditure of substantial time and effort. O'Melveny submits that the services rendered were performed efficiently, effectively, and economically and that the results obtained thus far have provided a significant benefit to the estates of the Debtors and their creditors.

---

[5] In the "market-driven approach" to compensation requests, the primary focus of the inquiry is the cost of comparable services in non-bankruptcy contexts. See Zolfo, Cooper, & Co., v. Sunbean-Oster Co., 50 F.3d 253, 258; see also In re Busy Beaver Bldg. Ctr., Inc., 19 F.3d 833, 849-50; In re Fine Paper Antitrust Litig., 751 F.2d 562, 583 (3d Cir. 1984) ("[t]he value of an attorney's time generally is reflected in his normal billing rate"). This market-based approach permits flexibility in billing arrangements. The "lodestar" method (hourly rate multiplied by hours worked) is currently the most widely utilized method for compensation arrangements, but regardless of the manner in which compensation is calculated, "[t]he baseline rule is for firms to receive their customary rates." Zolfo, Cooper, 50 F.3d at 259.

45.    In accordance with its practice in other matters, O'Melveny has utilized the lodestar method for calculating its compensation requested in this Seventh and Final Application. There is a strong presumption that the lodestar product is reasonable.  See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 565 (1986); In re Drexel Burnham Lambert Group, Inc., 133 B.R. 13, 22 (Bankr. S.D.N.Y. 1991).

46.    In awarding attorneys' fees, courts will also consider whether the services rendered were reasonably likely to benefit the debtor's estate.  See e.g., In re Ames Dep't Stores, Inc., 76 F.3d 66, 71 (2d Cir. 1996), rev'd on other grounds, Lamie v. United States Trustee, 540 U.S. 526 (2004);  In re Granite Partners, L.P., 213 B.R. 440, 447 (Bankr. S.D.N.Y. 1997);  In re Drexel Lambert Group, 133 B.R. at 22.  Thus, the Court should focus on what a reasonable lawyer would have done at the time and not invoke a hindsight analysis.

> [I]t is important for a court to maintain a sense of overall proportion and not become enmeshed in meticulous analysis of every detailed facet of the professional representation.  It is easy to speculate that the work could have been done in less time or with fewer attorneys or with an associate rather than a partner.  On the other hand, it is also possible that [the debtor] would not have enjoyed the success it did had its counsel managed matters differently.

Boston & Maine Corp. v Moore, 776 F.2d 2, 10 (1st Cir. 1985) (citations omitted).

47.    O'Melveny's fees during the Final Application Period were reasonable under the prevailing legal standard and should be allowed.  The amount of these fees is not unusual given the size of the Debtors' business and the capacity in which O'Melveny served as special counsel.  These fees are commensurate with fees that O'Melveny and other attorneys of comparable experience and expertise have charged for similar services.

C.    O'Melveny's Expenses Were Actual And Necessary

48.    Section 330(a)(1)(B) of the Bankruptcy Code permits reimbursement for actual, necessary expenses.  Moreover, reimbursement for actual, necessary expenses is

permitted in the Second Circuit.  Accordingly, attorneys' fees awards include those reasonable

out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients.  See United

States Football League, 887 F.2d at 416; see also Kuzma v. IRS, 821 F.2d 930, 933-34 (2d Cir.

1987) see also Zolfo, Cooper, 50 F.3d at 258.  As noted above, O'Melveny has conducted a

review to ensure compliance of expenses with the UST Guidelines.  Accordingly, those expenses

for which reimbursement is sought in this Application satisfy the standards set forth in section

330(a)(1)(B) of the Bankruptcy Code as well as in United States Football League and Kuzma,

and should therefore be allowed.

## IX.
## FINAL ALLOWANCE OF ALL FEES AND EXPENSES

49.    In addition to approving the compensation requested by O'Melveny for the

Final Application Period, the Court should approve all fees and expenses previously awarded to

O'Melveny on an interim basis in connection with the previous fee applications.  The

professional services rendered by O'Melveny, during the period from October 8, 2005 through

and including January 25, 2008, as special labor counsel to Debtors, were necessary and

beneficial to Debtors' estates, and were consistently performed in a timely manner,

commensurate with the complexity, importance, and nature of the issues involved; and approval

of the compensation sought herein is therefore warranted.

