**Hearing Date and Time:  January 21, 2010 at 10:00 a.m. (prevailing Eastern time)**
**Supplemental Response Deadline:  January 19, 2010**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
155 North Wacker Drive
Chicago, Illinois 60606
John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler

   - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Kayalyn A. Marafioti

Attorneys for DPH Holdings Corp., et al.,
   Reorganized Debtors

DPH Holdings Corp. Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

DPH Holdings Corp. Legal Information Website:
http://www.dphholdingsdocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                  :

|  |  |  |
|---|---|---|
| In re | : | Chapter 11 |
|  | : |  |
| DPH HOLDINGS CORP., et al., | : | Case Number 05-44481 (RDD) |
|  | : |  |
|  | : | (Jointly Administered) |
| Reorganized Debtors. | : |  |
|  | : |  |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

REORGANIZED DEBTORS' SECOND SUPPLEMENTAL REPLY TO
RESPONSE OF SHARYL Y. CARTER TO DEBTORS' OBJECTION TO
PROOF OF CLAIM NUMBER 16850 FILED BY SHARYL Y. CARTER

("SECOND SUPPLEMENTAL REPLY REGARDING
SHARYL Y. CARTER'S CLAIM NO. 16850")

DPH Holdings Corp. ("DPH Holdings") and certain of its affiliated reorganized debtors in the above-captioned cases (together with DPH Holdings, the "Reorganized Debtors") hereby submit the Reorganized Debtors' Second Supplemental Reply To Response Of Sharyl Y. Carter To Debtors' Objection To Proof Of Claim Number 16850 Filed Sharyl Y. Carter (the "Second Supplemental Reply"), and respectfully represent as follows:

A.    Preliminary Statement

1.    On October 8 and 14, 2005 (the "Petition Date"), Delphi Corporation and certain of its affiliates (the "Debtors"), predecessors of the Reorganized Debtors, filed voluntary petitions in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as then amended (the "Bankruptcy Code").

2.    On October 6, 2009 (the "Effective Date"), the Debtors substantially consummated the First Amended Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession, As Modified (the "Modified Plan"), which had been approved by this Court pursuant to an order entered on July 30, 2009 (Docket No. 18707), and emerged from chapter 11 as the Reorganized Debtors.

3.    On November 18, 2009, the Reorganized Debtors filed the Notice Of Sufficiency Hearing With Respect To Debtors' Objection To Proofs Of Claim Nos. 1374, 1375, 1376, 1377, 1378, 1379, 1380, 1381, 1382, 1383, 1384, 1385, 1386, 1387, 2539, 3175, 5408, 6468, 6668, 7269, 9396, 10570, 10571, 10835, 10836, 10964, 10965, 10966, 10967, 10968, 12251, 13464, 13663, 13699, 13730, 13734, 13863, 13875, 14334, 14350, 14751, 15071, 15075, 15513, 15515, 15519, 15520, 15521, 15524, 15525, 15532, 15584, 15586, 15587, 15588, 15590, 15591, 15592, 15593, 15594, 15595, 16175, 16591, 16849, And 16850 (Docket No. 19108) (the "Sufficiency Hearing Notice").

4.      The Reorganized Debtors filed the Sufficiency Hearing Notice and are filing this Second Supplemental Reply to implement Article 9.6(a) of the Modified Plan, which provides that "[t]he Reorganized Debtors shall retain responsibility for administering, disputing, objecting to, compromising, or otherwise resolving all Claims against, and Interests in, the Debtors and making distributions (if any) with respect to all Claims and Interests ...."  Modified Plan, art. 9.6(a).

5.      By the Sufficiency Hearing Notice and pursuant to the Order Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 2002(m), 3007, 7016, 7026, 9006, 9007, And 9014 Establishing (i) Dates For Hearings Regarding Objections To Claims And (ii) Certain Notices And Procedures Governing Objections To Claims, entered December 7, 2006 (Docket No. 6089) (the "Claims Objection Procedures Order") and the Eighth Supplemental Order Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 2002(m), 3007, 7016, 7026, 9006, 9007, And 9014 Establishing (i) Dates For Hearings Regarding Objections To Claims And (ii) Certain Notices And Procedures Governing Objections To Claims, entered September 25, 2009 (Docket No. 18936), the Reorganized Debtors scheduled a sufficiency hearing on December 18, 2009 (the "December 18 Sufficiency Hearing") to address the legal sufficiency of each proof of claim filed by the claimants listed on Exhibit A to the Sufficiency Hearing Notice, including proofs of claim numbers 16849 and 16850 filed by Sharyl Y. Carter, and whether each such proof of claim states a colorable claim against the asserted Debtor.

6.      On December 8, 2009, the Reorganized Debtors filed their Supplemental Reply To Responses Of Sharyl Y. Carter To Debtors' Objections To Proofs Of Claim Nos. 16849 And 16850 Filed By Sharyl Y. Carter (Docket No. 19161).

7.      On December 17, 2009, Ms. Carter submitted two letters to this Court comprising her response and reply regarding proofs of claim numbers 16849 and 16852 (Docket Nos. 19197 and 19199).

8.      At the December 18 Sufficiency Hearing, this Court ruled that either of proofs of claim numbers 16849 and 16850 should be expunged as a duplicate claim and adjourned the hearing with respect to the other proof of claim to January 21, 2010.  This Court further stated that the Reorganized Debtors could supplement the record regarding such proof of claim.

9.      On December 24, 2009, the Reorganized Debtors filed and served on Ms. Carter the Notice Of Adjournment Of Claims Objection Hearing With Respect To Reorganized Debtors' Objection To Proof Of Claim Number 16850 Filed By Sharyl Y. Carter (Docket No. 19243).

10.     On December 31, 2009, this Court entered the Order Pursuant To 11 U.S.C. § 502(b) and Fed. R. Bankr. P. 3007 Disallowing And Expunging Proof Of Claim Number 16849 Filed By Sharyl Yvette Carter Identified In The Thirty-Fourth Omnibus Claims Objection (Docket No. 19272).

11.     This Second Supplemental Reply, which supplements the record regarding proof of claim number 16850, is filed pursuant to paragraph 9(b)(i) of the Claims Objection Procedures Order.  Pursuant to paragraph 9(b)(ii) of the Claims Objection Procedures Order, if a Claimant wishes to file a supplemental pleading in response to this Second Supplemental Reply, the Claimant shall file and serve its response no later than two business days before the scheduled Sufficiency Hearing – i.e., by **January 19, 2010.**

B.      Relief Requested

        12.     By this Second Supplemental Reply, the Reorganized Debtors supplement

the record with respect to their request for entry of an order disallowing and expunging proof of

claim number 16850 filed by Sharyl Y. Carter.

C.      Proof Of Claim Number 16850

        13.     On April 28, 2009 and May 1, 2009, Sharyl Y. Carter filed identical

proofs of claim numbers 16849 and 16850, respectively, against Delphi Automotive Systems

LLC ("DAS LLC"), a Debtor in these cases, each asserting a claim in the total amount of $50

million plus interest.  Each of proof of claim numbers 16849 and 16850 also states that the claim

is comprised of a $50 million unsecured non-priority claim, a $50 million unsecured priority

claim, and a $50 million secured priority claim.  Attached to each of these identical proofs of

claim is a letter from Ms. Carter stating that she assumes her attorney would have forwarded

documents to this Court relating to her claim.  As noted above, this Court entered an order

(Docket No. 19272) expunging proof of claim number 16849 as a duplicate claim.

        14.     On June 22, 2009, the Debtors filed the Debtors' Thirty-Fourth Omnibus

Objection Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To (I) Expunge (A)

Certain Pension And OPEB Claims, (B) Certain Individual Workers' Compensation Claims, (C)

Certain Duplicate And/Or Amended Individual Workers' Compensation Claims, (D) Certain

Untimely Individual Workers' Compensation Claims, (E) A Secured Books And Records Claim,

And (F) Certain Untimely Claims, (II) Modify Certain (A) Wage And Benefit Claims, (B) State

Workers' Compensation Claims, And (C) Individual Workers' Compensation Claims Asserting

Priority, (III) Provisionally Disallow Certain Union Claims, And (IV) Modify And Allow

Certain Settled Claims (Docket No. 17182) (the "Thirty-Fourth Omnibus Claims Objection"), by

which the Debtors objected to proof of claim number 16850 on the grounds that such claim

asserted dollar amounts and liabilities not reflected on the Debtors' books and records and sought

an order disallowing and expunging proof of claim number 16850.

15.    On July 20 2009,[1] Ms. Carter filed a letter response to the Thirty-Fourth

Omnibus Claims Objection (Docket No. 18457).  In her response, Ms. Carter asserts that she has

been told that she does "not have any claims, due to untimely filing for years."  Nothing in the

Response provides any rational explanation, documentation, evidence, or support for any of the

claims asserted in the Carter Claims.

16.    Pursuant to the Claims Objection Procedures Order, the hearing on the

Debtors' objection to the Carter Claims was adjourned to a future date.  On November 18, 2009,

the Reorganized Debtors filed the Sufficiency Hearing Notice with respect to the Carter Claims,

among other proofs of claim, scheduling the December 18 Sufficiency Hearing.

D.    Claimants' Burden Of Proof And Standard For Sufficiency Of Claim

17.    The Reorganized Debtors respectfully submit that proof of claim number

16850 fails to state a claim against the Debtors under rule 7012 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules").  Ms. Carter has not proved any facts to support

a right to payment by the Reorganized Debtors on behalf of the Debtors.  Accordingly, the

Debtors' objection to proof of claim number 16850 should be sustained and that proof of claim

should be disallowed and expunged in its entirety.

18.    The burden of proof to establish a claim against the Debtors rests on the

claimant and, if a proof of claim does not include sufficient factual support, such proof of claim

is not entitled to a presumption of prima facie validity pursuant to Bankruptcy Rule 3001(f).  In

---

[1]    The deadline to file a response to the Thirty-Fourth Omnibus Claims Objection was July 16, 2009 at 4:00 p.m.
(Prevailing Eastern Time).  See Thirty-Fourth Omnibus Claims Objection, ¶ 60.

re Spiegel, Inc., No. 03-11540, 2007 WL 2456626 at *15 (Bankr. S.D.N.Y. August 22, 2007)

(the claimant always bears the burden of persuasion and must initially allege facts sufficient to

support the claim); see also In re WorldCom, Inc., No. 02-13533, 2005 WL 3832065, at *4

(Bankr. S.D.N.Y. Dec. 29, 2005) (only a claim that alleges facts sufficient to support legal

liability to claimant satisfies claimant's initial obligation to file substantiated proof of claim); In

re Allegheny Intern., Inc., 954 F.2d 167, 174 (3d Cir. 1992) (in its initial proof of claim filing,

claimant must allege facts sufficient to support claim); In re Chiro Plus, Inc. 339 B.R. 111, 113

(Bankr. D.N.J. 2006) (claimant bears initial burden of sufficiently alleging claim and establishing

facts to support legal liability); In re Armstrong Finishing, L.L.C., No. 99-11576-C11, 2001 WL

1700029, at *2 (Bankr. M.D.N.C. May 2, 2001) (only when claimant alleges facts sufficient to

support its proof of claim is it entitled to have claim considered prima facie valid); In re United

Cos. Fin. Corp., 267 B.R. 524, 527 (Bankr. D. Del. 2000) (claimant must allege facts sufficient

to support legal basis for its claim to have claim make prima facie case).

19.    For purposes of sufficiency, this Court has determined that the standard of

whether a claimant has met its initial burden of proof to establish a claim should be similar to the

standard employed by courts in deciding a motion to dismiss under Bankruptcy Rules 7012 and

9014.  See Transcript of January 12, 2007 Hearing (Docket No. 7118) (the "January 12, 2007

Transcript") at 52:24-53:1.  Pursuant to that standard, a motion to dismiss should be granted "if it

plainly appears that the nonmovant 'can prove no set of facts in support of his claim which would

entitle him to relief.'"  In re Lopes, 339 B.R. 82, 86 (Bankr. S.D.N.Y. 2006) (quoting Conley v.

Gibson, 355 U.S. 41, 45-46 (1957)).  Essentially, the claimant must provide facts that sufficiently

support a legal liability against the Debtors.

20.     This Court further established that the sufficiency hearing standard is consistent with Bankruptcy Rule 3001(f), which states that "a proof of claim executed and filed in accordance with these Rules shall constitute prima facie evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001(f) (emphasis added). Likewise, Bankruptcy Rule 3001(a) requires that "the proof of claim must be consistent with the official form" and Bankruptcy Rule 3001(c) requires "evidence of a writing if the claim is based on a writing." Fed. R. Bankr. P. 3001(a), (c). See January 12, 2007 Transcript at 52:17-22.

E.     Summary Judgment Order Terminating Action Underlying Proof Of Claim Shows That Ms. Carter Fails To State A Claim

21.     Ms. Carter asserts that DAS LLC owes her $50 million plus interest because of a disputed employment litigation claim. The Reorganized Debtors' books and records, however, reflect that DAS LLC does not owe any amounts to Ms. Carter.

22.     On August 15, 2002, Ms. Carter, an employee of the Debtors since 1997 and an African-American woman, filed a charge of discrimination with the United States Equal Employment Opportunity Commission (the "EEOC"), claiming that Delphi Corporation discriminated against her on the basis of her race and that it retaliated against her in violation of Title VII of the Civil Rights Act. Ms. Carter later asked to withdraw her charge, and on March 11, 2003, the EEOC issued to her a Notice of Right to Sue.

23.     On June 16, 2002, Ms. Carter filed a complaint against DAS LLC with the United States District Court for the Southern District of Ohio (the "District Court"), alleging that DAS LLC discriminated against her on the basis of her race, sex, disability, and age, and also seeking damages under an intentional tort theory for her alleged workplace injury. Sharyl Y.

Carter v. Delphi Automotive Systems LLC, et al., Case No. C3-03-205 (S.D. Ohio) (the "District Court Action").[2]

24.    On June 3, 2004, after full discovery, DAS LLC moved for summary judgment (District Court Action, Docket No. 29) (the "DAS LLC Summary Judgment Motion") and on March 28, 2005, the District Court issued an opinion and judgment granting DAS LLC's summary judgment motion in its entirety and terminating the District Court Action (District Court Action, Docket No. 56) (the "Summary Judgment Order").  On April 25, 2005, Ms. Carter filed a notice of appeal with the United States Court of Appeals for the Sixth Circuit (District Court Action, Docket No. 58) (the "Notice of Appeal").  For this Court's reference, a copy of the DAS LLC Summary Judgment Motion is attached hereto as Exhibit A, a copy of the Summary Judgment Order is attached hereto as Exhibit B, and a copy of the Notice of Appeal is attached hereto as Exhibit C.

25.    Ms. Carter's appeal was pending as of the Petition Date and was subject to the automatic stay during the pendency of these chapter 11 cases and the plan injunction set forth in the Modified Plan following the Effective Date.  The Debtors listed Ms. Carter's employment litigation claim on Schedule F on the Amended and Restated Schedules of Assets and Liabilities for DAS LLC as a contingent, unliquidated, and disputed claim against DAS LLC.

26.    The Reorganized Debtors assert that proof of claim number 16850 should be disallowed and expunged in its entirety because in her proof of claim and responses to the Debtors' objection to her claim, Ms. Carter has not proved any set of facts that support a right to payment from the Reorganized Debtors.  Nothing on the face of her proof of claim discusses the

---

[2]    Although proof of claim number 16850 does not mention this captioned case, a reasonable inference can be made that this proof of claim is based on this litigation.  For example, the letter from Ms. Carter that is attached to proof of claim number 16850 refers to her attorney in the District Court Action, Geoffrey Damon of the Damon Law Office in Cincinnati, Ohio.

facts underlying the District Court Action, let alone the judgment and opinion of the District

Court dismissing her complaint.  The Carter Claims filed with this Court merely make assertions

of liability without any supporting documentation.

