Hearing Date and Time:  February 18, 2010 at 10:00 a.m., E.T.
Objection Deadline:  February 11, 2010 at 4:00 p.m., E.T

JONES DAY
222 East 41st Street
New York, New York  10017
Telephone:  (212) 326-3939
Facsimile:  (212) 755-7306
Lisa G. Laukitis

JONES DAY
51 Louisiana Avenue NW
Washington, D.C.  20001
Telephone:  (202) 879-3939
Facsimile:  (202) 626-1700
Andrew M. Kramer

JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212
Heather Lennox
Robert S. Walker

Attorneys for General Motors LLC

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
--------------------------------------------------------------x
                                      :
In re                                 :   Chapter 11
                                      :
DPH HOLDINGS CORP., et al.,           :   Case No. 05-44481 (RDD)
                                      :
              Reorganized Debtors.    :   (Jointly Administered)
                                      :
--------------------------------------------------------------x
```

## NOTICE OF HEARING ON MOTION OF GENERAL MOTORS LLC (F/K/A GENERAL MOTORS COMPANY) TO ENFORCE MODIFIED PLAN AND PLAN MODIFICATION ORDER

**PLEASE TAKE NOTICE THAT:**

1.        A hearing on the Motion of General Motors LLC (f/k/a General Motors

Company) to Enforce Modified Plan and Plan Modification Order (the "Motion"),[1] filed by

General Motors LLC f/k/a General Motors Company ("New GM") shall be held before the

Honorable Robert D. Drain, United States Bankruptcy Judge, in Room 118 of the United States

Bankruptcy Court, Hon. Charles L. Brient Jr. Federal Building and Courthouse, 300 Quarropas

Street, White Plains, New York 10601, on **February 18, 2010 at 10:00 a.m. (New York time).**

2.        Objections, if any, to the relief sought in the Motion must be made in

writing, with a hard copy to Chambers, conform to the Federal Rules of Bankruptcy Procedure

and the Local Rules for the United States Bankruptcy Court for the Southern District of

New York and be filed with the Bankruptcy Court and must be served in accordance with the

Supplemental Order Under 11 U.S.C. §§ 102(1) and 105 and Fed. R. Bankr. P. 2002(m), 9006,

9007, and 9014 Establishing Omnibus Hearing Dates and Certain Notice, Case Management, and

Administrative Procedures, entered March 20, 2006 (Docket No. 2883), and the Sixteenth

Supplemental Order Under 11 U.S.C. §§ 102(1) and 105 and Fed. R. Bankr. P. 2002(m), 9006,

9007, and 9014 Establishing Omnibus Hearing Dates and Revising Certain Notice Procedures,

entered December 11, 2009 (Docket No. 19178), so as to be actually received by not later than

**4:00 p.m. (New York time) on February 11, 2010** (the "Objection Deadline").

3.        If no objections are timely filed and served with respect to this Motion,

New GM may, on or after the Objection Deadline, submit to the Court a final order substantially

in the form attached to such Motion, which final order may be entered with no further notice or

opportunity to be heard offered to any party.

4.        Copies of the Motion may be obtained from the Court's website at

http://ecf.nysb.uscourts.gov or free of charge, at http://www.dphholdingsdocket.com/dph.

---

[1]        Capitalized terms not otherwise defined herein shall have the meanings given to them in the Motion.

Dated: January 25, 2010
     New York, New York

Respectfully submitted,


./s/ Lisa G. Laukitis
Lisa G. Laukitis
JONES DAY
222 East 41st Street
New York, New York  10017
Telephone:  (212) 326-3939
Facsimile:  (212) 755-7306

Andrew M. Kramer
JONES DAY
51 Louisiana Avenue NW
Washington, D.C.  20001
Telephone:  (202) 879-3939
Facsimile:  (202) 626-1700

Heather Lennox
Robert S. Walker
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212

ATTORNEYS FOR GENERAL
MOTORS LLC

Hearing Date and Time:  February 18, 2010 at 10:00 a.m., E.T.
Objection Deadline:  February 11, 2010 at 4:00 p.m., E.T.

JONES DAY
222 East 41st Street
New York, New York  10017
Telephone:  (212) 326-3939
Facsimile:  (212) 755-7306
Lisa G. Laukitis

JONES DAY
51 Louisiana Avenue NW
Washington, D.C.  20001
Telephone:  (202) 879-3939
Facsimile:  (202) 626-1700
Andrew M. Kramer

JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212
Heather Lennox
Robert S. Walker

Attorneys for General Motors LLC


UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x
                                                                    :
In re                                                               :    Chapter 11
                                                                    :
DPH HOLDINGS CORP., *et al.*,                                       :    Case No. 05-44481 (RDD)
                                                                    :
                                    Reorganized Debtors.            :    (Jointly Administered)
                                                                    :
------------------------------------------------------------------x

## MOTION OF GENERAL MOTORS LLC
## (F/K/A GENERAL MOTORS COMPANY) TO
## ENFORCE MODIFIED PLAN AND PLAN MODIFICATION ORDER

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

Preliminary Statement ................................................................................................. 1

Background ................................................................................................................... 2

    The Chapter 11 Filings ............................................................................................ 2

    Old GM's Involvement in These Chapter 11 Cases ............................................... 3

    The Termination of the Salaried Plan .................................................................... 6

    The Salaried Plaintiffs and the Plan Objection ..................................................... 7

    The Michigan Civil Action Brought by the Salaried Plaintiffs ............................. 8

Jurisdiction ................................................................................................................ 10

Relief Requested ....................................................................................................... 11

Relevant Provisions of this Court's Prior Orders and Related Documents ............... 11

    Relevant Provisions of the Modified Plan ........................................................... 11

    Relevant Provisions of the Plan Modification Order ........................................... 14

    Relevant Provisions of the Delphi-GM Global Settlement Agreement ............... 19

Argument .................................................................................................................. 21

    This Court Has the Authority to Enforce the Modified Plan and the Plan
        Modification Order ........................................................................................ 22

    The Michigan Civil Action Violates the Modified Plan and the Plan Modification
        Order ............................................................................................................. 23

    The Michigan Civil Action is an Improper Collateral Attack on this Court's Plan
        Modification Order in the Michigan District Court ....................................... 26

    New GM Will Suffer Harm Should the Salaried Plaintiffs Continue to Prosecute
        the Michigan Civil Action Against New GM ................................................ 28

    Reservation of Rights ........................................................................................... 28

Notice ....................................................................................................................... 29

Prior Request ............................................................................................................ 29

## TABLE OF EXHIBITS

**Exhibit**

Plan Modification Order (with Modified Plan) ......................................................................... A

Delphi-GM Global Settlement Agreement ................................................................................B

First Amended Complaint...........................................................................................................C

Letter to Counsel for Salaried Plaintiffs ................................................................................. D

Letter from Counsel for Salaried Plaintiffs...............................................................................E

In re Old Carco LLC Opinion ................................................................................................... F

In re Spiegel Inc. Opinion ....................................................................................................... G

Proposed Order ......................................................................................................................... H

# TABLE OF AUTHORITIES

**Page**

CASES

Back v. AM Gen. Corp. (In re Chateaugay Corp.),
    213 B.R. 633 (S.D.N.Y. 1997)..................................................................................................22, 27

Balanoff v. Glazier (In re Steffan),
    97 B.R. 741 (Bankr. N.D.N.Y 1989) ...................................................................................28

Celotex v. Edwards,
    514 U.S. 300 (1995).................................................................................................26, 28

DePippo v. Kmart Corp.,
    335 B.R. 290 (S.D.N.Y. 2005).................................................................................................22

In re Chief Executive Officers Clubs, Inc.,
    359 B.R. 527 (Bankr. S.D.N.Y. 2007).................................................................................................29

In re Continental Airlines, Inc.,
    236 B.R. 318 (Bankr. D. Del. 1999) ...................................................................................22, 23

In re Kalpana Elecs., Inc.,
    58 B.R. 326 (Bankr. E.D.N.Y. 1986).................................................................................................22

In re Old Carco LLC (f/k/a Chrysler LLC),
    Case No. 09-50002 (AJG) (Bankr. S.D.N.Y. Aug. 31, 2009) .................................................27

In re Spiegel Inc.,
    2006 WL 2577825 (Bankr. S.D.N.Y. Aug. 16, 2006) ...........................................................27

Kokkenen v. Guardian Life Insurance Company of America,
    511 U.S. 375 (1994).................................................................................................23

Travelers Indemnity Co. v. Bailey,
    129 S. Ct. 2195 (2009).................................................................................................22, 23, 27

STATUTES

11 U.S.C. § 105.................................................................................................11, 14, 15, 16, 22, 26

11 U.S. C. § 363.................................................................................................6

11 U.S.C. § 1123.................................................................................................14, 15, 16, 17

11 U.S.C. § 1127.................................................................................................2

## TABLE OF AUTHORITIES
(continued)

**Page**

11 U.S.C. § 1129 ....................................................................................................15, 16

11 U.S.C. § 1141 ....................................................................................................11, 22

28 U.S.C. § 157 ............................................................................................................11

28 U.S.C. § 1334 ....................................................................................................10, 15

28 U.S.C. § 1408 ..........................................................................................................11

28 U.S.C. § 1409 ..........................................................................................................11

29 U.S.C. § 1341 ..........................................................................................................17

29 U.S.C. § 1342 ....................................................................................................17, 18

### OTHER AUTHORITIES

Fed. R. Bankr. P. 3020 .......................................................................................11, 16, 23

Fed. R. Bankr. P. 7001 ...........................................................................................11, 23

Fed. R. Bankr. P. 9014 ..................................................................................................23

Fed. R. Bankr. P. 9020 ...........................................................................................11, 29

First Amendment to the United States Constitution ....................................................10

Fifth Amendment to the United States Constitution ....................................................10

TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:

General Motors LLC f/k/a General Motors Company ("New GM") respectfully

represents as follows:

## **Preliminary Statement**

1.      These chapter 11 cases have a very long and complex history.  Along the

way, the Debtors[1] were forced to make some difficult decisions regarding the treatment of

various constituencies, including their retirees.  To confirm a plan of reorganization in these

cases, the Debtors received assistance from numerous parties, including substantial assistance

from Old GM and New GM.

