**Hearing Date and Time: March 18, 2010 at 10:00 a.m. (prevailing Eastern time)**
**Response Date and Time: March 5, 2010 at 4:00 p.m. (prevailing Eastern time)**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
155 North Wacker Drive
Chicago, Illinois 60606
John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler

   - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Kayalyn A. Marafioti

Attorneys for DPH Holdings Corp., et al.,
   Reorganized Debtors

DPH Holdings Corp. Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

DPH Holdings Corp. Legal Information Website:
http://www.dphholdingsdocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x | : | |
| In re | : | Chapter 11 |
| | : | |
| DPH HOLDINGS CORP., et al., | : | Case Number 05-44481 (RDD) |
| | : | |
| | : | (Jointly Administered) |
| Reorganized Debtors. | : | |
| | : | |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x | | |

REORGANIZED DEBTORS' BRIEF REQUESTING ENTRY OF AN
ORDER DISALLOWING AND EXPUNGING PROOFS OF CLAIM
<u>FILED BY THE IAM, THE IBEW, AND THE IUOE</u>

("IAM, IBEW, AND IUOE PROOFS OF CLAIM BRIEF")

DPH Holdings Corp. ("DPH Holdings") and certain of its affiliated reorganized debtors in the above-captioned cases (together with DPH Holdings, the "Reorganized Debtors") hereby submit the Reorganized Debtors' Brief Requesting Entry Of An Order Disallowing And Expunging Proofs Of Claim Filed By The IAM, The IBEW, And The IUOE, and respectfully represent as follows:

A.    Preliminary Statement

1.    On November 18, 2009, the Reorganized Debtors filed a notice of sufficiency hearing with respect to the Debtors'[1] objection to proofs of claim numbers 13663 and 13730 filed by the International Union of Operating Engineers (the "IUOE"), Local 101-S, proofs of claim numbers 13734 and 15071 filed by the IUOE, Local 18-S, proofs of claim numbers 13699 and 15075 filed by the IUOE, Local 832-S, proofs of claim numbers 13863 and 14334 filed by the International Association of Machinists and Aerospace Workers and its District 10 and Tool and Die Makers Lodge 78 (the "IAM"), and proofs of claim numbers 13875 and 14350 filed by the International Brotherhood of Electrical Workers, Local 663 (the "IBEW," together with the IUOE and the IAM, the "Unions") (the "Union Claims") (Docket No. 19108). By this notice, the Reorganized Debtors scheduled a sufficiency hearing to address the legal

---

[1] On October 8 and 14, 2005, Delphi Corporation and certain of its affiliates, including Delphi Automotive Systems LLC ("DAS LLC") (the "Debtors"), predecessors of the Reorganized Debtors, filed voluntary petitions in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as then amended (the "Bankruptcy Code"). On October 6, 2009, the Debtors substantially consummated the First Amended Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession, As Modified (the "Modified Plan"), which had been approved by this Court pursuant to an order entered on July 30, 2009 (Docket No. 18707) (the "Plan Modification Order"), and emerged from chapter 11 as the Reorganized Debtors.

2

sufficiency of each Union Claim and whether each such proof of claim states a colorable claim against the asserted Debtor.[2]

2. At the December 18, 2009 sufficiency hearing, this Court requested the Reorganized Debtors and the Unions submit additional briefing on three issues. First, what claims were and were not released under the settlement agreements between the Debtors and each Union pursuant to section 1113/1114 of the Bankruptcy Code (the "MOUs")?[3] Second, what issues or claims are precluded by this Court's approval of the Debtors' settlement with the Pension Benefit Guaranty Corporation (the "PBGC") or other orders entered by this Court, including the Plan Modification Order? Third, what is the Unions' ability – both as a matter of standing and as a substantive legal matter – to assert their (a) breach of fiduciary duty claim and (b) pension-related claims that they articulated in their supplemental reply and at the December 18, 2009 sufficiency hearing?[4] At this Court's direction, the Reorganized Debtors and the Unions agreed on the following briefing schedule: this brief is due on February 5, 2010, the Unions' response is due on March 5, 2010, and the Reorganized Debtors' reply is due on March

---

[2] On December 8, 2009, the Reorganized Debtors filed a supplemental reply in support of their objection to the Union Claims (Docket No. 19157), on December 16, 2009, the Unions filed their supplemental response (Docket No. 19190), and on December 17, 2009, the Reorganized Debtors filed their second supplemental reply (Docket No. 19203).

