KAYE SCHOLER LLP

425 Park Avenue
New York, New York 10022
Tel. (212) 836-8000
Fax. (212) 836-8689

*Counsel to Harbinger Del-Auto Investment
Company Ltd.*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| DELPHI CORPORATION, et. al. | : | Case No. 05-44481 (RDD) |
| | : | |
| Debtors. | : | (Jointly Administered) |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

### NOTICE OF WITHDRAWAL OF PROOF OF CLAIM NUMBER 18963 FILED BY HARBINGER DEL-AUTO INVESTMENT COMPANY LTD.

PLEASE TAKE NOTICE that on July 15, 2009, Harbinger Del-Auto Investment

Company Ltd. filed Proof of Claim Number 18963 in the bankruptcy case of I*n re Delphi*

*Corporation et. al*., Case No. 05-44481.

PLEASE TAKE FURTHER NOTICE that Claimant hereby withdraws Claim No. 18963,

a true copy of which is annexed hereto.

Dated: New York, New York
February 12, 2010

KAYE SCHOLER LLP

By: */s/Benjamin Mintz*
Benjamin Mintz
425 Park Avenue
New York, New York  10022
(212) 836-8000

*Counsel to Harbinger Del-Auto Investment
Company Ltd.*

31939431.DOCX

| **United States Bankruptcy Court**<br>Southern District of New York<br>Delphi Corporation et al. Claims Processing<br>c/o Kurtzman Carson Consultants LLC, 2335 Alaska Avenue<br>El Segundo, California 90245 | **Administrative Expense Claim Form** | |
|---|---|---|
| **Debtor against which claim is asserted :**<br>Delphi Corporation, *et al.* 05-44481 | **Case Name and Number**<br>In re Delphi Corporation., *et al.* 05-44481<br>Chapter 11, Jointly Administered | |

**NOTE: This form should not be used to make a claim in connection with a request for payment for goods or services provided to the Debtors prior to the commencement of the case. This Administrative Expense Claim Form is to be used solely in connection with a request for payment of an administrative expense arising after commencement of the case but prior to June 1, 2009, pursuant to 11 U.S.C. § 503.**

| Name of Creditor<br>*(The person or other entity to whom the debtor owes money or property)*<br>Harbinger Del-Auto Investment Company Ltd.<br><br>Name and Address Where Notices Should be Sent<br>c/o Benjamin Mintz<br>Kaye Scholer LLP<br>425 Park Avenue, New York, NY 10022<br>Telephone No.<br>(212) 836-8000 | ☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.<br>☐ Check box if you have never received any notices from the bankruptcy court in this case.<br>☐ Check box if the address differs from the address on the envelope sent to you by the court. | Claim #18963<br>USBC SDNY<br>Delphi Corporation, et al.<br>05-44481 (RDD)<br><br>**THIS SPACE IS FOR COURT USE ONLY** |

| ACCOUNT OR OTHER NUMBER BY WHICH CREDITOR IDENTIFIES DEBTOR: | Check here if this claim ☐ replaces<br>☐ amends a previously filed claim, dated: _____ | |
|---|---|---|

**1. BASIS FOR CLAIM**
- ☐ Goods sold
- ☐ Services performed
- ☐ Money loaned
- ☐ Personal injury/wrongful death
- ☐ Taxes
- ☒ Other (Describe briefly)   Please see attached Exhibit A

- ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
- ☐ Wages, salaries, and compensation (Fill out below)
  Your social security number _____
  Unpaid compensation for services performed
  from _____ to _____
        (date)              (date)

| **2. DATE DEBT WAS INCURRED**<br>Please see attached Exhibit A | **3. IF COURT JUDGMENT, DATE OBTAINED:**<br>N/A |
|---|---|

**4. TOTAL AMOUNT OF ADMINISTRATIVE CLAIM: $_____**     Please see attached Exhibit A
☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all additional charges.

**5. Brief Description of Claim (attach any additional information):**

Please see attached Exhibit A

| **6. CREDITS AND SETOFFS:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim. In filing this claim, claimant has deducted all amounts that claimant owes to debtor.<br><br>**7. SUPPORTING DOCUMENTS:** *Attach copies of supporting documents*, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, or evidence of security interests. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary. Any attachment must be 8-1/2" by 11". All invoices supporting the claimed Transaction Expenses were provided to the Debtor and are available upon request.<br><br>**8. DATE-STAMPED COPY:** To receive an acknowledgement of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim. | **THIS SPACE IS FOR COURT USE ONLY**<br><br>**RECEIVED**<br>JUL 15 2009<br><br>KURTZMAN CARSON CONSULTANTS |
|---|---|

| Date<br>July 14, 2009 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any)<br><br>Peter A. Jenson VP |
|---|---|

☒ Date Stamped Copy Returned
☐ No self addressed stamped envelope
☐ No copy to return



054448109071500000000381

# Exhibit A

KAYE SCHOLER LLP
425 Park Avenue
New York, New York 10022
Tel. (212) 836-8000
Fax. (212) 836-8689
Myron Kirschbaum
Benjamin Mintz
Sapna W. Palla
Angela R. Vicari

*Attorneys for Defendants Harbinger Del-Auto
Investment Company Ltd. and Harbinger
Capital Partners Master Fund I, Ltd.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

| | |
|---|---|
| In re: | : |
| | :    Chapter 11 |
| DELPHI CORPORATION, et. al. | :    Case No. 05-44481 (RDD) |
| | :    (Jointly Administered) |
|           Debtors. | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

| | |
|---|---|
| DELPHI CORPORATION, | : |
| | : |
|           Plaintiff, | : |
| | : |
| - against - | : |
| | :    Adversary Proceeding |
| APPALOOSA MANAGEMENT L.P., A-D | :    Case No. 08-01232 (RDD) |
| ACQUISITION HOLDINGS, LLC, HARBINGER | : |
| DEL-AUTO INVESTMENT COMPANY, LTD., | : |
| PARDUS DPH HOLDING LLC, MERRILL LYNCH, | : |
| PIERCE, FENNER & SMITH INCORPORATED, | : |
| GOLDMAN SACHS & CO., HARBINGER | : |
| CAPITAL PARTNERS MASTER FUND I, LTD., | : |
| and PARDUS SPECIAL OPPORTUNITIES | : |
| MASTER FUND L.P., | : |
| | : |
|           Defendants. | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**ANSWER AND COUNTERCLAIMS OF DEFENDANTS HARBINGER DEL-AUTO**
**INVESTMENT COMPANY LTD. AND HARBINGER CAPITAL PARTNERS MASTER**
**FUND I, LTD.**

31711588.DOC

Defendants Harbinger Del-Auto Investment Company Ltd. ("Harbinger Del-Auto") and Harbinger Capital Partners Master Fund I, Ltd. ("Harbinger Capital") (collectively "Harbinger defendants"), by and through their attorneys, Kaye Scholer LLP, respond to the Complaint of Delphi Corporation ("Delphi")[1], as follows:

## PRELIMINARY STATEMENT

1.      Deny all the allegations of paragraph 1 except deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 1 concerning parties other than the Harbinger defendants.

