STATE OF NEW YORK
SUPREME COURT : ERIE COUNTY

---

DELPHI AUTOMOTIVE SYSTEMS, LLC

                                      Plaintiff              ANSWER WITH
v.                                                       COUNTERCLAIMS

ONTARIO SPECIALTY CONTRACTING, INC.      Index No. I 2009010438

                                    Defendant

---

Defendant Ontario Specialty Contracting, Inc. ("OSC") by and through its counsel, DUKE, HOLZMAN, PHOTIADIS & GRESENS LLP, for its Answer with counterclaims to plaintiff Delphi Automotive Systems, LLC's ("Delphi") Complaint alleges as follows:

1. Denies the allegations of paragraphs 9, 10, 12, 14, 15, 16, 17, 20, 21, 22, 23, and 24 of the Complaint.

2. Admits the allegations of paragraphs 2, 4 and 18 of the Complaint.

3. Denies knowledge and information sufficient to admit or deny paragraph 1 of the Complaint at present.

4. As to paragraph 3 of the Complaint, admit that OSC did agree to provide certain demolition services at the request of Delphi and refer the Court to the specific terms of the contract and related bid documents between the parties for the terms of said agreement.

5. As to paragraphs 5, 6, 7 and 8 of the Complaint, OSC refers the Court to the specific terms of the identified communications for their content.

6. As to paragraph 11 of the Complaint, OSC admits that one of its subcontractors has filed a lien against the Demolition Project Property (on account of Delphi's breach of

DUKE, HOLZMAN,
PHOTIADIS & GRESENS, LLP
ATTORNEYS AT LAW
1800 MAIN PLACE TOWER
350 MAIN STREET
BUFFALO, NEW YORK 14202-3718
716-855-1111
FAX 716-855-0327

-1-

contract) and otherwise deny the allegations of paragraph 11.

7. Paragraph 13 of the Complaint states a legal conclusion to which no response is required, and otherwise deny the allegations of paragraph 13.

8. As to paragraph 19 of the Complaint, OSC admits that it sold scrap metal recovered during the Demolition Project and denies that it received large sums of money for such scrap metals.

9. Denies any and all other allegations not specifically addressed above.

### FIRST DEFENSE & COUNTERCLAIM - BREACH OF CONTRACT

10. Leading up to July 2008, Delphi issued several requests for quotations ("RFQ") for the demolition of its Rochester Die Casting Building (the "Project").

11. Each RFQ contained a target price calling for payment from the contractor to Delphi, on the basis that the value of the scrap metals at the Project site were believed to exceed the costs incurred by a contractor in performing the demolition work.

12. The RFQ forms established by Delphi, expressly required the contractor to identify the total amount of "material reclamation/savage value" credited to Delphi against the Project costs.

13. The "material reclamation/savage value" attributable to the scrap metals derived from the Project site was material to funding the demolition work on the Project.

14. Delphi repeatedly increased the target price as the scrap metal market increased.

15. On or about July 9, 2008, OSC responded to Delphi's final RFQ seeking a target price of "($305,000 USD) or better proposal", with a response of ($271,033). Attached hereto as **Exhibit A** is a copy of the OSC's July 7, 2008 response to Delphi's RFQ.

DUKE, HOLZMAN,
PHOTIADIS & GRESENS, LLP
ATTORNEYS AT LAW
1800 MAIN PLACE TOWER
350 MAIN STREET
BUFFALO, NEW YORK 14202-3718
716-855-1111
FAX 716-855-0327

16. The line items within that response include a $1,189,999 credit to Delphi for "material reclamation/savage value."

17. Based on asbestos disclosure documents provided to OSC by Delphi (which are required by New York law), OSC's response included a line item of $35,265 in costs for asbestos abatement.

18. On or about July 24, 2008, Delphi issued a Purchase Order (the "Purchase Order") to OSC based on the above RFQ and accepting OSC's July 7, 2008 response. Attached hereto as **Exhibit B** is a true and correct copy of the Purchase Order, including General Terms and Conditions incorporated by reference.

