Pamela Smith Holleman (PH 4465)
SULLIVAN & WORCESTER LLP
One Post Office Square
Boston, MA 02109
pholleman@sandw.com

*Attorneys for Fidelity Employer Services Company LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | Chapter 11 |
| DELPHI CORPORATION, *et al.*, | Case No. 05-44481 (RDD) |
| Debtors. | (Jointly Administered) |

**RESPONSE BY FIDELITY EMPLOYER SERVICES COMPANY LLC TO DEBTORS' FORTY-THIRD OMINBUS CLAIMS OBJECTION**

Fidelity Employer Services Company LLC ("**FESCO**"), by its attorneys, hereby responds to the Forty-Third Omnibus Claims Objection (Doc. No. 19356) (the "**Claims Objection**") filed by DPH Holdings Corp. ("**DPH Holdings**") and certain of its affiliated reorganized debtors in the above-captioned cases (together with DPH Holdings, the "**Reorganized Debtors**") and opposes the relief sought therein with respect to an Administrative Services Agreement dated as of May 14, 2004 (the "**Agreement**") that FESCO entered into with Delphi Corporation ("**Delphi**") and certain of its affiliates (together with Delphi, the "**Debtors**"), stating as follows:

## JURISDICTION

1. FESCO acknowledges that the Court has jurisdiction over the Claims Objection, that venue is proper, and that this is a core matter.

{B1050733; 1}

## BACKGROUND

2.   FESCO and Delphi entered into the Agreement prepetition with respect to certain employee benefits, so-called "top hat" and employee welfare benefit plans (the "**Plans**"), as identified in Schedule E to the Agreement. FESCO is experienced in providing the services required under the Agreement. A true and accurate copy of the first page of the Agreement is attached hereto as **Exhibit 1** (FESCO believes that the Reorganized Debtors have a true and complete copy of the Agreement but it is prepared to supply a copy upon request).

3.   On October 8 and 14, 2005, the Debtors filed voluntary petitions under chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101 et seq. (the "**Bankruptcy Code**").

4.   FESCO continued to provide Debtors with all services required under the Agreement throughout Debtors' bankruptcy proceedings.

5.   On January 25, 2008, the Debtors first amended joint plan of reorganization, as further amended (Doc. No. 12359) (the "**Confirmation Order**") was approved by the Court. Then, on July 30, 2009, the Debtors' modified plan of reorganization (the "**Modified Plan**") was approved by the Court (Doc. No. 18707) (the "**Modification Order**").

6.   In accordance with Article 8.1(a) of the Modified Plan, all executory contracts and unexpired leases were "assumed by the applicable Reorganized Debtor in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code as of the Effective Date"[1] unless specifically rejected in a manner consistent with the terms of Article 8.1(a). Paragraph 28 of the Modification Order approved Article 8.1(a).

7.   FESCO has found no evidence that the Agreement was rejected. Further, upon inquiry to Debtors as to the status of the Agreement, the Debtors advised FESCO that the

---

[1] The Effective Date, as defined in the Modified Plan, occurred on October 6, 2009.

{B1050733; 1}

Agreement was assumed and assigned to a third party. When FESCO requested written evidence of such assumption and assignment, the Debtors produced to FESCO an unsigned copy of an Assumption and Assignment Agreement with an entity identified as "Company Buyer," *i.e.*, New Delphi I, LLC. The text of that agreement does reflect an assumption of certain Plan liabilities, but the purported assumption, however, excluded other Plan liabilities, and only provides for assumption of obligations or liabilities defined as an Assumed Administrative Liability (and set forth on Schedule 1.1A of a certain Disposition Agreement).[2]

8.  After entry of the Modification Order, FESCO received correspondence in August and September 2009 from the Pension Benefit Guaranty Corporation (the "**PBGC**") stating that two of the Plans included in Schedule E to the Agreement were terminated on or about July 31, 2009.[3] The PBGC has asked FESCO to continue to supply certain administrative services with respect to transition of obligations under the terminated Plans, and FESCO has continued to do so.

9.  Under the assumed Agreement, and consistent with Schedule B thereto, FESCO has the right to certain Administrative Service Fees, including a Termination Fee calculated and depending upon the year of termination of the Agreement (and the Unpaid Balance of the Implementation Fee, all as defined in the Agreement). More specifically, FESCO agreed to perform certain implementation services valued at $2.5 Million in starting up performance of its obligations under the Agreement, and further agreed that Delphi could pay for those services over time under the Agreement. In the event of early termination of the Agreement, however, Delphi was to pay the remaining balance of the Implementation Fee in the form of a single

---

[2] FESCO has not seen, and does not have a copy of the Disposition Agreement or Schedule 1.1A thereto.

[3] These two plans are the Delphi Retirement Program for Salaried Employees and the Delphi Hourly-Rate Employees' Pension Plan.

{B1050733; 1}

Termination Fee. Given that two of the Plans covered by the Agreement have been terminated, FESCO is entitled to the Termination Fee.

10. On November 5, 2009, FESCO filed an administrative expense request form (Claim No. 19764) with attached addendum detailing its claim (the "**Administrative Expense Claim**") with the Debtors claims' agent. A true and accurate copy of the Administrative Expense Claim is attached hereto as **Exhibit 2**. As of the date of the filing of the Administrative Expense Claim, the Termination Fee amounted to $833,333.04, as set forth in Exhibit 2 hereto, subject to any applicable credits or rights of offset.

11. On January 22, 2010, the Reorganized Debtors filed the Claims Objection, objecting to the Administrative Expense Claim, stating only that the books and records of the Reorganized Debtors do not reflect that either the liability or the dollar amount asserted in the Administrative Expense Claim is owed.

## ARGUMENT

12. "Should the debtor-in-possession elect to assume [an] executory contract, …, it assumes the contract *cum onere*, and the expenses and liabilities incurred may be treated as administrative expenses, which are afforded the highest priority on the debtor's estate." NLRB v. Bildisco & Bildisco, 465 U.S. 513, 532 (1984), citing In re Italian Cook Oil Corp., 190 F.2d 994, 996 (3d Cir. 1951).

13. The Agreement was assumed by the Debtors, now the Reorganized Debtors, as of October 6, 2009, the Effective Date. Accordingly, FESCO is entitled to payment of all expenses and liabilities under the Agreement as administrative expenses. To date, those expenses include the Termination Fee, to which FESCO is clearly entitled under the terms of the attached Agreement.

{B1050733; 1}

## CONCLUSION

WHEREFORE, FESCO respectfully requests that this Court:

A. deny the Claims Objection as it pertains to FESCO's Administrative Expense Claim;

B. approve FESCO's request for an Administrative Expense Claim in the total amount of $833,333.04, subject to any applicable credits or rights of offset;

C. and grant FESCO such other and further relief as is fair and just.

Dated: February 17, 2010

Respectfully submitted,

FIDELITY EMPLOYER SERVICES COMPANY LLC

By its attorneys,

Of Counsel:
Patrick P. Dinardo
Christopher M. Gosselin
SULLIVAN & WORCESTER LLP
One Post Office Square
Boston, MA 02109
Tel: 617-338-2800
Fax: 617-338-2880
pdinardo@sandw.com
cgosselin@sandw.com

/s/ Pamela Smith Holleman
Pamela Smith Holleman (PH 4465)
SULLIVAN & WORCESTER LLP
One Post Office Square
Boston, MA 02109
Tel: 617-338-2800
Fax: 617-338-2880
pholleman@sandw.com

{B1050733; 1}