STEINBERG SHAPIRO & CLARK
Mark H. Shapiro (MI Bar No. P43134)
24901 Northwestern Hwy., Suite 611
Southfield, Michigan  48075
Telephone:  (248) 352-4700
Email: shapiro@steinbergshapiro.com

*Attorney for Crown Enterprises, Inc.*

------------------------------------------------------------x
UNITED STATES BANKRUPTCY COURT :
SOUTHERN DISTRICT OF NEW YORK :
 :
 :
**In re:** :
 : Chapter 11
**DELPHI CORPORATION, <u>et</u> <u>al.</u>,** :
 : Case No. 05-44481
   **Debtors.** :
 :
------------------------------------------------------------x

**RESPONSE TO REORGANIZED DEBTORS' FORTY-THIRD OMNIBUS CLAIMS
OBJECTION TO PROOF OF CLAIM NO. 18668 FILED BY
<u>CROWN ENTERPRISES, INC.</u>**

   Crown Enterprises, Inc. ("Crown"), by its counsel, Steinberg Shapiro & Clark, files this

response to Debtors' Forty-Third Omnibus Claims Objection to Proof of Claim No. 18668 Filed

by Crown (the "Objection"), and states as follows:

<u>**BUENA VISTA LEASE**</u>

   1.  On or about November 1, 1979, Wings-Four entered into a lease of certain real

property located at 3801 Holland Road, Buena Vista Township, Michigan (the "Real Property")

to General Motors Corporation ("GM") (the "Buena Vista Lease", attached as Exhibit A.)

   2.  Pursuant to the Buena Vista Lease, GM agreed to ". . . not misuse the premises so

that they may be returned to the Lessor in as good order and condition as when delivered to the

Lessee, excepting ordinary wear and tear. . ."  *See Ex. A* at § 29.

3.    On or about January 20, 1981, Wings-Four and GM executed an amendment to the Buena Vista Lease, deleting clause 13 of the Buena Vista Lease, but in all other respects ratifying and confirming the Buena Vista Lease. *January 20, 1981 Amendment* attached as Exhibit B.

4.    On or about October 29, 1981, GM exercised its option to extend the Buena Vista Lease an additional three years on the same terms and conditions. *October 29, 1981 Letter* attached as Exhibit C.

5.    On or about November 26, 1984, GM exercised its option to extend the Buena Vista Lease an additional three years on the same terms and conditions. *November 26, 1984 Letter* attached as Exhibit D.

6.    On or about December 29, 1986, Wings-Four assigned its rights and interest in the Buena Vista Lease to Central Transport, Inc. *December 29, 1986 Lease Assignment* attached as Exhibit E.

7.    On or about July 19, 1988, Central Transport and GM executed a certain Lease Amendment extending the Buena Vista Lease an additional three years to May 31, 1991 and increasing the square foot area leased by GM. *July 19, 1988 Lease Amendment* attached as Exhibit F.

8.    On or about July 1, 1991, Central Transport and GM executed a certain Lease Amendment extending the Buena Vista Lease an additional three years to May 31, 1994. *July 1, 1991 Lease Amendment* attached as Exhibit G.

9.    On or about December 1, 1994, Crown, successor in interest to Central Transport, Inc., and GM executed a certain Lease Amendment extending the Buena Vista Lease an additional three years to May 31, 1994. *December 1, 1994 Lease Amendment* attached as Exhibit

H.  Except for an increase in square feet leased and rental increase, the December 1, 1994 Lease

Amendment ratified and confirmed the Buena Vista Lease.

10.     On or about June 23, 1997, Crown and GM executed a certain Lease Amendment

extending the Buena Vista Lease an additional three years to May 31, 2000.  *June 23, 1997 Lease*

*Amendment* attached as Exhibit I.

11.     On or about May 24, 2000, Crown and Delphi Automotive Systems LLC

("Delphi"), successor in interest to GM, executed a certain Lease Amendment extending the

Buena Vista Lease an additional three years to May 31, 2003.  *May 24, 2000 Lease Amendment*

attached as Exhibit J.

12.     In May 2003, Crown and Delphi executed a certain Lease Amendment extending

the Buena Vista Lease an additional three years to May 31, 2006.  *May  2003 Lease Amendment*

attached as Exhibit K.  The May 2003 Lease Amendment ratified and confirmed the Buena Vista

Lease.

## **PROOF OF CLAIM**

13.     On July 13, 2009, Crown filed an Administrative Proof of Claim, denoted as

Claim No. 18668, in the amount $233,068.00.  The Administrative Proof of Claim included a

detailed statement of Crown's claim for estimated costs to repair damages to the Real Property.

*Proof of Claim* attached as Exhibit L.

14.     Pursuant to the Objections and attached Exhibits, Crown's Proof of Claim was

listed on Exhibit B-1, as a "Claim Not Reflected on the Debtor's Books and Records."

15.     Pursuant to the Objection, the Debtor objected to Crown's Proof of Claim on the

sole grounds that  Debtor's books and records do not reflect the existence of the Claim or of the

Claimant asserting the Claim.

16.    Delphi was obligated to return the Real Property to Crown in as good order and condition as when delivered to GM, Delphi's predecessor in interest, excepting ordinary wear and tear.

17.    Post-Petition, Delphi vacated and returned the Real Property to Crown needing extensive repairs to return it to good order and condition as when delivered to GM.

18.    Pursuant to 11 U.S.C. § 507,

> (a) An entity may timely file a request for payment of an administrative expense, or may tardily file such request if permitted by the court for cause.

> (b) After notice and a hearing, there shall be allowed, administrative expenses, other than claims allowed under section 502(f) of this title [11 USCS § 502(f)], including--

> > (1) (A) the actual, necessary costs and expenses of preserving the estate.

19.    The $233,068 owed to Crown by Debtors arose from transactions with the Debtors as debtor-in-possession during the pendency of the Chapter 11 proceedings.

20.    Pursuant to *Trustees of Amalgamated Ins. Fund v. McFarlin's, Inc.*, 789 F.2d 98, 101 (2d Cir. N.Y. 1986), an expense is entitled to administrative priority if (i) it arises out of a transaction between the creditor and the debtor in possession, and (ii) the consideration supporting the claimant's right to payment was both supplied to and beneficial to the debtor-in-possession in the operation of the business.

21.    Crown's claim for $233,068 arises out of Debtors' post-petition use and damage to the Real Property and said use was beneficial to the Debtors' operation of the business.

22.    In accordance with *McFarlin's, Inc.*, *supra,* and 11 U.S.C. § 503(b)(1)(A), Crown is entitled to allowance of an administrative claim in the amount of $233,068.

4

23.    Beyond mere denial, Debtors have not presented any  evidence to dispute the validity of Crown's Administrative Proof of Claim.  As such, the Debtors' objection should be overruled.

WHEREFORE, for the reasons set forth above, Crown Enterprises, Inc., by its counsel, Steinberg Shapiro & Clark, requests the Court deny the Debtors' Forty-Third Omnibus Claims Objection to Proof of Claim No. 18668 Filed by Crown and allow Crown's Administrative Proof of Claim as a administrative claim in the amount of $233,068.


STEINBERG SHAPIRO & CLARK


 /s/ Mark H. Shapiro Michigan Bar No. (P43134)
Geoffrey T. Pavlic Michigan Bar No. (P53770)
Attorney for Central Transport International, Inc.
25929 Telegraph Rd., Suite 203
Southfield, MI 48033
(248) 352-4700

Date:   February 18, 2010

General Form
GM 235—Revised 6-72

**This Lease,** dated _____ November 1, _____ 19 79 _____, between

WINGS-FOUR, a Michigan Partnership, whose address is 515 Lakeshore Drive,

Grosse Pointe Shores, Michigan 48236,

hereinafter called the Lessor, and ___ GENERAL MOTORS CORPORATION, a Delaware Corporation,

with principal offices at 3044 West Grand Boulevard, Detroit, Michigan 48202,

_____ hereinafter called the Lessee,

**PREMISES**

**Witnesseth:**

The Lessor hereby lets to the Lessee, and the Lessee hires from the Lessor:

100,000 square feet of warehouse space,
fenced in areas and common driveways at
3801 Holland Road, Buena Vista Township,
Michigan, as more particularly outlined
in red on the print attached hereto and
made a part hereof,

**USE OF PREMISES**

with the appurtenances, to be used for ~~an automobile showroom, service station,~~ warehouse ~~or garage, or for general automobile, tractor, implement, airplane or truck business, or accessories thereto, or any line of business allied to or connected with any of the foregoing, or any type of business conducted or controlled by General Motors Corporation,~~ or any other lawful purpose not inconsistent with the character of the premises, for a term commencing _____ June 1, 1979,

**TERM**

and expiring _____ May 31, 1982,

*PLEASE INITIAL*

**RENT**

at the yearly rent of _____ SEE CLAUSE TWENTY-SEVENTH

payable in installments of $ _____ in advance on the first business day of each
and every month during the term.

