# U.S. MASTER LEASE AGREEMENT

THIS MASTER LEASE AGREEMENT, dated as of June 30, 2000 ("Agreement"), is between Sentry Financial Corporation, a Utah corporation, with an office at One Utah Center, 201 S. Main, Suite 1400, Salt Lake City, Utah 84111-2215 (hereinafter called "Lessor"), and Delphi Automotive Systems Corporation, a corporation organized and existing under the laws of the State of Delaware, with an office at 5725 Delphi Drive, Troy, Michigan 48098 (hereinafter called, together with its successors and assigns, if any, "Lessee"), through and on behalf of Lessee's affiliates and Divisions described on Annex E attached hereto. Each such entity which executes a Schedule shall be considered a "Lessee" under this Agreement and under each Schedule to which it is a party. Prompt payment and performance of all obligations of each Affiliate under each Lease are hereby unconditionally and irrevocably guaranteed by the undersigned Lessee to Lessor.

WITNESSETH:

## I.   LEASING:

(a)   Subject to the terms and conditions set forth below, Lessor agrees to lease to Lessee, and Lessee agrees to lease from Lessor, the computer hardware and associated peripherals and other equipment ("Equipment") and Lessor agrees to finance any one time charges for software or services ("Financed Items") described in Attachment A to any schedule attached hereto or made a part hereof (any such schedule, together with all attachments thereto, a "Schedule"). Terms defined in a Schedule and not defined herein shall have the meanings contained in such Schedule. In the event of any direct inconsistency between the terms of a Schedule and this Agreement, to the extent of such conflict, the terms of the Schedule shall prevail.

(b)   The obligation of Lessor to purchase Equipment from the manufacturer or supplier thereof (collectively, "Supplier") and to lease the same to Lessee under any Schedule shall be subject to receipt by Lessor, prior to the Lease Commencement Date (with respect to such Equipment), of each of the following documents in form and substance satisfactory to Lessor: (i) a Schedule relating to the Equipment and/or any Financed Item executed by Lessee, (ii) except where Lessor has a separate agreement or relationship with Supplier that does not require such a document, assignment, a Purchase Order Assignment and Consent in the form of Attachment B, (iii) evidence of insurance which complies with the requirements of Section IX, and (iv) such other documents as Lessor may reasonably request. Subject to any right of return provided by the Supplier, Equipment shall be deemed to be irrevocably accepted under this Agreement upon delivery to Lessee's specified delivery location ("Acceptance Date"). In the event Lessee exercises any right of return granted by a Supplier, then Lessee agrees to hold Lessor harmless from any obligation of or payment by Lessor to the Supplier arising out of Lessee's return of Equipment. Lessor shall prepare and send to Lessee Schedules under this Agreement specifying the lease terms for Equipment ordered by Lessee. Lessee agrees to sign and return each Schedule within 10 days after Lessee receives a Schedule unless Lessee receives a Schedule before the Acceptance Date, in which case the Schedule shall be returned to Lessor on the later of the Acceptance Date of the Equipment or 10 days after Lessee's receipt of the Schedule. If the Lessee fails to comply with the prior sentence, Lessor shall notify Lessee that the Schedule has not been returned, and Lessee shall sign and return such Schedule within 2 days thereafter. If Lessee does not return the Schedule after such notice, Lessor may require the Lessee to purchase the Equipment at the Total Equipment Acquisition Cost set forth on the Schedules, plus any actual administration costs and expenses including shipping charges, Taxes or Duties.

Lessee and Lessor agree that a signed Schedule may be amended by written notice from Lessor to Lessee provided such notice is (i) to correct the serial (or service tag) number of Equipment and/or (ii) adjust up to 15% of the total cost of the Schedule and the related rent on the Schedule caused by changes in Lessee's order with the Supplier or any returns by Lessee pursuant to its right of return provided by the Supplier. Lessee's right to amend a signed Schedule due to (ii) above shall end at the time Lessee accepts the Equipment and certifies to Lessor that the Equipment has been put into productive use and service.

(c)   Upon the Acceptance Date, Lessee's commitments with respect to the applicable Schedule shall become irrevocable. Notwithstanding any provision herein, in any Schedule or otherwise, Lessee's obligation to pay all rent and other amounts required to be paid by Lessee under this Agreement is absolute and unconditional and shall not be affected by any deduction, reduction, abatement, claim of recoupment, right of setoff or defense of any kind whatsoever, including any failure of the Equipment or a Financed Item to perform, or any misrepresentations by

Supplier. Lessee shall make a claim solely against Supplier or other third party if the Equipment or a Financed Item is unsatisfactory for any reason.

(d)    This Agreement may only be used for the lease of Equipment in the United States of America.

## II.    TERM, RENT, AND PAYMENT:

(a)    The rent payable hereunder ("Rent") and Lessee's right to use the Equipment shall commence on the Acceptance Date for such Equipment ("Lease Commencement Date"). The Equipment shall be leased for the period specified in the applicable Schedule (the "Term"). If any Term is extended, the word "Term" shall be deemed to refer to all extended terms, and all provisions of this Agreement shall apply during any extended terms, except as otherwise agreed to in writing.

(b)    Rent shall be paid to Lessor at its address stated above, except as otherwise directed in writing by Lessor. Rent shall be due and payable as stated in the relevant Schedule starting on the Lease Commencement Date; provided, however, that added to the first payment of Rent shall be a prorated portion of Rent calculated based on a 30-daymonth, 90-day quarter, or 360-day year (as appropriate) for the period from the Acceptance Date to the Lease Commencement Date. Advance Rent shall be refunded to Lessee without interest if Lessee does not accept the Equipment for which Advance Rent was paid.

