Barbara S. Mehlsack
GORLICK KRAVITZ & LISTHAUS P.C.
17 State Street
New York, N.Y. 10004
(212) 269-2500

Attorney for Int'l Union of Operating Engineers
Locals 18S, 101S, and 832S ("IUOE").

Marianne Goldstein Robbins
PREVIANT, GOLBERG, UELMEN, GRATZ
MILLER & BRUEGGEMAN, s.c.
1555 N River Center Drive, Suite 202
Milwaukee, WI 53212
(414) 271-4500

Attorney for Int'l Brotherhood of Elec. Workers ("IBEW") and
Int'l Ass'n of Machinists & Aerospace Workers ("IAM")

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------

| | |
|---|---|
| In re | Chapter 11 |
| DPH HOLDINGS CORP., et al | Case No.   05-44481 (RDD) |
| | (Jointly Administered) |
| Reorganized Debtors. | |

--------------------------------------------------------

## UNIONS' BRIEF IN OPPOSITION TO DEBTORS' MOTION TO DISALLOW AND EXPUNGE
## PROOFS OF CLAIM FILED BY THE IAM, THE IBEW AND THE IUOE

1

The IAM, IBEW and IUOE ("the Unions") submit this Brief in response to the Reorganized Debtors' Brief Requesting Entry of an Order Disallowing and Expunging Proofs of Claim filed by the IAM, IBEW, and IUOE. ("Debtors' Brief"). As will be set forth in greater detail below, the Unions assert pension related claims arising under §301 of the Labor Management Relations Act ("LMRA") for breach of the parties' Memoranda of Understanding ("MOUs") and under §502 of the Employee Retirement Income Security Act ("ERISA") for breach of fiduciary duty and the Debtors have failed to state an adequate legal basis for expunging those claims.

## I
## PRELIMINARY STATEMENT

1.     Reorganized Debtors ("Debtors") propound the following legal arguments for expunging the Union's pension related claims: A) The Unions' §301 breach of contract claims are precluded by the Debtors' settlement with the PBGC and this Court's Plan Modification Order providing that the Debtors may enter into the Settlement Agreement without violating the terms of the MOUs;  B) The Unions' §301 claims are preempted under Title IV of ERISA by virtue of the PBGC's take-over of the Delphi HRP;  C) The Unions do not state a claim for breach of fiduciary duty for underfunding of the Delphi HRP on their proofs of claim and therefore have waived any such claims; D) The Unions' breach of fiduciary duty claims are waived because they are not explicitly provided for under the provisions of the MOUs and are in fact explicitly waived under the MOUs; E) The Unions' breach of fiduciary duty claims are precluded by the Plan Modification Order because the Plan Modification Order provides that the Debtors may enter into the Settlement Agreement "without violating the Labor MOUS ...or any

2

other applicable law" and any breach of fiduciary duty claim would come under the rubric of "any other applicable law;" F) In this District, unions have no standing under Section 502 of ERISA to bring claims against the Debtors for breach of fiduciary duty; G) Even if the Unions have standing, the obligation to make contributions to a pension plan is a settler function and not a fiduciary function under ERISA and therefore the Unions do not have a colorable claim for breach of fiduciary duty.

2.      As will be set forth below, none of these arguments provides an adequate legal basis for the Court to expunge the Unions' claims.[1]  It is respectfully submitted that the Court should find that, for the reasons set forth below, the Unions have stated colorable contractual and statutory claims against Debtors in connection with non-guaranteed benefits on behalf of those participants in the Delphi HRP who are represented by the Unions.

## II

## BACKGROUND

3.      On November 18, 2009, Debtors filed a Notice of Sufficiency Hearing with respect to Debtors' Objection to Proofs of Claim filed by Locals of the IUOE, the IAM, and the IBEW. On September 8, 2009, Debtors filed a Supplemental Reply in support of their objection to the Union' claims.

4.      On December 16, 2009, the Unions filed a Supplemental Response (Docket 19190) to which Debtors filed a Second Supplemental Reply on December 17, 2009. (Docket 191203). Thereafter, on December 18, 2009, the Court requested that the parties submit

---

[1] As set forth below, the Unions agree that all other non pension related claims covered by their Proofs of Claim are no longer in issue and have been withdrawn. The Debtors also assert that any claims against DAS LLC are duplicative and should be expunged against that entity in any event, and that the claims arising by virtue of the operation of §§1113 and 1114 should be expunged because the §§1113 and 1114 proceedings were resolved. These arguments are also addressed below.

3

additional briefing. Debtors filed their additional brief on February 5, 2010. The Unions' Brief is filed in accordance with the parties' briefing schedule. The briefing schedule was established to allow scheduling of oral argument on March 18, 2010, should the Court desire argument. [2]

5.      In the Unions' Supplemental Response filed December 16, 2009, the Unions referenced claims with respect to grievances asserted in their Proofs of Claim as well as claims arising from Debtors' failure to provide pension benefits in accordance with the parties' post-petition MOUs and for Debtors' breach of fiduciary duty under ERISA (hereinafter "pension related claims"). On December 18, 2009, the Court asked the parties to verify whether or not there were outstanding claims other than pension related claims which remained at issue. The Unions have reviewed grievance dispositions and can confirm that all grievances between the Debtors and the Unions have been resolved. In addition, the IUOE Local 101s claim in connection with the attrition program is no longer in issue and is withdrawn. Hence, the only claims in issue are the pension related claims, which are being asserted by each of the Unions in their capacity as a collective bargaining representative and in their associational capacity as a representative of participants of the Delphi HRP. The Unions do not assert any pension related claims on their own behalf.

