## ASSIGNMENT OF CLAIM AGREEMENT

M & Q Plastic Products, LP (the "Assignor"), having offices at 1120 Welsh Rd Suite 170, North Wales, PA 19454, in consideration of the sum of $467,117.03 (the "Purchase Price"), does hereby sell, convey, transfer and assign to Goldman Sachs Credit Partners L.P. ("Assignee"), having offices at One New York Plaza 49th Floor New York, NY 10004, subject to the previsions hereof, all of the Assignor's right, title and interest in and to the claim or claims of Assignor, as more specifically set forth herein below (the "Claim"), against Delphi Automotive Systems LLC (the "Debtor"), in the bankruptcy case of the Debtor under case No. 05-44640 (the "DAS Case") in the United States Bankruptcy Court for the Southern District of New York (the "Court"), being jointly administered with the bankruptcy cases of other affiliated entities (collectively the "Delphi Debtor Entities") under Case Number 05-44481 (the "Proceedings") in the currently outstanding amount of not less than $631,239.24 (the "Purchased Amount") and, subject to the reservations herein, all rights and benefits of the Assignor relating to the Claim, including without limitation the (i) Proofs of Claim identified below; (ii) all agreements, instruments, invoices, purchase orders, proofs of delivery and other documents evidencing, or relating or referred to in, such Claim; (iii) Assignor's rights to receive principal, interest, penalties, fees, expenses, damages, and other amounts or distributions of any kind, if any, which may be paid with respect to the Claim; (iv) all other claims and causes of action against the Debtor, it's affiliates, any guarantor or other third party under or relating to the Claim or any other of the foregoing, together with voting and other rights and benefits arising therefrom; and (v) all of Assignor's rights to receive cash, securities, instruments and other property which may be paid or issued by the Debtor in satisfaction of the Claim. The Claim includes "cure" amounts within the meaning of section 365 of title 11 of the United States Code (the "Bankruptcy Code") and the right to receive all payments in respect thereof. The Claim is based on amounts owed to Assignor by the Debtor as set forth below, and this assignment shall be deemed an absolute and unconditional assignment of the Claim for the purpose of collection and shall not be deemed to create a security interest.

Assignor and Assignee (together, the "Parties") further agree as follows:

1. Assignor represents and warrants that a Proof of Claim in the amount of $653,828.81 (the "Claim Amount") has been duly and timely filed in the DAS Case as to the Debtor and/or the entities listed in paragraph 1 of the Rider which is attached hereto and made a part hereof by this reference (a true copy of such Proof of Claim has been previously provided to the Assignee). Assignor has also filed a duplicate Proof of Claim against the Delphi Debtors Entities generally in the Proceedings (a true copy of such duplicate Proof of Claim has been previously provided to the Assignee). If either Claim Amount differs from the Purchased Amount set forth above, Assignee shall nevertheless be deemed the owner of that Proof of Claim subject to the terms of this Assignment of Claim Agreement and shall be entitled to identify itself as owner of such Proof of Claim on the records of the Court.

8137363v.2

2.  Assignor further represents and warrants that the amount of the Claim is not less than $631,239.24 (the "Scheduled Amount"), which is the amount of the Claim set forth in the Schedules filed by the Debtor in the DAS Case, that the amount is valid and that Assignor knows of no basis for the Debtors to assert any objection to the Claim. Assignor further represents and warrants that, except as detailed on the Rider to this Assignment Agreement (i) no payment has been received by Assignor, or by any third party claiming through Assignor, in full or partial satisfaction of the Claim, (ii) Assignor has not previously assigned, sold or pledged the Claim to any third party, in whole or in part, (iii) Assignor owns and has title to the Claim free and clear of any and all liens, security interests or encumbrances of any kind or nature whatsoever, (iv) there are no offsets or defenses or preferential payment demands that have been or may be asserted by or on behalf of Debtors or any other party to reduce the amount of the Claim or to impair its value and, (v) to the knowledge of the Assignor, neither Assignor nor its affiliates have engaged in any acts, conduct or omissions that will result in Assignee receiving in respect of the Claim proportionately less payments or distributions or less favorable treatment than other general unsecured trade creditors whose claims have been allowed against Debtor. Assignor further represents and warrants that, notwithstanding potential preferential transfers, including, without limitation, those listed in paragraph 4 of the Rider hereto, Assignor shall defend any action to avoid all or part of any prepetition payments under § 547 of the Code, and shall comply with the terms of this Agreement in the event that the amount of the Claim is reduced or impaired as the result of an adverse determination or settlement of a preference action by the Debtor. Assignor represents that it is solvent and has no other relationship to the Debtors or their principals other than as a creditor. Assignor is not an insider within the meaning of section 101(31) of the Bankruptcy Code and is not, and has not been, a member of any creditors' committee appointed in the Proceedings. All terms of this Agreement will be kept confidential.

