**LATHAM & WATKINS LLP**
885 Third Avenue
New York, New York 10022-4802
Telephone: (212) 906-1200
Robert J. Rosenberg (RR-9585)
Mitchell A. Seider (MS-4321)
Mark A. Broude (MB-1902)
Michael J. Riela (MR-7829)
Jude M. Gorman (JG-5178)
Email: robert.rosenberg@lw.com
        mitchell.seider@lw.com
        mark.broude@lw.com
        michael.riela@lw.com
        jude.gorman@lw.com

Attorneys for the Official Committee of Unsecured Creditors

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| DELPHI CORPORATION, <u>et al.</u>, ) | Case No. 05-44481 (RDD) |
| ) | |
| Debtors. ) | |
| ) | Jointly Administered |

**RESPONSE OF LATHAM & WATKINS LLP TO THE OBJECTION**
**OF THE UNITED STATES TRUSTEE TO ITS FINAL FEE APPLICATION**

Latham & Watkins LLP ("<u>Latham</u>"), counsel to the Official Committee of Unsecured Creditors (the "<u>Committee</u>") appointed in the chapter 11 cases of Delphi Corporation and certain of its affiliates (collectively, the "<u>Debtors</u>"), hereby files this response (the "<u>Response</u>") to the objection of the Office of the United States Trustee (the "<u>UST</u>") to the final fee applications of Latham and certain other retained professionals in these cases (the "<u>Objection</u>"). In support of this Response, Latham respectfully states as follows:

## BACKGROUND

1.     On October 8, 2005 (the "Petition Date"), thirty-nine of the Debtors filed with this Court voluntary petitions for relief under chapter 11 of the Bankruptcy Code. On October 14, 2005, the three remaining Debtors also filed voluntary petitions.

2.     The Committee was appointed nine days after the Petition Date, on October 17, 2005.[1] The Committee selected Latham as its counsel, Mesirow Financial Consulting LLC as its financial advisor and Jefferies & Company, Inc. and Moelis & Company LLC as its co-investment bankers.

3.     On December 10, 2007, the Debtors filed their First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-In-Possession (the "Initial Plan"). On January 25, 2008 (the "Confirmation Date"), this Court entered an order confirming the Initial Plan. However, the Initial Plan was never consummated.

4.     On July 30, 2009, this Court entered an order approving certain modifications to the Initial Plan that were embodied in the First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-In-Possession (as Modified) (the "Modified Plan"). On October 6, 2009, (a) the effective date of the Modified Plan occurred, (b) the Modified Plan was substantially consummated and (c) the Debtors filed a notice of the occurrence of effective date of the Modified Plan (the "Effective Date Notice"). As noted in paragraph 9(b) of the Effective Date Notice, all final requests for payment of Professional Claims (as defined in the Modified Plan) and requests for reimbursement of expenses of

---

[1] The current members of the Committee are: (a) Freescale Semiconductor, Inc.; (b) IUE-CWA; (c) Wilmington Trust Company, as Indenture Trustee and (d) Tyco Electronics Corporation. The Pension Benefit Guaranty Corporation and the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America are *ex officio* members of the Committee.

2

members of the Statutory Committees (as defined in the Modified Plan) were to be filed no later than December 31, 2009.[2]

5. On December 18, 2009, Latham filed its final fee application (the "<u>Fee Application</u>") with this Court, in which it sought allowance, on a final basis, of (a) $19,817,103.75 of fees incurred by Latham in its representation of the Committee from the Petition Date through and including the Confirmation Date (the "<u>Final Fee Period</u>") and (b) $1,113,098.00 in reimbursements for actual and necessary expenses incurred during the Final Fee Period. In the Fee Application, Latham provided time records and expense detail with respect to the period from October 1, 2007 through and including the Confirmation Date (the "<u>Seventh Fee Period</u>"). Latham provided this detail because it had not been included in Latham's previous interim fee applications (which covered compensation periods prior to October 1, 2007).

