**Hearing Date and Time: March 18, 2010 at 10:00 a.m. (prevailing Eastern time)**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
155 North Wacker Drive
Chicago, Illinois 60606
John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Kayalyn A. Marafioti

Attorneys for DPH Holdings Corp., et al.,
    Reorganized Debtors

DPH Holdings Corp. Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

DPH Holdings Corp. Legal Information Website:
http://www.dphholdingsdocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x | |
|---|---|
| : | |
| In re : | Chapter 11 |
| : | |
| DPH HOLDINGS CORP., et al., : | Case Number 05-44481 (RDD) |
| : | |
| : | (Jointly Administered) |
| Reorganized Debtors. : | |
| : | |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x | |

REORGANIZED DEBTORS' REPLY TO UNIONS' BRIEF IN
OPPOSITION TO DEBTORS' MOTION TO DISALLOW AND EXPUNGE
<u>PROOFS OF CLAIM FILED BY THE IAM, THE IBEW, AND THE IUOE</u>

("IAM, IBEW, AND IUOE PROOFS OF CLAIM REPLY")

DPH Holdings Corp. ("DPH Holdings") and certain of its affiliated reorganized debtors in the above-captioned cases (together with DPH Holdings, the "Reorganized Debtors") hereby submit their Reply To Unions' Brief In Opposition To Debtors' Motion To Disallow And Expunge Proofs Of Claim Filed By The IAM, The IBEW, And The IUOE,[1] and respectfully represent as follows:

1.  The Unions assert contractual and statutory claims for the difference between the amounts participants are receiving or will receive from the PBGC under the terminated Delphi HRP and the amounts they had accrued under the Delphi HRP as of the date of termination. (Unions' Brief In Opposition To Debtors' Motion To Disallow And Expunge Proofs Of Claim Filed By The IAM, The IBEW, And The IUOE (Docket No. 19595) (the "Opposition Brief") ¶ 5.) These claims should be disallowed and expunged because they are precluded by existing orders of this Court and, even if not precluded, do not state a claim against the Reorganized Debtors.

A.  <u>Alleged Breach Of The MOUs</u>

2.  The Unions' Opposition Brief parrots arguments already rejected by this Court when it denied the Unions' objection to the Modified Plan at the July 30, 2009 hearing at which this Court approved the Modified Plan (the "Plan Modification Hearing"). The Unions mischaracterize the nature of the Debtors' obligations under the MOUs in an attempt to invent a breach of contract claim that can circumvent the language rendering their claims unactionable in the Plan Modification Order.

---

[1]  The Union's opposition brief is in response to the Reorganized Debtors' Brief Requesting Entry Of An Order Disallowing And Expunging Proofs Of Claim Filed By The IAM, The IBEW, And The IUOE (the "Proofs Of Claim Brief") (Docket No. 19402). Capitalized terms used and not otherwise defined herein have the meanings ascribed to them in the Proofs Of Claim Brief.

2

   3.  The Unions assert a claim for breach of the MOUs on the grounds that the MOUs allegedly prohibit the Union members' pension benefits from being reduced unless pension benefits are similarly reduced for all Delphi HRP participants.[2] (Opposition Brief ¶¶ 15, 17, 20, 22.)

   4.  The language on which the Unions premise this argument is in MOU Sections D.2.b. (IUOE Local 101 MOU Section C.1.b.), which states:

> With regard to such amendment and freeze of the Delphi HRP, Delphi will cause the frozen Delphi HRP to pay benefits in accordance with the terms of the Delphi HRP <u>and applicable law</u>. These benefits will not be reduced from the levels in effect as of the date immediately preceding the Effective Date unless they are similarly reduced for other retired Delphi HRP participants. The [Unions agree] that Delphi reserves its right to seek termination of the Delphi HRP consistent with applicable law.

(Emphasis added.)

   5.  The Unions' inequitable treatment arguments and reliance on this very language has already been rejected by this Court. During the Plan Modification Hearing, the Unions cited these same MOU provisions and argued that impermissible inequitable treatment would result if the Debtors were allowed to enter into the Delphi-PBGC Settlement Agreement. (See Transcript Regarding Hearing Held on July 29, 2009 (Docket No. 18829) (the "Plan Modification Hearing Transcript") at 143:12-17; 170:11-173:2.)

