# EXHIBIT F

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                          :
          In re                           :        Chapter 11
                                          :
DELPHI CORPORATION, et al.,               :        Case No. 05-44481 (RDD)
                                          :
                        Debtors.          :        (Jointly Administered)
                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x


FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER
UNDER 11 U.S.C. §§ 1129(a) AND (b) AND FED. R. BANKR. P. 3020
CONFIRMING FIRST AMENDED JOINT PLAN OF REORGANIZATION
OF DELPHI CORPORATION AND CERTAIN AFFILIATES,
<u>DEBTORS AND DEBTORS-IN-POSSESSION, AS MODIFIED</u>

Upon the motion, dated September 6, 2007 (the "Motion"), of Delphi

Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-

in-possession in the above-captioned cases (each, a "Debtor"), for entry of an order

approving (i) the Disclosure Statement (as defined below) filed on September 6, 2007

(Docket No. 9264), as amended and filed on December 10, 2007 (Docket No. 11388), (ii)

a voting record date, voting deadline, and procedures for temporary allowance of certain

claims for voting purposes, (iii) procedures for filing objections to the Plan of

Reorganization filed on September 6, 2007 (Docket No. 9263), as amended and filed on

December 10, 2007 (Docket No. 11386) (the "Amended Plan"), (iv) procedures for

soliciting and tabulating votes on the Amended Plan, (v) a hearing date to consider

confirmation of the Amended Plan, (vi) cure claim procedures, (vii) procedures for

resolving disputes relating to postpetition interest, and (viii) reclamation claim

procedures; and the Amended Plan, as modified by the modifications set forth in Exhibit

A hereto (the "Plan"),[1] a copy of which is attached hereto as Exhibit B; and based upon

the Court's review of  (a) the Gershbein Affidavit Of Mailing With Respect To

Solicitation Materials (the "Gershbein Affidavit") (Docket No. 11974), filed on January

12, 2008, the Sullivan Affidavit Of Mailing With Respect To Solicitation Materials (the

"Sullivan Affidavit") (Docket No. 11981), filed on January 12, 2008, the Declaration of

Eric Kurtzman Regarding Tabulation Of Ballots With Respect To Vote On First

Amended Joint Plan Of Reorganization of Delphi Corporation And Certain Of Its

Subsidiaries And Affiliates (the "Kurtzman Voting Declaration") (Docket No. 12160),

filed on January 16, 2008, and the Declaration of Jane Sullivan Certifying Tabulation Of

---

[1]    Capitalized terms not defined herein shall have the meanings ascribed to them in the Plan.

Ballots Regarding Vote On First Amended Plan Of Reorganization Of Delphi

Corporation And Certain Of Its Subsidiaries And Affiliates (the "Sullivan Voting

Certification") (Docket No. 12163), filed on January 16, 2008, (b) the Memorandum Of

Law (A) In Support Of Confirmation Of The First Amended Joint Plan Of

Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-

Possession And (B) In Response To Objections Thereto, filed by the Debtors on January

16, 2008, (c) the Plan, (d) the Declarations of Robert S. Miller, executed on January 13,

2008 (the "Miller Declaration"), John D. Sheehan, executed on January 13, 2008 (the

"Sheehan Declaration"), David L. Resnick, executed on January 9, 2008 (the "Resnick

Declaration"), Randall S. Eisenberg, executed on January 9, 2008 (the "Eisenberg

Declaration"), Nick Bubnovich, executed on January 9, 2008 (the "Bubnovich

Declaration"), Craig Naylor, executed on January 12, 2008 (the "Naylor Declaration"),

Dean R. Unrue, executed on January 11, 2008 (the "Unrue Declaration"), Keith D. Stipp,

executed on January 11, 2008 (the "Stipp Declaration"), and Colin E. Wittmer, executed

on January 9, 2008 (the "Wittmer Declaration") in support of Confirmation of the Plan, (e)

all of the evidence proffered or adduced at, objections filed in connection with and the

responses filed thereto, and arguments of counsel made at, the Confirmation Hearing (as

defined below), and (f) the entire record of these Chapter 11 Cases; and after due

deliberation thereon and good and sufficient cause appearing therefor,

THE COURT HEREBY FINDS AND CONCLUDES THAT:[2]

A.    <u>Exclusive Jurisdiction; Venue; Core Proceeding (28 U.S.C. §§ 157(b)(2)</u>

<u>and 1334(a))</u>.  The Court has jurisdiction over the Chapter 11 Cases pursuant to 28 U.S.C.

§§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

Confirmation of the Plan is a core proceeding under 28 U.S.C. § 157(b)(2), and the Court

has exclusive jurisdiction to determine whether the Plan complies with the applicable

provisions of the Bankruptcy Code and should be confirmed.

B.    <u>Filing Of Amended Plan</u>.  On December 10, 2007, the Debtors filed the

Amended Plan and the First Amended Disclosure Statement With Respect To First

Amended Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates,

Debtors And Debtors-In-Possession (as transmitted to parties-in-interest, the "Disclosure

Statement").

C.    <u>Solicitation Procedures Order</u>.  On December 10, 2007, the Court entered

an order (the "Solicitation Procedures Order") that, among other things, (i) approved the

Disclosure Statement as containing adequate information within the meaning of section

1125 of the Bankruptcy Code and Fed. R. Bankr. P. 3017 and 2002(c)(3), (ii) fixed

January 17, 2008 as the date for the commencement of the hearing to consider

confirmation of the Amended Plan (the "Confirmation Hearing"), (iii) approved the form

and method of notice of the Confirmation Hearing (the "Confirmation Hearing Notice"),

and (iv) established certain procedures for soliciting and tabulating votes with respect to

the Amended Plan.  In accordance with the Solicitation Procedures Order, on December

---

[2]    Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as
findings of fact when appropriate.  Fed. R. Bankr. P. 7052.

28, 2007, the Debtors filed modifications to certain plan exhibits filed on or before

December 10, 2007 and filed certain other exhibits to the Amended Plan.

   D.  <u>Transmittal Of Solicitation Package</u>. On or before December 15, 2007, in

accordance with Fed. R. Bankr. P. 3017(d), (e) and (f) and the Solicitation Procedures

Order, the Debtors caused Kurtzman Carson Consultants LLC ("KCC") and Financial

Balloting Group LLC ("FBG") or their agents to transmit (i) the Confirmation Hearing

Notice, (ii) a CD-Rom containing (1) the Solicitation Procedures Order (without exhibits),

(2) the Disclosure Statement and publicly-filed materials appended thereto, (3) the

Amended Plan and publicly-filed materials appended thereto, (4) the solicitation letter of

the official committee of unsecured creditors (the "Creditors' Committee Letter"), and (5)

the solicitation letter of the official committee of equity security holders (the "Equity

Committee Letter"), (iii) paper copies of the Creditors' Committee Letter and Equity

Committee Letter, (iv) paper copies of the UAW informational letter to its members who

received ballots ("UAW Informational Letter"), (v) paper copies of the Postpetition

Interest Rate Determination Notice for all holders of General Unsecured Claims, other

than Senior Note Claims and TOPrS Claims, (vi) as to Classes 1C-12C, 1D-12D, 1E, 1G-

1, 1G-2, 1H and 8H  (collectively, the "Voting Classes"), a paper ballot and return

envelope (such ballot and envelope being referred to as a "Ballot"), and (vii) to the extent

appropriate as determined by the Debtors, an Internal Revenue Service form W-9

(Request for Taxpayer Identification Number and Certification) or form W-8BEN to be

returned with a party's ballot, all as set forth in the Gershbein Affidavit and Sullivan

Affidavit.  In addition, and in accordance with Fed. R. Bankr. P. 3017(d), (e) and (f) and

the Solicitation Procedures Order, as to Classes 1A-12A, 1B-12B, and 1J-12J, a paper

Notice To Unimpaired Creditors Of (I) Filing Of Joint Plan Of Reorganization, (II)
Treatment Of Claims Under Plan, (III) Hearing On Confirmation Of Plan, And (IV)
Deadline And Procedures For Filing Objections Thereto ("Unimpaired Creditors Notice")
was transmitted as set forth in the Gershbein Affidavit.  Further, and in accordance with
Fed. R. Bankr. P. 3017(d), (e) and (f) and the Solicitation Procedures Order, as to Class
1I, a paper Notice Of Non-Voting Status With Respect To Certain Claims And Interests
("Notice of Non-Voting Status") was transmitted as also set forth in the Gershbein
Affidavit.

      E.     Publication Of Confirmation Hearing Notice.  The Debtors published the
Confirmation Hearing Notice in the New York Times (national edition), the Wall Street
Journal (national, European, and Asian editions), USA Today (worldwide), the
Automotive News (national edition), and in local editions of the following: the Adrian
Daily Telegram, the Arizona Daily Star, the Buffalo News, the Chicago Sun Times, the
Cleveland Plain Dealer, the Clinton News, the Columbus Dispatch, the Daily Leader, the
Dayton Daily News, the Detroit Free Press, the Detroit News , the El Paso Times, the
Fitzgerald Herald Leader, The Flint Journal, the Gadsden Times, the Grand Rapids Press,
the Greensville News, the Indianapolis Star, the Kansas City Star, the Kokomo Tribune,
the Lansing State Journal, the Laurel Leader, the Los Angeles Daily News, the
Milwaukee Journal Sentinel, the Mobile Beacon, The Mobile Register, the Oakland Press,
the Olathe Daily News, the Rochester Democrat and Chronicle, the Saginaw News, the
Sandusky Register, the Toledo Blade, the Tribune Chronicle, the Tulsa World, the
Tuscaloosa News, and The Vindicator, on or before December 24, 2007 as evidenced by

the affidavits of publication of confirmation hearing notice, filed by individuals on behalf
of each of the listed publications.[3]

      F.    <u>Transmittal And Mailing Of Materials; Notice</u>.  Due, adequate, and
sufficient notice of the Disclosure Statement and Plan and of the Confirmation Hearing,
as well as all deadlines for voting on or filing objections to the Amended Plan, has been
given to all known holders of Claims and Interests in accordance with Fed. R. Bankr. P.
2002(b), 3017(d), (e), and (f), and the procedures set forth in the Solicitation Procedures
Order.  The Disclosure Statement, Amended Plan, Ballots, Solicitation Procedures Order,
Confirmation Hearing Notice, Unimpaired Creditors Notice, Notice of Non-Voting Status,
Creditors' Committee Letter, Equity Committee Letter, UAW Informational Letter, and
Postpetition Interest Rate Determination Notice were transmitted and served in
substantial compliance with the Solicitation Procedures Order and the Bankruptcy Rules,
and such transmittal and service were adequate and sufficient.  Adequate and sufficient
notice of the Confirmation Hearing, cure claim procedures, postpetition interest rate
dispute procedures, reclamation claim procedures, injunctions and third party releases,
bar dates, and other hearings described in the Solicitation Procedures Order was given in
compliance with the Bankruptcy Rules and the Solicitation Procedures Order, and no
other or further notice is or shall be required.

      G.    <u>Bankruptcy Rule 3018(a) Stipulations</u>.  Prior to the Confirmation Hearing,
four motions were filed for temporary allowance of claims for voting purposes pursuant
to Bankruptcy Rule 3018(a) (the "3018(a) Motions").  The 3018(a) Motions include:  (1)

---

[3]    The affidavits are found at docket numbers 11675, 11786, 11845, 11659, 11657, 11658, 11660, 11661, 11775, 11844, 11662, 11774, 11663, 11776, 11776, 11664, 11665, 11777, 11778, 11666, 11779, 11667, 11668, 11780, 11670, 11671, 11672, 11673, 11782, 11674, 11677, 11678, 11680, 11783, 11784, 11784, 11684, 11682, 11683, and 11785.

Bank of America, N.A, (Docket No. 9683), (2) Technology Properties, Inc. (Docket No. 10425), (3) Fiduciary Counselors, Inc. (Docket No. 11618), and (4) SPCP Group, L.L.C. (Docket No. 11625).

H.      Solicitation.  Votes for acceptance or rejection of the Amended Plan were solicited in good faith and complied with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, the Disclosure Statement, the Solicitation Procedures Order, all other applicable provisions of the Bankruptcy Code, and all other applicable rules, laws, and regulations.

I.      Ballots.  All procedures used to distribute solicitation materials to the applicable holders of Claims and Interests and to tabulate the Ballots were fair and conducted in accordance with the Solicitation Procedures Order, the Bankruptcy Code, the Bankruptcy Rules, the local rules of the Bankruptcy Court for the Southern District of New York, and all other applicable rules, laws, and regulations.

J.      Voting Reports.  On January 16, 2008, in accordance with the Solicitations Procedures Order, the Debtors filed the Kurtzman Voting Declaration (Docket No. 12160) and Sullivan Voting Certification (Docket No. 12163) (together, the "Voting Reports"), certifying the method and results of the Ballot tabulation for each of the Voting Classes voting to accept or reject the Plan.

K.      Impaired Classes That Have Voted To Accept The Plan.  As evidenced by the Voting Reports, which certified both the method and results of the voting, pursuant to the requirements of sections 1124 and 1126 of the Bankruptcy Code, at least one Impaired Class of Claims, determined without including any acceptance by an insider of any of the Debtors, has voted to accept the Plan.

7

L.    <u>Classes Deemed To Have Rejected The Plan</u>. Holders of Interests in Class 1I are not entitled to receive any distribution under the Plan on account of their Interests. Pursuant to section 1126(g) of the Bankruptcy Code, Class 1I is conclusively presumed to have rejected the Plan, and votes from those interest holders therefore were not solicited.

M.    <u>Burden Of Proof</u>.  The Debtors, as proponents of the Plan, have met their burden of proving the elements of sections 1129(a) and (b) of the Bankruptcy Code, by a preponderance of the evidence, which is the applicable evidentiary standard in the Court. The Court also finds that the Debtors have satisfied the elements of sections 1129(a) and (b) of the Bankruptcy Code under the clear and convincing standard of proof.

N.    <u>Plan Compliance With Bankruptcy Code (11 U.S.C. § 1129(a)(1))</u>.  The Plan complies with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

1.    <u>Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1))</u>.  In addition to Administrative Claims and Priority Tax Claims (which are not required to be classified), Article III of the Plan designates 37 Classes of Claims and five Classes of Interests.  The Claims and Interests placed in each Class are substantially similar to other Claims or Interests in each such Class.  Valid business, factual, and legal reasons exist for classifying the various Classes of Claims and Interests in the manner set forth in the Plan, and such Classes do not unfairly discriminate between holders of Claims or Interests. Thus, the Plan satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

2.    <u>Specification Of Unimpaired Classes (11 U.S.C. § 1123(a)(2))</u>. Article 4.1 of the Plan specifies the Classes of Claims that are Unimpaired.  Thus, the Plan satisfies section 1123(a)(2) of the Bankruptcy Code.

3.      Specification Of Treatment Of Impaired Classes (11 U.S.C. § 1123(a)(3)).  Article 4.2 of the Plan specifies the Classes of Claims and Interests that are Impaired under the Plan.  Article V of the Plan specifies the treatment of Claims and Interests in all such Classes.  Thus, the Plan satisfies section 1123(a)(3) of the Bankruptcy Code.

4.      No Discrimination (11 U.S.C. § 1123(a)(4)).  The Plan provides for the same treatment for each Claim in each respective Class unless the holder of a particular Claim has agreed to less favorable treatment with respect to such Claim.  Thus, the Plan satisfies section 1123(a)(4) of the Bankruptcy Code.

