# EXHIBIT A

# Brownfield Cleanup Program (BCP)
## ECL ARTICLE 27/TITLE 14

| | DEPARTMENT USE ONLY<br>BCP SITE # _____ |
|---|---|

08/09

| Section I. | Requestor Information |
|---|---|

NAME  William J. McFarland on behalf of GM Components Holdings, LLC (GMCH)

ADDRESS  200 Upper Mountain Road

| CITY/TOWN  Lockport | ZIP CODE  14094 |
|---|---|

| PHONE  313-506-9462 | FAX  586-986-2281 | E-MAIL  william.j.mcfarland@gm.com |
|---|---|---|

NAME OF REQUESTOR'S REPRESENTATIVE  James Hartnett

ADDRESS  General Motors LLC, One General Motors Drive

| CITY/TOWN  Syracuse | ZIP CODE  13206 |
|---|---|

| PHONE  315-463-2391 | FAX  315-432-5023 | E-MAIL  jim.f.hartnett@gm.com |
|---|---|---|

NAME OF REQUESTOR'S CONSULTANT  Denis Conley

ADDRESS  Haley and Aldrich  200  Town Centre Drive Suite 200

| CITY/TOWN  Rochester | ZIP CODE  14623 |
|---|---|

| PHONE  585-321-4245 | FAX  585-486-8245 | E-MAIL  dconley@HaleyAldrich.com |
|---|---|---|

NAME OF REQUESTOR'S ATTORNEY  Barry Kogut, Esq.

ADDRESS  Bond Schoeneck and King PLLC, One Lincoln Center

| CITY/TOWN  Syracuse | ZIP CODE  13202-1355 |
|---|---|

| PHONE  315-218-8181 | FAX  315-218-8481 | E-MAIL  BKogut@bsk.com |
|---|---|---|

THE REQUESTOR MUST CERTIFY THAT HE/SHE IS EITHER A PARTICIPANT OR VOLUNTEER IN ACCORDANCE WITH ECL § 27-1405(1) BY CHECKING ONE OF THE BOXES BELOW:

| ☐ PARTICIPANT | ☒ VOLUNTEER |
|---|---|
| A requestor who either 1) was the owner of the site at the time of the disposal of hazardous waste or discharge of petroleum or 2) is otherwise a person responsible for the contamination, unless the liability arises solely as a result of ownership, operation of, or involvement with the site subsequent to the disposal of hazardous waste of, discharge of petroleum. | A requestor other than a participant, including a requestor whose liability arises solely as a result of ownership, operation of or involvement with the site subsequent to the disposal of hazardous waste or discharge of petroleum.<br><br>NOTE:  By checking this box, the requestor certifies that he/she has exercised appropriate care with respect to the hazardous waste found at the facility by taking reasonable steps to: i) stop any continuing discharge; ii) prevent any threatened future release; and iii) prevent or limit human, environmental, or natural resource exposure to any previously released hazardous waste. |

Requestor Relationship to Property (check one):

☐ Previous Owner    ☒ Current Owner    ☐ Potential/Future Purchaser    ☐ Other

If requestor is not the site owner, requestor will have access to the property throughout the BCP project.    ☐ Yes    ☐ No

(Note:  proof of site access must be submitted for non-owners)

1638866.1

## Section II.    Property Information Summary Sheet

PROPERTY NAME   GM Components Holdings, LLC Building 7

ADDRESS/LOCATION   200 Upper Mountain Road          CITY/TOWN  Lockport          ZIP CODE   14094

MUNICIPALITY (IF MORE THAN ONE, LIST ALL):   Lockport

COUNTY  Niagara                                    SITE SIZE (ACRES)  31

LATITUDE (degrees/minutes/seconds)    43°    09'    55"    LONGITUDE (degrees/minutes/seconds)    -78°    44'    3"

HORIZONTAL COLLECTION METHOD: ☐ SURVEY ☐ GPS ☒ MAP    HORIZONTAL REFERENCE DATUM:  WGS84

FOR EACH PARCEL, FILL OUT THE FOLLOWING TAX MAP INFORMATION (if more than three parcels, attach additional information)

| Parcel Address | Parcel No. | Section No. | Block No. | Lot No. | Acreage |
|---|---|---|---|---|---|
| 200 Upper Mountain Road, Lockport (BCP Site is a portion of this parcel) | 108.13-1-1 | | | | 342.25 |
| | | | | | |
| | | | | | |
| | | | | | |

1.  Do the property boundaries correspond to tax map metes and bounds?          ☐ Yes    ☒ No

   If no, please attach a metes and bounds description of the property.  **See Attachment 1**

2.  Is the required property map attached to the application? (application will not be processed without map) See Att. 2    ☒ Yes    ☐ No

3.  Is the property part of a designated En-zone pursuant to Tax Law § 21(b)(6)?          ☐ Yes    ☒ No

   For more information go to: http://www.nylovesbiz.com/BrownField_Redevelopment/default.asp.

   If yes, identify area (name)

   ☐ 50%    ☐ 100% of the site is in the Ez-zone (check one)

4.  PROPERTY DESCRIPTION NARRATIVE:  application covers the portion of GMCH's Lockport Complex known as Building 7.  The Building 7 BCP area includes the entire footprint of Building 7 and land to the east and west.  Building 7 was built as a manufacturing facility in stages from 1937 to 1951.

List of Existing Easements (type here or attach information)

| Easement Holder | Description |
|---|---|
| No easements | |
| | |
| | |
| | |

List of Permits issued by the NYSDEC or USEPA Relating to the Proposed Site (type here or attach information)

| Type | Issuing Agency | Description |
|---|---|---|
| Title V Air Permit | NYSDEC | permit is for entire GMCH Lockport Complex |
| Sewer Permit | City of Lockport | permit is for entire GMCH Lockport Complex |
| SPDES Permit | NYSDEC | permit is for entire GMCH Lockport Complex |
| | | |

Initials of each Requestor:

1638866.1

## Section III.    Current Site Owner/Operator Information

| | |
|---|---|
| OWNER'S NAME (if different from requestor) | |

ADDRESS

| CITY/TOWN | ZIP CODE |
|---|---|

| PHONE | FAX | E-MAIL |
|---|---|---|

OPERATOR'S NAME (if different from requestor or owner)

ADDRESS

| CITY/TOWN | ZIP CODE |
|---|---|

| PHONE | FAX | E-MAIL |
|---|---|---|

## Section IV.    Requestor Eligibility Information (Please refer to ECL § 27-1407)

If answering "yes" to any of the following questions, please provide an explanation as an attachment.

| | | Yes | No |
|---|---|---|---|
| 1. | Are any enforcement actions pending against the requestor regarding this site? | ☐ Yes | ☒ No |
| 2. | Is the requestor subject to an existing order relating to contamination at the site? | ☐ Yes | ☒ No |
| 3. | Is the requestor subject to an outstanding claim by the Spill Fund for this site? | ☐ Yes | ☒ No |
| 4. | Has the requestor been determined to have violated any provision of ECL Article 27? | ☐ Yes | ☒ No |
| 5. | Has the requestor previously been denied entry to the BCP? | ☐ Yes | ☒ No |
| 6. | Has the requestor been found in a civil proceeding to have committed a negligent or intentionally tortious act involving contaminants? | ☐ Yes | ☒ No |
| 7. | Has the requestor been convicted of a criminal offense that involves a violent felony, fraud, bribery, perjury, theft, or offense against public administration? | ☐ Yes | ☒ No |
| 8. | Has the requestor knowingly falsified or concealed material facts or knowingly submitted or made use of a false statement in a matter before the Department? | ☐ Yes | ☒ No |
| 9. | Is the requestor an individual or entity of the type set forth in ECL 27-1407.8(f) that committed an act or failed to act, and such act or failure to act could be the basis for denial of a BCP application? | ☐ Yes | ☒ No |

## Section V.    Property Eligibility Information (Please refer to ECL § 27-1405)

| | | Yes | No |
|---|---|---|---|
| 1. | Is the property, listed on the National Priorities List? | ☐ Yes | ☒ No |
| 2. | Is the property, listed on the NYS Registry of Inactive Hazardous Waste Disposal Sites? If yes, please provide:    Site #          Class # | ☐ Yes | ☒ No |
| 3. | Is the property subject to a permit under ECL Article 27, Title 9, other than an Interim Status facility? If yes, please provide:    Permit type:          EPA ID Number: Date permit issued:          Permit expiration date: | ☐ Yes | ☒ No |
| 4. | Is the property subject to a cleanup order under navigation law Article 27 or ECL Article 17 or Title 10? If yes, please provide    Order # | ☐ Yes | ☒ No |
| 5. | Is the property subject to a state or federal enforcement action related to hazardous waste or petroleum? If yes, please provide explanation as an attachment. | ☐ Yes | ☒ No |

## Section VI.    Project Description

What stage is the project starting at?    ☒ investigation    ☐ remediation

Please attach a description of the project which includes the following components:  **See Attachment 3**

- Purpose and scope of the project
- Estimated project schedule

1638866.1

## Section VII.   Property's Environmental History

To the extent that existing information/studies/reports are available to the requestor, please attach the following:

**1.   Environmental Reports  See Attachment 4**

A Phase I environmental site assessment report prepared in accordance with ASTM E 1527 (American Society for Testing and Materials: Standard Practice for Environmental Site Assessments: Phase I Environmental Site Assessment Process), and all environmental reports related to contaminants on or emanating from the site.

