**Hearing Date and Time:**
**April 22, 2010 at 10:00 a.m.**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Robert J. Lemons

WEIL, GOTSHAL & MANGES LLP
Weil, Gotshal & Manges LLP
1300 Eye Street, NW, Suite 900
Washington, D.C.  20005
(202) 682-7190
(202) 857-0940
David R. Berz, Esq.
David B. Hird, Esq.
Matthew D. Morton, Esq.

Counsel for Interested Party
GM Components Holdings LLC

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| **In re** | **Chapter 11** |
| **DPH Holdings CORP., et al.,** | **Case No. 05-44481 (RDD)** |
| **Debtors.** | **(Jointly Administered)** |

---

**STATEMENT OF GM COMPONENTS HOLDINGS LLC**
**REGARDING CLAIMS OBJECTION BETWEEN REORGANIZED**
**DEBTORS AND THE NEW YORK STATE DEPARTMENT**
**OF ENVIRONMENTAL CONSERVATION**

GM Components Holdings LLC ("Components"),[1] respectfully submits the following statement regarding the claims objection currently at issue before this Court as described in the Reorganized Debtors' Supplemental Reply to Responses of Certain Claimants to Debtors' Objections to Proofs of Claims Nos. 13376 and 13881 Filed by The New York State Department Of Environmental Conservation ("NYSDEC"), dated March 8, 2010 (the "Reorganized Debtors' Pleading") and the Supplemental Response of NSYSDEC in Opposition to Reorganized Debtors' Supplemental Reply to Responses of Certain Claimants to Debtors' Objections to Proofs of Claims Nos. 13776 and 13881, dated March 16, 2010 ("NYSDEC's Pleading").

Components is a party in interest to this matter and therefore is entitled to be heard under 11 U.S.C. § 1109(b) with respect to the claims objection between the Reorganized Debtors and NYSDEC.

## A.  Components' Limited Interest in this Bankruptcy Dispute Between Reorganized Debtors and NYSDEC

1.    In their pleadings, DPH Holdings Corp. and certain of its affiliated debtors in the above-captioned cases (collectively, the "Reorganized Debtors"), on one hand, and NYSDEC, on the other hand, have mischaracterized both (i) the terms under which

---

[1] Components is a wholly-owned subsidiary of General Motors LLC.  On June 1, 2009, Motors Liquidation Company (f/k/a General Motors Corporation) commenced a voluntary case under chapter 11 of title 11 of the United States Bankruptcy Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York.  On July 5, 2009, an order was entered approving the sale of certain assets of Motors Liquidation Company to a new and independent company, General Motors LLC, under section 363 of the Bankruptcy Code.  The sale to General Motors LLC closed on July 10, 2009.  General Motors LLC formed Components as a separate entity to hold certain assets purchased from Delphi Corporation (the "Debtor") effective upon closing of that transaction on October 6, 2009.

Components acquired certain properties in Lockport, New York (the "Lockport

Property")  and Rochester New York (the "Rochester Property, and together with the

Lockport Property, the "New York Properties") from the Reorganized Debtors,  and (ii)

Components' legal position with respect to environmental responsibilities associated with

those properties.   Components did not "assume" any responsibilities of the Reorganized

Debtors or any other party with respect to the New York Properties. Rather, as the new

owner of the New York Properties, Components acknowledged that it had responsibilities

for certain specified environmental matters on the New York Properties, but none of

these responsibilities involved active remediation of off site areas.  Accordingly, in order

to protect itself in subsequent proceedings, either by these parties or others, Components

submits this Statement to set the record straight as to what its responsibilities are with

respect to environmental responsibilities at the New York Properties.

2.      Pursuant to the express terms of the Master Disposition Agreement

("MDA") of July 30, 2009 and the Court's Plan Modification Order[2] of the same date,

Components did **not** assume any liabilities for pre-existing environmental conditions

associated with the Lockport and Rochester Properties.  Rather, the Plan Modification

Order expressly stated that no buyer of the Reorganized Debtors' assets "assumes any

Liability under Environmental Laws[3] of" the Debtors.  MDA at ¶ 9.38.

---

[2] Order Approving Modifications under 11 U.S.C. § 1127(b) to (I) First Amended Joint
Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors, and
Debtors-in-Possession, as Modified and (II) Confirmation Order (Docket No. 12359).

