**Hearing Date and Time:  April 23, 2010 at 10:00 a.m. (prevailing Eastern time)**
**Supplemental Response Date and Time:  April 21, 2010 at 4:00 p.m. (prevailing Eastern time)**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
155 North Wacker Drive
Chicago, Illinois 60606
John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler

- and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Kayalyn A. Marafioti

Attorneys for DPH Holdings Corp., et al.,
   Reorganized Debtors

DPH Holdings Corp. Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

DPH Holdings Corp. Legal Information Website:
http://www.dphholdingsdocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  -  x
                                             :
        In re                                :    Chapter 11
                                             :
DPH HOLDINGS CORP., et al.,                  :    Case Number 05-44481 (RDD)
                                             :
                                             :    (Jointly Administered)
                                             :
        Reorganized Debtors.                 :
                                             :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

REORGANIZED DEBTORS' SUPPLEMENTAL REPLY TO RESPONSES OF CERTAIN
CLAIMANTS TO DEBTORS' OBJECTIONS TO PROOF OF CLAIM NUMBER 11375 FILED
BY JEFFREY A. MILLER, ADMINISTRATIVE EXPENSE CLAIM NUMBER 16925 FILED
BY STANLEY D. SMITH, ADMINISTRATIVE EXPENSE CLAIM NUMBERS 17081 AND
18049 FILED BY JAMES A. LUECKE, ADMINISTRATIVE EXPENSE CLAIM NUMBER
18087 FILED BY FRANK X. BUDELEWSKI, ADMINISTRATIVE EXPENSE CLAIM
NUMBER 18604 FILED BY WALTER A. KUNKA, ADMINISTRATIVE EXPENSE
CLAIM NUMBER 20017 FILED BY ANDREW C. GREGOS, AND ADMINISTRATIVE
EXPENSE CLAIM NUMBER 20054 FILED BY ROBYN R. BUDD

("SUPPLEMENTAL REPLY REGARDING CERTAIN PENSION AND BENEFIT CLAIMS")

DPH Holdings Corp. and certain of its affiliated reorganized debtors in the above-captioned cases (together with DPH Holdings Corp., the "Reorganized Debtors") hereby submit the Reorganized Debtors' Supplemental Reply To Responses Of Certain Claimants To Debtors' Objections To Proof of Claim Number 11375 Filed By Jeffrey A. Miller, Administrative Expense Claim Number 16925 Filed By Stanley D. Smith, Administrative Expense Claim Numbers 17081 And 18049 Filed By James A. Luecke, Administrative Expense Claim Number 18087 Filed By Frank X. Budelewski, Administrative Expense Claim Number 18604 Filed By Walter A. Kunka, Administrative Expense Claim Number 20017 Filed By Andrew C. Gregos, And Administrative Expense Claim Number 20054 Filed By Robyn R. Budd (the "Supplemental Reply"), and respectfully represent as follows:

A.    <u>Preliminary Statement</u>

1.    On October 8 and 14, 2005, Delphi Corporation and certain of its affiliates (the "Debtors"), predecessors of the Reorganized Debtors, filed voluntary petitions in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as then amended (the "Bankruptcy Code").

2.    On October 6, 2009, the Debtors substantially consummated the First Amended Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession, As Modified (the "Modified Plan"), which had been approved by this Court pursuant to an order entered on July 30, 2009 (Docket No. 18707), and emerged from chapter 11 as the Reorganized Debtors.

3.    On March 25, 2010, the Reorganized Debtors filed the Notice Of Sufficiency Hearing With Respect To Debtors' Objections To Proofs Of Claim Numbers 5268,

13270, 13838, 13880, 15585, 15589, 16925, 17081, 17773, 18049, 18087, 18604, 18740, 20017, And 20054 (Docket No. 19735) (the "Sufficiency Hearing Notice").[1]

4.      The Reorganized Debtors filed the Sufficiency Hearing Notice and are filing this Supplemental Reply to implement Article 9.6(a) of the Modified Plan, which provides that "[t]he Reorganized Debtors shall retain responsibility for administering, disputing, objecting to, compromising, or otherwise resolving all Claims against, and Interests in, the Debtors and making distributions (if any) with respect to all Claims and Interests."  Modified Plan, art. 9.6(a).

5.      By the Sufficiency Hearing Notice and pursuant to the Order Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 2002(m), 3007, 7016, 7026, 9006, 9007, And 9014 Establishing (i) Dates For Hearings Regarding Objections To Claims And (ii) Certain Notices And Procedures Governing Objections To Claims, entered December 7, 2006 (Docket No. 6089) (the "Claims Objection Procedures Order"), the Order Pursuant To 11 U.S.C. §§ 105(a) And 503(b) Authorizing Debtors To Apply Claims Objection Procedures To Address Contested Administrative Expense Claims, entered October 22, 2009 (Docket No. 18998), and the Eleventh Supplemental Order Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 2002(m), 3007, 7016, 7026, 9006, 9007, And 9014 Establishing (i) Dates For Hearings Regarding Objections To Claims And (ii) Certain Notices And Procedures Governing Objections To Claims, entered April 5, 2010 (Docket No. 19776), the Reorganized Debtors scheduled a hearing (the "Sufficiency Hearing") on April 23, 2010[2] at 10:00 a.m. (prevailing Eastern time) in this Court to address the

---

[1]     Under the Order Pursuant to 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 Disallowing And Expunging Proof of Claim Number 11375 Filed By Jeffrey A. Miller, entered April 5, 2010 (Docket No. 19779), the Sufficiency Hearing with respect to Jeffrey A. Miller's proof of claim number 11375 was adjourned to April 22, 2010.

[2]     Pursuant to the Sufficiency Hearing Notice, filed March 25, 2010, the Sufficiency Hearing was scheduled for April 22, 2010.  Pursuant to direction of this Court, the Sufficiency Hearing was rescheduled for April 23, 2010 at 10:00 a.m. (prevailing Eastern time).

legal sufficiency of each proof of claim or administrative expense claim filed by the claimants

listed on Exhibit A to the Sufficiency Hearing Notice and whether each such proof of claim

states a colorable claim against the asserted Debtor.

6.      This Supplemental Reply is filed pursuant to paragraph 9(b)(i) of the

Claims Objection Procedures Order.  Underline{Pursuant to paragraph 9(b)(ii) of the Claims Objection

Procedures Order, if a Claimant wishes to file a supplemental pleading in response to this

Supplemental Reply, the Claimant shall file and serve its response no later than two business

days before the scheduled Sufficiency Hearing – i.e., by **April 21, 2010.**

B.      Relief Requested

7.      By this Supplemental Reply, the Reorganized Debtors request entry of an

order disallowing and expunging certain administrative expense claims filed by employees of the

Debtors asserting pension, employment benefit, and other post-employment benefit ("OPEB")

claims.

C.      Pension And Benefit Claims

8.      During their review of the proofs of claim and administrative expense

claims filed in these cases, the Reorganized Debtors determined that certain claims assert

liabilities or dollar amounts in connection with pension plans, employee benefit programs, and/or

OPEB that are not owing pursuant to the Reorganized Debtors' books and records.  Because the

amounts asserted by these claimants are not owing by the Debtors, the Reorganized Debtors

believe that the parties asserting these proofs of claim and administrative expense claims are not

creditors of the Debtors.  Accordingly, this Court should enter an order disallowing and

expunging each of these proofs of claim in their entirety.

4

D.      Pension And Benefit Claims Filed Against The Debtors

9.      On July 27, 2006, Jeffrey A. Miller, a former employee of the Debtors,

filed proof of claim number 11375 against Delphi Corporation ("Delphi"), asserting an

unsecured claim for stock options and a priority claim for a $37,000 award under the Delphi Key

Executive Compensation Program ("KECP"). On April 5, 2010, this Court entered an order

disallowing the claim to the extent that it asserted an equity interest (Docket No. 19779).

