DUANE MORRIS LLP
A Delaware Limited Liability Partnership
Lawrence J. Kotler, Esquire (LK-8177)
Wendy M. Simkulak, Esquire (WS-8945)
1540 Broadway, 14th Floor
New York, NY 10036-4086
(212) 692-1000
(212) 692-1020 (facsimile)
        and
Margery N. Reed, Esquire
Lewis R. Olshin, Esquire
30 South 17th Street
Philadelphia, PA 19103-4196
(215) 979-1000
(215) 979-1020 (facsimile)

Obj. Deadline: April 15, 2010  at 4:00 p.m.
Hearing Date: April 22, 2010 at 10:00 a.m.

Counsel for the ACE Companies

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| DPH HOLDINGS CORP., et al. | ) | Case No. 05-44481 |
| | ) | (Jointly Administered) |
| Reorganized Debtors. | ) | |

**RESPONSE OF THE ACE COMPANIES TO
REORGANIZED DEBTORS' FORTY-SIXTH OMNIBUS OBJECTION PURSUANT TO
11 U.S.C. § 503(b) AND FED. R. BANKR. P. 3007 TO (I) DISALLOW AND EXPUNGE
CERTAIN ADMINISTRATIVE EXPENSE (A) BOOKS AND RECORDS CLAIMS, (B)
METHODE ELECTRONICS CLAIMS, (C) STATE WORKERS' COMPENSATION
CLAIMS, (D) DUPLICATE STATE WORKERS' COMPENSATION CLAIMS, (E)
WORKERS' COMPENSATION CLAIMS, (F) TRANSFERRED WORKERS'
COMPENSATION CLAIMS, (G) TAX CLAIMS, (H) DUPLICATE INSURANCE
CLAIMS, AND (I) SEVERANCE CLAIMS, (II) DISALLOW AND EXPUNGE (A) A
CERTAIN DUPLICATE WORKERS' COMPENSATION CLAIM, (B) A CERTAIN
DUPLICATE TAX CLAIM, AND (C) A CERTAIN DUPLICATE SEVERANCE CLAIM,
(III) MODIFY CERTAIN ADMINISTRATIVE EXPENSE (A) STATE WORKERS'
COMPENSATION CLAIMS AND (B) WORKERS' COMPENSATION CLAIMS, AND
(IV) ALLOW CERTAIN ADMINISTRATIVE EXPENSE SEVERANCE CLAIMS**

ACE American Insurance Company ("ACE American"), Pacific Employers Insurance

Company ("Pacific"), and Illinois Union Insurance Company ("Illinois Union") and each of their

affiliates (collectively, the "ACE Companies"), by and through their undersigned counsel, hereby

file this Response (the "Response") to the Reorganized Debtors' Forty-Sixth Omnibus Objection

Pursuant To 11 U.S.C. § 503(B) And Fed. R. Bankr. P. 3007 To (I) Disallow And Expunge

DM3\1343845.5

Certain Administrative Expense (A) Books And Records Claims, (B) Methode Electronics Claims, (C) State Workers' Compensation Claims, (D) Duplicate State Workers' Compensation Claims, (E) Workers' Compensation Claims, (F) Transferred Workers' Compensation Claims, (G) Tax Claims, (H) Duplicate Insurance Claims, And (I) Severance Claims, (II) Disallow And Expunge (A) A Certain Duplicate Workers' Compensation Claim, (B) A Certain Duplicate Tax Claim, And (C) A Certain Duplicate Severance Claim, (III) Modify Certain Administrative Expense (A) State Workers' Compensation Claims And (B) Workers' Compensation Claims, And (IV) Allow Certain Administrative Expense Severance Claims (the "Objection"), and respectfully state as follows[1]:

<u>**Preliminary Statement**</u>

The ACE Companies have provided certain insurance policies to the Debtors both prior to and after the Petition Date. Pursuant to previously entered orders of this Court, the Debtors assumed certain prepetition insurance policies and related agreements and entered into postpetition insurance policies and related agreements with the ACE Companies and the ACE Companies were granted allowed administrative claims for liabilities arising thereunder. *See* Docket Nos. 1779, 10520, and 18793. Specifically, pursuant to an order entered by this Court in connection with the approval of the Modified Plan in August 2009, the ACE Companies have "Allowed Administrative Claims for all liabilities of the Debtors to the ACE Companies under the Agreements, subject to the Debtors' and the ACE Companies' respective rights, claims and defenses under the Agreements." *See* Docket No. 18793 ¶ 3[2].

---

[1]   Any description herein of the ACE Administrative Claims or the Agreements (each as defined herein) is provided for convenience purposes only. Reference should be made to the ACE Administrative Claims and the Agreements for the provisions, terms, and/or conditions thereof, as appropriate.

