**Hearing Date and Time:  April 23, 2010 at 10:00 a.m. (prevailing Eastern time)**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
155 North Wacker Drive
Chicago, Illinois 60606
John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler

   - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Kayalyn A. Marafioti

Attorneys for DPH Holdings Corp., et al.,
   Reorganized Debtors

DPH Holdings Corp. Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

DPH Holdings Corp. Legal Information Website:
http://www.dphholdingsdocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| DPH HOLDINGS CORP., et al., | : | Case Number 05-44481 (RDD) |
| | : | (Jointly Administered) |
| Reorganized Debtors. | : | |

REORGANIZED DEBTORS' RESPONSE TO THE STATEMENT OF GM COMPONENTS HOLDING LLC REGARDING CLAIMS OBJECTION BETWEEN REORGANIZED DEBTORS AND THE NEW YORK STATE DEPARTMENT OF ENVIRONMENTAL CONSERVATION

1

DPH Holdings Corp. and certain of its affiliated reorganized debtors in the above-captioned cases (together with DPH Holdings Corp., the "Reorganized Debtors") hereby submit the Reorganized Debtors' Response To The Statement Of GM Components Holdings LLC Regarding Claims Objection Between Reorganized Debtors And The New York State Department Of Environmental Conservation, and respectfully represent as follows:

**Preliminary Statement**

1. This matter is before the Court on the Reorganized Debtors' objection to proofs of claim numbers 13776 and 13881 filed by the New York State Department of Environmental Conservation ("NYDEC") relating to properties located in Rochester, New York and Lockport, New York (the "New York Properties"), which GM Components Holdings LLC ("Components") acquired from Delphi Corporation and certain of its affiliates (the "Debtors") under the Debtors' First Amended Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession, As Modified (the "Modified Plan").

2. NYDEC's claims seek past and future environmental cleanup costs at the New York Properties. The Reorganized Debtors objected to the claims on the grounds that Components is responsible for any future environmental cleanup costs under this Court's order approving the Modified Plan entered on July 30, 2009 (Docket No. 18707) (the "Modification Order").

3. The objection was originally scheduled to be heard at the sufficiency hearing on March 18, 2010, but upon the request of Components, it was adjourned so that Components could be heard on the matter. On April 13, 2010, Components filed a Statement of GM Components Holdings LLC Regarding Claims Objection Between Reorganized Debtors and the New York State Department of Environmental Conservation ("Components' Statement") in

2

which it attempts to limit its liability for environmental contamination at the New York Properties contrary to the clear terms of the Modification Order.

## Argument

4.   Components states that it is setting "the record straight as to what its responsibilities are" at the New York Properties, but in reality, its submission to the Court is rife with incorrect and misleading statements that seek to re-write the Modification Order and allow Components to avoid the environmental commitments that it affirmatively made when it sought this Court's approval to purchase the New York Properties.

**I.   Components Agreed to Investigate and Cleanup the New York Properties In Order to Resolve NYDEC's Objection to the Modified Plan.**

5.   As part of the Modified Plan, Components acquired the New York Properties pursuant to the Master Disposition Agreement Among Delphi Corporation, GM Components Holdings, LLC, General Motors Company, DIP Holdco 3 LLC, Dated As Of July 30, 2009 (the "Master Disposition Agreement").  The Debtors had previously been conducting environmental investigations at these sites, and NYDEC objected to the Modified Plan on the grounds that it did not "confirm the obligation on the part of the proposed buyers of the [New York Properties] to complete the remedial work at those Sites."  Objection of the State of New York To Debtors' Motion for Entry of Order Approving Modifications to Confirmed Amended First Plan of Reorganization and the Master Disposition Agreement Attached Thereto (the "NYDEC Objection") (Docket No. 18276) at ¶ 9.  NYDEC argued that the plan should be amended "to state explicitly that the obligation to clean up the [New York Properties] will be assumed by the buyers of those sites, including GM Components Holding, LLC." Id.

