UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

_____

|  |  |  |
|---|---|---|
| In re | : | Chapter 11 |
|  | : |  |
|  | : | Case No. 05-44481 (RDD) |
| DELPHI CORPORATION, *et al.*, | : |  |
|  | : | Jointly Administered |
| Debtors. | : |  |
|  | : | **Hearing Date:  May 20, 2010** |
|  | : | **Objection Deadline:  May 13, 2010** |

_____


**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF METHODE ELECTRONICS, INC. FOR AN ORDER (I) PERMITTING METHODE TO CONTINUE POST-PETITION LITIGATION WITH THE REORGANIZED DEBTORS IN MICHIGAN AND (II) OVERRULING THE REORGANIZED DEBTORS' TIMELINESS OBJECTION TO METHODE'S ADMINISTRATIVE EXPENSE CLAIMS**


WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, New York  10019
Telephone:  (212) 403-1000
Facsimile:  (212) 403-2000

LOCKE LORD BISSELL & LIDDELL LLP
111 South Wacker Drive
Chicago, Illinois  60606
Telephone:  (312) 443-0654
Facsimile:  (312) 896-6654


Dated:  April 20, 2010

*Attorneys for Methode Electronics, Inc.*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ............................................................................. 1

BACKGROUND ................................................................................................. 3

   A.   Delphi and Methode Enter Into a Post-Confirmation Supply Agreement. ..................... 3

   B.   Delphi Sues Methode in Michigan for Breach of the Post-Confirmation Supply Agreement. ................................................................................................. 4

   C.   Methode Sues Delphi for Patent Infringement and Delphi Successfully Moves to Transfer the Case to Michigan Federal Court. .......................................... 6

   D.   Delphi Emerges from Bankruptcy and Continues to Litigate in the Michigan Courts. ..................................................................................................... 7

   E.   Reorganized Delphi Moves to Stay the Post-Confirmation Contract Action. ............... 9

   F.   Delphi Objects to Methode's Administrative Expense Claims in This Court. ............. 10

ARGUMENT ................................................................................................... 11

POINT I   LITIGATION OF METHODE'S CLAIMS SHOULD BE PERMITTED TO CONTINUE IN THE MICHIGAN COURTS. .......................................... 11

   A.   The Plan Modification Order Does Not Enjoin Litigation of Methode's Claims in the Michigan Courts. ........................................................................... 11

       1.   The Plan Injunction Permits Allowance of Claims in Non-Bankruptcy Forums to Which the Parties Agree. ........................................... 12

       2.   The Forum Selection Clause Evidences Delphi's Consent to Having Methode's Claims Determined by the Michigan Courts. ................... 13

       3.   Delphi's Conduct Evidences Its Consent to Having Methode's Claims Determined by the Michigan Courts. ........................................... 14

   B.   If the Plan Injunction Applies to Methode's Claims, Methode Is Entitled to Relief from That Injunction. ...................................................................... 15

       1.   Litigation in New York Would Unnecessarily Waste Judicial Resources. ................................................................................. 16

       2.   Requiring Methode to Litigate in New York Would Be Inequitable. ............. 17

i

C.      This Court Should Exercise Its Discretion to Abstain from Determining
        Methode's Administrative Expense Claims. ................................................... 18

POINT II  DELPHI'S OBJECTION TO METHODE'S CLAIMS AS UNTIMELY
          SHOULD BE OVERRULED. .................................................................... 20

A.      Methode's Administrative Expense Claims Were Not Tardily Filed. ........................ 21

B.      In the Alternative, Methode Should Be Permitted "For Cause" to File a Tardy
        Proof of Claim. ....................................................................................... 23

        1.      Reorganized Delphi Would Not Be Prejudiced by Methode's Filing. ........... 24

        2.      Methode Has Acted Reasonably and in Good Faith. ...................................... 26

CONCLUSION ..................................................................................................... 28

## TABLE OF AUTHORITIES

**Cases**                                                                                                            <u>Page</u>

*Block* v. *Citizens Bank (In re Moss)*,
   249 B.R. 200 (Bankr. W.D. Mo. 2000) ................................................................ 14

*Carlton Co.* v. *Jenkins (In re Jenkins)*,
   2004 WL 768574 (Bankr. S.D. Ga. Mar. 30, 2004) .............................................. 18

*Envirolite Enters., Inc.* v. *Glastechnische Industrie Peter Lisec Gesellschaft M.B.H.*,
   53 B.R. 1007 (S.D.N.Y. 1985), *aff'd*, 788 F.2d 5 (2d Cir. 1986) ............................ 14

*First Jersey Nat'l Bank* v. *Brown (In re Brown)*,
   951 F.2d 564 (3d Cir. 1991) ................................................................................ 16

*Good* v. *Blankenship (In re Heartland Steel, Inc.)*,
   2003 WL 23100035 (S.D. Ind. Dec. 16, 2003) .................................... 23, 24, 24 n.5

*Greyhound Lines, Inc.* v. *Rogers (In re Eagle Bus Mfg., Inc.)*,
   62 F.3d 730 (5th Cir. 1995) ............................................................................ 25, 27

*Grupke* v. *Linda Lori Sportswear, Inc.*,
   174 F.R.D. 15 (E.D.N.Y. 1997) ........................................................................... 14

*Huskey* v. *Allen County Farmers Servs., Inc.*,
   2006 WL 2570347 (W.D. Ky. Sep. 5, 2006) .................................................... 17, 28

*In re Cobb*,
   88 B.R. 119 (Bankr. W.D. Tex. 1988) ................................................................. 17

*In re Enron Creditors Recovery Corp.*,
   370 B.R. 90 (Bankr. S.D.N.Y. 2007) .................................................................... 22

*In re Fucilo*,
   2002 WL 1008935 (Bankr. S.D.N.Y. Jan. 24, 2002) ............................................. 16

*In re L & S Indus., Inc.*,
   989 F.2d 929 (7th Cir. 1993) ............................................................................... 19

*In re Modular Eng'g Corp.*,
   41 B.R. 52 (Bankr. S.D. Tex. 1984) .................................................................... 23

*In re Northwest Airlines Corp.*,
   2008 WL 2945998 (Bankr. S.D.N.Y. July 25, 2008) ............................................. 16

*In re Portrait Corp. of Am., Inc.*,
   406 B.R. 637 (Bankr. S.D.N.Y. 2009) .............................................................. 19, 20

*Int'l Bus. Machs.* v. *Fernstrom Storage & Van Co.*
   *(Matter of Fernstrom Storage & Van Co.),*
   938 F.2d 731 (7th Cir. 1991) ................................................................ 18

*Kerusa Co. LLC* v. *W10Z/515 Real Estate Ltd. P'ship,*
   2004 WL 1048239 (S.D.N.Y. May 7, 2004) ........................................ 19

*M/S Bremen* v. *Zapata Off-Shore Co.,*
   407 U.S. 1 (1972)................................................................................ 14

*Manus Corp.* v. *NRG Energy, Inc. (In re O'Brien Envtl. Energy, Inc.),*
   188 F.3d 116 (3d Cir. 1999) ............................................................... 25

*Midland Cogeneration Venture Ltd. P'Ship* v. *Enron Corp. (In re Enron Corp.),*
   419 F.3d 115 (2d Cir. 2005) ......................................................... 25, 27

*Murray Indus., Inc.* v. *Aristech Chem. Corp. (In re Murray Indus., Inc.),*
   121 B.R. 635 (Bankr. M.D. Fla. 1990) ............................................... 16

*Ontario Die Co., Ltd.* v. *Bruno Mach. Corp. (In re Bruno Mach. Corp.),*
   2007 WL 2071747 (N.D.N.Y. July 12, 2007) .................................... 26

*Pioneer Inv. Servs. Co.* v. *Brunswick Assocs. Ltd. P'ship,*
   507 U.S. 380 (1993)............................................................................ 24

*Redfield* v. *Cont'l Cas. Corp. (In re Intercont'l Sec. Corp.),*
   818 F.2d 596 (7th Cir. 1987) .........................................................23-24

*Rodriguez* v. *Gen. Nutrition Cos. (In re Ephedra Prods. Liab. Litig.),*
   2010 WL 882988 (S.D.N.Y. Mar. 8, 2010) ....................................... 19

