UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re<br><br>DELPHI CORPORATION, *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 05-44481 (RDD)<br><br>Jointly Administered<br><br>**Hearing Date:** May 20, 2010<br>**Objection Deadline:** May 13, 2010 |

**DECLARATION OF ANN MARIE WALSH IN SUPPORT OF THE MOTION OF
METHODE ELECTRONICS, INC. FOR AN ORDER (I) PERMITTING
METHODE TO CONTINUE POST-PETITION LITIGATION WITH THE
REORGANIZED DEBTORS IN MICHIGAN AND (II) OVERRULING THE
REORGANIZED DEBTORS' TIMELINESS OBJECTION
TO METHODE'S ADMINISTRATIVE EXPENSE CLAIMS**

I, Ann Marie Walsh, hereby declare as follows:

1. I am a partner at the law firm Locke Lord Bissell & Liddell, LLP. I have served as one of the attorneys for Methode Electronics, Inc. ("Methode") in connection with pending lawsuits in the state and federal courts of Michigan involving DPH-DAS LLC ("Delphi" or "Reorganized Delphi") and Delphi Automotive Systems LLC ("New Delphi").

2. I submit this declaration in support of Methode's Motion for an Order (I) Permitting Methode to Continue Post-Petition Litigation with the Reorganized Debtors in Michigan and (II) Overruling the Reorganized Debtors' Timeliness Objection to Methode's Administrative Expense Claims.

**A.   Delphi Sues Methode for Breach of a Post-Confirmation
Supply Agreement in Michigan State Court.**

3. On October 23, 2008, Delphi sued Methode in the Circuit Court for the County of Oakland, State of Michigan, alleging that it was entitled under a supply agreement dated September 4, 2008 (the "Post-Confirmation Supply Agreement") to obtain tooling

drawings for certain parts that Methode manufactured for Delphi pursuant to that agreement (the "Contract Action"). A true and correct copy of Delphi's *Second Amended and Supplemented Verified Complaint for Breach of Contract and Injunctive and Other Relief* is attached hereto as Exhibit A.

4. Delphi based its choice of venue on a forum selection clause (the "Forum Selection Clause") in Delphi's General Terms and Conditions, a document that Delphi has acknowledged is incorporated into the Post-Confirmation Supply Agreement. A true and correct copy of Delphi's *General Terms and Conditions*, effective February 1, 2008, is attached hereto as Exhibit B.

5. The Forum Selection Clause in the Post-Confirmation Supply Agreement provides as follows:

> (a) this Contract is to be construed according to the laws of the United States of America and the State of Michigan . . . and
> (b) each party hereby agrees that the forum and venue for any legal or equitable action or proceeding arising out of, or in connection with, this Contract will lie in the appropriate federal or state courts in the State of Michigan and specifically waives any and all objections to such jurisdiction and venue.

Exhibit B ¶ 26.

6. Delphi subsequently moved for a preliminary injunction granting it possession of the tooling drawings pending final judgment. After briefing and oral argument, the court denied Delphi's motion. A true and correct copy of the Michigan state court's *Order and Opinion* dated November 19, 2008 is attached hereto as Exhibit C.

**B.    Methode Counterclaims for Anticipatory Repudiation of the Post-Confirmation Supply Agreement.**

7. On January 9, 2009, Methode filed an answer in Michigan state court as well as a counterclaim alleging anticipatory repudiation by Delphi of the Post-Confirmation

2

Supply Agreement. A true and correct copy of *Defendant's First Amended Verified Answer to Plaintiff's First Amended Verified Complaint, Affirmative Defenses, and Counterclaim* is attached hereto as Exhibit D.

8.   As verified by Timothy R. Glandon, Methode's Vice President and General Manager of North American Automotive Operations, the counterclaim includes the following allegations:

(a)   Beginning in 2001, Methode was Delphi's exclusive supplier of certain weight sensing pads. The pads are part of Delphi's vehicle restraint system and are used to detect if a certain weight threshold is met on a vehicle seat for purposes of activating or deactivating the airbag. Methode asserts that the pads were invented by Methode's predecessor and are protected by patents belonging to Methode. Exhibit D ¶¶ 5-9.

