# Exhibit C

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF OAKLAND

DELPHI AUTOMOTIVE SYSTEMS, LLC,
a Delaware limited liability company,

      Plaintiff,

-v-

                                    Case Number 2008-095518-CK
                                    Honorable Nanci J. Grant

METHODE ELECTRONICS, INC.,

      Defendant.

_____/

THOMAS S BISHOFF (P53753)
STEPHEN W KING (P56456)
ATTORNEYS FOR PLAINTIFF
400 RENAISSANCE CENTER 35ᵀᴴ FLOOR
DETROIT MI 48243

CHARLES E BROWN (P46400)
CO-COUNSEL FOR PLAINTIFF
5825 DELPHI DR
TROY MI 48098

JOHN R TRENTACOSTA (P31856)
JEFFREY S KOPP (P59485)
GARY E STEINBAUER (P69789)
ATTORNEYS FOR DEFENDANT
500 WOODWARD AVENUE SUITE 2700
DETROIT MI 48226-3489

## ORDER AND OPINION

      At a session of said Court, held in the
Courthouse in the City of Pontiac, County of
Oakland, State of Michigan on the 19th day of
November, 2008.

PRESENT:   THE HONORABLE NANCI J. GRANT, CIRCUIT JUDGE

     This matter comes before the Court on Plaintiff's motion for preliminary injunction and for
possession pending final judgment. For the following reasons, the motion is DENIED.

     The precise dispute in this case arises out of a larger dispute between the parties which, at least
at this point, neither side seeks to resolve in this litigation. In 2004, the parties entered into a long term

1

agreement under which Defendant would supply parts to Plaintiff under certain terms. Defendant believes that this agreement expired in 2008, while Plaintiff believes that the agreement was enforceable until at least 2011. Despite this position, Plaintiff signed a new pricing agreement in September 2008. The parties also disagree as to whether this agreement requires Plaintiff to purchase all of its parts from Defendant, or whether Plaintiff may find other sources for the parts. Again, however, neither side seeks resolution of these disputes in the current case.

At issue in the current case is the purchase order under which Plaintiff agreed to purchase and Defendant agreed to produce certain tooling which, in turn, would be used to produce certain bladder assemblies. To produce the tooling, Defendant first created "drawings" of the components, and then used those "drawings" to create the tooling. Defendant has since turned the tooling over to Plaintiff. Defendant did not, however, turn the "drawings" over to Plaintiff, despite an explicit request to do so.

In the current action, Plaintiff claims that the purchase order for the tooling included the "drawings" used to make the tooling and, consequently, Plaintiff also owns the "drawings." Thus, the relief sought includes possession of the "drawings" so that Plaintiff can, at its option, create the tooling on its own and, consequently, obtain the parts made from the tooling from sources other than Defendant. In this motion, Plaintiff seeks an order compelling Defendant to turn over the "drawings" while the dispute over their ownership is resolved. Plaintiff also seeks possession pursuant to MCR 3.105(E).

The factors that must be considered in resolving this motion include: (1) the likelihood that Plaintiff will prevail on the merits; (2) the danger that Plaintiff will suffer irreparable injury if the injunction is not issued; (3) the risk that Plaintiff would be harmed more by the absence of an injunction than Defendant would be by the granting of the injunction; and (4) the harm to the public interest resulting from the injunction. *Michigan Coalition of State Employee Unions v Civil Service Comm'n*, 236 Mich App 96 (1999).

With respect to the threat of irreparable injury, it is undisputed that Defendant continues to provide parts under the terms of the parties' September 2008 agreement and, at least at this point, there is no concrete indication that Defendant plans to dishonor its commitments. Plaintiff, however, notes that there is "nothing to stop" Defendant from doing so. Plaintiff also reiterates its position that the parties' original 2004 agreement controlled the pricing for the parts in question, and characterizes Defendant's refusal to honor those terms in 2008 as an act of "extortion" based not on a good faith belief in the enforceability of the 2004 agreement, but rather on nothing more than the desire to avoid contractual obligations. Thus, Plaintiff is concerned that Defendant will attempt similar "extortion" in the future. This is a significant concern, as Plaintiff's business (as well as the business of its customers) depends on its receipt of parts as promised. In order to address this threat, Plaintiff claims that it must

have "the ability to re-source the Parts," which it cannot do without possession of the tooling "drawings."

