# Exhibit D

STATE OF MICHIGAN     ORIGINAL

IN THE CIRCUIT COURT FOR THE COUNTY OF OAKLAND

DELPHI AUTOMOTIVE SYSTEMS, LLC, a
Delaware limited liability company,

      Plaintiff,

vs.

METHODE ELECTRONICS, INC.,

      Defendant.

"OAKLAND"
"COUNTY"     08-095518-CK

JUDGE NANCI J. GRANT
DELPHI AUTOMO  v  METHODE ELECT

## DEFENDANT'S FIRST AMENDED VERIFIED ANSWER TO PLAINTIFF'S FIRST AMENDED VERIFIED COMPLAINT, AFFIRMATIVE DEFENSES AND COUNTERCLAIM

Methode Electronics, Inc. ("Methode") states as follows for its answer to the First

Amended Verified Complaint filed by Delphi Automotive Systems, LLC ("Delphi"):

### NATURE OF THE ACTION

    1.    Methode admits that Delphi owns certain tooling and equipment used by Methode

to produce the subject parts. Methode also admits that Delphi has recently requested the return

of certain obsolete and duplicative tooling from Methode. Methode denies as untrue all other

allegations in Paragraph 1 and Footnote 1 of the Complaint, including that Delphi paid for and

owns the tooling drawings or has a right to obtain the drawings from Methode. Methode also

denies as untrue that all the drawings can be transferred with the click of a computer mouse.

Methode also denies as untrue that it has wrongfully and unlawfully detained the drawings.

    2.    Methode lacks knowledge or information sufficient to form a belief as to Delphi's

present inventory of parts. Methode denies as untrue all other allegations in Paragraph 2

including but not limited to that Methode breached the parties' supply agreement. Specifically, Methode denies as untrue that it ever threatened to stop delivery of the subject parts. Methode also denies as untrue that it made wrongful price demands.

3.      Methode admits the allegations in Paragraph 3 of the Complaint.

4.      Methode denies as untrue any implication or suggestion that it would or might have ceased shipment of the subject parts or that Delphi or anyone else has or will suffer irreparable harm.

5.      Methode denies as untrue the allegations in Paragraph 5 of the Complaint.

6.      Methode admits that Delphi asked for copies of the drawings but Delphi refused to provide assurances that Delphi would not use the drawings to produce patent-infringing parts. Methode denies as untrue the remaining allegations in Paragraph 6 of the Complaint.

7.      Methode admits that Delphi owns the tooling but Methode denies as untrue the remaining allegations of Paragraph 7 of the Complaint.

8.      The allegations in Paragraph 8 of the Complaint are legal conclusions to which no answer is necessary or required. To the extent that Plaintiff intends the allegations in Paragraph 8 of the Complaint to be factual averments, Methode denies as untrue that Delphi will be irreparably harmed and further denies as untrue all other allegations.

9.      The allegations in Paragraph 9 of the Complaint are legal conclusions to which no answer is necessary or required. To the extent that Plaintiff intends the allegations in Paragraph 9 of the Complaint to be factual averments, Methode denies as untrue that Delphi has a

substantial likelihood of prevailing on the merits and further denies as untrue all other allegations.

10.    The allegations in Paragraph 10 of the Complaint are legal conclusions to which no answer is necessary or required.  To the extent that Plaintiff intends the allegations in Paragraph 10 of the Complaint to be factual averments, Methode denies as untrue that a balancing of the harms weighs in Delphi's favor and further denies as untrue all other allegations.

11.    The allegations in Paragraph 11 of the Complaint are legal conclusions to which no answer is necessary or required.  To the extent that Plaintiff intends the allegations in Paragraph 11 of the Complaint to be factual averments, Methode denies as untrue that the public interest factor weighs in favor of Delphi.

12.    Methode denies as untrue that it is concealing the tooling drawings or that Methode's continued possession of the drawings is wrongful.  Methode maintains the drawings in the same place that Methode has kept them for the entirety of the parties' eight-year supply relationship.  Methode denies as untrue that the value of the drawings will be substantially impaired due to Methode's continued possession and further denies as untrue all other allegations.

## PARTIES, JURISDICTION, AND VENUE

13.    Methode lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 13.

14.    Methode admits the allegations in Paragraph 14 of the Complaint.

3

15.     Methode admits the Complaint purports to set forth a claim for damages in excess of $25,000, and that the matter is within the subject matter jurisdiction of this Court. Methode denies as untrue that Delphi's claims against Methode have any merit, and denies as untrue the remaining allegations in Paragraph 15 of the Complaint.

16.     Methode admits that venue is proper in this Court because Methode conducts business in Oakland County, Michigan. Methode further denies as untrue that the tooling drawings are located in Oakland County, Michigan. Methode denies as untrue the remaining allegations in Paragraph 16 of the Complaint.

17.     Methode admits that venue is proper in Oakland County, Michigan.

## GENERAL ALLEGATIONS

18.     Methode lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 18 of the Complaint.

19.     Methode admits the allegations in Paragraph 19 of the Complaint.

20.     Methode admits the allegations in Paragraph 20 of the Complaint and also states that Methode is also known as a Tier One supplier in the automotive industry.

21.     Methode admits that it sells parts to Delphi that are protected by Methode patents that are incorporated in the Passive Occupant Detection System that Delphi sells to OEMs.

22.     Methode lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 22 of the Complaint.

4

23.    Methode lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 23 of the Complaint.

24.    Methode lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 24 of the Complaint.

25.    Methode admits that certain customers in the automotive industry's supply chain generally maintain a limited inventory.  Methode lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 25 of the Complaint.

26.    Methode admits that certain entities in the automotive industry's supply chain often rely on daily shipments of parts to satisfy its production needs and that often entities in the automotive industry's supply chain maintain little or no inventory.  Methode lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 26 of the Complaint.

27.    Methode admits the allegations in Paragraph 27 of the Complaint inasmuch as Methode supplies a Methode-patented part.

28.    Methode admits the allegations in Paragraph 28 of the Complaint.

29.    Methode admits the allegations in Paragraph 29 of the Complaint.

30.    Methode admits that it accepted certain purchase orders issued by Delphi and further states that the purchase orders accepted by Methode did not include the drawings amongst the property to which Delphi is entitled.  Methode lacks knowledge or information

sufficient to form a belief as to the truth of the allegations contained in Paragraph 30 of the Complaint because Methode cannot determine the specific purchase orders Delphi includes in its count of 140 production purchase orders and 108 tooling purchase orders.

31.    Methode denies as untrue that Delphi purchased any tooling drawings through either production purchase orders or tooling purchase orders.

32.    Methode denies as untrue that there are only cutting and welding tooling drawings for the parts identified by number in Exhibit A.

33.    Methode admits that it created or had created on Methode's behalf the tooling drawings but denies as untrue that the drawings were an inherent part of the process of acquiring the tooling and equipment.  Methode further states that the tooling drawings it created or that were created on its behalf contain confidential proprietary information and/or information that is subject to patent protection.  Methode denies as untrue that the purchase orders issued by Delphi included the tooling drawings amongst the property to which Delphi was entitled.

34.    Methode admits that Delphi paid for tooling and equipment used to make certain parts, but denies as untrue that Delphi also paid for the drawings used to make the tooling.

35.    Methode admits the allegations in Paragraph 35 of the Complaint.

36.    Methode admits that its supply agreement with Delphi are partially evidenced by purchase orders and Delphi's General Terms and Conditions ("Ts & Cs").  Methode denies as untrue that those are the only documents evidencing the parties' agreement.  Specifically, the

parties also entered into long-term agreements evidenced by correspondence between the parties. The terms of the long-term agreements are also part of the contract documents.

37.    Methode admits that Delphi has properly quoted the Ts & Cs without admitting that the Ts & Cs are binding.

38.    Methode denies as untrue the allegations in Paragraph 38 of the Complaint. Specifically, Methode denies as untrue that Delphi's General Terms and Conditions include the drawings amongst the property to which Delphi is entitled.

39.    Methode denies as untrue the allegations contained in Paragraph 39 of the Complaint. Specifically, Methode denies as untrue the drawings qualify as "works of authorship" or "property of Delphi" within the meaning of Paragraph 12.4 of Delphi's General Terms and Conditions.

40.    Methode denies as untrue the allegations contained in Paragraph 40 of the Complaint. Specifically, Methode denies as untrue the drawings qualify as "Development, Engineering and Consulting Services" or any "intellectual property" belonging to Delphi derived therein within the meaning of Paragraph 12.5 of Delphi's General Terms and Conditions.

41.    Methode denies as untrue any implication that it has breached or threatened to breach the parties' three-year supply agreement. Therefore, Methode denies as untrue that Paragraph 19 of Delphi's General Terms and Conditions applies to the parties' dispute over drawings.

42.    Methode denies as untrue the allegation that the Tooling Drawings are an inherent part of the tooling and further denies this allegation because "inherent" is vague.

43.    Methode denies as untrue the allegation that the Tooling Drawings are used in connection with the production and supply of the Parts to Delphi.

44.    Methode denies as untrue that Delphi has paid for the tooling drawings.

45.    Methode denies as untrue that there are only three stages and ten steps in the process of creating production parts. The process of creating a PODS production part started with a bladder concept developed and patented by Methode. Methode admits that prototype tooling is used to make prototype parts. Methode admits that the prototype parts are approved by Delphi but denies as untrue that Delphi approves production tooling. Methode lacks knowledge or information sufficient to form a belief as to the truth of the allegation of Delphi's testing or approval process. Methode admits that it manufactures production parts from production tooling and submits the production parts for PPAP approval, but lacks information as to the details of Delphi's PPAP process. Methode admits that it is authorized to begin shipping parts to Delphi if its parts pass PPAP. Methode admits that its bladders are incorporated in the PODS and are ultimately installed into vehicles.

46.    Methode denies as untrue that the first step in the creation of a production bladder is a Delphi engineer creating a concept part sketch or drawing. The process of creating a PODS production part started with a bladder concept developed and patented by Methode. Methode admits that it designed the bladder and further admits that it supplied those bladders to Delphi. Methode denies as untrue that the concept part sketches or drawings are usually transmitted electronically.

8

47.   Methode denies that this is the second step in the creation of a production bladder. Methode admits that Methode engineers work on-site at certain Delphi facilities to create concept parts. Methode compensates these engineers, and Methode does not receive reimbursement from Delphi. Methode denies as untrue that they are Delphi employees.

48.   Methode admits that its engineers work at Delphi facilities to create concept parts, which are modifications of the basic Methode design.

49.   Methode denies that this is the third step in the creation of a production bladder. Methode lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 49 of the Complaint.

50.   Methode denies that this is the fourth step in the creation of a production bladder. Methode admits the remaining allegations in Paragraph 50 of the Complaint.

51.   Methode admits the allegations in Paragraph 51 of the Complaint.

52.   Methode admits that, in some circumstances, Methode creates a prototype tooling drawing from a component part drawing, and that the prototype tooling drawing is used to manufacture prototype tooling.

53.   Methode admits that prototype tooling is used to manufacture prototype parts. Methode further admits that it manufactures a limited quantity of prototype parts and ships them to Delphi for testing. As to Delphi's testing of the prototype parts, Methode lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 53 of the Complaint.

54. Methode lacks knowledge or information sufficient to form a belief as to the truth of Delphi's internal documents including Delphi's purchase requisitions. Methode admits that Delphi issues prototype tooling purchase orders to Methode and that these documents apply to the acquisition of prototype tooling but not to prototype tooling drawings. Methode denies as untrue that Delphi has paid for prototype tooling drawings.

55. Without admitting that the purchase order constitutes the parties' contract or is otherwise binding on Methode, Methode admits that Delphi properly quoted prototype tooling purchase order #450280724.

56. Methode denies that this is the fifth step in the creation of a production bladder. Methode lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 56 of the Complaint.

57. Methode denies that this is the sixth step in the creation of a production bladder. Methode admits that Delphi issues requests for quotation and that Exhibit G is a sample quote request form.

58. Without admitting that the Request for Quotation constitutes the parties' contract or is otherwise binding on Methode, Methode admits that Delphi properly quoted the Request for Quotation.

59. Methode admits the allegations in Paragraph 59 of the Complaint.

60. Methode admits that Delphi properly quoted the document identified in Paragraph 60 of the Complaint.

61.    Methode admits the allegations in Paragraph 61 of the Complaint.

62.    Methode denies that this is the seventh step in the creation of a production bladder. Methode lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 62 of the Complaint.

63.    Methode admits the allegations in Paragraph 63 of the Complaint.

64.    Without admitting that the production tooling purchase order constitutes the parties' contract or is otherwise binding on Methode, Methode admits that Delphi properly quoted production tooling purchase order #450413326.

65.    Methode denies that this is the eighth step in the creation of a production bladder. Methode admits that it produces and submits sample production parts to Delphi. Methode denies as true that the tooling purchase order applies to tooling drawings. Methode denies as untrue that tooling drawings are always needed to manufacture tooling.

66.    Methode admits it produces a limited run of sample parts and admits that it submits sample parts to Delphi for testing. Methode lacks knowledge or information sufficient to form a belief as to the details of Delphi's testing.

67.    Methode denies that this is the ninth step in the creation of a production bladder. Methode denies as untrue that its invoices to Delphi for tooling also cover tooling drawings. Methode further denies as untrue that Delphi has paid for the tooling drawings in any way. Methode admits that it issues invoices to Delphi for the actual tooling.

68.    Methode admits that Delphi pays Methode's invoices for tooling using electronic funds transfer.

69.    Methode denies that this is the tenth step in the creation of a production bladder. Methode admits that Delphi issues releases and purchase orders and that Delphi has properly quoted the documents identified in Paragraph 69 of the Complaint. Methode admits that Exhibit J, K and L are sample purchase orders subject to the parties' long-term agreements.

70.    Methode admits that the parties follow a multi-step process, which starts with the use of Methode's design, to create production tooling drawings and production parts, and that this process may vary for each part. Methode denies as untrue that it invoices Delphi for tooling drawings, that Delphi pays for tooling drawings or that tooling drawings are considered part of "Buyer's Property" under the contract.

71.    Delphi's allegation that its Terms and Conditions are controlling are legal conclusion to which no response is required. Methode admits that Delphi pays for the items referenced but denies as untrue that Delphi pays for the tooling drawings. Methode denies as untrue that Delphi pays for concept parts that were developed from Methode's original design.

72.    Methode admits that Delphi requested copies of the drawings in July of 2008 but Methode believed that once the parties reached an agreement as to a new three-year supply contract, Delphi no longer needed the drawings. Methode denies as untrue that it has concealed tooling drawings from Delphi at any time. Methode maintains the drawings in the same place that Methode has kept them for the entirety of the parties' eight-year supply relationship.

73.    In answering Paragraph 73 of the Complaint, Methode denies as untrue that it "demanded" pricing but admits that the pricing referenced in Methode's May 1, 2008 letter became known as the "May 1, 2008 pricing" for purposes of the parties' subsequent contract.

74.    Methode denies as untrue that it "repeatedly demanded" price increases in its May 1, 2008 letter since it requested a new agreement contract because the parties existing long-term agreement was expiring on June 30, 2008. Methode further denies as untrue that Delphi's purchase orders had an expiration date beyond June 30, 2008.

75.    Methode admits the parties met at Delphi's office in Kokomo, Indiana. Methode denies as untrue the remaining allegations in Paragraph 75 of the Complaint because the parties were not attempting to "resolve" their differences but were merely discussing a new agreement.

76.    Methode admits it sent a letter to Delphi on June 27, 2008 stating that the parties' then-existing supply agreement was expiring on June 30, 2008. Methode denies as untrue that it threatened to stop shipping parts beyond the expiration of the agreement or made any ominous threat of any kind.

77.    Methode denies as untrue that it threatened or intended to stop shipping the subject parts but admits that it received a letter from Delphi dated June 27, 2008 containing the language quoted.

78.    Methode denies as untrue that it "demanded" pricing or purchase orders. Methode also denies as untrue that it threatened to stop shipping or that it would cut-off the supply of the subject parts in its June 30, 2008 letter to Delphi.

79.    Methode denies as untrue that there was a "pricing dispute" to resolve between the parties.  Methode admits the remaining allegations in Paragraph 79 of the Complaint.

80.    Methode denies as untrue that the May 1, 2008 pricing was "substantially higher."  Methode admits that Delphi issued purchase orders that contain the language quoted by Delphi in Paragraph 80 of the Complaint.

81.    Methode admits the allegations in Paragraph 81 of the Complaint.

82.    Methode admits the allegations in Paragraph 82 of the Complaint.

83.    Methode admits that it would not accept pricing "under protest' on purchase orders issued after the expiration of the 90-day pricing.

84.    Methode admits the allegations in Paragraph 84 of the Complaint.

85.    Methode admits it proposed three-year pricing on August 25, 2008.  Methode denies as untrue that its three-year pricing was a "bombshell" in light of projected volume reductions.

86.    Methode admits that it requested pricing that was higher than that set forth in the parties' prior long-term agreement.  Methode denies as untrue the magnitude of pricing increases alleged in Paragraph 86 of the Complaint and specifically denies as untrue that the price increase would total approximately $16 million dollars.

87.    Methode admits that it requested a change in some of the terms of the parties' prior long-term agreement.

88.    Methode asserts that its letter of August 25, 2008 raised certain issues with the terms identified in paragraph 87 of the Complaint but did not raise other issues given the circumstances under which the three-year supply agreement was formed.

89.    Methode denies as untrue that it ever threatened to stop shipment of subject parts and denies as untrue Delphi's mischaracterization of Methode's pricing proposal as a threat to stop shipment.

90.    Methode admits the allegations in Paragraph 90 of the Complaint.

91.    Methode denies as untrue the magnitude of pricing increases alleged in Paragraph 91 of the Complaint and specifically denies as untrue that the price increase would total approximately $22 million dollars.

92.    Methode admits that its letter of August 25, 2008 raised certain issues with the terms identified in paragraph 87 of the Complaint but did not raise other issues given the circumstances under which the three-year supply agreement was formed.

93.    Methode denies as untrue that it ever stated or implied it would stop shipping the subject parts in connection with either pricing proposal.

94.    Methode denies as untrue that it ever stated or implied it would stop shipping the subject parts in connection with pricing discussions.

