# Exhibit F

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF OAKLAND

DELPHI AUTOMOTIVE SYSTEMS, LLC,
a Delaware limited liability company,

    Plaintiff,

-v-                                                          Case Number 2008-095518-CK
                                                          Honorable Nanci J. Grant

METHODE ELECTRONICS, INC.,

    Defendant.
_____/

THOMAS S BISHOFF (P53753)
STEPHEN W KING (P56456)
ATTORNEYS FOR DELPHI
400 RENAISSANCE CENTENR 35TH FLOOR
DETROIT MI 48243

CHARLES E BROWN (P46400)
CO-COUNSEL FOR PLAINTIFF
5825 DELPHI DR
TROY MI 48098

ANN MARIE WALSH (*PRO HAC VICE*)
ATTORNEY FOR DEFENDANT
111 SOUTH WACKER DRIVE
CHICAGO IL 60606

JOHN R TRENTACOSTA (P31856)
GARY E. STEINBAUER (P69789)
CO-COUNSEL FOR DEFENDANT
500 WOODWARD AVENUE SUITE 2700
DETROIT MI 48226-3489

---

**ORDER AND OPINION**

At a session of said Court, held in the Courthouse in the City of Pontiac, County of Oakland, State of Michigan on the 23rd day of July, 2009.

PRESENT:    <u>THE HONORABLE NANCI J. GRANT, CIRCUIT JUDGE</u>

1

This matter comes before the Court on Plaintiff Delphi Automotive Systems, LLC's motion for protective order. For the following reasons, the motion is GRANTED.

This case arises out a contract under which Delphi hired Methode Electronics to manufacture certain parts. This required Delphi to turn over to Methode certain "tooling drawings" for use in making the parts. At some point, a dispute over pricing arose, and Methode ceased making the parts. At that point, Delphi demanded the return of its tooling drawings, but Methode refused. Thus, Delphi filed suit, seeking the return of the drawings and damages.

Methode responded with a counterclaim. Its main allegation is that the parties' contract was an "exclusive" 3-year agreement and, therefore, Delphi could not unilaterally pay less for the parts, or have them manufactured elsewhere, at least during the term of the agreement. Methode also alleges that Delphi possesses certain parts that were designed and built by Methode, and are patent protected. Methode believes that Delphi intends to use these parts in out-sourcing the production of parts formerly made by Methode. This, of course, gives rise to a patent infringement claim, which Methode is currently pursuing in federal court. The improper use of patents also constitutes an "anticipatory breach" of the agreement in this case, entitling Methode for damages on a breach of contract theory.

The claims in this case involve highly technical details of the parts and how they are used. Thus, each side acknowledges that it will be required to disclose technical information about their parts to the other side. Delphi is concerned that some of the information could be used by Methode to gain a competitive advantage against Delphi. Thus, while Delphi acknowledges that it must turn the information over to Methode, Delphi wants protections in place to make sure that the information is used only in the litigation, and is not used for business purposes. To address these concerns, Delphi filed the current motion for protective order. It suggests a scheme under which Delphi can designate information either "confidential" or "confidential -- attorneys eyes only." A "confidential" designation basically means that Methode can disclose the information to those involved in the litigation, but not to third-parties. An "attorneys eyes only" or "AEO" designation, on the other hand, means that only Methode's attorneys and experts can see the information, and it cannot otherwise be disclosed to anyone at Methode. Of course, Delphi is willing to make this scheme reciprocal.

Methode does not object to the general outline of this scheme, but objects to the

2

"Attorney Eyes Only" provisions. Specifically, Methode notes that Delphi has several attorneys working on this case, some of which are outside counsel and some of which are in-house. Methode, on the other hand, is a much smaller company, and does not have any in-house attorneys. Under Delphi's plan, documents designated AEO could be disclosed to both outside counsel and in-house counsel. Methode objects to this, claiming that only Delphi's outside counsel should have access to AEO information. This is not, however, because Methode suspects that Delphi's in-house counsel will disclose the information to others inside Delphi who might misuse it. In fact, Methode does not dispute Delphi's claim (supported by affidavits) that its in-housel counsel are not involved in competitive decision making. Rather, Methode objects because the arrangement "creates an imbalance" -- Delphi's outside counsel would be able to "raise and discuss issues concerning AEO information" with people inside Delphi, but Methode's attorneys would not. This "severely limits" Methode's "handling and decision-making about the case," because Methode's outside counsel needs someone on the inside to "manage, assist, and advise outside counsel."

