# EXHIBIT J

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF OAKLAND

DELPHI AUTOMOTIVE SYSTEMS, LLC,
a Delaware limited liability company,

    Plaintiff,

-v-

                                      Case Number 2008-095518-CK
                                      Honorable Nanci J. Grant

METHODE ELECTRONICS, INC.,

    Defendant.
_____/

THOMAS S BISHOFF (P53753)
STEPHEN W KING (P56456)
ATTORNEYS FOR DELPHI
400 RENAISSANCE CENTER 35TH FLOOR
DETROIT MI 48243

CHARLES E BROWN (P46400)
CO-COUNSEL FOR PLAINTIFF
5825 DELPHI DR
TROY MI 48098

ANN MARIE WALSH (*PRO HAC VICE*)
ATTORNEY FOR DEFENDANT
111 SOUTH WACKER DRIVE
CHICAGO IL 60606

JOHN R TRENTACOSTA (P31856)
GARY E. STEINBAUER (P69789)
CO-COUNSEL FOR DEFENDANT
500 WOODWARD AVENUE SUITE 2700
DETROIT MI 48226-3489

---

## ORDER AND OPINION

At a session of said Court, held in the Courthouse in the City of Pontiac, County of Oakland, State of Michigan on the 10th day of September, 2009.

PRESENT: <u>THE HONORABLE NANCI J. GRANT, CIRCUIT JUDGE</u>

1

This matter comes before the Court on Defendant's motion for preliminary injunction. For the following reasons, the motion is DENIED.

Pursuant to a September 2008 contract, Defendant agreed to manufacture certain parts for Plaintiff at certain terms for a three-year period. This was the latest such agreement between the parties dating back at least nine years.

Litigation began when Plaintiff filed suit seeking return of the tooling drawings used in the manufacturing process, arguing that it was the owner of the drawings pursuant to the contract. This dispute has since been resolved by the parties, and without a ruling from the Court on the ownership issue. Plaintiff has, however, continued to pursue its claim for damages, although the litigation did not preclude the parties from continuing to do business under the agreement. That state of affairs has now ended, as Plaintiff has announced its intention to no longer order parts pursuant to the agreement, in favor of producing the parts on its own. Thus, Defendant has filed the current motion, seeking an order compelling Plaintiff to obtain its parts from Defendant.

In considering a request for injunctive relief, a court must consider the following factors: (1) whether the moving party has shown that it is likely to prevail on the merits; (2) whether the moving party will suffer irreparable harm in the absence of an injunction; (3) whether the harm to the applicant absent the injunction outweighs the harm to the adverse party caused by the imposition of the injunction; and (4) whether there will be harm to the public interest absent the injunction. *Detroit Firefighters Ass'n v Detroit*, 482 Mich 18 (2008).

With respect to the likelihood of success on the merits, the Court first notes that parties' agreement contains a "convenience clause" which, by its terms, would allow Plaintiff to terminate the agreement. Defendant does not dispute the existence of this clause, but argues that Plaintiff is not entitled to enforce it. Specifically, Defendant focuses on the fact that courts have refused to enforce "termination for convenience" provisions when the agreement was entered into in bad faith, i.e., with an undisclosed intention that the agreement would not be honored. See, e.g., *Busam Motor Sales v Ford Motor Co*, 203 F2d 469 (CA 6 1953). Defendant argues that this is the case here, and, in support, cites evidence that as early as July 2008 Plaintiff had contacted Defendant's suppliers regarding obtaining the component materials directly.

2

In response to this motion, Plaintiff does not dispute that it was investigating the possibility of re-sourcing the parts as early as June 2008, or that it took concrete steps in that regard at least as early as the first part of 2009. In fact, Plaintiff has now completed the process, which involves capital expenditures in the millions of dollars, as well as entering into contractual relationships with many suppliers. Plaintiff claims, however, that its intentions in this regard were not in any way concealed. Specifically, Plaintiff explicitly identified such a possibility during June 2008 when the parties were negotiating the September 2008 agreement. In fact, the pricing terms of that agreement were based, in part, on the fact that Plaintiff was considering re-sourcing the parts, which would be permissible under the termination for convenience clause. Plaintiff also notes that it demanded the tooling drawings during this time, and this issue ultimately triggered this litigation. Thus, Plaintiff's interest in re-sourcing the parts was readily apparent to Defendant at the time the parties signed the September 2008 agreement.

In light of the evidence Plaintiff presented in response to this motion, the Court is not convinced that Defendant is likely to prevail on the merits on this issue. This is not, of course, a final resolution of this issue, nor does the Court, at least at this point, doubt that there is at least a question of fact regarding Plaintiff's bad faith. Based on the evidence presented to date, however, the Court is not at all convinced that Defendant is likely to prevail on the merits on this issue, and this conclusion weighs against granting the injunction.

With respect to the harm Defendant will suffer in the absence of the motion, it is clear that Defendant's primary damages for breach of the agreement involve money damages, i.e., the benefit that Defendant would have obtained had Plaintiff not terminated the contract. Nor is there any claim that Defendant would not be able to collect on a judgment. Defendant does, however, note that termination of the agreement will result in the immediate shut-down of the division that produces the parts, idling some 200 workers. Moreover, something less than 10% of these workers are also involved in developing new products for Defendant, and Defendant will lose their efforts in this regard if the injunction is not issued. Finally, Defendant claims that it will not be able to recommence manufacturing of the bladder system at issue if it is forced to shut down operations at this time, and will suffer damage to its reputation as a result.

The Court is not convinced that this constitutes irreparable harm that supports injunctive relief. While the loss of employees (particularly those in development) is a

3

legitimate concern to Defendant, it must be recognized that the agreement in question was for only a three-year term, and that Defendant seeks injunctive relief with only two years left on the agreement. Thus, Defendant could not have reasonably expected that these employees would remain in these positions beyond the life of the agreement in the first place. The same is true with respect to Defendant's claim that it will no longer be able to produce the bladder system in question if the injunction is not issued. Defendant, after all, had no guarantee that it would be able to continue manufacturing this part after the termination of September 2008 agreement.

This harm also must be balanced against the harm to Plaintiff if the injunction is issued. Plaintiff has undertaken extensive efforts to enable itself to manufacture the part on its own, and that the injunction would result in disruption not just to Plaintiff, but also to those entities with whom Plaintiff has contracted.

In other words, while there will undoubtedly be harm to Defendant in the absence of the injunction, there will also be significant harm to Plaintiff if the injunction is issued. Thus, harm to one side cannot be avoided. Moreover, the Court is asked to balance these concerns when it is not at all clear which side will prevail on what has now become the fundamental dispute in this case, i.e., Plaintiff's ability to invoke the termination for convenience clause and avoid its obligations under the contract. In this context, the Court finds that Defendant has not established its entitlement to preliminary relief. Therefore, Plaintiff's motion is denied.

**NANCI J. GRANT**

NANCI J. GRANT, Circuit Judge

**PROOF OF SERVICE**

I certify that a copy of the above instrument was served upon the attorneys of record in the above case by mailing it to the attorneys at their business address as disclosed by the pleadings of record, with prepaid postage on 9-10-09.

Kathleen M. Morton, Secretary to the Hon. Nanci J. Grant

**A TRUE COPY**
**RUTH JOHNSON**
Oakland County Clerk - Register of Deeds
By: _Kummrton_
Deputy

4