# EXHIBIT L

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| METHODE ELECTRONICS, INC., | ) | |
| | ) | |
| Plaintiff/Counter-Defendant, | ) | Civil Action No. 09-CV-02191 |
| | ) | |
| v. | ) | HON. DAVID H. COAR |
| | ) | |
| DELPHI AUTOMOTIVE SYSTEMS LLC and MARIAN, INC., | ) | Magistrate Judge Geraldine Soat Brown |
| | ) | |
| Defendants/Counter-Plaintiffs. | ) | |
| | ) | |
| DELPHI TECHNOLOGIES, INC. | ) | |
| | ) | |
| Counter-Plaintiff. | ) | |

**DELPHI AUTOMOTIVE SYSTEMS, LLC'S ANSWER TO
METHODE'S COMPLAINT AND DELPHI AUTOMOTIVE SYSTEMS, LLC'S
AND DELPHI TECHNOLOGIES, INC.'S COUNTERCLAIMS**

Delphi Automotive Systems LLC ("Delphi"), by and through its counsel, for its Answer

to the Complaint of Methode Electronics, Inc. ("Methode"), states as follows:

**PRELIMINARY STATEMENT**

Spun-off from General Motors Corporation in 1998, Delphi is a world-wide supplier of

automotive parts to the automotive industry. In particular, Delphi is a leading supplier of the

safety-critical Passenger Occupant Detection System ("PODS") for which Delphi is the sole

supplier of this product to its automotive customers spanning approximately 90 different vehicle

models. One of the safety critical parts of Delphi's PODS is a pressure-sensing bladder ("PODS

bladder")—the subject of this patent infringement lawsuit. Delphi's PODS are manufactured to

specific and exacting OEM specifications and requirements, as well as governmental safety

standards.  Without Delphi's PODS, the vehicles cannot be manufactured, assembled, shipped to automobile dealerships and sold to the public.

This case represents one of three prongs of a self-serving, interfering, and irreparably injuring aggression of the plaintiff Methode against Delphi and its automotive customers.  By this case, Methode attempts to interrupt the global supply and installation of essential safety components for automotive airbag systems to automotive companies worldwide. Meanwhile, as a second prong of aggression, Methode refuses to comply with its contractual obligations to Delphi by (a) refusing to return certain Delphi property, namely tooling drawings used to make the tooling for Delphi's PODS bladder, and (b) refusing to make pilot parts and prototypes for new vehicle launches which are necessary to avoid the potential delay or derailment of new vehicle models slated to hopefully lift vehicle sales in the depressed global automotive market. This disruptive conduct on the part of Methode has forced Delphi to bring a suit against Methode in state court in Michigan, whereby Methode has counterclaimed against Delphi alleging much of the same factual and contractual background as in the present suit.  Moreover, as a third prong of aggression, Methode has threatened, is threatening and unless enjoined or throttled, will threaten industry customers and suppliers, to drive them from essential supporting activities for Delphi.

Moreover, and not least but foremost, employees Delco Electronics Corporation ("Delphi/Delco"), since around January 1998 a wholly-owned subsidiairy of Delphi and now part of Delphi, pioneered safety technologies and invented the bladder design that is the subject of Methode's patent-in-suit.  Delphi/Delco employees, including Duane Fortune, Robert Myers, Morgan Murphy and Pamela Roe, began working on PODS bladder designs in late 1996 and early 1997.  After months of testing, researching, and designing bladders, Delphi/Declo

contacted Methode's predecessor, Automotive Components, Incorporated ("Methode/ACI") and entered into a NDA/Confidentiality Agreement.   Pursuant to this agreement, Delphi/Delco provided to Methode/ACI significant details of Delphi/Delco's inventions and development work, including Delphi/Delco's information on its bladder designs, so that Methode/ACI could evaluate and provide appropriate manufacturing prototypes and tooling to produce the bladders to be used in Delphi's PODS products.   Delphi/Delco filed a patent application on February 18, 1998, based on the bladder concept its employees invented that led to U.S. Patent No. 6,101,436, which is directed to a weight-sensing bladder used in Delphi's PODS systems.   Unbeknownst to Delphi/Delco, Methode/ACI also filed a patent application, but months after Delphi filed its patent application.

Methode has had several opportunities in the United States Patent Office to claim that its patent and "invention" came before Delphi's patent and invention.   Despite these opportunities, Methode has consistently conceded and admitted on the United States Patent Office record that Delphi filed its patent application first and that Delphi's patent is prior art under 35 U.S.C. §102(e), thereby giving priority of any invention in the PODS bladder to Delphi.   Indeed, everything in Methode's patent was already disclosed in Delphi's patent, and Methode has, on information and belief, known for years that Delphi is the true inventor of the PODS bladder.   In fact, Methode's use of its patent in this proceeding, its raising of patent issues in Michigan state court, and its threats in the industry are misuses and abuses of its patent.

## PARTIES, JURISDICTION AND VENUE

### Complaint Paragraph 1

1.      Methode is a Delaware corporation with its principal place of business at 7401 West Wilson Avenue, Chicago, Illinois. Methode is the assignee and owner of U.S. Patent No. 5,975,568, entitled "Sensor Pad for Controlling Airbag Deployment and Associated Support" ("the Speckhart Patent").

**Response:**      Delphi admits that paragraph 1 of the Complaint alleges that U.S. Patent No. 5,975,568 ("'568 Patent") is entitled "Sensor Pad for Controlling Airbag Deployment and Associated Support."  Delphi is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 1 of the Complaint and therefore denies the same.

### Complaint Paragraph 2

2.      Defendant Delphi is a Delaware corporation with its principal place of business at 5725 Delphi Drive, Troy, Michigan. Delphi does business in this judicial district and throughout the state of Illinois.

**Response:**      Delphi admits it is a Delaware limited liability company with its principal place of business at 5725 Delphi Drive, Troy, Michigan.  Delphi also admits that it conducts business in this jurisdiction and in the State of Illinois.  Delphi denies the remaining allegations contained in paragraph 2 of the Complaint.

### Complaint Paragraph 3

3.      Defendant Marian is an Indiana corporation with a principal place of business at 1011 E. St. Clair Street, Indianapolis, Indiana. Marian has a place of business in this judicial district and does business throughout the state of Illinois.

**Response:**     Delphi is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 3 of the Complaint and therefore denies the same.

## Complaint Paragraph 4

4.      Jurisdiction is proper in this Court under 28 U.S.C. §§ 1331 and 1338(a), as this case arises under the patent laws of the United States, 35 U.S.C. §§ 271 and 281.

