# EXHIBIT M

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| METHODE ELECTRONICS, INC., | ) |
| Plaintiff/Counter-Defendant, | ) |
| v. | ) |
| | ) Civil Action No. 09-CV-02191 |
| DELPHI AUTOMOTIVE SYSTEMS LLC | ) |
| | ) HON. DAVID H. COAR |
| Defendant/Counter-Plaintiff | ) |
| | ) Magistrate Judge Geraldine Soat Brown |
| MARIAN, INC., | ) |
| Defendant | ) |
| DELPHI TECHNOLOGIES, INC. | ) |
| Counter-Plaintiff. | ) |

**DELPHI AUTOMOTIVE SYSTEMS LLC'S MEMORANDUM**
**<u>IN SUPPORT OF ITS MOTION FOR TRANSFER OF VENUE</u>**

## TABLE OF CONTENTS

I.    **FACTUAL BACKGROUND** ...................................................................................................1

II.    **SUMMARY OF THE ARGUMENT** ........................................................................................3

III.    **ARGUMENT** ......................................................................................................................5

      A.    The Relevant Law Governing Motions to Transfer Venue States That The Parties, Witnesses and Justice Should Be Served ..............................................................5

      B.    By Contract, Methode Should Have Brought this Action in the Eastern District of Michigan ..................................................................................................................6

      C.    The Public Interest Factors Favor Transfer to the Eastern District of Michigan ...10
           1.    *The Related Michigan Action Significantly Weighs in Favor of Transfer.* 10
           2.    *The Citizens of the Eastern District of Michigan Have a Unique and Strong Localized Interest in this Case* ......................................................11
           3.    *The Speed at Which Trial Will Proceed Favors Transfer.* ........................11
           4.    *The Existence of Michigan State Law Issues Favors Transfer* ..................12

      D.    The Private Interest Factors Favor Transfer to the Eastern District of Michigan ..12
           1.    *Methode's Choice of the Illinois Forum Should be Given No Weight* .......12
           2.    *The Location of the Parties, Witnesses and Potential Evidence Weigh Slightly in Favor of Transfer.* ....................................................................13

IV.    **CONCLUSION** ................................................................................................................15

# TABLE OF AUTHORITIES

**Cases**

*Bascom v. Maxim Integrated Prods., Inc.*,
   534 F. Supp. 2d 700 (W.D. Tex. 2008) .................................................................... 6

*Berol Corp. v. BIC Corp.*,
   No. 02-0559, 2002 WL 1466829 (N.D. Ill. July 8, 2002) ...................................... 14

*Cooper Bauck Corp. v. Dolby Labs., Inc.*,
   No. 05-7063, 2006 WL 1735282 (N.D. Ill. June 19, 2006) .................................... 11

*Illinois Blower, Inc. v. Deltak, LLC*,
   No. 04-0341, 2004 WL 765187 (N.D. Ill. April 7, 2004) ............................ 5, 10, 12

*In re T.S. Tech USA Corp.*,
   551 F.3d 1315 (Fed. Cir. 2008) ................................................................................. 5

*M/S Bremen v. Zapata Off-Shore Co.*,
   407 U.S. 1 (1972) ....................................................................................................... 9

*Muzumdar v. Wellness Int'l Network, Ltd.*,
   438 F.3d 759 (7th Cir. 2006) ..................................................................................... 6

*Omron Healthcare, Inc. v. Maclaren Exps. Ltd.*,
   28 F.3d 600 (7th Cir. 1994) ....................................................................................... 7

*Safety-Kleen Corp. v. Davis*,
   No. 98-4550, 1998 WL 748269 (N.D. Ill. Oct. 22, 1998) ........................ 4, 10, 12, 14

*Sitrick v. DreamWorks LLC*,
   No. 02-8403, 2003 WL 21147898 (N.D. Ill. May 14, 2003) ........................... 5, 6, 13

*Texas Instruments Inc. v. Tessera, Inc.*,
   231 F.3d 1325 (Fed. Cir. 2000) ................................................................................. 7

*Tissue Extraction Devices, LLC v. Suros Surgical Sys., Inc.*,
   No. 08-140, 2008 WL 4717158 (N.D. Ill. May 20, 2008) .................................. 11, 13

*United States Gypsum Co. v. 3M Innovative Properties Co.*,
   No. 07-6381, 2008 WL 514976 (N.D. Ill. Feb. 20, 2008) ..................................... 6, 9

*Wilkinson Co. v. Krups N. Am., Inc.*,
   48 F. Supp. 2d 816 (N.D. Ill. 1999) .......................................................... 4, 6, 9, 10, 14

**Statutes**

28 U.S.C. § 1404(a) ........................................................................................................ 5

This patent/contract action should be transferred, under 28 U.S.C. § 1404(a), to the United States District Court for the Eastern District of Michigan, Southern Division, because (1) Methode Electronics, Inc. ("Methode") and Delphi Automotive Systems LLC ("Delphi") expressly agreed that "the forum and venue for any legal or equitable action or proceeding arising out of, or in connection with, [the parties' contract] will lie in the appropriate federal or state courts in the State of Michigan;" and (2) Methode and Delphi are already litigating a similar lawsuit in Michigan state court within the Eastern District of Michigan. Although Marian, Inc. ("Marian") is named in Methode's Complaint, this dispute is truly between Delphi and Methode. Moreover, the facts and circumstances of this patent/contract dispute demonstrate that Michigan is clearly a more convenient, if not necessary, venue. In short, this lawsuit has substantial connections to Michigan and lacks connections of significance to this District.

