# EXHIBIT W

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF OAKLAND

DPH-DAS LLC (f/n/a DELPHI
AUTOMOTIVE SYSTEMS LLC),
a Delaware limited liability company,

          Plaintiff/Counter-Defendant,         Civil Action No. 08-095518-CK

vs.                               Hon. Nanci J. Grant

METHODE ELECTRONICS, INC.,

          Defendant/Counter-Plaintiff.

| | |
|---|---|
| Thomas S. Bishoff (P53753) | John R. Trentacosta (P31856) |
| Stephen W. King (P56456) | Jeffrey S. Kopp (P59485) |
| Dante A. Stella (P60443) | Larry S. Perlman (P59485) |
| Dykema Gossett PLLC | Foley & Lardner LLP |
| 400 Renaissance Center | 500 Woodward Avenue, Suite 2700 |
| Detroit, Michigan 48243 | Detroit, Michigan 48226-3489 |
| (313) 568-5341 | (313) 234-7100 |
| *Attorneys for Plaintiff/Counter-Defendant* | *Attorneys for Defendant/Counter-Plaintiff* |
| | |
| Joseph E. Papelian (P26582) | Ann Marie Walsh (admitted *pro hac vice*) |
| Delphi Automotive Systems, LLC | Helen Din (admitted *pro hac vice*) |
| M/C 483-400-603 | Locke Lord Bissell & Liddell LLP |
| Troy, Michigan 48098-2815 | 111 South Wacker Drive |
| (248) 813-2535 | Chicago, Illinois |
| *Attorney for Plaintiff/Counter-Defendant* | (312) 443-0654 |
| | *Attorneys for Defendant/Counter-Plaintiff* |

## REPLY TO METHODE'S BRIEF IN RESPONSE TO
## DELPHI'S MOTION TO DISMISS OR ENJOIN PROCEEDINGS

As a preliminary matter, at the hearing on January 6, 2010, DPH[1] intends to withdraw,

without prejudice, the portion of its motion seeking to dismiss the parties' claims and instead will

only proceed on the portion of its motion seeking to enjoin these proceedings.  Hence, this reply

---

[1] Capitalized terms used and not otherwise defined herein have the meanings ascribed to
them in the Motion.

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

focuses solely on those arguments raised in Methode's Brief In Response to Delphi's Motion to

Dismiss or Enjoin Proceedings, filed on December 23, 2009 (the "Response") related to the

applicability of the injunction set forth in paragraph 22 of the Plan Modification Order

(sometimes referred to as the "Modification Approval Order") and Article 11.14 of the Modified

Plan (the "Injunction").

I.       **The Injunction Set Forth In Paragraph 22 of the Modification Approval Order and
         Article 11.14 of the Modified Plan Is Unambiguous And Applies to All Causes of
         Action Possessed Prior to the October 6, 2009 Effective Date**

         In its Response, Methode argues that the Injunction set forth in paragraph 22 of the Plan

Modification Order and in Article 11.14 of the Modified Plan does not apply to Methode and this

proceeding and that therefore the instant action should not be enjoined.  To support its position,

Methode quotes a portion of the Modified Plan but ignores the clear language of the Plan

Modification Order that enjoins this and other similar proceedings.[2]  In fact, paragraph 22 of the

Plan Modification Order specifically provides that:

> …**the Debtors and all Persons shall be precluded and permanently
> enjoined on and after the Effective Date from (a)** commencing or
> **continuing in any manner any Claim, action**, employment of process,
> **or other proceeding of any kind with respect to any Claim, Interest,
> Cause of Action, or any other right or Claim against the Reorganized
> Debtors, which they possessed or may possess prior to the Effective
> Date,** (b) the enforcement, attachment, collection, offset, recoupment, or
> recovery by any manner or means of any judgment, award, decree, order,
> or otherwise with respect to any Claim, Interest, Cause of Action, or any
> other right or Claim against the Reorganized Debtors, which they
> possessed or may possess prior to the Effective Date, (c) creating,
> perfecting, or enforcing any encumbrance of any kind with respect to any

---

[2] The Plan Modification Order and the Modified Plan are mutually dependent, but
ultimately, the Plan Modification Order controls the Modified Plan.  See Plan Modification
Order ¶¶ 3, 4.  Indeed, "if there is determined to be any inconsistency between the Modified Plan
and [the Modification Approval Order] that cannot be so reconciled, then, solely to the extent of
such inconsistency, the provisions of [the Modification Approval Order] shall govern."  Plan
Modification Order ¶ 3.

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

> Claim, Interest, Cause of Action, or any other right or Claim against the
> Reorganized Debtors, which they possessed or may possess prior to the
> Effective Date, and (d) asserting any Claims, Interests, or Causes of
> Action that are satisfied, discharged, released, or subject to exculpation
> hereby or by the Modified Plan. (Ex. 5 to DPH's Motion, emphasis
> added.)

The instant action, which incorporates Methode's counterclaim that it asserted in January 2009, is

clearly a proceeding with respect to a "Claim" or "Cause of Action" as defined in the Modified

Plan,[3] which the parties possessed prior to the Effective Date.  Thus, this proceeding is plainly

and expressly enjoined by paragraph 22(a) of the Plan Modification Order, a federal order of the

Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), which is

binding on this court pursuant to the Supremacy Clause of the U.S. Constitution.[4]

Methode asserts that the Injunction does not apply because Methode's claims are not

"satisfied, released, or discharged" under the Modified Plan.  This is both irrelevant and

inaccurate.  First, although paragraph 22(d) of the Plan Modification Order (DPH's Motion, Ex.

5) echoes the language of Article 11.14 of the Modified Plan (DPH's Motion, Ex. 2) and

provides that parties are enjoined from "asserting any Claims, Interests, or Causes of Action that

are satisfied, discharged, released, or subject to exculpation hereby or by the Modified Plan,"

these proceedings are separately enjoined under paragraph 22(a) of the Plan Modification Order,

as set forth above.  Thus, whether or not Methode's claims are "satisfied, released, or discharged

under the Modified Plan" is irrelevant for purposes of determining whether the Injunction

provided by the Plan Modification Order applies to this action.

---

[3]  See Articles 1.25 and 1.29 of the Modified Plan, appended to the Modification
Approval Order, attached hereto as Exhibit A.

[4]  U.S. CONST. art. VI, cl. 2.

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

Notwithstanding Methode's irrelevant argument, however, it is also a misreading of the provision. Indeed, all Claims against the Reorganized Debtors, including Methode's administrative claim, are in fact "satisfied, released, and discharged" through the Modified Plan.[5] On page 8 of its Response, Methode acknowledges that its claim in the instant proceeding is an administrative claim and that the treatment of Allowed Administrative Claims is set forth in Article 2.1 of the Modified Plan.[6]  Moreover, the Modified Plan and subsequent orders of the Bankruptcy Court describe the manner in which administrative claims will be allowed, including formulating specific procedures to resolve claims expeditiously.  All Administrative Claims are subject to these procedures.[7]  There is no method other than through the Modified Plan that Allowed Administrative Claims are paid and no forum other than the Bankruptcy Court for Administrative Claims to be allowed.  The argument that Methode's claims will not be subject to the Injunction until the lawsuit is resolved, the claim is liquidated, and the liquidated amount is paid in full, as asserted in Methode's response, is thus temporally and procedurally flawed.[8]

---

[5]  Indeed, Article 11.2 of the Modified Plan, which is referenced in the Article 11.14 injunction provision of the Modified Plan that Methode quotes, provides in part, "the distributions and rights that are provided in this Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims and Causes of Action…regardless of whether any property shall have been distributed or retained pursuant to this Plan on account of such Claims. . . . The Confirmation Order shall be a judicial determination of the discharge of all Claims against and Interests in the Debtors, subject to the occurrence of the Effective Date."  As stated elsewhere, the Effective Date occurred on October 6, 2009.

[6]  Response at p. 8.

[7]  See Order Pursuant to 11 U.S.C. §§ 105(a) and 503(b) Authorizing Debtors To Apply Claims Objection Procedures To Address Contested Administrative Expense Claims, dated October 22, 2009 (Bankr. Ct. Docket No. 18998), attached to the Motion as Exhibit 9.

[8]  Moreover, this argument does not make sense.  Taken to its logical conclusion, this argument would suggest that any claimant in a bankruptcy case, whether a claimant with an administrative claim or a prepetition unsecured claim, could pursue their claims in any forum until such claims were paid in full and only then would such claims be satisfied, released, and discharged under a plan of reorganization.  This is contrary to general bankruptcy law principles that provide that upon the filing of a bankruptcy petition, all claims against the estate are to be

*(cont'd)*

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

Nonetheless, as discussed further below, should Methode choose to do so, it could bring a

motion in the Bankruptcy Court to lift the Injunction and allow this action to proceed in state

court for the purposes of liquidating Methode's administrative claim.  Absent such procedural

action, however, this proceeding must be enjoined as provided by the Modification Procedures

Order.

Methode contends that by honoring the Injunction clearly provided in the Plan

Modification Order, this court would be improperly interpreting the Modified Plan, which is the

exclusive purview of the Bankruptcy Court.  Methode asserts that "there has been no order of the

bankruptcy court enjoining this Court from adjudicating the state-law breach-of-contract claims

still pending between the parties."[9]  This is false because, as previously discussed, the Plan

Modification Order enjoins the continuation of _any action_ possessed by parties prior to the

Effective Date.  In light of this clear language, Methode must be arguing that the Injunction

---

*(cont'd from previous page)*
administered pursuant to an approved plan of reorganization which, in this case, imposes an
injunction on all non-bankruptcy proceedings. See 8 COLLIER ON BANKRUPTCY 1141.02 (Alan N.
Resnick & Henry J. Sommer eds., 15th rev. ed.) ("A final order of confirmation terminates all
rights of holders of claims and interests except as otherwise provided in the plan or the order
confirming the plan . . . ."). The Injunction, like the automatic stay, exists to implement an
orderly and expeditious reconciliation of claims against the company.  See Grayson v.
WorldCom, Inc. (In re WorldCom, Inc.), No. 05-Civ.-5704, 2006 WL 2270379, at *9 (S.D.N.Y.
Aug. 8, 2006) (Ex. C) (providing that the "purpose of the [plan] injunction, as well as the
automatic stay, is to allow the Bankruptcy Court to administer promptly the claims before it, a
purpose which would be undermined by constant disruption if separate claims before other
courts were permitted to continue until final resolution in the courts…."). In fact, 3,213
Administrative Claims were filed against the company, of which approximately 1,700 remain,
and it would be contrary to bankruptcy policy to force the company to litigate all claims in
disparate forums simultaneously.  See FDIC v. Hirsch (In re Colonial Realty Co.), 980 F.2d 125,
133 (2d Cir. 1992) (observing that the "central purpose of the automatic stay [is] to have _all_
creditors' claims resolved in a single court"); Myerson & Kuhn v. Brunswick Assocs. L.P. (In re
Myerson :& Kuhn), 121 B.R. 145, 154-55 (Bankr. S.D.N.Y. 1990) (finding injunctive relief
necessary "to effectuate fully the main purposes of the automatic stay envisioned by the
Bankruptcy Code," including "the prevention of a multiplicity of litigation between and among
creditors").

[9] _Response_ at p. 5.

should apply only if the Bankruptcy Court issues a separate order specifically enjoining this individual action.  It is ludicrous, however, to assert that in a massive chapter 11 case, where hundreds, if not thousands of cases are often enjoined, that a bankruptcy court would be required to issue a separate order enjoining each and every individual ongoing cause of action for an injunction found in a confirmation order and plan of reorganization to be enforceable.  Comparable provisions such as those in paragraph 22 of the Plan Modification Order and Article 11.14 of the Modified Plan are included in confirmation orders and plans of reorganization and enforced in nearly all large chapter 11 cases without such separate orders being entered.[10]

Moreover, by suggesting that this court look past the plain language of the Plan Modification Order and require that the Bankruptcy Court issue a specific order enjoining this particular action, Methode is essentially requiring that this court interpret the otherwise unambiguous language of the Plan Modification Order, which Methode acknowledges that this court is not permitted to do.  Rather than applying this convoluted reasoning, this court should grant DPH's motion to enjoin these proceedings in accordance with the clear and unambiguous language of the Plan Modification Order.  Then, at Methode's election, it can move for the Bankruptcy Court to lift the Injunction to permit continuation of the litigation in this forum.[11]

---

[10]  See, e.g., In re Interstate Bakeries Corp., No. 04-4581, at ¶ 13 (Bankr. W.D. Mo. Dec. 5, 2008); In re Oneida Ltd., No. 06-10489, at ¶ 54 (Bankr. S.D.N.Y. August 30, 2006); In re UAL Corp., No. 02-B-48191, at ¶ 4(e)  (Bankr. N.D. Ill. Jan. 20, 2006); In re US Airways, Inc., No. 04-13819, at ¶ 9 (Bankr. E.D. Va. Sept. 16, 2005); In re Nat'l Steel Corp., No. 02-08699, at ¶ G(2) (Bankr. N.D. Ill Oct. 23, 2003); In re Singer Co. N.V., Nos. 99-10578, 10607, 10613, 10616-29, 00-10423, at ¶ 11 (Bankr. S.D.N.Y Aug. 24, 2000), relevant portions of which are attached hereto as Exhibits B-1 through B-6, respectively.

[11]  DPH would oppose this action because it believe the more appropriate forum is the Bankruptcy Court.  Nevertheless, each side may make its arguments to the Bankruptcy Court for its determination.

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

## II.    DPH's Motion to Enjoin These Proceedings Does Not Serve to Foreclose Methode from Pursuing Its Counterclaims

In its Response, Methode asserts that by enjoining this action, DPH is improperly seeking to "use the plan injunction to get rid of Methode's counterclaim in this Court" and that subsequently DPH will attack the administrative claim as untimely to deprive Methode from asserting its counterclaim in contravention of case law.[12]  The enforcement of the Injunction, however, does not foreclose Methode from further action.  Through application of the Injunction, DPH is not asserting that it should be permitted to pursue claims against Methode but that Methode cannot fully defend itself by pursuing its counterclaim, which it filed in January 2009, as the debtor in <u>Connor Insurance</u>, cited by Methode in its Response,[13] sought to do.[14]  Rather, because of the plain language of the Injunction and because Methode's counterclaims are administrative claims that are subject to the Modified Plan and the Modification Procedures Order, Methode must first lift the Injunction if it wishes to continue its litigation in this forum. Absent doing so, the Bankruptcy Court is the proper forum for the claims and counterclaims to be heard in accordance with the Plan Modification Order, the Modified Plan, the Claims Procedures, and other orders of the Bankruptcy Court.  Doing anything different would violate a federal bankruptcy court order.  Moreover, Methode is not prejudiced by having to follow the procedures set forth by the Bankruptcy Court.  Methode received proper notice of those procedures and as Methode acknowledges, it filed two proofs of claim in the Bankruptcy Court on November 5, 2009, asserting administrative claims against certain of the debtors and

---

[12]  <u>Response</u> at p. 13.

[13]  <u>See</u> <u>Response</u> at p. 14, <u>citing</u> <u>In re</u> Conner Ins. Agency, 1994 Bankr. LEXIS 2391.

[14]  DPH reserves its rights, however, to challenge the timeliness of Methode's administrative claims.

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

identifying the counterclaim at issue.  Whether Methode properly followed the timing and other

requirements for asserting its administrative claim is acknowledged by both parties as an issue

for the Bankruptcy Court to resolve (which is another reason the parties must come before the

Bankruptcy Court first – doing otherwise would contradict judicial economy) and each party

retains its arguments with regards to this issue.  The outcome of that procedural dispute,

however, does not bear on the propriety of DPH seeking to have the Injunction enforced at this

time by this court and does not transform DPH's desire to abide by the provisions of the

Modification Approval Order into a malevolent attempt to deprive Methode of its right to due

process.

III.    **Whether the Bankruptcy Court Should Abstain from Adjudicating the Issues in this Proceeding Is Not An Issue Properly Heard At This Time or By This Forum**

In its Response, Methode asserts that a bankruptcy court would likely abstain from

deciding the underlying issues in this case and therefore that because of this court's concurrent

jurisdiction, this case should continue.  This argument is not an appropriate argument for this

hearing because it ignores the clear and plain language of paragraph 22 of the Bankruptcy

Court's Plan Modification Order, which enjoins the continuation of any proceeding with respect

to any Claim possessed prior to the Effective Date.  Moreover, in light of the Injunction, it is

solely the Bankruptcy Court's decision whether it should hear or abstain from hearing this

issue.[15]  Should Methode choose to file pleadings in the Bankruptcy Court to lift the Injunction

to allow this action to proceed in this court, at that time Methode may raise to the Bankruptcy

Court its arguments that the Bankruptcy Court should abstain from adjudicating the issues

---

[15]  In its Response, Methode acknowledges that it is the bankruptcy court that must determine whether or not it will abstain.  Response at p.11, n.3, citing In re Baumgartner, 57 B.R. 517, 520-21 (Bankr. N.D. Ohio 1986).

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

presented in this action.  In light of the Injunction provided in the Modification Approval Order

and because the Bankruptcy Court has not issued an order lifting the Injunction, however, it is

improper for this action to proceed in this court at this time regardless of the various arguments

for abstention raised by Methode in its Response.

## CONCLUSION

For the reasons set forth above, the Motion, as modified herein, should be granted and

action in this Court should be enjoined until further order of the Bankruptcy Court to the

contrary.

Dated: January 5, 2010                    Respectfully Submitted,

                                          Dykema Gossett PLLC

                                          /s/ Thomas S. Bishoff
                                          Thomas S. Bishoff (P53753)
                                          Dykema Gossett PLLC
                                          400 Renaissance Center
                                          Detroit, Michigan  48243
                                          (313) 568-5341
                                          *Attorney for Plaintiff/Counter-Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on January 5, 2010, I electronically filed the foregoing paper with the

Clerk of the Court using the Wiznet system, and that this document was served on the following

individuals through the Wiznet E-File & Serve System:

<div align="center">

John R. Trentacosta
Larry S. Perlman
Ann Marie Walsh


DYKEMA GOSSETT PLLC

</div>

By: /s/Thomas S. Bishoff
    Thomas S. Bishoff (P53753)
    400 Renaissance Center
    Detroit, Michigan 48243
    (313) 568-5341
    tbishoff@dykema.com
    *Attorney for Plaintiff/Counter-Defendant*

DET01\756865.1
ID\TSB - 101289/0005

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

**EXHIBIT A**

**MODIFICATION APPROVAL ORDER AND MODIFIED PLAN**

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                    :

In re                 :     Chapter 11
                    :

DELPHI CORPORATION, et al.,   :     Case No. 05-44481 (RDD)
                    :

            Debtors.     :     (Jointly Administered)
                    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


ORDER APPROVING MODIFICATIONS UNDER 11 U.S.C. § 1127(b) TO
(I) FIRST AMENDED JOINT PLAN OF REORGANIZATION OF DELPHI
CORPORATION AND CERTAIN AFFILIATES, DEBTORS AND
DEBTORS-IN-POSSESSION, AS MODIFIED AND
(II) CONFIRMATION ORDER (DOCKET NO. 12359)

("PLAN MODIFICATION ORDER")

Upon the Court's Findings of Fact, Conclusions of Law, And Order Under

11 U.S.C. §§ 1129(a) And (b) And Fed. R. Bankr. P. 3020 Confirming the First Amended

Joint Plan Of Reorganization Of Delphi Corporation ("Delphi") And Certain Affiliates,

Debtors And Debtors-In-Possession (each, a "Debtor"), As Modified (the "Confirmed

Plan"), dated January 25, 2008 (Docket No. 12359) (the "Confirmation Order"); and

Upon the Debtors' Motion for Order (I) Approving Modifications to

Debtors' First Amended Plan of Reorganization (as Modified) and Related Disclosures

and Voting Procedures and (II) Setting Final Hearing Date to Consider Modifications to

Confirmed First Amended Plan of Reorganization (Docket No. 14310), dated October 3,

2008, (the "Plan Modification Approval Motion"); and

Upon the Debtors' (A) Supplement to Motion for Order (I) Approving

Modifications to Debtors' First Amended Plan of Reorganization (as Modified) and

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

Related Disclosures and Voting Procedures and (II) Setting Final Hearing Date to

Consider Modifications to Confirmed First Amended Plan of Reorganization and (B)

Request to Set Administrative Expense Claims Bar Date and Alternative Sale Hearing

Date (Docket No. 16646) , dated, June 1, 2009 (the "Supplemental Plan Modification

Approval Motion"); and

Upon the Court's Order (A)(I) Approving Modifications to Debtors' First

Amended Plan of Reorganization (as Modified) and Related Disclosures and Voting

Procedures and (II) Setting Final Hearing Date to Consider Modifications to Confirmed

First Amended Plan of Reorganization and (B) Setting Administrative Expense Claims

Bar Date and Alternative Transaction Hearing Date (Docket No. 17032), dated June 16,

2009 (the "Modification Procedures Order"), setting a final hearing date on approval of

the Debtors' proposed plan modifications, setting a bar date for filing proofs of

administrative expense for postpetition claims arising before June 1, 2009, and approving

Supplemental Procedures For Evaluating Non-Solicited Alternative Transactions (the

"Supplemental Procedures"); and

Upon the Court's Order Amending and Supplementing (i) Order (A)(I)

Approving Modifications to Debtors' First Amended Plan of Reorganization (as Modified)

and Related Disclosures and Voting Procedures and (II) Setting Final Hearing Date to

Consider Modifications to Confirmed First Amended Plan of Reorganization and (B)

Setting Administrative Expenses Claims Bar Date and Alternative Transaction Hearing

Date (Docket No. 17032) and (ii) the Protective Order Governing Production and Use of

Confidential and Highly Confidential Information in Connection with (A) Supplement to

Plan Modification Approval Motion and (B) Supplement to GM Arrangement Fourth and

1

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

Fifth Amendment Approval Motion (Docket No. 16920) (Docket No. 17376), dated June 29, 2009 (the "Supplemental Modification Procedures Order"); and

Upon the Court's Order Amending and Supplementing Modification Procedures Order (Docket No. 17032) and Supplemental Modification Procedures Order (Docket No. 17376), dated July 17, 2009 (the "Second Supplemental Modification Procedures Order"); and

Upon the Court's Order Amending and Supplementing Modification Procedures Order (Docket No. 17032), Supplemental Modification Procedures Order (Docket No. 17376), and Second Supplemental Modification Procedures Order (Docket No. 18352), dated July 21, 2009 (the "Third Supplemental Modification Procedures Order"); and based upon the Court's review of:

(a)      the Master Disposition Agreement among Delphi, Motors Liquidation Company, General Motors Company ("GMCo."), GM Components Holdings, LLC, DIP Holdco 3, LLC and Other Sellers and Other Buyers Party thereto (such parties other than Delphi, collectively, the "Purchasing Entities"), dated as of July 26, 2009 (the "Master Disposition Agreement" and together with all agreements or other documents entered into or to be entered into in connection therewith, the "MDA Documents"), which was designated by the Debtors as the Successful Bid under the Supplemental Procedures, but the acceptance of which by the Debtors is subject to this Court's approval;

(b)      the Affidavit Of Service with respect to service of resolicitation materials of Evan Gershbein, Senior Managing Consultant of Kurtzman Carson Consultants LLC, sworn to June 23, 2009 (Docket No. 17267) (the "Gershbein Affidavit"), the Affidavit Of Service Of Financial Balloting Group LLC Of Solicitation

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

Packages On Holders Of Public Securities of Jane Sullivan, Executive Director of

Financial Balloting Group LLC, sworn to June 24, 2009 (Docket No. 17268) (the

"Sullivan Affidavit"), the Declaration of Evan Gershbein Regarding Tabulation Of

Ballots With Respect To Vote On First Amended Joint Plan Of Reorganization (As

Modified) of Delphi Corporation And Certain Of Its Subsidiaries And Affiliates (the

"Gershbein Voting Declaration") (Docket No. 18462), executed on July 20, 2009, the

Supplemental Declaration Of Evan Gershbein Regarding Tabulation Of Ballots With

Respect To Vote On First Amended Joint Plan Of Reorganization (As Modified) Of

Delphi Corporation And Certain Of Its Subsidiaries And Affiliates (the "Supplemental

Gershbein Voting Declaration) (Docket No. 18577), executed on July 22, 2009, and the

Second Supplemental Declaration of Evan Gershbein Regarding Tabulation of Ballots

with Respect to Vote on First Amended Joint Plan of Reorganization (as Modified) of

Delphi Corporation and Certain of Its Subsidiaries and Affiliates (Docket No. 18684)

executed on July 28, 2009, and the Declaration of Jane Sullivan Certifying Tabulation Of

Ballots Regarding Vote On First Amended Plan Of Reorganization (As Modified) Of

Delphi Corporation And Certain Of Its Subsidiaries And Affiliates (the "Sullivan Voting

Certification") (Docket No. 18464), executed on July 20, 2009;

        (c)     the Memorandum Of Law (A) In Support Of Modifications To The

First Amended Joint Plan Of Reorganization Of Delphi Corporation And Certain

Affiliates, Debtors And Debtors-In-Possession Under 11 U.S.C. § 1127 And, In The

Alternative, The Sale Of Substantially All Of The Debtors' Assets Under 11 U.S.C. § 363

And (B) In Response To Certain Objections Thereto;

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

(d)    the modifications to the First Amended Joint Plan of

Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-In-

Possession (As Modified), including the modifications set forth on Exhibit A hereto (as

modified and confirmed hereby, the "Modified Plan");[1]

(e)    the Declarations of Randall S. Eisenberg, Senior Managing

Director of FTI Consulting, Inc., executed on July 20, 2009 (the "Eisenberg Declaration"),

Robert S. Miller, Chairman of the board of directors of Delphi, executed on July 20, 2009

(the "Miller Declaration"), Craig Naylor, member and lead independent director of the

board of directors of Delphi executed on July 19, 2009 (the "Naylor Declaration"),

William R. Shaw, Managing Director of Rothschild Inc., executed on July 18, 2009 (the

"Shaw Declaration"), John D. Sheehan, Vice President and Chief Financial Officer of

Delphi, executed on July 19, 2009 (the "Sheehan Declaration"), and Keith D. Stipp,

Executive Director of Delphi in charge of restructuring, executed on July 18, 2009 (the

"Stipp Declaration"), in support of the Modified Plan, and the Declaration of John D.

Sheehan, executed on July 19, 2009 (the "Sheehan Diligence Declaration"), in support of

the Modified Plan in respect of the Debtors' due diligence efforts;

(f)    the transcript of the auction commenced on July 26 and completed

on July 27, 2009, as set forth in Joint Exhibit 575;

(g)    all of the evidence proffered or adduced at, objections filed in

connection with and the responses filed thereto, and arguments of counsel made at, the

Final Modification Hearing (as defined below), including Joint Exhibits 1 through 636

that were admitted into evidence at the Final Modification Hearing; and

---

[1]    Capitalized terms not defined herein shall have the meanings ascribed to them in the Modified Plan.

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

(h)      the entire record of these Chapter 11 Cases; and after due deliberation thereon, and good and sufficient cause appearing therefor

THE COURT HEREBY FINDS AND CONCLUDES AS FOLLOWS:[2]

A.      <u>Entry Of Confirmation Order</u>.  On January 25, 2008 (the "Confirmation Date"), the Court entered the Confirmation Order.  The Confirmation Order has not been revoked, withdrawn, or vacated and remains in full force and effect, except as may be modified by this order.  No parties sought to revoke the Confirmation Order except the official committee of unsecured creditors (the "Creditors' Committee") and Wilmington Trust Company ("WTC"), each of which filed adversary complaints seeking revocation of the Confirmation Order but did not prosecute them, and both of which shall be deemed to have withdrawn such complaints.  Since the Confirmation Date, the Debtors have operated their businesses and managed their properties as debtors-in-possession in accordance with the Confirmation Order.

B.      <u>Modifications To Confirmed Plan And Confirmation Order</u>.  The Debtors are properly seeking to modify the Confirmed Plan and the Confirmation Order pursuant to section 1127(b) of the Bankruptcy Code and Article 14.3 of the Confirmed Plan.

C.      <u>Exclusive Jurisdiction; Venue; Core Proceeding (28 U.S.C. §§ 157(b)(2) and 1334(a))</u>.  The Court has jurisdiction over the Chapter 11 Cases pursuant to 28 U.S.C. §§ 157 and 1334 and Article XIII of the Confirmed Plan.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  Confirmation of the Modified Plan is a core proceeding under 28 U.S.C. § 157(b)(2), and the Court has exclusive jurisdiction to determine whether the

---

[2]    Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.  Fed. R. Bankr. P. 7052.

5

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

Modified Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

      D.    <u>Filing Of Modified Plan And Disclosure Statement Supplement</u>.  On June 16, 2009, the Debtors filed the Modified Plan and the Supplement To First Amended Disclosure Statement With Respect To First Amended Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession (As Modified) (as transmitted to parties-in-interest, the "Disclosure Statement Supplement").

      E.    <u>Modification Procedures Order</u>.  On June 16, 2009, the Court entered the Modification Procedures Order which, among other things, (i) approved the Disclosure Statement Supplement as containing adequate information within the meaning of sections 1127 and 1125 of the Bankruptcy Code and Fed. R. Bankr. P. 3017 and 2002(c)(3), (ii) fixed July 23, 2009 as the date for the final approval of the modifications to the Confirmed Plan (the "Modification Approval Hearing"), (iii) approved the form and method of notice of the Modification Approval Hearing (the "Modification Approval Hearing Notice"), (iv) established certain procedures for resoliciting and tabulating votes with respect to the Modified Plan, and (v) approved the Supplemental Procedures; and on June 29, 2009, the Court entered the Supplemental Modification Procedures Order, amending and supplementing the Modification Procedures Order and setting forth, among other things, procedures for a Pure Credit Bid (as defined in the Supplemental Modification Procedures Order) by the Administrative Agent for the DIP Lenders (in each case as defined in the Supplemental Modification Procedures Order)

      F.    <u>Compliance With Modification Procedures Order</u>.

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

1.    <u>Transmittal Of Resolicitation Package</u>.  On or before June 20, 2008, in accordance with Fed. R. Bankr. P. 3017(d), (e), and (f) and the Modification Procedures Order, the Debtors caused Kurtzman Carson Consultants LLC ("KCC") and Financial Balloting Group LLC ("FBG") or their agents to transmit (i) the Modification Approval Hearing Notice, (ii) a CD-Rom containing (1) the Modification Procedures Order (without exhibits), (2) the Disclosure Statement Supplement and publicly filed materials appended thereto, (3) the Modified Plan and publicly filed materials appended thereto, and (4) the December 10, 2007 Solicitation Procedures Order (without exhibits), (iii) paper copies of the Creditors' Committee Letter, (iv) as to Classes 1A-1, 3A-1, 1A-1, 1C-1 through 12C-1, 1C-2 through 12-C2, and 1D through 12D (collectively, the "Voting Classes"), a paper ballot and return envelope (such ballot and envelope being referred to as a "Ballot"), all as set forth in the Gershbein Affidavit and Sullivan Affidavit.  In addition, and in accordance with Fed. R. Bankr. P. 3017(d), (e), and (f) and the Modification Procedures Order, the Debtors transmitted additional notices as described in the Gershbein Affidavit.

2.    <u>Publication Of Confirmation Hearing Notice</u>.  The Debtors published the Modification Approval Notice in the <u>Detroit Free Press</u>, the <u>New York Times</u> (national edition), the <u>Wall Street Journal</u> (national, European, and Asian editions), and <u>USA Today</u> (worldwide) on or before June 26, 2009 as evidenced by the affidavits of publication, filed by individuals on behalf of each of the listed publications.[3]

3.    <u>Transmittal And Mailing Of Materials; Notice</u>.  Due, adequate, and sufficient notice of the Disclosure Statement Supplement and Modified Plan and of the

---

[3]    The affidavits are found at docket numbers 17407-17415.

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

Modification Approval Hearing, as well as all deadlines for voting on or filing objections

to the Modified Plan, has been given to all known holders of Claims and Interests in

accordance with Fed. R. Bankr. P. 2002(b), 3017(d), (e), and (f) and the procedures set

forth in the Modification Procedures Order.  The Disclosure Statement Supplement,

Modified Plan, Ballots, Modification Procedures Order, Modification Approval Hearing

Notice, Unimpaired Creditors Notice, Notice of Non-Voting Status, and Creditors'

Committee Letter were transmitted and served in substantial compliance with the

Modification Procedures Order and the Bankruptcy Rules, and such transmittal and

service were adequate and sufficient.  Adequate and sufficient notice of the Modification

Approval Hearing, injunctions and third party releases, bar dates, and other hearings

described in the Modification Procedures Order was given in compliance with the

Bankruptcy Rules and the Modification Procedures Order, and no other or further notice

is or shall be required.

4.    <u>Resolicitation</u>.  Votes for acceptance or rejection of the Modified

Plan were resolicited in good faith in compliance with sections 1125, 1126, and 1127 of

the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, the Disclosure Statement

Supplement, the Modification Procedures Order, all other applicable provisions of the

Bankruptcy Code, and all other applicable rules, laws, and regulations.

5.    <u>Notice Of Supplemental Procedures</u>.  As evidenced by the

affidavits of service and publication previously filed with the Court, and based on the

representations of counsel at the Modification Approval Hearing, (i) proper, timely,

adequate, and sufficient notice of the Auction, the sale under the MDA Documents, and

the Final Modification Hearing has been provided in accordance with Bankruptcy Rules

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

2002, 6004(a), and 6006(c) and in compliance with the Modification Procedures Order,
(ii) such notice was good and sufficient, and appropriate under the particular
circumstances, and reasonably calculated to reach and apprise all parties in interest of the
Procedures (defined below), the Auction, and the sale under the MDA Documents, and
(iii) no other or further notice of the Auction, the sale under the MDA Documents, or the
Final Modification Hearing is necessary.

>G.     Supplemental Procedures And Pure Credit Bid.

>>1.     Supplemental Procedures.  At the June 10, 2009 hearing on the
approval of the Supplemental Plan Modification Approval Motion, the Court directed that
certain procedures be followed to facilitate the Debtors' consideration of potential
alternative transactions to the proposed disposition agreement among Delphi, GM
Components Holdings, LLC, Parnassus Holdings II, LLC, and Other Sellers and Other
Buyers Party thereto, dated as of June 1, 2009.  Subsequently, the Court approved
procedures for such a process, as documented in the Supplemental Procedures (Exhibit N
to the Modification Procedures Order) and the Supplemental Modification Procedures
Order (collectively, the "Procedures").  Pursuant to the Procedures, three third-party
bidders were qualified to submit potential alternative transactions.  The DIP Agent acting
on behalf of the Required Lenders was deemed qualified to submit potential alternative
transactions under the Procedures, and a Pure Credit Bid (as defined in the Supplemental
Modification Procedures Order) was deemed to be a qualified alternative transaction
under the Procedures.  The Procedures' qualified alternative transaction proposal deadline
passed on July 10, 2009 without the submission of any potential third-party alternative
transactions.  On July 17, 2009, the Court entered the Second Supplemental Modification

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

Procedures Order adjourning the auction from July 17, 2009 to July 21, 2009.  On July 21,

2009, the Court entered the Third Supplemental Modification Procedures Order further

adjourning the auction from July 21, 2009 to July 24, 2009.  The auction subsequently

commenced on July 26, 2009 and concluded on July 27, 2009.  The Debtors, the DIP

Agent, and the DIP Lenders have complied with the Procedures in all respects and the

Creditors' Committee has discharged its duties under the Procedures.

      2.   <u>DIP Loan</u>.  The Debtors are indebted to the DIP Lenders under that

certain Amended and Restated Revolving Credit, Term Loan and Guaranty Agreement,

dated as of May 9, 2008 (as such agreement has been and may be amended, modified or

supplemented from time to time, the "DIP Credit Agreement") with JPMorgan Chase

Bank N.A. as Administrative Agent (the 'DIP Agent') in the aggregate amount of

approximately $3,478,522,903.03, as of July 30, 2009, inclusive of principal and interest

but excluding fees, expenses and certain other amounts due thereunder (the "DIP Loan").

      3.   <u>DIP Agent Notices</u>.  The DIP Agent timely delivered to the

Debtors all documents required under the Modification Procedures Order, as amended

and supplemented by the Supplemental Modification Procedures Order.  On July 9, 2009,

the DIP Agent, as instructed by the Required Lenders, transmitted a Notice Of Intent To

Credit Bid to the Debtors.  On July 14, 2009, the DIP Agent, as instructed by the

Required Lenders, transmitted a Notice Of Rejection And Disapproval Of The Master

Disposition Agreement By the Required Lenders.  On July 15, 2009, the DIP Agent, as

instructed by the Required Lenders, transmitted a Notice Of Intent To Exercise Remedies.

On July 16, 2009, the DIP Agent, pursuant to a direction delivered by the Required

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

Lenders, and in accordance with the Procedures, submitted Pure Credit Bid Support
Letter (as defined in the Supplemental Procedures Order).

4.    <u>Auction Proceedings And Selection Of Highest Or Otherwise Best
Offer</u>.  On July 26, 2009, the Debtors conducted the Auction in accordance with the
Procedures.  At the Auction, pursuant to a direction of the Required Lenders, the DIP
Agent on behalf of the DIP Lenders made a credit bid (the "DIP Lenders' Bid") for the
Acquired Assets (as defined in the Master Disposition Agreement) and Sale Securities (as
defined in the Master Disposition Agreement) on behalf of the DIP Lenders, which was
submitted in conformity with the Supplemental Modification Procedures Order and
section 363(k) of the Bankruptcy Code, in an amount equal to 100% of the principal and
interest due and owing in respect of the DIP Loan under the DIP Credit Agreement, after
giving effect to the application of any cash collateral to the amount of the DIP Loans.
The DIP Agent, pursuant to the direction of the Required Lenders, submitted the DIP
Lenders' Bid, which constituted a Pure Credit Bid as defined in the Procedures, in
accordance with the Procedures.  The DIP Lenders' Bid complied with the provisions of
section 363(k) of the Bankruptcy Code, and was duly authorized under the DIP Credit
Agreement and the other Loan Documents (as defined in the DIP Credit Agreement), and
was a valid and good faith exercise by the DIP Agent of the DIP Agent's rights,
responsibilities, and obligations under the DIP Credit Agreement and the other Loan
Documents.  In compliance with the Procedures and the Supplemental Order, on July 27,
2009, the Debtors' board of directors met and selected the DIP Lenders' Bid as the highest
or otherwise best offer and designated the DIP Agent as the Successful Bidder (as defined
in the Supplemental Procedures).  The Successful Alternative Transaction (as defined in

11

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

the Supplemental Procedures) shall be consummated as set forth in the Modified Plan and

the MDA Documents and as authorized in this order. The Debtors have demonstrated

compelling circumstances and a good, sufficient and sound business purpose and

justification for the sale under the MDA Documents under section 363(b) and (f) of the

Bankruptcy Code.

       5.    <u>Good Faith Of Purchasing Entities</u>.  The MDA Documents and the

transactions contemplated thereby were negotiated, proposed and entered into by the

Debtors and the Purchasing Entities, and the Pure Credit Bid was made by the DIP Agent,

without collusion, in good faith, and from an arm's-length bargaining position.  None of

the Debtors, the Purchasing Entities, or the DIP Agent has engaged in any conduct that

would cause or permit the MDA Documents to be avoided under 11 U.S.C. § 363(n).

The Purchasing Entities (and, to the extent applicable, the DIP Agent) are purchasers of

property in good faith under section 363(m) of the Bankruptcy Code or similar applicable

state law and, as such, are entitled to all of the protections afforded thereby with respect

to all of the transactions contemplated by the Pure Credit Bid and the MDA Documents.

The Purchasing Entities  and the DIP Agent are not "insiders" of any of the Debtors, as

that term is defined in section 101 of the Bankruptcy Code.

       6.    <u>Highest Or Otherwise Best Offer</u>.  The terms and conditions set

forth in the Master Disposition Agreement, and the transactions contemplated thereby,

including the amount of the purchase price, represent fair and reasonable terms and

conditions, constitute the highest or otherwise best offer obtainable for the Acquired

Assets and Sale Securities, and are fair and adequate.  The Debtors' methodology for

valuing the Pure Credit Bid was reasonable and appropriate, and such methodology was

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

applied consistently and fairly.  Further, the Auction was duly noticed and conducted in a

noncollusive, fair, and good faith manner, and, pursuant to the Procedures, a reasonable

opportunity has been given to any party to make a higher or otherwise better offer.  The

Successful Alternative Transaction was the highest or otherwise best bid at the Auction,

and the Debtors' decision to accept such Pure Credit Bid as the Successful Alternative

Transaction, approval of the Master Disposition Agreement, and consummation of the

transactions contemplated in the Master Disposition Agreement and the exhibits thereto

are appropriate under the circumstances of these cases and are in the best interests of the

Debtors, their creditors, their estates, and other parties in interest.  The Hearing

constituted the hearing to approve entry of either an order confirming the Modified Plan

or approving an alternative sale transaction, and no further hearing is needed.

       7.    <u>Required Lenders</u>.  Pursuant to Section 7.01 of the DIP Credit

Agreement, Section 15 of the Security and Pledge Agreement and applicable law, DIP

Lenders holding Tranche A Loans (as defined in the DIP Credit Agreement) and LC

Exposure (as defined in the DIP Credit Agreement) and a portion of the Tranche B Loan

(as defined in the DIP Credit Agreement) representing in the aggregate more than 50% of

the sum of the Tranche A Total Commitment Usage (as defined in the DIP Credit

Agreement) and the principal amount of the Tranche B Loan (as defined in the DIP

Credit Agreement) outstanding constitute "Required Lenders" as that term is used in the

DIP Credit Agreement.  The Pure Credit Bid was made at the direction of the Required

Lenders, including the following lenders, who together constitute Required Lenders

under the DIP Credit Agreement: (i) Anchorage Capital Master Offshore, Ltd.; (ii)

Anchorage Crossover Credit Finance, Ltd.; (iii) Anchorage Crossover Credit Offshore

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

Master Fund, Ltd.; (iv) Bennett Management; (v) Black Diamond Offshore Ltd.; (vi)

Double Black Diamond Offshore Ltd.; (vii) Blackrock Financial Management, Inc. on

behalf of various clients and accounts; (viii) GCOF SPV I; (ix) GCP II SPV I; (x) Geer

Mountain Financing, Ltd.; (xi) Greywolf Capital Management LP; (xii) Greywolf Capital

Overseas Master Fund; (xiii) Greywolf Capital Partners II LP; (xiv) Greywolf CLO I,

Ltd.; (xv) Greywolf Structured Products Master Fund, Ltd.; (xvi) Kensington

International Limited; (xvii) Knighthead Capital Management; (xviii) Knighthead Master

Fund, L.P.; (xix) Marathon CLO I; (xx) Marathon CLO II; (xxi) Marathon Finance I BV;

(xxii) Marathon Special Opportunity Master Fund; (xxiii) Manchester Securities Corp.;

(xxiv) Maw Capital Fund, L.P.; (xxv) Monarch Master Funding Ltd.; (xxvi) Newstart

Factors Inc.; (xxvii) Oaktree Fund GP I, L.P.; (xxviii) Ore Hill Credit Hub Fund Ltd.;

(xxix) Pentwater Event Fund, Ltd.; (xxx) Pentwater Growth Fund, Ltd.; (xxxi) Redwood

Master Fund Ltd.; (xxxii) Seneca Capital; (xxxiii) SPCP Group, LLC; (xxxiv) Springfield

Associates, LLC; and (xxxv) Teak Hill Master Fund L.P.

        8.    <u>Authority For Pure Credit Bid</u>. The terms of the DIP Credit

Agreement and the Security and Pledge Agreement empower the Required Lenders to

direct the DIP Agent to credit bid the entire amount of the DIP Loans of all of the DIP

Lenders on the DIP Lenders' behalf following an event of default.  Section 8.01 of DIP

Credit Agreement authorizes the DIP Agent to take "such actions on its behalf and to

exercise such powers as are delegated to such Agent by the terms [thereof], together with

such actions and powers as are reasonably incidental thereto."  Those actions and powers

include credit bidding under section 363(k) of the Bankruptcy Code and specifically the

making of the Pure Credit Bid as described in this order.  Under section 7.01 of the DIP

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

Credit Agreement, following an event of default, the Required Lenders can direct the DIP

Agent to exercise any and all remedies "under the Loan Documents and applicable law"

on behalf of the DIP Lenders.  Applicable law for this purpose includes section 363(k) of

the Bankruptcy Code.  Under section 15(a) of the Security and Pledge Agreement, the

DIP Agent may exercise remedies under the agreements or remedies "otherwise available

to it," including "all the rights and remedies of a secured party on default under the

Uniform Commercial Code" and the right to "sell the Collateral or any part thereof in one

or more parcels at public or private sale." Section 10.07 of the DIP Credit Agreement

provides that remedies under the DIP Credit Agreement are cumulative "and not

exclusive of any other remedies provided by law."  Section 7.01 of the DIP Credit

Agreement provides that, upon an event of default, the DIP Agent may, and at the request

of the Required Lenders shall, "exercise any and all remedies under the Loan Documents

and under applicable law available to the [DIP Agent] and the Lenders."  Pursuant to and

in accordance with the foregoing authority of the DIP Agent and in conformity with the

Procedures:  (i) by letter dated July 9, 2009, the DIP Agent, on behalf of itself and the

DIP Lenders, properly notified the Debtors and other interested parties of the DIP

Lenders' intention to submit a credit bid in connection with the sale by the Debtors of

their property pursuant to section 363(b); (ii) by letter dated July 16, 2009, the DIP Agent,

on behalf of itself and the DIP Lenders, properly submitted a Pure Credit Bid Support

Letter (within the meaning of the Supplemental Procedures Modification Order), (iii) on

July 26, 2009 the DIP Agent duly submitted on behalf of itself and all of the DIP Lenders

a Pure Credit Bid that was duly authorized by all necessary action of the DIP Lenders and

that became the Successful Alternative Transaction, and (iv) the DIP Agent has entered

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

into an Assignment Agreement by and among DIP Holdco 3, LLC, the DIP Agent, and

GM Components Holdings LLC pursuant to which the Agent has assigned the right to

receive certain assets purchased pursuant to the Pure Credit Bid to DIP Holdco 3, LLC

and other assets to GM Components Holdings LLC in exchange for certain consideration

to be distributed by the DIP Agent to the DIP Lenders pursuant to the DIP Distributions

(as defined below).

      H.      <u>Disposition Transactions</u>.

      1.      <u>No Fraudulent Transfer</u>.  The consideration provided by the

Purchasing Entities (including, for this purpose, by the DIP Agent in connection with the

DIP Lenders Bid) pursuant to the MDA Documents (i) is fair and reasonable, (ii) is the

highest or otherwise best offer for the Acquired Assets and Sale Securities, and (iii)

constitutes reasonably equivalent value (as those terms are defined in each of the

Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, and section 548

of the Bankruptcy Code) and fair consideration under the Bankruptcy Code and under the

laws of the United States, any state, territory, or possession thereof, or the District of

Columbia.  No other persons or entity or group of entities has offered to purchase the

Acquired Assets or the Sale Securities for greater economic value to the Debtors' estates

than the Purchasing Entities.  Approval of the Modified Plan and the MDA Documents

and the consummation of the transactions contemplated thereby is in the best interests of

the Debtors, their estates, creditors, and other parties-in-interest.

      2.      <u>Purchasing Entities Not Successors To Estates</u>.  None of the

Purchasing Entities is a mere continuation of the Debtors or their estates.  The Purchasing

Entities are a separate and distinct group from the Debtors, and there is no continuity of

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

ownership or enterprise between any of the Purchasing Entities and the Debtors following

the Effective Date of the Modified Plan.  None of the Purchasing Entities is holding itself

out to the public as a continuation of the Debtors.  None of the Purchasing Entities is a

successor to the Debtors or their estates and neither the consummation of the Modified

Plan, nor the completion of the transaction contemplated under the MDA Documents,

amounts to a consolidation, merger, or de facto merger of any of the Purchasing Entities

and the Debtors.

        3.     <u>Validity Of Transfer</u>.  Each Seller (as defined in the Master

Disposition Agreement) has full corporate power and authority to execute (or cause to be

executed) the MDA Documents and all other documents contemplated thereby, and the

sale of the Acquired Assets and the Sale Securities in accordance with the MDA

Documents by the Sellers (as defined in the Master Disposition Agreement) and related

matters have been duly and validly authorized by all necessary corporate action of each

of the Sellers (as defined in the Master Disposition Agreement).  Each Seller (as defined

in the Master Disposition Agreement) has all of the corporate power and authority

necessary to consummate the transactions contemplated by the MDA Documents and has

taken all corporate action necessary to authorize and approve the MDA Documents and

the consummation by such Seller (as defined in the Master Disposition Agreement) of the

transactions contemplated thereby.  No consents or approvals, other those expressly

provided for in the MDA Documents, are required for the Sellers (as defined in the

Master Disposition Agreement) to consummate such transactions in connection with

implementation of the Modified Plan.

4.      Effect Of Transfer.  On the Effective Date, the transfer of the

Acquired Assets and the Sale Securities to the Purchasing Entities will be a legal, valid,

and effective transfer of the Acquired Assets and the Sale Securities, and will vest,

effective as of the Closing (as defined in the Master Disposition Agreement), (i) the

Purchasing Entities with all right, title, and interest of the Sellers (as defined in the

Master Disposition Agreement) to the Acquired Assets and the Sale Securities free and

clear (with the exception of the Assumed Liabilities, any other liabilities specifically

assumed under the Master Disposition Agreement or assumed and assigned pursuant to

paragraphs 38 and 61 of this order, and Permitted Encumbrances) of liens, claims,

encumbrances, and other interests (collectively, the "Property Interests"), including, but

not limited to, (1) those that purport to give to any party a right or option to effect any

forfeiture, modification, right of first refusal, or termination of the Purchasing Entities'

interest in the Acquired Assets or the Sale Securities, or any similar rights, (2) those

relating to taxes arising under or out of, in connection with, or in any way relating to the

operation of the Debtors' assets prior to the Closing, and (3) (a) those arising under all

mortgages, deeds of trust, security interests, conditional sale or other title retention

agreements, pledges, liens, judgments, demands, encumbrances, rights of first refusal, or

charges of any kind or nature, if any, including, but not limited to, any restriction on the

use, voting, transfer, receipt of income, or other exercise of any attributes of ownership,

and (b) all debts or obligations arising in any way in connection with any agreements,

acts, or failures to act, of any of the Debtors or any of the Debtors' predecessors or

affiliates, Claims (as that term is defined in the Bankruptcy Code), obligations, liabilities,

demands, guaranties, options, rights, contractual or other commitments, restrictions,

18

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

interests, and matters of any kind and nature, whether known or unknown, contingent or

otherwise, whether arising prior to or subsequent to the commencement of the Chapter 11

Cases, and whether imposed by agreement, understanding, law, equity or otherwise,

including, but not limited to, Claims otherwise arising under doctrines of successor

liability and related theories; any liability or obligation calculable with reference to the

Debtors' businesses or operations; except as otherwise set forth herein or in the MDA

Documents, any pension, welfare, compensation, or other employee benefit plans,

agreements, practices, and programs, including, without limitation, any pension plan of a

Debtor, any other employee, worker's compensation, occupational disease, or

unemployment or temporary disability related Claim, any products liability or similar

Claims, whether pursuant to any state or federal laws or otherwise, including, without

limitation, asbestos Claims, including those in any way relating to any manufacturing,

sales or distribution of asbestos-containing products prior to the Effective Date, or

exposure to asbestos in any of the Debtors' facilities or premises prior to the Effective

Date; any bulk sales or similar law; any brokerage commissions or similar claims relating

to any of the Debtors' assets; tort Liabilities, including all Liabilities relating to personal

injury and other tort claims of any nature and related matters, of Debtors and their

Affiliates, or relating to the Business (as such term is defined in the Master Disposition

Agreement) or any assets or properties of Debtors and their Affiliates; and any tax

statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986,

as amended, in each case, to the fullest extent permitted by law.  The Purchasing Entities

would not have entered into the MDA Documents and would not consummate the

transactions contemplated thereby, thus adversely affecting the Debtors, their estates, and

19

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

their creditors, if the sale of the Acquired Assets and the Sale Securities to the Purchasing

Entities, the assignment of the Acquired Contracts to the Purchasing Entities, the

assumption of the Assumed Liabilities, and any other liabilities specifically assumed

under the Master Disposition Agreement or assumed and assigned pursuant to paragraphs

38 and 61 of this order, by the Purchasing Entities and the Company Sale Securities were

not free and clear of all Property Interests or if the Purchasing Entities would, or in the

future could, be liable for any of the Property Interests, other than Assumed Liabilities,

any other liabilities specifically assumed under the Master Disposition Agreement or

assumed and assigned pursuant to paragraphs 38 and 61 of this order, and Permitted

Encumbrances.  The Purchasing Entities shall not be required or deemed to purchase any

Excluded Assets (as defined in the Master Disposition Agreement).  Without limiting the

generality of the foregoing, the DIP Agent shall not be a transferee of any of the

Acquired Assets or the Sale Securities, nor shall it be responsible for any liabilities or

obligations relating thereto or any obligations or representations of the Purchasing

Entities with respect to the Master Disposition Agreement, the Acquired Assets, the Sale

Securities, or otherwise.

     5.    <u>Operation Of Facilities</u>.  The Purchasing Entities are entitled to

operate the facilities being acquired after the Closing (as defined in the Master

Disposition Agreement) under the current Permits (as defined in the Master Disposition

Agreement) held by the applicable Seller (as defined in the Master Disposition

Agreement) until such Permits are assigned to the Purchasing Entities or the Purchasing

Entities obtain similar Permits in their own name.

I.      Plan Exhibits.  In accordance with the Modification Procedures Order, on

July 2, 2009, the Debtors filed certain plan exhibits to the Modified Plan.  Plan Exhibit

8.1 was supplemented on July 20, 2009 and the PBGC Settlement Agreement was filed

on July 21, 2009 and subsequently supplemented.

J.      Resolicitation On Modified Plan.

1.      Bankruptcy Rule 3018(a) Motions.  Prior to the Modification

Approval Hearing, three motions were filed for temporary allowance of claims for voting

purposes pursuant to Bankruptcy Rule 3018(a).  The motions were filed by the

International Union of Operating Engineers Locals 832S, 18S, and 101S, the

International Brotherhood of Electrical Workers and its Local 663, and the International

Association of Machinists and Aerospace Workers and its District 10 and Tool and Die

Makers Lodge 78 (Docket No. 17528), Hyundai (Docket No. 17481), and Fiduciary

Counselors, Inc. (Docket No. 17539) (the "3018(a) Motions").  The 3018(a) Motions

were granted at the hearing on July 23, 2009, and did not affect the acceptance of the

Modified Plan by holders of claims in subclasses 1A-1 and Classes 1C-2 through 12C-2,

and 1D through 12D.

2.      Ballots.  All procedures used to distribute resolicitation materials

to the applicable holders of Claims and Interests and to tabulate the Ballots were fair and

conducted in accordance with the Modification Procedures Order, the Bankruptcy Code,

the Bankruptcy Rules, the local rules of the Bankruptcy Court for the Southern District of

New York, and all other applicable rules, laws, and regulations.

3.      Voting Reports.  On July 20, 2009, in accordance with the

Solicitations Procedures Order, the Debtors filed the Gershbein Voting Declaration

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

(Docket No. 18462, as supplemented on July 22, 2009, at Docket No. 18557) and

Sullivan Voting Certification (Docket No. 18464) (together, the "Voting Reports"),

certifying the method and results of the Ballot tabulation for each of the Voting Classes

voting to accept or reject the Modified Plan.

    4.    <u>Impaired Classes That Have Voted To Accept The Modified Plan</u>.

As evidenced by the Voting Reports, which certified both the method and results of the

voting, pursuant to the requirements of sections 1124 and 1126 of the Bankruptcy Code,

at least one Impaired Class of Claims, determined without including any acceptance by

an insider of any of the Debtors, has voted to accept the Modified Plan.

    5.    <u>Classes Deemed To Have Rejected The Modified Plan</u>. Holders of

Claims and Interests in Classes 1E, 1G-1, 1G-2, 1H, 8H, and 1I are not entitled to receive

any distribution under the Modified Plan on account of their Claims or Interests.

Pursuant to section 1126(g) of the Bankruptcy Code, Classes 1E, 1G-1, 1G-2, 1H, 8H,

and 1I are conclusively presumed to have rejected the Modified Plan, and votes from

those interest holders therefore were not resolicited.

    K.    <u>Debtors' Compliance With Section 1127</u>.  The Debtors have satisfied the

necessary standards under section 1127 of the Bankruptcy Code with respect to the

Modified Plan.

    L.    <u>Modified Plan Compliance With Bankruptcy Code (11 U.S.C. §
1129(a)(1))</u>.  The Modified Plan complies with the applicable provisions of the

Bankruptcy Code, thereby satisfying section 1129(a)(1) of the Bankruptcy Code, as made

applicable by section 1127 of the Bankruptcy Code.

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

1.    <u>Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1))</u>.  In addition
to Administrative Claims and Priority Tax Claims (which are not required to be
classified), Article III of the Modified Plan designates Classes of Claims and Classes of
Interests.  The Claims and Interests placed in each Class are substantially similar to other
Claims or Interests in each such Class.  Valid business, factual, and legal reasons exist for
classifying the various Classes of Claims and Interests in the manner set forth in the
Modified Plan, and such Classes do not unfairly discriminate between holders of Claims
or Interests.  Thus, the Modified Plan satisfies sections 1122 and 1123(a)(1) of the
Bankruptcy Code.

2.    <u>Specification Of Unimpaired Classes (11 U.S.C. § 1123(a)(2))</u>.
Article 4.1 of the Modified Plan specifies the Classes of Claims that are Unimpaired.
Thus, the Modified Plan satisfies section 1123(a)(2) of the Bankruptcy Code.

3.    <u>Specification Of Treatment Of Impaired Classes (11 U.S.C. §
1123(a)(3))</u>.  Article 4.2 of the Modified Plan specifies the Classes of Claims and
Interests that are Impaired under the Modified Plan.  Article V of the Modified Plan
specifies the treatment of Claims and Interests in all such Classes.  Thus, the Modified
Plan satisfies section 1123(a)(3) of the Bankruptcy Code.

4.    <u>No Discrimination (11 U.S.C. § 1123(a)(4))</u>.  The Modified Plan
provides for the same treatment for each Claim in each respective Class unless the holder
of a particular Claim has agreed to less favorable treatment with respect to such Claim.
Thus, the Modified Plan satisfies section 1123(a)(4) of the Bankruptcy Code.

5.    <u>Implementation Of Modified Plan (11 U.S.C. § 1123(a)(5))</u>.  The
Modified Plan provides adequate and proper means for implementation of the Modified

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

Plan, including, without limitation, (i) the continued corporate existence of Reorganized

DPH Holdings, (ii) the corporate constituent documents that will govern the Reorganized

Debtors after the Effective Date, including, without limitation, the Certificate of

Incorporation and Bylaws, (iii) consummation of the Master Disposition Agreement in

connection with, among other things, the Pure Credit Bid, (iv) assumption and

assignment of the collective bargaining agreements, as may be required by the Master

Disposition Agreement, (v) consummation of the Restructuring Transactions and the

transactions contemplated by the Master Disposition Agreement, and (vi) the execution,

delivery, filing, or recording of all contracts, instruments, releases, indentures, and other

agreements or documents related to the foregoing.  Thus, the Modified Plan satisfies

section 1123(a)(5) of the Bankruptcy Code.

      6.     <u>Prohibition Against Issuance Of Non-Voting Equity Securities</u>

<u>And Provisions For Voting Power Of Classes Of Securities (11 U.S.C. § 1123(a)(6))</u>.

Article 7.4 of the Modified Plan provides that the articles of incorporation of the

Reorganized Debtors will comply with section 1123(a)(6) of the Bankruptcy Code.  Such

statutory provisions have been incorporated into the articles of incorporation of

Reorganized DPH Holdings, as set forth in Plan Exhibit 7.4(a).

      7.     <u>Selection Of Officers, Directors, And The Trustee (11 U.S.C. §</u>

<u>1123(a)(7))</u>.  In Article 7.5 and Article 7.9 of the Modified Plan, as announced at the

Modification Approval Hearing, the Debtors properly and adequately disclosed or

otherwise identified the procedures for determining the identity and affiliations of all

individuals or entities proposed to serve on or after the Effective Date as officers or

directors of the Reorganized Debtors and as trustee of the Post-Confirmation

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

Reorganized DPH Holdings Share Trust.  The appointment or employment of such

individuals or entities and the proposed compensation and indemnification arrangements

for officers and directors are consistent with the interests of Claim and Interest holders

and with public policy.  Thus, section 1123(a)(7) of the Bankruptcy Code is satisfied.

        8.     <u>Additional Plan Provisions (11 U.S.C. § 1123(b))</u>.  The Modified

Plan's provisions are appropriate and consistent with the applicable provisions of the

Bankruptcy Code, including, without limitation, provisions for (i) distributions to holders

of Claims, (ii) the disposition of executory contracts and unexpired leases, (iii) approval

of and authorization for entrance into the Master Disposition Agreement, (iv) amendment,

assumption, and assignment of the Union Settlement Agreements, (v)  the retention of,

and right to enforce, sue on, settle, or compromise (or refuse to do any of the foregoing

with respect to) certain claims or causes of action against third parties, to the extent not

waived and released under the Modified Plan, (vi) resolution of Disputed Claims, (vii)

allowance of certain Claims, (viii) indemnification obligations, (ix) releases by the

Debtors of certain parties, (x) releases by holders of Claims and Interests, as approved

herein, (xi) releases by Unions, (xii) releases of GM-Related Parties (as defined in the

Delphi-GM Global Settlement Agreement) by the Debtors and third parties, and (xiii) the

exculpation of certain parties.

        9.     <u>Fed. R. Bankr. P. 3016(a)</u>.  The Modified Plan is dated and

identifies the entities submitting it, thereby satisfying Fed. R. Bankr. P. 3016(a).

        M.     <u>Debtors' Compliance With Bankruptcy Code (11 U.S.C. § 1129(a)(2))</u>.

The Debtors have complied with the applicable provisions of the Bankruptcy Code,

thereby satisfying section 1129(a)(2) of the Bankruptcy Code as made applicable by

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

section 1127 of the Bankruptcy Code.  Specifically, the Debtors are proper debtors under section 109 of the Bankruptcy Code and proper proponents of the Modified Plan under section 1121(a) of the Bankruptcy Code.  The Debtors have complied with the applicable provisions of the Bankruptcy Code during the Chapter 11 Cases, including as provided or permitted by orders of the Court.  The Debtors have complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Modification Procedures Order in transmitting the Modified Plan, the Disclosure Statement Supplement, the Ballots, and related documents and notices, and in resoliciting and tabulating votes on the Modified Plan.

N.    Modified Plan Proposed In Good Faith (11 U.S.C. § 1129(a)(3)).  The Debtors have proposed the Modified Plan in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code as made applicable by section 1127 of the Bankruptcy Code.  In determining that the Modified Plan has been proposed in good faith, the Court has examined the totality of the circumstances surrounding the filing of the Chapter 11 Cases, the events after the entry of the Confirmation Order, and the formulation of the Modified Plan.  See Bankruptcy Rule 3020(b).  The Debtors, GM, the DIP Agent, and the DIP Lenders, and their respective Affiliates, shareholders, partners, directors, officers, employees, and advisors, among others, and each of their respective professionals negotiated the Modified Plan in good faith and participated in the Modified Plan formulation process in good faith.  The Chapter 11 Cases were filed, and the Modified Plan was proposed, with the legitimate and honest purpose of reorganizing and maximizing the value of each of the Debtors and the recovery to holders of Claims and Interests under the circumstances of these cases.

26

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

O.    <u>Payments For Services Or Costs And Expenses (11 U.S.C. § 1129(a)(4))</u>.

Any payment made or to be made by the Debtors for services or for costs and expenses in connection with the Chapter 11 Cases, including all administrative expense and substantial contribution claims under sections 503 and 507 of the Bankruptcy Code, and pursuant to any expense side letter entered into with the Debtors to the extent such expense side letter has been approved by the Bankruptcy Court, or in connection with the Modified Plan and incident to the Chapter 11 Cases, has been approved by, or is subject to the approval of, the Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code as made applicable by section 1127 of the Bankruptcy Code.  Without limiting the generality of the foregoing, all payments for services or for costs or expenses the payment of which is provided to be paid in the Modified Plan, the Master Disposition Agreement, the Loan Documents, or any expense side letter approved by the Bankruptcy Court are hereby (or have heretofore been) so approved.  Any amounts allocated by the Debtors for the payment of such services, costs, and expenses, or any recoveries or disgorgements subsequently ordered by the Court on account of payments to professionals prior to final allowance of such amounts shall constitute assets owned exclusively by the Reorganized Debtors except as otherwise provided in Section 10.3(c) of the Modified Plan.  Accordingly, the requirements of section 1129(a)(4) of the Bankruptcy Code have been met.

P.    <u>Directors, Officers, And Insiders (11 U.S.C. § 1129(a)(5))</u>.  The Debtors have complied with section 1129(a)(5) of the Bankruptcy Code as made applicable by section 1127 of the Bankruptcy Code.  Specifically, the Debtors have disclosed the identity and the affiliation of all of the initial officers of the Reorganized Debtors and the

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

directors (as applicable) of all Reorganized Debtors.  Accordingly, the requirements of
section 1129(a)(5) of the Bankruptcy Code have been met.

      Q.     <u>No Rate Changes (11 U.S.C. § 1129(a)(6))</u>.  Section 1129(a)(6) of the
Bankruptcy Code, as made applicable by section 1127 of the Bankruptcy Code, is
satisfied because the Modified Plan does not provide for any change in rates over which a
governmental regulatory commission has jurisdiction.

      R.     <u>Best Interests Test (11 U.S.C. § 1129(a)(7))</u>.  The Modified Plan satisfies
section 1129(a)(7) of the Bankruptcy Code as made applicable by section 1127 of the
Bankruptcy Code.  With respect to each impaired class of claims or interests under the
Modified Plan, the liquidation analysis in Appendix C to the Disclosure Statement
Supplement, the Eisenberg Declaration, and other evidence proffered or adduced at the
Modification Approval Hearing (1) are persuasive, credible, and accurate as of the dates
such evidence was prepared, presented, or proffered, (2) either have not been
controverted by other persuasive evidence or have not been challenged, (3) are based
upon reasonable and sound assumptions, (4) provide a reasonable estimate of the
liquidation values of the Debtors upon conversion to a case under chapter 7 of the
Bankruptcy Code, and (5) establish that each holder of a Claim or Interest in an Impaired
Class that has not accepted the Modified Plan will receive or retain under the Modified
Plan, on account of such Claim or Interest, property of a value, as of the Effective Date of
the Modified Plan, that is not less than the amount that it would receive if the Debtors
were liquidated under chapter 7 of the Bankruptcy Code on such date.

      S.     <u>Acceptance By Impaired Classes (11 U.S.C. § 1129(a)(8))</u>.  Three
subclasses in Class 1A-1, Classes 1C-2 through 12C-2, and Classes 1D through 12D have

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

voted to accept the Modified Plan.  All other classes have voted to reject or have been

deemed to reject the Modified Plan; provided, however, Classes 3A-1, 4A-1, 2C-1, 7C-1,

and 9C-1, in which no votes were cast, shall be deemed to have accepted the Modified

Plan.  Accordingly, confirmation is sought pursuant to 11 U.S.C. § 1129(b) as made

applicable by section 1127 of the Bankruptcy Code.

      T.    Treatment Of Administrative And Priority Tax Claims (11 U.S.C. §

1129(a)(9)).  The treatment of Administrative Claims under the Modified Plan satisfies

the requirements of section 1129(a)(9)(A) and (B) of the Bankruptcy Code as made

applicable by section 1127 of the Bankruptcy Code, and the treatment of Priority Tax

Claims under the Modified Plan satisfies the requirements of section 1129(a)(9)(C) of the

Bankruptcy Code as made applicable by section 1127 of the Bankruptcy Code.

      U.    Acceptance By Impaired Class (11 U.S.C. § 1129(a)(10)).  Three

subclasses in Class 1A-1, Classes 1C-2 through 12C-2, and Classes 1D through 12D have

voted to accept the Modified Plan and, to the best of the Debtors' knowledge, do not

contain "insiders," as such term is defined in 11 U.S.C. § 101(31).  Additionally, Classes

3A-1, 4A-1, 2C-1, 7C-1, and 9C-1, in which no votes were cast, shall be deemed to have

accepted the Modified Plan.  Thus, the Modified Plan satisfies section 1129(a)(10) of the

Bankruptcy Code as made applicable by section 1127 of the Bankruptcy Code.

      V.    Feasibility (11 U.S.C. § 1129(a)(11)).  The Modified Plan satisfies section

1129(a)(11) of the Bankruptcy Code as made applicable by section 1127 of the

Bankruptcy Code.  The Sheehan Declaration, the Stipp Declaration, and other evidence

proffered or adduced at the Modification Approval Hearing (1) are persuasive and

credible, (2) have not been controverted by other evidence or sufficiently challenged in

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

any of the objections to the Modified Plan, (3) establish that subject to, and upon

consummation of, the transactions set forth as conditions to the Effective Date in Article

12.2 of the Modified Plan, the Modified Plan is feasible and that confirmation of the

Modified Plan is not likely to be followed by the liquidation or the need for further

financial reorganization of the Debtors or the Reorganized Debtors.

W.    Payment Of Fees (11 U.S.C. § 1129(a)(12)).  The Debtors have paid, or

pursuant to Sections 1.2, 2.1, and 14.2 of the Modified Plan will pay by the Effective

Date, fees payable under 28 U.S.C. § 1930 plus accrued interest under 31 U.S.C. § 3717.

Thus, the Modified Plan satisfies section 1129(a)(12) of the Bankruptcy Code as made

applicable by section 1127 of the Bankruptcy Code.

X.    Continuation Of Retiree Benefits (11 U.S.C. § 1129(a)(13)).  Article 7.18

of the Modified Plan provides that all retiree benefits (as defined in section 1114 of the

Bankruptcy Code) that were established pursuant to sections 1114(e)(1)(B) or 1114(g) of

the Bankruptcy Code at any time prior to the entry of this order will continue at the levels

so established for the period that the Debtors have obligated themselves to provide such

benefits.  This provision satisfies section 1129(a)(13) of the Bankruptcy Code as made

applicable by section 1127 of the Bankruptcy Code.  To the extent that the Debtors

during the Chapter 11 Cases modified retiree benefits solely in accordance with the terms

of the existing retiree benefit plans, they were not required to seek such modifications

under sections 1114(e)(1)(B) or 1114(g) of the Bankruptcy Code, and, therefore, section

1129(a)(13) has no application to such modifications.

Y.    Confirmation Of The Plan Over Nonacceptance Of Impaired Classes

(11 U.S.C. § 1129(b)).  Three subclasses of Class 1A-1, Classes 1C-2 through 12C-2, and

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

1D through 12D voted to accept the Modified Plan.  Pursuant to section 1129(b) of the

Bankruptcy Code, the Modified Plan may be confirmed notwithstanding that not all

Impaired Classes have voted to accept the Modified Plan.  All of the requirements of

section 1129(a) of the Bankruptcy Code with respect to such Classes, other than section

1129(a)(8), have been met.  The Modified Plan is fair and equitable and does not

discriminate unfairly against the holders of claims that have rejected or that have been

deemed to reject the Modified Plan.  With respect to Classes 1E, 1G-1, 1G-2, 1H, 8H,

and 1I, no holders of Claims or Interests junior to the holders of such Class will receive

or retain any property under the Modified Plan on account of such Claims or Interests,

and, as evidenced by the estimates contained in the Disclosure Statement and admitted

into evidence at the Modification Approval Hearing, no Class of Claims or Interests

senior to such Class is receiving more than full payment on account of such Claims or

Interests.  Accordingly, the Modified Plan is fair and equitable and does not discriminate

unfairly, as required by section 1129(b) of the Bankruptcy Code, and section 1129(b) of

the Bankruptcy Code therefore is satisfied as made applicable by section 1127 of the

Bankruptcy Code.  In addition, the Creditors' Committee has withdrawn its objection and

supports cramdown of the Modified Plan on nonconsenting Classes of Claims under

section 1129(b) of the Bankruptcy Code, as it is incorporated by section 1127 of the

Bankruptcy Code.

   Z. <u>Principal Purpose Of Modified Plan (11 U.S.C. § 1129(d))</u>.  The principal

purpose of the Modified Plan is not the avoidance of taxes or the avoidance of the

application of section 5 of the Securities Act of 1933 (15 U.S.C. § 77e).  Accordingly, the

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

Modified Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code as made applicable by section 1127 of the Bankruptcy Code.

AA.    Modifications To The Plan.  The modifications to the Modified Plan described and/or set forth beginning on Exhibit A hereto constitute non-material or technical changes and/or changes with respect to particular Claims or Interests, and do not materially adversely affect or change the treatment of any Claims or Interests. Accordingly, these modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or resolicitation of votes under section 1126 of the Bankruptcy Code, nor do they require that holders of Claims or Interests be afforded an opportunity to change previously cast acceptances or rejections of the Modified Plan.

BB.    Good Faith Resolicitation (11 U.S.C. § 1125(e)).  The Debtors and their agents, representatives, attorneys, and advisors, and other Persons involved in the resolicitation process, have resolicited votes on the Modified Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code and the Modification Procedures Order and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the exculpation provisions set forth in Section 11.11 of the Modified Plan.

CC.    Executory Contracts.  The Debtors have exercised reasonable business judgment in determining whether to assume, assume and assign, or reject each of their executory contracts and unexpired leases as set forth in Article VIII of the Modified Plan. Each assumption, assumption and assignment, or rejection of an executory contract or unexpired lease as provided in Article 8.1 of the Modified Plan shall be legal, valid, and binding upon the applicable Reorganized Debtor and all non-Debtor parties to such

32

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

executory contract or unexpired lease, all to the same extent as if such assumption or rejection had been effectuated pursuant to an appropriate authorizing order of the Court entered before the Modification Approval Date under section 365 of the Bankruptcy Code.

DD.    <u>Adequate Assurance</u>.  The Debtors or the Buyers have cured, or provided adequate assurance that the Reorganized Debtors or the Buyers will cure, defaults (if any) under or relating to each of the contracts and leases which are being assumed by the Debtors or the Buyers pursuant to the Modified Plan and the MDA Documents (the "Assumed Contracts and Leases" <u>provided</u> that any contracts or leases subject to the August 17, 2009 hearing process described in paragraph 28 of this Order shall not become Assumed Contracts and Leases except pursuant to such process).

EE.    <u>Conditions To Consummation</u>.  The conditions to the Effective Date are set forth in Article 12.2 of the Modified Plan.  Certain conditions to the Effective Date set forth in Article 12.2 of the Modified Plan may be waived as set forth in section 12.3 of the Modified Plan, without any further notice to parties-in-interest or the Court and without a hearing except as otherwise provided in section 12.3 of the Modified Plan.

FF.    <u>Retention Of Jurisdiction</u>.  The Court properly may retain jurisdiction over the matters set forth in Article XIII of the Modified Plan.

GG.    <u>Agreements And Other Documents</u>.  The Debtors have made adequate and sufficient disclosure of:  (1) the adoption of new or amended and restated certificates of incorporation and bylaws or similar constituent documents for Reorganized DPH Holdings and the Reorganized Debtors, (2) the distributions to be made pursuant to the Modified Plan, (3) the Master Disposition Agreement, (4) the adoption, execution,

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

delivery, and implementation of all contracts, leases, instruments, releases, and other agreements or documents related to any of the foregoing, and (5) the other matters provided for under the Modified Plan involving the Reorganized Debtors.

HH.   <u>Master Disposition Agreement</u>.  The Master Disposition Agreement is an essential element of the Modified Plan and entry into and consummation of the Master Disposition Agreement is in the best interests of the Debtors, their estates, and their creditors and is approved in all respects.  The Purchasing Entities, and their Affiliates, shareholders, partners, directors, officers, employees, and advisors, have acted in good faith in connection with the Chapter 11 Cases, the formulation of the Master Disposition Agreement, and the formulation and confirmation of the Modified Plan.

II.   <u>Support Of Unsecured Creditors</u>.  The Creditors' Committee and WTC have withdrawn their objections to the Modified Plan and support its confirmation under section 1127(b) of the Bankruptcy Code, as it incorporates section 1129(b) of the Bankruptcy Code.

JJ.   <u>Releases And Discharges</u>.

1.   <u>In General</u>.  The discharge, release, indemnification, and exculpation provisions of the Modified Plan and the MDA Documents as approved by this order constitute good faith compromises and settlements of the matters covered thereby.  Such compromises and settlements are made in exchange for consideration and are in the best interests of the Debtors, their Estates, and holders of Claims, are fair, equitable, reasonable, and are integral elements of the restructuring and resolution of the Chapter 11 Cases in accordance with the Modified Plan.  Each of the discharge, release,

34

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

indemnification, and exculpation provisions set forth in the Modified Plan, as approved in this order:

(a)    is within the jurisdiction of the Court under 28 U.S.C. §§ 1334(a), (b), and (d),

(b)    is an essential means of implementing the Modified Plan pursuant to section 1123(a)(5) of the Bankruptcy Code,

(c)    is an integral element of the settlements and transactions incorporated into the Modified Plan,

(d)    confers material benefit on, and is in the best interests of, the Debtors, their estates, and the holders of Claims,

(e)    is important to the overall objectives of the Modified Plan to finally resolve all Claims among or against the parties-in-interest in the Chapter 11 Cases with respect to the Debtors, their organization, capitalization, operation, and reorganization, and

(f)    is consistent with 11 U.S.C. §§ 105, 1123, and 1129, and other applicable provisions of the Bankruptcy Code.

The failure to effect the discharge, release, indemnification, and exculpation provisions set forth in the Modified Plan and MDA Documents, as approved by this order, would seriously impair the Debtors' ability to confirm and implement the Modified Plan and consummate the Master Disposition Agreement.

2.    Releases Of GM-Related Parties and GMCo.. The releases of GM-Related Parties (as defined in the Delphi-GM Global Settlement Agreement) and GMCo. by the Debtors and third parties (collectively, the "GM Releases") pursuant to Sections

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

11.7 and 11.8, respectively, of the Modified Plan, which are described in Article IV of the

Delphi-GM Global Settlement Agreement, (i) are fair and equitable, reasonable, and in

the best interests of the Debtors' estates and holders of Claims, (ii) are supported by truly

unusual circumstances that render the release terms important to the process of the

Modified Plan, and (iii) are integral elements of the restructuring and resolution of the

Chapter 11 Cases.  More specifically, factors which support the approval of the GM

Releases include, without limitation:

(a)    As acknowledged by the Debtors in section 4.01(l) of the

Delphi-GM Global Settlement Agreement, the consideration GM provided and will

provide pursuant to the Delphi-GM Definitive Documents, the Union Settlement

Agreements, and other agreements entered into as part of the Debtors' reorganization

constitutes a material, substantial contribution to the Debtors' estates;

(b)    GM's contribution is necessary to the success of the

Modified Plan because GM's consideration provides a substantial source of funds to the

Debtors' estates and allows substantial distributions to be made to the holders of Claims

and Interests;

(c)    The GM Releases are an important part of the Modified

Plan because, as set forth in section 4.01(l) of the Delphi-GM Global Settlement

Agreement, and as acknowledged by the Debtors, GM would not have agreed to make

these substantial contributions to the Debtors' estates without obtaining the GM Releases;

(d)    The breadth of the GM Releases is necessary to the

Modified Plan and bears a reasonable relationship to the protection of the Debtors' estates;

and

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

(e)    Absent the Delphi-GM Global Settlement Agreement and the GM Releases, as a result of existing indemnification agreements and GM's filed claims for indemnification and contribution, the third-party claims that are being released thereby may have indirectly impacted the Debtors and /or Reorganized Delphi.

Accordingly, the GM Releases, including the third-party releases, are consistent with sections 105, 1123, and 1129 of the Bankruptcy Code and the law in the Second Circuit, and should be, and hereby are, approved.

KK.    <u>PBGC Settlement</u>.  The Debtors have demonstrated good, sufficient, and sound business purposes and justification for entering into the Delphi-PBGC Settlement Agreement, which was executed by Delphi and the PBGC on July 21, 2009.  The PBGC Settlement Agreement was filed with the Bankruptcy Court on July 21, 2009 (Docket No. 18559).  The record reflects that the Debtors would be unable to reorganize under the Modified Plan so long as the Debtors' liability under the Pension Plans covered by the Delphi-PBGC Settlement Agreement exists.  The record also reflects, for purposes stated by the Court in its bench ruling at the Final Modification Hearing, that clear grounds exist under Section 4042 of ERISA, 29 U.S.C. § 1342, for the PBGC to initiate involuntary terminations of the Pension Plans, for the Debtors to enter into termination and trusteeship agreements with the PBGC, and that the PBGC has determined to seek involuntary terminations to reduce the PBGC's risk of loss of recovery relating to own exposure under the Pension Plans.  The consideration provided to the Debtors under the Delphi-PBGC Settlement Agreement is fair and reasonable, and is in the best interests of the estate, in light of the potential amount of a PBGC claim arising out of plan termination and the need to obtain releases from the PBGC to effectuate the sale pursuant

37

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

to this Modified Plan and under the MDA Documents.  For the reasons set forth in the

Debtors' Omnibus Reply and by the Court in its bench ruling at the Final Modification

Hearing, the Court finds that neither (1) the Delphi-PBGC Settlement Agreement, (2) the

potential involuntary termination of the Delphi HRP, nor (3) the Debtors' consent to a

termination and trusteeship agreement with the PBGC as a result of the PBGC having

decided to implement an involuntary termination of the Delphi HRP or the Packard

Hughes Bargaining Interconnect Bargaining Retirement Plan violates (a) the Labor

MOUs,[4] or any modifications thereto, (b) the orders of this Court pursuant to 11 U.S.C.

§§ 363, 1113, and 1114 approving each of the Labor MOUs on terms and conditions

described in those orders (the "Union 1113/1114 Settlement Approval Orders"), (c) the

Local Agreement Between Delphi Connection Systems (formerly Packard-Hughes

Interconnect) And Electronic And Space Technicians Local 1553, or (d) section 1113(f)

of the Bankruptcy Code.  Upon the effectiveness of the Delphi-PBGC Settlement

Agreement, all liabilities relating to unpaid contributions to the Pension Plans will be

released or discharged as provided herein.

LL.    Preservation Of Causes Of Action.  It is in the best interests of the holders

of Claims and Interests that the Retained Actions that are not expressly released under the

Modified Plan be retained by the Reorganized Debtors pursuant to Article 7.19 of the

Modified Plan to maximize the value of the Debtors' Estates.  It is also in the best

---

[4]    "Labor MOUs" means the UAW-Delphi-GM Memorandum of Understanding, the IUE-CWA-Delphi-GM Memorandum of Understanding, the USW-Home Avenue Memorandum of Understanding, the USW-Vandalia Memorandum of Understanding, the IUOE Local 832S Memorandum of Understanding, the IUOE Local 18S Memorandum of Understanding, the IUOE Local 101S Memorandum of Understanding, the IBEW E&S Memorandum of Understanding, the IBEW Powertrain Memorandum of Understanding, and the IAM-Delphi Memorandum of Understanding, each as defined in the Modified Plan.

38

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

interests of holders of Claims and Interests that Avoidance Actions shall not be retained

by the Reorganized Debtors unless specifically listed on Exhibit 7.19 of the Modified

Plan.  For the avoidance of doubt, the Appaloosa Claim (as defined in the Master

Disposition Agreement) shall be assigned to the applicable Purchasing Entity pursuant to

the terms of the Master Disposition Agreement.

MM.    Judicial Notice.  The Court takes judicial notice of the docket of the

Chapter 11 Cases maintained by the Clerk of the Court and/or its duly-appointed agent,

including, without limitation, all pleadings and other documents filed, all orders entered,

and all evidence and arguments made, proffered, or adduced at the hearings held before

the Court during the pendency of the Chapter 11 Cases.

NN.    Burden Of Proof.  The Debtors, as proponents of the Modified Plan, have

met their burden of proving the elements of sections 1129(a) and (b) of the Bankruptcy

Code, as made applicable by section 1127 of the Bankruptcy Code, by a preponderance

of the evidence, which is the applicable evidentiary standard in the Court.  The Court also

finds that the Debtors have satisfied the elements of sections 1129(a) and (b) of the

Bankruptcy Code, as made applicable by section 1127 of the Bankruptcy Code, under the

clear and convincing standard of proof.

IT IS ORDERED, ADJUDGED, AND DECREED THAT:

1.    Confirmation.  The Modified Plan, which consists of the Modified

Plan (and all exhibits and supplements thereto) and the modifications set forth in

Exhibit A hereto and as otherwise provided herein, which are hereby incorporated into

and constitute a part of the Modified Plan, is hereby approved and confirmed under

section 1127(b) as it incorporates section 1129 of the Bankruptcy Code.  The exhibits to

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

the Modified Plan (as may be modified pursuant to the terms of the Modified Plan and/or

such exhibit, as applicable) are incorporated by reference into and comprise an integral

part of the Modified Plan and this order.

        2.     <u>Objections</u>.  All Objections to confirmation of the Modified Plan

that have not been withdrawn, waived, or settled, and all reservations of rights included

therein, are overruled on the merits.

        3.     <u>Modifications To The Confirmation Order</u>.  The findings and

rulings contained in the Confirmation Order were necessary and appropriate as of the

Confirmation Date, and nothing in this order shall otherwise be deemed a vacation or

revocation of the Confirmation Order, which remains in full force and effect as to those

provisions of the Confirmed Plan that have not been modified pursuant to, and are not

inconsistent with, this order or the Modified Plan.  To the extent that certain provisions of

the Confirmation Order are no longer applicable to the Modified Plan, they shall not be

construed as superseding the Modified Plan or this order.  Specifically, the transactions

that were contemplated by the Confirmed Plan and the Confirmation Order, but are no

longer the means for implementation of the Modified Plan, including, but not limited to,

the Investment Agreement, the Exit Financing Arrangements, the Rights Offering, the

Registration Rights Agreement, the IRC Section 414(l) Transfer, and releases and

exculpation related to the Plan Investors, shall be deemed non-binding upon the Debtors

and Reorganized Debtors, as the case may be, and shall have no force and effect upon the

Debtors and Reorganized Debtors when construing the Confirmation Order.  The

provisions of the Modified Plan, this order, and the Confirmation Order shall be

construed in a manner consistent with each other so as to effect the purposes of each;

provided, however, that if there is determined to be any inconsistency between the MDA

Documents, any Modified Plan provision, or this order, on the one hand, and any

provision of the Confirmation Order, on the other hand, that cannot be so reconciled, then,

solely to the extent of such inconsistency, the applicable provisions of the MDA

Documents, the Modified Plan, and this order shall govern; provided further, that if there

is determined to be any inconsistency between the Modified Plan and this order that

cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of

this order shall govern; provided further, that if there is determined to be any material

inconsistency between the Master Disposition Agreement and this order, and the

restatement of any Modified Plan provisions in this order, that cannot be so reconciled,

then, solely to the extent of such inconsistency, the provisions of the Master Disposition

Agreement shall govern, except with respect to findings of fact, other than findings of

fact that describe the Master Disposition Agreement, or unless such application of the

provision of the Master Disposition Agreement would violate the Bankruptcy Code.  For

the avoidance of doubt, the Master Disposition Agreement that was submitted as part of

the Pure Credit Bid (as such term is defined in the Second Supplemental Modification

Procedures Order) on July 26, 2009 and filed at Docket No. 18658 on July 27, 2009, and

no other documents that were submitted as part of the Pure Credit Bid, shall be deemed

the governing version of the Master Disposition Agreement for the purposes of this

paragraph (unless superseded by the filing by the Debtors on the docket of a fully

executed Master Disposition Agreement).  Notwithstanding any other provision of the

Master Disposition Agreement or this order, paragraphs 16, 38, 39, 40, 60, 61, 63, and 64

<div style="writing-mode: vertical">Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20</div>

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

of this order shall govern the provisions of the Master Disposition Agreement in all respects.

4.      Provisions Of Modified Plan And Order Nonseverable And Mutually Dependent.  The provisions of the Modified Plan and this order, including the findings of fact and conclusions of law set forth herein, are nonseverable and mutually dependent.  Subsequent to Closing, the Purchasing Entities shall be entitled to all of the protections of section 363(m) of the Code that would prevent the unwinding of the transactions.

5.      This Order And The MDA Documents Are Binding.  This order and the MDA Documents shall be binding in all respects upon all creditors of and holders of Interests (whether known or unknown), agents, trustees, and collateral trustees, any holders of Property Interests, all non-Debtor parties to the Acquired Contracts, all successors and assigns of the Purchasing Entities, each Debtor and their Affiliates and subsidiaries, the Acquired Assets, and any subsequent trustees appointed under any chapter of title 11 of the U.S. Code, and shall not be subject to rejection.

6.      Modified Plan Classification Controlling.  The classification of Claims and Interests for purposes of the distributions to be made under the Modified Plan shall be governed solely by the terms of the Modified Plan.  The classifications set forth on the Ballots tendered to or returned by the Debtors' creditors or interest holders in connection with voting on the Modified Plan (a) were set forth on the Ballots solely for purposes of voting to accept or reject the Modified Plan, (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims or Interests under the Modified Plan for distribution purposes, (c) may not

42

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

be relied upon by any creditor or interest holder as representing the actual classification

of such Claims or Interests under the Modified Plan for distribution purposes, and (d)

shall not be binding on the Reorganized Debtors, the Estates, or the Debtors.

7.    Effects Of This Order; Immediate Effectiveness; Successors And

Assigns.  The stay provided by Bankruptcy Rule 3020(e) shall not apply to this order.

Immediately upon the entry of this order, this order and the terms of the Modified Plan

(subject to the provisions of Articles 12.2 and 12.3 of the Modified Plan) shall be deemed

binding upon (a) the Debtors, (b) the Reorganized Debtors, (c) GM, (d) the DIP Lenders,

(e) all holders of Claims against and Interests in the Debtors, whether or not Impaired

under the Modified Plan and whether or not, if Impaired, such holders accepted the

Modified Plan, (f) each Person acquiring property under the Modified Plan, (g) any other

party-in-interest, (h) any Person making an appearance in these Chapter 11 Cases, and (i)

each of the foregoing's respective heirs, successors, assigns, trustees, executors,

administrators, affiliates, officers, directors, agents, representatives, attorneys,

beneficiaries, or guardians.

8.    Approval Of MDA Documents And Related Actions.  The MDA

Documents are hereby approved.  The Successful Alternative Transaction was the highest

or otherwise best bid at the Auction for the Acquired Assets and Sale Securities set forth

in the MDA Documents.  Pursuant to sections 363(b) and 1123(b) of the Bankruptcy

Code, the Debtors are authorized to perform their obligations under and comply with the

terms of the MDA Documents, and the Sellers are authorized to consummate the sale

under the MDA Documents, pursuant to and in accordance with the terms and conditions

of this order and the MDA Documents.  The Successful Alternative Transaction satisfies

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

the requirements of sections 363(k) and 1129 of the Bankruptcy Code and constitutes a

Pure Credit Bid in accordance with the Procedures in an amount equal to 100% of the

principal and interest due and owing in respect of the DIP Loan under the DIP Credit

Agreement, after giving effect to the application of any cash collateral to the DIP Loan,

and consummation of the transactions contemplated by the Master Disposition

Agreement and the Assignment Agreement, and the making of the DIP Distributions (as

defined below) comply with and have been fully authorized under the DIP Credit

Agreement and the Loan Documents.

9.       Sale Of Assets To The Purchasing Entities.  Pursuant to the terms

of the MDA Documents, sections 363 and 1123(a)(5) of the Bankruptcy Code, as

applicable, and this order, on the Effective Date the Debtors shall consummate the

transfer, free and clear of any Property Interests, Claims, liens, and encumbrances

pursuant to the terms of the MDA Documents and this order to the Purchasing Entities of

the Acquired Assets, the Sale Securities, and the Assumed Contracts, except for the

Permitted Encumbrances, the Assumed Liabilities, any other liabilities specifically

assumed under the Master Disposition Agreement or assumed and assigned pursuant to

paragraphs 38 and 61 of this order, in accordance with the MDA Documents.

10.       Transfer Of Acquired Assets And Sale Securities Free And Clear.

(a)       On and after the Effective Date the Purchasing Entities,

except for the Assumed Liabilities specifically assumed, any other liabilities specifically

assumed under the Master Disposition Agreement or assumed and assigned pursuant to

paragraphs 38 and 61 of this order, or the Permitted Encumbrances expressly allowed in

the MDA Documents, and the DIP Agent shall have no liability or responsibility for any

44

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

liability or other obligation of the Debtors arising under or related to the Debtors or their

assets, in each case to the extent permitted by applicable law.  Without limiting the

generality of the foregoing, the DIP Agent, and except as otherwise specifically provided

in this order or in the MDA Documents, following consummation of the Modified Plan

on the Effective Date, the Purchasing Entities shall not be liable for any Property

Interests or Claims against the Debtors or any of their predecessors or Affiliates, and the

Purchasing Entities shall have no successor or vicarious liability of any kind or character

including, but not limited to, any theory of antitrust, environmental, successor or

transferee liability, labor law, de facto merger, substantial continuity, or product line,

whether known or unknown as of the Closing (as defined in the Master Disposition

Agreement), now existing or hereafter arising, whether fixed or contingent, with respect

to the Debtors or any obligations of the Debtors arising prior to the Closing.

        (b)     Except for the Assumed Liabilities specifically assumed,

any other liabilities specifically assumed under the Master Disposition Agreement or

assumed and assigned pursuant to paragraphs 38 and 61 of this order, or the Permitted

Encumbrances expressly allowed in the MDA Documents, in connection with the

consummation of the Modified Plan and the Master Disposition Agreement, the Debtors

may sell the Acquired Assets and Sale Securities free and clear of all Property Interests

because one or more of the standards set forth in sections 363(f)(1)-(5) of the Bankruptcy

Code have been satisfied.  The sale, transfer, assignment, and delivery of the Acquired

Assets and Sale Securities shall not be subject to any Property Interests, and Property

Interests of any kind or nature whatsoever shall remain with, and continue to be

obligations of, the Debtors, except as expressly provided in the MDA Documents.  Upon

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

the Closing (as defined in the Master Disposition Agreement), all Persons holding

Property Interests against or in the Debtors, the Acquired Assets, or the Sale Securities of

any kind or nature whatsoever  shall be, and hereby are, forever barred, estopped, and

permanently enjoined from asserting, prosecuting, or otherwise pursuing such Property

Interests of any kind or nature whatsoever against the Purchasing Entities, their property,

their successors and assigns, or the Acquired Assets, the Sale Securities, or any Person

who holds the Sale Securities, as an alleged successor or otherwise, with respect to any

Property Interest of any kind or nature whatsoever such Person or entity had, has, or may

have against or in a Debtor, a Debtor's estate, their respective officers, directors,

shareholders, the Acquired Assets, or the Sale Securities, other than as specifically set

forth herein, including, without limitation, the right to enforce Assumed Liabilities under

the MDA Documents.  Upon the Closing, other than with respect to Assumed Liabilities

and Permitted Encumbrances, no holder of a Property Interest in the Debtors shall

interfere with the Purchasing Entities' title to or use and enjoyment of the Acquired

Assets or any Person's title to or use of the Sale Securities based on or related to such

Property Interest or otherwise.

        11.    <u>Financing Statements And Related Actions</u>.

        (a)    Except with respect to Assumed Liabilities, Permitted

Encumbrances, and any other liabilities specifically assumed under the Master

Disposition Agreement or assumed and assigned pursuant to paragraphs 38 and 61 of this

order, if any Person or entity which has filed financing statements, mortgages, mechanic's

liens, lis pendens, or other documents or agreements evidencing Property Interests in the

Debtors or the Acquired Assets and Sale Securities shall not have delivered to the

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

Debtors prior to the Closing (as defined in the Master Disposition Agreement), in proper

form for filing and executed by the appropriate parties, termination statements,

instruments of satisfaction, or releases of all Property Interests which the Person or entity

has with respect to the Debtors or the Acquired Assets and Sale Securities or otherwise,

then, effective upon the Closing, (a) the Debtors are hereby authorized and directed to

execute and file such statements, instruments, releases, and other documents on behalf of

the Person or entity with respect to the Debtors or the Acquired Assets and Sale

Securities and (b) the Purchasing Entities are hereby authorized to file, register, or

otherwise record a certified copy of this order, which shall constitute conclusive evidence

of the release of all Property Interests in the Debtors or the Acquired Assets and Sale

Securities of any kind or nature whatsoever.  The foregoing provision notwithstanding,

the provisions of this order authorizing the sale and assignment free and clear shall be

self-executing, and notwithstanding the failure of Debtors, the Purchasing Entities, or any

other party to execute, file or obtain release, termination statements, assignments, or other

instruments to effectuate, consummate, and/or implement the provisions hereof or the

Agreement with respect to the sale and assignment of the Acquired Assets and Sale

Securities, all Claims and liens against and Property Interests (other than the Assumed

Liabilities and Permitted Encumbrances) in the Acquired Assets and Sale Securities shall

be deemed released as provided herein.

(b)      Except with respect to the Assumed Liabilities, Permitted

Encumbrances, and any other liabilities specifically assumed under the Master

Disposition Agreement or assumed and assigned pursuant to paragraphs 38 and 61 of this

order, on the Closing (as defined in the Master Disposition Agreement), each of the

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

Sellers' creditors and any other holder of a Property Interest is authorized and directed to execute such documents and take such other actions as may be necessary to release its Property Interests in the Acquired Assets and Sale Securities, if any, as such Property Interests may have been recorded or may otherwise exist.

12.    Fair Value.  The consideration provided by the Purchasing Entities for the Acquired Assets and the Sale Securities under the Master Disposition Agreement is fair and reasonable, and the Disposition Transactions may not be avoided under section 363(n) of the Bankruptcy Code.  The consideration provided by the Purchasing Entities for the Acquired Assets and the Sale Securities under the MDA Documents constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia.

13.    Good Faith.  The transactions contemplated by the MDA Documents and the Modified Plan are undertaken by the Purchasing Entities, and to the extent applicable, the DIP Agent, without collusion and in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and, accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Disposition Transactions shall not affect the validity of the Disposition Transactions (including the assumption and assignment of any of the Acquired Contracts), unless such authorization is duly stayed prior to Closing (as defined in the Master Disposition Agreement) pending such appeal.  The Purchasing Entities, and to the extent applicable, the DIP Agent, are entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.

14.    Possession Of Acquired Assets.  All entities who are in possession of some or all of the Acquired Assets or Sale Securities on the Closing (as defined in the

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

Master Disposition Agreement) are hereby directed to surrender possession or acknowledge ownership of the Acquired Assets or Sale Securities to the Purchasing Entities at Closing.

15.    Permits.  Applicable permitting authorities shall allow the Purchasing Entities to operate the facilities being acquired after the Closing (as defined in the Master Disposition Agreement) under the current Permits (as defined in the Master Disposition Agreement) held by the applicable Seller (as defined in the Master Disposition Agreement) until such Permits are assigned to Purchasing Entities or Purchasing Entities obtain similar Permits in their own name.

16.    Discharge of DIP Loan And Cancellation Of Liens.  Upon the occurrence of the Closing (as defined in the Master Disposition Agreement) and the making of the distributions to the DIP Agent, the DIP Lenders and the Hedging Counterparties as contemplated by the Master Disposition Agreement and the schedule of proposed DIP Lender distributions delivered by the DIP Agent to the Debtors (the "DIP Distributions"), except as explicitly set forth in the Master Disposition Agreement , (i) the DIP Loan shall be fully discharged, released, terminated, and if necessary, deemed waived, (ii) all Claims, liens, security interests, and obligations related thereto on Collateral wherever located shall be fully discharged, released, terminated, and if necessary, deemed waived without need for any further action, (iii) the Debtors and the Reorganized Debtors shall be fully discharged and released of all obligations of any kind relating to the DIP Loan, and the Debtors and Reorganized Debtors shall have no further obligation to the DIP Lenders under and relating to the DIP Loan, and (iv) the DIP Lenders shall be deemed to be bound to the provisions of Article XI of the Modified Plan,

49

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

as approved herein, and this order; provided, however, that notwithstanding the above, (w)

the letters of credit under the DIP Facility shall receive the treatment set forth in the

Master Disposition Agreement, (x) the Reorganized Debtors shall be obligated on an

unsecured basis (i) in respect of the indemnity to the DIP Agent to the extent

contemplated under the Credit Agreement and section 13(d) of the DIP Facility Order

and (ii) for post-Effective Date reasonable fees and out-of-pocket expenses of the DIP

Agent related to the DIP Documents, including, without limitation, all reasonable fees

and out-of-pocket expenses incurred in connection with the cancellation and/or

extinguishment of all publicly-filed liens and/or security interests as described below, (y)

DIP Lender professional fees that have accrued prior to the Effective Date shall be treated

as set forth in the Master Disposition Agreement, and (z) the Assumed Hedging

Agreements (as defined in the Master Disposition Agreement) shall be paid or assumed

by the GM Buyer as set forth in the Master Disposition Agreement.  To the extent that the

DIP Lenders or the DIP Agent have filed or recorded publicly any liens and/or security

interests to secure the Debtors' obligations under the DIP Facility, the DIP Lenders or the

DIP Agent, as the case may be, shall take any and all commercially reasonable steps

requested by the Company Buyer, GM Buyer, or Reorganized Debtors as may be

necessary to cancel and/or extinguish such publicly filed liens and/or security interests.

Notwithstanding anything to the contrary contained in this order, the Modified Plan, or

the Master Disposition Agreement, all obligations and liens under the DIP Credit

Agreement and the Loan Documents shall remain in full force and effect and shall be

enforceable in accordance with their terms until the Closing (as defined in the Master

Disposition Agreement) shall have occurred and the DIP Distributions have been made,

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

and the DIP Agent is hereby authorized, as an appropriate discharge of its duties and

responsibilities under the Loan Documents, to take such actions as it may deem necessary

or appropriate in connection with consummation of the transactions contemplated by

Master Disposition Agreement and the Assignment Agreement, and effecting the DIP

Distributions, and the DIP Agent shall not be liable to any party for taking any such

action.

        17.     <u>Continued Corporate Existence; Vesting Of Assets</u>.  Except as

otherwise provided in the Modified Plan or the MDA Documents, each Reorganized

Debtor shall continue to exist after the Effective Date as a separate corporate or other

legal entity, with all the powers of a corporation or legal entity under applicable law in

the jurisdiction in which each applicable Debtor is incorporated or otherwise formed and

pursuant to its certificate of incorporation and bylaws or other organizational documents

in effect prior to the Effective Date, except to the extent such certificate of incorporation

and bylaws or other organizational documents are amended by the Modified Plan.

Except as otherwise explicitly provided in the Modified Plan, the MDA Documents, or

this order, including, without limitation, Articles 9.6 and 11.1 of the Modified Plan and

the modifications set forth in <u>Exhibit A</u> to this order, on the Effective Date, all property

comprising the Estates (including Retained Actions, but excluding property that has been

abandoned pursuant to the Modified Plan or an order of the Court or that is the subject of

any of the Disposition Transactions) shall revest in each of the Reorganized Debtors that

owned such property or interest in property as of the Effective Date, free and clear of all

Claims, liens, charges, encumbrances, rights, and interests of creditors and interest

holders except as provided in the Modified Plan.  As of and following the Effective Date,

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

the Reorganized Debtors may operate their businesses and use, acquire, and dispose of

property and settle and compromise Claims or Interests without supervision of the Court,

free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those

restrictions expressly imposed by the Modified Plan, the Master Disposition Agreement,

or this order.

      18.   Release Of Liens.  Except as otherwise provided in the Modified

Plan, the MDA Documents, or this order, or in any contract, instrument, release, or other

agreement or document entered into or delivered in connection with the Modified Plan,

including the MDA Documents, on the Effective Date and/or concurrently with the

applicable distributions made pursuant to the Modified Plan, all mortgages, deeds of trust,

liens, or other security interests against the property of any Estate are fully released and

discharged (except as provided under the Modified Plan), and all right, title, and interest

of any holder of such mortgages, deeds of trust, liens, or other security interests,

including any rights to any collateral thereunder, shall revert to the applicable

Reorganized Debtor and its successors and assigns.

      19.   Retained Assets. To the extent that the succession to assets of the

Debtors by the Reorganized Debtors pursuant to the Modified Plan constitute "transfers"

of property, such transfers of property to Reorganized Debtors (a) are or shall be legal,

valid, and effective transfers of property, (b) vest or shall vest the Reorganized Debtors

with good title to such property, free and clear of all liens, charges, Claims,

encumbrances, or Interests, except as expressly provided in the Modified Plan, the MDA

Documents, or this order, (c) do not and shall not constitute avoidable transfers under the

Bankruptcy Code or under applicable nonbankruptcy law, and (d) do not and shall not

subject the Reorganized Debtors to any liability by reason of such transfer under the

Bankruptcy Code or under applicable nonbankruptcy law, including, without limitation,

any laws affecting successor or transferee liability.

        20.     Discharge, Releases, Limitations Of Liability, And

Indemnification.  Pursuant to applicable law, including sections 105(a) and 1123(b)(3)

and (6) of the Bankruptcy Code, the discharge of the Debtors and any of their assets or

properties provided in Article 11.2 of the Modified Plan, as approved herein, the releases

set forth in Articles 11.4, 11.5, 11.6, and 11.7 of the Modified Plan, and the exculpation

and limitation of liability provisions set forth in Article 11.11 of the Modified Plan, are

deemed incorporated in this order as if set forth in full herein and are hereby approved as

an integral part of the Modified Plan and are fair, equitable, reasonable and in the best

interests of the Debtors, their estates, and holders of Claims and Interests; provided,

however, notwithstanding anything in this order, the exculpation provisions or releases

provided pursuant to Article 11 of the Modified Plan shall have no effect on the liability

of any entity that otherwise would result from any action or omission to the extent that

such action or omission is determined in a final order to have constituted intentional fraud

or willful misconduct.

        21.     Limitation on Releases.  None of the releases provided in the

Modified Plan, as modified herein, shall be applicable with respect to any of the Plan

Investors or their affiliates with respect to their obligations under the Investment

Agreement, the transactions contemplated thereby, or any litigation related thereto,

including any and all defendants to such actions.

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

22.    <u>Injunction</u>.  Except as otherwise specifically provided in the
Modified Plan, the MDA Documents, or this order and except as may be necessary to
enforce or remedy a breach of the Modified Plan, the Debtors and all Persons shall be
precluded and permanently enjoined on and after the Effective Date from (a)
commencing or continuing in any manner any Claim, action, employment of process, or
other proceeding of any kind with respect to any Claim, Interest, Cause of Action, or any
other right or Claim against the Reorganized Debtors, which they possessed or may
possess prior to the Effective Date, (b) the enforcement, attachment, collection, offset,
recoupment, or recovery by any manner or means of any judgment, award, decree, order,
or otherwise with respect to any Claim, Interest, Cause of Action, or any other right or
Claim against the Reorganized Debtors, which they possessed or may possess prior to the
Effective Date, (c) creating, perfecting, or enforcing any encumbrance of any kind with
respect to any Claim, Interest, Cause of Action, or any other right or Claim against the
Reorganized Debtors, which they possessed or may possess prior to the Effective Date,
and (d) asserting any Claims, Interests, or Causes of Action that are satisfied, discharged,
released, or subject to exculpation hereby or by the Modified Plan.

23.    <u>Automatic Stay</u>.  The stay in effect in the Chapter 11 Cases
pursuant to section 362(a) of the Bankruptcy Code shall continue to be in effect until the
Effective Date, and at that time shall be dissolved and of no further force or effect,
subject to the injunction set forth in the preceding paragraph and/or sections 524 and
1141 of the Bankruptcy Code and Article 11.14 of the Modified Plan; <u>provided</u>, <u>however</u>,
that nothing herein shall bar the filing of financing documents (including Uniform
Commercial Code financing statements, security agreements, leases, mortgages, trust

agreements, bills of sale, and applications for aircraft registration) or the taking of such

other actions as are necessary to effectuate the transactions specifically contemplated by

the Modified Plan, the MDA Documents, or this order prior to the Effective Date.

    24. <u>Matters Relating To Implementation Of The Modified Plan;</u>

<u>General Authorizations</u>.  The approvals and authorizations specifically set forth in this

order are nonexclusive and are not intended to limit the authority of any Debtor or

Reorganized Debtor or any officer thereof to take any and all actions necessary or

appropriate to implement, effectuate, and consummate any and all documents or

transactions contemplated by the Modified Plan, the MDA Documents, or this order

pursuant to section 1142(b) of the Bankruptcy Code or otherwise.  In addition to the

authority to execute and deliver, adopt, assign, or amend, as the case may be, the

contracts, leases, instruments, releases, and other agreements to effectuate the Modified

Plan and the MDA Documents specifically granted in this order, the Debtors and the

Reorganized Debtors are authorized and empowered, without necessity of action of their

respective stockholders or boards of directors, to take any and all such actions as any of

their executive officers may determine are necessary or appropriate to implement,

effectuate, and consummate any and all documents or transactions contemplated by the

Modified Plan, the MDA Documents, including, without limitation, section 9.14, 9.15,

9.31, and 9.32 of the Master Disposition Agreement, or this order.  Pursuant to section

1142 of the Bankruptcy Code, no action of the stockholders or boards of directors of the

Debtors or the Reorganized Debtors shall be required for the Debtors or the Reorganized

Debtors to (a) enter into, execute and deliver, adopt, or amend, as the case may be, any of

the contracts, leases, instruments, releases, and other agreements or documents and plans

55

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

to be entered into, executed and delivered, adopted, or amended in connection with the

Modified Plan or the MDA Documents, and, following the Effective Date, each of such

contracts, leases, instruments, releases, and other agreements shall comprise a legal, valid,

and binding obligation of the applicable Reorganized Debtor and enforceable against

such Reorganized Debtor in accordance with its terms, (b) issue the common stock of

Reorganized DPH Holdings (upon such issuance, all such shares shall be duly and validly

authorized, issued, and outstanding, fully paid, nonassessable, free and clear of any

mortgage, lien, pledge, security interest, or other encumbrance of any kind, and not

subject to pre-emptive or similar rights of third parties) in accordance with the terms of

the Modified Plan, or (c) authorize the Reorganized Debtors to engage in any of the

activities set forth in this paragraph or otherwise contemplated by the Modified Plan or

the MDA Documents.  Each of the Chief Executive Officer and President, Chief

Financial Officer, Executive Directors—Restructuring, and General Counsel of the

Debtors, or their respective designees, as appropriate, shall be authorized and empowered

to execute, deliver, file, or record such contracts, instruments, releases, indentures, and

other agreements or documents, and take such actions as may be necessary or appropriate

to effectuate and further evidence the terms and conditions of the Modified Plan, the

MDA Documents, this order, and any and all documents or transactions contemplated by

the Modified Plan, the MDA Documents, or this order, all without further application to

or order of the Court and whether or not such actions or documents are specifically

referred to in the Modified Plan, the Disclosure Statement Supplement, the Modification

Procedures Order, this order, or the exhibits or appendices to any of the foregoing, and

the signature of such officer on a document shall be conclusive evidence of the officer's

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

determination that such document and any related actions are necessary and appropriate to effectuate or further evidence, and are not in contravention of, the terms and conditions of the Modified Plan, the MDA Documents, this order, or other documents or transactions contemplated by the Modified Plan, the Master Disposition Agreement, or this order.  The secretary or any assistant secretary of each Debtor or Reorganized Debtor, as appropriate, is authorized and empowered, when required, to certify or attest to any of the foregoing actions.

25.    Directors And Officers Of Reorganized Reorganized DPH Holdings.  The Court approves the appointment of the initial director of Reorganized DPH Holdings, as disclosed at the Modification Approval Hearing.

26.    Approval Of Compensation Programs for Reorganized DPH Holdings.  Pursuant to section 1142(b) of the Bankruptcy Code, without further action by the Court or the stockholders or board of directors of Reorganized DPH Holdings, and without limiting the power or authority of Reorganized DPH Holdings, following the Effective Date to take any and all such actions as may be permitted or required by applicable nonbankruptcy law, Reorganized DPH Holdings shall be authorized, as of the Effective Date, to effectuate the Management Compensation Plan.

27.    Exemption From Certain Taxes And Recording Fees.  Pursuant to section 1146(c) of the Bankruptcy Code, the issuance, transfer, or exchange of any security, or the making, delivery, filing, or recording of any instrument of transfer under, or in connection with, the Modified Plan, including the MDA Documents, shall not be taxed under any law imposing stamp tax or similar tax.  Furthermore, and without limiting the foregoing, any transfers from a Debtor to a Reorganized Debtor or to any

57

other Person pursuant to the Modified Plan (including without limitation pursuant to the

MDA Documents), as contemplated by the Modified Plan or pursuant to the MDA

Documents or any agreement regarding the transfer of title to or ownership of any of the

Debtors' property in the United States, shall not be subject to any document recording tax,

stamp tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code

filing or recording tax, or other similar tax or governmental assessment to the fullest

extent provided in section 1146(c) of the Bankruptcy Code and the Modified Plan. All

filing or recording officers (or any other Person with authority over any of the foregoing),

wherever located and by whomever appointed, shall comply with the requirements of

section 1146(c) of the Bankruptcy Code, shall forego the collection of any such tax or

governmental assessment, and shall accept for filing and recordation any of the foregoing

instruments or other documents without the payment of any such tax or governmental

assessment. The Court shall retain specific jurisdiction with respect to these matters.

     28.   <u>Assumptions And Assignments.</u> The executory contract and

unexpired lease provisions of Article VIII of the Modified Plan are approved. Except

with respect to those executory contracts and unexpired leases relating to objections (the

"Section 365 Objections") to be adjourned to the hearing scheduled for August 17, 2009

as set forth herein, all executory contracts and unexpired leases as to which any of the

Debtors is a party shall be deemed automatically assumed or assumed and assigned in

accordance with the provisions and requirements of sections 365 and 1123 of the

Bankruptcy Code as of the Effective Date, unless such executory contracts or unexpired

leases (i) shall have been previously rejected by the Debtors by Final Order of the

Bankruptcy Court, (ii) shall be the subject of a motion to reject, or that otherwise seeks

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

58

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

rejection, filed on or before the Modification Approval Date, (iii) shall be rejected or

assumed pursuant to a motion to sell or transfer property or assets filed by the Debtors

prior to the Effective Date, (iv) shall have expired or terminated on or prior to the

Effective Date (and not otherwise extended) pursuant to their own terms, (v) are listed on

the schedule of rejected contracts on Plan Exhibit 8.1(a), as amended or supplemented, or

(vi) are otherwise rejected pursuant to the terms of Modified Plan and/or upon the

direction of either Buyer pursuant to the MDA Documents.  Each of the Assumed

Contracts and Leases shall be assumed or assumed and assigned only to the extent that

any such contract or lease constitutes an executory contract or unexpired lease.  Listing a

contract or lease on Plan Exhibit 8.1(a), as amended or supplemented, shall not constitute

an admission by a Debtor or Reorganized Debtor that such contract or lease is an

executory contract or unexpired lease or that a Debtor or Reorganized Debtor has any

liability thereunder.

            29.    <u>Material Supply Agreement Cure Procedures</u>.

            (a)    This order shall constitute an order approving the

assumptions described in Article 8.1 and 8.2(a) of the Modified Plan, pursuant to section

365 of the Bankruptcy Code, which assumption shall be effective as of the Effective Date.

With respect to reconciling the amount of Cure, the procedures set forth in the

Solicitation Procedures Order, as modified by the Confirmation Order and subsequently

modified by the Modification Procedures Order, and implemented in accordance

therewith, shall control and accordingly, Cure shall be equal to (i) subject to modification

by written agreement between the Debtors and the applicable counterparty to reduce the

allowed Cure amount, the amount set forth on the Cure Amount Notice, to the extent that

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

no proper and timely objection was filed in accordance with the procedures approved by this Court, unless the Debtors sent an Amended Cure Amount Notice (as defined in the Modification Procedures Order) to an applicable counterparty in which case Cure shall be determined pursuant to the procedures set forth in the Modification Procedures Order, or (ii) to the extent a proper and timely objection to the Cure Amount Notice and Cure Amount Proposal was filed in accordance with the procedures approved by this Court, (a) the amount agreed to between the Debtors or Reorganized Debtors and the applicable counterparty or, (b) to the extent no such agreement was or is reached, such other amount as ordered by the Bankruptcy Court. Counterparties shall assert any claims for defaults of Material Supply Agreements accruing after June 1, 2009 and shall file and serve such claims before the Administrative Claims Bar Date in accordance with this order and as otherwise set forth in Articles 10.2 and 10.5 of the Modified Plan.

(b)    If the counterparty responded to the Cure Amount Notice in accordance with the procedures set forth in the Solicitation Procedures Order, as modified by the Confirmation Order, or if the counterparty responded to the Amended Cure Amount Notice in accordance with the procedures approved in the Modification Procedures Order, and the counterparty asserted a dispute regarding (x) the nature or amount of any Cure, (y) the ability of the Reorganized Debtor or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract to be assumed, or (z) any other matter pertaining to assumptions, then the Cure shall be paid, honored, or otherwise occur following the later of a reasonable period of time following the Effective Date if the dispute is resolved consensually between the applicable counterparty and the Debtors or Reorganized

60

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

Debtors, or a reasonable period of time following the entry of a Final Order adjudicating

the dispute and approving the assumption and assignment of such Material Supply

Agreement; provided that if there is a dispute as to the amount of Cure or adequate

assurance that cannot be resolved consensually among the applicable counterparty and

the Debtors, Reorganized Debtors, or the Purchasing Entities then notwithstanding

anything to the contrary herein, in the Confirmation Order, or in the Modification

Procedures Order, the Debtors or Reorganized Debtors, shall have the right (and shall do

so if directed by a Purchasing Entity pursuant to the terms of the MDA Documents) to

reject the contract or lease for a period of six days after entry of a Final Order

establishing (a) a Cure amount in excess of that provided by the Debtors or (b) adequate

assurance on terms not reasonably acceptable to the Debtors or Reorganized Debtors and

the assignee, if applicable, of such Material Supply Agreement.  To the extent disputed

Cure amounts have not been resolved prior to the Effective Date, each Purchasing Entity

shall establish an escrow account funded with Cash sufficient to pay the face amount of

the disputed Cure asserted with respect to any Material Supply Agreement to be assigned

to such Purchasing Entity pursuant to the MDA Documents.  Any delay in approval of

the assignability of the contracts to be assumed or the amount of Cure shall not affect the

closing of the Disposition Transactions or the Effective Date of the Modified Plan.  If the

non-Debtor counterparty to the Material Supply Agreement did not respond to the Cure

Amount Notice in accordance with the Solicitation Procedures Order, or even if

responded, did not dispute the Cure amount set forth in the Cure Amount Notice or did

not dispute the Cure amount set forth in the Amended Cure Amount Notice, then Cure

shall be paid in the amount set forth in the Cure Amount Notice or Amended Cure

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

Amount Notice, as applicable, within a reasonable period of time following the Effective Date.

30.    Form Of Cure Payments.  Notwithstanding anything to the contrary in the Solicitation Procedures Order, as modified by the Confirmation Order, and supplemented by the Modification Procedures Order, or other prior orders of this Court, absent a consensual agreement between the Debtors and the applicable counterparty, each counterparty to a Material Supply Agreement shall be paid in cash for the Cure of monetary defaults under a Material Supply Agreement assumed pursuant to the Modified Plan and the MDA Documents.

31.    Payments Related To Assumption Of Other Executory Contracts And Unexpired Leases.

(a)    This order shall constitute an order approving the assumptions described in Articles 8.1 and 8.2 of the Modified Plan, pursuant to section 365 of the Bankruptcy Code, as of the Effective Date.  All Cure payments will be made in connection with the procedures adopted by the Confirmation Order as modified herein. The provisions (if any) of each Other Executory Contract or Other Unexpired Lease to be assumed under the Modified Plan which are or may be in default shall be satisfied solely by Cure.  Pursuant to Article 8.2(b) of the Modified Plan, as confirmed on January 25, 2008, any counterparty to an Other Executory Contract or Other Unexpired Lease who wished to assert that Cure is required as a condition to assumption must have filed and served a proposed cure proposal (a "Cure Proposal") so as to be received by the Debtors and their counsel at the address set forth in Article 14.8 of the Modified Plan by March

10, 2008 (the "Cure Proposal Submission Deadline"), after which the Debtors had until

April 24, 2008, to file any objections thereto (the "Cure Proposal Objections").

(b)     The Debtors or Reorganized Debtors shall have the right to

amend, modify, or supplement the Cure Proposal Objections.  Counterparties to an Other

Executory Contract or Other Unexpired Lease which failed to file and serve a Cure

Proposal by the Cure Proposal Submission Deadline in accordance with the procedures

set forth in the Confirmed Plan, shall each be deemed to have waived its right to assert a

default requiring Cure and any default existing as of January 25, 2008 shall have been

deemed cured as of the day following the Cure Proposal Submission Deadline and such

party shall forever be barred from asserting against the Debtors or the Reorganized

Debtors, as applicable, a claim that arose on or prior to the Cure Proposal Submission

Deadline; provided, however, that with respect to Cure amounts owed to counterparties

whose Cure would have received the treatment set forth in Class B (Flow Through

Claims) in the Confirmed Plan and such counterparties objected to the Modified Plan or

to the assumption and assignment related notices received, then such counterparties shall

have the right to prosecute their objection at a subsequent hearing scheduled to address

the Section 365 Objections as provided herein.  Counterparties shall assert any claims for

defaults of Other Executory Contracts or Other Unexpired Leases accruing after the Cure

Proposal Submission Deadline as Administrative Claims and shall file and serve such

claims before the Administrative Claims Bar Date in accordance with this order and as

otherwise set forth in Articles 10.2 and 10.5 of the Modified Plan.  If a counterparty

included an assertion in its timely filed and served Cure Proposal disputing (i) the nature

or amount of any Cure, (ii) the ability of any Reorganized Debtor, or any assignee to

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

provide "adequate assurance of future performance" (within the meaning of section 365

of the Bankruptcy Code) under the contract or lease to be assumed, or (iii) any other

matter pertaining to assumption, or if there is a Cure Proposal Objection, then the

disputed matter shall be set for hearing in the Bankruptcy Court, which hearing shall be

scheduled for an available claims hearing date following 20 days' notice provided by the

Debtors or the Reorganized Debtors, as applicable, to the applicable counterparty, or such

other date as may be agreed upon, subject to the Debtors' right to adjourn the hearing

upon three days' written notice to the Court and the applicable counterparty, and Cure, if

any, shall be paid, honored, or otherwise occur following the earlier of a consensual

resolution or the entry of a Final Order of the Bankruptcy Court resolving the dispute and

approving the assumption or assumption and assignment, as the case may be; provided,

however, that if there is a dispute as to the amount of Cure or regarding adequate

assurance that cannot be resolved consensually among the parties, notwithstanding

anything to the contrary herein or in the Confirmation Order, the Debtors shall have the

right (and shall do so if directed by a Purchasing Entity pursuant to the terms of the MDA

Documents) to reject the contract or lease for a period of six days after entry of a Final

Order establishing (a) a Cure amount in excess of that asserted by the Debtors or (b)

adequate assurance on terms not reasonably acceptable to the Debtors or the Reorganized

Debtors, as the case may be, and the assignee of such contract or lease.  To the extent the

disputed Cure amounts have not been resolved prior to the Effective Date, each

Purchasing Entity shall establish an escrow account funded with Cash sufficient to pay

the face amount of the disputed Cure asserted with respect to any Other Executory

Contract or Other Unexpired Lease to be assigned to such Purchasing Entity pursuant to

64

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

the MDA Documents. Any delay in approval of the assignability of the contracts to be

assumed or the amount of Cure shall not affect the closing of the Disposition

Transactions or the Effective Date of the Modified Plan.

(c)    Except as otherwise provided in Article VIII of the

Modified Plan, to the extent a Cure Proposal was timely filed and served and is not

disputed, the Debtors or Reorganized Debtors, as the case may be, shall pay the Cure

Proposal, if any, to the counterparty within a reasonable period of time following the

Effective Date. Disputed Cure Proposals or any other disputes regarding Cure or the

assumption or assumption and assignment of an Other Executory Contract or Other

Unexpired Lease that are resolved consensually or by agreement or Final Order shall be

paid or otherwise honored by the Debtors or the Reorganized Debtors, as applicable, by

the later of a reasonable period of time following the Effective Date and a reasonable

period of time following such agreement or Final Order.

32.    <u>Other Executory Contracts And Unexpired Leases Assigned To

Buyers</u>. Counterparties to Other MDA Assumed Contracts which failed to file and serve

an objection to the MDA Assumption and Assignment Notice by the deadline set forth in

the Modification Procedures Order, or those that failed to object to adequate assurance of

the Purchasing Entity within 10 days of service of the notice that certain contracts will be

assumed by the Debtors and assigned to the Purchasing Entity (the "New Purchaser

Assumption and Assignment Notice"), shall each be deemed to have waived their right to

challenge the Debtors' or the Reorganized Debtors' assignment of such contract or lease

and shall be barred from challenging the ability of any Debtor or Reorganized Debtor, as

the case may be, or the respective Purchasing Entity or its assignee to provide "adequate

65

assurance of future performance" (within the meaning of section 365 of the Bankruptcy

Code) under the contract or lease to be assumed and assigned, and shall be barred from

making any other challenge pertaining to assumption and assignment.  If there is an

objection to the MDA Assumption and Assignment Notice or an adequate assurance

objection to the New Purchaser Assumption and Assignment Notices (other than an

objection cast by any of the Debtors' unions) and the parties cannot consensually resolve

their dispute, then the disputed matter shall be set for hearing on August 17, 2009, at

10:00 a.m. (prevailing Eastern time), subject to further adjournment by the Debtors at

least three days prior to such hearing upon notice to the Court and the applicable

counterparty.  Once adjourned, such objection shall be scheduled for an available hearing

date following 20 days' notice provided by the Debtors or the Reorganized Debtors, as

applicable, to the applicable counterparty, or such other date as may be agreed upon,

subject to further adjournment by the Debtors at least three days prior to such hearing

upon notice to the Court and the applicable counterparty and Cure, if any, shall be paid,

honored, and otherwise occur following the entry of a Final Order of the Bankruptcy

Court resolving the dispute and approving the assumption or assumption and assignment,

as the case may be; provided, however, notwithstanding anything to the contrary herein

or in the Confirmation Order, the Debtors or Reorganized Debtors, as the case may be,

shall have the right to reject the contract or lease for a period of six days after entry of a

Final Order establishing Cure (and shall if directed by a Purchasing Entity pursuant to the

terms of the MDA Documents) or adequate assurance on terms not reasonably acceptable

to the Debtors or Reorganized Debtors, as applicable, and the assignee.  To the extent the

disputed Cure amounts have not been resolved prior to the Effective Date, each

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

Purchasing Entity shall establish an escrow account funded with Cash sufficient to pay the face amount of the disputed Cure asserted with respect to any other MDA Assumed Contracts to be assigned to such Purchasing Entity pursuant to the MDA Documents. Any delay in approval of the assignability of the contracts to be assumed or the amount of Cure shall not affect the closing of the Disposition Transactions or the Effective Date of the Modified Plan. Notwithstanding anything to the contrary in Article 8.2(c) of the Modified Plan, Article 8.2(b)(ii) of the Modified Plan shall control with respect to Cure amounts related to Other MDA Assumed Contracts.

33.    Settlement of Cure Amounts. Notwithstanding anything to contrary herein, for settlements of disputed Cure amounts following entry of this order where the settlement amount agreed to between the Debtors or the Reorganized Debtors, as applicable, and the applicable counterparty is (a) greater than $200,000 and (b) the agreed settlement amount is greater than or equal to 110% of the amount set forth on the applicable Cure notice, then the Debtors or the Reorganized Debtors, as applicable, shall serve by fax or electronic mail a written notice (the "Notice") of the agreed settlement upon the designated representative of the applicable Buyer (the "Buyer Cure Designee"). If no written objection to the Notice (served by fax or electronic mail) is received by the Debtors or the Reorganized Debtors, as applicable, within four business days after service of the Notice, the Debtors or the Reorganized Debtors, as applicable, shall be authorized to consummate the proposed settlement without further order of the Court or consent of any other party. Each Buyer shall designate its Buyer Cure Designee by serving a written notice by fax or electronic mail upon the Debtors within three business days after this order is entered by the Court.

67

34.    <u>Payments Related To Assumption Of Intercompany Executory</u>

<u>Contracts And Intercompany Unexpired Leases</u>.  Any Claim relating to and outstanding

at the time of assumption of an Intercompany Executory Contract or an Intercompany

Unexpired Lease shall be Reinstated or shall be otherwise satisfied in a manner to be

agreed upon by the relevant Debtors and/or non-Debtor Affiliates or Purchasing Entity.

35.    <u>Assignment Pursuant To Restructuring Transactions</u>.  To the extent

that a Debtor that is party to an executory contract or unexpired lease is to be merged or

liquidated as part of a Restructuring Transaction, the non-Debtor parties to such

executory contract or unexpired lease shall, upon assumption as contemplated in the

Modified Plan, be deemed to have consented to the assignment of such executory

contract or unexpired lease to the Reorganized Debtor that is the surviving entity after

such Restructuring Transaction.

36.    <u>Rejections</u>.  As provided in Article 8.1 of the Modified Plan, all

executory contracts or unexpired leases shall be assumed or assumed and assigned by the

Reorganized Debtors; <u>provided</u>, <u>however</u>, that any contract or lease set forth on Plan

Exhibit 8.1(a), as amended or supplemented, (the "Rejected Contracts and Leases") shall

be rejected pursuant to section 365 of the Bankruptcy Code.  All of the Rejected

Contracts and Leases shall be rejected only to the extent that any such contract or lease

constitutes an executory contract or unexpired lease.  This order shall constitute an order

approving such rejections, pursuant to section 365 of the Bankruptcy Code, as of the

Effective Date.

37.    <u>Assignment Of Postpetition Contracts, Leases, And Purchase</u>

<u>Orders To Buyers</u>.  The Debtors' postpetition contracts, leases, and purchase orders shall

68

remain in full force and effect and shall be assignable pursuant to their terms and under

applicable law.  To the extent postpetition contracts, leases, or purchase orders supersede

or replace expired or otherwise terminated prepetition contracts, leases, or purchase

orders, the non-Debtor parties to such postpetition contracts, leases, or purchase orders

shall not be entitled to Cure for defaults arising under the expired or otherwise terminated

prepetition contract, lease, or purchase order, regardless of whether such postpetition

contract, lease, or purchase order is identified by the same reference number or contract

number as the expired or otherwise terminated prepetition contract, lease, or purchase

order.

        38.    <u>Unscheduled Contracts and Leases</u>. Notwithstanding anything to

the contrary in the Master Disposition Agreement, in addition to those prepetition

executory contracts and unexpired leases that are identified on Schedule 9.3 to the Master

Disposition Agreement, the following executory contracts and unexpired leases, subject

to the dispute procedures set forth herein (including, without limitation, the rejection

rights), are being assumed and assigned to the applicable Buyer:  (a) all executory

prepetition contracts and unexpired leases that are the subject of an objection based upon

a Notice of Non-Assumption (as defined in the Modification Procedures Order) if it is

ultimately determined that, as of the Effective Date, such (i) contracts are executory and

prepetition or (ii) leases are unexpired and prepetition; and (b) all executory contracts that

are, or become, the subject of an objection based upon an MDA Assumption and

Assignment Notice or New Purchaser Assumption and Assignment Notice and that are

ultimately determined, as of the Effective Date, to be executory and prepetition.

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

39.    For the avoidance of doubt, the claims that are the subject of the objections described in paragraph 38 hereof shall be treated as disputed and shall be subject to the procedures for resolution, adjudication, and/or rejection, as applicable, and as set forth herein.

40.    <u>Objections To Assumption And Assignment Not Addressed At Final Modification Hearing</u>.

(a)    Assumption, or assumption and assignment, of the executory contracts and unexpired leases covered by the Section 365 Objections, except to the extent that any objection was expressly considered and ruled on at the Plan Modification Hearing, shall be subject to further approval by the Court.  The hearing on the Section 365 Objections, objections to the notices sent to counterparties pursuant to the Modification Procedures Order, including without limitation the Amended Cure Amount Notice and the Notice of Non-Assumption and any objections to the New Purchaser Assumption and Assignment Notice not addressed by this order shall be held on August 17, 2009, at 10:00 a.m. (prevailing Eastern time), subject to further adjournment by the Debtors at least three days prior to such hearing upon notice to the Court and the applicable counterparty.  Once adjourned, such objection shall be scheduled for an available hearing date following 20 days' notice provided by the Debtors or the Reorganized Debtors, as applicable, to the applicable counterparty, or such other date as may be agreed upon, subject to further adjournment by the Debtors at least three days prior to such hearing upon notice to the Court and the applicable counterparty.

(b)    Notwithstanding any outstanding Section 365 Objections, the Debtors are hereby authorized and directed in accordance with sections 105(a), 363(b)

70

and 365 of the Bankruptcy Code and the terms of the MDA Documents to (a) assume and

assign to the Purchasing Entities, upon the Effective Date, the Acquired Contracts free

and clear of all Property Interests of any kind or nature whatsoever other than the

Assumed Liabilities and any other liabilities specifically assumed under the Master

Disposition Agreement or assumed and assigned pursuant to paragraphs 38 and 61 of this

order, and (b) execute and deliver to the Purchasing Entities such documents or other

instruments as the Purchasing Entities deem may be necessary to assign and transfer the

Acquired Contracts and Assumed Liabilities to the Purchasing Entities.

(c)    For the avoidance of doubt, the assertion of an outstanding

Cure amount or a challenge to adequate assurance by a counterparty to a prepetition

executory contract or unexpired lease who did not receive any Cure and/or assumption

and assignment related notice prior to the Modification Approval Date, and  provided that

such asserted Cure amount or challenge is not otherwise barred by this order or a prior

order of this Court, shall be treated as disputed and shall be subject to the procedures for

resolution, adjudication, and/or rejection, as applicable, and as set forth herein.

41.    _Freely Assignable_.  Any provisions in any Acquired Contract that

prohibit or condition the assignment of such Acquired Contract or allow the non-Debtor

party to such Acquired Contract to terminate, recapture, impose any penalty, condition

renewal or extension, or modify any term or condition upon the assignment of such

Acquired Contract, constitute unenforceable anti-assignment provisions which are void

and of no force and effect; _provided_, _however_ if any contract, permit, or other asset of the

Department of Defense, the General Services Administration, the Department of Energy

or any other department or agency of the United States designated by the President,

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

which by the terms of the Modified Plan is intended to be included in the GM Acquired

Assets or Company Acquired Assets, is determined under 41 U.S.C. § 15 incapable of

being assigned or transferred (whether pursuant to Sections 363 or 365 of the Bankruptcy

Code) to the Purchasing Entities upon the Effective Date without the consent of another

party thereto, the issuer thereof or any third party, the Modified Plan shall not constitute

an assignment thereof, or an attempted assignment thereof, unless and until any such

consent is obtained.

        42.    <u>Assignment Of Real Property Leases</u>.  Upon the Effective Date, in

accordance with sections 363(b) and 365 of the Bankruptcy Code, the Purchasing Entities

shall be fully and irrevocably vested in all right, title and interest of each Acquired

Contract.  Notwithstanding any outstanding Section 365 Objections, any portions of the

property leases with respect to any of the Leased Real Property (as defined in the Master

Disposition Agreement) which purport to permit the landlords thereunder to cancel the

remaining term of any of such leases if Sellers (as defined in the Master Disposition

Agreement) discontinue their use or operation of the Leased Real Property are void and

of no force and effect, and shall not be enforceable against the Purchasing Entities, its

assignees and sublessees, and the landlords under such leases shall not have the right to

cancel or otherwise modify such leases or increase the rent, assert any Claim, or impose

any penalty by reason of such discontinuation, Sellers' cessation of operations, the

assignment of such leases to the Purchasing Entities, or the interruption of business

activities at any of the leased premises.

        43.    <u>No Defaults</u>.  Following the Effective Date, each non-Debtor party

to an Acquired Contract will be forever barred, estopped, and permanently enjoined from

asserting against the Debtors or the Purchasing Entities, or the property of any of them,
any default, counterclaim, defense, setoff, or any other Claim asserted or assertable
against the Debtors (a) arising prior to or existing as of the Effective Date with respect to
any prepetition periods, except for Cure, (b) arising after the commencement of the
chapter 11 cases but on or prior to June 1, 2009, except for such defaults as were asserted
in an administrative expense claim filed against the Debtors on or prior to July 15, 2009
in accordance with the administrative claims procedures set forth in the Modification
Procedures Order, and (c) arising after June 1, 2009 but on or prior to the Effective Date,
except for such defaults as are asserted in an administrative claim filed in accordance
with Article 10.5 of the Modified Plan.  The failure of the Debtors or the Purchasing
Entities to enforce at any time one or more terms or conditions of any Acquired Contract
shall not be a waiver of such terms or conditions or of the Debtors' and the Purchasing
Entities' rights to enforce every term and condition of the Acquired Contracts.

44.    Bar Date For Rejection Damage Claims And Related Procedures.
If the rejection by the Debtors, pursuant to the Modified Plan or otherwise, of an
executory contract or unexpired lease results in a Claim, then such Claim shall be forever
barred and shall not be enforceable against either the Debtors, the Reorganized Debtors,
or such entities' properties unless a proof of claim is filed with the Claims Agent and
served upon counsel to the Debtors and the Creditors' Committee within 30 days after the
later of (a) entry of this order or (b) notice that the executory contract or unexpired lease
has been rejected, unless otherwise ordered by the Court.

45.    Record Date For Claims Distributions.  The Reorganized Debtors,
the Disbursing Agent, the Indenture Trustees (as agent or Servicer as described in Section

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

9.5 of the Modified Plan), and the Servicers shall have no obligation to recognize the

transfer of, or the sale of any participation in, any Allowed Claim that occurs after June 8,

2009 (the "Claims Record Date"), and shall be entitled for all purposes herein to

recognize and distribute only to those holders of Allowed Claims who are holders of such

Claims, or participants therein, as of the Claims Record Date.  The Reorganized Debtors,

the Disbursing Agent, the Indenture Trustees (as agent or Servicer as described in Section

9.5 of the Modified Plan), and the Servicers shall instead be entitled to recognize and deal

for all purposes under the Modified Plan with only those record holders stated on the

official claims register or the transfer ledger, as the case may be, as of the Claims Record

Date.  On the Claims Record Date, the transfer ledgers of the Indenture Trustees or other

agents or Servicers shall be closed, and there shall be no further changes in the record

holders of securities.  The Reorganized Debtors, the Disbursing Agent, the Indenture

Trustees (as agent or Servicer as described in Section 9.5 of the Modified Plan), and the

Servicers shall have no obligation to recognize any transfer of the Senior Notes, the

TOPrS, or the Subordinated Notes occurring after the Claims Record Date.  The

Reorganized Debtors, the Disbursing Agent, the Indenture Trustees (as agent or Servicer

as described in Section 9.5 of the Modified Plan), and Servicers shall be entitled instead

to recognize and deal for all purposes hereunder with only those record holders stated on

the transfer ledgers as of the Claims Record Date, provided, however, that with respect to

deceased record holders, the Indenture Trustee (as agent or Servicer as described in

Section 9.5 of the Modified Plan) shall be authorized, but not directed, to recognize

transfers to the appropriate heir, executor, or otherwise, following provision of notice

together with such evidence of the transfer to the appropriate Indenture Trustee as is

74

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

reasonably satisfactory to the applicable Indenture Trustee.  Such notice shall be effective

only as to distributions due at least 60 days after such notice is accepted as satisfactory by

the applicable Indenture Trustee.  Nothing in this paragraph shall be applicable with

respect to any claims held by the DIP Lenders or the DIP Agent.

        46.     <u>Substantial Contribution Compensation And Expenses Bar Date</u>.

Any Person (including the Indenture Trustees) who requests compensation or expense

reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to

sections 503(b)(3), (4), and (5) of the Bankruptcy Code shall file an application with the

Court on or before the 45th day after notice of the Effective Date is filed on the docket of

the Chapter 11 Cases (the "503 Deadline"), and serve such application on counsel for the

Debtors, the Creditors' Committee, the United States Trustee for the Southern District of

New York, and such other parties as may be directed by the Court and the Bankruptcy

Code on or before the 503 Deadline, or be forever barred from seeking such

compensation or expense reimbursement.

        47.     <u>Other Administrative Claims</u>.  All other requests for payment of an

Administrative Claim (other than as set forth in the Modified Plan or otherwise

contemplated by the Master Disposition Agreement, i.e., for such claims arising on or

after June 1, 2009) must be filed, in substantially the form of the Administrative Claim

Request Form attached as Exhibit 10.5 to the Modified Plan, with the Claims Agent and

served on counsel for the Debtors and the Creditors' Committee no later than 30 days

notice of after the Effective Date is filed on the docket of the Chapter 11 Cases.  Any

request for payment of an Administrative Claim pursuant to this paragraph that is not

timely filed and served shall be disallowed automatically without the need for any

objection from the Debtors or the Reorganized Debtors.  The Debtors or the Reorganized

Debtors may settle an Administrative Claim without further Bankruptcy Court approval.

Unless the Debtors or the Reorganized Debtors object to an Administrative Claim within

180 days after the Administrative Claims Bar Date (unless such objection period is

extended by the Bankruptcy Court), such Administrative Claim shall be deemed allowed

in the amount requested.  In the event that the Debtors or the Reorganized Debtors object

to an Administrative Claim, the Bankruptcy Court shall determine the allowed amount of

such Administrative Claim.

       48.     Substantive Consolidation.  For the reasons described in IV.C. of

the Supplemental Disclosure Statement and the evidence and arguments made, proffered,

or adduced at the Confirmation Hearing, certain of the Debtors' estates shall be

substantively consolidated as set forth in Article III of the Modified Plan, solely for the

purposes of voting on the Modified Plan and making distributions to holders of Claims

and Interests under the Modified Plan.

       49.     Restructuring Transactions.  The Restructuring Transactions

contemplated by Article 7.3 of the Modified Plan and described in Exhibit 7.3 to the

Modified Plan are approved. The Debtors and Reorganized Debtors and their officers are

authorized to take, on and after the Modification Approval Date, such actions as may be

necessary and appropriate to effectuate the relevant Restructuring Transactions, including,

without limitation, executing such documents as may be reasonably required in order to

effectuate the Restructuring Transactions.  Each and every federal, state, and local

governmental agency or department is hereby directed to accept for filing and recording

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

any and all documents and instruments necessary or appropriate to consummate the transactions contemplated by the Restructuring Transactions.

50.    <u>Resolution Of Claims</u>.  Except as otherwise ordered by the Court, any Claim that is not an Allowed Claim shall be determined, resolved, or adjudicated in accordance with the terms of the Modified Plan.  The Debtors or Reorganized Debtors, as the case may be, may (a) until 120 days after the Effective Date (unless extended by order of the Court for cause) file objections to the allowance of any Claim (whether or not a proof of Claim has been filed) and/or (b) amend their Schedules at any time before their Chapter 11 Cases are closed.

51.    <u>Distribution Reserve</u>.  In accordance with the Modified Plan, the Debtors shall establish one or more Distribution Reserves for the purpose of effectuating distributions to holders of Disputed Claims pending the allowance or disallowance of such claims or interests.

52.    <u>Authorization To Consummate Modified Plan</u>.  Notwithstanding Bankruptcy Rule 3020(e), but subject to Articles 12.2 and 12.3 of the Modified Plan, the Court authorizes the Debtors to consummate the Modified Plan upon entry of this order. The Debtors are authorized to execute, acknowledge, and deliver such deeds, assignments, conveyances, and other assurances, documents, instruments of transfer, Uniform Commercial Code financing statements, trust agreements, mortgages, indentures, security agreements, and bills of sale and to take such other actions as may be reasonably necessary to perform the terms and provisions of the Modified Plan, all transactions contemplated by the Modified Plan, and all other agreements related thereto.

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

53. <u>Dismissal Of Complaints</u>. Upon the Effective Date of the
Modified Plan, the proceedings initiated by the Creditors' Committee and the Senior
Notes Indenture Trustee for the revocation of the Confirmation Order shall be closed and
the complaints seeking relief therefor shall be dismissed as moot.

54. <u>MDL Settlements</u>. Notwithstanding paragraph 50 of the
Confirmation Order, nothing in this order shall be construed to render null and void or
otherwise affect the force and effect of any settlements or orders approving the Multi-
District Litigation Settlements entered by the United States District Court for the Eastern
District of Michigan.

55. <u>Extension Of Voting Deadline</u>. Pursuant to the Modification
Procedures Order, as it incorporates paragraph 31(i) of the December 10 Solicitation
Procedures Order, the Debtors were authorized to extend the Voting Deadline for holders
of claims in Class C-2 and Class D until Monday, July 20, 2009 at 10:00 a.m. prevailing
Eastern time. The votes cast by holders of claims in Class C-2 and Class D were timely
submitted in accordance with the procedures approved by this Court.

56. <u>Retention Of Jurisdiction</u>. Pursuant to sections 105(a) and 1142 of
the Bankruptcy Code, and notwithstanding the entry of this order or the occurrence of the
Effective Date, but subject to the jurisdiction provisions of the MDA Documents, the
Court shall retain exclusive jurisdiction as provided in the Modified Plan over all matters
arising out of, and related to, the Chapter 11 Cases and the Modified Plan to the fullest
extent permitted by law, including, among other items and matters, jurisdiction over
those items and matters set forth in Article XIII of the Modified Plan. This Court retains
jurisdiction to enforce and implement the terms and provisions of this order, the MDA

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

Documents, all amendments thereto, any waivers and consents thereunder, and of each of

the agreements executed in connection therewith in all respects including, but not limited

to, retaining jurisdiction to (a) compel delivery of the Acquired Assets and Sale Securities

to the Purchasing Entities, (b) compel delivery of the purchase price or performance of

other obligations owed by or to the Debtors, (c) resolve any Section 365 Objections, (d)

resolve any disputes arising under or related to the MDA Documents, (f) interpret,

implement, and enforce the provisions of this order, and (f) protect the Purchasing

Entities against the assertion of any Property Interests against the Acquired Assets and

Sale Securities of any kind or nature whatsoever.

      57.    <u>References To Modified Plan Provisions</u>.  The failure to include or

specifically reference any particular provision of the Modified Plan in this order shall not

diminish or impair the effectiveness of such provision, it being the intent of the Court that

the Modified Plan be confirmed in its entirety.  The provisions of the Modified Plan and

of this order shall be construed in a manner consistent with each other so as to effect the

purposes of each; <u>provided</u>, <u>however</u>, that if there is determined to be any inconsistency

between any Modified Plan provision and any provision of this order that cannot be so

reconciled, then, solely to the extent of such inconsistency, the provisions of this order

shall govern and any such provision of this order shall be deemed a modification of the

Modified Plan and shall control and take precedence.  Notwithstanding the foregoing, in

the event there are any conflicts between the terms and provisions of the Modified Plan

or this order and the Delphi-GM Global Settlement Agreement, the terms of the Delphi-

GM Global Settlement Agreement shall govern.

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

58.  <u>Separate Modification Approval Orders</u>.  This order is and shall be deemed a separate Order with respect to each of the Debtors in each Debtors' separate Chapter 11 Case for all purposes.  The Clerk of the Court is directed to file and docket this order in the Chapter 11 Case of each of the Debtors.

59.  <u>Notice Of Modification Approval Order And Occurrence Of Effective Date</u>.  On or before the fifth Business Day following the occurrence of the Effective Date, the Debtors shall serve notice of this order and occurrence of the Effective Date pursuant to Bankruptcy Rules 2002(f)(7), 2002(k), and 3020(c) on all holders of Claims and Interests, the United States Trustee for the Southern District of New York, and other parties-in-interest, by causing a notice of this order and the occurrence of the Effective Date in substantially the form of the notice annexed hereto as <u>Exhibit B</u>, which form is hereby approved (the "Notice of Effective Date"), to be delivered to such parties by first class mail, postage prepaid; <u>provided</u>, <u>however</u>, that notice need not be given or served under the Bankruptcy Code, the Bankruptcy Rules, or this order to any Person to whom the Debtors mailed a notice of the Bar Date or Modification Approval Hearing, but received such notice returned marked "undeliverable as addressed," "moved - left no forwarding address," "forwarding order expired," or similar marking, unless the Debtors have been informed in writing by such Person of that Person's new address.  The notice described herein is adequate under the particular circumstances of the Chapter 11 Cases, and no other or further notice is necessary.  Notwithstanding the foregoing, pursuant to Bankruptcy Rule 2002(l), the Debtors shall be deemed to have satisfied the requirements of Bankruptcy Rule 2002(f)(7) with respect to any Claimholder who does not reside in the United States by publishing the Notice of

80

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

Effective Date in the Wall Street Journal (national, European, and Asian editions), the

New York Times (National Edition), and USA Today (worldwide), within 15 Business

Days of the Effective Date.

           60.     PBGC Settlement Agreement.

           (a)     The Delphi-PBGC Settlement Agreement is hereby

authorized and approved pursuant to section 1123(b)(3) of the Bankruptcy Code.  The

Debtors are authorized, but not directed, to enter into the Delphi-PBGC Settlement

Agreement and to perform in accordance with its terms, including to enter into or cause

the entry into such other documentation as may be reasonably necessary to effectuate the

terms of the Delphi-PBGC Settlement Agreement, including the execution and delivery

of termination and trusteeship agreements and any and all waivers, releases, discharges,

exculpations, or other agreements or documents.  Section 4042 of ERISA, 29 U.S.C. §

1342, authorizes PBGC to seek termination of a pension plan upon making certain

findings notwithstanding the provisions of a collective bargaining agreement and further

permits the PBGC and the plan administrator to agree to termination of a plan without an

adjudication.  Section § 4041(a)(3) of ERISA, 29 U.S.C. § 1341(a)(3).  Upon the

effectiveness of the Delphi-PBGC Settlement Agreement, all liabilities relating to unpaid

contributions to the Pension Plans shall be released or discharged as set forth therein.

           (b)     The Court finds that the Debtors may enter into such

agreements with respect to the Delphi HRP or the Bargaining Plan (as defined in the

Delphi-PBGC Settlement Agreement) without violating the Labor MOUs or other

applicable collective bargaining agreements, the Union 1113/1114 Settlement Approval

Orders, section 1113(f) of the Code or any other applicable law, and the Court expressly

81

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

authorizes the Debtors to do so.  Nothing in this order prohibits employees or unions adversely affected by any plan termination from (a) seeking to intervene in any district court action filed by the PBGC under section 4042 of ERISA, 29 U.S.C. § 1342, to terminate the plans or (b) pursuing any independent action against the PBGC regarding the termination of the plan under section 4003(f) of ERISA, 29 U.S.C. § 1303(f).

61.    Labor MOUs.

(a)    GM Buyer.  Pursuant to the Modified Plan, upon the Effective Date and notwithstanding any other provisions of the Master Disposition Agreement, the applicable Labor MOUs (which shall include all related collectively bargained agreements and obligations, including grievances), shall be assumed and assigned to the GM Buyer, and shall not be in conflict with any federal or state law; provided, however, that if the Delphi HRP is terminated pursuant to section 4042 of ERISA, 29 U.S.C. § 1342, there shall be no obligation by the Debtors to assume or cure any obligations claimed to exist under the HRP or any related provision of the collective bargaining agreements. Further, regardless of whether the Delphi HRP is terminated, the GM Buyer shall not be deemed to have assumed, and shall have no obligations with regard to, the Delphi HRP or any related provision of the collective bargaining agreements.

(b)    Company Buyer.  Upon the Effective Date, the Company Buyer will assume the terms and conditions of the applicable Labor MOUs (which shall include all related collectively bargained agreements and obligations), as well as liability for pre-closing grievances and accrued wages and benefits (including vacation and sick pay), but not including any liability under the Retained Plans, as such term is defined in

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

section 2.3.3 of the Master Disposition Agreement) and the Debtors shall assume and

assign the applicable Labor MOUs to the Company Buyer, which Labor MOUs shall not

be in conflict with any federal or state law; provided, however, that if the Delphi HRP

and/or Packard-Hughes Interconnect Bargaining Retirement Plan is terminated pursuant

to section 4042 of ERISA, 29 U.S.C. § 1342, there shall be no obligation by the Debtors

to assume or cure any obligations claimed to exist under the HRP, the Packard-Hughes

Interconnect Bargaining Retirement Plan, or any related provision of the collective

bargaining agreements. Further, regardless of whether the Delphi HRP or Packard-

Hughes Interconnect Bargaining Retirement Plan is terminated, the Company Buyer shall

not be deemed to have assumed, and shall have no obligations with regard to, the Delphi

HRP, Packard-Hughes Interconnect Bargaining Retirement Plan, or any related provision

of the collective bargaining agreements.

62.    28 U.S.C. § 157(d).  Nothing in this order or the Modified Plan is

intended to modify or violate 28 U.S.C. § 157(d).

63.    Resolution Of Modified Plan Objections.

(i)    WTC.  The reasonable fees and expenses of
WTC, including fees and disbursements of its counsel, shall be reimbursed
up to $3.5 million in accordance with the mechanics previously approved
by the Bankruptcy Court in paragraph 39 of the Confirmation Order.

(ii)    New York Department Of Environmental
Conservation and Michigan Department Of Environmental Quality.

(1)    Nothing in this order or the Master
Disposition Agreement releases, nullifies, or enjoins the enforcement of
any Liability to a governmental unit under Environmental Laws (as the
term is defined in the Master Disposition Agreement) or regulations (or
any associated Liabilities for penalties, damages, cost recovery, or
injunctive relief) that the Buyers would be subject to as the owner, lessor,
or operator of property after the date of entry of this order.
Notwithstanding the foregoing sentence, nothing in this order shall be
interpreted to deem the Buyers to be the successors to the Debtors under

83

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

any state law successor liability doctrine with respect to any Liabilities under Environmental Laws or under regulations for penalties for days of violation prior to entry of this order.

(2)   GM Components, as Buyer of the Delphi Automotive Systems Site located at 1000 Lexington Avenue, Rochester, New York, identified in the New York State Department of Environmental Conservation ("NYSDEC") Environmental Site Remediation Database as Site Code 828064 (the "Rochester Facility"), and the Delphi Thermal Systems Facility located at 200 Upper Mountain, Lockport, New York, identified in the NYSDEC Environmental Site Remediation Database as Site Codes C932138, C932139, C932140, and 932113 and in the NYSDEC Spill Incidents Database as Site Code 0651261 (collectively, the "Lockport Facility"), acknowledges that it shall be responsible for conducting investigation and remediation of the Rochester Facility and the Lockport Facility in accordance with applicable Environmental Laws.

(3)   GM Components and NYSDEC shall confer in good faith to identify the remaining investigation and remediation required under applicable Environmental Laws for the Rochester and Lockport Facilities.

(4)   GM Components and GM Global Steering Holdings LLC, as Buyers of certain Michigan facilities of Delphi under the Master Disposition Agreement, both acknowledge that they shall be responsible for conducting investigation and remediation of the Delphi Michigan facilities acquired by them under the Master Disposition Agreement in accordance with applicable Environmental Laws.

(5)   GM Components, GM Global Steering Holdings LLC, and the Michigan Department of Environmental Quality (MDEQ) shall confer in good faith to identify the remaining investigation and remediation required under applicable Environmental Laws with respect to the Delphi Michigan facilities GM Components and GM Global Steering Holdings LLC are acquiring under the Master Disposition Agreement

(6)   Neither GM Components nor GM Global Steering Holdings LLC will assert any defense to liability under Michigan Compiled Laws (MCL) 324.20126(1)(c)(i) and (ii) with respect to the Delphi facilities each is acquiring under the Master Disposition Agreement.

(iii)   New York State Workers' Compensation Board.  The objection filed by the New York State Workers' Compensation Board (the "Board") has been resolved based upon an

84

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

agreement entered into between the General Motors Company and the Board, dated July 28, 2009, providing for, among other things, the assumption by the General Motors Company, upon the closing of the Master Disposition Agreement, of all of the past, present and future New York workers' compensation law liabilities of Delphi Corporation for the facilities located in Lockport, New York and Rochester, New York.  In the event said assumption fails to occur and/or the Master Disposition Agreement fails to close, the Board reserves its right to file pre petition proofs of claim against the Debtors,  prosecute already filed administrative expense claims and other administrative expense claims to be filed against the Debtors, and pursue any and all bases for liability and/or relief set forth in it's objection, while the Debtors, Motors Liquidation Company, and General Motors Company reserve their rights to object to same.

(iv)    Objecting Plan Investors.  Nothing in this order, the Modified Plan, the MDA Documents, or any supporting papers shall (i) foreclose or otherwise prejudice or impair any claims, defenses or positions that any Plan Investors (the "Objecting Plan Investors") have or may have in the Adversary Proceedings No. 08-01232 and 08-01233 (the "Plan Investor Litigation"), including, without limitation, any alleged right of setoff against any party asserting claims against the Objecting Plan Investors (collectively, the "Potential Defenses"), or (ii) foreclose or otherwise prejudice GMCo. and GM Buyer's rights to object to any such Potential Defense.  This paragraph is not intended to, nor shall it, create liability on the part of Motors Liquidation Company, GMCo., or the GM Buyer with respect to any counterclaims that the Objecting Plan Investors have asserted or may assert in the Plan Investor Litigation against any of the Debtors.

64.    Miscellaneous.

(a)    The transactions set forth herein are exempt from any bulk sales or similar laws, each of which is expressly overridden.

(b)    Any disclosed payments to be made by the Purchasing Entities or their affiliates to Platinum are hereby approved pursuant to section 1129(a)(4) of the Bankruptcy Code.

(c)    The transfer of the Acquired Assets and the Sale Securities to the Purchasing Entities pursuant to the MDA Documents constitutes a legal, valid, and effective transfer of the Acquired Assets and the Sale Securities, and shall vest the

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

Purchasing Entities with all right, title, and interest of the Sellers in and to the Acquired

Assets and the Sale Securities free and clear of all Property Interests other than the

Assumed Liabilities, any other liabilities specifically assumed under the Master

Disposition Agreement or assumed and assigned pursuant to paragraphs 38 and 61 of this

order, and Permitted Encumbrances.

(d)    Except as provided in the MDA Documents or this order,

after the Closing (as defined in the Master Disposition Agreement), the Sellers (as

defined in the Master Disposition Agreement)  and their estates shall have no further

liabilities or obligations with respect to any Assumed Liabilities and all holders of such

Claims are forever barred and estopped from asserting such Claims against the Debtors,

their successors or assigns, their property or their assets or estates.  The Purchasing

Entities shall only be liable for such liabilities to the extent set forth in the MDA

Documents.  All holders of Claims are forever barred and estopped from asserting Claims

against the Purchasing Entities and the Acquired Assets and the Sale Securities related to

the Excluded Assets (as defined in the Master Disposition Agreement).

(e)    This order (a) shall be effective as a determination that,

except for the Assumed Liabilities, any other liabilities specifically assumed under the

Master Disposition Agreement or Assumption and Assignment pursuant to paragraphs 38

and 61 of this order, and Permitted Encumbrances, at the Closing (as defined in the

Master Disposition Agreement), all Property Interests of any kind or nature whatsoever

existing as to the Acquired Assets and Sale Securities prior to the Closing have been

unconditionally released, discharged, and terminated, and that the conveyances described

herein have been effected, and (b) shall be binding upon and shall govern the acts of all

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other Persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Acquired Assets and Sale Securities.

(f)    Each and every federal, state, and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Modified Plan and MDA Documents.

(g)    Prior to the Effective Date, the MDA Documents may be modified, amended, or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment, or supplement is consented to by the Debtors and does not have a material adverse effect on the Debtors' estates or creditors or result in a material, substantive modification of the Master Disposition Agreement.  After the Effective Date, the MDA Documents may be modified, amended, or supplemented by the parties thereto in accordance with the terms thereof without further order of the Court; provided, however, that neither prior to or after the Effective Date shall any provision in the Master Disposition Agreement or Company Buyer Operating Agreement regarding distributions to holders of general unsecured claims of the Debtors be amended, modified, or waived to reduce, eliminate, or otherwise affect such distributions.  Any such modification,

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

amendment, or supplement prior to the Effective Date shall promptly be filed with the Court, and shall be marked to indicate any such change unless such change is obvious.

(h)     Notwithstanding anything contained herein to the contrary, nothing in this order shall in any way prejudice the rights, claims, causes of action, counterclaims, defenses, affirmative defenses, or remedies of the Debtors or Computer Sciences Corporation regarding the matters pending in Adversary Proceeding No. 09-01271 (RDD), and nothing in this order shall in any way provide any preclusive relief with respect to the same.

(i)     Nothing in this order or the Modified Plan:  (i) discharges, releases, or precludes any environmental liability that is not a claim (as that term is defined in the Bankruptcy Code), or any environmental claim (as the term "claim" is defined in the Bankruptcy Code) of a governmental unit that arises on or after the Effective Date; (ii) releases the Debtors or Reorganized Debtors from liability under environmental law as the owner or operator of property that such persons own or operate after the Effective Date; (iii) releases or precludes any environmental liability to a governmental unit on the part of any Persons other than the Debtors and Reorganized Debtors; or (iv) enjoins a governmental unit from asserting or enforcing, outside this Court, any liability described in this paragraph.

(j)     Allowed prepetition Secured Claims and prepetition Priority Tax Claims on account of real and personal property taxes shall be assumed, on the payment terms set forth in the Modified Plan not taking into account the last proviso of the Article 2.2 thereof, by the applicable Buyer purchasing the related property under the Master Disposition Agreement.

88

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

65.    <u>Modifications To The Modified Plan</u>.  At the request of the

Debtors, the Modified Plan is hereby modified pursuant to section 1127 of the

Bankruptcy Code and as modified herein and as set forth on <u>Exhibit A</u> hereto.

Dated: New York, New York
       July 30, 2009

<u>/s/ Robert D. Drain</u>
UNITED STATES BANKRUPTCY JUDGE

**Exhibit A**

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                          :
      In re                          :    Chapter 11
                                          :
DELPHI CORPORATION, et al.,               :    Case No. 05-44481 (RDD)
                                          :
                 Debtors.     :    (Jointly Administered)
                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

## FIRST AMENDED JOINT PLAN OF REORGANIZATION OF
## DELPHI CORPORATION AND CERTAIN AFFILIATES,
## DEBTORS AND DEBTORS-IN-POSSESSION
## (AS MODIFIED)

SKADDEN, ARPS, SLATE, MEAGHER &
    FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
Toll Free: (800) 718-5305
International: (248) 813-2698
John Wm. Butler, Jr.
Ron E. Meisler
Nathan L. Stuart
Allison K. Verderber Herriott

SKADDEN, ARPS, SLATE, MEAGHER &
    FLOM LLP
Four Times Square
New York, New York 10036
Kayalyn A. Marafioti
Thomas J. Matz

Attorneys for Debtors and Debtors-in-Possession

                                      Of Counsel
                          DELPHI CORPORATION
                              5725 Delphi Drive
                        Troy, Michigan 48098
                              (248) 813-2000
                            David M. Sherbin
                            Sean P. Corcoran
                            Karen J. Craft

Dated:        December 10, 2007

As Modified:  January 25, 2008
               June 16, 2009
               July 30, 2009
               New York, New York

# TABLE OF CONTENTS

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

**Page**

ARTICLE I DEFINITIONS, RULES OF INTERPRETATION, AND COMPUTATION
OF TIME ........................................................................................................................4
    A.   Scope Of Definitions..............................................................................................4
    B.   Definitions..............................................................................................................4
        1.1    "503 Deadline" .............................................................................................4
        ^ 1.2  "Acquired Assets" .......................................................................................4
        ^ 1.3  "Acquired Contracts" ..................................................................................4
        ^ 1.4  "Administrative Claim" ...............................................................................4
        ^ 1.5  "Administrative Claims Bar Date" ..............................................................4
        1.6    "^ ADR Procedures" ....................................................................................4
        ^ 1.7  "Affiliate Debtors" ......................................................................................5
        1.8    "Affiliates" .................................................................................................5
        1.^ 9  "Allowed ^ Claim"^ ...................................................................................5
        1.^ 10 "Allowed Class . . . Claim" or "Allowed Class . . . Interest" .................5^ 6
        ^ 1.11 "Allowed Interest" ......................................................................................5
        ^ 1.12 "Assumed Liabilities" .................................................................................6
        1.13  "^ Avoidance Claims" .................................................................................6
        1.14  "Ballot" .......................................................................................................6
        1.^ 15 "Bankruptcy Code" .....................................................................................6
        1.^ 16 "Bankruptcy Court" .....................................................................................6
        1.^ 17 "Bankruptcy Rules" .................................................................................6^ 6
        1.18  "Bar Date^ " ................................................................................................6
        1.19  "^ Bar Date Order" ......................................................................................6
        1.20  "^ Beneficiaries" .........................................................................................6
        1.21  "^ Business Day" .........................................................................................6
        1.22  "^ Buyers" ...................................................................................................7
        1.23  "Cash^ " ...................................................................................................7^ 7
        ^ 1.24 "Cash Reserve" ...........................................................................................7
        1.25  "Causes of Action" ......................................................................................7
        1.26  "Certificate^ " .............................................................................................7
        ^ 1.27 "Certificate of Incorporation and Bylaws" .................................................7
        1.28  "^ Chapter 11 Cases" ...............................................................................7^ 7
        ^ 1.29 "Claim" .......................................................................................................7
        1.30  "Claims Agent" ...........................................................................................7
        1.31  "^ Claims/Interests Objection Deadline" ....................................................7
        1.32  "^ Class" .....................................................................................................7
        ^ 1.33 "Company Acquired Assets" ...................................................................7^ 8
        ^ 1.34 "Company Assumed Contracts" ..................................................................8
        ^ 1.35 "Company Assumed Liabilities" .................................................................8
        ^ 1.36 "Company Buyer" .......................................................................................8
        1.37  "Company Sales Securities" ........................................................................8
        ^ 1.38 "Confirmation Date" ...............................................................................8^ 9
        1.^ 39 "Confirmation Hearing" ..............................................................................8
        ^ 1.40 "Confirmation Order" ..................................................................................8
        ^ 1.41 "Connection Systems Debtors" ...................................................................8

i

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

1.42    "Contingent PBGC Secured Claim" ...............................................................8
1.43    "^ Continuing Indemnification Rights" .........................................................8
1.44    "^ Controlled Affiliate" ................................................................................8
1.45    "^ Credit Bid" ...............................................................................................9
1.46    "^ Creditors' Committee" ..............................................................................9
1.47    "^ Cure" .........................................................................................................9
^ 1.48    "Cure Amount Notice" ..................................................................................9
^ 1.49    "Cure Amount Proposal" ...............................................................................9
1.50    "^ DASHI Debtors" .......................................................................................9
1.51    "^ Debtor" .....................................................................................................9
1.52    "^ Debtors" ....................................................................................................9
1.53    "Delphi^ " .....................................................................................................9
^ 1.54    "Delphi-DAS Debtors" ..................................................................................9
1.55    "Delphi-GM Arrangement" .........................................................................10
1.56    "Delphi-GM Definitive Documents" ...........................................................10
^ 1.57    "Delphi-GM Global Settlement Agreement" ...............................................10
^ 1.58    "Delphi-GM Master Restructuring Agreement" .........................................10
^ 1.59    "Delphi HRP" ..............................................................................................10
1.60    "Delphi-PBGC Settlement Agreement" ..................................................10^ 11
1.61    "DIP ^ Accommodation Agreement" ...........................................................10
1.62    "DIP Accommodation Agreement Order" ...................................................10
1.^ 63    "DIP ^ Agent" .............................................................................................10
1.^ 64    "DIP ^ Claims" ............................................................................................10
1.65    "DIP Credit Agreement" ..............................................................................11
1.^ 66    "DIP ^ Facility" ...........................................................................................11
^ 1.67    "DIP Facility First Priority Term Claim" ...................................................11
1.^ 68    "DIP ^ Facility Order" .................................................................................11
^ 1.69    "DIP Facility Revolver Claim" ...................................................................11
1.^ 70    "DIP ^ Facility Second Priority Term Claim" ............................................11
1.^ 71    "DIP Lenders" ..............................................................................................11
^ 1.72    "DIP Lenders Steering Committee" .............................................................11
1.73    "DIP Loan Documents" ...............................................................................11
1.74    "DIP Priority Payment Amount" .................................................................11
1.75    "DIP Transfer" .............................................................................................12
^ 1.76    "Disallowed Claim" .....................................................................................12
^ 1.77    "Disallowed Interest" ..................................................................................12
^ 1.78    "Disbursing Agent" ......................................................................................12
^ 1.79    "Disclosure Statement" ...............................................................................12
^ 1.80    "Disposition Transactions" .........................................................................12
^ 1.81    "Disputed Claim" or "Disputed Interest" ...................................................12
1.82    "Distribution Date" ..........................................................13^ 13^ 13^ 13^ 13
^ 1.83    "Distribution Reserve" .................................................................................13
1.84    "^ Effective Date" ........................................................................................13
1.85    "^ Emergence Capital" .................................................................................13
1.86    "^ Employee-Related Obligation" ...............................................................13
^ 1.87    "Equity Committee" .....................................................................................13
1.88    "^ ERISA" ....................................................................................................13
^ 1.89    "ERISA Plaintiffs" ......................................................................................13

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

1.90    "^ ERISA Settlement" .................................................................................13
1.91    "^ Estates" .................................................................................................13
1.92    "^ Exchange Act" ......................................................................................13
1.93    "^ Exhibit" .................................................................................................14
^ 1.94  "Exhibit Filing Date" ................................................................................14
^ 1.95  "Existing Common Stock" .........................................................................14
1.96    "^ Existing Securities" ..............................................................................14
1.97    "^ Face Amount" ......................................................................................14
^ 1.98  "Final Modification Hearing" ...................................................................14
1.99    "Final Order" ............................................................................................14
1.^ 100"Flow-Through Claim" ...........................................................................14
^ 1.101"General Unsecured Claim" .....................................................................14
^ 1.102"General Unsecured MDA Distribution" ...................................................14
1.^ 103"GM^ " ..................................................................................................15
1.^ 104"GM ^ Acquired Assets" .........................................................................15
1.^ 105"GM ^ 414(l) Administrative Claim" ..................................15^ 15^ 16^ 16
^ 1.106"GM Administrative Claim" .....................................................................15
^ 1.107"GM Arrangement Administrative Claim" ................................................15
^ 1.108"GM Assumed Contracts" ........................................................................15
^ 1.109"GM Assumed Liabilities" ........................................................................15
^ 1.110"GM Buyer(s)" .........................................................................................15
^ 1.111"GMCo." .................................................................................................15
1.112   "GM-PBGC Agreement" ..........................................................................15
1.113   "GM Sales Securities" ..............................................................................15
1.114   "^ GM Unsecured Claim" .........................................................................15
1.115   "^ Holdback Amount" ..............................................................................15
1.116   "Holdback Escrow Account" .....................................................................16
1.^ 117"IAM" ....................................................................................................16
^ 1.118"IAM Memorandum of Understanding" .....................................................16
^ 1.119"IBEW" ...................................................................................................16
^ 1.120"IBEW E&S Memorandum of Understanding" ...........................................16
^ 1.121"IBEW Powertrain Memorandum of Understanding" .................................16
^ 1.122"Impaired" ...............................................................................................16
^ 1.123"Indemnification Rights" ..........................................................................16
^ 1.124"Indemnitee" ...........................................................................................16
1.^ 125"Indenture Trustees" ...............................................................................16
^ 1.126"Indentures" ............................................................................................17
^ 1.127"Insurance Coverage" ..............................................................................17
1.^ 128"Insurance Settlement^ " .........................................................................17
^ 1.129"Intercompany Claim" .............................................................................17
^ 1.130"Intercompany Executory Contract" .........................................................17
^ 1.131"Intercompany Unexpired Lease" .............................................................17
^ 1.132"Interest" .................................................................................................17
^ 1.133"Investment Agreement" ..........................................................................17
1.^ 134"IRC" .....................................................................................................17
^ 1.135"IRC Section 414(l) Transfer" ..........................................................17^ 18
1.136   "^ IUE-CWA" ..........................................................................................17
1.137   "IUE-CWA 1113/114 Settlement Approval Order" ....................................17

iii

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

1.138  "IUE-CWA Benefit Guarantee" ..................................................................17
1.139  "IUE-CWA Benefit Guarantee Term Sheet" ................................................18
1.140 "IUE-CWA-Delphi-GM Memorandum of Understanding" ............................18
1.141 "IUOE" ..........................................................................................................18
1.142 "IUOE Local 18S Memorandum of Understanding" ....................................18
1.143 "IUOE Local 101S Memorandum of Understanding" ..................................18
1.144 "IUOE Local 832S Memorandum of Understanding" ..................................18
1.145 "IUOE-IBEW-IAM OPEB Term Sheet" ......................................................18
1.146 "IUOE, IBEW, And IAM 1113/1114 Settlement Approval Order"19  19  19  20
1.147  "Lead Plaintiffs" .........................................................................................19
1.148 "Management Compensation Plan" .............................................................19
1.149 "Master Disposition Agreement" ................................................................19
1.150  " Material Supply Agreement " ...................................................................19
1.151  "MDA Assumption And Assignment Notice" ..............................................19
1.152  "MDL Actions" ............................................................................................19
1.153  "MDL Court" ...............................................................................................19
1.154  "MDL Settlements" ......................................................................................19
1.155 "Modification Approval Date" .....................................................................19
1.156 "Modification Approval Order" ...................................................................20
1.157 "Modification Procedures Order" ................................................................20
1.158  "New Common Stock" ..................................................................................20
1.159 "Non-Represented Term Sheet" ...................................................................20
1.160 "Omitted Material Supply Agreement Objection Deadline" ........................20
1.161  "OPEB" ........................................................................................................20
1.162 "Ordinary Course Professionals Order" ......................................................20
1.163  "Other Executory Contract" .......................................................................20
1.164  "Other Interests" .........................................................................................20
1.165 "Other MDA Assumed Contracts" ...............................................................20
1.166  "Other Priority Claim" ...............................................................................20
1.167 "Other Unexpired Lease" .............................................................................20
1.168  "PBGC" ........................................................................................................20
1.169  "PBGC Claims" ............................................................................................20
1.170  "PBGC General Unsecured Claim" .............................................................20
1.171  "Pension Plans" ...........................................................................................21
1.172 "Periodic Distribution Date" ......................................................................21
1.173 "Person" .......................................................................................................21
1.174 "Petition Date" ............................................................................................21
1.175 "Plan" ...........................................................................................................21
1.176 "Plan Investors" ..........................................................................................21
1.177 "Plan Objection Deadline" ..........................................................................21
1.178 "Post-Confirmation Reorganized DPH Holdings Share Trust" ..................21
1.179 "Post-Confirmation Trust Agreement" ........................................................21
1.180 "Post-Confirmation Trust Plan Administrator" ...................................22  22
1.181  "Prepetition Employee-Related Obligation" ..............................................22
1.182 "Prepetition Employee-Related Obligations Bar Date" .............................22
1.183 "Priority Tax Claim" ...................................................................................22
1.184  "Pro Rata" ...................................................................................................22
1.185  "Professional" .............................................................................................22

iv

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

1.186 "Professional Claim" .................................................... 22
1.187  "Professional Fee Order" ............................................. 22
1.188  "Reinstated" or "Reinstatement" ................................. 22
1.189  "Released Parties" ........................................................ 23
1. 190 "Reorganized ..." ......................................................... 23
1. 191 "Reorganized Debtor" or "Reorganized Debtors" ....... 23
1.192 "Reorganized DPH Holdings" .................................... 23
1.193 "Required Lenders" ..................................................... 23
1. 194 "Restructuring Debtors" .............................................. 23
1.195 "Restructuring Transaction(s)" ................................... 24
1.196 "Restructuring Transaction Notice" .............. 24 24 24
1.197 "Retained Actions" ..................................................... 24
1.198  " Retained Assets" ...................................................... 24
1.199  " Scheduled" ............................................................... 24
1.200  " Schedules" ............................................................... 24
1.201  "Section 510(b) Equity Claim" ................................. 24
1.202  " Section 510(b) ERISA Claim" ................................ 24
1.203  " Section 510(b) Note Claim" .................................... 24
1.204 "Section 510(b) Opt Out Claim" ................................ 25
1.205  " Section 510(b) Opt Out Equity Claim" .................. 25
1.206 "Section 510(b) Opt Out Note Claim" ....................... 25
1.207  " Secured Claim" ........................................................ 25
1.208  " Securities Act" ......................................................... 25
1.209 "Securities Settlement" ............................................... 25
1.210  " Security" ................................................................... 25
1.211  " Security And Pledge Agreement" ............................ 25
1.212  " Senior Notes" ........................................................... 25
1.213  " Senior Notes Claim" ................................................ 25
1.214 "Senior Notes Indenture" ........................................... 25
1.215 "Senior Notes Indenture Trustee" .............................. 25
1.216  " SERP" ....................................................................... 26
1.217  " SERP Claim" ............................................................ 26
1.218  " Servicer" ................................................................... 26
1.219 "Solicitation Procedures Order" ................................. 26
1.220 "Specialty Electronics Debtors" ................................. 26
1.221 "Statutory Committees" .................................. 26 26 26
1.222 "Subordinated Notes" ................................................. 26
1. 223 "Subordinated Notes Holder" ..................................... 26
1.224 "Subordinated Notes Indenture" ................................ 26
1.225 "Subordinated Notes Indenture Trustee" ................... 26
1.226 "Supplemental Distribution Account" ........................ 26
1.227 "TOPrS" ....................................................................... 26
1. 228 "TOPrS Claim" ........................................................... 26
1.229  "UAW" ......................................................................... 26
1.230  "UAW 1113/1114 Settlement Approval Order" ........ 27
1.231  " UAW Benefit Guarantee" ......................................... 27
1.232 "UAW Benefit Guarantee Term Sheet" ...................... 27
1.233  "UAW-Delphi-GM Memorandum of Understanding" ...... 27

v

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

^ 1.234"Unimpaired" ........................................................................................27
1.^ 235"Union Settlement Agreements" ........................................................27
^ 1.236"Unions" ...............................................................................................27
1.^ 237"USW^ " ...............................................................................................27
^ 1.238"USW 1113/1114 Settlement Approval Order" ................................27
^ 1.239"USW Benefit Guarantee" ..................................................................27
^ 1.240"USW Benefit Guarantee Term Sheet" .............................................28
1.^ 241"USW-^ Delphi-GM Memoranda of Understanding" ......................28
^ 1.242"USW-Home Avenue Memorandum of Understanding" ..................28
^ 1.243"USW-Vandalia Memorandum of Understanding" ..........................28
^ 1.244"Voting Deadline" ...............................................................................28
^ C.     Rules Of Interpretation ..................................................................................28
^ D.     Computation Of Time .....................................................................................29
^ E.     References To Monetary Figures ....................................................................29
F.      Exhibits .........................................................................................................29
^ 29ARTICLE II ADMINISTRATIVE EXPENSES AND PRIORITY TAX CLAIMS ...........29
2.^ 1     Administrative Claims .........................................................29^ 30^ 30
^ 2.2     Priority Tax Claims ........................................................................30
^ 2.3     GM Administrative Claim. ..............................................................30
ARTICLE ^ III CLASSIFICATION OF CLAIMS AND INTERESTS^ .....................................30
^ 3.1     The Debtors. .....................................................................................30
^ 3.2     ^ Classification Of Claims And Interests. ......................................31
ARTICLE IV IDENTIFICATION OF CLASSES OF CLAIMS AND INTERESTS
IMPAIRED AND UNIMPAIRED BY THE PLAN ..................................................................32
^ 4.1     Classes Of Claims That Are Unimpaired. .......................................32
^ 4.2     Impaired Classes Of Claims And Interests. ....................................32
^ ARTICLE V PROVISIONS FOR TREATMENT OF CLAIMS AND INTERESTS ................33
5.1     Class 1A-1, Class 3A-1, and Class 4A-1 (Secured Claims) ...........33
5.2     Class 1B through Class 12B (Flow-Through Claims) ......................33
5.3     Class 1C-1 through Class 12C-1 (General Unsecured Claims) ........33
5.4     Class 1C-2 through Class 12C-2 (PBGC Claims) ..........................34
5.5     Class 1D through Class 12D (GM Unsecured Claim) ...........34^ 34^ 34
^ 5.6     Class 1E (Section 510(b) Note Claims) ..........................................34
5.^ 7     Class ^ 1F through Class 13F (Intercompany Claims) ...................34
^ 5.8     Class 1G-1 (Existing Common Stock). ...........................................34
^ 5.9     Class 1G-2 (Section 510(b) Equity Claims) ...................................34
^ 5.10   Class 1H and Class 8H (Section 510(b) ERISA Claims) ...............34
5.^ 11   Class ^ 1I (Other ^ Interests) .......................................................35
^ 5.12   Class 1J through Class 12J (Interests In Affiliate Debtors) ...........35
^ 5.13   Class 1K through Class 12K (Other Priority Claims). ....................35
^ ARTICLE VI ACCEPTANCE OR REJECTION OF THE PLAN; EFFECT OF
REJECTION BY ONE OR MORE IMPAIRED CLASSES OF CLAIMS OR INTERESTS
...................35
6.^ 1     Impaired Classes Of Claims Entitled To Vote ...............................35
6.^ 2     Classes Deemed To ^ Accept The Plan ...........................................35
^ 6.3     Acceptance By Impaired Classes. ...................................................35
^ 6.4     Classes Deemed To Reject The Plan ...............................................35
^ ^ 6.5          Prior Acceptances Or Rejections Of The Plan. .............................36

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

^ 6.6    Approval of Modifications Subject To Sections 1127 And 1129(b)
        Of The Bankruptcy Code ................................................................36^ 36
^ ARTICLE VII MEANS FOR IMPLEMENTATION OF THE PLAN ...........................36
    ^ 7.1    Continued Corporate Existence ............................................................36
    ^ 7.2    Substantive Consolidation ...................................................................36
    7.^ 3    Restructuring Transactions. ................................................................38
    ^ 7.4    Certificate Of Incorporation And Bylaws. ...........................................38
    ^ 7.5    Directors And Officers Of Reorganized DPH Holdings And
            Affiliate Debtors. .................................................................................38
    ^ 7.6    Consummation Of Disposition Transactions To Occur On Effective
            Date. ....................................................................................................38
    ^ 7.7    Master Disposition Agreement. ...........................................................39
    ^ 7.8    DIP Lender Credit Bid. ........................................................................39
    ^ 7.9    Post-Confirmation Reorganized DPH Holdings Share Trust ..............40
    ^ 7.10   Emergence Capital. ..............................................................................40
    ^ 7.11   Management Compensation Plan. ........................................................40
    ^ 7.12   Procedures For Asserting Certain Claims ............................................41
    ^ 7.13   Cancellation Of Existing Securities And Agreements..........................41
    ^ 7.14   Sources Of Cash For Plan Distributions...............................................42
    ^ 7.15   Establishment Of A General Unsecured Distribution Account............42
    ^ 7.16   Collective Bargaining Agreements. ......................................................42
    ^ 7.17   Pension Matters And PBGC Settlement. ..............................................44
    ^ 7.18   Salaried OPEB Settlement. ..................................................................44
    ^ 7.19   Preservation Of Causes Of Action .......................................................45
    ^ 7.20   Reservation Of Rights ..........................................................................45
    ^ 7.21   Exclusivity Period ................................................................................45
    ^ 7.22   Dismissal Of Complaints. .....................................................................45
    ^ 7.23   Corporate Action ..................................................................................45
    ^ 7.24   Effectuating Documents; Further Transactions ...................................45
    ^ 7.25   Consummation Of Divestiture Transactions..........................................46
    ^ 7.26   Exemption From Certain Transfer Taxes And Recording Fees............46
^ ARTICLE VIII UNEXPIRED LEASES AND EXECUTORY CONTRACTS............46
    ^ 8.1    Assumed And Rejected Contracts And Leases. ....................................46
    8.^ 2    Cure Procedures and ^ Payments Related To Assumption Of
            Executory Contracts ^ And Unexpired Leases^  .................................47
    ^ 8.3    Assignment Pursuant To Restructuring Transaction. ...........................52
    8.4      Rejection Damages Bar Date. ..............................................................52
    8.5      Assumption and Assignment of Divestiture-Related Executory
            Contracts and Unexpired Leases..........................................................52
ARTICLE IX PROVISIONS GOVERNING DISTRIBUTIONS..................................53
    9.1      Time Of Distributions. .........................................................................53
    9.2      No Interest On Disputed Claims .......................................53^ 53^ 53^ 54
    ^ 9.3    Disbursing Agent. .................................................................................53
    ^ 9.4    Surrender Of Securities Or Instruments. ..............................................53
    ^ 9.5    Services Of Indenture Trustees, Agents, And Servicers.......................54
    ^ 9.6    Claims Administration Responsibility. .................................................54
    9.^ 7    Delivery Of ^ Distributions^  ............................................................55

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

^ 9.8    Procedures For Treating And Resolving Disputed And Contingent Claims...........56

^ 9.9    Section 510(b) Opt Out Claims..........57

^ 9.10   Allocation Of Plan Distributions Between Principal And Interest...........58

^ ARTICLE X ALLOWANCE AND PAYMENT OF CERTAIN ADMINISTRATIVE CLAIMS    58

^ 10.1   DIP Facility Claims..........58

10.^ 2   Pre-Confirmation Administrative ^ Claim Procedures..........58

^ 10.3   Professional Claims..........58

^ 10.4   Substantial Contribution Compensation And Expenses Bar Date..........59

^ 10.5   Other Administrative Claims..........60

^ ARTICLE XI EFFECT OF THE PLAN ON CLAIMS AND INTERESTS..........60

^ 11.1   Revesting Of Assets..........60

^ 11.2   Discharge Of The Debtors..........60

^ 11.3   Compromises And Settlements..........61

11.4    Release By Debtors Of Certain Parties..........61

11.5    Release By Holders Of Claims And Interests..........61

11.6    Release By Unions..........62

11.7    Release Of GM By Debtors And Third Parties...........62

11.8    ^ Release of GMCo. By Debtors And Third Parties...........62^ 63^ 63^ 63

^ 11.9   Setoffs..........63

^ 11.10  Subordination Rights..........63

11.11   Exculpation And Limitation Of Liability..........63

11.12   Indemnification Obligations..........64

11.13   Exclusions And Limitations On Exculpation, Indemnification, And Releases..........65

11.14   Injunction..........65

ARTICLE XII CONDITIONS PRECEDENT...........65^ 66^ 66^ 66

^ 12.1   Confirmation..........66

^ 12.2   Conditions To The Effective Date Of The Plan..........66

12.3    Waiver Of Conditions Precedent..........66

ARTICLE XIII RETENTION OF JURISDICTION..........67

ARTICLE XIV MISCELLANEOUS PROVISIONS..........69

14.1    Binding Effect..........69

14.2    Payment Of Statutory Fees..........69

14.3    Modification And Amendments..........69

14.4    Reserved...........69^ 69^ 70^ 70

^ 14.5   Withholding And Reporting Requirements..........69

^ 14.6   Committees..........70

14.7    Revocation, Withdrawal, Or Non-Consummation..........70

14.8    Notices..........70

14.9    Term Of Injunctions Or Stays..........72

14.10   Governing Law..........72

14.11   No Waiver Or Estoppel..........73

14.12   Conflicts..........73

viii

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

# EXHIBITS

| | |
|---|---|
| **Exhibit 7.3** | **Restructuring Transactions Notice** |
| **Exhibit 7.4(a)** | **Certificate Of Incorporation For Reorganized DPH Holdings** |
| **Exhibit 7.4(b)** | **Bylaws Of Reorganized DPH Holdings** |
| **Exhibit 7.7** | **Master Disposition Agreement** |
| **Exhibit 7.9** | **Post-Confirmation Reorganized DPH Holdings Share Trust Agreement** |
| **Exhibit 7.11** | **Management Compensation Plan** |
| **Exhibit 7.17** | **Delphi-PBGC Settlement Agreement** |
| **Exhibit 7.19** | **Retained Causes Of Action** |
| **Exhibit 8.1(a)** | **Executory Contracts And Unexpired Leases To Be Rejected** |
| **Exhibit 10.5** | **Administrative Claim Request Form** |

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

## INTRODUCTION

Delphi Corporation and certain of its direct and indirect subsidiaries, debtors and debtors-in-possession in the above-captioned jointly administered Chapter 11 Cases, hereby propose this joint plan of reorganization for the resolution of the outstanding Claims against and Interests in the Debtors. Capitalized terms used herein shall have the meanings ascribed to them in Article I.B. of this Plan.

The subsidiaries of Delphi incorporated outside of the United States are not the subject of the Chapter 11 Cases.

These Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to an order of the Bankruptcy Court. The Debtors are the proponents of this Plan within the meaning of section 1129 of the Bankruptcy Code. The distributions to be made to holders of Claims and Interests are set forth herein.

The Debtors' reorganization plan was confirmed, with certain modifications, by the Bankruptcy Court on January 25, 2008, and the confirmation order became final on February 4, 2008. The Debtors met the conditions required to consummate the plan, including obtaining $6.1 billion of exit financing, but on April 4, 2008, the Plan Investors delivered to Delphi a letter stating that such letter "constitutes a notice of immediate termination" of the Investment Agreement. The financing the Debtors were to receive under the Investment Agreement was an integral element to the consummation of the Plan. Appaloosa Management L.P.'s ("Appaloosa") April 4 letter alleged that Delphi had breached certain provisions of the Investment Agreement and that Appaloosa was entitled to terminate the Investment Agreement. On May 16, 2008, Delphi filed complaints for damages and specific performance against the Plan Investors and related parties who refused to honor their contractual obligations. Nevertheless, the termination of the Investment Agreement resulted in the Debtors' inability to consummate the Plan without additional modifications. The Debtors are now seeking approval of modifications to the Plan pursuant to section 1127 of the Bankruptcy Code.

This Plan provides for the substantive consolidation of certain of the Estates, but only for the purposes of voting and making distributions to holders of Claims under this Plan. Under section 1127 of the Bankruptcy Code, as it incorporates section 1125(b) of the Bankruptcy Code, a vote to accept or reject this Plan cannot be solicited from a holder of a Claim or Interest until a disclosure statement has been approved by the Bankruptcy Court and distributed to holders of Claims and Interests. The Disclosure Statement Supplement (the "Supplement") relating to this Plan was approved by the Bankruptcy Court on June 16, 2009, and has been distributed simultaneously with this Plan to all parties whose votes are being solicited. The Supplement contains, among other things, a discussion of the Debtors' history, business, properties and operations, risk factors associated with the business and Plan, a summary and analysis of this Plan, and certain related matters.

1

ALL HOLDERS OF CLAIMS WHO ARE ENTITLED TO VOTE ARE ENCOURAGED TO READ THIS PLAN AND THE SUPPLEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THIS PLAN.

**PLEASE TAKE NOTICE THAT YOUR PREVIOUS ACCEPTANCE OR REJECTION OF THE PLAN WILL NOT BE COUNTED.  CONSEQUENTLY, YOUR VOTE ON THE MODIFICATIONS TO THE PLAN IS IMPORTANT.**

Subject to the restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in Article XIV of this Plan, each of the Debtors expressly reserves its respective rights to alter, amend, modify, revoke, or withdraw this Plan with respect to such Debtor, one or more times, prior to this Plan's substantial consummation.

A complete list of the Debtors is set forth below.  The list identifies each Debtor by its case number in these Chapter 11 Cases.

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

2

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

## **THE DEBTORS**

- ASEC Manufacturing General Partnership, 05-44482

- ASEC Sales General Partnership, 05-44484

- Aspire, Inc, 05-44618

- Delco Electronics Overseas Corporation, 05-44610

- Delphi Automotive Systems (Holding), Inc., 05-44596

- Delphi Automotive Systems Global (Holding), Inc., 05-44636

- Delphi Automotive Systems Human Resources LLC, 05-44639

- Delphi Automotive Systems International, Inc., 05-44589

- Delphi Automotive Systems Korea, Inc., 05-44580

- Delphi Automotive Systems LLC, 05-44640

- Delphi Automotive Systems Overseas Corporation, 05-44593

- Delphi Automotive Systems Risk Management Corp., 05-44570

- Delphi Automotive Systems Services LLC, 05-44632

- Delphi Automotive Systems Tennessee, Inc., 05-44558

- Delphi Automotive Systems Thailand, Inc., 05-44586

- Delphi China LLC, 05-44577

- Delphi Connection Systems, 05-44624

- Delphi Corporation, 05-44481

- Delphi Diesel Systems Corp., 05-44612

- Delphi Electronics (Holding) LLC, 05-44547

- Delphi Foreign Sales Corporation, 05-44638

- Delphi Furukawa Wiring Systems LLC, 05-47452

- Delphi Integrated Service Solutions, Inc., 05-44623

- Delphi International Holdings Corp., 05-44591

- Delphi International Services, Inc., 05-44583

- Delphi Liquidation Holding Company, 05-44542

- Delphi LLC, 05-44615

- Delphi Mechatronic Systems, Inc., 05-44567

- Delphi Medical Systems Colorado Corporation, 05-44507

- Delphi Medical Systems Corporation, 05-44529

- Delphi Medical Systems Texas Corporation, 05-44511

- Delphi NY Holding Corporation, 05-44480

- Delphi Receivables LLC, 05-47459

- Delphi Services Holding Corporation, 05-44633

- Delphi Technologies, Inc., 05-44554

- DREAL, Inc., 05-44627

- Environmental Catalysts, LLC, 05-44503

- Exhaust Systems Corporation, 05-44573

- MobileAria, Inc., 05-47474

- Packard Hughes Interconnect Company, 05-44626

- Specialty Electronics International Ltd., 05-44536

- Specialty Electronics, Inc., 05-44539

3

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

# ARTICLE I

## DEFINITIONS, RULES OF
## INTERPRETATION, AND COMPUTATION OF TIME

### A.    Scope Of Definitions

For purposes of this Plan, except as expressly provided otherwise or unless the context requires otherwise, all capitalized terms not otherwise defined shall have the meanings ascribed to them in Article I.B. of this Plan.  Any term used in this Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules.

### B.    Definitions

1.1    **"503 Deadline"** has the meaning ascribed to it in Article 10.4 hereof.

1.2    **"Acquired Assets"** means the GM Acquired Assets and the Company Acquired Assets.

1.3    **"Acquired Contracts"** has the meaning ascribed to it in the Master Disposition Agreement.

1.4    **"Administrative Claim"** means a Claim (other than the GM Administrative Claim) for payment of an administrative expense of a kind specified in section 503(b) of the Bankruptcy Code and entitled to priority pursuant to section 507(a)(1) of the Bankruptcy Code, including, but not limited to, the DIP Facility Revolver Claim, the DIP Facility First Priority Term Claim, the DIP Facility Second Priority Term Claim, the actual, necessary costs and expenses, incurred on or after the Petition Date, of preserving the Estates and operating the business of the Debtors, including wages, salaries, or commissions for services rendered after the Petition Date, Professional Claims, all fees and charges assessed against the Estates under chapter 123 of title 28, United States Code, and all Allowed Claims that are to be treated as Administrative Claims pursuant to a Final Order of the Bankruptcy Court under section 546(c)(2)(A) of the Bankruptcy Code.

1.5    **"Administrative Claims Bar Date"** means the deadline for filing proofs of or requests for payment of Administrative Claims arising after June 1, 2009, which shall be 30 days after the Effective Date, unless otherwise ordered by the Bankruptcy Court, and except with respect to Professional Claims, which shall be subject to the provisions of Article 10.3 hereof.

1.6    **"ADR Procedures"** means any alternative dispute resolution procedures approved by the Bankruptcy Court prior to the Effective Date, including, but not limited to, those approved in the Amended And Restated Order Under 11 U.S.C. §§ 363, 502, And 503 And Fed. R.

4

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

Bankr. P. 9019(b) Authorizing Debtors To Compromise Or Settle Certain Classes Of Controversy
And Allow Claims Without Further Court Approval, entered June 26, 2007.

^ **1.7** **"Affiliate Debtors"** means all the Debtors, other than Delphi.

^ **1.8** **"Affiliates"** has the meaning given such term by section 101(2) of the
Bankruptcy Code.

^ **1.9** **"Allowed Claim"** means a Claim, or any portion thereof,

(a)    that has been allowed by a Final Order of the Bankruptcy Court (or
such other court or forum as the Reorganized Debtors and the holder of such Claim agree may
adjudicate such Claim and objections thereto);

(b)    as to which a proof of claim has been timely filed with the
Bankruptcy Court pursuant to the Bankruptcy Code, or is allowed by any Final Order of the
Bankruptcy Court or by other applicable non-bankruptcy law, but only to the extent that such
claim is identified in such proof of claim in a liquidated and noncontingent amount, and either (i)
no objection to its allowance has been filed, or is intended to be filed, within the periods of
limitation fixed by this Plan, the Bankruptcy Code, or by any order of the Bankruptcy Court, or (ii)
any objection as to its allowance has been settled or withdrawn or has been denied by a Final
Order;

(c)    as to which no proof of claim has been filed with the Bankruptcy
Court and (i) which is Scheduled as liquidated in an amount other than zero and not contingent or
disputed, but solely to the extent of such liquidated amount and (ii) no objection to its allowance
has been filed, or is intended to be filed, by the Debtors or the Reorganized Debtors, within the
periods of limitation fixed by this Plan, the Bankruptcy Code, or by any order of the Bankruptcy
Court;

(d)    that is expressly allowed in a liquidated amount in this Plan; or

(e)    that is a Section 510(b) Note Claim, Section 510(b) Equity Claim, or
Section 510(b) ERISA Claim; provided that both the Bankruptcy Court and MDL Court shall have
approved the MDL Settlements, except to the extent that any such Claim is or becomes a Section
510(b) Opt Out Claim.

^ **1.10** **"Allowed Class . . . Claim" or "Allowed Class . . . Interest"** means an
Allowed Claim or an Allowed Interest in the specified Class.

^ **1.11** **"Allowed Interest"** means an Interest in any Debtor, which has been or
hereafter is listed by such Debtor in its books and records as liquidated in an amount and not
disputed or contingent; provided, however, that to the extent an Interest is a Disputed Interest, the
determination of whether such Interest shall be allowed and/or the amount of any such Interest
shall be determined, resolved, or adjudicated, as the case may be, in the manner in which such
Interest would have been determined, resolved, or adjudicated if the Chapter 11 Cases had not
been commenced; and provided further, however, that proofs of Interest need not and should not
be filed in the Bankruptcy Court with respect to any Interests; and provided further, however, that

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

the Reorganized Debtors, in their discretion, may bring an objection or motion with respect to a Disputed Interest before the Bankruptcy Court for resolution.

 **1.12** ^ **"Assumed Liabilities"** means GM Assumed Liabilities or Company Assumed Liabilities, as applicable.

 ^ **1.13 "Avoidance Claims"** means Causes of Action or defenses arising under any of sections 502, 510, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551, or 553 of the Bankruptcy Code, or under similar or related state or federal statutes and common law, including fraudulent transfer laws, whether or not litigation has been commenced as of the Confirmation Date to prosecute such Causes of Action.

 ^ **1.14 "Ballot"** means each of the ballot forms that is distributed with the Disclosure Statement to holders of Claims and Interests included in Classes that are Impaired under this Plan and entitled to vote under Article VI of this Plan.

 ^ **1.15 "Bankruptcy Code"** means the Bankruptcy Reform Act of 1978, as amended and codified in title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as in effect on the Petition Date.

 ^ **1.16 "Bankruptcy Court"** means the United States Bankruptcy Court for the Southern District of New York or such other court as may have jurisdiction over the Chapter 11 Cases.

 ^ **1.17 "Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended, the Federal Rules of Civil Procedure, as amended, as applicable to the Chapter 11 Cases or proceedings therein, and the Local Rules of the Bankruptcy Court, as applicable to the Chapter 11 Cases or proceedings therein, as the case may be.

 ^ **1.18 "Bar Date"** means the deadlines set by the Bankruptcy Court pursuant to the Bar Date Order or other Final Order for filing proofs of claim in the Chapter 11 Cases, as the context may require. Except as explicitly provided in the Bar Date Order, the Bar Date was July 31, 2006.

 ^ **1.19 "Bar Date Order"** means the order entered by the Bankruptcy Court on April 12, 2006, which established the Bar Date, and any subsequent order supplementing such initial order or relating thereto.

 ^ **1.20 "Beneficiaries"** means those Holders of Claims that are to be satisfied under the Plan by post-Effective Date distributions to be made by Reorganized DPH Holdings at the direction of the Post-Confirmation Trust Plan Administrator.

 ^ **1.21 "Business Day"** means any day, excluding Saturdays, Sundays, and "legal holidays" (as defined in Bankruptcy Rule 9006(a)), on which commercial banks are open for business in New York City.

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

^ **1.22** **"Buyers"** means, collectively, GM Buyer and ^ Company Buyer.

^ **1.23** **"Cash"** means legal tender of the United States of America and equivalents thereof.

^ **1.24** **"Cash Reserve"** means the cash reserved, as determined by the Debtors or the Reorganized Debtors in their sole and absolute discretion, sufficient to pay Administrative Claims, Other Secured Claims, Priority Tax Claims, and as otherwise required by this Plan.

^ **1.25** **"Causes of Action"** means any and all actions, proceedings, causes of action, suits, accounts, demands, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment, and claims, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, non-contingent, matured, unmatured, disputed, undisputed, secured, or unsecured, and whether asserted or assertable directly or derivatively in law, equity, or otherwise, including Avoidance Claims, unless otherwise waived or released by the Debtors or the Reorganized Debtors to the extent such Cause of Action is a Cause of Action held by the Debtors or the Reorganized Debtors.

^ **1.26** **"Certificate"** has the meaning ascribed to it in Article 9.4 hereof.

^ **1.27** **"Certificate of Incorporation and Bylaws"** means the Certificate of Incorporation and Bylaws (or other similar documents) of Reorganized DPH Holdings, in substantially the forms attached hereto as Exhibit 7.4(a) and Exhibit 7.4(b) respectively.

^ **1.28** **"Chapter 11 Cases"** means the chapter 11 cases of the Debtors pending in the Bankruptcy Court and being jointly administered with one another under Case No. 05-44481, and the phrase "Chapter 11 Case" when used with reference to a particular Debtor means the particular case under chapter 11 of the Bankruptcy Code that such Debtor commenced in the Bankruptcy Court.

^ **1.29** **"Claim"** means a claim against one of the Debtors (or all or some of them), whether or not asserted, as defined in section 101(5) of the Bankruptcy Code.

^ **1.30** **"Claims Agent"** means Kurtzman Carson Consultants LLC, 2335 Alaska Avenue, El Segundo, California 90245, Attention: Delphi Corporation.

^ **1.31** **"Claims/Interests Objection Deadline"** means, as applicable (except for Administrative Claims), (a) the day that is the later of (i) the first Business Day that is at least 120 days after the Effective Date and (ii) as to proofs of claim filed after the Bar Date, the first Business Day that is at least 120 days after a Final Order is entered deeming the late filed claim to be treated as timely filed or (b) such later date as may be established by the Bankruptcy Court upon request of the Reorganized Debtors without further notice to parties-in-interest.

^ **1.32** **"Class"** means a category of holders of Claims or Interests as described in Article III of this Plan.

**1.33** **"Company Acquired Assets"** has the meaning ascribed to "Company Acquired Assets" as set forth in the Master Disposition Agreement.

7

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

1.34    **"Company Assumed Contracts"** means those prepetition executory contracts and/or unexpired leases acquired by Company Buyer under the terms of the Master Disposition Agreement.

1.35    **"Company Assumed Liabilities"** means those liabilities assumed by Company Buyer under the terms of the Master Disposition Agreement.

1.36    **"Company Buyer"** means DIP Holdco 3, LLC, on behalf of itself and other buyers as set forth in the Master Disposition Agreement, as assignees of the rights of the DIP Agent to the Company Acquired Assets in connection with the Credit Bid.

1.37    **"Company Sales Securities"** means those outstanding shares and other equity interests acquired by the Company Buyer under the terms of the Master Disposition Agreement.

^ **1.38** **"Confirmation Date"** means the date of entry of the Confirmation Order.

^ **1.39** **"Confirmation Hearing"** means the hearing before the Bankruptcy Court commencing on January 17, 2008 held under section 1128 of the Bankruptcy Code to consider confirmation of the Plan and related matters.

^ **1.40** **"Confirmation Order"** means the order entered on January 25, 2008 by the Bankruptcy Court confirming this Plan under section 1129 of the Bankruptcy Code.

^ **1.41** **"Connection Systems Debtors"** means, collectively, Packard Hughes Interconnect Company and Delphi Connection Systems, as substantively consolidated for Plan purposes.

^ **1.42** **"Contingent PBGC Secured Claim"** means any Claim of the PBGC asserted against the applicable Debtors or group of Debtors, which Claims were granted conditional adequate protection liens pursuant to, and in the priority and with the validity set forth in, the Order Under 11 U.S.C. §§ 361 and 363, Fed. R. Bankr. P. 9019, And Cash Management Order Authorizing DASHI To Grant Adequate Protection To Pension Benefit Guaranty Corporation In Connection With Certain Intercompany Transfer Of Repatriated Funds, dated May 29, 2008 (Docket No. 13694) and the Second Supplemental Order Under 11 U.S.C. §§ 361 and 363, Fed. R. Bankr. P. 9019 And Cash Management Order Authorizing DASHI To Grant Adequate Protection To Pension Benefit Guaranty Corporation In Connection With Certain Intercompany Transfers Of Repatriated Funds, dated July 30, 2008 (Docket No. 14005).

^ **1.43** **"Continuing Indemnification Rights"** means those Indemnification Rights held by any Indemnitee who is a Released Party, together with any Indemnification Rights held by any Indemnitee on account of events occurring on or after the Petition Date.

^ **1.44** **"Controlled Affiliate"** means any Affiliate in which a Debtor (whether directly or indirectly and whether by ownership or share capital, the possession of voting power, contract or otherwise) has the power to appoint and/or remove the majority of the members of the board of directors or other governing body of such Affiliate or otherwise to direct or cause the direction of the affairs and policies of such Affiliate.

8

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

**1.45** "**Credit Bid**" means the payment in an amount equal to 100% of the principal and interest due under the DIP Credit Agreement, as set forth in the Master Disposition Agreement.

^ **1.46** "**Creditors' Committee**" means the official committee of unsecured creditors appointed pursuant to section 1102(a) of the Bankruptcy Code in the Chapter 11 Cases on October 17, 2005, as reconstituted from time to time.

^ **1.47** "**Cure**" means the payment or other honoring of all obligations required to be paid or honored in connection with assumption of an executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code, including (a) the cure of any non-monetary defaults to the extent required, if at all, pursuant to section 365 of the Bankruptcy Code, and (b) with respect to monetary defaults, the distribution within a reasonable period of time following the Effective Date of Cash, or such other property as may be agreed upon by the parties or ordered by the Bankruptcy Court, with respect to the assumption (or assumption and assignment) of an executory contract or unexpired lease, pursuant to section 365(b) of the Bankruptcy Code, in an amount equal to all undisputed, unpaid, and past due monetary obligations or such lesser amount as may be agreed upon by the parties, under such executory contract or unexpired lease, to the extent such obligations are enforceable under the Bankruptcy Code and applicable non-bankruptcy law.

^ **1.48** "**Cure Amount Notice**" means the notice of proposed Cure amount provided to counterparties to Material Supply Agreements pursuant to the Solicitation Procedures Order and the Confirmation Order, and such notices provided under the Modification Procedures Order.

^ **1.49** "**Cure Amount Proposal**" has the meaning ascribed to it in Article 8.2 of this Plan.

^ **1.50** "**DASHI Debtors**" means, collectively, Delphi Automotive Systems (Holding), Inc., Delphi Automotive Systems International, Inc., Delphi Automotive Systems Korea, Inc., Delphi Automotive Systems Overseas Corporation, Delphi Automotive Systems Thailand, Inc., Delphi China LLC, Delphi International Holdings Corp., and Delphi International Services, Inc., as substantively consolidated for Plan purposes.

^ **1.51** "**Debtor**" means, individually, any of Delphi or the Affiliate Debtors.

^ **1.52** "**Debtors**" means, collectively, Delphi and the Affiliate Debtors.

^ **1.53** "**Delphi**" means Delphi Corporation, a Delaware corporation, debtor-in-possession in the above-captioned Case No. 05-44481 (RDD) pending in the Bankruptcy Court.

^ **1.54** "**Delphi-DAS Debtors**" means, collectively, Delphi Corporation, ASEC Manufacturing General Partnership, ASEC Sales General Partnership, Aspire, Inc., Delphi Automotive Systems LLC, Delphi Automotive Systems Global (Holdings), Inc., Delphi Automotive Systems Human Resources LLC, Delphi Automotive Systems Services LLC, Delphi Foreign Sales Corporation, Delphi Integrated Service Solutions, Inc., Delphi LLC, Delphi NY Holding Corporation, Delphi Receivables LLC, Delphi Services Holding Corporation, Delphi

9

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

Automotive Systems Risk Management Corp., Delphi Automotive Systems Tennessee, Inc., Delphi Technologies, Inc., Delphi Electronics (Holding) LLC, Delphi Liquidation Holding Company, DREAL, Inc., Environmental Catalysts, LLC, and Exhaust Systems Corporation, as substantively consolidated for Plan purposes.

^ **1.55** **"Delphi-GM Arrangement"** means that certain agreement between the Debtors and GM, dated May 9, 2008, as subsequently amended, supplemented, or otherwise modified from time to time, pursuant to which GM agreed to make specified accommodations to enhance the Debtors' liquidity.

^ **1.56** **"Delphi-GM Definitive Documents"** means the Delphi-GM Global Settlement Agreement, the Delphi-GM Master Restructuring Agreement, each as amended and supplemented, and all attachments and exhibits thereto.

^ **1.57** **"Delphi-GM Global Settlement Agreement"** means that certain Amended and Restated Global Settlement Agreement between Delphi Corporation, on behalf of itself and certain subsidiaries and Affiliates, and General Motors Corporation, dated September 12, 2008 and September 25, 2008.

^ **1.58** **"Delphi-GM Master Restructuring Agreement"** means that certain Amended and Restated Master Restructuring Agreement between Delphi Corporation and General Motors Corporation, dated September 12, 2008.

^ **1.59** **"Delphi HRP"** means the Delphi Hourly-Rate Employees Pension Plan.

^ **1.60** **"Delphi-PBGC Settlement Agreement"** ^ means ^ the agreement ^ dated July 21, 2009 between Delphi and the PBGC that provides for, among other things, resolution of the Debtors' Pension Plans and related Claims, ^ as attached hereto ^ as Exhibit 7.17.

^ **1.61** **"DIP Accommodation Agreement"** means that certain Accommodation Agreement, dated December 12, 2008, by and among the Debtors, the DIP Agent, and the requisite percentage of DIP Lenders, as amended and supplemented.

^ **1.62** **"DIP Accommodation Agreement Order"** means, collectively, the Order (I) Supplementing January 5, 2007 DIP Refinancing Order (Docket No. 6461) And Authorizing Debtors To Enter Into And Implement Accommodation Agreement With Agent And Participating Lenders And (II) Authorizing Debtors To (A) Enter Into Related Documents And (B) Pay Fees In Connection Therewith, entered by the Bankruptcy Court on December 3, 2008 (Docket No. 14515), the Order Authorizing Debtors To (I) Enter Into Amendment To Accommodation Agreement With Certain Participating Lenders And (II)(A) Enter Into Related Documents And (B) Pay Fees And Expenses In Connection Therewith, entered by the Bankruptcy Court on February 25, 2009 (Docket No. 16377), and any and all other orders entered by the Bankruptcy Court authorizing and approving the amendments to the DIP Accommodation Agreement.

^ **1.63** **"DIP Agent"** means the administrative agent for the DIP Lenders as defined in the DIP Credit Agreement.

^ **1.64** **"DIP Claims"** means, collectively, the DIP Facility First Priority Term Claim, DIP Facility Revolver Claim, and DIP Facility Second Priority Term Claim.

10

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

^ **1.65** **"DIP Credit Agreement"** means that certain Amended and Restated Revolving Credit, Term Loan and Guaranty Agreement, dated as of May 9, 2008, by and among the Debtors, the DIP Agent, and the DIP Lenders, which was executed by the Debtors in connection with the DIP Facility, as amended, supplemented, or otherwise modified from time to time, and all documents executed in connection therewith.

^ **1.66** **"DIP Facility"** means the debtor-in-possession secured financing facility provided to the Debtors by the DIP Lenders pursuant to the DIP Credit Agreement as authorized by the Bankruptcy Court pursuant to the DIP Facility Order.

^ **1.67** **"DIP Facility First Priority Term Claim"** means any Claim of the DIP Agent and/or the DIP Lenders, as the case may be, arising under or pursuant to that portion of the DIP Facility that affords to the Debtors a $500 million term loan facility, including, without limitation, principal and interest thereon, plus all reasonable fees and expenses (including professional fees and expenses) payable by the Debtors thereunder.

^ **1.68** **"DIP Facility Order"** means, collectively, (a) the interim order that was entered by the Bankruptcy Court on October 12, 2005, (b) the final order that was entered by the Bankruptcy Court on October 28, 2005, authorizing and approving the DIP Facility and the agreements related thereto, (c) the order that was entered by the Bankruptcy Court on January 5, 2007, authorizing the Debtors to refinance the DIP Facility, and (d) any and all orders entered by the Bankruptcy Court authorizing and approving the amendments to the DIP Credit Agreement.

^ **1.69** **"DIP Facility Revolver Claim"** means any Claim of the DIP Agent and/or the DIP Lenders, as the case may be, arising under or pursuant to that portion of the DIP Facility that affords to the Debtors a $1.1 billion revolving lending facility, including, without limitation, principal and interest thereon, plus all reasonable fees and expenses (including professional fees and expenses) payable by the Debtors thereunder.

^ **1.70** **"DIP Facility Second Priority Term Claim"** means any Claim of the DIP Agent and/or the DIP Lenders, as the case may be, arising under or pursuant to that portion of the DIP Facility that affords to the Debtors a $2.^ 750 billion term loan facility, including, without limitation, principal and interest thereon, plus all reasonable fees and expenses (including professional fees and expenses) payable by the Debtors thereunder.

^ **1.71** **"DIP Lenders"** means the lenders and issuers from time to time party to the DIP Credit Agreement.

^ **1.72** **"DIP Lenders Steering Committee"** means the committee with members consisting of certain DIP Lenders with DIP Facility First Priority Term Claims, DIP Facility Revolver Claims, and DIP Facility Second Priority Term Claims.

^ **1.73** **"DIP Loan Documents"** means the DIP Facility together with the DIP Accommodation Agreement as authorized by the Bankruptcy Court pursuant to the DIP Accommodation Agreement Order, and all documents relating thereto.

^ **1.74** **"DIP Priority Payment Amount"** means the aggregate amount (after giving effect to the application of any applicable cash collateral) necessary to pay on the closing date of the Master Disposition Agreement, in dollars: (i) all outstanding and unpaid fees and

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

expenses then due under Section 10.05 of the DIP Credit Agreement (including any counsel and advisor fees payable under Section 10.05 of the DIP Credit Agreement); (ii) accrued and unpaid interest and fees then due on account of DIP Facility Revolver Claims and DIP Facility First Priority Term Claims; (iii) the DIP Facility Revolver Claims and DIP Facility First Priority Term Claims for then outstanding principal amounts; and (iv) up to $350,000,000 of Swap Exposure (as defined in the DIP Credit Agreement) that are not assumed liabilities under the Master Disposition Agreement for those Hedging Agreements (as defined in the DIP Credit Agreement) that are not assumed liabilities under the Master Disposition Agreement.

^ **1.75** "DIP Transfer"^ means the transfer to the DIP Agent of the consideration specified in that certain Assignment Agreement dated July ___, 2009 among the DIP Agent, DIP Holdco 3, LLC and GM Components Holdings, LLC to be distributed in accordance with the DIP Loan Documents, in exchange for the DIP Agent's right under the Credit Bid to receive the Company Acquired Assets, Company Sale Securities, GM Acquired Assets, and GM Sales Securities.

^ **1.76** "Disallowed Claim" means (a) a Claim, or any portion thereof, that has been disallowed by a Final Order or a settlement, (b) a Claim or any portion thereof that is Scheduled at zero or as contingent, disputed, or unliquidated and as to which a proof of claim bar date has been established but no proof of claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law, or (c) a Claim or any portion thereof that is not Scheduled and as to which a proof of claim bar date has been established but no proof of claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law.

^ **1.77** "Disallowed Interest" means an Interest or any portion thereof that has been disallowed by a Final Order or a settlement.

^ **1.78** "Disbursing Agent" means Reorganized DPH Holdings, or any Person designated by it, in its sole discretion, to serve as a disbursing agent under this Plan. For purposes of distributions to holders of Allowed General Unsecured Claims, Reorganized DIP Holdings shall, as of the Effective Date, appoint DIP Holdco 3, LLC as the Disbursing Agent, or such other party as may be determined by mutual agreement between Reorganized DIP Holdings and DIP Holdco 3, LLC.

^ **1.79** "Disclosure Statement" means the written disclosure statement or any supplements thereto (including the Supplement and all schedules thereto or referenced therein) that relates to this Plan, as such disclosure statement may be amended, modified, or supplemented from time to time, all as approved by the Bankruptcy Court pursuant to sections 1125 and 1127 of the Bankruptcy Code and Bankruptcy Rule 3017.

^ **1.80** "Disposition Transactions" means those transactions described in the Master Disposition Agreement^ .

^ **1.81** "Disputed Claim" or "Disputed Interest" means a Claim or any portion thereof, or an Interest or an portion thereof, that is neither an Allowed Claim nor a Disallowed Claim, nor an Allowed Interest nor a Disallowed Interest, as the case may be.

12

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

^ **1.82** **"Distribution Date"** means the date, selected by the Reorganized Debtors, upon which distributions to holders of Allowed Claims entitled to receive distributions under this Plan shall commence; provided, however, that the Distribution Date shall occur as soon as reasonably practicable after the Effective Date, but in any event no later than 30 days after the Effective Date.

^ **1.83** **"Distribution Reserve"** means, as applicable, one or more reserves of property for distribution to holders of Allowed Claims in the Chapter 11 Cases to be reserved pending allowance of Disputed Claims in accordance with Article 9.8 of this Plan.

^ **1.84** **"Effective Date"** means the Business Day determined by the Debtors on which all conditions to the consummation of this Plan set forth in Article 12.2 of this Plan have been either satisfied or waived as provided in Article 12.3 of this Plan and the day upon which this Plan is substantially consummated.

^ **1.85** **"Emergence Capital"** means that certain amount to be provided to the Reorganized Debtors by ^ GMCo. and DIP Holdco 3, LLC pursuant to Sections 3.1.1, 3.^ 2.1, and 3.2.3 of the Master Disposition Agreement (as each are applicable) related to the post-Effective Date operations of Reorganized DPH Holdings and the Reorganized Debtors.

^ **1.86** **"Employee-Related Obligation"** means a Claim of a salaried employee of one or more of the Debtors, in his or her capacity as an employee of such Debtor or Debtors, for (i) severance, provided, however, that such employee was in his or her capacity as an employee of a Debtor on or after June 1, 2009, and (ii) indemnification, provided, however, that such employee was in his or her capacity as an employee of a Debtor as of the date of the commencement of the hearing on the Disclosure Statement.

^ **1.87** **"Equity Committee"** means the official committee of equity security holders that was appointed pursuant to section 1102(a) of the Bankruptcy Code in the Chapter 11 Cases on April 28, 2006 and disbanded on April 24, 2009.

^ **1.88** **"ERISA"** means Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1461 and 26 U.S.C. §§ 401-420, as amended.

^ **1.89** **"ERISA Plaintiffs"** means, collectively, Gregory Bartell, Thomas Kessler, Neal Folck, Donald McEvoy, Irene Polito, and Kimberly Chase-Orr on behalf of participants in the Debtors and their subsidiaries' defined contribution employee benefit pension plans that invested in Delphi common stock, as styled in the MDL Actions.

^ **1.90** **"ERISA Settlement"** means that certain settlement of the ERISA-related MDL Actions, as it may be amended or modified.

^ **1.91** **"Estates"** means the bankruptcy estates of the Debtors created pursuant to section 541 of the Bankruptcy Code.

^ **1.92** **"Exchange Act"** means the Securities Exchange Act of 1934, as now in effect or hereafter amended.

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

^ **1.93** **"Exhibit"** means an exhibit annexed either to this Plan or as an appendix to the Disclosure Statement.

^ **1.94** **"Exhibit Filing Date"** means the date on which Exhibits to this Plan or the Disclosure Statement shall be filed with the Bankruptcy Court, which date shall be at least ten days prior to the Voting Deadline or such later date as may be approved by the Bankruptcy Court without further notice.

^ **1.95** **"Existing Common Stock"** means shares of common stock of Delphi that are authorized, issued, and outstanding prior to the Effective Date.

^ **1.96** **"Existing Securities"** means, collectively, the Senior Notes, the Subordinated Notes, and the Existing Common Stock.

^ **1.97** **"Face Amount"** means, (a) when used in reference to a Disputed or Disallowed Claim, the full stated liquidated amount claimed by the holder of a Claim in any proof of claim timely filed with the Bankruptcy Court or otherwise deemed timely filed by any Final Order of the Bankruptcy Court or other applicable bankruptcy law, (b) when used in reference to an Allowed Claim, the allowed amount of such Claim, and (c) when used in reference to a TOPrS Claim, $0.

^ **1.98** **"Final Modification Hearing"** means the final hearing before the Bankruptcy Court held under section 1127 of the Bankruptcy Code to consider modification of this Plan and related matters.

^ **1.99** **"Final Order"** means an order or judgment, the operation or effect of which has not been reversed, stayed, modified, or amended, and as to which order or judgment (or any reversal, stay, modification, or amendment thereof) (a) the time to appeal, seek certiorari, or request reargument or further review or rehearing has expired and no appeal, petition for certiorari, or request for reargument or further review or rehearing has been timely filed, or (b) any appeal that has been or may be taken or any petition for certiorari or request for reargument or further review or rehearing that has been or may be filed has been resolved by the highest court to which the order or judgment was appealed, from which certiorari was sought, or to which the request was made, and no further appeal or petition for certiorari or request for reargument or further review or rehearing has been or can be taken or granted.

^ **1.100** **"Flow-Through Claim"** means a claim arising from an Employee-Related Obligation; _provided_, _however_, that all Estate Causes of Action and defenses to any Flow-Through Claim shall be fully preserved.

^ **1.101** **"General Unsecured Claim"** means any Claim, including a Senior Note Claim, TOPrS Claim or a SERP Claim, that is not otherwise an Administrative Claim, Priority Tax Claim, GM Administrative Claim, Secured Claim, Contingent PBGC Secured Claim, Flow-Through Claim, GM Unsecured Claim, Section 510(b) Note Claim, Section 510(b) Equity Claim, Section 510(b) ERISA Claim, Section 510(b) Opt Out Claim, or Intercompany Claim.

^ **1.102** **"General Unsecured MDA Distribution"** means, if and to the extent ^ Company Buyer makes distributions to its members ^ in accordance with the ^ Company Buyer Operating Agreement, as described in section 3.2.3 of ^ the ^ Master Disposition

14

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

Agreement, in excess of $7.2 billion, an amount equal to $^ 32.50 for every $^ 67.50 so distributed in excess of $7.2 billion; provided, however, that in no event shall the General Unsecured MDA Distribution exceed $^ 300,000,000 in the aggregate.

^ **1.103**        **"GM"** means Motors Liquidation Company, formerly known as General Motors Corporation.

^ **1.104**        **"GM Acquired Assets"** has the meaning set forth in the Master Disposition Agreement.

^ **1.105**        **"GM 414(l) Administrative Claim"** means the claim of GM under the Delphi-GM Definitive Documents in connection with the IRC Section 414(l) Transfer described in section 2.03(c) of the Delphi-GM Global Settlement Agreement of no more in the aggregate than $2.055 billion.

^ **1.106**        **"GM Administrative Claim"** means the GM 414(l) Administrative Claim and the GM Arrangement Administrative Claim.

^ **1.107**        **"GM Arrangement Administrative Claim"** means the claim of GM under the Delphi-GM Arrangement.

^ **1.108**        **"GM Assumed Contracts"** means those prepetition executory contracts and/or unexpired leases acquired by GM (and then assigned to GMCo.) under the terms of the Master Disposition Agreement.

^ **1.109**        **"GM Assumed Liabilities"** means liabilities assumed by ^ GMCo. under the terms of the Master Disposition Agreement.

^ **1.110**        **"GM Buyer(s)"** has the meaning set forth in the Master Disposition Agreement.

**1.111    "GMCo."** means General Motors Company.

**1.112    "GM-PBGC Agreement"** means the Waiver and Release Agreement among PBGC, General Motors Company, and Motors Liquidation Company, dated July 24, 2009, which is appended as Exhibit B to the Delphi-PBGC Settlement Agreement.

**1.113    "GM Sales Securities"** means those outstanding shares and other equity interests acquired by the GM Buyer under the terms of the Master Disposition Agreement.

^ **1.114**        **"GM Unsecured Claim"** means any Claim of GM, excluding the GM Administrative Claim and all other Claims and amounts to be treated pursuant to the Master Disposition Agreement (or any agreements ancillary to the Master Disposition Agreement) or the Delphi-GM Global Settlement Agreement, but shall otherwise include all claims asserted in GM's proof of claim, which was allowed in the amount of $2.5 billion upon the effectiveness of the Delphi-GM Global Settlement Agreement.

^ **1.115**        **"Holdback Amount"** means the amounts withheld by the Debtors as of the Confirmation Date as a holdback on payment of Professional Claims pursuant to the Professional Fee Order.

15

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

^ **1.116** **"Holdback Escrow Account"** means the escrow account into which Cash equal to the Holdback Amount shall be deposited on the Effective Date for the payment of Allowed Professional Claims to the extent not previously paid or disallowed.

^ **1.117** **"IAM"** means the International Association of Machinists and Aerospace Workers and its District 10 and Tool and Die Makers Lodge 78.

^ **1.118** **"IAM Memorandum of Understanding"** means, collectively, (i) that certain memorandum of understanding, dated July 31, 2007, as approved by the Bankruptcy Court on August 16, 2007, among the IAM, Delphi, and GM, and all attachments and exhibits thereto; and (ii) IUOE-IBEW-IAM-Delphi-GM Implementation Agreement Regarding 414(l) Transfers, Implementation of Term Sheet, Delphi Pension Freeze and Cessation of OPEB, and Application of Releases, dated September 25, 2008.

^ **1.119** **"IBEW"** means the International Brotherhood of Electrical Workers and its Local 663.

^ **1.120** **"IBEW E&S Memorandum of Understanding"** means, collectively, (i) that certain memorandum of understanding, dated July 31, 2007, as approved by the Bankruptcy Court on August 16, 2007, among the IBEW and its Local 663 relating to Delphi Electronics and Safety, Delphi, and GM, and all attachments and exhibits thereto; and (ii) IUOE-IBEW-IAM-Delphi-GM Implementation Agreement Regarding 414(l) Transfers, Implementation of Term Sheet, Delphi Pension Freeze and Cessation of OPEB, and Application of Releases, dated September 25, 2008.

^ **1.121** **"IBEW Powertrain Memorandum of Understanding"** means, collectively, (i) that certain memorandum of understanding, dated July 31, 2007, as approved by the Bankruptcy Court on August 16, 2007, among the IBEW and its Local 663 relating to Delphi Powertrain, Delphi, and GM, and all attachment and exhibits thereto; and (ii) IUOE-IBEW-IAM-Delphi-GM Implementation Agreement Regarding 414(l) Transfers, Implementation of Term Sheet, Delphi Pension Freeze and Cessation of OPEB, and Application of Releases, dated September 25, 2008.

^ **1.122** **"Impaired"** refers to any Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

^ **1.123** **"Indemnification Rights"** means obligations of the Debtors, if any, to indemnify, reimburse, advance, or contribute to the losses, liabilities, or expenses of an Indemnitee pursuant to the Debtor's certificate of incorporation, bylaws, policy of providing employee indemnification, applicable law, or specific agreement in respect of any claims, demands, suits, causes of action, or proceedings against an Indemnitee based upon any act or omission related to an Indemnitee's service with, for, or on behalf of the Debtors.

^ **1.124** **"Indemnitee"** means all current and former directors, officers, employees, agents, or representatives of the Debtors who are entitled to assert Indemnification Rights.

^ **1.125** **"Indenture Trustees"** means the Senior Notes Indenture Trustee and the Subordinated Notes Indenture Trustee.

16

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20



^ **1.126** **"Indentures"** means the Senior Notes Indenture and the Subordinated Notes Indenture.

^ **1.127** **"Insurance Coverage"** has the meaning ascribed to it in <u>Article 11.12</u> of this Plan.

^ **1.128** **"Insurance Settlement"** means that certain agreement among Delphi, certain insured officers and directors, and certain insurance carriers resolving certain insurance claims related to the MDL Actions, as it may be amended or modified.

^ **1.129** **"Intercompany Claim"** means a Claim by a Debtor, a Controlled Affiliate of a Debtor, or a non-Debtor Controlled Affiliate against another Debtor, Controlled Affiliate of a Debtor, or non-Debtor Controlled Affiliate.

^ **1.130** **"Intercompany Executory Contract"** means an executory contract solely between two or more Debtors or an executory contract solely between one or more Debtors and one or more non-Debtor Controlled Affiliates.

^ **1.131** **"Intercompany Unexpired Lease"** means an unexpired lease solely between two or more Debtors or an unexpired lease solely between one or more Debtors and one or more non-Debtor Controlled Affiliates.

^ **1.132** **"Interest"** means the legal, equitable, contractual, and other rights of any Person with respect to Existing Common Stock, Other Interests, or any other equity securities of, or ownership interests in, Delphi or the Affiliate Debtors.

^ **1.133** **"Investment Agreement"** means that Equity Purchase and Commitment Agreement, dated December 10, 2007, between the Plan Investors and Delphi, as the same may have been amended, modified, or supplemented from time to time, and all documents executed in connection therewith.

^ **1.134** **"IRC"** means the Internal Revenue Code of 1986, as amended.

^ **1.135** **"IRC Section 414(l) Transfer"** means the transaction or transactions through which the GM Hourly-Rate Employees Pension Plan assumed or shall assume from Delphi Hourly-Rate Employee Pension Plan pension obligations and applicable pensions assets pursuant the terms of the Delphi-GM Definitive Documents, IRC section 414(l), and Section 208 of ERISA.

^ **1.136** **"IUE-CWA"** means the International Union of Electronic, Electrical, Salaried, Machine and Furniture Workers-Communication Workers of America and its applicable local unions.

^ **1.137** **"IUE-CWA 1113/114 Settlement Approval Order"** means the order entered by the Bankruptcy Court on August 16, 2007 approving the IUE-CWA-Delphi-GM Memorandum of Understanding.

^ **1.138** **"IUE-CWA Benefit Guarantee"** means the benefit guarantee agreement between GM and the IUE-CWA, dated November 13, 1999.

17

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

^ **1.139** **"IUE-CWA Benefit Guarantee Term Sheet"** means that term sheet, attached as Attachment B to the IUE-CWA-Delphi-GM Memorandum of Understanding, which sets forth the agreement of GM, Delphi, and the IUE-CWA regarding the freeze of the Delphi HRP, Delphi's cessation of post-retirement health care benefits and employer-paid post-retirement life insurance benefits, and the terms of a consensual triggering and application of the IUE-CWA Benefit Guarantee.

^ **1.140** **"IUE-CWA-Delphi-GM Memorandum of Understanding"** means, collectively, (i) that certain memorandum of understanding, dated August 5, 2007, as approved by the Bankruptcy Court on August 16, 2007, among the IUE-CWA, Delphi, and GM, and all attachments and exhibits thereto and all IUE-CWA-Delphi collective bargaining agreements referenced therein as modified; and (ii) the IUE-CWA-Delphi-GM Implementation Agreement Regarding 414(l) Transfers, Implementation of Term Sheet, Delphi Pension Freeze and Cessation of OPEB, and Application of Releases, dated September 25, 2008.

^ **1.141** **"IUOE"** means the International Union of Operating Engineers Locals 832S, 18S, and 101S, and their affiliated entities.

^ **1.142** **"IUOE Local 18S Memorandum of Understanding"** means, collectively, (i) that certain memorandum of understanding, dated August 1, 2007, as approved by the Bankruptcy Court on August 16, 2007, among the IUOE 18S, Delphi, and GM, and all attachments and exhibits thereto; and (ii) IUOE-IBEW-IAM-Delphi-GM Implementation Agreement Regarding 414(l) Transfers, Implementation of Term Sheet, Delphi Pension Freeze and Cessation of OPEB, and Application of Releases, dated September 25, 2008.

^ **1.143** **"IUOE Local 101S Memorandum of Understanding"** means, collectively, (i) that certain memorandum of understanding, dated August 1, 2007, as approved by the Bankruptcy Court on August 16, 2007, among the IUOE Local 101S, Delphi, and GM, and all attachments and exhibits thereto; and (ii) IUOE-IBEW-IAM-Delphi-GM Implementation Agreement Regarding 414(l) Transfers, Implementation of Term Sheet, Delphi Pension Freeze and Cessation of OPEB, and Application of Releases, dated September 25, 2008.

^ **1.144** **"IUOE Local 832S Memorandum of Understanding"** means, collectively, (i) that certain memorandum of understanding dated August 1, 2007, as approved by the Bankruptcy Court on August 16, 2007, among the IUOE Local 832S, Delphi, and GM, and all attachments and exhibits thereto; and (ii) IUOE-IBEW-IAM-Delphi-GM Implementation Agreement Regarding 414(l) Transfers, Implementation of Term Sheet, Delphi Pension Freeze and Cessation of OPEB, and Application of Releases, dated September 25, 2008.

^ **1.145** **"IUOE-IBEW-IAM OPEB Term Sheet"** means that term sheet, attached as Attachment B to the IBEW E&S Memorandum of Understanding, IBEW Powertrain Memorandum of Understanding, IAM Memorandum of Understanding, IUOE Local 18S Memorandum of Understanding, IUOE Local 101S Memorandum of Understanding, and IUOE Local 832S Memorandum of Understanding, regarding Delphi's cessation of post-retirement health care benefits and employer-paid post retirement life insurance benefits and GM's agreement to provide certain post retirement benefits to certain retired employees currently receiving such benefits from Delphi and other active employees who may become eligible for OPEB in accordance therewith.



^ 1.146          **"IUOE, IBEW, And IAM 1113/1114 Settlement Approval Order"** means the order entered by the Bankruptcy Court on August 16, 2007 approving the IAM Memorandum of Understanding, IBEW E&S Memorandum of Understanding, IBEW Powertrain Memorandum of Understanding, IUOE Local 18S Memorandum of Understanding, IUOE Local 101S Memorandum of Understanding, and IUOE Local 832S Memorandum of Understanding.

^ 1.147          **"Lead Plaintiffs"** means, collectively, Teachers' Retirement System of Oklahoma, Public Employees' Retirement System Of Mississippi, Raiffeisen Kapitalanlage-Gesellschaft m.b.H, and Stichting Pensioenfonds ABP, as styled in the MDL Actions.

^ 1.148          **"Management Compensation Plan"** means those certain plans and/or agreements by which the Reorganized Debtors, as substantially in the forms set forth on Exhibit 7.11 hereto, and ^ Company Buyer shall implement a compensation program for certain members of management and other employees on and after the Effective Date.

^ 1.149          **"Master Disposition Agreement"** means that certain master disposition agreement among Delphi, ^ General Motors Company (Solely With Respect To Article 6 And Sections 3.1.1.C, 9.11, 9.19, 9.37.1, 9.37.2, 9.43, 11.5.1.A , And 12.2.6), Motors Liquidation Company (FKA General Motors Corporation) (Solely With Respect To Sections 3.1.1.C, 9.19 And 11.5.1.A), DIP Holdco 3, LLC^ ,And The Other Sellers ^ And Other Buyers Party ^ Thereto, Dated As Of July 26, 2009.

^ 1.150          **"Material Supply Agreement"** means any agreement to which any of the Debtors is a party and pursuant to which the Debtors purchase materials which are directly incorporated into one or more of the Debtors' products.

^ 1.151          **"MDA Assumption And Assignment Notice"** has the meaning ascribed in Article 8.2(c).

^ 1.152          **"MDL Actions"** means those certain actions consolidated in that certain multi-district litigation proceeding captioned In re Delphi Corporation Securities, Derivative & ERISA Litigation, MDL No. 1725 (GER), pending in the United States District Court for the Eastern District of Michigan, related to certain actions for damages arising from the purchase or sale of the Senior Notes, the TOPrS, the Subordinated Notes, or Existing Common Stock, for violations of the securities laws, for violations of ERISA, misrepresentations, or any similar Claims.

^ 1.153          **"MDL Court"** means the United States District Court for the Eastern District of Michigan.

^ 1.154          **"MDL Settlements"** means, collectively, the ERISA Settlement, the Securities Settlement, and the Insurance Settlement.

^ 1.155          **"Modification Approval Date"** means the date of entry of the Modification Approval Order.

19

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20



^ 1.156          **"Modification Approval Order"** means the order entered by the Bankruptcy Court approving the modifications to this Plan under section 1127 of the Bankruptcy Code.

^ 1.157          **"Modification Procedures Order"** means the order entered by the Bankruptcy Court on June 16, 2009 authorizing the procedures by which votes on the modifications to this Plan are to take place, among other matters.

^ 1.158          **"New Common Stock"** means the share(s) of new common stock of Reorganized DPH Holdings.

^ 1.159          **"Non-Represented Term Sheet"** means the Term Sheet – Delphi Cessation and GM Provision of OPEB For Certain Non-Represented Delphi Employees and Retirees entered into between Delphi and GM, dated August 3, 2007.

^ 1.160          **"Omitted Material Supply Agreement Objection Deadline"** means February 8, 2008, the date that was ten days after service of notice upon counterparties to Material Supply Agreements as required by paragraph 24 of the Confirmation Order.

^ 1.161          **"OPEB"** means other post-employment benefits obligations.

^ 1.162          **"Ordinary Course Professionals Order"** means the order entered by the Bankruptcy Court on November 4, 2005 authorizing the retention of professionals utilized by the Debtors in the ordinary course of business.

^ 1.163          **"Other Executory Contract"** means any executory contract, other than a Material Supply Agreement and Other Unexpired Lease, to which any of the Debtors is a party.

^ 1.164          **"Other Interests"** means all options, warrants, call rights, puts, awards, or other agreements to acquire Existing Common Stock.

^ 1.165          **"Other MDA Assumed Contracts"** means, collectively, Other Executory Contracts and Other Unexpired Leases to be assigned to Buyers pursuant to the MDA.

^ 1.166          **"Other Priority Claim"** means any Claim, other than an Administrative Claim or Priority Tax Claim, entitled to priority payment as specified in section 507(a)(3), (4), (6), or (7) of the Bankruptcy Code.

^ 1.167          **"Other Unexpired Lease"** means any unexpired lease, other than a Material Supply Agreement and Other Executory Contract, to which any of the Debtors is a party.

^ 1.168          ^ **"PBGC"** means the Pension Benefit Guaranty Corporation.

^ 1.169          **"PBGC Claims"** means the Contingent PBGC Secured Claim and PBGC General Unsecured Claim.

^ 1.170          **"PBGC General Unsecured Claim"** means any Claim of the PBGC against the applicable Debtors or group of Debtors arising from or relating to the Pension

20

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

Plans that are not secured by valid, perfected, and enforceable liens against the assets or property of the Debtors.

^ 1.171        **"Pension Plans"** means Delphi Corporation:  the Delphi Hourly Rate Employees Pension Plan and the Delphi Retirement Program for Salaried Employees; Delphi Mechatronic Systems, Inc.:  the Delphi Mechatronic Systems Retirement Program; ASEC Manufacturing:  the ASEC Manufacturing Retirement Program; and Packard-Hughes Interconnect Company:  the Packard-Hughes Interconnect Bargaining Retirement Plan and the Packard-Hughes Interconnect Non-Bargaining Retirement Plan.

^ 1.172        **"Periodic Distribution Date"** means, as applicable, (a) the Distribution Date, as to the first distribution made by the Reorganized Debtors, and (b) thereafter, (i) the first Business Day occurring ninety (90) days after the Distribution Date and (ii) subsequently, the first Business Day occurring ninety (90) days after the immediately preceding Periodic Distribution Date, or such other Business Day selected by Reorganized DPH Holdings in its sole and absolute discretion; provided, however, distribution dates shall be no more than quarterly.

^ 1.173        **"Person"** means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization, governmental unit (as defined in section 101(27) of the Bankruptcy Code), or other entity.

^ 1.174        **"Petition Date"** means, as applicable, (a) October 8, 2005 with respect to those Debtors which filed their petitions for reorganization relief in the Bankruptcy Court on such date or (b) October 14, 2005 with respect to those Debtors which filed their petitions for reorganization relief in the Bankruptcy Court on such date.

^ 1.175        **"Plan"** means this joint plan of reorganization for the resolution of outstanding Claims and Interests in the Chapter 11 Cases, as confirmed by the Bankruptcy Court on January 25, 2008 and as may be modified in accordance with the Bankruptcy Code and Bankruptcy Rules, including as modified by the Modification Approval Order, and all exhibits, supplements, appendices, and schedules hereto, either in its or their present form or as the same may be further altered, amended, or modified from time to time in accordance with the Bankruptcy Code and Bankruptcy Rules.

^ 1.176        **"Plan Investors"** means A-D Acquisition Holdings, LLC, Harbinger Del-Auto Investment Company, Ltd., Merrill Lynch, Pierce, Fenner & Smith Incorporated, UBS Securities LLC, Goldman Sachs & Co., and Pardus DPH Holding LLC.

^ 1.177        **"Plan Objection Deadline"** means July 15, 2009 at 4:00 p.m. prevailing Eastern time.

^ 1.178        ^ **"Post-Confirmation Reorganized DPH Holdings Share Trust"** means that certain trust to be created on the Effective Date in accordance with the provisions of Article 7.9 and the Post-Confirmation Trust Agreement.

^ 1.179        **"Post-Confirmation Trust Agreement"** means that certain trust agreement that, among other things, (a) establishes and governs the Post-Confirmation

21

Reorganized DPH Holdings Share Trust, and (b) describes the powers, duties, and responsibilities of the Post-Confirmation Trust Plan Administrator.

^ **1.180** **"Post-Confirmation Trust Plan Administrator"** means that Person designated by the Debtors, identified at or prior to the Final Modification Hearing, and retained as of the Effective Date as the employee or fiduciary responsible for implementing the applicable provisions of the Plan and administering the Post-Confirmation Reorganized DPH Holdings Share Trust in accordance with the Plan and the Post-Confirmation Trust Agreement, and any successor appointed in accordance with the Post-Confirmation Trust Agreement.

^ **1.181** **"Prepetition Employee-Related Obligation"** means a Claim arising prior to the Petition Date of an hourly employee of one or more of the Debtors, in his or her capacity as an employee of such Debtor or Debtors, for post-employment benefits, including, without limitation, retiree health care and life insurance.

^ **1.182** **"Prepetition Employee-Related Obligations Bar Date"** means the deadline for filing proofs of claim in accordance with Article 7.12 of this Plan with respect to Prepetition Employee-Related Obligations, which shall be 45 days after the Effective Date, unless otherwise ordered by the Bankruptcy Court.

^ **1.183** **"Priority Tax Claim"** means a Claim entitled to priority pursuant to section 507(a)(8) of the Bankruptcy Code.

^ **1.184** **"Pro Rata"** means, (a) with respect to Claims, at any time, the proportion that the Face Amount of a Claim in a particular Class or Classes bears to the aggregate Face Amount of all Claims (including Disputed Claims, but excluding Disallowed Claims) in such Class or Classes, unless this Plan provides otherwise.

^ **1.185** **"Professional"** means any Person retained in the Chapter 11 Cases by separate Bankruptcy Court order pursuant to sections 327 and 1103 of the Bankruptcy Code or otherwise; provided, however, that Professional does not include any Person retained pursuant to the Ordinary Course Professionals Order.

^ **1.186** **"Professional Claim"** means an Administrative Claim of a Professional for compensation for services rendered or reimbursement of costs, expenses, or other charges and disbursements incurred relating to services rendered or expenses incurred after the Petition Date and prior to and including the Effective Date.

^ **1.187** **"Professional Fee Order"** means the order entered by the Bankruptcy Court on November 4, 2005, authorizing the interim payment of Professional Claims subject to the Holdback Amount.

^ **1.188** **"Reinstated" or "Reinstatement"** means (a) leaving unaltered the legal, equitable, and contractual rights to which a Claim entitles the holder of a Claim so as to leave such Claim unimpaired in accordance with section 1124 of the Bankruptcy Code or (b) notwithstanding any contractual provision or applicable law that entitles the holder of a Claim to demand or receive accelerated payment of such Claim after the occurrence of a default (i) curing any such default that occurred before or after the Petition Date, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code; (ii) reinstating the maturity of such Claim

22

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

as such maturity existed before such default; (iii) compensating the holder of a Claim for any damages incurred as a result of any reasonable reliance by such holder of a Claim on such contractual provision or such applicable law; and (iv) not otherwise altering the legal, equitable or contractual rights to which such Claim entitles the holder of a Claim; provided, however, that any contractual right that does not pertain to the payment when due of principal and interest on the obligation on which such Claim is based, including, but not limited to, financial covenant ratios, negative pledge covenants, covenants or restrictions on merger or consolidation, and affirmative covenants regarding corporate existence prohibiting certain transactions or actions contemplated by this Plan, or conditioning such transactions or actions on certain factors, shall not be required to be cured or reinstated to achieve Reinstatement.

^ 1.189    **"Released Parties"** means, collectively, (a) all officers of each of the Debtors and Reorganized Debtors, all members of the boards of directors of each of the Debtors and Reorganized Debtors, and all employees of each of the Debtors and Reorganized Debtors, in each case in their respective capacities as of the date of the commencement of the hearing on the Disclosure Statement, (b) the Creditors' Committee and all current and former members of the Creditors' Committee in their respective capacities as such, (c) the Equity Committee and all current and former members of the Equity Committee in their respective capacities as such, (d) the DIP Agent in its capacity as such, (e) the DIP Lenders solely in their capacities as such, (f) the DIP Steering Committee and all current and former members of the DIP Steering Committee in their respective capacities as such, (g) Parnassus Holdings II, LLC, (h) Platinum Equity Capital Partners II, L.P., (i) DIP Holdco 3, LLC and other buyers party to the Master Disposition Agreement, (j) all Professionals, (^ k) the Unions and current or former members, officers, and committee members of the Unions, (^ l) the Indenture Trustees, in their capacities as such, and (^ m) with respect to each of the above-named Persons, such Person's affiliates, advisors, principals, employees, officers, directors, representatives, financial advisors, attorneys, accountants, investment bankers, consultants, agents, and other representatives and professionals.

^ 1.190    **"Reorganized . . . "** means the applicable Debtor from and after the Effective Date.

^ 1.191    **"Reorganized Debtor"** or **"Reorganized Debtors"** means, individually, any Debtor and, collectively, all Debtors, in each case from and after the Effective Date.

^ 1.192    **"Reorganized DPH Holdings"** means Reorganized Delphi from and after the Effective Date, a corporation organized under the laws of Delaware or under such other law as determined by the Debtors, which will be the parent holding company of the Reorganized Debtors, the stock of which will be issued to the Post-Confirmation Reorganized DPH Holdings Share Trust.

1.193    **"Required Lenders"** has the meaning ascribed in the DIP Credit Agreement.

^ 1.194    **"Restructuring Debtors"** means those Debtors that shall be the subject of a Restructuring Transaction under this Plan.

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20



^ **1.195**        **"Restructuring Transaction(s)"** means a dissolution or winding up of the corporate existence of a Debtor or the consolidation, merger, contribution of assets, or other transaction in which a Reorganized Debtor or non-Debtor Affiliate directly owned by a Debtor merges with or transfers some or substantially all of its assets and liabilities to a Reorganized Debtor or its Affiliates, on or following the Confirmation Date, as set forth in the Restructuring Transaction Notice.

^ **1.196**        **"Restructuring Transaction Notice"** means the notice filed with the Bankruptcy Court on or before the Exhibit Filing Date, a copy of which is attached as Exhibit 7.3 to this Plan, describing the anticipated post-Effective Date structure of the Reorganized Debtors.

^ **1.197**        **"Retained Actions"** means all Claims, Causes of Action, rights of action, suits, and proceedings, whether in law or in equity, whether known or unknown, which any Debtor or any Debtor's Estate may hold against any Person, including, without limitation, Claims and Causes of Action brought prior to the Effective Date or identified in the Schedules, other than Claims explicitly released under this Plan or by Final Order of the Bankruptcy Court prior to the date hereof and Claims transferred to the Buyers pursuant to the Master Disposition Agreement. A non-exclusive list of Retained Actions is attached hereto as Exhibit 7.19.

^ **1.198**        **"Retained Assets"** means all assets of the Debtors that are not the GM Acquired Assets or the ^ Company Buyer Acquired Assets.

^ **1.199**        **"Scheduled"** means, with respect to any Claim, the status, priority, and amount, if any, of such Claim as set forth in the Schedules.

^ **1.200**        **"Schedules"** means the schedules of assets and liabilities and the statements of financial affairs filed in the Chapter 11 Cases by the Debtors, which incorporate by reference the global notes and statement of limitations, methodology, and disclaimer regarding the Debtors' schedules and statements, as such schedules or statements have been or may be further modified, amended, or supplemented from time to time in accordance with Bankruptcy Rule 1009 or orders of the Bankruptcy Court.

^ **1.201**        **"Section 510(b) Equity Claim"** means any Cause of Action consolidated in the MDL Actions related to any claim against the Debtors (a) arising from the rescission of a purchase or sale of any Existing Common Stock, (b) for damages arising from the purchase or sale of Existing Common Stock, and (c) for alleged violations of the securities laws, misrepresentations, or any similar Claims related to the Existing Common Stock.

^ **1.202**        **"Section 510(b) ERISA Claim"** means any Cause of Action consolidated in the MDL Actions arising from the alleged violation of ERISA.

^ **1.203**        **"Section 510(b) Note Claim"** means any Cause of Action consolidated in the MDL Actions related to any claim against the Debtors (a) arising from the rescission of a purchase or sale of any Senior Notes, Subordinated Notes, or TOPrS, (b) for damages arising from the purchase of Senior Notes, Subordinated Notes, or TOPrS, and (c) for alleged violations of the securities laws, misrepresentations, or any similar Claims related to the Senior Notes, Subordinated Notes, or TOPrS.

24



Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

^ **1.216** **"SERP"** means the prepetition supplemental executive retirement program between Delphi and certain employees.

^ **1.217** **"SERP Claim"** means a Claim of a SERP participant arising out of the SERP.

^ **1.218** **"Servicer"** has the meaning ascribed to it in <u>Article 7.13</u> of this Plan.

^ **1.219** **"Solicitation Procedures Order"** means the order entered by the Bankruptcy Court on December 10, 2007 authorizing the procedures by which solicitation of votes on this Plan is to take place, among other matters.

^ **1.220** **"Specialty Electronics Debtors"** means, collectively, Specialty Electronics, Inc. and Specialty Electronics International Ltd., as substantively consolidated for Plan purposes.

^ **1.221** **"Statutory Committees"** means the Creditors' Committee and the Equity Committee.

^ **1.222** **"Subordinated Notes"** means those notes issued pursuant to the Subordinated Notes Indenture.

^ **1.223** **"Subordinated Notes Holder"** means a holder of Subordinated Notes.

^ **1.224** **"Subordinated Notes Indenture"** means that certain indenture for the subordinated debt securities between Delphi Corporation and Bank One Trust Company, N.A., as trustee indenture, dated as of October 28, 2003.

^ **1.225** **"Subordinated Notes Indenture Trustee"** means the trustee under the Subordinated Notes Indenture.

^ **1.226** **"Supplemental Distribution Account"** means the property remaining in the applicable Distribution Reserve, if any, to the extent that a Disputed Class C Claim is not allowed or is allowed in an amount less than the amount reserved for such Disputed Claim.

^ **1.227** ^ **"TOPrS"** means (a) those 8.25% Cumulative Trust Preferred Securities issued by Delphi Trust I and (b) those Adjustable Rate Trust Preferred Securities issued by Delphi Trust II.

^ **1.228** **"TOPrS Claim"** means a Claim of a Subordinated Notes Holder arising under or as a result of the Subordinated Notes.

^ **1.229** **"UAW"** means the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America and its applicable local unions, and other affiliated entities.

26

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

^ **1.230** **"UAW 1113/1114 Settlement Approval Order"** means the order entered by the Bankruptcy Court on July 19, 2007 approving the UAW-Delphi-GM Memorandum of Understanding.

^ **1.231** **"UAW Benefit Guarantee"** means the benefit guarantee agreement between GM and the UAW, dated September 30, 1999.

^ **1.232** **"UAW Benefit Guarantee Term Sheet"** means that term sheet, attached as Attachment B to the UAW-Delphi-GM Memorandum of Understanding, which sets forth the agreement of GM, Delphi, and the UAW regarding the freeze of the Delphi HRP, Delphi's cessation of post-retirement health care benefits and employer-paid post-retirement life insurance benefits, and the terms of a consensual triggering and application of the UAW Benefit Guarantee.

^ **1.233** **"UAW-Delphi-GM Memorandum of Understanding"** means, collectively, (i) that certain memorandum of understanding, dated June 22, 2007, as approved by the Bankruptcy Court on July 19, 2007 among the UAW, Delphi and GM, and all attachments and exhibits thereto and all UAW-Delphi collective bargaining agreements referenced therein as modified; and (ii) the UAW-Delphi-GM Implementation Agreement Regarding 414(l) Transfers, Implementation of Term Sheet, Delphi Pension Freeze and Cessation of OPEB, and Application of Releases, dated September 26, 2008.

^ **1.234** ^ **"Unimpaired"** means, with respect to a Claim, any Claim that is not Impaired.

^ **1.235** **"Union Settlement Agreements"** means, collectively, the IAM Memorandum of Understanding, IBEW E&S Memorandum of Understanding, IBEW Powertrain Memorandum of Understanding, IUE-CWA Benefit Guarantee Term Sheet, IUE-CWA-Delphi-GM Memorandum of Understanding, IUOE-IBEW-IAM OPEB Term Sheet, IUOE Local 18S Memorandum of Understanding, IUOE Local 101S Memorandum of Understanding, IUOE Local 832S Memorandum of Understanding, UAW Benefit Guarantee Term Sheet, UAW-Delphi-GM Memorandum of Understanding, USW Benefit Guarantee Term Sheet, and USW-Delphi-GM Memoranda of Understanding.

^ **1.236** **"Unions"** means the IAM, the IBEW, the IUOE, the IUE-CWA, the UAW, and the USW.

^ **1.237** **"USW"** means the United Steel Workers and its applicable local unions.

^ **1.238** **"USW 1113/1114 Settlement Approval Order"** means the order entered by the Bankruptcy Court on August 29, 2007 approving the USW-Delphi-GM Memoranda of Understanding.

^ **1.239** **"USW Benefit Guarantee"** means the benefit guarantee agreement between GM and the USW, dated December 13, 1999, and signed December 16 and 17, 1999.

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

^ **1.240** **"USW Benefit Guarantee Term Sheet"** means that certain term sheet attached as Attachment B to each of the USW-Delphi-GM Memoranda of Understanding.

^ **1.241** **"USW-Delphi-GM Memoranda of Understanding"** means, collectively, the (i) USW-Home Avenue Memorandum of Understanding; (ii) the USW-Vandalia Memorandum of Understanding; and (iii) USW-Delphi-GM Implementation Agreement Regarding 414(l) Transfers, Implementation of Term Sheet, Delphi Pension Freeze and Cessation of OPEB, and Application of Releases, dated September 25-26, 2008.

^ **1.242** **"USW-Home Avenue Memorandum of Understanding"** means that certain memorandum of understanding, dated August 16, 2007, as approved by the Bankruptcy Court on August 29, 2007, among the USW, Delphi, and GM, and all attachments and exhibits thereto.

^ **1.243** **"USW-Vandalia Memorandum of Understanding"** means that certain memorandum of understanding, dated August 16, 2007, as approved by the Bankruptcy Court on August 29, 2007, among the USW, Delphi, and GM, and all attachments and exhibits thereto.

^ **1.244** **"Voting Deadline"** means July 15, 2009 at 7:00 p.m. prevailing Eastern time.

## C.   Rules Of Interpretation

For purposes of this Plan, unless otherwise provided herein, (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (b) each pronoun stated in the masculine, feminine, or neuter includes the masculine, feminine, and neuter; (c) any reference in this Plan to an existing document or schedule filed or to be filed means such document or schedule, as it may have been or may be amended, modified, or supplemented; (d) any reference to an entity as a holder of a Claim or Interest includes that entity's successors and assigns; (e) all references in this Plan to Sections, Articles, and Exhibits are references to Sections, Articles, and Exhibits of or to this Plan; (f) the words "herein," "hereunder," and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (g) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (h) subject to the provisions of any contract, certificates of incorporation, by-laws, instrument, release, or other agreement or document entered into in connection with this Plan, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and Bankruptcy Rules; and (i) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply.

This Plan is the product of extensive discussions and negotiations between and among the Debtors, GM, ^ GMCo., the DIP Agent, the DIP Lenders, the Creditors' Committee, and certain other creditors and constituencies. Each of the foregoing was represented by counsel, who either (a) participated in the formulation and documentation of, or (b) was afforded the opportunity to review and provide comments on, this Plan, the Disclosure Statement, and the

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

documents ancillary thereto.  Accordingly, the general rule of contract construction known as "contra preferentem" shall not apply to the construction or interpretation of any provision of this Plan, the Disclosure Statement, or any contract, instrument, release, indenture, exhibit, or other agreement or document generated in connection herewith.

### D.    Computation Of Time

In computing any period of time prescribed or allowed by this Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) shall apply.

### E.    References To Monetary Figures

All references in this Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

### F.    Exhibits

All Exhibits are incorporated into and are a part of this Plan as if set forth in full herein and, to the extent not annexed hereto, such Exhibits shall be filed with the Bankruptcy Court on or before the Exhibit Filing Date.  After the Exhibit Filing Date, copies of Exhibits may be obtained upon written request to Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Chicago, Illinois 60606 (Att'n: John Wm. Butler, Jr.), or Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, New York, New York 10036 (Att'n: Kayalyn A. Marafioti), counsel to the Debtors, or by downloading such exhibits from the Debtors' informational website at www.delphidocket.com.  To the extent any Exhibit is inconsistent with the terms of this Plan and unless otherwise provided for in the Confirmation Order or Modification Approval Order, the terms of the Exhibit shall control as to the transactions contemplated thereby and the terms of this Plan shall control as to any Plan provision that may be required under the Exhibit.

## ARTICLE II

## ADMINISTRATIVE EXPENSES AND
## PRIORITY TAX CLAIMS

**2.1    Administrative Claims.**  Subject to the Master Disposition Agreement and the provisions of Article X of this Plan, on the first Periodic Distribution Date occurring after the later of (a) the date when an Administrative Claim becomes an Allowed Administrative Claim or (b) the date when an Administrative Claim becomes payable pursuant to any agreement between a Debtor (or a Reorganized Debtor) and the holder of such Administrative Claim, a holder of an Allowed Administrative Claim shall receive, in full satisfaction, settlement, release, and discharge of, and in exchange for, such Administrative Claim, (i) Cash equal to the unpaid portion of such Allowed Administrative Claim or (ii) such other less favorable treatment which the Debtors (or the Reorganized Debtors) and the holder of such Allowed Administrative Claim shall have agreed

29

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

upon in writing; provided, however, that (x) ^ the ^ Claims arising under the DIP Credit Agreement shall be deemed ^ Allowed Administrative Claims as of the Effective Date in such amount as the Debtors^ , the DIP Agent, and the DIP Lenders shall have agreed upon ^ pursuant to the Master Disposition Agreement, which Claims shall be satisfied in accordance with Article 7.8 and Article X of this Plan and the Master Disposition Agreement, (y) holders of hedging claims arising under the DIP Facility shall receive the treatment described in the Master Disposition Agreement, and (z) the holder of ^ any other Administrative Claim shall have filed a proof of claim form no later than the July 15, 2009, pursuant to the procedures described in Article 10.2 and the Modification Procedures Order, and such Claim shall have become an Allowed Claim. For the avoidance of doubt, the GM Administrative Claim shall receive the treatment set forth in Article 2.3 of this Plan.

**2.2 Priority Tax Claims.** Commencing on the first Periodic Distribution Date occurring after the later of (a) the date a Priority Tax Claim becomes an Allowed Priority Tax Claim or (b) the date a Priority Tax Claim first becomes payable pursuant to any agreement between a Debtor (or a Reorganized Debtor) and the holder of such Priority Tax Claim, at the sole option of the Debtors (or the Reorganized Debtors), such holder of an Allowed Priority Tax Claim shall be entitled to receive, on account of such Priority Tax Claim, in full satisfaction, settlement, release, and discharge of, and in exchange for, such Priority Tax Claim, (i) equal Cash payments during a period not to exceed six years after the assessment of the tax on which such Claim is based, totaling the aggregate amount of such Claim, plus simple interest at the rate required by applicable law on any outstanding balance from the Effective Date, or such lesser rate as is agreed to by a particular taxing authority, (ii) such other treatment as is agreed to by the holder of an Allowed Priority Tax Claim and the Debtors (or the Reorganized Debtors), provided that such treatment is on more favorable terms to the Debtors (or the Reorganized Debtors) than the treatment set forth in clause (i) hereof, or (iii) payment in full in Cash; provided, however, that holders of Priority Tax Claims whose Claims have been assumed by the Buyers pursuant to the Master Disposition Agreement shall be treated in the manner set forth therein.

**2.3 GM Administrative Claim.** For good and valuable consideration provided by GM under the Delphi-GM Definitive Documents in connection with the IRC Section 414(l) Transfer described in Section 2.03(c) of the Delphi-GM Global Settlement Agreement, GM has received and shall receive allowed administrative expense claims of no more in the aggregate than $2.055 billion (the "GM 414(l) Administrative Claim"). Upon the Effective Date and the consummation of the Master Disposition Agreement, GM shall waive and release the GM 414(l) Administrative Claim and the GM Arrangement Administrative Claim, and GM shall accordingly receive no distribution on account of such claims.

## ARTICLE III

## CLASSIFICATION OF CLAIMS AND INTERESTS

**3.1 The Debtors.** There are a total of 42 Debtors. Certain of the Debtors shall be substantively consolidated for Plan voting and distribution purposes as described in Article 7.2. Each Debtor or group of consolidated Debtors has been assigned a number below for the purposes of classifying and treating Claims against and Interests in each Debtor or consolidated group of Debtors for balloting purposes. The Claims against and Interests in each Debtor or consolidated group of Debtors, in turn, have been assigned to separate lettered Classes with respect to each

Debtor or consolidated group of Debtors, based on the type of Claim involved. Accordingly, the classification of any particular Claim or Interest in any of the Debtors or consolidated group of Debtors depends on the particular Debtor against which such Claim is asserted (or in which such Interest is held) and the type of Claim or Interest in question. The numbers applicable to the various Debtors or consolidated Debtor groups are as follows:

| Number | Consolidated Debtor Group Or Debtor Name |
|--------|-------------------------------------------|
| 1 | Delphi-DAS Debtors |
| 2 | DASHI Debtors |
| 3 | Connection System Debtors |
| 4 | Specialty Electronics Debtors |
| 5 | Delco Electronics Overseas Corporation |
| 6 | Delphi Diesel Systems Corp. |
| 7 | Delphi Furukawa Wiring Systems LLC |
| 8 | Delphi Mechatronic Systems, Inc. |
| 9 | Delphi Medical Systems Corporation |
| 10 | Delphi Medical Systems Colorado Corporation |
| 11 | Delphi Medical Systems Texas Corporation |
| 12 | MobileAria, Inc. |

### 3.2    Classification Of Claims And Interests.

(a)    Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of classes of Claims against and Interests in the Debtors. A Claim or Interest is placed in a particular Class for the purposes of voting on this Plan and of receiving distributions pursuant to this Plan only to the extent that such Claim or Interest is an Allowed Claim or an Allowed Interest in that Class and such Claim or Interest has not been paid, released, or otherwise settled prior to the Effective Date. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims of the kinds specified in sections 507(a)(1) and 507(a)(8) of the Bankruptcy Code have not been classified and their treatment is set forth in Article II above.

(b)    Claims against and Interests in each of the Debtors are divided into lettered Classes. Not all of the Classes apply to every Debtor, and consequently not all of the lettered Classes appear in the case of each Debtor. For purposes of voting, claims within the Class shall be counted for each applicable Debtor or group of consolidated Debtors. Whenever such a Class of Claims or Equity Interests is relevant to a particular Debtor, that class of Claims or Interests shall be grouped under the appropriate lettered Class from the following list:

Class A-1    Class A-1 consists of separate subclasses for all Secured Claims, other than the Contingent PBGC Secured Claims, against the applicable Debtor or consolidated group of Debtors.

Class B    Class B consists of all Flow-Through Claims against the applicable Debtor or consolidated group of Debtors.

Class C-1    Class C-1 consists of all General Unsecured Claims, other than the PBGC General Unsecured Claims, against the applicable Debtor or consolidated group of Debtors.

31

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

| | |
|---|---|
| Class C-2 | Class C-2 consists of all PBGC Claims against the applicable Debtor or consolidated group of Debtors. |
| Class D | Class D consists of the GM Unsecured Claim against the applicable Debtor or consolidated group of Debtors. |
| Class E | Class E consists of all Section 510(b) Note Claims against Delphi Corporation. |
| Class F | Class F consists of all Intercompany Claims against the applicable Debtor or consolidated group of Debtors. |
| Class G-1 | Class G-1 consists of all Existing Common Stock of Delphi Corporation. |
| Class G-2 | Class G-2 consists of all Section 510(b) Equity Claims against Delphi Corporation. |
| Class H | Class H consists of all Section 510(b) ERISA Claims against the applicable Debtors. |
| Class I | Class I consists of all Other Interests in Delphi Corporation. |
| Class J | Class J consists of all Interests in the Affiliate Debtors. |
| Class K | Class K consists of all Other Priority Claims against the applicable Debtor or consolidated group of Debtors. |

## ARTICLE IV

## IDENTIFICATION OF CLASSES OF CLAIMS
## AND INTERESTS IMPAIRED AND UNIMPAIRED BY THE PLAN

**4.1    Classes Of Claims That Are Unimpaired.**  The following Classes of Claims and Interests are Unimpaired by the Plan:

| | |
|---|---|
| **Class 1B through Class 12B** | (Flow-Through Claims) |
| **Class 1J through Class 12J** | (Interests in the Affiliate Debtors) |
| **Class 1K through Class 12K** | (Other Priority Claims) |

**4.2    Impaired Classes Of Claims And Interests.**  The following Classes of Claims and Interests are Impaired by the Plan:

| | |
|---|---|
| **Class 1A-1, 3A-1, and ^ 4A-1** | (Secured Claims) |
| **Class 1C-1 through Class 12C-1** | (General Unsecured Claims) |
| **Class 1C-2 through Class 12C-2** | (PBGC Claims) |
| **Class 1D through Class 12D** | (GM Unsecured Claim) |
| **Class 1E** | (Section 510(b) Note Claims) |
| **Class 1F through Class 12F** | (Intercompany Claims) |
| **Class 1G-1** | (Existing Common Stock) |
| **Class 1G-2** | (Section 510(b) Equity Claims) |
| **Class 1H, 8H** | (Section 510(b) ERISA Claims) |
| **Class 1I** | (Other Interests) |

## ARTICLE V

32

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

## PROVISIONS FOR TREATMENT
## OF CLAIMS AND INTERESTS

**5.1        Class 1A-1, Class 3A-1, and Class ^ 4A-1 (Secured Claims).**  Except as
otherwise provided in and subject to <u>Article 9.8</u> of this Plan, at the sole option of the Debtors or
Reorganized Debtors, each Allowed Secured Claim shall receive (i) distributions of Cash
payments in equal installments over a period not to exceed seven years from the Effective Date
plus interest accruing at the rate that is equal to the closing seven-year treasury yield rate on the
Effective Date plus 200 basis points (the "Secured Claim Interest Rate"), and to the extent, if any,
that a Secured Claim is entitled to postpetition interest pursuant to section 506 of the Bankruptcy
Code for the period between the Petition Date and the Effective Date, such interest shall have
accrued at the applicable non-default contractual rate or statutory rate, as the case may be, and be
included in the Allowed amount of such Secured Claim; (ii) their collateral free and clear of liens,
Claims, and encumbrances, provided that such collateral, as of the day prior to the Effective Date,
was property of the Estate; or (iii) such other treatment as to which the Debtors or Reorganized
Debtors, as the case may be, and the holder of such Allowed Secured Claim have agreed upon in
writing, provided that such treatment is more favorable to the Debtors or the Reorganized Debtors,
as the case may be, than the treatment in clause (i) or clause (ii) above.  Notwithstanding section
1141(c) or any other provision of the Bankruptcy Code, with respect to the treatment in clause (i)
and clause (iii) above, all valid, enforceable, and perfected prepetition liens on property of the
Debtors held by or on behalf of holders of Secured Claims with respect to such Claims shall
survive the Effective Date and continue in accordance with the contractual terms of the underlying
agreements with such holders of such Secured Claims and/or applicable law until, as to each such
holder of an Allowed Secured Claim, such Secured Claim is satisfied pursuant to this Plan;
<u>provided</u>, <u>however</u>, that such holder of an Allowed Secured Claim shall be prohibited from
exercising rights or remedies pursuant to such underlying agreements so long as the Reorganized
Debtors are in compliance with this <u>Article 5.1</u>. To the extent the Debtors or the Reorganized
Debtors elect the treatment set forth in clause (ii) above, all valid liens shall be discharged and
otherwise satisfied upon the receipt of the claimant's collateral by the holder of such Allowed
Secured Claim.

**5.2        Class 1B through Class 12B (Flow-Through Claims).**  The legal,
equitable, and contractual rights of each holder of a Flow-Through Claim, if any, shall be unaltered
by the Plan and shall be satisfied in the ordinary course of business at such time and in such
manner as the applicable Reorganized Debtor is obligated to satisfy each Flow-Through Claim
(subject to the preservation and flow-through of all Estate Causes of Action and defenses with
respect thereto, which shall be fully preserved); <u>provided</u>, <u>however</u>, that any Flow Through Claim
assumed pursuant to the Master Disposition Agreement will receive the treatment specified therein.
The Debtors' failure to object to a Flow-Through Claim in their Chapter 11 Cases shall be without
prejudice to a Reorganized Debtors' right to contest or otherwise object to the classification of such
Claim in the Bankruptcy Court or such other court of competent jurisdiction.

**5.3        Class 1C-1 through Class 12C-1 (General Unsecured Claims).**  On the
Effective Date, the Disbursing Agent shall establish a distribution account to hold the proceeds, if
any, of the General Unsecured MDA Distribution.  Except as otherwise provided in and subject to
<u>Articles 9.8 and 11.10</u> of this Plan, commencing on the first Periodic Distribution Date occurring
after the later of (i) the date when the proceeds of the General Unsecured MDA Distribution may
be distributed to holders of General Unsecured Claims, (ii) the date when a General Unsecured

33

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

Claim becomes an Allowed General Unsecured Claim or (iii) the date when a General Unsecured Claim becomes payable pursuant to any agreement between the Debtors (or the Reorganized Debtors) and the holder of such General Unsecured Claim, each holder of an Allowed General Unsecured Claim shall receive, in full satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed General Unsecured Claim, its Pro Rata share of the proceeds of the General Unsecured MDA Distribution.  In addition, if applicable, on each Periodic Distribution Date, each holder of an Allowed General Unsecured Claim shall receive its Pro Rata Share of the proceeds of the General Unsecured MDA Distribution held in the Supplemental Distribution Account; provided, however, that no distribution from the Supplemental Distribution Account shall be made if, in the Reorganized Debtors' or the Disbursing Agent's sole discretion, the value of the property in the Supplemental Distribution Account is insufficient.  Distributions made pursuant to this Article 5.3 and Articles 5.4, 5.5, and 11.10 shall be in complete satisfaction of all obligations of GM under Section 4.04 of the Delphi-GM Global Settlement Agreement.

   **5.4    Class 1C-2 through Class 12C-2 (PBGC Claims).**  Pursuant to Article 7.17, and except as otherwise provided in and subject to Articles 9.8 and 11.10 of this Plan, the PBGC shall receive, on the Distribution Date on account of its PBGC Claims in full satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed PBGC Claims, the treatment set forth in Article 7.17 of this Plan.

   **5.5    Class 1D through Class 12D (GM Unsecured Claim).**  In full settlement, satisfaction, and release of the GM Unsecured Claim, GM shall receive the remaining releases provided for in section 4.01 of the Delphi-GM Global Settlement Agreement.

   **5.6    Class 1E (Section 510(b) Note Claims).**  Holders of Section 510(b) Note Claims shall not be entitled to, and shall not receive or retain any property or interest in property pursuant to this Plan on account of the Section 510(b) Note Claims.

   **5.7    Class 1F through Class 13F (Intercompany Claims).**  On the Effective Date, and subject to the Master Disposition Agreement, at the option of the Debtors or the Reorganized Debtors, the Intercompany Claims against any Debtor, including, but not limited to, any Intercompany Claims arising as a result of rejection of an Intercompany Executory Contract or Intercompany Unexpired Lease, shall not receive a distribution on the Effective Date and instead shall either be (a) Reinstated, in full or in part, and treated in the ordinary course of business, or (b) cancelled and discharged, in full or in part, in which case such discharged and satisfied portion shall be eliminated and the holders thereof shall not be entitled to, and shall not receive or retain, any property or interest in property on account of such portion under the Plan.

   **5.8    Class 1G-1 (Existing Common Stock).**  On the Effective Date, the Existing Common Stock shall be cancelled and extinguished.  The holders of Existing Common Stock shall not be entitled to, and shall not, receive or retain any property or interest on account of such Existing Common Stock.

   **5.9    Class 1G-2 (Section 510(b) Equity Claims).**  Holders of Section 510(b) Equity Claims shall not be entitled to, and shall not receive or retain any property or interest in property pursuant to this Plan on account of the Section 510(b) Equity Claims.

   **5.10    Class 1H and Class 8H (Section 510(b) ERISA Claims).**  The ERISA Settlement disbursing agent, on behalf of all holders of Section 510(b) ERISA Claims, shall not be

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

entitled to and shall not receive or retain any property or interest in property pursuant to this Plan on account of the Section 510(b) ERISA Claims.

       **5.11   Class 1I (Other Interests)**.  On the Effective Date, all Other Interests shall be deemed cancelled and the holders of Other Interests shall not receive or retain any property on account of such Other Interests under this Plan.

       **5.12   Class 1J through Class 12J (Interests In Affiliate Debtors)**.  On the Effective Date, except as otherwise contemplated by the Restructuring Transactions or the Master Disposition Agreement, the holders of Interests in the Affiliate Debtors shall retain such Interests in the Affiliate Debtors under the Plan.

       **5.13   Class 1K through Class 12K (Other Priority Claims)**.  Except to the extent that a holder of an Allowed Other Priority Claim against any of the Debtors agrees to a different treatment of such Claim, on the Effective Date, or as soon thereafter as is reasonably practicable, each such holder shall receive, in full satisfaction of such Claim, an amount in Cash equal to the Allowed amount of such Claim.

# ARTICLE VI

## ACCEPTANCE OR REJECTION OF THE PLAN;
## EFFECT OF REJECTION BY ONE OR MORE
## IMPAIRED CLASSES OF CLAIMS OR INTERESTS

       **6.1   Impaired Classes Of Claims Entitled To Vote.**  Except as otherwise provided in order(s) of the Bankruptcy Court pertaining to solicitation of votes on this Plan and Article 6.2, Article 6.4, and Article 6.5 of this Plan, holders of Claims and Interests in each Impaired Class are entitled to vote in their respective classes as a class to accept or reject this Plan.

       **6.2   Classes Deemed To Accept The Plan.**  Classes 1B through 12B, 1J through 12J, and 1K through 12K are Unimpaired under this Plan.  Pursuant to section 1126(f) of the Bankruptcy Code, such Classes are conclusively presumed to have accepted this Plan, and the votes of holders of Claims and Interests in such Classes therefore shall not be solicited.  Because all Debtors are proponents of this Plan, the votes of holders of such Claims in Class 1F through 12F (Intercompany Claims) shall not be solicited.

       **6.3   Acceptance By Impaired Classes.**  Classes 1A-1, 3A-1, and ^ 4A-1, Classes 1C-1 through 12C-1, and 1D through 12D are Impaired under this Plan.  In addition, Classes 1C-2 through 12C-2 shall be Impaired to the extent the Claims in such Classes are Allowed.  Pursuant to section 1126(c) of the Bankruptcy Code, and except as provided in section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims has accepted the Plan if the Plan is accepted by the holders of at least two-thirds in dollar amount and more than one-half in number of the Allowed Claims of such Class that have timely and properly voted to accept or reject the Plan.

       **6.4   Classes Deemed To Reject The Plan**.  Holders of Claims and Interests in Class 1E, 1G-1, 1G-2, 1H, 8H and 1I are not entitled to receive any distribution under the Plan on account of their Claims or Interests.  Since none of the holders of Claims or Interests in Class 1E, 1G-1, 1G-2, 1H, 8H, and 1I are entitled to receive a distribution under the Plan, pursuant to section

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

1126(g) of the Bankruptcy Code, each holder of a Claim or Interest in such Class is conclusively presumed to have rejected the Plan, and the votes of such holders of Claims or Interests therefore shall not be solicited.

**6.5     Prior Acceptances Or Rejections Of The Plan.**  The previous votes by any holder of a Claim that has accepted or rejected the Plan shall not be counted.

**6.6     Approval of Modifications Subject To Sections 1127 And 1129(b) Of The Bankruptcy Code.**  Because Classes 1E, 1G-1, 1G-2, 1H, 8H and 1I are deemed to reject the Plan, the Debtors shall request approval of the modifications to the Plan, as it may be modified from time to time, pursuant to section 1127 and 1129(b) of the Bankruptcy Code.

<div align="center">

**ARTICLE VII**

**MEANS FOR IMPLEMENTATION OF THE PLAN**

</div>

**7.1     Continued Corporate Existence**

**(a)**     Subject to the Restructuring Transactions and Disposition Transactions contemplated by this Plan, each of the Debtors shall continue to exist after the Effective Date as a separate entity, with all the powers of a corporation, limited liability company, or partnership, as the case may be, under applicable law in the jurisdiction in which each applicable Debtor is incorporated or otherwise formed and pursuant to its certificate of incorporation and bylaws or other organizational documents in effect prior to the Effective Date, except to the extent such certificate of incorporation and bylaws or other organization documents are amended and restated by this Plan and the Certificate of Incorporation and Bylaws without prejudice to any right to terminate such existence (whether by merger or otherwise) under applicable law after the Effective Date.

**(b)**     There are certain Affiliates of the Debtors that are not Debtors in these Chapter 11 Cases.  The continued existence, operation, and ownership of such non-Debtor Affiliates is a material component of the business of the Debtors and Reorganized Debtors, as applicable, and, as set forth in Article 11.1 of this Plan but subject to the Restructuring Transactions and Disposition Transactions, all of the Debtors' equity interests and other property interests in such non-Debtor Affiliates shall revest in the applicable Reorganized Debtor or its successor on the Effective Date.

**7.2     Substantive Consolidation**

**(a)**     This Plan provides for the substantive consolidation of certain of the Debtors' Estates, but only for purposes of voting on this Plan and making distributions to holders of Claims and Interests under this Plan.  For purposes of this Plan, the DAS Debtors shall be substantively consolidated; the DASHI Debtors shall be substantively consolidated; the Connection System Debtors shall be substantively consolidated; the Specialty Electronics Debtors

<div align="center">36</div>

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

shall be substantively consolidated; and the remaining Debtors shall not be substantively consolidated. None of the substantively consolidated Debtor entities shall be consolidated with each other. Notwithstanding the foregoing, but subject to the Disposition Transactions, the Debtors reserve all rights with respect to the substantive consolidation of any and all of the Debtors.

        **(b)**     With respect to the consolidated Debtor entities, on the Effective Date, and only as to the consolidated Debtor entities, (i) all assets and third-party liabilities of the Delphi-DAS Debtors, the DASHI Debtors, the Connection Systems Debtors, and the Specialty Electronics Debtors, respectively, will, for voting and distribution purposes only, be treated as if they were merged, (ii) each Claim against the Delphi-DAS Debtors, the DASHI Debtors, the Connection Systems Debtors, and the Specialty Electronics Debtors, respectively, will be deemed a single Claim against and a single obligation of the Delphi-DAS Debtors, the DASHI Debtors, the Connection Systems Debtors, and the Specialty Electronics Debtors, respectively, (iii) all Intercompany Claims by, between, and among the Delphi-DAS Debtors, the DASHI Debtors, the Connection Systems Debtors, and the Specialty Electronics Debtors, respectively, will, for voting and distribution purposes only, be eliminated, and (iv) any obligation of the Delphi-DAS Debtors, the DASHI Debtors, the Connection Systems Debtors, and the Specialty Electronics Debtors, respectively, and all guaranties thereof by one or more of the other Delphi-DAS Debtors, DASHI Debtors, Connection Systems Debtors, and Specialty Electronics Debtors, respectively, will be deemed to be one obligation of all of the Delphi-DAS Debtors, the DASHI Debtors, the Connection Systems Debtors, and the Specialty Electronics Debtors, respectively. Except as set forth in this Article, and subject to the Disposition Transactions, such substantive consolidation shall not (other than for purposes related to this Plan) (w) affect the legal and corporate structures of the Debtors or Reorganized Debtors, subject to the right of the Debtors or Reorganized Debtors to effect the Restructuring Transactions contemplated by this Plan, (x) cause any Debtor to be liable for any Claim or Interest under this Plan for which it otherwise is not liable, and the liability of any Debtor for any such Claim or Interest shall not be affected by such substantive consolidation, (y) except as otherwise stated in this Article 7.2, affect Intercompany Claims of Debtors against Debtors, and (z) affect Interests in the Affiliate Debtors except as otherwise may be required in connection with the Restructuring Transactions contemplated by this Plan.

Notwithstanding that the Bankruptcy Court has already approved the substantive consolidation of certain of the Debtors' Estates in the Confirmation Order, this Plan shall serve as, and shall be deemed to be, a request for entry of an order confirming the substantive consolidation of certain of the Debtors' Estates, but only for purposes of voting on this Plan and making distributions to holders of Claims and Interests under this Plan. If no objection to substantive consolidation of certain of the Debtors' Estates is timely filed and served by any holder of an impaired Claim affected by the Plan as provided in the Modification Procedures Order, or such other date as may be established by the Bankruptcy Court, the Modification Approval Order shall serve as the order approving the substantive consolidation of certain of the Debtors' Estates, but only for purposes of voting on this Plan and making distributions to holders of Claims and Interests under this Plan. If any such objections are timely filed and served, a hearing with respect to the substantive consolidation of certain of the Debtors' Estates, but only for purposes of voting on this Plan and making distributions to holders of Claims and Interests under this Plan, and any objections thereto shall be part of the Final Modification Hearing.

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

### 7.3    Restructuring Transactions.

(a)    On or following the Modification Approval Date, the Debtors or Reorganized Debtors, as the case may be, shall take such actions as may be necessary or appropriate to effect the relevant Restructuring Transactions as set forth in the Restructuring Transaction Notice including, but not limited to, actions necessary to execute the Disposition Transactions and any other transactions described in this Plan, and may take any other actions on or after the Effective Date. The anticipated post-Effective Date structure of the Reorganized Debtors is attached as Exhibit 7.3.

(b)    The Restructuring Transactions may include without limitation: (a) the execution and delivery of appropriate agreements or other documents of merger, consolidation, or reorganization containing terms that are consistent with the terms of this Plan and that satisfy the requirements of applicable law; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, guaranty, or delegation of any property, right, liability, duty, or obligation on terms consistent with the terms of this Plan; (c) the filing of appropriate certificates of incorporation, merger, consolidation, or dissolution with the appropriate governmental authorities under applicable law; and (d) all other actions that such Debtors and Reorganized Debtors determine are necessary or appropriate, including the making of filings or recordings in connection with the relevant Restructuring Transactions. The form of each Restructuring Transaction shall be determined by the boards of directors of a Debtor or Reorganized Debtor party to any Restructuring Transaction. In the event a Restructuring Transaction is a merger transaction, upon the consummation of such Restructuring Transaction, each party to such merger shall cease to exist as a separate corporate entity and thereafter the surviving Reorganized Debtor shall assume and perform the obligations of each merged Debtor under this Plan. In the event that a Reorganized Debtor is liquidated, the Reorganized Debtors (or the Reorganized Debtor which owned the stock of such liquidating Debtor prior to such liquidation) shall assume and perform the obligations of such liquidating Debtor. Implementation of the Restructuring Transactions shall not affect the distributions under the Plan.

### 7.4    Certificate Of Incorporation And Bylaws.    The Certificate of Incorporation of Reorganized DPH Holdings, substantially in the form attached hereto as Exhibit 7.4(a), and Bylaws of Reorganized DPH Holdings, substantially in the form attached hereto as Exhibit 7.4(b), shall be adopted and amended as may be required so that they are consistent with the provisions of this Plan and otherwise comply with section 1123(a)(6) of the Bankruptcy Code. Each Affiliate Debtor shall amend its certificate of incorporation, charter, bylaws, or applicable organizational document to otherwise comply with section 1123(a)(6).

### 7.5    Directors And Officers Of Reorganized DPH Holdings And Affiliate Debtors.    The Debtors shall file a notice listing the officers and directors of Reorganized DPH Holdings no later than the Exhibit Filing Date. Unless the Debtors otherwise file a notice on or prior to the Final Modification Hearing, the existing directors and officers of the Affiliate Debtors shall continue to serve in their current capacities after the Effective Date.

### ^ ^ Consummation Of Disposition Transactions^ To Occur On Effective Date.    The DIP Agent, at the direction of the Required Lenders and on behalf of the DIP Lenders,

38

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

has effectuated the Credit Bid in accordance with the direction letter from the Required Lenders, the DIP Transfer, and the Master Disposition Agreement. On the Effective Date, the Debtors shall consummate the Disposition Transactions, pursuant to which, among other things, (i) the Company Acquired Assets, including the Company Assumed Contracts, shall be transferred to the Company Buyer free and clear of all Claims, liens, and encumbrances pursuant to the terms of the Master Disposition Agreement and the Modification Approval Order, and (ii) the GM Acquired Assets, including the GM Assumed Contracts, shall be transferred to GM Buyer free and clear of all Claims, liens, and encumbrances pursuant to the terms of the Master Disposition Agreement and the Modification Approval Order^ .

**7.7    Master Disposition Agreement.**

(a)    **Approval Of Master Disposition Agreement**.  This Plan constitutes a request to authorize and approve the Master Disposition Agreement, attached hereto as Exhibit 7.7.

^ ^ **Sale/Transfer Of Assets To Company Buyer And GM Buyer.** Pursuant to the terms of the Master Disposition Agreement, ^ sections 363(k) and 1123(a)(5) of the Bankruptcy Code, the DIP Transfer, and the Modification Approval Order, on the Effective Date, the Debtors shall consummate the transfer, free and clear of any Claims, liens and encumbrances pursuant to the terms of the Master Disposition Agreement and the Modification Approval Order to (i) the Company Buyer of the Company Acquired Assets (subject to the Company Assumed Liabilities), the Company Assumed Contracts, and the Company Sales Securities, and (ii) the GM Buyer of the GM Acquired Assets^ (subject to the GM Assumed ^ Liabilities), the GM Assumed ^ Contracts, and the ^ GM Sales Securities.  To facilitate the transfers set forth in this subsection, the DIP Agent has assigned, or shall assign, pursuant to the terms of the DIP Transfer (i) to the GM Buyer, the right to receive the GM Acquired Assets (subject to the GM Assumed Liabilities), the GM Assumed Contracts and the GM Sales Securities and (ii) to the Company Buyer, the right to receive the Company Acquired Assets (subject to the Company Assumed Liabilities), the Company Assumed Contracts and the Company Sales Securities.

^ 7.8    ^ **DIP Lender Credit ^ Bid.**^

(a)    **Required Lender Direction.**  The Required Lenders shall have directed the DIP Agent, on behalf of the DIP Lenders, to take certain actions required to consummate the Master Disposition Agreement, including but not limited to (i) making the Credit Bid, (ii) assigning the right receive the Company Acquired Assets (subject to the Company Assumed Liabilities), the Company Assumed Contracts, and the Company Sales Securities to the Company Buyer, and (iii) assigning the right to receive the GM Acquired Assets (subject to the GM Assumed Liabilities), the GM Assumed Contracts, and the GM Sales Securities to the GM Buyer.

(b)    **Termination Of DIP Facility Claims And Cancellation Of Liens.**^  Pursuant to the Credit Bid, upon the consummation of the Master Disposition Agreement

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

on the Effective Date and upon the making of the DIP Transfer^, except as contemplated by the ^ Master Disposition Agreement, (i) the obligations in respect of loans under the DIP ^ Credit Agreement shall be fully discharged, released, terminated, and if necessary, deemed waived, (ii) all Claims, liens, security interests, and obligations related thereto ^ against Collateral (as defined in the DIP Credit Agreement) wherever located shall be fully discharged, released, terminated, and if necessary, deemed waived without need for any further action, (iii) the Debtors and the Reorganized Debtors shall be fully discharged and released of all obligations of any kind relating to ^ such loans and the Debtors and Reorganized Debtors shall have no further obligation to the DIP Lenders under and relating to ^ such loans, and (iv) the DIP Lenders shall be deemed to be bound to the provisions of Article XI of this Plan and the Modification Approval Order; provided, however, that notwithstanding the above, (w) the letters of credit under the DIP Facility shall receive the treatment set forth in the Master Disposition Agreement, (x) the Reorganized Debtors shall be obligated on an unsecured basis (i) in respect of the indemnity to the DIP Agent to the extent contemplated under the DIP Credit Agreement and section 13(d) of the DIP Facility Order and (ii) for post Effective Date reasonable fees of the DIP Agent and out-of-pocket expenses related to the DIP Documents, including, without limitation, all reasonable fees and out-of-pocket expenses incurred in connection with the cancellation and/or extinguishment of all publicly-filed liens and/or security interests as described below, (y) DIP Lender professional fees that have accrued prior to the Effective Date shall be treated as set forth in the Master Disposition Agreement, and (z) the Assumed Hedging Agreements (as defined in the Master Disposition Agreement) shall be paid or assumed by the GM Buyer as set forth in the Master Disposition Agreement,. To the extent that the DIP Lenders or the DIP Agent have filed or recorded publicly any liens and/or security interests to secure the Debtors' obligations under the DIP Facility, the DIP Lenders or the DIP Agent, as the case may be, shall take any and all commercially reasonable steps requested by the Company Buyer, GM Buyer, or Reorganized Debtors, at the Reorganized Debtors' reasonable expense, that are necessary to cancel and/or extinguish such publicly filed liens and/or security interests.^

**7.9    Post-Confirmation Reorganized DPH Holdings Share Trust**

(a)    **Post-Confirmation Reorganized DPH Holdings Share Trust.** On the Effective Date, the Debtors, on their own behalf and on behalf of the Beneficiaries, shall execute the Post-Confirmation Trust Agreement and take all other steps necessary to establish the Post-Confirmation Reorganized DPH Holdings Share Trust pursuant the Post-Confirmation Trust Agreement, substantially in the form attached as Exhibit 7.9. On the Effective Date, and in accordance with and pursuant to the terms of the Plan, the Post-Confirmation Reorganized DPH Holdings Share Trust shall become the sole shareholder of Reorganized DPH Holdings.

(b)    **Appointment Of Post-Confirmation Trust Plan Administrator.** On the Effective Date, the Post-Confirmation Trust Plan Administrator shall be appointed in accordance with the Post-Confirmation Trust Agreement and the Post-Confirmation Reorganized DPH Holdings Share Trust shall be administered by the Post-Confirmation Trust Plan Administrator in accordance with the Post-Confirmation Trust Agreement.

**7.10    Emergence Capital.** On the Effective Date, pursuant to the Master Disposition Agreement, the Reorganized Debtors shall receive the Emergence Capital^.

**7.11    Management Compensation Plan.** The Debtors or ^ Company Buyer shall enter into employment^ agreements with ^ and^ /or shall provide new and/or assumed

40

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

compensation and benefit arrangements to the Debtors' officers who continue ^ to be employed after the Effective Date, as more fully stated ^ on Exhibit 7.11 attached hereto; provided, however, that to enter into or to obtain the benefits of any such employment^ agreement^, such ^ executive officer must contractually waive and release ^ all pre-existing claims, including those arising from pre-existing employment, ^ change in control or other employment-related agreements ^ and/or benefits under certain pre-existing compensation and benefit arrangements. The Management Compensation Plan, as more fully described ^ on Exhibit 7.11, may include equity and other incentive plans as components of compensation to be paid to executives after the Effective Date.

### 7.12    Procedures For Asserting Certain Claims.

(a)    **SERP Claims.**    All persons holding or wishing to assert Claims solely on the basis of pension or other post-employment benefits arising out of the SERP, and whose SERP Claims vest or vested prior to the Effective Date, must file with the Bankruptcy Court and serve upon the Debtors a separate, completed, and executed proof of claim (substantially conforming to Form. No. 10 of the Official Bankruptcy Forms) no later than 30 days after the Effective Date; provided, however, that to the extent that (a) a SERP claimant's SERP Claim has already been Scheduled as non-disputed, non-contingent, and in a liquidated amount or (b) a SERP claimant timely and properly filed a proof of claim asserting his or her SERP Claim, then such SERP claimant need not file and serve an additional executed proof of claim.    All such SERP Claims not Scheduled or filed prior to the time set forth above in this Article 7.12 shall be forever barred from asserting such claims against the Debtors and their estates, or the Reorganized Debtors and their property.    Any Claims arising out of the SERP after the Effective Date shall be disallowed in their entirety regardless of whether a proof of claim has been filed for such contingent claim.    On the Effective Date, the Debtors shall reject or otherwise terminate the SERP. In accordance with that certain Order Authorizing Modification Of Benefits Under Hourly And Salaried Pension Programs And Modification Of Applicable Union Agreements In Connection Therewith, entered on September 23, 2008 (Docket No. 14258), on the Effective Date, the Amended SERP (as defined in the related order) and Amended SRESP (as defined in the related order) shall be vested and payable in accordance with the terms of such order and the related non-qualified pension plans.

(b)    **Prepetition Employee-Related Obligations.**    Except as set forth in Article 7.12(a) above, all Persons holding or wishing to assert Prepetition Employee-Related Obligations must file with the Bankruptcy Court and serve upon the Debtors a separate, completed, and executed proof of claim (substantially conforming to Form. No. 10 of the Official Bankruptcy Forms) no later than 45 days after the Effective Date; provided, however, that such claimant need not file and serve an executed proof of claim to the extent that (a) such claimant's Prepetition Employee-Related Obligation has already been Scheduled as non-disputed, non-contingent, and in a liquidated amount or (b) such a claimant already timely and properly filed a proof of claim asserting such Prepetition Employee-Related Obligation.    All Prepetition Employee-Related Obligations not Scheduled or filed prior to the time set forth above in this Article 7.12(b) shall be forever barred from asserting such claims against the Debtors and their estates, or the Reorganized Debtors and their property.

### 7.13    Cancellation Of Existing Securities And Agreements.    On the Effective Date, except as otherwise specifically provided for herein (a) the Existing Securities and any other

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

note, bond, indenture, or other instrument or document evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors, except such notes or other instruments evidencing indebtedness or obligations of the Debtors as are Reinstated under this Plan, shall be cancelled; provided, however, that Interests in the Affiliate Debtors shall not be cancelled, and (b) the obligations of, Claims against, and/or Interests in the Debtors under, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation or similar documents governing the Existing Securities, and any other note, bond, indenture, or other instrument or document evidencing or creating any indebtedness or obligation of the Debtors, except such notes or other instruments evidencing indebtedness or obligations of the Debtors as are Reinstated under this Plan, as the case may be, shall be released and discharged; provided, however, that any agreement (including the Indentures) that governs the rights of a holder of a Claim and that is administered by an indenture trustee, agent, or servicer (each hereinafter referred to as a "Servicer") shall continue in effect solely for purposes of (x) allowing such Servicer to make the distributions on account of such Claims under this Plan as provided in Article IX of this Plan and (y) permitting such Servicer to maintain any rights or liens it may have for fees, costs, and expenses under such indenture or other agreement; provided further, however, that the preceding proviso shall not affect the discharge of Claims against or Interests in the Debtors under the Bankruptcy Code, the Confirmation Order, Modification Approval Order, or this Plan, or result in any expense or liability to the Reorganized Debtors. The Reorganized Debtors shall not have any obligations to any Servicer (or to any Disbursing Agent replacing such Servicer) for any fees, costs, or expenses incurred on and after the Effective Date of the Plan except as expressly provided in Article 9.5 hereof; provided further, however, that nothing herein shall preclude any Servicer (or any Disbursing Agent replacing such Servicer) from being paid or reimbursed for prepetition or postpetition fees, costs, and expenses from the distributions being made by such Servicer (or any Disbursing Agent replacing such Servicer) pursuant to such agreement in accordance with the provisions set forth therein, all without application to or approval by the Bankruptcy Court.

**7.14    Sources of Cash For Plan Distributions**.  Except as otherwise provided in the Plan, Confirmation Order, the Master Disposition Agreement, or the Modification Approval Order, all Cash necessary for the Reorganized Debtors to make payments pursuant to the Plan shall be obtained from the Emergence Capital, ^ and as further described in the ^ Master Disposition Agreement.

**7.15    Establishment Of A General Unsecured Distribution Account.**  On the Effective Date, the Disbursing Agent shall establish a distribution account on behalf of holders of General Unsecured Claims for the purpose of holding the proceeds of the General Unsecured MDA Distribution, if any, to be distributed to holders of General Unsecured Claims in accordance with Article 5.3 of this Plan and the Master Disposition Agreement.

**7.16    Collective Bargaining Agreements.**

**(a)    UAW.**  Pursuant to this Plan and in accordance with the UAW 1113/1114 Settlement Approval Order, on the Effective Date, the UAW-Delphi-GM Memorandum of Understanding, ^ and all documents described in Attachment E to the UAW-Delphi-GM Memorandum of Understanding and Exhibit 2 to the UAW 1113/1114

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

Settlement Approval Order, shall be automatically assumed by the applicable Reorganized Debtor under sections 365 and 1123 of the Bankruptcy Code and assigned, as ^ applicable, in accordance with the Master Disposition Agreement and the Modification Approval Order.

(b)    **IUE-CWA.**    Pursuant to this Plan and in accordance with the IUE-CWA 1113/1114 Settlement Approval Order, on the Effective Date, the IUE-CWA-Delphi-GM Memorandum of Understanding, ^ and all documents described in Attachment E to the IUE-CWA-Delphi-GM Memorandum of Understanding, shall be automatically assumed by the applicable Reorganized Debtor under sections 365 and 1123 of the Bankruptcy Code and assigned, as ^ applicable, in accordance with the Master Disposition Agreement and the Modification Approval Order.

(c)    **USW.**    Pursuant to this Plan and in accordance with the USW 1113/1114 Settlement Approval Order, on the Effective Date, (i) the USW-Home Avenue Memorandum of Understanding ^ and all documents described in Attachment E to the USW-Home Avenue Memorandum of Understanding and (ii) the USW-Vandalia Memorandum of Understanding ^ and all documents described in Attachment E to the USW-Vandalia Memorandum of Understanding, shall be automatically assumed by the applicable Reorganized Debtor under sections 365 and 1123 of the Bankruptcy Code and assigned, as ^ applicable, in accordance with the Master Disposition Agreement and the Modification Approval Order.

(d)    **IUOE.**    Pursuant to this Plan and in accordance with the IUOE, IBEW, and IAM 1113/1114 Settlement Approval Order, on the Effective Date, (i) the IUOE Local 832S Memorandum of Understanding^ and all documents described in Attachment A to the IUOE Local 832S Memorandum of Understanding, (ii) the IUOE Local 18S Memorandum of Understanding ^ and all documents described in Attachment A to the IUOE Local 18S Memorandum of Understanding, and (iii) the IUOE Local 101S Memorandum of Understanding^ and all documents described in Attachment A to the IUOE Local 101S Memorandum of Understanding, shall be automatically assumed by the applicable Reorganized Debtor under sections 365 and 1123 of the Bankruptcy Code and assigned^, as applicable, in accordance with the Master Disposition Agreement^ and the Modification Approval Order.

(e)    **IBEW.**    Pursuant to this Plan and in accordance with the IUOE, IBEW, and IAM 1113/1114 Settlement Approval Order, on the Effective Date, (i) the IBEW E&S Memorandum of Understanding^ and all documents described in Attachment A to the IBEW E&S Memorandum of Understanding and (ii) the IBEW Powertrain Memorandum of Understanding ^ and all documents described in Attachment A to the IBEW Powertrain Memorandum of Understanding, shall be automatically assumed by the applicable Reorganized Debtor under sections 365 and 1123 of the Bankruptcy Code and assigned^, as applicable, in accordance with the Master Disposition Agreement^ and the Modification Approval Order.

(f)    **IAM.**    Pursuant to this Plan and in accordance with the IUOE, IBEW, and IAM 1113/1114 Settlement Approval Order, the IAM-Delphi Memorandum of Understanding, ^ and all documents described in Attachment A to the IAM-Delphi Memorandum of

43

Understanding, shall be automatically assumed by the applicable Reorganized Debtor under sections 365 and 1123 of the Bankruptcy Code and assigned^ , as applicable, in accordance with the Master Disposition Agreement and the Modification Approval Order.

### 7.17  Pension Matters And PBGC Settlement.

(a)  **Delphi HRP.**  Upon the entry of the Modification Approval Order, PBGC will determine whether to initiate and/or proceed with an involuntary termination under 29 U.S.C. § 1342 of the Delphi HRP; provided, however, that upon the Effective Date, the Delphi HRP shall no longer be the responsibility of the Debtors ^ or the Reorganized Debtors.

(b)  **Salaried and Subsidiary Pension Plans.**  ^ Upon the entry of the Modification Approval Order, PBGC will determine whether to initiate and/or proceed with an involuntary termination under 29 U.S.C. § 1342 of the Delphi Retirement Program for Salaried Employees, the Delphi Mechatronic Systems Retirement Program, the ASEC Manufacturing Retirement Program, the Packard-Hughes Interconnect Bargaining Retirement Plan, and the Packard-Hughes Interconnect Non-Bargaining Retirement Plan shall be terminated (collectively, the "Salaried and Other Pension Plans").

(c)  **PBGC Settlement.**  Pursuant to section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019, this Plan constitutes the Debtors' request to authorize and approve the ^ Delphi-PBGC Settlement Agreement^ , attached hereto ^ as Exhibit 7.17.  Pursuant to the Delphi-PBGC Settlement Agreement and this Plan, the Debtors shall grant the PBGC an allowed general unsecured nonpriority claim in the amount of $3 billion (the "PBGC General Unsecured Claim^ ") against each of the Debtors, which shall receive the treatment, as a single claim in the amount of $3 billion, given to holders of General Unsecured Claims pursuant to Article 5.3 of this Plan^ .  The distributions on account of the PBGC General Unsecured Claim, together with the consideration ^ set forth in the GM-PBGC Agreement, shall result in (i) no distribution being made on account of the Contingent PBGC Secured Claims other than ^ those distributions to be made as set forth above, (ii) the PBGC's settlement of its claims arising under Title IV of ERISA with respect to the Salaried and Other Pension Plans, (iii) the PBGC's agreement not to perfect, pursue, or enforce any and all asserted liens and claims not otherwise discharged by this Plan on the Effective Date and asserted or assertable against Delphi and/or any other member of its "controlled group" as defined under the IRC and/or ERISA including, without limitation, any of Delphi's non-U.S. affiliates, ^ (iv) the withdrawal of all notices of liens filed by the PBGC against non-Debtor affiliates under IRC §§ 412(n) or 430(k), ERISA § 4068, or otherwise, and (v) the releases set forth in the Delphi-PBGC Settlement Agreement and the GM-PBGC Agreement.  Except as specifically provided in the PBGC Settlement Agreement and as set forth in Article V above, on the Effective Date, all liens arising from or relating to the Delphi HRP and/or the Salaried and Other Pension Plans shall be terminated and discharged.

### 7.18  **Salaried OPEB Settlement.**  The Debtors will continue the payments on
the schedule authorized under the Order Pursuant to 11 U.S.C § 363 and Fed. R. Bankr. P. 9019 For Order Approving Debtors' Compromise and Settlement with Committee of Eligible Salaried Retirees and Delphi Salaried Retirees' Association (Docket No. 16545).

44

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

**7.19    Preservation Of Causes Of Action.**  In accordance with section 1123(b)(3) of the Bankruptcy Code and except as otherwise provided in this Plan or the Master Disposition Agreement, the Reorganized Debtors shall retain and may (but are not required to) enforce all Retained Actions and all other similar claims arising under applicable state laws, including, without limitation, fraudulent transfer claims, if any, and all other Causes of Action of a trustee and debtor-in-possession under the Bankruptcy Code.  The Debtors or the Reorganized Debtors, in their sole and absolute discretion, shall determine whether to bring, settle, release, compromise, or enforce such Retained Actions (or decline to do any of the foregoing), and shall not be required to seek further approval of the Bankruptcy Court for such action.  The Reorganized Debtors or any successors may pursue such litigation claims in accordance with the best interests of the Reorganized Debtors or any successors holding such rights of action.  Notwithstanding the foregoing, Causes of Action against Persons arising under section 544, 545, 547, 548, or 553 of the Bankruptcy Code or similar state laws shall not be retained by the Reorganized Debtors unless specifically listed on Exhibit 7.19 hereto.  For the avoidance of doubt, the Appaloosa Claim (as defined in the Master Disposition Agreement) shall be assigned to the applicable Purchasing Entity pursuant to the terms of the Master Disposition Agreement.

**7.20    Reservation Of Rights.**  With respect to any avoidance causes of action under section 544, 545, 547, 548, or 553 of the Bankruptcy Code that the Debtors abandon in accordance with Article 7.19 of this Plan, the Debtors and the Reorganized Debtors, as applicable, reserve all rights, including the right under section 502(d) of the Bankruptcy Code to use defensively the abandoned avoidance cause of action as a basis to object to all or any part of a claim against any Estate asserted by a creditor which remains in possession of, or otherwise obtains the benefit of, the avoidable transfer.

**7.21    Exclusivity Period.**  The Debtors shall retain the exclusive right to amend or modify this Plan, and to solicit acceptances of any amendments to or modifications of this Plan, through and until the Effective Date.

**7.22    Dismissal Of Complaints.**  Upon the Effective Date of this Plan, the proceedings initiated by the Creditors' Committee and the Senior Notes Indenture Trustee for the revocation of the Confirmation Order shall be closed and the complaints seeking relief therefor shall be dismissed as moot.

**7.23    Corporate Action.**  Each of the matters provided for under this Plan involving the corporate structure of any Debtor or Reorganized Debtor or corporate action to be taken by or required of any Debtor or Reorganized Debtor shall, as of the Effective Date, be deemed to have occurred and be effective as provided herein, and shall be authorized, approved, and to the extent taken prior to the Effective Date, ratified in all respects without any requirement of further action by stockholders, creditors, or directors of any of the Debtors or the Reorganized Debtors.

**7.24    Effectuating Documents; Further Transactions.**  Each of the Chief Executive Officer, Chief Financial Officer, and General Counsel of the Debtors, or their respective designees, shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan or to otherwise comply with applicable law.  The secretary or assistant secretary of the Debtors shall be authorized to certify or attest to any of the foregoing actions.

45

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

**7.25    Consummation Of Divestiture Transactions**.  In the event that the Bankruptcy Court enters an order on or prior to the Effective Date authorizing a Debtor(s) to sell assets free and clear of liens, Claims, and encumbrances, such Debtor(s) and or Reorganized Debtor(s), as the case may be, shall be permitted to close on the sale of such assets subsequent to the Effective Date free and clear of liens, Claims, and encumbrances pursuant to sections 363 and 1123 of the Bankruptcy Code.

**7.26    Exemption From Certain Transfer Taxes And Recording Fees.**
Pursuant to section 1146(c) of the Bankruptcy Code, any transfers from a Debtor to a Reorganized Debtor or from a Reorganized Debtor to any other Person or entity pursuant to this Plan, Master Disposition Agreement, or any agreement regarding the transfer of title to or ownership of any of the Debtors' or the Reorganized Debtors' real or personal property, shall not be subject to any stamp taxes and any other similar tax or governmental assessment to the fullest extent contemplated by section 1146(c) of the Bankruptcy Code, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

## ARTICLE VIII

## UNEXPIRED LEASES AND EXECUTORY CONTRACTS

**8.1    Assumed And Rejected Contracts And Leases.**

            **(a)    Executory Contracts And Unexpired Leases.**    All executory contracts and unexpired leases as to which any of the Debtors is a party shall be deemed automatically assumed by the applicable Reorganized Debtor in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code as of the Effective Date, unless such executory contracts or unexpired leases (i) shall have been previously rejected by the Debtors by Final Order of the Bankruptcy Court, (ii) shall be the subject of a motion to reject, or that otherwise authorizes rejection, filed on or before the Modification Approval Date, (iii) shall be rejected or assumed pursuant to a motion to sell or transfer property or assets filed by the Debtors prior to the Effective Date, (iv) shall have expired or terminated on or prior to the Effective Date (and not otherwise extended) pursuant to their own terms, (v) are listed on the schedule of rejected contracts attached hereto as Exhibit 8.1(a)—Rejected Contracts, or (vi) are otherwise rejected pursuant to the terms of this Plan and/or upon the direction of either Buyer pursuant to the Master Disposition Agreement.  Subject to the foregoing sentence and consummation of this Plan, entry of the Plan Modification Approval Order by the Bankruptcy Court shall constitute approval of the rejections and assumptions contemplated hereby pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date.  Upon the occurrence of the Effective Date, each executory contract or unexpired lease assumed, or assumed and assigned, as applicable, pursuant to this Article 8.l(a) shall vest in and be fully enforceable by the applicable Reorganized Debtor or its assignee in accordance with its terms, except as modified by the provisions of this Plan or any order of the Bankruptcy Court authorizing or providing for its assumption or applicable federal law.  Subject to the Master Disposition Agreement, the Debtors reserve the right to file a motion on or before the Modification Approval Date to reject any executory contract or unexpired lease.

46

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

      **(b)    Real Property Agreements**.  Each executory contract and unexpired lease that is assumed by the applicable Reorganized Debtor and relates to the use, ability to acquire, or occupancy of real property shall include (i) all modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affect such executory contract or unexpired lease and (ii) all executory contracts or unexpired leases appurtenant to the premises, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, powers, uses, reciprocal easement agreements, and any other interests in real estate or rights in rem related to such premises, unless any of the foregoing agreements has been rejected pursuant to a Final Order of the Bankruptcy Court or is otherwise rejected as a part of this Plan.  In the event that the Effective Date does not occur, the Court shall retain jurisdiction with respect to any request to extend the deadline for assuming any unexpired leases pursuant to section 365(d)(4) of the Bankruptcy Code.

      **(c)    Exhibits Not Admissions.**  Neither the exclusion nor the inclusion by the Debtors of a contract or lease on Exhibit 8.1(a) nor anything contained in this Plan shall constitute an admission that such lease or contract is an unexpired lease or executory contract or that any Debtor, or its respective Affiliates, has any liability thereunder.  The Debtors reserve the right, subject to notice, to amend, modify, supplement, or otherwise change Exhibit 8.1(a) on or before the Modification Approval Date.

    **8.2    Cure Procedures and Payments Related To Assumption Of Executory Contracts And Unexpired Leases**.

      **(a)    Material Supply Agreements**.  The provisions (if any) of each Material Supply Agreement to be assumed under this Plan which are or may be in default shall be satisfied solely by Cure.  For the avoidance of any doubt, any monetary amounts by which each Material Supply Agreement to be assumed pursuant to this Plan is in default shall be satisfied by Cure as required by section 365(b)(1) of the Bankruptcy Code and shall be paid to the non-Debtor counterparty to the Material Supply Agreement.  To the extent an Allowed Claim includes a claim for default of a Material Supply Agreement assumed under this Plan, then any Cure distributed pursuant to this section on account of such Material Supply Agreement shall offset or reduce the amount to be distributed to the holder of such related Allowed Claim (x) by the amount of the default under such Material Supply Agreement so recorded in the claim holder's proof of claim or documentation allowing such claim or (y) if such default amount is not definitively recorded or is agreed to in writing in an amount that is less than the undisputed default amount, then by the amount of any Cure payments made on account of the assumption, pursuant to sections 365 and 1123 of the Bankruptcy Code.

      **(i)    Cure Amount Notices.**  Pursuant to the Solicitation Procedures Order and the Confirmation Order, the Debtors issued a Cure Amount Notice to counterparties to Material Supply Agreements.  The proposed Cure amount set forth in such Cure Amount Notice was equal to the amount that the applicable Debtor believed it or the applicable Reorganized Debtor would be obligated to pay in connection with an assumption of such contract under section 365(b)(1) of the Bankruptcy Code (such amount, the "Cure Amount Proposal").  With respect to reconciling the amount of Cure, the

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

procedures set forth in the Solicitation Procedures Order, as modified by the Confirmation Order and subsequently modified by the Modification Procedures Order, and implemented in accordance therewith shall control and accordingly, Cure shall be equal to (i) subject to modification by written agreement between the Debtors and the applicable counterparty to reduce the Allowed Cure amount, the amount set forth on the Cure Amount Notice, to the extent that no proper and timely objection was filed in accordance with the Solicitation Procedures Order or was filed on or before the Omitted Material Supply Agreement Objection Deadline, as applicable, unless the Debtors send an Amended Cure Amount Notice (as defined below) to an applicable counterparty in which case Cure shall be determined pursuant to the procedures set forth in the Modification Procedures Order, or (ii) to the extent a proper and timely objection to the Cure Amount Notice and Cure Amount Proposal was filed in accordance with the Solicitation Procedures Order or was filed on or before the Omitted Material Supply Agreement Objection Deadline, as applicable, (a) the amount agreed to between the Debtors or Reorganized Debtors and the applicable counterparty or, (b) to the extent no such agreement was or is reached, such other amount as ordered by the Bankruptcy Court.  The Debtors shall send an amended notice with respect to such Cure Amount Notices for which the Debtors have since determined that the Cure Amount Proposal was overstated.  To reduce the overstated Cure amount to its proper amount, the Debtors may, at least 20 days prior to the Effective Date, file with the Court and serve a separate notice (the "Amended Cure Amount Notice") stating the amended Cure amount that the Debtors believe is necessary and proper to cure such contract. Pursuant to the Modification Procedures Order, if an affected contract counterparty disagrees with the Cure amount listed on the Amended Cure Amount Notice, then the counterparty shall file an objection within ten days of receipt of the Amended Cure Amount Notice to object to the amended Cure amount.  If no objection is timely received, each counterparty shall be deemed to have consented to the Cure amount set forth on the Amended Cure Amount Notice.  Any unresolved objection to an Amended Cure Amount Notice shall be scheduled to be heard at a claims hearing following 20 days' notice thereof provided by the Debtors or the Reorganized Debtors, as applicable, to the applicable counterparty, or such other date as may be agreed upon by the parties.

(ii)        **Objections To Cure Amount Notices And Payment Of Cure.** The Cure Amount Notice provided procedures for contracts that were to be assumed by the Reorganized Debtors (and with respect to contracts to be assumed and assigned to GM or ^ Company Buyer pursuant to the Modification Procedures Order, such notice of assumption and ^ assignment shall provide procedures) for each counterparty to object to, among other things, the assumption or assumption and assignment of the applicable contract.  The Cure Amount Notice also provided procedures for each counterparty to object to the Cure Amount Proposal.  If the counterparty responded to the Cure Amount Notice in accordance with the procedures set forth in the Solicitation Procedures Order, as modified by the Confirmation Order, or if the counterparty responded to the Amended Cure Amount Notice in accordance with the procedures herein and in the Modification Procedures Order, and the counterparty asserted a dispute regarding (x) the nature or amount of any Cure, (y) the ability of the Reorganized Debtor or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract to be assumed, or (z) any other matter pertaining to assumptions, then the Cure shall be paid, honored, or otherwise occur following the later of

48

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

a reasonable period of time following the Effective Date if the dispute is resolved consensually between the applicable counterparty and the Debtors or Reorganized Debtors, or a reasonable period of time following the entry of a Final Order adjudicating the dispute and approving the assumption and assignment of such Material Supply Agreement; provided that if there is a dispute as to the amount of Cure or adequate assurance that cannot be resolved consensually among the applicable counterparty and the Debtors, Reorganized Debtors, or the Buyers then notwithstanding anything to the contrary herein, in the Confirmation Order, in the Modification Procedures Order, or in the Modification Approval Order, the Debtors or Reorganized Debtors, shall have the right (and shall do so if directed by a Buyer pursuant to the terms of the Master Disposition Agreement) to reject the contract or lease for a period of ^ six days after entry of a Final Order establishing (a) a Cure amount in excess of that provided by the Debtors or (b) adequate assurance on terms not reasonably acceptable to the Debtors or Reorganized Debtors and the assignee, if applicable, of such Material Supply Agreement. To the extent disputed Cure amounts have not been resolved prior to the Effective Date, each Buyer shall establish an escrow account funded with Cash sufficient to pay the face amount of the disputed Cure asserted with respect to any Material Supply Agreement to be assigned to such Buyer pursuant to the Master Disposition Agreement. Any delay in approval of the assignability of the contracts to be assumed or the amount of Cure shall not affect the closing of the Disposition Transactions or the Effective Date of the Plan. If the non-Debtor counterparty to the Material Supply Agreement did not respond to the Cure Amount Notice in accordance with the Solicitation Procedures Order, or even if responded, did not dispute the Cure amount set forth in the Cure Amount Notice or did not dispute the Cure amount set forth in the Amended Cure Amount Notice, then Cure shall be paid in the amount set forth in the Cure Amount Notice or Amended Cure Amount Notice, as applicable, within a reasonable period of time following the Effective Date.

        **(iii)**        **Form Of Cure Payments.**    Notwithstanding anything to the contrary in the Solicitation Procedures Order, as modified by the Confirmation Order, and supplemented by the Modification Procedures Order, a Cure Amount Notice, the First Order Pursuant To Solicitation Procedures Order, Confirmation Order, Plan Of Reorganization, 11 U.S.C. § 105(a), And Fed. R. Bankr. P. 9010 Striking Certain Non-Conforming Cure Amount Notices And Objections Identified In Non-Conforming Cure Notice Motion (Docket No. 12899), the Second Order Pursuant To Solicitation Procedures Order, Confirmation Order, Plan Of Reorganization, 11 U.S.C. § 105(a), And Fed. R. Bankr. P. 9010 Striking Certain Non-Conforming Cure Amount Notices And Objections Identified In Non-Conforming Cure Notice Motion (Docket No. 12900), and the Third Order Pursuant To Solicitation Procedures Order, Confirmation Order, Plan Of Reorganization, 11 U.S.C. § 105(a), And Fed. R. Bankr. P. 9010 Striking Certain Non-Conforming Cure Amount Notices And Objections Identified In Non-Conforming Cure Notice Motion (Docket No. 12901), absent a consensual agreement between the Debtors and the applicable counterparty, each counterparty to a Material Supply Agreement shall be paid in cash for the Cure of monetary defaults under a Material Supply Agreement assumed pursuant to this Plan and the Master Disposition Agreement.

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

**(b)    Other Executory Contracts And Other Unexpired Leases**.  The provisions (if any) of each Other Executory Contract or Other Unexpired Lease to be assumed, or assumed and assigned, under this Plan which are or may be in default shall be satisfied solely by Cure.  For the avoidance of doubt, any monetary amounts by which each Other Executory Contract or Other Unexpired Lease to be assumed pursuant to this Plan is in default shall be satisfied by Cure as required by section 365(b)(1) of the Bankruptcy Code and shall be paid to the non-Debtor counterparty to the Other Executory Contract or Other Unexpired Lease.  Any Cure distributed pursuant to this section shall offset or reduce the amount to be distributed to the holder of such related Allowed Claim (x) by the amount of the default under such Other Executory Contract or Other Unexpired Lease so recorded in the claim holder's proof of claim or documentation allowing such claim or (y) if such default amount is not definitively recorded or is agreed to in writing in an amount that is less than the undisputed default amount, then by the amount of any Cure payments made on account of the assumption, pursuant to sections 365 and 1123 of the Bankruptcy Code.

**(i)    Cure Proposals.**  Pursuant to Article 8.2(b), as confirmed on January 25, 2008, any counterparty to an Other Executory Contract or Other Unexpired Lease who wished to assert that Cure is required as a condition to assumption must have filed and served a proposed cure proposal (a "Cure Proposal") so as to be received by the Debtors and their counsel at the address set forth in Article 14.8 hereof by March 10, 2008 (the "Cure Proposal Submission Deadline"), after which the Debtors had until April 24, 2008, to file any objections thereto (the "Cure Proposal Objections").

**(ii)    Cure Proposal Objections.**  The Debtors or Reorganized Debtors shall have the right to amend, modify, or supplement the Cure Proposal Objections.  Counterparties to an Other Executory Contract or Other Unexpired Lease which failed to file and serve a Cure Proposal by the Cure Proposal Submission Deadline in accordance with the procedures set forth in the Plan confirmed on January 25, 2008, shall each be deemed to have waived its right to assert a default requiring Cure and any default existing as of January 25, 2008 shall have been deemed cured as of the day following the Cure Proposal Submission Deadline and such party shall forever be barred from asserting against the Debtors or the Reorganized Debtors, as applicable, a claim that arose on or prior to the Cure Proposal Submission Deadline.  Counterparties shall assert any claims for defaults of Other Executory Contracts or Other Unexpired Leases accruing after the Cure Proposal Submission Deadline as Administrative Claims and shall file and serve such claims before the Administrative Claims Bar Date in accordance with the Modification Approval Order and as otherwise set forth in Articles 10.2 and 10.5.  If a counterparty included an assertion in its timely filed and served Cure Proposal disputing (i) the nature or amount of any Cure, (ii) the ability of any Reorganized Debtor, or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed, or (iii) any other matter pertaining to assumption, or if there is a Cure Proposal Objection then the disputed matter shall be set for hearing in the Bankruptcy Court, which hearing shall be scheduled for an available claims hearing date following 20 days' notice provided by the Debtors or the Reorganized Debtors, as applicable, to the applicable counterparty, or such other date as may be agreed upon, and Cure, if any, shall be paid, honored, or otherwise occur following the earlier of a consensual resolution or the entry of a Final Order of the Bankruptcy Court

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

resolving the dispute and approving the assumption or assumption and assignment, as the case may be; provided, however, that if there is a dispute as to the amount of Cure or regarding adequate assurance that cannot be resolved consensually among the parties, notwithstanding anything to the contrary herein or in the Confirmation Order, the Debtors shall have the right (and shall do so if directed by a Buyer pursuant to the terms of the Master Disposition Agreement) to reject the contract or lease for a period of ^ six days after entry of a Final Order establishing (a) a Cure amount in excess of that asserted by the Debtors or (b) adequate assurance on terms not reasonably acceptable to the Debtors or the Reorganized Debtors, as the case may be, and the assignee of such contract or lease. To the extent the disputed Cure amounts have not been resolved prior to the Effective Date, each Buyer shall establish an escrow account funded with Cash sufficient to pay the face amount of the disputed Cure asserted with respect to any Other Executory Contract or Other Unexpired Lease to be assigned to such Buyer pursuant to the Master Disposition Agreement. Any delay in approval of the assignability of the contracts to be assumed or the amount of Cure shall not affect the closing of the Disposition Transactions or the Effective Date of the Plan.

**(iii)    Payment Of Cure.**  Except as otherwise provided in this Article VIII, to the extent a Cure Proposal was timely filed and served and is not disputed, the Debtors or Reorganized Debtors, as the case may be, shall pay the Cure Proposal, if any, to the counterparty within a reasonable period of time following the Effective Date. Disputed Cure Proposals or any other disputes regarding Cure or the assumption or assumption and assignment of an Other Executory Contract or Other Unexpired Lease that are resolved consensually or by agreement or Final Order shall be paid or otherwise honored by the Debtors or the Reorganized Debtors, as applicable, by the later of a reasonable period of time following the Effective Date and a reasonable period of time following such agreement or Final Order.

**(c)    Other Executory Contracts And Other Unexpired Leases Assigned to Buyers**.  Pursuant to the Master Disposition Agreement, the Debtors or Reorganized Debtors, as the case may be, shall assign certain Other Executory Contracts and Other Unexpired Leases to GM Buyer or ^ Company Buyer. In connection therewith and in accordance with the procedures set forth in the Modification Procedures Order, Delphi shall serve each counterparty to a GM Assumed Contract or ^ Company Buyer Assumed Contract the respective notice (together, the "MDA Assumption and Assignment Notices"), which shall identify the respective Buyer as the party to whom all of the Debtors' rights, title, and interests in the Other MDA Assumed Contracts shall be assigned. Counterparties to Other MDA Assumed Contracts which failed to file and serve an objection to the MDA Assumption and Assignment Notice by the deadline set forth in the Modification Procedures Order, shall each be deemed to have waived its right to challenge the Debtors' or the Reorganized Debtors' assignment of such contract or lease and shall be barred from challenging the ability of any Debtor or Reorganized Debtor, as the case may be, or the respective Buyer or its assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed, and shall be barred from making any other challenge pertaining to assumption. If there is an objection to the MDA Assumption and Assignment Notice and the parties cannot consensually resolve their dispute, then the disputed matter shall be set for hearing in the Bankruptcy Court, which hearing

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

shall be scheduled for an available claims hearing date following 20 days' notice provided by the Debtors or the Reorganized Debtors, as applicable, to the applicable counterparty, or such other date as may be agreed upon, and Cure, if any, shall be paid, honored, and otherwise occur following the entry of a Final Order of the Bankruptcy Court resolving the dispute and approving the assumption or assumption and assignment, as the case may be; provided, however, notwithstanding anything to the contrary herein or in the Confirmation Order, the Debtors or Reorganized Debtors, as the case may be, shall have the right to reject the contract or lease for a period of ^ six days after entry of a Final Order establishing Cure (and shall if directed by a Buyer pursuant to the terms of the Master Disposition Agreement) or adequate assurance on terms not reasonably acceptable to the Debtors or Reorganized Debtors, as applicable, and the assignee. To the extent the disputed Cure amounts have not been resolved prior to the Effective Date, each Buyer shall establish an escrow account funded with Cash sufficient to pay the face amount of the disputed Cure asserted with respect to any Other MDA Assumed Contracts to be assigned to such Buyer pursuant to the Master Disposition Agreement. Any delay in approval of the assignability of the contracts to be assumed or the amount of Cure shall not affect the closing of the Disposition Transactions or the Effective Date of the Plan. Notwithstanding anything to the contrary in this Article 8.2(c), Article 8.2(b)(ii) shall control with respect to Cure amounts related to Other MDA Assumed Contracts.

**(d) Intercompany Executory Contracts And Intercompany Unexpired Leases.** Subject to the Master Disposition Agreement, any Claim outstanding at the time of assumption of an Intercompany Executory Contract or an Intercompany Unexpired Lease shall be Reinstated and shall be satisfied in a manner to be agreed upon by the relevant Debtors and/or non-Debtor Affiliates.

**8.3 Assignment Pursuant To Restructuring Transaction.** To the extent the Debtor which is party to an executory contract or unexpired lease is to be merged or liquidated as part of a Restructuring Transaction, the non-Debtor parties to such executory contract or unexpired lease shall, upon assumption as contemplated herein, be deemed to have consented to the assignment of such executory contract or unexpired lease to the Reorganized Debtor that is the surviving entity after such Restructuring Transaction.

**8.4 Rejection Damages Bar Date.** If the rejection by the Debtors (pursuant to this Plan or otherwise) of an executory contract or unexpired lease results in a Claim, then such Claim shall be forever barred and shall not be enforceable against the Debtors, the Reorganized Debtors, or such entities' properties unless a proof of claim is filed with the Claims Agent and served upon counsel to the Debtors and the Creditors' Committee within 30 days after the later of (a) entry of the Modification Approval Order or (b) notice that the executory contract or unexpired lease has been rejected, unless otherwise ordered by the Bankruptcy Court.

**8.5 Assumption and Assignment of Divestiture-Related Executory Contracts and Unexpired Leases.** In the event that the Bankruptcy Court enters an order on or prior to the Effective Date authorizing a Debtor(s) to assume and assign or reject certain executory contracts or unexpired leases in connection with a divestiture transaction, but a Debtor(s) does not assume and assign or reject such contracts and leases prior to the Effective Date: (a) notwithstanding anything to the contrary in the applicable sale order, such assumption or rejection shall be consummated pursuant to Article VIII of this Plan and service of notice and any Cure

52

payments owed to a non-Debtor counterparty under such contracts and leases shall be made pursuant to Article 8.2 of the Plan and (b) a Debtor(s) or Reorganized Debtor(s), as the case may be, shall be permitted to either reject or assign such assumed executory contracts and unexpired leases subsequent to the Effective Date pursuant to sections 365 and 1123 of the Bankruptcy Code and the applicable sale order.

<div align="center">

**ARTICLE IX**

**PROVISIONS GOVERNING DISTRIBUTIONS**

</div>

9.1    **Time Of Distributions.**  Except as otherwise provided for herein or ordered by the Bankruptcy Court, distributions under this Plan shall be made on a Periodic Distribution Date.

9.2    **No Interest On Disputed Claims.**  Unless otherwise specifically provided for in this Plan or as otherwise required by Section 506(b) of the Bankruptcy Code, postpetition interest shall not accrue or be paid on Claims or Interests, and no holder of a Claim or Interest shall be entitled to interest accruing on or after the Petition Date on any Claim or Interest.  Additionally, and without limiting the foregoing, unless otherwise specifically provided for in this Plan or as otherwise required by section 506(b) of the Bankruptcy Code, interest shall not accrue or be paid on any Disputed Claim in respect of the period from the Effective Date to the date a final distribution is made when and if such Disputed Claim becomes an Allowed Claim.

9.3    **Disbursing Agent.**  The Disbursing Agent shall make all distributions required under this Plan except with respect to any holder of a Claim whose Claim is governed by an agreement and is administered by a Servicer, which distributions shall be deposited with the appropriate Servicer, as applicable, who shall deliver such distributions to the holders of Claims in accordance with the provisions of this Plan and the terms of any governing agreement; provided, however, that if any such Servicer is unable to make such distributions, the Disbursing Agent, with the cooperation of such Servicer, shall make such distributions.

9.4    **Surrender Of Securities Or Instruments.**  On or before the Distribution Date, or as soon as practicable thereafter, each holder of an instrument evidencing a Claim (a "Certificate") shall surrender such Certificate to the Disbursing Agent, or, with respect to indebtedness that is governed by an agreement and administered by a Servicer, the respective Servicer, and such Certificate shall be cancelled solely with respect to the Debtors and such cancellation shall not alter the obligations or rights of any non-Debtor third parties vis-a-vis one another to such instruments; provided, however, that this Article 9.4 shall not apply to any Claims Reinstated pursuant to the terms of this Plan.  No distribution of property hereunder shall be made to or on behalf of any such holder unless and until such Certificate is received by the Disbursing Agent or the respective Servicer or the unavailability of such Certificate is reasonably established to the satisfaction of the Disbursing Agent or the respective Servicer.  Any holder who fails to surrender or cause to be surrendered such Certificate, or fails to execute and deliver an affidavit of loss and indemnity reasonably satisfactory to the Disbursing Agent or the respective Servicer prior to the second anniversary of the Effective Date, shall be deemed to have forfeited all rights and Claims in respect of such Certificate and shall not participate in any distribution hereunder, and all property in respect of such forfeited distribution, including any dividends or interest attributable

<div align="center">53</div>

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

thereto, shall revert to the Reorganized Debtors notwithstanding any federal or state escheat laws to the contrary.

9.5   **Services Of Indenture Trustees, Agents, And Servicers.**   The services, with respect to implementation of the distributions contemplated by this Plan, of Servicers under the relevant agreements that govern the rights of holders of Claims and Interests shall be as set forth elsewhere in this Plan.   The Reorganized Debtors shall reimburse any Servicer (including the Indenture Trustees) for reasonable and necessary services performed by it (including reasonable attorneys' fees and documented out-of-pocket expenses) in connection with the making of distributions under this Plan to holders of Allowed Claims, without the need for the filing of an application with the Bankruptcy Court or approval by the Bankruptcy Court.   To the extent that there are any disputes that the reviewing parties are unable to resolve with the Servicers, the reviewing parties shall report to the Bankruptcy Court as to whether there are any unresolved disputes regarding the reasonableness of the Servicers' (and their attorneys') fees and expenses. Any such unresolved disputes may be submitted to the Bankruptcy Court for resolution.

9.6   **Claims Administration Responsibility.**

(a)   **Reorganized Debtors.**   The Reorganized Debtors shall retain responsibility for administering, disputing, objecting to, compromising, or otherwise resolving all Claims against, and Interests in, the Debtors and making distributions (if any) with respect to all Claims and Interests, except as otherwise described in this Article IX.

(b)   **Filing Of Objections.**   Unless otherwise extended by the Bankruptcy Court, any objections to Claims and/or Interests shall be served and filed on or before the Claims/Interests Objection Deadline (or such later date as may be established by the Bankruptcy Court upon request of the Reorganized Debtors without further notice to parties-in-interest). Notwithstanding any authority to the contrary, an objection to a Claim or Interest shall be deemed properly served on the holder of the Claim or Interest if the Debtors or Reorganized Debtors effect service in any of the following manners:  (i) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004, (ii) to the extent counsel for a holder of a Claim or Interest is unknown, by first class mail, postage prepaid, on the signatory on the proof of claim or other representative identified on the proof of claim or any attachment thereto (or at the last known addresses of such holders of Claims if no proof of claim is filed or if the Debtors have been notified in writing of a change of address), or (iii) by first class mail, postage prepaid, on any counsel that has appeared on behalf of the holder of the Claim or Interest in the Chapter 11 Cases and has not withdrawn such appearance.

(c)   **Determination Of Claims.**   Any Claim determined and liquidated pursuant to (i) the ADR Procedures, (ii) an order of the Bankruptcy Court, or (iii) applicable non-bankruptcy law (which determination has not been stayed, reversed, or amended and as to which determination (or any revision, modification, or amendment thereof) the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for review or rehearing was filed or, if filed, remains pending) shall be deemed an Allowed Claim in such liquidated amount and satisfied in accordance with this Plan.   Nothing contained in this <u>Article 9.6</u> shall constitute or be deemed a waiver of any claim, right, or Cause of Action that the Debtors or

54

Reorganized Debtors may have against any Person in connection with or arising out of any Claim or Claims, including, without limitation, any rights under section 157(b) of title 28 of the United States Code.

(d)    **Claims Bar Date.**  Any Claim (whether a newly filed Claim or an amendment to a previously filed Claim) filed after the later of (i) the Effective Date, (ii) with respect to Claims for rejection damages, the bar date established pursuant to Article 8.3 of this Plan for the filing of such claims, (iii) with respect to Claims that are Administrative Claims, the bar date established pursuant to Articles 10.2 and 10.5 of this Plan, or (iv) with respect to Claims that are Prepetition Employee Related Obligations, the bar date established pursuant to Article 7.12(b) of this Plan, shall not be recognized, or recorded on the claims register, by the Claims Agent and shall be disallowed automatically without the need for any objection from the Debtors or the Reorganized Debtors unless such untimely filing is expressly authorized by an order of the Bankruptcy Court.  Nothing herein shall in any way alter, impair, or abridge the legal effect of the Bar Date Order, or the rights of the Debtors, the Reorganized Debtors, or other parties-in-interest to object to such Claims on the grounds that they are time barred or otherwise subject to disallowance or modification.

### 9.7    Delivery Of Distributions.

(a)    **Allowed Claims.**  Distributions to holders of Allowed Claims shall be made by the Disbursing Agent or the appropriate Servicer (a) at the addresses set forth on the proofs of claim filed by such holders of Claims (or at the last known addresses of such holders of Claims if no proof of claim is filed or if the Debtors have been notified in writing of a change of address), (b) at the addresses set forth in any written notices of address changes delivered to the Disbursing Agent after the date of any related proof of claim, (c) at the addresses reflected in the Schedules if no proof of claim has been filed and the Disbursing Agent has not received a written notice of a change of address, or (d) in the case of a holder of a Claim whose Claim is governed by an agreement and administered by a Servicer, at the addresses contained in the official records of such Servicer.

(b)    **Undeliverable Distributions.**  If any distribution to a holder of a Claim is returned as undeliverable, no further distributions to such holder of such Claim shall be made unless and until the Disbursing Agent or the appropriate Servicer is notified of the then-current address of such holder of the Claim, at which time all missed distributions shall be made to such holder of the Claim without interest. Amounts in respect of undeliverable distributions shall be returned to the Reorganized Debtors until such distributions are claimed. The Reorganized Debtors shall make reasonable efforts to locate holders of undeliverable distributions.  All claims for undeliverable distributions must be made on or before the later to occur of (i) the first anniversary of the Effective Date or (ii) six months after such holder's Claim becomes an Allowed Claim, after which date all unclaimed property shall revert to the Reorganized Debtors free of any restrictions thereon and the claim of any holder or successor to such holder with respect to such property shall be discharged and forever barred, notwithstanding federal or state escheat laws to the contrary.

55

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

### 9.8    Procedures For Treating And Resolving Disputed And Contingent Claims.

(a)    **No Distributions Pending Allowance.**  No payments or distributions shall be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by a Final Order of the Bankruptcy Court, and the Disputed Claim has become an Allowed Claim.  All objections to Claims must be filed on or before the Claims/Interests Objection Deadline.

(b)    **Distribution Reserves.**  The Reorganized Debtors or Disbursing Agent shall withhold the Distribution Reserves, if any, from the property to be distributed to particular classes under this Plan based upon the Face Amount of Disputed Claims.  The Reorganized Debtors or Disbursing Agent shall withhold such amounts or property as may be necessary from property to be distributed to such Classes of Claims under the Plan on a Pro Rata basis based upon the Face Amount of such Claims.  The Reorganized Debtors or Disbursing Agent shall also place in the applicable Distribution Reserve any dividends, payments, or other distributions made on account of, as well as any obligations arising from, the property withheld as the applicable Distribution Reserve, to the extent that such property continues to be withheld as the applicable Distribution Reserve at the time such distributions are made or such obligations arise.  Nothing in this Plan or the Disclosure Statement shall be deemed to entitle the holder of a Disputed Claim to postpetition interest on such Claim.

(i)    **Estimation Of Claims For Distribution Reserves.**  To the extent that any General Unsecured Claims remain Disputed Claims as of the ^ first Periodic Distribution Date for such Claims, the Debtors or Reorganized Debtors shall seek an order from the Bankruptcy Court establishing the amounts to be withheld as part of the Distribution Reserves.  Without limiting the foregoing, the Debtors or the Reorganized Debtors may at any time request that the Bankruptcy Court estimate any Disputed Claim, including any such Claim arising from the Debtors' or the Reorganized Debtors' rejection of an executory contract, pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtors have previously objected to such Claim, and the Bankruptcy Court shall retain jurisdiction to estimate any Disputed Claim at any time during litigation concerning any objection to any Disputed Claim, including during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any Disputed Claim, that estimated amount may, as determined by the Bankruptcy Court, constitute either (a) the Allowed amount of such Disputed Claim, (b) a maximum limitation on such Disputed Claim, or (c) in the event such Disputed Claim is estimated in connection with the estimation of other Claims within the same Class, a maximum limitation on the aggregate amount of Allowed Claims on account of such Disputed Claims so estimated; provided, however, that if the estimate constitutes the maximum limitation on a Disputed Claim, or on more than one such Claim within a Class of Claims, as applicable, the Debtors or the Reorganized Debtors may elect to pursue supplemental proceedings to object to any ultimate allowance of any such Disputed Claim.  All of the objection, estimation, settlement, and resolution procedures set forth in the Plan are cumulative and not necessarily exclusive of one another.   Disputed Claims may be

56

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

        **(c)    No Recourse To Debtors Or Reorganized Debtors.**  Any Disputed Claim that ultimately becomes an Allowed Claim shall be entitled to receive its applicable distribution under the Plan solely from the Distribution Reserve established on account of such Disputed Claim.  In no event shall any holder of a Disputed Claim have any recourse with respect to distributions made, or to be made, under the Plan to holders of such Claims to any Debtor or Reorganized Debtor on account of such Disputed Claim, regardless of whether such Disputed Claim shall ultimately become an Allowed Claim or regardless of whether sufficient Cash, or other property remains available for distribution in the Distribution Reserve established on account of such Disputed Claim at the time such Claim becomes entitled to receive a distribution under the Plan.

        **(d)    Distributions After Allowance.**  Payments and distributions from the Distribution Reserve to each respective holder of a Claim on account of a Disputed Claim, to the extent that it ultimately becomes an Allowed Claim, shall be made in accordance with provisions of this Plan that govern distributions to such holder of a Claim.  On the first Periodic Distribution Date following the date when a Disputed Claim becomes undisputed, noncontingent, and liquidated, the Disbursing Agent shall distribute to the holder of such Allowed Claim any proceeds from the General Unsecured MDA Distribution, or other property, from the Distribution Reserve that would have been distributed on the dates when distributions were previously made had such Allowed Claim been an Allowed Claim on such dates and shall not be limited by the Disputed Claim Amounts previously reserved with respect to such Disputed Claim to the extent that additional amounts are available therefor, but only to the extent that such additional amounts have not yet been distributed to holders of Allowed Claims.  Upon such distribution, the Distribution Reserve shall be reduced by an amount equal to the amount reserved with respect to such Disputed Claim.

        **(e)    De Minimis Distributions.**  Neither the Disbursing Agent nor any Servicer shall have any obligation to make a distribution on account of an Allowed Claim from any Distribution Reserve or otherwise if (i) the aggregate amount of all distributions authorized to be made from such Distribution Reserve or otherwise on the Periodic Distribution Date in question is or has a value less than $25,000; provided that the Reorganized Debtors shall make, or cause to be made, a distribution on a Periodic Distribution Date of less than $25,000 if the Debtors expect that such Periodic Distribution Date shall be the final Periodic Distribution Date or (ii) the amount to be distributed to the specific holder of the Allowed Claim on the particular Periodic Distribution Date does not both (x) constitute a final distribution to such holder and (y) have a value less than $50.00.

        **9.9    Section 510(b) Opt Out Claims.**  No Section 510(b) Opt Out Claim shall be an Allowed Claim unless and until such Claim has been allowed by Final Order of the Bankruptcy Court.  Any Section 510(b) Opt Out Claim that ultimately becomes an Allowed Claim shall be entitled to receive its applicable distribution that would have otherwise been distributed under the Plan solely from the applicable portion of the Securities Settlement.  In no event shall any holder of a Section 510(b) Opt Out Claim have any recourse with respect to distributions made,

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

or to be made, under the Securities Settlement to holders of such Claims or Interests to or against any Debtor or Reorganized Debtor on account of such Section 510(b) Opt Out Claim, regardless of whether such Claim shall ultimately become an Allowed Claim.

      **9.10    Allocation Of Plan Distributions Between Principal And Interest.**  To the extent that any Allowed Claim entitled to a distribution under this Plan is composed of indebtedness and accrued but unpaid interest thereon, such distribution shall, to the extent permitted by applicable law, be allocated for federal income tax purposes to the principal amount of the Claim first and then, to the extent the consideration exceeds the principal amount of the Claim, to the portion of such Claim representing accrued but unpaid interest.

<div align="center">

**ARTICLE X**

**ALLOWANCE AND PAYMENT OF CERTAIN ADMINISTRATIVE CLAIMS**

</div>

      **10.1    DIP Facility Claims.**^  Upon consummation of the ^ Master Disposition Agreement, all liens and security interests granted to secure the DIP Facility Revolver Claim, the DIP Facility First Priority Term Claim, and the DIP Facility Second Priority Term Claim shall be deemed discharged, cancelled, and released and shall be of no further force and effect.  To the extent that the DIP Lenders or the DIP Agent have filed or recorded publicly any liens and/or security interests to secure the Debtors' obligations under the DIP Facility, the DIP Lenders ^ or the DIP Agent, as the case may be, shall take any commercially reasonable steps requested by the Debtors, at the expense of the Reorganized Debtors, that are necessary to cancel and/or extinguish such publicly-filed liens and/or security interests.

      **10.2    Pre-Confirmation Administrative Claim Procedures**.  Pursuant to the Modification Procedures Order, all requests for payment of an Administrative Claim through June 1, 2009 (other than claims under the DIP Facility or as set forth in the Modification Procedures Order, Article 10.1, or Article 10.3 of this Plan) must be filed with the Claims Agent and served on counsel for the Debtors and the Statutory Committees no later than the July 15, 2009.  Any request for payment of an Administrative Claim pursuant to this Article 10.2 that is not timely filed and served shall be disallowed automatically without the need for any objection from the Debtors or the Reorganized Debtors.  The Debtors or the Reorganized Debtors may settle an Administrative Claim request made pursuant to this Article 10.2 without further Bankruptcy Court approval. Unless the Debtors or the Reorganized Debtors object to an Administrative Claim within 180 days after the Administrative Claims Bar Date (unless such objection period is extended by the Bankruptcy Court), such Administrative Claim shall be deemed allowed in the amount requested. In the event that the Debtors or the Reorganized Debtors object to an Administrative Claim, the Bankruptcy Court shall determine the allowed amount of such Administrative Claim.

      **10.3    Professional Claims.**

        **(a)    Final Fee Applications.**    All final requests for payment of Professional Claims and requests for reimbursement of expenses of members of the Statutory Committees must be filed no later than the last day of the second full month after the Effective Date.  After notice and a hearing in accordance with the procedures established by the Bankruptcy

<div align="center">58</div>

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

Code and prior orders of the Bankruptcy Court, the allowed amounts of such Professional Claims and expenses shall be determined by the Bankruptcy Court.

**(b)    Payment Of Interim Amounts.**    Subject to the Holdback Amount, on the Effective Date, the Debtors or the Reorganized Debtors shall pay all amounts owing to Professionals and members of the Statutory Committees for all outstanding amounts payable relating to prior periods through the Modification Approval Order Date.  To receive payment on the Effective Date for unbilled fees and expenses incurred through the Modification Approval Date, the Professionals shall estimate fees and expenses due for periods that have not been billed as of the Modification Approval Date and shall deliver such estimate to the Debtors, counsel for the Creditors' Committee, and the United States Trustee for the Southern District of New York. Within 45 days after the Effective Date, a Professional receiving payment for the estimated period shall submit a detailed invoice covering such period in the manner and providing the detail as set forth in the Professional Fee Order or the Ordinary Course Professional Order, as applicable. Should the estimated payment received by any Professional exceed the actual fees and expenses for such period, this excess amount shall be credited against the Holdback Amount for such Professional or, if the award of the Holdback Amount for such matter is insufficient, disgorged by such Professional.

**(c)    Holdback Amount.**    On the Effective Date, the Debtors or the Reorganized Debtors shall fund the Holdback Escrow Account with Cash equal to the aggregate Holdback Amount for all Professionals.  The Disbursing Agent shall maintain the Holdback Escrow Account in trust for the Professionals with respect to whom fees have been held back pursuant to the Professional Fee Order.  Such funds shall not be considered property of the Debtors the Reorganized Debtors, or the Estates.  The remaining amount of Professional Claims owing to the Professionals shall be paid to such Professionals by the Disbursing Agent from the Holdback Escrow Account when such claims are finally allowed by the Bankruptcy Court.  When all Professional Claims have been paid in full, amounts remaining in the Holdback Escrow Account, if any, shall be paid to the Reorganized Debtors.

**(d)    Post-Confirmation Date Retention.**    Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtors shall employ and pay Professionals in the ordinary course of business.

**10.4    Substantial Contribution Compensation And Expenses Bar Date.**    Any Person (including the Indenture Trustees) who requests compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to sections 503(b)(3), (4), and (5) of the Bankruptcy Code shall file an application with the clerk of the Bankruptcy Court on or before the 45th day after the Effective Date (the "503 Deadline"), and serve such application on counsel for the Debtors, the Creditors' Committee, the United States Trustee for the Southern District of New York, and such other parties as may be decided by the Bankruptcy Court and the Bankruptcy Code on or before the 503 Deadline, or be forever barred from seeking such compensation or expense reimbursement.

59

**10.5    Other Administrative Claims.**  All other requests for payment of an Administrative Claim (other than ~~claims under the DIP Facility or~~ as set forth in Article 10.1, Article 10.2, Article 10.3, or Article 10.4 of this Plan) must be filed, in substantially the form of the Administrative Claim Request Form attached hereto as Exhibit 10.5, with the Claims Agent and served on counsel for the Debtors and the Creditors' Committee no later than 30 days after the Effective Date.  Any request for payment of an Administrative Claim pursuant to this Article 10.5 that is not timely filed and served shall be disallowed automatically without the need for any objection from the Debtors or the Reorganized Debtors.  The Debtors or the Reorganized Debtors may settle an Administrative Claim without further Bankruptcy Court approval.  Unless the Debtors or the Reorganized Debtors object to an Administrative Claim within 180 days after the Administrative Claims Bar Date (unless such objection period is extended by the Bankruptcy Court), such Administrative Claim shall be deemed allowed in the amount requested.  In the event that the Debtors or the Reorganized Debtors object to an Administrative Claim, the Bankruptcy Court shall determine the allowed amount of such Administrative Claim.

## ARTICLE XI

## EFFECT OF THE PLAN ON CLAIMS AND INTERESTS

**11.1    Revesting Of Assets.**  Except as otherwise explicitly provided in this Plan, on the Effective Date, all property comprising the Estates (including Retained Actions and Retained Assets, but excluding property that has been abandoned pursuant to an order of the Bankruptcy Court or are the subject of any of the Disposition Transactions) shall revest in each of the Reorganized Debtors which, as Debtors, owned such property or interest in property as of the Effective Date, free and clear of all Claims, liens, charges, encumbrances, rights, and Interests of creditors and equity security holders.  As of and following the Effective Date, the Reorganized Debtors may operate their businesses and use, acquire, and dispose of property and settle and compromise Claims or Interests without supervision of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by this Plan, the Confirmation Order, and the Modification Approval Order.

**11.2    Discharge Of The Debtors.**  Pursuant to section 1141(d) of the Bankruptcy Code, except as otherwise specifically provided in this Plan ^ , Confirmation Order, or Modification Approval Order, the distributions and rights that are provided in this Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims and Causes of Action, whether known or unknown, against, liabilities of, liens on, obligations of, rights against, and Interests in the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to this Plan on account of such Claims, rights, and Interests, including, but not limited to, Claims and Interests that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims relate to services performed by employees of the Debtors prior to the Petition Date and that arise from a termination of employment or a termination of any employee or retiree benefit program, regardless of whether such termination occurred prior to or after the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not (a) a proof of claim or interest based upon such Claim, debt, right, or Interest is filed or deemed filed under section 501 of the Bankruptcy Code, (b) a Claim or Interest based upon such Claim, debt, right, or Interest is allowed under section 502 of the Bankruptcy Code, or (c) the

60

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

holder of such a Claim, right, or Interest accepted this Plan. The Confirmation Order shall be a judicial determination of the discharge of all Claims against and Interests in the Debtors, subject to the occurrence of the Effective Date.

**11.3   Compromises And Settlements.** In accordance with <u>Article 9.6</u> of this Plan, pursuant to Bankruptcy Rule 9019(a), the Debtors may compromise and settle various (a) Claims against, or Interests in, the Debtors and (b) Causes of Action that the Debtors have against other Persons up to and including the Effective Date. After the Effective Date, any such right shall pass to the Reorganized Debtors as contemplated in <u>Article 11.1</u> of this Plan, without the need for further approval of the Bankruptcy Court.

**11.4   Release By Debtors Of Certain Parties. Pursuant to section 1123(b)(3) of the Bankruptcy Code, but subject to <u>Article 11.13</u> of this Plan, effective as of the Effective Date (and with respect to the DIP Lenders, the DIP Agent, and the members of the DIP Steering Committee, upon the consummation of the DIP ^ <u>Transfer</u>, which shall be deemed to occur on the Effective Date), each Debtor, in its individual capacity and as a debtor-in-possession for and on behalf of its Estate, shall release and discharge and be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged all Released Parties for and from any and all claims or Causes of Action existing as of the Effective Date in any manner arising from, based on, or relating to, in whole or in part, the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, or any act, omission, occurrence, or event in any manner related to any such Claims, Interests, restructuring, or the Chapter 11 Cases. The Reorganized Debtors, including Reorganized DPH Holdings, and any newly-formed entities that will be continuing the Debtors' businesses after the Effective Date shall be bound, to the same extent the Debtors are bound, by the releases and discharges set forth above. Notwithstanding the foregoing, nothing in this Plan shall be deemed to release (i) any of the Debtors or GM from their obligations under the Delphi-GM Definitive Documents or the transactions contemplated thereby, except to the extent set forth in the Master Disposition Agreement, (ii) any of the Debtors, the Unions, or GM from their obligations under the Union Settlement Agreements or the transactions contemplated thereby, (iii) any of the Buyers from their obligations under the Master Disposition Agreement, or (iii) any of the Debtors or the Plan Investors or their affiliates from their obligations under the Investment Agreement or the transactions contemplated thereby.**

**11.5   Release By Holders Of Claims And Interests . On the Effective Date, (a) each Person who votes to accept this Plan and (b) to the fullest extent permissible under applicable law, as such law may be extended or interpreted subsequent to the Effective Date, each entity (other than a Debtor) which has held, holds, or may hold a Claim against or Interest in the Debtors, in consideration for the obligations of the Debtors and the Reorganized Debtors under this Plan and Cash, General Unsecured MDA Distribution, and other contracts, instruments, releases, agreements, or documents to be delivered in connection with this Plan (each, a "Release Obligor"), shall have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged all Released Parties for and from any claim or Cause of Action existing as of the Effective Date in any manner arising from, based on, or relating to, in whole or in part, the Debtors, the subject matter of,**

61

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

or the transaction or event giving rise to, the claim of such Release Obligor, the business or contractual arrangements between any Debtor and Release Obligor or any Released Party, the restructuring of the claim prior to the Chapter 11 Cases, or any act, omission, occurrence, or event in any manner related to such subject matter, transaction, obligation, restructuring, or the Chapter 11 Cases, including, but not limited to, any claim relating to, or arising out of the Debtors' Chapter 11 Cases, the negotiation and filing of this Plan, the filing of the Chapter 11 Cases, the formulation, preparation, negotiation, dissemination, filing, implementation, administration, confirmation, or consummation of this Plan, the Disclosure Statement, the Plan Exhibits, the Delphi-PBGC Settlement Agreement, the Credit Bid, the Master Disposition Agreement, the ^ Union Settlement Agreements, any employee benefit plan, instrument, release, or other agreement or document created, modified, amended or entered into in connection with either this Plan or any other agreement with the Unions, including but not limited to the Union Settlement Agreements, or any other act taken or not taken consistent with the Union Settlement Agreements in connection with the Chapter 11 cases; provided, however, that (A) this Article 11.5 is subject to and limited by Article 11.13 of this Plan and (B) this Article 11.5 shall not release any Released Party from any Cause of Action held by a governmental entity existing as of the Effective Date based on (i) the Internal Revenue Code or other domestic state, city, or municipal tax code, (ii) the environmental laws of the United States or any domestic state, city, or municipality, (iii) any criminal laws of the United States or any domestic state, city, or municipality, (iv) the Exchange Act, the Securities Act, or other securities laws of the United States or any domestic state, city, or municipality, (v) the Employee Retirement Income Security Act of 1974, as amended, or (vi) the laws and regulations of the Bureau of Customs and Border Protection of the United States Department of Homeland Security. Notwithstanding the foregoing, all releases given by GM to (i) the Debtors and the Debtors' Affiliates shall be as set forth in the Delphi-GM Global Settlement Agreement and (ii) the Unions shall be as set forth in the Union Settlement Agreements.

11.6    Release By Unions. The releases provided for in (i) Section K.3 of the UAW-Delphi-GM Memorandum of Understanding, (ii) Section H.3 of the IUE-CWA-Delphi-GM Memorandum of Understanding, (iii) Section G.3 of the USW Memoranda of Understanding, (iv) Section F.3 of the IUOE Local 18S Memorandum of Understanding and IUOE Local 832S Memorandum of Understanding and Section E.3 of the IUOE Local 101S Memorandum of Understanding, (v) Section F.3 of the IBEW E&S Memorandum of Understanding and the IBEW Powertrain Memorandum of Understanding, and (vi) Section F.3 of the IAM Memorandum of Understanding are incorporated by reference herein in their entirety.

11.7    Release Of GM By Debtors And Third Parties. On the Effective Date, GM and the other GM-Related Parties (as defined in the Delphi-GM Global Settlement Agreement) shall receive all releases provided for in Section 4.01 of the Delphi-GM Global Settlement Agreement, which provisions are incorporated by reference herein in their entirety.

11.8    ^ Release of GMCo. By Debtors And Third Parties. On the Effective Date, GMCo. shall receive the same releases provided for GM-Related Parties (as defined in the Delphi-GM Global Settlement Agreement) in Section 4.01 of the Delphi-GM Global Settlement Agreement as though it were a party thereto, which provisions are incorporated

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

by reference herein in their entirety; provided, however, that for purposes of Section 4.02 of the Delphi-GM Global Settlement Agreement, GMCo. shall grant to the Debtors the same releases provided by GM and the GM-Related Parties (as defined in the Delphi-GM Global Settlement Agreement).

**11.9   Setoffs.** Subject to Article 11.13 of this Plan, the Debtors or the Reorganized Debtors, as applicable, may, but shall not be required to, set off against any Claim, and the payments or other distributions to be made pursuant to this Plan in respect of such Claim, claims of any nature whatsoever that the Debtors or the Reorganized Debtors, as applicable, may have against such holder of such Claim, but neither the making of such setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors or the Reorganized Debtors of any such claim that the Debtors or the Reorganized Debtors may have against such holder of such Claim.

**11.10   Subordination Rights.**^

(a)   All Claims against the Debtors and all rights and claims between or among holders of Claims relating in any manner whatsoever to distributions on account of Claims against or Interests in the Debtors, based upon any claimed subordination rights, whether asserted or unasserted, legal or equitable, shall be deemed satisfied by the distributions under the Plan to holders of Claims having such subordination rights, and such subordination rights shall be deemed waived, released, discharged, and terminated as of the Effective Date; provided, further, that the subordination rights of Senior Debt (as such term is defined in the Subordinated Notes Indenture) shall be deemed satisfied through the distributions described in Article 5.4, and that as a result of the satisfaction of the subordination provisions of the Subordinated Notes Indenture, the holders of TOPrS Claims shall not receive a distribution under this Plan.  Except as otherwise specifically provided for in the Plan, distributions to the various Classes of Claims hereunder shall not be subject to levy, garnishment, attachment, or like legal process by any holder of a Claim by reason of any subordination rights or otherwise, so that each holder of a Claim shall have and receive the benefit of the distributions in the manner set forth in the Plan.

(b)   Except as otherwise provided in the Plan (including any Plan Exhibits), the Confirmation Order, or the Modification Approval Order the right of any of the Debtors or Reorganized Debtors to seek subordination of any Claim or Interest pursuant to section 510 of the Bankruptcy Code is fully reserved, and the treatment afforded any Claim or Interest that becomes a subordinated Claim or Interest at any time shall be modified to reflect such subordination.  Unless the Plan (including Plan Exhibits), the Confirmation Order, or the Modification Approval Order, otherwise provide, no distributions shall be made on account of a Claim subordinated pursuant to this Article 11.10(b) unless ordered by the Bankruptcy Court.

**11.11   Exculpation And Limitation Of Liability. Subject to Article 11.13 of this Plan, the Debtors, the Reorganized Debtors, the Statutory Committees, the members of the Statutory Committees in their capacities as such, the UAW, the IUE-CWA, the USW, the IAM, the IBEW, the IUOE, the DIP Agent, the DIP Lenders in their capacities as such, GM, GMCo., Parnassus Holdings II, LLC, Platinum Equity Capital Partners II, L.P., the Indenture Trustees in their capacities as such, and any of such parties' respective current or former members, officers, directors, committee members, affiliates, employees, advisors,**

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

attorneys, representatives, accountants, financial advisors, consultants, investment bankers, or agents, and any of such parties' successors and assigns, shall not have or incur, and are hereby released from, any claim, obligation, Cause of Action, or liability to any party, or any of its agents, employees, representatives, current or former members, financial advisors, attorneys or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of the Debtors' Chapter 11 Cases, the negotiation and filing of this Plan, the filing of the Chapter 11 Cases, the formulation, preparation, negotiation, dissemination, filing, implementation, administration, confirmation or consummation of this Plan, the Disclosure Statement, the Credit Bid, the Plan Exhibits, the Delphi-GM Definitive Documents, the Delphi-PBGC Settlement Agreement, the Master Disposition Agreement, the ^ Union Settlement Agreements, any employee benefit plan, instrument, release or other agreement or document created, modified, amended or entered into in connection with either this Plan or any agreement with the Unions, including but not limited to the Union Settlement Agreements, or any other act taken or not taken consistent with the Union Settlement Agreements in connection with the Chapter 11 Cases, except for their willful misconduct and gross negligence and except with respect to obligations arising under confidentiality agreements, joint interest agreements, and protective orders entered during the Chapter 11 Cases, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under this Plan.  Other than as provided for in this Article and in **Article 11.13**, no party or its agents, employees, representatives, current or former members, financial advisors, attorneys, or affiliates, and no successors or assigns of the foregoing, shall have any right of action against the parties listed in this Article for any act or omission in connection with, relating to, or arising out of the Chapter 11 Cases, the formulation, preparation, negotiation, dissemination, filing, implementation, administration, confirmation or consummation of this Plan, the Disclosure Statement, the Delphi-GM Definitive Documents, the Delphi-PBGC Settlement Agreement, the Credit Bid, the Master Disposition Agreement, the ^ Union Settlement Agreements, any employee benefit plan, instrument, release or other agreement or document created, modified, amended or entered into in connection with either this Plan or any agreement with the Unions, including but not limited to the Union Settlement Agreements, or any other act taken or not taken consistent with the Union Settlement Agreements in connection with the Chapter 11 Cases.  For the avoidance of doubt, the exculpatory provisions of this Article, which apply to postpetition conduct, are not intended, nor shall they be construed, to bar any governmental unit from pursuing any police or regulatory action.  Moreover, nothing in this Plan shall be deemed to release (i) any of the Debtors or GM from their obligations under the Delphi-GM Definitive Documents or the transactions contemplated thereby, (ii) any of the Debtors, the Unions, or GM from their obligations under the Union Settlement Agreements or the transactions contemplated thereby, (iii) any of the Debtors or the Buyers from their obligations under the Disposition Agreements, (iv) any of the Debtors or the Plan Investors or their affiliates from their obligations under the Investment Agreement or the transactions contemplated thereby, or (v) any of the Debtors from their obligations under this Plan or the transactions contemplated thereby.

    **11.12   Indemnification Obligations.**  Subject to Article 11.13 of this Plan, in satisfaction and compromise of the Indemnitees' Indemnification Rights: (a) all Indemnification Rights shall be released and discharged on and as of the Effective Date except for Continuing Indemnification Rights (which shall remain in full force and effect to the fullest extent allowed by law or contract on and after the Effective Date and shall not be modified, reduced, discharged, or

64

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

otherwise affected in any way by the Chapter 11 Cases); (b) the Debtors or the Reorganized Debtors, as the case may be, shall maintain directors' and officers' insurance providing coverage for those Indemnitees currently covered by such policies for the remaining term of such policy and shall maintain tail coverage under policies in existence as of the Effective Date for a period of six years after the Effective Date, to the fullest extent permitted by such provisions, in each case insuring such parties in respect of any claims, demands, suits, Causes of Action, or proceedings against such Persons based upon any act or omission related to such Person's service with, for, or on behalf of the Debtors in at least the scope and amount as currently maintained by the Debtors (the "Insurance Coverage") and hereby further indemnify such Indemnitees without Continuing Indemnification Rights solely to pay for any deductible or retention amount that may be payable in connection with any claim covered under either the foregoing Insurance Coverage or any prior similar policy in an aggregate amount not to exceed $10 million; (c) the insurers who issue the Insurance Coverage shall be authorized to pay any professional fees and expenses incurred in connection with any action relating to any Indemnification Rights and Continuing Indemnification Rights; and (d) the Debtors or the Reorganized Debtors, as the case may be, shall indemnify Indemnitees with Continuing Indemnification Rights and agree to pay for any deductible or retention amount that may be payable in connection with any claim covered under either the foregoing Insurance Coverage or any prior similar policy.  Notwithstanding subclause (a) above, pursuant to the Stipulation and Agreement of Insurance Settlement (the "Insurance Stipulation") the Delphi Officers' and Directors' (as defined in the Insurance Stipulation) indemnification claims related to the MDL Actions and related government investigations and proceedings have been estimated at $0 for all purposes in these cases, and the Delphi Officers and Directors have released all such indemnification claims against Delphi, subject to the Delphi Officers' and Directors' right to assert an indemnification claim against Delphi for legal fees and expenses incurred in the defense of unsuccessful claims asserted as a defense or set-off by Delphi against the Delphi Officers and Directors related to the MDL Actions or related government investigations and proceedings, all as more particularly set forth in the Insurance Stipulation.

     **11.13   Exclusions And Limitations On Exculpation, Indemnification, And Releases.**  Notwithstanding anything in this Plan to the contrary, no provision of this Plan, the Confirmation Order, or the Modification Approval Order, including, without limitation, any exculpation, indemnification, or release provision, shall modify, release, or otherwise limit the liability of any Person not specifically released hereunder, including, without limitation, any Person who is a co-obligor or joint tortfeasor of a Released Party or who is otherwise liable under theories of vicarious or other derivative liability.

     **11.14   Injunction.  Subject to <u>Article 11.13</u> of this Plan, ^ the satisfaction, release, and discharge pursuant to this <u>Article XI</u> shall act as an injunction against any Person commencing or continuing any action, employment of process, or act to collect, offset, or recover any Claim, Interest, or Cause of Action satisfied, released, or discharged under this Plan to the fullest extent authorized or provided by the Bankruptcy Code, including, without limitation, to the extent provided for or authorized by sections 524 and 1141 thereof.**

<div align="center">

**ARTICLE XII**

**<u>CONDITIONS PRECEDENT</u>**

</div>

**12.1    Confirmation.**  The Confirmation Order was entered on January 25, 2008, and became a final order on February 4, 2008.

**12.2    Conditions To The Effective Date Of The Plan.**  The following are conditions precedent to the occurrence of the Effective Date, each of which may be satisfied or waived in accordance with Article 12.3 of this Plan:

**(a)**    The Bankruptcy Court shall have entered one or more orders, in form and substance acceptable to the Debtors, granting relief under section 1127 of the Bankruptcy Code with respect to modifications of the Plan.

**(b)**    The Debtors or the Reorganized Debtors, as the case may be, shall have entered into the Master Disposition Agreement, and all conditions precedent to the consummation of the Master Disposition Agreement shall have been waived or satisfied in accordance with the terms thereof.

^ **(c)** ^ The Debtors or the Reorganized Debtors, as the case may be, shall have entered into the Delphi-PBGC Settlement Agreement and all conditions precedent to the consummation thereof shall have been waived or satisfied in accordance with the terms thereof.

^ **(d)** The Bankruptcy Court shall have entered one or more orders, which may include the Modification Approval Order, authorizing the assumption and rejection of unexpired leases and executory contracts by the Debtors as contemplated by Article 8.1 of this Plan.

^ **(e)** Each Exhibit, document, or agreement to be executed in connection with this Plan shall be in form and substance reasonably acceptable to the Debtors.

**12.3    Waiver Of Conditions Precedent.**  The conditions set forth in 12.2(^ d) and 12.2(^ e) of this Plan may be waived, in whole or in part, by the Debtors without any notice to any other parties-in-interest or the Bankruptcy Court and without a hearing. The failure to satisfy or waive any condition to the Confirmation Date or the Effective Date may be asserted by the Debtors in their sole discretion regardless of the circumstances giving rise to the failure of such condition to be satisfied (including any action or inaction by the Debtors in their sole discretion). The failure of the Debtors to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right, which may be asserted at any time.

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

# ARTICLE XIII

## RETENTION OF JURISDICTION

Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, the Bankruptcy Court shall have exclusive jurisdiction of all matters arising out of, and related to, the Chapter 11 Cases and this Plan, including, among others, the following matters:

(a)    to hear and determine motions for (i) the assumption or rejection or (ii) the assumption and assignment of executory contracts or unexpired leases to which any of the Debtors are a party or with respect to which any of the Debtors may be liable, and to hear and determine the allowance of Claims resulting therefrom including the amount of Cure, if any, required to be paid;

(b)    to adjudicate any and all adversary proceedings, applications, and contested matters that may be commenced or maintained pursuant to the Chapter 11 Cases, this Plan, or that were the subject of proceedings before the Bankruptcy Court prior to the Effective Date, proceedings to adjudicate the allowance of Disputed Claims and Disputed Interests, and all controversies and issues arising from or relating to any of the foregoing;

(c)    to adjudicate any and all disputes arising from or relating to the distribution or retention of the General Unsecured MDA Distributions, or other consideration under this Plan;

(d)    to ensure that distributions to holders of Allowed Claims are accomplished as provided herein;

(e)    to hear and determine any and all objections to the allowance or estimation of Claims or Interests filed, both before and after the Confirmation Date, including any objections to the classification of any Claim or Interest, and to allow or disallow any Claim or Interest, in whole or in part;

(f)    to enter and implement such orders as may be appropriate if the Confirmation Order is for any reason stayed, revoked, modified, and/or vacated;

(g)    to issue orders in aid of execution, implementation, or consummation of this Plan;

(h)    to consider any modifications of this Plan, to cure any defect or omission, or to reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order or Modification Approval Order;

67

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

**(i)**    to hear and determine all applications for allowance of compensation and reimbursement of Professional Claims under this Plan or under sections 330, 331, 503(b), 1103, and 1129(a)(4) of the Bankruptcy Code;

**(j)**    to determine requests for the payment of Claims entitled to priority under section 507(a)(1) of the Bankruptcy Code, including compensation and reimbursement of expenses of parties entitled thereto;

**(k)**    to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan the Confirmation Order, or the Modification Approval Order, including disputes arising under agreements, documents, or instruments executed in connection with this Plan; provided that retention of jurisdiction as to disputes involving GM or GMCo. shall be as set forth in Article XIII (u);

**(l)**    to hear and determine all suits or adversary proceedings to recover assets of any of the Debtors and property of their Estates, wherever located;

**(m)**    to hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

**(n)**    to resolve any matters relating to the pre- and post-confirmation sales of the Debtors' assets;

**(o)**    to hear any other matter not inconsistent with the Bankruptcy Code;

**(p)**    to hear and determine all disputes involving the existence, nature or scope of the Debtors' discharge, including any dispute relating to any liability arising out of the termination of employment or the termination of any employee or retiree benefit program, regardless of whether such termination occurred prior to or after the Effective Date;

**(q)**    to enter a final decree closing the Chapter 11 Cases;

**(r)**    to enforce all orders previously entered by the Bankruptcy Court;

**(s)**    to hear and determine all matters relating to any Section 510(b) Note Claim, Section 510(b) Equity Claim, or Section 510(b) ERISA Claim;

**(t)**    to hear and determine all matters arising in connection with the interpretation, implementation, or enforcement of the Investment Agreement;

68

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

**(u)**    to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Delphi-GM Definitive Documents^ and the Master Disposition Agreement, except as provided in such documents; and

**(v)**    to hear and determine all matters relating to the Contingent PBGC Secured Claims or the Delphi-PBGC Settlement Agreement.

Notwithstanding anything contained herein to the contrary, the Bankruptcy Court shall retain exclusive jurisdiction to adjudicate and to hear and determine disputes concerning Retained Actions and any motions to compromise or settle such disputes or Retained Actions. Despite the foregoing, if the Bankruptcy Court is determined not to have jurisdiction with respect to the foregoing, or if the Reorganized Debtors choose to pursue any Retained Actions in another court of competent jurisdiction, the Reorganized Debtors shall have authority to bring such action in any other court of competent jurisdiction.

## ARTICLE XIV

## MISCELLANEOUS PROVISIONS

**14.1    Binding Effect**.  Upon the Effective Date, this Plan shall be binding upon and inure to the benefit of the Debtors, the Reorganized Debtors, all current and former holders of Claims, all current and former holders of Interests, and all other parties-in-interest and their respective heirs, successors, and assigns.

**14.2    Payment Of Statutory Fees**.  All fees payable pursuant to section 1930 of title 28 of the United States Code, as of the entry of the Confirmation Order as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid on the Effective Date.  The Reorganized Debtors shall continue to pay fees pursuant to section 1930 of title 28 of the United States Code until the Chapter 11 Cases are closed.

**14.3    Modification And Amendments**.  The Debtors may alter, amend, or modify this Plan under section 1127(a) of the Bankruptcy Code at any time prior to the Confirmation Hearing.  The Debtors may alter, amend, or modify any Exhibits to this Plan under section 1127(a) of the Bankruptcy Code at any time prior to the Confirmation Date.  After the Confirmation Date and prior to substantial consummation of this Plan with respect to any Debtor as defined in section 1101(2) of the Bankruptcy Code, any Debtor may, under section 1127(b) of the Bankruptcy Code, institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in this Plan, the Disclosure Statement, or the Confirmation Order, and such matters as may be necessary to carry out the purposes and effects of this Plan.

**14.4    Reserved.**

**14.5    Withholding And Reporting Requirements**.  In connection with this Plan and all instruments issued in connection therewith and distributions thereunder, the Debtors shall comply with all withholding and reporting requirements imposed by any federal, state, local, or

69

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

foreign taxing authority, and all distributions hereunder shall be subject to any such withholding and reporting requirements.

**14.6    Committees.**  Effective on the Effective Date, the Creditors' Committee shall dissolve automatically, whereupon their members, professionals, and agents shall be released from any further duties and responsibilities in the Chapter 11 Cases and under the Bankruptcy Code, _provided_ that obligations arising under confidentiality agreements, joint interest agreements, and protective orders entered during the Chapter 11 Cases shall remain in full force and effect according to their terms. The Statutory Committees may make applications for Professional Claims and members of the Statutory Committees may make requests for compensation and reimbursement of expenses pursuant to section 503(b) of the Bankruptcy Code for making a substantial contribution in any of the Chapter 11 Cases.  The Professionals retained by the Creditors' Committee and the respective members thereof shall not be entitled to compensation and reimbursement of expenses for services rendered after the Effective Date, except for services rendered in connection with challenges to any order confirming the Plan or any applications for allowance of compensation and reimbursement of expenses pending on the Effective Date or filed after the Effective Date and for the other duties and responsibilities of the Statutory Committees set forth in this Section and other services as may be requested by, the Debtors and the Reorganized Debtors shall pay the fees and expenses in respect of such services in the ordinary course of business without further order of the Bankruptcy Court.  This Section shall apply for all purposes and to all Debtors and their respective Estates under the Plan.

**14.7    Revocation, Withdrawal, Or Non-Consummation.**

   **(a)    Right to revoke or withdraw.**  Each of the Debtors reserves the right to revoke or withdraw this Plan with respect to such Debtor at any time prior to the Effective Date.

   **(b)    Effect of withdrawal, revocation, or non-consummation.**  If any of the Debtors revokes or withdraws this Plan as to such Debtor prior to the Effective Date, or if the Confirmation Date or the Effective Date does not occur, then this Plan, any settlement or compromise embodied in this Plan with respect to such Debtor or Debtors (including the fixing or limiting to an amount certain any Claim or Class of Claims with respect to such Debtor or Debtors, the effect of substantive consolidation for purposes under this Plan, or the allocation of the distributions to be made hereunder), the assumption or rejection of executory contracts or leases effected by this Plan with respect to such Debtor or Debtors, and any document or agreement executed pursuant to this Plan with respect to such Debtor or Debtors shall be null and void as to such Debtor or Debtors.  In such event, nothing contained herein or in the Disclosure Statement, and no acts taken in preparation for consummation of this Plan, shall be deemed to constitute a waiver or release of any Claims by or against such Debtor or Debtors or any other Person, to prejudice in any manner the rights of any such Debtor or Debtors, the holder of a Claim or Interest, or any Person in any further proceedings involving such Debtor or Debtors or to constitute an admission of any sort by the Debtors or any other Person.

   **14.8    Notices.**  Any notice required or permitted to be provided to the Debtors, Creditors' Committee, GM, GMCo., and ^ Company Buyer shall be in writing and served by (a) certified mail, return receipt requested, (b) hand delivery, or (c) overnight delivery service, to be addressed as follows:

70

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

**If to the Debtors:**

Delphi Corporation
5725 Delphi Drive
Troy, Michigan 48098
Att'n:   David M. Sherbin
       General Counsel

with a copy to:

Skadden, Arps, Slate, Meagher &
  Flom LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois  60606
Att'n:   John Wm. Butler, Jr.
       Ron E. Meisler

– and –

Skadden, Arps, Slate, Meagher &
  Flom LLP
Four Times Square
New York, New York 10036
Att'n:   Kayalyn A. Marafioti

**If to the Creditors' Committee:**

Latham & Watkins LLP
885 Third Avenue, Suite 1000
New York, New York 10022-4834
Att'n:   Robert J. Rosenberg
       Mitchell A. Seider
       Mark A. Broude

**If to ^ <u>GM or GMCo.</u>:**

General Motors Corporation
300 GM Renaissance Center
Detroit, Michigan 48265
Attn:  General Counsel

with a copy to:

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York  10153
Att'n:  Jeffrey L. Tanenbaum
            Robert J. Lemons

**If to ^ Company Buyer:**

^ DIP Holdco 3, LLC
^ c/o Elliott Management Corporation
712 Fifth Avenue
New York, New York ^ 10019

With a copy to:

Silver Point Capital, L.P.
Two Greenwich Plaza
Greenwich, Connecticut 06830
Attn:^  Michael Gatto
^
 With a copy to:

Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, New York 10019
Attn:  Marc A. Abrams
            Maurice M. Lefkort

and

Dechert LLP
1095 Avenue of the Americas
New York, New York 10036
Attn:   Glenn E. Siegel
            Charles I. Weissman
            Scott M. Zimmerman

**14.9    Term Of Injunctions Or Stays**.  Unless otherwise provided herein or in the Confirmation Order or the Modification Approval Order, all injunctions or stays provided for in the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code or otherwise, and extant on the Confirmation Date or the Modification Approval Date, shall remain in full force and effect until the Effective Date.

**14.10    Governing Law**.  Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York shall govern the construction and implementation of this Plan, any agreements, documents, and instruments executed in connection with this Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreements shall

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

control).  Corporate governance matters shall be governed by the laws of the state of incorporation of the applicable Debtor.

   **14.11  No Waiver Or Estoppel**.  Upon the Effective Date, each holder of a Claim or Interest shall be deemed to have waived any right to assert that its Claim or Interest should be Allowed in a certain amount, in a certain priority, be secured, or not be subordinated by virtue of an agreement made with the Debtors and/or their counsel, the Creditors' Committee and/or its counsel, the Equity Committee and/or its counsel, or any other party, if such agreement was not disclosed in this Plan, the Disclosure Statement, or papers filed with the Bankruptcy Court.

   **14.12  Conflicts**.  In the event that the provisions of the Disclosure Statement and the provisions of the Plan conflict, the terms of this Plan shall govern.

Dated:  December 10, 2007

As Modified: January 25, 2008
     June 16, 2009
     July 30, 2009
     Troy, Michigan

            DELPHI CORPORATION AND THE AFFILIATE
            DEBTORS


           By:__/s/ John D. Sheehan_____
            John D. Sheehan
            Vice President, Chief Financial Officer

**Exhibit B**

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
151 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr.
Ron E. Meisler

         - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - -  x
                                                       :
        In re                                          :    Chapter 11
                                                       :
DELPHI CORPORATION, et al.,                            :    Case No. 05-44481 (RDD)
                                                       :
                         Debtors.                      :    (Jointly Administered)
                                                       :
- - - - - - - - - - - - - - - - - - - - - - - - - - -  x

NOTICE OF (A) ORDER APPROVING MODIFICATIONS TO THE FIRST
AMENDED JOINT PLAN OF REORGANIZATION OF DELPHI
CORPORATION AND CERTAIN AFFILIATES, DEBTORS AND DEBTORS-
IN-POSSESSION AND (B) OCCURRENCE OF THE EFFECTIVE DATE

         1.        **Confirmation Of The Plan.**  On January 25, 2008, the United States Bankruptcy
Court for the Southern District of New York (the "Bankruptcy Court") entered an order
confirming the First Amended Joint Plan Of Reorganization Of Delphi Corporation And Certain
Affiliates, Debtors And Debtors-In-Possession, dated January 25, 2008 (the "Confirmed Plan"),

1

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

in the Chapter 11 Cases of Delphi Corporation and certain of its subsidiaries and affiliates, the debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors").

2.      **Approval Of Modifications To The Confirmed Plan.**  On July __, 2009, the Bankruptcy Court entered an order (the "Modification Approval Order") approving certain modifications to the Confirmed Plan embodied in the First Amended Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession (As Modified) (the "Modified Plan"), attached as Exhibit A to the Modification Approval Order.  Unless otherwise defined in this Notice Of (A) Order Approving Modifications To The First Amended Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession And (B) Occurrence Of The Effective Date, capitalized terms and phrases used herein have the meaning(s) given to them in the Modified Plan and the Modification Approval Order.

3.      **Discharge of Claims and Termination of Interests.**  Pursuant to section 1141(d) of the Bankruptcy Code, except as otherwise specifically provided in the Modified Plan or in the Confirmation Order, the distributions and rights that are provided in the Modified Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims and Causes of Action, whether known or unknown, against, liabilities of, liens on, obligations of, rights against, and Interests in the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Modified Plan on account of such Claims, rights, and Interests, including, but not limited to, Claims and Interests that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims relate to services performed by employees of the Debtors prior to the Petition Date and that arise from a termination of employment or a termination of any employee or retiree benefit program, regardless of whether such termination occurred prior to or after the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not (a) a proof of claim or interest based upon such Claim, debt, right, or Interest is filed or deemed filed under section 501 of the Bankruptcy Code, (b) a Claim or Interest based upon such Claim, debt, right, or Interest is allowed under section 502 of the Bankruptcy Code, or (c) the holder of such a Claim, right, or Interest accepted the Modified Plan. The Modification Approval Order shall be a judicial determination of the discharge of all Claims against and Interests in the Debtors, subject to the occurrence of the Effective Date.

4.      **Injunctions.**

(a)      Subject to Article 11.13 of the Modified Plan, the satisfaction, release, and discharge pursuant to Article XI of the Modified Planshall act as an injunction against any Person commencing or continuing any action, employment of process, or act to collect, offset, or recover any Claim, Interest, or Cause of Action satisfied, released, or discharged under the Modified Plan to the fullest extent authorized or provided by the Bankruptcy Code, including, without limitation, to the extent provided for or authorized by sections 524 and 1141 thereof.

(b)      By accepting distributions pursuant to the Modified Plan, each Holder of an Allowed Claim will be deemed to have specifically consented to the injunctions set forth in Article XI of the Modified Plan.

2

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

5.    **Release by Debtors Of Certain Parties.**  Pursuant to section 1123(b)(3) of the Bankruptcy Code, but subject to Article 11.13 of the Modified Plan, effective as of the Effective Date (and with respect to the DIP Lenders, the DIP Agent, and the members of the DIP Steering Committee, upon the consummation of the DIP Transfer, which shall be deemed to occur on the Effective Date), each Debtor, in its individual capacity and as a debtor-in-possession for and on behalf of its Estate, shall release and discharge and be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged all Released Parties for and from any and all claims or Causes of Action existing as of the Effective Date in any manner arising from, based on, or relating to, in whole or in part, the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Modified Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, or any act, omission, occurrence, or event in any manner related to any such Claims, Interests, restructuring, or the Chapter 11 Cases.  The Reorganized Debtors, including Reorganized DPH Holdings, and any newly-formed entities that will be continuing the Debtors' businesses after the Effective Date shall be bound, to the same extent the Debtors are bound, by the releases and discharges set forth above.  Notwithstanding the foregoing, nothing in the Modified Plan shall be deemed to release (i) any of the Debtors or GM from their obligations under the Delphi-GM Definitive Documents or the transactions contemplated thereby, except to the extent set forth in the Master Disposition Agreement, (ii) any of the Debtors, the Unions, or GM from their obligations under the Union Settlement Agreements or the transactions contemplated thereby, (iii) any of the Buyers from their obligations under the Master Disposition Agreement, or (iii) any of the Debtors or the Plan Investors or their affiliates from their obligations under the Investment Agreement or the transactions contemplated thereby.

6.    **Release by Holders of Claims and Interests.**  On the Effective Date, (a) each Person who votes to accept the Modified Plan and (b) to the fullest extent permissible under applicable law, as such law may be extended or interpreted subsequent to the Effective Date, each entity (other than a Debtor) which has held, holds, or may hold a Claim against or Interest in the Debtors, in consideration for the obligations of the Debtors and the Reorganized Debtors under the Modified Plan and Cash, General Unsecured MDA Distribution, and other contracts, instruments, releases, agreements, or documents to be delivered in connection with the Modified Plan (each, a "Release Obligor"), shall have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged all Released Parties for and from any claim or Cause of Action existing as of the Effective Date in any manner arising from, based on, or relating to, in whole or in part, the Debtors, the subject matter of, or the transaction or event giving rise to, the claim of such Release Obligor, the business or contractual arrangements between any Debtor and Release Obligor or any Released Party, the restructuring of the claim prior to the Chapter 11 Cases, or any act, omission, occurrence, or event in any manner related to such subject matter, transaction, obligation, restructuring, or the Chapter 11 Cases, including, but not limited to, any claim relating to, or arising out of the Debtors' Chapter 11 Cases, the negotiation and filing of the Modified Plan, the filing of the Chapter 11 Cases, the formulation, preparation, negotiation, dissemination, filing, implementation, administration, confirmation, or consummation of the Modified Plan, the Disclosure Statement, the Plan Exhibits, the Delphi-PBGC Settlement Agreement, the Credit Bid, the Master Disposition Agreement, the Union

Settlement Agreements, any employee benefit plan, instrument, release, or other agreement or document created, modified, amended or entered into in connection with either the Modified Plan or any other agreement with the Unions, including but not limited to the Union Settlement Agreements, or any other act taken or not taken consistent with the Union Settlement Agreements in connection with the Chapter 11 cases; provided, however, that (A) Article 11.5 of the Modified Plan is subject to and limited by Article 11.13 of the Modified Plan and (B) 11.5 of the Modified Plan shall not release any Released Party from any Cause of Action held by a governmental entity existing as of the Effective Date based on (i) the Internal Revenue Code or other domestic state, city, or municipal tax code, (ii) the environmental laws of the United States or any domestic state, city, or municipality, (iii) any criminal laws of the United States or any domestic state, city, or municipality, (iv) the Exchange Act, the Securities Act, or other securities laws of the United States or any domestic state, city, or municipality, (v) the Employee Retirement Income Security Act of 1974, as amended, or (vi) the laws and regulations of the Bureau of Customs and Border Protection of the United States Department of Homeland Security. Notwithstanding the foregoing, all releases given by GM to (i) the Debtors and the Debtors' Affiliates shall be as set forth in the Delphi-GM Global Settlement Agreement and (ii) the Unions shall be as set forth in the Union Settlement Agreements.

7.     **Assumption of Executory Contracts and Unexpired Leases.** On the Effective Date, all executory contracts or unexpired leases of the Debtors will be deemed assumed in accordance with, and subject to, the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, except those executory contracts and unexpired leases that (a) have been rejected by order of the Bankruptcy Court or (b) are the subject of a motion to reject pending on the Effective Date. Entry of the Modification Approval Order by the Bankruptcy Court shall constitute approval of such assumptions pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Each executory contract and unexpired lease assumed pursuant to Article VIII of the Modified Plan, other than those executory contracts and unexpired leases that are assumed and assigned to the applicable Buyer as set forth in the Master Disposition Agreement, shall revest in and be fully enforceable by the respective Reorganized Debtor in accordance with its terms, except as modified by the provisions of the Modified Plan, or any order of the Bankruptcy Court authorizing and providing for its assumption or applicable federal law.

8.     **Bar Dates**

(a)     **Administrative Bar Date.** Requests for payment of an Administrative Claim (other than as set forth in Article X of the Modified Plan), must be filed with the Claims Agent and served on counsel for the Debtors and/or Reorganized Debtors no later than 45 days after the Effective Date (the "Administrative Claims Bar Date") or shall be disallowed automatically without the need for any objection from the Debtors or Reorganized Debtors. Unless the Debtors object to an Administrative Claim within 180 days after the Administrative Claims Bar Date, such Administrative Claim shall be deemed allowed in the amount requested. In the event that the Debtors or the Reorganized Debtors object to an Administrative Claim, the Bankruptcy Court shall determine the allowed amount of such Administrative Claim.

(b)     **Professional Claims And Final Fee Applications.** All final requests for payment of Professional Claims and requests for reimbursement of expenses of members of the

4

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

Statutory Committees pursuant to Sections 327, 328, 330, 331, 503(b), or 1103 of the
Bankruptcy Code must be filed no later than the last day of the second full month after the
Effective Date.  After notice and a hearing in accordance with the procedures established by the
Bankruptcy Code and prior orders of the Bankruptcy Court, the allowed amounts of such
Professional Claims and expenses shall be determined by the Bankruptcy Court.  Upon the
Effective Date, any requirement that Professionals comply with sections 327 through 331 of the
Bankruptcy Code in seeking retention or compensation for services rendered after the Effective
Date is terminated and the Debtors shall employ and pay Professionals in the ordinary course of
business.

       (c)    **Substantial Contribution Bar Date.**  Any Person (including the
Indenture Trustees) who requests compensation or expense reimbursement for making a
substantial contribution in the Chapter 11 Cases pursuant to sections 503(b)(3), (4), and (5) of
the Bankruptcy Code shall file an application with the clerk of the Bankruptcy Court on or before
the 45th day after the Effective Date (the "503 Deadline"), and serve such application on counsel
for the Debtors, the Creditors' Committee, the United States Trustee for the Southern District of
New York, and such other parties as may be decided by the Bankruptcy Court and the
Bankruptcy Code on or before the 503 Deadline, or be forever barred from seeking such
compensation or expense reimbursement.

    9.    **Effective Date.**  On _____ __, 2009, the Effective Date of the Modified Plan
occurred.


Dated:  New York, New York
       _____ _, 200_

                     SKADDEN, ARPS, SLATE, MEAGHER &
                       FLOM LLP

                     By:_____
                       John Wm. Butler, Jr.
                       Ron E. Meisler
                     151 North Wacker Drive
                     Chicago, Illinois  60606
                     (312) 407-0700

                     By:_____
                       Kayalyn A. Marafioti
                     Four Times Square
                     New York, New York 10036
                     (212) 735-3000

                     Attorneys for Delphi Corporation, et al.,
                       Debtors and Debtors-in-Possession

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

# Exhibit B-1

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

IN THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MISSOURI
KANSAS CITY DIVISION

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

In re:

INTERSTATE BAKERIES
CORPORATION, et al.,

Debtors.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

: Chapter 11
: Case No. 04-45814 (JWV)
:
:
: Jointly Administered
:
:

**ORDER CONFIRMING AMENDED JOINT PLAN OF REORGANIZATION OF
INTERSTATE BAKERIES CORPORATION AND ITS AFFILIATED DEBTORS AND
DEBTORS-IN-POSSESSION DATED OCTOBER 31, 2008**

Upon the Solicitation Procedures Motion[1] dated October 9, 2008 (Docket no.

11354) of Interstate Bakeries Corporation ("IBC"), and eight[2] of its subsidiaries and affiliates,

debtors and debtors-in-possession (collectively, the "Debtors"), for entry of an order approving

(I) the form and manner of notice of the Debtors' hearing to approve the Disclosure Statement for

the Amended Joint Plan of Reorganization of Interstate Bakeries Corporation and Its Affiliated

Debtors and Debtors-in-Possession Dated October 31, 2008 (together with the exhibits thereto,

as such exhibits may be subsequently amended, supplemented, or otherwise modified (the

"Exhibits"), the "Plan"), (II) the Disclosure Statement, (III) the cure procedures for executory

---

1    Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Plan, the
     Solicitation Procedures Order or in the Findings and Conclusions (defined below).

2    The following subsidiaries' and affiliates' chapter 11 cases are jointly administered with IBC's chapter 11 case:
     Armour and Main Redevelopment Corporation; Baker's Inn Quality Baked Goods, LLC; IBC Sales
     Corporation; IBC Services, LLC; IBC Trucking, LLC; Interstate Brands Corporation; New England Bakery
     Distributors, L.L.C.; and Mrs. Cubbison's Foods, Inc.



04458140812050000000000009

orders approving the New Credit Facilities, the Investment Agreement, the Commitment Letter, the New Third Lien Term Loan Credit Facility, the New Convertible Secured Note Indenture, any other Exit Facility Documents and the Trust Stock Appreciation Rights, all Persons shall be precluded from asserting against the Debtors or the Reorganized Debtors any other or further claims, debts, rights, causes of action, claims for relief, liabilities, or equity interests relating to the Debtors based upon any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Confirmation Date.  In accordance with the foregoing, except as provided in the Plan or the Confirmation Order, this Confirmation Order shall be a judicial determination of discharge of all such Claims and other debts and liabilities against the Debtors and termination of all Interests in IBC, and in the Brands Preferred Stock, pursuant to sections 524 and 1141 of the Bankruptcy Code, and such discharge shall void any judgment obtained against the Debtors at any time, to the extent that such judgment relates to a discharged Claim or terminated Interest.

12.  _Releases, Limitations Of Liability And Indemnification_.  The releases set forth in Sections 11.4 and 11.5 of the Plan, the exculpation and limitation of liability provisions set forth in Section 11.7 of the Plan, and the indemnification obligations set forth in Section 11.8 of the Plan are incorporated in this Confirmation Order as if set forth in full herein and are hereby approved.

13.  _Injunctions_.  Except as otherwise specifically provided in the Plan and except as may be necessary to enforce or remedy a breach of the Plan, from and after the Effective Date, all Persons who have held, hold or may hold Claims against or Interests in the

9

05-44814-rdd   Doc 19897-23   Filed 04/20/10   Entered 04/20/10 20:26:54   Exhibit W
Pt 197 of 226   Page 10 of 49

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

Debtors and any successors, assigns or representatives of the foregoing shall be precluded and

permanently enjoined from: (i) commencing or continuing in any manner any Claim,

employment of process, action or other proceeding of any kind with respect to any Claim,

Interest or any other right against any Reorganized Debtor or the Creditors' Trust, which they

possessed or may possess prior to the Effective Date, (ii) the enforcing, attaching, collecting,

offsetting, or recovering by any manner or means of any judgment, award, decree or order with

respect to any Claim, Interest, or any other right against any Reorganized Debtor, which they

possessed or may possess prior to the Effective Date, (iii) creating, perfecting or enforcing any

lien or encumbrance of any kind with respect to any Claim, Interest or any other right against any

Reorganized Debtor or the Creditors' Trust, which they possessed or may possess prior to the

Effective Date, (iv) asserting a setoff, right of subrogation or recoupment of any kind against any

debt, liability, or obligation due to the Debtors, and (v) asserting any Claims or Causes of Action

that are satisfied, released, or discharged hereby and under the Plan to the fullest extent

permissible under applicable law, including to the extent provided for or authorized by Section

11.4 of the Plan and sections 524 and 1141 of the Bankruptcy Code.

       14.  <u>Automatic Stay</u>.  All injunctions and stays in effect in the Chapter 11

Cases pursuant to section 105 or 362(a) of the Bankruptcy Code or otherwise and extant on the

Confirmation Date shall continue to be in full force and effect until the Effective Date, at which

time they shall be dissolved and of no further force or effect, and be replaced by the injunctions

set forth herein and in sections 524 and 1141 of the Bankruptcy Code; <u>provided</u>, <u>however</u>, that

nothing herein shall bar the filing of financing documents (including Uniform Commercial Code

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

Teamsters Conference Pension and Retirement Fund, Western Pennsylvania Teamsters and Employers Pension Fund and New England Teamsters and Trucking Industry Pension Fund may have against a third-party as a result of the Debtors' participation in the **Retail, Wholesale and Department Store International Union and Industry Pension Fund,** New York State Teamsters Conference Pension and Retirement Fund, Western Pennsylvania Teamsters and Employers Pension Fund and New England Teamsters and Trucking Industry Pension Fund.  None of the foregoing shall have a right to receive any distribution on account of a withdrawal liability claim that has not yet been incurred and remains a potential withdrawal liability claim and shall not be permitted to vote on or object to this Plan on account of such withdrawal liability claim.

(k)     Section 12.2(g)(vii) of the Plan is modified as follows:

**12.2(g)(vii)**     all Interests (except Subsidiary Interests **and Mrs. Cubbison's Interests**, but including the Brands Preferred Stock) are terminated effective upon the Effective Date;

Dated: Kansas City, Missouri
       December 5, 2008

                              /s/ Jerry W. Venters
                              UNITED STATES BANKRUPTCY JUDGE
**Attorney for Debtor to Serve**

49

# Exhibit B-2

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x
                                                                 :
                                                                 :
                                                                 :
**In re:**                                    :    **Chapter 11**
                                                                 :
**ONEIDA LTD., <u>et</u> <u>al.</u>,**           :    **Case No. 06 – 10489 (ALG)**
                                                                 :
                      **Debtors.**           :    **(Jointly Administered)**
                                                                 :
                                                                 :
                                                                 :
                                                                 :
-----------------------------------------------------------------x

**FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER PURSUANT**
**TO 11 U.S.C. § 1129(a) AND RULE 3020 OF THE FEDERAL RULES OF**
**BANKRUPTCY PROCEDURE CONFIRMING THE DEBTORS'**
**FIRST AMENDED JOINT PRENEGOTIATED PLAN OF**
**REORGANIZATION UNDER CHAPTER 11**
<u>**OF THE BANKRUPTCY CODE AND GRANTING RELATED RELIEF**</u>

**RECITALS**

A.      On March 19, 2006 (the "Petition Date"), each of Oneida Ltd. ("Oneida") and

certain of its direct and indirect domestic subsidiaries, as debtors and debtors in possession

(collectively, the "Debtors"),[1] filed a voluntary petition with this Court for reorganization relief

(collectively, the "Chapter 11 Cases") under chapter 11 of title 11 of the United States Code, 11

U.S.C. §§ 101-1532, as amended (the "Bankruptcy Code").

B.      The Debtors have continued to operate their businesses and manage their

properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy

Code.

---

[1]      In addition to Oneida Ltd., the following entities are debtors in these related cases:  Sakura, Inc.; Buffalo
China, Inc.; Delco International, Ltd.; Kenwood Silver Company, Inc.; Oneida Food Service, Inc.; Oneida
International Inc.; Oneida Silversmiths Inc.; and THC Systems, Inc.

Section 10.4 of the Plan are approved.  For the purposes of clarity, nothing in this ordered

paragraph or Section 10.4 of the Plan shall be construed to release the Debtors, the Reorganized

Debtors, each of their respective affiliates, the D&O Releases, the Prepetition Agent, all

Prepetition Lenders, the DIP Agent, all parties to the DIP Credit Agreement, the Committees,

each member of the Committees, in their capacity as such or the Prepetition Lenders or any of

the foregoing Entities' or Persons' respective members, partners, officers, directors, employees

and agents (including any attorneys, accountants, financial advisors, investment bankers and

other representatives or professionals retained by such Entities or Persons), from causes of action

or claims which Holders of Oneida Equity Interests are legally entitled to assert in their own

right (whether individually or collectively) directly relating to the 2004 Financial Restructuring

(as defined in the Disclosure Statement).

54.  <u>Injunction</u>.  Except as otherwise provided in the Plan or this Confirmation

Order, and in addition to the injunction provided under sections 524(a) and 1141 of the

Bankruptcy Code, on and after the Effective Date, all persons who have held, currently hold or

may hold a Claim against the Debtors or an Equity Interest (whether directly or indirectly and

whether as a beneficial holder of such Claim or Equity Interest or as a holder of record of such

Claim or Equity Interest or otherwise) that is discharged under the Plan are permanently

enjoined, on and after the Confirmation Date and subject to the occurrence of the Effective Date,

from taking any of the following actions on account of any such Claim or Equity Interest:

(i) commencing or continuing in any manner (including by directly or indirectly assisting or

facilitating the commencement or continuation of) any action or other proceeding of any kind

with respect to any such Claim or Equity Interest, against the Debtors, the Reorganized Debtors

or their respective properties; (ii) enforcing, attaching, collecting or recovering in any manner

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

any judgment, award, decree or order against the Debtors, the Reorganized Debtors or their

respective properties on account of any such Claim or Equity Interest; (iii) creating, perfecting or

enforcing any Lien or encumbrance of any kind against the Debtors, the Reorganized Debtors, or

their respective properties or interests in their respective properties on account of any such Claim

or Equity Interest; (iv) asserting any setoff, right of subrogation or recoupment of any kind

against any obligation due from the Debtors, the Reorganized Debtors, or against the properties

or interests in property of the Debtors or the Reorganized Debtors on account of any such Claim

or Equity Interest; ~~(v) authenticating, delivering or facilitating the delivery of any certificate;~~ and

(v) commencing, continuing or in any manner taking part or participating in any action,

proceeding or event (whether directly or indirectly) that would be in contravention of the terms,

conditions and intent of the Plan, including the releases and exculpations provided in Sections

10.2 and 10.4 of the Plan.  For purposes of clarity, all Disputed Claims shall be determined,

resolved or adjudicated in accordance with the terms of Section 8.1 of the Plan.  The foregoing

injunction will extend to the benefit of the successors of the Debtors (including, without

limitation, the Reorganized Debtors) and the Entities and Persons entitled to the benefit of the

releases and exculpations provided in Sections 10.2 and 10.4 of the Plan, and their respective

properties and interests in property.  Any person injured by any willful violation of such

injunction may ~~recover~~ **seek** actual damages, including costs and attorneys' fees, and, in

appropriate circumstances, may ~~recover~~ **seek** punitive damages from the willful violator.

     55.   <u>Continuation of Automatic Stay</u>.  Except as otherwise expressly provided

in the Plan, this Confirmation Order or a separate Order of this Court, all injunctions or stays

provided for in the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code, or

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

Plan Documents or any amendments or modifications thereto shall apply and be enforceable
notwithstanding any otherwise applicable non-bankruptcy law.

77.    <u>Effectiveness of Order</u>.  Notwithstanding Bankruptcy Rules 3020(e),
6004(h) and 6006(d), or any other provision of the Bankruptcy Code or the Bankruptcy Rules,
this Confirmation Order shall be effective immediately upon its entry.  This Confirmation Order
is and shall be deemed to be a separate order with respect to each of the Debtors for all purposes.

78.    <u>Substantial Consummation</u>.  Substantial consummation of the Plan shall
be deemed to occur on the Effective Date.

79.    <u>The Record</u>.  The record of the Confirmation Hearing is closed.  The
findings of fact and conclusions of law of this Court set forth herein and at the Confirmation
Hearing shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule
7052, as made applicable herein by Bankruptcy Rule 9014, and the findings of fact and
conclusions of law of this Court at the Confirmation Hearing are incorporated herein by
reference.  To the extent that any of the foregoing findings of fact constitute conclusions of law,
they are adopted as such.  To the extent any that any of the foregoing conclusions of law
constitute findings of fact, they are adopted as such.

Dated:  New York, New York
             August 30, 2006


                                    _/s/ Allan L. Gropper_____
                                    HONORABLE ALLAN L. GROPPER
                                    UNITED STATES BANKRUPTCY JUDGE

# Exhibit B-3

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| UAL CORPORATION, et al., | ) | Case No. 02-B-48191 |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | Honorable Eugene R. Wedoff |

### ORDER CONFIRMING DEBTORS' SECOND AMENDED JOINT PLAN OF REORGANIZATION PURSUANT TO CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE [Related to Docket No. 14813]

The Debtors' Second Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code, filed by the above-captioned debtors and debtors-in-possession (the "Debtors") on January 18, 2006, as amended and/or modified (the "Plan")[1] [Docket No. 14813], a copy of which is attached hereto as Exhibit A, having been transmitted to Holders of Claims and Interests, entitled to vote thereon; and it appearing that this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that this proceeding is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2); and it appearing that venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that proper and adequate notice has been given under the circumstances and that no other or further notice is necessary; and after due deliberation and sufficient cause appearing therefor, it is hereby FOUND, DETERMINED, ORDERED AND ADJUDGED THAT:

1.  The Plan, attached hereto as Exhibit A, is confirmed.

2.  Votes for acceptance and rejection of the Plan were solicited in good faith and such solicitation complied with Sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy

---

[1] All capitalized terms not expressly defined herein shall have the meaning ascribed to them in the Plan.

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

Effective Date other than Claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes a failure to perform the duty to act in good faith, with the care of an ordinarily prudent person and in a manner the Released Party reasonably believed to be in the best interests of the corporation (to the extent such duty is imposed by applicable non-bankruptcy law) where such failure to perform constitutes willful misconduct or gross negligence. The vote or election of a trustee or other agent under this paragraph acting on behalf of or at the direction of a Holder of a Claim or Interest shall bind such Holder to the same extent as if such Holder had itself voted or made such election. The following parties shall be deemed to have opted out of releases provided for in this paragraph on their abstaining ballots: (1) the Illinois Department of Revenue, (2) the State of California; and (3) the City of Chicago.

(d)     Chicago Municipal Bond Release: Pursuant to the Chicago Municipal Bond Settlement Order and the Chicago Municipal Bond Settlement Agreement, on and after the Effective Date, the Chicago Municipal Bond Released Parties, including but not limited to the Trustees and the Designated Holders (as those terms are defined in the Chicago Municipal Bond Settlement Agreement) shall be conclusively, absolutely, unconditionally, irrevocably, and forever, released and discharged from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims asserted on behalf of a Debtor, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, of any Person or Entity, including the Holders (as defined under the Chicago Municipal Bond Settlement Agreement) (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Chicago Municipal Bond Agreements, the Chicago Municipal Bond Settlement Agreement, that certain Amended and Restated Airport Use Agreement and Terminal Facilities Lease dated as of January 1, 1985 between the City of Chicago and United, and any other agreement relating to the Chicago Municipal Bonds other than Claims or liabilities arising out of or relating to any act or omission of a Chicago Municipal Bond Released Party that constitutes willful misconduct or gross negligence.

(e)     Injunction: Except as otherwise expressly provided in the Plan or for obligations issued pursuant to the Plan, all Entities who have held, hold, or may hold Claims against or Interests in the Debtors or against the Released Parties and Exculpated Parties are permanently enjoined, from and after the Effective Date, from: (i) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claim against or Interest in the Reorganized Debtors, the Exculpated Parties, the Released Parties, any statutory committee or members

4

thereof, and the employees, agents, and professionals of each of the foregoing (acting in such capacity); (ii) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree or order against those Entities listed in subparagraph (i) above on account of or in connection with or with respect to any such Claim against or Interest in the Reorganized Debtors, the Exculpated Parties, the Released Parties, any statutory committee or members thereof, and the employees, agents, and professionals of each of the foregoing (acting in such capacity); (iii) creating, perfecting, or enforcing any encumbrance of any kind against those Entities listed in subparagraph (i) above, or the property or estates of those Entities listed in subparagraph (i) above on account of or in connection with or with respect to any such Claim against or Interest in the Reorganized Debtors, the Released Parties, the Exculpated Parties, any statutory committee or members thereof, and the employees, agents, and professionals of each of the foregoing (acting in such capacity); (iv) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from those Entities listed in subparagraph (i) above or against the property or Estates of those Entities listed in subparagraph (i) above on account of or in connection with or with respect to any such Claim against or Interest in the Reorganized Debtors, the Exculpated Parties, the Released Parties, any statutory committee or members thereof, and the employees, agents, and professionals of each of the foregoing (acting in such capacity) unless such Holder has filed a motion requesting the right to perform such setoff on or before the Confirmation Date, and notwithstanding an indication in a Proof of Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to Section 553 of the Bankruptcy Code or otherwise; and (v) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claim against or Interest in the Reorganized Debtors, the Released Parties, the Exculpated Parties any statutory committee or members thereof, and the employees, agents, and professionals of each of the foregoing (acting in such capacity) released or settled pursuant to the Plan; **provided, however,** that nothing in this section shall impair the rights of the Texas Comptroller of Public Accounts under 28 U.S.C. § 1341.

5.        This Court retains jurisdiction with respect to all matters arising from or related to

the implementation of this Order.

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

6.      Notwithstanding the possible applicability of Bankruptcy Rules 6004(g), 7062, 9014, or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

7.      All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

Dated: _January 20_, 2006
        Chicago, Illinois

                                   _____
                                   United States Bankruptcy Judge

6

# Exhibit B-4

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

Brian P. Leitch, Esq.
Daniel M. Lewis, Esq.
Michael J. Canning, Esq.
Neil M. Goodman, Esq.
ARNOLD & PORTER LLP
370 Seventeenth Street, Suite 4500
Denver, Colorado 80202
(303) 863-1000
        - and -
555 Twelfth Street, NW
Washington, DC 20004
(202) 942-5000
        - and -
399 Park Avenue
New York, New York 10022
(212) 715-1000

Lawrence E. Rifken, Esq. (VSB No. 29037)
Douglas M. Foley, Esq. (VSB No. 34364)
David I. Swan, Esq.
McGUIREWOODS LLP
1750 Tysons Boulevard, Suite 1800
McLean, Virginia 22102-4215
(703) 712-5000

*Counsel to the Debtors and Debtors-in-Possession*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 04-13819-SSM |
| | ) | Jointly Administered |
| | ) | Chapter 11 |
| US AIRWAYS, INC., et al.,[1] | ) | Hon. Stephen S. Mitchell |
| | ) | |
| Debtors. | ) | |
| | ) | |

**FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER
UNDER 11 U.S.C. §§ 1129(a) AND (b) AND FED. R. BANKR. P. 3020
CONFIRMING THE JOINT PLAN OF REORGANIZATION OF US AIRWAYS, INC. AND
ITS AFFILIATED DEBTORS AND DEBTORS-IN-POSSESSION**

Upon the motion, dated July 11, 2005 (Docket No. 2378) (the "Motion"), by the

above-captioned Debtors and debtors-in-possession, for the entry of an order approving

the Debtors' Disclosure Statement (as defined below); determining the treatment of

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

Aircraft Secured Claims), and all right, title and interest of any holder of such mortgages, deeds of trust, liens or other security interests, including any rights to any collateral thereunder, shall revert to the applicable Reorganized Debtor and its successors and assigns.

7.     <u>Retained Assets</u>.  To the extent the succession to assets of the Debtors by the Reorganized Debtors pursuant to the Plan are deemed to constitute "transfers" of property, such transfers of property to the Reorganized Debtors (a) are or shall be legal, valid, and effective transfers of property, (b) vest or shall vest the Reorganized Debtors, with good title to such property, free and clear of all liens, charges, Claims, encumbrances, or interests, except as expressly provided in the Plan or this Confirmation Order, (c) do not and shall not constitute avoidable transfers under the Bankruptcy Code or under applicable nonbankruptcy law, and (d) do not and shall not subject the Reorganized Debtors to any liability or claim by reason of such transfer under the Bankruptcy Code or under applicable nonbankruptcy law, including, without limitation, any laws affecting successor or transferee liability.

8.     <u>Discharge, Releases, Limitations of Liability and Indemnification</u>.  The discharge of the Debtors and any of their assets or properties provided in Section 11.2 of the Plan, the releases set forth in Sections 11.4 and 11.5 of the Plan, and the exculpation and limitation of liability provisions set forth in Section 11.8 of the Plan, each as amended to the extent set forth in paragraph 51, are deemed incorporated in this Confirmation Order as if set forth in full herein and are hereby approved in their entirety.

9.     <u>Injunction</u>.  Except as otherwise specifically provided in the Plan or this Confirmation Order, including, with respect to Exempted Ordinary Course Grievances, and except as may be necessary to enforce or remedy a breach of the Plan, the Debtors,

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

and all Persons who have held, hold or may hold Claims or Interests and any successors,

assigns or representatives of the foregoing shall be precluded and permanently enjoined

on and after the Effective Date from: commencing or continuing any action, employment

of process, or act to collect, offset, or recover any Claim or Cause of Action satisfied,

released, or discharged under this Plan to the fullest extent authorized or provided by the

Bankruptcy Code, including, without limitation, to the extent provided for or authorized by

sections 524 and 1141 thereof.  Further, except as otherwise provided in the Plan or this

Confirmation Order, including, with respect to Exempted Ordinary Course Grievances, as

of the Confirmation Date, but subject to the occurrence of the Effective Date, all Persons

who have held, hold or may hold Claims against or Interests in any of the Debtors or the

Estates are, with respect to any such Claims or Interests, permanently enjoined from and

after the Confirmation Date from:  (i) commencing, conducting or continuing in any

manner, directly or indirectly, any suit, action or other proceeding of any kind (including,

without limitation, any proceeding in a judicial, arbitral, administrative or other forum)

against the Debtors, the Estates or the Reorganized Debtors or any of their property, or

any direct or indirect transferee of any property of, or direct or indirect successor in

interest to, any of the foregoing Persons, or any property of any such transferee or

successor; (ii) enforcing, levying, attaching (including, without limitation, any pre-judgment

attachment), collecting or otherwise recovering by any manner or means, whether directly

or indirectly, of any judgment, award, decree or order against the Debtors, the Estates or

the Reorganized Debtors or any of their property, or any direct or indirect transferee of

any property of, or direct or indirect successor in interest to, any of the foregoing Persons,

or any property of any such transferee or successor; (iii) creating, perfecting or otherwise

enforcing in any manner, directly or indirectly, any encumbrance of any kind against the

Debtors, the Estates or the Reorganized Debtors or any of their property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons; (iv) exercising any right of setoff, subrogation, or recoupment of any kind, directly or indirectly, against any obligation due the Debtors, the Estates or the Reorganized Debtors, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons; and (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan to the full extent permitted by applicable law.  Notwithstanding the foregoing, nothing herein shall (a) enjoin or otherwise impair the United States' rights of setoff and/or recoupment unless otherwise agreed to in writing by the United States and the Debtors or Reorganized Debtors, as the case may be, or be construed to preclude the United States from pursuing any regulatory or police action against any Debtor, Reorganized Debtor, or any other party to the extent not prohibited by the automatic stay of section 362 of the Bankruptcy Code or discharged or enjoined pursuant to sections 524 or 1141(d) of the Bankruptcy Code or other applicable law or (b) prohibit or impair the rights of any parties to commence or pursue actions against any Persons other than the Debtors or Reorganized Debtors based on fraud or violations of applicable securities laws, and, subject to the ultimate proviso in Section 11.2 of the Plan, preclude or otherwise impair the rights of the U.S. Securities and Exchange Commission to administer and enforce the United States federal securities laws.

10.    <u>Automatic Stay</u>.  The stay in effect in Chapter 11 Cases pursuant to section 362(a) of the Bankruptcy Code shall continue to be in effect until the Effective Date, and at that time shall be dissolved and of no further force or effect, subject to the injunction set forth in the preceding paragraph and/or sections 524 and 1141 of the

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

Dated: Alexandria, Virginia
     September \_\_\_, 2005

Sep 16 2005

/s/ Stephen S. Mitchell

_____

HONORABLE STEPHEN S. MITCHELL
UNITED STATES BANKRUPTCY JUDGE

WE ASK FOR THIS:

Brian P. Leitch, Esq.
Daniel M. Lewis, Esq.
Michael J. Canning, Esq.
Neil M. Goodman, Esq.
ARNOLD & PORTER LLP
370 Seventeenth Street, Suite 4500
Denver, Colorado 80202
(303) 863-1000
     - and -
555 Twelfth Street, NW
Washington, DC 20004
(202) 942-5000
     - and -
399 Park Avenue
New York, New York 10022
(212) 715-1000

     - and -

Entered on Docket: Sep 16, 2005 cb

/s/ Douglas M. Foley_____
Lawrence E. Rifken, Esq. (VSB No. 29037)
Douglas M. Foley, Esq. (VSB No. 34364)
David I. Swan, Esq.
McGUIREWOODS LLP
1750 Tysons Boulevard, Suite 1800
McLean, Virginia 22102-4215
(703) 712-5000

*Counsel to the Debtors and Debtors-in-Possession*

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

# Exhibit B-5

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| In re: | ) | Case No. 02-08699 |
| | ) | (Jointly Administered) |
| National Steel Corporation., et al., | ) | Chapter 11 |
| | ) | Hon. John H. Squires |
| | ) | |
| Debtors. | ) | |
| | ) | |

**FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER
CONFIRMING FIRST AMENDED JOINT PLAN OF LIQUIDATION OF NA-
TIONAL STEEL CORPORATION AND ITS AFFILIATED DEBTORS AND
DEBTORS IN POSSESSION, AS MODIFIED**

1.    The Debtors are directed to publish the Confirmation Notice

once in the *Wall Street Journal*, the daily edition of *The Chicago Tribune,* the daily

edition of the *South Bend Tribune*, the *Madison County Post* insert to the *St. Louis*

*Post-Dispatch,* and the Sunday edition of *The News Herald* no later than 30 days

after the Effective Date.

Dated: October 23, 2003

_____
UNITED STATES BANKRUPTCY JUDGE

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

51

any individual creditor against any non-Debtor third party.

### G. DISCHARGE, TERMINATION, INJUNCTION AND SUBOR-DINATION RIGHTS.

#### 1. Non-Discharge of Claims.

Pursuant to section 1141(d)(3) of the Bankruptcy Code, Confirmation will not discharge Claims against the Debtors; provided, however, that no holder of a Claim against any Debtor may, on account of such Claim, seek or receive any payment or other distribution from, or seek recourse against, any Debtor, Reorganized Debtor, their respective successors or their respective property, except as expressly provided in the Plan.

#### 2. Injunctions.

Except as otherwise provided in the Plan, from and after the Confirmation Date, all Persons who have held, hold or may hold Claims against or Interests in any of the Debtors are permanently enjoined from prosecuting any claim or cause of action of any nature that is released or terminated under this Plan or that is otherwise inconsistent with the provisions of this Plan, including taking any of the following actions against the Estate(s), the Plan Administrator, or the Disbursing Agent, or any of their property on account of any such Claims or Interests: (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing attaching, collecting or recovering in any manner any

43

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

judgment, award, decree or order; and (iii) creating, perfecting or enforcing any lien
or encumbrance.

By accepting distributions pursuant to the Plan, each holder of an
Allowed Claim receiving distributions pursuant to the Plan will be deemed to have
specifically consented to the injunctions set forth in this Section 10.11.

### 3. Exculpation.

None of the Debtors, the Reorganized Debtors, the Creditors Commit-
tee, the Bondholders' Committee, Mitsubishi, Marubeni, the PBGC, the Unsecured
Creditors Representative, the Plan Administrator, the Disbursing Agent, the Inden-
ture Trustee, nor any of their respective present or former members, officers, direc-
tors, employees, advisors, or attorneys (acting in such capacity) shall have or incur
any liability to any holder of a Claim or an Interest, or any other party in interest, or
any of their respective agents, employees, representatives, financial advisors,
attorneys, or affiliates, or any of their successors or assigns, for any act or omission
in connection with, relating to, or arising out of, the Chapter 11 Case, formulating,
negotiating or implementing the Plan, the solicitation of acceptances of the Plan, the
pursuit of confirmation of the Plan, the confirmation of the Plan, the consummation
of the Plan, or the administration of the Plan or the property to be distributed under
the Plan (including the distributions), except for acts that are *ultra vires* or for their
gross negligence or willful misconduct, and in all respects shall be entitled to

44

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

# Exhibit B-6

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re<br><br>    THE SINGER COMPANY N.V., et al.,<br><br>    Debtors. | Chapter 11<br><br>Case Nos.: 99-10578 (BRL) through<br>99-10607 (BRL), 99-10613 (BRL),<br>99-10616 (BRL) through<br>99-10629 (BRL) and 00-10423 (BRL)<br><br>(Jointly Administered) |

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER
UNDER 11 U.S.C. §§ 1129(a) AND (b) AND FED. R. BANKR.
P. 3020 CONFIRMING THE FIRST AMENDED JOINT PLAN OF
REORGANIZATION OF THE SINGER COMPANY N.V. AND
ITS AFFILIATED DEBTORS AND DEBTORS IN POSSESSION

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

with good title to such property, free and clear of all Liens, charges, Claims, encumbranc-
es, or Interests, except as expressly provided in the Plan or this Order, (c) do not and shall
not constitute avoidable transfers under the Bankruptcy Code or under applicable
nonbankruptcy law, and (d) do not and shall not subject Reorganized Singer or any of its
subsidiaries to any liability by reason of such transfer under the Bankruptcy Code or under
applicable nonbankruptcy law, including, without limitation, any laws affecting successor or
transferee liability.

10.    <u>Discharge, Releases, Limitations Of Liability and Indemnification</u>.  The
discharge of the Debtors and any of their assets or properties provided in Section 12.2 of
the Plan, the releases set forth in Sections 12.8 and 12.9 of the Plan, and the exculpation
and limitation of liability provisions set forth in Section 12.6 of the Plan, are deemed
incorporated in this Order as if set forth in full and are hereby approved; <u>provided
however</u>, that notwithstanding Section 12.9 of the Plan, nothing in the Plan or this Order
shall release any Claim against a non-Debtor individual person held by the PBGC under
ERISA.

11.    <u>Injunction</u>.  Except as otherwise specifically provided in the Plan and
except as may be necessary to enforce or remedy a breach of the Plan and/or the Trust
Agreement, the Debtors, and all Persons who have held, hold or may hold Claims or Inter-
ests and any successors, assigns or representatives of the foregoing shall be precluded and

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

permanently enjoined on and after the Effective Date from: (a) commencing or continuing

in any manner any Claim, action or other proceeding of any kind with respect to any

Claim, Interest or any other right or Claim against the Singer Creditor Trust, Reorganized

Singer,  any other Reorganized Debtor or any Liquidating Debtor, which they possessed

or may possess prior to the Effective Date, (b) the enforcement, attachment, collection or

recovery by any manner or means of any judgment, award, decree or order with respect

to any Claim, Interest or any other right or Claim against the Singer Creditor Trust,

Reorganized Singer, any other Reorganized Debtor or any Liquidating Debtor, which they

possessed or may possess prior to the Effective Date, (c) creating, perfecting or enforcing

any encumbrance of any kind with respect to any Claim, Interest or any other right or

Claim against the Singer Creditor Trust, Reorganized Singer,  any other Reorganized

Debtor or any Liquidating Debtor, which they possessed or may possess prior to the

Effective Date, and (d) asserting any Claims that are released hereby.

12.    <u>Automatic Stay</u>.  The stay in effect in Chapter 11 Cases pursuant to

section 362(a) of the Bankruptcy Code shall continue to be in effect until the Effective

Date, and at that time shall be dissolved and of no further force or effect, subject to the

injunction set forth in the preceding paragraph and/or sections 524 and 1141 of the

Bankruptcy Code, except that nothing herein shall bar the filing of financing documents or

29

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

but received such notice returned marked "undeliverable as addressed," "moved - left no

forwarding address" or "forwarding order expired," or similar reason, unless the Debtors

have been informed in writing by such Person of that Person's new address.  The notice

described herein is adequate under the particular circumstances of the Chapter 11 Cases,

and no other or further notice is necessary.  Notwithstanding the foregoing, pursuant to

Bankruptcy Rule 2002(l), the Debtors may satisfy the requirements of Bankruptcy Rule

2002(f)(7) with respect to any Claim holder that does not reside in the United States by

publishing the Notice of Effective Date in <u>The Wall Street Journal (International Edition)</u>

and <u>The Financial Times</u> within fifteen (15) Business Days of the Effective Date.


Dated:  New York, New York
        **August 24**, 2000


                        <u>**/s/ Burton R. Lifland**</u>
                        HONORABLE BURTON R. LIFLAND
                        UNITED STATES BANKRUPTCY JUDGE

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

# EXHIBIT C

Westlaw.

Not Reported in F.Supp.2d, 2006 WL 2270379 (S.D.N.Y.)
**(Cite as: 2006 WL 2270379 (S.D.N.Y.))**

C

Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
In re WORLDCOM, INC., et al., Reorganized
Debtors.
Alan M. Grayson, Appellant,
v.
WorldCom, Inc., et al., Appellees.
**05 Civ. 5704(RPP).**

Aug. 8, 2006.

Charles R. Pierce, Jr., Huntington, NY, James Mc-
Millan, Grayson & Kubli, PC, McLean, VA, for
Appellant.

Marcia Goldstein, Esq., Lori Fife, Esq., Alfredo
Perez, Esq., Adam Strochak, Esq. Weil. Gotshal &
Manges LLP, New York NY, for Appellees.

**OPINION AND ORDER**

ROBERT P. PATTERSON, JR., U.S.D.J.

*1 Appellant Alan Grayson ("Grayson") appeals
from a June 20, 2005 Order of the Bankruptcy
Court ("Order") denying his February 25, 2004 Mo-
tion for an Order Declaring the Automatic Stay In-
applicable or, in the Alternative, Lifting the Auto-
matic Stay in the WorldCom, Inc. ("WorldCom")
bankruptcy proceedings. Grayson seeks to pursue a
*qui tam* action on behalf of the State of California,
filed under seal on February 8, 2002, in the Superi-
or Court of California, County of Sacramento, to
recover from the Debtors "breakage," the unused
portion of prepaid calling cards, which he claims
had escheated to the State. Grayson Br. at 1-2.

**I. BACKGROUND**

WorldCom and its subsidiaries commenced Chapter

11 cases in the United States Bankruptcy Court for
the Southern District of New York on July 21,
2002. Appellee's Counter Designation on Appeal
("WorldCom Record") Ex. C at 3. By order dated
October 29, 2002, the Bankruptcy Court established
January 23, 2003 as the bar date for filing proofs of
claim.. *Id.* Ex. A at 2.

On October 31, 2003, the Bankruptcy Court entered
an order ("Confirmation Order") confirming the
Debtors' Modified Second Amended Joint Plan of
Reorganization ("Plan"). WorldCom Record, Ex. D.
The Plan included an injunction which enjoins the
commencement or continuation of an action to en-
force, attach, collect or recover any debt against the
Debtors on or after the Plan's effective date (April
20, 2004). Plan, *Id.* at Attach. 1, § 10.04.

On December 11, 2003, over ten months after the
bar date, the California Attorney General declined
to intervene in the Grayson action in the California
court, and that action was unsealed. Grayson then
filed a First Amended Complaint charging the De-
fendants violated California's Unclaimed Property
Law and False Claims Act by failing to report and
pay unused balances on prepaid calling cards.
Grayson Bankr.Motion, Grayson Designation on
Appeal ("Grayson Record") App. A, at 6; World-
Com Br. at 4.[FN1] Grayson's *proposed* Second
Amended Complaint, attached February 23, 2004,
named Defendants and alleged they violated the
California Unclaimed Property Law,
Cal.Civ.Proc.Code § 1530-32, as well as the Cali-
fornia False Claims Act, Cal. Gov't Code § 12650-
55, by knowingly and willfully failing to report and
pay or deliver "breakage" to the State Controller;
and that Defendants' "past and continuing failure to
pay or deliver" the "breakage" to the State Control-
ler violated California's Unfair Competition Act,
Cal. Bus. & Prof.Code § 17200. Proposed Second
Am. Comp. ¶¶ 2-4, Grayson Record App. A, At-
tach. A. In his proposed Second Amended Com-
plaint, breakage is defined as follows: "Owners of-
ten do not use some of the calling card prepayment.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

Not Reported in F.Supp.2d, 2006 WL 2270379 (S.D.N.Y.)
(Cite as: 2006 WL 2270379 (S.D.N.Y.))

Page 2

This is called 'breakage.' " Id.

> FN1. On June 21, 2005, after allowing Grayson to amend his complaint several times, the California Superior Court entered final judgment dismissing Grayson's claim in its entirety. WorldCom Br. Ex. 2. Grayson "intends" to file an Amended Complaint naming WorldCom and other parties as Defendants. See Grayson Record App. A at 2.

At no time did Grayson file or attempt to file a proof of claim in the Debtors' chapter 11 cases. May 24, 2005 Bankr.Hearing Tr. ("May 24, 2005 Tr.") at 8.

On January 17, 2003, the State of California did file a timely proof of claim for $5,167,254 in debts allegedly owed by Debtors under the California Unclaimed Property Law, but did not include Grayson's claims, as noted by the Bankruptcy Court. Proof of Claim, WorldCom Record, Ex. I at Ex. A; May 24, 2005 Tr. at 7-9. That proof of claim does not include any allegations that the Debtors owed additional amounts to California as a result of prepaid calling card breakage, although under *qui tam* procedures California would have had notice of these claims as of the complaint's filing in February, 2002. *Id.*

*2 On February 26, 2004, Grayson filed a motion in the Bankruptcy Court seeking a declaration that the automatic stay was inapplicable to the Grayson Action, or, in the alternative, requesting that the automatic stay be lifted to allow Grayson to proceed against the Debtors in state court ("Grayson Bankr.Motion"). Grayson Record, Ex. A. On April 2, 2004, the Debtors filed an objection to the motion. Grayson Record, App. B. The Bankruptcy Court held a hearing on the motion on May 4, 2004, two weeks after the effective date of the Plan, April 20, 2004. May 4, 2004 Tr.

On May 24, 2005, the Bankruptcy Court denied Grayson's motion in an oral decision read into the record. May 24, 2005 Tr.[FN2] On June 20, 2005, the Bankruptcy Court entered an order denying Grayson's motion for the reasons previously stated on the record. June 20, 2005 Order, WorldCom Record Ex. H.

> FN2. The Plan became effective on April 20, 2004, so the Bankruptcy Court also considered the relief sought by Grayson as a request to lift the Plan Injunction. May 24, 2005 Tr. at 9; see Stipulation at 2, WorldCom Record Ex. G.

In his decision from the bench, Bankruptcy Judge Gonzalez held that 1) under California Law, "breakage" is not unused and unclaimed property of the consumer and thus does not escheat to the state; 2) Grayson's claims did not fall under the exception to the automatic stay of 11 U.S.C. § 362, applicable to interference with a state's exercise of its "police and regulatory power;" and 4) the Eleventh Amendment grant of sovereign immunity to the states is not applicable to Grayson's *qui tam* case on California's behalf; and 4) Grayson's action is barred by the Plan Injunction, and that Grayson had not provided sufficient justification to lift the Plan Injunction.

Grayson filed a notice of appeal from the Bankruptcy Court's decision with this Court on June 20, 2005, and filed a brief on August 4, 2005.

## II. DISCUSSION

### A. Standard of Review

This Court reviews the Bankruptcy Court's findings of fact under a clearly erroneous standard and conclusions of law de novo. *See* Fed. R. Bankr.P. 8013; *National Union Fire Ins. Co. v. Bonnanzio (In re Bonnanzio),* 91 F.3d 296, 300 (2d Cir.1996).

The decision to grant or deny relief from the automatic stay or, by analogy, the Plan Injunction,[FN3] is reviewed for abuse of discretion. *In re Sonnax Indus.,* 907 F.2d 1280, 1286 (2d Cir.1990). The Bank-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

Not Reported in F.Supp.2d, 2006 WL 2270379 (S.D.N.Y.)
**(Cite as: 2006 WL 2270379 (S.D.N.Y.))**

ruptcy Court's decision should not be disturbed on appeal where the record shows that court considered the appropriate factors for determining whether cause for relief from the stay exists. *See Id.* at 1288 (affirming denial of relief because court considered the appropriate factors.)

> FN3. As noted *supra,* in note 2, the Bankruptcy Court treated Grayson's request to lift the automatic stay as a request to lift the Plan Injunction, since it had become effective after his motion was filed.

## B. The Bankruptcy Court's Findings on "Breakage"

Judge Gonzalez found that Grayson was making a claim for the value on prepaid calling cards when the holder does not use all the value on the card. May 24, 2005 Tr. at 4. Judge Gonzalez also found that the terms of Debtors' tariff and Prepaid Service Agreement, which Grayson admitted governed the cards, prohibited the refund for activated or partially used calling cards, and that those terms provide that Consumers pay a fee in advance for the right to use Debtors' telecommunication services. *Id.* at 4-5. Therefore, Judge Gonzalez held, the only property held by the Debtors is the remaining amount of fees paid upfront which had become non-refundable after activation upon the first use of the calling card. *Id.* at 5.

**\*3** Judge Gonzalez's conclusion is a legal conclusion based on facts presented to him, (as conceded in Grayson's Brief at 17), and therefore these factual conclusions are subject to a clearly erroneous standard of review. Grayson does not show that the Bankruptcy Court erred in its conclusion.

Grayson concedes that until July 31, 2001, Debtors' relationships with customers were governed by tariffs filed with the State and Federal Communications Commission and after that date, by contract. Grayson Br. at 9-11; *see* Grayson Record App. C. Grayson quotes language from these documents,

FN4 such as the Tariff's promise that Debtors will "honor all unactivated cards for reimbursement" FN5 or "Minutes never expire," to support his argument that Debtors offered refunds, which now must escheat to the state. Grayson Br. at 9-11. The very language that Grayson quotes, however, does not support his conclusion. Rather this language expressly supports the Bankruptcy Court's conclusions that only completely unused cards were eligible for any refunds promised by Debtors (*but see* n. 5 and discussion in the following paragraph), and that it is calling card minutes, not cash, that is due to the Debtors' customers.

> FN4. Grayson has provided the Court with an excerpt from Tariff No. 1 and a flyer advertising the "MCI prepaid phone card," both attached as Exhibits B and C to his "Reply in Support of Motion for Order Declaring the Automatic Stay Inapplicable or, in the Alternative, Lifting the Automatic Stay." Grayson Record, Ex. C.

> FN5. This section of the Tariff reads in full as follows:

>> Activated MCI PrePaid cards are non-refundable and will expire on the date specified on the card or the carrier or package in which the card is included. The acquisition of a card will entitle the customer or the authorized user of the customer to make calls from the time of card activation until the available card balance either is depleted or until the card expires, whichever occurs first. MCI will honor all unactivated cards for reimbursement up to November 8, 1996. After this date, MCI shall no longer reimburse customers for unactivated cards that are returned to MCI.

> Tariff No. 1, Grayson Record, Ex. C, Attached as Ex. B, at § C 3 .264.

Grayson also argues that Judge Gonzalez misinter-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

Not Reported in F.Supp.2d, 2006 WL 2270379 (S.D.N.Y.)
**(Cite as: 2006 WL 2270379 (S.D.N.Y.))**

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

preted the claim in his "Complaint" [FN6] when he found that "Mr. Grayson's action only involves partially used cards which are not entitled to a refund or reimbursement for the unused portion of the card." Grayson Br. at 17; May 24, 2005 Hearing at 5. Grayson argues that there is "no such language in the Complaint" to suggest that Grayson wished to limit "the allegations to partially used cards." Grayson Br. at 17. The language in Grayson's Proposed Second Amended Complaint discussing "breakage," (which he defines as occurring when owners "do not use some of the calling card prepayment") is ambiguous. *See* Proposed Second Amended Complaint; Grayson Bankr.Motion Att. A, Grayson Record App. A. However, the language in the Tariff that Grayson cites for support of his argument that the Debtors offer refunds for "unactivated [sic] cards" (Grayson Br. at 9, citing Tariff No. 1, Grayson Record, Ex. C, Attached as Ex. B, at § C 3.264) and that Debtors have wrongfully withheld "unused prepayments [from] the Controller" (Grayson Br. at 17) is inconsistent with his claim, since the Tariff states only that "MCI will honor all unactivated [sic] cards for reimbursement up to November 8, 1996" and that after November 8, 1996, "MCI shall no longer reimburse customers for unactivated [sic] cards that are returned to MCI." Tariff No. 1 at § C 3.264. Grayson does not demonstrate that the Bankruptcy Court erred in concluding that WorldCom customers had no property interest in the balances of totally as well as partially unused cards, and that "the only property in question is the property of the Debtors and not property of the State of California...." May 24, 2005 Tr. at 5.

> FN6. In footnote 3 of his brief, Grayson explains that citations to the "Complaint" are to Grayson's Second Amended Complaint, which is attached as Attachment A to Grayson's Memorandum of Law in support of Grayson's Motion before the Bankruptcy Court, and which Grayson has "not filed ... in the California court because it names the Debtors as defendants."

Grayson Br. at 8, n. 3. *See* Proposed Second Amended Complaint, Grayson Bankr.Motion Att. A, Grayson Record App. A.

**\*4** The conclusions of the Bankruptcy Court are consistent with the opinions of the Superior Court of California, Sacramento County, which has twice dismissed the Grayson action for failure to state a claim, holding that the California Unclaimed Property Law does not apply to breakage. *See California ex rel. Grayson,* No. 02 AS 00790 (Cal.Super.Dec.10, 2004), and *California ex rel. Grayson,* No. 02 AS 00790 (Cal.Super. May 5, 2005); attached to WorldCom Br. as Exs. 1 & 2.

Accordingly, this Court finds that the Bankruptcy Court's conclusion that the State of California has no interest in the breakage claimed in the Complaint is not clearly erroneous.

**C. Grayson's Failure to File a Proof of Claim**

Grayson maintains that he is not barred from proceeding in the Bankruptcy Court because his failure to file a proof of claim prior to the bar date is satisfied by the State's proof of claim. Grayson Br. at 28-29. Grayson argues that 1) his claim is encompassed by the proof of claim filed by the State of California for escheat liability; 2) he should be permitted to amend California's proof of claim; or 3) he should be permitted to file a late proof of claim due to unique and extraordinary circumstances beyond his control. Grayson Br. at 29-30.

First, Judge Gonzalez made a finding of fact when he found that California's proof of claim did not encompass breakage from prepaid calling cards. May 24, 2005 Tr. at 8-9. Grayson's claim that Judge Gonzalez's finding was clearly erroneous is unavailing, since breakage from prepaid calling cards is not specifically mentioned in California's claim. [FN7] Furthermore, the Attorney General of California's determinations not to intervene in Grayson's action in state court and not to amend its own proof

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 2270379 (S.D.N.Y.)
**(Cite as: 2006 WL 2270379 (S.D.N.Y.))**

of claim to include breakage are indicative that it did not believe that breakage from prepaid calling cards was included in its claim.

> FN7. On August 10, 2004, Debtors and the State of California signed a stipulation of settlement regarding California's claims, and Judge Gonzalez signed it on August 24, 2004. Stipulation, WorldCom Record Ex. G. The Stipulation addressed California's proof of claim for "$5,167,254.00 on account of alleged escheat obligations" but made no mention of Grayson's breakage claims. *Id.* at 6. The proof of claim lists the claims of "unredeemed holders of gift certificates and vouchers" and "parties entitled to receive account credit balances and unidentified remittances," but makes no mention of breakage or unused prepaid calling card balances. *See* Proof of Claim, WorldCom Record Ex. I at Ex. A.

Second, Grayson requests that his proof of claim be treated as an amendment to the State of California's proof of claim. "The decision to grant or deny an amendment to a timely-filed proof of claim rests with the sound discretion of a bankruptcy judge." *In re Enron Corp.,* 298 B.R. 513, 520 (Bankr.S.D.N.Y.2003) (citation omitted). Amendment is not permitted for entirely new claims. *Id* . Since the State of California chose not to intervene in the Grayson Action, or, in light of Grayson's sealed complaint, to amend its proof of claim to include breakage or to file a separate proof of claim with respect to breakage, Grayson has not shown that the Bankruptcy Court abused its discretion in declining to approve Grayson's claim as an amendment to California's proof of claim.

Third, Grayson argues that this Court should permit him to file a late proof of claim due to "unique or extraordinary circumstances beyond ... reasonable control." (Grayson Br. at 29-30 (quoting *In re Drexel Burnham Lambert Group,* 146 B.R. 84, 88 (S.D.N.Y.1992)). As noted in *Drexel,* "Since the determination of whether or not a case is an appro-

priate one in which to grant a request to file late is expressly left to the Bankruptcy Court's discretion, [the District] Court may review the Bankruptcy Court's decision for abuse of discretion only." 146 B.R. at 87. Since Grayson's application came over a year after the bar date and just before the Plan's effective date, the decision was not an abuse of discretion.

**\*5** Grayson argues that because his action in the state court was filed under seal, he would have violated that seal by submitting a proof of claim in the Bankruptcy Court at an earlier date. Grayson Br. at 30. However, the Bankruptcy Code and Federal Rules of Bankruptcy Procedure provide a process for protecting confidentiality of documents filed with the Bankruptcy Court, and Grayson could have sought leave to file his proof of claim in the Bankruptcy Court under seal. 11 U.S.C. § 107(b); Fed. R. Bankr.P. 9018. Specifically, Bankruptcy Rule 9018 states, in pertinent part:

> On motion or on its own initiative, with or without notice, the court may make any order which justice requires ... (3) to protect governmental matters that are made confidential by statute or regulation. If an order is entered under this rule without notice, any entity affected thereby may move to vacate or modify the order, and after a hearing on notice the court shall determine the motion.

Fed. R. Bankr.P. 9018. Since Grayson could have moved the Bankruptcy Court prior to the bar date to allow him to file a proof of claim under seal, thereby avoiding violating the California statutory seal, and since allowing Grayson to file a late proof of claim would delay the Confirmation Plan and adversely affect other claimants, it was not an abuse of discretion for the Bankruptcy Court to find that unique and extraordinary circumstances were lacking to allow Grayson to file a late proof of claim.

**D. The Automatic Stay**

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

Not Reported in F.Supp.2d, 2006 WL 2270379 (S.D.N.Y.)
**(Cite as: 2006 WL 2270379 (S.D.N.Y.))**

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

Grayson argues that the Bankruptcy Judge erred in holding that the automatic stay (generated by the filing of the bankruptcy petition on July 21, 2002), is applicable to his action, because his action is a proceeding by a governmental unit to enforce the police and regulatory power. Grayson Br. at 21-25 (citing 11 U.S.C. § 362(b)).

11 U.S.C. § 362(b) states, in pertinent part:

The filing of a petition under section 301, 302, or 303 of this title ... does not operate as a stay-

...

(4) ... of the commencement or continuation of an action or proceeding by a governmental unit ... to enforce such governmental unit's ... police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's or organization's police or regulatory power

*Id.* Judge Gonzalez found, however, that § 362(b)(4) is to be read narrowly:
This section is intended to be given a narrow construction in order to permit governmental units to pursue actions to protect the public health and safety and not to apply to actions by a governmental unit to protect a pecuniary interest in property of the debtor or property of the estate.

May 24, 2005 Tr. at 6. (quoting *In re Chateaugay,* 115 B.R. 28, 32 (Bankr.S.D.N.Y.1988)).

Judge Gonzalez found both that 1) Grayson's "action is clearly not intended to protect the health or safety of the public," *and* that 2) Grayson's action is clearly seeking to protect a pecuniary interest and as such is not exempted from the stay. May 24, 2005 Tr. at 6-7 (citing *Chateaugay,* 115 B.R. 28). Grayson fails according to both prongs of the *Chateaugay* test.

**\*6** Grayson argues that since the Amended Complaint is also making claims under the California

False Claims Act and Consumer protection statutes, that *City of New York v. Exxon Corp.,* 932 F.2d. 1020 (2d Cir.1991), and not *Chateaugay,* is the precedent to exempt under § 362(b)(4) his fraud claims against the Debtor. Grayson Br. at 22. Grayson's citation is to *Exxon's* citation of the legislative history contemplating exemptions from the automatic stay "where a government unit is suing a debtor to prevent or stop violation of fraud, environmental protection ...," etc. *Id.* (citing *Exxon,* 932 F.2d. at 1024). *Exxon,* however, does not address whether section 362(b)(4) of the Bankruptcy Code applies to *qui tam* actions. *Exxon* addresses only whether actions by a governmental unit to recover damages for violations of environmental laws fall within the police power exemption to the automatic stay. *Exxon,* 932 F.2d at 1024.[FN8]

> FN8. The *Exxon* court held that the City's action for recovery of costs incurred in responding to violations of environmental statutes fell within the police power exception, and also noted that 11 U.S.C. § 362(b)(4) " *requires that such suits be brought by governmental units, not private persons.* " *Exxon,* 932 F.2d at 1024-1025 (emphasis added).

Here, Judge Gonzalez found that Grayson failed to support the proposition that one acting on behalf of a state can assert the police power exception of 362(b)(4).[FN9] May 24, 2005 Tr. at 7. *Id.* (emphasis added). Grayson does not cite any precedent to this Court for his proposition that a *qui tam* plaintiff is a "governmental unit" that may invoke the police and regulatory power of the state for the purposes of 11 U.S.C. § 362(b)(4) when, as Judge Gonzalez noted, the state itself has decided not to intervene in the case.[FN10]

> FN9. 11 U.S.C. § 362(b)(4) refers specifically to an "action or proceeding by a *governmental unit.*"

> FN10. Grayson cites *United States ex rel. Jane Doe 1 v. X, Inc.,* 246 B.R. 817, 819

Not Reported in F.Supp.2d, 2006 WL 2270379 (S.D.N.Y.)
**(Cite as: 2006 WL 2270379 (S.D.N.Y.))**

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

(D.Va.2000), for the proposition that "a qui tam suit is ... undeniably public in nature, as it is brought in the name of, and on behalf of the government, and the government is entitled to the lion's share of any amount recovered." However Judge Ellis explicitly noted in Doe that his holding was limited to the "narrow issue" of "whether the police powers exception to the automatic stay applies to a qui tam False Claims action where *the government has not yet decided whether to intervene.*" *Id.* at 818 (emphasis added). In *U.S. ex rel. Goldstein v. P & M Draperies, Inc.,* 303 B.R. 601, 605 (D.Md.2004), Judge Motz held that a *qui tam* plaintiff *in whose case the government had declined to intervene* could not invoke the police and regulatory exception of 11 U.S.C. § 362(b)(4). *Id.* Judge Motz specifically distinguished *Doe,* 246 B.R. 817, in light of that distinction, but also added that he "followed a different and contradictory line of reasoning." *Id.*

Grayson has not shown that Judge Gonzalez erred in finding that a *qui tam* action in which the state has decided not to intervene does not fall within the police power exception of 11 U.S.C. § 362(b)(4).

**E. Grayson's Action Does Not Implicate the Sovereign Immunity of the State of California**

Grayson next argues that the bankruptcy proceedings, in seeking "a forfeiture of State property" violate the State of California's sovereign immunity. Judge Gonzalez correctly held, however, that "the Eleventh Amendment's grant of sovereign immunity is not applicable in this case." May 24, 2005 Tr. at 8.

As Judge Gonzalez noted, "the Eleventh Amendment seems only to prohibit making a state a defendant in an action." May 24, 2005 Tr. at 8. The case at bar does not involve a suit filed by another party against a State. Instead, Grayson, *on behalf of* the State of California, seeks leave from the Bankruptcy Court to pursue a suit against the Debtors. *See, supra,* n. 1. Grayson argues that this is too narrow a reading of Eleventh Amendment jurisprudence, but does not cite any case to support his proposition that the Eleventh Amendment exempts his claim from the Bankruptcy Court's jurisdiction to impose a stay on his *qui tam* claim against the Debtors.

Since Plaintiff has cited no authority, and this Court has found none, supporting the proposition that a *qui tam* plaintiff can invoke sovereign immunity to allow it to pursue an action against the Debtors, the ruling of the Bankruptcy Judge is not erroneous. FN11

> FN11. Grayson invokes one case involving a qui tam plaintiff and an Eleventh Amendment claim, but that case, *United States ex rel. Stevens v. Vermont Agency of Natural Resources,* 162 F.3d 195, 202 (2d Cir.1998), involved the question of whether the Eleventh Amendment barred suit against a state by a *qui tam* plaintiff, whereas this case involves the reverse, a *qui tam* plaintiff attempting to invoke sovereign immunity for his action on behalf of the state.

**\*7** Furthermore, here the State of California submitted to the jurisdiction of the Bankruptcy Court in this case by filing its own proofs of claim before the Bankruptcy Court in this matter. See *Metromedia Fiber Network, Inc. v. Various State & Local Taxing Auth. ( In re Metromedia Fiber Network, Inc.),* 299 B.R. 251, 278 (Bankr.S.D.N.Y.2003) ("It has been long established that when a state files a proof of claim in a debtor's bankruptcy, it waives any immunity which it otherwise might have had respecting the adjudication of the claim.") (internal quotations omitted). It would be an absurd result if Grayson could assert the sovereign immunity of the State of California from Bankruptcy Court jurisdiction when the State's own filing with that court in-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 2270379 (S.D.N.Y.)
(Cite as: 2006 WL 2270379 (S.D.N.Y.))

dicates a lack of interest in pursuing Grayson's claim, and the State itself has submitted to the Bankruptcy Court's jurisdiction in filing its own proof of claim.

**F. The Plan Injunction**

The Bankruptcy Court considered Grayson's request to lift the automatic stay as a request to lift the injunction provision of the Plan, which became effective on April 20, 2004, after Grayson's proceeding had been unsealed. May 24, 2005 Tr. at 9. Section 10.04 of the Plan, labeled "Injunction," states as follows, in pertinent part:

Except as otherwise provided in the Plan, the Confirmation Order, or a separate order of the Bankruptcy Court, all entities who have held, hold, or may hold Claims against or Equity Interests in any or all of the Debtors and other parties in interest ... are permanently enjoined, on and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind against the Debtors or Reorganized Debtors with respect to any such Claim or Equity Interest, (ii) enforcing, attaching, collecting, or recovering by any manner or means of any judgment, award, decree, or order against [them] ... (iv) commencing or continuing in any manner any action or other proceeding of any kind with respect to any Claims and Causes of Action which are extinguished or released pursuant to the Plan, and (v) taking any actions to interfere with the implementation of the Plan.

Plan, WorldCom Record, Ex. D at Attach. 1, § 10.04. Grayson's action clearly falls within this injunctive language. Grayson argues that the Bankruptcy Court erred in finding Grayson's action barred by the Plan Injunction, because "the Bankruptcy Court did not ... explain what authority it has to prohibit the State from pursuing an action pursuant to the State's police and regulatory power in its own courts." Grayson has not established his right to invoke the Sovereign Immunity of the State of

California or its police and regulatory powers as has been discussed in Parts E and D, *supra.*

In the alternative, Grayson argues that the Bankruptcy Court erred when it determined that Grayson had not shown grounds to lift the Plan Injunction under the Sonnax twelve-factor test.[FN12] Grayson Br. at 33; *In re Sonnax Indus.,* 907 F.2d 1280 (2d Cir.1990). The twelve factors are:

> FN12. Both parties concede that the *Sonnax* factors apply to determining whether to lift the Plan Injunction in this case. Grayson Br. at 33; WorldCom Br. at 21.

**\*8** (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms.
*Id.* at 1286.

Judge Gonzalez's *Sonnax* findings were as follows:

First, the Superior Court of California, where Mr. Grayson's case is pending, cannot fully adjudicate the issue before it because Mr. Grayson is seeking property which is part of the estate. Second, as the Plan of Reorganization has been approved, allowing Mr. Grayson's action to proceed in Cali-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

Not Reported in F.Supp.2d, 2006 WL 2270379 (S.D.N.Y.)

**(Cite as: 2006 WL 2270379 (S.D.N.Y.))**

fornia would defeat the goal of an efficient and expeditious claims resolution process. Third, the California court is of general jurisdiction and not a specialized tribunal; further no such tribunal is necessary to adjudicate Mr. Grayson's claims. Fourth, this action does not involve primarily third parties. Fifth, the Grayson action is not near ready for trial. Finally, it is apparent to this Court that there is a claims adjudication process that has been established and there is no support to disrupt the established process.

May 24, 2005 Tr. at 11.

Judge Gonzalez's weighing of the *Sonnax* factors in considering whether or not to lift the Plan Injunction is reviewable for abuse of discretion. *See Sonnax,* 907 F.2d at 1286. Grayson argues that the Bankruptcy Court erred in evaluating the *Sonnax* factors, but does not present grounds for a finding of abuse of discretion. *See* Grayson Br. at 34-36. Grayson challenges the Bankruptcy Court findings only on *Sonnax* factors 1, 2, 4 and 6.

*Sonnax* Factor One: Partial resolution

Grayson disputes Judge Gonzalez's first finding, that the California Court could not fully adjudicate Grayson's claim, arguing that he seeks property that "escheated to the State before the Debtors filed their petition," and is therefore not property of the estate. Grayson Br. at 35. As already explained, Judge Gonzalez's holding to the contrary is consistent with several opinions in the California court. *See* Part B, *supra.* Obviously, even if Grayson's claim had merit, the funds he seeks are currently held by the Debtors and any relief he seeks will have to come out of the estate and would require further review by the Bankruptcy Court.[FN13]

> FN13. Grayson also argues that the California action *could* fully resolve the issue by *dismissing* Grayson's claims. Grayson Br. at 35. As Appellees note, however, (WorldCom Br. at 23), "it would be an ab-

surd waste of the estate's assets to permit a claim to be litigated in state court for the sole purpose of having it dismissed ."

**\*9** Grayson further argues that the Bankruptcy Court should have considered whether trial in the California court would lead to a "*partial* or complete resolution of the issues" and instead applied an unreasonably high standard to this factor because "[o]nly in extremely rare instances will an action in another court resolve all of the issues in a bankruptcy." Grayson Br. at 35. Thus, under Grayson's reasoning, *Sonnax's* language on this factor means little or nothing. Judge Gonzalez by ruling on Grayson's action completely resolved his claim.

*Sonnax* Factor Two: "interference with the bankruptcy case"

Judge Gonzalez determined that "as the Plan of Reorganization has been approved, allowing Mr. Grayson's action to proceed in California would defeat the goal of an efficient and expeditious claims resolution process." May 24, 2005 Tr. at 11. Grayson asserts that "the bankruptcy court [sic] did not make it clear to which of the Sonnax factors, if any, this applied," and that Judge Gonzalez's determination "is clearly incorrect in that it favors speed at the expense of prohibiting the State from carrying out its responsibility to protect the public from the Debtor's alleged wrongful ... business practices." Grayson Br. at 35 (quoting *In re Fucilo,* No. 00-36261, 2002 WL 1008935 at \*9 (Bankr.S.D.N.Y. Jan. 24, 2002). In *Fucilo,* the bankruptcy court permitted the state attorney general to go forward with an action for securities fraud against the debtor in state court because the action was "for a fine, penalty or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss ." *Id.* at \*4, 6.[FN14] Additionally, in *Fucilo* at \*9, the bankruptcy court found that the police and regulatory exception applied to the State Action, whereas here Grayson had not demonstrated that a *qui tam*

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

Not Reported in F.Supp.2d, 2006 WL 2270379 (S.D.N.Y.)
**(Cite as: 2006 WL 2270379 (S.D.N.Y.))**

Page 10

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20

plaintiff had a right to invoke the police and regulatory powers of the state when the state had declined to intervene in the action. *See* Part D, *supra.*

> FN14. The bankruptcy court also noted that the "decision is limited to the facts of this case." *Id.* at * 1.

Furthermore, Grayson has made no argument to suggest how the Bankruptcy Court abused its discretion in deciding that allowing Grayson's action to continue in state court would unnecessarily interfere with the administration of the bankruptcy case. As *Sonnax* factor two indicates, the Bankruptcy Court is not only permitted, it is also expected to consider "interference with the bankruptcy case" in determining whether to lift the injunction. *Sonnax,* 907 F.2d at 1286. The **purpose** of the **injunction**, as well as the automatic stay, is to allow the Bankruptcy Court to administer promptly the **claims** before it, a purpose which would be undermined by constant disruption if separate **claims** before other courts were permitted to continue until final resolution in the courts, particularly when the **claims** involve issues of law easily disposed of by the Bankruptcy Court.[FN15]

> FN15. As Appellees note, the Fucilo case involved an individual bankruptcy, whereas "the Debtors' bankruptcy filing is the largest in U.S. history and involves well over 38,000 proofs of claim."

*Sonnax* Factor Four: no "specialized tribunal"

**\*10** Grayson argues that Judge Gonzalez applied too narrow a reading of *Sonnax* factor four, when he held that "the California court is of general jurisdiction and not a specialized tribunal; further no such tribunal is necessary to adjudicate Mr. Grayson's claims." Grayson Br. at 35-36; May 24, 2005 Tr. at 11. Grayson argues that the issue involves "unclaimed property law" and as such, is "a matter exclusively of state law" and that, further, "the California court has expertise in applying Cali-

fornia's UPL, which the bankruptcy court surely lacks." Grayson Br. at 36 (citing *Fucilo* 2002 WL 1008935 at *1). However, Bankruptcy courts are often called upon to apply state laws in resolving claims against the estate. Grayson fails to explain how the Bankruptcy Court abused its discretion in applying this factor or in determining that efficiency considerations weighed in favor of staying the state court action.[FN16]

> FN16. In his Reply Brief, Grayson cites *In re Bogdanovich,* Nos. 00 Civ. 2264 & 00 Civ. 2266, 2000 WL 1804133, at *6 (S.D.N.Y. Dec. 8, 2000), in which the district court affirmed the bankruptcy court's lifting of the automatic stay, and noted that "the bankruptcy court found that the California Courts had the necessary expertise to hear the appeal and that granting relief from the stay would promote judicial efficiency and economy because resolution of the issues on appeal may obviate the need to relitigate these issues in the present adversary proceeding." *Id.* Grayson fails to note, however, that the Second Circuit reversed the *Bogdanovich* decision on appeal, and held that the bankruptcy court had abused its discretion in lifting the automatic stay. *In re Bogdanovich,* 292 F.3d 104, 115 (2d Cir.2002).

*Sonnax* Factor Six: primary involvement of third parties

In his opinion, Judge Gonzalez found that "this action does not involve primarily third parties." May 24, 2005 Tr. at 11. In his Reply Brief, Grayson argues that the Bankruptcy Court provided no rationale for its conclusion that this factor does not favor lifting the stay. Reply Br. at 10. He argues that he intends to sue defendants other than the Debtors, and that his proposed "Second Amended Complaint makes the same allegations against Debtors and the other defendants." Reply Br. at 11.[FN17] Appellees note that any claims Grayson has against other telecommunication providers could

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 2270379 (S.D.N.Y.)
**(Cite as: 2006 WL 2270379 (S.D.N.Y.))**

easily be severed from Grayson's action against the Debtors, which could be litigated in the Bankruptcy Court, and that there is no requirement or suggestion that the Debtors should be joined in the litigation with other providers. WorldCom Br. at 25. Grayson offers no argument or claim to show how the Bankruptcy Court abused its discretion in determining that Grayson's claim in this action did not *primarily* involve third parties.

> FN17. The Court notes that such a complaint would further delay the California court's resolution of the ownership status of calling card balances to the detriment of the conclusion of the bankruptcy action.

*Sonnax* Factor Eleven: trial readiness

Grayson does not dispute the Bankruptcy Court's finding that the Grayson action was "not near ready for trial." May 24, 2005 Tr. at 12.

*Sonnax* Factor Twelve: "impact of the stay" and "balance of harms"

Grayson does not dispute Judge Gonzalez's finding that the "claims adjudication process ... has been established and there is no support to disrupt the established process." *Id.*

Abuse of discretion review is a highly deferential standard of review, *In re Bolar Pharmaceutical Co., Sec. Litigation,* 966 F.2d 731, 732 (2d Cir.1992), and Grayson does not offer sufficient evidence or explanation to support a finding of abuse of discretion by the Bankruptcy Court in its application of the *Sonnax* factors.

## III. CONCLUSION

For the foregoing, reasons, the decision of the Bankruptcy Court is upheld in its entirety.

IT IS SO ORDERED.

S.D.N.Y.,2006.
In re Worldcom, Inc.
Not Reported in F.Supp.2d, 2006 WL 2270379 (S.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Received for Filing Oakland County Clerk 2010 JAN 05 PM 04:20