05-44481-rdd    Doc 19905    Filed 04/21/10    Entered 04/21/10 16:46:31    Main Document
Pg 1 of 7

**Hearing Date and Time:**
**April 23, 2010 at 10:00 a.m.**

Eugene J. Leff, Esq.
Acting Bureau Chief (NYC Office)
Environmental Protection Bureau
New York State Attorney General's Office
120 Broadway, 26th Floor
New York, NY 10271
(212) 416-8465 (tel)
(212) 416-6007 (fax)
eleff@ag.ny.gov

Counsel for Claimant New York State
Department of Environmental Conservation

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
_____

| | |
|---|---|
| **In re** | Chapter 11 |
| **DPH HOLDINGS CORP., <u>et</u> <u>al</u>.,** | Case No. 05-44481(RDD) |
| Reorganized Debtors. | (Jointly Administered) |

_____

**RESPONSE OF THE NEW YORK STATE DEPARTMENT**
**OF ENVIRONMENTAL CONSERVATION TO THE**
**STATEMENT OF GM COMPONENTS HOLDING LLC**
**REGARDING CLAIMS OBJECTION BETWEEN**
**REORGANIZED DEBTORS AND THE NEW YORK STATE**
**DEPARTMENT OF ENVIRONMENTAL CONSERVATION**

Claimant New York State Department of Environmental Conservation ("NYSDEC") hereby submits this Response to the Statement of GM Components Holding LLC regarding Claims Objection between Reorganized Debtors and the New York State Department of Environmental Conservation (the "GM Components Statement") and respectfully represents as follows:

1. GM Components Holding LLC ("GM Components") recognizes its "commitment" (GM Components Statement, para. 39) to investigate and remediate certain properties it acquired under the Order dated July 30, 2009 (Docket No. 18707) approving the First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-In-Possession, as Modified (the "Modification Order"). But it has proposed a construction of the Modification Order that improperly and artificially constricts the scope of that commitment, contrary to New York State environmental laws as well as the clear intent of the Modification Order. It also appears to request that this Court interpret how New York State environmental laws apply to GM Components.

2. NYSDEC reached an agreement with the Debtors and GM Components to resolve NYSDEC's Objection to the Debtors' Motion for Entry of Order Approving Modifications to Confirmed Amended First Plan of Reorganization and the Master Disposition Agreement. Language was included in the Modification Order identifying certain contaminated properties in New York State, then owned by Debtors but to be acquired by GM Components, and providing that GM Components would be responsible for their investigation and remediation.[1]

---

[1] The Modification Order, para. 63(ii)(2), provides that "GM Components, as Buyer of the Delphi Automotive Systems Site located at 1000 Lexington Avenue, Rochester, New York, identified in the New York State Department of Environmental Conservation ("NYSDEC") Environmental Site Remediation Database as Site Code 828064 (the "Rochester Facility"), and the Delphi Thermal Systems Facility located at 200 Upper Mountain, Lockport, New York, identified in the NYSDEC Environmental Site Remediation Database as Site Codes C932138, C932139, C932140, and 932113 and in the NYSDEC Spill Incidents Database as Site Code 0651261 (collectively, the "Lockport Facility"), acknowledges that it shall be responsible for conducting investigation and remediation of the Rochester Facility and the Lockport Facility in

3. The contaminated properties were defined by reference to site names, addresses and site codes. But contrary to GM Components' argument, the site codes and associated descriptions only identify the area that contains the source of contamination, not the full geographic extent of cleanup responsibilities imposed under New York law[2] (see the accompanying affidavit of Glenn May, a NYSDEC Engineering Geologist ("May Affidavit"), para. 9).

4. New York law, including the Environmental Conservation Law ("ECL") and the regulations adopted thereunder, defines the extent of cleanup responsibilities for each site.

5. For example, in the Brownfield Cleanup Program, all applicants, such as GM Components, have some off-site responsibility for contamination that has migrated to areas beyond a site's boundaries. All applicants must "address further contaminant migration from the Site" (6 NYCRR §375-3.8(c)(1)). The term "applicants" includes both "volunteers" and "participants" (ECL §27-1405(1)).

6. GM Components, in its Brownfields application, requested that it be considered a volunteer. Volunteers must perform a qualitative exposure assessment of contamination that has migrated from the site (6 NYCRR §375-3.8(b)(2)(i)).

7. NYSDEC has determined that GM Components should be considered a participant for these Brownfield Sites. GM Components, as a participant, must fully investigate contamination that has migrated from the site (6 NYCRR §375-3.8(b)(2)(ii))

---

accordance with applicable Environmental Laws.
[2] Reference to site names, addresses and codes at most enables NYSDEC to distinguish between on-site and off-site areas, which are subject to overlapping but sometimes different investigation and cleanup responsibilities.

and must propose or select a remedy which addresses the off-site contamination which has emanated or is emanating from the site (6 NYCRR §§375-3.8(c)(2) & 375-3.8(g)(2)).

