Hearing Date and Time:
April 23, 2010 at 10:00 a.m.

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Robert J. Lemons

WEIL, GOTSHAL & MANGES LLP
Weil, Gotshal & Manges LLP
1300 Eye Street, NW, Suite 900
Washington, D.C.  20005
(202) 682-7190
(202) 857-0940
David R. Berz, Esq.
David B. Hird, Esq.
Matthew D. Morton, Esq.

Counsel for Interested Party
GM Components Holdings LLC

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| **In re** | **Chapter 11** |
| **DPH Holdings CORP., et al.,** | **Case No. 05-44481 (RDD)** |
| **Debtors.** | **(Jointly Administered)** |

---

**REPLY STATEMENT OF GM COMPONENTS HOLDINGS LLC**
**REGARDING CLAIMS OBJECTION BETWEEN REORGANIZED**
**DEBTORS AND THE NEW YORK STATE DEPARTMENT**
**OF ENVIRONMENTAL CONSERVATION**

GM Components Holdings LLC ("Components"),[1] respectfully submits this Reply to the "Reorganized Debtors' Response to the Statement of GM Components Holding LLC Regarding Claims Objection Between Reorganized Debtors and the New York State Department of Environmental Conservation" ("Reorganized Debtors' Response") and to the Response of the New York State Department of Environmental Conservation to the Statement of GM Components Holding LLC Regarding Claims Objection Between Reorganized Debtors and the New York State Department of Environmental Conservation" ("NYSDEC Response").

**A.    Components Did Not Assume Reorganized Debtors' Liabilities**

1.    DPH Holdings Corp. and certain of its affiliated debtors in the above-captioned cases (collectively, the "Reorganized Debtors") and the New York State Department of Environmental Conservation ("NYSDEC") mischaracterize both the Court's Plan Modification Order[2] of July 30, 2009, and the Master Disposition Agreement ("MDA") of the same date.    Under both of those documents, Components acknowledged that it would undertake those responsibilities which a buyer and new

---

[1] Components is a wholly-owned subsidiary of General Motors LLC.  On June 1, 2009, Motors Liquidation Company (f/k/a General Motors Corporation) commenced a voluntary case under chapter 11 of title 11 of the United States Bankruptcy Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York.  On July 5, 2009, an order was entered approving the sale of certain assets of Motors Liquidation Company to a new and independent company, General Motors LLC, under section 363 of the Bankruptcy Code.  The sale to General Motors LLC closed on July 10, 2009.  General Motors LLC formed Components as a separate entity to hold certain assets purchased from Delphi Corporation (the "Debtor") effective upon closing of that transaction on October 6, 2009.

[2] Order Approving Modifications under 11 U.S.C. § 1127(b) to (I) First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors, and Debtors-in-Possession, as Modified and (II) Confirmation Order (Docket No. 12359).

owner of the Lockport and Rochester Properties would have under federal and state law.
But, under neither of those documents did Components assume the liabilities of the
Reorganized Debtors or become their successor in any way.

2.    Indeed, the provision of the Plan Modification Order upon which the
Reorganized Debtors and NYSDEC principally rely – paragraph 63(ii) – actually
confirms that Components did not take any obligation that it would not have otherwise
had as a buyer and new owner of the properties under law.  Paragraph 63(ii)(1) states in
relevant part that:

> Nothing in this Order or the Master Disposition Agreement
> releases, nullifies or enjoins the enforcement of any
> Liability to a governmental unit under Environmental Laws
> (as the term is defined in Master Disposition Agreement) or
> regulations . . . **that Buyers would be subject to under as
> the owner, lessor, or operator of the property after the
> date of entry of this order.**

Plan Modification Order ¶ 63(ii)(1) (Emphasis added).  Nothing in this paragraph states
that Components assumed any obligation of the Reorganized Debtors.

