Dennis J. Raterink (P52678)
Michigan Assistant Attorney General
(Pro Hac Vice)
Labor Division
P.O. Box 30736
Lansing, MI 48909
(517) 373-1176
Attorney for Michigan Self-Insurers' Security Fund

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

_____

In Re:                                          Chapter 11
DPH HOLDINGS CORP., <u>et al.</u>,              Case No. 05-44481 (RDD)

          Reorganized Debtors.         (Jointly Administered)

_____


**APPELLANT MICHIGAN SELF-INSURERS' SECURITY FUND'S MEMORANDUM
OF LAW IN SUPPORT OF ITS APPEAL FROM BANKRUPTCY COURT'S ORDER
PURSUANT TO 11 U.S.C. §503(B) AND FED. R. BANKR. P. 3007 (I) DENYING
MICHIGAN SELF-INSURERS' SECURITY FUND'S MOTION TO PERMIT LATE
FILED CLAIM AND (II) DISALLOWING AND EXPUNGING PROOF OF CLAIM
NUMBERS 19501, 19502, 19541, AND 19542**

# TABLE OF CONTENTS

Page

Index of Authorities ............................................................................................... ii

Statement of Appellate Jurisdiction ......................................................................... iii

Concise Statement of Issues Presented and Standard of Appellate Review ................................. iv

Statement of Facts .................................................................................................. 1

1.    Events Underlying the Self-Insurers' Security Fund's Claims ........................................... 1

2.    The Bankruptcy Court Refused to Allow the SISF's Late Filed Claims ........................... 5

Argument ............................................................................................................... 7

I.    The Bankruptcy Court erred in concluding that the doctrine of "excusable neglect"
      under Bankruptcy Rule 9006(b) did not apply to the Michigan Self-Insurers' Security
      Fund's failure to file a timely proof of claim .................................................................. 7

II.   The Bankruptcy Court erred in concluding that the Michigan Self-Insurers' Security
      Fund's erroneous determination that it did not possess a claim did not warrant a
      finding of "excusable neglect" simply because the reason for the delay was "within
      the reasonable control" of the SISF. ............................................................................ 10

III.  The Bankruptcy Court erred in determining that the allowance of the Michigan Self-
      Insurers' Security Fund's late claim would create prejudice to the debtor, when the
      only prejudice demonstrated by Debtor was prejudice to other creditors. ....................... 14

      1.    Floodgates ............................................................................................................ 14

      2.    Prejudice to Creditors .......................................................................................... 15

Conclusion and Relief Sought .................................................................................. 17

# INDEX OF AUTHORITIES

## Cases

*In re Crane Rental Company, Inc.*,
   334 B.R. 73 (W.D. Mass. 2005) ............................................................................. 12

*In re Keene Corp.*,
   188 B.R. 903, 910 (Bank. S.D.N.Y. 1995) .............................................................. 8

*In re Rhodes, Inc.*,
   2007 Bankr. LEXIS 4606 (N.D. Georgia – 2007) ............................................. 15, 16

*Pioneer Investment Services Co. v Brunswick Associates Limited Partnership*,
   507 U.S. 380; 113 S. Ct. 1489; 123 L. Ed. 2d 74 (1993)........................... 7, 8, 12, 13

## Rules

Fed. R. Bank. P. 9006(b) ........................................................................................ 7, 13

## Statutes

MICH. COMP. LAWS §418.101 ................................................................................... 1

MICH. COMP. LAWS §418.537 ........................................................................... 1, 9, 11

MICH. COMP. LAWS §418.551(4) ............................................................................. 10

## STATEMENT OF APPELLATE JURISDICTION

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. §158(a)(1) to hear appeals from final judgments, orders and decrees.  The bankruptcy court's Order Pursuant to 11 U.S.C. §503(b) and Fed. R. Bankr. P. 3007 (I) Denying Michigan Self-Insurers' Security Fund's Motion to Permit Late Filed Claim and (II) Disallowing and Expunging Proof of Claim Numbers 19501, 19502, 19541, and 19542, from which the Michigan Self-Insurers' Security Fund appeals, is a final order.

