**Hearing Date and Time:  May 20, 2010 at 10:00 a.m. (prevailing Eastern time)**
**Supplemental Response Date and Time:  May 18, 2010 at 4:00 p.m. (prevailing Eastern time)**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
155 North Wacker Drive
Chicago, Illinois 60606
John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler

     - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Kayalyn A. Marafioti

Attorneys for DPH Holdings Corp., et al.,
   Reorganized Debtors

DPH Holdings Corp. Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

DPH Holdings Corp. Legal Information Website:
http://www.dphholdingsdocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  -  x
                                                               :
          In re                                                :     Chapter 11
                                                               :
DPH HOLDINGS CORP., et al.,                                    :     Case Number 05-44481 (RDD)
                                                               :
                                                               :     (Jointly Administered)
                                                               :
              Reorganized Debtors.                             :
                                                               :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

REORGANIZED DEBTORS' SUPPLEMENTAL REPLY TO RESPONSES TO
DEBTORS' OBJECTIONS TO ADMINISTRATIVE EXPENSE CLAIM
NUMBERS 17081 AND 18049 FILED BY JAMES A. LUECKE

("SUPPLEMENTAL REPLY REGARDING CERTAIN
JAMES A. LUECKE CLAIMS")

DPH Holdings Corp. and certain of its affiliated reorganized debtors in the above-captioned cases (together with DPH Holdings Corp., the "Reorganized Debtors") hereby submit the Reorganized Debtors' Supplemental Reply To Responses To Debtors' Objections To Administrative Expense Claim Numbers 17081 And 18049 Filed By James A. Luecke (the "Supplemental Reply"), and respectfully represent as follows:

A.    Preliminary Statement

1.    On October 8 and 14, 2005, Delphi Corporation and certain of its affiliates (the "Debtors"), predecessors of the Reorganized Debtors, filed voluntary petitions in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as then amended (the "Bankruptcy Code").

2.    On October 6, 2009, the Debtors substantially consummated the First Amended Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession, As Modified (the "Modified Plan"), which had been approved by this Court pursuant to an order entered on July 30, 2009 (Docket No. 18707) (the "Modification Approval Order"), and emerged from chapter 11 as the Reorganized Debtors.

3.    On March 25, 2010, the Reorganized Debtors filed the Notice Of Sufficiency Hearing With Respect To Debtors' Objections To Proofs Of Claim Numbers 5268, 13270, 13838, 13880, 15585, 15589, 16925, 17081, 17773, 18049, 18087, 18604, 18740, 20017, And 20054 (Docket No. 19735) (the "Sufficiency Hearing Notice").

4.    The Reorganized Debtors filed the Sufficiency Hearing Notice and are filing this Supplemental Reply to implement Article 9.6(a) of the Modified Plan, which provides that "[t]he Reorganized Debtors shall retain responsibility for administering, disputing, objecting

2

to, compromising, or otherwise resolving all Claims against, and Interests in, the Debtors and

making distributions (if any) with respect to all Claims and Interests." Modified Plan, art. 9.6(a).

5.        By the Sufficiency Hearing Notice and pursuant to the Order Pursuant To

11 U.S.C. § 502(b) And Fed. R. Bankr. P. 2002(m), 3007, 7016, 7026, 9006, 9007, And 9014

Establishing (i) Dates For Hearings Regarding Objections To Claims And (ii) Certain Notices

And Procedures Governing Objections To Claims, entered December 7, 2006 (Docket No. 6089)

(the "Claims Objection Procedures Order"), the Order Pursuant To 11 U.S.C. §§ 105(a) And

503(b) Authorizing Debtors To Apply Claims Objection Procedures To Address Contested

Administrative Expense Claims, entered October 22, 2009 (Docket No. 18998), and the Eleventh

Supplemental Order Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 2002(m), 3007, 7016,

7026, 9006, 9007, And 9014 Establishing (i) Dates For Hearings Regarding Objections To

Claims And (ii) Certain Notices And Procedures Governing Objections To Claims, entered April

5, 2010 (Docket No. 19776), the Reorganized Debtors scheduled a hearing (the "Sufficiency

Hearing") on May 20, 2010[1] at 10:00 a.m. (prevailing Eastern time) in this Court to address the

legal sufficiency of each proof of claim or administrative expense claim filed by the claimants

listed on Exhibit A to the Sufficiency Hearing Notice and whether each such proof of claim

states a colorable claim against the asserted Debtor.

6.        This Supplemental Reply is filed pursuant to paragraph 9(b)(i) of the

Claims Objection Procedures Order.  Pursuant to paragraph 9(b)(ii) of the Claims Objection

Procedures Order, if a Claimant wishes to file a supplemental pleading in response to this

---

[1]    Pursuant to direction of this Court, the Sufficiency Hearing regarding Mr. Luecke's claims was adjourned until
May 20, 2010 at 10:00 a.m. (prevailing Eastern time).

Supplemental Reply, the Claimant shall file and serve its response no later than two business days before the scheduled Sufficiency Hearing – i.e., by **May 18, 2010.**

B.    Relief Requested

7.    By this Supplemental Reply, the Reorganized Debtors request entry of an order disallowing and expunging certain administrative expense claims filed by James A. Luecke, a former union employee of the Debtors represented by the International Union, United Automobile, Aerospace and Agricultural Workers of America (the "UAW") asserting claims based on a grievance relating to an alleged breach of the UAW's collective bargaining agreement.[2]

C.    James A. Luecke Claims Filed Against The Debtors

8.    On June 30, 2009, James A. Luecke (the "Claimant"), a former employee represented by the UAW that was employed as an Electronic Technician – Employee in Training (ET-EIT), which was a skilled trades position at the Debtors' former Milwaukee Electronics & Safety (E&S) manufacturing facility, filed administrative expense claim number 17081 against Delphi Corporation ("Delphi"), asserting a priority claim in the amount of $159,000.00 for wages, overtime pay, and a buyout payment allegedly owed by Delphi for its failure to grant Mr. Luecke a job transfer.

9.    On June 29, 2009, James A. Luecke filed administrative expense claim number 18049 (together with administrative expense claim number 17081, the "Claims") against Delphi, appearing to be a duplicate of administrative expense claim number 17081, asserting a

---

[2]    It is the Reorganized Debtors' understanding that UAW is processing such grievance.  See National Labor Relations Board Decision to Dismiss, dated August 20, 2008, attached hereto as Exhibit A.

priority claim in the amount of $159,000.00 for wages, overtime pay, and a buyout payment allegedly owed by Delphi for its failure to grant Mr. Luecke a job transfer.

10.    As evidenced from the documents attached to his Claims, Mr. Luecke apparently asserts that his Claims are based on a grievance which he filed alleging breaches of the UAW collective bargaining agreement.

