**EXHIBIT C**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 05-cv-645-MSK-BNB

JOSE C. ALFARO, and
MARTHA ALFARO,

      Plaintiffs,

v.

GENERAL MOTORS CORPORATION,
HONEYWELL, INC., f/k/a ALLIEDSIGNAL, INC.
DELCO ELECTRONICS CORPORATION,
DELPHI AUTO SYSTEMS, f/k/a INLAND FISHER GUIDE,
JOHN DOE, and
JOHN DOE, INC.,

      Defendants.

---

## DEFENDANT GENERAL MOTORS CORPORATION'S
## OPENING BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

---

    **COMES NOW** Defendant General Motors Corporation (GM), pursuant to D.C. Colo. LCivR 56.1(A), and submits this opening brief in support of its Motion for Summary Judgment (GM's Motion).

### STATEMENT OF FACTS

    This lawsuit arises out of a May 21, 2003, single-vehicle accident that occurred in the median of Interstate 70 in Kit Carson County, Colorado. On the evening of the accident, which occurred at approximately 11:05 p.m., Plaintiff Jose C. Alfaro, a Kansas resident,[1] was the right front seat passenger in a 2000 Chevrolet Silverado 1500 extended cab pickup (the Silverado)

---

[1] Plaintiffs' Complaint cites Colorado substantive law. *See* Complaint (DKT No. 1). However, since Alfaro is a resident of Kansas and the accident occurred in Colorado the question arises as to which law applies to Plaintiffs' claims, Kansas or Colorado. In this brief, however, GM cites authority from both Colorado and Kansas to demonstrate that GM is entitled to summary judgment regardless of which state's law applies. The result would be the same and the choice of law decision need not be made to grant GM's motion for summary judgment.

driven by Gorgonia Diaz. *See* State of Colorado Traffic Accident Report, Exhibit A-1 to GM's

Motion. While traveling eastbound on Interstate 70, Mr. Diaz drove the Silverado off the left

side of the roadway, traveling for approximately 269 feet in a depressed median between the

eastbound and westbound lanes of traffic. *Id.* While traveling in the median, the Silverado

contacted a raised median crossover (a turnaround running perpendicular to the highway lanes),

traveled over the crossover, and went airborne for some distance before landing in the median.

*Id.* Following this incident, Mr. Diaz drove the Silverado to a rest area and reported the accident.

*Id.*

Alfaro and his wife, Plaintiff Martha Alfaro,[2] sued GM and others, asserting claims for

strict liability, negligence, and breach of implied warranties. Plaintiffs alleged in the Complaint

that the air bag system and the right front passenger seat belt system in the Silverado were

defective.[3] In an apparent effort to support their allegations of defect, Plaintiffs identified

William G. Broadhead (Broadhead), of Automotive Safety Research, Inc., as an expert witness.

*See* Plaintiffs' Disclosure of Expert Witnesses at 1, Exhibit A-2 to GM's Motion.

As demonstrated below, however, Plaintiffs' expert does not identify a specific defect

that caused the alleged failure of the seat belt and air bag systems to restrain Alfaro. As such,

Plaintiffs' proof fails and GM is entitled to judgment as a matter of law on all of Plaintiffs'

claims. Further, Plaintiffs' breach of implied warranty claim is barred by the statute of

limitations.

---

[2] Mrs. Alfaro was not involved in the accident. Mrs. Alfaro claims loss of consortium which is derivative of
Alfaro's claim. Because Alfaro's claims fail as a matter of law, so does Mrs. Alfaro's derivative claim. *See Welch
v. George*, 19 P.3d 675, 677 (Colo. 2000). *See also Farmers Ins. Co. v. Jokan*, 57 P.3d 24, 27 (Kan. Ct. App. 2002)
("Derivative claims are the consequence of injury suffered by another; they depend upon rights of the injured party
to recover and are subject to the same defenses available to the underlying personal injury claim.").

[3] Plaintiffs do not allege that any condition of the vehicle caused the accident. *See* Compl., DKT. No. 1

### The Air Bag System

The frontal air bag system in the 2000 Chevrolet Silverado is a supplemental restraint system designed to augment the primary restraint, the lap/shoulder belt. *See* Expert Report of John Sprague (Sprague Report) at 4 (May 22, 2006), Exhibit A-6 to GM's Motion.   The supplemental inflatable restraint system in the 2000 Chevrolet Silverado primarily consists of a driver's air bag module on the hub of the steering wheel, a passenger air bag module located on the right side of the dash, and the air bag sensing system. *Id.*

The air bag sensing system consists of a Sensing and Diagnostics Module (SDM) located under the driver's seat and a front sensor on the lower radiator support of the vehicle.   Sprague Report at 4.   The SDM contains an accelerometer, a microprocessor, an electro-mechanical arming sensor, supporting circuitry for communications, filtering, energy reserve, diagnostics, and the air bag deployment drivers. *Id.* at 4-5.   The microprocessor contains a deployment control algorithm to predict if an event is severe enough to warrant an air bag deployment to restrain the vehicle's front occupants. *Id.* at 5.   The SDM performs diagnostics on the air bag system and warns the driver if a diagnostic condition exists. *Id.*   The SDM also provides an energy reserve to deploy the air bags. *Id.*   It can also store some crash-related information. *Id.*

The SDM in the 2000 Chevrolet Silverado uses information from the accelerometer, the front sensor, and the arming sensor to determine if deployment of the air bags is required. Sprague Report at 5.   The deployment control algorithm in the SDM is enabled by the accelerometer output. *Id.*   After algorithm enable, the microprocessor compares measured acceleration, calculated values, and front sensor status to calibration parameters stored in the SDM. *Id.*   If the algorithm commands an air bag deployment and the arming sensor closes, electrical power is provided to both sides of the air bag deployment circuits. *Id.*   When the

algorithm commands an air bag deployment, it permanently sets a Diagnostic Trouble Code 51 (meaning Deployment Commanded), in the SDM and records certain information in a deployment event file. *Id.*

The sensing system design was based on the vehicle safety system performance goals. Sprague Report at 5. Vehicle level testing data for both deploy and non-deploy events, as well as required air bag deployment criteria for occupant protection were used to develop the sensing system. *Id.* The events used to develop the sensing system included full frontal crashes into a rigid barrier, angle crashes, pole impacts, rough road, and service abuse tests. *Id.* Computer simulation, component level testing, and vehicle testing were used to develop the sensing system. *Id.* This sensing system development was performed during the design and development of the vehicle. *Id.*

Whether there is an air bag deployment is dependent upon the response of the sensing system to longitudinal (i.e., front to back) deceleration input, influenced by the angle of impact, severity of impact, structural deformation, nature of object struck and other factors. Sprague Report at 5. The pre-impact travel speed necessary to generate an air bag deployment may be different if the object struck is some combination of narrow, angled, movable, or deformable. *Id.* at 6. If the angle of impact is not a full frontal, it will take a larger total force to generate the same longitudinal inputs as a full frontal impact. *Id.* The air bag deployment thresholds for each GM vehicle line are developed for that line to balance the injury potential from a deploying air bag with the mitigating effects an air bag has for serious injuries in deployment level collisions. *Id.*

The air bag system for the 2000 Chevrolet Silverado was developed through computer modeling, sled testing, and full-scale barrier testing with instrumented dummies. Sprague Report

at 6.  Components of the air bag system for the 2000 Chevrolet Silverado were specified, tested, and validated as part of the vehicle design to ensure that the proper materials and components have been chosen for the system.  *Id.*  The air bag system was also tested in full-scale barrier, rough road, and service abuse tests to address not only government requirements but also, GM's internal system performance goals.  *Id.*

### The Seat Belt Restraint System

The driver and right front passenger seat belt systems in the 2000 Chevrolet Silverado extended cab pick-up truck are all-belts-to-seat systems.  *See* Expert Report of Kathryn F. Anderson at 9, Exhibit A-4 to GM's Motion.  The lap and shoulder belt system is entirely mounted to the seat, which includes the retractor, webbing, latch plate, and buckle assembly.  *Id.* The seat belt retractor contains two different types of locking mechanisms that are designed to activate in response to a crash event in order to restrain the occupant.  *Id.*  Either one of these mechanisms may perform the safety belt lock-up function during the crash.  *Id.*  The first mechanism within the seat belt retractor senses vehicle decelerations and locks the seat belt.  *Id.* The second mechanism within the seat belt retractor senses how quickly the seat belt webbing is being pulled out, and locks the seat belt.  *Id.*  The seat belt functions to provide the primary restraint in frontal impacts of all severities.  *Id.*  The seat belt is also designed to work in conjunction with the supplemental air bag.  *Id.*  In addition to providing the primary restraint, the seat belt functions to help keep the occupant in position during an impact.  *Id.*  The air bag is designed to distribute the crash forces experienced by the occupant over a larger area of the upper body, in order to stop the occupant more gradually.  *Id.*  Seat belts and air bags are intended to help mitigate injury, but cannot prevent all injuries to all occupants in all types of crashes.  *Id.*

## ARGUMENT AND AUTHORITIES

### PROPOSITION I

### GM IS ENTITLED TO SUMMARY JUDGMENT BECAUSE PLAINTIFFS HAVE NO EXPERT EVIDENCE THAT THE SILVERADO'S SEAT BELT SYSTEM OR AIR BAG SYSTEM HAD A SPECIFIC DESIGN OR MANUFACTURING DEFECT

Plaintiffs assert three causes of action against GM: (1) strict liability; (2) negligence; and (3) breach of implied warranty of merchantability.  Each claim is premised on Plaintiffs' assertion that the Silverado's seat belt system and air bag system failed to restrain Alfaro because of a design or manufacturing defect.

### A.    All of Plaintiffs' claims require proof of a defect.

To establish a *prima facie* case as to each of their three claims, Plaintiffs must prove the existence of a specific design or manufacturing defect.  To establish a *prima facie* case of strict liability under Colorado law, Plaintiffs must prove that the Silverado's seat belt system or air bag system: (1) was defective and because of the defect was unreasonably dangerous; (2) the defect existed at the time the Silverado was sold or left GM's control; (3) the Silverado was expected to and did reach an expected user without substantial change in its condition; (4) Plaintiffs were injured; and (5) the defect was the cause of the injury.  *Simon v. Coppola*, 876 P.2d 10, 15 (Colo. Ct. App. 1993); *see also Bartholic v. Scripto-Tokai Corp.*, 140 F. Supp. 2d 1098, 1106 (D. Colo. 2000); *Jenkins v. Amchem Prods.*, 886 P.2d 869, 886 (Kan. 1994) (Under Kansas law, to establish a *prima facie* case of strict liability the plaintiff must prove three elements: "(1) the injury resulted from a condition of the product; (2) the condition was an unreasonably dangerous one; and (3) the condition existed at the time it left the defendant's control.") (citing *Mays v. Ciba-Geigy Corp.*, 661 P.2d 348, 361 (Kan. 1983)).

To establish a negligence claim under Colorado law, Plaintiffs must prove that GM had a legal duty of care with respect to the design and manufacture of the Silverado, *i.e.*, to design and manufacture the Silverado without defects posing a foreseeable and unreasonable risk of harm to others, and that the duty was breached, proximately causing Plaintiffs' injuries. *Lyons v. Nasby*, 770 P.2d 1250, 1254 (Colo. 1989). Kansas' negligence law also requires proof of a defect. *South v. McCarter*, 119 P.3d 1, 20 (Kan. 2005) (Under Kansas law, to recover for negligence, the plaintiff must prove that GM had a legal duty to produce vehicles without defects that present a foreseeable and unreasonable risk of harm, that there was a breach of that duty, that an injury resulted, and that there is a causal connection between the duty breached and the injury suffered.) (citing *Schmidt v. HTG, Inc.*, 961 P.2d 677, 692 (Kan. 1998)); *see also Barnett-Holdgraf v. Mut. Life Ins. Co.*, 3 P.3d 89, 93 (Kan. Ct. App. 2000).

Finally, to establish a breach of warranty claim under Colorado law, Plaintiffs have the burden to prove that, at the time of purchase, the Silverado was flawed or defective in a manner constituting a breach of warranty. *Prutch v. Ford Motor Co.*, 618 P.2d 657, 660 (Colo. 1980). Kansas law also requires a defect in breach of warranty claims. *Black v. Don Schmid Motor, Inc.*, 657 P.2d 517, 525 (Kan. 1983) (under Kansas law, buyer must prove (1) the ordinary purpose of the goods involved, and (2) the particular goods sold were not fit for that purpose, noting that "the buyer must show that the goods were defective and that the defect existed at the time of sale.").

**B.      Proof of an alleged defect in a seat belt system and/or an air bag system requires expert opinion testimony identifying a defect.**

Absent expert proof of a specific defect, Plaintiffs cannot state a *prima facie* claim for any of their three claims under either Colorado or Kansas law. Here, Plaintiffs must introduce direct evidence that a specific design or manufacturing defect caused the alleged failure of the

seat belt system or air bag system to restrain Alfaro in the accident. *Union Supply Co. v. Pust*, 583 P.2d 276, 286 (Colo. 1978) ("By reason of the nature of the case, the trier of fact is greatly dependent on expert evidence and industry standards in deciding whether a defect is present."); *Randolph v. Collectramatic, Inc.*, 590 F.2d 844, 848 (10th Cir. 1979) ("[Fed. R. Evid. 701] does dictate that where the *topic* requires special experience, only the testimony of a person of that special experience will be received;" thus, a lay witness who has no knowledge or special experience in design or manufacture or pressure cookers was not competent to offer defect opinions) (emphasis in original). Regardless of the theory upon which recovery is sought for injury in a products liability case under Kansas law, "proof that a defect in the product caused the injury is a prerequisite to recovery." *Wilcheck v. Doonan Truck & Equip., Inc.*, 552 P.2d 938, 942 (Kan. 1976).

