**EXHIBIT E**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.:  05-CV-645-MSK-BNB

JOSE ALFARO, and
MARTHA ALFARO,

      Plaintiff,

v.

GENERAL MOTORS CORPORATION,
HONEYWELL, INC. f/k/a ALLIEDSIGNAL, INC.
DELCO ELECTRONICS CORPORATION,
DELPHI  AUTO SYSTEMS, f/k/a/ INLAND FISHER GUIDE
JOHN DOE, and JOHN DOE, INC.

      Defendants.

---

### RESPONSE TO DEFENDANT GENERAL MOTORS CORPORATION'S MOTION TO ADJUDICATE SUMMARY JUDGEMENT MOTION AND FOR EXPEDITED CONSIDERATION

---

COME NOW, the Plaintiffs, José and Martha Alfaro, by and through their lawyers, Stanley J. Walter and Don C. Staab, and. in response to Defendant's motion state as follows:.

STATUS OF THE CASE

The parties had requested an enlargement of time for expert Discovery which was denied as of July 6, 2006.

Thereafter, Defendants were granted an enlargement to August 31, 2006, which was granted in order to allow Defendants to take depositions of Plaintiffs' experts.

General Motors has moved for Summary Judgment and filed copies of their experts' opinions in support thereof.

Although Plaintiffs' experts depositions have been set, they have not testified as of yet.[1]  The deadline set for response to dispositive motions pursuant to the scheduling order is September 11, 2006.

## STANDARD FOR REVIEW

Rule 56(c) provides that Summary Judgment may enter if the pleadings, depositions, answers to interrogatories and admissions on file show there is no genuine issue of material fact and that the moving party is entitled to Judgment as a matter of Law.

## ARGUMENT

I.  Defendant failed to properly support the motion as required by the Rule.

The Defendant submitted its' unverified motion supported by exhibits, which are basically reports from his experts which are also unverified.

---

[1] No expert's depositions for Defendant have been set, having been prohibited by the Court's order of July 6, 2006.

2

The Court in *Sofford v. Schneider Elevator Corporation*, 954 F. Supp. 1459 (Colo. 1997), held that experts' reports are not competent evidence for consideration in ruling on the motion for Summary Judgment, stating:

> Plaintiff argues that he has adequately responded to United's motion by his use of expert reports which arguably imply some constructive knowledge on the part of United. However, these reports are unsworn and therefore not competent evidence for my consideration in ruling on the motion for summary judgment.

See also, *Apodoca v. Discover Financial Services*, **417 F. Supp 2d. 1220-12505 (N.M 2006),** wherein the Court refused to consider unsworn expert reports in support of the motion.

As the Court explained in *Adickes v. S.H. Kress & Co.* **398 U.S. 144, 150.161 (1970**), the burden on the nonmovant to respond arises only if the summary judgment motion is properly "supported" as required by the Rule 56 (c). Accordingly, summary judgment is appropriate under Rule 56 (e) only when the moving party has met its initial burden of production under Rule 56 (c). If the evidence produced in support of the summary judgment motion does not meet this burden, summary judgment must be denied even if no opposing evidentiary matter is presented. If the nonmoving party fails to respond, the District Court may not

3

grant the motion without first examining the moving party's submission to determine if it has met its initial burden of determining whether no material issues of fact remain for trial. " … no defense to an insufficient showing is required."

II.   There genuine issues of material fact remaining to be determined by the jury.

Defendant, in its' brief in support of the Motion for Summary judgment quotes from Plaintiffs' expert Bill Broadhead who states what defects must have caused the seatbelt to malfunction. (See attached)  It is clear from his argument, that even though he likes the opinions of his own experts better, there are genuine issues of fact remaining in the case, to be determined by the jury, of which he is aware.

For these reasons, Defendants' Motion should be denied.

Wherefore, the Plaintiffs pray that the Court deny the motion for summary judgment, as being not properly supported as required by Rule 56.  Plaintiffs have no objection to expedited determination of the Defendant's Motion.

