# EXHIBIT H

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.:  <u>05-cv-645-MSK-BNB</u>

JOSE ALFARO, and
MARTHA ALFARO,

      Plaintiff,

v.

DELCO ELECTRONICS CORPORATION,
DELPHI  AUTO SYSTEMS, f/k/a/ INLAND FISHER GUIDE
JOHN DOE, and JOHN DOE, INC.

      Defendants.

---

**PLAINTIFFS' MOTION TO ALTER OR AMEND THE JUDGMENT AND
PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT THEREOF**

---

COME NOW, the Plaintiffs, José and Martha Alfaro, by and through their

lawyers, Stanley J. Walter and Don C. Staab, and pursuant to Federal Rule of Civil

Procedure 59(e), Plaintiffs hereby petition the Court to reconsider its Order

Granting Motion for Summary Judgment and Dismissing the Plaintiffs' Claims

Against General Motors Corporation" of October 17, 2006, that dismisses

Plaintiffs' case against Defendant General Motors Corporation.  The reasons

behind this motion are more fully explicated in the attached memorandum of law.

**I.    <u>ISSUES PRESENTED</u>**

Whether the District Court's order of October 17, 2006 should be reconsidered on the grounds of the availability of newly discovered evidence and the need to prevent manifest injustice;

Whether the district court abused its discretion in entering summary judgment without making the determinations required by Fed.R.Civ.P. 56(c) that the Defendant General Motors Corporation sustained its initial burden;

## II.    STANDARD OF REVIEW

### Fed.R.Civ.P. 59(e)

The grounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable or (3) the need to correct clear error or prevent manifest injustice.  Because two of the grounds exist here, namely "evidence previously unavailable" and the "need to prevent manifest injustice" the District Court should reconsider its order granting summary judgment in favor of Defendant General Motors Corporation and dismissing with prejudice the Plaintiffs' claims against said Defendant.

### Fed.R.Civ.P. 56

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. Rule Civ. Proc. 56(c).  Under Rule 56(c), the moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and

identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." ***Celotex Corp.* v.**

***Catrett***, 477 U.S. 317, 322, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986).

### III.   SUMMARY OF ARGUMENT

Plaintiffs submit this motion for reconsideration under Fed.R.Civ.P. 59(e). Plaintiffs believe that there are material issues of fact in dispute that make trial essential on their claims of strict manufacturer liability, negligent design, manufacture, installation, testing and inspection of the vehicle and breach of implied warrant of merchantability.

In particular, Plaintiffs' have discovered new evidence to support their claims and there is more than enough evidence to warrant a trial.  Plaintiffs did not submit that evidence prior to this motion for two reasons:  (1) the Defendant General Motors Corporation did not meet its initial burden in their motion for summary judgment therefore no defense to an insufficient showing was required by the Plaintiffs; and,  (2) because the evidence was not available to the Plaintiffs or even their experts until depositions were taken of Plaintiffs' experts, namely William G. Broadhead of Automotive Safety Research, Inc. and Dennis F. Shanahan, M.D., M.P.H. of Injury Analysis, LLC.

Plaintiffs respectfully ask that the Court vacate its earlier Order granting summary judgment and that this case proceed to the seven day jury trial already scheduled for March 19, 2007.

## IV.    ARGUMENT AND AUTHORITIES

### I.    Fed.R.Civ.P 59(e)

The grounds justifying an alteration, amendment, or reconsideration are (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice. ***Brumark Corp. v. Samson Resources Corp.,*** 57 F.3d 941, 948 (10th Cir. 1995).

#### a.    New Evidence Previously Unavailable

Motions to reconsider must rely on new evidence and not information readily available during the prior proceedings.  "Motions for reconsideration are limited in purpose to correcting errors of law or to present newly discovered evidence." ***Rothwell Cotton Co. v Rosenthal & Co., 827 R.2d 246, 251*** (7th Cir.) *amended*, ***835 F.2d 710 (7th Cir. 1987).***  These motions serve the narrow purpose of allowing a party to correct manifest error of law or fact or to **present newly discovered evidence**. ***Templet v. HydroChem, Inc.,*** 637 F.3d 473, 479 (5th Cir. 2004) ***(quoting Waltman v. Int'l Paper Co.,*** 875 F.2d 468, 473 (5th Cir. 1989).

