**Hearing Date and Time: July 22, 2010 at 10:00 a.m. (EDT)**
**Objection Deadline: June 7, 2010 at 4:00 p.m. (EDT)**

HONIGMAN MILLER SCHWARTZ AND COHN LLP
2290 First National Building
Detroit, MI 48226-3506
(313) 465-7000
I. W. Winsten (P30528)
Judy B. Calton (P38733)
E. Todd Sable (P54956)
Marcia Bennett Boyce (P67584)
Attorneys for Valeo Climate Control Corp.,
Valeo Electrical Systems, Inc., Valeo, Inc. and
Valeo Schalter und Sensoren GmbH

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
————————————————————/

In re:                                                  Chapter 11
                                                        Case No. 05-44481 (RDD)
DPH HOLDINGS CORP., <u>et</u> <u>al.</u>,              Jointly Administered

          Reorganized Debtors.

————————————————————/

DELPHI CORPORATION, <u>et</u> <u>al.</u>,

          Plaintiffs,                                   Adversary Proceeding No. 07-02534 (RDD)

v.

VALEO, VALEO AIRFLOW DIVISION, VALEO
CLIMATE CONTROL USA, VALEO ELECTRICAL
SYSTEMS, VALEO ELECTRONICS NA, VALEO
INC., VALEO SCHALTER UND SENSOREN AND
VALEO WIPER SYSTEMS & ELECTRIC MOTORS
NORTH AMERICA,

          Defendants.

————————————————————/

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF VALEO CLIMATE CONTROL**
**CORP., VALEO ELECTRICAL SYSTEMS, INC., VALEO, INC. AND VALEO SCHALTER UND**
**SENSOREN GmbH TO: (A) VACATE CERTAIN PRIOR ORDERS OF THE COURT; (B)**
**DISMISS THE COMPLAINT WITH PREJUDICE; (C) AND DISMISS THE CLAIMS AGAINST**
**CERTAIN DEFENDANTS NAMED IN THE COMPLAINT; AND (D) DISMISS CLAIMS BASED**
**ON ASSUMPTION OF CONTRACTS; OR (E) IN THE ALTERNATIVE, TO REQUIRE**
**<u>PLAINTIFFS TO FILE A MORE DEFINITE STATEMENT</u>**

## TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................. i

PRELIMINARY STATEMENT ....................................................................................1

STATEMENT OF FACTS ............................................................................................3

    A.   Delphi's Preservation of Estate Claims Procedures And Extension Motions ................... 3

        1.   Delphi's Preservation of Estate Claims Procedures Motion.............................3

        2.   Delphi Secretly Commences An Adversary Proceeding Against Valeo ........................4

        3.   The First Amended Joint Plan of Reorganization...............................................5

        4.   Delphi's Second Extension of Avoidance Action Service Deadline Motion .................5

        5.   Delphi's Third Extension of Avoidance Action Service Deadline Motion ....................6

        6.   Delphi's Fourth Extension of Avoidance Action Service Deadline Motion ..................7

    B.   Valeo Suffers Great Prejudice During the Time it has No Notice....................................... 8

    C.   Delphi Assumes Valeo Contracts ........................................................................ 9

    D.   Delphi Finally Serves its Complaint – Four and a Half Years Later ................................. 9

ARGUMENT.................................................................................................................10

I.    THE PROCEDURES ORDER AND EXTENSION ORDERS SHOULD BE
    VACATED AS TO VALEO AS VOID BECAUSE THEY WERE ENTERED
    WITHOUT VALEO HAVING PRACTICAL NOTICE AND AN OPPORTUNITY
    TO RESPOND IN VIOLATION OF VALEO'S FUNDAMENTAL DUE
    PROCESS RIGHTS..............................................................................................10

    A.   The Standard For Vacating Interlocutory Orders .......................................... 10

    B.   Enforcing the Procedures Order and Extension Orders Would Violate Valeo's
        Due Process Rights .............................................................................................. 12

II.   THE COMPLAINT SHOULD BE DISMISSED BECAUSE IT IS BARRED BY
    THE TWO YEAR STATUTE OF LIMITATIONS FOR AVOIDANCE ACTIONS. ........16

III.  FOREIGN CLAIMS AND CLAIMS UNDER $250,000 SHOULD BE
    DISMISSED AS ABANDONED....................................................................................19

IV.  PREPETITION PAYMENTS ON ASSUMED CONTRACTS CANNOT BE
    AVOIDED AS PREFERENTIAL.................................................................................22

V.   THE COMPLAINT IS BARRED BY JUDICIAL ESTOPPEL.........................................22

VI.    THE COMPLAINT IS BARRED BY RES JUDICATA. ...................................................24

VII.   THE COMPLAINT IS BARRED BY LACHES................................................................26

VIII.  THE PROCEDURES ORDER AND EXTENSION ORDERS SHOULD BE
       VACATED FOR ADDITIONAL REASONS. .................................................................27

   A.   The Procedures Order and Extension Orders Should Be Vacated Because There
        Was No Cause To Extend The Time For Service .............................................................. 27

      1.   "Good Cause" Did Not Exist ...............................................................................27

      2.   The Facts Did Not Warrant A Discretionary Extension .................................................29

   B.   The Extension Orders Should Be Vacated Because The Complaints Were
        Improperly Sealed ....................................................................................................... 31

IX.    THE COMPLAINT FAILS TO PLEAD FACTS SUFFICIENT TO STATE A
       CLAIM FOR RELIEF AND SHOULD BE DISMISSED. ....................................................33

X.     THE COMPLAINT SHOULD BE DISMISSED AS TO ENTITIES WHICH DO
       NOT EXIST.....................................................................................................................36

XI.    IN THE ALTERNATIVE, DELPHI SHOULD BE REQUIRED TO FILE A MORE
       DEFINITE STATEMENT.................................................................................................36

XII.   DEFENDANTS INCORPORATE ALL APPLICABLE ARGUMENTS RAISED
       BY OTHER DEFENDANTS IN THEIR DISMISSAL MOTIONS. ....................................36

CONCLUSION.....................................................................................................................37

ii

# TABLE OF AUTHORITIES

CASES

*Angell v. Haven (In re Careamerica)*,
    409 B.R. 346 (Bankr. E.D.N.C. 2009) ............................................................... 34-36

*Ashcroft v. Iqbal*,
    129 S.Ct. 1937 (2009) ...........................................................................2, 34, 36

*Bank of Cape Verde v. Bronson*,
    167 F.R.D. 370 (S.D.N.Y. 1996) ...................................................................28

*Bd. of Regents v. Tomanio*,
    446 U.S. 478 (1980)...................................................................................29

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)............................................................................... 33-36

*Browning v. Levy*,
    283 F.3d 761 (6th Cir. 2002) .......................................................................26

*Burks v. Griffith*,
    100 F.R.D. 491 (N.D.N.Y. 1984) ..................................................................17

*City of New York v. New York, N.H. & H. R.R. Co.*,
    344 U.S. 293 (1953)..................................................................................15

*Development Specialists, Inc. v. 1114 6ᵗʰ Avenue Co., LLC*,
    Bench ruling No. 08-1418 (RDD) (March 5, 2009), *aff'd*. 09-Civ-5042(DLC)
    S.D.N.Y. September 4, 2009) ......................................................................22

*Diversified Hospitality Group, Inc. v. Carson Pirie Scott & Co.*,
    No 90 CIV 2957 (WK), 1991 WL 35953 (S.D.N.Y. Mar. 8, 1991)........................18

*Eastern Refractories Co. v. Forty Eight Insulations, Inc.*,
    187 F.R.D. 503 (S.D.N.Y. 1999) .............................................................. 27-28, 30

*Fustok v. Conticommodity Services, Inc.*,
    122 F.R.D. 151 (S.D.N.Y. 1988) ..................................................................12

*Galerie Des Monnaies of Geneva, Ltd. v. Deutsche Bank, A.G., New York Branch (In re
    Galerie Des Monnaies of Geneva, Ltd)*,
    55 B.R. 253 (Bankr. S.D.N.Y. 1986)..............................................................23

*In re Adelphia Comms. Corp.*,
    333 B.R. 649 (S.D.N.Y. 2005)......................................................................11

*In re Bethlehem Steel Corp.*,
    203 B.R. 554 (D. Del. 1996) .......................................................................11

*In Re Chartschlaa,*
    538 F.3d 116 (2d Cir. 2008)...................................................................................21

*In re EPIC Assocs. V,*
    54 B.R. 445 (Bankr. E.D. Va. 1985)............................................................... 32-33

*In re Food Mgt. Group, LLC,*
    359 B.R. 543 (Bankr. S.D.N.Y. 2007)..................................................................31

*In re Fugazy Express, Inc.,*
    982 F.2d 769 (2d Cir. 1992)..................................................................................10

*In re Gitto Global Corp.,*
    No. 05-10334, 2005 WL 1027348 (D. Mass. May 2, 2005)..................................32

*In Re Grossinger's Associates,*
    184 B.R. 429 (Bankr. S.D.N.Y. 1995)..................................................................22

*In re Gucci,*
    197 Fed. Appx. 58 (2d Cir. 2006).........................................................................26

*In re Hooker Invs., Inc.,*
    937 F.2d 833 (2d Cir. 1991)..................................................................................11

*In re I. Appel Corp.,*
    300 B.R. 564 (Bankr. S.D.N.Y. 2003)............................................................. 25-26

*In re Johns-Manville Corp.,*
    824 F.2d 176 (2d Cir. 1987) (order denying shareholder requests for official
    committee status not a final order).............................................................. 11, 13-15

*In re Johns-Manville Corp.,*
    __ F.3d __, 2010 WL 1007832 (2d Cir. 2010) ................................................ 12-14

*In re Kiwi International Air Lines, Inc.,*
    344 F.3d 311 (3d Cir. 2003)..................................................................................22

*In re Orion Pictures Corp.,*
    21 F.3d 24 (2d Cir. 1994)......................................................................................33

*In re Perrotta,*
    406 B.R. 1 (Bankr. D.N.H. 2009) .........................................................................19

*In re Premier Operations,*
    290 B.R. 33 (S.D.N.Y. 2003).................................................................................11

*In re Reliant Energy Channel View, L.P.,*
    397 B.R. 697 (D. Del. 2008)..................................................................................11

*In re Service Merchandise,*
  Case No. 399-02649 (Bankr. M.D. Tenn. Feb. 27, 2001) ......................................................33

*In re Venture Mortgage Fund, L.P.,*
  245 B.R. 460 (Bankr. S.D.N.Y. 2000), *aff'd*, 282 F.3d 185 (2d Cir. 2002) ..........................23

*Lachance v. Erickson,*
  522 U.S. 262 (1998)..................................................................................................................13

