BARNES & THORNBURG LLP
Attorneys for Bank of America, N.A.
171 Monroe Avenue, NW, Suite 1000
Grand Rapids, MI  49503
Telephone:  (616) 742-3930
Facsimile:  (616) 742-3999

Patrick E. Mears (PM-6473)
Telephone: (616) 742-3936
Email: pmears@btlaw.com

John T. Gregg, Admitted Pro Hac Vice
Telephone: (616) 742-3945
Email: jgregg@btlaw.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re | ) | Chapter 11 Case |
| | ) | |
| DELPHI CORPORATION, *et al*. | ) | No. 05-44481 |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**RESPONSE OF BANK OF AMERICA, N.A. TO FORTY-SEVENTH
OMNIBUS CLAIMS OBJECTION OF REORGANIZED DEBTORS
(Claim No. 19602 filed in Delphi Automotive Systems Human Resources LLC Case)**

Bank of America, N.A. (the "Bank" or "Claimant"), by and through its undersigned counsel, for its Response to the "Books and Records" Objection to the Bank's administrative claim evidenced by Claim No. 19602, and which Objection was filed by DPH Holdings Corp. and certain of its affiliated reorganized debtors in the above-captioned cases (collectively, the "Reorganized Debtors"). The Reorganized Debtors' objection to this claim is set forth in their Forty-Seventh Omnibus Objection to Claims dated April 16, 2010 (the "Claim Objection"). As a Response to the Claim Objection, the Bank states as follows:

**FACTUAL AND PROCEDURAL BACKGROUND**

1.     On October 8 and 14, 2005, Delphi Corporation and certain of its affiliates including Delphi Automotive Systems, LLC ("DASLLC") and Delphi Automotive Systems Human Resources, LLC (collectively, the "Debtors"), who are the predecessors of the Reorganized Debtors, filed voluntary petitions with this Court for reorganization relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. § 101-1330, as then amended (the "Bankruptcy Code").

2.     Prior to the commencement of these Chapter 11 cases, Fleet National Bank, the predecessor-in-interest to Claimant, leased two aircraft, engines and related avionics (collectively, the "Aircraft"), to SM5105 LLC, a Delaware limited liability company and predecessor-in-interest to Delphi Automotive Systems Human Resources, LLC ("Delphi HR"). One of the Aircraft was a Learjet 60 Aircraft (the "Learjet") and the other Aircraft was a Bombardier Challenger 604 Aircraft (the "Challenger"). The specifics of these two Aircraft leases (hereinafter collectively referred to as the "Aircraft Leases") are described in detail in Schedule A to Bank's Administrative Expense Claim No. 19602 dated August 27, 2009, and filed with the claims agent appointed in these Chapter 11 cases on September 15, 2009 (the "Bank Claim No. 19602"). Copies of the Aircraft Leases and other documents relevant to them and to Bank Claim No. 19602 are attached as exhibits to the Bank Claim No. 19602 and are specifically described in Schedule A to that claim.

3.     Pursuant to the terms of the Aircraft Leases, Delphi HR granted to the Bank, as security for the performance of Delphi HR of its obligations under those leases, security interests and liens in the tangible and intangible property of Delphi HR including the following:

        a.     all subleases, management agreements, interchange agreements, charter agreements, purchase orders or agreements, aircraft leases and/or other

2

        agreements of any kind whatsoever relating to any of the foregoing or to any other goods, documents, things or items described in financing statements filed in the State of Delaware and the proceeds thereof;

    b.    all security deposits in connection with the Aircraft Leases;

    c.    all present and future goods, accounts, chattel paper, documents, instruments, general intangibles, investment property, deposit accounts, letter of credit rights and supporting obligations relating to the Aircraft Leases and the personal property relating to these leases;

    d.    all proceeds of any of the foregoing property; and

    e.    all documents, books and records, and other information no matter where stored relating to the Aircraft Leases.

The foregoing property serving as collateral is hereinafter described as the "Ancillary Personal Property."

