Case 1:05-cv-00645-MSK-BNB   Document 60   Filed 07/21/06   USDC Colorado   Page 17 of 17
05-44481-rdd   Doc 20074-3   Filed 05/14/10   Entered 05/14/10 00:24:53   Exhibit F
part 2   Pg 1 of 122

## CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of July, 2006, I electronically filed the foregoing **DEFENDANT GENERAL MOTORS CORPORATION'S OPENING BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** with the Clerk of Court using Lexis Nexis for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic filing to the following ECF registrants:

Stanley Walter
stan@stanwalterlaw.com

Mary A. Wells
mwells@warllc.com

Peter F. Jones
JonesP@HallEvans.com

and I certify that I have mailed the documents to the following non CM/ECF participants:

Mr. Don C. Staab
1301 Oak Street
Hays, Kansas 67601

Attorney for Plaintiff Martha Alfaro

J. Kenneth Wainwright, Jr.
Barry B. Sutton
Harvey Kruse PC
1050 Wilshire Drive
Troy, Michigan 48084-1526

Attorneys for Delco Electronic, LLC and
Delphi Automotive Systems, LLC

/s/ Michael F. Smith

Case 1:05-cv-00645-MSK-BNB Document 60-1 Filed 07/21/06 USDC Colorado Page 1 of
05-44481-rdd Doc 20074-3 Filed 05/14/10 Entered 05/14/10 00:24:53 Exhibit F
part 2 Pg 2 of 122

Page 1

2 of 2 DOCUMENTS

**JOEL DOUGLAS RUMINER, PLAINTIFF v. GENERAL MOTORS CORPORA-
TION, and GMC TRUCK, a Division of GENERAL MOTORS CORPORATION,
DEFENDANTS**

**NO. 4:03-CV-00349 GTE**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF AR-
KANSAS, WESTERN DIVISION**

*2006 U.S. Dist. LEXIS 37861*

**February 6, 2006, Decided**

**SUBSEQUENT HISTORY:** Costs and fees proceeding at *Ruminer v. GMC, 2006 U.S. Dist. LEXIS 32644 (E.D. Ark., May 19, 2006)*

**COUNSEL:** [*1] For Joel Douglas Ruminer, Plaintiff: Clyde Tab Turner, Turner & Associates, P.A., North Little Rock, AR.; Jerry M. White, Turner & Associates, P.A. - Dallas, Dallas, TX.

For General Motors Corporation, Defendant: Andrew L. Richardson, Harold C. Zuckerman, Mary Quinn-Cooper, Eldridge Cooper Steichen & Leach, P.L.L.C., Tulsa, OK.; D. Keith Fortner, James D. Robertson, William H. Edwards, Jr., Barber, McCaskill, Jones & Hale, P.A., Little Rock, AR.

**JUDGES:** Garnett Thomas Eisele, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** Garnett Thomas Eisele

**OPINION:**

### SUPPLEMENTAL MEMORANDUM OPINION AND ORDER REGARDING SUMMARY JUDGMENT AND DEFENDANT'S *DAUBERT* CHALLENGE

This Order supplements the Court's prior Memorandum Opinion, entered January 17, 2006, (hereafter "Opinion # 1") in which the Court ruled as a matter of law on Plaintiff's air bag claim but left open summary judgment and *Daubert* issues related to Plaintiff's remaining claim for seat belt system failure. The record has been expanded by the Court's January 17, 2006, Letter Order, and the parties' submissions in response. Additionally, a telephone conference was held on January 19, 2006, during which Plaintiff was provided an additional [*2] opportunity to point to evidence or to provide addi-

tional argument. Finally, following the telephone conference, Plaintiff sought permission to file actual documentation regarding eleven similar incidents and two crash test reports, claiming it had been inadvertently omitted from the Plaintiff's prior response, which referenced such documents in support of Plaintiff's punitive damage claim. That request (Docket no. 146) is pending. The Court will allow the supplementation of the record to include these documents.

Following a review of the entire summary judgment record and after carefully considering the applicable law, the Court reaches the following conclusions: (1) Plaintiff has failed to come forward with sufficient evidence -- either direct or circumstantial -- from which the jury could find that the vehicle's seat belt system had any design or manufacturing defect at the time it left the manufacturer; (2) Alternatively, Dr. Bidez's speculative testimony regarding possible causes for the alleged seat belt failure would either not be helpful to the jury or is not sufficiently reliable, and should be excluded from evidence as part of Plaintiff's case-in-chief; and (3) Plaintiff [*3] failed to come forward with sufficient evidence to support an award of punitive damages.

Each of these points will be discussed separately.

### SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only when, in reviewing the evidence in the light most favorable to the non-moving party, there is no genuine issue as to any material fact, so that the dispute may be decided solely on legal grounds. *Holloway v. Lockhart, 813 F.2d 874 (8th Cir. 1987); Fed. R. Civ. P. 56.* The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:



**EXHIBIT**

A-8

Case 1:05-cv-00645-MSK-BNB   Document 60-1   Filed 07/21/06   USDC Colorado   Page 2 of
05-44481-rdd   Doc 20074-3   Filed 05/14/10   Entered 05/14/10 00:24:53   Exhibit F
part 2   Pg 3 of 122

Page 2

2006 U.S. Dist. LEXIS 37861, *

The inquiry performed is the threshold inquiry of determining whether there is a need for trial-- whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).*

The Eighth Circuit set out the burdens of the parties in connection with a summary judgment motion in *Counts v. MK-Ferguson Co., 862 F.2d 1338 (8th Cir. 1988):* [*4]

[T]he burden on the party moving for summary judgment is only to demonstrate, i.e., '[to] point[] out to the District Court,' that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.

*Id. at 1339* (quoting *City of Mt. Pleasant v. Associated Elec. Coop., 838 F.2d 268, 273-74 (8th Cir. 1988)* (citations omitted)(brackets in original)).

"A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material [*5] fact." *Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).* However, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Id.*

Once the moving party demonstrates that the record does not disclose a genuine dispute on a material fact, the non-moving party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in *Rule 56,* must set forth spe-

cific facts showing that there is a genuine issue for trial. *Fed. R. Civ. P. Rule 56(e).* The plain language of *Rule 56(c)* mandates the entry of summary judgment against a non-moving party which, after adequate time for discovery, fails to make a showing sufficient to establish the existence of an element essential to its case, and on which that party will bear the burden of proof at trial. *Celotex Corp., 477 U.S. at 322.*

## DISCUSSION

**(1) Plaintiff has failed to come forward with sufficient evidence, either direct or circumstantial, which would permit a jury finding in his favor on liability.**

So, just what is the evidence [*6] proffered by Plaintiff in support of his theories of liability? n1 Plaintiff makes no effort to prove any particular defect in the seat belt restraint system. Instead, Plaintiff relies heavily on GM's own witness testimony to support its contention that there must have been "something wrong" with the seat belt system based on the fact that Plaintiff suffered such severe facial injuries even while buckled in his seat belt. For example, Plaintiff points to the report of GM engineer James White which concludes that "if Mr. Ruminer had utilized the available left front safety belt system in the crash, it would have restrained him." (Report of James White, Exh. A to Pl.'s Response, at p. 2). n2 Plaintiff also points to the testimony of GM biomechanics expert James W. Lighthall, Ph.D. Dr. Lighthall opines in his report that "if Mr. Ruminer had been using his seatbelt at the time of this incident he would not have sustained severe facial fractures." (Report, Exh. B to Pl.'s Response, at p. 3).

n1 The parties do not distinguish clearly between the asserted theories of negligence, breach of warranty, and strict liability. Plaintiff discusses and argues his case solely in terms of strict liability, *i.e.,* whether there was a product defect. The Court will likewise focus its opinion. Without proof sufficient to prevail on his strict liability claim, the Plaintiff can not state a submissible claim on his theories of negligence or breach of warranty related to the alleged seat belt failure. And, indeed, the summary judgment record here reveals no independent evidence of negligence on the part of the Defendant in manufacturing or in designing the seat belt system or that would independently support a claim for breach of an implied warranty.

[*7]

Case 1:05-cv-00645-MSK-BNB   Document 60-1   Filed 07/21/06   USDC Colorado   Page 3 of
05-44481-rdd   Doc 20074-3   Filed 05/14/10   Entered 05/14/10 00:24:53   Exhibit F
part 2   Pg 4 of 122

Page 3

2006 U.S. Dist. LEXIS 37861, *

n2 In the future, the Court urges the parties to submit an exhibit index and/or to describe the exhibits when electronically filing exhibits. Doing so makes location of relevant exhibits much easier.

These comments must be considered in context. First, Mr. White's and Dr. Lighthall's testimony was given in the context of their opinions that Plaintiff was not wearing his seatbelt at the time of the accident. This issue, of course, is a hotly disputed issue in this case. While the Court assumes, for purposes of determining summary judgment, that Plaintiff would ultimately prevail on this issue before the jury, it must be remembered that this disputed issue of fact was at the heart of Dr. Lighthall and Mr. White's testimony.

It is equally clear that neither Dr. Lighthall nor Mr. White is saying that if Plaintiff had been wearing his belt he would not have been injured. Rather, it is their opinion that had he been restrained his injuries would not have been as severe. For example, Dr. Lighthall, GM's biomechanics expert, opined:

> Even when worn seatbelts cannot prevent all injuries in all [*8] accidents. This is particularly true for "unrestrained" portions of the body such as the extremities and the head. In this case if Mr. Ruminer had been wearing his seatbelt at the time of the incident the likelihood of forceful interaction between his face/head and the upper steering wheel rim and steering wheel hub still exists. However for a properly belted driver, the severity of the injury would be mitigated.

(Dr. Lighthall Report at p. 5).

Plaintiff also offers the testimony of Dr. Bidez, a biomechanics expert, whose examination of the vehicle and Plaintiff's injuries led her to conclude that Plaintiff was belted at the time of the accident. Dr. Bidez will also testify that the seat belt system failed to properly restrain Plaintiff. In her opinion, the Plaintiff's "lap-shoulder belt appears to have experienced a late lock-up, if it locked at all. During the vehicle inspection, marks on the webbing indicate that spoolout occurred." Dr. Bidez concludes that this "demonstrates a clear case of retractor failure and ultimately allowed [Plaintiff's] head and upper torso to have excessive movement toward the steering wheel." (Dr. Bidez report, at p. 6).

This proof establishes, [*9] at most, that accepting that Plaintiff was belted at impact, the seat belt system did not adequately restrain Plaintiff, and that, consequently, Plaintiff was injured more severely than he otherwise would have been. The difficult and unresolved issue in this case is determining why the seat belt did not restrain Plaintiff.

Plaintiff has no direct proof of any specific manufacturing or design defect in the belt system and cannot identify the cause of the alleged seat belt failure. But, Plaintiff contends that, under the applicable law, no such proof is necessary. Instead, Plaintiff proposes to have Dr. Bidez testify regarding possible causes for the seatbelt's alleged retractor failure and offers the following from her deposition testimony: n3

> Q. Doctor Bidez, is it your opinion in ths case that there was a defect in the design of the seat belt, or the seat belt system, in the subject vehicle.
> A. Let me answer it this way. I cannot rule out that there are not both design and manufacturing defects. The evidence within General Motors is that there is clearly a design defect, and there may or may not be a manufacturing defect. Because to my knowledge no one has disassembled [*10] the retractor.
> Q. As you sit here today, can you state with a reasonable degree of engineering or scientific certainty that there is a manufacturing defect in the subject seat belt or seat belt system?
> A. Let me state it in the affirmative. Within a reasonable degree of engineering probability, there is a design and/or manufacturing defect in the driver's retractor and air bag system, that is the restraint system, that was the direct cause of Joel Ruminer's injury.
> Q. Please tell us the specific manufacturing defect that you believe existed in the subject -- first let's talk about the seat belt or seat belt system. . . .
> A. The seat belt retractor failed to lock appropriately, to prevent injury of head contact of Joel Ruminer to the steering wheel.
> Q. Can you be any more specific than that as to what the specific manufacturing defect was?
> A. No, not at this point. And to go back and clarify an earlier question you asked. If it becomes important that a specific

Case 1:05-cv-00645-MSK-BNB   Document 60-1   Filed 07/21/06   USDC Colorado   Page 4 of
05-44481-rdd    Doc 20074-3   Filed 05/14/10   Entered 05/14/10 00:24:53   Exhibit F
part 2   Pg 5 of 122

Page 4

2006 U.S. Dist. LEXIS 37861, *

manufacturing defect is identified, then obviously, both sides are going to have to get together to disassemble the retractor.

Q. Well, as you sit here today, you can't point us to a specific manufacturing defect, correct? [*11]

A. That's correct. Nor do I need to.

Q. Dr. Bidez, have you disassembled the subject retractor?

A. Of course not.

Q. Have you asked anybody to do that?

A. No.

. . .

Q. What I guess I am asking is this. Have you looked at any design or specification drawings for the seat belt or the seat belt system in this case, and that you can point us to a specific defect in that design or those designs?

A. What I have reviewed and relied upon is the design failure mode and effects analysis of General Motors, with respect to the subject retractor and belt system. . . . that provides GM engineers viewpoints of all of the different failure modes that can result in improper retractor performance. . . .

. . :

Q. What is the basis for your opinion that sensor failure occurred with a reasonable degree of engineering or scientific probability or certainty in this case?

A. Okay. I am not going to be able to answer any string of questions like that because I said that within a reasonable degree of engineering probability, that one or more of these occurred. Now, I cannot do that on an isolated item-by-item basis without disassembling the retractor.

(Dr. Bidez deposition, pages [*12] 15, 16-17, 20, 46).

n3 GM contends that this testimony is inadmissible expert testimony. That argument is discussed separately.

Dr. Bidez answered similarly with regard to every potential cause of the retractor's alleged failure to lock. That is, because the retractor had not been disassembled, examined and/or tested, the specific cause of the retractor's failure could not be determined. Instead, Dr. Bidez relies upon FMEA (Failure Mode Affect Analysis) reports prepared by GM.

Dr. Bidez testified that she took the 85 total seat belt potential failure modes identified by GM's engineers, narrowed those to 45 failure modes, all relating to retractor failure, and then further narrowed it down to 12 potential failure modes. Dr. Bidez excluded all failure modes which would have been visible without disassembly based on her observation that no one had identified any such clearly visible problems. Thus, Dr. Bidez assumed: (1) that the seat belt's failure to lock (or late lock-up) was caused by the retractor; and (2) [*13] that one of 12 possible causes was at fault. (See Def.'s Brief, Docket # 134, at pp. 14-15, and Exhibits referenced therein).

However, a review of the FMEA reports relied upon by Dr. Bidez indicates that there are many potential causes for retractor failure that are clearly unrelated to a manufacturing or design defect. Defendant GM -- under either a direct or circumstantial proof case -- may only be held legally liable for defects existing in its product at the time that the product left the manufacturer. Plaintiff, in his proof, makes no effort to negate the other post-delivery causes for seat belt failures.

The following table summarizes the 12 possible causes for the alleged retractor failure identified by Dr. Bidez in her deposition together with the likely causes listed for each. The information in the table is taken from the actual FMEA reports upon which Dr. Bidez relies. n4

| Potential Failure Mode | Potential Failure Causes |
|---|---|
| (7) Sensor Failure | Contamination Foam Degrade |
| (10) Sensor Compensator Failure, Non-Lock | Contamination |
| (14) Frame Fractures | Frame Corrodes, Fatigues from Overloading, |

Case 1:05-cv-00645-MSK-BNB   Document 60-1   Filed 07/21/06   USDC Colorado   Page 5 of
05-44481-rdd   Doc 20074-3   Filed 05/14/10   Entered 05/14/10 00:24:53   Exhibit F
part 2   Pg 6 of 122

Page 5

2006 U.S. Dist. LEXIS 37861, *

| Potential Failure Mode | Potential Failure Causes or from Impact from Foreign Object |
|---|---|
| (15) Pawl Fractures | Pawl Corrodes, Fatigue from Crack Propagation, Pawl Loading |
| (16) Ratchet and Sleeve Disengage from Frame | Corrosion Fatigue at Ratchet and Sleeve Ratchet and Sleeve Loading |
| (17) Fatigue of Web Pin | Pin Corrodes. Pin Fatigues from Crack Propagation. Overloading. |
| (18) Shaft Fatigues | Vibration. Corrosion of Shaft |
| (20) Deformation of Actuator Support | Lever Fatigues from Vibration. Lever Creeps. |
| (21) Fracture of Actuator Gear | Gear Fatigue from Vibration and Wear. Actuator Gear Creeps. |
| (23) Fastener Loosens or Fatigues | Vibration |
| (29) Retractor Will Not Lock, Causing Poor Retraction/Extraction of Webbing | Trim Interference with Retractor Locking Mechanism. Mechanism is exposed or unprotected. |
| (30) Retractor Binds Due to Mechanism Deformation | Deformation of Mechanism due to Build Variation in Seat Structure, or Inadequate Specs for Seat Structure Finish, Flatness, Geometry |

[*14]

(See Dr. Bidez depo. at pp. 47-57 & FMEA Reports at line items noted in table).

n4 Plaintiff's brief doesn't specify which of the 12 potential retractor failure modes Dr. Bidez identified from the 85 on GM's FMEA reports. The Court was able to identify the twelve failures by comparing the FMEA report to Dr. Bidez's deposition. The record is devoid of any discussion or explanation by Dr. Bidez of the potential failures causes listed in the FMEA reports and whether they could occur post-manufacture, even after the Court placed the Plaintiff on notice of this failure in the proof in its January 17th, letter and permitted Plaintiff the opportunity to respond.

Most, if not all, of these "potential causes" appear to occur post-manufacture. Note, for example, "vibration," "overloading," "corrosion," "impact from foreign object," "foam degrade," "contamination." At a minimum, expert testimony would be required to explain why any of these potential causes should properly be attributed to a manufacturing or design [*15] defect existing when the product left GM. No such expert testimony has been offered by Plaintiff.

Dr. Bidez testified that she used the following "method" to pinpoint the 12 potential failures:

". . I looked at the failure modes identified by the GM engineers, and I looked at those that the GM engineers said would

Case 1:05-cv-00645-MSK-BNB   Document 60-1   Filed 07/21/06   USDC Colorado   Page 6 of
05-44481-rdd   Doc 20074-3   Filed 05/14/10   Entered 05/14/10 00:24:53   Exhibit F
part 2   Pg 7 of 122

Page 6

2006 U.S. Dist. LEXIS 37861, *

lead to lock-up performance problems, either no lockup or late lock-up, those I highlighted. Then I looked at symptoms to the operator. Is it visible, openly visible, and if it was because no one has identified it -- and certainly Mr. Ruminer didn't either -- then that wasn't plausible, those scientific basis relying on GM's own engineers. I have identified the specific failure modes that may have, one or more, occurred in the Suburban vehicle.

(Dr. Bidez deposition at p. 47).

The following exchange is representative of Dr. Bidez's discussion of the evidence supporting her opinion with regard to each of the 12 potential failures:

Q. . . . Can you tell us, please, all of the physical, factual, scientific, or any other evidence that indicates sensor compensator failure non-lock occurred in this case or may have occurred in this case?
A. The basis [*16] is the physical scientific medical testimony that Mr. Ruminer was restrained in this crash. I have that documented elsewhere. All of that is the basis for every single failure mode, that he was wearing the belt GM says it should have locked and it didn't lock.
Q. Any specific evidence on the seat belt or the seat belt system or photograph of the -- or the diagram of the seat belt or seat belt system that you can point to, that forms the basis for sensor compensator failure non-lock having occurred in this accident?
A. Photographs or diagrams, is that what you said?
Q. Yes.
A. No.
Q. Or any evidence on the belt or belt system itself?
A. No, because the retractor has not been disassembled.

(Dr. Bidez deposition at p. 52-53).

The Court, presented with this initial evidence, wrote to the parties on January 17, 2006, noting that the summary judgment record on the seat belt issue was confusing and appeared incomplete. (See Docket No. 141). The Court asked certain questions of the parties and permitted them to submit additional legal authority or argument in support of their respective positions.

The Court specifically inquired further regarding the FEMA evidence, writing: [*17]

In looking at the twelve failure modes identified by Dr. Bidez it appears that many of the causes listed for such possible failure modes involve post-delivery problems such as wear and tear, fractures, misuse, etc. So the question arises: **If possible explanations for any failure of the seat belt system involved post-delivery changes in the system, then has Plaintiff instead of negating causes other than defects in design and/or manufacturing, in fact identified other possible causes for the failure of the product? And, if so, has Plaintiff failed to meet the *Petrus-Chrysler-Plymouth* and *Higgins* standard, *supra,* for excusing Plaintiff from the necessity of proving a specific defect?**

(Letter Order of January 17, 2006, Docket No. 141, at p. 4)(emphasis in original).

In response Plaintiff stated:

We believe we have met and exceeded what is required by the law. The component of the seat belt system which is at issue is the retractor. The retractor is physically housed within the drivers seat of Mr. Ruminer's vehicle and therefore not exposed to elements, not exposed to human contact, and not subject to alternation without tearing the seat open. In [*18] order to expose and modify or manipulate the retractor, a person would have had to remove the fabric of the seat in the area of the drivers outside shoulder, which includes tearing up the driver's seat. Although we believe that even GM would readily agree to what we have just stated, Dr. Bidez, through her inspection of the driver's seat has ruled out any pre-accident access to, or modification of, the retractor.

(Plaintiff's Letter Response to Letter Order, at p. 3, Docket No. 144).

Case 1:05-cv-00645-MSK-BNB   Document 60-1   Filed 07/21/06   USDC Colorado   Page 7 of
05-44481-rdd   Doc 20074-3   Filed 05/14/10   Entered 05/14/10 00:24:53   Exhibit F
part 2   Pg 8 of 122

Page 7

2006 U.S. Dist. LEXIS 37861, *

This response by the Plaintiff misses the point. Whether or not the retractor was easily accessible "pre-accident"does nothing to negate Dr. Bidez's reliance on the 12 potential failure modes suggested by GM engineers to be the result of post-delivery causes in most, if not all, instances.

In its January 17th letter, the Court also inquired regarding whether the retractor had been tested. Plaintiff indicated that the retractor remains in the vehicle, which is located in a warehouse under Plaintiff's control. Plaintiff's counsel indicated that they elected not to test the retractor, because they believed it was not necessary. Plaintiff's counsel and Dr. Bidez acknowledge that a manufacturing defect, [*19] if one existed, could potentially be identified by opening and examining the retractor, but claimed that if the retractor failure was due to a sensitivity/setting designed into the retractor (design issues), then such could not be verified by retractor testing. In contrast, GM points out that a partial disassembly of the subject retractor could have ruled out or identified each of the 12 potential failure modes identified by Dr. Bidez. Thus, it is uncontroverted that testing the retractor would pinpoint or eliminate a manufacturing defect.

Also in response to the Court's letter, GM pointed out that its seat belt expert, Mr. White, examined and evaluated the seat belt assembly on September 9, 2004. Mr. White observed that there was "[n]o physical evidence of loading of the safety belt restraint system" and from his physical evaluation of the system found:

> The safety belt latch plate and buckle functioned in a normal manner when the latch plate was inserted and released from the buckle.
>
> * * *
>
> Operation of the safety belt retractor vehicle sensor locking mechanism and the web sensing mechanism was verified by manipulation of the webbing and seat back.

(White Report, [*20] at p. 3, Exhibit G to GM's Brief in Support of Summary Judgment, Docket No. 102). In Mr. White's opinion, "[t]he left front safety belt retractor was functioning as engineered a the time of this crash." *Id.* at 4. Thus, Mr. White concluded that "it is my opinion within a reasonable degree of engineering certainty that the subject 2001 Chevrolet Suburban left front safety belt restraint system was properly designed, tested and manufactured." *Id.*

On this record, the Court must determine whether Plaintiff has come forward with sufficient evidence to permit a jury finding that the seat belt system's failure was the result of a defect which existed at the time the vehicle left GM's control. The present dispute calls into question burden of proof issues in product liability cases, and the circumstances in which a Plaintiff may be relieved of his customary burden to present direct proof of a specific defect.

**Applicable Law**

The Court must apply the law of the forum state in exercising its diversity jurisdiction. *Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 61 S. Ct. 1020, 85 L. Ed. 1477 (1941)*. Both parties appear to agree that under Arkansas' conflict laws, Arkansas substantive [*21] law controls here. Therefore, this court must attempt to predict how the Arkansas Supreme Court would resolve this issue. *United Fire & Cas. Ins. Co. v. Garvey, 328 F.3d 411, 413 (8th Cir. 2003)*.

**History of strict liability law and requirement of a defect**

Strict liability laws were developed to create a more liberal theory for plaintiffs in product liability cases. In 1965, the American Law Institute created a new theory which permitted recover) absent proof of negligence and regardless of fault by enacting the *Restatement (Second) of Torts § 402A. Section 402A* established strict liability for one who sells "any product in a defective condition unreasonably dangerous to the user or consumer or to his property." With the approval of *402A*, strict liability "swept the country," (Prosser, "The Law of Torts", § 98 at p. 567-8 (4th Edition 1971)). By 1978, approximately 45 states, including Arkansas, had adopted the concept. *Berman v. Watergate West, Inc., 391 A.2d 1351, 1356 (D.C. 1978)*.

Strict liability arrived in Arkansas in 1973, with the enaction of Act 111 in 1973, now *Ark. Code Ann. § 4-86-102* [*22] (Repl.2001). Based on the Restatement, but broader in certain respects, n5 Arkansas law requires proof of the following before permitting recovery under a theory of strict liability: (1) that the plaintiff has sustained damages; (2) the defendant was engaged in the business of manufacturing, assembling, selling, leasing, or distributing the product; (3) the product was supplied by the defendant in a defective condition which rendered it unreasonably dangerous; (4) the defective condition was a proximate cause of plaintiff's damages. *Ark. Code Ann. § 4-86-102(a)* (Repl.2001); *Farm Bureau Ins. Co. v. Case Corp., 317 Ark. 467, 878 S.W.2d 741 (1994)*.

n5 *See Berkeley Pump Co. v. Reed-Joseph Land Co., 279 Ark. 384, 390, 653 S.W.2d 128*

Case 1:05-cv-00645-MSK-BNB   Document 60-1   Filed 07/21/06   USDC Colorado   Page 8 of
05-44481-rdd   Doc 20074-3   Filed 05/14/10   Entered 05/14/10 00:24:53   Exhibit F
part 2   Pg 9 of 122

Page 8

2006 U.S. Dist. LEXIS 37861, *

*(Ark. 1983)*, describing the two respects in which Arkansas law is broader than the Restatement version of strict liability.

While strict liability was intended to relax the plaintiff's burden, the doctrine was never intended to create liability for a manufacturer [*23] anytime a user of its product suffers an injury. "As is true in negligence cases with respect to the mere fact of an accident, the mere fact of injury during use of the product usually is insufficient proof to show existence of a defect at the time defendant relinquished control." *Lee v. Crookston Coca-Cola Bottling Co., 290 Minn. 321, 188 N.W.2d 426, 432 (1971)*(cited by *Fireman's Fund Ins. Co. v. Canon U.S.A., Inc., 394 F.3d 1054, 1061 (8th Cir. 2005)*(applying Minnesota law). Accordingly, proof of a defect is an essential element of a cause of action based on product liability. *Lakeview Country Club, Inc. v. Superior Products, 325 Ark. 218, 223, 926 S.W.2d 428 (1996)*. Thus, while a plaintiff is relieved in a strict liability case of the necessity of proving fault or negligence, that plaintiff must still demonstrate that a defect existed and that it was present when the product left the hands of the manufacturer.

Ordinarily, then, a plaintiff must identify and prove a specific defect in order to prevail. In limited instances, however, a plaintiff may be relieved of the burden of proving a specific defect, but only where "common experience teaches [*24] the accident would not have occurred in the absence of a defect." *Higgins v. General Motors Corp., 287 Ark. 390, 392, 699 S.W.2d 741 (1985)*. As stated by the Arkansas Supreme Court:

> A plaintiff is no longer required to prove negligence in a strict liability claim but still must prove the product was defective so as to render it unreasonably dangerous, and that the defect was the cause of the injury. The mere possibility this has occurred is not enough, there must be evidence from which the jury can conclude that it is more probable than not.
>
> The difficult problems are those of proof by circumstantial evidence. Strictly speaking, since proof of negligence is not an issue, res ipsa loquitur has no application to strict liability, but the inferences which are the core of the doctrine remain, and are no less applicable. The plaintiff is not required to eliminate all other possibilities, and need not prove his case beyond a reasonable doubt. It is enough that he es-

tablishes a preponderance of probability. In the absence of direct proof of a specific defect, it is sufficient if a plaintiff negates other possible causes of failure of the product, not attributable to the defendant, [*25] and thus creates a reasonable inference that the defendant is responsible for the defect.

*Id., at 391-92* (emphasis added).

**Application of the law to Plaintiff's theory of liability**

In this case, Plaintiff has produced evidence from which a jury could find that he sustained enhanced injuries based on the seatbelt's failure to properly restrain him in an automobile accident Plaintiff thus contends that he may prevail on this theory that the seat belt must have had some manufacturing or design defect by having his expert discuss possible causes for the seat belt's failure, without the necessity of identifying or proving any specific defect.

Before a plaintiff may be relieved of his burden to prove a specific defect, Arkansas law requires that he "must negate the other possible causes of failure of the product for which the defendant would not be responsible in order to raise a reasonable inference that the dangerous condition existed while the product was still in the control of the defendant." *Campbell Soup Co. v. Gates, 319 Ark. 54, 59, 889 S.W.2d 750, 753 (1994)*; *Higgins, supra*. "The mere possibility" that a [*26] defect caused the injury is not enough, the evidence must be sufficient to permit the jury to conclude that it is more probable than not that a defect caused the injury. *Higgins, 287 Ark. at 392*

Plaintiff here failed to produce evidence that the alleged product failure could not have been caused by something that occurred after the product left GM. Indeed, Plaintiff, through Dr. Bidez, has forcefully brought to the Court's attention several possible post-delivery causes for the alleged retractor failure. *See* discussion, *supra*. Plaintiff has done nothing to offset the FMEA evidence specifically identifying post-manufacturing causes for retractor failure. The Court recognizes that Plaintiff is not obligated to eliminate all other possibilities, and need not prove his case beyond a reasonable doubt. See *Higgins v. General Motors Corp., 287 Ark. 390, 392, 699 S.W.2d 741, 743 (1985)*. Still, he must demonstrate that it is more likely true than not that the seatbelt's failure was due to a manufacturing or design defect and not the result of some post-manufacturing, post-delivery problem. Plaintiff has clearly failed to carry this burden. See *Mixon v. Chrysler, 281 Ark. 202,*

Case 1:05-cv-00645-MSK-BNB   Document 60-1   Filed 07/21/06   USDC Colorado   Page 9 of
05-44481-rdd   Doc 20074-3   Filed 05/14/10   Entered 05/14/10 00:24:53   Exhibit F
part 2   Pg 10 of 122

Page 9

2006 U.S. Dist. LEXIS 37861, *

*663 S.W.2d 713, 714-15 (Ark. 1984)* [*27] (rejecting plaintiff's circumstantial evidence that vehicle's sudden acceleration was caused by a defect, stating, "It is true that supporting affidavits against the motion for summary judgment stated none of the affiants, or others known to have had access to the vehicle, repaired, adjusted or otherwise tampered with the steering system. These affidavits do not negate slick roads, speed, driver control, normal wear and tear or other possible causes as the proximate cause of appellants' injuries.")

