# EXHIBIT B

1                        UNITED STATES BANKRUPTCY COURT
                          SOUTHERN DISTRICT OF NEW YORK
2      ----------------------------------X
       In Re:                                      05-44481 (RDD)
3
           DELPHI CORPORATION, et al.,             One Bowling Green
4                                                  New York, New York
                    Debtors.                       April 30, 2008
5      ----------------------------------X
6
                           TRANSCRIPT OF MOTIONS
7              BEFORE THE HONORABLE ROBERT D. DRAIN
                  UNITED STATES BANKRUPTCY JUDGE
8
9      APPEARANCES:

10     For the Debtors:          JOHN WM. BUTLER, JR., ESQ.
                                 KAYALYN A. MARAFIOTI, ESQ.
11                               THOMAS J. MATZ, ESQ.
                                 Skadden, Arps, Slate, Meagher
12                                & Flom, LLP
                                 Four Times Square
13                               New York, New York   10036

14     For Creditors Com.:       ROBERT J. ROSENBERG, ESQ.
                                 MICHAEL RIELA, ESQ.
15                               Latham & Watkins
                                 885 Third Avenue
16                               New York, New York   10022

17     For Equity Com.:          BONNIE STEINGART, ESQ.
                                 Fried, Frank, Harris, Shriver
18                                & Jacobson, LLP
                                 One New York Plaza
19                               New York, New York   10004

20     For ADAH:                 THOMAS E. LAURIA, ESQ.
                                 White & Case, LLP
21                               200 South Biscayne Boulevard
                                 Miami, Florida   33131
22                               (Appearances continued on next page)

23                    REGENCY REPORTING, INC.
               Certified Court Reporters & Videographers
24          425 Eagle Rock Avenue       575 Madison Avenue
            Roseland, NJ 07068          New York, NY 10022
25           www.regencyreporting.net   1-866-268-7866

```
 1   APPEARANCES CONTINUED:

 2   For Tenneco:           MICHELLE R. MANHA, ESQ.
                            Mayer Brown, LLP
 3                          1675 Broadway
                            New York, New York  10019
 4

 5   For Delphi Corp.:      EDWARD A. FRIEDMAN, ESQ.
       Essex Group, Inc.    WILLIAM P. WEINTRAUB, ESQ.
 6                          Friedman, Kaplan, Seiler & Adelman
                            1633 Broadway
 7                          New York, New York  10019

 8   For JP Morgan:         BRIAN M. RESNICK, ESQ.
                            Davis, Polk & Wardwell
 9                          450 Lexington Avenue
                            New York, New York  10017
10
     Court Transcriber:     CARLA NUTTER
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

 1              THE COURT:  Please be seated.  Okay.  Delphi

 2    Corporation.

 3              MR. BUTLER:  Your Honor, good morning.  Jack Butler,

 4    Kayalyn Marafioti and Tom Matz from Skadden, Arps here on behalf of

 5    Delphi Corporation for our thirtieth omnibus hearing.

 6              Your Honor, we have filed an agenda with ten items on

 7    the agenda for today and we propose to proceed in the order of the

 8    agenda.

 9              THE COURT:  Okay.  That's fine.

10              MR. BUTLER:  Your Honor, the first matter on the agenda,

11    matter No. 1, is the Steering Sale motion objections, the follow on

12    objections to the Steering Sale at docket No. 11390.

13              As Your Honor may recall, we received a total of 44

14    objections to the sale hearing, nine of those were resolved prior

15    to the sale hearing, 28 of those were resolved prior to the

16    subsequent hearing on March 19th that had been scheduled to

17    consider them.  That left us with seven objections that we had to

18    deal with; five objections that had been adjourned to the April 2nd

19    claims hearing and two objections that were adjourned to this

20    hearing.  Of those seven objections, three have now been resolved,

21    that is the Hydro Aluminum North America, Inc. objection at docket

22    No. 12452.  There's a stipulation and agreed order at docket No.

23    13291.  The Dupont objection at docket No. 12464 which has now had

24    an entered stipulation and agreed order at docket No. 13405 and an

25    objection filed by Frudenberg, Nolk, a general partnership, on

1    behalf of the various entities at docket No. 12479 and that

2    objection was withdrawn at docket No. 13282.  That leaves us now

3    with four remaining objections; two of those were adjourned to the

4    April 2nd claims hearing and Your Honor adjourned those already to

5    the May 8th hearing and then two others; one filed by -- both filed

6    actually by American Aikoku Alpha, Inc. at docket No. 12369 and

7    12376 remains for this hearing.

8         Your Honor, American Aikoku has a motion pending at the

9    May 8th claims hearing relating to its claims and to allow for a

10   settlement to resolve all of its outstanding issues which would

11   resolve these two objections, among others, if in fact that motion

12   is granted.  As a result, Your Honor, we'd like to adjourn these

13   two objections to the May 2nd hearing.  We'll take up the four

14   remaining Steering Sale objections at the May 8th claims hearing if

15   that's acceptable, Your Honor.

16        THE COURT:  All right.  That's fine.

17        These are -- even though you're saying they're

18   objections to the Steering Sale, they're either a cure or

19   assumption or an assignment objection?

20        MR. BUTLER:  Yes, Your Honor.

21        THE COURT:  Okay.  All right.  So I'll deal with that in

22   May.

23        MR. BUTLER:  Thank you, Your Honor.

24        Your Honor, similarly, item No. 2 on the agenda which is

25   the Omitted Contracts Assumption Procedures motion, filed at docket

 1    No. 13029, was filed because Delphi identified additional contracts

 2    that needed to be noticed out.  There was an Omitted Contracts

 3    Assumption Procedures order entered by the Court on March 25th at

 4    docket No. 13232 and pursuant to that we sent notices of

 5    assumption, assignment and cure with respect to 150 additional

 6    contracts.  We've received six objections out of the 150 and of

 7    those six objections one has been withdrawn, four are settled and

 8    are being based on various stipulations, some of them that are

 9    being drafted right now, and the final one with Federal Screw Works

10    at docket No. 13356 remains open and we're negotiating with them.

11        We'd like Your Honor to adjourn all six of these

12    objections and just for the record they're docket Nos. 13343,

13    13344, 13356, 13358, 13364 and 13373.  Those six objections we'd

14    like to adjourn to the May 8th claims hearing so we can complete

15    the resolution of these objections in a consensual manner.  We

16    would expect, Your Honor, that the vast majority of the paperwork

17    will be done on all of these by that time.

