# EXHIBIT C

05-44481-rdd    Doc 20090-4    Filed 05/14/10    Entered 05/14/10 15:02:14    Exhibit
C-In re Johns-Manville Corp.    Pg 2 of 18

Page 1



LEXSEE 2010 U.S.APP.LEXIS 5877

IN RE JOHNS-MANVILLE CORPORATION, DEBTOR; JOHNS-MANVILLE
CORPORATION, MANVILLE CORPORATION, MANVILLE INTERNA-
TIONAL CORPORATION, MANVILLE EXPORT CORPORATION, JOHNS-
MANVILLE INTERNATIONAL CORPORATION, MANVILLE SALES CORPO-
RATION f/k/a JOHNS-MANVILLE SALES CORPORATION, successor by merger
to MANVILLE BUILDINGS MATERIALS CORPORATION, MANVILLE
PRODUCTS CORPORATION AND MANVILLE SERVICE CORPORATION,
MANVILLE INTERNATIONAL CANADA, INC., MANVILLE CANADA, INC.,
MANVILLE INVESTMENT CORPORATION, MANVILLE PROPERTIES COR-
PORATION, ALLAN-DEANE CORPORATION, KEN-CARYL RANCH CORPO-
RATION, JOHNS-MANVILLE IDAHO INC., MANVILLE CANADA SERVICE
INC., and SUNBELT CONTRACTORS INC., Debtors, TRAVELERS CASUALTY
AND SURETY COMPANY, TRAVELERS PROPERTY CASUALTY CORP.,
TRAVELERS INDEMNITY COMPANY, COMMON LAW SETTLEMENT
COUNSEL, STATUTORY SETTLEMENT COUNSEL, and HAWAII SETTLE-
MENT COUNSEL, Movants-Appellees, ? v.? CHUBB INDEMNITY INSURANCE
COMPANY, ASBESTOS PERSONAL INJURY PLAINTIFFS, CASCINO ASBES-
TOS CLAIMANTS, PEARLIE BAILEY, SHIRLEY MELVIN, GENERAL LEE
COLE, ROBERT ALVIN GRIFFIN, VERNON WARNELL, and LEE FLETCHER
ANTHONY, Objectors-Appellants. *

\*    The Clerk of the Court is respectfully directed to amend the official captions in
these actions to conform to the caption listed above.

**Docket Nos. 06-2103-bk, 06-2118-bk, 06-2186-bk**

**UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT**

*2010 U.S. App. LEXIS 5877; Bankr. L. Rep. (CCH) P81,727; 52 Bankr. Ct. Dec. 266*

October 22, 2009, Argued
March 22, 2010, Decided

**PRIOR HISTORY:** [*1]
Appeals from a March 28, 2006 order of the United States District Court for the Southern District of New York (Koeltl, J.), affirming in part and vacating in part an August 17, 2004 order of the United States Bankruptcy Court for the Southern District of New York (Lifland, J.), which granted Travelers' motions for approval of a settlement agreement and for entry of a "Clarifying Order."
*Travelers Indem. Co. v. Bailey, 129 S. Ct. 2195, 174 L. Ed. 2d 99, 2009 U.S. LEXIS 4537 (U.S., 2009)*

**DISPOSITION:** AFFIRMED IN PART, REVERSED IN PART, and REMANDED.

**COUNSEL:** SANDER L. ESSERMAN (Cliff I. Taylor, Stutzman, Bromberg, Esserman & Plifka, PC; Douglas T. Tabachnik, Law Offices of Douglas T. Tabachnik, Manalapan, New Jersey, on the brief), Stutzman, Bromberg, Esserman & Plifka, PC, Dallas, Texas, for Objector-Appellant Asbestos Personal Injury Plaintiffs.

JACOB C. COHN (William P. Shelley, on the brief), Cozen O'Connor, Philadelphia, Pennsylvania, for Objector-Appellant Chubb Indemnity Insurance Company.

05-44481-rdd    Doc 20090-4    Filed 05/14/10    Entered 05/14/10 15:02:14    Exhibit
C-In re Johns-Manville Corp.    Pg 3 of 18
Page 2

2010 U.S. App. LEXIS 5877, *; Bankr. L. Rep. (CCH) P81,727;
52 Bankr. Ct. Dec. 266

JASON R. SEARCY (Joshua P. Searcy, on the brief), Jason R. Searcy, P.C., Longview, Texas, for Objector-Appellant Cascino Asbestos Claimants.

BARRY R. OSTRAGER (Andrew T. Frankel, Robert J. Pfister, on the brief), Simpson Thatcher & Bartlett, LLP, New York, New York, for Movants-Appellees Travelers Casualty and Surety [*2] Company, Travelers Property Casualty Corp., and Travelers Indemnity Company.

RONALD BARLIANT (Kenneth S. Ulrich, Kathryn A. Pamenter, Goldberg, Kohn, Bell, Black, Rosenbloom & Moritz, Ltd.; Karen A. Giannelli, Gibbons, Del Deo, Dolan, Griffinger & Vecchione, PC, Newark, New Jersey, on the brief), Goldberg, Kohn, Bell, Black, Rosenbloom & Moritz, Ltd., Chicago, Illinois, for Movant-Appellee Common Law Settlement Counsel.

MATTHEW GLUCK (Kent A. Bronson, on the brief), Milberg Weiss Bershad & Schulman, LLP, New York, New York, for Movants-Appellees Statutory Settlement Counsel and Hawaii Settlement Counsel.

JUDGES: Before: CALABRESI and WESLEY, Circuit Judges. **

    ** The Honorable Sonia Sotomayor, originally a member of the panel, was elevated to the Supreme Court on August 8, 2009. The two remaining members of the panel, who are in agreement, have determined the matter. See 28 U.S.C. § 46(d); 2d Cir. Local Rules, Internal Operating Procedure E; see also United States v. Desimone, 140 F.3d 457, 458-59 (2d Cir. 1998).

OPINION

PER CURIAM:

For almost 30 years, the Johns-Manville Corporation ("Manville") and its insurers have sought to navigate the monumental liability arising out of its production of a once-valued [*3] substance -- asbestos. These appeals are yet another judicial stop on that long journey.

The matter is before us on remand from the Supreme Court of the United States, which determined that the bankruptcy court's 1986 orders in Manville's Chapter 11 proceedings -- "whether or not proper exercises of bankruptcy court jurisdiction and power" -- are not subject to collateral attack by either the parties to the 1986 proceedings or those in privity with them. Travelers Indem. Co. v. Bailey, 129 S. Ct. 2195, 2205, 2207, 174 L. Ed. 2d 99 (2009). The Court directed us to address the parties' remaining, properly preserved arguments. See id. at 2207. As the Bailey Court suggested, the primary current contention is the argument of Chubb Indemnity Insurance Company ("Chubb") that "it was not given constitutionally sufficient notice of the 1986 Orders, so that due process absolves it from following them, whatever their scope." Id. In our view, Chubb is correct.

Every court that has played a role in this case has acknowledged that the magnitude and complexity of the underlying bankruptcy proceedings are unparalleled. Insofar as the law of bankruptcy is concerned, the Manville Chapter 11 reorganization has few, if any, [*4] peers. The remaining issues in this case, however, implicate bedrock concepts of due process of law. Applying these principles, we conclude that Chubb was not afforded constitutionally sufficient notice of the proceedings that led to the entry of the 1986 orders by the bankruptcy court. As such, Chubb is not bound by the bankruptcy court's 2004 interpretation of those orders. Accordingly, the district court's order is reversed as to Chubb, and the case is remanded for further proceedings.

## I. BACKGROUND

### A. Facts

The immediate object of this appeal is a March 28, 2006 order of the United States District Court for the Southern District of New York (Koeltl, J.), which affirmed in part and vacated in part two August 17, 2004 orders from the United States Bankruptcy Court for the Southern District of New York (Lifland, J.). The due process issues that we must resolve, however, require us to revisit the nascent stages of Manville's Chapter 11 proceedings in the early 1980s.

### 1. Manville's Chapter 11 Petition

"From the 1920s to the 1970s, Manville was, by most accounts, the largest supplier of raw asbestos and manufacturer of asbestos-containing products in the United States, and for much of that [*5] time Travelers was Manville's primary liability insurer." Bailey, 129 S. Ct. at 2198 (internal citation omitted). ' When the health effects resulting from exposure to the substance became a matter of public knowledge, Manville was "crushed by the weight of [its] century-long entanglement with asbestos," and it filed a voluntary Chapter 11 petition in the Southern District of New York on August 26, 1982. In re Johns-Manville Corp. ("Manville I"), Nos. 82 B. 11656 et al., 2004 Bankr. LEXIS 2519, 2004 WL 1876046, at *14 P 52 (S.D.N.Y. Bankr. Aug. 17, 2004), aff'd in part and vacated in part by In re Johns-Manville Corp. ("Manville II"), 340 B.R. 49 (S.D.N.Y. 2006). Soon after the petition was filed, the bankruptcy court recognized "that Manville's insurance policies were the bankruptcy estate's most valuable asset." In re Johns-Manville Corp. ("Manville III"), 517 F.3d 52, 56 (2d Cir. 2008). The value of those policies was uncertain, however, because

they were the subject of a series of "contentious, costly and time-consuming coverage dispute[s]" between Manville and a number of asbestos-industry insurers in the California Superior Court. *Manville I, 2004 Bankr. LEXIS 2519, 2004 WL 1876046, at *10 P 54.* The insurers' ability to honor [*6] the Manville policies, whether at full value or not, was also complicated by potential liability arising out of other asbestos litigation in which they were involved. *2004 Bankr. LEXIS 2519, [WL] at PP 54-57.*

> 1   We use the term "Travelers" to refer to Travelers Casualty and Surety Company, Travelers Property Casualty Corporation, and Travelers Indemnity Company, as well as their respective affiliates, predecessors, successors, assigns, officers, and directors. *See Manville III, 517 F.3d at 55 n.3.*

Between October 1983 and July 1984, in order "[t]o avoid the uncertainty of the insurance litigation and to fund its plan of reorganization, Manville sought to settle its insurance [coverage] claims." *Manville III, 517 F.3d at 56.* The result of these negotiations, which were admirably facilitated by the bankruptcy court, was a settlement that ultimately yielded over $ 850 million paid by the insurers to the Manville estate. *Id. at 56 & n.8.*

On May 25, 1984, Manville publicly announced that it had agreed in principle to a settlement of its insurance coverage disputes. Soon after the announcement, Manville and a group of insurers -- Travelers among them -- executed a settlement agreement (the "1984 [*7] Insurance Settlement Agreement").

