UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| DELPHI CORPORATION, *et al.*, | ) | Case No. 05-44481 |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| _____/ | ) | Honorable Robert D. Drain |
| DELPHI CORPORATION, *et al.*, | | Adv. Pro. No. 07-02211 |
| Plaintiffs, | | |
| -against- | | |
| DOSHI PRETTL INTERNATIONAL and DOSHI PRETTL INT., | | |
| Defendants. | | |

---

**NOTICE OF MOTION AND BRIEF OF DEFENDANT TO:
(A) VACATE CERTAIN ORDERS OF THIS COURT; AND
(B) DISMISS THE COMPLAINT WITH PREJUDICE; OR
(C) IN THE ALTERNATIVE, TO DISMISS THE CLAIMS AGAINST
<u>CERTAIN DEFENDANTS NAMED IN THE COMPLAINT</u>**

PLEASE TAKE NOTICE THAT:

Upon the attached motion, dated May 14, 2010, Defendant Doshi Prettl International,

through its attorneys, Clark Hill PLC, filed their Motion and Brief to (A) Vacate Certain Orders of

this Court; and (b) Dismiss the Complaint with Prejudice; or (c) in the Alternative, to Dismiss the

Claims Against Certain Defendants Named in the Complaint.  The Motion seeks entry of an order

to (A) vacate certain orders of the court; (B) dismiss the complaint with prejudice; or (C) in the

alternative, to dismiss the claims against certain defendants named in the complaint.  A hearing

with respect to the Motion will be held before the Honorable Robert D. Drain, United States

Bankruptcy Judge, of the United States Bankruptcy Court for the Southern District of New York,

300 Quarropas Street, White Plains, New York, 10601, on **July 22, 2010 at 10:00 a.m. (Eastern**

**Daylight Time)**, or as soon thereafter as counsel may be heard.

A copy of the Motion may be obtained by (a) contacting the attorneys for the Defendants,

Clark Hill PLC, 151 S. Old Woodward, Birmingham, Michigan 48009 (Attn:  Christopher Cahill,

Esq.), Telephone:  (248) 988-5878; (b) accessing the Court's website at www.nysb.uscourts.gov

(please note that a PACER password is needed to access documents on the Court's website); (c)

viewing the docket of these cases at the Clerk of the Court, United States Bankruptcy Court for

the Southern District of New York, Alexander Hamilton Custom House, One Bowling Green,

New York, New York 10004; or (d) accessing the public website maintained by the Debtors'

court-appointed claims and noticing gent in these cases at www.kccllc.net.

The deadline to file objections and responses to the Motion is **June 7, 2010 at 4:00 p.m.**

**(Eastern Daylight Time)** (the "**Objection Deadline**").

Objections and responses, if any, to the Motion must be in writing and must (a) conform to

the Bankruptcy Rules, the Local Rules of the Bankruptcy Court for the Southern District of New

York, and any case management orders in these chapter 11 cases, (b) set forth the name of the

objecting party, the nature and amount of claims or interests held or asserted by the objecting

party against the Debtors' estates or property, and (c) set forth the basis for the objection and the

specific grounds therefore.

PLEASE TAKE FURTHER NOTICE that any responses or objections to the Motion must

be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of

the Bankruptcy Court, and shall be filed with the Bankruptcy Court (a) electronically in

-2-

accordance with General Order M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's filing system, and (b) by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with hard copy delivered directly to Chambers), in accordance with General Order M-182 (which can be found at www.nysb.uscourts.gov), and served in accordance with General Order M-242, and on (i) Clark Hill PLC, Attn: C. Cahill, 151 S. Old Woodward, Suite 200, Birmingham, Michigan 48009; (ii) the Debtors, DPH Holdings Corp. (f/k/a Delphi Corporation, et al.), Attn: John Brooks, 5725 Delphi Drive, Troy, Michigan 48098; (iii) Butzel Long, Attn: Cynthia J. Haffey, 150 W. Jefferson Avenue, Suite 100, Detroit, Michigan 48226; (iv) Butzel Long, Attn: Eric Fisher, 380 Madison Avenue, 22nd Floor, New York, New York 10017; (v) Latham & Watkins, attorneys for The Official Committee of Unsecured Creditors, Attn: Mark A. Broude and Robert J. Rosenberg, 885 Third Avenue, New York, New York 10022 and Warner Stevens, L.L.P., Attn: Michael D. Warner, 301 Commerce Street, Suite 1700, Fort Worth, Texas 75102; (vi) the Office of the United States Trustee for the Southern District of New York, Attn: Alicia M. Leonhard, Trace Hope Davis, and Brian Masumoto, 33 Whitehall Street, 21st Floor, New York, New York 10004, so as to be received no later than the **Objection Deadline.**

6413011.1 30885/135676

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend the hearing.    Failure to appear at the Hearing may result in relief being granted or denied upon default.

CLARK HILL PLC

/s/ Christopher M. Cahill
Joel D. Applebaum
Mahesh K. Nayak
Christopher M. Cahill (*pro hac vice*)
151 South Old Woodward Avenue, Suite 200
Birmingham, Michigan 48009
(313) 965-8300

Attorneys for Doshi Prettl International

Dated: May 14, 2010

-4-

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| DELPHI CORPORATION, *et al.*, | ) | Case No. 05-44481 |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| _____/ | ) | Honorable Robert D. Drain |

| | |
|---|---|
| DELPHI CORPORATION, *et al.*, | Adv. Pro. No. 07-02211 |
| Plaintiffs, | |
| -against- | |
| DOSHI PRETTL INTERNATIONAL and DOSHI PRETTL INT., | |
| Defendants. | |

## MOTION AND BRIEF OF DEFENDANT TO:
## (A) VACATE CERTAIN ORDERS OF THIS COURT; AND
## (B) DISMISS THE COMPLAINT WITH PREJUDICE; OR
## (C) IN THE ALTERNATIVE, TO DISMISS THE CLAIMS AGAINST
## CERTAIN DEFENDANTS NAMED IN THE COMPLAINT

Doshi Prettl International, n/k/a Doshi Prettl International, LLC (the **"Defendant"**),

defendant[1] in the above-captioned adversary proceeding (the **"Adversary Proceeding"**), presents

this motion (the **"Motion"**) to (A) vacate certain orders of this Court that purported to extend the

time in which the plaintiffs in the Adversary Proceeding (the **"Plaintiffs"**) could serve the

---

[1] The Plaintiffs have named two defendants: Doshi Prettl International and Doshi Prettl Int. Doshi Prettl International, LLC exists. To its knowledge, Doshi Prettl Int. does not exist, and if it does exist is not related to Doshi Prettl International. Throughout this Complaint, "Defendant" shall refer technically to all named defendants. Among the relief sought herein, in the alternative to dismissal of the Complaint *in toto*, is dismissal of the Complaint as to named defendants other than Doshi Prettl International.

complaint in the Adversary Proceeding (the "**Complaint**") upon the Defendant; (B) dismiss the

Complaint with prejudice; or (C) dismiss the Complaint as to certain Defendants.

The Defendant seeks an order:

    1. Vacating, the Service Extension Orders (as defined below) as interlocutory orders pursuant to the Court's discretionary authority under Rule 7054(a) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), which applies Rule 54(b) of the Federal Rules of Civil Procedure (the "**Civil Rules**") to adversary proceedings in order to correct manifest injustice; or, alternatively, vacating same as final orders pursuant to Bankruptcy Rule 9024, which incorporates Civil Rule 60(b)(4) and (6), which provides for relief from void orders and those presenting extraordinary circumstances; in either case because (a) the Plaintiffs' intentional failure to provide Defendant with notice of the Service Extension Motions (as defined below) deprived Defendant of due process and renders the Service Extension Motions void, (b) cause did not exist to extend the time for service of the Complaint, or (c) the Court erroneously authorized the filing of the Complaint under seal;

    2. Dismissing with prejudice the Complaint pursuant to Bankruptcy Rule 7012(b), which applies Civil Rule 12(b)(6) to adversary proceedings, on the ground that the Complaint is barred by the expiration of the two-year limitations period set by section 546(a) of the Bankruptcy Code;

    3. Dismissing the Complaint with prejudice on the grounds that it is (a) barred by judicial estoppel, (b) barred by res judicata, (c) barred by laches, and/or (d) fails to comply with the pleading requirements of *Ashcroft v. Iqbal*, ___ U.S. ___; 129 S. Ct. 1937; 173 L. Ed. 2d 868 (2009);

    4. In the alternative, dismissing the Complaint as to Doshi Prettl Int because it is not a person or separate business entity, does not exist, and, therefore, cannot be sued; and

    5. For such other and further relief as is proper and just.

### Preliminary Statement

The Plaintiffs filed the Complaint on September 28, 2007, seeking to avoid approximately

$8.7 million in alleged preferential transfers purportedly made in mid-2005.

