STITES & HARBISON PLLC
Robert C. Goodrich Jr. (TN 10454)
Madison L. Martin (TN 24027)
401 Commerce Street, Suite 800
Nashville, TN 37219
Tel: (615) 244-5200
Fax: (615) 782-2371
Email: robert.goodrich@stites.com
       madison.martin@stites.com

        -and-

John A. Bicks (JB 3496)
SONNENSCHEIN NATH & ROSENTHAL LLP
1221 Avenue of the Americas
New York, New York 10020-1089
Tel:  (212) 768-6700
Fax: (212) 768-6800

*Attorneys for Setech, Inc.*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ---------------------------------------------------------- x | | |
| IN RE: | : | Chapter 11 |
| | : | |
| DPH HOLDINGS CORP., *et al.,* | : | Case No. 05-44481 (RDD) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| ---------------------------------------------------------- x | | |
| DPH HOLDINGS CORP., *et al.,* | : | |
| | : | |
| Plaintiffs, | : | Adv. Pro. No. 07-02619 (RDD) |
| | : | |
| Against | : | |
| | : | |
| SETECH INC. and SETECH, | : | |
| | : | |
| Defendants. | : | |
| ---------------------------------------------------------- x | | |

### SETECH, INC.'S MOTION TO VACATE AND TO DISMISS

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................ 1

TABLE OF AUTHORITIES ..................................................................................... 2

PRELIMINARY STATEMENT .................................................................................. 1

STATEMENT OF FACTS .......................................................................................... 3

ARGUMENT ............................................................................................................. 14

I.      THE DEBTORS WAIVED AND ABANDONED AVOIDANCE CLAIMS AGAINST
        SETECH AND ARE PRECLUDED FROM ASSERTING THEM. ............................ 14

A.      The Debtors Waived and Abandoned Avoidance Claims in the Setech Essential Supplier
        Agreement in October 2005. ........................................................................... 14

        1.      Debtors Released All Claims to the Setech Prefund Transfer................. 14

        2.      The Debtors Waived And Abandoned Avoidance Of The Product
                Payments And Are Estopped From Asserting Otherwise. ...................... 15

B.      The Debtors Abandoned Avoidance Claims in 2008 and Are Judicially Estopped from
        Asserting Avoidance Claims against Setech. .................................................... 16

II.     THE EXTENSION ORDERS SHOULD BE VACATED ON THE BASES OF LACK
        OF DUE PROCESS AND THE DEBTORS' INABILITY TO SATISFY THE
        REQUIREMENTS FOR EXTENSION UNDER BANKRUPTCY RULE 7004(m). .... 21

A.      Setech Is Entitled to Relief Under Bankruptcy Rule 9024 ............................... 21

        1.      Due Process Requires Notice and an Opportunity To Be Heard
                Before a Substantive Right Is Altered. ................................................. 21

        2.      Debtors Ignored Even the Minimal Notice Requirements of Their
                Own Case Management Orders ............................................................ 24

        3.      Indefinite Service Extensions Violate 11 U.S.C. § 546. ........................ 25

        4.      Sealing The Complaint Violated Bankruptcy Code § 107...................... 28

        5.      In The Aftermath Of A Secret Complaint, The Extension Motions
                Were *Ex Parte*, Denying Setech Due Process. ....................................... 31

B.      Under Current Circumstances, the Debtors Have No Basis for an Extension of the Initial
        Service Deadline of 120 Days from the Filing of the Complaint. ..................... 34

C.      After a Two and One-Half Year Delay, Setech and This Court Are Prejudiced by the Seal
        and Extension Orders. .................................................................................... 37

        1.      Prejudice Is Presumed. ........................................................................ 37

        2.      Actual Prejudice Has Occurred. .......................................................... 38

D.      Plaintiffs Are Not Entitled to Equitable Tolling. ............................................ 39

III.    THE COMPLAINT FAILS TO STATE A CLAIM. ............................................... 43

CONCLUSION ......................................................................................................... 44

MEMORANDUM OF LAW ....................................................................................... 45

## TABLE OF AUTHORITIES

### CASES

*Ahern v. Neve*, 285 F. Supp. 2d 317 (E.D.N.Y. 2003) ................................................................ 33

*Air Line Pilots Ass'n Int'l v. Am. Nat'l Bank & Trust Co. (In re Ionosphere Clubs)*, 156 B.R. 414 (S.D.N.Y. 1993) .............................................................................. 28

*Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974) ............................................................. 40

*Babigian v. Ass'n of the Bar of the City of New York*, 144 F.R.D. 30, 33 (S.D.N.Y. 1992) .................................................................................................................................. 20

*Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147 (1984)............................................... 40

*Bank of Cape Verde v. Bronson*, 167 F.R.D. 370 (S.D.N.Y. 1996) ........................................ 34

*Barcia v. Sitkin*, 367 F.3d 87 (2d Cir. 2004).......................................................................... 21

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)............................................................ 42

*Bernays v. Frederic Leyland & Co.*, 228 F. 913 (D. Mass. 1915) .......................................... 36

*Blumberg v. HCA Mgmt. Co.*, 848 F.2d 642 (5th Cir. 1988) .................................................. 41

*Bornstein v. Poulos*, 793 F.2d 444 (1st Cir. 1986) ................................................................ 39

*Cherno v. Dutch Am. Mercantile Corp.*, 353 F.2d 147 (2d Cir. 1965) ................................... 40

*Cottier v. City of Martin*, 551 F.3d 733 (8th Cir. 2008) ........................................................ 35

*Davis v. Musler*, 713 F.2d 907 (2d Cir. 1983) ...................................................................... 20

*Diversified Hospitality Group, Inc. v. Carson Pirie Scott & Co.*, 1991 WL 35953 (S.D.N.Y. Mar. 8, 1991) ................................................................................................ 22

*Doe v. Shakur*, 164 F.R.D. 359 (S.D.N.Y. 1996)................................................................... 31

*English v. Pabst Brewing Co.*, 828 F.2d 1047 (4th Cir. 1987) ............................................... 40

*Enron Corp. v. Bear, Stearns Int'l Ltd. (In re Enron Corp.)*, 323 B.R. 857 (Bankr. S.D.N.Y. 2005)................................................................................................................ 42

*Ernst & Young v. Matsumoto (In re United Ins. Mgmt. Inc.)*, 14 F. 3d 1380 (9th Cir. 1994) ....................................................................................................................... 40

*Evans v. Ottimo*, 469 F.3d 278, 281 (2d Cir. 2006) .............................................................. 14

*Family Golf Ctrs., Inc. v. Acushnet Co. (In re Randall's Island Family Golf Ctrs., Inc.)*, 288 B.R. 701 (Bankr. S.D.N.Y. 2003).................................................................. 22

*Friedl v. City of New York*, 210 F.3d 79 (2d Cir. 2000) ......................................................... 43

*FTC v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404 (1st Cir. 1987) .......................................... 28

*Galerie Des Monnaies of Geneva, Ltd. v. Deutsche Bank, A.G., New York Branch (In re Galerie Des Monnaies of Geneva, Ltd.)*, 55 B.R. 253 (Bankr. S.D.N.Y. 1985), aff'd 62 B.R. 224 (S.D.N.Y. 1986).................................................................... 18

*Gitto v. Worcester Telegram & Gazette Corp. (In re Gitto Global Corp.)*, 422 F.3d 1 (1st Cir. 2005)..................................................................................................... 28

*Global Crossing Estate Representative v. Alta Partners Holdings LDC (In re Global Crossing, Ltd.)*, 385 B.R. 52 (Bankr. S.D.N.Y. 2008).................................... 25, 26

*Grannis v. Ordean*, 234 U.S. 385 (1914) ............................................................................. 20

*Greenspahn v. Joseph E. Seagram & Sons, Inc.*, 186 F.2d 616 (2d Cir. 1951)........................ 15

*Hallock v. State*, 474 N.E.2d 1178 (N.Y. 1984) ................................................................... 15

*Hay v. First Interstate Bank of Kalispell, N.A.*, 978 F.2d 555 (9th Cir. 1992) ........................ 19

*Hedvat v. Rothschild*, 175 F.R.D. 183 (S.D.N.Y. 1997) ............................................... 27

*Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085 (2d Cir. 1995) ..................................... 42

*Huntington Dental & Med. Co. v. Minnesota Mining & Mfg. Co.*, No. 95 Civ.
    10959, 1998 WL 60954, 1998 U.S. DIST. LEXIS 1526 (S.D.N.Y. 1998) ............................ 42

*In re Cornwall*, 9 Blatchf. 114, 6 F.Cas. 586, 591 (C.C.D. Conn. Sept. Term
    1871) ......................................................................................... 22

*In re EPIC Assocs. V*, 54 B.R. 445 (Bankr. E.D. Va. 1985) ......................................... 28

*In re Food Mgmt. Group*, 359 B.R. 543 (Bankr. S.D.N.Y. 2007) ..................................... 28

*In re Kmart Corp.*, 359 F.3d 866 (7th Cir. 2004) .............................................. 24, 25

*In re Thomas*, 204 F.2d 788 (7th Cir. 1953) ...................................................... 40

*In re Venture Mortgage Fund, L.P.*, 245 B.R. 460 (S.D.N.Y. 2000), *aff'd*, 282
    F.3d 185 (2d Cir. 2002) ..................................................................... 17, 18

*In re White*, 104 B.R. 951 (S.D. Ind. 1989) ...................................................... 40

*Jobin v. Boryla* (*In re M & L Bus. Mach. Co., Inc.*), 75 F. 3d 586 (10th Cir. 1996) ................ 40

*Johns-Manville Corp. v. Chubb Indem. Ins. Co.* (*In re Johns-Manville Corp.*),
    Docket Nos. 06-2103-bk, 06-2118-bk, 06-2186-bk, 2010 U.S. App. LEXIS
    5877 (2d Cir. 2010) ............................................................................ 25

*Jonas v. Citibank, N.A.*, 414 F. Supp. 2d 411 (S.D.N.Y. 2006) ................................... 25

*Kilmer v. Flocar*, 212 F.R.D. 66 (N.D.N.Y. 2002) ............................................ 21, 30

*Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350 (1991) ..................... 38

*Lepkowski v. United States Dep't of Treasury*, 804 F.2d 1310, 1314 (D.C. Cir.
    1986) ......................................................................................... 20

*Linc Capital, Inc. v. Cavanaugh*, 296 B.R. 474 (Bankr. N.D. Ill. 2003) ......................... 22, 23

*Masefield AG v. Colonial Oil Inds.*, 2005 WL 2105542, 2005 U.S. DIST. LEXIS
    18787 (S.D.N.Y. Sept. 1, 2005) ................................................................ 42

*McColley v. Rosenberg* (*In re Candor Diamond Corp.*), 76 B.R. 342 (Bankr.
    S.D.N.Y. 1987) ................................................................................ 38

*McCurdy v. Am. Bd. of Plastic Surgery*, 157 F.3d 191 (3d Cir. 1998) ............................. 35

*Mendez v. Elliot*, 45 F.3d 75 (4th Cir. 1995) .................................................... 33

*Metzeler v. Bouchard Transp. Co.* (*In re Metzeler*), 66 B.R. 977 (Bankr. S.D.N.Y.
    1986) ......................................................................................... 38

*Miller v. Int'l Tel. & Tel. Corp.*, 755 F.2d 20 (2d Cir. 1985) ................................... 41

*Morse v. Perrotta (In re Perrotta)*, 406 B.R. 1 (Bankr. D.N.H. 2009) ............................. 21

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) ............................ 21, 23

*New Hampshire v. Maine*, 532 U.S. 742 (2001) .................................................... 17

*Order R.R. Telegraphers v. Ry. Express Agency*, 321 U.S. 342 (1944) ............................. 40

Patterson v. Newspaper & Mail Deliverers' Union of N.Y. & Vicinity, 2005 U.S.
    Dist. LEXIS 37538 (S.D.N.Y. July 13, 2005) .................................................... 15

*Pearson v. Dennison*, 353 F.2d 24 (9th Cir. 1965) ............................................... 36

