TOGET, SEGAL & SEGAL LLP
Attorneys for Plaintiff
One Penn Plaza
Suite 3335
New York, New York  10119
Barry N. Seidel

DICKINSON WRIGHT PLLC
Attorneys for Sumitomo Electric Wiring Systems, Inc.
and Sumitomo Wiring Systems (USA), Inc.
500 Woodward Avenue, Suite 4000
Detroit, Michigan  48226
(313) 223-3500
James A. Plemmons (P42892- MI) (pro hac vice)
Dawn R. Copley (P53343 – MI) (pro hac vice)

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

_____

In re:

DPH Holdings Corp., et al.                                Chapter 11
                                                          Case No. 05-44481-rdd
                                                          (Jointly Administered)
                          Reorganized Debtors.

_____

Delphi Corporation, et al.
                                                          Adv.Pro.No. 07-02659-rdd
                          Plaintiffs,

v.

Sumitomo
Sumitomo Corp. of America
Sumitomo Corporation
Sumitomo Electric Wiring
Sumitomo Plastics America
Sumitomo Plastics America Inc.
Sumitomo Sitix Silicon Inc.
Sumitomo Wiring Systems Inc.

                          Defendants.

_____

**SUMITOMO WIRING SYSTEMS (USA), INC.'S AND SUMITOMO ELECTRIC WIRING
SYSTEM, INC.'S BRIEF IN SUPPORT OF JOINT MOTION TO: (I) VACATE
EXTENSION ORDERS; AND (II) DISMISS ADVERSARY PROCEEDING**

Sumitomo Wiring Systems (U.S.A.), Inc. ("SWS") and Sumitomo Electric Wiring Systems, Inc.[1] ("SEWS" and together with SWS, "Sumitomo[2]"), by their attorneys Dickinson Wright PLLC, submit this Brief in support of their joint Motion to (i) Vacate Extension Orders; and (ii) Dismiss Adversary Proceeding.

## INTRODUCTION

With its Extension Motions, Delphi carried out a scheme that should shock the conscience of anyone—layperson and lawyer alike.  Delphi filed causes of action under seal, against defendants it refused to divulge, and did not serve those complaints for over *two and a half years*.  Meanwhile, Delphi continued to do business with those defendants without divulging that it had already sued them for claims that, in some cases, exceeded many millions of dollars.  Worse, Delphi continued to justify nondisclosure of these defendants even when it knew the reason prompting the original procedures—the likelihood of a plan that would pay all creditors in full—was no longer applicable.  As a result, Delphi was able to initiate preference claims against defendants well after the statute of limitations had expired and well after those defendants had any reason to think they were potentially liable.  Sumitomo is one of those defendants that was sued under seal.

---

[1] In addition to the issues raised herein, Sumitomo Electric Wiring Systems, Inc. asserts, among other things, that it was not the transferee of any of the alleged transfers identified on Exhibit 1 to the Complaint and the Complaint should be dismissed as to Sumitomo Electric Wiring Systems, Inc. on that basis.  Sumitomo Electric Wiring Systems, Inc. expressly preserves this defense.

[2] Sumitomo Wiring Systems (USA), Inc. and Sumitomo Electric Wiring Systems, Inc. are not affiliates or subsidiaries, and are otherwise in no way related to the other defendants named in this Adversary Proceeding.  Plaintiff inexplicably joined these unrelated entities into this Adversary Proceeding.  This joint motion is on behalf of Sumitomo Wiring Systems (USA), Inc. and Sumitomo Electric Wiring Systems, Inc., only, who are affiliated entities in that they share a common parent corporation.

The Extension Orders—the orders that allowed Delphi to carry out this scheme—

must be vacated for the following reasons:

- The Extension Orders Violate Sumitomo's Due Process Rights.  A party's right of due process is violated unless that party receives notice "reasonably calculated" to properly apprise that party "of the pendency of the action and to afford them an opportunity to present their objections."  The Extension Motions never apprised Sumitomo that its legal rights would be affected so dramatically.  Sumitomo received no notice of these motions and had no way of knowing that, if the motions were granted, it would lose the protections of the statute of limitations and would be a defendant in a sealed adversary proceeding alleging $7.5 million[3] in liability.  This denial of due process requires that the Court vacate the Extension Orders, regardless whether they are interim or final orders.

- There Was No "Good Cause" for the Extension Orders, and a Discretionary Extension Was Not Warranted.  The real reason that Delphi wanted the complaints sealed was its desire to gain an advantage in "negotiat[ing ] or regain[ing ] favorable credit terms."  When Delphi no longer needed its suppliers' cooperation, Delphi reversed its position and revived the sealed adversary proceedings.  This does not, and never did, establish "good cause" for extending the deadline for serving the sealed complaints.  Accordingly, the Extension Orders should be vacated under Fed. R. Bankr. P. 9024 because the Court was misled into believing there was "good cause" for granting Delphi's motions.

- Delphi Should Be Judicially Estopped From Pursuing the Adversary Proceedings. The doctrine of judicial estoppel prevents Delphi from reversing its position and pursuing the sealed adversary proceedings after repeatedly representing to the Court that they would not be pursued; and

- Delphi's Adversary Proceedings Are Barred By Res Judicata.  Delphi's attempt at a "blanket reservation" of avoidance actions failed to provide the information necessary to properly reserve the sealed adversary proceedings.  Consequently, Delphi has abandoned those causes of action and the sealed adversary proceedings should be dismissed under the doctrine of res judicata.

For these reasons, as further set forth below, Sumitomo respectfully submits that the

Extension Orders should be vacated.  Once these orders are vacated, the adversary

---

[3] As stated above, Plaintiff inexplicably joined entities unrelated to Sumitomo Wiring Systems (USA), Inc. and Sumitomo Electric Wiring Systems, Inc. in this adversary proceeding.  Most of the transfers identified on Exhibit 1 to the Complaint are not attributable to, or received by, either Sumitomo Wiring Systems (USA), Inc. or Sumitomo Electric Wiring Systems, Inc.  In fact, none of the transfers on Exhibit 1 to the Complaint are attributable to Sumitomo Electric Wiring Systems, Inc.

proceeding against Sumitomo (and those against other parties to sealed complaints) must be dismissed under the governing statute of limitations.

## SUMMARY OF FACTS

### A.    The First Extension Motion and First Extension Order

On October 8 and October 14, 2005, Delphi Corporation and its subsidiaries and affiliates (collectively, "Delphi") filed voluntary petitions for relief under Title 11 of Chapter 11 of the United States Code.    Under 11 U.S.C. § 546(a), the statute of limitations for the commencement of avoidance actions expired in October 2007.

On August 6, 2007, shortly before the two-year limitations period was set to expire, Delphi filed a motion (the "First Extension Motion") (Doc. #8905) seeking entry of an order that, among other things: (i) granted Delphi leave to file under seal certain avoidance actions brought under 11 U.S.C. § 547 (collectively, the "Sealed Adversary Proceedings"); (ii) extended the time beyond the 120-day limitation provided under Federal Rule of Civil Procedure 4(m) to serve the summonses and complaints relating to the Sealed Adversary Proceedings; and (iii) stayed the Sealed Adversary Proceedings until service of process was effected.

