# EXHIBIT A

1

1

2      UNITED STATES BANKRUPTCY COURT

3      SOUTHERN DISTRICT OF NEW YORK

4      Case No. 05-44481

5      - - - - - - - - - - - - - - - - - - - -x

6      In the Matter of:

7

8      DELPHI CORPORATION,

9

10             Debtor.

11

12     - - - - - - - - - - - - - - - - - - - -x

13

14                    United States Bankruptcy Court

15                    One Bowling Green

16                    New York, New York

17

18                    March 19, 2008

19                    10:09 AM

20

21     B E F O R E:

22     HON. ROBERT D. DRAIN

23     U.S. BANKRUPTCY JUDGE

24

25

1

2    HEARING re Fourth Supplement to KECP Motion Seeking Authority

3    to Continue Short-Term At-Risk Performance Payment Program

4    ("AIP") For First Half of 2008

5

6    HEARING re Motion for Order Under 11 U.S.C. § 1121(D) Extending

7    Debtors' Exclusive Periods Within Which to File and Solicit

8    Acceptances of Reorganization Plan

9

10   HEARING re Motion Pursuant to Fed. R. Bankr. P. 7004(A) and

11   9006(B)(1) and Fed. R. Civ. P. 4(M) to Extend Deadline

12   with Preservation of Estate Claims Procedures Order

13

14   HEARING re Expedited Motion for Order Under 11 U.S.C. §§ 105(A)

15   And 365 And Fed. R. Bankr. P. 6006 (i) Establishing Procedures

16   for Assumption and Assignment of Certain Omitted Executory

17   Contracts And Unexpired Leases in Connection with Sale of

18   Debtors' Steering and Halfshaft Business and (ii) Authorizing

19   Recovery of Excess Discount Rights

20

21   HEARING re Debtors' Omnibus Objection to Claims for Post-

22   Petition Interest

23

24

25

3

1

2   HEARING re Debtors' Twenty-Sixth Omnibus Objection Pursuant to

3   11 U.S.C. § 502(B) and Fed. R. Bankr. P. 3007 to Certain (A)

4   Duplicate or Amended Claims, (B) Untimely Claims Not Reflected

5   on Debtors' Books and Records, (C) Untimely Claims, and (D)

6   Claims Subject to Modification and Modified Claim Asserting

7   Reclamation

8

9   HEARING re Debtor's Twenty Seventh Omnibus Objection Pursuant

10   to 11 U.S.C. § 502(B) and Fed. R. Bankr. P. 3007 to Certain

11   Claims to Implement Cure Payments and Modify General Unsecured

12   Claims by Amount of Cure Payments

13

14   HEARING re (A) Authorizing and Approving (i) Sale of Certain of

15   Debtors' Assets Comprising Substantially All of the Assets of

16   Steering and Halfshaft Business Free and Clear of Liens,

17   Claims, and Encumbrances, (ii) Assumption and Assignment of

18   Certain Executory Contracts and Unexpired Leases, and (iii)

19   Assumption of Certain Liabilities and (B) Authorizing and

20   Approving Transaction Facilitation Agreement

21

22

23

24

25

1

2    HEARING re Expedited Motion for Orders Under 11 U.S.C. §§ 363,

3    365, and 1146 and Fed. R. Bankr. P. .2002, 6004, 6006, and 9014

4    (A) (I) Approving Bidding Procedures, (ii) Granting Certain Bid

5    Protections, (iii) Approving Form and Manner of Sale Notices,

6    and (iv) Setting Sale Hearing Date and (B) Authorizing and

7    Approving (i) Sale of Debtors' Assets Primarily Used in

8    Debtors' Bearings Business Free and Clear of Liens, Claims, and

9    Encumbrances, (ii) Assumption and Assignment of Certain

10   Executory Contracts and Unexpired Leases, and (iii) Assumption

11   of Certain Liabilities

12

13   HEARING re Expedited Motion for Orders Under 11 U.S.C. §§ 363

14   and 1146 and Fed. R. Bankr. P. 2002, 6004, and 9014 (A) (i)

15   Approving Bidding Procedures, (ii) Granting Certain Bid

16   Protections, (iii) Approving Form and Manner of Sale Notices,

17   and (Iv) Setting Sale Hearing Date and (B) Authorizing and

18   Approving (I) Sale By Delphi Automotive Systems LLC of Certain

19   Machinery, Equipment, and Inventory Primarily Used in DAS LLC's

20   Kettering Damper Business Free and Clear of Liens and (ii)

21   Entry into Lease Agreement in Connection therewith

22

23

24

25   Transcribed by:  Lisa Bar-Leib

5

1

2    A P P E A R A N C E S :

3    SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP

4            Attorneys for Debtor

5            333 West Wacker Drive

6            Chicago, IL 60606

7

8    BY:    JOHN WM. BUTLER, JR.

9

10    SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP

11            Attorneys for Debtor

12            Four Times Square

13            New York, NY 10036

14

15    BY:    KAYALYN A. MARAFIOTI, ESQ.

16

17    LATHAM & WATKINS LLP

18            Attorneys for Official Committee of Unsecured Creditors

19            53rd at Third

20            885 Third Avenue

21            New York, NY 10022

22

23    BY:    MICHAEL RIELA, ESQ.

24

25

6

```
 1

 2   FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP

 3        Attorneys for Official Committee of Equity Noteholders

 4        One New York Plaza

 5        New York, NY 10004

 6

 7   BY:   JENNIFER L. RODBURG, ESQ.

 8

 9   MAYER BROWN LLP

10        Attorneys for Tenneco Inc.

11        1675 Broadway

12        New York, NY 10019

13

14   BY:   MICHELLE R. MANHA, ESQ.

15

16   KENNEDY, JENNIK & MURRAY, P.C.

17        Attorneys for IUE-CWA

18        113 University Place

19        New York, NY 10003

20

21   BY:   THOMAS M. KENNEDY, ESQ.

22

23

24

25
```

```
 1

 2   KIRKLAND & ELLIS LLP

 3        Attorneys for Platinum Equity LLC

 4        Citigroup Center

 5        153 East 53rd Street

 6        New York, NY 10022

 7

 8   BY:   MICHAEL A. COHEN, ESQ.

 9

10   MCDERMOTT WILL & EMERY

11        Attorneys for The Timken Company

12        340 Madison Avenue

13        New York, NY 10173

14

15   BY:   JAMES M. SULLIVAN, ESQ.

16

17

18

19

20

21

22

23

24

25
```

8

1                P R O C E E D I N G S

2            THE COURT:  Please be seated.  Okay.  Delphi

3    Corporation.

4            MR. BUTLER:  Your Honor, good morning.  Jack Butler

5    and Kayalyn Marafioti from Skadden here on behalf of Delphi

6    Corporation for Delphi's twenty-ninth omnibus hearing.  We

7    filed an agenda, Your Honor.  We propose to take the matters in

8    the order on the agenda.

9            THE COURT:  Okay.

10           MR. BUTLER:  Your Honor, the first matter on the

11   agenda, agenda item number 1, is the fourth supplement in

12   connection with the AIP for the first half of 2008 found at

13   docket number 12920.

14           Your Honor, unlike prior AIP hearings, this hearing

15   is unopposed.  We have resolved matters with the creditors'

16   committee and a concern expressed by the UAW prior to the

17   commencement of this hearing.  I'll describe those in a moment.

18           This, as I indicated, was filed at document number

19   12920.  It is a supplement to an earlier KECP motion.  It deals

20   with the AIP for the first half of 2009.  Under the Court's

21   supplemental order that was entered at docket number 10428 in

22   connection with the third supplemental AIP, Your Honor actually

23   ruled in that order that so long as we had a confirmation order

24   that was entered in prior to February 29, 2008, we were not

25   required to come to court for this hearing.  Given what I think

05-44481-rdd   Doc 20096-1   Filed 05/14/10   Entered 05/14/10 15:21:31   Exhibit
A-March 29   2008 Hearing Transcript   Pg 10 of 62

9

1   are rather sort of extraordinary circumstances in the markets

2   and otherwise and the steps we're making, we really believed

3   that while we were well within the debtors' rights under the

4   order, that the spirit of working with our committees on these

5   issues really suggested that we should file this motion and in

6   an abundance of transparency.  But this order does have a

7   series of provisions in it, which I'll go through, which have

8   not been in prior orders which have been negotiated with the

9   creditors' committee and in one case with the UAW to deal with

10  various contingencies.

11          And before moving forward with that, I think I will

12  just say -- make one statement generally about dates.  We

13  are -- there are a number of motions that are before Your Honor

14  today, I think all of them unopposed, that deal with various

15  contingency dates.  Some dates refer to what happens on or

16  before May 31st.  Other dates refer to what might happen on or

17  before August 15th if there's no emergence.  Now the reason why

18  I say it at the outset of this record, these are contingencies

19  that have been worked out with the statutory committees that do

20  not, in any way, reflect the debtors' or the committee's or

21  anyone else's view of the emergence date in these cases.  We

22  actually are working twenty-four/seven to close as soon as

23  practicably and emerge from Chapter 11.  We are targeted

24  towards an April 4, 2008 closing.  We have made substantial

25  progress on our exit financing.  And when the syndication of

05-44481-rdd   Doc 20096-1   Filed 05/14/10   Entered 05/14/10 15:21:31   Exhibit
A-March 29   2008 Hearing Transcript   Pg 11 of 62

10

1    that is completed, we will be making further announcements

2    about that.  And I simply want to say, as we go on this record

3    and talk about procedural matters which the debtors as

4    fiduciaries are obligated to bring before the Court on a

5    variety of different issues, that that should not be

6    interpreted in anything other than what it is, which is the

7    debtors fulfilling what we believe to be our fiduciary

8    responsibilities and having thought about these issues with our

9    statutory committees.

10            THE COURT:  Right.  You're just being careful.

11            MR. BUTLER:  Just being careful.  And so in

12   connection with the AIP that we have for the first half of

13   2008, there are a couple of provisions in the proposed order,

14   the amended order, which I want to cover with you.  And then I

15   want to briefly proffer Mr. Sheehan in connection with how the

16   targets in this particular matter were calculated.  Because

17   this is not a contested hearing, we did not submit declarations

18   by all the various parties including the chair of our

19   compensation committee.

