HEARING DATE: JULY 22, 2010
OBJECTION DEADLINE: JUNE 7, 2010

**FOX ROTHSCHILD LLP**
75 Eisenhower Parkway, Suite 200
Roseland, NJ 07068
973-992-4800
- and -
100 Park Avenue, 15th Floor
New York, NY 10017
rmeth@foxrothschild.com
RICHARD M. METH, ESQ. (RM7791)(admitted *pro hac vice*)

and

**GREENEBAUM DOLL & MCDONALD PLLC**
3500 National City Tower
101 South Fifth Street
Louisville, KY 40202
C. R. BOWLES, ESQ. (admitted *pro hac vice*)
502-589-4200

Attorneys For Defendants, DSSI and DSSI, LLC

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| ———————————————————— x | | |
| | : | |
| In re: | : | |
| | : | |
| DELPHI CORPORATION, *et al.*, | : | Chapter 11 |
| | : | Case No. 05-44481 (RDD) |
| Debtors. | : | |
| | : | (Jointly Administered) |
| ———————————————————— x | | |
| DELPHI CORPORATION, *et al.*, | : | Adv. Pro. No. 07-02236 (RDD) |
| | : | |
| Plaintiffs | : | |
| | : | |
| - against - | : | |
| | : | |
| DSSI and DSSI, LLC, | : | |
| | : | |
| Defendants. | : | |
| | : | |
| ———————————————————— x | | |

**MOTION OF THE DSSI DEFENDANTS SEEKING AN ORDER
(I) PURSUANT TO FED. R. CIV. P. 60 AND FED. R. BANKR. P. 9024,
VACATING PRIOR ORDERS ESTABLISHING PROCEDURES FOR
CERTAIN ADVERSARY PROCEEDINGS, INCLUDING THOSE
COMMENCED BY DELPHI CORPORATION, ET AL. UNDER 11 U.S.C.
§§ 541, 544, 545, 547, 548, AND/OR 549, AND EXTENDING THE TIME
TO SERVE PROCESS FOR SUCH ADVERSARY PROCEEDINGS; AND
(II) DISMISSING THE ADVERSARY PROCEEDING WITH PREJUDICE
PURSUANT TO FED. R. CIV. P. 12(B) AND FED. R. BANKR. P. 7012(B)**

DSSI LLC and DSSI[1] (hereinafter "Defendants"), by and through their undersigned counsel, in support of their Motion Seeking an Order (i) Pursuant to Fed. R. Civ. P. 60 and Fed. R. Bankr. P. 9024, Vacating Prior Orders Establishing Procedures for Certain Adversary Proceedings, Including Those Commenced by Delphi Corporation, et al. Under 11 U.S.C. §§ 541, 544, 545, 547, 548, and/or 549, and Extending the Time to Serve Process for Such Adversary Proceedings; and (ii) Dismissing the Adversary Proceeding with Prejudice Pursuant to Fed. R. Civ. P. 12(B) and Fed. R. Bankr. P. 7012(B) ("Motion"), respectfully state:

## PRELIMINARY STATEMENT

1.      It is a fundamental tenet in American jurisprudence that all court proceedings should be open because the public and parties in interest have a right, rooted in the First Amendment and codified by Congress in § 107(a) of the United States Bankruptcy Code, to know about the administration of bankruptcy proceedings.    Another basic concept of constitutional law, under fundamental notions of due process, is that a party must be given notice that it is being sued or that other legal actions are being taken against it, in order for that action to be binding on that party.   See In re Johns Manville Corporation, 600 F. 3d 135, 2010 WL

---

[1] In the Debtors' preference action, the Debtors assert claims against a defendant styled "DSSI". There is no entity known as DSSI in the DSSI LLC corporate organization. Therefore, no response is necessary on behalf of this non-existent entity. "DSSI" is only referenced here to alert this Court to this issue and to prevent (i) a default judgment being obtained against it and (ii) efforts to assert any such judgment against DSSI LLC.

1007832, (2nd Cir. 2010) ("Manville IV").  Significantly, neither of these principles was abided by in this matter.

2.     Instead, Delphi Corporation ("Delphi") and the other Debtors (as defined below), i.e., the plaintiffs herein (collectively, the "Plaintiffs"), have, through the two-step combination of (i) filing complaints under seal without notice to the Defendants, and (ii) filing a series of motions both in the main Delphi case and in individual adversary proceedings, without notice to the parties who had an interest in opposing them (including the defendants in the individual adversary proceedings), abused the Federal Rules of Civil Procedure and the Federal Rules of Bankruptcy Procedure.  The Debtors have, furthermore, attempted to secretly and indefinitely extend the two-year statute of limitations imposed by 11 U.S.C. § 546(a), which absolutely bars the prosecution of the above-captioned adversary proceeding (the "Adversary Proceeding") and other adversary proceedings.  The Debtors' stated reason for not giving the numerous defendants their constitutionally required notice of these motions and complaints, candidly set forth in numerous pleadings filed by the Debtors and discussed below, was to be able to retain advantageous business relationships with the potential defendants and to obtain confirmation of the Debtors' plan of reorganization without having to disclose the fact that they had filed significant lawsuits against the potential defendants.

