# EXHIBIT "F"

Hearing Date and Time: May 17, 2010 at 10:00 am
Objection Deadline: April 26, 2010 at 5:00 pm

Lisa M. Schweitzer
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
(212) 225-2000

*Attorneys for Defendants Hewlett-Packard Company,*
*Hewlett-Packard Financial Services Company and*
*Hewlett-Packard Mexico, S. de. R.L. de C.V.*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------X

In re:                                              :

DELPHI CORPORATION, *et al.*,                       :

 

-----------------------------------------------------------X

DELPHI CORPORATION, *et al.*,                       :

    Plaintiffs,                 :

   v.                                 :

HEWLETT PACKARD, HEWLETT PACKARD
CO., INC., HEWLETT PACKARD COMPANY,
HEWLETT PACKARD LIMITED, HEWLETT
PACKARD MEXICO S., HEWLETT-PACKARD        :
COMPANY and HEWLETT-PACKARD
FINANCIAL SVCS.,                                    :

    Defendants.                  :

-----------------------------------------------------------X

Chapter 11
Case No. 05-44481 (RDD)


Jointly Administered


Adv. Pro. No. 07- 02449 (RDD)

## NOTICE OF HEARING ON MOTION OF HEWLETT-PACKARD
COMPANY AND AFFILIATES FOR AN ORDER DISMISSING THE
COMPLAINT WITH PREJUDICE, AND VACATING CERTAIN PRIOR
ORDERS PURSUANT TO FED. R. CIV. P. 60 AND FED. R. BANKR. P. 9024

PLEASE TAKE NOTICE that a hearing on the annexed motion ("Motion") of Hewlett-Packard Company ("HP"), Hewlett-Packard Financial Services Company ("HPFS") and Hewlett-Packard Mexico, S. de. R.L. de C.V. (together with HP and HPFS, the "HP Defendants" or "Movant") for an order of this Court: (i) dismissing, with prejudice, the Complaint, pursuant to Fed. R. Civ. P. 12(b) and Fed. R. Bankr. P. 7012(b) on the ground that it is barred by the two-year statute of limitations imposed by 11 U.S.C. § 546(a), fails to adequately plead a claim showing that the Plaintiffs are entitled to relief under Fed. R. Civ. P. 8(a) and Fed. R. Bankr. P. 7008, and fails to state a claim upon which relief can be granted to the extent that certain of the HP Defendants' agreements were assumed by the Debtors, or, in the alternative, dismissing, with prejudice, the Complaint on the grounds that it is barred by laches, judicial estoppel and res judicata; and (ii) to the extent necessary to afford complete relief, vacating, with respect to the HP Defendants, pursuant to Fed. R. Civ. P. 60 and Fed. R. Bankr. P. 9024, certain orders of this Court, including the Preservation of Estate Claims Procedures Order (as defined in the Motion) dated August 16, 2007, the Extension Orders (as defined in the Motion) dated March 28, 2008, April 30, 2008 and October 22, 2009 respectively, and the Modified Plan Confirmation Order (as defined in the Motion) dated July 30, 2009, on the grounds that such orders are void against the HP Defendants because the Extension Orders were improvidently made, as more fully described in the Motion, will be held before the Honorable Robert D. Drain, United States Bankruptcy Judge, of the United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, White Plains, New York 10601-4140 (the "Bankruptcy Court"), on May 17, 2010 at 10:00 a.m (ET) (the "Hearing").

PLEASE TAKE FURTHER NOTICE that objections to the Motion, if any, must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and Local Rules of the

Bankruptcy Court and shall be filed with the Bankruptcy Court electronically by registered users

of the Bankruptcy Court's case filing system (the User's Manual for the Electronic Case Filing

System can be found at http://www.nysb.uscourts.gov, the official website for the Bankruptcy

Court) and, by all other parties in interest, on a CD-ROM, preferably in Portable Document

Format (PDF), Word, or any other Windows-based word processing format, in either case, with a

courtesy copy delivered directly to the Chambers of the Honorable Robert D. Drain, United

States Bankruptcy Judge, United States Bankruptcy Court, 300 Quarropas Street, White Plains,

New York 10601-4140; and shall be served upon: (i) counsel to the HP Defendants, Cleary

Gottlieb Steen & Hamilton LLP, One Liberty Plaza, New York, New York 10006 (Attn: Lisa M.

Schweitzer, Esq.); (ii) the Debtors, DPH Holdings Corp., et al., 5725 Delphi Drive, Troy, MI

48098; (iii) counsel to the Debtors, Butzel Long, A Professional Corporation, 380 Madison

Avenue, 22nd Floor, New York, NY 10017 (Attn: Eric B. Fisher, Esq.) and Butzel Long, A

Professional Corporation, 150 West Jefferson, Suite 100, Detroit, MI 48226, Attn: Cynthia J.

Haffey, Esq.; and (iv) the Office of the United States Trustee for the Southern District of New

York, 33 Whitehall Street, Suite 2100, New York, New York 10004; so as to be received no later

than **April 26, 2010 at 5:00 p.m.** (ET) (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that only those objections that have been filed and

served by the Objection Deadline in accordance with the procedures herein may be considered

by the Bankruptcy Court at the Hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend the

Hearing, and failure to appear may result in relief being granted or denied upon default.

3

PLEASE TAKE FURTHER NOTICE that the Bankruptcy Court may grant the relief requested in the Motion without a hearing if no objections to the Motion are timely filed and served.

Dated: New York, New York
April 9, 2010

Respectfully submitted,

Lisa M. Schweitzer, Esq.

CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone:   (212) 225-2000
Facsimile:    (212) 225-3999

*Attorneys for Defendants Hewlett-Packard Company,*
*Hewlett-Packard Financial Services Company and*
*Hewlett-Packard Mexico, S. de. R.L. de C.V.*

4

Hearing Date and Time: May 17, 2010 at 10:00 am
Objection Deadline: April 26, 2010 at 5:00 pm

Lisa M. Schweitzer
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
(212) 225-2000

*Attorneys for Defendants Hewlett-Packard Company,*
*Hewlett-Packard Financial Services Company and*
*Hewlett-Packard Mexico, S. de. R.L. de C.V.*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X

In re:                                                      :

**DELPHI CORPORATION**, *et al.,*                            :

                                                            Chapter 11
                                                            Case No. 05-44481 (RDD)

                                                            Jointly Administered

-----------------------------------------------------------------X

**DELPHI CORPORATION**, *et al.,*                            :

                        **Plaintiffs,**                      :

                              v.                             :           Adv. Pro. No. 07- 02449 (RDD)

**HEWLETT PACKARD, HEWLETT PACKARD**                         :
**CO., INC., HEWLETT PACKARD COMPANY,**
**HEWLETT PACKARD LIMITED, HEWLETT**
**PACKARD MEXICO S., HEWLETT-PACKARD**                       :
**COMPANY and HEWLETT-PACKARD**
**FINANCIAL SVCS.,**                                         :

                        **Defendants.**                      :

-----------------------------------------------------------------X

MOTION OF HEWLETT-PACKARD COMPANY AND AFFILIATES FOR AN
ORDER DISMISSING THE COMPLAINT WITH PREJUDICE, AND VACATING CERTAIN
PRIOR ORDERS PURSUANT TO FED. R. CIV. P. 60 AND FED. R. BANKR. P. 9024

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................ iii

PRELIMINARY STATEMENT ......................................................................... 1

STATEMENT OF FACTS ................................................................................. 3

ARGUMENT ..................................................................................................... 11

   I.   THE COMPLAINT SHOULD BE DISMISSED AS BARRED BY THE
      STATUTE OF LIMITATIONS ................................................................... 11

      A.  Plaintiffs Did Not Adequately Preserve Their Claims Within The
         Statute Of Limitations ............................................................................ 13

      B.  The HP Defendants Have Been Prejudiced By The Concealment Of
         The Complaint Long After The Expiration Of The Statute Of
         Limitations .............................................................................................. 16

      C.  Plaintiffs Cannot Use Rule 7004(m) To Expand Their Substantive
         Rights ..................................................................................................... 18

   II.  THE COMPLAINT IS BARRED BY LACHES AND SHOULD BE
      DISMISSED .................................................................................................. 20

   III.  THE COMPLAINT IS BARRED BY JUDICIAL ESTOPPEL ......................... 22

   IV.  THE CLAIMS WERE NOT PROPERLY PRESERVED IN THE
       DISCLOSURE STATEMENT AND MODIFIED PLAN ................................. 23

   V.  THIS COURT'S PRIOR ORDERS SHOULD BE VACATED TO THE
      EXTENT NECESSARY TO AFFORD RELIEF .............................................. 26

      A.  The Complaint Was Improperly Filed Under Seal Pursuant To
         Section 107 Of The Bankruptcy Code ................................................... 26

      B.  There Was No Good Cause To Extend The Time For Service ............... 30

   VI.  THE COMPLAINT FAILS TO PLEAD SUFFICIENT FACTS TO
       STATE A CAUSE FOR RELIEF AND SHOULD BE DISMISSED ................ 32

VII.   THE COMPLAINT MUST BE DISMISSED FOR LACK OF
PERSONAL JURISDICTION AS TO HEWLETT-PACKARD MEXICO,
S. DE. R.L. DE C.V. ............................................................................ 34

CONCLUSION ................................................................................................ 35

## TABLE OF AUTHORITIES

Page(s)

**Rules and Statutes**

11 U.S.C. §107(a) (2010) .................................................................................... 27

11 U.S.C. §107(b) (2010) ................................................................................... 27-28

11 U.S.C. § 546(a) .............................................................................................. 11

11 U.S.C. § 1125 ................................................................................................. 24

28 U.S.C. § 2075 .......................................................................................... 12, 19, 31

Fed. R. Bankr. P. 7004(m)(1) ............................................................................ 30

Fed. R. Civ. P. 60(b)........................................................................................... 26

**Cases**

Adelphia Recovery Trust v. Bank of Amer., N.A.,
390 B.R. 80 (S.D.N.Y. 2008) ............................................................................. 19

AIG Managed Mkt. Neutral Fund v. Askin Capital Mgmt., L.P.,
197 F.R.D. 104 (S.D.N.Y. 2000)........................................................................ 30

Ashcroft v. Iqbal,
556 U.S. __, 129 S. Ct. 1937 (2009) ................................................................. 32, 33

Bank of Cape Verde v. Bronson,
167 F.R.D. 370 (S.D.N.Y. 1996)........................................................................ 12

Bell Atlantic Corp. v. Twombly,
550 U.S. 544 (2007) ........................................................................................... 32-33

