James M. Sullivan
ARENT FOX, LLP
1675 Broadway
New York, NY 10019
(212) 484-3900

*Attorneys for The Timken Company, The
Timken Corporation, and MPB Corporation
d/b/a Timken Super Precision*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------ x

In re                                              :
                                                   :          Chapter 11
                                                   :
DELPHI CORPORATION, *et al.*,                      :
                                                   :          Case No. 05-44481 (RDD)
                                                   :          (Jointly Administered)
                          Debtors.                 :
                                                   :
------------------------------------------------------ x
                                                   :
DELPHI CORPORATION, *et al.,*                      :
                                                   :          Adv. Pro. No. 07-02688 (RDD)
                          Plaintiffs,              :
                                                   :
                                                   :
           -against-                               :
                                                   :
                                                   :
TIMKEN, TIMKEN COMPANY, TIMKEN                     :
CORPORATION, TIMKEN FRANCE SAS,                    :
and TIMKEN SUPER PRECISION,                        :
                                                   :
                          Defendants.              :
                                                   x

**MOTION BY THE TIMKEN COMPANY, THE TIMKEN CORPORATION, AND
MPB CORPORATION D/B/A TIMKEN SUPER PRECISION SEEKING AN
ORDER (I) PURSUANT TO FED. R. CIV. P. 60 AND FED. R. BANKR. P. 9024,
VACATING PRIOR ORDERS ESTABLISHING PROCEDURES FOR CERTAIN
ADVERSARY PROCEEDINGS, INCLUDING THOSE COMMENCED BY THE
DEBTORS UNDER 11 U.S.C. §§ 541, 544, 545, 547, 548, OR 549, AND
EXTENDING THE TIME TO SERVE PROCESS FOR SUCH ADVERSARY
PROCEEDINGS, (II) PURSUANT TO FED. R. CIV. P. 12(b) AND (c) AND FED.
R. BANKR. P. 7012(b) and (c), DISMISSING THE ADVERSARY PROCEEDING
WITH PREJUDICE, (III) IN THE ALTERNATIVE, DISMISSING THE
ADVERSARY PROCEEDING ON GROUND OF JUDICIAL ESTOPPEL) OR
(IV) IN THE ALTERNATIVE, DISMISSING THE ADVERSARY PROCEEDING
ON GROUND OF LACHES**

NYC/485698.2

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................. i

PRELIMINARY STATEMENT ......................................................................... 1

STATEMENT OF FACTS ................................................................................. 2

    (i)     Preservation of Estate Claims Procedures Motion and Order .................. 3

    (ii)    Commencement of Adversary Proceeding Against Timken and
           Plan Confirmation ........................................................................... 4

    (iii)   Extension of Avoidance Action Service Deadline Motion and
           Order ................................................................................................ 5

    (iv)   Postconfirmation Extension of Avoidance Action Service Deadline
           Motion and Order ............................................................................. 6

    (v)    Entry of Modification Approval Order and Effective Date ...................... 8

    (vi)   Supplemental Postconfirmation Extension of Avoidance Action
           Service Deadline Motion and Order ................................................. 8

    (vii)  Service of Process on Timken.................................................................. 10

    (viii) Prejudice Suffered by Timken ............................................................... 10

ARGUMENT .................................................................................................... 11

I.      EACH OF THE PRESERVATION OF ESTATE CLAIMS
       PROCEDURES ORDER AND THE EXTENSION ORDERS SHOULD
       BE VACATED AS AGAINST TIMKEN ON THE GROUNDS THAT
       EACH ORDER WAS IMPROVIDENTLY ENTERED ................................... 11

    A.    The Complaint Was Improperly Filed under Seal Pursuant to
          Section 107 of the Bankruptcy Code ....................................................... 11

    B.    Timken Had No Notice that the Motions in Support of the
          Preservation of Estate Claims Procedures Order and Each of the
          Extension Orders Affected Timken ......................................................... 14

II.     THE COMPLAINT IS BARRED BY THE STATUTE OF
       LIMITATIONS AND BASED ON INSUFFICIENT SERVICE OF
       PROCESS AND SHOULD BE DISMISSED ..................................................... 17

III.    IN THE ALTERNATIVE, THE COMPLAINT IS BARRED BY
       JUDICIAL ESTOPPEL AND SHOULD BE DISMISSED ................................ 20

IV.    THE COMPLAINT IS BARRED BY LACHES.................................................. 22

V.     THE COMPLAINT FAILS TO PLEAD FACTS SUFFICIENT TO
       STATE A CLAIM FOR RELIEF AND SHOULD BE DISMISSED................. 24

**TABLE OF CONTENTS**
(continued)

**Page**

VI.    TIMKEN INCORPORATES ALL APPLICABLE ARGUMENTS
       RAISED BY OTHER DEFENDANTS IN THEIR DISMISSAL
       MOTIONS ......................................................................................................... 25

CONCLUSION ............................................................................................................. 26

MEMORANDUM OF LAW .......................................................................................... 26

## TABLE OF AUTHORITIES

**Page**

### FEDERAL CASES

Ahern v. Neve, 285 F. Supp.2d 317, 320 (E.D.N.Y. 2003) ............................................. 18

Angell v. Haven (In re Careamerica), 409 B.R. 346 (Bankr. E.D.N.C. 2009) ................ 24

Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009) ........................................................................ 24

Bank of Cape Verde v. Bronson, 167 F.R.D. 370, 371-72 (S.D.N.Y. 1996) ................... 18

Barcia v. Sitkin, 367 F.3d 87, 107 (2d Cir. 2004) ............................................................ 15

Bell Atlantic Corp. v. Twombley, 550 U.S. 544 (2007) .................................................... 24

Burnett v. N.Y. Cent. R.R. Co., 380 U.S. 424, 428-29 (1965) ......................................... 19

Family Golf Ctrs., Inc. v. Acushnet Co. (In re Randall's Island Family Golf
Ctrs., Inc.), 288 B.R. 701, 705 (Bankr. S.D.N.Y. 2003) .................................................. 19

Fleet Nat'l Bank v. Gray (In re Bankvest Capital Corn.), 375 F.3d 51, 57 n.4
(1st Cir. 2004) ................................................................................................................... 16

Gitto v. Worcester Telegram & Gazette Corp. (In re Gitto Global Corp.), 422
F.3d 1, 7 (1st Cir. 2005) .................................................................................................... 12

Grannis v. Ordean, 234 U.S. 385, 394 (1914) ................................................................. 14