## X.
## DESCRIPTION OF PROFESSIONAL EDUCATION AND EXPERIENCE

50.   The biographies of the primary attorneys employed by O'Melveny who

rendered services in this case are attached as Exhibit "G."

## XI.
## NO SHARING OF COMPENSATION

51.    No agreement has been made, directly or indirectly, and no understanding exists, for a division of compensation herein between O'Melveny and any other person or persons, contrary to any applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the local rules or state law.

## XII.
## COMPLIANCE WITH THE UNITED STATES TRUSTEE GUIDELINES, THE LOCAL GUIDELINES, AND THE INTERIM COMPENSATION ORDER

52.    As set forth in the Certification of Tom A. Jerman With Respect To The Seventh And Final Application of O'Melveny & Myers LLP For Order Authorizing And Approving Compensation And Reimbursement Of Expenses (attached hereto as Exhibit "H"), O'Melveny has complied fully with the UST Guidelines, the Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases adopted by the Court on April 19, 1995 (the "Local Guidelines"), and the Interim Compensation Order, to the extent applicable.

## XIII.
## NOTICE OF THIS SEVENTH AND FINAL INTERIM APPLICATION

53.    In compliance with the Interim Compensation Order, notice of the filing of

this Seventh and Final Application will be provided to all parties who have filed a notice of

appearance with the Clerk of this Court and requested notice of pleadings in these chapter 11

cases.  In addition, the Seventh and Final Application in its entirety will be served on the

following parties:  (i) Delphi Corporation, 5725 Delphi Drive, Troy, Michigan 48098 (Att'n:

David Sherbin, John Brooks, and John D. Sheehan), (ii) counsel to the Debtors, Skadden, Arps,

Slate, Meagher & Flom LLP, 155 North Wacker Drive, Suite 2700, Chicago, Illinois 60606

(Att'n:  John Wm. Butler, Jr.), (iii) counsel for the agent under the Debtors' prepetition credit

facility, Simpson Thacher & Bartlett LLP, 425 Lexington Avenue, New York, New York 10017

(Att'n:  Kenneth S. Ziman and Robert H. Trust), (iv) counsel for the agent under the postpetition

credit facility, Davis Polk & Wardwell, 450 Lexington Avenue, New York, New York 10017

(Att'n:  Donald Bernstein and Brian Resnick), (v) counsel for the Official Committee of

Unsecured Creditors, Latham & Watkins LLP, 885 Third Avenue, New York, New York 10022

(Att'n:  Robert J. Rosenberg), (vi) the Office of the United States Trustee for the Southern

District of New York, 33 Whitehall Street, Suite 2100, New York, New York 10004 (Att'n:

Brian S. Masumoto), (vii) counsel to the Equity Committee, Fried, Frank, Harris, Shriver &

Jacobson LLP, One New York Plaza, New York, New York, 10004 (Attn:  Bonnie Steingart),

and (viii) member of the Delphi Fee Review Committee, SABIC Innovative Plastics, 9930

Kincey Avenue, Huntersville, North Carolina 28078 (Attn:  Valerie Venable).  In light of the

nature of the relief requested, the Debtors submit that no other or further notice is required.

## XIV.
## MEMORANDUM OF LAW

54.    Because the legal points and authorities upon which this Motion relies are incorporated herein, the Debtors respectfully request that the requirement of the service and filing of a separate memorandum of law under Local Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York be deemed satisfied.

## XV.
## CONCLUSION

**WHEREFORE**, O'Melveny requests that this Court authorize and approve the compensation in the amount of $7,988.00, including the 20 percent holdback in the amount of $1,597.60, and reimbursement of expenses in the amount of $1,007.23 for the Final Application Period, and all fees and expenses previously awarded to O'Melveny on an interim basis in connection with the previous fee applications.  O'Melveny also requests that this Court grant such further relief as may be deemed just and proper.

DATED:  January 8, 2010

ROBERT A. SIEGEL (RS 0922)
TOM A. JERMAN (TJ 1129)
O'MELVENY & MYERS LLP


By ____/s/ Tom A. Jerman_____
        Tom A. Jerman
        Attorney for Delphi Corporation, et al.,
        Debtors and Debtors-in-Possession