27.    Moreover, the Summary Judgment Order shows in detail that there is no

merit to proof of claim number 16850.  By its Summary Judgment Order, the District Court

sustained DAS LLC's Summary Judgment Motion and terminated the District Court Action on

both procedural and substantive grounds.  First, the District Court ruled the Ms. Carter's claims

of age, gender, and disability were barred as a matter of law because she did not demonstrate that

she had first filed administrative charges of discrimination, as required under the Title VII, the

Americans with Disabilities Act, and the Age Discrimination in Employment Act.  See Summary

Judgment Order at 8-9.  Second, the District Court held that her claims were time-barred to the

extent they arose from events that occurred more than 300 days before she filed her EEOC

charge, because Title VII requires that charges of discrimination be filed within 300 days of the

alleged discriminatory act.  See Summary Judgment Order at 9-10.

28.    Third, the District Court concluded that Ms. Carter failed to establish a

prima facie claim of race discrimination based on individual discriminatory acts because she

failed to offer evidence from which a reasonable jury could conclude that she was treated

differently than similarly situated, non-protected employees.  See Summary Judgment Order at

10-12.  Fourth, the District Court ruled that she introduced insufficient evidence to support a

conclusion that she was subject to a hostile work environment.  Even if she was able to make

such a showing, she failed to prove that the work environment was hostile because of her race.

See Summary Judgment Order at 12-16.  Fifth, the District Court held that she failed to establish

a prima facie claim of retaliation for complaining of her "concerns" and for reporting an OSHA

10

violation because she failed to introduce evidence to show that she suffered a materially adverse employment action. See Summary Judgment Order at 16-18. Finally, the District Court ruled that Ms. Carter offered no evidence that would allow a reasonable jury to infer that any elements necessary for her to recover damages for her workplace injury due to an intentional tort by DAS LLC have been satisfied. See Summary Judgment Order at 18-19.

29.    For the reasons stated in the Summary Judgment Order, Ms. Carter has not met her burden of proof to establish a claim against the Debtors. Accordingly, Ms. Carter's proof of claim number 16850 is not entitled to a presumption of prima facie validity pursuant to Bankruptcy Rule 3001(f) and fails to state a claim against the Reorganized Debtors under Bankruptcy Rule 7012. Because Ms. Carter cannot provide facts or law supporting proof of claim number 16850, the Thirty-Fourth Omnibus Claims Objection should be sustained as to proof of claim number 16850 and such claim should be disallowed and expunged in its entirety.

F.    Proof Of Claim Number 16850 Is Untimely

30.    Moreover, proof of claim number 16850 should be disallowed and expunged because it was not timely filed. On April 12, 2006, this Court entered its Order Under 11 U.S.C. §§ 107(b), 501, 502, And 1111(a) And Fed R. Bankr. P. 1009, 2002(a)(7), 3003(c)(3), And 5005(a) Establishing Bar Dates For Filing Proofs Of Claim And Approving Form And Manner Of Notice Thereof, entered by this Court on April 12, 2006 (Docket No. 3206) (the "Bar Date Order") setting a bar date of July 31, 2006 (the "Bar Date"), for creditors to file proofs of claim in the Debtors' chapter 11 cases and approved the Notice Of Bar Date For Filing Proofs Of Claim (the "Bar Date Notice") to be used to notify parties of the Bar Date, and included a form to be used to submit a proof of claim (the "Proof of Claim Form").

31.    On or before April 20, 2006, in accordance with the Bar Date Order, the Debtors caused Kurtzman Carson Consultants LLC ("KCC"), the claims and noticing agent in

11

these chapter 11 cases, to transmit to Ms. Carter the Bar Date Notice, which set forth certain

procedures for asserting a proof of claim, and a copy of the Proof of Claim Form.  KCC served

the Bar Date Notice by first class mail at each of the addresses below:

| | |
|---|---|
| Carter Sharyl<br>92 Woolery Ln C<br>Clayton, OH 45415 | Carter Sharyl Yvette<br>Damon Law Office<br>441 Vine St Ste 2900<br>Carew Tower<br>Cincinnati, OH 45202 |
| Sharyl Yvette Carter On Appeal<br>Damon Law Office<br>441 Vine St<br>Ste 2900 Carew Tower<br>Cincinnati, OH 45202 | |

See Affidavit Of Service Of Evan Gershbein, dated April 28, 2006 (Docket No. 3501), the

relevant portions of which, including the Bar Date Notice, are attached hereto as Exhibit D.

32.    Even though proof of claim number 16850 was filed on May 1, 2009 –

almost three years after the Bar Date – yet Ms. Carter has not filed a motion or made any attempt

in her proofs of claim or responses to the Debtors' objection to her proof of claim to establish

excusable neglect under the test outlined by the U.S. Supreme Court in Pioneer Investment

Services Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 395 (1993).  In Pioneer, the

Supreme Court held that excusable neglect is the failure to comply with a filing deadline because

of negligence.  Id. at 394.  In examining whether a creditor's failure to file a claim by the bar date

constituted excusable neglect, the Supreme Court found that the factors include "[a] the danger

of prejudice to the debtor, [b] the length of the delay and its potential impact on judicial

proceedings, [c] the reason for the delay, including whether it was within the reasonable control

of the movant, and [d] whether the movant acted in good faith."  Id. at 395.  The Second Circuit

12

has held the most important factor is the reason for the delay, including whether it was within the reasonable control of the movant.  Midland Cogeneration Venture Ltd. P'ship v. Enron Corp. (In re Enron Corp.), 419 F.3d 115, 122-24 (2d Cir. 2005).

33.    As this Court has consistently ruled on motions under Bankruptcy Rule 9006(b)(1) seeking leave to file an untimely proof of claim, a movant must first show that its failure to file a timely claim constituted "neglect," as opposed to willfulness or a knowing omission.  Then, a movant must show by a preponderance of the evidence that the neglect was "excusable."  See, e.g., Order Pursuant to 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 (I) Denying United States Of America's Motion For Leave To File Late Claim And (II) Disallowing And Expunging Proof Of Claim Number 16727, entered March 25, 2009 (Docket No. 16515) at Exh. A p. 2 (citing Pioneer and Midland Cogeneration cases).

34.    Ms. Carter has made no attempt to prove any set of facts showing that her neglect in timely filing the Carter Claims was "excusable."  Proof of claim number 16850 should, therefore, be disallowed and expunged with prejudice as untimely.

WHEREFORE the Reorganized Debtors respectfully request this Court enter an order (a) sustaining the objection with respect to proof of claim number 16850, (b) disallowing and expunging proof of claim number 16850 in its entirety, and (c) granting such further and other relief this Court deems just and proper.

Dated:    New York, New York
          January 11, 2010

                    SKADDEN, ARPS, SLATE, MEAGHER
                      & FLOM LLP

                    By:  /s/ John Wm. Butler, Jr
                        John Wm. Butler, Jr.
                        John K. Lyons
                        Ron E. Meisler
                    155 North Wacker Drive
                    Chicago, Illinois 60606

                         - and -

                    By:  /s/ Kayalyn A. Marafioti
                        Kayalyn A. Marafioti
                    Four Times Square
                    New York, New York 10036

                    Attorneys for DPH Holdings Corp., et al.,
                      Reorganized Debtors

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| SHARYL Y. CARTER, | ) | Case No. C3-03-205 |
| | ) | |
| Plaintiff, | ) | Judge Rice |
| | ) | Magistrate Judge Ovington |
| v. | ) | |
| | ) | |
| DELPHI AUTOMOTIVE | ) | |
| SYSTEMS LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT AND
MEMORANDUM IN SUPPORT

Robert S. Walker (0005840)
 rswalker@jonesday.com
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212

Lori A. Clary (0066388)
 laclary@jonesday.com
JONES DAY
41 South High Street
Suite 1900
Columbus, Ohio 43215
Telephone:  (614) 469-3939
Facsimile:  (614) 461-4198

Trial Attorneys for Defendants

# TABLE OF CONTENTS

**Page**

I.  THE UNDISPUTED FACTS ............................................................................. 1

    A.  Delphi's Overtime Procedure .......................................................... 2

    B.  Plaintiff's Employment With Delphi ............................................... 2

    C.  Plaintiff's Workers' Compensation Claim And Work Restrictions ........................ 3

    D.  Plaintiff's Layoff From Delphi ........................................................ 4

    E.  Plaintiff's Claims ............................................................................ 4

II.  ARGUMENT ................................................................................................. 5

    A.  Plaintiff's Race Discrimination Claim Fails As A Matter Of Law ........................ 5

    B.  Plaintiff's Sex Discrimination Claim Fails As A Matter Of Law ........................ 12

    C.  Plaintiff's Disability Discrimination Claim Fails As A Matter Of Law .............. 12

    D.  Plaintiff's Age Discrimination Claim Fails As A Matter Of Law ....................... 14

    E.  Plaintiff's Claim For Compensation For Workplace Injuries Is Barred By Ohio's Workers' Compensation Act ............................................... 15

    F.  Plaintiff's Claims Fail As A Matter Of Law for Procedural Reasons ................. 16

III.  CONCLUSION ............................................................................................. 18

Excerpts from the Deposition of Sharyl Y. Carter
with Exhibits ........................................................................ ATTACHMENT A

Affidavit of Thomas J. Munley
with Exhibits ........................................................................ ATTACHMENT B

*Broska v. Henderson,*
70 Fed. Appx. 262 (6th Cir. Jun. 30, 2003) ........................... ATTACHMENT C

*Kinamore v. EPB Electric Utility,*
92 Fed. Appx. 197 (6th Cir. Feb. 9, 2004) ............................. ATTACHMENT D

*Leigh v. Bureau of State Lottery,*
1989 U.S. App. LEXIS 8525 (6th Cir. Jun. 13, 1989) ........................ ATTACHMENT E

*Mast v. IMCO Recycling of Ohio, Inc.,*
58 Fed. Appx. 116 (6th Cir. Feb. 3, 2003) ............................. ATTACHMENT F

*Payne v. O'Neil,*
73 Fed. Appx. 144 (6th Cir. Aug. 13, 2003) ........................... ATTACHMENT G

*Richmond v. Johnson,*
1997 U.S. App. LEXIS 36574 (6th Cir. Dec. 18, 1997) ....................... ATTACHMENT H

*Richmond-Hopes v. City of Cleveland,*
1998 U.S. App. LEXIS 29572 (6th Cir. Nov. 16, 1998) ........................ ATTACHMENT I

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Broska v. Henderson,*
    70 Fed. Appx. 262, 267-68 (6th Cir. Jun. 30, 2003) ............................................. 5-7, 9, 10

*Crocker v. Runyon,*
    207 F.3d 314 (6th Cir. 2000) .................................................................................13

*EEOC v. Bailey Co.,*
    563 F.2d 439 (6th Cir. 1977) .................................................................................16

*Ercegovich v. Goodyear Tire & Rubber Co.,*
    154 F.3d 344 (6th Cir. 1998) ...................................................................................7

*Faragher v. City of Boca Raton,*
    524 U.S. 775 (1998)..........................................................................................9, 11

*Gantt v. Wilson Sporting Goods Co.,*
    143 F.3d 1042 (6th Cir. 1998) .........................................................................13, 14

*Griffin v. Ambika Corp.,*
    103 F. Supp.2d 297 (S.D.N.Y. 2000).................................................................9, 10

*Kinamore v. EPB Electric Utility,*
    2004 U.S. App. LEXIS 2271 (6th Cir. Feb. 9, 2004) ..........................................5, 6

*Kocsis v. Multi-Care Management,*
    97 F.3d 876 (6th Cir. 1996) ....................................................................................5

*Leigh v. Bureau of State Lottery,*
    876 F.2d 104, 1989 U.S. App. LEXIS 8525 (6th Cir. Jun. 13, 1989)...................16, 17

*Mast v. IMCO Recycling of Ohio, Inc.,*
    58 Fed. Appx. 116, 118 (6th Cir. Feb. 3, 2003).............................................9, 10

*Oncale v. Sundowner Offshore Services,*
    523 U.S. 75 (1998)...........................................................................................9, 10

*Payne v. O'Neil,*
    73 Fed. Appx. 144, 146 (6th Cir. Aug. 13, 2003) ...............................................5

*Peltier v. United States,*
    240 F. Supp.2d 725 (N.D. Ohio 2003) .................................................................14

# TABLE OF AUTHORITIES

*Phelps v. Yale Security, Inc.,*
    986 F.2d 1020 (6th Cir. 1993) ........................................................8, 9, 12

*Primes v. Reno,*
    190 F.3d 765 (6th Cir. 1999) .................................................................5

*Richmond-Hopes v. City of Cleveland,*
    1998 U.S. App. LEXIS 29572 (6th Cir. 1998) .................................9, 10

*Richmond v. Johnson,*
    1997 U.S. App. LEXIS 36574 (6th Cir. Dec. 18, 1997)..................9, 10, 12

*Roush v. Weastec, Inc.,*
    96 F.3d 840 (6th Cir. 1996) ...............................................................12

*Sain v. American Red Cross,*
    233 F. Supp.2d 923 (S.D. Ohio 2002) .............................................16, 17

*U.S. Airways, Inc. v. Barnett,*
    535 U.S. 391 (2002)............................................................................14

*Vulcu v. Trionix Research Laboratory, Inc.,*
    993 F. Supp. 623 (N.D. Ohio 1998)....................................................12

*Walk v. Rubbermaid, Inc.,*
    913 F. Supp. 1023 (N.D. Ohio 1994)....................................................9

*Wathen v. General Electric Co.,*
    115 F.3d 400 (6th Cir. 1997) .............................................................16

## STATE CASES

*Fyffe v. Jeno's, Inc.,*
    59 Ohio St. 3d 115 (1991)...................................................................15

## FEDERAL STATUTES

42 U.S.C. § 12102(2) ................................................................................12

42 U.S.C. 2000e-5(e)(1) ......................................................................16, 17

42 U.S.C. § 12117(a) ...........................................................................16, 17

42 U.S.C. § 2000e-5(f)(1) .........................................................................16

## TABLE OF AUTHORITIES

29 U.S.C. § 626(d) .................................................................................................................16, 17

29 U.S.C. § 631 ......................................................................................................................14

Fed. R. Civ. P. 56 .....................................................................................................................1

## STATE STATUTES

O.R.C. § 4123.35 ....................................................................................................................15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| SHARYL Y. CARTER, | ) | Case No. C3-03-205 |
| | ) | |
| Plaintiff, | ) | Judge Rice |
| | ) | Magistrate Judge Ovington |
| v. | ) | |
| | ) | |
| DELPHI AUTOMOTIVE | ) | |
| SYSTEMS LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT AND
MEMORANDUM IN SUPPORT

Defendants Delphi Automotive Systems LLC, Tom Munley, Mary Ann Polvinen, and

Jacquelyn Polk (collectively "defendants") respectfully request that summary judgment be

granted pursuant to Fed. R. Civ. P. 56 on all of plaintiff Sharyl Carter's claims against them. As

established below, plaintiff has never been terminated or demoted, has seen her hourly rate of

pay more than double, and has been offered and worked (and been paid for) thousands of hours

of overtime. She does not have a shred of evidence that defendants' treatment of her was in any

way motivated by her race, sex, age, or alleged disability. Her Complaint should be dismissed in

its entirety with prejudice.

I.      THE UNDISPUTED FACTS

Delphi offers employment opportunities "to qualified applicants and employees on an

equal basis regardless of an individual's age, race, color, sex, religion, national origin, disability,

or sexual orientation," and expressly prohibits discriminatory harassment. (Carter Dep. 11-12,

Ex. 1 at Doc. Nos. 15 and 29.)[1] Delphi policy directs employees to voice concerns to their

---

[1] The record referred to herein is attached, along with copies of all unreported cases cited.

immediate supervisor, to the plant personnel director or union representatives, or to use any other internal complaint procedure. (Id.)