2.      Among the difficult decisions that the Debtors had to make was the

treatment of certain employee legacy obligations, including their pensions plans, which

represented some of the Debtors' most significant liabilities.  The Debtors conducted extensive

negotiations with the PBGC, Old GM, New GM, their unions and various other parties and

ultimately entered into several settlement agreements and labor agreements regarding the

treatment of these pensions plans as the Debtors emerged from bankruptcy.  The Debtors

provided notice to their current and former employees and other constituencies regarding the

proposed settlements and treatment of the pension plans, as incorporated in the Debtors'

Modified Plan.  After notice and hearing, on July 30, 2009, this Court entered the Plan

Modification Order, which approved the Modified Plan and granted releases relating to these

employee matters to numerous parties involved in the process, including Old GM and New GM.

---

[1]      Capitalized terms used in this Preliminary Statement shall have the meanings given to them later in this
Motion.

3.      By this Motion, as described more particularly below, New GM seeks to enforce the release provisions in this Court's Plan Modification Order and the Modified Plan. Specifically, New GM has been sued by certain of the Debtors' salaried retirees in the United States District Court for the Eastern District of Michigan for claims and causes of action that have been released under the Plan Modification Order and the Modified Plan. New GM wrote to the Salaried Plaintiffs, informed them of the provisions of the Modified Plan, this Court's Plan Modification Order and the releases therein and requested that the Salaried Plaintiffs dismiss New GM from the lawsuit with prejudice. The Salaried Plaintiffs refused. Accordingly, New GM requests that this Court require the Salaried Plaintiffs to dismiss New GM from such lawsuit with prejudice.

## Background

### *The Chapter 11 Filings*

4.      On October 8 and 14, 2005, Delphi Corporation and certain of its affiliates (collectively, the "Debtors"), predecessors of the above-captioned reorganized debtors (the "Reorganized Debtors"), filed voluntary petitions in this Court for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

5.      On December 10, 2007, the Debtors filed their first amended joint plan of reorganization (Docket No. 11386) (the "Confirmed Plan") and related disclosure statement (Docket No. 11388). The Court entered an order confirming the Confirmed Plan (as modified) (Docket No. 12359) (the "Confirmation Order") on January 25, 2008.

6.      On October 3, 2008, the Debtors filed a motion under section 1127 of the Bankruptcy Code for an order approving (i) certain modifications to the Confirmed Plan and related disclosure statement and (ii) related procedures for re-soliciting votes on the Confirmed Plan, as modified (Docket No. 14310) (the "Plan Modification Motion"). On June 1, 2009, the

Debtors filed a supplement to the Plan Modification Motion (the "Motion Supplement"), which

sought approval of (i) certain modifications to the Confirmed Plan (the "Modified Plan"),[2]

(ii) supplemental disclosure and (iii) procedures for re-soliciting votes on the Modified Plan.

After holding a final plan modification hearing on July 29 and 30, 2009, this Court entered an

order approving the Modified Plan (Docket No. 18707) on July 30, 2009 (the "Plan Modification

Order").  A copy of the Plan Modification Order, with the Modified Plan included as an exhibit,

is attached hereto as Exhibit A.

        7.      On October 6, 2009, the Debtors substantially consummated the Modified

Plan, the Effective Date occurred, and the transactions under the Master Disposition Agreement

and related agreements closed.  In connection therewith, DIP Holdco 3, LLC, a Delaware limited

liability company ("DIP Holdco"), acquired substantially all of the Debtors' global core

businesses, and GM Components Holdings, LLC, a Delaware limited liability company ("GM

Components"), acquired the Debtors' noncore steering business and certain U.S. manufacturing

plants.  The Reorganized Debtors have emerged from chapter 11 as DPH Holdings Corp. and

affiliates and remain responsible for the post-Effective Date administration and eventual closing

of the Chapter 11 Cases as well as the disposition of certain retained assets and payment of

certain retained liabilities as provided for under the Modified Plan.

**_Old GM's Involvement in These Chapter 11 Cases_**

        8.      As this Court is aware, the Reorganized Debtors had a long and complex

relationship with General Motors Corporation n/k/a Motors Liquidation Company ("Old GM").

In fact, Debtor Delphi Corporation ("Delphi") was incorporated in Delaware in 1998 as a wholly-

owned subsidiary of Old GM.  Prior to January 1, 1999, Old GM conducted the Debtors'

---

[2]      Capitalized terms not otherwise defined herein shall have the meanings given to them in the Modified Plan.

business through various divisions and subsidiaries.  Effective as of January 1, 1999, the assets

and liabilities of these divisions and subsidiaries were transferred to the Debtors.  The Debtors'

separation from Old GM was completed in May 1999.  After the separation, the Debtors and

Old GM maintained a business relationship by which Old GM remained one of the Debtors'

largest customers.

9.      Because of their shared corporate history and continued substantial

business relationship, Old GM — and, later New GM — was an active participant in the Debtors'

Chapter 11 Cases and played an integral part in the Debtors' emergence from chapter 11.  In fact,

one of the key settlements included in the Confirmed Plan was the agreement between the

Debtors and Old GM that was memorialized in the Global Settlement Agreement and Master

Restructuring Agreement (respectively, the "Original GSA" and the "Original MRA").  These

agreements were first entered into by the parties on September 6, 2007 and were intended to

finalize Old GM's financial support for the Debtors' legacy and labor costs and ascertain

Old GM's business commitment to the Debtors.

10.     Subsequently, in September 2008 and prior to the consummation of the

Original GSA and the Original MRA, Delphi and Old GM entered into an amended and restated

Global Settlement Agreement (the "Amended GSA" or the "Delphi-GM Global Settlement

Agreement") and an amended and restated Master Restructuring Agreement (the "Amended

MRA") under which Old GM agreed to contribute additional substantial value to the Debtors and

eliminate significant elements of conditionality to the performance of its obligations.  A copy of

the Delphi-GM Global Settlement Agreement is attached hereto as Exhibit B.  Delphi estimated

the value of Old GM's net contributions to the Debtors under the Amended GSA and the

Amended MRA to be approximately $10.6 billion, $4.6 billion more than Old GM's net

contributions under the Original GSA and the Original MRA included in the Confirmed Plan.