[3] The MOUs are attached to, and approved by, the Order Under 11 U.S.C. §§ 363, 1113, And 1114 And Fed. R. Bankr. P. 6004 And 9019 Approving (I) Memoranda Of Understanding Among IUOE, IBEW, IAM, Delphi, And General Motors Corporation Including Modification Of IUOE, IBEW, And IAM Collective Bargaining Agreements And Retiree Welfare Benefits For Certain IUOE, IBEW, And IAM-Represented Retirees And (II) Modification Of, And Term Sheet Regarding, Retiree Welfare Benefits For Certain Non-Represented Hourly Active Employees And Retirees (the "Settlement Approval Order") (Docket No. 9107) entered by this Court on August 16, 2007.

[4] With respect to the Unions' pension-related claim, this Court acknowledged that such claim is "somewhat hard to articulate" and that the Reorganized Debtors need not try to speculate as to what the claim is, but rather could address it in their reply to the Unions' brief on these issues. (See Transcript of December 18, 2009 Hearing at 22:10-13.)

12, 2010.  If requested by this Court, the parties propose that oral argument would take place at the hearing scheduled for March 18, 2010.

B.    The Unions' Proofs Of Claim

        3.    The Union Claims assert the following liabilities:  grievances, an individual's claim that he should have participated in an attrition program, and unliquidated or contingent claims in the event the Debtors reduce active or retired worker entitlements under applicable collective bargaining agreements or pension or benefit plans pursuant to section 1113/1114 of the Bankruptcy Code "or otherwise."  In addition, at the December 18, 2009 hearing and in their supplemental response filed December 16, 2009, the Unions (a) allege that they are entitled to recover the pension benefits for the individuals they represent which were lost as a result of the Debtors alleged breach of fiduciary duty under section 502(s)(3) of ERISA by failing properly to fund the Delphi HRP and (b) assert certain unspecified "pension-related claims."

C.    Duplicate Claims Should Be Disallowed

        4.    At the outset, five of the ten Union Claims are duplicative of the other five because the Unions filed the same claims against both Delphi Corporation and DAS LLC.  It is axiomatic that creditors are not entitled to multiple recoveries from a single set of alleged liabilities.  To the extent that there is any basis for the Union Claims – and the Reorganized Debtors believe that no such basis exists – the Reorganized Debtors admit that such claims would be properly against Delphi Corporation and not DAS LLC.  For this reason, the Reorganized Debtors request that the duplicative Union Claims against DAS LLC (i.e., proofs of claim numbers 13730, 13699, 15071, 14334 and 14350) be disallowed and expunged.

    D.      <u>Grievance Claims Should Be Disallowed</u>

           5.      Portions of the Union Claims assert that the Debtors are liable for individual grievance claims under the MOUs. Contrary to these assertions, the Reorganized Debtors believe there are no outstanding grievances. The IAM has expressly confirmed that this is the case, and the IUOE Local 18-S and the IBEW have not challenged the Reorganized Debtors' contention that there are no outstanding grievances. Accordingly, the portions of their proofs of claim relating to grievances should be disallowed and expunged.

    E.      <u>IUOE Local 101-S Individual Member Attrition Plan Claim Should Be Disallowed</u>

           6.      In its proof of claim, the IUOE Local 101-S alleges that an individual employee claimed he should have participated in an attrition program. The IUOE Local 101-S has not indicated to the Reorganized Debtors whether this individual's claim has been resolved, and unless the IUOE Local 101-S confirms whether this claim is still at issue, the portion of the IUOE Local 101-S's proof of claim relating to this claim should be disallowed and expunged.

    F.      <u>Unliquidated or Contingent Claims Should Be Disallowed</u>

           7.      All other aspects of the Union Claims were filed by the Unions on an "unliquidated or contingent nature" basis in the event that Delphi Corporation reduced active or retired worker entitlements under applicable collective bargaining agreements or pension or benefit plans through section 1113/1114 of the Bankruptcy Code, "or otherwise." The Debtors did not obtain relief from the Unions under section 1113/1114 of the Bankruptcy Code and instead entered into the MOUs, settling the Debtors' 1113/1114 proceedings with each Union. Because this basis of the Union Claims never materialized, the unliquidated or contingent section 1113/1114 claims should be disallowed and expunged.