2.      Deny all the allegations of paragraph 2 except admit that Delphi purports to seek a decree of specific performance, that Harbinger Del-Auto, the other defendants herein, UBS Securities LLC ("UBS") (collectively "Defendants") and Delphi are parties to certain agreements and refer to those agreements for their terms.

3.      Deny all the allegations of paragraph 3 except admit that Delphi purports to seek to recover damages if a final judgment of specific performance is not awarded and refer to the agreements between the parties for their terms.

4.      Deny all the allegations of paragraph 4 except deny knowledge or information sufficient to form a belief as to the truth or falsity of what Delphi alleges it believes.

5.      Deny all the allegations of paragraph 5 except admit that the ADAH had the right to terminate the Investment Agreement (or the "EPCA") if the closing did not occur by April 4, 2008.

---

[1]      Capitalized terms not defined herein shall have the same meaning assigned to them in the Complaint.

6.      Deny all the allegations of paragraph 6 except deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 6 concerning parties other than the Harbinger defendants, and admit that Delphi and certain of the Defendants entered into the EPCA and certain Commitment Letter Agreements, respectively, and refer to those agreements for their terms, and admit that the EPCA and the Commitment Letter Agreements were developed through a process that involved negotiations among the various parties in the Chapter 11 proceedings as well as conferences and hearings with the Court.

7.      Deny all the allegations of paragraph 7.

8.      Deny all the allegations of paragraph 8 except admit that ADAH sent Delphi a notice of termination of the EPCA on April 4, 2008 (the "April 4 Letter") and refer to the April 4 Letter and the EPCA for their respective terms.

9.      Deny all the allegations of paragraph 9 except deny knowledge or information sufficient to form a belief as to what Delphi alleges it believes.

10.     Deny all the allegations of paragraph 10 except admit that Delphi purports to seek a decree of specific performance and monetary damages.

11.     Admit the allegations of paragraph 11 except deny that this Court has jurisdiction to the extent there is a right to a trial by jury.

12.     Deny all the allegations of paragraph 12 except refer to the EPCA for its terms.

13.     Deny all the allegations of paragraph 13 except refer to the Commitment Letter Agreements for their terms.

14.     Deny all the allegations of paragraph 14 except admit that by Order dated January 25, 2008 (the "Confirmation Order"), the Court confirmed the Plan and refer to the Plan for its terms.

15.     Deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 15.

16.     Deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 16 except admit that ADAH is a party to the EPCA, and refer to the EPCA for its terms.

17.     Deny all the allegations of paragraph 17 except admit that Harbinger Del-Auto is a company organized under the laws of the Cayman Islands with an office located at 555 Madison Avenue, New York, that Harbinger Del-Auto is an affiliate of Harbinger Capital, and that Harbinger Del-Auto is a party to the EPCA, and refer to the EPCA for its terms.

18.     Deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 18 except admit that Pardus DPH is a party to the EPCA and refer to the EPCA for its terms.

19.     Deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 19 except admit that Merrill is a party to the EPCA, and refer to the EPCA for its terms.

20.     Deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 20 except admit that Goldman is a party to the EPCA, and refer to the EPCA for its terms.

21.     Deny all the allegations of paragraph 21 except admit that UBS is a party to the EPCA and that it is being sued separately, and refer to the EPCA for its terms.

22.     Deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 22 except admit that AMLP is a party to the AMLP Commitment Letter and refer to the AMLP Commitment Letter for its terms.

23.     Deny all the allegations of paragraph 23 except admit that Harbinger Capital is a company organized under the laws of the Cayman Islands with an office located at 555 Madison Avenue, New York, that Harbinger Capital is a signatory to the Harbinger Capital Commitment Letter and refer to the Harbinger Capital Commitment Letter for its terms.

24.     Deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 24 except admit that Pardus is a signatory to the Pardus Commitment Letter and refer to the Pardus Commitment Letter for its terms.

25.     Deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 25.

26.     Deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 26.

27.     Deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 27.

28.     Deny all allegations of paragraph 28 of the Complaint except admit that on October 8, 2005, Delphi and 38 of its U.S. subsidiaries filed voluntary petitions in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") for relief under Chapter 11 of the United States Bankruptcy Code and that on October 14, 2005, three additional U.S. Delphi affiliates filed voluntary petitions, and deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of the third and fourth sentences of paragraph 28.

29.    Deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 29.

30.    Deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 30 except admit that Delphi and General Motors Corporation ("GM") are parties to a Global Settlement Agreement dated September 6, 2007, and a Master Restructuring Agreement dated September 6, 2007, which are filed as exhibits 7.20(a) and 7.20(b) to the Plan, respectively.

31.    Deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 31.

32.    Deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 32.

33.    Deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 33, except admit that the first version of the EPCA was signed in December 2006.

34.    Admit the allegations of paragraph 34.

35.    Deny all the allegations of paragraph 35 except refer to the December 7, 2007 Transcript for its contents.

36.    Deny all the allegations of paragraph 36 except refer to the November 16, 2007 Transcript for its contents.

37.    Deny all the allegations of paragraph 37 except admit that the Court approved Delphi's entry into the EPCA, as amended, in a ruling from the bench on December 7, 2007 and a written order dated December 10, 2007.

38.    Deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 38 except admit that the Court issued the Confirmation Order on January 25, 2008.

39.    Deny all the allegations of paragraph 39 except refer to the EPCA and the Plan for their respective terms.

40.    Deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 40 except refer to the EPCA for its terms.

41.    Deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 41.

42.    Admit that the EPCA obligates Delphi to pay certain fees to the Plan Investors and refer to the EPCA for its terms.

43.    Deny knowledge or information sufficient to form a belief as to Delphi's belief or representations regarding the fees payable by Delphi under the EPCA, and deny all remaining allegations of paragraph 43.

44.    Deny all allegations of paragraph 44 except refer to the EPCA for its terms and deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 44 regarding any representations made by AMLP to Delphi or the Court.

45.    Deny all allegations of paragraph 45 except refer to the EPCA for its terms.

46.    Deny all the allegations of paragraph 46 except refer to the EPCA for its terms.

47.     Deny all the allegations of paragraph 47 except deny knowledge or information sufficient to form a belief as to the truth of the allegations as to what position AMLP has taken.