19. Under the terms of the Purchase Order, OSC was to make four (4) separate progress payments to Delphi of $67,758.25 each. OSC made the first payment of $67,758.25 at or about the start of work on the Project.

20. The original project completion date under the Purchase Order was December 15, 2008.

21. Certain work, which included asbestos abatement and utility related work, was required to be completed prior to demolition of the physical structures on the Project site.

22. The scrap metals could not be removed from the physical structures on the Project site until the asbestos abatement and other pre-demolition work was completed.

23. OSC immediately mobilized and began pre-demolition work during the week of August 4, 2008.

24. The pre-demolition work was scheduled to complete on or before September 1, 2008.

DUKE, HOLZMAN,
'HOTIADIS & GRESENS, LLP
ATTORNEYS AT LAW
1800 MAIN PLACE TOWER
350 MAIN STREET
UFFALO, NEW YORK 14202-3718
716-855-1111
FAX 716-855-0327

-3-

25. Due to an error within the asbestos disclosure documents provided by Delphi, the pre-demolition asbestos abatement work on the Project went from a quantity of 1,600 s.f. to 15,600 s.f. of asbestos containing materials.

26. In other words, there was almost ten (10) times more asbestos containing materials on site than represented by Delphi.

27. Delphi has acknowledged this extra asbestos abatement work in writing and agreed to pay OSC at least $42,000.00 for the performance of such work.

28. There was also extra pre-demolition utility work required on the Project.

29. Delphi has acknowledged this extra utility work in writing and agreed to pay OSC at least $7,315.00 for the performance of such work.

30. Delphi is additionally liable for the delays, interference and impact costs resulting from this extra work.

31. As a result of the extra asbestos and utility work, and the time it took Delphi to address and respond to said issues, OSC's progress on the Project was delayed, interfered with and impacted.

32. As a result of the extra asbestos and utility work, and the time it took Delphi to address and respond to said issues, OSC was delayed in its ability to sell and remove the scrap metals from the Project site intended to fund the Project work.

33. During the period of Delphi's delays, the scrap metal market took an unprecedented and unanticipated decline from approximately $460/ton at the start of the Project to a low of approximately $80/ton.

34. On or about September 1, 2008, when OSC would have been able to sell and

DUKE, HOLZMAN,
PHOTIADIS & GRESENS, LLP
ATTORNEYS AT LAW
1800 MAIN PLACE TOWER
350 MAIN STREET
BUFFALO, NEW YORK 14202-3718
716-855-1111
FAX 716-855-0327

-4-

establish dealer pricing arrangements for the Project under the original schedule, and thereafter begin immediate delivery of scrap metals, the market price under established scrap metal pricing indexes was $405/ton.

35. By approximately November 18, 2008, when OSC was able to begin selling scrap metals on account of the above extras and delays, the market price under established scrap metal pricing indexes had dropped to only $80/ton and many scrap dealers would not even place orders or take materials.

36. On account of the extra work directed by Delphi, interference and delays, OSC received at least $424,708+/- less in revenue from the sale of scrap metals to fund the Project work.

37. The terms of the Purchase Order, provide at General Term and Condition number 3:

> 3. SPECIFICATION, DESIGN AND SCOP CHANGES
>
> Buyer [Delphi] may at any time require Seller [OSC] to implement changes to the specifications or design of the goods or to the scope of any service or work covered by this Contract, including work related to inspection, testing or quality control. While Buyer [Delphi] will endeavor to discuss any such changes will Seller [OSC] as early as practical, Seller [OSC] will promptly implement such changes. ***Buyer [Delphi] will equitably determine any adjustment in price or delivery schedules resulting from such changes***, including Buyer's [Delphi's] payment of reasonable costs of modifications to Seller's Equipment (as defined in Article 16) necessary to implement such changes. In order to assist in the determination of any equitable adjustment in price or delivery schedules, Seller [OSC] will, as requested, provide information to Buyer [Delphi], including documentation of changes in Seller's [OSC's] cost of production and the time to implement such changes. In the event of any disagreement arising out of such changes, Buyer [Delphi] and Seller [OSC] will work to resolve the disagreement in good faith, provided, however, that Seller [OSC] will continue performing under this Contract, including the manufacture and delivery of goods and prompt implementation of changes required by Buyer [Delphi], while Buyer [Delphi] and Seller [OSC] resolve any disagreement arising out of such changes.