The parties hereto covenant and agree with each other as follows:

**FIRST:** That the Lessee shall pay the rent at the times and in the manner aforesaid.

**REPAIRS**

~~SECOND: That the Lessee shall keep and not misuse the premises so that they may be returned~~
to the Lessor in as good order and condition as when delivered to Lessee, excepting ordinary wear and
tear, damage by fire, vandalism, the elements and casualty, and damage due to any cause or happening not
occasioned by the negligence of the Lessee. The Lessor shall maintain, repair and replace as necessary the
plumbing, heating, ventilating and air conditioning equipment, lighting and other electrical and mechanical equipment, sprinkler system, elevators, glass (unless broken or damaged due to the negligence of
Lessee), damage by vandals, and make all other repairs or replacements which the Lessee is not hereby
required to make. The Lessor shall maintain (including painting as necessary), repair and replace as
necessary, the exterior of the building including the roof, exterior walls, drains, eaves troughs, downspouts,
gutters, and provide lateral support and make all structural repairs to the building. The Lessor shall also
maintain, repair and replace as necessary, the improvements and the lands which are a part of and used in
connection with the premises, including but not limited to ditches, drains, sewers, utility lines, driveways,
sidewalks, parking areas, landscaping and fencing. In the event the Lessor fails to make any repairs or
replacements which it is required to make hereunder within a reasonable time specified in a written notice
by Lessee, then in that event the Lessee may make such repairs or replacements and deduct the cost and
expense thereof from the rent reserved hereunder, or the Lessee may, at its option, cancel this Lease. If
~~by reason of emergency, repairs or replacements become necessary which by the terms hereof are the~~

*PLEASE INITIAL*

PLEASE T. Ifowk Init. INITIAL

~~responsibility of~~ ~~a Lessor, Lessee may make such repairs or~~ ~~replacements which in the opinion of Lessee~~ are necessary for the preservation of the premises or of the Lessee's property, ~~and Lessor shall~~ at the option of the Lessee either reimburse Lessee or Lessee may deduct the cost and expense thereof from the rent reserved hereunder. ~~Provided, however,~~ that in such event Lessee agrees to make reasonable effort to inform ~~Lessor before proceeding with such repairs or replacements.~~

**EASEMENTS**

      THIRD: That the enjoyment and use of all entrances, exits, approaches and means of entrance and approach, and of light and air now existing in favor of the premises shall not be interfered with or interrupted by any act or assent of the Lessor during the term of this Lease.

**ASSIGNMENT**

      FOURTH: That the Lessee will not assign this Lease without the written consent of the Lessor, except such assignment be to a corporation then owned or controlled by GENERAL MOTORS CORPORATION. The Lessor agrees that such consent will not be unreasonably withheld.

**NEGATIVE COVENANTS**

      FIFTH: That the Lessee will not consent to any use of the premises which shall be contrary to any valid law of the State or to any valid ordinance or bylaw of the Municipality for the time being in force.

**COVENANTS BY LESSOR**

      ~~SIXTH: That the Lessor covenants and agrees that the possession will be delivered~~ to the Lessee upon the commencement of the term of this Lease in as good condition as the same ~~new are~~, or as required to be altered pursuant to the provisions of Paragraph Twenty-Second, ~~free from all tenancies and occupancies, and~~ free from all orders, notices and violations filed ~~or entered~~ by any public or quasi-public authority, and free from complaints or reports of violations, noted or existing in or filed with any Federal, State, County, Municipal, Borough, or any other local authority. If any such orders, notices or violations be filed during the term of this Lease, the Lessor will comply therewith, or will cause such orders, notices or violations to be vacated unless they are occasioned by a use of the premises not authorized herein. In the event ~~of Lessor's failure~~ to comply with such orders, notices, or violations, or to cause such orders, notices or violations to be vacated within a reasonable time after written notice, Lessee may comply therewith and deduct the cost and expense of such compliance from the rent reserved hereunder, ~~or Lessee may cancel this Lease.~~


PLEASE L. Ifowk T. Init. INITIAL

      The Lessor further covenants and agrees that at the commencement of the term ~~the elevator or elevators,~~ the boiler or boilers, ~~air-conditioning~~ and heating equipment will all be in good mechanical, operating and insurable condition, acceptable to Lessee's insurance companies, and that the boiler or boilers, ~~air-conditioning~~ and heating equipment will be of sufficient capacity to heat ~~and cool~~ the demised premises ~~comfortably.~~ If said equipment is not in the condition specified and Lessor fails to promptly place it in said condition, then Lessee may have the ~~elevator or elevators,~~ boiler or boilers and heating equipment put in the condition above provided and deduct the cost and expense thereof from any installment or installments of rent thereafter becoming due, or at Lessee's option, Lessee may cancel this Lease upon giving ~~thirty (30)~~ days' notice in the manner herein provided. In any event, the fact that the Lessee does not have said work done shall not render Lessee in any way liable nor relieve Lessor from any liability. The acceptance of possession by Lessee shall ~~not~~ be deemed to be a waiver of any of the aforesaid covenants.

**VIEWING PREMISES**

      SEVENTH: That the Lessor may during the term at reasonable times enter to view the premises and may at any time within three (3) months next before the expiration of the said term, show the said premises and building or buildings to others, and affix to any suitable part of the said premises a notice for letting or selling the premises, or building or buildings, and keep the same affixed without hindrance or molestation.

**FIRE CLAUSE**

      EIGHTH: (a) That if the premises shall be so damaged by fire, the elements, casualty, war, insurrection, riot, public disorder, act, authorized or unauthorized, on the part of any governmental authority or any cause or happening as to be substantially destroyed, then this Lease shall cease and come to an end, and any unearned rent paid in advance by the Lessee shall be refunded to it; (b) In case of only partial damage or destruction of the premises or of other portions of the building or buildings containing the premises, then said premises or other portions of said building or buildings shall be restored promptly by the Lessor to their previous condition and a just proportion of the rent herein reserved, according to the extent to which they have been rendered untenantable, shall abate until the said premises shall have been so restored and put in proper condition for use and occupancy, and a just proportion of any rent paid in advance by the Lessee shall be refunded to it. If Lessor shall for any reason fail to restore the premises or other portions of said building or buildings within a reasonable time, Lessee may cancel and terminate this Lease upon giving ~~thirty (30)~~ days' notice in the manner herein provided and be relieved of all liability hereunder arising subsequent to the aforesaid damage to the said premises or other portions of said building or buildings, and a just proportion of any rent paid in advance by the Lessee shall be refunded to it. The Lessor shall maintain fire and supplemental perils insurance coverage in an amount sufficient to comply with the aforementioned provisions of this clause; (c) In the event that the building or buildings containing the premises shall become unsafe, said building or buildings shall be repaired and restored forthwith by the Lessor, and a just proportion of the rent hereinbefore reserved shall abate until said building or buildings shall have been put in safe and proper condition for use and occupancy, and any unearned rent paid in advance by the Lessee shall be refunded to it, and if the Lessor fails for any reason to restore the premises forthwith to safe and proper condition for use and occupancy, Lessee may at its option cancel this Lease upon giving ~~thirty (30)~~ days' notice in the manner herein provided; (d) If any authority having jurisdiction shall decide that the said building or buildings should be demolished and removed, then forthwith upon such decision being made and upon the Lessee vacating the premises, this Lease shall cease and come to an end and any unearned rent paid in advance by the Lessee shall be refunded to it.

**UNSAFE BUILDING CLAUSE**
PLEASE L. Ifowk T. Init. INITIAL

**UNLAWFUL OCCUPATION**

      NINTH: That the Lessor represents that the premises may be used for the purposes for which they are hereby leased and in the event of the enactment or existence of any law, ordinance, rule, ruling, regulation, covenant or restriction prohibiting or limiting the use of said premises for any one or more of the purposes for which they are hereby leased, then in that event at the option of the Lessee, this Lease shall terminate and all liability hereunder shall cease from and after the date such prohibition becomes effective, and any unearned rent paid in advance by the Lessee shall be refunded to it.