## III.    TAXES:

Notwithstanding any provision hereof or of any Schedule, Lessee shall have no liability for taxes imposed by the federal government or any state or political subdivision thereof which are on or measured by or relate to the gross income, net income, gross receipts (other than rent under a Schedule), capital, capital stock, or net worth of Lessor. Lessee shall promptly reimburse Lessor for all taxes, fees, and assessments due, imposed, assessed, or levied against the Equipment, or the purchase, ownership, delivery, leasing, possession, the use or operation thereof, or upon the rentals or receipts with respect to this Agreement or any Schedule hereunder, including all license and registration fees and all sales, use, personal property, excise, stamp, or other similar taxes, imposts, duties, and charges, together with any penalties, fines, or interest due for nonpayment thereof, imposed against this Agreement or any Schedules or documents supplemental thereto, or against Lessor, Lessee, or the Equipment by any federal, state, or local government or taxing authority during or relating to the Term of this Agreement (collectively, "Taxes"). Notwithstanding any provision hereof or of any Schedule, Lessee shall not be liable for any penalties, fines, or interest resulting from any acts or omissions of Lessor, but only to the extent such penalties, fines, or interests have not arisen from Lessor's acts or omissions which are predicated on a request from Lessee or reliance on Lessee's representations or duties pursuant to this Agreement. Lessee shall (i) reimburse Lessor upon receipt of written request for reimbursement for any Taxes charged to or assessed against Lessor, provided such Taxes have not previously been paid by, or simultaneously billed to Lessee (in this regard Lessor and Lessee agree to mutually cooperate in the resolution of such matters with the appropriate taxing authorities), (ii) on written request of Lessor, submit to Lessor written evidence of Lessee's payment of Taxes, (iii) on all reports and returns show ownership of the Equipment by Lessor, and (iv) upon receipt of written request, send a copy thereof to Lessor. Lessor shall timely send to Lessee all invoices, notices, returns and other documents relating to Taxes for which Lessee is responsible for filing hereunder.

## IV.    REPORTS:

(a)    Lessee will notify Lessor in writing, within ten (10) days after any tax or other lien shall attach to any Equipment, of the full particulars thereof and of the location of such Equipment on the date of such notification unless the same shall have been removed or fully discharged by Lessee.

(b)    Lessee will permit Lessor to inspect any Equipment during normal business hours, provided that no exercise of such inspection right shall materially interfere with the normal operation of the Equipment or the business of Lessee.

(c)    Upon written request of Lessor, Lessee will notify Lessor forthwith in writing of the location of any Equipment as of the date of such notification. Lessee may relocate any Equipment from the Equipment Location

Computer Equipment (6/99)

- 2 -

specified in the applicable Schedule to another of its business locations within the United States, provided Lessee remains in possession and control of the Equipment and notifies Lessor as to the new location of the Equipment within ten (10) days of the relocation of such Equipment. Upon Lessor's request, Lessee will provide Lessor with any documents reasonably necessary for UCC filing purposes. In the event that the relocation of Equipment shall cause Lessor any adverse tax effects, then Lessee agrees to indemnify and hold Lessor harmless from such adverse tax effects.

(d)    Lessee will report to Lessor in writing if any Equipment is lost or damaged (where the estimated repair costs would exceed ten percent (10%) of its then fair market value), or is otherwise involved in an accident causing personal injury or material property damage.

## V.    DELIVERY, USE, AND OPERATION:

(a)    Unless otherwise agreed, all Equipment shall be shipped directly from the Supplier to Lessee.

(b)    Lessee agrees that the Equipment will be used by Lessee for business or commercial purposes, and in a manner complying with all material applicable laws and regulations.

(c)    Lessee will keep the Equipment free and clear of all liens and encumbrances other than the following: (1) liens arising from claims attributable to Lessor, (2) liens for taxes of Lessee either not yet due or being contested in good faith by appropriate proceedings, so long as such proceedings do not involve any material danger of the sale, forfeiture, or loss of the Equipment or any interest therein, and (3) materialmen's, mechanics', workmen's, repairmen's, or other like liens arising in the ordinary course of Lessee's business (including those arising under maintenance agreements entered into in the ordinary course of business) securing obligations that are not overdue or are being contested in good faith by appropriate proceedings, so long as such proceedings do not involve any material danger of the sale, forfeiture, or loss of the Equipment or any interest therein.

## VI.    MAINTENANCE AND ENHANCEMENTS:

(a)    Lessee will, at its sole expense, maintain or cause to be maintained each piece of Equipment in good operating order, repair, condition, and appearance in accordance with normal industry standards, normal wear and tear excepted. Lessee shall, if at any time requested by Lessor, affix in a prominent position on each piece of Equipment plates, tags, or other identifying labels showing ownership thereof by Lessor. So long as no Event of Default (as defined below in Section XI) shall have occurred and be continuing, Lessee may, without the prior written approval of Lessor, deliver possession of Equipment to the Supplier or to any other approved maintenance provider for testing, service, repair, maintenance, or overhaul work on such Equipment.

(b)    Lessee, at its sole expense, may acquire additional features, parts, accessories and devices, and make model upgrades (collectively, "Enhancements") to the Equipment, as long as such Enhancements are approved by the manufacturer and do not invalidate any warranty terms or impair the enforcement of such warranties. Enhancements may be acquired from the Supplier or from other manufacturers, suppliers, or distributors or from other lessors. If requested by Lessee, Lessor may provide a proposal to Lessee for the lease of the Enhancement. Lessee may, at any time and at its sole expense, remove any Enhancements not the property of Lessor and restore the Equipment to its former condition, normal wear and tear excepted. Lessee may not use any Enhancements that are not specifically approved in writing by the manufacturer of the Equipment. Any Enhancements not removed by Lessee prior to return of the Equipment to Lessor shall become the property of Lessor free and clear of all liens and encumbrances. The upgraded Equipment may be returned to Lessor in satisfaction of Lessee's end of lease obligation to return the Equipment as originally leased, provided that the original function of the Equipment is not impaired and that the end of lease fair market value of the upgraded Equipment is at least as great as that of the original Equipment's end of lease fair market value.