### III

### ARGUMENT

**A.      UNION CLAIMS AGAINST DAS, LLC SHOULD NOT BE DISALLOWED AND EXPUNGED.**

6.      Without providing any substantive basis, Debtors assert that the Unions' claims against Delphi Automotive Systems, LLC ("DAS, LLC") should be disallowed and expunged,

---

[2] Should the Court wish oral argument, the IAM and IBEW request that the Court consider whether it would be possible for their counsel to participate by telephone in oral argument.

although this was not an issue that Debtors identified in their prior submissions or as an aspect of the Court's request for further briefing.

7.     In February of 2007, Debtors and the IAM, IBEW and IUOE, together with other unions, entered into a Stipulation which addressed a number of duplicative claims, but did not address the claims against DAS, LLC. The Stipulation was without prejudice to the Unions' rights against other Debtor entities and that such reasserted claims relate back to the original date of filing.

8.     Debtors have provided no facts which indicate that the Unions' claims are not properly asserted against any and all remaining Delphi entities. While the Unions can only receive the full amount to which they are entitled once, there is no reason that the Unions may not obtain partial recoveries from multiple Delphi entities.

9.     Any dismissal of the Unions' DAS, LLC claims should be without prejudice to the Unions' rights to reassert their claims against DAS, LLC as well as against other Debtor entities and to have such reasserted claims relate back to the original date of filing.

## B.     THE UNIONS' PROOFS OF CLAIMS PROPERLY ENCOMPASS ANY AND ALL PENSION RELATED CLAIMS WHICH THE UNIONS ASSERT ON BEHALF OF THEIR MEMBERS AND PLAN PARTICIPANTS.

10.     The Debtors assert that the Unions' unliquidated and contingent claims should be expunged because: 1) the §1113 and §1114 proceedings were resolved; and 2) the Unions' Proofs of Claim do not explicitly encompass breach of fiduciary duty claims. The Unions' Proofs of Claim were filed on July 29, 2006 and assert "unliquidated and contingent claims" without limitation. There is no obligation on the part of a claimant to specify all conceivable causes of action that are the basis for a proof of claim. To the extent that Debtors claim that any reference to Code §§1113 and 1114 in any one of the Proofs of Claim constitutes a limitation

5

upon the claims, the references expressly include claims arising from reduction in pension benefits "for any reason." For example, the claim of the IAM District 10 and Lodge 78 provide in relevant part;

> Any amounts owed under the collective bargaining agreement and supplemental agreements which are not paid in full but are reduced pursuant to §1113 of the Bankruptcy Code *or otherwise*, including future retiree benefits and *pension benefits* of active employees.

(emphasis added)

The same claim is made on behalf of IAM retirees. The IBEW and the IUOE also make contingent claims which encompass any future reduction in pension benefits, whatever the contingency which resulted in or results in the reduction.

11.     Subsequent to the filing of the Unions' Proofs of Claim and the termination of the Delphi HRP, former employees and retirees represented by the Unions have experienced substantial losses in pension benefits as a result of the PBGC termination and the Debtors' contractual and statutory breaches.  Indeed it is still not known to what extent future retirees will suffer reductions or the amount of those reductions.   Attached hereto as Exhibit A, by way of example only, is a PBGC notice to a retiree represented by one of the Unions, in this case the IBEW, who, prior to termination, received a benefit of $2,940.20 per month; the notice indicates that, starting March 1, 2010, his pension will be reduced to $1,595.99, a reduction of 46%.

**C.     THE MOUs DO NOT WAIVE OR RELEASE PENSION RELATED CLAIMS, INCLUDING CLAIMS FOR BREACH OF FIDUCIARY DUTY IN RELATION TO THE HOURLY PENSION PLAN AND ITS TERMINATION**

12.     As Debtors acknowledge, each Union's MOU specifically provides that claims for pension benefits are not waived by the settlement. Specifically: 1) Section E.2. of each of the Unions' MOUs (except for the IUOE Local S-101 MOU where the language is found in Section

6

D.2.) provides "there shall be no waiver of rights, if any, to vested pension benefit, worker's compensation benefits and unemployment compensation benefits;.[3]

13.    Debtors argue that claims for vested pension benefits are the only benefit claims "explicitly not waived." (Debtors' Brief p. 7). That is not the case. As the Debtors acknowledge, the MOUs and this Court's Order approving the MOUs specifically provide with respect to any releases effective by virtue of and on the date of the Delphi Reorganization Plan that "claims for benefits *provided for* or explicitly not waived under the provisions of the [MOUS]... are not waived. (Debtors' Brief citing Release provision, ¶9). (Emphasis supplied).