3.  Assignor and Assignee are aware that the above Purchase Price may differ from the amount ultimately distributed in the Proceedings with respect to the Claim (the "Distribution") and that the Distribution may not be absolutely determined until entry of a final order confirming a plan of reorganization or liquidation. Further, the Assignor is aware that purchase rate with respect to the Claim - in this case 74%, as determined by taking the Purchase Price divided by the Purchased Amount (the "Purchase Rate"), may differ from the rate ultimately distributed in the Proceedings as determined by taking the Distribution divided by the Claim (the "Ultimate Distribution Rate"). Assignee hereby acknowledges and confirms that any difference in the Purchase Rate and the Ultimate Distribution Rate shall not in any way alter the Purchase Price or the Purchase Rate set forth in and paid or to be paid as provided for in this Assignment Agreement. Assignor acknowledges that, except as set forth in this Assignment Agreement, neither Assignee nor any agent or representative of Assignee has made any representation whatsoever to Assignor regarding the status of the Proceedings, the condition of the Debtors (financial or otherwise) or any other matter relating to the Proceedings, the Debtors or the Claim.

4.  Assignor and Assignee each represent to the other that it has adequate information concerning the business and financial condition of the Debtors and the status of the Proceedings to make an informed decision regarding the sale of the Claim and that

8137363v.2

it has independently and without reliance on the other party, and based on such information as Assignor and Assignee, respectively, has deemed appropriate (including information available from the files of the Court of the Proceedings), made its own analysis and decision to enter into this Assignment of Claim.

5. Notwithstanding anything to the contrary in this Assignment, if (i) all or any part of the Claim is scheduled for less than the Claim Amount or is listed on the Schedules of Liabilities as either disputed, contingent or unliquidated, or is not listed at all on the Debtors' Schedules of Liabilities or (ii) the Debtor objects to the Claim or otherwise attempts to setoff against or impair the Claim for any reason, Assignor shall have the right to take any action to prove or defend the Claim's validity or amount for a period of sixty (60) days following Assignor's receipt from Assignee of the notice of objection or impairment having been initiated by the Debtor in the Proceedings. Assignee shall provide to Assignor copies of any written notice of action commenced by the Debtor in the Proceedings with respect to the Claim promptly upon receipt thereof by Assignee. If after the sixty (60) day period or, if action is taken by Assignor within such sixty (60) day period then until the contested matter is resolved by a final and non-appealable order of the Court, the Claim nonetheless is disallowed, reduced, set off, offset, subordinated, impaired, reclassified as against an affiliate in the Proceedings other than the Debtor which reclassification results in Assignee receiving in respect of the Claim proportionately less payments or distributions or less favorable treatment than other general unsecured trade creditors whose claims have been allowed against Debtor or continues to be scheduled at the lower amount (or not at all), for any reason whatsoever, in whole or in part, consensually or nonconsensually (any such event a "Disallowance"), Assignor agrees to immediately repay, on demand of Assignee, an amount equal to the amount of the Claim subject to the Disallowance multiplied by the Purchase Rate, plus interest thereon at a rate per annum equal to one-month "LIBOR" plus __% (the "Interest Rate") from the date of Assignor's receipt of the Purchase Price paid hereunder to the date of repayment, with the calculation made as to portions of the Purchase Price in the inverse order of the receipt of payment hereunder and Assignee shall assign back such proportional rights and interests of the Claim to Assignor to the extent of any reduction of the Claim below the Purchased Amount. Assignor further agrees to reimburse Assignee for all reasonable costs and expenses, including reasonable legal fees and costs, but only if Assignor fails to defend the Claim in a customary and reasonable manner with competent counsel, incurred by Assignee as a result of (x) such disallowance, reduction, setoff, subordination or reclassification or (y) Assignor's objection to the transfer of this Claim.