6. Because of certain discrepancies in the calculation of amounts sought in the Fee Application, and pursuant to an agreement reached with the fee review committee that was appointed in these cases, Latham has agreed to reduce its request for compensation in the Fee Application to $19,711,731.85 and to reduce its request for reimbursement of expenses in the Fee Application to $1,103,552.00. As a result of these agreed-upon reductions, the fee review committee determined not to object to the Fee Application.

7. On March 1, 2010, the UST filed the Objection, in which it stated that Latham "charged excessive fees for the work of unadmitted personnel." *See* Objection, at 3. The UST thus requested that this Court reduce the total fees awarded to Latham by $132,330.77 (the "<u>Reduction</u>"). The UST calculated the amount of the Reduction by applying Latham's blended

---

[2] The December 31 deadline was subsequently extended to February 1, 2010 by order of this Court.

3

hourly rate for paraprofessionals to the 742.5 hours billed during the Seventh Fee Period by Latham associates who, for a portion of the time at which they worked on the Delphi cases, had not yet been admitted to the bar (the "Unadmitted Attorneys")[3] and subtracting that amount ($156,199.73) from the amount of fees requested by Latham in the Fee Application on account of work done by the Unadmitted Attorneys during the Seventh Fee Period ($288,530.50). *See* Objection, at 26-27. In the Objection, the UST asserted that Latham requested compensation for the Unadmitted Attorneys at hourly rates of $345 and $425 during the Seventh Fee Period, and posited that those hourly rates were excessive because Latham requested compensation at an hourly rate of $395 for certain attorneys who were already admitted to the bar. *See* Objection, at 26.

## RESPONSE

8. The Court should overrule the Objection as it relates to Latham's Fee Application and deny the UST's request for the Reduction for two reasons. First, Latham is not requesting compensation at higher hourly rates for the Unadmitted Attorneys than the rates for attorneys who were admitted to the bar. The UST mistakenly concluded that Latham is requesting compensation at higher hourly rates for the Unadmitted Attorneys, because it failed to account for an increase in Latham's billing rates for attorneys and paralegals that occurred on January 1, 2008.[4] Second, the UST's argument that Latham should be compensated for the work of the

---

[3] The Unadmitted Attorneys graduated from law school in 2007, and all of them had taken the applicable state bar exam in July 2007 and had passed it. Because of the time it takes to grade the bar exams and for attorneys to satisfy the "character and fitness" requirements of the applicable state bar, many of Latham's associates in the law school class of 2007 had not become members of the bar by October 1, 2007, or even by the Confirmation Date. All Unadmitted Attorneys were ultimately admitted to the applicable state bar.

[4] As stated in the Committee's application to retain Latham as its counsel, Latham periodically adjusts the hourly rates for its attorneys and paralegals (typically in January of each year) to reflect economic and other conditions. In accordance with its typical practice, Latham adjusted the hourly rates of its attorneys on January 1, 2008.

4

Unadmitted Attorneys at the blended hourly rate of paraprofessionals is not supportable either as a matter of law or equity.

9.  First, at no time did Latham charge hourly rates for the Unadmitted Attorneys that exceed the hourly rates for attorneys who had been admitted to the bar. In fact, Latham requested compensation at hourly rates of $345 (for October through December 2007) and $425 (for January 2008) for the Unadmitted Attorneys (*i.e.*, associates who graduated from law school in 2007) during the Seventh Fee Period. In contrast, Latham requested compensation at hourly rates for associates who were admitted to the bar in 2007 (*i.e.*, associates who graduated from law school in 2006) of $395 (for October 2007 through December 2007) and $455 (for January 2008).[5] Thus, contrary to the UST's assertion, Latham does not request compensation at higher rates for Unadmitted Attorneys than it does for admitted attorneys.

10. Second, the UST's assertion that Latham should only be awarded fees for the work performed by the Unadmitted Attorneys at the blended hourly rate of paraprofessionals misses the mark. The UST seeks to reduce the fees awarded to Latham for work performed by the Unadmitted Attorneys simply because those attorneys were awaiting admission to the bar when they performed the work in question. *See* Objection, at 26-27. All of the Unadmitted Attorneys, however, are law school graduates who had taken the applicable state bar exam and begun full-time employment at Latham, but remained unadmitted only because of the delays attendant to grading the bar exam and the applicable state bars' "character and fitness" evaluation.