   6.  At the Plan Modification Hearing, this Court recognized that the Unions were citing this language out of context. This Court correctly observed that the MOUs obligated the Reorganized Debtors to pay benefits in accordance with <u>applicable law</u> and any termination

---

[2] The Opposition Brief initially seems to argue that the MOUs allegedly prohibit the Union members' pension benefits from being reduced at all, but later in the brief the Unions appear to recognize the Reorganized Debtors' right under the MOUs to seek termination of the Delphi HRP. (Opposition Brief ¶ 15.) Cleary, the MOUs, applicable law, and the Plan Modification Order permitted the Reorganized Debtors to seek termination of the Delphi HRP, thereby reducing pension benefits.

3

of the Delphi HRP by the PBGC would prevent the Debtors from paying benefits under the Delphi HRP.  (See Plan Modification Hearing Transcript at 172:13-173:2.)  Even though the Reorganized Debtors themselves would not be paying benefits upon termination of the Delphi HRP, they would be paying them in accordance with applicable law by virtue of the PBGC taking over the plans and paying benefits.

7. Moreover, a termination of the Delphi HRP does not violate the MOU provision prohibiting the Reorganized Debtors from reducing benefit levels for the Unions' members and former members unless they made similar reductions for other retired Delphi HRP participants because, upon termination, it is the PBGC, not the Reorganized Debtors, that reduces benefit levels under the terminated Delphi HRP.

8. This Court overruled the Unions' objections, including their perceived inequitable treatment argument, at the Plan Modification Hearing.  (See Plan Modification Hearing Transcript at 218:12-14.)

9. This Court then approved the Plan Modification Order which allowed the Debtors to enter into the Delphi-PBGC Settlement Agreement.  Following execution of the Delphi-PBGC Settlement Agreement, the pension plans covering the members and former members of the Unions were terminated and the PBGC was appointed statutory trustee of the terminated pension plans.

10. As recognized by this Court at the Plan Modification Hearing, once termination of the Delphi HRP was effected by the PBGC, the PBGC became the trustee of the Delphi HRP and Delphi lost any ability to control how the PBGC treats the benefit levels of the various former participants in the Delphi HRP.

11. The Unions cannot maintain their claim for breach of the MOUs based on their perceived inequitable treatment under these circumstances and against the backdrop of this Court's Plan Modification Order which specifically authorized the Debtors to enter into the Delphi-PBGC Settlement Agreement and other effectuating documentation "without violating the Labor MOUs or other applicable collective bargaining agreements, the Union 1113/1114 Settlement Approval Orders, section 1113(f) of the Code or any other applicable law." (See Plan Modification Order, Paragraph 60(b).) The doctrines of res judicata and collateral estoppel preclude the Unions from bringing such a claim.

B.    Preemption Of Contract Claims Under Title IV Of ERISA

12. Even if not precluded by Court orders, the Unions' contract claims for the difference between the benefits participants will receive under the terminated Delphi HRP and the benefits they earned under the Delphi HRP are preempted by Title IV of ERISA and therefore should be dismissed on this alternative basis.

13. As set forth in the Proofs Of Claim Brief, upon termination of a pension plan, the PBGC becomes the "owner" of and the only entity authorized to assert a claim against the plan sponsor and its controlled group members for the difference between the value of assets of the terminated pension plans and the value of benefits accrued (and vested) under the terminated pension plans, i.e., the amount necessary to fund all benefits lost as a result of pension plan termination. See In re Adams Hard Facing Co., 129 B.R. 662 (W.D. Okla. 1991); United Steelworkers of Am. v. United Engineering, Inc., 52 F.3d 1386 (6th Cir. 1995); see also In re Lineal Group, 226 B.R. 608 (Bankr. M.D. Tenn. 1998) (state law claims for lost benefits after plan termination are preempted). The basis for these decisions is that the PBGC has a claim under section 4062(b) of ERISA against the plan sponsor and members of its controlled group for the shortfall in assets needed to pay all accrued benefits under a terminated plan. Amounts

5

collected by the PBGC are used to pay benefits under the terminated pension plan pursuant to the guarantee and asset allocation rules set forth in sections 4022 and 4044 of ERISA. Permitting parties other than the PBGC to assert claims against the plan sponsor and its controlled group members for unfunded benefit liabilities of a terminated plan interferes with the PBGC's ability to collect the amount due under section 4062(b) of ERISA and to distribute benefits under the carefully crafted allocation and priority rules under Title IV of ERISA.