5.      Implementation Of Plan (11 U.S.C. § 1123(a)(5)).  The Plan provides adequate and proper means for implementation of the Plan, including, without limitation, (i) the continued corporate existence of the Debtors, (ii) the corporate constituent documents that will govern the Reorganized Debtors after the Effective Date, including, without limitation, the Certificate of Incorporation and Bylaws, (iii) entry into the Exit Financing Arrangements and Registration Rights Agreement, (iv) issuance of the New Common Stock, New Preferred Stock, New Warrants, GM Note, and 414(l) Note (v) assumption of the collective bargaining agreements, as amended, (vi) consummation of the Restructuring Transactions, and the transactions contemplated by the Investment Agreement and the Delphi-GM Definitive Documents, and (vii) the execution, delivery, filing, or recording of all contracts, instruments, releases, indentures, and other agreements or documents related to the foregoing.  Thus, the Plan satisfies section 1123(a)(5) of the Bankruptcy Code.

6.      <u>Prohibition Against Issuance Of Non-Voting Equity Securities And Provisions For Voting Power Of Classes Of Securities (11 U.S.C. § 1123(a)(6))</u>. Article 7.4 of the Plan provides that the articles of incorporation of the Reorganized Debtors will comply with section 1123(a)(6) of the Bankruptcy Code.  Such statutory provisions have been incorporated into the articles of incorporation of Reorganized Delphi, as set forth in Plan Exhibit 7.4(a).

7.      <u>Selection Of Officers, Directors, And The Trustee (11 U.S.C. § 1123(a)(7))</u>.  In Article 7.5, Article 7.6, and Article 7.7 of the Plan, as identified publicly prior to the Confirmation Hearing, or as otherwise announced at the Confirmation Hearing, the Debtors properly and adequately disclosed or otherwise identified the procedures for determining the identity and affiliations of all individuals or entities proposed to serve on or after the Effective Date as officers or directors of the Reorganized Debtors.  The appointment or employment of such individuals or entities and the proposed compensation and indemnification arrangements for officers and directors are consistent with the interests of Claim and Interest holders and with public policy.  Thus, section 1123(a)(7) of the Bankruptcy Code is satisfied.

8.      <u>Additional Plan Provisions (11 U.S.C. § 1123(b))</u>.  The Plan's provisions are appropriate and consistent with the applicable provisions of the Bankruptcy Code, including, without limitation, provisions for (i) distributions to holders of Claims and Interests, (ii) the disposition of executory contracts and unexpired leases, (iii) approval of and authorization for entrance into the Delphi-GM Definitive Documents, (iv) amendment and assumption of the Union Settlement Agreements, (v) performance of the Debtors' obligations under the Investment Agreement, (vi) the retention of, and right

10

to enforce, sue on, settle, or compromise (or refuse to do any of the foregoing with respect to) certain claims or causes of action against third parties, to the extent not waived and released under the Plan, (vii) resolution of Disputed Claims, (viii) allowance of certain Claims, (ix) indemnification obligations, (x) releases by the Debtors of certain parties, (xi) releases by holders of Claims and Interests, (xii) releases by Unions, (xiii) releases of GM-Related Parties (as defined in the Delphi-GM Global Settlement Agreement) by the Debtors and third parties, (xiv) releases and exculpation of each Plan Investor (in its capacity as such or otherwise), its Affiliates, shareholders, partners, directors, officers, employees and advisors, and (xv) the exculpation of certain parties.

9.    <u>Fed. R. Bankr. P. 3016(a)</u>.  The Plan is dated and identifies the entities submitting it, thereby satisfying Fed. R. Bankr. P. 3016(a).

O.    <u>Debtors' Compliance With Bankruptcy Code (11 U.S.C. § 1129(a)(2))</u>. The Debtors have complied with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(2) of the Bankruptcy Code.  Specifically, the Debtors are proper debtors under section 109 of the Bankruptcy Code and proper proponents of the Plan under section 1121(a) of the Bankruptcy Code.  The Debtors have complied with the applicable provisions of the Bankruptcy Code during the Chapter 11 Cases, including as provided or permitted by orders of the Court.  The Debtors have complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Solicitation Procedures Order in transmitting the Plan, the Disclosure Statement, the Ballots, and related documents and notices, and in soliciting and tabulating votes on the Plan.

P.    <u>Plan Proposed In Good Faith (11 U.S.C. § 1129(a)(3))</u>.  The Debtors have proposed the Plan in good faith and not by any means forbidden by law, thereby

satisfying section 1129(a)(3) of the Bankruptcy Code.  In determining that the Plan has

been proposed in good faith, the Court has examined the totality of the circumstances

surrounding the filing of the Chapter 11 Cases and the formulation of the Plan.  See

Bankruptcy Rule 3020(b).  The Debtors, the Statutory Committees, GM and each Plan

Investor (in its capacity as such or otherwise), and their respective Affiliates,

shareholders, partners, directors, officers, employees, and advisors, among others, and

each of their respective professionals negotiated the Plan in good faith and participated in

the Plan formulation process in good faith.  The Chapter 11 Cases were filed, and the

Plan was proposed, with the legitimate and honest purpose of reorganizing and

maximizing the value of each of the Debtors and the recovery to holders of Claims and

Interests under the circumstances of these cases.

        Q.      <u>Payments For Services Or Costs And Expenses (11 U.S.C. § 1129(a)(4))</u>.

Based on modifications to the Plan, attached hereto as <u>Exhibit A</u>, any payment made or to

be made by the Debtors for services or for costs and expenses in connection with the

Chapter 11 Cases, including all administrative expense and substantial contribution

claims under sections 503 and 507 of the Bankruptcy Code, or in connection with the

Plan and incident to the Chapter 11 Cases, has been approved by, or is subject to the

approval of, the Court as reasonable, thereby satisfying section 1129(a)(4) of the

Bankruptcy Code.  Any amounts allocated by the Debtors for the payment of such

services, costs, and expenses, or any recoveries or disgorgements subsequently ordered

by the Court on account of payments to professionals prior to final allowance of such

amounts shall constitute assets owned exclusively by the Reorganized Debtors except as

otherwise provided in Section 10.3(c) of the Plan. Accordingly, the requirements of

section 1129(a)(4) of the Bankruptcy Code have been met.

      R.     <u>Directors, Officers, And Insiders (11 U.S.C. § 1129(a)(5))</u>. The Debtors

have complied with section 1129(a)(5) of the Bankruptcy Code. Specifically, the Debtors

have disclosed the identity and the affiliation of all of the initial officers of the

Reorganized Debtors and the directors (as applicable) for all Reorganized Debtors, with

the exception of Reorganized Delphi. The process for the selection of the directors of

Reorganized Delphi is described in Article 7.5 of the Plan and is approved. On

December 10, 2007, the Debtors filed Plan Exhibit 7.8 which described the Reorganized

Debtors' Management Compensation Plan, including the objectives and philosophy of the

compensation plan, the elements of various employees' compensation, and management

performance. Thereafter, the Debtors filed (i) a supplement to the Management

Compensation Plan on December 28, 2007 and (ii) modifications to Plan Exhibit 7.8 on

January 16, 2008 and January 23, 2008 (the "Article 7.8 Modifications"), which are

included with the Plan modifications attached hereto as <u>Exhibit A</u>. The Creditors'

Committee has agreed that the requirements of Article 7.8 of the Plan have been satisfied.

The Management Compensation Plan described in Plan Exhibit 7.8 (and as described in

Section 9(a)(xxi) of the Investment Agreement), are reasonably acceptable to ADAH.

The Debtors have fully disclosed compensation to be paid to management in Plan Exhibit

7.8. The appointment to, or continuance in, such office of each such individual, is

consistent with the interests of holders of Claims and Interests, and with public policy.

Accordingly, the requirements of section 1129(a)(5) of the Bankruptcy Code have been

met.

S.        No Rate Changes (11 U.S.C. § 1129(a)(6)). Section 1129(a)(6) of the
Bankruptcy Code is satisfied because the Plan does not provide for any change in rates
over which a governmental regulatory commission has jurisdiction.

T.        Best Interests Test (11 U.S.C. § 1129(a)(7)).  The Plan satisfies section
1129(a)(7) of the Bankruptcy Code.  The liquidation analysis in Appendix E to the
Disclosure Statement, the Eisenberg Declaration, and other evidence proffered or
adduced at the Confirmation Hearing (1) are persuasive, credible, and accurate as of the
dates such evidence was prepared, presented, or proffered, (2) either have not been
controverted by other persuasive evidence or have not been challenged, (3) are based
upon reasonable and sound assumptions, (4) provide a reasonable estimate of the
liquidation values of the Debtors upon conversion to a case under chapter 7 of the
Bankruptcy Code, and (5) establish that each holder of a Claim or Interest in an Impaired
Class that has not accepted the Plan will receive or retain under the Plan, on account of
such Claim or Interest, property of a value, as of the Effective Date of the Plan, that is not
less than the amount that it would receive if the Debtors were liquidated under chapter 7
of the Bankruptcy Code on such date.

U.        Acceptance By Impaired Classes (11 U.S.C. § 1129(a)(8)).  With the
exception of Class 6C, all voting Impaired Classes have voted to accept the Plan.  Further,
Class 1I is deemed to have rejected the Plan and, accordingly, confirmation is sought
pursuant to 11 U.S.C. § 1129(b).

V.        Treatment Of Administrative And Priority Tax Claims (11 U.S.C. §
1129(a)(9)).  The treatment of Administrative Claims under the Plan satisfies the
requirements of section 1129(a)(9)(A) and (B) of the Bankruptcy Code, and the treatment

14

of Priority Tax Claims under the Plan satisfies the requirements of section 1129(a)(9)(C) of the Bankruptcy Code.

       W.     Acceptance By Impaired Class (11 U.S.C. § 1129(a)(10)). Each Impaired Class of Claims other than those listed in paragraph U above has voted to accept the Plan and, to the best of the Debtors' knowledge, do not contain "insiders," as such term is defined in 11 U.S.C. § 101(31). Thus, the Plan satisfies section 1129(a)(10) of the Bankruptcy Code.

       X.     Feasibility (11 U.S.C. § 1129(a)(11)). The Plan satisfies section 1129(a)(11) of the Bankruptcy Code. The financial projections in Appendix C to the Disclosure Statement, the Sheehan Declaration, and other evidence proffered or adduced at the Confirmation Hearing (1) are persuasive and credible, (2) have not been controverted by other evidence or sufficiently challenged in any of the objections to the Plan, (3) establish the ability of the Debtors to pay their debts as they mature, and (4) establish that subject to, and upon consummation of, the transactions set forth as conditions to the Effective Date in Article 12.2 of the Plan, the Plan is feasible and that confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtors or the Reorganized Debtors. Specifically, based on the Court's entry of the Order Under 11 U.S.C. § 363 and Fed. R. Bankr. P. 2002, 6004, 9006, and 9007 Authorizing Debtors' Entry into Exit Facility Engagement and Fee Letters and Performance Thereunder ("Exit Financing Order") (Docket No. 10960), the uncontroverted evidence proffered or adduced at the Confirmation Hearing, and the requirement of consummation of the Exit Financing Arrangements as a condition

to the Effective Date, the Court finds that the Plan is feasible, notwithstanding that a firm

commitment for exit financing was not entered into as of the Confirmation Hearing.

      Y.    <u>Payment Of Fees (11 U.S.C. § 1129(a)(12))</u>.  The Debtors have paid, or

pursuant to Sections 1.2, 2.1, and 14.2 of the Plan will pay by the Effective Date, fees

payable under 28 U.S.C. § 1930 plus accrued interest under 31 U.S.C. § 3717.  Thus, the

Plan satisfies section 1129(a)(12) of the Bankruptcy Code.

      Z.    <u>Continuation Of Retiree Benefits (11 U.S.C. § 1129(a)(13))</u>. As required

by section 1129(a)(13) of the Bankruptcy Code, and in connection with the authorization

of the Delphi-GM Definitive Documents as set forth in section 7.20 of the Plan and the

assumption of the collective bargaining agreements as set forth in section 7.21 of the Plan,

following the Effective Date of the Plan, the payment of all retiree benefits (as defined in

section 1114 of the Bankruptcy Code) will continue at the levels established pursuant to

subsections (e)(1)(B) or (g) of section 1114 of the Bankruptcy Code, at any time prior to

the entry of this Confirmation Order, for the duration of the periods the Debtors have

obligated themselves to provide such benefits, thereby satisfying section 1129(a)(13) of

the Bankruptcy Code; <u>provided</u>, <u>however</u>, that during the Chapter 11 Cases,

modifications to certain retiree benefits were made solely in accordance with the terms of

the existing retiree benefit plans, and not as a result of subsections (e)(1)(B) or (g) of

section 1114 of the Bankruptcy Code.

      AA.    <u>Non-Applicability Of Sections 1129(a)(16)</u>.  Section 1129(a)(16) does not

apply because each of the Debtors is a moneyed, business or commercial corporation or

limited liability company.

16

BB.    Section 1129(b)-Confirmation Of The Plan Over Nonacceptance Of

Impaired Classes.  All voting Impaired Classes voted to accept the Plan, other than those

Classes identified in paragraph U above.  Pursuant to section 1129(b) of the Bankruptcy

Code, the Plan may be confirmed notwithstanding that not all Impaired Classes have

voted to accept the Plan.  All of the requirements of section 1129(a) of the Bankruptcy

Code other than section 1129(a)(8), with respect to such Classes, have been met.

Specifically, Class 6C voted to reject the Plan and Class 1I is deemed to have rejected the

Plan pursuant to 11 U.S.C. § 1126(g).  With respect to Class 6C, the Plan is fair and

equitable and does not discriminate unfairly against the holders of Class 6C claims.

Holders of Class 6C claims will receive property at least equal to the full amount of its

claim with postpetition interest.  With respect to Class 1I, no holders of Claims or

Interests junior to the holders of such Class will receive or retain any property under the

Plan on account of such Claims or Interests, and, as evidenced by the valuations and

estimates contained in the Disclosure Statement and admitted into evidence at the

Confirmation Hearing, no Class of Claims or Interests senior to such Class is receiving

more than full payment on account of such Claims or Interests.  No Class of Interests is

of the same or equal priority as Class 1I.  Accordingly, the Plan is fair and equitable and

does not discriminate unfairly, as required by section 1129(b) of the Bankruptcy Code,

and section 1129(b) of the Bankruptcy Code therefore is satisfied.

CC.    Principal Purpose Of Plan (11 U.S.C. § 1129(d)).  The principal purpose

of the Plan is not the avoidance of taxes or the avoidance of the application of section 5

of the Securities Act of 1933 (15 U.S.C. § 77e).  Accordingly, the Plan satisfies the

requirements of section 1129(d) of the Bankruptcy Code.

DD.    Modifications To The Plan.  The modifications to the Amended Plan described and/or set forth beginning on Exhibit A hereto constitute non-material or technical changes and/or changes with respect to particular Claims or Interests by agreement with holders of such Claims or Interests, and do not materially adversely affect or change the treatment of any Claims or Interests.  Accordingly, pursuant to Bankruptcy Rule 3019, these modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or re-solicitation of votes under section 1126 of the Bankruptcy Code, nor do they require that holders of Claims or Interests be afforded an opportunity to change previously cast acceptances or rejections of the Amended Plan.

EE.    Good Faith Solicitation (11 U.S.C. § 1125(e)).  The Debtors and their agents, representatives, attorneys, and advisors, and other Persons involved in the solicitation process have solicited votes on the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code and the Solicitation Procedures Order and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the exculpation provisions set forth in Section 11.11 of the Plan.