If a final investigation report is included, indicate whether it meets the requirements of ECL Article 27-1415(2):    ☐Yes    ☐No

**2.   Sampling Data:  Indicate known contaminants and the media which are known to have been affected:**

| Contaminant Category | Soil | Groundwater | Surface Water | Sediment | Soil Gas |
|---|---|---|---|---|---|
| Petroleum | | | | | |
| Chlorinated Solvents | 1,000 mg/kg | 193 mg/l | | | |
| Other VOCs | | | | | |
| SVOCs | 795 mg/kg | | | | |
| Metals | | | | | |
| Pesticides | | | | | |
| PCBs | | | | | |
| Other: | | | | | |

*Please describe:

**3.   Suspected Contaminants:  Indicate suspected contaminants and the media which may have been affected:**

| Contaminant Category | Soil | Groundwater | Surface Water | Sediment | Soil Gas |
|---|---|---|---|---|---|
| Petroleum | | | | | |
| Chlorinated Solvents | | | | | X |
| Other VOCs | | | | | |
| SVOCs | | | | | |
| Metals | | | | | |
| Pesticides | | | | | |
| PCBs | | | | | |
| Other: | | | | | |

*Please describe:

**4.   INDICATE KNOWN OR SUSPECTED SOURCES OF CONTAMINANTS**

| | | | |
|---|---|---|---|
| ☐ Above Ground Pipeline or Tank | ☐ Lagoons or Ponds | ☐ Underground Pipeline or Tank | ☐ Surface Spill or Discharge |
| ☒ Routine Industrial Operations | ☐ Dumping or Burial of Wastes | ☐ Septic tank/lateral field | ☐ Drums or Storage Containers |
| ☐ Adjacent Property | ☐ Seepage Pit or Dry Well | ☐ Foundry Sand | ☐ Electroplating |
| ☐ Coal Gas Manufacture | ☐ Industrial Accident | ☐ Unknown | |

Other:

**5.   INDICATE PAST LAND USES:**

| | | | | | |
|---|---|---|---|---|---|
| ☐ Coal Gas Manufacturing | ☒ Manufacturing | ☐ Agricultural Co-op | ☐ Dry Cleaner | ☐ Salvage Yard | ☐ Bulk Plant |
| ☐ Pipeline | ☐ Service Station | ☐ Landfill | ☐ Tannery | ☐ Electroplating | ☐ Unknown |

Other:

**6.   Owners:**  A list of previous owners with names, last known addresses and telephone numbers (describe requestor's relationship, if any, to each previous owner listed.  If no relationship, put "none").  See Attachment 5

**7.   Operators:**  A list of previous operators with names, last known addresses and telephone numbers (Describe requestor's relationship, if any, to each previous operator listed.  If no relationship, put "none").  See Attachment 5

1638866.1

## Section VIII.  Contact List Information

Please attach, at a minimum, the names and addresses of the following:  **See Attachment 6**

1.  The chief executive officer and planning board department chair of each county, city, town and village in which the property is located.
2.  Residents, owners, and occupants of the property and properties adjacent to the property.
3.  Local news media from which the community typically obtains information.
4.  The public water supplier which services the area in which the property is located.
5.  Any person who has requested to be placed on the contact list.
6.  The administrator of any school or day care facility located on or near the property.
7.  The location of a document repository for the project (e.g., local library).  In addition, attach a copy of a letter sent to the repository acknowledging that it agrees to act as the document repository for the property.

## Section IX.    Land Use Factors (Please refer to ECL § 27-1415(3))

| Current Use: | ☐ Residential | ☐ Commercial | ☒ Industrial | ☐ Vacant | ☐ Recreational | (check all that apply) |
|---|---|---|---|---|---|---|

| Intended Use: | ☐ Unrestricted | ☐ Residential | ☒ Commercial | ☒ Industrial | (check all that apply) |
|---|---|---|---|---|---|

| | Yes | No |
|---|---|---|
| Please check the appropriate box and provide an explanation as an attachment if appropriate.  Provide a copy of the local zoning classifications, comprehensive zoning plan designations, and/or current land use approvals. | | |
| 1.  Do current historical and/or recent development patterns support the proposed use?  (See #12 below re: discussion of area land uses) | ☒ | ☐ |
| 2.  Is the proposed use consistent with applicable zoning laws/maps? | ☒ | ☐ |
| 3.  Is the proposed use consistent with applicable comprehensive community master plans, local waterfront revitalization plans, designated Brownfield Opportunity Area plans, other adopted land use plans? | ☒ | ☐ |
| 4.  Are there any Environmental Justice Concerns?  (See § 27-1415(3)(p)). | ☐ | ☒ |
| 5.  Are there any federal or state land use designations relating to this site? | ☐ | ☒ |
| 6.  Do the population growth patterns and projections support the proposed use? | ☒ | ☐ |
| 7.  Is the property accessible to existing infrastructure? | ☒ | ☐ |
| 8.  Are there important cultural resources, including federal and state historic or heritage sites or Native American religious sites within ½ mile? | ☐ | ☒ |
| 9.  Are there important federal, state or local natural resources, including waterways, wildlife refuges, wetlands, or critical habitats of endangered or threatened species within ½ mile? | ☒ | ☐ |
| 10.  Are there floodplains within ½ mile? | ☒ | ☐ |
| 11.  Are there any institutional controls currently applicable to the property? | ☐ | ☒ |
| 12.  Describe the proximity to real property currently used for residential use, and to urban, commercial, industrial, agricultural, and recreational areas in an attachment.  **See Attachment 7** | | |
| 13.  Describe the potential vulnerability of groundwater to contamination that might migrate from the property, including proximity to wellhead protection and groundwater recharge areas in an attachment.  **See Attachment 7** | | |
| 14.  Describe the geography and geology of the site in an attachment.  **See Attachment 7** | | |

1638866.1

## Statement of Certification and Signatures

(By a requestor who is an individual)

I hereby affirm that information provided on this form and its attachments is true and complete to the best of my knowledge and belief. I am aware that any false statement made herein is punishable as a Class A misdemeanor pursuant to Section 210.45 of the Penal Law.

Date:_____    Signature:_____    Print Name:_____

(By a requestor other than an individual)

I hereby affirm that I am _____Remediation Director____ (title) of )_____General Motors LLC_____(entity); that I am authorized by that entity to make this application; that this application was prepared by me or under my supervision and direction; and that information provided on this form and its attachments is true and complete to the best of my knowledge and belief. I am aware that any false statement made herein is punishable as a Class A misdemeanor pursuant to Section 210.45 of the Penal Law.

Date: *1-14-10*    Signature: *William J. McFarland*    Print Name:_____William J. McFarland_____

SUBMITTAL INFORMATION:

**Three (3)** complete copies are required.

- **Two (2)** copies, one paper copy with original signatures and one electronic copy in Portable Document Format (PDF) on a CD or diskette, must be sent to:

  Chief, Site Control Section
  New York State Department of Environmental Conservation
  Division of Environmental Remediation
  625 Broadway
  Albany, NY 12233-7020

- One (1) paper copy must be sent to the DEC regional contact in the regional office covering the county in which the site is located. Please check our website for the address of our regional offices – http://www.dec.ny.gov/about/776.html

FOR DEPARTMENT USE ONLY

BCP SITE T&A CODE:_____    LEAD OFFICE:_____

1838866.1

# EXHIBIT B

# Brownfield Cleanup Program (BCP)
## ECL ARTICLE 27/TITLE 14

|  |
|---|
| DEPARTMENT USE ONLY BCP SITE #_____ |

08/09

| Section I. | Requestor Information |
|---|---|

NAME   William J. McFarland on behalf of GM Components Holdings, LLC (GMCH)

ADDRESS  200 Upper Mountain Road

| CITY/TOWN  Lockport | ZIP CODE  14094 |
|---|---|

| PHONE  313-506-9462 | FAX  586-986-2281 | E-MAIL  william.j.mcfarland@gm.com |
|---|---|---|

NAME OF REQUESTOR'S REPRESENTATIVE  James Hartnett

ADDRESS  General Motors LLC, One General Motors Drive

| CITY/TOWN  Syracuse | ZIP CODE  13206 |
|---|---|

| PHONE  315-463-2391 | FAX  315-432-5023 | E-MAIL  jim.f.hartnett@gm.com |
|---|---|---|

NAME OF REQUESTOR'S CONSULTANT  Denis Conley

ADDRESS  Haley and Aldrich  200 Town Centre Drive Suite 200

| CITY/TOWN  Rochester | ZIP CODE  14623 |
|---|---|

| PHONE  585-321-4245 | FAX  585-486-8245 | E-MAIL  dconley@HaleyAldrich.com |
|---|---|---|

NAME OF REQUESTOR'S ATTORNEY  Barry Kogut, Esq.

ADDRESS  Bond Schoeneck and King PLLC, One Lincoln Center

| CITY/TOWN  Syracuse | ZIP CODE  13202-1355 |
|---|---|

| PHONE  315-218-8181 | FAX  315-218-8481 | E-MAIL  BKogut@bsk.com |
|---|---|---|

THE REQUESTOR MUST CERTIFY THAT HE/SHE IS EITHER A PARTICIPANT OR VOLUNTEER IN ACCORDANCE WITH ECL § 27-1405(1) BY CHECKING ONE OF THE BOXES BELOW:

☐ PARTICIPANT

A requestor who either 1) was the owner of the site at the time of the disposal of hazardous waste or discharge of petroleum or 2) is otherwise a person responsible for the contamination, unless the liability arises solely as a result of ownership, operation of, or involvement with the site subsequent to the disposal of hazardous waste of, discharge of petroleum.

☒ VOLUNTEER

A requestor other than a participant, including a requestor whose liability arises solely as a result of ownership, operation of or involvement with the site subsequent to the disposal of hazardous waste or discharge of petroleum.

NOTE:   By checking this box, the requestor certifies that he/she has exercised appropriate care with respect to the hazardous waste found at the facility by taking reasonable steps to: i) stop any continuing discharge; ii) prevent any threatened future release; and iii) prevent or limit human, environmental, or natural resource exposure to any previously released hazardous waste.

Requestor Relationship to Property (check one):

☐ Previous Owner    ☒ Current Owner    ☐ Potential/Future Purchaser    ☐ Other

If requestor is not the site owner, requestor will have access to the property throughout the BCP project.        ☐ Yes    ☐ No

(Note:  proof of site access must be submitted for non-owners)

1638866.1

## Section II.   Property Information Summary Sheet

PROPERTY NAME   GM Components Holdings LLC Building 8

ADDRESS/LOCATION   200 Upper Mountain Road          CITY/TOWN   Lockport          ZIP CODE   14094

MUNICIPALITY (IF MORE THAN ONE, LIST ALL):   Lockport

COUNTY   Niagara          SITE SIZE (ACRES)   13.1

LATITUDE (degrees/minutes/seconds)   43°   10'   6"   LONGITUDE (degrees/minutes/seconds)   -78°   44'   6"

HORIZONTAL COLLECTION METHOD: ☐ SURVEY ☐ GPS ☒ MAP   HORIZONTAL REFERENCE DATUM:   WGS84

FOR EACH PARCEL, FILL OUT THE FOLLOWING TAX MAP INFORMATION (if more than three parcels, attach additional information)

| Parcel Address | Parcel No. | Section No. | Block No. | Lot No. | Acreage |
|---|---|---|---|---|---|
| 200 Upper Mountain Road, Lockport (BCP Site is a portion of this parcel) | 108.13-1-1 | | | | 342.25 |
| | | | | | |
| | | | | | |
| | | | | | |

1.   Do the property boundaries correspond to tax map metes and bounds?          ☐ Yes   ☒ No

   If no, please attach a metes and bounds description of the property.  **See Attachment 1**

2.   Is the required property map attached to the application? (application will not be processed without map) **See Att 2**   ☒ Yes   ☐ No

3.   Is the property part of a designated En-zone pursuant to Tax Law § 21(b)(6)?          ☐ Yes   ☒ No

   For more information please go to:  http://www.nylovesbiz.com/BrownField_Redevelopment/default.asp.

   If yes, identify area (name)

   ☐ 50%          ☐ 100% os the site is in the Ez-zone (check one)

4.   PROPERTY DESCRIPTION NARRATIVE: This application covers the portion of GMCH's Lockport Complex known as Building 8.  The Building 8 BCP area includes the entire footprint of Building 8.  Building 8 was built as a manufacturing facility in stages from 1960 to 1966.