[3] The term "Liabilities" as defined in Article 1.1 of the MDA includes "any and all
liabilities of every kind and description whatsoever."  The term "Environmental Laws" is
also defined in Article 1.1 of the MDA and includes "any and all statutes, rules

3.      As explained below in ¶ 12 and by the plain language of the Plan

Modification Order and MDA, it cannot be argued that Components is a successor to the

Reorganized Debtors or their affiliates.  Plan Modification Order at ¶ H; MDA at ¶ 14.6.

4.      Thus, instead of requiring Components to take on all of the Reorganized

Debtors' environmental liabilities, the Plan Modification Order specified that

Components had only acknowledged responsibility for conducting investigation and

remediation with respect to *certain expressly identified environmental issues* associated

with the New York Properties.   Plan Modification Order at ¶ 63(ii)(2).

5.      Specifically, with respect to the Lockport Property, the Court's Plan

Modification Order specified that Components acknowledged responsibility, as a buyer

and new owner "in accordance with applicable law" for investigation and remediation

associated with four numerically identified "Site Codes" in the NYSDEC Remediation

Database (Site Codes C932138, C932139, C932140, and 932113) and a fifth "Site Code"

in NYSDEC's Spill Incident Database  (Site Code 0651261).  Each of these Site Codes

relates only to a single structure or operation, such as Building 7 or 8, not to the 481-acre

Lockport Property as a whole.  Moreover, according to the two relevant NYSDEC

Databases, none of these "Site Codes" involves investigation or remediation activities

outside of the property limits.

6.      Similarly, with respect to the Rochester Property, under the terms of the

Plan Modification Order, Components is not responsible for any "Environmental

regulations," etc. relating to pollution and protection of the Environment or protection of
human health from environmental hazards."

Liabilities" of the Debtor, but rather acknowledged responsibility as a buyer and new

owner associated with a single "Site Code" in the NYSDEC Remediation Database (Site

Code 828064).   Plan Modification Order at ¶ 63(ii)(1) and (2).

7.      Components has been performing and will continue to perform those

responsibilities that it acknowledged under the Plan Modification Order.  But there is no

justification for either NYSDEC or the Reorganized Debtors to suggest that Components

*assumed* any obligations under the Plan Modification Order, or that Components is in any

way defaulting or shirking those responsibilities which it acknowledged.  Indeed, as set

forth below, with respect to the Lockport Property, Components has been negotiating

with NYSDEC about an Administrative Order concerning NYSDEC Site Code 932113,

and has applied as a Volunteer under NYSDEC's Brownfield Cleanup Program

concerning NYSDEC Site Codes C932138, C932139, and C932140.   At the Rochester

Property, Components is continuing to operate interim remedial measures (a fractured

rock groundwater collection and treatment system) for Site Code 828064.

8.      Accordingly, Components respectfully requests that any ruling issued by

this Court with respect to the claims objection between the Reorganized Debtors and

NYSDEC accurately reflect that, pursuant to the terms of the Plan Modification Order,

Components has not assumed the Reorganized Debtors' environmental liabilities at the

New York Facilities and is not subject to any liability as a successor to any of the

Reorganized Debtors.

**B.  Components Did Not Assume Environmental Obligations When It Purchased the New York Properties**

9.      Contrary to the assertions of the Reorganized Debtors and NYSDEC, Components did not "assume" environmental obligations when it purchased the New York Facilities.  Debtor's Pleading ¶¶ at 19-20; NYSDEC Pleading ¶ at 3.   Components purchased the New York Properties from the Reorganized Debtors pursuant to the terms of the MDA  approved by this Court as part of the into the Reorganized Debtors' chapter 11 plan.  The MDA specified that Components did not assume any Liability under Environmental Laws of Debtor:

> Notwithstanding anything in this Agreement to the contrary, **neither Sellers** and their Affiliates, on the one hand, **nor any Buyer,** on the other hand, **assumes any Liability under Environmental Laws of the other**. Nothing in this Agreement is intended to nullify any liability to any federal, state or local environmental agency under Environmental Laws that either Seller and/or their Affiliates or any Buyer may have as a result of their **status as an owner** or operator of any property or facility, or as an arranger for disposal of any Hazardous Materials generated at any property or facility.