10.      On June 29, 2009, Stanley D. Smith, a former salaried employee of the

Debtors, filed administrative expense claim number 16925 against Delphi Corporation

("Delphi"), asserting a priority claim in the amount $4,278.00 for retiree health benefits allegedly

owed by Delphi and General Motors Corporation.

11.      On June 30, 2009, James A. Luecke, a former employee of the Debtors,

filed administrative expense claim number 17081, asserting a priority claim in the amount of

$159,000.00 for wages, overtime pay, and a buyout payment allegedly owed by Delphi for its

failure to grant Mr. Luecke a job transfer.

12.      On June 29, 2009, James A. Luecke filed administrative expense claim

number 18049 against Delphi, appearing to be a duplicate of administrative expense claim

number 17081, asserting a priority claim in the amount of $159,000.00 for wages, overtime pay,

and a buyout payment allegedly owed by Delphi for its failure to grant Mr. Luecke a job transfer.

13.      On July 9, 2009, Frank X. Budelewski, a former employee of the Debtors,

filed administrative expense claim number 18087 against Delphi, asserting a priority claim for

$796.33 per month since April 1, 2009, for disability benefits allegedly owed by Delphi.

14.      On July 14, 2009, Walter A. Kunka, a former salaried employee of the

Debtors, filed administrative expense claim number 18604 against Delphi in the amount of

$5,380.77, asserting a priority claim for payment for unused vacation days allegedly owed by Delphi.

15.    On November 5, 2009, Andrew C. Gregos, a former employee of the Debtors, filed administrative expense claim number 20017 against Delphi, asserting a priority claim in the amount of $528,443.24 for disability benefits allegedly owed by Delphi.

16.    On October 30, 2009, Robyn R. Budd (together with Mr. Miller, Mr. Smith, Mr. Lueke, Mr. Budelewski, Mr. Kunka, and Mr. Gregos the "Claimants") filed administrative expense claim number 20054 (together with administrative expense claim numbers 16925, 17081, 18049 18087, 18604, and 20017, and proof of claim number 11375, the "Pension and Benefit Claims") against Delphi, asserting a priority claim for severance benefits allegedly owed by Delphi.

17.    <u>The Debtors' Objections To The Pension And Benefit Claims</u>.  On October 15, 2009, the Reorganized Debtors filed the Reorganized Debtors' Thirty-Sixth Omnibus Objection Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To (I) Modify And Allow Claim And (II) Expunge Certain (A) Duplicate SERP Claims, (B) Books And Records Claims, (C) Untimely Claims, And (D) Pension, Benefit, And OPEB Claims (Docket No. 18983) ("Thirty-Sixth Omnibus Claims Objection"), by which the Debtors objected to proof of claim number 11375 filed by Mr. Miller on the grounds that such claim asserts liabilities in connection with pension plans, employee benefit programs, and post-retirement health and life insurance benefit programs for which the Reorganized Debtors are not liable

18.    On October 15, 2009, the Reorganized Debtors filed the Reorganized Debtors' Thirty-Seventh Omnibus Objection Pursuant To 11 U.S.C. § 503(b) And Fed. R. Bankr. P. 3007 To Expunge Certain (I) Prepetition Claims, (II) Equity Interests, (III) Books And

Records Claims, (IV) Untimely Claims, (V) Paid Severance Claims, (VI) Pension, Benefit, And

OPEB Claims, And (VII) Duplicate Claims (Docket No. 18984) (the "Thirty-Seventh Omnibus

Claims Objection"), by which the Debtors objected to administrative expense claim numbers

16925, 17081, 18087, 18604 filed by Mr. Smith, Mr. Luecke, Mr. Budelewski, and Mr. Kunka,

respectively, on the grounds that such claims assert pension and/or benefit obligations not

reflected on the Debtors' books and records and for which the Debtors are not liable and,

accordingly, sought an order disallowing and expunging those administrative expense claims.

       19.    On January 22, 2010, the Reorganized Debtors filed the Reorganized

Debtors' Forty-Third Omnibus Objection Pursuant To 11 U.S.C. § 503(b) And Fed. R. Bankr. P.

3007 To (I) Expunge Certain Administrative Expense (A) Severance Claims, (B) Books And

Records Claims, (C) Duplicate Claims, (D) Equity Interests, (E) Prepetition Claims, (F)

Insufficiently Documented Claims, (G) Pension, Benefit, And OPEB Claims, (H) Workers'

Compensation Claims, And (I) Transferred Workers' Compensation Claims, (II) Modify And

Allow Certain Administrative Expense Severance Claims, And (III) Allow Certain

Administrative Expense Severance Claims (Docket No. 19356) ("Forty-Third Omnibus Claims

Objection"), by which the Debtors objected to administrative expense claim numbers 20017 and

20054 filed by Mr. Gregos and Ms. Budd, respectively, on the grounds that the administrative

expense claims asserted liabilities for severance payments that have already been satisfied in full.

       20.    On February 12, 2010, the Reorganized Debtors filed the Reorganized

Debtors' Forty-Fifth Omnibus Objection Pursuant To 11 U.S.C. § 503(b) And Fed. R. Bankr. P.

3007 To (I) Expunge Certain Administrative Expense (A) Severance Claims, (B) Books And

Records Claims, (C) Duplicate Claims, (D) Pension And Benefit Claims, And (E) Transferred

Workers' Compensation Claims, (II) Modify And Allow Certain Administrative Expense

Severance Claims, And (III) Allow Certain Administrative Expense Severance Claims (Docket No. 19423) ("Forty-Fifth Omnibus Claims Objection"), by which the Debtors objected to administrative expense claim number 18049 filed by Mr. Luecke on the grounds that such administrative expense claim asserts a claim for liabilities in connection with the Debtors' pension plans, employee benefit programs, and post-retirement health and life insurance benefit programs for which the Debtors are not liable.

21.    <u>Responses To The Reorganized Debtors' Objections</u>.  On October 26, 2009,  Mr. Smith filed a response to the Thirty-Seventh Omnibus Claims Objection (Docket No. 19006), in which he requests that this Court reconsider its decision with respect to the health and life insurance benefits of salaried retirees.

22.    On October 26, 2009,  Mr. Luecke filed a response to the Thirty-Seventh Omnibus Claims Objection (Docket No. 19007), in which he asserts that his claim does not relate to pension, employee benefit, or other post-employment benefits, but that it relates to overtime, wages, and severance payments.

23.    On October 29, 2009, Mr. Budelewski filed a response to the Thirty-Seventh Omnibus Claims Objection (Docket No. 19026), in which he requests that this Court reconsider its decision with respect to the pensions of salaried retirees.

24.    On November 10, 2009, Mr. Kunka served an undocketed response to the Thirty-Seventh Omnibus Claims Objection, in which he asserts that his uncompensated vacation time warrants administrative priority. A copy of Mr. Kunka's response is attached hereto as <u>Exhibit A</u>.

25.    On November 12, 2009, Mr. Miller served an undocketed response to the Thirty-Sixth Omnibus Claims Objection, in which he asserts that he has a right to his KECP

8

award and his stock options because verbal and written commitments were made in other legal proceedings. A copy of Mr. Miller's response is attached hereto as <u>Exhibit B</u>.

26.    On February 17, 2010,  Ms. Budd filed a response to the Forty-Third Omnibus Claims Objection (Docket No. 19514), in which she objected to her claim being disallowed, although the Reorganized Debtors actually sought to allow her claim pursuant to the Forty-Third Omnibus Objection.

27.    On February 18, 2010,  Mr. Gregos filed a response to the Forty-Third Omnibus Claims Objection (Docket No. 19523), in which he asserts that his claim is not a severance claim, but that the claim is for loss of extended disability benefits and medical retirement.

28.    On March 15, 2010, Mr. Luecke filed a response to the Forty-Fifth Omnibus Claims Objection (Docket No. 19707), in which he asserts that his claim does not relate to pension, employee benefits, or other post-employment benefits, but instead relates to the Debtors' failure to grant him a job transfer.