[2]   A true and correct copy of Docket No. 18793 (defined herein as the "2009 Order") is attached hereto and incorporated herein as Exhibit "A."

2

Pursuant to the procedures established by the Debtors (*see* Docket Nos. 6089 and 18998),

the ACE Companies filed certain administrative claims relating to the Debtors' liabilities under

the Agreements. The Debtors have now objected to those administrative claims on the basis that

such claims are not reflected in the Debtors' books and records. However, in seeking this

Court's authority to assume the prepetition insurance policies and related agreements and to

enter into the postpetition insurance policies and related agreements, the Debtors in December

2005 estimated their liability to the ACE Companies at approximately $22 million without

regard to the Debtors' obligations under the postpetition insurance policies and agreements.

Accordingly, the Debtors' books and records should be corrected to include the ACE

Companies' Allowed Administrative Expense Claims, and the Objection should be overruled and

denied.

## I.    Background

### A.    The Bankruptcy Case

1.    On October 8, 2005 and October 14, 2005 (collectively, the "Petition Date"),

Delphi Corporation ("Delphi") and certain of its affiliates (collectively and together with Delphi,

the "Debtors")[3] filed their respective voluntary petitions for bankruptcy relief under chapter 11

of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy

Court for the Southern District of New York (the "Court").

2.    On or about October 6, 2009 (the "Effective Date"), the First Amended Joint Plan

Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-

Possession (As Modified) (the "Modified Plan") became effective.

---

[3]    As appropriate, any reference to the Debtors shall also include or refer to the Reorganized Debtors (as
defined in the Modified Plan).

DM3\1343845.5

B.    **The ACE Insurance Program**

3.        Prior to the Petition Date, the ACE Companies issued certain insurance policies to certain of the Debtors and the ACE Companies and the Debtors also entered into certain written agreements in connection therewith including, but not limited to, claims servicing agreements.

4.        On or about December 16, 2005, the Debtors filed that certain Motion For Order Under 11 U.S.C. §§ 362, 363, 365, 1107, And 1108 Authorizing Renewal of Insurance Coverage And Certain Related Relief (the "Assumption Motion"). [Docket No. 1559].

5.        The Court entered an Order dated January 6, 2006 Under 11 U.S.C. §§ 362, 363, 365, 1107, and 1108 Authorizing Renewal of Insurance Coverage and Certain Related Relief (the "2006 Order") which granted the Assumption Motion and provided that, *inter alia*: (i) the Debtors were authorized to assume certain prepetition insurance policies and agreements with the ACE Companies (as defined therein, collectively, the "Assumed Agreements") pursuant to § 365(a) of the Bankruptcy Code, and (ii) conditioned on the Debtors' assumption of the Assumed Agreements, (a) all payment and reimbursement obligations owing to the ACE Companies from the Debtors under the Assumed Agreements are accorded administrative priority status pursuant to § 503(b)(1)(A) of the Bankruptcy Code, and (b) the Debtors are authorized to pay the ACE Companies' claims with respect to the Assumed Agreements in the ordinary course of their businesses. [Docket No. 1779].

6.        Subsequent to the entry of the 2006 Order, (i) the Debtors assumed the Assumed Agreements pursuant to the 2006 Order and (ii) certain of the ACE Companies issued certain insurance policies (as renewed, amended, modified, endorsed or supplemented from time to time, collectively and together with any agreements related thereto, the "Postpetition Agreements") to certain of the Debtors.

4

7.      Pursuant to the Assumed Agreements and the Postpetition Agreements

(collectively, the "Agreements"), certain of the ACE Companies provide, *inter alia*, certain

workers' compensation, general liability, automobile liability, directors and officers liability and

certain other insurance for specified policy periods subject to certain limits, deductibles,

retentions, exclusions, terms and conditions, as more particularly described therein; and the

insureds, including one or more of the Debtors, were and/or are required to pay to the ACE

Companies certain amounts including, but not limited to, insurance premiums and deductibles

reimbursements, as more particularly described in the Agreements (the "Obligations").

**C.      The Adversary Proceeding**

8.      On or about July 15, 2009, the Director of the State of Michigan Workers'

Compensation Agency (the "Agency"), on behalf of the Agency, sent a letter to the ACE

Companies erroneously concluding that despite the Agency's approval of Delphi and certain of

its affiliates as self-insured employers for virtually all of their Michigan workers' compensation

claims, the Agency's records allegedly "show that Delphi Automotive Systems Corporation and

Delphi Corporation have been insured for all workers' compensation liability in Michigan with

members of the ACE Limited group [sic], specifically Pacific Employers Insurance Company

and Ace American Insurance Company" (generally, "MI's Allegation").