6.   To resolve the NYDEC Objection, the Debtors, Components and NYDEC negotiated language to be included in the Modification Order providing that Components would

3

be responsible for the investigation and remediation of the New York Properties. Specifically, the parties agreed to include the following language in paragraph 63 of the Modification Order:

> <u>Resolution of Modified Plan Objections</u>.
>
> \* \* \*
>
> GM Components, as Buyer of the Delphi Automotive Systems Site located at 1000 Lexington Avenue, Rochester, New York, identified in the New York State Department of Environmental Conservation ("NYSDEC") Environmental Site Remediation Database as Site Code 828064 (the "Rochester Facility"), and the Delphi Thermal Systems Facility located at 200 Upper Mountain, Lockport, New York, identified in the NYSDEC Environmental Site Remediation Database as Site Codes C932138, C932139, C932140, and 932113 and in the NYSDEC Spill Incidents Database as Site Code 0651261 (collectively, the "Lockport Facility"), acknowledges that it shall be responsible for conducting investigation and remediation of the Rochester Facility and the Lockport Facility in accordance with applicable Environmental Laws.

Modification Order ¶ 63(ii)(2).

7. Thus, when Components sought this Court's approval to acquire the New York Properties, it agreed to be responsible for the cleanup of the New York Properties and was not released in any way from this liability. But now that the Modified Plan has been consummated, Components seeks to limit its responsibility at these sites. Such attempts should not be allowed; the Modification Order makes clear that Components is responsible for the investigation and cleanup of the New York Properties.

**II.     Whether Components Legally Assumed the Debtors' Liabilities or Is the Successor to the Debtors Is Irrelevant.**

8. Components argues that, under the terms of the Master Disposition Agreement, it did not legally assume the Debtors' liabilities. Whatever the Master Disposition Agreement may say about Components' liabilities in general, it does not in any way limit Components' environmental responsibilities at the New York Properties because paragraph 63 of the Modification Order, which specifically addresses Components' liability at these sites, trumps

4

any other provisions in the Master Disposition Agreement and the Modification Order itself. The Modification Order states that, "Notwithstanding any other provision of the Master Disposition Agreement or this order, paragraphs . . . 63 of this order shall govern the provisions of the Master Disposition Agreement **in all respects**."  Modification Order ¶ 3 (emphasis added).

9. Thus, the Master Disposition Agreement cannot be used to limit Components' liability at the New York Properties in any manner that is inconsistent with paragraph 63, and the Master Disposition Agreement's statements on the assumption of liabilities and successor liability are irrelevant.  This Court need only determine whether, under paragraph 63, Components has assumed the responsibility for the investigation and cleanup of the New York Properties.  If it has, then NYDEC has no claim against the Debtors for the costs of completing this work because Components is legally bound to do so by this Court's order.

### III. Components Agreed to Investigate and Clean Up the New York Properties Under All Environmental Laws, Not Just the New York Brownfield Program.

10. Components focuses exclusively on its investigation and cleanup obligations under the New York Brownfield Cleanup Program.  However, paragraph 63 says that Components will "investigate and remediate" the New York Properties "in accordance with applicable environmental laws."  Modification Order ¶ 63(ii)(2).  This paragraph contains no reference to the Brownfield Program, and the use of the plural "laws" conclusively demonstrates that Components' obligations are not limited to any single environmental statute.  Accordingly, even if Components were not required to conduct off-site cleanup under the Brownfield Program, this would not in any way limit its liability under other applicable environmental laws, and these laws would require the cleanup of any contamination at or migrating off the New York Properties.

5

11.     For example, as the current owner of the property, Components is liable under the federal Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA").  See  42 U.S.C. §§ 9607(a).  It is well established under CERCLA that liable parties must address, not only the contamination existing at the facility at which the contamination originated, but also any off-site contamination that has migrated from the facility.  See, e.g., City of Tulsa v. Tyson Foods, Inc., 258 F. Supp. 2d 1263 (N.D. Okla. 2003); vacated on other grounds ("The definition of 'facility' under § 9601(9)(B) is broad enough to include both the initial site where a hazardous substance is disposed of and additional sites to which the substances have migrated following the initial disposal."); United States v. Vertac Chem. Corp., 364 F. Supp. 2d 941 (E.D. Ark. 2005).