*Sambo's Rests., Inc.* v. *Wheeler (In re Sambo's Rests., Inc.),*
   754 F.2d 811 (9th Cir. 1985) .........................................................22-23

*Stabler* v. *Beyers (In re Stabler),*
   418 B.R. 764 (8th Cir. B.A.P. 2009) .................................................. 20

*The Chamberlain Group, Inc.* v. *Lear Corp. (In re Lear Corp.),*
   2009 WL 3191369 (Bankr. S.D.N.Y. Sep. 24, 2009)..................... 19, 20

*The Singer Co. B.V.* v. *Groz-Beckert KG (In re The Singer Co., N.V.),*
   2002 WL 243779 (S.D.N.Y. Feb. 20, 2002)....................................... 20

*Transpacific Tire & Wheel, Inc.* v. *Orteck Int'l, Inc.,*
   2010 WL 1375292 (D. Md. Mar. 30, 2010) ...................................27-28

*Unified Data Sys.* v. *Almarc Corp. (In re Almarc Corp.),*
   94 B.R. 361 (Bankr. E.D. Pa. 1988) ................................................... 14

**Statutes and Rules**

11 U.S.C. § 503(a) ........................................................................................................... 23

28 U.S.C. § 157 ............................................................................................................... 20

28 U.S.C. § 959(a) ........................................................................................................... 11

28 U.S.C. § 1334 ......................................................................................................... 11, 18

Fed. R. Bankr. P. 9006(b)(1) ......................................................................................... 24 n.5

**Other Authorities**

9 Collier on Bankruptcy ¶ 3001.05[3] (15th ed. 2009) .................................................... 23

S.Rep. No. 989, 95th Cong., 2d Sess. 50 ........................................................................ 16

Methode Electronics, Inc. ("Methode"), respectfully submits this memorandum of law in support of its *Motion for an Order (I) Permitting Methode to Continue Post-Petition Litigation with the Reorganized Debtors in Michigan and (II) Overruling the Reorganized Debtors' Timeliness Objection to Methode's Administrative Expense Claims.*[1]

## <u>PRELIMINARY STATEMENT</u>

1.      Methode was a supplier to Delphi of airbag safety technology in the ordinary course of Delphi's post-petition business.  The two companies had a falling-out in October of 2008, when Delphi sued Methode in Michigan state court for an alleged breach of a post-petition supply contract.  Methode asserted a counterclaim against Delphi in Michigan based on the same contract, and subsequently brought a patent action against Delphi in Illinois, which Delphi succeeded in transferring to federal court in Michigan.  In each case, Delphi argued that a contractual forum selection clause *precluded* litigation in any forum other than Michigan.  In each case, Delphi actively litigated Methode's claims in Michigan from the time they were filed until well after the Effective Date of its chapter 11 plan.

2.      After agreeing in every conceivable way that Methode's contract and patent claims would be litigated in Michigan, Delphi is now trying to enlist this Court in barring Methode from proceeding with those claims.  Invoking language from this Court's Plan Modification Order of July 30, 2009, Delphi has procured an order from the Michigan state court stating that, absent further direction from this Court, Methode may not continue to pursue its

---

[1]     This memorandum also constitutes Methode's response to the Reorganized Debtors' Forty-Sixth Omnibus Claims Objection (the "Objection") [D.I. 19711], the response date for which was adjourned by consent to April 20, 2010.  As to the grounds other than time-bar set forth in the Objection: (a) Methode is willing for its claim number 19951 to be expunged as duplicative, on the condition that it will receive payment in full of its claim number 19950 to the extent that claim is ultimately allowed; and (b) as explained herein, arguments as to the merits of the Methode claims can and should be resolved in the Michigan courts, and Methode thus submits no response to those objections at this time, while reserving all rights to do so if this Court determines that litigation of the merits of the administrative expenses should proceed here.

counterclaim for breach of contract.  Moreover, Delphi asserts in its Forty-Sixth Omnibus

Claims Objection that Methode's contract and patent claims (to the extent the patent claim

"asserts claims arising prior to June 1, 2009") should be *expunged* because Methode filed its

claim form after July 15, 2009.  In effect, therefore, Delphi is not only asking for a belated

transfer to this Court of the claims brought by Methode in Michigan, but also for a determination

that Methode has actually *forfeited* its breach of contract claim by pursuing that claim in

Michigan — the forum chosen by Delphi — rather than in this Court.

   3. By this motion, Methode seeks an order clarifying that Methode's contract

and patent claims should proceed in the Michigan courts chosen by Delphi.  As set forth below,

the claim injunction in the Plan Modification Order is subject to carve-outs as "specifically

provided in the Modified Plan," and Delphi's Modified Plan specifically provides that Delphi

may agree to have an administrative claim adjudicated by a court *other than* this Court.  Here,

Delphi has plainly agreed, both by post-petition contract and by its conduct, that the Michigan

courts should adjudicate Methode's contract and patent claims; indeed, to this day, Delphi has

never moved for a stay of Methode's patent action.  Moreover, even if the plan injunction were

to apply to Methode's claims, there is eminent "cause" to permit Methode to continue pursuing

those claims in Michigan:  Delphi itself chose Michigan as the forum in which to litigate its post-

confirmation business disputes with Methode, and it should not be permitted to use its

bankruptcy to shop for a new forum after months of intense litigation in Michigan.

   4. As well, in order that the Michigan litigation may proceed unimpeded,

Methode respectfully requests that this Court overrule Delphi's timeliness objection to

Methode's administrative claims.  For the same reason that Methode should be permitted to

pursue its breach of contract claim in Michigan — namely, by the terms of the Modified Plan

and Delphi's unequivocal agreement to the Michigan courts' determination of that claim — there

was no requirement for Methode to file an administrative expense claim in this Court.  In any

event, even if Methode were required to file an administrative claim with this Court, the claim it

filed on November 5, 2009 should be deemed timely or, to the extent necessary, permitted as a

"tardy" filing for cause.  Any other result would be patently inequitable:  Delphi would have

gamed the system by using its bankruptcy to escape liability for breach of a post-confirmation

contract on which Delphi itself chose to sue in Michigan.

### BACKGROUND[2]

**A.      Delphi and Methode Enter Into a Post-Confirmation
         Supply Agreement.**

        5.      On October 8 and October 14, 2005, Delphi Corporation and certain of its

affiliates (the "Debtors"), including DPH-DAS LLC ("Delphi" or "Reorganized Delphi"),[3]

commenced voluntary cases in this Court under chapter 11 of the Bankruptcy Code.  On

December 10, 2007, the Debtors submitted their First Amended Joint Plan of Reorganization (the

"Plan") [D.I. 11386].  On January 25, 2008, this Court entered an order approving the Plan with

certain modifications (the "Confirmation Order") [D.I. 12359].

        6.      Beginning in 2001, Methode was Delphi's exclusive supplier of certain

weight sensing pads.  The pads are part of Delphi's vehicle restraint system, and are used to

detect if a certain weight threshold is met on a vehicle seat for purposes of activating or

deactivating the airbag.  Methode asserts that the pads were invented by Methode's predecessor

and are protected by patents belonging to Methode.  Walsh Decl. ¶ 8(a).

---

[2]    Facts herein are set forth in the Declaration of Ann Marie Walsh, Esq. (the "Walsh Decl."), submitted with this memorandum of law, to which documents cited herein are exhibits.

[3]    Prior to October 6, 2009, the effective date of the Debtors' plan of reorganization, DPH-DAS LLC was known as Delphi Automotive Systems LLC.  That name now belongs to the entity to which DPH-DAS LLC sold substantially all of its assets in connection with the plan.

7.      The parties' supply agreement outstanding at the time of the bankruptcy and the Confirmation Order was set to expire on June 30, 2008.  In the months leading up to that date, Methode and Delphi began negotiating the terms of a new contract.  When Methode indicated that it needed to raise its prices to account for an increase in manufacturing costs and significant declines in Delphi's projected volume requirements, Delphi threatened to "resource" the parts — *i.e.*, obtain them from another supplier — a common negotiating tactic.  On June 30, 2008, the parties had yet to reach an agreement on a new contract and, to ensure an uninterrupted supply of parts, Methode agreed to supply parts to Delphi for an additional 90 days.  Walsh Decl. ¶ 8(b).