(b)   The parties' long-term supply agreement dated December 2004 was set to expire on June 30, 2008. In the months leading up to that date, Methode and Delphi began negotiating the terms of a new long-term contract. Delphi sought price reductions, whereas Methode indicated that it needed to raise its prices to account for an increase in manufacturing costs and significant declines in Delphi's projected volume requirements. During negotiations, Delphi threatened to "resource" the parts — *i.e.*, obtain them from another supplier. On June 30, 2008, the day the existing supply agreement was due to expire, the parties had yet to reach an agreement for a new contract. In order to ensure an uninterrupted supply of parts, Methode made an accommodation to Delphi by agreeing to supply parts for an additional 90 days. *Id.* ¶¶ 10-21.

(c)   On July 8, 2008, for the first time in its seven-year relationship with Methode, Delphi requested copies of tooling drawings for the weight sensing pads.

3

Methode agreed to provide the drawings only if Delphi would give adequate assurances that the drawings would not be used to infringe Methode's patents. Delphi did not respond, and Methode did not supply the drawings. On July 24, 2008, Delphi again requested the drawings, Methode again sought assurances that its patents would not be infringed, and Delphi again failed to respond. *Id.* ¶¶ 22-27.

    (d) In late-August 2008, as negotiations over a new supply agreement continued, Methode provided two pricing options per Delphi's request: one based on a one-year exclusive supply arrangement, and another with lower pricing based on a three-year exclusive supply arrangement. Delphi chose the lower priced option, and on September 4, 2008, the parties executed the three-year Post-Confirmation Supply Agreement. Methode believed that this resolved the parties' dispute over the tooling drawings and re-sourcing. *Id.* ¶¶ 28-33.

    (e) Less than two months later, however, on October 23, 2008, Delphi initiated the Contract Action, seeking to obtain the tooling drawings. In addition, Delphi began contacting Methode's suppliers as part of its efforts to in-source or re-source Methode as a supplier of parts. *Id.* ¶¶ 34-39.

  9. Methode's counterclaim alleged that Delphi's actions constituted an anticipatory repudiation of the Post-Confirmation Supply Agreement. Specifically, Methode alleged that Delphi entered into the agreement in bad faith and that "Delphi concealed its intent to in-source or re-source Methode shortly after executing the agreement in order to induce Methode to enter the agreement, and Delphi concealed its intent to sue Methode to obtain the Methode tooling drawings in order to effect the re-sourcing." *Id.* ¶ 44.

  10. Delphi filed an answer to Methode's counterclaim on January 30, 2009, admitting in paragraph 3 that the Michigan state court "has subject matter jurisdiction over this

4

action" and "is the proper venue for the adjudication of this controversy." A true and correct copy of *Plaintiff/Counter-Defendant's Answer to Defendant/Counter-Plaintiff's Counterclaim and Affirmative Defenses* is attached hereto as Exhibit E.

C. **The Parties Continue to Litigate the Contract Action and Delphi Terminates the Post-Confirmation Supply Agreement.**

11. In May and June of 2009, both parties filed and responded to written discovery requests in the Contract Action. Methode undertook to collect and review more than three million pages of documents in response to Delphi's discovery demands. In doing so, Methode retained an electronic discovery consultant as well as 46 contract attorneys, thereby incurring significant costs. Methode produced approximately 16,000 pages of documents in 2009 and an additional 94,000 pages in early January 2010.

12. On May 20, 2009, Delphi filed a motion for a protective order, seeking to bar Methode's patent counsel from having access to technical information about the weight sensing pads. The Michigan state court granted the motion on July 23, 2009, after briefing and oral argument by the parties. A true and correct copy of the Michigan state court's *Order and Opinion* dated July 23, 2009 is attached hereto as Exhibit F.

13. Methode and Delphi each filed jury demands in the Contract Action. True and correct copies of the parties' jury demands are attached hereto as Exhibit G.