This argument, of course, invokes the underlying disputes which are not at issue in this litigation, i.e., whether the parties' 2004 agreement expired in 2008, and whether the parties' contract allows Plaintiff to acquire the parts from other sources. This argument also presumes that Plaintiff is correct on these issues, and that Defendant's refusal to honor the pricing under the 2004 agreement was not born out of a good faith dispute over the enforceability of that agreement, but rather was an act of "extortion" born out of nothing more than a desire to avoid contractual commitments. Because Defendant "extorted" price increases in the past, Plaintiff argues, the Court should presume that it may do so again, and before the current dispute is resolved. Thus, Plaintiff argues, there is a "danger" of irreparable harm.

The Court disagrees. Plaintiff's position would have merit if Defendant's demand for new price terms in 2008 was not based on a good faith dispute over the enforceability of the 2004 pricing agreement, but instead was a naked act of extortion. Based on this record, however, the Court is not convinced that Defendant's refusal to honor the 2004 pricing agreement can be characterized as Plaintiff suggests. Nor is there any indication that Defendant has ever acted in a similar fashion in the past. If so, the Court is not convinced that there is a substantial threat that Defendant will engage in such "extortion" while this litigation is pending, and finds that Plaintiff's concerns in this regard do not warrant injunctive relief.

In terms of Plaintiff's likelihood of success on the merits, the issue turns almost exclusively on interpretation of the parties' agreement, in particular Section 17.1 of the "Terms and Conditions." That provision applies where Plaintiff purchases "tooling" and "other items" to be "used in connection with [Defendant's] actual or anticipated supply of goods to [Plaintiff]." When Plaintiff makes such a "purchase," title to these items vests "immediately" in Plaintiff upon Defendant's "acquisition of such Tooling and Materials." This language, Plaintiff argues, "make[s] clear that [Plaintiff] owns the Tooling Drawings," as "creation of the Tooling Drawings is a necessary and an inherent part of the acquisition of the underlying tooling and equipment." Consequently, Plaintiff is likely to prevail on the merits.

In response, Defendant notes that neither the Terms and Conditions of the parties' agreement nor the precise purchase order at issue explicitly mentions "drawings." Nor can the drawings be considered "other items" for purposes of Section 17.1, as this term "must be read in the context of 'tooling, jigs, dies . . .' and necessarily cannot and does not encompass drawings."

Defendant's position is questionable, as it fails to adequately explain why the drawings should not be considered "other items to be used in connection with [Defendant's] actual or anticipated supply

of goods to [Plaintiff]." At the same time, however, at this point the Court is not convinced that the language of the parties' agreement is clear and unambiguous in this regard. Rather, any likelihood of success on the merits does not outweigh lack of a credible threat of irreparable harm in the absence of an injunction.

Plaintiff also seeks possession of the drawings pending final judgment pursuant to MC 3.105. To prevail on this basis, Plaintiff must demonstrate (1) that its right to possession "is probably valid;" and (2) that the property "will be damaged, destroyed, concealed, disposed of, or used as to substantially impair its value" unless Plaintiff gains possession prior to trial. MCR 3.105(E)(3)(b).

With respect to the latter element, Plaintiff has not claimed that Defendant will damage, destroy, or dispose of the drawings prior to trial, or otherwise use them to substantially impair their value. Rather, Plaintiff claims that Defendant's continued possession of the drawings pending final judgment constitutes "concealment" for purposes of the court rule, justifying preliminary relief. The Court disagrees. Specifically, the Court does not believe that Defendant's retention of the drawings while this dispute is resolved constitutes "concealment," at least not where there is at least some showing that denying possession of the drawings actually threatens Plaintiff's ability to obtain the parts called for under the parties' agreement.

In light of the foregoing, the Court finds that Plaintiff is not entitled to possession pending final judgment or injunctive relief. Therefore, Plaintiff's motion is denied.


# NANCI J. GRANT

_____

NANCI J. GRANT, Circuit Judge


**PROOF OF SERVICE**

I certify that a copy of the above instrument was served upon the attorneys of record in the above case by mailing it to the attorneys at their business address as disclosed by the pleadings of record, with prepaid postage on 11/19/08.

_____
Kathleen M. Morton, Secretary to the Hon. Nanci J Grant

**A TRUE COPY**
**RUTH JOHNSON**
Oakland County Clerk - Register of Deeds

By: _____
                    Deputy

4