95.    Methode admits the allegations in Paragraph 95 of the Complaint.

96.    Methode admits that Delphi requested the drawings twice but denies as untrue that Delphi made oral requests for the drawings in July 2008.

97.    Methode admits the allegations in Paragraph 97 of the Complaint but denies as untrue that Delphi is entitled to the drawings. Methode further states that it requested that Delphi assure Methode that Delphi would not use the drawings to infringe any Methode patents.

98.    Methode denies as untrue that Delphi has accurately recited the language of the July 29, 2008 letter and further denies as untrue that the parties' supply agreement requires Methode to turn over the drawings to Delphi.

99.    Methode admits that Delphi responded on August 5, 2008 but denies as untrue the validity of Delphi's claims.

100.    Methode admits that Delphi responded on August 5, 2008 but denies as untrue the validity of Delphi's claims. Methode further denies as untrue that Paragraph 17 of Delphi's General Terms and Conditions gives Delphi the right to immediate possession of the drawings.

101.    Methode admits that Delphi responded on August 5, 2008 but denies as untrue the validity of Delphi's claims. Methode denies as untrue that Paragraph 12 of Delphi's General Terms and Conditions give Delphi an absolute and unconditional right to inspect or that Methode is required to provide copies of the drawings.

102.    Methode denies as untrue that it has any contractual duty to provide Delphi with copies of the drawings.

## COUNT I – INJUNCTIVE RELIEF/SPECIFIC PERFORMANCE

103.    Methode hereby restates its answers contained in the preceding paragraphs as if fully restated here.

16

104. Methode denies as untrue that Delphi has fully performed its obligations under the parties' current three-year supply agreement since it is an executory contract.

105. Methode denies as untrue that Delphi has paid for or owns the drawings.

106. Methode denies as untrue that Delphi has a right, under the parties supply agreement or under Michigan law, to take possession of the drawings.

107. Methode denies as untrue that it has a contractual or legal duty to provide the drawings or copies of the drawings to Delphi.

108. Methode denies as untrue that it has breached the parties' supply agreement or has violated Michigan law by declining to provide the drawings. Despite the lack of any contractual or legal duty to provide the drawings to Delphi, Methode has offered to provide them upon receiving adequate assurances that Delphi will not use the drawings to breach Methode's patents covering the subject parts. To date, Delphi has refused to provide such assurances.

109. The allegations in Paragraph 109 of the Complaint are legal conclusions to which no answer is necessary or required. To the extent that Plaintiff intends the allegations in Paragraph 109 of the Complaint to be factual averments, Methode denies as untrue that Delphi would be irreparably harmed without immediate possession of the drawings. Methode further denies as untrue that it ever threatened to stop shipping parts or that it has sought to extract higher prices during the term of an existing agreement.

110. The allegations in Paragraph 110 of the Complaint are legal conclusions to which no answer is necessary or required. To the extent that Plaintiff intends the allegations in

17

Paragraph 110 of the Complaint to be factual averments, Methode denies as untrue that Delphi has a substantial likelihood of prevailing on the merits. Methode further denies as untrue all other allegations of Paragraph 110.

111.  The allegations in Paragraph 111 of the Complaint are legal conclusions to which no answer is necessary or required. To the extent that Plaintiff intends the allegations in Paragraph 111 of the Complaint to be factual averments, Methode denies as untrue that a balancing of the harms weighs in Delphi's favor. Methode further denies as untrue all other allegations of Paragraph 111.

112.  The allegations in Paragraph 112 of the Complaint are legal conclusions to which no answer is necessary or required. To the extent that Plaintiff intends the allegations in Paragraph 112 of the Complaint to be factual averments, Methode denies as untrue that the public interest factor weights in favor of Delphi.

113.  The allegations in Paragraph 113 of the Complaint are legal conclusions to which no answer is necessary or required. To the extent that Plaintiff intends the allegations in Paragraph 113 of the Complaint to be factual averments, Methode denies as untrue that Delphi is entitled to injunctive relief.

## COUNT II – CLAIM AND DELIVERY

114.  Methode hereby restates its answers contained in the preceding paragraphs as if fully restated here.

115.  Methode denies as untrue the allegations of Paragraph 115 and further states that Exhibit A is a list of Delphi part numbers.

18

116. Methode admits that the tooling drawings are property that belong to Methode.

117. Methode denies as untrue that Delphi holds title or any right of ownership to the drawings.

118. Methode admits the drawings have not been taken for any tax, assessment or fine; nor have they been taken under an execution or attachment. Methode denies as untrue that it has any obligation, contractual or otherwise, to provide Delphi with immediate possession of the drawings.

119. Methode denies as untrue that the original purchase price of the tooling included the drawings. Methode believes the drawings have significant value due to trade secrets contained therein and denies as untrue that they have *de minimis* value. Methode lacks knowledge or information at this time sufficient to form a belief as to the market value of the drawings. Methode denies as untrue that it has used the drawings in a manner inconsistent with the parties' agreement.

120. Methode denies as untrue that it has an obligation, contractual or otherwise, to provide Delphi with the drawings.

121. Methode denies as untrue that it is concealing the tooling drawings or that Methode's continued possession of the drawings is wrongful. Methode maintains the drawings in the same place that Methode has kept them for the entirety of the parties' eight-year supply relationship.

122. Methode denies as untrue that its continued possession, custody, and/or control of the drawings violates Michigan law or the parties' agreement.

123.   Methode denies as untrue the allegations contained in Paragraph 123 of the Complaint and further denies as untrue that Delphi suffered any damages.

124.   Methode denies as untrue the allegations contained in Paragraph 124 of the Complaint or that Delphi is entitled to an order of immediate possession.

125.   Methode denies as untrue that Delphi is entitled to costs.

## COUNT III – BREACH OF CONTRACT

126.   Methode hereby restates its answers contained in the preceding paragraphs as if fully restated here.

127.   Methode admits the parties entered into a long-term supply agreement.

128.   Methode denies as untrue that Delphi has performed fully under the parties' current three-year supply agreement as the agreement is executory.

129.   Methode denies as untrue that it has breached the parties' current supply agreement.

130.   Methode denies as untrue that Delphi has any ownership or possession rights to the tooling drawings.  Methode further denies as untrue that Delphi has suffered damages due to Methode's continued possession of the tooling drawings.  Methode admits that Delphi has alleged that Delphi could more quickly re-source or in-source Methode as a supplier of the parts if Delphi gains access to the drawings.  Methode denies as untrue that Delphi has incurred any costs or expenses as a result of Methode's actions.

131. Methode denies as untrue that Delphi has any ownership or possession rights to the tooling drawings. Methode further denies as untrue that Delphi has suffered damages due to Methode's continued possession of the tooling drawings. Methode admits that Delphi has alleged that Delphi could more quickly re-source or in-source Methode as a supplier of the parts if Delphi gains access to the drawings, thereby increasing the likelihood of Delphi prematurely terminating the parties' new three-year supply agreement.

132. Methode denies as untrue that it has breached the parties' current supply agreement, that Delphi has suffered any compensable damages and denies as untrue that Delphi suffered any loss as a result of Methode's actions.

133. Methode denies as untrue any liability for Delphi's alleged damages.

## METHODE'S AFFIRMATIVE DEFENSES

Methode, through its undersigned attorneys, state as follows for its Affirmative Defenses to Delphi's Complaint:

134. Delphi's Complaint fails to state a claim upon which relief may be granted and Methode is entitled to judgment as a matter of law.

135. Delphi's Complaint is barred, in whole or in part, because Delphi breached the parties' agreement before Methode allegedly committed a breach.

136. Delphi's Complaint is barred, in whole or in part, by the express written contracts between Methode and Delphi.

137. Delphi's Complaint is barred, in whole or in part, because Delphi has anticipatorily repudiated the parties' agreement.

138.  Delphi's Complaint is barred, in whole or in party, because, at all times, Methode performed in good faith its obligations under the parties' agreement.

139.  Delphi's Complaint is barred, in whole or in part, by the statute of frauds.

140.  Delphi's Complaint is barred, in whole or in part, for failure of consideration.

141.  Delphi's Complaint is barred, in whole or in part, for Delphi's failure to mitigate damages, if any.

142.  Delphi's Complaint is barred, in whole or in part, by the doctrines of waiver, estoppel, and/or laches.

143.  Delphi's Complaint is barred, in whole or in part, by the rule of parole evidence.

144.  Delphi's Complaint is barred, in whole or in part, by the law-of-the-case doctrine.

145.  Methode expressly reserves the right to assert such other Affirmative Defenses as become known through the course of discovery.

## METHODE'S COUNTERCLAIM

### NATURE OF THE ACTION

1.    Methode alleges an anticipatory breach of the three-year supply agreement between Methode and Delphi by Delphi.  Delphi obtained three-year pricing from Methode based on the pretense that Delphi intended to purchase the subject parts from Methode for at least a substantial portion of the three-year contract.  By this time, Delphi was already contacting or planning to contact Methode's suppliers to attempt to re-source the parts.

Immediately after obtaining Methode's commitment to three-year pricing, Delphi intensified its efforts to re-source and sued Methode to obtain copies of tooling drawings.

2.      Delphi's conduct demonstrates that it intended not to perform its obligations under the supply agreement when it obtained Methode's commitment to three-year pricing, and instead intended only to use the commitment to buy time to prepare its lawsuit against Methode and re-source the subject parts.

## Jurisdiction and Venue

3.      Jurisdiction and venue are proper in this Court because the original claims to which this Counterclaim applies are pending in this Court and the Counter-Defendant has submitted to the jurisdiction and venue of this Court.

## Parties

4.      Counter-Plaintiff Methode designs, manufactures, and markets component devices and parts to the consumer and industrial markets, including supplying components to original equipment manufacturers and suppliers in the automotive industry.

5.      Counter-Defendant Delphi is a supplier of various parts, including the Passive Occupant Detection System (PODS), to the automotive industry. The PODS, which is installed in the front passenger seat, provides a signal that controls and modifies airbag deployment characteristics depending on the presence or weight (such as a child) of an occupant in the passenger seat.

## GENERAL ALLEGATIONS

### Methode supplies patent-protected parts to Delphi.

6.     Methode manufactures for Delphi certain bladder assemblies (hereinafter referred to as "the subject parts") that are components of Delphi's PODS. The bladder is a key component of the PODS.

7.     The subject parts were invented by American Components, Inc. (ACI), a company which was located in Dandridge, Tennessee. In the 1990s, ACI designed, manufactured and assembled products including the subject parts.

8.     The subject parts are protected by certain patents (including U.S. Patents 5,975,568, 7,237,443, and/or Des 409,935).

9.     In 2001, Methode purchased from American Components, Inc. (ACI) certain assets, including the intellectual property rights relating to PODS, and thus acquired the rights to patents that applied to the parts.

**The parties' long-term supply agreement expired in 2008.**

10.     Beginning in 2001, through a series of long-term supply agreements, Methode has been the exclusive supplier of the patented subject parts to Delphi. Each long-term supply agreement spanned several years.

11.     Before the current long-term agreement, the parties performed under a December 2004 agreement that was set to expire on June 30, 2008. *See* Letter from Timothy Glandon to Kenneth Beteet dated June 30, 2008 Ex. A.

12.     In the 2004 agreement, as in the prior contract, Methode provided annual price discounts. *See* Glandon Letter Ex. A. Delphi benefited from price decreases during the contract term, but as a consequence Methode had to absorb the price increases for the materials required to produce the parts, with no relief from Delphi. The increases in costs of materials were not passed on to Delphi.

**Methode advised Delphi of price increases beginning in December 2007.**

13.    Seven months before the 2004 agreement expired, in December of 2007, Methode advised Delphi that it would need a price increase when the then-current agreement expired on June 30, 2008. On May 1, 2008, Methode sent Delphi new pricing, which would take effect immediately after the 2004 agreement expired on June 30, 2008. *See* E-mail from Timothy Glandon to Mark Shively dated May 1, 2008 Ex. B. On May 15, during a conference call, Delphi rejected the May 1 pricing.

14.    In mid-2008, at a meeting in Kokomo, Indiana, the parties continued to discuss a new supply agreement that would continue supply after the existing agreement expired. Methode informed Delphi that the prices for the new agreement would have to reflect: (1) increases in the prices of materials used to manufacture the parts, and (2) significant decreases in Delphi's projected volume requirements. Delphi, on the other hand, sought further price reductions from Methode in a new agreement.

**The parties continued discussions and Delphi asked for a three-year agreement.**

15.    Over the next four months, the parties continued discussions concerning a possible new contract and Delphi asked for a three-year agreement. Delphi asked on several occasions that Methode extend the then-expiring contract. *See* E-mail from Joyce Hoffman to Timothy Glandon dated June 13, 2008 Ex. C; *see also* E-mail from Kenneth Beteet to Timothy Glandon dated June 18, 2008 Ex. D.

16.    During a conference call on June 6, Delphi asked Methode to provide the framework for a three-year agreement.

17.    On June 18, 2008, Methode provided a proposal for three-year pricing to Delphi, which was the same as the May 1, 2008 pricing with certain protections for Methode against

further material price increases and drastic volume reductions. *See* E-mail from Timothy Glandon to Mark Shively et al. dated June 18, 2008 Ex. E.

18.    Delphi responded the next day, June 19, thanking Methode for the three-year pricing but again seeking an extension of purchase orders without any commitment to a three-year agreement. *See* E-mail from Kenneth Beteet to Timothy Glandon dated June 19, 2008 Ex. F. Methode responded the same day and provided Delphi additional time to issue new purchase orders. *See* E-mail from Timothy Glandon to Kenneth Beteet dated June 19, 2008 Ex. G.

**Delphi rejects Methode's proposals and threatens to re-source the subject parts.**

19.    On June 24, Methode and Delphi met in Kokomo to further discuss a possible new long-term agreement. During the discussions, much to Methode's surprise, a Delphi vice-president threatened to re-source Methode as a supplier "soon." *See* Letter from Timothy Glandon to Kenneth Beteet dated June 27, 2008 Ex. H. Despite numerous discussions, emails, and letters on the topic from both parties, Delphi also took the position, for the very first time, that the parties did not have a long-term supply agreement and that the supply agreement did not expire on June 30, 2008. *See* Letter from Kenneth Beteet to Timothy Glandon dated June 27, 2008 Ex. I and Methode's response, Glandon Letter Ex. H.

20.    On June 26, Delphi rejected the May 1 pricing proposal. *See* E-mail from Kenneth Beteet to Timothy Glandon dated June 26, 2008 Ex. J. The next day, in response to Delphi's stated intention of re-sourcing Methode "soon," Methode also provided pricing that would be good for only 90 days since it did not know what Delphi meant by "soon." *See* Glandon Letter Ex. H.

21.    On June 30, with the long-term agreement expiring that day, Methode made an accommodation to Delphi—it offered to ship parts at the May 1 pricing for 90 days so long as

the parties reached a new supply agreement for future parts by August 31, 2008. *See* Glandon

Letter Ex. A.

### In July 2008, Delphi requests the subject drawings for the first time.

22.     During the seven years in which Methode has been supplying parts to Delphi, it

has never requested copies of tooling drawings for the subject parts; nor is Delphi entitled to the

drawings under the parties' supply agreements.  Delphi has alleged that the tooling drawings are

necessary to re-source parts to another supplier.

23.     On July 8, 2008, during pricing discussions, Delphi for the first time requested

copies of the tooling drawings for the subject parts. *See* E-mail from Joyce Hoffman to Dan

Andrus dated July 8, 2008 Ex. K.

24.     On July 21, after the normal summer shutdown, Methode responded and agreed to

provide the drawings if Delphi would agree to provide adequate assurances that the drawings

would not be used to infringe Methode's patents. *See* Letter from Timothy Glandon to Joyce

Hoffman dated July 21, 2008 Ex. L.  Delphi did not respond in any way, and Methode did not

provide the drawings.

25.     On July 24, Delphi again requested the tooling drawings. *See* Letter from Joyce

Hoffman to Timothy Glandon dated July 24, 2008 Ex. M.  On July 29, Methode again asked

Delphi to provide assurances that Delphi will not use the drawings to infringe Methode's patents.

*See* Letter from Timothy Glandon to Joyce Hoffman dated July 29, 2008 Ex. N.

26.     Over the next five weeks, Methode continued to discuss a possible new long-term

supply agreement with Delphi.

27.     As of the date of this filing, Delphi has still not provided any assurances that it

does not intend to infringe Methode's patents.  Instead, Delphi advised Methode's counsel that

the patents do not apply to the parts. *See* Letter from Ann Walsh to Charles Brown dated October 15, 2008 Ex. O.  This was the first time Delphi ever took such a position, contrary to Delphi's previous conduct.  Several years ago, Delphi sought a license from Methode to manufacture the patented parts, thereby acknowledging Methode's patent rights. *Id.*

### Methode and Delphi finalize a three-year agreement.

28.    Pursuant to Delphi's request, on August 25 and 26, 2008, Methode provided revised one- and three-year pricing. *See* Letter from Timothy Glandon to Mark Shively dated Aug. 25, 2008 Ex. P; Letter from Timothy Glandon to Mark Shively dated Aug. 26, 2008 Ex. Q.

29.    As the parties finalized the discussions regarding a new long-term supply agreement, Delphi did not raise any concerns as to tooling drawings.

30.    On September 4, 2008, discussions concerning a new long-term agreement concluded and the parties consummated a new three-year supply agreement. *See* Ltr from Mark Shively to Timothy Glandon dated Sept. 4, 2008 Ex. R.

31.    Under the new supply arrangement, Methode will supply 100% of Delphi's requirements for the subject parts between October 1, 2008 and June 30, 2011.  A 100% requirements contract means that neither Delphi nor any other company can supply any of the subject parts to Delphi and that Methode is the exclusive source of the parts.

32.    With the expiration of the prior agreement and the resolution of the new supply agreement, Methode believed that the issue of Delphi's demand for copies of the tooling drawings had been resolved.

33.    As part of the new three-year agreement, Delphi benefits from Methode's lower pricing based on a three-year supply relationship, as opposed to the higher proposed pricing based on a one-year supply.

**Delphi sues Methode shortly after the parties execute the new three-year agreement.**

34.     Only weeks after the parties agreed to the new exclusive supply agreement,
Delphi filed suit in this Court seeking to obtain tooling drawings that would enable Delphi to in-source or re-source the parts.