Methode's proposed solution to this is simple: Delphi's in-house counsel should not get access to AEO material. In the alternative, Methode proposes that it be allowed to designate one of its "management employees" who could see Delphi's AEO material. This employee, of course, would not be an attorney, and Methode assures the Court that he or she would not be "involved in the day-to-day operation of Methode's supply of parts to Delphi."

The Court does not believe this to be a legitimate objection or a legitimate solution. First, Delphi has done nothing wrong by pursuing this case with both inside and outside counsel, particularly where there is no indication that its in-house counsel cannot be trusted with Methode's confidential information. Thus, Methode essentially seeks to limit Delphi's ability to defend itself solely on grounds that Methode does not have the same resources. This is not a legitimate basis for limiting Delphi's ability to pursue the case at it wishes. Moreover, the Court finds Methode's proposal to designate a Methode employee for access to Delphi's confidential information unsatisfactory. Specifically, because Delphi's in-house counsel are attorneys, they are subject to the control of the court and state bar, and are subject to sanctions if they misuse the confidential information. Methode's "designated person," on the other hand, is not an attorney, and faces far fewer consequences if he misuses the confidential information.

Methode's second objection arises out of the fact that the parties are currently involved

3

in patent litigation over the parts at issue in this case, and the fact that Delphi's in-house counsel are also working on that case. Thus, under Delphi's plan, Delphi's in-house counsel would have access to AEO information provided by Methode, and could use that information in the patent case. Methode, however, could not disclose AEO information to its patent attorney pursuant to Delphi's proposed scheduling order. Methode objects that this would produce an "unfair" situation. Methode's proposed solution is simple: No attorney involved in the patent case should be given access to AEO information in this case.

In response, Delphi first focuses differences between the role that an attorney plays in a patent litigation case and the role that an attorney plays in the preparation, filing, and/or prosecution of patient applications. Specifically, those involved in the former role are not necessarily involved in business decision-making, while those in the latter role necessarily are. As the court recognized in *Mikohn Gaming Corp v Acres Gaming Inc*, 50 USPQ2d 1783 (D Nev 1998), it would be a "Sisypean task" for an attorney who acquires confidential information through litigation to keep that information separate from any subsequent preparing, filing, or prosecuting of related patents, as doing so would require the attorney "to constantly challenge the origin of every idea, every spark of genius," which is a "level of introspection" that is simply "too much to expect, no matter how intelligent, dedicated, or ethical" the attorney is.

Delphi next focuses on the roles of the attorneys in this case. Specifically, none of Delphi's attorneys in this case, either in-house or outside counsel, are involved in patent preparation, filing, or prosecution. The same is also true of the attorneys handling the patent litigation on behalf of Delphi. Similarly, Methode's attorney in this case is likewise uninvolved in patent preparation, filing, or prosecution. Thus, there are no inherent problems of the kind recognized in *Mikohn* precluding any of these attorneys from having access to the other side's confidential information. The problem arises, however, with respect to the attorney representing Methode in the patent case. That attorney, according to Delphi, has prosecuted patent amendment applications on the very subject matter of the current dispute, i.e., the PODS bladder. This fact, Delphi argues, justifies allowing its attorneys to have access to Methode's confidential information, while simultaneously precluding Methode's patent attorney from having access to Delphi's confidential information.

To be sure, Delphi's proposed protective order gives Delphi more authority to share

4

confidential information than Methode and, in this sense, is imbalanced. At the same time, however, it must also be recognized that Delphi has done nothing wrong in the way in which it has chosen to handle its disputes with Methode, as there is no indication that any of its attorneys handle patent prosecution related to the parts at issue in this case, or will otherwise misuse the confidential information acquired in this case. Methode, on the other hand, has chosen the same attorney to both litigate and prosecute the patents covering the parts at issue in this case, despite the apparently widely recognized principle that confidential information acquired during litigation cannot effectively be excluded from patent prosecution work, "no matter how intelligent, dedicated, or ethical" the attorney is. In this context, the Court agrees with Delphi that Methode's objection is not well founded.

In light of the foregoing, the Court agrees that the protective order proposed by Delphi is proper and, therefore, Delphi's motion is granted.

**NANCI J. GRANT**
_____
NANCI J. GRANT, Circuit Judge

**PROOF OF SERVICE**

I certify that a copy of the above instrument was served upon the attorneys of record in the above case by mailing it to the attorneys at their business address as disclosed by the pleadings of record, with prepaid postage on 7/23/09.

_Kathleen M. Morton_
Kathleen M. Morton, Secretary to the Hon. Nanci J. Grant

A TRUE COPY
RUTH JOHNSON
Oakland County Clerk - Register of Deeds
By: _K M Morton_
       Deputy

5