**Response:**     Delphi admits that paragraph 4 of the Complaint alleges that jurisdiction is proper in this Court under 28 U.S.C. §§ 1331 and 1338(a), however, Delphi denies that this Court is a convenient forum to address this dispute.  Delphi also admits that paragraph 4 of the Complaint alleges that this case arises under the patent laws of the United States, 35 U.S.C. §§ 271 and 281, however, Delphi denies that Methode has any cognizable or meritorious claim under the patent laws or otherwise.  Moreover, prior existing and closely related litigation remains pending, active and ongoing in the 6th Judicial Circuit of Michigan, Oakland County Circuit Court (captioned *Delphi Automotive Systems, LLC v. Methode Electronics*, Inc., Case No. 08-095518-CK), which is located within the Federal judicial district of the United States District Court for the Eastern District of Michigan.

## Complaint Paragraph 5

5.      Venue is proper in this Court under 28 U.S.C. §§ 1391 and 1400.

**Response:**     Delphi admits that this Court meets the venue requirements of 28 U.S.C. §§ 1391 and 1400, however, Delphi denies that this Court is a convenient forum to address this dispute.  This dispute between Delphi and Methode arises out of and/or is in connection with a contract dispute between the parties.  The current agreement between Delphi and Method provides that "…each party hereby agrees that the forum and venue for any legal or equitable action or proceeding arising out of, or in connection with, this Contract will lie in the appropriate federal

5

or state courts in the State of Michigan and specifically waives any and all objections to such jurisdiction and venue." Moreover, as discussed in response to Complaint Paragraph 4 above, the parties are already in the midst of a dispute pending in a Michigan state court.

**Complaint Paragraph 6**

6.      Methode incorporates by reference the allegations of paragraphs 1 through 5 as though fully set forth herein.

**Response:**      Delphi repeats its answers set forth in paragraphs 1 through 5.

**Complaint Paragraph 7**

7.      In 1997, Delphi's predecessor, Delco Electronics Corporation ("Delco"), approached Methode's predecessor, American Components, Inc. ("ACI"), and requested that ACI develop a weight sensing pad suitable for use in a vehicle restraint system. Despite its attempts, Delco had been unable to develop a suitable weight sensing pad.

**Response:**      Delphi admits that Delco Electronics Corporation ("Delphi/Delco") was a corporation organized and existing under the laws of the State of Delaware with its principal office located at One Corporate Center, P.O. Box 9005, Kokomo, Indiana 46904-9005.  Delphi further admits that Delphi/Delco was once a subsidiary of Delphi that eventually merged into Delphi.  Delphi admits that in 1997, employees at Delphi/Delco invented and developed bladder-based occupant sensing technology and products designed to passively detect the presence of a child and/or small adult occupant in the front passenger seat of a vehicle and supply information to a vehicle's airbag controller to permit the controller to selectively suppress the deployment of the front passenger airbag.  This technology is known as Delphi's Passive Occupant Detection System ("PODS").  Delphi also admits that in 1997, Delphi/Delco approached American Components, Inc. ("Methode/ACI") to serve as a potential manufacturer for a bladder component

6

for use within Delphi's PODS products. At that time, Delphi/Delco provided to Methode/ACI, pursuant to an NDA/Confidentiality Agreement executed by Methode/ACI, significant details of Delphi/Delco's inventions and development work, including Delphi/Delco's information on its bladder designs, so that Methode/ACI could evaluate and provide appropriate manufacturing prototypes and tooling to produce the bladders to be used in Delphi's PODS products. Delphi denies the remaining allegations contained in paragraph 7 of the Complaint.

**Complaint Paragraph 8**

8.      In response to Delco's request, ACI engaged Dr. Frank Speckhart, a professor at the University of Tennessee, to work with Mr. Scott Baker, Vice President of ACI, on the weight sensing pad.

**Response:**      Delphi admits that Dr. Frank Speckhart, Director of Research & Development at Methode/ACI, Scott Baker and others at Methode/ACI, under a duty of confidentiality, were provided by Delphi/Delco with significant, important and critical information and data regarding Delphi's PODS inventions and designs so that Methode/ACI could be a potential manufacturer of the bladder components to be used in Delphi's PODS products. Delphi lacks knowledge or information sufficient to form a belief about the truth as to whether Dr. Frank Speckhart is or was a professor at the University of Tennessee. Delphi denies the remaining allegations contained in paragraph 8 of the Complaint.

**Complaint Paragraph 9**

9.      To meet Delco's requirements, Dr. Speckhart and Mr. Baker, working together, invented a weight sensing pad with hexagonal cells formed by spot welding. Their invention is described and claimed in the Speckhart Patent.

**Response:**       Delphi denies the allegations of paragraph 9 of the Complaint.  Moreover, Delphi

states that employees of Delphi/Delco, namely Mr. Duane Fortune, Mr. Morgan Murphy, among

others, but not Dr. Speckhart, Mr. Baker or anyone else at Methode/ACI, invented the bladder

with an array of circular cells formed by a hexagonal geometry and shared that inventive concept

and design with Methode/ACI.  Delphi/Delco claimed its invention to an occupant sensor that

uses this bladder design invented by Mr. Fortune, Mr. Murphy, and others in U.S. Patent No.

6,101,436, filed on February 18, 1998, and issued by the United States Patent and Trademark

Office ("USPTO") on August 8, 2000, and attached to Delphi's counterclaim hereafter as

Exhibit A.  Upon information and belief, Dr. Speckhart, Mr. Baker and Methode/ACI improperly

and unlawfully took Delphi/Delco's inventive concept and information on the bladder with an

array of circular cells formed by a hexagonal geometry and unjustly claimed it as their own by

filing the patent application that lead to the '568 Patent.  Delphi denies the remaining allegations

contained in paragraph 9 of the Complaint.

**Complaint Paragraph 10**

10.       The success of the Speckhart-Baker invention led Delco to enter into a multi-year

agreement with ACI whereby ACI was the exclusive supplier of the weight sensing pads to

Delco.

**Response:**       Delphi admits that over the life of Delphi's PODS products, Delphi/Delco and

Delphi purchased bladders that Delphi/Delco designed and developed from its selected supplier,

Methode/ACI.  Delphi further admits that on August 1, 2001, Delphi/Delco and Methode entered

into a contract called "Long Term Contract."  Delphi further admits that, as is customary in the

automobile industry, Delphi purchased many other components used in Delphi's PODS products

from other suppliers.   Delphi, as the system-level manufacturer, assembles the various

8

components to manufacture Delphi's PODS products, and then sells Delphi's PODS products to various automobile manufacturers. Delphi denies the remaining allegations contained in paragraph 10 of the Complaint.

**Complaint Paragraph 11**

11.     Subsequently, Plaintiff Methode acquired assets of ACI, including the Speckhart Patent and assets related to the weight sensing pads.

**Response:**     Delphi is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 11 of the Complaint and therefore denies the same.