## I.     FACTUAL BACKGROUND

Stripped of its title, Methode's present suit is nothing more than an anticipatory breach of contract dispute, of a kind already pending in Michigan, masquerading as an action for patent infringement, intended only to further threaten Delphi with the risk of preliminary injunction.

Delphi is the leading supplier of a safety-critical airbag actuation system called the Passive Occupant Detection System ("PODS").[1] (*See* Ex. 3, Decl. of Lisa A. Hanson, ¶ 4 ("Hanson Dec.")). PODS is a seat-occupant sensing technology that detects a child and/or small adult in vehicle front passenger seats and supplies information to a computer to permit the inflation of the airbag to be suppressed when suppression is needed for safety. (*See id.* at ¶ 3). Delphi is the *sole* supplier of the PODS product to its automotive customers spanning approximately 90 different vehicle models. (*See id.* at ¶ 4). Almost every major Original Equipment Manufacturer ("OEM") in the world uses Delphi's PODS system. (*See id.*). Such OEM's include, for example, General Motors, Ford, Chrysler, Volkswagen Auto Group, Hyundai, Subaru, Nissan, and Toyota. (*See id.*).

Delphi's PODS are manufactured to specific and exacting OEM specifications and

---

[1] Since the Fall of 2005, as well, Delphi has operated under bankruptcy court protection. Delphi's planned and approved emergence from bankruptcy in 2008 was undone by the global recession, including its seizing effects on credit markets, and its zeroing effects on the sales of automotive companies worldwide, including especially General Motors. Delphi is currently in vital talks with the federal government and General Motors, among others, which will determine whether Delphi will continue as an entity.

1

requirements, as well as governmental safety standards. (*See id.* at ¶ 5). Delphi is the source for PODS which are ordered on an as-needed basis by its OEM customers pursuant to their contracts with Delphi. (*See id.*). Without Delphi's PODS, customer vehicles cannot be assembled, shipped to automobile dealerships and sold to the public. (*See id.*).

One of the safety-critical parts of Delphi's PODS is a bladder (the "PODS bladder"). (*See id.*). Significantly, Delphi—not Methode—invented and patented its PODS bladder along with numerous other aspects covering the design and operation of Delphi's PODS products. (Ex. 8, U.S. Patent No. 6,101,436). After months of testing, researching, and designing bladders, Delco Electronics Corporation ("Delphi/Delco")[2] contacted Methode's predecessor, Automotive Components, Incorporated ("Methode/ACI"), and entered into a NDA/Confidentiality Agreement. Pursuant to this agreement, Delphi/Delco provided to Methode/ACI significant details of Delphi/Delco's inventions and development work, including Delphi/Delco's information on its bladder designs. Delphi intended that Methode/ACI would evaluate and provide appropriate manufacturing prototypes and tooling to produce the bladders to be used in Delphi's PODS products.

In 2001, Delphi and Methode entered into a Long Term Contract such that Methode became the ***sole*** supplier of Delphi's PODS bladders. (*See id.* at ¶ 8). For many years, Methode enjoyed this sole-supplier arrangement, selling over 30 million PODS bladders to Delphi. (*See id.*). In early to mid-2008, however, Methode began taking advantage of its sole-supplier arrangement, by demanding, *inter alia*, that Delphi pay drastically higher prices for the PODS bladders and in January 2009 by refusing, *inter alia*, to provide prototype bladders[3] for new vehicle launches. Many of these prototypes were for launches that Delphi had already been awarded PODS contracts by its OEM customers as the sole supplier. (*See id.*).

Unreasonable positions by Methode left Delphi and its OEM customers at risk. (*See id.* at ¶ 9). The OEM customers depend exclusively on Delphi for the PODS product and Delphi buys the PODS bladder solely from Methode. (*See id.*). By refusing to make prototype bladders for new vehicle launches, Methode put at risk the manufacture and sale of new vehicle models

---

[2] Since around January 1998, Delphi/Delco was a wholly-owned subsidiary of Delphi and is now part of Delphi.

[3] Methode has manufactured thousands of prototype parts for Delphi during the course of the parties' business relationship. (*See* Hanson Dec. at ¶ 8).

2

slated to lift vehicle sales in the depressed global automotive market. (*See id.*). Because Methode's practices carried significant negative consequences for Delphi, Delphi's OEM customers, and the vehicle buying public, Delphi was left with no option but to seek out other sources of the prototype bladders that Methode has wrongfully refused to manufacture. (*See id.*). Delphi consulted with and provided information to an Indiana company, Marian, so that Marian could provide limited prototypes of Delphi's PODS bladders.[4] (*See id.*).