8. The goals of remedial investigations at inactive hazardous waste disposal sites, including Brownfield Sites, at a minimum include (1) delineation of the areal and vertical extent of contamination at, and emanating from all media at the site and the nature of that contamination; (2) identification of the sources of contamination, the migration pathways and actual or potential receptors of contaminants; and (3) evaluation of the actual and potential threats to public health and the environment[3] (6 NYCRR §375-1.8(e)). (See the May Affidavit, para. 8). The phrase "contamination emanating from all media at the site," as used in 6 NYCRR § 375-1.8(3), includes contamination in areas beyond the site boundaries, as identified by site code or otherwise. NYSDEC routinely requires investigation and remediation to be carried out without regard to property boundaries. See May Affidavit, para. 8.

9. The approach to cleanup that GM Components proposes is inconsistent with New York law, has not been adopted by the New York Legislature or by NYSDEC, the agency responsible for administering New York environmental laws. That approach is in effect to create a doughnut hole that has been investigated and remediated but to leave the doughnut around it untouched. GM Components advocates leaving in place

---

[3] Under 6 NYCRR §375-1.2(aq), "Remedial site" or "site" means any real property consisting of a parcel, adjacent properties or parcels, or portions of properties or parcels, identified as: (1) An inactive hazardous waste disposal site; (2) A brownfield site; or (3) An environmental restoration project, as defined by the State assistance contract.

contamination for which it is responsible under New York law and the Modification Order, eliminating the source of contamination but leaving the surrounding property contaminated.

10. As an applicant to the Brownfields Cleanup Program, GM Components falls within the definition of a "participant" if it is "responsible according to ... principles of ... liability" (see ECL §27-1405(1)(a)).

11. Section 1141(a) of the Bankruptcy Code provides that "the provisions of a confirmed plan bind the debtor, . . . any entity acquiring property under the plan, and any creditor . . . ." 11 U.S.C. § 1141(a). The Modification Order, issued pursuant to the provisions of the Bankruptcy Code, is binding on GM Components and, therefore, GM Components is responsible according to statutory and common law principles.

12. This Court, however, need not rule on the status of GM Components in the NYS Brownfields Program under New York law. The determination of GM's status is not a "core" proceeding in this case. Nevertheless, the GM Components Statement in this proceeding raises questions about the interpretation of this Court's Modification Order. NYSDEC submits that this Court should issue a clarification that under its Modification Order GM Components is responsible for the investigation and remediation of the referenced sites in accordance with New York environmental laws, including such off-site responsibilities as may exist under those laws.

13. Any other interpretation of the Modification Order could not have been intended because it would abrogate NYSDEC's authority under New York's environmental laws and improperly relieve GM Components of liability for off-site obligations prescribed in the ECL and the regulations thereunder.

14. The investigation and remediation obligations under the Modification Order for off-site contamination are actual, not theoretical. As stated in the accompanying affidavit of Kelly Cloyd, a NYSDEC Engineering Geologist, there has been migration of contaminants from the Rochester Facility to adjacent areas (paras. 6-8). The contaminants found on adjacent property are the same contamination found at the Facility (para. 8).

15. Likewise, data obtained to date for the Lockport facility shows migration of contamination to adjacent areas, as stated in the May Affidavit (paras. 5-7). Further investigation is required to determine conclusively the source, nature and extent of the off-site contamination. Determining the source of this contamination is important as it could influence the remedy for the Brownfield Cleanup Program Sites that GM Components has applied to clean up (id., para. 7).

16. Under New York law, the Reorganized Debtors also remain responsible for the contamination at both Sites. Thus, if GM Components fails to comply with its responsibility to address off-site contamination, the cleanup of off-site contamination will be the responsibility of the Reorganized Debtors. That responsibility is the basis of the administrative claims asserted by NYSDEC against the Reorganized Debtors.[4]

17. The Reorganized Debtors remain liable as former owners and operators of the facilities, and GM Components is liable under the Modification Order and its status as the current owner and operator of the facilities. See ECL §§27-1313(4) & 27-1405(1)(a); Section 107(a) of the Comprehensive Environmental Response, Compensation and Liability Act, as amended, 42 U.S.C. §9607(a); and United States v.

---

[4] Both GM Components and the Reorganized Debtors are liable for the cleanup of the facilities.

<u>Hooker Chems. & Plastics Co.</u>, 722 F.Supp. 960 (W.D.N.Y. 1989) (Love Canal Landfill) (creators and maintainers of public nuisance liable for abatement). If GM Components complies with its responsibilities under the Modification Order and fully investigates and remediates the sites, then and only then will the Reorganized Debtors be relieved of the obligation to investigate and remediate the facilities.

18. Accordingly, the claim of NYSDEC against the Reorganized Debtors should not be disallowed.

Dated:  New York, New York
April 21, 2010

            Respectfully submitted,

            ANDREW M. CUOMO
            Attorney General of the
              State of New York
            Attorney for Claimant New York State
              Department of Environmental Conservation


             /s/  Eugene J. Leff
            _____
            EUGENE J. LEFF
            Acting Bureau Chief (NYC Office)
            Environmental Protection Bureau
            Office of the Attorney General
            120 Broadway
            New York, New York 10271
            (212) 416-8465