3.    Paragraph 63(ii)(2) is to the same effect:

> GM Components, **as Buyer** of the Delphi Automotive
> Systems Site located at 1000 Lexington Avenue, Rochester,
> New York, identified in the New York State Department of
> Environmental Conservation ("NYSDEC") Environmental
> Site Remediation Database as Site Code 828064 (the
> "Rochester Facility"), and the Delphi Thermal Systems
> Facility located at 200 Upper Mountain, Lockport, New
> York, identified in the NYSDEC Environmental Site
> Remediation Database as Site Codes C932138, C932139,
> C932140, and 932113 and in the NYSDEC Spill Incidents
> Database as Site Code 0651261 (collectively, the "Lockport
> Facility"), **acknowledges** that it shall be responsible for
> conducting investigation and remediation of the Rochester
> Facility and the Lockport Facility in accordance with
> applicable Environmental Laws.

3

Plan Modification Order ¶ 63(ii)(2) (emphasis added).  The paragraph refers to

Components **acknowledging** certain responsibilities **as buyer**, but not **assuming** the

responsibilities of anyone else.

4.    Prior to the entry of the Plan Modification Order, NYSDEC had objected

to the MDA because it had not included language expressly stating that Components had

assumed the Reorganized Debtors' liabilities at the Lockport and Rochester Properties.

In its July 14, 2009  "Objection of the State of New York to Debtors' Motion for Entry of

Order Approving Modifications to Confirmed Amended First Plan of Reorganization and

the Master Disposition Agreement Attached Thereto" ("NYSDEC Objection to MDA"),

NYSDEC contended that "[t]he MDA should be amended to state explicitly that the

obligation to clean up the Rochester Site and the Lockport Facility **will be assumed** by

the buyers of those sites."  ¶ 9 (emphasis added).  Components emphatically rejected this

position.  As Components' counsel David Berz stated in a July 19, 2009 e-mail to

Reorganized Debtors' counsel Kenneth Berlin (attached as Exhibit I):

> The new owner and operator will take the property subj
> [*sic*] to obligations under env [*sic*] law of any owner
> operator for sites it owns. **That said, the new owners
> should be entitled to negotiate a** [*sic*] **with the regulators
> on what remedies may be required rather than simply
> assuming the remedies preferred by the State.  If these
> are off site liabilities, then the debtor's liability is
> limited** [*sic*] **the claims process**. **Finally, also related to
> off site liabilities, the new owners should not be liable
> for such liabilities as the assets are to be sold free and
> clear** and I assume the order on the sale will make clear
> that they are being sold as such and without any risk of
> future claims for successor liability.

(Emphasis added).  Mr.  Berlin responded in an e-mail the same day (attached as Exhibit J):  "I do not believe that anyone has argued that GM has successor liability and there is clearly no basis for such an argument in this transaction."

5.      As ultimately negotiated among Components, the Reorganized Debtors, and NYSDEC, the final version Paragraph 63(ii) of the Plan Modification Order, did **not** follow NYSDEC's approach and state that Components had assumed the Reorganized Debtors' liability.  Rather, it followed Components' position simply acknowledged that Components, as a buyer, would have certain responsibilities.

6.      The Reorganized Debtors argue that the language of Paragraph 63(ii) of the Plan Modification Order "trumps" the language of Paragraph of 9.38 of the MDA which expressly stated that no buyer of the Reorganized Debtors' assets "assumes any Liability under Environmental Laws[3] of" the Debtors.  MDA at ¶ 9.38.   But this is not case; the two provisions are consistent:  in neither provision did Components assume the Reorganized Debtors' environmental liabilities.  Rather than one document "trumping" the other, the MDA and Plan Modification Order were executed and entered simultaneously should be interpreted as parts of a single transaction.  *See* In re Olympic Mills Corp., 477 F.3d 1 (1st Cir. 2007).  It is a black letter law principle that "when the provisions contained in the written contracts are susceptible to inconsistent constructions, it is the duty of the court, when such procedure is reasonably possible, to avoid an