## CONCISE STATEMENT OF ISSUES PRESENTED
## AND STANDARD OF APPELLATE REVIEW

1.  Did the Bankruptcy Court err in concluding that the doctrine of "excusable neglect" under Bankruptcy Rule 9006(b) did not apply to the Michigan Self-Insurers' Security Fund's failure to file a timely proof of claim?  The bankruptcy court's determination is reviewed for an abuse of discretion.  To determine whether an error of law exists, the bankruptcy court's application of the law to the facts is reviewed *de novo*.

2.  Did the Bankruptcy Court err in concluding that the fact that the Michigan Self-Insurers' Security Fund's erroneous determination that it did not possess a claim did not warrant a finding of "excusable neglect" simply because the reason for the delay was "within the reasonable control" of the Self-Insurers' Security Fund?  The bankruptcy court's determination is reviewed for an abuse of discretion.  To determine whether an error of law exists, the bankruptcy court's application of the law to the facts is reviewed *de novo*.

3.  Did the Bankruptcy Court err in determining that allowing the Michigan Self-Insurers' Security Fund's late claim would create prejudice to the debtor when the only prejudice demonstrated by Debtor was prejudice to other creditors?  The bankruptcy court's determination is reviewed for an abuse of discretion.  To determine whether an error of law exists, the bankruptcy court's application of the law to the facts is reviewed *de novo*.

## STATEMENT OF FACTS

**1.      Events Underlying the Self-Insurers' Security Fund's Claims**[1]

This appeal arises out of the Bankruptcy Court's denial of the motion of the Michigan Self-Insurers' Security Fund (SISF) for an order permitting late filed claims against Delphi Automotive Systems, LLC (Delphi).

In Michigan, all matters pertaining to workers' compensation are governed by the Workers' Disability Compensation Act (WDCA).[2]  The Michigan Funds Administration was established by statute to create a system for payment of certain classes of workers' compensation claims.[3]  The Michigan Funds Administration consists of several funds, including the SISF.  The SISF was established to provide payment of workers' compensation obligations of self-insured employers that become insolvent and unable to continue to make payments to its injured workers.[4]  The SISF is authorized to make payments to a disabled employee of a private self-insurer if that employer is insolvent and is unable to continue to make the payments.  Once payment is commenced by the SISF, the SISF is subrogated to the rights of the employee to collect benefits from the employer.[5]

Delphi Corporation, now DPH Holdings, Inc. (Debtors) were first approved by the Michigan Workers' Compensation Agency to be self-insured for their workers' compensation obligations in Michigan in May of 1999.

On October 8 and 14, 2005 (the "Petition Date"), the Debtors commenced their

---

[1] References bearing the prefix "S" are documents designated by the Self-Insurers' Security Fund in the Record on Appeal.
[2] MICH. COMP. LAWS §418.101, *et seq*.
[3] MICH. COMP. LAWS §418.501, *et seq*.
[4] MICH. COMP. LAWS §418.537.
[5] MICH. COMP. LAWS §418.537.

1

cases in the United States Bankruptcy Court for the Southern District of New York under

Chapter 11 of the Bankruptcy Code.  On the date Debtors filed the chapter 11 petition, they were

current on payments to their employees arising from workers' compensation claims in Michigan.