11.    The Reorganized Debtors' Objections To The Claims.  On October 15, 2009, the Reorganized Debtors filed the Reorganized Debtors' Thirty-Seventh Omnibus Objection Pursuant To 11 U.S.C. § 503(b) And Fed. R. Bankr. P. 3007 To Expunge Certain (I) Prepetition Claims, (II) Equity Interests, (III) Books And Records Claims, (IV) Untimely Claims, (V) Paid Severance Claims, (VI) Pension, Benefit, And OPEB Claims, And (VII) Duplicate Claims (Docket No. 18984) (the "Thirty-Seventh Omnibus Claims Objection"), by which the Reorganized Debtors objected to administrative expense claim number 17081 filed by Mr. Luecke on the grounds that such claim asserts pension and/or benefit obligations not reflected on the Reorganized Debtors' books and records and for which the Debtors are not liable and, accordingly, sought an order disallowing and expunging that administrative expense claim.

12.    On February 12, 2010, the Reorganized Debtors filed the Reorganized Debtors' Forty-Fifth Omnibus Objection Pursuant To 11 U.S.C. § 503(b) And Fed. R. Bankr. P. 3007 To (I) Expunge Certain Administrative Expense (A) Severance Claims, (B) Books And Records Claims, (C) Duplicate Claims, (D) Pension And Benefit Claims, And (E) Transferred Workers' Compensation Claims, (II) Modify And Allow Certain Administrative Expense Severance Claims, And (III) Allow Certain Administrative Expense Severance Claims (Docket No. 19423) ("Forty-Fifth Omnibus Claims Objection"), by which the Debtors objected to administrative expense claim number 18049 filed by Mr. Luecke on the grounds that such

administrative expense claim asserts a claim for liabilities in connection with the Debtors'

pension plans, employee benefit programs, and post-retirement health and life insurance benefit

programs for which the Debtors are not liable.

13.    Responses To The Reorganized Debtors' Objections.  On October 26,

2009,  Mr. Luecke filed a response to the Thirty-Seventh Omnibus Claims Objection (Docket No.

19007), in which he asserts that his claim does not relate to pension, employee benefit, or other

post-employment benefits, but that it relates to overtime, wages, and severance payments (the

"First Response").

14.    On March 15, 2010, Mr. Luecke filed a response to the Forty-Fifth

Omnibus Claims Objection (Docket No. 19707), in which he asserts that his claim does not

relate to pension, employee benefits, or other post-employment benefits, but instead relates to the

Debtors' failure to grant him a job transfer (the "Second Response" and together with the First

Response, the "Responses").

15.    The Sufficiency Hearing Notice.  Pursuant to the Claims Objection

Procedures Order, the hearing on the Debtors' objection to the Claims was adjourned to a future

date.  On March 25, 2010, the Reorganized Debtors filed the Sufficiency Hearing Notice with

respect to the Claims, among other proofs of claim and administrative expense claims,

scheduling the Sufficiency Hearing, which was originally scheduled for April 23, 2010.  In

connection with the Sufficiency Hearing, the Reorganized Debtors filed their Supplemental

Reply to Responses of Certain Claimants to Debtors' Objections to Proof of Claim Number

11375 Filed by Jeffrey A. Miller, Administrative Expense Claim Number 16925 Filed by Stanley

D. Smith, Administrative Expense Claim Numbers 17081 and 18049 Filed by James A. Luecke,

Administrative Expense Claim Number 18087 Filed by Frank X. Budelewski, Administrative

Expense Claim Number 18604 Filed by Walter A. Kunka, Administrative Expense Claim

Number 20017 Filed by Andrew C. Gregos, and Administrative Expense Claim Number 20054

Filed by Robyn R. Budd (Docket No. 19809) (the "First Supplemental Reply").

16.    On April 20, 2010, Mr. Luecke sent an undocketed letter appearing to

supplement his Claims and appearing to be a supplemental response to the First Supplemental

Reply, again arguing that he was owed amounts arising from a lack of job transfer (the "Luecke

Supplemental Reply," attached hereto as <u>Exhibit B</u>).  In the Luecke Supplemental Reply, the

Claimant also appears to assert new amounts not previously listed in the Claims.

D.    <u>Claimant's Burden Of Proof And Standard For Sufficiency Of Claim</u>

17.    The Reorganized Debtors respectfully submit that the Pension and Benefit

Claims fail to state a claim against the Debtors under rule 7012 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules").  The Claimant has not proved any facts to

support a right to payment by the Reorganized Debtors on behalf of the Debtors.  Accordingly,

the Debtors' objections to each of the Claims should be sustained and each such claim should be

disallowed and expunged in its entirety.

18.    The burden of proof to establish a claim against the Debtors rests on the

claimant and, if a proof of claim does not include sufficient factual support, such proof of claim

is not entitled to a presumption of <u>prima facie</u> validity pursuant to Bankruptcy Rule 3001(f).  <u>In

re Spiegel, Inc.</u>, No. 03-11540, 2007 WL 2456626, at *15 (Bankr. S.D.N.Y. August 22, 2007)

(the claimant always bears the burden of persuasion and must initially allege facts sufficient to

support the claim); <u>see also</u> <u>In re WorldCom, Inc.</u>, No. 02-13533, 2005 WL 3832065, at *4

(Bankr. S.D.N.Y. Dec. 29, 2005) (only a claim that alleges facts sufficient to support legal

liability to claimant satisfies claimant's initial obligation to file substantiated proof of claim); <u>In

re Allegheny Int'l., Inc.</u>, 954 F.2d 167, 173 (3d Cir. 1992) (in its initial proof of claim filing,

claimant must allege facts sufficient to support claim); <u>In re Chiro Plus, Inc.</u>, 339 B.R. 111, 113

(Bankr. D.N.J. 2006) (claimant bears initial burden of sufficiently alleging claim and establishing

facts to support legal liability); <u>In re Armstrong Finishing, L.L.C.</u>, No. 99-11576-C11, 2001 WL

1700029, at *2 (Bankr. M.D.N.C. May 2, 2001) (only when claimant alleges facts sufficient to

support its proof of claim is it entitled to have claim considered <u>prima</u> <u>facie</u> valid); <u>In re United</u>

<u>Cos. Fin. Corp.</u>, 267 B.R. 524, 527 (Bankr. D. Del. 2000) (claimant must allege facts sufficient

to support legal basis for its claim to have claim make <u>prima</u> <u>facie</u> case).

19.       For purposes of sufficiency, this Court has determined that the standard of

whether a claimant has met its initial burden of proof to establish a claim should be similar to the

standard employed by courts in deciding a motion to dismiss under Bankruptcy Rules 7012 and

9014.  <u>See</u> Transcript of January 12, 2007 Hearing (Docket No. 7118) (the "January 12, 2007

Transcript") at 52:24-53:1.  Pursuant to that standard, a motion to dismiss should be granted "if it

plainly appears that the nonmovant 'can prove no set of facts in support of his claim which would

entitle him to relief.'"  <u>In re Lopes</u>, 339 B.R. 82, 86 (Bankr. S.D.N.Y. 2006) (<u>quoting</u> <u>Conley v.</u>

<u>Gibson</u>, 355 U.S. 41, 45-46 (1957)).  Essentially, the claimant must provide facts that sufficiently

support a legal liability against the Debtors.