The mere fact that a plaintiff sustained an injury in connection with the use of a product is insufficient to prove a defect in that product under either Colorado or Kansas law. The accident by itself is not sufficient to present a *prima facie* case. *Shultz v. Linden-Alimak, Inc.*, 734 P.2d 146, 148-49 (Colo. Ct. App. 1986) ("[the] occurrence of an accident in connection with the use of a product does not necessarily make the product defective and unreasonably dangerous."). There must be admissible proof of a defect attributable to the manufacturer. *Id.* at 149. "The mere fact that a person suffered injury while using a product is insufficient in itself to satisfy the requirement of proof that a defect in the product was a proximate cause of the injury." *Wilcheck*, 552 P.2d at 943.

Plaintiffs cannot establish a *prima facie* case on any of their three counts under either Colorado or Kansas law. Plaintiffs' expert fails to identify the specific defect that allegedly caused the seat belt system or the air bag system to restrain Alfaro in the accident. Plaintiffs

must demonstrate that the product failed due to a specific defect. *Schultz v. Linden-Alimak, Inc.*, 734 P.2d 146, 149 (a plaintiff cannot recover "without proof of a defect attributable to the manufacturer or seller which was the cause of the plaintiff's injuries"); *see also Wilcheck*, 552 P.2d at 942 ("proof that a defect in the product caused the injury is a prerequisite to recovery."). The failure of the seat belt system or the air bag system to restrain Alfaro in the accident, without more, is not adequate proof of a defect. *Bartholic*, 140 F. Supp. 2d at 1106 (the fact of an injury in connection with the use of a product is not enough to make the manufacturer liable under strict liability); *Lui v. Barnhart*, 987 P.2d 942, 947 (Colo. Ct. App. 1999) (mere fact of any accident, standing alone, is insufficient to demonstrate negligence); *Oja v. Howmedica, Inc.*, 111 F.3d 782, 792 (for the jury to properly find for a party, the party must present more than a "mere scintilla" of evidence supporting its claim); *Wilcheck*, 552 P.2d at 943 ("The mere fact that a person suffered injury while using a product is insufficient in itself to satisfy the requirement of proof that a defect in the product was a proximate cause of the injury.").

Plaintiffs' proof fails to identify a specific defect in the Silverado's seat belts and air bags. Plaintiffs' expert Broadhead simply speculates about "possibilities" in the performance of the "restraint system" at the time of the accident:

> The restraint system as a whole failed to provide protection from interior impact as would be expected in a situation as this. At least two possibilities or a combination thereof exists. Either a malfunction, such as the aforementioned SDM problem, occurred resulting in a non-deployment, or by design the deployment threshold and characteristics of the crash sensor system are such that certain non-deployment collisions will be beyond the capabilities of the seatbelt to protect the front seat occupants. Both of these scenarios involve defect and unacceptably poor performance of the vehicle's restraint systems.

*See* Automotive Safety Research, Inc., Preliminary Report (April 21, 2006) Prepared by William G. Broadhead at 10 (Broadhead Report), Exhibit A-3 to GM's Motion. Furthermore, in addition

to the fact that Plaintiffs' expert does not identify a specific defect, the undisputed expert opinion testimony presented to this Court establishes that neither the seat belts nor the air bags in the Silverado are defective.

GM's expert Kathryn F. Anderson evaluated the right front passenger seat belt system on April 27, 2006. *See* Expert Report of Kathryn F. Anderson (Anderson Report) at 5-6, 10 (May 22, 2006), Exhibit A-4 to GM's Motion. Her evaluation demonstrated that both the vehicle sensitivity feature and the webbing sensitivity feature remain functional for the right front seat occupant. *Id.* Daniel Davee, another identified expert in this action, also opines, "The seat belt assemblies in the 2000 Chevrolet Silverado were not defectively designed, manufactured or assembled." *See* Report of Daniel Davee at 5, ¶ 1 (May 22, 2006), Exhibit A-5 to GM's Motion.

As to the Silverado's air bag system, GM's expert John Sprague opines that the fact that the air bags did not deploy in the accident was not due to any defect in the air bag system. Sprague Report at 10, Exhibit A-6 to GM's Motion. Whether there is air bag deployment is dependent upon the response of the sensing system to longitudinal (i.e. front to back) deceleration input, influenced by the angle of impact, severity of impact, structural deformation, nature of the object struck and other factors. *Id.* at 5. The characteristics of the accident at issue – i.e., the longitudinal deceleration from impacts with the median crossover and the landing in the median of I-70 – were below the air bag deployment threshold for the Silverado. *Id.* at 9. Furthermore, both Sprague and Anderson opine that the design of the air bag system in the Silverado was reasonable and appropriate. *Id.*; *see also* Anderson Report at 11.

Plaintiffs have no expert proof that there was a specific defect in the Silverado's seat belts or air bags. The only expert proof presented to this Court establishes that the Silverado's seat belts and air bags are not defective. On this record, GM is entitled to summary judgment.

### C.     Circumstantial proof of defect is only appropriate in limited situations.

Under Colorado law, in the absence of direct evidence of a specific defect, circumstantial evidence may be admitted in limited situations, to prove a defect only if all other causes of the product failure have been excluded. *See Weir v. Federal Ins. Co.*, 811 F.2d 1387, 1392 (10th Cir. 1987); *Union Ins. Co. v. RCA Corp.*, 724 P.2d 80, 83 (Colo. Ct. App. 1986). Kansas law also provides that if the plaintiff proceeds based on circumstantial evidence alone, then the plaintiff must present evidence that negates causes other than the alleged defect, otherwise "there must be an expert opinion that the product was defective." *Mays*, 661 P.2d at 360. The circumstances demonstrated must justify an inference of probability rather than a mere possibility. *Id.* This action, however, is not appropriate for circumstantial proof.

Product liability actions asserting a defect based on the alleged failure of the seat belt system or the air bag system to restrain a plaintiff in an accident are not the type of cases that are appropriate for circumstantial evidence. Expert proof of the defect is required in such cases. *See, e.g., Montag v. Honda Motor Co., Ltd.*, 75 F.3d 1414, 1420-21 (10th Cir.), *cert. denied*, 519 U.S. 814 (1996) (only an expert could provide evidence that a seat belt was "defective" or poorly conceived" in a product liability case). For example, a plaintiff's testimony about an alleged seat belt malfunction is not sufficient to take a defect seat belt allegation to the jury when presented with expert opinion testimony that the seat belt is not defective. *See, e.g., Tiner v. General Motors Corp.*, 909 F. Supp 112, 117-18 (N.D. N.Y. 1995). In time, the court ruled that the plaintiff's testimony was not sufficient to survive summary judgment where the plaintiff testified

that "the belt allowed her to move forward after the collision, so that her chest hit the steering wheel and her knees hit the underside of the dashboard. The belt also allowed her to move backward, so that her head hit the police cage behind her." *Id.* at 117. Rejecting the plaintiff's proof, the district court ruled:

> Matters such as the tolerance a seat belt should allow for movement after a collision are not within the ken of the average juror. Moreover, it is likely that many factors besides the seat belt design and manufacture—issues such as maintenance, the proximity of the driver's seat to the steering wheel, and adjustments the driver made to seat belt settings—could explain the degree or direction of movement allowed to the driver. A jury may infer that a product has a defect without actual proof of the particular defect only if the plaintiff (1) establishes that the product did not perform as intended, and (2) excludes all other causes for the accident. [The plaintiff] has not offered any proof that the seat belt did not perform as intended. Nor has she offered proof excluding all other potential causes for any malfunction. Therefore, it would be improper to allow the jury to infer that the seat belt was defective. Because [the plaintiff] has offered no competent proof of a defect in the seat belt, her claim on this issue must be dismissed.

*Id.* at 117-18. *See also Ruminer v. General Motors Corp.*, No. 4:03-CV-00349 GTE, 2006 U.S. Dist. LEXIS 37861, *6 (E.D. Ark. Feb. 6, 2006) (granting summary judgment in favor of the defendant manufacturer ruling plaintiff failed to come forward with sufficient evidence to take his case to the jury because plaintiff "ma[de] no effort to prove any particular defect in the seat belt restraint system.") (attached hereto as Exhibit A-8).

Similarly, other courts have ruled that a plaintiff must present expert opinion testimony to support a claim that an air bag was defective. *See, e.g., Klootwyk v. Daimler Chrysler Corp.*, No. 01-C-6127, 2003 U.S. Dist. LEXIS 7768, at *10 (N.D. Ill. May 7, 2003) ("In a case such as this one, Plaintiff needed to offer expert testimony to attest to the fact that the driver-side air bag was unreasonably dangerous, as this claim involves technical matters beyond the common knowledge

and experience of jurors.") (attached hereto as Exhibit A-9); *Turner v. Daimler Chrysler Corp.*, No. 99-0696-RV-L, 2000 U.S. Dist. LEXIS 18244, at *6 (S.D. Ala. Oct. 31, 2000) ("plaintiff must affirmatively establish the defective condition of the [air bag] by means of expert testimony") (citing *Brooks v. Colonial Chevrolet-Buick*, 579 So.2d 1328, 1332-33 (Ala. 1991)) (attached hereto as Exhibit A-10); *Wood v. Toyota Motor Corp.*, 760 A.2d 315, 318 (Md. Ct. Spec. App. 2000) (air bag is precisely the type of complex and technical product that requires expert testimony to prove an alleged defect); *St. Clair v. General Motors Corp.*, 10 F. Supp. 2d 523, 527 (M.D. N.C. 1998) (Plaintiff could not establish that his air bag was defective in absence of expert testimony).

Whether air bag and seat belt systems are defective are technical issues beyond the ken of lay jurors. As outlined above, there are various engineering considerations that determine whether or not air bags deploy in any given accident scenario. Similarly, whether a seat belt restraint system was defective in light of any given accident scenario requires consideration of technical and engineering principles. These considerations are beyond the understanding of average lay jurors. Expert opinion testimony is necessary to evaluate the air bags and a seat belt restraint system in this accident to determine whether some alleged defect affected their performance. The issues presented by Plaintiffs' defect allegations involve complex engineering issues that require expert witness testimony. And yet Plaintiffs have no expert testimony to support their defect allegations.

**D.     Plaintiffs have failed to identify a defect and cannot demonstrate a defect through circumstantial evidence.**

Plaintiffs cannot establish a *prima facie* case on any of their three counts under either Colorado or Kansas law. Despite their burden, Plaintiffs' expert Broadhead failed to identify any specific defect in the Silverado's seat belt system or air bag system. This is not a case where the

allegedly defective product has been destroyed thereby making the identification of the specific

defect impossible.  Broadhead has inspected the Silverado, its seat belt system, and its air bag

system.  He has reviewed the data downloaded from the Silverado's Sensing and Diagnostic

Module (SDM).  Following his examination, Broadhead opines:

> The restraint system as a whole failed to provide protection from
> interior impact as would be expected in a situation as this.  At least
> two possibilities or a combination thereof exists.    Either a
> malfunction, such as the aforementioned SDM problem, occurred
> resulting in a non-deployment, or by design the deployment
> threshold and characteristics of the crash sensor system are such
> that certain non-deployment collisions will be beyond the
> capabilities of the seatbelt to protect the front seat occupants.  Both
> of these scenarios involve defect and unacceptably poor
> performance of the vehicle's restraint systems.

Broadhead Report at 10.  Unable to identify a specific defect in the air bag or seat belt systems,

Broadhead's conclusion and reasoning is circular—the Silverado's seat belt system or the air bag

system failed to restrain Alfaro and therefore either the seat belt or the air bag system has a

defect or malfunctioned.  This logic is nothing more than concluding that there was some defect

because Alfaro sustained injuries in an accident.   As set forth above, such reasoning is

inappropriate and insufficient under either Colorado or Kansas law.  Broadhead's logic does not

identify the defect.  Indeed, his analysis does not even identify which component was allegedly

defective.

Even assuming this case was appropriate for circumstantial proof, which it is not,

Plaintiffs' circumstantial evidence fails to negate other causes of Alfaro's injury for which GM

would not be liable.  Plaintiffs' expert does not rule out the possibility that injuries are

unavoidable in an accident such as that at issue here. Plaintiffs' expert does not negate other

post-manufacture conditions which might have caused Alfaro's injuries which would not be

attributable to GM.  Plaintiffs' expert does not negate the possibility that Alfaro was improperly

wearing the seat belt at the time of the accident. Plaintiffs' proof does not negate possible causes of Alfaro's injury for which GM would not be liable. Consequently, Plaintiffs cannot proceed to trial based on circumstantial evidence.

Plaintiffs' proof is insufficient to state a *prima facie* claim for recovery in a products action under either Colorado or Kansas law. Accordingly, GM is entitled to judgment as a matter of law.

## PROPOSITION II

### GM IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' WARRANTY CLAIM BECAUSE PLAINTIFF FILED THIS ACTION MORE THAN THREE YEARS AFTER THE SILVERADO WAS FIRST SOLD AND THE WARRANTY ACTION IS THEREFORE TIME-BARRED

Further, Plaintiffs' claim for breach of warranty is time-barred by the statute of limitations. Under Colorado law, a breach of warranty occurs "when tender of delivery is made," and must be brought within three years or is forever time barred. COLO. REV. STAT. § 4-2-725 (2005); *Boyd v. A.O. Smith Harvestore Prods., Inc.*, 776 P.2d 1125, 1128-29 (Colo. Ct. App. 1989) (warranty claim breach occurred at time of delivery, not when plaintiff discovered damage); *see also Leprino Foods Co. v. Feldmeier Equip., Inc.*, No. 03-cv-02461-MSK-OES, 2006 U.S. Dist. LEXIS 17227, at 8-14 (D. Colo. 2006) (breach of warranty claims occur on date of delivery). The Silverado was delivered on August 21, 1999. Plaintiffs filed this lawsuit on April 7, 2005, more than three years later. Accordingly, Plaintiffs' claim for breach of warranty is time barred.