> *s/ Stanley J. Walter*
> Lawyer for Plaintiffs
> 518 17th St.  Ste.1044
> Denver, CO  80202-4119
> 303-698-1957

4

## CERTIFICATE OF SERVICE

I certify that on this 23rd day of August, 2006, a true and correct copy of the above and foregoing was sent to:

Charles Casteel
Davis, Graham & Stubbs
1550 17th Street, Suite 500
Denver, CO  80202

Peter Jones
Hall & Evans
1125 17th Street, Suite 600
Denver, CO  80202

Mary Wells
David Mayhan
Wells, Anderson & Race
1700 Broadway, Suite 1020
Denver, CO  80290-1705

Michael Smith
Eldridge, Cooper, Steichen & Leach
P.O. Box 3566
Tulsa, OK  74101-3566
110 W. 7th Street, Suite 200
Tulsa, OK  74119


*s/ Erin Sullivan*

first. Accurate quantification of impact related velocity change is extremely difficult to ascertain in ground impacts where the vehicle's underside plows through dirt. The trajectory and impact severity of the restrained occupants however, clearly put this accident in a category where frontal airbags are imperative.

### VII. Discussion

The initial impact is likely the one in which Mr. Diaz and Mr. Alfaro sustained their injuries. Each of these individuals has testified that they were restrained and the physical evidence supports this claim. Despite being belted, both of these gentlemen articulated forward and forcefully contacted the interior components and surfaces of the vehicle, causing significant injury. Given the collision severity, one would not expect a normally seated, belted occupant to impact the interior of the vehicle with such intensity. Thus, the circumstances and physical evidence of this collision indicate that either the seatbelt system failed to properly restrain these gentlemen, or the magnitude of the impact was well beyond the range of their design parameters. In either case this was clearly a situation for which airbags were needed.

The subject vehicle is involved in a recall campaign pertaining to airbag non-deployment problems involving the crash sensing system.[1] This recall apparently involves a SDM anomaly that results in a failure to deploy during certain frontal crashes. Under crash conditions in which the forward discriminating sensor closes prior to safing sensor closure, a subsequent short duration closure and opening cycle (referred to as sensor "bounce") of the safing sensor can lead to inductance and microprocessor reset problems within the SDM. This can cause a failure of sufficient firing current impulse to the airbag module squibs.

The subject vehicle's front crash sensor is located in the area below the radiator. It is this part of the structure that was impacted and damaged as a result of ground contact during the accident. The nature of the collision was one in which the front sensor would have been

---

[1] NHTSA Campaign ID Number 02V178000; GM Recall 02029.

Attachment A

subjected to a significant acceleration impulse early in the event, one that would quite likely cause the front sensor to close prior to the safing sensor. Thus, the subject collision was one conducive to the malfunction described in the recall.

The deployment threshold of the airbag system is determined by the manufacturer and may be based on a number of factors. One factor considered is the risk of facial fracture due to impact with interior components. The goal is to ensure proper airbag deployment at collision severities where the risk of facial injury is deemed significant. The airbag is thus intended to provide protection against injury for such impacts.

In higher severity frontal collisions, the seatbelts and airbags are intended to work together to mitigate injury from impact with the interior of the vehicle. For any given seat belt restraint, there will be some level of frontal collision severity beyond which some occupants will sustain impact with interior components. One design goal of airbag restraint systems is that they will be deployed at impact severities beyond the seatbelt's capability of preventing interior impact. The deployment threshold and design of the airbag system must work in conjunction with the seatbelts.

Such was not the case in the subject accident. The restraint system as a whole failed to provide protection from interior impact as would be expected in a situation as this. At least two possibilities or a combination thereof exists. Either a malfunction, such as the aforementioned SDM problem, occurred resulting in a non-deployment, or by design the deployment threshold and characteristics of the crash sensor system are such that certain non-deployment collisions will be beyond the capabilities of the seatbelt to protect the front seat occupants. Both of these scenarios involve defect and unacceptably poor performance of the vehicle's restraint systems.

### Conclusion

The occurrence and extent of Mr. Diaz' and Mr. Alfaro's injuries would not have resulted if either 1) the airbag system had deployed and operated as expected or 2) absent the airbag

deployment, the seatbelts would not have allowed such excessive forward excursion of the occupants. Clearly, both front seat occupants would have benefitted from properly deployed airbags. It is expected that the airbags would have: 1) Prevented impact between the occupants and the vehicle interior; 2) Provided energy absorption capability to reduce the forces imparted to Mr. Diaz and Mr. Alfaro; 3) Provided force distribution that would serve to mitigate injury. Wholly considered, the subject vehicle's restraint systems simply did not perform as would be reasonably expected for an impact of this nature.

The opinions expressed herein are based on the information available to date. As additional information becomes available, supplemental opinions or revisions may be warranted.

Sincerely,

Automotive Safety Research

*William Broadhead*

William Broadhead
President

WGB/kmc

Attachment:
    A.    Curriculum Vitae
    B.    4-Year Testimony List