The Fifth Circuit has set forth several factors to consider when a party seeks to upset a summary judgment by producing new evidence:  "(1) the reasons for the moving party's default, (2) the importance of the omitted evidence to the moving party's case, (3) whether the evidence was available to the movant before the nonmovant filed the summary judgment motion, and (4) the likelihood that the nonmoving party will suffer unfair prejudice if the case is reopened." ***ICEE Distribs., Inc., vs. J & J Snack Foods Corp.,***  445 F. 3d 841, 847 (5th Cir. 2006). Furthermore, "[r]ule 59(e) motions provide the district court with considerable discretion." ***ICEE*** at 445 F.3d 848.

When considering the factors set forth above, the Plaintiff submits that (1) the Plaintiff did not default due to the fact that because the Defendant General Motor's Corporation did not meet its initial burden, therefore the Plaintiffs were under no requirement to respond to the motion for summary judgment; (2) although the Defendant General Motor's Corporation is under the misconception that Plaintiff must submit evidence of specific defects regarding the restraint systems, the Plaintiff's preliminary reports demonstrated sufficient defects of the restraint systems for the Plaintiffs to sustain a ***prima facie*** case against the Defendants; in any event, the newly discovered evidence goes directly to the Defendant General Motors Corporations contention that specific defects need to be

5

demonstrated; (3) the evidence became available to the Plaintiffs just prior to the depositions of the Plaintiffs' experts held on September 25th and 29th; (4) due to the fact that the pretrial conference and the jury trial have been scheduled since July, the Defendant General Motors Corporation will not suffer any unfair prejudice.

The Plaintiffs herein are entitled to reconsideration under Rule 59(e) based on new evidence which could not have been discovered earlier in the exercise of due diligence. During the week prior to William G. Broadhead's deposition, the new items of evidence were discovered revealing specific defects in the seatbelt and airbag systems of the vehicle in question. Specifically, crash test information and video discovered by Plaintiffs' expert Dennis Shanahan demonstrates failure of the seatbelt system. Mr. Broadhead discovered the use of NS1, a program which shut down the airbag system so that the airbags will not fire under certain conditions was installed in the subject airbag system. Mr. Shannahan recently found crash test information from the NHTSA website showing that even if the passenger was wearing his/her seatbelt, in a low speed soft barrier collision, the passenger's face would still hit the grab bar and dash. This information was downloaded and entered into his log on August 21, 2006. (See Exhibit B-2, Depo of Shanahan, pg. 85 lines 2-10, pg. 86 lines 19-25, pg 87 lines 1-11; and Exhibit B-1, Depo of Broadhead, pg. 44 lines 1-21, pg. 46 lines 19-25). This is graphically

demonstrated by Exhibit B-3, submitted conventionally on October 30, 2006.  This

newly discovered evidence demonstrates specific defects in the airbag system and

in the seatbelt restraint system.  For example, Broadhead states in his deposition,

"that the EP program or the EP1 program is defective…the airbag was defective

for its failure to fire…"  Broadhead further states in his deposition of defects in the

seatbelt system:  "[t]he seat back rigidity, the belt stretch, retractor lock-up delay

are some of the specific component problems with that seatbelt system."  (See

Exhibt B-2, Depo of Broadhead, pg. 46 lines 19-25, pg. 48 lines 21-25, pg. 49 lines

1-16, pg. 54 lines 18-21, pg. 84 lines 2-10)  Further, this information only became

available to the Plaintiffs' just prior to the depositions of their experts, William G.

Broadhead and Dennis Shanhan.  Mr. Broadhead's deposition being taken on

August 25, 2006 and Mr. Shanahan's deposition being taken on August 29, 2006.

### b.    Prevent Manifest Injustice

In this case, the district court granted Defendant General Motor

Corporation's motion for summary judgment in a cursory order implying that the

Plaintiffs' default was the sole basis for the dismissal.   The district court, did not,

as required, assess whether the Defendant General Motor Corporation had met

their burden to demonstrate that summary judgment was appropriate.  As stated by

the court in ***Reed v. Bennett***, 312 F.23d 1190 (10th Cir 2002), "Fed.R.Civ.P. 56(e)

7

specifically contemplates the consequences of failing to oppose a summary

judgment motion:

> 'When a motion for summary judgment is made **and supported**
> (emphasis added) as provided in this rule, an adverse party may
> not rest upon the mere allegations or denials of adverse party's
> pleadings, but the adverse party's response, by affidavits or as
> otherwise provided by this rule, must set forth specific facts
> showing that there is a genuine issue for trial.  If the party does
> not so respond, summary judgment, **if appropriate** (emphasis added)
> shall be entered against the adverse party.'