*Martin v. Wilks,*
  490 U.S. 755 (1989)..................................................................................................................15

*McCrae v. KLLM Inc.,*
  89 Fed. Appx. 361 (3d Cir. 2004).............................................................................................30

*McKibben v. Credit Lyonnais,*
  1999 WL 604883 (S.D.N.Y. Aug. 10, 1999).............................................................................30

*Mennonite Bd. of Missions v. Adams,*
  462 U.S. 791 (1983)..................................................................................................................16

*Mullane v. Central Hanover Bank & Trust Co.,*
  339 U.S. 306 (1950)..................................................................................................................13

*New Hampshire v. Maine,*
  532 U.S. 742 (2001)..................................................................................................................23

*Order of R. Telegraphers v. Railway Express Agency, Inc.,*
  321 U.S. 342 (1944)......................................................................................................... 18, 29-30

*Prisco v. A & D Carting Corp.,*
  168 F.3d 593 (2d Cir. 1999)......................................................................................................12

*Rapf v. Suffolk Cty,*
  755 F.2d 282 (2d Cir. 1985)......................................................................................................26

*Richards v. Jefferson County, Richards v. Jefferson County,*
  517 U.S. 793 (1996)..................................................................................................................15

*Rosenshein v. Kleban,*
  918 F. Supp. 98 (S.D.N.Y. 1996) ..............................................................................................23

*Spinale v. United States,*
  2005 WL 659150 (S.D.N.Y. Mar. 16, 2005) .............................................................................27

*United States v. Castro,*
  243 B.R. 380 (D. Ariz. 1999).....................................................................................................12

*United States v. Kubrick,*
  444 U.S. 111 (1979)...........................................................................................................18, 29

*United States v. Uccio,*
   940 F.2d 753 (2d Cir. 1991)..................................................................... 11-12

*United Student Aid Funds, Inc. v. Espinosa,*
   __ S.Ct. __, 2010 WL 1027825 (2010)................................................................16

## STATUTES

11 U.S.C. §107..................................................................................................2, 31

11 U.S.C. §107(a)...................................................................................................31

11 U.S.C. §502(d)..................................................................................................20

11 U.S.C §546(a)..........................................................................................2, 16, 18

11 U.S.C. §547.............................................................................................3, 33, 35

11 U.S.C. §547(b)(5).............................................................................................22

11 U.S.C. §550...............................................................................................

28 U.S.C §158(d)...................................................................................................10

28 U.S.C. § 2075....................................................................................................19

## OTHER AUTHORITIES

Fed. R. Bankr. P. 7004...........................................................................................27

Fed. R. Bankr. P. 7012...........................................................................................36

Fed. R. Bankr. P. 7012(b)........................................................................................2

Fed. R. Bankr. P. 9024.......................................................................................2, 12

Fed. R. Civ. P. 4(m).......................................................................................*Passim*

Fed. R. Civ. P.8......................................................................................................38

Fed. R. Civ. P. 12(b)..............................................................................................37

Fed. R. Civ. P. 12(e)..............................................................................................36

Fed. R. Civ. P. 60(6).............................................................................................12

Wright & Miller, *Federal Practice & Procedure*, § 1137 (3d ed. 2002) .......................17

Defendants Valeo Climate Control Corp., Valeo Electrical Systems, Inc., Valeo Inc. and Valeo Schalter und Sensoren GmbH[1] (each a "**Defendant**" and collectively, "**Valeo**"), respectfully state:

## PRELIMINARY STATEMENT

In September 2007, Delphi Corporation opened a file which allegedly contained a sealed complaint against Valeo (the "**Complaint**"). The sealed Complaint sought to avoid and recover more than $19.5 million in alleged preferential transfers purportedly made in mid-2005. Delphi Corporation provided *no notice* to Valeo that it had secretly filed the Complaint or that it had done so under seal. On March 24, 2010, *four and a half years after* the alleged preferential transfers were purportedly made, the Reorganized Debtors, as successors to Delphi Corporation, *et al.* (collectively, "**Delphi**" and sometimes referred to as the "**Debtors**"), finally served Valeo with the formerly sealed, secret Complaint.

During this lengthy time period, while Delphi intentionally hid its Complaint from Valeo (and other defendants), Valeo undertook a global restructuring of its business which, in part, was due to historic changes in the automotive industry (including Delphi's bankruptcy). This restructuring resulted in the closure and/or sale of facilities and business units that did business with Delphi as well as the elimination of over 2,400 jobs in the United States alone. Because Valeo did not know about Delphi's sealed Complaint, Valeo took no special steps to preserve its records with respect to Delphi, to hold exit interviews with employees who were knowledgeable about the Valeo-Delphi relationship, or to make arrangements to maintain contact with former employees in case Valeo would need them to provide information or serve as witnesses.

---

[1]  Valeo Schalter und Sensoren GmbH makes a special appearance in this adversary proceeding as a movant in this motion. Plaintiffs have not served Valeo Schalter und Sensoren GmbH with a summons and complaint in accordance with the Hague Convention or other protocols and Valeo Schalter und Sensoren GmbH reserve all rights based on lack of proper service. "The need to file a special appearance in order to object to jurisdiction or venue has vanished. A party can file a general appearance and object to personal jurisdiction or venue at any time before the answer is filed or in the answer." *Grammenos v. Lemos*, 457 F.2d 1067, 1070 (2nd Cir. 1972).

1

Despite this clear prejudice, Delphi contends that it may, nonetheless, proceed against Valeo – two and a half years after the statute of limitations has expired and four and a half years after the alleged preferential payments were made – because it obtained, again without any practical notice to Valeo, four extensions to serve its secretly-filed, sealed $19.5 million avoidance Complaint against Valeo ("**Extension Orders**").

Delphi is mistaken. The Extension Orders were obtained by Delphi without regard to the most fundamental notions of procedural due process – the right to constitutionally-sufficient notice and an opportunity to be heard. Because the Supreme Court and the Second Circuit have both held that orders issued in violation of due process are void (*i.e.*, a legal nullity), the Extension Orders must be vacated with respect to Valeo.

The vacation of the Extension Orders is also mandated because, if Delphi's improper actions are allowed to stand, Delphi will have orchestrated a process that will, for all practical purposes, eviscerate the purpose and intent of the two-year statute of limitations imposed by 11 U.S.C §546(a), effectively extending the Congressionally-mandated statute of limitations by over two years (and over three years with respect to foreign defendants).

Accordingly, Valeo seeks an order from the Court:

- Vacating the interlocutory Extension Orders pursuant to the Court's discretionary authority because: (a) enforcement of the orders would violate Valeo's due process rights; (b) cause did not exist to extend the time for service of the Complaint; and/or (c) the Complaint was improperly filed under seal pursuant to 11 U.S.C. §107;[2]

- Dismissing with prejudice the Complaint against Valeo, pursuant to Fed. R. Civ. P. 12(b)(6), made applicable by Fed. R. Bankr. P. 7012(b), on the ground that it: (a) is barred by the 2-year statute of limitations; and/or (b) does not comply with the pleading requirements of *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009);

- Dismissing purported defendants Valeo, Valeo Airflow Division, Valeo Climate Control USA, Valeo Electronics NA and Valeo Wiper Systems & Electronic

---

[2] To the extent the Court deems the Extension Orders to be "final" orders – which they are not – the orders should be vacated for the same reasons, pursuant to Fed. R. Civ. P. 60(b)(4), (5), (6), made applicable by Fed. R. Bankr. P. 9024.

2

Motors North America because they are not persons or corporations, do not exist, and, therefore, cannot be sued;

- Dismissing the Complaint because Delphi assumed over 125 Valeo contracts;

- Dismissing the Complaint with prejudice on the grounds that it is barred by the doctrines of laches, judicial estoppel or *res judicata*;

- Dismissing with prejudice the claims against those Defendants which received less than $250,000 in aggregate transfers and the foreign Defendants with prejudice because Delphi abandoned avoidance actions against parties receiving less than $250,000 in aggregate transfers and actions arising from "payments to foreign suppliers;" and

- In the alternative, as to any Defendants which are not dismissed, the Court should order Delphi to file a more definite statement with respect to its Complaint.

## STATEMENT OF FACTS

On October 8 and October 14, 2005, Delphi Corporation and certain of its subsidiaries and affiliates each filed voluntary petitions for relief under Title 11 of Chapter 11 of the United States Code (the "**Bankruptcy Code**").  The two-year statute of limitations for Delphi to bring avoidance actions expired in October 2007.  At Delphi's request, the Court in effect extended this statute of limitations on four separate occasions by keeping the Complaint under seal while extending the time to serve the Complaint.

### A.    Delphi's Preservation of Estate Claims Procedures And Extension Motions

#### 1.    Delphi's Preservation of Estate Claims Procedures Motion

On August 6, 2007, shortly before the two-year limitations period was set to expire, Delphi sought entry of an order seeking, among other things, the establishment of procedures for certain adversary proceedings, including those commenced under 11 U.S.C. §547.  As pertinent here, the procedures sought to include: (a) leave for the Debtors to file avoidance actions under seal; (b) an extension of time beyond the 120-day period provided for in Fed. R. Civ. P. 4(m) to serve summonses and complaints; and (c) a stay of adversary proceedings until service of process was effected.  (Preservation of Estate Claims Procedure Motion, D.I. 8905, ¶¶ 33-38) ("**First Extension Motion**").

Delphi justified its need for this relief by asserting that most of the adversary proceedings would be resolved by its bankruptcy reorganization plan (reported to be a 100 cent plan) and never pursued. (First Extension Motion ¶¶ 33-34). Indeed, because Delphi asserted the claims likely would be resolved by the 100 cent plan, Delphi argued that the proposed procedures would **not** "prejudic[e] the rights of any defendants." Quite to the contrary, Delphi asserted that the procedures would actually ***benefit the defendants*** by, among other things, allowing them to "avoid having to . . . retain counsel." (*Id.*) Delphi apparently believed that failing to provide the defendants with notice and an opportunity to be heard (and object) was a good thing, contending that the proposed procedures would "avoid unnecessarily alarming" the defendants. (*Id.* ¶ 37). Of course, failing to furnish notice to the defendants (and sealing the avoidance complaints) provided Delphi with an obvious and significant tactical advantage in its contract negotiations with its suppliers. (*Id.* ¶¶ 33-34, 37).

The First Extension Motion also sought authority to abandon certain causes of action, including avoidance actions for transfers to a party of less than $250,000 in the aggregate and those on account of "payments to foreign suppliers." (*Id.* ¶¶ 25, 26). The abandonment of these avoidance actions is discussed in detail below. Delphi also stated that it was its intention to abandon claims where "valid defenses exist." *Id.* ¶ 30.