4.    Payment and performance of the obligations of Delphi HR under the Aircraft Leases were guaranteed in writing by DASLLC and Delphi Corporation (collectively, the "Guarantors") pursuant to the terms of certain written guaranties executed by them for the benefit of the Bank.

5.    As of the dates on which these Chapter 11 cases were commenced, the Aircraft Leases were in full force and effect and Delphi HR was in possession of the two Aircraft and Ancillary Personal Property. During the terms of the Aircraft Leases prior to October 8, 2005, Delphi HR was party to charter agreements concerning the two Aircraft pursuant to which the Learjet and Challenger were chartered from time to time to third parties in return for rents and/or other charges payable to Delphi HR. These payments and the underlying obligations to make these payments by third parties falls within the category of "Ancillary Personal Property" and served as collateral for the Bank under the terms of the Aircraft Leases.

6.    On November 11, 2005, Bank filed with this Court its "Motion (I) to Provide Adequate Protection of Security Interest in Collateral; and (ii) to Terminate the Automatic Stay

3

With Respect to Cash Collateral," which motion was assigned number 1022 on this Court's docket (the "Adequate Protection Motion"). The Adequate Protection Motion addressed the Aircraft and the stream of revenues generated by Delphi HR's leasing/chartering of the Aircraft to third parties as described above. Delphi HR and the Guarantors thereafter objected to the Adequate Protection Motion (Docket No. 1269). Ultimately, this contested matter was resolved pursuant to the terms of a certain "Consent Order Resolving Motion by Bank of America, N.A. for Adequate Protection Replacement Liens" entered by this Court on January 12, 2006 and listed on this Court's docket as Docket Number 1805 (the "Adequate Protection Order"). A copy of the Adequate Protection Order is attached hereto as Exhibit A. This order required Delphi HR to deposit into a segregated account all of the "Aircraft Cash Collateral" (as that term is defined in the order) minus the "agreed upon monthly expenses." The Adequate Protection Order confirmed Bank's first priority security interest in these cash deposits contained in this account (the "Cash Collateral Account").

7. On or about July 27, 2006, Bank properly and timely filed three proofs of claim in these Chapter 11 cases which were assigned claim numbers 11317, 11470 and 11457 the ("Pre-Confirmation Proofs of Claim"). These claims filed in the cases of Delphi HR, DASLLC and Delphi Corporation. The proof of claim filed in the Delphi HR case asserted a security interest and lien in the monies then on deposit and to be deposited in the future in the Cash Collateral Account.

8. On May 22, 2007, the Debtors objected to allowance of the Pre-Confirmation Proofs of Claim in their "Fifteenth Omnibus Objection (Substantive) Pursuant to 11 U.S.C. Section 502(b) and Fed. R. Bankr. P. 3007 to Certain (A) Insufficiently Documented Claims, (B) Claims Not Reflected on Debtors' Books and Records, (C) Untimely Claims and Untimely Tax

4

Claim, and (D) Claims Subject to Modification, Tax Claims Subject to Modification, and Modified Claims Asserting Reclamation" which objection, hereinafter referred to as the "Fifteenth Omnibus Claims Objection," was assigned Docket Number 7999 by this Court.

9. On June 19, 2007, Bank timely filed and served its Response to the Fifteenth Omnibus Claims Objection (Docket Number 8309) (the "Response to Fifteenth Omnibus Claims Objection"). As of that date, the Debtors had neither assumed nor rejected the Aircraft Leases.

10. The Fifteenth Omnibus Claims Objection and the Response to Fifteenth Omnibus Claims Objection was resolved pursuant to the terms of a certain "Joint Stipulation and Agreed Order to Withdraw Without Prejudice Proofs of Claim 1137, 11470 and 11457 (Bank of America, N.A.)," (the "Joint Stipulation"). A copy of the Joint Stipulation is attached hereto as Exhibit B.