Other circumstances also weigh against permitting Plaintiff's case to go forward on the evidence tendered. First, the doctrine of permitting inference of a defect is intended for situations "when common experience tells us that the accident would not have occurred in the absence of a defect." *Harrell Motors, Inc. v. Flanery, 272 Ark. 105, 612 S.W.2d 727, 729 (Ark. 1981).* Common experience here would not permit a finding of a pre-delivery manufacturing or design defect because such matters are outside the realm of a juror's common experience.

It is significant that GM has presented evidence that the seat belt system appears to be intact and functional. According to GM expert Mr. White, [*28] he examined the vehicle and found the retractor vehicle sensor locking mechanism and the web sensing mechanism and found the retractor to be functioning as engineered. Thus, this is not a case where the defendant acknowledges that the product failed to perform as intended or in which the circumstances of the accident alone demonstrate product failure. The question thus arises: could there be other problems or situations -- unrelated to a defect -- that could cause a seatbelt even if worn not to restrain its wearer. Could it be worn improperly? Would twisting alter its performance? This was a relatively low velocity collision (estimated at about 14 mph at impact). Could the circumstances of this particular accident, independently of a defect, have delayed the lock-up? These questions are not answered. Rather, Dr. Bidez assumes the retractor failed and, ergo, that the product was defective. And, she arrives at her conclusions without testing the retractor.

Significantly, Dr. Bidez had access to and could have tested, or had someone else test, the allegedly defective component of the seat belt restraint system The Court concludes that this circumstance must also be considered in deciding [*29] whether the plaintiff may on this record go to the jury on his circumstantial evidence theory. The history of the circumstantial proof doctrine suggests that it was created, at least in part, to provide a plaintiff with a fair opportunity to prove his case when the product or product component in question had been lost or destroyed. *See, e.g. Mixon v. Chrysler, 281 Ark. 202, 663 S.W.2d 713, 714-15 (Ark. 1984)*(steering

mechanism at issue had been destroyed by the time plaintiff sought to inspect it). This is not to say that a plaintiff's affirmative decision not to test an allegedly defective product will always be dispositive of the circumstantial proof issue. But, here, where the Plaintiff has possession of the device, where Plaintiff's expert opines that disassembly and inspection would reveal whether a manufacturing defect existed, and where neither excessive cost nor any other practical consideration has been cited or argued as a justification for the failure to scientifically examine the device, the Court concludes that Plaintiff's failure to disassemble and inspect bars Plaintiff from submitting his case to the jury on a res ipsa loquitur type theory.

If the Court were to [*30] permit Plaintiff to submit his case to the jury on this record, it would come dangerously close to permitting a finding of strict liability based solely on the fact of the injury (or enhanced injury) itself. The Court is comfortable in predicting that the Arkansas Supreme Court would not, on this summary judgment record, permit Plaintiff's case to go to the jury.

## (2) Dr. Bidez's Expert Testimony Regarding "Some" Unknown Defect is Either Not Helpful or Not Reliable and Must be Excluded

GM additionally brings a *Daubert* challenge to the proposed testimony of Dr. Bidez. *Daubert v. Merrell Dow Pharms., 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993); Fed. R. Evid. 702.* As an alternative to its liability holding, the Court also concludes that Dr. Bidez's proposed testimony that there was "some" unidentified defect in the retractor is not based upon her scientific knowledge or expertise and would not be helpful to the jury. Nor is such testimony sufficiently reliable to be admissible. Accordingly, such testimony, as tendered, should be excluded.

### Nature of the Dispute Regarding Dr. Bidez' testimony

Initially, it should be noted that this opinion [*31] deals with only that portion of Dr. Bidez's proposed expert testimony regarding the existence of an alleged defect in the seat belt restraint system. Dr. Bidez has other opinions based upon her expertise in occupant kinematics which are not being challenged. n6 For example, she opines that the nature of Mr. Ruminer's injuries are consistent with his seat belt use. Nor is it necessary to resolve GM's *Daubert* challenge that Dr. Bidez is not qualified to render an expert opinion regarding manufacturing or design defects in the seat belt system at issue here. Rather, the issue is limited to the nature of her proposed testimony, its helpfulness to the jury, and its reliability.

Case 1:05-cv-00645-MSK-BNB   Document 60-1   Filed 07/21/06   USDC Colorado   Page 10 of
05-44481-rdd   Doc 20074-3   Filed 05/14/10   Entered 05/14/10 00:24:53   Exhibit F
part 2   Pg 11 of 122

Page 10

2006 U.S. Dist. LEXIS 37861, *

n6·Dr. Bidez's qualifications and experience are impressive.

## Dr. Bidez's "Opinion" Regarding Defect

The Court expressed skepticism about the admissibility of Dr. Bidez's expert testimony in its January 17th letter, stating:

> With respect to the claims of the Plaintiff based upon his allegations that the seat belt restraint [*32] system had defects in design or manufacture, the situation is not completely clear. The Court is tentatively of the view that Dr. Martha Bidez will not be permitted to express her opinion that there was a defect in the design and/or manufacture of the seat belt restraint system at the time it left the manufacturer, because that opinion is not based upon her expertise, but rather, is based upon the common sense conclusion that Mr. Ruminer would not have been injured as severely as he was if there had not been "some such defect." In this connection Dr. Bidez is convinced that Mr. Ruminer was wearing his seat belt at the time of the accident ·and that the belt should have locked but did not. In support of her view she cites the Defendant's experts who in this case have taken the position that if Mr. Ruminer had been wearing the seat belt at the time of the accident he would not have sustained the severe head injuries he in fact sustained. She therefore draws the common sense conclusion that Mr. Ruminer was in fact wearing the seat belt and yet was severely injured, then there must have been some defect in the manufacture or design of the seat belt system. I will discuss the validity of [*33] this reasoning later on. But, for now I simply note that Dr. Bidez's opinion is not based upon her scientific training and expertise, any disassembly or examination of the seat belt system, or any testing thereof. Rather, she draws her conclusions in the same manner as lay persons, *i.e.*, by exercising simple logic.

(Court's January 17, 2006 letter, Docket No. 141).

Dr. Bidez offers no opinion based upon her scientific expertise regarding a specific manufacturing or design defect. She testified that "there may or may not be a manufacturing defect" and admitted: "I have not attempted to nail down what specifically caused the defective performance." (Bidez depo. at pp. 16 & 23). Since Dr. Bidez has no opinion concerning any specific defect -- either manufacturing or design -- for what purpose if any, is her testimony that there were potentially twelve (12) causes for the purported retractor failure being offered?

*Federal Rule of Evidence 702* governs the admission of expert testimony. The rule provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine [*34] a fact in issue, a witness qualified as an expert by knowledge, skill, or experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

A district court has great latitude in determining whether expert testimony meets the reliability requisites of *Rule 702*. In making that determination, the district court is free to evaluate one or all of the following factors: (1) whether the theory or technique can be or has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) whether the theory or technique has a known or potential error rate and standards controlling the technique's operation; and (4) whether the theory or technique is generally accepted in the scientific community. *Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 592-95, 113 S.Ct. 2786 125 L.Ed.2d 469 (1993)* (stating that "many factors will bear on the inquiry" and that the above-listed factors [*35] do not constitute "a definitive checklist or test").

Dr. Bidez cannot offer testimony about what, in particular, was wrong with the retractor. Instead, she proposes to take the stand and to speculate on possible causes for alleged retractor failure. In support, she relies upon FMEA documents generated by GM engineers and used before-the-fact to predict possible failure modes, their potential for occurring, and the risk priority for such failures.

It therefore does not appear that Dr. Bidez used any of her expert knowledge or training to determine the existence of or the nature of any alleged defect. She assumes retractor failure as the cause for the alleged seat-

Case 1:05-cv-00645-MSK-BNB   Document 60-1   Filed 07/21/06   USDC Colorado   Page 11 of
05-44481-rdd   Doc 20074-3   Filed 05/14/10   Entered 05/14/10 00:24:53   Exhibit F
part 2   Pg 12 of 122

Page 11

2006 U.S. Dist. LEXIS 37861, *

belt failure, without adequately demonstrating why. She concludes that "if Joel Ruminer's restraint system had properly coupled his body to the vehicle seat and/or provided air bag cushioning to attenuate impact energy, he would have sustained no serious permanent injury in this crash." (Bidez Report, Exhibit J to Plaintiff's response). In other words, the nature of Plaintiff's injuries demonstrate that the product did not perform as it should have. An evidentiary gap still remains. Assuming Plaintiff was wearing his seat [*36] belt, was the seat belt's failure the result of a defect dating back to the vehicle's manufacture or was the failure caused by some post-manufacturing defect or some other non-defect cause.

"[A]n expert's opinion is not to be accepted merely because it is articulated, but must instead have a sufficient factual basis." *Anderson v. National R.R. Passenger Corp., 866 F.Supp. 937, 945 (E.D. Va. 1994),* aff'd, *74 F.3d 1230 (4th Cir. 1996).* The Plaintiff claims on one hand that he has offered proof of a specific defect and on the other that no such proof is required because his case may be proven by circumstantial evidence.

First, assuming this case was in fact suitable for proof by circumstantial evidence, then the jurors could apply their common sense to reach the logical conclusion that the product was defective at the time it left GM's control. (*See* Court's letter of January 17, 2006, quoted *supra* at p 17). In such circumstance Dr. Bidez's testimony, as tendered, would not be helpful because it would not tell the jury anything that lay persons could not logically deduce on their own; she would be drawing her conclusion in the same manner as lay [*37] persons, *i.e.,* by exercising simple logic. Accordingly, her testimony regarding possible causes for the product failure, by relying on the testimony of GM's experts and by resorting to a recitation of possible causes by utilizing FMEA reports, would be unnecessary in a circumstantial evidence case. n7

n7 This is not to say that GM might not open the door to such testimony depending on how it chose to defend such a case.

In a direct evidence case, Dr. Bidez's testimony regarding possible causes is not sufficiently reliable to be admissible. She admitted that the never attempted "to nail down what specifically caused the defective performance." (Bidez Depo. at p. 23, In 8-19). She elected not to test the seat belt system and she also never asked anyone else to disassemble the retractor. GM has indicated that if the retractor were disassembled then it could be determined whether any of the twelve identified "possible causes" for the retractor failure in fact existed. Plaintiff admits that testing, at a minimum, [*38] would

rule out manufacturing failures. Certainly, it us not enough to put an expert on the stand and to have her speculate regarding possible causes. There must be an evidentiary foundation for the expert's opinion. That foundation is missing here.

In its present form, Dr. Bidez's proposed testimony is not sufficiently reliable to be admissible.

**(3) Plaintiff has failed to come forward with sufficient evidence to support an award of punitive damages.**

Although this issue appears academic in the light its prior rulings, the Court will nevertheless take up and deal with Plaintiff's claim of punitive damages. As the Court indicated in Opinion # 1, Plaintiff has the burden to come forward with admissible evidence to support its claim for punitive damages. To support such an award, Plaintiff has now attached records of eleven "similar" incidents and two crash test reports. Prior to the admission to evidence of other accidents involving alleged seat belt failures, Plaintiff must make a showing that such prior accidents are "sufficiently similar in time, place or circumstances to be probative." *First Security Bank v. Union Pacific RR Co., 152 F.3d 877, 879 (8th Cir. 1998)* [*39] (citations omitted); *See also Oates v. St. Louis Southwestern RR Co., 266 Ark. 527, 587 S.W.2d 10, 11 (Ark. 1979)*("before other accidents may be offered to show a dangerous or defective condition, and thereby notice to the defendant, it must first be shown there is a substantial similarity of conditions in the proof as to make it reasonable or probably that the same causes or conditions produced the same or similar results").

Plaintiff makes no effort to demonstrate or explain how these complaints and test reports are substantially similar to the facts and circumstances of any alleged product defect in this case. Some are clearly not relevant. For example, one of the allegedly similar accidents involves a complaint concerning a customer who blacked out following a seizure and hit a tree. The customer complains that his air bag did not deploy, but doesn't remember if he was wearing his seatbelt. (See Exhibit 4 to Docket No. 146). In another complaint involving a 7 car pile-up, the complainant's primary complaint is the failure of the airbag to deploy, but he also complains that the passenger side seat belt bracket came loose. (See Exhibit 5 to Docket No. 146).

The Court recognizes [*40] that Plaintiff's task in this regard is complicated by the fact that Plaintiff does not know what, if anything, was specifically wrong with the seat belt retractor. This highlights another practical problem with proceeding on the theory than some unidentified defect caused a product failure. In any event, Plaintiff has clearly failed to carry his burden to produce admissible evidence from which a jury could find, as

Case 1:05-cv-00645-MSK-BNB   Document 60-1   Filed 07/21/06   USDC Colorado   Page 12 of
05-44481-rdd   Doc 20074-3   Filed 05/14/10   Entered 05/14/10 00:24:53   Exhibit F
part 2   Pg 13 of 122

Page 12

2006 U.S. Dist. LEXIS 37861, *

required by Arkansas law, that GM acted with malice or with reckless disregard of the consequences from which malice may be inferred. *See* Arkansas Model Jury Instruction 2218; *In re Aircraft Accident at Little Rock, Arkansas, 231 F.Supp.2d 852 (E.D. Ark. 2002)*(discussing Arkansas punitive damages law).

**CONCLUSION**

For the reasons herein stated,

IT IS HEREBY ORDERED THAT Plaintiff Joel Ruminer's Request to Supplement the Record (Docket No. 146) be, and it is hereby, GRANTED.

IT IS FURTHER ORDERED THAT Defendant GM's Motion for Summary Judgment (Docket No. 100) be, and it is hereby, GRANTED with respect to Plaintiff's remaining claims, all of which are dependent on the theory that the seat belt system's failure to lock was due to some unspecified [*41] manufacturing or design defect. The Court previously granted summary judgment on Plaintiff's claims based on a defective air bag. Accordingly, no other claims remain and Defendants are entitled to judgment as a matter of law. Judgment will be entered separately.

IT IS FURTHER ORDERED THAT Defendant GM's Motion to Disqualify Dr. Bidez (Docket No. 117) be, and it is hereby, GRANTED solely to the limited extent stated herein.

IT IS SO ORDERED this 6th day of February, 2006.

/s/ Garnett Thomas Eisele

UNITED STATES DISTRICT JUDGE

**JUDGMENT**

Pursuant to the Supplemental Memorandum Opinion and Order filed in this matter on this date and the Memorandum Opinion and Order entered on January 17, 2006, it is hereby Considered, Ordered, and Adjudged that the Defendants are entitled to judgment as a matter of law as to the claims raised by Plaintiff. It is further Considered, Ordered, and Adjudged that the Complaint in this matter be, and it is hereby, dismissed in its entirety.

IT IS SO ORDERED this 6th day of February, 2006.

/s/ Garnett Thomas Eisele

UNITED STATES DISTRICT JUDGE

Case 1:05-cv-00645-MSK-BNB   Document 60-2   Filed 07/21/06   USDC Colorado   Page 1 of 5
05-44481-rdd   Doc 20074-3   Filed 05/14/10   Entered 05/14/10 00:24:53   Exhibit F
part 2   Pg 14 of 122

1 of 13 DOCUMENTS

**LORRAINE KLOOTWYK, individually and as Administrator of the Estate of HAROLD KLOOTWYK, Deceased, Plaintiff, v. DAIMLER CHRYSLER CORPORATION, et al., Defendants.**

No. 01 C 6127

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

*2003 U.S. Dist. LEXIS 7768; CCH Prod. Liab. Rep. P16,611*

May 2, 2003, Decided
May 7, 2003, Docketed

**DISPOSITION:** [*1] Defendants' motion for summary judgment granted.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff sued defendant car manufacturer under the Illinois Wrongful Death Act, 740 Ill. Comp. Stat. 180/1, alleging claims for negligence and strict products liability. Plaintiff alleged that the manufacturer defectively designed the driver-side air bag system in one of its van, which caused plaintiff's husband to suffer fatal injuries upon collision. The manufacturer moved for summary judgment.

**OVERVIEW:** The decedent had a history of severe arteriosclerotic cardiovascular disease. While driving the van, he came to a complete stop at a stop sign. At or near the stop sign, he suffered a sudden cardiac arrest. Moments later, the van slowly proceeded forward coming to a rest when it collided with a house. The driver-side air bag did not deploy in the collision as the speed and impact of the accident was below the deployment threshold. The manufacturer proffered expert testimony that decedent suffered a sudden cardiac arrest and the injuries he sustained due to the accident were not, in all medical probability, fatal injuries. Plaintiff failed to present any expert testimony. The court held that, because plaintiff presented no evidence on the causation element, she did not state a prima facie case of strict products liability. Plaintiff's failure to provide proof of causation was fatal to her claim. Also, she offered no proof that the condition of the driver-side airbag was unreasonably dangerous. Plaintiff needed to offer expert testimony to attest to the fact that the driver-side air bag was unreasonably dangerous. The negligence claim failed for the same reason.

**OUTCOME:** The court granted defendants' motion for summary judgment in its entirety.

**LexisNexis(R) Headnotes**

*Civil Procedure > Summary Judgment > Summary Judgment Standard*
[HN1] Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A genuine issue of material fact exists for trial when, in viewing the record and all reasonable inferences drawn from it in a light most favorable to the non-movant, a reasonable jury could return a verdict for the non-movant.

*Civil Procedure > Summary Judgment > Burdens of Production & Proof*
[HN2] The movant bears the initial burden of establishing that no genuine issue of material facts exists for trial. If the movant meets this burden, the non-movant must set forth specific facts that demonstrate the existence of a genuine issue for trial. Fed. R. Civ. P. 56(e). The non-movant may not rest upon the mere allegations or denials of the adverse party's pleading, but instead, must produce proper documentary evidence to support his contentions. Summary judgment should be granted if the non-movant has failed to produce sufficient evidence to establish the existence of an essential element of its case on which it bears the burden of proof" at trial.

EXHIBIT

A-9

Case 1:05-cv-00645-MSK-BNB   Document 60-2   Filed 07/21/06   USDC Colorado   Page 2 of 5
05-44481-rdd   Doc 20074-3   Filed 05/14/10   Entered 05/14/10 00:24:53   Exhibit F
part 2   Pg 15 of 122

Page 2

2003 U.S. Dist. LEXIS 7768, *; CCH Prod. Liab. Rep. P16,611

*Civil Procedure > State & Federal Interrelationships > Application of State Law*
[HN3] A ruling on a motion for summary judgment necessarily implicates the substantive law that would govern the case at the trial on the merits. As a federal court sitting in diversity jurisdiction, the court applies the substantive law of the state in which it sits.

*Torts > Products Liability > Strict Liability*
[HN4] The doctrine of strict products liability as set forth in the Restatement (Second) of Torts § 402A (1965) has been adopted in Illinois. Therefore, under Illinois law, a claim for strict products liability requires proof that: 1) the injury or damages resulted from a condition of the product manufactured by the defendant; 2) the condition was an unreasonably dangerous one; and 3) the condition existed at the time the product left the manufacturer's control. Restatement (Second) of Torts § 402(A). Generally, plaintiffs favor strict products liability because it does not require proof of fault. However, while a plaintiff need not prove the manufacturer's fault in order to prevail on this theory, strict products liability is not absolute liability. All three elements of a strict products liability claim can be established by either direct or circumstantial evidence. When circumstantial evidence is used, it should, at a minimum, include either proof that tends to exclude other extrinsic causes or an expert opinion that the product contained an unreasonably dangerous defect at the time it left the manufacturer's control.

*Torts > Products Liability > Strict Liability*
[HN5] Under Illinois law, proximate cause for strict products liability can only be established when there is a reasonable certainty that the defendant's acts caused the injury. Reasonable certainty that the defendant's conduct caused the injury in question may be established by an inference of probability, not mere possibility.

*Civil Procedure > Summary Judgment > Summary Judgment Standard*
[HN6] Summary judgment is proper when complete failure of proof concerning an essential element of the non-movant's case necessarily renders all other facts immaterial.

*Torts > Products Liability > Strict Liability*
[HN7] In a cause of action on the theory of strict products liability, a legal inference of defectiveness may not be drawn merely from evidence that an injury occurred.

*Torts > Products Liability > Negligence*
[HN8] Illinois imposes a duty on manufacturers to make a product that is reasonably safe.

*Torts > Products Liability > Negligence*
[HN9] In order for a defendant to be liable for negligence, a plaintiff must establish that the defendant had a duty towards the plaintiff, defendant breached that duty, and the breach was a proximate cause of plaintiff's injury.

*Torts > Products Liability > Strict Liability*
*Torts > Products Liability > Negligence*
[HN10] The distinction between a strict products liability claim and a negligence claim lies in the fault concept. In strict products liability, the focus centers on the defective condition of the product, irrespective of the manufacturer's fault. On the other hand, in negligence liability, proof of the defendant's fault is required by a showing that the defendant breached a specific duty toward the plaintiff. Nonetheless, under both theories, "the threshold question" is whether the product was of unreasonably dangerous design, specifically, whether the product is dangerous because it fails to perform in the manner reasonably to be expected in light of its nature and intended function.

*Torts > Products Liability > Negligence*
[HN11] In products liability actions, a manufacturer has a nondelegable duty to produce a product that is reasonably safe.

**COUNSEL:** LORRAINE KLOOTWYK, plaintiff, Pro se, Chicago, IL.

For DAIMLERCHRYSLER CORPORATION, DAIMLERCHRYSLER MOTORS CORPORATION, defendants: Brian William Bell, Angela Rose Karras, Swanson, Martin & Bell, Chicago, IL.

For DAIMLERCHRYSLER CORPORATION, DAIMLERCHRYSLER MOTORS CORPORATION, defendants: Peter M. Kellett, Kathleen M Horchler, Feeney, Kellett, Wienner & Bush, Bloomfield Hills, MI.

**JUDGES:** David H. Coar, United States District Judge.

**OPINIONBY:** David H. Coar

**OPINION:**

**MEMORANDUM OPINION AND ORDER**

Case 1:05-cv-00645-MSK-BNB   Document 60-2   Filed 07/21/06   USDC Colorado   Page 3 of 5
05-44481-rdd   Doc 20074-3   Filed 05/14/10   Entered 05/14/10 00:24:53   Exhibit F
part 2   Pg 16 of 122

Page 3

2003 U.S. Dist. LEXIS 7768, *; CCH Prod. Liab. Rep. P16,611

Plaintiff, Lorraine Klootwyk ("Plaintiff" or "Klootwyk"), filed a two-count diversity action under the *Illinois Wrongful Death Act, 740 ILCS 180/1*, against DaimlerChrysler Corporation and DaimlerChrysler Motors Corporation (collectively "DaimlerChrysler" or "Defendants"). Count I is a strict products liability claim and Count II is a negligence claim. In both counts, Plaintiff alleges that Defendants defectively designed the driver-side air bag system in its 1998 Dodge Ram 2500 van, which caused Plaintiff's husband to suffer fatal injuries upon collision. Before this Court is Defendants' motion for summary judgment. For [*2] the following reasons, this Court GRANTS defendants' motion for summary judgment.

## I. Summary Judgment Standard

[HN1] Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Fed.R.Civ.P. 56(c)*; *Peerman v. Georgia-Pacific Corp., 35 F.3d 284, 286 (7th Cir. 1994)* (quoting *Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986))*. A genuine issue of material fact exists for trial when, in viewing the record and all reasonable inferences drawn from it in a light most favorable to the non-movant, a reasonable jury could return a verdict for the non-movant. *Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986)*; *Whetstine v. Gates Rubber Co., 895 F.2d 388, 392 (7th Cir. 1990)*.

[HN2] The movant bears the initial burden of establishing that no genuine issue of material facts exists for trial. *Celotex, 477 U.S. at 323*. If the [*3] movant meets this burden, the non-movant must set forth specific facts that demonstrate the existence of a genuine issue for trial. *Rule 56(e)*; *Whetstine, 895 F.2d at 392* (citing *Celotex, 477 U.S. at 324*). The non-movant "may not rest upon the mere allegations or denials of the adverse party's pleading," but instead, must produce "proper documentary evidence to support his contentions." *Whetstine, 895 F.2d at 392* (citing *Howland v. Kilquist, 833 F.2d 639, 642 (7th Cir. 1987))*. Summary judgment should be granted if the non-movant has "failed to produce sufficient evidence to establish the existence of an essential element of its case on which it bears the burden of proof" at trial. *Peerman, 35 F.3d at 287*(citing *Celotex, 477 U.S. at 322*).

## II. Background

The following facts are taken from Defendants' Statement of Uncontested Material Facts. n1 At all relevant times, Klootwyk has been a resident of Illinois. Defendants are Delaware corporations with their principal places of business in Michigan.

n1 Despite numerous extensions of time and this Court's *Rule 56* cautionary instructions, Plaintiff did not respond to Defendants' Motion for Summary Judgment. Therefore, Defendants' material facts that are supported by the record are deemed admitted. LR 56.1(b)(3)(B).

[*4]

Mr. Klootwyk, the decedent, had a history of severe arteriosclerotic cardiovascular disease. On June 1, 1998, Mr. Klootwyk was driving his 1998 Dodge Ram 2500 van westbound on Wellington Street in Chicago, Illinois. The Dodge Ram van was equipped with a driver restraint system which included a driver-side air bag system. The driver-side air bag is designed to deploy in moderate to severe frontal collisions. At the intersection of Wellington and Lakewood, Mr. Klootwyk came to a complete stop at a stop sign. At or near the stop sign, Mr. Klootwyk suffered a sudden cardiac arrest. Moments later, the van slowly proceeded through the intersection and veered off to the right, traveling off of the street and over the curb across three properties. The van finally came to a rest when it collided with a house at 1310 Wellington Street. The driver-side air bag in the vehicle did not deploy in the collision as the speed and impact of the accident was below the deployment threshold. Witnesses at the scene, who observed the van during the accident and later approached it, noted that Mr. Klootwyk was blue in color, immobile, and unresponsive. The injuries that Mr. Klootwyk reportedly sustained from [*5] the accident (injuries to his neck), were not, in all medical probability, fatal injuries.

On May 1, 2001, Plaintiff, individually and as Administrator of the Estate of Harold Klootwyk, deceased, filed her products liability complaint against Defendants in the Circuit Court of Cook County. The Complaint consists of two counts, both of which allege that the driver-side air bag system was defective in that it failed to deploy during the collision, causing her husband fatal injuries. On August 8, 2001, the case was removed to this Court pursuant to *28 U.S.C. § § 1332 and 1441* as complete diversity of citizenship between the parties exists and the amount in controversy exceeds $ 75,000.

In accordance with this Court's Scheduling Order, the parties were instructed to disclose expert testimony, pursuant to *Rule 26(a)(2)*, on or before September 12, 2002. Defendants complied with the order, disclosing written reports of several expert witnesses who opined that the driver-side air bag properly did not deploy in the crash and that it was of a reasonable, safe and effective

Case 1:05-cv-00645-MSK-BNB   Document 60-2   Filed 07/21/06   USDC Colorado   Page 4 of 5
05-44481-rdd   Doc 20074-3   Filed 05/14/10   Entered 05/14/10 00:24:53   Exhibit F
part 2   Pg 17 of 122

Page 4

2003 U.S. Dist. LEXIS 7768, *; CCH Prod. Liab. Rep. P16,611

design. They also proffered expert testimony that Mr. Klootwyk suffered a sudden cardiac arrest [*6] at or near the stop sign at the intersection of Wellington and Lakewood and that the injuries that Mr. Klootwyk sustained due to the accident were not, in all medical probability, fatal injuries. Plaintiff failed to present any expert testimony.

## III. Discussion

[HN3] A ruling on a motion for summary judgment necessarily implicates the substantive law that would govern the case at the trial on the merits. *Anderson, 477 U.S. at 252.* As a federal court sitting in diversity jurisdiction, this Court applies the substantive law of the state in which it sits, which is Illinois. *Land v. Yamaha Motor Corp., 272 F.3d 514, 516 (7th Cir. 2001).* Therefore, Illinois negligence and strict products liability law applies to this case. This Court addresses each Count of the Complaint in turn.

## A. Count I - Strict Liability

[HN4] The doctrine of strict products liability as set forth in the Restatement (Second) of Torts *section 402A* (1965) has been adopted in Illinois. *Coney v. J.L.G. Industries, Inc., 97 Ill.2d 104, 110, 454 N.E.2d 197, 200, 73 Ill. Dec. 337 (1983)* (citing *Suvada v. White Motor Co., 32 Ill.2d 612, 210 N.E.2d 182 (1965)).* [*7] Therefore, under Illinois law, a claim for strict products liability requires proof that: 1) the injury or damages resulted from a condition of the product manufactured by the defendant; 2) the condition was an unreasonably dangerous one; and 3) the condition existed at the time the product left the manufacturer's control. Restatement (Second) of Torts § 402A. Generally, plaintiffs favor strict products liability because it does not require proof of fault. *Todd v. Societe Bic S.A., 21 F.3d 1402, 1405 (7th Cir. 1993).* However, while a plaintiff need not prove the manufacturer's fault in order to prevail on this theory, "strict products liability is not absolute liability." *Korando v. Uniroyal Goodrich Tire Co., 159 Ill.2d 335, 343, 637 N.E.2d 1020, 1024, 202 Ill. Dec. 284 (1994).* All three elements of a strict products liability claim can be established by either direct or circumstantial evidence. *Sorce v. Naperville Jeep Eagle Inc., 309 Ill.App.3d 313, 327, 722 N.E.2d 227, 237, 242 Ill. Dec. 738 (1999).* When circumstantial evidence is used, "it should, at a minimum, include either proof that tends to exclude other extrinsic causes [*8] or an expert opinion that the product contained an unreasonably dangerous defect at the time it left the manufacturer's control." *Sorce, 309 Ill.App.3d at 327, 722 N.E.2d at 237* (citing *Sanchez v. Firestone Tire & Rubber Co., 237 Ill.App.3d 872, 874, 604 N.E.2d 948, 950, 178 Ill. Dec. 425 (1992)).*

Plaintiff's strict liability count fails on each element. As to the first element, [HN5] under Illinois law, proximate cause can only be established when there is a reasonable certainty that the defendant's acts caused the injury. *Wintz v. Northrop Corp., 110 F.3d 508, 515 (7th Cir. 1997)* (citing *Schultz v. Hennessy Industries, 222 Ill.App.3d 532, 540, 584 N.E.2d 235, 241, 165 Ill. Dec. 56 (1991)).* Reasonable certainty that the defendant's conduct caused the injury in question may be established by an "inference of probability, not mere possibility." *Wojtowicz v. Cervantes, 284 Ill.App.3d 524, 532, 672 N.E.2d 357, 362, 219 Ill. Dec. 849 (1996)* (citing *McCullough v. Gallaher & Speck, 254 Ill.App.3d 941, 949, 627 N.E.2d 202, 208, 194 Ill. Dec. 86 (1993)).*

As Plaintiff has presented no evidence [*9] on the causation element, she does not state a *prima facie* case of strict products liability. The only evidence in the record pertaining to the causation element is testimony offered by Defendants' experts who opined that the injuries Mr. Klootwyk sustained from the collision were not fatal and that his death was more probably related to the sudden cardiac arrest he experienced just moments before the collision.