18        THE COURT:  Okay.  That's fine.

19        MR. BUTLER:  Thank you, Your Honor.

20        Your Honor, the balance of the matters on the docket

21    today are all either procedural motions or substantive motions that

22    are designed to continue to stabilize and protect the business as

23    we move forward in evaluating modifications to our plan of

24    reorganization and otherwise considering actions to take with

25    respect to the closing that was commenced but not completed on

1   April 4th.  We have been in very close consultation with our

2   statutory committees on all of these matters and I'm pleased that

3   we have the committees' support on matters we're presenting to you

4   today and I'll walk through each of them with the Court.

5        The first at item No. 3 is the Fifth 365(d)(4) Extension

6   motion, which under the prior orders of the Court at docket No.

7   12878, the time to assume or reject leases would have expired on

8   the early or the effective date of the plan or May 31, 2008.  We

9   filed a request for an extension that would essentially extend out

10  the deadline now to the effective date of the plan that's already

11  been confirmed or the effective date of any modified plan subject

12  to the terms of such plan and corresponding confirmation order

13  including any elections to assume or reject real property leases

14  that might be permitted thereunder.  This relief impacts

15  approximately eighty real property leases.  As Your Honor may

16  recall, under the plan and disclosure statement that is currently

17  extant the company assumed all of those leases.  There were no

18  leases under plan Exhibit 8-1-A that were set for rejection.  While

19  obviously the company in connection with any modifications would

20  have the right to consider modifications, the company has no

21  present intention of doing so.

22        No lessor filed an objection to the relief requested, no

23  party has filed an objection to the relief requested, Your Honor,

24  and we'd ask Your Honor to enter the order that's been proposed.

25        THE COURT:  Okay.  I have no problem with an extension

1    and obviously the lessors didn't either.  My review of the proposed

2    exclusivity order, though, prompted me to look at this a little

3    more carefully notwithstanding that it was consensual and let me

4    just raise with you an issue that, I think, may require a slight

5    change to the order given -- again, the order is intended to

6    protect assets of the debtors -- protect against the automatic

7    rejection of leases and the exclusivity order as proposed at least

8    contemplates the possibility of someone other than the debtors

9    filing a plan.  Those issues are reserved, obviously, for the

10   future and I expect that everyone will continue to try and work

11   together to have a consensual modification of the plan but it's

12   conceivable that someone other than the debtor could propose a plan

13   and get one confirmed and as I read 1127 if this is limited just to

14   the plan or any modified plan, I think it's just limited to the

15   proponent of the plan which would be the debtors so you would run a

16   risk, however remote, that if someone else got a plan confirmed

17   these leases would be deemed rejected.

18         So I took out the phrase, "modified plan," and just

19   said, "any other Chapter 11 plan" and that would protect the

20   estates and I think it's consistent with what you noticed out to

21   everyone who, I'm sure, assumed that this issue would be put off

22   until confirmation unless they have their right to come in and seek

23   a shortened period.

24         MR. BUTLER:  Certainly, Your Honor, I understand the

25   Court's modification of the proposed order, you know, and we have

1   in our discussions with our committees, you know, deferred to

2   another day the ultimate discussion about what rights the parties

3   have with respect to modification of the plan.

4        THE COURT:  No, I appreciate that.  This is just to be

5   protective as opposed to in any way accelerate that discussion.

6        MR. BUTLER:  Right.  And I presume the changes are being

7   made, Your Honor, with the full reservation of rights to all the

8   parties to argue that on the other issues.

9        THE COURT:  Sure.  Yes.  Absolutely.  No, this is just -

10  - it comes up in connection with the 4(m) motion, too, but with

11  that change which I, again, believe is fully consistent with what

12  you noticed out because I think the lessors, I'm sure, didn't take

13  the time to read 1127 and go through that analysis, they just

14  assumed that this would probably be put off until confirmation of

15  some plan or the effective date of some plan and they obviously

16  have their right to come in for cause if they want to.

17       Okay.  So with that change I'll approve it.

18       MR. BUTLER:  Thank you, Your Honor.

19       Your Honor, speaking of exclusivity, that actually is

20  the next motion, item No. 4 on the agenda, the motion to further

21  extend exclusivity at docket No. 13360.

22       As Your Honor may recall, our current exclusivity order

23  which was obtained on a precautionary basis at the time because it

24  was post-confirmation provided that we would have the exclusive

25  right to file a plan through and including May 31, 2008 and to

05-44481-rdd   Doc 20090-3   Filed 05/14/10   Entered 05/14/10 15:02:14   Exhibit
B-April 30   2008 Hearing Transcript   Pg 10 of 36

9

1   solicit acceptances of the plan through and including July 31,

2   2008.

3          We've had informal discussions with both representatives

4   of the plan investors and representatives of the statutory

5   committees with respect to the motion.  There were no objections

6   filed with respect to the motion by any party.  Let me just recap

7   the discussions we've had.  With respect to the discussion we had

8   with White & Case on behalf of ADAH, we agreed to make the

9   following statement on the record:  Neither ADH's [sic] lack of a

10  formal objection to the exclusivity extension motion nor any

11  findings or conclusions made in connection with the motion will be

12  used by any party in any future litigation regarding the investment

13  agreement or any alleged act, omission or event in connection

14  therewith including without limitation ADH's prior notices of

15  termination.  We agreed to make that statement on the record and

16  have now done so.

17          THE COURT:  Okay.

18          MR. BUTLER:  Your Honor, with respect to the exclusivity

19  motion, the relief we had asked for is that, similarly, to the

20  other procedural motions here that the Court extend the deadline

21  until -- to file a plan or modification -- to file a plan of

22  reorganization until thirty days after substantial consummation of

23  the Plan or any modifications to the plan that's already been

24  confirmed and then also extend the solicitation deadline by a

25  corresponding ninety days.