> The settlement[ ] provided that, in exchange for cash payments [into a settlement fund], the insurers would be relieved of all obligations related to the disputed policies and the insurers would be protected from claims based on such obligations by injunctive orders of the Bankruptcy Court.

*MacArthur Co. v. Johns-Manville Corp., 837 F.2d 89, 90 (2d Cir. 1988).*

More specifically, the 1984 Insurance Settlement Agreement contained three parts. First, the Settling Insurers agreed that, if Manville voluntarily withdrew its claims in the insurance coverage disputes, they would make a series of payments into the Manville Personal Injury Settlement Trust ("Manville Trust"). *Manville III, 517 F.3d at 57.* [2] Travelers paid $ 80 million into the Manville Trust pursuant to the agreement. *Id.* Second, the agreement required that the order confirming Man-

ville's Chapter 11 reorganization would contain an injunction that: (1) channeled "solely" to the Manville Trust all "Policy Claims," which the agreement defined as "any and all claims . . . by any Person . . . based upon, arising out of or related to any or all of the Policies" at issue in the settlement; [3] and (2) barred [*8] "Policy Claims against any or all members of the Settling Insurer Group." Third, in order to resolve the asbestos-related claims that were to be channeled to the Manville Trust, the parties to the settlement agreed that compensation from the Manville Trust would only be available to claimants that executed "broad releases" of liability as to the Settling Insurers relating to "any and all claims . . . whether or not presently known . . . based upon, arising out of or related to the Policies." [4]

> 2   Chubb was not a party to the 1984 Insurance Settlement Agreement. Rather, the "Settling Insurers" were "The Travelers Indemnity Company on behalf of itself and each of its Affiliates, The Home Insurance Company on behalf of itself and each of its Affiliates and each Lloyd's Syndicate and British Company."
> 3   The full definition of "Policy Claims" in the 1984 Insurance Settlement Agreement was identical to the definition of that term in the orders that were ultimately entered by the bankruptcy court.
> 4   The administrators of the Manville Trust have used at least three different versions of this release, but the language relating to its scope has not been revised in a material fashion. *See Manville I, 2004 Bankr. LEXIS 2519, 2004 WL 1876046, at *16-17 PP 67-68 & n.5.* [*9]

On August 2, 1984, Manville sought the bankruptcy court's preliminary approval of the 1984 Insurance Settlement Agreement. Manville's submission stated that:

> The parties to the Agreement will request this Court to order that[,] because these [insurance] policies constitute property of the [Manville] estate under *Section 541* of the [Bankruptcy] Code . . ., the property be liquidated by this settlement, and that all claims by any person to the *res* be channeled to that liquidated fund, and that all persons be enjoined from suing the Settling Insurers because the property of the estate has been liquidated and will be in possession of the Court.

In a separate "Application" that was simultaneously submitted to the bankruptcy court, Manville proposed "notice and service procedures with respect to the Insur-

05-44481-rdd    Doc 20090-4    Filed 05/14/10    Entered 05/14/10 15:02:14    Exhibit
C-In re Johns-Manville Corp.    Pg 5 of 18

Page 4

2010 U.S. App. LEXIS 5877, *; Bankr. L. Rep. (CCH) P81,727;
52 Bankr. Ct. Dec. 266

ance Settlement Agreement and the hearing to be held by [the bankruptcy court] to consider the fairness and approval thereof." The Application proposed that notice of the settlement and hearing be provided by mail to several groups of "interested" parties, as well as by publication in approximately 91 newspapers throughout the United States and Canada. Manville indicated [*10] that the "supplemental" publication notice was appropriate "because of the 'channeling' mechanism and injunctive relief required by the proposed Insurance Settlement Agreement and the effect thereof on those who might assert an interest in the insurance policies and the Debtors' claims against the Settling [Insurers]."

In response to Manville's request, also on August 2, 1984, the bankruptcy court issued a "Notice of Hearing to Consider Approval of Compromise and Settlement of Insurance Litigation." The Notice stated:

> The proposed Insurance Settlement Agreement provides [that] . . . [a]n order of the Bankruptcy Court shall be obtained providing that all persons shall be restrained and enjoined from commencing and/or continuing any suit, arbitration or other proceeding of any type or nature for any and all claims, demands, allegations, duties, liabilities and obligations (whether or not presently known) which have been, or could have been, or might be asserted by any person against any and all the Settling [Insurers] based upon, arising out of or relating to any or all of the insurance policies . . . .

On August 14, 1984, shortly after beginning the approval process for the 1984 Insurance [*11] Settlement Agreement, the bankruptcy court appointed a Future Claims Representative ("FCR") to represent future asbestos claimants whose interest in the Manville Chapter 11 proceedings might vest after the settlement was approved and Manville's reorganization plan was confirmed. The bankruptcy court defined the class of "Future Claimants" as "those persons who have been exposed to asbestos or asbestos products mined, manufactured or supplied by Manville pre-petition and have manifested or will manifest disease post-petition and who are not otherwise represented in these proceedings." The court then appointed the FCR, "*nunc pro tunc* as of August 1, 1984," to represent the Future Claimants by "exercis[ing] the powers and perform[ing] the duties of a Committee under *Section 1103 of the Bankruptcy Code*."

Following the bankruptcy court's approval of notice procedures and the appointment of an FCR, it conducted

settlement-approval proceedings on an ongoing basis between 1984 and 1986. After receiving notice, several parties objected to the settlement. In one pertinent example, the "Committee of Asbestos-Related Litigants and/or Creditors" challenged the definition of "Policy Claims" in the [*12] 1984 Insurance Settlement Agreement:

> The [Settling] Insurers' breach of covenants of good faith and fair dealing and consumer protection statutes (*e.g., Calif. Insur. Code § 790.09*) clearly arise out of or relate to the Policies [at issue in the Settlement]
>
> . . .
>
> But these claims are not direct actions for proceeds; they are *independent* third party claims against the [Settling] Insurers which are not derivative of Manville's rights. The [Manville] Estate never has, or can ever have, any right in these claim proceeds, for they are not contractual -- they are personal rights which the victims have for the tortious conduct of the [Settling] Insurers.

(Reply Memorandum of the Asbestos Committee Opposing the Proposed Insurance Settlement Agreement on Legal Grounds, at 8-9 (May 13, 1985) (emphasis in original).) In support of this contention, the Committee asserted that "[i]t is well-established that the [Bankruptcy] Court has no jurisdiction . . . to grant the discharge of and injunction against these independent, nonderivative claims, as the [1984 Insurance Settlement] Agreement requires." (*Id.* at 10.)

In response to these and other objections to the settlement, the parties executed a letter [*13] agreement on June 3, 1985, which indicated that it was to operate as an amendment to the 1984 Insurance Settlement Agreement. One portion of the letter agreement stated:

> The Court has *in rem* jurisdiction over the Policies and thus the power to enter appropriate orders to protect that jurisdiction. The channeling order is intended *only* to channel claims against the *res* [of the Manville estate] to the Settlement Fund and the injunction is intended *only* to restrain claims against the *res (i.e.,* the Policies) which are or may be asserted against the Settling Insurers.

2010 U.S. App. LEXIS 5877, *; Bankr. L. Rep. (CCH) P81,727;
52 Bankr. Ct. Dec. 266

(emphasis added). The letters were executed by Travelers' counsel and indicated that "[t]he foregoing is confirmed on behalf of the Travelers Indemnity Company . . . and each of its Affiliates."

After conducting periodic hearings and conferences throughout 1984 and 1985, the bankruptcy court entered an order on September 26, 1985 that "approved pursuant to *Rule 9019* of the Rules of Bankruptcy Procedure" the 1984 Insurance Settlement Agreement "together with" the June 3, 1985 letter agreement. The order conditioned the final approval of the settlement on "the result of a hearing" that would resolve, *inter alia*, whether the "amounts [*14] paid in settlement fall within the range of reasonableness."

## 2. The Confirmation of the Manville Reorganization Plan and Approval of the 1984 Insurance Settlement Agreement

In August 1986, the bankruptcy court entered an order setting the procedures that would be followed to confirm the Manville Plan. The order directed Manville to provide notice of the confirmation proceedings pursuant to an August 22, 1986 "Plan of Notification" of the confirmation proceedings, which included a series of newspaper and television advertisements and a direct mailing to interested parties. The ongoing evidentiary hearing relating to the 1984 Insurance Settlement Agreement was concluded on November 19, 1986. Several parties filed additional objections to the Manville Plan itself, and the bankruptcy court conducted the last hearing relating to the Manville Plan on December 16, 1986. Two days later, on December 18, the bankruptcy court granted final approval to the 1984 Insurance Settlement Agreement (the "Insurance Settlement Order"), and it entered an order confirming the Manville Plan on December 22 (the "Confirmation Order," collectively, with the Insurance Settlement Order, the "1986 Orders").

The Insurance [*15] Settlement Order contained a series of provisions that were required by the terms of the 1984 Insurance Settlement Agreement in order to: (1) enjoin "Policy Claims" against Travelers and the other Settling Insurers; and (2) "channel" asbestos claimants with Policy Claims to the settlement proceeds housed in the Manville Trust. *See generally Manville I, 2004 Bankr. LEXIS 2519, 2004 WL 1876046, at *15 P 61.* The term "Policy Claims" was defined in the Order as

> any and all claims . . . (whether or not presently known) which have been, or could have been, or might be, asserted by any Person against any or all members of [Manville] or against any or all members of the Settling Insurer Group based upon,

arising out of or relating to any or all of the Policies.