The Complaint was filed under seal. Plaintiffs provided Defendant with no notice that it

had filed the Complaint or that it had done so under seal. The Defendant was served with the

Complaint four and one-half years after the Complaint was filed, and two years and three months after the expiration of both the applicable limitations period for filing complaints set by section 546(a) of title 11 of the United States Code (the "**Bankruptcy Code**"), which expired in the Cases on October 7 or 14, 2007, and the additional 120-day period set by applicable Civil Rule for service of a complaint after filing of same.

Because Defendant (and other defendants in such adversary proceedings) received no notice of the Complaint over these many years, and since Plaintiffs intentionally hid the pendency of the avoidance actions from the targets of same, Defendant took no special steps to preserve its records with respect to Plaintiffs, or to make arrangements to remain in touch with all of the former principal and employees Defendant would need as witnesses and in order to prepare a defense.

Further, in May of 2008 Defendant Doshi Prettl International, LLC sold a substantial membership interest to Prettl International, Inc. ("**PII**"), with neither buyer nor seller aware of the potential liability presented by the Adversary Proceeding. No amount of due diligence could have disclosed such potential liability at the time.

The Service Extension Orders upon which the Plaintiffs have relied to extend the deadline for service of the Complaint, were moved for, heard, and granted without regard to the Defendant's fundamental due process rights to notice and an opportunity to be heard. Because they were issued in violation of due process, the Service Extension Motions must be vacated with respect to Defendant. The effective secret doubling of the limitations period for the Adversary Proceeding severely harmed the Defendant's ability to protect its rights in the Adversary Proceeding, prejudiced the Defendant's in its participation in the Cases and as it carried on

-3-

business dealings with the Plaintiffs, and prejudiced Defendant's business and financial operations.

The failure of due process and the prejudice to Defendant constitute manifest injustice to be corrected under Civil Rule 54(b) (if the Service Extension Orders are regarded as interlocutory orders) and voidness and exceptional and extraordinary circumstances that justify setting aside such orders under Civil Rule 60(b)(4) and (6) (if the Service Extension Orders are regarded as final orders). If the Service Extension Motions are set aside upon any grounds, then any service effected by Plaintiffs after 120 days after the filing of the Complaint would be rendered void and the operation of the applicable limitations period would bar further prosecution of the Adversary Proceeding or the filing of any new complaint. Thus, the Complaint should be dismissed under Civil 12(b)(6) for failure to state a claim on which relief can be granted.

In addition, in suing the Defendants and other defendants, the Plaintiffs have taken a position at odds with their previously-stated intention to pursue only a few such avoidance actions and only against certain other parties named in an Exhibit to the First Plan (as defined below). Further, the Plaintiffs failed to retain the Adversary Proceeding as a cause of action under the Modified Plan (as defined below). Thus the doctrines of judicial estoppel and res judicata bar the Plaintiffs from pursuing the Compliant. The Defendant's lack of knowledge of the Complaint, the Plaintiffs' intentional delay in asserting the claims against Defendant, and the prejudice to Defendant that would result from permitting the Complaint to go forward justify applying the doctrine of laches to bar the Complaint.

Finally, the Complaint should be dismissed for failure to state a claim because it fails to allege its claims in accordance with the pleading standards set forth in *Ashcroft v. Iqbal*, ___ U.S. ___; 129 S. Ct. 1937; 173 L. Ed. 2d 868 (2009). The Complaint is a bare recitation of the

-4-

elements of an avoidance action, adding only minimal information as to the allegedly preferential transfers, and does not even identify which of the debtors (the "**Debtors**") in the above-captioned chapter 11 cases (the "**Cases**") did business with Defendant with regard to any specific transfers. Accompanying the dearth of facts set forth in the Complaint (even after four and one-half years of Debtor's fermentation of same) is an extraneous named defendant: Doshi Prettl Int., which is not known to Defendant as a separate entity. As a result, the Complaint should be dismissed as to Doshi Prettl Int.

Had the Defendant been afforded the opportunity to be heard on any of the Service Extension Motions, the Defendant would have shown that there was no cause for any of the service extensions. Had the Defendant failed to win the day at such hearings, at least Defendant would have been able to preserve evidence and prepare its defense in the Adversary Proceeding. Further, the Defendant would not have operated for two and one-half years in the dark with respect to its trade dealings with the Plaintiffs and participation in the Cases. Defendant's business operations over those two and one-half years included the sale of a substantial membership interest to a third party who did not know of the Adversary Proceeding. It is inequitable that the Defendant has been placed in such straits through a legal process without having had any opportunity to protect its interests.

<u>**Jurisdiction, Venue, and Statutory Bases**</u>

1.      This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334. Venue is proper under 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding under 28 U.S.C. § 157(b).

6407356.2 30885/135676

2.      The statutory predicates for the relief requested herein are Bankruptcy Rule 7054(a), which incorporates Civil Rule 54(b), Bankruptcy Rule 9024, which incorporates Civil Rule 60(b)(4) and (6), and Bankruptcy Rule 7012(b), which tracks Civil Rule 12(b)(5) and (6).

### Background

3.      On October 8 and 14, 2005 (the "**Petition Date**"), the Debtors filed their voluntary petitions for relief pursuant to chapter 11 of the Bankruptcy Code. The Cases are being jointly administered by order of the Court.

4.      Section 546(a)(1) of the Bankruptcy Code provides, in relevant part, that a proceeding under Bankruptcy Code sections 544, 545, 547, 548 or 553 "may not be commenced after . . . 2 years after the entry of the order for relief[.]" 11 U.S.C. § 546(a). The limitations period for the Complaint expired on October 7 and 13, 2007.

5.      The Debtors filed their first amended joint plan of reorganization (Docket No. 11386) (the "**First Plan**") and related disclosure statement on December 10, 2007. The First Plan was confirmed on January 25, 2008.

6.      In recognition that the end of the limitations period for avoidance actions was approaching, and in anticipation of the confirmation of the First Plan, on August 6, 2007, the Debtors filed their *Expedited Motion for Order Under 11 U.S.C. §§ 102(A), 105(a), 107, 108(a)(2), and 546(a) and Fed.R.Bankr.P. 7004, 9006(c), and 9018 (i) Authorizing Debtors to Enter into Stipulations Tolling Statute of Limitations With Respect to Certain Claims, (ii) Authorizing Procedures to Identify Causes of Action That Should be Preserved, and (iii) Establishing Procedures for Certain Adversary Proceedings Including Those Commenced under 11 U.S.C. § 541, 544, 545, 547, 548, or 553* (Docket No. 8905) (the "**First Extension Motion**"). On August 17, 2007, the Court entered the order granting the relief requested by the Debtors

-6-

(Docket No. 9105) (the "**First Extension Order**") which, among other things, (a) permitted the filing of adversary complaints (including the Complaint) under seal, (b) directed the clerk of court to delay issuing summonses unless and until Debtors notify such clerk of their intent to prosecute such actions, (c) stayed each such adversary proceeding unless and until Debtors served process on such defendants, and (d) extended the date by which Debtors would have to serve process — which is otherwise set by Civil Rule 4(m) as incorporated by Bankruptcy Rule 7004(m) -- to March 31, 2008.

7.    Defendant did not receive notice of the First Extension Motion.  Almost nine thousand pleadings had been filed in the Cases by that point.  No document issued by the Debtor or the Court alerted Defendant that the First Extension Motion pertained in any way to Defendant, much less that Defendant was a potential defendant in a preference adversary proceeding. Therefore, neither Defendant *nor any other defendant* objected to the First Extension Motion.  At the hearing, when presented with the First Extension Motion, the Court said, "Okay.  Does anyone have anything to say on this motion?  All right." *See* August 16, 2007 Tr. p. 9, attached hereto as Exhibit A.  The First Extension Order was entered as proposed by the Debtors.

8.    On September 28, 2007, the Debtors filed the Complaint under seal.    The Defendant had no knowledge of this event until late March, 2010.  *See* Declaration of Peter Schrennen, attached hereto as Exhibit B.  Since the Complaint was filed under seal, no amount of due diligence could have uncovered the existence of the Complaint until it was unsealed in March, 2010.