*Pioneer Inv. Servs., Inc. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380 (1993) ................ 20

- 3 -

*Powell, Inc. v. Abney*, 669 F.2d 348 (5th Cir. 1982) ................................................................ 41

*Rasbury v. IRS (In re Rasbury)*, 24 F.3d 159 (11th Cir. 1994) ................................................ 35

*Redding v. Essex Crane Rental Corp.*, 752 F.2d 1077 (5th Cir. 1985) ..................................... 34

*Rodriguez-Suris v. Montesinos*, 935 F. Supp. 71 (D.P.R. 1996), *vacated on other grounds*, 123 F.3d 10 (1st Cir. 1997) ........................................................................... 21

*Rosenshein v. Kleban*, 918 F. Supp. 98 (S.D.N.Y. 1996) ......................................................... 17

*Tracar v. Silverman (In re Am. Preferred Prescription, Inc.)*, 266 B.R. 273, 279 (E.D.N.Y. 2000) ............................................................................................................. 14

*Trident Groupage v. Royal Coffee, Ltd.*, 1996 U.S. Dist. LEXIS 11187, No. 94 CIV. 6065, 1996 WL 445356 (S.D.N.Y. Aug. 6, 1996) ..................................................... 20

*Video Software Dealers Ass'n v. Orion Pictures Corp. (In re Orion Pictures Corp.)*, 21 F.3d 24 (2d Cir. 1994) ............................................................................................. 28

*Volk v. D.A. Davidson & Co.*, 816 F.2d 1406 (9th Cir.1987) ................................................... 39

*Weigner v. City of New York*, 852 F.2d 646 (2d Cir. 1988) ...................................................... 21

*Zapata v. City of New York*, 502 F.3d 192 (2d Cir. 2007), *cert. denied*, 552 U.S. 1243 ......................................................................................................................... 35, 36

## STATUTES

11 U.S.C. § 105 ..................................................................................................................... 1, 24

11 U.S.C. § 107 ......................................................................................................................... 29

11 U.S.C. § 107(a) ............................................................................................................... 27, 30

11 U.S.C. § 107(b) .............................................................................................................. 28, 30

11 U.S.C. § 107(b)(1) ............................................................................................................... 29

11 U.S.C. § 546 ............................................................................................................. 3, 21, 24

11 U.S.C. § 546(a) ..................................................................................................................... 39

11 U.S.C. § 547(b) ..................................................................................................................... 43

11 U.S.C.§ 546(c) ....................................................................................................................... 5

28 U.S.C. § 2075 ....................................................................................................................... 21

U.C.C. § 2-702-(2) ...................................................................................................................... 5

## OTHER AUTHORITIES

*See* 140 CONG. REC. H. 10752, * H10768 (daily ed. Oct. 4, 1994) ......................................... 39

## RULES

Fed. R. Bankr. P. 1001 ................................................................................................................ 3

Fed. R. Bankr. P. 7004 ................................................................................................................ 3

Fed. R. Bankr. P. 7005(a)(1)(D) .............................................................................................. 30

Fed. R. Bankr. P. 7007(b)(2) ............................................................................................... 30, 31

Fed. R. Bankr. P. 7010 .............................................................................................................. 30

Fed. R. Bankr. P. 7012(b) ........................................................................................................... 1

Fed. R. Bankr. P. 7015(c) .................................................................................................... 25, 26

07646N:051607:851956:11:NASHVILLE

Fed. R. Bankr. R. 9023 ............................................................................................. 1

Fed. R. Civ. P. 4(m) ...........................................................................10, 33, 34, 35

Fed. R. Civ. P. 59 ...................................................................................................... 1

Fed. R. Civ. P. 60 .......................................................................................... 1, 20, 31

Local Rule 9013-1 (b) ............................................................................................. 44

## TREATISES

11 Charles Alan Wright and Arthur R. Miller, FEDERAL PRACTICE AND
PROCEDURE, § 2864 (2d ed. 1995) .................................................................. 31

07646N:051607:851956:11:NASHVILLE

Setech, Inc. ("**Setech**"), by its undersigned attorneys, respectfully submits this *Motion to Vacate and to Dismiss* (i) to alter, amend, or vacate the prior Extension Orders (defined below) pursuant to Rules 59 or 60 of the Federal Rules of Civil Procedure (collectively, the "**Rules**" and each a "**Rule**"), as incorporated by Rules 9023 and 9024 of the Federal Rules of Bankruptcy Procedure (collectively, the "**Bankruptcy Rules**" and each a "**Bankruptcy Rule**"), and (ii) to dismiss the above-captioned adversary proceeding (the "**Adversary Proceeding**") with prejudice pursuant to Bankruptcy Rules 7004(m) and 7012(b), including but not limited to Bankruptcy Rules 7012(b)(2), (4), (5), and (6), and § 105 of the United States Bankruptcy Code (the "**Code**").[1]

## PRELIMINARY STATEMENT

Delphi Corporation[2] and certain subsidiaries filed bankruptcy in October 2005 and thereafter followed a tumultuous path to confirmation of a plan of reorganization. To continue operating after their bankruptcies and to confirm the plan, the Debtors relied on the cooperation and assistance of thousands of vendors, many of whom, including Setech, negotiated with Delphi after the bankruptcies based on court-approved agreements and made financial concessions to the Debtors in good faith, only to find out in 2010 that it had been secretly sued back in September 2007 for claims released in 2005. The initial complaint and subsequent papers purportedly extending the service date numerous times were hidden or disguised so that no defendant had the ability to object to the relief sought, to preserve evidence, or to take other steps to protect itself

---

[1] Because not all of the Extension Orders were entered in both the main case and in the Adversary Proceeding, this Motion is filed in both the main case and in the Adversary Proceeding because the relief requested herein applies to both the contested matters and the Adversary Proceeding matters as they relate to the Extension Orders. To the extent that the Extension Orders do not constitute "final" orders, Setech requests that Orders be altered or amended to have required Setech to have been clearly named in and properly served with the Extension Motions.

[2] Delphi Corporation and its subsidiaries and affiliates are referred to collectively herein as the "**Debtors.**"

from the prejudicial and injurious effect of the unleashing, in Setech's case, of a $22.67 million lawsuit four and one-half years after the alleged cause of action arose, and over two and one-half years after the statute of limitations ran. The claims asserted in this secret complaint were waived and relinquished by the Debtors with authority from this Court back in 2005, and in any event the Debtors subsequently abandoned the claims.

The initial complaint and subsequent papers purportedly extending the service deadline were hidden or disguised so that Setech had no realistic ability to object to the relief sought, to preserve evidence, or to take other steps to protect itself from the harmful effects of the unleashing of a $22.67 million lawsuit against it, four and one-half years after the alleged cause of action arose and over two and one-half years after the statute of limitations ran. Despite representations to this Court to the contrary, the Debtors failed to give Setech even the minimal mailing required by their own Case Management Orders (defined below). The vast majority of the claims asserted in the hidden complaint were released by the Debtors with authority from this Court back in 2005. In any event, the Debtors subsequently abandoned the claims.

The set of facts more particularly set forth in this Memorandum and in the Declaration of Richard M. Eddinger submitted herewith (the "**Eddinger Declaration**") establishes a shocking disregard of every notion of due process and fair play. Due process is the foundation of our court system. The fundamental tenet of due process is effective notice to any defendant that it is being sued. The Debtors filed complaints under seal without a legitimate basis for doing so, filed a series of misleading faceless motions without meaningful notice or even court-ordered overnight mail service to the parties affected by them, made misleading statements to the Court about the content and service of those motions and, by so doing, severely prejudiced Setech.

- 2 -

The purpose of the Bankruptcy Rules is to "secure the just, speedy, and inexpensive determination of every case and proceeding." Bankruptcy Rule 1001. The purpose of the two-year statute of limitations in Code § 546, and the service requirements of Bankruptcy Rule 7004, is to give the defendant a fair opportunity to defend itself before evidence gets stale without spending inordinate sums of time and money. Code § 546; Bankruptcy Rule 7004. The posture of this Adversary Proceeding, if not dismissed with prejudice, guarantees significant injustice, prejudice, delay, and expense, all for which the Debtors are solely responsible. The Debtors have acted in bad faith in an attempt to entice Setech and this Court to give them whatever they wanted at the time, while simultaneously hiding their notice infirmities from the Court and hiding these alleged claims from Setech. This is not "good cause." It is bad faith and trickery, which no court should permit or condone.

## STATEMENT OF FACTS

Under that certain Delphi/Setech Master Agreement dated July 1, 2005, and predecessor master agreements (collectively the "**Master Agreement**"), Setech operated and functioned for the Debtors as: (i) an integrated on-site supply manager for the purpose of providing the on-site information, data base, and property systems and personnel essential to conduct and oversee Debtors' inventory management and (ii) a purchasing agent for the Debtors for the purpose of procuring certain products, services and materials from vendors (collectively, the "**Agency Vendors**," and each an "**Agency Vendor**") critical to the continued operation of certain manufacturing facilities owned by the Debtors. A true and correct copy of the Master Agreement is attached as *Exhibit 1* to the Eddinger Declaration. Pursuant to the Master Agreement "Setech will purchase indirect/MRO materials as directed by and as agent for Delphi." Master Agreement at 5, ¶ 4. *See* Eddinger Declaration at ¶ 3.

The manufacturing facilities owned by the Debtors and managed or operated by Setech on behalf of them included the following facilities (each a "**Facility**" and collectively the "**Facilities**") commonly referred to as (*See* Eddinger Declaration at ¶ 4):

    i.    Kettering - Delphi Energy & Chassis, 2555 Woodman Dr., Gate # 4, Dock 14, Kettering, OH, 45420,

    ii.    Sandusky - Delphi Energy & Chassis, 2509 Hayes Avenue, Sandusky, OH, 44870,

    iii.    Home Ave.- Delphi Energy & Chassis, Home Ave. 2701 Home Ave. Bldg. 5, Dayton, OH, 45417,

    iv.    Vandalia - Delphi Energy & Chassis, 480 N. Dixie, Vandalia, OH, 45377,

    v.    Needmore - Delphi Energy & Chassis, 3100 Needmore Dr., Dayton, OH, 45414,

    vi.    Wisconsin - Delphi Energy & Chassis, 1515 Cincinnati Rd., Dayton, OH, 45408,

    vii.    Harrison Moraine - Delphi Harrison Thermal, 3600 Dryden Rd., Moraine, OH 45439,

    viii.    Kokomo - Delphi Delco Electronics, 2033 East Blvd., Plant 9 Dock 9-S, Kokomo, IN, 46902,

    ix.    E & S Milwaukee – Delphi Delco Electronics, 7929 S. Howell, Oak Creek, WI, 53154,

    x.    E &C Milwaukee – Delphi Energy & Chassis, 7929 S. Howell, Oak Creek, WI, 53154,

    xi.    Saginaw – Delphi Saginaw Steering Systems, 3900 East Holland Rd, Saginaw, MI, 48601, and

    xii.    Athens - Delphi Saginaw Steering Systems, 6275 Highway 31 South, Athens, AL, 35611.

The Debtors generally did not enter into long-term contracts with the Agency Vendors. As an agent for the Debtors, Setech generally placed orders with Agency Vendors for spot purchases on an open account basis in accordance with individual purchase orders. *See* Eddinger Declaration at ¶ 5.

Certain of the Debtors filed bankruptcy on October 8, 2005, and certain additional Debtors filed bankruptcy on October 14, 2005. On or about October 18, 2005, Setech served a

precautionary reclamation demand upon the Debtors in accordance with Uniform Commercial Code § 2-702-(2) and 11 U.S.C.§ 546(c), but only to the extent that it could have been classified as a seller of the identified reclaimed goods and not otherwise (the "**Setech Reclamation Demand**"). *See* Eddinger Declaration at ¶ 6.