The First Extension Motion did not identify those parties that would be named as defendants (the "Unidentified Defendants") in the Sealed Adversary Proceedings.  In fact, the only description of the avoidance actions in the First Extension Motion was the statement that Delphi "estimates that [it] may have more than 11,000 potential preference claims arising from transfers totaling approximately $5.8 billion," and the only description of the defendants that would be named in the Sealed Adversary Proceedings was a vague reference to "potential defendants."  (First Extension Motion,

4

¶ 14).  Indeed, the First Extension Motion makes no attempt to identify the Unidentified Defendants or to specifically identify the transfers that gave rise to the purported "more than 11,000 potential preference claims."

Delphi also stated that it intended to abandon, among other claims, those causes of action "which the Debtors determine … could pose other potential harm to the Debtors' business that would outweigh the expected recovery value."  (First Extension Motion, ¶ ¶  17 and 30).  Thus, even if the identity of the Unidentified Defendants could have been inferred from the First Extension Motion, it was equally reasonable to infer that Delphi would abandon any alleged cause of action against any party—such as Sumitomo—with whom Delphi had an ongoing business relationship.

Delphi justified the relief requested in the First Extension Motion by asserting that most of the Sealed Adversary Proceedings would be resolved by its reorganization plan, which it projected would pay all creditors in full.  Further, Delphi argued that the proposed procedures (including sealing the complaints and extending the time for service) would not "prejudice the potential defendants" because the Sealed Adversary Proceedings would likely all be dismissed before the Unidentified Defendants even knew that they had been sued.  (First Extension Motion,¶ 48).  Incredibly, Delphi contended that, not only would the Unidentified Defendants not be prejudiced, but the proposed procedures would actually *benefit* those defendants because they would "avoid having to … retain counsel to defend against adversary proceedings when, in fact, most of them likely will be resolved by a reorganization plan and never pursued," which would obviate the need to serve the Sealed Adversary Proceedings complaints. (First Extension Motion, ¶ 33).

The true intent behind the proposed procedures is revealed by Delphi's statement that it wanted to "avoid unnecessarily alarming" the Unidentified Defendants while Delphi "worked to preserve and repair [its] business relationship with many of the potential defendants." (First Extension Motion, ¶ 37). Delphi wanted to file the Sealed Adversary Proceedings under seal in order to both (1) preserve its claims, yet (2) keep Sumitomo and the other Unidentified Defendants completely unaware that they had been sued while Delphi "negotiated or regained favorable credit terms" with the Unidentified Defendants "on issues unrelated to avoidance actions." (First Extension Motion, ¶ 37).

On August 16, 2007, the Court entered an order (Doc #9105) granting the First Extension Motion (the "First Extension Order"). The First Extension Order (i) authorized Delphi to file complaints under seal, (ii) directed the Court Clerk to seal the case dockets for the Sealed Adversary Proceedings such that the names of the defendants were not ascertainable, and (iii) extended the time to March 31, 2008 for Delphi to serve summonses and complaints.

## B. Delphi Files A Sealed Adversary Proceeding Against a Defendant Later Identified As Sumitomo

On September 30, 2007, Delphi opened an adversary proceeding that was assigned Adversary Proceeding No. 07-02659 (the "Adversary Proceeding"). Because the complaint (the "Complaint") and the case docket relating to this Adversary Proceeding were sealed, Sumitomo cannot ascertain whether the Complaint was actually filed before the statute of limitations expired in October 2007. The Complaint, served on Sumitomo two and a half years after it was purportedly filed, seeks to recover large sums in alleged preferential transfers from Sumitomo.

6

C.    **Delphi's First Amended Joint Plan of Reorganization**

On or about December 10, 2007, Delphi filed its First Amended Joint Plan of

Reorganization (the "Confirmed Plan") (Doc #11386), which was confirmed by order of

this Court dated January 25, 2008 (the "Confirmation Order") (Doc #12359).    The

Confirmed Plan provided for the payment in full of unsecured creditors.    Exhibit 7.24 to

the Confirmed Plan listed the causes of action that Delphi would retain under the

Confirmed Plan.    This exhibit identified adversary proceedings that Delphi had filed

against Laneko Engineering Co., Wachovia Bank, N.A., Laneko Engineering Co., Inc.,

and their respective affiliates and subsidiaries (the "Laneko Defendants"), but did not

contain any reference to Sumitomo, the Complaint or the Adversary Proceeding.

D.    **The Second Extension Motion and Second Extension Order**

On February 28, 2008, Delphi filed a motion under Rule 4(m) seeking a second

extension of the time to serve the summonses and complaints in the Sealed Adversary

Proceedings to May 31, 2008 (the "Second Extension Motion") (Doc #12922).    In the

Second Extension Motion, Delphi reaffirmed that, "[u]nder the [Confirmed] Plan, the

Debtors will not retain any of the causes of action asserted in the Adversary

Proceedings except those specifically listed on Exhibit 7.24 to the [Confirmed] Plan" and

that "only the claims relating to [the Laneko Defendants] are subject to the [First

Extension Order]."  (Second Extension Motion, ¶ 17 and fn. 4).    Again, Delphi made no

reference to Sumitomo, the Complaint or the Adversary Proceeding.

Delphi stated that the "good cause" justifying a second extension was "enabl[ing]

the Debtors to fulfill their fiduciary responsibility to preserve valuable estate assets in a

manner that would not unnecessarily *disrupt* the emergence process or *the Debtors'*
*current business relationships with potential defendants that are necessary to the*
*Debtors' ongoing operations.*"    (Second Extension Motion, ¶ 21 (emphasis added)).
Thus, Delphi again acknowledged that its primary objective in filing the complaints
under seal was to gain an advantage over the Unidentified Defendants in negotiations
relating to the ongoing business relationships between Delphi and its suppliers (i.e., the
Unidentified Defendants).

More importantly, Delphi unequivocally acknowledged in the Second Extension
Motion that: (1) the only actions preserved under the Confirmed Plan were those filed
against the Laneko Defendants, (2) it would "not retain any causes of action asserted in
the [Sealed Adversary Proceedings] except those specifically listed in Exhibit 7.24 to the
[Confirmed] Plan" (which did not list the Adversary Proceeding against Sumitomo), and
(3) the First Extension Order applied only to the Laneko Defendants and not to the
remaining Unidentified Defendants.