20            The two provisions I wanted to focus on, first, the

21   creditors' committee adjustment authority.  There is an

22   opportunity here for the creditors' committee to analyze the

23   debtors' performance for the first half if the debtors do not

24   emerge from Chapter 11 on or before August 15th, 2008.  And

25   they have the opportunity to look at how we performed and any

05-44481-rdd   Doc 20096-1   Filed 05/14/10   Entered 05/14/10 15:21:31   Exhibit
A-March 29   2008 Hearing Transcript   Pg 12 of 62

11

1    adjustments we made to EBITDAR performance relating to the

2    debtors' agreements with our labor unions and General Motors

3    Corporation, the timing of emergence from Chapter 11 or other

4    runoff adjustments.  This is because, Your Honor, where all

5    this is based, as Mr. Sheehan's proffer will indicate, is based

6    on the business plan that Your Honor found feasible in

7    connection with the confirmation hearing which assumed an

8    emergence date which has passed.  And as we move into 2008, we

9    have to make adjustments for the fact that, you know, we

10   haven't eliminated OPEB; we haven't done different things.

11   There are still -- we haven't completed the transactions under

12   either MOUs, the labor MOUs, or under the plan.  And therefore,

13   we have to account for those and think about them.  A fresh

14   start accounting is going to happen in a different place.  A

15   variety of different things that were assumed aren't going to

16   happen quite on the day that they were assumed.  So that's

17   necessitated making adjustments.  The committee wants the

18   opportunity, if we are still in Chapter 11 on August 15th,

19   prior to payments under this plan to look at all the

20   adjustments that were made relating to GM and labor that were

21   variances.  Those are the variances now from what was in the

22   plan.  That's what they look at, are the variances.  And any

23   adjustments we made, other adjustments we made in connection

24   with emergence.  And there's a chart that's attached to the

25   order, the kinds of things that would be examined.  And if they

05-44481-rdd   Doc 20096-1   Filed 05/14/10   Entered 05/14/10 15:21:31   Exhibit
A-March 29   2008 Hearing Transcript   Pg 13 of 62

12

1   have a reasonable disagreement with us about we calculated

2   those, the order provides that the committee and the debtors

3   will sit down and use good faith efforts to resolve those

4   issues.  And if they can't be resolved, the committee would

5   have the ability to adjust EBITDAR performance for purposes of

6   calculating the AIP by up to 150 million dollars.  But unlike

7   the last AIP period, its' not a discretionary 150.  The

8   adjustments have to be related to the disagreements that they

9   had.  So if they point to a particular -- you know, you

10  shouldn't have taken this thirty million dollar adjustment.  We

11  can't resolve it.  If they choose to make an adjustment, it

12  would be up to the thirty million, for example.  They would

13  have the ability to do that.  And, like the prior AIPs, those

14  adjustments cannot be used to decrease EBITDAR performance

15  below the EBITDAR target.  That mechanism is described in some

16  detail in connection with the plan -- with the proposed order.

17          There are two other elements in the proposed order

18  that are different from prior orders.  One, there is a

19  provision that if, in fact, during the period before the time

20  AIP is paid -- again, I think, tying it to August 15th, 2008 --

21  the company emerges from Chapter 11, then the post-emergence

22  board, which will have been installed pursuant to Your Honor's

23  confirmed plan, they can have the ability to look back and make

24  whatever adjustments they believe are appropriate at that time.

25  So to the extent that we emerge and the new board of directors,

05-44481-rdd    Doc 20096-1    Filed 05/14/10    Entered 05/14/10 15:21:31    Exhibit
A-March 29    2008 Hearing Transcript    Pg 14 of 62

13

1     new compensation committee, looks back, decides to make

2     adjustments in order to -- that they believe are in the best

3     interest of the company at that time, they can do that.

4     They're not bound by this order and they can do it

5     retroactively.  And that can go any number of ways.  They can

6     change some of the criteria that may be disadvantageous to

7     management.  They in fact can decide that to maintain the

8     incentive purposes of their plan, they want to make other

9     adjustments.  All of them are supposed to be centered around

10    what they believe -- what that board believes and the

11    compensation committee of that board believes would maintain

12    the incentive nature of the program.

13            There is then a third element here which is if the

14    debtors do not emerge from Chapter 11 between -- by August 15th

15    and the current compensation committee determines that it's in

16    Delphi's best interest to make further adjustments to the AIP,

17    that we will review those adjustments with the creditors'

18    committee and if they don't object, they can be implemented at

19    that time.  This is an opportunity for the company and the

20    belief that if the company is not able to emerge over the next

21    six months and if there are events and circumstances that, for

22    example by illustration, would suggest that the company might

23    off the cliff of the compensation -- this is a cliff program

24    or, you know, a dollar less than the target means you get paid

25    nothing -- that under those circumstances, given what's going

05-44481-rdd   Doc 20096-1   Filed 05/14/10   Entered 05/14/10 15:21:31   Exhibit
A-March 29   2008 Hearing Transcript   Pg 15 of 62

14

1   on in the economy and the industry, that we would have the

2   opportunity to go to the committee after our comp committee

3   makes suggestions to go to the committee and the committee

4   doesn't object to it to implement those suggestions.

5         In reviewing that with the UAW, they thought it was

6   important that there not be, if you will, sort of unmitigated

7   authority to be able to do that.  And we've agreed that in

8   those circumstances, the maximum amount that could be used to

9   pay AIP would be a pool of money that would be not more than

10  125 percent of the aggregate target opportunities Your Honor is

11  approving today.

12        So Your Honor is -- the estimate in the motion is,

13  and these are approximate numbers, those opportunities are 21.2

14  million.  That would mean that the pool that could be paid

15  under those circumstances if you had those adjustments couldn't

16  be more than 25.5 million or so.  Those are approximate

17  numbers.  So you couldn't have a situation where in those

18  extraordinary circumstances that the company could come in and

19  with the committee arrange for 175 percent payout or a 200

20  percent payout.  That's not what the spirit of the program is.

21  But it was intended to say that if the committee as a co-

22  fiduciary agreed with the compensation committee that there

23  ought to be an adjustment made -- I'll give an example.  With

24  the American Axle strike that's going on right now which is

25  shutting down the industry --

05-44481-rdd    Doc 20096-1    Filed 05/14/10    Entered 05/14/10 15:21:31    Exhibit
A-March 29    2008 Hearing Transcript    Pg 16 of 62

15

1          THE COURT:  So -- let me make sure I understand.  The

2     adjustment is based upon the lower opportunity, not the maximum

3     opportunity?

4          MR. BUTLER:  Correct.  It's based on target.

5          THE COURT:  Okay.

6          MR. BUTLER:  And the pool that you could use can't

7     exceed more than 125 percent of the lower target pool.

8          THE COURT:  Okay.

9          MR. BUTLER:  So that right now I think it indicates

10    that there is -- right now I think we say the maximum that

11    could be paid would be close to -- between thirty-eight and

12    forty million dollars under the program we're asking you to

13    approve today.  If those adjustments were actually implemented

14    under paragraph 9, the maximum pool would be around twenty-five

15    million dollars.

16         THE COURT:  Okay.

17         MR. BUTLER:  It would be less than this program.  And

18    again, it's intended to try to address exigencies of non-

19    emergence.  In fact, that's where the company is at.  So those

20    three mechanics are in this AIP that are different than what

21    is -- than had been discussed in prior AIPs.

22         Your Honor, I'd also like to briefly proffer Mr.

23    Sheehan in connection with how these particular targets were

24    calculated as well.  Because this is also different, this AIP,

25    because we actually have a confirmed plan and a business plan

05-44481-rdd   Doc 20096-1   Filed 05/14/10   Entered 05/14/10 15:21:31   Exhibit
A-March 29   2008 Hearing Transcript   Pg 17 of 62

16

1    that was submitted as Appendix C to the disclosure statement.

2    And we want the Court and the record to indicate how these fees

3    were calculated.

4         So if Mr. Sheehan were called to testify, he would

5    testify as follows:  that the financial targets for the first

6    half of 2008 are, in his opinion, reasonable and appropriate

7    that consistent with prior periods, Delphi's corporate level

8    EBITDAR target was not developed specifically for compensation

9    purposes but rather was derived from Delphi's business plan

10   that was attached to the debtors' first amended disclosure

11   statement that was approved by this Court as Appendix C to that

12   disclosure statement.  In setting the EBITDAR target for the

13   first half of 2008, the debtors made adjustments based on the

14   addition of earnings forecasted for the steering division that

15   were not included in the Appendix C because the Appendix C

16   assumed that the steering business would be sold as of December

17   31, 2007.  Second, a change in accounting treatment with

18   respect to the gain or loss on the debtors' sale of the

19   steering business; and third, the debtors' current expectations

20   regarding the timing of their earnings in 2008.

21        Mr. Sheehan would testify that the Appendix C

22   included the business plan on an annualized basis.  And in

23   connection with preparing the AIP targets, the debtors reviewed

24   with the creditors' committee the first half/second half

25   allocation of those earnings.

05-44481-rdd   Doc 20096-1   Filed 05/14/10   Entered 05/14/10 15:21:31   Exhibit
A-March 29   2008 Hearing Transcript   Pg 18 of 62

17

1        Mr. Sheehan would also testify that at the division

2    level, the debtors' OBITDAR targets were derived from the

3    division's operating income under the business plan for the

4    first half of 2008.  And as for the corporate level EBITDAR

5    target, Mr. Sheehan would testify that the OBITDAR targets were

6    not the result of a special process related to the AIP but were

7    rather drawn from the same business plan used by the debtors

8    and managed in their day-to-day operations of the business.

9        Mr. Sheehan would testify the overall cost of this

10   program is, in the debtors' view, reasonable in the context of

11   the debtors' assets, liabilities and earning potential.  He

12   would testify the aggregate target opportunities available

13   under the AIP are approximately 21.2 million.  That would be at

14   a hundred percent of meeting the target.  This represents less

15   than twenty-five basis points of the debtors' total assets as

16   of December 31, 2007 and less than one basis point of the

17   debtors' total -- actually, one-tenth of one basis point of the

18   debtors' total liabilities of twenty-three billion dollars as

19   of that date.