3.     This Adversary Proceeding was filed under seal on September 28, 2007, and only served on the Defendants on or about March 22, 2010.  Consequently, the Defendants seek an order of this Court:

(a)     Vacating, with respect to Defendants, pursuant to Fed. R. Civ. P. 60 and Fed. R. Bankr. P. 9024, the orders of this Court, dated August 16, 2007 (the "Preservation of Estate Claims Procedures Order"); March 28, 2008 (the "Extension of Avoidance Action Service

Deadline Order"); April 30, 2008 (the "Postconfirmation Extension of Avoidance Action Service Deadline Order"); and October 22, 2009 (the "Supplemental Postconfirmation Extension Order" and, together with the Extension of Avoidance Action Service Deadline Order and the Postconfirmation Extension of Avoidance Action Services Deadline Order, the "Extension Orders"), on the grounds that each such order is void as to Defendants by virtue of the Debtors' and Plaintiffs' intentional failure to provide Defendants with notice of the motions in support of such orders, and because the Extension Orders were improvidently entered;

(b)      Ruling that, due to Debtors' and Plaintiffs' intentional failure to provide constitutionally required notice of the preservation of Estate Claims Procedures Order, the Extension Orders and related pleadings to Defendants, the Preservation of Estate Claims Procedures Order and the Extension Orders were improvidently entered and thus are not binding upon Defendants;

(c)      Dismissing, with prejudice, the Adversary Proceeding against Defendants, pursuant to Fed. R. Civ. P. 12(b) and Fed. R. Bankr. P. 7012(b) on the ground that it is barred by the two-year statute of limitations imposed by 11 U.S.C. § 546(a) and, therefore, fails to state a claim upon which relief may be granted;

(d)      Dismissing, with prejudice, the Adversary Proceeding and Complaint against Defendants on the ground that it is barred by the doctrine of laches;

(e)      Dismissing, with prejudice, the Adversary Proceeding and Complaint against Defendants on the ground that it is barred by judicial estoppel; and

(f)    Dismissing, with prejudice, the Adversary Proceeding and Complaint against Defendants due to Debtors' failure to retain their (alleged) claims against Defendants in their originally confirmed Plan.

## STATEMENT OF FACTS

4.    On October 8, 2005, Delphi and certain of its subsidiaries (the "Initial Filers") each filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").    On October 14, 2005, three additional U.S. subsidiaries of Delphi (collectively, together with the Initial Filers, the "Debtors") filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

5.    Prior to the commencement of the Debtors' cases, Defendants procured and arranged for the delivery of goods on behalf of Delphi.

### (i)    Preservation of Estate Claims Procedures Motion and Order

6.    By motion dated August 6, 2007 (the "Preservation of Estate Claims Procedures Motion"), Main Case Docket Number (Doc. No. 8905)[2], the Debtors requested the entry of an order seeking, among other things, the establishment of procedures for certain adversary proceedings, including those filed under seal by the Debtors under Bankruptcy Code §§ 541, 544, 545, 547, 548 or 553.    (Preservation of Estate Claims Procedures Motion, at ¶ 17.)    As pertinent here, the relief sought included: (i) pursuant to Fed. R. Civ. P. 4(m), an extension of time beyond the initial 120-day period to serve certain adversary summonses and complaints, (ii) a stay of the various adversary proceedings until service of process was effected, and (iii)

---

[2] Courts may take judicial notice of the pleadings on its own docket in a case.  See, e.g., AmBase Corp. v. City Investing Co. Liquidated Trust, 326 F.3d 63, 72 (2nd Cir. 1993).

authorization for the Plaintiffs to file the complaints under seal.  Id. at ¶¶ 33-38.

7.      These forms of relief requested by the Debtors were purportedly intended to permit the Debtors to "preserve the status quo," and to allow the Debtors to pursue plan confirmation without having to prosecute the sealed adversary proceedings. Id. at ¶ 36.  The Debtors also argued that "sealing should promote the plan process and avoid needless costs relating to actions that remain unnecessary under the Debtors' prospective plan." Id.

8.      In addition, as relates to the request to file the complaints under seal, the Debtors also sought to prevent any party, including the Defendants, from discovering the sealed complaints in order to "avoid unnecessarily alarming potential defendants" because the "Debtors have worked to preserve and repair their business relationship with many of the potential defendants during these cases and have negotiated or regained favorable credit terms with many suppliers and are continuing to do so.  The Debtors are also engaged in negotiations with some of the potential defendants on issues unrelated to avoidance actions." Id. at ¶ 37.

9.      No notice of the Preservation of Estate Claims Procedures Motion was given to Defendants.  See Affidavit of Service of the Preservation of Estate Claims Procedures Motion filed by the Debtors on August 10, 2007 (Doc. No. 9039).

10.     On August 16, 2007, this Court entered the Preservation of Estate Claims Procedures Order (Doc. No. 9105), granting the relief requested in the Preservation of Estate Claims Procedures Motion by (i) allowing the Debtors to file adversary proceeding complaints under seal, (ii) directing the Clerk of the Court not to indentify any defendants in any adversary proceeding filed under seal, (iii) directing the Clerk of the Court to delay issuing summonses for complaints unless and until the Debtors notified the Clerk of their intent to prosecute such

actions, (iv) staying each adversary action unless and until the Debtors effectuated service of process on the respective defendants, and (v) extending the deadline under Fed. R. Civ. P. 4(m) by which the Debtors would have to serve process to March 31, 2008, so that the complaints would not be subject to dismissal under Fed. R. Civ. P. 4(m).  Preservation of Estate Claims Procedures Order, at ¶¶ 7-10.

11.    Paragraph 11 of the Preservation of Estate Claims Procedures Order provides that "[t]he Debtors must serve a copy of this order upon each defendant in any [adversary proceeding] either when the Debtors serve a summons and complaint on the defendant or as soon thereafter as practicable."  Id. at ¶ 11.