Board of Regents v. Tomanio,
446 U.S. 478 (1980) ........................................................................................... 18

Cohen v. Stokes Elec. Supply (In re Submicron Sys. Corp.),
Civ. No. 03-230-SLR, 2004 U.S. Dist. LEXIS 19170 (D. Del. Sept. 21, 2004)............... 31, 32

Crown Cork & Seal Co. v. Parker,
462 U.S. 345 (1983) ........................................................................................... 17

Page(s)

Diversified Hospitality Group, Inc. v. Carson Pirie Scott & Co.,
No. 90 CIV. 2957 (WK), 1991 WL 35953 (S.D.N.Y. Mar. 8, 1991)................................. 13

E. Refractories Co., v. Forty Eight Insulations, Inc.,
187 F.R.D. 503 (S.D.N.Y. 1999)................................................................................ 30-31

Family Golf Ctrs., Inc. v. Acushnet Co.
(In re Randall's Island Family Golf Ctrs., Inc.),
288 B.R. 701 (Bankr. S.D.N.Y. 2003)......................................................................... 13

Fleet Nat'l Bank v. Gray (In re Bankvest Capital Corp.),
375 F.3d 51 (1st Cir. 2004)......................................................................................... 29

Galerie Des Monnaies of Geneva, Ltd. v. Deutsche Bank, N.Y. Branch
(In re Galerie Des Monnaies of Geneva, Ltd.),
55 B.R. 253 (Bankr. S.D.N.Y. 1985), aff'd, 62 B.R. 224 (S.D.N.Y. 1986)...................... 22, 23

Gitto v. Worcester Telegram & Gazette Corp. (In re Gitto Global Corp.),
422 F.3d 1 (1st Cir. 2005)............................................................................................ 27

Global Crossing Estate Representative v. Alta Partners Holdings LDC
(In re Global Crossing, Ltd.),
385 B.R. 52 (S.D.N.Y. 2008) ......................................................................... 19, 31, 32

Gucci v. Sinatra (In re Gucci),
197 Fed. Appx. 58 (2d Cir. 2006)................................................................................ 20

In re Superior Toy & Mfg. Co., Inc.,
78 F.3d 1169 (7th Cir. 1996) ...................................................................................... 34

In re Allou Distribs., Inc.,
387 B.R. 365 (Bankr. E.D.N.Y. 2008) ........................................................................ 33

In re Amer. Preferred Prescription, Inc.,
266 B.R. 273 (E.D.N.Y. 2000) ................................................................................... 25

In re Caremerica, Inc.,
409 B.R. 737 (Bankr. E.D.N.C. 2009)......................................................................... 33

In re Cornwall,
9 Blatchf. 114, 6 F. Cas. 586 (C.C.D. Conn. Sept. Term 1871) ................................. 13

In re Food Mgmt. Group,
359 B.R. 543 (Bankr. S.D.N.Y. 2007)................................................................ 26-27, 28

Page (s)

In re Hamilton,
179 B.R. 749 (Bankr. S.D. Ga. 1995) .................................................................... 29

In re Serv. Merch.,
Case No. 399-02649 (Bankr. M.D. Tenn. Feb. 27, 2001) ...................................... 29

In re Venture Mortgage Fund,
245 B.R. 460 (Bankr. S.D.N.Y. 2000), aff'd, 282 F.3d 185 (2d Cir. 2002)...................... 22

Kunica v. St. Jean Fin., Inc.,
233 B.R. 46 (S.D.N.Y., 1999) .......................................................................... 23-25

Moll v. Parker (In re Parker),
Case No. 07-30697, Adv. Proc. No. 07-3037,
2007 Bankr. LEXIS 3297 (Bankr. E.D. Tenn. Sept. 25, 2007)......................................... 31

Morse v. Perrotta (In re Perrotta),
406 B.R. 1 (Bankr. D.N.H. 2009)................................................................. 12, 19, 31

Mused v. U.S. Dep't of Agric. Food and Nutrition Serv.,
169 F.R.D. 28 (W.D.N.Y. 1996) ........................................................................ 16

New Hampshire v. Maine,
532 U.S. 742 (2001) ........................................................................................ 22

Order of R.R. Telegraphers v. Ry Express Agency, Inc.,
321 U.S. 342 (1944) ........................................................................................ 17

Picard v. Cohmad Sec. Corp. (In re Bernard L. Madoff Inv. Sec.),
418 B.R. 75 (Bankr. S.D.N.Y. 2009)..................................................................... 35

Rapf v. Suffolk County,
755 F.2d 282 (2d Cir. 1985) .............................................................................. 20

Rosenshein v. Kleban,
918 F.Supp. 98 (S.D.N.Y. 1996) ..................................................................... 22, 23

Teligent v. Cigna Healthcare, Inc. (In re Teligent, Inc.),
326 B.R. 219 (Bankr. S.D.N.Y. 2004)................................................................... 34

United States v. Kubrick,
444 U.S. 111 (1979) ........................................................................................ 18

Page (s)

Video Software Dealers Ass'n v. Orion Pictures Corp.,
(In re Orion Pictures Corp.),
21 F.3d 24 (2d Cir. 1994) ............................................................................ 27, 28

Westland Oil Dev. Corp. v. MCorp Mgmt. Solutions, Inc.,
157 B.R. 100 (S. D. Tex. 1993) .................................................................... 25

## Other Authorities

1 Horace G. Wood, A TREATISE ON THE LIMITATION OF ACTIONS 8-9 (4th ed.1916) ...... 18

Hewlett-Packard Company ("HP"), Hewlett-Packard Financial Services Company ("HPFS") and Hewlett-Packard Mexico, S. de. R.L. de C.V. (together with HP and HPFS, the "HP Defendants"), by and through their undersigned counsel, respectfully allege:

## PRELIMINARY STATEMENT

1.    At great prejudice to the rights of the HP Defendants, Delphi Corporation and its affiliated chapter 11 reorganized debtors (the "Plaintiffs") seek to prosecute a preference action based on transactions that allegedly occurred five years ago, and a complaint filed (but not disclosed to the defendants) over two and one-half years ago. The Plaintiffs purport to do so based on a series of orders obtained from the Court extending their time to serve hundreds of unidentified complaints, which complaints and related adversary dockets were sealed throughout at the debtors' specific request. Whether or not the Plaintiffs would or should have been authorized to pursue this action at the time they initially sought relief from the Court in 2007, the reasons the debtors then articulated for sealing the dockets and delaying prosecution of the actions — the existence of a 100 cent plan that would obviate the claims and protection of the debtors' business relationships — have long since fallen away.

2.    Federal rules permitting extensions of time to serve complaints and the sealing of documents in certain limited circumstances are intended to give debtors some latitude in the protection of their assets, but the rules are not boundless and certainly are not intended to more than double the two year statute of limitations for pursuing avoidance actions provided under section 546(a). To hold otherwise would be to allow debtors to extract value from their vendors and other creditors and, as in this case, even solicit votes and confirm plans of reorganization all without being held accountable for the consequences of their decision to pursue litigation against these parties.

3.    Notably, even after the passage of five years since the debtors' commencement of

their bankruptcy, and at least two and one-half years after the debtors first purported to identify

potential preference claims against the HP Defendants, the Plaintiffs seek to prosecute a

Complaint that is so conclusory it fails on its face under even the most liberal pleading standard

— failing to identify the specific transferor (rather than "the Plaintiffs") or transferee (rather than

"the Defendants") for any given alleged preferential transfer.  The Plaintiffs also fail to allege

any facts surrounding the purported transfers, much less facts which could support this Court's

jurisdiction over Hewlett-Packard Mexico, S. de. R.L. de C.V., a foreign company.  To force the

HP Defendants to defend against such inartfully pled claims (which likely ultimately lack any

merit) after the passage of several years would wholly vitiate the purpose of having a statute of

limitations and result in severe prejudice to the defendants.

4.    Consequently, the HP Defendants seek an order of this Court: (i) dismissing, with

prejudice, the Complaint, pursuant to Fed. R. Civ. P. 12(b) and Fed. R. Bankr. P. 7012(b) on the

ground that it is barred by the two-year statute of limitations imposed by 11 U.S.C. § 546(a),

fails to adequately plead a claim showing that the Plaintiffs are entitled to relief under Fed. R.

Civ. P. 8(a) and Fed. R. Bankr. P. 7008, and fails to state a claim upon which relief can be

granted to the extent that certain of the HP Defendants' agreements were assumed by the

Debtors, or, in the alternative, dismissing, with prejudice, the Complaint on the grounds that it is

barred by laches, judicial estoppel and res judicata; and (ii) to the extent necessary to afford

complete relief, vacating, with respect to the HP Defendants, pursuant to Fed. R. Civ. P. 60 and

Fed. R. Bankr. P. 9024, certain orders of this Court, including the Preservation of Estate Claims

Procedures Order (as defined below) dated August 16, 2007, the Extension Orders (as defined

below) dated March 28, 2008, April 30, 2008 and October 22, 2009 respectively, and the

2

Modified Plan Confirmation Order (as defined below) dated July 30, 2009, on the grounds that such orders are void against the HP Defendants because the orders were improvidently made.

## STATEMENT OF FACTS[1]

5.    On October 8, 2005, Delphi Corporation ("Delphi") and certain of its subsidiaries (the "Initial Filers") each filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). On October 14, 2005, three additional U.S. subsidiaries of Delphi (together with the Initial Filers, the "Debtors") filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. (Complaint, dated September 26, 2007, annexed hereto as Exhibit A (the "Complaint"), ¶ 1).

6.    The two-year statute of limitations for the Debtors to bring avoidance actions against the HP Defendants began to run upon their respective petition dates, in accordance with section 546(a) of the Bankruptcy Code.

7.    Both prior and subsequent to the commencement of the Debtors' bankruptcy cases, HP and certain of its affiliates have provided the Debtors and their affiliates with information technology outsourcing services, and entered into other transactions with the Debtors.

8.    On July 11, 2006, HP and certain of its affiliates filed proofs of claim numbers 9320, 9321, 9322, 9323, 9324, 9325, 9326, 9327, 9328, 9329, 9330, 9331, 9332, 9333, 9334, 9335, 9336, 9337, 9338, 9339, 9340, 9341, 9342, 9343, 9344, 9345, 9346, 9347, 9348, 9349, 9350, 9351, 9352, 9353, 9354, 9355, 9356, 9357, 9358, 9359, 9360 and 9361 in the Debtors' bankruptcy proceedings. Subsequently, HP filed an administrative priority claim number 18486 on July 13, 2009. HPFS filed proof of claim number 10683 in the Debtors' bankruptcy

---

[1]    A timeline summarizing certain of the relevant events is attached as an Appendix hereto.