In re Cornwall, 9 Blatchf. 114, 6 F.Cas. 586, 591 (C.C.D. Conn. Sept. Term
1871) .................................................................................................................................. 19

In re Food Management Group, LLC, 359 B.R. 543, 553 (Bankr. S.D.N.Y.
2007) ...................................................................................................................... 11, 12, 13

In re Gucci, 197 Fed. Appx. 58, 60 (2d Cir. 2006) .......................................................... 22

In re Hamilton, 179 B.R. 749, 752 (Bankr. S.D. Ga. 1995) ............................................ 16

In re Venture Mortgage Fund, L.P., 245 B.R. 460, 471 (2000), aff'd, 282 F.3d
185 (2d Cir. 2002) ........................................................................................................ 20, 21

Morse v. Perrotta (In re Perrotta), 406 B.R. 1, 8 (Bankr. D. N.H. 2009) ........................ 18

Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950) .............. 14, 15

## TABLE OF AUTHORITIES
(Continued)

**Page**

Mused v. U.S. Dep't of Agriculture Food and Nutrition Serv., 169 F.R.D. 28,35 (W.D.N.Y. 1996) ........................................................................................... 20

New Hampshire v. Maine, 532 U.S. 742, 749 (2001) ....................................... 20

Rapf v. Suffolk Cty, 755 F.2d 282, 292 (2d Cir. 1985)............................... 22, 24

Rosenshein v. Kleban, 918 F.Supp. 98, 104 (S.D.N.Y. 1996)........................... 20

Video Software Dealers Ass'n v. Orion Pictures Corp. (In re Orion Pictures Corp.), 21 F.3d 24, 27 (2d Cir. 1994) ....................................................... 12, 14

Weinner v. City of New York, 852 F.2d 646, 654 (2d Cir. 1988)..................... 15

### FEDERAL STATUTES

11 U.S.C. § 107(a) ........................................................................................... 12

11 U.S.C. § 107(b) ........................................................................................... 13

11 U.S.C. § 546(a) ..................................................................................... 1, 2, 17

11 U.S.C. § 547 ................................................................................................ 24

11 U.S.C. §§ 1129(a) ................................................................................. passim

11 U.S.C. 546(a) ................................................................................................ 5

28 U.S.C. § 2075 .............................................................................................. 18

Bankruptcy Code § 546(a) ............................................................................... 10

Bankruptcy Code §§ 541 ......................................................................... 3, 4, 5

Bankruptcy Code §§ 547 .................................................................................... 4

Bankruptcy Code §546(a) ................................................................................ 11

### STATE RULES

Federal Rule of Civil Procedure 4(m)..................................................... 11, 20, 21

The Timken Company, The Timken Corporation, and MPB Corporation d/b/a Timken Super Precision (collectively, "Timken"), by and through their undersigned counsel, respectfully alleges:

## PRELIMINARY STATEMENT

1.      A fundamental tenet in American jurisprudence is that all court proceedings should be open to the public at large, because the public has a right, rooted in the First Amendment and codified by Congress in § 107(a) of the Bankruptcy Code, to know about the administration of bankruptcy proceedings. Another core tenet in American jurisprudence is that a party is entitled to notice that it is being sued. Neither of these principles was followed here. Instead, Delphi Corporation ("Delphi") and the other Debtors (defined below), the plaintiffs herein (collectively, the "Plaintiffs") have, by the filing of complaints under seal, perverted the Federal Rules of Civil Procedure in an attempt to surreptitiously and indefinitely extend the two-year statute of limitations imposed pursuant to 11 U.S.C. § 546(a), which absolutely bars the prosecution of the above-captioned adversary proceeding, commenced under seal on September 30, 2007, and served on or about April 8, 2010 on Timken (the "Adversary Proceeding").

2.      Consequently, Timken seeks an order of this Court:

(a)      vacating, with respect to Timken, pursuant to Fed. R. Civ. P. 60 and Fed. R. Bankr. P. 9024, the orders of this Court, dated September 30, 2007 (the "Preservation of Estate Claims Procedures Order"); March 28, 2008 (the "Extension of Avoidance Action Service Deadline Order"); April 30, 2008 (the "Postconfirmation Extension of Avoidance Action Service Deadline Order"); and October 22, 2009 (the

"Supplemental Postconfirmation Extension of Avoidance Action Service Deadline
Order" and, together with the Extension of Avoidance Action Service Deadline Order
and the Postconfirmation Extension of Avoidance Action Service Deadline Order, the
"Extension Orders"), on the grounds that each such order is void against Timken by
virtue of the Debtors' and Plaintiffs' intentional failure to provide Timken with notice
that the motions affected Timken and that the Extension Orders were improvidently
made; and

(b)      dismissing, with prejudice, the Adversary Proceeding against
Timken, pursuant to Fed. R. Civ. P. 12(b) and (c) and Fed. R. Bankr. P. 7012(b) and (c)
on the ground that it was not served within, and is thus barred by, the two-year statute of
limitations imposed by 11 U.S.C. § 546(a), and fails to allege facts sufficient to state a
plausible claim, and, therefore, fails to state a claim upon which relief may be granted; or

(c)      in the alternative, dismissing, with prejudice, the Adversary
Proceeding against Timken on the ground that it is barred by judicial estoppel; or

(d)      in the alternative, dismissing with prejudice, the Adversary
Proceeding against Timken on the ground that it is barred by laches.

## STATEMENT OF FACTS

3.      On October 8, 2005, Delphi and certain of its subsidiaries (the "Initial
Filers") each filed voluntary petitions for relief under Chapter 11 of Title 11 of the United
States Code (the "Bankruptcy Code"). On October 14, 2005, three additional U.S.
subsidiaries of Delphi (together with the Initial Filers, the "Debtors") filed voluntary

petitions for relief under Chapter 11 of the Bankruptcy Code. (Complaint, dated 9-26-07, Adv. Pro. No. 07-02688 (the "Complaint"), at ¶ 1.)

4.      Prior to the commencement of the Debtors' cases, Timken provided goods and services to Delphi.  (Decl. of Michael Hart dated 5-14-10 (the "Hart Decl.") ¶ 4.)

*(i)*      ***Preservation of Estate Claims Procedures Motion and Order***

5.      By motion dated August 6, 2007 (the "Preservation of Estate Claims Procedures Motion"), the Debtors sought entry of an order seeking, among other things, the establishment of procedures for certain adversary proceedings, including those commenced by the Debtors under Bankruptcy Code §§ 541, 544, 545, 547, 548 or 553. (Preservation of Estate Claims Procedures Motion, at ¶ 17.)  As pertinent here, the procedures sought included (i) pursuant to Fed. R. Civ. P. 4(m), an extension of time beyond the initial 120-day period to serve certain adversary summonses and complaints, (ii) a stay of the applicable adversary proceedings until service of process was effected, and (iii) permitting the Plaintiffs to file the complaints under seal. (*Id.* at ¶¶ 33-38.)