### A.   Delphi's Overtime Procedure

The applicable national and local collective bargaining agreements govern overtime for hourly employees. (Carter Dep. 11-12, Ex. 1 at ¶¶ 38, 52-54; Ex. 2 at ¶ 38.) Pursuant to these agreements, bargaining unit employees are divided into equalization groups to equalize overtime opportunities. (Id., Ex. 1 at ¶ 38; Ex. 2 at ¶ 38.) Employees having the least amount of overtime hours offered in a given equalization group are eligible for the next overtime opportunity. (Id.) If the employee refuses the overtime offer, the offered overtime hours are added to the employee's equalization list total; an employee cannot refuse to work offered overtime hours and maintain her same place in the equalization group. (Id.) Employees are permitted to perform overtime job assignments other than their straight time job assignment. (Id.) An employee who is not eligible for a particular job assignment on straight time due to work restrictions, however, cannot perform a restricted job assignment on overtime; she is charged with available overtime hours as if the employee refused those hours. (Id.)

### B.   Plaintiff's Employment With Delphi

In March 1997, Delphi hired plaintiff, an African-American woman, at its Dryden Road facility. (Carter Dep. 7-8, 21.) Plaintiff is an hourly employee and member of the union bargaining unit; the terms and conditions of her employment are governed by local and national collective bargaining agreements. (Carter Dep. 11-13.) Plaintiff has never been demoted and her hourly rate of pay has never been reduced. (Carter Dep. 20.) Her starting hourly rate was $9.90, and currently is $19.95. (Carter Dep. 9-10; Munley Aff. ¶ 2.)

From 1997 through 2002, plaintiff worked as an assembler in Department 101 on second shift. (Carter Dep. 16-17, 19.) Department 101 included several "loops," or lines, each of which

was involved in a different step in the construction of automobile air compressors. (Carter Dep. 24-25.) Plaintiff was responsible for loading and unloading different loops during her regular shift. (Carter Dep. 24.)

C.    Plaintiff's Workers' Compensation Claim And Work Restrictions

In March 1998, plaintiff reportedly injured her back, neck, and right and left shoulder blades while working in initial assembly in Department 101. (Carter Dep. 21-22.) She stated that she "was pushing down, twisting and turning" and "pulled a muscle in [her] neck [and her] back area." (Carter Dep. 22.) She filed a workers' compensation claim, which is pending. (Carter Dep. 21-24.)

Beginning in 1998, Delphi honored medical restrictions generated by plaintiff's physicians. (Carter Dep. 101.) From June 3, 1998 through July 3, 1998 and November 18, 1998 through December 11, 1998, plaintiff was not permitted to lift more than 10 pounds. (Munley Aff. ¶ 3.) From February 1, 1999 through February 22, 1999, and again from March 12, 1999 through August 4, 1999, she was again restricted from lifting over 10 pounds. (Munley Aff. ¶ 3.) This 10-pound lifting restriction was reinstated for the period September 13, 1999 through December 13, 1999. (Munley Aff. ¶ 3.)

In December 1999, plaintiff underwent voluntary breast reduction surgery. (Carter Dep. 135-36.) She was on medical leave from December 15, 1999 until January 27, 2000. (Carter Dep. 136; Munley Aff. ¶ 4.) After returning to work, from January 27, 2000 until February 24, 2000, plaintiff was restricted from lifting more than five pounds. (Munley Aff. ¶ 4.)

In January 2001, plaintiff underwent another breast reduction surgery. (Carter Dep. 135-36.) This time, plaintiff was on medical leave from January 4, 2001 until February 12, 2001. (Carter Dep. 136; Munley Aff. ¶ 4.) After her return to work, from February 12, 2001 through March 9, 2001, plaintiff was prohibited from lifting more than five pounds. (Munley Aff. ¶ 4.)

D.      Plaintiff's Layoff From Delphi

On January 6, 2003, plaintiff, along with hundreds of other bargaining unit employees, was laid off from Delphi due to lack of work.  (Carter Dep. 8-9; Munley Aff. ¶ 5.)  She received unemployment compensation benefits.  (Carter Dep. 9.)

On September 29, 2003, Delphi recalled plaintiff from layoff pursuant to an arbitration award under the collective bargaining agreement.  (Carter Dep. 8-9; Munley Aff. ¶ 5.)  As part of the arbitration award, plaintiff received more than $41,000 in backpay.  (Munley Aff. ¶ 5.)  Since her recall from layoff until very recently, plaintiff has been part of a group of approximately 400 employees that performed no production work.  (Carter Dep. 8; Munley Aff. ¶ 5.)  In late April 2004, Delphi returned these employees to production work.  (Munley Aff. ¶ 5.)  Plaintiff is not challenging her layoff in this lawsuit.  (Carter Dep. 9.)  She concedes that she has not experienced any harassment or discrimination since returning to work.  (Carter Dep. 130.)

E.      Plaintiff's Claims

On August 15, 2002, plaintiff filed a discrimination charge with the Ohio Civil Rights Commission ("OCRC") and Equal Employment Opportunity Commission ("EEOC"), alleging that Delphi discriminated against her on the basis of her race and retaliated against her.  (Carter Dep. 144-45, Ex. 16.)  Plaintiff later asked to withdraw her charge, and, on March 11, 2003, the EEOC issued a Notice of Right to Sue.  (Carter Dep. 147-48, Exs. 17 and 18.)  On June 6, 2003, plaintiff filed her Complaint in this Court, alleging that defendants discriminated against her on the basis of her race, sex, disability, and age, and seeking damages for her alleged workplace injury.

II.     ARGUMENT

  A.     Plaintiff's Race Discrimination Claim Fails As A Matter Of Law.

      1.     Plaintiff Cannot Prove That She Was Subjected To Actionable Disparate
             Treatment.

To prove intentional discrimination, an employee must show (among other things) that she suffered a materially adverse employment action. Kocsis v. Multi-Care Management, 97 F.3d 876, 885 (6th Cir. 1996). The challenged employment action must involve "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." Id. at 886. As the Sixth Circuit explained, "[i]f every . . . action by an employer that makes an employee unhappy or resentful were considered an adverse action, Title VII would be triggered by supervisor criticism or even facial expressions indicating displeasure." Primes v. Reno, 190 F.3d 765, 767 (6th Cir. 1999). Without the threshold requirement of a materially adverse employment action, "[p]aranoia in the workplace would replace the prima facie case as the basis for a Title VII cause of action." Id. Thus, actions that do not result in a substantive change in employment do not constitute adverse employment actions and do not support a discrimination claim as a matter of law.[2]

Here, plaintiff cannot point to any termination, demotion or pay decrease that occurred during her Delphi employment. To the contrary, she has enjoyed significant wage gains and has

---

[2] See also Kinamore v. EPB Electric Utility, 2004 U.S. App. LEXIS 2271 at *11-12 (6th Cir. Feb. 9, 2004) (finding that supervisor's smoking and use of profanity and temporary job assignments did not amount to adverse employment actions because they did not affect the employee's "responsibilities, wages, title or benefits"; summary judgment for employer affirmed); Payne v. O'Neil, 73 Fed. Appx. 144, 146 (6th Cir. Aug. 13, 2003) (finding that redistribution of work and monitoring of employee time were not adverse employment actions because they did not result in "any substantive change" in employee's employment; summary judgment for employer affirmed); Broska v. Henderson, 70 Fed. Appx. 262, 267-68 (6th Cir. Jun. 30, 2003) (finding that increase in supervision and denial of overtime did not amount to adverse employment action as a matter of law; summary judgment for employer affirmed).

been provided substantial opportunities for overtime earnings. (Carter Dep. 9-10, 93; Munley Aff. ¶ 6.)

Plaintiff objects to the presence of her supervisors in her work area and their oversight of her work and her absences from the production line. (Carter Dep. 26-28.) She challenges (Carter Dep. 80-91) occasionally having to obtain permission to go to the restroom and having to wait on four occasions before being permitted to visit the plant medical department, though she was able to do so on numerous other occasions whenever she needed. (E.g., Carter Dep. 74, Ex. 6, 3/28/02 at p. 5; 206-08, Ex. 34, 3/14/01, 8/29/01, 8/31/01, 11/30/01; 204-05, Ex. 32, 1/8/99, 1/28/99, 1/29/99, 2/1/99, 3/11/99, 3/27/99, 5/11/99.) In our Circuit, however, such supervision and workplace monitoring do not constitute adverse employment actions as a matter of law. Payne, 73 Fed. Appx. at 146; Broska, 70 Fed. Appx. at 267.

Plaintiff likewise objects to her supervisors' decisions to assign her to what allegedly were two-person jobs on three of the hundreds of shifts she has worked, as well as to some of the job assignments that she received on overtime. (Carter Dep. 41-46, 49-50, 64-65, 111-12.) But she admits (Carter Dep. 47, 49-50, 64-65, 112) that she lost no pay as a result of these temporary job assignments, and, as to her overtime job assignments, cannot identify any jobs she believes were more favorable than the ones to which she was assigned. Such complaints about temporary work assignments fall far short of establishing a materially adverse employment action. Kinamore, 2004 U.S. App. LEXIS 2271 at *11-12.

Plaintiff also points to occasions on which her co-workers allegedly intentionally sent wrong parts through her line or jammed the line, causing her supervisors to ask her why the line was down. (Carter Dep. 65-72.) Such inquiries also do not rise to the level of a substantive change in plaintiff's employment. Payne, 73 Fed. Appx. at 146. Plaintiff's reliance (Carter Dep.

72-80) on three occasions when other employees bumped into her on the plant floor also is

misplaced: "Title VII was not meant to become a 'general civility code.'" Broska, 70 Fed. Appx.

at 269.

Finally, plaintiff's assertion (Carter Dep. 93) that she was denied overtime opportunities

similarly does not amount to an adverse employment action. She admits that she worked

substantial amounts of overtime (Carter Dep. 93), and, in fact, over the course of seven years,

worked more than 5,000 hours of overtime (Munley Aff. ¶ 6), notwithstanding a nine-month

layoff and nearly three months spent off work due to breast reduction surgeries. Moreover,

plaintiff turned down opportunities to work overtime and received more than $2,000 in pay

letters when contractual overtime equalization errors were made. (Carter Dep. 105, 200, Ex. 31,

8/19/98; Carter Dep. 74, Ex. 6, 8/6/02 at p. 2; 9/12/02; Munley Aff. ¶ 6.) Plaintiff's assertion that

she was discriminatorily denied overtime opportunities has no basis in fact and should be

rejected as a matter of law. Broska, 70 Fed. Appx. at 267-68 (affirming summary judgment for

employer because employee had "not presented evidence showing that he has been denied

overtime opportunities that others have received" and had "not even stated how much overtime

he lost").

Despite the lack of record evidence supporting a lost overtime claim, plaintiff nonetheless

asserts (Carter Dep. 97) that three white co-workers (Mike Risley, Mary Bonham, and Paul

Vickers) worked more overtime than she did. But she would need first to prove that Risley,

Bonham, and Vickers were "nearly identical" to her in all "relevant" aspects. Ercegovich v.

Goodyear Tire & Rubber Co., 154 F.3d 344, 350 (6th Cir. 1998). Plaintiff has no such evidence.

Though she has had numerous medical restrictions during her tenure with Delphi that had

an impact on Delphi's overtime obligations under the collective bargaining agreement, plaintiff

has no evidence that Risley, Bonham, and Vickers were "nearly identical" to her in this respect. In fact, Mr. Vickers has never been subject to medical restrictions, Mr. Risley was subject to a medical restriction for just 32 days in 1997, and Ms. Bonham was restricted for just five days in June 2002. (Munley Aff. ¶ 7.) Similarly, though plaintiff at times turned down overtime opportunities, she cannot speak to whether or how often Risley, Bonham, and Vickers may or may not have done so. And, while plaintiff spent nearly three months on medical leaves during late 1999, 2000, and 2001 for her breast reduction surgeries and was not available to work overtime, she has no evidence of Risley's, Bonham's, and Vickers' availability to work. On this point, the evidence once again shows that Risley has never taken medical leave, Vickers took just one leave which lasted ten days, and Bonham took a one-month medical leave in 2002. (Munley Aff. ¶ 7.) As a result, plaintiff's unsupported belief that she was disadvantaged with respect to overtime opportunities comes nowhere close to proving that she suffered an adverse employment action.

Even if plaintiff could show that she suffered an adverse employment action, she has no evidence that those actions were the result of intentional race discrimination. She admits (Carter Dep. 99), for instance, that supervisor Kim Cornele told plaintiff that she did not always receive overtime offers because of plaintiff's medical restriction. As for being assigned to alleged two-man jobs, plaintiff did not ask her supervisors why she received those assignments and merely assumed that they did so to "set [her] up." (Carter Dep. 43-44.) As for plaintiff's assertion that her supervisors monitored her job performance, the evidence shows, not surprisingly, that monitoring hourly employees' job performance was one of the job responsibilities of Delphi's supervisors. (Munley Aff. ¶ 9.) Plaintiff comes nowhere close to establishing that, but for her race, the actions she challenges would not have occurred. E.g., Phelps v. Yale Security, Inc., 986

F.2d 1020, 1026 (6th Cir. 1993) (rejecting discrimination claims as a matter of law where

employee could not show that, but for protected characteristic, alleged discriminatory action

would not have been taken). Her claim fails for this reason as well.

> **2.    Plaintiff Cannot Prove That She Was Subjected To An Actionable Hostile Work Environment.**

Actionable workplace harassment must occur "because of" the alleged victim's protected

status. <u>Oncale v. Sundowner Offshore Services</u>, 523 U.S. 75, 81 (1998). Allegedly offensive

conduct prompted by factors other than the victim's protected status does not establish unlawful

harassment.[3] Even if harassing behavior is based on a protected status, it is actionable only if it

is "so severe or pervasive as to alter the conditions of [the plaintiff's] employment and create an

abusive working environment." <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 786 (1998).

"[C]onduct must be extreme to amount to a change in the terms and conditions of employment."

<u>Id.</u> at 788.

The Sixth Circuit explains that a difference exists between "cognizable harassment and

mere annoyance." <u>Broska</u>, 70 Fed. Appx. at 269. "Minor irritations do not amount to severe or

pervasive harassment." <u>Id.</u> A "mere unfriendly work environment is insufficient to establish

liability." <u>Mast v. IMCO Recycling of Ohio, Inc.</u>, 58 Fed. Appx. 116, 118 (6th Cir. Feb. 3, 2003).

For these reasons, courts reject hostile environment claims based on supervisors "staring" at

---

[3] <u>Richmond-Hopes v. City of Cleveland</u>, 1998 U.S. App. LEXIS 29572 at *12-13 (6th Cir. 1998) (affirming judgment as a matter of law for employer where plaintiff was unsure whether sexually suggestive comment and gesture were intended as sexual invitation or as "a vulgar way of telling her that [the alleged harasser] intended to ignore her complaint regarding overtime"); <u>Walk v. Rubbermaid, Inc.</u>, 913 F. Supp. 1023, 1029 (N.D. Ohio 1994) (finding no actionable hostile environment where alleged mistreatment was offensive to both protected and non-protected employees), <u>aff'd without op.</u>, 76 F.3d 380 (6th Cir. 1996). In addition, the Sixth Circuit has long held that isolated, ambiguous, or stray remarks do not support inferences of discrimination. E.g., <u>Richmond v. Johnson</u>, 1997 U.S. App. LEXIS 36574 at *6-7 (6th Cir. Dec. 18, 1997) (finding "What? Are you pregnant?" comment "too abstract, . . . irrelevant and prejudicial" to support finding of gender discrimination); <u>Phelps v. Yale Sec., Inc.</u>, 986 F.2d 1020, 1026 (6th Cir.) (holding that "isolated and ambiguous comments are too abstract, in addition to being irrelevant and prejudicial, to support a finding of . . . discrimination") (internal quotes and citations omitted), <u>cert. denied</u>, 510 U.S. 861 (1993); <u>Griffin v. Ambika Corp.</u>, 103 F. Supp.2d 297, 314 (S.D.N.Y. 2000) (finding use of phrase "you people" insufficient to prove hostile work environment; summary judgment granted for employer).

employees and being in employees' work spaces.  E.g., id. at 122-23 (stating that "[s]taring at

someone, without more, is not generally sufficient to create a hostile work environment";

affirming summary judgment for employer); Broska, 70 Fed. Appx. at 269 (rejecting as a matter

of law claim that continual supervisor monitoring and workplace criticism amounted to severe

and pervasive harassment).