The Court approved the Amended GSA and the Amended MRA on September 26, 2008 (see

Docket No. 14287), and they became effective on September 29, 2008.

11.    In addition to the settlement agreements with Old GM that formed the

basis of the Modified Plan, the Debtors received substantial financial support from Old GM as

they worked toward achieving modifications to the Confirmed Plan.  In April 2008, for example,

the Court authorized the Debtors to enter into an arrangement under which Old GM agreed to

advance up to $650 million to the Debtors to address the Debtors' need for liquidity (the "GM

Arrangement").  (See Docket No. 13489.)  Subsequently, Old GM addressed the Debtors' severe

liquidity crisis during the global financial crisis beginning in late 2008 by making $600 million

in additional liquidity available to the Debtors through amendments to the GM Arrangement and

certain advances of trade payables.

12.    In the early part of 2009, the Debtors engaged in discussions with Old GM

concerning a potential transaction in which the Debtors would sell certain of their North

American assets to Old GM.  Ultimately, after a competitive auction held on July 27, 2009, the

Court entered the Plan Modification Order, approving the Modified Plan and the transactions

contemplated under the Master Disposition Agreement, including the sale of certain of the

Debtors' assets to DIP Holdco and GM Components, as described above.

13.    On June 1, 2009, Old GM and certain affiliates filed their own chapter 11

cases in this district.  Pursuant to an order entered in those cases on July 5, 2009 (Case No. 09-

50026; Docket No. 2968) (the "GM Sale Order"), Old GM sold substantially all of its assets to

New GM, pursuant to section 363 of the Bankruptcy Code, free and clear of all liens, claims and encumbrances.[3]

### *The Termination of the Salaried Plan*

14.     One of the key issues that the Debtors had to address in order to emerge from chapter 11 was their employee legacy costs and related pension obligations.  Despite the Debtors' efforts to preserve their pensions plans during these Chapter 11 Cases, the Debtors were unable to secure sufficient capital to achieve that objective.  Several of the Debtors' pension plans, including the Delphi Retirement Program for Salaried Employees (the "Salaried Plan"), were severely underfunded.  In connection with the Salaried Plan, the Pension Benefit Guaranty Corporation (the "PBGC") had asserted that the Debtors and certain non-U.S. affiliates of the Debtors were liable for contributions due to the plan for under-funded obligations.

15.     To bring about a global resolution of the Debtors' pension issues and the claims asserted by the PBGC, the Debtors entered into a settlement with the PBGC on July 21, 2009 (Docket No. 18559) (the "Delphi-PBGC Settlement Agreement").  Pursuant to the Delphi-PBGC Settlement Agreement, the Debtors agreed to the termination of the Salaried Plan, which termination was initiated by the PBGC.  The Delphi-PBGC Settlement Agreement was attached as Exhibit 7.17 of the Modified Plan and was approved by this Court pursuant to the Plan Modification Order.  (See Plan Modification Order at ¶ 60.)

16.     In connection with the spin-off of the Debtors' business from Old GM in 1999, Old GM agreed to guarantee certain benefits to unionized employees of the Debtors, such

---

[3]     Pursuant to this Motion, New GM is seeking an order to enforce the Modified Plan and the Plan Modification Order to prevent the prosecution of the Michigan Civil Action (as such term is defined below) against New GM.  The Michigan Civil Action against New GM is also barred by the GM Sale Order, which contains language that authorizes the sale of Old GM's assets to New GM free and clear of any and all claims relating to the Salaried Plan (as such term is defined below).  (See GM Sale Order at ¶¶ AA, BB, DD, 6-11, 15, 46, 48 and 52.)  New GM reserves the right to seek an order in the chapter 11 cases of Old GM to enforce the GM Sale Order with respect to the Michigan Civil Action.

as through the UAW Benefit Guarantee, dated September 30, 1999.  The treatment of benefits

for the Debtors' unionized employees, and the Debtors' and Old GM's respective obligations

regarding such benefits, were major issues in these Chapter 11 Cases and resulted in a number of

settlements and labor agreements among the Debtors, Old GM and the Unions that were

repeatedly vetted in this Court.  Among these were the Labor MOUs (as such term is defined in

the Plan Modification Order) in which Old GM specifically agreed, among other things, to pay

and perform certain obligations related to the Delphi union pension plans.  For example, in the

UAW-Delphi-GM Memorandum of Understanding, as approved by order of the Court on

July 19, 2007 (Docket No. 8693), Old GM agreed to extend the time to trigger certain of

Old GM's obligations under the UAW Benefit Guarantee.  (See UAW-Delphi-GM Memorandum

of Understanding at § F.2.)  In addition, Old GM clarified its obligations under the Labor MOUs

with respect to the Debtors' pension plans in the Delphi-GM Global Settlement Agreement.  (See

Delphi-GM Global Settlement Agreement § 2.03.)  In none of these settlements or labor

agreements, however, did either Old GM or New GM agree to pay or perform any obligations

related to the Salaried Plan.  The Delphi-GM Global Settlement Agreement was attached as

Exhibit 7.20(a) of the Modified Plan and was approved by this Court pursuant to the Plan

Modification Order.  (See Plan Modification Order at ¶¶ 1, 57.)  Similarly, in addition to

approving the Labor MOUs by a series of orders in 2007, the Court provided in the Plan

Modification Order that the Labor MOUs shall be assumed and assigned to GM Components or

DIP Holdco, as applicable, and "shall not be in conflict with any federal or state law."  (See Plan

Modification Order at ¶ 61.)

### *The Salaried Plaintiffs and the Plan Objection*

17.     Dennis Black, Charles Cunningham and Kenneth Hollis (the "Salaried

Employees") are retired employees of the Debtors.  They receive pension benefits from the

Salaried Plan.  The Delphi Salaried Retiree Association (the "Retiree Association" and, together

with the Salaried Employees, the "Salaried Plaintiffs") is a nonprofit organization, comprised of

participants in the Salaried Plan and dependents of participants who are beneficiaries in the

Salaried Plan.

18.    Each of the Salaried Employees and counsel to the Retiree Association

received notice of the hearing on the Modified Plan (See Docket No. 17267).  On July 15, 2009,

the Retiree Association and two of the Salaried Employees filed an objection in this Court to the

Modified Plan (Docket No. 18277) (the "Plan Objection") on the grounds that the Modified Plan

contemplated the termination of the Salaried Plan.  The Plan Objection set forth various

arguments as to why the Salaried Plan could not be terminated, including an alleged conflict of

interest by the plan administrator and the failure of the PBGC to follow proper procedures in

terminating the plan.  The Plan Objection did not raise any objection related to GM's obligations

in respect of the Delphi hourly pension plans or the lack of any GM-related obligation in respect

of the Salaried Plan in section 2.03 of the Delphi-GM Global Settlement Agreement.  This Court

overruled the Plan Objection in the Plan Modification Order, and confirmed the Modified Plan,

including the approval of the termination of the Salaried Plan pursuant to the Delphi-PBGC

Settlement Agreement and approval of the GM-Delphi Global Settlement Agreement.  (See Plan

Modification Order at ¶¶ KK and 1, 57, 60.)

### *The Michigan Civil Action Brought by the Salaried Plaintiffs*

19.    On September 14, 2009, the Salaried Plaintiffs filed a complaint (the

"Complaint") against the PBGC in the United States District Court for the Eastern District of

Michigan, Southern Division (the "Michigan District Court"), which was assigned Case

No. 2:09-cv-13616 (the "Michigan Civil Action").  In the Complaint, the Salaried Plaintiffs

asserted several causes of action against the PBGC relating to the termination of the Salaried

Plan and the alleged losses to pension benefits that the Salaried Plaintiffs will suffer as a result of such termination.

20.    On November 5, 2009, the Salaried Plaintiffs filed a first amended complaint (the "First Amended Complaint") in the Michigan Civil Action, adding a cause of action and several new defendants.  A copy of the First Amended Complaint is attached hereto as Exhibit C.  Among the newly named defendants in the First Amended Complaint is New GM, which has been included in Count 5 for an alleged violation of the "Equal Protection component" of the Fifth Amendment and the First Amendment's associational and speech guarantees.