G.  The Claims Filed By The Unions, Except For Pension Claims, Have Been Waived Pursuant To The MOUs

8.  Pursuant to the MOUs and the Settlement Approval Order, all claims held by the Unions – including by exact reference the Union Claims that are the subject of this brief – were waived and deemed withdrawn as of the effective date of the Modified Plan, except for claims for vested pension benefits, workers compensation benefits, unemployment compensation benefits, and some ordinary course individual grievance claims.  (See Settlement Approval Order ¶¶ 10, 12, and 14.)

9.  Specifically, each MOU contains an express release of claims, which was explicitly incorporated into article 11.6 of the Modified Plan.  These releases are set forth in Section F.3 of the Debtors' MOUs with each of the IAM, the IBEW, and the IUOE Local 18S and the IUOE Local 832S and in Section E.3 of the Debtors' MOU with the IUOE Local 101S and provide:

> On the effective date of the Delphi Reorganization Plan, the [IAM/IBEW/IUOE], all employees and former employees of Delphi represented or formerly represented by the [IAM/IBEW/IUOE], and all persons or entities with claims derived from or related to any relationship with such employees or former employees of Delphi, shall waive and release and be deemed to have waived and released any and all claims of any nature, whether liquidated or unliquidated, contingent or non-contingent, asserted or unasserted, existing and/or arising in the future against Delphi, its subsidiaries, or affiliates, the Delphi HRP, the Delphi Health Care Program for Hourly Employees and the Delphi Life and Disability Benefits Program for Hourly Employees, GM, its subsidiaries or affiliates, the GM HRP, the GM Health Care Program for Hourly Employees and the GM Life and Disability Benefits Program for Hourly Employees, and the officers, directors, employees, fiduciaries, and agents of each, arising directly or indirectly from or in any way related to any obligations under the collective bargaining agreements between Delphi and the [IAM/IBEW/IUOE] and between GM and the [IAM/IBEW/IUOE] related to such employees (provided, however, that claims for benefits provided for or explicitly not waived under the provisions of the [MOUs] (including, but not limited to, claims for workers' compensation benefits and unemployment compensation benefits against Delphi, its subsidiaries, or affiliates that are otherwise assertable under law) are not waived).

6

(Emphasis added.  See also Settlement Approval Order ¶¶ 9(a), 11(a), and 13(a).)

10.     The MOUs clarified that claims for vested pension benefits, workers compensation benefits, unemployment compensation benefits, and some ordinary course individual grievance claims were the only benefit claims "explicitly not waived":

> There shall be no waiver of rights, if any, to vested pension benefits, workers compensation benefits and unemployment compensation benefits. The right to pursue pending ordinary course grievances shall continue except for employees who have signed individual releases of claims.[5]

(Section E.2 of the MOUs between the Debtors and each of the IAM, the IBEW, the IUOE Local 18S, and the IUOE Local 832S and Section D.2 of the MOU between the Debtors and the IUOE Local 101S.)

11.     In the Union Claims, the Unions do not assert claims for workers compensation benefits or unemployment compensation benefits.  In addition, as noted above, the Reorganized Debtors believe there are no outstanding individual grievance claims asserted by the Unions or employees or former employees of the Debtors represented by the Unions. Accordingly, the only outstanding claim that survives the release provisions in the MOUs and the Settlement Approval Order is the Unions' claim for vested pension benefits.  As described below, the Unions' claims for vested pension benefits are precluded by the Debtors' settlement with the PBGC and other orders of this Court or are otherwise without merit.

H.     **PBGC Settlement, Pension Plan Termination, and Orders Of This Court Preclude The Union Claims**

12.     The Plan Modification Order constituted this Court's authorization of the Debtors to enter into the agreement dated July 21, 2009 between Delphi Corporation and the

---

[5]   The Reorganized Debtors note that a significant number of Union members have already signed individual releases of claims in connection with their attrition option selections.