48.     Deny all the allegations of paragraph 48 except refer to the EPCA for its terms.

49.     Deny all the allegations of paragraph 49 except refer to the Commitment Letter Agreements for their terms.

50.     Deny all the allegations of paragraph 50 except refer to the AMLP Commitment Letter Agreement for its terms.

51.     Deny all the allegations of paragraph 51 except refer to the Harbinger Capital Commitment Letter Agreement for its terms.

52.     Deny all the allegations of paragraph 52 except refer to the Pardus Commitment Letter Agreement for its terms.

53.     Deny all the allegations of paragraph 53 except refer to the Commitment Letter Agreements for their terms.

54.     Deny all the allegations of paragraph 54 except refer to the Commitment Letter Agreements for their terms.

55.     Deny all the allegations of paragraph 55 except refer to the Commitment Letter Agreements for their terms.

56.     Deny all the allegations of paragraph 56 except refer to the Commitment Letter Agreements for their terms.

57.     Deny all allegations of paragraph 57 except refer to the Plan for its terms.

58.    Deny all the allegations of paragraph 58 except refer to the EPCA and the Commitment Letter Agreements for their respective terms.

59.    Deny all the allegations of paragraph 59.

60.    Deny all the allegations of paragraph 60 except refer to the transcripts of the July 2007 hearings and December 6 and 7, 2007 hearings for their contents.

61.    Deny all the allegations of paragraph 61 except refer to the transcripts of the hearings on December 6 and 7, 2007 and to the exhibits admitted into evidence for their contents.

62.    Deny all the allegations of paragraph 62 except refer to the November 16, 2007 Transcript for its contents.

63.    Deny all the allegations of paragraph 63 except refer to the March 7, 2008 Transcript for its contents.

64.    Deny all the allegations of paragraph 64 except admit that the Court entered the Confirmation Order on January 25, 2008 and refer to the Plan for its terms.

65.    Deny all the allegations of paragraph 65 except admit that the Plan was confirmed with the support of AMLP, the Investors and others and refer to the EPCA for its terms.

66.    Deny all allegations of paragraph 66 except admit that the Bankruptcy Court entered an order on November 16, 2007, refer to the Order for its terms and deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations regarding what Delphi anticipated regarding its exit financing.

67.    Deny all allegations of paragraph 67 except admit that on January 9, 2008 Delphi announced the commencement of the syndication of its exit financing package, and deny

knowledge or information sufficient to form a belief as to the truth or falsity of the allegations to the extent they pertain to discussions between Delphi and parties other than the Harbinger defendants.

68.    Deny all the allegations of paragraph 68 except refer to the Plan for its terms.

69.    Deny all the allegations of paragraph 69 except refer to the EPCA for its terms.

70.    Deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 70 except deny all the allegations of the last sentence of paragraph 70.

71.    Deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 71.

72.    Deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 72.

73.    Deny all allegations of paragraph 73 except admit that Harbinger Del-Auto, Pardus DPH, ADAH, Merrill, UBS and Goldman, and the Additional Investors, are parties to the Additional Investor Agreement dated June 20, 2007, and refer to that agreement for its terms.

74.    Deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 74.

75.    Deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 75.

76.     Deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 76.

77.     Deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 77.

78.     Deny all the allegations of paragraph 78 except deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 78 to the extent they relate to parties other than the Harbinger defendants.

79.     Deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 79.

80.     Deny all the allegations of paragraph 80 except deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in the second sentence of paragraph 80.

81.     Deny all the allegations of paragraph 81 of the Complaint except deny knowledge or information sufficient to form a belief concerning AMLP's communications with its lawyers.

82.     Deny all allegations of paragraph 82 except deny knowledge or information sufficient to form a belief as to the truth or falsity of allegations concerning statements by any Additional Investor.

83.     Deny all the allegations to the extent they pertain to the Harbinger defendants and deny knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations of paragraph 83 except admit that the original EPCA was approved by the Court in August 2007 and that hearings were held in December 2007 and January 2008 to obtain approval for the amended EPCA and the Plan.

84.     Deny all allegations of paragraph 84 except admit that AMLP, Harbinger Capital, Pardus, Merrill and UBS entered into a common interest agreement and refer to the agreement for its terms, and that on February 13, 2008, Thomas E. Lauria, counsel for AMLP and ADAH, sent a letter to John Wm. Butler, Jr., counsel for Delphi, and refer to the letter for its contents.

85.     Deny all allegations of paragraph 85 except admit that on February 20, 2008, John Wm. Butler, Jr., counsel for Delphi, sent a letter to Thomas E. Lauria, counsel for AMLP and ADAH, and that on February 24, 2008, Mr. Lauria sent a letter to Mr. Butler, and refer to the letters for their respective contents.

86.     Deny all the allegations of paragraph 86 except admit that Delphi filed a motion under 11 U.S.C. § 1142(b), which was denied by the Court, and refer to the transcript of the Court's ruling on that motion for its contents.

87.     Deny all the allegations of paragraph 87, except deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations concerning Delphi's payments to its Lead Arrangers and its activities concerning the Rights Offering.

88.     Deny all the allegations of paragraph 88.

89.     Deny all the allegations of paragraph 89 except admit that on April 4, 2008, ADAH sent Delphi the April 4 Letter terminating the EPCA and refer to the April 4 Letter for its contents.

90.     Deny all the allegations of paragraph 90.

91.     Deny all the allegations of paragraph 91 except refer to the EPCA and the April 4 Letter for their respective contents.

92.     Deny all the allegations of paragraph 92 except refer to the EPCA and April 4 Letter for their respective contents.

93.     Deny all of the allegations of paragraph 93 except refer to the EPCA for its terms.

94.     Deny all allegations of paragraph 94 except admit that on April 5, 2008, ADAH sent Delphi a letter terminating the EPCA in accordance with Section 12(d)(iii) of the EPCA and refer to the April 5, 2008 letter for its contents.

95.     Paragraph 95 calls for a legal conclusion and therefore requires no answer. To the extent an answer is required, the Harbinger defendants deny all the allegations of paragraph 95.

96.     Deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 96.

97.     Deny all the allegations of paragraph 97.

98.     Deny all the allegations of paragraph 98.

99.     Deny all the allegations of paragraph 99 except refer to the EPCA for its terms.

100.    Deny all the allegations of paragraph 100.

101.    Deny all the allegations of paragraph 101 except refer to the EPCA, the April 4 Letter, and the transcript of the March 7, 2008 ruling for their respective contents.

102.    Deny all the allegations of paragraph 102 except refer to the EPCA and the April 4 Letter for their respective contents.

103.    Deny all the allegations of paragraph 103.

## FIRST CLAIM FOR RELIEF
**(against Investors for Breach of Contract: the Investment Agreement)**

104.     The Harbinger defendants repeat the responses contained in paragraphs 1 through 103 above as if fully set forth in this paragraph.