DUKE, HOLZMAN,
PHOTIADIS & GRESENS, LLP
ATTORNEYS AT LAW
1800 MAIN PLACE TOWER
350 MAIN STREET
BUFFALO, NEW YORK 14202-3718
716-855-1111
FAX 716-855-0327

-5-

Exhibit B (emphasis added).

38. In breach of the Purchase Order, Delphi has failed and refused to equitably adjust the contract price between the parties.

39. Although it has been acknowledged that additional pre-demolition work was directed by Delphi, it refused make adjustment to the contract price to account for the impact of such extra work and delays.

40. On or about November 3, 2008, as the pre-demolition work was coming to a close, OSC wrote to Delphi bringing the scrap metal market decline issues to Delphi's attention. OSC pointed out the delays attributable to Delphi, and sought an equitable adjustment of the contract price. Attached hereto as **Exhibit C** is a copy of a letter issued by OSC on or about November 3, 2008.

41. On or about December 3, 2008, OSC again wrote to Delphi on this subject. OSC and Delphi also had several verbal communications on this subject between November and December 2008, and thereafter. Delphi representatives, repeatedly assured OSC that an equitable adjustment of the contract price would be made.

42. On or about January 12, 2009, OSC again wrote to Delphi on this subject. Attached hereto as **Exhibit D** is a copy of OSC's January 12, 2009 letter.

43. On February 3, 2009, Delphi responded in writing stating, in essence, that it was discussing the matter internally and would get back to OSC shortly. OSC was expressly asked for its "patience and understanding." Attached hereto as **Exhibit E** is a copy of the February 3, 2009 email received from Delphi.

44. During the time period that Delphi was discussing this subject internally, OSC

DUKE, HOLZMAN,
PHOTIADIS & GRESENS, LLP
ATTORNEYS AT LAW
1800 MAIN PLACE TOWER
350 MAIN STREET
UFFALO, NEW YORK 14202-3718
716-855-1111
FAX 716-855-0327

-6-

continued its performance per Delphi's request.

45. On March 17, 2009, Delphi requested further information relating to the extra work that it required OSC to perform and asked OSC to "accept [its] apologies for the delay on the Delphi formal reply to your request to change the existing contract to the Rochester Die Cast demolition project." Attached hereto as **Exhibit F** is a copy of Delphi's March 17, 2009 email.

46. Meanwhile, Delphi continued to request that OSC continue performance and informally advised that an equitable adjustment would be forthcoming.

47. OSC provided the additional information requested by letter dated April 22, 2009. Attached hereto as **Exhibit G** is a copy of OSC's April 22, 2009 letter.

48. On May 7, 2009, Delphi sent an email stating that it would respond shortly. Attached hereto as **Exhibit H** is a copy of Delphi's May 7, 2009 email.

49. On May 11, 2009, Delphi responded. While offering additional time to allow the scrap metal market to recover, Delphi stated "Because Delphi itself is experiencing great financial difficulty, as a result of being in Chapter 11 since 2005 and due to current economic conditions, it is impossible for Delphi to commit any payments to Ontario Specialty Contracting." Attached hereto as **Exhibit I** is a copy of Delphi's May 11, 2009 letter.

50. By the time Delphi finally responded on May 11, 2009, substantially all of the scrap metals had been sold (in the depressed market) and, shortly thereafter, OSC was also substantially complete with the Project work.

51. The May 11, 2009 Delphi letter expressly acknowledges the extra asbestos and utility work directed by Delphi.

52. Delphi breached its contract with OSC.

DUKE, HOLZMAN,
PHOTIADIS & GRESENS, LLP
ATTORNEYS AT LAW
1800 MAIN PLACE TOWER
350 MAIN STREET
BUFFALO, NEW YORK 14202-3718
716-855-1111
FAX 716-855-0327

-7-

53. OSC has been damaged as a result of Delphi's breach.

54. Delphi is liable to and should be directed to pay OSC monetary damages in an amount not less than $288,751.25, plus interest.