**RIGHTS UPON DEFAULT**

      TENTH: That if the Lessee shall neglect or fail to perform or observe any of the covenants contained herein on its part to be observed and performed for thirty (30) days after written notice by the Lessor, or if the Lessee shall be adjudicated bankrupt or insolvent according to law, or shall make an assignment for the benefit of creditors, then in any of said cases the Lessor may lawfully enter into

and upon the said premises or any part thereof in the name of the whole, and repossess the same as of the former estate of the Lessor and expell the Lessee and those claiming under and through it and remove its effects (forcibly if necessary), without being deemed guilty of any manner of trespass, and without prejudice to any remedies which might otherwise be used for arrears of rent or preceding breach of covenant and upon entry as aforesaid this Lease shall terminate and the Lease covenants that in case damages and expenses of such termination it will indemnify the Lessor against all unavoidable loss of rent which the Lessor may incur by reason of such termination during the residue of the term above specified.

**TERMINATION**

**HOLD OVER**

**ELEVENTH:** That notwithstanding any provision of law or any judicial decision to the contrary, (a) no notice shall be required to terminate the term of this Lease on the date herein specified and the term hereof shall expire on the date herein mentioned without notice being required from either party; (b) in the event that the Lessee, any assignee or sublessee, remains beyond the expiration date of the term herein, it is the intention of the parties and it is hereby agreed that a tenancy from month to month shall arise upon all the same terms and conditions contained herein, including the monthly rental rate. If Lessee holds over more than sixty (60) days without signing a new Lease, the monthly rental will be 250% of the then current monthly rental rate.

**QUIET POSSESSION**

**TWELFTH:** Lessor herein represents that it is the fee owner of the premises hereby leased and hereby covenants that Lessee, on paying the rent and performing all and singular the covenants and conditions of this Lease on its part to be performed, shall and may peaceably and quietly have, hold and enjoy the premises for the term and for the uses aforesaid, and for the term of any renewal or renewals hereof, free from molestation, eviction or destruction by the Lessor, or by any other person or persons lawfully claiming the same, and that the Lessor has good right to make this Lease for the full term hereby granted, including the period for which the Lessee has the right to effect a renewal hereof. Should Lessee be dispossessed from the premises by reason of a superior title, the payment of rent shall cease from and after the date of such dispossession and all rent that may have been prepaid for any period of time Lessee is deprived of its peaceful possession by reason of said dispossession, shall be returned to Lessee forthwith, but the Lessor shall not hereby be relieved of liability to the Lessee for damages sustained by Lessee due to such dispossession. Lessor further agrees that in the event the premises are sold during the term of this Lease or any extension thereof, a certified copy of the Deed of Conveyance or an executed copy of the Assignment of this Lease shall be furnished to Lessee, it being understood that the consideration for such conveyance may be deleted from such instruments.

**SERVICES BY LESSOR**

**THIRTEENTH:** That the Lessor shall for the rent reserved furnish ~~electric current for all purposes required by the Lessee, janitor service, including snow removal, water and elevator service during ordinary business hours, sufficient heat and air conditioning whenever necessary to make the premises comfortable for occupancy, window and glass partition washing at regular intervals,~~ toilet facilities, ~~and fluorescent tubes or electric bulbs for lamps for lighting the premises, and the Lessor shall renew all such lamps, fluorescent tubes or bulbs when necessary. Lessor covenants and agrees that the lighting fixtures in the office portion of the premises shall be of sufficient capacity at all times to produce not less than 100 foot candles lighting at desk level.~~ *exclusive of supplies.

**ALTERATIONS BY LESSEE**

**FOURTEENTH:** That with the prior written consent of Lessor, which shall not be unreasonably withheld, the Lessee shall have the right at any time during the term or any extension thereof, at its own expense, to make alterations, changes, improvements and remodeling to the premises, provided the same shall be in conformity with the Building Laws of the Municipality, County and State, and the Lessor covenants and agrees upon demand at any time after the execution of this Lease to obtain and deliver to the Lessee, at charges or expense of Lessor, all permits, consents and other instruments which may be necessary or required by any public or quasi-public authority, permitting and authorizing such alterations, changes, improvements and remodeling. In case of said alterations, changes, improvements and remodeling, the Lessee shall not be required upon the termination of the Lease or any extension thereof to restore the premises to their original condition, unless this was a condition when Lessor gave its written consent to make alterations, changes, improvements or to remodel premises.

**FIXTURES AND SO FORTH**

**FIFTEENTH:** That all movable partitions, fixtures, floor covering, or equipment installed in the premises at the Lessee's expense shall remain the property of the Lessee and may be removed by the Lessee. The Lessee shall, however, repair any damage caused directly and exclusively/by said removal. such installation or

**SIGNS AND SO FORTH**

**SIXTEENTH:** That the Lessee shall have the right to install or place signs or posters anywhere on with Lessor's written consent or about the premises and upon removal of said signs and posters at the termination of this Lease shall repair any damage caused by such installation and removal.

**CONDEMNATION**

**SEVENTEENTH:** That in the event the premises or any part thereof are taken or condemned by a temporary or permanent public or quasi-public use so as to interfere with Lessee's use, Lessee may at its option terminate this Lease and, in such event, any unearned rent paid in advance shall be returned to Lessee, but nothing herein contained shall prevent Lessee from recovering any damages sustained by Lessee due to such taking.

**MORTGAGE SUBORDINATION**

**EIGHTEENTH:** That this Lease shall be subject and subordinate to the lien of any mortgages hereafter placed on the premises and Lessee agrees to execute and deliver upon demand, in confirmation of such subordination, such further instruments as shall be required by any mortgagees or proposed mortgagees. Provided, that if and when such mortgage or mortgages are placed, the mortgagee shall agree for itself and for every subsequent holder or owner of the mortgage and for any receiver or purchaser of the premises in the event of foreclosure, Lessee's quiet possession of the premises will not be disturbed on account of said mortgage or by reason of anything done thereunder so long as Lessee pays the rent and keeps the other covenants on its part to be performed. Lessor agrees that in the event a mortgage is placed on the premises and a collateral assignment is given as security for the loan, Lessee will be furnished with a copy of such collateral assignment.

**WAIVER OF SUBROGATION**

**NINETEENTH:** The Lessor and the Lessee waive all rights, each against the other, and against those holding under or through the Lessor and Lessee, for damages caused by fire or other perils covered by normal insurance where such damages are sustained in connection with the occupancy of the leased premises.

NOTICES

TWENTIE I: That all notices to be given hereundt shall be in writing and given by personal delivery to the Lessor or to one of the executive officers of the Lessee or shall be sent by telegram or by registered mail addressed to the party intended to be notified at the post office address of such party last known to the party giving such notice and notice given as aforesaid shall be a sufficient service thereof, and shall be deemed given as of the date when deposited in any post office, or in any post office box regularly maintained by the Federal Government or, in the case of a telegram, when given to an employe of the telegraph company for transmission. Provided, however, that it is mutually agreed that the Lessee appoints the President, the Executive Vice Presidents and the Vice President in Charge of Real Estate, General Motors Corporation, and the Executive in Charge of Real Estate, the Manager and the Director, Real Estate Department of Argonaut Realty Division, General Motors Corporation, Argonaut Building, 485 West Milwaukee Avenue, Detroit, Michigan 48202, as its agents, and that any one of them may give all notices and receive all notices to be given hereunder, and may pay the rent, and notices shall be sent to any one of said agents and not otherwise. The right is hereby reserved by the Lessee to countermand such appointments and make others consistent herewith, due notice of which shall be given by the Lessee to the Lessor.

EXTENSION

TWENTY FIRST: That the Lessee may at its option extend the term of this Lease for further period(s) of _____ upon all the same terms and conditions contained herein, or as hereafter amended, by giving Lessor written notice.

ALTERATIONS BY LESSOR

TWENTY SECOND: That the Lessor, at the Lessor's own expense, shall make the alterations, changes and improvements, according to the plan annexed hereto and made a part hereof, and shall fully complete the same, in a good workmanlike manner and shall have the premises ready for lawful occupancy by the Lessee in the condition herein provided on or before _____ 19___. In the event said work is not completed as above provided, the Lessee may, at its option, (a) enter and complete said work and deduct the cost and expense thereof from the rent reserved hereunder, or (b) cancel this Lease. In no event, however, shall rent accrue until the above alterations, changes and improvements have been completed and the premises have been made ready for lawful occupancy by the Lessee as herein provided.

CANCELLATION

TWENTY THIRD: That the Lessee may cancel this Lease effective _____ or at any time thereafter by giving Lessor _____ days' written notice prior to such cancellation.
SEE RIDER ATTACHED HERETO AND MADE A PART HEREOF.
The covenants and agreements contained in the foregoing Lease are binding upon the parties hereto and their respective heirs, executors, administrators, successors, legal representatives and assigns.

In Witness Whereof, Lessor has signed and sealed this instrument this 28th day of July A.D. 19 52 and Lessee has signed and sealed this instrument this _____ day of _____ August A.D. 19 52.