(c)    All additions, repairs, parts, supplies, accessories, equipment, and devices furnished, attached, or affixed to any Equipment which are not readily removable shall be made only in compliance with applicable law, including applicable Internal Revenue Service guidelines relating to fixtures to real property. Lessee will not, without

Computer Equipment (6/99)

the prior written consent of Lessor, which shall not be unreasonably withheld, affix or install any Equipment to or in any personal or real property other than that which is specified herein.

(d) Any alterations or modifications to the Equipment that may, at any time during the Term of this Agreement, be required to comply with any applicable law, rule, or regulation, shall be made at the expense of Lessee.

## VII.   EVENT OF LOSS/STIPULATED LOSS VALUE:

(a) "Stipulated Loss Value" means, as to any Equipment, an amount determined as of the date of the Event of Loss (as defined below in Section VII(b)) or Event of Default (as defined below in Section XI) in question pursuant to a "Table of Stipulated Loss Values" attached to the applicable Schedule.

(b) "Event of Loss" with respect to the Equipment means any of the following: (i) the loss of such Equipment or use thereof due to the destruction of or damage to such Equipment which renders repair uneconomic or which renders such Equipment permanently unfit for normal use by Lessee for any reason whatsoever; (ii) the theft, disappearance, confiscation, condemnation, or seizure of title to such Equipment which shall have resulted in the loss of possession or use of such Equipment by Lessee for a period in excess of sixty (60) consecutive days; or (iii) imposition of environmental or other legal restrictions that make continued use of the Equipment economically impractical or illegal.

(c) In the event any Event of Loss shall occur, on or before the next Rent payment date Lessee shall, at its option, (1) pay Lessor the Stipulated Loss Value of the Equipment suffering the Event of Loss, plus all amounts unpaid and owing (including any documented interest charges incurred by Lessor or Lessor's Assignee and applicable taxes), or (2) substitute and replace each item of Equipment suffering the Event of Loss with an item of Substitute Equipment (as defined below). If Lessee shall elect to pay the Stipulated Loss Value of the Equipment suffering an Event of Loss, upon Lessor's receipt in full of such payment and amounts due and owing, the applicable Lease shall terminate as it relates to such Equipment and Lessee shall be relieved of all obligations under the applicable Lease as it relates to such Equipment. If Lessee shall elect to replace Equipment suffering an Event of Loss with items of equipment of equal or greater fair market value that are comparable in all material respects (such as Equipment of the same manufacturer, same type and model with greater or equal capacity) to such Equipment ("Substitute Equipment"), (i) the applicable Term shall continue in full force and effect without any abatement of Rent with such Substitute Equipment thereafter being deemed to be Equipment leased thereunder, and (ii) Lessee shall deliver to Lessor a bill of sale or other documentation, in either case in form and substance satisfactory to Lessor, in which Lessee shall represent and warrant that it has transferred to Lessor good and marketable title to all Substitute Equipment, free and clear of all liens, encumbrances and claims of others, and (iii) Lessee shall provide Lessor with a listing by serial or service tag numbers of all Equipment which will not be returned and the corresponding Substitute Equipment. Upon Lessor's receipt of such payment of Stipulated Loss Value in full, or such bill of sale or other documentation, as the case may be, Lessor shall promptly transfer to Lessee by execution and delivery of a bill of sale or other documentation, in either case in form and substance satisfactory to Lessor, all of Lessor's interest in the Equipment suffering the Event of Loss "AS IS, WHERE IS," without any warranty, express or implied, from Lessor, other than the absence of any liens or claims by or through Lessor.

(d) In the event of any repairable damage to any Equipment, an Event of Loss shall not be deemed to have occurred and the Lease shall continue with respect to such Equipment without any abatement of Rent, Lessor shall pay to Lessee any insurance proceeds received by Lessor in connection with the Equipment suffering repairable damage, and Lessee shall, at its expense, cause such Equipment to be repaired to the condition in which it is required to be maintained pursuant to this Agreement. Lessee shall notify Lessor of any Event of Loss or repairable damage to any Equipment as soon as reasonably practicable after the date of any such occurrence.

## VIII.   RISK OF LOSS:

Lessee hereby assumes and shall bear the entire risk of any loss, theft, damage to, or destruction of, any piece of Equipment from any cause whatsoever from the time the Equipment is received by Lessee.

## IX.   INSURANCE:

Computer Equipment (6/99)

- 4 -

At all times during the applicable Term, Lessee shall have the option to maintain insurance with insurer(s) of recognized responsibility for property and casualty damages to the Equipment and commercial general liability insurance in amounts and against such risks as are customarily insured against by Lessee on similar equipment, or to self-insure against such risks. Any insurance proceeds resulting from independent insurance carried by Lessee or condemnation payments received by Lessor for Equipment which suffers an Event of Loss shall be deducted from amounts payable by Lessee as a result of such Event of Loss, with Lessee remaining liable for any deficiency. However, if an Event of Loss occurs, Lessee shall remain liable to make all required payments as set forth in Section VII herein within the allowable time frame. If the sum of any insurance proceeds, condemnation payments and payments made by Lessee, received by Lessor in connection with Equipment suffering an Event of Loss exceed the amount due under Section VII with respect thereto, Lessor shall promptly pay the Lessee any such excess.

X.   **RETURN OF EQUIPMENT:**

Upon any expiration or termination of this Agreement or any Schedule, Lessee shall promptly, at its own cost and expense: (i) perform any testing and repairs required to place the subject Equipment and Financed Items in the same condition and repair as received, reasonable wear and tear excepted, and in working condition; (ii) if deinstallation, disassembly, or crating is required, cause such Equipment to be properly deinstalled, disassembled, and crated in accordance with normal industry standards for the Equipment; (iii) remove any proprietary information; and (iv) tender such Equipment or Substitute Equipment (as applicable) and Financed Items to Lessor at Lessor's expense to Lessor's principal place of business or such other location as Lessor might specify. Upon and after tender to Lessor in accordance with the terms contained herein, Lessee shall have no further responsibilities for the Equipment. This shall not affect any obligations hereunder to have been performed prior to said tender. Upon Lessee's request following the expiration or termination of the Lease for any piece of Equipment, Lessor shall promptly deliver to Lessee UCC termination statements or amendments with respect to each UCC financing statement filing with respect to such piece of Equipment, together with such other documentation as Lessee shall reasonably request.