14.    In each of the MOUs, the Debtors agreed that the Delphi HRP when frozen would continue to pay benefits to current and future retirees at levels in effect on the date immediately preceding the Effective Date, including but not limited to any applicable supplements and benefit redeterminations, unless those benefits were reduced for other Delphi HRP participants.

15.    Specifically, the Unions' MOUs spell out at Section D. (2) (b) (1) - (5) (Section C (1) (b) of the IUOE Local 101s agreement) that: a) pension benefits "will not be reduced from levels in effect as of the date immediately preceding the Effective Date unless they are similarly reduced for other retired Delphi HRP participants," and b) with regard to Delphi's asserted right to seek termination of the HRP, that current and future retirees will receive all HRP benefits at the levels in effect immediately preceding the Effective Date. Subsection 5 begins with the phrase "For the avoidance of doubt" and states that all participants retiring on and after the Freeze Date will receive "the full amount" of their 30 and out benefits, including the "full Early

---

[3] While the Union claims do not address worker's compensation or unemployment compensation, individual Union members may have claims for such benefits which were separately filed and addressed.

Retirement Supplement in effect as of the date immediately preceding the Effective Date." The Court's Order approving the MOUs expressly provides that these sections of the MOUS survive the expiration date of the other provisions of the collective bargaining agreement.

16.    The Court's Order approving the MOUs also expressly provides that any Plan of Reorganization that is consistent with the MOUs and any confirmation order with respect to the Plan shall include the specific release provision that is referred to by both the Debtors and the Unions here, which release provision expressly exempts from its purview benefits expressly provided for under the terms of the MOUs.

17.    The Delphi HRP participants represented by the IAM, IBEW and IUOE are the only HRP participants who had unbroken seniority, were employed by GM immediately before the spin off and were not hired under competitive wage agreements that did not provide for them to grow into parity who have suffered or are at risk of suffering a reduction in non-guaranteed HRP benefits explicitly provided for by the terms of the MOUs.  As a result, Delphi is in breach of its promise under the MOU that those participants' benefits would be maintained at the levels in effect prior to the Effective Date of the MOUs unless similarly reduced for other HRP Plan Participants.

18.    The Unions' Proofs of Claims encompass contingent and unliquidated claims for the present value of any reductions in benefits suffered by the participants they represent below the level of benefits promised in the MOUs. They are claims that may be asserted under LMRA §301(a), 29 U.S.C. §186(a), for breach of a collective bargaining agreement between an employer and a union.

19.    It is these claims that the Debtors contend have been wiped out by its Settlement Agreement with the PBGC and/or are preempted by Title IV of ERISA.  As will be set forth in more detail below, neither is the case.

**D.    NEITHER THE PBGC SETTLEMENT AGREEMENT NOR THE COURT ORDER APPROVING THE AGREEMENT PROVIDES A BASIS FOR EXPUNGING THE UNIONS' CONTRACTUALLY BASED CLAIMS.**

20.    The Debtors argue that the Court's approval of the PBGC Settlement Agreement precludes the Unions from bringing claims for unpaid contributions.  Specifically, Debtors rely on ¶ 60, which provides in relevant part "all liabilities relating to unpaid contributions to the Pension Plans shall be released or discharged as set forth herein."  (Plan Modification Order, ¶ 60).  Debtors argue that this language means that the Unions are not entitled to bring claims for unpaid contributions to the HRP because these claims have been settled, released and discharged.  The Unions' claims are not claims for unpaid contributions to the HRP.  They are claims under the MOUs for breach of the MOUs on behalf of those plan participants who have had their benefits reduced or will have their benefits reduced below the levels promised in the MOUs, albeit other plan participants are not suffering similar reductions.

21.    Thus, nothing in the Court's approval of the PBGC Settlement Agreement states or implies that the Settlement Agreement effects a release of the Debtors' obligations under the MOUs, nor could it, as the MOUs themselves expressly provide that the release effected on the effective date of the POR shall exclude any benefits provided for under the terms of the MOUs.

22.    Defendants cannot point to any provision of the Settlement Agreement that effects a release of the Unions' claims against the Debtors for breach of the MOUs.  Defendants argue that the finding of the Plan Modification Order that the Debtors may enter into the PBGC

9

Settlement Agreement releasing them from liability for unpaid contributions without violating the terms of the MOUs means that they are released from liability for the specific breaches of the MOUs asserted by the Unions on behalf of a group of affected participants. Defendants point to no language in the Court's Order other than that referenced above with respect to the Debtors' contribution obligations to the Plan itself. The Unions do not seek contributions to the Plan *per se*. To the extent their claims are contractually based they seek damages on behalf of the participants they represent for losses suffered by them as compared to similarly situated plan participants. To the extent their claims are ERISA based (as discussed below) they also do not seek contributions to the plan *per se* but a declaration that the participants are entitled to disgorgement of the amounts necessary to assure equal benefit levels to all similarly situated participants.