6. In the event the Claim is ultimately allowed in amount greater than the Purchased Amount, but in no event greater than the Claim Amount, Assignee shall provide written notice thereof to Assignor within five (5) business days of Assignee becoming informed of such fact, and after written notice (the "Notice") provided to Assignor by Assignee, Assignor shall, and is hereby deemed to sell to Assignee and Assignee hereby agrees to purchase all of such excess claim in an amount designated in the Notice up to the full Claim Amount at the Purchase Rate specified and paid herein for the Purchased Amount (i.e., 74%). Assignee shall remit such payment to Assignor within

8137363v.2

three (3) business days after delivery to Assignor of the Notice and upon Assignee's reasonable satisfaction that the Claim has been allowed in the higher amount and is not subject to any objection, claim, cause of action or offset by the Debtor. An Order of the Court or a Stipulation signed by the Debtor or its counsel establishing the amount of the Claim as greater then the Purchased Amount shall be deemed to be conclusive evidence that the Claim has been allowed in the higher amount and is not subject to any objection, claim, cause of action or offset by the Debtor; provided, however, that if the Debtor or any other party-in-interest later objects to the Claim notwithstanding such order or stipulation, the provisions of paragraph 5 nonetheless will apply to any subsequent reduction of the Claim. Nothing in this Assignment Agreement shall obligate or provide entitlement to either of the Parties with respect to any claims of Assignor in excess of the Claim Amount specified herein above in this Assignment Agreement.

7.      (a) Except as provided for in section 7(b), hereof, Assignor hereby irrevocably appoints Assignee as its true and lawful attorney and authorizes Assignee to act in Assignor's stead, to demand, sue for, compromise and recover all such amounts as now are, or may hereafter become, due and payable for or on account of the Claim herein assigned, and Assignor grants unto Assignee full authority to do all things necessary to enforce the Claim and its rights thereunder pursuant to this Assignment of Claim ("Enforcement Action"); provided, however, that solely with respect to any objection to the Claim, such authority is subject to the provisions hereof relating to Assignor's right to defend the Claim at its expense and with its counsel. Assignee agrees to provide to Assignor prompt notice of Assignee's commencement of any Enforcement Action. Assignor agrees that the powers granted by this paragraph are discretionary in nature and that Assignee may exercise or decline to exercise such powers at Assignee's sole option. Assignee shall have no obligation to take any action to prove or defend the Claim's validity or amount in the Proceedings. Assignor agrees to take such further action, at its own expense, as may be reasonably necessary or desirable to effect the assignment of the Claim and any payments or distributions on account of the Claim to Assignee including, without limitation, the execution of appropriate transfer powers, corporate resolutions and consents.

(b) Anything to the contrary set forth in this Agreement notwithstanding, Assignor reserves and retains exclusive control over the resolution of reclamation rights with respect to or otherwise affecting the Claim, as well as all matters concerning or relating to the defense of preference actions by the Debtors ("Preference Actions"). In particular, but without limitation during this period, Assignor shall retain and have the sole right and authority to litigate or settle Preference Actions and the Reclamation Claim identified in the Rider to this Agreement by any means and in any manner in its sole and absolute discretion, subject, however, to the rights and obligations of the Parties as provided for section 5 hereof, if the Claim is disallowed, reduced, set off, offset, subordinated, impaired, reclassified as against an affiliate in the Proceedings other than the Debtor or continues to be scheduled at the lower amount (or not at all), for any reason whatsoever, in whole or in part, consensually or nonconsensually. ~~Assignor will provide regular updates to Assignee on proceedings involving Preference Actions and the Reclamation Claim.~~