11. It should be noted that Latham is NOT seeking compensation for the work performed by law school students who have joined the firm for a brief time as summer

---

[5] As footnote 5 of the cover sheet attached to the Fee Application states: "[t]he rates set forth in this chart reflect the 2007 *and 2008* hourly rates in effect during October, November, and December 2007 and January 1 through January 25, 2008." *See* Fee Application, at 12, n.5 (emphasis added).

5

associates. However, the Unadmitted Attorneys are qualitatively different from summer associates, and they are indeed very different from paralegals. The Unadmitted Attorneys began their full-time legal careers at Latham during the Seventh Fee Period. They simply needed to complete the final stages of the bar admission process (which each of the Unadmitted Attorneys did in 2008) before becoming full-fledged licensed attorneys.

12.   Latham respectfully submits that the correct hourly rate for these attorneys is not the blended hourly rate for paraprofessionals, as the UST argues, but rather the hourly rates Latham regularly charges for these associates. Latham sets its hourly billing rates to take into account the prevailing market rates at comparable law firms and the experience of the attorneys and paralegals in question.[6] Latham submits that the appropriate comparison when assessing the reasonableness of the hourly rates for the Unadmitted Attorneys is not to the hourly rates of paraprofessionals, who presumably have not attended and graduated from law school, and have not taken the bar exam, but rather, to the hourly rates of more senior classes of associates who have similar legal training to that of the Unadmitted Attorneys, but who have more experience in practice and who have been admitted to the bar. By that standard, Latham submits that the compensation requested for the work performed by the Unadmitted Attorneys is reasonable, as the hourly rates for the Unadmitted Attorneys are meaningfully lower than the hourly rates for more senior classes of associates. Consequently, the UST's request for the Reduction should be denied. *See, e.g.*, *In re Landmark Distrib., Inc.*, 195 B.R. 837, 851 (Bankr. D. N.J. 1996) (accepting the firm's requested hourly rates, which included rates of $120 for a summer associate and $50-95 for paralegals, because they were the firm's "normal hourly rates" and the firm had

---

[6] Attached hereto as <u>Exhibit A</u> is the Declaration of Robert J. Rosenberg in Support of the Response of Latham & Watkins LLP to the Objection of the United States Trustee to its Final Application, which includes a summary chart of rates charged by comparable law firms for work performed by attorneys comparable to the Unadmitted Attorneys in recent cases in this district.

provided an affidavit stating that the hourly rates reflected the "generally prevailing billing rates of New York law firms which have the resources to handle a case of this magnitude.") (internal quotations omitted).

13.     Furthermore, the work in question was not work that could have been performed by paralegals and thus there is no equitable basis for treating the Unadmitted Attorneys as if they were paralegals.  Indeed, if the UST's position is to be given credence, then Latham, as well as all other law firms, would have an incentive to refuse to staff on bankruptcy matters any attorney that is awaiting his or her admission, instead only staffing more senior (and therefore more expensive) attorneys.  Thus, instead of reducing professional fee expenses, the result of the UST's view would in fact be to cost debtors even more money.

## CONCLUSION

**WHEREFORE**, Latham respectfully requests that this Court (a) overrule the UST's Objection and (b) grant such other relief as this Court deems just and proper.

Dated: March 11, 2010
       New York, New York

**LATHAM & WATKINS LLP**

By: /s/ Robert J. Rosenberg
    Robert J. Rosenberg (RR-9585)
    Mitchell A. Seider (MS 4321)
    Mark A. Broude (MB-1902)
    Michael J. Riela (MR-7829)
    Jude M. Gorman (JG-5178)
    885 Third Avenue, Suite 1000
    New York, New York 10022
    Telephone:  (212) 906-1200

    Attorneys for the Official Committee
    of Unsecured Creditors

7