14.     Thus, the Unions are not entitled to bring any claims against the Reorganized Debtors for "lost benefits" under the terminated Delphi HRP because the PBGC's claim preempts them, regardless of how the Unions characterize those claims. (Proofs Of Claim Brief ¶ 13.)

15.     The Unions assert that United Engineering and similar cases should not apply here for three reasons: (1) there is no case law in this Circuit on the issue, (2) United Engineering, 52 F.3d 1386 (6th Cir. 1995), purportedly has been limited by another Sixth Circuit case, and (3) the PBGC has entered into agreements with Delphi and GM which explicitly assume "side agreements" permitting the payment of non-guaranteed benefits, so the statutory scheme that United Engineering was intended to protect purportedly has already been violated, eliminating the rationale for applying the case here. (Opposition Brief ¶¶ 23-33.) These arguments are either not persuasive or incorrect or both.

16.     First, the fact that there is no controlling case law in the Second Circuit does not preclude the Court from following the well-reasoned decisions of other courts. The Unions have not identified a court that has rejected the United Engineering line of cases. In fact, as the Unions are probably aware, the court in United Engineering found the decision of a court within the Second Circuit to be relevant to its analysis. See Int'l Ass'n of Machinists and

6

Aerospace Workers, AFL-CIO, Dist. Lodge No. 157 v. Rome Cable Corp., 810 F. Supp. 402 (N.D.N.Y. 1993)  (precluding union's and participants' recovery against employer for unfunded benefit liabilities under terminated plan because the PBGC and "4049 trustee" had claims against employer for these amounts under now-repealed SEPPAA).

17. Second, the case the Unions cite as purportedly "limiting" United Engineering is irrelevant because it did not involve a terminated, underfunded pension plan taken over by the PBGC.  Int'l Bhd. of Elec. Workers Local 1654 v. L.G. Philips Display Components Co., 137 Fed. Appx 776 (6th Cir. 2005), involved the payment of lump sum benefits under a pension plan, which are not payable under an underfunded plan taken over by the PBGC if they exceed $5,000.  See Int'l Bhd. of Elec. Workers Local 1654 v. L.G. Philips Display Components Co., No. 3:02CV7021, 2006 WL 228897 (N.D. Ohio Jan. 30, 2006) (on remand to District Court, addressing payment of lump sum benefits ranging from $29,000 to more than $100,000); 29 C.F.R. § 4022.7 (limiting PBGC payment of lump sum benefits under terminated, underfunded plans to $5,000 or less).  Accordingly, the question presented here – whether a party other than the PBGC can state a claim against the plan sponsor for unfunded benefit liabilities under a terminated, underfunded pension plan – did not arise and could not have been addressed in *L.G. Philips*.

18. Third, the Unions' argument concerning the payment of non-guaranteed benefits misconstrues the scope of United Engineering and similar cases.  The United Engineering line of cases prevents other parties from competing with the PBGC to collect unfunded benefit liabilities under section 4062(b) of ERISA from the plan sponsor and its controlled group members.  The fact that a third party, in this case GM, has agreed to pay some

7

portion of the non-guaranteed benefits is irrelevant to the legal relationship among the PBGC, the Reorganized Debtors, and the plan participants.

19. The fact that GM may pay non-guaranteed benefits to certain participants in the Delphi HRP has no effect on the PBGC's claim against Delphi Corporation, and so does not undermine the rationale of <u>United Engineering</u>.