FF.    The Reorganized Debtors Will Not Be Insolvent Nor Left With Unreasonably Small Capital.  As of the occurrence of the Effective Date and after taking into account the transactions contemplated by the Plan, on a consolidated basis (a) the present fair saleable value of the property of the Reorganized Debtors will be not less than the amount that will be required to pay the probable liabilities on the Reorganized Debtors' then-existing debts as they become absolute and matured considering all financing alternatives and potential asset sales reasonably available to the Reorganized

18

Debtors and (b) the Reorganized Debtors' capital is not unreasonably small in relation to their business or any contemplated or undertaken transaction.

GG.    <u>Valuation</u>.  The valuation analysis appended to the Disclosure Statement as Appendix D (the "Valuation Analysis") and the implied total enterprise value, as described in the Resnick Declaration and Exhibits D and E thereto, are reasonable.

HH.    <u>Executory Contracts</u>.  The Debtors have exercised reasonable business judgment in determining whether to assume or reject each of their executory contracts and unexpired leases as set forth in Article VIII of the Plan.  Each assumption or rejection of an executory contract or unexpired lease as provided in Article 8.1 of the Plan shall be legal, valid, and binding upon the applicable Reorganized Debtor and all non-Debtor parties to such executory contract or unexpired lease, all to the same extent as if such assumption or rejection had been effectuated pursuant to an appropriate authorizing order of the Court entered before the Confirmation Date under section 365 of the Bankruptcy Code.

II.    <u>Adequate Assurance</u>.  The Debtors have cured, or provided adequate assurance that the Reorganized Debtors will cure, defaults (if any) under or relating to each of the Assumed Contracts and Leases which are being assumed by the Debtors pursuant to the Plan.

JJ.    <u>Conditions To Confirmation</u>.  The conditions to Confirmation set forth in Article 12.1 of the Plan have been satisfied, waived, or will be satisfied by entry of this Confirmation Order.

KK.    <u>Conditions To Consummation</u>.  The conditions to the Effective Date are set forth in Article 12.2 of the Plan.  Certain conditions to the Effective Date set forth in

Article 12.2 of the Plan may be waived as set forth in section 12.3 of the Plan, without any further notice to parties-in-interest or the Court and without a hearing except as otherwise provided in section 12.3 of the Plan.

LL.    <u>Retention Of Jurisdiction</u>.  The Court properly may retain jurisdiction over the matters set forth in Article XIII of the Plan.

MM.    <u>Agreements And Other Documents</u>.  The Debtors have made adequate and sufficient disclosure of:  (1) the adoption of new or amended and restated certificates of incorporation and bylaws or similar constituent documents for the Reorganized Debtors, (2) the distributions to be made pursuant to the Plan, (3) the issuance for distribution, in accordance with the terms of the Plan, of the New Common Stock, New Preferred Stock, New Warrants, GM Note, and 414(l) Note, (4) the Investment Agreement, (5) the Delphi-GM Definitive Documents, (6) the MDL Settlements, (7) the memoranda of understanding with the Unions, (8) the adoption, execution, delivery, and implementation of all contracts, leases, instruments, releases, and other agreements or documents related to any of the foregoing, (9) the adoption, execution, and implementation of employment and indemnification agreements, the Management Compensation Plan, and other employee plans and related agreements, and (10) the other matters provided for under the Plan involving the corporate structure of the Reorganized Debtors.

NN.    <u>TOPrS Subordination Provision</u>. Under the Plan, Senior Debt is to be paid in full based on the negotiated Plan value and the subordination provisions of the TOPrS Indenture are accordingly deemed to have been effectuated as between the holders of the TOPrS and the holders of Senior Debt, and thus, are deemed satisfied.  The distributions afforded to the holders of TOPrS under the Plan comply with the subordination

provisions because the TOPrS receive the distributions remaining after other holders of

claims in Class C (General Unsecured Claims) are paid in full with postpetition interest

(as required by the TOPrS Indenture).  Moreover, because of the settlement nature of the

Plan, the deemed satisfaction of the TOPrS subordination provision is proper.  In addition,

because the Senior Notes and the TOPrS, if treated as being in separate classes as

permitted under Article 14.3 of the Plan, voted to accept the Plan under section 1126 of

the Bankruptcy Code, the Senior Notes, as a class, and the TOPrS, as a class, have each

agreed to the treatment under the Plan and are not entitled to any different or additional

recovery under the Plan, and are not entitled to the treatment specified in section 1129(b)

of the Bankruptcy Code.

OO.    Exit Financing Arrangements.  The Plan provides for the Exit Financing

Arrangements on the terms and conditions set forth in Exhibit 7.14 to the Plan, or in a

form substantially similar thereto.  The Debtors have provided sufficient and adequate

notice of the Exit Financing Arrangements.  All documents necessary to implement the

Plan including, without limitation, those associated with the Exit Financing

Arrangements, shall, upon execution, be valid, binding, and enforceable agreements and

not be in conflict with any federal or state law.

PP.    Investment Agreement.  The Investment Agreement is an essential

element of the Plan and entry into and consummation of the Investment Agreement is in

the best interests of the Debtors, their estates, and their creditors and is approved in all

respects, as reflected in the Court's previous orders dated August 2, 2007 and December

10, 2007 authorizing and approving the Debtors' entrance into the Delphi-Appaloosa

Equity Purchase and Commitment Agreement and subsequent amendment thereto

21

(Docket Nos. 8856 and 11382), which orders are incorporated herein by reference. The investment being made by the Plan Investors pursuant to, and subject to the terms and conditions of, the Investment Agreement represents reasonably equivalent value for the consideration the Plan Investors are receiving under the Plan. Each Plan Investor (in its capacity as such or otherwise), its Affiliates, shareholders, partners, directors, officers, employees, and advisors, has acted in good faith in connection with the Chapter 11 Cases and the formulation and confirmation of the Plan.

QQ.    Delphi-GM Definitive Documents. The Debtors' settlement with GM, as memorialized in the Plan and the Delphi-GM Definitive Documents (the "GM Settlement"), is essential to the Plan and provides material and substantial consideration to Delphi, which allows Delphi to provide material and substantial distributions to stakeholders that would be impossible to deliver without the GM Settlement. As adequately described in Section V.F. of the Disclosure Statement, the Debtors underwent an extensive investigation and analysis of their claims and potential claims against GM and certain defenses to claims that might be asserted by GM against the Debtors' estates (the "GM Claims and Defenses") and determined that the consensual resolution of the GM Claims and Defenses as set forth in the Delphi-GM Definitive Documents is essential to the reorganization, in the best interest of the Debtors' estates, and superior to any alternative under which the Debtors would seek to pursue the GM Claims and Defenses through proceedings adversarial to GM. As adequately described in Section IX.B.1 of the Disclosure Statement, absent the GM Settlement, the Debtors would not be able to provide meaningful distributions to junior stakeholders or a par plus accrued recovery at Plan Equity Value for holders of unsecured claims. Pursuant to Bankruptcy

Rule 9019, which is made applicable to the determination of the reasonableness of a settlement included within a plan as permitted under section 1123(b)(3)(A) of the Bankruptcy Code, and based on the admitted evidence and considerations by the Court of the probability of success, the difficulties in collection, the complexity of the litigation, the expense, inconvenience and delay, and other factors, the Court finds:

1.    the proposed recoveries achieved by the Debtors' estates, creditors, and equity holders as a result of the GM Settlement are higher than reasonably foreseeable litigation outcomes in the absence of the GM Settlement and therefore fall within the range of reasonableness;

2.    any litigation against GM in the absence of the GM Settlement would be very complex and very time consuming, with the attendant expense, inconvenience, and delay to the Debtors' estates;

3.    the GM Settlement is supported by both statutory committees appointed in these Chapter 11 Cases;

4.    as discussed in more detail in section SS of this Confirmation Order, the releases of the GM-Related Parties (as defined in the Delphi-GM Global Settlement Agreement) pursuant to the Plan and the GM Settlement are fair and equitable; and

5.    the GM Settlement is the product of good faith negotiations and arm's-length bargaining between the parties, all of whom were represented by competent and experienced counsel and other advisors, and is necessary to the Plan.

RR.    <u>Union Settlement Agreements</u>.  The Union Settlement Agreements are essential to the Plan and the assumption of the Union Settlement Agreements is in the

best interests of the Debtors, their estates, and their creditors and is approved in all

respects, as reflected in the Court's previous orders on July 19, 2007, August 16, 2007,

and August 29, 2007, authorizing and approving the Debtors' entry into the Union

Settlement Agreements (Docket Nos. 8693, 9106, 9107, and 9169).  The Debtors have

exercised reasonable business judgment in determining to enter into the Union Settlement

Agreements as set forth in Exhibits 7.21(a)-(d) to the Plan.  The Debtors have provided

sufficient and adequate notice of the Union Settlement Agreements to all parties-in-

interest, including, without limitation, the Creditors' Committee, the Equity Committee,

the Plan Investors, and GM.  Each Union has acted in good faith in connection with the

Chapter 11 Cases and the formulation and confirmation of the Plan.

SS.    Releases And Discharges.

1.    In General.  The discharge, release, indemnification, and

exculpation provisions set forth in Article XI of the Plan constitute good faith

compromises and settlements of the matters covered thereby.  Such compromises and

settlements are made in exchange for consideration and are in the best interests of the

Debtors, their Estates, and holders of Claims and Interests, are fair, equitable, reasonable,

and are integral elements of the restructuring and resolution of the Chapter 11 Cases in

accordance with the Plan.  Each of the discharge, release, indemnification, and

exculpation provisions set forth in the Plan:

(a)    is within the jurisdiction of the Court under 28 U.S.C. §§

1334(a), (b), and (d),

(b)    is an essential means of implementing the Plan pursuant to

section 1123(a)(5) of the Bankruptcy Code,

    (c)  is an integral element of the settlements and transactions incorporated into the Plan,

    (d)  confers material benefit on, and is in the best interests of, the Debtors, their estates, and the holders of Claims and Interests,

    (e)  is important to the overall objectives of the Plan to finally resolve all Claims among or against the parties-in-interest in the Chapter 11 Cases with respect to the Debtors, their organization, capitalization, operation, and reorganization, and

    (f)  is consistent with 11 U.S.C. §§ 105, 1123, and 1129, and other applicable provisions of the Bankruptcy Code.

The failure to effect the discharge, release, indemnification, and exculpation provisions described in Article XI of the Plan would seriously impair the Debtors' ability to confirm the Plan.

    2.  Release and Exculpation of Plan Investors.  The releases and exculpation of each Plan Investor (in its capacity as such or otherwise, as set forth in Article 11.8 of the Plan), its Affiliates, shareholders, partners, directors, officers, employees, and advisors, set forth in Article 11.8 of the Plan by the Debtors and third parties (the "Plan Investor Releases") are a condition to the consummation of the transaction contemplated in the Investment Agreement and, thus, are necessary to the Debtors' reorganization and play an important part in the Plan.  The Plan Investor Releases are fair and equitable, reasonable, and in the best interests of the Debtors, their estates, shareholders, creditors, and all parties-in-interest, and are an integral component of the Plan and the restructuring and resolution of the Chapter 11 Cases.  More

specifically, factors which support approval of the Plan Investor Releases include, without limitation:

(a)    The investment made by the Plan Investors pursuant to, and subject to the terms and conditions of, the Investment Agreement constitutes a material, substantial contribution to the Debtors' estates;

(b)    The Plan Investors' contribution is necessary and integral to the success of the Plan because the Plan Investors' investment provides a substantial source of funds to the Debtors' estates and allows substantial distributions to be made to holders of Claims and Interests, which could not be made without the Plan Investors' investment pursuant to, and subject to the terms and conditions of, the Investment Agreement;

(c)    The Plan Investor Releases are an important part of the Plan because without the Plan Investor Releases, the Plan Investors would not have agreed to make the substantial contributions to the Debtors' estates without obtaining the Plan Investor Releases; and

(d)    The breadth of the Plan Investor Releases is necessary to the Plan and bears a reasonable relationship to the protection of the Debtors' estates.  As set forth in the Voting Reports, the Plan, which includes the Plan Investor Releases, was overwhelmingly accepted by holders of Claims and Interests.

Accordingly, the Plan Investor Releases, including the third-party releases, are consistent with sections 105, 1123, and 1129 of the Bankruptcy Code and applicable law in the Second Circuit, and should be, and hereby are, approved.

26

3.       Releases of GM-Related Parties.  The releases of GM-Related Parties (as defined in the Delphi-GM Global Settlement Agreement) by the Debtors and third parties (collectively, the "GM Releases") pursuant to Section 11.7 of the Plan, which are described in Article IV of the Delphi-GM Global Settlement Agreement, (i) are fair and equitable, reasonable, and in the best interests of the Debtors' estates and holders of Claims and Interests, (ii) are supported by truly unusual circumstances that render the release terms important to the process of the Plan, and (iii) are integral elements of the restructuring and resolution of the Chapter 11 Cases.  More specifically, factors which support the approval of the GM Releases include, without limitation:

(a)       As acknowledged by the Debtors in section 4.01(k) of the Delphi-GM Global Settlement Agreement, the consideration GM provided and will provide pursuant to the Delphi-GM Definitive Documents, the Union Settlement Agreements, and other agreements entered into as part of the Debtors' reorganization constitutes a material, substantial contribution to the Debtors' estates;

(b)       GM's contribution is necessary to the success of the Plan because GM's consideration provides a substantial source of funds to the Debtors' estates and allows substantial distributions to be made to the holders of Claims and Interests, which could not be made without the GM Settlement;

(c)       The GM Releases are an important part of the Plan because, as set forth in section 4.01(k) of the Delphi-GM Global Settlement Agreement, and as acknowledged by the Debtors, GM would not have agreed to make these substantial contributions to the Debtors' estates without obtaining the GM Releases;

(d)      The breadth of the GM Releases is necessary to the Plan

and bears a reasonable relationship to the protection of the Debtors estates; and

(e)      Absent the GM Settlement and the GM Releases, as a result

of existing indemnification agreements and GM's filed claims for indemnification and

contribution, the third-party claims that are being released hereby may have indirectly

impacted the Debtors and /or Reorganized Delphi.

Accordingly, the GM Releases, including the third-party releases, are consistent with

sections 105, 1123, and 1129 of the Bankruptcy Code and the law in the Second Circuit,

and should be, and hereby are, approved.

TT.      Registration Rights Agreement.  The Registration Rights Agreement is an

essential element of the Plan and entry into the Registration Rights Agreement is in the

best interests of the Debtors, their Estates, and holders of Claims and Interests.  The

Debtors have exercised reasonable business judgment in determining to enter into the

Registration Rights Agreement on the terms and in the form set forth in Exhibit 7.16(b) to

the Plan.  The Debtors have provided sufficient and adequate notice of the Registration

Rights Agreement, including any material modifications to the Registration Rights

Agreement, to all parties-in-interest, including, without limitation, the Creditors'

Committee, the Equity Committee, the Plan Investors, and GM.  The Registration Rights

Agreement shall, upon execution, be valid, binding, and enforceable and shall not be in

conflict with any federal or state law.

UU.      Distributions of New Common Stock, Notes, and Warrants.  Certain

distributions of New Common Stock and New Preferred Stock as contemplated by the

28

Plan are exempt from the requirements of section 5 of the Securities Act of 1933, as amended, and state registration requirements as follows:

    1.    by virtue of section 1145 of the Bankruptcy Code, as to distributions to holders of General Unsecured Claims, Section 510(b) Note Claims, Section 510(b) Equity Claims, Section 510(b) ERISA Claims, and holders of Existing Common Stock;

    2.    by virtue of section 1145 of the Bankruptcy Code, as to the distribution of the Seven-Year Warrants and Ten-Year Warrants to holders of Existing Common Stock;

    3.    by virtue of section 4(2) of the Securities Exchange Act, as to distributions to the Plan Investors that are made in exchange for the Plan Investors' other cash investments, including the "Series A" and "Series B" New Preferred Stock;

    4.    by virtue of section 1145 of the Bankruptcy Code, as to distributions to GM of the "Series C" New Preferred Stock and the GM Note pursuant to the terms of the Delphi-GM Global Settlement Agreement; and

    5.    by virtue of section 4(2) of the Securities Exchange Act, as to distributions of Direct Subscription Shares and Unsubscribed Shares.