List of Existing Easements (type here or attach information)

| Easement Holder | Description |
|---|---|
| No easements | |
| | |
| | |
| | |

List of Permits issued by the NYSDEC or USEPA Relating to the Proposed Site (type here or attach information)

| Type | Issuing Agency | Description |
|---|---|---|
| Title V Air Permit | NYSDEC | permit is for entire GMCH Lockport Complex |
| Sewer Permit | City of Lockport | permit is for entire GMCH Lockport Complex |
| SPDES Permit | NYSDEC | permit is for entire GMCH Lockport Complex |
| | | |

Initials of each Requestor:

## Section III.    Current Site Owner/Operator Information

| | | |
|---|---|---|
| OWNER'S NAME (if different from requestor) | | |
| ADDRESS | | |
| CITY/TOWN | | ZIP CODE |
| PHONE | FAX | E-MAIL |
| OPERATOR'S NAME (if different from requestor or owner) | | |
| ADDRESS | | |
| CITY/TOWN | | ZIP CODE |
| PHONE | FAX | E-MAIL |

## Section IV.    Requestor Eligibility Information (Please refer to ECL § 27-1407)

If answering "yes" to any of the following questions, please provide an explanation as an attachment.

| | | Yes | No |
|---|---|---|---|
| 1. | Are any enforcement actions pending against the requestor regarding this site? | ☐ Yes | ☒ No |
| 2. | Is the requestor subject to an existing order relating to contamination at the site? | ☐ Yes | ☒ No |
| 3. | Is the requestor subject to an outstanding claim by the Spill Fund for this site? | ☐ Yes | ☒ No |
| 4. | Has the requestor been determined to have violated any provision of ECL Article 27? | ☐ Yes | ☒ No |
| 5. | Has the requestor previously been denied entry to the BCP? | ☐ Yes | ☒ No |
| 6. | Has the requestor been found in a civil proceeding to have committed a negligent or intentionally tortious act involving contaminants? | ☐ Yes | ☒ No |
| 7. | Has the requestor been convicted of a criminal offense that involves a violent felony, fraud, bribery, perjury, theft, or offense against public administration? | ☐ Yes | ☒ No |
| 8. | Has the requestor knowingly falsified or concealed material facts or knowingly submitted or made use of a false statement in a matter before the Department? | ☐ Yes | ☒ No |
| 9. | Is the requestor an individual or entity of the type set forth in ECL 27-1407.8(f) that committed an act or failed to act, and such act or failure to act could be the basis for denial of a BCP application? | ☐ Yes | ☒ No |

## Section V.    Property Eligibility Information (Please refer to ECL § 27-1405)

| | | Yes | No |
|---|---|---|---|
| 1. | Is the property, listed on the National Priorities List? | ☐ Yes | ☒ No |
| 2. | Is the property, listed on the NYS Registry of Inactive Hazardous Waste Disposal Sites? If yes, please provide:    Site #          Class # | ☐ Yes | ☒ No |
| 3. | Is the property subject to a permit under ECL Article 27, Title 9, other than an Interim Status facility? If yes, please provide:    Permit type:          EPA ID Number:          Date permit issued:          Permit expiration date: | ☐ Yes | ☒ No |
| 4. | Is the property subject to a cleanup order under navigation law Article 27 or ECL Article 17 or Title 10? If yes, please provide    Order # | ☐ Yes | ☒ No |
| 5. | Is the property subject to a state or federal enforcement action related to hazardous waste or petroleum? If yes, please provide explanation as an attachment. | ☐ Yes | ☒ No |

## Section VI.    Project Description

What stage is the project starting at?    ☒ investigation    ☐ remediation

Please attach a description of the project which includes the following components:  **See Attachment 3**

- Purpose and scope of the project
- Estimated project schedule

1638866.1

## Section VII.   Property's Environmental History

To the extent that existing information/studies/reports are available to the requestor, please attach the following:

**1.   Environmental Reports   See Attachment 4**

A Phase I environmental site assessment report prepared in accordance with ASTM E 1527 (American Society for Testing and Materials: Standard Practice for Environmental Site Assessments: Phase I Environmental Site Assessment Process), and all environmental reports related to contaminants on or emanating from the site.

If a final investigation report is included, indicate whether it meets the requirements of ECL Article 27-1415(2):   ☐Yes   ☐No

**2.   Sampling Data:  Indicate known contaminants and the media which are known to have been affected:**

| Contaminant Category | Soil | Groundwater | Surface Water | Sediment | Soil Gas |
|---|---|---|---|---|---|
| Petroleum | | | | | |
| Chlorinated Solvents | 1,029 mg/kg | 2.1 mg/l | | | |
| Other VOCs | | | | | |
| SVOCs | 5.7 mg/kg | | | | |
| Metals | 66 mg/kg | | | | |
| Pesticides | | | | | |
| PCBs | | | | | |
| Other: | | | | | |

*Please describe:

**3.   Suspected Contaminants:  Indicate suspected contaminants and the media which may have been affected:**

| Contaminant Category | Soil | Groundwater | Surface Water | Sediment | Soil Gas |
|---|---|---|---|---|---|
| Petroleum | | | | | |
| Chlorinated Solvents | | | | | X |
| Other VOCs | | | | | |
| SVOCs | | | | | |
| Metals | | | | | |
| Pesticides | | | | | |
| PCBs | | | | | |
| Other: | | | | | |

*Please describe:

**4.   INDICATE KNOWN OR SUSPECTED SOURCES OF CONTAMINANTS:**

- ☐ Above Ground Pipeline or Tank
- ☒ Routine Industrial Operations
- ☐ Adjacent Property
- ☐ Coal Gas Manufacture
- ☐ Lagoons or Ponds
- ☐ Dumping or Burial of Wastes
- ☐ Seepage Pit or Dry Well
- ☐ Industrial Accident
- ☐ Underground Pipeline or Tank
- ☐ Septic tank/lateral field
- ☐ Foundry Sand
- ☐ Unknown
- ☐ Surface Spill or Discharge
- ☐ Drums or Storage Containers
- ☐ Electroplating

Other:

**5.   INDICATE PAST LAND USES:**

- ☐ Coal Gas Manufacturing
- ☐ Pipeline
- ☒ Manufacturing
- ☐ Service Station
- ☐ Agricultural Co-op
- ☐ Landfill
- ☐ Dry Cleaner
- ☐ Tannery
- ☐ Salvage Yard
- ☐ Electroplating
- ☐ Bulk Plant
- ☐ Unknown

Other:

**6.   Owners:**  A list of previous owners with names, last known addresses and telephone numbers (describe requestor's relationship, if any, to each previous owner listed.  If no relationship, put "none")  **See Attachment 5**

**7.   Operators:**  A list of previous owners with names, last known addresses and telephone numbers (describe requestor's relationship, if any, to each previous owner listed.  If no relationship, put "none") **See Attachment 5**

1638866.1

| Section VIII.  Contact List Information |
|---|

Please attach, at a minimum, the names and addresses of the following:  **See Attachment 6**

1.  The chief executive officer and planning board department chair of each county, city, town and village in which the property is located.
2.  Residents, owners, and occupants of the property and properties adjacent to the property.
3.  Local news media from which the community typically obtains information.
4.  The public water supplier which services the area in which the property is located.
5.  Any person who has requested to be placed on the contact list.
6.  The administrator of any school or day care facility located on or near the property.
7.  The location of a document repository for the project (e.g., local library).  In addition, attach a copy of a letter sent to the repository acknowledging that it agrees to act as the document repository for the property.

| Section IX.       Land Use Factors (Please refer to ECL § 27-1415(3)) |
|---|

Current Use:  ☐ Residential   ☐ Commercial   ☒ Industrial   ☐ Vacant   ☐Recreational    (check all that apply)

Intended Use:  ☐ Unrestricted   ☐ Residential   ☒ Commercial   ☒ Industrial    (check all that apply)

| Please check the appropriate box and provide an explanation as an attachment if appropriate.  Provide a copy of the local zoning classifications, comprehensive zoning plan designations, and/or current land use approvals. | Yes | No |
|---|---|---|
| 1.   Do current historical and/or recent development patterns support the proposed use?  (See #12 below re: discussion of area land uses) | ☒ | ☐ |
| 2.   Is the proposed use consistent with applicable zoning laws/maps? | ☒ | ☐ |
| 3.   Is the proposed use consistent with applicable comprehensive community master plans, local waterfront revitalization plans, designated Brownfield Opportunity Area plans, other adopted land use plans? | ☒ | ☐ |
| 4.   Are there any Environmental Justice Concerns?  (See § 27-1415(3)(p)). | ☐ | ☒ |
| 5.   Are there any federal or state land use designations relating to this site? | ☐ | ☒ |
| 6.   Do the population growth patterns and projections support the proposed use? | ☒ | ☐ |
| 7.   Is the property accessible to existing infrastructure? | ☒ | ☐ |
| 8.   Are there important cultural resources, including federal and state historic or heritage sites or Native American religious sites within ½ mile? | ☐ | ☒ |
| 9.   Are there important federal, state or local natural resources, including waterways, wildlife refuges, wetlands, or critical habitats of endangered or threatened species within ½ mile? | ☒ | ☐ |
| 10.  Are there floodplains within ½ mile? | ☒ | ☐ |
| 11.  Are there any institutional controls currently applicable to the property? | ☐ | ☒ |
| 12.  Describe the proximity to real property currently used for residential use, and to urban, commercial, industrial, agricultural, and recreational areas in an attachment.  **See Attachment 7** | | |
| 13.  Describe the potential vulnerability of groundwater to contamination that might migrate from the property, including proximity to wellhead protection and groundwater recharge areas in an attachment.  **See Attachment 7** | | |
| 14.  Describe the geography and geology of the site in an attachment.  **See Attachment 7** | | |

1638866.1

## Statement of Certification and Signatures

(By a requestor who is an individual)

I hereby affirm that information provided on this form and its attachments is true and complete to the best of my knowledge and belief. I am aware that any false statement made herein is punishable as a Class A misdemeanor pursuant to Section 210.45 of the Penal Law.

Date:_____    Signature:_____    Print Name:_____

(By a requestor other than an individual)

I hereby affirm that I am ____Remediation Director____ (title) of )____General Motors LLC____(entity); that I am authorized by that entity to make this application; that this application was prepared by me or under my supervision and direction; and that information provided on this form and its attachments is true and complete to the best of my knowledge and belief. I am aware that any false statement made herein is punishable as a Class A misdemeanor pursuant to Section 210.45 of the Penal Law.