MDA at ¶ 9.38 (emphasis added).

10.     This Court approved Components purchase of Debtor's assets, including the New York Facilities, under § 363 of the Bankruptcy Code, free and clear of any Property Interests, Claims,[4] liens or encumbrances or

> "liabilities … of any kind and nature, whether known or unknown, contingent or otherwise, whether arising prior to or subsequent to the commencement of the Chapter 11 Cases, and whether imposed by agreement, understanding,

---

[4] The terms "Claim" and "Property Interest" were defined in Article 1.1 of the MDA.

> law, equity or otherwise, including but no limited to,
> Claims otherwise arising under doctrines of successor
> liability and related theories; any liability or obligation
> calculable with reference to the Debtors' business or
> operations. . .."

Plan Modification Order at ¶¶ H.4 and 9.

11.    As a general rule, a purchaser of assets does not assume the liabilities of the seller unless the purchaser expressly agrees to do so or an exception to the rule exists. In re General Motors Corp., 407 B.R. 463, 500 (Bankr. S.D.N.Y. 2009); Carroll v. LeBoeuf, Lamb, Greene & MacRae, L.L.P., 392 F. Supp. 2d 621, 627 (S.D.N.Y. 2005). In this instance, Components has not expressly agreed to assume the Reorganized Debtors' liabilities dictated by an order from this Court.  Plan Modification Order at ¶¶ H.4 and 9; MDA at ¶ 9.38.    Rather, Components acknowledged that, as a buyer and new owner of the New York Properties, it has certain responsibilities for the specified NYSDEC Site Codes.

### C.  Components Is Not a Successor to the Reorganized Debtors

12.    Components is clearly not a successor to any of the Reorganized Debtors. In New York, successor liability may exist if: (1) the buyer expressly or impliedly assumed the seller's liability, (2) there was a consolidation or de facto merger of seller and buyer, (3) the buyer was a mere continuation of the seller, or (4) the transfer was entered into fraudulently to escape such liability. Carroll v. LeBoeuf, Lamb, Greene & MacRae, L.L.P., 392 F.Supp. at 627.  In this matter, Components *did not assume any* liabilities of the Reorganized Debtors, including liabilities under environmental laws, when it purchased certain assets of the Debtor.  See ¶¶ 9-11, supra.  The Plan Modification Order specifies that there is no fraudulent transfer of Debtor's assets and

that Components is not a mere continuation of the Debtor's or its estates.  Order at ¶ H.

None of the successor liability conditions is met in this instance; however, such an

analysis is unnecessary given the plain language contained in the Plan Modification

Order and MDA.  The Plan Modification Order and MDA explicitly state that

Components is not a successor to the Debtor.  Plan Modification Order at ¶ H;  MDA at ¶

14.6.  This Court, and others, have held that a § 363 order can bar successor liability

claims premised upon the transfer of property and that property can be sold free and clear

of successor liability claims.  In re General Motors Corp., 407 B.R. at 500; In

re Chrysler LLC, 405 B.R. 84, 111 (Bankr. S.D.N.Y. 2009); In re: Trans World Airlines,

Inc. 322 F.3d. 283, 288-90 (3d Cir. 2003); Myers v. United States, 297 B.R. 774, 778

(S.D. Cal. 2003).


**D.  Components' Acknowledges Its Responsibility for Certain Environmental
Liabilities at the New York Properties as Specifically Detailed in the Plan
Modification Order**

       13.     Components did not agree to assume the Reorganized Debtors'

environmental liabilities under the terms of the Plan Modification Order and MDA and

Components is not a successor to the Debtor.  See ¶¶ 9-12, supra.  Rather, Components

has acknowledged its responsibility under law as the owner, lessor or operator of the New

York Properties "after the date of entry" of the Plan Modification Order.  Plan

Modification Order at ¶ 63(ii)(1).  Components did not agree when it purchased Debtor's

assets to investigate or remediate any preexisting contamination that may have been

disposed or discharged beyond the property boundaries of the New York Properties.[5]

      14.    The environmental responsibilities which Components expressly

undertook were spelled out in the Plan Modification Order at ¶ 63(ii)(2):