29.    <u>The Sufficiency Hearing Notice</u>.  Pursuant to the Claims Objection Procedures Order, the hearing on the Debtors' objection to the Pension and Benefit Claims was adjourned to a future date.  On March 25, 2010, the Reorganized Debtors filed the Sufficiency Hearing Notice with respect to the Pension and Benefit Claims, among other proofs of claim and administrative expense claims, scheduling the Sufficiency Hearing.

E.    <u>Claimants' Burden Of Proof And Standard For Sufficiency Of Claim</u>

30.    The Reorganized Debtors respectfully submit that the Pension and Benefit Claims fail to state a claim against the Debtors under rule 7012 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  The Claimants have not proved any facts to support a right to payment by the Reorganized Debtors on behalf of the Debtors.  Accordingly,

the Debtors' objections to each Pension and Benefit Claim should be sustained and each such

claim should be disallowed and expunged in its entirety.

31.    The burden of proof to establish a claim against the Debtors rests on the

claimants and, if a proof of claim does not include sufficient factual support, such proof of claim

is not entitled to a presumption of prima facie validity pursuant to Bankruptcy Rule 3001(f).  In

re Spiegel, Inc., No. 03-11540, 2007 WL 2456626, at *15 (Bankr. S.D.N.Y. August 22, 2007)

(the claimant always bears the burden of persuasion and must initially allege facts sufficient to

support the claim); see also In re WorldCom, Inc., No. 02-13533, 2005 WL 3832065, at *4

(Bankr. S.D.N.Y. Dec. 29, 2005) (only a claim that alleges facts sufficient to support legal

liability to claimant satisfies claimant's initial obligation to file substantiated proof of claim); In

re Allegheny Int'l., Inc., 954 F.2d 167, 173 (3d Cir. 1992) (in its initial proof of claim filing,

claimant must allege facts sufficient to support claim); In re Chiro Plus, Inc., 339 B.R. 111, 113

(Bankr. D.N.J. 2006) (claimant bears initial burden of sufficiently alleging claim and establishing

facts to support legal liability); In re Armstrong Finishing, L.L.C., No. 99-11576-C11, 2001 WL

1700029, at *2 (Bankr. M.D.N.C. May 2, 2001) (only when claimant alleges facts sufficient to

support its proof of claim is it entitled to have claim considered prima facie valid); In re United

Cos. Fin. Corp., 267 B.R. 524, 527 (Bankr. D. Del. 2000) (claimant must allege facts sufficient

to support legal basis for its claim to have claim make prima facie case).

32.    For purposes of sufficiency, this Court has determined that the standard of

whether a claimant has met its initial burden of proof to establish a claim should be similar to the

standard employed by courts in deciding a motion to dismiss under Bankruptcy Rules 7012 and

9014.  See Transcript of January 12, 2007 Hearing (Docket No. 7118) (the "January 12, 2007

Transcript") at 52:24-53:1.  Pursuant to that standard, a motion to dismiss should be granted "if it

plainly appears that the nonmovant 'can prove no set of facts in support of his claim which would

entitle him to relief.'"  In re Lopes, 339 B.R. 82, 86 (Bankr. S.D.N.Y. 2006) (quoting Conley v.

Gibson, 355 U.S. 41, 45-46 (1957)).  Essentially, the claimant must provide facts that sufficiently

support a legal liability against the Debtors.

33.    This Court further established that the sufficiency hearing standard is

consistent with Bankruptcy Rule 3001(f), which states that "a proof of claim executed and filed

in accordance with these Rules shall constitute prima facie evidence of the validity and amount

of the claim." Fed. R. Bankr. P. 3001(f) (emphasis added).  Likewise, Bankruptcy Rule 3001(a)

requires that "the proof of claim must be consistent with the official form" and Bankruptcy Rule

3001(c) requires "evidence of a writing if the claim is based on a writing."  Fed. R. Bankr. P.

3001(a), (c).  See January 12, 2007 Transcript at 52:17-22.

F.    Argument Regarding The Pension And Benefit Claims

34.    In their administrative expense claims and responses to the Debtors'

objection to those claims, the Claimants have not proved any set of facts that support a right to

payment from the Reorganized Debtors or address the Debtors' arguments as set forth in the

Thirty-Sixth Omnibus Claims Objection, the Thirty-Seventh Omnibus Claims Objection, the

Forty-Third Omnibus Claims Objection, and the Forty-Fifth Omnibus Claims Objection

supporting the Debtors' request for this Court to enter an order disallowing and expunging the

Pension and Benefit Claims.

35.    The Pension and Benefit Claims should be disallowed and expunged to the

extent they assert liabilities or dollar amounts on account of salaried OPEB.  As this Court has

previously determined, the Debtors' Salaried OPEB was not vested and was provided on an at

will basis.  See Final Order Under 11 U.S.C. §§ 105, 363(b)(1), 1108, And 1114(d)(I)

Confirming Debtors' Authority To Terminate Employer-Paid Post-Retirement Health Care

11

Benefits And Employer-Paid Post-Retirement Life Insurance Benefits For Certain (a) Salaried Employees And (b) Retirees And Their Surviving Spouses And (II) Amending Scope And Establishing Deadline For Completion Of Retirees' Committee's Responsibilities, dated March 11, 2009 (Docket No. 16448).

36.    The cancellation of a benefit provided on an at will basis does not give rise to a "claim" as defined in section 101(5) of the Bankruptcy Code because the retiree has no "right to payment." See, e.g., In re Wellman, Inc., No. 08-10595, 2009 WL 465776, slip op. at *3 (Bankr. S.D.N.Y. Jan. 23, 2009) (sustaining debtors' objection to disallow portion of claims for modified severance benefits that exceeded amounts owed under amended severance plan, reasoning that because old severance plan was terminable at will, claims under old severance plan were not enforceable); In re Ionosphere Clubs, Inc., 134 B.R. 515, 519 n. 4 (Bankr. S.D.N.Y. 1991) (noting that terminating plans which are terminable at will gave rise to no claims whatsoever).

G.    <u>Arguments Regarding Specific Claims</u>

37.    <u>Jeffery Miller (Proof of Claim Number 11375).</u>  The assertions of Mr. Miller that he is entitled to receive a "KECIP", otherwise known as the Delphi Corporation Annual Incentive Plan, payment of $37,000 is without merit.  In support of his claim, Mr. Miller states that he "worked the 6 month period and it was never stated that an employee had to work until August 15th.  I worked until July 21, 2006."  Contrary to his assertions, under section 5(b) of the Delphi Corporation Annual Incentive Plan (attached hereto as <u>Exhibit C</u>), Mr. Miller was required to "continue to render services as an employee" to receive any award.  Furthermore, under section 6(a) of the Delphi Corporation Annual Incentive Plan, "[i]f an employee . . .quits at any time . . . the award will terminate on the date of termination of employment."  Mr. Miller admits that he only worked until July 22, 2006 well before end of the annual calendar year

12

performance period under the Annual Incentive Plan.  See Exhibit C, section 4(b).  Accordingly, Mr. Miller is not entitled to an award and Mr. Miller's claim should be disallowed.

38.    Stanley D. Smith (Administrative Expense Claim No. 16925), Frank X. Budelewski (Administrative Expense Claim No. 18087), And Andrew C. Gregos (Administrative Expense Claim No. 20017).  The assertions of Mr. Smith, Mr. Budelewski, and Mr. Gregos that they are entitled to continue receiving pension, benefit, and OPEB payments are without merit.  As stated above, those pension and benefit plans were terminated with respect to all employees.

39.    James A. Luecke (Administrative Expense Claim Number 17081 and 18049).  The assertion of Mr. Luecke that he is entitled to receive payment for lost wages, overtime, and severance is without merit.  Mr. Luecke bases his argument on an alleged promise of a job transfer.  Because of Mr. Luecke's failure to provide sufficient documentation to permit an understanding of the basis for his claims, such claims do not make out a prima facie case against the Debtors.