9.      On or about October 6, 2009, ACE American and Pacific commenced an

adversary proceeding (the "Adversary Proceeding") by filing a complaint (the "Complaint")

against Delphi, the Agency, and the State of Michigan Funds Administration ("Funds

Administration") seeking (i) a declaration that the Deductible Policies (as defined in the

Complaint) do not provide any coverage for the Debtors' Michigan self-insured workers'

compensation obligations and that the Retention Policies (as defined in the Complaint) provide

only "excess" coverage above and beyond Delphi's self-insured workers' compensation

5

obligations or alternatively, (ii) equitable relief in the form of reformation of the underlying

Deductible Policies to reflect the mutual understanding and intent of the contracting parties.

[Adversary Proceeding Docket No. 1].

10.     The ACE Companies assert that to the extent the ACE Companies are required to

pay any amounts on account of MI's Allegation, the ACE Companies have Allowed

Administrative Claims (as defined therein) against the Debtors for all such amounts.

**D.     The ACE Companies' Claims**

11.     On or about July 28, 2006, each of ACE American, Pacific and Illinois Union

filed proofs of claim against each of the Debtors (collectively, the "Proofs of Claim") asserting

that the ACE Companies held administrative expense priority claims pursuant to the

Assumption Order and that the liquidated amount then due was $5,614.06.  The Proofs of

Claim also stated that the ACE Companies had additional contingent and unliquidated

administrative claims against the Debtors based upon ultimate expected losses, and the Debtors'

obligations were secured by $28.3 million in letters of credit.

12.     On or about April 27, 2007, the Debtors filed that certain Debtors' Thirteenth

Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(B) And Fed. R. Bankr. P. 3007

To Certain (A) Insufficiently Documented Claims, (B) Claims Not Reflected On Debtors'

Books And Records, (C) Protective Insurance Claims, (D) Insurance Claims Not Reflected On

Debtors' Books And Records, (E) Untimely Claims And Untimely Tax Claims, And (F) Claims

Subject To Modification, Tax Claims Subject To Modification, And Claims Subject To

Modification And Reclamation Agreement pursuant to the which the Debtors objected to the

Proofs of Claim (the "POC Objection").  [Docket No. 7825].

13.     On or about September 7, 2007, the Debtors filed their Motion For Order

Pursuant To 11 U.S.C. §§ 105(a) And 502(c) (a) Estimating And Setting Maximum Cap On

6

Certain Contingent Or Unliquidated Claims And (b) Approving Expedited Claims Estimation

Procedures (the "Motion to Estimate") pursuant to which the Debtors sought to estimate the

Proofs of Claim for purposes of voting on their plan of reorganization. [Docket No. 9297].

14.     On or about October 9, 2007, in order to resolve the POC Objection and the

Estimation Motion, the Court entered that certain Joint Stipulation And Agreed Order Resolving

The Debtors' Thirteenth Omnibus Claims Objection And Claims Estimation Motion With

Respect To Proofs Of Claim Filed By ACE American Insurance Company, Pacific Employers

Insurance Company, Illinois Union Insurance Company, ESIS, Inc. And Their Affiliates And

Consolidating Such Proofs Of Claim (the "2007 Order") pursuant to which, among other things,

" . . . all payment and reimbursement obligations owing to the ACE Companies from the

Debtors under the Assumed Agreements shall be accorded administrative priority status

pursuant to Section 503(b)(1)(A) of the Bankruptcy Code . . . ." and the Debtors were

"authorized to pay the Insurers' [the ACE Companies'] claims with respect to the Agreements

in the ordinary course of their businesses." *See* 2007 Order ¶ 8. [Docket No. 10520].

15.     On or about July 15, 2009, each of ACE American, Pacific and Illinois Union

filed administrative claims against each of the Debtors (collectively, the "July Basic

Administrative Claims") asserting that, through June 1, 2009 (the "First Administrative Claim

Date"), the current amount due was $180,676.36 and that the estimated ultimate amount was

$12,359,616 plus additional contingent and unliquidated amounts, and that the claims were

secured by a letter of credit in the outstanding amount of approximately $12.3 million (the

"Letter of Credit").