12.     Likewise, New York's own Superfund law allows the NYDEC to issue an order to Components, as owner of the New York Properties, to conduct any investigation and cleanup that is required.  See N.Y. ENVTL. CONSERV. LAW § 27-1313(3)(a) (Consol. 2010).  Indeed, as the exhibits to Components' Statement demonstrate, both New York Properties were previously undergoing environmental activities under the New York Superfund law.  See Components' Statement, Exhibit D (showing the Lockport Property in the New York Superfund Program Database) and Exhibit F (showing the Rochester Property in the New York Superfund Program Database).  As the owner of these sites now, Components' liability is the same as the Debtors' pre-bankruptcy liability.

13.     Components' emphasis on the Brownfield Program is therefore misplaced, as this single environmental law does not supplant Components' liability for off-site contamination under other laws, such as CERCLA and New York's Superfund law.  This Court, therefore, need not evaluate whether Components is entitled to "volunteer" status under the

6

Brownfield Program.  NYDEC can require Components to conduct any investigation and cleanup that is required at the New York Properties under other environmental laws, and thus its claim against the Debtors for the costs of such activities is contingent and should be expunged.

**IV.     Paragraph 63 of the Modification Order Obligates Components to Conduct Any Environmental Investigations and Activities That May Be Required at the Site.**

14.     In addition to ignoring its liability under other environmental laws, Components tries to narrow its obligations under paragraph 63 of the Modification Order by arguing that this paragraph limits both the areas where remediation must be conducted and the types of activities that will be required.  This argument is both inconsistent with the plain meaning of the Modification Order and contrary to well-established principles of contract interpretation.

**A.     Paragraph 63 Does Not Limit Components' Liability to the Identified Site Codes.**

15.     Components erroneously asserts that its obligation to investigate and clean up the New York Properties is "specifically limited to the areas identified in the NYSDEC Environmental Site Remediation and Spill Incidents Database as Site Codes C932138, C932139, C932140, 932113 and 0651261" and "Site Code 828064," and states that "the Plan Modification Order does not require Components to address anything other than the specific Site Codes identified." Components' Statement ¶¶ 6, 15, 36.  Components concedes that such an interpretation would limit its liability to approximately 15% of the actual acreage it acquired at the Lockport Property (69 acres out of 481).  Id. ¶¶ 16-20.

16.     Paragraph 63 contains no such limitation.  It makes Components "responsible for conducting investigation and remediation of the Rochester Facility and the Lockport Facility in accordance with applicable Environmental Laws." Modification Order ¶

7

63(ii)(2). This language limits Components' remedial and investigatory obligations neither to acreage associated with each identified Site Code nor to specific on-site activities.

17.  The reference to the Site Codes in paragraph 63 does not limit Components' responsibility to just those areas. Rather, the properties are defined by their names (e.g., the Delphi Automotive Systems Site), their addresses (1000 Lexington Avenue, Rochester, New York and 200 Upper Mountain, Lockport, New York,) **and** the Site Codes. Id. Because all three identifiers are included, Components' attempt to limit the definition to the narrowest identifier – the Site Codes – is contrary to the plain language of the Modification Order. Indeed, if the Site Codes identified the sum total of Components' obligations, then the inclusion of the name and address would be meaningless and surplusage. This is contrary to standard principles of contract interpretation which require that words and provisions within a contract not be rendered superfluous.[1] See e.g., Interstate Brands Corp. v. Bakery Drivers, Local Union No. 550, 167 F.3d 764, 768 (2d Cir. 1999) (meaning must be given to all language in the contract "for to hold otherwise would render this language mere surplusage"); Lawyers' Fund for Client Prot. v. Bank Leumi Trust Co., 727 N.E.2d 563, 566-67 (N.Y. 2000) (an interpretation that would render language superfluous is "unsupportable under standard principles of contract interpretation").

18.  Furthermore, had they wanted to, NYDEC, the Debtors and Components could have limited the definitions of the New York Properties to the Site Codes by either eliminating the references to the site names and addresses or by including language specifying that the obligations identified in paragraph 63 of the Modification Order were *limited to* the

---

[1] Principles of contract interpretation govern construction of a confirmed plan of reorganization. See e.g., In re Shenango Group Inc., 501 F.3d 338, 334 (3d Cir. 2007); In re Stratford of Texas, Inc., 635 F.3d 365, 368 (5th Cir. 1981).