8.      On July 8, 2008, for the first time in its seven-year relationship with Methode, Delphi requested copies of tooling drawings for the weight sensing pads.  Methode agreed to provide the drawings only if Delphi would give adequate assurances that the drawings would not be used to infringe Methode's patents.  Delphi did not respond, and Methode did not supply the drawings.  Walsh Decl. ¶ 8(c).

9.      In late August 2008, as negotiations over a new supply agreement continued, Methode provided two pricing options at Delphi's request:  one based on a one-year supply arrangement, and another with lower pricing based on a three-year supply arrangement.  Delphi chose the lower-priced option, and the parties executed a new three-year supply agreement on September 4, 2008 (the "Post-Confirmation Supply Agreement").  Walsh Decl. ¶ 8(d).

**B.      Delphi Sues Methode in Michigan for Breach of the Post-Confirmation Supply Agreement.**

10.      Methode believed that, with the execution of the new agreement, Delphi's demand for tooling drawings and the re-sourcing issue had been resolved.  On October 23, 2008,

however, Delphi filed suit in the Circuit Court for the County of Oakland, State of Michigan,

claiming a right to obtain the tooling drawings pursuant to the Post-Confirmation Supply

Agreement (the "Contract Action").  Walsh Decl. ¶ 8(e).  Delphi based its choice of venue on the

forum selection clause (the "Forum Selection Clause") contained in Delphi's General Terms and

Conditions, which Delphi has acknowledged is part of the Post-Confirmation Supply Agreement.

*See, e.g.*, Walsh Decl. Ex. E ¶ 46.  The Forum Selection Clause, which Delphi invoked in its

complaint, states as follows:

> (a) this Contract is to be construed according to the laws of the
> United States of America and the State of Michigan . . . and
> (b) each party hereby agrees that the forum and venue for any legal
> or equitable action or proceeding arising out of, or in connection
> with, this Contract will lie in the appropriate federal or state courts
> in the State of Michigan and specifically waives any and all
> objections to such jurisdiction and venue.

Walsh Decl. Ex. B ¶ 26; *see also* Walsh Decl. Ex. A ¶ 16.

11.    Delphi subsequently moved for a preliminary injunction granting it

possession of the tooling drawings pending a final judgment.  The Michigan state court denied

Delphi's motion.  *See* Walsh Decl. Ex. C.

12.    On January 9, 2009, Methode filed a counterclaim in Michigan state court,

prompted by allegations in Delphi's complaint indicating that Delphi was contemplating a

potential termination of the Post-Confirmation Supply Agreement.  The counterclaim alleged

that Delphi entered into the agreement in bad faith and, in particular, that "Delphi concealed its

intent to in-source or re-source Methode shortly after executing the agreement in order to induce

Methode to enter the agreement, and Delphi concealed its intent to sue Methode to obtain the

Methode tooling drawings in order to effect the re-sourcing."  Walsh Decl. Ex. D ¶ 44.  Delphi

never sought removal of Methode's counterclaims to federal court.  Walsh Decl. ¶ 35.

13.      The parties then engaged in extensive proceedings on the Delphi claim

and Methode counterclaim into the spring and summer of 2009, including mutual written

discovery requests and responses and document production pursuant to a protective order

procured by Delphi.  *See* Walsh Decl. ¶¶ 11-12 & Ex. F.  In response to Delphi's broad

discovery requests, Methode undertook to collect and review millions of documents and retained

both an electronic discovery consultant and 46 contract attorneys, thereby incurring significant

costs.  Methode has produced more than 100,000 pages of documents to date.  Walsh Decl. ¶ 11.

14.      Delphi and Methode each filed jury demands in the Contract Action.  *See*

Walsh Decl. ¶ 13 & Ex. G.  The parties requested various trial dates and, eventually, a trial date

was set for April 19, 2010.  *See* Walsh Decl. ¶ 14 & Ex. H.

15.      In August 2009, Delphi acted on its termination threat, sending Methode a

notice of termination of the Post-Confirmation Supply Agreement that invoked its "termination

for convenience" clause.  Methode then moved for a preliminary injunction and temporary

restraining order barring the attempted termination.  Methode asserted that Delphi was barred

from taking advantage of any such clause inasmuch as Delphi entered into the contract in bad

faith by selecting the lower-priced three-year pricing option without intending to perform for the

full three-year period.  Methode's motion was denied.  *See* Walsh Decl. ¶¶ 15-17 & Ex J.

**C.      Methode Sues Delphi for Patent Infringement and
Delphi Successfully Moves to Transfer the Case to
Michigan Federal Court.**

16.      On April 9, 2009, Methode sued Delphi and Marian, Inc. ("Marian") in the

District Court for the Northern District of Illinois for patent infringement (the "Patent Action").

The complaint — which demanded a jury trial — alleged that, as part of the same effort to

re-source the pads underlying the dispute over the tooling drawings, Delphi was making, using,

and/or selling infringing weight sensing pads in the United States and Marian was assisting

Delphi in that effort.  *See* Walsh Decl. Ex. K.

17.    Delphi countersued, disputing the enforceability of Methode's patent.  *See*

Walsh Decl. Ex. L.  Delphi then moved to transfer the case to the District Court for the Eastern

District of Michigan, arguing that Michigan was the appropriate forum for the dispute in light of

the parties' connection to Michigan, the location of relevant documents and witnesses, and the

fact that Methode's breach of contract claim — which Delphi described as "the crux of

Methode's patent infringement claims" — was pending in the Michigan state court.  Walsh Decl.

Ex. M at 10, 14.  Delphi also relied on the Forum Selection Clause, arguing that it was a

"significant factor" weighing in favor of transfer.  *Id.* at 6-10.  "Put simply," Delphi asserted,

"***this is a Michigan dispute***."  *Id.* at 11 (emphasis added).

18.    The Illinois federal court granted Delphi's motion to transfer, relying

principally on the Forum Selection Clause, and the case was transferred on August 5, 2009.  *See*

Walsh Decl. Exs. N, O.

**D.    Delphi Emerges from Bankruptcy and Continues to
       Litigate in the Michigan Courts.**

19.    As litigation of the patent and contract disputes continued in Michigan,

this Court issued an order on June 16, 2009 approving the Debtors' motion to modify and

re-solicit votes for the already-confirmed Plan (the "Modification Procedures Order")

[D.I. 17032].  This order also established July 15, 2009 (the "First Administrative Claims Bar

Date") as the deadline for filing administrative expense requests "for the period from the

commencement of these cases through June 1, 2009."  Modification Procedures Order ¶ 38.

20.    On July 30, 2009, the Court issued an order (the "Plan Modification

Order") [D.I. 18707] approving the Plan as modified (the "Modified Plan"), and establishing

30 days after the Debtors' emergence from bankruptcy as the deadline for filing administrative

expense requests for the period after June 1, 2009 (the "Second Administrative Claims Bar

Date"). Plan Modification Order ¶ 47. The Modified Plan provided for the "full satisfaction" of

allowed administrative expense requests. Modified Plan § 2.1.

      21.     On October 6, 2009 (the "Effective Date"), the Debtors consummated the

Modified Plan, pursuant to which Delphi sold substantially all of its assets to a newly formed

entity named Delphi Automotive Systems LLC ("New Delphi"), and the Plan became effective.

      22.     After the Effective Date, Reorganized Delphi continued to litigate with

Methode in Michigan. For example, on October 5, 2009, Delphi brought a motion for a

protective order in the Patent Action. Reorganized Delphi then filed a brief on October 19, 2009

in response to a motion for a protective order filed by Methode, and filed further briefing on

December 21, 2009 relating to both parties' motions for protective orders. *See* Walsh Decl. ¶ 26

& Ex. P. In addition, on October 30, 2009, New Delphi sued Methode in Michigan federal court

for, *inter alia*, declarations that one of Methode's patents is invalid or unenforceable. *See* Walsh

Decl. Ex. Q. It then stipulated to the consolidation of the pending action previously transferred

from Illinois, and to a scheduling order contemplating litigation well into 2011. *See* Walsh Decl.