14. Trial was scheduled to begin on November 20, 2009, but subsequently was postponed, first to February 22, 2010, and then to April 19, 2010. True and correct copies of the Michigan state court's scheduling orders in the Contract Action are attached hereto as Exhibit H.

15. In August 2009, Delphi sent Methode a notice of termination, effective September 10, 2009, invoking a "termination for convenience" clause allegedly incorporated into

5

the Post-Confirmation Supply Agreement. Methode moved for a preliminary injunction and a temporary restraining order barring Delphi's termination of the contract, asserting that Delphi was precluded from taking advantage of any termination-for-convenience clause inasmuch as Delphi entered into the contract in bad faith by selecting the lower-priced three-year supply option without intending to perform for the full three-year period.

16. In its brief in response to the motion, submitted on September 8, 2009, Delphi argued that Methode was not entitled to an injunction because money damages would provide an adequate remedy. In making this argument, Delphi stated on page 19 of its brief that "on July 30, 2009, the U.S. Bankruptcy Court approved Delphi's emergence plans." A true and correct copy of *Delphi's Response Brief in Opposition to Methode's Motion for Temporary Restraining Order and Preliminary Injunction* is attached hereto as Exhibit I.

17. After briefing and oral argument, Methode's motion for a preliminary injunction was denied. A true and correct copy of the Michigan sate court's *Order and Opinion* denying the motion, dated September 10, 2009, is attached hereto as Exhibit J.

**D.    Methode Sues Delphi for Patent Infringement and Delphi Successfully Moves to Transfer the Case to Michigan Federal Court.**

18. On April 9, 2009; Methode sued Delphi and Marian, Inc. ("Marian") in the District Court for the Northern District of Illinois for patent infringement (the "Patent Action"). The complaint — which demanded a jury trial — alleged that, as part of the same effort to resource the pads underlying the dispute over the tooling drawings, Delphi was making, using, selling and/or offering for sale infringing weight sensing pads in the United States and Marian was assisting Delphi in that effort. Methode's claims alleged ongoing patent infringement by Delphi and Marian. A true and correct copy of Methode's complaint is attached hereto as Exhibit K.

6

19. Delphi filed an answer, asserting counterclaims and affirmative defenses. A true and correct copy of Delphi's answer is attached hereto as Exhibit L.

20. In its answer, Delphi acknowledged the existence of the bankruptcy proceedings pending in this Court, asserting as an affirmative defense that "[a]ny award of damages or relief, including injunctive relief, that would impair, compromise or exercise control over monies or property of the Delphi Debtors Estate are [*sic*] subject to the automatic stay provisions of 11 U.S.C. § 362." Exhibit L at 22. Delphi nevertheless contended that a court in Michigan would be the "convenient forum" for resolution of the patent dispute. Delphi cited the pendency of the "closely related" Contract Action in the Michigan state court and again relied on the Forum Selection Clause. *Id.* ¶¶ 4-5.

21. Delphi then moved to transfer the case to the District Court for the Eastern District of Michigan. A true and correct copy of *Delphi Automotive Systems LLC's Memorandum in Support of Its Motion for Transfer of Venue* is attached hereto as Exhibit M.

22. In its motion to transfer, Delphi acknowledged that "[s]ince the Fall of 2005 . . . Delphi has operated under bankruptcy court protection." Exhibit M at 1 n.1. It nevertheless argued that the Michigan federal court was the appropriate forum for hearing the dispute, given the parties' connection to Michigan, the location of relevant documents and witnesses, and the fact that Methode's breach of contract claim — which Delphi described as "the crux of Methode's patent infringement claims" — was pending in the Michigan state court. *Id.* at 10, 14. Delphi also relied heavily on the Forum Selection Clause, arguing that it was part of the Post-Confirmation Supply Agreement, sufficiently broad to encompass the patent dispute, and a "significant factor" weighing in favor of transfer. *Id.* at 6-10. "Put simply," Delphi asserted, "this is a Michigan dispute." *Id.* at 11.