35.     Delphi has expressed its unequivocal intention to in-source or re-source Methode and has said it needs the drawings to do so.

**Delphi repeatedly contacts Methode's suppliers and provides the parts drawings.**

36.     Delphi contacted Methode's material and equipment suppliers as part of its efforts to in-source or re-source Methode as a supplier for the subject parts.

37.     Delphi asked Methode's suppliers to quote to Delphi directly the components and equipment required to manufacture the subject parts.

38.     For at least one of Methode's suppliers, Delphi requested price quotes by sending copies of drawings with Methode part numbers erased.  That particular supplier had previously refused to provide price quotes to Delphi when Delphi sent drawings that contained the Methode part numbers.

39.     Through its suit for preliminary injunction and possession pending final judgment, Delphi seeks to gain access to tooling drawings for the explicit purpose of in-sourcing or re-sourcing Methode as a supplier.

**CLAIM FOR ANTICIPATORY REPUDIATION OF SUPPLY AGREEMENT**

40.     Methode re-alleges each of the preceding paragraphs as if fully set forth herein.

41.     Methode and Delphi engaged in substantive discussions over many months that resulted in the execution of a three-year supply agreement.

42.    Delphi induced Methode to enter and continue discussions for a three-year agreement based on the false pretense that Delphi intended to perform its obligations under the agreement in good faith.

43.    Prior to obtaining Methode's agreement to a three-year supply contract and not disclosed to Methode, Delphi intended to sue Methode to obtain tooling drawings and in-source or re-source the subject parts.

44.    Delphi concealed its intent to in-source or re-source Methode shortly after executing the agreement in order to induce Methode to enter the agreement, and Delphi concealed its intent to sue Methode to obtain the Methode tooling drawings in order to effect the re-sourcing.

45.    Methode would not have offered the three-year pricing and would not have entered into the current supply agreement if Methode had expected or contemplated that Delphi would sue Methode shortly after entering the agreement or that Delphi would otherwise attempt to in-source or re-source Methode within the duration of the exclusive supply agreement.

46.    The parties' three-year supply agreement is a valid executory contract.

47.    Methode has fully performed and will continue to perform its obligations under the three-year supply agreement.

48.    Delphi has demonstrated its unequivocal intent not to perform under the parties' three-year supply agreement.

49.    Delphi's conduct constitutes an anticipatory repudiation or anticipatory breach of the agreement.

50.    Delphi's anticipatory repudiation of the parties' exclusive supply agreement entitles Methode to rescission of the agreement.

30

51.    As a consequence of Delphi's conduct, Methode has incurred or will incur damages in an amount to be determined at trial.

WHEREFORE, Defendant Counter-Plaintiff Methode Electronics, Inc. requests the following relief against the Plaintiff Counter-Defendant:

(1)    Entry of judgment in favor of Methode and against Delphi, including an award of money damages in favor of Methode sufficient to compensate it for all forms of economic loss incurred by it as a result of Delphi's breach of the parties' agreement, including, without limitation, direct damages, indirect damages, incidental damages, consequential damages, lost profits and lost goodwill;

(2)    An award of rescission of the parties' current three-year supply agreement;

(3)    An award of legal fees and other costs arising out of Delphi's breach; and

(4)    All such other relief as permitted by law.

Respectfully submitted,

BY: _____

Ann Marie Walsh (pro hac vice)
LOCKE LORD BISSELL & LIDDELL LLP
111 South Wacker Drive
Chicago, IL 60606
(312) 443-0654
(312) 896-6654  (fax)

John R. Trentacosta (P31856)
Jeffrey S. Kopp (P59485)
Gary E. Steinbauer (P69789)
FOLEY & LARDNER LLP
One Detroit Center
500 Woodward Avenue, Suite 2700
Detroit, MI  48226-3489
(313) 234-7100
*Attorneys for Defendant*

Date: January 9, 2009

## VERIFICATION OF TIMOTHY R. GLANDON

STATE OF ILLINOIS        )
                         ) ss.
COUNTY OF HANCOCK   )

Timothy R. Glandon, being first duly sworn, on oath deposes and says that he is Vice

President and General Manager of North American Automotive Operations at Methode

Electronics, Inc. (hereinafter referred to as "Methode"), and is duly authorized to make this

verification on behalf of Methode; that Methode's First Amended Verified Answer to the First

Amended Verified Complaint was prepared with the assistance and advice of counsel upon

which he has relied; that the responses, subject to inadvertent or undiscovered errors, are based

on and therefore necessarily limited by the records and information still in existence, presently

recollected and thus far discovered in the course of preparation of these answers; that

consequently Methode reserves the right to make any changes to the responses if it appears at

any time that omissions or errors have been made or that more accurate or additional information

is available; and that subject to these limitations the responses are true to the best of his

knowledge and belief.

Dated: January 9 2009.

_____
Timothy R. Glandon

Subscribed and sworn before me
this 9th day of January, 2009.

_Patricia M. Swaggerty_
Notary Public,
Cook County, Illinois
My Commission Expires: 2-17-2010

NOTARY PUBLIC
OFFICIAL
SEAL
STATE OF ILLINOIS
PATRICIA M. SWAGGERTY
MY COMMISSION EXPIRES
FEBRUARY 17, 2010

# EXHIBIT A



**ETHODE ELECTRONICS, INC.**

Corporate Headquarters
7401 West Wilson Avenue
Chicago, IL 60706-4548
708.867.6777 • Fax: 708.867.6999 • 877.316.7700

<u>Via e-mail and Federal Express</u>

June 30, 2008

Mr. Kenneth H. Beteet
Delphi E & S
2151 East Lincoln Road
Kokomo, Indiana 46901

Re: <u>Methode/Delphi</u>

Dear Ken:

We are in receipt of the letter you sent on Friday, June 27, 2008. Your letter completely ignores the record of the business relationship between Methode and Delphi and we were surprised by the unsupportable positions taken in it.

Methode certainly disagrees with Delphi's position that Delphi and Methode were unable to reach an agreement on an extension of the August, 2001 Long Term Agreement. In that regard, I refer you to the exchange of emails in December of 2004 between Nang Ku (Delphi) and myself. (Copies of those emails are attached for your convenience). You will note that on December 17, 2004, Nang Ku asked Methode to "please confirm acceptance of the following LTA proposal for contract extension through MY08." On that same day, I responded that "Methode agrees with the LTA proposal" with some modifications. On December 20, 2004, Mr. Ku responded that Delphi accepted the modifications to the proposal and requested Methode to issue the rebate check. Methode did so.

This long term contract extension explicitly applied only through MY08. All of Methode and Delphi's communications and conduct are consistent with the fact that the contract expires today, June 30, 2008. We include for your reference a summary of some of those emails below. For example, since January of 2005, the PODS PO and Discount Matrix referenced in the LTA extension of December, 2004 specifically stated that:

> "NOTE: The current contract expires on 6-30-2008. Therefore, all discounts listed above with a date after 6-30-08 are contingent upon a future contract extension."

That matrix was referenced in the LTA extension and has been used by Delphi on a continual basis since that time to update purchase orders per the LTA terms. Delphi has never disputed that footnote in any way.

Methode has sent numerous emails for more than a year explicitly and clearly referencing the expiration of the current contract on June 30, 2008. Delphi communications to Methode are also consistent with that expiration date. On April 17, 2007, Bill Shinske (Methode) emailed Joyce Hoffman and noted that:

> "As you know, the pricing agreement on PODS B ends July 08 just prior to the GMT900 PODS D launching. Methode needs to understand the future of both PODS B and PODS D prior to reviewing any future pricing agreements. Once this information is available and reviewed, potential agreements for the PODS business can be discussed."

Again on October 29, 2007, Methode and Delphi communicated by email regarding the expiration of the contract on June 30, 2008. On that date, in an email to Mark Shively at Delphi, I indicated:

> "Per our previous discussions, Methode agrees to return to MNS-2 terms upon Delphi's emergence from bankruptcy. We will honor these terms through the balance of our current agreement due to expire June 30, 2008. We should continue our discussions soon as to the business relationship for MY2009 and beyond.
>
> I apologize for not being available for the trip to Mexico on November 14th and 15th as I have other commitments that I cannot change. Hopefully, we can get together in Kokomo or Carthage soon to discuss the future. I could be available on November 16th, 20th, 21st or 26th through 28th. Please let me know if any of these dates work for you."

Mr. Shively responded that same date and did not in any way dispute the expiration of the contract but merely stated that:

> "Thanks for the note – and I'll talk with John about getting our schedules together – John will be glad he doesn't have to travel that week."

On May 1, 2008, Methode provided new pricing to Delphi specifically because the contract was due to expire on June 30, 2008. In fact, as late as June 13, 2008, Delphi was not disputing the expiration of the contract. On that date, Joyce Hoffman emailed me and stated:

> "As a follow up to my voice message, I am requesting an extension on the current contracts while you and John and Mark continue negotiations. At the conclusion of negotiations, pricing can be retroed if that is what is required. Please let me know."

In fact, Delphi raised the issue of the existence of the long-term agreement for the first time in the meeting on June 24, 2008.

Finally, Methode disagrees that Methode did not object to or protest the terms of the purchase orders until this month. In fact, on November 26, 2007, in response to a new footnote added by Delphi on certain purchase orders, Dan Andrus (Methode) emailed Joyce Hoffman that:

> "We see that on November 1, 2007 you added a new footnote to purchase orders referencing a proposed extension of the term/expiration date. To the extent the footnote attempts to unilaterally bind Methode to prices after that date, Methode again states that we do not have an agreement after June 30, 2008. Per our contract and as we stated in our email of April 17, 2007 and repeated in other emails and presentations to Delphi, we do not have an agreement in place after June 30, 2008."

Delphi never responded to that email but did remove the footnote from subsequent PO's.

As you know, in our meeting on June 24, 2008, a Delphi vice-president indicated that Delphi intends to resource the Methode business. In response to that statement and higher expected costs as a result of this resourcing intent, Methode provided new pricing on June 27. Your responsive letter now includes Delphi's commitment to not resource Methode for at least one year. Although we have the right to not ship any parts after today, Methode is willing to ship parts to Delphi at the prices provided in our May 1, 2008 email as an accommodation to Delphi. Those prices will be effective through September 30, 2008. For shipment of parts thereafter, we require that by August 31, 2008, Delphi and Methode must reach an agreement on a new contract for future supply of parts. Depending upon various factors in the industry including material price increases, fuel prices, projected volumes and Delphi's resourcing plans, Methode's price quotes may be higher than those previously provided.

Please be advised that we need new purchase orders with the May 1, 2008 pricing retroactive to July 1, 2008 with the ZCRI payment terms. To insure an uninterrupted supply of parts, please confirm tomorrow, July 1, 2008, that purchase orders will be updated accordingly. We require new PO's by Friday, July 11.

Finally, we have reviewed with our counsel your contention that our unwillingness to honor expired pricing following the expiration of the LTA somehow violates the bankruptcy laws, and your implicit threat to seek relief from the Bankruptcy Court. We are comfortable that we are fully within our rights now that the LTA has expired and we understand that the bankruptcy laws do not, under the present facts, impose upon suppliers obligations beyond their contractual commitments. Given the record of our relationship, including the extensive unrebutted evidence of repeated notices to Delphi over a period of years that Methode would not commit to any pricing beyond June 30, 2008 absent mutual agreement to a new LTA, we believe that any attempt by Delphi to seek judicial relief would border on the frivolous.

Sincerely,

Timothy R. Glandon
Timothy R. Glandon
Vice President & General Manager

North American Automotive Operations

cc: David M. Freidman

**Glandon, Tim**

| | |
|---|---|
| From: | nang.y.ku [nang.y.ku@delphi.com] |
| Sent: | Friday, December 17, 2004 2:38 PM |
| To: | Tim Glandon (E-mail) |
| Cc: | LaLiberte, David P; Pentland, Becky; Chapman, Robert A; Hoffman, Joyce A |
| Subject: | LTA |

Tim,

Please confirm acceptance of the following LTA proposal for contract extension through MY08.

Rebates
December 2004 - $750k
January 2005 - $250k
December 2005 - $350k
January 2006 - $250k
July 2006 - $250k

Discounts for all launches prior to MY05 (June 2004) 0%, 3%, 3%, 3.5%, 3.5%

Discounts for all launches after MY05 (July 2004) 0%, 5%, 5%, 3%

*    Methode will take over warehousing and direct shipping responsibility from LIDC beginning in 2nd Qtr 2005 at $0.06 each bladder.
*    Delphi will award PODS-C bladder business to Methode.  The base price for the KJ is quoted at $5.00 without straps.  The bladders will be subject to cost modeling to validate pricing.
*    Delphi will give Methode consideration for the flex circuit capacitance pads for PODS-C.

*    Delphi's General T&C's will apply.


Upon acceptance, please issue a check for the 2004 rebate payable and to the following address:
Delphi Systems
Electronics & Safety division
World Headquarters
One Corporate Drive
PO Box 9005
M/C CTCLLM
Kokomo, IN 46904

Attn: Becky Pentland
CTC Lower Level East
765-451-0521

Please also send the tracking # for traceability.

Feel free to call with any questions.

Thanks,
Nang


*******************************************************************************
Note: The information contained in this message may be privileged and confidential and

1

thus protected from disclosure. If the reader of this message is not the intended
recipient, or an employee or agent responsible for delivering this message to the intended
recipient, you are hereby notified that any dissemination, distribution or copying of this
communication is strictly prohibited. If you have received this communication in error,
please notify us immediately by replying to the message and deleting it from your
computer. Thank you.

********************************************************************************

2

## Glandon, Tim

| | |
|---|---|
| **From:** | Glandon, Tim |
| **Sent:** | Friday, December 17, 2004 4:24 PM |
| **To:** | 'nang.y.ku' |
| **Cc:** | LaLiberte, David P; Pentland, Becky; Chapman, Robert A; Hoffman, Joyce A; Reynolds, Tom; Musgrove, Stuart; Shetty, Anil |
| **Subject:** | RE: LTA |

Nang:

Methode agrees with the LTA proposal as you have outlined with the following modifications and conditions.

>> With respect to PODS-C or similar bladder-based PODS device, Delphi will award 100% of the bladder volume to Methode.

>> Prior to the Methode rebate payment in January 2005, all open old commercial issues should be closed. This includes old prototype receivables, tooling PO's and invoices, piece price discrepancies and retro adjustments, as well as obsolete inventory claims.

>> Based on future business volume and other economic conditions, Methode would retain the right to consolidate the Mexico manufacturing facilities into one facility, understanding that we would have to meet all customer requirements in order to do so.

If you concur with these changes, Methode will issue and mail a check on or about December 27, 2004 for the CY2004 rebate. In January, we will put together a spreadsheet detailing all part numbers, SOP dates, and the current and future prices for review prior to the amendment of PO's.

Regards,
Tim Glandon
General Manager
Methode Electronics, Inc.
Automotive Safety Technologies
111 W. Buchanan Street
Carthage, IL 62321-0130
PH: 217-357-3941 (x22372)
FAX: 217-357-6275
E-mail: tim.glandon@methode.com


-----Original Message-----
From: nang.y.ku [mailto:nang.y.ku@delphi.com]
Sent: Friday, December 17, 2004 2:38 PM
To: Tim Glandon (E-mail)
Cc: LaLiberte, David P; Pentland, Becky; Chapman, Robert A; Hoffman, Joyce A
Subject: LTA


Tim,

Please confirm acceptance of the following LTA proposal for contract extension through MY08.

Rebates

1

December 2004 - $750k
January 2005 - $250k
December 2005 - $350k
January 2006 - $250k
July 2006 - $250k

Discounts for all launches prior to MY05 (June 2004) 0%, 3%, 3%, 3.5%, 3.5%

Discounts for all launches after MY05 (July 2004) 0%, 5%, 5%, 3%

*    Methode will take over warehousing and direct shipping responsibility from LIDC
beginning in 2nd Qtr 2005 at $0.06 each bladder.
*    Delphi will award PODS-C bladder business to Methode.  The base price for the KJ is
quoted at $5.00 without straps.  The bladders will be subject to cost modeling to validate
pricing.
*    Delphi will give Methode consideration for the flex circuit capacitance pads for
PODS-C.

*    Delphi's General T&C's will apply.


Upon acceptance, please issue a check for the 2004 rebate payable and to the following
address:
Delphi Systems
Electronics & Safety division
World Headquarters
One Corporate Drive
PO Box 9005
M/C CTCLLM
Kokomo, IN 46904

Attn: Becky Pentland
CTC Lower Level East
765-451-0521

Please also send the tracking # for traceability.

Feel free to call with any questions.

Thanks,
Nang


*********************************************************************************

Note: The information contained in this message may be privileged and confidential and
thus protected from disclosure. If the reader of this message is not the intended
recipient, or an employee or agent responsible for delivering this message to the intended
recipient, you are hereby notified that any dissemination, distribution or copying of this
communication is strictly prohibited. If you have received this communication in error,
please notify us immediately by replying to the message and deleting it from your
computer. Thank you.

*********************************************************************************

2

## Glandon, Tim

| | |
|---|---|
| **From:** | nang.y.ku [nang.y.ku@delphi.com] |
| **Sent:** | Monday, December 20, 2004 8:55 AM |
| **To:** | Glandon, Tim |
| **Cc:** | LaLiberte, David P; Pentland, Becky; Chapman, Robert A; Hoffman, Joyce A; Reynolds, Tom; Musgrove, Stuart; Shetty, Anil |
| **Subject:** | RE: LTA |

Tim,

Delphi accepts the terms below regarding PODS-C, the open commercial items, and
consolidation of your manufacturing sites. Please coordinate with your corporate office
to issue the rebate check so that it arrives no later than Thursday, 12/23. We will be
out of the office for the remainder of the year to observe the Holidays.

Feel free to call me on my cell if there are any questions.

Thanks,
Nang

>       -----Original Message-----
>       From: Glandon, Tim [mailto:Tim.Glandon@methode.com]
>       Sent: Fri 12/17/2004 5:23 PM
>       To: Ku, Nang Y
>       Cc: LaLiberte, David P; Pentland, Becky; Chapman, Robert A; Hoffman, Joyce A;
> Reynolds, Tom; Musgrove, Stuart; Shetty, Anil
>       Subject: RE: LTA


>       Nang:

>       Methode agrees with the LTA proposal as you have outlined with the following
>       modifications and conditions.