**Complaint Paragraph 12**

12.     After Methode acquired the Speckhart Patent and assets related to the weight sensing pads in 2001, Delphi continued to purchase weight sensing pads from Methode on an exclusive basis through a second successive multi-year agreement with Methode. In this agreement, Methode provided Delphi with year over year price decreases, which applied over the term of the agreement even though material costs increased dramatically.

**Response:**     Delphi admits that it contracted with Methode for Methode to manufacture bladders to Delphi's specification for use in Delphi's PODS products. Delphi also admits that it contracted with Methode over a period of years. Delphi further admits that the contracts provided for agreed-upon annual price decreases for the sales of bladders manufactured by Methode, as is customary in the automobile industry, for it captures the sharing of benefits derived from manufacturing efficiencies achieved over time and volume increases experienced. Delphi also admits that Methode profited from the sale of Delphi's PODS bladders to Delphi, and that Delphi maintained a loyalty to Methode by keeping Methode as the sole supplier of

Delphi's PODS bladders over the years.  Delphi denies the remaining allegations contained in paragraph 12 of the Complaint.

**Complaint Paragraph 13**

13.     Methode's weight sensing pad is a critical component to Delphi's PODS system for complying with federal safety mandates. Since contract inception, Methode has produced and shipped in excess of 25 million weight sensing pads to Delphi.

**Response:**     Delphi admits Delphi's PODS bladder is one of a number of components that is used by Delphi to assemble Delphi's PODS products and that Delphi has bought over 25 million bladders from Methode over the years.  Delphi denies the remaining allegations contained in paragraph 13 of the Complaint and, in particular that there exists any "federal safety mandates" that require Delphi's PODS products use a bladder-based occupant sensing device or any component manufactured or sold by Methode.

**Complaint Paragraph 14**

14.     In 2008, the term of the second agreement ended. Rather than negotiating in good faith with Methode, Delphi instead threatened to find a new source for the weight sensing pads. After many years of price decreases, economic factors, including material price increases and unanticipated and dramatic volume reductions, caused Methode to increase the price of the weight sensing pads.

**Response:**     Delphi admits that in 2008, Methode, acting in bad faith, repeatedly threatened to stop shipping Delphi's PODS bladder to Delphi in order to extract substantially higher prices for future sales of Delphi's PODS bladder.  Delphi further admits that it rejected Methode's unilateral demands for substantial price increases and, Delphi, acting in good faith, attempted to negotiate a fair resolution.  Ultimately, in order to ensure the uninterrupted supply of Delphi's

PODS bladder and to avoid Methode's threatened action to cease supply of Delphi's PODS bladder, Delphi was forced to pay Methode substantially higher prices for Delphi's PODS bladder under duress and contrary to the parties' contracts and course of dealing. Delphi denies the remaining allegations contained in paragraph 14 of the Complaint.

**Complaint Paragraph 15**

15.    During the negotiations for the 2008 agreement with its associated price increase, Defendant Delphi requested, for the first time in its seven year course of dealing with Plaintiff Methode, the tooling drawings for the weight sensing pads. When Methode requested assurances that Delphi would respect the Speckhart Patent, Delphi subsequently sued Methode in Michigan state court to obtain the tooling drawings for the weight sensing pads.

**Response:**     Delphi admits that on several occasions in 2008, while the parties were discussing pricing issues, Delphi repeatedly requested the return of tooling drawings for Delphi's PODS bladders both orally and in writing.  Delphi further admits that it paid for and owns the underlying tooling and equipment, and the parties' contracts required that Methode provide the drawings to Delphi upon request, but Methode refused to turn over the tooling drawings.  While Methode claims to own patents and requested assurances from Delphi regarding the same, Delphi denies that Delphi's PODS products are covered by any valid and enforceable claim of any patent allegedly owned by Methode.  Moreover, Delphi admits that it, not Methode, owns numerous patents that cover the design and operations of Delphi's PODS products, including the '436 Patent that covers an occupant sensor that uses a bladder with an array of circular cells formed by a hexagonal geometry.  Further, Delphi states that Dr. Speckhart, Mr. Baker and others at Methode/ACI improperly and unlawfully took Delphi's inventive concept and designs for a bladder with circular cells formed by a hexagonal geometry and claimed the inventive

concept and design as their own.  Further, Delphi admits that it filed a lawsuit in the 6th Judicial

Circuit of Michigan, Oakland County Circuit Court, against Methode seeking return of drawings

for the Delphi owned tooling and that Methode has filed its Answer and Counterclaim therein

alleging breach of contract and anticipatory repudiation of contract by Delphi to which Delphi

has Answered denying such claims, and admits moreover that lawsuit remains active and

pending in Michigan.  Delphi denies the remaining allegations contained in paragraph 15 of the

Complaint.

**Complaint Paragraph 16**

16.    Defendant Delphi expressly acknowledged in its state court complaint that it

demanded the tooling drawings so that Delphi could make arrangements for an alternative source

for the weight sensing pads.

**Response:**    Delphi admits that its contracts with Methode concerning the manufacture of

Delphi's PODS bladders permit Delphi to secure supply of Delphi's PODS bladders from

sources other than Methode.  Further, Delphi states that the referenced document speaks for itself

and is the best evidence of its contents.  Delphi denies the remaining allegations contained in

paragraph 16 of the Complaint.

**Complaint Paragraph 17**

17.    On information and belief, Delphi provided specimens and samples of the weight

sensing pads and other technical information about the weight sensing pads to Marian.

**Response:**    Delphi admits Methode has acted in bad faith in its refusal to supply pre-

production and prototype parts in breach of the parties' current contract which threatens new

vehicle launches for numerous automobile manufacturers.  Delphi further admits that following

Methode's breach of the parties' contract and its refusal to provide prototype parts to Delphi,

Delphi consulted with and provided information to Marian, Inc. ("Marian") so that Marian could provide limited prototypes of Delphi's PODS bladders that Methode has wrongfully refused to manufacture.   Delphi denies the remaining allegations contained in paragraph 17 of the Complaint.

**Complaint Paragraph 18**

18.      On information and belief, Marian has used this information to manufacture infringing weight sensing pads for Delphi for the commercial purpose of entering a contract with Delphi to provide Delphi with infringing weight sensing pads.

**Response:**      Delphi admits that Marian has provided limited prototypes of Delphi's PODS bladder components to Delphi that Methode has wrongfully refused to manufacture in violation of the parties' contract.   Delphi denies the remaining allegations contained in paragraph 18 of the Complaint.

**Complaint Paragraph 19**

19.      Since Delphi succeeded Delco and Methode acquired ACI, Delphi has been aware of the Speckhart Patent and, on information and belief, has never sought an alternative supplier for the weight sensing pads until its relationship with Marian, as such an alternative supply agreement would result in an infringement of the Speckhart Patent.