At the same time, in October 2008, Delphi was forced to bring suit against Methode in Michigan State Court in the 6th Judicial Circuit of Michigan, Oakland County Circuit Court (captioned *Delphi Automotive Systems, LLC v. Methode Electronics*, Inc., Case No. 08-095518-CK) (the "Michigan Action"). (Ex. 1, Michigan Action Complaint). In January 2009, Methode counterclaimed against Delphi, alleging, *inter alia*, anticipatory repudiation of the parties' supply contract. (Ex. 2, Methode's Michigan Action Answer and Counterclaims at Counterclaim ¶¶ 48 & 49). Also in January 2009, Delphi filed its Answer to Methode's Counterclaims. (Ex. 10, Delphi's Michigan Action Answer to Methode's Counterclaims).

Any litigation of this dispute between the parties was expressly required to take place in Michigan by the parties' contract. (Ex. 6, General Terms and Conditions ("T&Cs") at ¶ 26.1). Methode and Delphi expressly agreed that "the forum and venue for any legal or equitable action or proceeding arising out of, or in connection with, [the parties' contract] will lie in the appropriate federal or state courts in the State of Michigan." *Id.* Rather than do as it agreed by contract with Delphi, however, Methode filed the present suit in this District.

## II.    SUMMARY OF THE ARGUMENT

The present case should be transferred to the Eastern District of Michigan, to effect the contractual agreement of Methode, for reasons of judicial economy, and to do justice. Put simply, on the one hand, this case has powerful ties drawing it to Michigan, and on the other, lacks meaningful connections to this District. Therefore, this Court should transfer this case to the Eastern District of Michigan forthwith.

First and foremost, both Delphi and Methode have already contemplated resolving—and

---

[4] Although Marian is named in Methode's Complaint, this dispute is truly between Delphi and Methode. While Marian has provided limited prototypes of Delphi's PODS bladders that Methode has wrongfully refused to manufacture, Marian has not and does not have any plans to provide any finalized or finished products to Delphi. (*See* Ex. 5, Decl. of Brian Witchger, ¶ 7 ("Witchger Dec.")).

3

indeed are contractually-required to resolve—this patent dispute in Michigan. Methode's patent infringement allegations stem from Methode's belief that Delphi will breach its agreement with Methode by pursuing supply of PODS from sources other than Methode. These allegations, however, were required by contract to be pursued in Michigan. Indeed, General Terms and Conditions ("T&Cs") between the parties state plainly that "the forum and venue for any legal or equitable action or proceeding arising out of, or in connection with, [the contracts] ***will lie in the appropriate federal or state courts in the State of Michigan***" and that the parties "specifically waive[ ] any and all objections to such jurisdiction and venue." (Ex. 6, T&Cs at ¶ 26.1). Because this patent dispute "arises out of," and is "in connection with" the contracts by which the parties do business, the forum selection clause of the T&Cs apply to this dispute. Accordingly, Methode agreed that this case should lie in Michigan.

To hold Methode to its agreement, this case should be transferred to the Eastern District of Michigan—"the appropriate federal . . . court[ ] in the State of Michigan." The presence of this forum selection clause in the Methode/Delphi T&Cs is a significant factor that must figure centrally in this Court's analysis of this matter. *See Wilkinson Co. v. Krups N. Am., Inc.*, 48 F. Supp. 2d 816, 818 (N.D. Ill. 1999) ("The presence of a forum-selection clause is a 'significant factor that figures centrally in the district court's calculus'").

Second and equally important, Delphi and Methode are presently involved in active, ongoing, and closely related litigation in Delphi's Michigan Action, which is located within the Eastern District of Michigan. Delphi initiated its Michigan Action against Methode based on, *inter alia,* Methode's breach of supply contracts with Delphi. In response, Methode counterclaimed alleging that Delphi anticipatorily breached the supply contracts. Importantly, the enforceability of the very contracts at issue in the Michigan Action directly give rise to both Methode's patent infringement claims and Delphi's belief that it has the authority—acting without patent infringement—to practice the patent Methode now alleges Delphi is infringing. As this Court has noted, a "significant factor favoring transfer . . . is the existence of related litigation in the transferee forum." *Safety-Kleen Corp. v. Davis*, No. 98-4550, 1998 WL 748269, at *3 (N.D. Ill. Oct. 22, 1998) (Coar, J.) (citations omitted).

Moreover, any thought given to Methode's choice of forum or location here is overwhelmed by the existence of the forum selection clause and the fact that the situs of any alleged material events is outside the District. Methode itself is in Michigan, as well as Illinois,

4

with offices in Southfield, Michigan. (*See* Ex. 9, Methode Corporate Information).[5] Further, not only do all of the parties in this case have some connection to Michigan—Methode (Michigan/Illinois/Tennessee), Delphi (Michigan/Indiana), Delphi Technologies, Inc. ("DTI") (Michigan), Marian, Inc. (Indiana)—but much of the same evidence and witnesses that will be necessary to the resolution of this dispute will already be involved in the related Michigan Action.