---

[3] The term "Liabilities" as defined in Article 1.1 of the MDA includes "any and all liabilities of every kind and description whatsoever."  The term "Environmental Laws" is also defined in Article 1.1 of the MDA and includes "any and all statutes, rules regulations," etc. relating to pollution and protection of the Environment or protection of human health from environmental hazards."

interpretation which will bring them into conflict." Centrosoyus-America, Inc. v. United States, 30 F.3d 302, 304 (S.D.N.Y. 1928); accord, Cruden v. Bank of New York, 957 F.2d 961, 976 (2d Cir. 1992) ("the entire contract must be considered, and all parts of it reconciled, if possible, to avoid an inconsistency.") Components' interpretation harmonizes the MDA and the Plan Modification Order; NYSDEC and the Reorganized Debtors' interpretation creates an unnecessary and unintended inconsistency between them.

8.      The language of Paragraph 63(ii) in the July 30, 2010 Plan Modification Order is best understood in the context of proceedings in In re General Motors Corp., chapter 11 case no. 09-50026 (REG) (Bankr. S.D.N.Y.) less than a month earlier.[4]  In that case, Components' parent company General Motors LLC ("New GM") was seeking to buy assets from the chapter 11 debtor General Motors Corporation ("Old GM"), including manufacturing properties in New York State.  NYSDEC objected that New GM should not be allowed to purchase these properties without assuming environmental liabilities associated with them as the successor to Old GM.  In a lengthy opinion issued on July 5, 2010, In re General Motors Corp., 407 B.R. 463, 507-08 (Bankr. S.D.N.Y. July 5, 2009), Judge Gerber rejected NYSDEC's arguments and held that the properties could be transferred to New GM without Old GM stepping into its liabilities.   Judge Gerber discussed the reasons for rejecting NYSDEC's argument and concluded that "[a]ny old GM properties to be transferred will be transferred free and clear of successor liability."

---

[4] As cited by the Reorganized Debtors, the Second Circuit held recent in Israel v. Chabra, 2010 U.S. App. LEXIS 6734, *2, n. 2 (2d Cir. April 1, 2010) that this Court must "give effect to the intent of the parties at the time" the order was issued.

Id. at 508.   But Judge Gerber also acknowledged that as the new owner of the properties,

"the purchaser would have to comply with its environmental responsibilities, starting

with the day it got the property."   Id.

9.       The language of Paragraph 63(ii) of the Plan Modification Order in this

case reflects the same distinction made by Judge Gerber in his opinion:   Components

was not assuming the Reorganized Debtors' environmental liabilities as a successor, but

it was acknowledging its responsibilities as a buyer and new owner of the Lockport and

Rochester Properties.  If the parties had intended for Components to have assumed the

Reorganized Debtors' obligation, the word "assume," which NYSDEC argued for, would

have been included in the Plan Modification Order.  It was not.  Rather, Paragraph

63(ii)(2) stated that Components **acknowledged** that it would have certain

responsibilities **as buyer** under applicable environmental laws, consistent with

Components' position.[5]

**B.      Under Both New York's Brownfield Law and the Federal Superfund Law, A New Buyer's Obligation to Address Pre-Existing Contamination is More Limited than the Liability of a Prior Owner.**

10.      The distinction between Components' acknowledgement of certain

responsibilities as a buyer of these properties – which did happen – and the assumption of

the Reorganized Debtors' liabilities – which did not happen – is critical because both the

New York Brownfields Cleanup Program and the federal Superfund law distinguish

---

[5] The fact that Components acquired environmental records from the Reorganized Debtors under the MDA is irrelevant to the issue whether Components "assumed" the Reorganized Debtors' liability.  It was reasonable for Components to have copies of those records for reference in the on-going operations of the properties.  Nothing in the MDA precluded the Reorganized Debtors from maintaining their own copy of those records.

between the person who owned properties when pollution occurs and buyers who acquire afterwards. Under both laws, a new owner's responsibilities are more limited than those who owned the property previously.