On October 13, 2005, the Bankruptcy Court issued the "Human Capital Obligations

Order" granting Debtors the authority to pay all amounts related to workers' compensation claims

and "incurred but not reported" (IBNR) claims that arose prior to the Petition Date as they

became due in the ordinary course of business and to continue paying workers' compensation in

the ordinary course.  In the "Human Capital Obligations Motion," Debtors provided the

following justification for the relief sought relating to workers compensation claims:[6]

> If the Debtors are unable to pay their prepetition workers' compensation obligations, the Debtors expect that the letters of credit, security deposits, and/or surety bonds will be drawn, resulting in millions of dollars of claims against the estates.  Further, the Debtors believe that if they are not permitted to honor their workers' compensation obligations (a) alternative arrangements for workers' compensation coverage would most certainly be more costly, (b) failure to provide coverage may, in some states, subject the Debtors or their officers to severe penalties and possibly a shut down, and (c) the Debtors may have their qualified self-insured employer status revoked in the respective states, resulting in much higher costs to the Debtor's estate.  Thus, the Debtors believe that their failure to pay amounts relating to these workers' compensation claims would make it more difficult to successfully reorganize.

On March 17, 2006, Debtors filed the "Bar Date Motion."  The motion was approved by

the Bankruptcy Court in an order dated April 12, 2006.  The Order established a Bar Date of

July 31, 2006.

---

[6] S-1.

On December 10, 2007, Debtors filed its First Amended Disclosure Statement.  Included

in the Disclosure Statement was the following clause regarding workers' compensation

obligations:[7]

> Under the Plan, all workers' compensation obligations, regardless of
> whether they arise from prepetition or post-petition events, and regardless
> of whether a proof of claim has been filed, will flow through the Plan and
> continue to be paid by the Debtors in the ordinary course.

Also on December 10, 2007, Debtors filed their First Amended Joint Plan of

Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-in-Possession.

On January 25, 2008, the Bankruptcy Court entered an Order confirming the Plan.  The Plan

treated all workers' compensation claims as "Flow Through Claims."  The Plan defined "Flow

Through Claims," in part, as follows:[8]

> A claim arising from . . . (c) an Employee-Related Obligation (including
> worker compensation and unemployment compensation claims) asserted
> by a hourly employee that is not otherwise waived pursuant to the Union
> Settlement Agreements, (d) any Employee-Related Obligation asserted by
> a salaried, non-executive employee who was employed by Delphi as of the
> date of the commencement of the hearing on the Disclosure Statement (e)
> any Employee Related Obligation asserted by a salaried executive
> employee who was employed by Delphi as of the date of the
> commencement of the hearing on the Disclosure Statement and has
> entered into a new employment agreement . . . .

The Plan described the treatment for "Flow-Through Claims":[9]

> The legal, equitable, and contractual rights of each holder of a Flow-
> Through claim, if any, shall be unaltered by the Plan and shall be satisfied
> in the ordinary course of business at such time and in such manner as the

---

[7] S-5 (pgs DS-159-160).
[8] S-6, ¶ 1.86.
[9] S-6, Article V, ¶ 5.2.

applicable Reorganized Debtor is obligated to satisfy each Flow-Through
Claim (subject to the preservation and flow-through of all Estate Causes of
Action and defenses with respect thereto), which shall be fully preserved.

On January 25, 2008, Debtors sent a letter to Michigan Workers' Compensation Agency

Deputy Director Bruno Czyrka responding to concerns raised by the Agency.  The letter

indicated:[10]

> In connection with Delphi's emergence from chapter 11 pursuant to its
> amended plan of reorganization, First Amended Joint Plan of
> Reorganization of Delphi Corporation and Certain Affiliates, Debtors and
> Debtors-in-Possession, as Modified, as confirmed by the United States
> Bankruptcy Court for the Southern District of New York, **Delphi intends
> to abide by all applicable laws of the State of Michigan respecting
> workers' compensation obligations, and intends to continue to provide
> its Michigan-based employees with workers' compensation in
> accordance with Michigan law on a self-insured basis**.

On October 3, 2008, Debtors filed a motion to modify their confirmed plan.[11]  On

October 17, 2008, Debtors sent another letter, this time to Michigan Workers' Compensation

Agency Director Jack Nolish.  In this letter, Debtors announced:[12]

> **[T]he modifications to the Plan of Reorganization do not include any
> changes in regards to workers' compensation nor change any aspect of
> the letter I sent on January 25, 2008** (sic) letter to the State of Michigan
> Workers' Compensation Agency.  To reiterate, in connection with Delphi's
> emergence from Chapter 11, Delphi intends to abide by all applicable laws of
> the State of Michigan regarding workers' compensation obligations and
> **intends to continue to provide its Michigan-based employees with
> workers' compensation in accordance with Michigan law on a self-
> insured basis**.