20.       This Court further established that the sufficiency hearing standard is

consistent with Bankruptcy Rule 3001(f), which states that "a proof of claim executed and filed

in accordance with <u>these Rules</u> shall constitute <u>prima</u> <u>facie</u> evidence of the validity and amount

of the claim."  Fed. R. Bankr. P. 3001(f) (emphasis added).  Likewise, Bankruptcy Rule 3001(a)

requires that "the proof of claim must be consistent with the official form" and Bankruptcy Rule

3001(c) requires "evidence of a writing if the claim is based on a writing."  Fed. R. Bankr. P.

3001(a), (c).  <u>See</u> January 12, 2007 Transcript at 52:17-22.

8

E.      Arguments Regarding The Claims

21.      As a preliminary matter, Mr. Luecke's Claims are substantively without merit.  Even if they were not, the Reorganized Debtors would not be liable for them because they are based on a union grievance and the Reorganized Debtors did not retain liability for union grievances pursuant to the Modification Approval Order.

22.      The assertion of Mr. Luecke that he is entitled to receive payment for lost wages, overtime, and severance is without merit.  Mr. Luecke bases his argument on alleged rights that arise from paragraph 96 ("Paragraph 96") of the national agreement (the "National Agreement") between the Debtors and the UAW.  For this Court's reference, a copy of the relevant portion of the National Agreement is attached hereto as Exhibit C.

23.      The National Agreement governs situations where operations are transferred between plants.  Paragraph 96 of the National Agreement states in part:

> When there is a transfer of major operations between plants, the case may be presented to the Corporation and, after investigation, it will be reviewed with the International Union in an effort to negotiate an equitable solution, in accordance with the principles set forth in the previous paragraph.  Any transfer of employees resulting from this review shall be on the basis that such employees are transferred with full seniority, except as the parties may otherwise mutually agree.

24.      In accordance with Paragraph 96, Delphi and the UAW engaged in negotiations to reach an "equitable solution" to the transfer of work.  These negotiations resulted in two memorandums of understanding (collectively, the "MOUs") between the Debtors and the UAW to establish procedures for Milwaukee employees who were interested in working in Kokomo to apply for, and be considered for, any openings.  Between the MOUs, the only skilled trades openings identified were for two pipefitters (the relevant MOU is attached hereto as Exhibit D).  No other skilled trades openings were identified, including for ET and ET-EIT classifications (indeed, Kokomo did not even have an ET or ET-EIT classification).

9

25.     Nothing in Paragraph 96 required the Debtors to transfer every employee, every skilled trades employee, or every ET or ET-EIT employee.  The Debtors and the UAW implemented Paragraph 96 through the MOUs, and jointly agreed that there were no openings for ET-EIT classifications in Kokomo, and thus no employees could be transferred with their ET-EIT classifications.  This was the "equitable solution" through negotiation that Paragraph 96 was intended to create.

26.     However, this does not mean that Mr. Luecke or other ET or ET-EIT employees were prohibited from transferring to Kokomo.  To the contrary, skilled trades employees who wished to transfer were free to apply for nonskilled job offers.  Although this would result in a lower base rate, once an employee established seniority in the Kokomo plant, they could be considered for future skilled openings.  However, Mr. Luecke never submitted an application for transfer to Kokomo.

27.     Thus, the decision not to permit Mr. Luecke to transfer to Kokomo as an ET-EIT was the result of a negotiated agreement between Debtors and the UAW, as required by Paragraph 96 of the National Agreement.  Accordingly, each of the Claims should be disallowed and expunged in its entirety.

28.     Moreover, as the documents attached to the Claims indicate, Mr. Luecke's claims are based on a grievance that he filed.[3]  As described in paragraph 61 of the Modification

---

[3]     To the extent that Mr. Luecke's Claims are not based on grievances, the Reorganized Debtors submit that his claims may also be without merit due to the UAW's release of claims on behalf of its members and former members which are present in the Modified Plan and the UAW-Delphi-GM Memorandum of Understanding, as defined in the Modified Plan.

Approval Order, the UAW-Delphi-GM Memorandum of Understanding and all grievances under

it were assumed by the GM Buyer (as defined in the Modification Approval Order).[4]

Labor MOUs[5]

> (a) GM Buyer. Pursuant to the Modified Plan, upon the Effective Date and
> notwithstanding any other provisions of the Master Disposition Agreement, the
> applicable Labor MOUs (which shall include all related collectively bargained
> agreements and obligations, **including grievances**), shall be assumed and
> assigned to the GM Buyer . . . .

Modification Approval Order ¶ 61 (emphasis added).

> 29.    Accordingly, the Reorganized Debtors assert that (a) the Claimant has not

met his burden of proof to establish a claim against the Debtors, (b) the Claims are not entitled to

a presumption of prima facie validity pursuant to Bankruptcy Rule 3001(f), and (c) the Claims

fail to state a claim against the Reorganized Debtors under Bankruptcy Rule 7012.  Because the

Claimant cannot provide facts or law supporting his claims, the Thirty-Seventh Omnibus Claims

Objection should be sustained as to administrative expense claim number 17081 and the Forty-

Fifth Omnibus Claims Objection should be sustained as to administrative expense claim number

18049, and each such claim should be disallowed and expunged in its entirety.

---

[4]    Further, under the Modified Plan and the Modification Approval Order, the UAW-Delphi-GM Memorandum of
Understanding was assumed by the applicable Reorganized Debtor and assigned to the GM Buyer.
Accordingly, the Reorganized Debtors are relieved from any liability for any breach of such contract occurring
after such assignment pursuant to 11 U.S.C. § 365(k).  Furthermore, even if section 365(k) does not cut off the
Reorganized Debtors' liability, the Claims against the Reorganized Debtors should be disallowed because they
are, at best, contingent upon the GM Buyer not fulfilling its obligation regarding the grievance.  Because there
is nothing in the record to indicate GM Buyer will not fulfill its obligation to the extent it is valid and legally
enforceable, the Claims should be disallowed subject to any rights Mr. Luecke may have under 11 U.S.C. § 502
(j).

[5]    "Labor MOUs" means the UAW-Delphi-GM Memorandum of Understanding, the IUE-CWA-Delphi-GM
Memorandum of Understanding, the USW-Home Avenue Memorandum of Understanding, the USW-Vandalia
Memorandum of Understanding, the IUOE Local 832S Memorandum of Understanding, the IUOE Local 18S
Memorandum of Understanding, the IUOE Local 101S Memorandum of Understanding, the IBEW E&S
Memorandum of Understanding, the IBEW Powertrain Memorandum of Understanding, and the IAM-Delphi
Memorandum of Understanding, each as defined in the Modified Plan.