## CONCLUSION

Plaintiffs' expert fails to identify a specific defect in the Silverado's seat belts or air bags. The undisputed expert proof before this Court establishes that the Silverado's seat belts functioned properly after the accident and were not defectively designed, manufactured or

assembled.  The undisputed proof also establishes that the fact that the Silverado's air bags did not deploy in the accident was not due to any defect.  Instead, the characteristics of the accident – i.e., the longitudinal deceleration from impacts with the median crossover and the landing in the median of I-70 – were below the air bag deployment threshold for the Silverado.  It is also undisputed that the design of the Silverado's air bag system was reasonable and appropriate.

Because Plaintiffs' evidence is insufficient to establish the existence of a specific defect, a critical element of all three of Plaintiffs' claims under either Colorado or Kansas law, GM is entitled to summary judgment on all of Plaintiffs' claims.  GM is also entitled to summary judgment on Plaintiffs' breach of warranty claim because Plaintiffs filed this action more than three years after the Silverado was first tendered for delivery.

Respectfully submitted,

/s/ Michael F. Smith
ELDRIDGE COOPER STEICHEN
    & LEACH, PLLC
MARY QUINN-COOPER (#11966)
mcooper@ecslok.com
MICHAEL F. SMITH (#14815)
msmith@ecslok.com
HAROLD C. ZUCKERMAN (#11189)
hzuckerman@ecslok.com
P. O. BOX 3566
110 W. 7th Street, Ste 200
TULSA, OKLAHOMA 74101-3566
(918) 388-5555  FAX (918) 388-5654

CHARLES L. CASTEEL
DAVIS GRAHAM & STUBBS LLP
SUITE 500, 1550 SEVENTEENTH STREET
DENVER, CO  80202
Charles.Casteel@dgslaw.com
(303) 892-9400 telephone
(303) 893-1379 facsimile

*Attorneys for General Motors Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of July, 2006, I electronically filed the foregoing **DEFENDANT GENERAL MOTORS CORPORATION'S OPENING BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** with the Clerk of Court using Lexis Nexis for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic filing to the following ECF registrants:

Stanley Walter
stan@stanwalterlaw.com

Mary A. Wells
mwells@warllc.com

Peter F. Jones
JonesP@HallEvans.com

and I certify that I have mailed the documents to the following non CM/ECF participants:

Mr. Don C. Staab
1301 Oak Street
Hays, Kansas  67601

Attorney for Plaintiff Martha Alfaro

J. Kenneth Wainwright, Jr.
Barry B. Sutton
Harvey Kruse PC
1050 Wilshire Drive
Troy, Michigan  48084-1526

Attorneys for Delco Electronic, LLC and
Delphi Automotive Systems, LLC

/s/ Michael F. Smith

Case 1:05-cv-00645-MSK-BNB Document 60-1 Filed 07/21/06 USDC Colorado Page 1 of
05-44481-rdd Doc 20004-3 Filed 05/10/10 Entered 05/10/10 20:01:32 Exhibit C
Pg 19 of 39

Page 1

2 of 2 DOCUMENTS

**JOEL DOUGLAS RUMINER, PLAINTIFF v. GENERAL MOTORS CORPORA-
TION, and GMC TRUCK, a Division of GENERAL MOTORS CORPORATION,
DEFENDANTS**

**NO. 4:03-CV-00349 GTE**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF AR-
KANSAS, WESTERN DIVISION**

*2006 U.S. Dist. LEXIS 37861*

**February 6, 2006, Decided**

**SUBSEQUENT HISTORY:** Costs and fees proceeding at *Ruminer v. GMC, 2006 U.S. Dist. LEXIS 32644 (E.D. Ark., May 19, 2006)*

**COUNSEL:** [*1] For Joel Douglas Ruminer, Plaintiff: Clyde Tab Turner, Turner & Associates, P.A., North Little Rock, AR.; Jerry M. White, Turner & Associates, P.A. - Dallas, Dallas, TX.

For General Motors Corporation, Defendant: Andrew L. Richardson, Harold C. Zuckerman, Mary Quinn-Cooper, Eldridge Cooper Steichen & Leach, P.L.L.C., Tulsa, OK.; D. Keith Fortner, James D. Robertson, William H. Edwards, Jr., Barber, McCaskill, Jones & Hale, P.A., Little Rock, AR.

**JUDGES:** Garnett Thomas Eisele, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** Garnett Thomas Eisele

**OPINION:**

### SUPPLEMENTAL MEMORANDUM OPINION AND ORDER REGARDING SUMMARY JUDG-MENT AND DEFENDANT'S *DAUBERT* CHAL-LENGE

This Order supplements the Court's prior Memorandum Opinion, entered January 17, 2006, (hereafter "Opinion # 1") in which the Court ruled as a matter of law on Plaintiff's air bag claim but left open summary judgment and *Daubert* issues related to Plaintiff's remaining claim for seat belt system failure. The record has been expanded by the Court's January 17, 2006, Letter Order, and the parties' submissions in response. Additionally, a telephone conference was held on January 19, 2006, during which Plaintiff was provided an additional [*2] opportunity to point to evidence or to provide additional argument. Finally, following the telephone conference, Plaintiff sought permission to file actual documentation regarding eleven similar incidents and two crash test reports, claiming it had been inadvertently omitted from the Plaintiff's prior response, which referenced such documents in support of Plaintiff's punitive damage claim. That request (Docket no. 146) is pending. The Court will allow the supplementation of the record to include these documents.

Following a review of the entire summary judgment record and after carefully considering the applicable law, the Court reaches the following conclusions: (1) Plaintiff has failed to come forward with sufficient evidence -- either direct or circumstantial -- from which the jury could find that the vehicle's seat belt system had any design or manufacturing defect at the time it left the manufacturer; (2) Alternatively, Dr. Bidez's speculative testimony regarding possible causes for the alleged seat belt failure would either not be helpful to the jury or is not sufficiently reliable, and should be excluded from evidence as part of Plaintiff's case-in-chief; and (3) Plaintiff [*3] failed to come forward with sufficient evidence to support an award of punitive damages.

Each of these points will be discussed separately.

### SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only when, in reviewing the evidence in the light most favorable to the non-moving party, there is no genuine issue as to any material fact, so that the dispute may be decided solely on legal grounds. *Holloway v. Lockhart, 813 F.2d 874 (8th Cir. 1987); Fed. R. Civ. P. 56.* The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:


**EXHIBIT**

A-8

Case 1:05-cv-00645-MSK-BNB    Document 60-1    Filed 07/21/06    USDC Colorado    Page 2 of
05-44481-rdd    Doc 20004-3    Filed 05/10/10    Entered 05/10/10 20:01:32    Exhibit C
Pg 20 of 39

Page 2

2006 U.S. Dist. LEXIS 37861, *

The inquiry performed is the threshold inquiry of determining whether there is a need for trial-- whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).*

The Eighth Circuit set out the burdens of the parties in connection with a summary judgment motion in *Counts v. MK-Ferguson Co., 862 F.2d 1338 (8th Cir. 1988)*: [*4]

[T]he burden on the party moving for summary judgment is only to demonstrate, i.e., '[to] point[] out to the District Court,' that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.

*Id. at 1339* (quoting *City of Mt. Pleasant v. Associated Elec. Coop., 838 F.2d 268, 273-74 (8th Cir. 1988)* (citations omitted)(brackets in original)).

"A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material [*5] fact." *Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).* However, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Id.*

Once the moving party demonstrates that the record does not disclose a genuine dispute on a material fact, the non-moving party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in *Rule 56*, must set forth specific facts showing that there is a genuine issue for trial. *Fed. R. Civ. P. Rule 56(e).* The plain language of *Rule 56(c)* mandates the entry of summary judgment against a non-moving party which, after adequate time for discovery, fails to make a showing sufficient to establish the existence of an element essential to its case, and on which that party will bear the burden of proof at trial. *Celotex Corp., 477 U.S. at 322.*

## DISCUSSION

**(1) Plaintiff has failed to come forward with sufficient evidence, either direct or circumstantial, which would permit a jury finding in his favor on liability.**

So, just what is the evidence [*6] proffered by Plaintiff in support of his theories of liability? n1 Plaintiff makes no effort to prove any particular defect in the seat belt restraint system. Instead, Plaintiff relies heavily on GM's own witness testimony to support its contention that there must have been "something wrong" with the seat belt system based on the fact that Plaintiff suffered such severe facial injuries even while buckled in his seat belt. For example, Plaintiff points to the report of GM engineer James White which concludes that "if Mr. Ruminer had utilized the available left front safety belt system in the crash, it would have restrained him." (Report of James White, Exh. A to Pl.'s Response, at p. 2). n2 Plaintiff also points to the testimony of GM biomechanics expert James W. Lighthall, Ph.D. Dr. Lighthall opines in his report that "if Mr. Ruminer had been using his seatbelt at the time of this incident he would not have sustained severe facial fractures." (Report, Exh. B to Pl.'s Response, at p. 3).

n1 The parties do not distinguish clearly between the asserted theories of negligence, breach of warranty, and strict liability. Plaintiff discusses and argues his case solely in terms of strict liability, *i.e.,* whether there was a product defect. The Court will likewise focus its opinion. Without proof sufficient to prevail on his strict liability claim, the Plaintiff can not state a submissible claim on his theories of negligence or breach of warranty related to the alleged seat belt failure. And, indeed, the summary judgment record here reveals no independent evidence of negligence on the part of the Defendant in manufacturing or in designing the seat belt system or that would independently support a claim for breach of an implied warranty.

[*7]

Case 1:05-cv-00645-MSK-BNB   Document 60-1   Filed 07/21/06   USDC Colorado   Page 3 of
05-44481-rdd   Doc 20004-3   Filed 05/10/10   Entered 05/10/10 20:01:32   Exhibit C
Pg 21 of 39

Page 3

2006 U.S. Dist. LEXIS 37861, *

n2 In the future, the Court urges the parties to submit an exhibit index and/or to describe the exhibits when electronically filing exhibits. Doing so makes location of relevant exhibits much easier.

These comments must be considered in context. First, Mr. White's and Dr. Lighthall's testimony was given in the context of their opinions that Plaintiff was not wearing his seatbelt at the time of the accident. This issue, of course, is a hotly disputed issue in this case. While the Court assumes, for purposes of determining summary judgment, that Plaintiff would ultimately prevail on this issue before the jury, it must be remembered that this disputed issue of fact was at the heart of Dr. Lighthall and Mr. White's testimony.

It is equally clear that neither Dr. Lighthall nor Mr. White is saying that if Plaintiff had been wearing his belt he would not have been injured. Rather, it is their opinion that had he been restrained his injuries would not have been as severe. For example, Dr. Lighthall, GM's biomechanics expert, opined:

> Even when worn seatbelts cannot prevent all injuries in all [*8] accidents. This is particularly true for "unrestrained" portions of the body such as the extremities and the head. In this case if Mr. Ruminer had been wearing his seatbelt at the time of the incident the likelihood of forceful interaction between his face/head and the upper steering wheel rim and steering wheel hub still exists. However for a properly belted driver, the severity of the injury would be mitigated.

(Dr. Lighthall Report at p. 5).

Plaintiff also offers the testimony of Dr. Bidez, a biomechanics expert, whose examination of the vehicle and Plaintiff's injuries led her to conclude that Plaintiff was belted at the time of the accident. Dr. Bidez will also testify that the seat belt system failed to properly restrain Plaintiff. In her opinion, the Plaintiff's "lap-shoulder belt appears to have experienced a late lock-up, if it locked at all. During the vehicle inspection, marks on the webbing indicate that spoolout occurred." Dr. Bidez concludes that this "demonstrates a clear case of retractor failure and ultimately allowed [Plaintiff's] head and upper torso to have excessive movement toward the steering wheel." (Dr. Bidez report, at p. 6).

This proof establishes, [*9] at most, that accepting that Plaintiff was belted at impact, the seat belt system did not adequately restrain Plaintiff, and that, consequently, Plaintiff was injured more severely than he otherwise would have been. The difficult and unresolved issue in this case is determining why the seat belt did not restrain Plaintiff.

Plaintiff has no direct proof of any specific manufacturing or design defect in the belt system and cannot identify the cause of the alleged seat belt failure. But, Plaintiff contends that, under the applicable law, no such proof is necessary. Instead, Plaintiff proposes to have Dr. Bidez testify regarding possible causes for the seatbelt's alleged retractor failure and offers the following from her deposition testimony: n3

> Q. Doctor Bidez, is it your opinion in ths case that there is a defect in the design of the seat belt, or the seat belt system, in the subject vehicle.
> A. Let me answer it this way. I cannot rule out that there are not both design and manufacturing defects. The evidence within General Motors is that there is clearly a design defect, and there may or may not be a manufacturing defect. Because to my knowledge no one has disassembled [*10] the retractor.
> Q. As you sit here today, can you state with a reasonable degree of engineering or scientific certainty that there is a manufacturing defect in the subject seat belt or seat belt system?
> A. Let me state it in the affirmative. Within a reasonable degree of engineering probability, there is a design and/or manufacturing defect in the driver's retractor and air bag system, that is the restraint system, that was the direct cause of Joel Ruminer's injury.
> Q. Please tell us the specific manufacturing defect that you believe existed in the subject -- first let's talk about the seat belt or seat belt system. . . .
> A. The seat belt retractor failed to lock appropriately, to prevent injury of head contact of Joel Ruminer to the steering wheel.
> Q. Can you be any more specific than that as to what the specific manufacturing defect was?
> A. No, not at this point. And to go back and clarify an earlier question you asked. If it becomes important that a specific

2006 U.S. Dist. LEXIS 37861, *

manufacturing defect is identified, then obviously, both sides are going to have to get together to disassemble the retractor.
Q. Well, as you sit here today, you can't point us to a specific manufacturing defect, correct? [*11]
A. That's correct. Nor do I need to.
Q. Dr. Bidez, have you disassembled the subject retractor?
A. Of course not.
Q. Have you asked anybody to do that?
A. No.