The **Reed** Court went on to further state, quoting ***Adickes v. S.H. Kress & Co.***, 398

U.S. 144, 160-61, 26 L.Ed. 29 142, 90 S.Ct. 1598 (1970), that

> "the burden on the  nonmovant to respond arises only if the
> summary judgment motion is properly "supported" as required
> by the Rule 56 (c). Accordingly, summary judgment is "appropriate"
> under Rule 56 (e) only when the moving party has met its initial
> burden of production under Rule 56 (c).  If the evidence produced
> in support of the summary judgment motion does not meet this
> burden, "summary judgment  must be denied even if no opposing
> evidentiary matter is presented." ***Id.*** at 160 ***quoting*** Fed.R.Civ.P. 56
> advisory committee notes to the 1963 amendments (emphasis added).
> If the nonmoving party fails to respond, the district court may not
> grant the motion without first examining the moving party's submission
> to determine  if it has met its initial burden of demonstrating that no
> material issues of fact remain for trial and the moving party is entitled
> to judgment as matter of law.  If it has not, summary judgment is not
> appropriate, for **"no defense to an insufficient showing is required."**
> (emphasis added) ***Id.***  at 161.

> "To summarize, a party's failure to file a response to a summary judgment

motion is not, by itself, a sufficient basis on which to enter judgment against the

party.  The district court must make the additional determination that judgment for the moving part is "appropriate" under Rule 56.  Summary judgment is appropriate only if the moving party demonstrates that no genuine issue of material fact exist and that it is entitled to judgment as a matter of law."  ***Reed*** at 312 F.3d 1195.

The district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remain for trial.  ***Amaker v. Foley***, 274 F.3d 677, 681 (2d Cir. 2001).  If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied even if no opposing evidentiary matter is presented.  ***Giannullo***, 322 F.,3d at 141 (noting that the "non-movant is not required to rebut an insufficient showing").  Moreover, in determining whether the moving party has met this burden of showing the absence of a genuine issue for trial, the district court may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56 statement.  It must be satisfied that the citation to evidence in the record supports the assertion.  ***Giannullo***, 322 F.3d at 143 n. 5 (stating that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

An unopposed summary judgment motion may also fail where the undisputed facts fail to "show that the moving party is entitled to judgment as a matter of law." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996) (per curiam) (quoting Fed.R.Civ.P. 56 (c)).  Where the order granting summary judgment is insufficiently clear to permit a court of appeals to determine whether the grounds for granting the motion are valid, remand is appropriate.  *See Miranda v. Bennett*, 322 F.3d 171, 175 (2d Cir. 2003).

Due to the fact that the Defendant General Motors did not meet its initial burden of proof in that it failed to demonstrate the absence of a disputed question of a material fact, the Plaintiffs were under no obligation to respond to its motion for summary judgment.  Further, since the Defendant General Motors Corporation submitted no competent evidence or facts to which the Plaintiff could respond to, the failure of the Plaintiff to file a response to the motion for summary judgment cannot act as a waiver of the Plaintiff's right to respond or to controvert the facts asserted in the summary judgment motion.

There is no evidence in the summary judgment record to suggest that the Plaintiff cannot make its *prima facie* case against the Defendant General Motors Corporation.  In failing to make a determination that the Defendant General Motors Corporation has met its initial burden, the district court abused its discretion when

it granted summary judgment solely because the Plaintiffs failed to respond to the

motion within the applicable time limit.  The district court must, at a minimum,

examine the moving party's motion for summary judgment to ensure that it has

discharged its initial burden.  In the case of *Silvestri v  General Motors*

*Corporation*, 210 F.3d 240 (4th Cir. 2000), the court held that plaintiff need not

provide expert testimony of a specific defect on claim involving failure of airbag to

deploy where circumstantial evidence permitted inference that airbag should have

deployed, including evidence of representations made in the owner's manual of the

plaintiff's vehicle regarding the airbag.  Filed with the Defendant General Motors

Corporation's motion for summary judgment was the Plaintiff's preliminary expert

report of William G. Broadhead wherein he stated that the "restraint system as a

whole failed to provide protection from interior impact."  (See Exhibit A-9

attached to Defendant General Motors Corporation's Motion for Summary

Judgment.)   Thus, due to the information contained on file in the district court's

record, the Defendant General Motors Corporation clearly has not met its initial

burden.