On August 16, 2007, the Court entered an order authorizing, among other things: (i) the requested abandonment; (ii) an extension of time to March 31, 2008 to serve the adversary complaints; and (iii) the filing of the complaints under seal. (D.I. 9105) (the "**Procedures Order**").

### 2.    Delphi Secretly Commences An Adversary Proceeding Against Valeo

On September 29, 2007, Delphi secretly opened a Court file for an adversary proceeding against Valeo, seeking to recover more than $19.5 million in alleged preferential transfers. The

Defendants are unable to verify that the sealed Complaint was actually filed before the statute of limitations ran no later than October 13, 2007.

### 3.    The First Amended Joint Plan of Reorganization

On or about December 10, 2007, Delphi filed its First Amended Joint Plan of Reorganization, Docket No. 11386 (the **"Confirmed Plan"**), which was confirmed by order of the Court dated January 25, 2008.  (D.I. 12359) (the **"Confirmation Order"**).  The Confirmed Plan provided for the payment in full of unsecured creditors.  Exhibit 7.24 to the Confirmed Plan, which set forth the actions Delphi sought to retain under the plan, notably did not contain any reference to Valeo or Delphi's $19.5 million avoidance Complaint against Valeo.[3]  Thus, the Confirmed Plan implicitly represented that no avoidance action was being retained with respect to Valeo.

### 4.    Delphi's Second Extension of Avoidance Action Service Deadline Motion

On February 8, 2008, Delphi filed a motion seeking a second extension – until May 31, 2008 – to serve its sealed complaints.  (Extension of Avoidance Action Service Deadline Motion, D.I. 12922, ¶ 18) (**"Second Extension Motion"**).  The stated purpose for this second extension was to "enable the Debtors to fulfill their fiduciary responsibility to preserve valuable estate assets in a manner that would not unnecessarily disrupt the emergence process or the Debtor's current business relationships with potential defendants that are necessary to the Debtors' ongoing operations," as well as to reduce the "administrative and economic burdens" of the adversary proceedings to the Debtors, the Court, and the defendants."  (*Id.* ¶ 21).

---

[3] Section 14.3 of the Confirmed Plan and Modified Plan (defined below) provide that the Debtors "may alter, amend, or modify any Exhibits to this Plan under Section 1127(a) of the Bankruptcy Code **at any time prior to the Confirmation Date.**"  (Emphasis added).  The Confirmation Date was January 25, 2008.  Thus, after January 25, 2008, the Debtors did not have the right under the Modified Plan to amend or add to Exhibit 7.24 (renumbered as Exhibit 7.19 in the Modified Plan (defined below)).

5

The Second Extension Motion reaffirmed that Delphi would "not retain any causes of action asserted in the [adversary proceedings] **except those specifically listed in Exhibit 7.24 of the Plan**." (*Id.* ¶ 17) (emphasis added). In fact, Delphi stated that of the 742 adversary proceedings commenced under seal, only the claims related to Laneko Engineering Co., Wachovia Bank, National Association, Laneko Engineering Co, Inc., and their affiliates and subsidiaries (the "**Laneko Defendants**") were subject to the Procedures Order. (*Id.* ¶ 17 n.4). This fact was confirmed by the Court during an exchange with counsel for the Debtors during oral argument -- the Court stated that: "[t]he plan [only] reserve[d] or retain[ed] the ability to pursue a very small number of avoidance actions." (March 19, 2008 Tr. p. 22, attached to Valeo's Motion as Exhibit A).

The Court granted the second extension on March 28, 2008. (D.I. 13277, ¶ 2) (the "**Second Extension Order**").

### 5.    Delphi's Third Extension of Avoidance Action Service Deadline Motion

Days later, on April 4, 2008, Delphi announced that its plan investors had refused to fund their investments under the Confirmed Plan so that the necessary exit financing for the plan would not close.

Only days later (on April 10, 2008 – a mere 13 days after the Court granted the Second Extension Order), Delphi rushed to the Court and filed yet another motion seeking to further extend the service deadline, this time until 30 days after the substantial consummation of Delphi's plan. (Postconfirmation Extension of Avoidance Action Service Deadline Motion, D.I. 13361, ¶ 19) (the "**Third Extension Motion**"). Based on Delphi's April 4 announcement, this had the practical effect of extending the limitations period indefinitely, a fact that could not have been lost upon Delphi when it hastily made this latest request.

6

Despite its lack of funding, Delphi, once again, offered the same justification for its third request – to avoid "unnecessarily disrupt[ing] the emergence process or the Debtor's current business relationships with potential defendants that are necessary to the Debtor's ongoing operations." (*Id.* ¶ 22). Delphi also asserted that it and the avoidance defendants should not be required to expend resources on the adversary proceedings when "most of the Adversary Proceedings will not be prosecuted if the Plan were to become effective and likely not be prosecuted under any modified plan." (*Id.*)

Delphi's Third Extension Motion continued along the same path of lulling Valeo into believing that no avoidance action had or would be filed. For example, the Third Extension Motion expressly provided, once again, that only the claims related to the Laneko Defendants were preserved pursuant to the initial Procedures Order. *Id.* ¶ 18 n.4. Indeed, during oral argument, counsel for Delphi specifically represented and admitted that the:

> reasons we gave specific notice to Lenico (sic) and Wachovia was because ***those were the only two parties that had been identified under Exhibit 7.24 of the plan as having the avoidance actions preserved under the plan*** and, therefore, we gave particularized notice to them of the relief sought by the debtors.

(April 30, 2008 Tr. pp. 11-12, attached to Valeo's Motion as Exhibit B) (emphasis added).

Thus, during this entire time period, Delphi not only kept its Complaint a secret, but it specifically represented, time and again, that it had abandoned all avoidance actions – including as against Valeo – other than those filed against the Laneko Defendants.

The Court granted the requested third extension on April 30, 2008. (D.I. 13484, ¶ 2) (the "**Third Extension Order**").

### 6.    Delphi's Fourth Extension of Avoidance Action Service Deadline Motion

On October, 2, 2009 – four years after Delphi's bankruptcy petitions were filed, two years after expiration of the statute of limitations, and over a year after entry of the Third

7

Extension Order – Delphi filed yet another motion to extend the deadline for service of process, this time until 180-days after substantial consummation of the plan. (Supplemental Postconfirmation Extension of Avoidance Action Service Deadline Motion, D.I. 18952, ¶ 16) (**"Fourth Extension Motion"**) (and, together with the First, Second and Third Extension Motions, the **"Extension Motions"**). The effective date of the plan occurred on October 6, 2009. (D.I. 18958, ¶ 2).

The Court granted the fourth extension on October 22, 2009 (the **"Fourth Extension Order,"** D.I. 18999, ¶ 2) (and, together with the Procedures Order and the Second and Third Extension Orders, the **"Extension Orders"**). Importantly, during the October 22, 2009 hearing on Delphi's motion, the Court explicitly stated that the extension was without prejudice to the rights of the defendants in the avoidance actions to argue defenses other than statute of limitations. (October 22, 2009 Tr. p. 6, attached to Valeo's Motion as Exhibit C).

**B.**     <u>**Valeo Suffers Great Prejudice During the Time it has No Notice**</u>

During the time Delphi intentionally concealed the avoidance actions, Valeo was engaged in a global restructuring plan that was caused, in part, by the unprecedented changes in the automotive supplier market, including Delphi's bankruptcy. Declaration of Thomas F. Miller dated March 30, 2010 (the **"Miller Declaration"**), ¶ 5, attached to Valeo's Motion as Exhibit D. This restructuring included the closure and/or sale of numerous facilities, the sale of certain business units and the downsizing of more than 2,400 employees in the United States alone. *Id.* Many of these facilities, business units and employees were involved in Valeo's business with Delphi. *Id.*

Because Valeo received no notice of the Complaint, it took no special steps to organize and preserve its records with respect to Delphi, to hold exit interviews with employees who were knowledgeable about the Delphi business relationship or to make arrangements to keep in touch

8

with those employees in case Valeo would need them to provide litigation information or serve as witnesses. *Id.* ¶ 7. Additionally, during the four and a half years that have elapsed since the transfers were allegedly made, electronic data has become inaccessible due to records retention policies and system malfunctions. *Id.* ¶ 6. As a result, Valeo has suffered great prejudice, and will be harmed in its ability to defend this action because it did not know between 2007 and 2010 that this action had been filed.

### C.    Delphi Assumes Valeo Contracts

During the time after Delphi had commenced this adversary proceeding against Valeo but kept it concealed from Valeo, Delphi assumed over 125 Valeo executory contracts (the "**Assumed Valeo Contracts**") as part of sales of assets and its Modified Plan. Attached to the Valeo Motion as collective Exhibit E are excerpted pages from the Notice of Assumption and/or Assignment of Executory Contract or Unexpired Lease to Purchasers In Connection with Sale of Interiors and Closure Businesses (D.1. 10963) (one Valeo Assumed Contract); Notice of Assumption and/or Assignment of Executory Contract or Unexpired Lease to Buyers In Connection with Sale of Steering and Halfshaft Business (D.I. 12323) (two Valeo Assumed Contracts); July 10, 2009 Notice of Filing Parnassus Assumption and Assignment Notices (D.I. 18076) (119 Valeo Assumed Contracts)[4] and July 10, 2009 Notice of Filing GM Assumption and Assignment Notices (D.I. 18077) (four Valeo Assumed Contracts).

### D.    Delphi Finally Serves its Complaint – Four and a Half Years Later

After having provided no practical notice that a complaint had been filed against Valeo, Delphi finally served Valeo with the Complaint in March 2010[5] – two and a half years after

---

[4] Certain contracts between Delphi and Valeo Electrical Systems, Inc., Motors and Actuators Division were assigned to Nidec Motors & Actuators (USA) Inc., and therefore are Assumed Valeo Contracts.

[5] Delphi has named several defendants who are not separate legal entities – Valeo, Valeo Airflow Division, Valeo Climate Control USA, Valeo Electronics NA, Valeo Wiper Systems and Electronic Motors North America. Miller Declaration ¶ 3, attached to Valeo's Motion as Exhibit D.

expiration of the statute of limitations and four and a half years after the alleged preference

transfers were made.

Despite this delay, Delphi's Complaint is bare-bones, providing no information other

than the alleged "transfer date," "transfer amount" and "transfer type" for the numerous transfers

that Delphi seeks to avoid.  The Complaint does not identify which of the numerous Debtors

actually owed the money allegedly transferred or to which Valeo entity the money was allegedly

owed.  The Complaint also does not identify which Debtor actually made the alleged payments

(or out of which Debtor's bank account) or to which Valeo entity each payment was allegedly

made.  Indeed, the Complaint does not even allege that: (i) it was Delphi which, in fact, made the

transfers at issue; or (ii) the transfers were made to the Defendants.  Instead, the Complaint only

states, in the most general terms, that the Debtors "made, **or caused to be made**, the Transfers"

and that they were made "to, **or for the benefit of** [Valeo]." (Emphasis added.)  In fact, the

Complaint even fails to set forth the identity of the actual plaintiffs (*i.e.*, which Delphi entities

are suing Valeo); instead, the Complaint merely states that it is brought on behalf of "Delphi

Corporation ('Delphi') and other [unnamed] above-captioned debtors and debtors in possession."