11. Paragraph 1 of the Joint Stipulation provides that the Pre-Confirmation Proofs of Claim were withdrawn by Bank of America "without prejudice." Paragraph 2 of the Joint stipulation states that, in the event that the one or both of the Aircraft Leases were rejected by Debtors, then the Pre-Confirmation Proofs of Claim would be "automatically reinstated as timely filed claims without further notice or action required by [the Bank], subject to objection other than as to timeliness and/or prejudice arising from the withdrawal and/or reinstatement of the [Pre-Confirmation Proofs of Claim] pursuant to this Stipulation, and [the Bank] shall not have been prejudiced by the withdrawal and/or reinstatement" of the Pre-Confirmation Proofs of Claim.

12. On December 10, 2007, the Debtors filed their first amended joint plan of reorganization (Docket No. 11386) (the "Plan") and related disclosure statement (Docket No. 11388). The Court entered an order confirming the Plan (as modified) (Docket No. 12359) the

5

("Confirmation Order") on January 25, 2008. The Plan at that time contemplated that the Aircraft Leases would be assumed by the Debtors.

13. On October 3, 2008, the Debtors filed a motion under 1127 for the entry of an order approving (i) certain modifications to the confirmed Plan and related disclosure statement; and (ii) related procedures for re-soliciting votes on the confirmed plan, as modified (Docket No. 14310)(the "Plan Modification Motion"). On June 1, 2009, the Debtors filed a supplement to the Plan Modification Motion (Docket no. 16646), which sought approval of (i) certain modifications to the confirmed Plan (the "Modified Plan"), (ii) supplemental disclosure; and (iii) procedures for re-soliciting votes on the Modified Plan. The Modified Plan now contemplated and provided for rejection of the two Aircraft Leases.

14. On July 30, 2009, this Court entered an order approving the Modified Plan (Docket No. 18707) on July 30, 2009. On October 6, 2009, the Effective Date of the Modified Plan occurred and, as of that date, the Aircraft Leases were rejected and the Pre-Confirmation Proofs of Claim were reinstated pursuant to the express terms of the Joint Stipulation.

15. Section 5.1 of the Modified Plan provides that the partially secured claim of the Bank against Delphi HR, which collateral includes the funds in the Cash Collateral Account, will be treated as such under the terms of the Modified Plan and that the security interest in these funds continues unabated after the Effective Date of the Modified Plan.

16. Sometime after the Effective Date of the Modified Plan, the Debtors returned the Aircraft to the Bank but still retain the funds on deposit in the Cash Collateral Account subject to the Bank's valid, perfected and first priority security interests therein. Upon information and belief, the amount on deposit in the Cash Collateral Account is a sum not less than $1,211,000.

6

This amount on deposit was confirmed by the Reorganized Debtors to the Bank after the Modified Plan's Effective Date.

17.     Between the date on which these Chapter 11 cases were commenced until the date(s) on which the Aircraft were returned to the Bank, the Debtors used the Aircraft for their own benefit and leased/chartered the Aircraft to third parties.

### BASES FOR ADMINISTRATIVE EXPENSE CLAIMS

18.     Bank repeats and realleges each and every allegation contained in Paragraphs 1 through 17 as if fully set forth herein.

19.     As a result of the rejection of the Learjet Aircraft Lease that rejection is deemed to have occurred as of October 8, 2005.

20.     Except as set forth herein, the Bank holds an administrative expense claim, part of which is a superpriority administrative expense claim, in these Chapter 11 cases that arose from the losses suffered by the Bank after October 8, 2005 under the Aircraft Leases. These postpetition losses total an amount not less than $8,902,276.77 and consist of the following elements after deducting credits to which the Bank believes the Debtors may be entitled to and which potential credits are identified below:

    a.     *Administrative Remarketing Fee Claim for Learjet*. Pursuant to Schedule 2-A to Lease Supplement No. 1 and the Maintenance and Return Addendum to the Learjet Aircraft Lease, the Debtors agreed to pay a remarketing fee for the Learjet upon its return to the Bank. The Bank has calculated this amount to be $1,001,268.00, which is 9% of the $11,125,200 Lessor's Cost of the Learjet. The Bank does not assert a superpriority administrative expense claim for this amount under 11 U.S.C. § 507(b) but only an administrative expense claim under 11 U.S.C. § 503(b)(1).