Plaintiff's failure to provide proof of causation is fatal to her claim. See *Lewis v. Holsum of Ft. Wayne, Inc., 278 F.3d 706, 709 (7th Cir. 2002)* (stating that [HN6] summary judgment is proper when "complete failure of proof concerning an essential element of the [nonmovant's] case necessarily renders all other facts immaterial") (citing *Celotex, 477 U.S. at 323).* Further, even if the Court were to overlook Plaintiff's failure to provide proof of causation, she still could not survive summary judgment because she also fails to satisfy the second and third elements of her strict products liability claim. Namely, she offers absolutely no proof that the condition of the driver-side airbag was unreasonably dangerous or that the such condition [*10] existed at the time the Dodge Ram van left the Defendants' control. Rather, Plaintiff merely asserts that her husband would not have sustained fatal injuries without a defect in design or manufacture being present. This mere speculation, however, is insufficient to defeat a motion for summary judgment. *Norman v. Ford Motor Co., 160 Ill.App.3d 1037, 1040, 513 N.E.2d 1053, 1055, 112 Ill. Dec. 444 (1987).* "[HN7] In a cause of action on the theory of strict products liability, 'a legal inference of defectiveness may not be drawn merely from evidence that an injury occurred'" *Id.* (quoting *Artis v. Fibre Metal Products, 115 Ill.App.3d 228, 232, 450 N.E.2d 756, 759, 71 Ill. Dec. 68 (1983)).* In a case such as this one, Plaintiff needed to offer expert testimony to attest to the fact that the driver-side air bag was unreasonably dangerous, as this claim involves technical matters beyond the common knowledge and experience of jurors. See *Baltus v.*

Case 1:05-cv-00645-MSK-BNB   Document 60-2   Filed 07/21/06   USDC Colorado   Page 5 of 5
05-44481-rdd   Doc 20074-3   Filed 05/14/10   Entered 05/14/10 00:24:53   Exhibit F
part 2   Pg 18 of 122

2003 U.S. Dist. LEXIS 7768, *; CCH Prod. Liab. Rep. P16,611

*Weaver Division of Kiddie & Co. Inc.*, *199 Ill.App.3d 821, 834, 836-38, 557 N.E.2d 580, 589-91, 145 Ill. Dec. 810 (1990)* (collecting cases explaining when and why presentation of expert testimony is necessary [*11] in strict products liability cases). Thus, as Plaintiff fails to offer any proof supporting her strict products liability claim, summary judgment is granted in favor of Defendants.

## B. Count II - Negligence

Like Plaintiff's strict liability claim, her negligence claim fails because Plaintiff fails to offer evidence essential for her claim. As discussed above, Plaintiff has set forth no evidence that the driver-side air bag was defective, or "unreasonably dangerous," and that this defect proximately caused the decedent's injuries. [HN8] Illinois imposes a duty on manufacturers to make a product that is reasonably safe. *Masters v. Hesston Corp., 291 F.3d 985, 990 (7th Cir. 2002)* (citing *Baltus v. Weaver Div. of Kiddie & Co., 199 Ill.App.3d 821, 557 N.E.2d 580, 585, 145 Ill. Dec. 810 (1990))*. Further, [HN9] in order for a defendant to be liable for negligence, a plaintiff must establish that the defendant had a duty towards the plaintiff, defendant breached that duty, and the breach was a proximate cause of plaintiff's injury. *Norman, 160 Ill.App.3d at 1040, 513 N.E.2d at 1054*.

[HN10] The distinction between a strict products liability claim and [*12] a negligence claim lies in the fault concept. In strict products liability, the focus centers on the defective condition of the product, irrespective of the manufacturer's fault. On the other hand, in negligence liability, proof of the defendant's fault is required by a showing that the defendant breached a specific duty toward the plaintiff. *Baltus, 199 Ill.App.3d. at 829, 557 N.E.2d at 585*. Nonetheless, under both theories, "the threshold question" is whether the product was "of unreasonably dangerous design," specifically, "whether the product is dangerous because it fails to perform in the manner reasonably to be expected in light of its nature and intended function." *Id.*

While it is clear that Defendants owed Plaintiff a duty, *Baltus, 199 Ill.App.3d. at 829, 557 N.E.2d at 585* ("[HN11] In products liability actions, a manufacturer has a nondelegable duty to produce a product that is reasonably safe."), Plaintiff cannot show that Defendants breached that duty nor that such alleged breach caused Mr. Klootwyk's injuries. Plaintiff has failed to present any evidence, expert or otherwise, that supports her allegation that the driver-side air bag was [*13] defective. Thus, this Court holds that Defendants were not negligent in their duty to safely design and manufacture the air bag system in question, and it grants Defendants' motion for summary judgment as to Count II.

## IV. Conclusion

For the foregoing reasons, this Court GRANTS Defendants' motion for summary judgment in its entirety. This case is closed.

**Enter:**

**David H. Coar**

**United States District Judge**

**Dated: May 2, 2003**

**JUDGMENT IN A CIVIL CASE**

Decision by Court. This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

IT IS HEREBY ORDERED AND ADJUDGED that Defendant's Motion for Summary Judgment is granted in its entirely.

Summary Judgment is entered in favor of the defendants Daimler Chrysler Corporation and Daimler Chrysler Motors Corporation and against the plaintiff, Lorraine Klootwyk, individually and as Administrator of the Estate of Harold Klootwyk, Deceased. This action is closed.

Date: May 02 2003

Case 1:05-cv-00645-MSK-BNB   Document 60-3   Filed 07/21/06   USDC Colorado   Page 1 of 4
05-44481-rdd   Doc 20074-3   Filed 05/14/10   Entered 05/14/10 00:24:53   Exhibit F
part 2   Pg 19 of 122

16 of 100 DOCUMENTS

**DEBRA TURNER, Plaintiff, v. DAIMLERCHRYSLER CORPORATION, Defendant.**

**CIVIL ACTION NO. 99-0696-RV-L**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF ALABAMA, SOUTHERN DIVISION**

*2000 U.S. Dist. LEXIS 18244*

**October 31, 2000, Decided**
**October 31, 2000, Filed**

**DISPOSITION:** [*1] DaimlerChrysler's motion for summary judgment GRANTED. FINAL JUDGMENT entered in favor of defendant DaimlerChrysler Corporation and against plaintiff Debra Turner.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Defendant moved for summary judgment in plaintiff's action brought pursuant to the Alabama Extended Manufacturer's Liability Doctrine, and asserting claims of negligence, wantonness, and breach of implied warranty.

**OVERVIEW:** Plaintiff purchased a new automobile manufactured by defendant. The automobile was covered by a new vehicle limited warranty. While plaintiff's warranty was in force, she was struck head-on by another vehicle while driving her automobile. The airbag in plaintiff's vehicle allegedly failed to deploy. As a result, plaintiff suffered serious injuries. Plaintiff brought action pursuant to the Alabama Extended Manufacturer's Liability Doctrine, and state law claims for negligence, wantonness, and breach of implied warranty. Defendant manufacturer moved for summary judgment. The court found that defendant was entitled to summary judgment, as plaintiff failed to offer any evidence to show that the automobile's driver-side airbag restraint system was defective. Simply establishing that the airbag did not deploy and that she was injured was not enough. Defendant offered affidavit evidence demonstrating that there were no defects in the driver-side airbag restraint system, that the airbag system did not proximately cause any of plaintiff's injuries, and that the airbag system performed as expected and designed in plaintiff's crash. Plaintiff did not offer any evidence to the contrary.

**OUTCOME:** Defendant's motion for summary judgment was granted, as plaintiff failed to offer any evidence that airbag restraint system was defective or was the proximate cause of her injuries.

**LexisNexis(R) Headnotes**

*Civil Procedure > Summary Judgment > Summary Judgment Standard*
[HN1] Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). In reviewing a summary judgment motion, the court must view the evidence and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party.

*Civil Procedure > Summary Judgment > Burdens of Production & Proof*
[HN2] The party seeking summary judgment has the initial burden of showing that there is no genuine issue of material fact. Once the moving party meets that burden, the non-moving party must set forth specific facts which demonstrate that there is a genuine issue of material fact for trial. A genuine issue of material fact exists for trial if a reasonable jury could return a verdict in favor of the non-moving party. To avoid an adverse ruling on a motion for summary judgment, the non-moving party may not rest upon the mere allegations or denials of its pleading. Fed R. Civ. P. 56(e). Nor may the non-moving party defeat summary judgment by providing a mere "scintilla" of evidence. Instead, there must be a genuine factual conflict in the evidence to support a jury question.



**EXHIBIT**

A-10

tabbies

Case 1:05-cv-00645-MSK-BNB   Document 60-3   Filed 07/21/06   USDC Colorado   Page 2 of 4
05-44481-rdd   Doc 20074-3   Filed 05/14/10   Entered 05/14/10 00:24:53   Exhibit F
part 2   Pg 20 of 122

2000 U.S. Dist. LEXIS 18244, *

*Torts > Products Liability > Negligence*
*Torts > Products Liability > Breach of Warranty*
[HN3] The theories of negligence, wantonness, and breach of an implied warranty have all been incorporated by the Alabama Extended Manufacturer's Liability Doctrine (AEMLD). A court will thus consider those claims as part and parcel of a plaintiff's AEMLD claim.

*Torts > Products Liability > Negligence*
[HN4] To establish liability under the Alabama Extended Manufacturer's Liability Doctrine, a plaintiff must prove: He suffered injury or damages to himself or his property by one who sells a product in a defective condition unreasonably dangerous to the plaintiff as the ultimate user or consumer, if (a) the seller is engaged in the business of selling such a product, and (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it was sold.

*Torts > Products Liability > Negligence*
[HN5] The Alabama Supreme Court has recognized that the failure of a product does not presuppose the existence of a defect. This is particularly true where the product and its purported defect is of a complex and technical nature. In such situations, the plaintiff must affirmatively establish the defective condition of the product by means of expert testimony.

COUNSEL: For DEBRA TURNER, plaintiff: April A. England-Albright, Esq., Chestnut, Sanders, Sanders & Pettaway, Selma, AL.

For DAIMLER CHRYSLER CORPORATION, defendant: Michael L. Bell, Esq., J. Bradley Powell, Lightfoot, Franklin & White, Birmingham, AL.

JUDGES: RICHARD W. VOLLMER, JR., UNITED STATES DISTRICT JUDGE.

OPINIONBY: RICHARD W. VOLLMER, JR.

OPINION:

### ORDER

Plaintiff Debra Turner brings this action against defendant DaimlerChrysler Corporation pursuant to the Alabama Extended Manufacturer's Liability Doctrine (AEMLD). Turner also asserts state law claims for negligence, breach of implied warranty, negligent product design, negligent construction and assembly, and negligent failure to warn. The court denied defendant Daim-

lerChrysler's motion for summary judgment in its order of July 26, 2000. Upon reconsideration, that order is **VACATED**. After carefully reviewing the law and considering the submissions of the parties, the court concludes that the motion is due to be and is hereby **GRANTED**. n1

n1 The court held a pre-trial conference on October 3, 2000 during which the court notified the parties that it intended to grant summary judgment for the defendant.

[*2]

### I. BACKGROUND

On May 10, 1995, Turner purchased a new 1995 Jeep Cherokee from Don Dawson Jeep-Eagle, Inc., in Pensacola, Florida. The Cherokee was covered by a new vehicle limited warranty, which was in force for three years or 36,000 miles, whichever came first. The warranty covered the driver's supplemental restraint system components and limited any implied warranties to the three-year/36,000 mile coverage period.

On July 12, 1998, Turner was struck head-on by another vehicle while she was driving her Cherokee on County Road 23 in Conecuh County, Alabama. The airbag in Turner's vehicle allegedly failed to deploy. As a result, Turner claims, she suffered serious injuries to her face, shoulders, chest and knees.

On June 24, 1999, Turner filed a complaint in state court against Don Dawson and General Motors Acceptance Corporation (GMAC). The complaint alleged that Don Dawson and GMAC were liable as the seller and manufacturer, respectively, of Turner's Cherokee. On July 28, 1999, Don Dawson removed the case to federal court. Don Dawson also filed a motion to compel arbitration and, shortly thereafter, GMAC filed a motion to dismiss. The court granted both motions and allowed Turner [*3] to amend her complaint to add Daimler-Chrysler as a defendant. n2

n2 The court has since granted Turner's motion to dismiss Don Dawson from this case (Doc. 56).

Since that time, Turner has not submitted any expert disclosures or reports as required by *Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure*. She also failed to identify any expert witnesses by the April 3, 2000 discovery deadline set forth in the court's Rule 16(b) Scheduling Order (Doc. 22 P6). Two months later, Turner filed a motion to extend that deadline, which was denied be-

Case 1:05-cv-00645-MSK-BNB   Document 60-3   Filed 07/21/06   USDC Colorado   Page 3 of 4
05-44481-rdd   Doc 20074-3   Filed 05/14/10   Entered 05/14/10 00:24:53   Exhibit F
part 2   Pg 21 of 122

Page 3

2000 U.S. Dist. LEXIS 18244, *

cause Turner had not provided good cause for the untimely amendment.

## II. SUMMARY JUDGMENT STANDARD

[HN1] Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fed. R. Civ. P. 56(c).* In reviewing a summary judgment motion, the court must view the evidence [*4] and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party. See *Alexander v. Fulton County, 207 F.3d 1303, 1335 (11th Cir. 2000).*

[HN2] The party seeking summary judgment has the initial burden of showing that there is no genuine issue of material fact. See *Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986).* Once the moving party meets that burden, the non-moving party must set forth specific facts which demonstrate that there is a genuine issue of material fact for trial. See *Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-86, 106 S. Ct. 1348, 1355, 89 L. Ed. 2d 538 (1986).* A genuine issue of material fact exists for trial if a reasonable jury could return a verdict in favor of the non-moving party. See *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).*

To avoid an adverse ruling on a motion for summary judgment, the non-moving party "may not rest upon the mere allegations or denials of [its] pleading." *Fed R. Civ. P. 56(e).* Nor may the non-moving party defeat summary [*5] judgment by providing a mere "scintilla" of evidence. See *Burger King Corp. v. Weaver, 169 F.3d 1310, 1321 (11th Cir. 1999).* Instead, there must be a genuine factual conflict in the evidence to support a jury question. See *Continental Cas. Co. v. Wendt, 205 F.3d 1258, 1261 (11th Cir. 2000).*

## III. DISCUSSION

In this products liability action, Turner contends that the driver-side airbag restraint system in her 1995 Jeep Cherokee was defective within the meaning of the AEMLD. She also seeks recovery from DaimlerChrysler on the theories of negligence, wantonness, and breach of an implied warranty. [HN3] Those theories have all been incorporated by the AEMLD. See *Brock v. Baxter Healthcare Corp., 96 F. Supp. 2d 1352 (S.D. Ala. 2000).* See also *Veal v. Teleflex, Inc., 586 So. 2d 188, 191 (Ala. 1991); Shell v. Union Oil Co., 489 So. 2d 569, 571 (Ala. 1986).* The court will thus consider those claims "as part and parcel of [Turner's] AEMLD claim." *McPhail v.*

*Mitsubishi Motor Mfg. of Am., Inc., 80 F. Supp. 2d 1309, 1314 (S.D. Ala. 1997).*

[HN4] To establish liability under the AEMLD, a plaintiff must prove: [*6]

> He suffered injury or damages to himself or his property by one who sells a product in a defective condition unreasonably dangerous to the plaintiff as the ultimate user or consumer, if (a) the seller is engaged in the business of selling such a product, and (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it was sold.

*Casrell v. Altec Industries, Inc., 335 So. 2d 128, 132-33 (Ala. 1976).*

[HN5] The Alabama Supreme Court has recognized that "the failure of a product does not presuppose the existence of a defect." *Townsend v. General Motors Corp., 642 So. 2d 411, 415 (Ala. 1994).* This is particularly true where, as here, the product and its purported defect is of a "complex and technical nature." *Brooks v. Colonial Chevrolet-Buick, 579 So. 2d 1328, 1333 (Ala. 1991).* In such situations, the plaintiff must affirmatively establish the defective condition of the product by means of expert testimony. See *id. at 1332-33.* Turner, however, has not offered any evidence -- let alone expert testimony -- to show that her Cherokee's driver-side airbag restraint [*7] system was defective. Simply establishing that the airbag did not deploy and that she was injured is not enough; Turner must affirmatively show that the airbag system was defective and that this defect proximately caused her injuries. See *Townsend, 642 So. 2d at 415 (Ala.1994).*

For its part, DaimlerChrysler has offered affidavit evidence demonstrating:

(1) that there were no defects in the Cherokee's driver-side airbag restraint system;

(2) that the airbag system did not proximately cause any of Turner's injuries; and

(3) that the airbag system performed as expected and designed in Turner's crash. Because Turner has not offered any evidence to the contrary, she cannot meet her burden of showing through expert testimony that the airbag system was defective. DaimlerChrysler is therefore entitled to summary judgment.

Case 1:05-cv-00645-MSK-BNB   Document 60-3   Filed 07/21/06   USDC Colorado   Page 4 of 4
05-44481-rdd   Doc 20074-3   Filed 05/14/10   Entered 05/14/10 00:24:53   Exhibit F
part 2   Pg 22 of 122

Page 4

2000 U.S. Dist. LEXIS 18244, *

III. CONCLUSION

For the foregoing reasons, the court concludes (1) that Turner's negligence, wantonness n3 and breach of warranty claims have been subsumed by her AEMLD claim, and (2) that Turner has not set forth a prima facie case under the AEMLD because she has not offered any evidence or expert testimony that a defect existed [*8] in her 1995 Jeep Cherokee's driver-side airbag restraint system. Accordingly, the court **GRANTS** DaimlerChrysler's motion for summary judgment.

n3 Technically, Turner's complaint does not state a claim for wantonness, but Count Two (a negligence claim) contains a demand for punitive damages.

DONE this 31 day of October, 2000.

**RICHARD W. VOLLMER, JR.**

**UNITED STATES DISTRICT JUDGE**

**JUDGMENT** - JUDGEMENT ENTERED ON DOCKET 11/1/00

Pursuant to *Rule 58 of the Federal Rules of Civil Procedure*, **FINAL JUDGMENT** is entered in favor of defendant DaimlerChrysler Corporation and against plaintiff Debra Turner. In accordance with the court's October 31, 2000 order granting DaimlerChrysler's motion for summary judgment, Turner shall recover **NOTHING** from DaimlerChrysler. Each party shall bear its own costs.

DONE this 31 day of October, 2000.

**RICHARD W. VOLLMER, JR.**

**UNITED STATES DISTRICT JUDGE**

# EXHIBIT D

Case 1:05-cv-00645-MSK-BNB   Document 63   Filed 08/21/06   USDC Colorado   Page 1 of 5
05-44481-rdd    Doc 20074-3    Filed 05/14/10    Entered 05/14/10 00:24:53    Exhibit F
part 2    Pg 24 of 122

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 05-cv-645-MSK-BNB

JOSÉ C. ALFARO and
MARTHA ALFARO

      Plaintiff,

      v.

GENERAL MOTORS CORPORATION,
HONEYWELL, INC., f/k/a ALLIEDSIGNAL, INC.,
DELCO ELECTRONICS CORPORATION,
DELPHI AUTO SYSTEMS, f/k/a INLAND FISHER GUIDE
JOHN DOE, and JOHN DOE, INC.

      Defendants.

---

## GENERAL MOTORS CORPORATION'S MOTION TO ADJUDICATE SUMMARY JUDGMENT MOTION, WITH REQUEST FOR EXPEDITED CONSIDERATION

---

      Defendant General Motors Corporation ("GM") hereby respectfully requests that this Court enter an Order adjudicating GM's motion for summary judgment in light of Plaintiffs' failure to file a response to its motion for summary judgment. Further, in order to avoid unnecessary expenditure of time and resources, GM respectfully requests that the Court expedite its consideration of the present motion. In support thereof, GM states as follows:

      1.      On July 21, 2006, GM filed a motion for summary judgment and brief in support of that motion. *See* Defendant General Motors Corporation's Motion for Summary Judgment,

1

Case 1:05-cv-00645-MSK-BNB   Document 63   Filed 08/21/06   USDC Colorado   Page 2 of 5
05-44481-rdd   Doc 20074-3   Filed 05/14/10   Entered 05/14/10 00:24:53   Exhibit F
part 2   Pg 25 of 122

DKT. No. 59 (July 21, 2006); Defendant General Motors Corporation's Opening Brief in

Support of Its Motion for Summary Judgment, DKT No. 60 (July 21, 2006).

2.      Pursuant to D.C.COLO.LCivR 56.1(A), Plaintiffs response to GM's motion for

summary judgment was due no later than August 10, 2006.  D.C.COLO.LCivR 56.1(A) ("A

response brief *shall* be filed within *20 days* after the date of filing of the motion and opening

brief, or such other time as the court may order.") (emphasis added).  Plaintiffs have not filed a

response to GM's July 21, 2006 motion for summary judgment.  Additionally, Plaintiffs have not

made or sought an extension of time to respond to GM's motion for summary judgment.

3.      Defendant Honeywell International, Inc., also filed a motion for summary

judgment on July 18, 2006.  *See* Defendant, Honeywell International, Inc.'s Motion for Summary

Judgment, DKT. No. 58 (July 18, 2006).  Plaintiffs have likewise not filed a response to

Honeywell's motion for summary judgment, and have not sought an extension of time to respond

to the motion.

4.      Pursuant to D.C.COLO.LCivR 7.1(A), counsel for GM conferred with Plaintiffs

counsel regarding (1) their failure to file a response brief to GM's motion for summary

judgment, and (2) this motion.  Plaintiffs' counsel opposes this motion.

5.      "When a motion for summary judgment is made and supported as provided in this

rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's

pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule,

must set forth specific facts showing that there is a genuine issue for trial.  *If the adverse party*

*does not so respond, summary judgment, if appropriate, shall be entered against the adverse*

*party.*"  Fed. R. Civ. P. 56(e) (emphasis added).  Summary judgment shall be rendered "if the

Case 1:05-cv-00645-MSK-BNB   Document 63   Filed 08/21/06   USDC Colorado   Page 3 of 5
05-44481-rdd   Doc 20074-3   Filed 05/14/10   Entered 05/14/10 00:24:53   Exhibit F
part 2   Pg 26 of 122

pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

6.     Summary judgment is proper where the party opposing a motion for summary judgment fails to respond to that motion and the district court has examined the moving party's submission and determined that "it has met its initial burden of demonstrating that no material issues of fact remain for trial and the moving party is entitled to judgment as a matter of law." *Reed v. Nellcor Puritan Bennett*, 312 F.3d 1190, 1195 (10th Cir. 2002).

7.     For the reasons set forth in GM's motion for summary judgment and brief in support thereof, GM is entitled to summary judgment. *See id.*

8.     To avoid unnecessary expenditure of time and resources, GM respectfully requests that the court expedite consideration of this motion. Depositions of expert witnesses for Plaintiffs have been scheduled for August 22, 2006 (Denver, Colorado), August 25, 2006 (Santa Barbara, California), August 29, 2006 (Carlsbad, California), and August 30, 2006 (Denver, Colorado). Until the Court grants its motion for summary judgment, in order to diligently defend itself, GM will have to conduct these depositions. In taking these depositions, GM will incur time, travel, and expenses. Accordingly, GM respectfully requests that the Court expedite consideration of this motion in order to conserve the parties' resources.

WHEREFORE, GM respectfully requests that the Court (1) expedite its determination of this motion and (2) grant it summary judgment for the reasons set forth in its motion for summary judgment and brief in support thereof, and in light of Plaintiffs' failure to respond to its motion for summary judgment.

Case 1:05-cv-00645-MSK-BNB   Document 63   Filed 08/21/06   USDC Colorado   Page 4 of 5
05-44481-rdd   Doc 20074-3   Filed 05/14/10   Entered 05/14/10 00:24:53   Exhibit F
part 2   Pg 27 of 122

Respectfully submitted,

s/Charles L. Casteel

Charles L. Casteel (#6724)
DAVIS GRAHAM & STUBBS LLP
1550 Seventeenth Street, Suite 500
Denver, Colorado  80202
charles.casteel@dgslaw.com
(303) 892-9400 telephone
(303) 893-1379 facsimile

ELDRIDGE COOPER STEICHEN & LEACH, PLLC
Mary Quinn-Cooper (#11966)
mcooper@ecslok.com
Michael F. Smith (#14815)
msmith@ecslok.com
Harold C. Zuckerman (#11189)
hzuckerman@ecslok.com
P. O. Box 3566
110 W. 7th Street, Suite 200
Tulsa, Oklahoma 74101-3566
(918) 388-5555  telephone
(918) 388-5654 facsimile

*Attorneys for General Motors Corporation*

4

Case 1:05-cv-00645-MSK-BNB   Document 63   Filed 08/21/06   USDC Colorado   Page 5 of 5
05-44481-rdd   Doc 20074-3   Filed 05/14/10   Entered 05/14/10 00:24:53   Exhibit F
part 2   Pg 28 of 122

## CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of August, 2006, I electronically filed the foregoing **GENERAL MOTORS CORPORATION'S MOTION TO ADJUDICATE SUMMARY JUDGMENT MOTION, WITH REQUEST FOR EXPEDITED CONSIDERATION** with the Clerk of Court using CM/ECF for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic filing to the following ECF registrants:

Stanley Walter
518 Seventeenth Street, Suite 1044
Denver, Colorado  80202-4119
stan@stanwalterlaw.com
Attorney for Plaintiffs

Peter F. Jones
Hall & Evans, L.L.C.
1125 Seventeenth Street, Suite 600
Denver, Colorado  80202
jonesp@hallevans.com
Attorneys for Honeywell Inc.

Mary A. Wells
David G. Mayhan
Wells, Anderson & Race, LLC
1700 Broadway, Suite 1020
Denver, Colorado  80290
mwells@warllc.com
dmayham@warllc.com
Attorneys for Defendant Delco Electronics
and Delphi Automotive Systems, LLC

and I certify that I have mailed the documents to the following non CM/ECF participants:

Mr. Don C. Staab
1301 Oak Street
Hays, Kansas  67601

Attorney for Plaintiff Martha Alfaro

J. Kenneth Wainwright, Jr.
Barry B. Sutton
Harvey Kruse PC
1050 Wilshire Drive
Troy, Michigan  48084-1526

Attorneys for Delco Electronic, LLC and
Delphi Automotive Systems, LLC

s/Charles L. Casteel

Charles L. Casteel (#6724)
DAVIS GRAHAM & STUBBS LLP
1550 Seventeenth Street, Suite 500
Denver, Colorado  80202
charles.casteel@dgslaw.com

# EXHIBIT E

Case 1:05-cv-00645-MSK-BNB   Document 65   Filed 08/23/06   USDC Colorado   Page 1 of 5
05-44481-rdd   Doc 20074-3   Filed 05/14/10   Entered 05/14/10 00:24:53   Exhibit F
part 2   Pg 30 of 122

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO


Civil Action No.:  <u>05-CV-645-MSK-BNB</u>

JOSE ALFARO, and
MARTHA ALFARO,

     Plaintiff,

v.

GENERAL MOTORS CORPORATION,
HONEYWELL, INC. f/k/a ALLIEDSIGNAL, INC.
DELCO ELECTRONICS CORPORATION,
DELPHI  AUTO SYSTEMS, f/k/a/ INLAND FISHER GUIDE
JOHN DOE, and JOHN DOE, INC.

     Defendants.

---

### RESPONSE TO DEFENDANT GENERAL MOTORS CORPORATION'S MOTION TO ADJUDICATE SUMMARY JUDGEMENT MOTION AND FOR EXPEDITED CONSIDERATION

---

COME NOW, the Plaintiffs, José and Martha Alfaro, by and through their lawyers, Stanley J. Walter and Don C. Staab, and. in response to Defendant's motion state as follows:.

STATUS OF THE CASE

Case 1:05-cv-00645-MSK-BNB   Document 65   Filed 08/23/06   USDC Colorado   Page 2 of 5
05-44481-rdd   Doc 20074-3   Filed 05/14/10   Entered 05/14/10 00:24:53   Exhibit F
part 2   Pg 31 of 122

The parties had requested an enlargement of time for expert Discovery which was denied as of July 6, 2006.

Thereafter, Defendants were granted an enlargement to August 31, 2006, which was granted in order to allow Defendants to take depositions of Plaintiffs' experts.

General Motors has moved for Summary Judgment and filed copies of their experts' opinions in support thereof.

Although Plaintiffs' experts depositions have been set, they have not testified as of yet.[1]   The deadline set for response to dispositive motions pursuant to the scheduling order is September 11, 2006.

STANDARD FOR REVIEW

Rule 56(c) provides that Summary Judgment may enter if the pleadings, depositions, answers to interrogatories and admissions on file show there is no genuine issue of material fact and that the moving party is entitled to Judgment as a matter of Law.

ARGUMENT

I.  Defendant failed to properly support the motion as required by the Rule.

The Defendant submitted its' unverified motion supported by exhibits, which are basically reports from his experts which are also unverified.