05-44481-rdd    Doc 20090-3    Filed 05/14/10    Entered 05/14/10 15:02:14    Exhibit
B-April 30    2008 Hearing Transcript    Pg 11 of 36

10

1            No one filed an objection to that.  In connection with

2    the statutory committees, both of the committees as to the official

3    committees believe that it was appropriate to have a specific

4    deadline and a reservation of rights to consider these matters and

5    we agreed with them and so as to the committees the date by which

6    exclusivity would be extended as to the two statutory committees

7    would be August 31, 2008 and the solicitation deadline would be

8    extended to October 31, 2008.  The extension as between the debtors

9    and the statutory committees remain subject to motions to shorten

10   or lengthen that period for cause and as to the statutory

11   committees and the debtors, they have agreed between themselves to

12   reserve their rights to address if any of the exclusive periods

13   actually were to expire whether a Section 1129(c) would then be

14   operative in connection with controlling who might be able to file

15   and solicit a competing plan of reorganization but we would put

16   that off to another day, seeing as it's an academic discussion at

17   the moment given the agreements between the parties.

18            THE COURT:  Okay.

19            MR. BUTLER:  So we did revise the order in connection

20   with those agreements and submitted a revised order to Your Honor

21   earlier yesterday afternoon, I believe.

22            THE COURT:  Okay.  All right.  Does anyone want to be

23   heard on this?

24                    (No response)

25            THE COURT:  All right.  I've reviewed the motion and the

05-44481-rdd   Doc 20090-3   Filed 05/14/10   Entered 05/14/10 15:02:14   Exhibit
B-April 30   2008 Hearing Transcript   Pg 12 of 36

11

1   revised blacklined order and I'll grant the motion.  It appears to

2   me the debtors have been acting in good faith.  They obviously

3   still have remaining issues in respect of the plan and/or a

4   modification thereof and, consequently, this extension which,

5   again, is consensual on this basis is warranted.  So I'll enter

6   that order.

7       MR. BUTLER:  Thank you, Your Honor.

8       Your Honor, you also touched briefly on the 4(m) motion.

9   That's actually the next one, Item 5.  This is the post-

10  confirmation extension of avoidance action service deadlines motion

11  at docket No. 13361 and, Your Honor, this deals with the debtor's

12  seeking an entry of an order extending the deadline to serve

13  process pursuant to Bankruptcy Rule 7004(a) and Federal Rules of

14  Civil Procedure 4(m) that's made applicable by Bankruptcy Rule

15  7004(a) for avoidance actions filed in connection with the

16  preservation of estate claims procedures order earlier entered by

17  this Court at docket No. 12471.

18      We did give some specific notice in connection with

19  this, Your Honor.  We gave notice of the motion to Lenico

20  Engineering Company, Wachovia Bank National Association and the

21  master service list and the 2002 list.  The reason that we gave

22  specific notice to Lenico and Wachovia was because those were the

23  only two parties that had been identified under Exhibit 7.24 of the

24  plan as having the avoidance actions preserved under the plan and,

25  therefore, we gave particularized notice to them of the relief

1    sought by the debtors.  We have not given notice to the 742 other

2    defendants therein which are under seal and it was not served on

3    those defendants except to the extent those defendants already had

4    placed themselves on either the master service list or the 2002

5    list.

6         There were no objections to the motion.  At the moment,

7    Your Honor, prior to Your Honor's order, we believe that it's

8    appropriate to get a further extension.  Right now, the extension

9    is through May 31, 2008, that's Your Honor's -- a prior order

10   entered on March 28th at docket No. 13277 and, again, the process

11   that we're looking for here is essentially the same formulation we

12   did in the 365(d)(4) motion and I presume with a similar

13   modification from Your Honor, the idea here is to not have to deal

14   with these complaints so long as we have the plan process that

15   we're moving forward with.

16        THE COURT:  Okay.  Well, first, I continue to believe

17   that there is good cause for the relief sought here.  Except for

18   the notice you did give I don't think any further notice is

19   necessary under the plain terms of 9006 and the cause is obviously

20   that the analysis so far that's represented in the motion is the

21   same as it was when the motion was originally granted which is that

22   these causes of action are being preserved in light of the

23   limitations period, however, it's not presently contemplated that

24   they will be pursued, although obviously the preservation of them

25   means that they may be pursued but given that there's no reason for

05-44481-rdd   Doc 20090-3   Filed 05/14/10   Entered 05/14/10 15:02:14   Exhibit
B-April 30   2008 Hearing Transcript   Pg 14 of 36

13

1    either the debtors or the potential defendants to start to have to

2    incur any costs in connection with the litigation so cause is shown

3    under Rule 4(m) and 9006.

4         The issue that I addressed earlier on the lease

5    extension motion is slightly different here, I think, because it's

6    conceivable, I guess, that a plan that I would permit someone else

7    to submit might have a different position on avoidance actions and

8    at which point they should be pursued.  So the way I phrased it

9    here and you're all free to chime in on this if it doesn't sound

10   right to you is that the deadline or the extension would be until

11   thirty days after the later of substantial consummation of the plan

12   or any modified Chapter 11 plan and December 31, 2008.  That seems

13   to me -- that was the date you had in for another matter, it will

14   come up later and it seems far enough off so that that would be

15   sufficient.

16        MR. BUTLER:  Thank you, Your Honor.

17        THE COURT:  Okay.  So I'll grant it on that basis.

18        MR. BUTLER:  Your Honor, the next item on the agenda,

19   Item No. 6, is the debtor's second DIP extension motion filed at

20   docket No. 13409.

21        Your Honor, in this motion the debtors have sought

22   authority to supplement the January 5, 2007 DIP order entered at

23   docket No. 6461, the November 16, 2007 DIP extension order at

24   docket No. 10854 and to authorize the debtors to extend the

25   maturity date of the DIP facility to enter into related documents

05-44481-rdd    Doc 20090-3    Filed 05/14/10    Entered 05/14/10 15:02:14    Exhibit
B-April 30    2008 Hearing Transcript    Pg 15 of 36

14

1    and pay certain related fees and to authorize the debtors to enter

2    into an arrangement or an agreement with General Motors Corporation

3    or an affiliate thereof, all as has been outlined in the motion in

4    a notice of filing of an unredacted chart relating to the motion

5    that was filed at docket No. 13460 and a notice of the filing of

6    the GM agreement relating to the second DIP extension motion that

7    was filed at docket No. 13461.