A "channeling injunction" directed that Policy Claims were to be "transferred, and shall attach, solely" to the Manville Trust. The Insurance Settlement Order also provided the Settling Insurers with a release from all "duties or obligations based upon, arising out of or related to the Policies and . . . from any and all Policy Claims." Finally, the Order contained a permanent injunction that prohibited "all Persons . . . from commencing and/or continuing any [*16] suit . . . of any type or nature for Policy Claims against any or all members of the Settling Insurer Group."

The Confirmation Order incorporated by reference the Insurance Settlement Order, and this Court rejected challenges to both of the 1986 Orders on direct appeal in *MacArthur Co. v. Johns-Manville Corp., 837 F.2d 89, 94 (2d Cir. 1988).* Congress subsequently used the bankruptcy court's orders as a model to add a provision relating to channeling injunctions to the Bankruptcy Code. *See Manville III, 517 F.3d at 61* (citing *11 U.S.C. § 524(g)*). As of 2004, the Manville Trust had paid more than $ 3.2 billion to over 606,000 asbestos claimants. *See Bailey, 129 S. Ct. at 2199.*

### 3. The "Direct Actions"

Long after the 1986 Orders were entered by the bankruptcy court, asbestos claimants began to file claims against Travelers and other insurers in several states across the country. "Because many of the suits at issue [sought] to hold Travelers liable for independent wrongdoing rather than for a legal wrong by Manville, they [were] not direct actions in the terms of strict usage." *Bailey, 129 S. Ct. at 2200 n.2.* Nevertheless, we again use the phrase "Direct Actions," for purposes of simplicity, [*17] to describe these claims. *See Manville III, 517 F.3d at 55 n.4.* [5] Viewed broadly, they came in two flavors: (1) "Statutory Direct Actions" based on states' statutory regulation of insurance practices; and (2) "Common Law Direct Actions," in which it was alleged that Travelers and others violated "duties to disclose certain asbestos-related information [that they] learned" as asbestos-industry insurers. *Id. at 58.*

> 5  The claims brought pursuant to Louisiana's direct action statute, *La. Rev. Stat. 22:1269* (2009), are the only true direct actions resolved by the 2004 Direct Action Settlement. *See Manville III, 517 F.3d at 62-63* (citing *In re Davis, 730 F.2d 176 (5th Cir. 1984)* (per curiam)). There is no dispute that these actions are enjoined by the 1986 Orders.

2010 U.S. App. LEXIS 5877, *; Bankr. L. Rep. (CCH) P81,727;
52 Bankr. Ct. Dec. 266

In 2002, relying on the terms of the 1986 Orders, Travelers sought an injunction from the bankruptcy court against several then-pending Direct Actions. [6] The court issued a temporary restraining order and referred the matter to mediation before Mario Cuomo, former governor of New York. *Id.* The mediation ultimately allowed Travelers to reach a tripartite settlement -- the "2004 Direct Action Settlement" -- involving three categories [*18] of Direct Actions: the Common Law Direct Actions, the Statutory Direct Actions, and another set of Statutory Direct Actions separately referred to as the Hawaii Direct Actions.

> 6   Travelers' initial motion for a preliminary injunction related to Direct Actions in the state courts of Louisiana, Massachusetts, Texas, and West Virginia. In 2003, Travelers filed two similar motions for injunctions of Direct Actions in Texas and Ohio. *See Manville III, 517 F.3d at 58 & n.11.*

In November 2003, as part of the resolution of the Statutory Direct Actions, Travelers agreed to pay up to $ 360 million into a fund that would be used to compensate claimants with those sorts of claims. *Manville I, 2004 Bankr. LEXIS 2519, 2004 WL 1876046, at *22 P 96.* In May 2004, Travelers agreed to create a similar $ 70 million fund for present and future claimants in Common Law Direct Actions, as well as a $ 15 million fund for the plaintiffs in the Hawaii Direct Actions. *2004 Bankr. LEXIS 2519, [WL] at *22-23 PP 101, 105.* In order to gain access to the funds established by Travelers, which are separate from the Manville Trust created pursuant to the 1984 Insurance Settlement Agreement, the 2004 Direct Action Settlement required that claimants release Travelers from [*19] further liability "separate and apart from Travelers' protection under the 1986 Orders." *Bailey, 129 S. Ct. at 2200.* The Settlement was also conditioned upon the entry of a "Clarifying Order" by the bankruptcy court. The contemplated order was to state, in essence, that the Direct Actions "are, and have always been, prohibited by the 1986 [O]rders." *Manville III, 517 F.3d at 58.*

Travelers filed a motion seeking the bankruptcy court's approval of the Common Law Direct Action settlement in March 2004, and then sought approval of the latter two agreements in June of the same year. The bankruptcy court approved an extensive set of party-driven notice procedures, and conducted hearings on July 6 and August 17, 2004 to resolve objections to the settlement.

Among the objectors was Chubb, an asbestos-industry insurer that was one of Travelers' co-defendants in the Common Law Direct Actions but not a party to the 1984 Insurance Settlement Agreement. Through its ob-

jections, Chubb sought to preserve its ability to bring claims against Travelers for contribution and indemnity relating to their potential joint liability in the Common Law Direct Actions. *See Manville I, 2004 Bankr. LEXIS 2519, 2004 WL 1876046, at *33 P 33;* [*20] *see also Manville III, 517 F.3d at 60 n.17.* Chubb contended that the bankruptcy court lacked authority to enjoin it from doing so, and presented two principal arguments in support of its position. First, Chubb joined an argument presented by certain individual asbestos claimants that the bankruptcy court lacked subject matter jurisdiction to enjoin non-derivative claims against Travelers, a third-party non-debtor, in Manville's Chapter 11 proceedings. Second, Chubb asserted that Travelers was seeking injunctive relief that could not "constitutionally be applied" to it because, in the 1980s, Chubb "was in the position of a potential future claimant with no knowledge of its potential future claims [against Travelers] and for which no future claims representative . . . was appointed to protect its rights."

On August 17, 2004, the bankruptcy court issued "Findings of Fact and Conclusions of Law" in which it rejected, *inter alia*, Chubb's two-pronged challenge to the 2004 Direct Action Settlement. On the same day, the bankruptcy court entered the "Clarifying Order" that was contemplated by settlement (collectively, with the bankruptcy court's "Findings of Fact and Conclusions of Law," the [*21] "2004 Orders").

The 2004 Orders have three primary features that are relevant to these appeals. First, based on its fact finding that "Travelers learned virtually everything it knew about asbestos from its relationship with Manville," the bankruptcy court "clarifie[d]" that all of the Direct Actions "are within the scope of the [1986 Orders'] prohibitions, and are -- and always have been -- permanently barred." *Manville I, 2004 Bankr. LEXIS 2519, 2004 WL 1876046, at *30 P 19.* Second, the bankruptcy court rejected Chubb's arguments that it was "unauthorized to bar the contribution or indemnity claims [Chubb] may have against Travelers." *2004 Bankr. LEXIS 2519, [WL] at *33 P 33.* It reasoned that those claims, too, were barred by the 1986 Orders, and that a "Judgment Reduction Provision" in the 2004 Orders "protects the interests of non-settling defendants in the direct action claims so completely as to render their objections to the settlements moot." *2004 Bankr. LEXIS 2519, [WL] at *34 P 38; see also 2004 Bankr. LEXIS 2519, [WL] at *33-34 PP 34-35.* [7] Finally, in response to claims by what it deemed "creative plaintiffs," the bankruptcy court approved a "Gate-keeping" Provision that "vest[ed] the initial determination regarding whether an asbestos suit against Travelers will violate [*22] the [1986 and 2004] orders" with the bankruptcy court rather than the court in which the claims were filed. *2004 Bankr. LEXIS 2519,*

05-44481-rdd   Doc 20090-4   Filed 05/14/10   Entered 05/14/10 15:02:14   Exhibit
C-In re Johns-Manville Corp.   Pg 8 of 18

Page 7

2010 U.S. App. LEXIS 5877, *; Bankr. L. Rep. (CCH) P81,727;
52 Bankr. Ct. Dec. 266

*[WL] at \*35 PP 42, 44; see generally 2004 Bankr. LEXIS 2519, [WL] at \*34-35 PP 39-44.*

7   The Judgment Reduction Provision states that:

> Any judgment obtained against . . . any objecting insurer [*e.g.*, Chubb] . . . regardless of whether such Insurer was a settling Manville insurer [in 1986], with respect to any claim asserted in any lawsuit that is enjoined as to Travelers and not enjoined as to said Insurer shall be reduced by the greater of: (a) the amount (if any) the Claimant has recovered or is entitled to recover from the [Direct Action Settlement] Fund . . . to the extent that the Insurer is entitled to such a reduction for that amount under the applicable state law; or (b) to the extent permitted under the applicable state law, the amount or percentage (up to 100%) that the Insurer would have been able to recover from Travelers, whether by contribution, indemnity or otherwise under applicable state law, had Travelers been joined in said lawsuit and/or sued for indemnity and/or contribution in a separate lawsuit.

## B. Procedural History

Two groups of parties appealed the bankruptcy court's 2004 Orders to   [*23] the district court: (1) a number of insurers that included Chubb; and (2) asbestos claimants separately referred to as the Asbestos Personal Injury Plaintiffs and the Cascino Asbestos Claimants (collectively, the "Objecting Plaintiffs"). [8] *See Manville II*, 340 B.R. at 55. The district court affirmed the bankruptcy court's 2004 Orders in all respects except as to the Gate-keeping Provision.

8   The parties comprising the Asbestos Personal Injury Plaintiffs and the Cascino Asbestos Claimants were discussed in our prior decision, and those terms have the same meaning here. *See Manville III, 517 F.3d at 55* nn.1-2. Although the groups filed separate opening briefs prior to *Manville III*, the Cascino Asbestos Claimants declined to file supplemental briefing following the Supreme Court's remand and did not present ad-

ditional oral argument. Unless otherwise stated, we find the substance of their remaining arguments to be materially indistinguishable from those of the Asbestos Personal Injury Plaintiffs.