9.    The First Plan, confirmed on January 25, 2008, had attached to it Exhibit 7.24, which identified the actions the Debtors sought to retain under the plan.  Exhibit 7.24 did not refer

-7-

to Defendant or the Complaint.[2]

10.    After confirmation of the First Plan, on February 28, 2008 the Debtors filed the *Motion Pursuant to Fed.R.Bankr.P. 7004(a) and 9006(b)(1) and Fed.R.Civ.P. 4(m) to Extend Deadline to Serve Process for Avoidance Actions Filed in Connection With Preservation of Estate Claims Procedures Order* (Docket No. 12922) (the "**Second Extension Motion**"). On March 28, 2008, the Court entered the order granting the relief requested by the Debtors (Docket No. 13277) (the "**Second Extension Order**"), which extended the deadline by which the Debtors were to serve the summonses and complaints in the sealed adversary proceedings to May 31, 2008.

11.    Defendant did not receive notice of the Second Extension Motion. No documents issued by the Debtors or the Court  alerted Defendant that the Second Extension Motion pertained to Defendant as a potential defendant in a preference adversary proceeding. Therefore, neither Defendant *nor any other defendant* objected to the Second Extension Motion. At the hearing, when presented with the Second Extension Motion, the Court said, "Okay. Does anyone have anything to say on this motion? All right." *See* March 19, 2008 Tr. p. 22, attached hereto as Exhibit C. The Second Extension Order was entered as proposed by the Debtors.

12.    Debtors' requests made in the First Extension Motion and the Second Extension Motion -- including for permission to file the complaints under seal and for extension of the deadline by which the Debtors had to serve the adversary complaints -- were premised upon: (a) the expectation that the First Plan would enable the Debtors to resolve all sealed adversary proceedings upon Debtors' emergence from the Cases, so that such adversary proceedings would never be pursued, and (b) the estimation that it would save everybody costs and time if the sealed

---

[2] Section 14.3 of the Confirmed Plan and Modified Plan (defined below) provides that the Debtors "may alter, amend, or modify any Exhibits to this Plan under Section 1127(a) of the Bankruptcy Code at any time prior to the Confirmation Date." The Confirmation Date was January 25, 2008. Thus, after January 25, 2008, the Debtors did not have the right to amend Exhibit 7.24 (which is renumbered as Exhibit 7.19 in the Modified Plan)

and stayed adversary proceedings were kept that way until such expectation was fulfilled. *See,*
*e.g.,* Second Extension Motion, at paragraph 16. Of course, failing to give notice to defendants
and sealing the avoidance complaints provided Plaintiffs with obvious tactical advantages in
negotiations with suppliers like Defendant. *See* First Extension Motion, paragraphs 33-34 and 37.

13. Prior to the Debtors seeking further extensions of the deadline by which to serve
the sealed adversary proceedings, the investors in the First Plan failed to participate in a closing
and to fulfill their obligations under the First Plan. *See* Fourth Extension Motion (defined below),
at paragraph 15.

14. On April 10, 2008, the Debtors filed their *Motion Pursuant to Fed.R. Bankr. P.*
*7004(a) and 9006(b)(1) and Fed.R. Civ. P. 4(m) to Extend Deadline to Serve Process for*
*Avoidance Actions Filed in Connection with Preservation of Estate Claims Procedures Order*
(Docket No. 13361) (the "**Third Extension Motion**"), which sought to extend the relief given in
the First and Second Extension Orders – which had been premised upon the possible obviation of
the need to recover preferential transfers under the defunct First Plan – for an indefinite period.
On April 30, 2008, the Court entered the order granting the relief requested by the Debtors
(Docket No. 13277) (the "**Third Extension Order**"), which extended the deadline by which the
Debtors were to serve the summonses and complaints in the sealed adversary proceedings to 30
days after substantial consummation of the First Plan or any modified plan.

15. The funding for the First Plan having evaporated, nevertheless the Debtors again
offered the same justification for this third request: to avoid "unnecessarily disrupt[ing] the
emergence process or the Debtors' ongoing business relationships with potential defendants that
are necessary to the Debtors' ongoing operations." *See* Third Extension Motion, paragraph 22.
The Debtors also asserted that they and the defendants should not be required to spend resources

-9-

on the adversary proceedings when "most of the Adversary Proceedings will not be prosecuted if the Plan were to become effective and likely not be prosecuted under any modified plan." *Id.*

16.    Defendant did not receive notice of the Third Extension Motion. No document issued by the Debtors or the Court alerted Defendant that the Third Extension Motion pertained to Defendant as a potential defendant in a preference adversary proceeding.    Therefore, neither Defendant *nor any other defendant* objected to the Third Extension Motion.    At the hearing on this motion, the Debtors stated that they gave "specific" and "particularized" notice only to "Lenico Engineering Company" and "Wachovia Bank National Association" because those entities had been identified in Exhibit 7.24 of the First Plan, *see* April 30, 2008 Tr. pp. 11-12, attached hereto as Exhibit D.

17.    On June 1, 2009, the Debtors filed a motion to supplement the First Plan, and such supplemented and otherwise further modified plan (Docket No. 18707) (the **"Modified Plan"**) was approved by the Court on June 30, 2009.    The Modified Plan provided for certain transactions, including a sale of substantially all of the Debtors' assets, that would result, as the Debtors described it at paragraph 12 of their Fourth Extension Motion (defined below), in "a potential distribution to holders of general unsecured claims."    The Modified Plan was substantially consummated in early October, 2009.[3]

18.    As the Modified Plan was being considered, the Defendant did not know that the Debtors planned to look to Defendant (and other defendants in sealed adversary proceedings) as a significant source for distributions to holders of allowed unsecured claims under the Modified Plan. *See* Exhibit B.

---

[3] Through this process, the Debtors had become "reorganized" Debtors.  Notwithstanding any changes in identity or status, for the purposes of this Motion the Plaintiffs, the reorganized Debtors, and the Debtors shall be referred to as the "Debtors" or the "Plaintiffs."

6407356.2 30885/135676

19.    On October 2, 2009, the Debtors filed the *Supplemental Motion Pursuant to Fed. Bankr. R. 7004(a) and 9006(b)(1) And Fed. Civ. P. 4(m) to Extend Deadline to Serve Process for Avoidance Actions Filed in Connection with Preservations of Estate Claims Procedures Order*, (Docket No. 18952) (the "**Fourth Extension Motion**" and, collectively with the First, Second, and Third Extension Motions, the "**Service Extension Motions**").    On October 22, 2009, the Court entered the order granting the relief requested by the Debtors (Docket No. 18952) (the "**Fourth Extension Order**" and, collectively with the First, Second, and Third Extension Orders, the "**Service Extension Orders**"), which extended even further the deadline to serve the summons and sealed adversary complaints to 180 days after substantial consummation of the Modified Plan.

20.    Defendant did not receive notice of the Fourth Extension Motion.    No documents issued by the Debtors or the Court alerted Defendant that the Fourth Extension Motion pertained to Defendant as a potential defendant in a preference adversary proceeding.    Therefore, neither Defendant *nor any other defendant* objected to the Fourth Extension Motion.[4]    The Fourth Extension Order was entered as proposed by the Debtors.

21.    In the Fourth Extension Motion, presented to the Court after a sale of substantially all of the Debtors' assets had taken place, the Debtors expressed a wish "to assess the ongoing relationship with certain defendants."    Fourth Extension Motion, paragraph 17.    As in each of the Service Extension Motions, in the Fourth Extension Motion (at paragraphs 19 and 20) the Debtors asserted an interest in relieving defendants of "unnecessary costs" of preserving their rights in these adversary proceedings.

---

[4] At the hearings for the Third Extension Motion and the Fourth Extension Motion, the Court did not ask if anyone had anything to say about the motion.  *See* Exhibit D pp. 11-13 and October 22, 2009 Tr. 4-7, attached hereto as Exhibit E.