The Court entered an Essential Supplier Order on October 13, 2005 (Docket No. 197) (the "**Essential Supplier Order**"). Pursuant to the Essential Supplier Order, the Debtors and Setech entered into the Setech Essential Supplier Agreement dated October 27, 2005 ("**Setech Essential Supplier Agreement**"). A true and correct copy of the Essential Supplier Order is attached as *Exhibit 2* to the Eddinger Declaration. A true and correct copy of the Setech Essential Supplier Agreement is attached as *Exhibit 3* to the Eddinger Declaration. *See* Eddinger Declaration at ¶ 7.

Based on the Setech Essential Supplier Agreement, as required by the terms of the Essential Supplier Order (*see* Ex. 2 at ¶ 3(f)), Setech withdrew the Setech Reclamation Demand. A true and correct copy of the Withdrawal Notice is attached as *Exhibit 4* to the Eddinger Declaration. *See* Eddinger Declaration at ¶ 8.

The Debtors and Setech entered into a Memorandum of Understanding on May 16, 2007 (the "**MOU**"), in which Setech agreed to certain price concessions benefiting Debtors. A true and correct copy of the MOU is attached as *Exhibit 5* to the Eddinger Declaration. *See* Eddinger Declaration at ¶ 9.

The Debtors and Setech entered into a Transaction Agreement on September 1, 2007 (the "**Transaction Agreement**"), in which Setech agreed to additional price concessions benefiting Debtors. The Transaction Agreement was amended twice, once on November 29, 2007, and again October 6, 2009, and in both amendments, at the Debtors' request, Setech granted them

price concessions. *See* Eddinger Declaration at ¶ 10. On or about July 15, 2008, the Debtors and

Setech, through their respective Mexican affiliates, entered to another Management Services

Agreement for Setech to provide similar agency and management services with respect to the

Debtors' facility in Mexico (as amended from time to time, the "**Los Pinos Agreement**"). *See*

Eddinger Declaration at ¶ 11.

On October 6, 2005, the Debtors wire-transferred $1,335,013.94 to Setech. So far as

Setech has been able to determine, this payment did not match any particular invoices or invoices

or combination of invoices. In the Essential Supplier Agreement, the Debtors and Setech defined

this payment as the "**Setech Prefund Transfer**." Setech Essential Supplier Agreement at 2, ¶ I.

The Essential Supplier Order, at paragraph 7 on page 5, provided as follows:

> The Debtors are hereby authorized but not directed to waive and
> release their rights, and the rights of their respective estates, under
> section 547 of the Bankruptcy Code to avoid a prepetition transfers
> (each a "Prefunded Transfer") on account of the prefunding of
> obligations to a supplier (each a "Prefunded Suppliers") if, on or
> before November 7, 2005, such Prefunded Supplier enters in a
> Trade Agreement.

*See* Eddinger Declaration at ¶ 12.

The Debtors exercised the authority to waive avoidance rights as to the Setech Prefund

Transfer to the full extent granted by the Essential Supplier Order in the Setech Essential

Supplier Agreement, at paragraph 2 on page 3:

> 2.      The Debtors hereby release and waive any claim to avoid
> and recover, seek disgorgement of, or to assert as a defense or
> counterclaim the Setech Prefund Transfer to the fullest extent
> permitted under the Essential Supplier Order.

*See* Eddinger Declaration at ¶ 13.

Setech relied upon the authority granted in the Essential Supplier Order and Delphi's express waiver and release as to all claims to the Setech Prefund Transfer when it withdrew the Setech Reclamation Demand. *See* Eddinger Declaration at ¶ 14.

Setech has reviewed Setech's accounting records and the transfers alleged in Exhibit "1" to the Complaint (excluding the Setech Prefund Transfer, the "**Alleged Transfers**"). The Alleged Transfers total $21,332,109.40. *See* Eddinger Declaration at ¶ 15. Historically, payments to Setech by Delphi were made on account of four categories of obligations:

(i)     Product delivered by Agency Vendors to the Facilities (collectively, the "**Product**");

(ii)    Freight cost of common carriers who delivered the Products to the Facilities (collectively, the "**Freight**");

(iii)   Various site expenses for the operation of the Facilities, including employee wages and benefits (collectively, the "**Site Expenses**"); and

(iv)    The Setech monthly management fee for performing the integrated services required to operate the Facilities (collectively, the "**Management Fees**").

*See* Eddinger Declaration at ¶ 16.

The general practice for payment of Product was as follows: As agent for the Debtors, Setech ordered Product for the Debtors, and the Debtors, not Setech, became liable to the Vendors to pay for that Product. Setech received Product at the Facilities, and based on the date of receipt of the Product, it requested payment from the Debtors to be made on the second business day of the second month after the Product had been received. Then, anticipating receipt of an electronic funds transfer or transfers from the Debtors, Setech cut checks to Agency Vendors invoiced on payment terms of second day, second month billing cycle, but did not mail them. The electronic funds transfer or transfers were subject to the Debtors' approval on a Facility by Facility basis, and typically approvals were made and funds released to Setech during

- 7 -

a 3-5 day period around the second business day of each month. After the funds were electronically transferred, Setech mailed the checks to the Agency Vendors. Because of this practice and because of Setech's status as a paying agent for the Debtors, the parties stipulated in the Setech Essential Supplier Agreement that

> No payment to Setech by the Debtors that Setech used to pay Agency Vendors under the Master Agreement constitutes a transfer to Setech under the Bankruptcy Code or under any similar law providing for avoidance, disgorgement, or other remedies in insolvency-related situations."

Setech Essential Supplier Agreement, ¶ F at p. 2. *See* Eddinger Declaration at ¶ 17.

Of the Alleged Transfers totaling $21,332,109.40, $18,937,299.65 (or 88%) constituted funds used by Setech to pay for Product ("**Product Payments**"), with the remaining $2,394,809.75 for Freight, Site Expenses, and Management Fees. A spreadsheet summarizing the breakdown of the Alleged Transfers is attached as *Exhibit 6* to the Eddinger Declaration. Based on the stipulation contained in paragraph F of the Setech Essential Supplier Agreement, $18,937,299.65 of the $21,332,109.40 in Alleged Transfers were not transfers to Setech subjecting it to any avoidance liability, and Setech had no basis to believe that it was subject to any liability as a result of them. *See* Eddinger Declaration at ¶ 18.

The payment terms granted to Delphi by the Agency Vendors were standard in the automotive parts industry: "Second Day, Second Month" Terms. This means that obligations invoiced on any day during month one would be due and payable on the second business day of the second month following invoice, or month three. Therefore, any obligation invoiced on January 1 or January 31 would be due on the second business day of March, which may or may not fall on the second calendar day of March. *See* Eddinger Declaration at ¶ 19.

When Setech requested payment from the Debtors for Product, it also billed them for Freight, Site Expenses, and Management Fees, and the wire transfers received around the second day, second month included payment for Product, Freight, Site Expenses, and Management Fees. The allocation of the Alleged Transfers to those four categories is shown on Exhibit 6. *See* Eddinger Declaration at ¶ 20.

Except for the August 11, 2005 Alleged Transfer, all of the Alleged Transfers listed on Exhibit A to the Complaint were paid within 3 days of the "Second Day Second Month" Terms, and this pattern is consistent with payment practices prior to July 2005 as well. The Alleged Transfers timing is summarized as follows:

| Alleged Transfer Amount | Alleged Transfer Date | Business Days Late or (Early) |
|---|---|---|
| $598.64 | 7/29/2005 | (2) |
| $790.50 | 8/1/2005 | (1) |
| $7,170,977.31 | 8/2/2005 | 0 |
| $522,897.38 | 8/3/2005 | 1 |
| $388,503.32 | 8/4/2005 | 2 |
| $590,135.53 | 8/5/2005 | 3 |
| $659,392.78 | 8/11/2005 | 7 |
| $996,551.38 | 8/30/2005 | (3) |
| $246,740.86 | 8/31/2005 | (2) |
| $6,780,536.54 | 9/2/2005 | 0 |
| $1,249,563.52 | 10/4/2005 | 0 |
| $2,187,311.34 | 10/5/2005 | 1 |
| $23,139.33 | 10/6/2005 | 2 |
| $514,970.97 | 10/7/2005 | 3 |

*See* Eddinger Declaration at ¶ 21.

As a component of the contract renewal negotiations effective June 1, 2005, Setech and the Debtors agreed to change the billing cycle for all remaining Facilities from the 20th day of the month to the 30th day of the month. Therefore, the June 2005 invoice report to the Debtors for Kokomo was broken down into two bills, one invoice report for the first 20 days of the month and a later-generated "short bill" for the last 10 days of the month, both of which would have

been due on the second business day of August 2005. Due to the Independence Day holiday and the attendant usual shutdown of the Facilities for the first week of July, the 10-day "short bill" in the amount of $659,392.78 was both generated and paid several days later than it otherwise would have been generated and paid had the parties not changed the billing cycle. *See* Eddinger Declaration at ¶ 22.

All of the Alleged Transfers were completed in the ordinary course of Setech's and the Debtors businesses and on terms and conditions that are standard in Setech's industry. *See* Eddinger Declaration at ¶ 23.

By motion dated August 6, 2007 (Docket No. 8905) (the "**Seal & First Extension Motion**"), the Debtors sought entry of an order seeking, among other things (i) pursuant to Rule 4(m), an extension of time beyond the initial 120-day period to serve certain adversary summonses and complaints, (ii) a stay of the applicable adversary proceedings until service of process was effected, and (iii) permission to file the complaints under seal. *See* Seal & First Extension Motion at ¶¶ 33-38. The Seal & First Extension Motion was not served directly upon Setech, but was electronically served upon the "2002 List," which included Setech's counsel. *See* Declaration of Service at Docket No. 9039.[3] The Seal and Extension Motion did not name Setech or any other defendant in the caption or elsewhere. An order granting the relief requested in the Seal & First Extension Motion was entered on August 16, 2007 (Docket No. 9105) (the "**Seal &**

---

[3] The Seal & First Extension Motion was not served directly upon Setech at all, much less by overnight mail, even though Setech had a particularized interest in the subject of that filing. The Seal & First Extension Motion represented that the Debtors had served the paper in accordance with the Case Management Orders then in effect (Docket Nos. 2883 and 5418). *See* Seal & First Extension Motion at 31, ¶ 55. The Case Management Orders required that "All filings shall be served (a) via overnight mail upon all parties with a particularized interest in the subject of the Filing." *See* Docket No. 2883 at 8, ¶ 15, and Docket No. 5418 (no change to ¶ 15). Because the Seal & First Extension Motion was not served in accordance with the Case Management Orders as represented to the Court, this representation was patently false.

**First Extension Order**"). The Seal & First Extension Order extended the service deadline from January 29, 2008 to March 31, 2008. *See* Seal & First Extension Order at ¶ 8.

The Debtors sought entry of an order further extending the time to serve the Complaint by Motion filed February 28, 2008 (Docket No. 12922) (the "**Second Extension Motion**"), which was granted by Order entered on March 28, 2008 (Docket No. 13277) (the "**Second Extension Order**"). Although at this point Setech was a named defendant in a sealed complaint, the Second Extension Motion did not name Setech or any other defendant in the caption or elsewhere.[4] The Second Extension Order extended the service deadline from March 31, 2008 to May 31, 2008. *See* Second Extension Order at ¶ 2.

The Debtors sought entry of an order further extending the time to serve the Complaint by Motion filed April 10, 2008 (Docket No. 13361) (the "**Third Extension Motion**"), which was granted by Order entered on April 30, 2008 (Docket No. 13484) (the "**Third Extension Order**"). Although at this point Setech was a named defendant in a sealed complaint, the Third

---

[4] The Second Extension Motion was not served directly upon Setech at all, much less by overnight mail, even though Setech had a particularized interest in the subject of that filing. The Second Extension Motion represented that the Debtors had served the paper in accordance with the Case Management Orders then in effect (Docket Nos. 2883 and 12487). *See* Second Extension Motion at 11, ¶ 26. The Case Management Orders then in effect specifically required that "All filings shall be served (a) via overnight mail upon all parties with a particularized interest in the subject of the Filing." *See* Docket No. 2883 at 8, ¶ 15; Docket No. 12487 (no change to ¶ 15). Because the Debtors did not serve the preference defendants with the Second Extension Motion in accordance with the Case Management Orders as represented to the Court, this representation was patently false.