On March 19, 2008, this Court conducted a hearing on the Second Extension
Motion.  At this hearing (copy of Transcript attached as **Exhibit A**), the Court expressed
concern over whether the Laneko Defendants received adequate notice of the Second
Extension Motion:

> THE COURT: All right.  Well, I debated whether to have you
> settle the order on those - - that handful of people [i.e., the
> Laneko Defendants].  I mean, normally, no one wants to
> have litigation be activated but I think the rationale potentially
> for them is a little different than the others.  So I think I'll - -
> particularly, if we're not sure whether they got notice.
>
> MR. BUTLER:  Your Honor, I think - - let me just - -

> THE COURT:  If they're on the 2002 list, you don't need to
> settle it.  If they weren't - - they weren't served with it, I'd like
> you to settle it as to the handful of people that the plan at
> least contemplates would be pursued.

(Transcript of March 19, 2008 Hearing, Ex. A, at 22-24).

As is evident from the Court's comments and directions at the hearing, Delphi led the Court to believe that only actions against the Laneko Defendants would be pursued (because those were the only actions retained under the Confirmed Plan) and that the Second Extension Motion applied only to the Laneko Defendants.

The Court entered an Order on March 28, 2008 (the "Second Extension Order") granting the Second Extension Motion.

### E.    The Third Extension Motion and the Third Extension Order

On April 4, 2008, only a few days after the Second Extension Order was entered, Delphi announced that the plan investors had refused to fund their investments under the Confirmed Plan so that the necessary exit financing for the Confirmed Plan would not close.

On April 10, 2008 – less than two weeks after the entry of the Second Extension Motion – Delphi filed yet another motion (the "Third Extension Motion") seeking to extend the time for service until 30 days after the substantial consummation of the Confirmed Plan.  When the Third Extension Motion was filed, Delphi knew that the exiting financing was not, and possibly would never be, available based on its April 4 2008 announcement.  Thus, Delphi sought to indefinitely extend the time for service of the summonses and complaint of the Sealed Adversary Proceedings.

Despite the unlikelihood that the Confirmed Plan would ever be consummated, Delphi reiterated the same "good cause" that it had offered in support of the Second

Extension Motion – to avoid "unnecessarily disrupt[ing] the emergence process or the Debtors' current business relationships with potential defendants that are necessary to the Debtors' ongoing operations."  (Third Extension Motion, ¶ 22).

      As with the Second Extension Motion, Delphi only identified the actions against the Laneko Defendants in the Third Extension Motion, and again stated that only those actions were subject to the First Extension Order.

      On April 30, 2008, the Court conducted a hearing (copy of Transcript attached as **Exhibit B**) on the Third Extension Motion.  At this hearing, Delphi's counsel represented to the Court that Delphi believed that it was only necessary to give specific notice of the Third Extension Motion to the Laneko Defendants and specifically stated the Delphi did *not* give notice to the 742 other Unidentified Defendants:

> We gave notice of the motion to Lenico (sic) Engineering Company, Wachovia Bank National Association and the master service list and the 2002 list.  The reason that we gave specific notice to Lenico (sic) and Wachovia was because those were the only two parties that had been identified under Exhibit 7.24 of the plan as having the avoidance actions preserved under the plan and, therefore, we gave particularized notice to them of the relief sought by the debtors.  We have not given notice to the 742 other defendants therein which are under seal and it was not served on those defendants except to the extent those defendants already had placed themselves on either the master service list or the 2002 list.

(Transcript of April 20, 2008 hearing, Ex. B, at 11-12).

      On April 30, 2008, the Court entered an Order granting the Third Extension Motion (the "Third Extension Order").

### F.      The Modified Plan

On October 3, 2008, Delphi filed the Plan Modification Approval Motion, seeking certain modifications to the Confirmed Plan.   On July 2, 2009, Delphi filed the Supplement To Plan Modification Approval Motion (Doc #17557), attached to which was Exhibit 7.19 (that was to replace Exhibit 7.24 of the Confirmed Plan) that purportedly identified certain actions that Delphi now sought to retain.   However, Exhibit 7.19 identified the Sealed Adversary Proceedings only by the adversary proceeding number, which had never been disclosed to any of the defendants named in those actions, and otherwise failed to identify any defendant.   Exhibit 7.19 did not identify Sumitomo nor provide adequate information such that Sumitomo could ascertain that it had been named as a defendant in any of the Sealed Adversary Proceedings.   Because the Sealed Adversary Proceedings had been filed under seal – and at this time, remained under seal – it was impossible for Sumitomo to have ascertained that it was an Unidentified Defendant named in one of the Sealed Adversary Proceedings, even with knowledge of the specific adversary proceeding number.

### G.      The Fourth Extension Motion  and Service of the Complaint

On October 2, 2009 – almost four years after the bankruptcy cases were commenced, two years after the statute of limitations expired, and one and a half years after the Third Extension Motion was filed – Delphi filed yet another motion (the "Fourth Extension Motion," and together with the First Extension Motion, the Second Extension Motion and the Third Extension Motion, the "Extension Motions").   This latest motion sought to extend the time for service of the summonses and complaints in the Sealed Adversary Proceedings until 180 days after substantial consummation of the Confirmed

Plan.  Again, Sumitomo had no way of knowing or discovering that the Fourth Extension Motion affected any of its rights because neither the Fourth Extension Motion nor Exhibit 7.19 identified Sumitomo as a defendant against whom a Sealed Adversary Proceeding had been commenced.

On October 22, 2009, the Court entered an order granting the Fourth Extension Motion (the "Fourth Extension Order," and together with the First Extension Order, the Second Extension Order and the Third Extension Order, the "Extension Orders").

In March, 2010—two and a half years after the Complaint was filed under seal and over two and a half years after the statute of limitations had expired—Delphi served the Summons and Complaint on Sumitomo.

### H.     Sumitomo Received No Notice Of  The Extension Motions

Sumitomo received no notice of any of the Extension Motions.  Sumitomo was not listed in the Affidavits of Service for any of these motions.  Further, even if Sumitomo had received these motions, because neither the Unidentified Defendants, the transfers at issue, nor the causes of action that would be abandoned were identified in these motions, the Extension Motions failed to provide the required information necessary to provide adequate notice to Sumitomo that its rights would be affected.

## ARGUMENT

## I.     The Extension Orders Must Be Vacated Because They Were Entered In Violation Of Sumitomo's Due Process Rights

### A.     Sumitomo Has Been Denied Its Due Process Rights

The Extension Orders substantially affected Sumitomo's legal rights, as they allowed Delphi to pursue preference actions two and a half years after Sumitomo believed they were extinguished under the governing statute of limitations.  Yet the

Extension Orders were entered without any notice to Sumitomo that its rights would be affected. Consequently, the Extension Orders violate Sumitomo's due process rights under the Fifth Amendment to the United States Constitution and must be vacated. *See* U.S. Const. amend. V.