20       Mr. Sheehan would testify with respect to potential

21   earnings.  The aggregate target opportunity of approximately

22   21.2 million to approximately 2.4 percent Delphi's corporate

23   level EBITDAR target of 87.17 million dollars for the first six

24   months of the year and the aggregate maximum opportunity, if

25   there are no adjustments under paragraph 9 of the order, would

05-44481-rdd   Doc 20096-1   Filed 05/14/10   Entered 05/14/10 15:21:31   Exhibit
A-March 29   2008 Hearing Transcript   Pg 19 of 62

18

1    be approximately 39.1 million, which is approximately three

2    percent of the what would be an additional 1.3 billion in

3    EBITDAR associated with that maximum opportunity because,

4    obviously, there would be increased earnings for the company.

5           Your Honor, that would be the sum and substance of

6    Mr. Sheehan's testimony.

7           THE COURT:  Okay.  Does anyone want to cross-examine

8    Mr. Sheehan?  All right.  So am I right then that the only

9    adjustments to the business plan figures were the ones that you

10   described?

11          MR. BUTLER:  Yes, Your Honor.

12          THE COURT:  And then my only other question was and I

13   did not go back and look at the plan document on this.  This

14   six-month proposal, does it -- is it within -- or within the

15   contemplation of the compensation arrangements for the

16   executives that were provided for in connection with the plan?

17          MR. BUTLER:  Yes, Your Honor.  There was a plan --

18   under 7.8 of the plan, there was an STP program for a short-

19   term program and this would be the first half of that program.

20          THE COURT:  Okay.  And this is consistent with that?

21          MR. BUTLER:  Yes.

22          THE COURT:  That it had been previously discussed

23   with the investors and the other --

24          MR. BUTLER:  Yes.  It's consistent.  The difference

25   would be, I think, post-emergence perspective, the metrics that

05-44481-rdd   Doc 20096-1   Filed 05/14/10   Entered 05/14/10 15:21:31   Exhibit
A-March 29   2008 Hearing Transcript   Pg 20 of 62

19

1    would be likely used by the compensation committee -- you may

2    recall under the program that was adopted, the compensation

3    committee of the board of directors which set the actual

4    metrics, the framework of the system was designed, the targets

5    and all of that and how it worked.  But the metrics would be

6    used.  The metrics were not specified in 7.8 of the plan.  And,

7    frankly, had the company been able to emerge prior to March

8    31st on that time, that compensation committee could have made

9    those decisions under the plan.  But the plan requires you make

10   those decisions at some point before the period's over --

11          THE COURT:  Right.

12          MR. BUTLER:  -- and that's why we filed the motion.

13   So the metrics we've chosen to use here are the same metrics

14   we've used throughout the Chapter 11 case.

15          THE COURT:  So it's certainly consistent with what

16   was contemplated except for the entity that would be making the

17   ultimate decision?

18          MR. BUTLER:  Yes, Your Honor.

19          THE COURT:  Okay.  All right.  Does anyone have

20   anything further to say on this motion?  Okay.  I've reviewed

21   the motion as well as the revised order that reflected the

22   agreements that Mr. Butler outlined with the creditors'

23   committee and the UAW.  And in light of that review and there

24   being no objections, I'll approve the motion.

25          MR. BUTLER:  Thank you, Your Honor.  Your Honor, the

05-44481-rdd   Doc 20096-1   Filed 05/14/10   Entered 05/14/10 15:21:31   Exhibit
A-March 29   2008 Hearing Transcript   Pg 21 of 62

20

1    next matter on the docket -- the agenda is agenda item number

2    2.  This is the debtors' motion to further extend exclusivity.

3    It is at docket number 12921 and the motion is unopposed.

4            By this motion, Your Honor, as a precautionary

5    measure, the debtors are requesting a two-month extension of

6    the exclusivity periods asking the Court to extend the

7    exclusive time to file the plan of reorganization through and

8    including May 31, 2008 and the exclusive time by which to

9    solicit acceptances of the plan through and including July 31,

10   2008.

11           As we've indicated to Your Honor on prior records

12   that previewed the filing of this motion, the debtors have done

13   this as a precautionary measure only.  We have a plan of

14   reorganization that has been prosecuted and confirmed -- that

15   achieved confirmation with the support of eighty-one percent of

16   our voting creditors and seventy-eight percent of our voting

17   shareholders.  And we are continuing to pursue the consummation

18   of that plan.

19           We also recognize under Section 1129(c) of the

20   Bankruptcy Code that as a technical matter, the bankruptcy

21   court can only confirm one plan of reorganization and -- so

22   this is really a precautionary measure.  But in reviewing this

23   and reviewing the risks to the estate of having there be any

24   lack of clarity about exclusivity, in the event that the

25   current plan is not consummated, the debtors believed it was

05-44481-rdd   Doc 20096-1   Filed 05/14/10   Entered 05/14/10 15:21:31   Exhibit
A-March 29   2008 Hearing Transcript   Pg 22 of 62

21

1    prudent to file this motion.  As I indicated, it's been

2    reviewed with our statutory committees and with other

3    stakeholders.  No objections have been filed.

4          THE COURT:  Okay.  Does anyone want to say anything

5    on this motion?  All right.  I've reviewed it and the motion

6    clearly sets forth cause for, as you said, a precautionary

7    extension of exclusivity so I'll grant that.

8          MR. BUTLER:  Thank you, Your Honor.  Your Honor,

9    matter number 3 on the agenda is our motion to extend the Rule

10   4(m) time for services of summonses relating to avoidance

11   actions that were filed under the preservation of the estate

12   claims procedures order.  This motion is filed at docket number

13   12922 and this motion is also unopposed.

14          Essentially, Your Honor, what we're asking you to do

15   is to extend the time for an additional sixty days for

16   summonses to be served in connection to serve a complete

17   process in connection with all of the individual adversary

18   complaints that were filed under the estate claims procedures

19   order.  And you previously had granted us an extension through

20   March 31, 2008 and that was slightly less than sixty days

21   beyond the 120-day deadline set forth in Federal Civil

22   Procedure 4(m).  And that rule does provide -- in the case law

23   interpreting it, it does provide the opportunity for the

24   plaintiffs to come in and establish cause with the Court as to

25   an appropriate extension of those summonses.

1        Under case law here in the Southern District, this

2   Court has discretion to extend the 120-day service period and

3   it is a discretionary matter.  And it is particularly seen as

4   good cause when there is a reasonable belief that future events

5   would likely obviate the need to serve the complaint and

6   prosecute the actions.  That can be -- is obviously, Your

7   Honor, in this case, I think, self-evident.  Upon the

8   confirmation of a plan, I believe all but one, possibly two of

9   those matters, would end up not being pursued.  They would end

10  up being dismissed as of the effective date and would not be

11  pursued.  Similar relief of this nature has been granted in

12  other cases -- Chapter 11 cases in this district, including in

13  the Ames Department Store case in 2004 where a further

14  extension was granted at docket number 2524 in that case.

15       Your Honor, we believe that there is no reason to

16  move forward with the service of summons with respect to the

17  742 adversary proceedings that are under seal.  We would ask

18  Your Honor to give us an additional sixty days through May 31st

19  to address that issue.

20       THE COURT:  Okay.  Does anyone have anything to say

21  on this motion?  All right.  I had one question and you alluded

22  to this.  The plan did reserve or retain the ability to pursue

23  a very small number of avoidance actions.  And my question is

24  with regard to that small group, have the debtors determined,

25  assuming the plan goes effective, that those will definitely be

05-44481-rdd   Doc 20096-1   Filed 05/14/10   Entered 05/14/10 15:21:31   Exhibit
A-March 29   2008 Hearing Transcript   Pg 24 of 62

23

1    pursued or is that still something they're analyzing in light

2    of the cost of pursuing it versus the net gain of a victory --

3              MR. BUTLER:  I think, Your Honor --

4              THE COURT:  -- or potential victory?

5              MR. BUTLER:  -- those are still under analysis.  They

6    were retained because of the unique circumstances that were

7    pled in those particular proceedings.  And I don't think a

8    final decision has been made as to whether those would actually

9    be pursued.  But obviously, we did make -- we did do enough

10   analysis to decide that as opposed to the other 740 odd actions

11   that these should be retained for that purpose.

12             THE COURT:  Did those defendants get notice of the

13   motion?

14             MR. BUTLER:  Everyone received notice of the 4(m)

15   motion, I believe.  Let me make sure.  Is that -- I want to

16   just double check with my folks.  It went to the 2002 services,

17   I know for sure.  Just give us one second, Your Honor.

18             THE COURT:  Okay.

19             MR. BUTLER:  Your Honor, I'm almost certain that they

20   would have not gotten individualized notice unless they were on

21   the 2002 list.

22             THE COURT:  Okay.

23             MR. BUTLER:  And the reason for that is I'm not sure

24   they know about the existence of the pleadings.

25             THE COURT:  All right.  Well, I debated whether to

05-44481-rdd   Doc 20096-1   Filed 05/14/10   Entered 05/14/10 15:21:31   Exhibit
A-March 29   2008 Hearing Transcript   Pg 25 of 62

24

 1   have you settle the order on those -- that handful of people.

 2   I mean, normally, no one wants to have litigation be activated

 3   but I think the rationale potentially for them is a little

 4   different than the others.  So I think I'll -- particularly, if

 5   we're not sure whether they got the notice.

 6           MR. BUTLER:  Your Honor, I think -- let me just --

 7           THE COURT:  If they're on the 2002 list, you don't

 8   need to settle it.  If they weren't -- they weren't served with

 9   it, I'd like you to settle it as to the handful of people that

10   the plan at least contemplates would be pursued.

11           MR. BUTLER:  Right.

12           THE COURT:  With regard to the vast majority, all the

13   others, clearly there's a good basis for not activating that

14   litigation.  It would be moot upon consummation of the plan.

15           MR. BUTLER:  We'll do that, Your Honor.  And the

16   existence of those folks is obviously that that exhibit to the

17   plan is public.  So everyone knows what that retention is.