### (ii)    Debtors' Plan Process

12.    On September 6, 2007, a disclosure statement (Doc. No. 9264) and plan of reorganization (Doc. No. 9263), proposing payment in full to the Debtors' unsecured creditors, were filed.

13.    On December 10, 2007, the Debtors filed their First Amended Disclosure Statement (Doc. No. 11388) ("Disclosure Statement"), which was approved by the Court (Doc. No. 11389).

14.    In the Disclosure Statement, the Debtors stated:

> Because of the Plan's treatment of unsecured creditors, the Debtors have determined that the affirmative pursuit of many if not all of these causes of action would not benefit their estates and creditors. As described in this Disclosure Statement, the Plan will pay or satisfy all allowed claims in full through distributions of common stock.  As a result, avoiding preferential transfers through causes of action under section 547 of the Bankruptcy Code or similar state laws ("Preference Claims") would provide little or no benefit to the

Debtors' Estates because any party returning such a transfer would be entitled to an unsecured claim for the same amount, to be paid or satisfied in full under the Plan. For the same reasons, avoiding statutory liens under section 545 of the Bankruptcy Code or prepetition setoffs under section 553 of the Bankruptcy Code would provide little or no benefit to the Estates. In addition, under the Plan the Reorganized Debtors will not retain the Preference Claims except those specifically listed on Exhibit 7.24 to the Plan.

15.    On or about December 10, 2007, the Debtors filed their First Amended Joint Plan of Reorganization (the "Plan"), (Doc. No. 11386), which was ultimately confirmed by this Court.

16.    Section 7.24 of the Plan, governing the Debtors' retention of causes of action and claims against third parties, provides:

> 7.24    **Preservation Of Causes Of Action.**  In accordance with section 1123(b)(3) of the Bankruptcy Code and except as otherwise provided in this Plan, the Reorganized Debtors shall retain and may (but are not required to) enforce all Retained Actions and all other similar claims arising under applicable state laws, including, without limitation, fraudulent transfer claims, if any, and all other Causes of Action of a trustee and debtor-in-possession under the Bankruptcy Code.  The Debtors or the Reorganized Debtors, in their sole and absolute discretion, shall determine whether to bring, settle, release, compromise, or enforce such Retained Actions (or decline to do any of the foregoing), and shall not be required to seek further approval of the Bankruptcy Court for such action.  The Reorganized Debtors or any successors may pursue such litigation claims in accordance with the best interests of the Reorganized Debtors or any successors holding such rights of action.  **Notwithstanding the foregoing, Causes of Action against Persons arising under section 544, 545, 547, 548, or 553 of the Bankruptcy Code or similar state laws shall not be retained by the Reorganized Debtors unless specifically listed on <u>Exhibit 7.24</u> hereto.**  [(Emphasis added.)]

17.    Exhibit 7.24 to the Plan was filed with the Court on December 28, 2007.  (<u>See</u> attached <u>Exhibit A</u>.)  Exhibit 7.24 did not specifically list any causes of action against

Defendants[3].  Thus, under the terms of their Plan, the Debtors expressly provided that they would not retain either the Adversary Proceeding, which was filed against Defendants asserting claims under 11 U.S.C.§ 547, or any other causes of action against the Defendants.

18.     On January 25, 2008, the Court entered an order confirming the Debtors' Plan. (Findings of Fact, Conclusions of Law, and Order under 11 U.S.C. §§ 1129(a) and (b) and Fed. R. Bankr. P. 2020 confirming First Amended Joint Plan or Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-in-Possession, as Modified, dated January 25, 2008) (the "Confirmation Order") (Doc. No. 12359).   The Confirmation Order became final on February 9, 2008.

### (iii)     Filing of Adversary Proceeding Against Defendants

19.     On September 26, 2007, Plaintiffs filed the Adversary Proceeding under seal with the Clerk, but did not commence the case by service of process nor give any other notice to the Defendants at that time.  The Complaint seeks to recover, pursuant to Bankruptcy Code §§ 547 and 550, alleged preferential transfers made to Defendants in the aggregate amount of $7,070,216.76.  The Complaint is attached hereto as Exhibit B.

20.     The statue of limitations for commencing avoidance actions pursuant to Bankruptcy Code §§ 541, 544, 545, 547, 548 or 553 expired on or before October 14, 2007.  See 11 U.S.C. § 546(a).

---

[3] Compare the lack of specific listing in Exhibit 7.24 with the language of Exhibit 7.19 to the Modified Plan, which lists by number, but not by name, several of the adversary proceedings filed under seal.

(iv)    **Extension of Avoidance Action Service Deadline Motion and Order**

21.    By motion dated February 28, 2008 (the "Extension of Avoidance Action Service Deadline Motion") (Doc. No. 12922), the Debtors sought to modify Paragraph 8 of the Preservation of Estate Claims Procedures Order to extend, for a second time, the deadline under Fed. R. Civ. P. 4(m) by which the Debtors would be required to serve process, by an additional two months to May 31, 2008.  Extension of Avoidance Action Service Deadline Motion at ¶ 18.

22.    The stated purpose for this extension was to "enable the Debtors to fulfill their fiduciary responsibility to preserve valuable estate assets in a manner that would not unnecessarily disrupt the emergence process or the Debtors' current business relationships with potential defendants that are necessary to the Debtors' ongoing operations," as well as to "reduce the administrative and economic burdens [of the adversary proceedings] on the Debtors, the Court, the Clerk of Court, and the potential defendants."  Id. at ¶ 21.