3

proceedings on July 26, 2006, as well as an administrative priority claim number 18143 on July

10, 2009. Also in 2006, HP and the Debtors negotiated a new Master Services Agreement

together with Companion Agreements (together, the "HP Agreement") to govern the terms of the

server systems hosting provided by HP. On October 23, 2006, the Court entered an order

authorizing the Debtors to enter into and perform under the HP agreement. (Order Under 11

U.S.C. § 363(b) and Fed. R. Bankr. P. 6004 Authorizing Debtors to Enter Into Information

Technology Infrastructure Outsourcing Agreements, annexed hereto as Exhibit B, Docket No.

5378).[2] The HP Agreement (as amended from time to time) continues to govern HP's supplier

relationship with the reorganized debtors today.

       9.     On or about July 5, 2007, the Debtors filed a notice that they intended to assume

HP Purchase Order No. 22120 (the "Purchase Order") in connection with the sale of certain

assets to Umicore. (Notice of Assumption and/or Assignment of Executory Contract or

Unexpired Lease to Purchasers in Connection with Sale of Catalyst Business, annexed hereto as

Exhibit C, Docket No. 8487). The Purchase Order was assumed and assigned to Umicore.

      10.    On September 6, 2007, a plan of reorganization was filed, which proposed the

payment in full of the Debtors' unsecured creditors. (Chapter 11 Plan Joint Plan Of

Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-

Possession, Docket No. 9263). On August 6, 2007, two years into the bankruptcy, the Debtors

filed a motion seeking entry of an order for, among other things, the establishment of procedures

to govern certain adversary proceedings, including those commenced by the Debtors under

Bankruptcy Code §§ 541, 544, 545, 547, 548 or 553 (the "Preservation of Estate Claims

---

[2]    All docket citations are to In re Delphi Corp., et al, Case No. 05-44481 (RDD), (Bankr. S.D.N.Y. filed Sept. 28, 2007).

Procedures Motion"). (Preservation of Estate Claims Procedures Motion, annexed hereto as

Exhibit D, Docket No. 8905). In relevant part, the procedures included: (i) an extension of time

beyond the initial 120-day period to serve certain adversary summonses and complaints pursuant

to Fed. R. Civ. P. 4(m), made applicable by Fed. R. Bankr. P. 7004(m)(1); (ii) a stay of the

applicable adversary proceedings until service of process was effected; and (iii) permission for

the Debtors to file the complaints under seal. (Id. ¶¶ 33-38). The procedures also sought

authority for the Debtors to abandon certain potential avoidance claims including preference

claims below $250,000 in value, certain classes of preference claims such as claims against

foreign vendors, and claims where valid defenses exist (where in each case only the category of

claims, rather than the specific potential defendants, was identified). (Id. ¶ 17). The Debtors

also sought authority to enter into tolling agreements with counterparties in their discretion.

(Id.).

      11.    The Debtors purportedly sought the procedures to preserve "the status quo," and

"potentially valuable assets without disrupting the plan process or existing business relationships

prematurely or prejudicing the rights of any defendants," as well as to "avoid having to force all

potential defendants to retain counsel to defend against adversary proceedings when, in fact,

most of them likely will be resolved by a reorganization plan and never pursued." (Id. ¶¶ 33-34).

      12.    In addition, the Debtors sought to file the adversary proceeding complaints under

seal in order to "avoid unnecessarily alarming potential defendants," and because the "Debtors

have worked to preserve and repair their business relationship with many of the potential

defendants during these cases and have negotiated or regained favorable credit terms with many suppliers and are continuing to do so." (Id. ¶ 37).[3]

13.    On August 16, 2007, this Court entered an order granting the relief requested in the Preservation of Estate Claims Procedures Motion (the "Preservation of Estate Claims Procedures Order"). Among other things, the order extended the Debtors' deadline to serve adversary proceeding summonses and complaints until March 31, 2008, authorized the complaints to be filed under seal, and authorized the Debtors to abandon other avoidance actions. (Preservation of Estate Claims Procedures Order, annexed hereto as Exhibit E, Docket No. 9105, ¶¶ 7-10).

14.    On September 26, 2007, the Debtors filed the Complaint in this adversary proceeding (the "Adversary Proceeding") under seal with the Clerk. The Complaint seeks to recover, pursuant to sections 547 and 550 of the Bankruptcy Code, alleged preferential transfers made to HP and its affiliates in the aggregate amount of $6,758,951.22. (Ex. A, ¶ 3). The Debtors did not serve any notice to the HP Defendants related to the filing of the Complaint against them.

15.    The statute of limitations for commencing avoidance actions pursuant to Bankruptcy Code §§ 544, 545, 547, 548 or 553 expired on or before October 14, 2007. (11 U.S.C. § 546(a)).

16.    On or about December 10, 2007, the Debtors filed their First Amended Joint Plan of Reorganization (the "Plan"), (Docket No. 11386), which Plan was confirmed by order of the

---

[3]    HP and HPFS were included on the service list for the extension motion, as they had filed a notice of appearance in the case; however, defendant Hewlett-Packard Mexico, S. de. R.L. de C.V. was not and in any event the Debtors did not make any effort in the motion to notify creditors they were targets for potential avoidance actions, instead focusing the motion on the various and sundry reasons that the Debtors did not intend to prosecute most potential avoidance claims.

Court dated January 25, 2008. (Findings of Fact, Conclusions of Law, and Order under 11

U.S.C. §§ 1129(a) and (b) and Fed. R. Bankr. P. 3020 confirming First Amended Joint Plan of

Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors in-Possession,

as Modified, dated January 25, 2008 (the "Confirmation Order"), annexed hereto as Exhibit F,

Docket No. 12359). The Plan, as confirmed, provided for the payment in full of unsecured

creditors of the Debtors. Exhibit 7.24 to the Plan, which set forth the actions the Debtors sought

to retain under the Plan, notably did not contain any reference to the HP Defendants or the

Complaint. Plan Exhibit 7.24, annexed hereto as Exhibit G.

17.     By motion dated February 28, 2008 (the "February 2008 Extension Motion"), the

Debtors sought a further two month extension of the deadline under Fed. R. Civ. P. 4(m), by

which the Debtors would be required to serve process for certain avoidance actions, to May 31,

2008, or almost eight months after the statute of limitations expired. The stated purpose for this

extension was to "enable the Debtors to fulfill their fiduciary responsibility to preserve valuable

estate assets in a manner that would not unnecessarily disrupt the emergence process or the

Debtors' current business relationships with potential defendants that are necessary to the

Debtors' ongoing operations," as well as to reduce the "administrative and economic burdens" of

the adversary proceedings on the Debtors, the Court, and the defendants. (February 2008

Extension Motion, annexed hereto as Exhibit H, Docket No. 12922, ¶ 21). The Debtors also

reaffirmed in their motion that under the Plan, they would "not retain any of the causes of action

asserted in the [a]dversary [p]roceedings [filed under seal] except those specifically listed on

Exhibit 7.24 to the Plan." (Id. ¶ 17). In fact, the Debtors explicitly stated that of the claims

listed on Exhibit 7.24 to the Plan, only the claims relating to Laneko Engineering Co., Wachovia

Bank, National Association, Laneko Engineering Co. Inc., and their affiliates and subsidiaries

7

were subject to the Preservation of Estate Claims Procedures Order. (Id. ¶ 17 n.4). On March

28, 2008, the Court granted the extension requested in the motion (the "March 2008 Extension

Order"). (March 2008 Extension Order, annexed hereto as Exhibit I, Docket No. 13277, ¶ 2.)

18.     By motion dated April 10, 2008 (the "April 2008 Extension Motion"), the Debtors

sought a third extension of the service deadline. In that motion, the Debtors noted that they had

confirmed the Plan and were ready to emerge from bankruptcy, but that disputes existed with

their plan investors. (April 2008 Extension Motion, annexed hereto as Exhibit J, Docket No.

13361, ¶ 14). The Debtors sought to further extend the deadline to serve process to preserve

value "in a manner that would not unnecessarily disrupt the emergence process or the Debtors'

current business relationships with potential defendants that are necessary to the Debtors'

ongoing operations." (Id. ¶ 22). The Debtors further asserted that they and the defendants

should not be required to spend resources on the adversary proceedings when "most of the

Adversary Proceedings will not be prosecuted if the Plan were to become effective and likely

will not be prosecuted under any modified plan." (Id.).

19.     In the April 2008 Extension Motion, the Debtors sought to extend the deadline to

serve the adversary complaints until 30 days after the substantial consummation of the Debtors'

plan — effectively extending the statute of limitations indefinitely. (Id. ¶ 19.) The stated

purpose for this extension was identical to the arguments set forth in the February 2008

Extension Motion. (Id. ¶ 22). On April 30, 2008, the Court granted the extension requested in

the motion (the "April 2008 Extension Order"). (April 2008 Extension Order, annexed hereto as

Exhibit K, Docket No. 13484, ¶ 2.)

20.     On October 2, 2009 — more than two years after the Complaint was filed under

seal — the Debtors filed another motion to extend the deadline for service of process for the

8

fourth time, until 180 days after substantial consummation of the Debtors' plan (the "October 2009 Extension Motion" and together with the February 2008 Extension Motion and April 2008 Extension Motion, the "Extension Motions"). (October 2009 Extension Motion, annexed hereto as Exhibit L, Docket No. 18952, ¶ 16.). The Debtors stated that this further extension was necessary because they now anticipated pursuing 177 of the adversary proceedings filed under seal, not five proceedings as they had originally indicated. The Debtors asserted that the service deadline tied to 30 days after substantial consummation of the Modified Plan was not sufficient time to determine whether to pursue such retained adversary proceedings because they needed to "assess the ongoing relationship with certain defendants and whether events since initiating the [a]dversary [p]roceedings have impacted the Debtors' estimated recoveries." (Id. ¶ 17). The Debtors further stated that an extension "would reduce the administrative and economic burdens of the [retained adversary proceedings] on the Debtors and the potential defendants." (Id. ¶ 19). On October 22, 2009, the Court granted the extension requested in the motion (the "October 2009 Extension Order," and together with the March 2008 Extension Order and the April 2008 Extension Order, the "Extension Orders"). (October 2009 Extension Order, annexed hereto as Exhibit M, Docket No. 18999, ¶ 2). The Debtors did not seek to unseal the dockets of these 177 adversary proceedings or otherwise disclose the identity of the named defendants.