6.      The aforementioned procedures were purportedly intended to permit the Debtors to "preserve the status quo," and "potentially valuable assets without disrupting the plan process or existing business relationships prematurely or prejudicing the rights of any defendants," as well as to "avoid having to force all potential defendants to retain counsel to defend against adversary proceedings when, in fact, most of them likely will be resolved by a reorganization plan and never pursued." (Id. at ¶¶ 33-34.)

7.      In addition, as relates to the request to file the complaints under seal, the Debtors also sought to so act in order to "avoid unnecessarily alarming potential

defendants," and because the "Debtors have worked to preserve and repair their business

relationship with many of the potential defendants during these cases and have negotiated

or regained favorable credit terms with many suppliers and are continuing to do so." (*Id.*

at ¶ 37.)

8.      No notice was given to Timken that the Preservation of Estate Claims

Procedures Motion included claims against Timken. (Hart Decl. ¶ 8.)

9.      On August 16, 2007, this Court entered the Preservation of Estate Claims

Procedures Order, granting the aforementioned relief requested in the Preservation of

Estate Claims Procedures Motion by (i) allowing the Debtors to file adversary proceeding

complaints under seal, (ii) directing the Clerk of the Court to delay issuing summonses

for complaints unless and until the Debtors notified the Clerk of their intent to prosecute

such actions, (iii) staying each adversary action unless and until the Debtors effectuated

service of process on the respective defendants, and (iv) extending the deadline under

Fed. R. Civ. P. 4(m) by which the Debtors would have to serve process to March 31,

2008, so that the complaints would not be subject to dismissal under Fed. R. Civ. P. 4(m).

(Preservation of Estate Claims Procedures Order, at ¶¶ 7-10.)

*(ii)*      ***Commencement of Adversary Proceeding Against Timken and Plan
            Confirmation***

10.      Upon information and belief, on September 30, 2007, Plaintiffs

commenced the Adversary Proceeding by filing the Complaint under seal with the Clerk.

The Complaint seeks to recover, pursuant to Bankruptcy Code §§ 547 and 550, alleged

preferential transfers made to Timken in the aggregate amount of $12,083,005.61.

(Complaint; Docket for Adv. Pro. 07-02688, [Docket No. 1].)

11.     The statute of limitations for commencing avoidance actions pursuant to Bankruptcy Code §§ 541, 544, 545, 547, 548 or 553 expired on or before October 14, 2007. 11 U.S.C. 546(a).

12.     On January 25, 2008, the Court entered an order confirming the Debtors' first amended joint plan of reorganization (the "Plan"). (Findings of Fact, Conclusions of Law, and Order under 11 U.S.C. §§ 1129(a) and (b) and Fed. R. Bankr. P. 3020 confirming First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-in-Possession, as Modified, dated January 25, 2008 (the "Confirmation Order").)

*(iii)*     ***Extension of Avoidance Action Service Deadline Motion and Order***

13.     By motion dated February 28, 2008 (the "Extension of Avoidance Action Service Deadline Motion"), the Debtors sought to modify Paragraph 8 of the Preservation of Estate Claims Procedures Order, so as to extend for a second time the deadline under Fed. R. Civ. P. 4(m) by which the Debtors would be required to serve process by an additional two months to May 31, 2008. (Extension of Avoidance Action Service Deadline Motion at ¶ 18.)

14.     The stated purpose for this extension was to "enable the Debtors to fulfill their fiduciary responsibility to preserve valuable estate assets in a manner that would not unnecessarily disrupt the emergence process or the Debtors' current business relationships with potential defendants that are necessary to the Debtors' ongoing operations," as well as "reduce the administrative and economic burdens of the adversary

proceedings] on the Debtors, the Court, the Clerk of Court, and the potential defendants."

(*Id.* at ¶ 21.)

15.    In the Extension of Avoidance Action Service Deadline Motion, the

Debtors also stated that they would "not retain any of the causes of action asserted in the

[adversary proceedings] except those specifically listed on Exhibit 7.24 to the plan."[1] *Id.*

at ¶ 17). In fact, the Debtors explicitly stated that of the 742 adversary proceedings

commenced under seal, only the claims relating to Laneko Engineering Co., Wachovia

Bank, National Association, Laneko Engineering Co. Inc., and their affiliates and

subsidiaries were subject to the Preservation of Estate Claims Procedures Order. (*Id.* at ¶

17, n.4.)

16.    On March 28, 2008, the Court entered the Extension of Avoidance Action

Service Deadline Order, modifying Paragraph 8 of the Preservation of Estate Claims

Procedures Order so that the time under Fed. R. Civ. P. 4(m) by which the Debtors must

serve a defendant in the adversary proceedings with a summons and complaint was

further extended to May 31, 2008. (Extension of Avoidance Action Service Deadline

Order at ¶ 2.)

*(iv)*    ***Postconfirmation Extension of Avoidance Action Service Deadline Motion and
Order***

17.    By motion dated April 10, 2008 (the "Postconfirmation Extension of

Avoidance Action Service Deadline Motion"), the Debtors sought to further modify

Paragraph 8 of the Preservation of Estate Claims Procedures Order, as modified by the

---

[1] Exhibit 7.24 to the Plan apparently was never filed with the Court.

Extension of Avoidance Action Service Deadline Order, so as to extend for a third time

the deadline under Fed. R. Civ. P. 4(m) by which the Debtors would have to serve

process until 30 days after substantial consummation of the Plan or any modified plan.

(Postconfirmation Extension of Avoidance Action Service Deadline Motion, at ¶ 19.)

18.    The stated purpose for this extension was identical to the purpose set forth

in support of the Extension of Avoidance Action Service Deadline Motion, namely, to

"enable the Debtors to fulfill their fiduciary responsibility to preserve valuable estate

assets in a manner that would not unnecessarily disrupt the emergence process or the

Debtors' current business relationships with potential defendants that are necessary to the

Debtors' ongoing operations," as well as "reduce the administrative and economic

burdens of the adversary proceedings] on the Debtors, the Court, the Clerk of Court, and

the potential defendants." (*Id.* at ¶ 22.)