        In our case, the asserted harassment was not based on plaintiff's race.  Plaintiff identifies

(Carter Dep. 39-40) just one allegedly race-based comment:  Kim Cornele's one-time use of the

phrase "you people" to refer to plaintiff and the two other employees (who happen to be African

American) working with plaintiff on the line.  The single use of this race-neutral phrase is not

enough to support plaintiff's claim that her work environment conditions were a result of her

race.  E.g., Richmond, 1997 U.S. App. LEXIS 36574 at *6-7; Griffin, 103 F. Supp.2d at 314.

Moreover, plaintiff admits (Carter Dep. 89-90) that other African-American employees in her

department did not experience the same alleged acts of harassment that she claims to have

suffered.  For instance, though plaintiff asserts that she was required to obtain permission before

leaving the production line to go to the restroom (Carter Dep. 87-88), she admits (Carter Dep.

89-90) that her African-American co-workers, Dionne Perry and Valerie Gathers, did not do so.

Plaintiff cannot establish that her work environment was racially hostile, and her claim fails at

the outset.  Oncale, 523 U.S. at 81; Richmond-Hopes, 1998 U.S. App. LEXIS 29572 at *12-13.

        In addition, there is no evidence that the alleged harassment was severe or pervasive.

Rather, plaintiff challenges a series of events -- supervisor "monitoring," temporary job

assignments, one-time comments, and workplace clumsiness -- that at most amount to

"annoyances" and "minor irritations."  These actions simply do not support a hostile work

environment claim under Title VII.  Broska, 70 Fed. Appx. at 269; Mast, 58 Fed. Appx. at 118.

### 3.   Defendants Took Reasonable Steps To Address Plaintiff's Complaints.

Moreover, defendants took reasonable steps to prevent and correct promptly the alleged

harassment.  In August 2002, plaintiff asked Mary Ann Polvinen, labor relations representative,

for copies of her grievances, personnel file and medical file and said that her supervisors were

harassing her and discriminating against her.  (Carter Dep. 74, 155, 161-62, Ex. 6, 8/12/02 at p.

4.)  In response, Ms. Polvinen and one of plaintiff's supervisors, Rob Flinch, provided plaintiff

with information concerning her grievances and directed her to contact her union representative

for additional information.  (Carter Dep. 74, 160-62, Ex. 6, 8/12/02 at p. 4, 8/21/02 at pp. 1-3.)

Ms. Polvinen also arranged for plaintiff to obtain a copy of her medical file, and, in response to

plaintiff's complaint that some of her job assignments caused her pain, advised plaintiff again to

obtain medical restrictions.  (Carter Dep. 16, 74, Ex. 6, 8/28/02 at p. 4.)  Finally, Ms. Polvinen

allegedly asked plaintiff to prepare a written statement regarding her complaints before

reviewing her personnel file, but plaintiff refused to do so.  (Carter Dep. 157-58.)

Tom Munley, personnel director at the Dryden Road facility, Jacquelyn Polk, divisional

director of human resources, and Marci Gagliardo, divisional human resources representative,

spoke with plaintiff and investigated her complaints.  (Carter Dep. 74, 165-72, Ex. 6, 8/28/02 at

pp. 2-3.)  Though Delphi was unable to confirm plaintiff's generalized assertion of harassment

and discrimination, it assured plaintiff that her supervisors had been reminded of Delphi's

commitment to a discrimination- and harassment-free work environment and that plaintiff should

bring any additional concerns to the company's attention so they could be investigated.  (Carter

Dep. 172-73, Ex. 22.)  Defendants' prompt and appropriate response to plaintiff's complaints,

notwithstanding her refusal to provide a written statement of her complaints, provides another

basis for dismissing her claim of a racially hostile work environment.  Faragher, 524 U.S. at 807-

08.

B.   Plaintiff's Sex Discrimination Claim Fails As A Matter Of Law.

Plaintiff's sex discrimination claim fails for the same reasons her race discrimination

claim is legally invalid. She cannot point to any materially adverse employment action, and she

cannot prove intentional discrimination. Indeed, plaintiff offers even less to support a sex

discrimination claim. She admits (Carter Dep. 97) that one of the individuals who allegedly

received more favorable overtime treatment was a woman, Mary Bonham. Moreover, the only

alleged sex-based comment to which plaintiff points (Carter Dep. 131) is supervisor Mike Mott's

comment on one occasion that plaintiff "smelled good." This statement -- facially neutral, and

which some would interpret as a compliment -- does nothing to further plaintiff's claim of sex

discrimination. Richmond, 1997 U.S. App. LEXIS 36574 at *6-7. She comes nowhere close to

establishing that, but for her sex, the alleged discriminatory actions would not have occurred.

Phelps, 986 F.2d at 1023.

C.   Plaintiff's Disability Discrimination Claim Fails As A Matter Of Law.

Plaintiff had to prove that she has a disability and "was either denied a reasonable

accommodation for her disability or was subject to an adverse employment decision that was

made solely because of her disability." Roush v. Weastec, Inc., 96 F.3d 840, 843 (6th Cir. 1996).

The ADA defines "disability" as "a physical or mental impairment that substantially limits one or

more of the major life activities of such individual." 42 U.S.C. § 12102(2)(A). Temporary

impairments or "[i]mpairments that result in only minor limitations are not disabilities." Vulcu

v. Trionix Research Laboratory, Inc., 993 F. Supp. 623, 627 (N.D. Ohio 1998). Back injuries

typically do not qualify as disabilities. Id. (finding that back injury that limited ability to "carry

groceries, mow . . . lawn and wash . . . dog" did not qualify as disability).

In addition, if an employee requires a reasonable accommodation of a disability, "it is the

responsibility of the individual with a disability to inform the employer that an accommodation is

needed." Gantt v. Wilson Sporting Goods Co., 143 F.3d 1042, 1046 (6th Cir. 1998) (citation omitted). An "employer is not required to speculate as to the extent of the employee's disability or the employee's need or desire for accommodation." Id. Courts routinely grant summary judgment to employers when employees do not request accommodation of alleged disabilities that would enable them to perform their jobs. E.g., Crocker v. Runyon, 207 F.3d 314, 319-20 (6th Cir. 2000) (holding that, "since [the employee] did not suggest until trial that he needed an accommodation, the [employer] had no legal duty to provide him one"; summary judgment affirmed for employer); Gantt, 143 F.3d at 1047 (holding that employee "failed to create an issue of fact as to whether or not the Company failed to reasonably accommodate her"). Here, plaintiff's own testimony precludes her from maintaining this claim.

First, plaintiff is not disabled under the ADA. She admits that her back condition did not prohibit her from performing her job duties at Delphi. (Carter Dep. 132, 134-135.) Indeed, plaintiff worked over 5,000 hours of overtime from March 1997 until January 2003. (Munley Aff. ¶ 6.) Moreover, at most plaintiff's back condition temporarily interfered with her everyday activities for periods of time ranging from minutes to half an hour to an hour. (Carter Dep. 134.) This condition did not rise to the level of a disability under the ADA as a matter of law, and thus plaintiff's claim does not get to square one.

In addition, Delphi granted every accommodation plaintiff requested. She admits that she was granted lifting restrictions on "different occasions" during her employment. (Carter Dep. 101.) While plaintiff asserts that her supervisors refused her requests to be accommodated by being given light duty jobs when she "was hurting" (Carter Dep. 133), she does not know whether she had any medical restrictions in place on those occasions. Indeed, when Ms. Polvinen suggested, in response to plaintiff's complaint that certain job assignments caused her

pain, that plaintiff renew her medical restrictions, plaintiff decided not do so because she did not want to miss out on any overtime opportunities. (Carter Dep. 74, Ex. 6, 8/28/02 at p. 4.) Where, as here, a plaintiff refuses to take necessary steps to obtain the accommodations she allegedly needed, defendants are not liable. Gantt, 143 F.3d at 1047.

Finally, Delphi took no adverse employment action against plaintiff as a result of her alleged disability. As discussed, the actions about which plaintiff complains do not rise to the level of an adverse employment action. To the extent plaintiff asserts that Delphi discriminated against her by refusing to offer overtime due to her medical restrictions, that contention fails for the additional reason that the law does not require employers to violate rights of other employees to accommodate an allegedly disabled individual. U.S. Airways, Inc. v. Barnett, 535 U.S. 391, 394 (2002) (holding that accommodations that conflict with rules of seniority under collective bargaining agreements are not reasonable); Peltier v. United States, 240 F. Supp.2d 725, 730 (N.D. Ohio 2003) (holding that employers are not required to violate rights of other employees under collective bargaining agreement to accommodate disabled individual; summary judgment granted for employer). To the extent Delphi denied plaintiff overtime opportunities due to her medical restrictions (an assertion belied by the significant amount of overtime plaintiff worked during her Delphi employment), Delphi was within its rights to do so, and plaintiff has no evidence that Delphi was in any way unlawfully motivated by plaintiff's physical condition.

D.    Plaintiff's Age Discrimination Claim Fails As A Matter Of Law.

Plaintiff also claims that defendants discriminated against her on the basis of her age. However, the Age Discrimination in Employment Act extends only to "individuals who are at least 40 years of age." 29 U.S.C. § 631. At the time of her deposition in this case, plaintiff was 39 years old. (Carter Dep. 7.) As a result, plaintiff did not fall within the group of individuals the Act was intended to protect, and her claim must be dismissed.

E.   Plaintiff's Claim For Compensation For Workplace Injuries Is Barred By Ohio's Workers' Compensation Act.

Under Ohio law, employers complying with Ohio's Workers' Compensation statute, O.R.C. § 4123.35, "shall not be liable to respond in damages at common law or by statute for any injury . . . . received or contracted by any employee in the course of or arising out of [her] employment . . . . " O.R.C. § 4123.74. Employees can sue for workplace injuries outside the workers' compensation system only if they prove

> (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task.

Fyffe v. Jeno's, Inc., 59 Ohio St. 3d 115, syllabus ¶ 1 (1991). "[M]ere knowledge and appreciation of a risk" falls far short of the "substantial certainty" requirement. Id. at syllabus ¶ 2.

Plaintiff asserts that her alleged injury occurred as she was performing her job duties in Department 101. (Carter Dep. 22.) She states that she "pulled a muscle in [her] neck, [her] back area" while "pushing down, twisting and turning" compressor components. (Carter Dep. 22.) This alleged injury is within the scope of workplace injuries covered by Ohio's statutory bar for workplace injuries. O.R.C. § 4123.74.

Moreover, plaintiff has no evidence that her injury resulted from a process or procedure "substantially certain" to cause this injury. Fyffe, 59 Ohio St. 3d at syllabus ¶ 1. She cannot recover for her back condition in this lawsuit and must recover, if at all, through her pending workers' compensation claim.

F.     <u>Plaintiff's Claims Fail As A Matter Of Law for Procedural Reasons.</u>

       1.     <u>Plaintiff's Claims Against The Individual Defendants Are Legally Impermissible Under Title VII, The ADA and The ADEA.</u>

Plaintiff asserts that the individual defendants in this case (Tom Munley, Mary Ann Polvinen, and Jacquelyn Polk) are liable because she complained to them about alleged harassment and discrimination but nothing (allegedly) was done. (Carter Dep. 175-76.) The law is clear, however, that individuals may not be held liable for alleged violations of Title VII, the ADEA or the ADA. <u>Wathen v. General Electric Co.</u>, 115 F.3d 400, 404-05 n.6 (6th Cir. 1997) (rejecting as a matter of law claims against individual supervisors under Title VII, the ADEA and ADA). Notwithstanding the merits (or lack thereof) of plaintiff's claims, they indisputably fail under this settled principle.

       2.     <u>Plaintiff's Age, Sex, And Disability Discrimination Claims Fail As A Matter Of Law Because She Did Not Satisfy The Procedural Prerequisites For Filing A Civil Lawsuit.</u>

Plaintiff's claims of age, sex and disability discrimination must be dismissed for the additional reason that she failed to file an administrative charge of discrimination on these bases before filing her civil lawsuit. Title VII, the ADA and the ADEA all require employees to file administrative charges of discrimination with the EEOC or a state agency before seeking relief in court. 29 U.S.C. § 626(d); 42 U.S.C. § 2000e-5(f)(1); 42 U.S.C. § 12117(a). Quite simply, "[i]f a claimant does not first present a claim to the EEOC, that claim may not be brought before federal courts." <u>Sain v. American Red Cross</u>, 233 F. Supp.2d 923, 929 (S.D. Ohio 2002). Courts routinely dismiss discrimination claims that exceed the scope of allegations of discrimination in the administrative charge. <u>E.g.</u>, <u>Leigh v. Bureau of State Lottery</u>, 876 F.2d 104, 1989 U.S. App. LEXIS 8525 at *8-9 (6th Cir. Jun. 13, 1989) (dismissing sex discrimination claim because EEOC charge alleged only race discrimination); <u>EEOC v. Bailey Co.</u>, 563 F.2d 439, 448 (6th Cir. 1977) (dismissing religious discrimination claim because EEOC charge alleged only race and sex

discrimination); <u>Sain</u>, 233 F. Supp.2d at 930-931 (dismissing sex discrimination claim because EEOC charge made "no mention of sex discrimination" and box for claimed discrimination on the basis of sex was not marked).

Here, plaintiff's charge alleged discrimination based on race and retaliation only. (Carter Dep. 144, Ex. 16.) Moreover, her charge allegations mention only her status as an African American and her supervisors' status as Caucasians, and state explicitly that she believes she has been "unlawfully discriminated and retaliated against because of [her] race . . . ." (<u>Id.</u>) Nowhere does plaintiff refer to her sex, her age, or alleged disability, even though the charge form clearly gave her the opportunity to do so. Plaintiff admits that she did not file any further charges with the EEOC or OCRC. (Carter Dep. 151.) As a result, her claims for age, sex, and disability discrimination are barred as a matter of law. <u>E.g.</u>, <u>Leigh</u>, 1989 U.S. App. LEXIS 8525 at *5; <u>Sain</u>, 233 F. Supp.2d at 930-31.

    3.    <u>Certain Of Plaintiff's Claims Are Time-Barred.</u>

Finally, to the extent plaintiff challenges actions occurring more than 300 days before she filed her administrative charge, those claims are likewise barred. Title VII, the ADA and the ADEA all require that charges of discrimination be filed within 300 days of the alleged discriminatory events. 29 U.S.C. § 626(d); 42 U.S.C. § 2000e-5(e)(1); 42 U.S.C. § 12117(a). Alleged discriminatory events occurring beyond that date are time-barred.

Here, plaintiff filed her administrative charge on August 15, 2002. (Carter Dep. 144-45, Ex. 16.) As a result, only those alleged discriminatory acts occurring on or after October 19, 2001 (300 days before plaintiff filed her charge) are timely. Plaintiff thus cannot challenge alleged discriminatory failures to offer her overtime before October 19, 2001 or any alleged act of harassment that occurred before that date. To the extent she purports to do so, her claims should be dismissed.

III.     CONCLUSION

For the foregoing reasons, defendants respectfully request that plaintiff's claims against

them be dismissed with prejudice.