21.    The Salaried Plaintiffs allege that New GM, acting at the direction of the United States government, decided to "top-up" the pension benefits for certain limited groups of Delphi employees, specifically the hourly workers represented by the United Auto Workers union (the "UAW"), but did not top-up the benefits for the Salaried Plaintiffs under the terminated Salaried Plan.  (See First Amended Complaint at ¶ 36.)  The Salaried Plaintiffs allege that the result of this top-up is that the UAW benefits that would otherwise be lost because of limits and exclusions resulting from PBGC's policies in connection with terminated pension plans would be made up by New GM.  (See id.)

22.    The Salaried Plaintiffs allege that due to the Treasury Department's extensive involvement in New GM's management and control, New GM was acting as a government actor in deciding to which of the Debtors' employees to provide pension top-up benefits, and thus New GM's decisions are subject to a claim under the United States Constitution.  (See id. at ¶ 62.)  The Salaried Plaintiffs allege that, because New GM's pension top-up decisions allegedly were made on the basis of union affiliation, and not on the basis of any relevant extenuating circumstances or legitimate public purpose, such alleged discrimination

against similarly situated retirees violates the "Equal Protection component" of the Fifth

Amendment to the United States Constitution and the First Amendment's associational and

speech guarantees.  (See id. at ¶ 59.)  As a remedy, the Salaried Plaintiffs seek an order from the

Michigan District Court requiring New GM to top-up the Salaried Plan or to distribute the funds

allocated to the union-affiliated plans in equal measure with the Salaried Plan.  (See id. at ¶ 63.)

The Salaried Plaintiffs also seek compensatory and punitive damages against New GM for the

alleged violations to the Salaried Plaintiffs' constitutional rights.  (See id. at ¶ 64.)

## Jurisdiction

23.    This Court has subject matter jurisdiction to consider this matter pursuant

to 28 U.S.C. § 1334 and Article XIII of the Modified Plan.[4]  This is a core proceeding pursuant

---

[4]    Pursuant to Article XIII of the Modified Plan, this Court retained exclusive jurisdiction over a number of matters relating to the Modified Plan and the Plan Modification Order, including the following matters, among others:

(b)    to adjudicate any and all adversary proceedings, applications, and contested matters that may be commenced or maintained pursuant to the Chapter 11 Cases, this Plan, or that were the subject of proceedings before the Bankruptcy Court prior to the Effective Date, proceedings to adjudicate the allowance of Disputed Claims and Disputed Interests, and all controversies and issues arising from or relating to any of the foregoing;

(g)    to issue orders in aid of execution, implementation, or consummation of this Plan;

(h)    to consider any modifications of this Plan, to cure any defect or omission, or to reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order or Modification Approval Order;

(k)    to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan the Confirmation Order, or the Modification Approval Order, including disputes arising under agreements, documents, or instruments executed in connection with this Plan; provided that retention of jurisdiction as to disputes involving GM or GMCo. shall be as set forth in Article XIII (u);

(o)    to hear any other matter not inconsistent with the Bankruptcy Code;

(r)    to enforce all orders previously entered by the Bankruptcy Court;

(u)    to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Delphi-GM Definitive Documents and the Master Disposition Agreement, except as provided in such documents; and

(v)    to hear and determine all matters relating to the Contingent PBGC Secured Claims or the Delphi-PBGC Settlement Agreement.

Modified Plan at Art. XIII.

to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and

1409.

**Relief Requested**

24.    Pursuant to sections 105 and 1141 of the Bankruptcy Code and

Rules 3020(d), 7001(7) and 9020 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"), New GM hereby seeks the entry of an order:  (a) enforcing the Modified

Plan and Plan Modification Order; and (b) enjoining the Salaried Plaintiffs from prosecuting the

Michigan Civil Action against New GM.

**Relevant Provisions of this Court's Prior Orders and Related Documents**

*Relevant Provisions of the Modified Plan*

25.    The Modified Plan provides a broad exculpation and limitation of liability

for a number of parties relating to their actions taken in connection with the Modified Plan and

corresponding documents, including Old GM and New GM.  Specifically, Section 11.11 of the

Modified Plan provides as follows:

> **11.11 Exculpation And Limitation Of Liability**.  Subject to
> Article 11.13 of this Plan, the Debtors, the Reorganized Debtors,
> the Statutory Committees, the members of the Statutory
> Committees in their capacities as such, the UAW, the IUE-CWA,
> the USW, the IAM, the IBEW, the IUOE, the DIP Agent, the DIP
> Lenders in their capacities as such, **GM, GMCo.,**[5] Parnassus
> Holdings II, LLC, Platinum Equity Capital Partners II, L.P., the
> Indenture Trustees in their capacities as such, and any of such
> parties' respective current or former members, officers, directors,
> committee members, affiliates, employees, advisors, attorneys,
> representatives, accountants, financial advisors, consultants,
> investment bankers, or agents, and any of such parties' successors
> and assigns, shall not have or incur, and **are hereby released from,**
> **any claim, obligation, Cause of Action, or liability to any party,**
> **or any of its agents, employees, representatives, current or**
> **former members, financial advisors, attorneys or affiliates, or**

---

[5]    New GM is defined as "GMCo." in the Modified Plan.

**any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of the Debtors' Chapter 11 Cases, the negotiation and filing of this Plan, the filing of the Chapter 11 Cases, the formulation, preparation, negotiation, dissemination, filing, implementation, administration, confirmation or consummation of this Plan, the Disclosure Statement, the Credit Bid, the Plan Exhibits, the Delphi-GM Definitive Documents**, the Delphi-PBGC Settlement Agreement, the Master Disposition Agreement, the Union Settlement Agreements, **any employee benefit plan, instrument, release or other agreement or document created, modified, amended or entered into in connection with either this Plan or any agreement with the Unions**, including but not limited to the Union Settlement Agreements, or any other act taken or not taken consistent with the Union Settlement Agreements in connection with the Chapter 11 Cases, except for their willful misconduct and gross negligence and except with respect to obligations arising under confidentiality agreements, joint interest agreements, and protective orders entered during the Chapter 11 Cases, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under this Plan.  **Other than as provided for in this Article and in Article 11.13, no party or its agents, employees, representatives, current or former members, financial advisors, attorneys, or affiliates, and no successors or assigns of the foregoing, shall have any right of action against the parties listed in this Article for any act or omission in connection with, relating to, or arising out of the Chapter 11 Cases, the formulation, preparation, negotiation, dissemination, filing, implementation, administration, confirmation or consummation of this Plan, the Disclosure Statement, the Delphi-GM Definitive Documents,** the Delphi-PBGC Settlement Agreement, the Credit Bid, the Master Disposition Agreement, the Union Settlement Agreements, **any employee benefit plan, instrument, release or other agreement or document created, modified, amended or entered into in connection with either this Plan or any agreement with the Unions**, including but not limited to the Union Settlement Agreements, or any other act taken or not taken consistent with the Union Settlement Agreements in connection with the Chapter 11 Cases.  For the avoidance of doubt, the exculpatory provisions of this Article, which apply to postpetition conduct, are not intended, nor shall they be construed, to bar any governmental unit from pursuing any police or regulatory action. Moreover, nothing in this Plan shall be deemed to release (i) any of the Debtors or GM from their obligations under the Delphi-GM Definitive Documents or the transactions contemplated thereby,

(ii) any of the Debtors, the Unions, or GM from their obligations under the Union Settlement Agreements or the transactions contemplated thereby, (iii) any of the Debtors or the Buyers from their obligations under the Disposition Agreements, (iv) any of the Debtors or the Plan Investors or their affiliates from their obligations under the Investment Agreement or the transactions contemplated thereby, or (v) any of the Debtors from their obligations under this Plan or the transactions contemplated thereby.

Modified Plan at § 11.11 (emphasis added).

26.     Moreover, Section 11.8 of the Modified Plan specifically provides that

New GM will be entitled to the releases set forth in the Delphi-GM Global Settlement

Agreement (which is described below at ¶ 28):

**11.8     Release of GMCo. By Debtors And Third Parties**.  On the Effective Date, GMCo. [New GM] shall receive the same releases provided for GM-Related Parties (as defined in the Delphi-GM Global Settlement Agreement) in Section 4.01 of the Delphi-GM Global Settlement Agreement as though it were a party thereto, which provisions are incorporated by reference herein in their entirety; provided, however, that for purposes of Section 4.02 of the Delphi-GM Global Settlement Agreement, GMCo. shall grant to the Debtors the same releases provided by GM and the GM-Related Parties (as defined in the Delphi-GM Global Settlement Agreement).

Modified Plan at § 11.8.