7

PBGC that provides for, among other things, resolution of the Debtors' pension plans and related claims (the "Delphi-PBGC Settlement Agreement").  (See Plan Modification Order, ¶ 60(b).) The Delphi-PBGC Settlement Agreement gives the PBGC an allowed prepetition general unsecured claim against each of the Debtors in the aggregate amount of $3.0 billion in exchange for and fully satisfying all obligations of Delphi Corporation (and any member of Delphi Corporation's "controlled group" as defined in section 4001(a)(14) of ERISA, 29 U.S.C. § 1301(a)(14)) under Title IV of ERISA with respect to the Debtors' pension plans.  (See Delphi-PBGC Settlement Agreement, ¶¶ 1, 2 (Docket No. 18559)).   These obligations included claims for due and unpaid contributions to the Debtors' pension plans.  See 29 U.S.C. § 1362(c). Further, the Plan Modification Order expressly states that "all liabilities relating to unpaid contributions to the Pension Plans shall be released or discharged as set forth therein."  (Plan Modification Order, ¶ 60.)  Accordingly, the Unions are not entitled to bring claims for due and unpaid contributions to the pension plans, because these claims have been settled, released, and discharged.

    13. Following the execution of the Delphi-PBGC Settlement Agreement, the PBGC involuntarily terminated the pension plans covering the members and former members of the Unions and was appointed statutory trustee of the terminated pension plans.  Upon termination, the PBGC became the "owner" of and the only entity authorized to assert a claim for the difference between the value of assets of the terminated pension plans and the value of benefits accrued (and vested) under the terminated pension plans, i.e., the amount necessary to fund all benefits lost as a result of pension plan termination.  See 29 U.S.C. § 1362(b). Accordingly, the Unions are not entitled to bring any claims for lost benefits under the terminated Delphi HRP (under either ERISA or section 301 of LMRA) because the PBGC's

8

claim under Title IV of ERISA preempts them. <u>In re Adams Hard Facing Company</u>, 129 B.R. 662 (W.D. Okla. 1991); <u>United Steelworkers of America v. United Engineering, Inc.</u>, 52 F.3d 1386 (6th Cir. 1995); <u>See also</u> <u>In re Lineal Group</u>, 226 B.R. 608 (M.D. Tenn. 1998) (state law claims for lost benefits after plan termination are preempted).

14. The Plan Modification Order specifically authorized the Debtors to enter into the Delphi-PBGC Settlement Agreement and other effectuating documentation "without violating the Labor MOUs or other applicable collective bargaining agreements, the Union 1113/1114 Settlement Approval Orders, section 1113(f) of the Code or any other applicable law." (<u>Id.</u>)

15. In relevant part, the Plan Modification Order provides:

(a) The Delphi-PBGC Settlement Agreement is hereby authorized and approved pursuant to section 1123(b)(3) of the Bankruptcy Code. The Debtors are authorized, but not directed, to enter into the Delphi-PBGC Settlement Agreement and to perform in accordance with its terms, including to enter into or cause the entry into such other documentation as may be reasonably necessary to effectuate the terms of the Delphi-PBGC Settlement Agreement, including the execution and delivery of termination and trusteeship agreements and any and all waivers, releases, discharges, exculpations, or other agreements or documents. Section 4042 of ERISA, 29 U.S.C. § 1342, authorizes PBGC to seek termination of a pension plan upon making certain findings notwithstanding the provisions of a collective bargaining agreement and further permits the PBGC and the plan administrator to agree to termination of a plan without an adjudication. Section § 4041(a)(3) of ERISA, 29 U.S.C. § 1341(a)(3). Upon the effectiveness of the Delphi-PBGC Settlement Agreement, <u>all liabilities relating to unpaid contributions to the Pension Plans shall be released or discharged as set forth therein</u>.

(b) <u>The Court finds that the Debtors may enter into such agreements with respect to the Delphi HRP</u> or the Bargaining Plan (as defined in the Delphi-PBGC Settlement Agreement) <u>without violating the Labor MOUs or other applicable collective bargaining agreements, the Union 1113/1114 Settlement Approval Orders, section 1113(f) of the Code or any other applicable law, and the Court expressly authorizes the Debtors to do so</u>. Nothing in this order prohibits employees or unions adversely affected by any plan termination from (a) seeking to intervene in any district court

9

> action filed by the PBGC under section 4042 of ERISA, 29 U.S.C. § 1342, to terminate the plans or (b) pursuing any independent action against the PBGC regarding the termination of the plan under section 4003(f) of ERISA, 29 U.S.C. § 1303(f).

(Emphasis added. Plan Modification Order, ¶ 60.)

16. Thus, both the Settlement Approval Order and the Plan Modification Order specifically preclude the Unions' Claims and generally preclude all other claims that could be asserted by the Unions. Further, the broad authorization language of the Plan Modification Order essentially precludes any Union Claims related to Delphi Corporation's entering into and performing under the Delphi-PBGC Settlement Agreement.