105.     Deny all the allegations of paragraph 105 except admit that Delphi and the Investors are parties to the EPCA which was a valid and binding contract until terminated.

106.     Deny all the allegations of paragraph 106 and refer to the EPCA for its terms.

107.     Deny all the allegations of paragraph 107.

108.     Deny all the allegations of paragraph 108.

109.     Deny all the allegations of paragraph 109.

110.     Paragraph 110 contains legal conclusions to which no answer is required. To the extent an answer is required, the Harbinger defendants deny all the allegations of paragraph 110.

111.     Paragraph 111 contains legal conclusions to which no answer is required. To the extent an answer is required, the Harbinger defendants deny all the allegations of the paragraph 111.  Moreover, the Harbinger defendants aver that in its Order deciding their Motion to Dismiss, dated August 11, 2008, the Court dismissed Delphi's claims to the extent it sought either specific performance or damages in excess of $38,944,000 against the Harbinger defendants.

112.     Paragraph 112 contains legal conclusions to which no answer is required. To the extent an answer is required, the Harbinger defendants deny all the allegations of the paragraph 112.

### SECOND CLAIM FOR RELIEF
#### (against the Commitment Parties for Breach of Contract: the Commitment Letter Agreements)

113.    The Harbinger defendants repeat the responses contained in paragraphs 1 through 112 above as if fully set forth herein.

114.    Deny all the allegations of paragraph 114 except admit that Delphi and the Investors are parties to the EPCA which was a valid and binding contract until terminated.

115.    Deny all the allegations of paragraph 115 except refer to the Commitment Letters for their terms.

116.    Deny all the allegations of paragraph 116.

117.    Deny all the allegations of paragraph 117.

118.    Deny all the allegations of paragraph 118.

119.    Paragraph 119 contains a legal conclusion to which no answer is required. To the extent an answer is required, the Harbinger defendants deny all the allegations of paragraph 119.

120.    Paragraph 120 contains legal conclusions to which no answer is required. Moreover, in its August 11, 2008 Order, the Court dismissed Delphi's second claim for relief to the extent it seeks specific performance or damages in excess of $38,944,000 against Harbinger Capital either under the Harbinger Commitment Letter or under a veil piercing theory. To the extent and answer is required, Harbinger denies all the allegations of paragraph 120.

121.    Paragraph 121 contains legal conclusions to which no answer is required. To the extent an answer is required, the Harbinger defendants deny all the allegations of paragraph 121.

### THIRD CLAIM FOR RELIEF
### (against all Defendants under 11 U.S.C. § 1142)

122.    The Harbinger defendants repeat the responses contained in paragraphs 1 through 121 above as if fully set forth herein.

123.    Paragraph 123 calls for a legal conclusion and therefore requires no
answer. To the extent an answer is required, the Harbinger defendants deny all the allegations of
paragraph 123.

124.    Deny all the allegations of paragraph 124.

125.    Deny all the allegations of paragraph 125.

126.    Deny all the allegations of paragraph 126.

127.    Paragraph 127 calls for a legal conclusion and therefore requires no
answer.  To the extent an answer is required, the Harbinger defendants deny all the allegations of
paragraph 127.

### FOURTH CLAIM FOR RELIEF
**(against Appaloosa for Fraud)**

128.    The Harbinger defendants repeat the responses contained in paragraphs 1
through 127 above as if fully set forth herein.

129.    Deny all the allegations of paragraph 129 that pertain to the Harbinger
defendants and otherwise deny knowledge or information sufficient to form a belief as to the
truth or falsity of the allegations contained in paragraph 129.

130.    Deny all the allegations of paragraph 130 that pertain to the Harbinger
defendants and otherwise deny knowledge or information sufficient to form a belief as to the
truth or falsity of the allegations contained in paragraph 130.

131.    Deny knowledge or information sufficient to form a belief as to the truth
or falsity of the allegations contained in paragraph 131.

132.    Deny knowledge or information sufficient to form a belief as to the truth
or falsity of the allegations contained in paragraph 132.

133.    Deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 133.

134.    Deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 134.

## FIFTH CLAIM FOR RELIEF
### (against All Defendants for Equitable Subordination and Disallowance)

135.    The Harbinger defendants repeat the responses contained in paragraphs 1 through 134 above as if fully set forth herein.

136.    Paragraph 136 calls for a legal conclusion and therefore requires no answer. To the extent an answer is required, the Harbinger defendants deny all the allegations of paragraph 136 to the extent they pertain to the Harbinger defendants.

137.    Paragraph 137 calls for a legal conclusion and therefore requires no answer. To the extent an answer is required, the Harbinger defendants deny all the allegations of paragraph 137 to the extent they pertain to the Harbinger defendants.

138.    Paragraph 138 calls for a legal conclusion and therefore requires no answer. To the extent an answer is required, the Harbinger defendants deny all the allegations of paragraph 138 to the extent they pertain to the Harbinger defendants. Moreover, the Harbinger defendants aver that in its August 11, 2008 Order on the Motions to Dismiss, the Court dismissed Claim Five of the Complaint for Equitable Subordination and Disallowance to the extent it seeks relief as against Harbinger Del-Auto and Harbinger Capital.

139.    Harbinger denies that Delphi is entitled to any relief specified in the unnumbered paragraph following paragraph 138 of the Complaint, or any other relief whatsoever.

## FIRST AFFIRMATIVE DEFENSE

31711588.DOC                                        17

140.   The Complaint fails to state a claim against the Harbinger defendants upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

141.   The Harbinger defendants deny that Delphi was harmed or damaged to the extent alleged and call for strict proof thereof.

### THIRD AFFIRMATIVE DEFENSE

142.   Delphi's alleged harm and damages were due to, and proximately caused by, in whole or in part, other events, conditions, instrumentalities, representations and/or acts or omissions of individuals or entities other than the Harbinger defendants.

### FOURTH AFFIRMATIVE DEFENSE

143.   Section 11(b) of the EPCA provides that there is no liability for breach by any party except for a "willful" breach.

144.   Neither Harbinger Del-Auto, nor, upon information and belief, any of the other Plan Investors, willfully breached the EPCA.

### FIFTH AFFIRMATIVE DEFENSE

145.   Section 9(a) of the EPCA provides that "the obligations of each of the Investors hereunder to consummate the transactions contemplated hereby shall be subject to the satisfaction prior to the Closing Date of each of the following conditions. . . ." Thus, under the express terms of Section 9(a) of the EPCA, Harbinger Del-Auto had no obligation to close if any of the other parties failed to perform their obligations under the EPCA prior to the time when Harbinger Del-Auto otherwise would have been required to close. In addition, under the Harbinger Commitment Letter, Harbinger Capital's obligation to fund Harbinger Del-Auto is subject to the satisfaction of conditions to the EPCA.