## SECOND DEFENSE AND SECOND COUNTERCLAIM - QUANTUM MERUIT

55. OSC repeats and realleges all prior allegations.

56. At the specific request of Delphi, OSC performed and provided labor, materials and demolition services to Delphi valued at not less than $968,281.

57. Despite demand for payment, a balance of at least $474,023 remains due and owing to OSC from Delphi.

58. Delphi is liable to and should be directed to pay OSC monetary damages in an amount not less than $474,023, plus interest.

## THIRD DEFENSE AND THIRD COUNTERCLAIM - UNJUST ENRICHMENT

59. OSC repeats and realleges all prior allegations.

60. At the specific request of Delphi, OSC performed and provided labor, materials and demolition services to Delphi valued at not less than $968,281.

61. Despite demand for payment, a balance of at least $474,023 remains due and owing to OSC from Delphi.

62. Delphi has been unjustly enriched at the expense of and to the detriment of OSC.

63. Equity and good conscience require that Delphi is liable to and should be directed to pay OSC monetary damages in an amount not less than $474,023, plus interest.

## FOURTH DEFENSE

64. Plaintiff's claims are barred by the doctrines of waiver, unclean hands and/or

DUKE, HOLZMAN,
PHOTIADIS & GRESENS, LLP
ATTORNEYS AT LAW
1800 MAIN PLACE TOWER
350 MAIN STREET
BUFFALO, NEW YORK 14202-3718
716-855-1111
FAX 716-855-0327

equitable estoppel.

## FIFTH DEFENSE

65. Plaintiff's claims are subject to an offset and/or set-off.

## SIXTH DEFENSE

66. Plaintiff fails to state a cause of action.

## SEVENTH DEFENSE

67. Plaintiff's breach of and conduct under the contract, served to discharge any obligations of OSC.

## EIGHTH DEFENSE

68. Plaintiff's conduct with respect to the happening of the incident alleged in the Complaint constitutes culpable conduct, contributory negligence and/or assumption of risk, express or implied, attributable to plaintiff, which conduct contributed to the happening of the plaintiff's damages, if any.

69. The amount of damages, if any, otherwise recoverable by plaintiff shall be diminished in the proportion to which the culpable conduct attributable to plaintiff and to others, if any, for whose conduct this defendant is not responsible, bears to the culpable conduct which caused plaintiff's damages.

## NINTH DEFENSE

70. Plaintiff lacks standing and/or jurisdiction to commence suit within the Supreme Court, Erie County.

## TENTH DEFENSE

71. The Purchase Order is subject to rescission.

DUKE, HOLZMAN,
'HOTIADIS & GRESENS, LLP
ATTORNEYS AT LAW
1800 MAIN PLACE TOWER
350 MAIN STREET
UFFALO, NEW YORK 14202-3718
716-855-1111
FAX 716-855-0327

### ELEVENTH DEFENSE

72.    The plaintiff's claims are barred by the doctrine of unconscionability.

**WHEREFORE**, defendant requests judgment against plaintiff:

1.    On its first counterclaim in an amount not less than $288,751.25, plus interest;

2.    On its second and third counterclaims in an amount not less than $474,023, plus interest;

3.    Dismissing plaintiff's Complaint;

4.    Granting such other and further relief as this Court sees just and proper.

Dated: September 22, 2009

                                              DUKE, HOLAMAN, PHOTIADIS
                                              & GRESENS LLP

                                              Matthew J. Beck, Esq.
                                              *Attorneys for Ontario Specialty Contracting, Inc.*
                                              1800 Main Place Tower
                                              350 Main Street
                                              Buffalo, New York 14202
                                              (716) 855-1111

DUKE, HOLZMAN,
PHOTIADIS & GRESENS, LLP
ATTORNEYS AT LAW
1800 MAIN PLACE TOWER
350 MAIN STREET
BUFFALO, NEW YORK 14202-3718
716-855-1111
FAX 716-855-0327

-10-