In the presence of:

Roy Champagne

Constance M. Lukas

WINGS-FOUR
A Michigan Partnership

BY R. W. Lech
R. W. LECH
Attorney-in-Fact

In the presence of:

D. J. Fournier
D. J. FOURNIER

P. Nydam
P. NYDAM

GENERAL MOTORS CORPORATION

BY T. O. Mathues
T. O. Mathues
Vice-President

ATTEST
Marguerite Assistant Secretary

RIDER ATTACHED TO AND MADE A PART OF LEASE AGREEMENT DATED
NOVEMBER 1, 1979, BETWEEN WINGS-FOUR, A MICHIGAN PARTNERSHIP,
AS LESSOR, AND GENERAL MOTORS CORPORATION, A DELAWARE CORPORATION,
AS LESSEE, COVERING PREMISES LOCATED AT 3801 HOLLAND ROAD, BUENA
VISTA TOWNSHIP, MICHIGAN

TWENTY-FIRST - COVENANTS BY LESSOR:  That the Lessor
covenants and agrees that the possession of the premises will be
delivered to the Lessee upon the commencement of the term of this
Lease in as good condition as the same now are and free from all
orders, notices and violations filed or entered by any public or
quasi-public authority, and free from complaints or reports of
violations, noted or existing in or filed with any Federal,
State, County, Municipal, Borough, or any other local authority.
If any such orders, notices, or violations be filed during the
terms of this Lease which materially affect the use of the prem-
ises by Lessee and if Lessee shall notify Lessor of such orders,
notices or violations in writing, then Lessor shall have the
option to (i) comply therewith and the rent herein provided shall
abate entirely in the event the entire premises are rendered
completely untenantable.  In the event, however, that a portion
of the premises are rendered untenantable, the rental shall abate
in proportion to the percentage of such space rendered untenant-
able until the premises are restored to a condition suitable for
occupancy, or (ii) cause such orders, notices or violations to be
vacated unless they are occasioned by a use of the premises not
authorized herein, or (iii) terminate this Lease by written
notice to Lessee without further duties, obligations, damages, or
liabilities to Lessee, except Lessee shall be entitled to have
any prepaid rent returned to them.

TWENTY-SECOND - UTILITIES:  If the Lessor decides that
the installation of any utility meters is not economically feasi-
ble, Lessee agrees to pay Lessor its pro rata share of all
charges (not separately metered to Lessee) for water, gas, heat
and electricity.  Lessee's pro rata share of said charges shall
be that proportion which the total number of square feet in the
leased premises bears to the total number of square feet in
Lessor's building.  Lessee's pro rata share shall be paid monthly
within ten (10) days of receipt of Lessor's statement.

TWENTY-THIRD - RAIL SPUR:  The Lessor agrees to provide
a rail spur *to the leased premises.  Lessee thereafter agrees to
maintain and repair said spur track as is necessary for Lessee's
use and in compliance with any required railroad sidetrack agree-
ment.

TWENTY-FOURTH - TAX ESCALATION:  The Lessor shall pay
all real estate taxes levied against the land and building of
which the demised premises are a part.  In the event, however,
that such taxes increase over and above those levied and paid for
the year 1979, or the first year for which the completed building
is fully assessed, whichever occurs later, then the Lessee agrees
to reimburse Lessor for Lessee's proportionate share of such
increase.  The Lessee's proportionate share of any such increase
shall be determined by the ratio that the gross rentable area of

* which now abuts



the demised premises bears to the gross rentable area of the entire building. Determination of tax increases shall not include assessments for local improvements nor local betterment taxes. Lessee shall reimburse Lessor for its share of such tax increases once each year during the term hereof, or any extension thereof, upon receipt of the Lessor's written request for reimbursement, accompanied by paid tax receipts establishing such increase to the Lessee's satisfaction. If such increase in real estate taxes covers a period prior to or extending beyond the initial term or any extension thereof, such increase shall be prorated.

TWENTY-FIFTH - INDEMNIFICATION:  The Lessee agrees to indemnify and hold harmless the Lessor from and against any and all liabilities, fines, suits, demands, claims, litigation, actions, costs and expense due to or arising solely out of any negligent act, violation or intentional non-performance of any covenant, condition or agreement in this Lease set forth and contained on the part of the Lessee to be fulfilled, kept, observed and performed, excepting loss by fire or other ~~insurable~~ INSURED casualty.

TWENTY-SIXTH - FIRE INSURANCE PREMIUM:  Lessor shall pay all insurance premiums for fire and extended coverage insurance (including without limitation, sprinkler leakage, vandalism, and malicious mischief) charged only against the premises and not for Lessee's personal property.  In the event, however, that such premiums increase over and above those charged during 1979, then the Lessee agrees to reimburse Lessor for Lessee's proportionate share of such increase.  The Lessee's proportionate share of any such increase shall be determined by the ratio that the gross area of the demised premises bears to the gross area of the entire building.

TWENTY-SEVENTH - RENTAL:  Rental for Lessee's occupancy shall be paid as follows:  $21,083.33 per month for the period commencing June 1, 1979, and expiring October 31, 1979, and $21,916.67 per month for the period commencing November 1, 1979, and expiring May 31, 1982.

TWENTY-EIGHTH - RENEWAL OPTIONS:  That Lessee may at its option obtain three (3) successive three (3) year renewals by providing Lessor with six (6) months' written notice prior to the expiration of the then current term.  Rental for each renewal period shall be as follows:

| Renewal Period | Rental Per Year | Rental Per Month |
|---|---|---|
| 6-1-82 to 5-31-85 | $250,000 | $20,833.33 |
| 6-1-85 to 5-31-88 | $297,000 | $24,750.00 |
| 6-1-88 to 5-31-91 | $354,000 | $29,500.00 |

TWENTY-NINTH - REPAIRS:  That the Lessee shall keep and not misuse the premises so that they may be returned to the Lessor in as good order and condition as when delivered to



PAGE 2 OF RIDER

Lessee, excepting ordinary wear and tear, damage by fire, van-
dalism, the elements and casualty. The Lessee shall maintain,
repair and replace as necessary the plumbing, heating, venti-
lating and air conditioning equipment, lighting and other
electrical and mechanical equipment (unless broken or damaged due
to the negligence of Lessor), and make all other repairs or
replacements as necessary which the Lessor is not hereby required
to make. The Lessor shall maintain, repair and replace as neces-
sary, the exterior of the building including the roof, exterior
walls, drains, eaves troughs, downspouts, gutters, and provide
lateral support and make all necessary structural repairs to the
building. The Lessor shall also maintain, repair and replace as
necessary, the improvements and the lands which are a part of and
used in connection with the premises, including but not limited
to ditches, drains, sewers, utility lines, driveways, parking
areas, and fencing. * In the event the Lessor fails to make any
repairs or replacements which it is required to make hereunder
within a reasonable time specified in a written notice by Lessee,
then in that event the Lessee may make such repairs or replace-
ments and deduct the cost and expense thereof from the rent
reserved hereunder, or the Lessee may, at its option, cancel this
Lease. If by reason of emergency, repairs or replacements become
necessary which by the terms hereof are the responsibility of the
Lessor, Lessee may make such repairs or replacements, by reason
of emergency only, necessary for the preservation of the premises
or of the Lessee's property, and Lessor shall, at the option of
the Lessee, either reimburse Lessee or Lessee may deduct the cost
and expense thereof from the rent reserved hereunder. Provided,
however, that in such event Lessee agrees to make all reasonable
effort to inform Lessor before proceeding with such repairs or
replacements. Lessee agrees to reimburse the Lessor for one-half
of the cost of any minor maintenance and snow removal cost of the
two common driveways shown on the attached print. Such "minor
maintenance" shall include driveway patching but not the replace-
ment of said driveway.

THIRTIETH: It is understood and agreed that the Lessor
may, upon thirty (30) days prior written notice to Lessee, obtain
an exchange of that portion of our present parking area shown in
red on the attached print and measuring approximately 60' x 204',
for contiguous area shown in green on said print and measuring
approximately 50' x 235'. Said exchange will not occur until
said substituted area has been improved by Lessor, at its
expense, to equal the improvements then existing in the area
shown in red.

THIRTY-FIRST: Lessor shall have the right at any time
to assign any and all rights it has in this Lease.

THIRTY-SECOND: It is understood and agreed between the

* Anything to the contrary notwithstanding, Lessee shall be
responsible for all maintenance, repairs, and replacements to
the premises arising out of the negligent acts or improper use
of Lessee, its officers, employees, agents, guests or invitees,
excepting loss by fire or other insured casualty

PAGE 3 OF RIDER

parties hereto that the Lease Agreement dated December 11, 1978, is hereby terminated and of no further force and effect.