XI.  **EVENTS OF DEFAULT:**

(a)   Lessee shall be in default under the affected Schedule(s) upon the occurrence of any one of the following events (each, a "Limited Event of Default"):

(1)   Lessee breaches its obligation to pay rent or any other sum when due and fails to cure the breach within twenty (20) days after said sum is due;

(2)   Lessee breaches any of its other obligations, representations, or warranties and fails to cure that breach within thirty (30) days after written notice thereof;

(3)   any Equipment is illegally used and Lessee fails to cease such use within five (5) working days after written notice thereof;

(4)   any representation or warranty made by Lessee to Lessor under, or in connection with this Agreement, any Schedule or any other document in connection therewith is at the time made materially untrue or incorrect.

(b)   Lessee shall be in default under this Agreement upon the occurrence of any one of the following events (each, a "Total Event of Default", and together with each Limited Event of Default, each an "Event of Default"):

(1)   Lessee becomes insolvent or ceases to do business as a going concern;

(2)   Lessee makes a general assignment for the benefit of creditors, or consents to the appointment of a trustee or receiver, or either shall be appointed without Lessee's consent and such appointment is not vacated, stayed or nullified within sixty (60) days; or

(3)  any petition or proceeding is filed by or against Lessee under any Federal or State bankruptcy or insolvency code or similar law, and if such petition is involuntary, it is not dismissed, stayed or nullified within sixty (60) days after filing.

Such declaration of Total Event of Default shall apply to all Schedules except as specifically excepted by Lessor.

(c)  Any failure of either party to require strict performance by the other party or any waiver by either party of any provision in a Schedule or this Agreement shall not be construed as a consent or waiver of any other breach of the same or of any other provision.

## XII.  REMEDIES:

(a)  Upon (1) the occurrence of an Event of Default under Sections XI(a)(2) and (3) above and under Sections XI(b)(1)(2) and (3) above and as long as an Event of Default shall be continuing; or (2) the occurrence of an Event of Default under Section XI(a)(1) above which remains uncured for five (5) business days after Lessee has received written notice of the Event of Default from Lessor, Lessor may at its option do one or more of the following with respect to all or any part of the Equipment, in the case of a Total Event of Default, or only the affected Equipment, in the case of a Limited Event of Default, to the extent permitted by, and subject to compliance with any mandatory requirements of, applicable law then in effect:

(1) By notice terminate the lease of the Equipment or the affected Equipment as the case may be, whereon all of the rights of Lessee in the Equipment or the affected Equipment will absolutely cease but Lessee will remain liable as hereinafter provided. Upon the written demand of Lessor and at Lessee's expense cause Lessee to return promptly, and Lessee shall return promptly, all or any part of the Equipment (or affected Equipment) as the Lessor may demand in the manner and condition required by, and otherwise in accordance with Section X hereof, as if the Equipment were being returned at the end of the Term and Lessee shall pay the cost of returning the Equipment. Lessee shall, without further demand, forthwith pay to Lessor an amount equal to the Stipulated Loss Value of the Equipment or affected Equipment ; and/or

(2)  enter the premises, with or without legal process, where all or any part of the Equipment (or affected Equipment) is located and take immediate possession; and/or

(3)  sell the Equipment (or affected Equipment), upon fifteen (15) days' prior written notice to Lessee, at public or private sale, as Lessor may determine, or otherwise dispose of, hold, use, operate, lease to others, or keep idle the Equipment as Lessor, in its sole discretion, may determine, all free and clear of any rights of Lessee, except as hereinafter set forth in this Section XII. Lessor may sell the Equipment (or affected Equipment) without having such Equipment present at place of sale, and Lessor may make reasonable use of Lessee's premises for up to thirty (30) days for the purpose of displaying and selling the equipment at no expense to Lessor; and/or

(4)  in the event Lessor, pursuant to subparagraph (3) of this Section XII(a), shall have sold, released, or otherwise disposed of the Equipment (or affected Equipment), the proceeds of sale, lease, or other disposition, if any, shall be applied in the following order of priorities: (i) to pay all Lessor's reasonable costs, charges, and expenses incurred in taking, removing, holding, repairing, selling, leasing, or otherwise disposing of Equipment (or affected Equipment); then (ii) to the extent not previously paid by Lessee, to pay Lessor all sums due from Lessee hereunder; then (iii) to reimburse Lessee for any amounts previously paid to Lessor in connection with the affected Equipment subject to the Event of Default; and then (iv) any surplus shall be retained by Lessor (Lessee shall remain responsible for any deficiency in (i) and (ii) forthwith).

(b)  The foregoing remedies are cumulative and not exclusive of other remedies, and any or all thereof may be exercised in lieu of or in addition to each other or any remedies at law, in equity, or under statute. However, in the event that Lessee pays to Lessor the Stipulated Loss Value of the Equipment or Affected Equipment as called for by XII(1)(a) above, then Lessor shall be entitled to retain further proceeds from the Equipment or Affected Equipment

Computer Equipment (6/99)

- 6 -

equal only to Lessor's documented expenses relating to the Event of Default. Waiver of any Event of Default shall not be a waiver of any other or subsequent Event of Default.

(c) If any action on the part of Lessor hereunder shall result in the disturbance of Lessee's right of quiet enjoyment and which disturbance shall remain uncured for a period of fifteen (15) days after receipt of written notice from Lessee to Lessor, then Lessee shall have the right to recover damages from Lessor arising therefrom including all reasonable and necessary expenses, including reasonable legal fees.