**F.  CASE LAW IN THIS CIRCUIT DOES NOT SUPPORT THE DEBTORS' ARGUMENT THAT TITLE IV OF ERISA PREEMPTS THE UNIONS' CONTRACTUALLY BASED CLAIMS FOR LOSS OF PENSION BENEFITS AND THE RATIONALE OF THE <u>UNITED ENGINEERING</u> DECISION DOES NOT APPLY UNDER THE CIRCUMSTANCES OF THIS CASE.**

23.  Debtors also argue that because the HRP has been terminated by the PBGC, Title IV of ERISA preempts the Unions' §301 claims, as the PBGC has the exclusive right to assert claims against the Debtors in connection with the payment of non-guaranteed benefits. Debtors cite to no law in this Circuit in support of their proposition, but rely upon a single case from the Sixth Circuit and two district court cases from outside the Circuit.

24.  Debtors rely upon the decision of the Sixth Circuit in <u>USW v. United Engineering</u>, 52 F.3d 1386 (6th Cir. 1995) in which that Court held that 1986 and 1987 amendments to Title IV of ERISA preempt unions' causes of action for breach of contract for non-guaranteed benefits arising under LMRA §301. Prior to the amendments, courts in the Sixth

10

Circuit and this Circuit had historically found that plan participants and the unions which represent them could recover for loss of pension benefits notwithstanding the PBGC's role under ERISA in terminating distressed pension plans. Murphy v. Heppenstall Co., 635 F.2d 233 (2nd Cir. 1980) *cert denied* 454 U.S. 1142 (1982) See also Haytcher v. ABS Industries, Inc., 889 F.2d 64 (6th Cir. 1989); United Steelworkers of America v. North Bend Terminal Co., 752 F.2d 256 (6th Cir. 1985).

25.     The present case has many parallels to In re M&M Transportation Co., 3 BR 722 (S.D.N.Y. 1980). In that case, a pension plan was terminated by agreement with the PBGC which left employees without non-guaranteed pension benefits. The employer argued that it had met its obligation by agreeing to pay the PBGC's claim, notwithstanding outstanding non-guaranteed benefits. The District Court, reversing the Bankruptcy Court, rejected the employer's argument, noting that "Congress did not intend to render prior law irrelevant where it fairly accommodates the interest of the parties and is not inconsistent with ERISA's purposes" (citing Shaw v. Kruidenier, 470 F. Supp. 1375, 1382, (S.D.IA. 1979).

26.     In M &M Transportation, *supra*, the Court went on to note that the provisions of ERISA which address employer liability to the PBGC did not terminate the employer's obligation to its employees. The Court explained:

> [Section 4062 of ERISA, 29 U.S.C. §1362(b)} speaks only in terms of employer liability to the PBGC; it certainly does not provide that an employer is absolved of its obligations to his employees once he meets his obligations to the PBGC." It should also be noted that §502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B), which is part of Title I, provides that "[a] civil action may be brought by a participant or beneficiary....to recover benefits due him under the terms of his Plan, to enforce his rights under the terms of his Plan, or to clarify his rights to future benefits under the terms of the Plan." There is nothing in ERISA which would indicate that this right to bring civil action is cut off by operation of §4062.

11

The District Court concluded;

> Had Congress considered the question now, before the Court, it undoubtedly
> would have concluded that Title IV of ERISA cannot be used to preclude
> employees from seeking anticipated pension benefits from an employer who has
> fulfilled his limited obligations to the PBGC.

As a result, the Court found that an employer may be liable to his former employees for benefits

due under a terminated Pension Plan even though the employer has met its obligations to the

PBGC.

27. In PBGC v. LTV Corporation, 824 F. 2d 197, 202 (2d. Cir. 1987) (also antedating

the 1986 and 1987 amendments), the Second Circuit, in addressing certain due process

arguments made by the Steel Workers Union in connection with a PBGC plan termination on

consent, expressly referenced the rights of the participants to file claims in Bankruptcy Court for

the Debtor's failure to maintain the plan as one of the grounds for the Court's refusal to impose a

due process requirement for prior notice and a hearing before a plan sponsor and the PBGC may

agree to terminate a plan.

28. It is thus clear that prior to the 1987 amendments, the law in this Circuit was that

participants and unions retained the right to file a contractual §301 claim for non-guaranteed

benefits, notwithstanding the PBGC's termination of a plan. The Debtor has cited to no case in

this Circuit that supports the Sixth Circuit's reading of the effect of the 1986-1987 amendments

to Title IV of ERISA upon a Union's right to file claims for unpaid benefits arising under its

agreements with a Debtor.

29. The United Engineering Court reasoned that courts had allowed §301 suits for

non-guaranteed benefits to fill the gap created by the fact that Title IV did not previously address

the payment of non-guaranteed benefits. The Court went on to say that, once Congress had

12

addressed the issue, the reasons for the judge-made creation of a §301 cause of action ceased to exist. The Court acknowledged however that "the plain language of the ERISA amendments does not explicitly declare whether direct suits against planned sponsors are prohibited."

30. Moreover, in a subsequent unreported decision by the Sixth Circuit, Local 1654 IBEW v. L.G. Philips Display Components Company, 137 Fed. Appx 776 (6th Cir. 2005), a copy of which is annexed hereto as Exhibit B, the Court viewed United Engineering, as having been decided on the "narrow grounds" that the Title IV amendments were intended to enable an employer to work out its liability for non-guaranteed benefits with the PBGC without regard to its pre-exisitng obligations to participants. The Court also noted that because a Union would not have standing to make a claim in its own right under ERISA, a Union's claims to enforce employee benefits arising under a collective bargaining agreement in a non Title IV context may still be brought under §301.