8137363v.2

8. Assignor agrees to (i) forward to Assignee at the address noted above all notices received from the Debtor, the Court or any third party with respect to the Claim assigned herein, (ii) if, and only if, requested in writing by Assignee, to vote the Claim assigned herein, it being understood that Assignor shall have no obligation or duty to vote the Claim unless requested to do so by Assignee with specific instructions on how to vote, and (iii) to take such other necessary and reasonable action with respect to the Claim in the Proceedings, as Assignee may from time to time reasonably request. Assignor further agrees that any distribution received by Assignor on account of the Claim, whether in the form of cash, securities, instrument or any other property, shall constitute property of the Assignee to which the Assignee has an absolute right, and that Assignor will, at its own expense, promptly deliver to Assignee any such property in the same form received, together with any endorsements or documents necessary to transfer such property to Assignee. Notwithstanding the foregoing, Assignee shall file all notices required by FRBP (defined below) 3001(e), and shall comply with the applicable provisions of the Final Trading Order entered by the Court in, and listed as document No. 1780 on the docket of, the Proceedings.

9. (a) All notices to Assignor by Assignee under the terms of this Assignment shall be addressed and delivered to M & Q Plastic Products, LP, 1120 Welsh Road, Suite 170, North Wales, PA 19454, Attn: Sean Cleary, CFO, with copy to Michael J. Viscount, Jr., Esquire, Fox Rothschild LLP, 1301 Atlantic Avenue, Suite 400, Atlantic City, NJ 08401.

(b) All notices to Assignee by Assignor under the terms of this Assignment shall be addressed and delivered to Goldman Sachs Credit Partners L.P., One New York Plaza 49th Floor New York, NY 10004, Attn: Christian Von Schimmelmann, with a copy to Steven Wasserman, Esquire, Brown Rudnick Berlack Israels LLP, 7 Times Square, New York, N.Y. 10036.

10. The terms of this Assignment of Claim, including terms and provisions in the attached Rider which are made a part hereof by this reference, shall be binding upon, and shall inure to the benefit of Assignor, Assignee and their respective successors and assigns.

11. Assignor hereby acknowledges that Assignee may at any time reassign the Claim, together with all right, title and interest of Assignee in and to this Assignment of Claim. All representations and warranties made herein shall survive the execution and delivery of this Assignment of Claim and any such re-assignment. This Assignment of Claim may be executed in counterparts and all such counterparts taken together shall be deemed to constitute a single agreement.

12. This Assignment of Claim shall be governed by and construed in accordance with the laws of the State of New York. Any action arising under or relating to this Assignment of Claim may be brought in the Court as part of the proceedings of the

8137363v.2

Debtor, or in any other State or Federal court located in the State of New York or New Jersey, and each of Assignor and Assignee consents to personal jurisdiction by such court or courts and agrees that service of process may be made by mailing a copy of said process at the addresses set forth in this Assignment of Claim, and in any action hereunder, Assignor and Assignee waive any right to demand a trial by jury.

13. If payment is not received by Assignor within three (3) business days of Assignee's receipt of an original of this Assignment Agreement executed by Assignor than the Assignment provided for herein may, at the option of Assignor, be deemed null and void without further obligation by either party. All payments hereunder shall be made by federal funds wire transfer in accordance with the instructions set forth on Exhibit "A" to this Agreement.