C.   <u>Fiduciary Breach Claims</u>

20. The Unions also assert claims under section 502(a)(3) of ERISA for lost benefits under the terminated Delphi HRP as a remedy for alleged breaches of fiduciary duty by the Reorganized Debtors. As explained in the Proofs of Claim Brief, a union is not among the entities listed in section 502(a)(3) of ERISA with standing to assert a claim under that section. (Proofs of Claim Brief ¶ 21.) Even if the Unions had standing, however, these claims must fail because the alleged breaches of fiduciary duty do not involve fiduciary acts of the Reorganized Debtors that are subject to ERISA's fiduciary rules. Moreover, even if fiduciary actions of the Reorganized Debtors had caused different treatment among individuals, the mere fact of different treatment does not give rise to a fiduciary breach. And finally, even if the Unions could state a claim for breach of fiduciary duty, they are not entitled to the relief they seek, because the relief they seek (the payment of money) is not an equitable remedy available under section 502(a)(3) of ERISA.

21. The Unions claim that the Reorganized Debtors breached their fiduciary duties by entering into arrangements with other entities that have caused some participants to be treated better than others. (Opposition Brief ¶ 39.) This occurred, the Unions allege, as a result of the Debtors' decision to spin off certain liabilities of the Delphi HRP to the GM HRP, thereby protecting the participants whose liabilities were moved to the GM HRP from benefit cuts under the terminated Delphi HRP. A breach also occurred, according to the Unions, as a result of GM

8

benefit guarantee agreements between GM and certain unions (other than the Unions) ("Other Unions"), which require GM to make additional payments to Delphi HRP participants who are members of the Other Unions in the event of termination of the Delphi HRP and reduction of benefits. (Opposition Brief ¶¶ 39, 40.) These actions do not give rise to fiduciary breach claims against the Reorganized Debtors because they do not involve fiduciary actions of the Reorganized Debtors.

22. Under ERISA, a person is a fiduciary of a plan only to the extent he or she exercises discretionary authority or control over management of the plan or authority or control over management or disposition of plan assets or has any discretionary authority or responsibility in administering the plan. ERISA § 3(21), 29 U.S.C. § 1002(21). The Supreme Court has repeatedly explained, for example, that a company's decisions to establish, amend, and terminate employee benefit plans are not fiduciary decisions subject to ERISA's fiduciary rules. Curtiss-Wright v. Schoonejongen, 514 U.S. 73 (1995); Lockheed Corp. v. Spink, 517 U.S. 882, 890 (1996); Hughes Aircraft Co. v. Jacobson, 525 U.S. 432, 444 (1999).

23. DPH Holdings Corp., formerly known as Delphi Corporation, served as both sponsor of the Delphi HRP and fiduciary of the HRP. When carrying out fiduciary functions, Delphi Corporation was a fiduciary subject to ERISA's fiduciary requirements, and when carrying out non-fiduciary functions, it was not a fiduciary and was not subject to ERISA's fiduciary requirements.

24. Based on the Supreme Court's distinction between fiduciary decisions and so called "settlor" decisions that are not subject to fiduciary rules, courts have rejected fiduciary breach claims by participants based on the spin-off of assets and liabilities to another plan because an employer making the decision to spin-off plan assets and liabilities does not act as a

9

fiduciary.  See, e.g., Flanigan v. General Elec. Co., 242 F.3d 78, 87-88 (2d Cir.), cert. denied, 534 U.S. 1065 (2001) (decision to spin off business and its pension plan was business decision, not fiduciary decision); Sys. Council EM-3, Int'l Bhd. of Elec. Workers v. AT&T Corp., 159 F.3d 1376, 1380 (D.C. Cir. 1999) (allocating plan assets and liabilities in connection with corporate spin-off is settlor function, not fiduciary decision); United Steel Workers of Am. v. Cyclops Corp., 860 F.2d 189, 202-03 (6th Cir. 1988) (sale of facility together with transfer of pension liabilities of facility employees does not violate section 406 of ERISA).  Thus, Delphi's decision to spin off liabilities of the Delphi HRP was not a fiduciary action subject to ERISA's fiduciary rules that could give rise to a fiduciary breach.