As described in the amendment to Delphi's registration statement on Form S-1, filed on December 20, 2007, as further amended, the offering and sale of the Discount Rights, Par Value Rights, Six-Month Warrants, and New Common Stock in Reorganized Delphi to be issued pursuant to the exercise of the Discount Rights, Par Value Rights, and Six-Month Warrants will be registered pursuant to the Securities Act and will be offered solely by means of prospectuses relating to such securities which will be provided when

the Rights Offerings commence or such Six-Month Warrants are issued, as the case may

be.

VV.    <u>Rights Offerings Estimation Motion</u>.  Notice of the Motion For Order

Pursuant To 11 U.S.C. §§ 105(a) And 502(c) Estimating Or Provisionally Allowing

Certain Unreconciled Claims Solely For Purposes Of Administration Of Discount Rights

Offering ("Rights Offering Estimation Motion") (Docket No. 11606) was appropriate.

WW.    <u>The Plan Investors' Investment Intent</u>.  As disclosed on the record at the

Confirmation Hearing at Joint Exhibit No. 119 and not otherwise controverted at the

Confirmation Hearing, the "Series A" New Preferred Stock, and the New Common Stock

into which such securities are convertible, have a two-year restriction on transfer and the

"Series B" New Preferred Stock, and the New Common Stock into which such securities

are convertible, have a 90-day restriction on transfer contained in the Certificate of

Designation governing such securities.  In addition, in Section 4(e) of the Investment

Agreement, each Plan Investor represents that it "is acquiring the Investor Shares for

investment for its own account, not as a nominee or agent, and not with the view to, or

for resale in connection with, any distribution thereof not in compliance with applicable

securities laws, and such Investor has no present intention of selling, granting any

participation in, or otherwise distributing the same, except in compliance with applicable

securities laws."  By virtue of these restrictions and representations, the securities

described above will come to rest with the Plan Investors, and the Plan Investors are

purchasing these securities with investment intent and not with a view to a distribution of

these securities.

XX.    <u>The Plan Investors Do Not Have "Control".</u>  As disclosed on the record at the Confirmation Hearing at Joint Exhibit No. 119 and not otherwise controverted at the Confirmation Hearing in Section 4(j) of the Investment Agreement, each Plan Investor represents that it "acknowledges and agrees that the [Debtor] is acting solely in the capacity of an arm's-length contractual counterparty to the Plan Investor with respect to the transactions contemplated hereby (including in connection with determining the terms of the Rights Offering)."  At all times during the pendency of the Debtors' Chapter 11 Cases, including during the negotiations regarding the Investment Agreement, the Plan and related agreements and documents, the Plan Investors have negotiated on an arm's-length basis and have not "controlled" the Debtors, either through securities ownership, contractual arrangements, or otherwise.  The holder of Delphi's new Series A-1 Preferred Stock will have certain governance and voting rights as set forth in the Certificate of Designation governing such securities and Reorganized Delphi's Certificate of Incorporation, but such holders will only be entitled to elect three of nine directors of Delphi's board of directors and only for a limited period not to extend beyond Delphi's 2011 annual meeting of stockholders.  Delphi's new certificate of incorporation provides that at all times during such period, at least six of the nine directors must be independent of the Plan Investors and further provides that Delphi's board of directors must satisfy the independence criteria of any relevant stock exchange upon which the New Common Stock is listed.  The corporate actions over which the holders of Series A-1 Preferred Stock have objection rights are very limited:  liquidation; adverse changes to Delphi's certificate of incorporation or bylaws; and, only during the two-year transfer restriction period applicable to the Series A-1 Preferred Stock, certain transactions constituting a

31

sale of Delphi or acquisitions or investments of more than $250,000,000.  These facts

indicate that none of the Plan Investors controls the Debtors as contemplated by the

Securities Act, the Exchange Act, or the Bankruptcy Code.

YY.    Re-Sale Under 1145.  The securities issued under the Plan pursuant to

section 1145 of the Bankruptcy Code may be resold by the holders thereof without

registration unless the holder is an "underwriter" with respect to such securities, as

defined in section 1145(b)(1) of the Bankruptcy Code.

ZZ.    IRC Section 414(l) Transfer.  No earlier than the Effective Date, but no

later than five days after the Effective Date (the "Transfer Date"), Reorganized Delphi

shall make a transfer of pension assets and liabilities as set forth in section 2.03(c) of the

Delphi-GM Global Settlement Agreement (the "IRC Section 414(l) Transfer").  On the

Transfer Date, Reorganized Delphi shall also issue a note (the "414(l) Note") to GM as

set forth in section 2.03(c)(iii)(3) of the GM-Delphi Global Settlement Agreement, which

is payable by the Reorganized Delphi within ten days of the Transfer Date.  The financial

projections in Appendix C to the Disclosure Statement, the Sheehan Declaration, and

other evidence proffered or adduced at the Confirmation Hearing establish that

Reorganized Delphi has or will have on the Effective Date the financial wherewithal to

consummate all transactions contemplated by section 2.03(c) of the Delphi-GM Global

Settlement Agreement in accordance with the terms of such section.

AAA.    Pension Plans.  The Debtors sponsor various pension plans covered by

Title IV  of the Employee Retirement Income Security Act of 1974, as amended, 29

U.S.C. §§ 1301-1461 ("ERISA").  Notwithstanding anything to the contrary in Article

7.22 of the Plan, the Pension Plans (as defined below) shall be frozen on or before March

1, 2008, or as soon as practicable thereafter, except as otherwise set forth in the Union

Settlement Agreements.  Pursuant to Article 7.22 of the Plan, and subject to the preceding

sentence hereof, the following Debtors shall assume and continue the following plans on

a frozen basis:  (1) Delphi Corporation:  Delphi Hourly-Rate Employees Pension Plan

and Delphi Retirement Program for Salaried Employees; (2) Delphi Mechatronic Systems,

Inc.:  Delphi Mechatronic Systems Retirement Program; (3) ASEC Manufacturing:

ASEC Manufacturing Retirement Program; and (4) Packard-Hughes Interconnect

Company:  Packard-Hughes Interconnect Bargaining Retirement Plan and Packard-

Hughes Interconnect Non-Bargaining Retirement Plan (collectively, the "Pension Plans").

BBB.  <u>Pension Plans – Minimum Funding Contribution</u>.  No earlier than the

Transfer Date, and no later than five days after the Effective Date, Reorganized Delphi

shall contribute cash to the Pension Plans sufficient to meet ERISA minimum funding

contributions not covered by the IRC Section 414(l) Transfer.  Nothing in the Plan or the

Confirmation Order shall have any effect on the Debtors' obligations under the minimum

funding standard waiver letters (the "Waivers"), as amended, as approved by the

Bankruptcy Court pursuant to the Order Under 11 U.S.C. § 363(b) And Fed. R. Bankr. P.

9019 Authorizing Delphi Corporation To (A) Perform Under Pension Funding Waivers

Issued By United States Internal Revenue Service And (B) Provide Letters Of Credit To

Pension Benefit Guaranty Corporation Thereunder, entered May 31, 2007 (Docket No.

8117), and the Order Under 11 U.S.C. § 363 And Fed. R. Bankr. P. 9019 Authorizing

Delphi Corporation To Perform Under Second Pension Funding Waiver Issued By

United States Internal Revenue Service, entered October 25, 2007 (Docket No. 10726), or

the Waivers as they may be further amended or extended.  Nothing in the Plan shall be

construed as discharging, releasing, or relieving the Debtors or the Debtors' successors,

including the Reorganized Debtors, or any party, in any capacity, from any liability for

minimum funding under 26 U.S.C. § 412 and 29 U.S.C. § 1082 or liability under 29

U.S.C. § 1362 with respect to the Pension Plans or the PBGC.  The PBGC and the

Pension Plans shall not be enjoined or precluded from seeking to enforce such liability as

a result of any provision of the Plan or the Confirmation Order.

CCC.   <u>Preservation Of Causes Of Action</u>.  It is in the best interests of the holders

of Claims and Interests that the Retained Actions that are not expressly released under the

Plan be retained by the Reorganized Debtors pursuant to Article 7.24 of the Plan to

maximize the value of the Debtors' Estates.  It is also in the best interests of holders of

Claims and Interests that Avoidance Actions shall not be retained by the Reorganized

Debtors unless specifically listed on Exhibit 7.24 of the Plan.

DDD.  <u>Judicial Notice</u>.  The Court takes judicial notice of the docket of the

Chapter 11 Cases maintained by the Clerk of the Court and/or its duly-appointed agent,

including, without limitation, all pleadings and other documents filed, all orders entered,

and all evidence and arguments made, proffered, or adduced at the hearings held before

the Court during the pendency of the Chapter 11 Cases.

IT IS ORDERED, ADJUDGED, AND DECREED THAT:

1.    <u>Confirmation</u>.  The Plan, which consists of the Amended Plan (and

all exhibits and supplements thereto) and the modifications set forth in Exhibit A hereto,

which are hereby incorporated into and constitute a part of the Plan, is hereby approved

and confirmed under section 1129 of the Bankruptcy Code.  The exhibits to the Plan (as

may be modified pursuant to the terms of the Plan and/or such exhibit, as applicable) are

incorporated by reference into and comprise an integral part of the Plan and this

Confirmation Order.

2.      Objections.  All Objections to confirmation of the Plan that have

not been withdrawn, waived, settled or addressed in the Plan, including Exhibit A hereto,

and all reservations of rights included therein, are overruled on the merits.

3.      Provisions Of Plan And Order Nonseverable And Mutually

Dependent.  The provisions of the Plan and this Confirmation Order, including the

findings of fact and conclusions of law set forth herein, are nonseverable and mutually

dependent.

4.      Plan Classification Controlling.  The classification of Claims and

Interests for purposes of the distributions to be made under the Plan shall be governed

solely by the terms of the Plan.  The classifications set forth on the Ballots tendered to or

returned by the Debtors' creditors or interest holders in connection with voting on the

Plan (a) were set forth on the Ballots solely for purposes of voting to accept or reject the

Plan, (b) do not necessarily represent, and in no event shall be deemed to modify or

otherwise affect, the actual classification of such Claims or Interests under the Plan for

distribution purposes, (c) may not be relied upon by any creditor or interest holder as

representing the actual classification of such Claims or Interests under the Plan for

distribution purposes, and (d) shall not be binding on the Reorganized Debtors, the

Estates, or the Debtors.

5.      Effects Of Confirmation; Immediate Effectiveness; Successors

And Assigns.  The stay provided by Bankruptcy Rule 3020(e) shall not apply to this

Confirmation Order.  Immediately upon the entry of this Confirmation Order, this

35

Confirmation Order and the terms of the Plan (subject to the provisions of Articles 12.2

and 12.3 of the Plan) shall be deemed binding upon (a) the Debtors, (b) the Reorganized

Debtors, (c) all holders of Claims against and Interests in the Debtors, whether or not

Impaired under the Plan and whether or not, if Impaired, such holders accepted the Plan,

(d) each Person acquiring property under the Plan, (e) any other party-in-interest, (f) any

Person making an appearance in these Chapter 11 Cases, and (g) each of the foregoing's

respective heirs, successors, assigns, trustees, executors, administrators, affiliates,

officers, directors, agents, representatives, attorneys, beneficiaries, or guardians.

   6.  <u>Continued Corporate Existence; Vesting Of Assets</u>.  Except as

otherwise provided in the Plan, each Reorganized Debtor shall continue to exist after the

Effective Date as a separate corporate or other legal entity, with all the powers of a

corporation or legal entity under applicable law in the jurisdiction in which each

applicable Debtor is incorporated or otherwise formed and pursuant to its certificate of

incorporation and bylaws or other organizational documents in effect prior to the

Effective Date, except to the extent such certificate of incorporation and bylaws or other

organizational documents are amended by the Plan.  Except as otherwise explicitly

provided in the Plan or in this Confirmation Order, including, without limitation, Articles

9.6 and 11.1 of the Plan and the Plan Modifications set forth herein, on the Effective Date,

all property comprising the Estates (including Retained Actions, but excluding property

that has been abandoned pursuant to the Plan or an order of the Court) shall revest in each

of the Reorganized Debtors that owned such property or interest in property as of the

Effective Date, free and clear of all Claims, liens, charges, encumbrances, rights, and

interests of creditors and interest holders.  As of and following the Effective Date, the

Reorganized Debtors may operate their businesses and use, acquire, and dispose of property and settle and compromise Claims or Interests without supervision of the Court, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and this Confirmation Order.

7.     <u>Intercompany Claims And Interests In The Affiliate Debtors</u>.  The treatment of Intercompany Claims and Interests in the Affiliate Debtors provided in Articles 5.6 and 7.2 of the Plan is approved in its entirety.

8.     <u>Release Of Liens</u>.  Except as otherwise provided in the Plan or this Confirmation Order, or in any contract, instrument, release, or other agreement or document entered into or delivered in connection with the Plan, including the Exit Financing Arrangements, on the Effective Date and/or concurrently with the applicable distributions made pursuant to the Plan, all mortgages, deeds of trust, liens, or other security interests against the property of any Estate are fully released and discharged (except to the extent Reinstated under the Plan), and all right, title, and interest of any holder of such mortgages, deeds of trust, liens, or other security interests, including any rights to any collateral thereunder, shall revert to the applicable Reorganized Debtor and its successors and assigns.

9.     <u>Retained Assets</u>. To the extent that the succession to assets of the Debtors by the Reorganized Debtors pursuant to the Plan are deemed to constitute "transfers" of property, such transfers of property to Reorganized Debtors (a) are or shall be legal, valid, and effective transfers of property, (b) vest or shall vest the Reorganized Debtors with good title to such property, free and clear of all liens, charges, Claims, encumbrances, or Interests, except as expressly provided in the Plan or this Confirmation

Order, (c) do not and shall not constitute avoidable transfers under the Bankruptcy Code

or under applicable nonbankruptcy law, and (d) do not and shall not subject the

Reorganized Debtors to any liability by reason of such transfer under the Bankruptcy

Code or under applicable nonbankruptcy law, including, without limitation, any laws

affecting successor or transferee liability.

10.    Return Of Deposits.  All utilities, including any person who

received a deposit or other form of adequate assurance of performance pursuant to

section 366 of the Bankruptcy Code during these Chapter 11 Cases (collectively, the

"Deposits"), including, without limitation, gas, electric, telephone, and sewer services,

shall return such Deposits to the Debtors and/or the Reorganized Debtors, as the case

may be, either by setoff against postpetition indebtedness or by cash refund, within 45

days following the Effective Date.

11.    Discharge, Releases, Limitations Of Liability, And

Indemnification.  Pursuant to applicable law, including sections 105(a) and 1123(b)(3)

and (6) of the Bankruptcy Code, the discharge of the Debtors and any of their assets or

properties provided in Article 11.2 of the Plan, the releases set forth in Articles 11.4, 11.5,

11.6, 11.7, and 11.8 of the Plan, and the exculpation and limitation of liability provisions

set forth in Articles 11.8 and 11.11 of the Plan, are deemed incorporated in this

Confirmation Order as if set forth in full herein and are hereby approved as an integral

part of the Plan and are fair, equitable, reasonable and in the best interests of the Debtors,

their estates, and holders of Claims and Interests.