Date: _1-14-10_    Signature: _William J. McFarland_    Print Name:_William J. McFarland_

SUBMITTAL INFORMATION:

**Three (3)** complete copies are required.

- **Two (2)** copies, one paper copy with original signatures and one electronic copy in Portable Document Format (PDF) on a CD or diskette, must be sent to:

  Chief, Site Control Section
  New York State Department of Environmental Conservation
  Division of Environmental Remediation
  625 Broadway
  Albany, NY 12233-7020

- One (1) paper copy must be sent to the DEC regional contact in the regional office covering the county in which the site is located. Please check our website for the address of our regional offices – http://www.dec.ny.gov/about/776.html

FOR DEPARTMENT USE ONLY

BCP SITE T&A CODE:_____    LEAD OFFICE:_____

1638866.1

# EXHIBIT C

# Brownfield Cleanup Program (BCP)
## ECL ARTICLE 27/TITLE 14

08/09

| | DEPARTMENT USE ONLY |
|---|---|
| | BCP SITE #_____ |

| Section I. | Requestor Information |
|---|---|

| NAME   William J. McFarland on behalf of GM Components Holdings, LLC (GMCH) | | |
|---|---|---|
| ADDRESS   200 Upper Mountain Road | | |
| CITY/TOWN  Lockport | | ZIP CODE  14094 |
| PHONE   313-506-9462 | FAX   586-986-2281 | E-MAIL  william.j.mcfarland@gm.com |
| NAME OF REQUESTOR'S REPRESENTATIVE   James Hartnett | | |
| ADDRESS   General Motors LLC, One General Motors Drive | | |
| CITY/TOWN  Syracuse | | ZIP CODE  13206 |
| PHONE   315-463-2391 | FAX   315-432-5023 | E-MAIL  jim.f.hartnett@gm.com |
| NAME OF REQUESTOR'S CONSULTANT   Denis Conley | | |
| ADDRESS   Haley and Aldrich  200  Town Centre Drive Suite 200 | | |
| CITY/TOWN  Rochester | | ZIP CODE  14623 |
| PHONE   585-321-4245 | FAX   585-486-8245 | E-MAIL  dconley@HaleyAldrich.com |
| NAME OF REQUESTOR'S ATTORNEY   Barry Kogut, Esq. | | |
| ADDRESS   Bond Schoeneck and King PLLC, One Lincoln Center | | |
| CITY/TOWN  Syracuse | | ZIP CODE  13202-1355 |
| PHONE   315-218-8181 | FAX   315-218-8481 | E-MAIL   BKogut@bsk.com |

THE REQUESTOR MUST CERTIFY THAT HE/SHE IS EITHER A PARTICIPANT OR VOLUNTEER IN ACCORDANCE WITH ECL § 27-1405(1) BY CHECKING ONE OF THE BOXES BELOW:

| ☐ PARTICIPANT | ☒ VOLUNTEER |
|---|---|
| A requestor who either 1) was the owner of the site at the time of the disposal of hazardous waste or discharge of petroleum or 2) is otherwise a person responsible for the contamination, unless the liability arises solely as a result of ownership, operation of, or involvement with the site subsequent to the disposal of hazardous waste of, discharge of petroleum. | A requestor other than a participant, including a requestor whose liability arises solely as a result of ownership, operation of or involvement with the site subsequent to the disposal of hazardous waste or discharge of petroleum.<br><br>NOTE:   By checking this box, the requestor certifies that he/she has exercised appropriate care with respect to the hazardous waste found at the facility by taking reasonable steps to: i) stop any continuing discharge; ii) prevent any threatened future release; and iii) prevent or limit human, environmental, or natural resource exposure to any previously released hazardous waste. |

Requestor Relationship to Property (check one):

☐ Previous Owner    ☒ Current Owner    ☐ Potential/Future Purchaser    ☐ Other

If requestor is not the site owner, requestor will have access to the property throughout the BCP project.    ☐ Yes    ☐ No

(Note:  proof of site access must be submitted for non-owners)

1638866.1

## Section II.    Property Information Summary Sheet

PROPERTY NAME   GM Components Holdings LLC Building 10

| ADDRESS/LOCATION   200 Upper Mountain Road | CITY/TOWN   Lockport | ZIP CODE   14094 |
|---|---|---|

MUNICIPALITY (IF MORE THAN ONE, LIST ALL):   Lockport

| COUNTY  Niagara | SITE SIZE (ACRES)  10.6 | | |
|---|---|---|---|
| LATITUDE (degrees/minutes/seconds)    43°    09'    55" | LONGITUDE (degrees/minutes/seconds)    -78°    44'    12" | | |
| HORIZONTAL COLLECTION METHOD: ☐ SURVEY ☐ GPS ☒ MAP | HORIZONTAL REFERENCE DATUM:  WGS84 | | |

FOR EACH PARCEL, FILL OUT THE FOLLOWING TAX MAP INFORMATION (if more than three parcels, attach additional information)

| Parcel Address | Parcel No. | Section No. | Block No. | Lot No. | Acreage |
|---|---|---|---|---|---|
| 200 Upper Mountain Road, Lockport (BCP Site is a portion of this parcel) | 108.13-1-1 | | | | 342.25 |
| | | | | | |
| | | | | | |
| | | | | | |

1.   Do the property boundaries correspond to tax map metes and bounds?    ☐ Yes   ☒ No

   If no, please attach a metes and bounds description of the property.  **See Attachment 1**

2.   Is the required property map attached to the application? (application will not be processed without map) **See Att 2**   ☒ Yes   ☐ No

3.   Is the property part of a designated En-zone pursuant to Tax Law § 21(b)(6)?    ☐ Yes   ☒ No

   For more information go to:  http://www.nylovesbiz.com/BrownField_Redevelopment/default.asp.

   If yes, identify area (name)

   ☐ 59%  ☐ 100% of the site is in the Ez-zone (check one)

4.   PROPERTY DESCRIPTION NARRATIVE: This application covers the portion of GMCH's Lockport Complex known as Building 10.  The Building 10 BCP area includes the entire footprint of Building 10.  Building 10 was built as a warehouse in two stages; the north end was completed in 1960 and the south end was completed in 1969.  The North and South sections are separated by a wall at column line 33.  A portion of the building was used for manufacturing by GM/Delphi for a period of time.  The north end of Building 10 has been converted to a facility housing new manufacturing operations staffed by non-GMCH personel.  GMCH continues to use the south end of the building as a warehouse.

List of Existing Easements (type here or attach information)

| Easement Holder | Description |
|---|---|
| No easements | |
| | |
| | |
| | |

List of Permits issued by the NYSDEC or USEPA Relating to the Proposed Site (type here or attach information)

| Type | Issuing Agency | Description |
|---|---|---|
| Title V Air Permit | NYSDEC | permit is for entire GMCH Lockport Complex |
| Sewer Permit | City of Lockport | permit is for entire GMCH Lockport Complex |
| SPDES Permit | NYSDEC | permit is for entire GMCH Lockport Complex |
| | | |

Initials of each Requestor:

1638866.1

## Section III.    Current Site Owner/Operator Information

| OWNER'S NAME (if different from requestor) | | |
|---|---|---|
| ADDRESS | | |
| CITY/TOWN | ZIP CODE | |
| PHONE | FAX | E-MAIL |
| OPERATOR'S NAME (if different from requestor or owner) | | |
| ADDRESS | | |
| CITY/TOWN | ZIP CODE | |
| PHONE | FAX | E-MAIL |

## Section IV.    Requestor Eligibility Information (Please refer to ECL § 27-1407)

If answering "yes" to any of the following questions, please provide an explanation as an attachment.

| | | | |
|---|---|---|---|
| 1. | Are any enforcement actions pending against the requestor regarding this site? | ☐ Yes | ☒ No |
| 2. | Is the requestor subject to an existing order relating to contamination at the site? | ☐ Yes | ☒ No |
| 3. | Is the requestor subject to an outstanding claim by the Spill Fund for this site? | ☐ Yes | ☒ No |
| 4. | Has the requestor been determined to have violated any provision of ECL Article 27? | ☐ Yes | ☒ No |
| 5. | Has the requestor previously been denied entry to the BCP? | ☐ Yes | ☒ No |
| 6. | Has the requestor been found in a civil proceeding to have committed a negligent or intentionally tortious act involving contaminants? | ☐ Yes | ☒ No |
| 7. | Has the requestor been convicted of a criminal offense that involves a violent felony, fraud, bribery, perjury, theft, or offense against public administration? | ☐ Yes | ☒ No |
| 8. | Has the requestor knowingly falsified or concealed material facts or knowingly submitted or made use of a false statement in a matter before the Department? | ☐ Yes | ☒ No |
| 9. | Is the requestor an individual or entity of the type set forth in ECL 27-1407.8(f) that committed an act or failed to act, and such act or failure to act could be the basis for denial of a BCP application? | ☐ Yes | ☒ No |

## Section V.    Property Eligibility Information (Please refer to ECL § 27-1405)

| | | | |
|---|---|---|---|
| 1. | Is the property, listed on the National Priorities List? | ☐ Yes | ☒ No |
| 2. | Is the property, listed on the NYS Registry of Inactive Hazardous Waste Disposal Sites? If yes, please provide:    Site #        Class # | ☐ Yes | ☒ No |
| 3. | Is the property subject to a permit under ECL Article 27, Title 9, other than an Interim Status facility? If yes, please provide:    Permit type:        EPA ID Number: Date permit issued:        Permit expiration date: | ☐ Yes | ☒ No |
| 4. | Is the property subject to a cleanup order under navigation law Article 27 or ECL Article 17 or Title 10? If yes, please provide    Order # | ☐ Yes | ☒ No |
| 5. | Is the property subject to a state or federal enforcement action related to hazardous waste or petroleum? If yes, please provide explanation as an attachment. | ☐ Yes | ☒ No |

## Section VI.    Project Description

What stage is the project starting at?        ☒ investigation        ☐ remediation

Please attach a description of the project which includes the following components:  **See Attachment 3**

- Purpose and scope of the project
- Estimated project schedule

1638866.1

## Section VII.    Property's Environmental History

To the extent that existing information/studies/reports are available to the requestor, please attach the following:

**1.    Environmental Reports    See Attachment 4**

A Phase I environmental site assessment report prepared in accordance with ASTM E 1527 (American Society for Testing and Materials: Standard Practice for Environmental Site Assessments: Phase I Environmental Site Assessment Process), and all environmental reports related to contaminants on or emanating from the site.