> GM Components, **as Buyer** of the Delphi Automotive
> Systems Site located at 1000 Lexington Avenue, Rochester,
> New York, identified in the New York State Department of
> Environmental Conservation ("NYSDEC") Environmental
> Site Remediation Database as Site Code 828064 (the
> "Rochester Facility"), and the Delphi Thermal Systems
> Facility located at 200 Upper Mountain, Lockport, New
> York, identified in the NYSDEC Environmental Site
> Remediation Database as Site Codes C932138, C932139,
> C932140, and 932113 and in the NYSDEC Spill Incidents
> Database as Site Code 0651261 (collectively, the "Lockport
> Facility"), **acknowledges** that it shall be responsible for
> conducting investigation and remediation of the Rochester
> Facility and the Lockport Facility in accordance with
> applicable Environmental Laws.

(Emphasis added).

      15.    Components' acknowledgement of responsibility for conducting

investigation and remediation of the Lockport Property in accordance with

---

[5] It is unclear if off site contamination actually exists in the vicinity of the Lockport
Property. NYSDEC does not assert in its pleadings that contamination migrated beyond
the boundaries of the Lockport Property. And, there is no evidence in the record that
suggests that contamination that could be attributed to Components, as an owner of the
Lockport Property, has migrated beyond the borders of the Property. In fact, as of March
19, 2010, the NYSDEC Environmental Site Remediation Database reports for the
Lockport Facility (Site Codes: C932138, C932139, C932140 and 932113) indicate that,
despite numerous tests of groundwater samples from monitoring wells located at or in the
vicinity of the Lockport Property, contaminated groundwater has not migrated off-site.
See Exhibits A-E (printouts from the NYSDEC Site Remediation and Spill Incidents
Databases with respect to each of the five Site Codes associated with the Lockport
Property).

Environmental Laws in Plan Modification Order ¶ 63(ii)(2) is specifically limited to the

areas identified in the NYSDEC Environmental Site Remediation and Spill Incidents

Database as Site Codes C932138, C932139, C932140, 932113 and 0651261.  The

specific areas delineated by these Site Codes listed in the Plan Modification Order

¶ 63(ii)(2) describe an area that, collectively, accounts for substantially less than the 481

acres of the entire Lockport Property, and do not include any off-site areas or activities.

16.      Each of those Site Codes describes a limited area and situation.  NYSDEC

Environmental Site Remediation Database, Site Code C932138 describes the portion of

the Lockport Property "known as Building 7, and includes the entire footprint of Building

7 and land to the east and west."  NYSDEC describes this Site Code as covering

"approximately 31 acres" within the larger Lockport Property "complex" which extends

to 481 acres.  The Site Code identifies six "contaminants of concern," but the Database

reports that the results of groundwater sampling "indicate that impacted groundwater

from Building 7 is not migrating from" the Lockport Property.  A copy of the NYSDEC

Environmental Site Remediation Database Search Details for Site Code C931138 is

attached as Exhibit A.

17.      Similarly, NYSDEC Environmental Site Remediation Database, Site Code

C932139 describes the portion of the Lockport Property "known as Building 8, and

includes the entire footprint of Building 8."  NYSDEC describes this area as covering

"approximately 13.1 acres" of the 481-acre Lockport Property.  Six "contaminants of

concern" are identified, some of which are different than those associated with Building

7.  The Database reports that 15 monitoring wells "have been sampled on numerous

occasions and reveal that impacted groundwater from Building 8 is not migrating from"

the Lockport Property.  A copy of the NYSDEC Environmental Site Remediation

Database Search Details for Site Code C931139 is attached as Exhibit B.

18.    NYSDEC Environmental Site Remediation Database, Site Code C932140

describes the portion of the Lockport Property "known as Building 10, and includes the

entire footprint of Building 10."  This area is described as comprising "approximately

10.6 acres" of the 481-acre Lockport Property.  Seven contaminants of concern are

identified, but the Database reports that "[t]en monitoring wells have been installed

downgradient of Building 10, including four along Route 93.  These wells have been

sampled on numerous occasions and reveal that impacted groundwater from Building 10

is not migrating from" the Lockport Property.  A copy of the NYSDEC Environmental

Site Remediation Database Search Details for Site Code C931140 is attached as Exhibit

C.