40.    Walter A. Kunka (Administrative Expense Claim Number 18604).  In his claim, Mr. Kunka asserts that he was unfairly discriminated against for not receiving a lump sum payment for unused vacation days calculated on an annual basis for 2009.  In making this argument, Mr. Kunka erroneously relies on the Delphi Separation Allowance Plan that was in effect for 2008.[3]  The 2008 plan, however, was replaced by a new plan in 2009.  By the letter dated February 5, 2009 and effective January 1, 2009, separation pay for unused vacation days was to be calculated on a month-to-month basis, and not on an annual basis previously used in

---

[3]    Under the 2008 Delphi Separation Allowance Plan, retirement-eligible employees were to receive 100% of their annual vacation entitlement, if such employee retired on or after March 1, 2009.

the 2008 plan. Under the 2009 Delphi Separation Allowance Plan, employees who retired or separated from service were eligible to receive a separation payment only for prorated unused vacation days prior to their last day of work. Because the Debtors reserved the right to modify or amend their benefit plans "at any time" (see Exhibits 2 and 3 to Mr. Kunka's proof of claim), the Debtors were free to change the calculation of separation pay for unused vacation in February 2009. Contrary to Mr. Kunka's assertions, under the clear terms of the 2008 and 2009 plans, he did not suffer legally cognizable "discrimination" just because certain employees who retired before the modification received more in separation pay.[4]

41.    Accordingly, Mr. Kunka, has failed to make out a prima facie case against the Debtors for additional amounts owed and Mr. Kunka's claim should be disallowed.

42.    <u>Robyn R. Budd (Administrative Expense Claim No. 20054)</u>. The assertion of Ms. Budd that her severance claim not be disallowed no longer applies. Ms. Budd originally responded to the Forty-Third Omnibus Claims Objection despite language that would allow her severance claim. Ms. Budd has confirmed in an e-mail to the Reorganized Debtors, dated April 12, 2010, that she has received all of her severance payments and no longer has any claims against the Debtors. A copy of this e-mail is attached hereto as <u>Exhibit D</u>. Therefore, the Reorganized Debtors seek to disallow and expunge administrative expense claim number 20054 in its entirety.

43.    Accordingly, the Reorganized Debtors assert that (a) the Claimants have not met their burden of proof to establish a claim against or interest in the Debtors, (b) the Pension and Benefit Claims are not entitled to a presumption of <u>prima</u> <u>facie</u> validity pursuant to Bankruptcy Rule 3001(f), and (c) the Pension and Benefit Claims fail to state a claim against the

---

[4]    Mr. Kunka does not contest the amount he was actually paid comported with the 2009 plan.

Reorganized Debtors under Bankruptcy Rule 7012.  Because the Claimants cannot provide facts or law supporting their claims, the Thirty-Sixth Omnibus Claims Objection should be sustained as to proof of claim number 11375, the Thirty-Seventh Omnibus Claims Objection should be sustained as to administrative expense claim numbers 16925, 17081, 18087, and 18604, the Forty-Third Omnibus Claims Objection should be sustained as to administrative expense claim numbers 20017 and 20054, the Forty-Fifth Omnibus Claims Objection should be sustained as to administrative expense claim number 18049, and each such claim should be disallowed and expunged in its entirety.

WHEREFORE the Reorganized Debtors respectfully request this Court enter an order (a) sustaining the objections with respect to the Pension and Benefit Claims, (b) disallowing and expunging each Pension and Benefit Claim in its entirety, and (c) granting such further and other relief this Court deems just and proper.

Dated:    New York, New York
          April 13, 2010

                                    SKADDEN, ARPS, SLATE, MEAGHER
                                       & FLOM LLP

                            By:    /s/ John Wm. Butler, Jr.
                                   John Wm. Butler, Jr.
                                   John K. Lyons
                                   Ron E. Meisler
                                   155 North Wacker Drive
                                   Chicago, Illinois 60606

                                        - and -

                            By:    /s/ Kayalyn A. Marafioti
                                   Kayalyn A. Marafioti
                                   Four Times Square
                                   New York, New York 10036

                                   Attorneys for DPH Holdings Corp., et al.,
                                      Reorganized Debtors

15

# EXHIBIT A

HONORABLE ROBERT D. DRAIN
United States Bankruptcy Judge
United States Bankruptcy Court for the Southern District of New York
One Bowling Green
Room 632
New York, New York 10004

RECEIVED
BY MAIL ☐
BY HAND ☐
NOV 1 0 2009
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM

    -and-

DPH HOLDINGS CORPORATION
5725 Delphi drive
Troy, Michigan  48098
(Attn: President)

    -and-

SKADDEN, ARPS, SLATE, MEAGER & FLOM LLP
155 North Wacker Drive
Chicago, Illinois  60606
(Attn: John Wm. Butler, Jr., John K. Lyons, and Joseph N. Wharton)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------X
                   :
     In re             :         Chapter 11
                   :
DELPHI CORPORATION, et al.,    :        Case No. 05-44481 (RDD)
                   :
           Debtors.     :        (Jointly Administered)
                   :
--------------------------------------------------X

## NOTICE OF OBJECTION TO EXPUNGEMENT OF ADMINISTRATIVE CLAIM
## NUMBER 18604 BY THE
## "THIRTY-SEVENTY OMNIBUS CLAIMS OBJECTION"

I, Walter A. Kunka, hereby object and contest the expungement of Administrative Claim
#18604 which I originated.  The claim is for 16.67 days of uncompensated vacation.  The
total amount of the claim is 16.67 days x $322.77/day = $5,380.77 as detailed in the
original claim filed on July 14, 2009.

The legal reason on which I content this claim should not be disallowed and expunged is based on the fact that it appears individuals under similar circumstances were treated with preference as outlined below;

- Delphi letter dated February 5, 2009 stated that effective January 1, 2009, all vacations will vest on a month to month basis. The letter goes on to state that employees who either retire or separate from service will be eligible only for prorated vacation day compensation. (Exhibit #1)
- Employees who retired or separated from service January 1st through February 28th, 2009 received compensation for their entire vacation allotment. There was no vesting and no prorating of vacation compensation.
- Employees who retired or separated from service on or after March 1, 2009 received only vested vacation compensation that was prorated.

Therefore based upon the above facts that allude to treatment with preference I, Walter A. Kunka, respectfully request that the Court enter an order negating the expungement of my claim and grant the relief requested herein for the total original amount of the claim.

Walter A. Kunka
220 Old Oak drive
Cortland, Ohio  44410-1122
United States of America

Dated:  Cortland, Ohio
        November 5, 2009

Exhibit 1 (with original claim)

# DELPHI

February 5, 2009

**To Delphi U.S. Salaried Employees:**

As referenced in the letter distributed today to Delphi's global salaried workforce, Delphi, like others in the automotive sector, continues to face serious challenges created by a weakened global economy and its effect on the automotive industry. U.S. light vehicle sales for 2009 are down roughly 22% from an already slower 2008, and down nearly 40% from volumes experienced at the beginning of this decade. At current forecasts, 2009 U.S. light vehicle sales will reach their lowest level since 1982.

Delphi must respond to these market and economic realities by taking a series of difficult but necessary actions, applicable to U.S. salaried employees.

- The U.S. 2009 merit plan and annual incentive payments (AIP) for eligible executives and U.S. non-executive salaried employees will be suspended in 2009. Suspending these programs in the U.S. and other locations will assist in generating cash flow in 2009.

- Additionally, effective April 1, 2009, Delphi will cease to provide health care and life insurance in retirement to salaried employees and retirees.

  In these extraordinary economic times, it is necessary for Delphi to discontinue these benefits in order to work towards further modifications to its plan of reorganization that will enable the company to emerge from chapter 11 reorganization as soon as practicable. Delphi acknowledges these actions will impose a real hardship on former beneficiaries of these programs. However, the company's recognition of this hardship, which allowed Delphi to continue these benefits in a more robust economic environment, regretfully does not support continuing these programs in the current economic environment.