16.     On or about August 14, 2009, in order to resolve, in part, the objection of the

ACE Companies to the Plan Modifications Motion, the Debtors and the ACE Companies entered

into a stipulation (the "Stipulation) which was approved by the Court upon entry of that certain

7

Stipulation And Order Resolving Limited Objection Of The ACE Companies To Approval

And/Or Confirmation Of First Amended Joint Plan Of Reorganization Of Delphi Corporation

And Certain Affiliates, Debtors And Debtors-In-Possession (As Modified) And Preserving

Limited Objection Of The ACE Companies To Assignment Of Agreements To Buyers (the

"2009 Order").  The 2009 Order (and thus, the Stipulation) provide:

> Notwithstanding any provision in the Modified Plan, the
> Confirmation Order, the Modification Approval Order, or the
> Master Disposition Agreement to the contrary, the ACE
> Companies shall have Allowed Administrative Claims[4] for all
> liabilities of the Debtors to the ACE Companies under the
> Agreements, subject to the Debtors' and the ACE Companies'
> respective rights, claims and defenses under the Agreements; and
> such liabilities shall be paid by the Debtors or the Reorganized
> Debtors, as applicable (and after the date of the Closing (as defined
> in the Master Disposition Agreement), by the Buyers, if the
> Agreements have been assigned to the Buyers pursuant to an order
> of the Court), in the ordinary course of their businesses in
> accordance with the terms and conditions of the Agreements.

*See* Exhibit A, 2009 Order ¶ 3.  [Docket No. 18793].

17.    On or about November 4, 2009, ACE American and Pacific filed administrative

claims against each of the Debtors (collectively, the "November Basic Administrative Claims"

and together with the July Basic Administrative Claims, the "Basic Administrative Claims")

asserting that, through the Effective Date, the current amount due was $541.36[5] and that the

estimated ultimate amount was $12,359,616 plus additional contingent and unliquidated amounts

and noted that the claims were secured by the Letter of Credit.

---

[4]    Any reference herein to "Allowed Administrative Claims" shall refer to such capitalized term as defined in the 2009 Order which incorporates the defined term in the Modified Plan.

[5]    The current amount due of $180,676.36 set forth in the July Basic Administrative Claims was partially paid by the Debtors leaving a balance due of $541.36 at the time of the filing of the November Basic Administrative Claims.

DM3\1343845.5

18.    On or about November 4, 2009, ACE American and Pacific also each filed an

administrative claim against Delphi Corporation (collectively, the "Litigation Related

Administrative Claims") relating to, *inter alia,* MI's Allegation and the Complaint. The

Litigation Related Administrative Claims asserted an additional estimated claim of

$67,311,662.50 based upon the amounts stated in the claims filed by the Funds Administration

and the Michigan Self-Insurers' Security Fund, and reserved the right to apply proceeds of the

Letter of Credit thereto.

19.    On or about March 19, 2010, the Debtors filed the Objection which objects to the

Basic Administrative Claims and the Litigation Related Administrative Claims (collectively, the

"ACE Administrative Claims") on the basis that the liabilities and dollar amounts are not owing

pursuant to the Debtors' books and records[6]. [Docket No. 19711].

E.    **Claims Objection Procedures**

20.    On or about December 7, 2006, the Court entered that certain Order Pursuant To

11 U.S.C. § 502(B) And Fed. R. Bankr. P. 2002(M), 3007, 7016, 7026, 9006, 9007, And 9014

Establishing (I) Dates For Hearings Regarding Objections To Claims And (II) Certain Notices

And Procedures Governing Objections To Claims (the "Claims Objection Procedures Order")

which provides, *inter alia,* that in any response to an objection to its claim, a claimant should

unless previously filed with the Court, provide (i) "documentation sufficient to establish a prima

facie right to payment; provided, however, that the Claimant need not disclose confidential,

proprietary, or otherwise protected information in the Response" and (ii) "to the extent that the

claim is contingent or fully or partially unliquidated, the amount that the Claimant believes

---

[6]    The Objection also objects to certain claims filed by the Funds Administration and the Michigan Self-
Insurers' Security Fund (in reference thereto, the "MI Claims Objection").

9

would be the allowable amount of such claim upon liquidation of the claim or occurrence of the

contingency, as appropriate." *See* Claims Objection Procedures Order ¶ 3. [Docket No. 6089].

21.     On or about October 22, 2009, the Court entered that certain Order Pursuant To

11 U.S.C. §§ 105(A) And 503(B) Authorizing Debtors To Apply Claims Objection Procedures

To Address Contested Administrative Expense Claims (the "Administrative Claims Objection

Procedures Order") pursuant to which the procedures set forth in the Claims Objection

Procedures Order are to be applied to the adjudication of administrative claims. [Docket No.

18998].

22.     Accordingly, subject to their right to not disclose confidential, proprietary or

otherwise protected information (in light of, among other things, the pending Complaint and MI

Claims Objection) and reserving their right to supplement this Response and/or provide certain

information to the Debtors subject to appropriate confidentiality constraints, the ACE Companies

file this Response to establish a right to payment of the ACE Administrative Claims, which have

previously been Allowed pursuant to the 2009 Order[7].