8

identified Site Code. By not doing so, the entire definition of the New York Properties must govern, as opposed to the artificially limited definition proffered by Components.

19. In addition to attempting to limit its obligations to specified acreage associated with the Site Codes, Components erroneously argues that the type of remedial and investigatory activities it must undertake are "limited to a discrete on-site impact" and "involve[] discrete activities" associated with the Site Codes. Components' Statement ¶¶ 21-23. Nowhere does the Modification Order, or any other agreement or authority, limit Components' required activities in this manner. Rather, as noted above, Components must conduct any investigation and remediation required under all applicable environmental laws. Additionally, the reference to the Site Codes in paragraph 63 actually refutes Components' attempt to limit its responsibilities to on-site impacts only. This Court must "give effect to the intent of the parties at the time" the order was issued. Israel v. Chabra, 2010 U.S. App. LEXIS 6734, *21 n.2 (2d Cir. April 1, 2010). At the time of the Modification Order, the Site Codes listed in the New York database reflected the activities that the Debtors had taken and were planning to undertake. As both NYDEC and Components have conceded, Delphi applied to the Brownfield Cleanup Program as a "Participant" for the Site Codes associated with the Lockport Property, and these applications were still pending at the time the Modification Order was issued. See Components' Statement ¶ 25, Exhibits A-C; NYDEC Objection ¶ 8. A "Participant" is required to investigate and remediate contamination that may have migrated from the site. N.Y. ENVTL. CONSERV. LAW § 27-1411(2). Further, the Record of Decision for the Lockport Facility, which was issued in March 2005, stated that:

> if future groundwater monitoring indicates that contaminant concentrations are increasing downgradient of the former storage tank (i.e., off-site groundwater contamination becomes a concern that may pose a threat to human health or the environment), or if

9

>   conditions for biodegradation of site contaminants become unfavorable, additional remedial measures will be evaluated and implemented as needed.

Proof of Claim No.13881, Attachment A.

20. Therefore, at the time the Modification Order was issued, the required investigation and remediation at the Lockport Property contemplated the need to address any off-site contamination. The reference to the Site Codes, as established under the Debtors' plan for the investigation and cleanup of the New York Properties, clarifies that Components' current responsibilities are the same as Delphi's responsibilities before issuance of the Modification Order.

21. The Master Disposition Agreement provides further proof of the parties' intent to have Components take full responsibility for the environmental issues at the New York Properties. The Master Disposition Agreement required the Debtors to transfer to Components all "GM Environmental Records" related to the New York Properties to Components. Master Disposition Agreement § 11.4.11. The term GM Environmental Records was defined broadly to include "any and all books, records, notes, reports, letters, memoranda, assessments, testing data, maps, Enviornmental Permits, certificates, applications, approvals, surveys, agency inspection reports, compliance audit records or reports, communications or other written, printed, or electrically or magnetically recorded materials, communications or data, relating to" the release of hazardous substances or other environmental conditions at the New York Properties. Id. § 1.1. Clearly, had the parties contemplated that the Debtors or Reorganized Debtors would retain any responsibilities for environmental investigations or cleanups at the New York Properties, documents related to those obligations would have been retained by the Reorganized Debtors and not transferred to Components.

22. Finally, Components' argument that the reference to the Site Codes limits its obligations to the footprint of the New York Properties is refuted by its own description of the Site Codes. Components asserts that the "none of the 'Site Codes' involves investigation or remediation activities outside of the property limits." Component Statement ¶ 5. Yet, it then provides great detail regarding all of the activities that have been conducted, under the Site Codes, with respect to potential off-site contamination. For example, Component Statement says that groundwater sampling has been conducted with respect to Site Codes C932139, C931138 and C932113 to investigate whether impacted groundwater is migrating from the Lockport Site. Id. ¶ 16-17. It also states that monitoring wells have been installed downgradient (e.g., outside of the area) of Site Code C932140, including along Route 93, to investigate whether groundwater is migrating off-site. Id. ¶ 18. Additionally, Components states that an off-site migration control system has been installed for Site Code 828064. Id. ¶ 22. These examples illustrate that investigation and remediation of off-site impacts is encompassed by the Site Codes themselves. Thus, reference to Site Codes in paragraph 63 does not serve to limit Components' liability to only on-site activities.