Ex. R. Methode answered New Delphi's complaint, demanding a jury trial, and asserting

counterclaims against New Delphi for patent infringement. *See* Walsh Decl. Ex. S.

      23.     Reorganized Delphi's participation in the Contract Action continued as

well. Reorganized Delphi made substantial document productions after the Effective Date.

Walsh Decl. ¶ 31. Reorganized Delphi also filed a motion to compel on October 20, 2009.

Walsh Decl. ¶ 32 & Ex. T. On October 28, 2009, Reorganized Delphi filed a Joint Motion to

Extend the Scheduling Order, which the Michigan state court granted on November 19, 2009.

By that order, at the request of Reorganized Delphi and Methode, the trial was rescheduled for

July 19, 2010.  *See* Walsh Decl. Ex. U.  On November 25, 2009 Reorganized Delphi filed a brief

objecting to Methode's request for leave to petition an Ohio court to issue a subpoena for a

deposition.  And on December 7, 2009, Reorganized Delphi filed another brief responding to a

motion to compel brought by Methode.  *See* Walsh Decl. ¶ 34 & Ex. T.

**E.    Reorganized Delphi Moves to Stay the
        Post-Confirmation Contract Action.**

24.    For (a) more than a year after it commenced contract litigation against

Methode in Michigan, (b) many months after the bar dates for filing administrative claims and

(c) two months after its Modified Plan became effective, Delphi did not assert that the Michigan

state court was an inappropriate forum for resolution of its claims or Methode's counterclaim, or

assert that the claims were barred as untimely.  Indeed, in its answer to Methode's counterclaim

in the contract action, Delphi admitted that the Michigan state court "has subject matter

jurisdiction over this action" and "*is the proper venue for the adjudication of this controversy*."

Walsh Decl. Ex. E ¶ 3 (emphasis added).  Yet, on December 4, 2009 — two months after the

Effective Date — Delphi filed a motion to stay the Contract Action "and effectively transfer the

case" to this Court, arguing that Methode's claims "should be resolved by the Bankruptcy Court

using the Claims Objection Procedure."  Walsh Decl. Ex. V at 1, 11.

25.    The supposed basis for Delphi's extraordinary about-face was a paragraph

in this Court's July 30, 2009 Plan Modification Order (the "Plan Injunction") stating as follows:

> Except as otherwise specifically provided in the Modified Plan . . .
> the Debtors and all Persons shall be precluded and permanently
> enjoined on and after the Effective Date from . . . commencing or
> continuing in any manner any Claim, action, employment of
> process, or other proceeding of any kind with respect to any Claim,
> Interest, Cause of Action, or any other right or Claim against the
> Reorganized Debtors, which they possessed or may possess prior
> to the Effective Date.

Plan Modification Order ¶ 22.

26.    The Michigan state court recognized that this language "does not address [Methode's counterclaim], much less explain how its continuation would defeat or impair the [Michigan state court's] jurisdiction with respect to the Delphi petition."  Walsh Decl. Ex. X at 3. Affording respect to this Court, however, the Michigan state court nevertheless stated that it did "not see how the Bankruptcy Court's injunction could be construed as anything but an order enjoining proceedings in other courts, including this one."  *Id.*  It therefore felt compelled to "honor the order, at least until it is modified by the Bankruptcy Court," and the Contract Action was stayed.  *Id.*

27.    Notably, however, Delphi has never sought to call a halt to prosecution of the Patent Action.  To the contrary, continued litigation by all parties to the Patent Action, including Reorganized Delphi, continues in Michigan federal court to this day.  Walsh Decl. ¶ 30 & Ex. P.

**F.    Delphi Objects to Methode's Administrative Expense Claims in This Court.**

28.    On November 5, 2009, out of an abundance of caution, Methode filed in this Court an administrative expense "claim" and reservation of rights relating to its patent and contract claims against Delphi.  As Methode's submission made clear, its filing was "protective in nature as such litigation is proceeding in non-bankruptcy jurisdictions and venues selected by [the] Debtors."  Walsh Decl. Ex. Z at 1.

29.    In the Objection, Reorganized Delphi has now taken issue with Methode's administrative expense claims in this Court.  The Objection denies liability on the merits and, with respect to Methode's contract claim and its patent claim to the extent it asserts claims that

arose before June 1, 2009, on the basis that Methode filed its claims in this Court after July 15, 2009.  *See* Objection ¶¶ 19-26.

## ARGUMENT

### POINT I

### LITIGATION OF METHODE'S CLAIMS SHOULD
### BE PERMITTED TO CONTINUE IN THE MICHIGAN COURTS.

30.     Urging that the Plan Injunction deprives the Michigan state court of its authority to resolve Methode's contract claim, Reorganized Delphi procured an order from that court staying proceedings "at least until [the Plan Modification Order] is modified by the Bankruptcy Court."  Walsh Decl. Ex. X at 3.  And although Reorganized Delphi has not obtained any such stay in the Michigan federal court — indeed, it served patent contentions as recently as this month — its Objection appears to ask that this Court take jurisdiction of the Patent Action as well.

31.     Delphi's attempt to initiate proceedings in a new forum after many months of post-confirmation litigation in Michigan should be rejected.  The Michigan courts, which *Delphi* chose to resolve its post-petition business disputes with Methode, remain the lawful and appropriate venues to determine Methode's claims.

**A.      The Plan Modification Order Does Not Enjoin
        Litigation of Methode's Claims in the Michigan Courts.**

32.     Pursuant to 28 U.S.C. § 1334(b), a bankruptcy court has "original but not exclusive jurisdiction" over civil proceedings arising in or related to a bankruptcy case. 28 U.S.C. § 1334(b).  Moreover, 28 U.S.C. § 959(a) provides that "debtors in possession[] may be sued, without leave of the court appointing them, with respect to any of their acts or transactions in carrying on business connected with [estate] property."  28 U.S.C. § 959(a).

33.     In its Objection, Reorganized Delphi disregards the codified common

sense that post-petition ordinary course business disputes with a debtor in possession need not be

litigated in this Court.  Its position, however, is based on a misreading of the Plan Injunction in

the Plan Modification Order, which provides that, "*[e]xcept as otherwise specifically provided in*

*the Modified Plan* . . . all Persons shall be precluded and permanently enjoined on and after the

Effective Date" from prosecuting claims against Delphi.  Plan Modification Order ¶ 22

(emphasis added).  Accordingly, the Plan Injunction is expressly subject to exceptions contained

in the Modified Plan — exceptions that, as explained below, explicitly permit Methode to pursue

its claims in Michigan.[4]

### 1.     The Plan Injunction Permits Allowance of Claims in Non-Bankruptcy Forums to Which the Parties Agree.

34.     The Modified Plan defines a "Claim" to mean any "right to payment"

"against one of the Debtors," and an "Administrative Claim" to mean any "Claim . . . for

payment of an administrative expense of a kind specified in section 503(b) of the Bankruptcy

Code."  Modified Plan §§ 1.4, 1.29.  Reorganized Delphi does not dispute that Methode's post-

petition contract and patent claims, to the extent they are valid, are Administrative Claims.

35.     Section 1.9(a) of the Modified Plan defines an "Allowed Claim" to be "a

Claim  . . . that has been allowed by a Final Order of the Bankruptcy Court *(or such other court*

*or forum as the Reorganized Debtors and the holder of such Claim agree may adjudicate such*

*Claim and objections thereto)*."  Modified Plan § 1.9(a) (emphasis added).  Section 9.6(c) of the

Modified Plan further provides that a claim will be an "Allowed Claim" if it is "determined and

---

[4]     Other paragraphs in the Plan Modification Order also make clear that the Modified Plan will govern how
administrative expense claims will be determined.  Paragraph 47 provides that requests for payment of
administrative expenses "*other than as set forth in the Modified Plan*" shall be filed with the Claims Agent.  Plan
Modification Order ¶ 47 (emphasis added).  Paragraph 50 similarly states that "any Claim that is not an Allowed
Claim *shall be determined, resolved, or adjudicated in accordance with the terms of the Modified Plan*."  *Id.* ¶ 50
(emphasis added).

liquidated pursuant to (i) the ADR procedures, (ii) an order of the Bankruptcy Court, **or (iii)**

**applicable non-bankruptcy law**." Modified Plan § 9.6(c) (emphasis added).

36.    Thus, contrary to the assertion of Reorganized Delphi, the Plan Injunction

does *not* require Methode's claims to be "resolved by the Bankruptcy Court using the Claims

Objection Procedure." Walsh Decl. Ex. V at 11. Rather, the Modified Plan permits claims to be

"determined and liquidated," and hence "allowed," by a means *other* than "an order of the

Bankruptcy Court" and in some "other court or forum" to which the parties agree.