7

23.  The Illinois federal court granted Delphi's motion to transfer, relying principally on the Forum Selection Clause as the basis for relief. A true and correct copy of the Illinois federal court's *Corrected Memorandum Opinion and Order* dated July 16, 2009 is attached hereto as Exhibit N.

24.  The case was transferred to the Michigan federal court on August 5, 2009. A true and correct copy of the Michigan federal court's electronic acknowledgement of the transferred case is attached hereto as Exhibit O.

E.  **Delphi Emerges from Bankruptcy and Continues to Litigate in the Michigan Courts.**

25.  Following Delphi's emergence from bankruptcy on October 6, 2009 (the "Effective Date"), Reorganized Delphi continued to litigate the contract and patent disputes.

26.  For example, on October 5, 2009, Delphi brought a motion for a protective order in the Patent Action. Reorganized Delphi then filed a brief on October 19, 2009 in response to a motion for a protective order filed by Methode, and filed further briefing on December 21, 2009 relating to both parties' motions for protective orders. A true and correct copy of the docket sheet for the patent action, as of April 19, 2010, is attached hereto as Exhibit P.

27.  In addition, on October 30, 2009, New Delphi initiated a new lawsuit against Methode in the Michigan federal court, seeking declarations that one of Methode's patents for the weight sensing pads is invalid or unenforceable. A true and correct copy of New Delphi's patent complaint is attached hereto as Exhibit Q.

28.  New Delphi stipulated to the consolidation of this new patent case with the one that previously had been transferred to the same court, and to a scheduling order leading up

8

to a final pre-trial order in March 2011. A true and correct copy of the Michigan federal court's *Stipulated Order Consolidating Actions* dated January 8, 2010 is attached hereto as <u>Exhibit R</u>.

29. Methode answered New Delphi's complaint, demanding a jury trial, and asserting a counterclaim for patent infringement. A true and correct copy of Methode's answer is attached hereto as <u>Exhibit S</u>.

30. Neither Reorganized Delphi nor New Delphi sought at any time to stay, enjoin, or dismiss Methode's patent claims, or to transfer them to this District. The parties have continued to engage in litigation in the Michigan federal court. *See* Exhibit P. Reorganized Delphi served invalidity contentions as recently as this month. Discovery has continued, as well: after the Effective Date, Reorganized Delphi produced approximately 450,000 pages of documents.

31. After the Effective Date, Reorganized Delphi's participation in the Contract Action was ongoing as well. Reorganized Delphi made substantial document productions, producing approximately 10,000 pages after the Effective Date.

32. Reorganized Delphi also filed a motion on October 20, 2009 to compel more complete responses to its discovery requests. It set the hearing date of October 28, 2009, but subsequently re-noticed the motion and delayed the hearing four times: on October 27, November 2, November 16, and November 30. The hearing ultimately was scheduled for December 9, 2009. A true and correct copy of the docket sheet for the Contract Action as of April 19, 2010 is attached hereto as <u>Exhibit T</u>.

33. On October 28, 2009, Reorganized Delphi filed a Joint Motion to Extend the Scheduling Order, which the Michigan state court granted on November 19, 2009. By that order, at the request of Reorganized Delphi and Methode, the trial was rescheduled for July 19,

9

2010. A true and correct copy of the Michigan state court's *Order Regarding Extension of Scheduling Order Dates* dated November 19, 2009 is attached hereto as <u>Exhibit U</u>.

34. In addition, on November 25, 2009 Reorganized Delphi filed a brief responding and objecting to Methode's request for leave to petition an Ohio court to issue a subpoena for a deposition. And on December 7, 2009, Delphi filed a brief responding to a motion to compel brought by Methode. *See* Exhibit T.