>       >> With respect to PODS-C or similar bladder-based PODS device, Delphi will
>       award 100% of the bladder volume to Methode.

>       >> Prior to the Methode rebate payment in January 2005, all open old
>       commercial issues should be closed. This includes old prototype receivables,
>       tooling PO's and invoices, piece price discrepancies and retro adjustments,
>       as well as obsolete inventory claims.

>       >> Based on future business volume and other economic conditions, Methode
>       would retain the right to consolidate the Mexico manufacturing facilities
>       into one facility, understanding that we would have to meet all customer
>       requirements in order to do so.

>       If you concur with these changes, Methode will issue and mail a check on or
>       about December 27, 2004 for the CY2004 rebate. In January, we will put
>       together a spreadsheet detailing all part numbers, SOP dates, and the
>       current and future prices for review prior to the amendment of PO's.

>       Regards,
>       Tim Glandon
>       General Manager
>       Methode Electronics, Inc.
>       Automotive Safety Technologies
>       111 W. Buchanan Street
>       Carthage, IL 62321-0130
>       PH: 217-357-3941 (x22372)

                                            1

FAX: 217-357-6275
E-mail: tim.glandon@methode.com


-----Original Message-----
From: nang.y.ku [mailto:nang.y.ku@delphi.com]
Sent: Friday, December 17, 2004 2:38 PM
To: Tim Glandon (E-mail)
Cc: LaLiberte, David P; Pentland, Becky; Chapman, Robert A; Hoffman,
Joyce A
Subject: LTA


Tim,

Please confirm acceptance of the following LTA proposal for contract
extension through MY08.

Rebates
December 2004 - $750k
January 2005 - $250k
December 2005 - $350k
January 2006 - $250k
July 2006 - $250k

Discounts for all launches prior to MY05 (June 2004)
0%, 3%, 3%, 3.5%, 3.5%

Discounts for all launches after MY05 (July 2004)
0%, 5%, 5%, 3%

*       Methode will take over warehousing and direct shipping
responsibility from LIDC beginning in 2nd Qtr 2005 at $0.06 each bladder.
*       Delphi will award PODS-C bladder business to Methode.  The base
price for the KJ is quoted at $5.00 without straps.  The bladders will be
subject to cost modeling to validate pricing.
*       Delphi will give Methode consideration for the flex circuit
capacitance pads for PODS-C.

*       Delphi's General T&C's will apply.


Upon acceptance, please issue a check for the 2004 rebate payable and to the
following address:
Delphi Systems
Electronics & Safety division
World Headquarters
One Corporate Drive
PO Box 9005
M/C CTCLLM
Kokomo, IN 46904

Attn: Becky Pentland
CTC Lower Level East
765-451-0521

Please also send the tracking # for traceability.

Feel free to call with any questions.

2

Thanks,
Nang

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
\*\*\*\*\*\*\*\*\*\*\*\*

Note: The information contained in this message may be privileged and
confidential and thus protected from disclosure. If the reader of this
message is not the intended recipient, or an employee or agent responsible
for delivering this message to the intended recipient, you are hereby
notified that any dissemination, distribution or copying of this
communication is strictly prohibited. If you have received this
communication in error, please notify us immediately by replying to the
message and deleting it from your computer. Thank you.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
\*\*\*\*\*\*\*\*\*\*\*\*

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Note: The information contained in this message may be privileged and confidential and
thus protected from disclosure. If the reader of this message is not the intended
recipient, or an employee or agent responsible for delivering this message to the intended
recipient, you are hereby notified that any dissemination, distribution or copying of this
communication is strictly prohibited. If you have received this communication in error,
please notify us immediately by replying to the message and deleting it from your
computer. Thank you.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

3

# EXHIBIT B

## Pitney Bloomfield Hills

| | |
|---|---|
| **From:** | Glandon, Tim [Tim.Glandon@methode.com] |
| **Sent:** | Thursday, May 01, 2008 4:40 PM |
| **To:** | Shively, Mark A |
| **Cc:** | Boyer, Ben |
| **Subject:** | Pricing |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Red |
| **Attachments:** | PO matrix Delphi July 1 2008.pdf |

Mark:

As we discussed in our December 2007 business review meeting in Kokomo and I re-iterated to you via phone yesterday, Methode requires revised pricing on products shipped after June 30, 2008.

We have spent the last several months working with our supply base in order to minimize the impact of their increases. Unfortunately, with the commodity markets as they are and overall reduced volumes, we continue to experience significant price increases on most components with virtually no long term commitments from suppliers to maintain pricing.

Operationally, Methode has invested heavily in LEAN activities and other cost reduction activities in order to minimize the impact of reduced volumes. Delphi's support of the consolidation plan has minimized this impact as well. However, these efforts alone do not eliminate the need for an adjustment to our overhead rates.

Attached is a pricing spreadsheet. Note that all of the parts currently produced in Reynosa have two prices. The first column is for parts that will still be produced in Reynosa as of July 1, 2008. These parts will receive a price reduction when moved to our Monterrey facility. These prices are reflected in the second pricing column.

Please assure that all purchase orders are updated on or before June 16, 2008 with an effective date of July 1, 2008. Per your request we will provide cost breakdown sheets for all of the attached part numbers by early next week.

Regards,
Tim Glandon
Vice President and General Manager
North American Automotive Operations
*Methode Electronics, Inc.*
111 W. Buchanan Street
Carthage, IL 62321
Ph: 217-357-3941 (ext. 22372)
Fax: 217-357-6265
tim.glandon@methode.com

7/3/2008

# EXHIBIT C

## Glandon, Tim

**From:** Hoffman, Joyce A [joyce.a.hoffman@delphi.com]
**Sent:** Friday, June 13, 2008 12:43 PM
**To:** Glandon, Tim
**Subject:** Contract Extension

Good Afternoon Tim,

As a follow up to my voice message, I am requesting an extension on the current contracts while you and John and Mark continue negotiations.
At the conclusion of negotiations, pricing can be retroed if that is what is required. Please let me know. Thank you, have a great weekend and Happy Father's Day.

Regards,
Joyce

**"All Delphi Documents are Delphi proprietary and as such consider this document and those attached as Delphi Confidential"**
Joyce A. Hoffman, CPPM
Sr. Buyer
Delphi E&S
2151 E. Lincoln Rd.
Kokomo, IN 46901
Phone: 765-451-0732
eFax: 866-897-0135
Email: joyce.a.hoffman@delphi.com

*****************************************************************************

Note: If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribu or copying of this communication is strictly prohibited. If you have received this communication in erroi please notify us immediately by replying to the message and deleting it from your computer. Thank you.

*****************************************************************************

11/4/2008

# EXHIBIT D

**Glandon, Tim**

| | |
|---|---|
| **From:** | Beteet, Kenneth H [kenneth.h.beteet@delphi.com] |
| **Sent:** | Wednesday, June 18, 2008 8:41 AM |
| **To:** | Glandon, Tim |
| **Cc:** | Boyer, Ben; Hoffman, Joyce A; Shively, Mark A; Glass, John R. |
| **Subject:** | RE: Discussion follow up |

Tim,

We are eager to receive your framework for a long term agreement to further our discussions.. Hopefully, we will receive something from this morning as indicated in your note below.

As we continue to work with you on this issue, we need to jointly sustain an uninterrupted supply to our OEM customers. In that regard, we have issued P.O. extensions (together with schedule visibility to Methode) with the caveat that pricing will be adjusted on a retroactive basis to July 1, 2008 to reflect our ultimate agreement.

Tim, I know this is contrary to what you have indicated below but please understand that we simply need more time to work through your pricing demands. In speaking with John Glass and Mark Shively, these demands are inconsistent with our prior discussions with you and they are well beyond justifiable material economics.

Going forward, please work through myself and Joyce Hoffman as your contact points for continuity. Feel free to contact me at (765) 451-2520 or my cell at (765) 480-5512.

Thanks,

Ken

---

**From:** Glandon, Tim [mailto:Tim.Glandon@methode.com]
**Sent:** Tuesday, June 17, 2008 5:30 PM
**To:** Shively, Mark A; Beteet, Kenneth H; Glass, John R.
**Cc:** Boyer, Ben; Hoffman, Joyce A
**Subject:** Discussion follow up

Gentlemen:

During our discussion on June 6, 2008, we agreed to provide you with our thoughts on the framework of a three-year agreement. I hope to have an outline to you tomorrow if not by the end of the day today.

Also during our meeting I reiterated Methode's position that while we would entertain other options to meet our financial needs, we must remain firm on the need for new pricing as presented in my email of May 1, 2008. Based on this email, new purchase orders were to be received by Methode on or before June 16, 2008 with an effective date of July 1, 2008. Unfortunately, to date we have not received the new purchase orders. On June 13, we received Delphi's request for an extension on the date for issuing new purchase orders. As I indicated in my voice mail to Joyce Hoffman on that same day, Methode is not granting an extension of any purchase order but rather we need new purchase orders. Please note that the terms on these new purchase orders must reflect continuation of our current payment terms of ZCRI. The purchase order term should be one year.

Please call me as soon as possible to advise when we will receive these new purchase orders.

Regards,
Tim Glandon
Vice President and General Manager
North American Automotive Operations
*Methode Electronics, Inc.*
111 W. Buchanan Street
Carthage, IL 62321
Ph: 217-357-3941 (ext. 22372)
Fax: 217-357-6265
tim.glandon@methode.com

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Note: If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the message and deleting it from your computer. Thank you.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

11/4/2008

# EXHIBIT E

## Glandon, Tim

| | |
|---|---|
| **From:** | Glandon, Tim |
| **Sent:** | Wednesday, June 18, 2008 2:54 PM |
| **To:** | 'Shively, Mark A'; 'Beteet, Kenneth H'; 'Glass, John R.'; 'Hoffman, Joyce A' |
| **Cc:** | Boyer, Ben |
| **Subject:** | Three Year Proposal |

All:

As promised, below is an outline of what might work for Methode in terms of a three-year pricing plan for PODS.

Based on pricing to be effective July 1, 2008 and barring any unforeseen issues, Methode would agree to maintain these PODS B prices for a three-year period with the following assumptions: (1) Methode would be placed on a material adder program for PODS B. The base line for the material prices would be those reflected on the cost breakdown sheets provided by Methode in May. On a quarterly basis any increases or surcharges would be passed along to Delphi for reimbursement within 30 days. (2) Based on actual volumes, PODS D pricing would be subject to review after one year to determine year two and year three pricing. (3) ZCRI payment terms for all programs for the term of the agreement. (4) Volumes must remain within 20% of the February 15, 2008 Finley document for model years 2009, 2010 and 2011.

Please let me know if this is in line with your expectations and we will begin to formalize an agreement.

Regards,
Tim Glandon
Vice President and General Manager
North American Automotive Operations
***Methode Electronics, Inc.***
111 W. Buchanan Street
Carthage, IL 62321
Ph: 217-357-3941 (ext. 22372)
Fax: 217-357-6265
tim.glandon@methode.com

# EXHIBIT F

## Glandon, Tim

| | |
|---|---|
| **From:** | Beteet, Kenneth H [kenneth.h.beteet@delphi.com] |
| **Sent:** | Thursday, June 19, 2008 7:03 AM |
| **To:** | Glandon, Tim |
| **Cc:** | Boyer, Ben; Reynolds, Tom; Shively, Mark A; Glass, John R.; Hoffman, Joyce A |
| **Subject:** | Re: Three Year Proposal_Methode 6_19_08 Receipt Acknowledgement |

Tim,

Thanks for your long term pricing outline submitted yesterday. We will review your recommendation in anticipation of further discussion during our meeting in Kokomo, IN scheduled for June 24. 2008. In the mean time, your acceptance of our request for an extension as stated in my letter to you yesterday (see copy below) would be much appreciated. Our OEM customers will expect us to jointly maintain an uninterrupted flow of supply as we work through this pricing issue. The requested extension would accomplish this objective.

Thanks,

Ken

---

**From:** Glandon, Tim [mailto:Tim.Glandon@methode.com]
**Sent:** Wednesday, June 18, 2008 3:54 PM
**To:** Shively, Mark A; Beteet, Kenneth H; Glass, John R.; Hoffman, Joyce A
**Cc:** Boyer, Ben
**Subject:** Three Year Proposal

All:

As promised, below is an outline of what might work for Methode in terms of a three-year pricing plan for PODS.

Based on pricing to be effective July 1, 2008 and barring any unforeseen issues, Methode would agree to maintain these PODS B prices for a three-year period with the following assumptions: (1) Methode would be placed on a material adder program for PODS B. The base line for the material prices would be those reflected on the cost breakdown sheets provided by Methode in May. On a quarterly basis any increases or surcharges would be passed along to Delphi for reimbursement within 30 days. (2) Based on actual volumes, PODS D pricing would be subject to review after one year to determine year two and year three pricing. (3) ZCRI payment terms for all programs for the term of the agreement. (4) Volumes must remain within 20% of the February 15, 2008 Finley

11/4/2008

document for model years 2009, 2010 and 2011.

Please let me know if this is in line with your expectations and we will begin to formalize an agreement.

Regards,
Tim Glandon
Vice President and General Manager
North American Automotive Operations
*Methode Electronics, Inc.*
111 W. Buchanan Street
Carthage, IL 62321
Ph: 217-357-3941 (ext. 22372)
Fax: 217-357-6265
tim.glandon@methode.com

================================JUNE 18, 2008 LETTER TO TIM GLANDON FROM KEN BETEET
BELOW========================

**From:** Beteet, Kenneth H
**Sent:** Wednesday, June 18, 2008 9:41 AM
**To:** 'Glandon, Tim'
**Cc:** Boyer, Ben; Hoffman, Joyce A; Shively, Mark A; Glass, John R.
**Subject:** RE: Discussion follow up

Tim,

We are eager to receive your framework for a long term agreement to further our discussions.. Hopefully, we will receive something from you this morning as indicated in your note below.

As we continue to work with you on this issue, we need to jointly sustain an uninterrupted supply to our OEM customers. In that regard, we have issued P.O. extensions (together with schedule visibility to Methode) with the caveat that pricing will be adjusted on a retroactive basis to July 1, 2008 to reflect our ultimate agreement.

Tim, I know this is contrary to what you have indicated below but please understand that we simply need more time to work through your pricing demands. In speaking with John Glass and Mark Shively, these demands are inconsistent with our prior discussions with you and they are well beyond justifiable material economics.

Going forward, please work through myself and Joyce Hoffman as your contact points for continuity. Feel free to contact me at (765)

451-2520 or my cell at (765) 480-5512.

Thanks,

Ken

# EXHIBIT G

## Glandon, Tim

| | |
|---|---|
| **From:** | Glandon, Tim |
| **Sent:** | Thursday, June 19, 2008 5:20 PM |
| **To:** | 'Beteet, Kenneth H' |
| **Cc:** | Boyer, Ben; Reynolds, Tom; Shively, Mark A; Glass, John R.; Hoffman, Joyce A |
| **Subject:** | RE: Three Year Proposal_Methode 6_19_08 Receipt Acknowledgement |

Ken:

We certainly understand the need to protect customer deliveries. However, Methode believes this is best accomplished by providing us with new purchase orders. In order to provide additional time for Delphi to issue new purchase orders, we will agree to extend the date by which Methode must receive new purchase orders to June 27, 2008. Note again that the purchase orders must be for a one-year term with ZCRI payment terms. The effective date should be July 1, 2008.

Regards,
Tim

**From:** Beteet, Kenneth H [mailto:kenneth.h.beteet@delphi.com]
**Sent:** Thursday, June 19, 2008 7:03 AM
**To:** Glandon, Tim
**Cc:** Boyer, Ben; Reynolds, Tom; Shively, Mark A; Glass, John R.; Hoffman, Joyce A
**Subject:** Re: Three Year Proposal_Methode 6_19_08 Receipt Acknowledgement

Tim,

Thanks for your long term pricing outline submitted yesterday. We will review your recommendation in anticipation of further discussion during our meeting in Kokomo, IN scheduled for June 24. 2008. In the mean time, your acceptance of our request for an extension as stated in my letter to you yesterday (see copy below) would be much appreciated. Our OEM customers will expect us to jointly maintain an uninterrupted flow of supply as we work through this pricing issue. The requested extension would accomplish this objective.

Thanks,

Ken

11/4/2008

**From:** Glandon, Tim [mailto:Tim.Glandon@methode.com]
**Sent:** Wednesday, June 18, 2008 3:54 PM
**To:** Shively, Mark A; Beteet, Kenneth H; Glass, John R.; Hoffman, Joyce A
**Cc:** Boyer, Ben
**Subject:** Three Year Proposal

All:

As promised, below is an outline of what might work for Methode in terms of a three-year pricing plan for PODS.

Based on pricing to be effective July 1, 2008 and barring any unforeseen issues, Methode would agree to maintain these PODS B prices for a three-year period with the following assumptions: (1) Methode would be placed on a material adder program for PODS B. The base line for the material prices would be reflected on the cost breakdown sheets provided by Methode in May. On a quarterly basis any increases or surcharges would be passed along to Delphi for reimbursement within 30 days. (2) Based on actual volumes, PODS D pricing would be subject to review after one year to determine year two and year three pricing. (3) ZCRI payment terms for all programs for the term of the agreement. (4) Volumes must remain within 20% of the February 15, 2008 Finley document for model years 2009, 2010 and 2011.

Please let me know if this is in line with your expectations and we will begin to formalize an agreement.

Regards,
Tim Glandon
Vice President and General Manager
North American Automotive Operations
*Methode Electronics, Inc.*
111 W. Buchanan Street
Carthage, IL 62321
Ph: 217-357-3941 (ext. 22372)
Fax: 217-357-6265
tim.glandon@methode.com

================================JUNE 18, 2008 LETTER TO TIM GLANDON FROM KEN BETEET
BELOW========================

**From:** Beteet, Kenneth H
**Sent:** Wednesday, June 18, 2008 9:41 AM
**To:** 'Glandon, Tim'
**Cc:** Boyer, Ben; Hoffman, Joyce A; Shively, Mark A; Glass, John R.
**Subject:** RE: Discussion follow up

Tim,

We are eager to receive your framework for a long term agreement to further our discussions.. Hopefully, we will receive something from you this morning as indicated in your note below.