**Response:**      Delphi admits that until December 2007, ACI/Methode was a supplier of Delphi's PODS bladders for Delphi's PODS products, both companies profited from the relationship, and ACI/Methode enjoyed the benefit of Delphi's election to maintain ACI/Methode as the only manufacturer of the bladder for the PODS products even though Delphi had no obligation to maintain this single source supply relationship after the 2004 model year.   Delphi denies the remaining allegations contained in paragraph 19 of the Complaint.

**Complaint Paragraph 20**

20.     On information and belief, Delphi is currently testing infringing weight sensing pads manufactured by Marian for the commercial purpose of qualifying the infringing Marian weight sensing pads in vehicle restraint systems offered for sale by Delphi.

**Response:**     Delphi admits that it is pursuing the development of a potential alternative source of supply as allowed under the original 2001 Long Term Contract with Methode and as is Delphi's right under the subsequent contractual agreements with Methode including the current contract. Delphi denies the remaining allegations contained in paragraph 20 of the Complaint.

**Complaint Paragraph 21**

21.     On information and belief, Marian will continue to manufacture infringing weight sensing pads and will sell those infringing weight sensing pads to Delphi, and Delphi will use and sell the infringing weight sensing pads to its own customers.

**Response:**     Delphi denies the allegations contained in paragraph 21 of the Complaint.

## COUNT I
## PATENT INFRINGEMENT BY DELPHI

**Complaint Paragraph 22**

22.     Methode incorporates by reference the allegations of paragraphs 1 through 21 as though fully set forth herein.

**Response:**     Delphi repeats its answers set forth in paragraphs 1 through 21.

**Complaint Paragraph 23**

23.     On November 29, 1999, the Speckhart Patent was duly and legally issued. A true and correct copy of the Speckhart Patent is appended hereto as Exhibit A.

**Response:**     Delphi admits that a copy of the '568 Patent appears as Exhibit A appended to the Complaint.  Delphi denies the remaining allegations contained in paragraph 23 of the Complaint.

**Complaint Paragraph 24**

24.     The claims of the Speckhart Patent are directed, inter alia, to a weight sensing pad for an automobile.

**Response:**     Delphi states that the '568 Patent speaks for itself and is the best evidence of its contents.  Delphi denies the remaining allegations contained in paragraph 24 of the Complaint.

**Complaint Paragraph 25**

25.     Methode is the owner by assignment of the Speckhart Patent, its subject matter, and the rights of recovery flowing therefrom.

**Response:**     Delphi denies the allegations contained in paragraph 25 of the Complaint.

**Complaint Paragraph 26**

26.     On information and belief, Delphi has manufactured and used, and continues to have manufactured and continues to use, weight sensing pads in the United States without authorization from Methode.

**Response:**     Delphi states that it has no obligation to obtain "authorization from Methode" to manufacture or use Delphi's PODS bladders in the United States or elsewhere.  Delphi denies the remaining allegations contained in paragraph 26 of the Complaint.

**Complaint Paragraph 27**

27.     On information and belief, Delphi has offered for sale, or intends to offer for sale and sell, weight sensing pads throughout the United States without authorization from Methode.

**Response:**     Delphi states that it has no obligation to obtain "authorization from Methode" to sell or offer to sell Delphi's PODS bladders in the United States or elsewhere.  Delphi denies the remaining allegations contained in paragraph 27 of the Complaint.

**Complaint Paragraph 28**

28.     On information and belief, Delphi's weight sensing pads infringe, literally or by equivalents, one or more valid and enforceable claims of the Speckhart Patent.

**Response:**     Delphi denies the allegations contained in paragraph 28 of the Complaint.

**Complaint Paragraph 29**

29.     Delphi has infringed, and continues to infringe, directly or indirectly, the Speckhart Patent by, inter alia, practicing or inducing or contributing to others practicing one or more valid and enforceable claims of the Speckhart Patent.

**Response:**     Delphi denies the allegations contained in paragraph 29 of the Complaint.

**Complaint Paragraph 30**

30.     As a direct and proximate result of Delphi's acts of infringement of the Speckhart Patent, Methode has suffered injury and damages for which it is entitled to relief, including, but not limited to, monetary damages.

**Response:**     Delphi denies the allegations contained in paragraph 30 of the Complaint.

**Complaint Paragraph 31**

31.     On information and belief, Delphi has knowingly, willfully, and deliberately infringed the Speckhart Patent in conscious disregard of Methode's rights, making this case exceptional within the meaning of 35 U.S.C. § 285 and justifying treble damages pursuant to 35 U.S.C. § 284.

**Response:**     Delphi denies the allegations contained in paragraph 31 of the Complaint.

**Complaint Paragraph 32**

32.     On information and belief, Delphi will continue to infringe the Speckhart Patent, causing immediate and irreparable harm unless this Court enjoins and restrains its activities.

**Response:**     Delphi denies the allegations contained in paragraph 32 of the Complaint.

**Complaint Paragraph 33**

33.     On information and belief, the infringement by Delphi has deprived, and will further deprive, Methode of revenue which Methode would have made or would enjoy in the future; has injured Methode in other respects; and will cause Methode added injury and damage in the future unless Delphi is enjoined from infringing the Speckhart Patent.

**Response:**     Delphi states that it is Methode's improper and unlawful actions to date, including Methode's refusal to provide prototypes of Delphi's PODS bladders as required by the parties' contract, that have resulted, and will result in, any alleged loss of revenue to Methode.  Delphi denies the remaining allegations contained in paragraph 33 of the Complaint.

## COUNT II
## PATENT INFRINGEMENT BY MARIAN

**Complaint Paragraph 34**

34.     Methode incorporates by reference the allegations of paragraphs 1 through 33 as though fully set forth herein.

**Response:**     Delphi repeats its answers set forth in paragraphs 1 through 33.

**Complaint Paragraph 35**

35.     On information and belief, Marian has manufactured and continues to manufacture weight sensing pads in the United States without authorization from Methode.

**Response:**     Delphi denies the allegations contained in paragraph 35 of the Complaint.

**Complaint Paragraph 36**

36.     On information and belief, Marian has offered for sale, and/or intends to offer for sale and sell, weight sensing pads throughout the United States without authorization from Methode.

**Response:**      Delphi denies the allegations contained in paragraph 36 of the Complaint.

## Complaint Paragraph 37

37.      On information and belief, Marian's weight sensing pads infringe, literally or by equivalents, one or more valid and enforceable claims of the Speckhart Patent.

**Response:**      Delphi denies the allegations contained in paragraph 37 of the Complaint.

## Complaint Paragraph 38

38.      Marian has infringed, and continues to infringe, directly or indirectly, the Speckhart Patent by, inter alia, practicing or inducing or contributing to others practicing one or more valid and enforceable claims of the Speckhart Patent.