### III. ARGUMENT

#### A. The Relevant Law Governing Motions to Transfer Venue States That The Parties, Witnesses and Justice Should Be Served

Transfer of venue in a patent case is governed by 28 U.S.C. § 1404(a). *In re T.S. Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008); *Sitrick v. DreamWorks LLC*, No. 02-8403, 2003 WL 21147898, at *2 (N.D. Ill. May 14, 2003) (Coar, J.) (applying § 1404(a) in a patent dispute). To that end, for the convenience of parties and witnesses and in the interest of justice, a district court may transfer a patent case to any other district or division where it might have been brought. 28 U.S.C. § 1404(a). Indeed, "[t]ransfer under § 1404(a) is appropriate if (1) venue is proper in both the transferor and transferee court; (2) transfer is for the convenience of parties and witnesses; and (3) transfer is in the interests of justice." *Illinois Blower, Inc. v. Deltak, LLC*, No. 04-0341, 2004 WL 765187, at *3 (N.D. Ill. April 7, 2004) (Coar, J.).

In evaluating transfer under § 1404(a), courts consider both private and public interest factors. *Sitrick*, 2003 WL 21147898, at *2. The private interest factors that courts consider include: (1) the plaintiff's choice of forum, (2) the situs of material events, (3) the relative ease and access to sources of proof, (4) the convenience of the parties and (5) the convenience of the witnesses. *Id.* The "[p]ublic interest factors or interests of justice 'relate to the court's familiarity with the applicable law, the speed at which the case will proceed to trial, and the desirability of resolving controversies in their locale,'" and "'may be determinative in a particular case, even if the parties and witnesses might call for a different result.'" *Id.* (citations omitted).

---

[5] The Dun & Bradstreet corporate family tree for "Methode Electonics" lists a branch office at 24585 Evergreen Road, Southfield, Michigan. (*See* Ex. 9, Methode Corporate Information at p.3). Similarly, Methode's Form 10-k indicates that Methode owns a "sales and engineering center" in Southfield, Michigan. (*See id.* p. 8).

5

Under Seventh Circuit law, "[s]ince determining whether transfer is appropriate 'involves a large degree of subtlety and latitude,' and is made on a case-by-case basis, it is therefore 'committed to the sound discretion of the trial judge.'" *Id.* Further, a transfer is to be ordered where the transferee forum is "clearly more convenient" than the venue chosen by the plaintiff. *Id* This standard merely requires a clear showing that the desired venue is more convenient than the original venue, and not that the level of convenience in the transferee venue is substantially greater than in the transferor venue. *See Bascom v. Maxim Integrated Prods., Inc.*, 534 F. Supp. 2d 700, 704 (W.D. Tex. 2008).

### B. By Contract, Methode Should Have Brought this Action in the Eastern District of Michigan

As a compelling initial matter, there is no genuine dispute that venue is proper in the Eastern District of Michigan. Importantly, based on the enforceable forum selection clause of the T&Cs, Methode should not have burdened this Court with this suit, but rather, should have brought this suit in the Eastern District of Michigan.

Methode's agreement to forum selection provisions is valid and should be enforced. *See Muzumdar v. Wellness Int'l Network, Ltd.*, 438 F.3d 759, 762 (7th Cir. 2006) (forum selection provisions are valid and should be enforced); *see also United States Gypsum Co. v. 3M Innovative Properties Co.*, No. 07-6381, 2008 WL 514976, at *2-3 (N.D. Ill. Feb. 20, 2008) (dismissing patent infringement suit where the parties confidential disclosure agreement contained a forum selection clause specifying that any dispute arising from the agreement should be brought in Minnesota). Accordingly, Methode's agreement to a forum selection clause is a significant factor that must figure centrally in this Court's decision on this motion. *Wilkinson Co. v. Krups N. Am., Inc.*, 48 F. Supp. 2d 816, 818 (N.D. Ill. 1999) (in the context of a motion to transfer, "[t]he presence of a forum-selection clause is a 'significant factor that figures centrally in the district court's calculus.'").

Indeed, in its answer to Delphi's Complaint in Delphi's Michigan Action, Methode admits that its agreement with Delphi is evidenced by the T&Cs: "Methode admits that its supply agreement with Delphi are [sic] partially evidenced by purchase orders and Delphi's General Terms and Conditions." (*See* Ex. 2, Methode's Michigan Answer and Counterclaims at ¶ 36). Pursuant to Paragraph 26 of the T&Cs, "GOVERNING LAW AND JURISDICTION," and more particularly Paragraph 26.1, Methode agreed that this suit should have been brought in Michigan:

6

(a) [The parties' contract] is to be construed according to the laws of the United States of America and the State of Michigan . . . and (b) *each party hereby agrees that the forum and venue for any legal or equitable action or proceeding arising out of, or in connection with, [the parties' contract] will lie in the appropriate federal or state courts in the State of Michigan* and specifically waives any and all objections to such jurisdiction and venue.

(Ex. 6, T&Cs at ¶ 26.1) (emphasis added).