11.        As noted in Components' initial Statement, the Brownfield Cleanup Program of the State of New York (the "BCP"), New York Environmental Conservation Law ("ECL") Article 27 Title 14, distinguishes between "Volunteers" and "Participants." Under New York law, a "Volunteer" includes "a person whose liability arises solely as a result of such person's ownership or operation of or involvement with the site subsequent to the disposal or discharge of contaminants."   ECL 27-1405(1)(b).   Components qualifies as a "Volunteer" under the BCP. In its in its March 16, 2010 Supplemental Response of the New York State Department of Environmental Conservation in Opposition to Reorganized Debtors' Supplemental Reply to Responses of Certain Claimants to Debtors' Objections to Proofs of Claim Nos. 13776 and 13881 ("NYSDEC Supplemental Reply"), NYSDEC  acknowledged that as a Volunteer, Components would not have responsibility for pre-existing off-site contamination:

> [u]nder New York law, a Volunteer's responsibility for cleanup is more restricted than a Participant's. A Participant is required to implement a remedial program for contamination that has emanated from a site within the BCP, as well as for contamination on the site. (ECL 27-1411(2)). A Volunteer is only required to do so for contamination within the boundaries of the site. (Id.) Consequently, if GM [Components] is treated as a Volunteer at the Lockport Site, the cleanup of any off-site contamination will be the responsibility of NYSDEC.

NYSDEC Supplemental Reply ¶ 7.   In its recent NYSDEC Response at ¶¶   10-11,

NYSDEC argues that the Plan Modification Order provides a separate basis to hold

Components liable for off-site contamination as a Participant, rather than a Volunteer.

But this argument is both circular and wrong:  NYSDEC is arguing that if Components

had assumed the Reorganized Debtors' liability, then it would not be a Volunteer.  But, as

discussed above, Components did not assume the Reorganized Debtors' liability.

Therefore, as a purchaser, Components qualifies as a Volunteer.

12.     Similar to New York law, the federal Comprehensive Environmental

Response Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601 et seq.,

recognizes the distinction between new purchasers of contaminated property and the

former owner at the time of pollution.  As amended in 2002, section 107(r)(1) of

CERCLA provides that "a bona fide prospective purchaser whose potential liability for a

release or threatened release is based solely on the purchaser's being considered to be an

owner or operator of a facility shall not be liable." 42 U.S.C. § 9607(r)(1).  Thus,

contrary to the Reorganized Debtor's arguments, Components, as a bona fide prospective

purchaser, would not be liable under CERCLA.  The responsibilities of a bona fide

prospective purchaser are set forth in 42 U.S.C. § 9601(40), and they are very similar to

the responsibilities of a Volunteer under ECL 27-1405(1)(b).

13.     Components is not asking this Court to determine the outer limits of its

responsibilities as a buyer of the Lockport or Rochester Properties under federal or state

law.  We agree with NYSDEC that the extent of Components' responsibility as a buyer is

a subject for another proceeding.  But Components believes that this Court has the

authority to determine the meaning of its Plan Modification Order and to hold that

whatever responsibilities Components may have comes from the application of these laws to a new purchaser and **not** from assuming any of the Reorganized Debtors' liabilities.

14.    With respect to the Lockport Property, Components understands that its responsibilities as new owner include all five of the Site Codes identified in Paragraph 63(ii)(2) of the Plan Modification Order.  Components also understands, as NYSDEC describes in Response, that each of these Site Codes refers to a separate source area on the Lockport Property.  Components' reason for referring to those Site Codes in its Statement was to show that NYSDEC's own Database showed that as of  the date of Components' acquisition of the Lockport Property, there was no *off-site* contamination associated with those Site Codes.  See Ex. A-E to Components' initial Statement. NYSDEC has not disputed that point.[6]  Rather, it has submitted the Affidavit of Glen M. May to the effect that in March 2010, NYSDEC discovered certain contamination off of the Lockport property which it speculates may be associated with the historic operations of the Lockport Property.  May Affidavit ¶¶ 4-6.   But, even Mr. May admits that he is not certain whether this off-site contamination did originate from the Lockport Site, and he does not say that it is connected with any of the five Site Codes.  May Affidavit at ¶ 6. This off-site contamination may or may not have originated from the Lockport Property, but it is not Components' responsibility as a new buyer of the property.  As a new