---

[10] S-15, Exhibit 1 (emphasis added).
[11] S-8.
[12] S-15, Exhibit 2 (emphasis added).

On June 1, 2009, Debtors filed a motion to further modify the confirmed plan.[13]  These
modifications were approved by the Bankruptcy Court on July 30, 2009.  Through this Modified
Plan, Debtors announced--for the first time--that the definition of "Flow-Through Claims" had
been completely changed, to the detriment of Debtors' employees and the SISF.  The positive
treatment of workers' compensation claims (except for Administrative Expense Claims), was
removed under the Modified Plan.  Debtors simply walked away from their statutory obligations
in Michigan.  Moreover, in the Modified Plan Debtors created new opportunities for holders of
some "Employee-Related Obligations" the ability to file claims after the Effective Date of the
Plan, but did not allow the same recourse to its injured workers.

On July 29, 2009, the SISF filed two proofs of claim.  The first claim is priority tax claim
based on excise taxes for unpaid workers' compensation obligations in the amount of
$25,460,432.50.[14]  The second claim is a general unsecured claim for unpaid workers'
compensation obligations for $36,293,480.00.[15]

During the course of the bankruptcy case, Debtors continued to pay their workers'
compensation obligations, regardless of the date when the claims arose, until the occurrence of
the Effective Date on October 6, 2009.[16]  On that date, Debtors ceased making any workers'
compensation payments.

## 2.    The Bankruptcy Court Refused to Allow the SISF's Late Filed Claims

On November 9, 2009, the SISF filed a Motion to Permit Late Filed Claim Pursuant to
Fed. R. Bank. P. 9006(b).  The Motion asserted that while the claims were indeed filed after the

---

[13] S-9.
[14] S-10.
[15] S-11.
[16] S-13.

5

claim deadline, the circumstance was one of "excusable neglect" as that term is defined under

Bankruptcy Rule 9006(b).[17]

The Debtors objected to the Motion and the Bankruptcy Court held a hearing on

December 18, 2009.  The Bankruptcy Court denied the motion, finding that the SISF claims did

not qualify under the "excusable neglect" standard.

---

[17] Fed. R. of Bankr. Pr. 9006(b).

## ARGUMENT

**I.     The Bankruptcy Court erred in concluding that the doctrine of "excusable neglect" under Bankruptcy Rule 9006(b) did not apply to the Michigan Self-Insurers' Security Fund's failure to file a timely proof of claim**

The SISF requests that this Court overrule the Order of the Bankruptcy Court denying the Motion to Permit Late Filed Claims and direct that an order be entered reinstating SISF claims 19501 and 19502 and deeming the Proofs of Claim timely filed.

Fed. R. Bank. P. 9006(b) states that when an act is required to be done within a specified period, "the court for cause shown may at any time in its discretion . . . (2) on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect."

The U.S. Supreme Court addressed this rule in *Pioneer Investment Services Co. v Brunswick Associates Limited Partnership.*[18]  The Court held that to determine what constitutes "excusable neglect" courts have to take into account the totality of the circumstances surrounding the party's omission, and should specifically review the following factors: "the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith."[19]

The late filing of the SISF claims warrants a finding of "excusable neglect" in that it is

---

[18] *Pioneer Investment Services Co. v Brunswick Associates Limited Partnership,* 507 U.S. 380; 113 S. Ct. 1489; 123 L. Ed. 2d 74 (1993).
[19] *Pioneer,* 507 U.S. at 395.

based on the absence of prejudice to the Debtors, the lack of impact to the judicial proceedings, the reason for the delay and the SISF's good faith.[20]