WHEREFORE the Reorganized Debtors respectfully request this Court enter an

order (a) sustaining the objections with respect to the Claims, (b) disallowing and expunging

each Claim in its entirety, and (c) granting such further and other relief this Court deems just and

proper.

Dated:    New York, New York
          May 10, 2010

                                    SKADDEN, ARPS, SLATE, MEAGHER
                                       & FLOM LLP


                                    By:   /s/ John Wm. Butler, Jr.
                                          John Wm. Butler, Jr.
                                          John K. Lyons
                                          Ron E. Meisler
                                    155 North Wacker Drive
                                    Chicago, Illinois 60606


                                          - and -


                                    By:   /s/ Kayalyn A. Marafioti
                                          Kayalyn A. Marafioti
                                    Four Times Square
                                    New York, New York 10036


                                    Attorneys for DPH Holdings Corp., et al.,
                                       Reorganized Debtors

12

# EXHIBIT A

United States Government

**NATIONAL LABOR RELATIONS BOARD**

Region 30

310 West Wisconsin Avenue – Suite 700

Milwaukee, WI  53203-2211

Telephone (414)297-3870
FAX (414)297-3880
www.nlrb.gov

August 20, 2008

Mr. James Luecke, Skilled Trades Chairman
International Union, United Automobile,
    Aerospace and Agricultural Implement
    Workers of America (UAW), Local 438,
    AFL-CIO
7435 South Howell Avenue
Oak Creek, WI 53154

**LABOR**

AUG 2 5 2008

DELPHI LEGAL STAFF

Re:   **Delphi Electronics and Safety**
      **Case 30-CA-18084**
                **and**
      **International Union, Automobile, Aerospace,**
      **and Agricultual Implement Workers**
      **(Delphi Electronics and Safety)**
      **Case 30-CB-5314**

Dear Mr. Luecke:

The Region has carefully investigated and considered the charges against Delphi
Electronics and Safety and International Union, Automobile, Aerospace, and Agricultural
Implement Workers alleging violations under Section 8 of the National Labor Relations Act.

*Decision to Dismiss:* Based on those investigations, I have concluded that further
proceedings are not warranted, and I am dismissing the charges for the following reasons:

In Case 30-CA-18084, you allege that since January 2008 and continuing to this date,
Delphi Electronics and Safety (Employer) has refused to allow Electronic Technicians of the
Oak Creek, Wisconsin plant to transfer to the Kokomo, Indiana plant because of their union
activities, specifically because you filed a grievance in January 2008 regarding the transfer. The
grievance you filed was because the Electronic Technicians were informed they would not be
able to transfer to the Kokomo facility. Therefore, the initial decision to refuse to allow the
transfer could not have been because you filed the grievance since the grievance was in response
to the refusal to allow you to transfer. You argue that the Employer has continued to refuse to
allow the transfer for the last six months because you filed the grievance, however, there is no
evidence to support the notion that the Employer would have changed its mind about the transfer
in the absence of any union and/or protected activity.

In Case 30-CB-5314, you allege that International Union, Automobile, Aerospace, and
Agricultural Implement Workers (UAW) failed to fairly represent the Electronic Technicians for
unfair, arbitrary, and/or discriminatory reasons by failing and/or refusing to process a grievance
regarding the Employer's failure to transfer this group of employees.  While you believed that
your grievance was no longer being processed, the evidence shows that the UAW assumed
control of your grievance at the third step meeting on August 14, 2008 and is currently
processing that grievance. The evidence also shows that you were not informed of the status of

30-CB-5314                                    - 2 -                              August 20, 2008

the grievance until now by the UAW because the Local had been responsible for the processing the grievance until that time, at which point, the UAW took control.

**Your Right to Appeal:** The National Labor Relations Board Rules and Regulations permit you to obtain a review of this action by filing an appeal with the GENERAL COUNSEL of the National Labor Relations Board. Use of the Appeal Form (Form NLRB-4767) will satisfy this requirement. However, you are encouraged to submit a complete statement setting forth the facts and reasons why you believe that the decision to dismiss your charge was incorrect.

The appeal may be filed by regular mail addressed to the General Counsel at the National Labor Relations Board, Attn: Office of Appeals, 1099 14th Street, N.W., Washington D.C. 20570-0001. A copy of the appeal should also be mailed to the Regional Director.

An appeal also may be filed electronically by using the E-filing system on the Agency's Website. In order to file an appeal electronically, please go to the Agency's Website at **www.nlrb.gov,** select the **E-Gov** tab and click on **E-Filing.** Scroll to the *General Counsel's Office of Appeals.* Select the type of document you wish to file electronically and you will navigate to detailed instructions on how to file an appeal electronically.

The appeal <u>MAY NOT</u> be filed by facsimile transmission.

**Appeal Due Date:** <u>The appeal must be received by the General Counsel in Washington D.C. by the close of business at **5:00 p.m. (ET) on September 3, 2008.**</u> If you mail the appeal, it will be considered timely filed if it is postmarked no later than one day before the due date set forth above. If you file the appeal electronically, it also must be received by the General Counsel by the close of business at **5:00 p.m. (ET) on September 3, 2008.** A failure to timely file an appeal electronically will not be excused on the basis of a claim that transmission could not be accomplished because the receiving machine was off-line or unavailable, the sending machine malfunctioned, or for any other electronic-related reason.

**Extension of Time to File Appeal:** Upon good cause shown, the General Counsel may grant you an extension of time to file the appeal. You may file a request for an extension of time to file by mail, facsimile transmission, or through the Internet. The fax number is (202) 273-4283. Special instructions for requesting an extension of time over the Internet are set forth in the attached Access Code Certificate. While an appeal will be accepted as timely filed if it is postmarked no later than one day prior to the appeal due date, this rule does not apply to requests for extension of time. A request for an extension of time to file an appeal **must be received** on or before the original appeal due date. A request that is postmarked prior to the appeal due date but received after the appeal due date will be rejected as untimely. Unless filed through the Internet, a copy of any request for extension of time should be sent to me.

**Confidentiality/Privilege:** Please be advised that we cannot accept any limitations on the use of any appeal statement or evidence in support thereof provided to the Agency. Thus, any claim of confidentiality or privilege cannot be honored, except as provided by the FOIA, 5 U.S.C. 552, and any appeal statement may be subject to discretionary disclosure to a party upon request during the processing of the appeal. In the event the appeal is sustained, any

30-CA-18084

30-CB-5314                           - 3 -                           August 20, 2008

statement or material submitted may be subject to introduction as evidence at any hearing that
may be held before an administrative law judge.  Further, we are required by the Federal Records
Act to keep copies of documents used in our case handling for some period of years after a case
closes.  Accordingly, we may be required by the FOIA to disclose such records upon request,
absent some applicable exemption such as those that protect confidential source,
commercial/financial information or personal privacy interests (e.g., FOIA Exemptions 4, 6, 7(C)
and 7(D), 5 U.S.C. § 552(b)(4), (6), (7)(C), and 7(D)).  Accordingly, we will not honor any
requests to place limitations on our use of appeal statements or supporting evidence beyond those
prescribed by the foregoing laws, regulations, and policies.