. . .

Q. What I guess I am asking is this. Have you looked at any design or specification drawings for the seat belt or the seat belt system in this case, and that you can point us to a specific defect in that design or those designs?
A. What I have reviewed and relied upon is the design failure mode and effects analysis of General Motors, with respect to the subject retractor and belt system. . . . that provides GM engineers viewpoints of all of the different failure modes that can result in improper retractor performance. . . .

. . :

Q. What is the basis for your opinion that sensor failure occurred with a reasonable degree of engineering or scientific probability or certainty in this case?
A. Okay. I am not going to be able to answer any string of questions like that because I said that within a reasonable degree of engineering probability, that one or more of these occurred. Now, I cannot do that on an isolated item-by-item basis without disassembling the retractor.

(Dr. Bidez deposition, pages [*12] 15, 16-17, 20, 46).

n3 GM contends that this testimony is inadmissible expert testimony. That argument is discussed separately.

Dr. Bidez answered similarly with regard to every potential cause of the retractor's alleged failure to lock. That is, because the retractor had not been disassembled, examined and/or tested, the specific cause of the retractor's failure could not be determined. Instead, Dr. Bidez relies upon FMEA (Failure Mode Affect Analysis) reports prepared by GM.

Dr. Bidez testified that she took the 85 total seat belt potential failure modes identified by GM's engineers, narrowed those to 45 failure modes, all relating to retractor failure, and then further narrowed it down to 12 potential failure modes. Dr. Bidez excluded all failure modes which would have been visible without disassembly based on her observation that no one had identified any such clearly visible problems. Thus, Dr. Bidez assumed: (1) that the seat belt's failure to lock (or late lock-up) was caused by the retractor; and (2) [*13] that one of 12 possible causes was at fault. (See Def.'s Brief, Docket # 134, at pp. 14-15, and Exhibits referenced therein).

However, a review of the FMEA reports relied upon by Dr. Bidez indicates that there are many potential causes for retractor failure that are clearly unrelated to a manufacturing or design defect. Defendant GM -- under either a direct or circumstantial proof case -- may only be held legally liable for defects existing in its product at the time that the product left the manufacturer. Plaintiff, in his proof, makes no effort to negate the other post-delivery causes for seat belt failures.

The following table summarizes the 12 possible causes for the alleged retractor failure identified by Dr. Bidez in her deposition together with the likely causes listed for each. The information in the table is taken from the actual FMEA reports upon which Dr. Bidez relies. n4

| Potential Failure Mode | Potential Failure Causes |
| --- | --- |
| (7) Sensor Failure | Contamination Foam Degrade |
| (10) Sensor Compensator Failure, Non-Lock | Contamination |
| (14) Frame Fractures | Frame Corrodes, Fatigues from Overloading, |

2006 U.S. Dist. LEXIS 37861, *

| Potential Failure Mode | Potential Failure Causes or from Impact from Foreign Object |
| --- | --- |
| (15) Pawl Fractures | Pawl Corrodes, Fatigue from Crack Propagation, Pawl Loading |
| (16) Ratchet and Sleeve Disengage from Frame | Corrosion Fatigue at Ratchet and Sleeve Ratchet and Sleeve Loading |
| (17) Fatigue of Web Pin | Pin Corrodes. Pin Fatigues from Crack Propagation. Overloading. |
| (18) Shaft Fatigues | Vibration. Corrosion of Shaft |
| (20) Deformation of Actuator Support | Lever Fatigues from Vibration. Lever Creeps. |
| (21) Fracture of Actuator Gear | Gear Fatigue from Vibration and Wear. Actuator Gear Creeps. |
| (23) Fastener Loosens or Fatigues | Vibration |
| (29) Retractor Will Not Lock, Causing Poor Retraction/Extraction of Webbing | Trim Interference with Retractor Locking Mechanism. Mechanism is exposed or unprotected. |
| (30) Retractor Binds Due to Mechanism Deformation | Deformation of Mechanism due to Build Variation in Seat Structure, or Inadequate Specs for Seat Structure Finish, Flatness, Geometry |

[*14]

(See Dr. Bidez depo. at pp. 47-57 & FMEA Reports at line items noted in table).

n4 Plaintiff's brief doesn't specify which of the 12 potential retractor failure modes Dr. Bidez identified from the 85 on GM's FMEA reports. The Court was able to identify the twelve failures by comparing the FMEA report to Dr. Bidez's deposition. The record is devoid of any discussion or explanation by Dr. Bidez of the potential failures causes listed in the FMEA reports and whether they could occur post-manufacture, even after the Court placed the Plaintiff on notice of this failure in the proof in its January 17th, letter and permitted Plaintiff the opportunity to respond.

Most, if not all, of these "potential causes" appear to occur post-manufacture. Note, for example, "vibration," "overloading," "corrosion," "impact from foreign object," "foam degrade," "contamination." At a minimum, expert testimony would be required to explain why any of these potential causes should properly be attributed to a manufacturing or design [*15] defect existing when the product left GM. No such expert testimony has been offered by Plaintiff.

Dr. Bidez testified that she used the following "method" to pinpoint the 12 potential failures:

". . I looked at the failure modes identified by the GM engineers, and I looked at those that the GM engineers said would

2006 U.S. Dist. LEXIS 37861, *

lead to lock-up performance problems, ei-
ther no lockup or late lock-up, those I
highlighted. Then I looked at symptoms to
the operator. Is it visible, openly visible,
and if it was because no one has identified
it -- and certainly Mr. Ruminer didn't ei-
ther -- then that wasn't plausible, those
scientific basis relying on GM's own en-
gineers. I have identified the specific fail-
ure modes that may have, one or more,
occurred in the Suburban vehicle.

(Dr. Bidez deposition at p. 47).

The following exchange is representative of Dr.
Bidez's discussion of the evidence supporting her opinion
with regard to each of the 12 potential failures:

Q. . . . Can you tell us, please, all of the
physical, factual, scientific, or any other
evidence that indicates sensor compensa-
tor failure non-lock occurred in this case
or may have occurred in this case?
A. The basis [*16] is the physical scien-
tific medical testimony that Mr. Ruminer
was restrained in this crash. I have that
documented elsewhere. All of that is the
basis for every single failure mode, that
he was wearing the belt GM says it should
have locked and it didn't lock.
Q. Any specific evidence on the seat belt
or the seat belt system or photograph of
the -- or the diagram of the seat belt or
seat belt system that you can point to, that
forms the basis for sensor compensator
failure non-lock having occurred in this
accident?
A. Photographs or diagrams, is that what
you said?
Q. Yes.
A. No.
Q. Or any evidence on the belt or belt sys-
tem itself?
A. No, because the retractor has not been
disassembled.

(Dr. Bidez deposition at p. 52-53).

The Court, presented with this initial evidence,
wrote to the parties on January 17, 2006, noting that the
summary judgment record on the seat belt issue was con-
fusing and appeared incomplete. (See Docket No. 141).
The Court asked certain questions of the parties and

permitted them to submit additional legal authority or
argument in support of their respective positions.

The Court specifically inquired further regarding the
FEMA evidence, writing: [*17]

In looking at the twelve failure modes
identified by Dr. Bidez it appears that
many of the causes listed for such possi-
ble failure modes involve post-delivery
problems such as wear and tear, fractures,
misuse, etc. So the question arises: **If pos-
sible explanations for any failure of the
seat belt system involved post-delivery
changes in the system, then has Plaintiff
instead of negating causes other than
defects in design and/or manufacturing,
in fact identified other possible causes
for the failure of the product? And, if
so, has Plaintiff failed to meet the
*Petrus-Chrysler-Plymouth* and *Higgins*
standard, *supra,* for excusing Plaintiff
from the necessity of proving a specific
defect?**

(Letter Order of January 17, 2006, Docket No. 141, at p.
4)(emphasis in original).

In response Plaintiff stated:

We believe we have met and exceeded
what is required by the law. The compo-
nent of the seat belt system which is at is-
sue is the retractor. The retractor is physi-
cally housed within the drivers seat of Mr.
Ruminer's vehicle and therefore not ex-
posed to elements, not exposed to human
contact, and not subject to alternation
without tearing the seat open. In [*18]
order to expose and modify or manipulate
the retractor, a person would have had to
remove the fabric of the seat in the area of
the drivers outside shoulder, which in-
cludes tearing up the driver's seat. Al-
though we believe that even GM would
readily agree to what we have just stated,
Dr. Bidez, through her inspection of the
driver's seat has ruled out any pre-
accident access to, or modification of, the
retractor.

(Plaintiff's Letter Response to Letter Order, at p. 3,
Docket No. 144).

Case 1:05-cv-00645-MSK-BNB   Document 60-1   Filed 07/21/06   USDC Colorado   Page 7 of
05-44481-rdd   Doc 20004-3   Filed 05/10/10   Entered 05/10/10 20:01:32   Exhibit C
Pg 25 of 39

Page 7

2006 U.S. Dist. LEXIS 37861, *

This response by the Plaintiff misses the point. Whether or not the retractor was easily accessible "pre-accident" does nothing to negate Dr. Bidez's reliance on the 12 potential failure modes suggested by GM engineers to be the result of post-delivery causes in most, if not all, instances.

In its January 17th letter, the Court also inquired regarding whether the retractor had been tested. Plaintiff indicated that the retractor remains in the vehicle, which is located in a warehouse under Plaintiff's control. Plaintiff's counsel indicated that they elected not to test the retractor, because they believed it was not necessary. Plaintiff's counsel and Dr. Bidez acknowledge that a manufacturing defect, [*19] if one existed, could potentially be identified by opening and examining the retractor, but claimed that if the retractor failure was due to a sensitivity/setting designed into the retractor (design issues), then such could not be verified by retractor testing. In contrast, GM points out that a partial disassembly of the subject retractor could have ruled out or identified each of the 12 potential failure modes identified by Dr. Bidez. Thus, it is uncontroverted that testing the retractor would pinpoint or eliminate a manufacturing defect.

Also in response to the Court's letter, GM pointed out that its seat belt expert, Mr. White, examined and evaluated the seat belt assembly on September 9, 2004. Mr. White observed that there was "[n]o physical evidence of loading of the safety belt restraint system" and from his physical evaluation of the system found:

> The safety belt latch plate and buckle functioned in a normal manner when the latch plate was inserted and released from the buckle.
>
> * * *
>
> Operation of the safety belt retractor vehicle sensor locking mechanism and the web sensing mechanism was verified by manipulation of the webbing and seat back.

(White Report, [*20] at p. 3, Exhibit G to GM's Brief in Support of Summary Judgment, Docket No. 102). In Mr. White's opinion, "[t]he left front safety belt retractor was functioning as engineered a the time of this crash." Id. at 4. Thus, Mr. White concluded that "it is my opinion within a reasonable degree of engineering certainty that the subject 2001 Chevrolet Suburban left front safety belt restraint system was properly designed, tested and manufactured." Id.

On this record, the Court must determine whether Plaintiff has come forward with sufficient evidence to permit a jury finding that the seat belt system's failure was the result of a defect which existed at the time the vehicle left GM's control. The present dispute calls into question burden of proof issues in product liability cases, and the circumstances in which a Plaintiff may be relieved of his customary burden to present direct proof of a specific defect.

**Applicable Law**

The Court must apply the law of the forum state in exercising its diversity jurisdiction. *Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 61 S. Ct. 1020, 85 L. Ed. 1477 (1941).* Both parties appear to agree that under Arkansas' conflict laws, Arkansas substantive [*21] law controls here. Therefore, this court must attempt to predict how the Arkansas Supreme Court would resolve this issue. *United Fire & Cas. Ins. Co. v. Garvey, 328 F.3d 411, 413 (8th Cir. 2003).*

**History of strict liability law and requirement of a defect**

Strict liability laws were developed to create a more liberal theory for plaintiffs in product liability cases. In 1965, the American Law Institute created a new theory which permitted recover) absent proof of negligence and regardless of fault by enacting the *Restatement (Second) of Torts § 402A. Section 402A* established strict liability for one who sells "any product in a defective condition unreasonably dangerous to the user or consumer or to his property." With the approval of *402A*, strict liability "swept the country," (Prosser, "The Law of Torts", § 98 at p. 567-8 (4th Edition 1971)). By 1978, approximately 45 states, including Arkansas, had adopted the concept. *Berman v. Watergate West, Inc., 391 A.2d 1351, 1356 (D.C. 1978).*

Strict liability arrived in Arkansas in 1973, with the enaction of Act 111 in 1973, now *Ark. Code Ann. § 4-86-102* [*22] (Repl.2001). Based on the Restatement, but broader in certain respects, n5 Arkansas law requires proof of the following before permitting recovery under a theory of strict liability: (1) that the plaintiff has sustained damages; (2) the defendant was engaged in the business of manufacturing, assembling, selling, leasing, or distributing the product; (3) the product was supplied by the defendant in a defective condition which rendered it unreasonably dangerous; (4) the defective condition was a proximate cause of plaintiff's damages. *Ark. Code Ann. § 4-86-102(a)* (Repl.2001); *Farm Bureau Ins. Co. v. Case Corp., 317 Ark. 467, 878 S.W.2d 741 (1994).*

n5 *See Berkeley Pump Co. v. Reed-Joseph Land Co., 279 Ark. 384, 390, 653 S.W.2d 128*

Case 1:05-cv-00645-MSK-BNB   Document 60-1   Filed 07/21/06   USDC Colorado   Page 8 of
05-44481-rdd   Doc 20004-3   Filed 05/10/10   Entered 05/10/10 20:01:32   Exhibit C
Pg 26 of 39

Page 8

2006 U.S. Dist. LEXIS 37861, *

*(Ark. 1983)*, describing the two respects in which Arkansas law is broader than the Restatement version of strict liability.