## V.     CONCLUSION

For the foregoing reasons, Plaintiffs respectfully ask this Court to vacate its

earlier order granting summary judgment and dismissing Plaintiffs' claims against

the Defendant General Motors Corporation and that the same proceed to trial.

Respectfully submitted,

*s/ Stanley J. Walter*

Lawyer for Plaintiffs

518 17th St.  Ste. 1044

Denver, CO  80202-4119

303-698-1957 phone

303-698-1938 fax

CERTIFICATE OF SERVICE

I certify that on this 30th day of October 2006, a true and correct copy of the above and foregoing was sent to:

Charles Casteel
Davis, Graham & Stubbs
1550 17th Street, Suite 500
Denver, CO  80202

Mary Wells
Wells, Anderson & Race
1700 Broadway, Suite 1020
Denver, CO  80290-1705

Michael Smith
Eldridge, Cooper, Steichen & Leach
P.O. Box 3566
Tulsa, OK  74101-3566
110 W. 7th Street, Suite 200
Tulsa, OK  74119

*s/ Erin Sullivan*

13

ALFARO v. GENERAL MOTORS   WILLIAM BROADHEAD          August 25, 2006

Page 44

1          I know this restraint system failed, but I

2     can't tell you the component details of the failure.

3          Now, I am giving you some of the legs.  It

4     could be the retractor failed to lock appropriately.

5     I suspect more it was just a build-up of

6     compliances. When I looked at the 18 mile-an-hour

7     performance of that system when it had a 5th

8     percentile female in it, I was astonished that she

9     hit her head on the grab bar in such a low speed

10     from a collision.

11          So I believe that this restraint system,

12     itself, is way too compliant and insufficient on its

13     own to prevent occupant impact with the vehicle

14     interior, even when it locks appropriately.

15          Q    Could you tell me what you were looking

16     at with respect to the 5th percentile female?  Was

17     it a crash test?

18          A    Yes, it was.  I think it was a transport

19     candidate crash test.  I have it here on DVD.  If

20     you want, during a break or during our depo, we

21     can watch it, hopefully, on your computer.

22          Q    Well, I don't necessarily want to watch it,

23     but is there some way you can identify it for me?

24          A    Sure.  It's in that technical file, if you

25     pull that.  If it's not in there -- let's take a look

Exhibit B-1a

ALFARO v. GENERAL MOTORS   WILLIAM BROADHEAD          August 25, 2006

Page 46

1    no one contests Diaz was wearing his belt.  But, of

2    course, my opinion is Mr. Diaz was wearing his

3    belt also.

4         Q    I want to go back to something you said

5    earlier, Mr. Broadhead, and then I want to kind of

6    visit about the general areas of opinions so that I

7    make sure we have a good idea of what you are

8    going to be testifying to at the time of trial.

9              With respect to the seatbelts or seatbelt

10   systems, it's your opinion that the system failed?

11        A    Yes.

12        Q    But you cannot state with a reasonable

13   degree of scientific or engineering certainty which

14   of the components allegedly failed or caused the

15   failure; is that true?

16             MR. WALTER:  Object to the form.

17        Q    (BY MR. ZUCKERMAN)  You may answer,

18   sir.

19        A    I cannot give you a complete isolation

20   component by component.  I believe, however, that

21   there is a combination of factors that leads to it

22   being way too compliant.

23             The seat back rigidity, the belt stretch,

24   retractor lock-up delay are some of the specific

25   component problems with that seatbelt system.

Exhibit B-1b

ALFARO v. GENERAL MOTORS   WILLIAM BROADHEAD                August 25, 2006

Page 48

1          A    No.  I gave you a couple.  I have a lot

2     more.

3          Q    Okay.  Tell me all of your opinions.

4          A    I will continue with what I feel are some

5     of the major opinions.  And then, of course, you

6     have seen we explored a lot of subopinions based

7      on just that one opinion.

8               I believe the airbag system was defective

9     in that it did not deploy in this accident.  The

10    airbag system was needed to prevent occupant

11    interior impacts.  I won't go into all the benefits

12    of airbags in this opinion, but those will be

13    subopinions if you want to illicit them from me.