## ARGUMENT

I.    **THE PROCEDURES ORDER AND EXTENSION ORDERS SHOULD BE
VACATED AS TO VALEO AS VOID BECAUSE THEY WERE ENTERED
WITHOUT    VALEO    HAVING    PRACTICAL    NOTICE    AND    AN
OPPORTUNITY    TO    RESPOND    IN    VIOLATION    OF    VALEO'S
FUNDAMENTAL DUE PROCESS RIGHTS.**

### A.    The Standard For Vacating Interlocutory Orders

The Procedures Order and the four Extension Orders are "interlocutory," rather than

"final" orders.  In order for a bankruptcy court order to be "final" within the meaning of 28

U.S.C §158(d), it "must completely resolve all of the issues pertaining to a discrete claim,

including issues as to the proper relief." *In re Fugazy Express, Inc.*, 982 F.2d 769, 776 (2d Cir.

1992).  This means that "'all the issues' . . . that are outstanding between particular parties, that

10

the bankruptcy court has under consideration or will be expected to rule upon, and that potentially may become the basis for appeal" must be completely resolved by the Bankruptcy Court's order. *In re Premier Operations*, 290 B.R. 33, 42 (S.D.N.Y. 2003) (citations omitted). Because the Procedures Order and Extension Orders did not resolve all of the disputed issues – such as Valeo's liability and the amount of damages, if any, to be awarded – the orders are not final. Indeed, courts generally deem procedural orders interlocutory because such orders do not finally resolve the substantive issues between the parties. *In re Hooker Invs., Inc.*, 937 F.2d 833, 836-37 (2d Cir. 1991) (bar date order not a final order); *In re Johns-Manville Corp.*, 824 F.2d 176, 180 (2d Cir. 1987) (order denying shareholder requests for official committee status not a final order); *In re Reliant Energy Channel View, L.P.*, 397 B.R. 697, 699-700 (D. Del. 2008) (bidding procedures order not final because it did not conclusively resolve all issues between the parties); *In re Adelphia Comms. Corp.*, 333 B.R. 649, 654-60 (S.D.N.Y. 2005) (order addressing proposed set of procedures to resolve inter-debtor issues not final because the order "direct[ed] the parties to engage in or participate in further proceedings and [did] not resolve any substantive issue"); *In re Bethlehem Steel Corp.*, 203 B.R. 554, 557 (D. Del. 1996) (order establishing procedures regarding reclamation claims not a final order because it did not resolve the validity, priority or value of the claims).

This Court is free to reconsider or modify its interlocutory orders in its discretion. *United States v. Uccio*, 940 F.2d 753, 757-58 (2d Cir. 1991). Moreover, while the law of the case doctrine does "inform[] the court's discretion," the law of the case doctrine does not limit a court's power and is not an inviolate rule. *Id.* at 758. The Second Circuit explained:

> the decision whether or not to apply law-of-the-case is, in turn, informed principally by the concern that disregard of an earlier ruling not be allowed to prejudice the party seeking the benefit of the doctrine. In this context "prejudice" does not mean harm resulting from the failure to adhere to the prior decision; "rather, it refers to a lack of sufficiency of notice" or a lack of sufficient

11

> "opportunity to prepare armed with the knowledge that [the prior ruling is not deemed controlling]."

*Id.* at 758 (internal citations omitted); *see also Prisco v. A & D Carting Corp.*, 168 F.3d 593, 607 (2d Cir. 1999).    Delphi unquestionably has already been provided ample notice and an opportunity to persuade this Court that the Court should not alter it prior Orders.

The Second Circuit has also made it clear that where, as here, a litigant was not given constitutionally-sufficient notice and an opportunity to be heard (and, therefore, "battle" for the court's prior decision), the law of the case doctrine does not foreclose, in any manner, the litigant's due process argument. *In re Johns-Manville Corp.*, __ F.3d __, 2010 WL 1007832, at *13 (2d Cir. 2010).    Accordingly, this Court has unfettered discretion to vacate its Procedures and Extension Orders.

Furthermore, even if the Court were to conclude that its Extension Orders are "final," the same relief requested by Valeo would be warranted under Fed. R. Civ. P. 60(b)(4), (5) and (6). Rule 60(b)(4), made applicable by Fed. R. Bankr. P. 9024, authorizes a court to relieve a party from a final order if the order is void. Fed. R. Civ. P. 60(6)(4).    A court must grant relief under this Rule if the order "is void because entry of order violates due process rights." *Fustok v. Conticommodity Services, Inc.*, 122 F.R.D. 151, 154-55 (S.D.N.Y. 1988) (citing *Textile Banking Co. v. Rentschler*, 657 F.2d 844, 850 (7th Cir. 1981)); *see also United States v. Castro*, 243 B.R. 380 (D. Ariz. 1999) (explaining that vacation of the order is mandatory, not discretionary).    Fed. R. Civ. P. 60(b)(5) and (6) also provide, in relevant part:

> On motion and just terms, the Court may relieve a party or its legal representative from a final judgment, order or proceeding for the following reasons . . . . (5) applying it [the order] prospectively is no longer equitable; or (6) any other reason that justifies relief.

**B.    Enforcing the Procedures Order and Extension Orders Would Violate Valeo's Due Process Rights**

Valeo respectfully submits that the combination of permitting Delphi to file its Complaint

under seal – thereby concealing from Valeo that it had been sued – while repeatedly extending

Delphi's time to serve process for nearly two and a half years after the expiration of the statute of

limitations – all without constitutionally-sufficient notice to Valeo – has resulted in a proceeding

completely devoid of procedural due process.  In fact, prior to the March 2010 unsealing of

Delphi's secret Complaint, Valeo had absolutely no information that would have allowed it to

anticipate that this preference action was forthcoming.  Indeed, the exact opposite is true; prior to

service, *every* representation made by Delphi, whether in its pleadings or oral argument,

suggested that no preference action would be filed against Valeo, let alone one seeking more

than $19.5 million.

It has been long recognized that: "The core of due process is the right to notice and a

meaningful opportunity to be heard."  *Lachance v. Erickson*, 522 U.S. 262, 266 (1998).  For

example, in *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313-14 (1950)

(citations omitted), the Supreme Court established what Due Process requires:

> [T]here can be no doubt that at a minimum [the Due Process
> Clause] require[s] that deprivation of life, liberty or property by
> adjudication be preceded by notice and opportunity for hearing
> appropriate to the nature of the case. . . . An elementary and
> fundamental requirement of due process in any proceeding which
> is to be accorded finality is notice reasonably calculated, under all
> the circumstances, to apprise interested parties of the action and
> afford them an opportunity to present objections.

Valeo submits that the Extension Orders are void as to it because Valeo did not receive

constitutionally-sufficient notice.

This conclusion is dictated by the Second Circuit's recent decision in *In re Johns-*

*Manville Corp.*, __ F.3d __, 2010 WL 1007832 (2d Cir. 2010).  In *Johns-Manville*, the Court

held that Chubb Indemnity Insurance Company's ("Chubb's") due process rights were violated

notwithstanding the fact that Chubb had received publication notice of the hearing that ultimately

13

led to the orders at issue.  In so doing, the Second Circuit explained that even if a third-party

receives notice of a hearing, due process prohibits binding the third-party where the party does

not have sufficient information that would allow it to intelligently understand that its rights were

going to be permanently affected (necessitating a need to appear and defend).  *Id.* at *16-20.

Indeed, the court concluded that, based on the information provided, Chubb could not anticipate

that its rights were being foreclosed.  The court explained:

> In order to comprehend that the contemplated channeling
> injunction would bar Chubb's *in personam,* non-derivative claims
> against Travelers, the recipient of this Notice would have to predict
> that the bankruptcy court would exceed its *in rem* jurisdiction in
> entering the 1986 Orders. Such a recipient would also have to be
> presumed to know-or to be able to discern from the 1984 Notice
> document-the factual extent of Travelers' relationship with
> Manville, which ultimately served as the lynchpin of the
> bankruptcy court's 2004 interpretation of the 1986 Orders. The
> bankruptcy court's factfindings are presently uncontested, and
> Chubb was undoubtedly a "sophisticated insurer" in the early
> 1980s. But we cannot attribute to Chubb the sort of prescience that
> these predictions would have required, and the August 2, 1984
> Notice was insufficient to communicate these issues.

*Id.* at *19 (internal citations omitted).

The exact sort of prescience would have been required of Valeo here.  Until March 2010,

Valeo had absolutely no knowledge or notice that a sealed avoidance complaint had been filed

against it two and a half years earlier.  Delphi abandoned numerous causes of action in its First

Extension Motion, and Exhibit 7.24 to the Confirmed Plan, which identified the actions Delphi

sought to retain, made no reference to Valeo or the Complaint.   Delphi also repeatedly

represented, both in its written pleadings and oral argument, that it was not retaining any

avoidance actions other than claims related to the Laneko Defendants.  Thus, prior to March

2010, every representation made by Delphi suggested that it would not pursue an avoidance

action against Valeo, and Valeo certainly had the right to take Delphi's express representations at

face value.  As in *Johns-Manville*, based on the information provided, Valeo could not predict,

14

from the way the proceedings were unfolding and the notice provided, that an avoidance action

was proceeding against it and that its rights would be permanently compromised unless it

objected to the various Extension Motions. As such, under *Johns-Manville*, it would violate

Valeo's due process rights if it were bound by the Extension Orders.

This Court has implicitly recognized this basic fact when it recently addressed whether

the unserved foreign defendants would need to seek relief from the uniform case management

order proposed by Delphi. The Court stated:

> Well, would they even have to seek relief if they're not a party. I
> mean, it's odd to say that they'd be bound if they're not party to an
> adversary proceeding that's been . . . served yet.

(April 1, 2010 Tr. p. 13, attached to Valeo's Motion as Exhibit F).

Moreover, Valeo's due process rights are not affected by the fact that Valeo knew of

Delphi's bankruptcy proceeding. In *City of New York v. New York, N.H. & H. R.R. Co.*, 344 U.S.

293 (1953), the Supreme Court expressly declared that the Due Process Clause entitles creditors

to reasonable notice from a bankruptcy court before they will be bound – even where the creditor

knew of the bankruptcy proceedings but did not monitor them. The Court stated:

> Nor can the bar order against New York be sustained because of
> the city's knowledge that reorganization of the railroad was taking
> place in the court. The argument is that such knowledge puts a
> duty on creditors to inquire for themselves about possible court
> orders limiting the time for filing claims. But even creditors who
> have knowledge of a reorganization have a right to assume that the
> statutory 'reasonable notice' will be given them before their claims
> are forever barred.