    b.     *Administrative Remarketing Fee Claim for Challenger*. Pursuant to Schedule 2-A to Lease Supplement No. 1 and the Maintenance and Return Addendum to the Challenger Aircraft Lease, the Debtors agreed to pay a remarketing fee for the Challenger upon its return to the Bank. The Bank

7

has calculated this amount to be $1,690,483.20, which is 7% of the $24,149,760 Lessor's Cost of the Challenger. The Bank does not assert a superpriority administrative expense claim for this amount under 11 U.S.C. § 507(b) but only an administrative expense claim under 11 U.S.C. § 503(b)(1).

c. <u>Administrative Tax Claim for Learjet</u>. In its request for payment of administrative claims, the Bank reserved its right to include an amount for an Administrative Tax Claim relating to the Learjet. As of the date of this pleading, the Bank has not identified any amount in this category and therefore for purposes of this pleading asserts $0 in this regard.

d. <u>Administrative Tax Claim for Challenger</u>. In its request for payment of administrative claims, the Bank reserved its right to include an amount for an Administrative Tax Claim relating to the Challenger. As of the date of this pleading, the Bank has not identified any amount in this category and therefore for purposes of this pleading asserts $0 in this regard.

e. <u>Administrative Maintenance Claim for Learjet</u>. The Learjet Aircraft Lease contains a "Maintenance and Return Addendum" dated as of March 30, 2001, that requires the Debtors to maintain the Learjet during the term of the lease and to return the Learjet to the Bank at the end of the lease in a certain condition. This Addendum specifies precisely what maintenance and repairs to the Learjet must be made by the Debtors during the lease term and at its end. After return of the Learjet by the Debtors to the Bank, the Bank inspected the aircraft and asserts that the Debtors' obligations under this Addendum for events that occurred after the Petition Date amount to $51,703.37, most or all of which relates to Mid-Life Condition. The Bank reserves its right to assert additional items. The Bank asserts a superpriority administrative expense claim for this amount under 11 U.S.C. § 507(b).

f. <u>Administrative Maintenance Claim for Challenger</u>. The Challenger Aircraft Lease contains a "Maintenance and Return Addendum" dated as of March 30, 2001, that requires the Debtors to maintain the Challenger during the term of the lease and to return the Challenger to the Bank at the end of the lease in a certain condition. This Addendum specifies precisely what maintenance and repairs to the Challenger must be made by the Debtors during the lease term and at its end. After return of the Challenger by the Debtors to the Bank, the Bank inspected the aircraft and asserts that the Debtors' obligations under this Addendum for events that occurred after the Petition Date amount to $131,214.20, most or all of which relates to Mid-Life Condition. The Bank reserves its right to assert additional items. The Bank asserts a superpriority administrative expense claim for this amount under 11 U.S.C. § 507(b).

8

g. <u>Administrative Diminution Claim for Learjet</u>. The Bank believes that, during the pendency of these Chapter 11 cases while Delphi HR refused to return and used the Learjet, the value of the Learjet decreased dramatically. Claimant estimates that during this period, the Learjet decreased in value by approximately $2,150,816 more than the Bank was compensated for by payments made by the Debtors to the Bank under the lease. Details of the Bank's calculations are attached hereto as <u>Exhibit C</u>. The Bank asserts a superpriority administrative expense claim for this amount under 11 U.S.C. § 507(b).

h. <u>Administrative Diminution Claim for Challenger</u>. The Bank believes that, during the pendency of these Chapter 11 cases while Delphi HR refused to return and used the Challenger, the value of the Challenger decreased dramatically. Claimant estimates that during this period, the Challenger decreased in value by approximately $3,876,792 more than the Bank was compensated for by payments made by the Debtors to the Bank under the lease. Details of the Bank's calculations are attached hereto as <u>Exhibit C</u>. The Bank asserts a superpriority administrative expense claim for this amount under 11 U.S.C. § 507(b).