---

[1] No expert's depositions for Defendant have been set, having been prohibited by the Court's order of July 6, 2006.

2

Case 1:05-cv-00645-MSK-BNB   Document 65   Filed 08/23/06   USDC Colorado   Page 3 of 5
05-44481-rdd    Doc 20074-3    Filed 05/14/10   Entered 05/14/10 00:24:53    Exhibit F
part 2   Pg 32 of 122

The Court in ***Sofford v. Schneider Elevator Corporation***, 954 F. Supp. 1459 (Colo. 1997), held that experts' reports are not competent evidence for consideration in ruling on the motion for Summary Judgment, stating:

> Plaintiff argues that he has adequately responded to United's motion by his use of expert reports which arguably imply some constructive knowledge on the part of United.   However, these reports are unsworn and therefore not competent evidence for my consideration in ruling on the motion for summary judgment.

See also, ***Apodoca v. Discover Financial Services***, **417 F. Supp 2d. 1220-12505 (N.M 2006),** wherein the Court refused to consider unsworn expert reports in support of the motion.

As the Court explained in ***Adickes v. S.H. Kress & Co***. **398 U.S. 144, 150.161 (1970**), the burden on the nonmovant to respond arises only if the summary judgment motion is properly "supported" as required by the Rule 56 (c). Accordingly, summary judgment is appropriate under Rule 56 (e) only when the moving party has met its initial burden of production under Rule 56 (c).  If the evidence produced  in support of the summary judgment motion does not meet this burden, summary judgment  must be denied even if no opposing evidentiary matter is presented.  If the nonmoving party fails to respond, the District Court may not

3

Case 1:05-cv-00645-MSK-BNB   Document 65   Filed 08/23/06   USDC Colorado   Page 4 of 5
05-44481-rdd   Doc 20074-3   Filed 05/14/10   Entered 05/14/10 00:24:53   Exhibit F
part 2   Pg 33 of 122

grant the motion without first examining the moving party's submission to determine if it has met its initial burden of determining whether no material issues of fact remain for trial. " … no defense to an insufficient showing is required."

II.     There genuine issues of material fact remaining to be determined by the jury.

Defendant, in its' brief in support of the Motion for Summary judgment quotes from Plaintiffs' expert Bill Broadhead who states what defects must have caused the seatbelt to malfunction. (See attached)  It is clear from his argument, that even though he likes the opinions of his own experts better, there are genuine issues of fact remaining in the case, to be determined by the jury, of which he is aware.

For these reasons, Defendants' Motion should be denied.

Wherefore, the Plaintiffs pray that the Court deny the motion for summary judgment, as being not properly supported as required by Rule 56.  Plaintiffs have no objection to expedited determination of the Defendant's Motion.

*s/ Stanley J. Walter*
Lawyer for Plaintiffs
518 17th St.  Ste.1044
Denver, CO  80202-4119
303-698-1957

Case 1:05-cv-00645-MSK-BNB   Document 65   Filed 08/23/06   USDC Colorado   Page 5 of 5
05-44481-rdd   Doc 20074-3   Filed 05/14/10   Entered 05/14/10 00:24:53   Exhibit F
part 2   Pg 34 of 122

## CERTIFICATE OF SERVICE

I certify that on this 23rd day of August, 2006, a true and correct copy of the above and foregoing was sent to:


Charles Casteel
Davis, Graham & Stubbs
1550 17th Street, Suite 500
Denver, CO  80202

Peter Jones
Hall & Evans
1125 17th Street, Suite 600
Denver, CO  80202

Mary Wells
David Mayhan
Wells, Anderson & Race
1700 Broadway, Suite 1020
Denver, CO  80290-1705

Michael Smith
Eldridge, Cooper, Steichen & Leach
P.O. Box 3566
Tulsa, OK  74101-3566
110 W. 7th Street, Suite 200
Tulsa, OK  74119


*s/ Erin Sullivan*

Case 1:05-cv-00645-MSK-BNB   Document 65-1   Filed 08/23/06   USDC Colorado   Page 1 of 3
05-44481-rdd    Doc 20074-3    Filed 05/14/10    Entered 05/14/10 00:24:53    Exhibit F
part 2   Pg 35 of 122

first.  Accurate quantification of impact related velocity change is extremely difficult to ascertain in ground impacts where the vehicle's underside plows through dirt. The trajectory and impact severity of the restrained occupants however, clearly put this accident in a category where frontal airbags are imperative.

## VII.  Discussion

The initial impact is likely the one in which Mr. Diaz and Mr. Alfaro sustained their injuries. Each of these individuals has testified that they were restrained and the physical evidence supports this claim.  Despite being belted, both of these gentlemen articulated forward and forcefully contacted the interior components and surfaces of the vehicle, causing significant injury.   Given the collision severity, one would not expect a normally seated, belted occupant to impact the interior of the vehicle with such intensity.  Thus, the circumstances and physical evidence of this collision  indicate that either the seatbelt system failed to properly restrain these gentlemen, or the magnitude of the impact was well beyond the range of their design parameters.  In either case this was clearly a situation for which airbags were needed.

The subject vehicle is involved in a recall campaign pertaining to airbag non-deployment problems involving the crash sensing system.[1]  This recall apparently involves a SDM anomaly that results in a failure to deploy during certain frontal crashes.  Under crash conditions in which the forward discriminating sensor closes prior to safing sensor closure, a subsequent short duration closure and opening cycle (referred to as sensor "bounce") of the safing sensor can lead to inductance and microprocessor reset problems within the SDM.  This can cause a failure of sufficient firing current impulse to the airbag module squibs.

The subject vehicle's front crash sensor is located in the area below the radiator.  It is this part of the structure that was impacted and damaged as a result of ground contact during the accident.  The nature of the collision was one in which the front sensor would have been

---

[1] NHTSA Campaign ID Number 02V178000; GM Recall 02029.

Attachment A

Case 1:05-cv-00645-MSK-BNB   Document 65-1   Filed 08/23/06   USDC Colorado   Page 2 of 3
05-44481-rdd    Doc 20074-3    Filed 05/14/10    Entered 05/14/10 00:24:53    Exhibit F
part 2   Pg 36 of 122

subjected to a significant acceleration impulse early in the event, one that would quite likely cause the front sensor to close prior to the safing sensor. Thus, the subject collision was one conducive to the malfunction described in the recall.

The deployment threshold of the airbag system is determined by the manufacturer and may be based on a number of factors. One factor considered is the risk of facial fracture due to impact with interior components. The goal is to ensure proper airbag deployment at collision severities where the risk of facial injury is deemed significant. The airbag is thus intended to provide protection against injury for such impacts.

In higher severity frontal collisions, the seatbelts and airbags are intended to work together to mitigate injury from impact with the interior of the vehicle. For any given seat belt restraint, there will be some level of frontal collision severity beyond which some occupants will sustain impact with interior components. One design goal of airbag restraint systems is that they will be deployed at impact severities beyond the seatbelt's capability of preventing interior impact. The deployment threshold and design of the airbag system must work in conjunction with the seatbelts.

Such was not the case in the subject accident. The restraint system as a whole failed to provide protection from interior impact as would be expected in a situation as this. At least two possibilities or a combination thereof exists. Either a malfunction, such as the aforementioned SDM problem, occurred resulting in a non-deployment, or by design the deployment threshold and characteristics of the crash sensor system are such that certain non-deployment collisions will be beyond the capabilities of the seatbelt to protect the front seat occupants. Both of these scenarios involve defect and unacceptably poor performance of the vehicle's restraint systems.

## Conclusion

The occurrence and extent of Mr. Diaz' and Mr. Alfaro's injuries would not have resulted if either 1) the airbag system had deployed and operated as expected or 2) absent the airbag

Case 1:05-cv-00645-MSK-BNB   Document 65-1   Filed 08/23/06   USDC Colorado   Page 3 of 3
05-44481-rdd    Doc 20074-3    Filed 05/14/10    Entered 05/14/10 00:24:53    Exhibit F
part 2    Pg 37 of 122

deployment, the seatbelts would not have allowed such excessive forward excursion of the occupants.   Clearly, both front seat occupants would have benefitted from properly deployed airbags. It is expected that the airbags would have: 1) Prevented impact between the occupants and the vehicle interior; 2) Provided energy absorption capability to reduce the forces imparted to Mr. Diaz and Mr. Alfaro; 3) Provided force distribution that would serve to mitigate injury. Wholly considered, the subject vehicle's restraint systems simply did not perform as would be reasonably expected for an impact of this nature.

The opinions expressed herein are based on the information available to date.  As additional information becomes available, supplemental opinions or revisions may be warranted.

Sincerely,

Automotive Safety Research

William Broadhead
President

WGB/kmc

Attachment:
      A.    Curriculum Vitae
      B.    4-Year Testimony List

# EXHIBIT F

Case 1:05-cv-00645-MSK-BNB   Document 66   Filed 09/11/06   USDC Colorado   Page 1 of 5
05-44481-rdd   Doc 20074-3   Filed 05/14/10   Entered 05/14/10 00:24:53   Exhibit F
part 2   Pg 39 of 122

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 05-cv-645-MSK-BNB

JOSÉ C. ALFARO and
MARTHA ALFARO

      Plaintiff,

      v.

GENERAL MOTORS CORPORATION,
DELCO ELECTRONICS CORPORATION,
DELPHI AUTO SYSTEMS, f/k/a INLAND FISHER GUIDE
JOHN DOE, and JOHN DOE, INC.

      Defendants.

**GENERAL MOTORS CORPORATION'S REPLY BRIEF IN SUPPORT
OF ITS MOTION TO ADJUDICATE SUMMARY JUDGMENT MOTION**

      Defendant General Motors Corporation (GM) replies as follows in support of its Motion to Adjudicate Summary Judgment Motion (DKT No. 63) (GM's Motion) and to Plaintiffs' Response to Defendant General Motors Corporation's Motion to Adjudicate Summary Judgment Motion and for Expedited Consideration (DKT No. 65) (Plaintiffs' Response):

      In GM's Motion GM requested that this Court adjudicate its motion for summary judgment and brief in support (DKT Nos. 59 and 60) filed July 21, 2006. Plaintiffs' Response contends they have until September 11, 2006,[1] to respond to dispositive motions pursuant to the Scheduling Order. This contention, however, is without support. Indeed, the Scheduling Order (DKT No. 23) filed by this Court on July 15, 2005, set a deadline of April 5, 2006, for filing dispositive motions. That deadline was extended pursuant to this Court's April 5, 2006, Minute

---

[1] As of the filing of this reply, counsel for GM had not been served with a response by Plaintiffs to GM's motion for summary judgment.

Case 1:05-cv-00645-MSK-BNB   Document 66   Filed 09/11/06   USDC Colorado   Page 2 of 5
05-44481-rdd   Doc 20074-3   Filed 05/14/10   Entered 05/14/10 00:24:53   Exhibit F
part 2   Pg 40 of 122

Order (DKT No. 49) to July 21, 2006. Both the Scheduling Order and the Minute Order are silent as to the timing of responses to dispositive motions. Instead, D.C.COLO.LCivR 56.1(A), provides that a response to a motion for summary judgment "shall be filed within 20 days after the date of filing the motion ... or such other time as the court may order." Further, Plaintiffs never requested additional time to respond to GM's motion for summary judgment; this Court did not order a different time within which Plaintiffs were to respond to GM's summary judgment motion. Therefore, Plaintiffs' response to GM's motion for summary judgment was due on or before August 10, 2006. As of the filing of this reply, Plaintiffs had not served a response which is now a month overdue; GM's undisputed facts have gone uncontested.

In their Response, Plaintiffs also summarily argue that GM failed to properly support the motion for summary judgment claiming that expert reports are not competent evidence.[2] However, Plaintiffs misunderstand GM's motion. GM did not attach Plaintiffs' expert report to establish a fact to support GM's affirmative defenses. Rather, it was simply to demonstrate that Plaintiffs' expert fails to identify a specific defect. Thus, as briefed in GM's Opening Brief, without expert proof of a specific defect, Plaintiffs cannot establish a *prima facie* case of strict liability, negligence or breach of implied warranties under either Colorado or Kansas law. *See* Defendant General Motors Corporation's Opening Brief in Support of Its Motion for Summary Judgment (DKT No. 60) filed July 21, 2006.

---

[2] The report by Plaintiffs' expert William G. Broadhead attached to GM's motion for summary judgment was served upon GM as part of Plaintiffs' Disclosure of Expert Witnesses. The report and Plaintiffs' expert disclosures were mandated pursuant to FED. R. CIV. P. 26(a)(2). GM deposed Plaintiffs' expert, William G. Broadhead, on August 25 (more than one month after filing the motion for summary judgment). GM will supplement its motion for summary judgment and opening brief upon receipt of the official transcript of his deposition. GM will show that, as in his report, Broadhead's sworn testimony does not identify a specific defect in the subject vehicle that would warrant submitting Plaintiffs' claims to a jury.

Case 1:05-cv-00645-MSK-BNB   Document 66   Filed 09/11/06   USDC Colorado   Page 3 of 5
05-44481-rdd   Doc 20074-3   Filed 05/14/10   Entered 05/14/10 00:24:53   Exhibit F
part 2   Pg 41 of 122

In other words, even if Plaintiffs' expert opinion is taken as true, that opinion would be insufficient as a matter of law to take Plaintiffs' defect allegations to a jury. Again, Plaintiffs have the burden of proving a specific defect which caused Plaintiffs' injuries. GM does not have the burden of proving that the subject vehicle is not defective. *See, e.g., Armentrout v. FMC Corp.*, 842 P.2d 175, 182-85 (Colo. 1992) (affirming trial court's rejection of proposed jury instructions which placed the burden of proof on the manufacturer). To meet their burden, Plaintiffs must offer expert witness proof of a specific defect to proceed to trial. Plaintiffs' expert opinion is insufficient to carry that burden. GM demonstrated this failure in its summary judgment motion and opening brief. At that point, Plaintiffs had the burden of coming forward with expert opinion evidence identifying a specific defect so as to establish a *prima facie* claim of strict liability, negligence or breach of implied warranties under Colorado or Kansas law. Plaintiffs have not met this burden. Without required evidence, Plaintiffs cannot take their defect allegations to trial.

Plaintiffs have chosen to ignore the briefing response date. Plaintiffs have no evidence to support their defect allegations. In light of Plaintiffs' complete absence of a response to GM's motion for summary judgment and opening brief, and the absence of pivotal, specific defect evidence, this Court should grant GM's motion for summary judgment.

Case 1:05-cv-00645-MSK-BNB   Document 66   Filed 09/11/06   USDC Colorado   Page 4 of 5
05-44481-rdd   Doc 20074-3   Filed 05/14/10   Entered 05/14/10 00:24:53   Exhibit F
part 2   Pg 42 of 122

DATED: September 11, 2006

Respectfully submitted,

s/Charles L. Casteel
CHARLES L. CASTEEL
DAVIS GRAHAM & STUBBS LLP
SUITE 500, 1550 SEVENTEENTH STREET
DENVER, CO  80202
Charles.Casteel@dgslaw.com
(303) 892-9400 telephone
(303) 893-1379 facsimile

ELDRIDGE COOPER STEICHEN
      & LEACH, PLLC
MARY QUINN-COOPER (#11966)
mcooper@ecslok.com
MICHAEL F. SMITH (#14815)
msmith@ecslok.com
HAROLD C. ZUCKERMAN (#11189)
hzuckerman@ecslok.com
P. O. BOX 3566
110 W. 7th Street, Ste 200
TULSA, OKLAHOMA 74101-3566
(918) 388-5555  FAX (918) 388-5654
*Attorneys for General Motors Corporation*

Case 1:05-cv-00645-MSK-BNB   Document 66   Filed 09/11/06   USDC Colorado   Page 5 of 5
05-44481-rdd   Doc 20074-3   Filed 05/14/10   Entered 05/14/10 00:24:53   Exhibit F
part 2   Pg 43 of 122

## CERTIFICATE OF SERVICE

I hereby certify that on the 11th of September, 2006, I electronically filed the foregoing General Motors Corporation's Reply Brief in Support of its Motion to Adjudicate Summary Judgment Motion with the Clerk of Court using CM/ECF for filing.  Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic filing to the following ECF registrants:

Stanley Walter
518 Seventeenth Street, Suite 1044
Denver, Colorado  80202-4119
stan@stanwalterlaw.com
Attorney for Plaintiffs

Mary A. Wells
David G. Mayhan
Wells, Anderson & Race, LLC
1700 Broadway, Suite 1020
Denver, Colorado  80290
mwells@warllc.com
dmayham@warllc.com
Attorneys for Defendant Delco Electronics
and Delphi Automotive Systems, LLC


and I certify that I have mailed the documents to the following non CM/ECF participants:

Mr. Don C. Staab
1301 Oak Street
Hays, Kansas  67601


Attorney for Plaintiff Martha Alfaro


s/Charles L. Casteel
CHARLES L. CASTEEL
DAVIS GRAHAM & STUBBS LLP
SUITE 500, 1550 SEVENTEENTH STREET
DENVER, CO  80202
Charles.Casteel@dgslaw.com
(303) 892-9400 telephone
(303) 893-1379 facsimile

# EXHIBIT G

Case 1:05-cv-00645-MSK-BNB   Document 67   Filed 10/17/06   USDC Colorado   Page 1 of 4
05-44481-rdd    Doc 20074-3    Filed 05/14/10   Entered 05/14/10 00:24:53    Exhibit F
part 2    Pg 45 of 122

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 05-cv-00645-MSK-BNB

JOSE C. ALFARO, and
MARTHA ALFARO,

      Plaintiffs,

v.

GENERAL MOTORS CORPORATION,
DELCO ELECTRONICS CORPORATION,
DELPHI AUTO SYSTEMS, f/k/a INLAND FISHER GUIDE,
JOHN DOE, and
JOHN DOE, INC.

      Defendants.

---

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT AND DISMISSING THE PLAINTIFFS' CLAIMS AGAINST GENERAL MOTORS CORPORATION

---

THIS MATTER comes before the Court on Defendant General Motors Corporation's ("GMC") Motion for Summary Judgment (**#59**) filed July 21, 2006, to which the Plaintiffs have filed no response. Also before the Court is GMC's motion requesting an expedited ruling on the motion for summary judgment (**#63**), to which the Plaintiffs responded (**#65**) and GMC replied (**#66**). Having considered these motions, the Court

**FINDS** and **CONCLUDES** that:

### I. Jurisdiction

The Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

Case 1:05-cv-00645-MSK-BNB   Document 67   Filed 10/17/06   USDC Colorado   Page 2 of 4
05-44481-rdd    Doc 20074-3    Filed 05/14/10    Entered 05/14/10 00:24:53    Exhibit F
part 2    Pg 46 of 122

## II. Issue Presented

The Plaintiffs, Jose and Martha Alfaro, assert three state law claims against Defendant

GMC.  All claims are premised upon injuries sustained by Mr. Alfaro while riding in the passenger

seat of a 2000 Chevrolet Silverado.  These are: (1) strict manufacturer liability;

(2) negligent design, manufacture, installation, testing and inspection of the vehicle; and

(3) breach of the implied warranty of merchantability.  The issue presented by the motion for

summary judgment is whether a trial is required on any of these claims.

## III.  Standard of Review

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if

no trial is necessary.  *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995).

Summary adjudication is authorized when there is no genuine dispute as to any material fact and a

party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Substantive law

determines what facts are material and what issues must be determined.  It also specifies the

elements that must be proved for a given claim or defense, sets the standard of proof and

identifies the party with the burden of proof.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989).

A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in

support of and opposition to the motion is so contradictory that, if presented at trial, a judgment

could enter for either party.  *See Anderson*, 477 U.S. at 248.  When considering a summary

judgment motion, a court views all evidence in the light most favorable to the non-moving party,

thereby favoring the right to a trial.  *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213

(10th Cir. 2002).

2

Case 1:05-cv-00645-MSK-BNB    Document 67    Filed 10/17/06    USDC Colorado    Page 3 of 4
05-44481-rdd    Doc 20074-3    Filed 05/14/10    Entered 05/14/10 00:24:53    Exhibit F
part 2    Pg 47 of 122

If the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence. *See* Fed. R. Civ. P. 56(e). Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute. *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999). If there is a genuine dispute as to a material fact, a trial is required. If there is no genuine dispute as to any material fact, no trial is required. The court then applies the law to the undisputed facts and enters judgment.

However, if the moving party does not have the burden of proof at trial, it may point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove. If the respondent comes forward with sufficient competent evidence to establish a *prima facie* claim or defense, a trial is required. If the respondent fails to produce sufficient competent evidence to establish its claim or defense, the claim or defense must be dismissed as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *see also Thomas v. IBM*, 48 F.3d 478, 485 (10th Cir. 1995).

## IV. Analysis

GMC's summary judgment motion falls into both categories. In the first category, GMC contends that it is entitled to judgment based on its affirmative defense that the Plaintiffs' claims are barred by the applicable statute of limitations. On this defense, GMC bears the burden of proof under Colorado law. *See Welsch v. Smith,* 113 P.3d 1284, 1289 (Colo. App. 2005). As to the Plaintiffs' claims, the motion falls into the second category. With respect to these claims, the Plaintiffs have the burden of proof. *See Mile Hi Concrete, Inc. v. Matz,* 842 P.2d 198, 205 (Colo. 1992).

Case 1:05-cv-00645-MSK-BNB   Document 67   Filed 10/17/06   USDC Colorado   Page 4 of 4
05-44481-rdd   Doc 20074-3   Filed 05/14/10   Entered 05/14/10 00:24:53   Exhibit F
part 2   Pg 48 of 122

The Court begins with the Plaintiffs' claims.  GMC contends that the Plaintiffs cannot prove all of the elements of their three claims.  To avoid dismissal of their claims, the Plaintiffs must come forward with sufficient, competent evidence to create a triable issue of fact.  *See Thomas*, 48 F.3d at 485.  The Plaintiffs filed no response to GMC's summary judgment motion.

The Court notes that in objecting to GMC's motion for expedited consideration, the Plaintiffs argue that summary judgment should not enter because GMC has not met its burden of production and because the evidence submitted with the summary judgment motion is not competent.  **(Response, #65)**.  Treating this as a response to the motion for summary judgment, the Court observes that this argument arguably addresses GMC's defense, but it fails to satisfy the Plaintiffs' burden to produce evidence with respect to their claims.

The Plaintiffs have failed to produce any evidence in support of their claims.  Accordingly, there is no *prima facie* claim that requires either a trial or consideration of GMC's affirmative defense.

**IT IS THEREFORE ORDERED** that Defendant GMC's Motion for Summary Judgment **(#59)** is **GRANTED**.  All claims against Defendant GMC are dismissed, with prejudice.  The motion for expedited consideration **(#63)** is **DENIED**, as moot.  The caption shall be amended to delete reference to General Motors Corporation.

Dated this 17th day of October, 2006

**BY THE COURT:**

_____

Marcia S. Krieger
United States District Judge

4

# EXHIBIT H

Case 1:05-cv-00645-MSK-BNB   Document 68   Filed 10/30/06   USDC Colorado   Page 1 of 13
05-44481-rdd   Doc 20074-3   Filed 05/14/10   Entered 05/14/10 00:24:53   Exhibit F
part 2   Pg 50 of 122

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.:  <u>05-cv-645-MSK-BNB</u>

JOSE ALFARO, and
MARTHA ALFARO,

     Plaintiff,

v.

DELCO ELECTRONICS CORPORATION,
DELPHI  AUTO SYSTEMS, f/k/a/ INLAND FISHER GUIDE
JOHN DOE, and JOHN DOE, INC.

     Defendants.

---

## PLAINTIFFS' MOTION TO ALTER OR AMEND THE JUDGMENT AND PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT THEREOF

---

COME NOW, the Plaintiffs, José and Martha Alfaro, by and through their

lawyers, Stanley J. Walter and Don C. Staab, and pursuant to Federal Rule of Civil

Procedure 59(e), Plaintiffs hereby petition the Court to reconsider its Order

Granting Motion for Summary Judgment and Dismissing the Plaintiffs' Claims

Against General Motors Corporation" of October 17, 2006, that dismisses

Plaintiffs' case against Defendant General Motors Corporation.  The reasons

behind this motion are more fully explicated in the attached memorandum of law.

## I.    ISSUES PRESENTED

Case 1:05-cv-00645-MSK-BNB   Document 68   Filed 10/30/06   USDC Colorado   Page 2 of 13
05-44481-rdd   Doc 20074-3   Filed 05/14/10   Entered 05/14/10 00:24:53   Exhibit F
part 2   Pg 51 of 122

Whether the District Court's order of October 17, 2006 should be reconsidered on the grounds of the availability of newly discovered evidence and the need to prevent manifest injustice;

Whether the district court abused its discretion in entering summary judgment without making the determinations required by Fed.R.Civ.P. 56(c) that the Defendant General Motors Corporation sustained its initial burden;

## II.    STANDARD OF REVIEW

Fed.R.Civ.P. 59(e)

The grounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable or (3) the need to correct clear error or prevent manifest injustice.  Because two of the grounds exist here, namely "evidence previously unavailable" and the "need to prevent manifest injustice" the District Court should reconsider its order granting summary judgment in favor of Defendant General Motors Corporation and dismissing with prejudice the Plaintiffs' claims against said Defendant.

Fed.R.Civ.P. 56

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. Rule Civ. Proc. 56(c).  Under Rule 56(c), the moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and

2

Case 1:05-cv-00645-MSK-BNB   Document 68   Filed 10/30/06   USDC Colorado   Page 3 of 13
05-44481-rdd   Doc 20074-3   Filed 05/14/10   Entered 05/14/10 00:24:53   Exhibit F
part 2   Pg 52 of 122

identifying those portions of the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, if any, which it believes

demonstrate the absence of a genuine issue of material fact." ***Celotex Corp.* v.**

***Catrett***, 477 U.S. 317, 322, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986).

## III.   SUMMARY OF ARGUMENT

Plaintiffs submit this motion for reconsideration under Fed.R.Civ.P. 59(e).

Plaintiffs believe that there are material issues of fact in dispute that make trial

essential on their claims of strict manufacturer liability, negligent design,

manufacture, installation, testing and inspection of the vehicle and breach of

implied warrant of merchantability.

In particular, Plaintiffs' have discovered new evidence to support their

claims and there is more than enough evidence to warrant a trial.  Plaintiffs did not

submit that evidence prior to this motion for two reasons:  (1) the Defendant

General Motors Corporation did not meet its initial burden in their motion for

summary judgment therefore no defense to an insufficient showing was required

by the Plaintiffs; and,  (2) because the evidence was not available to the Plaintiffs

or even their experts until depositions were taken of Plaintiffs' experts, namely

William G. Broadhead of Automotive Safety Research, Inc. and Dennis F.

Shanahan, M.D., M.P.H. of Injury Analysis, LLC.

Case 1:05-cv-00645-MSK-BNB   Document 68   Filed 10/30/06   USDC Colorado   Page 4 of 13
05-44481-rdd   Doc 20074-3   Filed 05/14/10   Entered 05/14/10 00:24:53   Exhibit F
part 2   Pg 53 of 122

Plaintiffs respectfully ask that the Court vacate its earlier Order granting

summary judgment and that this case proceed to the seven day jury trial already

scheduled for March 19, 2007.

## IV.   ARGUMENT AND AUTHORITIES

I.   Fed.R.Civ.P 59(e)

The grounds justifying an alteration, amendment, or reconsideration are (1)

an intervening change in the controlling law, (2) new evidence previously

unavailable, and (3) the need to correct clear error or prevent manifest injustice.

***Brumark Corp. v. Samson Resources Corp.,*** 57 F.3d 941, 948 (10th Cir. 1995).

a.   New Evidence Previously Unavailable

Motions to reconsider must rely on new evidence and not information

readily available during the prior proceedings.  "Motions for reconsideration are

limited in purpose to correcting errors of law or to present newly discovered

evidence." ***Rothwell Cotton Co. v Rosenthal & Co., 827 R.2d 246, 251*** (7th Cir.)

***amended****, **835 F.2d 710 (7th Cir. 1987).***  These motions serve the narrow purpose

of allowing a party to correct manifest error of law or fact or to **present newly**

**discovered evidence**. ***Templet v. HydroChem, Inc.,*** 637 F.3d 473, 479 (5th Cir.

2004) ***(quoting Waltman v. Int'l Paper Co.,*** 875 F.2d 468, 473 (5th Cir. 1989).

Case 1:05-cv-00645-MSK-BNB   Document 68   Filed 10/30/06   USDC Colorado   Page 5 of 13
05-44481-rdd   Doc 20074-3   Filed 05/14/10   Entered 05/14/10 00:24:53   Exhibit F
part 2   Pg 54 of 122

The Fifth Circuit has set forth several factors to consider when a party seeks to upset a summary judgment by producing new evidence: "(1) the reasons for the moving party's default, (2) the importance of the omitted evidence to the moving party's case, (3) whether the evidence was available to the movant before the nonmovant filed the summary judgment motion, and (4) the likelihood that the nonmoving party will suffer unfair prejudice if the case is reopened." *ICEE Distribs., Inc., vs. J & J Snack Foods Corp.,* 445 F. 3d 841, 847 (5th Cir. 2006). Furthermore, "[r]ule 59(e) motions provide the district court with considerable discretion." *ICEE* at 445 F.3d 848.

When considering the factors set forth above, the Plaintiff submits that (1) the Plaintiff did not default due to the fact that because the Defendant General Motor's Corporation did not meet its initial burden, therefore the Plaintiffs were under no requirement to respond to the motion for summary judgment; (2) although the Defendant General Motor's Corporation is under the misconception that Plaintiff must submit evidence of specific defects regarding the restraint systems, the Plaintiff's preliminary reports demonstrated sufficient defects of the restraint systems for the Plaintiffs to sustain a *prima facie* case against the Defendants; in any event, the newly discovered evidence goes directly to the Defendant General Motors Corporations contention that specific defects need to be

Case 1:05-cv-00645-MSK-BNB   Document 68   Filed 10/30/06   USDC Colorado   Page 6 of 13
05-44481-rdd   Doc 20074-3   Filed 05/14/10   Entered 05/14/10 00:24:53   Exhibit F
part 2   Pg 55 of 122

demonstrated; (3) the evidence became available to the Plaintiffs just prior to the

depositions of the Plaintiffs' experts held on September 25th and 29th; (4) due to the

fact that the pretrial conference and the jury trial have been scheduled since July,

the Defendant General Motors Corporation will not suffer any unfair prejudice.