8         First, Your Honor, I want to deal with the notice that

9    was given under this motion and the timing of it.  The debtors

10   filed -- worked on this motion and finalized it with the

11   appropriate parties on the evening of April 15th intending to take

12   advantage of Rule 1004(c)(1)(2) which permits the commencement of

13   final hearing no earlier than fifteen days after service of the

14   motion.  The debtors filed and served the motion overnight on April

15   15th, everybody received it that was required to receive it,

16   received actual service on April 16th, that day.  We took an

17   appropriate service activity to make sure that occurred.  The

18   affidavit of service is in the exhibit binder which I'll go over in

19   a few minutes that evidences that.  I do note, Your Honor, that the

20   actual docketing of the motion on the computer in the Court's

21   docket is ten minutes past midnight on that day.  So I want you to

22   understand that that's what -- and I want to make sure the record

23   is clear on that fact that it actually docketed here at about 12:10

24   a.m. on the 16th, although that ten minute delay did not effect

25   service in any way or change in any respects the delivery of the

05-44481-rdd   Doc 20090-3   Filed 05/14/10   Entered 05/14/10 15:02:14   Exhibit
B-April 30   2008 Hearing Transcript   Pg 16 of 36

15

1    motion or service of the motion as contemplated under Rule

2    4001(c)(2).

3            THE COURT:  I guess anyone who waited up that long would

4    have waited another ten minutes.

5            MR. BUTLER:  Well, Your Honor, we wanted you to be aware

6    of it and for purposes -- because it is clear that the DIP lenders,

7    General Motors and the debtors all expect and anticipate that this

8    is a final hearing and we wanted to make sure that we had given the

9    Court the proper information relating to all this and that the

10   service to make sure that the exhibits we'll introduce in a few

11   minutes into evidence, that the service was made overnight on the

12   15th and was received by everybody on the 16th.

13           THE COURT:  Okay.

14           MR. BUTLER:  The second item, Your Honor, that I wanted

15   to describe with you is the forms of the agreement.  Maybe it's

16   best to look at the exhibit books now and I've got a couple of

17   items to go through with Your Honor.  But we do have exhibits for

18   this particular matter.  There are fifteen of them:  Item No. 1 is

19   John Sheehan's declaration in support of this.  We have actually

20   one reserved exhibit which is Exhibit 2 which is not being used for

21   the hearing.  Exhibits 3, 4 and 5 are the form of proposed credit

22   agreement and we are using, after reviewing this with the parties,

23   an amended and restated revolving credit term loan and guaranty

24   agreement.  I think, importantly, Exhibit No. 4 is the blackline of

25   the amended and restated revolving credit term loan and guaranty

05-44481-rdd   Doc 20090-3   Filed 05/14/10   Entered 05/14/10 15:02:14   Exhibit
B-April 30   2008 Hearing Transcript   Pg 17 of 36

16

1    agreement against a prior agreement.  Exhibit 5 is the fourth

2    amendment fee letter that has been shared with the committees and

3    with Your Honor.  It is marked "Highly Confidential" but it is

4    Exhibit 5.  Exhibit 6 is the expedited motion.  Exhibit 7 is the

5    form of proposed order and I in fact have some comments to make

6    about that in a few minutes because we've reached agreements with

7    various parties this morning that would require some further

8    alterations to that order such that we would proceed on an

9    uncontested basis with the relief being sought today.  So I'll come

10   back to Exhibit 7 in a few minutes.  Exhibits 8 and 9 are the

11   notices of filing that I spoke about earlier and Exhibits 10 and 11

12   are the prior DIP orders.  Exhibit 12 is a blackline of the

13   proposed order -- the form of proposed order.  Then the GM

14   agreements, the GM settlement agreements, the GSA and the MRA are

15   Exhibits 13 and 14 and then the affidavit of service I spoke about

16   earlier is Exhibit 15.

17          With respect to the documents and in light of the fact

18   that there are no objections that I'm aware of at least to this

19   matter, there are some changes to the proposed form of order that I

20   wanted to go over with the Court and there's at least one or two

21   changes -- one change to the proposed form of credit agreement.

22          Let me deal with, first, Exhibit 3 which is the proposed

23   form of credit agreement.  At Page 61 and making reference to

24   Article 4.01(a)(iv), the phrase at the end of that condition to the

25   effectiveness which would have previously required that the order

05-44481-rdd   Doc 20090-3   Filed 05/14/10   Entered 05/14/10 15:02:14   Exhibit
B-April 30   2008 Hearing Transcript   Pg 18 of 36

17

1    Your Honor would consider entering today have become final and non-

2    appealable, the phrase, "and such order shall have become final and

3    non-appealable" has been deleted so that there can be a closing in

4    less than the ten day period.  Similarly -- and that's the only

5    change to Exhibit 3.  Similarly, a similar change to Exhibit 7 and

6    I have a mark-up, Your Honor, which we'll submit to the Court, I'm

7    not going to read all this into the record, but there are changes

8    to Paragraphs 9 and 12 of the proposed form of order that simply

9    extend parallel 364(e) protection to General Motors with respect to

10   its agreement, again, so that they have the parallel protection

11   that the DIP lenders already had under Paragraph 9 and they're just

12   conforming changes to do that.  There's nothing more material than

13   that.

14          In addition, Your Honor, with respect to the order we

15   have a replacement -- a substitute for Paragraph 8 of the order.

16   Paragraph 8 is language that has been worked out with a number of

17   the parties but including with ADAH on behalf of the plan investors

18   and I'll simply read it as it's been revised.  It states as

19   follows: "Paragraph 5(b) of the DIP order is hereby amended by

20   adding the following proviso to the end of such paragraph:

21   `Provided further, notwithstanding anything herein to the contrary,

22   this order shall not modify the August 2, 2007 order authorizing

23   and approving Delphi Appaloosa equity purchase and commitment

24   agreement pursuant to Section 11 U.S.C. 105(a), 363(b), 503(b) and

25   507(a), docket No. 8856, the December 10, 2007 order under 11

05-44481-rdd    Doc 20090-3    Filed 05/14/10    Entered 05/14/10 15:02:14    Exhibit
B-April 30    2008 Hearing Transcript    Pg 19 of 36

18

1    U.S.C. 105(a), 363(b), 503(b) and 507(a) authorizing and approving

2    Delphi Appaloosa equity purchase and commitment agreement amendment

3    (the `EPCA Amendment Order), the Amended Investment Agreements as

4    defined in the EPCA Amendment Order or any rights of the parties

5    under any of the foregoing including without limitation with

6    respect to (i) the propriety allowance or payment of any unpaid

7    transaction expenses or post-order transaction expenses of the

8    timing thereof or (ii) the Delphi/GM agreement, as to which the

9    rights of all parties are hereby expressly reserved." That is a

10   reservation of rights agreement that has been worked out that would

11   be included and that would be the substitute Paragraph 8 of the

12   proposed DIP order.