The bulk of the district court's decision related to the Objecting Plaintiffs' argument that "the injunction in the [2004] Clarifying Order is broader than the 1986 Orders, and that, even if the   [*24] 1986 Orders contemplated Direct Action Suits, the Bankruptcy Court had no jurisdiction in 1986 to bar such suits." *Id. at 59*. The district court rejected this contention for three reasons. First, the court agreed with the bankruptcy court that the language of the 1986 Orders barred all of the Direct Actions. *See id. at 61*. Second, emphasizing the bankruptcy court's factual findings relating to Travelers' relationship with Manville and the nature of the Direct Actions, it held that "the Bankruptcy Court had jurisdiction over Travelers' insurance policies, and could act to protect them from dissipation by direct action claims by enjoining those claims and channeling them into the Manville Trust." *Id. at 63*. Third, the district court concluded that it was "unlikely" that the 2004 Orders "impermissibly bar[ ] suits involving Travelers' conduct with respect to insureds other than Manville and asbestos injury completely unrelated to Manville." *Id. at 65*. Based on that reasoning, the district court held that the bankruptcy court had "subject matter jurisdiction to enjoin the Direct Action Suits pursuant to the 1986 Orders and the Clarifying Order." *Id. at 67*.

The district court also rejected   [*25] Chubb's argument that it could not be bound by the 1986 Orders. *See id. at 68*. The court held that, because Chubb was a "sophisticated insurer with asbestos-related insurance policies," the bankruptcy court's August 2, 1984 Notice relating to the 1984 Insurance Settlement Agreement "should have put Chubb . . . on notice with regards to whatever asbestos-related claims it may have against Travelers and the other settling insurers." *Id.*

The district court also rejected Chubb's reliance on *Amchem Products, Inc. v. Windsor, 521 U.S. 591, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997)* and *Ortiz v. Fibreboard Corp., 527 U.S. 815, 119 S. Ct. 2295, 144 L. Ed. 2d 715 (1999)*. The court reasoned that, "[u]nlike the class action settlements in *Amchem* and *Ortiz*," which involved exercises of *in personam* jurisdiction over asbestos manufacturers, "the injunction here is based on the Bankruptcy Court's *in rem* power over the Manville estate." *Manville II, 340 B.R. at 68-69*. Thus, in the district court's view, "there is an exception to the due process concerns raised by Chubb" because the bankruptcy code creates "'a special remedial scheme'" that allows for the foreclosure of "'successive litigation by nonlitigants.'" *Id. at 68* (quoting *Ortiz, 527 U.S. at 846*).

2010 U.S. App. LEXIS 5877, *; Bankr. L. Rep. (CCH) P81,727;
52 Bankr. Ct. Dec. 266

The district court [*26] reached a different conclusion, however, with respect to the Gate-keeping Provision in the 2004 Orders. The court reasoned that, while the bankruptcy court possessed contempt authority to sanction litigants that violated the 1986 Orders, it lacked "jurisdiction to screen, in the first instance, suits against a non-debtor that purport to assert claims unrelated to the debtor or the estate." *Id. at 66.*

Following the district court's decision, Chubb, One-Beacon America Insurance Company, Continental Casualty Company, [9] and the Objecting Plaintiffs appealed to this Court. [10] In *Manville III,* we focused on whether the bankruptcy court possessed subject matter jurisdiction "to enjoin the Direct Action Claims against Travelers." *Manville III, 517 F.3d at 65.* In finding that it did not, we reasoned that "clarification cannot be used as a predicate to enjoin claims over which [the bankruptcy court] had no jurisdiction." *Id. at 61.* In light of Travelers' in-court concession that "both the statutory and common law [direct action] claims seek damages . . . that are unrelated to the policy proceeds" that are part of Manville's bankruptcy estate, we criticized the jurisdictional analysis undertaken [*27] below for its failure to analyze separately the state-law legal duties that serve as the basis for the various types of Direct Actions. *See id. at 63, 67* (emphasis omitted). In that regard, we distinguished between true "direct action[s] against an insurer when the insured is insolvent," and claims that "seek to recover directly from the debtor's insurer for the insurer's own independent wrongdoing." *Id. at 64-65.* While we concluded that the 2004 Orders were "on sound jurisdictional ground" to the extent that they "clarified" that the former type of claims was enjoined, *id. at 64* (citing Louisiana's direct action statute), we held that the bankruptcy court lacked jurisdiction to enjoin claims that "aim to pursue the assets of Travelers" and "make no claim against an asset of the bankruptcy estate." *Id. at 65; see also Bailey, 129 S. Ct. at 2208-09* (Stevens, J., dissenting) ("Recognizing the distinction between insurer actions and independent actions, the Court of Appeals held that the Bankruptcy Court had improperly enjoined the latter in its 2004 order."). In short, we concluded that "a bankruptcy court only has jurisdiction to enjoin third-party non-debtor claims that directly affect [*28] the *res* of the bankruptcy estate." *Manville III, 517 F.3d at 66.* As such, we held that the bankruptcy court erred by using the 2004 Orders as a "jurisdictional bootstrap" to enjoin non-derivative claims against Travelers, a non-debtor, that did not seek to collect from Manville's bankruptcy estate. *Id. at 68.*

---

9    OneBeacon America Insurance Company and Continental Casualty Company withdrew their appeals prior to our decision in *Manville III. See* Dkt. Nos. 06-2099-bk, 06-2105-bk.

10    Travelers also filed an untimely appeal challenging the district court's vacatur of the Gate-keeping Provision. *See* Dkt. No. 06-2320-bk. "Acknowledging its tardiness in filing its notice of cross-appeal, Travelers [also] filed with the District Court a motion to extend by one day the time allotted to file a notice of cross-appeal," pursuant to *Federal Rule of Appellate Procedure 4(a)(5)(A). In re Johns-Manville Corp., 476 F.3d 118, 120 (2d Cir. 2007).* The district court denied Travelers' motion, and Travelers appealed that decision as well. *See* Dkt. No. 06-3317-bk. In a consolidated opinion, we affirmed the district court's denial of Travelers' motion for an extension of time and dismissed as untimely Travelers' [*29] cross-appeal. *In re Johns-Manville Corp., 476 F.3d at 124.* Consequently, the district court's ruling regarding the Gate-keeping Provision is not before us.

The Supreme Court granted certiorari and reversed *Manville III* in *Bailey.* The *Bailey* Court characterized appellants' jurisdictional argument as an impermissible collateral attack, and held that the 1986 Orders mean what they say. The Court reasoned that the Direct Actions -- and, presumably, claims by Chubb against Travelers for contribution and indemnity -- are "Policy Claims" under the 1986 Orders. *See Bailey, 129 S. Ct. at 2203.* This point was "drive[n] home" by the bankruptcy court's undisputed factual findings relating to the extent of the knowledge that Travelers obtained from Manville during their insurer-insured relationship. *Id.* The Court acknowledged that there are "certainly . . . statements in the record" indicating that "some parties to the Manville bankruptcy (including Travelers) understood the proposed [1986] injunction to bar only claims derivative of Manville's liability," but nevertheless held that the "plain terms" of the 1986 Orders "unambiguously" bar the Direct Actions. *Id. at 2204.* The 1986 Orders, in turn, [*30] "became final on direct review over two decades ago" following *MacArthur Co. v. Johns-Manville Corp., 837 F.2d 89, 90 (2d Cir. 1988). Bailey, 129 S. Ct. at 2203.* The Court then held that the bankruptcy court's jurisdiction to enter the 1986 Orders was not subject to collateral attack in these proceedings by parties who were bound by the previous Orders, and that the 2004 Orders were a proper exercise of the bankruptcy court's authority to interpret the 1986 Orders. *See id. at 2203.*

The Supreme Court characterized *Manville III* as having undertaken a "different jurisdictional inquiry" relating to whether the bankruptcy court "had exceeded its jurisdiction when it issued the orders in 1986." *Id. at 2205.* This, the Court reasoned, was error:

05-44481-rdd    Doc 20090-4    Filed 05/14/10    Entered 05/14/10 15:02:14    Exhibit
C-In re Johns-Manville Corp.    Pg 10 of 18

Page 9

2010 U.S. App. LEXIS 5877, *; Bankr. L. Rep. (CCH) P81,727;
52 Bankr. Ct. Dec. 266

[O]nce the 1986 Orders became final on direct review (whether or not proper exercises of bankruptcy court jurisdiction and power), they became *res judicata* to the "parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose."

*Id. at 2205* (quoting *Nevada v. United States, 463 U.S. 110, 130, 103 S. Ct. 2906, 77 L. Ed. 2d 509 (1983)).* [*31] The *Bailey* Court emphasized, however, that its holding was "narrow." *Id. at 2207.* First, "owing to the posture of this litigation," the Court "[did] not resolve whether a bankruptcy court, in 1986 or today, could properly enjoin claims against nondebtor insurers that are not derivative of the debtor's wrongdoing." *Id.* Second, it declined to "decide whether any particular [party] is bound by the 1986 Orders," and instructed us to address Chubb's due process argument and other properly preserved objections raised in these appeals. *Id.*

On remand, we accepted supplemental briefing from the parties and conducted another oral argument. On October 21, 2009, on the eve of the second argument, the Objecting Plaintiffs voluntarily withdrew their challenges to the portions of the 2004 Direct Action Settlement relating to the Statutory Direct Actions (including the Hawaii Direct Actions). Remaining to be resolved, then, are the preserved objections -- including those of Chubb -- to the portion of the 2004 Direct Action Settlement relating to the Common Law Direct Actions.

## II. DISCUSSION

In an appeal from a district court order affirming a decision of the bankruptcy court, we perform an independent, [*32] *de novo* review of the bankruptcy court's conclusions. *E.g., O'Rourke v. United States, 587 F.3d 537, 540 (2d Cir. 2009).* The remaining appeals present one primary question: whether it would offend the *Due Process Clause* to enforce the 1986 Orders against the Objecting Plaintiffs and Chubb. The Objecting Plaintiffs forfeited this argument by failing to raise it in their direct appeals from the district court's decision. Chubb, however, has raised this objection consistently from the outset, and we conclude that it would be inconsistent with fundamental notions of due process to bind Chubb to the 1986 Orders. Accordingly, for the reasons set forth below, we reverse as to Chubb but affirm as to the Objecting Plaintiffs.