22.    Over the years that the Plaintiffs intentionally concealed the Complaint, and during

which time Defendant received no notice of the Complaint, Defendant took no steps to organize

and preserve its records with respect to the Plaintiffs, to hold exit interviews with employees who

were knowledgeable about the Delphi business relationships, or to arrange to remain in contact

with those employees Defendant might need to provide litigation information or to serve as

witnesses. *See* Exhibit B.  Had Defendant known about the adversary Proceeding when it was

filed, Defendant would have taken such steps. *Id.*

23.    In May of 2008 Defendant Doshi Prettl International, LLC sold a substantial

membership interest to PII, with neither buyer nor seller aware of the potential liability presented

by the Adversary Proceeding.  *Id.*  No amount of due diligence could have disclosed such

potential liability at the time.  Had PII known of the Adversary Proceeding, PII's decisions with

respect to negotiating and entering into such transaction would have been affected. *Id.*

24.    Further, Defendant continued to supply Debtors until the effective date of the

Modified Plan, without knowledge of the Adversary Proceeding, and therefore without the

opportunity to take the Adversary Proceeding into account in assessing contract assumption issues

or in otherwise participating in the Cases.

25.    After providing no notice to Defendant that a sealed complaint had been filed

against it, and after providing no notice of any of the Service Extension Motions, Plaintiffs finally

served the Complaint in March, 2010 – some two and a half years after the applicable limitations

period had expired and four and a half years after the alleged preferential transfers were made.

26.    The Complaint states that it is brought on behalf of "Delphi Corporation ('Delphi')

and other [unnamed] above captioned debtors and debtors in possession." *See* Complaint,

attached hereto as <u>Exhibit F</u>.  The Complaint provides no specific information other than "transfer

-12-

date," "transfer amount," and "transfer type" for the numerous alleged transfers Plaintiffs seek to avoid. *Id.* The Complaint does not identify which of the dozens of Plaintiffs actually owed the money allegedly transferred, or which of the dozens of Plaintiffs actually made the alleged transfers.

## Analysis and Authority

I.    **The Service Extension Orders Must Be Set Aside Pursuant to Bankruptcy Rule 7054(a) and Civil Rule 54(b) and the Court's Inherent Authority Because the Deprivation of Defendant's Constitutional Rights to Due Process and Extreme Prejudice Suffered By Defendant Collectively Constitute Manifest Injustice.**

### A. Reconsideration of Interlocutory Orders.

27.    The Service Extension Orders are interlocutory orders, rather than final orders, because the Service Extension Orders did not completely resolve all of the issues pertaining to the claims of Plaintiffs, including issues as to proper relief. *See In re Fugazy Express, Inc.*, 982 F.2d 769, 776 (2d Cir. 1992).

28.    Interlocutory orders may be reconsidered by this Court pursuant to its inherent powers and pursuant to Bankruptcy Rule 7054(a), which provides that Civil Rule 54(b) applies in adversary proceedings. Fed.R.Bankr.P. 7054(a). Civil Rule 54(b) provides, in relevant part:

> [A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed.R.Civ.P. 54(b).

29.    The Court is free to reconsider or modify its interlocutory rulings when it is consonant with justice to do so. *United States v. Uccio*, 940 F.2d 753, 757-58 (2d Cir. 1991). The

-13-

law of the case doctrine does not limit the Court's discretion in this regard. *Id*. at 758; *see also Prisco v. A & D Carting Corp.*, 168 F.3d 593, 607 (2d Cir. 1999).

30.     More recently, the Second Circuit made it clear that where, as here, a litigant was not given notice and an opportunity to be heard (and, therefore "battle" for the court's prior decision), the law of the case doctrine does not foreclose, in any manner, that party's due process argument. *In re Johns-Manville Corp.*, ___ F.3d ___ 2010 WL 1007832, at \*13 (2d Cir. 2010). Accordingly, this Court has discretion to vacate the Service Extension Orders.

31.     In *In re Best Payphones, Inc.*, 2003 Bankr. LEXIS 180 (S.D.N.Y., March 10, 2003) at \*6-7, this Court observed that "reconsideration of non-final orders is subject to the caveat that where litigants have once battled for the court's decision, they should either be required, nor without good reason permitted, to battle for it again." *Id*. at \*8 (quotations and citations omitted). Among the "major grounds" recited by the Court to justify reconsideration is "the need to correct a clear error or prevent manifest injustice." *Id*. (quotations and citations omitted).

32.     There having never been a battle in this matter until now, reconsideration of the Service Extension Orders is appropriate. The deprivation of due process and the harm suffered by Defendant constitute "manifest injustice."

### B. Due Process Is the Right to Notice And a Meaningful Opportunity to be Heard

33.     It has long been held that the "fundamental requisite of due process of law is the opportunity to be heard." *Grannis v. Ordean*, 234 U.S. 385, 394; 34 S. Ct. 779; 58 L. Ed. 1363 (1914). This right to be heard, however, "has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314; 70 S. Ct. 652; 94 L. Ed. 865 (1950). Thus, an "elementary and fundamental requirement of due process in any proceeding

-14-

which is to be accorded finality is notice reasonably calculated, under all the circumstances, to

apprise interested parties of the pendency of the action and afford them an opportunity to present

their objections." *Id.* at 314; *Barcia v. Sitkin*, 367 F.3d 87, 107 (2d Cir. 2004); *Weigner v. City of*

*New York*, 852 F.2d 646, 654 (2d Cir. 1988) (Oakes, J., dissenting).

34.    The Defendant did not receive actual notice or any other notice of the Service

Extension Motions and Orders and was deprived of a full and fair opportunity to litigate against

the relief sought and granted thereunder. Any general ECF notice issued in the Cases was

insufficient, and no actual or particularized notice was issued to Defendant.

### C. General Awareness of a Case Does Not Constitute Notice

35.    In *In re Johns-Manville Corp.*, ___ F.3d ___ 2010 WL 1007832, at *20 (2d Cir.

2010), the Second Circuit held that because Chubb (an insurance company) did not receive notice

of the proceedings that led to approval of a certain insurance settlement agreement, the plan, and

certain orders at issue, Chubb was not bound by the orders, because to bind Chubb would violate

its due process rights.

36.    A defendant's due process rights are not protected merely by the fact that it knew

of the Cases. In *City of New York v. New York, N.H. & H. R.R. Co.*, 344 U.S. 293; 73 S. Ct. 299;

97 L. Ed. 333 (1953), the Supreme Court unanimously declared that constitutional due process

entitles creditors to notice from a bankruptcy court before they will be bound – even where

creditors knew of the bankruptcy proceedings but did not monitor them. The Court stated:

> Nor can the bar order against New York be sustained because of the city's
> knowledge that reorganization of the railroad was taking place in the court. The
> argument is that knowledge puts a duty on creditors to inquire for themselves about
> possible court orders limiting the time for filing claims. But even creditors who

-15-

have knowledge of a reorganization have a right to assume that the statutory "reasonable notice" will be given them before their claims are forever barred.

344 U.S. at 297.

37.    The fact that some parties, including the Defendant were represented by counsel who had signed up for ECF notice of all pleadings is irrelevant. In the Cases, as in all other chapter 11 cases known to Defendant, bankruptcy courts still require particularized notice to an interested party– beyond ECF notices of all filings in a case. For example, particularized notice to creditors of claims bar dates is required to enforce such bar against them. Also, particularized notice to voting creditors is required for a valid solicitation of votes for a plan (when confirmed) to be enforceable against such creditors.

38.    In *Global Crossing Estate Representative v. Alta Partners Holdings LDC (In re Global Crossing, Ltd)*, 385 B.R. 52 (Bankr. S.D.N.Y. 2008), this court found that a plaintiff's motion to extend service under Civil Rule 4(m) did not constitute notice to later-identified defendants in an adversary proceeding, even though such motion was filed in the ECF system. *Id*. at 62. In support of the conclusion that the motion was heard and granted without notice to such defendants, the court noted the lack of significant opposition at the hearing on the motion. *Id*. at 61. The Court's reasoning implies that general awareness of the case, even among ECF recipients of pleadings, does not suffice to constitute notice.

39.    From the perspective of the Defendant, the *Global Crossing* situation is analogous. To be an unnamed defendant in that case was the same as being a named but sealed and secret defendant in the Cases. Notwithstanding the effect that ECF filings are said to have under any case administration orders in the Cases, notice is not notice if it is not particularized. This proposition was acknowledged by Debtors at the hearing on the Third Extension Motion, wherein

-16-

the Debtors stated that they gave "specific" and "particularized" notice only to "Lenico Engineering Company" and "Wachovia Bank National Association" because those entities had been identified in Exhibit 7.24 of the First Plan. *See* Exhibit D pp. 11-12. The Debtors thus implicitly admitted that Defendant and the rest of defendants were *not* given particularized or specific notice.