Extension Motion did not name Setech or any other defendant in the caption or elsewhere.[5] The

Third Extension Order extended the service deadline from May 31, 2008 to 30 days after the

later of substantial consummation of the Plan or any modified chapter 11 plan for the Debtors

and December 31, 2008. *See* Third Extension Order at ¶ 2.

The Debtors' First Amended Plan (Docket No. 11386) (the "**Plan**") was confirmed by

Order entered January 25, 2008 (Docket No. 12359) (the "**Confirmation Order**"). The Plan was

later modified, approved, and confirmed by Order entered on July 30, 2009 (Docket No. 18707)

(the "**Modified Plan Approval Order**"), which Modified Plan was substantially consummated

on October 6, 2009. *See* Notice of Effective Date at Docket No. 18958.

The Debtors sought entry of an order further extending the time to serve the Complaint

by Motion filed October 2, 2009 (Docket No. 18952) (the "**Fourth Extension Motion**"), which

was granted by Order entered on October 22, 2009 (Docket No. 18999) (the "**Fourth Extension

Order**"). Although at this point, a plan had been confirmed and Setech was a named defendant

in a sealed complaint, the Fourth Extension Motion did not name Setech or any other defendant

---

[5] The Third Extension Motion was not served directly upon Setech at all, much less by overnight mail,
even though Setech had a particularized interest in the subject of that filing. The Third Extension Motion
represented that the Debtors had served the paper in accordance with the Case Management Orders then
in effect (Docket Nos. 2883 and 12487). *See* Third Extension Motion at 12, ¶ 27 (also noting that special
notice had been provided to Laneko and Wachovia because they were the parties "against whom causes of
action have been retained under the confirmed plan."). The Case Management Orders then in effect
required that "All filings shall be served (a) via overnight mail upon all parties with a particularized
interest in the subject of the Filing." *See* Docket No. 2883 at 8, ¶ 15; Docket No. 12487 (no change to
¶ 15). Because Debtors did not serve Setech with the Third Extension Motion in accordance with the Case
Management Orders as represented to the Court, this representation was also false. *See* Affidavit of
Service for Third Extension Motion, Docket No. 13415 (no overnight mail service to preference
defendants). The Third Extension Motion, at paragraph 27 on page 12, also represented that overnight
mail service had been provided to Laneko Engineering Co., Wachovia Bank, National Association nor
Laneko Engineering Co. Inc. because they were the parties "against whom causes of action have been
retained under the confirmed plan." As a result of this additional representation, persons (who were
served at all) would have reasonably interpreted this representation to mean that persons other than
Laneko Engineering Co., Wachovia Bank, National Association nor Laneko Engineering Co. Inc. were
not subject to the relief requested.

07646N:051607:851956:11:NASHVILLE

in the caption or elsewhere.[6] The Fourth Extension Order extended the service deadline to "180 days after substantial consummation of the Modified Plan," which is April 5, 2010. *See* Fourth Extension Order at ¶ 2.

The Debtors sought entry of an order further extending the time to serve the Complaint by expedited Motion filed March 25, 2010 (Adv. Pro. Docket No. 10) (the "**Fifth Extension Motion**"), which was granted by Order entered on April 20, 2010 (Adv. Pro. Docket No. 24) (the "**Fifth Extension Order**"). The Fifth Extension Order extended the service deadline to May 5, 2010. *See* Fifth Extension Order at ¶ 2.[7] Setech was served with a complaint on April 1, 2010, within the prior extended period ending April 5, 2010.

The above-referenced extension motions are herein referred to collectively as the "**Extension Motions**" and the above-referenced extension orders are herein referred to collectively as the "**Extension Orders**." The underlying facts in issue are set forth in the

---

[6] The Fourth Extension Motion was not served directly upon Setech at all, much less by overnight mail, even though Setech had a particularized interest in the subject of that filing. The Fourth Extension Motion represented that the Debtors had provided notice in accordance with the Case Management Orders then in effect (Docket Nos. 2883 and 18839). *See* Fourth Extension Motion at 10-11, ¶ 24 (again noting that special notice had been provided to Laneko Engineering Co., Wachovia Bank, National Association nor Laneko Engineering Co. Inc.). The Case Management Orders then in effect provided that "All filings shall be served (a) via overnight mail upon all parties with a particularized interest in the subject of the Filing." *See* Docket No. 2883 at 8, ¶ 15; Docket No. 18839 (no change to ¶15). Because the Debtors did not serve Setech with the Fourth Extension Motion in accordance with the Case Management Orders as represented to the Court, this representation was also false. *See* Affidavit of Service for Fourth Extension Motion, Docket No. 18967 (no overnight mail service to preference defendants). Reasonable persons (who were served at all) would have interpreted this Motion to mean that persons other than Laneko Engineering Co., Wachovia Bank, National Association nor Laneko Engineering Co. Inc. were not subject to the relief requested.

[7] The Fifth Extension Motion was filed only in the adversary proceeding and was filed prior to service of the Summons and Complaint on Setech. Setech was finally served with the Summons and Complaint in this Adversary Proceeding on April 1, 2010, the same day as the hearing on the Fifth Extension Motion. To the extent that the previous four *ex parte* extensions were effective to extend the service deadline through April 5, 2010, the additional extension requested in the Fifth Extension Motion would have been moot and unnecessary as to Setech in any event.

Eddinger Declaration filed herewith. Setech requests that the Court take judicial notice of the docket and the procedural history of this case and of this Adversary Proceeding.

<u>**ARGUMENT**</u>

I.  **THE DEBTORS WAIVED AND ABANDONED AVOIDANCE CLAIMS AGAINST SETECH AND ARE PRECLUDED FROM ASSERTING THEM.**

A.  **The Debtors Waived and Abandoned Avoidance Claims in the Setech Essential Supplier Agreement in October 2005.**

1.  **Debtors Released All Claims to the Setech Prefund Transfer.**

With express authority and approval from this Court under the Essential Supplier Order, the Debtors waived and abandoned any avoidance claims against Setech as to that certain "Setech Prefund Transfer" in the amount of $1,335,013.94 in the Setech Essential Supplier Agreement. The Essential Supplier Order provided as follows:

> The Debtors are hereby authorized but not directed to waive and release their rights, and the rights of their respective estates, under section 547 of the Bankruptcy Code to avoid a prepetition transfers (each a "Prefunded Transfer") on account of the prefunding of obligations to a supplier (each a "Prefunded Suppliers") if, on or before November 7, 2005, such Prefunded Supplier enters in a Trade Agreement.

(*See* Essential Supplier Order at 5, ¶ 7.)

The Debtors exercised the authority to waive avoidance rights as to the Setech Prefund Transfer to the full extent granted by the Essential Supplier Order in the Setech Essential Supplier Agreement:

> The Debtors Hereby Release And Waive Any Claim To Avoid And Recover, Seek Disgorgement Of, Or To Assert As A Defense Or Counterclaim The Setech Prefund Transfer To The Fullest Extent Permitted Under The Essential Supplier Order.

Setech Essential Supplier Agreement at ¶ 2. After exercising the authority to waive avoidance rights granted by the Essential Supplier Order in the Setech Essential Supplier Agreement, the

Debtors are precluded from litigating these avoidance claims now. *See, e.g., Evans v. Ottimo*, 469 F.3d 278, 281 (2d Cir. 2006) ("It is well settled that preclusion principles apply in bankruptcy proceedings"); *Tracar v. Silverman* (*In re Am. Preferred Prescription, Inc.*), 266 B.R. 273, 279 (E.D.N.Y. 2000) (confirmation order allowing creditor's claims barred debtor's subsequent objection to claim).

### 2. The Debtors Waived And Abandoned Avoidance Of The Product Payments And Are Estopped From Asserting Otherwise.

With express authority and approval from this Court under the Essential Supplier Order, the Debtors also waived and abandoned avoidance claims as to the Product Payments when they stipulated and acknowledged in the Setech Essential Supplier Agreement that:

> No payment to Setech by the Debtors that Setech used to pay Agency Vendors under the Master Agreement constitutes a transfer to Setech under the Bankruptcy Code or under any similar law providing for avoidance, disgorgement, or other remedies in insolvency-related situations"

Setech Essential Supplier Agreement at ¶ F. Of the Alleged Transfers totaling $21,332,109.40, $18,937,299.65 (or 88%) constituted Product Payments, with the remaining $2,394,809.75 for Freight, Site Expenses, and Management Fees. Based on the stipulation contained in paragraph F of the Setech Essential Supplier Agreement, $18,937,299.65 of the $21,332,109.40 in Alleged Transfers were not transfers to Setech subjecting it to any avoidance liability, and Setech had no basis to believe that it was subject to any liability as a result of them.

> A stipulation and order is a binding agreement between parties to a dispute that is enforceable as a contract. Although courts are not always bound by a stipulation and may disregard it "if it would be manifestly unjust to enforce," a party to "a stipulation is not entitled to withdraw from the agreement unilaterally." Furthermore "relief from a stipulation will be granted only upon a showing of good cause sufficient to invalidate a contract, such as fraud, overreaching, duress or mistake."

07646N:051607:851956:11:NASHVILLE

*Patterson v. Newspaper & Mail Deliverers' Union of N.Y. & Vicinity*, 2005 U.S. Dist. LEXIS 37538, *21 (S.D.N.Y. July 13, 2005) (internal citations omitted). *See also Hallock v. State*, 474 N.E.2d 1178, 1180-81 (N.Y. 1984) ("Stipulations of settlement are favored by the courts and not lightly cast aside. . . . Only where there is cause sufficient to invalidate a contract, such as fraud, collusion, mistake or accident, will a party be relieved from the consequences of a stipulation made during litigation.") (internal citations omitted).

The factual admissions contained in the Setech Essential Supplier Agreement induced Setech to withdraw its Setech Reclamation Demand and to continue operating Debtors' facilities on behalf of the Debtors. Eddinger Declaration at ¶¶ 8 & 14. *See, e.g.*, *Greenspahn v. Joseph E. Seagram & Sons, Inc.*, 186 F.2d 616, 620 (2d Cir. 1951) ("To obtain relief from a stipulation the moving party must show that unless relieved he will suffer a substantial injustice and that the other parties to the stipulation can be restored to the same position they would have had if no agreement had been made"). Because it is not possible now to restore Setech to the position it would have had if no Setech Essential Supplier Agreement had been made, there can be no avoidance of payments made by the Debtors for Product Payments.

**B.   The Debtors Abandoned Avoidance Claims in 2008 and Are Judicially Estopped from Asserting Avoidance Claims against Setech.**

The Debtors chose not to seek continued extensions of the service of process deadline after the Second Extension Order. Instead, they expressly limited the relief they requested to apply only to "Laneko Engineering Co., Wachovia Bank, National Association, Laneko Engineering Co. Inc. and their affiliates and subsidiaries." Accordingly, the Debtors abandoned their claims against Setech in February 2008 and April 2008 when they represented to the Court in connection with each of the Third and Fourth Extension Motions as follows:

> In accordance with the Preservation of Estate Claims Procedures Order, the Debtors commenced 742 adversary proceedings (the

- 16 -

"Adversary Proceedings") by filing complaints under seal.   On January 25, 2008, the Court entered the Confirmation Order. Under the Plan, the Debtors will not retain any of the causes of action asserted in the Adversary Proceedings except those specifically listed on Exhibit 7.24 to the Plan [fn 4].

. . .

Of the five categories of claims listed by the Debtors on Exhibit 7.24 to the Plan, **only the claims relating to** Laneko Engineering Co., Wachovia Bank, National Association, Laneko Engineering Co. Inc., and their affiliates and subsidiaries **are subject to the Preservation of Estate Claims Procedures Order**. (*See* Exhibit 7.24 to the Plan. Docket No. 11608.)

Third Extension Motion at ¶ 17 & n.4; Fourth Extension Motion at ¶ 18 & n.4 (emphasis added). *See also* Exhibit 7.24 to the Plan (Docket No. 11608 at Attachment K).