The United States Supreme Court has held that "[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). A "reasonably calculated" notice must "convey the required information" such that a party is put on notice that the relief sought is applicable to *that party. Id.*

As several courts have held, *Mullane*'s "reasonably calculated" standard requires that the notice provided to a party must provide information sufficient to put the party on notice that *its* rights and interests are being affected. In *In re Takeout Taxi Holdings, Inc.*, 307 B.R. 525 (Bankr. E.D. Va. 2004), for example, the chapter 7 trustee filed a motion to sell substantially all property of the bankruptcy estate free and clear of liens pursuant to 11 U.S.C. § 363(f). Williamson, a secured creditor, asserted that he possessed a lien on some of this property. The trustee failed to serve the sale motion on Williamson and, instead, served only the notice of hearing for the motion. The court held that the motion was fatally flawed because of the lack of service on Williamson and other secured creditors.

The *Takeout Taxi* court went on to hold that, even if the motion *had* been served on Williamson, the motion itself did not provide Williamson constitutionally adequate

13

notice that his rights were being affected.  *Id.* at 532-533.  Notably, the court stated:

"***Constitutional due process is not simply satisfied by properly placing a piece of***
***paper in the hands of the respondent.  …  The person whose interests are sought***
***to be affected should be identified.***"  *Id.* (emphasis added).  The court held that a
motion "designed for the general creditor body" did not suffice where "[t]he liens in
jeopardy were not identified."  *Id.*[4]

Sumitomo received *no notice* of the Extension Motions and therefore, cannot be
bound by the Extension Orders.  *City of New York v. New York, N.H. & H. R.R. Co.*, 344
U.S. 293 (1953) (The City, whose identify and address were known to the debtor, was
not bound by the claims bar date because it was not given proper notice); *United States
v. Castro*, 243 B.R. 380 (D.Ariz. 1999) (Government did not receive notice of motion
seeking tax liability, therefore, order was void as a matter of law as to Government).
Here, there can be no dispute that, by sealing the Complaint, Delphi prevented
Sumitomo and other Unidentified Defendants from knowing or discovering that they
were named parties in the Sealed Adversary Proceedings.  None of Delphi's papers
reasonably apprised Sumitomo of the "pendency of the action" asserted against
Sumitomo, or otherwise conveyed the "required information" to put Sumitomo on notice
that its rights may be affected by any one of the Extension Motions.  None of the
Extension Motions identify Sumitomo as one of the Unidentified Defendants in the
Sealed Adversary Proceedings[5].  Moreover, because the Complaint was filed under

---

[4] *See also In re Hanson*, 58 F.3d 89, 93 (4th Cir. 1995) ("boilerplate language" in a plan was not
conspicuous enough, did not identify the secured creditor, and did not alert the secured creditor that it
had or may have a lien on the debtor's property, and therefore, did not properly apprise the secured
creditor of the "nature of the threat it faced.").

[5] Not only do all of the Extension Motions fail to identify Sumitomo as one of the Unidentified
Defendants that would be subject to a preference claim, in the First Extension Motion, Delphi stated that it

seal and purposefully kept secret, Sumitomo had no way of knowing that it was an Unidentified Defendant in the Complaint or that the Extension Orders would bind Sumitomo.

Consequently, the notice provided by the Extension Motions fell woefully short of the notice required by the due process clause of the Fifth Amendment. As held in *Takeout Taxi,* even if Sumitomo had received the Extension Motions (which it did not) simply placing these motions in Sumitomo's hands would not have been sufficient because these motions did not contain necessary information to provide Sumitomo with adequate notice that *its rights in particular* might be affected. Delphi did not identify Sumitomo as a party whose interests were sought to be affected in the Sealed Adversary Proceedings in any paper provided to or obtainable by Sumitomo (including the Extension Motions).

Yet it is now clear what was at stake for Sumitomo in Delphi's Extension Motions: Delphi has sued Sumitomo to recover large sums in alleged preferential transfers. Under the due process clause, and as demonstrated by authorities such as *Takeout Taxi,* Sumitomo cannot be deprived of its legal rights in this fashion. The Extension Orders must be vacated.

---

intended to abandon, among others, those causes of action "which the Debtors determine … could pose other potential harm to the Debtors' business that would outweigh the expected recovery value." Thus, even if Sumitomo could be charged with an obligation to infer that it potentially was one of the Unidentified Defendants (which Sumitomo could not do based upon the information provided in the First Extension Motion), Sumitomo could have just as reasonably inferred that Delphi would abandon any alleged cause of action against Sumitomo due to Sumitomo and Delphi's ongoing business relationship. Simply put, because all judicial documents relating to the Sealed Adversary Proceedings were sealed, it was impossible for Sumitomo to determine from the information provided in the Extension Motions that Delphi intended to attempt to preserve an alleged cause of action against Sumitomo.

**B.**    **The Extension Orders Are Interlocutory Orders That Work A Manifest Injustice On Sumitomo And Must Be Vacated**

Because the Extension Orders are interlocutory,[6] this Court may exercise its discretion and vacate them.  *United States v. Uccio*, 940 F.2d 753 (2d Cir. 1991) ("[U]ntil there is a final judgment in a case, an interlocutory ruling generally remains subject to reconsideration or modification").  Moreover, the Supreme Court has held that, when due process rights are at issue, the law-of-the-case doctrine does not preclude the Court from exercising this discretion.  In *Uccio,* the Court observed that "the doctrine of the law of the case is not an inviolate rule," adding that the Court "will adhere to its own prior rulings in a given case "absent 'cogent' or 'compelling' reasons" to deviate, such as "an intervening change of controlling law, the availability of new evidence, or *the need to correct a clear error or prevent manifest injustice*."  *Uccio*, 940 F.2d at 758 (emphasis added) (internal citations omitted).

Delphi will not be prejudiced by the Court vacating the Extension Orders because Delphi has been given notice and ample opportunity to respond to this motion to vacate those orders.  More importantly, as the Second Circuit has made clear, Delphi cannot rely on the law-of-the-case doctrine in this instance because that doctrine cannot be used to deprive Sumitomo of its due process argument.  *In re Johns-Manville Corp.*, 2010 U.S.App.LEXIS 5877, *11 (2d Cir.2010) (**Exhibit C**).

---

[6] In order for a bankruptcy court order to be "final" within the meaning of 28 U.S.C. § 158(d), the order "must completely resolve all of the issues pertaining to a discrete claim, including issues as to the proper relief."  *In re Fugazy Express, Inc.,* 982 F.2d 769, 776 (2d Cir.1992).  Because the Extension Orders did not resolve all of the issues relating to the Adversary Proceeding, but were procedural in nature, the Extension Orders are not final.  *In re Hooker Invs., Inc.*, 937 F.2d 833 2d Cir.1991); *In re Johns-Manville Corp.*, 824 F.2d 176 (2d Cir.1987); *In re Reliant Energy Channel View, L.P.*, 397 B.R. 697 (D.Del. 2008); *In re Adelphia Comms. Corp.*, 333 B.R. 649 (S.D.N.Y. 2005); *In re Bethlehem Steel Corp.*, 203 B.R. 554 (D.Del. 1996).