18   So --

19           THE COURT:  Right.

20           MR. BUTLER:  -- we will deal with that and we will

21   settle the order.  If they're not --

22           THE COURT:  You can do it five days notice.

23           MR. BUTLER:  Okay.  Thank you, Your Honor.

24           THE COURT:  Okay.  If they're not on the 2002 list.

25           MR. BUTLER:  Thanks -- thank you, Your Honor.  Your

05-44481-rdd   Doc 20096-1   Filed 05/14/10   Entered 05/14/10 15:21:31   Exhibit
A-March 29   2008 Hearing Transcript   Pg 26 of 62

25

1    Honor, the next matter on the agenda -- and I -- one of the

2    things just so the record is straight and I want to go back

3    briefly to item number 1 because I do want to have a record

4    supporting these things, we had previously made it known to the

5    Court and I believe the Court has considered the exhibits that

6    were part of that matter, 1 through 20.  I don't think I

7    actually moved them formally into the record.  So, as to item

8    number 1, the KECP motion , I would like to move the twenty

9    exhibits, which include various of the Court documents, the AIP

10   documents, the adjustment protocol and the other plans

11   including the plan Your Honor referred to in connection with

12   the confirmation hearing that were the basis of the KECP.

13            THE COURT:  Okay.

14            MR. BUTLER:  So I'd like to move Exhibits 1 to 20 in

15   for that matter.

16            THE COURT:  Those will be admitted.

17            MR. BUTLER:  Thank you, Your Honor.  Similarly, with

18   respect to item number 4, item number 4 on the agenda is our

19   omitted contracts assumption procedures motion.  This is at

20   docket number 13029.  And, Your Honor, this deals with -- there

21   are no objections, by the way, filed with respect to this

22   matter.

23            This is with respe -- this arises with respect to

24   approximately seventy-five contracts that were identified very

25   late in the process by the company that had not been previously

05-44481-rdd    Doc 20096-1    Filed 05/14/10    Entered 05/14/10 15:21:31    Exhibit
A-March 29    2008 Hearing Transcript    Pg 27 of 62

26

1    noticed in connection with the plan of reorganization or

2    previously noticed in connection with the steering sale.  And

3    the amount of potential cure with respect to these folks in the

4    aggregate is estimated by the company at something

5    substantially less than five million dollars.  And the -- but

6    obviously, as it relates to the opportunity to deal with cure,

7    while five million dollars may not be, you know, viewed as

8    material in the size of this case, as Your Honor has observed

9    before, even a million dollars is a lot of money and any cure

10   amount to a particular contract vendee may be, in their

11   circumstance, a lot of money.  And when we sorted through this,

12   we believed it was appropriate to establish procedures on how

13   we would address this matter.  And we served those proposed

14   procedures on each of the seventy-five parties and no one

15   objected to the procedures that we're trying to move forward.

16        We have -- we have a declaration from Mr. Sheehan

17   which has been submitted to the Court in connection with this

18   matter, which is Exhibit 1 to the evidentiary index.  There are

19   an additional five exhibits that were identified on the

20   exhibits list for this hearing.  Your Honor, I'd like to move

21   admission of those exhibits including Mr. Sheehan's declaration

22   in support of the motion.

23        THE COURT:  Okay.  No objection and I've reviewed

24   them so they're admitted.

25        MR. BUTLER:  And, Your Honor, I present Mr. Sheehan

05-44481-rdd   Doc 20096-1   Filed 05/14/10   Entered 05/14/10 15:21:31   Exhibit
A-March 29   2008 Hearing Transcript   Pg 28 of 62

27

1    for either cross-examination by anyone who wants to raise -- no

2    one filed an objection but if there are any questions Your

3    Honor may have about the cause for the entry of this order.

4            THE COURT:  Well, it's not a question as to the cause

5    'cause as I understand it, there's a potential purchase price

6    adjustment with this sale and these contracts are important to

7    the business.  So I'm assuming that this would be money well

8    spent 'cause it would affect ultimately the potential for a

9    purchase price adjustment --

10           MR. BUTLER:  That's exactly right, Your Honor.

11           THE COURT:  -- to happen. But my question is that

12   there was a -- the second aspect of the relief sought would

13   avoid a double recovery cure and discount rights?

14           MR. BUTLER:  Yes, Your Honor.

15           THE COURT:  And which made perfect sense.  But then I

16   looked at the order and the order said that the debtors can act

17   on their discretion on that.  And I just -- why wouldn't you

18   always prevent the double recovery?

19           MR. BUTLER:  No, I think we would prevent the double

20   recovery --

21           THE COURT:  Okay.

22           MR. BUTLER:  -- in all matters, Your Honor.  I think

23   the -- and just to say it, Your Honor, so this record is clear

24   'cause I've spent some time personally thinking about this, the

25   reality is, and I don't want the Court to not have the full

05-44481-rdd   Doc 20096-1   Filed 05/14/10   Entered 05/14/10 15:21:31   Exhibit
A-March 29   2008 Hearing Transcript   Pg 29 of 62

28

1   picture here, the reality is that there is -- the odds for a

2   double recovery here only exist to the extent that these

3   particular parties took the precautionary measure of filing a

4   proof of claim with respect to their executory contracts.   If

5   they didn't file a protective proof of claim early in the case,

6   they never would have gotten into the process for the rights

7   offering to begin with.   And that is a -- that's a defect that

8   I certainly regret but it is what it is.   I mean, the reality

9   is the company didn't identify these particular contracts.

10   They were not included in that process or in the sale process.

11   We want the Court to be clear on that point.   And what we --

12   what that means is that they are -- the default for these folks

13   is cash as opposed to the opportun --

14          THE COURT:   Well, that's not a bad default, though.

15          MR. BUTLER:   Right.   And so -- and we're --

16          THE COURT:   At least they get paid in full.

17          MR. BUTLER:   And I would just point out that that's

18   what 365 would require.   You know, thinking about it separately

19   quite apart from the plan process.

20          THE COURT:   Right.

21          MR. BUTLER:   But I just want Your Honor to be aware

22   of that so that it's not -- I'm not sure how much that

23   mechanism will actually be invoked in the first instance but we

24   did want to provide the safeguard of preventing against double

25   recoveries.

05-44481-rdd   Doc 20096-1   Filed 05/14/10   Entered 05/14/10 15:21:31   Exhibit
A-March 29   2008 Hearing Transcript   Pg 30 of 62

29

1          THE COURT:  Okay.  All right.  Again, the motion is

2     unopposed and based on my review of it, it seeks appropriate

3     relief.  So I'll grant it.

4          MR. BUTLER:  Thank you, Your Honor.  Your Honor,

5     matter number 5 on the agenda is the objection to the post-

6     petition interest rate notice at docket number 12833.  There

7     were at the time we -- under the plan, we distributed notices

8     actually pursuant to the solicitation procedures order to many

9     thousands of people dealing with Class C general unsecured

10    claimants informing them that they would receive post-petition

11    interest at the Michigan statutory rate as prescribed in the

12    plan unless they filed the instructions and a notice pursuing

13    the application of some other contractual rate.

14          We received some 1200 odd responses back to that

15    notice but at the end of the day, only fifty-five of those

16    disputed the application of the Michigan statutory rate.  Forty

17    of those are represented in two responses to our objections

18    that were filed, one by Liquidity Solutions at docket number

19    13094 and one by Riverside Claim, LLC at docket number 13097.

20    As a result, Your Honor, we actually could proceed today and

21    deal with fifteen with those for which no response was filed.

22    We're not going to do that, Your Honor, because -- rather we're

23    going to ask Your Honor to adjourn this to a date to be set

24    post-consummation because in our own careful review of our

25    disclosure statement and plan regarding these matters, there

05-44481-rdd   Doc 20096-1   Filed 05/14/10   Entered 05/14/10 15:21:31   Exhibit
A-March 29   2008 Hearing Transcript   Pg 31 of 62

30

1    was a description in the disclosure statement that would

2    indicate that these disputes as relates to post-petition

3    interest rate arguments, these contested matters would be dealt

4    with post-consummation.  Now the plan doesn't say that directly

5    and the solicitation procedures order doesn't say that

6    directly.  The disclosure statement does say that.  And I

7    believe that there is a reasonable opportunity for those

8    fifteen parties who didn't respond to this to be able to rely

9    on the procedures we had established.  There's no prejudice to

10   the estate that I can think of in trying to address those

11   fifteen today.  I think the majority of those fifteen, in

12   looking at them, actually, I think, are -- didn't file

13   responses because I think they've concluded that perhaps

14   there's nothing to contest.  We can resolve that on a one off

15   basis with each of them and we'll seek to do that.

16           But I think, Your Honor, that it is important unless

17   we otherwise have good cause or some reason to be able to

18   explain why circumstances have changed, I think that we, as a

19   debtor-in-possession, need to follow the procedures that we've

20   laid out to people.

21           THE COURT:  So as far as the relief you're seeking

22   today, it's simply an adjournment?

23           MR. BUTLER:  I think, Your Honor, all I would seek is

24   an adjournment.  The forty and the fifty-five objections, that

25   was already going to happen for --

05-44481-rdd   Doc 20096-1   Filed 05/14/10   Entered 05/14/10 15:21:31   Exhibit
A-March 29   2008 Hearing Transcript   Pg 32 of 62

31

1          THE COURT:  Okay.

2          MR. BUTLER:  That was with respect to Liquidity and

3   Riverside Claims.  I think just out of an abundance of caution

4   to give deference to the procedures that were described in the

5   disclosure statement that as to the remaining fifteen we should

6   do the same even though they didn't file a response.  We'll

7   deal with all of these at a hearing to be decided post-

8   consummation.  And we will notice all fifty-five of them as to

9   that hearing date once we establish it.  But in --

10          THE COURT:  So perhaps the omnibus date in May?

11          MR. BUTLER:  Yes, Your Honor.

12          THE COURT:  Okay.  That's fine.

13          MR. BUTLER:  Thank you.  And so we'll -- for

14   purposes, Your Honor, of this record then, we'll carry it to

15   May and deal with it at that point.

16          THE COURT:  Okay.

17          MR. BUTLER:  Thank you.  Item number 6 on the agenda,

18   Your Honor, is the debtors' twenty-sixth omnibus objection

19   filed at docket number 12686.  This is the first of two omnibus

20   objections.  We have the twenty-sixth and twenty-seventh for

21   hearing today.  They're set in separate objections because the

22   relief sought is different in the two and we wanted to clarify

23   what they were.