23.    In the Extension of Avoidance Action Service Deadline Motion, the Debtors also stated that they would "not retain any of the causes of action asserted in the [adversary proceedings] except those specifically listed on Exhibit 7.24 to the Plan." Id. at ¶ 17.  In fact, the Debtors explicitly stated that, of the 742 adversary proceedings commenced under seal, only the claims relating to Laneko Engineering Co., Wachovia Bank, National Association, Laneko Engineering Co. Inc., and their affiliates and subsidiaries were subject to the Preservation of Estate Claims Procedures Order.  Id. at ¶ 17, n.4.  As set forth in Exhibit A, Exhibit 7.24 to the Plan does not specifically list either the Adversary Proceeding or Complaint against Defendants.

24.    No notice of the Preservation of Estate Claims Procedures Motion was given to Defendants.  See Affidavit of Service of Presentation of Estate claims Motion filed March 5,

10

2008 (Doc. No. 12970).

25.      On March 28, 2008, the Court entered the Extension of Avoidance Action Service Deadline Order (Doc. No. 13277), modifying Paragraph 8 of the Preservation of Estate Claims Procedures Order so that the time under Fed. R. Civ. P. 4(m) by which the Debtors must serve a defendant in the adversary proceedings with a summons and complaint was further extended to May 31, 2008.  Extension of Avoidance Action Service Deadline Order at ¶ 2.  Originally, the Extension of Avoidance Action Service Deadline order was entered with an incorrect pdf file and with an incorrect Exhibit A.

26.      Consistent with Paragraph 11 of the Preservation of Estate Claims Procedures Order, Paragraph 2 of the Extension of Avoidance Action Service Deadline Order provided that the "Debtors shall serve a copy of this order upon each defendant in any [adversary proceeding] either when the Debtors serve a summons and complaint on such defendant or as soon thereafter as practicable."  Id. at ¶ 2.

### (v)      Plan Investors Fail to Invest

27.      On April 4, 2008, the Debtors announced that the Plan Investors (as defined in the Debtors' Supplemental Disclosure Statement, Doc. No. 17031) ("Supplemental Disclosure Statement") had refused to make their required investments under the Plan.  Supplemental Disclosure Statement at S-iv.  On May 16, 2008, Delphi filed complaints against the Plan Investors over these alleged breaches of their agreement with the Debtors.  Id.

      (vi)    **Postconfirmation Extension of Avoidance Action Service Deadline
Motion and Order**

28.      By motion dated April 10, 2008 (the "Postconfirmation Extension of Avoidance
Action Service Deadline Motion") (Doc. No. 13361), the Debtors sought to further modify
Paragraph 8 of the Preservation of Estate Claims Procedures Order, as modified by the Extension
of Avoidance Action Service Deadline Order, so as to extend for a third time the deadline under
Fed. R. Civ. P. 4(m) – i.e., the deadline by which the Debtors would have to serve process --
until 30 days after substantial consummation of the Plan or any modified plan.  Postconfirmation
Extension of Avoidance Action Service Deadline Motion, at ¶ 19.

29.      Although the Debtors admitted in the Postconfirmation Extension of Avoidance
Action Service Deadline Motion that the "Plan Investors" had failed to fund the $6.1 billion of
exit financing required under the Confirmed Plan, the Debtors stated that their purpose for this
extension was identical to that set forth in support of the Extension of Avoidance Action Service
Deadline Motion, namely, to "enable the Debtors to fulfill their fiduciary responsibility to
preserve valuable estate assets in a manner that would not unnecessarily disrupt the emergence
process or the Debtors' current business relationships with potential defendants that are
necessary to the Debtors' ongoing operations," as well as "reduce the administrative and
economic burdens of the [adversary proceedings] on the Debtors, the Court, the Clerk of the
Court, and the potential defendants." Id. at ¶ 22.

30.      The Postconfirmation Extension of Avoidance Action Service Deadline Motion
once again stated that (i) the Debtors would "not retain any of the causes of action asserted in the
[adversary proceedings] except those specifically listed on Exhibit 7.24 to the Plan;" and (ii) of
the 742 adversary proceedings commenced under seal, only the claims relating to Laneko

Engineering Co., Wachovia Bank, National Association, Laneko Engineering Co., Inc., and their affiliates and subsidiaries were subject to the Preservation of Estate Claims Procedures Order. Id. at ¶ 18 and n.4.  Unlike many of the other 174 defendants (including Defendants), these three entities were provided with notice of the Postconfirmation Extension of Avoidance Action Service Deadline Motion.  Id. at ¶ 18, n.4.

31.    No notice of the Postconfirmation Extension of Avoidance Action Service Deadline Motion was given to Defendants.  See Affidavit of Service filed for Postconfirmation Extension of Avoidance Action Service Deadline Motion filed April 16, 2008 (Doc. No. 13415).

32.    On April 30, 2008, the Court entered the Postconfirmation Extension of Avoidance Action Service Deadline Order (Doc. No. 13484), modifying Paragraph 8 of the Preservation of Estate Claims Procedures Order, as previously modified by the Extension of Avoidance Action Service Deadline Order, so that the time under Fed. R. Civ. 4(m) by which the Debtors must serve a defendant in the adversary proceedings with a summons and complaint was further extended until 30 days after the later of substantial consummation of the Plan or of any modified Chapter 11 plan for the Debtors and December 31, 2008.  Postconfirmation Extension of Avoidance Action Service Deadline Order at ¶ 2.

**(vii)    Entry of Modification Approval Order and Effective Date**

33.    On June 1, 2009, the Debtors filed their Supplemental Motion for Order Approving Modifications to Debtors' First Amended Plan ("Supplemental Plan Modification Motion") (Doc. No. 16646).  The Supplemental Plan Modification Motion did not seek to vacate the Confirmation Order.