21.     On October 3, 2008, the Debtors filed a Motion for Order (I) Approving Modifications To Debtors' First Amended Plan Of Reorganization (As Modified) And Related Disclosures And Voting Procedures And (II) Setting Final Hearing Date To Consider Modifications To Confirmed First Amended Plan Of Reorganization, annexed hereto as Exhibit N, Docket No. 14310, which sought approval of changes to the Plan that provided for substantially lower recoveries to the Debtors' unsecured creditors. On June 16, 2009, the

9

Debtors filed a First Amended Joint Plan of Reorganization of Delphi Corporation and Certain

Affiliates, Debtors, and Debtors-In-Possession (As Modified), Docket No. 17030, (the "Modified

Plan"). On July 2, 2009, after the deadline to commence solicitation votes on the Modified Plan

passed, the Debtors filed the Exhibits to the Modified Plan. Docket No. 17557. These Exhibits

included Exhibit 7.19, which listed retained causes of action, including certain avoidance actions

listed only by adversary case number, and not by defendant name, even though all such

complaints and dockets had been sealed at the Debtors' request. (Modified Plan, Ex. 7.19,

annexed hereto as Exhibit O, Docket No. 17557).

　　　　22.　　On July 30, 2009, the Court entered an order approving the Modified Plan (the

"Modified Plan Confirmation Order"). (Notice of (A) Order Approving Modifications to First

Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and

Debtors-in-Possession and (B) Occurrence of Effective Date, dated October 6, 2009, annexed

hereto as Exhibit P, Docket No. 18958, ¶ 2). The Modified Plan became effective on October 6,

2009. (Id. ¶ 2).

　　　　23.　　In addition, pursuant to the Modified Plan, the Debtors assumed a certain lease

with HPFS, number 4126-66250-09-09. (See Ex. P, Notice of (A) Order Approving

Modifications to First Amended Joint Plan of Reorganization of Delphi Corporation and Certain

Affiliates, Debtors and Debtors-in-Possession and (B) Occurrence of Effective Date, dated

October 6, 2009, ¶ 8). In addition to the assumed lease, the Debtors also earlier exercised a

contractual right to buy-out certain other leases, including lease numbers 41250A, 41250B,

4126-66250-05, 4126-66250-06, 4126-66250-07, and 4126-66250-08. Exercise of this buy-out

option required the Debtors to pay HPFS in full for any and all amounts outstanding under the

agreements plus the residual value in exchange for title to the equipment. Together these leases

constituted the only direct agreements between HPFS and the Debtors.

24.    The Complaint was unsealed and a summons was issued in this action on March

12, 2010, almost two and a half years after the Complaint was filed and the statute of limitations

expired. The Complaint has not been served on defendant Hewlett-Packard Mexico, S. de. R.L.

de C.V. (a Mexican entity).[4]

ARGUMENT

## I. THE COMPLAINT SHOULD BE DISMISSED AS BARRED BY THE STATUTE OF LIMITATIONS.

25.    While the Debtors have sought to preserve a free and indefinite option to bring

avoidance claims against their vendors, such claims must be barred given the passage of several

years since the statute of limitations expired.

26.    Section 546(a) of the Bankruptcy Code sets forth a clear statute of limitations for

bringing avoidance actions:

> An action or proceeding under section 544, 545, 547, 548, or 553 of
> this title may not be commenced after the earlier of – (1) the later of –
> (A) 2 years after the entry of the order for relief; or (B) 1 year after the
> appointment or election of the first trustee under section 702, 1104,
> 1163, 1202, or 1302 of this title if such appointment or such election
> occurs before the expiration of the period specified in subparagraph
> (A); or (2) the time the case is closed or dismissed.

11 U.S.C. § 546(a).

27.    The deadline for the Debtors to commence an adversary proceeding against the

HP Defendants on account of allegedly avoidable preference payments expired on or before

---

[4]    The Debtors have sought a further extension of time to effectuate service on Hewlett-Packard Mexico, S. de.
R.L. de C.V. (Emergency Motion for Order Extending Deadline to Serve Process for Certain Avoidance
Actions, Adv. Proceeding, annexed hereto as Exhibit Q).

11

October 14, 2007. The HP Defendants were not served with the Complaint until almost two and a half years later.

28.    Federal Rule of Civil Procedure 4(m), as made applicable by Fed. R. Bank. P. 7004(m), provides that a court may dismiss a complaint that has not been served within 120 days after the complaint is filed, and that a plaintiff can obtain an extension of the time to serve the complaint for "good cause shown."

29.    In this case, the Debtors sought multiple extensions of their time to serve process — including, in the February 2008 Extension Motion, an extension for an indefinite period of time tied to an event (substantial consummation of a plan) largely in their own control. Most significantly, while their early requests for extensions were of limited duration (approximately two months each) and based on a defined rationale (the intention to not prosecute avoidance actions in the face of a 100 cent plan expected to become effective shortly) the subsequent extensions lacked either this moderation or purpose. During this extended period of delay, the Debtors were not hindered by any inability to complete service of the Complaint or a continued belief (especially after filing the Modified Plan) that they would abandon the Complaint as obviated by a full payment plan. During the last several years, the Debtors also were not in the midst of discussions with the HP Defendants regarding the potential avoidance claims, which they deliberately chose not to disclose to the HP Defendants. Cf. Bank of Cape Verde v. Bronson, 167 F.R.D. 370, 371-72 (S.D.N.Y. 1996) (relied upon by the Debtors, where the parties sought to settle the potential claims prior to service of the complaint).[5] It would

---

[5]    As explained at ¶ 43, infra, procedural rules cannot be used to enlarge substantive rights. 28 U.S.C. § 2075; see also Morse v. Perrotta (In re Perrotta), 406 B.R. 1, 8 (Bankr. D.N.H. 2009).

12

eviscerate the purpose of a statute of limitations to allow this action to proceed at this late date given these facts.

A.    **Plaintiffs Did Not Adequately Preserve Their Claims Within The Statute Of Limitations.**

30.    Statutes of limitation, such as the two year limitations period set forth in Bankruptcy Code Section 546(a), are statutes of repose, "'enacted upon the presumption, that one having a well-founded claim will not delay enforcing it beyond a reasonable time, if he has the power to sue.'" In re Cornwall, 9 Blatchf. 114, 6 F. Cas. 586, 591 (C.C.D. Conn. Sept. Term 1871) (citation omitted). Statutes of repose are intended to give plaintiffs notice of the time within which they may prosecute legal claims and to alert potential defendants of the time beyond which their exposure to liability ceases. See Diversified Hospitality Group, Inc. v. Carson Pirie Scott & Co., No. 90 CIV. 2957 (WK), 1991 WL 35953, at *5 (S.D.N.Y. Mar. 8, 1991).

31.    A plaintiff only may overcome a statute of repose where "the interests of justice require vindication of the plaintiff's rights." Family Golf Ctrs., Inc. v. Acushnet Co. (In re Randall's Island Family Golf Ctrs., Inc.), 288 B.R. 701, 705 (Bankr. S.D.N.Y. 2003). Courts have limited a plaintiff's ability to pursue actions beyond the time period permitted under a statute of repose to circumstances where the plaintiff has not slept on its rights, has commenced a timely action in a court of competent jurisdiction, the particular defect in the complaint is waivable and frequently waived, and the defendant "'*could not have relied upon the policy of repose embodied in the limitation statute, for it was aware that [the plaintiff] was actively pursuing his . . . remedy.*'" Id. (quoting Burnett v. N.Y. Cent. R.R. Co., 380 U.S. 424, 429-60 (1965)) (emphasis added) (alteration in original).

13

32.     In the instant case, it would be unfair and inappropriate to permit the Debtors to bypass the statute of limitations through their efforts to postpone the service of the Complaint in a manner that would effectively more than double the limitations period merely to convenience the Debtors. The passage of time is not attributable to the curing of a mere procedural defect or the like. Rather, the Debtors filed suit against the HP Defendants in 2007 under seal without even attempting to provide the HP Defendants particularized notice of their intention to do so, and waited to serve the Complaint until after the statute of limitations had passed twice over.

33.     Not only were the HP Defendants unaware that a complaint had been filed against them, but every indication in the various pleadings suggested the opposite. The original Preservation of Estate Claims Procedure Motion did not merely seek an extension of time for the service of sealed complaints against unidentified defendants, it also sought to abandon several classes of preference claims such as for transfers for less than $250,000, and as against foreign vendors (where Hewlett-Packard Mexico, S. de. R.L. de C.V. is a foreign company based in Mexico). (Ex. D. Preservation of Estate Claims Procedures Motion, ¶¶ 26, 30). The Debtors also stated their intention to abandon claims where "valid defenses exist." (Id. ¶ 30).

34.     The February 2008 Extension Motion — filed while the Debtors' 100 cent Plan was pending and intended to bridge the gap until the Debtors' imminent emergence from bankruptcy — went further to specify that only claims relating to a limited number of defendants identified in Exhibit 7.24 to the Plan, i.e. Laneko Engineering Co., Wachovia Bank, National Association, Laneko Engineering Co. Inc and their affiliates and subsidiaries, are subject to the Preservation of Claims Procedure Order." (Ex. H, February 2008 Extension Motion, ¶ 17, n.4). All the while the Debtors emphasized the importance of their business relationships and their desire to not prejudice or burden their vendors through having to face lawsuits the Debtors did

14

not expect to pursue. The HP Defendants had the right to take the Debtors' motion papers at
face value.

35.    Having lulled the HP Defendants, as well as other creditors, into a false sense of
comfort through these two short extensions, the Debtors then overreached by seeking an
extension of the service deadline for an indefinite period of time (until substantial consummation
of their reorganization plan) that, as implemented by the Debtors, lost sight of the purpose of
both their earlier motions and Rule 4(m) itself. In the April 2008 Extension Motion, the Debtors
acknowledged a pending dispute with their plan investors but sought to extend the service
deadline based on their representation that "most of the Adversary Proceedings will not be
prosecuted if the Plan were to become effective and likely will not be prosecuted under any
modified plan." (Ex. J, April 2008 Extension Motion, ¶ 22) (emphasis added). The Debtors
similarly expressed a desire to not "unnecessarily disrupt" their "current business relationships
with potential defendants that are necessary to the Debtors' ongoing operations." Id. Unknown
to the HP Defendants, these grounds for the motion were apparently inapplicable to them even
though HP had entered into a material and ongoing master services agreement with the Debtors
over one year earlier and the HPFS contracts were bought out or assumed.