19.    The Postconfirmation Extension of Avoidance Action Service Deadline

Motion once again stated that (i) the Debtors would "not retain any of the causes of

action asserted in the [adversary proceedings] except those specifically listed on Exhibit

7.24 to the Plan;" and (ii) of the 742 adversary proceedings commenced under seal, only

the claims relating to Laneko Engineering Co., Wachovia Bank, National Association,

Laneko Engineering Co. Inc., and their affiliates and subsidiaries were subject to the

Preservation of Estate Claims Procedures Order. (*Id.* at ¶ 18 and n.4.)

20.    On April 30, 2008, the Court entered the Postconfirmation Extension of

Avoidance Action Service Deadline Order, modifying Paragraph 8 of the Preservation of

Estate Claims Procedures Order, as previously modified by the Extension of Avoidance

Action Service Deadline Order, so that the time under Fed. R. Civ. P. 4(m) by which the

Debtors must serve a defendant in the adversary proceedings with a summons and

complaint was further extended until 30 days after the later of substantial consummation

of the Plan or any modified Chapter 11 plan for the Debtors and December 31, 2008.

(Postconfirmation Extension of Avoidance Action Service Deadline Order, at ¶ 2.)

*(v)*        ***Entry of Modification Approval Order and Effective Date***

21.        On July 30, 2009, the Court entered an order (the "Modification Approval

Order") approving certain modifications to the Plan (the "Modified Plan"). (Notice of (A)

Order Approving Modifications to First Amended Joint Plan of Reorganization of Delphi

Corporation and Certain Affiliates, Debtors and Debtors-in-Possession and (B)

Occurrence of Effective Date, dated October 6, 2009, at ¶ 2). The effective date of the

Modified Plan occurred on October 6, 2009. (*Id.* at ¶ 3.)

*(vi)*        ***Supplemental Postconfirmation Extension of Avoidance Action Service
             Deadline Motion and Order***

22.        By motion dated October 2, 2009 (the "Supplemental Postconfirmation

Extension of Avoidance Action Service Deadline Motion"), the Debtors sought to further

modify Paragraph 8 of the Preservation of Estate Claims Procedures Order, as modified

by the Extension of Avoidance Action Service Deadline Order and the Postconfirmation

Extension of Avoidance Action Service Deadline Order, so as to extend for a fourth time

the deadline under Fed. R. Civ. P. 4(m) by which the Debtors were required to serve

process until 180 days after substantial consummation of the Modified Plan.

(Supplemental Postconfirmation Extension of Avoidance Action Service Deadline

Motion, at ¶ 16.)

23.     The Debtors stated that this further extension was necessary in light of the fact that the Debtors now anticipated that they would retain 177 of the adversary proceedings filed under seal. The Debtors asserted that 30 days after substantial consummation of the Modified Plan was not sufficient time to "assess the ongoing relationship with certain defendants and whether events since initiating the [adversary proceedings] have impacted the Debtors' estimated recoveries," and determine whether to pursue such retained adversary proceedings. The Debtors thus fell back to their rote justification and stated that an extension "would reduce the administrative and economic burdens of the [retained adversary proceedings] on the Debtors and the potential defendants." (*Id.* at ¶ 17, 19.)

24.     On October 22, 2009, the Court entered the Supplemental Postconfirmation Extension of Avoidance Action Service Deadline Order, modifying Paragraph 8 of the Preservation of Estate Claims Procedures Order, as previously modified by the Extension of Avoidance Action Service Deadline Order and the Postconfirmation Extension of Avoidance Action Service Deadline Order, so that the time under Fed. R. Civ. P. 4(m) by which the Debtors were required to serve a defendant in the adversary proceedings with a summons and complaint was further extended until 180 days after substantial consummation of the Modified Plan. (Supplemental Postconfirmation Extension of Avoidance Action Service Deadline Order, at ¶ 2.)

25.     Debtors eventually decided to prosecute all 177 of the adversary proceedings filed under seal.  Apparently, nothing had changed between October 2, 2009 and March 25, 2010 when Debtors obtained issuance of the summons.  The justification offered for the 180 day extension, reducing the burden on the Debtors and potential

defendants presumably by abandoning some or all of the adversary proceedings, did not

materialize.  The extension of time merely served to further delay notice to the

defendants of the sealed actions.

### (vii)    *Service of Process on Timken*

26.    Timken was served with the Complaint on or about April 8, 2010, well

over two years after the limitations period provided by Bankruptcy Code § 546(a)

expired. (Hart Decl. ¶ 10.)

### (viii)    *Prejudice Suffered by Timken*

27.    During the time Delphi intentionally concealed the avoidance actions,

Timken sold a division, rendering certain potentially relevant witnesses and documents

outside of its access or control. Timken also upgraded computer systems which will

likely make older files very costly to retrieve or entirely unavailable. (*Id.* at ¶¶ 11-12.)

## ARGUMENT

**I.      EACH OF THE PRESERVATION OF ESTATE CLAIMS PROCEDURES
ORDER AND THE EXTENSION ORDERS SHOULD BE VACATED AS
AGAINST TIMKEN ON THE GROUNDS THAT EACH ORDER WAS
IMPROVIDENTLY ENTERED.**

28.      Fed. R. Civ. P. 60(b), as made applicable by Fed. R. Bankr. P. 9024,

provides, in relevant part:

> On motion and just terms, the Court may relieve a party or
> its legal representative from a final judgment, order or
> proceeding for the following reasons: . . . (6) any other
> reason that justifies relief.

29.      Timken respectfully submits that the combination of permitting the

Plaintiffs to file the Complaint under seal -- thereby preventing Timken from discovering

that it had been sued -- while continually extending the Plaintiffs' time to serve process in

excess of two years past the expiration of the statute of limitations set forth in Bankruptcy

Code §546(a) and the 120 days set in Federal Rule of Civil Procedure 4(m) has resulted

in a proceeding completely devoid of procedural due process. Accordingly, and for the

reasons set forth below, the Preservation of Estate Claims Procedures Order and each of

the Extension Orders must be vacated as against Timken.

**A.      The Complaint Was Improperly Filed under Seal Pursuant to Section
107 of the Bankruptcy Code.**

30.      There "is a strong presumption and public policy in favor of public access

to court records," which is "rooted in the public's First Amendment right to know about

the administration of justice." *In re Food Management Group*, LLC, 359 B.R. 543, 553

(Bankr. S.D.N.Y. 2007) (internal citations and quotations omitted). In fact, the "public

interest in openness of court proceedings is at its zenith when issues concerning the

integrity and transparency of bankruptcy court proceedings are involved" *Id.*; *see also Gitto v. Worcester Telegram & Gazette Corp. (In re Gitto Global Corp.)*, 422 F.3d 1, 7 (1st Cir. 2005) ("This governmental interest is of special importance in the bankruptcy arena, as unrestricted access to judicial records fosters confidence among creditors regarding the fairness of the bankruptcy system.").