Respectfully submitted,


s/Lori A. Clary (0066388)
Robert S. Walker (0005840)
  rswalker@jonesday.com
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212

Lori A. Clary (0066388)
  laclary@jonesday.com
JONES DAY
41 South High Street
Suite 1900
Columbus, Ohio 43215
Telephone:  (614) 469-3939
Facsimile:  (614) 461-4198

Trial Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that, on June 3, 2004, I electronically filed the foregoing with the Clerk

of Court using the CM/ECF system, which will send notification of such filing to the following:

George A. Katchmer, Esq., 17 South St. Clair Street, Suite 320, P.O. Box 4235, Dayton, Ohio

45401-4235, E-Mail: gkatchmer@daytondefenselawyers.com.

s/Lori A. Clary (0066388)
Lori A. Clary (0066388)
laclary@jonesday.com
JONES DAY
41 South High Street
Suite 1900
Columbus, Ohio 43215
Telephone: (614) 469-3939
Facsimile: (614) 461-4198

One of the Trial Attorneys for Defendants

# **<u>EXHIBIT B</u>**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

SHARYL YVETTE CARTER,

     Plaintiff,                  :

                                    Case No. 3:03cv205

                              JUDGE WALTER HERBERT RICE

          vs.               :

DELPHI HARRISON THERMAL
SYSTEMS, *et al.*,

     Defendants.         :

---

DECISION AND ENTRY SUSTAINING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT (DOC. #29); JUDGMENT TO BE ENTERED ON
BEHALF OF DEFENDANTS AND AGAINST THE PLAINTIFF;
TERMINATION ENTRY

---

Plaintiff Sharyl Carter filed the instant complaint alleging that her employer,

Defendant Delphi Harrison Thermal Systems[1] ("Delphi"), discriminated against her

on the basis of her race, gender, age and disability.[2] Doc. #1. Carter is also seeking

to recover damages for an injury she suffered while at work. Id. The Defendants

---

[1]Referred to by the Defendants as Delphi Automotive Systems LLC.

[2]Also named as Defendants are Tom Munley, Mary Ann Polvinn and Jackie
Polk. Carter does not say, in her complaint, who these individuals are or in what
capacity they are being sued. However, from her deposition testimony, it appears
that they are people to whom she complained about conditions on her job, and
they are being sued for failing to respond appropriately. Doc. #29, Att. #1, Carter
Dep. at 175-76.

Case 3:03-cv-00203-WHR-SLO   Document 38   Filed 03/28/05   Page 2 of 20

have filed a Motion for Summary Judgment. Doc. #29. For the reasons stated

herein, that motion is SUSTAINED.


I.    FACTUAL BACKGROUND

Carter, an African-American woman, began working for Delphi on March 13,

1997, at its Dryden Road facility. Doc. #29, Att. #1, Carter Dep. at 7-8, 21. She is

a member of the union, and the terms and conditions of her employment are

governed by local and national collective bargaining agreements. Id. at 11-13. She

worked, from 1997 through 2002, as an assembler in Department 101 on the

second shift. Id. 16-17, 19. Department 101 includes several "loops," or lines,

each involved in a different step in the construction of automobile compressors. Id.

at 24-25. During this time, Carter's primary job responsibility was to load and

unload different loops. Id. at 24.

In 1998, Carter injured her back, neck and both shoulder blades while

working. Doc. #29, Att. #1, Carter Dep. at 21-22. She filed a worker's

compensation claim following the injury. Id. at 21-24. As a result of this injury her

ability to work was medically restricted. Id. at 101; Doc. #29, Att. #4, Munley Aff.

¶ 3. In 1999, and again in 2001, Carter underwent voluntary breast reduction

surgery. Doc. #29, Att. #1, Carter Dep. at 135-36. She was on medical leave

following both of her surgeries, and her work was medically restricted following her

return to work. Id. at 136; Doc. #29, Att. #4, Munley Aff. ¶ 4.

2

Case 9:03-cv-09203-WFK-SLG Document 58 Filed 03/26/05 Page 3 of 20

On January 6, 2003, Carter, along with a large number of her co-workers, was laid-off from Delphi. Doc. #29, Att. #1, Carter Dep.; Doc. #29, Att. #4, Munley Aff. ¶ 5. Nearly nine months later, on September 29, 2003, she (along with the other laid-off employees) was recalled to work. Id. All of Carter's claims relate to the period before her layoff. Doc. #29, Att. #1, Carter Dep. at 130. In fact, Carter alleges that the discrimination and harassment began almost immediately following her hire. Doc. #40, Carter Aff. ¶ 3.[3]

Carter alleges that she was, because of her race, excessively and intrusively monitored and harrased at her work station by supervisors and investigators (Carter Aff. ¶¶ 5 and 6), denied the opportunity to seek medical attention where others were not (Id. ¶ 10), refused permission to take a restroom break until she found someone to replace her on the line (Id. ¶ 9), placed last for jobs (Id. ¶ 13), sabotaged in her work by other employees (Id. ¶ 7), bumped into on several occasions by supervisors and another employee (Id. ¶ 8), and denied overtime (Id. ¶ 3). All of these events occurred between July 29, 1997, and December, 2002.

---

[3]Defendants move to strike Carter's Affidavit (structured as a request that the Affidavit be disregarded) because it fails to comply with the Fed. R. Civ. P. 56 requirement that facts sworn to by affidavit be based on personal knowledge, because it seeks to admit into evidence inadmissible hearsay, contains conclusory allegations that do not constitute admissible evidence (and thus violates Fed. R. Civ. P. 56), contains references to the record too broad to support her motion for summary judgment, and contradicts, in part, her earlier deposition testimony. Doc. #42 at 1-5. While many of the Defendants arguments are well taken, it is not necessary to strike the affidavit because the flawed "evidence" pointed to by them is not relevant to the Court's ruling on the pending motion.

Doc. #40, Carter Aff. In addition, Carter alleges that on one occasion, Kim

Cornelle, a manager at Delphi, used the phrase "you people," while speaking to her

and two other African-American workers.[4] Doc. #29, Att. #1, Carter Dep. at 39-

40.

On August 15, 2002, Carter filed a discrimination charge with the Ohio Civil

Rights Commission ("OCRC") and the Equal Employment Opportunity Commission

("EEOC"), alleging that Delphi discriminated against her because of her race, and

retaliated against her. Doc. #29, Att. #1, Carter Dep. at 144-45, Ex. 16. She later

withdrew her charges, and, on March 11, 2003, was issued a Notice of Right to

Sue by the EEOC. Id. at 147-48, Exs. 17 and 18. On June 6, 2003, Carter filed

the instant Complaint in this Court, alleging that defendants discriminated against

her on the basis of her race, sex, disability and age, and seeking damages for her

work related injury.[5] Doc. #1. Defendants have filed a Motion for Summary

Judgment. Doc. #29.


II.   STANDARDS GOVERNING A MOTION FOR SUMMARY JUDGMENT

Summary judgment must be entered "against a party who fails to make a

---

[4]Carter points to no evidence indicating when this occurred.

[5]Carter has not made it clear whether she is bringing her claims pursuant to
federal law, state law or both. However, the same analysis applies to claims
brought under Title VII, the ADEA and also to claims under Ohio state law. See,
Mitchell v. Toledo Hosp., 964 F.2d 577, 582 (6th Cir. 1992); see also, In re
Brantley, 34 Ohio App.3d 320, 518 N.E.2d 602 (1987).

Case 9:03-cv-00203-WHR-SLO  Document 88  Filed 03/26/05  Page 8 of 20

showing sufficient to establish the existence of an element essential to that party's
case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp.</u>
<u>v. Catrett</u>, 477 U.S. 317, 322 (1986). The moving party:

> always bears the initial responsibility of informing the district court of
> the basis for its motion, and identifying those portions of "the
> pleadings, depositions, answers to interrogatories, and admissions on
> file, together with the affidavits, if any," which it believes
> demonstrate the absence of a genuine issue of material fact.

<u>Id.</u> at 323; <u>see also</u> <u>Boretti v. Wiscomb</u>, 930 F.2d 1150, 1156 (6th Cir. 1991).

"Once the moving party has met its initial burden, the nonmoving party must

present evidence that creates a genuine issue of material fact making it necessary

to resolve the difference at trial." <u>Talley v. Bravo Pitino Restaurant, Ltd.</u>, 61 F.3d

1241, 1245 (6th Cir. 1995); <u>see also</u>, <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S.

242, 250 (1986). Once the burden of production has so shifted, the party

opposing summary judgment cannot rest on its pleadings or merely reassert its

previous allegations, it is not sufficient to "simply show that there is some

metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co. v. Zenith</u>

<u>Radio Corp.</u>, 475 U.S. 574, 586 (1986). Rule 56(e) "requires the nonmoving party

to go beyond the [unverified] pleadings" and present some type of evidentiary

material in support of its position. <u>Celotex Corp.</u>, 477 U.S. at 324. "The plaintiff

must present more than a scintilla of evidence in support of his position; the

evidence must be such that a jury could reasonably find for the plaintiff." <u>Michigan</u>

<u>Protection and Advocacy Serv., Inc. v. Babin</u>, 18 F.3d 337, 341 (6th Cir. 1994).

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment shall be denied "[i]f there are … 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" Hancock v. Dodson, 958 F.2d 1367, 1374 (6th Cir. 1992) (citation omitted). In determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. Anderson, 477 U.S. at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the fact-finder. 10A Wright, Miller & Kane, Federal Practice and Procedure, § 2726.

In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not … obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989), cert. denied, 494 U.S. 1091 (1990); see also L.S. Heath & Son, Inc. v. AT&T Information Sys., Inc., 9 F.3d 561 (7th Cir. 1993); Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915 n.7 (5th Cir.), cert. denied, 506

6

U.S. 832 (1992) ("Rule 56 does not impose upon the district court a duty to sift

through the record in search of evidence to support a party's opposition to

summary judgment …").  Thus, a court is entitled to rely, in determining whether a

genuine issue of material fact exists on a particular issue, only upon those portions

of the verified pleadings, depositions, answers to interrogatories and admissions on

file, together with any affidavits submitted, specifically called to its attention by

the parties.


III.    ANALYSIS

The Defendants argue that all of Carter's claims fail, as a matter of law,

because she has failed to raise a genuine issue of material fact on essential

elements for which she will bear the burden of proof at trial. They also argue that a

number of her claims fail for procedural reasons. For analytical purposes, the Court

will first address the Defendants' procedural arguments and then their substantive

arguments.


A. Defendants' Procedural Arguments

1.    Plaintiff's Claims Against the Individual Defendants

Carter attempts to hold Defendants Munley, Polvinn and Polk personally

liable because of their alleged failure to adequately respond to her complaints of

harassment and discrimination. Doc. #29, Att. #1, Carter Dep. at 175-76. Under

federal law, an individual employee or supervisor may not be held personally liable

for the workplace discrimination and harassment, whether the harassing behavior is

their own or others. <u>Wathen v. General Elec. Co.</u>, 115 F.3d 400 (6th Cir. 1997).[6]

Consequently, Defendants' Motion for Summary Judgment on behalf of

Defendants Munley, Polvinn and Polk is SUSTAINED.


    2.    Plaintiff's Claims of Age, Sex and Disability Discrimination

    In order to maintain her claims under Title VII, the Americans with

Disabilities Act and the Age Discrimination in Employment Act, Carter must

demonstrate that she first filed administrative charges of discrimination. <u>See</u>, <u>Ang</u>

<u>v. Procter & Gamble Co.</u>, 932 F.2d 540, 545 (6th Cir.1991). Carter's allegations

to the EEOC alleged only discrimination based on race. Carter Dep. 144, Ex. 16.

Consequently, her claims of age, gender and disability discrimination are barred as

a matter of law, and the Defendants' Motion for Summary Judgment as to her

claims of age, gender and disability discrimination is SUSTAINED. Only her claims

---

    [6]However, under Ohio state law, individual supervisors or managers may be held personally liable for their own harassing conduct. <u>Genaro v. Cent. Transport, Inc.</u>, 84 Ohio St.3d 293, 703 N.E.2d 782 (1999). Because Carter's allegations against the individually named Defendants is for their alleged failure to respond to her complaints about harassment, because she has introduced no evidence that would indicate that any of them took part in any of the allegedly harassing acts, and because she has introduced no evidence that would indicate that they are her supervisors or managers, her claims against them fail as a matter of both state and federal law.

of race discrimination under Title VII remain.[7]

3.    Portions of Plaintiff's Claims Are Time-Barred

The Defendants, in their final procedural challenge, argue that many of the

incidents complained of by Carter are time-barred. Title VII requires that charges of

discrimination be filed within 300 days of the alleged discriminatory act. 42 U.S.C.

§ 2000e-5(e)(1). Carter argues that all of her claims represent a continuing

violation and therefore the statute of limitations does not apply. To the extent that

she refers to events that occurred more than 300 days before she filed her EEOC

charge, those acts are not independently actionable. National R.R. Passenger Corp.

v. Morgan, 536 U.S. 101, 115, 122 S.Ct. 2061(2002). However, she may refer to

those acts to support her hostile work environment claim and as background

evidence to support those individual claims that occurred within the statute of

limitations. Id. at 113, 118.[8]  Carter filed her administrative charge on August 15,

_____

[7]In addition Carter has admitted that she is 39 years of age. Doc. #40 at 11.
Consequently, she is not among the protected class the act was intended to
protect, and her claims of age discrimination fail for that reason, as well. See, 29
U.S.C. § 631.

[8]She is incorrect in relying on the "continuing violation" doctrine, however.
According to that doctrine, a discrete act remains actionable past the time it would
normally be barred by the statute of limitations, if it is part of a series of continuing
or serial violations, at least one of which occurred within the period of the statute
of limitations. The Supreme Court specifically addressed the doctrine in Morgan
and held it to be unavailing. National R.R. Passenger Corp. v. Morgan, 536 U.S.
101, 115, 122 S.Ct. 2061(2002). In that case, the plaintiff alleged several
discrete discriminatory and retaliatory acts, some of which occurred within 300

2002 . Doc. #29, Att. #1, Carter Dep. at 144-45, Ex. 16. Consequently, only

those acts that occurred after October 19, 2001, are individually actionable.


B. <u>Substantive Arguments</u>

1.    Individual Discriminatory Acts

In <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 93 S.Ct. 1817,

(1973), the Supreme Court set forth a systematic paradigm for courts to analyze

claims of discrimination brought pursuant to Title VII. In lieu of direct evidence of

discrimination, which she has not adduced, the <u>McDonnell Douglas</u> framework

requires the plaintiff to establish a prima facie claim of discrimination at the outset.

<u>See</u> <u>id.</u> at 802.  "The burden then must shift to the employer to articulate some

legitimate, nondiscriminatory reason" for the alleged discriminatory action. <u>Id.</u>  "If

the employer carries this burden, the plaintiff must then prove by a preponderance

of the evidence that the reasons offered by the employer were a pretext for

discrimination.  The ultimate burden of persuasion remains at all times with the

plaintiff."  <u>Newman v. Federal Exp. Corp.</u>, 266 F.3d 401, 405 (6th Cir. 2001)

(citations and internal quotations omitted).

To establish a prima facie claim of discrimination, a plaintiff must show that

she (1) is a member of a protected class, (2) was qualified for her position (3)

---

days of the time he filed his EEOC complaint, and some of which occurred prior to
that time period. <u>Id.</u> at 106. The Supreme Court held that only incidents that took
place within the timely filing period were actionable. <u>Id.</u> at 114.

suffered an adverse employment decision, and (4) was treated differently than

similarly situated non-protected employees (i.e., demoted, not promoted,

disciplined, or terminated where others in like circumstances were not).  See id.;

see also McDonnell Douglas, 411 U.S. at 802. Accepting *arguendo* that all of

Carter's complained of acts individually rise to the level of adverse employment

actions, she still fails to establish a prima facie case of discrimination, because she

has failed to introduce sufficient evidence to raise a genuine issue of fact regarding

the fourth element. "In order for the two [employees] to be considered

similarly-situated; ...the plaintiff and the employee with whom the plaintiff seeks to

compare [] herself must be similar in all of the relevant aspects." Ercegovich v.

Goodyear Tire & Rubber Co., 154 F.3d 344 (6th Cir. 1998) (internal citations and

quotations omitted); see also, Mitchell, supra at 583 ("to be deemed

'similarly-situated', the individuals with whom the plaintiff seeks to compare

his/her treatment must have dealt with the same supervisor, have been subject to

the same standards and have engaged in the same conduct without such

differentiating or mitigating circumstances that would distinguish their conduct or

the employer's treatment of them for it.").