27.     In addition, Section 11.14 of the Modified Plan enjoins any party from

bringing an action with respect to any claim or cause of action that is released under the

Modified Plan:

**11.14     Injunction**.   Subject to Article 11.13 of this Plan, the satisfaction, release, and discharge pursuant to this Article XI shall act as an injunction against any Person commencing or continuing any action, employment of process, or act to collect, offset, or recover any Claim, Interest, or Cause of Action satisfied, released, or discharged under this Plan to the fullest extent authorized or provided by the Bankruptcy Code, including, without limitation, to the extent provided for or authorized by sections 524 and 1141 thereof.

Modified Plan at § 11.14.

### *Relevant Provisions of the Plan Modification Order*

28.     Paragraph 20 of the Plan Modification Order expressly approves the

releases, exculpation and limitation of liability provisions set forth in the Plan:

> 20.     <u>Discharge, Releases, Limitations Of Liability, And
> Indemnification</u>.   Pursuant to applicable law, including
> sections 105(a) and 1123(b)(3) and (6) of the Bankruptcy Code,
> the discharge of the Debtors and any of their assets or properties
> provided in Article 11.2 of the Modified Plan, as approved herein,
> the releases set forth in Articles 11.4, 11.5, 11.6, and 11.7 of the
> Modified Plan, and the exculpation and limitation of liability
> provisions set forth in Article 11.11 of the Modified Plan, are
> deemed incorporated in this order as if set forth in full herein and
> are hereby approved as an integral part of the Modified Plan and
> are fair, equitable, reasonable and in the best interests of the
> Debtors, their estates, and holders of Claims and Interests;
> <u>provided</u>, <u>however</u>, notwithstanding anything in this order, the
> exculpation provisions or releases provided pursuant to Article 11
> of the Modified Plan shall have no effect on the liability of any
> entity that otherwise would result from any action or omission to
> the extent that such action or omission is determined in a final
> order to have constituted intentional fraud or willful misconduct.

Plan Modification Order at ¶ 20.

29.     In approving such release and exculpation provisions, the Court found in

the Plan Modification Order that the provisions were integral to the Modified Plan, and

specifically made certain findings relating to the justifications for the releases for Old GM, New

GM and related parties:

> JJ.     <u>Releases And Discharges</u>.

> 1.     <u>In General</u>.   The discharge, release, indemnification, and
> exculpation provisions of the Modified Plan and the MDA
> Documents as approved by this order constitute good faith
> compromises and settlements of the matters covered thereby.  Such
> compromises and settlements are made in exchange for
> consideration and are in the best interests of the Debtors, their
> Estates, and holders of Claims, are fair, equitable, reasonable, and
> are integral elements of the restructuring and resolution of the

Chapter 11 Cases in accordance with the Modified Plan. Each of the discharge, release, indemnification, and exculpation provisions set forth in the Modified Plan, as approved in this order:

(a)    is within the jurisdiction of the Court under 28 U.S.C. §§ 1334(a), (b), and (d),

(b)    is an essential means of implementing the Modified Plan pursuant to section 1123(a)(5) of the Bankruptcy Code,

(c)    is an integral element of the settlements and transactions incorporated into the Modified Plan,

(d)    confers material benefit on, and is in the best interests of, the Debtors, their estates, and the holders of Claims,

(e)    is important to the overall objectives of the Modified Plan to finally resolve all Claims among or against the parties-in-interest in the Chapter 11 Cases with respect to the Debtors, their organization, capitalization, operation, and reorganization, and

(f)    is consistent with 11 U.S.C. §§ 105, 1123, and 1129, and other applicable provisions of the Bankruptcy Code.

The failure to effect the discharge, release, indemnification, and exculpation provisions set forth in the Modified Plan and MDA Documents, as approved by this order, would seriously impair the Debtors' ability to confirm and implement the Modified Plan and consummate the Master Disposition Agreement.

**2.    Releases Of GM-Related Parties and GMCo.    The releases of GM-Related Parties (as defined in the Delphi-GM Global Settlement Agreement) and GMCo. by the Debtors and third parties (collectively, the "GM Releases") pursuant to Sections 11.7 and 11.8, respectively, of the Modified Plan, which are described in Article IV of the Delphi-GM Global Settlement Agreement, (i) are fair and equitable, reasonable, and in the best interests of the Debtors' estates and holders of Claims, (ii) are supported by truly unusual circumstances that render the release terms important to the process of the Modified Plan, and (iii) are integral elements of the restructuring and resolution of the Chapter 11 Cases. More specifically, factors which support the approval of the GM Releases include, without limitation:**

(a)    As acknowledged by the Debtors in section 4.01(l) of the Delphi-GM Global Settlement Agreement, the consideration GM provided and will provide pursuant to the Delphi-GM Definitive

Documents, the Union Settlement Agreements, and other agreements entered into as part of the Debtors' reorganization constitutes a material, substantial contribution to the Debtors' estates;

(b)    GM's contribution is necessary to the success of the Modified Plan because GM's consideration provides a substantial source of funds to the Debtors' estates and allows substantial distributions to be made to the holders of Claims and Interests;

(c)    The GM Releases are an important part of the Modified Plan because, as set forth in section 4.01(l) of the Delphi-GM Global Settlement Agreement, and as acknowledged by the Debtors, GM would not have agreed to make these substantial contributions to the Debtors' estates without obtaining the GM Releases;

(d)    The breadth of the GM Releases is necessary to the Modified Plan and bears a reasonable relationship to the protection of the Debtors' estates; and

(e)    Absent the Delphi-GM Global Settlement Agreement and the GM Releases, as a result of existing indemnification agreements and GM's filed claims for indemnification and contribution, the third-party claims that are being released thereby may have indirectly impacted the Debtors and/or Reorganized Delphi.

**Accordingly, the GM Releases, including the third-party releases, are consistent with sections 105, 1123, and 1129 of the Bankruptcy Code and the law in the Second Circuit, and should be, and hereby are, approved.**

Plan Modification Order at ¶ JJ (emphasis added).

30.    Paragraph 7 of the Plan Modification Order makes clear that the Plan

Modification Order and the terms of the Modified Plan are binding on all creditors and interested

parties in the Debtors' Chapter 11 Cases, which would include the Salaried Plaintiffs:

7.    Effects Of This Order; Immediate Effectiveness; Successors And Assigns.    The stay provided by Bankruptcy Rule 3020(e) shall not apply to this order.  Immediately upon the entry of this order, this order and the terms of the Modified Plan (subject to the provisions of Articles 12.2 and 12.3 of the Modified Plan) shall be deemed binding upon (a) the Debtors, (b) the

Reorganized Debtors, (c) GM, (d) the DIP Lenders, **(e) all holders of Claims against and Interests in the Debtors, whether or not Impaired under the Modified Plan and whether or not, if Impaired, such holders accepted the Modified Plan**, (f) each Person acquiring property under the Modified Plan, (g) any other party-in-interest, **(h) any Person making an appearance in these Chapter 11 Cases, and (i) each of the foregoing's respective heirs, successors, assigns, trustees, executors, administrators, affiliates, officers, directors, agents, representatives, attorneys, beneficiaries, or guardians.**

Plan Modification Order at ¶ 7 (emphasis added).

31.    In addition, paragraph 22 of the Plan Modification Order provides for an injunction that prohibits any person from, among other things, asserting any claims or causes of action that are "satisfied, discharged, released, or subject to exculpation" by the Plan Modification Order or the Modified Plan.  (Plan Modification Order at ¶ 22.)

32.    In addition, paragraph 60 of the Plan Modification Order specifically approved the Delphi-PBGC Settlement Agreement, which , among other things approved the termination of the Salaried Plan, and approved the releases set forth in the Delphi-PBGC Settlement Agreement of all liabilities relating to unpaid contributions to Pension Plans:

(a)    **The Delphi-PBGC Settlement Agreement is hereby authorized and approved pursuant to section 1123(b)(3) of the Bankruptcy Code.**  The Debtors are authorized, but not directed, to enter into the Delphi-PBGC Settlement Agreement and to perform in accordance with its terms, including to enter into or cause the entry into such other documentation as may be reasonably necessary to effectuate the terms of the Delphi-PBGC Settlement Agreement, including the execution and delivery of termination and trusteeship agreements and any and all waivers, releases, discharges, exculpations, or other agreements or documents.  Section 4042 of ERISA, 29 U.S.C. § 1342, authorizes PBGC to seek termination of a pension plan upon making certain findings notwithstanding the provisions of a collective bargaining agreement and further permits the PBGC and the plan administrator to agree to termination of a plan without an adjudication.    Section  § 4041(a)(3)  of  ERISA,  29  U.S.C. § 1341(a)(3).  **Upon the effectiveness of the Delphi-PBGC Settlement Agreement, all liabilities relating to unpaid**

> **contributions to the Pension Plans shall be released or discharged as set forth therein**.