I.  The Unions' Assertion Of A Breach Of Fiduciary Duty Claim Should Be Denied

17. As the Unions explained in their supplemental response filed December 16, 2009 and at the December 18, 2009 sufficiency hearing, they also seek to recover on a breach of fiduciary duty claim. The Unions allege they are entitled to recover the pension benefits for the individuals they represent which were lost as a result of Delphi Corporation's alleged breach of fiduciary duty under section 502(a)(3) of ERISA by failing properly to fund the Delphi HRP.

18. First, this breach of fiduciary duty claim was not included on the proofs of claim filed by the Unions. Accordingly, pursuant to the order entered by this Court on April 12, 2006 establishing a general bar date (Docket No. 3206) (the "Bar Date Order"), the Unions are forever barred, estopped, and enjoined from asserting such a breach of fiduciary duty claim. (See Bar Date Order ¶ 11.)

19. Second, the Unions' breach of fiduciary duty claim is waived pursuant to the MOUs and the Settlement Approval Order because this recently asserted claim is not "provided for or explicitly not waived" under the provisions of the MOUs (See Section E.2 of the MOUs between the Debtors and each of the IAM, the IBEW, the IUOE Local 18S, and the IUOE

10

Local 832S and Section D.2 of the MOU between the Debtors and the IUOE Local 101S.) Moreover, the releases in the MOUs expressly waive all claims against all fiduciaries of all released parties. Specifically, the release in each MOU provides:

> On the effective date of the Delphi Reorganization Plan, the [Unions] … shall waive and release and be deemed to have waived and released any and all claims of any nature … against Delphi, its subsidiaries, or affiliates, the Delphi HRP … [and] <u>fiduciaries</u> … arising directly or indirectly from or in any way related to any obligations under the collective bargaining agreements between Delphi and the [Unions].

(Emphasis added. Section F.3 of the Debtors' MOUs with each of the IAM, IBEW, and IUOE Local 18S and IUOE Local 832S and in Section E.3 of the Debtors' MOU with the IUOE Local 101S; <u>see also</u> Settlement Approval Order ¶¶ 9(a), 11(a), and 13(a).) Therefore, the Unions have waived any claims they might assert for breach of fiduciary duty.

20. Third, the Unions' fiduciary duty claim is precluded by the Plan Modification Order. The Unions are asserting that Delphi Corporation breached its fiduciary duty by failing to properly fund the Delphi HRP. As noted above, the Plan Modification Order provides that "[u]pon the effectiveness of the Delphi-PBGC Settlement Agreement, <u>all liabilities relating to unpaid contributions to the Pension Plans shall be released or discharged as set forth therein</u>." (Plan Modification Order, ¶ 60.) In addition, the Plan Modification Order specifically authorized the Debtors to enter into the Delphi-PBGC Settlement Agreement and thereby terminate the Delphi HRP, "without violating the Labor MOUs or other applicable collective bargaining agreements, the Union 1113/1114 Settlement Approval Orders, section 1113(f) of the Code or any other applicable law." (Plan Modification Order, ¶ 60(b).) Any allegation of breach of fiduciary duty would undeniably fall into the "any other applicable law" catchall of the Plan

Modification Order's broad authorization language and therefore is precluded by the Plan Modification Order.[6]

21. Fourth, under case law in this district, unions have no standing to bring a claim under section 502 of ERISA for fiduciary breach. A union is not among the enumerated entities with standing, i.e., participants, beneficiaries, fiduciaries, or the Secretary of Labor. Toussaint v. JJ Weiser & Co., No. 04 Civ. 2592(MBM), 2005 WL 356834, at *6 (S.D.N.Y. Feb. 13, 2005); Local 100, Transport Workers Union, AFL-CIO v. Rosen, No. 06 Civ. 4787(RPP), 2007 WL 2042511, at *3 (S.D.N.Y. July 13, 2007); District 65, UAW v. Harper & Row Publishers Inc., 576 F. Supp. 1468, 1476 (S.D.N.Y. 1983) ("[U]nion has no standing under the clear language of ERISA ... to assert claims [because union] is not a participant, beneficiary or fiduciary."); See Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for S. Cal., 463 U.S. 1, 27 (1983) ("ERISA carefully enumerates the parties entitled to seek relief under § 502; it does not provide anyone other than participants, beneficiaries, or fiduciaries with an express cause of action for a declaratory judgment on the issues in this case. A suit for similar relief by some other party does not 'arise under' that provision."); McCabe v. Trombley, 867 F. Supp. 120, 125 (N.D.N.Y. 1994) ("Standing for employee organizations is not mentioned in the statute, and this court cannot substitute its will for that of Congress.").[7]