146.   Delphi failed to perform its obligations under the EPCA as of the closing

date of April 4, 2008.  Accordingly, ADAH terminated the EPCA under Sections 12(d)(v),

12(d)(vi)(A) and 12(d)(vi)(B) of the EPCA on April 4, 2008, based on Delphi's failure to satisfy

the conditions set forth in the April 4 Letter. On April 5, 2008, ADAH sent Delphi an additional

notice of termination under Section 12(d)(iii) of the EPCA, which it had the unconditional right

to do if no closing had yet occurred.  Since the EPCA was terminated, the Harbinger defendants

were not required to perform and did not breach the EPCA or the Harbinger Commitment Letter.

### SIXTH AFFIRMATIVE DEFENSE

147.   Delphi's claims are barred in whole or in part by Delphi's failure to fulfill

its obligations and/or satisfy the conditions precedent set forth in the EPCA and the Harbinger

Commitment Letter, including but not limited to, obligations and/or conditions encompassed in

Sections 3(d), 9(a)(iii), 9(a)(v), 9(a)(vi), 9(a)(ix), 9(a)(xvi), 9(a)(xvii), 9(a)(xix), 9(a)(xx),

9(a)(xxvii), 5(p), 5(t) and 8 of the EPCA, thereby excusing the Harbinger defendants'

performance under the EPCA and the Harbinger Commitment Letter.

### SEVENTH AFFIRMATIVE DEFENSE

148.   Delphi is barred from recovering its alleged damages because, upon

information and belief, it failed to take the appropriate steps to mitigate its damages.

### EIGHTH AFFIRMATIVE DEFENSE

149.   As of June 30, 2008, no closing under the EPCA had occurred and

Harbinger Del-Auto exercised its unconditional right, under Section 12(d) of the EPCA, to

terminate the EPCA if no closing had occurred by that date.  Harbinger Del-Auto's termination

of the EPCA bars, in whole or in part, the relief sought by Delphi against the Harbinger

defendants.

31711588.DOC                                    19

### NINTH AFFIRMATIVE DEFENSE

150.   Delphi's claims are barred by the doctrine of unclean hands.

### TENTH AFFIRMATIVE DEFENSE

151.   Delphi's claims are barred, in whole or in part, because the EPCA and the

Plan cannot be implemented or performed by their terms or under 11 U.S.C. § 1142.

### ELEVENTH AFFIRMATIVE DEFENSE

152.   Delphi is guilty of undue delay and is not entitled to equitable relief.

### TWELFTH AFFIRMATIVE DEFENSE

153.   Delphi's claims are barred in whole or in part by the doctrine of waiver.

### THIRTEENTH AFFIRMATIVE DEFENSE

154.   Delphi's claims are barred in whole or in part by the doctrine of estoppel.

### FOURTEENTH AFFIRMATIVE DEFENSE

155.   Delphi's claims are barred in whole or in part by the doctrine of laches.

### <u>COUNTERCLAIMS</u>

Defendants Harbinger Del-Auto Investment Company Ltd. ("Harbinger Del-

Auto"), and Harbinger Capital Partners Master Fund I, Ltd. ("Harbinger Capital") (collectively

"Harbinger defendants"), as and for their counterclaim against Delphi, state and allege as

follows:

## THE PARTIES

156.   Harbinger Del-Auto is a company organized under the laws of the Cayman Islands, and its principal place of business is located at 555 Madison Avenue, New York, New York 10022.

157.   Harbinger Capital is a company organized under the laws of the Cayman Islands, and its principal place of business is located at 555 Madison Avenue, New York, New York 10022.

158.   Upon information and belief, Delphi Corporation ("Delphi") is a company organized under the laws of the state of Delaware, and its principal place of business is located at 5725 Delphi Drive, Troy, Michigan 48098-2815.

## JURISDICTION

159.   This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334 and supplemental jurisdiction under 28 U.S.C. § 1367 because the Harbinger defendants' counterclaims arise out of the subject matter of the original action and are brought under Rule 13 of the Federal Rules of Civil Procedure and Rule 7013 of the Federal Rules of Bankruptcy Procedure.

160.   This proceeding is a core proceeding under 28 U.S.C. § 157(b) arising in a case under title 11 of the United States Code, 11 U.S.C. §§ 101-1532.

161.   Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## FACTUAL BACKGROUND

### Delphi's Entry into an Alternate Transaction Agreement

162.   Section 9(a)(v) of the EPCA provides that as a condition of the Plan Investors' obligation to close on the EPCA, Delphi " shall not have entered into any letter of

intent, memorandum of understanding, agreement in principle or other agreement...or taken any

action to seek any Bankruptcy Court approval relating to, any Alternate Transaction (an

'**Alternate Transaction Agreement**')." Furthermore, section 9(a)(v) defines an "Alternate

Transaction" as "any plan, proposal, offer or transaction that is inconsistent with this Agreement,

the Preferred Term Sheet, the GM Settlement or the Plan, other than a Chapter 7 liquidation."

      163.    The EPCA also provides that as a condition of the Plan Investors'

obligation to close on the EPCA, there shall not have been a "Change of Recommendation" by

Delphi. Thus, Section 9(a)(vi) states:

> Change of Recommendation. There shall not have been a Change of
> Recommendation. For purposes of this Agreement, a "**Change of
> Recommendation**" shall mean, . . . the Company or its board of directors or any
> committee thereof shall have approved or recommended, or proposed to approve
> or recommend (including by filing any pleading or document with the Bankruptcy
> Court), any Alternate Transaction.

      164.    Section 12(g)(i) of the EPCA provides that, in the event the agreement is

terminated because Delphi has entered into an Alternate Transaction Agreement, "the Company

shall pay a fee of $82,500,000 (the 'Alternate Transaction Fee') to the Investors" in the

proportions set out in Schedule 2 to the EPCA.

      165.    Under Section 9(a)(xix) of the EPCA, Delphi was required to obtain

financing on the terms indicated in the "Financing Letter." Section 3(qq) of the EPCA defines

the Financing Letter as the "best efforts" financing letter from J.P. Morgan Securities, Inc., JP

Morgan Chase Bank, N.A. and Citigroup Global Markets Inc., dated November 3, 2007, and as

approved by the Bankruptcy Court on November 16, 2007, and provides that the debt financing

would be "on the terms indicated" in the Financing Letter.

      166.    Delphi covenanted, in Section 5(t) of the EPCA that it would "use [its]

reasonable best efforts to arrange the Bank Financing and the second lien debt to be issued to

GM. . . on the terms and conditions described in the Financing Letter." Section 5(t) further

provides that Delphi is not permitted to approve any "amendment or modification to be made to,

or any waiver of any provision or remedy under, in each case, to the extent adverse to the

Company or the Investors, the Financing Letter . . . ."