WITNESS the signatures and seals of the above parties.

In the presence of:

WINGS-FOUR
A Michigan Partnership

BY _____
                    R. W. LECH
                 Attorney-in-Fact

In the presence of:

D. J. FOURNIER

P. NYDAM

GENERAL MOTORS CORPORATION

BY _____
       T. O. Mathues
                Vice President

ATTEST _____
       Marguerite Romzick
            Assistant Secretary

PAGE 4 OF RIDER

AGREEMENT, made this 20th day of January, A. D. 1981,
between WINGS-FOUR, a Michigan Partnership, whose address is 515
Lakeshore Drive, Grosse Pointe Shores, Michigan 48236, called the
Lessor, and GENERAL MOTORS CORPORATION, a Delaware Corporation,
with its principal offices at 3044 West Grand Boulevard, Detroit,
Michigan 48202, called the Lessee,

W I T N E S S E T H:

That the Lease Agreement dated November 1, 1979,
between the parties herein, covering 100,000 square feet of
warehouse space, fenced in areas and common driveways, at 3801
Holland Road, Buena Vista Township, Michigan, as more parti-
cularly shown in said Lease, for a term commencing June 1, 1979,
and expiring May 31, 1982, is hereby amended for the sole purpose
of deleting Clause Thirtieth:

Effective December 20, 1980, Clause Thirtieth is hereby
deleted and of no further force and effect.

As hereby amended, said Lease dated November 1, 1979,
is in all respects ratified and confirmed.

WITNESS the signature and seal of Lessor this 12th

day of MARCH            , A. D. 1981, and the signature and seal
of Lessee this  16.TH day of    June       , A. D. 1981.

In the presence of:                    WINGS-FOUR
                                       a Michigan Partnership

*Rog (Thompson)*                       BY  *R W Lech*    L.S.
*Constance M. Shubin*                  R. W. Lech
                                       Attorney-In-Fact

In the presence of:                    GENERAL MOTORS CORPORATION

*V. D. Register*                       BY  *T. O. Mattun*
V. D. Register                         T. O. Mathues  Vice President

*Barbara E. Wheelock*                  ATTEST *Marguerite Romzick*
Barbara E. Wheelock                           Marguerite Romzick
                                              Assistant Secretary

-2-

# GENERAL MOTORS CORPORATION

October 29, 1981

Wings-Four
515 Lakeshore Drive
Grosse Pointe Shores, Michigan 48236

Gentlemen:

      Pursuant to Lease dated November 1, 1979, between your company, as Lessor, and General Motors Corporation, as Lessee, covering premises located at 3801 Holland Road, Buena Vista Township, Michigan, as more particularly shown in said Lease, we hereby notify you of our election to extend the term of said Lease for a period of three (3) years, on all the terms and conditions contained in said Lease, as amended.

      Please acknowledge receipt of this notice by signing and returning the enclosed copy to the undersigned.

Very truly yours,

GENERAL MOTORS CORPORATION

BY _____

FORM APPROVED
OTIS M. SMITH
GENERAL COUNSEL

RECEIPT ACKNOWLEDGED

DATE _November 17, 1981_

WINGS-FOUR

BY _____
Attorney-In-Fact

GM Real Estate
By _____

General Motors Building   3044 West Grand Boulevard   Detroit, Michigan 48202

GM

General Motors Corporation

November 26, 1984

Wings-Four
515 Lakeshore Drive
Grosse Pointe Shores, Michigan 48236

Gentlemen:

Pursuant to Lease dated November 1, 1979, between
your company, as Lessor, and General Motors Corporation, as
Lessee, covering premises located at 3801 Holland Road,
Buena Vista Township, Michigan, as more particularly shown
in said Lease, we hereby notify you of our election to
extend the term of said Lease for a period of three (3)
years on all the terms and conditions contained in said
Lease, as amended and extended.

Please acknowledge receipt of this notice by sign-
ing and returning the enclosed copy to the undersigned.

Very truly yours,

GENERAL MOTORS CORPORATION

BY

FORM APPROVED
OFFICE OF GENERAL COUNSEL

CC: AAM
   R W Lech
   11|30|84

EXECUTION RECOMMENDED
ARGONAUT REALTY

BY

General Motors Building   3044 West Grand Boulevard   Detroit, Michigan 48202

## ASSIGNMENT OF LEASE

KNOW ALL MEN BY THESE PRESENTS that effective December
29, 1986, Wings-Four Partnership, a Michigan Co-partnership,
whose address is 515 Lake Shore Drive, City of Grosse Pointe
Shores, State of Michigan, hereinafter known as "Assignor",
for valuable consideration, the receipt of which is hereby
acknowledged, hereby sell, assign, transfer and set over unto
Central Transport, Inc., a Michigan Corporation, whose
address is 34200 Mound Road, City of Sterling Heights, State
of Michigan, its successors and assigns, hereinafter known as
"Assignee", all right, title and interest, including all
leasehold improvements, if any, of  Assignor in and to the
lease between Wings-Four Partnership, Lessor, and General
Motors Corporation, Lessee, dated November 1, 1979 as
amended, for the premises commonly known as 3801 Holland
Road, Buena Vista Township, Michigan.

In witness whereof, the parties hereunto set their hands
and seals as of the day and year first above written.

WITNESSED BY:                    Wings-Four Partnership

_____       By: _____

_____       Its: Gonveral  Partner

                                 Central Transport, Inc.

_____       By: _____

_____       Its: Executive Vice President

## LEASE AMENDMENT

AGREEMENT, made this 19th day of July, A.D. 1988, between CENTRAL TRANSPORT, INC., a Michigan corporation, Lessor, and GENERAL MOTORS CORPORATION, a Delaware corporation, with it principal offices at 3044 West Grand Boulevard, Detroit, Michigan 48202, called the Lessee,

### W I T N E S S E T H:

That the Lease Agreement dated November 1, 1979, between WINGS FOUR, a Michigan Partnership, the predecessor in interest to Lessor hereunder, and Lessee, covering 100,000 square feet of warehouse space, fenced in areas and common driveways, at 3801 Holland Road, Buena Vista Township, Michigan, as more particularly shown in said Lease, for a term commencing June 1, 1979, and now expiring May 31, 1988, is hereby extended for a further term of three (3) years, expiring May 31, 1991, upon all the same terms and conditions contained in said Lease dated November 1, 1979 as amended, except that commencing June 1, 1988 the yearly rent shall be Three Hundred Twenty Nine Thousand Three Hundred Sixty-Four Dollars ($329,364.00) payable in advance in equal monthly installments of $27,447.00 and is hereby amended as follows:

(1)  The total square foot area stated in the Premises Section is corrected to read "98,400 square feet" instead of "100,000 square feet."

(2)  The total square foot area shall be increased from 98,400 square feet to 109,788 square feet by adding an adjacent

area to the South measuring approximately 95' x 120', representing an increase of 11,388 square feet.

(3)   Lessee shall erect promptly and at its sole expense, a wall between the 11,388 square feet of space added hereunder and the area to the South of it in order to separate the total area covered by this Lease from the remaining area to the South.

(4)   Lessee shall install, promptly and at its sole expense, separate utility meters or connections to other utility meters for supplying gas, water and electricity to the additional space, as necessary.

(5)   At the expiration of the term or earlier termination of said Lease, as extended, Lessee shall restore the trash compactor door to the condition it was in when the Premises were originally delivered to Lessee, ~~ordinary wear and tear,~~ ℞℟ ~~damage by fire or other casualty excepted.~~ ℞℟

(6)   Clause Twenty-Fourth shall be amended by deleting the year "1979" in line 5 and replacing it with the year "1986".

(7)   Clause Twenty-Sixth shall be amended by deleting the year "1979" in line 7 and replacing it with the year "1986".

As hereby amended, said Lease dated November 1, 1979, is in all respects ratified and confirmed.

WITNESS the signature and seal of Lessor this 27th day of      July      , A.D. 1988, and the signature and seal of

2



Lessee this          day of                          , A. D. 1988.

In the presence of:                    CENTRAL TRANSPORT, INC.

_Lois Jaskow_                          BY: _Ray Champagne (by GTM)_
Lois Jaskow                            Ray Champagne, Vice President Real Estate

_Lynn Drake_                           ATTEST: _Norman E. Harned_
Lynn Drake                             Norman E. Harned
                                       Vice President and Treasurer

In the presence of:                    GENERAL MOTORS CORPORATION

_____                BY:_____

_____                ATTEST:_____

EXECUTION RECOMMENDED
ARGONAUT REALTY
BY

3

Lessee this 17th day of August , A.D. 1988.

In the presence of:                           CENTRAL TRANSPORT, INC.