### XIII. ASSIGNMENT AND SUBLEASE:

(a) Lessor may, without the consent of Lessee, sell, transfer, assign, pledge or grant a security interest in and to all or part of its rights and benefits under this Agreement or any Schedule. Lessee agrees that if Lessee receives written notice of an assignment from Lessor directing payment to another person, Lessee will pay all rent and all other amounts as and when payable under any assigned Equipment Schedule to such assignee or as instructed by Lessor. Lessee further agrees to confirm in writing receipt of the notice of assignment as may be reasonably requested by assignee. No sublease or other assignment by Lessor shall relieve Lessor of its obligations hereunder, and Lessee's confirmation of receipt of the notice of assignment shall not be construed as a release of Lessor from any of its obligations hereunder. Notwithstanding, anything to the contrary herein contained, an assignment by Lessor of any of its rights under this Agreement or any Schedule shall in no way diminish the absolute, and unconditional nature of Lessee's obligation with no right of set-off or abatement to make all rental payments and other sums due hereunder. Lessee waives and will not assert against Lessor's assignee or any subsequent assignee any claim or defense which Lessee may have against the Lessor or any other party pertaining to a Lease and/or the Equipment or Financed Items.

(b) Lessee may, without Lessor's consent, sublease any or all of the Equipment, or any part thereof, or permit their use by, any person or entity, but in all cases only upon and subject to all the terms and conditions of this Lease. No such sublease or other assignment of use by Lessee shall relieve Lessee of its obligations hereunder. In addition, if any business or unit of Lessee using any Equipment is sold or otherwise divested (the "Divested Entity"), Lessee shall have the unqualified right to sell, assign, pledge, transfer or otherwise convey all or any part of its interest in such Equipment, this Agreement or the relevant Schedule, in whole or in part, to any Divested Entity, without prior notice to, or consent of, Lessor. Except as provided in this Section XIII(b), Lessee may not assign, transfer or otherwise dispose of this Agreement, any Lease, any Equipment or any interest therein, without the written consent of Lessor. However, notwithstanding anything to the contrary contained in this Section XIII (b), if the credit rating of the Divested Entity (or the purchaser thereof) is less than that of Lessee (as determined by (a) an accredited rating agency if the Divested Entity is a publicly held entity or (b) Lessor if the Divested Entity is a privately held entity), then Lessee shall remain liable for the performance of all of the obligations of Lessee contained herein.

(c) Subject to the foregoing, the terms and provisions of this Agreement shall be binding upon and inure to the benefit of Lessor and Lessee and their respective successors and permitted assigns. However, except for assignees which are specifically allowed hereunder, there shall be no third party beneficiaries of this Agreement.

### XIV. INDEMNIFICATION:

(a) Lessee and Lessor hereby agree to indemnify, save and keep harmless the other, the other's agents, employees, successors, and assigns from and against any and all losses, damages, penalties, injuries, claims, actions and suits, including reasonable legal expenses, of whatsoever kind and nature, in contract or tort ("Losses"), arising during the Term of this Agreement out of the breach (as defined in subsections (b) and (c) below) by the Lessor or Lessee, respectively, of any part of this Agreement. However, to the extent that any Losses arising during the Term of this Agreement out of the breach by the Lessor or Lessee, respectively, of any part of this Agreement are caused by negligence or malfeasance of the indemnified party, there shall be no indemnification under the first sentence of this subsection.

(b) Lessee hereby agrees to indemnify and hold harmless Lessor, its agents, employees, successors, and assigns against any and all Losses arising during the Term of this Agreement, out of selection, acceptance, or rejection of Equipment, and the delivery, possession, maintenance, uses, condition, return, or operation of Equipment (including, without limitation, latent and other defects, whether or not discoverable by Lessor or Lessee and any claim for environmental damage).

Computer Equipment (6/99)

(c)     Lessor agrees to indemnify and hold harmless Lessee from and against any and all Losses arising out of or related to Lessor's negligence, misconduct or breach of its obligations hereunder. Lessee or Lessor, respectively, shall, upon request, defend any third-party actions giving rise to any of the aforementioned indemnifications, provided that the indemnitor is permitted to control the defense of such actions and the indemnitee cooperates fully (at the indemnitor's expense) in such defense.

(d)     Each Schedule is entered into on the assumption that Lessor is the owner of the Equipment for tax purposes and is entitled to certain federal and state tax benefits available to an owner of the Equipment (collectively, "Tax Benefits"), including without limitation, accelerated cost recovery system deductions for 5-year property and deductions for interest incurred by Lessor to finance the purchase of the Equipment available under the Internal Revenue Code of 1986, as amended. Lessee represents, warrants and covenants to Lessor that (i) Lessee is not a tax-exempt entity (as defined in Section 168(h) of the Code), (ii) all Equipment will be used solely within the United States, and (iii) Lessee will take no position inconsistent with the assumption that Lessor is the owner of the Equipment for federal and state tax purposes.

(e)     Notwithstanding any other provisions in this document, if as a result of a breach of any representation, warranty, and covenant of the Lessee contained in Section XIV(b) of this Agreement, (i) Lessor is not entitled to claim on its federal income tax return all or any portion of the Tax Benefits with respect to any Equipment, or (ii) any such Tax Benefit claimed on the federal income tax return of Lessor is disallowed or adjusted by the Internal Revenue Service, or (iii) any such Tax Benefit is recomputed or recaptured (any such determination, disallowance, adjustment, recomputation, or recapture being hereinafter called a "Loss"), then to the extent of any such breach Lessee shall pay to Lessor, as additional rental payments, such amount as shall cause the Lessor's net after-tax return on investment to equal the net after-tax return on investment (assuming an effective tax rate of thirty-five percent (35%)) that would have been realized by the Lessor if such Loss had not occurred, computed in all cases using the same assumptions utilized in originally evaluating the transaction. Such amount shall be payable within thirty (30) days after the Lessor has notified the Lessee in writing that such a Loss has occurred, including a written statement describing in reasonable detail such Loss and the computation thereof. However, Lessee shall have no liability in connection with the matters discussed within this Section XIV and this Agreement shall continue in full force and effect if there are any changes in the tax law or by reason of any other fact, matter or circumstance other than a breach by Lessee of Section XIV(b).