31. It is respectfully submitted that the rationale for the United Engineering holding is not applicable to the Unions' claims under the circumstances of this case. In United Engineering, the assumption was that any payment of non-guaranteed benefits would operate only through the PBGC priority scheme set out in 29 U.S.C. §1344(a) and that to permit an action under §301 would disturb the statutory scheme. Here, it is clear that the statutory scheme has already been upended, and the PBGC has entered an agreement with Delphi, old GM and new GMC which explicitly assumes side agreements regarding non-guaranteed benefits. If this were not the case, Exhibit B to the Delphi-PBGC Settlement Agreement would not include references to the GM-UAW Benefit Guarantee or similar agreements and an agreement not to release cross claims arising from those Benefit Guarantees. Moreover, the claims in this case also encompass the Debtors' pre-termination decisions to transfer benefits and liabilities to the

13

GM HRP, which are actions that would not be encompassed by the United Engineering rationale because they antedated the termination.

32.    Additionally, the Delphi-PBGC Settlement Agreement does not contemplate that the PBGC will pursue non-guaranteed as well as guaranteed benefits. The preamble to the Settlement Agreement acknowledges that the allowed claim to the PBGC of $3 billion is less than half the actual claim of $7 billion. Page 4 of the Delphi-PBGC Agreement states;

> Whereas...the PBGC would have been entitled to a general unsecured claim in the approximate amount of $7 billion, plus the potential of additional recovery, depending on the outcome of litigation that would have ensued related to the contingent PBGC adequate protection liens.

The allowed pre-petitioned general unsecured claim provided by the Settlement Agreement is "in the aggregate amount of $3.0 billion." That amount in accordance with the agreement satisfies all obligations of the Delphi Group under Title IV of ERISA...and "all liens asserted and/or assertable by the PBGC against the Delphi Group."

33.    The Delphi-PBGC Settlement Agreement does not contemplate that the PBGC will be the sole source of payment of non-guaranteed benefits. It expressly contemplates private contractual arrangements regarding the payment of non-guaranteed benefits. Hence, the rationale of the Sixth Circuit for why Title IV renders §301 suits superfluous does not apply. Instead, the reasoning of M & M Transportation, 3 BR 722 (S.D.N.Y. 1980) and PBGC v. LTV supra is applicable and the Unions should be allowed to pursue their claim for breach of the MOUs by reason of the fact that the participants represented by the Unions have not been afforded the equal treatment promised by Debtors in the MOUs.

F.   **THE PBGC SETTLEMENT AGREEMENT EXPRESSLY EXCLUDES FROM ITS PURVIEW FIDUCIARY DUTY CLAIMS AND THE UNION HAS STANDING IN ITS ASSOCIATIONAL CAPACITY TO ASSERT PARTICIPANTS' CLAIMS AGAINST DEBTORS FOR BREACH OF FIDUCIARY DUTY ARISING UNDER ERISA SECTION 502 (a) (3).**

34.   The Debtors arguments as to why the Unions' may not assert claims for breach of fiduciary duty do not provide an adequate basis for expunging the claims.

35.   In the first instance, Debtors claim that because the Plan Modification Order authorized the Debtors to enter into the Settlement Agreement "without violating the Labor MOUS , ... Section 1113(f) of the Code or any other applicable law" the phrase "any other applicable law" is a catch-all that encompasses any allegation of breach of fiduciary duty. The argument is completely unsupportable, as the Settlement Agreement itself expressly excludes from the purview of its broadly worded releases breach of fiduciary duty claims against any person or entity. The Settlement Agreement expressly provides at Paragraph 2(b) that "... nothing in this Agreement will ... (ii) release or discharge any person or entity from liability arising as a result of such person's breach of fiduciary duty under ERISA."

36.   Debtors also contend that the Unions' claims for benefits on behalf of the participants they represent, to the extent that they arise under ERISA, are preempted by Title IV of ERISA under the rationale of United Engineering. Debtors are clearly wrong. United Engineering did not address breach of fiduciary duty claims arising under Title I of ERISA. Moreover, courts that have considered this issue have held that Title IV of ERISA does not preempt breach of fiduciary duty claims arising under Title I of ERISA. See Wilmington Shipping Company v. New England Life Insurance Co., 496 F.3d 326, 339 (4th Cir. 2007; Harpster v. AARQUE Management Corp. 2005 U.S. Dist. LEXIS 30811 (N.D. Ohio 2005).

15

While the <u>Wilmington</u> Court considered claims arising under §502 (a) (2) of ERISA, the Court's rationale applies equally to the claims asserted here, which arise under §502 (a) (3).