14. CONSENT AND WAIVER. Upon Assignor's delivery to Assignee of its executed signature page to this Assignment of Claim Agreement, Assignor hereby authorizes Assignee to file a notice of transfer pursuant to Rule 3001(e) of the Federal Rules of Bankruptcy Procedure ("FRBP"), with respect to the Claim, while Assignee performs its due diligence on the Claim during the one (1) business day period thereafter (the "Due Diligence Period"). If Assignee identifies a concern as to the validity of the Claim or the amount thereof, it shall advise Assignor in writing before the end of the Due Diligence Period in which event Assignor shall have three (3) business days to address the concern, after which Assignee may cancel this Assignment of Claim Agreement on written notice within two (2) business days thereafter, if in the reasonable discretion of Assignee the response is not reasonably satisfactory, and may subsequently file a notice of withdrawal of transfer pursuant Rule 3001(e) of FRBP transferring the Claim back to Assignor or withdrawing the transfer, and at such time and in such event both Assignor and Assignee release each other of all and any obligation or liability regarding this Assignment of Claim. Assignor hereby acknowledges and consents to all of the terms set forth in this Assignment of Claim Agreement and hereby waives (i) its right to raise any objection hereto, and (ii) its right to receive notice pursuant to Rule 3001 (e) of the FRBP.

IN WITNESS WHEREOF, the undersigned Assignor hereto sets his hand this __20__ day of __July__, 2006

M&Q PLASTIC PRODUCTS, LP

By: _____
~~David Curlin, President~~ Sean Cleary, Secretary, Treasurer & CFO, M&Q Plas Holdings, Inc (general partner)
Telephone # ~~(203) 426-4010~~ (267) 498-4011

[signatures continued on next page]

8137363v.2

IN WITNESS WHEREOF, the undersigned Assignee hereto sets his hand this 21st day of July, 2006.

GOLDMAN SACHS CREDIT PARTNERS L.P.

By: _____
Wendy Taylor
Authorized Signatory

8137363v.2

# RIDER

## ASSIGNMENT OF PROOF OF CLAIM OF
## M&Q PLASTIC PRODUCTS, L.P.

1. M&Q Plastic Products, L.P. ("M&Q" or "Assignor") supplies goods to one or more of the Debtor entities under purchase orders issued under the following purchaser names:

> Delphi Energy & Chassis Systems ("Delphi Energy & Chassis")
> Delphi Saginaw Systems ("Delphi Saginaw")
> Delphi Automotive Systems LLC ("Delphi Automotive")

Of these 3 named purchasers, only Delphi Automotive ( Case No. 05-44640) is listed among the Delphi Debtor Entities (collectively, the "Debtors") which have filed a bankruptcy petitions being jointly administered under Case No. 05-44481(the "Joint Case"), and the Debtors have scheduled M&Q for only one (1) unsecured claim on the schedules of case number 05-44640 (Delphi Automotive). M&Q has, therefore, concluded that Delphi Saginaw and Delphi Energy & Chassis are not separate legal entities and not foreign subsidiaries, but rather are separate operating units or divisions of the Debtor, Delphi Automotive (Case No. 05-44640).

2. The Summary Schedule attached to the Proof of Claim shows the components of claim against Delphi Automotive for goods sold to that debtor and to Delphi Energy & Chassis and Delphi Saginaw, as follows:

| | |
|---|---|
| Delphi Energy & Chassis | $137,182.77 |
| Delphi Saginaw | 56,756.23 |
| Delphi Automotive | 459,898.81 |
| **TOTAL** | **$653,828.81** |

3. Attached to and made a part of the Proof of Claim as Exhibit "A" is Delphi's E-DACOR Report which shows open invoices by reference to M&Q's customer numbers. Under this report, the various debtor entities/purchasers are identified as follows:

| Customer No. | Purchaser |
|---|---|
| da0001 | Delphi Energy & Chassis |
| de0009 | Delphi Energy & Chassis |
| de0010 | Delphi Automotive |
| de0015 | Delphi Saginaw |
| de0002 | Delphi Automotive |

8137363v.2

4.  As reflected on pages 7 and 13 of the E-DACOR Report (Exhibit "A" to the Proof of Claim), credits have been given for payments of $444,320.75 on 9/30/05 (the "9/30 Payment") and $702,909.49 on 10/6/05 (the "10/6 Payment") received by M&Q from the Debtors (the "Payments"). The Payments were made by the Debtors without reference to invoice numbers. M&Q has since reconciled the invoices paid by the 9/30 Payment as reflected on Exhibit "A" to the Proof of Claim. The Debtors have never indicated which invoices were paid by the 10/6 Payment. The Assignor has applied both of the Payments against the balance due to Delphi Automotive in arriving at its net claim. There is a risk that the Debtors may sue to avoid some or a portion of these Payments, as well as other pre petition payments to the Assignor, as being preferential under Section 547 of the Bankruptcy Code.