25.    The Unions also assert that the additional payments that GM may make under the GM benefit guarantee agreements with the Other Unions gives rise to a fiduciary breach claim against the Reorganized Debtors because members of the Unions do not receive the same payments.  The additional payments to members of the Other Unions are based on agreements between the Other Unions and GM, not on any action of the Reorganized Debtors, fiduciary or otherwise.  Thus, the additional payments that GM makes pursuant to its agreements cannot support a claim of fiduciary breach against the Reorganized Debtors.

26.    Moreover, even assuming that the different treatment of the Unions' members had been caused by fiduciary acts of the Reorganized Debtors, different treatment, standing alone,  is not a basis for concluding that breaches occurred.  Providing different benefits for different individuals under employee benefit plans is permitted under ERISA.  See, e.g., Coomer v. Bethesda Hosp., Inc., 370 F.3d 499, 507 (6th Cir. 2004) (pension plan permitting payment of benefit in form of lump sum for one participant but not for another was not discrimination under ERISA); McGath v. Auto Body North Shore Inc., 7 F.3d 665, 670-71 (7th

10

Cir. 1993) (amendments to pension plan to prevent employee from becoming eligible for participation did not constitute breach of fiduciary duties under ERISA because "an employer does not act as a fiduciary when it amends or otherwise sets the terms of a plan"); McGann v. H&H Music, 946 F.2d 401, 405-407 (5th Cir. 1991) (plan provision reducing lifetime maximum for AIDs treatment under plan from $1 million to $5,000 adopted after participant received treatment for AIDs under the plan is not illegal discrimination under ERISA).

27.     Finally, even if the Unions could assert a valid claim for fiduciary breach under section 502(a)(3) – which they cannot – they are not entitled to the relief they seek. Section 502(a)(3) permits a court "(A) to enjoin any act or practice which violates any provision of this title [Title I of ERISA] or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan."  The Supreme Court has held that "the term 'equitable relief' in § 502(a)(3) must refer to 'those categories of relief that were *typically* available in equity. . . .'" Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 210 (2002) (emphasis in original) (quoting Mertens v. Hewitt Assoc's, 508 U.S. 248, 256 (1993).

28.     Here, the remedy the Unions seek under section 502(a)(3) of ERISA is "disgorgement of the amounts necessary to assure equal benefit levels to all similarly situated participants."  (Opposition Brief ¶ 22.) Such a remedy was not typically available in equity. Nechis v. Oxford Health Plans, Inc., 421 F.3d 96, 104 (2d Cir. 2005) (noting that remedy such as "disgorgement of ill-gotten gains" involves words of contract, rather than those of equity). Indeed, "'[a]lmost invariably . . . suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for money damages, as that phrase has traditionally been applied, since they seek no more than compensation for loss

11

resulting from the defendant's breach of legal duty." Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. at 210 (internal citations omitted).  The Unions have asked the Court to require the Reorganized Debtors to pay a sum of money to the participants in the Delphi HRP as the remedy for the alleged breach of fiduciary duty under section 502(a)(3) of ERISA.  This remedy is not available under section 502(a)(3) of ERISA and the fiduciary claims should be dismissed.  See Krauss v. Oxford Health Plans, Inc., 517 F.3d 614, 630 (2d Cir. 2008) (recovery not permitted for ERISA breach of fiduciary duty claims under section 502(a)(3) when money damages are sought).

WHEREFORE the Reorganized Debtors respectfully request this Court enter an order (a) sustaining the objections with respect to the Union Claims, (b) disallowing and expunging each Union Claim in its entirety, and (c) granting the Reorganized Debtors such further and other relief as is just.

Dated:    New York, New York
          March 12, 2010

                                      SKADDEN, ARPS, SLATE, MEAGHER
                                          & FLOM LLP

                                      By:    John Wm. Butler, Jr.
                                            John Wm. Butler, Jr.
                                            John K. Lyons
                                            Ron E. Meisler
                                      155 North Wacker Drive
                                      Chicago, Illinois 60606

                                          - and -

                                      By:    Kayalyn A. Marafioti
                                            Kayalyn A. Marafioti
                                      Four Times Square
                                      New York, New York 10036

                                      Attorneys for DPH Holdings Corp., et al.,
                                         Reorganized Debtors