12.    Injunction.  Except as otherwise specifically provided in the Plan

and except as may be necessary to enforce or remedy a breach of the Plan, the Debtors

and all Persons shall be precluded and permanently enjoined on and after the Effective

Date from (a) commencing or continuing in any manner any Claim, action, employment

of process, or other proceeding of any kind with respect to any Claim, Interest, Cause of

Action, or any other right or Claim against the Reorganized Debtors, which they

possessed or may possess prior to the Effective Date, (b) the enforcement, attachment,

collection, offset, recoupment, or recovery by any manner or means of any judgment,

award, decree, order or otherwise with respect to any Claim, Interest, Cause of Action or

any other right or Claim against the Reorganized Debtors, which they possessed or may

possess prior to the Effective Date, (c) creating, perfecting, or enforcing any

encumbrance of any kind with respect to any Claim, Interest, Cause of Action or any

other right or Claim against the Reorganized Debtors, which they possessed or may

possess prior to the Effective Date, and (d) asserting any Claims, Interests, or Causes of

Action that are satisfied, discharged, released, or subject to exculpation  hereby or by the

Plan.

          13.    <u>Automatic Stay</u>.  The stay in effect in the Chapter 11 Cases

pursuant to section 362(a) of the Bankruptcy Code shall continue to be in effect until the

Effective Date, and at that time shall be dissolved and of no further force or effect,

subject to the injunction set forth in the preceding paragraph and/or sections 524 and

1141 of the Bankruptcy Code and Article 11.14 of the Plan; <u>provided</u>, <u>however</u>, that

nothing herein shall bar the filing of financing documents (including uniform commercial

code financing statements, security agreements, leases, mortgages, trust agreements, bills

of sale, and applications for aircraft registration) or the taking of such other actions as are

necessary to effectuate the transactions specifically contemplated by the Plan or by this

Confirmation Order prior to the Effective Date.

14.     Matters Relating To Implementation Of The Plan; General

Authorizations.  The approvals and authorizations specifically set forth in this

Confirmation Order are nonexclusive and are not intended to limit the authority of any

Debtor or Reorganized Debtor or any officer thereof to take any and all actions necessary

or appropriate to implement, effectuate, and consummate any and all documents or

transactions contemplated by the Plan or this Confirmation Order pursuant to section

1142(b) of the Bankruptcy Code or otherwise.  In addition to the authority to execute and

deliver, adopt, assign, or amend, as the case may be, the contracts, leases, instruments,

releases, and other agreements specifically granted in this Confirmation Order, the

Debtors and the Reorganized Debtors are authorized, and empowered, without necessity

of action of their respective stockholders or boards of directors, to take any and all such

actions as any of their executive officers may determine are necessary or appropriate to

implement, effectuate, and consummate any and all documents or transactions

contemplated by the Plan or this Confirmation Order.  Pursuant to section 1142 of the

Bankruptcy Code, no action of the stockholders or boards of directors of the Debtors or

the Reorganized Debtors shall be required for the Debtors or the Reorganized Debtors to

(a) enter into, execute and deliver, adopt, or amend, as the case may be, any of the

contracts, leases, instruments, releases, and other agreements or documents and plans to

be entered into, executed and delivered, adopted, or amended in connection with the Plan,

and, following the Effective Date, each of such contracts, leases, instruments, releases,

and other agreements shall comprise a legal, valid, and binding obligation of the

applicable Reorganized Debtor and enforceable against such Reorganized Debtor in

accordance with its terms, (b) issue for distribution or reserve, for issuance in accordance

with the terms of the Plan, the New Common Stock, New Preferred Stock, New Warrants,

or Rights (upon such issuance, all such shares shall be duly and validly authorized, issued,

and outstanding, fully paid, nonassessable, free and clear of any mortgage, lien, pledge,

security interest, or other encumbrance of any kind, and not subject to pre-emptive or

similar rights of third parties), or (c) issue the GM Note and 414(l) Note in accordance

with the Plan, the Delphi-GM Settlement Agreement, and the Investment Agreement

(upon such issuance, if any, such notes shall be duly authorized, validly issued and

outstanding, and free and clear of any mortgage, lien, pledge, security interest, or other

encumbrance of any kind), or (d) authorize the Reorganized Debtors to engage in any of

the activities set forth in this paragraph or otherwise contemplated by the Plan.  Each of

the Chief Executive Officer and President, Chief Financial Officer, Chief Restructuring

Officer, and General Counsel of the Debtors, or their respective designees, as appropriate,

shall be authorized, and empowered to execute, deliver, file, or record such contracts,

instruments, releases, indentures, and other agreements or documents, and take such

actions as may be necessary or appropriate to effectuate and further evidence the terms

and conditions of the Plan, this Confirmation Order, and any and all documents or

transactions contemplated by the Plan or this Confirmation Order, all without further

application to or order of the Court and whether or not such actions or documents are

specifically referred to in the Plan, the Disclosure Statement, the Solicitation Procedures

Order, this Confirmation Order, or the exhibits or appendices to any of the foregoing, and

the signature of such officer on a document shall be conclusive evidence of the officer's

determination that such document and any related actions are necessary and appropriate

to effectuate or further evidence, and are not in contravention of, the terms and conditions

of the Plan, this Confirmation Order, or other documents or transactions contemplated by

the Plan or this Confirmation Order.  The secretary or any assistant secretary of each

Debtor or Reorganized Debtor, as appropriate, is authorized and empowered when

required, to certify or attest to any of the foregoing actions.  Pursuant to section 1142 of

the Bankruptcy Code, to the extent that, under applicable nonbankruptcy law or the rules

of any stock exchange (including, without limitation, the New York Stock Exchange and

the NASDAQ Global Select Market), any of the foregoing actions otherwise would

require the consent or approval of the stockholders or the boards of directors of any of the

Debtors or Reorganized Debtors, this Confirmation Order shall constitute such consent or

approval, and such actions are deemed to have been taken by unanimous action of the

stockholders and directors of the appropriate Debtor or Reorganized Debtor.

15.    Post-Effective Date Action.  Any and all actions necessary or

appropriate to implement, effectuate, and consummate any and all documents or

transactions contemplated by the Plan or this Confirmation Order to be taken after the

Effective Date shall be authorized only in accordance with applicable organizational

documents and corporate law.

16.    Directors And Officers Of Reorganized Debtors.  In accordance

with the applicable governance documents, the existing senior officers of the Debtors

shall serve in their current capacities after the Effective Date (except for the Executive

Chairman); provided, however, that, subject to the employment contracts of such existing

officers, the board of directors of Reorganized Delphi reserves the right to remove any

officer and/or to identify and appoint new officers of Reorganized Delphi or the Affiliate

Debtors at any time thereafter in accordance with the applicable governance documents.

The Court approves the appointment of the initial directors of Reorganized Delphi,

without the necessity for consent or approval of the stockholders, as disclosed at or prior

to the Confirmation Hearing, as of and immediately following the Effective Date.  The

initial directors of Reorganized Delphi shall be considered to have taken office at a point

in time immediately following the Effective Date.  Notwithstanding any otherwise

applicable non-bankruptcy law, directors of Reorganized Delphi appointed in accordance

with Article 7.5(b) of the Plan and as set forth in Paragraph R above shall serve in three

classes of directors as set forth in Article 7.5(b) of the Plan for the terms described in

Article 7.5(c) of the Plan.  The existing directors of the Affiliate Debtors shall continue to

serve in their current capacities after the Effective Date, provided, however, that

Reorganized Delphi shall have the right, in accordance with the applicable provisions of

its corporate governance documents and other applicable agreements, to identify new

members of the board of directors of such Affiliate Debtors at any time thereafter.

      17.    Approval Of Employment, Retirement, Indemnification, And

Other Related Agreements And Incentive Compensation Programs.  Pursuant to section

1142(b) of the Bankruptcy Code, without further action by the Court or the stockholders

or board of directors of the Reorganized Debtors, and without limiting the power or

authority of the Reorganized Debtors following the Effective Date to take any and all

such actions as may be permitted or required by applicable nonbankruptcy law, the

Reorganized Debtors shall be authorized, as of the Effective Date, to (a) maintain, amend,

or revise existing employment, retirement, indemnification, and other agreements with

their respective active directors, officers, and employees who will continue in such capacities (or similar capacities) after the Effective Date, or retirement income plans, welfare benefit plans, and other plans for such Persons, subject to the terms and conditions of any such agreement, and subject to the Plan, and (b) enter into new employment, retirement, indemnification, and other agreements for active directors, officers, and employees, and retirement income plans, welfare benefits plans, and other plans for active and retired directors, officers, and employees, subject to the Plan; provided, however, that to enter into or obtain the benefits of any employment, retirement, indemnification, or other agreement with the Debtors or Reorganized Debtors, an employee must contractually waive and release any claims arising from pre-existing employment, retirement, indemnification, or other agreements with any of the Debtors.

18.     Freezing Of Pension Plans.  Notwithstanding anything in the Plan, the Pension Plans shall be frozen by March 1, 2008 or as soon as practicable thereafter.

19.     SERP Claims.  Notwithstanding Article 7.9 of the Plan and for the avoidance of doubt, to the extent a proof of claim asserting a claim for SERP benefits has already been properly filed, no further proof of claim shall be required to be filed in connection with the rejection and termination of the SERP.

20.     Exit Financing Arrangements.  The provisions of Article 7.14 of the Plan are approved in their entirety.  Specifically, on the Effective Date, the Reorganized Debtors shall receive the proceeds of the Exit Financing Arrangements on the terms as set forth in the exit financing engagement letter and term sheet attached to the Plan as Exhibit 7.14, as such term sheet may be amended, modified, or supplemented in accordance with the Plan (subject to consents of third parties, if any, as may be

44

required by the Plan).  The Reorganized Debtors are hereby authorized to execute any

documents required to effectuate the Exit Financing Arrangements without further

approval of the board of directors of the Debtors.  The Exit Financing Arrangements shall

constitute legal, binding and authorized obligations of the Reorganized Debtors,

enforceable in accordance with their terms.  On the Effective Date, all of the liens and

security interests to be granted in accordance with the Exit Financing Arrangements shall

be deemed to be approved and shall be legal, binding and enforceable liens on the

collateral granted thereunder.  In furtherance of the foregoing, the Reorganized Debtors

and any other person granting such liens and security interests are authorized to make all

filings and recordings, and to obtain all governmental approvals and consents necessary

to establish and perfect such liens and security interests under the provisions of any state,

federal or other law (whether domestic or foreign) that would be applicable in the

absence of this Confirmation Order, and will thereafter cooperate to make all other filings

and recordings that would be necessary under applicable law to give notice of such liens

and security interests to third parties.

          21.     <u>Exemption From Certain Taxes And Recording Fees</u>.  Pursuant to

section 1146(c) of the Bankruptcy Code, the issuance, transfer, or exchange of any

security, or the making, delivery, filing, or recording of any instrument of transfer under,

or in connection with, the Plan shall not be taxed under any law imposing a recording tax,

stamp tax, transfer tax, or similar tax.  Furthermore, and without limiting the foregoing,

any transfers from a Debtor to a Reorganized Debtor or to any other Person pursuant to

the Plan, as contemplated by the Plan or pursuant to any agreement regarding the transfer

of title to or ownership of any of the Debtors' property in the United States, shall not be

subject to any document recording tax, stamp tax, real estate transfer tax, mortgage

recording tax, Uniform Commercial Code filing or recording tax, or other similar tax or

governmental assessment.  All filing or recording officers (or any other Person with

authority over any of the foregoing), wherever located and by whomever appointed, shall

comply with the requirements of section 1146(c) of the Bankruptcy Code, shall forego

the collection of any such tax or governmental assessment, and shall accept for filing and

recordation any of the foregoing instruments or other documents without the payment of

any such tax or governmental assessment.  The Court shall retain specific jurisdiction

with respect to these matters.

   22. <u>Assumptions</u>.  The executory contract and unexpired lease

provisions of Article VIII of the Plan are approved.  All executory contracts and

unexpired leases as to which any of the Debtors is a party shall be deemed automatically

assumed in accordance with the provisions and requirements of sections 365 and 1123 of

the Bankruptcy Code as of the Effective Date, unless such executory contracts or

unexpired leases (i) shall have been previously rejected by the Debtors by Final Order of

the Bankruptcy Court, (ii) shall be the subject of a motion to reject pending on or before

the Effective Date, (iii) shall have expired or terminated on or prior to December 31,

2007 (and not otherwise extended) pursuant to their own terms, (iv) are listed on the

schedule of rejected executory contracts or unexpired leases attached as Exhibit 8.1(a) to

the Plan, or (v) are otherwise rejected pursuant to the terms of the Plan (the "Assumed

Contracts and Leases").  Each of the Assumed Contracts and Leases shall be assumed

only to the extent that any such contract or lease constitutes an executory contract or

unexpired lease.  Listing a contract or lease on Plan Exhibit 8.1(a) shall not constitute an

admission by a Debtor or Reorganized Debtor that such contract or lease is an executory

contract or unexpired lease or that a Debtor or Reorganized Debtor has any liability

thereunder.  Notwithstanding the foregoing or anything else in Article VIII of the Plan, (i)

all executory contracts or unexpired leases between GM and the Debtors shall receive the

treatment described in the Delphi-GM Definitive Documents, (ii) all agreements, and

exhibits or attachments thereto between the Unions and Delphi shall receive the treatment

described in Article 7.21 of the Plan and the Union Settlement Agreements, and (iii) all

executory contracts memorializing Ordinary Course Customer Obligations shall receive

the treatment described in Article 5.2 of the Plan.

    23. <u>Payments Related To Assumption Of Material Supply Agreements.</u>

This Confirmation Order shall constitute an order approving the assumptions described in

Article 8.1 and 8.2(a) of the Plan, pursuant to section 365 of the Bankruptcy Code, which

assumption shall be effective as of the Effective Date.  To the extent that a counterparty

complied with the procedures set forth in Article VIII and disputes the Debtors' proposed

Cure Amount, then the Debtors and the counterparty shall comply with the Cure

procedures established under the Solicitation Procedures Order and set forth in Article

8.2 of the Plan; provided, however, that (a) to the extent of any inconsistency, paragraph

23 shall supersede the procedures set forth in the Solicitation Procedures Order and

Article 8.2(a) of the Plan with respect to Material Supply Agreements for which notice of

assumption and cure was served after December 21, 2007, and (b) to the extent that no

resolution is reached by a disputing counterparty and the applicable Debtor prior to the

Effective Date, then the Cure Amount Claim, to the extent Allowed, shall be paid in Cash.