If a final investigation report is included, indicate whether it meets the requirements of ECL Article 27-1415(2):    ☐ Yes    ☐ No

**2.    Sampling Data:  Indicate known contaminants and the media which are known to have been affected:**

| Contaminant Category | Soil | Groundwater | Surface Water | Sediment | Soil Gas |
|---|---|---|---|---|---|
| Petroleum | | | | | |
| Chlorinated Solvents | 1,139 mg/kg | 116 mg/l | | | 386 mg/cu m |
| Other VOCs | 2.3 mg/kg | 0.2 mg/l | | | 12 mg/cu m |
| SVOCs | | | | | |
| Metals | | | | | |
| Pesticides | | | | | |
| PCBs | | | | | |
| Other: | | | | | |

*Please describe:

**3.    Suspected Contaminants:  Indicate suspected contaminants and the media which may have been affected:**

| Contaminant Category | Soil | Groundwater | Surface Water | Sediment | Soil Gas |
|---|---|---|---|---|---|
| Petroleum | | | | | |
| Chlorinated Solvents | | | | | |
| Other VOCs | | | | | |
| SVOCs | | | | | |
| Metals | | | | | |
| Pesticides | | | | | |
| PCBs | | | | | |
| Other: | | | | | |

*Please describe:

**4.    INDICATE KNOWN OR SUSPECTED SOURCES OF CONTAMINANTS:**

☐ Above Ground Pipeline or Tank   ☐ Lagoons or Ponds   ☐ Underground Pipeline or Tank   ☐ Surface Spill or Discharge
☒ Routine Industrial Operations   ☐ Dumping or Burial of Wastes   ☐ Septic tank/lateral field   ☐ Drums or Storage Containers
☐ Adjacent Property   ☐ Seepage Pit or Dry Well   ☐ Foundry Sand   ☐ Electroplating
☐ Coal Gas Manufacture   ☐ Industrial Accident   ☐ Unknown

Other:

**5.    INDICATE PAST LAND USES:**

☐ Coal Gas Manufacturing   ☒ Manufacturing   ☐ Agricultural Co-op   ☐ Dry Cleaner   ☐ Salvage Yard   ☐ Bulk Plant
☐ Pipeline   ☐ Service Station   ☐ Landfill   ☐ Tannery   ☐ Electroplating   ☐ Unknown

Other:

**6.    Owners:**  A list of previous owners with names, last known addresses and telephone numbers (describe requestor's relationship, if any, to each previous owner listed.  If no relationship, put "none").  **See Attachment 5**

**7.    Operators:**  A list of previous operators with names, last known addresses and telephone numbers (describe requestor's relationship, if any, to each previous operators listed.  If no relationship, put "none").  **See Attachment 5**

1638866.1

## Section VIII.  Contact List Information

Please attach, at a minimum, the names and addresses of the following:  **See Attachment 6**

1. The chief executive officer and planning board department chair of each county, city, town and village in which the property is located.
2. Residents, owners, and occupants of the property and properties adjacent to the property.
3. Local news media from which the community typically obtains information.
4. The public water supplier which services the area in which the property is located.
5. Any person who has requested to be placed on the contact list.
6. The administrator of any school or day care facility located on or near the property.
7. The location of a document repository for the project (e.g., local library).  In addition, attach a copy of a letter sent to the repository acknowledging that it agrees to act as the document repository for the property.

## Section IX.    Land Use Factors (Please refer to ECL § 27-1415(3))

| Current Use: | ☐ Residential | ☐ Commercial | ☒ Industrial | ☐ Vacant | ☐Recreational | (check all that apply) |
|---|---|---|---|---|---|---|

| Intended Use: | ☐ Unrestricted | ☐ Residential | ☒ Commercial | ☒ Industrial | (check all that apply) |
|---|---|---|---|---|---|

| | Please check the appropriate box and provide an explanation as an attachment if appropriate.  Provide a copy of the local zoning classifications, comprehensive zoning plan designations, and/or current land use approvals. | Yes | No |
|---|---|---|---|
| 1. | Do current historical and/or recent development patterns support the proposed use?  (See #12 below re: discussion of area land uses) | ☒ | ☐ |
| 2. | Is the proposed use consistent with applicable zoning laws/maps? | ☒ | ☐ |
| 3. | Is the proposed use consistent with applicable comprehensive community master plans, local waterfront revitalization plans, designated Brownfield Opportunity Area plans, other adopted land use plans? | ☒ | ☐ |
| 4. | Are there any Environmental Justice Concerns?  (See § 27-1415(3)(p)). | ☐ | ☒ |
| 5. | Are there any federal or state land use designations relating to this site? | ☐ | ☒ |
| 6. | Do the population growth patterns and projections support the proposed use? | ☒ | ☐ |
| 7. | Is the property accessible to existing infrastructure? | ☒ | ☐ |
| 8. | Are there important cultural resources, including federal and state historic or heritage sites or Native American religious sites within ½ mile? | ☐ | ☒ |
| 9. | Are there important federal, state or local natural resources, including waterways, wildlife refuges, wetlands, or critical habitats of endangered or threatened species within ½ mile? | ☒ | ☐ |
| 10. | Are there floodplains within ½ mile? | ☒ | ☐ |
| 11. | Are there any institutional controls currently applicable to the property? | ☐ | ☒ |

12. Describe the proximity to real property currently used for residential use, and to urban, commercial, industrial, agricultural, and recreational areas in an attachment.  **See Attachment 7**

13. Describe the potential vulnerability of groundwater to contamination that might migrate from the property, including proximity to wellhead protection and groundwater recharge areas in an attachment.  **See Attachment 7**

14. Describe the geography and geology of the site in an attachment.  **See Attachment 7**

1638866.1

## Statement of Certification and Signatures

(By a requestor who is an individual)

I hereby affirm that information provided on this form and its attachments is true and complete to the best of my knowledge and belief. I am aware that any false statement made herein is punishable as a Class A misdemeanor pursuant to Section 210.45 of the Penal Law.

Date:_____  Signature:_____  Print Name:_____

(By a requestor other than an individual)

I hereby affirm that I am _____Remediation Director_____ (title) of )_____General Motors LLC_____(entity); that I am authorized by that entity to make this application; that this application was prepared by me or under my supervision and direction; and that information provided on this form and its attachments is true and complete to the best of my knowledge and belief. I am aware that any false statement made herein is punishable as a Class A misdemeanor pursuant to Section 210.45 of the Penal Law.

Date: *1-14-10*   Signature: *William J McFarland*   Print Name: William J. McFarland

SUBMITTAL INFORMATION:

Three (3) complete copies are required.

- **Two (2)** copies, one paper copy with original signatures and one electronic copy in Portable Document Format (PDF) on a CD or diskette, must be sent to:

  Chief, Site Control Section
  New York State Department of Environmental Conservation
  Division of Environmental Remediation
  625 Broadway
  Albany, NY  12233-7020

- One (1) paper copy must be sent to the DEC regional contact in the regional office covering the county in which the site is located. Please check our website for the address of our regional offices – http://www.dec.ny.gov/about/776.html

FOR DEPARTMENT USE ONLY

BCP SITE T&A CODE:_____   LEAD OFFICE:_____

1638666.1

# EXHIBIT D

STATE OF NEW YORK:  DEPARTMENT OF ENVIRONMENTAL CONSERVATION
--------------------------------------------------------------

In the Matter of the
Development and Implementation
of a Remedial Investigation/Feasibility          ORDER
Study for an Inactive Hazardous Waste             ON
Disposal Site, Under Article 27, Title 9 and 13,   CONSENT
and Article 71, Title 27 of the                  INDEX # B8-0531-98-06
Environmental Conservation Law
of the State of New York by


              Delphi Automotive Systems LLC
              Respondent
                                          Site Code # 828064

--------------------------------------------------------------

WHEREAS,

1.      The New York State Department of Environmental Conservation (the "Department") is
responsible for enforcement of, inter alia, Article 27, Title 13 of the Environmental Conservation
Law of the State of New York ("ECL"), entitled "Inactive Hazardous Waste Disposal Sites,"
Article 27, Title 9 of the ECL entitled "Industrial Hazardous Waste Management" and Article 71
of the ECL entitled "Enforcement."  This Order is issued pursuant to the Department's authority
under, inter alia, ECL Article 27, Titles 9 and 13, ECL Article 71 Title 27, and ECL 3-0301.

2.      Delphi Automotive Systems LLC ("Respondent") is the owner of property located at
1000 Lexington Avenue, Rochester, Monroe County, New York (hereinafter referred to as the
"facility" or the "Site").  A Site map is attached as Appendix A to the Order.  The Site was
owned and operated by General Motors Corporation ("GM") before it was conveyed to
Respondent by deed dated December 10, 1998 and recorded in the Monroe County Clerk's
Office on January 28, 1999.

3.      Since 1938, various GM Divisions have operated the manufacturing facility at the Site to
produce automotive fuel systems and other automotive components.  Prior to the effective date of
this Order, environmental investigations and actions have been performed at the Site, beginning
in 1981 to address environmental conditions of concern at the Site and the facility has provided
the Department with copies of Work Plans and reports of these efforts.

4.      At the request of the Department, Haley & Aldrich of NY on behalf of GM prepared a
Data Summary Report (September 1998) (the "Data Report") which summarizes the results of
the previous environmental investigations.  The Data Report also sets forth the status of ongoing
remedial activities at the Site which include the operation of a groundwater migration control,
recovery and treatment system, LNAPL recovery systems in the Tank Farm Area and Building



22 and a soil vapor extraction system in what is referred to in the Data Report as Degreaser Investigation Study Area 5.

5.     The Site is an inactive hazardous waste disposal site, as that term is defined at ECL 27-1301.2, and it has been listed in the Registry of Inactive Hazardous Waste Disposal Sites in New York State as Site Number 828064. The Department has classified the Site as a Classification "2" pursuant to ECL 27-1305.4.b. This classification means that the Department has determined that the Site presents a "significant threat to the public health or environment" for which action is required.

6.     The facility filed an "interim status" application with the United States Environmental Protection Agency ("EPA") in 1980 under the federal Resource Conservation and Recovery Act ("RCRA") and submitted in 1982 a RCRA Part B permit application to operate a hazardous waste management facility. The EPA issued to the facility a RCRA Part B Permit that was effective as of February 29, 1984. The facility obtained interim status, pursuant to Title 6 of the Official Compilation of Codes, Rules and Regulations of the State of New York ("6 NYCRR") section 373.1.3(c) and operated a hazardous waste management facility under interim status.

7.     On December 28, 1987, the Department requested that the facility apply for a state permit, pursuant to 6 NYCRR Part 373 ("Part 373 Permit"). Rather than apply for a Part 373 Permit, the facility closed its hazardous waste management operation pursuant to the requirements of a Department approved closure plan. A closure certification was received by the Department on April 18, 1990 and the Department accepted the closure certification by its letter dated July 24, 1990.

8.     Respondent acknowledges that the facility is a hazardous waste management facility as that term is defined at 6 NYCRR section 370.2(b)(89) and is subject to regulation under ECL Article 27, Title 9, the regulations promulgated pursuant thereto and ECL Article 71, Title 27 (the "Industrial Hazardous Waste Management Program").

9.     EPA has authorized the Department to implement the RCRA Corrective Action program in New York. Furthermore, pursuant to ECL 71-2727.3.b, whenever on the basis of any information the commissioner determines that there is or has been a release of hazardous waste or constituents into the environment from a facility which has or has had interim status according to regulations adopted pursuant to Title 7 or 9 or Article 27 of this Chapter but which did not receive a final status permit, the commissioner may issue an order requiring corrective action, or such other response measures as he deems necessary including corrective action beyond the facility boundary to protect human health or the environment.