19.    NYSDEC Environmental Site Remediation Database, Site Code 932113

describes a former trichloroethylene tank "located at Building #8 in the north-central

portion of the complex."  NYSDEC estimates that the area affected is 14 acres out of the

481 acres in the Lockport Property complex.  According to the Database, "groundwater

data obtained to date do not suggest that contamination is migrating off site."  A copy of

the NYSDEC Environmental Site Remediation Database Search Details for Site Code

932113 is attached as Exhibit D.

20.    NYSDEC Spill Incidents Database Site Code 0651261 refers to a

Petroleum Spill at the Lockport Property in October 2006.  According to the Database,

the only impacted resource was "soil."  A copy of the NYSDEC Spill Incidents Database

Search Details for Site Code 0651261 is attached as Exhibit E.

21.    Thus, each of the site descriptions in the NYSDEC Environmental Site

Remediation and Spill Incident Databases for Site Codes C932138, C932139, C932140,

932113 and 0651261 with respect to the Lockport Property is limited to a discrete on-site

impact and none of these descriptions include areas located beyond the property

boundaries.  Exhibits A-E.

22.    With respect to the Rochester Property, Components has acknowledged

responsibility for conducting investigation and remediation of Site Code 828064 in the

NYSDEC Environmental Site Remediation Database in accordance with Environmental

Laws in Plan Modification Order ¶ 63(ii)(2).   According to the NYSDEC Database, "[a]

blast enhanced bedrock trench has been constructed along the northern portion of the site

to help stop contaminated groundwater from flowing offsite" and that that "[o]ff-site

impacts are mitigated by the fractured rock collection system;"  A copy of the NYSDEC

Environmental Site Remediation Database Search Details for Site Code 828064 is

attached as Exhibit F. Components is currently operating that system.

23.    Thus, the specific responsibilities which Components acknowledged at the

Lockport and Rochester Properties under the Plan Modification Order involved discrete

activities on those Properties themselves, which Components is performing.  To the

extent, NYSDEC contends that there are other Environmental Liabilities associated with

the prior use of these Properties, such as off-site remediation, then that is something for

NYSDEC and the Reorganized Debtors to resolve in the claims objections proceedings,

but those are not issues for either of those parties to require Components to address.

**E. Since Acquiring the Reorganized Debtors' Assets, Components Has Acted in Good Faith to Resolve its Acknowledged Environmental Liabilities at the New York Properties**

24.    Since purchasing the New York Properties from the Reorganized Debtors,

Components has acted in good faith with the NYSDEC to resolve its environmental

liabilities at those facilities according to the terms of the Plan Modification Order and

MDA.

25.    Prior to the sale of the Lockport Property, the Reorganized Debtors had

submitted applications to NYSDEC as a "Participant" in the Brownfield Cleanup

Program of the State of New York (the "BCP"), New York Environmental Conservation

Law ("ECL") Article 27 Title 14, but never signed a Brownfield Cleanup Agreement

with NYSDEC.   The Reorganized Debtors' applications as a "Participant" were

terminated by NYSDEC on November 4, 2009.  Exhibits A-C.  Consistent with

Components' obligations as an owner of the Lockport Property, on January 14, 2010,

Components submitted applications under for these same three areas within the Lockport

Property, whereby Components sought "Volunteer" status as defined in ECL 27-

1405(1)(b).  NYSDEC Pleading ¶ 6.

26.    The BCP defines "Volunteer" as follows:

"Volunteer" shall mean an  applicant other than a participant,
including without limitation **a person whose liability arises solely**

**as a result of such person's ownership or operation of or involvement with the site subsequent to the disposal or discharge of contaminants**, provided however, such person exercises appropriate care with respect to contamination found at the facility by taking reasonable steps to:

> (i) stop any continuing release;
> (ii) prevent any threatened future release; and
> (iii) prevent or limit human, environmental, or natural resource exposure to any previously released contamination.

ECL 27-1405(1)(b) (Emphasis added).