  On February 4, 2009, Delphi filed a motion with the U.S. Bankruptcy court regarding the aforementioned benefits in retirement. The benefits are generally referred to as Other Post Employment Benefits (OPEB). You will receive a copy of the motion in the mail at your home address. A copy of the motion can also be found on www.delphidocket.com. Any responses to the motion will need to be filed with the Bankruptcy Court no later than February 17, 2009.

  The change does not impact active employees hired prior to January 1, 1993 until they retire. Active employees who were hired after January 1, 1993 but prior to January 1, 2001 will no longer receive the 1% Corporate contribution made into their 401(k) account in lieu of health and life coverage in retirement. Employees hired on or after January 1, 2001 are not affected by this change because they did not have any health or life coverage in retirement based upon their date of hire. Effective April 1, 2009, current and future retirees will have access to Delphi coverages but will be required to pay the full cost of coverages continued. Impacted retirees will be notified of these changes in a separate communication and will be provided the information about continuing their coverages at their own expense. Questions about this change and/or the ability to purchase alternative coverage may be directed to the National Benefits Center at 1-866-335-7444.

World Headquarters and Customer Center  5725 Delphi Drive  Troy, MI  48098-2815  USA

Page 2

- In December 2008, Delphi advised U.S. salaried employees that the Separation Allowance Plan severance schedule would be changed to cap at 6 months based upon length of service. The March 1, 2009 implementation date accommodated previously approved commitments to employees (e.g. specific wind down situations). Additionally, the date was based upon our projected customer volumes and workforce reduction plans at that time. However, rapidly deteriorating business conditions make it necessary to apply the new schedule to all classified salaried employees who were provided release of claims agreements after January 5, 2009.

- Effective January 1, 2009, all vacations will vest on a month-to-month basis. Employees who retire or separate from service will be eligible only for prorated vacation days prior to their last day of work based upon their date of separation in the calendar year. This change will be reflected in all Separation Allowance Plan documents presented to employees beginning today.    ← Exhibit #

- Service Awards will be suspended until further notice. At the point in time Delphi is able to reinstate this program, missed anniversary dates during the suspended period will be recognized.

- Cash payments ($50) to be made in May 2009 to employees who completed Health Risk Assessment Questionnaires will be suspended until further notice. This suspension includes employees who have already completed forms.

Delphi is among many companies throughout the world examining all policies, compensation and benefits in response to a weakened global economy. This week, Delphi employees in all regions of the world are being advised of similar changes affecting their site, country or region.

In this dynamic environment, it is possible that additional cost cutting measures will be necessary in response to changing business conditions; in that event, we will do our best to notify you as early as we can if and when further measures are needed. Except as otherwise directed, should you have questions about this letter or the information provided, please contact your local HR department.

We regret that these changes are necessary, but please understand the changes are only implemented after careful consideration of many factors, including the impact on Delphi people. We believe these changes are necessary to exit bankruptcy and maintain a viable global business.

Sincerely,


John D. Sheehan
Vice President and CFO
Delphi

Kevin M. Butler
Vice President Human Resources
Delphi

# EXHIBIT B

The Claim identified as having a Basis for Objection of "Modified And Allowed Claim" is a claim that overstates the dollar amount owed.

Claims identified as having a Basis for Objection of "Duplicate SERP Claims" are duplicates of other claims.

Claims identified as having a Basis for Objection of "Books And Records Claims" assert liabilities and dollar amounts that are not owing pursuant the Reorganized Debtors' books and records.

Claims identified as having a Basis for Objection of "Untimely Claims" are Claims that were not timely filed pursuant to the Order Under 11 U.S.C. §§ 107(b), 501, 502, And 1111(a) And Fed R. Bankr. P. 1009, 2002(a)(7), 3003(c)(3), And 5005(a) Establishing Bar Dates For Filing Proofs Of Claim And Approving Form And Manner Of Notice Thereof (Docket No. 3206).

Claims identified as having a Basis for Objection of "Pension, Benefit, And OPEB Claims" are those Claims for which the Reorganized Debtors are not liable.

| Date Filed | Claim Number | Asserted Claim Amount[1] | Basis For Objection | Treatment Of Claim | Surviving Claim Number (if any) |
|---|---|---|---|---|---|
| 07/27/06 | 11375 | $74,000.00 | Pension, Benefit, And OPEB Claims | Disallow And Expunge | |

If you wish to view the complete exhibits to the Thirty-Sixth Omnibus Claims Objection, you can do so at www.dphholdingsdocket.com.  If you have any questions about this notice or the Thirty-Sixth Omnibus Claims Objection to your Claim, please contact the Reorganized Debtors' counsel by e-mail at dphholdings@skadden.com, by telephone at 1-800-718-5305, or in writing at Skadden, Arps, Slate, Meagher & Flom LLP, 155 North Wacker Drive, Chicago, Illinois 60606 (Att'n: John Wm. Butler, Jr., John K. Lyons, and Joseph N. Wharton).  Questions regarding the amount of a Claim or the filing of a Claim should be directed to Claims Agent at 1-888-249-2691 or www.dphholdingsdocket.com. CLAIMANTS SHOULD NOT CONTACT THE CLERK OF THE BANKRUPTCY COURT TO DISCUSS THE MERITS OF THEIR CLAIMS.

THE PROCEDURES SET FORTH IN THE ORDER PURSUANT TO 11 U.S.C. § 502(b) AND FED. R. BANKR. P. 2002(m), 3007, 7016, 7026, 9006, 9007, AND 9014 ESTABLISHING (I) DATES FOR HEARINGS REGARDING OBJECTIONS TO CLAIMS AND (II) CERTAIN NOTICES AND PROCEDURES GOVERNING OBJECTIONS TO CLAIMS, ENTERED DECEMBER 7, 2006 (THE "CLAIMS OBJECTION PROCEDURES ORDER"), APPLY TO YOUR PROOFS OF CLAIM THAT ARE SUBJECT TO THE REORGANIZED DEBTORS' OBJECTION AS SET FORTH ABOVE.  A

---

1    Asserted Claim Amounts listed as $0.00 generally reflect that the claim amount asserted is unliquidated.

RECEIVED
☑ BY MAIL    ☐ BY HAND

NOV 1 2 2009

SKADDEN, ARPS, SLATE,
MEAGHER & FLOM

To: Honorable Robert Drain, United States Bankruptcy Judge

Claimant: Jeffrey Allen Miller

Claim Description:
1. Loss of stock grants 8,915 with a stock price of $5 at time of filing
2. Jan-June 2006 KECP bonus of $37,000 not paid
3. Stock options 17,546 never exercised

Reason claim should not be disallowed:

I was asked to go to Delphi's worst performing plant (Dayton, Ohio Moraine) in 2004 that was losing ($180M) a year. In one year that I provided operational leadership the losses in the plant were cut in half. The incentive and long term compensation that were promised were never paid.
However, believing that my employer would make good on its financial promises to me, I was severely disadvantaged during divorce proceedings in the same time period.
As part of the divorce the stock grants and stock options were used in the settlement, causing me to have full obligation for college tuition for the three children.

Additionally, I was an executive with the AHG (Automotive Holdings Group) which was tasked to sell or close all North American operations. As an executive member I was told:
• Bonuses would be paid during chapter 11 process for retention
• A letter signed by Sr. VP Mark Webber stating that I had a job in the new Delphi

Therefore, I believe verbal and written commitments were made and used in other legal proceedings. Thus, I am entitled to stock in the new company equal to the value of what was not paid to me. A cash settlement is equally acceptable in the amount of $81,575.00.

I ask that you please give this serious consideration.

Jeffrey A. Miller
11/08/09

**Name of Creditor** (The person or other entity to whom the debtor owes money or property): Jeffrey A. Miller

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

**Name and address where notices should be sent:**
Jeffrey A. Miller
19145 Mill Grove Dr
Noblesville, IN 46062

☐ Check box if you have never received any notices from the bankruptcy court in this case.