## II.     Response

23.     As a preliminary matter, the claims set forth in the November Basic

Administrative Claims incorporate the claims set forth in the July Basic Administrative Claims.

Accordingly, for purposes of administrative convenience only and without prejudice to the ACE

Companies' rights to, any time, assert and collect upon claims arising prior to the First

Administrative Claim Bar Date or amend the November Basic Administrative Claims, the ACE

---

[7]     As noted herein, the Objection is based on the Debtors' "books and records" and thus, this Response is limited to that particular objection and the ACE Companies specifically reserve and preserve their right to supplement this Response.

10

DM3\1343845.5

Companies are willing to consent to consolidation of the July Basic Administrative Claims into the November Basic Administrative Claims.

24.    Similarly, for purposes of administrative convenience only and without prejudice to the ACE Companies' rights against each of the Debtors to amend the Consolidated Administrative Claims (as defined herein) at any time to: (i) assert joint and several liability against some or all of the Debtors with respect to the Consolidated Administrative Claims and the right to amend the Consolidated Administrative Claims, (ii) modify the Debtor(s) against which the Consolidated Administrative Claims are asserted, and/or (iii) amend the amount of the Consolidated Administrative Claims, the ACE Companies are willing to consent to the consolidation of the November Basic Administrative Claims into one claim for each of ACE American and Pacific against the Debtors.

25.    Accordingly and subject, in all respects, to the foregoing, the Basic Administrative Claims can be consolidated into two (2) remaining claims – one for each of ACE American and Pacific (collectively, the "Consolidated Administrative Claims").

26.    Therefore, subject to the foregoing, without waiving any rights, and solely for purposes of clarity and simplicity, this Response will respond to the Objection as to (i) the Consolidated Administrative Claims[8] and (ii) the Litigation Related Administrative Claims.

**A.    The Debtors Do Not Provide Sufficient Support For Their Books And Records Objection, Have Acknowledged Their Liabilities To The ACE Companies, And Stipulated That The ACE Companies Hold Allowed Administrative Claims And The Court Has Approved That Stipulation And Allowance.**

27.    Pursuant to the procedures proposed by the Debtors and approved by this Court, administrative claims were filed not by motion but by a process similar to that used for

---

[8]    The Response as to the Consolidated Administrative Claims should be deemed to apply in all respects to all of the July Basic Administrative Claims and the November Basic Administrative Claims.

11

prepetition proofs of claim, and administrative claims are to be adjudicated pursuant to the

Claims Objection Procedures Order which established procedures for objecting to and estimating

prepetition proofs of claim pursuant to, *inter alia,* 11 U.S.C. § 502.

28.    In particular, the Claims Objection Procedures Order, which is made applicable

hereto by the Administrative Claims Objection Procedures Order, provides that in its response to

a claim objection and subject to its right not to disclose confidential, proprietary or otherwise

protected information, a claimant should establish a *prima facie* right to payment and if its claim

is contingent or unliquidated, estimate the amount thereof. *See* Claims Objection Procedures

Order ¶ 3. [Docket No. 6089].

29.    Given that Debtors have requested that an administrative claim be filed and

objected to in this case pursuant to procedures used for proofs of claim, it is important to note

that case law clearly provides that in its objection to a creditor's claim, "the objecting party must

then produce evidence rebutting the claimant or else the claimant will prevail." *In re Fidelity

Holding Co.,* 837 F.2d 696, 698 (5th Cir. 1988). *See also In re Rockefeller Center Properties,*

241 B.R. 804 (Bankr. S.D.N.Y. 1999); *Riverbank, Inc. v. Make Meat Corp. (In re Make Meat

Corp.),* No. 98 Civ. 4990, 1999 U.S. Dist. LEXIS 3974 (S.D.N.Y. Mar. 31, 1999) (stating that

"[a] mere objection by the debtor, therefore, does not end the inquiry. Once the claimant has

established its prima facie case, the burden of going forward then shifts to the debtor to produce

evidence sufficient to negate the prima facie validity of the filed claim"); *In re Lehning,* No. 05-

16245, 2007 Bankr. LEXIS 1462, *9 (Bankr. N.D.N.Y. Apr. 20, 2007) (explaining that "the

objector must produce evidence which, if believed, would refute at least one of the allegations

that is essential to the claim's legal sufficiency") (internal quotations omitted); *In re Woodmere

Investors Ltd. Partnership,* 178 B.R. 346, 357 (Bankr. S.D.N.Y. 1995) (holding that a debtor's

12

mere assertions about the reasonableness of a claim were insufficient to refute the creditor's

*prima facie* evidence of the claim).