**B.     Paragraph 63 Is Not Merely an Acknowledgement of Components' Liability Under Environmental Laws.**

23. Components also asserts that the language in paragraph 63 serves only as an acknowledgement of the liability that Components has under environmental laws independent of the Modification Order. Although paragraph 63 does use the word "acknowledge," Components acknowledged that it "shall be responsible for conducting investigation and remediation" of the New York Properties, not that it would do only the minimum that would be required under environmental laws without the Modification Order. Indeed, the phrase "responsible for conducting investigation and remediation" is very broad and does not limit

11

Components' obligations in any manner. Components' suggestion, therefore, that its obligations are limited is unfounded based on a plain reading of paragraph 63.

24. Moreover, Components' suggestion that paragraph 63 merely serves as acknowledgement of the obligations it would otherwise have under applicable laws is inconsistent with the reason why this language was included in the Modification Order. As noted above, paragraph 63 was added to the Modification Order in order to resolve NYDEC's objection to the Modified Plan. If this language merely restated Components' obligations as they would otherwise exist, then it would do nothing to address NYDEC's concerns; indeed, when viewed in the context of the NYDEC's Objection, paragraph 63 clearly was intended to bind Components to complete the cleanup work that the Debtors had started at the New York Properties. Any other interpretation of this language would fail to meet NYDEC's demand that Components be obligated to assume responsibility for the cleanup of these properties and the NYDEC Objection would have been unresolved.

25. Additionally, Components' interpretation of paragraph 63 as a mere affirmation of its otherwise existing obligations would render that paragraph duplicative and superfluous. The first subsection of paragraph 63(ii) states:

> Nothing in this order or the Master Disposition Agreement releases, nullifies or enjoins the enforcement of any Liability to a governmental unit under Environmental Laws . . . or regulations . . . that the Buyers would be subject to as the owner, lessor or operator of the property after the date of entry of this order.

Modification Order ¶ 63(ii)(1). The next subsection then provides that Components "shall be responsible for conducting investigation and remediation" of the New York Properties. Id. ¶ 63(ii)(2). Thus, if the phrase "conducting investigation and remediation" in paragraph 63(ii)(2) means simply that Components has only the liability it would otherwise have as the owner or operator of the New York Properties then this portion of the paragraph would add nothing to the

12

Modification Order and merely reiterate the previous subsection.  As stated above, under principles of contract interpretation, this Court should reject such a narrow interpretation of paragraph 63(ii)(2).

### V.   There Is No Dispute that Components Is Cleaning Up the Rochester Facility.

26.   Finally, while Components has attempted to limit its liability at the Lockport Site, it has not done so with respect to the Rochester Site.  Nothing in Components' Statement suggests that it will fail to take all actions required by NYDEC, and NYDEC has not alleged any facts that demonstrate that this is likely.  Accordingly, independent of the issues with respect to the Lockport Site, proof of claim number 13776 should be expunged to the extent it seeks future costs.

### Conclusion

27.   Although Components has tried to argue complicated issues involving the New York Brownfield Program, the only issue before the Court now is whether NYDEC has a valid claim against the Debtors for the costs to investigate and remediate the New York Properties.  Because the Modification Order unequivocally requires that Components perform this work, NYDEC's claims should be disallowed.

WHEREFORE the Reorganized Debtors respectfully request this Court enter an order (a) sustaining the Reorganized Debtors' objection with respect to NYDEC's claims, (b) disallowing and expunging both of NYDEC's claims to the extent they seek recovery of future remediation costs, and (c) granting such further and other relief this Court deems just and proper.

Dated: New York, New York
April 19, 2010

        SKADDEN, ARPS, SLATE, MEAGHER
          & FLOM LLP

By:  /s/ John Wm. Butler, Jr.
    John Wm. Butler, Jr.
    John K. Lyons
    Ron E. Meisler
155 North Wacker Drive
Chicago, Illinois 60606

- and -

By:  /s/ Kayalyn A. Marafioti
    Kayalyn A. Marafioti
Four Times Square
New York, New York 10036

Attorneys for DPH Holdings Corp., et al.,
   Reorganized Debtors