37.    There can be no doubt that Delphi has agreed to the adjudication of

Methode's claims in some "other court or forum": Not only did Delphi agree in the Forum

Selection Clause to litigate the parties' disputes in Michigan, but it also reaffirmed that choice

repeatedly through its conduct — on which Methode has relied — over more than a year.

**2.    The Forum Selection Clause Evidences Delphi's
Consent to Having Methode's Claims
Determined by the Michigan Courts.**

38.    The Forum Selection Clause in the Post-Confirmation Supply Agreement,

which Delphi itself has repeatedly invoked, provides that Delphi "*agrees* that the forum and

venue for any legal or equitable action" arising out of the Post-Confirmation Supply Agreement

"will lie in the appropriate federal or state courts in the State of Michigan" and that Delphi

"*specifically waives* any and all objections to such jurisdiction and venue." Walsh Decl. Ex. B

¶ 26 (emphasis added). As Delphi has stated, this provision shows that the parties "have already

contemplated resolving — and indeed are contractually required to resolve" both the Contract

Action and the Patent Action in Michigan. Walsh Decl. Ex. M at 3-4; *see also* Walsh Decl. Ex.

A ¶ 16.

39.    Forum selection clauses "are prima facie valid and should be enforced

unless enforcement is shown by the resisting party to be 'unreasonable' under the

circumstances." *M/S Bremen* v. *Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972). Such provisions

are "binding upon bankruptcy courts, just as they are binding upon other federal courts."

*Unified Data Sys.* v. *Almarc Corp. (In re Almarc Corp.)*, 94 B.R. 361, 366 (Bankr. E.D. Pa.

1988); *see also, e.g.*, *Envirolite Enters., Inc.* v. *Glastechnische Industrie Peter Lisec Gesellschaft*

*M.B.H.*, 53 B.R. 1007, 1013 (S.D.N.Y. 1985), *aff'd*, 788 F.2d 5 (2d Cir. 1986).

40.    Moreover, forum selection clauses "have even more force after [plan]

confirmation, when bankruptcy court oversight is lessened." *In re Almarc Corp.*, 94 B.R. at 366.

Courts therefore enforce such provisions, notwithstanding language in a chapter 11 plan

reserving bankruptcy court jurisdiction over disputes involving the debtor, especially where

"virtually all plan distributions . . . have been made, and the outcome of the proceeding will have

no impact upon the plan." *Id.* at 365.

### 3.    Delphi's Conduct Evidences Its Consent to Having Methode's Claims Determined by the Michigan Courts.

41.    Apart from the agreed Forum Selection Clause, Delphi also consented to

the allowance of Methode's claims in the Michigan courts through its own conduct. It is

axiomatic that the commencement of a case in a certain venue "and subsequent participation in

the case constitute[] both consent to that venue and conduct waiving objections to that venue."

*Block* v. *Citizens Bank (In re Moss)*, 249 B.R. 200, 203 (Bankr. W.D. Mo. 2000); *see also, e.g.*,

*Grupke* v. *Linda Lori Sportswear, Inc.*, 174 F.R.D. 15, 17 (E.D.N.Y. 1997) ("[A] plaintiff, by

virtue of bringing suit, waives venue and personal jurisdiction objections to a defendant's

counterclaims.").

42.    Here, Delphi's embrace of the Michigan courts has been continual and

unequivocal. As to the Contract Action, it was *Delphi* that:

- chose to commence the Contract Action in Michigan state court;

-14-

- answered Methode's counterclaim in Michigan state court, *admitted* in its answer that venue was proper, and did not request removal to federal court within the 30-day period provided by Bankruptcy Rule 9027;

- briefed and argued two preliminary injunction motions in Michigan state court;

- agreed to a schedule for pre-trial proceedings and trial, and repeatedly agreed to revisions of the trial schedule, most recently in late November 2009, after the Effective Date, for an agreed July 2010 trial date;

- engaged in extensive discovery and motion practice in Michigan state court, including continued production and receipt of documents and briefing on motions to compel discovery until December 2009.

43.    Delphi's participation in the Patent Action has been equally vigorous and, indeed, the case continues to proceed full speed ahead. After Methode brought the patent case in Illinois, Delphi:

- answered Methode's complaint;

- asserted counterclaims against Methode;

- briefed and won a motion to transfer the case to Michigan federal court;

- after the Effective Date, agreed in January 2010 to consolidation of the pending action with the new lawsuit brought by New Delphi;

- agreed to a pre-trial schedule in the Michigan federal court, contemplating litigation well into 2011;

- after the Effective Date, made multiple filings in connection with motions for protective orders; and

- after the Effective Date, engaged in the continued production of documents and served papers up until the present.

As with the Contract Action, therefore, Delphi repeatedly manifested its agreement to litigate the Patent Action in Michigan. Moreover, Delphi never sought to transfer the Patent Action to this Court, opting instead to transfer the case to Michigan.

**B.    If the Plan Injunction Applies to Methode's Claims, Methode Is Entitled to Relief from That Injunction.**

44.    In the event the Court concludes that the Plan Injunction applies to Methode's claims, Methode respectfully requests relief from that order so that it can continue

prosecuting its claims in Michigan.  In considering requests for relief from a plan injunction or a

discharge injunction, courts apply a "for cause" standard.  *See In re Fucilo*, 2002 WL 1008935,

at *9 (Bankr. S.D.N.Y. Jan. 24, 2002); *see also  In re Northwest Airlines Corp.*, 2008 WL

2945998, at *1 n.1 (Bankr. S.D.N.Y. July 25, 2008) .  That standard requires consideration of,

among other things, the interests of judicial economy, the impact of the injunction on the parties

and the balance of harms.  *In re Fucilo*, 2002 WL 1008935, at *9.

**1.    Litigation in New York Would Unnecessarily
        Waste Judicial Resources.**

45.    Courts have recognized that, where "litigation has been proceeding for an

extended period of time" in another forum, forcing a party to begin the litigation anew and

"duplicate all of its efforts in the bankruptcy court" would "certainly result in a waste of judicial

resources."  *Murray Indus., Inc.* v. *Aristech Chem. Corp. (In re Murray Indus., Inc.)*, 121 B.R.

635, 637 (Bankr. M.D. Fla. 1990); *see, e.g.*, *First Jersey Nat'l Bank* v. *Brown (In re Brown)*, 951

F.2d 564, 570 (3d Cir. 1991) ("[I]t will often be more appropriate to permit proceedings to

continue in their place of origin, when no great prejudice to the bankruptcy estate would result,

in order to leave the parties to their chosen forum and to relieve the bankruptcy court from many

duties that may be handled elsewhere." (quoting S.Rep. No. 989, 95th Cong., 2d Sess. 50)).

46.    There can be no serious dispute that judicial resources will be wasted if

Methode is required to litigate its claims in this Court.  Methode's patent claims have been

pending before the Michigan federal court since August 5, 2009.  Its contract claim has been

before the Michigan state court even longer — since January 9, 2009.  The Michigan state court

has resolved two preliminary injunction motions in the Contract Action, overseen discovery and

discovery-related motion practice, and set a date for trial in July of this year.  As to the Patent

Action, Reorganized Delphi, New Delphi, Marian and Methode all agreed in January 2010 to a

comprehensive pre-trial schedule leading up to a final pre-trial order in 2011.  There simply is no reason for this Court to take over these two complex cases.