**F.    Reorganized Delphi Moves to Stay the Post-Confirmation Contract Action.**

35. For more than a year after it commenced contract litigation against Methode in Michigan, Delphi did not once claim that the Michigan state court was an inappropriate forum for resolution of the claims it brought there or Methode's counterclaim. It admitted that venue was proper in its answer to the counterclaim. *See* Exhibit E ¶ 3. And it did not seek removal of the counterclaim to federal court. See Exhibit T. Yet on December 4, 2009 — two months after the Effective Date — Delphi filed a motion to dismiss or enjoin the Contract Action. A true and correct copy of *DPH-DAS LLC's Brief in Support of Motion to Dismiss Pursuant to MCR 2.116(c)(4) or, in the Alternative, to Enjoin Proceedings* is attached hereto as <u>Exhibit V</u>.

36. Reorganized Delphi stated that its motion was "brought to dismiss the [Contract Action] and effectively transfer the case to the bankruptcy proceeding pending in the Federal Bankruptcy Court in the Southern District of New York," arguing that Methode's claims "should be resolved by the Bankruptcy Court using the Claims Objection Procedure." Exhibit V at 1, 11.

37. The supposed basis for Reorganized Delphi's position was a paragraph in this Court's July 30, 2009 Plan Modification Order stating as follows:

10

> Except as otherwise specifically provided in the Modified Plan . . . the Debtors and all Persons shall be precluded and permanently enjoined on and after the Effective Date from . . . commencing or continuing in any manner any Claim, action, employment of process, or other proceeding of any kind with respect to any Claim, Interest, Cause of Action, or any other right or Claim against the Reorganized Debtors, which they possessed or may possess prior to the Effective Date.

Plan Modification Order [D.I. 18707] ¶ 22.

38. In its reply brief, on the first page, Reorganized Delphi announced its intention "to withdraw, without prejudice, the portion of its motion seeking to dismiss the parties' claims and instead . . . only proceed on the portion of its motion seeking to enjoin these proceedings." A true and correct copy of Reorganized Delphi's *Reply to Methode's Brief in Response to Delphi's Motion to Dismiss or Enjoin Proceedings* is attached hereto as Exhibit W.

39. On February 24, 2010, the Michigan state court granted Reorganized Delphi's motion. A true and correct copy of the Michigan state court's *Order and Opinion* dated February 24, 2010 is attached hereto as Exhibit X.

40. In ruling on Reorganized Delphi's motion, the Michigan state court recognized that the Plan Modification Order "does not address [Methode's counterclaim], much less explain how its continuation would defeat or impair the [Michigan state court's] jurisdiction with respect to the Delphi petition." Exhibit X at 3. However, the Michigan state court nevertheless stated that it did "not see how the Bankruptcy Court's injunction could be construed as anything but an order enjoining proceedings in other courts, including this one." *Id.* It therefore felt compelled to "honor the order, at least until it is modified by the Bankruptcy Court," and the Contract Action was stayed. *Id.*

41. On March 17, 2010, the Michigan state court entered a stipulated order clarifying that its February 24, 2010 order only enjoined, and did not dismiss, proceedings in the

11

Contract Action. A true and correct copy of the Michigan state court's *Stipulated Order Clarifying the Relief Granted in the Court's Order and Opinion of February 24, 2010* is attached hereto as Exhibit Y.

G.   **Delphi Objects to Methode's Administrative Expense Requests in This Court.**

42.   On November 5, 2009, out of an abundance of caution, Methode filed in this Court an administrative expense "claim" and reservation of rights relating to its patent and contract claims against Delphi. As Methode's submission made clear, its filing was "protective in nature as such litigation is proceeding in non-bankruptcy jurisdictions and venues selected by [the] Debtors." A true and correct copy of Methode's *Addendum to Administrative Expense Claim of Methode Electronics, Inc.* is attached hereto as Exhibit Z.

43.   On March 19, 2010, Reorganized Delphi objected to Methode's administrative expense claims. It asserts that, even though Delphi selected the non-bankruptcy fora in which Methode's claims have been litigated, those administrative claims should be disallowed by this Court either on the merits or, at least with respect to Methode's contract claim, based on when Methode submitted its claim forms.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 20, 2010

*/s/ Ann Marie Walsh*

Ann Marie Walsh

12