As we continue to work with you on this issue, we need to jointly sustain an uninterrupted supply to our OEM customers. In that regard, we have issued P.O. extensions (together with schedule visibility to Methode) with the caveat

11/4/2008

that pricing will be adjusted on a retroactive basis to July 1, 2008 to reflect our ultimate agreement.

Tim, I know this is contrary to what you have indicated below but please understand that we simply need more time to work through your pricing demands.  In speaking with John Glass and Mark Shively, these demands are inconsistent with our prior discussions with you and they are well beyond justifiable material economics.

Going forward, please work through myself and Joyce Hoffman as your contact points for continuity.  Feel free to contact me at (765) 451-2520 or my cell at (765) 480-5512.

Thanks,


Ken

# EXHIBIT H



**ETHODE ELECTRONICS, INC.**

Corporate Headquarters
7401 West Wilson Avenue
Chicago, IL 60706-4548
708.867.6777 • Fax: 708.867.6999 • 877.316.7700

<u>**Via e-mail and Federal Express**</u>

June 27, 2008

Mr. Kenneth H. Beteet
Delphi B & S
2151 East Lincoln Road
Kokomo, Indiana 46901

Re:  <u>Methode/Delphi</u>

Dear Ken:

I want to thank you and your colleagues for meeting with us in Kokomo on June 23, 2008 to discuss the business relationship between Methode and Delphi regarding the Methode PODS components.

At this time, we wish to again confirm Methode's position that the long-term agreement, which was extended by Delphi buyer Nang Ku on December 20, 2004, governs the supply relationship between Methode and Delphi. We were surprised to hear in our meeting of June 23, 2008 that some members of the Delphi team were unaware of this agreement. This long-term agreement was discussed on numerous occasions with Delphi over the past years. As you know, we notified Delphi in December 2007 that due to material price increases and reduced volumes, Methode would require price increases as part of ongoing production. In that regard, we provided to Delphi new pricing on May 1, 2008 with an effective date of July 1, 2008 consistent with the expiration of our long-term agreement. You stated in our meeting on June 23, 2008 that Delphi rejects that pricing.

Beth Schwarting's statements certainly also surprised us at our meeting this week that Delphi is soon resourcing this business to another supplier. Based on the shortened duration of future production, Methode is hereby providing revised pricing that will be valid for three (3) months from July 1, 2008 to September 30, 2008. The revised pricing reflects accelerated depreciation and amortization, costs associated with early lease termination, material price adders and other costs associated with the shortened duration of manufacturing by Methode.

To ensure an uninterrupted supply of parts, please forward your agreement to the new pricing no later than June 30, 2008 as any parts shipped after that date will be pursuant to the attached new pricing. As we have reiterated since April of 2007, and as not previously disputed by Delphi, there is no supply contract in place after June 30, 2008.

Sincerely,

Timothy R. Glandon
Vice President & General Manager
North American Automotive Operations

TRG/pms
Enclosure

# EXHIBIT A



**ETHODE ELECTRONICS, INC.**

Corporate Headquarters
7401 West Wilson Avenue
Chicago, IL 60706-4548
708.867.6777 • Fax: 708.867-6999 • 877.316.7700

<u>Via e-mail and Federal Express</u>

June 30, 2008

Mr. Kenneth H. Beteet
Delphi E & S
2151 East Lincoln Road
Kokomo, Indiana 46901

Re: <u>Methode/Delphi</u>

Dear Ken:

We are in receipt of the letter you sent on Friday, June 27, 2008. Your letter completely ignores
the record of the business relationship between Methode and Delphi and we were surprised by
the unsupportable positions taken in it.

Methode certainly disagrees with Delphi's position that Delphi and Methode were unable to
reach an agreement on an extension of the August, 2001 Long Term Agreement. In that regard, I
refer you to the exchange of emails in December of 2004 between Nang Ku (Delphi) and myself.
(Copies of those emails are attached for your convenience). You will note that on December 17,
2004, Nang Ku asked Methode to "please confirm acceptance of the following LTA proposal for
contract extension through MY08." On that same day, I responded that "Methode agrees with the
LTA proposal" with some modifications. On December 20, 2004, Mr. Ku responded that Delphi
accepted the modifications to the proposal and requested Methode to issue the rebate check.
Methode did so.

This long term contract extension explicitly applied only through MY08. All of Methode and
Delphi's communications and conduct are consistent with the fact that the contract expires today,
June 30, 2008. We include for your reference a summary of some of those emails below. For
example, since January of 2005, the PODS PO and Discount Matrix referenced in the LTA
extension of December, 2004 specifically stated that:

> "NOTE: The current contract expires on 6-30-2008. Therefore, all discounts listed
> above with a date after 6-30-08 are contingent upon a future contract extension."

That matrix was referenced in the LTA extension and has been used by Delphi on a continual
basis since that time to update purchase orders per the LTA terms. Delphi has never disputed
that footnote in any way.

Methode has sent numerous emails for more than a year explicitly and clearly referencing the expiration of the current contract on June 30, 2008. Delphi communications to Methode are also consistent with that expiration date. On April 17, 2007, Bill Shinske (Methode) emailed Joyce Hoffman and noted that:

> "As you know, the pricing agreement on PODS B ends July 08 just prior to the GMT900 PODS D launching. Methode needs to understand the future of both PODS B and PODS D prior to reviewing any future pricing agreements. Once this information is available and reviewed, potential agreements for the PODS business can be discussed."

Again on October 29, 2007, Methode and Delphi communicated by email regarding the expiration of the contract on June 30, 2008. On that date, in an email to Mark Shively at Delphi, I indicated:

> "Per our previous discussions, Methode agrees to return to MNS-2 terms upon Delphi's emergence from bankruptcy. We will honor these terms through the balance of our current agreement due to expire June 30, 2008. We should continue our discussions soon as to the business relationship for MY2009 and beyond.
>
> I apologize for not being available for the trip to Mexico on November 14th and 15th as I have other commitments that I cannot change. Hopefully, we can get together in Kokomo or Carthage soon to discuss the future. I could be available on November 16th, 20th, 21st or 26th through 28th. Please let me know if any of these dates work for you."

Mr. Shively responded that same date and did not in any way dispute the expiration of the contract but merely stated that:

> "Thanks for the note – and I'll talk with John about getting our schedules together – John will be glad he doesn't have to travel that week."

On May 1, 2008, Methode provided new pricing to Delphi specifically because the contract was due to expire on June 30, 2008. In fact, as late as June 13, 2008, Delphi was not disputing the expiration of the contract. On that date, Joyce Hoffman emailed me and stated:

> "As a follow up to my voice message, I am requesting an extension on the current contracts while you and John and Mark continue negotiations. At the conclusion of negotiations, pricing can be retroed if that is what is required. Please let me know."

In fact, Delphi raised the issue of the existence of the long-term agreement for the first time in the meeting on June 24, 2008.

Finally, Methode disagrees that Methode did not object to or protest the terms of the purchase orders until this month. In fact, on November 26, 2007, in response to a new footnote added by Delphi on certain purchase orders, Dan Andrus (Methode) emailed Joyce Hoffman that:

> "We see that on November 1, 2007 you added a new footnote to purchase orders referencing a proposed extension of the term/expiration date. To the extent the footnote attempts to unilaterally bind Methode to prices after that date, Methode again states that we do not have an agreement after June 30, 2008. Per our contract and as we stated in our email of April 17, 2007 and repeated in other emails and presentations to Delphi, we do not have an agreement in place after June 30, 2008."

Delphi never responded to that email but did remove the footnote from subsequent PO's.

As you know, in our meeting on June 24, 2008, a Delphi vice-president indicated that Delphi intends to resource the Methode business. In response to that statement and higher expected costs as a result of this resourcing intent, Methode provided new pricing on June 27. Your responsive letter now includes Delphi's commitment to not resource Methode for at least one year. Although we have the right to not ship any parts after today, Methode is willing to ship parts to Delphi at the prices provided in our May 1, 2008 email as an accommodation to Delphi. Those prices will be effective through September 30, 2008. For shipment of parts thereafter, we require that by August 31, 2008, Delphi and Methode must reach an agreement on a new contract for future supply of parts. Depending upon various factors in the industry including material price increases, fuel prices, projected volumes and Delphi's resourcing plans, Methode's price quotes may be higher than those previously provided.

Please be advised that we need new purchase orders with the May 1, 2008 pricing retroactive to July 1, 2008 with the ZCRI payment terms. To insure an uninterrupted supply of parts, please confirm tomorrow, July 1, 2008, that purchase orders will be updated accordingly. We require new PO's by Friday, July 11.

Finally, we have reviewed with our counsel your contention that our unwillingness to honor expired pricing following the expiration of the LTA somehow violates the bankruptcy laws, and your implicit threat to seek relief from the Bankruptcy Court. We are comfortable that we are fully within our rights now that the LTA has expired and we understand that the bankruptcy laws do not, under the present facts, impose upon suppliers obligations beyond their contractual commitments. Given the record of our relationship, including the extensive unrebutted evidence of repeated notices to Delphi over a period of years that Methode would not commit to any pricing beyond June 30, 2008 absent mutual agreement to a new LTA, we believe that any attempt by Delphi to seek judicial relief would border on the frivolous.

Sincerely,

Timothy R. Glandon
Timothy R. Glandon
Vice President & General Manager

North American Automotive Operations

cc: David M. Freidman

## Glandon, Tim

| | |
|---|---|
| From: | nang.y.ku [nang.y.ku@delphi.com] |
| Sent: | Friday, December 17, 2004 2:38 PM |
| To: | Tim Glandon (E-mail) |
| Cc: | LaLiberte, David P; Pentland, Becky; Chapman, Robert A; Hoffman, Joyce A |
| Subject: | LTA |

Tim,

Please confirm acceptance of the following LTA proposal for contract extension through MY08.

Rebates
December 2004 - $750k
January 2005 - $250k
December 2005 - $350k
January 2006 - $250k
July 2006 - $250k

Discounts for all launches prior to MY05 (June 2004) 0%, 3%, 3%, 3.5%, 3.5%

Discounts for all launches after MY05 (July 2004) 0%, 5%, 5%, 3%

*     Methode will take over warehousing and direct shipping responsibility from LIDC beginning in 2nd Qtr 2005 at $0.06 each bladder.
*     Delphi will award PODS-C bladder business to Methode.  The base price for the KJ is quoted at $5.00 without straps.  The bladders will be subject to cost modeling to validate pricing.
*     Delphi will give Methode consideration for the flex circuit capacitance pads for PODS-C.

*     Delphi's General T&C's will apply.

Upon acceptance, please issue a check for the 2004 rebate payable and to the following address:
Delphi Systems
Electronics & Safety division
World Headquarters
One Corporate Drive
PO Box 9005
M/C CTCLLM
Kokomo, IN 46904

Attn: Becky Pentland
CTC Lower Level East
765-451-0521

Please also send the tracking # for traceability.

Feel free to call with any questions.

Thanks,
Nang


*******************************************************************************

Note: The information contained in this message may be privileged and confidential and

1

thus protected from disclosure. If the reader of this message is not the intended
recipient, or an employee or agent responsible for delivering this message to the intended
recipient, you are hereby notified that any dissemination, distribution or copying of this
communication is strictly prohibited. If you have received this communication in error,
please notify us immediately by replying to the message and deleting it from your
computer. Thank you.

**************************************************************************************

2

## Glandon, Tim

| | |
|---|---|
| **From:** | Glandon, Tim |
| **Sent:** | Friday, December 17, 2004 4:24 PM |
| **To:** | 'nang.y.ku' |
| **Cc:** | LaLiberte, David P; Pentland, Becky; Chapman, Robert A; Hoffman, Joyce A; Reynolds, Tom; Musgrove, Stuart; Shetty, Anil |
| **Subject:** | RE: LTA |

Nang:

Methode agrees with the LTA proposal as you have outlined with the following modifications and conditions.

>> With respect to PODS-C or similar bladder-based PODS device, Delphi will award 100% of the bladder volume to Methode.

>> Prior to the Methode rebate payment in January 2005, all open old commercial issues should be closed. This includes old prototype receivables, tooling PO's and invoices, piece price discrepancies and retro adjustments, as well as obsolete inventory claims.

>> Based on future business volume and other economic conditions, Methode would retain the right to consolidate the Mexico manufacturing facilities into one facility, understanding that we would have to meet all customer requirements in order to do so.

If you concur with these changes, Methode will issue and mail a check on or about December 27, 2004 for the CY2004 rebate. In January, we will put together a spreadsheet detailing all part numbers, SOP dates, and the current and future prices for review prior to the amendment of PO's.

Regards,
Tim Glandon
General Manager
Methode Electronics, Inc.
Automotive Safety Technologies
111 W. Buchanan Street
Carthage, IL 62321-0130
PH: 217-357-3941 (x22372)
FAX: 217-357-6275
E-mail: tim.glandon@methode.com

-----Original Message-----
From: nang.y.ku [mailto:nang.y.ku@delphi.com]
Sent: Friday, December 17, 2004 2:38 PM
To: Tim Glandon (E-mail)
Cc: LaLiberte, David P; Pentland, Becky; Chapman, Robert A; Hoffman, Joyce A
Subject: LTA

Tim,

Please confirm acceptance of the following LTA proposal for contract extension through MY08.

Rebates

1

December 2004 - $750k
January 2005 - $250k
December 2005 - $350k
January 2006 - $250k
July 2006 - $250k

Discounts for all launches prior to MY05 (June 2004) 0%, 3%, 3%, 3.5%, 3.5%

Discounts for all launches after MY05 (July 2004) 0%, 5%, 5%, 3%

*    Methode will take over warehousing and direct shipping responsibility from LIDC
beginning in 2nd Qtr 2005 at $0.06 each bladder.
*    Delphi will award PODS-C bladder business to Methode.  The base price for the KJ is
quoted at $5.00 without straps.  The bladders will be subject to cost modeling to validate
pricing.
*    Delphi will give Methode consideration for the flex circuit capacitance pads for
PODS-C.

*    Delphi's General T&C's will apply.


Upon acceptance, please issue a check for the 2004 rebate payable and to the following
address:
Delphi Systems
Electronics & Safety division
World Headquarters
One Corporate Drive
PO Box 9005
M/C CTCLLM
Kokomo, IN 46904

Attn: Becky Pentland
CTC Lower Level East
765-451-0521

Please also send the tracking # for traceability.

Feel free to call with any questions.

Thanks,
Nang


*******************************************************************************

Note: The information contained in this message may be privileged and confidential and
thus protected from disclosure. If the reader of this message is not the intended
recipient, or an employee or agent responsible for delivering this message to the intended
recipient, you are hereby notified that any dissemination, distribution or copying of this
communication is strictly prohibited. If you have received this communication in error,
please notify us immediately by replying to the message and deleting it from your
computer. Thank you.

*******************************************************************************

2

**Glandon, Tim**

| | |
|---|---|
| **From:** | nang.y.ku [nang.y.ku@delphi.com] |
| **Sent:** | Monday, December 20, 2004 8:55 AM |
| **To:** | Glandon, Tim |
| **Cc:** | LaLiberte, David P; Pentland, Becky; Chapman, Robert A; Hoffman, Joyce A; Reynolds, Tom; Musgrove, Stuart; Shetty, Anil |
| **Subject:** | RE: LTA |

Tim,

Delphi accepts the terms below regarding PODS-C, the open commercial items, and consolidation of your manufacturing sites.  Please coordinate with your corporate office to issue the rebate check so that it arrives no later than Thursday, 12/23.  We will be out of the office for the remainder of the year to observe the Holidays.

Feel free to call me on my cell if there are any questions.

Thanks,
Nang

        -----Original Message-----
        From: Glandon, Tim [mailto:Tim.Glandon@methode.com]
        Sent: Fri 12/17/2004 5:23 PM
        To: Ku, Nang Y
        Cc: LaLiberte, David P; Pentland, Becky; Chapman, Robert A; Hoffman, Joyce A;
Reynolds, Tom; Musgrove, Stuart; Shetty, Anil
        Subject: RE: LTA


        Nang:

        Methode agrees with the LTA proposal as you have outlined with the following
        modifications and conditions.

        >> With respect to PODS-C or similar bladder-based PODS device, Delphi will
        award 100% of the bladder volume to Methode.

        >> Prior to the Methode rebate payment in January 2005, all open old
        commercial issues should be closed. This includes old prototype receivables,
        tooling PO's and invoices, piece price discrepancies and retro adjustments,
        as well as obsolete inventory claims.

        >> Based on future business volume and other economic conditions, Methode
        would retain the right to consolidate the Mexico manufacturing facilities
        into one facility, understanding that we would have to meet all customer
        requirements in order to do so.

        If you concur with these changes, Methode will issue and mail a check on or
        about December 27, 2004 for the CY2004 rebate. In January, we will put
        together a spreadsheet detailing all part numbers, SOP dates, and the
        current and future prices for review prior to the amendment of PO's.

        Regards,
        Tim Glandon
        General Manager
        Methode Electronics, Inc.
        Automotive Safety Technologies
        111 W. Buchanan Street
        Carthage, IL 62321-0130
        PH: 217-357-3941 (x22372)

                                        1

FAX: 217-357-6275
E-mail: tim.glandon@methode.com


-----Original Message-----
From: nang.y.ku [mailto:nang.y.ku@delphi.com]
Sent: Friday, December 17, 2004 2:38 PM
To: Tim Glandon (E-mail)
Cc: LaLiberte, David P; Pentland, Becky; Chapman, Robert A; Hoffman,
Joyce A
Subject: LTA


Tim,

Please confirm acceptance of the following LTA proposal for contract
extension through MY08.

Rebates
December 2004 - $750k
January 2005 - $250k
December 2005 - $350k
January 2006 - $250k
July 2006 - $250k

Discounts for all launches prior to MY05 (June 2004)
0%, 3%, 3%, 3.5%, 3.5%

Discounts for all launches after MY05 (July 2004)
0%, 5%, 5%, 3%

*       Methode will take over warehousing and direct shipping
responsibility from LIDC beginning in 2nd Qtr 2005 at $0.06 each bladder.
*       Delphi will award PODS-C bladder business to Methode.  The base
price for the KJ is quoted at $5.00 without straps.  The bladders will be
subject to cost modeling to validate pricing.
*       Delphi will give Methode consideration for the flex circuit
capacitance pads for PODS-C.