**Response:**      Delphi denies the allegations contained in paragraph 38 of the Complaint.

## Complaint Paragraph 39

39.      As a direct and proximate result of Marian's acts of infringement of the Speckhart Patent, Methode has suffered injury and damages for which it is entitled to relief, including, but not limited to, monetary damages.

**Response:**      Delphi denies the allegations contained in paragraph 39 of the Complaint.

## Complaint Paragraph 40

40.      On information and belief, Marian has knowingly, willfully, and deliberately infringed the Speckhart Patent in conscious disregard of Methode's rights, making this case exceptional within the meaning of 35 U.S.C. § 285 and justifying treble damages pursuant to 35 U.S.C. § 284.

**Response:**      Delphi denies the allegations contained in paragraph 40 of the Complaint.

**Complaint Paragraph 41**

41.     On information and belief, Marian will continue to infringe the Speckhart Patent, causing immediate and irreparable harm unless this Court enjoins and restrains its activities.

**Response:**     Delphi denies the allegations contained in paragraph 41 of the Complaint.

**Complaint Paragraph 42**

42.     On information and belief, the infringement by Marian has deprived, and will further deprive, Methode of revenue which Methode would have made or would enjoy in the future; has injured Methode in other respects; and will cause Methode added injury and damage in the future unless Marian is enjoined from infringing the Speckhart Patent.

**Response:**     Delphi states that it is Methode's improper and unlawful actions to date, including Methode's refusal to provide prototype parts as required by the parties' contract, that have resulted, and will result in, any alleged loss of revenue to Methode.  Delphi denies the remaining allegations contained in paragraph 42 of the Complaint.

**AFFIRMATIVE DEFENSES**

**First Affirmative Defense**
**(Non-Infringement)**

Delphi has not infringed, and does not infringe any valid, enforceable claim of the '568 Patent, either directly, indirectly, contributorily, through the doctrine of equivalents, or otherwise, and has not induced others to infringe the '568 Patent.

**Second Affirmative Defense**
**(Invalidity)**

The '568 Patent is invalid for failure to comply with one or more of the conditions of patentability specified in Title 35 of the United States Code, including, but not limited to 35

U.S.C. §§ 102, 103, and 112 and/or for being otherwise in violation of one or more of the sections of Parts I, II, and III of Title 35 of the United States Code.

**Third Affirmative Defense**
**(Unenforceability Due to Inequitable Conduct)**

Upon information and belief, during prosecution of the '568 Patent, Methode/ACI and others substantively involved in the prosecution of the '568 Patent deliberately engaged in a pattern of inequitable conduct that was misleading and calculated to mislead the USPTO into granting the '568 Patent coverage to which Methode/ACI was not and is not entitled.

Upon information and belief, those involved in this scheme included at least the following individuals at Methode/ACI, all of whom were believed to be substantively involved in the prosecution of the '568 Patent:  Frank Speckhart and Scott Baker.

Upon information and belief, Methode/ACI and others substantively involved in the prosecution of the '568 Patent filed the underlying application for this patent directed to subject matter that the named inventors either did not invent or which was not patentable over the prior art known to those substantively involved in the prosecution of the '568 Patent.

In addition, upon information and belief, Methode/ACI and those substantively involved in the prosecution of the '568 Patent deliberately concealed from the USPTO material prior art and other material information, including the inventions, designs, offers for sales, and other information regarding the design and development of Delphi's PODS products, including Delphi's PODS bladder with circular cells formed by a hexagonal geometry invention, as well as other occupant sensing designs and technologies disclosed by Delphi to Frank Speckhart, Scott Baker and others at Methode/ACI in an effort by Methode/ACI to mislead the USPTO.

In addition, upon information and belief, Methode/ACI and those substantively involved in the prosecution of the '568 Patent, deliberately and with deceptive intent concealed from the

20

USPTO the true inventors of the subject matter claimed in the '568 patent, namely Messrs. Duane Fortune and/or Morgan Murphy, concealed the inventive contribution attributable to Messrs. Fortune and/or Murphy to the subject matter claimed in the '568 Patent and/or incorrectly named inventors in an unlawful effort to disenfranchise Messrs. Fortune and/or Murphy from their rights to the subject matter claimed in the '568 Patent and to mislead the USPTO.

The foregoing activities were material and intended by Methode/ACI and others substantively involved in the prosecution of the '568 Patent to mislead the USPTO. As a result, the '568 Patent is unenforceable by reason of inequitable conduct.

### Fourth Affirmative Defense
### (License/Waiver/Assignment/Covenant Not to Sue)

The claims of the Complaint are not sustainable against Delphi because Delphi has authority by license, assignment, waiver, covenant not to sue and/or otherwise to practice the claimed subject matter of the '568 Patent.

### Fifth Affirmative Defense
### (Prosecution Admissions & Estoppel)

By reason of the proceedings before the U.S. Patent Office in the prosecution of the '568 Patent and subsequent patent applications materially related thereto and claiming the same or equivalent subject matter, the applicants and their assigns are estopped to maintain that the claims of the '568 Patent are of such scope or have effect against any apparatus made, used or sold by Delphi.

**Sixth Affirmative Defense**
**(Application of the Automatic Stay)**

Any award of damages or relief, including injunctive relief, that would impair, compromise or exercise control over monies or property of the Delphi Debtors Estate are subject to the automatic stay provisions of 11 U.S.C. § 362.

**Seventh Affirmative Defense**
**(Patent Misuse)**

Methode's claims for patent infringement are barred by virtue of its misuse and other anti-competitive conduct relating to the patent allegations herein. Methode knew or should have known through its obligatory pre-filing due diligence that the '568 Patent is flawed, invalid, and/or was procured through fraud before the USPTO for failing to name employees of Delphi as inventors of the claimed subject matter of the '568 Patent and/or for failing to disclose to the USPTO material prior art and other material information, including the inventions, designs, offers for sales, and other information regarding the design and development of the PODS products, including the bladder with circular cells formed by a hexagonal geometry invention developed by Delphi, and/or by its knowledge that Delphi possesses an interest in the '568 Patent for its employee(s) are inventors of the claimed subject matter and/or by the license and/or other rights granted, awarded, or vested to Delphi under the patent. Nevertheless, Methode brought the present action against Delphi for the purpose of wrongfully attempting to force Delphi to forego contractual rights that it fairly bargained for and agreed upon in the parties' contract. Methode has engaged in patent misuse barring Methode from any relief under the Complaint.

**Eighth Affirmative Defense**
**(Unclean Hands)**

Methode's claims and relief sought in the Complaint are barred in whole or in part by Methode's unclean hands associated with its filing of a patent application resulting in the '568

patent without disclosure to Delphi, bad faith negotiation tactics, its breach of the parties'

contract, its efforts to interfere with Delphi's customers and suppliers, and its bringing of this

vexatious litigation in an attempt to enforce a known invalid and/or unenforceable patent and/or

a patent under which Delphi possesses rights.