Methode's patent dispute is encompassed by the forum selection clause. The patent dispute arises by reason of Methode's refusal to make prototypes for Delphi, which constitutes breach of agreement by Methode, for which Delphi sued in the Michigan Action. Allegations such as Methode's are encompassed by forum selection clauses. *See Omron Healthcare, Inc. v. Maclaren Exps. Ltd.*, 28 F.3d 600, 601-04 (7th Cir. 1994) (finding that forum selection clause in a distributorship agreement that contemplated that "all disputes arising out of th[e] [distributorship] Agreement" would be referred to English courts, applied to the parties' trademark infringement action); *cf. Texas Instruments Inc. v. Tessera, Inc.*, 231 F.3d 1325, 1331 (Fed. Cir. 2000) (noting that "[t]he governing law clause lists 'disputes, controversies, claims or difference[s] which may *arise from, under, out of or in connection with* this Agreement," and holding, "the governing law clause . . . necessarily covers disputes concerning patent issues" (emphasis in original)).

That this patent dispute "arises out of, or in connection with" the parties' contract is confirmed by a review of Methode's Answer and Counterclaims to Delphi's Michigan Action. In bringing that Action, Delphi asserted that Methode has breached its contracts with Delphi by refusing to return, among other things, Delphi-owned tooling drawings. (*See* Ex. 1, Michigan Action Complaint at ¶ 77). In responding to those allegations, Methode makes numerous references to its alleged patent rights, its belief that it invented, designed and developed Delphi's PODS bladders, that its alleged patent rights allegedly cover the bladders, and that it is withholding product drawings from Delphi as a part of a demand for assurance of restraint from patent infringement:

- "The process of creating a PODS production part started with a bladder concept developed and patented by Methode. Methode admits that it designed the bladder and further admits that it supplied those bladders to Delphi." (*See* Ex. 2, Methode's Michigan Answer and Counterclaims at Answer ¶ 46; *see also id.* at Answer ¶ 45).

7

- "Methode admits that the parties follow a multi-step process, which starts with the use of Methode's design . . . ."  (*See id.* at Answer ¶ 70; *see also id.* at Answer ¶ 71).

- "Despite the lack of any contractual or legal duty to provide the drawings to Delphi, Methode has offered to provide them upon receiving adequate assurances that Delphi will not use the drawings to breach Methode's patents covering the subject parts."  (*See id.* at Answer ¶ 108; *see also id.* at Answer ¶ 97).

- "The subject parts were invented by American Components, Inc. (ACI), a company which was located in Dandridge, Tennessee.  In the 1990's, ACI designed, manufactured and assembled products including the subject parts.  The subject parts are protected by certain patents (including U.S. Patents 5,975,568, 7,237,443, and/or Des 409,935).  In 2001, Methode purchased from American Components, Inc. (ACI) certain assets, including the intellectual property rights relating to PODS, and thus acquired the rights to patents that applied to the parts."  (*See id.* at Counterclaim ¶¶ 7-9).

- "On July 21. . .  Methode responded and agreed to provide the drawings if Delphi would agree to provide adequate assurances that the drawings would not be used to infringe Methode's patents."  (*See id.* at Counterclaim ¶¶ 24).

- "On July 29, Methode again asked Delphi to provide assurances that Delphi will not use the drawings to infringe Methode's patents."  (*See id.* at Counterclaim ¶¶ 25).

- "As of the date of this filing, Delphi has still not provided any assurances that it does not intend to infringe Methode's patents.  Instead, Delphi advised Methode's counsel that the patents do not apply to the parts. . . . Several years ago, Delphi sought a license from Methode to manufacture the patented part, thereby acknowledging Methode's patent rights."  (*See id.* at Counterclaim ¶¶ 27).

Stripped of its title, Methode's Illinois suit is really just an anticipatory breach of contract dispute masquerading as an action for patent infringement.  Indeed, the "assurances" Methode claims that it sought from Delphi regarding "infringement of Methode's patents" are directly tied to Methode's belief that Delphi is itself planning to breach, or has already breached, the supply contracts between the parties.  Methode alleges in its Michigan Answer and Counterclaims, for example: "Delphi has demonstrated its unequivocal intent not to perform under the parties' three-year supply agreement.  Delphi's conduct constitutes an anticipatory repudiation or anticipatory breach of the agreement." (*See id.* at Counterclaim ¶¶ 48 & 49).  Essentially, under Methode's incorrect view of the supply contracts, if Delphi builds PODS bladders itself or has other suppliers build PODS bladders for Delphi, Delphi will necessarily infringe Methode's

8

patents.[6]  Thus, the scope of the supply contracts bears directly on whether any alleged infringement has or could have occurred. *Gypsum*, 2008 WL514976, at *2 (noting that the Seventh Circuit has held that "'all disputes the resolution of which arguably depend on the construction of an agreement 'arise out of' that agreement for purposes' of a forum-selection clause") (citing *Omron*, 28 F.3d at 603)).

Further, the presumptive validity of the T&Cs' forum selection clause cannot be overcome unless Methode can show it is "unreasonable under the circumstances," and it cannot make the necessary showing. To show unreasonableness, Methode would be required to show fraud or the like, grave difficulty and inconvenience to the point that Methode would be deprived of a day in court, or a policy of this Court so strong as to be expressed in statute or the like. *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972) (noting that a contractual choice-of-forum clause should be enforced absent a clear showing that "enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching," or that "enforcement would contravene strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision"); *Wilkinson*, 48 F. Supp. 2d at 818 ("To show that a forum-selection clause is unreasonable, a party must show that 'trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court'").