---

[6] The Reorganized Debtors quoted a statement from a 2005 NYSDEC decision that, with respect to one of the Site Codes that NYSDEC would consider additional remedial measures if there were further groundwater migration.  Reorganized Debtors Response at ¶ 19. But as of 2009 when Components acquired the property and as of today, no such off-site groundwater migration had been found.  *See* Ex. A-E to Components' Initial Statement.

property owner, Components believes that it has responsibility for what happens on its

property and not just within the area of the five Site Codes, but it does **not** have

responsibility for contamination which left the property limits before it acquired the

property.  With respect to the Rochester Property, Components as the new owner has

responsibility for the investigation and remediation activities associated with the Site

Code, but off-site impacts are being addressed only through on-site activities.[7]

15.      But as noted above, Components is not seeking to have this Court

pronounce on the limits of its obligation as a buyer, but rather to have this Court hold,

consistent with the language of Paragraph 63(ii) of the Plan Modification Order, that

Components did not assume the liabilities of the Reorganized Debtors.

**C.      The Court Does Not Need to Determine the Outer Limits of Components'
Responsibility to Resolve NYSDEC's Claim Because the Reorganized Debtors
Remain Liable to NYSDEC at the Lockport and Rochester Properties.**

16.      In any event, the Court does not need to decide the extent of Components'

responsibilities under federal or state law to resolve the Reorganized Debtors' Objection

to NYSDEC's claim.  Regardless of the extent of Components' responsibilities, the

Reorganized Debtors remain liable to NYSDEC as the former owner of the Lockport and

Rochester Properties, as NYSDEC itself asserts in its Response at ¶¶ 16-17.  Nothing in

---

[7] Because of the nature of this proceeding, Components has not responded to all of
NYSDEC's factual allegations about the Lockport and Rochester Facility.  But that
should not be construed as acceptance of NYSDEC's allegations.  For example, in the
Affidavit of Kelly C. Cloyd, Mr. or Ms. Cloyd states that a Haley & Aldrich figure shows
that off-site well no. R-305 near the Rochester Property "has contained a thickness of
LNAPL [Light Non-Aqueous Phase Liquid] up to 8.63 feet."  Cloyd Affidavit at ¶ 7.
That is an erroneous reading of the Haley & Aldrich figure which is attached as Exhibit
K.  Instead, the figure shows that as of 2008, there were only "TRACE" levels of LNAPL
in well R-305.

either the Plan Modification Order or the MDA relieves the Reorganizes Debtors of their

liabilities to NYSDEC in the claims resolution process.  Under CERCLA, the statute

invoked by the Reorganized Debtors, multiple parties can be held jointly and severally

liable for the environmental release.   United States v. Chem-Dyne Corp., 572 F. Supp.

802 (S.D. Ohio 1983).   Moreover, section 107(e)(1) of CERCLA expressly provides that

"[n]o indemnification, hold harmless or similar agreement or conveyance shall be

effective to transfer from the owner or operator of any vessel or facility, or from any

other person who may be liable for a release or threat of release under this section, to any

other person, the liability under this section."  42 U.S.C. § 9607(e)(1).  Therefore,

regardless of what rights NYSDEC may have against Components, the conveyance of the

Lockport and Rochester Properties was not effective in transferring the Reorganized

Debtors' liability, and NYSDEC is not precluded from pursuing its claims before this

Court against the Reorganized Debtors.