Prejudice to the Debtor. Debtors would not be prejudiced by the SISF claims. In determining whether a debtor has been prejudiced by a late-filed claim courts have considered several factors, including: "the size of the late claim in relation to the estate, whether a disclosure statement or plan has been filed or confirmed with knowledge of the existence of the claim, the disruptive effect that the late filing would have on a plan close to completion or upon the economic model upon which the plan was formulated and negotiated."[21]

The SISF claims are significant in size, but not in relation to the economies of this case. The SISF claims in the aggregate exceed $61 million, in comparison the total remaining unsecured claims of $3.4 – $3.62 billion[22] and the overall size of the estate. Further, Debtors were eminently aware of their own workers' compensation obligations at the time the disclosure statement and plan were originally confirmed as well as when the modifications to the Plan were approved, as evidenced in their first day motion regarding the continuation of workers' compensation benefits.[23] Lastly, there is no true concern that allowing the SISF late filings would open the door to other late claimants, as few other creditors, if any, would present similar justifications for the late filings.

Length of Delay. The SISF concedes that the delay between the Proof of Claim deadline and the SISF filing is long–almost three years. However, more importantly, the length of time

---

[20] *See Pioneer,* 507 U.S. at 398 ("the lack of any prejudice to the debtor or to the interest of efficient judicial administration, combined with the good faith of respondents and their counsel, weigh strongly in favor of permitting the tardy claim.")

[21] *In re Keene Corp.,* 188 B.R. 903, 910 (Bank. S.D.N.Y. 1995).

[22] S-9.

[23] S-1.

between the Debtors' announcement that they were abandoning their Michigan workers'
compensation claims to the filing of the SISF claims is short–less than 60 days.[24]

    <u>Reason for the Delay</u>.  The SISF erroneously believed that it did not possess a claim
against Debtors as of the Bar Date.  As Debtors had paid all benefits due to its workers'
compensation claimants as of the Bar Date, the SISF was not required to pay any benefits to
Debtors' injured workers.  Not having made any payments, the SISF had not become subrogated
to the rights of the employee to collect benefits from the employer. [25]

    All information available to the SISF indicated that Debtors were continuing to pay all of
their workers' compensation obligations both before and after the bankruptcy filing.  Debtors
were continually approved for self-insurance by the Workers' Compensation Agency, both pre-
and post-bankruptcy.  Debtors' obtained authority from this Court to continue paying all workers'
compensation claims.  Debtors made several representations that they planned to remain self-
insured for workers' compensation upon exiting bankruptcy.  Debtors' original plan of
reorganization, confirmed on January 25, 2008, made arrangements for all Michigan workers'
compensation payments to continue to be paid in the ordinary course of business and did not
require a proof of claim to be filed by the SISF.  Debtors' proposed modifications to its plan,
filed on October 3, 2008, also made arrangements for the payment of Michigan workers'
compensation obligations and did not require a proof of claim to be filed by the SISF.  It was not
until Debtors motion for further modifications, filed June 1, 2009, that the SISF learned, <u>for the
first time</u>, that Debtors would walk away from their statutory obligations in Michigan.

---

[24] Debtors' motion to further modify plan: June 1, 2009 – SISF claims: July 29, 2009.
[25] MICH. COMP. LAWS §418.537.

Good Faith of the Movant.  As stated above, based on the information available at the time, the SISF reasonably believed that it was not required to file its claims before the Bar Date. There is no indication that the SISF has not filed its claims in good faith.

While not a factor in determining "excusable neglect," it must be noted that the impact to the SISF and the State of Michigan will be severe if these claims are not allowed.  If the SISF is required to pay the claims of Debtors' injured workers, it will have insufficient financial resources to do so.  The sole source of revenue for the SISF is statutory assessments levied against private Michigan self-insured employers.[26]  Even if the SISF levies the full statutory amount, the anticipated revenue would be less than $9 million each year.  Without payment from these claims, the SISF may be forced into insolvency.