     ***Notice to Other Parties of Appeal:***  You should notify the other party(ies) to the case that
an appeal has been filed.  Therefore, at the time the appeal is mailed to the General Counsel,
please complete the enclosed Appeal Form (NLRB-4767) and send one copy of the form to all
parties whose names and addresses are set forth in this letter.

                                 Very truly yours,

                                 Irving E. Gottschalk
                                 Regional Director

Enclosures

**EXHIBIT B**

RECEIVED
BY MAIL ☐
BY HAND ☐

APR 2 3 2010

## In The United States Bankruptcy Court
## Southern District of New York

SKADDEN, ARPS, SLATE,
MEAGHER & FLOM

James A. Luecke
        Creditor,

DELPHI CORPORATION, et al. ,                    Chapter 11
                                                Case No. 05-44481 (RDD)
                                                (Jointly Administered)

        Debtors.

---

### CERTIFICATE OF SERVICE

---

1. CREDITOR'S  SUPPLEMENTAL REPLY  April 23, 2010 Hearing.


CERTIFICATE OF SERVICE
I James A.  Luecke  CERTIFY that a copy of the foregoing has been sent by U.S. Mail to
all of the counsel listed in the debtors motion.
this 20th  day of April , 2010.


BY : James A. Luecke
        3845 w. college ave.
        Milwaukee, WI 53221
        414 - 421-5729


Dated at Milwaukee Wisconsin this 20th day of April 2010.

**In The United States Bankruptcy Court**
**Southern District Of New York**

---

James A. Luecke

            Creditor

v.

DELPHI CORPORATION, et al. ,              Chapter 11
                                  Case No. 05-44481 (RDD)
                                    (Jointly Administered)

            Debtors.

---

# Supplemental Reply
April , 23 2010 Hearing
ADMINISTRATIVE CLAIM [#17081] ,[18049]

---

1.      The claims[#17081] ,[18049]  have not been refuted by any sworn statement of

Truth , or any sworn testimony by Delphi Corporation et al. as evidenced by Exhibit H .


2.      All evidence of truth  in the record  is the right  of James A. Luecke to  claims

[#17081] ,[18049]  by Exhibit A-G .

---

**The claims are about lost wages and compensation due to the following deceitful acts of the debtor.** And nothing to do with pension or OPEB benefits.

## FIRST CAUSE OF ACTION
## The Intentional Tortious Interference of the Contract (UAW-Delphi Corporation National Agreement) by Delphi Corporation et al.

1. James A. Luecke had and has a recognized economic relationship between (

UAW- Delphi Corporation as evidenced in the record by statement of truth. 2. Delphi

Corporation has knowledge and is participating in the (UAW - Delphi Corporation

National Agreement) as evidenced in the court record by a statement of truth) 3.Delphi

Corporation et al. participated in intentional acts of deskilling James A. Luecke's

journeyman status  designed to disrupt the relationship James A. Luecke has and had

with (UAW- Delphi Corporation at el.) as evidenced in the court record by statement of

truth. This was done even after numerous notifications by James A. Luecke to Delphi

Corporation et al.evidenced by truth in the court record 4. Delphi Corporation at el

caused actual disruption to the relationship and denied James A.Luecke transfer rights

provided by paragraph  96a of the (UAW- Delphi Corporation National

Agreement). 5. James A. Luecke suffered damages as a result of Delphi Corporation et al.

reckless and intentional  and proximate acts as evidenced in the court record by statement

of truth.

## SECOND CAUSE OF ACTION
## Breach of Contract ( UAW - Delphi Corporation National Agreement)

Delphi Corporation et al. failed its performance of the (UAW - Delphi Corporation National Agreement) intentionally with forewarning as evidenced in the court record by statement of truth and denied James A. Luecke his rightful transfer under paragraph 96a of the (UAW- Delphi Corporation National Agreement). Delphi Corporation was reckless, full of malice and intentional in this breach . Damages resulted from this breach as evidenced in the court record by statement of truth.

## THIRD CAUSE OF ACTION
## Defamation of Character  by Delphi Corporation et al.

Delphi Corporation et al. made the statement that James A. Luecke was not qualified as a journeyman electronic technician,  this statement was false, untrue and not privileged ( as evidenced in the court record by statement of  truth.. It was published in Delphi Corporation and caused harm to James A. Luecke's  professional reputation and caused denial of transfer rights and future considerations as evidenced in the court record by statement of truth.


**Delphi Corporation and its representatives recklessly, intentionally, unlawfully violated  James A. Luecke's contract rights provided by the (UAW -Delphi Corporation National Agreement).**

## STATEMENT OF WHY CLAIM SHOULD BE ALLOWED

Debtors offer no rebuttal to statements of truth of the claims,

therefore their objections fail as a matter of law.

Also, the claim including evidence of truth was properly and timely filed,

which has not been disputed by any statements of truth, by the debtors' and the claimant

established the prima facia right to payment based on material facts and truth as

evidenced in the record. The debtors' offer no

reasonable objection and offer a frivolous, erroneous objections at best . Any reasonable

Trier of the fact would deem the debtors' improper here-say objections doomed .

Therefore this claim should stand as a matter of law.

**The claimant is respectfully asking the court to deny all the debtors' objections.**

—

TOTAL AMOUNT OF ADMINISTRATIVE CLAIMS [# 17081],[ 18049]

($318,000.00) Three hundred eight-teen thousand dollars .


Address of claimant :    James  A. Luecke
                         3845 w. college ave.
                         Milwaukee, WI 53221




Dated at Milwaukee, Wisconsin this 20th  day of April  2010 .

By :    James  A. Luecke

# In The United States Bankruptcy Court
## Southern District of New York

James A. Luecke

              Creditor

v.

DELPHI CORPORATION, et al. ,

              Debtors.

           Chapter 11
           Case No. 05-44481 (RDD)
           (Jointly Administered)

## UNSWORN DECLARATION
## IN LIEU OF AFFIDAVIT
### ( ACTIVE  DELPHI -UAW HOURLY EMPLOYEE ON TEMPORARY LAYOFF)

I        James A. Luecke                              attest

( under penalty of perjury ) to :

   I James A. Luecke  am an Active  Hourly DELPHI -UAW represented  skilled trades
employee classified on Temporary Layoff.

Signature _____ .