While strict liability was intended to relax the plaintiff's burden, the doctrine was never intended to create liability for a manufacturer [*23] anytime a user of its product suffers an injury. "As is true in negligence cases with respect to the mere fact of an accident, the mere fact of injury during use of the product usually is insufficient proof to show existence of a defect at the time defendant relinquished control." *Lee v. Crookston Coca-Cola Bottling Co., 290 Minn. 321, 188 N.W.2d 426, 432 (1971)*(cited by *Fireman's Fund Ins. Co. v. Canon U.S.A., Inc., 394 F.3d 1054, 1061 (8th Cir. 2005)*(applying Minnesota law). Accordingly, proof of a defect is an essential element of a cause of action based on product liability. *Lakeview Country Club, Inc. v. Superior Products, 325 Ark. 218, 223, 926 S.W.2d 428 (1996)*. Thus, while a plaintiff is relieved in a strict liability case of the necessity of proving fault or negligence, that plaintiff must still demonstrate that a defect existed and that it was present when the product left the hands of the manufacturer.

Ordinarily, then, a plaintiff must identify and prove a specific defect in order to prevail. In limited instances, however, a plaintiff may be relieved of the burden of proving a specific defect, but only where "common experience teaches [*24] the accident would not have occurred in the absence of a defect." *Higgins v. General Motors Corp., 287 Ark. 390, 392, 699 S.W.2d 741 (1985)*. As stated by the Arkansas Supreme Court:

> A plaintiff is no longer required to prove negligence in a strict liability claim but still must prove the product was defective so as to render it unreasonably dangerous, and that the defect was the cause of the injury. The mere possibility this has occurred is not enough, there must be evidence from which the jury can conclude that it is more probable than not.
>
> The difficult problems are those of proof by circumstantial evidence. Strictly speaking, since proof of negligence is not an issue, res ipsa loquitur has no application to strict liability, but the inferences which are the core of the doctrine remain, and are no less applicable. The plaintiff is not required to eliminate all other possibilities, and need not prove his case beyond a reasonable doubt. It is enough that he es-

tablishes a preponderance of probability. In the absence of direct proof of a specific defect, it is sufficient if a plaintiff negates other possible causes of failure of the product, not attributable to the defendant, [*25] and thus creates a reasonable inference that the defendant is responsible for the defect.

*Id., at 391-92* (emphasis added).

**Application of the law to Plaintiff's theory of liability**

In this case, Plaintiff has produced evidence from which a jury could find that he sustained enhanced injuries based on the seatbelt's failure to properly restrain him in an automobile accident Plaintiff thus contends that he may prevail on this theory that the seat belt must have had some manufacturing or design defect by having his expert discuss possible causes for the seat belt's failure, without the necessity of identifying or proving any specific defect.

Before a plaintiff may be relieved of his burden to prove a specific defect, Arkansas law requires that he "must negate the other possible causes of failure of the product for which the defendant would not be responsible in order to raise a reasonable inference that the dangerous condition existed while the product was still in the control of the defendant." *Campbell Soup Co. v. Gates, 319 Ark. 54, 59, 889 S.W.2d 750, 753 (1994)*; *Higgins, supra.* "The mere possibility" that a [*26] defect caused the injury is not enough, the evidence must be sufficient to permit the jury to conclude that it is more probable than not that a defect caused the injury. *Higgins, 287 Ark. at 392*

Plaintiff here failed to produce evidence that the alleged product failure could not have been caused by something that occurred after the product left GM. Indeed, Plaintiff, through Dr. Bidez, has forcefully brought to the Court's attention several possible post-delivery causes for the alleged retractor failure. *See* discussion, *supra.* Plaintiff has done nothing to offset the FMEA evidence specifically identifying post-manufacturing causes for retractor failure. The Court recognizes that Plaintiff is not obligated to eliminate all other possibilities, and need not prove his case beyond a reasonable doubt. See *Higgins v. General Motors Corp., 287 Ark. 390, 392, 699 S.W.2d 741, 743 (1985)*. Still, he must demonstrate that it is more likely true than not that the seatbelt's failure was due to a manufacturing or design defect and not the result of some post-manufacturing, post-delivery problem. Plaintiff has clearly failed to carry this burden. See *Mixon v. Chrysler, 281 Ark. 202,*

*663 S.W.2d 713, 714-15 (Ark. 1984)* [*27] (rejecting plaintiff's circumstantial evidence that vehicle's sudden acceleration was caused by a defect, stating, "It is true that supporting affidavits against the motion for summary judgment stated none of the affiants, or others known to have had access to the vehicle, repaired, adjusted or otherwise tampered with the steering system. These affidavits do not negate slick roads, speed, driver control, normal wear and tear or other possible causes as the proximate cause of appellants' injuries.")

Other circumstances also weigh against permitting Plaintiff's case to go forward on the evidence tendered. First, the doctrine of permitting inference of a defect is intended for situations "when common experience tells us that the accident would not have occurred in the absence of a defect." *Harrell Motors, Inc. v. Flanery, 272 Ark. 105, 612 S.W.2d 727, 729 (Ark. 1981).* Common experience here would not permit a finding of a pre-delivery manufacturing or design defect because such matters are outside the realm of a juror's common experience.

It is significant that GM has presented evidence that the seat belt system appears to be intact and functioning. According to GM expert Mr. White, [*28] he examined the vehicle and found the retractor vehicle sensor locking mechanism and the web sensing mechanism and found the retractor to be functioning as engineered. Thus, this is not a case where the defendant acknowledges that the product failed to perform as intended or in which the circumstances of the accident alone demonstrate product failure. The question thus arises: could there be other problems or situations -- unrelated to a defect -- that could cause a seatbelt even if worn not to restrain its wearer. Could it be worn improperly? Would twisting alter its performance? This was a relatively low velocity collision (estimated at about 14 mph at impact). Could the circumstances of this particular accident, independently of a defect, have delayed the lock-up? These questions are not answered. Rather, Dr. Bidez assumes the retractor failed and, ergo, that the product was defective. And, she arrives at her conclusions without testing the retractor.

Significantly, Dr. Bidez had access to and could have tested, or had someone else test, the allegedly defective component of the seat belt restraint system The Court concludes that this circumstance must also be considered in deciding [*29] whether the plaintiff may on this record go to the jury on his circumstantial evidence theory. The history of the circumstantial proof doctrine suggests that it was created, at least in part, to provide a plaintiff with a fair opportunity to prove his case when the product or product component in question had been lost or destroyed. *See, e.g. Mixon v. Chrysler, 281 Ark. 202, 663 S.W.2d 713, 714-15 (Ark. 1984)*(steering

mechanism at issue had been destroyed by the time plaintiff sought to inspect it). This is not to say that a plaintiff's affirmative decision not to test an allegedly defective product will always be dispositive of the circumstantial proof issue. But, here, where the Plaintiff has possession of the device, where Plaintiff's expert opines that disassembly and inspection would reveal whether a manufacturing defect existed, and where neither excessive cost nor any other practical consideration has been cited or argued as a justification for the failure to scientifically examine the device, the Court concludes that Plaintiff's failure to disassemble and inspect bars Plaintiff from submitting his case to the jury on a res ipsa loquitur type theory.

If the Court were to [*30] permit Plaintiff to submit his case to the jury on this record, it would come dangerously close to permitting a finding of strict liability based solely on the fact of the injury (or enhanced injury) itself. The Court is comfortable in predicting that the Arkansas Supreme Court would not, on this summary judgment record, permit Plaintiff's case to go to the jury.

**(2) Dr. Bidez's Expert Testimony Regarding "Some" Unknown Defect is Either Not Helpful or Not Reliable and Must be Excluded**

GM additionally brings a *Daubert* challenge to the proposed testimony of Dr. Bidez. *Daubert v. Merrell Dow Pharms., 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993); Fed. R. Evid. 702.* As an alternative to its liability holding, the Court also concludes that Dr. Bidez's proposed testimony that there was "some" unidentified defect in the retractor is not based upon her scientific knowledge or expertise and would not be helpful to the jury. Nor is such testimony sufficiently reliable to be admissible. Accordingly, such testimony, as tendered, should be excluded.

**Nature of the Dispute Regarding Dr. Bidez' testimony**

Initially, it should be noted that this opinion [*31] deals with only that portion of Dr. Bidez's proposed expert testimony regarding the existence of an alleged defect in the seat belt restraint system. Dr. Bidez has other opinions based upon her expertise in occupant kinematics which are not being challenged. n6 For example, she opines that the nature of Mr. Ruminer's injuries are consistent with his seat belt use. Nor is it necessary to resolve GM's *Daubert* challenge that Dr. Bidez is not qualified to render an expert opinion regarding manufacturing or design defects in the seat belt system at issue here. Rather, the issue is limited to the nature of her proposed testimony, its helpfulness to the jury, and its reliability.

Case 1:05-cv-00645-MSK-BNB   Document 60-1   Filed 07/21/06   USDC Colorado   Page 10 of
05-44481-rdd   Doc 20004-3   Filed 05/10/10   Entered 05/10/10 20:01:32   Exhibit C
Pg 28 of 39

Page 10

2006 U.S. Dist. LEXIS 37861, *

n6'Dr. Bidez's qualifications and experience are impressive.

### Dr. Bidez's "Opinion" Regarding Defect

The Court expressed skepticism about the admissibility of Dr. Bidez's expert testimony in its January 17th letter, stating:

> With respect to the claims of the Plaintiff based upon his allegations that the seat belt restraint [*32] system had defects in design or manufacture, the situation is not completely clear. The Court is tentatively of the view that Dr. Martha Bidez will not be permitted to express her opinion that there was a defect in the design and/or manufacture of the seat belt restraint system at the time it left the manufacturer, because that opinion is not based upon her expertise, but rather, is based upon the common sense conclusion that Mr. Ruminer would not have been injured as severely as he was if there had not been "some such defect." In this connection Dr. Bidez is convinced that Mr. Ruminer was wearing his seat belt at the time of the accident and that the belt should have locked but did not. In support of her view she cites the Defendant's experts who in this case have taken the position that if Mr. Ruminer had been wearing the seat belt at the time of the accident he would not have sustained the severe head injuries he in fact sustained. She therefore draws the common sense conclusion that Mr. Ruminer was in fact wearing the seat belt and yet was severely injured, then there must have been some defect in the manufacture or design of the seat belt system. I will discuss the validity of [*33] this reasoning later on. But, for now I simply note that Dr. Bidez's opinion is not based upon her scientific training and expertise, any disassembly or examination of the seat belt system, or any testing thereof. Rather, she draws her conclusions in the same manner as lay persons, i.e., by exercising simple logic.

(Court's January 17, 2006 letter, Docket No. 141).

Dr. Bidez offers no opinion based upon her scientific expertise regarding a specific manufacturing or design defect. She testified that "there may or may not be a manufacturing defect" and admitted: "I have not attempted to nail down what specifically caused the defective performance." (Bidez depo. at pp. 16 & 23). Since Dr. Bidez has no opinion concerning any specific defect -- either manufacturing or design -- for what purpose if any, is her testimony that there were potentially twelve (12) causes for the purported retractor failure being offered?

*Federal Rule of Evidence 702* governs the admission of expert testimony. The rule provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine [*34] a fact in issue, a witness qualified as an expert by knowledge, skill, or experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

A district court has great latitude in determining whether expert testimony meets the reliability requisites of *Rule 702*. In making that determination, the district court is free to evaluate one or all of the following factors: (1) whether the theory or technique can be or has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) whether the theory or technique has a known or potential error rate and standards controlling the technique's operation; and (4) whether the theory or technique is generally accepted in the scientific community. *Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 592-95, 113 S.Ct. 2786 125 L.Ed.2d 469 (1993)* (stating that "many factors will bear on the inquiry" and that the above-listed factors [*35] do not constitute "a definitive checklist or test").

Dr. Bidez cannot offer testimony about what, in particular, was wrong with the retractor. Instead, she proposes to take the stand and to speculate on possible causes for alleged retractor failure. In support, she relies upon FMEA documents generated by GM engineers and used before-the-fact to predict possible failure modes, their potential for occurring, and the risk priority for such failures.