14              They will also be illuminated in the blue

15    book.  I believe the airbag -- along with it, the

16    airbag deployed defectively.  One of the pieces of

17    information that support that is that the

18    consumer complaints are replete with incidents

19    where the airbags did not deploy in circumstances

20    where they would reasonably be expected to.

21              I believe that it was defective for several

22    reasons.  One of the reasons is that it has a

23    problem that is addressed by the recall.  It has

24    another problem with it in that, apparently, the

25    system shuts down during the algorithm,

Exhibit B-1c

ALFARO v. GENERAL MOTORS   WILLIAM BROADHEAD          August 25, 2006

Page 49

1    apparently, as an attempt to reduce

2    out-of-position injuries by the airbag.

3           So it's my opinion that the EP program,

4    or the EP1 program is defective.  I suspect that

5    that's involved in this particular incident and why

6    the airbag didn't fire in this case.  Generally, the

7    airbag was defective for its failure to fire for

8    either the driver or passenger.

9           And another opinion that goes into the

10   defect of airbag system is documentation by

11   General Motors themselves that it failed to fire in

12   some of their tests.

13          There is one test, specifically, that I

14   flagged.  I think it ends in 55, a General Motors

15   test.  It's like a five- or six-digit number ending

16   in 55.  We can get that later if you want.

17       Q    Actually, if you don't mind --

18       A    Get that now?

19       Q    Yeah.  Because I meant to ask you that

20   earlier.  I have written that you wanted to see the

21   barrier crash test, and then you talked about a

22   test where neither airbag fired.  And I think that's

23   the one to talk about.

24       A    Yeah.  Why don't you pull the technical

25   file, and I will pull that for you.

ALFARO v. GENERAL MOTORS   WILLIAM BROADHEAD        August 25, 2006

Page 54

1        Q    I understand.  But I do want to put a

2   sticker on it so I don't forget.

3        A    Then can I alter a document after it's

4   been labeled as an exhibit?

5        Q    Sure.  You just told us it was a working

6   sheet, and you can alter it all day.  I just want to

7   make sure we know what we are talking about.

8        A    You don't --

9        Q    I don't want you to stop doing it now.

10  But I do want to make sure that when we look for

11  exhibits later on -- I believe that's Exhibit 4.  Feel

12  free to mark away.

13       A    Okay.

14            (Defendant's Exhibit-04 was marked for

15  identification and is retained by witness.)

16       Q    (BY MR. ZUCKERMAN)  Back to your

17  opinions.

18       A    I believe that grab bar is defective and

19  that it shouldn't be there.  It's a rigid object that

20  can cause significant injury in the known

21  occupant trajectory path.  And I believe Mr. Diaz

22  would have benefitted from an airbag as well.

23       Q    You understand Mr. Diaz is a party to

24  this lawsuit; correct?

25       A    So we can ignore that, but I don't --

Exhibit B-1d

ALFARO v. GENERAL MOTORS   WILLIAM BROADHEAD            August 25, 2006

Page 84

1      opinion.  So I am still waiting for that production.

2          Q     What is the specific defect or defects in

3      the design of the subject seatbelt system or any of

4       its component parts?

5          A     Excessive slack.  It allows too much

6      forward occupant trajectory due to forms of slack.

7      Remember, the 18-mile-an-hour offset barrier with

8      a 5th percentile female is the example I give for

9      how much that system allows an occupant to go

10      forward.

11          And that's just -- it's way too much.  It

12      falls outside of reasonable engineering designs for

13       seatbelts.

14          Q     Besides excessive slack, what is the -- or

15      what are the specific defects in the seatbelt or

16      seatbelt system in the subject vehicle?

17          A     I am waiting to see the videos to specify

18      that -- crash test videos.  I think we will see a lot

19      of seat back flexion contributing to that as well as

20      the webbing coming out of the retractor, out of the

21       escutcheon in the seat back.

22          Q     As you sit here today, with a reasonable

23      degree of engineering certainty and probability, is

24      it your opinion there are any other defects in the

25      subject seatbelt system or component part of the

Exhibit B-1e

ALFARO v. GENERAL MOTORS DENNIS SHANAHAN                    August 29, 2006

Page 85

1     notes.

2          Q    Okay.  How did you acquire these tests?

3          A    NHTSA has a website that provides the

4     crash tests that they contract to have performed.