344 U.S. at 297. The Supreme Court has never wavered from this reasoning. *See, e.g., Richards*

*v. Jefferson County, Richards v. Jefferson County*, 517 U.S. 793, 800 n.5 (1996) (no duty to

intervene in suit in which the party is a stranger); *Martin v. Wilks*, 490 U.S. 755, 763 (1989) (no

duty to intervene where a party is entitled to notice and a hearing before its rights are affected);

15

*Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 799 (1983) ("a party's ability to take steps to safeguard its interests does not relieve the State of its constitutional obligation" to serve notice).

Accordingly, the Procedures Order and the Extension Orders must be vacated. *United Student Aid Funds, Inc. v. Espinosa*, __ S.Ct. __, 2010 WL 1027825, at *6 (2010) (where notice and an opportunity to be heard are not provided, the order is a "legal nullity").

## II.   THE COMPLAINT SHOULD BE DISMISSED BECAUSE IT IS BARRED BY THE TWO YEAR STATUTE OF LIMITATIONS FOR AVOIDANCE ACTIONS.

Because some or all of the Extension Orders should be vacated, Delphi's Complaint is barred by the two-year statute of limitations. Furthermore, because Valeo had no notice of the sealed Complaint, allowing Delphi to prosecute its claims now, two and a half years after the statute of limitations expired and four and a half years after the alleged preferential transfers were made, would result in unfair prejudice to Valeo and would eviscerate the purpose of the statute of limitations. Accordingly, the appropriate remedy is to bar Delphi's claim.

Section 546(a) of the Bankruptcy Code sets forth a statute of limitations for bringing avoidance claims:

> An action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of –
>
> (1) the later of –
>
> (A) 2 years after the entry of the order for relief; or
>
> (B) 1 year after the appointment or election of the first trustee under section 702, 1104, 1163, 1202, or 1302 of this title if such appointment or such election occurs before the expiration of the period specified in subparagraph (A); or
>
> (2) the time the case is closed or dismissed.

11 U.S.C. § 546(a). The statute of limitations began to run upon the Debtors' respective petition dates (October 8 and 14, 2005) and expired, at the latest, on October 13, 2007, two and a half years ago.

As a threshold matter, once some or all of the Extension Orders are vacated and/or modified, the service extensions contained therein will, correspondingly, be eliminated and, as a result, the claims asserted in the Complaint will have become time-barred. While this result may appear harsh at first blush, the extinguishment of Delphi's claims has, with all due respect, been brought about by ***Delphi's own strategic decisions*** – Delphi decided to keep the preference actions a secret in order to negotiate the most Delphi-favorable supply contracts it could with Valeo and the other defendants.

Delphi, quite simply, took a risk. Delphi elected to hide the avoidance actions from Valeo and the other defendants in order to negotiate more favorable contract terms than it otherwise would have been able to had the defendants known that Delphi was suing them (in Valeo's case, for more than $19.5 million). Having made this election, Delphi clearly undertook a risk that when the defendants were finally served, the avoidance actions would be dismissed for any number of reasons, including expiry of the statute of limitations. This risk was not unknown. The Court, for example, when granting the Fourth Extension Motion, specifically reminded Delphi that the extensions granted by the Court were without prejudice to the rights of the defendants in the avoidance actions to argue defenses other than statute of limitations. (October 22, 2009 Tr. p. 6, attached to Valeo's Motion as Exhibit C).

Valeo is simply doing precisely what the Court warned Delphi it might do based on Delphi's strategic decisions. In fact, courts regularly recognize that the Rule 4(m) requirement that a case be dismissed (and then refiled) must be followed even where, as here, the passage of time will result in the re-filed complaint being barred by the statute of limitations. *Burks v. Griffith*, 100 F.R.D. 491, 493 (N.D.N.Y. 1984); Wright & Miller, *Federal Practice & Procedure*, § 1137, p. 386-87 (3d ed. 2002) ("The dismissal-without-prejudice provision allows a plaintiff to refile the complaint as if it never had been filed, but it does not provide relief from <u>defenses</u>

17

based on the passage of time, such as the statute of limitations."). This Court informed Delphi that its actions were subject to the defendants' (including Valeo's) defenses and, accordingly, the dismissal is the result of the Delphi's own making. Allowing Delphi to profit, to Valeo's detriment, at both ends, would be inequitable and unfair.

Additionally, even if the Court refuses to vacate some or all of the orders, Delphi's avoidance claims still must be dismissed because it would be inappropriate to permit Delphi to bypass the statute of limitations through its efforts to delay service of the Complaint, particularly where, as here, the delay brought about by Delphi would effectively increase the Congressionally-mandated statute of limitations by more than two and a half years (or indefinitely had Delphi's plan never been substantially consummated), *all for the convenience of Delphi and at the expense of the defendants*. A statute of limitations, such as the two-year limitations period found in Section 546(a), is a statute of repose " 'enacted upon the presumption, that one having a well-founded claim will not delay enforcing it beyond a reasonable time, if he has the power to sue.' " *In re Cornwall*, 9 Blatchf. 114, 6 F. Cas. 586, 591 (C.C.D. Conn. Sept. Term 1871). "Statutes of repose are intended to give plaintiffs notice of the time within which they may prosecute legal claims and to alert potential defendants of the time beyond which their exposure to liability ceases." *Diversified Hospitality Group, Inc. v. Carson Pirie Scott & Co.*, No 90 CIV 2957 (WK), 1991 WL 35953, at *5 (S.D.N.Y. Mar. 8, 1991).

By keeping this action a secret for well over two years *after* the statute of limitations expired, Delphi deliberately chose a course of action that will guarantee that the evils the statute of limitations was designed to prevent will actually occur – evidence has likely been lost, memories have faded and witnesses have disappeared. *Order of R. Telegraphers v. Railway Express Agency, Inc.*, 321 U.S. 342, 348-49 (1944); *United States v. Kubrick*, 444 U.S. 111, 117 (1979) (statutes of limitation "protect defendants and the courts from having to deal with cases in

18

which the search for truth may be seriously impaired by the loss of evidence, whether by death or disappearance of witnesses, fading memories, disappearance of documents, or otherwise"). As a result, Valeo's ability to defend itself has been substantially impaired.  Miller Dec. ¶¶ 5-8, attached to Valeo's Motion as Exhibit D.  Sealing the complaint and waiting two and a half years to serve it on Valeo is, in fact, no different than if Delphi filed the Complaint long past the expiration of the statute of limitations.  And, of course, it is black-letter law that procedural rules, such as Rule 4(m) cannot "abridge, enlarge, or modify any substantive right." 28 U.S.C. § 2075; *In re Perrotta*, 406 B.R. 1, 8 (Bankr. D.N.H. 2009) ("Therefore, to the extent that the Bankruptcy Rules and the Bankruptcy Code are inconsistent, the statute controls.").

Accordingly, Valeo submits that Delphi's claims are barred by the statute of limitations and should be dismissed.

### III.    FOREIGN CLAIMS AND CLAIMS UNDER $250,000 SHOULD BE DISMISSED AS ABANDONED.

The preference claims against foreign defendants and defendants receiving less than $250,000 in transfers are barred by Delphi's abandonment of such claims in August 2007.[6]  In the First Extension Motion (D.I. 8905), Delphi sought authority to file certain preference complaints under seal, to extend the time to serve the complaints, and to abandon other claims.

Delphi divided the claims it was seeking authority to abandon into two categories:  claims it had already exercised its discretion and decided to abandon, and claims it might decide to abandon in the future.  The categories it had already decided to abandon included "any preference action against an entity if the aggregate value of transfers to or for the benefit of that entity is less than $250,000 in value" (the "**Under $250,000 Claims**").  First Extension Motion

---

[6] In its Complaint, Delphi does not specify which of the transfers it seeks to avoid went to which Defendants.  Upon information and belief, certain of the Defendants received less then $250,000 in the aggregate of transfers.  The claims against any such Defendants should be dismissed as abandoned Under $250,000 Claims.

¶ 25. Another category of preference claims Delphi had decided to abandon were claims against foreign suppliers (the "**Foreign Claims**"). Paragraph 26 of the First Extension Motion stated:

> 26.    **In addition, the Debtors seek authority to abandon the following categories of potential preference actions which the Debtors, in their business judgment, have decided should not be pursued:** (i) payments to parties with a secured or priority interest in such payment, (ii) union dues, (iii) pension plan contributions, (iv) payments required under the terms of collective bargaining agreements, (v) payments to reimburse employee business expenses, (vi) ordinary course wages, salaries, and benefits to employees (vii) payments required by a garnishment to satisfy third-party judgments and obligations, (viii) contributions to charitable organizations, (ix) **payments to foreign suppliers**, (x) payments to the Debtors' shippers, (xi) payments to the Debits' insurance providers, and (xii) payments to the Debtors' utilities. (Emphasis added.)

In contrast, there were categories where Delphi had not yet exercised its discretion to decide to abandon claims. For example, where a preference action was under $250,000 but against an insider or member or person associated with the SEC investigation, Delphi reserved the right to decide at a later date to abandon such claims, after notice to the Statutory Committee. First Extension Motion ¶ 25. Similarly, "[w]ith respect to other categories of causes of action, the Debtors anticipate that during their review they may identify additional causes of action which, in the exercise of their reasonable business judgment, should not be pursued." *Id.* ¶ 30. Delphi sought authority to abandon such claims in the future based on a procedure of giving notice to the Statutory Committee.

No objections were filed to the First Extension Motion. At the August 16, 2007 hearing on the motion, the Court indicated that some changes in the proposed order should be made to avoid ambiguity in the procedure for future abandonment and to preserve Delphi's rights under 11 U.S.C. §502(d) notwithstanding the abandonment of the preference claims. *See* Transcript August 16, 2007 at pages 9-11 (excerpted pages 1 through 11 of the Transcript are attached to Valeo's Motion as Exhibit G). No changes were made in the Order with respect to the categories

of claims Delphi had already decided to abandon, such as the Under $250,000 Claims and the Foreign Claims.