21. Against these administrative expense claims, the Debtors are or may be entitled to certain credits, some of which were not described in the Bank Administrative Expense Claim. These credits are as follows:

a. <u>September 2009 Rent Payment</u>. On September 20, 2009, Bank received a rent payment of $252,228.46 for rental charges due under the Aircraft Leases. However, the Effective Date of the Modified Plan occurred on October 6, 2009, and the Learjet and Challenger were thereafter returned by Delphi HR to the Bank. The Bank has retained this entire rental payment pending this Court's determination of the various objections to the Bank's proofs of claim and requests for payment of administrative expenses filed in these Chapter 11 cases.

b. <u>Sale of Learjet</u>. On December 29, 2009, Bank sold the Learjet to a third party for $4,272,500. The Bank had $115,170.22 of expenses associated with this sale. Therefore, the net disposition proceeds for the Learjet total $4,157,429.78. The Bank has included this amount in its calculations on <u>Exhibit C</u> to reduce its Administrative Diminution Claim.

c. <u>Lease of Challenger</u>. On April 21, 2010, the Bank leased the Challenger to a third party for a sixty month term with monthly rental payments of $76,767.51. The Bank believes the value of the disposition of the

9

Challenger is $12,975,000.00[1], based upon market estimates. The Bank incurred $499,654.48 in expenses in disposing of the Challenger by means of this third-party lease and also spent $675,000 on improvements in order to lease the Challenger. Therefore, net proceeds of the disposition of the Challenger total $11,800,345.52. The Bank has included this amount in its calculations on Exhibit C to reduce its Administrative Diminution Claim.

## SUMMARY

22. On account of the foregoing, the Bank asserts that it holds a superpriority administrative expense claim allowable and payable under 11 U.S.C. 507(b) against Delphi HR in the sum of $6,210,525.57 and an administrative expense claim allowable and payable under 11 U.S.C. 503(b)(1) in the amount of $2,691,751.20, for a total administrative expense claim of $8,902,276.77. Bank hereby reserves all of its rights and interests with respect to its remaining proofs of claim filed in these Chapter 11 cases.

23. The Debtors are hereby directed to serve upon the undersigned any reply to this Response and/or any other related pleadings/documents at the following address:

> Patrick E. Mears, Esq.
> Barnes & Thornburg LLP
> 171 Monroe Avenue, NW, Suite 1000
> Grand Rapids, Michigan 49503

WHEREFORE, Bank of America, N.A., respectfully requests that this Court enter an Order

(i) denying the Claim Objection of the Reorganized Debtors to the Bank Administrative Expense Claim;

(ii) allowing the Bank Administrative Expense Claim as a superpriority claim under 11 U.S.C. 507(b) in an amount not less than $6,210,525.57;

(iii) allowing the remainder of the Bank Administrative Expense Claim as an administrative expense claim under 11 U.S.C. 503(b)(1); and

---

[1] Section 14(a)(ii) of the Challenger Lease provides a method for valuing proceeds of a disposition by lease. The Bank believes that methodology would value the proceeds of the actual disposition by lease at $3,899,527.61. The Bank believes this understates the credit which should be given to the Debtors. The Bank therefore used methodology based on current market conditions.

  (iv)  granting such other and further relief as may be just and proper under the circumstances of this case.

Dated: May 11, 2010          BARNES & THORNBURG LLP
                  Attorneys for Bank of America, N.A.

                  By: /s/Patrick E. Mears
                     Patrick E. Mears (PM-6473)
                     Damon Leichty, Esq.
                     Sarah Kuhny, Esq.
                     John T. Gregg, Esq.
                 Business Address:
                 171 Monroe Avenue, NW
                 Suite 1000
                 Grand Rapids, MI  49503
                 Telephone:  (616) 742-3936
                 Facsimile:  (616) 742-3999
                 pmears@btlaw.com