The Plaintiffs herein are entitled to reconsideration under Rule 59(e) based

on new evidence which could not have been discovered earlier in the exercise of

due diligence.  During the week prior to William G. Broadhead's deposition, the

new items of evidence were discovered revealing specific defects in the seatbelt

and airbag systems of the vehicle in question.  Specifically, crash test information

and video discovered by Plaintiffs' expert Dennis Shanahan demonstrates failure

of the seatbelt system.  Mr. Broadhead discovered the use of NS1, a program

which shut down the airbag system so that the airbags will not fire under certain

conditions was installed in the subject airbag system.  Mr. Shannahan recently

found crash test information from the NHTSA website showing that even if the

passenger was wearing his/her seatbelt, in a low speed soft barrier collision, the

passenger's face would still hit the grab bar and dash.  This information was

downloaded and entered into his log on August 21, 2006.  (See Exhibit B-2, Depo

of Shanahan, pg. 85 lines 2-10, pg. 86 lines 19-25, pg 87 lines 1-11; and Exhibit B-

1, Depo of Broadhead, pg. 44 lines 1-21, pg. 46 lines 19-25).  This is graphically

Case 1:05-cv-00645-MSK-BNB   Document 68   Filed 10/30/06   USDC Colorado   Page 7 of 13
05-44481-rdd   Doc 20074-3   Filed 05/14/10   Entered 05/14/10 00:24:53   Exhibit F
part 2   Pg 56 of 122

demonstrated by Exhibit B-3, submitted conventionally on October 30, 2006.  This

newly discovered evidence demonstrates specific defects in the airbag system and

in the seatbelt restraint system.  For example, Broadhead states in his deposition,

"that the EP program or the EP1 program is defective…the airbag was defective

for its failure to fire…"  Broadhead further states in his deposition of defects in the

seatbelt system:   "[t]he seat back rigidity, the belt stretch, retractor lock-up delay

are some of the specific component problems with that seatbelt system."  (See

Exhibt B-2, Depo of Broadhead, pg. 46 lines 19-25, pg. 48 lines 21-25, pg. 49 lines

1-16, pg. 54 lines 18-21, pg. 84 lines 2-10)  Further, this information only became

available to the Plaintiffs' just prior to the depositions of their experts, William G.

Broadhead and Dennis Shanhan.  Mr. Broadhead's deposition being taken on

August 25, 2006 and Mr. Shanahan's deposition being taken on August 29, 2006.

### b.     Prevent Manifest Injustice

In this case, the district court granted Defendant General Motor

Corporation's motion for summary judgment in a cursory order implying that the

Plaintiffs' default was the sole basis for the dismissal.   The district court, did not,

as required, assess whether the Defendant General Motor Corporation had met

their burden to demonstrate that summary judgment was appropriate.  As stated by

the court in ***Reed v. Bennett***, 312 F.23d 1190 (10th Cir 2002), "Fed.R.Civ.P. 56(e)

Case 1:05-cv-00645-MSK-BNB   Document 68   Filed 10/30/06   USDC Colorado   Page 8 of 13
05-44481-rdd   Doc 20074-3   Filed 05/14/10   Entered 05/14/10 00:24:53   Exhibit F
part 2   Pg 57 of 122

specifically contemplates the consequences of failing to oppose a summary

judgment motion:

> 'When a motion for summary judgment is made **and supported**
> (emphasis added) as provided in this rule, an adverse party may
> not rest upon the mere allegations or denials of adverse party's
> pleadings, but the adverse party's response, by affidavits or as
> otherwise provided by this rule, must set forth specific facts
> showing that there is a genuine issue for trial.  If the party does
> not so respond, summary judgment, **if appropriate** (emphasis added)
> shall be entered against the adverse party.'

The **Reed** Court went on to further state, quoting ***Adickes v. S.H. Kress & Co.***, 398

U.S. 144, 160-61, 26 L.Ed. 29 142, 90 S.Ct. 1598 (1970), that

> "the burden on the  nonmovant to respond arises only if the
> summary judgment motion is properly "supported" as required
> by the Rule 56 (c). Accordingly, summary judgment is "appropriate"
> under Rule 56 (e) only when the moving party has met its initial
> burden of production under Rule 56 (c).  If the evidence produced
> in support of the summary judgment motion does not meet this
> burden, "summary judgment  must be denied even if no opposing
> evidentiary matter is presented." ***Id.*** at 160 ***quoting*** Fed.R.Civ.P. 56
> advisory committee notes to the 1963 amendments (emphasis added).
> If the nonmoving party fails to respond, the district court may not
> grant the motion without first examining the moving party's submission
> to determine  if it has met its initial burden of demonstrating that no
> material issues of fact remain for trial and the moving party is entitled
> to judgment as matter of law.  If it has not, summary judgment is not
> appropriate, for **"no defense to an insufficient showing is required."**
> (emphasis added) ***Id.***  at 161.

> "To summarize, a party's failure to file a response to a summary judgment

motion is not, by itself, a sufficient basis on which to enter judgment against the

Case 1:05-cv-00645-MSK-BNB   Document 68   Filed 10/30/06   USDC Colorado   Page 9 of 13
05-44481-rdd   Doc 20074-3   Filed 05/14/10   Entered 05/14/10 00:24:53   Exhibit F
part 2   Pg 58 of 122

party.  The district court must make the additional determination that judgment for the moving part is "appropriate" under Rule 56.  Summary judgment is appropriate only if the moving party demonstrates that no genuine issue of material fact exist and that it is entitled to judgment as a matter of law." *Reed* at 312 F.3d 1195.

The district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remain for trial. *Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir. 2001).  If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied even if no opposing evidentiary matter is presented. *Giannullo*, 322 F.,3d at 141 (noting that the "non-movant is not required to rebut an insufficient showing").  Moreover, in determining whether the moving party has met this burden of showing the absence of a genuine issue for trial, the district court may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56 statement.  It must be satisfied that the citation to evidence in the record supports the assertion. *Giannullo*, 322 F.3d at 143 n. 5 (stating that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

Case 1:05-cv-00645-MSK-BNB   Document 68   Filed 10/30/06   USDC Colorado   Page 10 of 13
05-44481-rdd   Doc 20074-3   Filed 05/14/10   Entered 05/14/10 00:24:53   Exhibit F
part 2   Pg 59 of 122

An unopposed summary judgment motion may also fail where the undisputed facts fail to "show that the moving party is entitled to judgment as a matter of law." ***Champion v. Artuz***, 76 F.3d 483, 486 (2d Cir. 1996) (per curiam) (quoting Fed.R.Civ.P. 56 (c)).  Where the order granting summary judgment is insufficiently clear to permit a court of appeals to determine whether the grounds for granting the motion are valid, remand is appropriate. ***See Miranda v. Bennett***, 322 F.3d 171, 175 (2d Cir. 2003).

Due to the fact that the Defendant General Motors did not meet its initial burden of proof in that it failed to demonstrate the absence of a disputed question of a material fact, the Plaintiffs were under no obligation to respond to its motion for summary judgment.  Further, since the Defendant General Motors Corporation submitted no competent evidence or facts to which the Plaintiff could respond to, the failure of the Plaintiff to file a response to the motion for summary judgment cannot act as a waiver of the Plaintiff's right to respond or to controvert the facts asserted in the summary judgment motion.

There is no evidence in the summary judgment record to suggest that the Plaintiff cannot make its ***prima facie*** case against the Defendant General Motors Corporation.  In failing to make a determination that the Defendant General Motors Corporation has met its initial burden, the district court abused its discretion when

Case 1:05-cv-00645-MSK-BNB   Document 68   Filed 10/30/06   USDC Colorado   Page 11 of 13
05-44481-rdd   Doc 20074-3   Filed 05/14/10   Entered 05/14/10 00:24:53   Exhibit F
part 2   Pg 60 of 122

it granted summary judgment solely because the Plaintiffs failed to respond to the motion within the applicable time limit.  The district court must, at a minimum, examine the moving party's motion for summary judgment to ensure that it has discharged its initial burden.  In the case of ***Silvestri v  General Motors Corporation***, 210 F.3d 240 (4th Cir. 2000), the court held that plaintiff need not provide expert testimony of a specific defect on claim involving failure of airbag to deploy where circumstantial evidence permitted inference that airbag should have deployed, including evidence of representations made in the owner's manual of the plaintiff's vehicle regarding the airbag.  Filed with the Defendant General Motors Corporation's motion for summary judgment was the Plaintiff's preliminary expert report of William G. Broadhead wherein he stated that the "restraint system as a whole failed to provide protection from interior impact."  (See Exhibit A-9 attached to Defendant General Motors Corporation's Motion for Summary Judgment.)  Thus, due to the information contained on file in the district court's record, the Defendant General Motors Corporation clearly has not met its initial burden.

## V.     CONCLUSION

Case 1:05-cv-00645-MSK-BNB   Document 68   Filed 10/30/06   USDC Colorado   Page 12 of 13
05-44481-rdd   Doc 20074-3   Filed 05/14/10   Entered 05/14/10 00:24:53   Exhibit F
part 2   Pg 61 of 122

For the foregoing reasons, Plaintiffs respectfully ask this Court to vacate its earlier order granting summary judgment and dismissing Plaintiffs' claims against the Defendant General Motors Corporation and that the same proceed to trial.

Respectfully submitted,

*s/ Stanley J. Walter*
Lawyer for Plaintiffs
518 17th St.  Ste. 1044
Denver, CO  80202-4119
303-698-1957 phone
303-698-1938 fax

CERTIFICATE OF SERVICE

Case 1:05-cv-00645-MSK-BNB   Document 68   Filed 10/30/06   USDC Colorado   Page 13 of 13
05-44481-rdd   Doc 20074-3   Filed 05/14/10   Entered 05/14/10 00:24:53   Exhibit F
part 2   Pg 62 of 122

I certify that on this 30th day of October 2006, a true and correct copy of the above and foregoing was sent to:

Charles Casteel
Davis, Graham & Stubbs
1550 17th Street, Suite 500
Denver, CO  80202

Mary Wells
Wells, Anderson & Race
1700 Broadway, Suite 1020
Denver, CO  80290-1705

Michael Smith
Eldridge, Cooper, Steichen & Leach
P.O. Box 3566
Tulsa, OK  74101-3566
110 W. 7th Street, Suite 200
Tulsa, OK  74119


*s/ Erin Sullivan*

Case 1:05-cv-00645-MSK-BNB   Document 68-1   Filed 10/30/06   USDC Colorado   Page 1 of 1
05-44481-rdd   Doc 20074-3   Filed 05/14/10   Entered 05/14/10 00:24:53   Exhibit F
part 2   Pg 63 of 122

ALFARO v. GENERAL MOTORS   WILLIAM BROADHEAD                August 25, 2006

Page 44

1           I know this restraint system failed, but I

2      can't tell you the component details of the failure.

3           Now, I am giving you some of the legs.  It

4      could be the retractor failed to lock appropriately.

5      I suspect more it was just a build-up of

6      compliances. When I looked at the 18 mile-an-hour

7      performance of that system when it had a 5th

8      percentile female in it, I was astonished that she

9      hit her head on the grab bar in such a low speed

10      from a collision.

11           So I believe that this restraint system,

12      itself, is way too compliant and insufficient on its

13      own to prevent occupant impact with the vehicle

14      interior, even when it locks appropriately.

15      Q   Could you tell me what you were looking

16      at with respect to the 5th percentile female?  Was

17      it a crash test?

18      A   Yes, it was.  I think it was a transport

19      candidate crash test.  I have it here on DVD.  If

20      you want, during a break or during our depo, we

21      can watch it, hopefully, on your computer.

22      Q   Well, I don't necessarily want to watch it,

23      but is there some way you can identify it for me?

24      A   Sure.  It's in that technical file, if you

25      pull that.  If it's not in there -- let's take a look

Exhibit B-1a

Case 1:05-cv-00645-MSK-BNB   Document 68-2   Filed 10/30/06   USDC Colorado   Page 1 of 1
05-44481-rdd   Doc 20074-3   Filed 05/14/10   Entered 05/14/10 00:24:53   Exhibit F
part 2   Pg 64 of 122

ALFARO v. GENERAL MOTORS   WILLIAM BROADHEAD                August 25, 2006

Page 46

1    no one contests Diaz was wearing his belt.  But, of

2    course, my opinion is Mr. Diaz was wearing his

3    belt also.

4         Q    I want to go back to something you said

5    earlier, Mr. Broadhead, and then I want to kind of

6    visit about the general areas of opinions so that I

7    make sure we have a good idea of what you are

8    going to be testifying to at the time of trial.

9              With respect to the seatbelts or seatbelt

10   systems, it's your opinion that the system failed?

11        A    Yes.

12        Q    But you cannot state with a reasonable

13   degree of scientific or engineering certainty which

14   of the components allegedly failed or caused the

15   failure; is that true?

16             MR. WALTER:  Object to the form.

17        Q    (BY MR. ZUCKERMAN)  You may answer,

18   sir.

19        A    I cannot give you a complete isolation

20   component by component.  I believe, however, that

21   there is a combination of factors that leads to it

22   being way too compliant.

23             The seat back rigidity, the belt stretch,

24   retractor lock-up delay are some of the specific

25   component problems with that seatbelt system.

Exhibit B-1b

Case 1:05-cv-00645-MSK-BNB  Document 68-3  Filed 10/30/06  USDC Colorado  Page 1 of 2
05-44481-rdd  Doc 20074-3  Filed 05/14/10  Entered 05/14/10 00:24:53  Exhibit F
part 2  Pg 65 of 122

ALFARO v. GENERAL MOTORS   WILLIAM BROADHEAD          August 25, 2006

Page 48

1        A    No.  I gave you a couple.  I have a lot

2     more.

3        Q    Okay.  Tell me all of your opinions.

4        A    I will continue with what I feel are some

5     of the major opinions.  And then, of course, you

6     have seen we explored a lot of subopinions based

7     on just that one opinion.

8             I believe the airbag system was defective

9     in that it did not deploy in this accident.  The

10    airbag system was needed to prevent occupant

11    interior impacts.  I won't go into all the benefits

12    of airbags in this opinion, but those will be

13    subopinions if you want to illicit them from me.

14            They will also be illuminated in the blue

15    book.  I believe the airbag -- along with it, the

16    airbag deployed defectively.  One of the pieces of

17    information that support that is that the

18    consumer complaints are replete with incidents

19    where the airbags did not deploy in circumstances

20    where they would reasonably be expected to.

21            I believe that it was defective for several

22    reasons.  One of the reasons is that it has a

23    problem that is addressed by the recall.  It has

24    another problem with it in that, apparently, the

25    system shuts down during the algorithm,

Exhibit B-1c

Case 1:05-cv-00645-MSK-BNB   Document 68-3   Filed 10/30/06   USDC Colorado   Page 2 of 2
05-44481-rdd   Doc 20074-3   Filed 05/14/10   Entered 05/14/10 00:24:53   Exhibit F
part 2   Pg 66 of 122

ALFARO v. GENERAL MOTORS   WILLIAM BROADHEAD                August 25, 2006

Page 49

1      apparently, as an attempt to reduce

2      out-of-position injuries by the airbag.

3             So it's my opinion that the EP program,

4      or the EP1 program is defective.  I suspect that

5      that's involved in this particular incident and why

6      the airbag didn't fire in this case.  Generally, the

7      airbag was defective for its failure to fire for

8      either the driver or passenger.

9             And another opinion that goes into the

10     defect of airbag system is documentation by

11     General Motors themselves that it failed to fire in

12     some of their tests.

13            There is one test, specifically, that I

14     flagged.  I think it ends in 55, a General Motors

15     test.  It's like a five- or six-digit number ending

16     in 55.  We can get that later if you want.

17        Q    Actually, if you don't mind --

18        A    Get that now?

19        Q    Yeah.  Because I meant to ask you that

20     earlier.  I have written that you wanted to see the

21     barrier crash test, and then you talked about a

22     test where neither airbag fired.  And I think that's

23     the one to talk about.

24        A    Yeah.  Why don't you pull the technical

25     file, and I will pull that for you.

Case 1:05-cv-00645-MSK-BNB   Document 68-4   Filed 10/30/06   USDC Colorado   Page 1 of 1
05-44481-rdd   Doc 20074-3   Filed 05/14/10   Entered 05/14/10 00:24:53   Exhibit F
part 2   Pg 67 of 122

ALFARO v. GENERAL MOTORS   WILLIAM BROADHEAD          August 25, 2006

Page 54

1        Q    I understand.  But I do want to put a

2    sticker on it so I don't forget.

3        A    Then can I alter a document after it's

4    been labeled as an exhibit?

5        Q    Sure.  You just told us it was a working

6    sheet, and you can alter it all day.  I just want to

7    make sure we know what we are talking about.

8        A    You don't --

9        Q    I don't want you to stop doing it now.

10   But I do want to make sure that when we look for

11   exhibits later on -- I believe that's Exhibit 4.  Feel

12   free to mark away.

13       A    Okay.

14            (Defendant's Exhibit-04 was marked for

15   identification and is retained by witness.)

16       Q    (BY MR. ZUCKERMAN)  Back to your

17   opinions.

18       A    I believe that grab bar is defective and

19   that it shouldn't be there.  It's a rigid object that

20   can cause significant injury in the known

21   occupant trajectory path.  And I believe Mr. Diaz

22   would have benefitted from an airbag as well.

23       Q    You understand Mr. Diaz is a party to

24   this lawsuit; correct?

25       A    So we can ignore that, but I don't --

Exhibit B-1d

Case 1:05-cv-00645-MSK-BNB  Document 68-5  Filed 10/30/06  USDC Colorado  Page 1 of 1
05-44481-rdd  Doc 20074-3  Filed 05/14/10  Entered 05/14/10 00:24:53  Exhibit F
part 2  Pg 68 of 122

ALFARO v. GENERAL MOTORS  WILLIAM BROADHEAD        August 25, 2006

Page 84

1    opinion.  So I am still waiting for that production.

2         Q    What is the specific defect or defects in

3    the design of the subject seatbelt system or any of

4     its component parts?

5         A    Excessive slack.  It allows too much

6    forward occupant trajectory due to forms of slack.

7    Remember, the 18-mile-an-hour offset barrier with

8    a 5th percentile female is the example I give for

9    how much that system allows an occupant to go

10     forward.

11         And that's just -- it's way too much.  It

12    falls outside of reasonable engineering designs for

13     seatbelts.

14         Q    Besides excessive slack, what is the -- or

15    what are the specific defects in the seatbelt or

16    seatbelt system in the subject vehicle?

17         A    I am waiting to see the videos to specify

18    that -- crash test videos.  I think we will see a lot

19    of seat back flexion contributing to that as well as

20    the webbing coming out of the retractor, out of the

21     escutcheon in the seat back.

22         Q    As you sit here today, with a reasonable

23    degree of engineering certainty and probability, is

24    it your opinion there are any other defects in the

25    subject seatbelt system or component part of the

Exhibit B-1e

Case 1:05-cv-00645-MSK-BNB   Document 68-6   Filed 10/30/06   USDC Colorado   Page 1 of 3
05-44481-rdd   Doc 20074-3   Filed 05/14/10   Entered 05/14/10 00:24:53   Exhibit F
part 2   Pg 69 of 122

ALFARO v. GENERAL MOTORS DENNIS SHANAHAN                August 29, 2006

Page 85

1    notes.

2          Q     Okay.  How did you acquire these tests?

3          A     NHTSA has a website that provides the

4    crash tests that they contract to have performed.

5    They are done, by and large, either as research

6    more typically as checks on the industry, which,

7    as you know, performance of these federal motor

8    vehicle standards, safety standards, are

9    self-certified.  So NHTSA has a spot check program

10   to ensure the honesty or quality of the tests.

11         Q     Did this pickup comply with FMVSS 208?

12         A     From the information that I have seen, it

13   appears to have, but I did not independently study

14   whether it did or did not.

15         Q     Based on the values documented in the

16   test reports that are contained on Exhibit 24, does

17   it appear that the 2000 extended cab pickup

18   complied with FMVSS 208?

19         A     There was that joint research test where

20   there was significant strikes by both the driver

21   and the passenger that may or may not have

22   complied with FMVSS 208.  I frankly don't know.

23         Q     Do you recall what the Hicks numbers

24   were on that test?

25         A     The Hicks were low, but low in terms of

Exhibit B-2

Case 1:05-cv-00645-MSK-BNB   Document 68-6   Filed 10/30/06   USDC Colorado   Page 2 of 3
05-44481-rdd   Doc 20074-3   Filed 05/14/10   Entered 05/14/10 00:24:53   Exhibit F
part 2   Pg 70 of 122

ALFARO v. GENERAL MOTORS DENNIS SHANAHAN            August 29, 2006

Page 86

1     less than a thousand.  But the way they have

2     rewritten the standards multiple times since 1998,

3     I'm not sure whether they have added some

4     additional requirements about contacts by

5     undersized occupants.

6          Q     In FMVSS 208 or some other standard?

7          A     In FMVSS 208.  I frankly don't know,

8     that's why I can't answer your question with any

9     degree of confidence.

10         Q     Do you have any basis for offering the

11    opinion that the vehicle did not comply with

12    FMVSS 208?

13         A     Well, let me put it this way.  I haven't

14    studied the issue and, therefore, will not be

15    testifying to that particular point.

16         Q     And each of these tests where the Hicks

17    values below 1,000?

18         A     My recollection is that they were.

19         Q     Have you discussed the results or these

20    tests themselves with any other experts in this

21    case?

22         A     Yes, I discussed them with Mr.

23    Broadhead.

24         Q     And when did you do that?

25         A     Oh, within the last couple of weeks.

Case 1:05-cv-00645-MSK-BNB   Document 68-6   Filed 10/30/06   USDC Colorado   Page 3 of 3
05-44481-rdd   Doc 20074-3   Filed 05/14/10   Entered 05/14/10 00:24:53   Exhibit F
part 2   Pg 71 of 122
ALFARO v. GENERAL MOTORS DENNIS SHANAHAN                    August 29, 2006

Page 87

1        Q    Is that documented on your activity log?

2        A    No, it is not.  The downloading of the

3    crash test was indicated in my log and that

4    occurred on 8-21-06.

5        Q    Last week?

6        A    I believe so, yes.

7        Q    Did you furnish copies of those tests to

8    Mr. Broadhead?

9        A    I did not.  He can independently download

10   them. I alerted him as to my findings and asked

11   him what he thought about them.

12       Q    All of these -- well, what did Mr.

13   Broadhead say that he thought about them?

14       A    Well, he thought that they were very

15   interesting.  He, as was I, was concerned with the

16   contacts that were made at this 18 or 19

17   mile-an-hour collision by fifth percentile

18   dummies, that they showed a high degree of

19   motion in the upper torso of restrained

20   individuals, which has some relevance to what

21   occurred in the particular crash we are studying.

22       Q    You indicated that you were concerned,

23   just by the occupant motion itself?

24       A    Yes, and the contacts.  I think if I were

25   involved in the development of this restraint

Case 1:05-cv-00645-MSK-BNB   Document 68-7   Filed 10/30/06   USDC Colorado   Page 1 of 2
05-44481-rdd   Doc 20074-3   Filed 05/14/10   Entered 05/14/10 00:24:53   Exhibit F
part 2   Pg 72 of 122

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO


Civil Action No.:  <u>05-cv-645-MSK-BNB</u>

JOSE ALFARO, and
MARTHA ALFARO,

     Plaintiff,

v.

DELCO ELECTRONICS CORPORATION,
DELPHI  AUTO SYSTEMS, f/k/a/ INLAND FISHER GUIDE
JOHN DOE, and JOHN DOE, INC.

     Defendants.

---

**PLAINTIFFS' MOTION TO ALTER OR AMEND THE JUDGMENT AND
PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT THEREOF**

---

Video crash test information from National Highway Transportation Safety

Administration (NHTSA) v 05 180 2003, Exhibit B-3 to Plaintiffs' Motion to Alter

or Amend the Judgment, filed October 30, 2006.  Play media file using Real

Player.

Case 1:05-cv-00645-MSK-BNB   Document 68-7   Filed 10/30/06   USDC Colorado   Page 2 of 2
05-44481-rdd   Doc 20074-3   Filed 05/14/10   Entered 05/14/10 00:24:53   Exhibit F
part 2   Pg 73 of 122

## CERTIFICATE OF SERVICE

I certify that on this 30th day of October 2006, a true and correct copy of the above and foregoing was sent, via U.S. Mail, postage prepaid, to:

Charles Casteel
Davis, Graham & Stubbs
1550 17th Street, Suite 500
Denver, CO  80202

Mary Wells
Wells, Anderson & Race
1700 Broadway, Suite 1020
Denver, CO  80290-1705

Harold Zuckerman
Eldridge, Cooper, Steichen & Leach
P.O. Box 3566
Tulsa, OK  74101-3566
110 W. 7th Street, Suite 200
Tulsa, OK  74119


_s/ Erin Sullivan_

# EXHIBIT I

Case 1:05-cv-00645-MSK-BNB   Document 81   Filed 11/22/06   USDC Colorado   Page 1 of 12
05-44481-rdd   Doc 20074-3   Filed 05/14/10   Entered 05/14/10 00:24:53   Exhibit F
part 2   Pg 75 of 122

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 05-cv-645-MSK-BNB

JOSÉ C. ALFARO and
MARTHA ALFARO

  Plaintiff,

  v.

GENERAL MOTORS CORPORATION,
DELCO ELECTRONICS CORPORATION,
DELPHI AUTO SYSTEMS, f/k/a INLAND FISHER GUIDE
JOHN DOE, and JOHN DOE, INC.

  Defendants.

## GENERAL MOTORS CORPORATION'S RESPONSE
## AND OBJECTION TO PLAINTIFFS' MOTION TO ALTER OR AMEND JUDGMENT

  Defendant General Motors Corporation (GM) responds and objects as follows to Plaintiffs' Motion to Alter or Amend the Judgment and Plaintiff's [sic] Memorandum of Law in Support Thereof (DKT No. 68) (Plaintiffs' Motion).

### INTRODUCTION AND BACKGROUND

  On October 17, 2006, this Court granted GM's motion for summary judgment. *See* Order Granting Motion for Summary Judgment and Dismissing the Plaintiffs' Claims Against General Motors Corporation (DKT No. 67) (Order).[1] Plaintiffs have now, pursuant to FED. R. CIV. P. 59(e), moved this Court to alter or amend the Order. Plaintiffs argue the Order should be

---

[1] GM moved this Court for summary judgment demonstrating that Plaintiffs' experts' failure to identify a specific defect in the 2000 Chevrolet Silverado 1500 extended cab pickup truck was fatal to Plaintiffs' claims of strict liability in tort, negligence, and implied warranty of merchantability. *See* Defendant General Motors Corporation's Motion for Summary Judgment (DKT No. 59) and Defendant General Motors Corporation's Opening Brief in Support of its Motion for Summary Judgment (DKT No. 60) (GM's Opening Brief).

Case 1:05-cv-00645-MSK-BNB   Document 81   Filed 11/22/06   USDC Colorado   Page 2 of 12
05-44481-rdd   Doc 20074-3   Filed 05/14/10   Entered 05/14/10 00:24:53   Exhibit F
part 2   Pg 76 of 122

amended because of alleged "evidence previously unavailable" and to "prevent manifest injustice."

As detailed below, Plaintiffs' Motion should be denied. First, the previously unavailable evidence is reports of crash testing conducted in 2003[2] available on the website for the National Highway Traffic Safety Administration (NHTSA) which is available to the public and which Plaintiffs' experts admitted downloading August 21, 2006, nearly two months before this Court entered the Order granting summary judgment in GM's favor. *See* Plaintiffs' Motion at p. 6. Second, Plaintiffs merely rehash the arguments they made before this Court entered the Order; Plaintiffs have, therefore, failed to demonstrate any justification requiring the Order be altered or amended to prevent manifest injustice. For these reasons, this Court should deny Plaintiffs' Motion.

### STANDARDS GOVERNING PLAINTIFFS' MOTION TO ALTER OR AMEND A JUDGMENT UNDER RULE 59(e)

"A court may grant a rule 59(e) motion only under limited circumstances." *Sierra Club v. Tri-State Generation & Transmission Ass'n*, 173 F.R.D. 275, 287 (D. Colo. 1997). Grounds warranting a motion to alter or amend a judgment include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice. *Brumark Corp. v. Samson Res. Corp.*, 57 F.3d 941, 948 (10th Cir. 1995). It is not appropriate, however, in a motion to alter or amend a judgment to revisit issues already addressed or advanced arguments that could have been raised prior the Court's ruling. *Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir. 1991) (reconsideration not intended for revisiting issues already addressed or advancing evidence which was otherwise available).

---

[2] *See* Exhibit A. Exhibit A is the first page of one of the reports which Plaintiffs conventionally filed with this Court as Exhibit B-3 to Plaintiffs' Motion to Alter or Amend the Judgment and Plaintiff's [sic] Memorandum of Law in Support Thereof (DKT No. 68).

Case 1:05-cv-00645-MSK-BNB   Document 81   Filed 11/22/06   USDC Colorado   Page 3 of 12
05-44481-rdd   Doc 20074-3   Filed 05/14/10   Entered 05/14/10 00:24:53   Exhibit F
part 2   Pg 77 of 122

"[A] party's failure to present his strongest case in the first instance does not entitle him to a second chance in the form of a motion to amend." *Paramount Pictures Corp. v. Video Broadcasting Sys., Inc.*, No. 89-1412-C, 1989 U.S. Dist. LEXIS 15684, at *1 (D. Kan. Dec. 15, 1989) (citing *United States v. Carolina E. Chem. Co., Inc.*, 639 F. Supp. 1420, 1423 (D. S.C. 1986)) (copy attached as Exhibit B).  A motion to reconsider or to alter or amend may not be used as a vehicle for the losing party to rehash arguments previously considered and rejected by the district court. *National Metal Finishing Co., Inc. v. Barclays Am./Comm., Inc.*, 899 F.2d 119, 123 (1st Cir. 1990); *In re Oil Spill by "Amoco Cadiz" Off Coast of France on March 16, 1978*, 794 F. Supp. 261, 267 (N.D. Ill. 1992).  A party cannot wait until a motion for reconsideration to advance new legal theories or supporting facts that were available during the original briefing process. *Van Skiver v. United States*, 751 F. Supp. 1522, 1523 (D. Kan. 1990) (inappropriate for movant to advance new arguments or supporting facts that were available when original summary judgment motion was briefed), *aff'd*, 952 F.2d 1241 (10th Cir. 1991), *cert. denied*, 506 U.S. 828 (1992).