13          THE COURT:  Let me make sure.  The Delphi/GM agreement

14   that's referred to in that language is the same as later defined as

15   the Delphi/GM agreement in Paragraph 12?

16          MR. BUTLER:  Yes.  It's the Delphi/GM agreement that's

17   before the Court today.

18          THE COURT:  The same one?

19          MR. BUTLER:  The same one.

20          THE COURT:  Okay.

21          MR. BUTLER:  Your Honor, as to the Delphi/GM agreement

22   that's before the Court there were some modifications to the GM

23   agreement since it was --

24          THE COURT:  I'm sorry, before you get to that -- so, I

25   took this from my review but the carve out, then isn't changed as

05-44481-rdd   Doc 20090-3   Filed 05/14/10   Entered 05/14/10 15:02:14   Exhibit
B-April 30   2008 Hearing Transcript   Pg 20 of 36

19

1    the motion had suggested it might be.

2           MR. BUTLER:   Correct, Your Honor.

3           THE COURT:   Subsequent negotiations have left the carve

4    out under the original or the current DIP order -- the same subject

5    to this reservation that you just read?

6           MR. BUTLER:   Correct, Your Honor.

7           THE COURT:   Okay.   Which means that if, for example, the

8    transaction expenses are carved out it will be because of some

9    litigation over whether they're owing?

10          MR. BUTLER:   Correct.

11          THE COURT:   Okay.

12          MR. BUTLER:   Now, Your Honor, just with one reference to

13   the Delphi/GM agreement, there were some changes to that since the

14   notice of filing on April 24th.   Those blackline changes are

15   referenced and are included in the exhibit binder at Tab 9.

16          I believe, Your Honor, those were all of the changes

17   that have been agreed to and are summarized and with that I would

18   like to --

19          THE COURT:   Could I get the -- Exhibit 9, this is what I

20   was given earlier; right?

21          MR. BUTLER:   Yes.

22          THE COURT:   There's nothing new in that?

23          MR. BUTLER:   No.   There was a blue sheet at the end and

24   there was blacklined pages behind -- there were just a couple of

25   blacklines.

05-44481-rdd   Doc 20090-3   Filed 05/14/10   Entered 05/14/10 15:02:14   Exhibit
B-April 30   2008 Hearing Transcript   Pg 21 of 36

20

1        THE COURT:  Well, let me just -

2        MR. BUTLER:  Exhibit 9.

3        THE COURT:  -- make sure that's the one I looked at.

4                    (Pause in proceedings)

5        MR. BUTLER:  I can pass up the blackline, Your Honor.

6        THE COURT:  No, I'm just taking a quick look at it.

7                    (Pause in proceedings)

8        THE COURT:  Okay.  Not major changes by any means.

9        MR. BUTLER:  No, Your Honor.

10       Your Honor, with that in mind I'd like to move admission

11  of Exhibits 1 through 15, excepting obviously Exhibit 2 which was

12  reserved.

13      (Debtor's Exhibit Nos. 1 and 3 through 15, Received)

14       THE COURT:  Okay.  I'll admit them.  Does anyone want to

15  cross-examine Mr. Sheehan on his declaration?

16                  (No response)

17       THE COURT:  Okay.  Very well.

18       MR. BUTLER:  Your Honor, in terms of presentation, I

19  think that Mr. Sheehan's declaration and the papers we filed, I

20  think, outline all the relevant issues that the debtors would

21  present in their direct case in support of this.  Obviously, there

22  are just two points I think I'd like to make in summary; one of

23  them is that we certainly appreciate the support of the lending

24  community in moving forward with respect to the extension of the

25  DIP through December 31, 2008 which was the maturity date the

05-44481-rdd    Doc 20090-3    Filed 05/14/10    Entered 05/14/10 15:02:14    Exhibit
B-April 30    2008 Hearing Transcript    Pg 22 of 36

21

1    debtors sought.  The parties are moving forward, we are obviously

2    in syndication now, the final commitment letters are due at the end

3    of this week, we expect to close shortly thereafter, some time

4    during the next ten days on this if Your Honor approves it today

5    and we have moved forward in connection with the syndication terms

6    that we've indicated on the notice of filing that we made earlier.

7    Second, I simply also would express the company's appreciation to

8    General Motors in stepping up and addressing through the GM

9    agreement the $600 million or so amount of advances that the

10   debtors have advanced in connection with the GSA and the MRA over

11   the last period of time since we entered into those agreements.

12   Those advances by Delphi will ultimately be settled out when the

13   GSA and the MRA become effective and the agreement by GM here

14   simply addresses GM's support of the company in connection with and

15   addresses, really, with respect to the advances that the debtors

16   have made and we're very appreciative of that as well.

17        Your Honor, I think from a business judgment perspective

18   -- and Mr. Sheehan has testified to it in his declaration --

19   clearly, extending the current DIP facility and continuing to

20   provide adequate liquidity to Delphi's operations on a global basis

21   is extremely relevant and important as we move forward to explore

22   with our stakeholders appropriate modifications to the plan if any

23   and move forward to emerge from Chapter 11 as soon as practicable.

24        THE COURT:  Well, that's clearly the case.

25        I had a couple of questions that really don't go to that

05-44481-rdd   Doc 20090-3   Filed 05/14/10   Entered 05/14/10 15:02:14   Exhibit
B-April 30   2008 Hearing Transcript   Pg 23 of 36

22

1    issue but that's an obvious one.

2         I guess my first question is if syndication is expected

3    to be completed shortly why not wait until then?  I mean why do it

4    now?

5         MR. BUTLER:  You mean as opposed to Friday, Your Honor?

6         THE COURT:  Yes.  I mean are you confident enough that

7    you will have the commitments?