### A. The Objecting Plaintiffs

The Objecting Plaintiffs argue on remand that they were not adequately represented at the proceedings that led to the entry of the 1986 Orders, and therefore they are not bound by the bankruptcy court's 2004 interpretation of those Orders. This contention has been forfeited, however, because the Objecting Plaintiffs have raised it for the first time after the Supreme Court's remand. *See Sniado v. Bank Austria AG, 378 F.3d 210, 213 (2d Cir. 2004).* [*33] Generally speaking, of course, this waiver principle is prudential rather than jurisdictional. *Id.* Nevertheless, we lack the authority to reach the merits of this due process question because the Supreme Court instructed us to address only properly preserved arguments on remand. *See Bailey, 129 S. Ct. at 2207.* In other words, the Supreme Court itself decided, in its discretion, that forfeited arguments should not be considered. As a result, because the Objecting Plaintiffs failed to raise this argument in their initial appeals, and because it would be inconsistent with the terms of the Supreme Court's remand instructions to reach it now, we hold that this argument by the Objecting Plaintiffs has been forfeited.

The Asbestos Personal Injury Plaintiffs have preserved a narrower objection couched in terms of due process. In their opening appellate brief, they argued that the bankruptcy court employed an improperly "truncated" approval process in 2004 relating to the Direct Action Settlement, which "[did] not meet due process standards as enunciated by the United States Supreme Court." They further contended that the "expedited approval" of the 2004 Direct Action Settlement did not "allow[ [*34] ] them an opportunity to 'weigh in' on the proposed settlement."

These assertions are meritless. In *MacArthur*, for example, we rejected an argument that due process required that an objector to the 1984 Insurance Settlement Agreement receive notice of the settlement negotiations *before* terms were reached by the parties to the agreement. *See MacArthur, 837 F.2d at 94.* We did so because the appellant was "provided with notice and a hearing before the settlements were approved by the Bankruptcy Court." *Id.* The same is true here. The terms of a settlement regarding the Common Law Direct Actions were reached in May 2004 as a result of the mediation conducted by Governor Cuomo; on June 9, 2004, the bankruptcy court approved extensive notice procedures relating to the settlement-approval process; and the bankruptcy court conducted fairness hearings -- at which the Objecting Plaintiffs were represented -- on July 6 and August 17, 2004. *See Manville I, 2004 Bankr. LEXIS 2519, 2004 WL 1876046, at *22 P 101, *84 P 116, *30 P 15.* Under these circumstances, we find no basis in the record for the Asbestos Personal Injury Plaintiffs' assertion that the *Due Process Clause* required more. We therefore reject this narrower due [*35] process argu-

ment as well, and hold that all of the Objecting Plaintiffs are bound by the bankruptcy court's 2004 interpretation of the 1986 Orders.

## B. Chubb

In the proceedings that led to the entry of the 2004 Orders, Chubb objected to the Direct Action Settlement on the grounds that: (1) the bankruptcy court lacked subject matter jurisdiction to bar its contribution and indemnity claims against Travelers, and (2) it could not, as a matter of due process, be bound to the 1986 Orders' terms. Both the bankruptcy court and the district court rejected these arguments, albeit for different reasons. Chubb raised the same due process contention before this Court in its opening appellate brief, but we did not reach the issue in *Manville III. See 517 F.3d at 60 n.17.* In light of the *Bailey* Court's remand instructions, we must address this due process question now.

The significance of this issue must be understood in light of the Supreme Court's opinion and our earlier opinion. The Supreme Court did not decide whether the bankruptcy court had jurisdiction to issue the broad orders that it did in 1986. We had held in *Manville III* that the bankruptcy court exceeded its jurisdiction in issuing those [*36] orders, at least as those orders were interpreted in the 2004 Orders. But the bankruptcy court's error did not matter as far as the Supreme Court was concerned, because most of the litigants, having failed to raise that claim of error at the time of the 1986 Orders, were, the *Bailey* Court held, barred from raising it later on. The same would be true of Chubb if the 1986 Orders properly bound Chubb. If, instead, the 1986 Orders could not bind Chubb because such a holding would violate due process, then Chubb may challenge the bankruptcy court's jurisdiction. And that challenge would necessarily be successful in our Court, pursuant to our holding in *Manville III* -- which the Supreme Court neither embraced nor assailed -- that the bankruptcy court exceeded its subject matter jurisdiction in issuing the 1986 Orders (as interpreted).

With that context, we proceed to the question at hand. For the following reasons, we hold that both the bankruptcy court and the district court erred in rejecting Chubb's due process argument. Chubb, therefore, is permitted to challenge the bankruptcy court's jurisdiction to issue the 1986 Orders. And, because we adhere to our holding in *Manville III* that the [*37] bankruptcy court exceeded its jurisdiction in 1986, it follows that Chubb is not bound by the terms of the 1986 Orders.

### 1. The Bankruptcy Court's Ruling in *Manville I*

The bankruptcy court treated Chubb's arguments as a generalized assertion that the court was "unauthorized to bar the contribution or indemnity claims [Chubb] may

have against Travelers." *Manville I, 2004 Bankr. LEXIS 2519, 2004 WL 1876046, at *33 P 33.* The court offered two reasons for rejecting Chubb's position. First, it reasoned that the contribution and indemnity claims at issue -- like the Direct Actions -- were barred by the terms of the 1986 Orders. *See 2004 Bankr. LEXIS 2519, [WL] at *33-34 PP 34-35.* Second, the bankruptcy court held that the Judgment Reduction Provision in the 2004 Orders not only "enforces the [1986 Orders] by clarifying that Policy Claims arising from Travelers['] alleged conduct may not be surreptitiously collected by [Direct Action plaintiffs] from other insurers," but also "protects the interests of non-settling defendants in the direct action claims so completely as to render their objections to the settlements moot." *2004 Bankr. LEXIS 2519, [WL] at *34 PP 36, 38.* We are not persuaded.

With respect to due process, it is of no moment whether the terms of the 1986 [*38] Orders have been, in effect, read by the bankruptcy court to bar Chubb's claims. Put differently, the text of the orders that were ultimately entered in 1986 does not speak to whether Chubb was afforded due process during the proceedings that led to the entry of those orders in the first place. In reasoning otherwise, and by grouping together what should have been distinct inquiries regarding subject matter jurisdiction and Chubb's due process rights, the bankruptcy court put the proverbial cart before the horse by assuming that Chubb was bound by the 1986 Orders. The Supreme Court impliedly recognized this by remanding to us the due process question.

Similarly deficient is the bankruptcy court's reference to the Judgment Reduction Provision in the 2004 Orders. This provision neither "completely" protects Chubb's due process rights with respect to the entry of the 1986 Orders, nor renders Chubb's objection "moot." *2004 Bankr. LEXIS 2519, [WL] at *3 P 38.* Relying on the 2004 Judgment Reduction Provision as an enforcement mechanism for the 1986 Orders -- like the bankruptcy court's emphasis of the terms of the 1986 Orders -- ignores, rather than addresses, Chubb's due process argument. Indeed, the Judgment Reduction [*39] Provision is only relevant to the extent that the 1986 Orders actually prohibit Chubb from bringing non-derivative claims against Travelers for contribution and indemnity. Chubb contests this premise; the issue is therefore whether Chubb may be bound at all by the 1986 Orders, whatever their meaning. With respect to that contention, it is beside the point that the 2004 Orders "enforc[e]" the 1986 Orders, *2004 Bankr. LEXIS 2519, [WL] at *34 P 38,* or that the Judgment Reduction Provision may in some circumstances ameliorate Chubb's liability exposure in the Common Law Direct Actions. [ ] We therefore hold that the bankruptcy court erred by relying on the

05-44481-rdd    Doc 20090-4    Filed 05/14/10    Entered 05/14/10 15:02:14    Exhibit
C-In re Johns-Manville Corp.    Pg 12 of 18

Page 11

2010 U.S. App. LEXIS 5877, *; Bankr. L. Rep. (CCH) P81,727;
52 Bankr. Ct. Dec. 266

terms of the 1986 Orders and the 2004 Judgment Reduction Provision to reject Chubb's due process argument.

11  Assuming, *arguendo*, that the Judgment Reduction Provision could affect Chubb at all, the bankruptcy court also erred by suggesting that the Provision "completely" protects Chubb's "interests." *Manville I, 2004 Bankr. LEXIS 2519, 2004 WL 1876046, at *34 P 38*. The Provision contemplates two methods of calculating judgment reduction: (1) the *pro tanto* method, *see, e.g., Singer v. Olympia Brewing Co., 878 F.2d 596, 600 (2d Cir. 1989)*; and (2) reducing the value of a judgment against [*40] a non-settling insurer by the amount of Travelers' proportionate share of liability. The Provision, however, makes the availability of these judgment-reduction methods a function of "applicable state law." Some states permit only *pro tanto* judgment reduction. *See Manville II, 340 B.R. at 72* (citing West Virginia, Ohio, and Massachusetts as examples). In such states, any judgment against Chubb in a claim enjoined as to Travelers could only be reduced by the amount that the plaintiff was entitled to receive from the settlement funds established by the 2004 Orders, regardless of Travelers' actual proportion of the liability. *See Gerber v. MTC Elec. Techs. Co., 329 F.3d 297, 303 (2d Cir. 2003); Singer, 878 F.2d at 600*. As Chubb points out, if the settlement funds are exhausted, then the plaintiff in question would not be entitled to receive any compensation from the 2004 Direct Action Settlement. Under such circumstances, the Judgment Reduction Provision would be virtually meaningless to a non-settling insurer named as a Direct Action defendant in a state where only *pro tanto* judgment reduction is available. *See Manville II, 340 B.R. at 72*. As such, the Provision does not "completely" [*41] protect Chubb's financial exposure, much less its due process rights.

## 2. The District Court's Ruling in *Manville II*

Perhaps in recognition of the difficulties with the bankruptcy court's analysis, the district court analyzed Chubb's due process argument independently and rejected it on three grounds. *See Manville II, 340 B.R. at 68-69*. The court's reasoning was based on our prior holding in *MacArthur*, the nature of Chapter 11's "special remedial scheme," *Ortiz, 527 U.S. at 846*, and the bankruptcy court's August 2, 1984 Notice of Hearing to Consider Approval of Compromise and Settlement of Insurance Litigation. *See Manville II, 340 B.R. at 68-69*. We consider each in turn.