40.     As in each of the Service Extension Motions, in the Fourth Extension Motion (at paragraphs 19 and 20) the Debtors pretended an interest in relieving defendants of "unnecessary costs" of preserving their rights in these adversary proceedings.  Apart from the rank injustice of permitting a plaintiff to speak on behalf of defendants purposefully not notified of the proceedings, the Debtors' proposition is also perverse.  In the name of relieving actual but secret defendants of "unnecessary" costs, the obscurantist scheme constructed by the Service Extension Orders, if replicated in other chapter 11 cases, would result in massive unnecessary expenses to each creditor. Each creditor would be required to scrutinize and object to each pleading (however artfully entitled[5]) in such cases on the basis of such pleading's potential effect on the interests of such creditor as a maybe defendant in a someday adversary proceeding.  Such exactly is the level of scrutiny, with the related inequitable and largely pointless legal efforts and expenses, that would have been required to protect the rights of Defendant and of other secret defendants facing the tens of thousand pleadings hurtling through the ECF maw in the Cases.

---

[5] For example, the prolix title of the First Extension Motion somehow omitted the material concept of filing adversary complaints "Under Seal."  The title avoided using the words "Preference" or "Avoidance," even though it appears that all of the over 700 complaints sealed by the relief granted were actions to avoid and recover preferences.  The title also referred coyly to "Tolling Statute of Limitations *With Respect To Certain Claims*" (emphasis added) instead of a more straightforward formulation like "With Respect To Several Hundred Preference Avoidance Actions."  The title's concluding recitation of section numbers as sources for "Certain Adversary Proceedings" similarly obscured the purpose of a pleading that was aimed squarely at over 700 potential defendants to preference avoidance actions seeking hundreds of millions of dollars.

-17-

**D. Circumstances of the Cases Indicate Lack Of Actual Notice**

41.     There were *no responses or objections to any* of the Service Extension Motions,

even though each such motion proposed to affect the substantial rights of hundreds of defendants

and in adversary proceedings to avoid and recover an aggregate amount of at least several hundred

million dollars.  There were no discouraging words heard at any of the hearings on the Service

Extension motions – because the affected parties were absent by design.

42.     The fact that neither the Defendant nor *any* of the other hundreds of defendants in

the sealed adversary proceedings objected to *any* of the Service Extension Orders – even in view

of the extreme and unexampled length of the extensions sought and granted – fatally undermines

any suggestion that the routinely blast-emailed  ECF filings in the Cases sufficed to put the

Defendant on "actual notice" of the Service Extension Orders.

43.     Had Defendant known about the Adversary Proceeding, it would have had the

opportunity to weigh in on the Service Extension Motions.   Had other similarly-situated

defendants known, they may also have weighed in.

44.     There is no mystery as to why there were no objections to such motions: no one but

the Debtors knew whose rights were at stake.   In the Fourth Extension Motion the Debtors

expressed a wish "to assess the ongoing relationship with certain defendants."  Fourth Extension

Motion, at paragraph 17.  Like its predecessors, the Fourth Extension Motion appealed for the

Court's solicitude for the Debtors' ability to assess relationships with business entities they had

sued, in order to continue depriving such business entities – including the Defendant -- of the

fundamental equity of knowing that they are being sued as they assessed *their* ongoing trade

relationships with the Debtors and their activity in the Cases, including with respect to objecting

to the modifications leading to the Modified Plan.

-18-

### E. Violation of Repose Constitutes Prejudice

45.    As described above, the Service Extension Orders extended the deadline for service

of the Complaint by over two years and two months, in effect more than doubling the length of the

limitations period set by the Congress in section 546(a)(1) of the Bankruptcy Code for actions to

recover preferential transfers under section 547 of the Code.

46.    Limitations periods are intended to protect potential defendants from litigation

prejudice and to provide potential defendants with repose. Through the Debtors' calculated

actions, described above, and through no fault of Defendant, Defendant has been seriously

prejudiced in its ability to defend itself in the Adversary Proceeding and in its conduct of its

business and financial operations.

47.    Congress chose to impose a two-year statute of limitations on avoidance actions.

Regarding limitations periods, the United States Supreme Court has observed that:

> The process of discovery and trial which results in the finding of ultimate
> facts for or against the plaintiff by the judge or jury is obviously more
> reliable if the witness or testimony in question is relatively fresh. Thus in the
> judgment of most legislatures and courts, there comes a point at which the
> delay of a plaintiff in asserting a claim is sufficiently likely either to impair
> the accuracy of the fact-finding process or to upset settled expectations that a
> substantive claim will be barred without respect to whether it is meritorious.

*Board of Regents v. Tomanio*, 446 U.S. 478, 487; 100 S. Ct. 1790; 64 L. Ed. 2d 440(1980); *see*

*United States v. Kubrick*, 444 U.S. 111, 117; 100 S. Ct. 352; 62 L. Ed. 2d 259 (1979) (asserting

that statues of limitation "protect defendants and the courts from having to deal with cases in

which the search for truth may be seriously impaired by the loss of evidence, whether by death or

disappearance of witnesses, fading memories, disappearance of documents, or otherwise").

48.    The Complaint seeks to avoid and recover over $8.7 million based upon product

sent and funds allegedly paid nearly five years ago. To the extent key personnel of the Defendant

-19-

have remained with the Defendant – far from a given in an age of increased workforce mobility – and to the extent memories of such personnel have survived undiminished, and to the extent records have not been purged and remain accessible in electronic storage systems that may have functioned without major glitches and which may not have been changed over completely, perhaps the Defendant has a sporting chance to develop its defenses with somewhere near the efficacy it would have had in 2007. The Defendant should not have to where, as here, the policies behind limitations periods have been flouted and the Defendant has been deprived of the ability to respond meaningfully to the Debtors' campaign of delay.

49.      Courts have held that statutes of limitation are statutes of repose, and they "are enacted upon the presumption, that one having a well-founded claim will not delay enforcing it beyond a reasonable time, if he has the power to sue." *In re Cornwall*, 9 Blatchf. 114, 6 F.Cas. 586, 591 (C.C.D. Conn. Sept. Term 1871). Indeed the purpose of statutes of repose is primarily to give notice to plaintiffs of the time within which to bring suit and to potential defendants of the time beyond which exposure to liability ceases. *See Diversified Hospitality Group, Inc. v. Carson Pirie Scott & Co.*, 1991 US Dist. LEXIS 2761, at *12 (S.D.N.Y. Mar. 8, 1991).

50.      Failure to provide notice to a defendant unfairly prejudices it and the appropriate remedy is to bar the claim. "[E]ven if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and the right to be free from stale claims in time comes to prevail over the right to prosecute them." *Order of R. Telegraphers v. Railway Express Agency, Inc.*, 321 U.S. 342, 349; 64 S. Ct. 582; 88 L. Ed. 788 (1944).

### F. Defendant Is Enduring Particular Prejudice From Lack of Notice

51.      Defendant suffered undue hardship in both the prejudice it suffered to its ability to prepare for and prosecute its defenses to the Complaint, and in the harm these proceedings have

-20-

worked on its business and financial operations, on account of the Defendant's frustrated entitlement to repose upon the close of the applicable limitations period. *See* paragraphs 23-24 above and Exhibit B.

52.    Upon the arguments and facts summoned above, the Defendant submits that manifest injustice has been shown, and that the Court should set aside Service Extension Orders under Civil Rule 54(b).

## II.    The Service Extension Orders Must Be Set Aside Pursuant to Civil Rule 60(b)(4) As They Are Void Because the Defendant was Deprived of Constitutional Rights to Due Process

53.    If the Service Extension orders are construed to be final orders, they should be vacated pursuant to Bankruptcy Rule 9024, which incorporated Civil Rules 60(b)(4) and (6).

54.    Civil Rule 60(b)(4) provides, in relevant part, that "[o]n motion and just terms, the court may relieve a party . . . from a final judgment, order, or proceeding for the following reasons: . . . (4) the judgment is void." Fed.R.Civ.P. 60(b)(4) (2010).

55.    The United States Supreme Court very recently reviewed the application of Civil Rule 60(b)(4) in *United Student Aid Funds v. Espinosa*, No. 08-1134 slip op. (March 23, 2010) The Court explained that "[a] void judgment is a legal nullity," *Id.* at 8 (citations omitted), and that a void judgment (or order) "is one so affected by a fundamental infirmity that the infirmity may be raised even after the judgment becomes final." *Id.* (citations omitted). The Court declared that Rule 60(b)(4) "applies only in the rare instance where a judgment is premised either on a certain type of jurisdictional error *or on a violation of due process that deprives a party of notice or the opportunity to be heard.*" *Id.* (emphasis added and citations omitted).