The Debtors improperly sealed the Complaint on the strength of phantom, compromised negotiations of claims that Setech had every reason to believe did not exist; the Debtors filed two Extension Motions that failed to name the parties affected thereby, followed by two Extension Motions that expressly limited the scope of relief to specifically named parties **other than Setech** and the Debtors never sent "particularized interest" mailings pursuant to the Case Management Orders despite the Debtors' repeated representations to the Court to the contrary.[8] The Debtors accordingly should be allowed to proceed only against the parties they actually named in footnote 4 to the Third and Fourth Extension Motions as represented by Debtors' counsel. All other complaints, including Setech's, should be dismissed.

The equitable principle of judicial estoppel "prevents a party from asserting a factual position in a legal proceeding that is contrary to a position previously taken by [that party] in a prior legal proceeding." *In re Venture Mortgage Fund, L.P.*, 245 B.R. 460, 471 (S.D.N.Y. 2000),

---

[8] Setech is not a competitor of the Debtors that could justify sealing the Complaint, and Setech is neither Laneko Engineering Co., Wachovia Bank, National Association nor Laneko Engineering Co. Inc. nor a parent, affiliate or subsidiary of any of the forgoing. *See* Eddinger Declaration at ¶ 27-28.

*aff'd,* 282 F.3d 185 (2d Cir. 2002). The purpose of judicial estoppel is to "protect the integrity of the judicial process . . . by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001); *see also Rosenshein v. Kleban*, 918 F. Supp. 98, 104 (S.D.N.Y. 1996) ("Judicial estoppel is invoked . . . to prevent the party from playing fast and loose with the courts, and to protect the essential integrity of the judicial process.").

In the Second Circuit, the following two factors must be satisfied to invoke the doctrine of judicial estoppel: (i) the party against whom estoppel is asserted took an inconsistent position in a prior proceeding, and (ii) the first tribunal adopted the inconsistent position in some manner, such as by rendering a favorable judgment. *See In re Venture Mortgage Fund*, 245 B.R. at 472. Because its purpose is to protect the integrity of the system, the doctrine does not depend upon prejudice to the party invoking it. *See Galerie Des Monnaies of Geneva, Ltd. v. Deutsche Bank, A.G., New York Branch (In re Galerie Des Monnaies of Geneva, Ltd.)*, 55 B.R. 253, 260 (Bankr. S.D.N.Y. 1985), *aff'd* 62 B.R. 224 (S.D.N.Y. 1986).

Both factors are satisfied here. First, in their Third and Fourth Extension Motions, the Debtors asserted that they were only seeking to preserve causes of action against the entities named in footnote 4. While there are statements inconsistent with footnote 4 in the Third and Fourth Extension Motions, no one receiving them had notice of any reason to be interested, and the representations in footnote 4 remained. Second, in entering the orders based on the representations set forth in footnote 4 of the Third and Fourth Extension Motions, the Court adopted those representations.[9] Clearly, the Debtors were and continue to try to shift positions as to what they were and are doing based on "the exigencies of the moment," and that probably explains the inconsistencies in the Second and Third Extension Motions. **The doctrine of judicial estoppel is designed to avoid this very type of activity**. When it suited the Debtors to downplay the avoidance actions, they did so in a manner that is: (i) inconsistent with the position they are taking now that the actions are preserved; and (ii) is seriously misleading to the Court and to all defendants as to what position they were taking. By now attempting  to prosecute this

---

[9] Each of the Extension Orders also contain an introductory recitation affirming, based upon the Debtors' representations that each of the Extensions Motions had in fact been served in accordance with the applicable Case Management Orders, that "proper and adequate notice of the Motion has been given and no other or further notice is necessary."

Adversary Proceeding, the Debtors are attempting to reverse a legal position previously asserted by them. The Debtors are judicially estopped from asserting that the time for serving Setech had not expired as of April 1, 2010, and the Complaint accordingly should be dismissed. *See Galerie Des Monnaies of Geneva, Ltd.*, 55 B.R. at 260 (granting defendant's motion to dismiss where debtor who stated in its disclosure statement that it has no preference actions "may not thereafter reverse its field and commence a preference action for its own benefit.").[10]

---

[10] The Debtors' confirmed Plan and related Disclosure Statement also failed to apprise creditors of the existence and likely value (or lack thereof) of these intentionally hidden avoidance actions. *See generally* Docket Nos. 11386 (Plan) & 11388 (Disclosure Statement). Because the Disclosure Statement failed to provide adequate information with respect to information that would have been relevant to creditors deciding how they should vote on the plan, the Disclosure Statement and the Plan were and remain similarly defective. *See, e.g. Hay v. First Interstate Bank of Kalispell, N.A.*, 978 F.2d 555 (9th Cir. 1992) (plaintiff/debtor that knew of a cause of action, but did not list it in its schedules or discuss it in its disclosure statement, was estopped from later asserting such claim; summary judgment granted for the defendant).

07646N:051607:851956:11:NASHVILLE

## II.    THE EXTENSION ORDERS SHOULD BE VACATED ON THE BASES OF LACK OF DUE PROCESS AND THE DEBTORS' INABILITY TO SATISFY THE REQUIREMENTS FOR EXTENSION UNDER BANKRUPTCY RULE 7004(m).

### A.    Setech Is Entitled to Relief Under Bankruptcy Rule 9024.

Rule 60(b), made applicable by Bankruptcy Rule 9024, provides, in relevant part:

> On motion and just terms, the Court may relieve a party or its legal representative from a final judgment, order or proceeding for the following reasons: . . . (6) any other reason that justifies relief.

To grant relief from a final order pursuant to Rule 60(b), a court must find that (1) the circumstances of the case present grounds justifying relief and (2) the movant possesses a meritorious claim or defense in the first instance. *See Pioneer Inv. Servs., Inc. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 392 (1993) (grounds); *Babigian v. Ass'n of the Bar of the City of New York*, 144 F.R.D. 30, 33 (S.D.N.Y. 1992) (meritorious claim) (citing *Lepkowski v. United States Dep't of Treasury*, 804 F.2d 1310, 1314 (D.C. Cir. 1986)). When evaluating each requirement, the court must resolve "all doubts . . . in favor of those seeking relief." *Davis v. Musler*, 713 F.2d 907, 915 (2d Cir. 1983); *see Trident Groupage v. Royal Coffee, Ltd*., 1996 U.S. Dist. LEXIS 11187, No. 94 CIV. 6065, 1996 WL 445356, at *2 (S.D.N.Y. Aug. 6, 1996).

In this case, (i) the lack of due process in connection with the entry of the Extension Orders justifies relief from them and (ii) the Debtors' inability to show good cause or use of appropriate discretion for the entry of the Extension Orders is a meritorious basis for vacating them.

### 1.    Due Process Requires Notice and an Opportunity To Be Heard Before a Substantive Right Is Altered.

The "fundamental requisite of due process of law is the opportunity to be heard." *Grannis v. Ordean*, 234 U.S. 385, 394 (1914). This right to be heard, however, "has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or

default, acquiesce or contest." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Thus, an "elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* at 314; *Barcia v. Sitkin*, 367 F.3d 87, 107 (2d Cir. 2004); *Weigner v. City of New York*, 852 F.2d 646, 654 (2d Cir. 1988).

The two-year statute of limitations in Code § 546 is a substantive right afforded to the defendant. *See, e.g., Kilmer v. Flocar*, 212 F.R.D. 66 (N.D.N.Y. 2002) (because statutes of limitations are substantive in nature, state limitations laws are applied in federal diversity cases). The right to be free from a claim upon which the statute of limitations has expired is as important as an aggrieved party's right to file an action. *See, e.g., Rodriguez-Suris v. Montesinos*, 935 F. Supp. 71 (D.P.R. 1996), *vacated on other grounds*, 123 F.3d 10 (1st Cir. 1997). Code § 546 is a legislative judgment that within two years after the order for relief, the defendant has a right to be free from stale claims.

The use of procedural rules to obtain a result not contemplated by the accompanying substantive law is simply not permitted. *See* 28 U.S.C. § 2075 (rules prescribed by the United States Supreme Court "shall not abridge, enlarge, or modify any substantive right"); *see also Morse v. Perrotta (In re Perrotta)*, 406 B.R. 1, 8 (Bankr. D. N.H. 2009) ("Therefore, to the extent that the Bankruptcy Rules and the Bankruptcy Code are inconsistent, the statute controls."). Allowance of the filing of a secret complaint, coupled with a two and one-half year delay in service of process through numerous *ex parte* extensions, if allowed to stand, would constitute the use of procedure to render a substantive right a nullity.

07646N:051607:851956:11:NASHVILLE

Statutes of limitations are only to be abrogated where "the interests of justice require vindication of the plaintiffs rights." *Family Golf Ctrs., Inc. v. Acushnet Co. (In re Randall's Island Family Golf Ctrs., Inc.)*, 288 B.R. 701, 705 (Bankr. S.D.N.Y. 2003). Statutes of limitations "are enacted upon the presumption, that one having a well-founded claim will not delay enforcing it beyond a reasonable time, if he has the power to sue." *In re Cornwall*, 9 Blatchf. 114, 6 F.Cas. 586, 591 (C.C.D. Conn. Sept. Term 1871). Indeed, the purpose of statutes of limitations is primarily to give notice to plaintiffs of the time within which to bring suit and to potential defendants of the time beyond which exposure to liability ceases. *See Diversified Hospitality Group, Inc. v. Carson Pirie Scott & Co.*, 1991 WL 35953, at *5 (S.D.N.Y. Mar. 8, 1991).

A plaintiff's failure to give notice to a person of a requested extension of a bar date in which bring an action against him is a violation of Fifth Amendment due process rights. *Linc Capital, Inc. v. Cavanaugh*, 296 B.R. 474 (Bankr. N.D. Ill. 2003). In *Linc*, a confirmed plan set a bar date for asserting claims against the defendant and others, and later the plaintiffs filed motions to extend the bar date without giving notice to the defendant, which were granted. When the suit was filed, the court, on motion of that defendant, vacated its orders on Fifth Amendment grounds, stating:

> *Mullane v. Central Hanover Bank and Trust Co.* is the seminal case dealing with notice requirements. It teaches:
>
> An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and to afford them an opportunity to present objections. . . . The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it.

07646N:051607:851956:11:NASHVILLE

*Linc*, 296 B.R. at 478-79 (citing *Mulane*, 339 U.S. at 314-19). In violation of their own Case Management Orders, the Debtors here did not give notice "reasonably calculated to apprise interested parties;" they did exactly the opposite and instead set out to deprive Setech of its right to due process guaranteed under the Fifth Amendment. The Debtors' filing of a secret complaint and the Extension Motions without meaningful notice puts Setech in exactly the same posture as the defendant in *Linc*—faced with defending a complaint not revealed to it until after the bar date and having had no opportunity to oppose extensions of the bar date as they were granted. Any distinction between extending the bar date for filing the Complaint, without notice, and extending the service of process deadline for a secret complaint, without notice, is insignificant for Fifth Amendment purposes. The defendant is equally disadvantaged in both scenarios.

### 2. Debtors Ignored Even the Minimal Notice Requirements of Their Own Case Management Orders

It cannot be disputed that Setech had a particularized interest in Motions seeking to hide from it a $22.67 million alleged claim. *See* Eddinger Declaration at ¶ 29. As explained above, all of the Debtors' Case Management Orders clearly and specifically required that "All filings shall be served (a) via overnight mail upon all parties with a particularized interest in the subject of the Filing." *See* Docket No. 2883 at 8, ¶ 15; Docket Nos. 5418, 12487, & 18839 (no change to ¶ 15).

It is equally clear that the Debtors completely ignored and did not give the minimal notice required by their own Case Management Orders. *See* Affidavits of Service at Docket Nos. 9039 (First Seal & Extension Motion), 12970 (Second Extension Motion), 13415 (Third Extension Motion), & 18967 (Fourth Extension Motion).

Also clear is the fact that the Debtors falsely represented to the Court in every Extension Motion, and reiterated in each Extension Order they submitted for the Court's signature, that they had in fact given the required notice. *See* First Seal & Extension Motion at 31, ¶ 55; Second

- 24 -

Extension Motion at 11, ¶ 26; Third Extension Motion at 12, ¶ 27; Fourth Extension Motion at 10-11, ¶ 24.