As set forth above, the need to prevent injustice constitutes a compelling reason for this Court to deviate from its prior rulings and demonstrates the need for the Court to vacate its prior orders.  *Uccio*, 940 F.2d at 758.  The Extension Orders deprived Sumitomo of its legal rights without following minimal due process requirements to ensure that Sumitomo had a meaningful opportunity to contest Delphi's requests.  The Extension Orders therefore resulted in a "manifest injustice" to Sumitomo and those Unidentified Defendants similarly situated that should now be corrected.  *United States v. Crusco*, 536 F.2d 21, 26 (3d Cir. 1976) (citing *United States v. McGahey*, 449 F.2d 738 (9th Cir. 1971) ("Where there is denial of due process, there is "manifest injustice" as a matter of law.")

### C.    If The Extension Orders Are Deemed Final Orders, The Extension Orders Must Be Vacated Because Sumitomo Was Denied Due Process

Even if the Extension Orders are deemed to be final rather than interlocutory, the Court must vacate these orders under Federal Rule of Civil Procedure 60(b).[7]  This rule provides, in pertinent part:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: … (4) the judgment is void; …or (6) any other reason justifying relief from the operation of the judgment.

A court must vacate a final order under Rule 60(b) if the Order "is void because entry of order violates due process rights."  *Fustok v. Conticommodity Services, Inc.,* 122 F.R.D. 151, 155 (S.D.N.Y.1988) (citing *Textile Banking Co. v. Rentschler*, 657 F.2d 844, 850 (7th Cir.1981).  *See als*o *Green v. Guiney*, 2010 U.S.App.LEXIS 6130, *2 (2d

---

[7] Made applicable to this adversary proceeding by Fed.R.Bankr.P. 9024.

Cir. 2010) (**Exhibit D**) (quoting *Grace v. Bank Leumi Trust Co. of N.Y.*, 443 F.3d 180,

193 (2d Cir. 2006) (stating that a voidness challenge requires movant to show that the

court "acted in a manner inconsistent with due process of law").    When orders are

inconsistent with the due process of law, vacation of those orders is mandatory, not

discretionary.  *United States v. Castro*, 243 B.R. 380, 383 (D. Ariz. 1999).

As set forth above, by filing the Complaint under seal and seeking entry of the

Extension Orders without adequate notice to Sumitomo, Delphi has deprived Sumitomo

of its right to due process.  Therefore, even if the Extension Orders are final orders, they

should be vacated pursuant to Rule 60.

## II.    The Court Should Vacate The Extension Orders Because There Was No Cause To Extend The Time For Service

As shown above, Delphi's due process violations mandate that the Extension

Orders be vacated.  In addition to these due process violations, the Extension Orders

should be vacated because there was no basis under Fed.R.Civ.P 4(m) to extend the

time for Delphi to serve the Summons and Complaint on Sumitomo.

Under Fed.R.Civ.P 4(m),[8] courts are authorized to extend the time for service of

a summons *only*: (i) upon a showing of "good cause" by plaintiff; or (ii) where the court

finds that a discretionary extension of service is appropriate.  *Eastern Refactories Co. v.*

*Forty Eight Insulations, Inc.*, 187 F.R.D. 503, 505-506 (S.D.N.Y. 1999); *In re Comberse*

*Technology, Inc. Securities Litigation*, 543 F.Supp.2d 134 (E.D.N.Y.2008).  Under either

alternative, it was Delphi's burden to establish entitlement to the extension.  Where the

delay in service is substantial, this burden is a heavy one to overcome.  *Spinale v.*

*United States*, 2005 U.S.Dist.LEXIS 4608 (S.D.N.Y. 2005) (**Exhibit E**).

---

[8] Made applicable to this adversary proceeding by Fed.R.Bankr.P. 7004.

### A.    "Good Cause" Did Not Exist

A showing of good cause "requires a demonstration of good faith on the part of the party seeking an enlargement and some reasonable basis for noncompliance within the time specified in the rules." *Chiang v. Unites States Small Business Administration*, 331 Fed. Appx. 113, 115 (3d Cir. 2009) (quoting *MCI Telecommunications Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1097 (3d Cir.1995)).    Good cause exists only in "exceptional circumstances where the plaintiff's failure to serve process in a timely manner was the result of circumstances beyond its control." *Eastern Refractories*, 187 F.R.D. at 505.    *See also  Lepone-Dempsey v. Carroll County Commissioners*, 476 F.3d 1277, 1281 (11th Cir. 2007) (good cause exists only when some outside factor prevents plaintiff from serving within the time frame required by Rule 4(m)).    In the event a court should subsequently determine good cause did not exist for an extension of time granted under a previous order, the court may vacate the prior order. *McCrae v. KLLM, Inc.*, 89 Fed. Appx. 361, 363 (3d Cir. 2004).

Delphi's failure to serve Sumitomo within 120 days from the filing of the Complaint (under seal) was not the result of circumstances beyond its control, such as difficulty in locating Sumitomo despite diligent attempts to effect service.    Rather, this failure resulted from Delphi's strategic decision to conceal the Complaint from Sumitomo to gain an advantage during negotiations relating to ongoing business.

The Extension Motions make it clear that Delphi did not want Sumitomo and the other Unidentified Defendants to know that they had been sued. Delphi wanted to continue negotiations with these parties and extract favorable business terms from them, while these parties remained completely unaware of the pending Sealed

Adversary Proceedings against them. Concealment of the Sealed Adversary Proceedings provided Delphi an advantage in its business dealings with the Unidentified Defendants. Delphi continued to exercise this advantage by maintaining concealment of the Sealed Adversary Proceedings until such time that it was more beneficial to Delphi to pursue them (because it no longer needed to continue business negotiations with the Unidentified Defendants). Delphi's procedure worked precisely as it intended.

Delphi's stated basis for the extensions – that it did not want to "force all potential defendants to retain counsel to defend against adversary proceedings" – is simply not credible. Had that really been Delphi's goal, it could have been accomplished without depriving the defendants their due process rights by publicly filing the complaints, serving the summonses and complaints on the defendants, then requesting that this Court stay the proceedings until the proposed plan was confirmed. The Unidentified Defendants would not have been required to immediately "retain counsel to defend against adversary proceedings" because the proceedings would have been stayed. Moreover, the Unidentified Defendants would have at least been made aware that they had been sued and had the opportunity to (1) take steps to preserve evidence, and, more importantly, (2) use this knowledge in any way they saw fit in their negotiations with Delphi on other matters. But, of course, that would have thwarted Delphi's real purpose for keeping the Sealed Adversary Proceedings secret.