24          The twenty-sixth objection is our normal monthly

25   omnibus objection.  And I'm pleased to report we're getting to

05-44481-rdd   Doc 20096-1   Filed 05/14/10   Entered 05/14/10 15:21:31   Exhibit
A-March 29   2008 Hearing Transcript   Pg 33 of 62

32

1    the end of these normal objections and the fact that the normal

2    claims administration process is largely -- at least the

3    initial round of reviewing all these claims has been largely

4    completed.

5              This particular objection, at docket number 12686,

6    has thirty-eight proofs of claim on the objection.  And we

7    received ten timely filed docketed responses and one undocketed

8    response.  And those eleven responses cover seventeen proofs of

9    claim in the amount of approximately 24.2 million.  In

10   accordance with our prior custom, we will, Your Honor, adjourn

11   those seventeen claims with Your Honor's permission to the

12   claims track and we'll deal with those as we have under the

13   claims procedures order.  They'll be noticed for hearing by the

14   claims team as we work through those contested matters.

15             As it relates to today's relief, we're seeking relief

16   with respect to the uncontested portion of the objection.

17   Those cover twenty-one claims in the asserted liquidated claims

18   amount of about a million dollars.  We're seeking to expunge

19   twenty of them which have total claims of about 920,000

20   dollars.  And with respect to the one remaining claim, we're

21   seeking some relatively de minimis adjustments including

22   reducing the amount of that claim by a thousand dollars down to

23   78,000 dollars.  We've sent out particularized notice of this

24   hearing and if Your Honor grants relief, we will send out

25   particularized notice of the relief granted today.

05-44481-rdd   Doc 20096-1   Filed 05/14/10   Entered 05/14/10 15:21:31   Exhibit
A-March 29   2008 Hearing Transcript   Pg 34 of 62

33

1          THE COURT:  Okay.  Well, based on the omnibus

2    objection, the debtors have shifted the burden back on the

3    claimants and given the individualized notice.  And there being

4    no objection by those that you're seeking to deal with today,

5    I'll grant that objection.

6          MR. BUTLER:  Thank you.

7          THE COURT:  As a scheduling matter, I noticed that

8    Dayton, in their response, requested reconsideration of an

9    earlier order finding their -- another claim late.  They say

10   they didn't get notice of the bar date.  They don't give an

11   affidavit or anything but they just say that.  So I think in

12   your scheduling, you should probably assume that that matter

13   will get heard at the same time.

14         MR. BUTLER:  Yes, Your Honor.  Your Honor, the next

15   matter on the agenda then is matter number 7.  This is the

16   twenty-seventh omnibus objection.  And this we set out

17   separately because this is really dealing with the

18   reclassification of a portion of certain claims that pertain to

19   certain executory or unexpired leases that we are assuming

20   under the plan or under the sale of the steering business or

21   bearings business.  And therefore we're dealing with the cure

22   in a separate class as a priority claim.  And the reality of

23   this is we want -- we're just trying to get the mechanics right

24   in terms of our distribution of this.  We've set this out to

25   128 -- this debt was 128 claims thirty of which will be

05-44481-rdd    Doc 20096-1    Filed 05/14/10    Entered 05/14/10 15:21:31    Exhibit
A-March 29    2008 Hearing Transcript    Pg 35 of 62

34

1    satisfied in whole or in part by cures, seventy-two which will

2    be satisfied in whole or in part by cures but were modified

3    pursuant to a prior order and affirms prior omnibus claims

4    ruling.  We needed to deal with those.  And twenty-six of them

5    have asserted a liability for reclamation claim.  We've tried

6    to deal with those issues.  So there's 128 claims.  They assert

7    approximately 55.9 million dollars.  We propose modifications

8    to these claims.  And there -- I should say there are three

9    responses that have been filed covering eight proofs of claim.

10          Let me just address those briefly.  One of them was

11   filed by Carolina Forge Company, a medial forging company, at

12   docket number 12854.  It pertains to claim number 10703.  It's

13   been resolved between the parties and the claimants consented

14   to relief requested in this objection.  They've withdrawn their

15   objection at docket number 13113.

16          The other two claims, Your Honor, are claims that

17   deal with seven -- get the number right here.  Let's see.  It's

18   right -- that deal with, I believe, it's seven proofs of claim.

19   And we would adjourn those to the claims track.  I do want to

20   address one of those objections and that is the objection of

21   Liquidity Solutions, Inc. at docket number 13093.  And in that

22   objection, the principal objection for Liquidity Solutions is

23   that they should get the claim payment, the cure payment, as

24   opposed to the contract counterparty.

25          THE COURT:  I've already ruled on this.

05-44481-rdd   Doc 20096-1   Filed 05/14/10   Entered 05/14/10 15:21:31   Exhibit
A-March 29   2008 Hearing Transcript   Pg 36 of 62

35

1              MR. BUTLER:  Several times, Your Honor.

2              THE COURT:  Okay.

3              MR. BUTLER:  And I believe Liquidity Solutions was in

4    the court when those rulings -- and part of those contested

5    hearings.

6              While we're willing to put, as we have customarily

7    moved everything to a claims track, when we'll send notice of

8    this, we would like with Your Honor's permission to set that

9    particular objection for the next claims hearing which is now

10   April 2nd prior to the consummation of the plan because we'd

11   like to be able to get that issue resolved.  And so we would

12   not give notice under the claims procedures order but rather,

13   pursuant to Your Honor's concurrence today, we would give

14   notice to them after this hearing that that matter will be

15   heard at that April 2nd claims hearing.

16             THE COURT:  Okay.  You should give them a copy of my

17   earlier order.  I just -- maybe there's something more to their

18   response than that.  But that really seems frivolous to me.

19             MR. BUTLER:  Okay.  Thank you, Your Honor.  The

20   other -- but obviously, as we have before, the relief today

21   we're seeking only relates to totally uncontested matters.

22   That covers 121 claims.  If Your Honor grants the relief in

23   this order, there would be 30.8 million dollars reclassified

24   from unsecured to priority as of the effective of the plan

25   because of the cure payments we would be making.  And I should

05-44481-rdd   Doc 20096-1   Filed 05/14/10   Entered 05/14/10 15:21:31   Exhibit
A-March 29   2008 Hearing Transcript   Pg 37 of 62

36

1    say, Your Honor, when we talk about cure payments, even though

2    we change classification, for purposes of counting those claims

3    against the 1.45 billion dollar limitations under the plan, the

4    conditions of the effective date, we still count them against

5    the 1.45 billion because even though we're -- that's just

6    enough of weighing which was negotiated with the plan

7    investors.  And so by making these changes, I just want to be

8    clear on this record, this doesn't change how we score staying

9    below the 1.45 billion.

10           THE COURT:  Okay.  All right.  Does anyone have

11   anything to say on this motion?  All right.  Again, the motion

12   seeks relief only with regard to claims where there's been no

13   objection to the omnibus objection or there's one case been an

14   agreement.  I've reviewed the objection.  It sets forth a basis

15   in each case for the objection whether it's to avoid a

16   duplicate claim or otherwise.  And in light of there being no

17   objection to the relief sought today, I'll grant the omnibus

18   objection.

19           MR. BUTLER:  Thank you, Your Honor.  Your Honor,

20   matter number 8 today is a continuation of matters that were

21   originally taken up in connection with the steering sale motion

22   at docket number 11390.  Your Honor approved that sale at

23   docket number 12868.  And in connection with that approval

24   order, adjourned thirty-five objections that were relating to

25   assumption assignment or cure -- and essentially, from the

05-44481-rdd    Doc 20096-1    Filed 05/14/10    Entered 05/14/10 15:21:31    Exhibit
A-March 29    2008 Hearing Transcript    Pg 38 of 62

37

1    debtors' view, mostly cure, what the cure amounts would be and

2    how to deal with those.  Of the 130 -- or, excuse me.  Of the

3    thirty-five matters that were adjourned, I'm pleased to report,

4    Your Honor, that twenty-eight of those have been resolved.  And

5    I won't go through each of those on this record.  I would

6    simply note that in each case, there was either a filing made

7    on the record that withdrew the objection or there was a

8    stipulation that was entered that has been docketed.  And so as

9    to each of those twenty-seven matters, or twenty-seven

10   objections, there is evidence on the record on the docket of

11   how those were resolved.

12          There are three of those all dealing with Furco

13   Electric Company that may not yet be docketed.  I don't have

14   the docket numbers.  But we have written confirmation that

15   those have been resolved and those will be docketed shortly.

16          With respect to the other seven, there are -- and I

17   should indicate, by the way, in connection -- one comment.  In

18   connection with two of those objections filed by the Timken

19   Company and Timken U.S. Corp. at docket number 12532 and docket

20   number 12652, those were -- there were stipulations that were

21   filed at docket number 13162 that dealt with those.  We needed

22   to resolve a defined term in there and there will be an amended

23   stipulation.  But it's been agreed on by the parties and it's

24   been signed.  So there's nothing --

25          THE COURT:  Okay.

05-44481-rdd   Doc 20096-1   Filed 05/14/10   Entered 05/14/10 15:21:31   Exhibit
A-March 29   2008 Hearing Transcript   Pg 39 of 62

38

1           MR. BUTLER:  Just to let Your Honor be aware of that.

2           As to the other seven matters, what we're asking Your

3    Honor to do now is to grant the relief -- and I'll just briefly

4    indicate which ones those are -- to have those taken up at a

5    subsequent hearing.  Five of those would be dealt with at the

6    April 2nd claims hearing and two would move to the April 30th

7    hearing.