34.     The major change made in the Modified Plan, and of relevance here, was section 7.19, which originally was section 7.24 under the Confirmed Plan, and its accompanying Exhibit 7.19.

35.     While the language of section 7.19 was not materially changed from that of section 7.24, Exhibit 7.19 (attached hereto as <u>Exhibit C</u> (Doc. No. 17557)) was significantly different from Exhibit 7.24.   The main difference between Exhibit 7.24 of the Plan and Exhibit 7.19 of the Modified Plan was the addition of paragraph 6 to Exhibit 7.19, which provided:

> Any and all claims, Causes of Action, rights of action, suits, and proceedings in favor of the Debtors or their Estates against the defendants in the following Adversary Proceedings that were filed under seal in accordance with and pursuant to the Order Under 11 U.S.C. §§ 102(1)(A), 105(a), 107, 108(a)(2), and 546(a) and Fed. R. Bankr. P. 7004, 9006(c), and 9018(i) Authorizing Debtors To Enter Into Stipulations Tolling Statute Of Limitations With Respect To Certain Claims, (ii) Authorizing Procedures To Identify Causes Of Action That Should Be Preserved, and (iii) Establishing Procedures For Certain Adversary Proceedings Including Those Commenced By Debtors Under 11 U.S.C. § 541, 544, 547, 548, or 553, dated August 16, 2007.   [(List of AP numbers omitted.)]

36.     As noted by the Debtors in the Supplemental Postconfirmation Extension Motion (as hereinafter defined), Exhibit 7.19 of the proposed modified plan "lists significantly more causes of action that will be retained by DPH Holdings <u>than originally retained under the Confirmed Plan</u>, including 177 of the Adversary Proceedings filed under seal."   Supplemental Postconfirmation Extension Motion at ¶ 17.   (Emphasis added.)

37.     Neither the Modified Plan nor Exhibit 7.19 to the Modified Plan disclosed the identity of the parties that were sued under the 177 sealed complaints.

14

38.    On July 30, 2009, more than a year and a half after the Plan was confirmed, the Court entered an order (the "Modification Approval Order") (Doc. No. 18707) approving certain modifications to the Plan (the "Modified Plan").    See Notice of (a) Order Approving Modifications to First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-in-Possession and (B) Occurrence of Effective Date, dated October 6, 2009, at ¶ 2.    The Modification Approval Order did not vacate, revoke or withdraw the Confirmation Order.    The effective date of the Modified Plan occurred on October 6, 2009. Id. at ¶ 3.

### (viii)    Supplemental Postconfirmation Extension of Avoidance Action Service Deadline Motion and Order

39.    By motion dated October 2, 2009 (the "Supplemental Postconfirmation Extension Motion") (Doc. No. 18952), the Debtors sought to further modify Paragraph 8 of the Preservation of Estate Claims Procedures Order, as modified by the Extension of Avoidance Action Service Deadline Order, so as to extend for a fourth time the deadline under Fed. R. Civ. P. 4(m), by which the Debtors were required to serve process, until 180 days after substantial consummation of the Modified Plan.    Supplemental Postconfirmation Extension Motion, at ¶ 16.

40.    In the Supplemental Postconfirmation Extension Motion, the Debtors stated:

> Moreover, Exhibit 7.19 of the Modified Plan lists significantly more causes of action that will be retained by DPH Holdings than originally retained under the Confirmed Plan, including 177 of the Adversary Proceedings filed under seal (the "Retained Adversary Proceedings").[2]

---

[2]Under the Modified Plan, the Debtors will not retain any of the causes of action asserted in the Adversary Proceedings except those listed on Exhibit 7.19 to the Modified Plan.    Although the Debtors' request for an extension of the Fed. R. Civ. P. 4(m) deadline is applicable to all of the Adversary Proceedings, upon substantial consummation of the Modified Plan – which may occur prior to the scheduled hearing on this Motion – the extension will affect only those actions specifically retained pursuant to section 7.19 of the Modified Plan.

Id. at ¶ 17.  In this pleading, the Debtors admit and acknowledge that they did not retain any causes of action against Defendants under the Plan, as neither the Adversary Proceeding nor the Complaint were specifically listed on Exhibit 7.24 of the Plan.

41.    The Debtors stated that this further extension was necessary in light of the fact that they now anticipated that they would "retain" 177 of the adversary proceedings filed under seal which they had previously affirmatively abandoned under the Plan and Exhibit 7.24.  The Debtors asserted that 30 days after substantial consummation of the Modified Plan was not sufficient time to (a) "assess the ongoing relationship with certain defendants and whether events since initiating the [adversary proceedings] have impacted the Debtors' estimated recoveries," and (b) determine whether to pursue such retained adversary proceedings.  The Debtors also fell back on their rote justification that an extension "would reduce the administrative and economic burdens of the [retained adversary proceedings] on the Debtors and the potential defendants."  Id. at ¶¶ 17, 19.

42.    No notice of the Supplemental Postconfirmation Extension Motion was given to Defendants.  See Affidavit of Service of Supplemental Postconfirmation Motion filed October 7, 2009 (Doc. No. 18967).

43.    On October 22, 2009, the Court entered the Supplemental Postconfirmation Extension Order (Doc. No. 18999), modifying Paragraph 8 of the Preservation of Estate Claims Procedures Order, as previously modified by the Extension of Avoidance Action Service Deadline Order and the Postconfirmation Extension of Avoidance Action Service Deadline Order.  As a result, the time under Fed. R. Civ. P. 4(m) by which the Debtors were required to serve a defendant in the adversary proceedings with a summons and complaint was further

extended until 180 days after substantial consummation of the Modified Plan. Supplemental

Postconfirmation Extension Order, at ¶ 2.