36.    As the facts changed and the original motivations for the extensions — a 100 cent
plan and the need to protect business relationships — either fell away or became disingenuous,
the Debtors did not make any effort to pursue the avoidance actions. Even after filing their
amended plan documents and years later, when the Debtors knew they would be suing 177
defendants and not just the five noted in their original pleadings, and expected to emerge under a
plan providing for substantially lower creditor recoveries, the Debtors did not unseal the dockets,
and instead continued to seek a further extension based on a purported need to assess their

"existing business relationships with potential defendants." (Ex. D, Preservation of Estate Claims Procedures Motion, ¶ 18). Such explanations were disingenuous at best in the case of the HP Defendants with whom such business relationships were clearly defined and no further assessment was required. Indeed such business relationships continue to this day and the HP Defendants continue to provide services to the reorganized debtors. Thus, these reasons for extending the time against the HP Defendants cannot serve as basis for extending the statute of limitations against defendants who were left purposefully unaware that they were targets all along, and in fact, given the proffered reasons for such extensions, the HP Defendants would have had no reason to think they were potential defendants in one of the sealed actions.

37.     While courts prefer to decide cases on the merits where possible, the procedural rules would be meaningless if parties were allowed to disregard them for their own convenience. Consequently, cases must sometimes be finally determined on procedural grounds rather than on their substantive merits. Mused v. U.S. Dep't of Agric. Food and Nutrition Serv., 169 F.R.D. 28, 35 (W.D.N.Y. 1996). The Debtors had ample opportunity for more than two and a half years to alert the HP Defendants as to the existence of the Complaint and chose to conceal it at every turn. There is no set of circumstances under which such tactics should be rewarded by allowing this suit to proceed.

**B.     The HP Defendants Have Been Prejudiced By The Concealment Of The Complaint Long After The Expiration Of The Statute Of Limitations.**

38.     The Debtors have failed to acknowledge that the passage of time has improved their litigation position at the expense of the unknowing defendants. Indeed, they actually asserted that the procedures extending the relevant service deadlines would not "prejudice the potential defendants." (Ex. D, Preservation of Estate Claims Procedures Motion, ¶ 48). In fact, by both sealing the Complaint and not disclosing their intention to bring these claims, the

16

Plaintiffs are forcing the HP Defendants to defend a stale claim with one hand tied behind their

backs, relying on witnesses who, if still available, have memories which likely have faded, and

whatever documents remain preserved by all parties. Given that defending against a preference

action frequently requires defendants to raise statutory affirmative defenses for which they bear

the burden of proof, the age of a claim is particularly important in these circumstances.[6]

39.    Sealing the Complaint and waiting two and a half years to serve it on the HP

Defendants is no different than if the Plaintiffs filed the Complaint long past the expiration of the

statute of limitations, because prior to service the HP Defendants were unaware of the existence

of the Complaint, the Plaintiffs' intent to prosecute it and the nature of the specific claims

(however poorly pled). The U.S. Supreme Court has directly acknowledged the importance of a

limitations period to a defendant, stating: "Limitations periods are intended to put defendants on

notice of adverse claims." Crown Cork & Seal Co. v. Parker, 462 U.S. 345, 352 (1983). Statutes

of limitations are not intended merely to put a court on *ex parte* notice of a claim by one party

against another, as was the case here. Rather, they are essential to the fundamental due process

right of a party to defend itself against a legal action. Proper notice is essential to a defendant to

prevent stale claims from being brought when evidence is lost and witnesses' memories are

faded and to provide defendants with certainty of the time limit by which claims must be filed.

See, e.g., Order of R.R. Telegraphers v. Ry Express Agency, Inc., 321 U.S. 342, 348-49 (1944)

("Statutes of limitation . . . are designed to promote justice by preventing surprises through the

revival of claims that have been allowed to slumber until evidence has been lost, memories have

---

[6]    Moreover, given the passage of time, the HP Defendants would be doubly prejudiced if the Debtors seek to
press a claim for prejudgment interest from the date of the Complaint, as their Complaint asserts.

faded, and witnesses have disappeared."). If a defendant is not provided with notice that a claim

has been filed against it, a statute of limitations is meaningless.

40.    Congress has weighed the benefits to an estate from prosecuting an avoidance

action against the harm to a defendant of fighting against a stale claim, and expressly chose to

impose a two-year statute of limitations on avoidance actions. "The process of discovery and

trial which results in the finding of ultimate facts for or against the plaintiff by the judge or jury

is obviously more reliable if the witness testimony in question is relatively fresh. Thus in the

judgment of most legislatures and courts, there comes a point at which the delay of a plaintiff in

asserting a claim is sufficiently likely either to impair the accuracy of the fact-finding process or

to upset settled expectations that a substantive claim will be barred without respect to whether it

is meritorious." Board of Regents v. Tomanio, 446 U.S. 478, 487 (1980); see United States v.

Kubrick, 444 U.S. 111, 117 (1979) (asserting that statutes of limitation "protect defendants and

the courts from having to deal with cases in which the search for truth may be seriously impaired

by the loss of evidence, whether by death or disappearance of witnesses, fading memories,

disappearance of documents, or otherwise.").

41.    Allowing the Plaintiffs to prosecute a complaint of which the HP Defendants were

not given timely notice would result in unfair prejudice, and the appropriate remedy is therefore

to bar the claim. "[E]ven if one has a just claim it is unjust not to put the adversary on notice to

defend within the period of limitation and . . . the right to be free from stale claims in time comes

to prevail over the right to prosecute them." Order of R.R. Telegraphers v. Ry Express Agency,

Inc., 321 U.S. 342, 349 (1944); see also, 1 Horace G. Wood, A TREATISE ON THE LIMITATION OF

ACTIONS 8-9 (4th ed.1916) ("The underlying purpose of statutes of limitation is to prevent the

unexpected enforcement of stale claims concerning which persons interested have been thrown off their guard by want of prosecution.").

**C.    Plaintiffs Cannot Use Rule 7004(m) To Expand Their Substantive Rights.**

42.    Furthermore, the Plaintiffs seek to use Rule 7004(m) to give new life to claims that would have failed had they been litigated within the applicable two-year statute of limitations. It is black-letter law that procedural rules, such as Rule 7004(m), cannot "abridge, enlarge, or modify any substantive right." 28 U.S.C. § 2075; see also Morse v. Perrotta (In re Perrotta), 406 B.R. 1, 8 (Bankr. D.N.H. 2009) ("Therefore, to the extent that the Bankruptcy Rules and the Bankruptcy Code are inconsistent, the statute controls."). At the time the Complaint was filed, there was a confirmed plan under which creditors would be paid in full. This Adversary Proceeding therefore likely would have been barred because preference actions exist for the benefit of creditors, given that "it is illogical for a debtor to be permitted to invoke § 547 if its creditors have all been paid in full." Adelphia Recovery Trust v. Bank of Amer., N.A., 390 B.R. 80, 98 (S.D.N.Y. 2008) (dismissing preference claims where plan provided for full payment). Plaintiffs admitted as much at the time. See Ex. D, Preservation of Estate Claims Procedures Motion, ¶ 13 ("avoiding preferential transfers would provide no benefit to the Debtors' estates because any party returning such a transfer would be entitled to a claim for the same amount, to be paid in full under such a plan."). Moreover, to allow the statute of limitations to be doubled in the guise of extending the time for the Debtors to effectuate service of process (where they had no intention of making effort to either disclose the lawsuits or effectuate process) until the outside date of the extended period would allow the Debtors (and any debtor) to make an end run around the statutory limitations period.

43.    The Debtors should not be allowed to overcome a substantive bar to a claim

merely by repeatedly extending the time to serve defendants under Bankruptcy Rule 7004(m)

until the facts became more favorable. See generally Global Crossing Estate Representative v.

Alta Partners Holdings LDC (In re Global Crossing, Ltd.), 385 B.R. 52, 82 (S.D.N.Y. 2008) (use

of Rule 4(m) to extend statutes of limitations while searching for unidentified prospective

defendants "would at best be debatable"). In the same vein, they cannot use a procedural service

rule to overcome a statutory limitations period.

44.    Accordingly, the Complaint should be dismissed with prejudice pursuant to Fed.

R. Civ. P. 12(b)(6) and Fed R. Bankr. P. 7012(b) on the grounds that it is barred by the statute of

limitations in 11 U.S.C. § 546(a) and therefore fails to state a claim upon which relief may be

granted.

## II.    THE COMPLAINT IS BARRED BY LACHES AND SHOULD BE DISMISSED.

45.    In addition to being brought in violation of the statute of limitations, the

Adversary Proceeding also is barred by the doctrine of laches. The Second Circuit requires a

defendant to satisfy three elements to prevail on a laches defense: (1) that it lacked knowledge

that the claim might be asserted against it; (2) that the plaintiff delayed in asserting the claim

despite the opportunity to do so; and (3) that it would be prejudiced if the claim were now

allowed to go forward. See, e.g., Gucci v. Sinatra (In re Gucci), 197 Fed. Appx. 58, 60 (2d Cir.

2006); Rapf v. Suffolk County, 755 F.2d 282, 292 (2d Cir. 1985).

46.    In the instant case, the HP Defendants can establish each of these elements. The

HP Defendants had no knowledge that a claim would be asserted against them. The Complaint

was filed under seal and remained sealed for years until only last month. As described above,

language in the Preservation of Estate Claims Procedures Motion, the February 2008 Extension

Motion and the April 2008 Extension Motion in fact suggests that the Debtors would not pursue adversary proceedings with important ongoing suppliers such as HP and HPFS, or a foreign entity like Hewlett-Packard Mexico, S. de. R.L. de C.V. Additionally, because the initial motions were against five defendants, none of which were related to the HP Defendants, and the grounds sought for the extensions were inapplicable to the HP Defendants, whose business relationship with the Debtors was decided, HP would have had no reason to believe the claims would be asserted against them.

47.     The Debtors had numerous opportunities to assert the claim against the HP Defendants and instead chose to conceal the claim for more than two years after the expiration of the statute of limitations. Even assuming *arguendo* that it was permissible to file complaints under seal when the Debtors expected that all creditors would be paid in full and avoidance actions would be dismissed, there was certainly no justification to keep the dockets sealed and the complaints unserved when the Debtors knew that creditors would no longer be fully paid and that certain of the actions would be prosecuted, and even solicited votes on a Modified Plan that did not disclose the identity of these defendants by name. It is always the case that a reorganizing debtor who brings avoidance actions against suppliers with which it continues to transact risks negatively affecting the supplier relationship. However, that is one of the factors every debtor is expected to weigh when determining whether to bring an avoidance action prior to the expiration of the statute of limitations, not one it should offer as a basis for delaying and secreting the action. The Debtors had no legitimate reason to exempt themselves from the specific rules Congress enacted and by which all other plaintiffs are forced to abide.