31.     Section 107(a) of the Bankruptcy Code codified the common law right of public access in the bankruptcy setting and provides, in relevant part, that "a paper filed in a case under this title and the dockets of a bankruptcy court are public records and open to examination by an entity at reasonable times without charge." 11 U.S.C. § 107(a); *In re Food Management Group, LLC*, 359 B.R. at 553. The "plain meaning of § 107(a) mandates that all papers filed with the bankruptcy court are 'public records' unless the bankruptcy court 'decides to protect the information pursuant to the standards set forth in § 107(b).'" *In re Food Management Group, LLC*, 359 B.R. at 553 (quoting *Air Line Pilots Ass'n Int'l v. Am. Nat'l Bank and Trust Co. (In re Ionosphere Clubs)*, 156 B.R. 414, 433 n.7 (S.D.N.Y. 1993)).

32.     Section 107(b) of the Bankruptcy Code establishes two exceptions to the general right of access where under "compelling or extraordinary circumstances" an exception is necessary. *Video Software Dealers Ass'n v. Orion Pictures Corp. (In re Orion Pictures Corp.)*, 21 F.3d 24, 27 (2d Cir. 1994). Section 107(b) provides:

> On request of a party in interest, the bankruptcy court shall, and on the bankruptcy court's own motion, the bankruptcy court may - (1) protect an entity with respect to a trade secret or confidential research, development, or commercial information; or (2) protect a person with respect to

> scandalous or defamatory matter contained in a paper filed
> in a case under this title.

11 U.S.C. § 107(b). However, "a judge must carefully and skeptically review sealing

requests to insure that there really is an extraordinary circumstance or compelling need"

to keep the material private. *In re Food Management Group, LLC*, 359 B.R. at 554

(internal citation and quotation omitted).

33.     The Debtors invoked Section 107(b)(l) when requesting that the Court

permit the filing of the complaints commencing the avoidance action adversary

proceedings under seal. As mentioned above, in the Preservation of Estate Claims

Procedures Motion, the Debtors sought to characterize preservation of the status quo and

existing business relationships as "commercial information" in need of protection. In

connection therewith, the Debtors alleged that they" have worked to preserve and repair

their business relationship with many of the potential defendants during these cases and

have negotiated or regained favorable credit terms with many suppliers and are

continuing to do so."[2] In essence, the Debtors sought to conceal material facts from the

Defendants, including Timken, to induce favorable business terms from them. At a

minimum, the concealment of material facts is an indication of a lack of good faith and

may rise to the level of fraud.

34.     Commercial information, however, has never been defined by the Courts

so broadly as to protect information that would be prejudicial to the Debtors vis-a-vis

---

[2] In support of their proposition that maintenance of ongoing business relationship was "commercial information" entitled to protection, the Debtors cited *In re Service Merchandise, et al.*, Case No. 399-02649 (Bankr. M.D. Tenn. Feb. 27, 2001).  There, the court granted the debtors authority to file under seal certain adversary proceedings so that they could continue negotiations with the defendants, who were also the debtors' business partners.  Even if the ruling were correct as a matter of law, which Timken disputes, the case is inapposite to the situation here, as Timken is not a business partner of the Debtors.

their own creditors. Rather, commercial information has been defined "as information
which would cause an *unfair advantage to competitors* by providing them information as
to the commercial operations of the debtor." *In re Orion Pictures Corp.*, 21 F.3d at 27
(emphasis added). Timken is not a competitor of the Debtors. (Hart Decl. ¶ 5.)
Therefore, the fact that the Debtors are seeking to avoid allegedly preferential payments
to Timken was not "commercial information" that needed to be kept or should have been
kept confidential.

35.      Also, after October 2009, when the Debtors had sold substantially all of
their businesses, the Debtors were no longer doing business with Timken. (*Id.* ¶ 6.) Thus
their stated justification no longer applied beyond October 2009, yet the Complaint
remained sealed until March 2010.

36.      Accordingly, the Preservation of Estate Claims Procedures Order as
relates to the authority to file the Complaint under seal should be vacated as to Timken.

   **B.      Timken Had No Notice that the Motions in Support of the
            Preservation of Estate Claims Procedures Order and Each of the
            Extension Orders Affected Timken.**

37.      It has long been held that the "fundamental requisite of due process of law
is the opportunity to be heard." *Grannis v. Ordean*, 234 U.S. 385, 394 (1914). This right
to be heard, however, "has little reality or worth unless one is informed that the matter is
pending and can choose for himself whether to appear or default, acquiesce or contest."
*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Thus, an
"elementary and fundamental requirement of due process in any proceeding which is to
be accorded finality is notice reasonably calculated, under all the circumstances, to

apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* at 314; *Barcia v. Sitkin*, 367 F.3d 87, 107 (2d Cir. 2004) (same); *Weinner v. City of New York*, 852 F.2d 646, 654 (2d Cir. 1988) (same).

38.     None of the motions for the Preservation of Estate Claims Procedures Order or the Extension Orders identified Timken as a potential defendant. To the contrary, the motions, with the added component of authority to file the complaints under seal, devised a procedural "Star Chamber" where Timken was intentionally kept in the dark as to its status as a defendant. Such a deprivation of due process is wrong.

39.     The Debtors attempted to justify this lack of procedural due process on the grounds that it "avoid[ed] unnecessarily alarming potential defendants" and "having to force all potential defendants to retain counsel to defend against adversary proceedings when, in fact, most of them likely will be resolved by a reorganization plan and never pursued." (Preservation of Estate Claims Procedures Motion, at 7734, 37). These justifications have absolutely no merit. The Debtors had an option - - sue the defendants or do not sue the defendants. Importantly, Timken would have had notice that it was being sued, or that it would have had an incentive to oppose the motions seeking the Preservation of Estate Claims Procedures Order and the Extension Orders. *See In re Johns-Manville Corp.*, __ F.3d __, 2010 WL 1007832 (2d Cir. 2010) (holding that Chubb Indemnity Insurance Company's due process rights were violated notwithstanding the fact that it had publication notice of the hearing that led to the order affecting it, because due process prohibits binding a third party where the party does not have sufficient information that would allow it to intelligently understand that its rights were going to be permanently affected thus necessitating the need to appear and defend).