For most of her complained-of acts, she fails to point to anyone not in the

protected class who was treated differently.[9] For her claims regarding the

---

[9]Indeed, for some she alleges that she was treated uniquely, differently from
both members and non-members of her protected class.

11

assignment of overtime, she does point to three white employees who were
treated differently (Doc. #29, Att. #1, Carter Dep. at 97), but offers no evidence
that would allow a reasonable jury to conclude that she and the employees she
compares herself to were similarly situated.[10] Having failed to offer evidence from
which a reasonable jury could conclude that she was treated differently than
similarly situated, non-protected employees, Carter has failed to raise a genuine
issue of material fact on the fourth prong of the <u>McDonnell Douglass</u> analysis, and
has therefore, failed to establish a prima facie case. Consequently, the Defendants'
Motion for Summary Judgment on Carter's claims of race discrimination, based on
individual discriminatory acts, is SUSTAINED.

2.    Hostile Work Environment

Taken individually, Carter's complained-of acts do not amount to
discrimination. However, Carter also argues that those same acts, taken together,
served to create a hostile work environment. "A hostile work environment occurs
when the workplace is permeated with discriminatory intimidation, ridicule, and
insult that is sufficiently severe or pervasive to alter the conditions of the victim's

---

[10]Her complaint also alleges that several white employees were assigned
jobs that she should have been assigned. Doc. #1, ¶ 2. However, she has offered
no evidence to support this contention. In responding to a motion for summary
judgment the non-moving party may not rely on their complaint to create a genuine
issue of material fact. <u>See</u> <u>Celotex</u> <u>supra</u>. Carter has failed to introduce evidence to
support this contention; therefore, Defendants' Motion for Summary Judgment is
SUSTAINED.

employment and create an abusive working environment." Bowman v. Shawnee
State University, 220 F.3d 456, 463 (6th Cir. 2000) (quoting Harris v. Forklift Sys.,
Inc., 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). In order to
establish a hostile work environment claim, an employee must demonstrate that: 1)
the employee is a member of a protected class, 2) the employee was subject to
harassment, 3) the harassment was based on the employee's membership in the
protected class, 4) the harassment created a hostile work environment, and 5) the
employer failed to take reasonable care to prevent and correct any harassing
behavior. See Williams v. General Motors Corp., 187 F.3d 553, 560-61 (6th Cir.
1999).

To demonstrate that she was subjected to a hostile work environment,
Carter is required to meet both an objective and a subjective test. Harris 510 U.S.
at 21-22, 114 S.Ct. 367. To demonstrate that the conduct created an objectively
hostile or abusive work environment, she must show that the conduct was severe
or pervasive enough to create an environment that a reasonable person would find
hostile or abusive. Id. To meet the subjective test, she must show that she
subjectively regarded that environment as abusive. Id.

The court must consider the totality of the circumstances when determining
whether, objectively, the alleged harassment is sufficiently severe or pervasive to
constitute a hostile work environment. Bowman 220 F.3d at 463. "[T]he issue is
not whether each incident of harassment standing alone is sufficient to sustain the

cause of action in a hostile environment case, but whether – taken together – the reported incidents make out such a case." <u>Williams</u> 187 F.3d at 562. Isolated incidents, unless extremely serious, will not amount to discriminatory changes in the terms or conditions of employment. <u>Bowman</u> 220 F.3d at 463. Appropriate factors for the court to consider when determining whether conduct is severe or pervasive enough to constitute a hostile work environment "include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." <u>Id.</u> (quoting <u>Harris</u> 510 U.S. at 23, 114 S.Ct. 367).

Any unequal treatment of an employee that would not have occurred but for the employee's race may, if sufficiently severe or pervasive under the <u>Harris</u> standard, constitute a hostile environment in violation of Title VII. <u>See</u>, <u>id.</u> However, "Title VII does not prohibit all verbal or physical harassment in the workplace…," it is directed only at discrimination because of membership in a protected class. <u>See</u>, <u>Oncale v. Sundowner Offshore Serv., Inc.</u>, 523 U.S. 75, 80, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998). The critical issue is whether members of one race are exposed to disadvantageous terms or conditions of employment to which members of the other race are not exposed. <u>Jackson v. Quanex Corp.</u>, 191 F.3d 647, 662 (6th Cir.1999).

Even were Carter able to demonstrate that the acts she complains of were

14

sufficient to create a hostile work environment, her claim would fail because she has failed to offer sufficient evidence to allow a reasonable jury to determine that it was a <u>racially</u> hostile work environment. As evidence that she was subjected to a hostile work environment because of her race, Carter offers the statement of Kim Cornelle, a manager at Delphi, who used the phrase "you people," while speaking to her and two other African-American workers. Carter Dep. at 39-40. She also alleges that several African-American employees complained to her of discriminatory treatment at Delphi. Carter Dep. at 92. These two facts are insufficient to raise a genuine issue of material fact that the environment Carter complains of was based on her race.

Even accepting Carter's view that Cornelle's comment was racially based, a single race-based comment is insufficient to establish that a hostile work environment was a <u>racially</u> hostile work environment. <u>See</u>, <u>Diamond v. U.S. Postal Service</u>, 29 Fed.Appx. 207, 211 (6th Cir. 2002) (unpublished decision). Carter's testimony, in her deposition, that other African-American employees complained to her about discriminatory treatment at Delphi is equally unavailing. The court, in ruling on a motion for summary judgment, is to consider only admissible evidence. <u>See</u>, <u>Carter v. Univ. of Toledo</u>, 349 F.3d 269, 274 (6th Cir.2003). The hearsay evidence offered by Carter, that other African-American's believed that they had received discriminatory treatment at Delphi, cannot be used to support her contention that she was treated in a discriminatory manner.

15

As has been discussed earlier, Carter has introduced insufficient evidence to support the conclusion that the individual acts she complains of were committed because of her race, and she has here introduced insufficient evidence to support a conclusion that the allegedly hostile work environment she complains of was hostile because of her race. Thus, Carter has failed to introduce sufficient evidence to raise a genuine issue of material fact on her claim that she was subjected to a hostile work environment because of her race. Because she has not introduced evidence sufficient to support her prima facie case, there is no need to analyze whether the Defendants took reasonable care to prevent and correct the allegedly harassing behavior. See, Faragher v. City of Boca Raton, 524 U.S. 775, 807, 118 S.Ct. 2275, (1998) (setting forth standard for affirmative defense to a hostile work environment claim where no tangible employment action is taken). The Defendants' Motion for Summary Judgment on Carter's hostile work environment claim is SUSTAINED.

3.     Retaliation

Carter, in her complaint, has alleged that Delphi retaliated against her for complaining about her "concerns" (Doc. #1 ¶ 5) and for reporting an OSHA violation (Id. ¶ 8). First, she claims she was retaliated against when a plant manager and an employee from human resources, "walked into the department, glared at me, then turned around and walked out of the department without saying

16

a word." Doc. #1 ¶ 5. <u>Second</u>, she claims she was retaliated against when her

supervisors "began to watch what time I left and returned from all breaks,

appointments…, committee man calls and grievance complaints. [And she] was

told that [her] line was being 'watched' but no reason was given as to why." <u>Id.</u> ¶

8.

      To establish a claim of retaliation, a plaintiff must demonstrate that: 1) she

engaged in protected activity; 2) the exercise of the plaintiff's rights was known by

the defendant; 3) the plaintiff suffered an adverse employment action; and, 4)

there was a causal connection between the protected activity and the adverse

employment action. <u>Williams v. General Motors Corp.</u>, 187 F.3d 553, 568 (6th Cir.

1999). With respect to the third element of the prima facie case, the adverse

employment action must be "materially adverse" for the plaintiff to succeed on a

Title VII claim. <u>See</u> <u>Hollins v. Atlantic Co.</u>, 188 F.3d 652, 662 (6th Cir.1999);

<u>Kocsis v. Multi-Care Management, Inc.</u>, 97 F.3d 876, 886 (6th Cir.1996). The

Sixth Circuit has noted the requirements for establishing a materially adverse

employment action:

> [A] materially adverse change in the terms and conditions of
> employment must be more disruptive than a mere inconvenience or an
> alteration of job responsibilities. A materially adverse change might be
> indicated by a termination of employment, a demotion evidenced by a
> decrease in wage or salary, a less distinguished title, a material loss of
> benefits, significantly diminished material responsibilities, or other
> indices that might be unique to a particular situation.

<u>Hollins</u>, 188 F.3d at 662. <u>De</u> <u>minimis</u> employment actions are not materially

17

adverse and, thus, not actionable. <u>Ford v. General Motors Corp.</u>, 305 F.3d 545,

553 (6th Cir. 2002). Even accepting arguendo that Carter has established all of the

other elements of her prima facie case, no reasonable jury could find that the acts

she complains of constitute a materially adverse employment action. <u>Cf. Ford</u>,

<u>supra</u> (heightened scrutiny, significantly increased workload and constructive

discharge, taken together, were sufficient to demonstrate materially adverse

employment action). Because Carter has failed to introduce evidence sufficient to

create a genuine issue of material fact on a matter for which she will bear the

burden of proof at trial, the Defendants' Motion for Summary Judgment is

SUSTAINED as to her claim of retaliation.


    4.    Recovery for Workplace Injury

Carter also seeks to recover damages for an injury she received while

working. Doc. #1 at 6. In 1998, she injured her back, neck and both shoulders

while on the job. Doc. #29, Att. #1, Carter Dep. At 21-22. Ohio's workers'

compensation laws prevent employees who are injured on the job from suing their

employer to recover for the injuries incurred. O.R.C. § 4123.74. However, an

employee may recover damages for the intentional torts of his employer. <u>Johnson</u>

<u>v. BP Chemicals, Inc.</u>, 85 Ohio St.3d 298, 707 N.E.2d 1107 (1999). To establish a

claim based on the intentional tort of his employer, the plaintiff must prove:

    1)    knowledge by the employer of the existence of a dangerous
        process, procedure, instrumentality or condition within its

18

business operation;

2)  knowledge by the employer that if the employee is subjected by
his employment to such a dangerous process, procedure,
instrumentality, or condition, then harm to the employee will be
a substantial certainty; and

3)  that the employer, under such circumstances, and with such
knowledge, did act to require the employee to continue to
perform the dangerous task.

Fyffe v. Jeno, 59 Ohio St.3d 115, 570 N.E.2d 1108 (Ohio 1991); see also,

Johnson, supra. Carter has offered no evidence that would allow a reasonable jury

to infer that any of the elements necessary to recover from Delphi for her

workplace injury exist. Because she has failed to raise a genuine issue of material

fact on a matter for which she will bear the burden of proof at trial, the

Defendants' Motion for Summary Judgment on Carter's claims regarding her

workplace injury is SUSTAINED.


IV.   CONCLUSION

The Defendants' Motion for Summary Judgment (Doc. #29) is SUSTAINED

as to all of Carter's claims.

Judgment is to be entered on behalf of the Defendants and against the

Plaintiff.

The above captioned cause is hereby ordered terminated upon the docket

records of the United States District Court for the Southern District of Ohio,

19

Western Division, at Dayton.


March 28, 2005


                                      ___ /s/ Walter Herbert Rice_____
                                        WALTER HERBERT RICE, JUDGE
                                        UNITED STATES DISTRICT COURT


Copies to:
Counsel of record

# **EXHIBIT C**

# United States District Court for the ____Southern____

# District of ___Ohio___

## Western Division at Dayton, Ohio

SHARYL Y. CARTER

_____

_____

**Plaintiff,**

vs.

DELPHI HARRISON THERMAL SYSTEMS

TOM MUNLEY, MARY ANN POLVINN

AND JACQUELYN POLK,

**Defendant.**

CASE NO.___3:2003-cv-00205___

[Judge Walter Herbert Rice]

[Magistrate Judge Ovington]

# NOTICE OF APPEAL

Notice is hereby given that ___Plaintiff Sharyl Y. Carter___, hereby appeal **s**

(here name all parties taking the appeal)

to the United States Court of Appeals for the Sixth Circuit from ___Judgment in a Civil Case &___

(the final judgment)

Decision And Entry Sustaining Defendants' Motion for Summary Judgment

(Doc. #29); Judgment to be Entered on Behalf of Defendant and Agai

Against the Plaintiff; Termination Entry    entered on March 28, 2005.

___s/ Geoffrey P. Damon, Esq.___

Trial Attorney for Plaintiff

Ohio S. Ct. Reg. # 0029397

2900 Carew Tower

441 Vine Street

Cincinnati, Ohio   45202

(513) 345-1427

(513) 579-1418 (FAX)

gdamon@damonlawoffice.com

Case No.: 3:2003-cv-00205
*Sharyl A. Carter, et.al. v. Delphi Harrison Thermal Systems, et.al.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of April, 2005, that I have filed this document with the Clerk of the United States District Court, through the CM\ECF system and that the following CM\ECF participants will immediately receive notice of its filing through the CM\ECF system:

**Lori A. Clary, Esq.**
**Jones Day**
**P.O. Box 165017**
**Columbus, Ohio 43216-5017**
laclary@jonesday.com

**Johanna Fabrizio Parker, Esq.**
**Jones Day**
**North Point**
**901 Lakeside Avenue**
**Cleveland, Ohio 44114**
jfparker@jonesday.com

**Robert S. Walker, Esq.**
**Jones Day**
**North Point**
**901 Lakeside Avenue**
**Cleveland, Ohio 44114**
rswalker@jonesday.com

**George Andrew Katchmer, Jr.**
**P.O. Box 4235**
**17 South St. Clair Street, Suite 320**
**Dayton, Ohio 45401-4235**
gkatchmer@daytondefenselawyers.com

s/ *Geoffrey P. Damon, Esq.*
Geoffrey P. Damon, Esq. [0029397]
Trial Attorney for Plaintiff
2900 Carew Tower
441 Vine Street
Cincinnati, OH 45202
513-345-1427
513-5791418 (FAX)
gdamon@damonlawoffice.com