Plan Modification Order at ¶ 60 (emphasis added).

33. Finally, paragraph 61 of the Plan Modification Order authorizes the assumption and assignment of the Labor MOUs and provides that the Labor MOUs are not in conflict with any federal or state law:

> 61. <u>Labor MOUs</u>.
>
> (a) <u>GM Buyer</u>.    Pursuant to the Modified Plan, upon the Effective Date and notwithstanding any other provisions of the Master Disposition Agreement, **the applicable Labor MOUs (which shall include all related collectively bargained agreements and obligations, including grievances), shall be assumed and assigned to the GM Buyer, and shall not be in conflict with any federal or state law**; provided, however, that if the Delphi HRP is terminated pursuant to section 4042 of ERISA, 29 U.S.C. § 1342, there shall be no obligation by the Debtors to assume or cure any obligations claimed to exist under the HRP or any related provision of the collective bargaining agreements. Further, regardless of whether the Delphi HRP is terminated, the GM Buyer shall not be deemed to have assumed, and shall have no obligations with regard to, the Delphi HRP or any related provision of the collective bargaining agreements.
>
> (b) <u>Company Buyer</u>.    Upon the Effective Date, the Company Buyer will assume the terms and conditions of the applicable Labor MOUs (which shall include all related collectively bargained agreements and obligations), as well as liability for pre-closing grievances and accrued wages and benefits (including vacation and sick pay), but not including any liability under the Retained Plans, as such term is defined in section 2.3.3 of the Master Disposition Agreement) and **the Debtors shall assume and assign the applicable Labor MOUs to the Company Buyer, which Labor MOUs shall not be in conflict with any federal or state law** . . . .

Plan Modification Order at ¶ 61 (emphasis added).

*Relevant Provisions of the Delphi-GM Global Settlement Agreement*

34.    As described above, Section 11.8 of the Modified Plan expressly grants to

New GM the same releases as provided for the GM-Related Parties in Section 4.01 of the

Delphi-GM Global Settlement Agreement.  In turn, Section 4.01(c) of the Delphi-GM Global

Settlement Agreement releases, among others, any claims by any interested party (such as the

Salaried Plaintiffs) against New GM relating to obligations to Delphi employees or former

employees, as follows:

> (c)    Any Delphi Plan shall provide (and no modification or
> supplement thereto shall abrogate such provision) that effective as
> of the Emergence Date, **the GM-Related Parties shall be forever
> released by the Additional Releasing Parties[6] from any and all
> claims, debts, obligations, rights, suits, damages, actions,
> causes of action, remedies, and liabilities whatsoever, which the
> Additional Releasing Parties ever had, now have, or hereafter
> may have, whether known or unknown, liquidated or
> unliquidated, contingent or noncontingent, asserted or
> unasserted, foreseen or unforeseen, existing as of the Effective
> Date, in law, at equity, or otherwise, that are directly or
> indirectly related to any of the Delphi-Related Parties,
> including without limitation claims based in whole or in part
> upon any act or omission, transaction, agreement, event, action,**

---

[6]    The "Additional Releasing Parties" are defined broadly in Section 1.04 of the Delphi–GM Global
Settlement Agreement as follows:

> Section 1.04    **"Additional Releasing Parties" shall mean (i) creditors of
> any of the Debtors and current and former holders of equity interests in
> Delphi,** (ii) the Creditors' Committee and all current and former members of the
> Creditors' Committee in their respective capacities as such, (iv) the Equity
> Committee and all current and former members of the Equity Committee in their
> respective capacities as such, (v) the DIP Agent in its capacity as such, (vi) the
> DIP Lenders solely in their capacities as such, (vii) all Professionals, (viii) the
> Plan Investors, and (ix) with respect to each of the above-named persons or
> entities, and only in their aforementioned capacities, such person's or entity's
> Affiliates, current and former principals, officers, directors, agents, employees,
> advisors, and representatives (including any attorneys, financial advisors,
> investment bankers, and other professionals retained by such persons or entities),
> in their capacities as such, but shall not include the Delphi-Related Parties, the
> Delphi Affiliate Parties, the UAW Releasing Parties, the IUE-CWA Releasing
> Parties, the USW Releasing Parties, the IAM Releasing Parties, the IBEW
> Releasing Parties, the IUOE Releasing Parties, and the Non-Represented
> Employees Releasing Parties.

**or other occurrence taking place or failing to take place on or before the Effective Date related to** (i) the Separation, (ii) any collective bargaining agreements to which any Delphi-Related Party is now or has been a party, **(iii) any agreement or obligation related to any employees or former employees of the Delphi-Related Parties,** (iv) the Chapter 11 Cases, or (v) the formulation, preparation, negotiation, dissemination, confirmation, or consummation (but not performance) of the Plan, the Disclosure Statement, this Agreement, the Restructuring Agreement, the Labor MOUs, the Non-Represented Employees Term Sheet, the UAW SAP, the IUE-CWA SAP, the IP License, the Warranty Settlement Agreement, or any contract, instrument, or other agreement or document created, modified, amended, or entered into in connection with any of the foregoing. **The releases provided for in this section 4.01(c) shall include any and all claims that any of the Additional Releasing Parties have or would have been legally entitled to assert in its own right (whether individually or collectively) and shall be effective against any person or entity that would have been legally entitled to assert such claim derivatively or otherwise on behalf of any of the Additional Releasing Parties.**

Delphi-GM Global Settlement Agreement at § 4.01(c) (emphasis added).

35.      In addition, the parties expressly acknowledged in the GM-Delphi Global

Settlement Agreement the importance of the releases to the GM-Related Parties, as set forth

below:

> (l)      The Parties acknowledge that (x) the consideration provided by GM pursuant to this Agreement, the Restructuring Agreement, the Labor MOUs, the Non-Represented Employees Term Sheet, the UAW SAP, the IUE-CWA SAP, the IP License, and the Warranty Settlement Agreement constitutes a substantial contribution to any Delphi Plan that is necessary to the success of any Delphi Plan, and (y) GM would not have made this contribution without the releases provided for in this Agreement and to be provided in any Delphi Plan. The Parties further acknowledge that nothing in the preceding sentence shall give rise to, or entitle GM to seek or be allowed, any claim against, or consideration from, any entity, including Delphi, other than as specifically approved by the Bankruptcy Court in the Confirmation Order and as agreed to by Delphi and GM in this Agreement.

Delphi-GM Global Settlement Agreement at § 4.01(l).

**Argument**

36.       One of the central and recurring issues throughout the Debtors' cases was the need to resolve their legacy liabilities and GM's participation in that resolution.  The labor agreements, Labor MOUs and other agreements that the Debtors, their unions and GM entered into to resolve these issues were before this Court as early as September 2007.  Any disparate treatment between union and salaried retirees was evident from that early stage as well. Ultimately, as this Court found in the Plan Modification Order, Old GM made significant concessions and provided substantial value to the Debtors during their Chapter 11 Cases, which actions ultimately proved integral to the negotiation, confirmation and consummation of the Debtors' Modified Plan.  In return for this consideration, Old GM negotiated and received releases for itself and numerous related entities, including New GM.  These releases were expressly approved by this Court in the Modified Plan and the Plan Modification Order and clearly cover the claims asserted by the Salaried Plaintiffs in respect of the Salaried Plan, its termination and the effects thereof.  The decisions by New GM to "top-up" certain union pension benefits were made before the October 6, 2009 Effective Date of the Modified Plan and are, thus, clearly within the purview of the releases described above.  See Complaint, ¶¶ 36-37; Count 5 ("top up" decisions made in July and September 2009).

37.       The Salaried Plaintiffs no doubt are well aware of these releases in favor of New GM, given that they received notice of the Modified Plan, actively participated in the Debtors' Chapter 11 Cases and all but one even filed an objection to the Modified Plan.  Yet now, notwithstanding these straightforward releases, the Salaried Plaintiffs have filed the Michigan Civil Action naming New GM as a defendant based on released claims.[7]  This Court

---

[7]          See infra ¶¶ 42-43.