---

[6] In light of the Plan Modification Order and the Settlement Approval Order, the Reorganized Debtors additionally submit that the doctrines of res judicata and collateral estoppel preclude the Unions from bringing their fiduciary duty claim, as set forth in their second supplemental reply in support of their objection to the Union Claims. In this respect, the Reorganized Debtors note that during the hearing on July 29, 2009 regarding this Court's approval of the Modified Plan, the Unions argued that the Delphi-PBGC Settlement Agreement violated the MOUs. (See Transcript Regarding Hearing Held on July 29, 2009 at 213 (Docket No. 18829)). Given the applicable law, this Court overruled those arguments and found it unnecessary to rely upon specific provisions in the MOUs that acknowledged Delphi's right to seek termination of the Delphi HRP. (See Transcript Regarding Hearing Held on July 29, 2009 at 218 (Docket No. 18829)).

[7] Even if the Unions had standing to bring a fiduciary breach claim under section 502 of ERISA, the claim fails because funding a pension plan is not a fiduciary act that is subject to ERISA's fiduciary rules. As noted by the
*(cont'd)*

J.     <u>The Unions' Pension-Related Claim Should Be Denied</u>

        22.     This Court acknowledged that the Unions' alleged pension-related claim is "somewhat hard to articulate" and that the Reorganized Debtors need not try to speculate as to what the claim is, but rather could address it in their reply. (<u>See</u> Transcript of December 18, 2009 Hearing at 22.) The Reorganized Debtors fully reserve their right to address the Unions' alleged pension-related claim in their reply, but respectfully submit that it appears that such claim is nothing more than the Unions' previously rejected argument that Delphi Corporation breached its collective bargaining agreements with the Unions by entering into the Delphi-PBGC Settlement Agreement and terminating the Delphi HRP. For the reasons discussed above, such claim has no merit.

        23.     None of the Unions has proved any set of facts that support a right to payment from the Reorganized Debtors. Accordingly, the Reorganized Debtors assert that (a) those claimants have not met their burden of proof to establish a claim against the Debtors, (b) the Union Claims are not entitled to a presumption of <u>prima facie</u> validity pursuant to Bankruptcy Rule 3001(f), and (c) the Union Claims fail to state a claim against the Reorganized Debtors under Bankruptcy Rule 7012. Because the Unions cannot provide facts or law supporting their claims, each of the Union Claims should be disallowed and expunged in its entirety.

---

*(cont'd from previous page)*
Unions, an entity is a fiduciary only to the extent it exercises discretionary authority or control over management of the plan or authority or control over management or disposition of plan assets or has any discretionary authority or responsibility in administering the plan. <u>See</u> ERISA § 3(21), 29 U.S.C. § 1002(21). <u>See</u>, e.g. <u>Hughes Aircraft Company v. Jacobson</u>, 525 U.S. 432, 444 (1999) (distinguishing between fiduciary and non-fiduciary or "settlor" acts). In this regard, "a corporate employer does not have a fiduciary obligation to make trust fund contributions. <u>See</u> 29 U.S.C. § 1002(21)(A) (defining 'fiduciary')." <u>Sasso v. Cervoni</u>, 985 F.2d 49, 51 (2d Cir. 1993). Accordingly, the Unions' fiduciary breach claim against Delphi Corporation for failing to contribute to the Delphi HRP must fail.

WHEREFORE the Reorganized Debtors respectfully request this Court enter an order (a) sustaining the objections with respect to the Union Claims, (b) disallowing and expunging each Union Claim in its entirety, and (c) granting such further and other relief this Court deems just and proper.

Dated:   New York, New York
         February 5, 2010

SKADDEN, ARPS, SLATE, MEAGHER
   & FLOM LLP

By:   John Wm. Butler, Jr.
      John Wm. Butler, Jr.
      John K. Lyons
      Ron E. Meisler
155 North Wacker Drive
Chicago, Illinois 60606

- and -

By:   Kayalyn A. Marafioti
      Kayalyn A. Marafioti
Four Times Square
New York, New York 10036

Attorneys for DPH Holdings Corp., et al.,
   Reorganized Debtors

14