167.    Delphi's exit financing structure, as required by the Financing Letter, was

to consist of a senior secured first-lien asset-based revolving credit facility in an aggregate

amount of $1.6 billion, a senior secured first-lien term facility in an aggregate amount of $3.7

billion (the "First-Lien Loan") and a senior secured second-lien term facility in the amount of

$1.5 billion (the "Second-Lien Loan"), of which up to $750 million would be in the form of a

note issued to GM.  Delphi subsequently reduced its planned exit facilities, reducing the Second-

Lien Loan from $1.5 billion to $825 million, of which up to $750 million would be in the form

of a note issued to GM.  Upon information and belief, Delphi began to market that exit financing

on January 9, 2008.

168.    In connection with the confirmation hearing which commenced on

January 17, 2008, Delphi's Chief Restructuring Officer John Sheehan submitted a declaration

indicating that Delphi expected $3.7 billion in actual proceeds from the first lien financing and

$825 million in actual proceeds from the second lien financing.  He also stated in his declaration

that "[t]he Debtors expect to receive commitments from interested lenders by January 23, 2008,

and to have credit documentation for the exit financing in place by the first week in February."

At the confirmation hearing, on January 17, 2008, the Court asked Mr. Sheehan directly,

"knowing what you know today with regard to [the raising of exit financing], have there been

any developments in connection with that process between the date of your declaration and

today, that would alter your view as to the likely outcome of that process?"  Mr. Sheehan

testified in response, "[t]he short answer to that question is no Your Honor." Following

Delphi's representations, the Court confirmed the Plan on January 25, 2008.

169.    Upon information and belief, Delphi attempted, unsuccessfully, to obtain

financing commitments on the terms set forth in the Financing Letter and as modified

subsequently by Delphi.

170.    Upon information and belief, on or about January 30, 2008, after its initial

attempts to market the financing had failed, Delphi approached ADAH with a revised exit

financing proposal that included GM's participation in the first lien financing in an amount of

$2.0 billion, with the remaining $1.7 billion of the financing to be raised in the credit markets.

171.    Upon information and belief, at a meeting on February 6, 2008, ADAH

expressed its concerns to Delphi and GM about the revised exit financing proposal including that

it contemplated significantly higher interest than permitted under the EPCA, anticipated issuing

the first and second lien debt at a significant original issue discount ("OID") thereby reducing

gross debt proceeds, overly concentrated GM's participation in the capital structure, and left

Delphi insufficiently capitalized. Upon information and belief, Delphi and GM promised to take

such comments under consideration and to consider other proposals or alternatives.

172.    Upon information and belief, Delphi also threatened at the time that if

ADAH did not agree to the proposal, it would pursue litigation against the Plan Investors seeking

specific performance of the Plan Investors' obligations under the EPCA.

173.    On February 7, 2008, John Sheehan, Delphi's Chief Restructuring Officer,

e-mailed Jim Bolin, Vice President of Appaloosa Partners, Inc., with an updated proposal from

GM (the "GM Proposal") that purported to address some of the concerns of ADAH, and asked

that ADAH discuss the proposal with the other Plan Investors. Instead of reducing GM's

participation, the GM Proposal provided that GM's participation in the first and second lien financing would be in an aggregate amount of over $2.8 billion, with the balance of Delphi's financing to be raised in the credit markets.

174.    The GM Proposal was inconsistent with the terms of the EPCA and the Financing Letter in several respects.

175.    First, the GM Proposal materially altered the interest rate terms under the Financing Letter. Annex I of the Financing Letter sets forth the material terms concerning interest and certain fees. However, Delphi's GM Proposal presented interest rates significantly higher than the terms indicated in the Financing Letter. Such interest rate differentials are material and would result in hundreds of millions of dollars of additional interest expense over the life of the loans — much more than what the Plan Investors bargained for under the EPCA.

176.    Second, the GM Proposal materially altered the amount of debt proceeds contemplated in the Financing Letter and the EPCA, even though the Financing Letter makes clear that proceeds from debt financings had to remain constant.

177.    Third, the GM Proposal sought to raise the wrong amount of second lien debt. The terms indicated in the Financing Letter require the Debtor to raise $1.5 billion of Second Lien financing. The GM Proposal proposed to raise only $825 million.

178.    Fourth, the GM Proposal was in contravention of Section 5(p) of the EPCA which restricts Delphi's ability to enter into any agreements with GM. Section 5(p), states, in relevant part:

> [T]he Company shall not enter into any other agreement with GM that (i) is materially inconsistent with this Agreement and the Plan, (ii) is outside the ordinary course of business or (iii) the terms of which would have a material impact on the Investors' proposed investment in the Company. The Company has not entered into any material written agreements between or among the Company or any of its Subsidiaries and GM or any of its Subsidiaries directly relating to the

Plan or the GM Settlement or the performance of the Transaction Agreements,
and any such written agreements hereafter entered into will be disclosed promptly
to ADAH.

179.    The GM Proposal violated the provisions of Section 5(p).  First, the GM
Proposal was "materially inconsistent" with the EPCA, the Plan and the Financing Letter.  The
EPCA requires that Delphi receive the proceeds of the "Debt Financing" on the terms indicated
in the Financing Letter.  The Financing Letter contemplates that the debt would be raised from a
"syndicate of financial institutions," which GM is not.  The fact that GM is the major lender is
material here for many reasons including that GM, a customer with deep relationships with
Delphi, will have other interests beyond its position in the loan, which could adversely impact
Delphi going forward.  Furthermore, whether Delphi could secure financing from third party
lenders was material because it was to be a market test of the viability of a reorganized Delphi,
and its business plan, thus in effect validating the Plan Investors' investment.

180.    Second, the terms of the GM Proposal would have a "material impact on
the [Plan] Investors' proposed investment."  Delphi's Plan was premised on a separation of
Delphi from GM so that Delphi could develop customer relationships with other auto
manufacturers.  GM's increased participation, including the likelihood that, contrary to the
business plan, Delphi would be placed in a position of having greater reliance upon and control
by GM such that it might be difficult to attract the new customers that form the basis of the
business plan, would have an adverse affect on the Plan Investors' proposed investment.
Further, with $2 billion in first lien debt, GM would have undue leverage over Delphi's business
going forward.

181.    Third, GM's agreement to fund $2.0 billion of first lien financing, which is about $750 million more than originally contemplated under the exit financing structure, is clearly outside the "ordinary course of business."

182.    Thus, the GM Proposal differed materially from the Financing Letter in a manner adverse to the Plan Investors' interests, and a reorganization built around the GM Proposal would present a far more precarious scenario than that contemplated by the EPCA.