_Lois Jankow_ (signature)                     BY: _(signature)_
Lois Jankow                                   Ray Champagne, Vice President Real Estate

_Lynn Drake_ (signature)                      ATTEST: _(signature)_
Lynn Drake                                    Norman E. Harned
                                              Vice President and Treasurer

In the presence of:                           GENERAL MOTORS CORPORATION

_(signature)_                                 BY: _(signature)_

_Bernice C. Healy_ (signature)                ATTEST: _Sandra J. Donovan_ (signature)

EXECUTION RECOMMENDED
ARGONAUT REALTY.
BY _(signature)_

3

## LEASE AMENDMENT

AGREEMENT, made this 19th day of July, A.D. 1988, between CENTRAL TRANSPORT, INC., a Michigan corporation, Lessor, and GENERAL MOTORS CORPORATION, a Delaware corporation, with it principal offices at 3044 West Grand Boulevard, Detroit, Michigan 48202, called the Lessee,

W I T N E S S E T H:

That the Lease Agreement dated November 1, 1979, between WINGS FOUR, a Michigan Partnership, the predecessor in interest to Lessor hereunder, and Lessee, covering 100,000 square feet of warehouse space, fenced in areas and common driveways, at 3801 Holland Road, Buena Vista Township, Michigan, as more particularly shown in said Lease, for a term commencing June 1, 1979, and now expiring May 31, 1988, is hereby extended for a further term of three (3) years, expiring May 31, 1991, upon all the same terms and conditions contained in said Lease dated November 1, 1979 as amended, except that commencing June 1, 1988 the yearly rent shall be Three Hundred Twenty Nine Thousand Three Hundred Sixty-Four Dollars ($329,364.00) payable in advance in equal monthly installments of $27,447.00 and is hereby amended as follows:

(1)  The total square foot area stated in the Premises Section is corrected to read "98,400 square feet" instead of "100,000 square feet."

(2)  The total square foot area shall be increased from 98,400 square feet to 109,788 square feet by adding an adjacent

area to the South measuring approximately 95' x 120', representing an increase of 11,388 square feet.

(3) Lessee shall erect promptly and at its sole expense, a wall between the 11,388 square feet of space added hereunder and the area to the South of it in order to separate the total area covered by this Lease from the remaining area to the South.

(4) Lessee shall install, promptly and at its sole expense, separate utility meters or connections to other utility meters for supplying gas, water and electricity to the additional space, as necessary.

(5) At the expiration of the term or earlier termination of said Lease, as extended, Lessee shall restore the trash compactor door to the condition it was in when the Premises were originally delivered to Lessee, ~~ordinary wear and tear,~~ 𝒟𝒬 ~~damage by fire or other casualty excepted.~~ 𝒟𝒬

(6) Clause Twenty-Fourth shall be amended by deleting the year "1979" in line 5 and replacing it with the year "1986".

(7) Clause Twenty-Sixth shall be amended by deleting the year "1979" in line 7 and replacing it with the year "1986".

As hereby amended, said Lease dated November 1, 1979, is in all respects ratified and confirmed.

WITNESS the signature and seal of Lessor this 27th day of     July         , A.D. 1988, and the signature and seal of

2

01/31/2005 13:24   248-813-1422   DESIGN BLDG C   PAGE 02/06

## AMENDMENT TO LEASE AGREEMENT

**THIS AMENDMENT** made and entered into as of the 1st day of July, 1991, by and between Central Transport, Inc. (hereinafter referred to as "Landlord"), and General Motors Corporation, a Delaware corporation (hereinafter referred to as "Tenant").

### WITNESSETH:

The parties hereto entered into a Lease Agreement on November 1, 1979, as amended on July 19, 1988, under which Landlord leased to Tenant certain premises described in the Lease located in the Township of Buena Vista, City of Saginaw, State of Michigan, commonly known as 3801 Holland Road.

**WHEREAS,** the parties hereto desire to amend said Lease Agreement for the purpose of extending the term of the Lease;

**NOW THEREFORE,** in consideration of the mutual promises, covenants, and agreements hereinafter contained, it is mutually understood by and between the parties hereto that the Lease is hereby amended as follows:

1. The term of the Lease shall be extended for a period of three (3) years from and after the 1st day of June, 1991, and expiring May 31, 1994.

2. In addition to the Tenant's obligation for taxes, utilities and insurance as recited in the Lease, the Rent provided for in Paragraph 27 of the Lease is hereby increased to the sum of Nine Hundred Eighty-Eight Thousand Ninety-Two and 00/100 ($988,092.00) Dollars in lawful money of the United States of America, payable in advance, on the first day of each month throughout the term of this Lease, in equal consecutive monthly installments of Twenty-Seven Thousand Four Hundred Forty-Seven and 00/100 ($27,447.00) Dollars.

3. Provided Tenant is not in default hereunder, Tenant shall have the right and option to renew this Lease for three (3) years. The renewal option shall be subject to the same terms and conditions as contained herein, but without the provision for further option to renew and the monthly rental shall be determined based upon the then prevailing market rates to be agreed upon by Landlord and Tenant. To exercise said option, Tenant must give Landlord written notice six (6) months prior to the expiration of the lease term.

4. Landlord agrees to repair the drainage problem in the parking areas to prevent flooding. Landlord shall have ninety (90) days upon receipt of an executed lease amendment from Tenant to make said repairs. Should Landlord not repair the flooding problem within the ninety (90) day period, unless Landlord is proceeding with due diligence to repair, Tenant may at its option make those repairs necessary to cure said flooding problem at competitive prices and deduct such costs from the monthly rental.



Except as hereinabove specifically provided to the contrary, all of the remaining terms, covenants, conditions, and agreements in the Lease Agreement remain in full force and effect, and the Lease dated November 1, 1979 as amended on July 19, 1988, is hereby acknowledged, ratified, and confirmed by the parties thereto.

IN WITNESS WHEREOF, the undersigned have hereunto set their hands as of the day and year first above written.

WITNESSES:                        CENTRAL TRANSPORT, INC.

                                  BY: _____
                                      Gerald A. Rauch

                                  ITS: Director Acquisition & Development

                                           "Landlord"


WITNESSES:                        GENERAL MOTORS CORPORATION

                                  BY: _____
                                      W.J. O'KEEFE
                                  ITS: Executive Director, Corporate Services

                                           "Tenant"

                                  Execution Recommended
                                  Argonaut Realty
                                  By: _____

# _AMENDMENT TO LEASE AGREEMENT_

THIS AMENDMENT made and entered into as of the 1st day of December, 1994, by and between Crown Enterprises, Inc. (hereinafter referred to as "Landlord"), and General Motors Corporation, a Delaware corporation (hereinafter referred to as "Tenant").

WITNESSETH:

JANUARY 20, 1981

The parties hereto entered into a Lease Agreement on November 1, 1979, as amended July 19, 1988, July 1, 1991, and June 1, 1994, under which Landlord leased to Tenant certain premises, located in the Township of Buena Vista, County of Saginaw, State of Michigan, commonly known as 3801 Holland Road.

WHEREAS, the parties hereto desire to amend said Lease Agreement for the purpose of increasing the Leased Premises and increasing the monthly rental;

NOW THEREFORE, in consideration of the mutual promises, covenants, and agreements hereinafter contained, it is mutually understood by and between the parties hereto that the Lease is hereby amended as follows:

1.   Tenant's Leased area is hereby increased to include an additional Ten Thousand Five Hundred Sixty (10,560) square feet ( "Additional Leased Premises") as shown on Schedule "A", attached hereto and made part hereof.   Tenant's Leased Premises shall hereinafter be comprised of 120,348 square feet.

2.   The Rent is hereby increased to equal consecutive monthly installments of Thirty Thousand Seven Hundred and 00/100 ($30,700.00) Dollars. in lawful money of the United States of America, payable in advance, on the first day of each month throughout the term of the Lease,

Except as hereinabove specifically provided to the contrary, all of the remaining terms, covenants, conditions, and agreements in the Lease Agreement remain in full force and effect, and the Lease dated November 1, 1979, as amended July 19, 1988, July 1, 1991, and June 1, 1994, is hereby acknowledged, ratified, and confirmed by the parties thereto.

IN WITNESS WHEREOF, the undersigned have hereunto set their hands as of the day and year first above written.