## XV.    DISCLAIMER; WARRANTY RIGHTS:

(a)     LESSEE ACKNOWLEDGES THAT IT HAS SELECTED THE EQUIPMENT WITHOUT ANY ASSISTANCE FROM LESSOR, ITS AGENTS OR EMPLOYEES. EXCEPT FOR LESSOR'S WARRANTIES AS TO ABSENCE OF CLAIMS ARISING THROUGH LESSOR UNDER SECTION XVII AND OF QUIET ENJOYMENT, LESSOR DOES NOT MAKE, HAS NOT MADE, NOR SHALL BE DEEMED TO MAKE OR HAVE MADE, ANY WARRANTY OR REPRESENTATION, EITHER EXPRESS OR IMPLIED, WRITTEN OR ORAL, WITH RESPECT TO THE EQUIPMENT OR ANY FINANCED ITEM, INCLUDING, BUT NOT LIMITED TO ANY WARRANTY AS TO DESIGN, COMPLIANCE WITH SPECIFICATIONS, QUALITY OF MATERIALS OR WORKMANSHIP, MERCHANTABILITY, FITNESS FOR ANY PURPOSE, USE OR OPERATION, SAFETY, PATENT, TRADEMARK OR COPYRIGHT INFRINGEMENT, OR TITLE. All such risks, as between Lessor and Lessee, are to be borne by Lessee. Except for liability arising out of Lessor's negligence or malfeasance, Lessor shall have no responsibility or liability to Lessee or any other person with respect to any of the following: (i) any liability, loss, or damage caused or alleged to be caused directly or indirectly by any Equipment, any inadequacy thereof, any deficiency or defect (latent or otherwise) therein, or any other circumstance in connection therewith; (ii) the use, operation, or performance of any Equipment or any risks relating thereto; (iii) any interruption of service, loss of business or anticipated profits, or consequential damages; or (iv) the delivery, operation, servicing, maintenance, repair, improvement, or replacement of any Equipment.

(b)     Provided no Event of Default has occurred or is continuing and has not been cured within the applicable cure period, for the Term of the applicable Schedule, Lessor hereby assigns and passes through to Lessee, to the extent permitted under the terms thereof, all applicable warranties made available by any Supplier and all rights against any Supplier, including without limitation all the rights Lessor may have to be defended by any Supplier under any patent and copyright provisions in the purchase agreement relating to the Equipment. Lessee shall be, and hereby

Computer Equipment (6/99)

is, irrevocably authorized to assert and enforce, at Lessee's sole cost and expense, from time to time, in the name of and for the account of Lessee or Lessor, whatever claims and rights Lessor may have against any Supplier.

## XVI. REPRESENTATIONS AND WARRANTIES OF LESSEE:

Lessee hereby represents and warrants to Lessor that on the date hereof and on the date of execution of each Schedule:

(a) Lessee has adequate power and capacity to enter into, and perform under, this Agreement and all related documents (together, the "Documents") and is duly qualified to do business wherever necessary to carry on its present business operations, including the jurisdiction(s) where the Equipment is or is to be located.

(b) The Documents have been duly authorized, executed, and delivered by Lessee and constitute valid, legal, and binding agreements, enforceable in accordance with their terms, except to the extent that the enforcement of remedies therein provided may be limited under applicable bankruptcy and insolvency laws.

(c) No approval, consent, or withholding of objections is required from any governmental authority or instrumentality or any other person or entity with respect to the entry into or performance by Lessee of the Documents except such as have already been obtained.

(d) There is no action, suit or proceeding pending or, to the knowledge of Lessee, threatened in any court or tribunal or before any competent authority against Lessee or any of its property or assets which challenges any documents or any of the transactions contemplated hereunder or which may have a material adverse effect on the financial condition or business of Lessee.

(e) Any financial statements and other information furnished and to be furnished to Lessor are and shall be true and correct in all material respects.

## XVII. REPRESENTATIONS, WARRANTIES AND COVENANTS OF LESSOR:

(a) Lessor has adequate power and capacity to enter into, and perform under, this Agreement and all related documents (together, the "Documents") and is duly qualified to do business wherever necessary to carry on its present business operations.

(b) The Documents have been duly authorized, executed, and delivered by Lessor and constitute valid, legal, and binding agreements, enforceable in accordance with their terms, except to the extent that the enforcement of remedies therein provided may be limited under applicable bankruptcy and insolvency laws.

(c) No approval, consent, or withholding of objections is required from any governmental authority or instrumentality or any other person or entity with respect to the entry into or performance by Lessor of the Documents except such as have already been obtained.

(d) Lessor covenants that it will not directly or indirectly create, incur, assume, or suffer to exist any lien or any claim (relating to title or otherwise) attributable to it on or relating to the Equipment, except as specifically permitted herein.

(e) Lessor covenants that it will not interfere in or knowingly permit any third party, through its own actions or inactions, to interfere in Lessee's quiet enjoyment of the Equipment during the applicable lease term so long as no Event of Default has occurred and has not been cured within the applicable cure period.