37. Debtors contend that under the case law in this Circuit, the Unions lack standing to assert the breach of fiduciary duty claims because they are not participants, beneficiaries or fiduciaries. Unions respectfully submit that the cases cited by Debtors do not address the issue of the Unions' standing to assert representative claims on behalf of participants in the plan for equitable relief under §502 (a) (3) 0f ERISA and that at least one court in this district  has expressly recognized the right of associations (including unions) to assert ERISA claims on behalf of their members, where the members themselves have standing to assert the claims and the claims otherwise meet the standards set by the Supreme Court for associational claims.   In <u>AMA v. United Health Care Corporation</u>, 2002 U.S. Dist LEXIS 20309 ( S.D.N.Y. 2002), the District Court for the Southern District of New York held that the AMA had standing to assert claims for equitable relief under *inter alia*  Section 502 (a) (3) of ERISA on behalf of its provider members who had been assigned claims by plan participants. The Court held that the AMA met the test articulated by the Supreme Court in <u>Hunt  v. Washington State Apple Adver. Comm'n</u> 432 U. S. 333, 97 S. Ct. 24534 (1977) that:  a) the members would have standing to sue in their own right; b) the interests the association seeks to protect are germane to the organization's purpose; and c) neither the claim asserted nor the relief requested require the participation of the individual members in the lawsuit.  Subsequently the same Court permitted various Unions to intervene on behalf of their members on the same representational basis. <u>AMA v. United Health Care</u>, 2003 U.S. Dist LEXIS 1398 (S.D.N.Y. 2003).

38. It is respectfully submitted that, at this stage of the proceeding, in which the issue before this Court is whether or not plan participants can state a colorable claim for breach of

16

fiduciary duty by virtue of the different treatment being afforded similarly situated participants with respect to non-guaranteed benefits, the Unions have standing in their representational capacity to assert the participants' claims because: a) the participants themselves would have standing to assert claims under ERISA § 502(a)(3), as they have suffered an injury in fact; b) the interests the Unions seek to protect are clearly germane to their purpose as labor organizations in protecting their members economic welfare and security; and c) at this stage of the proceeding it is not necessary for the individual members to participate in order for the Unions to assert the representational claims, as the claims do not arise out of the individualized facts particular to each participant but out of the conduct of the Debtors acting in concert with others to treat participants represented by Unions as a group differently than other groups of similarly situated plan participants. Where, as here, the Unions are not seeking anything for themselves, the Unions have standing to sue. See also Penn. Federation Brotherhood of Maintenance & Way Employees v. Norfolk Southern Corp., 2004 U.S. Dist. LEXIS 1987 * 26 (E.D. PA 2004) citing Southern Illinois Carpenters Welfare Fund v. Carpenters Welfare Fund of Illinois, 326 F. 3d 919, 922 (7th Cir. 2003).

39.     Finally, Debtors claim that Unions may not maintain their claims because Debtors are not fiduciaries with respect to their funding obligations. Unions do not assert these claims merely or primarily because Debtors did not adequately fund the HRP but because, having failed to adequately fund the HRP so that all promised benefits are not being paid to all similarly situated plan participants, the Debtors have entered into arrangements with other entities that have resulted in some participants' being treated more advantageously than others whether because assets and liabilities have been transferred to another plan only on behalf of a select

group of plan participants or because financial arrangements have been made to ensure the payment of the non-guaranteed benefits of those other participants.

40.    The issue is the Debtors' discretionary decisions both prior to and with respect to the implementation of the plan termination and their consequences, in which the Debtors were to be guided by their fiduciary obligations to act in the exclusive interests of plan participants and with the prudence, skill and diligence required of fiduciaries by the statute. Decisions made by an employer exercising discretionary authority affecting the assets of a pension plan are fiduciary decisions subject to the exclusive benefit and prudent person requirements of the statute. Donovan v. Bierwirth, 680 F. 2d 263, 271 (2d. Cir. 1982). For example, the Debtors' decisions regarding the transfers of some but not all participants from the Delphi HRP to the GM HRP were unquestionably discretionary decisions regarding the disposition of plan assets and liabilities, subject to their duty to act in the exclusive interest of all plan participants. Decisions made by a fiduciary in the context of implementing a plan termination that affect the disposition of plan assets upon termination are also subject to ERISA's fiduciary standards. See e.g. Solis v. Current Development Corporation, 557 F. 3d 772 (7th Cir. 2009); District 65 UAW v. Harper & Row Publishers, Inc. 670 F. Supp 550,556 (S.D. N.Y. 1987).

CONCLUSION

The Unions respectfully submit that Debtors have failed to demonstrate that the Unions' claims on behalf of plan participants whom they represent may not be maintained under both LMRA §301 and ERISA §502 (a) (3). The Debtors are not entitled to an order expunging the claims.

Dated this 5th day of March, 2010.

s/Marianne Goldstein Robbins

18

Marianne Goldstein Robbins
PREVIANT, GOLBERG, UELMEN, GRATZ
MILLER & BRUEGGEMAN, s.c.
1555 N River Center Drive, Suite 202
Milwaukee, WI 53212
(414) 271-4500
Attorney for IBEW and IAM

s/Barbara S. Mehlsack
Barbara S. Mehlsack
GORLICK KRAVITZ & LISTHAUS P.C.
17 State Street
New York, N.Y. 10004
(212) 269-2500
Attorney for IUOE

:\docs\elc663\71259\m0377317.doc

19

# Exhibit

# A



PBGC/Insurance Operations Department
P.O. Box 151750
Alexandria VA 22315-1750

300
February 01, 2010

PBGC Case Number:
Plan Name:                    DELPHI HRLY-RATE EES PENSION PLAN

RICHARD C KASZA
4345 S 36TH ST
GREENFIELD WI 532212055

We are writing to you to let you know that, unfortunately, we must reduce the benefit that we are paying you under your pension plan (named above).