5.  Because of uncertainty as to the corporate identity of Delphi Energy & Chassis and Delphi Saginaw, M&Q has filed 2 proofs of claim. A proof of claim was filed in the case of Delphi Automotive (Case No. 05-4460) in the amount of $653,828.81 and second, duplicate proof of claim was filed in the Joint Case under the debtor name of Delphi Corporation, et al. (Case No. 05-44481) for the aggregate amount of $653,828.81 due by one or more of the Debtors. For the purposes of the Assignment of Claim, Assignee shall be entitled to file notices of transfer pursuant to FRBP 3001(e) with respect to both proofs of claim.

6.  In connection with the Claim addressed in the Assignment, Assignor has asserted a reclamation claim against the Debtors in the amount of $719,691.92 (the "Reclamation Claim"). The Debtors have assigned No. 463 to this Reclamation Claim, and have responded that the reconciled amount of this claim is $0. The matter remains in dispute as a contested matter between the Debtor and the Assignor pursuant to reclamation procedures adopted by the Court. The Reclamation Claim is for unpaid goods, if any, shipped by the Assignor to the Debtors (the "Reclamation Shipments") within 10 days of the date when the Debtors filed their bankruptcy petitions – October 8, 2005 (the "Petition Date"). A portion of the Claim assigned to Assignee may arise from the Reclamation Shipments which can be identified by the Assignor by reference to certain invoices (the "Reclamation Invoices") shown on the E-DACOR Report of the Debtors which is a made a part of the Proof of Claim as Exhibit "A" thereto. The Reclamation Invoices are also identified in the various submissions exchanged by Assignor and the Debtors in connection with the proceedings on the Reclamation Claim in the Joint Case. The Debtors maintain that the Reclamation Invoices have been paid, but have not identified the source of the payment. Until the source of the payment is identified, Assignor intends to continue to pursue its reclamation rights in the Joint Case.

8137363v.2

EXHIBIT "A"

The following are the instructions for federal funds wire transfer to M&Q:

| | |
|---|---|
| Bank Name & Address: | PNC Bank<br>1600 Market Street<br>Philadelphia, PA 19103 |
| Bank ABA: | 0310-0005-3 |
| Account Name: | M&Q Plastic Products<br>1120 Welsh Road<br>Suite 170<br>North Wales, PA 19454 |
| Account Number: | 8613492585 |

8137363v.2

JUL-21-2006 10:32 From:                                              To:Goldman Sachs    Co    P.11/11

## TRANSFER NOTICE

M & Q Plastic Products, LP ("Assignor"), transfers and assigns unto Goldman Sachs Credit Partners L.P. ("Assignee"), having offices at One New York Plaza, 49th Floor, New York, NY 10004, its successors and assigns ("Assignee"), pursuant to the terms of the ASSIGNMENT OF CLAIM AGREEMENT (the "Assignment Agreement") between Assignor and Assignee, all of its right, title and interest in and to the M & Q Plastic Products Claims of Assignor in the aggregate amount of not less than $653,828.81, representing net claims against: DELPHI AUTOMOTIVE SYSTEMS LLC (herein, the "Debtor") in the United States Bankruptcy Court for the Southern District of New York, administered as Case Number 05-44640, as more particularly described in the Assignment Agreement.

IN WITNESS WHEREOF, Assignor has signed below as of the 20th day of July, 2006.

WITNESS:                                              M & Q Plastic Products, LP

_____(Signature)_____                     By: _____(Signature)_____

__Joseph Mellozzi__                                   __Sean Cleary__
(Print Name of Witness)                               (Print Name and Title)
                                                      Treasurer, Secretary, & CFO
                                                      M&Q Texas Holdings, Inc., general partner

8137363v.2