24.    <u>Payments Related To Assumption Of Omitted Material Supply</u>

<u>Agreements</u>.  With respect to Material Supply Agreements to be assumed pursuant to

Article VIII of the Plan that were not included on a Cure Amount Notice served on or

prior to December 21, 2007 pursuant to Article 8.2(a) and the Solicitation Procedures

Order (the "Omitted Contracts"), within five business days following entry of this Order,

the Debtors shall file with the Bankruptcy Court and serve via overnight delivery upon

the counterparties to such Omitted Contract a cure notice substantially in the form of

Exhibit C attached hereto.  Any monetary amounts by which an Omitted Contract is in

default shall be satisfied, under section 365(b)(1) of the Bankruptcy Code by Cure, and

shall be paid in cash to the non-Debtor counterparty to the Omitted Contract.  As shall be

indicated on the cure notice, counterparties shall have ten days from the date of mailing

to file and serve any objection to the Debtors' proposed assumption and Cure amount.  If

the non-Debtor party does not timely respond to the cure notice, the counterparty shall be

deemed to have accepted the Debtors' proposed Cure and the assumption of such contract

and the monetary amount of the Cure shall be paid as soon as reasonably practicable after

the Effective Date.  If the non-Debtor party responds to the cure notice prior to the ten-

day objection period and in accordance with the procedures set forth in the notice, and the

non-Debtor party asserts a dispute regarding (x) the nature or amount of any proposed

Cure, (y) the ability of the Reorganized Debtor or any assignee to provide "adequate

assurance of future performance" (within the meaning of section 365 of the Bankruptcy

Code) under the contract or lease to be assumed, or (z) any other matter pertaining to the

assumption, the Cure shall occur following the entry of a Final Order resolving the

dispute and approving the assumption or assumption and assignment, as the case may be;

48

provided that if there is a dispute as to the amount of Cure that cannot be resolved

consensually among the parties, the Debtors shall have the right to reject the contract or

lease for a period of five days after entry of a Final Order establishing a Cure amount in

excess of that provided by the Debtors.  The Creditors' Committee shall be provided

access to information regarding the Debtors' proposed Cure Claim payments above a

threshold amount to be reasonably agreed upon by the Creditors' Committee and the

Debtors, after which the Creditors' Committee may object to a proposed Cure Claim

payment; provided, however, that any unresolved objection shall be determined by the

Bankruptcy Court after notice and hearing.

    25. <u>Payments Related To Assumption Of Other Executory Contracts</u>

<u>And Unexpired Leases</u>.  This Confirmation Order shall constitute an order approving the

assumptions described in Article 8.1 of the Plan, pursuant to section 365 of the

Bankruptcy Code, as of the Effective Date.  The provisions (if any) of each Other

Executory Contract or Other Unexpired Lease to be assumed under the Plan which are or

may be in default shall be satisfied solely by Cure.  Any party to an Other Executory

Contract or Other Unexpired Lease who wishes to assert that Cure shall be required as a

condition to assumption shall file and serve a proposed Cure Claim so as to be received

by the Debtors or Reorganized Debtors, as applicable, and their counsel at the address set

forth in Article 14.8 of the Plan within 45 days after entry of this Confirmation Order (the

"Cure Claim Submission Deadline"), after which the Debtors or Reorganized Debtors, as

the case may be, shall have 45 days to file any objections thereto.  Should a party to an

Other Executory Contract or Other Unexpired Lease not file a proposed Cure Claim by

the Cure Claim Submission Deadline in accordance with the procedures set forth in this

paragraph, then any default then existing shall be deemed cured as of the day following

the Cure Claim Submission Deadline and such party shall forever be barred from

asserting against the Debtors or the Reorganized Debtors, as applicable, any claim that

arose on or prior to the Confirmation Date.  If there is a dispute regarding (i) the nature or

amount of any Cure, (ii) the ability of any Reorganized Debtor or any assignee to provide

"adequate assurance of future performance" (within the meaning of section 365 of the

Bankruptcy Code) under the contract or lease to be assumed, or (iii) any other matter

pertaining to assumption, the matter shall be set for hearing in the Court on the next

available hearing date, or such other date as may be agreed upon, and Cure, if any, shall

occur following the entry of a Final Order of the Court resolving the dispute and

approving the assumption or assumption and assignment, as the case may be; provided,

however, that if there is a dispute as to the amount of Cure that cannot be resolved

consensually among the parties, the Debtors shall have the right for a period of five days

after entry of a Final Order establishing a Cure amount in excess of that asserted by the

Debtors, to reject the contract or lease.  If the Cure amount was filed and served in

accordance with the procedures set forth herein and is not disputed, the Debtors or

Reorganized Debtors, as the case may be, shall pay the Cure Claim, if any, to the

claimant within 20 days after service of the Cure Claim.  Disputed Cure amounts that are

resolved by agreement or Final Order shall be paid by the Debtors within 20 days of such

agreement or Final Order.  Notwithstanding any of the foregoing, payments related to

assumption of executory contracts or unexpired leases between GM and/or any of its

Affiliates and any of the Debtors shall be in accordance with the Delphi-GM Definitive

Documents.

26.     <u>Payments Related To Assumption Of Intercompany Executory</u>
<u>Contracts And Intercompany Unexpired Leases</u>.  Any Claim relating to and outstanding

at the time of assumption of an Intercompany Executory Contract or an Intercompany

Unexpired Lease shall be Reinstated and shall be satisfied in a manner to be agreed upon

by the relevant Debtors and/or non-Debtor Affiliates.

27.     <u>Assignment Pursuant To Restructuring Transactions</u>.  To the extent

that a Debtor that is party to an executory contract or unexpired lease is to be merged or

liquidated as part of a Restructuring Transaction, the non-Debtor parties to such

executory contract or unexpired lease shall, upon assumption as contemplated in the Plan,

be deemed to have consented to the assignment of such executory contract or unexpired

lease to the Reorganized Debtor that is the surviving entity after such Restructuring

Transaction.

28.     <u>Assumption And Assignment Of Divestiture-Related Executory</u>
<u>Contracts And Unexpired Leases</u>.  In the event that the Court enters an order on or prior

to the Effective Date authorizing a Debtor(s) to assume and assign certain executory

contracts or unexpired leases in connection with a divestiture transaction, but the

Debtor(s) does not assume and assign such contracts and leases prior to the Effective

Date (a) notwithstanding anything to the contrary in the applicable sale order, such

assumption shall be consummated pursuant to Article VIII of the Plan and service of

notice and any Cure payments owed to the non-Debtor counterparty under such contracts

and leases shall be made pursuant to Article 8.2 of the Plan and (b) the Debtor(s) shall be

permitted to assign such assumed executory contracts and unexpired leases subsequent to

the Effective Date pursuant to sections 365 and 1123 of the Bankruptcy Code and the

applicable sale order.

          29.    <u>Rejections</u>.  As provided in Article 8.1 of the Plan, all executory

contracts or unexpired leases shall be assumed by the Reorganized Debtors; <u>provided</u>,

<u>however</u>, that any contract or lease set forth on Plan Exhibit 8.1(a) (the "Rejected

Contracts and Leases") shall be rejected pursuant to section 365 of the Bankruptcy Code.

All of the Rejected Contracts and Leases shall be rejected only to the extent that any such

contract or lease constitutes an executory contract or unexpired lease.  This Confirmation

Order shall constitute an order approving such rejections, pursuant to section 365 of the

Bankruptcy Code, as of the Effective Date.  Notwithstanding the foregoing or anything

else in Article VIII of the Plan, (i) all executory contracts or unexpired leases between

GM and the Debtors shall receive the treatment described in the Delphi-GM Definitive

Documents, (ii) all agreements, and exhibits or attachments thereto between the Unions

and Delphi shall receive the treatment described in Article 7.21 of the Plan and the Union

Settlement Agreements, and (iii) all executory contracts memorializing Ordinary Course

Customer Obligations shall receive the treatment described in Article 5.2 of the Plan.

Nothing in this Order modifies the section 365(d)(4) deadline under the Bankruptcy Code

to assume or reject leases, as extended by prior orders of the Court, except that if the

Debtors anticipate that the Plan will not become effective by February 29, 2008, the

Debtors may file a motion (a "Real Property Lease Motion") to further extend the

deadline under section 365(d)(4) of the Bankruptcy Code to assume or reject any and all

unexpired leases of nonresidential real property ("Real Property Leases"), provided that

the Real Property Lease Motion is filed on or before February 29, 2008 and noticed to be

heard at the next available omnibus hearing, and the date by which the Debtors must

assume or reject any and all Real Property Leases is extended to February 29, 2008 for

such purpose.  Upon the filing of such a Real Property Lease Motion, the deadline to

assume or reject any or all Real Property Leases shall be automatically extended until the

later of (a) the date set forth in any subsequent order, (b) three business days after the

Court rules on the Real Property Lease Motion, and (c) March 31, 2008.

   30. <u>Bar Date For Rejection Damage Claims And Related Procedures</u>.

If the rejection by the Debtors, pursuant to the Plan or otherwise, of an executory contract

or unexpired lease results in a Claim, then such Claim shall be forever barred and shall

not be enforceable against either the Debtors, the Reorganized Debtors, or such entities'

properties unless a proof of claim is filed with the Claims Agent and served upon counsel

to the Debtors and the Creditors' Committee within 30 days after the later of (a) entry of

the Confirmation Order or (b) notice that the executory contract or unexpired lease has

been rejected, unless otherwise ordered by the Court.

   31. <u>DIP Facility Claims</u>.  On the Effective Date, the DIP Facility

Revolver Claim, the principal amount of the DIP Facility First Priority Term Claim, and

the principal amount of the DIP Facility Second Priority Term Claim shall each be

allowed in an amount to be agreed upon by the Debtors and, as applicable, the DIP

Lenders, or as ordered by the Bankruptcy Court, at least five Business Days prior to the

Effective Date, and all obligations of the Debtors thereunder shall be paid in full in Cash

in accordance with the DIP Credit Agreement on the Effective Date; <u>provided</u>, <u>however</u>,

that with respect to letters of credit issued under the DIP Facility, such claims may be

satisfied in full by the cash collateralization of such letters of credit, or by procuring

back-up letters of credit, in each case in accordance with the DIP Credit Agreement or as otherwise agreed to by the DIP Agent.  Upon compliance with the foregoing sentence, all liens and security interests granted to secure the DIP Facility Revolver Claim, the DIP Facility First Priority Term Claim, and the DIP Facility Second Priority Term Claim shall be deemed cancelled and shall be of no further force and effect.  To the extent that the DIP Lenders or the DIP Agent have filed or recorded publicly any liens and/or security interests to secure the Debtors' obligations under the DIP Facility, the DIP Lenders or the DIP Agent, as the case may be, shall take any and all commercially reasonable steps requested by the Debtors that are necessary to cancel and/or extinguish such publicly-filed liens and/or security interests.

32.     _Investment Agreement_.  Notwithstanding any provision in this Confirmation Order, the Investment Agreement is valid, binding, in full force and effect in accordance with its terms, and constitutes an obligation of the parties thereto fully enforceable on its terms, and is not amended or modified in any way hereby.

33.     _Professional Claims And Final Fee Applications_.  All final requests for payment of Professional Claims and requests for reimbursement of expenses of members of the Statutory Committees must be filed no later than the last day of the second full month after the Effective Date or May 31, 2008, whichever is later.  After notice and a hearing in accordance with the procedures established by the Court and prior orders of the Court, the allowed amounts of such Professional Claims and expenses shall be determined by the Court.  Subject to the Holdback Amount, on the Effective Date, the Debtors or Reorganized Debtors shall pay all amounts owing to Professionals and members of the Statutory Committees for all outstanding amounts payable relating to

prior periods through the Confirmation Date. In accordance with Article 10.3(b) of the

Plan, to receive payment on the Effective Date for unbilled fees and expenses incurred

through the Confirmation Date, the Professionals shall estimate fees and expenses due for

periods that have not been billed as of the Confirmation Date and shall deliver such

estimate to the Debtors, counsel for the Statutory Committees, and the United States

Trustee for the Southern District of New York. Within 45 days after the Effective Date, a

Professional receiving payment for the estimated period shall submit a detailed invoice

covering such period in the manner and providing the detail as set forth in the

Professional Fee Order or the Ordinary Course Professionals Order, as applicable.

Should the estimated payment received by any Professional exceed the actual fees and

expenses for such period, this excess amount shall be credited against the Holdback

Amount for such Professional or, if the award of the Holdback Amount for such matter is

insufficient, disgorged by such Professional. On the Effective Date, the Debtors or the

Reorganized Debtors shall fund the Holdback Escrow Account with Cash equal to the

aggregate Holdback Amount for all Professionals. The Disbursing Agent shall maintain

the Holdback Escrow Account in trust for the Professionals with respect to whom fees

have been held back pursuant to the Professional Fee Order. Such funds shall not be

considered property of the Debtors, the Reorganized Debtors, or the Estates. The

remaining amount of Professional Claims owing to the Professionals shall be paid to such

Professionals by the Disbursing Agent from the Holdback Escrow Account when such

claims are finally allowed by the Court. When all Professional Claims have been paid in

full, amounts remaining in the Holdback Escrow Account, if any, shall be paid to the

Reorganized Debtors. Upon the Confirmation Date, any requirement that Professionals

comply with sections 327 through 331 of the Bankruptcy Code in seeking retention or

compensation for such services rendered after such date will terminate, and the

Reorganized Debtors may employ and pay Professionals in the ordinary course of

business.

34.    <u>Post-Confirmation Statutory Committee Fees</u>.  Professionals

retained by the Statutory Committees after the Confirmation Date shall deliver written

copies of invoices in respect of their fees and expenses, with a narrative description of

services rendered, for the period between the Confirmation Date and the Effective Date to

the Reorganized Debtors no later than the last day of the second full month after the

Effective Date or May 31, 2008, whichever is later.  If the Reorganized Debtors do not

object to the fees and expenses, the Reorganized Debtors shall pay such fees and

expenses within 15 business days after receipt of such invoices (without the need for such

Professionals to file fee applications with the Court).  The Reorganized Debtors shall not

be required to make any payments with respect to the disputed portion of any fees or

expenses until such portion of the disputed fees or expenses is resolved or approved by

the Bankruptcy Court.

35.    <u>Termination Of Reimbursement Obligations</u>.  Upon the Effective

Date, the Reorganized Debtors shall have no continuing obligation to the Unions and the

PBGC to reimburse financial advisor fees.

36.    <u>Record Date For Claims Distributions</u>.  The Reorganized Debtors,

the Disbursing Agent, the Indenture Trustees (as agent or Servicer as described in Section

9.5 of the Plan), and Servicers shall have no obligation to recognize the transfer of, or the

sale of any participation in, any Allowed Claim that occurs after January 17, 2008 (the

"Claims Record Date"), and shall be entitled for all purposes herein to recognize and distribute only to those holders of Allowed Claims who are holders of such Claims, or participants therein, as of the Claims Record Date. The Reorganized Debtors, the Disbursing Agent, the Indenture Trustees (as agent or Servicer as described in Section 9.5 of the Plan), and Servicers shall instead be entitled to recognize and deal for all purposes under the Plan with only those record holders stated on the official claims register or the transfer ledger, as the case may be, as of the Claims Record Date. On the Claims Record Date, the transfer ledgers of the Indenture Trustees, or other agents and Servicers shall be closed, and there shall be no further changes in the record holders of securities. The Reorganized Debtors, the Disbursing Agent, the Indenture Trustees (as agent or Servicer as described in Section 9.5 of the Plan), and Servicers shall have no obligation to recognize any transfer of the Senior Notes, the TOPrS, or the Subordinated Notes occurring after the Claims Record Date. The Reorganized Debtors, the Disbursing Agent, the Indenture Trustees (as agent or Servicer as described in Section 9.5 of the Plan), and Servicers shall be entitled instead to recognize and deal for all purposes hereunder with only those record holders stated on the transfer ledgers as of the Claims Record Date, provided, however, that with respect to deceased record holders, the Indenture Trustee (as agent or Servicer as described in Section 9.5 of the Plan) shall be authorized, but not directed, to recognize transfers to the appropriate heir, executor, or otherwise, following provision of notice together with such evidence of the transfer to the appropriate Indenture Trustee as is reasonably satisfactory to the applicable Indenture Trustee. Such notice shall be effective only as to distributions due at least 60 days after such notice is accepted as satisfactory by the applicable Indenture Trustee.