10.     In May 1988, the facility discovered and reported to the Department the presence of a plume of oil-like product (LNAPL) on the overburden water table at the northeast corner of the Plant 1 manufacturing building. The product was discovered in the course of a tank-removal excavation adjacent to the south end of an above-ground product-storage tank farm. The

-2-

Department opened spill file #8801732 for this occurrence and the facility has implemented the Interim Remedial Measure described at Subparagraph III.B.2.a of this Order to address the LNAPL. The Department's Spill Bureau closed this spill file on March 27, 2001 and forwarded the matter to the Department's Division of Environmental Remediation for follow-up under this Order on Consent.

11.   A.   Pursuant to ECL 27-1313.3.a, whenever the Commissioner of Environmental Conservation (the "Commissioner") "finds that hazardous wastes at an inactive hazardous waste disposal site constitute a significant threat to the environment, he may order the owner of such site and/or any person responsible for the disposal of hazardous wastes at such site (i) to develop an inactive hazardous waste disposal site remedial program, subject to the approval of the department, at such site, and (ii) to implement such program within reasonable time limits specified in the order" (The "Inactive Hazardous Waste Disposal Site Remedial Program").

B.   Any person under order pursuant to ECL 27-1313.3.a has a duty imposed by ECL Article 27, Title 13 to carry out the remedial program committed to under order. ECL 71-2705 provides that any person who fails to perform any duty imposed by ECL Article 27, Title 13 shall be liable for civil, administrative and/or criminal sanctions.

C.   The Department also has the power, inter alia, to provide for the prevention and abatement of all water, land, and air pollution. ECL 3-0301.1.i.

12.   The Department and Respondent agree that the goals of this Order are for Respondent to: (i) implement a Remedial Investigation/Feasibility Study ("RI/FS") for the Site in accordance with the Department-approved Work Plan prepared by Haley & Aldrich of New York and entitled "RI/FS Work Plan, Delphi Automotive Systems, Lexington Avenue Facility, Rochester, New York, Registry Site #828064, EPA ID No. NY D002215234" (October 2001) (as modified by Amendment No. 1 (December 2001)), which is attached to and incorporated into this Order as Appendix B, and any additional amendments thereto, (the "RI/FS Work Plan"); and (ii) reimburse the State's administrative costs as set forth in Paragraph IX of this Order.

13.   Respondent, without making any admission of law or fact, hereby: (i) waives its right to a hearing herein as provided by law; (ii) consents to the issuance and entry of this Order and agrees to be bound by its terms; (iii) consents to and agrees not to contest the authority or jurisdiction of the Department to issue or enforce this Order; and (iv) agrees not to contest the validity of this Order or its terms.

NOW, having considered this matter and being duly advised, IT IS ORDERED THAT:

I.   Remedial Investigation

A.   Within thirty (30) days after the effective date of this Order, the Respondent shall commence the Remedial Investigation described in the RI/FS Work Plan to complete the work of

-3-

defining the nature and extent of contamination associated with releases of hazardous wastes and hazardous constituents at the Site.

B.    1.    The facility must satisfy the requirements of the New York State Industrial Hazardous Waste Management law and regulations concerning corrective action. The RI/FS Work Plan reflects the overlap in the scope of the investigation required at the Site between the Department's Industrial Hazardous Waste Management Program and the Department's Inactive Hazardous Waste Disposal Site Remedial Program. Respondent's performance of the work under the RI/FS Work Plan shall satisfy the Department's Industrial Hazardous Waste Management Program "corrective action" requirements related to the investigation of whether there has been a release of hazardous waste or constituents into the environment from the facility, including a review of the scope of any contamination from a "solid waste management unit" or an "area of concern" as these terms are defined under or utilized in the Department's Industrial Hazardous Waste Management Program and identification of required remedial alternatives.

2.    The Department shall coordinate the investigation of existing contamination at the Site under this Order to avoid the imposition against Respondent of inconsistent or duplicative obligations arising out of the Department's applicable regulatory programs, including but not limited to, the Industrial Hazardous Waste Management Program and those requirements which may apply under the Department's spill program. This provision shall not relieve Respondent of any obligations arising out of applicable statutes and regulations which are not addressed by this Order.

C.    Respondent shall perform the Remedial Investigation in accordance with the RI/FS Work Plan.

D.    During the performance of Remedial Investigation field work, Respondent shall have on-Site a full-time representative who is qualified to supervise the work done.

E.    Within the time frame set forth in the RI/FS Work Plan, Respondent shall prepare a Remedial Investigation Report that shall contain the information specified in the RI/FS Work Plan as implemented and

1.    include all data generated and all other information generated by performance of the Remedial Investigation;

2.    provide all of the assessments and evaluations set forth in the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 [42 USC 9601 et seq.], as amended ("CERCLA"), the National Contingency Plan ("NCP") [40 CFR Part 300], the USEPA guidance document entitled "Guidance for Conducting Remedial Investigations and Feasibility Studies under CERCLA," dated October 1988, and any subsequent revisions to that guidance document and other appropriate USEPA and Department technical and administrative guidance documents and legal requirements identified in the RI/FS Work Plan

-4-

("applicable requirements");

3. in accordance with the RI/FS Work Plan identify any additional data that must be collected; and

4. include a certification by the individual or firm with primary responsibility for the day to day performance of the Remedial Investigation that all activities that comprised the Remedial Investigation were performed in full accordance with the RI/FS Work Plan.

II. Feasibility Study

A. In accordance with the schedule contained in the RI/FS Work Plan, Respondent shall perform and prepare a Feasibility Study evaluating on-Site and off-Site remedial actions with the goal of restoring the Site to pre-disposal conditions, to the extent feasible and authorized by law. At a minimum, the remedial alternatives evaluated shall eliminate or mitigate all significant threats to the public health and to the environment presented by the hazardous waste and hazardous constituents disposed at the Site through the proper application of scientific and engineering principles. The Feasibility Study shall be prepared by and have the signature and seal of a professional engineer who shall certify that the Feasibility Study was prepared in accordance with this Order.

B. Respondents shall perform and prepare the Feasibility Study in accordance with the RI/FS Work Plan and in a manner consistent with CERCLA, the NCP, and the applicable requirements identified in Subparagraph I.E.2.

III. Interim Remedial Measures ("IRMs")

A. IRM Approval Procedure.

1. Respondent may propose one or more IRMs or modification to an Ongoing IRM (as defined herein) for the Site.

2. In proposing each IRM or modification to an Ongoing IRM, Respondent shall submit to the Department a work plan that includes a chronological description of the anticipated activities together with a schedule for performance of those activities (an "IRM Work Plan") for that Site.

3. Upon the Department's determination that the proposal is an appropriate IRM or modification to an Ongoing IRM and upon the Department's approval of such work plan, the IRM Work Plan shall be incorporated into and become an enforceable part of this Order; and Respondent shall submit to the Department for its review and (as appropriate) approval, in accordance with the schedule contained in the Department-approved IRM Work Plan, detailed documents and specifications prepared, signed, and sealed by a professional engineer to

-5-

implement the Department-approved IRM. Such documents shall include a health and safety plan, contingency plan, and (if the Department requires such) a citizen participation plan that incorporates appropriate activities outlined in the Department's publication, "Citizen Participation in New York's Hazardous Waste Site Remediation Program: A Guidebook" dated June 30, 1998, and any subsequent revisions thereto, and 6 NYCRR Part 375.

    4.    Respondent shall then carry out such IRM or modification to an Ongoing IRM in accordance with the requirements of the approved IRM Work Plan, detailed documents and specifications, and this Order. Respondent shall notify the Department of any significant difficulties that may be encountered in implementing the Department-approved work plan, detailed documents, or specifications and shall not modify any obligation unless first approved by the Department.

    5.    During implementation of all construction activities identified in the Department-approved IRM Work Plan, Respondent shall have on-Site a full-time representative who is qualified to supervise the work done.

    6.    Within the schedule contained in the Department-approved IRM Work Plan, Respondent shall submit to the Department a final engineering report prepared by a professional engineer that includes a certification by that individual that all activities that comprised the Department-approved IRM or modification to an Ongoing IRM were completed in accordance with the Department-approved IRM Work Plan and this Order.

    a.    If the performance of the Department-approved IRM or modification to an Ongoing IRM encompassed construction activities, the final engineering report also shall include a detailed post-remedial construction operation and maintenance plan ("IRM O&M Plan"); "as-built" drawings and a final engineering report (each including all changes made to the Remedial Design during construction); and a certification by a professional engineer that the IRM or modification to an Ongoing IRM was implemented and all construction activities were completed in accordance with any applicable Department-approved detailed documents and specifications and all such activities were personally witnessed by him or her or by a person under his or her direct supervision. The IRM O&M Plan, "as built" drawings, final engineering report, and certification must be prepared, signed, and sealed by a professional engineer.

    b.    Upon the Department's approval of the IRM O&M Plan, Respondent shall implement the IRM O&M Plan in accordance with the requirements of the Department-approved IRM O&M Plan. Within 60 days after completion of the Department-approved IRM O&M Plan, if any, Respondent shall submit to the Department a final engineering report and certification that the activities identified in the Department-approved IRM O&M Plan were implemented in accordance with that plan.

    7.    After receipt of the final engineering report and certification, the

-6-

Department shall notify Respondent in writing whether the Department is satisfied that the IRM was completed in compliance with the Department-approved IRM Work Plan, detailed documents, and/or specifications.

B.    <u>Ongoing IRMs</u> - Prior to the effective date of this Order, Respondent implemented the following IRMs on the Site ("Ongoing IRMs"). The locations of the Ongoing IRMs are indicated on the Site Map attached as Appendix C to this Order. The Ongoing IRMs are continuing in operation and will be evaluated during the Feasibility Study and the remedy selection process to determine if they will be part of the selected remedial alternative for the Site. The Department acknowledges that the continued performance of the Ongoing IRMs, as described in the attached Appendices, while Respondent performs the RI/FS, will not expose the public health or the environment to a significantly increased threat of harm or damage at the Site.

1.    IRM Groundwater Migration Control, Collection and Treatment System: The facility has implemented a groundwater migration control system which intercepts, collects and treats contaminated groundwater moving downgradient from the manufacturing buildings at the Site. A description of this remedial activity is set forth in the attached Appendix D.

2.    IRMs: Light Non-Aqueous Phase Liquid (LNAPL) Recovery Systems:

a.    Tank Farm Area: The facility has installed and currently operates a LNAPL recovery system in an area at the northeast corner of the manufacturing building at the Site. A description of this remedial activity is set forth in the attached Appendix E.

b.    Building 22: The facility has also installed and currently operates a LNAPL recovery system in the area of Building 22 at the Site. A description of this remedial activity is set forth in the attached Appendix F.

3.    IRM: Soil Vapor Extraction System (Degreaser Investigation Study Area 5): The facility has installed and currently operates a soil-vapor extraction system in what is known as Degreaser Investigation Study Area 5. A description of this remedial activity is set forth in the attached Appendix G.