27.    Neither Components, nor its parent company, General Motors LLC, owned or operated the New York Properties prior to October 6, 2009.  Neither entity existed when the contamination occurred.  Since Components acquired the Lockport Property after the disposal or discharge of contaminants, it fits squarely within BCP's definition of Volunteer.   Components, via its application to NYSDEC under the BCP, and its conference with NYSDEC counsel Mr. Leff, has acknowledged its willingness to undertake the duties of a Volunteer under the BCP.  As a Volunteer, Components will be committed to cleanup contamination found within the boundaries of the Lockport Property.  ECL 27-1411(2).

28.    Components has not applied for "Participant" status at the Lockport Property under the BCP, which defines a "Participant" as follows:

> "Participant" shall mean an applicant who either:
> (i) was the owner of the site at the time of the disposal or discharge of contaminants or (ii) is otherwise a person responsible according to applicable principles of statutory or common law liability, unless such person's liability arises solely as a result of such person's ownership or operation of or involvement with the site subsequent to the disposal or discharge of contaminants.

ECL 27-1405(1)(a).  Subparagraph (i) does not apply because Components was not the

owner of the Lockport Property at the time of the disposal or discharge of the

contaminants.  Likewise, subparagraph (ii) does not apply because Components'

responsibility, as a new owner that acquired the site in October 2009, arises solely as a

result of Components' ownership subsequent to the discharge of contaminants.  ECL 27-

1405(1)(a).  Therefore, it was appropriate under New York law for Components to

submit an BCP application with respect to these three Site Codes as a "Volunteer," not as

a "Participant."

29.    With respect to the fourth NYSDEC Remediation Database Site Code at

the Lockport Property (Site Code 932113), the Database Details recite that NYSDEC

issued a Record of Decision in 2005, selecting natural attenuation (the natural processes

of biodegradation rather than active remediation) and monitoring as the appropriate

remedy.  Exhibit D.  So NYSDEC has not identified any off-site obligations.

Components is negotiating with NYSDEC as to an Administrative Order to address this

Site Code.

30.    With respect to the spill area at the Lockport Property referenced in

NYSDEC Spill Site Code 828064, Delphi Properties Management LLC, Components"

tenant on a portion of the Property, is obligated under the Section 17.05 of its lease to

undertake any remediation required by NYSDEC.  A copy of that lease is attached as

Exhibit G.

31.    At the Rochester Property, NYSDEC has completed a Remedial

Investigation/Feasibility Study under a prior Order with the Debtor, excerpts of which are

attached as Exhibit H.  Components is awaiting NYSDEC's issuance of a Proposed

Remedial Action Plan and then a Record of Decision for the site.  No off-site activity is

contemplated in the Feasibility Study other than monitoring.  Exhibit H.

32.    To the extent a dispute exists between Components and NYSDEC with

respect to the scope of Component's obligations under environmental law and status

under the BCP, that dispute between two non-debtors should not be resolved in this

Court.  As stated in the claims' objection, the Reorganized Debtors and NYSDEC are

attempting to have this Court rule on the scope of Components' legal rights and

obligations in general, not simply as to the effect of its Plan Modification Order.

**F.  Reorganized Debtors' and NYSDEC's Incorrect or Incomplete Assertions
Regarding Components' Assumption of Environmental Liability at the New York
Properties Warrant Clarification by the Court**

33.    The Reorganized Debtors assert in their Pleading that Components has

"assumed," pursuant to the Plan Modification Order "the obligation to implement and

pay for the cleanup" of environmental contamination at the New York Properties.

Debtor's Pleading ¶¶ 19 and 20.

34.    Likewise, NYSDEC asserts in its Pleading that Components has

"assumed" responsibility for addressing the contamination at the New York Properties

that are the subject of the NYSDEC's claims.  NYSDEC Pleading ¶ 3.

35.    The Reorganized Debtors' and NYSDEC's assertion that Components has

"assumed" any environmental liability with respect to the New York Properties is legally

and factually incorrect.  See ¶¶ 9-11. supra.  Instead, Components acknowledged the

responsibility of addressing certain discrete on-site environmental issues identified under

specific Site Codes in the NYSDEC's Databases.  Reorganized Debtors' and NYSDEC's

failure to recognize that Components, at the time of the asset purchase, acknowledged its

responsibility as a new owner to address only certain and specific environmental

obligations with respect to the New York Properties, warrants clarification in this

proceeding to ensure that Components' future rights regarding its obligations and rights

as an owner of the New York Properties remain intact. See ¶¶ 13-23, supra.