☐ Check box if the address differs from the address on the envelope sent to you by the court.

**Telephone number:**

THIS SPACE IS FOR COURT USE ONLY

**Account or other number by which creditor identifies debtor:**

Check here if this claim ☐ replaces ☐ amends a previously filed claim, dated:_____

**1. Basis for Claim**
- ☐ Goods Sold / Services Performed
- ☐ Customer Claim
- ☐ Taxes
- ☐ Money Loaned
- ☐ Personal Injury
- ☐ Other _____

- ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
- ☑ Wages, salaries, and compensation (fill out below)
  Last four digits of SS #: 0241
  Unpaid compensation for services performed
  from 1/12/1998 to 7/21/2006
  (date)          (date)

**2. Date debt was incurred:**
January 12, 1998 Through July 21, 2006

**3. If court judgment, date obtained:**

**4. Total Amount of Claim at Time Case Filed:** $ STOCK _____ (unsecured)   _____ (secured)   $37,000 (priority)   $37,000 + STOCK (Total)

☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

**5. Secured Claim.**
☐ Check this box if your claim is secured by collateral (including a right of setoff).

Brief Description of Collateral:
☐ Real Estate   ☐ Motor Vehicle
☐ Other_____

Value of Collateral:  $_____

Amount of arrearage and other charges at time case filed included in secured claim, if any: $_____

**6. Unsecured Nonpriority Claim** $ New Stock 28,061 shares     Issuance of

☑ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority.

**7. Unsecured Priority Claim.**
☐ Check this box if you have an unsecured priority claim
Amount entitled to priority $ 37,000
Specify the priority of the claim:
- ☑ Wages, salaries, or commissions (up to $10,000),* earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(3).
- ☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(4).
- ☐ Up to $2,225* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(6).
- ☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child - 11 U.S.C. § 507(a)(7).
- ☐ Taxes or penalties owed to governmental units-11 U.S.C. § 507(a)(8).
- ☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(___).

*Amounts are subject to adjustment on 4/1/07 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment. $10,000 and 180-day limits apply to cases filed on or after 4/20/05. Pub. L. 109-8.

**8. Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

**9. Supporting Documents:** *Attach copies of supporting documents,* such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

**10. Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim

THIS SPACE IS FOR COURT USE ONLY

**Date**
7-21-06

Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any):
*Jeffry A. Miller*

**Penalty for presenting fraudulent claim:** Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

Jeff:

Per our conversation, here are your current RSU balances – please note that dividedns will continue to accrue on the balance

The 2003 grant:
Current balance is 1,561
Will vest equally in 2006 and 2008

The 2004 grant:
Current balance is 3,722
Will vest equally in 2007, 2008, 2009

The 2005 grant:
Current balance is 3,632
Will vest equally in 2008, 2009, 2010

If you need anything else, please feel free to call

Regards,
Michelle

Michelle Swastek
Manager, Executive Compensation
Ph: 248-813-6065
Fax: 248-813-2523
e-mail: michelle.swastek@delphi.com

*TOTAL 8,915 RSU'S*

*STOCK PRICE @ Time of filing #5*

*$44,575*

*Delphi Document MAY 02, 2003 RSU stock price assumed at $10.00/share*

*$89,150.*

*8,182   8,915*

1

| CASH COMPENSATION | |
| --- | --- |
| Base Compensation | |
| Current Salary: | $143,808 |
| January - June 2006 Incentive Plan Award | |
| Corporate Target: | $9,250 |
| Division Target: | $9,250 |
| Total 6-month AIP Target: | $18,500 |
| *Targets are shown at current band level; year-end targets are adjusted for promotions and transfers* | |

Incentive award targets represent the average award (consistent with competitive market practice by pay band) that an executive who substantially achieves individual performance objectives could expect to earn if the performance measurements were at 100% of targeted levels. Actual payouts vary based on actual results.

By participating in the Key Executive Compensation Program (KECP), the executive waives any and all of the executive claims arising from the 2005 Recognition and Retention Grant program.

This award is subject to the KECP Safe Harbor provision approved by the Court on February 10, 2006.  The full provision is attached.

Acknowledged and agreed:

*[signature]*

Date: 3-9-06

AHG-Division  200%  18,500
CORP           200%  18,500
                     _____
                      37,000

Corporate EBITDAR Matrix



Target EBITDAR:          Maximum EBITDAR:
($81 M)                  $340 M

AHG OIBITDAR Matrix



Target OIBITDAR:         Maximum OIBITDAR:
($583.9 M)               ($555.6 M)

**Benefit Access**

05-44481-rdd    Doc 19809    Filed 04/13/10    Entered 04/13/10 22:02:20    Main Document
▪ Your Account ▪ Calculators ▪ Exercise Options ▪ Customer Service ▪ Home
Pg 27 of 35

# Stock Option

## View Your Options Account                    JEFFREY MILLER

| Grant Listing | Transaction History | Order Summary | Tax Summary | Account Information | Your Portfolio |
|---|---|---|---|---|---|

View Options: [Option Summary ▼] [Go!]    Sort By: [Grant Date ▼] [Go!]

| Grant Date (mm/dd/yyyy) | Grant Type | Shares Granted | Grant Price | Shares Outstanding | Shares Exercisable | Expiration Date (mm/dd/yyyy) | |
|---|---|---|---|---|---|---|---|
| 01/12/1998 | NQ | 416 | $13.4500 | 416 | 416 | 01/14/2008 | Details |
| 01/11/1999 | NQ | 416 | $20.6400 | 416 | 416 | 01/13/2009 | Details |
| 02/05/1999 | NQ | 100 | $18.6600 | 100 | 100 | 02/06/2009 | Details |
| 01/07/2000 | NQ | 1,030 | $17.1300 | 1,030 | 1,030 | 01/08/2010 | Details |
| 01/02/2001 | NQ | 1,031 | $11.8800 | 1,031 | 1,031 | 01/03/2011 | Details |
| 01/02/2001 | ISO | 3,294 | $11.8800 | 3,294 | 3,294 | 01/01/2011 | Details |
| 01/02/2002 | ISO | 8,059 | $13.6000 | 8,059 | 8,059 | 01/01/2012 | Details |
| 04/24/2003 | ISO | 4,800 | $8.4300 | 4,800 | 3,200 | 04/23/2013 | Details |
| **Total** | | 19,146 | | 19,146 | 17,546 | | |

---

**View Your Account Documents**

Click here to view your account documents online. Please note that documents are only available online if your company has elected to use this feature. Therefore, if you participate in multiple companies' plans, you will only have access to the documents of the companies that have elected this feature.

---

The expiration date noted above is the date your Company has provided SB as the last day in which you may exercise your stock options. In order to exercise your stock options prior to expiration, SB must enter your order prior to the close of the U.S. market ("Market") on which your Company's stock trades (The NASDAQ, NYSE and AMEX hours are currently 9:30 am to 4:00 pm ET). Therefore, please leave enough time for (i) you to contact SB, (ii) you to provide SB with appropriate instructions and (iii) SB to process the trade. If your expiration date falls on a day the Market is closed, you must exercise before the expiration day and on a day in which the Market is open.

Please note: Your order (whether a market order or limit order) will be filled in accordance with the priority rules of the appropriate market. Therefore, there is no guarantee that your order will be filled. Please reference the specifics of market and limit orders to determine which is appropriate for you.

**Option Summary View**

The grant listing option summary is a concise report that displays the date, type, grant price and number of stock options that have been granted to you as well as the portion of your stock options that are exercisable and outstanding. This quantity of shares outstanding may include unvested shares plus vested shares that have not been exercised as well as the date these shares expire if they are not exercised. The quantity of shares exercisable displays the number of vested stock options currently available to be exercised. These values will increase every time a grant becomes vested or an open order is cancelled. The values are decreased when an order is placed and option is exercised. You have the ability to customize the

# EXHIBIT C

# DELPHI CORPORATION ANNUAL INCENTIVE PLAN

## 1.  PURPOSE OF THE PLAN

The purposes of the Delphi Corporation Annual Incentive Plan ("the Plan") are to reward performance and provide future incentives to employees who contribute to the success of the business.