30.    Specifically, a debtor must rely on more than the mere assertion that its books and

records reflect a different amount for the claim in order to rebut the presumption of validity of

the claim. *In re Protected Vehicles, Inc.*, No. 08-00783-dd, 2009 Bankr. LEXIS 1689, *4

(Bankr. D.S.C. Jan. 29, 2009) (noting that the debtor must assert a specific defense to liability,

such as accounting summaries reflecting payments or other credits not acknowledged by the

creditor); *see also In re Enron Creditors' Recovery Corp.*, No. 01-16034, 2007 Bankr. LEXIS

2969 (Bankr. S.D.N.Y. Aug. 28, 2007) (unpublished opinion) (holding that debtor's statement

that its books and records did not reveal a debt due and owing to the creditor was not "substantial

evidence" sufficient to rebut the prima facie validity of the claim); *Campbell v. Verizon Wireless*

*S-CA (In re Campbell)*, 336 B.R. 430, 436 (B.A.P. 9th Cir. 2005) (a court will disallow a claim

only if the debtor provides some substance to its objection).

31.    The Objection simply states the ACE Administrative Claims "assert liabilities and

dollar amounts that are not reflected on the [Debtors'] books and records." *See* Objection ¶¶ 12,

15.

32.    As stated by the court in *In re Enron Creditors Recovery Corp.*, 2007 Bankr.

LEXIS 29269, the Debtors' statement that their books and records do not reveal a debt due and

owing is not sufficient to rebut the prima facie validity of the ACE Administrative Claims.

33.    Further, the Debtors do not offer evidence to negate the statements set forth in the

ACE Administrative Claims.

34.    Moreover, the Debtors have acknowledged their Obligations to the ACE

Companies under the Assumed Agreements in the Assumption Motion, acknowledged that their

Obligations were secured by a letter of credit (and cash collateral, at that time) and estimated

13

their liabilities to the ACE Companies at the time of the Assumption Motion as $22.2 million

under a "99% confidence interval," assuming that the Debtors continued to pay their workers'

compensation claims. *See,* Assumption Motion ¶¶ 26, 27, Exhibit C.

35.     Further, in the Stipulation and the 2009 Order, the Debtors stipulated and agreed,

and the Court so ordered, that the ACE Companies held "Allowed Administrative Claims for all

liabilities of the Debtors to the ACE Companies under the Agreements, subject to the Debtors'

and the ACE Companies' respective rights, claims and defenses under the Agreements." *See*

Exhibit A, 2009 Order ¶ 3.

36.     The Debtors should have information available to them to support their current

projections of their liabilities to the ACE Companies and have failed to provide any support for

the Objection.

37.     Accordingly, the Debtors' bald, unsupported assertion is not sufficient to sustain

the Objection.

38.     Therefore, the Objection should be overruled and denied as to the Consolidated

Administrative Claims and the Litigation Related Administrative Claims.

**B.     The ACE Companies Have Established A Right to Payment.**

39.     To the extent the Objection is not overruled or denied for the reasons set forth in

Part A of this Response, the Claim Objection Procedures Order, as made applicable hereto by the

Administrative Claims Objection Procedures Order, provides that in its response to an objection

to its claim and subject to its right to not disclose confidential, proprietary or protected

information, the claimant should establish its *prima facie* right to payment.

40.     Case law generally provides that where a claim "alleges facts sufficient to support

a legal liability to the claimant" it establishes the *prima facie* validity of the claim. *In re*

*Lehning,* No. 05-16245, 2007 Bankr. LEXIS 1462, *9 (Bankr. N.D.N.Y. Apr. 20, 2007) (citing

14

*In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173 (3d Cir. Pa. 1992)); *see also eCast Settlement Corp. v. Tran* (*In re Tran*), 369 B.R. 312, 316 (S.D. Tex. 2007) (explaining that a *prima facie* case is established when the elements of Fed. R. Bankr. P. 3001 are satisfied, so if a claim is based on a writing, the creditor shall either file the writing or provide a statement of the circumstances under which the writing cannot be filed in order to establish its *prima facie* case); *In re Make Meat Corp.*, 1999 U.S. Dist. LEXIS 3974 at *9 (finding that "if a claim against the debtor's estate alleges facts sufficient to support the claim, the claim is *prima facie* valid").

41.     As set forth above and in the ACE Administrative Claims, pursuant to the 2006 Order, the 2007 Order, the 2009 Order and §§ 503(b)(1)(A) and 507(a) of the Bankruptcy Code, the ACE Companies have "Allowed Administrative Claims for all liabilities of the Debtors to the ACE Companies under the Agreements, subject to the Debtors' and the ACE Companies' respective rights, claims and defenses under the Agreements." *See* Exhibit A, 2009 Order ¶ 3.