       2.       **Requiring Methode to Litigate in New York
              Would Be Inequitable.**

       47.     For over a year, Delphi has led Methode to expect that determination of its claims would take place in the state and federal courts of Michigan.  That is what the parties agreed in the Forum Selection Clause, and that is what all of Delphi's actions repeatedly confirmed.  Delphi should not now be permitted to call a "do over" and shop for a new forum in New York.

       48.     Although the facts in this case are highly unusual, cases involving gamesmanship by debtors in connection with the automatic stay provide useful guidance here. In *Huskey* v. *Allen County Farmers Servs., Inc.*, 2006 WL 2570347 (W.D. Ky. Sept. 5, 2006), a plaintiff brought a lawsuit that turned out to be in violation of the automatic stay.  Rather than seeking dismissal of the suit, however, the debtor participated in discovery, interposed a cross-claim and ultimately procured a discretionary stay of the suit.  When the debtor later invoked the automatic stay after the statute of limitations had expired, the district court refused to dismiss the action, reasoning that the debtor "lulled Plaintiffs into believing that it would not rely on the stay," and thus effectively waived its rights under section 362(a) of the Code.  *Id*. at *3-4; *see also In re Cobb*, 88 B.R. 119, 120-21 (Bankr. W.D. Tex. 1988) (debtor "waived the [automatic] stay" by actively defending a lawsuit without seeking dismissal based on section 362).  Here, as in the cited cases, Delphi's litigation conduct in Michigan amounts to a waiver of any right that Delphi would otherwise have to invoke any stay or injunction emanating from this Court.

       49.     Moreover, courts have held that, where stayed or enjoined litigation "has reached an advanced stage," a "decision continuing the application of the stay . . . would cause [a

creditor] great prejudice by forcing it, in effect, to write off the expenses it incurred in litigating its case." *Int'l Bus. Machs.* v. *Fernstrom Storage & Van Co. (Matter of Fernstrom Storage & Van Co.)*, 938 F.2d 731, 736-37 (7th Cir. 1991).  Methode would be prejudiced by the expense and delay that would inevitably result if it cannot pursue its claims in Michigan, and instead has to incur significant additional litigation costs.  In contrast, "there will not be any great prejudice to [Delphi], because [Delphi] voluntarily initiated the state court action."  *Carlton Co.* v. *Jenkins (In re Jenkins)*, 2004 WL 768574, at *4 (Bankr. S.D. Ga. Mar. 30, 2004).

50.    Nor will litigation in the Michigan courts harm other creditors or impede this Court's ability to administer these chapter 11 cases.  Reorganized Delphi has been out of bankruptcy for more than six months.  The Modified Plan requires that allowed administrative claims be paid *in full* by Reorganized Delphi.  Thus, regardless of whether Methode obtains allowance of its claims in Michigan or in New York, Reorganized Delphi will have to pay the full amount of any judgment obtained.

**C.    This Court Should Exercise Its Discretion to Abstain from Determining Methode's Administrative Expense Claims.**

51.    Well-established abstention doctrines provide an additional basis for this Court to defer to the Michigan courts.  Section 1334(c)(1) of title 28 grants this Court discretion to abstain from hearing any proceeding "in the interest of justice, or in the interest of comity with State courts or respect for State law."  28 U.S.C. § 1334(c)(1).  Courts consider a number of factors in deciding whether to exercise this discretion, including (emphasis added):

> (1) the <u>effect or lack thereof on the efficient administration of the estate</u> if a Court recommends abstention, (2) the <u>extent to which non-bankruptcy law issues predominate</u> over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable non-bankruptcy law, (4) the <u>presence of a related proceeding</u> commenced in state court or other non-bankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the

> degree of relatedness or remoteness of the proceeding to the main
> bankruptcy case, (7) the substance rather than form of an asserted
> "core" proceeding, (8) the feasibility of severing non-bankruptcy
> law claims from core bankruptcy matters to allow judgments to be
> entered in non-bankruptcy court with enforcement left to the
> bankruptcy court, (9) the burden of the bankruptcy court's docket,
> (10) the likelihood that the commencement of the proceeding in a
> bankruptcy court involves forum shopping by one of the parties,
> (11) the existence of a right to a jury trial, and (12) the presence in
> the proceeding of non-debtor parties.

*In re Portrait Corp. of Am., Inc.*, 406 B.R. 637, 641-42 (Bankr. S.D.N.Y. 2009) (citations,

internal quotation marks and alterations omitted).

52.    Based on these factors, it is plain that abstention is warranted here.

Among other things:

> ➢    Abstention would have no effect on estate administration.  Delphi
> emerged from bankruptcy in October 2009 pursuant to a plan that required
> payment of administrative claims in full, wherever they are adjudicated.

> ➢    Non-bankruptcy issues predominate.  Both the Contract Action and the
> Patent Action involve purely non-bankruptcy law issues, a "significant
> consideration" favoring abstention.  *In re L & S Indus., Inc.*, 989 F.2d 929,
> 935 (7th Cir. 1993) (abstaining where the relevant claims "sound[ed] only
> in state law"); *The Chamberlain Group, Inc. v. Lear Corp. (In re Lear
> Corp.)*, 2009 WL 3191369, at *3-4 (Bankr. S.D.N.Y. Sept. 24, 2009)
> (abstaining in favor of patent action pending in federal court in Illinois).
> Furthermore, pursuant to the Forum Selection Clause, the contract case is
> governed by Michigan law.

> ➢    Stage of prior pending proceedings.  Abstention is particularly appropriate
> where, as here, other courts "have already expended judicial resources" in
> resolving motions and other matters.  *See Rodriguez v. Gen. Nutrition
> Cos. (In re Ephedra Prods. Liab. Litig.)*, 2010 WL 882988, at *2
> (S.D.N.Y. Mar. 8, 2010).

> ➢    Jury demands.  That both Delphi and Methode have requested a jury trial
> in the Contract Action "weighs heavily in favor" of abstention.  *Kerusa
> Co. LLC v. W10Z/515 Real Estate Ltd. P'ship*, 2004 WL 1048239, *6
> (S.D.N.Y. May 7, 2004).

> ➢    Forum shopping.  Abstention would also deter a flagrant attempt by
> Reorganized Delphi to engage in forum shopping by suing Methode in
> Michigan state court, engaging in motion practice and discovery there, and

-19-

then deciding it would prefer to go to trial elsewhere. *See Stabler* v. *Beyers (In re Stabler)*, 418 B.R. 764, 770 (8th Cir. B.A.P. 2009) (abstention warranted to avoid forum shopping).

➤ Withdrawal of reference required. Methode's patent claims are subject to mandatory withdrawal by the district court under 28 U.S.C. § 157(d); *see The Singer Co. B.V.* v. *Groz-Beckert KG (In re The Singer Co., N.V.)*, 2002 WL 243779, at *3 (S.D.N.Y. Feb. 20, 2002). And given the parties' jury demands, both the Contract Action and the Patent Action would be subject to withdrawal of the reference on that basis as well.

➤ Third party involvement. The presence in the Patent Action of claims against Marian, a third party and a stranger to the bankruptcy, counsels in favor of abstention, as does the separate patent suit brought by New Delphi in Michigan federal court after the Effective Date, which has been consolidated with the other patent action there. *See In re Portrait Corp. of Am., Inc.*, 406 B.R. at 642 (court should consider presence of third parties).

➤ Michigan most suitable forum for all claims. Delphi has argued emphatically that *Michigan* has the strongest connection to and interest in the disputes between the parties. Additionally, Delphi and Methode both agreed by means of the Forum Selection Clause to resolve their disputes in Michigan under Michigan law. *See In re Lear Corp.*, 2009 WL 3191369, at *2 (factors to be considered "when weighing the convenience of the competing forums" include "a plaintiff's choice of forum" and "a forum's familiarity with the governing law" (citation and internal quotation marks omitted)). Certainly, a Michigan court is best suited to interpret Michigan law.