*       Delphi's General T&C's will apply.


Upon acceptance, please issue a check for the 2004 rebate payable and to the
following address:
Delphi Systems
Electronics & Safety division
World Headquarters
One Corporate Drive
PO Box 9005
M/C CTCLLM
Kokomo, IN 46904

Attn: Becky Pentland
CTC Lower Level East
765-451-0521

Please also send the tracking # for traceability.

Feel free to call with any questions.

2

Thanks,
Nang

**************************************************************************
************

Note: The information contained in this message may be privileged and
confidential and thus protected from disclosure. If the reader of this
message is not the intended recipient, or an employee or agent responsible
for delivering this message to the intended recipient, you are hereby
notified that any dissemination, distribution or copying of this
communication is strictly prohibited. If you have received this
communication in error, please notify us immediately by replying to the
message and deleting it from your computer. Thank you.

**************************************************************************
************

****************************************************************************************

Note: The information contained in this message may be privileged and confidential and
thus protected from disclosure. If the reader of this message is not the intended
recipient, or an employee or agent responsible for delivering this message to the intended
recipient, you are hereby notified that any dissemination, distribution or copying of this
communication is strictly prohibited. If you have received this communication in error,
please notify us immediately by replying to the message and deleting it from your
computer. Thank you.

****************************************************************************************

3

# EXHIBIT B

## Pitney Bloomfield Hills

| | |
|---|---|
| **From:** | Glandon, Tim [Tim.Glandon@methode.com] |
| **Sent:** | Thursday, May 01, 2008 4:40 PM |
| **To:** | Shively, Mark A |
| **Cc:** | Boyer, Ben |
| **Subject:** | Pricing |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Red |
| **Attachments:** | PO matrix Delphi July 1 2008.pdf |

Mark:

As we discussed in our December 2007 business review meeting in Kokomo and I re-iterated to you via phone yesterday, Methode requires revised pricing on products shipped after June 30, 2008.

We have spent the last several months working with our supply base in order to minimize the impact of their increases. Unfortunately, with the commodity markets as they are and overall reduced volumes, we continue to experience significant price increases on most components with virtually no long term commitments from suppliers to maintain pricing.

Operationally, Methode has invested heavily in LEAN activities and other cost reduction activities in order to minimize the impact of reduced volumes. Delphi's support of the consolidation plan has minimized this impact as well. However, these efforts alone do not eliminate the need for an adjustment to our overhead rates.

Attached is a pricing spreadsheet. Note that all of the parts currently produced in Reynosa have two prices. The first column is for parts that will still be produced in Reynosa as of July 1, 2008. These parts will receive a price reduction when moved to our Monterrey facility. These prices are reflected in the second pricing column.

Please assure that all purchase orders are updated on or before June 16, 2008 with an effective date of July 1, 2008. Per your request we will provide cost breakdown sheets for all of the attached part numbers by early next week.

Regards,
Tim Glandon
Vice President and General Manager
North American Automotive Operations
*Methode Electronics, Inc.*
111 W. Buchanan Street
Carthage, IL 62321
Ph: 217-357-3941 (ext. 22372)
Fax: 217-357-6265
tim.glandon@methode.com

7/3/2008

# EXHIBIT C

## Glandon, Tim

| | |
|---|---|
| **From:** | Hoffman, Joyce A [joyce.a.hoffman@delphi.com] |
| **Sent:** | Friday, June 13, 2008 12:43 PM |
| **To:** | Glandon, Tim |
| **Subject:** | Contract Extension |

Good Afternoon Tim,

      As a follow up to my voice message, I am requesting an extension on the current contracts while you and John and Mark continue negotiations.
At the conclusion of negotiations, pricing can be retroed if that is what is required. Please let me know. Thank you, have a great weekend and Happy Father's Day.

Regards,
Joyce

**"All Delphi Documents are Delphi proprietary and as such consider this document and those attached as Delphi Confidential"**
Joyce A. Hoffman, CPPM
Sr. Buyer
Delphi E&S
2151 E. Lincoln Rd.
Kokomo, IN 46901
Phone: 765-451-0732
eFax: 866-897-0135
Email: joyce.a.hoffman@delphi.com


\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Note: If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribu or copying of this communication is strictly prohibited. If you have received this communication in error please notify us immediately by replying to the message and deleting it from your computer. Thank you.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

# EXHIBIT D

## Glandon, Tim

| | |
|---|---|
| **From:** | Beteet, Kenneth H [kenneth.h.beteet@delphi.com] |
| **Sent:** | Wednesday, June 18, 2008 8:41 AM |
| **To:** | Glandon, Tim |
| **Cc:** | Boyer, Ben; Hoffman, Joyce A; Shively, Mark A; Glass, John R. |
| **Subject:** | RE: Discussion follow up |

Tim,

We are eager to receive your framework for a long
term agreement to further our discussions..
Hopefully, we will receive something from this
morning as indicated in your note below.

As we continue to work with you on this issue, we
need to jointly sustain an uninterrupted supply to our
OEM customers. In that regard, we have issued P.O.
extensions (together with schedule visibility to
Methode) with the caveat that pricing will be adjusted
on a retroactive basis to July 1, 2008 to reflect our
ultimate agreement.

Tim, I know this is contrary to what you have
indicated below but please understand that we simply
need more time to work through your pricing
demands. In speaking with John Glass and Mark
Shively, these demands are inconsistent with our
prior discussions with you and they are well beyond
justifiable material economics.

Going forward, please work through myself and
Joyce Hoffman as your contact points for continuity.
Feel free to contact me at (765) 451-2520 or my cell
at (765) 480-5512.

Thanks,


Ken

---

**From:** Glandon, Tim [mailto:Tim.Glandon@methode.com]
**Sent:** Tuesday, June 17, 2008 5:30 PM
**To:** Shively, Mark A; Beteet, Kenneth H; Glass, John R.
**Cc:** Boyer, Ben; Hoffman, Joyce A
**Subject:** Discussion follow up

Gentlemen:

During our discussion on June 6, 2008, we agreed to provide you with our thoughts on the framework of a three-year
agreement. I hope to have an outline to you tomorrow if not by the end of the day today.

Also during our meeting I reiterated Methode's position that while we would entertain other options to meet our financial needs, we must remain firm on the need for new pricing as presented in my email of May 1, 2008. Based on this email, new purchase orders were to be received by Methode on or before June 16, 2008 with an effective date of July 1, 2008. Unfortunately, to date we have not received the new purchase orders. On June 13, we received Delphi's request for an extension on the date for issuing new purchase orders.  As I indicated in my voice mail to Joyce Hoffman on that same day, Methode is not granting an extension of any purchase order but rather we need new purchase orders. Please note that the terms on these new purchase orders must reflect continuation of our current payment terms of ZCRI. The purchase order term should be one year.

Please call me as soon as possible to advise when we will receive these new purchase orders.

Regards,
Tim Glandon
Vice President and General Manager
North American Automotive Operations
*Methode Electronics, Inc.*
111 W. Buchanan Street
Carthage, IL 62321
Ph: 217-357-3941 (ext. 22372)
Fax: 217-357-6265
tim.glandon@methode.com

*********************************************************************************

Note: If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the message and deleting it from your computer. Thank you.

*********************************************************************************

11/4/2008

# EXHIBIT E

## Glandon, Tim

| | |
|---|---|
| **From:** | Glandon, Tim |
| **Sent:** | Wednesday, June 18, 2008 2:54 PM |
| **To:** | 'Shively, Mark A'; 'Beteet, Kenneth H'; 'Glass, John R.'; 'Hoffman, Joyce A' |
| **Cc:** | Boyer, Ben |
| **Subject:** | Three Year Proposal |

All:

As promised, below is an outline of what might work for Methode in terms of a three-year pricing plan for PODS.

Based on pricing to be effective July 1, 2008 and barring any unforeseen issues, Methode would agree to maintain these PODS B prices for a three-year period with the following assumptions: (1) Methode would be placed on a material adder program for PODS B. The base line for the material prices would be those reflected on the cost breakdown sheets provided by Methode in May. On a quarterly basis any increases or surcharges would be passed along to Delphi for reimbursement within 30 days. (2) Based on actual volumes, PODS D pricing would be subject to review after one year to determine year two and year three pricing. (3) ZCRI payment terms for all programs for the term of the agreement. (4) Volumes must remain within 20% of the February 15, 2008 Finley document for model years 2009, 2010 and 2011.

Please let me know if this is in line with your expectations and we will begin to formalize an agreement.

Regards,
Tim Glandon
Vice President and General Manager
North American Automotive Operations
***Methode Electronics, Inc.***
111 W. Buchanan Street
Carthage, IL 62321
Ph: 217-357-3941 (ext. 22372)
Fax: 217-357-6265
tim.glandon@methode.com

# EXHIBIT F

## Glandon, Tim

| | |
|---|---|
| **From:** | Beteet, Kenneth H [kenneth.h.beteet@delphi.com] |
| **Sent:** | Thursday, June 19, 2008 7:03 AM |
| **To:** | Glandon, Tim |
| **Cc:** | Boyer, Ben; Reynolds, Tom; Shively, Mark A; Glass, John R.; Hoffman, Joyce A |
| **Subject:** | Re: Three Year Proposal_Methode 6_19_08 Receipt Acknowledgement |

Tim,

Thanks for your long term pricing outline submitted yesterday. We will review your recommendation in anticipation of further discussion during our meeting in Kokomo, IN scheduled for June 24. 2008. In the mean time, your acceptance of our request for an extension as stated in my letter to you yesterday (see copy below) would be much appreciated. Our OEM customers will expect us to jointly maintain an uninterrupted flow of supply as we work through this pricing issue. The requested extension would accomplish this objective.

Thanks,

Ken

---

**From:** Glandon, Tim [mailto:Tim.Glandon@methode.com]
**Sent:** Wednesday, June 18, 2008 3:54 PM
**To:** Shively, Mark A; Beteet, Kenneth H; Glass, John R.; Hoffman, Joyce A
**Cc:** Boyer, Ben
**Subject:** Three Year Proposal

All:

As promised, below is an outline of what might work for Methode in terms of a three-year pricing plan for PODS.

Based on pricing to be effective July 1, 2008 and barring any unforeseen issues, Methode would agree to maintain these PODS B prices for a three-year period with the following assumptions: (1) Methode would be placed on a material adder program for PODS B. The base line for the material prices would be those reflected on the cost breakdown sheets provided by Methode in May. On a quarterly basis any increases or surcharges would be passed along to Delphi for reimbursement within 30 days. (2) Based on actual volumes, PODS D pricing would be subject to review after one year to determine year two and year three pricing. (3) ZCRI payment terms for all programs for the term of the agreement. (4) Volumes must remain within 20% of the February 15, 2008 Finley

document for model years 2009, 2010 and 2011.

Please let me know if this is in line with your expectations and we will begin to formalize an agreement.

Regards,
Tim Glandon
Vice President and General Manager
North American Automotive Operations
**Methode Electronics, Inc.**
111 W. Buchanan Street
Carthage, IL 62321
Ph: 217-357-3941 (ext. 22372)
Fax: 217-357-6265
tim.glandon@methode.com

=================================JUNE 18, 2008 LETTER TO TIM GLANDON FROM KEN BETEET
BELOW=======================

**From:** Beteet, Kenneth H
**Sent:** Wednesday, June 18, 2008 9:41 AM
**To:** 'Glandon, Tim'
**Cc:** Boyer, Ben; Hoffman, Joyce A; Shively, Mark A; Glass, John R.
**Subject:** RE: Discussion follow up

Tim,

We are eager to receive your framework for a long term agreement to further our discussions.. Hopefully, we will receive something from you this morning as indicated in your note below.

As we continue to work with you on this issue, we need to jointly sustain an uninterrupted supply to our OEM customers. In that regard, we have issued P.O. extensions (together with schedule visibility to Methode) with the caveat that pricing will be adjusted on a retroactive basis to July 1, 2008 to reflect our ultimate agreement.

Tim, I know this is contrary to what you have indicated below but please understand that we simply need more time to work through your pricing demands. In speaking with John Glass and Mark Shively, these demands are inconsistent with our prior discussions with you and they are well beyond justifiable material economics.

Going forward, please work through myself and Joyce Hoffman as your contact points for continuity. Feel free to contact me at (765)

451-2520 or my cell at (765) 480-5512.

Thanks,

Ken

---

# EXHIBIT G

## Glandon, Tim

| | |
|---|---|
| **From:** | Glandon, Tim |
| **Sent:** | Thursday, June 19, 2008 5:20 PM |
| **To:** | 'Beteet, Kenneth H' |
| **Cc:** | Boyer, Ben; Reynolds, Tom; Shively, Mark A; Glass, John R.; Hoffman, Joyce A |

**Subject:** RE: Three Year Proposal_Methode 6_19_08 Receipt Acknowledgement

Ken:

We certainly understand the need to protect customer deliveries. However, Methode believes this is best accomplished by providing us with new purchase orders. In order to provide additional time for Delphi to issue new purchase orders, we will agree to extend the date by which Methode must receive new purchase orders to June 27, 2008. Note again that the purchase orders must be for a one-year term with ZCRI payment terms. The effective date should be July 1, 2008.

Regards,
Tim

---

**From:** Beteet, Kenneth H [mailto:kenneth.h.beteet@delphi.com]
**Sent:** Thursday, June 19, 2008 7:03 AM
**To:** Glandon, Tim
**Cc:** Boyer, Ben; Reynolds, Tom; Shively, Mark A; Glass, John R.; Hoffman, Joyce A
**Subject:** Re: Three Year Proposal_Methode 6_19_08 Receipt Acknowledgement

Tim,

Thanks for your long term pricing outline submitted yesterday. We will review your recommendation in anticipation of further discussion during our meeting in Kokomo, IN scheduled for June 24. 2008. In the mean time, your acceptance of our request for an extension as stated in my letter to you yesterday (see copy below) would be much appreciated. Our OEM customers will expect us to jointly maintain an uninterrupted flow of supply as we work through this pricing issue. The requested extension would accomplish this objective.

Thanks,

Ken

11/4/2008

**From:** Glandon, Tim [mailto:Tim.Glandon@methode.com]
**Sent:** Wednesday, June 18, 2008 3:54 PM
**To:** Shively, Mark A; Beteet, Kenneth H; Glass, John R.; Hoffman, Joyce A
**Cc:** Boyer, Ben
**Subject:** Three Year Proposal

All:

As promised, below is an outline of what might work for Methode in terms of a three-year pricing plan for PODS.

Based on pricing to be effective July 1, 2008 and barring any unforeseen issues, Methode would agree to maintain these PODS B prices for a three-year period with the following assumptions: (1) Methode would be placed on a material adder program for PODS B. The base line for the material prices would be those reflected on the cost breakdown sheets provided by Methode in May. On a quarterly basis any increases or surcharges would be passed along to Delphi for reimbursement within 30 days. (2) Based on actual volumes, PODS D pricing would be subject to review after one year to determine year two and year three pricing. (3) ZCRI payment terms for all programs for the term of the agreement. (4) Volumes must remain within 20% of the February 15, 2008 Finley document for model years 2009, 2010 and 2011.

Please let me know if this is in line with your expectations and we will begin to formalize an agreement.

Regards,
Tim Glandon
Vice President and General Manager
North American Automotive Operations
**Methode Electronics, Inc.**
111 W. Buchanan Street
Carthage, IL 62321
Ph: 217-357-3941 (ext. 22372)
Fax: 217-357-6265
tim.glandon@methode.com

==================================JUNE 18, 2008 LETTER TO TIM GLANDON FROM KEN BETEET
BELOW=======================

**From:** Beteet, Kenneth H
**Sent:** Wednesday, June 18, 2008 9:41 AM
**To:** 'Glandon, Tim'
**Cc:** Boyer, Ben; Hoffman, Joyce A; Shively, Mark A; Glass, John R.
**Subject:** RE: Discussion follow up

Tim,

We are eager to receive your framework for a long term agreement to further our discussions.. Hopefully, we will receive something from you this morning as indicated in your note below.

As we continue to work with you on this issue, we need to jointly sustain an uninterrupted supply to our OEM customers. In that regard, we have issued P.O. extensions (together with schedule visibility to Methode) with the caveat

that pricing will be adjusted on a retroactive
basis to July 1, 2008 to reflect our ultimate
agreement.

Tim, I know this is contrary to what you have
indicated below but please understand that we
simply need more time to work through your
pricing demands.  In speaking with John Glass
and Mark Shively, these demands are
inconsistent with our prior discussions with you
and they are well beyond justifiable material
economics.

Going forward, please work through myself and
Joyce Hoffman as your contact points for
continuity.  Feel free to contact me at (765)
451-2520 or my cell at (765) 480-5512.

Thanks,

Ken

---

# EXHIBIT H



# METHODE ELECTRONICS, INC.

**Corporate Headquarters**
7401 West Wilson Avenue
Chicago, IL 60706-4548
708.867.6777 • Fax: 708.867.6999 • 877.316.7700

<u>Via e-mail and Federal Express</u>

June 27, 2008

Mr. Kenneth H. Beteet
Delphi B & S
2151 East Lincoln Road
Kokomo, Indiana 46901

Re: <u>Methode/Delphi</u>

Dear Ken:

I want to thank you and your colleagues for meeting with us in Kokomo on June 23, 2008 to discuss the business relationship between Methode and Delphi regarding the Methode PODS components.

At this time, we wish to again confirm Methode's position that the long-term agreement, which was extended by Delphi buyer Nang Ku on December 20, 2004, governs the supply relationship between Methode and Delphi. We were surprised to hear in our meeting of June 23, 2008 that some members of the Delphi team were unaware of this agreement. This long-term agreement was discussed on numerous occasions with Delphi over the past years. As you know, we notified Delphi in December 2007 that due to material price increases and reduced volumes, Methode would require price increases as part of ongoing production. In that regard, we provided to Delphi new pricing on May 1, 2008 with an effective date of July 1, 2008 consistent with the expiration of our long-term agreement. You stated in our meeting on June 23, 2008 that Delphi rejects that pricing.

Beth Schwarting's statements certainly also surprised us at our meeting this week that Delphi is soon resourcing this business to another supplier. Based on the shortened duration of future production, Methode is hereby providing revised pricing that will be valid for three (3) months from July 1, 2008 to September 30, 2008. The revised pricing reflects accelerated depreciation and amortization, costs associated with early lease termination, material price adders and other costs associated with the shortened duration of manufacturing by Methode.