### Ninth Affirmative Defense
### (Estoppel)

Methode's claims and relief sought in the Complaint are estopped based on its past

actions and omissions which are contrary to the claims and relief it now seeks.

### Tenth Affirmative Defense
### (Failure to State a Claim)

The Complaint fails to state a claim against Delphi upon which relief can be granted.

### Eleventh Affirmative Defense

Delphi reserves the right to raise additional affirmative defenses and counterclaims based

on facts disclosed or revealed through discovery.

### COUNTERCLAIMS

1.      Pursuant to Rule 13 of the Federal Rules of Civil Procedure, Delphi and Delphi

Technologies, Inc., for their Counterclaims against Methode, state as follows:

### Parties

2.      Delphi is a limited liability company formed under the laws of the State of

Delaware and has a principal place of business at 5725 Delphi Drive, Troy, Michigan 48098-

2815.

3.      Delphi Technologies, Inc. is a wholly owned subsidiary of Delphi and formed

under the laws of the State of Delaware and has a principal place of business at 5725 Delphi

Drive, Troy, Michigan 48098-2815.

4.      Upon information and belief, Methode is a Delaware corporation with its

principal place of business at 7401 West Wilson Avenue, Chicago, Illinois.

### Jurisdiction

5.      This Court has subject matter jurisdiction over the following Counterclaims

pursuant to 28 U.S.C. §§ 1331, 1338, 1367, 2201 and 2202.

6.      Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b) and 1391(c),

as well as 28 U.S.C. § 1400(b).   However, as set forth above in its response to Complaint

Paragraph 5, Delphi denies that this Court is a convenient forum to address this dispute.

### Background

7.       Having spun-off from General Motors Corporation in 1998, Delphi is a world-

wide supplier of automotive parts to the automotive industry.

8.      Since fall of 2005, however, Delphi has been under bankruptcy court protection.

Delphi's planned and approved emergence from bankruptcy in 2008 was undone by the global

recession, including its seizing effects on credit markets, and its zeroing effects on the sales of automotive companies worldwide, including especially General Motors Corporation. Delphi has depended on funding from General Motors—which has depended on funding from the United States government—and is currently in vital talks with the federal government and General Motors, among others, which will determine whether Delphi will continue as an entity or liquidate.

9.      Delphi is nonetheless a leading supplier of the safety-critical PODS for which Delphi is the sole supplier of this product to its automotive customers spanning approximately 90 different vehicle models.  Delphi's PODS is a bladder-based occupant sensing technology designed to passively detect the presence of a child and/or small adult occupant in the front passenger seat of a vehicle and supply information to a vehicle's airbag controller to permit the controller to selectively suppress the deployment of the front passenger airbag.  One of the safety-critical parts of Delph's PODS is the pressure-sensing PODS bladder.  Delphi's PODS are manufactured to specific and exacting OEM specifications and requirements, as well as governmental safety standards.  Without Delphi's PODS, the vehicles cannot be manufactured, assembled, shipped to automobile dealerships and sold to the public.

10.      Delphi, a pioneer in automotive safety technologies, developed its PODS products including Delphi's PODS bladders.  In late 1996 and through 1997, employees at Delphi/Delco, including Duane Fortune, Robert Myers, Morgan Murphy and Pamela Roe, began working on a PODS bladder for use in PODS.

11.      After months of testing, researching, and designing bladders, Delphi/Delco approached Methode's predecessor, Methode/ACI, to determine whether Methode/ACI could serve as a potential manufacturer for Delphi's PODS bladder.  To that end, in May 1997,

Delphi/Delco and Methode/ACI entered into a NDA/Confidentiality Agreement. Thereafter, and pursuant to this NDA/Confidentiality Agreement, Delphi/Delco began providing to Methode/ACI significant details of Delphi/Delco's inventions and development work, including Delphi/Delco's information on its bladder designs, so that Methode/ACI could evaluate and provide appropriate manufacturing prototypes and tooling to produce the bladders to be used in Delphi's PODS products.

12.     During the course of this development, Mr. Duane Fortune, Mr. Morgan Murphy, among others at Delphi/Delco—but not Dr. Speckhart, Mr. Baker or anyone else at Methode/ACI—invented a PODS bladder with an array of circular cells formed by a hexagonal geometry. Delphi/Delco subsequently shared these concepts and designs with Methode/ACI.

13.     On February 18, 1998, Delphi/Delco filed a patent application directed to a weight-sensing bladder that encompasses the bladder used in Delphi's PODS. This patent application ultimately issued as U.S. Patent No. 6,101,436 ("'436 Patent") on August 8, 2000.

14.     Unbeknownst to Delphi/Delco and months after Delphi/Delco filed its patent application, ACI also filed a patent application on the same subject matter as that of Delphi/Delco's patent application. ACI's patent application ultimately led to the patent-in-suit, U.S. Patent No. 5,975,568 ("'568 Patent").

15.     During prosecution of patent applications subsequent to the '568 Patent, Methode has had several opportunities in the United States Patent Office to claim that its patent and "invention" came before Delphi's patent and invention, but Methode has consistently conceded and admitted on the Patent Office record that Delphi filed its patent application first and that Delphi's patent is prior art under 35 U.S.C. §102(e), thereby giving priority of any invention in the PODS bladder to Delphi.

16.    On information and belief, Methode has known for years that Delphi's patent has priority over Methode's patent.

**COUNT I - DECLARATION OF**
**INVALIDITY AND UNENFORCEABILITY OF THE '568 PATENT**

17.    Paragraphs 1-16 of Delphi's counterclaims are realleged and reincorporated by reference as if fully set forth herein.

18.    The '568 Patent was issued by the USPTO on November 2, 1999.  Methode, in paragraphs 11 and 25 of its Complaint, claims to own all rights in and to the '568 Patent.

19.    Method claims that certain acts of Delphi and Marian infringe the '568 Patent.

20.    The '568 Patent is invalid and unenforceable for failure to satisfy one or more of the conditions for patentability specified in Title 35 of the United States Code, including but not limited to 35 U.S.C. §§ 102, 103 and 112, and/or for being in violation of one or more of the sections of Parts I, II, and III of Title 35 of the United States Code, and/or for being anticipated by Delphi's prior art patent, the '436 Patent, and/or Delphi's prior invention.

21.    Upon information and belief, during prosecution of the '568 Patent, Methode/ACI and others substantively involved in the prosecution of the '568 Patent deliberately engaged in a pattern of inequitable conduct that was misleading and calculated to mislead the USPTO into granting the '568 Patent coverage to which Methode/ACI was not and is not entitled.