Methode cannot meet its burden.  Methode, a sophisticated party, with representation, freely entered into agreements that incorporated the negotiated T&Cs.  Moreover, Methode has offices in Southfield, Michigan, from which it conducted its PODS business with Delphi. (*See* Ex. 9, Methode Corporate Information at pp. 3 & 8; Ex. 7, Purchase Order).  Also, Methode has already answered and counterclaimed in Delphi's Michigan Action and therefore, can hardly argue that appearing in the Eastern District of Michigan would be "gravely difficult and inconvenient."  Further, Methode's appearance in a Michigan court would not contravene any public policy stated in statute or the like.

In sum, the parties mutually agreed to be bound by the T&Cs, and with it, the forum selection clause.  The forum selection clause of the T&Cs weighs significantly and centrally in

---

[6] Delphi's Answer to Methode's Counterclaims is equally rife with references to Methode's patents and Delphi's contention that it does not infringe any valid and enforceable claim of Methode's patents.  (Ex. 10, Delphi's Michigan Action Answer to Methode's Counterclaims).

9

favor of transfer. *Wilkinson*, 48 F. Supp. 2d at 818; *Illinois Blower*, 2004 WL 765187, at *4 ("[T]he fact that the Parties' forum selection clause elects Minnesota as the chosen forum for any disputes weighs in favor of transfer").

    **C.**    **The Public Interest Factors Favor Transfer to the Eastern District of Michigan**

        **1.**    **The Related Michigan Action Significantly Weighs in Favor of Transfer**

The fact that Delphi and Methode are presently involved in active, ongoing, and closely related litigation in Delphi's Michigan Action also weighs heavily in favor of a transfer. *Safety-Kleen*, 1998 WL 748269, at *3. This Court's analysis in *Safety-Kleen* is instructive. In *Safety-Kleen*, this Court transferred a case to the District Court of New Jersey where there were already related, pending New Jersey state court actions involving the parties. *Id.* at *2-3. In doing so, this Court found that there were "a number of overlapping issues between the New Jersey litigation and [the Illinois litigation], namely those relating to defendant's performance of his contractual duties . . . ." *Id.* at 3. Because "the most significant factor favoring transfer [there, was] the existence of related litigation in the transferee district," this Court held that "a transfer was therefore in the best interest of judicial economy." *Id.*

Similarly, here, there are "a number of overlapping issues" between Methode's claim for infringement and the supply contracts already at issue in the Michigan Action. Indeed, as explained above in the context of the T&Cs, whether Delphi anticipatorily breached its supply contracts with Methode—one of the issues at the heart of the Michigan Action—is the crux of Methode's patent infringement claims in this District.

Moreover, the enforceability of the supply contracts at issue in the Michigan Action directly give rise to Delphi's defense to this case, *i.e.,* that Delphi has the authority to practice the patent Methode now alleges Delphi is infringing. This is a basis for Delphi's affirmative patent infringement defense of "License/Waiver/Assignment/Covenant Not to Sue." (*See* Dkt. No. 22, Delphi's Answer and Counterclaims, Fourth Affirmative Defense).

Thus, given the number of related issues already involved in the Michigan Action, and the fact that related litigation exists in Michigan State Court, within the potential transferee forum, this case should be transferred to the Eastern District of Michigan. *See Safety-Kleen*, 1998 WL 748269, at *3.

10

> **2.    The Citizens of the Eastern District of Michigan Have a Unique and Strong Localized Interest in this Case**

Unlike this District, the Eastern District of Michigan has substantial and meaningful connections with both the parties and the subject matter of the present dispute. The Eastern District of Michigan is the epicenter of the U.S. automobile industry, of which Methode, Delphi, DTI, and Marian are all part. Both Delphi and DTI are headquartered in the Eastern District of Michigan (as are many of Delphi's OEM customers) where testing, and some design and development of the accused product occur. (*See* Hanson Dec. at ¶¶ 11 & 12; Dkt. No. 22, Delphi's Answer and Counterclaims at Counterclaim ¶ 3). Further, the business concerning the marketing sales of the accused product occurred and continues to occur in the Eastern District of Michigan. (*See* Hanson Dec. at ¶ 13).

Thus, Methode's patent complaint involves products developed, manufactured, and sold by a company located in the Eastern District of Michigan for use by companies who all have significant ties to the Eastern District of Michigan. Put simply, this is a Michigan dispute, involving and potentially affecting Michigan's local economy in particular, and the citizens of that district have a strong local interest in resolving the parties' controversy that outweighs any interest on the part of the citizens of this District. Thus, this factor weighs in favor of transfer. *See Cooper Bauck Corp. v. Dolby Labs., Inc.*, No. 05-7063, 2006 WL 1735282, at *7 (N.D. Ill. June 19, 2006) (local interest factor weighed in favor of transfer where "much of the alleged activities that allegedly infringed Cooper Bauck's patent occurred in the Northern District of California, including research, development, patenting, implementation, testing, marketing and licensing of the accused infringing technology, as well as sale of products that incorporated the accused infringing technology").