       WHEREFORE, Components respectfully requests that any ruling issued

by this Court with respect to the claims objection between the Reorganized Debtors and

NYSDEC accurately reflect Components' obligations and rights as an owner of the New

York Properties in a manner that is consistent with the documentation of the sale of the

assets from the Reorganized Debtors to Components as described in the Plan

Modification Order and MDA.  Components respectfully requests that any Court ruling

issued with respect to this claims objection be issued in a manner that does not prejudice

Components' current and future obligations and rights as an owner of the New York

Properties or any other assets it purchased from the Reorganized Debtors in these

bankruptcy cases.

Dated: April 22, 2010

WEIL, GOTSHAL & MANGES LLP

By: /s/ Robert J. Lemons

Robert J. Lemons
767 Fifth Avenue
New York, N.Y. 10153
(212) 310-8000

- and –

David R. Berz, Esq.
David B. Hird, Esq.
Matthew D. Morton, Esq.
Weil, Gotshal & Manges LLP
1300 Eye Street, NW, Suite 900
Washington, D.C.  20005
(202) 682-7000
(202) 857-0940

Attorneys for GM Components Holdings
LLC

# EXHIBIT I

## Kirkman, Alayne

| | |
|---|---|
| **From:** | Berz, David |
| **Sent:** | Sunday, July 19, 2009 3:01 PM |
| **To:** | Kenneth.Berlin@skadden.com |
| **Cc:** | Elizabeth.Malone@skadden.com; Waksman, Ted; Lemons, Robert; Tanenbaum, Jeff |
| **Subject:** | Re: FW: NON-FORM OBJECTOR: Depositions of Objector Witnesses (NY Dept of Environmental Conservation) |

<u>U.S. Internal Revenue Service (IRS) Circular 230 Notice</u>: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the U.S. Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

*   *   *

Just got off plane from UK. I will be at home to night after 7 30. 301 229 6485. All of this seems entirely irrelevant to me. The new owner and operator will take the property subj to obligations under env law of any owner operator for sites it owns. That said, the new owners should be entitled to negotiate a with the regulators on what remedies may be required rather than simply assuming the remedies preferred by the State. If these are off site liabilities, then the debtor's liability is limited the claims process. Finally, also related to off site liabilities, the new owners should not be liable for such liabilities as the assets are to be sold free and clear and I assume the order on the sale will make clear that they are being sold as such and without any risk of future claims for successor liability.

DRB

| | | | |
|---|---|---|---|
| "Berlin, Kenneth" <Kenneth.Berlin@skadden.com> | | To | "'david.berz@weil.com'" <david.berz@weil.com> |
| 07/19/2009 02:41 PM | | cc | "Malone, Elizabeth A" <Elizabeth.Malone@skadden.com> |
| | | Subject | FW: NON-FORM OBJECTOR: Depositions of Objector Witnesses (NY Dept of Environmental Conservation) |

```
 Hi David  - could we discuss this (and in general the objections of New York and
Michigan) at your earliest convenience.  I can be reached today at 202-468-9040.

-----Original Message-----
From: MacDonald, Neil (CHI)
Sent: Sunday, July 19, 2009 7:38 AM
To: Meisler, Ron E (CHI); Berlin, Kenneth (WAS)
Cc: Hogan III, Albert L (CHI)
Subject: NON-FORM OBJECTOR: Depositions of Objector Witnesses (NY Dept of Environmental
Conservation)

 I left Eugene Leff a voicemail and sent him an email this morning about setting up a
deposition schedule.  What's your availability?

Neil MacDonald
Skadden, Arps, Slate, Meagher & Flom LLP
155 North Wacker Drive | Suite 2700
Chicago | Illinois | 60606-1285
T: 312.407.0548 | F: 1 312 407 8633
neil.macdonald@skadden.com
```

-----Original Message-----
From: Meisler, Ron E (CHI)
Sent: Saturday, July 18, 2009 10:59 PM
To: MacDonald, Neil (CHI)
Cc: Hogan III, Albert L (CHI); Berlin, Kenneth (WAS)
Subject: RE: NON-FORM OBJECTOR: Proposed Hearing Witness List (NY Dept of Environmental
Conservation)

This is not going away and we are going to need to get done at the confirmation hrg. I
would think we should depose these guys so we know what they plan on saying.  If nec'y, I
would propose that Ken and I depose them with a jr litigator to help us.