The concern of the source of payment of Debtors' workers' compensation benefits is not limited to Debtors' former employees, but to all injured workers in Michigan entitled to benefits from a former self-insured employer.  If the SISF is required to pay the benefits in question and does not obtain additional revenues, it will become insolvent, leaving all eligible injured workers of Michigan's self-insured employers without a source of benefits.

**II.     The Bankruptcy Court erred in concluding that the Michigan Self-Insurers' Security Fund's erroneous determination that it did not possess a claim did not warrant a finding of "excusable neglect" simply because the reason for the delay was "within the reasonable control" of the SISF.**

The SISF failed to file a proof of claim initially in this matter due to an erroneous determination that it did not possess a claim against Debtors until such time as Debtors stopped paying workers' compensation benefits to its Michigan workers.  This is because the Michigan statute does not provide the SISF subrogation rights of any kind until the employer stops making

_____

[26] MICH. COMP. LAWS §418.551(4).

10

benefit payments and the SISF begins payments.[27]  By the time this erroneous determination was discovered, debtors had made several statements, through its pleadings in this Court and through direct communication with the Michigan Workers' Compensation Agency, indicating that it would continue to pay its workers' compensation obligations in Michigan and would remain self-insured going forward.  Based on these statements, the SISF determined that there was no need for a filing of a Proof of Claim.  Among the statements:

Debtors indicated in its First Amended Disclosure Statement: [28]

> Under the Plan, all workers' compensation obligations, regardless of whether they arise from prepetition or post-petition events, and regardless of whether a proof of claim has been filed, will flow through the Plan and continue to be paid by the Debtors in the ordinary course.

Debtors' First Amended Joint Plan of Reorganization stated that workers' compensation claims would be treated as "Flow-Through Claims," which would be "unaltered by the Plan."[29]

Debtors' first letter to the Michigan Workers' Compensation Agency stated:[30]

> Delphi intends to abide by all applicable laws of the State of Michigan respecting workers' compensation obligations, and intends to continue to provide its Michigan-based employees with workers' compensation in accordance with Michigan law on a self-insured basis.

Debtors' second letter to the Michigan Workers' Compensation Agency, sent after Debtors filed a motion to modify their confirmed plan, stated:[31]

---

[27] MICH. COMP. LAWS §418.537.
[28] S-5 (pgs DS-159-160).
[29] S-6, ¶ 1.86, 5.2.
[30] S-15, Exhibit 1.
[31] S-15, Exhibit 2.

The modifications to the Plan of Reorganization do not include any changes in regards to workers' compensation nor change any aspect of the letter I sent on January 25, 2008 (sic) letter to the State of Michigan Workers' Compensation Agency.  To reiterate, in connection with Delphi's emergence from Chapter 11, Delphi intends to abide by all applicable laws of the State of Michigan regarding workers' compensation obligations and intends to continue to provide its Michigan-based employees with workers' compensation in accordance with Michigan law on a self-insured basis.

It was not until June 1, 2009, with Debtors' motion to modify its confirmed plan that the SISF learned that Debtor was not going to remain self-insured, it was not going to pay past claims, and it would walk away from its workers' compensation obligations in Michigan.

There is precedent to support the granting of the SISF motion, based on the erroneous determination that it did not possess a claim.  In the case of *In re Crane Rental Company, Inc.*,[32] the Court found that a pension fund's failure to file a timely proof of claim was based on "excusable neglect."  Much like the facts of this case, the pension fund argued that it failed to file a timely claim due to three reasons: (1) the Debtor continued to make contributions to the Fund, (2) the Fund believed that it did not have a claim until the Debtor withdrew from the plan, and (3) the Fund had no notice that the Debtor was liquidating its assets until well after the proof of claim deadline.

The court assessed this rationale and found that the Fund's failure to file was "careless," but that it met the standards of *Pioneer*.  The court then assessed the other factors:  prejudice, delay, and good faith, found that they were in the Fund's favor, and approved the late claim.