Dated at Milwaukee, Wisconsin this 16th  day of  April  2010 .

By :  James A. Luecke

Exhibit A

**In The United States Bankruptcy Court**
**Southern District of New York**

---

James A. Luecke

              Creditor

v.

DELPHI CORPORATION, et al. ,           Chapter 11
                                     Case No. 05-44481 (RDD)
                                     (Jointly Administered)

                  Debtors.

---

~~UNSWORN~~ DECLARATION UNDER PENALTY of PERJURY
IN LIEU OF AFFIDAVIT
( Hired as Hourly UAW -Delphi Journeyman Electronic Technician )

---

              James A. Luecke

I   _____ attest

( under penalty of perjury ) to :

  I James Luecke was hired at Delphi as a full Journeyman status UAW represented skilled trades electronic technician .

Signature _____.

Dated at Milwaukee, Wisconsin this 16th day of April 2010 .

                By :   James A. Luecke

Exhibit B

## In The United States Bankruptcy Court
### Southern District of New York

James A. Luecke

            Creditor

v.

DELPHI CORPORATION, et al. ,

                Chapter 11
                Case No. 05-44481 (RDD)
                (Jointly Administered)

            Debtors.

~~UNSWORN~~ DECLARATION *UNDER PENALTY of PERJURY*
IN LIEU OF AFFIDAVIT
( Willful and reckless, intentional  deskilling Journeyman status ; defamation of professional reputation )

           James A . Luecke

I   _____   attest

( under penalty of perjury ) to :

   That Delphi and their company representatives  willfully,  recklessly  , intentionally, ; deskilled my Journeyman status and defamed my professional reputation  without notice or deficiency to deny overtime wages and paragraph 96a job transfer.

Signature _____ .

Dated at Milwaukee, Wisconsin this 16th  day of  April  2010 .

           By :   James A .Luecke

Exhibit C

## In The United States Bankruptcy Court
## Southern District of New York

James A. Luecke
                Creditor

v.

DELPHI CORPORATION, et al. ,          Chapter 11
                                    Case No. 05-44481 (RDD)
                                    (Jointly Administered)

                Debtors.

### ~~UNSWORN~~ DECLARATION UNDER PENALTY of PERJURY
### IN LIEU OF AFFIDAVIT
( Willful and flagrant denial of my UAW-Delphi 96a Transfer Rights )

                James  A. Luecke

I  _____  attest

( under penalty of perjury ) to :

   I James A.  Luecke  was denied with willful and flagrant violations of the UAW-Delphi
National agreement  my rightful contractual transfer rights under paragraph 96a of the  UAW-
Delphi National Agreement.

Signature _____ .

Dated at Milwaukee, Wisconsin this 16ᵗʰ  day of  April  2010 .

                By :    James A.  Luecke

Exhibit D

## In The United States Bankruptcy Court
## Southern District of New York

James A . Luecke

            Creditor

v.

DELPHI CORPORATION, et al. ,

                   Debtors.

Chapter 11
Case No. 05-44481 (RDD)
(Jointly Administered)

~~UNSWORN~~ DECLARATION *UNDER PENALTY of PERJURY*
IN LIEU OF AFFIDAVIT
( Willful and reckless disregard , Intentional Tortious Interference with Contract )

             James A. Luecke

I   _____   attest

( under penalty of perjury ) to :

   That Delphi and their company representatives willfully with malice and reckless disregard; deskilled my Journeyman status denying me my rightful transfer rights provided by the UAW-Delphi Corporation National Agreement (contract) , this was reckless , willful and proximate - Intentional Tortious Interference with the contract I have and had with the UAW (UAW-Delphi Corporation National Agreement).

Signature _____.

Dated at Milwaukee, Wisconsin this 16th day of April 2010 .

            By :   James A. Luecke

Exhibit E

# In The United States Bankruptcy Court
## Southern District of New York

James A. Luecke
                    Creditor

v.

DELPHI CORPORATION, et al. ,                    Chapter 11
                                                Case No. 05-44481 (RDD)
                                                (Jointly Administered)

                    Debtors.

---

UNSWORN DECLARATION UNDER PENALTY of PERJURY
IN LIEU OF AFFIDAVIT
( Hired at full Journeyman status , Deskilled to Electronic Technician in training )

---

                    James A.  Luecke
I  _____   attest

( under penalty of perjury ) to :

   I James A. Luecke  was hired at Delphi as a full  Journeyman UAW represented skilled trades
electronic technician  and arbitrarily deskilled to Electronic Technician in Training(EIT) with no
notice or deficiencies.

Signature _____ .



                    Dated at Milwaukee, Wisconsin this 16th/ day of  April  2010 .

                    By :    James A. Luecke

Exhibit F

## In The United States Bankruptcy Court
## Southern District of New York

James A. Luecke

          Creditor

v.

DELPHI CORPORATION, et al. ,

                               Chapter 11
                               Case No. 05-44481 (RDD)
                               (Jointly Administered)

               Debtors

~~UNSWORN~~ DECLARATION UNDER PENALTY of PERJURY
IN LIEU OF AFFIDAVIT
( Damages)

          James A. Luecke

I    _____ attest

( under penalty of perjury ) to :
Damages from intentional, willfull and reckless disregard and Interference of the Contract that was and is in place with UAW - Delphi :

I have lost wages, overtime, and other wage compensation ; damage to professional reputation. Of : 2 years of lost wages Claim # 18049 for One Hundred fifty-nine thousand dollars ( $159,000.00)
And Claim # 17081 for 2 years future wages and other wage compensation loss with damage to professional reputation; One Hundred fifty-nine thousand dollars ($159,000.00).

Total Amount of claims - Three hundred eighteen thousand dollars ($318,000.00)

Signature_____.

Dated this 16th day of April 2010 in Milwaukee Wisconsin .
Dated at Milwaukee, Wisconsin this 16th day of April 2010.

                           By :    James A. Luecke

Exhibit G

## In The United States Bankruptcy Court
## Southern District Of New York

James A. Luecke

            Creditor

v.

DELPHI CORPORATION, et al. ,

               Debtors.

Chapter 11
Case No. 05-44481 (RDD)
(Jointly Administered)

## Declaration Under Penalty of Perjury
### IN LIEU OF AFFIDAVIT
( No Sworn Rebuttal of truth or sworn Testimony of truth from Delphi Corporation Refuting James A. Luecke's Claims #17081 and #18049)

James A. Luecke

I _____ attest

( under penalty of perjury ) to :

  I James A. Luecke have never been presented, nor has the court ( to my knowledge) with any sworn affidavits of truth or testimony from Delphi Corporation et al. refuting my claims # 17081 and #18049 .

Signature _____

Dated at Milwaukee, Wisconsin this 16th day of April 2010 .