It therefore does not appear that Dr. Bidez used any of her expert knowledge or training to determine the existence of or the nature of any alleged defect. She assumes retractor failure as the cause for the alleged seat-

Case 1:05-cv-00645-MSK-BNB   Document 60-1   Filed 07/21/06   USDC Colorado   Page 11 of
05-44481-rdd   Doc 20004-3   Filed 05/10/10   Entered 05/10/10 20:01:32   Exhibit C
Pg 29 of 39

Page 11

2006 U.S. Dist. LEXIS 37861, *

belt failure, without adequately demonstrating why. She concludes that "if Joel Ruminer's restraint system had properly coupled his body to the vehicle seat and/or provided air bag cushioning to attenuate impact energy, he would have sustained no serious permanent injury in this crash." (Bidez Report, Exhibit J to Plaintiff's response). In other words, the nature of Plaintiff's injuries demonstrate that the product did not perform as it should have. An evidentiary gap still remains. Assuming Plaintiff was wearing his seat [*36] belt, was the seat belt's failure the result of a defect dating back to the vehicle's manufacture or was the failure caused by some post-manufacturing defect or some other non-defect cause.

"[A]n expert's opinion is not to be accepted merely because it is articulated, but must instead have a sufficient factual basis." *Anderson v. National R.R. Passenger Corp., 866 F.Supp. 937, 945 (E.D. Va. 1994),* aff'd, *74 F.3d 1230 (4th Cir. 1996).* The Plaintiff claims on one hand that he has offered proof of a specific defect and on the other that no such proof is required because his case may be proven by circumstantial evidence.

First, assuming this case was in fact suitable for proof by circumstantial evidence, then the jurors could apply their common sense to reach the logical conclusion that the product was defective at the time it left GM's control. (*See* Court's letter of January 17, 2006, quoted *supra* at p 17). In such circumstance Dr. Bidez's testimony, as tendered, would not be helpful because it would not tell the jury anything that lay persons could not logically deduce on their own; she would be drawing her conclusion in the same manner as lay [*37] persons, *i.e.,* by exercising simple logic. Accordingly, her testimony regarding possible causes for the product failure, by relying on the testimony of GM's experts and by resorting to a recitation of possible causes by utilizing FMEA reports, would be unnecessary in a circumstantial evidence case. n7

n7 This is not to say that GM might not open the door to such testimony depending on how it chose to defend such a case.

In a direct evidence case, Dr. Bidez's testimony regarding possible causes is not sufficiently reliable to be admissible. She admitted that the never attempted "to nail down what specifically caused the defective performance." (Bidez Depo. at p. 23, ln 8-19). She elected not to test the seat belt system and she also never asked anyone else to disassemble the retractor. GM has indicated that if the retractor were disassembled then it could be determined whether any of the twelve identified "possible causes" for the retractor failure in fact existed. Plaintiff admits that testing, at a minimum, [*38] would

rule out manufacturing failures. Certainly, it us not enough to put an expert on the stand and to have her speculate regarding possible causes. There must be an evidentiary foundation for the expert's opinion. That foundation is missing here.

In its present form, Dr. Bidez's proposed testimony is not sufficiently reliable to be admissible.

**(3) Plaintiff has failed to come forward with sufficient evidence to support an award of punitive damages.**

Although this issue appears academic in the light its prior rulings, the Court will nevertheless take up and deal with Plaintiff's claim of punitive damages. As the Court indicated in Opinion # 1, Plaintiff has the burden to come forward with admissible evidence to support its claim for punitive damages. To support such an award, Plaintiff has now attached records of eleven "similar" incidents and two crash test reports. Prior to the admission into evidence of other accidents involving alleged seat belt failures, Plaintiff must make a showing that such prior accidents are "sufficiently similar in time, place or circumstances to be probative." *First Security Bank v. Union Pacific RR Co., 152 F.3d 877, 879 (8th Cir. 1998)* [*39] (citations omitted); *See also Oates v. St. Louis Southwestern RR Co., 266 Ark. 527, 587 S.W.2d 10, 11 (Ark. 1979)*("before other accidents may be offered to show a dangerous or defective condition, and thereby notice to the defendant, it must first be shown there is a substantial similarity of conditions in the proof as to make it reasonable or probably that the same causes or conditions produced the same or similar results").

Plaintiff makes no effort to demonstrate or explain how these complaints and test reports are substantially similar to the facts and circumstances of any alleged product defect in this case. Some are clearly not relevant. For example, one of the allegedly similar accidents involves a complaint concerning a customer who blacked out following a seizure and hit a tree. The customer complains that his air bag did not deploy, but doesn't remember if he was wearing his seatbelt. (See Exhibit 4 to Docket No. 146). In another complaint involving a 7 car pile-up, the complainant's primary complaint is the failure of the airbag to deploy, but he also complains that the passenger side seat belt bracket came loose. (See Exhibit 5 to Docket No. 146).

The Court recognizes [*40] that Plaintiff's task in this regard is complicated by the fact that Plaintiff does not know what, if anything, was specifically wrong with the seat belt retractor. This highlights another practical problem with proceeding on the theory than some unidentified defect caused a product failure. In any event, Plaintiff has clearly failed to carry his burden to produce admissible evidence from which a jury could find, as

Case 1:05-cv-00645-MSK-BNB   Document 60-1   Filed 07/21/06   USDC Colorado   Page 12 of
05-44481-rdd   Doc 20004-3   Filed 05/10/10   Entered 05/10/10 20:01:32   Exhibit C
Pg 30 of 39

Page 12

2006 U.S. Dist. LEXIS 37861, *

required by Arkansas law, that GM acted with malice or with reckless disregard of the consequences from which malice may be inferred. *See* Arkansas Model Jury Instruction 2218; *In re Aircraft Accident at Little Rock, Arkansas, 231 F.Supp.2d 852 (E.D. Ark. 2002)*(discussing Arkansas punitive damages law).

**CONCLUSION**

For the reasons herein stated,

IT IS HEREBY ORDERED THAT Plaintiff Joel Ruminer's Request to Supplement the Record (Docket No. 146) be, and it is hereby, GRANTED.

IT IS FURTHER ORDERED THAT Defendant GM's Motion for Summary Judgment (Docket No. 100) be, and it is hereby, GRANTED with respect to Plaintiff's remaining claims, all of which are dependent on the theory that the seat belt system's failure to lock was due to some unspecified [*41] manufacturing or design defect. The Court previously granted summary judgment on Plaintiff's claims based on a defective air bag. Accordingly, no other claims remain and Defendants are entitled to judgment as a matter of law. Judgment will be entered separately.

IT IS FURTHER ORDERED THAT Defendant GM's Motion to Disqualify Dr. Bidez (Docket No. 117) be, and it is hereby, GRANTED solely to the limited extent stated herein.

IT IS SO ORDERED this 6th day of February, 2006.

/s/ Garnett Thomas Eisele

UNITED STATES DISTRICT JUDGE

**JUDGMENT**

Pursuant to the Supplemental Memorandum Opinion and Order filed in this matter on this date and the Memorandum Opinion and Order entered on January 17, 2006, it is hereby Considered, Ordered, and Adjudged that the Defendants are entitled to judgment as a matter of law as to the claims raised by Plaintiff. It is further Considered, Ordered, and Adjudged that the Complaint in this matter be, and it is hereby, dismissed in its entirety.

IT IS SO ORDERED this 6th day of February, 2006.

/s/ Garnett Thomas Eisele

UNITED STATES DISTRICT JUDGE

1 of 13 DOCUMENTS

**LORRAINE KLOOTWYK, individually and as Administrator of the Estate of HAROLD KLOOTWYK, Deceased, Plaintiff, v. DAIMLER CHRYSLER CORPORATION, et al., Defendants.**

No. 01 C 6127

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

*2003 U.S. Dist. LEXIS 7768; CCH Prod. Liab. Rep. P16,611*

May 2, 2003, Decided
May 7, 2003, Docketed

**DISPOSITION:** [*1] Defendants' motion for summary judgment granted.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff sued defendant car manufacturer under the Illinois Wrongful Death Act, 740 Ill. Comp. Stat. 180/1, alleging claims for negligence and strict products liability. Plaintiff alleged that the manufacturer defectively designed the driver-side air bag system in one of its van, which caused plaintiff's husband to suffer fatal injuries upon collision. The manufacturer moved for summary judgment.

**OVERVIEW:** The decedent had a history of severe arteriosclerotic cardiovascular disease. While driving the van, he came to a complete stop at a stop sign. At or near the stop sign, he suffered a sudden cardiac arrest. Moments later, the van slowly proceeded forward coming to a rest when it collided with a house. The driver-side air bag did not deploy in the collision as the speed and impact of the accident were below the deployment threshold. The manufacturer proffered expert testimony that decedent suffered a sudden cardiac arrest and the injuries he sustained due to the accident were not, in all medical probability, fatal injuries. Plaintiff failed to present any expert testimony. The court held that, because plaintiff presented no evidence on the causation element, she did not state a prima facie case of strict products liability. Plaintiff's failure to provide proof of causation was fatal to her claim. Also, she offered no proof that the condition of the driver-side airbag was unreasonably dangerous. Plaintiff needed to offer expert testimony to attest to the fact that the driver-side air bag was unreasonably dangerous. The negligence claim failed for the same reason.

**OUTCOME:** The court granted defendants' motion for summary judgment in its entirety.

**LexisNexis(R) Headnotes**

*Civil Procedure > Summary Judgment > Summary Judgment Standard*
[HN1] Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A genuine issue of material fact exists for trial when, in viewing the record and all reasonable inferences drawn from it in a light most favorable to the non-movant, a reasonable jury could return a verdict for the non-movant.

*Civil Procedure > Summary Judgment > Burdens of Production & Proof*
[HN2] The movant bears the initial burden of establishing that no genuine issue of material facts exists for trial. If the movant meets this burden, the non-movant must set forth specific facts that demonstrate the existence of a genuine issue for trial. Fed. R. Civ. P. 56(e). The non-movant may not rest upon the mere allegations or denials of the adverse party's pleading, but instead, must produce proper documentary evidence to support his contentions. Summary judgment should be granted if the non-movant has failed to produce sufficient evidence to establish the existence of an essential element of its case on which it bears the burden of proof" at trial.

**EXHIBIT**

A-9

tables'

Case 1:05-cv-00645-MSK-BNB   Document 60-2   Filed 07/21/06   USDC Colorado   Page 2 of 5
05-44481-rdd   Doc 20004-3   Filed 05/10/10   Entered 05/10/10 20:01:32   Exhibit C
Pg 32 of 39

Page 2

2003 U.S. Dist. LEXIS 7768, *; CCH Prod. Liab. Rep. P16,611

*Civil Procedure > State & Federal Interrelationships > Application of State Law*
[HN3] A ruling on a motion for summary judgment necessarily implicates the substantive law that would govern the case at the trial on the merits. As a federal court sitting in diversity jurisdiction, the court applies the substantive law of the state in which it sits.

*Torts > Products Liability > Strict Liability*
[HN4] The doctrine of strict products liability as set forth in the Restatement (Second) of Torts § 402A (1965) has been adopted in Illinois. Therefore, under Illinois law, a claim for strict products liability requires proof that: 1) the injury or damages resulted from a condition of the product manufactured by the defendant; 2) the condition was an unreasonably dangerous one; and 3) the condition existed at the time the product left the manufacturer's control. Restatement (Second) of Torts § 402(A). Generally, plaintiffs favor strict products liability because it does not require proof of fault. However, while a plaintiff need not prove the manufacturer's fault in order to prevail on this theory, strict products liability is not absolute liability. All three elements of a strict products liability claim can be established by either direct or circumstantial evidence. When circumstantial evidence is used, it should, at a minimum, include either proof that tends to exclude other extrinsic causes or an expert opinion that the product contained an unreasonably dangerous defect at the time it left the manufacturer's control.

*Torts > Products Liability > Strict Liability*
[HN5] Under Illinois law, proximate cause for strict products liability can only be established when there is a reasonable certainty that the defendant's acts caused the injury. Reasonable certainty that the defendant's conduct caused the injury in question may be established by an inference of probability, not mere possibility.

*Civil Procedure > Summary Judgment > Summary Judgment Standard*
[HN6] Summary judgment is proper when complete failure of proof concerning an essential element of the non-movant's case necessarily renders all other facts immaterial.

*Torts > Products Liability > Strict Liability*
[HN7] In a cause of action on the theory of strict products liability, a legal inference of defectiveness may not be drawn merely from evidence that an injury occurred.

*Torts > Products Liability > Negligence*
[HN8] Illinois imposes a duty on manufacturers to make a product that is reasonably safe.

*Torts > Products Liability > Negligence*
[HN9] In order for a defendant to be liable for negligence, a plaintiff must establish that the defendant had a duty towards the plaintiff, defendant breached that duty, and the breach was a proximate cause of plaintiff's injury.

*Torts > Products Liability > Strict Liability*
*Torts > Products Liability > Negligence*
[HN10] The distinction between a strict products liability claim and a negligence claim lies in the fault concept. In strict products liability, the focus centers on the defective condition of the product, irrespective of the manufacturer's fault. On the other hand, in negligence liability, proof of the defendant's fault is required by a showing that the defendant breached a specific duty toward the plaintiff. Nonetheless, under both theories, "the threshold question" is whether the product was of unreasonably dangerous design, specifically, whether the product is dangerous because it fails to perform in the manner reasonably to be expected in light of its nature and intended function.

*Torts > Products Liability > Negligence*
[HN11] In products liability actions, a manufacturer has a nondelegable duty to produce a product that is reasonably safe.

**COUNSEL:** LORRAINE KLOOTWYK, plaintiff, Pro se, Chicago, IL.

For   DAIMLERCHRYSLER   CORPORATION, DAIMLERCHRYSLER MOTORS CORPORATION, defendants: Brian William Bell, Angela Rose Karras, Swanson, Martin & Bell, Chicago, IL.