5     They are done, by and large, either as research

6     more typically as checks on the industry, which,

7     as you know, performance of these federal motor

8     vehicle standards, safety standards, are

9     self-certified.  So NHTSA has a spot check program

10    to ensure the honesty or quality of the tests.

11         Q    Did this pickup comply with FMVSS 208?

12         A    From the information that I have seen, it

13    appears to have, but I did not independently study

14    whether it did or did not.

15         Q    Based on the values documented in the

16    test reports that are contained on Exhibit 24, does

17    it appear that the 2000 extended cab pickup

18    complied with FMVSS 208?

19         A    There was that joint research test where

20    there was significant strikes by both the driver

21    and the passenger that may or may not have

22    complied with FMVSS 208.  I frankly don't know.

23         Q    Do you recall what the Hicks numbers

24    were on that test?

25         A    The Hicks were low, but low in terms of

Exhibit B-2

ALFARO v. GENERAL MOTORS DENNIS SHANAHAN                August 29, 2006

Page 86

1      less than a thousand.  But the way they have

2      rewritten the standards multiple times since 1998,

3      I'm not sure whether they have added some

4      additional requirements about contacts by

5      undersized occupants.

6           Q     In FMVSS 208 or some other standard?

7           A     In FMVSS 208.  I frankly don't know,

8      that's why I can't answer your question with any

9      degree of confidence.

10          Q     Do you have any basis for offering the

11     opinion that the vehicle did not comply with

12     FMVSS 208?

13          A     Well, let me put it this way.  I haven't

14     studied the issue and, therefore, will not be

15     testifying to that particular point.

16          Q     And each of these tests where the Hicks

17     values below 1,000?

18          A     My recollection is that they were.

19          Q     Have you discussed the results or these

20     tests themselves with any other experts in this

21     case?

22          A     Yes, I discussed them with Mr.

23     Broadhead.

24          Q     And when did you do that?

25          A     Oh, within the last couple of weeks.

ALFARO v. GENERAL MOTORS DENNIS SHANAHAN                August 29, 2006

Page 87

1      Q     Is that documented on your activity log?

2      A     No, it is not.  The downloading of the

3   crash test was indicated in my log and that

4   occurred on 8-21-06.

5      Q     Last week?

6      A     I believe so, yes.

7      Q     Did you furnish copies of those tests to

8   Mr. Broadhead?

9      A     I did not.  He can independently download

10   them. I alerted him as to my findings and asked

11   him what he thought about them.

12      Q     All of these -- well, what did Mr.

13   Broadhead say that he thought about them?

14      A     Well, he thought that they were very

15   interesting.  He, as was I, was concerned with the

16   contacts that were made at this 18 or 19

17   mile-an-hour collision by fifth percentile

18   dummies, that they showed a high degree of

19   motion in the upper torso of restrained

20   individuals, which has some relevance to what

21   occurred in the particular crash we are studying.

22      Q     You indicated that you were concerned,

23   just by the occupant motion itself?

24      A     Yes, and the contacts.  I think if I were

25   involved in the development of this restraint

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO


Civil Action No.:  <u>05-cv-645-MSK-BNB</u>

JOSE ALFARO, and
MARTHA ALFARO,

     Plaintiff,

v.

DELCO ELECTRONICS CORPORATION,
DELPHI  AUTO SYSTEMS, f/k/a/ INLAND FISHER GUIDE
JOHN DOE, and JOHN DOE, INC.

     Defendants.

---

### PLAINTIFFS' MOTION TO ALTER OR AMEND THE JUDGMENT AND PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT THEREOF

---

Video crash test information from National Highway Transportation Safety

Administration (NHTSA) v 05 180 2003, Exhibit B-3 to Plaintiffs' Motion to Alter

or Amend the Judgment, filed October 30, 2006.  Play media file using Real

Player.

## CERTIFICATE OF SERVICE

I certify that on this 30th day of October 2006, a true and correct copy of the above and foregoing was sent, via U.S. Mail, postage prepaid, to:

Charles Casteel
Davis, Graham & Stubbs
1550 17th Street, Suite 500
Denver, CO  80202

Mary Wells
Wells, Anderson & Race
1700 Broadway, Suite 1020
Denver, CO  80290-1705

Harold Zuckerman
Eldridge, Cooper, Steichen & Leach
P.O. Box 3566
Tulsa, OK  74101-3566
110 W. 7th Street, Suite 200
Tulsa, OK  74119


*s/ Erin Sullivan*