The Procedures Order maintains the differing treatment of claims, such as the Under $250,000 Claims and the Foreign Claims, which Delphi had already decided to abandon, and the categories of claims Delphi might, in its discretion, choose to abandon in the future.   The Procedures Order provides in Paragraph 5:

> The procedures set forth in the Motion to identify causes of action that should be preserved are approved.  **The Debtors are authorized, without the need for any further order or any further notice under Bankruptcy Rule 6007(a), to abandon those causes of action or categories of cause of action that debtors propose in the Motion to abandon.**  Subject to the procedures set forth in the Motion, the Debtors are further authorized to abandon certain causes of action not specifically identified in the Motion that they determine should not be pursued, including the categories of actions set forth in the Motion, without the need for any further order or any further notice under Bankruptcy Rule 6007(a).  The Debtors may abandon additional causes of action after giving notice to the Statutory Committees.  If a Statutory Committee objects within 10 days after service of the notice, the Debtors may bring the matter before this Court for a ruling on whether the proposed abandonment satisfies section 554(a) of the Bankruptcy Code. (Emphasis added.)

Delphi unambiguously stated its intent to abandon the Under $250,000 Claims and Foreign Claims.  Delphi filed the First Extension Motion for authority to abandon such claims, representing that it had already exercised its business judgment and decided to abandon the Under $250,000 Claims and Foreign Claims.  Delphi moved forward with the abandonment at the August 16, 2007 hearing on the motion.  Delphi obtained entry of the Procedures Order authorizing the abandonment.  *Cf. In Re Chartschlaa*, 538 F.3d 116, 123-124 (2d Cir. 2008) (intent to abandon ambiguous when motion was filed, but at hearing, trustee specifically requested court to take no action on the abandonment issue).

As a consequence of the abandonment, the Delphi estate was divested of any interest in or control over the Under $250,000 Claims and Foreign Claims:

21

> '[A]bandonment constitutes a divestiture of all interests in property
> that were property of the estate . . . Abandonment once
> accomplished is irrevocable, regardless of any subsequent
> discovery that the property had greater value than previously
> believed.' Abandonment under section 554 removes the property
> in question from the bankruptcy estate and causes the trustee to
> lose all interest, rights and control with respect to the abandoned
> property.

*In re Grossinger's Associates*, 184 B.R. 429, 432 (Bankr. S.D.N.Y. 1995).

Delphi's later filing of the Complaint asserting Under $250,000 Claims and Foreign Claims did not reinstate such claims as property of the estate. The Under $250,000 Claims and Foreign Claims were irrevocably abandoned by Delphi and must be dismissed.

## IV. PREPETITION PAYMENTS ON ASSUMED CONTRACTS CANNOT BE AVOIDED AS PREFERENTIAL

Delphi assumed and assigned the over 125 Assumed Valeo Contracts in connection with its sales of businesses and its plan of reorganization. See Exhibit E to Valeo's Motion. Because a preference action is precluded by a debtor's assumption of its agreement with the creditor, Delphi's assumption of the Valeo Assumed Contracts precludes Plaintiffs from establishing a *prima facie* case under 11 U.S.C. §547(b)(5). *In re Kiwi International Air Lines, Inc.*, 344 F.3d 311, 313-319 (3d Cir. 2003); *Development Specialists, Inc. v. 1114 6th Avenue Co., LLC*, bench ruling at page 16, No. 08-1418 (RDD) (March 5, 2009) ("Given the requirement under Section 365 to cure all defaults, including pre-petition defaults, under an executory contract before such contract can be assumed, the logic of the preference cases relied upon by the landlord was crystal clear to me."), *aff'd on other grounds*, 09-Civ-5047(DLC)(S.D.N.Y. September 4, 2009). (A copy of excerpted pages of the bench ruling is attached to Valeo's Motion as Exhibit H.) Thus the Complaint against Valeo should be dismissed because Delphi is precluded from avoiding transfers under the Assumed Valeo Contracts.

## V. THE COMPLAINT IS BARRED BY JUDICIAL ESTOPPEL.

The doctrine of judicial estoppel "prevents a party from asserting a factual position in a legal proceeding that is contrary to a position previously taken by [that party] in a prior legal proceeding." *In re Venture Mortgage Fund, L.P.*, 245 B.R. 460, 471 (Bankr. S.D.N.Y. 2000), *aff'd*, 282 F.3d 185 (2d Cir. 2002). Judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001). Courts have uniformly recognized that the purpose of judicial estoppel is to "protect the integrity of the judicial process ... by prohibiting parties form deliberately changing positions according to the exigencies of the moment." *Id.* at 749-750; *see also Rosenshein v. Kleban*, 918 F. Supp. 98, 104 (S.D.N.Y. 1996) ("Judicial estoppel is invoked ... to prevent the party from playing fast and loose with the courts, and to protect the essential integrity of the judicial process.). "The doctrine does not depend upon prejudice to the party invoking it." *Galerie Des Monnaies of Geneva, Ltd. v. Deutsche Bank, A.G., New York Branch (In re Galerie Des Monnaies of Geneva, Ltd)*, 55 B.R. 253, 260 (Bankr. S.D.N.Y. 1986).

The *New Hampshire* court observed that "the circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle." *New Hampshire*, 532 U.S. at 750 (internal citations omitted). The Second Circuit has identified two factors that must be satisfied to invoke the doctrine of judicial estoppel: (i) the party against whom estoppel is asserted took an inconsistent position in a prior proceeding, and (ii) the first tribunal adopted the inconsistent position in some manner, such as by rendering a favorable judgment. *In re Venture Mortgage Fund, L.P.*, 245 B.R. at 472.

As discussed in detail above, Delphi repeatedly represented to the Court (both orally and in writing) that, with respect to avoidance actions Delphi intended to preserve and pursue, it only intended to pursue claims against the Laneko Defendants. Delphi took this position in Exhibit

23

7.24 to the Confirmed Plan, confirmed this position in their Second Extension Motion and reaffirmed this position in their Third Extension Motion. The Court, in turn, accepted Delphi's position that it intended to pursue only four avoidance claims when it entered orders granting the relief sought by Delphi in its motions.

By bringing the Complaint against Valeo (and the other avoidance defendants), Delphi now takes the exact opposite position that: (i) it advanced in the prior motions; and (ii) was adopted by the Court. Valeo respectfully submits, pursuant to doctrine of judicial estoppel, that the Court should not sanction Delphi's attempt to "play fast and loose with the court" and allow Delphi to pursue 177 avoidance claims after Delphi previously, and consistently, stated it intended to pursue no more than four claims. Had the Court known, when ruling on the motions, that Delphi would actually file 177 (rather than four) avoidance actions, Valeo is confident that the Court would not have permitted Delphi to file its actions under seal and repeatedly extend the statute of limitations by over two years, all without providing practical notice to Valeo (and the other defendants). Indeed, when ruling on the motions, the Court ensured that the Laneko Defendants – the four preserved defendants – received actual notice of Delphi's motions.

Accordingly, Valeo requests that the Court exercise its discretion and apply the doctrine of judicial estoppel to prevent the Debtors from pursing their claims against Valeo, which Delphi repeatedly stated it would not pursue.

## VI.    THE COMPLAINT IS BARRED BY RES JUDICATA.

Delphi lacks standing to pursue the avoidance actions because it did not retain those actions in the Modified Plan, other than their claims against the Laneko Defendants, and did not have the authority under the Modified Plan to amend Exhibit 7.19/7.24 to preserve causes of action not listed in Exhibit 7.19/7.24. In addition, Delphi's claims should be barred by *res*

*judicata* because Delphi did not adequately describe the preserved causes of action in the Modified Plan so as to preserve the avoidance actions for the benefit of the estate.

It is black-letter law that "[t]he confirmation of a bankruptcy plan of reorganization must be accorded res judicata effect … [and] prevents the subsequent assertion of any claim not preserved in the plan as required by § 1123(b)(3)." *In re I. Appel Corp.*, 300 B.R. 564, 568 (Bankr. S.D.N.Y. 2003). "[T]he general rule is that, absent an express plan provision to the contrary, the debtor loses the right to bring bankruptcy causes of action, such as to recover a preference or for turnover, after the confirmed plan's effective date." Hon. William L. Norton, Jr. & William L. Norton III, Norton Bankruptcy Law and Practice §109:16 (3d. ed. 2009) (citing *Int'l Asset Recovery Corp. v. Thomsom McKinnon Sec. Inc.*, 335 B.R. 520, 525 (S.D.N.Y. 2005)).

As discussed above, on December 27, 2007, Delphi listed the causes of action it intended to preserve in Exhibit 7.19/7.24 to the Confirmed Plan. Article 7.24 of the Confirmed Plan and Article 7.19 Modified Plan state that "Causes of Action against Persons arising under section 544, 545, 547, 548, or 553 of the Bankruptcy Code or similar state laws shall not be retained by the reorganized Debtors unless specifically listed on Exhibit 7.24 [7.19 in the Modified Plan]." Upon entry of the Confirmation Order on January 25, 2008, Delphi lost the ability to amend Exhibit 7.19/7.24. Accordingly, Delphi is barred by application of *res judicata* from pursuing any causes of action other than those specifically preserved in Exhibit 7.19/7.24.

Additionally, even if the Court finds that Delphi had the right to amend Schedule 7.19/7.24, Delphi has not adequately described the avoidance actions in order to preserve them under the Modified Plan. Exhibit 7.19/7.24 provided no information on the avoidance causes of action to be retained – it did not disclose the identity of the defendant or, more importantly, the value of the claims. Indeed, because all of the complaints were filed under seal, neither the

25

creditors nor the potential defendants could review the preserved causes of action to glean this

information.   Moreover, neither the Amended Disclosure Statement [D.I. 17071] nor the

Modified Plan included any discussion of Delphi's reversal of its position with respect to

pursuing claims only against the Laneko Defendants.   In short, Delphi only provided a blanket

reservation, which is insufficient to avoid the *res judicata* effect of a confirmed plan.  *Browning*

*v. Levy,* 283 F.3d 761, 764 (6th Cir. 2002).  The Sixth Circuit explained:

> NW's blanket reservation was of little value to the bankruptcy
> court and the other parties to the bankruptcy proceeding because it
> did not enable the value of NW's claims to be taken into account in
> the disposition of the debtor's estate.   Significantly, it neither
> names SSD nor states the factual basis for the reserved claims.  We
> therefore conclude that NW's blanket reservation does not defeat
> the application of res judicata to its claims against SSD.

*Id.* at 775.[7]

Accordingly, Delphi's claims against Defendant should be dismissed.

## VII.    THE COMPLAINT IS BARRED BY LACHES.

Delphi's Complaint should also be barred by laches.   A defendant may prevail on a

laches defense if it establishes: (1) that it lacked knowledge that the claim might be asserted

against it; (2) that the plaintiff delayed asserting the claim despite an opportunity to do so; and

(3) that it would be prejudiced if the claim were now allowed to go forward.  *In re Gucci*, 197

Fed. Appx. 58, 60 (2d Cir. 2006); *Rapf v. Suffolk Cty*, 755 F.2d 282, 292 (2d Cir. 1985).