## ARGUMENT AND AUTHORITIES

### PROPOSITION I

### THE EVIDENCE UPON WHICH PLAINTFFS RELY IS PUBLICLY AVAILABLE CRASH TESTS WHICH PLAINTIFFS ADMITTED HAVING NEARLY TWO MONTHS BEFORE SUMMARY JUDGMENT WAS ENTERED IN GM'S FAVOR

There is no previously unavailable evidence which would warrant this Court altering or amending the summary judgment in favor of GM.  A motion to alter or amend based on new evidence cannot rely on evidence which, with due diligence, could have been presented to the Court before summary judgment was entered. *Buell v. Security Gen. Life Ins. Co.*, 987 F.2d 1467, 1472 (10th Cir.), *cert. denied*, 510 U.S. 916 (1993) ("When supplementing a Rule 59(e)

Case 1:05-cv-00645-MSK-BNB   Document 81   Filed 11/22/06   USDC Colorado   Page 4 of 12
05-44481-rdd   Doc 20074-3   Filed 05/14/10   Entered 05/14/10 00:24:53   Exhibit F
part 2   Pg 78 of 122

motion with additional evidence, the movant must show either that the evidence is newly discovered [and] if the evidence was available at the time of the decision being challenged, that counsel made a diligent yet unsuccessful effort to discover the evidence").

The evidence upon which Plaintiffs rely is crash testing reports from the NHTSA website—not from GM—regarding vehicle crash testing conducted June 6, 2003. The NHTSA website and the crash test reports and videos are available to the public. Plaintiffs' expert admitted downloading this information on August 21, 2006, nearly two months before this Court entered the Order granting summary judgment in GM's favor. *See* Plaintiffs' Motion at p. 6. The report of William G. Broadhead (Broadhead), Plaintiffs' expert, never suggested that additional materials were needed before offering his opinions. *See* Exhibit A-3 to GM's motion for summary judgment (DKT No. 59). This evidence does not constitute previously unavailable evidence which would warrant altering or amending the judgment under Rule 59(e).

Plaintiffs also attach excerpts from the depositions of their experts, Broadhead and Dennis Shanahan, taken on August 25 and 29 respectively. Plaintiffs fail to provide, however, any justification for not submitting this evidence during briefing on GM's motion for summary judgment. This Court granted summary judgment on October 17, 2006, about seven weeks after those depositions. Plaintiffs also fail to provide any explanation for not submitting affidavits from their experts to support their claims at any time before this Court ruled on the motion for summary judgment.

A district court acts properly in denying a motion to reconsider "in the absence of a showing that the movant had exercised due diligence in attempting to produce the evidence offered in support of its motion where all of that evidence was in existence prior to the time of the original summary judgment." *Anderson v. United Auto Workers*, 738 F. Supp. 441, 442 (D.

Case 1:05-cv-00645-MSK-BNB   Document 81   Filed 11/22/06   USDC Colorado   Page 5 of 12
05-44481-rdd   Doc 20074-3   Filed 05/14/10   Entered 05/14/10 00:24:53   Exhibit F
part 2   Pg 79 of 122

Kan. 1990) (denying motion to reconsider).  Plaintiffs cannot show due diligence under these circumstances.

The evidence upon which Plaintiffs rely in support of their Rule 59(e) motion reports on crash testing conducted in 2003.  The information was available to the public on the Internet. Plaintiffs' expert witness admitted to having downloaded this publicly available information nearly two months before this Court granted GM's motion for summary judgment.  At no time, however, did Plaintiffs attempt to supplement the summary judgment record with either the evidence of the test results, the deposition testimony of their experts,[3] nor an affidavit by their experts.  Plaintiffs cannot show due diligence in attempting to produce evidence under these circumstances.

The authority Plaintiffs cite recognizes that reconsideration based on previously unavailable evidence is not appropriate where that evidence could have been introduced before summary judgment was entered. *ICEE Dist., Inc. v. J&J Snack Foods Corp.*, 445 F.3d 841, 847-48 (5th Cir. 2006) ("an unexcused failure to present evidence available at the time of summary judgment provides a valid basis for denying a subsequent motion for reconsideration"— plaintiff relied on "facts that were plainly available or easily discovered before summary judgment" and "no reason is offered that knowledge of these events was beyond [plaintiff's] reach before [summary judgment]"); *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251-52 (7th Cir. 1987) (party seeking relief under Rule 59(e) cannot "introduce new evidence that could have been adduced during pendency of the summary judgment motion"—plaintiff "failed to make a

---

[3] The deposition transcripts of Plaintiffs' experts, attached to Plaintiffs' Motion, are not newly discovered evidence. First, those depositions were taken August 25 and 29. Additionally, to the extent Plaintiffs want to rely on testimony by their experts, Plaintiffs could have submitted any testimony they desired from their experts via affidavit.

Case 1:05-cv-00645-MSK-BNB   Document 81   Filed 11/22/06   USDC Colorado   Page 6 of 12
05-44481-rdd   Doc 20074-3   Filed 05/14/10   Entered 05/14/10 00:24:53   Exhibit F
part 2   Pg 80 of 122

showing that [they] had exercised due diligence in attempting to produce the evidence or argument while the motion for summary judgment was pending.").

Plaintiffs' alleged previously unavailable evidence was available and discoverable before and during the pendency of GM's motion for summary judgment. Plaintiffs offer no reason that knowledge of the evidence upon which they rely was beyond Plaintiffs' reach before or during summary judgment briefing. *Id.* at 847. Plaintiffs' motion should be denied.

### PROPOSITION II

### PLAINTIFFS HAVE NOT PRESENTED ANY JUSTIFICATION FOR ALTERING OR AMENDING THIS COURT'S JUDGMENT TO PREVENT AN ALLEGED MANIFEST INJUSTICE

Seeking reconsideration based on manifest injustice, Plaintiffs contend this Court "did not, as required, assess whether the Defendant General Motors Corporation had met their [sic] burden to demonstrate that summary judgment was appropriate." Plaintiffs' Motion at p. 7. This is the same argument Plaintiffs previously made before this Court and lost. Rule 59 cannot be used to relitigate the same arguments. Furthermore, even if relitigation were appropriate, Plaintiffs have not directed this Court to any authority mandating reconsideration or a different result.

**A.      Plaintiffs' attempt to relitigate arguments already made to and rejected by this Court is improper under Rule 59(e).**

Plaintiffs' argument that GM failed to carry its burden with competent evidence has already been considered and rejected by this Court. Rule 59(e) cannot be used to relitigate previously made and lost arguments.

GM demonstrated that for Plaintiffs to establish a *prima facie* case of strict liability, negligence, or breach of implied warranty under either Colorado or Kansas law, Plaintiffs were required to prove the existence of a specific design or manufacturing defect. *See* GM's Opening

Case 1:05-cv-00645-MSK-BNB   Document 81   Filed 11/22/06   USDC Colorado   Page 7 of 12
05-44481-rdd   Doc 20074-3   Filed 05/14/10   Entered 05/14/10 00:24:53   Exhibit F
part 2   Pg 81 of 122

Brief (DKT No. 60) at p. 6-7. Plaintiffs failed to carry this burden because Plaintiffs' expert failed to identify a specific defect in the subject vehicle. *Id.* at pp. 13-15.

After not receiving a timely response[4] from Plaintiffs, one month after filing the motion for summary judgment GM filed General Motors Corporation's Motion to Adjudicate Summary Judgment Motion, with Request for Expedited Consideration (DKT No. 63) (GM's Motion to Adjudicate). Two days later on August 23, 2006, Plaintiffs responded to GM's Motion to Adjudicate. *See* Response to Defendant General Motors Corporation's Motion to Adjudicate Summary Judgment and for Expedited Consideration (DKT No. 65) (Plaintiffs' Response). Plaintiffs argued summary judgment should be denied because GM failed to support its motion with competent evidence. *See* Plaintiffs' Response at pp. 2-4.

This is the same argument Plaintiffs advance here in support of the motion to alter or amend. Rule 59 should not be used to re-urge arguments previously made and rejected. *Zang v. Hewlett-Packard Co.*, No. 04-CV-01910-LTB-CBS, 2006 U.S. Dist. LEXIS 25836, at *3 (D. Colo. May 2, 2006) (citing *Lyons v. Jefferson Bank & Trust*, 793 F. Supp. 989, 991 (D. Colo. 1992), and 9 Wright & Miller, *Federal Practice and Procedure*, § 2582 (1971) (copy attached as Exhibit C).

Plaintiffs' Motion simply re-urges arguments already made to and rejected by this Court. Plaintiffs "may not relitigate a motion [Plaintiffs] already had a chance to contest, and lost." *Rothwell Cotton Co.*, 827 F.2d at 252. Plaintiffs' Motion should be denied for that reason alone.

---

[4] Pursuant to D.C.COLO.LCivR 56.1(A), Plaintiffs' response was due "within 20 days after the date of filing of the motion and opening brief, or such other time as the court may order." Plaintiffs never asked for additional time. Plaintiffs also never requested additional time pursuant to FED. R. CIV. P. 56(f) ("Should it appear ... the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions....").

Case 1:05-cv-00645-MSK-BNB   Document 81   Filed 11/22/06   USDC Colorado   Page 8 of 12
05-44481-rdd   Doc 20074-3   Filed 05/14/10   Entered 05/14/10 00:24:53   Exhibit F
part 2   Pg 82 of 122

**B.**     **Even if this Court were inclined to allow Plaintiffs to relitigate arguments this Court already rejected, the record before this Court does not warrant reconsideration or a different result.**

GM demonstrated that for Plaintiffs to establish a *prima facie* case of strict liability, negligence, or breach of implied warranty because Plaintiffs' expert failed to identify a specific defect in the subject vehicle. *See* GM's Opening Brief (DKT No. 60). Plaintiffs ultimately argued the merits of GM's motion for summary judgment. *See* Plaintiffs' Response.[5]

Reviewing Plaintiffs' Response and the summary judgment record, this Court ruled that GM, as the party who does not have the burden of proof at trial, may point to an absence of sufficient evidence to establish Plaintiffs' claims. Order at p. 3. GM carried this burden by demonstrating Plaintiffs could not establish a *prima facie* case of strict liability, negligence, or breach of implied warranty under either Colorado or Kansas law, without expert testimony identifying a specific design or manufacturing defect. *See* GM's Opening Brief (DKT No. 60) at p. 6-7. Upon GM's showing that Plaintiffs' experts failed to identify a specific defect, Plaintiffs had the burden of coming forward with sufficient, competent evidence to create a triable issue of fact. Order at p.4 (citing *Thomas v. IBM¸* 48 F.3d 478, 484-85 (10th Cir. 1995)).

Plaintiffs must meet this burden of proof with expert opinion testimony. GM's Opening Brief at pp. 7-13. Based on the undisputed evidence, however, Plaintiffs' expert failed to identify a specific design or manufacturing defect in the subject vehicle. *Id.* at pp. 13-15. Instead, Plaintiffs' expert merely opined that the subject vehicle's seat belt system or air bag system failed to restrain Mr. Alfaro and therefore either the seat belt or the air bag system has a defect or malfunctioned. *Id.* at p. 14. This circular reasoning, there was an injury so there must be a defect, by Plaintiffs' expert is insufficient to take a case to the jury. *Id.* at pp. 13-15.

---

[5] This Court properly treated Plaintiffs' Response as a response to GM's motion for summary judgment because Plaintiffs' Response argued the merits of summary judgment.

Case 1:05-cv-00645-MSK-BNB   Document 81   Filed 11/22/06   USDC Colorado   Page 9 of 12
05-44481-rdd   Doc 20074-3   Filed 05/14/10   Entered 05/14/10 00:24:53   Exhibit F
part 2   Pg 83 of 122

In opposition to GM's motion for summary judgment, Plaintiffs had the obligation to come forward with evidence demonstrating a triable question of fact. Plaintiffs failed to make such a showing at any time during the nearly three months between the time GM filed its motion for summary judgment and the date this Court granted GM's motion for summary judgment.

Plaintiffs do not cite any authority from Kansas, Colorado, or the Tenth Circuit demonstrating that Plaintiffs' claims should be permitted to proceed without expert testimony identifying a specific defect. Plaintiffs' reliance on *Silvestri v. General Motors Corp.*, 210 F.3d 240 (4th Cir. 2000), is misplaced. There, the Fourth Circuit Court of Appeals ruled that under New York law a plaintiff may proceed in a products liability case upon presenting circumstantial evidence showing that the product did not perform as intended and must exclude all causes of his enhanced injuries not attributable to the defendant. *Id.* at 244. *Silvestri* is not consistent with opinions by the Tenth Circuit and the courts in Colorado and Kansas. *See* GM's Opening Brief at pp. 11-13. *See, e.g., Montag v. Honda Motor Co., Ltd.*, 75 F.3d 1414, 1420-21 (10th Cir.), *cert. denied*, 519 U.S. 814 (1996) (only an expert could provide evidence that a seat belt was "defective" in a products liability case).

The other cases Plaintiffs cite relate to Plaintiffs' argument that GM failed to present competent evidence demonstrating its entitlement to summary judgment. Plaintiffs argue that their expert reports were not sufficient to support summary judgment in GM's favor.

Contrary to Plaintiffs' argument, GM did not attach Plaintiffs' expert report to establish a fact to support GM's affirmative defenses. Rather, that report demonstrates that Plaintiffs' expert failed to identify a specific defect. In other words, even if Plaintiffs' expert opinion is taken as true, that opinion would be insufficient as a matter of law to take Plaintiffs' defect

Case 1:05-cv-00645-MSK-BNB   Document 81   Filed 11/22/06   USDC Colorado   Page 10 of 12
05-44481-rdd    Doc 20074-3    Filed 05/14/10    Entered 05/14/10 00:24:53    Exhibit F
part 2    Pg 84 of 122

allegations to a jury.  Without expert proof of a specific defect, Plaintiffs cannot establish a

*prima facie* case.

Plaintiffs' argument would require GM to present evidence that the subject vehicle was

not defective.  This argument would shift to the manufacturer the burden of proving that a

product is not defective merely an allegation that a plaintiff was injured in an accident.  Such

burden shifting is not supported by the law.  *See, e.g., Armentrout v. FMC Corp.*, 842 P.2d 175,

182-85 (Colo. 1992) (affirming trial court's rejection of proposed jury instructions which placed

the burden of proof on the manufacturer).

Instead, in summary judgment proceedings, once the party who does not bear the burden

of proof at trial points to the failure of the proof of the party who has the burden at trial, the party

with the burden at trial must then come forward with evidence sufficient to show a triable

question of fact.  To meet their burden in this case, Plaintiffs were required to come forward with

expert witness testimony identifying a specific defect.  Plaintiffs failed to meet this burden.

## CONCLUSION

WHEREFORE, based on the foregoing, GM requests this Court deny Plaintiffs' Motion

to Alter or Amend Judgment.

Case 1:05-cv-00645-MSK-BNB   Document 81   Filed 11/22/06   USDC Colorado   Page 11 of 12
05-44481-rdd   Doc 20074-3   Filed 05/14/10   Entered 05/14/10 00:24:53   Exhibit F
part 2   Pg 85 of 122

Respectfully submitted,

/s/ MICHAEL F. SMITH
ELDRIDGE COOPER STEICHEN
   & LEACH, PLLC
MARY QUINN-COOPER (#11966)
mcooper@ecslok.com
MICHAEL F. SMITH (#14815)
msmith@ecslok.com
HAROLD C. ZUCKERMAN (#11189)
hzuckerman@ecslok.com
P. O. BOX 3566
110 W. 7th Street, Ste 200
TULSA, OKLAHOMA 74101-3566
(918) 388-5555  FAX (918) 388-5654

CHARLES L. CASTEEL
DAVIS GRAHAM & STUBBS LLP
SUITE 500, 1550 SEVENTEENTH STREET
DENVER, CO  80202
Charles.Casteel@dgslaw.com
(303) 892-9400 telephone
(303) 893-1379 facsimile

*Attorneys for General Motors Corporation*

Case 1:05-cv-00645-MSK-BNB   Document 81   Filed 11/22/06   USDC Colorado   Page 12 of 12
05-44481-rdd   Doc 20074-3   Filed 05/14/10   Entered 05/14/10 00:24:53   Exhibit F
part 2   Pg 86 of 122

## CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of November, 2006, I electronically filed GMC's Response and Objection to Plaintiffs' Motion to Alter or Amend Judgment with the Clerk of Court using CM/ECF for filing.  Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic filing to the following ECF registrants:

Stanley Walter
518 Seventeenth Street, Suite 1044
Denver, Colorado  80202-4119
stan@stanwalterlaw.com
Attorney for Plaintiffs

Mary A. Wells
David G. Mayhan
Wells, Anderson & Race, LLC
1700 Broadway, Suite 1020
Denver, Colorado  80290
mwells@warllc.com
dmayham@warllc.com
Attorneys for Defendant Delco Electronics
and Delphi Automotive Systems, LLC

and I certify that I have mailed the documents to the following non CM/ECF participants:

Mr. Don C. Staab
1301 Oak Street
Hays, Kansas  67601

Attorney for Plaintiff Martha Alfaro

*/s/ Michael F. Smith*

Case 1:05-cv-00645-MSK-BNB   Document 81-1   Filed 11/22/06   USDC Colorado   Page 1 of 1
05-44481-rdd   Doc 20074-3   Filed 05/14/10   Entered 05/14/10 00:24:53   Exhibit F
part 2   Pg 87 of 122



**PMG Technologies**

| | |
|---|---|
| **Nom du client** **Client Name** | **TRANSPORT CANADA** |
| **Type de véhicule** **Type of Vehicle** | **SILVERADO 2000** |
| **Numéro de TC** **Tc Number** | **TC00-223** |
| **Numéro de contrat** **Contract No** | **04-5001** |
| **Acquisition de données selon** **Data Acquisition according to** | **SAE J211/1 MAR 95** |
| **Date de l'essai** **Test date** | **2003-06-09** |
| **Titre du projet** | **COLLISIONS DE RECHERCHE** **FRONTALE DÉCALÉE 30 KM/H - 40% GAUCHE** |
| **Project Title** | **RESEARCH COLLISION TESTS** **OFFSET FRONTAL 30 KM/H - 40% LEFT** |

**MANNEQUIN / DUMMY**

| | |
|---|---|
| **Chauffeur** **Driver** | **HYBRID III 5% F IR** |
| **Passager** **Passenger** | **HYBRID III 5% F IR** |
| **Passager 1 (arrière gauche)** **Passenger 1 (rear left)** | **HYBRID III 6Y** |

**EXHIBIT**

tabbies®   A

Case 1:05-cv-00645-MSK-BNB   Document 81-2   Filed 11/22/06   USDC Colorado   Page 1 of 5
05-44481-rdd   Doc 20074-3   Filed 05/14/10   Entered 05/14/10 00:24:53   Exhibit F
Get a Document - by Citation - 1989 U.S. Dist. LEXIS 15684                                Page 1 of 6
part 2   Pg 88 of 122

Service: Get by LEXSEE®
Citation: 1989 U.S. Dist. lexis 15684

*1989 U.S. Dist. LEXIS 15684, \**

PARAMOUNT PICTURES CORPORATION, Plaintiff v. VIDEO BROADCASTING SYSTEMS, INC., VIDEO BROADCASTING SYSTEM OF ST. LOUIS; TIM MEAD; DOMINO'S PIZZA, INC.; LAKODUK BROADCASTING CORPORATION d/b/a KICT-95 RADIO; and VARIOUS JOHN DOES, JANE DOES, and ABC COMPANIES, Defendants

No. 89-1412-C

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF KANSAS

1989 U.S. Dist. LEXIS 15684

December 15, 1989, Decided and Filed

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff corporation filed a motion to amend an order of the United States District Court for the District of Kansas, which denied a preliminary injunction against defendant advertisers. The corporation's motion was based on Fed. R. Civ. P. 52(b) and alleged newly discovered evidence.

**OVERVIEW:** The corporation sought to have the trial court amend its order that denied a preliminary injunction against advertisers that were allegedly confusing consumers. The court denied the motion to amend. Fed. R. Civ. P. 52(b) provided that the court could amend its findings or make additional findings and could amend the judgment accordingly upon motion of a party. The granting of a motion to amend was committed to the sound discretion of the trial court. A party's failure to present his strongest case in the first instance did not entitle him to a second chance in the form of a motion to amend. The court held that the corporation failed to present any recognized ground for sustaining a motion to amend. The corporation alleged that it was conducting a public survey to support consumer confusion. The court held that the corporation had sufficient time to conduct a survey prior to the first hearing and that it could not reargue the same claims decided in the prior hearing.

**OUTCOME:** The court denied the corporation's motion to amend an order that denied a preliminary injunction against advertisers. The court held that the corporation had sufficient time to conduct a consumer survey and that it could not relitigate claims of consumer confusion based on newly discovered evidence.

**CORE TERMS:** motion to amend, preliminary injunction, diligence, videocassette, consumer, Lanham Act, advertisements, amend, finality, public opinion, trademark, analogy, viewer, newly discovered evidence, interlocutory order, failed to exercise, interlocutory, advertising, relitigate, evolution, strongest, sponsorship, depositions, discerning, isolating, connected, believing

### LexisNexis(R) Headnotes ✦ Hide Headnotes

Civil Procedure > Pleading & Practice > Pleadings > Amended Pleadings > General Overview 🔍

Civil Procedure > Trials > Bench Trials 🔍

EXHIBIT

B

Case 1:05-cv-00645-MSK-BNB   Document 81-2   Filed 11/22/06   USDC Colorado   Page 2 of 5
05-44481-rdd   Doc 20074-3   Filed 05/14/10   Entered 05/14/10 00:24:53   Exhibit F
part 2   Pg 89 of 122

Get a Document - by Citation - 1989 U.S. Dist. LEXIS 16843                    Page 2 of 6

Civil Procedure > Judgments > Relief From Judgment > Motions to Alter & Amend 🔍

*HN1* 🔸 Fed. R. Civ. P. 52(b) provides that the court may amend its findings or make
additional findings and may amend the judgment accordingly upon the motion of a
party. Fed. R. Civ. P. 52(b). Such a motion is not intended merely to relitigate the
same issues, to present the case under new theories, to introduce evidence available
at trial but was not proffered, or to rehear the merits. Recognized grounds for such a
motion include: (1) that the trial court has made a manifest error of fact or law, (2)
that there is newly discovered evidence, or (3) that there has been a change in the
law. A party's failure to present his strongest case in the first instance does not
entitle him to a second chance in the form of a motion to amend. The granting of a
motion to amend is committed to the sound discretion of the trial
court.   More Like This Headnote | *Shepardize:* Restrict By Headnote

Civil Procedure > Pleading & Practice > Pleadings > Amended Pleadings > General Overview 🔍

Civil Procedure > Judgments > Relief From Judgment > Motions to Alter & Amend 🔍

Governments > Courts > Authority to Adjudicate 🔍

*HN2* 🔸 Evidence is generally considered "newly discovered" if it is only discovered after the
trial or hearing, notwithstanding the earlier exercise of due diligence in obtaining
evidence in preparation of the hearing. The standards governing a motion to amend
exist to protect a compelling interest in the finality of litigation. Since an order on a
motion for preliminary injunction is interlocutory and a court has continuing plenary
power over it, a motion to amend an interlocutory order does not raise the same
overriding interest in finality. Nevertheless, courts have considered the earlier
diligence of parties and have discouraged attempts to relitigate on a fuller record
preliminary injunction issues already decided.   More Like This Headnote

## COUNSEL: [*1]

Mounte Vines, Adams, Jones, Robinson and Malone, Wichita, Kansas, and Jeffrey L. Laytin,
William M. Ried, Steven E. Seidenberg, Lewin & Laytin, New York, New York, and Robert W.
McKinley, Linda J. Salfran, Swanson, Midgley, Gangwere, Clarke & Kitchin, Kansas City,
Missouri for Plaintiff.

William L. Fry, Wichita, Kansas, and Steven D. Gough, Kahrs, Nelson, Fanning, Hite &
Kellogg, Wichita, Kansas, and Thomas D. Kitch, William P. Tretbar, Fleeson, Gooing, Coulson
& Kitch, Wichita, Kansas, and John H. Gibson, Boyer, Donaldson & Stewart, Wichita, Kansas,
for Defendants.

**OPINION BY:** CROW

**OPINION:** MEMORANDUM AND ORDER

SAM A. CROW, UNITED STATES DISTRICT JUDGE

The case comes before the court on the motion of plaintiff, Paramount Pictures Corporation
(Paramount), to amend the court's order filed October 11, 1989, in which the plaintiff's
motion for preliminary injunction was denied. Video Broadcasting Systems, Inc. and Tim
Mead (collectively referred to hereinafter as VBS) respond in opposition to plaintiff's motion.

Case 1:05-cv-00645-MSK-BNB   Document 81-2   Filed 11/22/06   USDC Colorado   Page 3 of 5
05-44481-rdd   Doc 20074-3   Filed 05/14/10   Entered 05/14/10 00:24:53   Exhibit F
Get a Document - by Citation - 1989 U.S. Dist. LEXIS 15885
part 2   Pg 90 of 122                                                    Page 3 of 6

Paramount contends the court is empowered to amend its findings pursuant to [HN1]Fed. R. Civ. P. 52(b). Under this provision, the court may "amend its findings or make additional findings and may amend [*2] the judgment accordingly" upon motion of a party. Fed. R. Civ. P. 52(b). Such a motion is not intended merely to relitigate the same issues, to present the case under new theories, to introduce evidence available at trial but was not proffered, or to rehear the merits. Fontenot v. Mesa Petroleum Co., 791 F.2d 1207, 1219 (5th Cir. 1986). Recognized grounds for such a motion include: "(1) that the trial court has made a manifest error of fact or law, (2) that there is newly discovered evidence, or (3) that there has been a change in the law." Dow Chemical Pacific Ltd. v. Rascator Maritime S.A., 609 F. Supp. 451, 452-53 (D.N.Y. 1984), modified on other grounds, 782 F.2d 329 (2nd Cir. 1986), (citing J. Moore & J. Lucas, 6A Moore's Federal Practice paras. 59.05, .07, .12 (2d ed. 1981)). A party's failure to present his strongest case in the first instance does not entitle him to a second chance in the form of a motion to amend. U.S. v. Carolina Eastern Chemical Co., Inc., 639 F. Supp. 1420, 1423 (D.S.C. 1986). The granting of a motion to amend is committed to the sound discretion of the trial court. Solmitz v. United States, 640 F.2d 1089, 1091 n.1 (9th Cir.), cert. [*3] denied, 454 U.S. 867 (1981).

As argued by defendant VBS, plaintiff has not presented any of the recognized grounds for sustaining a motion to amend. Plaintiff identifies several factual issues from the October 11th order upon which the court found plaintiff's evidence lacking. Plaintiff states that it anticipates to offer the necessary evidence upon completion of a public opinion survey being conducted by a research organization which it has since hired. Plaintiff also asserts that this survey evidence was not introduced at the initial hearing because of expense and "the generally brief period following filing an order to show cause before a hearing is held. . . ." (Dk. 73 at 9 n.5). Plaintiff similarly states its intention to take the depositions of certain defendants and submit portions in support of its motion to amend.

[HN2]Evidence is generally considered "newly discovered" if it was only discovered after the trial or hearing, notwithstanding the earlier exercise of due diligence in obtaining evidence in preparation of the hearing. Rosebud Sioux Tribe v. A & P Steel, Inc., 733 F.2d 509, 515 (8th Cir.), cert. denied, 469 U.S. 1072 (1984). The standards governing a motion [*4] to amend exist to protect a compelling interest in the finality of litigation. See Fontenot, 791 F.2d at 1219. Since an order on a motion for preliminary injunction is interlocutory and a court has continuing plenary power over it, Huk-A-Poo Sportswear, Inc. v. Little Lisa, Ltd., 74 F.R.D. 621, 624 (S.D.N.Y. 1977), a motion to amend an interlocutory order does not raise the same overriding interest in finality. Nevertheless, courts have considered the earlier diligence of parties and have discouraged attempts "'to relitigate on a fuller record preliminary injunction issues already decided.'" Id. at 624 (quoting American Optical Company v. Rayex Corp., 394 F.2d 155 (2d Cir.), cert. denied, 393 U.S. 835 (1968)); see also Semmes Motors, Inc. v. Ford Motor Company, 429 F.2d 1197, 1207 (2d Cir. 1970). In Semmes, the Second Circuit affirmed the district court's denial of the motion to vacate the preliminary injunction noting that the trial judge was "amply justified in finding that Ford [movant] had failed to exercise due diligence in not presenting this [evidence] earlier." 429 F.2d at 1207. The Tenth Circuit has also embraced the notion that an interlocutory [*5] order must be accorded a measure of finality in order to prevent continued reargument and that this can be best achieved by allowing amendment of the law of the case only under certain circumstances, such as "substantially different, new evidence." Major v. Benton, 647 F.2d 110, 112 (10th Cir. 1981) (citation omitted). "When a lower court is convinced that an interlocutory ruling it has made is substantially erroneous, the only sensible thing to do is to set itself right to avoid subsequent reversal." Id.

Plaintiff has not shown the survey evidence or depositions to be in the nature of newly discovered evidence as in not being obtainable for and submissible in the injunction hearing upon the exercise of due diligence. Since plaintiff was willing to incur the cost of a public opinion survey after the October 11th order, this expense is not a factor going to due diligence as much as it could be part of a litigation strategy to await the incurring of that cost

Case 1:05-cv-00645-MSK-BNB   Document 81-2   Filed 11/22/06   USDC Colorado   Page 4 of 5
05-44481-rdd   Doc 20074-3   Filed 05/14/10   Entered 05/14/10 00:24:53   Exhibit F
Get a Document - by Citation - 1989 U.S. Dist. LEXIS 13682   part 2   Pg 91 of 122   Page 4 of 6

for any second attempt at proving plaintiff's motion. Plaintiff also had sufficient time to conduct such a survey prior to the first hearing. The court has already summarized in the October 11th order the plaintiff's inordinate **[*6]** delay in bringing suit. In addition, plaintiff filed its complaint in this case on August 3, 1989, and its motion for preliminary injunction on the following day. The hearing on this motion was not held until September 28, 1989, almost two months later. Furthermore, plaintiff is not confined in a preliminary injunction hearing to showing actual confusion as a factor on its Lanham Act claim by a public opinion survey. See, e.g., <u>Amoco Oil Co. v. Rainbow Snow, Inc., 809 F.2d 656, 659-60, 662 (10th Cir. 1987);</u> <u>Paramount Pictures v. Dorney Park Coaster Co., 698 F. Supp. 1274, 1280 (E.D.Pa. 1988);</u> <u>Jackson v. MPI Home Video, 694 F. Supp. 483, 492 (N.D.Ill 1988).</u> Plaintiff failed to exercise due diligence in coming forth at the hearing with evidence of actual confusion or relevant public perceptions regarding videocassettes and advertising contained on them which would support its Lanham Act claims. Plaintiff is not entitled to a second opportunity to now present its strongest case in support of its motion for preliminary injunction.