8         MR. BUTLER:  Your Honor, I believe that we expect that

9    we will have a fully syndicated DIP.  JPM has received a number of

10   very substantial commitments already moving forward in connection

11   with this.  Obviously, from the company's perspective it was

12   extremely, we thought, relevant and important following the

13   commencement but not the completion of a plan closing date and

14   effective date back on April 4th to move promptly this month with

15   the relaunch of a DIP 10 [sic] or extension and to come in and get

16   authority for that.  You can imagine that our stakeholders as well

17   as customers and suppliers want to be comfortable that the company

18   is going to have continued access to appropriate liquidity --

19        THE COURT:  Well, what I really wanted to hear is that

20   already have sufficient assurance from the lead that there are

21   major commitments in hand and it's expected to be completed.

22        MR. BUTLER:  Yes, Your Honor, I think that is a fair

23   characterization.

24        THE COURT:  Okay.  Then, I guess my -- the remaining

25   questions I had are a subset of that which is what you asked me to

05-44481-rdd    Doc 20090-3    Filed 05/14/10    Entered 05/14/10 15:02:14    Exhibit
B-April 30    2008 Hearing Transcript    Pg 24 of 36

23

1    approve is a DIP that's in substantial conformity with the

2    documents and the documents are very far along but there were three

3    places I just had questions:    (1) I think may just be a typo

4    because the actual amounts are set forth later in the tranche

5    commitments but in the introductory statement it seems to me when

6    it talks about the amount it just has a bullet point and you may

7    want to deal with that because I don't want to approve something

8    where I'm approving just a bullet point because I think that

9    substantial conformity with a bullet point wouldn't count.

10                MR. BUTLER:   Right.  No, Your Honor, I think as we've

11    indicated that the facilities --

12                THE COURT:   They're defined later and they're all clear.

13                MR. BUTLER:   -- are laid out.  So we will do that, Your

14    Honor.

15                THE COURT:   Okay.  So that the bullet point will be

16    consistent with those amounts and then the definition of "available

17    liquidity" has a dollar sign in brackets and in terms of what

18    substantial conformity means, I guess it's within a close range to

19    that dollar sign.  That's not like a bullet point either is it?

20                MR. BUTLER:   No, it's not, Your Honor.

21                THE COURT:   Okay.  Then, finally, the EBITDAR covenant,

22    6.04.

23                MR. BUTLER:   Yes.

24                THE COURT:   The amount seemed to have been raised

25    substantially.  Is that a covenant that the debtors believe they

05-44481-rdd   Doc 20090-3   Filed 05/14/10   Entered 05/14/10 15:02:14   Exhibit
B-April 30   2008 Hearing Transcript   Pg 25 of 36

24

```
 1    could comfortably live with?
 2          MR. BUTLER:  Yes, Your Honor.  As Mr. Shintai testified
 3    in the declaration, this represents a negotiation that followed the
 4    preparation of a DIP extension case which was modified from the
 5    debtor's previous business plan and I think Mr. Sheehan is here and
 6    can answer any questions about that.
 7          THE COURT:  Okay.
 8          MR. BUTLER:  But the debtors are comfortable with the
 9    schedule of EBITDAR that is set forth on Page 7 -- on Section 6104.
10          THE COURT:  So this reflects a substantial increase in
11    the debtor's EBITDAR.
12          MR. BUTLER:  From prior covenants, Your Honor.
13          THE COURT:  From prior covenants.
14          MR. BUTLER:  Yes, because the companies -- I mean that's
15    a result of the fact that the transformation plan continues to move
16    forward and the company's operations continue to move forward.
17          THE COURT:  Okay.
18          MR. BUTLER:  So that the EBITDAR that we're generating
19    now that would be the subject of this covenant is improved from the
20    beginning of the case.
21          THE COURT:  Yes?  That's right, Mr. Sheehan?
22          MR. SHEEHAN:  Yes.
23          THE COURT:  Okay.  Then on the GM agreement, again, this
24    is really just in terms of my wanting to make sure I understand
25    what the parties are agreeing to here.
```

05-44481-rdd    Doc 20090-3    Filed 05/14/10    Entered 05/14/10 15:02:14    Exhibit
B-April 30    2008 Hearing Transcript    Pg 26 of 36

25

1          There's a good faith covenant of both borrower and GM to

2     negotiate and enter into amendments to each of the global

3     settlement agreement and the master restructuring agreement as soon

4     as reasonably practicable?

5          MR. BUTLER:  Yes.

6          THE COURT:  That's tracked elsewhere in the relief.  It

7     doesn't say what those amendments are supposed to be.  Is there

8     some implicit understanding of what they are or is it really just

9     to negotiate in good faith?

10          MR. BUTLER:  It's to negotiate in good faith, Your

11     Honor.  I think, candidly, what the company is exploring with its

12     statutory committees and with General Motors and other stakeholders

13     are the circumstances under which it would be appropriate to

14     accelerate the effectiveness of the GSA and the MRA.

15          THE COURT:  Okay.

16          MR. BUTLER:  And how and what the circumstances of those

17     are is a matter under discussion between the parties and is a part

18     of the negotiation and we've all agreed to negotiate in good faith

19     on that subject.

20          THE COURT:  Okay.  But this isn't sort of code words

21     for, you know, some sort of agreement in principal that the parties

22     have that I would be asked to approve now?

23          MR. BUTLER:  No, Your Honor, absolutely not.

24          THE COURT:  Okay.  Then, last, in a couple of places

25     here there's a provision that first appears in "conditions to

05-44481-rdd   Doc 20090-3   Filed 05/14/10   Entered 05/14/10 15:02:14   Exhibit
B-April 30   2008 Hearing Transcript   Pg 27 of 36

26

1    lending" that's headed "Modifications to Existing Confirmed Plan."

2        MR. BUTLER:  U-hum.

3        THE COURT:  As I look through this that provision which

4    sort of spells out what can and cannot be done to the confirmed

5    plan is not an event of default.  Am I right about that?  It just

6    pertains to conditions to lending?

7        MR. BUTLER:  Absolutely correct, Your Honor.

8        THE COURT:  Okay.  So GM and the debtors wouldn't have

9    that trigger over other parties.

10       MR. BUTLER:  Correct, Your Honor.

11       THE COURT:  Okay.

12       MR. BUTLER:  The other piece of this obviously, Your

13   Honor, is in connection with the support -- from the debtor's

14   perspective the support GM is providing here is related to the

15   advances that the company has made under the GSA and the MRA

16   whereas is clear from the agreement, we are negotiating the

17   circumstances under which the GSA and the MRA should become

18   effective and I think GM reasonably requested from the company

19   assurances that if we decided to take a very different path than

20   General Motors and essentially from their perspective go hostile,

21   they want to be able to say, I probably shouldn't provide any more

22   support under this agreement.