First, *MacArthur* is inapposite. Chubb was not a party to the 1986 proceedings and there is no indication in the record of a privity relationship between Chubb and any of the actual parties. [12] As a result, Chubb's due process argument cannot be rejected on *res judicata* grounds. *See, e.g., Bailey, 129 S. Ct. at 2205* (reasoning that a final decision is entitled to *res judicata* effect only as to "the parties and those in privity with them" (internal quotation omitted)); *cf. Stephenson v. Dow Chem. Co., 273 F.3d 249, 257 (2d Cir. 2001)* [*42] ("The injunction was part and parcel of the judgment that plaintiffs contend failed to afford them adequate representation. If plaintiffs' inadequate representation allegations prevail, as we so conclude, the judgment, which includes the injunction on which defendants rely, is not binding as to these plaintiffs."), *vacated in part and remanded, 539 U.S. 111, 112. 123 S. Ct. 2161, 156 L. Ed. 2d 106 (2003)*.

12  Although Travelers' arguments focused on publication notice, it also briefly argued that Chubb had actual notice of the proceedings. In the supplemental brief submitted to this Court following the Supreme Court's remand, Travelers asserted that (1) Pacific Indemnity Company was a wholly owned subsidiary of Chubb that was a party to the insurance coverage disputes in the California state courts, and (2) Chubb received actual notice of the 1986 Orders because the August 2, 1984 Notice document was sent to Pacific Indemnity Company. In an October 26, 2009 post-argument submission, however, Travelers conceded that "[a] direct corporate relationship between [Chubb] and Pacific Indemnity Company . . . may not have existed." Travelers also failed to provide any legal authority for its position. In light of these concessions, [*43] and because we, too, are unaware of any authority supporting Travelers' contention, we reject this actual-notice argument.

Nor does the "law of the case" doctrine foreclose Chubb's due process argument. This doctrine "directs a court's discretion, it does not limit the tribunal's power." *Arizona v. California, 460 U.S. 605, 618, 103 S. Ct. 1382, 75 L. Ed. 2d 318 (1983)*. Because *MacArthur* is readily distinguishable, it does not affect the result here. In *MacArthur*, the appellant asserted that "it was denied due process of law because it received notice of the insurance settlements only after the settlements had been negotiated." *MacArthur, 837 F.2d at 94*. Here, Chubb asserts that it received *no notice at all* of the 1986 Orders or the pre-confirmation fairness hearings relating to the 1984 Insurance Settlement Agreement. Moreover, the party objecting to the settlement in *MacArthur* participated in the proceedings that led to the entry of the 1986 Orders and was well aware of its interest in the matter at

that time. In contrast, Travelers forthrightly acknowledged to the bankruptcy court in 2004 that the Direct Actions -- and, consequently, Chubb's contribution and indemnity claims -- were "unimaginable" at the time the [*44] 1986 Orders were entered. Finally, in *MacArthur*, the appellant's "rights as an insured vendor [were] *completely derivative* of Manville's rights as the primary insured" on the insurance policies at issue. *Id. at 92* (emphasis added); *see also Manville III, 517 F.3d at 62* (noting that, in *MacArthur*, we "reason[ed] that the 1986 orders precluded suits against a significant asset of the bankruptcy estate -- Manville's insurance policies -- and that MacArthur's coverage claim clearly affected that asset" (footnote omitted)). Chubb, however, seeks to preserve its rights against a non-debtor relating to funds that are not part of Manville's bankruptcy estate. Therefore, the discretionary "law of the case" doctrine does not counsel us to affirm based on our prior holding in *MacArthur*.

In addition to its citation to *MacArthur*, the district court offered two more reasons for its rejection of Chubb's due process argument. The court reasoned that there is "an exception to the due process concerns raised by Chubb 'where a special remedial scheme exists expressly foreclosing successive litigation by nonlitigants, as for example in bankruptcy or probate.'" *Manville II, 340 B.R. at 68* (quoting *Ortiz, 527 U.S. at 846*). [*45] It also held that the publication notice issued in 1984 was sufficient to "put Chubb . . . on notice with regards to whatever asbestos-related claims it may have against Travelers and the other settling insurers." *Id.* To consider the merits of this reasoning, we must begin with an examination of the Direct Actions, Chubb's claims against Travelers for contribution and indemnity, and the 1986 Orders as they were interpreted by the bankruptcy court in 2004.

The gravamen of the Common Law Direct Actions, as the bankruptcy court acknowledged, is that "the insurance industry as a whole had a duty to warn the general public about the dangers of asbestos." *Manville III, 517 F.3d at 60 n.17* (citing *Manville I, 2004 Bankr. LEXIS 2519, 2004 WL 1876046, at *19-21*); *see also id. at 58* (describing the Common Law Direct Actions). The first time that this case was before us, Travelers "candidly admit[ted]" that these actions "seek damages from Travelers that are *unrelated* to the policy proceeds" that are assets of Manville's Chapter 11 estate. *Id. at 63* (emphasis in original). Relatedly, we pointed out that the Direct Actions were "quite unlike the claims in *MacArthur*," and that they did not "seek to collect on the basis [*46] of Manville's conduct." *Id.* The Supreme Court made similar observations in *Bailey*: "It is undisputed that many of the [Direct Action] plaintiffs seek to recover from Travelers, not indirectly for Manville's wrongdoing,

but for Travelers' own alleged violations of state law," and "many of the suits at issue seek to hold Travelers liable for independent wrongdoing rather than for a legal wrong by Manville." *Bailey, 129 S. Ct. at 2200 & n.2.* In short, whatever the text of the 1986 Orders, many of the Direct Actions referenced in the bankruptcy court's 2004 Orders do not seek to collect from the *res* of Manville's Chapter 11 bankruptcy estate.

Chubb's contribution and indemnity claims are similar in this regard. *See Manville III, 517 F.3d at 60 n.17.* Chubb has been named as a defendant, along with other asbestos-industry insurers, in the sort of Common Law Direct Actions that the bankruptcy court held are barred against Travelers by the 1986 Orders. *See Bailey, 129 S. Ct. at 2202 n.3.* Chubb, like the plaintiffs in the Direct Actions, does not seek to collect from the proceeds of the policies that Travelers issued to Manville. Rather, Chubb seeks to preserve its ability to collect from Travelers [*47] itself -- through state-law claims for contribution and indemnity -- a portion of any liability that might be imposed on "the insurance industry as a whole" in the Common Law Direct Actions. *Manville III, 517 F.3d at 60 n.17.* These claims, like the vast majority of the Direct Actions, are not derivative of Manville's liability and do not seek to collect from the *res* of the Manville estate.

In *Manville III*, we held that the bankruptcy court lacked subject matter jurisdiction to enjoin such claims against non-debtor Travelers in Manville's Chapter 11 proceedings. "[A] bankruptcy court only has jurisdiction to enjoin third-party non-debtor claims that directly affect the *res* of the bankruptcy estate." *Id. at 66.* Our reasoning was straightforward. The bankruptcy court's power derives, in part, from statutes enacted by Congress. *See In re Combustion Eng'g, Inc., 391 F.3d 190, 225 (3d Cir. 2004)* ("[T]he exercise of bankruptcy power must be grounded in statutory bankruptcy jurisdiction."). In the bankruptcy code, "Congress has granted the . . . courts expansive bankruptcy jurisdiction to adjudicate claims against a debtor's estate." *In re Millenium Seacarriers, Inc., 419 F.3d 83, 92 (2d Cir. 2005).* [*48] This jurisdiction is *in rem* in nature; it "permits a determination of all claims that 'anyone, whether named in the action or not, has *to the property* or thing in question.'" *Id.* (emphasis added) (quoting *Tenn. Student Assistance Corp. v. Hood, 541 U.S. 440, 448, 124 S. Ct. 1905, 158 L. Ed. 2d 764 (2004)).*

In this case, the "thing in question" is the Manville bankruptcy estate, and the insurance policies that Travelers issued to Manville are the estate's most valuable asset. *See MacArthur, 837 F.2d at 94.* In *Manville III*, we held that the bankruptcy court's *in rem* jurisdiction was insufficient to allow it to enjoin Direct Actions based on state-law legal theories that seek to impose liability on Travelers as a separate entity rather than on the policies

05-44481-rdd   Doc 20090-4   Filed 05/14/10   Entered 05/14/10 15:02:14   Exhibit
C-In re Johns-Manville Corp.   Pg 14 of 18

Page 13

2010 U.S. App. LEXIS 5877, *; Bankr. L. Rep. (CCH) P81,727;
52 Bankr. Ct. Dec. 266

that it issued to Manville. Although we focused on the Direct Actions in our analysis, Chubb's contribution and indemnity claims against Travelers are functionally identical in this respect.

In *Bailey*, the Supreme Court reversed *Manville III* on "narrow" grounds. *Bailey, 129 S. Ct. at 2207.* The *Bailey* Court did not contradict the conclusion of our jurisdictional inquiry. *See id.* ("We do not resolve whether a bankruptcy court, in 1986 or today, could properly enjoin claims [*49] against nondebtor insurers that are not derivative of the debtor's wrongdoing."). Instead, it held that the jurisdictional issue was not subject to collateral attack. Following direct review in *MacArthur*, the 1986 Orders "became *res judicata* to the parties and those in privity with them . . . as to any . . . admissible matter [that] might have been offered" to defeat the bankruptcy court's entry of the *1986 Orders. Id. at 2205* (internal quotation marks omitted). The *Bailey* Court's holding was grounded in the "practical necessit[ies]" served by *res judicata* and principles of finality. *Id. at 2206.* These necessities were dispositive as to the parties to the 1986 proceedings "and those in privity with them," "*whether or not* [the 1986 Orders were] proper exercises of bankruptcy court jurisdiction and power." *Id. at 2205, 2206* (emphasis added).