56.    The Court further explained: "Due process requires notice 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford

them an opportunity to present their objections.'" *Id.* at 10, quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314; 70 S. Ct. 652; 94 L. Ed. 865 (1950).

57.     As argued above, the Defendant did not receive actual notice or any other notice of the Service Extension Orders and was, therefore, deprived of a full and fair opportunity to litigate the dispute.

58.     The Service Extension Orders, if the Court construes them as final orders, should be vacated as void, pursuant to Rule 60(b)(4).

**III.     The Service Extension Orders Must Be Set Aside Pursuant to Civil Rule 60(b)(6) Because of the Exceptional Circumstances and Extreme Prejudice Suffered By Defendant**

59.     Civil Rule 60(b) provides, in relevant part:

> On motion and just terms, the Court may relieve a party or its legal representative from a final judgment, order or proceeding for the following reasons: . . . (6) any other reason that justifies relief.

Fed.R.Civ.P. 60(b).

60.     Civil Rule 60(b)(6) "confers broad discretion on the trial court to grant relief when appropriate to accomplish justice [and] it constitutes a grand reservoir of equitable power to do justice in a particular case," *Pichardo v. Ashcroft*, 374 F.3d 46, 56 (2d Cir. 2004) (citations and quotations marks omitted), and "is properly invoked where there are extraordinary circumstances or where the judgment may work an extreme and undue hardship." *Id.* (citations and quotation marks omitted). "The 'extraordinary circumstances' required for relief under Rule 60(b)(6) must also suggest that the moving party 'is faultless in the delay.'" *Orix Fin. Servs., Inc. v. Cline*, 579 F.Supp. 2d 498, 512 (S.D.N.Y. 2008), *affirmed in relevant part and vacated in part* by *Orix Fin. Servs. v. Cline*, 2010 U.S. App. LEXIS 4916 (2d Cir. Mar. 9, 2010) (quoting *Pioneer Inv. Servs. Co v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 393, 113 S.Ct. 1489, 123 L.Ed. 2d 74 (1993)).

-22-

61.    The extraordinary circumstances here are the lack of notice to Defendant for the Service Extension Motions, and the sundry relief provided in the Service Extension Orders, including the filing of the Complaint under seal, which together in all practical respects secretly doubled the length of the applicable limitations period.  The Defendant was faultless in creating these circumstances.

62.    The extraordinariness of the circumstances described herein speak for themselves. In *Radack v. Norwegian America Line Agency*, 318 F.2d 538 92d Cir. 1963), the Court concluded that where no actual notice was given of the entry of judgment, a court has the power, in the exercise of its sound discretion, to grant relief under Rule 60(b)(6).  *Radack*, 318 F.2d at 543.  The Defendant urges the Court to exercise that power.

63.    Defendant suffered extreme and undue hardship in both the prejudice it suffered to its ability to prepare for and prosecute its defenses to the Complaints, and in the harm these proceedings have worked on its business and financial operations, on account of the Defendant's frustrated entitlement to repose upon the close of the applicable limitations period, as described above and in Exhibit B.

64.    The Service Extension Orders, entered in proceedings in which the Defendant was prevented from full and fair participation, which provided for the immense and inequitable delays in service of the Complaint described herein, and which effectively *doubled* the Congressionally-mandated stature of limitations, constitute extraordinary circumstances and have caused undue hardship to Defendant.  The Service Extension Orders, if the Court construes them as final orders, must be set aside under Civil Rule 60(b)(6).

-23-

IV.    **The Service Extension Orders Should be Vacated Because No Cause Existed for The Extensions**

65.    Civil Rule 4(m) is incorporated into the Bankruptcy Rules by Bankruptcy Rule 7004(a)(1) and provides that "If a defendant is not served within 120 days after the complaint is filed the court – on motion or in its own after notice to the plaintiff -- must dismiss the action without prejudice against the defendant or order that service be made within a specified time.   But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." Fed.R.Civ.P 4(m) (2010).

66.    The Service Extension Orders recited this Rule and purported to present good cause for the extensions requested.   The 120th day after the Complaint was filed was January 27, 2008.   The Service Extension Motions collectively extended the service deadline from January 27, 2008 to 180 days after consummation of the Modified Plan.   Consummation of the Modified Plan occurred on October 6, 2009.   The 180th day after October 9, 2009 is April 16, 2010.   The Service Extension Motions – capped by the Fourth Extension Order -- thus extended the due date for service of the summons and Complaint some *799* days beyond the date set by Civil Rule 4(m). The Debtors assert that they mailed service of the Complaint a more modest 774 days after the Rule-mandated deadline.

67.    Federal courts of appeal have concluded that trial courts may revoke a previously granted Rule 4(m) extension where such court determines that the extension was inappropriate (particularly where, as here, the defendant was not given notice or an opportunity to be heard in the first instance):

> [Rule 4(m)] does not address the authority of a district court that has granted [] an extension to revoke it if it subsequently determines that good cause has not been shown.   We discern no reason why a district court should not be able to do so, especially where (as here) the party to be served was initially not given notice of

-24-

the motions to extend or given a formal opportunity to respond to them . . . If a district court concludes that good cause had not been shown, it is within its discretion to vacate its prior extension of time for effecting service that was based upon that erroneous foundation.

*McCrae v. KLLM Inc.* 89 Fed. Appx. 361, 363 (3d Cir. 2004).

68.    The prejudice suffered by Defendant due to the Service Extension Orders is set forth above and incorporated here. Apart from prejudice to the Defendant, the Debtors never articulated good cause in any of the Service Extension Motions or orally at hearings on same. The cases cited in the Service Extension Motions in support of finding good cause for the extensions did not approve of extensions remotely as long as those granted in the Service Extension Orders. A diligent search for extensions of such deadlines in other cases did not disclose any extension of anywhere near the duration of the extensions granted by the Service Extension Orders. Further, in each of the cases cited in the Service Extension Motions and in each of the cases reviewed by undersigned counsel, and (in stark contrast to the present case) such extensions were granted *after hearing in the presence of adverse parties which had been notified of such proceedings.*[6]

69.    The Complaint having been filed on September 27, 2007, and the 120th day after the Complaint being January 27, 2008, any Complaint served after such point must, per Civil Rule 4(m), be dismissed unless an extension for service was validly granted upon a showing of good cause. The Service Extension Orders, which provided for such extensions, were not supported by cause and must be vacated.

---

[6] For example, the Debtors cite *Bank of Cape Verde v. Bronson*, 167 F.R.D. 370 (S.D.N.Y. 1996) for the propositions that good cause existed where future events would have likely obviated the need to serve the complaint and when the plaintiff requested the extension before the deadline expired. In *Bank of Cape Verde*, the third-party plaintiff was pursuing good-faith settlement negotiations with the plaintiff and third-party defendants, and had already served all or most of the parties to the action prior to the expiration of the 120-day deadline. *Id.* at 371-72. In the Adversary Proceeding, the Defendant was not, and could not have been, in settlement negotiations with the Debtors, as it did not even know that it had been sued. In cases where lengthy extensions are permitted, complaints were not filed under seal, defendants were on notice that they were being sued and plaintiffs were attempting to effectuate service. *See, e.g., Cohen v. Stokes Elec. Supply (In re Submicron Sys. Corp.)*, 2004 U.S. Dist. LEXIS 19170 (D. Del. Sept. 21, 2004); and *Moll v. Parker (In re Parker)*, 2007 Bankr. LEXIS 3297 (Bankr. E.D. Tenn. Sept. 25, 2007).

-25-

**V.    The First Service Extension Order Should be Vacated Because it Improperly Authorized Filing the Complaint Under Seal**

70.    The First Service Extension Order should be vacated as to Defendant because the Court erroneously granted Debtors leave to file the Complaint under seal.