Even if the Debtors had complied with the Case Management Orders by sending service copies of each of the Extension Motions directly to each of the preference defendants by overnight mail, such a notice would not have been adequate. Because the substance of the Extension Motions themselves failed to include sufficient information "reasonably calculated, under all circumstances, to apprise [Setech] of the pendency of the [preference action] and to afford [Setech] an opportunity to present objections," proper service of the faceless motions would have done little to redeem the Debtors given the Debtors' diversion tactic of specifically naming Laneko Engineering Co., Wachovia Bank, National Association and Laneko Engineering Co. Inc. as the only parties against which the Extension Motions were intended to apply. Nevertheless, failure to comply with the Case Management Orders is sufficient reason to vacate the Extension Orders and to dismiss the Complaint.

### 3.    Indefinite Service Extensions Violate 11 U.S.C. § 546.

Procedural rules and the Court's equitable powers should not be used either to create rights that did not exist pre-petition or to abrogate any of the laws or rights specifically protected by the Bankruptcy Code. *See, e.g., In re Kmart Corp.*, 359 F.3d 866 (7th Cir. 2004) (bankruptcy court could not create statutory authority contrary to the explicit priority scheme of the Bankruptcy Code based on § 105(a)). Indefinite extensions of the Code § 546 statute of limitations via the limited authority granted by Bankruptcy Rules 7004(m) and Code § 105 do exactly that – such indefinite extensions render Code § 546 a nullity and should not be

permitted.[11] Interested parties simply cannot be bound to orders when their interests were not adequately represented at the time that the matter was heard. *See Johns-Manville Corp. v. Chubb Indem. Ins. Co.* (*In re Johns-Manville Corp.*), Docket Nos. 06-2103-bk, 06-2118-bk, 06-2186-bk, 2010 U.S. App. LEXIS 5877 (2d Cir. 2010). Because the Extension Orders were entered without adequate notice to Setech, they are a legal nullity as to Setech. *See id.* Because the Extension Orders are a nullity, they did not extend the service of process deadline, and the service deadline expired on February 5, 2008 (120 days after the October 8, 2007 statute of limitations). Setech cannot now be brought before the Court in this Adversary Proceeding by summons, so there is no means by which to assert personal jurisdiction over Setech. Because the Debtors missed the deadline by **786** days (from February 5, 2008 until the actual April 1, 2010 service), this case must be dismissed. *See, e.g, Jonas v. Citibank, N.A.*, 414 F. Supp. 2d 411, 416 (S.D.N.Y. 2006) (neglect, inadvertence and mistaken belief that service was proper do not suffice to excuse late service, and case must be dismissed). These Debtors are no different position than any other plaintiff who intentionally or negligently delays service and lets the deadline pass without effective service, and they should not now be heard to complain that they are the victims of their own handiwork.

Although Bankruptcy Rule 7015(c), governing adding party defendants, may not at first glance appear to be applicable here, its appropriate application highlights the due process problem. Bankruptcy Rule 7015(c) is grounded in due process, reasonable notice principles. In *Global Crossing Estate Representative v. Alta Partners Holdings LDC* (*In re Global Crossing, Ltd.*), 385 B.R. 52, 58 (Bankr. S.D.N.Y. 2008), this Court explained that

---

[11] To the extent that the two-year deadline established by Congress in 11 U.S.C. § 546 is insufficient time for certain types of debtors, extending that deadline is exclusively the function of Congress. *See In re Kmart*, 359 F.3d at 871 ("Answers to contemporary issues must be found within the Code (or legislative halls)").

07646N:051607:851956:11:NASHVILLE

> There is no basis in law or fairness, in this Court's view, for extending a statute of limitations protecting unnamed and unknown defendants by a year and a half—or, for that matter, beyond the 120-day period that permitted the initial defendant EquiServe to be sued—even in cases of mistake. **The Court must be wary of making the statute of limitations a nullity**.

(emphasis added). *Global Crossing* involved the "not-uncommon practice, familiar to those in the bankruptcy community, of estate representatives bringing avoidance actions just before the statute of limitations runs, and then erroneously naming the initial payee, which turns out to have been a mere conduit, with the ultimate recipient(s) being discovered thereafter." *Id.*

The *Global Crossing* court rejected the argument that a general purpose Rule 7004(m) extension for service of process could be used not just to serve, but also to seek out and identify, defendants who had not yet been named or identified. *Id.* This is because the "knowledge of mistake requirement" is only one of several requirements imposed by Bankruptcy Rule 7015(c). FED. R. BANKR. P. 7015(c). Another requirement—far more important to fairness to prospective defendants—is that such defendants *timely* receive adequate notice of the claims against them, and that they not be prejudiced in their defense on the merits. *Global Crossing*, 385 B.R. at 59. This is the same due process protection to which Setech is entitled. Accordingly, this Court in *Global Crossing* held that complaints amended to specifically name the ultimate initial transferees after the 120-day deadline and after the running of the statute of limitations could not relate back to the time of original complaint filing, unless and to the extent that the plaintiff could provide the court with a factual record to show that the ultimate recipients knew or should have known, within 120 days of the filing of this action, that they would have been named as defendants on those claims. *Id.* at 59.

The Debtors here effectively seek authority to do exactly what was prohibited in *Global Crossing*. When the complaints were filed "under seal" in these cases, Setech and the other

- 27 -

defendants were identified with only an arbitrarily-assigned number unknown to them. The defendants could have searched the adversary dockets in vain to find any identifying information. Unlike an initial transferee omitted by mistake, who could potentially have seen the conduit's name and instantly appreciated that, but for mistake, it would have been properly named and served, Setech and the other defendants in these actions would have searched in vain for any connection or clue as to the parties sued herein.

When the Debtors decided well after the statute of limitations expired that it was to their advantage to attempt to prosecute these avoidance actions, they obtained and served a summons on Setech in 2010, for the first time "naming" Setech publicly. **Issuing a summons publicizing Setech's name and unveiling a secret complaint two and one-half years after the statute of limitations has expired is indistinguishable from seeking to amend a complaint to add Setech two and one-half years after the statute of limitations has expired**. Setech is in exactly the same prejudiced posture as the *Global Crossing* defendants, and the legal result should be the same: dismissal on the basis of prejudice and lack of due process. The case for dismissal is even greater here, where the failure to properly "name" Setech was not a mistake at all, but instead the result of Debtors' strategy and gamesmanship. *See, e.g.*, *Hedvat v. Rothschild*, 175 F.R.D. 183 (S.D.N.Y. 1997) (plaintiff's decision not to pursue certain defendants was deliberate strategic choice and not result of any mistake as to who was intended to be sued).

### 4.    Sealing The Complaint Violated Bankruptcy Code § 107.

The Seal and Extension Order, which allowed filing the Complaint under seal, violates Code § 107(a), which codified the common law right of public access in the bankruptcy setting. The "plain meaning of § 107(a) mandates that <u>all</u> papers filed with the bankruptcy court are 'public records' unless the bankruptcy court decides to protect the information pursuant to the standards set forth in § 107(b)." *In re Food Mgmt. Group*, 359 B.R. 543, 553 (Bankr. S.D.N.Y.

2007) (quoting *Air Line Pilots Ass'n Int'l v. Am. Nat'l Bank & Trust Co. (In re Ionosphere Clubs)*, 156 B.R. 414, 433 (S.D.N.Y. 1993)).

Code § 107(b) establishes only two exceptions to the general right of access where under "compelling or extraordinary circumstances" an exception is necessary. *Video Software Dealers Ass'n v. Orion Pictures Corp. (In re Orion Pictures Corp.)*, 21 F.3d 24, 27 (2d Cir. 1994). Code § 107(b) provides:

> On request of a party in interest, the bankruptcy court shall, and on the bankruptcy court's own motion, the bankruptcy court may—(1) protect an entity with respect to a trade secret or confidential research, development, or commercial information; or (2) protect a person with respect to scandalous or defamatory matter contained in a paper filed in a case under this title.

However, "a judge must carefully and skeptically review sealing requests to insure that there really is an extraordinary circumstance or compelling need" to keep the material private. *In re Food Mgmt. Group*, 359 B.R. at 554 (internal citation and quotation omitted). "Although [there are] examples demonstrat[ing] that it is within a court's discretion to curtail the common law presumption of public access, only the most compelling reasons can justify non-disclosure of judicial records." *Gitto v. Worcester Telegram & Gazette Corp. (In re Gitto Global Corp.)*, 422 F.3d 1, 6 (1st Cir. 2005) (citing *FTC v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 410 (1st Cir. 1987)). "Protective orders have been denied when they were sought merely to facilitate the debtors' reorganization or to assuage a defendant's fears that disclosure of the allegations in an adversary complaint would adversely affect its business activities." *In re EPIC Assocs. V*, 54 B.R. 445, 449 (Bankr. E.D. Va. 1985) (internal citations omitted) (further stating that although sealing financial information may facilitate rehabilitation of Chapter 11 debtor, records cannot be sealed under Code § 107 on that basis alone).

- 29 -

Here the Debtors invoked Code § 107(b)(1) to file the Complaint under seal, representing to the Court that the Debtors were preserving of the status quo and existing business relationships as "commercial information" in need of protection. In connection therewith, the Debtors alleged that they "have worked to preserve and repair their business relationship with many of the potential defendants during these cases and have negotiated or regained favorable credit terms with many suppliers and are continuing to do so." *See* First Seal & Extension Motion at 20, ¶ 37. This statement may have contained some truth when spoken, but the grain of truth that existed in August 2007 did not apply to any disclosure of or settlement with respect to the avoidance claims, and any negotiations that existed in August 2007 ended well before the Third Extension Motion in April 2008 or the Fourth Extension Motion in October 2009. What this statement really reveals is that the Debtors wanted the opportunity to deceive Setech by preserving substantial claims against it in secret while at the same time soliciting its continued support, and it wanted this Court's help in doing so. What really happened is that the Debtors used this Court to facilitate this deceitful scheme.

There never was any justification under Code § 107 for sealing the Complaint. "Commercial information" has never been defined so broadly as to protect information that would be prejudicial to the Debtors vis-à-vis their own creditors. Rather, commercial information has been defined "as information which would cause an <u>unfair advantage to competitors</u> by providing them information as to the commercial operations of the debtor." *In re Orion Pictures Corp.*, 21 F.3d at 27 (emphasis added). Setech is not a competitor of the Debtors, nor is there any claim that it ever was. Setech was a manager and purchasing agent to the Debtors. Setech's principals had long-standing and highly-valued relationships with the principals of the Debtors. The fact that the Debtors are seeking to avoid allegedly preferential payments to Setech was,

- 30 -

therefore, not "commercial information" that needed to be kept from Setech or that should have been kept confidential, unless the purpose was to mislead Setech. Setech can find no cases holding that Code § 107(b) "protection" is applicable to such a situation. *See also In re Food Mgmt. Group, LLC*, 359 B.R. at 554 (denying motion to seal adversary complaint because no exceptions defeated open-access mandate of Code § 107(a)). The Debtors failed to enumerate any threat of unfair advantage to competitors, and thus failed to make the required showing. By filing the motion without notice to parties who could raise this fatal flaw in the Debtors' applications to the Court, the Seal and First Extension Motion was granted despite the Debtors' failure to make the requisite showing.

5. **In The Aftermath Of A Secret Complaint, The Extension Motions Were *Ex Parte*, Denying Setech Due Process.**

As explained in part in Section II.B.2 above, Setech was not given effective notice of the Extension Motions and therefore had no meaningful opportunity to be heard. The sealed Complaint, coupled with the Extension Motions, denied Setech the opportunity to protect its rights.