Delphi also stated that the First Extension Order would "preserve valuable estate assets" by allowing the Sealed Adversary Proceedings complaints to be filed before the statute of limitations expired. However, the running of the statute of limitations cannot constitute good cause for the grant of an extension of the service period under Rule

4(m).    *Petrucelli v. Bohringer and Ratzinger*, 46 F.3d 1298, 1306 (3d Cir.1995) ("[A]

district court may not consider the fact that the statute of limitations has run until after it

has conducted an examination of good cause.  If the district court determines that good

cause does not exist, only then may it consider whether the running of the statute of

limitations would warrant granting an extension of time"); *In re Teligent Services, Inc.*,

372 B.R. 594 (S.D.N.Y.2007).

Further, the basis stated in the Extension Motions – that future events would

obviate the need to serve the Sealed Adversary Proceedings complaints – disappeared

(to the extent it ever existed in the first place) when the plan investors refused to provide

funding in April 2008, before the entry of the Third and Fourth Extension Orders.  Delphi

nonetheless presented this basis for the relief sought in the Third Extension Motion

even though Delphi had to know at that point that this statement was untrue.[9]

Delphi failed to establish that good cause – namely, circumstances beyond

Delphi's control preventing it from serving the Complaint on Sumitomo within the 120-

---

[9] In support of the First Extension Motion, Delphi cited *In re Ames Department Stores, Inc.*, No. 01-42217 (REG) (Bankr. S.D.N.Y. Feb. 3, 2004), implying that the court in that case extended the time for service of process under Rule 4(m) under circumstances similar to the instant case.  That implication is completely unfounded.  In *Ames*, the complaints for which plaintiff sought extension of time to serve the summonses had been publicly filed, the existence of the complaints had not been concealed from the defendants, and the motion requesting the extension specifically identified each adversary proceeding by the name of the defendant, the adversary proceeding number, the date on which the complaint had been filed, and the amount plaintiff sought to recover in the complaint.  Unlike the situation that exists in the instant case, the *Ames* plaintiff provided specific and adequate notice to the defendants that enabled them to choose whether to object to the extension of time because these defendants were specifically identified in the motion.

Further, in support of the Extension Motions, Delphi cited *Bank of Cape Verde v. Bronson*, 167 F.R.D. 370 (S.D.N.Y. 1996), for the proposition that the "likely" future dismissal of the Sealed Adversary Proceedings constituted "good cause" under Rule 4(m).  However, the situation that existed in *Bank of Cape Verde* is not remotely similar to the situation in the instant case.  In *Bank of Cape Verde*, the parties were engaged in settlement negotiations relating to the claims raised in the lawsuit and, although not all defendants had been served, all of the parties were fully aware of the pendency of the lawsuit.  Sumitomo was not, and could not have been, in settlement negotiations relating to the Adversary Proceeding because Sumitomo did not know that the Adversary Proceeding existed.

day period required under Rule 4(m) – ever existed.  For this reason, this Court should

vacate the Extension Orders.  *McCrae v. KLLM, LLC,* 89 Fed. Appx. at 363.

### B.    Discretionary Extension Was Not Warranted

In the absence of good cause, the Court could exercise its discretion to extend

the time for service only upon the consideration of four factors:

> (1) whether the statute of limitations would bar the refiled
> action; (2) whether the defendant had actual notice of the
> claims asserted in the complaint; (3) whether the defendant
> had attempted to conceal the defect in service; and (4)
> whether the defendant would be prejudiced by the granting
> of plaintiff's request for relief from the provision.

*Eastern Refractories*, 187 F.R.D. at 506.  The court's discretion is not unlimited and the

court must weigh these factors before granting the requested extension.  *Efaw v.

Williams*, 473 F.3d 1038 (9th Cir. 2007).

The expiration of the statute of limitations alone is not enough for a court to grant

a discretionary extension.  The very purpose of a statute of limitations is to prevent the

type of outrageous conduct that Delphi has perpetrated here.  *Order of R. Telegraphers

v. Railway Express Agency, Inc.,* 321 U.S. 342, 348-349 (1944); *American Pipe &

Construction Co. v. Utah*, 414 U.S. 538, 561 (1974); *In re Worldcom Securities

Litigation*, 496 F.3d 245, 253 (2d Cir.2007).  Although the expiration of the statute of

limitations may be a factor in considering whether to grant an discretionary extension,

Rule 4(m) "does not *require* the district court to extend time for service of process."  A

district court may "still dismiss the case, even after considering that the statute of

limitations has run and the refiling of an action is barred." *Chaing*, 331 Fed. Appx. at

116 (quoting *Petrucelli*, 46 F.3d at 1306 (3d Cir. 1995)).   The delay in effecting service

until after the statute of limitations has expired, in itself, results in actual prejudice to the defendant. *See Sealed Plaintiff v. Sealed Defendant*, 452 F.3d 415, 418 (5th Cir. 2006).

A delay such as Delphi's two and a half-year delay "is extremely prejudicial because it affects all the defendant's preparations." *Id.* As the Fifth Circuit has observed, such a delay means that a defendant "is not put on formal notice and allowed a full opportunity to discover and preserve relevant evidence when the matter is still relatively fresh and the evidence is intact and available." *Id.* (quoting *Veazey v. Young's Yacht Sale & Service*, 644 F.2d 475, 478 (5th Cir.1981)). Moreover, "if the statute has run, a potential defendant that has not been served is entitled to expect that it will no longer have to defend the claim. If service can be delayed indefinitely once the complaint is filed within the statutory period, these expectations are defeated and the statute of limitations no longer protects defendants from stale claims. *Sealed Plaintiff,* 452 F.3d at 418.

In this instance, Sumitomo was fundamentally prejudiced by the multiple extensions that allowed Delphi to wait two and a half years after the Complaint was filed and two and a half years after the statute of limitations had expired to serve the Summons and Complaint. As shown by *Sealed Plaintiff,* this delay caused prejudice to Sumitomo. During all that time, Sumitomo had no way of knowing that it had been sued by Delphi. As the court in *Sealed Plaintiff* emphasized, a defendant is "entitled to expect that it will no longer have to defend a claim" once the statute of limitations has expired. When Sumitomo was not served with the Complaint within the 120-day period after the statute of limitations expired, Sumitomo was entitled to expect that no claim

would be, or had been, filed against it.   Yet Delphi has now sued Sumitomo for very

large sums.  The prejudice to Sumitomo is beyond dispute:

- Sumitomo was entitled to consider its potential exposure to liability in making
  financial decisions.  Delphi's delay deprived Sumitomo of the opportunity.

- Because it was unaware of Delphi's claim, Sumitomo has made expenditures
  during the two and a half-year period since Dephi's claim expired that it may not
  have made had this potential liability been taken into account.

-  Sumitomo also made financial reportings to its owners, lenders and others that
  did not disclose this potential liability.

Furthermore, Sumitomo's ability to mount a defense to Delphi's claim has been

impeded by Delphi's delay.  Delphi has only one remaining employee – a fact readily

admitted by Delphi in the First Extension Motion.   Thus, some or all of Delphi

employees that could possibly have had knowledge relating to the allegedly preferential

transactions received by Sumitomo – transfers that occurred over four and a half years

ago – are no longer employed by Delphi.  As a result, Delphi will be unable to produce

these former employees for deposition.  Dephi's delay therefore shifted to Sumitomo the

burden of locating persons that might possess valuable information to Sumitomo's

defense.   "Evidence deteriorates or disappears, memories fade, and witnesses die or

move away" imposing a great burden, and constituting extreme prejudice on Sumitomo.