8           The two moving to the April 30th hearing are American

9    Aikoku, A-I-K-O-K-U, Alpha Inc. at docket number 12369 and

10   docket 12376.  And the following five matters would go -- would

11   be adjourned to the April 2nd claims hearing.  That would be

12   the du Pont claim at docket number 12464, the Freudenberg-Nok

13   General Partnership claim at docket number 12479, the Hydro

14   Aluminum North America, Inc. claim at docket number 12452, the

15   S&Z Tool & Die claim at docket number 12447.  And there's an

16   undocketed claim of S.A. Gebelot, G-E-B-E-L-O-T, Extrusion,

17   which also would go to the April 2nd hearing.  Several of those

18   folks had given us e-mail confirmation with respect to April

19   4th.  The April 4th hearing's been moved to April 2nd and we

20   notified them of that change in hearing date.

21          THE COURT:  Okay.  All right.  With regard to the

22   resolved ones, I guess that's all being done by separate

23   stipulations?  I mean, I've seen a number of them.

24          MR. BUTLER:  Right.

25          THE COURT:  So there's no order --

05-44481-rdd   Doc 20096-1   Filed 05/14/10   Entered 05/14/10 15:21:31   Exhibit
A-March 29   2008 Hearing Transcript   Pg 40 of 62

39

1              MR. BUTLER:  No.  There's nothing to be --

2              THE COURT:  No omnibus order.

3              MR. BUTLER:  There's no omnibus order to be dealt

4       with.

5              THE COURT:  Okay.  And as far as the seven that are

6       being adjourned --

7              MR. BUTLER:  Would Your Honor wait just one moment

8       please?  My colleague, Ms. Henry, reminds me we did submit an

9       order.  Your Honor, if you recall, the way we've dealt with

10      these sale orders recently in the last two or three is Your

11      Honor was more comfortable in excluding the findings in some of

12      the other matters of the sale order to the objections we

13      were -- we adjourned and dealt with at the prior hearings.  So

14      we did submit an order to Your Honor that actually as to the

15      matters that have been resolved applies.

16             THE COURT:  Oh, okay.

17             MR. BUTLER:  Brings them back into, if you will, the

18      provisions of the sale order.

19             THE COURT:  Okay.

20             MR. BUTLER:  And that has been submitted, Your Honor.

21             THE COURT:  All right.  And then as to the seven, I

22      just would ask you to the extent -- I'm assuming you're still

23      going to be negotiating with these folks.  But to the extent

24      you haven't resolved the matters a few days before the

25      scheduled hearing that you'll coordinate with them on

05-44481-rdd   Doc 20096-1   Filed 05/14/10   Entered 05/14/10 15:21:31   Exhibit
A-March 29   2008 Hearing Transcript   Pg 41 of 62

40

1  submitting either additional exhibits or papers so that I can

2  prepare for the hearing.

3          MR. BUTLER:  Yes, Your Honor.

4          THE COURT:  Okay.

5          MR. BUTLER:  We will do that.

6          THE COURT:  All right.  Okay.

7          MR. BUTLER:  So, Your Honor, just so the record --

8  the Court inclined then to enter the order that the --

9          THE COURT:  Oh, yes.

10          MR. BUTLER:  -- as it relates to the --

11          THE COURT:  Well, it's just implementing the

12  stipulation.

13          MR. BUTLER:  Correct.

14          THE COURT:  So that's fine.

15          MR. BUTLER:  And implementing the prior order of the

16  Court.

17          MR. BUTLER:  Right.  That's fine.

18          MR. BUTLER:  Thank you.  Your Honor, the next matter

19  before the Court today is matter number 9.  This is the bearing

20  sales motion at docket number 12104.  We're here today, Your

21  Honor, asking for approval of the sale of this business to

22  Kyklos Bearing International, Inc. which changed its name from

23  Kyklos, Inc. after the auction, Kyklos being spelled

24  K-Y-K-L-O-S.

25          Your Honor, we were before the Court in January

05-44481-rdd   Doc 20096-1   Filed 05/14/10   Entered 05/14/10 15:21:31   Exhibit
A-March 29   2008 Hearing Transcript   Pg 42 of 62

41

1    seeking approval of bidding procedures.  And on January 25th of

2    this year, Your Honor entered the bidding procedures which is

3    docketed at docket number 12355.  This -- the bidding

4    procedures order dealt with a stalking horse bid from ND

5    Acquisition which was an affiliate of Resilience Capital

6    Corporation.  And Your Honor may recall that the quantifiable

7    conduct -- or I should -- quantifiable value to Delphi of that

8    which we discussed at that hearing was 44.2 million dollars but

9    there was a twenty-six million dollar adjustment they could

10   take that would actually have brought it down to 18.2 million.

11   And there was not in that bid at that time a supply agreement

12   with respect to General Motors which was one of the things that

13   needed to be worked out in connection with the sale.

14        When we went through the auction, we ended up with a

15   successful bidder of Kyklos, as I described, which -- and the

16   creditors' committee participated with us in that auction.  And

17   General Motors was also involved.  There is a supply agreement

18   with General Motors in this transaction.  The contract is

19   similarly structured.  There is a 42.6 million dollar sales

20   price but there is a downward adjustment that could be made so

21   that the quantifiable value could be 18.7 million there.  The -

22   - and that is exclusive of -- or accounts for the breakup fee

23   at 1.5 million dollars.  So that quantifiable value is net of

24   any breakup fees that would be payable to the estate -- by the

25   estate in connection with this transaction.

05-44481-rdd   Doc 20096-1   Filed 05/14/10   Entered 05/14/10 15:21:31   Exhibit
A-March 29   2008 Hearing Transcript   Pg 43 of 62

42

1        I should point out to Your Honor also in connection

2    with this transaction that after the auction and in connection

3    with the auction, we also received, by the way, an alternate

4    bid from WNB Acquisition which is an affiliate of Wen -- I

5    think it's the Wen Sheng Company.  And that -- after the

6    auction was concluded and Kyklos was identified as the

7    successful bidder, the debtors did receive an unsolicited joint

8    alternative bid from ND Acquisition and WNB Acquisition.  So

9    the stalking horse bidder and alternative bidder got together,

10   submitted a proposed bid that would have provided as much as an

11   additional 2.8 million dollars to the estate because they would

12   have waived the breakup fee and paid the initial 1.3 million

13   dollars.  So depending on how you want to count it, it's 1.3

14   million additional value for us because as you sort of look to

15   it, 2.8, if you consider the breakup fee, we'd be paying under

16   Kyklos.

17       That was looked at by the company and rejected after

18   consulting with the equ -- the credit committee, rather, on at

19   least two grounds.  One, that, most importantly to the debtors

20   is it was an out of procedures bid.  We had conducted an

21   auction in connection with Your Honor's bidding procedure

22   order.  The parties had an opportunity to participate at the

23   auction.  There was a successful decided at the auction and

24   a -- you know, a bid subsequent to the auction is, in the

25   debtors' view, even if the bid facially provides more value, a

05-44481-rdd   Doc 20096-1   Filed 05/14/10   Entered 05/14/10 15:21:31   Exhibit
A-March 29   2008 Hearing Transcript   Pg 44 of 62

43

1   bid too late in time.  To do otherwise as a debtor-in-

2   possession would essentially -- not only would it not give

3   credence to Your Honor's directions but it would turn the

4   auction process and these Section 363 transactions on its head.

5   The other thing that was material to us but less material was

6   the fact that there was no GM supply agreement and therefore

7   there was no basis even to think about the transaction.  But

8   the sort of gaiting issue for the debtors was what I would call

9   an out-of-sequence bid.

10          THE COURT:  Is the existence of a supply agreement a

11   condition to closing?

12          MR. BUTLER:  Well --

13          THE COURT:  Or is it just to improve the chances of

14   getting the higher price than the eighteen plus.

15          MR. BUTLER:  I think impro -- well, as it relates

16   to -- as I recall in the joint bid that came in, and I didn't

17   spell it out to them as I'm thinking about it because I was out

18   of time but my recollection is they waived the supply agreement

19   requirement.

20          THE COURT:  But it still affects the price?

21          MR. BUTLER:  Well, it would still --

22          THE COURT:  The ultimate price?

23          MR. BUTLER:  It would affect the ultimate price but,

24   I mean, you could argue, Your Honor, that the -- which one of

25   the -- you can argue that if they were going to close without a

05-44481-rdd   Doc 20096-1   Filed 05/14/10   Entered 05/14/10 15:21:31   Exhibit
A-March 29   2008 Hearing Transcript   Pg 45 of 62

44

1   supply agreement and all that business was to move forward and

2   there was no risk to the company, to Delphi, in connection with

3   having an unhappy General Motors about that transaction, and

4   all the transitions would have to go on when you transition the

5   business, if you assume all of that doesn't mean anything from

6   a value perspective, then you can argue that the bid was in

7   fact facially better.

8         THE COURT:  Well, but again, there's a potential

9   eighteen plus million as before --

10        MR. BUTLER:  Right.

11        THE COURT:  -- but it can go up to forty-four --

12        MR. BUTLER:  Right.

13        THE COURT:  -- and if you don't have a supply

14   agreement, it seems to me it's unlikely it's going to go up to

15   forty-four.

16        MR. BUTLER:  I think that is -- I think that is a

17   reasonable inference, Your Honor.  But again, from our

18   perspective, it's very difficult for the debtors to consider a

19   bid by bidders who participated in an auction or had the

20   opportunity to, were unsuccessful at the auction and then

21   subsequently team up with each other and say I'll give you

22   another bid.  I mean, just it's very hard -- and there's a fair

23   amount of case law in this district and otherwise about whether

24   such a bidder in those circumstances can even be viewed to be a

25   good faith bidder for purposes of the Court making the findings

05-44481-rdd   Doc 20096-1   Filed 05/14/10   Entered 05/14/10 15:21:31   Exhibit
A-March 29   2008 Hearing Transcript   Pg 46 of 62

45

1   under 363.

2          THE COURT:  Okay.

3          MR. BUTLER:  So we did not.  But I wanted the Court

4   to know that as part of this record.

5          In terms of the evidence for this record, we have

6   submitted a declaration from Mr. Sheehan and a series of other

7   documents that have been listed on the exhibit list, dockets --

8   items 1 through 30 on the exhibit list, number 1 being Mr.