### (ix)    Service of Complaint on Defendants

44.    Defendants were finally served with the Complaint on or about March 22, 2010,

well over two years after the limitations period provided by Bankruptcy Code § 546(a) expired

and after the original time period for service of the Complaint under Fed. R. Civ. P. 4(m) had

run.

### LEGAL ARGUMENT

**I.    THE PRESERVATION OF ESTATE CLAIMS PROCEDURE ORDER AND THE EXTENSION ORDERS SHOULD BE VACATED AS AGAINST DEFENDANTS ON THE GROUNDS THAT EACH IS VOID BY VIRTUE OF THE PLAINTIFFS' INTENTIONAL FAILURE TO GIVE DEFENDANTS ANY NOTICE OF THE MOTIONS IN SUPPORT OF THE ENTRY OF THESE ORDERS, THAT THE ADVERSARY PROCEEDINGS SHOULD NOT HAVE BEEN SEALED UNDER 11 U.S.C. § 107 AND THAT THESE ORDERS WERE IMPROVENTLY ENTERED.**

45.    Defendants adopt, as if fully restated herein, the arguments of MicroChip

Technology Incorporated (Adversary Proceeding No. 07-02436) (a copy of which is annexed

hereto as Exhibit D), Wagner Smith Company (Adversary Proceeding No. 07-02581) (a copy of

which is annexed hereto as Exhibit E); Hewlett Packard (Adversary Proceeding 07-02449) (a

copy of which is attached hereto as Exhibit F) and any other pleading filed in the main case or in

a particular adversary proceeding in these cases addressing this issue.

46.    For the foregoing reasons, the Preservation of Estate Claims Procedures Order

and Extension Orders should be vacated as they were improvently entered against Defendants.

The Adversary Proceeding and Complaint should therefore be dismissed with prejudice.

II.    THE PLAINTIFFS' FAILURE TO PROVIDE THE CONSTITUTIONALLY REQUIRED NOTICE OF THE PRESERVATION OF ESTATE CLAIMS PROCEDURE ORDER AND THE EXTENSION ORDERS AND RELATED MOTIONS PREVENTS THESE ORDERS FROM BEING BINDING AGAINST DEFENDANTS.

47.    It is a "due process 'principle of general application in Anglo-American jurisprudence that one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process,' it being 'our deep-rooted historic tradition that everyone should have his own day in court." Ortiz v. Fibreboard Corp., 527 U.S. 825, 846 (1999) (quoting Hansberry v. Lee, 311 U.S. 32, 40 (1940) and Martin v. Wilks, 490 U.S. 755, 762 (1989) (additional citations omitted)). "It is universally agreed that adequate notice lies at the heart of due process.  Unless a person is adequately informed of the reasons for the denial of a legal interest, a hearing serves no purpose – and resembles more a scene from Kafka than a constitutional process." Chicago Cable Commc'ns v. Chicago Cable Comm'n, 879 F.2d 1540, 1546 (7th Cir. 1989) (internal quotation markers and citation omitted).

48.    Courts have further held that "the notice must be the best practicable, 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'. . .The notice should describe the action and the [absent parties'] rights in it." Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 811 (1985) (quoting Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306 at 314-315 (1950)).  To meet the requirements of due process, the notice must be "such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." Jones v. Flowers, 547 U.S. 220, 229 (2006) (quoting Mullane, 339 U.S. at 315)).

49.     "Notice is the cornerstone underpinning Bankruptcy Code procedure." In re
Kewanee Boiler Corp., 198 B.R. 519, 529 (Bankr. N.D. Ill. 1996) (citing Western Auto Supply
v. Savage Arms, Inc., 43 F.3d 714, 719 (1st Cir. 1994)).  "After notice and a hearing" is a defined
term under the bankruptcy code.  11 U.S.C. § 102(1).  The term "means after such notice as is
appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate
in the particular circumstances." Id.

50.     In this matter, it is undisputed that, rather than giving the Defendants notice
"reasonably calculated, under all the circumstances to apprise interested parties of the pendency
of the action" required by our Constitution, the Plaintiffs deliberately chose to conceal any notice
of the Adversary Proceeding and Complaint in order to avoid the Defendants' changing their
business relationship with the Debtors or disrupting the Debtors' plan confirmation process.  See
Preservation of Estate Claims Procedures Motion at ¶ 36-37.

51.     Recently, the Second Circuit, in its Manville IV decision, held that a party which
was not given constitutionality sufficient notice of motions and related orders could not be bound
by the terms of those orders in subsequent proceedings.

52.     One of the principal issues in Manville IV was whether the Chubb Indemnity
Insurance Company ("Chubb") was given constitutionally sufficient notice of certain motions
and orders ("1986 Orders") relating to claims against Travelers Insurance Company
("Travelers") to be bound by the terms of the 1986 Orders.  In Manville IV, Chubb was not given
actual notice of the motions and of the resulting 1986 Orders, which purported to prevent any
party from asserting claims against Travelers related to the insurance it provided to Manville.

The lack of notice in Manville occurred because Chubb was not a party to the Manville bankruptcy proceedings.  Manville IV at * 19-20.

53.    The Second Circuit held that the failure to give Chubb actual notice of the 1986 Orders and underlying motions violated Chubb's due process rights and that "Chubb is therefore not bound by the terms of the 1986 Orders."  Id.