48.     The HP Defendants would be severely prejudiced if the Adversary Proceeding were now allowed to go forward. As described above, time has served to improve the Plaintiffs'

21

litigation position at the HP Defendants' expense. If the Complaint had been properly filed and served within the statute of limitations, the defendants would have had a complete defense and sufficient evidence with which to build its case. For all of the foregoing reasons, the Complaint should be dismissed for laches.

### III.    THE COMPLAINT IS BARRED BY JUDICIAL ESTOPPEL.

49.    Judicial estoppel "prevents a party from asserting a factual position in a legal proceeding that is contrary to a position previously taken by [that party] in a prior legal proceeding." In re Venture Mortgage Fund, 245 B.R. 460, 471 (Bankr. S.D.N.Y. 2000) (citation omitted), aff'd, 282 F.3d 185 (2d Cir. 2002). The doctrine "protect[s] the integrity of the judicial process . . . by prohibiting parties from deliberately changing positions according to the exigencies of the moment." New Hampshire v. Maine, 532 U.S. 742, 749 (2001) (citation and quotation marks omitted); Rosenshein v. Kleban, 918 F.Supp. 98, 104 (S.D.N.Y. 1996) ("Judicial estoppel is invoked . . . to prevent the party from playing fast and loose with the courts, and to protect the essential integrity of the judicial process."). Judicial estoppel will be found where: (i) the party against whom estoppel is asserted took an inconsistent position in a prior proceeding, and (ii) the first tribunal adopted the inconsistent position in some manner, such as by rendering a favorable judgment. In re Venture Mortgage Fund, 245 B.R. at 472. Prejudice to the party invoking the doctrine is not required. Galerie Des Monnaies of Geneva, Ltd. v. Deutsche Bank, N.Y. Branch (In re Galerie Des Monnaies of Geneva, Ltd.), 55 B.R. 253, 260 (Bankr. S.D.N.Y. 1985), aff'd, 62 B.R. 224 (S.D.N.Y. 1986).

50.    In the Preservation of Estate Claims Procedures Motion, the Debtors represented to the Court that "most of [the avoidance actions] likely will be resolved by a reorganization plan and never pursued." (Ex. D, Preservation of Estate Claims Procedures Motion, ¶ 33). Consistent with this statement, in the February 2008 Extension Motion, the Debtors took the position that

22

under their Plan they would "not retain any of the causes of action asserted in the Adversary

Proceedings except those specifically listed on Exhibit 7.24 to the Plan." (Ex. H, February 2008

Extension Motion, ¶ 17). Exhibit 7.24 to the Plan did not list the instant action. (Ex. G, Plan Ex.

7.24.) The Debtors further stated that of the claims listed on Exhibit 7.24 "only the claims

relating to Laneko Engineering Co., Wachovia Bank, National Association, Laneko Engineering

Co. Inc., and their affiliates and subsidiaries were subject to the Preservation of Estate Claims

Procedures Order." (Ex. H, February 2008 Extension Motion, ¶ 17, n.4). The Debtors reiterated

these positions in their April 2008 Extension Motion, (Ex. L, April 2008 Extension Motion, ¶ 18

and n.4), and the Court adopted the positions advanced by the Debtors when it entered orders

granting the relief sought in these motions.

51.    By bringing the Complaint against the HP Defendants, the Plaintiffs now take the

opposite position from the one they advanced in two consecutive motions, and which was

adopted by the Court in its entry of the March 2008 Extension Order and the April 2008

Extension Order. Courts in this district have refused to allow debtors to game the system in this

way, finding that "[t]his is precisely the sort of "about-face" that undermines the integrity of the

bankruptcy process." Rosenshein v. Kleban, 918 F.Supp. at 105 (S.D.N.Y. 1996); Galerie Des

Monnaies of Geneva, Ltd. v. Deutsche Bank, N.Y. Branch (In re Galerie Des Monnaies of

Geneva, Ltd.), aff'd, 62 B.R. 224, 225 (S.D.N.Y. 1986) ("The bankruptcy court properly

dismissed [the debtor's] attempt to recover preferential transfers after the debtor had previously

told creditors voting on the reorganization plan that it knew of no such transfers.").

23

IV.    THE CLAIMS WERE NOT PROPERLY PRESERVED IN THE DISCLOSURE
       STATEMENT AND MODIFIED PLAN.

52.    Regardless of whether the Debtors properly filed the Complaint, they lack

standing to prosecute this action because they failed to adequately preserve the claims in their

disclosure statement and plan.

53.    "Disclosure is the 'pivotal' concept in Chapter 11 reorganization," Kunica v. St.

Jean Fin., Inc., 233 B.R. 46, 54 (S.D.N.Y., 1999) (citing 5 COLLIER ON BANKRUPTCY ¶ 1125.03

(Alan N. Resnick & Henry J. Sommer eds., 15th ed. 1992)), and the Bankruptcy Code requires

that a disclosure statement provide "adequate information," to enable creditors to "make an

informed judgment about the plan." 11 U.S.C. § 1125. See Kunica, 233 B.R. at 54 ("The

importance of full disclosure is underlaid by the reliance placed upon the disclosure statement by

the creditors and the court. Given this reliance, we cannot overemphasize the debtor's obligation

to provide sufficient data to satisfy the Code standard of 'adequate information.'") (citing Oneida

Motor Freight, Inc. v. United Jersey Bank, 848 F.2d 414, 417 (3d Cir. 1988)).

54.    Here, after filing a series of motions emphasizing why they did not intend to

pursue avoidance actions except for an identified few (not including this Complaint), the Debtors

did not provide any meaningful disclosure in their plan regarding their intention to prosecute

additional claims, including the Complaint. The Debtors filed a motion to seek approval of

modifications to the Plan in October 2008, and filed the Modified Plan, as amended, and a

supplement to the disclosure statement, on June 16, 2009. (Docket No. 17030). The Modified

Plan and related disclosure statement provide that the Debtors do not intend to preserve

avoidance actions except those listed on Exhibit 7.19, yet the Debtors did not file the final plan

supplement containing Exhibit 7.19 until July 2, 2009, after they had begun solicitation of the

Modified Plan and a mere 28 days before that plan was confirmed. The information ultimately

24

provided in the disclosure statement and Modified Plan — a mere list of adversary proceeding case numbers that referred to sealed dockets, that was contained in an exhibit filed after the Debtors commenced solicitation of votes and only 28 days before the plan was confirmed — was patently inadequate to give the EDS Defendants notice of the claims against them or to allow any creditor to make an informed judgment with respect to the value of those claims. (Ex. O, Modified Plan Ex. 7.19). This list did not disclose the value of the retained claims or the defendants named in those actions — it "merely indicated that [Debtors] would retain certain . . . unvalued causes of action against various unnamed third parties." Kunica, 233 B.R. at 56. Such "vague references to the Claims are insufficient," and do not comport with the disclosure requirements 11 U.S.C. § 1125. Id., see also Westland Oil Dev. Corp. v. MCorp Mgmt. Solutions, Inc., 157 B.R. 100, 103 (S. D. Tex. 1993) ("General retention clauses are not convenient hiding places for debtors. . . . The creditors have a right to know what the debtor's assets are even though the potential may be contingent, dependent, or conditional.").

55.    Unlike in many other cases, the Debtors' failure to disclose the identity of the defendants was not due to any burden involved in identifying or investigating potential claims. These claims had already been identified years earlier, and the Debtors had in fact already filed adversary proceedings. It would have been more than "reasonably practicable" to include the defendants' identities, rather than a meaningless list of case numbers in the disclosure statement or plan schedule. Instead — in direct contravention of 11 U.S.C. § 1125 — the Debtors omitted specific information about the defendants and the value of the sealed claims in a way that obstructed creditors' ability to "make an informed judgment about the plan." Significantly, the Debtors' original reasons for sealing the complaints and dockets — the protection of vendor

25

relationships, the avoidance of prejudice to defendants and the existence of a 100 cent plan — no longer existed at this late stage.

56.     Moreover, "[i]t is well-settled that a bankruptcy court's order confirming a reorganization plan constitutes a final judgment on the merits and is to be given preclusive effect under res judicata." In re Amer. Preferred Prescription, Inc., 266 B.R. 273, 277 (E.D.N.Y. 2000). The "right to bring the subsequent litigation must be specifically reserved in the confirmed plan," or it is lost. Id. at 278 (citation omitted). The Modified Plan and related disclosure statement provided no specific information about the claims against the HP Defendants, despite the minimal burden involved, and the importance of providing proper disclosure. These claims should therefore be dismissed as barred by res judicata and as a matter of due process.

## V.    THIS COURT'S PRIOR ORDERS SHOULD BE VACATED TO THE EXTENT NECESSARY TO AFFORD RELIEF.

59.     While the HP Defendants assert that the Complaint is barred on several grounds, they alternatively seek relief under Rule 60(b) to the extent necessary to support dismissal of this action.

60.     Fed. R. Civ. P. 60(b), as made applicable by Fed. R. Bankr. P. 9024, provides, in relevant part:

> On motion and just terms, the Court may relieve a party or its legal representative from a final judgment, order or proceeding for the following reasons: . . . (5) . . . applying [the order] prospectively is no longer equitable; or (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).

61.     The HP Defendants respectfully submit that they have been inequitably deprived of their procedural due process rights through the filing of the Complaint under seal to conceal they had been sued while continually extending the Debtors' time to serve process in excess of

two years past the expiration of the statute of limitations.  Accordingly, the order approving the

Preservation of Estate Claims Procedures Motion, each of the Extension Orders, and the

Modified Plan Confirmation Order must be vacated as against the HP Defendants.

**A.    The Complaint Was Improperly Filed Under Seal Pursuant To Section 107 Of The Bankruptcy Code.**

62.    There "is a strong presumption and public policy in favor of public access to court

records," which is "rooted in the public's First Amendment right to know about the

administration of justice."  In re Food Mgmt. Group, 359 B.R. 543, 553 (Bankr. S.D.N.Y. 2007)

(internal citations and quotation marks omitted).  Indeed, the "public interest in openness of court

proceedings is at its zenith when issues concerning the integrity and transparency of bankruptcy

court proceedings are involved."  Id.; see also Gitto v. Worcester Telegram & Gazette Corp. (In

re Gitto Global Corp.), 422 F.3d 1, 7 (1st Cir. 2005) ("This governmental interest is of special

importance in the bankruptcy arena, as unrestricted access to judicial records fosters confidence

among creditors regarding the fairness of the bankruptcy system.") (citation omitted).