40.     In addition, the lack of due process pursued by the Debtors had the bonus effect of disenfranchising Timken and other defendants from participating in the case and voting on the Plan and Modified Plan. Indeed, under Section 502(h), it is implicit that "a transferee of an avoidable transfer has an allowable claim once it turns over such property for which it is liable," and that it may file a proof of claim on account of same. *Fleet Nat'l Bank v. Gray (In re Bankvest Capital Corn.)*, 375 F.3d 51, 57 n.4 (1st Cir. 2004). That, in turn, allows it to "[participate] in the voting and distribution from the estate." *In re Hamilton*, 179 B.R. 749, 752 (Bankr. S.D. Ga. 1995) (quoting *In re Kolstad*, 928 F.2d 171, 174 (5th Cir. 1991), *reh'g denied*, 936 F.2d 571 (5th Cir. 1991), *cert. denied*, 502 U.S. 958 (1991)). The Debtors knew that if Timken repaid an alleged preferential transfer, it would have been entitled to file a claim, participate in the case and vote on the Plan and the Modified Plan. The justification for depriving Timken of its right to engage in the bankruptcy cases merely so the Debtors could avoid looking bad to Timken is patently improper and not justifiable under the Bankruptcy Code.

41.     For all of the foregoing reasons, each of the Preservation of Estate Claims Procedures Order, the Extension of Avoidance Action Service Deadline Order, the Postconfirmation Extension of Avoidance Action Service Deadline Order, and the Supplemental Postconfirmation Extension of Avoidance Action Service Deadline Order should be vacated on the ground that each is improvidently entered and void against Timken.

II.    **THE COMPLAINT IS BARRED BY THE STATUTE OF LIMITATIONS
AND BASED ON INSUFFICIENT SERVICE OF PROCESS AND
SHOULD BE DISMISSED.**

42.    Section 546(a) of the Bankruptcy Code, which sets forth the statute of

limitations on avoiding powers, provides:

> An action or proceeding under section 544,545, 547,548, or
> 553 of this title may not be commenced after the earlier of -
> (1) the later of - (A) 2 years after the entry of the order for
> relief; or (B) 1 year after the appointment or election of the
> first trustee under section 702, 1104, 1163, 1202, or 1302
> of this title if such appointment or such election occurs
> before the expiration of the period specified in
> subparagraph (A); or (2) the time the case is closed or
> dismissed.

11 U.S.C. § 546(a). The deadline for commencing an adversary proceeding against

Timken on account of an allegedly avoidable preference expired on or before October 14,

2007. The Plaintiffs filed the Complaint under seal on September 30, 2007, but did not

serve Timken with such Complaint until April 8, 2010, well over two years after the

statute of limitations contained in Section 546(a) expired and well beyond the 120 days

after filing set out in Fed. R. Civ. P. 4(m).

43.    To bridge the gap between the time that Timken should have been served

with the Complaint and the date on which it was actually served with the Complaint, the

Plaintiffs rely on the Extension Orders sought and entered, pursuant to Fed. R. Civ. P.

4(m), ex parte from the one entity that had an adverse interest, namely, Timken. Fed. R.

Civ. P. 4(m), made applicable by Fed. R. Bankr. P. 7004(a), provides, in relevant part:

> *Time Limit for Service.* If a defendant is not served within
> 120 days after the complaint is filed, the court - on motion
> or on its own after notice to the plaintiff - must dismiss the
> action without prejudice against that defendant or order that

service be made within a specified time. But if the plaintiff
shows good cause for the failure, the court must extend the
time for service for an appropriate period.

44.    The Extension Orders should not have been entered, as good cause did not

exist to extend the time to serve process as a matter of law. Good cause generally exists

under Fed. R. Civ. P. 4(m) when service is attempted, but is not completed, on a named

defendant within the required 120-day period. *Ahern v. Neve*, 285 F. Supp. 2d 317, 320

(E.D.N.Y. 2003). It does not exist, however, in situations where the Plaintiffs know and

can serve the named defendants, but simply choose not to do so, and where the sole

purpose in seeking the extension of time is to prevent defendants from learning that they

had been sued.[3] The use of procedural rules to obtain a result not contemplated by the

accompanying substantive law is simply not permitted. *See* 28 U.S.C. § 2075 (rules

prescribed by the United States Supreme Court "shall not abridge, enlarge, or modify any

substantive right"); *see also Morse v. Perrotta (In re Perrotta)*, 406 B.R. 1, 8 (Bankr. D.

N.H. 2009) ("Therefore, to the extent that the Bankruptcy Rules and the Bankruptcy

Code are inconsistent, the statute controls.").

45.    Moreover, while it is true that courts have the discretion to extend the time

for service of process, such extensions were not warranted here. Courts have held that

statutes of limitation are statutes of repose, and they "are enacted upon the presumption,

that one having a well-founded claim will not delay enforcing it beyond a reasonable

---

[3] As support for extending the time to serve process on defendants, the Debtors cited *Bank of Cape Verde v. Bronson*, 167 F.R.D. 370, 371-72 (S.D.N.Y. 1996), for the proposition that good cause existed where future events would have likely obviated the need to serve the complaint" and when the plaintiff requested the extension before the deadline expired. This case is inapplicable to the facts here. In *Bank of Cape Verde*, the third party plaintiff was pursuing good faith settlement negotiations with the plaintiff and third-party defendants, and had already served all or most of the parties to the action prior to the expiration of the 120-day deadline. That is a far cry from the situation here, where Timken was not, and could not have been in settlement negotiations with Plaintiffs, as it did not even know that it had been sued.

time, if he has the power to sue." *In re Cornwall*, 9 Blatchf. 114, 6 F.Cas. 586, 591

(C.C.D. Conn. Sept. Term 1871). Indeed, the purpose of statutes of repose is primarily to

give notice to plaintiffs of the time within which to bring suit and to potential defendants

of the time beyond which exposure to liability ceases. *See Diversified Hospitality Group,*

*Inc. v. Carson Pirie Scott & Co.*, 1991 WL 35953, at *5 (S.D.N.Y. Mar. 8, 1991).

46.     Statutes of repose are only to be outweighed where "the interests of justice

require vindication of the plaintiff's rights." *Family Golf Ctrs., Inc. v. Acushnet Co. (In re*

*Randall's Island Family Golf Ctrs., Inc.)*, 288 B.R. 701, 705 (Bankr. S.D.N.Y. 2003).