1

# **<u>EXHIBIT D</u>**

IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x
                                              :
        In re                                 :    Chapter 11
                                              :
DELPHI CORPORATION, et al.,                   :    Case No. 05-44481 (RDD)
                                              :
                            Debtors.          :    (Jointly Administered)
                                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x
```

<u>AFFIDAVIT OF SERVICE</u>

I, Evan Gershbein, being duly sworn according to law, depose and say that I am employed by Kurtzman Carson Consultants, LLC, the Court appointed claims and noticing agent for the Debtors in the above-captioned cases.

On or before April 20, 2006, I caused to be served the documents listed below upon the parties listed on <u>Exhibit A</u> hereto via postage pre-paid U.S. mail:

1)  Notice of Bar Date for Filing Proofs of Claim [a copy of which is attached hereto as Exhibit B]

2)  Proof of Claim form [a copy of which is attached hereto as Exhibit C]

Dated: April 28, 2006

                                    _____*/s/ Evan Gershbein*_____
                                    Evan Gershbein

Subscribed and sworn to (or affirmed) before me on this 28th day of April, 2006, by Evan Gershbein, personally known to me or proved to me on the basis of satisfactory evidence to be the person who appeared before me.

Signature : _____*/s/ Amy Lee Huh*_____

Commission Expires: _____*3/15/09*_____

# EXHIBIT A

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Carter Rhonda | | 313 Chewalca Dr | | | Gadsden | AL | 35906 | |
| Carter Richard | | 15393 Chickenbristle Rd | | | Farmersville | OH | 45325-9247 | |
| Carter Richard | | 4590 Shadigee Rd | | | Newfane | NY | 14108 | |
| Carter Richard | | 5309 Columbus Ave | | | Sandusky | OH | 44870 | |
| Carter Rickey | | 217 Densmore Rd | | | Joppa | AL | 35087 | |
| Carter Robert | | 11464 Somerset Trail | | | Concord | OH | 44077 | |
| Carter Robert | | PO Box 17554 | | | Dayton | OH | 45417 | |
| Carter Robert | | PO Box 537 | | | Cortland | OH | 44410-0537 | |
| Carter Ronald | | 3300 Williams Dr | | | Kokomo | IN | 46902 | |
| Carter Roosevelt | | 5175 Causeyville Rd | | | Meridian | MS | 39301 | |
| Carter Ross Rosie | | 1737 Linden Ave | | | Racine | WI | 53403 | |
| Carter Sarah | | 1941 Spruce Dr | | | Carmel | IN | 46033 | |
| Carter Sarah | | 6330 Belmont Pl | | | Saginaw | MI | 48603 | |
| Carter Shana | | 5030 Germantown Pk | | | Dayton | OH | 45418 | |
| Carter Shannon | | 172 Stonybrook Trl Se | | | Bogue Chitto | MS | 39629 | |
| Carter Shannon | | 62 Labelle St | | | Dayton | OH | 45403 | |
| Carter Sharyl | | 92 Woolery Ln C | | | Clayton | OH | 45415 | |
| Carter Sharyl Yvette | | Damon Law Office | 441 Vine St | Ste 2900 Carew Tower | Cincinnati | OH | 45202 | |
| Carter Shawn | | 4818 S Madison Ave | | | Anderson | IN | 46013 | |
| Carter Sheila | | 2109 Cobblestone Dr | | | Kokomo | IN | 46902 | |
| Carter Sonya | | 414 Maryland St Ne | | | Warren | OH | 44483-2714 | |
| Carter Stanly B | | 5530 11th Ave E | | | Northport | AL | 35473-7644 | |
| Carter Stephanie | | 217 Densmore Rd | | | Joppa | AL | 35087 | |
| Carter Steven | | 6197 W 900 N | | | Frankton | IN | 46044 | |
| Carter Susan Joyce | | 1105 Glacier Court | | | Windsor | CO | 80550 | |
| Carter Susan M | | 6 Saratoga Ct | | | N Little Rock | AR | 72116-4421 | |
| Carter T | | 14 Rowan Rd Lower | | | Cheektowaga | NY | 14215 | |
| Carter T Peek | | 2529 Peyton Woods Tr Sw | | | Atlanta | GA | 30311-2137 | |
| Carter Terry | | 3525 Nash St | | | Riverside | CA | 92501 | |

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Sharron E Thomas | | 17322 Cambridge Ave | | | Southfield | MI | 48076-3522 | |
| Sharron H Mitchell | | 344 Overlook Circle | | | Jackson | MS | 39213-2305 | |
| Sharron I Adkins | | 1746 Eleanor Ave | | | Saint Paul | MN | 55116-1438 | |
| Sharron J Holmes | | 267 Highgate Ave | | | Buffalo | NY | 14215-1023 | |
| Sharron Jouppi | | Co Sharon Jouppi | 1011 W Windemere | | Royal Oak | MI | 48073-5216 | |
| Sharron K Vinton and Mary A Vinton | | Vinton Trust Ua Dtd 42604 | 8810 S Gera Rd | | Birch Run | MI | 48415 | |
| Sharron L Allen | | 11661 Se 52nd St | | | Bellevue | WA | 98006-3305 | |
| Sharron L Brunner | | 4101 S Sheridan Rd Lot 06 | | | Lennon | MI | 48449-9412 | |
| Sharron L Brunner | | 4101 S Sheridan Rdlot 6 | | | Lennon | MI | 48449 | |
| Sharron L Clair and Russell N | | Clair Jt Ten | 314 Nesbit Ln | | Rochester Hills | MI | 48309-2176 | |
| Sharron L Stoelzl and | | Peter W Stoelzl Jt Ten | 190 Butterfield Dr | | Novato | CA | 94945-1439 | |
| Sharron L Totten | | 5346 W Frances Rd | | | Clio | MI | 48420-8550 | |
| Sharron P Jobst | | 4018 Neff | | | Detroit | MI | 48224-1415 | |
| Sharron Pollack | | 6344 Wydown Blv | | | St Louis | MO | 63105 | |
| Sharron Vester | | Apt 10 G | 215 S 9th Ave | | Mount Vernon | NY | 10550-3785 | |
| Sharts Jr Stewart | | 6154 East Ave | | | Newfane | NY | 14108 | |
| Sharts Steven | | 2694 Vanhorn Ave | | | Newfane | NY | 14108 | |
| Sharts Stewart L | | 6154 East Ave | | | Newfane | NY | 14108-1328 | |
| Sharvonne Ferguson | | 6023 Ryder Ave | | | Charlotte | NC | 28226-8309 | |
| Sharyl A Mccarthy | | 3403 W 109th Circle | | | Westminster | CO | 80031-6818 | |
| Sharyl J Nye and David G | | Nye Jt Ten | 2713 Hunterwood Dr | | Decatur | AL | 35603-5637 | |
| Sharyl L Jennaro and | | Virginia L Jennaro Jt Ten | 2321 Ne 32nd Court | | Lghthse Point | FL | 33064-8162 | |
| Sharyl Yvette Carter On Appeal | | Damon Law Office | 441 Vine St | Ste 2900 Carew Tower | Cincinnati | OH | 45202 | |
| Sharyn A Mcintyre | | 7153 Steeplechase Way | | | Lansing | MI | 48917-8852 | |
| Sharyn B Greberman | | 1101 Dale Dr | | | Silver Spring | MD | 20910-1607 | |
| Sharyn J Heinzerling | | 608 Dell Ridge Dr | | | Dayton | OH | 45429-1341 | |
| Sharyn L Andrews | | 580 Main St | | | Woburn | MA | 01801-2924 | |

# EXHIBIT B

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - x
                  :

In re                      :     Chapter 11
                  :

DELPHI CORPORATION, et al.,  :     Case No. 05-44481 (RDD)
                  :

             Debtors.  :     (Jointly Administered)
                  :

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

## NOTICE OF BAR DATE FOR FILING PROOFS OF CLAIM

TO ALL CREDITORS OF THE DEBTORS, AND OTHER PARTIES-IN-INTEREST:

PLEASE TAKE NOTICE THAT:

        In accordance with an order entered on April 12, 2006 by the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") in the above-captioned chapter 11 cases (the "Bar Date Order"), **5:00 p.m. Eastern Time on July 31, 2006** (the "General Bar Date") has been established as the last date for each person or entity (including individuals, partnerships, corporations, limited liability companies, estates, trusts, unions, indenture trustees, the United States Trustee, and governmental units) (individually, a "Person" or "Entity," and collectively, "Persons" or "Entities") to file a proof of claim in the chapter 11 cases of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors").  A list of all Debtors in these chapter 11 cases is attached hereto as Exhibit A.

        On October 8, 2005, Delphi and certain of its U.S. subsidiaries filed voluntary petitions in the Bankruptcy Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code").  On October 14, 2005, three additional U.S. subsidiaries of Delphi filed voluntary petitions in the Bankruptcy Court for reorganization relief under the Bankruptcy Code.  The term "Petition Date" shall mean the date on which each Debtor filed its chapter 11 bankruptcy petition as set forth on Exhibit A attached hereto.  The General Bar Date and the procedures set forth below for filing proofs of claim apply to all claims against the Debtors that arose before the applicable Petition Date, except for those holders of the claims listed in Section 4 below which are specifically excluded from the General Bar Date filing requirement.

## 1.    Who Must File A Proof Of Claim

        You MUST file a proof of claim to vote on a chapter 11 plan filed by the Debtors or to share in distributions from the Debtors' bankruptcy estates if you have a claim against any of the Debtors that arose prior to the applicable Petition Date, and such claim is not one of the types of claim described in Section 4 below.  Claims based on acts or omissions of the Debtors that occurred before the applicable Petition Date must be

filed on or prior to the General Bar Date, even if such claims are not now fixed, liquidated, or certain or did not mature or become fixed, liquidated, or certain before the applicable Petition Date.

Under section 101(5) of the Bankruptcy Code and as used in this Notice, the word "claim" means (a) a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, or (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

## 2.    What To File

The Debtors are enclosing a proof of claim form which you may use to file any claim you may have in these cases.  If the Debtors scheduled you as a creditor in any of the Debtors' schedules of assets and liabilities (as amended from time to time, the "Schedules"), the form sets forth the amount of your claim as scheduled and whether the claim is scheduled as disputed, contingent, or unliquidated.  Additional proof of claim forms may be obtained at http://www.uscourts.gov/bkforms/index.html or at http://www.delphidocket.com.

All proofs of claim must be signed by the claimant or, if the claimant is not an individual, by a claimant's authorized agent.  All proofs of claim must be written in English and be denominated in United States currency.  You should attach to your completed proof of claim any documents on which the claim is based (if voluminous, attach a summary) or an explanation as to why the documents are not available.

If any supporting documentation provided with any proof of claim contains confidential information, such documentation will be subject to examination only by the party asserting the claim, the Debtors, the Debtors' counsel and advisers, the United States Trustee, counsel and advisers to the official committee of unsecured creditors appointed in these chapter 11 cases, Kurtzman Carson Consultants, LLC, the claims and noticing agent in these chapter 11 cases, and any personnel of the United States Bankruptcy Court for the Southern District of New York in the performance of their official duties, and such entities have been ordered to maintain the confidentiality of all supporting documentation to any proof of claim and the information contained therein.

Any holder of a claim against more than one Debtor must file a separate proof of claim with respect to each such Debtor and each holder of a claim must identify on its proof of claim the specific Debtor against which its claim is asserted and the case number of that Debtor's reorganization case.  A list of the names of the Debtors and their reorganization case numbers is attached hereto as Exhibit A.

3.      **When And Where To File**

Except as provided for herein, all proofs of claim must be filed so as to be underline no later than **5:00 p.m. Eastern Time on July 31, 2006** at the following address:

| If sent by mail: | If sent by messenger or overnight courier: |
|---|---|
| United States Bankruptcy Court | United States Bankruptcy Court |
| Southern District of New York | Southern District of New York |
| Delphi Corporation Claims | Delphi Corporation Claims |
| Bowling Green Station | One Bowling Green |
| P.O. Box 5058 | Room 534 |
| New York, New York 10274-5058 | New York, New York 10004-1408 |

**Proofs of claim will be deemed filed only when actually received at the addresses above on or before the General Bar Date.** Proofs of claim may not be delivered by facsimile, telecopy, or electronic mail transmission.

Governmental units must file proofs of claims in these chapter 11 cases on or prior to the General Bar Date.

4.      **Who Need Not File A Proof Of Claim**

You do not need to file a proof of claim on or prior to the General Bar Date if you are:

(a)      Any Person or Entity (i) which agrees with the nature, classification, and amount of its Claim set forth in the Schedules and (ii) whose Claim against a Debtor is not listed as "disputed," "contingent," or "unliquidated" in the Schedules;

(b)      Any Person or Entity which has already properly filed a proof of claim against the correct Debtor;

(c)      Any Person or Entity which asserts a Claim allowable under sections 503(b) and 507(a)(1) of the Bankruptcy Code as an administrative expense of the Debtors' chapter 11 cases;

(d)      Any Person or Entity which asserts a Claim solely on the basis of future pension or other post-employment benefits, including, without limitation, retiree health care and life insurance; underline provided, however, that any such Person or Entity which wishes to assert a Claim against any of the Debtors based on anything other than

future pension or other post-employment benefits must file a proof of claim on or prior to the General Bar Date;[1]

(e)     Any Debtor or any direct or indirect subsidiary of any of the Debtors in which the Debtors in the aggregate directly or indirectly own, control or hold with power to vote, 50 percent or more of the outstanding voting securities of such subsidiary;

(f)     Any Person or Entity whose Claim against a Debtor previously has been allowed by, or paid pursuant to, an order of the Bankruptcy Court;

(g)     Any holder of a Claim arising under or in respect of any of the following issuances of Delphi Corporation senior and junior subordinated unsecured debt (each, a "Noteholder"): (i) those certain senior unsecured securities bearing interest at 6.55% and maturing on June 15, 2006; (ii) those certain senior unsecured securities bearing interest at 6.50% and maturing on May 1, 2009; (iii) those certain senior unsecured securities bearing interest at 6.50% and maturing on August 15, 2013; (iv) those certain senior unsecured securities bearing interest at 7.125% and maturing on May 1, 2029; (v) those certain 8.25% junior subordinated notes due 2033; or (vi) those certain adjustable-rate junior subordinated notes due 2033  (collectively, the "Unsecured Securities"), other than the indenture trustees of the Unsecured Securities; provided, however, that any Noteholder who wishes to assert a Claim against the Debtors that is not based solely upon the outstanding prepetition principal and interest due on account of its ownership of such Unsecured Securities must file a proof of claim on or prior to the General Bar Date in respect of such Claim; and

(h)     Any holder of equity securities of, or other interests in, the Debtors solely with respect to such holder's ownership interest in or possession of such equity securities, or other interest; provided, however, that any such holder which wishes to assert a Claim against any of the Debtors that is not based solely upon its ownership of the Debtors' securities, including, but not limited to, Claims for damages or recision based on the purchase or sale of such securities, must file a proof of claim on or prior to the General Bar Date in respect of such Claim.

This notice is being sent to many persons and entities which have had some relationship with or have done business with the Debtors but may not have an unpaid claim against the Debtors.  The fact that you have received this Notice does not

---

[1] The bar date for the filing of Proofs of Claim on account of Claims arising from modification to or termination of future pension or other post-employment benefits will be determined pursuant to an order of the Bankruptcy Court approving such modification or termination.

necessarily mean that you have a claim or that the Debtors or the Bankruptcy Court believe that you have a claim against the Debtors.

**5.      Executory Contracts And Unexpired Leases**

Any person or entity which has a claim arising from the rejection of an Executory Contract must file a proof of claim on account of such claim against the Debtors on or before the later of (a) the General Bar Date or (b) 30 calendar days after the effective date of such rejection or such other date as fixed by the Bankruptcy Court in an order authorizing such rejection.

**6.      Amended Schedule Bar Date**

If the Debtors amend the Schedules on or after the date of this Notice (listed below) to reduce the undisputed, noncontingent, and liquidated amounts or to change the nature or classification of a claim against a Debtor reflected therein, the bar date for filing a proof of claim in respect of such amended schedule claim is the later of (a) the General Bar Date or (b) 30 calendar days after a claimant is served with notice that the Debtors have amended their Schedules.

**7.      Consequences Of Failure To File A Proof Of Claim By The General Bar Date**

ANY HOLDER OF A CLAIM WHICH IS NOT EXCEPTED FROM THE REQUIREMENTS OF THIS NOTICE, AS SET FORTH IN SECTION 4 ABOVE, AND WHICH FAILS TO TIMELY FILE A PROOF OF CLAIM IN THE APPROPRIATE FORM, WILL BE BARRED FROM ASSERTING SUCH CLAIM AGAINST THE DEBTORS AND THEIR CHAPTER 11 ESTATES, FROM VOTING ON ANY PLAN OF REORGANIZATION FILED IN THESE CASES, AND FROM PARTICIPATING IN ANY DISTRIBUTION IN THE DEBTORS' CASES ON ACCOUNT OF SUCH CLAIM.