should not permit the Salaried Plaintiffs to willfully violate the Modified Plan and Plan

Modification Order and the releases granted thereby.  As described below, this Court has the

power to stop these violations of the Court's prior orders, and this power should be exercised.

***This Court Has the Authority to Enforce the***
***Modified Plan and the Plan Modification Order***

38.    Bankruptcy courts have the inherent authority to enforce their orders —

"[t]he power to issue an order carries with it the power to enforce the order."  In re Kalpana

Elecs., Inc., 58 B.R. 326, 335 (Bankr. E.D.N.Y. 1986).  Section 105 of the Bankruptcy Code

provides that "[t]he court may issue any order, process, or judgment that is necessary or

appropriate to carry out" the Bankruptcy Code's provisions and it "codif[ies] the bankruptcy

court's inherent power to enforce its own orders."  Back v. AM Gen. Corp. (In re Chateaugay

Corp.), 213 B.R. 633, 640 (S.D.N.Y. 1997); see also 11 U.S.C. § 105(a).  Section 1141 of the

Bankruptcy Code provides "once confirmed, a debtor's reorganization plan binds the debtor and

all creditors, regardless of whether the creditor has accepted the plan . . . ."  DePippo v. Kmart

Corp., 335 B.R. 290, 294 (S.D.N.Y. 2005) (citing 11 U.S.C. § 1141(a)).

39.    More specifically, a bankruptcy court retains subject matter jurisdiction to

enforce both the plan and its order confirming that plan, as it "is axiomatic that a court possesses

the inherent authority to enforce its own orders" and agreements approved by the court.  In re

Continental Airlines, Inc., 236 B.R. 318, 326 (Bankr. D. Del. 1999), aff'd, 2000 WL 1425751

(D.Del. Sep. 12, 2000), aff'd, 279 F.3d 226 (3rd Cir. 2002).  See Travelers Indemnity Co. v.

Bailey, 129 S. Ct. 2195, 2205 (2009) ("as the Second Circuit recognized, . . . the Bankruptcy

Court plainly had jurisdiction to interpret and enforce its own prior orders.")  "In the bankruptcy

context, courts have specifically, and consistently, held that the bankruptcy court retains

jurisdiction, *inter alia*, to enforce its confirmation order."  Continental Airlines, 236 B.R. at 326.

As the court explained, "we do not find significant the fact that the Plan may have been

substantially consummated in this case.  That fact does not divest us of our inherent jurisdiction

to enforce the Confirmation Order issued by this Court."  Id.; see generally Kokkenen v.

Guardian Life Insurance Company of America, 511 U.S. 375, 381-82 (1994); see also

Bankruptcy Rule 3020(d) ("Notwithstanding the entry of the order of confirmation, the court

may issue any other order necessary to administer the estate.").  Moreover, pursuant to

Article XIII of the Modified Plan, this Court retained exclusive jurisdiction to, among other

things, enforce all orders previously entered by the Court.  (Modified Plan at Art. XIII(r).)  See

Travelers, 129 S. Ct. at 2205 ("when the Bankruptcy Court entered the [prior plan confirmation

and settlement orders,] it explicitly retained jurisdiction to enforce its injunctions").

       40.     Pursuant to Bankruptcy Rules 7001(7),[8] the relief sought by New GM in

this Motion is properly brought by motion as a contested matter pursuant to Bankruptcy

Rule 9014, rather than in a separate adversary proceeding.  Because New GM is merely seeking

to enforce the provisions of the Modified Plan, under Bankruptcy Rule 7001(7), no adversary

proceeding is required.  See Continental, 236 B.R. at 327.

***The Michigan Civil Action Violates the***
***Modified Plan and the Plan Modification Order***

       41.     Here, as described above, the Modified Plan and the Plan Confirmation

Order contain exculpation and limitation of liability provisions that apply to New GM and that

specifically approve the release of New GM that was set forth in the Delphi-GM Global

Settlement Agreement.  (Modified Plan at §§ 11.8 and 11.11; Plan Modification Order at ¶ 20.)

In turn, the Delphi-GM Global Settlement Agreement expressly releases New GM from all

---

[8]     Bankruptcy Rule 7001(7) provides that "a proceeding to obtain an injunction or other equitable relief"
constitutes an adversary proceeding, "except when a chapter 9, chapter 11, chapter 12, or chapter 13 plan
provides for the relief."  Fed. R. Bankr. Proc. 7001(7).

claims related to "any agreement or obligation related to any employees or former employees of

the Delphi-Related Parties," which clearly encompasses the Salaried Plan.  (Delphi-GM Global

Settlement Agreement at § 11.8.)  In addition, the Modified Plan and Plan Modification Order

contain injunction provisions that prohibit parties from commencing or asserting any claim or

cause of action relating to the released claims.  (Modified Plan at § 11.14; Plan Modification

Order at ¶ 22.)

42.    Taken together, these provisions absolve New GM from (a) any liability

under the Salaried Plan as of the Effective Date of the Modified Plan and (b) any liability related

to any differing treatment by New GM of the pension plans for Delphi's hourly retirees and the

Salaried Plan.  Having no liability with respect to the Salaried Plan at all as of the Effective Date

and the New GM actions complained of in the Complaint having occurred before the Effective

Date,[9] New GM cannot be held liable to the Salaried Plaintiffs for any decisions it made later

with respect to New GM's other benefit plans.[10]  Accordingly, the Michigan Civil Action states a

cause of action against New GM that was released under the Modified Plan.  The Modified Plan

and Plan Modification Order prohibit the Salaried Plaintiffs' continued prosecution of those

claims.

43.    Moreover, the alleged discrimination between union and non-union

employees that form the basis of the Salaried Plaintiff's First Amended Complaint was

specifically contemplated in the Modified Plan and related documents that were approved by this

---

[9]    As noted above, the decisions by New GM to "top-up" certain union pension benefits were made before the October 6, 2009 Effective Date of the Modified Plan.  As the Salaried Plaintiffs acknowledge, the "top up" decisions were made by New GM in July and September 2009.

[10]    The Salaried Plaintiffs are former employees of the Debtors or their beneficiaries, and the claims they assert against New GM in the Michigan Civil Action are based on alleged pension benefits due under the Debtors' Salaried Plan.  Clearly these claims are based on obligations "related to any employees or former employees of the Delphi-Related Plan" that were released under the Delphi-GM Global Settlement Agreement, as incorporated in the Modified Plan and Plan Modification Order.

Court.  Specifically, as noted above, Section 2.03 of the Delphi-GM Global Settlement

Agreement provided that only certain of obligations related to the Debtors' hourly pension plans

were to be undertaken by Old GM, while others were not.  (Delphi-GM Global Settlement

Agreement at § 2.03.)  Likewise, the Delphi-PBGC Settlement Agreement, which was

incorporated into the Modified Plan, expressly contemplated the termination of the Salaried Plan.

Each of the Salaried Plaintiffs was provided notice of these provisions and given every

opportunity to object.  Even though all but one of the Salaried Plaintiffs filed the Plan Objection,

they never challenged the disparity between salaried retirees and hourly retirees' pensions in the

Delphi-GM Global Settlement Agreement.  They only raised objections with respect to the

termination of the Salaried Plan, which were overruled.  In so doing, the Court found that the

releases granted to Old GM and New GM with respect to these and other matters are supported

the circumstances giving rise to the Modified Plan and "are integral elements of the restructuring

and resolution of the Chapter 11 Cases."  (Plan Modification Order at ¶ JJ.)

        44.     In light of the foregoing, on December 17, 2009, counsel to New GM sent

a letter to counsel for the Salaried Plaintiffs describing the relevant provisions of the Modified

Plan, the Plan Modification Order and the Delphi-GM Global Settlement Agreement, explaining

why the Michigan Civil Action violated those provisions with respect to New GM and

demanding that New GM be dismissed from the Michigan Civil Action with prejudice.  A copy

of that letter is attached hereto as Exhibit D.  On January 15, 2010, counsel to the Salaried

Plaintiffs responded to the letter and informed New GM that they would not dismiss New GM

from the Michigan Civil Action.  A copy of the response letter is attached hereto as Exhibit E.