183.    In a letter dated February 13, 2008, Thomas Lauria, counsel to AMLP and ADAH, wrote to John Butler, Delphi's counsel, expressing serious concerns about the GM Proposal, including the fact that it was inconsistent with the terms of the EPCA and Financing Letter.

184.    On Saturday, February 23, 2008, Delphi circulated proposed marketing materials with respect to the re-launch of its exit financing.  In the cover email, Delphi stated that it intended to issue a press release (announcing the re-launch of its exit financing) on the next business day, the morning of Monday, February 25, 2008.  On Sunday evening, February 24, 2008, ADAH reiterated in a letter to Delphi that it believed that the GM Proposal was "non-compliant and inconsistent with the EPCA."

185.    On March 5, 2008, Delphi filed an "Expedited Motion Under 11 U.S.C. § 1142(b) and Fed. R. Bankr. P. 3020(d) For Implementation of Debtors' Confirmed Plan of Reorganization" ("the 1142 Motion").  In contravention of its obligations under Section 9(a)(v) of the EPCA, Delphi's 1142 Motion sought an order, *inter alia*, finding that the terms of the GM Proposal were consistent with the EPCA and directing the Plan Investors to use their best efforts to support the GM Proposal.

186.   On March 7, 2008, the Court denied the 1142 Motion stating that "the incurrence of up to almost two billion dollars of additional notes, more than the $750 million originally contemplated to GM, would be outside the ordinary course of the Debtor's business, which is precluded by paragraph 5(p)(ii) of the EPCA."

187.   By bringing the 1142 Motion and seeking the Bankruptcy Court's approval for its GM Proposal, which was inconsistent with the EPCA and the Plan, Delphi entered into an Alternate Transaction Agreement in violation of Section 9(a)(v) of the EPCA.

188.   The 1142 Motion also constituted a "Change of Recommendation" prohibited by Section 9(a)(vi) of the EPCA.

189.   On March 8, Delphi sent to the Plan Investors a revised exit financing proposal, which was all but identical to the original GM Proposal, except that Delphi and GM agreed that GM's participation would be through an unnamed GM subsidiary, which is GM Product Services Inc. ("GMPSI Proposal"). When it sent its GMPSI Proposal, Delphi stated that "[w]ith respect to Exit Financing[,] we have agreed with GM that the First Lien Note will be with a subsidiary of GM."

190.   On March 9, in an email, Thomas Lauria wrote to John Butler responding to the GMPSI proposal, and stating that it did not address the concerns expressed by the Plan Investors on February 13 and 24, and that it was "not substantively distinguishable from the prior proposal."

191.   The GMPSI Proposal also violated Section 5(p) of the EPCA.

192.   Delphi never modified its GM or GMPSI Proposals to rectify the objections raised by the Plan Investors. Moreover, the Plan Investors were never asked to waive

rights under or to amend the EPCA or the Financing Letter, and did not agree to any waiver or amendment.

193.    On April 4, 2008, due to Delphi's failure to satisfy various conditions precedent, including that it had entered into an Alternate Transaction by agreeing in principle to the GM and GMPSI Proposals, and that a Change of Recommendation had taken place, ADAH terminated the EPCA for cause. On April 5, 2008, ADAH provided a supplemental notice of termination based upon its right to terminate after the occurrence of the Closing Date Outside Date.

194.    On June 30, 2008, Harbinger-Del Auto exercised its termination right under Section 12(d) of the EPCA and sent Delphi a letter terminating the EPCA.

195.    Pursuant to Section 12(g) of the EPCA, payment of the Alternate Transaction Fee was due "no later than the close of business on the next Business Day" following ADAH's termination, i.e., by April 7, 2008.

196.    Delphi has not paid the Alternate Transaction Fee.

**Delphi's Failure to Pay Transaction Expenses**

197.    Section 2(j) of the EPCA states that Delphi "will reimburse or pay, as the case may be, the out-of-pocket costs and expenses reasonably incurred by each Investor or its Affiliates. . . including reasonable fees, costs and expenses of counsel to each of the Plan Investors or its Affiliates, and reasonable fees, costs and expenses of any other professionals retained by any of the Investors or its Affiliates in connection with the transactions contemplated hereby. . . and the Chapter 11 cases and other judicial and regulatory proceedings related to such transactions and the Chapter 11 Cases. . . . (collectively, "Transaction Expenses"))." Section

2(j) also states that Harbinger Del-Auto is entitled to such fees and expenses incurred from and

after December 1, 2006.

198.    Section 2(j) further states that Delphi shall pay the Transaction Expenses

"promptly upon submission to [Delphi] of summary statements therefor by such Investor, in each

case, without Bankruptcy Court review or further Bankruptcy Court Order, whether or not the

transactions contemplated hereby are consummated and, in any event, within 30 days of the

submission of such statements." Moreover, under Section 12(g) of the EPCA, Harbinger Del-

Auto is entitled to be paid any Transaction Expenses, due and payable that have not been

previously paid, no later than the close of business on the next Business Day following the

termination of the EPCA under Section 12(d)(v) by ADAH.

199.    The EPCA recognizes that the payment of the Transaction Expenses is an

integral part of the EPCA. Thus, Section 2(j) states that the "[t]he provision for the payment of

the Transaction Expenses is an integral part of the transactions contemplated by this Agreement

and without this provision the Investors would not have entered into this Agreement and such

Transaction Expenses shall constitute an allowed administrative expense of the Company under

Section 503(b)(1) and 507(a)(1) of the Bankruptcy Code."

200.    In the Order Authorizing and Approving Delphi-Appaloosa Equity

Purchase and Commitment Agreement pursuant to 11 U.S.C. §§ 105(a), 363(b), 503(b), and

507(a), dated August 2, 2007, (Docket No. 8856), the Court stated that "[t]he Debtors are

authorized to pay the . . . Transaction Expenses . . . in accordance with its terms and as and when

required by the Investment Agreements, except as otherwise provided below, without further

order of the Court." (Order ¶ 4). Furthermore, the Order provided that:

> Any such payments shall be fully earned when paid, non-refundable, and not
> subject to avoidance or disgorgement under any theory at law or in equity;

provided, however, that notwithstanding the foregoing, so long as the Creditors'
Committee shall support the Investment Agreements and the transactions
contemplated thereby, the Plan Investors shall provide to the Creditors'
Committee an itemization of any Transaction Expenses for which payment is
being sought, together with appropriate back-up therefor, and 90% of such
Transaction Expenses shall be paid in accordance with the terms of the
Investment Agreements as and when required thereby without further order of the
Court, with the remaining 10% (the "Holdback") to be paid ten days subsequent
to the delivery of such itemization and backup to the Creditors' Committee,
unless prior to the expiration of such ten-day period, the Creditors' Committee
objects to any of the amounts submitted for payment, in which case an amount
equal to the amount of Transaction Expenses objected to (up to the maximum
amount of the Holdback) shall be retained and not paid to the Investors pending
resolution of the dispute with the Creditors' Committee or further order of the
Court, and subject to further to the U.S. Trustee's review."