WITNESSES:                      LANDLORD:      CROWN ENTERPRISES, INC

                                               BY:
                                                   Gerald A. Rauch

                                               ITS:   Vice President Real Estate

WITNESSES:                      TENANT:        GENERAL MOTORS CORPORATION

                                               BY:
                                                   W. J. O'KEEFE
                                               ITS:   Executive Director, Corporate Services

ref. saginaw.fle



CENTRAL TRANSPORT

Additional Warehouse 10,560

## AMENDMENT TO LEASE AGREEMENT

**THIS AMENDMENT** made and entered into as of the 23rd day of June, 1997, by and between CROWN ENTERPRISES, INC., a          Michigan    corporation, with its principal address at 12225 Stephens, Warren, Michigan 48089, hereinafter referred to as Landlord, and GENERAL MOTORS CORPORATION, a Delaware corporation, with its principal address at 3044 West Grand Boulevard, Detroit, Michigan 48202, hereinafter referred to as Tenant,

### W I T N E S S E T H:

**WHEREAS** the parties hereto entered into a Lease Agreement on November 1, 1979, as amended January 20, 1981, July 19, 1988, July 1, 1991, June 1, 1994, and December 1, 1994, under which Landlord leased to Tenant 120,348 square feet of premises described in the Lease located in the Township of Buena Vista, County of Saginaw, and State of Michigan, commonly known as 3801 Holland Road; and

**WHEREAS** the parties hereto desire to amend said Lease Agreement for the purpose of extending the term of the Lease and increasing the monthly rental:

**NOW THEREFORE,** in consideration of the mutual promises, covenants, and agreements hereinafter contained, it is mutually understood by and between the parties hereto that the Lease is hereby amended as follows:

(1)    **TERM:**  The term of the Lease shall be extended for a period of three (3) years from and after the 1st day of June, 1997, and expiring May 31, 2000.

(2)    **RENT:**  In addition to the Tenant's obligation for taxes, utilities, and insurance as recited in the Lease, the Rent is hereby increased to the sum of ONE MILLION

ONE HUNDRED SEVENTY-THREE THOUSAND FOUR HUNDRED TWENTY AND 00/100 DOLLARS ($1,173,420.00) in lawful money of the United States of America, payable in advance on the first day of each month throughout the term of this Amendment to Lease, in equal consecutive monthly installments of $32,595.00.

(3)    **CONFLICT:** In the event of a conflict between the terms of this Amendment and the terms of the Lease, the terms of this Amendment shall control. All of the defined terms in the Lease shall have the same definitions in this Amendment, unless otherwise defined herein. Except as set forth in this Amendment, the terms and conditions of the Lease shall remain unmodified and in full force and effect.

(4)    Provided Tenant is not in default hereunder, Tenant shall have the right and option to renew this Lease for one (1) term of three (3) years. The renewal option shall be subject to the same terms and conditions as contained herein with the exception of the monthly rental which shall be based upon the prevailing market rate to be agreed upon by Landlord and Tenant, provided that the rental rate for the renewal period is not less then the current rental rate. To exercise said option, Tenant must give Landlord written notice six (6) months prior to the expiration of the current Lease term.

Except as hereinabove specifically provided to the contrary, all of the remaining terms, covenants, conditions, and agreements in the Lease Agreement remain in full force and effect, and the Lease dated November 1, 1979, as amended January 20, 1981, July 19, 1988, July 1, 1991, June 1, 1994, and December 1, 1994, is hereby acknowledged, ratified, and confirmed by the parties thereto.

**IN WITNESS WHEREOF,** the Landlord has signed and sealed this instrument this _____

- 2 -

REVIEWED AND APPROVED
BY
R.D. HERRINGTON, ATTORNEY

EXECUTION RECOMMENDED
WORLDWIDE REAL ESTATE
BY _T. A. Siley_

day of _____, 1997, and the Tenant has signed and sealed this

instrument this _21st_ day of _August_, 1997.

CROWN ENTERPRISES, INC.

BY _____

        V. President

ATTEST _____

        Secretary

In the presence of:

_____

GENERAL MOTORS CORPORATION

BY _____

        M. P. Cullen, Director
        Worldwide Real Estate

ATTEST _____

        Assistant Secretary

In the presence of:

_____

M. L. Ainsley

- 3 -

# AMEND ᵀᵉNT TO LEASE AGREEᵐ NT

THIS AMENDMENT made and entered into as of this 24ᵗʰ day of May, 2000, by and between Crown Enterprises, Inc. (hereinafter referred to as "Landlord"), and Delphi Automotive Systems LLC, (hereinafter referred to as "Tenant").

WINGS-FOUR, AS PREDECESSOR-IN-INTEREST TO CENTRAL TRANSPORT, INC., WHOSE INTEREST IS NOW VESTED IN LANDLORD, AND GENERAL MOTORS CORPORATION, AS PREDECESSOR-IN-INTEREST TO TENANT.

WITNESSETH:

WHEREAS, the parties hereto entered into a Lease Agreement on November 1, 1979, as amended January 20, 1981, July 19, 1988, July 1, 1991, June 1, 1994, December 1, 1994, and June 23, 1997, under which Landlord leased to Tenant 120,348 square feet of premises described in the Lease located in the City of Saginaw, State of Michigan, commonly known as 3801 Holland Avenue.

WHEREAS, the parties hereto desire to amend said Lease Agreement for the purpose of extending the term of the Lease and increasing the monthly rent;

NOW THEREFORE, in consideration of the mutual promises, covenants, and agreements hereinafter contained, it is mutually understood by and between the parties hereto that the Lease is hereby amended as follows:

1.    The term of the Lease shall be extended for a period of three (3) years from and after the 1ˢᵗ day of June, 2000, and expiring the 31ˢᵗ day of May, 2003.

2.    Tenant's proportionate share of taxes, services & utilities, insurance, and maintenance shall be one hundred percent (100%).

3.    In addition to the Tenant's obligation for taxes, utilities, insurance, and maintenance as specified herein, the rent is hereby increased to the sum of one-million two-hundred sixty-three thousand six-hundred fifty-four and 00/100 dollars ($1,263,654.00) in lawful money of the United States of America, payable in advance on the first day of each month throughout the term of this Amendment to Lease Agreement in equal consecutive monthly installments of thirty-five thousand one-hundred one and 50/100 dollars ($35,101.50).

4.    In the event of a conflict between the terms of this Amendment and the terms of the Lease, the terms of this Amendment shall control. All of the defined terms in the Lease shall have the same definitions as this Amendment, unless otherwise defined herein. Except as set forth in this Amendment, the terms and conditions of the Lease shall remain unmodified and in full force and effect.

5.    Provided that Tenant is not in default hereunder, and provided that Landlord or its affiliated companies do not require the Leased Premises for their own operations, Tenant shall have the right and option to renew this Lease for one (1) additional term of three (3) years. The renewal option shall be subject to the same terms and conditions as contained herein excepting the monthly rental which shall be based upon the prevailing market rate to be agreed upon by Landlord and Tenant, provided that the rental for the renewal period is not less than the current rental rate. To exercise said renewal option; Tenant must provide Landlord with a written notice of its intent to renew at least six (6) months prior

to the expiration of th ʳ ʳm hereof.  Failure of Tenant to not ʳ Landlord as provided herein will waive Tenanᵗ ₒ option to renew.

Except as hereinabove specifically provided to the contrary, all of the remaining terms, covenants, conditions, and agreements in the Lease Agreement remain in full force and effect, and the Lease Agreement dated November 1, 1979, as amended January 20, 1981, July 19, 1988, July 1, 1991, June 1, 1994, December 1, 1994, and June 23, 1997, is hereby acknowledged, ratified, and confirmed by the parties thereto.

**IN WITNESS WHEREOF**, the undersigned have hereunto set their hands as of the day and year first above written.

WITNESSES:                          LANDLORD: Crown Enterprises, Inc.

_Todd White_                        BY: _Arnold M. Mistura_
                                        Arnold M. Mistura

_____             ITS:    President


WITNESSES:                          TENANT: Delphi Automotive Systems LLC

_D. Laird_                          BY:    DELPHI AUTOMOTIVE SYSTEMS   INC.

_____             ITS:    MANAGING MEMBER

                                    BY: _Edward J. O'Neill_
ref:    saginaw -delphi amendment.doc   EDWARD J. O'NEILL

                                    ITS:   AUTHORIZED REPRESENTATIVE

                                    EDWARD J. O'NEILL
                                    MANAGER, REAL ESTATE SERVICES

*EXECUTION RECOMMENDED DELPHI REAL ESTATE*

*APPROVED / LEGAL MIRO WEINER & KRAMER*

## AMENDMENT TO LEASE AGREEMENT

THIS AMENDMENT made and entered into as of this _____ day of _____, 2003 by and between Crown Enterprises, Inc. (hereinafter referred to as "Landlord"), and Delphi Automotive Systems LLC, (hereinafter referred to as "Tenant").