## XVIII. LESSEE'S END-OF-TERM OPTIONS:

(a) Between one hundred and eighty (180) days and one hundred and twenty (120) days before the end of the initial Term, Lessor shall give Lessee written notice (an "End-of-Term Notice") of the end of the initial Term as to such Schedule. Within sixty (60) days after receiving an End-of-Term Notice, or at least thirty (30) days prior to

Computer Equipment (6/99)

any subsequent Rent payment date, if any, which occurs after the end of the initial Term, provided no Event of Default has occurred or is continuing without being cured within the applicable cure period, Lessee may choose any of the following options:

(1)     **Purchase Option.** Lessee may elect, by delivering a written notice to Lessor (a "Purchase Notice") expressing Licensee's intention to purchase any or all of the Equipment then subject to such Schedule (other than items of software that may not be sold by Lessor under the terms of any applicable License Agreement, which restricted software shall not include system software pre-loaded on a piece of Equipment) for an amount equal to the Fair Market Value of such Equipment (as defined below under Section XVIII(c)). In the event of such an election, Lessee shall pay such amount and all applicable taxes to Lessor, in immediately available funds, on or before the end of the then applicable Term ("Termination Date"), unless the parties cannot agree on the Fair Market Value of the Equipment by the Termination Date. When Lessee pays the applicable purchase price and all applicable taxes, and on the Termination Date, (i) the Schedule with respect to such Equipment shall terminate and Lessee shall be relieved of all of its obligations in favor of Lessor with respect to such Equipment (except for monetary obligations arising or attributable to a time prior to the Termination Date which Lessee has not already paid), and (ii) Lessor shall transfer, by execution and delivery of a bill of sale satisfactory to Lessee, all of its interest in such Equipment to Lessee "AS IS, WHERE IS," without any warranty, express or implied, from Lessor, other than the absence of any liens or claims by or through Lessor. In the event Lessor and Lessee are unable to agree on the Fair Market Value of any piece of Equipment, within thirty (30) days after Lessee's Purchase Notice is delivered to Lessor, such value shall be determined, within thirty (30) days thereafter by an independent appraiser mutually selected by Lessor and Lessee, or failing such agreement, by a panel of three (3) such appraisers, one selected by Lessor, one selected by Lessee and a third selected by the first two appraisers. The determination of the Fair Market Value of the joint independent appraiser or the panel of three (3) appraisers shall be conclusive. If the three appraisers can not agree on a Fair Market Value, then the mean average between the three appraisals will be the Fair Market Value. The cost of any such appraisal shall be borne equally by Lessor and Lessee.

(2)     **Renewal Option.** Lessee may elect, by delivering a written notice to Lessor (a "Renewal Notice") expressing Lessee's intention to renew the Schedule with respect to any or all of the Equipment then subject to such Schedule (other than items of Software that may not be re-released by Lessor under the terms of any applicable License Agreement). In the event of such an election, Lessee shall enter into a mutually agreeable renewal agreement with Lessor ("Renewal Agreement") on or before the Termination Date confirming the Equipment as to which the Schedule is to be renewed, the period for which the Schedule is to be renewed (the "Renewal Term"), and the amount of Rent and the times at which such Rent is to be payable during the Renewal Term. The Rent for the Renewal Term with respect to any or all Equipment shall be the Fair Market Rent for the Equipment, as negotiated by Lessor and Lessee. In the event Lessor and Lessee are unable to agree on the Fair Market Rent of any piece of Equipment, within thirty (30) days after Lessee's Renewal Notice is delivered to Lessor, such value shall be determined, within thirty days (30) days thereafter by an independent appraiser mutually selected by Lessor and Lessee, or failing such agreement, by a panel of three (3) such appraisers, one selected by Lessor, one selected by Lessee and a third selected by the first two appraisers. The determination of the Fair Market Rent of the joint independent appraiser or the panel of three (3) appraisers shall be conclusive. If the three appraisers can not agree on a Fair Market Rent, then the mean average between the three appraisals will be the Fair Market Rent. The cost of any such appraisal shall be borne equally by Lessor and Lessee.

(3)     **Return.** Lessee may elect, by delivering a written notice to Lessor (a "Termination Notice") expressing Lessee's intention to terminate a Schedule and return any or all of the Equipment then subject to such Schedule at the then applicable end of Term date in accordance with this Agreement. If any of the Equipment is not returned, Lessee shall pay the amounts described in Section VII above.

(b)     If a Last Termination Date is specified in any Schedule, the lease of Equipment pursuant to such Schedule may not extend past such date.

(c)     "Fair Market Value" shall mean the retail price which a willing buyer (who is not a lessee in possession) would pay for the Equipment in an arm's-length transaction to a willing seller under no compulsion to sell; provided, however, that in such determination: (i) the Equipment shall be assumed to be in the condition in which it is required to be maintained and returned under this Agreement; (ii) in the case of any installed Equipment, that

Computer Equipment (6/99)

- 10 -

Equipment shall be valued on an installed basis; and (iii) costs of removal from current location and transportation to a new location shall not be a deduction from such valuation.

(d) In the event that either Lessee or Lessor fails to timely deliver an End-of-Term Notice to the other party as required hereunder, the First Termination Date on the Schedule which relates to the missed End-of-Term Notice shall be deemed to be automatically extended for successive one-month periods, and the Rent due thereunder shall be equal to the monthly rent due under the initial term of the Schedule.

### XIX. MISCELLANEOUS:

(a) LESSEE AND LESSOR HEREBY UNCONDITIONALLY WAIVE THEIR RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF, DIRECTLY OR INDIRECTLY, THIS AGREEMENT, ANY OF THE RELATED DOCUMENTS, ANY DEALINGS BETWEEN LESSEE AND LESSOR RELATING TO THE SUBJECT MATTER OF THIS TRANSACTION OR ANY RELATED TRANSACTIONS, AND/OR THE RELATIONSHIP THAT IS BEING ESTABLISHED BETWEEN LESSEE AND LESSOR. THE SCOPE OF THIS WAIVER IS INTENDED TO BE ALL ENCOMPASSING OF ANY AND ALL DISPUTES THAT MAY BE FILED IN ANY COURT (INCLUDING, WITHOUT LIMITATION, CONTRACT CLAIMS, TORT CLAIMS, BREACH OF DUTY CLAIMS, AND ALL OTHER COMMON LAW AND STATUTORY CLAIMS). NOTWITHSTANDING ANY STATE OR FEDERAL LAW TO THE CONTRARY, LESSEE AND LESSOR AGREE THAT THIS WAIVER IS NOT UNILATERALLY REVOCABLE. THIS WAIVER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS, OR MODIFICATIONS TO THIS AGREEMENT, ANY RELATED DOCUMENTS, OR TO ANY OTHER DOCUMENTS OR AGREEMENTS RELATING TO THIS TRANSACTION OR ANY RELATED TRANSACTION. IN THE EVENT OF LITIGATION, THIS AGREEMENT MAY BE FILED AS A WRITTEN CONSENT TO A TRIAL BY THE COURT.