PBGC is currently paying you an estimated benefit of $2940.20 per month in the form of a Joint and 65% Survivor Annuity with 'Popup' Feature. The Joint and 65% Survivor Annuity with 'Popup' Feature provides you with a monthly benefit for the rest of your life. Thereafter, your surviving beneficiary will receive 65% of your benefit for the rest of your beneficiary's life. However, if your beneficiary predeceases you , your monthly benefit will be increased to the monthly amount you would have received if you had elected a Straight Life Annuity.

On March 1, 2010, we will reduce your estimated benefit to $1595.99 per month.

### Why is my benefit being reduced?

PBGC must reduce your pension benefit because it is greater than the amount Congress allows us to pay for plans that were not sufficiently funded by the plan sponsor. The enclosed estimated benefit statement explains how the benefit was calculated and the reason(s) for the reduction.

You can find more information about limits on payments made by PBGC on our Website at www.pbgc.gov/about/faqs.html .

### What is an estimated benefit?

When PBGC took over as trustee of your pension plan, we began reviewing the plan's terms and the plan sponsor's records to ensure that we make accurate payments. Completing this review can take several years from the date we take over the pension plan. While this review is underway, the benefits we pay you are estimated benefits.

### What happens when PBGC's review is complete?

When our review is complete, we will send your benefit determination. This is a letter that will tell you your benefit amount, explain how we calculated it, and explain your right to file an appeal of the benefit determination if you believe it is incorrect.

The amount in your benefit determination may be higher or lower than your estimated benefit, though in many cases, it remains the same. At that time we will likely need to further reduce your benefit to account for the amount that you have received to date that is over and above

**Pension Benefit Guaranty Corporation**
**U.S. Government Agency**

  008802020400

the limits set by Congress. This further reduction will generally not exceed 10% of the amount shown in your benefit determination. The reason we do not make this reduction until you receive your benefit determination is to ensure that we have calculated your benefit correctly and that you are receiving the maximum we can pay you under the law before making any further reduction.

You may call our Customer Contact Center at 1 (800) 400-7242, Monday through Friday, 8:00 a.m. – 7:00 p.m. ET. If you use a TTY/TDD, call 1 (800)-877-8339, and ask the relay operator to call our telephone number. Or, you may write to: PBGC/Benefits Administration and Payment Department, P.O. Box 151750, Alexandria, VA 22315-1750. Please include your Social Security number, PBGC case number, 20637100, and a daytime telephone number.

If you are 55 – 65 years of age and are receiving benefits from PBGC, you may be eligible for an IRS tax credit for health care insurance premiums called the Health Coverage Tax Credit (HCTC). This credit does not apply if you are entitled to coverage under Medicare Part A or are enrolled in Medicare Part B or a state's Medicaid program. Also, individuals 65 or older who are not eligible for Medicare may still be eligible for the credit. The HCTC is equal to 65 percent of the premiums paid by you for qualified health insurance. HCTC information is available from the IRS at its web site, www.irs.gov, Keyword: HCTC, or at the HCTC toll-free number 1-866-628-HCTC (TTD/TTY: 1-866-626-HCTC).

PBGC offers online services. To learn more, go to www.pbgc.gov and click on 'Workers and Retirees'. Look for the title 'Access your Pension Account' on the right side of the webpage. If you open an online account, you will be able to:

- Designate or change beneficiary information
- Change your address, telephone number, or e-mail address
- Designate or edit your Federal Tax Withholdings
- Apply for electronic direct deposit (EDD)
- Edit your existing EDD information

Si usted prefiere recibir esta información en español, por favor llame a nuestro Centro de Contacto del Cliente al 1 (800) 400-7242. Si usa el TTY/TDD, llame a 1 (800) 877-8339 y pídale a la operadora que lo conecte con el 1 (800) 400-7242.

Please keep this letter in your records for future reference.

Sincerely,

*Kenneth Persing III*

Kenneth Persing III
FBA Pension Benefit Analyst
Field Benefit Administration

Enclosure:

.(Printed) Benefit Statement

**Pension Benefit Guaranty Corporation**
**U.S. Government Agency**

# Exhibit

# B



LexisNexis®

LEXSEE 137 FED APPX 776

**LOCAL NO. 1654, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, AFL-CIO, Plaintiff-Appellant v. L. G. PHILIPS DISPLAY COMPONENTS COMPANY, Defendant-Appellee**

No. 04-3304

**UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT**

*137 Fed. Appx. 776; 2005 U.S. App. LEXIS 10858*

**June 7, 2005, Filed**

**NOTICE:** [**1] NOT RECOMMENDED FOR FULL-TEXT PUBLICATION. SIXTH CIRCUIT RULE 28(g) LIMITS CITATION TO SPECIFIC SITUATIONS. PLEASE SEE RULE 28(g) BEFORE CITING IN A PROCEEDING IN A COURT IN THE SIXTH CIRCUIT. IF CITED, A COPY MUST BE SERVED ON OTHER PARTIES AND THE COURT. THIS NOTICE IS TO BE PROMINENTLY DISPLAYED IF THIS DECISION IS REPRODUCED.