37.    <u>Record Date For Equity Distributions</u>.  The Reorganized Debtors, the Disbursing Agent, and Servicers shall have no obligation to recognize the transfer of, or the sale of any participation in, any Allowed Interest that occurs after February 11, 2008 (the "Equity Record Date"), and shall be entitled for all purposes herein to recognize and distribute only to those holders of Allowed Interests who are holders of such Interests as of the Equity Record Date.  The Reorganized Debtors, the Disbursing Agent, and Servicers shall instead be entitled to recognize and deal for all purposes under the Plan with only those record holders stated on the transfer ledger as of the Equity Record Date.  On the Equity Record Date, the transfer registers of the Existing Common Stock shall be closed, and there shall be no further changes in the record holders of Existing Common Stock.  The Reorganized Debtors, the Disbursing Agent, and Servicers shall have no obligation to recognize any transfer of the Existing Common Stock occurring after the Equity Record Date.  The Reorganized Debtors, the Disbursing Agent, and Servicers shall be entitled instead to recognize and deal for all purposes hereunder with only those record holders stated on the transfer ledgers as of the Equity Record Date, <u>provided</u>, <u>however</u>, that with respect to deceased record holders, the Disbursing Agent and Servicers shall be authorized, but not directed, to recognize transfers to the appropriate heir, executor, or otherwise, following provision of notice together with such evidence of the transfer to the appropriate Disbursing Agent or Servicers as is reasonably satisfactory to the applicable Disbursing Agent or Servicer.  Such notice shall be effective only as to distributions due at least 60 days after such notice is accepted as satisfactory by the applicable Disbursing Agent or Servicer.

38.    <u>Substantial Contribution Compensation And Expenses Bar Date</u>.
Any Person (including the Indenture Trustees) who requests compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to sections 503(b)(3), (4), and (5) of the Bankruptcy Code shall file an application with the Court on or before the 45th day after the Effective Date (the "503 Deadline"), and serve such application on counsel for the Debtors, the Statutory Committees, the Plan Investors, the United States Trustee for the Southern District of New York, and such other parties as may be directed by the Court and the Bankruptcy Code on or before the 503 Deadline, or be forever barred from seeking such compensation or expense reimbursement.

39.    <u>Indenture Trustee Fees</u>.

(a)    <u>Prepetition Fees</u>.  On or within 10 business days after the Confirmation Date, the Indenture Trustees shall deliver to the Debtors, the Creditors' Committees, and the joint fee review committee established by the Professional Fee Order (the "Fee Review Committee") written copies of invoices in respect of prepetition fees and expenses (the "Prepetition Fee Claims"), with narrative descriptions of the services rendered (including appropriate redactions to preserve privileged matters) and itemization of expenses incurred in such detail and with such supporting documentation as is customarily submitted by Professionals in the Chapter 11 Cases.  If none of the Debtors, the Creditors' Committee, or the Joint Fee Review Committee object to the Prepetition Fee Claims, the Debtors shall pay such claims in full in Cash by the later of the Effective Date or 10 business days after receipt of such invoices.  The Debtors shall not be required to make any payments with respect to the disputed portion of a Prepetition Fee Claim until such portion of the disputed Prepetition Fee Claim is resolved

59

or approved by the Bankruptcy Court pursuant to section 1129(a)(4) on motion of the Indenture Trustee.

(b)    Postpetition Fees.  On or within 10 business days after the Confirmation Date, the Indenture Trustees shall deliver to the Debtors, the Creditors' Committee, and the Fee Review Committee written copies of invoices in respect of fees and expenses, including the fees and disbursements of counsel to the Indenture Trustees, incurred between the Petition Date and the Confirmation Date and a reasonable estimate of the fees and expenses, including the fees and disbursements of counsel to the Indenture Trustees, that will be incurred between the Confirmation Date and the Effective Date (collectively, the "Postpetition Fee Claims"), with narrative descriptions of the services rendered or to be rendered (including appropriate redactions to preserve privileged matters) and itemization of expenses incurred in such detail and with such supporting documentation as is customarily submitted by Professionals in the Chapter 11 Cases.  If none of the Debtors, the Creditors' Committee, or the Joint Fee Review Committee object to the Postpetition Fee Claims within 10 business days of the receipt of the invoices therefor, the Debtors shall pay such Postpetition Fee Claims in full in Cash on or before the Effective Date.  In the event any of the Debtors, the Creditors' Committee, or the Fee Review Committee shall object to payment of all or a portion of such fees within such 10- business day period, the Debtors shall not be required to make any payments with respect to the disputed portion of a Postpetition Fee Claim until the disputed portion of the Postpetition Fee Claim has been approved by the Bankruptcy Court pursuant to section 1129(a)(4) on motion of the Indenture Trustee.

60

40.    <u>Other Administrative Claims</u>.  All other requests for payment of an Administrative Claim (other than as set forth in the Plan) must be filed, in substantially the form of the Administrative Claim Request Form attached as Exhibit 10.5 to the Plan, with the Claims Agent and served on counsel for the Debtors and the Statutory Committees no later than 45 days after the Effective Date.  Any request for payment of an Administrative Claim pursuant to this paragraph that is not timely filed and served shall be disallowed automatically without the need for any objection from the Debtors or the Reorganized Debtors.  The Debtors or the Reorganized Debtors may settle an Administrative Claim without further Bankruptcy Court approval.  Unless the Debtors or the Reorganized Debtors object to an Administrative Claim within 60 days after the Administrative Claims Bar Date (unless such objection period is extended by the Bankruptcy Court), such Administrative Claim shall be deemed allowed in the amount requested.  In the event that the Debtors or the Reorganized Debtors object to an Administrative Claim, the Court shall determine the allowed amount of such Administrative Claim.  Notwithstanding the foregoing, no request for payment of an Administrative Claim need be filed with respect to an Administrative Claim which is paid or payable in the ordinary course of business.

41.    <u>Substantive Consolidation</u>.  For the reasons described in IX.C. of the Disclosure Statement and the evidence and arguments made, proffered, or adduced at the Confirmation Hearing, certain of the Debtors' estates shall be substantively consolidated as set forth in Article III of the Plan, solely for the purposes of voting on the Plan and making distributions to holders of Claims and Interests under the Plan.

61

42.    <u>Restructuring Transactions</u>.  The Restructuring Transactions contemplated by Article 7.3 of the Plan and described in Exhibit 7.3 to the Plan are approved and the Debtors and Reorganized Debtors and their officers are authorized to take such actions as may be necessary and appropriate to effectuate the relevant Restructuring Transactions, including, without limitation, executing such documents as may be reasonably required in order to effectuate the Restructuring Transactions.  Each and every federal, state, and local governmental agency or department is hereby directed to accept for filing and recording any and all documents and instruments necessary or appropriate to consummate the transactions contemplated by the Restructuring Transactions.

43.    <u>Registration Rights Agreement</u>.  Without limiting the effect of section 1145 of the Bankruptcy Code or the foregoing paragraphs, Reorganized Delphi is authorized and empowered to enter into the Registration Rights Agreement with GM, the Investors, and any Related Purchaser, Ultimate Purchaser (each as defined in the Investment Agreement), affiliate of a Plan Investor who owns registrable securities, assignee, or transferee, and any Creditor Party (as defined in the Registration Rights Agreement), who executes a joinder agreement as contemplated by Registration Rights Agreement on substantially the terms set forth in the form attached to the Plan as Exhibit 7.16(b), which form is hereby approved.  Upon signature by the parties thereto, the Registration Rights Agreement shall become effective and binding in accordance with its terms and conditions upon the parties thereto without further notice to or order of the Court, act or action under applicable law, regulation, order, or rule.

44.    <u>Exemption From Securities Laws</u>.  The provisions of section 1145 of the Bankruptcy Code are applicable to the issuance and distribution of the New Common Stock to holders of General Unsecured Claims, Section 510(b) Note Claims, Section 510(b) Equity Claims, Section 510(b) ERISA Claims, and Existing Common Stock in exchange for the recipient's Claim or Interest.  In addition, the provisions of section 1145 of the Bankruptcy Code are applicable to the distribution of the Seven-Year Warrants and Ten-Year Warrants to holders of Existing Common Stock.  Further, the provisions of section 1145 of the Bankruptcy Code are applicable to distributions to GM of the "Series C" New Preferred Stock and the GM Note.  Section 4(2) of the Securities Exchange Act is applicable to distributions to the Plan Investors that are made in exchange for the Plan Investors' other cash investments, including the "Series A" and "Series B" New Preferred Stock as well as distributions of Direct Subscription Shares and Unsubscribed Shares. Therefore, to the extent that an "offer or sale" is deemed to have occurred with respect to the above, any such securities are exempt from the requirements of section 5 of the Securities Act and state registration requirements.  Pursuant to and to the fullest extent permitted by section 1145 of the Bankruptcy Code, the resale of any securities issued under the Plan shall be exempt from section 5 of the Securities Act and any state registration requirements.  Notwithstanding the foregoing, as described in the amendment to Delphi's registration statement on Form S-1, filed on December 20, 2007, as further amended, the offering and sale of the Discount Rights, the Par Value Rights, the Six-Month Warrants, and the New Common Stock in Reorganized Delphi to be issued pursuant to the exercise of  the Discount Rights, Par Value Rights, and/or the Six-Month Warrants will be registered pursuant to the Registration Statement under the

Securities Act and will be offered solely be means of prospectuses relating to such

securities which shall be provided at such time as the Rights Offerings commence or such

Six-Month Warrants are issued, as the case may be.

45.    <u>Resolution Of Claims And Interests</u>.  Except as otherwise ordered

by the Court, any Claim or Interest that is not an Allowed Claim or Allowed Interest shall

be determined, resolved, or adjudicated in accordance with the terms of the Plan.  The

Debtors or Reorganized Debtors, as the case may be, may (a) until 120 days after the

Effective Date (unless extended by order of the Court) file objections in the Court to the

allowance of any Claim or Interest (whether or not a proof of Claim or Interest has been

filed) and/or (b) amend their Schedules at any time before their Chapter 11 Cases are

closed.

46.    <u>Existing Common Stock</u>.  Pursuant to the cancellation of the

Existing Common Stock set forth in Article 7.10 of the Plan, the par value for all issued

and outstanding Existing Common Stock and any related paid-in capital in excess of par

value shall be reduced to zero.  Any par value and related paid-in capital in excess of par

value related to the New Common Stock shall be established pursuant to generally

accepted accounting principles.

47.    <u>Distribution Reserve</u>.  The Debtors shall establish one or more

Distribution Reserves of New Common Stock, New Warrants, Oversubscription Cash,

and Cash raised by the Par Value Rights Offering for the purpose of effectuating

distributions to holders of Disputed Claims or Disputed Interests pending the allowance

or disallowance of such claims or interests in accordance with the Plan.  The amounts to

be withheld as part of the Distribution Reserves shall be determined as set forth in Article

9.8(b) of the Plan.  The Debtors or the Reorganized Debtors may request estimation for

any Disputed Claim that is contingent or unliquidated, but such parties are not required to

do so, and nothing herein shall impair any claimant's defenses or objections to such

requested estimation.  Such Distribution Reserve may not be relied upon to show that any

Disputed Claim is either probable or estimable for any other purpose.  Any Disputed

Claim or Disputed Interest that ultimately becomes an Allowed Claim or Allowed

Interest as the case may be, shall be entitled to receive its applicable distribution under

the Plan solely from the Distribution Reserves established on account of such Disputed

Claim or Disputed Interest.  In no event shall any holder of a Disputed Claim or Disputed

Interest have any recourse with respect to distributions made, or to be made, under the

Plan to holders of such Claims or Interests to any Debtor or Reorganized Debtor on

account of such Disputed Claim or Disputed Interest, regardless of whether such

Disputed Claim or Disputed Interest shall ultimately become an Allowed Claim or

Allowed Interest, as the case may be, or regardless of whether sufficient Cash, New

Common Stock, New Warrants, or other property remains available for distribution in the

Distribution Reserve established on account of such Disputed Claim or Disputed Interest

at the time such Claim or Interest becomes entitled to receive a distribution under the

Plan.

      48.    <u>Payment Of Fees</u>.  All fees payable by the Debtors under 28 U.S.C.

§ 1930 shall be paid on or before the Effective Date, and each Reorganized Debtor shall

pay quarterly fees plus accrued interest under 28 U.S.C. § 1930 and 31 U.S.C. § 3717 to

the United States Trustee for its Chapter 11 Case, notwithstanding any substantive

consolidation for plan purposes, until its Chapter 11 Case is dismissed, converted to

chapter 7 or closed by the entry of a final decree.

49.    <u>Authorization To Consummate Plan</u>.  Notwithstanding Bankruptcy

Rule 3020(e), but subject to Articles 12.2 and 12.3 of the Plan, the Court authorizes the

Debtors to consummate the Plan upon entry of this Confirmation Order.  The Debtors are

authorized to execute, acknowledge, and deliver such deeds, assignments, conveyances,

and other assurances, documents, instruments of transfer, uniform commercial code

financing statements, trust agreements, mortgages, indentures, security agreements, and

bills of sale and to take such other actions as may be reasonably necessary to perform the

terms and provisions of the Plan, all transactions contemplated by the Plan, and all other

agreements related thereto.

50.    <u>Failure To Consummate Plan</u>.  If consummation of the Plan does

not occur, then the Plan, any settlement or compromise embodied in the Plan (including,

but not limited to, the fixing or limiting to an amount certain any Claim or Interest or

Class of Claims or Interests, the effect of substantive consolidation for purposes of the

Plan, the MDL Settlements, the Court's order approving the MDL Settlements, the GM

Settlement, or the allocation of the distributions to be made thereunder), the assumption

or rejection of executory contracts or leases effected by the Plan, and any document or

agreement executed pursuant to the Plan, shall be null and void.  In such event, nothing

contained in the Plan, the Disclosure Statement, or this Confirmation Order, and no acts

taken in preparation for consummation of the Plan, shall be deemed to constitute a waiver

or release of any Claims by or against the Debtors or any other Person, to prejudice in

any manner the rights of the Debtors, the holder of a Claim or Interest, the Creditors'

Committee, the Equity Committee, GM, the Plan Investors, or any Person in any further

proceedings involving such Debtor or Debtors or to constitute an admission of any sort

by the Debtors or any other Person, or be construed as a finding of fact or conclusion of

law with respect thereto.  Upon the occurrence of the Effective Date with respect to each

Debtor, the Plan shall be deemed substantially consummated as to such Debtor.

      51.    <u>Retention Of Jurisdiction</u>.  Pursuant to sections 105(a) and 1142 of

the Bankruptcy Code, and notwithstanding the entry of this Confirmation Order or the

occurrence of the Effective Date, and subject to the provisions of Sections 7.05 and 7.10

of the Delphi-GM Global Settlement Agreement and Delphi-GM Master Restructuring

Agreement, respectively, the Court shall retain exclusive jurisdiction as provided in the

Plan over all matters arising out of, and related to, the Chapter 11 Cases and the Plan to

the fullest extent permitted by law, including, among other items and matters, jurisdiction

over those items and matters set forth in Article XIII of the Plan.

      52.    <u>Dissolution Of Statutory Committees</u>.  Effective on the Effective

Date, the Statutory Committees appointed in the Chapter 11 Cases shall dissolve

automatically, whereupon their members, professionals, and agents shall be released from

any further duties and responsibilities in the Chapter 11 Cases and under the Bankruptcy

Code, except with respect to obligations arising under confidentiality agreements, non-

disclosure agreements, joint interest agreements, and protective orders entered during the

Chapter 11 Cases, all of which shall remain in full force and effect according to their

terms.  The Professionals retained by the Statutory Committees and the respective

members thereof shall not be entitled to compensation and reimbursement of expenses for

services rendered after the Effective Date, except for services rendered in connection

with challenges to any order confirming the Plan or any applications for allowance of

compensation and reimbursement of expenses pending on the Effective Date or filed after

the Effective Date and for the other duties and responsibilities of the Statutory

Committees set forth in this paragraph 52 and the Plan and other services as may be

requested by the Debtors, and the Reorganized Debtors shall pay the fees and expenses in

respect of such services in the ordinary course of business without further order of the

Bankruptcy Court.