IV.    <u>Progress Reports</u>

A.    Respondent shall submit to the parties identified in Paragraph XIII in the numbers specified therein copies of written quarterly progress reports that:

1.    describe the actions which have been taken toward achieving compliance with this Order during the previous quarter;

2.    include all written analytical results of sampling and tests and all other data received or generated by Respondent or Respondent's contractors or agents in the previous

-7-

quarter, including quality assurance/quality control information, whether conducted pursuant to this Order or conducted independently by Respondent, related to the environmental conditions being investigated under this Order. The written analytical data must be received by Respondent at least two weeks prior to the end of a reporting period in order to be included in the progress report for that reporting period. Notwithstanding the foregoing, the records generated in connection with the performance monitoring being conducted by Respondent for the Ongoing IRMs shall not be submitted with these progress reports. They shall be maintained at the Site for review and inspection by the Department. The Department reserves the right to obtain copies of these records;

3.      identify all work plans, reports, and other deliverables required by this Order that were completed and submitted during the previous quarter;

4.      describe all work activities related to this Order, including, but not limited to, data collection and implementation of work plans, that are scheduled for the next quarter and provide other information relating to the progress of the work under this Order at the Site;

5.      include information regarding percentage of completion, unresolved delays encountered or anticipated that may affect the future schedule for implementation of Respondent's obligations under this Order, and efforts made to mitigate those delays or anticipated delays;

6.      include any modifications to any work plans that Respondent has proposed to the Department or that the Department has approved; and

7.      describe all activities undertaken in support of the Citizen Participation Plan during the previous quarter and those to be undertaken in the next quarter.

B.      Respondent shall submit these progress reports to the Department by the tenth day of every quarter beginning the fourth month following the effective date of this Order.

V.      Review of Submittals

A.      1.      The Department shall review each of the submittals Respondent makes pursuant to this Order to determine whether it was prepared, and whether the work done to generate the data and other information in the submittal was done, in accordance with this Order and generally accepted technical and scientific principles. The Department shall notify Respondent in writing of its approval or disapproval of the submittal. All Department-approved submittals shall be incorporated into and become an enforceable part of this Order.

2.      a.      If the Department disapproves a submittal, it shall so notify Respondent in writing and shall specify the reasons for its disapproval. Within thirty (30) days after receiving written notice that Respondent's submittal has been disapproved, Respondent

-8-

shall make a revised submittal to the Department that addresses and seeks to resolve all of the Department's stated reasons for disapproving the first submittal.

        b.     After receipt of the revised submittal, the Department shall notify Respondent in writing of its approval or disapproval. If the Department disapproves the revised submittal for failing to address and resolve the Department's stated reasons for disapproving the first submittal, Respondent shall be in violation of this Order and the Department may take any action or pursue whatever rights it has pursuant to any provision of statutory or common law unless Respondent has timely invoked the dispute resolution procedure set forth in Paragraph VI of this Order. If the Department approves the revised submittal, it shall be incorporated into and become an enforceable part of this Order.

        B.     The Department may direct Respondent to modify and/or amplify and expand a submittal if the Department determines, as a result of reviewing data generated by an activity required under this Order or as a result of reviewing any other data or facts, that further work is necessary to satisfy the goals of this Order. The Department will set forth the basis of its determination in writing. Upon receipt of the Department's written demand for modification and/or amplification and expansion of a submittal, Respondent shall proceed with such work unless Respondent objects in writing and invokes the dispute resolution procedure set forth in Paragraph VI of this Order.

## VI.    Dispute Resolution

        A.     The Department and Respondent shall attempt to resolve expeditiously and informally any disagreements concerning implementation of this Order and the RI/FS Work Plan, or any other matter required under this Order.

        B.     1.     If the Department disapproves a revised submittal, under Subparagraph V.A.2.b of this Order or if Respondent fails to modify and/or amplify and expand a submittal pursuant to Subparagraph V.B, Respondent shall be in violation of this Order unless, within 30 business days of receipt of the Department's written notice of disapproval of the revised submittal or of the Department's written determination of the need for further work pursuant to Subparagraph V.B, Respondent submits to the Department a request for an appointment of an Administrative Law Judge ("ALJ"), and a written statement setting forth the issues in dispute, the relevant facts upon which the dispute is based, and the factual data, analysis, opinion and documentation on which Respondent relies in support of its position (hereinafter called the "Statement of Position"). The Department shall submit to the Respondent its Statement of Position, including supporting documentation no later than thirty (30) business days after receipt of Respondent's Statement of Position.

        2.     Respondent shall be given the opportunity to meet with the appointed ALJ and the Department to present its responses to the Department's disapproval or determination. The time periods for submission of Statements of Position may be shortened or extended in

accordance with written notice by the Department and as agreed to in writing by Respondent.

3.      The Department shall maintain an administrative record of any dispute under this Paragraph. The record shall include the Statement of Position of each party served pursuant to the preceding Subparagraph and any relevant information. The record shall be available for review of all parties and the public.

4.      Upon review of the administrative record as developed pursuant to this Paragraph, the ALJ shall issue a final decision and order resolving the dispute. Respondent shall revise and/or modify and/or amplify and expand the submittal in accordance with the Department's specific comments, as may be modified by the ALJ, except for those which have been withdrawn by the ALJ, and shall submit a revised submittal. Subject to the provisions of Subparagraph VI.B.8, the period of time within which the submittal must be revised as specified by the Department in its notice of disapproval shall control unless the ALJ revises the time frame in the ALJ's final decision and order resolving the dispute.

5.      After receipt of the revised submittal described in Subparagraph VI.B.4, the Department shall notify Respondent in writing of its approval or disapproval of the revised submittal. If the submittal fails to address and resolve the Department's specific comments, as may be modified by the ALJ, and the Department disapproves the submittal for this reason, Respondent shall be in violation of this Order and the ECL.

6.      In review by the ALJ of any dispute pursued under this Paragraph, Respondent shall have the burden of proving that there is no rational basis for the Department's position.

7.      Respondent shall retain those rights available pursuant to Article 78 of the Civil Practice Law and Rules of the State of New York ("CPLR"), provided that a petition under Article 78 is filed within thirty (30) days after the Respondent's receipt of the written decision and order issued by the ALJ.

8.      The invocation of the procedures stated in this Paragraph shall not extend, postpone or modify Respondent's obligations under this Order with respect to any undisputed items. Respondent shall not be in violation of this Order for failure to perform tasks or obligations which are directly related to issues in dispute or which may be altered or revised in the resolution of issues in dispute.

9.      The invocation of the procedures stated in this Paragraph shall constitute an election of remedies by Respondent, and such election of this remedy shall constitute a waiver of any and all other remedies which may otherwise be available to Respondent regarding the issue(s) in dispute.

-10-

VII.    Penalties

A.    Respondent's failure to comply with any term of this Order constitutes a violation of this Order and the ECL.

B.    Notwithstanding any provision in the Order or the ECL to the contrary, Respondent shall not suffer any penalty under this Order or the ECL or be subject to any proceeding or action if it cannot comply with any requirement hereof because of war, riot, labor dispute, adverse weather conditions, or any fact or circumstance beyond Respondent's reasonable control ("force majeure event"). Respondent shall, within five (5) business days of when it obtains knowledge of any such condition, notify the Department in writing. Respondent shall include in such notice the measures taken and to be taken by Respondent to prevent or minimize any delays and shall request an appropriate extension or modification of this Order. Failure to give such notice within such five (5) business day period constitutes a waiver of any claim that a delay is not subject to penalties. Respondent shall have the burden of proving that an event is a defense to compliance with this Order pursuant to Subparagraph VII.B.

VIII.    Entry upon Site

Respondent hereby consents to the entry upon the Site or areas in the vicinity of the Site which may be under the control of Respondent by any duly designated employee, consultant, contractor, or agent of the Department or any State agency (the "State representative") for purposes of inspection, sampling, and testing to ensure Respondent's compliance with this Order, provided the State representative informs the Respondent when it is on Site by signing in with facility security personnel. All State representatives shall comply with all applicable and reasonable security and safety programs and protocols that apply to the Site or areas in the vicinity of the Site which may be under the control of Respondent. Respondent shall notify the State representative of all such security and safety programs and protocols. During performance of the RI and any Department-approved IRMs or modifications to Ongoing IRMs, Respondent shall permit the Department at reasonable times full access to all records relating to work being performed under the terms of this Order and shall notify the Department at least seven (7) days in advance of, and allow the Department to attend, any job progress meetings, substantial completion meeting and inspection, and final meeting and inspection. Nothing in this Order, however, shall afford the Department the right to review records which are privileged communications, attorney work product, mental impressions, conclusions, opinions, or legal theories, as provided for by applicable New York law.

IX.    Payment of State Costs

A.    Within sixty-five (65) days after receipt of an itemized invoice from the Department, Respondent shall pay to the Department a sum of money which shall represent reimbursement for the State's expenses including, but not limited to, direct labor, fringe benefits, indirect costs, travel, analytical costs, and contractor costs incurred by the State of New York for

-11-

work related to the negotiation of this Order and attached Work Plan and the oversight of Respondent's activities under this Order, including reviewing and revising submittals made pursuant to this Order, overseeing activities conducted pursuant to this Order, the collection and analysis of samples, and administrative costs associated with this Order. The costs to be paid pursuant to this Paragraph IX are those costs incurred by the State after July 1, 1998. The Department reserves any rights it may have to seek reimbursement for any State costs associated with the Site not reimbursed under this Order.

B.   Personal service costs shall be documented by reports of Direct Personal Service, which shall identify the employee name, title, biweekly salary, and time spent (in hours) on the project during the billing period, as identified by an assigned time and activity code. Approved agency fringe benefit and indirect cost rates shall be applied. Non-personal service costs shall be summarized by category of expense (e.g., supplies, materials, travel, contractual) and shall be documented by expenditure reports.

C.   Such invoice shall be sent to the Respondent at the following address:

> Richard C. Eisenman
> Delphi Automotive Systems LLC
> PO Box 92700
> Rochester, New York 14692

D.   Such payment shall be made by certified check or bank-issued check payable to the Department of Environmental Conservation and shall be sent to:

> Bureau of Program Management
> Division of Environmental Remediation
> New York State Department of Environmental Conservation
> 625 Broadway
> Albany, NY 12233-7010

E.   Respondent may object to payment of invoiced costs if it believes they: (i) reflect a clerical error, (ii) are based upon inaccurate accounting information, or (iii) are not related to the activities conducted pursuant to this Order. If Respondent questions a State invoice issued pursuant to Paragraph IX of this Consent Order, Respondent shall do so by identifying in writing, within thirty (30) days of its receipt, the items in question. This request should be directed to the Director of the Bureau of Program Management (the "Director") at the above cited address. The Director's written decision issued in response to this inquiry shall be a final agency determination for purposes of seeking review under Article 78 of the CPLR. If the Director revises the invoice, Respondent shall pay the revised invoice within sixty-five (65) days of its receipt of the revision.