36.    NYSDEC's assertion in its Pleading ¶ 5 is incorrect that Components is, or

will in the near future be in violation or default under the Plan Modification Order

because it will not address off-site contamination at the Lockport Property.  First, the

Plan Modification Order does not require Components to address anything other than the

specific Site Codes identified, which it is doing. See ¶¶ 13-23 supra.  Second, no off-site

contamination associated with those Site Codes has been reported.

37.    NYSDEC's assertion of a default by Components based on Mr. Leff's

summary description of a March 11, 2010 conversation Mr. Leff had with James Walle,

an attorney, acting on behalf of Components, is incorrect and incomplete.  NYSDEC

Pleading ¶ 9.  Mr. Walle's comments were consistent with Components' position in this

Statement. But in any event, the supposed default is based on NYSDEC's erroneous

interpretation of the Plan Modification Order.

38.    NYSDEC's statement that the Lockport Property was originally operated

for several decades by the original General Motors Corporation is irrelevant to this

matter.  NYSDEC Pleading ¶ 8.  General Motors LLC, of which Components is a

wholly-owned subsidiary, began operating on July 10, 2009 and did not exist as a

corporate entity prior to that date.  It has no responsibility or liability for the conduct of

any prior owner or operator of the Property.  General Motors LLC is an entirely separate

legal entity and has no legal affiliation with the original General Motors Corporation.

The original General Motors Corporation continues to exist as a separate corporate entity

under the name of Motors Liquidation Company, and is a debtor in another case before

this Court.

39.    NYSDEC's assertion in its Pleading ¶ 11 that NYSDEC has no

commitment from Components to investigate and remediate the Rochester Property is

incorrect and incomplete.  Components acknowledged in the Plan Modification Order

that it had responsibility as a buyer and new owner for Site Code 828064 in the NYSDEC

Environmental Site Remediation Database as Site Code 828064 and is operating the

interim remedial measures for that Site Code.  Components is awaiting NYSDEC's

issuance of a Proposed Remedial Action Plan and then a Record of Decision for the site.

No off-site remediation is contemplated in the Feasibility Study to address off-site

contamination beyond the site boundaries of the Rochester facility.  Exhibit H.

WHEREFORE, Components respectfully requests that any ruling issued

by this Court with respect to the claims objection between the Reorganized Debtors and

NYSDEC accurately reflect Components' obligations and rights as an owner of the New

York Properties in a manner that is consistent with the documentation of the sale of the

assets from the Reorganized Debtors to Components as described in the Plan

Modification Order and MDA.  Components respectfully requests that any Court ruling

issued with respect to this claims objection be issued in a manner that does not prejudice

Components' current and future obligations and rights as an owner of the New York

Properties or any other assets it purchased from the Reorganized Debtors in these

bankruptcy cases.  Accordingly, Components' respectfully requests that the following

language be incorporated into any Order or other ruling issued by the Court resolving the

claims objection between the Reorganized Debtors and NYSDEC:

        This Order is issued without prejudice to GM Components Holdings LLC's obligations and rights as an owner of certain real property and related improvements in Lockport, NY and Rochester, NY.  Nothing in this order should be construed to indicate that GM Components Holdings LLC's has assumed any Liability (as defined in Article 1.1 of the Master Disposition Agreement) of the Reorganized Debtors under Environmental Laws (as defined in Article 1.1 of the Master Disposition Agreement) or is liable as a successor to debtor under doctrines of successor liability and related theories.

Dated:  April 13, 2010

        WEIL, GOTSHAL & MANGES LLP

        By: /s/ Robert J. Lemons

        Robert J. Lemons
        767 Fifth Avenue
        New York, N.Y. 10153
        (212) 310-8000

        - and –

        David R. Berz, Esq.
        David B. Hird, Esq.
        Matthew D. Morton, Esq.
        Weil, Gotshal & Manges LLP
        1300 Eye Street, NW, Suite 900
        Washington, D.C.  20005
        (202) 682-7000
        (202) 857-0940

        Attorneys for GM Components Holdings LLC