## 2.  EFFECTIVE DATE AND DURATION OF THE PLAN

This Plan becomes effective on the earlier of the first business day following receipt of shareholder approval and June 1, 2004. Awards may be made under this Plan until May 31, 2009.

## 3.  PLAN ADMINISTRATION AND ELIGIBILITY

(a)  The Compensation and Executive Development Committee of the Delphi Corporation Board of Directors (the "Committee"), as from time to time constituted pursuant to the By-Laws of Delphi Corporation ("Delphi," or the "Corporation"), may, prior to June 1, 2009, authorize annual target award grants to employees. The Committee, in its sole discretion, determines the performance levels at which different percentages of such awards will be earned, the collective amount for all awards to be granted at any one time, and the individual annual grants with respect to employees who are members of the Delphi Strategy Board (the "Strategy Board") and any officer of the Corporation who is not on the Strategy Board but is subject to the requirements of Section 16 of the Securities Exchange Act of 1934, as amended (a "Section 16 Officer"). The Committee may delegate to the Strategy Board responsibility for determining, within the limits established by the Committee, individual award grants for employees who are not Strategy Board members and who are not Section 16 Officers. All such awards will be denominated and paid in cash (U.S. dollars or local currency equivalent).

(b)  Full power and authority to construe and interpret the Plan are vested in the Committee. The Committee determines the selection of employees for participation in the plan and also decides any questions and settles any disputes or controversies that may arise. Any person who accepts any award hereunder agrees to accept as final, conclusive, and binding all determinations of the Committee and the Strategy Board. The Committee has the right, in the case of participants not employed in the United States, to vary from the provisions of the Plan in order to preserve its incentive features.

(c)  Only persons who are employees of the Corporation are eligible to receive an award under the Plan. Subject to such additional limitations or restrictions as the Committee may impose, the term "employees" means persons (i) who are employed by the Corporation, or any subsidiary (as defined below), including employees who are also directors of the Corporation or any such subsidiary, or (ii) who accept (or previously have accepted) employment, at the request of the Corporation, with any entity that is not a subsidiary but in which the Corporation has, directly or indirectly, a substantial ownership interest. For purposes of this Plan, the term "subsidiary" means (i) a corporation of which the Corporation owns, directly or indirectly, capital stock having ordinary voting power to elect a majority of the board of directors of such corporation, or (ii) any unincorporated entity of which the Corporation can exercise, directly or indirectly, comparable control. The Committee will determine when and to what extent individuals otherwise eligible for consideration become employees and when any individual will be deemed to have terminated employment for purposes of the Plan. To the extent determined by the Committee, the term employees will include former employees and any executor(s), administrator(s), or other legal representatives of an employee's estate.

## 4.  DETERMINATION OF ANNUAL INCENTIVE AWARD

(a)  Prior to the grant of any target award, the Committee will establish performance levels for each such award related to the enterprise (as defined below) at which 100% of the award will be earned and a range (which need not be the same for all awards) within which greater and lesser percentages will be earned. The term "enterprise" means the Corporation, or any unit or portion thereof, and any entities in which the

Corporation has, directly or indirectly, a substantial ownership interest. The establishment of performance levels by the Committee will occur no later than 90 days into the performance period. The "performance period" is a calendar year.

(b)    With respect to the performance levels to be established, the Committee will establish the specific measures for each grant at the time of such grant. In creating these measures, the Committee may establish the specific goals based upon or relating to one or more of the following business criteria: return on assets, return on net assets, asset turnover, return on equity, return on capital, market price appreciation of Delphi common stock, economic value added, total stockholder return, net income, pre-tax income, earnings per share, operating profit margin, net income margin, sales margin, cash flow, market share, inventory turnover, sales growth, capacity utilization, increase in customer base, environmental health and safety, diversity, and/or quality. The business criteria may be expressed in absolute terms or relative to the performance of other companies or to an index. When establishing performance goals for a performance period, the Committee may exclude any or all "extraordinary items" as determined under U.S. generally accepted accounting principles including, without limitation, the charges or costs associated with restructurings of the Corporation, discontinued operations, other unusual or non-recurring items, and the cumulative effects of accounting changes.

(c)    No target award will be granted to any director of the Corporation who is not an employee at the date of grant.

(d)    The Committee may adjust the performance levels and goals for any performance period as it deems equitable in recognition of unusual or non-recurring events affecting the Corporation, changes in applicable tax laws or accounting principles, or such other factors as the Committee may determine to preserve the incentive features of the this Plan (including, without limitation, any adjustments that would result in the Company paying non-deductible compensation to a Participant). If any event occurs during a performance period that requires changes to preserve the incentive features of the Plan, the Committee may make appropriate adjustments.

## 5.    DETERMINATION OF FINAL AWARD

(a)    Except as otherwise provided in the Plan, the percentage of each target award to be distributed to an employee will be determined by the Committee on the basis of the performance levels established for such award and the performance of the applicable enterprise or specified portion thereof, as the case may be, during the performance period. Following determination of the final payout percentage, the Committee may, upon the recommendation of the Chief Executive Officer, make adjustments to awards for Strategy Board members and to Section 16 Officers to reflect individual performance during such period, which for covered officers will involve only negative discretion. The term "covered officer" means any individual whose compensation in the year of the expected payment of an award will be subject to the provision of Section 162(m) of the Internal Revenue Code of 1986, as amended (the "Code"). Adjustments to awards to reflect individual performance for employees who are not Strategy Board members and who are not Section 16 Officers may be made by the Strategy Board. Any target award, as determined and adjusted, is herein referred to as a "final award." No award will be paid to a "covered officer" unless the Committee certifies the performance in writing. The total award paid to any employee for any year will not exceed $7.5 million.

(b)    Payment of any final award (or portion thereof) to an employee is subject to the satisfaction of the conditions precedent that such employee: (i) continue to render services as an employee (unless this condition is waived by the Committee), (ii) refrain from engaging in any activity which, in the opinion of the Committee, is competitive with any activity of the Corporation or any subsidiary (except that employment at the request of the Corporation with an entity in which the Corporation has, directly or indirectly, a substantial ownership interest, or other employment specifically approved by the Committee, may not be considered to be an activity which is competitive with any activity of the Corporation or any subsidiary) and from otherwise acting, either prior to or after termination of employment, in any manner inimical or in any way contrary to the best interests of the Corporation, and (iii) furnish to the Corporation such information with respect to the satisfaction of the foregoing conditions precedent as the Committee may reasonably request.

2

## 6.   TREATMENT OF AWARDS UPON EMPLOYEE'S DEATH OR TERMINATION OF EMPLOYMENT

(a)   If an employee is dismissed for cause or quits employment at any time, without the prior written consent of the Corporation, except as otherwise determined by the Committee, the award will terminate on the date of termination of employment.

(b)   If, upon death or a qualified termination of an employee's employment prior to the end of any performance period the Committee will determine whether to waive the condition precedent of continuing to render services as provided in paragraph 3(c) and the target award granted to such employee with respect to such performance period will be reduced pro rata based on the number of months remaining in the performance period after the month of death or termination. The final award for such employee will be determined by the Committee (i) on the basis of the performance levels established for such award (including the minimum performance level) and the performance level achieved through the end of the performance period and (ii) in the discretion of the Committee, on the basis of individual performance during the period prior to death or termination.

A qualified termination will include a retirement, permanent medical disability or any other termination, as approved by the Committee, albeit not described herein.

A qualifying leave of absence, determined in accordance with procedures established by the Committee, will not be deemed to be a termination of employment but, except as otherwise determined by the Committee, the employee's target award will be reduced pro rata based on the number of months during which such person was on such leave of absence during the performance period. A target award will not vest during a leave of absence granted an employee for government service.