### 1.     The ACE Administrative Claims Arise Under The Agreements.

#### a.     The Consolidated Administrative Claims

42.     As set forth therein, the Consolidated Administrative Claims assert, *inter alia*, that, as of the date thereof, the Debtors were liable for the following Obligations arising under the Agreements: (a) the amount of $541.36 for deductible reimbursements; and (b) the estimated ultimate amount of $12,359,616 plus additional contingent and unliquidated amounts.

43.     The Consolidated Administrative Claims explain that the amounts set forth therein are (a) based upon, among other things, ultimate developed losses under the Agreements and (b) subject to further and future adjustments and estimation by the ACE Companies in accordance with the Agreements and may include, without limitation, additional amounts that may become due for, among other things, premium, losses, taxes, assessments and surcharges.

15

44.    The Agreements provide, *inter alia,* that the Debtors agree to pay or reimburse the ACE Companies for, *inter alia*, all premiums (including audit premium), paid loss deposit funds, claims administration expense, and "all other amounts the Insured is or may in the future be required to pay or reimburse to the Company in accordance with the terms and conditions of the Policies or this Agreement, including without limitation the Insured's share of Paid Losses and Allocated Loss Adjustment Expense." *See, e.g.,* Multi-Line Deductible Program Agreement effective as of October 1, 2000 by and between Pacific Employers and Delphi Automotive Systems Corporation, Article I[9] ("Exhibit B").

45.    In the Assumption Motion, the Debtors acknowledged their Obligations under the Agreements and provided estimates of their liability under the Assumed Agreements. *See, e.g.,* Assumption Motion ¶¶ 26, 27 and Exhibit C to the Assumption Motion.  As noted above, such estimates included an estimate of $22.2 million if the Debtors were to continue paying their workers' compensation claims. *Id.*

46.    Accordingly, based on the Assumption Motion, in December 2005, the Debtors' books and records reflected (or at least, the Debtors' were aware of), ongoing estimated liability to the ACE Companies under the Assumed Agreements in the amount of $22.2 million[10].

47.    As of August 31, 2009 (the last date when the ACE Companies were provided with information from the Debtors' third party administrator), the ACE Companies estimate that the amount of the Consolidated Administrative Claims is no less than $11.2 million which amount is based upon, among other things, Ultimate Losses (which includes Allocated Loss

---

[9]     This agreement is attached hereto as Exhibit B as it was attached to the Assumption Motion. This agreement was assumed pursuant to the 2006 Order. [Docket No. 1779].

[10]    The Assumption Motion provides estimates as large as $27.2 million. *See* Assumption Motion ¶ 27.

16

Adjustment Expense) less Paid Losses (each capitalized term as defined in the Agreements).[11]

*See* Exhibit B, Article II.

48.    Accordingly, the Debtors' Objection should be overruled and denied as the

Consolidated Administrative Claims have been Allowed by the agreement of the Debtors in the

Stipulation and approved by the Court pursuant to the 2009 Order, and in the Assumption

Motion, the Debtors acknowledged their liabilities to the ACE Companies in an estimated

amount that was far greater than the current estimated liabilities.  It is noted that the Assumption

Motion did not consider estimated claims arising under the Postpetition Agreements issued after

September 30, 2006.

### b.    The Litigation Related Administrative Claims

49.    As set forth therein, the Litigation Related Administrative Claims assert a claim

for any and all claims arising out of the Complaint, MI's Allegation or the bases thereof in the

estimated amount of $67,311,662.50 plus additional contingent and unliquidated amounts[12].

---

[11]    Pursuant to the terms of the Agreements, the ACE Companies recalculate the Debtors' ultimate estimated liabilities, from time to time, based upon, among other things, incurred but not reported losses, actual reported losses, expenses, payments, any opening, closing and reopening of claims, experience in the industry, and claims audits. If, for example, an audit reflects developed losses that are greater than the estimate, then the ultimate estimated liabilities may increase and the Debtors are required, pursuant to the Agreements, to provide additional collateral to the ACE Companies. Accordingly, the ACE Companies reserve and preserve their right to amend this Response and the ACE Administrative Claims to increase the claims asserted therein.

Additionally, the Administrative Claim Objection Procedures Order provides that "[a]ll Administrative Claims shall be subject to the Claims Objection Procedures." *See* Administrative Claim Objection Procedures Order ¶ 3. The Claims Objection Procedures Order specifically references estimation of claims under § 502 of the Bankruptcy Code and provides that to the extent a claim is contingent or fully or partially unliquidated, the claimant should provide the amount that it believes would be allowable upon liquidation or occurrence of the contingency. The ACE Companies have provided such amount in this Response.