## POINT II

### DELPHI'S OBJECTION TO METHODE'S CLAIMS AS UNTIMELY SHOULD BE OVERRULED.

53.    Despite actively contesting Methode's contract and patent claims in Michigan, Delphi now asserts not only that the claims should be litigated in New York but also that "the Contract Claim and the Patent Claim — to the extent that the Patent Claim asserts claims arising prior to June 1, 2009 — *are untimely and should be expunged*." Objection ¶ 21 (emphasis added). Delphi's theory is that, because Methode filed its administrative expense forms with the Claims Agent on November 5, 2009 — after the July 15, 2009 deadline for claims

from before June 1, 2009 — Methode has effectively forfeited its right to recover damages for any conduct by Delphi that occurred prior to June 1, 2009.

54.     As a threshold matter, it is important to note that, as the Objection concedes, Delphi's "timeliness" argument has limited application, if any, to the Patent Action. Methode's federal patent complaint against Delphi alleges *ongoing* patent infringement, including after June 1, 2009, and seeks various types of relief arising from that infringement, including a declaration that the patent at issue is valid and an injunction preventing future infringement.  (The Complaint also seeks damages from Marian, a third party, arising out of the ongoing infringement of Methode's patent.)

55.     In addition, Delphi attempted to effectuate its threatened termination of the Post-Confirmation Supply Agreement only when it delivered its termination notice in August 2009 — an event that occurred after June 1, 2009, and after the First Administrative Claims Bar Date.  *See* Walsh Decl. Ex. X at 2.  Hence, to the extent Methode's contract claim and damages arose when Delphi's threat of termination was carried out in August 2009, Delphi's timeliness argument is inapplicable to that claim as well.

56.     Regardless, Delphi's contention that the Court should disallow any aspect of Methode's claims as time-barred is wholly unfounded.  Methode was *not* required to file a claim in this Court and, even if it had been, overwhelming "cause" exists to permit Methode's late filing.

**A.     Methode's Administrative Expense Claims Were Not
        Tardily Filed.**

57.     As demonstrated above in Point I.A, the Modified Plan expressly provides that administrative expense claims may be "adjudicated" and "allowed" by a court *other than* this Court if the parties so agree.  And Delphi unequivocally agreed to the allowance

-21-

of Methode's claims in Michigan both through the Forum Selection Clause and through its

ongoing litigation in the Michigan courts.  Much of Delphi's conduct in the ongoing litigations

occurred *after* July 15, 2009, at a time when Delphi is now claiming that Methode had forfeited

its rights.  Indeed, Delphi continued to litigate vigorously in Michigan even after the Effective

Date, when the Plan Injunction had gone into effect.

58.    In light of Delphi's agreement that the Michigan courts would determine

Methode's claims, there is no sound basis for Delphi to assert that Methode was nonetheless

required to file a piece of paper in this Court.  To the contrary, Delphi's attempt to fault Methode

for not initiating a separate claims proceeding in this Court is no more than a contrived

invocation of its bankruptcy for an advantage in an ordinary course post-confirmation

commercial dispute.

59.    The "informal proof of claim" doctrine further supports the conclusion

that Methode was not required to file a claim form prior to July 15, 2009.  Under that doctrine, a

pleading or document that does not meet the formal requirements of a proof of claim

nevertheless will be deemed adequate if it (1) was timely filed with the bankruptcy court,

(2) states the existence and nature of the debt, (3) states the amount of the claim against the

estate and (4) evidences the creditor's intent to hold the debtor liable for the debt.  *E.g.*, *In re*

*Enron Creditors Recovery Corp.*, 370 B.R. 90, 99 (Bankr. S.D.N.Y. 2007).  With the exception

of a filing in the Bankruptcy Court, Methode's pleadings in Michigan satisfy each of these

requirements.  The requirement of a bankruptcy court filing, moreover, is not an accepted

element of the informal proof of claim doctrine, and courts have held that pleadings in lawsuits

outside the bankruptcy court can qualify as informal proofs of claim.  *See, e.g.*, *Sambo's Rests.,*

*Inc.* v. *Wheeler (In re Sambo's Rests., Inc.)*, 754 F.2d 811, 815 (9th Cir. 1985) (no requirement

of a filing in the bankruptcy court; claimant's lawsuit against debtor in another forum sufficient);

*In re Modular Eng'g Corp.*, 41 B.R. 52, 55 (Bankr. S.D. Tex. 1984) (pleadings in arbitration

proceedings against debtor qualified as informal proof of claim); *see also* 9 Collier on

Bankruptcy ¶ 3001.05[3] (15th ed. 2009) ("The requirement of filing a writing is not always

rigorously enforced."). Regardless, that requirement would have no application in these

circumstances. Delphi chose to litigate Methode's disputed administrative claims in Michigan

and, in doing so, agreed that the Bankruptcy Court would not determine those claims. Moreover,

since Delphi has emerged from bankruptcy and is required to pay administrative expenses in full,

there was no need for the Court to be informed of Methode's claims earlier.

**B.      In the Alternative, Methode Should Be Permitted
         "For Cause" to File a Tardy Proof of Claim.**

         60.     Even if the Court determines that Methode was required to file a claim

form before July 15, 2009 for claims arising prior to June 1, 2009, it should not disallow

Methode's administrative expense claim. Under section 503(a) of the Bankruptcy Code, "[a]n

entity . . . may tardily file [a] request [for payment of an administrative expense] if permitted by

the court for cause." 11 U.S.C. § 503(a). Here, there is evident "cause" to recognize Methode's

"tardy" claim form filed on November 5, 2009.

         61.     A threshold word about the "cause" standard is in order. Congress laid

down in section 503(a) a statutory standard of "cause" that grants a bankruptcy court "wide

discretion to allow . . . belated filings in the interests of justice." *Good* v. *Blankenship (In re*

*Heartland Steel, Inc.)*, 2003 WL 23100035, at *2 (S.D. Ind. Dec. 16, 2003). There is no warrant

for rewriting the statute by treating the term "cause" as equivalent to the "excusable neglect"

standard of Bankruptcy Rule 9006(b)(1), as a few courts have. In plain English, a standard of

"cause" is more flexible than a standard of "excusable neglect." *Id*. at *3; *cf. Redfield* v. *Cont'l*

*Cas. Corp. (In re Intercont'l Sec. Corp.)*, 818 F.2d 596, 601 (7th Cir. 1987) (in the context of

Fed. R. App. P. 4(a)(5)(A)(ii), "good cause" is less stringent than "excusable neglect").[5]

Accordingly, an administrative expense filing that is considered tardy should nevertheless be

permitted if such permission is "in the interest of justice and" does "no violence to other interests

in procedural regularity." *In re Heartland Steel*, 2003 WL 23100035, at *4. That standard is

plainly met here.

62.    Even if the excusable neglect standard were to apply, however, it would be

satisfied. The United States Supreme Court has held that the "excusable neglect" standard "is at

bottom an equitable one, taking account of all relevant circumstances surrounding the party's

omission," including "the danger of prejudice to the debtor, the length of the delay and its

potential impact on judicial proceedings, the reason for the delay, including whether it was

within the reasonable control of the movant, and whether the movant acted in good faith."

*Pioneer Inv. Servs. Co.* v. *Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993) (claimant

permitted to file late claim where it acted in good faith, reorganization plan took account of the

claim and notice of the bar date was ambiguous).

63.    Applying the approach set forth by the Supreme Court in *Pioneer*, it is

clear that any prejudice that could result from permitting Methode to file a tardy claim is far

outweighed by the prejudice and inequity that would result if Methode's claim were barred.

### 1.    Reorganized Delphi Would Not Be Prejudiced by Methode's Filing.

64.    The unusual nature of the present circumstances bears emphasis. Unlike

the cases applying the *Pioneer* standard to pre-petition claims, this case involves claims for

---

[5]    Moreover, Rule 9006(b)(1) distinguishes the two concepts, allowing enlargement of the time in which an act
may be performed "for cause shown" if a request is made prior to expiration of the relevant period, but only upon a
showing of "excusable neglect" where the relevant period has expired. *See* Fed. R. Bankr. P. 9006(b)(1); *Heartland
Steel*, 2003 WL 23100035, at *3.

ordinary-course administrative expenses that arose post-confirmation and, if allowed, are

required to be paid in full by a debtor that is no longer in bankruptcy.  The concerns that

typically underlie the analysis of whether a tardy claim will prejudice the debtor — such as the

impact of the late-filed claim on the orderly distribution to creditors or the crafting of a

reorganization plan — are of considerably diminished importance.