To ensure an uninterrupted supply of parts, please forward your agreement to the new pricing no later than June 30, 2008 as any parts shipped after that date will be pursuant to the attached new pricing. As we have reiterated since April of 2007, and as not previously disputed by Delphi, there is no supply contract in place after June 30, 2008.

Sincerely,

Timothy R. Glandon
Vice President & General Manager
North American Automotive Operations

TRG/pms
Enclosure

# EXHIBIT I

# DELPHI

Electronics & Safety

<u>Via E-Mail and UPS</u>

June 27, 2008

Mr. Timothy R. Glandon
Vice President & General Manager
North American Automotive Operations
111 W. Buchanan Street
P.O. Box 130
Carthage, IL 62321-0130

Re:   **Methode/Delphi**

Dear Tim,

As you should recall, Delphi and Methode were unable during late 2004 and 2005 to reach agreement on a definitive draft for a new Long Term Agreement to replace the August 1, 2001 Long Term Contract that expired in 2004. However, assume, for purposes of argument only, that the draft version of our Long Term Contract became operational as to those commercial provisions on which the parties were then in agreement, both it and the original August 1, 2001 LTC explicitly noted and anticipated that Delphi Purchase Orders would be issued as part of and pursuant thereto. And, in fact those Delphi Purchase Orders providing the effective term of performance were issued and accepted by and performed against by Methode. The Delphi Purchase Orders and the Delphi General Terms and Conditions incorporated therein, and their subsequent versions provide the effective contract term expiration dates. The Delphi Purchase Orders as subsequently issued superseded the earlier original August 1, 2001 LTC and any draft LTC of 2005 as to expiration dates. During 2005, 2006, 2007 and until this month of 2008, Methode continued to evidence its acceptance of Delphi Purchase Orders, and the effective expiration dates thereon, by its performance against them. Until this June, no objection or protest as to the effective term of our Purchase Orders was made by Methode. With a few minor exceptions, the current effective term of our Purchase Orders run at a minimum through the remainder of 2008CY and beyond.

Thus, Delphi takes strong exception to Methode's assertion that the existing contracts expire as of July 1st, and to its demands to unilaterally impose dramatic price increases, ranging from 30 to 50% or more, upon the current unexpired, valid Purchase Order Contracts. You are also mistaken that no one from Delphi has disputed a July 1st expiration, as you contend. Rather, no reason to question, let alone dispute, existed until your most recent demands because the Purchase Order Contracts clearly provide on their face the effective expirations, which are not until the end of 2008 and beyond, depending on the PO numbers and products listed thereon.

Delphi has taken exception to Methode's demands due, in part, to your refusal to provide sufficient cost data relating to raw materials or other increased costs to substantiate the magnitude of price increases you seek. Additionally, Methode refused to engage in any good faith bargaining or discussions of costs substantiating its demands in our last meeting.

Also, contrary to what is portrayed in your letter, Delphi has no intent to immediately resource our existing contracts with Methode within the next ninety days as you indicate, nor in the immediate future thereafter. Rather, given that these are safety related products requiring extensive validation and OEM approvals, re-sourcing before a July 1, 2009 date is neither realistic nor probable should such a decision be necessitated by Methode's actions.

Methode in its most recent communications with Delphi has made clear that supply will be interrupted unless Delphi concedes to its pricing demands even as to unexpired Purchase Order Contracts. Today's letter states that, "To ensure an uninterrupted supply of parts ..." after June 30th that Delphi must agree to the revised price increases demanded. In effect, Methode threatens to stop shipment to Delphi in order to extract the concessions it seeks.

One Corporate Center  PO Box 9005  Kokomo, IN  46904-9005  USA

Although Delphi sincerely believes that the existing Delphi Purchase Orders control and govern our contractual relationship, any stop shipment or interruption of supply would have catastrophic and irreparable consequences for Delphi, and for our OEM customers using your products incorporated into our Delphi safety systems. The harm from such supply cut offs and ensuing production interruptions would be such that money damages could not adequately compensate. So, in the interest of maintaining an uninterrupted supply of your products for our customers, we feel that we have no other option but to accept under protest the price increases presented to Delphi this past Tuesday, during our meeting with Methode. We sincerely hope that you will reconsider straddling us with these additional financial burdens, because as you well know Delphi cannot pass on or obtain similar accommodations from our customers. Given the current lack of alternatives and in the interest of mitigating our losses, we are making this concession under duress and reserve all rights and remedies that we may otherwise have under our Purchase Order Contracts with Methode, as well as under the original August 1, 2001 LTC and the 2005 "agreement" you contend extended the original LTC.

To that point, while Delphi would prefer to resolve this dispute without resort to legal proceedings and remains open to good faith discussions that do not amount to unilateral imposition of price increases; we believe that your demands may well require by law a report to the U.S. Bankruptcy Court in Manhattan. As you are aware, the Bankruptcy Court issued an automatic stay of certain actions by creditors / suppliers upon the filing of Delphi's Chapter 11 petition. Our initial but ongoing review indicates that the Purchase Orders upon which you seek to unilaterally impose price increases were in existence prior to the October 8, 2005 filing date with the current expiration dates as are now shown thereon. As such, Methode's attempt to impose price increases or cease supply before the Purchase Order expiration dates is an exercise of dominion and control over property of the Debtor's estate without first receiving relief from the Bankruptcy Court as to its stay order.

As such, an attempt to exercise dominion and control over an asset of the Debtor's Estate is a violation of 11 U.S.C. 362(a)(3). A violation of the stay order is punishable in a Show Cause Hearing before the Bankruptcy Court as a contempt of court and may result in an award of treble damages to the Debtor in addition to an award of all costs and attorneys fees. If, as we believe, the Purchase Orders involved in this matter are property of the Estate, as appears the case, Delphi would be required to report such to the Bankruptcy Court. Such a report would not be discretionary on Delphi's part. We respectfully request therefore that you give these facts your serious consideration and that you withdraw and postpone any threat of interrupted supply after June 30th and give assurance of continuing supply, with both parties reserving all existing rights and remedies. This would allow for a more comprehensive mutual review and discussion as to the effective and controlling terms and expiration dates without having to resort to legal proceedings..

Respectfully,

*Kenneth H. Beteet*
Kenneth H. Beteet
Senior Product Line Purchasing Manager
Safety Electronics – Safety PBU

# EXHIBIT J

## Glandon, Tim

| | |
|---|---|
| **From:** | Beteet, Kenneth H [kenneth.h.beteet@delphi.com] |
| **Sent:** | Friday, June 27, 2008 9:39 AM |
| **To:** | Glandon, Tim |
| **Cc:** | Glass, John R.; Schwarting, Beth M; Hamashuk, Tim M; Shively, Mark A; Reynolds, Tom; Griffin, Jerry L; Boyer, Ben |
| **Subject:** | RE: Summary of 6/24/08 meeting between Methode and Delphi |
| **Importance:** | High |
| **Sensitivity:** | Confidential |

Tim,

As per your request below.

Ken

**From:** Glandon, Tim [mailto:Tim.Glandon@methode.com]
**Sent:** Friday, June 27, 2008 9:25 AM
**To:** Beteet, Kenneth H
**Subject:** email

Ken:

I noticed that you sent an email to me yesterday. Unfortunately, it is caught up in my spam folder and I cannot release it.

Please resend to Tom Reynolds, Ben Boyer and I. Hopefully one of us will receive it.

Regards,
Tim

**From:** Beteet, Kenneth H
**Sent:** Thursday, June 26, 2008 4:20 PM
**To:** 'tim.glandon@methode.com'
**Cc:** Glass, John R.; Schwarting, Beth M; Hamashuk, Tim M; Shively, Mark A; 'treynolds@methode.com'; Griffin, Jerry L
**Subject:** Summary of 6/24/08 meeting between Methode and Delphi

Tim,

As a follow up to our meeting of June 24, 2008, the following summarizes our position on your price increase demands:

1. Delphi will not accept the price increases from Methode as set forth in your letter of May 1, 2008 from Tim Glandon
2. We expect Methode to continue with all shipments on an uninterrupted basis..
3. For continuity of communications going forward, each party should designate a single point of contact for all commercial issues.  For Delphi, Ken Beteet will be the single point of contact for such communications. .  All other technical, program and scheduling matters shall continue under normal channels unless otherwise notified.

11/4/2008

If you have questions or comments you may contact me 765-451-2520.

Regards,

Ken

---

**From:** Glandon, Tim [mailto:Tim.Glandon@methode.com]
**Sent:** Thursday, June 19, 2008 6:20 PM
**To:** Beteet, Kenneth H
**Cc:** Boyer, Ben; Reynolds, Tom; Shively, Mark A; Glass, John R.; Hoffman, Joyce A
**Subject:** RE: Three Year Proposal_Methode 6_19_08 Receipt Acknowledgement

Ken:

We certainly understand the need to protect customer deliveries. However, Methode believes this is best
accomplished by providing us with new purchase orders. In order to provide additional time for Delphi to issue
new purchase orders, we will agree to extend the date by which Methode must receive new purchase orders to
June 27, 2008. Note again that the purchase orders must be for a one-year term with ZCRI payment terms. The
effective date should be July 1, 2008.

Regards,
Tim

---

**From:** Beteet, Kenneth H [mailto:kenneth.h.beteet@delphi.com]
**Sent:** Thursday, June 19, 2008 7:03 AM
**To:** Glandon, Tim
**Cc:** Boyer, Ben; Reynolds, Tom; Shively, Mark A; Glass, John R.; Hoffman, Joyce A
**Subject:** Re: Three Year Proposal_Methode 6_19_08 Receipt Acknowledgement

Tim,

Thanks for your long term pricing outline
submitted yesterday.  We will review
your recommendation in anticipation of
further discussion during our meeting in
Kokomo, IN scheduled for June 24.
2008.  In the mean time, your
acceptance of our request for an
extension as stated in my letter to you
yesterday (see copy below) would be
much appreciated.  Our OEM customers
will expect us to jointly maintain an
uninterrupted flow of supply as we work
through this pricing issue.  The
requested extension would accomplish
this objective.

Thanks,

Ken

---

**From:** Glandon, Tim [mailto:Tim.Glandon@methode.com]
**Sent:** Wednesday, June 18, 2008 3:54 PM
**To:** Shively, Mark A; Beteet, Kenneth H; Glass, John R.; Hoffman, Joyce A
**Cc:** Boyer, Ben
**Subject:** Three Year Proposal

All:

As promised, below is an outline of what might work for Methode in terms of a three-year pricing plan for PODS.

Based on pricing to be effective July 1, 2008 and barring any unforeseen issues, Methode would agree to maintain these PODS B prices for a three-year period with the following assumptions: (1) Methode would be placed on a material adder program for PODS B. The base line for the material prices would be those reflected on the cost breakdown sheets provided by Methode in May. On a quarterly basis any increases or surcharges would be passed along to Delphi for reimbursement within 30 days. (2) Based on actual volumes, PODS D pricing would be subject to review after one year to determine year two and year three pricing. (3) ZCRI payment terms for all programs for the term of the agreement. (4) Volumes must remain within 20% of the February 15, 2008 Finley document for model years 2009, 2010 and 2011.

Please let me know if this is in line with your expectations and we will begin to formalize an agreement.

Regards,
Tim Glandon
Vice President and General Manager
North American Automotive Operations
***Methode Electronics, Inc.***
111 W. Buchanan Street
Carthage, IL 62321
Ph: 217-357-3941 (ext. 22372)
Fax: 217-357-6265
tim.glandon@methode.com

---

**From:** Beteet, Kenneth H
**Sent:** Wednesday, June 18, 2008 9:41 AM
**To:** 'Glandon, Tim'
**Cc:** Boyer, Ben; Hoffman, Joyce A; Shively, Mark A; Glass, John R.
**Subject:** RE: Discussion follow up

Tim,

We are eager to receive your framework for a long term agreement to further our discussions.. Hopefully, we will receive something from you this morning as indicated in your note below.

As we continue to work with you on this issue, we need to jointly sustain an uninterrupted supply to our OEM customers. In that regard,

we have issued P.O. extensions (together with schedule visibility to Methode) with the caveat that pricing will be adjusted on a retroactive basis to July 1, 2008 to reflect our ultimate agreement.

Tim, I know this is contrary to what you have indicated below but please understand that we simply need more time to work through your pricing demands. In speaking with John Glass and Mark Shively, these demands are inconsistent with our prior discussions with you and they are well beyond justifiable material economics.

Going forward, please work through myself and Joyce Hoffman as your contact points for continuity. Feel free to contact me at (765) 451-2520 or my cell at (765) 480-5512.

Thanks,

Ken

11/4/2008

# EXHIBIT K

**Glandon, Tim**

| | |
|---|---|
| **From:** | Boyer, Ben |
| **Sent:** | Tuesday, July 08, 2008 9:12 AM |
| **To:** | Glandon, Tim |
| **Subject:** | FW: Print Request |
| **Attachments:** | Methode Summary 3.xls |

FYI-

**From:** Andrus, Dan
**Sent:** Tuesday, July 08, 2008 8:31 AM
**To:** Boyer, Ben
**Subject:** FW: Print Request


Dan Andrus
Account Manager

Methode Electronics, Inc.
24585 Evergreen Rd.
Southfield, MI 48075
Work: 248-603-2198
Mobile:248-225-0187

**From:** Hoffman, Joyce A [mailto:joyce.a.hoffman@delphi.com]
**Sent:** Tuesday, July 08, 2008 9:30 AM
**To:** Andrus, Dan
**Subject:** Print Request

Dan,
        Please forward the weld tooling and final assembly prints for the attached list of parts. If you have any
questions, please call me. Thank you.

Regards,
Joyce


**"All Delphi Documents are Delphi proprietary and as such consider this document and those
attached as Delphi Confidential"**
Joyce A. Hoffman, CPPM
Sr. Buyer
Delphi E&S
2151 E. Lincoln Rd.
Kokomo, IN 46901
Phone: 765-451-0732
eFax: 866-897-0135
Email: joyce.a.hoffman@delphi.com

11/4/2008

# EXHIBIT L



**METHODE ELECTRONICS, INC.**

Corporate Headquarters
7401 West Wilson Avenue
Chicago, IL 60706-4548
708.867.6777 • Fax: 708.867.6999 • 877.316.7700

<u>Via e-mail</u>

July 21, 2008

Ms. Joyce A. Hoffman
Delphi E & S
2151 E. Lincoln Road
Kokomo, IN 46901

**Re: Tooling Drawings**

Dear Joyce:

We received your July 8, 2008 email requesting copies of weld tooling and final assembly prints for certain bladder assemblies. Before we can consider this request, it is important to note that all of the drawings requested relate to tooling used to manufacture products that are protected by Methode patents. We would like to ensure in advance that neither the drawings nor the tooling will be used by Delphi or provided to any third parties to manufacture products infringing upon Methode's patents. This includes making the drawings or tooling available in a manner which induces any person or company to infringe upon Methode's patents.

If you can clarify the reason for the request, and how Delphi intends to use the drawings, we can discuss how to best proceed.

Sincerely,

Timothy R. Glandon
Vice President & General Manager
North American Automotive Operations

# EXHIBIT M


Automotive Systems

July 24, 2008

Dear Tim,

As stated on July 8, 2008 Delphi is formally requesting copies of all weld tooling prints and final assembly drawing prints for Delphi part numbers manufactured by your organization using tooling paid for and owned Delphi. During the sourcing process for said part numbers, Methode received payment from Delphi to design and manufacture tooling used in conjunction with the manufacturing of production parts for Delphi bladder assembly designs. Delphi owns the drawings for the tooling under the terms of the purchase orders. The print part numbers are listed in the attached spreadsheet. Note that this spreadsheet has been revised since my July 8 email and it contains a more comprehensive list of parts.

Also, your letter mentions Methode patents. Can you please identify which patents you are referring to?

Your prompt attention in fulfilling my request pursuant to the terms and conditions of Delphi's tooling purchase orders is greatly appreciated.