22.    Upon information and belief, those involved in this scheme included at least the following individuals at Methode/ACI, all of whom were believed to be substantively involved in the prosecution of the '568 Patent:  Frank Speckhart and Scott Baker.

23.    Upon information and belief, Methode/ACI and others substantively involved in the prosecution of the '568 Patent filed the underlying application for the '568 Patent directed to

27

subject matter that the named inventors either did not invent or which was not patentable over the prior art known to those substantively involved in the prosecution of the '568 Patent.

24.     In addition, upon information and belief, Methode/ACI and those substantively involved in the prosecution of the '568 Patent deliberately concealed from the USPTO material prior art and other material information, including the inventions, designs, offers for sales, and other information regarding the design and development of Delphi's PODS products, including the bladder with circular cells formed by a hexagonal geometry invention as well as other occupant sensing designs and technologies, disclosed by Delphi to Frank Speckhart, Scott Baker and others at Methode/ACI in an effort by Methode/ACI to mislead the USPTO.

25.     In addition, upon information and belief, Methode/ACI and those substantively involved in the prosecution of the '568 Patent, deliberately and with deceptive intent concealed from the USPTO the true inventors of the subject matter claimed in the '568 Patent, namely Messrs. Duane Fortune and/or Morgan Murphy, concealed the inventive contribution attributable to Messrs. Fortune and/or Murphy to the subject matter claimed in the '568 Patent, and/or incorrectly named inventors, in an unlawful effort to disenfranchise Messrs. Fortune and/or Murphy from their rights to the subject matter claimed in the '568 Patent and to mislead the USPTO.

26.     The foregoing activities were material and intended by Methode/ACI and others substantively involved in the prosecution of the '568 Patent to mislead the USPTO.  As a result, the '568 Patent is unenforceable by reason of inequitable conduct.

27.     Absent a declaration that the '568 Patent is invalid and/or unenforceable, Methode will continue to wrongfully assert the '568 Patent against Delphi, against Delphi's customers and suppliers, and against Marian in violation of the laws and contrary to the public policy of the

United States of America, and will thereby continue to cause Delphi irreparable injury and damage.

28.     By reason of the foregoing, there is an actual and justiciable controversy between Delphi on the one hand, and Methode on the other, and Delphi is entitled to a decree that the '568 Patent is invalid and/or unenforceable.

### COUNT II - DECLARATION OF
### NON-INFRINGEMENT OF THE '568 PATENT

29.     Paragraphs 1-28 of Delphi's counterclaims are realleged and reincorporated by reference as if fully set forth herein.

30.     Delphi has not infringed, and does not infringe any valid, enforceable claim of the '568 Patent, either directly, indirectly, contributorily, through the doctrine of equivalents, or otherwise, and has not induced others to infringe the '568 Patent.

31.     The '568 Patent fails to name at least one correct inventor who had an obligation to assign rights to the subject matter claimed in the '568 Patent to Delphi or an affiliate thereof.

32.     Delphi is authorized by at least one correct inventor of the subject matter claimed in the '568 Patent to practice the alleged inventions claimed the '568, said at least one correct inventor has not assigned rights in the '568 Patent to Methode.

33.     Absent a declaration that Delphi does not infringe the '568 Patent, Methode will continue to wrongfully assert the '568 Patent against Delphi, against Delphi's customers and suppliers, and against Marian in violation of the laws and contrary to the public policy of the United States of America, and will thereby continue to cause Delphi irreparable injury and damage.

34.     By reason of the foregoing, there is an actual and justiciable controversy between
Delphi on the one hand, and Methode on the other, and Delphi is entitled to a decree that Delphi
does not infringe the '568 Patent.

**COUNT III – INTERFERING PATENTS
UNDER 35 U.S.C. § 291 AGAINST METHODE**

35.     Paragraphs 1-34 of Delphi's counterclaims are realleged and reincorporated by
reference as if fully set forth herein.

36.     On August 8, 2000, the USPTO duly and legally issued the '436 Patent, entitled
"Vehicle Occupant Weight Estimation Apparatus Having Fluid Filled Multi-Cell Seat Bladder."
Delphi Technologies, Inc., a wholly owned subsidiary of Delphi, is the owner by assignment of
all right, title and interest in and to the '436 Patent with the exclusive right to enforce the '436
Patent and to collect damages for its infringement.  The '436 Patent is valid and enforceable.  A
copy of the '436 Patent is attached as Exhibit A.

37.     On September 3, 1997, United States Patent Application No. 08/923,020 ("the
'020 application") was filed.

38.     On February 18, 1998, United States Patent Application No. 09/028,869 (the '869
application") was filed, claiming the benefit of the '020 application, filed on September 3, 1997.

39.     On August 8, 2000, the '869 application matured into the '436 Patent.

40.     Claim 1 of the '436 Patent claims:

> 1. Apparatus for estimating the weight of an occupant of a seat in a motor
> vehicle, the seat having a foam cushion bottom, the apparatus comprising:
>
> > a fluid-filled bladder disposed in the foam cushion bottom, the
> > bladder comprising top and bottom sheets of elastomeric material
> > with a continuous seam about their periphery to form a closed
> > volume, a plurality of spot welds between said top and bottom
> > sheets, said spot welds being distributed over said bladder, thereby
> > dividing said bladder into a contiguous array of generally circular

cells with free flow of said fluid between adjacent cells, the
bladder being substantially filled with fluid, and an exit port
disposed in said bottom sheet, substantially centered in a central
one of said cells positioned at a center of gravity of said fluid;

a pressure sensor coupled to said exit port for sealing said exit port
for sensing the pressure of said fluid; and

control means for estimating the weight of the occupant based on
the sensed fluid pressure.

41.     Methode claims to be the owner and/or claims to have the right to enforce the

'568 Patent, entitled "Sensor Pad for Controlling Airbag Deployment and Associated Support."

42.     Upon information and belief, on April 1, 1998, United States Application Serial

No. 29/085,897 ("the '897 application") was filed.

43.     Upon information and belief, on May 5, 1998, United States Application Serial

No. 09/072,833 ("the '833 application") was filed.

44.     Upon information and belief, on Sept. 3, 1998, United States Application Serial

No. 09/146,677 ("the '677 application") was filed, claiming the benefit of both the '897

application and the '833 application.  On Nov. 2, 1999, the '677 application matured into the

'568 Patent.

45.     Upon information and belief, claim 1 of the '568 Patent claims:

A weight sensing pad for an automobile seat, said weight sensing pad
comprising:

a bladder member having a compressible interior volume defined
by first and second sheets perimetrically bonded together,

wherein said bladder member is subdivided into a plurality of
substantially hexagonally shaped cells by a plurality of small,
substantially circular shaped cells by a plurality of small,
substantially circular regions of bonding between said first and
second sheets whereby said substantially hexagonally shaped cells
are in fluid communication with each other; and

31

a non-compressible fluid contained within said compressible interior volume of said bladder member.