> **3.    The Speed at Which Trial Will Proceed Favors Transfer**

Patent cases proceed to trial in the Eastern District of Michigan much faster than in this District. This is an important factor. *Tissue Extraction Devices, LLC v. Suros Surgical Sys., Inc.*, No. 08-140, 2008 WL 4717158, at *5 (N.D. Ill. May 20, 2008) ("Greater importance is placed on a speedy resolution in patent infringement cases"). Statistically, the median time-to-trial for patent cases in the Eastern District of Michigan is 2.03 years. (*See* Ex. 4 PriceWaterHouseCoopers' 2008 Patent Litigation Study at p. 12). In contrast, statistically, patent cases proceed to trial in 3.42 years in this District. (*See id.*). Accordingly, speed to trial

11

favors transfer.[7]

### 4. The Existence of Michigan State Law Issues Favors Transfer

While judges in this District are unquestionably well-versed in patent cases, the merits of at least one of Delphi's affirmative defenses, and one of Delphi's counterclaims, will require the application of Michigan law. The supply contracts at issue here—that bear directly on both Methode's patent infringement claims and Delphi's fourth affirmative patent defense—are "to be construed according to the laws of . . . the State of Michigan," (*see* T&Cs at ¶ 26.1). Further, Delphi has alleged tortuous interference with business/prospective business relationships as a counterclaim that arises under Michigan common law. (Dkt. No. 22, Delphi's Answer and Counterclaims, Counterclaim Count V). Although this Court is capable of addressing disputes that arise under the laws of other states, because a Michigan court must deal with Michigan law with a significantly greater frequency than this Court, the existence of Michigan state law issues weighs in favor of transfer. *See Illinois Blower*, 2004 WL 765187, at *4.

## D. The Private Interest Factors Favor Transfer to the Eastern District of Michigan

### 1. Methode's Choice of the Illinois Forum Should be Given No Weight

Although a plaintiff's choice of forum is entitled to some weight, "it is simply one factor among many to be considered." *Safety-Kleen*, 1998 WL 748269, at *2. Here, any weight a plaintiff's choice of forum might ordinarily be afforded should be greatly reduced because Methode is in Michigan as well as Illinois, Methode breached the forum selection clause in the T&Cs in filing here, and any alleged infringing activities took place outside of Illinois.

First, when a plaintiff files suit in a forum other than the forum specified in a forum selection clause, the plaintiff's choice is given less significance. *See Illinois Blower*, 2004 WL 765187, at *4 ("[Plaintiff]'s selection of Illinois as the forum for suit has less significance in the

---

[7] The Eastern District of Michigan is familiar with the types of technical issues involved here. *See, e.g., Automotive Tech. Int'l, Inc. v. Delphi Corp.*, No. 03-71368 (E.D. Mich. April 4, 2003) (patent infringement litigation over PODS products); *Delphi Auto. Sys. v. Auto. Sys. Lab., et al.* No. 04-71812 (E.D. Mich, 2004) (patent infringement concerning Delphi's PODS patents); *Fleming v. Ford Motor Co.,* No. 06-11676 (E.D. Mich. 2006) (patent infringement litigation over PODS products); *Automotive Tech. Int'l, Inc. v. Delphi Corp.*, No. 08-11048 (E.D. Mich. 2008) (patent infringement litigation over PODS products).

12

context of the Parties' forum selection clause"). Because Methode negotiated and then agreed to the T&Cs and the forum selection clause contained therein, any deference given to Methode's selection of Illinois as a forum is weakened. *See id.*

Further, even putting aside Methode's disregard for the binding forum selection clause, Methode's choice of forum should still be discounted because none of the alleged material facts that give rise to Methode's patent infringement suit allegedly took place in Illinois. As this Court has noted, "[i]ntellectual property suits typically focus on the alleged infringing activities of the defendant, and the employees and documents that evidence these activities." *Sitrick*, 2003 WL 21147898, at *3. Accordingly, "the situs of material events is where the alleged infringing activities took place." *Id.; see also Tissue Extraction Devices*, 2008 WL 4717158, at *5 ("For claims of patent infringement, the situs of material events is the location where the defendant originally made its decision to launch the allegedly infringing product.").

Here, Methode is alleging infringement of its '568 patent based on its allegations that Delphi "has manufactured and used, and continues to have manufactured and continues to use, [PODS bladders] in the United States without authorization from Methode" and that Delphi "has offered for sale, or intends to offer for sale and sell, [PODS bladders] through the United States without authorization from Method." (*See* Dkt. No. 1, Complaint at ¶¶ 26 & 27). To that end, Methode further alleges that "Marian has . . . manufacture[d] infringing [PODS bladders]" and "Marian will continue to manufacture infringing weight sensing pads and will sell those infringing weight sensing pads to Delphi, and Delphi will use and sell the infringing weight sensing pads to its own customers." (*See id.* at ¶ 21). Even if these allegations were true, Methode has not alleged that any such activities took place in Illinois. This is unsurprising considering Delphi is headquartered in Michigan and has engineering and product development facilities in Michigan and Indiana, and Marian is located in Indiana. (*See* Hanson Dec. at ¶¶ 11-15; Ex. 5, Witchger Dec. at ¶ 3)). Accordingly, "the fact that the situs of [alleged] material events is outside of Illinois mitigates the weight given to the plaintiff's choice of his [alleged] resident forum." *Sitrick*, 2003 WL 21147898, at *3.