-----Original Message-----
From: MacDonald, Neil (CHI)
Sent: Saturday, July 18, 2009 9:57 PM
To: Meisler, Ron E (CHI)
Cc: Hogan III, Albert L (CHI)
Subject: Re: NON-FORM OBJECTOR: Proposed Hearing Witness List (NY Dept of Environmental
Conservation)

Not sure.  We stayed far away from dep disco during the M/C.
     This is one of those matters that we are hoping gets deferred until after the
hearing, or gets decided as a matter of procedure or law gets decided straight out at the
hearing.


Neil MacDonald
Skadden, Arps, Slate, Meagher & Flom LLP
T: 312.407.0548 | F: 312.407.0411

----- Original Message -----
From: Meisler, Ron E (CHI)
To: Berlin, Kenneth (WAS)
Cc: Chiappetta, Louis S (CHI); MacDonald, Neil (CHI)
Sent: Sat Jul 18 22:52:33 2009
Subject: FW: NON-FORM OBJECTOR:  Proposed Hearing Witness List (NY Dept of Environmental
Conservation)

 Ken, fyi.

Neil, are we going to depose these guys?
-----Original Message-----
From: MacDonald, Neil (CHI)
Sent: Saturday, July 18, 2009 3:39 PM
To: Meisler, Ron E (CHI); Hogan III, Albert L (CHI); Garner, Lee P (CHI)
Cc: Stuart, Nathan L (CHI); Chiappetta, Louis S (CHI)
Subject: NON-FORM OBJECTOR: Proposed Hearing Witness List (NY Dept of Environmental
Conservation)

 FYI.



-----Original Message-----
From: Eugene Leff [mailto:Eugene.Leff@oag.state.ny.us]
Sent: Saturday, July 18, 2009 4:32 PM
To: MacDonald, Neil (CHI)
Cc: bxconlon@gw.dec.state.ny.us; mcdesmon@gw.dec.state.ny.us
Subject: Fw: Delphi Bankruptcy - Hearing Witness List

Neil-
The preliminary witness list of the New York State Department of Environmental
Conservation for Thursday's hearing is attached.  However, we object to the short notice
of the witness list deadline and reserve our rights to modify the list.  Further, we
similarly object to the short notice provided for submission of exhibit lists.


Eugene Leff
Assistant Attorney General &
  Deputy Bureau Chief
Office of the Attorney General
120 Broadway
New York, New York 10271
(212) 416-8465
(347) 346-1090 (weekends
  and evenings)

Message sent from a BlackBerry Device.


---------------------------------------------------------------------------
*****************************************************

To ensure compliance with Treasury Department regulations, we advise you that, unless
otherwise expressly indicated, any federal tax advice contained in this message was not
intended or written to be used, and cannot be used, for the purpose of (i) avoiding tax-
related penalties under the Internal Revenue Code or applicable state or local tax law
provisions or (ii) promoting, marketing or recommending to another party any tax-related
matters addressed herein.
*****************************************************
*****************************************************

This email and any attachments thereto, is intended only for use by the addressee(s)
named herein and may contain legally privileged and/or confidential information. If you
are not the intended recipient of this email, you are hereby notified any dissemination,
distribution or copying of this email, and any attachments thereto, is strictly
prohibited. If you receive this email in error please immediately notify me at (212) 735-
3000 and permanently delete the original copy and any copy of any email, and any printout
thereof.