The Bankruptcy Court held that among the four factors listed by the Supreme Court in *Pioneer*, it was placing emphasis on one factor, "the reason for the delay," and on whether the reason for the delay was "within the reasonable control of the movant."

---

[32]*In re Crane Rental Company, Inc.*, 334 B.R. 73 (W.D. Mass. 2005).

While it can be argued that the "reason for delay" was within the "reasonable control" of the SISF, this does not mean that its Motion to Allow Late Claims should be denied. This Court should look to the language of *Pioneer*, when it discussed the purpose of Rule 9006(b):

> Congress plainly contemplated that the courts would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control.
> [*Pioneer*, at 388]

Later, the Court added:

> Although inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute "excusable" neglect, it is clear that <u>"excusable" neglect under Rule (6)(b) is a somewhat "elastic concept" and is not limited strictly to omissions caused by circumstances beyond the control of the movant</u>.
> [*Pioneer*, at 392]

In the end, while the SISF's determination that it need not file a Proof of Claim before the deadline was erroneous, the circumstances do fall within the guidelines created in *Pioneer* and should be construed as a supporting factor for the SISF's position.

The Bankruptcy Court and the Debtors point to the fact that other states did file contingent claims in regards to workers' compensation liabilities. This may be correct, but it is not relevant to the standards created in *Pioneer* and Rule 9006(b). Moreover, it might be noted that New York and Michigan, the two states where Debtor likely had the highest amount of workers' compensation liability, both did not file Proofs of Claim before the filing deadline. Is this a coincidence? Likely not. New York's objection to the Debtors' motion to modify its confirmed plan contained many similar allegations of relying on the pleadings and statements of

13

Debtor, in assuring New York that it would remain self-insured and pay its workers'

compensation claims.[33]

### III.    The Bankruptcy Court erred in determining that the allowance of the Michigan Self-Insurers' Security Fund's late claim would create prejudice to the debtor, when the only prejudice demonstrated by Debtor was prejudice to other creditors.

The Bankruptcy Court listed two factors as to why allowing the SISF claims would be

prejudicial:  (1) it could "open the floodgates" to other entities who failed to file a timely proof of

claim, and (2) it would prejudice the creditors in the case who had previously negotiated

agreements with Debtor.  Neither factor is significant enough to deny the SISF's motion to

permit late claims:

### 1.    Floodgates

While this rationale is widely asserted, it has no true relevance here.  The mere fact that a

party obtains relief for its "excusable neglect" does not support a contention that every other

entity who failed to file a timely claim will now seek leave to do the same.  If any other party

asserted that its neglect should be excused, that claim would be subject to the same scrutiny that

Debtors and this Court have applied to the SISF's motion.

The notion of a "potential floodgate" put forth by the Bankruptcy Court, was responded

to best by the U.S. Bankruptcy Court for the Northern District of Georgia in a similar case:

> Respondent has not identified any other party in a similar posture.
> Moreover, the methodology for deciding whether to excuse neglect in
> failing to file a timely claim is an equitable one and very fact specific. . . .
> The notion that creditors lacking any equitable grounds to support
> excusable neglect would file similar motions is speculative, particularly

---

[33] Limited Objection of the New York State Workers' Compensation Board, (Docket #18294).

since any such creditor would incur significant costs in the process. [*In re
Rhodes, Inc.*, 2007 Bankr. LEXIS 4606 (N.D. Georgia – 2007), pp. 13-14]

### 2.    Prejudice to Creditors

The Bankruptcy Court held that the SISF's excise tax claim, which should receive priority

treatment, would be "highly prejudicial to the Reorganized Debtors."  It should be noted that

neither the Bankruptcy Court nor the Debtors listed any specific ways in which the SISF's

<u>general unsecured</u> claim creates prejudice.  The Bankruptcy Court did not respond to the SISF's

offer to convert its priority claim to a general unsecured claim.[34]

If the concern is over notice, the Debtors should be hard pressed to claim that they were

unaware of their own workers' compensation obligations in Michigan.  Debtors own filings with

the Michigan Funds Administration indicate that it recognized that its total payments in workers'

compensation obligations in Michigan for the 2008 calendar year alone were over $24 million.[35]

Pleadings filed with this Court have detailed the intricate agreements between debtors and

General Motors regarding the financing of the extensive workers' compensation obligations

during the pendency of the bankruptcy.  To now argue that it did not know of its obligations in

Michigan strains credulity.