By :   James A. Luecke

Exhibit H

# EXHIBIT C



(a)  The plant to which the employee is to be relocated is outside the Area Hire Area as defined by the National Parties, and

(b)  Application is made within six (6) months after commencement of employment at the plant to which the employee was relocated in accordance with the procedure established by the Corporation.

(2)  When employees are relocated, they will be given a choice from the following Relocation Packages:

(a)  Option 1 - Enhanced Relocation:

Employees will receive a Relocation Allowance up to a maximum of $25,000. $5,000 of which will be provided as a signing bonus to cover miscellaneous up-front cash expenditures. An additional amount of $15,000 will be paid to the employee at the new location.

In addition, spousal relocation assistance will be provided.

After one (1) year of employment, employees may receive $5,000 if they continue to be employees of the new location.

Employees who are placed in accordance with Appendix A and accept the Enhanced Relocation Allowance will not be eligible to initiate another Extended Area Hire placement or initiate an Area Hire placement as an active employee for a period of 36 months unless the employee's status changes to laid off or Protected. In the event the plant has employees on permanent indefinite layoff or placed on Protected status with no likelihood of recall into the active workforce, the 36 month period will be eliminated.

Employees receiving the Enhanced Relocation Allowance will terminate their seniority at

75

---

any kind of literature upon Corporation property other than as herein provided.

[See Doc. 6]
[See CSA #5]

## ESTABLISHMENT OF NEW PLANTS

(95)  For twenty-four months after production begins in a new plant (including a non-represented plant), the Corporation will give preference to the applications of laid off employees having seniority in other plants over applications of individuals who have not previously worked for the Corporation, provided their previous experience in the Corporation shows that they can qualify for the job. When employed, such employees will have the status of temporary employees in the new plant. Such employees will retain their seniority in the plant where originally acquired until broken in accordance with the seniority rules herein.

[See Par. (56),(64)]
[See App. K,IV(C)15]

(96)  When there is a transfer of major operations between plants, the case may be presented to the Corporation and, after investigation, it will be reviewed with the International Union in an effort to negotiate an equitable solution, in accordance with the principles set forth in the previous paragraph. Any transfer of employees resulting from this review shall be on the basis that such employees are transferred with full seniority, except as the parties may otherwise mutually agree.

[See App. A,K,IV(C)15]
[See Doc. 104]

(96a)(1) An employee whose seniority is transferred between Delphi Corporation plants pursuant to Paragraph (96) of this Agreement will be paid a Relocation Allowance, provided:

[See App. K,II,(C)]
[See Doc. 20]

74





legislation, the employee must apply for such legislated relocation allowance prior to receiving any Relocation Allowance excluding the signing bonus provided in Paragraph (96a)(2)(a) above. The amount of Relocation Allowance provided under this Paragraph (96a), when added to the amount of relocation allowance provided by such legislation, shall not exceed the maximum amount of the Relocation Allowance the employee is eligible to receive under the provisions of this paragraph.

(4) Materials designed to assist employees who relocate under the provisions of Paragraph (96) or the Memorandum of Understanding Employee Placement will be updated. Such materials will include information covering topics such as:

- Moving Household Goods
- Community Services
- Contractual Rights and Responsibilities
- New Community Orientation
- New Plant and Product Orientation
- Health and Safety
- Legal Services
- Relocation Allowance
- TAA or other Government Benefits
- Work/Family Program
- Real Estate Services

All materials developed regarding these topics are to be consistent with services available to laid off employees under the provisions of Document No. 110, Dislocated Workers.

77

all other Delphi locations and, therefore, not be eligible for recall/rehire or Return to Former Community.

(b)    Option 2 - Basic Relocation:

Employee will receive Relocation Allowance based on mileage relocated from plant of layoff to plant of hiring based on the following table:

| Mileage | Relocation Allowance Amount |
| --- | --- |
| 50-99 | $3,038 |
| 100-299 | $3,347 |
| 300-499 | $3,511 |
| 500-999 | $4,146 |
| 1000+ | $4,767 |

The employee who accepts the Basic Relocation Option will be eligible to apply for return to former community or an Extended Area Hire application in accordance with the Memorandum of Understanding Employee Placement (Section VIII - Return to Former Community and Section II - Extended Area Hire) after working at the plant of relocation for a period of six (6) months or upon indefinite layoff from the plant of relocation.

Employees from an idled or closed location or employees from a location not included in an Area Hire Area with no prospect of recall who relocate in excess of 200 miles under the Basic Relocation Option will receive the specified relocation amount and an additional $1,280.    [See App. A]

(3) In the event an employee who is eligible to receive Relocation Allowance under these provisions is also eligible to receive a relocation allowance or its equivalent under any present or future Federal or State

76

National and/or local training funds will be used to support the efforts required to provide the above assistance.

[See App. A]

## WAGES

(97) The establishment of wage scales for each operation is necessarily a matter for local negotiation and agreement between the Plant Managements and the Shop Committees.

[See Par. (46),(89A),(90)]
[See Doc. 85]
[See CSA #11]

(98) New employees hired on or after the effective date of this Agreement, who do not hold a seniority date in any Delphi Corporation plant and are not covered by the provisions of Paragraph (98b) below, shall be hired at a rate equal to seventy (70) percent of the maximum base rate of the job classification. Such employees shall receive an automatic increase to:

[See Par. (99),(101)(g)]
[See Doc. 87]
[See CSA #10]

(1) seventy-five (75) percent of the maximum base rate of the job classification at the expiration of twenty-six (26) weeks.

(2) eighty (80) percent of the maximum base rate of the job classification at the expiration of fifty-two (52) weeks.

(3) eighty-five (85) percent of the maximum base rate of the job classification at the expiration of seventy-eight (78) weeks.

(4) ninety (90) percent of the maximum base rate of the job classification at the expiration of one hundred and four (104) weeks.

(5) ninety-five (95) percent of the maximum

78

base rate of the job classification at the expiration of one hundred and thirty (130) weeks.

(6) the maximum base rate of the job classification at the expiration of one hundred and fifty-six (156) weeks.

Such an employee who is laid off prior to acquiring seniority and who is re-employed at that plant within one year from the last day worked prior to layoff shall receive a rate upon re-employment which has the same relative position to the maximum base rate of the job classification as had been attained by the employee prior to layoff. Upon such re-employment, the credited rate progression period of an employee's prior period of employment at that plant shall be applied toward their rate progression to the maximum base rate of the job classification.

For the purpose of applying the provisions of this Paragraph (98), (98a), and (98b) only, an employee will receive one week's credit toward acquiring the maximum base rate of the job classification provided the employee had worked in that given week. Credit will not be given for any week during which for any reason, the employee does not work except as provided in Paragraph (108) and when the Christmas Holiday consists of a full week and the Independence Week Shutdown, provided the employee would otherwise have been scheduled to work. Notwithstanding other provisions of this Agreement, full weeks of time lost for vacation during the Plant Vacation Shutdown Week, bereavement, military duty and Family Medical Leave Act, if the employee would otherwise have been scheduled to work, will be considered as time worked. Each increase shall be effective at the beginning of the first pay period following the completion of the required number of weeks of employment.