For   DAIMLERCHRYSLER   CORPORATION, DAIMLERCHRYSLER MOTORS CORPORATION, defendants: Peter M. Kellett, Kathleen M Horchler, Feeney, Kellett, Wienner & Bush, Bloomfield Hills, MI.

**JUDGES:** David H. Coar, United States District Judge.

**OPINIONBY:** David H. Coar

**OPINION:**

**MEMORANDUM OPINION AND ORDER**

2003 U.S. Dist. LEXIS 7768, *; CCH Prod. Liab. Rep. P16,611

Plaintiff, Lorraine Klootwyk ("Plaintiff" or "Klootwyk"), filed a two-count diversity action under the *Illinois Wrongful Death Act, 740 ILCS 180/1*, against DaimlerChrysler Corporation and DaimlerChrysler Motors Corporation (collectively "DaimlerChrysler" or "Defendants"). Count I is a strict products liability claim and Count II is a negligence claim. In both counts, Plaintiff alleges that Defendants defectively designed the driver-side air bag system in its 1998 Dodge Ram 2500 van, which caused Plaintiff's husband to suffer fatal injuries upon collision. Before this Court is Defendants' motion for summary judgment. For [*2] the following reasons, this Court GRANTS defendants' motion for summary judgment.

### I. Summary Judgment Standard

[HN1] Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Fed.R.Civ.P. 56(c)*; *Peerman v. Georgia-Pacific Corp., 35 F.3d 284, 286 (7th Cir. 1994)* (quoting *Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986))*. A genuine issue of material fact exists for trial when, in viewing the record and all reasonable inferences drawn from it in a light most favorable to the non-movant, a reasonable jury could return a verdict for the non-movant. *Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986)*; *Whetstine v. Gates Rubber Co., 895 F.2d 388, 392 (7th Cir. 1990)*.

[HN2] The movant bears the initial burden of establishing that no genuine issue of material facts exists for trial. *Celotex, 477 U.S. at 323*. If the [*3] movant meets this burden, the non-movant must set forth specific facts that demonstrate the existence of a genuine issue for trial. *Rule 56(e)*; *Whetstine, 895 F.2d at 392* (citing *Celotex, 477 U.S. at 324*). The non-movant "may not rest upon the mere allegations or denials of the adverse party's pleading," but instead, must produce "proper documentary evidence to support his contentions." *Whetstine, 895 F.2d at 392* (citing *Howland v. Kilquist, 833 F.2d 639, 642 (7th Cir. 1987))*. Summary judgment should be granted if the non-movant has "failed to produce sufficient evidence to establish the existence of an essential element of its case on which it bears the burden of proof" at trial. *Peerman, 35 F.3d at 287* (citing *Celotex, 477 U.S. at 322)*.

### II. Background

The following facts are taken from Defendants' Statement of Uncontested Material Facts. n1 At all relevant times, Klootwyk has been a resident of Illinois. Defendants are Delaware corporations with their principal places of business in Michigan.

n1 Despite numerous extensions of time and this Court's *Rule 56* cautionary instructions, Plaintiff did not respond to Defendants' Motion for Summary Judgment. Therefore, Defendants' material facts that are supported by the record are deemed admitted. LR 56.1(b)(3)(B).

[*4]

Mr. Klootwyk, the decedent, had a history of severe arteriosclerotic cardiovascular disease. On June 1, 1998, Mr. Klootwyk was driving his 1998 Dodge Ram 2500 van westbound on Wellington Street in Chicago, Illinois. The Dodge Ram van was equipped with a driver restraint system which included a driver-side air bag system. The driver-side air bag is designed to deploy in moderate to severe frontal collisions. At the intersection of Wellington and Lakewood, Mr. Klootwyk came to a complete stop at a stop sign. At or near the stop sign, Mr. Klootwyk suffered a sudden cardiac arrest. Moments later, the van slowly proceeded through the intersection and veered off to the right, traveling off of the street and over the curb across three properties. The van finally came to a rest when it collided with a house at 1310 Wellington Street. The driver-side air bag in the vehicle did not deploy in the collision as the speed and impact of the accident was below the deployment threshold. Witnesses at the scene, who observed the van during the accident and later approached it, noted that Mr. Klootwyk was blue in color, immobile, and unresponsive. The injuries that Mr. Klootwyk reportedly sustained from [*5] the accident (injuries to his neck), were not, in all medical probability, fatal injuries.

On May 1, 2001, Plaintiff, individually and as Administrator of the Estate of Harold Klootwyk, deceased, filed her products liability complaint against Defendants in the Circuit Court of Cook County. The Complaint consists of two counts, both of which allege that the driver-side air bag system was defective in that it failed to deploy during the collision, causing her husband fatal injuries. On August 8, 2001, the case was removed to this Court pursuant to *28 U.S.C. § § 1332 and 1441* as complete diversity of citizenship between the parties exists and the amount in controversy exceeds $ 75,000.

In accordance with this Court's Scheduling Order, the parties were instructed to disclose expert testimony, pursuant to *Rule 26(a)(2)*, on or before September 12, 2002. Defendants complied with the order, disclosing written reports of several expert witnesses who opined that the driver-side air bag properly did not deploy in the crash and that it was of a reasonable, safe and effective

Case 1:05-cv-00645-MSK-BNB   Document 60-2   Filed 07/21/06   USDC Colorado   Page 4 of 5
05-44481-rdd   Doc 20004-3   Filed 05/10/10   Entered 05/10/10 20:01:32   Exhibit C
Pg 34 of 39

Page 4

2003 U.S. Dist. LEXIS 7768, *; CCH Prod. Liab. Rep. P16,611

design. They also proffered expert testimony that Mr. Klootwyk suffered a sudden cardiac arrest [*6] at or near the stop sign at the intersection of Wellington and Lakewood and that the injuries that Mr. Klootwyk sustained due to the accident were not, in all medical probability, fatal injuries. Plaintiff failed to present any expert testimony.

### III. Discussion

[HN3] A ruling on a motion for summary judgment necessarily implicates the substantive law that would govern the case at the trial on the merits. *Anderson, 477 U.S. at 252.* As a federal court sitting in diversity jurisdiction, this Court applies the substantive law of the state in which it sits, which is Illinois. *Land v. Yamaha Motor Corp., 272 F.3d 514, 516 (7th Cir. 2001).* Therefore, Illinois negligence and strict products liability law applies to this case. This Court addresses each Count of the Complaint in turn.

### A. Count I - Strict Liability

[HN4] The doctrine of strict products liability as set forth in the Restatement (Second) of Torts *section 402A* (1965) has been adopted in Illinois. *Coney v. J.L.G. Industries, Inc., 97 Ill.2d 104, 110, 454 N.E.2d 197, 200, 73 Ill. Dec. 337 (1983)* (citing *Suvada v. White Motor Co., 32 Ill.2d 612, 210 N.E.2d 182 (1965)).* [*7] Therefore, under Illinois law, a claim for strict products liability requires proof that: 1) the injury or damages resulted from a condition of the product manufactured by the defendant; 2) the condition was an unreasonably dangerous one; and 3) the condition existed at the time the product left the manufacturer's control. Restatement (Second) of Torts § 402A. Generally, plaintiffs favor strict products liability because it does not require proof of fault. *Todd v. Societe Bic S.A., 21 F.3d 1402, 1405 (7th Cir. 1993).* However, while a plaintiff need not prove the manufacturer's fault in order to prevail on this theory, "strict products liability is not absolute liability." *Korando v. Uniroyal Goodrich Tire Co., 159 Ill.2d 335, 343, 637 N.E.2d 1020, 1024, 202 Ill. Dec. 284 (1994).* All three elements of a strict products liability claim can be established by either direct or circumstantial evidence. *Sorce v. Naperville Jeep Eagle Inc., 309 Ill.App.3d 313, 327, 722 N.E.2d 227, 237, 242 Ill. Dec. 738 (1999).* When circumstantial evidence is used, "it should, at a minimum, include either proof that tends to exclude other extrinsic causes [*8] or an expert opinion that the product contained an unreasonably dangerous defect at the time it left the manufacturer's control." *Sorce, 309 Ill.App.3d at 327, 722 N.E.2d at 237* (citing *Sanchez v. Firestone Tire & Rubber Co., 237 Ill.App.3d 872, 874, 604 N.E.2d 948, 950, 178 Ill. Dec. 425 (1992)).*

Plaintiff's strict liability count fails on each element. As to the first element, [HN5] under Illinois law, proximate cause can only be established when there is a reasonable certainty that the defendant's acts caused the injury. *Wintz v. Northrop Corp., 110 F.3d 508, 515 (7th Cir. 1997)* (citing *Schultz v. Hennessy Industries, 222 Ill.App.3d 532, 540, 584 N.E.2d 235, 241, 165 Ill. Dec. 56 (1991)).* Reasonable certainty that the defendant's conduct caused the injury in question may be established by an "inference of probability, not mere possibility." *Wojtowicz v. Cervantes, 284 Ill.App.3d 524, 532, 672 N.E.2d 357, 362, 219 Ill. Dec. 849 (1996)* (citing *McCullough v. Gallaher & Speck, 254 Ill.App.3d 941, 949, 627 N.E.2d 202, 208, 194 Ill. Dec. 86 (1993)).*

As Plaintiff has presented no evidence [*9] on the causation element, she does not state a *prima facie* case of strict products liability. The only evidence in the record pertaining to the causation element is testimony offered by Defendants' experts who opined that the injuries Mr. Klootwyk sustained from the collision were not fatal and that his death was more probably related to the sudden cardiac arrest he experienced just moments before the collision.

Plaintiff's failure to provide proof of causation is fatal to her claim. See *Lewis v. Holsum of Ft. Wayne, Inc., 278 F.3d 706, 709 (7th Cir. 2002)* (stating that [HN6] summary judgment is proper when "complete failure of proof concerning an essential element of the [non-movant's] case necessarily renders all other facts immaterial") (citing *Celotex, 477 U.S. at 323).* Further, even if the Court were to overlook Plaintiff's failure to provide proof of causation, she still could not survive summary judgment because she also fails to satisfy the second and third elements of her strict products liability claim. Namely, she offers absolutely no proof that the condition of the driver-side airbag was unreasonably dangerous or that the such condition [*10] existed at the time the Dodge Ram van left the Defendants' control. Rather, Plaintiff merely asserts that her husband would not have sustained fatal injuries without a defect in design or manufacture being present. This mere speculation, however, is insufficient to defeat a motion for summary judgment. *Norman v. Ford Motor Co., 160 Ill.App.3d 1037, 1040, 513 N.E.2d 1053, 1055, 112 Ill. Dec. 444 (1987).* "[HN7] In a cause of action on the theory of strict products liability, 'a legal inference of defectiveness may not be drawn merely from evidence that an injury occurred'" *Id.* (quoting *Artis v. Fibre Metal Products, 115 Ill.App.3d 228, 232, 450 N.E.2d 756, 759, 71 Ill. Dec. 68 (1983)).* In a case such as this one, Plaintiff needed to offer expert testimony to attest to the fact that the driver-side air bag was unreasonably dangerous, as this claim involves technical matters beyond the common knowledge and experience of jurors. See *Baltus v.*

2003 U.S. Dist. LEXIS 7768, *; CCH Prod. Liab. Rep. P16,611

*Weaver Division of Kiddie & Co. Inc., 199 Ill.App.3d 821, 834, 836-38, 557 N.E.2d 580, 589-91, 145 Ill. Dec. 810 (1990)* (collecting cases explaining when and why presentation of expert testimony is necessary [*11] in strict products liability cases). Thus, as Plaintiff fails to offer any proof supporting her strict products liability claim, summary judgment is granted in favor of Defendants.

B. Count II - Negligence

Like Plaintiff's strict liability claim, her negligence claim fails because Plaintiff fails to offer evidence essential for her claim. As discussed above, Plaintiff has set forth no evidence that the driver-side air bag was defective, or "unreasonably dangerous," and that this defect proximately caused the decedent's injuries. [HN8] Illinois imposes a duty on manufacturers to make a product that is reasonably safe. *Masters v. Hesston Corp., 291 F.3d 985, 990 (7th Cir. 2002)* (citing *Baltus v. Weaver Div. of Kiddie & Co., 199 Ill.App.3d 821, 557 N.E.2d 580, 585, 145 Ill. Dec. 810 (1990))*. Further, [HN9] in order for a defendant to be liable for negligence, a plaintiff must establish that the defendant had a duty towards the plaintiff, defendant breached that duty, and the breach was a proximate cause of plaintiff's injury. *Norman, 160 Ill.App.3d at 1040, 513 N.E.2d at 1054.*

[HN10] The distinction between a strict products liability claim and [*12] a negligence claim lies in the fault concept. In strict products liability, the focus centers on the defective condition of the product, irrespective of the manufacturer's fault. On the other hand, in negligence liability, proof of the defendant's fault is required by a showing that the defendant breached a specific duty toward the plaintiff. *Baltus, 199 Ill.App.3d. at 829, 557 N.E.2d at 585.* Nonetheless, under both theories, "the threshold question" is whether the product was "of unreasonably dangerous design," specifically, "whether the product is dangerous because it fails to perform in the manner reasonably to be expected in light of its nature and intended function." *Id.*

While it is clear that Defendants owed Plaintiff a duty, *Baltus, 199 Ill.App.3d. at 829, 557 N.E.2d at 585* ("[HN11] In products liability actions, a manufacturer has a nondelegable duty to produce a product that is reasonably safe."), Plaintiff cannot show that Defendants breached that duty nor that such alleged breach caused Mr. Klootwyk's injuries. Plaintiff failed to present any evidence, expert or otherwise, that supports her allegation that the driver-side air bag was [*13] defective. Thus, this Court holds that Defendants were not negligent in their duty to safely design and manufacture the air bag system in question, and it grants Defendants' motion for summary judgment as to Count II.