First, as described above, Valeo had no knowledge that a claim would be asserted against

it.  Second, Delphi had numerous opportunities to assert its claim against Valeo, particularly

after Delphi knew that its creditors would no longer be paid 100 percent and that certain

---

[7] While other courts have held that a general reservation of claims is sufficient, they have done so in the
context of reorganizations where the debtors have not had time to identify and evaluate potential claims.
For example, in *In re I. Appel Corp,* 300 B.R. 564 (S.D.N.Y. 2003), the court found that "mandating a
specific description of every claim the debtor intends to pursue could entail months or years of
investigation and a corresponding delay in the confirmation of the plan of reorganization." *Id.* at 569.
There was no such risk of causing delay to Delphi in this case by imposing such a requirement.

avoidance actions would be prosecuted (there was no justification for keeping the complaints a secret after this date). Instead, Delphi chose to conceal the claim for two and a half years after the statute of limitations expired and four and a half years after the purported preferential transfers were made. Third, as described above, Valeo would be severely prejudiced if the action is allowed to go forward. Facilities and business units that did business with Delphi have been closed or sold. Records have been dealt with without efforts to organize and preserve them as to Delphi, employees have left, etc. Moreover, Valeo took positions in business negotiations with Delphi that it would not have taken if it had known Delphi had sued it. The only party to benefit from the secrecy is Delphi, all to Valeo's detriment.

Accordingly, the Complaint should be dismissed for laches.

## VIII. THE PROCEDURES ORDER AND EXTENSION ORDERS SHOULD BE VACATED FOR ADDITIONAL REASONS.

### A.    The Procedures Order and Extension Orders Should Be Vacated Because There Was No Cause To Extend The Time For Service

Even in the absence of Delphi's due process violations – which alone mandate that the Extension Orders be vacated – the orders should be vacated on several additional grounds. First, cause simply did not exist for the repeated extension requests made by Delphi. Pursuant to Fed. R. Civ. P. 4(m), made applicable by Fed. R. Bankr. P. 7004, courts can only extend a plaintiff's time for service upon: (i) a showing of "good cause;" or (ii) where the court finds that a discretionary extension of service is appropriate. *Eastern Refractories Co. v. Forty Eight Insulations, Inc.*, 187 F.R.D. 503, 505-06 (S.D.N.Y. 1999). Under either test, it was Delphi's burden to establish entitlement to an extension. And, where, as here, the delay in service is substantial, this burden is a heavy one to overcome. *Spinale v. United States*, 2005 WL 659150, at *3 & *4 (S.D.N.Y. Mar. 16, 2005).

### 1.    "Good Cause" Did Not Exist

27

"Good cause" exists only in "exceptional circumstances where the plaintiff's failure to serve process in a timely manner was the result of circumstances beyond its control." *Eastern Refractories*, 187 F.R.D. at 505. That is not the case here. Delphi could have easily served the avoidance complaints at any time; instead, Delphi made the conscious decision to seal the complaints and make no effort to serve them.

In fact, good cause cannot exist where, as here, Delphi's failure to serve its complaints was part of an admitted strategy to obtain a tactical advantage over Valeo (and the other avoidance defendants) when renegotiating the parties' ongoing and/or future business relationships. The dynamics of the negotiations between Delphi and Valeo would have unquestionably changed had Valeo known, when it was negotiating with Delphi, that Valeo was going to be sued for the return of millions of dollars.

In support of its Extension Motions, Delphi claimed that good cause existed because: (i) future events would have likely "obviated the need to serve the [] complaint;" and (ii) it had requested the extension before the deadline expired, citing *Bank of Cape Verde v. Bronson*, 167 F.R.D. 370 (S.D.N.Y. 1996). *Bank of Cape Verde* is, however, inapplicable. In *Bank of Cape Verde*, the third-party plaintiff was pursuing good faith settlement negotiations with the plaintiff and the third-party defendants knew of the plaintiff's complaint (the plaintiff having already served all or most of the parties to the action prior to the expiration of the 120-day deadline). This is a far cry from the situation here, where Valeo was not, and could not have been in settlement negotiations with, Delphi because it did not know it had been sued (and, thus, could not take action to preserve evidence or protect itself). Moreover, as discussed below, the idea that future events would "obviate the need to serve the [] complaint" ended (to the extent it ever existed in the first place) when the plan investors refused to provide funding in April 2008, before entry of the Third and Fourth Extension Orders.

28

### 2.    The Facts Did Not Warrant A Discretionary Extension

Notwithstanding the lack of good cause, a court may still conclude that a discretionary

extension is appropriate.  Four factors are to be considered in this regard:

> (1) whether the applicable statute of limitations would bar the re-filed action; (2) whether the defendant had actual notice of the claims asserted in the complaint; (3) whether the defendant had attempted to conceal the defect in service; and (4) whether the defendant would be prejudiced by the granting of plaintiff's request for relief from the provision.  *Eastern Refractories*, 187 F.R.D. at 506.

Here, Valeo did not have notice of the claims asserted in the complaint (factor 2) and, of course,

never attempted to conceal that it had not been served (factor 3).

Moreover, there can be no doubt that Valeo has been prejudiced by the multiple

extensions (factor 4).  The alleged preferential payments occurred four and a half years ago and

the statute of limitations expired two and a half years ago.  During this time, Valeo closed or sold

facilities and business units that conducted business with Delphi and, because it had no notice

(which Delphi unquestionably withheld), Valeo took no special steps to preserve its records, to

hold exit interviews with those who were knowledgeable about the Delphi business relationship

or to make arrangements to keep in touch with those who could provide litigation information,

necessitating obtaining pertinent documents from Delphi instead of its own records.  Valeo's

ability to defend itself has been substantially impaired.

Indeed, by keeping this action a secret for over two years *after* the statute of limitations

expired, Delphi intentionally choose a course of action that, as discussed above, ensures the evils

the statute of limitations were designed to prevent will actually occur.  *Order of R. Telegraphers*,

321 U.S. at 348-49.  Simply stated, the purposes of the statute of limitations will be eviscerated if

cause is found to have existed.  *Bd. of Regents v. Tomanio*, 446 U.S. 478, 487 (1980); *Kubrick*,

444 U.S. at 117 (1979).

While it is clear that vacation of all or some of the Extension Orders will result in Delphi's claims being barred by the statute of limitations (factor 1), this fact, standing alone, did not warrant the granting of an extension. Courts have repeatedly recognized that "[t]he fact that plaintiff's claims may be time-barred does not require us to exercise our discretion in favor of plaintiff." *Eastern Refractories*, 187 F.R.D. at 506; *McKibben v. Credit Lyonnais*, 1999 WL 604883, at *4 (S.D.N.Y. Aug. 10, 1999) (denial of an extension "is still proper if it occurs after the expiration of the applicable statute of limitations period, and its effect is to bar the plaintiff's claims"). As the Supreme Court explained: "[E]ven if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and the right to be free from stale claims in time comes to prevail over the right to prosecute them." *Order of R. Telegraphers*, 321 U.S. at 349. Federal courts of appeals have, in fact, concluded that trial courts may revoke a previously granted Rule 4(m) extension if the court later determines that the extension was inappropriate (particularly where, as here, the defendant was not given notice or an opportunity to be heard in the first instance):

> [Rule 4(m)] does not address the authority of a district court that has granted [] an extension to revoke it if it subsequently determines that good cause had not been shown. We discern no reason why a district court should not be able to do so, especially were (as here) the party to be served was initially not given notice of the motions to extend or given a formal opportunity to respond to them. . . . If a district court concludes that good cause had not been shown, it is within its discretion to vacate its prior extension of time for effecting service that was based upon that erroneous foundation.

*McCrae v. KLLM Inc.*, 89 Fed. Appx. 361, 363 (3d Cir. 2004).

The statute of limitations issue Delphi now faces is entirely the result of Delphi's own making. After the plan funding fell through in early 2008, Delphi could no longer argue that it would not have to proceed with some or all of the preference actions. Indeed, as the facts changed, the original alleged motivation for the extension, a 100 cent plan, completely fell away.

30

By that time, Delphi also knew (or should have known) that it had been three years since the preference payments had purportedly been made, that the statute of limitations period had expired and that Valeo was closing its facilities. Delphi, nevertheless, intentionally decided to seek an indefinite extension of the time to serve the complaints and to keep the complaints a secret (in order to continue to obtain a tactical advantage in their negotiations with various defendants). *See supra.* Delphi must now live with the consequences of its actions. Simply, Delphi's decision to conceal the avoidance actions in order to secure a better negotiating position (a decision that worked) should not have also been cause, good or otherwise, to allow Delphi to benefit, again at the expense of Valeo, by allowing Delphi to avoid service of its Complaint and indefinitely extend the statute of limitations.

Accordingly, the Extension Orders should be vacated because there was no cause to extend (or continue to extend) the time for service.

**B.      The Extension Orders Should Be Vacated Because The Complaints Were Improperly Sealed**

Finally, the Extension Orders should be vacated because Delphi improperly obtained leave to file its avoidance complaints under seal.

Under 11 U.S.C. §107 (relied upon by the Debtors), papers filed in bankruptcy proceedings "are public records and open to examination by an entity at reasonable times without charge." 11 U.S.C. § 107(a). This Congressional presumption of public access "is rooted in the public's First Amendment right to know about the administration of justice." *In re Food Mgt. Group, LLC*, 359 B.R. 543, 553 (Bankr. S.D.N.Y. 2007). Indeed, "public interest in openness of court proceedings is at its zenith when issues concerning the integrity and transparency of bankruptcy court proceedings are involved." *Id.*

Because the statute reflects strong policy considerations, section 107 sets forth only two narrowly-defined exceptions – documents can be filed under seal if they: (i) contain sensitive

31

commercial information; or (ii) defamatory material. Section 107(b) provides: the

> bankruptcy court may – (1) protect an entity with respect to a trade
> secret or confidential research, development, or commercial
> information; or (2) protect a person with respect to scandalous or
> defamatory matter contained in a paper filed in a case under this
> title.

Motions to seal documents are "disfavored" and, as a general rule "should be entered only when actually necessary to protect a party from harm." *In re Gitto Global Corp.*, No. 05-10334, 2005 WL 1027348, at *7 (D. Mass. May 2, 2005) (citing *In re Sherman-Noyes & Prairie Apartments Real Estate*, 59 B.R. 905, 909 (Bankr. N.D. Ill. 1986)). Another court explained: "It is a highly unusual and extraordinary remedy for the Court to seal the records in any case because of the generally-recognized rule of law that the public has a right to know." *In re EPIC Assocs. V*, 54 B.R. 445, 448 (Bankr. E.D. Va. 1985).

Here, Delphi claimed that it needed special protection in order to preserve both the "status quo" and their "existing business relationships" and that this amounted to "commercial information" under the statute. (First Extension Motion, ¶ 33-34). In so doing, Delphi claimed that it had "worked to preserve and repair their business relationship with many of the potential defendants during these cases and h[ad] negotiated or regained favorable credit terms with may suppliers and [were] continuing to do so." (*Id.* ¶ 37).