Plaintiff contends it should be allowed to reply to points made in the October 11th order which it believes were not advanced by defendants. **[*7]** Plaintiff does not delineate which points in the order were not basic elements to their claims, were not argued by the defendants, or were a surprise to it. The mere fact that the court did not see it necessary to address some of defendants' tangential issues on antitrust laws, First Amendment or unclean hands did not prejudice the plaintiff. The court must follow the law as understood by it whether or not the parties have emphasized to the same extent the legal concepts which the court found compelling. The court also believes, however, the record will show that each of the points made in the October 11th order were argued or presented in some fashion in one or more of the parties' memoranda. Plaintiff is not entitled to another opportunity to reargue its same claims and issues discussed and decided in the October 11th order.

The court will briefly address some of the arguments reasserted by plaintiff in its motion to amend. Plaintiff declares now it is not alleging any Lanham Act claim on the basis of a likelihood that the public would be confused into believing that defendants' advertisements were produced at Paramount's studios. While the court did characterize the likelihood of confusion **[*8]** element to include this possible factual scenario, the court also discussed what it termed, "sponsorship confusion," which it defined as a consumer believing that Paramount is connected with or has sponsored the advertisements. (Dk. 70 at 11-12, 15-16; 17, 18-20). At page seventeen, this court observed: "the quality of a defendant's product seems a very appropriate consideration when the alleged confusion is primarily one of affiliation or sponsorship, rather than source." (Dk. 70). The court believes it accurately characterized plaintiff's Lanham Act claims.

Nowhere in the October 11th order is it implicitly accepted that defendants intended to sell their goods or advertisements on the strength or recognition of Paramount's name or trademark. The audience is not captive because of plaintiff's trademark, but because the consumer chose to be entertained in their homes by watching a movie prerecorded on a videocassette. Plaintiff's argument again blends together several factually distinct perceptions of a viewer or purchaser in hopes of creating an inference of confusion. The court deems its October 11th order to be an adequate explanation of why it considers the evidence to be lacking **[*9]** for such an inference.

The Tenth Circuit has clearly recognized the quality of defendant's product to be a factor in the likelihood of consumer confusion test. <u>Jordache Enterprises, Inc. v. Hogg Wyld, Ltd., 828 F.2d 1482, 1488 (10th Cir. 1987).</u> This consideration does not run counter to the duty of a trademark owner to control the nature and quality of goods associated with its marks, since the quality difference may preclude any association of goods from the outset.

Concerning the factor of degree of care likely to be exercised by consumers, the plaintiff draws the court's attention to the general rule that a consumer is considered to be less

Case 1:05-cv-00645-MSK-BNB   Document 81-2   Filed 11/22/06   USDC Colorado   Page 5 of 5
05-44481-rdd   Doc 20074-3   Filed 05/14/10   Entered 05/14/10 00:24:53   Exhibit F
Get a Document - by Citation - 1989 U.S. Dist. LEXIS 15684 part 2   Pg 92 of 122          Page 5 of 6

discerning when the product is relatively inexpensive. The court's reluctance to speculate on this factor is more attributable to the nature of videocassettes rather than their price and also due to the difficulty of isolating the effect of price. In other words, is the viewer of a videocassette any more or less discerning because of the purchase price or rental fee of the videocassette than the typical viewer of a commercial television program and is, therefore, any more or less likely to believe that the producer of the motion picture **[*10]** or program is connected or affiliated with the advertisements preceding the program. Such evidence was not presented for this court's consideration.

Plaintiff alternatively argues that it is likely to succeed on its copyright claims. The court believes these claims as presented by plaintiff were sufficiently presented and analyzed in the October 11th order. Plaintiff contends the court's rulings are shortsighted. After isolating the basic facts of the three governing decisions in the area of moral rights, plaintiff perceives an evolution of copyright law under which its claim might be sustained: "What started as a protection against the 'substantial alteration' evolved into protection against the insertion of advertising without altering the work and then to protection against additions not even seen by the eye." (Dk. 73 at 13). See Gilliam v. American Broadcasting Companies, Inc., 538 F.2d 14 (2d Cir. 1976); National Bank of Commerce v. Shaklee Corp., 503 F. Supp. 533 (W.D.Tex. 1980); and WGN Continental Broadcasting Co. v. United Video, 693 F.2d 622 (7th Cir. 1982). Although these decisions may have occurred over a period of time, this court does not appreciate the **[*11]** evolution observed by the plaintiff. This court attaches little significance to the fact that the courts in Shaklee and WGN decided to overlook in their cursory discussion of this law that the moral right protected in Gilliam was the author's right to prevent his work from being distorted or truncated. Furthermore, the court in Shaklee did consider to some extent whether the changes to the copyrighted work were material or "non-innocuous." 503 F. Supp. at 544-45.

Resort to analogy may be necessary in certain copyright cases involving new and unique technology. Rather than simply dismiss all possible analogies, this court found that plaintiff had not shown defendant's conduct to violate any moral right of plaintiff's nor constitute a derivative work. Plaintiff's reassertion of its arguments by analogy do not persuade the court to depart from its prior ruling.

IT IS THEREFORE ORDERED that plaintiff's motion to amend is denied.

Dated this 15th day of December, 1989, at Wichita, Kansas.

   Service: **Get by LEXSEE®**
  Citation: **1989 U.S. Dist. lexis 15684**
     View: **Full**
Date/Time: Wednesday, November 22, 2006 - 4:34 PM EST

* Signal Legend:
- Warning: Negative treatment is indicated
[Q] - Questioned: Validity questioned by citing refs
⚠ - Caution: Possible negative treatment
◈ - Positive treatment is indicated
A - Citing Refs. With Analysis Available
i - Citation information available
* Click on any *Shepard's* signal to *Shepardize®* that case.

 LexisNexis®

About LexisNexis | Terms & Conditions
Copyright © 2006 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

Case 1:05-cv-00645-MSK-BNB   Document 81-3   Filed 11/22/06   USDC Colorado   Page 1 of 4
05-44481-rdd   Doc 20074-3   Filed 05/14/10   Entered 05/14/10 00:24:53   Exhibit F
part 2   Pg 93 of 122

Page 1

LEXSEE 2006 U.S. DIST. LEXIS 25836

## BAOLIANG "RICHARD" ZENG, Plaintiff, v. HEWLETT-PACKARD COMPANY, a Delaware corporation, Defendant.

### Civil Case No. 04-cv-01910-LTB-CBS

### UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLORADO

*2006 U.S. Dist. LEXIS 25836*

**May 2, 2006, Decided**
**May 2, 2006, Filed**

**PRIOR HISTORY:** *Zeng v. Hewlett-Packard Co., 2006 U.S. Dist. LEXIS 23561 (D. Colo., Mar. 21, 2006)*

**COUNSEL:** [*1] Baoliang Richard Zeng, Plaintiff, Pro se, Sunnyvale, CA.

For Hewlett-Packard Company, a Delaware corporation, Defendant: Kathleen E. Craigmile, Tami L. Sapp, Bennington, Johnson, Biermann & Craigmile, LLC, Denver, CO.

**JUDGES:** Lewis T. Babcock, Chief Judge.

**OPINION BY:** Lewis T. Babcock

**OPINION:**

ORDER

LEWIS T. BABCOCK, CHIEF JUDGE

This matter is before me on the following post-judgment motions filed by Plaintiff, Boaliang "Richard" Zeng: 1) Plaintiff's Motion to Amend or Make Additional Findings of Fact, Motion to Alter or Amend Court Order and Judgment, Motion for Relief from Court Order and Judgment Re: Court Order Entered on March 20, 2006 and Judgment Awarding Fees and Costs Entered on March 21, 2006 **[Doc. No. 153, filed on March 30, 2006]**; and 2) Plaintiff's Motion to Amend or Make Additional Findings of Fact, Motion to Alter or Amend Court Order and Judgment, Motion for Relief from Court Order and Judgment Re: Court Order Entered on March 21, 2006 and Judgment Entered on March 22, 2006 **[Doc. No. 154, filed on April 5, 2006]**. In these motions, Plaintiff seeks reconsideration of: 1) my March 20, 2006 order in which I granted Defendant, Hewlett-Packard Company's, Motion [*2] for Entry of Judgment Re: Fee and Cost Award and, as such, awarded Defendant its attorney fees and costs, in the amount of $ 4,566.12, for Plaintiff's failure to appear at the Final Pretrial Conference and his failure to participate in the preparation of the final pretrial order (the "Sanctions Order"); and 2) my order dated March 21, 2006, in which I granted Defendant's Motion to Dismiss for Failure to Prosecute and, as such, dismissed Plaintiff's case with prejudice (the "Dismissal Order"). After consideration of Plaintiffs motions for reconsideration, as well as his Declaration and Brief filed in support thereof, and Defendant's Response to Plaintiff's Post-Judgment Motions,



Case 1:05-cv-00645-MSK-BNB   Document 81-3   Filed 11/22/06   USDC Colorado   Page 2 of 4
05-44481-rdd   Doc 20074-3   Filed 05/14/10   Entered 05/14/10 00:24:53   Exhibit F
part 2   Pg 94 of 122

Page 2

2006 U.S. Dist. LEXIS 25836, *

I DENY Plaintiff's motions for the following reasons.

## I. Relevant Rules of Reconsideration

I first note that Plaintiff seeks reconsideration of my orders pursuant to *Fed. R. Civ. P. 52(b), 59(e), 60(a),* and *60(b).* In response, Defendant argues that none of these rules support reconsideration or amendment of either the Sanctions Order or the Dismissal [*3] Order. I agree with Defendant that Plaintiff's motions do not satisfy the requirements under the federal rules to warrant post-judgment relief.

*Fed. R. Civ. P. 52(b)* and *59(e)* allow for amendment of a judgment, within ten day, when the court has made "manifest errors of fact or law" or, under limited circumstances, to present newly discovered evidence. Plaintiff is not presented newly discovered evidence, nor has he argues a manifest error of law or fact. Rather, Plaintiff's motions attempt to improperly reargue positions already addressed and rejected. *See Lyons v. Jefferson Bank & Trust, 793 F. Supp. 989, 991 (D.Colo. 1992)*(a *Fed. R. Civ. P. 52(b)* motion cannot advance new theories or secure a rehearing on the merits); *see also* 9 Wright & Miller, *Federal Practice and Procedure,* § 2582 (1971)("[a] party who failed to prove his strongest case is not entitled to a second opportunity by moving to amend a finding of fact or conclusion of law"). As such, Plaintiff's reliance on *Fed. R. Civ. P. 52(b)* and [*4] *59(e)* for relief is misplaced.

In addition, I reject Plaintiffs attempt to seek relief pursuant to *Fed. R. Civ. P. 60(a),* which applies solely to the correction of clerical mistakes in judgments and orders. *See In re Boyer, 305 B.R. 42, 48 (Bkrtcy.D. Kan. 2004)*("*Rule 60(a)* deals with errors, oversights, omissions and unintended acts or failures that result in a record that does not properly reflect the intention of the parties or the court . . . [it] exists not to alter a judgment, but rather to make it state accurately what the judgment is").

Finally, *Fed. R. Civ. P. 60(b)* permits a court to relive a party from final judgments "upon such terms as are just" for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence . . .; (3) fraud, . . . misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, . . .; or (6) any other reason justifying relief from the operation of the judgment." Relief under *Rule 60(b)* is extraordinary and [*5] may only be granted in exceptional circumstances. *Allender v. Raytheon Aircraft Co., 439 F.3d 1236, 1242 (10th Cir. 2006).* However, *Fed. R. Civ. P. 60(b)* relief is not available to allow a party merely to reargue issues previously addressed to the court, as is the case here. *See Cashner v. Freedom Stores, Inc., 98 F.3d 572, 577 (10th Cir. 1996).* A motion to reconsider under *Fed. R. Civ. P. 60(b)* is not a motion "to reargue those issues already considered when a party does not like the way the original motion was resolved." *Bartholic v. Scripto-Tokai Corp., 140 F. Supp. 2d 1098, 1124 (D.Colo. 2000)*(quoting *In re Houbigant, Inc., 914 F. Supp. 997, 1001 (S.D.N.Y.1996)).* Nonetheless, I briefly address and reject Plaintiff's substantive arguments as follows.

## II. Reconsideration of the Sanctions Order

Plaintiff makes numerous arguments challenging the amount, fairness and reasonableness of the Sanctions Order. He specifically requests that I amend the amount of the judgment against him from $ 4,566.12, to $ 500.00 or less.

However, as I [*6] have previously ruled, Plaintiff's challenge to the reasonableness of the amount ordered was untimely as set forth in *Fed. R. Civ. P. 72(a)*(providing, in pertinent part, that "within 10 days after being served with a copy of the magistrate judge's order, a party may serve and file objections to the order"). I note that Plaintiffs contention that his response was timely based on when he alleg-

Case 1:05-cv-00645-MSK-BNB  Document 81-3  Filed 11/22/06  USDC Colorado  Page 3 of 4
05-44481-rdd  Doc 20074-3  Filed 05/14/10  Entered 05/14/10 00:24:53  Exhibit F
part 2  Pg 95 of 122

Page 3

2006 U.S. Dist. LEXIS 25836, *

edly *received* the relevant order is untenable as "service by mail is complete on mailing" pursuant to *Fed. R. Civ. P. 5(b)(2)(B)*.

Furthermore, to the extent that Plaintiff seeks a lesser sanctions award, I note that *Fed. R. Civ. P. 16(f)* allows for sanctions for a party who fails to appear at a pretrial conference with both the reasonable expenses and the attorney fees incurred by the opposing party. *See Fed. R. Civ. P. 16(f)*("in lieu of or in addition to any other sanction, the judge shall require the party or the attorney representing the party or both to pay the reasonable expenses incurred because of any noncompliance with this [*7] rule, including attorney's fees, unless the judge finds that the noncompliance was substantially justified or that other circumstances make an award of expenses unjust"). The Court also has "very broad" discretion in fashioning appropriate sanctions under *Fed. R. Civ. P. 16(f)*. *Royalty Petroleum Co. v. Arkla, Inc, 129 F.R.D. 674, 680 (W.D.Okl. 1990)*.

Finally, even accepting as true Plaintiff's assertion that my Sanctions Order -- and, more specifically, the underlying Order Re: January 5, 2206 Order to Show Cause by Magistrate Judge Craig B. Shaffer -- contain inaccuracies related to the procedural record in this matter, I conclude that such errors, if any, were not material to my decision to deny Plaintiff's challenge to the Magistrate's order.

### III. Reconsideration of Dismissal Order

In Plaintiff's motion seeking reconsideration of my Dismissal Order, Plaintiff argues, in addition to the reiterated arguments made in his motion seeking reconsideration of my Sanctions Order, that the Court did not warn him that his failure to prosecute this case could result in *both* a monetary sanction and a sanction of dismissal. [*8] However, Plaintiff has failed to refer me to case law in support of his argument, and my research does not reveal any such authority. The Sanctions Award was predicated on Plaintiff's failure to appear and

prepare for the final pretrial conference and, as such, was intended to compensate Defendant for its related expenses and fees under *Fed. R. Civ. P. 16(f)*. In contrast, my Dismissal Order was based on Plaintiff's continued failure to properly advance his case under *Fed. R. Civ. P. 41(b)*.

Again, even accepting as true Plaintiff's assertion that my Dismissal Order contains inaccuracies related to the procedural record in this matter -- such as his assertion that the discovery cutoff date was actually extended to November 15, 2005, as opposed to November 11, 2005-I conclude that any such errors were not material to my decision to grant Defendant's Motion to Dismiss pursuant to *Fed. R. Civ. P. 41 (b)*. As I have found previously, Plaintiff was given notice that he must comply with the Federal Rules of Civil Procedure, which include numerous rules providing the imposition [*9] of monetary sanctions, and he was also on specific notice that his failure to prosecute this matter could result in dismissal with prejudice pursuant to *Fed. R. Civ. P. 41(b)*.

Accordingly, it is ORDERED as follows:

1) Plaintiff's Motion to Amend or Make Additional Findings of Fact, Motion to Alter or Amend Court Order and Judgment, Motion for Relief from Court Order and Judgment Re: Court Order Entered on March 20, 2006 and Judgment Awarding Fees and Costs Entered on March 21, 2006 **[Doc. No. 153]** is DENIED; and

2) Plaintiff's Motion to Amend or Make Additional Findings of Fact, Motion to Alter or Amend Court Order and Judgment, Motion for Relief from Court Order and Judgment Re: Court Order Entered on March 21, 2006 and Judgment Entered on March 22, 2006 **[Doc. No. 154]** is DENIED.

Dated: May 2, 2006, in Denver, Colorado.

BY THE COURT:

s/Lewis T. Babcock

Case 1:05-cv-00645-MSK-BNB   Document 81-3   Filed 11/22/06   USDC Colorado   Page 4 of 4
05-44481-rdd   Doc 20074-3   Filed 05/14/10   Entered 05/14/10 00:24:53   Exhibit F
part 2   Pg 96 of 122

Page 4

2006 U.S. Dist. LEXIS 25836, *

Lewis T. Babcock, Chief Judge

# EXHIBIT J

Case 1:05-cv-00645-MSK-BNB   Document 86   Filed 12/11/06   USDC Colorado   Page 1 of 3
05-44481-rdd    Doc 20074-3    Filed 05/14/10   Entered 05/14/10 00:24:53    Exhibit F
part 2    Pg 98 of 122

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 05-cv-00645-MSK-BNB

JOSE C. ALFARO, and
MARTHA ALFARO,

      Plaintiffs,

v.

DELCO ELECTRONICS CORPORATION,
DELPHI AUTO SYSTEMS, f/k/a INLAND FISHER GUIDE,
JOHN DOE, and
JOHN DOE, INC.

      Defendants.

---

## ORDER DENYING THE PLAINTIFF'S MOTIONS

---

THIS MATTER comes before the Court on two motions filed by the Plaintiffs.  The first

is a Motion to Alter or Amend the Judgment **(#68)** which seeks reconsideration of the Court's

Order **(#67)** granting a Motion for Summary Judgment **(#59)** filed by Defendant General Motors

Corporation ("GMC").  Defendant GMC has responded **(#81)**.[1]  The second is a Motion to Stay

Entry of an Order of Costs **(#76)**, to which Defendant GMC has also responded **(#77)**.[2]  Having

considered both motions, the Court

**FINDS** and **CONCLUDES** that:

On October 17, 2006, the Court granted Defendant GMC's Motion for Summary

---

[1] Pursuant to that Order, Defendant GMC is no longer listed in the caption.

[2] At this juncture, the Court does not rule upon Defendant GMC's Motion for Entry of Final
Judgment **(#85)** pursuant to Fed. R. Civ. P. 54(b), filed December 5, 2006, because the Plaintiffs have not
yet had an opportunity to respond to it.

Case 1:05-cv-00645-MSK-BNB   Document 86   Filed 12/11/06   USDC Colorado   Page 2 of 3
05-44481-rdd   Doc 20074-3   Filed 05/14/10   Entered 05/14/10 00:24:53   Exhibit F
part 2   Pg 99 of 122

Judgment after the Plaintiffs failed to respond to it or produce any evidence to support their claims. The Plaintiffs now ask the Court to reconsider its ruling because: (1) they have newly discovered evidence (crash test information and a video) to support their claims, which they discovered prior to the depositions of their own experts during the middle of September 2006, but which was in their experts' possession in August 2006; and (2) they were not required to file a response to Defendant GMC's motion for summary judgment because Defendant GMC had not sustained its initial burden of production in the motion. Defendant GMC opposes the Motion to Alter or Amend the Judgment, and avers that the new evidence referenced in the Plaintiffs' motion consists of material available to the public on the National Highway Traffic Safety Administration's website.

The purpose of a motion to reconsider is not to reassert arguments that were previously raised or to raise new arguments which could have been raised in the first instance. *See Van Skiver v. United States,* 952 F.2d 1241, 1243 (10th Cir. 1991). There are three possible grounds which warrant reconsideration: (1) an intervening change in controlling law, (2) new evidence which was previously unavailable, or (3) the need to correct clear error or prevent manifest injustice. *See Servants of the Paraclete v. Does,* 204 F.3d 1005, 1012 (10th Cir. 2000).

The evidence which the Plaintiffs characterize as "newly discovered" was in their possession at the time the Court ruled on the Motion for Summary Judgment. Indeed, it had been in their experts' possession for almost two months. Thus, such evidence was not "newly discovered" and does not warrant reconsideration of the Court's ruling. Furthermore, the Plaintiffs' perception that the burden of production was on Defendant GMC with regard to the Plaintiffs' claims for relief is erroneous, for the reasons previously stated in the Order granting the

2

Case 1:05-cv-00645-MSK-BNB   Document 86   Filed 12/11/06   USDC Colorado   Page 3 of 3
05-44481-rdd   Doc 20074-3   Filed 05/14/10   Entered 05/14/10 00:24:53   Exhibit F
part 2   Pg 100 of 122

Motion for Summary Judgment.   Therefore, the Court denies the Plaintiffs' request for reconsideration.

The Plaintiffs have also filed a motion asking the Court to stay any award of costs to Defendant GMC, pending a ruling on their Motion to Alter or Amend the Judgment.  The motion was apparently filed in response to the bill of costs (**#71**) filed by Defendant GMC.  The Clerk of Court declined to tax any costs because no judgment has entered against Defendant GMC (**#80**).  Because costs are not taxed until a judgment has entered and none has as of this date, the motion to stay is denied, as moot.

**IT IS THEREFORE ORDERED** that the Plaintiffs' Motion to Alter or Amend the Judgment (**#68**) is **DENIED**.  The Plaintiffs' Motion to Stay Entry of an Order of Costs (**#76**) is **DENIED**, as moot.

Dated this 8th day of December, 2006

**BY THE COURT:**

_____

Marcia S. Krieger
United States District Judge

3

# EXHIBIT K

Case 1:05-cv-00645-MSK-BNB   Document 88   Filed 01/02/07   USDC Colorado   Page 1 of 2
05-44481-rdd   Doc 20074-3   Filed 05/14/10   Entered 05/14/10 00:24:53   Exhibit F
part 2   Pg 102 of 122

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 05-cv-00645-MSK-BNB

JOSE C. ALFARO, and
MARTHA ALFARO,

      Plaintiffs,

v.

GENERAL MOTORS CORPORATION,
DELCO ELECTRONICS CORPORATION,
DELPHI AUTO SYSTEMS, f/k/a INLAND FISHER GUIDE,

      Defendants.

---

## JUDGMENT UNDER FED. R. CIV. P. 54(b)

---

The Court has entered an Order (**#67**) granting Defendant General Motors Corporation's

motion for summary judgment. The remaining Defendants are debtors in possession in a Chapter

11 bankruptcy case, in which the automatic stay is imposed and in which there is a claim

allowance process which will address the claim in this action.  As a consequence and without

objection, the Court finds that there is no just reason to delay the entry of judgment in favor of

Defendant General Motors Corporation.  Pursuant to Fed. R. Civ. P. 54(b),

    **JUDGMENT** is therefore entered in favor of Defendant General Motors Corporation and

against the Plaintiffs, Jose C. Alfaro and Martha Alfaro.  Defendant General Motors Corporation

shall have its costs by the filing of a Bill of Costs with the Clerk of Court within ten days of the

Case 1:05-cv-00645-MSK-BNB   Document 88   Filed 01/02/07   USDC Colorado   Page 2 of 2
05-44481-rdd    Doc 20074-3    Filed 05/14/10    Entered 05/14/10 00:24:53     Exhibit F
part 2    Pg 103 of 122

entry of judgment.

Dated this 2nd day of January, 2007

**BY THE COURT:**

Marcia S. Krieger
United States District Judge

# EXHIBIT L

IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                           :

      In re                          :     Chapter 11

                              :

DELPHI CORPORATION, et al.,      :     Case No. 05-44481 (RDD)

                              :

                 Debtors.     :     (Jointly Administered)

                              :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## AFFIDAVIT OF SERVICE

I, Evan Gershbein, being duly sworn according to law, depose and say that I am employed by Kurtzman Carson Consultants, LLC, the Court appointed claims and noticing agent for the Debtors in the above-captioned cases.

On or before April 20, 2006, I caused to be served the documents listed below upon the parties listed on Exhibit A hereto via postage pre-paid U.S. mail:

1) Notice of Bar Date for Filing Proofs of Claim [a copy of which is attached hereto as Exhibit B]

2) Proof of Claim form [a copy of which is attached hereto as Exhibit C]

Dated: April 28, 2006

                               */s/ Evan Gershbein*
                               Evan Gershbein

Subscribed and sworn to (or affirmed) before me on this 28th day of April, 2006, by Evan Gershbein, personally known to me or proved to me on the basis of satisfactory evidence to be the person who appeared before me.

Signature :    */s/ Amy Lee Huh*

Commission Expires:    *3/15/09*

# EXHIBIT A

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Alexis R Clark and Mary E | | Clark Jt Ten | Co Rd 220 Home 2267 | | Durango | CO | 81301-6656 | |
| Alexis Rhymes Smith | | 1647 E Earll Dr | | | Phoenix | AZ | 85016-7617 | |
| Alexis Story Dyer | | 801 South Clinton | | | Stockbridge | MI | 49285-9555 | |
| Alexis Szeligowski Tr | | Udt Dtd 031386 M B | Alexis Szeligowski | 468 Howard Ave | Staten Island | NY | 10301-4465 | |
| Alexis Tucci | | 10 S Arlene Dr | | | West Long Branch | NJ | 07764-1156 | |
| Alexis W Towler | | 3341 Oak Knoll Dr | | | Rossmoor | CA | 90720 | |
| Alexzena Miles | | 39 East End Ave | | | Penns Grove | NJ | 08069-2249 | |
| Alfa Aesar | | PO Box 88894 | | | Chicago | IL | 60695-1894 | |
| Alfa Aesar | | PO Box 88894 | | | Chicago | IL | 60695-1894 | |
| Alfa Aesar A Johnson Matthey Comapny | | PO Box 88894 | | | Chicago | IL | 60695-1894 | |
| Alfa Laval Inc | | 955 Mearns Rd | | | Warminster | PA | 18974 | |
| Alfa Laval Inc | | Alfa Laval Separations Inc | 4405 Cox Rd Ste 130 | | Glen Allen | VA | 23060 | |
| Alfa Laval Inc | | Alfa Laval Separations Inc | 955 Mearns Rd | | Warminster | PA | 18974 | |
| Alfa Laval Inc Alfa Laval Separations Inc | | PO Box 8500 52788 | | | Philadelphia | PA | 19178-2788 | |
| Alfa Laval Separation Inc | | 1200 Harger Rd Ste 330 | | | Oakbrook | IL | 60523 | |
| Alfa Laval Thermal Inc | | Alfa Laval Thermal Parts & Ser | 11100 Air Pk Rd | | Ashland | VA | 23005 | |
| Alfa Maria Giovannoni and | | Robert Giovannoni Jt Ten | 3347 Maple | | Brookfield | IL | 60513-1240 | |
| Alfano John | | 926 Lantern Glow Trail | | | Riverside | OH | 45431 | |
| Alfano John C | | 6371 Copper Pheasant Dr | | | Dayton | OH | 45424-4178 | |
| Alfano Nicholas D | | 1459 Vancouver Dr | | | Saginaw | MI | 48603-4707 | |
| Alfaro Jos C | | 1017 S Gaylord St | | | Denver | CO | 80209 | |
| Alfaro Jose C And Martha | c/o Stanley J Walter | 1017 S Gaylord St | | | Denver | CO | 80209 | |
| Alfaro William | | 9864 Lancaster Dr | | | Belleville | MI | 48111 | |
| Alfautomazione Spa | | Fmly Alfautomazione Srl | Via Cadore 21 | 20035 Lissone Milano | | | | Italy |
| Alfautomazione Spa | | Via Cadore 21 | 20035 Lissone Milano | | | | | Italy |
| Alfautomazione Srl | | Via Cadore 21 | | | Lissone | | 20035 | Italy |
| Alfax | | 1250 Broadway Ste 1600 | | | New York | NY | 10001 | |

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Jose A Martins | | 424 Clarkson Ave | | | Elizabeth | NJ | 07202-3620 | |
| Jose A Mireles | | 1840 Coolidge Rd | | | East Lansing | MI | 48823-1714 | |
| Jose A Narezo | | 536 Harwood Court | | | Eaton Rapids | MI | 48827 | |
| Jose A Negron | | 20852 Maxim Pkwy | | | Orlando | FL | 32833-3939 | |
| Jose A Pena | | 2650 W Kalamo Hwy | | | Charlotte | MI | 48813-9597 | |
| Jose A Puente | | 10414 Braemar St | | | Crosby | TX | 77532-7009 | |
| Jose A Requena | | 6408 Covington Rd C31 | | | Fort Wayne | IN | 46804-7353 | |
| Jose A Santiago | | 2455 Batson Ave | | | Rowland Hts | CA | 91748-4513 | |
| Jose A Santos | | 1393 Caravelle St | | | Niagara Falls | NY | 14304-2725 | |
| Jose A Silva | | Box 103 | | | N Tarrytown | NY | 10591-0103 | |
| Jose A Tamayo | | 413 First Ae | | | Elizabeth | NJ | 07206-1108 | |
| Jose A Valadez | | 2831 Carters Creek Station Rd | | | Columbia | TN | 38401-7307 | |
| Jose A Vasquez | | 470 Robert Court | | | Auburn Hills | MI | 48326-2959 | |
| Jose A Vela | | 25050 Marie St | | | Perris | CA | 92570-9661 | |
| Jose A Yrabien | | 108 Saxon Court | | | Columbia | TN | 38401-8896 | |
| Jose Avila | | PO Box 8024 Mc481Fra064 | | | Plymouth | MI | 48170 | |
| Jose B Crespo Trustee Ua | | Dtd 101090 Nicole Marie | Hamze Trust | 79 Navaho Ave | Mankato | MN | 56001-4831 | |
| Jose B Goncalves | | 239 Congress St | | | Milford | MA | 01757-1405 | |
| Jose B Moreno | | Co Richard Moreno | 1146 Co Rd | | Swanton | OH | 43558 | |
| Jose Baptista De Sousa | | Rua Tomas De Figueiredo | 12 3 D | 1500 599 Lisbon | | | | Portugal |
| Jose Baptista De Sousa | | Rua Tomas De Figueiredo | 12 3 D | | Lisbon | | 1500-599 | Portugal |
| Jose Braza | | 189 Highland St | | | Milford | MA | 01757-3901 | |
| Jose C Agilera | | Hc 1 Box 303 | | | Lewiston | MI | 49756-9623 | |
| Jose C Alfaro | | 304 West 5th St | | | Goodland | KS | 67735 | |
| Jose C Alfaro | Stanley J Walter | C o Stanley J Walter | 1017 S Gaylord St | | Denver | CO | 80209 | |
| Jose C Arellano | | 891 Felipe Pl | | | Hemet | CA | 92543-7060 | |
| Jose C Cortez | | 630 S Clemens | | | Lansing | MI | 48912-2908 | |
| Jose C Gomez | | 250 Homer Ln | | | Coopersville | MI | 49404-1148 | |