23       THE COURT:  Right.  No, I understand that.  I just

24   wanted to make sure it didn't go beyond that and create an event of

25   default.

05-44481-rdd   Doc 20090-3   Filed 05/14/10   Entered 05/14/10 15:02:14   Exhibit
B-April 30   2008 Hearing Transcript   Pg 28 of 36

27

1           MR. BUTLER:  No.

2           THE COURT:  Okay.  Does anyone have anything further to

3    say on this motion?

4           MR. ROSENBERG:  Only, Your Honor, that that last point

5    that you have been making was very hotly contested and we are

6    satisfied that it's now properly drafted to what it should be.

7           THE COURT:  Okay.  All right.  Well, therefore, based on

8    the record and the fact that this motion is now obviously

9    uncontested, I'll approve it.

10          MR. BUTLER:  Thank you, Your Honor.  We'll be submitting

11   a revised order to Your Honor later today.

12          THE COURT:  Okay.

13          MR. BUTLER:  Thank you.

14          Your Honor, the next matter on the agenda is the

15   Kettering Sale motion at docket No. 13028.  We're here to seek

16   approval for the sale of certain assets of Delphi Automotive

17   Systems, LLC that consist of machinery, equipment and inventory

18   primarily used and located at DAS, LLC's Damper manufacturing

19   facility in Kettering, Ohio to Tenneco Automotive Operating

20   Company, Inc., the stalking horse bidder.  This was a stalking

21   horse that was approved under a bidding procedures order that Your

22   Honor considered at a prior hearing on March 20th and entered at

23   docket No. 13188.

24          Your Honor, there was a bid deadline established of

25   April 10, 2008 with respect to this proposed sale.  The debtors did

05-44481-rdd   Doc 20090-3   Filed 05/14/10   Entered 05/14/10 15:02:14   Exhibit
B-April 30   2008 Hearing Transcript   Pg 29 of 36

28

1    not receive any additional bids, therefore, no auction was held and

2    we are here today to seek approval of the sale of the Kettering

3    assets for approximately $18.8 million and other consideration as

4    that price may be adjusted based on the inventory value, that is

5    the purchase price as well as entering into a lease agreement for a

6    portion of the Kettering facility in connection with the sale as we

7    have described previously and as the papers before the Court

8    indicate.

9         The form of the lease is attached to the sale agreement

10   as Exhibit A.  As I've indicated to Your Honor at the original

11   hearing, this is not a sale of a business, it's rather a sale of

12   assets.  The result of that is that there are no pre-petition

13   executory contracts that are assumed or assigned as part of this

14   particular transaction, although we are considering whether some

15   post-petition supply agreements might ultimately be assigned.  That

16   is not a part of today's hearing.

17        THE COURT:  Okay.

18        MR. BUTLER:  Your Honor, we have made a few changes to

19   the proposed sale order, we filed and served a notice of these

20   changes along with a redline on April 28th at docket No. 13473.  We

21   also with Tenneco's help found a scribner's error in Paragraph 19

22   of the order.  We reflected that in the version of the order we

23   sent to chambers last evening and are set forth in the trial

24   exhibits which I'll describe in a moment.

25        The four specific changes that were made included at

05-44481-rdd   Doc 20090-3   Filed 05/14/10   Entered 05/14/10 15:02:14   Exhibit
B-April 30   2008 Hearing Transcript   Pg 30 of 36

29

1   Paragraph I, we added a provision to explicitly find that the sale

2   order and the consummation of the transactions were supported by

3   good business reasons and served the best interests of the estate.

4   At Paragraph 6 of the order we added language so that it now states

5   it will be binding not only on the seller but the reorganized

6   debtors after the effective date of the plan surviving discharge

7   claims under the plan.  At Paragraph 7 it was made explicit that

8   any modification of the agreement, any related documents needed to

9   be in writing signed by the parties and in accordance with the

10   terms of the agreement and at Paragraph 19 it is now noted that the

11   transactions contemplated by the agreement are undertaken at arm's

12   length and without collusion.

13        In terms of the exhibits that we have in support of

14   this, there are thirteen of them, they include a declaration from

15   Mr. Sheehan at Exhibit 1, Exhibits 2 and 3 are the form of sale and

16   purchase agreement and the form of lease agreement.  Exhibits 4

17   through 7 are various of the proposed court documents.  Exhibits 8

18   through 12 are all the notices and affidavit of publications and,

19   importantly, at Exhibit 13 made available to the Court and marked

20   "Highly Confidential," is a memorandum of understanding regarding

21   the transfer of the Kettering operations and the effect upon

22   employees which is a memorandum of understanding that has been

23   worked out with the IUECWA.

24        THE COURT:  So that resolved their potential objections.

25        MR. BUTLER:  That resolved their potential objection on

05-44481-rdd   Doc 20090-3   Filed 05/14/10   Entered 05/14/10 15:02:14   Exhibit
B-April 30   2008 Hearing Transcript   Pg 31 of 36

30

1    the issues and that effects MOU is confidential but has resolved

2    those issues.

3              THE COURT:   Okay.

4              MR. BUTLER:   So, Your Honor, I'd like to move admission

5    of Exhibits 1 through 13 into the record.

6              THE COURT:   Okay.   Does anyone want to cross-examine Mr.

7    Sheehan on his affidavit?

8                        (No response)

9         (Debtor's Exhibit Nos. 1 through 13, Received)

10             THE COURT:   All right.   I'll admit those exhibits into

11   the record -- into evidence.

12             MR. BUTLER:   Thank you, Your Honor.

13             Your Honor, in light of that on the record here we'd ask

14   that the Court approve the sale of the Kettering assets to Tenneco

15   under the terms provided for in the sale and purchase agreement and

16   find that Tenneco is a good faith purchaser under 363(m) of the

17   Bankruptcy Code and for consideration to be provided by Tenneco for

18   the acquired assets is fair and reasonable and the sale may not be

19   avoided under Section 363(m) of the Bankruptcy Code.

20             THE COURT:   Okay.   I can make all those findings based

21   on the record before me.

22             MR. BUTLER:   Thank you, Your Honor.

23             THE COURT:   Okay.   So does anyone have any -- there are

24   no objections to this so no one is going to say anything on it.