On remand, we remain persuaded that the 1986 Orders, as interpreted in 2004, exceed the bounds of the bankruptcy court's *in rem* jurisdiction. In 2004, the bankruptcy court interpreted the 1986 Orders to enjoin not only claims that are directed at the Travelers insurance policies in the *res* of the Manville estate, but also nonderivative claims by [*50] Chubb that seek to impose liability on Travelers separately. The bankruptcy court, in essence, interpreted the 1986 Orders to have an *in personam* effect. [13] Tellingly, although Congress codified a version of the bankruptcy court's 1986 channeling injunction at *11 U.S.C. § 524(g), see Manville III, 517 F.3d at 67,* the statute does not authorize injunctions of these sorts of claims against non-debtor third parties. Rather, *section 524(g)* only "limits the situations where a channeling injunction may enjoin actions against third parties to those where a third party has derivative liability for the claims against the debtor." *In re Combustion Eng'g, Inc., 391 F.3d at 234; see also id. at 235 n.47.* Nevertheless, under *Bailey*, the parties who were present or represented in the proceedings that led to the entry of the 1986 Orders are barred from collaterally attacking the bankruptcy court's 2004 interpretation. But that cannot be so as to Chubb, if making it subject to the 1986 Orders would violate due process. As a result, our due process analysis must take into account the *in personam* manner in which the 1986 Orders were interpreted by the bankruptcy court in 2004. Viewed from this perspective, [*51] the district court's reasoning unravels.

13  When a court exercises *in personam* authority, it addresses a claim for liability, such as one involving a claim for money damages, against a particular party. *See Restatement (Second) of Judgments § 2 cmt. b, at 36-37; Black's Law Dictionary 930 (9th ed. 2009)* (defining "personal jurisdiction"); *see also Ret. Sys. of Ala. v. J.P. Morgan Chase & Co., 386 F.3d 419, 426 (2d Cir. 2004)* ("[A]n *in personam* action involves a controversy over liability rather than over possession of a thing."). In contrast, the bankruptcy court's *in rem* authority is, for the most part, limited to the resolution of claims against the property in the bankruptcy estate. *See Restatement (Second) of Judgments § 2 cmt. b, at 37; see also Black's Law Dictionary 929 (9th ed. 2009)* (defining *in rem* jurisdiction as "[a] court's power to adjudicate the rights to a given piece of property"). Here, because Chubb's claims against Travelers for indemnity and contribution seek to impose liability on Travelers itself rather than the insurance policies that are assets of the Manville bankruptcy estate, the bankruptcy court's 2004 interpretation of the 1986 Orders attributed to those [*52] prior judicial acts an *in personam* effect.

The due process "exception" relied on by the district court and discussed by the Supreme Court in *Ortiz* was juxtaposed against the "'principle of general application in Anglo-American jurisprudence that one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process.'" *Ortiz, 527 U.S. at 846* (quoting *Hansberry v. Lee, 311 U.S. 32, 40, 61 S. Ct. 115, 85 L. Ed. 22 (1940)).* Thus, the *Ortiz* Court was discussing an *in rem* "exception" to the due process principles associated with *in personam* jurisdictional acts. Moreover, the *Ortiz* Court quoted from *Martin v. Wilks, 490 U.S. 755, 109 S. Ct. 2180, 104 L. Ed. 2d 835 (1989).* The full sentence from *Martin* reads:

> [W]here a special remedial scheme exists expressly foreclosing successive litigation by nonlitigants, as for example in bankruptcy or probate, legal proceedings may terminate preexisting rights *if the scheme is otherwise consistent with due process.*

*Id. at 762 n.2* (emphasis added).

Relying on this authority, the district court reasoned that the bankruptcy court acted on an *in rem* basis: "Unlike the class action settlements in [*Amchem Prod-*

05-44481-rdd    Doc 20090-4    Filed 05/14/10    Entered 05/14/10 15:02:14    Exhibit
C-In re Johns-Manville Corp.    Pg 15 of 18

Page 14

2010 U.S. App. LEXIS 5877, *; Bankr. L. Rep. (CCH) P81,727;
52 Bankr. Ct. Dec. 266

*ucts, Inc. v. Windsor, 521 U.S. 591, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997)]* [*53] and *Ortiz*, the injunction here is based on the Bankruptcy Court's *in rem* power over the Manville estate, including the insurance policies." *Manville II, 340 B.R. at 68-69.* The contrast between *in rem* bankruptcy proceedings and the *in personam* class action settlements in *Amchem* and *Ortiz* was apt. But the court placed the Manville proceedings -- at least in their present procedural posture -- in the wrong category.

As we have already said, whatever the bankruptcy court's factual findings, Chubb's claims for contribution and indemnity seek to proceed against Travelers on an *in personam* basis. *See Manville III, 517 F.3d at 63* ("[T]he factual determination was only half of the equation . . . . Neither court looked to the laws of the states where the claims arose to determine if indeed Travelers did have an independent legal duty in its dealing with plaintiffs, notwithstanding the factual background in which the duty arose."). The district court reasoned that, factually speaking, the Direct Actions and Chubb's claims fit within the 1986 Orders' injunction of claims "based upon, arising out of, or relating to any or all of the" policies issued by Travelers to Manville. *See Manville II, 340 B.R. at 61.* [*54] In doing so, it appears to have taken the view that the "based upon, arising out of, or relating to" language was necessarily confined to *in rem* claims against the Manville estate.

But the bankruptcy court's 2004 interpretation of the 1986 Orders is not so limited. Chubb does not, as a legal matter, seek to collect from the insurance policies that Travelers issued to Manville. Thus, contrary to the district court's ruling, the bankruptcy court was not exercising its *in rem* power when it concluded that Chubb's claims were enjoined. [14] Therefore, the "special remedial scheme" due process "exception" relating to *in rem* bankruptcy proceedings is insufficient to sustain the bankruptcy court's action as to Chubb.

14    Travelers seems to agree that the bankruptcy court did more than resolve claims against the *res* of the Manville estate. In its October 26, 2009 post-argument submission, Travelers argued that the bankruptcy court's notice procedures relating to the 1986 Orders were "wholly consistent" with the exercise of "both *in rem* jurisdiction and *in personam* jurisdiction over all Chubb entities."

Finally, we are also unpersuaded by the district court's conclusion that Chubb's due process rights [*55] were satisfied by the bankruptcy court's August 2, 1984 Notice of Hearing to Consider Approval of Compromise and Settlement of Insurance Litigation. Given the manner in which the 1986 Orders have been interpreted, we are placed in legal territory that is undoubtedly *sui*

*generis* as to the due process question before us. But, because the 1986 Orders purport to bind Chubb's *in personam* claims, the better due process analogy in terms of notice and representation principles is to class action settlements, not *in rem* bankruptcy proceedings. As a result, we find *Amchem Products, Inc. v. Windsor, 521 U.S. 591, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997)* and *Stephenson v. Dow Chemical Co., 273 F.3d 249 (2d Cir. 2001)* to be the pertinent authority.

In *Amchem*, a group of asbestos manufacturers sought to achieve final resolution of their liability by attempting to settle future, unfiled claims by potential asbestos claimants. *521 U.S. at 600-01.* Their chosen litigation mechanism was a settlement-only class action pursuant to *Rule 23(b)(3) of the Federal Rules of Civil Procedure.* The manufacturers proposed a class of those who: (1) had not already filed an asbestos claim against the defendants, and (2) either had been exposed to asbestos [*56] or had family members who had been exposed. *Id. at 603.* The lawyers purporting to act on behalf of this class "had no attorney-client relationship with such claimants," *id. at 601,* but the parties' settlement applied to nearly all of the class's future claims. *See id. at 604.* For example, the agreement sought to enjoin, and provided no compensation for, certain types of claims that would otherwise have been available under state law. *See id. at 604.*

The district court conducted fairness hearings, certified the class, and ultimately approved the settlement. *Id. at 608.* The Third Circuit vacated the district court's orders, holding that factual and legal differences created "'serious intra-class conflicts.'" *Id. at 610* (quoting *Georgine v. Amchem Prods., Inc., 83 F.3d 610, 630 (3d Cir. 1996)).*

The Supreme Court affirmed the court of appeals based on deficiencies in the proposed class under *Rule 23.* First, the Court held that the class could not satisfy the predominance requirement of *Rule 23(b)(3)* because, *inter alia,* "[d]ifferences in state law . . . compound[ed] the[ ] disparities" in the interests of the class. *Id. at 624.* Second, the Court held that the named plaintiffs could not adequately [*57] represent the broad class of claimants because of the conflict between the presently injured claimants' interest in "generous immediate payments" and the exposure-only claimants' interest in "ensuring an ample, inflation-protected fund for the future." *Id. at 626* (relying on Federal Rule of Civil Proecdure *23(a)(4)).* Finally, in language that we find directly relevant, the Court observed that

[i]mpediments to the provision of adequate notice . . . rendered highly problematic any endeavor to tie to a settlement class persons with no perceptible asbes-

2010 U.S. App. LEXIS 5877, *; Bankr. L. Rep. (CCH) P81,727;
52 Bankr. Ct. Dec. 266

tos-related disease at the time of the set-
tlement . . . . Even if they fully appreciate
the significance of class notice, those
without current afflictions may not have
the information or foresight needed to de-
cide, intelligently, whether to stay in or
opt out.