71.    There "is a strong presumption and public policy in favor of public access to court records," which is "rooted in the public's First Amendment right to know about the administration of justice." *In re Food Management Group, LLC*, 359 B.R. 543, 553 (Bankr. S.D.N.Y. 2007) (internal citations and quotations omitted). In fact, the "public interest in openness of court proceedings is at its zenith when issues concerning the integrity and transparency of bankruptcy court proceedings are involved." *Id.; see also Gitto v. Worcester Telegram & Gazette Corp. (In re Gitto Global Corp.)*, 422 F.3d 1, 7 (1st Cir. 2005) ("This governmental interest is of special importance in the bankruptcy arena, as unrestricted access to judicial records fosters confidence among creditors regarding the fairness of the bankruptcy system.").

72.    Section 107(a) of the Bankruptcy Code codified the common law right of public access in the bankruptcy setting and provides, in relevant part, that "a paper filed in a case under this title and the dockets of a bankruptcy court are public records and open to examination by an entity at reasonable times without charge." 11 U.S.C. § 107(a); *In re Food Management Group, LLC, supra* at 553. The "plain meaning of § 107(a) mandates that *all* papers filed with the bankruptcy court are 'public records' unless the bankruptcy court 'decides to protect the information pursuant to the standards set forth in [§] 107(b).'" *In re Food Management Group, LLC, supra* at 553 (quoting *Air Line Pilots Ass'n Int'l v. Am. Nat'l Bank and Trust Co. (In re Ionosphere Clubs)*, 156 B.R. 414, 433 n.7 (S.D.N.Y. 1993)).

-26-

73.     Section 107(b) of the Bankruptcy Code establishes two exceptions to the general right of access where under "compelling or extraordinary circumstances" an exception is necessary. *Video Software Dealers Ass'n v. Orion Pictures Corp. (In re Orion Pictures Corp.)*, 21 F.3d 24, 27 (2d Cir. 1994). Section 107(b) provides:

> On request of a party in interest, the bankruptcy court shall, and on the bankruptcy court's own motion, the bankruptcy court may—(1) protect an entity with respect to a trade secret or confidential research, development, or commercial information; or (2) protect a person with respect to scandalous or defamatory matter contained in a paper filed in a case under this title.

11 U.S.C. § 107(b). However, "a judge must carefully and skeptically review sealing requests to insure that there really is an extraordinary circumstance or compelling need" to keep the material private. *In re Food Management Group, LLC, supra* at 554 (internal citation and quotation omitted).

74.     Here the Debtors claimed that they needed special protection in order to preserve both the "status quo" and their "existing business relationships," and that this amounted to "commercial information" under the statute. *See* First Extension Motion, paragraphs 33-34.

75.     This rationale cannot rise to the "exceptional circumstances" envisioned by Congress and articulated in the Bankruptcy Code. The need to protect one's business operations and supplier relationships exists in every corporate reorganization. There is nothing exceptional or unusual about such needs. To recite such needs successfully here would be to expand section 107 and invite the sealing of myriad pleadings in most reorganization cases.

76.     Moreover, the Second Circuit has expressly defined "commercial information" to be "information which would cause an unfair advantage to competitors by providing them with information as to the commercial operations of the debtor." *In re Orion Pictures Corp.*, 21 F.3d

-27-

24, 27 (2d Cir. 1994). The Complaint was sealed. None of the scant facts in the Complaint constitutes information that would "give an unfair advantage to competitors" and none has anything to do with confidential "commercial operations of the debtor." Defendant is not and never was a competitor of the Debtors.[7]

77.    The fact that the Debtors are seeking to avoid allegedly preferential payments to Defendant is not "commercial information" that needed to be kept or should have been kept confidential. If the contrary is true, then no avoidance complaints need be revealed in any complex chapter 11 case, which would be an incoherent policy antithetical to due process. There having been no valid basis for its entry, the First Service Extension Order as regards the authority to file the Complaint under seal should be vacated as to Defendant.

## VI.    The Service Extension Orders Being Vacated, The Complaint Must Be Dismissed With Prejudice

78.    If one or more of the Service Extension Orders are vacated or set aside under any of the grounds set forth herein, the Complaint must be dismissed pursuant to Civil Rule 4(m) and Bankruptcy Rule 7012(b)(6 and Civil Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

## VII.    The Complaint is Barred By Judicial Estoppel

79.    The doctrine of judicial estoppel "prevents a party from asserting a factual position in a legal proceeding that is contrary to a position previously taken by [that party] in a prior legal proceeding." *In re Venture Mortgage Fund, L.P.,* 245 B.R. 460, 471 (Bankr. S.D.N.Y. 2000),

---

[7]    In support of their proposition that maintenance of ongoing business relationships was "commercial information" entitled to protection, the Debtors cited to *In re Service Merchandise,* et al., Case No. 399-02649 (Bankr.M.D.Tenn. Feb. 27, 2001) where the court granted the debtors authority to file under seal certain adversary proceedings so that they could continue negotiations with the defendants, who were also the debtors' business partners. Even if that ruling were correct as a matter of law, which Defendant disputes, the case is inapposite to the situation here, as Defendant is not a business partner of the Debtors.

-28-

*aff'd* 282 F.3d 185 (2d Cir. 2002). Judicial estoppel "generally prevents a party form prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *New Hampshire v. Maine*, 532 U.S. 742, 749; 121 S. Ct. 1808; 149 L. Ed. 2d 968 (2001). The purpose of judicial estoppel is to "protect the integrity of the judicial process . . . by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *Id.* at 749-50.

80.    The Second Circuit has identified two factors that must be satisfied to invoke judicial estoppel: (i) the party against whom estoppel is asserted took an inconsistent position in a prior proceeding, and (ii) the first tribunal adopted the inconsistent position in some manner, such as by rendering a favorable judgment. *In re Venture Mortgage Fund, L.P.*, 245 B.R. at 472.

81.    The Debtors repeatedly represented to the Court that they intended to pursue avoidance claims only against the four Laneko defendants. The Debtors took this position in Exhibit 7.24 of the confirmed First Plan, and reaffirmed this position in their Second and Third Extension Motions as bases for the relief granted therein, which motions were granted.

82.    At paragraph 17 of their Second Extension Motion, the Debtors asserted that they would "not retain any of the causes of action asserted in the [adversary proceedings] except those specifically listed on Exhibit 7.24 to the Plan." The Debtors went on to state in that paragraph (and n.4 thereto) that of the 742 adversary proceedings commenced under seal, only the claims relating to Laneko Engineering Co., Wachovia Bank, National Association, Laneko Engineering Co. Inc., and their affiliates and subsidiaries were subject to the First Extension Order. The Debtors reiterated this assertion in their Third Extension Motion at paragraph 18 and note 4.

83.    In entering the orders upon the representations set forth in these motions, the Court adopted the inconsistent position.

-29-

84.    At the hearing on the Third Extension Motion, the Debtors went out of their way to assure the Court that they gave "specific" and "particularized" notice only to "Lenico Engineering Company" and "Wachovia Bank National Association" because those entities had been identified in Exhibit 7.24 of the First Plan, *see* April 30, 2008 Tr. pp. 11-12, attached hereto as Exhibit D. Thus the Debtors implicitly admitted that Defendant and the rest of defendants were *not* given particularized or specific notice and, by attaching such importance to the particularized notice given the Laneko defendants, indicated that the relief sought pertained to those actions only.

85.    By bringing the Complaint and 176 others like it, the Debtors now take a position which contradicts the position they advanced in support of the relief granted by the Court in the Second and Third Extension Orders.    Such action is impermissible and, accordingly, the Complaint should be dismissed. *See Galerie Des Monnaies of Geneva, Ltd. v. Deutsche Bank, A.G., New York Branch (In re Galarie des Monnaies of Geneva, Ltd.)*, 55 B.R. 253, 260 ) Bankr. S.D.N.Y. 1986) (granting defendant's motion to dismiss where debtor who stated in its disclosure statement that it has no preference actions "may not thereafter reverse its field and commence a preference action for its own benefit").

**VIII.    The Complaint is Barred By Res Judicata**

86.    The Plaintiffs lack standing to pursue the Complaint because the Adversary Proceeding was not specifically retained as a cause of action in the Modified Plan, and because the Debtors did not adequately describe the preserved causes of action in the Modified Plan so as to preserve the Adversary Proceeding for the benefit of the Debtors' estates.

87.    "The confirmation of a bankruptcy plan of reorganization must be accorded res judicata effect . . .[and] prevents the subsequent assertion of any claim not preserved in the plan as required by § 1123(b)(3)." *In re I. Appel Corp.*, 300 B.R. 564, 566-67 (Bankr. S.D.N.Y. 2003).