Any motion filed in the case or in this proceeding must be served as required by Bankruptcy Rule 7005(a)(1)(D). Under Bankruptcy Rule 7010 a "complaint " must name all parties; thereafter, there can be a general reference in pleadings after specifically naming the first party on each side. Under Bankruptcy Rule 7007(b)(2), the rules governing captions and other matters of form in pleadings "apply to motion and other papers." There is no basis in the rules for the Court to grant an exception to these requirements. *See, e.g., Kilmer v. Flocar, Inc.*, 212 F.R.D. at 69 ("Rules are not empty formalities. . . . A party's failure to comply with these rules is fundamentally unfair to the opposing party. The opposing party has a right to be informed of the factual bases of his rival's case and the specific foundations for those contentions of fact. Non-

compliant conduct is also adverse to the conservation of judicial resources which are most efficiently used when the parties meet their adversarial duties in a tightly orchestrated and lucid manner.").

The Extension Motions filed by the Debtors to extend the time for service of process under Bankruptcy Rule 7004(m) do not comply with Bankruptcy Rule 7007(b)(2) or the Case Management Orders. Consequently, they did not put any party on notice that the Extension Motions affected them in any way.[12] *Doe v. Shakur*, 164 F.R.D. 359, 360 (S.D.N.Y. 1996) (intention of rules requiring parties to be named is to apprise parties of who their opponents are and to protect the public's legitimate interest in knowing the facts at issue in court proceedings). Because the Extension Motions failed to name Setech as a party potentially affected thereby, and because the Extension Motions served no notice purpose to Setech, they should be treated as a nullity. *In re Johns-Manville Corp.*, 2010 U.S. App. LEXIS 5877, at *52 ("[O]ne is not bound by a judgment in personam in a litigation in which he is not designated as a party or to which he has not been made a party by service of process.'"). Having received no meaningful notice and no opportunity to be heard on the Extension Motions, Setech should be granted the opportunity under Bankruptcy Rule 9024(b)(6), incorporating Rule 60, to oppose the Extension Motions, with the extensions granted pursuant to those Motions vacated if Setech demonstrates why justice and equity so require.

Not surprisingly, the most common ground for Rule 60 Relief is that the losing party fails to receive notice of entry of the judgment. *See* 11 Charles Alan Wright and Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE, § 2864 at 353 (2d. ed. 1995). Sometimes this is due to

---

[12] The Fifth Extension Motion, requesting an extension of the service of process deadline past April 5, 2010, did name Setech in the certificate of service, but the hearing held on that motion was on April 1, 2010, at which time Setech had not seen the Complaint and had no knowledge that it had been sued in 2007.

clerk error, but here it was due to the conscious choice and bad faith litigation tactics of the Debtors not to prepare and serve the Complaint and the Extension Motions that would have been reasonably calculated, under all the circumstances, to apprise interested parties like Setech of the relief requested in either the Complaint or the Extension Motions.

Failure to receive proper notice, as explained above, may be a function of the substance of the motion itself, as when the motion omits information necessary to apprise interested parties (parties not named) or when the information actually expressed is misleading in that it exclusively names only a small portion of the interested parties and then by representation (e.g., in footnote number 4 in Third and Fourth Extension Motions) or implication (overnight mail service upon only upon specifically-named parties), communicates the wrong message to those receiving notice.

Failure to receive proper notice may also be a function of inadequate or improper procedural notice, as when the Debtors fail to serve interested parties at all, or when the Debtors serve interested parties in an improper manner[13] or with inadequate time to respond.[14] Failure to receive proper notice may also be a combination of substantive and procedural defects. Here we have a chorus of errors, omissions, intentionally deceptive acts, or all three, that, in combination, at least form the basis of excusable neglect and in good conscience form the basis to vacate the Extension Orders and dismiss these avoidance actions.

---

[13] Some preference defendants received electronic notice of the faceless Extension Motions. None seem to have received the clear and direct notice minimally required by the Case Management Orders.

[14] For example, Setech was first served with the Complaint on the same day that the Court held the hearing with respect to the Fifth Extension Motion.

07646N:051607:851956:11:NASHVILLE

**B.    Under Current Circumstances, the Debtors Have No Basis for an Extension of the Initial Service Deadline of 120 Days from the Filing of the Complaint.**

Because over two and one-half years passed after the expiration of the statute of limitations before Setech was served with the Complaint, Setech has been prejudiced, and that prejudice in light of the lack of any justification for this secrecy and these delays precludes any extensions under Bankruptcy Rule 7004(m).

Under Bankruptcy Rule 7004(m), a court can extend the time for service upon an affirmative showing of "good cause" by the plaintiff for an appropriate period *See Mendez v. Elliot*, 45 F.3d 75 (4th Cir. 1995). Other courts have held that even absent good cause, a court can in its discretion dismiss the proceeding if the summons and complaint are not served in a specified time. Even if could have exercised discretion, the Court did not do so here. The Court did not, on its own or on a motion, choose to dismiss the action or order that service be made with a specified time. Instead, it granted the Extension Motions without the required showing of good cause even though Setech was generally available to be served. "Good cause" may exist in cases under Rule 4(m) when service cannot be completed on a named defendant within the required 120-day period by no fault of a plaintiff. *See Ahern v. Neve*, 285 F. Supp. 2d 317, 320 (E.D.N.Y. 2003). Good cause does not exist, however, in situations where, as here, the Debtors knew and could serve the named defendants, but simply choose not to do so, and where the sole purpose in seeking the extension of time under seal and without notice was to prevent defendants from learning that they had been sued.

The Debtors asserted as good cause that (i) keeping the Adversary Proceeding a secret "avoid[ed] unnecessarily alarming potential defendants" and (ii) the defendants would not have to retain counsel if they were not told they were sued and a plan of reorganization resolved all issues. *See* Seal and First Extension Motion at ¶¶ 34, 37. These justifications have no merit. In

- 34 -

fact, they are patronizing and self-serving substitutes for any real analysis into the issue of the

foreseeable harm that would ensue from the disregard of due process and the evisceration of the

statute of limitations. They also attempt to obfuscate what the Debtors we actually doing: hiding

claims against vendors so they have a better negotiating posture on the plan and other matters.

In *Redding v. Essex Crane Rental Corp.*, 752 F.2d 1077 (5th Cir. 1985), the plaintiff did

not serve the defendant in a federal case in order to gain advantage in an ancillary state court

action. The Fifth Circuit dismissed the federal case, finding that it was the result of improper

gamesmanship on the part of the attorneys, stating:

> [T]here is no defendant in this case because none had been served.
> Counsel was intentionally keeping the case unknown to the named
> defendant for the purpose of manipulating his own claim in a state
> court. His delay was indefinite. He was blocking the right of the
> potential defendant to know that a suit had been filed against it in
> federal court, blocking discovery, and blocking the right of the
> putative defendant to preserve its defenses. This not only was not
> good cause, it was an **obvious misuse of the judicial process**.
> (emphasis added)

*Id*. at 1078. A "misuse of the judicial process" is exactly what happened here. The reason for the

delay was not "good cause" but in fact its antithesis, a disingenuous attempt to deceive the

defendants. In their Extension Motions the Debtors repeatedly relied upon *Bank of Cape Verde v.*

*Bronson*, 167 F.R.D. 370, 371-72 (S.D.N.Y. 1996), for the proposition that good cause exists

where future events would have likely "obviated the need to serve the complaint." This case is

inapplicable to the instant facts.[15]

In *Bronson*, the third-party plaintiff was pursuing good-faith settlement negotiations with

the plaintiff and third-party defendants, and had already served all or most of the parties to the

---

[15] The Debtors' made this statement against the backdrop of a 100%-payout plan; The Debtors knew well
before the Second, Third or Fourth Motions that this asserted factual basis for a Rule 4(m) extension
could not hold water once it became clear that the Plan Investors had backed out.

action prior to the expiration of the 120-day deadline. That is a far cry from the situation here, where Setech was not—and could not have been—in settlement negotiations with the Debtors, because it did not even know that it had been sued, and had never been served prior to April 1, 2010. Citing *Bronson* as authority for the Extension Motions, coupled with reference to settlement negotiations, when the Debtors were <u>not</u> in fact engaged in settlement discussions with Setech with regard to these preference claims, was misleading if not another outright misrepresentation. By hiding these preference claims while seeking more favorable trade terms with Setech and other defendants, the Debtors used this Court and the Extension Orders in bad faith as tools of trickery and deceit.

Assuming that the Court may now have discretion under Bankruptcy Rule 7004(m) to extend the service of process deadline retroactively without a showing of "good cause," such an extension would be an abuse of discretion. "The abuse of discretion standard allows a range of choice for the district court, so long as that choice does not constitute a clear error of judgment." *Rasbury v. IRS (In re Rasbury)*, 24 F.3d 159 (11th Cir. 1994). Federal appellate courts review the grant or denial of a Rule 4(m) extension for an abuse of discretion. *See, e.g., McCurdy v. Am. Bd. of Plastic Surgery*, 157 F.3d 191 (3d Cir. 1998). Under the abuse of discretion standard, a court has a range of choice, and its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law. However, "**an abuse of discretion occurs if a relevant factor that should have been given significant weight is not considered, if an irrelevant or improper factor is considered and given significant weight, or if a court commits a clear error of judgment in the course of weighing proper factors**." *Cottier v. City of Martin*, 551 F.3d 733 (8th Cir. 2008) (emphasis added). In such discretionary cases the court must balance interests. *Zapata v. City of New York*, 502 F.3d 192, 198 (2d Cir. 2007), *cert.*

*denied*, 552 U.S. 1243 (affirming refusal of extension of time and dismissal). There was no such balancing here and no consideration of the prejudice to Setech, which is not surprising in this *ex parte*, secret procedure created by the Debtors in bad faith. All of the benefits were to the Debtors, and all of the harm was to Setech. A true balancing of the harm would need first to ask the harm to Setech, which was not addressed. Absent consideration of prejudice to Setech, the Extension Orders were an abuse of discretion, and the Court should not be reluctant to reverse itself and reconsider the proper use of its discretion.

**C.    After a Two and One-Half Year Delay, Setech and This Court Are Prejudiced by the Seal and Extension Orders.**

**1.    Prejudice Is Presumed.**

Lack of due process results in irremediable prejudice that bars reinstatement of the Extension Orders. It cannot seriously be disputed that a two and one-half year delay after a two year statute of limitations is unreasonable. Prejudice is presumed after an unreasonable delay. By preventing Setech from being heard by the Court, the Debtors effectively prevented the Court from weighing the prejudice to Setech inherent in the extension of time to serve. "**It is obvious that any defendant would be harmed by a generous extension of the service period beyond the limitations period for the action, especially if the defendant had no actual notice of the existence of the complaint until the service period had expired**." *Zapata* 502 F.3d 192 at 198 (emphasis added). *See, e.g., Pearson v. Dennison*, 353 F.2d 24, 28 (9th Cir. 1965) ("law will presume injury from unreasonable delay" in prosecuting action); *Bernays v. Frederic Leyland & Co.*, 228 F. 913, 914 (D. Mass. 1915) ("the plaintiff shall not, by reason of his own neglect and unreasonable delay, gain.

- 37 -

## 2.    Actual Prejudice Has Occurred.

Setech in fact has been grossly and foreseeably prejudiced. *See* Eddinger Declaration at

¶ 29.

First, with respect to very type of prejudice that the statute of limitations is enacted to

prevent---stale claims leading to loss of evidence:

(i)    All of the Facilities except Kokomo are now closed or sold off;

(ii)    So far as Setech knows, no Facility-level employees, either on the Setech side or the Delphi side, remain employed by either party and may now be beyond the subpoena power of the Court. Therefore, there may be no site-level witnesses on either side available to testify as to the business practices between the parties;

(iii)    As to all of the Facilities, documentary evidence which for the most part would have been readily available on-site had this action been timely prosecuted has since been bulk shipped, culled and stored offsite, and documents of original entry may have since been purged or lost. Similarly, the historical payment data that was once stored in the DACOR computer system used by the Debtors may no longer exist in any decipherable form;

(iv)    Setech, in the mistaken belief that there was no litigation, has not retained all records of the agency vendor transactions, resulting in a loss of evidence, such as e-mail and handwritten, contemporaneous notes, which could be essential in defending the action. Likewise, Setech has not retained all of its employees or contact information for all witnesses whose personal knowledge is relevant to this action, each of whom is essential in defending the action; and

(v)    The Debtors extracted new contracts and more favorable payment terms from Setech, than it otherwise would have gotten had Setech been informed that it had been sued for a multiple of its total net worth.