*Sealed Plaintiff*, 452 F.3d at 418.  The extreme prejudice to Sumitomo weighs heavily

against a discretionary extension under Rule 4(m).

It was Delphi's burden to establish entitlement to the extensions and this burden

was a heavy one due to the very substantial two and a half-year delay in service.

Because Delphi has failed to meet this burden the discretionary grant of extension

under Rule 4(m) is inappropriate.

III.    <u>**The Complaint Is Barred By Judicial Estoppel**</u>

Delphi should also be prohibited from pursuing preference actions against Sumitomo or any of the other Unidentified Defendants under the doctrine of judicial estoppel.  This doctrine "prevents a party from asserting a factual position in a legal proceeding that is contrary to a position previously taken by [that party] in a prior legal proceeding."  *In re Venture Mortgage Fund*, *L.P.*, 245 B.R. 460, 471 (Bankr.S.D.N.Y.200), aff'd, 282 F.3d 185 (2d. Cir. 2002) (quoting *Bates v. Long Island R.R. Co.*, 997 F.2d 1028, 1037 (2d Cir.1993)).  Judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase."  *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001).   "The doctrine does not depend upon prejudice to the party invoking it[,]" *Galerie Des Monnaies of Geneva, Ltd. v. Deutsche Bank, A.G.*, 55 B.R. 253, 260 (Bankr. S.D.N.Y. 1986) but is "invoked … to prevent the party from playing fast and loose with the courts, and to protect the essential integrity of the judicial process." *Rosenshein v. Kleban*, 918 F.Supp. 98, 104 (S.D.N.Y. 1996).

The Second Circuit has identified two factors that must be satisfied to invoke the doctrine of judicial estoppel:  (1) the party against whom estoppel is asserted took an inconsistent position in a prior proceeding; and (2) the first tribunal adopted the inconsistent position in some manner, such as by rendering a favorable judgment. *Venture Mortgage Fund*, 245 B.R. at 472.

Delphi repeatedly stated that: (1) future events would obviate the need to serve the Sealed Adversary Proceedings complaints, and (2) it intended to only pursue claims against the Laneko Defendants.   Delphi took this position in Exhibit 7.24 to the

Confirmed Plan, confirmed this position in the Second Extension Motion and reaffirmed this position in the Third Extension Motion.  The Court accepted Delphi's position that it intended to pursue only the claims against the Laneko Defendants when the Court entered orders granting the extensions sought in the Second and Third Extension Motions.

By serving the Sealed Adversary Proceedings Complaints (including the Complaint against Sumitomo), Delphi now takes a position exactly opposite of that which it took in prior motions; and which was adopted by the Court when it entered the Extension Orders.

Certainly, had the Court known that Delphi intended to pursue the Sealed Adversary Proceedings even though none of the Unidentified Defendants had been given notice of the sealed complaints nor given adequate notice of the Extension Motions, the Court would not have permitted Delphi's actions.  Indeed, when ruling on the Second and Third Extension Motions, the Court insisted upon assurances from Delphi that the Laneko Defendants – the only defendants specifically identified by Delphi in the Second and Third Extension Motions and the only defendants listed on Exhibit 7.24 to the Confirmed Plan – received particular notice of Delphi's motions.

When Delphi no longer needed its suppliers' (i.e., the Unidentified Defendants) cooperation in negotiating favorable credit terms (because portions of Delphi's business had been eliminated and those suppliers were no longer needed), Delphi completely reversed the position it had previously presented to the Court, revived the secret Sealed Adversary Proceedings it had hidden from those suppliers, and served complaints against some 170-odd defendants – not merely the "handful" of actions against the

Laneko Defendants that it had previously represented to the Court it would pursue. This Court should not now allow Delphi to "play fast and loose with the court" by pursuing claims that it had previously informed the Court that it had no intention of pursuing and to which it repeatedly affirmed were not subject to the First Extension Order. If judicial estoppel applies anywhere, it applies here.

Accordingly, the Court should exercise its discretion and apply the doctrine of judicial estoppel to prohibit Delphi from pursuing claims against Sumitomo, which Delphi repeatedly indicated it would not pursue.

## IV.    The Complaint Is Barred By Res Judicata

The Sealed Adversary Proceedings complaints should be barred by *res judicata* because Delphi did not adequately describe the preserved causes of action in the Modified Plan so as to preserve these actions for the benefit of the estate. "The confirmation of a bankruptcy plan of reorganization must be accorded res judicata effect … [and] prevents the subsequent assertion of any claim not preserved in the plan as required by § 1123(b)(3)." *In re I. Appel Corp.*, 300 B.R. 564, 568 (Bankr.S.D.N.Y. 2003).[10]  In short, because the claims were not adequately preserved, they cannot be pursued now.

Res judicata ordinarily bars actions that arose prior to confirmation unless such actions are expressly preserved in the confirmed plan. "Under a generally accepted exception to the res judicata doctrine, a litigant's claims are not precluded if the court in

---

[10] In *Appel Corp.*, the court found that a blanket reservation of avoidance claims was sufficient, because the plan was proposed and confirmed before the debtor had sufficient time to investigate and identify specific potential preference claims. By contrast, in the instant case, Delphi initiated the Sealed Adversary Proceedings almost two years before it filed Exhibit 7.19. The identities of the defendants in the Sealed Adversary Proceedings and the amount of the claims asserted against them was information known to Delphi at the time Exhibit 7.19 was filed. No reported case has held that a blanket reservation is sufficient when the details of the claim are known to the debtor.

an earlier action expressly reserves the litigant's right to bring those claims in a later action." *D&K Properties Crystal Lake v. Mutual Life Insurance Co. of New York*, 112 F.3d 257, 260 (7th Cir.1997).  To preserve a claim for a bankruptcy estate such that it may be pursued after confirmation of a plan, "[t]he identification [of the claim] must not only be express, but also the claim must be specific.  A blanket reservation that seeks to reserve all causes of action reserves nothing.  To hold otherwise would eviscerate the finality of a bankruptcy plan containing such a reservation, a result at odds with the very purpose of a confirmed bankruptcy plan." *D&K Properties*, 112 F.3d at 260, citing, *Micro-Time Management Systems, Inc. v. Allard & Fish, P.C.*, 983 F.2d 1067 (6th Cir.1993).