9   Sheehan's declaration.  And I would move those matters into

10  evidence at this hearing.

11         THE COURT:  Okay.  I'll do that.  I just want to

12  confirm, Kyklos is not an insider, right?

13         MR. BUTLER:  No.  Kyklos -- no.

14         THE COURT:  And nor with the other two bidders?

15         MR. BUTLER:  That's correct.  No one here, Your

16  Honor, is an insider.  And Kyklos is an affiliate of KPS, one

17  of the funds, investment funds.  I think it's got a longer

18  name.  Mr. Thomas is here.  Maybe he could tell me what the

19  name is.  It's got a long name as far as the actual name but

20  it's KPS, the way I'll refer to it.  Your Honor -- and Mr.

21  Sheehan's available if Your Honor has any questions or if

22  anyone wants to cross-examine him.

23         THE COURT:  All right.

24         MR. BUTLER:  Although I should say on the objection

25  point, we have resolved all of the objections.  They've either

05-44481-rdd   Doc 20096-1   Filed 05/14/10   Entered 05/14/10 15:21:31   Exhibit
A-March 29   2008 Hearing Transcript   Pg 47 of 62

46

1    been withdrawn from the record or submitted by stipulation or

2    dealt with in the order.  I would point out that Timken, again,

3    had an objection here and we have resolved that by the last

4    sentence that was added to paragraph 17 of the amended order.

5              THE COURT:  So there are no remaining assumption

6    assignment cure issues?

7              MR. BUTLER:  No.  I think everything is resolved as I

8    understand it.

9              THE COURT:  Because you got the bids sufficiently

10   advanced to send out the notice?

11             MR. BUTLER:  Yes.

12             THE COURT:  Okay.  All right.  Does anyone have

13   anything to say on this motion?  All right.  I will grant the

14   motion with regard to the post-auction bid issue.  Given that

15   the auction procedures were clear, the prospect of varying

16   those procedures to accept a post-auction bid I believe would

17   open up the estate to -- potentially to serious uncertainty as

18   to this transaction which I understand should proceed

19   expeditiously and very likely create potential liability from

20   Kyklos, although, of course, I'd be doing it instead of the

21   debtor.  But I believe the case law is clear that where there

22   is no confusion in connection with the auction itself or the

23   bidding rules and someone simply wants to submit a late bid

24   that absent some other extraordinary circumstance the Court

25   shouldn't consider it.  So I'll approve the sale to Kyklos.

05-44481-rdd   Doc 20096-1   Filed 05/14/10   Entered 05/14/10 15:21:31   Exhibit
A-March 29   2008 Hearing Transcript   Pg 48 of 62

47

1          MR. BUTLER:  Thank you, Your Honor.  Your Honor, we

2    have one matter we're trying to resolve in connection with the

3    Kettering sale motion at item number 9.  Can we take a brief

4    recess at this point?  I think we probably need no more than

5    ten minutes.

6          THE COURT:  Okay.  That's the last one?

7          MR. BUTLER:  That's the last matter on the agenda.

8          THE COURT:  Yeah.  That's fine.  How long you think

9    you need?

10          MR. BUTLER:  Ten minutes I think would be max.

11          THE COURT:  Okay.  That's fine.

12          MR. BUTLER:  Thank you, Judge.

13          (Recess from 11:03 a.m. until 12:13 p.m.)

14          THE COURT:  Please be seated.  Okay.  Delphi

15    Corporation.

16          MR. BUTLER:  Thank you, Your Honor.  And thank you

17    for the Court's patience in a longer than expected recess.

18    Your Honor, matter number 9 --

19          THE COURT:  10.

20          MR. BUTLER:  Excuse me, matter number 10 in front of

21    the Court today is the Kettering sale motion at docket number

22    13028.

23          Your Honor, this was a -- this is a hearing today to

24    request -- to establish and approve bidding procedures, notice

25    procedures, certain bid protections and to set a sale hearing.

05-44481-rdd   Doc 20096-1   Filed 05/14/10   Entered 05/14/10 15:21:31   Exhibit
A-March 29   2008 Hearing Transcript   Pg 49 of 62

48

1    And as I'll get into the record in a few minutes, I think Your

2    Honor will understand that what we've been dealing with in

3    terms of reaching a settlement on some items is that there's

4    every possibility that this will be a straddle motion.  That is

5    to say, we'll begin this process in Chapter 11 but may complete

6    it outside of Chapter 11.  And so there would not perhaps be a

7    sale hearing.

8              THE COURT:  Okay.

9              MR. BUTLER:  And that has some implications on

10   expense reimbursements and other issues, termination rights and

11   so forth.  And we wanted to clarify those with the purchaser

12   and also consulted briefly with the creditors' committee and I

13   described the issues we were working on with Mr. Kennedy from

14   the IUE who has an objection pending which we'll also be

15   addressing in this hearing.

16             Your Honor, the plan here would be that if the

17   company has not emerged from Chapter 11 by April 30th, 2008,

18   there would be a sale hearing at that time.  And there's a

19   proposed -- under the terms of the proposed bidding procedures

20   order, we're asking Your Honor to consider today there would be

21   set an April 10th bid deadline, an April 14th auction and a

22   sale hearing on April 30th.  And those dates would be followed

23   and that calendar would be followed if we remained under

24   Chapter 11 protection during that period of time.

25             The proposed purchaser in this transaction which

05-44481-rdd   Doc 20096-1   Filed 05/14/10   Entered 05/14/10 15:21:31   Exhibit
A-March 29   2008 Hearing Transcript   Pg 50 of 62

49

1    deals with the damper business in Kettering is Tenneco

2    Automotive Operating Company, Inc.  The proposed purchase price

3    is 18.8 million dollars subject to an adjustment based on

4    inventory value at closing.  And the adjustment would be upward

5    or downward to the extent that the value of the inventory at

6    closing was greater or less than 10.2 million.

7         There's a proposed breakup fee which is three percent

8    of the purchase price at 565,304 dollars.  There's an expense

9    for reimbursement for actual expenses up to 750,000 dollars

10   capped at that amount and I'll address the expense

11   reimbursement in a few minutes.  And there are -- we've also

12   agreed to lease a portion of the Kettering facility to the

13   purchaser for an initial lease term of seven years, with four

14   five-year renewal options based on the rent schedule that is

15   set forth in the agreement.  I would point out, Your Honor,

16   that the rent for year 1 is zero.  So there is some subsidy

17   obviously in a way in which that transaction has been

18   structured.

19        Your Honor, we received one limited objection to the

20   motion filed by Mr. Kennedy on behalf of the IUE-CWA.  And this

21   has, I think, everything to do with the fact that they're not

22   done with their discussions with Tenneco regarding a fully

23   completed bargaining agreement with Tenneco and an effects MOU

24   before the sale process is concluded.  I think there have been

25   a difference of view at one point between the debtors and the

05-44481-rdd   Doc 20096-1   Filed 05/14/10   Entered 05/14/10 15:21:31   Exhibit
A-March 29   2008 Hearing Transcript   Pg 51 of 62

50

1    IUE as to whether that needed to be dealt with before the sale

2    process commenced or needed to be dealt with before it was

3    concluded.  And I think Mr. Kennedy wants to address the Court

4    on that point.

5            MR. KENNEDY:  Your Honor, we're prepared to withdraw

6    this objection without prejudice to our right to object to the

7    sale at the sale hearing.  It is correct that this is a

8    procedures motion.  There were some representations which I

9    think for the most part were quite accurate in the company's

10   motion concerning the need for there to be an agreement with

11   the IUE-CWA as a condition of sale.  But there was also a

12   statement that there has been a collective bargaining agreement

13   entered into between Tenneco, Inc. and the IUE-CWA.  It is true

14   there was a document that was signed in August of 2007 that

15   leaves open a number of issues that are quite important from

16   the point of view of our members.  And until those are

17   resolved, it is our position that the IUE-CWA retains the right

18   under its contract with Delphi to object to a sale which does

19   not contain adequate follow-on collective bargaining agreement.

20           THE COURT:  Okay.  So the union's right to --

21   objection's fully reserved.  By withdrawing the objection here,

22   you're not waiving that right in connection with the final --

23           MR. KENNEDY:  That's correct, Your Honor.

24           THE COURT:  -- closing of the sale.

25           MR. KENNEDY:  That is correct.

05-44481-rdd   Doc 20096-1   Filed 05/14/10   Entered 05/14/10 15:21:31   Exhibit
A-March 29   2008 Hearing Transcript   Pg 52 of 62

51

1          THE COURT:  Okay.  Or approval of the sale.  But it

2     may end up being moot so we'll see.

3          MR. KENNEDY:  We'll see.

4          THE COURT:  Okay.

5          MR. BUTLER:  Your Honor, I do -- I call this the

6     damper business.  And more properly, what I really should say

7     is this is actually the sale of assets as opposed to a business

8     line per se.  And there are not executory contracts that will

9     be assumed or assigned as part of the transaction here unlike

10    some other transactions we've entered into.  This is really a

11    sale of the assets that comprise, I think, from a -- probably

12    say comprised machinery equipment inventory primarily used and

13    located in the damper manufacturing facility in Kettering,

14    Ohio.  I just wanted to sort of say it and make that clear.

15         What we had spent some time talking about during the

16    recess, Your Honor, was the circumstances under which the

17    expense reimbursement would be payable.  And the issue we were

18    focused on is if the -- one of the circumstances it would be

19    payable is under -- if the articles -- if the agreement is

20    terminated.  And if Your Honor were to look at Section 10.2 of

21    the agreement, it provides that there was a termination right

22    in favor of both the purchaser and the debtors if there was not

23    a sale approval order entered by May 23rd, 2008.  And then

24    there was a further termination right that would be applicable

25    if the closing occurred within sixty days after the entry of

05-44481-rdd   Doc 20096-1   Filed 05/14/10   Entered 05/14/10 15:21:31   Exhibit
A-March 29   2008 Hearing Transcript   Pg 53 of 62

52

1   that order.