54.    Here, the violation of the Defendants' due process rights by the Plaintiffs' deliberate refusal to give it, a defendant in an adversary proceeding, notice of the Motions seeking entry of the preservation of Estate Claims Procedure Order and the Extension Orders is far greater than the violation of Chubb's rights in the Manville case.

55.    In this case, the Defendants were known parties in interest to the Debtors, while Chubb in the Manville case was not even contemplated to be a party in interest in either the Manville bankruptcy case or the 1986 Orders.  See Manville IV at 151 ("Traveler's forth rightly acknowledged . . . that the Direct Actions and, consequently Chubb's contribution and indemnity claims were "unimaginable" at the time the 1986 Orders were entered).  Notwithstanding the fact that Chubb was not given notice of the 1986 Orders because no one could have reasonably anticipated that Chubb could have had its rights impacted by the 1986 Orders, those orders were still held to be nonbinding against Chubb due to the clear, if unintentional, violation of Chubb's due process rights.

56.    In this case, the Debtors knowingly chose not to give notice to certain parties in interest and creditors in order to continue being able to deal with important business partners and vendors without these parties having the knowledge the Debtors had filed suit against them. Indeed, the Debtors continued to fail to give any notice of the Adversary Proceeding, the

preservation of Estate Claims Procedure Order and the Extension Orders to the Defendants even after the Plan Investors failed to invest under the Plan and the Debtors had actual knowledge that a 100% Plan was highly unlikely.

57.     Therefore, under the binding authority of <u>Manville IV</u>, the Preservation of Claims Procedure Order and the Extension Orders should either be vacated or held not to be binding against the Defendants due to the Debtors' deliberate violation of the Defendants' due process rights.   The Adversary Proceeding and Complaint against Defendants should therefore be dismissed with prejudice.

### III.    THE COMPLAINT IS BARRED BY THE STATUTE OF LIMITATIONS AND SHOULD BE DISMISSED.

58.     Defendants adopt, as if fully restated herein, the arguments of MicroChip Technology Incorporated (Adversary Proceeding No. 07-02436) (a copy of which is annexed hereto as <u>Exhibit D</u>), Wagner Smith Company (Adversary Proceeding No. 07-02581) (a copy of which is annexed hereto as <u>Exhibit E</u>); Hewlett Packard (Adversary Proceeding 07-02449) (a copy of which is annexed hereto as <u>Exhibit F</u>) and any other pleading filed in the main case or in a particular adversary proceeding in these cases addressing this issue.

59.     For the foregoing reasons, the Complaint which was served on the Defendants on March 22, 2010, over two and on half years after the statute of limitations had expired, should be dismissed with prejudice, as the relief sought by the Plaintiffs is barred by the statute of limitations set forth in 11 U.S.C. § 546(a).

## IV.    THE COMPLAINT IS BARRED BY THE DOCTRINE OF LACHES.

60.    Defendants adopt, as if fully restated herein, the arguments of Hewlett Packard (Adversary Proceeding 07-02449) (a copy of which is annexed hereto as Exhibit F) and any other pleading filed in the main case or in a particular adversary proceeding in these cases addressing this issue.

61.    For the foregoing reasons, the Complaint which was not served on the Defendants until March 22, 2010, over two and one half years after the action was filed should be dismissed with prejudice for laches.

## V.    THE COMPLAINT SHOULD BE DISMISSED AS THE RELIEF REQUESTED IS BARRED BY THE DOCTRINE OF JUDICIAL ESTOPPEL.

62.    Defendants adopt, as if fully restated herein, the arguments of MicroChip Technology Incorporated (annexed hereto as Exhibit D), Wagner Smith Company (a copy of which is annexed hereto as Exhibit E); Hewlett Packard (annexed hereto as Exhibit F) and any other pleading filed in the main case or in a particular adversary proceeding in these cases addressing this issue.

63.    For the foregoing reasons, the Complaint should be dismissed with prejudice because the relief requested by the Plaintiffs is barred by the doctrine of judicial estoppel.

**VI.    THE COMPLAINT SHOULD BE DISMISSED BECAUSE THE PLAINTIFFS'
ORIGINAL CONFIRMED PLAN EXPRESSLY DID NOT PRESERVE OR
OTHERWISE RETAIN THE CAUSES OF ACTION UNDERLYING THE
COMPLAINT AGAINST DEFENDANTS.**

64.    It is well settled law that confirmation of a debtor's plan is *res judicata* as to all

issues that were, or could have been, decided in the confirmation process.  See, e.g., Sure-Snap

Corp. v. State St. Bank & Trust Co., 948 F.2d 869, 872-73 (2d Cir. 1991) (order confirming plan

of reorganization has preclusive effect under *res judicata*.)  See also In re Layo, 460 F. 3d 289,

294 (2nd Cir. 2006) (same result under Chapter 13 plan).  Accordingly, a debtor is precluded

from asserting any claims post-confirmation that are not expressly preserved in its plan.  See D

& K Props. Crystal Lake v. Mut. Life Ins. Co. of New York, 112 F.3d 257, 259 (7th Cir. 1997).

However, where the right to pursue litigation is specifically identified and expressly reserved in

writing in a plan, *res judicata* will not prevent a debtor from subsequently pursuing those claims.

Id. at 261.