63.    Congress enacted section 107(a) of the Bankruptcy Code to codify the common

law right of public access in bankruptcy proceedings.  It provides, in relevant part, that "a paper

filed in a case under this title and the dockets of a bankruptcy court are public records and open

to examination by an entity at reasonable times without charge."  11 U.S.C. § 107(a); In re Food

Mgmt. Group, 359 B.R. at 552.  The "plain meaning of § 107(a) mandates that *all* papers filed

with the bankruptcy court are 'public records' unless the bankruptcy court 'decides to protect the

information pursuant to the standards set forth in [§] 107(b).'"  In re Food Mgmt. Group, 359

B.R. at 553 (quoting Air Line Pilots Ass'n Int'l v. Am. Nat'l Bank & Trust Co. (In re Ionosphere

Clubs, Inc.), 156 B.R. 414, 433 n.7 (S.D.N.Y. 1993)).

27

64.    There are two statutory exceptions to the general right of public access in cases where "compelling or extraordinary circumstances" require. 11 U.S.C. §107(b); Video Software Dealers Ass'n v. Orion Pictures Corp. (In re Orion Pictures Corp.), 21 F.3d 24, 27 (2d Cir. 1994). Section 107(b) states:

> On request of a party in interest, the bankruptcy court shall, and on the bankruptcy court's own motion, the bankruptcy court may – (1) protect an entity with respect to a trade secret or confidential research, development, or commercial information; or (2) protect a person with respect to scandalous or defamatory matter contained in a paper filed in a case under this title.

11 U.S.C. § 107(b). However, "a judge must carefully and skeptically review sealing requests to insure that there really is an extraordinary circumstance or compelling need" to keep the material private. In re Food Mgmt. Group, 359 B.R. at 554 (citation and quotation marks omitted).

65.    The Debtors argued that under Section 107(b)(1), the complaints must be filed under seal because preservation of the status quo and existing business relationships were "commercial information" in need of protection. In particular, the Debtors alleged that they "have worked to preserve and repair their business relationship with many of the potential defendants during these cases and have negotiated or regained favorable credit terms with many suppliers and are continuing to do so." (Ex. D, Preservation of Estate Claims Procedures Motion, ¶ 37). In essence, the Debtors argued that publicly filing the complaints would make it more difficult to maintain and induce favorable business terms from defendants.

66.    However, courts have never interpreted Section 107(b)(1) to protect information that would be prejudicial to debtors vis-à-vis their own creditors. Rather, commercial information has been defined "as information which would cause an *unfair advantage to competitors* by providing them information as to the commercial operations of the debtor." In re Orion Pictures Corp., 21 F.3d at 27 (citation and quotation marks omitted) (emphasis added).

28

The HP Defendants are in a different industry than the Debtors and do not compete with them for business. Furthermore, the knowledge that the Debtors allegedly had a preference claim against the HP Defendants would in no way advantage the Debtors' competitors. Consequently, the Complaint does not fall within the statutory exception cited by the Debtors. As importantly, regardless of the validity of such arguments early on, it is disingenuous at best to suggest that the sealing of the complaints for over two and one-half years was necessary or appropriate when, for example, HP and the Debtors had negotiated a new Master Services Agreement to govern their relationship before the Complaint was even filed.

67.    The Debtors cited In re Serv. Merch., Case No. 399-02649 (Bankr. M.D. Tenn. Feb. 27, 2001) in support of their arguments that ongoing business relationships are "commercial information." However, even assuming *arguendo* that the decision was correctly decided, that case is distinguishable because there the court approved the sealing of certain adversary proceedings to permit the debtors to continue negotiations with the defendants, who were also the debtors' business partners. Here, there is no evidence the Debtors intended to negotiate at all with the HP Defendants, and at best they sought to extract value from their new contract with HP without being held accountable for preserving their claims. Accordingly, the Preservation of Estate Claims Procedures Order as it relates to the authority to file the Complaint under seal should be vacated as to the HP Defendants.

68.    Moreover, to the extent the Debtors ultimately could prove the existence of avoidable transfers (which the defendants dispute), the HP Defendants were disenfranchised and improperly prevented from participating in the Modified Plan approval process as a result of their lack of notice of the Complaint. Under Section 502(h), "a transferee of an avoidable transfer has an allowable claim once it turns over such property for which it is liable," and may

file a proof of claim on account of same. <u>Fleet Nat'l Bank v. Gray (In re Bankvest Capital Corp.)</u>, 375 F.3d 51, 57 n.4 (1st Cir. 2004). As a result of such claim, a party is entitled to "[participate] in the voting and distribution from the estate." <u>In re Hamilton</u>, 179 B.R. 749, 752 (Bankr. S.D. Ga. 1995) (quoting <u>United States v. Kolstad</u>, 928 F.2d 171, 174 (5th Cir. 1991), <u>reh'g denied</u>, 936 F.2d 571 (5th Cir. 1991), <u>cert. denied</u>, 502 U.S. 958 (1991)). The Debtors knew that if HP repaid an alleged preferential transfer, it would have been entitled to file a claim, participate in the case and vote on the Modified Plan (as would the other HP Defendants). Depriving the HP Defendants of their right to participate in the approval of a bankruptcy plan that affected their interests in order to secure a facially more amenable business relationship for several years was patently improper and unjustifiable under the Bankruptcy Code.

**B.      There Was No Good Cause To Extend The Time For Service.**

68.      The Plaintiffs rely on the Extension Orders to justify the lengthy delay in service of the Complaint. Fed. R. Civ. P. 4(m), made applicable by Fed. R. Bankr. P. 7004(m), provides in relevant part:

> *Time Limit for Service.* If a defendant is not served within 120 days after the complaint is filed, the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Bankr. P. 7004(m).

70.      Good cause is "generally found only in exceptional circumstances where the plaintiff's failure to serve process in a timely manner was the result of circumstances beyond its control." <u>E. Refractories Co., v. Forty Eight Insulations, Inc.</u>, 187 F.R.D. 503, 505 (S.D.N.Y. 1999). Good cause is measured against the plaintiff's reasonable efforts to effect service and the prejudice to the defendant from the delay. <u>AIG Managed Mkt. Neutral Fund v. Askin Capital</u>

Mgmt., L.P., 197 F.R.D. 104, 108 (S.D.N.Y. 2000). It is within the discretion of a court to

extend the period for serving a complaint absent a showing of good cause. See Advisory

Committee Notes to Fed. R. Civ. P. 4(m). Relevant factors are: "(1) whether the applicable

statute of limitations would bar the refiled action; (2) whether the defendant had actual notice of

the claims asserted in the complaint; (3) whether the defendant had attempted to conceal the

defect in service; and (4) whether the defendant would be prejudiced by the granting of

plaintiff's request for relief from the provision." E. Refractories Co. v. Forty Eight Insulations,

Inc., 187 F.R.D. at 506.

71.     The Extension Orders should not have been entered, as good cause did not exist to

extend the time to serve process as a matter of law. Good cause generally exists under Fed. R.

Civ. P. 4(m) when service is attempted, but not completed, on a named defendant within the 120-

day period. See, e.g., Cohen v. Stokes Elec. Supply (In re Submicron Sys. Corp.), Civ. No. 03-

230-SLR, 2004 U.S. Dist. LEXIS 19170 (D. Del. Sept. 21, 2004); Moll v. Parker (In re Parker),

Case No. 07-30697, Adv. Proc. No. 07-3037, 2007 Bankr. LEXIS 3297 (Bankr. E.D. Tenn. Sept.

25, 2007); In re Global Crossing, Ltd., 385 B.R. at 85. It does not exist where, as was the case

here, the plaintiffs know and can serve the named defendants, but simply choose not to do so

solely to continue to reap the benefits of a business relationship. As previously discussed,

manipulating procedural rules to obtain a result not contemplated by the accompanying

substantive law is impermissible. See 28 U.S.C. § 2075 (rules prescribed by the United States

Supreme Court "shall not abridge, enlarge, or modify any substantive right"); see also In re

Perrotta, 406 B.R. at 8 ("Therefore, to the extent that the Bankruptcy Rules and the Bankruptcy

Code are inconsistent, the statute controls.").

72.    Moreover, while it is true that courts have the discretion to extend the time for service of process, such extensions were not warranted here. Although the expiration of the statute of limitations would bar the Complaint from being refiled, the Debtors actively chose to conceal the Complaint from the HP Defendants and must now bear the consequences. As described above, the HP Defendants had no actual notice of the claims raised in the Complaint and stand to suffer substantial prejudice as a result of the two and a half year delay in service. Furthermore, the HP Defendants in no way concealed the procedural defects in the service of the Complaint from the Debtors given that they were unaware of the Complaint's very existence. By contrast, in instances where courts have found lengthy extensions appropriate, complaints were publicly filed and defendants were on notice that they were being sued while the plaintiffs actively attempted to effectuate service. See, e.g., In re Submicron Sys. Corp., 2004 U.S. Dist. LEXIS 19170; In re Parker, 2007 Bankr. LEXIS 3297; In re Global Crossing, Ltd., 385 B.R. at 85. Extensions that more than double the statute of limitations without actual notice to the defendants (coupled with motions that at best suggest claims are not being pursued) cannot be appropriate.

73.    For all of the foregoing reasons, the Preservation of Estate Claims Procedures Order, each of the Extension Orders, and the Modified Plan Confirmation Order (to the extent it allows for the retention of these causes of action) should be vacated on the ground that the application of each is unjust and inequitable with respect to the HP Defendants.

## VI.    THE COMPLAINT FAILS TO PLEAD SUFFICIENT FACTS TO STATE A CAUSE FOR RELIEF AND SHOULD BE DISMISSED.

74.    Even assuming *arguendo* that the action was not untimely (which it is), the Complaint must be dismissed because the allegations fail to plead "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556

U.S. __, 129 S. Ct. 1937, 1940 (2009) (citation and quotation marks omitted). Federal Rule of

Civil Procedure 8(a)(2), made applicable through Federal Rule of Bankruptcy Procedure 7008,

"requires only 'a short and plain statement of the claim showing that the pleader is entitled to

relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon

which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citing Conley v.

Gibson, 355 U.S. 41, 47 (1957)). However, "[w]hile a complaint attacked by a Rule 12(b)(6)

motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide

the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a

formulaic recitation of the elements of a cause of action will not do." Id.