Such circumstances occur where the plaintiff has not slept on its rights, has commenced a

timely state court action in a court of competent jurisdiction, the particular defect in the

complaint is waivable and frequently waived, and the defendant *"could not have relied*

*upon the policy of repose embodied in the limitation statute, for it was aware that [the*

*plaintiff was actively pursuing his . . . remedy." Id.* (quoting *Burnett v. N.Y. Cent. R.R.*

*Co.*, 380 U.S. 424, 428-29 (1965)) (emphasis added).

47.     Here, Timken was entitled to rely, had no reason not to rely, and indeed

relied, upon the policy of repose embedded within Section 546(a) of the Bankruptcy

Code, having received no notice for more than two years after the statute of limitations

had expired that it had been sued by the Plaintiffs.[4]

48.     Thus, while it is generally the policy of the courts to decide cases on the

merits where possible, if the Rules are to mean anything, parties must diligently try to

follow them and courts must enforce them, even if it means that cases must sometimes be

---

[4] Timken also could not have discovered on its own that it had been sued in light of the Complaint having
been filed under seal.

finally determined on procedural grounds rather than on their substantive merits. *Mused v. U.S. Dep't of Agriculture Food and Nutrition Serv.*, 169 F.R.D. 28,35 (W.D.N.Y. 1996). By not giving notice to Timken that it had been sued and denying Timken the right to be heard and object to the motions supporting the Preservation of Estate Claims Procedures Order and each of the Extension Orders, the Plaintiffs maneuvered themselves into this corner where the Complaint should be dismissed on procedural, and not substantive, grounds. Having devised and imposed this scheme on Timken, however, the Debtors cannot now cry foul to the effects of their machinations.

49.     Accordingly, because the Complaint was not served within the time period set by Federal Rule of Civil Procedure 4(m) or within the statute of limitations, the Complaint should be dismissed for insufficient service of process and failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(5) and (6) and 12(c) and Fed. R. Bankr. P. 7012(b) and (c).

## III.     IN THE ALTERNATIVE, THE COMPLAINT IS BARRED BY JUDICIAL ESTOPPEL AND SHOULD BE DISMISSED.

50.     The equitable principle of judicial estoppel "prevents a party from asserting a factual position in a legal proceeding that is contrary to a position previously taken by [that party] in a prior legal proceeding." *In re Venture Mortgage Fund, L.P.*, 245 B.R. 460, 471 (2000), *aff'd*, 282 F.3d 185 (2d Cir. 2002). The purpose of judicial estoppel is to "protect the integrity of the judicial process . . . by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001); *see also Rosenshein v. Kleban*, 918 F.Supp. 98, 104 (S.D.N.Y. 1996) ("Judicial estoppel is invoked . . . to prevent the party

from playing fast and loose with the courts, and to protect the essential integrity of the judicial process.").

51.     In the Second Circuit, the following two factors must be satisfied to invoke the doctrine of judicial estoppel: (i) the party against whom estoppel is asserted took an inconsistent position in a prior proceeding, and (ii) the first tribunal adopted the inconsistent position in some manner, such as by rendering a favorable judgment. *In re Venture Mortgage Fund, L.P.*, 245 B.R. at 472. The doctrine, however, does not depend upon prejudice to the party invoking it. *Galerie Des Monnaies of Geneva, Ltd. v. Deutsche Bank, A.G., New York Branch (In re Galerie Des Monnaies of Geneva Ltd.)*, 55 B.R. 253,260 (Bankr. S.D.N.Y. 1985), *aff'd*, 62 B.R. 224 (S.D.N.Y. 1986).

52.     Both factors are satisfied here. First, in their Extension of Avoidance Action Service Deadline Motion, the Debtors asserted that they would "not retain any of the causes of action asserted in the [adversary proceedings] except those specifically listed on Exhibit 7.24 to the Plan." (Extension of Avoidance Action Service Deadline Motion, at ¶ 17.) In fact, the Debtors stated that of the 742 adversary proceedings commenced under seal, only the claims relating to Laneko Engineering Co., Wachovia Bank, National Association, Laneko Engineering Co. Inc., and their affiliates and subsidiaries were subject to the Preservation of Estate Claims Procedures Order. (*Id.* at ¶ 17, n.4.) The Debtors reiterated this assertion in their Postconfirmation Extension of Avoidance Action Service Deadline Motion. (Postconfirmation Extension of Avoidance Action Service Deadline Motion, at ¶ 18 and n.4.) Second, the Court, in entering the orders upon the representations set forth in the Extension of Avoidance Action Service

Deadline Motion and the Postconfirmation Extension of Avoidance Action Service
Deadline Motion, adopted the inconsistent position.

53.     Thus, by serving the Complaint on Timken, the Debtors are now
attempting to reverse a legal position previously asserted in two of their motions and
adopted by the Court in its entry of the Extension of Avoidance Action Service Deadline
Order and the Postconfirmation Extension of Avoidance Action Service Deadline Order.
Such action is impermissible and, accordingly, the Complaint should be dismissed. *See
Galerie Des Monnaies of Geneva Ltd.*, 55 B.R. at 260 (granting defendant's motion to
dismiss where debtor who stated in its disclosure statement that it has no preference
actions "may not thereafter reverse its field and commence a preference action for its own
benefit").

## IV.     THE COMPLAINT IS BARRED BY LACHES.

54.     Delphi's Complaint should be barred by laches.  A defendant may prevail
on a laches defense if it establishes (1) that it lacked knowledge that the claim might be
asserted against it; (2) that the plaintiff delayed asserting the claim despite an opportunity
to do so; and (3) that it would be prejudiced if the claim were now allowed to go forward.
*In re Gucci*, 197 Fed. Appx. 58, 60 (2d Cir. 2006); *Rapf v. Suffolk Cty*, 755 F.2d 282, 292
(2d Cir. 1985).

55.     As described above, Timken had no knowledge that a claim would be
asserted against it.  (Hart Decl. ¶ 10.)  Debtor's, in their Extension of Avoidance Action
Service Deadline Motion, asserted that they would "not retain any of the causes of action
asserted in the [adversary proceedings] except those specifically listed on Exhibit 7.24 to

the Plan." (Extension of Avoidance Action Service Deadline Motion, at ¶ 17.)  Debtors

further stated that of the 742 adversary proceedings commenced under seal, only the

claims relating to Laneko Engineering Co., Wachovia Bank, National Association,

Laneko Engineering Co. Inc., and their affiliates and subsidiaries were subject to the

Preservation of Estate Claims Procedures Order. *Id.* at ¶ 17, n.4.)  The Debtors reiterated

this assertion in their Postconfirmation Extension of Avoidance Action Service Deadline

Motion. (Postconfirmation Extension of Avoidance Action Service Deadline Motion, at ¶

18 and n.4.)