**8.      The Debtors' Schedules And Access Thereto**

You may be listed as the holder of a claim against the Debtors in any of the Debtors' Schedules of Assets and Liabilities and/or Schedules of Executory Contracts and Unexpired Leases.

To determine if and how you are listed on any of the Schedules, please refer to the descriptions set forth on the enclosed proof of claim forms regarding the nature, amount, and status of your claim(s).

As set forth above, if you agree with the nature, amount, and status of your claim as listed in any of the Debtors' Schedules, and if your claim is not described as "disputed," "contingent," or "unliquidated," you need not file a proof of claim. Otherwise, or if you decide  to file a proof of claim, you must do so before the General Bar Date in accordance with the procedures set forth in this Notice.

Copies of any of the Debtors' Schedules are available for inspection online at http://www.delphidocket.com or on the Court's Internet Website at

http://www.nysb.uscourts.gov.  A login and password to the Court's Public Access to Electronic Court Records ("PACER") are required to access this information on the Court's Internet Website and can be obtained through the PACER Service Center at http://www.pacer.psc.uscourts.gov.  No login or password is required to access this information on the Debtors' Legal Information Website (http://www.delphidocket.com). Copies of any of the Schedules may also be examined between the hours of 9:00 a.m. and 4:30 p.m., Monday through Friday at the Office of the Clerk of the Bankruptcy Court, One Bowling Green, Room 511, New York, New York 10004-1408.

A holder of a possible claim against any of the Debtors should consult an attorney regarding any matters not covered by this Notice, such as whether the holder should file a proof of claim.

Dated: New York, New York                                BY ORDER OF THE COURT
       April 12, 2006

       SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
       John Wm. Butler, Jr.
       John K. Lyons
       Ron E. Meisler
       333 West Wacker Drive, Suite 2100
       Chicago, Illinois  60606

        - and -

       Kayalyn A. Marafioti (KM 9632)
       Thomas J. Matz (TM 5986)
       Four Times Square
       New York, New York 10036

       Attorneys for Delphi Corporation, et al.,
        Debtors and Debtors-in-Possession

**For additional information:**

Delphi Restructuring Information Hotline:
Toll Free:  (866) 688-8740
International:  (248) 813-2602

Delphi Legal Information Website:
http://www.delphidocket.com

**EXHIBIT A**

| | Entity | Tax / Federal ID Number | Case Number | Address | Date Of Petition Filing |
|---|---|---|---|---|---|
| 1. | Delphi NY Holding Corporation | 20-3383408 | 05-44480 | 5725 Delphi Drive Troy, MI 48098 | October 8, 2005 |
| 2. | Delphi Corporation | 38-3430473 | 05-44481 | 5725 Delphi Drive Troy, MI 48098 | October 8, 2005 |
| 3. | ASEC Manufacturing General Partnership | 73-1474201 | 05-44482 | 1301 Main Parkway Catoosa, OK 74015 | October 8, 2005 |
| 4. | ASEC Sales General Partnership | 73-1474151 | 05-44484 | 1301 Main Parkway Catoosa, OK 74015 | October 8, 2005 |
| 5. | Environmental Catalysts, LLC | | 05-44503 | 5725 Delphi Drive Troy, MI 48098 | October 8, 2005 |
| 6. | Delphi Medical Systems Colorado Corporation | 84-1524184 | 05-44507 | 4300 Road 18 Longmont, CO 80504 | October 8, 2005 |
| 7. | Delphi Medical Systems Texas Corporation | 20-2885110 | 05-44511 | 5725 Delphi Drive Troy, MI 48098 | October 8, 2005 |
| 8. | Delphi Medical Systems Corporation | 32-0052827 | 05-44529 | 5725 Delphi Drive Troy, MI 48098 | October 8, 2005 |
| 9. | Specialty Electronics International Ltd. | 66-0522490 | 05-44536 | 69A Kronprindsens Gade (Third Floor) P.O. Box 1858 St. Thomas, VI | October 8, 2005 |
| 10. | Specialty Electronics, Inc. | 57-0755068 | 05-44539 | 19200 Asheville Highway P.O. Box 519 Landrum, SC 29356 | October 8, 2005 |
| 11. | Delphi Liquidation Holding Company | 95-4359324 | 05-44542 | 5725 Delphi Drive Troy, MI 48098 | October 8, 2005 |
| 12. | Delphi Electronics (Holding) LLC | 95-4554161 | 05-44547 | One Corporate Center Kokomo, IN 46904 | October 8, 2005 |
| 13. | Delphi Technologies, Inc. | 38-3430681 | 05-44554 | 5725 Delphi Drive Troy, MI 48098 | October 8, 2005 |
| 14. | Delphi Automotive Systems Tennessee, Inc. | 38-3319836 | 05-44558 | 5725 Delphi Drive Troy, MI 48098 | October 8, 2005 |
| 15. | Delphi Mechatronic Systems, Inc. | 38-3589834 | 05-44567 | 5725 Delphi Drive Troy, MI 48098 | October 8, 2005 |
| 16. | Delphi Automotive Systems Risk Management Corp. | 38-3575299 | 05-44570 | 5725 Delphi Drive Troy, MI 48098 | October 8, 2005 |
| 17. | Exhaust Systems Corporation | 38-3211473 | 05-44573 | 4800 S. Saginaw Street Flint, MI 48501 | October 8, 2005 |
| 18. | Delphi China LLC | 38-3196159 | 05-44577 | 5725 Delphi Drive Troy, MI 48098 | October 8, 2005 |
| 19. | Delphi Automotive Systems Korea, Inc. | 38-2849490 | 05-44580 | 5725 Delphi Drive Troy, MI 48098 | October 8, 2005 |
| 20. | Delphi International Services, Inc. | 38-3439894 | 05-44583 | 5725 Delphi Drive Troy, MI 48098 | October 8, 2005 |

| | Entity | Tax / Federal ID Number | Case Number | Address | Date Of Petition Filing |
|---|---|---|---|---|---|
| 21. | Delphi Automotive Systems Thailand, Inc. | 38-3379709 | 05-44586 | 5725 Delphi Drive Troy, MI 48098 | October 8, 2005 |
| 22. | Delphi Automotive Systems International, Inc. | 38-3280289 | 05-44589 | 5725 Delphi Drive Troy, MI 48098 | October 8, 2005 |
| 23. | Delphi International Holdings Corp. | 38-3449527 | 05-44591 | 5725 Delphi Drive Troy, MI 48098 | October 8, 2005 |
| 24. | Delphi Automotive Systems Overseas Corporation | 38-3318021 | 05-44593 | 5725 Delphi Drive Troy, MI 48098 | October 8, 2005 |
| 25. | Delphi Automotive Systems (Holding), Inc. | 38-3422378 | 05-44596 | 5725 Delphi Drive Troy, MI 48098 | October 8, 2005 |
| 26. | Delco Electronics Overseas Corporation | 38-2638990 | 05-44610 | 5725 Delphi Drive Troy, MI 48098 | October 8, 2005 |
| 27. | Delphi Diesel Systems Corp. | 38-3505001 | 05-44612 | 5725 Delphi Drive Troy, MI 48098 | October 8, 2005 |
| 28. | Delphi LLC | 37-1438255 | 05-44615 | 5725 Delphi Drive Troy, MI 48098 | October 8, 2005 |
| 29. | Aspire, Inc. | 36-4392806 | 05-44618 | U.S. Route 1 Morrisville, PA 19067 | October 8, 2005 |
| 30. | Delphi Integrated Service Solutions, Inc. | 38-3473261 | 05-44623 | 1322 Rankin Street Troy, MI 48083 | October 8, 2005 |
| 31. | Delphi Connection Systems | 95-2563022 | 05-44624 | 17150 Von Karman Avenue Irvine, CA 92614 | October 8, 2005 |
| 32. | Packard Hughes Interconnect Company | 33-0595219 | 05-44626 | 17150 Von Karman Avenue Irvine, CA 92614 | October 8, 2005 |
| 33. | DREAL, Inc. | 38-3457411 | 05-44627 | 5725 Delphi Drive Troy, MI 48098 | October 8, 2005 |
| 34. | Delphi Automotive Systems Services LLC | 38-3568834 | 05-44632 | 5725 Delphi Drive Troy, MI 48098 | October 8, 2005 |
| 35. | Delphi Services Holding Corporation | 20-0577653 | 05-44633 | 5725 Delphi Drive Troy, MI 48098 | October 8, 2005 |
| 36. | Delphi Automotive Systems Global (Holding), Inc. | 38-3547659 | 05-44636 | 5725 Delphi Drive Troy, MI 48098 | October 8, 2005 |
| 37. | Delphi Foreign Sales Corporation | 66-0564421 | 05-44638 | Chase Trade, Inc. Post Office Box 309420 55-11 Conacao Gade Charlotte Amalie St. Thomas, VI 00803-9420 | October 8, 2005 |
| 38. | Delphi Automotive Systems Human Resources LLC | 38-3547664 | 05-44639 | 5725 Delphi Drive Troy, MI 48098 | October 8, 2005 |
| 39. | Delphi Automotive Systems LLC | 38-3431131 | 05-44640 | 5725 Delphi Drive Troy, MI 48098 | October 8, 2005 |
| 40. | Delphi Furukawa Wiring Systems LLC | 20-2478586 | 05-47452 | 5725 Delphi Drive Troy, MI 48098 | October 14, 2005 |

|  | Entity | Tax / Federal ID Number | Case Number | Address | Date Of Petition Filing |
|---|---|---|---|---|---|
| 41. | Delphi Receivables LLC | 61-1446224 | 05-47459 | 5725 Delphi Drive Troy, MI 48098 | October 14, 2005 |
| 42. | MobileAria, Inc. | 31-1695929 | 05-47474 | 800 West El Camino Real Suite 240 Mountain View, CA 94040 | October 14, 2005 |

# EXHIBIT C

FORM B10 (Official Form 10) (04/05)

| UNITED STATES BANKRUPTCY COURT __Southern__ DISTRICT OF __New York__ | PROOF OF CLAIM |

| Name of Debtor | Case Number |

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

| Name of Creditor (The person or other entity to whom the debtor owes money or property): | ☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars. | |
| Name and address where notices should be sent: | ☐ Check box if you have never received any notices from the bankruptcy court in this case. | |
| | ☐ Check box if the address differs from the address on the envelope sent to you by the court. | |
| Telephone number: | | THIS SPACE IS FOR COURT USE ONLY |

Account or other number by which creditor identifies debtor:

Check here ☐ replaces
if this claim ☐ amends        a previously filed claim, dated:_____

**1. Basis for Claim**
- ☐ Goods Sold / Services Performed
- ☐ Customer Claim
- ☐ Taxes
- ☐ Money Loaned
- ☐ Personal Injury
- ☐ Other _____

- ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
- ☐ Wages, salaries, and compensation (fill out below)
  Last four digits of SS #: _____
  Unpaid compensation for services performed
  from _____ to _____
  (date)        (date)

**2. Date debt was incurred:**

**3. If court judgment, date obtained:**

**4. Total Amount of Claim at Time Case Filed: $** _____ _____ _____ _____
                                          (unsecured)    (secured)    (priority)    (Total)

If all or part of your claim is secured or entitled to priority, also complete Item 5 or 7 below.
☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

**5. Secured Claim.**
☐ Check this box if your claim is secured by collateral (including a right of setoff).

Brief Description of Collateral:
☐ Real Estate   ☐ Motor Vehicle
☐ Other_____

Value of Collateral:   $_____

Amount of arrearage and other charges at time case filed included in secured claim, if any: $_____

**6. Unsecured Nonpriority Claim** $_____

☐ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority.

**7. Unsecured Priority Claim.**
☐ Check this box if you have an unsecured priority claim
Amount entitled to priority   $_____
Specify the priority of the claim:
- ☐ Wages, salaries, or commissions (up to $10,000),* earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(3).
- ☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(4).
- ☐ Up to $2,225* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(6).
- ☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child - 11 U.S.C. § 507(a)(7).
- ☐ Taxes or penalties owed to governmental units-11 U.S.C. § 507(a)(8).
- ☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(____).
*Amounts are subject to adjustment on 4/1/07 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment. $10,000 and 180-day limits apply to cases filed on or after 4/20/05. Pub. L. 109-8.

**8. Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

**9. Supporting Documents:** *Attach copies of supporting documents,* such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

**10. Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim

THIS SPACE IS FOR COURT USE ONLY

| Date | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any): |

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

FORM B10 (Official Form 10) (04/04)

# INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In particular types of cases or circumstances, such as bankruptcy cases that are not filed voluntarily by a debtor, there may be exceptions to these general rules.*

## —— DEFINITIONS ——

### Debtor

The person, corporation, or other entity that has filed a bankruptcy case is called the debtor.

### Creditor

A creditor is any person, corporation, or other entity to whom the debtor owed a debt on the date that the bankruptcy case was filed.

### Proof of Claim

A form telling the bankruptcy court how much the debtor owed a creditor at the time the bankruptcy case was filed (the amount of the creditor's claim). This form must be filed with the clerk of the bankruptcy court where the bankruptcy case was filed.

### Secured Claim

A claim is a secured claim to the extent that the creditor has a lien on property of the debtor (collateral) that gives the creditor the right to be paid from that property before creditors who do not have liens on the property.

Examples of liens are a mortgage on real estate and a security interest in a car, truck, boat, television set, or other item of property. A lien may have been obtained through a court proceeding before the bankruptcy case began; in some states a court judgment is a lien. In addition, to the extent a creditor also owes money to the debtor (has a right of setoff), the creditor's claim may be a secured claim. (See also *Unsecured Claim.*)

### Unsecured Claim

If a claim is not a secured claim it is an unsecured claim. A claim may be partly secured and partly unsecured if the property on which a creditor has a lien is not worth enough to pay the creditor in full.

### Unsecured Priority Claim

Certain types of unsecured claims are given priority, so they are to be paid in bankruptcy cases before most other unsecured claims (if there is sufficient money or property available to pay these claims). The most common types of priority claims are listed on the proof of claim form. Unsecured claims that are not specifically given priority status by the bankruptcy laws are classified as *Unsecured Nonpriority Claims.*

## Items to be completed in Proof of Claim form (if not already filled in)

**Court, Name of Debtor, and Case Number:**
Fill in the name of the federal judicial district where the bankruptcy case was filed (for example, Central District of California), the name of the debtor in the bankruptcy case, and the bankruptcy case number. If you received a notice of the case from the court, all of this information is near the top of the notice.

**Information about Creditor:**
Complete the section giving the name, address, and telephone number of the creditor to whom the debtor owes money or property, and the debtor's account number, if any. If anyone else has already filed a proof of claim relating to this debt, if you never received notices from the bankruptcy court about this case, if your address differs from that to which the court sent notice, or if this proof of claim replaces or changes a proof of claim that was already filed, check the appropriate box on the form.

**1. Basis for Claim:**
Check the type of debt for which the proof of claim is being filed. If the type of debt is not listed, check "Other" and briefly describe the type of debt. If you were an employee of the debtor, fill in the last four digits of your social security number and the dates of work for which you were not paid.

**2. Date Debt Incurred:**
Fill in the date when the debt first was owed by the debtor.

**3. Court Judgments:**
If you have a court judgment for this debt, state the date the court entered the judgment.

**4. Total Amount of Claim at Time Case Filed:**
Fill in the applicable amounts, including the total amount of the entire claim. If interest or other charges in addition to the principal amount of the claim are included, check the appropriate place on the form and attach an itemization of the interest and charges.

**5. Secured Claim:**
Check the appropriate place if the claim is a secured claim. You must state the type and value of property that is collateral for the claim, attach copies of the documentation of your lien, and state the amount past due on the claim as of the date the bankruptcy case was filed. A claim may be partly secured and partly unsecured. (See DEFINITIONS, above.)

**6. Unsecured Nonpriority Claim:**
Check the appropriate place if you have an unsecured nonpriority claim, sometimes referred to as a "general unsecured claim". (See DEFINITIONS, above.) If your claim is partly secured and partly unsecured, state here the amount that is unsecured. If part of your claim is entitled to priority, state here the amount **not** entitled to priority.

**7. Unsecured Priority Claim:**
Check the appropriate place if you have an unsecured priority claim, and state the amount entitled to priority. (See DEFINITIONS, above). A claim may be partly priority and partly nonpriority if, for example, the claim is for more than the amount given priority by the law. Check the appropriate place to specify the type of priority claim.

**8. Credits:**
By signing this proof of claim, you are stating under oath that in calculating the amount of your claim you have given the debtor credit for all payments received from the debtor.

**9. Supporting Documents:**
You must attach to this proof of claim form copies of documents that show the debtor owes the debt claimed or, if the documents are too lengthy, a summary of those documents. If documents are not available, you must attach an explanation of why they are not available.