***The Michigan Civil Action is an Improper Collateral Attack***
***on this Court's Plan Modification Order in the Michigan District Court***

45.      The Michigan Civil Action represents an improper collateral attack on this Court's Plan Modification Order in the Michigan District Court.  Disregarding the legality of the releases in favor of New GM (even after New GM brought them to their attention) and having failed to appeal the Plan Modification Order, the Salaried Plaintiffs insist on challenging these provisions in the Michigan District Court.  This is the exact type of collateral attack on a bankruptcy court order that the United States Supreme Court rejected in Celotex v. Edwards, 514 U.S. 300 (1995).

46.      In Celotex, the United States Bankruptcy Court for the Middle District of Florida issued an injunction under section 105 of the Bankruptcy Code that prohibited judgment creditors from proceeding against the debtor's sureties without the Bankruptcy Court's permission.  Notwithstanding that order, certain judgment creditors filed a motion with the United States District Court for the Northern District of Texas seeking execution against a surety on a bond in connection with a lawsuit that the debtor had lost on appeal.  The District Court allowed the creditors to execute on the bond, and, on appeal, the Fifth Circuit affirmed, reasoning that the debtor had no present or future interest in the bond.  The Supreme Court reversed the Fifth Circuit decision, ruling, among other things, that if the judgment creditors thought that the injunction was improper, they should have challenged the injunction in the bankruptcy court and then, if necessary, appealed to the district court in Florida and ultimately to the Eleventh Circuit.  Celotex, 514 U.S. at 313.  The Supreme Court then found:

> Respondents chose not to pursue this course of action, but instead to ***collaterally attack*** the Bankruptcy Court's Section 105 Injunction in the federal courts in Texas.  This they cannot be permitted to do without seriously undercutting the orderly process of the law.

Id. (emphasis added).  See also Travelers, 129 S.Ct at 2205-06 (noting that subject matter

jurisdiction of bankruptcy court to enter injunctions in a plan confirmation order was not subject

to collateral attack later in federal court; "'[e]ven subject-matter jurisdiction . . . may not be

attacked collaterally.") (citations omitted); Chateaugay, 213 B.R. at 637 (affirming bankruptcy

court's finding that state court challenges to bankruptcy court injunctions and orders constituted

an improper collateral attack that could be enjoined by the bankruptcy court); In re Old Carco

LLC (f/k/a Chrysler LLC), Case No. 09-50002 (AJG) (Bankr. S.D.N.Y. Aug. 31, 2009) (Docket

No. 5372) (granting motion to enforce "free and clear" provisions of bankruptcy court's asset sale

order and enjoining automobile dealers from bringing state administrative proceedings against

purchaser of debtors' assets to challenge the rejection of dealership agreements) (copy of opinion

attached hereto as Exhibit F); In re Spiegel Inc., 2006 WL 2577825 at *13 (Bankr. S.D.N.Y.

Aug. 16, 2006), appeal dismissed, 2007 WL 656902 (S.D.N.Y. Feb. 28, 2007), aff'd,

269 Fed.Appx. 26 (2nd Cir. 2008) ("Once, as here, a confirmation order has become final and

nonappealable, a collateral attack on the order is precluded by res judicata principles and,

therefore, the confirmation order is no longer subject to challenge based on the standard

applicable to the initial approval of a third party plan release.") (copy of opinion attached hereto

as Exhibit G).

47.    Similarly, in this case, if the Salaried Plaintiffs did not agree with the

termination of the Salaried Plan set forth in the Modified Plan or the releases and injunction

granted in favor of New GM in the Modified Plan and the Plan Modification Order, they should

have included all such objections in the Plan Objection.  They did not object to the releases or

injunctions at all, nor did they appeal from this Court's Plan Modification Order.  Instead, they

seek to collaterally attack the Plan Modification Order by way of the Michigan Civil Action.  As

the Supreme Court stated in <u>Celotex</u>, such course of action by the Salaried Plaintiffs seriously

undercuts the orderly process of law and cannot be permitted.

### *New GM Will Suffer Harm Should the Salaried Plaintiffs*
### <u>*Continue to Prosecute the Michigan Civil Action Against New GM*</u>

48.    Under settled law, when a party unilaterally violates a bankruptcy court

order, that violation, standing alone, constitutes the only harm necessary for a renewed

injunction.  <u>See</u>, <u>e.g.</u>, <u>Balanoff v. Glazier (In re Steffan)</u>, 97 B.R. 741, 746 (Bankr. N.D.N.Y

1989) ("the usual equitable grounds for relief, such as irreparable damage, need not be shown" in

injunctions in bankruptcy cases) (quotation omitted).

49.    New GM has been harmed by having to defend itself from what is clearly

a released claim.  New GM already has been forced to incur fees and costs in defending the

Michigan Civil Action and in bringing this Motion.  New GM would be harmed further still in

the (unlikely) event that the Michigan District Court were to enter a judgment against New GM

in favor of the Salaried Plaintiffs.  New GM also may have to defend a dismissal of the Michigan

Civil Action on appeal.  Under all scenarios, New GM is faced with both the threat of liability

and the expense of attorneys' fees.  These harms arise from the direct violation of the Modified

Plan and this Court's Plan Modification Order.

50.    A court approved settlement, embodied in a plan and confirmation order,

should not be disregarded.  New GM should be able to rely on the Modified Plan and the Plan

Modification Order, and the Delphi-GM Global Settlement Agreement that was incorporated

therein, and not be subjected to re-litigation of settled matters in the Michigan Civil Action.

### <u>*Reservation of Rights*</u>

51.    As noted above, prior to filing this Motion, New GM requested in writing

that the Salaried Plaintiffs adhere to this Court's Plan Modification Order and dismiss New GM

from the Michigan Civil Action.  See Exhibit D.  The Salaried Plaintiffs refused on a ground

(i.e., that New GM's actions occurred after the Effective Date of the Plan) that the statements in

their own Complaint contradict.  See Exhibit E.  Accordingly, New GM reserves the right to seek

sanctions or costs resulting from the Salaried Plaintiffs' violation of the Plan Modification Order,

including costs related to the filing of this Motion or the defense of the Michigan Civil Action,

and any other appropriate relief.  See Fed. R. Bankr. Proc. 9020; In re Chief Executive Officers

Clubs, Inc., 359 B.R. 527, 542 (Bankr. S.D.N.Y. 2007) (imposing contempt sanctions on officer

of corporate debtor for violating court order).

### Notice

52.     Notice of this Motion has been provided (a) to counsel for the Salaried

Plaintiffs and (b) in accordance with the Supplemental Order Under 11 U.S.C. §§ 102(1) and 105

and Fed. R. Bankr. P. 2002(m), 9006, 9007, and 9014 Establishing Omnibus Hearing Dates and

Certain Notice, Case Management, and Administrative Procedures, entered March 20, 2006

(Docket No. 2883), and the Fifteenth Supplemental Order Under 11 U.S.C. §§ 102(1) and 105

and Fed. R. Bankr. P. 2002(m), 9006, 9007, and 9014 Establishing Omnibus Hearing Dates and

Certain Notice, Case Management, and Administrative Procedures, entered August 26, 2009

(Docket No. 18839).  In light of the nature of the relief requested, New GM submits that no other

or further notice is necessary.

### Prior Request

53.     No prior request for the relief sought in this Motion has been made to this

or any other Court.

WHEREFORE, New GM respectfully requests that this Court:  (i) enter an order

substantially in the form attached hereto as Exhibit H, granting the relief sought herein; and

(ii) grant such other and further relief to New GM as the Court may deem proper.

Dated: January 25, 2010
      New York, New York            Respectfully submitted,


                    /s/ Lisa G. Laukitis
                Lisa G. Laukitis
                JONES DAY
                222 East 41st Street
                New York, New York  10017
                Telephone:  (212) 326-3939
                Facsimile:  (212) 755-7306

                Andrew M. Kramer
                JONES DAY
                51 Louisiana Avenue NW
                Washington, D.C.  20001
                Telephone:  (202) 879-3939
                Facsimile:  (202) 626-1700

                Heather Lennox
                Robert S. Walker
                JONES DAY
                North Point
                901 Lakeside Avenue
                Cleveland, Ohio  44114
                Telephone:  (216) 586-3939
                Facsimile:  (216) 579-0212

                ATTORNEYS FOR GENERAL
                MOTORS LLC