*Id.*

201.    On December 10, 2007, in an Order Under 11 U.S.C. §§ 105(a), 363(b),

503(b), and 507(a) Authorizing and Approving Delphi-Appaloosa Equity Purchase and

Commitment Agreement Amendment, (Docket No. 11382), the Court stated that except as

provided in the amended EPCA, the August 2, 2007 Order "shall remain in full force and effect."

The amended EPCA did not change any of the applicable provisions of Section 2(j).

202.    Accordingly, by letters dated March 19, 2008 and April 7, 2008, pursuant

to Section 2(j) of the EPCA, Harbinger Del-Auto, submitted statements for the reasonable fees

and expenses it incurred, from December 1, 2006 through April 4, 2008, in connection with the

EPCA.  Neither Delphi nor the Creditors' Committee objected to any of the amounts submitted

for payment, nor the itemization and backup for the statements.

203.    Delphi has not paid any portion of Harbinger Del-Auto's Transaction

Expenses.

204.    By letter dated April 25, 2008, more than 30 days after Harbinger Del-

Auto submitted its first invoice for payment, and more than 20 days after ADAH's termination

letter, Delphi's counsel Edward Friedman informed Benjamin Mintz, counsel for the Harbinger

defendants, that Delphi believed that the Harbinger defendants are not entitled to any

reimbursement for the fees and expenses incurred. Mr. Friedman's objection was not based on

any disagreement regarding the reasonableness of the requests for payment with respect to any of

the invoices, but on the ground that Harbinger Del-Auto owed Delphi more than the amount

claimed by Harbinger Del-Auto as the Transaction Expenses -- which under the EPCA is not a

basis for non-payment of the Transaction Expenses.

205.    To the extent the Court finds that Harbinger Del-Auto is liable to Delphi

for monetary damages under the EPCA, the monetary damages, if any, and the Transaction

Expenses Harbinger Del-Auto seeks arise from both parties' obligations under the EPCA. Thus,

any monetary damages assessed against Harbinger Del-Auto must be reduced by the amount of

the Transaction Expenses due to Harbinger Del-Auto.

### COUNT I
### Breach of Contract – Alternate Transaction Fee
### (Delphi's GM Proposals Breach EPCA § 9(a)(v))

206.    The Harbinger defendants repeat and reallege the allegations contained in

paragraphs 156 to 205 above as if fully set forth in this paragraph.

207.    Section 9(a)(v) defines an "Alternate Transaction" as "any plan, proposal,

offer or transaction that is inconsistent with the Agreement, the Preferred Term Sheet, and the

GM Settlement or the Plan, other than a Chapter 7 liquidation."

208.    Delphi entered into the GM and GMPSI Proposals, which are Alternate

Transactions under Section 9(a)(v) of the EPCA, because they contained terms which differed

substantially and materially from the terms the parties to the EPCA agreed to for Delphi's exit

financing.

209.    In addition, Delphi breached Section 9(a)(v) of the EPCA by seeking the

Bankruptcy Court's approval, through the 1142 Motion, for its Alternate Transaction.

210.    On April 4, 2008, ADAH terminated the EPCA, *inter alia*, because Delphi entered into an Alternate Transaction Agreement.

211.    Section 12(g)(i) of the EPCA provides that, in the event the agreement is terminated because Delphi has entered into an Alternate Transaction Agreement, "the Company shall pay a fee of $82,500,000 (the 'Alternate Transaction Fee') to the investors" in the proportions set out in Schedule 2 to the EPCA.  Pursuant to Section 12(g) and Schedule 2, Harbinger Del-Auto's pro-rata portion of Alternate Transaction Fees is 15.9375% of $82,500,000 or $13,148,437.50.

212.    Delphi has not paid the Alternate Transaction Fee.

213.    Accordingly, Harbinger Del-Auto is entitled to its pro-rata portion of Alternate Transaction Fees in the amount of $13,148,437.50, plus interest.

**COUNT II**
**Breach of Contract – Transaction Expenses**
**(Delphi's Failure to Pay Transaction Expenses Breaches EPCA § 2(j))**

214.    The Harbinger defendants repeat and reallege the allegations contained in paragraphs 156 to 213 above as if fully set forth in this paragraph.

215.    Under Section 2(j) of the EPCA, Harbinger Del-Auto is entitled to the Transaction Expenses incurred in connection with the EPCA in an amount of $1,307,285.30.

216.    Delphi has not paid any of the invoices submitted by Harbinger Del-Auto. Indeed, it has refused to do so.

217.    By refusing to pay the amounts due and owing to Harbinger Del-Auto, Delphi has breached its obligations under Section 2(j) of the EPCA.

218.    Accordingly, Harbinger Del-Auto is entitled to all the submitted fees and expenses currently due and owing, plus interest.

219.    To the extent the Court finds that Harbinger Del-Auto is liable for any monetary damages to Delphi under the EPCA, the Transaction Expenses must be deducted from any amounts owed by Harbinger Del-Auto.

### PRAYER FOR RELIEF

WHEREFORE, defendants Harbinger Del-Auto and Harbinger Capital respectfully request that this Court:

(a)    Dismiss Delphi's Complaint and each and every claim for relief therein against the Harbinger defendants, to the extent not already dismissed pursuant to this Court's Order on the Motion to Dismiss, with prejudice;

(b)    Award Harbinger Del-Auto its pro-rata portion of the Alternate Transaction Fee in the amount of $13,148,437.50 as provided under Section 12(g) of the EPCA, plus interest;

(c)    Award Harbinger Del-Auto its Transaction Expenses under Section 2(j) of the EPCA, plus interest;

(d)    Award costs, disbursements, and attorneys fees to the Harbinger defendants; and

(e)    Grant such other and further relief as the Court deems just and proper.

Dated:   New York, New York
         September 2, 2008

                              KAYE SCHOLER LLP

                              By: /s/ Myron Kirschbaum
                                  Myron Kirschbaum
                                  Benjamin Mintz
                                  Sapna W. Palla
                                  Angela R. Vicari

                              425 Park Avenue
                              New York, New York 10022
                              Tel. (212) 836-8000
                              Fax. (212) 836-8689

                              *Attorneys for Defendants Harbinger Del-Auto*
                              *Investment Company Ltd. and Harbinger*
                              *Capital Partners Master Fund I, Ltd.*