### WITNESSETH:

(as so amended, the "Lease")



WHEREAS, Wings-Four, as predecessor-in-interest to Central Transport, Inc., whose interest is now vested in Landlord, and General Motors Corporation, as predecessor-in-interest to Tenant entered into a Lease Agreement on November 1, 1979, as amended January 20, 1981, July 19, 1988, July 1, 1991, June 1, 1994, December 1, 1994, June 23, 1997, and May 24, 2000, under which Landlord leased to Tenant 120,348 square feet of premises described in the Lease located in the City of Saginaw, State of Michigan, commonly known as 3801 Holland Avenue.

WHEREAS, the parties hereto desire to amend said Lease Agreement for the purpose of extending the term of the Lease; at the currently effective rental rates



NOW THEREFORE, in consideration of the mutual promises, covenants, and agreements hereinafter contained, it is mutually understood by and between the parties hereto that the Lease is hereby amended as follows:

1. The term of the Lease shall be extended for a period of three (3) years from and after the 1st day of June, 2003, and expiring the 31st day of May, 2006.

2. Provided that Tenant is not in default and provided that Landlord or its affiliated companies do not require the Leased Premises for their own operations, Tenant shall have the right and option to renew this Lease for one (1) additional term of three (3) years.. The renewal option shall be subject to the same terms and conditions as contained herein excepting the monthly rental, which shall be based upon the prevailing market rate to be agreed upon by Landlord and Tenant. To exercise said renewal option; Tenant must provide Landlord with a written notice of its intent to renew at least six (6) months prior to the expiration of the term hereof. Failure of Tenant to notify Landlord as provided herein will waive Tenant's option to renew.

3. In the event of a conflict between the terms of this Amendment and the terms of the Lease, the terms of this Amendment shall control. All of the defined terms in the Lease shall have the same definitions as this Amendment, unless otherwise defined herein. Except as set forth in this Amendment, the terms and conditions of the Lease shall remain unmodified and in full force and effect.

SEE ATTACHED INSERT 4 :

Except as hereinabove specifically provided to the contrary, all of the remaining terms, covenants, conditions, and agreements in the Lease Agreement remain in full force and effect, and the Lease Agreement dated November 1, 1979, as amended January 20, 1981, July 19, 1988, July 1, 1991, June 1, 1994, December 1, 1994, ~~and~~ June 23, 1997, and May 24, ~~2002,~~ is hereby acknowledged, ratified, and confirmed by the parties thereto.
2000

IN WITNESS WHEREOF, the undersigned have hereunto set their hands as of the day and year first above written.

WITNESSES:                          LANDLORD: Crown Enterprises, Inc.

_Nancy SeePagla_                    BY: _Todd White_
                                         Todd White

_____               ITS:    Agent

WITNESSES:                          TENANT: Delphi Automotive Systems LLC

_JB Brando_                         BY: _____

_End Perry_                         ITS: _____



Execution Recommended
Equis Corporation
By: _____
By: _____

## INSERT 4

4.      This Amendment contains the entire agreement between the parties with respect to the subject matter hereof, and no promise, representation, warranty, covenant, agreement, or understanding relating to or arising in connection with this Amendment or the Lease shall be binding upon or inure to the benefit of either party unless set forth in this Amendment or the Lease.  All prior negotiations with respect to or arising in connection with the subject matter of this Amendment are hereby merged herein.

FORM B10 (Official Form 10) (10/05)

| United States Bankruptcy Court - Southern District of New York | PROOF OF CLAIM |
|---|---|

| Name of Debtor<br>**Delphi Automotive** | Case Number<br>**05-44481 (RDD)** |
|---|---|

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

Name of Creditor (The person or other entity to whom the debtor owes money or property):
**Crown Enterprises, Inc.**

Name and address where notices should be sent:
**Crown Enterprises, Inc.**
**c/o Mark H. Shapiro, Esq.,**
**Steinberg Shapiro & Clark**
**24901 Northwestern Hwy., Ste. 611**
**Southfield, MI 48075**

Telephone number: **248-352-4700**

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check box if you have never received any notices from the bankruptcy court in this case.

☐ Check box if the address differs from the address on the envelope sent to you by the court.

*This Space is for Court Use Only*

Last 4 digits of account or other number by which creditor identifies debtor:

Check here
if this claim ☐ replaces    a previously filed claim dated:_____
☐ amends

**1. Basis for Claim**
☐ Goods sold
☐ Services performed
☐ Money loaned
☐ Personal injury/wrongful death
☐ Taxes
■ Other **prepetition lease payments and damage claims**

☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
☐ Wages, salaries, and compensation (fill out below)
  Last four digits of SS #: _____
  Unpaid compensation for services performed
  from _____ to _____
  (date)                    (date)

**2. Date debt was incurred:** **3/05-10/05**

**3. If court judgment, date obtained:**

**4. Classification of Claim.** Check the appropriate box or boxes that describe your claim and state the amount of the claim at the time case filed.
See reverse side for important explanations

Unsecured Nonpriority Claim $ ____**269,135.33**____
■ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or c) none or only part of your claim is entitled to priority.

**Unsecured Priority Claim.**
☐ Check this box if you have an unsecured claim, all or part of which is entitled to priority
Amount entitled to priority $_____
Specify the priority of the claim:

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B)
☐ Wages, salaries, or commissions (up to $10,000),* earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).
☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).

**Secured Claim**
☐ Check this box if your claim is secured by collateral (including a right of setoff).
Brief Description of Collateral:
☐ Real Estate   ☐ Motor Vehicle   ☐ Other _____
Value of Collateral: $_____

Amount of arrearage and other charges at time case filed included in the secured claim, if any: $_____

☐ Up to $2,225* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).
☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(____).
* Amounts are subject to adjustment on 4/1/07 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

**5. Total Amount of Claim at Time Case Filed: $ 269,135.33** _____ _____ **269,135.33**
    (unsecured)       (secured)       (priority)       (Total)
☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

6. **Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

7. **Supporting Documents:** Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

8. **Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim

*This Space is for Court Use Only*

| Date<br><br>**July 26, 2006** | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any):<br><br>*[signature]*<br>**Mark H. Shapiro, Atty for Claimant** |
|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

**STATEMENT**

CROWN ENTERPRISES, INC.
ATTN: REAL ESTATE DEPT
12225 STEPHENS
WARREN, MI 48089

Delphi Automotive
C/C Equis
MC480-410-174
5825 Delphi Dr
Troy, MI 48098

| Date | Code | Description | Charges | Payments | Amount Due |
|---|---|---|---|---|---|
| 5/1/2004 | UT3 | ELEC 2/12 - 3/12 | 716.09 | 0.00 | 716.09 |
| 7/1/2004 | UT3 | ELEC THRU 5/12 | 347.21 | 0.00 | 347.21 |
| 9/1/2004 | UT3 | ELEC 3/11 - 7/13 | 149.69 | 0.00 | 149.69 |
| 10/1/2004 | UT3 | ELEC 7/13 - 8/11 | 150.66 | 0.00 | 150.66 |
| 10/1/2004 | RT3 | R/E TAXES | 23,749.58 | 0.00 | 23,749.58 |
| 3/1/2005 | RT3 | R/E TAXES | 15,776.46 | 0.00 | 15,776.46 |
| 3/1/2005 | RT3 | R/E TAXES | 27.40 | 0.00 | 27.40 |
| 3/1/2005 | RT3 | R/E TAXES | 4,724.56 | 0.00 | 4,724.56 |
| 10/1/2005 | RT3 | R/E TAXES | 24.13 | 0.00 | 24.13 |
| 10/1/2005 | RT3 | R/E TAXES | 28,628.14 | 0.00 | 28,628.14 |
| 10/1/2005 | RT3 | R/E TAXES | 9,841.41 | 0.00 | 9,841.41 |
| 7/25/2006 | MS3 | EST-DAMAGES OCCURING PRE-PETITION | 185,000.00 | 0.00 | 185,000.00 |

**CURRENT BALANCE DUE**      269,135.33

Property Address:

3801 Holland Rd
Saginaw, MI 486019468

Tenant ID: Delphi Automotive

## BREAKDOWN/DETAIL ON INVOICED DAMAGE CLAIM

The damage claim includes repair / replacement / removal for the following items:

1. Repair / replace damaged guard rail around the perimeter of the interior walls.
2. Repair / replace damaged interior siding panels.
3. Repair door panels on 2 overhead doors.
4. Replace all office floor tiles.
5. Replace ceiling tiles where neccessary.
6. Secure all overhead and man doors (installed or replaced door locks where neccessary).
7. Repair / replace damaged fence / posts.
8. Remove personal property and tenant improvements: signage. waste products, steel crates, interior guard rails (includes restoring the floor to its original or similar condition), and other misc. equipment.

F:\data\Mark\CLIENTS\Centra - Delphi\damage breakdown.wpd