(b) Unless and until Lessee exercises its purchase rights under Section XVIII above, nothing contained herein shall give or convey to Lessee any right, title, or interest in and to any Equipment except as a lessee. All Equipment shall at all times remain personal property of Lessor regardless of the degree of its annexation to any real property and shall not by reason of any installation in, or affixation to, real or personal property become a part thereof.

(c) Time is of the essence of this Agreement. Lessor's failure at any time to require strict performance by Lessee of any of the provisions hereof shall not waive or diminish Lessor's right thereafter to demand strict compliance therewith. Lessee agrees, upon Lessor's request, to execute any instrument reasonably necessary for filing, recording, or perfecting the interest of Lessor. Lessee authorizes Lessor to electronically file (using Lessee's name as the debtor) any UCC financing statements that Lessor may deem necessary or file a copy of this Agreement or any Schedule in lieu of a financing statement. All notices will be in writing and will be deemed duly given when personally delivered, or sent by registered or certified mail, return receipt requested, by prepaid recognized overnight delivery service, or by facsimile confirmed by letter, to the other party at its address stated herein, or at such other place as such addressee may have designated in writing. This Agreement and any Schedule and Annexes thereto constitute the entire agreement of the parties with respect to the subject matter hereof. NO VARIATION OR MODIFICATION OF THIS AGREEMENT OR ANY WAIVER OF ANY OF ITS PROVISIONS OR CONDITIONS SHALL BE VALID UNLESS IN WRITING AND SIGNED BY AN AUTHORIZED REPRESENTATIVE OF THE PARTIES HERETO.

(d) In case of a failure of Lessee to comply with any provision of this Agreement, within thirty (30) days after written notice from Lessor as to the non-compliance, Lessor shall have the right, but shall not be obligated to, effect such compliance, in whole or in part; and all reasonable expenses and obligations incurred or assumed by Lessor in effecting such compliance shall constitute additional rent due to Lessor within five (5) days after the date Lessor sends notice to Lessee requesting payment. Lessor's effecting such compliance shall not be a waiver of Lessee's default.

(e) This Agreement shall be governed by and construed and enforced according to the laws of the State of Michigan, excluding any such laws which direct the application of laws of any other jurisdiction.

Computer Equipment (6/99)

(f)    This Agreement may be terminated by either party upon one month's prior written notice, provided that each lease Schedule then in effect shall remain subject to the terms and conditions of this Agreement until its respective expiration or termination.

(g)    To the full extent permitted by applicable law, Lessee hereby waives any and all rights and remedies conferred upon a lessee by article 2A of the applicable Uniform Commercial Code ("UCC"). As a precaution, in the event (and only to the extent) that a Schedule documented under this Agreement is determined to be other than a true lease under applicable law, Lessee hereby grants to Lessor a first priority security interest in and to the Equipment and Financed Items described therein together with all proceeds and products thereof.

IN WITNESS WHEREOF, Lessee and Lessor have caused this Agreement to be executed by their duly authorized representatives as of the date first above written.

**LESSOR:** SENTRY FINANCIAL CORPORATION

By: _Jonathan M. Ruga_
Name: _Jonathan M. Ruga_
Title: _CEO_

**LESSEE:** DELPHI AUTOMOTIVE SYSTEMS CORPORATION

By: _John Blaknik_
Name: _John Blaknik_
Title: _Treasurer_

G:\DOC_OTHE\Kh\Master Lease Review\Delphi\DELPHI-SFC Final 6-27-00.doc

Computer Equipment (6/99)

- 12 -

**Attachments**

Schedule
  Attachment A – Description of Equipment
  Attachment B – Purchase Order Assignment and Consent
  Attachment C – Table of Stipulated Loss Values

Annex E
Delphi Automotive Systems Corporation Affiliates

| ENTITY | DELPHI PERCENTAGE | Delphi % of Board |
|---|---|---|
| Delphi Automotive Systems LLC | 100% | 100% |
| Delphi Aftermarket Division | (division of LLC) | (division of LLC) |
| Delphi Energy and Chassis Systems Division | (division of LLC) | (division of LLC) |
| Delphi Harrison Thermal Systems Division | (division of LLC) | (division of LLC) |
| Delphi Interior & Lighting Systems Division | (division of LLC) | (division of LLC) |
| Delphi Packard Electric Systems Division | (division of LLC) | (division of LLC) |
| Delphi Saginaw Steering Systems Division | (division of LLC) | (division of LLC) |
| Delphi Automotive Systems (Holding), Inc. | 100% | 100% |
| Delphi Foreign Sales Corporation | 100% | 100% |
| Delco Electronics Corporation | 100% | 100% |
| Delphi Technologies, Inc. | 100% | 100% |
| Delphi Automotive Systems International, Inc. | 100% | 100% |
| Delphi Corporation | 100% | 100% |
| Exhaust Systems Corporation | 100% | 100% |
| AC Battery Corporation | 100% | 100% |
| Packard Hughes Interconnect Company | 100% | 100% |
| Packard Hughes Interconnect Wiring Systems | 100% | 100% |
| Packard Hughes Interconnect Engineering Services | 100% | 100% |
| Packard Hughes Interconnect Connection Systems | 100% | 100% |
| Environmental Catalysts, LLC | 100% | 100% |