**SUBSEQUENT HISTORY:** Summary judgment granted by *IBEW, AFL-CIO, Local No. 1654 v. L.G. Philips Display Components Co., 2006 U.S. Dist. LEXIS 5633 (N.D. Ohio, Jan. 30, 2006)*

**PRIOR HISTORY:** On Appeal from the United States District Court for the Northern District of Ohio. 02-07021. James G. Carr, Chief District Judge.
*IBEW, Local 1654 v. L.G. Philips Display Components Co., 2004 U.S. Dist. LEXIS 2027 (N.D. Ohio, Jan. 30, 2004)*

**COUNSEL:** For LOCAL NO. 1654, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, AFL-CIO, Plaintiff-Appellant: Leonard S. Sigall, Reynoldsburg, OH

For L.G. PHILIPS DISPLAY COMPONENTS COMPANY, Defendant-Appellee: Robert J. Brown,

Thompson Hine, Dayton, OH; Scott T. Stirling, Thompson Hine, Dayton, OH

**JUDGES:** Before: MARTIN and ROGERS, Circuit Judges; FORESTER, Chief District Judge. *

> * The Honorable Karl S. Forester, United States Chief District Judge for the Eastern District of Kentucky, sitting by designation.

**OPINION**

[*777] Local 1654 of the IBEW appeals the summary judgment for the defendant employer in this action asserting a breach of a collective bargaining agreement under *§ 301 of the Labor Management Relations Act, 29 U.S.C. § 185,* [**2] and a state law claim of fraud. Counsel for the union requested oral argument, but did not reiterate the request after being informed by the court that it was considering submitting the appeal for consideration on the briefs. This panel unanimously agrees that oral argument is not needed in this case. *Fed. R. App. P. 34(a).*

Defendant operated a plant in Ohio manufacturing television picture tubes that employed approximately 1400 workers. It announced its intention to close the plant and move its operation to Mexico. The union and the employer thereafter negotiated the final agreement to

137 Fed. Appx. 776, *777; 2005 U.S. App. LEXIS 10858, **2

govern the period until the plant closed. The union pressed for allowing the employees to receive their retirement benefits in a lump sum at the time of the closing, an option that had previously been available only to those employees old enough to be eligible for immediate or early retirement. The employer agreed to this, and the agreement was ratified by the union membership. Subsequently, the employer provided the union with a table of factors which would be used to compute the lump sum retirement benefits. The [**3] union then filed this action alleging a breach of the agreement contending that defendant knew it had relied on a table of factors previously provided to it which resulted in much larger lump sum benefits. During discovery, the union learned that the employer had the correct table of factors during the negotiation but had not furnished it to the union. The complaint was then amended to add a claim of fraud.

Defendant moved for summary judgment, contending that the claims were preempted by the Employee Retirement Income Security Act, 29 U.S.C. § 1001 et seq. The district court granted the motion, finding the claims preempted and therefore not addressing them on the merits. The parties reiterate their arguments on appeal.

This court reviews de novo summary judgment. Alotsi v. Lockheed Martin Energy Sys., Inc., 321 F.3d 551, 555 (6th Cir. 2003). Here summary judgment was proper on the claim of fraud. State law claims for the recovery of employee benefits are preempted by ERISA. Cromwell v. Equicor-Equitable HCA Corp., 944 F.2d 1272, 1276 (6th Cir. 1991), as are federal common law claims. Muse v. IBM, 103 F.3d 490, 495 (6th Cir. 1996). [**4] The fraud claim in this case, first asserted as a state law claim in the amended complaint, but thereafter argued as a federal common law claim, was therefore properly found preempted by the district court.

Claims involving rights created by collective bargaining agreement are governed by the Labor Management Relation Act and are not superseded by ERISA. Alotsi, 321 F.3d at 556. This court has held on a number of occasions that such an action can be maintained under ERISA or § 301 of the labor act. Id.; Golden v. Kelsey-Hayes Co., 73 F.3d 648, 659 n.11 [*778] (6th Cir. 1996); Biros v. Spalding-Evenflo Co., 934 F.2d 740, 742 (6th Cir. 1991) (and cases cited). In finding the claim for a breach of the agreement preempted by ERISA, the district court relied on USW v. United Eng'g, 52 F.3d 1386 (6th Cir. 1995). However, United Steelworkers was decided on the narrow ground that ERISA preempted claims for non-guaranteed pension benefits against plan sponsors, because ERISA had been amended to provide that plan sponsors were not liable for non-guaranteed benefits. Id. at 1393-94. [**5] The district court also did not consider that the union would not have standing to pursue a claim for benefits under ERISA, as it is not a participant or beneficiary of an ERISA plan. Teagardener v. Republic-Franklin Inc. Pension Plan, 909 F.2d 947, 951 (6th Cir. 1990).

Thus the judgment is reversed and the case returned to the district court.