       53.    <u>References To Plan Provisions</u>.  The failure to include or

specifically reference any particular provision of the Plan in this Confirmation Order

shall not diminish or impair the effectiveness of such provision, it being the intent of the

Court that the Plan be confirmed in its entirety.  The provisions of the Plan and of this

Confirmation Order shall be construed in a manner consistent with each other so as to

effect the purposes of each; <u>provided</u>, <u>however</u>, that if there is determined to be any

inconsistency between any Plan provision and any provision of this Confirmation Order

that cannot be so reconciled, then, solely to the extent of such inconsistency, the

provisions of this Confirmation Order shall govern and any such provision of this

Confirmation Order shall be deemed a modification of the Plan and shall control and take

precedence.  Notwithstanding the foregoing, in the event there are any conflicts between

the terms and provisions of the Plan or this Confirmation Order (as either document may

be amended) and the terms and provisions of the Delphi-GM Global Settlement

Agreement and Delphi-GM Master Restructuring Agreement, the terms of the Delphi-

GM Global Settlement Agreement and Delphi-GM Master Restructuring Agreement (as

appended to the Plan as Exhibits 7.20(a) and 7.20(b) and incorporated by reference in the

Plan) shall govern; provided, however, that notwithstanding the foregoing or anything to

the contrary in this order, the Plan or the Delphi-GM Definitive Documents, and upon the

consent of GM, which consent was acknowledged by GM's counsel on the record at the

Confirmation Hearing, nothing in this order, the Plan, or the Delphi-GM Definitive

Documents providing for the release of GM-Related Parties or an injunction of actions

against GM-Related Parties shall apply to (i) any claims, debts, obligations, rights, suits,

damages, actions, causes of action, remedies, and liabilities of the United States or any

agency thereof, (ii) any claims, debts, obligations, rights, suits, damages, actions, causes

of action, remedies, and liabilities of any State or any agency of any State, under state or

federal environmental laws; or (iii) any criminal liability under the laws of the United

States or any State.  In addition, nothing contained in the Plan or this Confirmation Order

shall alter, amend, or modify the rights of the Plan Investors under the Investment

Agreement, which remains binding and enforceable, unless such alteration, amendment,

or modification has been agreed to in writing by each Plan Investor.  To the extent that

any exhibit to the Plan is inconsistent with the terms of the Plan and unless otherwise

provided in this Confirmation Order, the terms of the exhibit to the Plan shall control as

to all transactions contemplated thereby and the terms of the Plan shall control as to any

Plan provision that may be required under an exhibit to the Plan other than the provisions

of Section 9 of the Investment Agreement, which provisions shall control in all respects.

     54.    <u>Separate Confirmation Orders</u>.  This Confirmation Order is and

shall be deemed a separate Confirmation Order with respect to each of the Debtors in

each Debtors' separate Chapter 11 Case for all purposes.  The Clerk of the Court is

directed to file and docket this Confirmation Order in the Chapter 11 Case of each of the
Debtors.

55.    <u>Filing And Recording</u>.  This Confirmation Order (a) is and shall be
effective as a determination that, on the Effective Date, all Claims and Interests existing
prior to such date have been unconditionally released, discharged, and terminated and (b)
is and shall be binding upon and shall govern the acts of all entities including, without
limitation, all filing agents, filing officers, title agents, title companies, recorders of
mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental
departments, secretaries of state, federal, state, and local officials, and all other persons
and entities who may be required, by operation of law, the duties of their office, or
contract, to accept, file, register, or otherwise record or release any document or
instrument.  Each and every federal, state, and local government agency is hereby
directed to accept any and all documents and instruments necessary, useful, or
appropriate (including Uniform Commercial Code financing statements) to effectuate,
implement, and consummate the transactions contemplated by the Plan and this
Confirmation Order without payment of any recording tax, stamp tax, transfer tax, or
similar tax imposed by state or local law.

56.    <u>Notice Of Confirmation Order And Occurrence Of Effective Date</u>.
On or before the fifth Business Day following the occurrence of the Effective Date, the
Debtors shall serve notice of this Confirmation Order and occurrence of the Effective
Date pursuant to Bankruptcy Rules 2002(f)(7), 2002(k), and 3020(c) on all holders of
Claims and Interests, the United States Trustee for the Southern District of New York,
and other parties-in-interest, by causing a notice of this Confirmation Order and the

70

occurrence of the Effective Date in substantially the form of the notice annexed hereto as

Exhibit D, which form is hereby approved (the "Notice of Effective Date"), to be

delivered to such parties by first class mail, postage prepaid; provided, however, that

notice need not be given or served under the Bankruptcy Code, the Bankruptcy Rules, or

this Confirmation Order to any Person to whom the Debtors mailed a notice of the Bar

Date or Confirmation Hearing, but received such notice returned marked "undeliverable

as addressed," "moved - left no forwarding address," "forwarding order expired," or

similar marking, unless the Debtors have been informed in writing by such Person of that

Person's new address.  The notice described herein is adequate under the particular

circumstances of the Chapter 11 Cases, and no other or further notice is necessary.

Notwithstanding the foregoing, pursuant to Bankruptcy Rule 2002(l), the Debtors shall be

deemed to have satisfied the requirements of Bankruptcy Rule 2002(f)(7) with respect to

any Claimholder that does not reside in the United States by publishing the Notice of

Effective Date in the Wall Street Journal (national, European, and Asian editions), the

New York Times (National Edition), and USA Today (worldwide), within 15 Business

Days of the Effective Date.

       57.      28 U.S.C. § 157(d).  Nothing in this Confirmation Order or the

Plan is intended to modify or violate 28 U.S.C. § 157(d).

       58.      GM Settlement.  The GM Settlement is hereby authorized and

approved pursuant to section 1123(b)(3) of the Bankruptcy Code, including (a) the

Delphi-GM Global Settlement Agreement, attached to the Plan as Exhibit 7.20(a), which

resolves, inter alia, the GM Claim, and (b) the Delphi-GM Master Restructuring

Agreement, attached to the Plan as Exhibit 7.20(b), which sets forth the continuing

71

obligations of GM and Delphi.  The terms of the Delphi-GM Global Settlement

Agreement and the Delphi-GM Master Restructuring Agreement, and the exhibits thereto,

are incorporated by reference into and comprise an integral part of the Plan and this

Confirmation Order.  In addition, to the extent that the Delphi-GM Global Settlement

Agreement and Delphi-GM Master Restructuring Agreement required certain provisions

to be contained in the Plan, including without limitation, the releases required by sections

4.01, 4.02, and 4.03 of the Delphi-GM Global Settlement Agreement (incorporated by

reference in Article 11.7 of the Plan), the retention of jurisdiction by the Bankruptcy

Court required by section 7.05 of the Delphi-GM Global Settlement Agreement and

section 7.10 of the Delphi-GM Master Restructuring Agreement, and the terms and

provisions relating to the assumption and rejection of contracts by and among the parties

to the Delphi-GM Master Restructuring Agreement as required by Article 5 of the

Delphi-GM Master Restructuring Agreement, such provisions are hereby approved.  In

addition, as provided in section 7.23 of the Delphi-GM Global Settlement Agreement, the

Affiliates of both GM and Delphi are hereby deemed to have acknowledged and shall be

bound by the terms of the Delphi-GM Global Settlement Agreement.  Reorganized

Delphi shall be authorized, empowered, and directed to make, no earlier than the

Effective Date, but no later than five days after the Effective Date, the IRC Section 414(l)

Transfer as set forth in section 2.03 of the Delphi-GM Global Settlement Agreement and

to issue and pay the 414(l) Note as set forth in section 2.03(c)(iii)(3) thereof.

      59.    <u>MDL Settlements</u>.  Upon the entry of orders approving the MDL

Settlement by the Court and the MDL Court, distributions pursuant to the Plan on

account of Section 510(b) Note Claims, Section 510(b) Equity Claims, and Section 510(b)

ERISA Claims shall be made in accordance with the terms of Articles 5.5, 5.8, 5.9, 7.15(a), 7.16 and 7.19 of the Plan.

60.    <u>Union Settlement Agreements</u>.  Pursuant to the Plan, upon the Effective Date, the Union Settlement Agreements and the certain documents referenced in Section 7.21 of the Plan shall be assumed and shall be valid, binding, and enforceable and shall not be in conflict with any federal or state law.

61.    <u>Effect On Other Orders And Agreements</u>.  Neither the confirmation of the Plan nor anything set forth in this Confirmation Order shall modify the following previous orders of the Court, except to the extent contemplated in such orders: (a) Order Under 11 U.S.C. §§ 363, 1113, and 1114 and Fed. R. Bankr. P. 6004 and 9019 Approving Memorandum of Understanding Among UAW, Delphi, and General Motors Corporation Including Modification of UAW Collective Bargaining Agreements and Retiree Welfare Benefits for Certain UAW-Represented Retirees, entered July 19, 2007 (Docket No. 8693), (b) Order Under 11 U.S.C. §§ 363, 1113, and 1114 and Fed. R. Bankr. P. 6004 and 9019 Approving Memorandum of Understanding Among IUE-CWA, Delphi, and General Motors Corporation Including Modification of IUE-CWA Collective Bargaining Agreements and Retiree Welfare Benefits for Certain IUE-CWA-Represented Retirees, entered August 16, 2007 (Docket No. 9106), (c) Order Under 11 U.S.C. §§ 363, 1113, and 1114 and Fed. R. Bankr. P. 6004 and 9019 Approving (I) Memoranda of Understanding Among IUOE, IBEW, IAM, Delphi, and General Motors Corporation Including Modification of IUOE, IBEW, and IAM Collective Bargaining Agreements and Retiree Welfare Benefits for Certain IUOE, IBEW, and IAM-Represented Retirees and (II) Modification of, and Term Sheet Regarding, Retiree Welfare Benefits for Certain

73

Non-Represented Hourly Active Employees and Retirees, entered August 16, 2007

(Docket No. 9107), (d) Order Under 11 U.S.C. §§ 363, 1113, and 1114 and Fed. R. Bankr.

P. 6004 and 9019 Approving Memoranda of Understanding Among USW, Delphi, and

General Motors Corporation Including Modification of USW Collective Bargaining

Agreements and Retiree Welfare Benefits for Certain USW-Represented Retirees,

entered August 29, 2007 (Docket No. 9169), (e) Order Authorizing and Approving

Delphi-Appaloosa Equity Purchase and Commitment Agreement Pursuant to 11 U.S.C.

§§ 105(a), 363(b), 503(b), and 507(a), entered August 2, 2007 (Docket No. 8856), (f)

Order Under 11 U.S.C. §§ 105(a), 363(b), 503(b), and 507(a) Authorizing and Approving

Delphi-Appaloosa Equity Purchase and Commitment Agreement Amendment, entered

December 10, 2007 (Docket No. 11382), and (g) both the Amended Opinion And Order

Regarding Lead Plaintiffs' Motions For (1) Final Approval Of Settlements, (2) Settlement

Class Certification, (3) Final Approval Of Plans Of Allocation, And (4) Award Of

Attorneys' Fees; And Delphi Trust I Interim Counsel's Motion For Attorneys' Fees, Case

No. 05-MD-01725 (E.D. Mich., January 11, 2008) and the Final Order Approving the

Multidistrict Litigation and Insurance Settlement entered on January 25, 2008 (Docket

No. 12358).

      62.    <u>Resolution Of Plan Objections Of Certain Senior Noteholders</u>.

      (a)    The request for approval of the settlement (the "Senior

Noteholders Settlement") under Bankruptcy Rule 9019 with certain holders of Senior

Notes (the "Senior Noteholders") represented by Goodwin Procter LLP made by oral

motion of the Debtors on January 17, 2008, is hereby approved.

(b)       Notice of the Senior Noteholders Settlement was adequate

and the terms of the Senior Noteholders Settlement as described on the record, are

appropriate and in the best interests of the Debtors and their estates.

(c)       Under the terms of the Senior Noteholders Settlement:

(i)       The Senior Noteholders' objections to
confirmation of the Plan (Docket Nos. 11471, 11951), the MDL
Settlement (Docket Nos. 10687, 10689), and certain motions for
allowance of claims pursuant to Bankruptcy Rule 3018 (Docket Nos.
11830, 11960) are withdrawn based on the Senior Noteholders Settlement;

(ii)       The Debtors agree to pay, up to an aggregate
maximum of $5 million, all actual, reasonable, documented fees and
expenses incurred by Goodwin Procter LLP, Klestadt & Winters (as
special conflicts counsel), and Maryann Keller & Associates (collectively,
the "Noteholders' Professionals") from September 1, 2007 through January
17, 2008, in connection with the representation of Senior Noteholders who
were current clients of the Noteholders' Professionals as of January 17,
2008, and former clients of the Noteholders' Professionals to the extent
current clients of the Noteholders' Professionals benefited from the work
product performed on behalf of the former clients.

(iii)       The Noteholders' Professionals fees and
expenses are subject to Court review for reasonableness, based on the
totality of the circumstances, and approval pursuant to section 1129(a)(4)
of the Bankruptcy Code.  The Noteholders' Professionals shall be required
to file fee applications and shall be subject to the procedures described in
the Professional Fee Order; provided, however, that the Debtors shall not
be required to pay any of the Noteholders' Professionals' fees and expenses
until such fees and expenses have been approved by the Court as being
reasonable based on the totality of the circumstances.  The Debtors shall
use their reasonable best efforts to obtain Court approval of the payment
of such fees and expenses, including, without limitation, preparing and
filing supporting pleadings and, if necessary, propounding testimony in
support of the fee applications and Senior Noteholders Settlement.

63.    Miscellaneous.

(a)       Notwithstanding anything in Article 5.1 of the Plan to the

contrary, any holder of a Secured Claim, which Claim arose as a result of a tax secured

by a lien, shall retain its lien in accordance with applicable non-bankruptcy law until the

75

Claim is paid in full with Postpetition Interest as provided in the Plan, and the payment of the Secured Claim shall not include the treatment set forth in Article 2.2(i) of the Plan.

(b)    Notwithstanding any provision of the Plan or this Confirmation Order to the contrary, the confirmation and effectuation of the Plan as modified shall not release, reduce, or discharge the Reorganized Debtors from any obligations under the Underwriters Indemnification Agreement dated August 31, 2007.

(c)    As stated on the record at the Confirmation Hearing, in resolution of the objection to confirmation of the Plan filed by Audio MPEG, Inc. and S.I.SV. EL., S.p.A. (Docket No. 11883), Claims against non-Debtors that are independent of the commercial relationship between the Debtors and Audio MPEG, Inc. or its parent Societa' Italiana per lo Sviluppo dell'Elettronica, S.I.SV.EL., S.p.A. are not covered under the third party release set forth under Article 11.5 of the Plan.

64.    <u>Modifications To The Amended Plan</u>.  At the request of the Debtors, the Amended Plan is hereby modified pursuant to section 1127(a) of the Bankruptcy Code as set forth on <u>Exhibit A</u> hereto.

Dated:  New York, New York
          January 25, 2008


          <u>    /s/ Robert D. Drain          </u>
          UNITED STATES BANKRUPTCY JUDGE

76