-12-

F.    Respondent's failure to pay the revised invoice within sixty-five (65) days of receipt thereof or, if the Director determines that the invoice need not be revised, Respondent's failure to pay the original invoice within sixty-five (65) days of receipt of the Director's written decision, shall be a violation of this Consent Order and subject to whatever enforcement action is within the Department's jurisdiction unless, within thirty (30) business days after receipt of the Director's written decision, Respondent commences an action for review of the Director's written decision pursuant to Article 78 of the CPLR.

X.    Department Reservation of Rights

A.    Nothing contained in this Order shall be construed as barring, diminishing, adjudicating, or in any way affecting any of the Department's civil, criminal, or administrative rights or authorities, except as otherwise specified in this Order.

B.    Nothing contained in this Order shall be construed to prohibit the Commissioner or his duly authorized representative from exercising any summary abatement powers.

XI.    Indemnification

Respondent shall indemnify and hold the Department, the State of New York, and their representatives and employees harmless for all claims, suits, actions, damages, and costs of every name and description arising out of or resulting from the fulfillment or attempted fulfillment of this Order by Respondent and/or any of Respondent's directors, officers, employees, servants, agents, successors, and assigns. Said indemnification will not include indemnification in any form for unlawful, willful, malicious or grossly negligent acts or omissions on the part of the Department, the State of New York or their representatives and employees.

XII.    Public Notice

A.    Within thirty (30) days after the effective date of this Order, Respondent shall record in the Monroe County Clerk's Office an executed Notice of Order in the form attached as Appendix H and provide the Department with a copy of such instrument certified by the County Clerk to be a true and faithful copy of the instrument as recorded in the office of the County Clerk to give all parties who may acquire any interest in the Site notice of this Order.

B.    If Respondent proposes to convey the whole or any part of Respondent's ownership interest in the Site, Respondent shall, not fewer than thirty (30) days before the date of conveyance, notify the Department in writing of the identity of the transferee and of the nature and proposed date of the conveyance and shall notify the transferee in writing, with a copy to the Department, of the applicability of this Order.

-13-

XIII.    <u>Communications</u>

    A.    All written communications required by this Order shall be transmitted by United States Postal Service, by private courier service, or hand delivered as follows:

        1.    Communication from Respondent shall be sent to:

        Regional Hazardous Waste Remediation Engineer
        New York State Department of Environmental Conservation
        Division of Environmental Remediation
        Region 8
        6274 E. Avon-Lima Road
        Avon, New York 14414

with copies to:

        Edward Belmore, Chief Western Remedial Section
        Division of Environmental Remediation
        New York State Department of Environmental Conservation
        625 Broadway
        Albany, New York  12233-7017

        Maura C. Desmond, Senior Attorney
        New York State Department of Environmental Conservation
        Division of Environmental Enforcement
        270 Michigan Avenue
        Buffalo, New York 14203-2999

        Dave Napier
        Regional Toxics Coordinator
        New York State Department of Health
        335 E. Main Street
        Rochester, New York 14604-2127

        Richard Elliott
        Monroe County Department of Health
        PO Box 92832
        Rochester, New York 14692

2.      Communication to be made from the Department to Respondent shall be sent to:

>Richard C. Eisenman
>Delphi Automotive Systems LLC
>PO Box 92700
>Rochester, New York 14692

with copies to:

>Kyle M. H. Jones, Esq.
>Delphi Automotive Systems LLC
>PO Box 5052
>Troy, Michigan 48007-5052

>Barry R. Kogut, Esq.
>Bond, Schoeneck & King, LLP
>One Lincoln Center
>Syracuse, New York 13202

B.     Copies of work plans and reports prepared pursuant to this Order shall be submitted as follows:

>Two copies to Region 8.

>One copy to Chief Western Remedial Action.

>One copy to Environmental Enforcement.

>One copy to New York State Department of Health

>One copy to Monroe County Department of Health.

C.    1.    Within thirty (30) days after Respondent's receipt of the Department's written approval of any report submitted pursuant to this Order, Respondent shall submit to the Regional Hazardous Waste Remediation Engineer such additional copies of the Department-approved reports as may be reasonably requested in the format designated by the Department.

2.    Within thirty (30) days after Respondent's receipt of the Department's written approval of the Feasibility Study Report, Respondent shall submit one microfilm copy of the Department-approved Remedial Investigation Report and of the Department-approved Feasibility Study Report to Director, Division of Environmental Remediation.

D.     The Department and Respondent reserve the right to designate additional or

-15-

different addressees for communication upon written notice to the other.

XIV.  <u>Miscellaneous</u>

A.      All activities Respondent is required to undertake under this Order are ordinary and necessary expenses for the continued operation of Respondent.

B.      Respondent shall retain professional consultants, contractors, laboratories and quality assurance/quality control personnel, and third party data validators acceptable to the Department to perform the technical, engineering, and analytical obligations required by this Order (the "technical work").  Respondent intends to use the services of H & A of New York, LLP d/b/a Haley & Aldrich of NY to perform certain of the technical work under this Order and this is acceptable to the Department.  The Respondent shall not use any other firm to perform the technical work under this Order without submitting the respective experience, capabilities and qualifications of that firm to the Department for prior approval, which approval shall not be unreasonably withheld or delayed.  The Department's approval of these firms or individuals shall be obtained before the start of any activities for which Respondent and such firm will be responsible.  The responsibility for the performance of the professionals retained by Respondent shall rest solely with Respondent.

C.      Respondent represents that (a) the Data Report is an accurate summary of the results of the Respondent's knowledge of, and/or, past investigations into, the extent of soil and groundwater impacts from prior operations at the Site and (b) the RI/FS Work Plan is intended to address the data gaps remaining from those past investigations in order to select a remedial alternative that will address environmental conditions of concern in accordance with applicable law.

D.      1.      The Department shall have the right to obtain split samples, duplicate samples, or both, of all substances and materials sampled by Respondent.  The Department also shall have the right to take its own samples and the Department shall provide Respondent with a reasonable opportunity to take split samples of all substances and materials sampled by the Department.

2.      Respondent shall make available to the Department the results of all sampling and/or tests or other data generated by Respondent with respect to implementation of this Order and shall submit these results in the progress reports required by this Order.  The Department shall submit to the Respondent the analytical results of its sampling in a manner which allows for timely consideration by Respondent in its preparation of submittals required under this Order.

E.      Respondent shall notify the Department in writing at least seven (7) working days in advance of any field activities to be conducted pursuant to this Order.

F.    Respondent shall obtain all permits, easements, rights-of-way, rights-of-entry, approvals, or authorizations necessary to perform Respondent's obligations under this Order. If, despite its best efforts, Respondent is unable to obtain such access, approval or authorization, Respondent shall notify the Department in writing setting forth the steps it has taken and describing constraints and viable alternatives as a result of the failure to obtain such access, approvals or authorizations. The Department may, at its discretion and within its authority, assist Respondent in obtaining access, approvals or authorizations or the Department may approve modifications to the RI/FS Work Plan or take any other action which may be appropriate and is otherwise available to the Department. If Respondent cannot obtain such authorization on a timely basis, the time for performance of any obligation dependent upon such authorization shall be appropriately extended and the Order appropriately modified.

G.    Respondent acting through its officers, directors, agents, servants and employees, and Respondent's successors and assigns shall be bound by this Order. Any change in ownership or corporate status of Respondent including, but not limited to, any transfer of assets or real or personal property shall in no way alter Respondent's responsibilities under this Order. Respondent's officers, directors, employees, servants, and agents shall be obliged to comply with the relevant provisions of this Order in the performance of their designated duties on behalf of Respondent.

H.    Respondent shall provide a copy of this Order to each contractor hired to perform work required by this Order and to each person representing Respondent with respect to the Site and shall condition all contracts entered into in order to carry out the obligations identified in this Order upon performance in conformity with the terms of this Order. Respondent or Respondent's contractors shall provide written notice of this Order to all subcontractors hired to perform any portion of the work required by this Order. Respondent shall nonetheless be responsible for ensuring that Respondent's contractors and subcontractors perform the work in satisfaction of the requirements of this Order.

I.    To the extent authorized under 42 USC § 9613 and any other applicable law, the Respondent shall not be liable for any claim in the nature of contribution for matters addressed under this Order.

J.    All references to "professional engineer" in this Order are to an individual registered as a professional engineer in accordance with Article 145 of the New York State Education Law. If such individual is a member of a firm, that firm must be authorized to offer professional engineering services in the State of New York in accordance with Article 145 of the New York State Education Law.

K.    All references to "days" in this Order are to calendar days unless otherwise specified.

L.    The paragraph headings set forth in this Order are included for convenience of

-17-

reference only and shall be disregarded in the construction and interpretation of any of the provisions of this Order.

  M. 1. No term, condition, understanding, or agreement purporting to modify or vary any term of this Order shall be binding unless made in writing and subscribed by the party to be bound.  No informal advice, guidance, suggestion, or comment by the Department regarding any report, proposal, plan, specification, schedule, or any other submittal shall be construed as relieving Respondent of Respondent's obligation to obtain such formal approvals as may be required by this Order.  Notwithstanding the foregoing, the Department's Project Manager, upon written request by Respondent, may approve in writing minor changes to the RI/FS Work Plan that are prompted by field conditions.

   2. If Respondent desires that any provision of this Order be changed, Respondent shall make timely written application, signed by Respondent, to the Commissioner setting forth reasonable grounds for the relief sought.  Copies of such written application shall be delivered or mailed to the Regional Hazardous Waste Remediation Engineer with a copy to Maura Desmond.

  N. The effective date of this Order is the date the Commissioner or the Commissioner's designee signs it.

DATED: Albany, New York
    2002

   FEB 4 2002

        ERIN M. CROTTY, COMMISSIONER
        New York State Department
        of Environmental Conservation

        By:

        _Susan I. Taluto_
        Susan I. Taluto
        Deputy Commissioner
        Water Quality and Environmental Remediation

CONSENT BY RESPONDENT

Respondent hereby consents to the issuing and entering of this Order, waives
Respondent's right to a hearing herein as provided by law, and agrees to be bound by this Order.

Delphi Automotive
Systems LLC

By: _____

Title: Plant Manager

Date: 1/2/02

STATE OF NEW YORK      )
                       ) s.s.:
COUNTY OF MONROE       )

On this 2nd ____ day of January ____ in the year 2002 before me, the

undersigned, a notary public in and for said State, personally appeared   Neal R. Evans

___, personally known to me or proved to me on the basis of satisfactory evidence to be the

individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me

that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their

signature(s) on the instrument, the individual(s) or the person upon behalf of which the

individual(s) acted, executed this instrument.

Frank J. Blasioli, Jr.
Notary Public



FRANK J. BLASIOLI JR
Notary Public - New York
County of Monroe
My Commission Expires
November 30, 2002

-19-