## 7.   CHANGE IN CONTROL

Upon the effective date of any Change in Control of the Corporation all outstanding unvested awards granted under this Plan will vest and be paid on a pro rata basis based on the greater of target award or actual performance. A "Change in Control" will mean the occurrence of one or more of the following events unless a majority of the "Continuing Directors" has specifically approved such event in advance of its occurrence: (a) any "person" or "group" as those terms are used in the Securities Exchange Act of 1934, as amended, other than any employee benefit plan of the Corporation or Delphi or a trustee or other administrator or fiduciary holding securities under an employee benefit plan of the Corporation, is or becomes the current beneficial owner of Delphi voting securities representing 25% or more of the combined voting power of Delphi's then outstanding securities; (b) during any two-year period, individuals who at the beginning of such period constitute the Board and any new directors whose election to the Board or nomination for election by the Corporation's stockholders was approved by at least two-thirds of the directors still in office who either were directors at the beginning of the period or whose election was previously so approved (the "Continuing Directors"), cease for any reason to constitute a majority thereof; (c) Delphi merges or consolidates with any other corporation or other entity, other than a merger or consolidation (i) that would result in all or a portion of the voting securities of Delphi outstanding immediately prior thereto continuing to represent (either by remaining outstanding or by being converted into voting securities of the surviving entity) more than 50% of the combined voting securities of Delphi and such surviving entity outstanding immediately after such merger or consolidation or (ii) by which the corporate existence of Delphi is not affected and following which Delphi's chief executive officer would retain his or her position with Delphi and the Delphi directors would remain on the Board of the Corporation and constitute a majority thereof; (d) Delphi sells or otherwise disposes of all or substantially all of its assets; or (e) the stockholders of the Corporation approve a plan of complete liquidation of Delphi.

## 8.   PLAN AMENDMENT, MODIFICATION, SUSPENSION OR TERMINATION

The Committee may, in its sole discretion, at any time, amend, modify, suspend, or terminate this Plan provided that no such action (i) adversely affects the rights of an employee with respect to previous target awards or final awards under the Plan (except as otherwise permitted), and the Plan, as constituted prior to such action,

continues to apply with respect to target awards previously granted and final awards which have not been paid or (ii) without the approval of the stockholders, if such approval is required to preserve the exemption of awards granted under the plan from the limitations of deductibility of Section 162(m), (a) increases the limit on the maximum amount of final awards for covered officers, (b) renders any director of the Corporation who is not an employee at the date of grant or any member of the Committee or the Audit Committee of the Delphi Corporation Board of Directors, eligible to be granted a target award, or (c) permits any target award to be granted under this Plan after May 31, 2009.

## 9.   STATUTE OF LIMITATIONS AND CONFLICT OF LAWS

Every right of action by, or on behalf of, the Corporation or by any stockholder against any past, present, or future member of the Board of Directors, officer, or employee of the Corporation or its subsidiaries arising out of or in connection with this Plan will, irrespective of the place where action may be brought and irrespective of the place of residence of any such director, officer, or employee, cease and be barred by the expiration of three years from the date of the act or omission in respect of which such right of action arises. Any and all right of action by any employee (past, present, or future) against the Corporation arising out of or in connection with this Plan will, irrespective of the place where an action may be brought, cease and be barred by the expiration of three years from the date of the act or omission in respect of which such right of action arises. This Plan and all determinations made and actions taken pursuant hereto will be governed by the laws of the State of Delaware, without giving effect to principles of conflict of laws, and construed accordingly.

## 10.   MISCELLANEOUS

(a)   All final awards which have been awarded in accordance with the provisions of the Plan will be paid as soon as practicable following the end of the related performance period. If the Corporation has any unpaid claim against an employee arising out of or in connection with the employee's employment with the Corporation, such claim may be offset against awards under the Plan. Such claim may include, but is not limited to, unpaid taxes, the obligation to repay gains received under the Delphi Long Term Incentive Plan, or Corporate business credit card charges.

(b)   To the extent that any employee, former employee, or any other person acquires a right to receive payments or distributions under this Plan, such right will be no greater than the right of a general unsecured creditor of the Corporation. All payments and distributions will be paid from the general assets of the Corporation. Nothing contained in the Plan, and no action taken pursuant to its provisions, will create or be construed to create a trust of any kind or a fiduciary relationship between the Corporation and any employee, former employee, or any other person.

(c)   If an employee is promoted during the award period, a target award may be increased to reflect such employee's new responsibilities.

(d)   The expenses of administering this Plan will be borne by the Corporation.

(e)   Except as otherwise determined by the Committee, with the exception of transfer by will or the laws of descent and distribution, no target or final award is assignable or transferable and, during the lifetime of the employee, any payment of any final award will only be made to the employee.

(f)   In the event of death, the executor(s) or administrator(s) of the employee's estate, or such other person(s) as determined by a court of competent jurisdiction, may receive payment, in accordance with and subject to the provisions of this Plan, provided the executor(s), administrator(s), or other person supplies documentation satisfactory to the Corporation to so act. Upon making such determination, the Corporation is relieved of any further liability regarding any award to the deceased employee.

4

# EXHIBIT D

**Kennedy, Tom (CHI - Associate)**

| | |
|---|---|
| **From:** | brucerobyn07@aol.com |
| **Sent:** | Monday, April 12, 2010 5:30 AM |
| **To:** | Kennedy, Tom (CHI - Associate) |
| **Subject:** | Re: Claim 20054 |

WHen I filed the claim I still had months of severence coming to me.  I have received all my severence from Delphi.  THe claim was to collect that money.  I do not have any more claim as long as this is the premise of the stipulation.

Robyn Budd


-----Original Message-----
From: Kennedy, Tom J <ThomasJason.Kennedy@skadden.com>
To: 'brucerobyn07@aol.com' <brucerobyn07@aol.com>
Sent: Fri, Apr 9, 2010 6:16 pm
Subject: FW: Claim 20054

Ms. Budd,

I did not have time to put the stipulation together today. I will try to get it completed sometime early next week. However, since the deadline for us to adjourn the hearing regarding your claim 20054 is approaching, I was hoping to get email confirmation from you stating that you agree with my characterization of the situation below. A quick email stating that you agree will suffice.

Thanks,

**Thomas J. Kennedy**
Associate
Skadden, Arps, Slate, Meagher & Flom LLP
155 North Wacker Drive | Chicago | Illinois | 60606-1720
T: 312.407.0937 | F: 312.827.9320
thomasjason.kennedy@skadden.com

**From:** Kennedy, Tom (CHI - Associate)
**Sent:** Thursday, April 08, 2010 8:33 PM
**To:** 'brucerobyn07@aol.com'
**Subject:** Claim 20054

Ms. Budd,

Just to confirm what we discussed over the phone tonight, I understand that you have been paid in full for the severance pay in the amount of $23,962.50 asserted on claim number 20054 and that you have agreed to withdraw the claim. I will draft a stipulation tomorrow stating as much and will forward it to you for signature.

Thanks,

**Thomas J. Kennedy**
Associate
Skadden, Arps, Slate, Meagher & Flom LLP
155 North Wacker Drive | Chicago | Illinois | 60606-1720
T: 312.407.0937 | F: 312.827.9320
thomasjason.kennedy@skadden.com

----------------------------------------------------------------------- *****************************************************

To ensure compliance with Treasury Department regulations, we advise you that, unless otherwise expressly

indicated, any federal tax advice contained in this message was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding tax-related penalties under the Internal Revenue Code or applicable state or local tax law provisions or (ii) promoting, marketing or recommending to another party any tax-related matters addressed herein.
*************************************************** ***********************************************************

This email (and any attachments thereto) is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this email, you are hereby notified that any dissemination, distribution or copying of this email (and any attachments thereto) is strictly prohibited. If you receive this email in error please immediately notify me at (212) 735-3000 and permanently delete the original email (and any copy of any email) and any printout thereof.

Further information about the firm, a list of the Partners and their professional qualifications will be provided upon request.
*******************************************************
===============================================================================

4/13/2010