The ACE Companies assert that the ultimate developed losses, the estimation of the ACE Administrative Claims and the actuarial analysis thereof are confidential, proprietary or otherwise protected from disclosure. Accordingly, pursuant to the terms of the Administrative Claim Objection Procedures Order, and subject to appropriate confidentiality and disclosure constraints, the ACE Companies will provide the Debtors with information, to the extent necessary, to support the estimated amount of the ACE Administrative Claims.

[12]    The statements set forth in footnote 11 are incorporated herein by reference.

DM3\1343845.5

50.     As a preliminary matter, the ACE Companies aver MI's Allegation is incorrect and baseless and that the ACE Companies are not liable for any amounts related thereto.

51.     Moreover, the ACE Companies aver that the Debtors' Objection to the Litigation Related Administrative Claims is premature, as any determination with respect to such claims is dependent upon the outcome of the Adversary Proceeding, and should be adjourned pending a final determination with respect to the Adversary Proceeding.

52.     However, to the extent the ACE Companies do not prevail in the Adversary Proceeding, the Debtors are liable, under the Agreements, to the ACE Companies for any and all amounts the ACE Companies may be required to pay in relation to or arising out of the Complaint, MI's Allegation or the bases thereof including, but not limited to, any and all claims resulting from a judgment entered in relation to the Complaint or any similar or related litigation.

53.     Specifically, the Debtors agree to pay or reimburse the ACE Companies for "all amounts the Insured is or may be obligated to pay to other parties but which are paid by the Company." *See* Exhibit B, Article I.

54.     Accordingly, to the extent that the ACE Companies are required to pay any of the Debtors' self-insured workers' compensation obligations under the Deductible Policies (as defined in the Complaint), the ACE Companies have a claim against the Debtors therefor.

55.     Therefore, the Litigation Related Administrative Claims arise under the Agreements[13].

---

[13]     Accordingly, after application of the proceeds of the Letter of Credit, the ACE Companies will have Allowed Administrative Claims for the unpaid balance of the ACE Administrative Claims. The ACE Companies reserve and preserve the right to apply the proceeds of the Letter of Credit to either the Consolidated Administrative Claims and/or the Litigation Related Administrative Claims, in their sole discretion, and seek payment, as an Allowed Administrative Claim for the unpaid balance of the Consolidated Administrative Claims and/or the Litigation Related Administrative Claims.

DM3\1343845.5

2.        **The ACE Administrative Claims Are Allowed Administrative Claims.**

56.        The 2009 Order, which was entered to resolve, in part, the ACE Companies'

objection to the Modified Plan, provided that the ACE Companies shall have Allowed

Administrative Expense Claims and approved the Stipulation in which the Debtors agreed to the

allowance. *See* Exhibit A, 2009 Order ¶ 3.

57.        Accordingly, the allowance of the ACE Companies' Administrative Claims has

been agreed to by the Debtors in the Stipulation and approved by the Court in the 2009 Order.

58.        Accordingly, the ACE Administrative Claims are Allowed Administrative Claims

subject only to the Debtors' rights, claims and defenses under the Agreements.

59.        The Objection does not raise a defense under the Agreements to payment of the

Administrative Claims and therefore, the Objection should be overruled and denied.

60.        Moreover, through the ACE Administrative Claims and this Response, the ACE

Companies have established that the ACE Administrative Claims are Allowed Administrative

Claims for which the ACE Companies are entitled to payment.

III.    **Reservation of Rights**

61.        The ACE Companies specifically reserve their right to (a) supplement or amend

this Response or the ACE Administrative Claims or (b) draw on, hold and apply the Letter of

Credit, in their sole discretion.

19

## IV.    Conclusion

WHEREFORE, for the foregoing reasons, the ACE Companies respectfully request that

this Court enter an order overruling and denying the Objection and granting such other relief as is

just and proper.


Dated: April 15, 2010

DUANE MORRIS LLP

By: /s/ *Lawrence J. Kotler*
    Lawrence J. Kotler, Esquire (LK-8177)
    Wendy M. Simkulak, Esquire (WS-8945)
    1540 Broadway, 14th Floor
    New York, NY 10036-4086
    (212) 692-1000
    (212) 692-1020 (facsimile)
    ljkotler@duanemorris.com
    wmsimkulak@duanemorris.com

and

Margery N. Reed, Esquire
Lewis R. Olshin, Esquire
30 South 17th Street
Philadelphia, PA 19103-4196
(215) 979-1000
(215) 979-1020 (facsimile)
mreed@duanemorris.com
olshin@duanemorris.com

Counsel for the ACE Companies

DM3\1343845.5