        65.    Regardless, each of the various factors that courts consider when

conducting *Pioneer*'s prejudice analysis clearly favors Methode.  Those factors include:

> the size of the claim with respect to the rest of the estate; whether
> allowing the late claim would have an adverse impact on the
> judicial administration of the case; whether the plan was filed or
> confirmed with knowledge of the existence of the claim; the
> disruptive effect that the late filing would have on the plan or upon
> the economic model upon which the plan was based; and whether
> allowing the claim would open the floodgates to other similar
> claims.

*Manus Corp.* v. *NRG Energy, Inc. (In re O'Brien Envtl. Energy, Inc.)*, 188 F.3d 116, 126 (3d Cir.

1999); *see also Midland Cogeneration Venture Ltd. P'Ship* v. *Enron Corp. (In re Enron Corp.)*,

419 F.3d 115, 130-32 (2d Cir. 2005).

> ➤ <u>Delphi's knowledge of the claim</u>.  Delphi obviously cannot contend that it
> was "surprised or caught unaware by the assertion of a claim that it had
> not anticipated," where it was immersed in litigation of those claims for
> months in Michigan.  *O'Brien*, 188 F.3d at 128; *see also Greyhound Lines,
> Inc.* v. *Rogers (In re Eagle Bus Mfg., Inc.)*, 62 F.3d 730, 738 (5th Cir.
> 1995) (no prejudice where the late filed claims "were clearly expected by
> the debtor" because the debtor had participated in alternative dispute
> resolution with the claimants for several months).

> ➤ <u>No disruption to the Plan</u>.  Delphi set administrative expense bar dates that
> occurred *after* approval of the Modified Plan and its consummation, and
> Methode filed its administrative expense claims on November 5, 2009,
> *before* the passing of the Second Administrative Claims Bar Date.
> Accordingly, when Methode's claims were filed, Delphi was still in the
> process of identifying administrative expense claims, all of which would
> have to be paid in full.  *See O'Brien*, 188 F.3d at 128; *see also Greyhound
> Lines*, 62 F.3d at 738 (the allowance of late-filed pre-petition claims

"would minimally affect the creditors because these claims were known and expected at the time of balloting").

➢ **No risk of similar claims**. The coincidence of circumstances relating to Methode's claims — the plan language permitting "allowance" of claims in another forum, the Forum Selection Clause and Delphi's litigation conduct in the Michigan courts — is idiosyncratic to the point of being unique. Only the first of Delphi's omnibus objections to administrative claims contained objections to claims (other than Methode's) on timeliness grounds.[6] Moreover, of the claims that Delphi has challenged as untimely, the vast majority were recently disallowed by the Court; only two such claims, with an aggregate value of less than $160,000, have avoided disallowance.[7]

➢ **No prejudice from size of claim**. Methode's contract claims, which seek some $40.5 million in damages contested by Delphi would represent only a small fraction of Delphi's overall estate if allowed. *See* Supplement to First Amended Disclosure Statement at S-xxvi, S-xxix to -xxxvii (aggregate claims against Delphi's estate amounted to more than $14 billion). Claims of far larger relative size have been found not to cause prejudice to the debtor. *See, e.g.*, *Ontario Die Co., Ltd.* v. *Bruno Mach. Corp. (In re Bruno Mach. Corp.)*, 2007 WL 2071747, at *4 (N.D.N.Y. July 12, 2007) (finding no prejudice to the debtor where the untimely claim amounted to 5-10% of all unsecured claims).

➢ **No prejudice from length of delay**. Not only did Methode file its claims in advance of the bar date applicable to the period following June 1, 2009, but also there is no indication that Methode's delay disrupted the administration of Delphi's bankruptcy case in any meaningful fashion.

**2.      Methode Has Acted Reasonably and in Good Faith.**

66.      Methode has acted in good faith throughout these proceedings. Delphi sued Methode in Michigan state court and actively litigated in that forum for more than a year, without ever attempting to halt proceedings in Michigan and litigate in New York. Delphi also included language in its Modified Plan stating that the allowance of a claim may be determined

---

[6]      *See* Thirty-Seventh Omnibus Claims Objection [D.I. 18984] at 5, Ex. D. *Compare* Forty-Sixth Omnibus Claims Objection at 7-8 (objecting on timeliness grounds only to Methode's claims) *with* Forty-Seventh Omnibus Claims Objection [D.I. 19873] (containing no timeliness objection); Forty-Fifth Omnibus Claims Objection [D.I. 19423] (same); Forty-Third Omnibus Claims Objection [D.I. 19356] (same); Forty-First Omnibus Claims Objection [D.I. 19223] (same); Thirty-Ninth Omnibus Claims Objection [D.I. 19045] (same).

[7]      *See* Untimely Administrative Expense Order [D.I. 19724]; Forty-Third Omnibus Claims Objection Order [D.I. 19590]; Thirty-Seventh Omnibus Claims Objection Order [D.I. 19135] at 3-4, Exs. D, H.

in non-bankruptcy forums.  Methode therefore reasonably believed — and still believes — that

no filing in this Court was necessary.

67.     While the facts before this Court are to the knowledge of counsel unique,

the Fifth Circuit's decision in *Greyhound Lines* is instructive.  There, the claimants did not

submit proofs of claim before the bar date because they were participating in court-ordered

alternative dispute resolution ("ADR") with the debtor.  The Fifth Circuit affirmed the

bankruptcy court's finding of excusable neglect, concluding that "[b]ut for the requirement to go

to ADR, the Claimants would have most probably filed [proofs of claim] before the bar date."

62 F.3d at 739.  The court found it significant that the debtor "allowed the Claimants to

participate in the ADR" and "negotiated with them for several months after passage of the bar

date."  *Id.* at 738.  In addition, the Fifth Circuit recognized "some confusion or ambiguity"

regarding the need to file a proof of claim notwithstanding the pending ADR proceedings, and

held that "this ambiguity supports our belief that the Claimants' neglect was excusable."  *Id.* at

740.

68.     Here, likewise, Delphi initiated litigation with Methode *outside* the

Bankruptcy Court and continued to litigate Methode's claims in the Michigan courts for months

after the initial "bar date."  Accordingly, there is no basis to conclude, as in other cases, that the

failure to file a timely claim "resulted solely from inadvertence."  *In re Enron Corp.*, 419 F.3d at

126.  To the contrary, if Methode erred in not filing a claim form before July 15, 2009, it did so

only because of the ongoing litigation that *Delphi* initiated and in which *Delphi* continued to

participate, consistent with the Forum Selection Clause and the language of the Modified Plan.

Punishing Methode for pursuing its claims in the forum that Delphi chose would be inequitable.

*See Transpacific Tire & Wheel, Inc.* v. *Orteck Int'l, Inc.,* 2010 WL 1375292, at *5 (D. Md. Mar.

30, 2010) (defendant estopped from seeking dismissal of suit on basis of Maryland jurisdictional statute that would have been inapplicable if defendant had not obtained transfer to Maryland); *Huskey*, 2006 WL 2570347, at *2-4 (debtor not permitted to invoke automatic stay as basis for dismissal of lawsuit where its prior conduct indicated it would not do so).

## <u>CONCLUSION</u>

69.    For the reasons set forth herein, the Court should grant Methode's motion, permit litigation of Methode's claims in the Michigan courts, and overrule the timeliness objection of the Reorganized Debtors to Methode's administrative claims.

Dated:  April 20, 2010
New York, New York

**WACHTELL, LIPTON, ROSEN & KATZ**

___/s/ Douglas K. Mayer_____
Douglas K. Mayer
Emil A. Kleinhaus
Alexander B. Lees
51 West 52nd Street
New York, New York  10019
Telephone:  (212) 403-1000
Facsimile:  (212) 403-2000

**LOCKE LORD BISSELL & LIDDELL LLP**
Ann Marie Walsh
111 South Wacker Drive
Chicago, Illinois  60606
Telephone:  (312) 443-0654
Facsimile:  (312) 896-6654

*Attorneys for Methode Electronics, Inc.*