Sincerely,

Joyce Hoffman
Senior Buyer – Delphi Corporation

Energy and Engine Management Systems
2900 S. Scatterfield Road        PO Box 2439            Anderson, IN 46018-2439

| Product | Delphi P/N |
|---|---|
|  |  |
| Hyundai BH | 28031178 |
| Porsche Panamera | 28087586 |
| Toyota Corolla (Dom) | 28091941 |
| Toyota Corolla (Exp) | 28091942 |
| WS212 | 28092602 |
| AC207 | 28092604 |
| Mercedes W221 | 28108070 |
| Kia HM | 28068994 |
| P221 | 12219220 |
| Nissan UL | 12227259 |
| X204 | 12228039 |
| Land Rover T5 L319 | 12228239 |
| Ford EN | 12231710 |
| Nissan MF CMF | 12233189 |
| Hyundai GK | 12241109 |
| Hyundai TG | 12241679 |
| Hyundai CM | 12241699 |
| Subaru 00X | 12245219 |
| Jaguar X404 | 21000280 |
| Volvo P2 C3 2005 | 21000351 |
| Mercedes CL 203 | 21000704 |
| Subaru Impreza | 21000739 |
| Nissan HS L32H | 28002804 |
| GMT001 | 28003555 |
| GMT 201 | 28005599 |
| Saab 442 2006 | 28005945 |
| GMT 345 (new p/n) | 28009245 |
| Saab 606 | 28011221 |
| Ford S-197 | 28011252 |
| Saab 440 | 28012474 |
| U-204 | 28014609 |
| GMT360 | 28016013 |
| Bentley 614/615 | 28016811 |
| WS204 | 28017108 |
| R171 | 28017110 |
| Mercedes R230 | 28017111 |
| Lexus 424L | 28017740 |
| Lexus 250L | 28017741 |
| Lexus 221L | 28017742 |
| Y286Volvo 2004 | 28019044 |
| Hyundai JM (New Design) | 28022794 |
| GMX001 | 28026953 |
| Bentley BY821 | 28029716 |
| Bentley BY825 | 28031746 |
| Viper Pods C | 28032562 |
| C170 (new p/n) | 28033387 |
| Crossfire | 28035699 |
| Tacoma/Tundra | 28037858 |

| | |
|---|---|
| Ford D219 | 28039566 |
| VW PQ35 D1 | 28041348 |
| VW Touareg | 28041349 |
| VW Jetta | 28041350 |
| VW Beetle | 28041351 |
| GMX222/272 | 28041706 |
| Nissan X11C | 28041709 |
| Land Rover L322 | 28042012 |
| Mercedes McLaren | 28042014 |
| GMT355 | 28042022 |
| C170 2008 | 28042522 |
| Audi B6/B7 | 28043051 |
| Nissan XX07 | 28044078 |
| GMX211/231 | 28044079 |
| Lexus 041L | 28046641 |
| Audi D3 | 28048022 |
| Kia KM | 28055834 |
| Nissan AL07 | 28056495 |
| GMX215/245 | 28056999 |
| Ford P150 | 28057939 |
| GMT921 (HC1) | 28058693 |
| GMT900 | 28070165 |
| Subaru ZR1 | 28071459 |
| Mercedes C216 | 28076914 |
| Mercedes C216 | 28076915 |
| R171 | 28079716 |
| Volvo P2 C1_6 | 28080155 |
| Jaguar X358 | 28080781 |
| Mercedes WS203 | 28086715 |
| Mercedes AC209 | 28086716 |

Replaces Hyundia VI

| | |
|---|---|
| Toyota Scion 145L | 28101880 |
| Lexus 215L/220L | 28109991 |
| Mercedes Smart 451 | 28108237 |
| Audi B8 | 28111267 |
| Mahindra W408 Scorpio | 28126243 |
| GMT900 PODS-D | 28151126 |
| Win-126 | 12213621 |
| KJ | 12226199 |
| X350 | 12228099 |
| Ford FN | 12229350 |
| Nissan NE | 12233199 |
| Dew 98 | 12236020 |
| EN | 12236040 |
| FN | 12236060 |
| Nissan AL | 21004183 |
| GMT800 (silicone & port) | 28006590 |
| GMT830C (silicone & port) | 28006591 |
| GMT800 (gen II sensor) | 28009667 |
| GMT830C (gen II sensor) | 28009668 |
| CS | 28017131 |
| RS | 28017133 |

| | |
|---|---|
| Lexus 184L | 28017739 |
| V229 | 28024636 |
| D186 | 28036834 |
| Audi mini bladder | 28128390 |
| Bentley BY611/614 | 12241659 |
| Jaguar X103 | 12240518 |
| Jaguar X202 | 12236049 |
| GMT257 | 10332666 |

# EXHIBIT N

**METHODE ELECTRONICS, INC.**

Corporate Headquarters
7401 West Wilson Avenue
Chicago, IL  60706-4548
708.867.6777 • Fax: 708.867-6999 • 877.316.7700

<u>Via e-mail</u>

July 29, 2008

Ms. Joyce A. Hoffman
Delphi E & S
2151 E. Lincoln Road
Kokomo, IN  46901

Re:  **Tooling and Tooling Drawings**

Dear Joyce:

We received your July 22, 2008 email requesting the return of certain obsolete tools as well as your
July 24, 2008 email and July 25, 2008 voice mail requesting copies of weld tooling drawings and final
assembly drawings for certain bladder assemblies.

Per your request, Methode is pulling together all of the Delphi owned tools for part number 12225130.
As you can imagine, with the hurricane last week, this may take us some time.  These tools should be
available by the end of this week or early next week at our McAllen, TX warehouse. Ben Boyer will
advise when this is complete. The tooling for part number 12244730 has been scrapped per Delphi's
direction. Bob Fessenden approved this in an email on January 16, 2007 and you forwarded that email
to Bill Shinske.

In reference to Delphi's request for tooling prints, Methode does not believe that Delphi's
reimbursement of most of Methode's tooling costs entitles Delphi to the tool designs. The tools were
designed pursuant to Methode's design concepts and instructions.  You indicate in your letter of July
24, 2008, that the terms of the purchase orders provide that Delphi owns the drawings for the tooling.
Please identify for us the term that you are referencing.

However, as indicated in our letter of July 21, 2008, Methode is willing to provide the tool designs to
Delphi with Delphi's assurance that neither the drawings nor the tooling will be used by Delphi or
provided to any third parties to manufacture products infringing upon Methode's patents.  This
includes making the drawings or tooling available in a manner which induces any person or company
to infringe upon Methode's patents.  The applicable patents in the United States are D409,935 and
5,975,568 and 7,237,443.

Please call me with any additional questions.

Sincerely,

Timothy R. Glandon
Timothy R. Glandon
Vice President & General Manager
North American Automotive Operations

# EXHIBIT O

111 South Wacker Drive
Chicago, IL 60606
Telephone: 312-443-0700
Fax: 312-443-0336
www.lockelord.com

## Locke Lord Bissell & Liddell LLP

**Attorneys & Counselors**

Ann Marie Walsh
Direct Telephone: 312-443-0654
Direct Fax: 312-896-6654
awalsh@lockelord.com

October 15, 2008

<u>VIA EMAIL</u>

Mr. Charles E. Brown, Esq.
Delphi Automotive Systems
Legal Staff - Litigation
Mail Code: 480 410 254
5825 Delphi Drive
Troy, MI 48098-2815

Re: Methode/Delphi

Dear Charlie:

We are in receipt of your emails of October 6 and 8, 2008. As I expressed during our phone conversation last week, Methode has concerns regarding Delphi's requests for tooling drawings. As I mentioned, at the time of Delphi's original request, Methode and Delphi were in the process of negotiating a long-term agreement and both companies put the drawings issue on the "back burner" pending completion of the long-term agreement. At that time, however, Methode did ask Delphi twice to provide assurances that neither the drawings nor the tooling would be used by Delphi or provided to any third parties to manufacture products infringing upon Methode's patents. Methode specifically noted that its request included Delphi making the drawings or tooling available in a manner which might induce any person or company to infringe upon Methode's patents. Methode did not receive any response to their requests for assurance.

Methode's concerns became only more significant as a result of the recent conversations between Delphi's in-house patent counsel Doug Fekete and Methode's patent counsel Chuck Wolfe. During last Friday's conversation and during yesterday's conversation, Doug indicated that the products in question are not covered by the Methode patents. In fact, during Friday's conversation, Chuck had asked Doug to identify during their next scheduled conversation on Monday the elements of the claim that were purportedly missing. Neither Doug nor Delphi's outside counsel from Rader Fishman provided a reason as to why the patents do not apply and in fact, were not willing to discuss that issue during yesterday's scheduled call.

The matter is further complicated by the fact that Methode has learned that Delphi has contacted Methode's equipment suppliers and Methode's material suppliers. As you know, Methode's equipment are proprietary designs.

Atlanta, Austin, Boston, Chicago, Dallas, Houston, London, Los Angeles, New Orleans, New York, Sacramento, Washington DC

Mr. Charles E. Brown, Esq.
October 15, 2008
Page 2

Methode feels strongly that the products in questions are covered by the Methode patents (U.S. Patents 5,975,568, 7,237,443 or Des 409,935) and Delphi should know that Methode will take the appropriate steps to protect their patent rights.

Finally, as we discussed on the phone, Methode and Delphi have just entered into a 3 year long-term 100% requirements supply agreement. You indicated that Delphi intends to adhere to the terms of that agreement. Methode also expects full compliance with that agreement.

As previously requested, please provide a written assurance that Delphi does not intend to use the drawings or the tooling to manufacture products infringing upon Methode's patents or make the drawings or tooling available to third parties which might induce any person or company to infringe upon Methode's patents.

Methode is willing to provide copies of the tooling drawings but again requests Delphi's assurance of non-infringement as noted above. Rest assured, Methode intends to protect its patent rights.

Very truly yours,

LOCKE LORD BISSELL & LIDDELL

Ann Marie Walsh

cc:    Doug Fekete
cc:    Ken Beteet
cc:    Chuck Wolfe

# EXHIBIT P



**ETHODE ELECTRONICS, INC.**

Corporate Headquarters
7401 West Wilson Avenue
Chicago, IL 60706-4548
708.867.6777 • Fax: 708.867-6999 • 877.316.7700

<u>Via e-mail</u>

August 25, 2008

Mr. Mark A. Shively
Delphi E & S
2151 East Lincoln Road
Kokomo, Indiana 46901

Re: Methode/ Delphi – Long-Term Agreement

Dear Mark:

As you know, Methode and Delphi do not currently have in place a long-term agreement but Methode has agreed to ship parts to Delphi at the prices provided in our May 1, 2008 letter. As indicated in our prior letters, these prices will be effective through September 30, 2008.

As we have previously communicated, Methode is interested in continuing as a supplier to Delphi and is interested in entering into a long-term agreement. Per your request, Methode is providing the attached pricing which will be in effect for three years, beginning October 1, 2008. This revised three-year pricing reflects the impact of material and component price increases since providing our May 1, 2008 pricing, as well as the impact of further, significantly reduced volumes. The May 1, 2008 pricing was based on anticipated 2009 model year volumes of 5,293,924 units. Based on the latest information available, including Delphi releases, however, the 2009 model year volumes will be closer to 4,300,000 units, if not lower. Please note the differential between this figure and the Finley volumes for the same period of 6,805,000 units.

Moving forward, we will use 4,300,000 units as the baseline for model year 2009 and 3,900,000 for model year 2010 and 2,500,000 for model year 2011. As previously committed, any shipments above this baseline quantity will be subject to a 5% rebate on the additional units. Further, in order to address your concerns as to possible pricing consequences for volumes 20% or more below the Finley volumes, we are withdrawing our right to readjust pricing. Note that we have also removed our requirement to review PODS D pricing after one year. Due to the significant reduction in GMT900 volume, updated pricing for the GMT900 PODS-D program is included in the attached prices.

As to the three-year pricing provided herein, we require the following conditions. First, as previously discussed, Methode must be placed on a material/component cost adder program. The material/component costs used to calculate the attached pricing will be the base line. On a quarterly basis any increases or surcharges would be passed along to Delphi for reimbursement which must be paid within 30 days.

Second, ZCRI payment terms must apply for the term of the agreement.

Third, as previously discussed Methode cannot agree to several terms of the purchase orders and the Delphi General Terms and Conditions ("Delphi T's & C's). One such term is paragraph 12 of PO# 550063028, which provides that "tools and equipment provided for performance of an operation by consignee remain the property of Delphi unless otherwise noted". As Delphi knows, not all tools and equipment used by Methode in the production of Delphi parts are the property of Delphi. As such, Methode objects to that term to the extent it was intended to include tools or equipment not paid for by Delphi.

Similarly, Methode cannot agree to paragraph 16 of the Delphi T's & C's to the extent that it grants Seller the right to take possession of and title to any part of any equipment owned by Methode if it was used in the production of Delphi parts.

Given the fact that the agreement would expire after three years, Methode can not agree to paragraph 18 of the Delphi T's and C's. Specifically, Methode does not agree to produce any service or replacement parts other than those that will be produced prior to September 30, 2011. Given the limited amount of service parts ordered and the resulting set-up costs incurred by Methode, the pricing for service parts will be determined by the order quantity.

Finally, Methode does not agree to paragraph 28 of the Delphi T's and C's regarding Delphi audits. In lieu of that paragraph, Methode will agree to the following term adapted from the OESA (Original Equipment Suppliers Association) Draft Model Terms and Conditions:

> Seller will maintain records as necessary to support amounts charged to Buyer in accordance with Seller's document retention policies. Buyer and its representatives may audit Seller's records of transactions completed within one year prior to the audit date, to the extent needed to verify the quantities shipped and that the prices charged match the agreed prices. Any audit will be conducted at Buyer's expense (but will be reimbursed by Seller if the audit uncovers material errors in the amounts charged), at reasonable times, and at Seller's usual place of business.

Methode will accept purchase orders with the attached pricing subject to the above conditions and exceptions through September 30, 2011. In order for Methode to accept purchase orders for product shipped after September 30, 2008, the purchase orders must have these exceptions noted as well as Delphi must remove any reference to pricing being "under protest". Delphi must also waive all rights or claims to having paid Methode "under protest" as to any past purchase orders.

Please provide written acceptance to this letter no later than close of business September 5, 2008.

Sincerely,

Timothy R. Glandon
Vice President & General Manager
North American Automotive Operations

# EXHIBIT Q



**METHODE ELECTRONICS, INC.**

Corporate Headquarters
7401 West Wilson Avenue
Chicago, IL 60706-4548
708.867.6777 • Fax: 708.867-6999 • 877.316.7700

<u>Via e-mail</u>

August 26, 2008

Mr. Mark A. Shively
Delphi E & S
2151 East Lincoln Road
Kokomo, Indiana 46901

Re:  Methode/ Delphi - One Year Pricing

Dear Mark:

As you know, Methode and Delphi do not currently have in place a long-term agreement but Methode has agreed to ship parts to Delphi at the prices provided in our May 1, 2008 letter.  As indicated in our prior letters, these prices will be effective through September 30, 2008.

As we have previously communicated, Methode is interested in continuing as a supplier to Delphi and is interested in entering into a long-term agreement.  However, we understand that Delphi wishes to consider all of its options and has therefore requested Methode to provide one-year pricing.  Per your request, Methode is providing the attached pricing which will be in effect for one year, beginning October 1, 2008. The May 1, 2008 pricing was based on anticipated 2009 model year volumes of 5,293,924 units. Based on the latest information available, including Delphi releases, however, the 2009 model year volumes will be closer to 4,300,000 units, if not lower and the attached pricing is based on those volumes. Please note the differential between this figure and the Finley volumes for the same period of 6,805,000 units.

As to the one-year pricing provided herein, we require the following conditions. First, ZCRI payment terms must apply for the term of the agreement.

Second, as previously discussed Methode cannot agree to several terms of the purchase orders and the Delphi General Terms and Conditions ("Delphi T's & C's).  One such term is paragraph 12 of PO# 550063028, which provides that "tools and equipment provided for performance of an operation by consignee remain the property of Delphi unless otherwise noted".  As Delphi knows, not all tools and equipment used by Methode in the production of Delphi parts are the property of Delphi.  As such, Methode objects to that term to the extent it was intended to include tools or equipment not paid for by Delphi.

Similarly, Methode cannot agree to paragraph 16 of the Delphi T's & C's to the extent that it grants Seller the right to take possession of and title to any part of any equipment owned by Methode if it was used in the production of Delphi parts.

Given the fact that the agreement would expire after one year, Methode can not agree to paragraph 18 of the Delphi T's and C's. Specifically, Methode does not agree to produce any service or replacement parts other than those that will be produced prior to September 30, 2009. Given the limited amount of service parts ordered and the resulting set-up costs incurred by Methode, the pricing for service parts will be determined by the order quantity.

Methode does not agree to paragraph 28 of the Delphi T's and C's regarding Delphi audits. In lieu of that paragraph, Methode will agree to the following term adapted from the OESA (Original Equipment Suppliers Association) Draft Model Terms and Conditions:

> Seller will maintain records as necessary to support amounts charged to Buyer in accordance with Seller's document retention policies. Buyer and its representatives may audit Seller's records of transactions completed within one year prior to the audit date, to the extent needed to verify the quantities shipped and that the prices charged match the agreed prices. Any audit will be conducted at Buyer's expense (but will be reimbursed by Seller if the audit uncovers material errors in the amounts charged), at reasonable times, and at Seller's usual place of business.

Finally, Methode requires that Delphi provide written assurance that Delphi will not manufacture, use or sell products or induce any third party to manufacture, use or sell products that infringe Methode's patents. As you know, the applicable patents in the United States are D409,935 and 5,975,568 and 7,237,443.

Methode will accept purchase orders with the attached pricing subject to the above conditions and exceptions through September 30, 2009. In order for Methode to accept purchase orders for product shipped after September 30, 2008, the purchase orders must have these exceptions noted as well as Delphi must remove any reference to pricing being "under protest". Delphi must also waive all rights or claims to having paid Methode "under protest" as to any past purchase orders.

Please provide written acceptance to this letter no later than close of business September 5, 2008.

Sincerely,

Timothy R. Glandon
Vice President & General Manager
North American Automotive Operations

# EXHIBIT R

# DELPHI

Electronics & Safety

Via E-Mail and UPS or FedX

September 4, 2008

Mr. Timothy R. Glandon
Vice President & General Manager
North American Automotive Operations
111 W. Buchanan Street
P.O. Box 130
Carthage, IL 62321-0130

Re:    Methode/Delphi

Dear Tim:

Delphi accepts the three-year pricing proposal set out in your August 25, 2008 letter.

Methode will be placed on a material cost adder program. The material/component costs used to calculate the attached pricing will be the baseline. On a quarterly basis any increases or surcharges will be passed along to Delphi for reimbursement which must be paid within 30 days.

ZCRI payment terms to apply for the term of the agreement.

That portion of Paragraph 12 on the Purchase Order providing that "tools and equipment provided for performance of an operation by consignee remain the property of Delphi unless otherwise noted" shall be deleted as you have demanded.

Additionally, Paragraph 16 of Delphi's Terms and Conditions shall not be applicable to the extent that it allows Delphi to take possession of and title to any part of any equipment owned by Methode (not paid for by Delphi) if it was used in the production of Delphi parts.

In regard to service parts obligation in Paragraph 18 of Delphi's Terms & Conditions, Delphi is in agreement with your proposal as to service parts with the price to be determined by order quantity.

It is agreed that Paragraph 28 of Delphi's Terms & Conditions as to "Right to Audit and Inspect" shall not be applicable and that instead, the OESA Draft Model Terms and Conditions must apply:

> Seller will maintain records as necessary to support amounts charged to Buyer in accordance with the Seller's document retention policies. Buyer and its representatives may audit Seller's records of transactions completed within one year prior to the audit date, to the extent needed to verify the quantities shipped and that the prices charged match the agreed prices. Any audit will be conducted at Buyer's expense (but will be reimbursed by Seller if the audit uncovers material

errors in the amounts charged) at reasonable times, and at Seller's usual place of business.

Delphi will delete the reference to pricing being "under protest" and waive its right in regard to having paid Methode "under protest" as to past purchase orders. Delphi will issue new Purchase Orders with the above exceptions with an expiration date of September 30, 2011.

A copy of your August 25, 2008 letter is attached hereto. Purchase orders consistent with the terms of this letter will follow.

Sincerely,

*Mark A. Shively*
Mark A. Shively
Purchasing Manager
Delphi Electronics Group