46.     The '436 Patent and the '568 Patent interfere because at least claim 1 of the '436 Patent claims the same subject matter of at least claim 1 of the '568 Patent.

47.     The '436 Patent has priority over the '568 Patent.  Delphi first conceived of the invention disclosed in the '436 Patent and was diligent in reducing the invention to practice.

## COUNT IV - CORRECTION OF
## INVENTORSHIP PURSUANT TO 35 U.S.C. § 256

48.     Paragraphs 1-47 of Delphi's counterclaims are realleged and reincorporated by reference as if fully set forth herein.

49.     The failure to name the correct inventor(s) of the subject matter claimed in the '568 Patent was in error, without deceptive intention on Delphi's (*i.e.*, its employees) part, and requires a certificate of correction issued by the Director of the USPTO pursuant to 35 U.S.C. § 256, which should be accomplished before the Court considers any cause of action for infringement of the '568 Patent against these defendants.

50.     The failure to name the correct inventor(s) of the subject matter claimed in the '568 Patent was in error, without deceptive intention on Delphi's (*i.e.*, its employees) part, and requires a certificate of correction issued by the Director of the USPTO pursuant to 35 U.S.C. § 256 before any judgment or relief for alleged infringement of the '568 Patent can be granted in favor of Methode.

51.     This Court has authority to order correction of the patent on notice and a hearing pursuant to 35 U.S.C. § 256.

## COUNT V - TORTIOUS INTERFERENCE WITH
## BUSINESS/PROSPECTIVE BUSINESS RELATIONSHIP

52.     Paragraphs 1-51 of Delphi's counterclaims are realleged and reincorporated by reference as if fully set forth herein.

53.     Delphi has ongoing and prospective business relationships with customers whereby Delphi manufactures and sells certain products.  Delphi also has ongoing and prospective business relationships with suppliers that provide parts for various Delphi products.

54.     On information and belief, Methode was aware of Delphi's ongoing and prospective business relationships with Delphi's customers and suppliers when Methode made direct contacts with least one Delphi customer starting as early as April 2009.

55.     On information and belief, Methode acted improperly, without privilege, and in bad faith in the interference of Delphi's business practice, and the business relations between Delphi and Delphi's customers and suppliers, by, among other acts, falsely representing to Delphi's customers that Methode holds valid and enforceable patent rights, and that Delphi and/or Delphi's customers and suppliers infringe upon Methode's allegedly valid patent rights.

56.     On information and belief, these representations have been and are being made for the specific purpose of wrongfully interfering with and inducing the disruption of existing business relationships or prospective business relationships between Delphi and Delphi's customers and suppliers, and they have had or are having this effect.

57.     As a result of Methode's intentional and unjustified interference, Delphi has been and continues to be damaged.

## JURY DEMAND

Delphi demands a trial by jury on all issues so triable.

## RELIEF REQUESTED

**WHEREFORE**, Delphi respectfully requests the following relief:

A.  A judgment in favor of Delphi and denying Methode all relief requested in its Complaint in this action and dismissing Methode's Complaint with prejudice;

B.  A judgment that the '568 Patent is invalid and unenforceable;

C.  A judgment that Delphi has not infringed and is not infringing, either literally or under the doctrine of equivalents, any valid and enforceable claim of the '568 Patent, and that Delphi has not contributed to or induced and is not contributing to or inducing infringement of any valid and enforceable claim of the '568 Patent;

D.  A judgment that Delphi Delphi has authority by license, assignment, waiver, covenant not to sue and/or otherwise to practice the claimed subject matter of the '568 Patent;

E.  A judgment that Methode has misused the '568 patent;

F.  A judgment that Methode has unclean hands;

G.  A judgment that Methode is estopped from asserting its claims and receiving the relief requested;

H.  A judgment that the '568 Patent Interferes with the '463 Patent;

I.  A judgment that the '463 Patent has priority over the '568 Patent;

J.  In the alternative:

    a.  a declaration that the '568 Patent fails to name the correct inventor(s) of the subject matter claimed in the '568 Patent;

    b.  a declaration that the '568 Patent fails to name at least one correct inventor who had an obligation to assign rights to the subject matter claimed in the '568 Patent to Delphi; and

    c.  a Court Order for correction of inventorship of the '568 Patent on notice and hearing of all parties concerned and directing the Director of the USPTO to issue a certificate in accordance with 35 U.S.C. § 256;

    d.  a declaration that Delphi is authorized to practice the alleged invention claimed in the '568 Patent by virtue of there being at least one correct inventor of the subject matter claimed in the '568 Patent who has not assigned rights in said subject matter to Methode and who has assigned such rights to Delphi;

K.  A judgment enjoining Methode from any further intentional and unjustified interference with any of Delphi's ongoing or prospective business relationships;

L.  A judgment awarding Delphi damages determined to be sustained by Delphi as a result of Methode's actions;

M.  A judgment finding that Methode's actions were willful and/or in bad faith entitling Delphi to enhanced damages including punitive damages;

N.  A judgment awarding pre-litigation and pre-award interest on all damages at the maximum legally allowable rate of interest;

O.  A judgment that this case is an exceptional case and awarding Delphi its costs, expenses and reasonable attorneys' fees pursuant to 35 U.S.C. § 285 and as otherwise permitted by law; and

P.   Any and all other relief to which Delphi may be entitled or which this Court

deems just and proper.

Respectfully submitted,

Dated:    _____May 5, 2009_____          By:    _____/s/ Timothy J. Rechtien_____

Charles W. Shifley
   *cshifley@bannerwitcoff.com*
Binal J. Patel
   *bpatel@bannerwitcoff.com*
Matthew P. Becker
   *mbecker@bannerwitcoff.com*
Timothy J. Rechtien
   *trechtien@bannerwitcoff.com*
BANNER & WITCOFF, LTD.
10 South Wacker Drive, Suite 3000
Chicago, Illinois 60606
Tel.:    (312) 463-5000
Fax:    (312) 463-5001

***Attorneys for Defendants/Counter-
Plaintiffs Delphi Automotive Systems LLC
and Marian, Inc. and Counter-Plaintiff
Delphi Technologies, Inc.***

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of May, 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

> Charles Randolph Wolfe , Jr.
> Katherine Pauley Barecchia
> David J. Stetler
> Jonathan M. Cyrluk
> Henry M. Baskerville
> *STETLER & DUFFY*
> 11 S. LaSalle Street, Suite 1200
> Chicago, Illinois 60603
> wolfe@blankrome.com
> barecchia@blankrome.com
> dstetler@stetleranduffy.com
> hbasker@stetleranduffy.com
> cyrluk@stetleranduffy.com

           /s/Timothy J. Rechtien