### 2. The Location of the Parties, Witnesses and Potential Evidence Weigh Slightly in Favor of Transfer

In this case, only one of the four parties to this lawsuit, Methode, is located, in part, in Illinois. The remaining parties, Delphi, DTI and Marian are located outside of Illinois and, at

13

least two of those parties, Delphi and DTI, are located squarely within the Eastern District of Michigan. Importantly, Methode is also located, in part, in Michigan (*see* Ex. 9, Methode Corporate Information at pp. 3 & 8; Ex. 7, Purchase Order), already involved in ongoing litigation within the Eastern District of Michigan and has already freely agreed—through the T&Cs—to settle disputes in Michigan. Thus, Methode cannot claim that it would be inconvenient to litigate this dispute there. *See Wilkinson*, 48 F. Supp. 2d at 818 ("[Plaintiff] . . . has waived its own right to a convenient forum by freely entering into the Agreement containing the forum-selection clause."); *Safety-Kleen*, 1998 WL 748269, at *3 (plaintiff would not be inconvenienced by having to litigate in New Jersey where it was already defending lawsuits).

In fact, Methode has shown that the Eastern District of Michigan is at least a convenient place in which to conduct business. Indeed, much of the day-to-day business dealings between Delphi and Methode took place in Michigan. As evidence of this, Delphi's Purchase Orders with Methode relating to Methode's sales of the accused products to Delphi have issued to Methode care of Methode's office located in Southfield, Michigan, in the Eastern District of Michigan. (*See* Ex. 7, Purchase Order; Hanson Dec. at ¶ 10). Accordingly, the fact that all of the parties in this case have some connection to Michigan and that Methode cannot claim inconvenience by having to litigate in Michigan, favors transfer.

Moreover, the "ease of access to sources of proof" and "convenience of the witnesses" further supports transfer. Courts in this District observe "that patent infringement suits usually focus on the activities of the alleged infringer, its employees, and its documents rather than upon those of the plaintiffs." *Berol Corp. v. BIC Corp.*, No. 02-0559, 2002 WL 1466829, at *5 (N.D. Ill. July 8, 2002). Here, again, Delphi has its headquarters and technical center in the Eastern District of Michigan, such that testing, marketing, sales, and some design and development of the accused product occur there. (*See* Hanson Dec. at ¶ 11 & 12). To that end, a significant volume of documents and other physical evidence relating to Methode's infringement claims are located in the Eastern District of Michigan. (*See id.*). Further, several design engineers, businessmen and other employees involved with the design, development, testing, marketing and sale of Delphi's PODS product are located around Troy and Auburn Hills, Michigan. (*See id.* at ¶ 13). As for other Delphi employees who are potential witnesses, they are located near Delphi's facility in Indiana (*See id.* at ¶ 14), not in Illinois, and should they be called to testify, can best do so in Michigan where they can continue to perform general work activities and service

14

customers. Importantly, Delphi has no resident employees or facilities in this District and none of the Delphi employees involved with the design, development, manufacture, testing, marketing, sale, and implementation of the Delphi PODS and other sensor products are located in this District. (*See id.* at ¶ 15)

Any Methode employees needed as witnesses will likely already be required to testify within the limits of the Eastern District of Michigan, in Delphi's related Michigan Action.

## IV. CONCLUSION

This dispute is primarily a contract/patent dispute between Methode and Delphi. Marian has no meaningful involvement in the parties' dispute. Moreover, by express agreement of Methode, the United States District Court for the Eastern District of Michigan is the appropriate forum for this civil action. Thus, transferring this case to that court is in the interest of justice and serves the convenience of the parties and witnesses.

Respectfully submitted,

Dated: May 11, 2009

By: /s/ Timothy J. Rechtien
Charles W. Shifley
   *cshifley@bannerwitcoff.com*
Binal J. Patel
   *bpatel@bannerwitcoff.com*
Matthew P. Becker
   *mbecker@bannerwitcoff.com*
Timothy J. Rechtien
   *trechtien@bannerwitcoff.com*
BANNER & WITCOFF, LTD.
10 South Wacker Drive, Suite 3000
Chicago, Illinois 60606
Tel.: (312) 463-5000
Fax: (312) 463-5001

*Attorneys for Defendant/Counter-Plaintiff Delphi Automotive Systems LLC, Defendant Marian, Inc. and Counter-Plaintiff Delphi Technologies, Inc.*

15

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 11th day of May, 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

>Charles Randolph Wolfe, Jr.
>Katherine Pauley Barecchia
>*BLANK ROME LLP*
>600 New Hampshire Avenue NW
>Washington, DC 20037
>wolfe@BlankRome.com
>barecchia@BlankRome.com


>David J. Stetler
>Jonathan M. Cyrluk
>Henry M. Baskerville
>*STETLER & DUFFY*
>11 S. LaSalle Street, Suite 1200
>Chicago, Illinois 60603
>dstetler@stetlerandduffy.com
>hbasker@stetlerandduffy.com
>cyrluk@stetlerandduffy.com

                                                 /s/Timothy J. Rechtien