Further information about the firm, a list of the Partners and their professional
qualifications will be provided upon request.
*****************************************************
===========================================================================

----- Message from "Eugene Leff" <Eugene.Leff@oag.state.ny.us> on Sat, 18 Jul 2009 16:32:16 -0400 -----
   **To:** "MacDonald, Neil" <Neil.MacDonald@skadden.com>
   **cc:** "bxconlon@gw.dec.state.ny.us" <bxconlon@gw.dec.state.ny.us>, "mcdesmon@gw.dec.state.ny.us"
   <mcdesmon@gw.dec.state.ny.us>
   **Subject:** Fw: Delphi Bankruptcy - Hearing Witness List

Neil-
The preliminary witness list of the New York State Department of Environmental
Conservation for Thursday's hearing is attached.  However, we object to the short notice
of the witness list deadline and reserve our rights to modify the list.  Further, we
similarly object to the short notice provided for submission of exhibit lists.

Eugene Leff
Assistant Attorney General &
  Deputy Bureau Chief
Office of the Attorney General
120 Broadway

New York, New York 10271
(212) 416-8465
(347) 346-1090 (weekends
 and evenings)

Message sent from a BlackBerry Device.


----- Message from "Gene Leff" <elgene10@earthlink.net> on Sat, 18 Jul 2009 16:19:41 -0400 -----
**To:** "eleff@oag.state.ny.us" <eleff@oag.state.ny.us>
**Subject:** Delphi Bankruptcy - Hearing Witness List
[attachment "Delphi Bankruptcy Witness List.doc" deleted by David Berz/DC/WGM/US]

# EXHIBIT J

## Kirkman, Alayne

| | |
|---|---|
| **From:** | Berlin, Kenneth [Kenneth.Berlin@skadden.com] |
| **Sent:** | Sunday, July 19, 2009 6:30 PM |
| **To:** | Berz, David |
| **Subject:** | RE: FW: NON-FORM OBJECTOR: Depositions of Objector Witnesses (NY Dept of Environmental Conservation) |

I will get you a copy of the latest draft of the Sales Order.  Unlike the GM bankruptcy, I don't believe that anyone has argued that GM has successor liability and there is clearly no basis for such an argument in this transaction.  I will call you later to discuss the objections and the witnesses..

---------------------------------------------------------------------
****************************************************

To ensure compliance with Treasury Department regulations, we advise you that, unless otherwise expressly indicated, any federal tax advice contained in this message was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding tax-related penalties under the Internal Revenue Code or applicable state or local tax law provisions or (ii) promoting, marketing or recommending to another party any tax-related matters addressed herein.
****************************************************
****************************************************

This email and any attachments thereto, is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this email, you are hereby notified any dissemination, distribution or copying of this email, and any attachments thereto, is strictly prohibited. If you receive this email in error please immediately notify me at (212) 735-3000 and permanently delete the original copy and any copy of any email, and any printout thereof.

Further information about the firm, a list of the Partners and their professional qualifications will be provided upon request.
****************************************************

=================================================================================

**EXHIBIT K**



LEGEND:

R-236        WELL LOCATION ID
8.91         LNAPL THICKNESS FROM 2008 SAMPLING EVENTS
0.44         CHANGE IN THICKNESS FROM 2003 SAMPLING EVENT
1.30         CHANGE IN THICKNESS FROM 2004 SAMPLING EVENT

◊            BLASTED BEDROCK TRENCH RECOVERY WELL
──           GROUNDWATER RECOVERY TRENCH

*NOTE:
RED VALUES INDICATE AN INCREASE IN THICKNESS
BLUE VALUES INDICATE A DECREASE IN THICKNESS

THE JANUARY SAMPLING EVENTS IN 2003 AND 2004 WERE
GENERALLY USED TO DETERMINE CHANGE IN THICKNESS.
IN SOME CASES DATA FROM THE APRIL OR JULY SAMPLING
EVENTS WERE USED.

HALEY& / ALDRICH

DELPHI CORPORATION
LEXINGTON AVENUE FACILITY RI/FS
ROCHESTER, NEW YORK

LNAPL POSTING MAP
2003 THROUGH 2008

SCALE: AS SHOWN
MAY 2008

FIGURE 1