The Bankruptcy Court focused on prejudice, not to the Debtors, but to other unsecured

creditors.  The Court indicated concern for the Debtors' "compromise with the unsecured

creditors' committee which, notwithstanding the assertion by the DIP lenders that the debtors

were administratively insolvent, negotiated successfully a relatively modest recovery for

unsecured creditors under the modified plan."[36]  It further held that "allowing a late claim after a

---

[34] S-19 (p 51).
[35] S-18, Exhibit 1.
[36] S-19 (p 67).

15

plan has been confirmed, materially alters the distribution to creditors that would prejudice the creditors who relied on the disclosed distributions when voting to accept or reject the plan."[37]

This holding must be rejected. Prejudice to any entity other than the debtor should not be considered:

> The absence of any mention in *Pioneer* of the obvious effect of allowing a late claim on the amounts of distributions to other claimants shows that the Supreme Court did not consider this effect by itself to be an indicator in prejudice to the estate. Unsecured creditors may receive less than they would otherwise receive and thereby be "prejudiced" as they would be to the extent any other claim in the same or higher class be allowed, but the analysis under Rule 9006(b)(1) pursuant to *Pioneer* is concerned with possible prejudice to the estate only. [*In Re Rhodes, Inc.*, 2007 Bankr. LEXIS 4606 (ND Georgia – 2007), pp. 12-13]

In this Court's final review of this claim, it may determine that the SISF's priority claim would create unallowable prejudice to debtors that would cause the Court to deny the SISF's motion. If that possibility occurs, the SISF requests that the Court convert its priority claim to a general unsecured claim. As the Bankruptcy Court focused on prejudice to other creditors and failed to articulate any substantial prejudice to Debtors created by the SISF's existing general unsecured claim, presumably there would be none after such a conversion, either.

---

[37] S-19 (p 71).

16

## CONCLUSION AND RELIEF SOUGHT

For the foregoing reasons, the Michigan Self-Insurers' Security Fund respectfully requests that the Court reverse the order of the Bankruptcy Court and direct that an order be entered reinstating the Michigan Self-Insurers' Security Fund's Claims numbered 19501 and 19502, and deeming the Proofs of Claim to be deemed timely.

Respectfully submitted,

Michael A. Cox
Attorney General


/s/ Dennis J. Raterink (P52678)
Assistant Attorney General

Attorneys for
   Michigan Self-Insurers' Security Fund

Labor Division
P.O. Box 30736
Lansing, MI 48909
(517) 373-1176
raterinkd@michigan.gov

Dated:  April 26, 2010

17

## CERTIFICATE OF SERVICE (efile)

I hereby certify that on April 26, 2010, I electronically filed the above document(s) with the Clerk of the Court using the ECF System, which will provide electronic copies to counsel of record.

A courtesy copy of the aforementioned document was placed in UPS receiving box labeled for overnight delivery to:

DPH Holdings Corp., et al, (Reorganized Debtors)

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
155 North Wacker Drive
Suite 2700
Chicago, IL 60606
Telephone: (312) 407-0700

Attn:    John W. Butler, Jr.
         John K. Lyons

-and-

Four Times Square
New York, NY 10036
Telephone (212) 735-3000

Attn:    Kayalyn A. Marafioti

/s/ Dennis J. Raterink
Assistant Attorney General

Attorney for
   Michigan Self-Insurers' Security Fund

Labor Division
P.O. Box 30736
Lansing, MI 48909
Telephone: (517) 373-1176
raterinkd@michigan.gov
(P52678)

1