(98a) Laid-off seniority employees hired in a job classification other than skilled trades, shall receive a

79

**EXHIBIT D**

# MEMORANDUM OF UNDERSTANDING
# TRANSFER OF MAJOR OPERATIONS
## PURSUANT TO DELPHI-UAW NATIONAL AGREEMENT PARAGRAPH (96)
### Electronics and Safety-Milwaukee (Local #438, Cisco 55968)
### TO
### Electronics and Safety- Kokomo (Local # 292, Cisco 55967)

MEMORANDUM OF UNDERSTANDING entered into this __ day of _____, 2007 between Delphi Corporation, hereinafter referred to as the Corporation, and the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, UAW, hereinafter referred to as the Union.

WHEREAS, the Delphi Electronics and Safety Milwaukee Plant, for a number of years produced various Powertrain Gas ECM's; and

WHEREAS, for business purposes and efficiency of operations, the production of E38 and E67 Gas ECM's will be discontinued at the E&S-Milwaukee Plant and relocated to the E&S Kokomo Plant between August 2007 and September 2007, and

WHEREAS, the transfer of such operations from the E&S- Milwaukee Plant could result in the layoff of a number of employees at that location; and

WHEREAS, certain E&S- Milwaukee Plant bargaining unit employees may desire transfer to the E&S Kokomo Plant; and

WHEREAS, the Union is the certified collective bargaining representative for certain employees of the E&S- Milwaukee Plant who will be offered employment at the E&S Kokomo Plant where the Union is also the certified collective bargaining representative for certain employees; and WHEREAS, it is the intent of the parties, and the purpose of the MEMORANDUM to the extent practicable:

*Exhibit A*

I.  To establish a procedure whereby certain employees who are employed in the E&S-Milwaukee Plant bargaining unit, who desire employment at the E&S Kokomo Plant may, within the limits hereinafter set forth, be offered such employment; and

II.  To minimize grievances which might otherwise arise as a result of the employment of such employees and the changing of the job assignments during the transition period.

NOW THEREFORE, it is agreed between the parties that:

A.  <u>Application Procedure</u>

1.  An application procedure will be established by Management for the purpose of allowing certain employees, including those on layoff or approved leaves of absence, of the E&S- Milwaukee Plant bargaining unit to apply for 44 jobs at the E&S Kokomo Plant during an application period beginning August 27, 2007 and ending September 7, 2007.

2.  Eligible employees at the E&S- Milwaukee Plant bargaining unit who desire to transfer to the E&S Kokomo Plant may make application for transfer with the E&S- Milwaukee Plant Employment Office on forms provided by Management for this purpose, during regular business hours with the application period set forth in Paragraph A.1 above.

3.  Eligible employees on layoff or approved leaves of absence from the E&S- Milwaukee Plant bargaining unit will be notified of this opportunity by letter mailed <u>Certified Mail - Return Receipt Requested</u> dispatched to their address of record. Such employees who desire employment at the E&S Kokomo Plant must respond to this notification by filing a valid application with the E&S- Milwaukee Plant Employment Office by the close of business on September 7, 2007.

B.   <u>Selection Procedure</u>

1.   <u>Non-Skilled</u>

a.   In determining the eligibility of applicants for the job openings at the E&S Kokomo Plant, it is agreed that only those employees currently at work with seniority at the E&S- Milwaukee Plant, including those currently on layoff or leave of absence, at the time of making application, will be considered for such openings.

b.   Eligible applicants with seniority in the E&S- Milwaukee Plant bargaining unit at the time a job offer is made will be selected in seniority order to transfer to the E&S Kokomo Plant to fill an estimated 42 production job openings provided they are capable of doing the work.

2.   <u>Skilled Trades</u>

a.   In determining the eligibility of Skilled Trades employees for job openings in the Skilled Trades at the Kokomo Plant, it is agreed that only those seniority employees with a Journeyperson or EITS status as of the time of making application, and when a job offer is made, will be considered for such openings.

b.   The number of employees specified, for the following classification(s) at the Kokomo Plant, will be selected from the designated classification in line with their skilled trades seniority provided they are capable of doing the work:

| Total Number | E&S Milwaukee Classification | E & S Kokomo Classification |
|---|---|---|
| 2 | Pipefitter | Pipefitter |

C.   General

1.   This MEMORANDUM is applicable only to those employees who meet the conditions set forth in A above. An employee's application will be open and pending until:

a.   The applicant has been offered and accepted employment.

b.   The applicant has rejected an offer of employment.

c.   Employment has been offered and accepted by the maximum number of employees provided in Paragraph A.1. above.

2.   The seniority of any applicant who is transferred pursuant to this MEMORANDUM shall be the full seniority the employee has on record together with the employee's complete employment history and records and the rights to which the employee is or may thereafter become entitled under Supplemental Agreements, Exhibits "A", "B", "C", "D", "E", "F", "G", and I to the Delphi-UAW National Agreement dated September 18, 2003. Thereafter, the employee will have no further seniority rights or other rights in the E&S-Milwaukee Plant bargaining unit.

3.   Employees transferred from the E&S- Milwaukee Plant to the E&S Kokomo Plant shall bring with them their full personnel record as though their full period of service had occurred at the E&S Kokomo Plant.

4.   Employees on military leave whose seniority would have entitled them to an offer of employment at the E&S Kokomo Plant pursuant to the provisions of the MEMORANDUM had they been actively at work shall be given an opportunity to file an application to have their name placed on the seniority list at the E&S Kokomo Plant provided, following their discharge from military service, they would be entitled to reemployment pursuant to Paragraph (112) of the Delphi-UAW National Agreement. Thereafter, the National Agreement and applicable local agreement at the E&S Kokomo plant shall govern their employment at such plant.

5.    Employees at the E&S- Milwaukee plant who had previously worked in the bargaining unit and acquired seniority and who are transferred to an opening at the E&S Kokomo Plant and who are subsequently transferred from jobs outside the bargaining unit shall be treated as though their entire service had been at the E&S Kokomo Plant.

6.    All G.I.S. employees at the E&S- Milwaukee plant will be considered to have made application for openings at the E&S Kokomo Plant.

7.    The provisions of the Agreement as they relate to the assignment of manpower may be reviewed by the Corporation and the International Union at the request of either party.

8.    The signing of this MEMORANDUM does not prejudice or establish the position of either party in future cases with respect to Paragraph (96) of the Delphi-UAW National Agreement.

IN WITNESS WHEREOF, the parties have caused their names to be subscribed by their duly authorized representatives on the date first written above.

**INTERNATIONAL UNION, UAW**                     **DELPHI CORPORATION**

_____                     _____

_____                     _____

_____                     _____