### IV. Conclusion

For the foregoing reasons, this Court GRANTS Defendants' motion for summary judgment in its entirety. This case is closed.

**Enter:**

**David H. Coar**

**United States District Judge**

**Dated: May 2, 2003**

**JUDGMENT IN A CIVIL CASE**

Decision by Court. This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

IT IS HEREBY ORDERED AND ADJUDGED that Defendant's Motion for Summary Judgment is granted in its entirely.

Summary Judgment is entered in favor of the defendants Daimler Chrysler Corporation and Daimler Chrysler Motors Corporation and against the plaintiff, Lorraine Klootwyk, individually and as Administrator of the Estate of Harold Klootwyk, Deceased. This action is closed.

Date: May 02 2003

16 of 100 DOCUMENTS

**DEBRA TURNER, Plaintiff, v. DAIMLERCHRYSLER CORPORATION, Defendant.**

**CIVIL ACTION NO. 99-0696-RV-L**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF ALABAMA, SOUTHERN DIVISION**

*2000 U.S. Dist. LEXIS 18244*

**October 31, 2000, Decided**
**October 31, 2000, Filed**

**DISPOSITION:** [*1] DaimlerChrysler's motion for summary judgment GRANTED. FINAL JUDGMENT entered in favor of defendant DaimlerChrysler Corporation and against plaintiff Debra Turner.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Defendant moved for summary judgment in plaintiff's action brought pursuant to the Alabama Extended Manufacturer's Liability Doctrine, and asserting claims of negligence, wantonness, and breach of implied warranty.

**OVERVIEW:** Plaintiff purchased a new automobile manufactured by defendant. The automobile was covered by a new vehicle limited warranty. While plaintiff's warranty was in force, she was struck head-on by another vehicle while driving her automobile. The airbag in plaintiff's vehicle allegedly failed to deploy. As a result, plaintiff suffered serious injuries. Plaintiff brought action pursuant to the Alabama Extended Manufacturer's Liability Doctrine, and state law claims for negligence, wantonness, and breach of implied warranty. Defendant manufacturer moved for summary judgment. The court found that defendant was entitled to summary judgment, as plaintiff failed to offer any evidence to show that the automobile's driver-side airbag restraint system was defective. Simply establishing that the airbag did not deploy and that she was injured was not enough. Defendant offered affidavit evidence demonstrating that there were no defects in the driver-side airbag restraint system, that the airbag system did not proximately cause any of plaintiff's injuries, and that the airbag system performed as expected and designed in plaintiff's crash. Plaintiff did not offer any evidence to the contrary.

**OUTCOME:** Defendant's motion for summary judgment was granted, as plaintiff failed to offer any evidence that airbag restraint system was defective or was the proximate cause of her injuries.

**LexisNexis(R) Headnotes**

*Civil Procedure > Summary Judgment > Summary Judgment Standard*
[HN1] Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). In reviewing a summary judgment motion, the court must view the evidence and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party.

*Civil Procedure > Summary Judgment > Burdens of Production & Proof*
[HN2] The party seeking summary judgment has the initial burden of showing that there is no genuine issue of material fact. Once the moving party meets that burden, the non-moving party must set forth specific facts which demonstrate that there is a genuine issue of material fact for trial. A genuine issue of material fact exists for trial if a reasonable jury could return a verdict in favor of the non-moving party. To avoid an adverse ruling on a motion for summary judgment, the non-moving party may not rest upon the mere allegations or denials of its pleading. Fed R. Civ. P. 56(e). Nor may the non-moving party defeat summary judgment by providing a mere "scintilla" of evidence. Instead, there must be a genuine factual conflict in the evidence to support a jury question.



**EXHIBIT**

A-10

2000 U.S. Dist. LEXIS 18244, *

*Torts > Products Liability > Negligence*
*Torts > Products Liability > Breach of Warranty*
[HN3] The theories of negligence, wantonness, and breach of an implied warranty have all been incorporated by the Alabama Extended Manufacturer's Liability Doctrine (AEMLD). A court will thus consider those claims as part and parcel of a plaintiff's AEMLD claim.

*Torts > Products Liability > Negligence*
[HN4] To establish liability under the Alabama Extended Manufacturer's Liability Doctrine, a plaintiff must prove: He suffered injury or damages to himself or his property by one who sells a product in a defective condition unreasonably dangerous to the plaintiff as the ultimate user or consumer, if (a) the seller is engaged in the business of selling such a product, and (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it was sold.

*Torts > Products Liability > Negligence*
[HN5] The Alabama Supreme Court has recognized that the failure of a product does not presuppose the existence of a defect. This is particularly true where the product and its purported defect is of a complex and technical nature. In such situations, the plaintiff must affirmatively establish the defective condition of the product by means of expert testimony.

**COUNSEL:** For DEBRA TURNER, plaintiff: April A. England-Albright, Esq., Chestnut, Sanders, Sanders & Pettaway, Selma, AL.

For DAIMLER CHRYSLER CORPORATION, defendant: Michael L. Bell, Esq., J. Bradley Powell, Lightfoot, Franklin & White, Birmingham, AL.

**JUDGES:** RICHARD W. VOLLMER, JR., UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** RICHARD W. VOLLMER, JR.

**OPINION:**

**ORDER**

Plaintiff Debra Turner brings this action against defendant DaimlerChrysler Corporation pursuant to the Alabama Extended Manufacturer's Liability Doctrine (AEMLD). Turner also asserts state law claims for negligence, breach of implied warranty, negligent product design, negligent construction and assembly, and negligent failure to warn. The court denied defendant Daimler-

lerChrysler's motion for summary judgment in its order of July 26, 2000. Upon reconsideration, that order is **VACATED**. After carefully reviewing the law and considering the submissions of the parties, the court concludes that the motion is due to be and is hereby **GRANTED**. n1

n1 The court held a pre-trial conference on October 3, 2000 during which the court notified the parties that it intended to grant summary judgment for the defendant.

[*2]

I. BACKGROUND

On May 10, 1995, Turner purchased a new 1995 Jeep Cherokee from Don Dawson Jeep-Eagle, Inc., in Pensacola, Florida. The Cherokee was covered by a new vehicle limited warranty, which was in force for three years or 36,000 miles, whichever came first. The warranty covered the driver's supplemental restraint system components and limited any implied warranties to the three-year/36,000 mile coverage period.

On July 12, 1998, Turner was struck head-on by another vehicle while she was driving her Cherokee on County Road 23 in Conecuh County, Alabama. The airbag in Turner's vehicle allegedly failed to deploy. As a result, Turner claims, she suffered serious injuries to her face, shoulders, chest and knees.

On June 24, 1999, Turner filed a complaint in state court against Don Dawson and General Motors Acceptance Corporation (GMAC). The complaint alleged that Don Dawson and GMAC were liable as the seller and manufacturer, respectively, of Turner's Cherokee. On July 28, 1999, Don Dawson removed the case to federal court. Don Dawson also filed a motion to compel arbitration and, shortly thereafter, GMAC filed a motion to dismiss. The court granted both motions and allowed Turner [*3] to amend her complaint to add Daimler-Chrysler as a defendant. n2

n2 The court has since granted Turner's motion to dismiss Don Dawson from this case (Doc. 56).

Since that time, Turner has not submitted any expert disclosures or reports as required by *Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure.* She also failed to identify any expert witnesses by the April 3, 2000 discovery deadline set forth in the court's Rule 16(b) Scheduling Order (Doc. 22 P6). Two months later, Turner filed a motion to extend that deadline, which was denied be-

Case 1:05-cv-00645-MSK-BNB   Document 60-3   Filed 07/21/06   USDC Colorado   Page 3 of 4
05-44481-rdd    Doc 20004-3    Filed 05/10/10    Entered 05/10/10 20:01:32    Exhibit C
Pg 38 of 39

Page 3

2000 U.S. Dist. LEXIS 18244, *

cause Turner had not provided good cause for the untimely amendment.

## II. SUMMARY JUDGMENT STANDARD

[HN1] Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fed. R. Civ. P. 56(c)*. In reviewing a summary judgment motion, the court must view the evidence [*4] and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party. See *Alexander v. Fulton County, 207 F.3d 1303, 1335 (11th Cir. 2000).* -

[HN2] The party seeking summary judgment has the initial burden of showing that there is no genuine issue of material fact. See *Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986)*. Once the moving party meets that burden, the non-moving party must set forth specific facts which demonstrate that there is a genuine issue of material fact for trial. See *Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-86, 106 S. Ct. 1348, 1355, 89 L. Ed. 2d 538 (1986)*. A genuine issue of material fact exists for trial if a reasonable jury could return a verdict in favor of the non-moving party. See *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986)*.

To avoid an adverse ruling on a motion for summary judgment, the non-moving party "may not rest upon the mere allegations or denials of [its] pleading." *Fed R. Civ. P. 56(e)*. Nor may the non-moving party defeat summary [*5] judgment by providing a mere "scintilla" of evidence. See *Burger King Corp. v. Weaver, 169 F.3d 1310, 1321 (11th Cir. 1999)*. Instead, there must be a genuine factual conflict in the evidence to support a jury question. See *Continental Cas. Co. v. Wendt, 205 F.3d 1258, 1261 (11th Cir. 2000)*.

## III. DISCUSSION

In this products liability action, Turner contends that the driver-side airbag restraint system in her 1995 Jeep Cherokee was defective within the meaning of the AEMLD. She also seeks recovery from DaimlerChrysler on the theories of negligence, wantonness, and breach of an implied warranty. [HN3] Those theories have all been incorporated by the AEMLD. See *Brock v. Baxter Healthcare Corp., 96 F. Supp. 2d 1352 (S.D. Ala. 2000)*. See also *Veal v. Teleflex, Inc., 586 So. 2d 188, 191 (Ala. 1991); Shell v. Union Oil Co., 489 So. 2d 569, 571 (Ala. 1986)*. The court will thus consider those claims "as part and parcel of [Turner's] AEMLD claim." *McPhail v.*

*Mitsubishi Motor Mfg. of Am., Inc., 80 F. Supp. 2d 1309, 1314 (S.D. Ala. 1997)*.

[HN4] To establish liability under the AEMLD, a plaintiff must prove: [*6]

> He suffered injury or damages to himself or his property by one who sells a product in a defective condition unreasonably dangerous to the plaintiff as the ultimate user or consumer, if (a) the seller is engaged in the business of selling such a product, and (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it was sold.

*Casrell v. Altec Industries, Inc., 335 So. 2d 128, 132-33 (Ala. 1976)*.

[HN5] The Alabama Supreme Court has recognized that "the failure of a product does not presuppose the existence of a defect." *Townsend v. General Motors Corp., 642 So. 2d 411, 415 (Ala. 1994)*. This is particularly true where, as here, the product and its purported defect is of a "complex and technical nature." *Brooks v. Colonial Chevrolet-Buick, 579 So. 2d 1328, 1333 (Ala. 1991)*. In such situations, the plaintiff must affirmatively establish the defective condition of the product by means of expert testimony. See *id. at 1332-33*. Turner, however, has not offered any evidence -- let alone expert testimony -- to show that her Cherokee's driver-side airbag restraint [*7] system was defective. Simply establishing that the airbag did not deploy and that she was injured is not enough; Turner must affirmatively show that the airbag system was defective and that this defect proximately caused her injuries. See *Townsend, 642 So. 2d at 415 (Ala.1994)*.

For its part, DaimlerChrysler has offered affidavit evidence demonstrating:

(1) that there were no defects in the Cherokee's driver-side airbag restraint system;

(2) that the airbag system did not proximately cause any of Turner's injuries; and

(3) that the airbag system performed as expected and designed in Turner's crash. Because Turner has not offered any evidence to the contrary, she cannot meet her burden of showing through expert testimony that the airbag system was defective. DaimlerChrysler is therefore entitled to summary judgment.

Case 1:05-cv-00645-MSK-BNB   Document 60-3   Filed 07/21/06   USDC Colorado   Page 4 of 4
05-44481-rdd   Doc 20004-3   Filed 05/10/10   Entered 05/10/10 20:01:32   Exhibit C
Pg 39 of 39

Page 4

2000 U.S. Dist. LEXIS 18244, *

III. CONCLUSION

For the foregoing reasons, the court concludes (1) that Turner's negligence, wantonness n3 and breach of warranty claims have been subsumed by her AEMLD claim, and (2) that Turner has not set forth a prima facie case under the AEMLD because she has not offered any evidence or expert testimony that a defect existed [*8] in her 1995 Jeep Cherokee's driver-side airbag restraint system. Accordingly, the court **GRANTS** DaimlerChrysler's motion for summary judgment.

n3 Technically, Turner's complaint does not state a claim for wantonness, but Count Two (a negligence claim) contains a demand for punitive damages.

DONE this 31 day of October, 2000.

**RICHARD W. VOLLMER, JR.**

**UNITED STATES DISTRICT JUDGE**

**JUDGMENT** - JUDGEMENT ENTERED ON DOCKET 11/1/00

Pursuant to *Rule 58 of the Federal Rules of Civil Procedure*, **FINAL JUDGMENT** is entered in favor of defendant DaimlerChrysler Corporation and against plaintiff Debra Turner. In accordance with the court's October 31, 2000 order granting DaimlerChrysler's motion for summary judgment, Turner shall recover **NOTHING** from DaimlerChrysler. Each party shall bear its own costs.

DONE this 31 day of October, 2000.

**RICHARD W. VOLLMER, JR.**

**UNITED STATES DISTRICT JUDGE**