This rationale, however, cannot possibly rise to the "exceptional circumstances" envisioned by Congress. The need to protect one's business operations and supplier relationships exists in every corporate reorganization. This garden-variety concern is not "unusual" or "exceptional" in any sense, and to so hold would eviscerate section 107's clear protections. Indeed, because the motivation advanced by Delphi exists in nearly every case, bankruptcy courts recognize that: "Protective orders have been denied when they were sought merely to facilitate the debtors' reorganization, or to assuage a defendant's fears that disclosure of the allegations in an adversary complaint would adversely affect its business activities." *EPIC*

32

*Assocs.,* 54 B.R. at 449. The *EPIC Associates* court specifically stated that records cannot be sealed to "facilitate the rehabilitation of the debtors" alone. *Id.* at 448-49.

Moreover, the Second Circuit has expressly defined "commercial information" to be "information which would cause an ***unfair advantage to competitors*** by providing them information as to the commercial operations of the debtor." *In re Orion Pictures Corp.*, 21 F.3d 24, 27 (2d Cir. 1994) (emphasis added). Nothing in Delphi's bare-bones, sealed Complaint involves information that would give an "unfair advantage to competitors" – Valeo is not and has never been a competitor of the Debtors and none of the information in the sealed-Complaint has anything to do with confidential "commercial operations of the debtor."[8]

Accordingly, the Extension Orders should also be vacated on this ground.

## IX.    THE COMPLAINT FAILS TO PLEAD FACTS SUFFICIENT TO STATE A CLAIM FOR RELIEF AND SHOULD BE DISMISSED.

Finally, Delphi's Complaint does not state a claim for relief under 11 U.S.C. § 547, and, therefore, must be dismissed pursuant to Rule 7012.

In *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court established the standard by which federal courts are to determine motions to dismiss. Under *Twombly*, to survive a motion to dismiss, the complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Id.* at 570. A pleading that only offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not suffice. *Id.* at 555. The Supreme Court recently elaborated on its holding in *Twombly*:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations

---

[8] In support of their proposition that maintenance of ongoing business relationships was "commercial information" entitled to protection, the Debtors cited *In re Service Merchandise,* Case No. 399-02649 (Bankr. M.D. Tenn. Feb. 27, 2001). There, the court granted the debtors authority to seal certain adversary proceedings so that they could continue negotiations with the defendants, who were also the debtors' business partners. Even if the ruling were correct as a matter of law, which Valeo strongly disputes, the unpublished case is inapposite to the situation here as Valeo was not a business partner of the Debtors and actually had to close facilities which had done business with Delphi.

> contained in a complaint is inapplicable to legal conclusions.
> Threadbare recitals of the elements of a cause of action supported
> by mere conclusory statements, do not suffice. Rule 8 marks a
> notable and generous departure from the hyper-technical, code-
> pleading regime of a prior era, but it does not unlock the doors of
> discovery for a plaintiff armed with nothing more than
> conclusions.  Second, only a complaint that states a  plausible
> claim for relief survives a motion to dismiss.  Determining whether
> a complaint states a plausible claim for relief will, as the Court of
> Appeals observed, be a context-specific task that requires the
> reviewing court to draw on its judicial experience and common
> sense.  But where the well-pleaded facts do not permit the court to
> infer more than the mere possibility of misconduct, the complaint
> has alleged—but it has not "show[n]"—"that the pleader is entitled
> to relief." Fed. Rule Civ. Proc. 8(a)(2).
>
> In keeping with these principles a court considering a motion to
> dismiss can choose to begin by identifying pleadings that, because
> they are no more than conclusions, are not entitled to the
> assumption of truth. While legal conclusions can provide the
> framework of a complaint, they must be supported by factual
> allegations. When there are well-pleaded factual allegations, a
> court should assume their veracity and then determine whether
> they plausibly give rise to an entitlement to relief.

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949, 1950 (2009) (emphasis added; internal citations to

*Twombly* and corresponding quotation marks omitted).

In *Angell v. Haven (In re Careamerica)*, 409 B.R. 346 (Bankr. E.D.N.C. 2009), the

bankruptcy court applied the Supreme Court's holding in *Twombly* to a preference action. The

defendant filed a motion to dismiss the trustee's claims to avoid alleged preferential and

fraudulent transfers. The bankruptcy court concluded that, based on the Supreme Court's

holdings in *Twombly*, the trustee's complaint must plead sufficient factual allegations to establish

that a preference cause of action is plausible.  *Id.* at 350.  The bankruptcy court then analyzed

each element of the preference statute to determine if sufficient factual allegations were pleaded.

The bankruptcy court held that the trustee's complaint did not contain sufficient factual

allegations to show it was plausible that a transfer of an interest of the debtor in property had

occurred because the complaint failed to identify which of the debtors made the alleged transfers.

*Id.* Moreover, the bankruptcy court held that the trustee's complaint did not contain sufficient

factual allegations to show it was plausible that the alleged transfers were made on account of an

antecedent debt. The bankruptcy court explained that "the trustee must assert the nature and

amount of the antecedent debt in order to allege a plausible claim for relief." *Id.* at 351. The

trustee's complaint merely recited the statutory element that the transfer was made "for, or on

account of, an antecedent debt owed by the Debtors to the Defendant before the transfers were

made." *Id.* The complaint lacked any facts showing the existence of an antecedent debt. The

bankruptcy court explained that in order to satisfy the pleading requirements under *Twombly*

"the trustee must allege facts regarding the nature and amount of the antecedent debt which, if

true, would render plausible the assertion that a transfer was made for or on account of such

antecedent debt." *Id.*

Like the complaint at issue in *Careamerica*, the Complaint to Avoid and Recover

Transfers Pursuant to 11 U.S.C. §§547 and 550 in this case (attached to Valeo's Motion as

Exhibit I) does not contain sufficient factual matter to state a claim for relief under Section 547

that is plausible on its face. The Complaint contains nothing more than a formulaic recitation of

the elements of a claim for relief under 11 U.S.C. § 547. The Complaint contains no factual

allegations other than a list of alleged transfers contained in Exhibit 1 to the Complaint. *Id.*

First, the Debtors do not allege that they actually made the alleged transfers listed on

Exhibit 1. Instead, the Debtors allege that they "made, or caused to be made," the alleged

transfers. *Id.* ¶¶ 10, 12 and 13.

Second, like the complaint dismissed by the court in *Careamerica*, the Complaint here

does not identify the Debtor(s) that are alleged to have made the transfers listed on Exhibit 1.

Instead, the Complaint alleges that the alleged transfers were made by "Plaintiffs" which are

defined to include "all of the Debtors in the above-captioned chapter 11 cases." *Id.* p.2 n.1.

35

Third, the Complaint does not identify the recipient of any alleged transfer. The Complaint names eight (8) different entities that allegedly received transfers but fails to identify the transfers allegedly received by each such entity. *Id.* ¶¶ 3, 10, 12 and 13. Moreover, the Complaint alleges that the transfers were made "to, or for the benefit of Defendants" leaving open the possibility that the transfers were made to some unidentified third party. *Id.* ¶ 12. Finally, like the trustee's complaint in *Careamerica*, the Complaint in the instant case does not allege any facts regarding the nature or amount of the antecedent debt.

Fourth, the Complaint does not identify the contracts under which the alleged transfers were made, despite there being over 125 Assumed Valeo Contracts.

Accordingly, the Court should dismiss the Complaint under *Iqbal* and *Twombly* .

## X.    THE COMPLAINT SHOULD BE DISMISSED AS TO ENTITIES WHICH DO NOT EXIST.

Delphi has named several defendants that are not separate legal entities, Valeo, Valeo Airflow Division, Valeo Climate Control USA, Valeo Electronics NA and Valeo Wiper Systems & Electronic Motors North America. Miller Declaration ¶ 3, attached to Valeo's Motion as Exhibit D. Valeo, therefore, moves to have those entities struck from the Complaint and the case dismissed as against them.

## XI.    IN THE ALTERNATIVE, DELPHI SHOULD BE REQUIRED TO FILE A MORE DEFINITE STATEMENT.

In any event, to the extent the Court concludes that the Complaint should not be dismissed under *Iqbal* and *Twombly*, Valeo respectfully requests that the Court order Delphi, pursuant to Fed. R. Civ. P. 12(e), made applicable to these proceedings by Fed. R. Bankr. P. 7012, to file a more definite statement, addressing the deficiencies outlined above.

## XII.    DEFENDANTS INCORPORATE ALL APPLICABLE ARGUMENTS RAISED BY OTHER DEFENDANTS IN THEIR DISMISSAL MOTIONS.

Numerous motions have been filed by the defendants in other various avoidance actions. These motions seek the dismissal of the avoidance complaints on various legal grounds. Because the facts surrounding those actions are, in many respects, similar to those found here, Valeo incorporates all applicable arguments raised by the other defendants in their dismissal motions.

## CONCLUSION

Delphi's concealment of the Complaint from Valeo and the delay in service for two and a half years has unduly prejudiced Valeo and violates its basic legal rights, including under the Due Process Clause. Delphi's Complaint was not served on Valeo until well after the expiration of the statute of limitations and four and a half years after the alleged preferential transfers were made and, therefore, should be dismissed to prevent Delphi from impermissibly using the procedural rules to expand the Congressionally-mandated two-year statute of limitations. Delphi's claims are also barred by judicial estoppel, laches and *res judicata*. Moreover, Delphi abandoned certain claims, including the Under $250,000 Claims and Foreign Claims, and Delphi assumed the over 125 Assumed Valeo Contracts. The Complaint must also be dismissed under Fed. R. Civ. P. 12(b) due to Delphi's failure to satisfy the pleading requirements of Fed. R. Civ. P. 8 (or, in the alternative, a more definite statement should be ordered). Finally, the Complaint should be dismissed because there was no cause to extend the time for service, because the Complaint was improperly served, and because the Complaint names non-existent entities as defendants.

Respectfully submitted,

HONIGMAN MILLER SCHWARTZ AND COHN LLP

Attorneys for Valeo Climate Control Corp.,
Valeo Electrical Systems, Inc., Valeo, Inc. and
Valeo Schalter und Sensoren GmbH

By: /s/ Judy B. Calton _____
    I. W. Winsten (P30528)
    Judy B. Calton (P38733)
    E. Todd Sable (P54956)
    Marcia Bennett Boyce (P67584)
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226-3506
Telephone:  (313) 465-7344
Facsimile:  (313) 465-7345
e-mail:  jcalton@honigman.com

Dated:  May 11, 2010

DETROIT.4155969.10

38