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Martha Adler Tr | | Martha Adler Trust | Ua 102893 | 8926 Roslyn St | Livonia | MI | 48150-3533 | |
| Martha Alfaro | | 304 West 5th St | | | Goodland | KS | 67735 | |
| Martha Alfaro | Stanley J Walter | C o Stanley J Walter | 1017 S Gaylord St | | Denver | CO | 80209 | |
| Martha Alice Carpenter | Alice Carpenter Moat | 1321 Wynewood Rd | | | Orefield | PA | 18069-9074 | |
| Martha Alvarado Rta | | Tax Assessor Collector | City Of Donna 307 S 12th St | | Donna | TX | 78537 | |
| Martha Ann Bagnulo | | 8302 Toll House Rd | | | Annandale | VA | 22003-4628 | |
| Martha Ann Cook | | 1100 Stone Gate Dr | | | Salem | VA | 24153-2603 | |
| Martha Ann Daily | | 1526 Crawford Wood Dr | Midlothian Va | | Midlothian | VA | 23113 | |
| Martha Ann Forrest | | 400 Melmore St | | | Tiffin | OH | 44883-3549 | |
| Martha Ann Harmssen | Merybehn Peller | 101 Enterprise Dr 79 | | | Rohnert Pk | CA | 94928-2488 | |
| Martha Ann Hibbs | | 4552 Acreview Ln | | | Kettering | OH | 45429-5264 | |
| Martha Ann Lipman | Martha Ann Simon | 72 38 113th St Apt 3k | | | Forest Hills | NY | 11375-4640 | |
| Martha Ann Matson | | 9200 Muirkirk Dr | | | Dublin | OH | 43017-9443 | |
| Martha Ann Mitchell | | 5219 N Casa Blanca Rd | | | Paradise Valley | AZ | 85253-6201 | |
| Martha Ann Oberle | | 8013 Exodus Dr | | | Laytonsville | MD | 20882-1111 | |
| Martha Ann Paul | | 2605 Mackinaw Dr | | | Greensboro | NC | 27455-1117 | |
| Martha Ann Reynolds | | 304 Lincoln Ave | | | Hightstown | NJ | 08520-4120 | |
| Martha Ann Selle | | 1520 Cedar St | | | South Bend | IN | 46617-2532 | |
| Martha Ann Shaw Ex Est | | Gloria L Shaw | PO Box 3642 | | Bellevue | WA | 98009 | |
| Martha Ann Stegar | | 2296 Melinda Dr | | | Atlanta | GA | 30345-1913 | |
| Martha Ann Williams | | 8075 Woodrush Dr Nw | | | North Canton | OH | 44720-5720 | |
| Martha Ann Wood Mohun | | PO Box 282 | | | Lowndesboro | AL | 36752 | |
| Martha Annabel Sproull Knox | | 3019 Herschel St | | | Jacksonville | FL | 32205-8611 | |
| Martha Anne Booth | | 6124 Old Clovis Hwy | | | Roswell | NM | 88201-8923 | |
| Martha Anne Chalfant and William Y | Chalfant and The 1st National Bk | Of Hutchinson Kansas Tr Ua Dtd | 92385 Martha Anne Chalfant | 1007 W 95th Ave | Hutchinson | KS | 67502-8325 | |
| Martha Anne Ragsdale and | | Russell C Ragsdale Jt Ten | 520 Harbour Shores Dr | | Jackson | GA | 30233-6350 | |
| Martha Anne Tudor Schwartz | | 3067 Walton Way | | | Augusta | GA | 30909-3472 | |
| Martha Anne Unger | | 4656 Ponderosa Trail | | | Littleton | CO | 80125 | |

# EXHIBIT B

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                        :
    In re                          :    Chapter 11
                                                        :
DELPHI CORPORATION, et al.,                             :    Case No. 05-44481 (RDD)
                                                        :
        Debtors. :    (Jointly Administered)
                                                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

<u>NOTICE OF BAR DATE FOR FILING PROOFS OF CLAIM</u>

TO ALL CREDITORS OF THE DEBTORS, AND OTHER PARTIES-IN-INTEREST:

PLEASE TAKE NOTICE THAT:

        In accordance with an order entered on April 12, 2006 by the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") in the above-captioned chapter 11 cases (the "Bar Date Order"), **5:00 p.m. Eastern Time on July 31, 2006** (the "General Bar Date") has been established as the last date for each person or entity (including individuals, partnerships, corporations, limited liability companies, estates, trusts, unions, indenture trustees, the United States Trustee, and governmental units) (individually, a "Person" or "Entity," and collectively, "Persons" or "Entities") to file a proof of claim in the chapter 11 cases of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors").  A list of all Debtors in these chapter 11 cases is attached hereto as Exhibit A.

        On October 8, 2005, Delphi and certain of its U.S. subsidiaries filed voluntary petitions in the Bankruptcy Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code").  On October 14, 2005, three additional U.S. subsidiaries of Delphi filed voluntary petitions in the Bankruptcy Court for reorganization relief under the Bankruptcy Code.  The term "Petition Date" shall mean the date on which each Debtor filed its chapter 11 bankruptcy petition as set forth on Exhibit A attached hereto.  The General Bar Date and the procedures set forth below for filing proofs of claim apply to all claims against the Debtors that arose before the applicable Petition Date, except for those holders of the claims listed in Section 4 below which are specifically excluded from the General Bar Date filing requirement.

**1.     Who Must File A Proof Of Claim**

        You MUST file a proof of claim to vote on a chapter 11 plan filed by the Debtors or to share in distributions from the Debtors' bankruptcy estates if you have a claim against any of the Debtors that arose prior to the applicable Petition Date, and such claim is not one of the types of claim described in Section 4 below.  Claims based on acts or omissions of the Debtors that occurred before the applicable Petition Date must be

filed on or prior to the General Bar Date, even if such claims are not now fixed, liquidated, or certain or did not mature or become fixed, liquidated, or certain before the applicable Petition Date.

    Under section 101(5) of the Bankruptcy Code and as used in this Notice, the word "claim" means (a) a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, or (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

**2.   What To File**

    The Debtors are enclosing a proof of claim form which you may use to file any claim you may have in these cases.  If the Debtors scheduled you as a creditor in any of the Debtors' schedules of assets and liabilities (as amended from time to time, the "Schedules"), the form sets forth the amount of your claim as scheduled and whether the claim is scheduled as disputed, contingent, or unliquidated.  Additional proof of claim forms may be obtained at http://www.uscourts.gov/bkforms/index.html or at http://www.delphidocket.com.

    All proofs of claim must be signed by the claimant or, if the claimant is not an individual, by a claimant's authorized agent.  All proofs of claim must be written in English and be denominated in United States currency.  You should attach to your completed proof of claim any documents on which the claim is based (if voluminous, attach a summary) or an explanation as to why the documents are not available.

    If any supporting documentation provided with any proof of claim contains confidential information, such documentation will be subject to examination only by the party asserting the claim, the Debtors, the Debtors' counsel and advisers, the United States Trustee, counsel and advisers to the official committee of unsecured creditors appointed in these chapter 11 cases, Kurtzman Carson Consultants, LLC, the claims and noticing agent in these chapter 11 cases, and any personnel of the United States Bankruptcy Court for the Southern District of New York in the performance of their official duties, and such entities have been ordered to maintain the confidentiality of all supporting documentation to any proof of claim and the information contained therein.

    Any holder of a claim against more than one Debtor must file a separate proof of claim with respect to each such Debtor and each holder of a claim must identify on its proof of claim the specific Debtor against which its claim is asserted and the case number of that Debtor's reorganization case.  A list of the names of the Debtors and their reorganization case numbers is attached hereto as Exhibit A.

3.        **When And Where To File**

Except as provided for herein, all proofs of claim must be filed so as to be
received no later than **5:00 p.m. Eastern Time on July 31, 2006** at the following
address:

| If sent by mail: | If sent by messenger or overnight courier: |
|---|---|
| United States Bankruptcy Court | United States Bankruptcy Court |
| Southern District of New York | Southern District of New York |
| Delphi Corporation Claims | Delphi Corporation Claims |
| Bowling Green Station | One Bowling Green |
| P.O. Box 5058 | Room 534 |
| New York, New York 10274-5058 | New York, New York 10004-1408 |

**Proofs of claim will be deemed filed only when actually received at the
addresses above on or before the General Bar Date.**  Proofs of claim may not be
delivered by facsimile, telecopy, or electronic mail transmission.

Governmental units must file proofs of claims in these chapter 11 cases on
or prior to the General Bar Date.

4.        **Who Need Not File A Proof Of Claim**

You do not need to file a proof of claim on or prior to the General Bar
Date if you are:

(a)        Any Person or Entity (i) which agrees with the nature,
classification, and amount of its Claim set forth in the Schedules
and (ii) whose Claim against a Debtor is not listed as "disputed,"
"contingent," or "unliquidated" in the Schedules;

(b)        Any Person or Entity which has already properly filed a proof of
claim against the correct Debtor;

(c)        Any Person or Entity which asserts a Claim allowable under
sections 503(b) and 507(a)(1) of the Bankruptcy Code as an
administrative expense of the Debtors' chapter 11 cases;

(d)        Any Person or Entity which asserts a Claim solely on the basis of
future pension or other post-employment benefits, including,
without limitation, retiree health care and life insurance; provided,
however, that any such Person or Entity which wishes to assert a
Claim against any of the Debtors based on anything other than

future pension or other post-employment benefits must file a proof of claim on or prior to the General Bar Date;[1]

(e)    Any Debtor or any direct or indirect subsidiary of any of the Debtors in which the Debtors in the aggregate directly or indirectly own, control or hold with power to vote, 50 percent or more of the outstanding voting securities of such subsidiary;

(f)    Any Person or Entity whose Claim against a Debtor previously has been allowed by, or paid pursuant to, an order of the Bankruptcy Court;

(g)    Any holder of a Claim arising under or in respect of any of the following issuances of Delphi Corporation senior and junior subordinated unsecured debt (each, a "Noteholder"): (i) those certain senior unsecured securities bearing interest at 6.55% and maturing on June 15, 2006; (ii) those certain senior unsecured securities bearing interest at 6.50% and maturing on May 1, 2009; (iii) those certain senior unsecured securities bearing interest at 6.50% and maturing on August 15, 2013; (iv) those certain senior unsecured securities bearing interest at 7.125% and maturing on May 1, 2029; (v) those certain 8.25% junior subordinated notes due 2033; or (vi) those certain adjustable-rate junior subordinated notes due 2033  (collectively, the "Unsecured Securities"), other than the indenture trustees of the Unsecured Securities; provided, however, that any Noteholder who wishes to assert a Claim against the Debtors that is not based solely upon the outstanding prepetition principal and interest due on account of its ownership of such Unsecured Securities must file a proof of claim on or prior to the General Bar Date in respect of such Claim; and

(h)    Any holder of equity securities of, or other interests in, the Debtors solely with respect to such holder's ownership interest in or possession of such equity securities, or other interest; provided, however, that any such holder which wishes to assert a Claim against any of the Debtors that is not based solely upon its ownership of the Debtors' securities, including, but not limited to, Claims for damages or recision based on the purchase or sale of such securities, must file a proof of claim on or prior to the General Bar Date in respect of such Claim.

This notice is being sent to many persons and entities which have had some relationship with or have done business with the Debtors but may not have an unpaid claim against the Debtors.  The fact that you have received this Notice does not

---

[1] The bar date for the filing of Proofs of Claim on account of Claims arising from modification to or termination of future pension or other post-employment benefits will be determined pursuant to an order of the Bankruptcy Court approving such modification or termination.

necessarily mean that you have a claim or that the Debtors or the Bankruptcy Court believe that you have a claim against the Debtors.

**5.     Executory Contracts And Unexpired Leases**

Any person or entity which has a claim arising from the rejection of an Executory Contract must file a proof of claim on account of such claim against the Debtors on or before the later of (a) the General Bar Date or (b) 30 calendar days after the effective date of such rejection or such other date as fixed by the Bankruptcy Court in an order authorizing such rejection.

**6.     Amended Schedule Bar Date**

If the Debtors amend the Schedules on or after the date of this Notice (listed below) to reduce the undisputed, noncontingent, and liquidated amounts or to change the nature or classification of a claim against a Debtor reflected therein, the bar date for filing a proof of claim in respect of such amended schedule claim is the later of (a) the General Bar Date or (b) 30 calendar days after a claimant is served with notice that the Debtors have amended their Schedules.

**7.     Consequences Of Failure To File A Proof Of Claim By The General Bar Date**

ANY HOLDER OF A CLAIM WHICH IS NOT EXCEPTED FROM THE REQUIREMENTS OF THIS NOTICE, AS SET FORTH IN SECTION 4 ABOVE, AND WHICH FAILS TO TIMELY FILE A PROOF OF CLAIM IN THE APPROPRIATE FORM, WILL BE BARRED FROM ASSERTING SUCH CLAIM AGAINST THE DEBTORS AND THEIR CHAPTER 11 ESTATES, FROM VOTING ON ANY PLAN OF REORGANIZATION FILED IN THESE CASES, AND FROM PARTICIPATING IN ANY DISTRIBUTION IN THE DEBTORS' CASES ON ACCOUNT OF SUCH CLAIM.

**8.     The Debtors' Schedules And Access Thereto**

You may be listed as the holder of a claim against the Debtors in any of the Debtors' Schedules of Assets and Liabilities and/or Schedules of Executory Contracts and Unexpired Leases.

To determine if and how you are listed on any of the Schedules, please refer to the descriptions set forth on the enclosed proof of claim forms regarding the nature, amount, and status of your claim(s).

As set forth above, if you agree with the nature, amount, and status of your claim as listed in any of the Debtors' Schedules, and if your claim is not described as "disputed," "contingent," or "unliquidated," you need not file a proof of claim. Otherwise, or if you decide  to file a proof of claim, you must do so before the General Bar Date in accordance with the procedures set forth in this Notice.

Copies of any of the Debtors' Schedules are available for inspection online at http://www.delphidocket.com or on the Court's Internet Website at

http://www.nysb.uscourts.gov.  A login and password to the Court's Public Access to
Electronic Court Records ("PACER") are required to access this information on the
Court's Internet Website and can be obtained through the PACER Service Center at
http://www.pacer.psc.uscourts.gov.  No login or password is required to access this
information on the Debtors' Legal Information Website (http://www.delphidocket.com).
Copies of any of the Schedules may also be examined between the hours of 9:00 a.m. and
4:30 p.m., Monday through Friday at the Office of the Clerk of the Bankruptcy Court,
One Bowling Green, Room 511, New York, New York 10004-1408.

        A holder of a possible claim against any of the Debtors should consult an
attorney regarding any matters not covered by this Notice, such as whether the holder
should file a proof of claim.

Dated:  New York, New York                BY ORDER OF THE COURT
       April 12, 2006

       SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
       John Wm. Butler, Jr.
       John K. Lyons
       Ron E. Meisler
       333 West Wacker Drive, Suite 2100
       Chicago, Illinois  60606

        - and -

       Kayalyn A. Marafioti (KM 9632)
       Thomas J. Matz (TM 5986)
       Four Times Square
       New York, New York 10036

       Attorneys for Delphi Corporation, et al.,
         Debtors and Debtors-in-Possession

**For additional information:**

Delphi Restructuring Information Hotline:
Toll Free:  (866) 688-8740
International:  (248) 813-2602

Delphi Legal Information Website:
http://www.delphidocket.com

## EXHIBIT A

| | Entity | Tax / Federal ID Number | Case Number | Address | Date Of Petition Filing |
|---|---|---|---|---|---|
| 1. | Delphi NY Holding Corporation | 20-3383408 | 05-44480 | 5725 Delphi Drive Troy, MI 48098 | October 8, 2005 |
| 2. | Delphi Corporation | 38-3430473 | 05-44481 | 5725 Delphi Drive Troy, MI 48098 | October 8, 2005 |
| 3. | ASEC Manufacturing General Partnership | 73-1474201 | 05-44482 | 1301 Main Parkway Catoosa, OK 74015 | October 8, 2005 |
| 4. | ASEC Sales General Partnership | 73-1474151 | 05-44484 | 1301 Main Parkway Catoosa, OK 74015 | October 8, 2005 |
| 5. | Environmental Catalysts, LLC | | 05-44503 | 5725 Delphi Drive Troy, MI 48098 | October 8, 2005 |
| 6. | Delphi Medical Systems Colorado Corporation | 84-1524184 | 05-44507 | 4300 Road 18 Longmont, CO 80504 | October 8, 2005 |
| 7. | Delphi Medical Systems Texas Corporation | 20-2885110 | 05-44511 | 5725 Delphi Drive Troy, MI 48098 | October 8, 2005 |
| 8. | Delphi Medical Systems Corporation | 32-0052827 | 05-44529 | 5725 Delphi Drive Troy, MI 48098 | October 8, 2005 |
| 9. | Specialty Electronics International Ltd. | 66-0522490 | 05-44536 | 69A Kronprindsens Gade (Third Floor) P.O. Box 1858 St. Thomas, VI | October 8, 2005 |
| 10. | Specialty Electronics, Inc. | 57-0755068 | 05-44539 | 19200 Asheville Highway P.O. Box 519 Landrum, SC 29356 | October 8, 2005 |
| 11. | Delphi Liquidation Holding Company | 95-4359324 | 05-44542 | 5725 Delphi Drive Troy, MI 48098 | October 8, 2005 |
| 12. | Delphi Electronics (Holding) LLC | 95-4554161 | 05-44547 | One Corporate Center Kokomo, IN 46904 | October 8, 2005 |
| 13. | Delphi Technologies, Inc. | 38-3430681 | 05-44554 | 5725 Delphi Drive Troy, MI 48098 | October 8, 2005 |
| 14. | Delphi Automotive Systems Tennessee, Inc. | 38-3319836 | 05-44558 | 5725 Delphi Drive Troy, MI 48098 | October 8, 2005 |
| 15. | Delphi Mechatronic Systems, Inc. | 38-3589834 | 05-44567 | 5725 Delphi Drive Troy, MI 48098 | October 8, 2005 |
| 16. | Delphi Automotive Systems Risk Management Corp. | 38-3575299 | 05-44570 | 5725 Delphi Drive Troy, MI 48098 | October 8, 2005 |
| 17. | Exhaust Systems Corporation | 38-3211473 | 05-44573 | 4800 S. Saginaw Street Flint, MI 48501 | October 8, 2005 |
| 18. | Delphi China LLC | 38-3196159 | 05-44577 | 5725 Delphi Drive Troy, MI 48098 | October 8, 2005 |
| 19. | Delphi Automotive Systems Korea, Inc. | 38-2849490 | 05-44580 | 5725 Delphi Drive Troy, MI 48098 | October 8, 2005 |
| 20. | Delphi International Services, Inc. | 38-3439894 | 05-44583 | 5725 Delphi Drive Troy, MI 48098 | October 8, 2005 |

| | Entity | Tax / Federal ID Number | Case Number | Address | Date Of Petition Filing |
|---|---|---|---|---|---|
| 21. | Delphi Automotive Systems Thailand, Inc. | 38-3379709 | 05-44586 | 5725 Delphi Drive Troy, MI 48098 | October 8, 2005 |
| 22. | Delphi Automotive Systems International, Inc. | 38-3280289 | 05-44589 | 5725 Delphi Drive Troy, MI 48098 | October 8, 2005 |
| 23. | Delphi International Holdings Corp. | 38-3449527 | 05-44591 | 5725 Delphi Drive Troy, MI 48098 | October 8, 2005 |
| 24. | Delphi Automotive Systems Overseas Corporation | 38-3318021 | 05-44593 | 5725 Delphi Drive Troy, MI 48098 | October 8, 2005 |
| 25. | Delphi Automotive Systems (Holding), Inc. | 38-3422378 | 05-44596 | 5725 Delphi Drive Troy, MI 48098 | October 8, 2005 |
| 26. | Delco Electronics Overseas Corporation | 38-2638990 | 05-44610 | 5725 Delphi Drive Troy, MI 48098 | October 8, 2005 |
| 27. | Delphi Diesel Systems Corp. | 38-3505001 | 05-44612 | 5725 Delphi Drive Troy, MI 48098 | October 8, 2005 |
| 28. | Delphi LLC | 37-1438255 | 05-44615 | 5725 Delphi Drive Troy, MI 48098 | October 8, 2005 |
| 29. | Aspire, Inc. | 36-4392806 | 05-44618 | U.S. Route 1 Morrisville, PA 19067 | October 8, 2005 |
| 30. | Delphi Integrated Service Solutions, Inc. | 38-3473261 | 05-44623 | 1322 Rankin Street Troy, MI 48083 | October 8, 2005 |
| 31. | Delphi Connection Systems | 95-2563022 | 05-44624 | 17150 Von Karman Avenue Irvine, CA 92614 | October 8, 2005 |
| 32. | Packard Hughes Interconnect Company | 33-0595219 | 05-44626 | 17150 Von Karman Avenue Irvine, CA 92614 | October 8, 2005 |
| 33. | DREAL, Inc. | 38-3457411 | 05-44627 | 5725 Delphi Drive Troy, MI 48098 | October 8, 2005 |
| 34. | Delphi Automotive Systems Services LLC | 38-3568834 | 05-44632 | 5725 Delphi Drive Troy, MI 48098 | October 8, 2005 |
| 35. | Delphi Services Holding Corporation | 20-0577653 | 05-44633 | 5725 Delphi Drive Troy, MI 48098 | October 8, 2005 |
| 36. | Delphi Automotive Systems Global (Holding), Inc. | 38-3547659 | 05-44636 | 5725 Delphi Drive Troy, MI 48098 | October 8, 2005 |
| 37. | Delphi Foreign Sales Corporation | 66-0564421 | 05-44638 | Chase Trade, Inc. Post Office Box 309420 55-11 Conacao Gade Charlotte Amalie St. Thomas, VI 00803-9420 | October 8, 2005 |
| 38. | Delphi Automotive Systems Human Resources LLC | 38-3547664 | 05-44639 | 5725 Delphi Drive Troy, MI 48098 | October 8, 2005 |
| 39. | Delphi Automotive Systems LLC | 38-3431131 | 05-44640 | 5725 Delphi Drive Troy, MI 48098 | October 8, 2005 |
| 40. | Delphi Furukawa Wiring Systems LLC | 20-2478586 | 05-47452 | 5725 Delphi Drive Troy, MI 48098 | October 14, 2005 |

|  | Entity | Tax / Federal ID Number | Case Number | Address | Date Of Petition Filing |
|---|---|---|---|---|---|
| 41. | Delphi Receivables LLC | 61-1446224 | 05-47459 | 5725 Delphi Drive Troy, MI 48098 | October 14, 2005 |
| 42. | MobileAria, Inc. | 31-1695929 | 05-47474 | 800 West El Camino Real Suite 240 Mountain View, CA 94040 | October 14, 2005 |

# EXHIBIT C

| UNITED STATES BANKRUPTCY COURT ___ Southern ___ DISTRICT OF ___ New York ___ | PROOF OF CLAIM |
|---|---|

| Name of Debtor | Case Number |
|---|---|

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

**Name of Creditor** (The person or other entity to whom the debtor owes money or property):

**Name and address where notices should be sent:**

**Telephone number:**

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check box if you have never received any notices from the bankruptcy court in this case.

☐ Check box if the address differs from the address on the envelope sent to you by the court.

THIS SPACE IS FOR COURT USE ONLY

| Account or other number by which creditor identifies debtor: | Check here ☐ replaces if this claim ☐ amends a previously filed claim, dated:_____ |
|---|---|

**1. Basis for Claim**

☐ Goods Sold / Services Performed
☐ Customer Claim
☐ Taxes
☐ Money Loaned
☐ Personal Injury
☐ Other_____

☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
☐ Wages, salaries, and compensation (fill out below)
Last four digits of SS #: _____
Unpaid compensation for services performed
from _____ to _____
(date)            (date)

**2. Date debt was incurred:**

**3. If court judgment, date obtained:**

**4. Total Amount of Claim at Time Case Filed:** $ _____ _____ _____ _____
(unsecured)   (secured)   (priority)   (Total)

If all or part of your claim is secured or entitled to priority, also complete Item 5 or 7 below.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

**5. Secured Claim.**
☐ Check this box if your claim is secured by collateral (including a right of setoff).

Brief Description of Collateral:
☐ Real Estate     ☐ Motor Vehicle
☐ Other_____

Value of Collateral: $_____

Amount of arrearage and other charges at time case filed included in secured claim, if any: $_____

**6. Unsecured Nonpriority Claim** $_____

☐ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority.

**7. Unsecured Priority Claim.**
☐ Check this box if you have an unsecured priority claim

Amount entitled to priority $_____
Specify the priority of the claim:
☐ Wages, salaries, or commissions (up to $10,000),* earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(3).
☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(4).
☐ Up to $2,225* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(6).
☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child - 11 U.S.C. § 507(a)(7).
☐ Taxes or penalties owed to governmental units-11 U.S.C. § 507(a)(8).
☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(_____).
*Amounts are subject to adjustment on 4/1/07 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment. $10,000 and 180-day limits apply to cases filed on or after 4/20/05. Pub. L. 109-8.

**8. Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

**9. Supporting Documents:** *Attach copies of supporting documents,* such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

**10. Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim

THIS SPACE IS FOR COURT USE ONLY

| Date | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any): |
|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

FORM B10 (Official Form 10) (04/04)

# INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In particular types of cases or circumstances, such as bankruptcy cases that are not filed voluntarily by a debtor, there may be exceptions to these general rules.*

—— DEFINITIONS ——

### Debtor

The person, corporation, or other entity that has filed a bankruptcy case is called the debtor.

### Creditor

A creditor is any person, corporation, or other entity to whom the debtor owed a debt on the date that the bankruptcy case was filed.

### Proof of Claim

A form telling the bankruptcy court how much the debtor owed a creditor at the time the bankruptcy case was filed (the amount of the creditor's claim). This form must be filed with the clerk of the bankruptcy court where the bankruptcy case was filed.

### Secured Claim

A claim is a secured claim to the extent that the creditor has a lien on property of the debtor (collateral) that gives the creditor the right to be paid from that property before creditors who do not have liens on the property.

Examples of liens are a mortgage on real estate and a security interest in a car, truck, boat, television set, or other item of property. A lien may have been obtained through a court proceeding before the bankruptcy case began; in some states a court judgment is a lien. In addition, to the extent a creditor also owes money to the debtor (has a right of setoff), the creditor's claim may be a secured claim. (See also *Unsecured Claim.*)

### Unsecured Claim

If a claim is not a secured claim it is an unsecured claim. A claim may be partly secured and partly unsecured if the property on which a creditor has a lien is not worth enough to pay the creditor in full.

### Unsecured Priority Claim

Certain types of unsecured claims are given priority, so they are to be paid in bankruptcy cases before most other unsecured claims (if there is sufficient money or property available to pay these claims). The most common types of priority claims are listed on the proof of claim form. Unsecured claims that are not specifically given priority status by the bankruptcy laws are classified as *Unsecured Nonpriority Claims.*

## Items to be completed in Proof of Claim form (if not already filled in)

**Court, Name of Debtor, and Case Number:**

Fill in the name of the federal judicial district where the bankruptcy case was filed (for example, Central District of California), the name of the debtor in the bankruptcy case, and the bankruptcy case number. If you received a notice of the case from the court, all of this information is near the top of the notice.

**Information about Creditor:**

Complete the section giving the name, address, and telephone number of the creditor to whom the debtor owes money or property, and the debtor's account number, if any. If anyone else has already filed a proof of claim relating to this debt, if you never received notices from the bankruptcy court about this case, if your address differs from that to which the court sent notice, or if this proof of claim replaces or changes a proof of claim that was already filed, check the appropriate box on the form.

**1. Basis for Claim:**

Check the type of debt for which the proof of claim is being filed. If the type of debt is not listed, check "Other" and briefly describe the type of debt. If you were an employee of the debtor, fill in the last four digits of your social security number and the dates of work for which you were not paid.

**2. Date Debt Incurred:**

Fill in the date when the debt first was owed by the debtor.

**3. Court Judgments:**

If you have a court judgment for this debt, state the date the court entered the judgment.

**4. Total Amount of Claim at Time Case Filed:**

Fill in the applicable amounts, including the total amount of the entire claim. If interest or other charges in addition to the principal amount of the claim are included, check the appropriate place on the form and attach an itemization of the interest and charges.

**5. Secured Claim:**

Check the appropriate place if the claim is a secured claim. You must state the type and value of property that is collateral for the claim, attach copies of the documentation of your lien, and state the amount past due on the claim as of the date the bankruptcy case was filed. A claim may be partly secured and partly unsecured. (See DEFINITIONS, above).

**6. Unsecured Nonpriority Claim:**

Check the appropriate place if you have an unsecured nonpriority claim, sometimes referred to as a "general unsecured claim". (See DEFINITIONS, above.) If your claim is partly secured and partly unsecured, state here the amount that is unsecured. If part of your claim is entitled to priority, state here the amount **not** entitled to priority.

**7. Unsecured Priority Claim:**

Check the appropriate place if you have an unsecured priority claim, and state the amount entitled to priority. (See DEFINITIONS, above). A claim may be partly priority and partly nonpriority if, for example, the claim is for more than the amount given priority by the law. Check the appropriate place to specify the type of priority claim.

**8. Credits:**

By signing this proof of claim, you are stating under oath that in calculating the amount of your claim you have given the debtor credit for all payments received from the debtor.

**9. Supporting Documents:**

You must attach to this proof of claim form copies of documents that show the debtor owes the debt claimed or, if the documents are too lengthy, a summary of those documents. If documents are not available, you must attach an explanation of why they are not available.