25             MR. BUTLER:   No, Your Honor.

05-44481-rdd    Doc 20090-3    Filed 05/14/10    Entered 05/14/10 15:02:14    Exhibit
B-April 30    2008 Hearing Transcript    Pg 32 of 36

31

1          THE COURT:  I'll approve the motion, again, as being

2    unopposed and based upon my findings as set forth in the proposed

3    order which I'm perfectly comfortable with.

4          MR. BUTLER:  Thank you, Your Honor.

5          Might I have just one moment?

6          THE COURT:  I think the sale agreement is supposed to be

7    an exhibit to the order and I'm not sure that we have that so you

8    probably ought to e-mail that to us.

9          MR. BUTLER:  We'll submit that.

10         MALE VOICE:  Thank you, Your Honor.

11         MR. BUTLER:  Your Honor, we have two contested matters

12   on today's docket, they're both claims objections and we're only

13   proceeding on the uncontested portions of them at this hearing.

14         Item No. 8 is the Twenty-Eighth omnibus objection at

15   docket No. 13269.  There were nine proofs of claim addressed on the

16   objection that the debtors filed.  The debtors received two

17   docketed responses involving five proofs of claim and as a result

18   today we're proceeding for relief only with respect to the

19   uncontested portion of the Twenty-Eighth omnibus claims objection.

20   It covers four claims asserting liquidated claims of approximately

21   $1.1 million and we're seeking to expunge all four of those claims.

22         We have, Your Honor, continued our practice of providing

23   particularized notice of the objection and if Your Honor grants the

24   relief as to the uncontested claimants we'll provide particularized

25   notice of the relief obtained today.

05-44481-rdd   Doc 20090-3   Filed 05/14/10   Entered 05/14/10 15:02:14   Exhibit
B-April 30   2008 Hearing Transcript   Pg 33 of 36

32

1          As to the five claims, proofs of claim as to which

2    responses were filed, creating a contested matter, we'll put those

3    over on to the claims track in connection with the claims

4    procedures order.

5          THE COURT:  Okay.  I'll grant the unopposed relief

6    sought based on due notice, no opposition and the averments in the

7    objection.

8          MR. BUTLER:  Thank you, Your Honor.

9          Your Honor, Item 9 on the agenda is the debtor's Twenty-

10   Ninth omnibus claims objection.  This particular objection involves

11   the debtor's seeking expungement or modification of certain claims

12   because those claims were satisfied in whole or in part by cure

13   payments made by the debtors filing the assumption and assignment

14   under Section 365 of the Bankruptcy Code of executory contracts or

15   unexpired leases pursuant to the sale of the debtor's interiors and

16   closures business.  This relief is necessary to eliminate multiple

17   recoveries for a single liability to insure that a claim holder

18   will not realize recovery on account of a default that has already

19   been satisfied through a cure payment.

20          This objection dealt with seventeen proofs of claim.  In

21   connection with the seventeen proofs of claim we received two

22   responses covering two proofs of claim in the amount of $408,000.00

23   and we'll adjourn those to the claims track in connection with the

24   claims procedures order.  Of the remaining fifteen claims, they

25   asserted liquidated damages of approximately $10.9 million; twelve

05-44481-rdd   Doc 20090-3   Filed 05/14/10   Entered 05/14/10 15:02:14   Exhibit
B-April 30   2008 Hearing Transcript   Pg 34 of 36

33

1    of those claims had been modified on prior orders so pursuant to

2    other orders of the Court the aggregate amount of these claims

3    actually -- the face amount is $10.9 million, they've already been

4    reduced to $7.8 million.

5          With respect to these fifteen claims the debtors seek to

6    expunge three of the claims with an assertive aggregate amount of

7    about $1.5 million and with respect to the twelve claims we would

8    seek to reduce the amounts owing under those claims to an aggregate

9    of approximately $5 million and that is a reduction of just about

10   $3 million from the reduced amount based on the prior orders of the

11   Court.

12         So, again, Your Honor, here we have given particularized

13   notice of this objection to the claim holders involved.  With

14   respect to the two responses, those go the claims track.  With

15   respect to the fifteen remaining claims, we're asking for relief

16   today to have three of them expunged and twelve of them modified as

17   I've indicated on the record.

18         THE COURT:  Okay.  Again, based on due notice and lack

19   of an objection and the statements made in the objection by the

20   debtors I will grant the unopposed claim objections sought today.

21         MR. BUTLER:  Thank you, Your Honor.

22         Your Honor, finally, Item 10 on the agenda is an

23   adversary proceeding involving the debtor's complaint to recover

24   property of the estate, adversary proceeding No. 08-01038, and we

25   have been dealing with the initial scheduling conference and this

05-44481-rdd    Doc 20090-3    Filed 05/14/10    Entered 05/14/10 15:02:14    Exhibit
B-April 30    2008 Hearing Transcript    Pg 35 of 36

34

 1   involves a FICA refund complaint between the company and the

 2   Internal Revenue Service.

 3          The IRS has continued to request additional time from

 4   the debtors to prepare its answer and we are cooperating with that

 5   request and, therefore, Your Honor, we would ask that you adjourn

 6   the initial scheduling conference until the May omnibus.

 7          THE COURT:  Okay.  I'll do that.

 8          MR. BUTLER:  Thank you, Your Honor.

 9          Your Honor, that represents the matters that were

10   scheduled for a hearing at this Thirtieth omnibus hearing.

11          THE COURT:  Okay.  Very well.

12          MR. BUTLER:  Thank you, Your Honor.

13

14

15

16

17

18

19

20

21

22

23

24

25

05-44481-rdd    Doc 20090-3    Filed 05/14/10    Entered 05/14/10 15:02:14    Exhibit
B-April 30    2008 Hearing Transcript    Pg 36 of 36

35

1               C E R T I F I C A T I O N

2

3          I certify that the foregoing is a transcript from an

4    electronic sound recording of the proceedings in the

5    above-entitled matter taken on April 30, 2008, except

6    where,  as indicated, the Court has modified the transcript.

7

8

9

10

11

12    *Carla Nutter*                        5/2/08

13    Carla Nutter                              Date

14

15

16

17

18

19

20

21

22

23

24

25