*Id. at 628.* The Court declined to resolve this due process
issue in light of its holding that the proposed class could
not satisfy *Rule 23,* but it recognized "the gravity of the
question whether class action notice sufficient under the
Constitution and *Rule 23* could ever be given to legions
so unselfconscious and amorphous." *Id.*

In *Stephenson,* we relied on *Amchem* to address
similar concerns [*58] regarding representation and no-
tice in settlement-only class action proceedings. There,
two veterans (the "*Stephenson* plaintiffs") commenced
separate state-law actions based on allegations that they
were exposed to Agent Orange during the Vietnam War.
Both actions were filed well after a broad settlement
agreement had been approved relating to a *Rule 23(b)(3)*
class action against the same defendants based on similar
allegations. *273 F.3d at 255-56.* The previous settlement
purported to resolve the claims of individuals who had
been exposed to Agent Orange but had not yet mani-
fested injuries. *Id. at 252.* The *Stephenson* plaintiffs fit
within the prior class, and their claims were transferred
by the Multidistrict Litigation Panel to the Eastern Dis-
trict of New York, where the class action settlement had
been adjudicated. *See id. at 256.* The district court char-
acterized the *Stephenson* plaintiffs' actions as impermis-
sible collateral attacks on the prior settlement, and it
dismissed their claims pursuant to *Rule 12(b)(6). Id.*

We reversed, holding that the attack was permissible
because the plaintiffs were not adequately represented in
the prior litigation, and that the previous settlement
[*59] was not *res judicata* as to the *Stephenson* plaintiffs'
claims. *See id. at 261.* Regarding the collateral attack, we
reasoned that the injunction that purported to bar the
claims was "part and parcel of the judgment that plain-
tiffs contend failed to afford them adequate representa-
tion." *Id. at 257.* Consequently, the attack was permissi-
ble because it sought "only to prevent the prior settle-
ment from operating as *res judicata* to their claims." *Id.*

With respect to whether the *Stephenson* plaintiffs'
claims were barred by the prior settlement and the doc-
trine of *res judicata,* we relied on the due process con-
cerns raised by the Supreme Court in *Amchem* and *Ortiz*
and held that the plaintiffs were not adequately repre-
sented in the prior litigation. *Id. at 260-61.* In doing so,
we reasoned that both plaintiffs fell within the earlier
class definition, but that (1) neither had learned of their

claims until after the settlement fund was exhausted, and
(2) the settlement made no provision for their claims. *Id.
at 260.* Although our holding was based on representa-
tional concerns, we also pointed out that the plaintiffs
"likely received inadequate notice" of the class action
settlement because "*Amchem* [*60] indicates that effec-
tive notice could likely not ever be given to exposure-
only class members." *Id. at 261 n.8.*

Because of the *in personam* manner in which the
1986 Orders have been interpreted, the due process is-
sues discussed in *Stephenson* and *Amchem* present grave
representation and notice problems with respect to
Chubb. As to representation, there is no indication in the
record that the sort of claims Chubb seeks to bring
against Travelers were contemplated, much less ac-
counted for, during the proceedings that led to the 1986
Orders. Neither Travelers nor the district court have sug-
gested otherwise, and the terms of the bankruptcy court's
August 14, 1984 Order appointing the FCR make this
point plain. The bankruptcy court ordered the FCR to
concern himself with "persons who have been exposed
to" Manville's asbestos products and who may subse-
quently "manifest disease post-petition." Chubb does not
fall within that category, and its interests relating to in-
choate, non-derivative, post-petition claims against Trav-
elers were not spoken for in those proceedings.

We also conclude that the interests of the asbestos
claimants who participated in the negotiations and hear-
ings leading up to [*61] the 1986 Orders diverged from
Chubb's future interests in a manner that precluded the
claimants from adequately representing Chubb in those
proceedings. In *Amchem,* the Supreme Court found that
single-class representation was inadequate under *Rule
23(a)(4)* because the interests of presently injured asbes-
tos claimants conflicted with those of the exposure-only
claimants: "[F]or the currently injured, the critical goal is
generous immediate payments. That goal tugs against the
interest of exposure-only plaintiffs in ensuring an ample,
inflation-protected fund for the future." *521 U.S. at 626.*
Although we do not rely on *Rule 23* here, there is a simi-
lar divergence of interests between Chubb and the groups
of asbestos claimants that participated in the negotiations
that led to the 1986 Orders. Chubb's interest in the Man-
ville proceedings in the early 1980s was far more attenu-
ated than the exposure-only claimants at issue in *Am-
chem,* who at least had cause for concern regarding the
same sort of harm as the presently injured claimants.
More importantly, like the currently injured claimants in
*Amchem,* asbestos claimants capable of bringing claims
against Manville's insurance policies in 1986 [*62] were
most likely focused on maximizing the value of immedi-
ate payments from a settlement fund. In contrast,
Chubb's interest, similar to that of the exposure-only
claimants in *Amchem,* would have been more directed at

2010 U.S. App. LEXIS 5877, *; Bankr. L. Rep. (CCH) P81,727;
52 Bankr. Ct. Dec. 266

creating an "inflation-protected fund for the future," which would guard against the event, however improbable, that Chubb is found liable in a Common Law Direct Action and wishes to shift a proportionate share of the joint liability to Travelers. No such fund was created in 1986 (or 2004). Given these divergent interests, it cannot be said that counsel for the claimants at the negotiations leading to the 1986 Orders sufficiently represented Chubb.

With respect to notice, we need not break any new ground relating to the constitutional requirements of an *in rem* bankruptcy proceeding. Nor are we called upon to set the outer bounds of the notice that would be required to satisfy Chubb's due process rights based on the manner in which the 1986 Orders have been interpreted. Under the unique circumstances of this case, there can be little doubt that the publication notice employed by the bankruptcy court in 1984 was insufficient to bind Chubb to the 2004 interpretation of the [*63] 1986 Orders.

The bankruptcy court's August 2, 1984 Notice of Hearing to Consider Approval of Compromise and Settlement of Insurance Litigation indicated that the parties to the Manville Chapter 11 proceedings were seeking an order enjoining all claims, "whether or not presently known," against the Settling Insurers "based upon, arising out of or relating to any or all of the insurance policies" that the Settling Insurers had issued to Manville. In order to comprehend that the contemplated channeling injunction would bar Chubb's *in personam*, non-derivative claims against Travelers, the recipient of this Notice would have to predict that the bankruptcy court would exceed its *in rem* jurisdiction in entering the 1986 Orders. Such a recipient would also have to be presumed to know -- or to be able to discern from the 1984 Notice document -- the factual extent of Travelers' relationship with Manville, which ultimately served as the lynchpin of the bankruptcy court's 2004 interpretation of the 1986 Orders. *See Bailey, 129 S. Ct. at 2203.* The bankruptcy court's factfindings are presently uncontested, and Chubb was undoubtedly a "sophisticated insurer" in the early 1980s. *Manville II, 340 B.R. at 68.* [*64] But we cannot attribute to Chubb the sort of prescience that these predictions would have required, and the August 2, 1984 Notice was insufficient to communicate these issues.

To the extent that the Notice document could be interpreted to suggest that the 1984 Insurance Settlement Agreement would bar non-derivative claims against non-debtors, the parties publicly clarified their intentions by amending the agreement in a manner that indicated that Chubb *was not* an interested party in Manville's Chapter 11 proceedings. Specifically, when certain objectors to the settlement argued that the terms of the proposed channeling injunction exceeded the scope of the bankruptcy court's *in rem* jurisdiction, Travelers signed a letter agreement indicating that the objectors were wrong. The June 3, 1985 letter agreement stated that it was intended to "clarif[y] the intent of the parties with respect to certain provisions of the [1984 Insurance] Settlement Agreement," and that it was an "amendment" to the Agreement. One portion of the letter stated that "[t]he channeling order is intended only to channel claims against the *res* to the Settlement Fund and the injunction is intended only to restrain claims [*65] against the *res* (*i.e.*, the Policies) which are or may be asserted against the Settling Insurers."

Following this amendment to the 1984 Insurance Settlement Agreement, Chubb could not have known that it was an interested party in Manville's bankruptcy proceedings or that the 1986 Orders would bar its nonderivative *in personam* claims against Travelers. In *Amchem*, the Supreme Court was concerned that, even if the exposure-only claimants "appreciate[d] the significance of class notice," they might "not have the information or the foresight needed to decide, intelligently, whether to stay in or opt out." *Amchem, 521 U.S. at 628.* Similarly, even if Chubb received the Notice document, it could not have anticipated from the way the proceedings unfolded that its contribution and indemnity claims -- which were abstract, "unimaginable," and inchoate at the time -- would be enjoined. Therefore, it cannot be said that Chubb had constitutionally sufficient notice of the 1986 Orders, as interpreted by the bankruptcy court in 2004.

* * *

In conclusion, we hold that *MacArthur* does not foreclose Chubb's due process argument. We further hold that Chubb was not adequately represented in the proceedings [*66] that lead to the bankruptcy court's approval of the 1984 Insurance Settlement Agreement and the Manville Plan, and that it did not receive adequate notice of the 1986 Orders. Accordingly, both the bankruptcy court and the district court erred by rejecting Chubb's due process argument. Chubb is therefore not bound by the terms of the 1986 Orders. Consequently, it may attack the Orders collaterally as jurisdictionally void. And, as we held in *Manville III*, that attack is meritorious.

## C. The Status of the Statutory and Hawaii Direct Action Settlements

The [*67] 2004 Direct Action Settlement relates to three categories of claims: the Common Law Direct Actions, the Statutory Direct Actions, and the Hawaii Direct Actions. Chubb only seeks to bring contribution and indemnity claims against Travelers in the Common Law Direct Actions, and our holding primarily relates to that portion of the broader settlement. Following the stipulated dismissal of the portions of these appeals relating to

2010 U.S. App. LEXIS 5877, *; Bankr. L. Rep. (CCH) P81,727;
52 Bankr. Ct. Dec. 266

the Statutory and Hawaii Direct Actions, the parties to those agreements have requested that we sever them from the broader 2004 Direct Action Settlement and affirm the district court's rulings as to those agreements.

In *Manville III*, however, we declined in light of our holding to determine the prospective status of these agreements or to resolve arguments relating to technical objections and the 2004 Direct Action Settlement's overall fairness. *See Manville III, 517 F.3d at 58 n.13, 68 n.26.* Prudence counsels the same course here. Moreover, there is nothing in the 2004 Direct Action Settlement suggesting that severance would be an option at this juncture, or that such a remedial act would be undertaken by a court of appeals. We therefore decline to address the

[*68] parties' remaining arguments relating to, *inter alia*, the reasonableness of the Common Law Direct Action Settlement and the bankruptcy court's award of attorneys' fees, and we again "leave it to the parties, with the aid of the bankruptcy court, to determine the status of their settlements." *Manville III, 517 F.3d at 68 n.26.*

### III. CONCLUSION

For the foregoing reasons, the district court's March 28, 2006 order is **AFFIRMED** as to the Objecting Plaintiffs and **REVERSED** as to Chubb. The case is **REMANDED** for further proceedings consistent with this opinion.