-30-

88.     The Debtors listed the causes of action they intended to preserve in Exhibit 7.24 of the confirmed First Plan and 7.19 of the Modified Plan.  Article 7.24 of the First Plan and Article 7.19 of the Modified Plan state that "Causes of Action against Persons arising under sections 544, 545, 547, 548, or 553 of the Bankruptcy Code or similar state laws shall not be retained by the reorganized Debtors unless specifically listed on Exhibit 7.24 [7.19 in the Modified Plan]."  Upon entry of the Confirmation Order, the Debtors lost the ability to amend Exhibit 7.24 (and, therefore, 7.19).  Accordingly, the Debtors are barred by res judicata from pursuing any causes of action other than those specifically preserved in Exhibits 7.24 and 7.19, which do not list the Adversary Proceeding.

89.     If this Court concludes that Debtors had the right to amend such exhibits, the Debtors' inadequate description of the avoidance failed preserve the action against Defendant. Exhibits 7.19 and 7.24 disclosed neither the identity of Defendant nor the value of any claims against Defendant.  Nowhere in the Modified Plan or the Amended Disclosure Statement (Docket No. 17071) did Debtors discuss any reversal of their position that they would pursue claims only against the Lenako defendants.   The Debtor's blanket reservation of causes of action was insufficient to avoid the res judicata effect of a confirmed plan on a cause of action like the Adversary Proceeding.  *See Browning v. Levy*, 283 F.3d 761, 775 (6th Cir. 2002) (concluding that blanket reservation does not defeat application of res judicata where it did not name defendants nor state a factual basis for reserved causes of action – and did not enable the value of such claims to be taken into account in the disposition of debtor's estate).

90.     Accordingly, the Complaint should be dismissed.

6407356.2 30885/135676

IX.    **The Complaint is Barred by Laches**.

91.    Laches is a defense established by a defendant showing that (i) it lacked knowledge that the claim might be asserted against it, (ii) the plaintiff delayed asserting the claim despite an opportunity to do so, and (iii) it would be prejudiced if the claim were now allowed to go forward. *In re Gucci*, 197 Fed. Appx. 58, 60 (2d Cir. 2006).

92.    As discussed above, Defendant had no knowledge both before and after the limitations period had run, that the Complaint and its underlying claims would be asserted against it.

93.    The Plaintiffs had numerous opportunities to assert their claims against Defendant. After the failure of financing of the First Plan in April of 2008 – two years before the Complaint surfaced – the Plaintiffs knew that creditors would no longer be paid in full. From that point forward, there was no longer even the prior "justifications" for keeping the complaints a secret.

94.    The prejudice to the Defendant has been discussed at length above. Accordingly, the Complaint should be dismissed for laches.

X.    **The Complaint Should be Dismissed Because it Fails to Plead Adequately Under** *Iqbal*

95.    The Complaint does not state a claim for relief under section 547 of the Bankruptcy Code and must be dismissed pursuant to Civil Rule 12(b)(6).

96.    In *Bell Atl. Corp v. Twombley*, 127 S. Ct. 1955; 167 L. Ed. 2d 929 (2007), the United States Supreme Court held that a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Bell Atl. Corp.*, 550 U.S. at 570. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not suffice. *Id.* at 555. Elaborating upon this holding, the Supreme Court recently stated that

-32-

"[t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements do not suffice." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). Further,

> [A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court shall assume their veracity and then determine whether they plausibly give rise to an entitlement of relief.

*Id.* at 1950.

97.     In *Angell v. Haven (In re Careamerica)*, 409 B.R. 346, 350 (Bankr. E.D.N.C. 2009), the court, applying these principles, held that a preference complaint did not contain sufficient factual allegations to show that it was plausible that a transfer of the interest of the debtor in property occurred because the debtor failed to identify which of the debtors made the alleged transfers. The courts also held that the complaint did not contain sufficient allegations to show that it was plausible that the alleged transfers were made on account of an antecedent debt, because the plaintiff failed to assert the nature and amount of the antecedent debt. *Id.* at 351. The court explained that *Twombley* requires that "the trustee must allege facts regarding the nature and amount of the antecedent debt which, if true, would render plausible the assertion that a transfer was made for or on account of such antecedent debt." *Id.*

98.     The Complaint does not contain sufficient factual matter to state a claim for relief under section 547 of the Bankruptcy Code which is plausible on its face. The Complaint consists of a formulaic recitation of the elements of a claim for relief under section 547, plus an exhibit that itself provides no specific information other than "transfer date," "transfer amount," and "transfer type" for the numerous alleged transfers Plaintiffs seek to avoid. *See* Exhibit F.

-33-

99.    The Complaint states that it is brought on behalf of "Delphi Corporation ('Delphi') and other [unnamed] above captioned debtors and debtors in possession." *Id.* The Complaint provides no facts beyond those in its lone exhibit.   The Complaint does not identify which of the dozens of Plaintiffs actually owed the money allegedly transferred, or which of the dozens of Plaintiffs actually made the alleged transfers.  The Complaint does not allege any facts regarding the nature or amount of the antecedent debt (perhaps the Plaintiffs hope to find out who they are and what they have done through the process of discovery).  If anything, the Complaint more thoroughly fails under *Twombley* and *Iqbal* than did the complaint described in *Careamerica.*

100.    The Court should dismiss the Complaint for failure to state a claim.

**XI.    The Complaint Should Be Dismissed as to Doshi Prettl Int. Because This Entity Does Not Exist.**

101.    The Plaintiffs have named two defendants: Doshi Prettl International and Doshi Prettl Int. Doshi Prettl International exists. To its knowledge, Doshi Prettl Int. does not exist and is not separate entity related to Doshi Prettl International.  Therefore, the Complaint should be dismissed as to Doshi Prettl Int.

**XII.    Defendant Incorporates All Applicable Arguments Raised by Other Defendants in Their Dismissal Motions**

102.    Numerous other motions seeking dismissal of complaints have been filed by other defendants in avoidance actions filed by Plaintiffs.   Because the facts surrounding these complaints are in many respects similar to the facts surrounding the Complaint, Defendant incorporates all applicable arguments raised by such other defendants in their dismissal motions.

-34-

## Memorandum of Law

103.    Since the legal points and authorities upon which this Motion relies are incorporated herein, the Defendant respectfully requests that the requirement of the service and filing of a separate memorandum of law under Local Rule 9013-1(b) be deemed satisfied.

## Conclusion

104.    For the reasons set forth herein, all of the Service Extension Orders should be vacated or set aside and the Complaint should be dismissed with prejudice.

CLARK HILL PLC


/s/ Christopher M. Cahill
Joel Applebaum
Mahesh K. Nayak
Christopher M. Cahill (*pro hac vice*)
151 South Old Woodward Avenue, Suite 200
Birmingham, Michigan 48009
(313) 965-8300

Attorneys for Defendant

Dated: May 14, 2010


## CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of May, 2010, a copy of the foregoing was electronically filed with the Clerk of the Court using the ECF system which will send notification of such filing to all counsel of record.

-35-

I further certify that on the 14th day of May, 2010, a copy of the foregoing was mailed by first-class U.S. Mail on the following:

| | |
|---|---|
| DPH Holdings Corp.<br>Attn: John Brooks<br>5725 Delphi Drive<br>Troy, Michigan 48098 | Butzel Long<br>Attn: Cynthia J. Haffey<br>150 W. Jefferson Avenue<br>Suite 100<br>Detroit, Michigan 48226 |
| Butzel Long<br>Attn: Eric Fisher<br>380 Madison Avenue, 22nd Floor<br>New York, New York 10017 | Latham & Watkins<br>Attn: Mark A. Broude/Robert J. Rosenberg<br>885 Third Avenue<br>New York, New York 10022 |
| Warner Stevens, L.L.P.<br>Attn: Michael D. Warner<br>301 Commerce Street<br>Suite 1700<br>Fort Worth, Texas 75102 | Office of the U.S. Trustee<br>Attn:  Alicia M. Leonhard, Trace Hope Davis<br>and Brian Masumoto<br>33 Whitehall Street, 21st Floor<br>New York, New York  10004 |

/s/ Christopher M. Cahill
Christopher M. Cahill
Clark Hill PLC

I further certify that on the 14th day of May, 2010, a copy of the foregoing was sent via Federal Express overnight mail upon the Honorable Robert D. Drain, U.S. Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, White Plains, New York 10601-4140.

/s/ Christopher M. Cahill
Christopher M. Cahill
Clark Hill PLC

-36-