Second, with respect to Setech's operations and financial condition:

(i)    Setech negotiated with the Debtors in good faith and made them concessions that it would not have made if it had know about the secret Complaint;

    (ii)        During the period of September 2007 through April 2010 Setech undertook a number of key strategic and operational investments that consumed a significant portion of its equity. These investment included expenditures into joint ventures in support of operations and significant expenditures for internal update information systems software and hardware. During this time frame Setech's investments totaled between $2 million and $3 million, over fifty percent of its equity. Setech and its investors would have never undertaken these directions had they known of the existence of a suit totaling over four times its equity;

    (iii)       During the period of September 2007 through April 2010, Setech bought back stock from investors and investors purchased stock in Setech, without knowledge of the Complaint. The existence of the Complaint is unquestionably material information to anyone considering buying or selling equity in Setech; and

    (iv)       Setech is routinely asked to give customers and potential customers and potential business partners financial information. Even assuming that the Complaint is meritless, the existence of a $22,667,123.34 claim, which is many times in excess of Setech's net worth, impairs its ability to maintain and create new business relationships.

## D. Plaintiffs Are Not Entitled to Equitable Tolling.

If the Extension Orders are reconsidered and vacated, then this proceeding must be dismissed for insufficient service and lapse of the statute of limitations. This is not an appropriate case for equitable tolling of the statute. Under the equitable tolling doctrine, where a party "remains in ignorance of [a wrong] without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered." *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 363 (1991) (internal quotation omitted). As a general rule, "[t]his equitable doctrine is read into every federal statute of limitation." *Holmberg v. Armbrecht*, 327 U.S. 392, 397, 66 S.Ct. 582, 585, 90 L.Ed. 743 (1945).

Equitable tolling applies to Code § 546(a)(1). *See, e.g., McColley v. Rosenberg (In re Candor Diamond Corp.)*, 76 B.R. 342, 350-51 (Bankr. S.D.N.Y. 1987); *Metzeler v. Bouchard Transp. Co. (In re Metzeler)*, 66 B.R. 977, 980-82 (Bankr. S.D.N.Y. 1986). However, because

07646N:051607:851956:11:NASHVILLE

application of equitable tolling turns on the plaintiff's diligence in pursuing a cause of action,

courts hold, as a matter of law, that the doctrine does not apply when "the uncontroverted

evidence irrefutably demonstrates that a plaintiff discovered or should have discovered the fraud

but failed to file a timely complaint." *Volk v. D.A. Davidson & Co.*, 816 F.2d 1406, 1417 (9th

Cir.1987); s*ee also Bornstein v. Poulos*, 793 F.2d 444, 448 (1st Cir. 1986) (appellate court may

find that undisputed facts in the record illustrate that equitable tolling does not preserve

bankruptcy trustee's action).

The legislative history to Code § 546(a) supports the conclusion that equitable tolling

applies only when a defendant's fraudulent concealment is the cause of the plaintiff's failure to

timely discover and/or prosecute its claims:

> This section defines the applicable statute of limitations as 2 years
> from the entry of an order of relief or 1 year after the appointment
> of the first trustee if such appointment occurs before the expiration
> of the original 2-year period. The section is not intended to affect
> the validity of any tolling agreement or to have any bearing on the
> *equitable tolling* doctrine *where there has been fraud* determined
> to have occurred.

*See* 140 CONG. REC. H. 10752, * H10768 (daily ed. Oct. 4, 1994)(emphasis added). As explained

in *Chrysler Workers Ass'n v. Chrysler Corp.*, a

> plaintiff seeking to invoke the equitable tolling doctrine must meet
> several criteria. Fraudulent concealment must consist of
> affirmative acts or representations which are calculated to, and in
> fact do, prevent the discovery of the cause of action. Mere silence
> of the defendant and failure of the plaintiff to learn of the right of
> action, alone, are not sufficient. After plaintiffs should have
> discovered that they had a cause of action, there is no tolling of the
> applicable statute of limitations period.

663 F. Supp. 1134, 1151-52 (N.D. Ohio 1986) (internal citations omitted). In order to toll the

statute based on the alleged fraudulent concealment of material facts by the defendants, plaintiffs

must establish that defendants affirmatively acted to induce delay on the part of the plaintiffs.

- 40 -

Because it is undisputed here that Debtors discovered the preference claims well within the limitations period, and because the inordinate prosecution delay was the result of Debtors' deception rather than Setech's, equitable tolling is inapplicable. *Jobin v. Boryla* (*In re M & L Bus. Mach. Co., Inc.*), 75 F. 3d 586, 591 (10th Cir. 1996).

Because the delay in pursuing these claims was the result of the Debtors' tactical choice rather than any action taken by Setech, the Debtors also are barred from equitable relief because they come with unclean hands. One who fails to act diligently cannot evoke equitable principles to excuse a lack of diligence. *Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 151 (1984); *Ernst & Young v. Matsumoto* (*In re United Ins. Mgmt. Inc.*), 14 F. 3d 1380, 1385 (9th Cir. 1994). It is hornbook law that one seeking equity must do equity. *Cherno v. Dutch Am. Mercantile Corp.*, 353 F.2d 147, 155 (2d Cir. 1965). For example, it is well settled that a debtor may not hide assets and then cry foul in the name of equity when its estate is reopened years later to administer fraudulently omitted assets. *See, e.g., In re Thomas*, 204 F.2d 788, 795 (7th Cir. 1953) ("If the result be harsh to the bankrupt, it is because he has become the victim of his own handiwork."). A plaintiff who has intentionally delayed prosecution for over two years can no better invoke equitable tolling than a debtor who has concealed assets from a trustee can invoke laches to preserve fraudulent conceal assets. *In re White*, 104 B.R. 951, 957 (S.D. Ind. 1989).

Equitable tolling is a narrow limitations exception. Courts cannot countenance ad hoc litigation for every missed deadline. The repose that statutes of limitations provide will be lost if their applicability is "up for grabs" in every case. *English v. Pabst Brewing Co.*, 828 F.2d 1047, 1049 (4th Cir. 1987). At some point, "the right to be free of stale claims . . . comes to prevail over the right to prosecute them." *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554 (1974) (quoting *Order R.R. Telegraphers v. Ry. Express Agency*, 321 U.S. 342, 348-39 (1944)). The

- 41 -

very basis for equitable tolling is "plaintiff's *unawareness* of the facts giving rise to the claim because of the defendant's intentional concealment of them." *Blumberg v. HCA Mgmt. Co.*, 848 F.2d 642, 644 (5th Cir. 1988) (emphasis added).

In the Seal and First Extension Motion, the Debtors requested and obtained authority "to enter into stipulations tolling all applicable statutes of limitations" with defendants. *See* Seal & First Extension Motion at ¶ 40. Curiously, it does not appear that the Debtors ever approached Setech with any request to discuss, much less negotiate, any contractual tolling agreement. The request for approval of a form of tolling agreement functioned solely, it appears, to mislead the Court into believing that the Debtors intended to provide private notice to Setech and to other defendants of these avoidance claims in the context of contractual negotiations when in fact the Debtors did not, and never intended to, inform defendants of these actions in any effective manner. The Debtors did not contractually toll the substantive limitations period. Similarly, the Debtors are not entitled to any equitable tolling.

A plaintiff cannot claim he was "misled or prevented" from filing a timely charge where he "testified to his awareness" within the limitations period. *Miller v. Int'l Tel. & Tel. Corp.*, 755 F.2d 20, 26 (2d Cir. 1985). Because the Debtors were aware of the preference actions, and took concerted action to prevent the defendants from learning of these actions for years to the detriment of Setech and others, the Debtors' hands are unclean and should not be held out for additional relief. *Powell, Inc. v. Abney*, 669 F.2d 348, 350 (5th Cir. 1982) ("He who comes into the court seeking equity, must do so with clean hands and in turn must be prepared to do equity."). Because the Plaintiffs have done neither, the Complaint should be dismissed. If dismissal be a harsh result, the Plaintiffs are the victims of their own handwork.

07646N:051607:851956:11:NASHVILLE

## III.    THE COMPLAINT FAILS TO STATE A CLAIM.

Pursuant to Rule 12(b), as made applicable by Fed. R. Bankr. P. 7012(b), a party must move regarding specified defenses before pleading, including, inter alia, failure to state a claim upon which relief may be granted, insufficient process, and a lack of personal jurisdiction.

The Complaint here is facially insufficient because it contains only baseless, general legal conclusions which were made intentionally vague so that they could become a template for many, and perhaps all, of the 177 purportedly active adversary proceedings at bar. These legal conclusions are asserted solely as a formulaic chant of the elements at paragraphs 9-16. No *facts* to support those conclusions are alleged in the Complaint.

The Complaint incorporates an Exhibit "1" as a list of the Alleged Transfers at issue, but it is devoid of facts regarding those Alleged Transfers.

To avoid dismissal pursuant to Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Specifically, a claim "must contain allegations concerning each of the material elements necessary to sustain recovery under a viable legal theory." *Huntington Dental & Med. Co. v. Minnesota Mining & Mfg. Co.*, No. 95 Civ. 10959, 1998 WL 60954, at *3, 1998 U.S. DIST. LEXIS 1526, at *9 (S.D.N.Y. 1998); *Masefield AG v. Colonial Oil Inds.*, 2005 WL 2105542, at *2, 2005 U.S. DIST. LEXIS 18787, at *6 (S.D.N.Y. Sept. 1, 2005). Though the Court must accept supporting facts alleged in the Complaint as true for the motion, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (emphasis added). A "formulaic recitation of the elements of a cause of action will not do." *Id.* "General, conclusory allegations need not be credited." *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995); *Enron Corp. v. Bear, Stearns Int'l Ltd. (In re Enron Corp.)*, 323 B.R. 857, 861 (Bankr. S.D.N.Y. 2005). Rather, to withstand a motion to dismiss, there must be

- 43 -

specific and detailed factual allegations to support the claim. *Enron Corp.*, 323 B.R. at 861; *Friedl v. City of New York*, 210 F.3d 79, 85-86 (2d Cir. 2000).

Here, no *facts* supporting the elements of Code § 547(b) are alleged; the Court, from reading the Complaint cannot tell what was paid in exchange for what, i.e., the underlying facts of any given transaction. Accordingly, pursuant to Bankruptcy Rule 7012(b), the Complaint should be dismissed for failure to state a cause of action upon which relief may be granted.

## CONCLUSION

For all of the foregoing reasons, Setech respectfully requests that the Court enter an order (i) vacating the Extension Orders pursuant to Bankruptcy Rule 9024; (ii) dismissing the above-captioned Adversary Proceeding with prejudice; and (iii) granting such other and further relief as the Court deems appropriate.

07646N:051607:851956:11:NASHVILLE

## **MEMORANDUM OF LAW**

The legal points and authorities upon which this motion relies are incorporated herein;

Setech therefore respectfully requests that the requirement of filing a separate memorandum of

law under Local Rule 9013-1 (b) be deemed satisfied.

Date:  May 14, 2010                               Respectfully submitted,

                                                  /s/ Robert C. Goodrich Jr.
                                                  Robert C. Goodrich Jr. (TN ID No. 10454)
                                                  Madison L. Martin (TN ID No. 24027)
                                                  STITES & HARBISON PLLC
                                                  401 Commerce Street, Suite 800
                                                  Nashville, TN 37219
                                                  (615) 244-5200       Fax: (615) 782-2371
                                                  Email:  robert.goodrich@stites.com
                                                          madison.martin@stites.com
                                                  -and-
                                                  SONNENSCHEIN NATH & ROSENTHAL LLP
                                                  John A. Bicks (JB 3496)
                                                  1221 Avenue of the Americas
                                                  New York, New York 10020
                                                  212) 768-6700       Fax:  (212) 768-6800
                                                  *Attorneys for Setech, Inc.*

07646N:051607:851956:11:NASHVILLE