On Exhibit 7.24 to the Confirmed Plan, Delphi identified only the claims against the Laneko Defendants as causes of action it intended to preserve for the benefit of the bankruptcy estate.  Thus, Delphi did not preserve the Sealed Adversary Proceedings for the benefit of the bankruptcy estate under the provisions of the Confirmed Plan.  It was not until Delphi filed the Supplement To Plan Modification Approval Motion on July 2, 2009, and attached Exhibit 7.19 (which purportedly replaced Exhibit 7.24 to the Confirmed Plan) that Delphi first attempted to disclose that it intended to pursue preference avoidance actions.  But Exhibit 7.19 provided virtually no information relating to the preference avoidance actions – neither the identities of the Unidentified Defendants, nor the value of the claims that Delphi was asserting against those defendants, was disclosed.  The only information contained in Exhibit 7.19 was the adversary proceeding numbers of the Sealed Adversary Proceedings.  Because all pleadings relating to the Sealed Adversary Proceedings had been sealed, it was

28

impossible for any of Delphi's creditors to ascertain any information except the adversary proceeding numbers.  The only information provided, in other words, was meaningless.

The type of blanket reservation of causes of action that Delphi attempted in the Supplement to Plan Modification Approval Motion is insufficient to avoid the *res judicata* effect of the Confirmed Plan.  In *Browning v. Levy*, 283 F.3d 761, 764 (6th Cir.2002), the Sixth Circuit explained that "a blanket reservation was of little value to the bankruptcy court and the other parties to the bankruptcy proceeding because it did not enable the value of [the debtor's] claims to be taken into account in the disposition of the debtor's estate."  Therefore, the *Browning* court held that res judicata applied and prohibited the pursuit of actions that were neither specifically named nor described in a blanket reservation.  *Id.*

Because Delphi could have, and should have, specifically identified the Sealed Adversary Proceedings, by identifying the defendants in those actions and the amounts at issue, Delphi's pursuit of the Sealed Adversary Proceedings is barred by *res judicata*.

**V.    The Extension Orders Should Be Vacated Because The Sealed Adversary Proceedings Complaints Were Improperly Sealed**

The authority of a bankruptcy court to seal a judicial document is found only under 11 U.S.C. § 107.  Section 107 provides, in pertinent part:

> (a)   Except as provided in subsections (b) and (c) of this section and subject to section 112, a paper filed in a case under this title and the dockets of a bankruptcy court are public records and open to examination by an entity at reasonable times without charge.
>
> (b)   On request of a party in interest, the bankruptcy court shall, and on the bankruptcy court's own motion, the bankruptcy court may –

(1)  protect an entity with respect to a trade secret or confidential research, development, or commercial information; or

(2)  protect a person with respect to scandalous or defamatory matter contained in a paper filed in a case under this title.

Although Delphi sought sealing of the Complaint under § 107(b), Delphi failed to provide any justification for the Court to grant this request.  The Complaint does not contain a single piece of information that could possibly be considered "trade secret or confidential research, development, or commercial information."  The Second Circuit has expressly defined "commercial information" to be "information which would cause an unfair advantage to competitors by providing them information as to the commercial operations of the debtor."  *In re Orion Pictures Corp.*, 21 F.3d 24, 27 (2d Cir. 1994).  Sumitomo was not Delphi's competitor yet Sumitomo is the very entity from whom Delphi wanted to conceal the Complaint.  Nor would the standard, run-of-the-mill allegations contained in the Complaint – the same type of allegations contained in virtually all preference actions filed in every jurisdiction in the United States – constitute information relating to the "commercial operations of the debtor."  It appears that Delphi well knew this because it did not attempt to identify even one piece of confidential information contained in the Complaint.  Instead, Delphi filled the First Extension Motion with meaningless case law citations that stand for general propositions relating to protecting confidential information, but did not apply any of these propositions to the specific circumstances of the First Extension Motion or the Complaint.

Instead of identifying any confidential commercial information contained in the Complaint, Delphi requested that the Court exercise its discretion to seal the Complaint

30

to "preserve the status quo" and "avoid unnecessary harm to the Debtors and others that would be caused by filing these complaints publicly."  Oddly, the only "harm" that Delphi identified any where in the First Extension Motion is its inability to maintain an advantage in negotiations with suppliers, including Sumitomo, if those suppliers knew that the Sealed Adversary Proceedings had been filed against them.  Rather than preventing harm, the sealing of the Complaint *imposed harm on Sumitomo* and Delphi failed to provide the Court with appropriate justification of sealing the Complaint.

## VI.    The Complaint Is Barred By Laches

A complaint is barred by laches if: (1) the defendant lacked knowledge that the claim might be asserted against it; (2) plaintiff delayed in asserting the claim despite an opportunity to do so; and (3) defendant will be prejudiced if the claim is now allowed to go forward.  *In re Gucci,* 197 Fed.Appx. 58, 60 (2d Cir.2006); *Rapf v. Suffolk City*, 755 F.2d 282, 292 (2d Cir.1985).

As shown above, the Complaint was concealed from Sumitomo well beyond the expiration of the statute of limitations and Sumitomo had no knowledge that Delphi would assert a claim against it.  Further, despite having numerous opportunities to openly assert its claim, particularly after Delphi knew that its Confirmed Plan would not be consummated, Delphi intentionally delayed service of the Complaint for two and a half years after it was filed and continued to keep the Sealed Adversary Proceedings secret.  Finally, as thoroughly detailed above, Sumitomo has been severely prejudiced by Delphi's concealment of the Adversary Proceeding.  Accordingly, Delphi's claims are barred by the doctrine of laches and the Complaint should be dismissed.

## CONCLUSION

As set forth above, some or all of the Extension Orders should be vacated.  Once these orders are vacated, the Court should dismiss the Complaint against Sumitomo because it is barred by the two-year statute of limitations provided under Section 546(a). In other words, once the Extension Orders are vacated, the service extensions contained therein will correspondingly be eliminated.  As a result, the Complaint was not served within the 120-day period allowed by Rule 4(m) and the complaint must be dismissed.  *Efaw v. Williams*, 473 F.3d at 1040 (holding that it is an abuse of discretion for a court to deny a motion for dismissal that is based on plaintiff's failure to comply with the service requirements of Rule 4).

Furthermore, because the statute of limitations has expired, the Complaint is barred from re-filing.  While this may seem to be a harsh result, it is a result of Delphi's own gamesmanship.  Delphi made a strategic decision to keep the Sealed Adversary Proceedings from Sumitomo and the other Unidentified Defendants in order to gain an advantage in negotiating favorable contract terms, all the while representing to this Court that the Unidentified Defendants would not be prejudiced because the Sealed Adversary Proceedings would be dismissed.  Delphi must now live with the consequences of its strategic decisions.  The Complaint against Sumitomo must be dismissed.

Respectfully submitted,

DICKINSON WRIGHT PLLC

By: /s/ Dawn R. Copley
James A. Plemmons (*pro hac vice*)
Dawn R. Copley (*pro hac vice*)
500 Woodward Avenue, Suite 4000
Detroit, Michigan  48226
(313) 223-3500
Attorneys for Sumitomo Wiring Systems
(U.S.A.), Inc. and Sumitomo Electric
Wiring Systems, Inc.

Dated:  May 14, 2010

DETROIT 22441-59 1158321