2          And most of our what I'll call straddle motions that

3   we've had -- there have been a number of them over the last

4   sixty days where we've not been quite sure whether the company

5   would be in or out.  We have actually had some other provisions

6   in the document that would address the obligations to procure a

7   sale order if we were to emerge from Chapter 11 because

8   that's -- we're obviously in a place where we wouldn't be doing

9   that.  Those provisions did not get into this particular

10  contract as was negotiated on an expedited basis by the party.

11  This particular motion ended up before the Court with the

12  concurrence of the creditors' committee on expedited notice.  I

13  don't think there's any question about their view that to be

14  able to obtain this kind of value for these particular assets

15  would be a good thing for the company.  And we all want to see

16  this transaction move forward obviously and be completed.

17         But when we were preparing for the hearing today, we

18  were just looking at the different mechanics here.  And while

19  I'm sure it was unintended by the purchaser, you could have

20  constructed an approach here where the company emerges in

21  accordance with the agreements we're working on now and on or

22  about April 4th.  And that would have given rise essentially to

23  a guaranteed termination payment of 750,000 dollars on the

24  expense arrangement -- up to that amount.  They'd have to prove

25  it up but they would have that right because we never could

1    have satisfied these conditions.  And we wanted to clarify

2    that.  We appreciate Tenneco's cooperation in doing that.  They

3    were willing to do that.  And the proposed order is being

4    changed in two ways to address that issue.  The first is that

5    in connection with the findings in paragraph G, there is in the

6    second line of the findings -- the bid protections are defined

7    as "The breakup fee or the expense reimbursement may be paid in

8    accordance with the terms, conditions and limitations of the

9    agreement."  After the word "agreement", we're inserting the

10   phrase "as modified by this order".  And then define that as

11   the bid protections.  And then paragraph 7, at the end of

12   paragraph 7 of the order, there would be a rider that would be

13   attached that would read as follows, semi-colon,  "provided,

14   however, that notwithstanding any provision of the agreement or

15   the motion to the contrary, no expense shall be paid if the

16   agreement is terminated by the purchaser because the bankruptcy

17   court has not entered the sale approval order due to the

18   debtors' emergence from Chapter 11; provided further, however,

19   that notwithstanding any provision of the agreement or the

20   motion to the contrary, no expense reimbursement shall be paid

21   if the agreement is terminated by the debtors, by the seller,

22   because the closing has not occurred on or prior to September

23   30, 2008 and all conditions other than the entry of a sale

24   approval order have been satisfied."  And the effect of that

25   provision, basically, makes it so that if the seller -- or

05-44481-rdd   Doc 20096-1   Filed 05/14/10   Entered 05/14/10 15:21:31   Exhibit
A-March 29   2008 Hearing Transcript   Pg 55 of 62

54

1   rather, the purchaser terminates for some reason, they can't

2   point to the sale approval order as a basis for that and then

3   try and get the expense reimbursement provision.  The second

4   proviso when you actually work through the mechanics of the way

5   the termination provisions are written, there would be no

6   outside date by which the debtor could actually terminate or

7   then the emerged company could actually terminate the agreement

8   because the constructs would not have, at least where it

9   changed with paragraph 10.2, would be applicable absent a sale

10  order.  So we want an outside date that we would be able to

11  terminate and also have the expense reimbursement provision not

12  automatically paid.

13          And those provisions address the issue, in the

14  debtors' view, of whether -- of trying to make sure that we

15  have taken into consideration the potential of the debtors'

16  emergence in the middle of the process.

17          THE COURT:  Okay.

18          MR. BUTLER:  There is --

19          THE COURT:  It's still the case that the purchaser

20  would only get one or the other, right?

21          MR. BUTLER:  Yes.

22          THE COURT:  The breakup fee or the expense

23  reimbursement?

24          MR. BUTLER:  That's correct.

25          THE COURT:  And I guess the only -- I've listened to

05-44481-rdd   Doc 20096-1   Filed 05/14/10   Entered 05/14/10 15:21:31   Exhibit
A-March 29   2008 Hearing Transcript   Pg 56 of 62

55

1   you as you read.  Maybe I've heard this wrong but is it right

2   that the absence of a sale order, even if it's only caused by

3   the company's emergence from Chapter 11 because of the closing

4   and the effective date of the plan, that could still give the

5   party -- the buyer the right to walk?

6           MR. BUTLER:  I don't think --

7           THE COURT:  That's kind of a strange --

8           MR. BUTLER:  Yeah.  I don't think that --

9           THE COURT:  -- concept.

10          MR. BUTLER:  I don't think that was -- I don't think

11  that was the intention, Your Honor.  I understand the way in

12  which the -- it was really intended to address the expense

13  reimbursement provision.

14          THE COURT:  Right.  I mean, it seemed to me that they

15  should at least have a date by which they could walk as opposed

16  to the absence of an order that would be totally fortuitous

17  because of the company emerging.

18          MR. BUTLER:  Right.  Your Honor, we will -- we'll

19  address that with them prior to the sale hearing in terms of --

20          THE COURT:  Okay.

21          MR. BUTLER:  -- that issue just to get that

22  clarification.  I think that the more important -- what we

23  wanted to do because we're approving the expense reimbursement

24  provision there was to make sure that the -- that this --

25          THE COURT:  It wouldn't be treated by this.

05-44481-rdd   Doc 20096-1   Filed 05/14/10   Entered 05/14/10 15:21:31   Exhibit
A-March 29   2008 Hearing Transcript   Pg 57 of 62

56

1        MR. BUTLER:  Correct, Your Honor.  And that's the

2   relief today.  And we will address the Court's concern on the

3   ultimate termination provision in connection with the sale

4   hearing.

5        THE COURT:  All right.

6        MR. BUTLER:  A couple of other points, Your Honor,

7   just for the record here.  We did submit ten items as part of

8   the evidentiary record including, as Exhibit number 1, the

9   declaration of Mr. Sheehan in support of this motion.  I would

10  like to move the admission of those into evidence at this time.

11       THE COURT:  Okay.  And again, hearing no objections,

12  they're admitted.

13       MR. BUTLER:  And I don't know if the Court has any

14  questions of Mr. Sheehan in connection with his declaration.

15       THE COURT:  No, I don't.

16       MR. BUTLER:  Okay.  Your Honor, then unless Your

17  Honor has any other questions about the motion, we'd ask the

18  Court to approve the bidding procedures as they've been

19  modified here on the record and enter the order as it's been

20  modified here on the record that would permit the debtors to

21  proceed to give notice and begin to seek bids for the April

22  10th bid deadline.

23       THE COURT:  Okay.  And hearing no one else wanting to

24  address the motion, I will approve them.  The procedures

25  themselves are in line with what I've previously approved and

05-44481-rdd   Doc 20096-1   Filed 05/14/10   Entered 05/14/10 15:21:31   Exhibit
A-March 29   2008 Hearing Transcript   Pg 58 of 62

57

1    the alternative breakup fee/expense reimbursement particularly

2    is clarified on the record or also within the range of what I

3    and other Courts in this circuit have approved.

4              MR. BUTLER:  Thank you, Your Honor.

5              THE COURT:  Okay.  So you have -- actually, there's

6    no assumption assignment notice here --

7              MR. BUTLER:  No, there is not.

8              THE COURT:  that's going out?  Okay.  All right.

9              MR. BUTLER:  All right.  I just want to make sure of

10   one other matter, Your Honor.  Your Honor, the other -- one

11   other matter on the agenda is in the adversary --

12             THE COURT:  Oh, against the IRS.

13             MR. BUTLER:  It is.  It's item number 11 is the

14   debtors' complaint to recover property of the estate at

15   adversary proceeding number 08-01038.  This -- the parties have

16   agreed to adjourn the first status conference, with Your

17   Honor's permission, to the April 30th, 2008 omnibus hearing.

18   There is -- no answer has been filed yet and the parties

19   haven't conducted their own conferences under Rule 26(b) and so

20   we'd ask Your Honor's permission to deal with this on April

21   30th.

22             THE COURT:  That's fine.

23             MR. BUTLER:  Thanks, Your Honor.

24             THE COURT:  Okay.  The --

25             MR. BUTLER:  That --

58

1          THE COURT:  No, go ahead.

2          MR. BUTLER:  I was going to say that's all of the

3    business that we have on the agenda, Your Honor, for the

4    omnibus hearing.

5          THE COURT:  Okay.  Thank you.

6          (Whereupon these proceedings were concluded at 12:27

7    p.m.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

59

```
 1
 2                            I N D E X
 3
 4                         E X I B I T S
 5   DEBTORS'  DESCRIPTION                          ID.   EVID.
 6   1-20      Various documents in support of            23,16
 7             KECP motion
 8   1-5       Various documents in support of            24,24
 9             omitted contracts assumption procedures
10             motion
11   1-30      Various documents in support of bearing
                                                          44,25
12             sales motion
13   1-10      Various documents in support of Kettering  54,12
14             sales motion and bidding procedures
15
16                          R U L I N G S
17   DESCRIPTION                              PAGE   LINE
18   KECP motion approved                      17     24
19   Motion to further extend exclusivity      19     7
20   granted
21   Motion to extend Rule 4(m) time for service  22     9
22   of summonses relating to avoidance actions
23   granted; settle order on 5-day notice with
24   defendants pursuing avoidance actions who
25   are not on 2002 list
```

60

```
1                    I N D E X, cont'd

2

3                    R U L I N G S

4   DESCRIPTION                              PAGE     LINE

5   Omitted contracts assumption procedures    27       3

6   motion granted

7   26th omnibus objection granted with respect 29      10

8   to uncontested matters

9   27th omnibus objection granted             31       5

10  Adjourned motions relating to steering sale 38       9

11  motion approved

12  Bearing sales motion to Kyklos approved     44      25

13  Kettering sales motion and bidding procedures 54    24

14  approved

15

16

17

18

19

20

21

22

23

24

25
```

61

1

2                          C E R T I F I C A T I O N

3

4        I Lisa Bar-Leib, court-approved transcriber, certify that the

5        foregoing is a correct transcript from the official electronic

6        sound recording of the proceedings in the above-entitled

7        matter.

8

9                                                    March 20, 2008

10       Signature of Transcriber            Date

11

12       Lisa Bar-Leib

13       typed or printed name

14

15

16

17

18

19

20

21

22

23

24

25