65.    The majority of courts that have considered this issue have held that, for this

exception to apply, the written reservation must identify with some specificity what claims it

intends to preserve and against whom those claims are asserted.  See In re I. Appel Corporation,

104 Fed. Appx. 199 (2nd Cir. 2004 Unpublished decision) (holding that the claims at issue were

not barred by *res judicata* because "the bankruptcy court filings adequately disclosed to creditors

that certain claims against [specific parties] were being explored and that such claims if pursued,

would not be part of the bankruptcy estate") Browning v. Levy, 283 F.3d 761, 774 (6th Cir. 2002)

("[A] general reservation of rights [in a plan] does not suffice to avoid *res judicata*."); D & K,

112 F.3d at 261 ("A blanket reservation that seeks to reserve all causes of action reserves

nothing."); In re Kelley, 199 B.R. 698, 704 (9th Cir. BAP 1996) ("[E]ven a blanket reservation by

the debtor reserving 'all causes of action which the debtor may choose to institute' has been held

insufficient to prevent the application of *res judicata* to a specific action.") (internal quotations omitted).

66.    In this case, however, the Debtors did not attempt to preserve either the Complaint, Adversary Proceeding or any claims against Defendants (collectively "Anti-DSSI Claims") in the Plan.  Instead, under Section 7.24 of their Plan, the Debtors expressly provided that they <u>were not</u> retaining any causes of action against persons "arising under Sections 544, 545, 547, 548 or 553 of the Bankruptcy Code or similar state laws . . . unless specifically listed on <u>Exhibit 7.24</u>."  As noted in Exhibit 7.24, the Debtors only reserved the right to alter or amend the Plan and the Exhibits prior to the Confirmation Date.  No amendment to Exhibit 7.24 was ever filed.

67.    <u>Exhibit 7.24</u> to the Plan does not specifically list any Anti-DSSI Claims. Therefore, under the express terms of the Plan and applicable Second Circuit law, the Anti-DSSI Claims were conclusively barred by the doctrine of *res judicata* upon the confirmation of the Plan.

68.    Moreover, the Modified Plan does not change this result.  As noted above, the Anti-DSSI Claims were barred upon the entry of the Confirmation Order, as they were neither identified nor reserved in the Debtors' Plan or Disclosure Statement.  <u>See e.g.</u> <u>Sure-Snap Corp. v. State Bank & Trust Co.</u>, 948 F.2d at 872-73.  The Modified Plan did not attempt to undo or set aside the final Confirmation Order or its *res judicata* effect, but merely purported to modify it.

69.    As noted by the Bankruptcy Court for the Southern District of New York in <u>In re 401 East 89th Street Owners, Inc.</u>, 223 B.R. 75 (Bankr. S.D.N.Y. 1998), the only way the *res judicata* effect of the Confirmation Order could be eliminated is if relief from the Confirmation

Order was granted under Federal Rule of Civil Procedure 60(b), made applicable in bankruptcy cases by Federal Rule of Bankruptcy Procedure 9024.  Here, unlike 401 East, no attempt to set aside the prior order was made.  Instead, under Exhibit 7.19, the Debtors stated that they were now retaining certain adversary proceedings they had previously abandoned under the Plan and Confirmation Order.  See also In re Schachtele, 343 B.R. 661 (8th Cir. BAP 2006) (noting that res judicata arising from the confirmation of the Chapter 13 debtor's first Chapter 13 Plan barred the raising of good faith issues in objecting to an order approving second amended plan).

70.      Finally, even if a modified plan could impact the res judicata effect of an earlier confirmation order, in this case the Debtors did not seek such relief.

71.      As noted above, the Debtors admit that the language of Section 7.24 of the Plan did not retain most claims, including the Anti-DSSI Claims, under Exhibit 7.24.  The language of Section 7.19 of the Modified Plan and its accompanying Exhibit 7.19 does not change this result. Section 7.19 merely states that the Debtors are retaining the previously abandoned sealed adversary proceeding claims, including the Anti-DSSI claims.  Section 7.19 does not request or purport to change in any way the impact of the Confirmation Order had on the claims that were not retained by the Debtors because they were not specifically listed in Exhibit 7.24.  Therefore, by this language in their Modified Plan, the Debtors only retained the bones of the res judicata barred claims against the Defendants and did not bring those abandoned claims back to life.

72.      For these reasons, the Adversary Proceeding and Complaint should be dismissed with prejudice, as the claims set forth therein are barred under the doctrine of res judicata.

## CONCLUSION

For all of the foregoing reasons, Defendants respectfully request an Order (i) pursuant to Fed. R. Civ. P. 60 and Fed. R. Bankr. P. 9024, and the Due Process provisions of the United States Constitution, vacating all prior orders establishing procedures for certain adversary proceedings, including those commenced by the Plaintiffs against Defendants under 11 U.S.C. §§ 541, 544, 545, 547, 548, or 553, and extending the time to serve process for such Adversary Proceedings, (ii) pursuant to Fed. R. Civ. P. 12(b) and Fed. R. Bankr. P. 7012(b), dismissing the Adversary Proceeding with prejudice, and (iii) granting such other and further relief as the Court deems appropriate.

Dated: May 14, 2010
      Roseland, NJ

                    FOX ROTHSCHILD LLP

          By:   /s/ Richard M. Meth
               RICHARD M. METH (RM7791)
               75 Eisenhower Parkway, Suite 200
               Roseland, NJ 07068
               973-992-4800
               - and -
               100 Park Avenue, 15th Floor
               New York, NY  10017
               rmeth@foxrothschild.com

               and

               GREENEBAUM DOLL & MCDONALD PLLC
               C. R. Bowles (admitted *pro hac vice*)
               crb@gdm.com
               3500 National City Tower
               101 South Fifth Street
               Louisville, KY 40202
               (502) 589-4200

               Attorneys for Defendants DSSI and DSSI, LLC