75.    Here the Debtors fail to include even the most basic facts necessary to the

assertion of a preference claim, including identifying which of the 42 Debtor entities made each

of the alleged transfers, and the specific HP Defendant that allegedly received each such transfer.

Rather, the Plaintiffs have listed out the bare legal elements for a preference cause of action and

inserted the HP Defendants' names and an aggregate list of alleged transfers without any

description of either the nature of the alleged transaction or the parties to each one. As the

Supreme Court has recently affirmed, such "[t]hreadbare recitals of the elements of a cause of

action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S.Ct. at

1950 (citation omitted). Courts applying Iqbal have dismissed similar conclusory allegations of

§ 547 claims. See In re Caremerica, Inc., 409 B.R. 737, 751 (Bankr. E.D.N.C. 2009) ("In order

to satisfy the pleading requirements under Iqbal, the court finds that the trustee is obligated to

allege facts regarding the nature and amount of the antecedent debt which, if true, would render

plausible the assertion that a transfer was made for or on account of such antecedent debt.")

Even before Iqbal was decided, plaintiffs were required to at least provide enough facts to

establish the identity of the entities who paid and received the alleged transfers. See, e.g., In re

Allou Distribs., Inc., 387 B.R. 365, 405 (Bankr. E.D.N.Y. 2008) (preference claim identifying

the transferor and transferee, check number, date, and amount was sufficient). Particularly in

light of the time that has passed since the alleged transfers, the Complaint fails to provide the HP

Defendants with sufficient notice to determine whether the supposed payments that are the crux

of the Complaint were even received, and if so, by whom.

76.     The facial insufficiency of the Complaint is prejudicial to the HP Defendants'

ability to raise clear defenses to a preference cause of action. For example, the HPFS agreements

with the Debtors were either bought out or assumed. It is well-settled that assumption and

preference claims are mutually exclusive. See In re Superior Toy & Mfg. Co., Inc., 78 F.3d

1169, 1174, 1176 (7th Cir. 1996) ("[a]n assumption order divests the trustee of subsequent

claims to monies paid under the contract whether they were paid prepetition or postpetition.");

Teligent v. Cigna Healthcare, Inc. (In re Teligent, Inc.), 326 B.R. 219, 223 (Bankr. S.D.N.Y.

2004). The same logic applies to leases that the Debtors bought out, as they were required to pay

HPFS in full in order to exercise their buy-out option, just as if the contracts were being

assumed. The Plaintiffs' claims likely would be facially barred if well pled. Consequently, the

Debtors fail even under the most liberal construction of Fed. R. Civ. P. 8, and the Complaint

should be dismissed on this ground.[7]

---

[7]    Plaintiffs also have named additional defendants that are not separate legal entities, including Hewlett Packard,
Hewlett Packard Co. Inc. and Hewlett Packard Company. There are several legal entities named Hewlett-
Packard Limited, and it is impossible to tell from the Complaint which of these entities, if any, is the intended
defendant. Hewlett-Packard Company therefore moves to have those defendants struck from the Complaint and
the case dismissed as against them.

VII.    THE COMPLAINT MUST BE DISMISSED FOR LACK OF PERSONAL
JURISDICTION AS TO HEWLETT-PACKARD MEXICO, S. DE. R.L. DE C.V.

77.    This Court does not have jurisdiction over defendant Hewlett-Packard Mexico, S. de. R.L. de C.V.. As an initial matter, the claims against Hewlett-Packard Mexico, S. de. R.L. de C.V. must be dismissed pursuant to Fed. R. Civ. P. 12(b)(5) and Fed. R. Bankr. P. 7012(b) because while over two and one half years have passed since the Debtors filed the Complaint, the Debtors still have not served Hewlett-Packard Mexico, S. de. R.L. de C.V..

78.    Moreover, as described above, the Complaint provides no facts about the alleged preferential transfers other than a list of dates and transfer amounts. To survive a motion to dismiss for lack of personal jurisdiction a plaintiff must "make a prima facie showing . . . that personal jurisdiction exists." Picard v. Cohmad Sec. Corp. (In re Bernard L. Madoff Inv. Sec.), 418 B.R. 75, 79 (Bankr. S.D.N.Y. 2009) (citing Marine Midland Bank v. Miller, 664 F.2d 899, 904 (2d Cir.1981)). It is impossible to tell from the Complaint whether any of the alleged transfers were even made to Hewlett-Packard Mexico, S. de. R.L. de C.V., much less whether the circumstances of such purported transfers would support the exercise of jurisdiction over that defendant by this Court, where Hewlett-Packard Mexico, S. de. R.L. de C.V. has never filed an appearance in the Debtors' cases. Plaintiffs have thus failed to make a prima facie showing that personal jurisdiction exists and the claims against Hewlett-Packard Mexico, S. de. R.L. de C.V. must be dismissed under Fed. R. Civ. P. 12(b)(2) and Fed. R. Bankr. P. 7012(b).

## CONCLUSION

79.    The concealment of the Complaint from the HP Defendants and the delay in service for two and a half years has unduly prejudiced the HP Defendants and violates their basic legal rights. The Complaint was not served on the HP Defendants until well after the expiration of the statute of limitations and should therefore be dismissed to prevent the Debtors from

35

impermissibly using the procedural rules to expand their substantive rights. The claims also are barred by laches, judicial estoppel and res judicata. Moreover, the Plaintiffs lack standing to prosecute the Complaint because they failed to adequately preserve the causes of action in the Modified Plan and related disclosure statement. The Complaint also must be dismissed under Fed. R. Civ. P. 12(b) due to Plaintiffs' failure to satisfy the pleading requirements of Rule 8, for lack of personal jurisdiction over Hewlett-Packard Mexico, S. de. R.L. de C.V., and must also be dismissed with respect to any purported preferential transfers that took place under an agreement that the Debtors have assumed or bought out.

36

For all of the foregoing reasons, the HP Defendants respectfully request that (i) the Complaint be dismissed for failing to state a claim upon which relief can be granted and as barred by judicial estoppel and res judicata; (ii) to the extent required, each of the Preservation of Estate Claims Procedures Orders, the Extension Orders dated March 28, 2008, April 30, 2008 and October 22, 2009, and the Modified Plan Confirmation Order (to the extent it allows for the retention of these causes of action), be vacated as against it; (iii) the Complaint be dismissed for its failure to satisfy Rule 8; (iv) the Complaint be dismissed as to named defendants which do not exist as legal entities, and defendants not subject to jurisdiction in this court; and (v) for such other and further relief as this Court may deem necessary or appropriate.

Dated: April 9, 2010
      New York, New York

Respectfully submitted,

Lisa M. Schweitzer, Esq.

CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

*Attorneys for Defendants Hewlett-Packard Company,*
*Hewlett-Packard Financial Services Company and*
*Hewlett-Packard Mexico, S. de. R.L. de C.V.*

**Appendix to the Motion of HP Defendants**

**Timeline of Relevant Events**

| Date | Event |
|---|---|
| October 8 and 14, 2005 | Delphi[1] and its subsidiaries file Chapter 11 bankruptcy petitions. |
| July 11, 2006 | HP and affiliates file proofs of claim in the bankruptcy proceedings. |
| July 26, 2006 | HPFS files a proof of claim in the bankruptcy proceedings. |
| October 23, 2006 | Delphi's new Master Services Agreement and Companion Agreements with HP is approved by the Court (D.I. 5378). |
| July 5, 2007 | The Debtors file a notice of their intent to assume HP Purchase Order No. 22120 in connection with the sale of certain assets to Umicore (D.I. 8487). |
| August 6, 2007 | The Debtors file the Preservation of Estate Claims Procedures Motion (D.I. 8905). |
| August 16, 2007 | The Court enters the Preservation of Estate Claims Procedures Order (D.I. 9105). |
| September 6, 2007 | The Debtors file a plan of reorganization that proposes full payment to their unsecured creditors (D.I. 9263) |
| September 26, 2007 | The Debtors file a Complaint against the HP Defendants under seal. HP is not served with a copy of the complaint. |
| October 14, 2007 | The statute of limitations for commencing preference avoidance actions expires on or prior to this date. |
| December 10, 2007 | The Debtors file their first amended plan providing for full payment of their unsecured creditors (the "Plan") (D.I. 11386). |
| January 25, 2008 | The Plan is confirmed by order of the Court (D.I. 12359). |
| February 28, 2008 | The Debtors file the February 2008 Extension Motion, seeking a further two month extension of the deadline to serve process for certain avoidance actions (D.I. 12922). |
| March 28, 2008 | The Court enters the March 2008 Extension Order, granting the extension to serve process until May 31, 2008 (D.I. 13277). |

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the Motion of Hewlett-Packard Company and Affiliates for an Order Dismissing the Complaint with Prejudice and Vacating Certain Prior Orders Pursuant to Fed. R. Civ. P. 60 and Fed. R. Bankr. P. 9024.

| Date | Event |
|------|-------|
| April 10, 2008 | The Debtors file the April 2008 Extension Motion seeking a third extension of the service deadline until the later of December 31, 2008 or substantial consummation of the Plan (D.I. 13361). |
| April 30, 2008 | The Court enters the April 2008 Extension Order (D.I. 13484). |
| October 3, 2008 | The Debtors file a motion for approval of modifications to the Plan (D.I. 14310), which seeks approval of changes to the Plan that provided for substantially lower recoveries to the Debtors' unsecured creditors. |
| June 16, 2009 | The Debtors file the Modified Plan (D.I. 17030). |
| July 2, 2009 | The Debtors file certain Exhibits to the Modified Plan (D.I. 17557), including a revised list of retained avoidance actions (Exhibit 7.19). |
| July 30, 2009 | The Court enters an order approving the Modified Plan (D.I. 18707). |
| October 2, 2009 | The Debtors file the October 2009 Extension Motion, seeking a fourth extension of the deadline to serve process until 180 days after substantial consummation of the Modified Plan (D.I. 18952). |
| October 6, 2009 | The Modified Plan becomes effective. |
| October 6, 2009 | Certain leases constituting the only direct agreements between HPFS and the Debtors are assumed when the Modified Plan becomes effective. |
| October 22, 2009 | The Court enters the October 2009 Extension Order, granting the extension requested in the October 2009 Extension Motion (D.I. 18999). |
| March 12, 2010 | The Complaint is unsealed and a summons is issued in this adversary proceeding. |
| April 4, 2010 | The deadline to serve process under the October 2009 Extension Order expires. |