57.      Debtors had ample opportunity to assert their claims against Timken long

before the action was unsealed and the Complaint served on or about April 8, 2010.  The

stated justification for filing under seal—the intent to pay all creditors in full, and not

wanting to prematurely prejudice potential defendants—ceased to exist sometime

between April and October 2008.  In April 2008, the plan sponsor withdrew from the

deal.  In October 2008, Debtors sought approval of proposed modifications to the

confirmed plan that provided a recovery of only 38.8%.  At some point in between those

two dates, Debtors knew that they could not pay creditors in full and that litigating the

adversary proceedings may be necessary.  Despite this knowledge, Debtors continued to

wait almost two years to unseal the Adversary Proceedings.

57.      Timken would be severely prejudiced if the action is allowed to go

forward.  Timken has sold a business unit, rendering certain potentially relevant

witnesses and documents outside of its access or control.  (Hart Decl. ¶ 11.)  Timken also

upgraded computer systems which will likely make older files very costly to retrieve or

entirely unavailable.  (*id.* ¶ 12.)  Accordingly, the Complaint should be dismissed for

laches.

## V.    THE COMPLAINT FAILS TO PLEAD FACTS SUFFICIENT TO STATE A CLAIM FOR RELIEF AND SHOULD BE DISMISSED.

58.    Finally, Delphi's Complaint does not state a claim for relief under 11

U.S.C. § 547, and, therefore, must be dismissed pursuant to Rule 7012.

59.    In *Bell Atlantic Corp. v. Twombley*, 550 U.S. 544 (2007), the Supreme

Court established the standard by which federal courts are to determine motions to

dismiss.  Under *Twombley*, to survive a motion to dismiss, the complaint must contain

sufficient factual matter to "state a claim to relief that is plausible on its face." *Id.* at 570.

A pleading that only offers "labels and conclusions" or "a formulaic recitation of the

elements of a cause of action" will not suffice. *Id.* at 555; *see also Ashcroft v. Iqbal*, 129

S. Ct. 1937 (2009).

60.    In *Angell v. Haven (In re Careamerica)*, 409 B.R. 346 (Bankr. E.D.N.C.

2009), the bankruptcy court applied the Supreme Court's *Twombley* standard to a

preference action.  The defendant filed a motion to dismiss the trustee's claims to avoid

alleged preferential and fraudulent transfers. The bankruptcy court concluded that the

trustee's complaint did not meet the *Twombley* standard because it failed to identify

which of the debtors made the alleged transfers, and because it failed to allege any facts

to show the existence or nature of an antecedent debt.  *Id.* at 350-51.

61.    Like the complaint in *Careamerica*, the Complaint in this case does not

contain sufficient factual matter to state a claim for relief that is plausible on its face.  The

complaint contains nothing more than a formulaic recitation of the elements of their

claim.  The Complaint contains no factual allegations other than the list of alleged

transfers contained in Exhibit 1 to the Complaint.

62.    Plaintiffs do not allege that they made the transfers to Timken, only that

they "made or caused to be made" the alleged transfers.

63.    Plaintiffs do not allege which of the Debtor entities made the transfers.  As

in *Careamerica*, the Complaint merely states that transfers were made by "Plaintiffs"

which are defined as all of the Debtors collectively.

64.    Plaintiffs do not allege which of the Timken entities received the transfers,

instead simply alleging transfers to Defendants, defined as all five of the Timken

companies collectively.

65.    Finally, as in *Careamerica,* the Complaint does not allege any facts

regarding the nature, amount, or existence of any antecedent debt.

66.    Accordingly, the Court should dismiss the Complaint under *Twombley* and

*Iqbal*.

## VI.    TIMKEN INCORPORATES ALL APPLICABLE ARGUMENTS RAISED BY OTHER DEFENDANTS IN THEIR DISMISSAL MOTIONS

67.    Numerous motions have been filed by the defendants in other various

avoidance actions. These motions seek the dismissal of the avoidance complaints on

various legal grounds.  Because the facts surrounding those actions are, in many respects,

similar to those found here, Timken incorporates all applicable arguments raised by the other defendants in their dismissal motions.

## CONCLUSION

68.     Plaintiffs have engaged in conduct that violates several core tenets of American jurisprudence in seeking to conceal from Timken that it had been sued for over a two year period of time. Plaintiffs' failure to serve notices of the motions for the Preservation of Estate Claims Procedures Order and each of the Extension Orders was a blatant violation of Timken's due process rights and thus, as a matter of law, such orders are void as against Timken. In all events, the subject orders were improvidently entered without notice. Consequently, the Complaint served on Timken well over two years after the statute of limitation had expired should be dismissed and after the time for service had passed. Furthermore, the Complaint fails to allege facts sufficient to meet the pleading standard expressed by the Supreme Court in *Twombley* and *Iqbal*. In the alternative, the Debtors' statements in two of their motions that claims would not be pursued against Timken should now bar the assertion of such claims as a matter of judicial estoppel.

## MEMORANDUM OF LAW

The legal points and authorities upon which this motion relies are incorporated herein. Timken, therefore, respectfully requests that the requirement of filing a separate memorandum of law under Local Rule 9013-2(b) be deemed satisfied.

**WHEREFORE**, Timken respectfully requests that: (i) each of the Preservation of Estate Claims Procedures Order, the Extension of Avoidance Action Service Deadline Order, the Postconfirmation Extension of Avoidance Action Service Deadline Order, and

NYC/485698. 2                                     - 26 -

the Supplemental Postconfirmation Extension of Avoidance Action Service Deadline

Order be vacated as against it; (ii) the Complaint against it be dismissed with prejudice

for failing to state a claim upon which relief can be granted; or (iii) in the alternative, the

Complaint against it be dismissed with prejudice as being barred by judicial estoppel; and

(iv) for such other and further relief as this Court may deem appropriate.


Dated: May 14, 2010

                                        ARENT FOX LLP

                        By:            /s/ James Sullivan
                                        James Sullivan
                                        1675 Broadway
                                        New York, New York 10019
                                        Telephone: (212) 484-3900
                                        Facsimile: (212) 484-3990
                                        Email:  sullivan.james@arentfox.com

                                        *Counsel to The Timken Company, The
                                        Timken Corporation, and MPB Corporation
                                        d/b/a Timken Super Precision*