BRYAN CAVE LLP                                    **Hearing Date:  July 22, 2010**
Michelle K. McMahon (MM-8130)
1290 Avenue of the Americas
New York, NY 10104
Telephone:  (212) 541-2000
Facsimile:  (212) 541-1493

BRYAN CAVE LLP
Lloyd A. Palans (pro hac vice pending)
Christopher J. Lawhorn (pro hac vice pending)
200 North Broadway, Suite 3600
St. Louis, MO 63102
Telephone:  (314) 259-2000
Facsimile:  (314) 259-2020
lapalans@bryancave.com
cjlawhorn@bryancave.com

*Attorneys for Spartech Polycom*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
                          :

In re:                    :     Chapter 11:
                          :

DELPHI CORPORATION, *et al.*,      :     Case No. 05-44481 (RDD)
                          :     Jointly Administered

------------------------------------------------------------x

DELPHI CORPORATION           :
                          :     Adv. Pro. No. 07-02639 (RDD)

                Plaintiff,     :
                          :

        -against-      :
                          :

SPARTECH POLYCOM         :
                          :

                Defendant.    :

------------------------------------------------------------x

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FILED BY DEFENDANT
SPARTECH POLYCOM SEEKING AN ORDER (I) VACATING PRIOR ORDERS
ESTABLISHING PROCEDURES FOR ADVERSARY PROCEEDINGS THAT VIOLATE
PROCEDURAL DUE PROCESS, (II) DISMISSING THE ADVERSARY PROCEEDING
WITH PREJUDICE PURSUANT TO FED. R. CIV. P. 12(b) AND FED. R. BANKR. P. 7012(b),
OR (III) DISMISSING THE ADVERSARY PROCEEDING
ON THE GROUNDS OF LACHES, *RES JUDICATA* OR JUDICIAL ESTOPPEL**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS ..................................................................................... 2

ARGUMENT ...................................................................................................... 6

I.     THE EXTENSION ORDERS SHOULD BE VACATED AS AGAINST SPARTECH
       ON THE GROUNDS THAT EACH VIOLATED PROCEDURAL DUE PROCESS
       AS THEY WERE ENTERED WITHOUT OLIN AND/OR SPARTECH HAVING
       NOTICE OR AN OPPORTUNITY TO BE HEARD............................................6

       A.     This Court Has The Power To Vacate The Extension Orders ...................................7

       B.     Delphi Failed To Serve Spartech With Notice Of The Motions Seeking The
              Extension Orders And Failed To Provide Spartech An Opportunity To Be
              Heard On The Motions ................................................................8

II.    THE COMPLAINT IS BARRED BY THE STATUTE OF LIMITATIONS AND
       SHOULD BE DISMISSED ..............................................................11

       A.     Once The Extension Orders Are Vacated, Delphi's Complaint Against
              Spartech Is Barred By The Statute Of Limitations ...................................11

       B.     Spartech's Ability To Defend The Complaint Has Been Severely Prejudiced
              By Delphi's Failure To Comply With The Statute Of Limitations ........................12

III.   THE COMPLAINT IS ALSO BARRED BY LACHES AND SHOULD BE
       DISMISSED ...............................................................................15

IV.    THE COMPLAINT IS BARRED BY *RES JUDICATA* BECAUSE DELPHI FAILED
       TO PRESERVE THE ALLEGED CAUSE OF ACTION, AND IT SHOULD BE
       DISMISSED ...............................................................................16

V.     THE COMPLAINT IS ALSO BARRED BY JUDICIAL ESTOPPEL ............................21

VI.    THE EXTENSION ORDERS SHOULD BE VACATED BECAUSE THERE WAS
       NO GOOD CAUSE TO EXTEND THE TIME FOR SERVICE......................................22

       A.     "Good Cause" Did Not Exist ........................................................23

       B.     The Facts Did Not Warrant A Discretionary Extension .................................24

VII.   THE EXTENSION ORDERS SHOULD BE VACATED BECAUSE THE
       COMPLAINTS WERE IMPROPERLY SEALED...........................................26

CONCLUSION...................................................................................28

## TABLE OF AUTHORITIES

### FEDERAL CASES

*In re America Preferred Prescription, Inc.*, 266 B.R. 273 (E.D.N.Y. 2000) ................................ 19

*Bank of Cape Verde v. Bronson*, 167 F.R.D. 370 (S.D.N.Y. 1996) ............................................... 22

*Barcia v. Sitkin*, 367 F.3d 87 (2d Cir. 2004) ................................................................................. 9

*Board of Regents v. Tomanio*, 446 U.S. 478 (1980) ............................................................... 12, 24

*Browning v. Levy*, 283 F.3d 761 (6th Cir. 2002) ......................................................................... 19

*Burnett v. N.Y. Cent. R.R. Co.*, 380 U.S. 424, 428-29 (1965) ....................................................... 13

*In re: Century Brass Products, Inc. v. Caplan*, 22 F.3d 37 (2d Cir. 1994) ................................... 12

*In re Cornwall*, 9 Blatchf. 114, 6 F. Cas. 586, 591 (C.C.D. Conn. 1871) (No. 3,250) ................. 12

*Delatour v. Meredith*, 144 F.2d 594 (2d. Cir. 1944) .................................................................... 26

*Eastern Refractories Co. v. Forty Eight Insulations, Inc.*, 187 F.R.D. 503
    (S.D.N.Y. 1999) ................................................................................................... 21, 22, 23, 24

*Family Golf Ctrs., Inc. v. Acushnet Co. (In re Randall's Island Family Golf Ctrs., Inc.)*,
    288 B.R. 701 (Bankr. S.D.N.Y. 2003) .................................................................................... 13

*In re Food Management Group, LLC*, 359 B.R. 543 (Bankr. S.D.N.Y. 2007) .............................. 25

*In re Galerie Des Monnaies of Geneva, Ltd.*, 62 B.R. 224 (S.D.N.Y. 1986) ................................ 18

*Galerie Des Monnaies of Geneva, Ltd. v. Deutsche Bank, A.G., New York Branch (In re
    Galerie Des Monnaies of Geneva, Ltd)*, 55 B.R. 253 (Bankr. S.D.N.Y. 1986) ...................... 20

*In re Gitto Global Corp.*, No. 05-10334, 2005 WL 1027348 (D. Mass. May 2, 2005) ................. 26

*Grannis v. Ordean*, 234 U.S. 385 (1914) ...................................................................................... 9

*Gucci v. Sinatra* (*In re Gucci*), 197 Fed. Appx. 58, 60 (2d Cir. 2006) ......................................... 15

*In re I. Appel Corp.*, 300 B.R. 564 (Bankr. S.D.N.Y. 2003) ......................................................... 17

*International Railway of Central America v. United Fruit Co.*, 373 F.2d 408
    (2d. Cir. 1967) ........................................................................................................................ 13

*In re Itel Corp.*, 17 B.R. 942 (B.A.P. 9th Cir. 1982) ............................................................... 26, 27

*In re Johns Manville Corp.*, __ F.3d __, 2010 WL 1007832 (2d Cir. 2010) ...............................10

*Kunica v. St. Jean Finance, Inc.*, 233 B.R. 46 (S.D.N.Y. 1999) ....................................19

*In re Lathop, Haskins & Co.*, 223 F. 912 (2d Cir. 1915) ..............................................15

*Lavin v. The Emigrant Industrial Savings Bank*, 1 F. 641 (C.C. S.D.N.Y. 1880) ........................10

*Luessenhop v. Clinton County*, 466 F.3d 259 (2d Cir. 2006)............................................9

*Lugo v. Keane*, 15 F.3d 29 (2d Cir. 1994).......................................................9

*Matarese v. LeFevre*, 801 F.2d 98 (2d Cir. 1986)...........................................7

*McCrae v. KLLM Inc.*, 89 Fed. Appx. 361, 363 (3d Cir. 2004)....................................24

*McKibben v. Credit Lyonnais*, 1999 WL 604883 (S.D.N.Y. Aug. 10, 1999).............................24

*Mitchell v. Washingtonville Central Sch. District*, 190 F.3d 1 ........................................20

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) .........................9

*Mused v. U.S. Department of Agriculture Food and Nutrition Serv.*, 169 F.R.D. 28
    (W.D.N.Y. 1996).........................................................................14

*New Hampshire v. Maine*, 532 U.S. 742 (2001) .......................................................20

*In re Orion Pictures Corp.*, 21 F.3d 24 (2d Cir. 1994) ...............................................27

*Pichardo v. John Ashcroft*, 374 F.3d 46 (2d Cir. 2004) ................................................7

*Recreational Properties, Inc. v. Southwest Mortg. Serv., Inc.*, 804 F.2d 311
    (5th Cir. 1986) .........................................................................7

*Rosenshein v. Kleban*, 918 F. Supp. 98 (S.D.N.Y. 1996) ...........................................20

*Rothensies v. Electric Storage Battery Co.*, 329 U.S. 296 (1946)................................12, 14, 23, 24

*In re Sherman-Noyes & Prairie Apartments Real Estate*, 59 B.R. 905
    (Bankr. N.D. Ill. 1986) .................................................................26

*Simer v. Rios*, 661 F.2d 655 (7th Cir. 1981)........................................................7

*Simon v. Safelite Glass Corp.*, 128 F.3d 68 (2d. Cir. 1997)........................................20

*Spinale v. United States*, No. 03 CIV 1704, 2005 WL 659150 (S.D.N.Y. Mar. 16, 2005)............22

*United States v. Kubrick*, 444 U.S. 111 (1979) ..................................................................12, 13, 24

*United States v. Uccio*, 940 F.2d 753 (2d Cir. 1991) ......................................................................7

*Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694 (1988)..........................................10

## FEDERAL STATUTES AND RULES

11 U.S.C. § 546(a)........................................................................................................................10

Fed. R. Civ. P. 4(m)..................................................................................................................3, 21

Fed. R. Civ. P. 60(b)(4)..................................................................................................................7

Fed. R. Civ. P. 60(b)(5)..................................................................................................................7

Fed. R. Civ. P. 60(b)(6)..................................................................................................................7

11 U.S.C. §107 ..............................................................................................................................25

## MISCELLANEOUS

Fed. R. Bankr. P. 9024 ...................................................................................................................2

Fed. R. Bankr. P. 7012(b)...............................................................................................................2

Fed. R. Bankr. P. 7004 .................................................................................................................21

## Other Authorities

1 Horace G. Wood, A Treatise on the Limitation of Actions 8-9 (4th ed. 1916) ..................1

Spartech Polycom ("Spartech"), by its undersigned attorneys, respectfully states:

## **PRELIMINARY STATEMENT**

1.      This case is about the tactical use of a time-barred avoidance action filed under

seal, with summons and service of process unilaterally withheld using a series of motions filed

but never served and only unveiled to the Defendant 2½ years later after the statute of limitations

had run.

2.      On or about September 26, 2007, Delphi Corporation and its affiliated debtors

(collectively "Delphi" or "Debtors") commenced this action against Defendant Spartech

Polycom by filing a Complaint (defined below), under seal, seeking judgment against Spartech

in excess of $8.6 million plus interest, costs and attorneys' fees.

3.      Delphi violated fundamental principles of procedural due process by filing a

series of motions (never served) that established unique (and unprecedented) procedures that

permitted Delphi to file adversary actions under seal and continually delay service of process for

2½ years, again, after the statute of limitations had run.  These unique procedures bestowed one-

sided benefits upon Delphi, including allowing Delphi to "avoid unnecessarily alarming"

defendants (Preservation of Estate Claims Procedure Motion [Dkt. 8905] ¶ 37) (the "First

Extension Motion"), and providing Delphi with an obvious tactical advantage to negotiate

favorable credit terms with suppliers without disclosing to those same suppliers that they had

been sued. *Id.*, ¶¶ 33-34, 37.  If this proceeding is not dismissed, these tactics result in the

unilateral extension of a statute of limitations that expired on October 8, 2007 for a lawsuit now

seeking to collect over $8.6 million, based on transfers allegedly made some five years ago.

Accordingly, Spartech seeks an order from the Court:

- •      Vacating the interlocutory Extension Orders (defined below) because: (a)
Delphi's intentional failure to provide Spartech with notice of the motions seeking

entry of the Extension Orders violates due process and renders the Extension
Orders void and unenforceable against Spartech; (b) cause did not exist to extend
the time for service of the Complaint; and/or (c) the Complaint was improperly
filed under seal pursuant to 11 U.S.C. §107.[1]

- Dismissing with prejudice the Complaint against Spartech, pursuant to Fed. R.
Civ. P. 12(b)(6), made applicable by Fed. R. Bankr. P. 7012(b), on the grounds
that it is barred by the applicable 2-year statute of limitations.

- Dismissing the Complaint with prejudice on the grounds that it is barred by
laches, *res judicata* and judicial estoppel.

## STATEMENT OF FACTS

4.       On October 8, 2005, Delphi Corporation and certain of its subsidiaries filed

voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the

"Bankruptcy Code").  On October 14, 2005, three additional U.S. subsidiaries of Delphi filed

voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

5.       Prior to the commencement of the Debtors' cases, Delphi purchased goods from

Spartech.

6.       Pursuant to section 546(a) of the Bankruptcy Code, the statute of limitations for

Delphi to bring avoidance actions against Spartech began to run upon the filing of Delphi's

bankruptcy petition on October 8, 2005.

7.       By motion dated August 6, 2007, Delphi requested entry of an order seeking,

among other things, the establishment of procedures for adversary proceedings, including those

commenced by the Debtors under sections 541, 544, 545, 547, 548 or 553 of the Bankruptcy

Code.  First Extension Motion, ¶ 17.  The procedures which Delphi sought included:  (i) an

extension of time beyond the initial 120-day period to serve certain adversary summonses and

---

[1]     To the extent the Court deems the Extension Orders to be "final" orders – which they are not – the orders should
be vacated for the same reasons, pursuant to Fed. R. Civ. P. 60(b)(4), (5), (6) made applicable by Fed. R. Bankr.
P. 9024.

complaints pursuant to Fed. R. Civ. P. 4(m), (ii) a stay of the applicable adversary proceedings until service of process was effected, and (iii) permitting Delphi to file the complaints under seal (the "Preservation Procedures" ). *Id.*, ¶¶ 33-38. *Delphi did not give any notice to Spartech of this motion*. Affidavit of Service dated August 10, 2007 [Dkt. 9039]. On August 16, 2007, the Court entered an order providing, among other things, an extension of time to March 31, 2008 to serve adversary summonses and complaints as well as permission to file the complaints under seal. Preservation of Estate Claims Procedures Order [Dkt. 9105] (the "Procedures Order").

8.      On September 26, 2007, Delphi commenced this adversary proceeding by filing a complaint against Spartech under seal with the Clerk (the "Complaint"). The Complaint seeks to recover, pursuant to Sections 547 and 550 of the Bankruptcy Code, alleged preferential transfers made to Spartech in the aggregate amount of $8,637,901.23. *Delphi failed to serve Spartech with summons or notice of the Complaint until March 25, 2010, well beyond two years since Delphi's bankruptcy case was filed.*

9.      On October 8, 2007, the statute of limitations for commencing a preference action by Delphi against Spartech expired.

10.      On or about December 10, 2007, Delphi filed its First Amended Joint Plan of Reorganization, [Dkt. 11386] (the "Confirmed Plan"), which was confirmed by order of the Court dated January 25, 2008 [Dkt. 12359] (the "Confirmation Order"). The Confirmed Plan provided for payment in full of all unsecured creditors. Exhibit 7.24 to the Confirmed Plan,

which set forth the actions Delphi sought to retain under the plan, notably made no reference to

Spartech or the Complaint.[2]

11.    On February 28, 2008, Delphi sought a second extension – until May 31, 2008 –

to serve its sealed complaints.  Extension of Avoidance Action Service Deadline Motion

[Dkt. 12922], ¶ 18 (the "Second Extension Motion").  Delphi professed a need to allow the

actions filed against all defendants to remain under seal so as not to disrupt "current business

relationships" with defendants which are necessary to Delphi's ongoing operations" as well as

reduce the "administrative and economic burdens" of the adversary proceedings to the Debtors,

the Court and the defendants."  *Id.*, ¶ 21.  *No notice of the Second Extension Motion was given to*

*Spartech.*  Affidavit of Service dated March 4, 2008 [Dkt. 12970].  On March 28, 2008, the

Court granted the relief requested in the Second Extension Motion.  Extension of Avoidance

Action Service Deadline Order [Dkt. 13277], ¶ 2 (the "Second Extension Order").

12.    The Second Extension Motion reaffirmed that Delphi would "not retain any

causes of action asserted in the [adversary proceedings] except those specifically listed in

Exhibit 7.24 of the Plan."  Second Extension Motion, ¶ 17.  In fact, with regard to 742 adversary

proceedings filed under seal, only the claims related to Laneko Engineering Co., Wachovia

Bank, National Association, Laneko Engineering Co, Inc., and their affiliates and subsidiaries

(the "Laneko Defendants"), were subject to the Procedures Order.  *Id.*, ¶ 17 n.4.

13.    On April 10, 2008, Delphi sought a third extension, seeking to extend the service

deadline until 30 days after substantial consummation of the Debtors' plan.  Postconfirmation

Extension of Avoidance Action Service Deadline Motion [Dkt. 13361], ¶ 19 (the "Third

---

[2]    Section 14.3 of the Confirmed Plan and Modified Plan (defined below) provides that the Debtors "may alter,
amend, or modify any Exhibits to this Plan under Section 1127(a) of the Bankruptcy Code *at any time prior to
the Confirmation Date*."  (Emphasis added).  The Confirmation Date was January 25, 2008.  Thus, after
January 25, 2008, the Debtors did not have the right to amend or add to Exhibit 7.24 (renumbered as Exhibit
7.19 in the subsequent Modified Plan).

Extension Motion"). *No notice of the Third Extension Motion was given to Spartech.* Affidavit

of Service, dated April 16, 2008 [Dkt. 13415]. On April 30, 2008, the Court granted the relief

requested in the Third Extension Motion, extending the service deadline to the later of 30 days

after substantial consummation of a plan or December 31, 2008. Postconfirmation Extension of

Avoidance Action Service Deadline Order [Dkt. 13484], ¶ 2 (the "Third Extension Order").

14.    Despite changed circumstances materially and adversely affecting Delphi's

emergence from bankruptcy, Delphi, once again, offered the same justification for its third

request – to avoid "unnecessarily disrupt[ing] the emergence process or the Debtors' current

business relationships with potential defendants that are necessary to the Debtors' ongoing

operations." Third Extension Motion, ¶ 22. Delphi also professed that it and the defendants

should not be required to spend resources on the adversary proceedings when "*most* of the

Adversary Proceedings will *not* be prosecuted if the Plan were to become effective and likely

*will no be prosecuted under any modified plan.*" *Id.* (emphasis added).

15.    On October 2, 2009, Delphi sought a fourth extension, seeking to extend for the

fourth time the deadline for service of process, until 180 days after  substantial consummation of

the Debtors' plan. Supplemental Postconfirmation Extension of Avoidance Action Service

Deadline Motion [Dkt. 18952], ¶ 16 (the "Fourth Extension Motion"). *No notice of the Fourth*

*Extension Motion was given to Spartech.* Affidavit of Service, dated October 7, 2009 [Dkt.

18967]. On October 22, 2009, the Court granted the relief requested in the Fourth Extension

Motion. Supplemental Postconfirmation Extension of Avoidance Action Service Deadline Order

[Dkt. 18999], ¶ 2 (the "Fourth Extension Order" and together with the Procedures Order and the

Second and Third Extension Orders are collectively, the "Extension Orders").

16.     Nearly four years after commencing its Chapter 11 proceedings, and following a
second round of disclosures and voting, Delphi's revised and modified plan (the "Modified
Plan") went "effective" on October 6, 2009.  Notice of (A) Order Approving Modifications to
First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates,
Debtors and Debtors-in-Possession and (B) Occurrence of Effective Date, dated October 6, 2009
[Dkt. 18958], ¶ 2.

17.     Eventually, the Complaint was unsealed and Delphi mailed a copy of the
Complaint to Spartech – over 2½ years after the Complaint was filed under seal and after the
statute of limitations provided by Section 546(a) of the Bankruptcy Code had expired.

18.     Not realizing that the Complaint had been filed under seal against it, Spartech
took no special actions to organize, hold or preserve records with respect to Delphi or preserve
information from Spartech employees knowledgeable about the Delphi business relationship.  As
a result, Spartech has suffered great prejudice, and has been harmed in its ability to defend the
Complaint.

## ARGUMENT

**I.     THE EXTENSION ORDERS SHOULD BE VACATED AS AGAINST SPARTECH
ON THE GROUNDS THAT EACH VIOLATED PROCEDURAL DUE PROCESS
AS THEY WERE ENTERED WITHOUT OLIN AND/OR SPARTECH HAVING
NOTICE OR AN OPPORTUNITY TO BE HEARD.**

19.     Spartech respectfully submits that the combination of permitting Delphi to file the
Complaint under seal – thereby concealing from Spartech that Spartech had been sued for $8.6
million – while continually extending Delphi's time to serve process for more than 2½ years past
the expiration of the statute of limitations – again without notice to Spartech – has resulted in a
proceeding devoid of procedural due process.  Accordingly, the Extension Orders must be
vacated as against Spartech.

**A.    This Court Has The Power To Vacate The Extension Orders.**

20.    The Extension Orders are interlocutory orders that the Court can reconsider or

modify at its discretion.  *See United States v. Uccio*, 940 F.2d 753, 757-58 (2d Cir. 1991).

21.    Even if the Court were to conclude that its Extension Orders are "final," the same

relief requested by Spartech is warranted under Fed. R. Civ. P. 60(b)(4), (5) and (6) for the

following three reasons:

- First, Fed. R. Civ. P. 60(b)(4), made applicable by Fed. R. Bankr. P. 9024,
  authorizes a court to relieve a party from a final order if the order is void.  Fed. R.
  Civ. P. 60(b)(4).  A court must grant relief under this Rule if the order is void as a
  violation of due process for failing to provide proper notice.  *Simer v. Rios,* 661
  F.2d 655, 663-64 (7th Cir. 1981) (judgment was void as a violation of due process
  due to the failure to give proper notice to class members); *Recreational Props.,
  Inc. v. Southwest Mortg. Serv., Inc.*, 804 F.2d 311, 314 (5th Cir. 1986) (under Fed.
  R. Civ. P. 60(b)(4), vacation of a void order that violates due process is
  mandatory, not discretionary).

- Second, Fed. R. Civ. P. 60(b)(5) and (6) also provide, in relevant part:

  > On motion and just terms, the Court may relieve a party or
  > its legal representative from a final judgment, order or
  > proceeding for the following reasons . . . . (5) applying it [the
  > order] prospectively is no longer equitable; or (6) any other
  > reason that justifies relief.

- And, third, Fed. R. Civ. P. 60(b)(6) "confers broad discretion on the trial court to
  grant relief when appropriate to accomplish justice [and] it constitutes a grand
  reservoir of equitable power to do justice in a particular case."  *Pichardo v. John
  Ashcroft*, 374 F.3d 46, 55-56 (2d Cir. 2004) (quoting *Matarese v. LeFevre*, 801
  F.2d 98, 106 (2d Cir. 1986).  Furthermore, "it is properly invoked where there are
  extraordinary circumstances, or where the judgment may work an extreme and
  undue hardship" as here.  *Id.*

All of these grounds exist for vacating the Extension Orders in the present case.

**B.    Delphi Failed To Serve Spartech With Notice Of The Motions Seeking The
Extension Orders And Failed To Provide Spartech An Opportunity To Be
Heard On The Motions.**

22.    Delphi obtained unilateral extensions of the deadlines to serve the Complaint.

While the requests for these extensions were not filed under seal, Delphi did not provide any

notice to Spartech of the Extension Orders or the related motions. *Spartech had no opportunity to be heard on matters that fundamentally affected rights.*

23.     As support for multiple Extension Orders, Delphi's motions alleged that they merely wanted to "avoid unnecessarily alarming potential defendants" and save the defendants from having to "retain counsel to defend against adversary proceedings...." First Extension Motion, ¶¶ 33, 37. This maneuver also provided Delphi with a tactical advantage with its suppliers: "Debtors have worked to preserve and repair their business relationship with many of the potential defendants during these cases and have negotiated or regained favorable credit terms with many suppliers and are continuing to do so." *Id*., ¶ 37. Delphi's stated intent was to "preserve the status quo," and "potentially valuable assets without disrupting the plan process or existing business relationships prematurely or prejudicing the rights of any defendants." *Id.*, ¶¶ 33-34. Delphi knew it had filed a $8.6 million lawsuit against Spartech. But Spartech did not. In other words, Delphi was concerned that if Spartech knew that it was being sued for $8.6 million, Delphi's business relationship with Spartech would be impaired.

24.     Dephi also justified the Extension Orders as "reduc[ing] the administrative and economic burdens of the [adversary proceedings] on the Debtors, the Court, the Clerk of Court, and the potential defendants." Second Extension Motion, ¶ 21; Third Extension Motion, ¶ 22; Fourth Extension Motion, ¶ 19. Delphi's professed concerns and good intentions toward Spartech's interests are reminiscent of an old axiom – with Delphi as a friend, one needs no enemy.

25.     Delphi's self-interested justifications cannot support the wholesale evisceration of Spartech's procedural due process rights. Delphi had two clear options: (1) sue Spartech or not sue Spartech; or (2) obtain an agreement with Spartech to toll the statute of limitations or not

obtain a tolling agreement from Spartech.   Delphi bears responsibility for its actions (or

inactions).  Instead, Delphi advanced creative, yet infirm, procedures that violated Spartech's due

process rights and caused severe prejudice.

26.     It has long been held that the "fundamental requisite of due process of law is the

opportunity to be heard." *Grannis v. Ordean*, 234 U.S. 385, 394 (1914).  However, this right to

be heard "has little reality or worth unless one is informed that the matter is pending and can

choose for himself whether to appear or default, acquiesce or contest." *Mullane v. Central

Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).  Thus, an "elementary and fundamental

requirement of due process in any proceeding which is to be accorded finality is notice

reasonably calculated, under all the circumstances, to apprise interested parties of the pendency

of the action and afford them an opportunity to present their objections." *Id.*; *Barcia v. Sitkin*,

367 F.3d 87, 107 (2d Cir. 2004) (same).

27.     In *Luessenhop v. Clinton County*, 466 F.3d 259, 269-270 (2d Cir. 2006), a

taxpayer claimed to have received insufficient notice of foreclosure proceedings where the

county sent notice of foreclosure via certified mail and the notice was returned unclaimed.  The

Second Circuit vacated the underlying judgment finding that the county's notice was insufficient

because the county failed to take any additional steps to apprise the taxpayer of the impending

action although additional steps were practicable and not burdensome.  *Id.*  ("This requirement of

'notice reasonably calculated' must be made in good faith, for, 'when notice is a person's due,

process which is a mere gesture is not due process.'") (citing *Mullane,* 339 U.S. at 315); *Lugo v.

Keane*, 15 F.3d 29, 30 (2d Cir. 1994) (vacating judgment for failure to provide notice and an

opportunity to be heard because "[n]o principle is more fundamental to our system of judicial

administration than that a person is entitled to notice before adverse judicial action is taken

against him."); *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 707 (1988) (due

process requires notice of pendency of action and opportunity to be heard).

28.    Spartech had no way of knowing that its rights were being repeatedly impaired by

a stealth Complaint or orders entered with no notice to it.  This deprivation of adequate notice

violated Spartech's fundamental due process rights.

29.    It is black letter law that if a party such as Spartech is not afforded due process

during the proceeding that led up to entry of an order, the party is not bound and the order is void

and unenforceable against that party.  *Lavin v. The Emigrant Indus. Savings Bank*, 1 F. 641, 664

(C.C. S.D.N.Y. 1880) ("if jurisdiction be taken where there has been no service of process or

notice the proceeding is a nullity. It is not only voidable, but it is absolutely void.") *In re Johns

Manville Corp*., __ F.3d __, 2010 WL 1007832, at *20 (2d Cir. 2010) (because Chubb Indemnity

Insurance Company did not receive notice of the proceedings that led to approval of an

underlying settlement agreement, plan and other orders at issue, it was not bound by the orders -

otherwise its due process rights would be violated).  Accordingly, the Extension Orders must be

vacated and the Complaint dismissed.


## II.    THE COMPLAINT IS BARRED BY THE STATUTE OF LIMITATIONS AND SHOULD BE DISMISSED.

30.    Section 546(a) of the Bankruptcy Code, establishes the statute of limitations on

avoiding powers, and states:

> An action or proceeding under section 544, 545, 547, 548, or 553 of this title *may
> not be commenced* after the earlier of – (1) the later of – (A) *2 years after the
> entry of the order for relief*; or (B) 1 year after the appointment or election of the
> first trustee under section 702, 1104, 1163, 1202, or 1302 of this title if such
> appointment or such election occurs before the expiration of the period specified
> in subparagraph (A); or (2) the time the case is closed or dismissed.

11 U.S.C. § 546(a) (emphasis added).

31.     Because any or all of the Extension Orders should be vacated *ab initio*, the Complaint is barred by the two-year statute of limitations.  A statute of limitations serves to protect a defendant from an "evergreen" litigation risk, not to create a moving target subject to a plaintiff's self-serving, unilateral interests.  Delphi's claim is barred.

A.     **Once The Extension Orders Are Vacated, Delphi's Complaint Against Spartech Is Barred By The Statute Of Limitations.**

32.     Once any or all of the Procedures Orders or Extension Orders are vacated and/or modified, the issuance of summons and service of process extensions contained therein are, correspondingly, eliminated.  As a result, the claims asserted in the Complaint are time-barred by the plain terms of Section 546 of the Bankruptcy Code.  While this result may appear harsh, Delphi's wound is self-inflicted.  The extinguishment of Delphi's avoidance claims was brought about by Delphi's own strategic decisions – Delphi made its decision to try for the best of all worlds – attempting to preserve the preference actions under seal, while at the same time maintaining vendor relationships and negotiating the best credit terms possible with its target defendants.  Delphi cannot have it both ways.

33.     Delphi, quite simply, took a risk.  Delphi made an election to hide the avoidance actions from all defendants for 2½ years while taking the opportunity to negotiate more favorable credit terms than they otherwise would have been able had the defendants known they were being sued.  As the architect/engineer of this strategy, Delphi undertook the risk that the avoidance actions would be dismissed for any number of reasons, including that they are time-barred under the statute of limitations.

34.     In the absence of any timely notice of extension of the statute of limitations to Spartech, the defendants were entitled to rely on the fact that no avoidance action could be

brought after the expiration of the two-year statute of limitations.  Such is the intent of the

statute.

> **B.** **Spartech's Ability To Defend The Complaint Has Been Severely Prejudiced
> By Delphi's Failure To Comply With The Statute Of Limitations.**

35.    Delphi's self-serving, *seriatim* extensions unilaterally contravened the

Congressionally-mandated statute of limitations by more than 2½ years, all for the convenience

of Delphi and at the expense of Spartech.

36.    Congress chose to impose a two-year statute of limitations on avoidance actions.

11 U.S.C. § 546.  *See e.g., In re: Century Brass Products, Inc. v. Caplan*, 22 F.3d 37, 39-40 (2d

Cir. 1994) (holding that two-year statute of limitations applies to debtors in possession and

finding nothing in the legislative history to the contrary).  "If there are to be exceptions to the

statutes of limitations, it is for Congress, rather than for the Courts to create [] them." *Rothensies*

*v. Electric Storage Battery Co.*, 329 U.S. 296, 301-302 (1946).

37.    The statute of limitations (*i.e.*, the two-year-limitation embedded in Section

546(a)), is a statute of repose "enacted upon the presumption, that one having a well-founded

claim will not delay enforcing it beyond a reasonable time, if he has the power to sue." *In re*

*Cornwall*, 9 Blatchf. 114, 6 F. Cas. 586, 591 (C.C.D. Conn. 1871) (No. 3,250).

38.    "Thus in the judgment of most legislatures and courts, there comes a point at

which the delay of a plaintiff in asserting a claim is sufficiently likely either to impair the

accuracy of the fact-finding process or to upset settled expectations that a substantive claim will

be barred without respect to whether it is meritorious." *See Board of Regents v. Tomanio*, 446

U.S. 478, 487 (1980); *see also United States v. Kubrick*, 444 U.S. 111, 117 (1979) (asserting that

statutes of limitation "protect defendants and the courts from having to deal with cases in which

the search for truth may be seriously impaired by the loss of evidence, whether by death or

disappearance of witnesses, fading memories, disappearance of documents, or otherwise").

39.    Statutes of repose are only to be outweighed where "the interests of justice require

vindication of the plaintiff's rights." *Family Golf Ctrs., Inc. v. Acushnet Co. (In re Randall's

Island Family Golf Ctrs., Inc.*), 288 B.R. 701, 705 (Bankr. S.D.N.Y. 2003).  Such circumstances

occur only where a plaintiff has not slept on its rights, has commenced a timely court action in a

court of competent jurisdiction, a particular defect in the complaint is waivable and frequently

waived, and the defendant "could not have relied upon the policy of repose embodied in the

limitation statute, for it was aware that [the plaintiff] was actively pursuing his . . . remedy." *Id.*

(quoting *Burnett v. N.Y. Cent. R.R. Co.*, 380 U.S. 424, 428-29 (1965)) (emphasis added).  None

of these circumstances are present here.

40.    By keeping this Complaint sealed more than 2½ years ***after*** the statute of

limitations expired, Delphi deliberately chose a course of action that assured that the evils the

statute of limitations were designed to prevent will actually occur – evidence lost, memories

faded and witnesses having disappeared.  *See International Ry. of Cent. Am. v. United Fruit Co.*,

373 F.2d 408, 416 (2d. Cir. 1967); *Kubrick*, 444 U.S. at 117.  As a result, Spartech's ability to

defend itself has been substantially impaired.

41.    In its various motions supporting the Extension Orders, Delphi failed to mention

that the extensions served to place Spartech in a worse litigation position and Delphi in a better

litigation position.  While Delphi was able to collect, retain and preserve evidence that supported

allegations filed in Complaints under seal, Spartech was kept in the dark while evidence may

have eroded and/or witness memories faded.  Delphi's assertion that the Preservation Procedures

would not "prejudic[e] the rights of any defendants" is wrong.  First Extension Motion, ¶ 33.

The fruits of Delphi's efforts served to more than double the two-year statute of limitations period – without the assent of or notice to Spartech.

42.    In view of the prejudice to Spartech, the appropriate remedy is to dismiss the Complaint.  "[E]ven if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and the right to be free from stale claims in time comes to prevail over the right to prosecute them."  *Rothensies*, 329 U.S. at 301-302; *see also* 1 HORACE G. WOOD, A TREATISE ON THE LIMITATION OF ACTIONS 8-9 (4th ed. 1916) ("The underlying purpose of statutes of limitation is to prevent the unexpected enforcement of stale claims concerning which persons interested have been thrown off their guard by want of prosecution.").

43.    The fact that a motion to dismiss is founded upon procedural grounds – as opposed to substantive grounds – does not affect the bona fide merits of the motion:

> if the Rules are to mean anything, parties must diligently try to follow them and courts must enforce them, even if it means that cases must sometimes be finally determined on procedural grounds rather than on their substantive merits.

*Mused v. U.S. Dep't of Agriculture Food and Nutrition Serv.*, 169 F.R.D. 28, 35 (W.D.N.Y. 1996).

44.    Delphi's failure to notify Spartech that it had been sued and Delphi's efforts in denying Spartech the right to be heard upon the motions supporting each of the Extension Orders have violated Spartech's fundamental due-process rights; as a result, the Complaint should be dismissed.

## III.    THE COMPLAINT IS ALSO BARRED BY LACHES AND SHOULD BE DISMISSED.

45.    Laches is based on the venerable maxim "vigilantibus non dormientibus aequitas subvenit," meaning "equity aids the vigilant, not those who slumber on their rights" and bars one

from asserting a claim who has unduly delayed the prosecution of his claim.  *In re: Lathop,
Haskins & Co.*, 223 F. 912, 917-18 (2d Cir. 1915) (upholding dismissal of claim for failure to
file within four years of the time period established by the district court).

46.    In the Second Circuit, a defendant need only demonstrate three elements to
prevail on a laches defense:  (1) that it lacked knowledge that the claim might be asserted against
it; (2) that the plaintiff delayed asserting the claim despite the opportunity to do so; and (3) that it
would be prejudiced if the claim were now allowed to go forward.  *Gucci v. Sinatra* (*In re
Gucci*), 197 Fed. Appx. 58, 60 (2d Cir. 2006).

47.    As described more fully above, each of these three elements is met.  First,
Spartech had no knowledge, actual or constructive, that a Complaint seeking $8.6 million had
been filed against it.  Second, Delphi had full opportunity to timely file and serve the Complaint
against Spartech or obtain tolling agreements.  Third, Delphi chose to hide the Complaint for
more than two years after the expiration of the statute of limitations, which now prejudices
Spartech's ability to defend itself.  For all the reasons stated, Spartech is prejudiced if the
Complaint is allowed to proceed.

## IV.    THE COMPLAINT IS BARRED BY *RES JUDICATA* BECAUSE DELPHI FAILED TO PRESERVE THE ALLEGED CAUSE OF ACTION, AND IT SHOULD BE DISMISSED.

48.    This Court lacks post-confirmation jurisdiction over the Complaint, and Delphi
lacks standing to pursue it, because neither this avoidance action nor the other asserted avoidance
actions were preserved or retained under the Confirmed Plan or the Modified Plan.

49.    In the initial First Amended Disclosure Statement with Respect to First Amended
Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-
in-Possession (the "Disclosure Statement") [Docket No. 11388], Delphi represented that it would

not retain any preference actions under the Confirmed Plan, except for those specifically listed in

Exhibit 7.24 to the Confirmed Plan.  *See* Disclosure Statement, §§ VIII(D)(10)(a) and IX(F)(23)

("Causes of Action against Persons arising under section 544, 545, 547, 548, or 553 of the

Bankruptcy Code or similar state laws will not be retained by the Reorganized Debtors unless

specifically listed on Exhibit 7.24 to the Plan" (emphasis added)).  Delphi also represented to the

Court and all affected parties that "[i]f the Plan is confirmed, these [avoidance] actions will be

dismissed."  *Id.*, § VIII(D)(10)(b).

50.     Exhibit 7.24 to the Confirmed Plan did not include any reference to the Complaint

or any other avoidance actions, and listed only the unrelated actions against the Laneko

Defendants.  *See* Confirmed Plan Exhibit 7.24 [Docket No. 11608].  In addition, the Disclosure

Statement contained no discussion of the identity of the defendants, the nature of the claims or

any estimated value of the potential avoidance actions to Delphi's estate – indeed, the

Liquidation Analysis that accompanied the Disclosure Statement as Appendix E specifically

noted that **it did not account for any potential recoveries with respect to avoidance actions,**

**assuming their value at zero**.  *See* Disclosure Statement, Appendix E.

51.     This Court entered its Confirmation Order on January 25, 2008, specifically

noting that "[i]t is also in the best interests of holders of Claims and Interests that Avoidance

Actions shall not be retained by the Reorganized Debtors unless specifically listed on Exhibit

7.24 of the Plan."  Confirmation Order, ¶ CCC.  Upon confirmation of the Confirmed Plan, the

avoidance actions were no longer preserved, and the Debtors waived any ability they may have

had to pursue them.

52.     It is axiomatic that "[t]he confirmation of a bankruptcy plan of reorganization

must be accorded *res judicata* effect … [and] prevents the subsequent assertion of any claim not

preserved in the plan as required by § 1123(b)(3)." *In re I. Appel Corp.*, 300 B.R. 564, 567

(Bankr. S.D.N.Y. 2003) (finding a post-confirmation preference action is not barred by the *res*

*judicata* effect of the confirmation order where the confirmed plan contained a general

reservation of rights to pursue preference actions post-confirmation).  Because here the

confirmed plan expressly waived any right to bring preference actions post confirmation, the

doctrine of *res judicata* bars the Debtors from pursuing any causes of action other than those

specifically preserved in Exhibit 7.24 to the Confirmed Plan.[3]

      53.     After its initial Confirmed Plan failed, Delphi subsequently attempted to revive

the avoidance actions in connection with its Modified Plan.  Once again, Delphi failed to

disclose the identity of defendants and provided creditors with virtually no description or

discussion of the nature of the claims or any estimated value of potential avoidance actions.

Instead, the Supplement to First Amended Disclosure Statement with Respect to First Amended

Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-

in-Possession (As Modified) (the "Supplemental Disclosure Statement") [Docket No. 17031]

simply referred to a new Plan Exhibit 7.19, which purportedly intended to disclose all causes of

action Delphi sought to retain under the Modified Plan.  And, once again, the Liquidation

Analysis accompanying the Supplemental Disclosure Statement contained no explanation of any

estimated value of potential avoidance actions to creditors, mentioning only that they were

included under the general asset category "Other."  *See* Supplemental Disclosure Statement,

Appendix C.  No reference to the impact of potential avoidance action recoveries (which were

---

[3]    Spartech recognizes that Section 14.7(b) of the Confirmed Plan contains a provision to the effect that the
Confirmed Plan, the Disclosure Statement, and related documents would become null and void to the extent the
Confirmed Plan failed to become effective.  Despite that provision, Delphi cannot nullify the effect its
representations had on its creditors and all parties-in-interest – and the reliance of those parties on such
representations – in connection with their Disclosure Statement and the Plan, including Delphi's representations
that avoidance actions would not be pursued if the plan was confirmed.  And, the plan was confirmed.

not anticipated under the Confirmed Plan) appears in Delphi's "Comparison of the December 10,

2007 and the May 28, 2009 Hypothetical Liquidation Analyses" included with the Liquidation

Analysis in the Supplemental Disclosure Statement. *Id.*

54.    With respect to preference actions, Plan Exhibit 7.19 to the Modified Plan

contained nothing more than a cryptic list of adversary proceeding case numbers, with no

indication of the names of the potential defendants, the value of the alleged claims, or the basis

for the alleged claims. *See* Modified Plan Exhibit 7.19 [Docket 17557]. Nor did Modified Plan

Exhibit 7.19 contain any explanation as to why the cryptic list of case numbers referenced fewer

than 200 avoidance actions when Delphi had previously referred to the potential existence of

more than 11,000 avoidance action claims in the Disclosure Statement.

55.    A disclosure statement is "critical" for creditors in determining their vote on a

plan. Creditors consider avoidance actions and the possible recoveries from such actions in

casting their votes. *See In re Galerie Des Monnaies of Geneva, Ltd.*, 62 B.R. 224, 226 (S.D.N.Y.

1986). But Delphi's creditors never had that opportunity. Delphi essentially provided no

information on preference recoveries in either the Disclosure Statement or the Supplemental

Disclosure Statement, and, in fact, expressly stated that its original Liquidation Analysis "[did]

not include recoveries resulting from any potential preferences …" Disclosure Statement,

Appendix E. Delphi could not have preserved claims it did not properly disclose.

56.    Assuming *arguendo* that Delphi retained any ability to revive the avoidance

actions in connection with its Modified Plan after having abandoned them previously, Delphi

failed to describe any such actions in the Modified Plan and Supplemental Disclosure Statement

in a manner sufficient to preserve them. Modified Plan Exhibit 7.19 did not disclose the identity

of any preference action defendant the nature of the claims or, more importantly, the value of the

claims.  It was merely a list of random, meaningless numbers.  Nothing in the Supplemental

Disclosure Statement provided creditors any indication as to whom or what the potential

avoidance actions might entail or their impact upon distributions to creditors.  And, because all

of the complaints were filed under seal, even if creditors or potential defendants would have had

notice that Delphi intended to pursue preference claims, such parties were precluded from

obtaining any cogent information about them.

57.     Despite Delphi's changed circumstances that led to the Modified Plan – and

which obviated the need for any further secrecy with respect to avoidance actions – neither the

Supplemental Disclosure Statement nor any other filings related to the Modified Plan included

any discussion of Delphi's intent to reverse position with respect to avoidance action claims.

Rather, Delphi attempted to include only a blanket reservation of rights with respect to avoidance

actions through a cryptic list of adversary proceeding numbers, which is insufficient to preserve

such alleged claims. *See*, *e.g.*, *In re Am. Preferred Prescription, Inc.,* 266 B.R. 273, 277

(E.D.N.Y. 2000); *Kunica v. St. Jean Fin., Inc.*, 233 B.R. 46, 56 (S.D.N.Y. 1999); *Browning v.

Levy,* 283 F.3d 761, 775 (6th Cir. 2002) ("blanket" reservation of rights without any factual basis

for reserved claims insufficient to save claims).

58.     In short, no claims were preserved against defendants under Bankruptcy Code

Section 1123(b)(3)(B) *ab initio*, and no claims were preserved in Delphi's subsequent attempts

under the extension motions or the Modified Plan.  Accordingly, Delphi's claims against

Spartech should be dismissed.[4]

---

[4]     To the extent the Complaint is not otherwise dismissed, Spartech reserves the right to assert that the Complaint
is also barred by the *res judicata* effect of the final resolution and allowance of certain prepetition claims against
Delphi relating to the relationship of Spartech with Delphi.

## V.    THE COMPLAINT IS ALSO BARRED BY JUDICIAL ESTOPPEL.

59.    The doctrine of judicial estoppel "prevents a party in a legal proceeding from taking a position contrary to a position the party has taken in an earlier proceeding."  *Simon v. Safelite Glass Corp.*, 128 F.3d 68, 71-72 (2d. Cir. 1997).  Judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase."  *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001). Courts have uniformly recognized that the purpose of judicial estoppel is to "protect the integrity of the judicial process … by prohibiting parties from deliberately changing positions according to the exigencies of the moment."  *Id.* at 749-750;  <u>*see*</u> <u>*also*</u> *Simon*, 128 F.3d at 71-72; *Rosenshein v. Kleban*, 918 F. Supp. 98, 104 (S.D.N.Y. 1996) ("Judicial estoppel is invoked … to prevent the party from playing fast and loose with the courts, and to protect the essential integrity of the judicial process.").  "The doctrine does not depend upon prejudice to the party invoking it."  *Galerie Des Monnaies of Geneva, Ltd. v. Deutsche Bank, A.G., New York Branch (In re Galerie Des Monnaies of Geneva, Ltd)*, 55 B.R. 253, 260 (Bankr. S.D.N.Y. 1986).

60.    In the Second Circuit, two factors that must be satisfied to invoke the doctrine of judicial estoppel are: (i) the party against whom estoppel is asserted took an inconsistent position in a prior proceeding, and (ii) the first tribunal adopted the inconsistent position in some manner, such as by rendering a favorable judgment.  *Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1. (2d. 1998).

61.    Delphi repeatedly represented to the Court (both orally and in writing) that, with respect to avoidance actions, it only intended to pursue claims against certain specific defendants not including Spartech.  Delphi took this position in Exhibit 7.24 to the Confirmed Plan, confirmed this position in its Second Extension Motion and reaffirmed this position in its Third

Extension Motion.  The Court, in turn, accepted Delphi's position that it intended to pursue only

four avoidance claims when it entered orders granting the relief sought.

62.    By bringing the Complaint against Spartech (and the other avoidance defendants),

Delphi now takes the exact opposite position that Delphi advanced in the prior motions which

were adopted by the Court.  Under the doctrine of judicial estoppel, the Court should not

sanction Delphi's attempt to pursue 177 avoidance claims after Delphi consistently stated it

intended to pursue no more than a few unrelated claims.  If the Court knew when ruling on the

extension motions that Delphi would actually prosecute 177 (rather than 4) avoidance actions,

the actions may not have remained under seal while the statute of limitations was repeatedly

extended over 2½ years, all without providing any notice to Spartech.  When ruling on the

extension motions, the Court ensured that the Laneko Defendants – the 4 preserved defendants –

received notice of Delphi's motions.

63.    Accordingly, Spartech requests that the Court exercise its discretion and apply the

doctrine of judicial estoppel to prevent Delphi from pursing the Complaint against Spartech,

which Delphi repeatedly indicated would not be pursued.

## VI.    THE EXTENSION ORDERS SHOULD BE VACATED BECAUSE THERE WAS NO GOOD CAUSE TO EXTEND THE TIME FOR SERVICE.

64.    Even in the absence of Delphi's due process violations – which alone mandates

that the Extension Orders be vacated – the orders should be vacated on several additional

grounds.  First, cause simply did not exist for the repeated extension requests made by Delphi.

Pursuant to Fed. R. Civ. P. 4(m), made applicable by Fed. R. Bankr. P. 7004, courts can only

extend a plaintiff's time for service upon: (i) a showing of "good cause;" or (ii) where the court

finds that a discretionary extension of service is appropriate.  *See Eastern Refractories Co. v.*

*Forty Eight Insulations, Inc.*, 187 F.R.D. 503, 505-06 (S.D.N.Y. 1999).  Under either test, it was

Delphi's burden to establish entitlement to an extension. And, where, as here, the delay in service is substantial, this burden is a heavy one to overcome. *See Spinale v. United States*, No. 03 CIV 1704, 2005 WL 659150, at *3 & *4 (S.D.N.Y. Mar. 16, 2005).

### A.  "Good Cause" Did Not Exist.

65.     Under the first test, "good cause" exists only in "exceptional circumstances where the plaintiff's failure to serve process in a timely manner was the result of circumstances beyond its control." *Eastern Refractories*, 187 F.R.D. at 505. That is not the case here. Delphi could have easily filed and served the Complaint within 120 days or attempted to obtain tolling agreements within the original 120-day period. Instead, Delphi made a conscious decision to seal the Complaint for 2½ years.

66.     In fact, "good cause" cannot exist where, as here, Delphi's failure to serve the Complaint was part of an admitted strategy to obtain a tactical advantage over Spartech and the other defendants when renegotiating the parties' ongoing and/or future business relationships. The dynamics of the negotiations between Delphi and other defendants would have unquestionably changed had defendants known that they were being sued for the return of hundreds of millions of dollars.

67.     In support of the extension motions, Delphi claimed that good cause existed because: (i) future events would have likely "obviated the need to serve the [] complaint;" and (ii) it had requested the extension before the deadline expired, citing *Bank of Cape Verde v. Bronson*, 167 F.R.D. 370 (S.D.N.Y. 1996). In *Bank of Cape Verde*, the third-party plaintiff was pursuing good faith settlement negotiations with the plaintiff and the third-party defendants knew of the plaintiff's complaint (the plaintiff having already served all or most of the parties to the action prior to the expiration of the 120-day deadline). This is a far cry from the situation here,

where Spartech was not, and could not have been, in settlement negotiations with Delphi –

because Spartech did not know it had been sued.  Moreover, as discussed below, the idea that

future events would "obviate the need to serve the [] complaint" ended (to the extent it ever

existed in the first place) when Delphi's circumstances materially and adversely changed and its

plan investors refused to provide funding in April 2008, before entry of the Third and Fourth

Extension Orders.

**B.    The Facts Did Not Warrant A Discretionary Extension.**

68.    Notwithstanding the lack of good cause, a court may still conclude that a

discretionary extension is appropriate.  Four factors are to be considered in this regard:

> (1) whether the applicable statute of limitations would bar the re-filed
> action; (2) whether the defendant had actual notice of the claims
> asserted in the complaint; (3) whether the defendant had attempted to
> conceal the defect in service; and (4) whether the defendant would be
> prejudiced by the granting of plaintiff's request for relief from the
> provision.  *Eastern Refractories*, 187 F.R.D. at 506.

69.    Here, the two-year statute of limitations would bar the re-filed action (factor 1).

Spartech had no notice of the claims asserted in the Complaint (factor 2).  Spartech never

attempted to conceal any defect in service (factor 3). And, there can be no doubt that Spartech

has been prejudiced by the multiple extensions (factor 4).  The alleged preferential payments

occurred some five years ago and the statute of limitations expired 2½ years ago.  Over the

passage of these years, Spartech has been prejudiced in its ability to defend itself, which has now

been substantially impaired.

70.    By keeping this Complaint under seal for over 2½ years ***after*** the statute of

limitations expired, Delphi intentionally chose a path to ensure that the evils that the statute of

limitations was designed to prevent will actually occur.  *Rothensies*, 329 U.S. at 301-302.  The

protections that the statute of limitations is designed to preserve are eviscerated if cause is found

to have existed.  *See Tomanio*, 446 U.S. at 487; *Kubrick*, 444 U.S. at 117.

71.     While it is clear that vacating any or all the Extension Orders will result in

Delphi's claims being barred by the statute of limitations (factor 1), this fact, standing alone, did

not warrant the granting of an extension.  Courts repeatedly recognize that "[t]he fact that

plaintiff's claims may be time-barred does not require us to exercise our discretion in favor of

plaintiff."  *Eastern Refractories*, 187 F.R.D. at 506; *see also McKibben v. Credit Lyonnais*, 1999

WL 604883, at *4 (S.D.N.Y. Aug. 10, 1999) (denial of an extension "is still proper if it occurs

after the expiration of the applicable statute of limitations period, and its effect is to bar the

plaintiff's claims").

72.     As the Supreme Court explained: "[E]ven if one has a just claim it is unjust not to

put the adversary on notice to defend within the period of limitation and the right to be free from

stale claims in time comes to prevail over the right to prosecute them."  *Rothensies*, 329 U.S. at

301-302.  Federal courts of appeals have, in fact, concluded that trial courts may revoke a

previously granted Rule 4(m) extension if the court later determines that the extension was

inappropriate (particularly where, as here, the defendant was not given notice or an opportunity

to be heard in the first instance).  *See McCrae v. KLLM Inc.*, 89 Fed. Appx. 361, 363 (3d Cir.

2004).

73.     The issue Delphi now faces is the result of Delphi's own making.  As Delphi's

circumstances changed to materially and adversely affect its exit from chapter 11, Delphi could

no longer argue that it would not have to proceed without pursuing the preference actions.

Delphi must now live with the consequences.  At no time before or after the statute of limitations

expired did Delphi seek a tolling agreement with Spartech.  Instead, Delphi elected to conceal

the complaints in order to preserve business relationships and secure better negotiating positions

(a decision that worked until now).  This should not be "cause," good or otherwise, to allow

Delphi to benefit, again at the expense of the preference defendants, by allowing Delphi to avoid

service of the Complaint and unilaterally extend the statute of limitations.

74.    Accordingly, the Extension Orders should be vacated because there was no cause

to extend (or continue to extend) the time for issuance of summons and service of process.

## VII.    THE EXTENSION ORDERS SHOULD BE VACATED BECAUSE THE COMPLAINTS WERE IMPROPERLY SEALED.

75.    Finally, the Extension Orders should be vacated because Delphi improperly

obtained leave to file its avoidance complaints under seal.

76.    Under 11 U.S.C. §107 (relied upon by Delphi), papers filed in bankruptcy

proceedings "are public records and open to examination by an entity at reasonable times without

charge."  11 U.S.C. § 107(a).  This Congressional presumption of public access "is rooted in the

public's First Amendment right to know about the administration of justice."  *In re Food

Management Group, LLC*, 359 B.R. 543, 553 (Bankr. S.D.N.Y. 2007).  Indeed, "public interest

in openness of court proceedings is at its zenith when issues concerning the integrity and

transparency of bankruptcy court proceedings are involved."  *Id*.

77.    Because the statute reflects strong policy considerations, Section 107 sets forth

only two narrowly-defined exceptions -- documents can be filed under seal if they: (i) contain

sensitive commercial information; or (ii) defamatory material. Section 107(b) provides:

> the bankruptcy court may – (1) protect an entity with respect to a trade
> secret or confidential research, development, or commercial
> information; or (2) protect a person with respect to scandalous or
> defamatory matter contained in a paper filed in a case under this title.

78.     Motions to seal documents are "disfavored" and, as a general rule "should be entered only when actually necessary to protect a party from harm." *In re Gitto Global Corp.*, No. 05-10334, 2005 WL 1027348, at *7 (D. Mass. May 2, 2005) (citing *In re Sherman-Noyes & Prairie Apartments Real Estate*, 59 B.R. 905, 909 (Bankr. N.D. Ill. 1986)).

79.     Here, Delphi claimed that it needed special protection in order to preserve both the "status quo" and its "existing business relationships" and that this amounted to "commercial information" under the statute.  First Extension Motion, ¶ 33-34.  In so doing, Delphi claimed that it had "worked to preserve and repair their business relationship with many of the potential defendants during these cases and h[ad] negotiated or regained favorable credit terms with many suppliers and [were] continuing to do so."  *Id.*, ¶37.

80.     This rationale, however, cannot possibly rise to the "exceptional circumstances" envisioned by Congress. The need to protect one's business operations and supplier relationships exists in every corporate reorganization.  This garden-variety concern is neither "unusual" nor "exceptional" in any sense, and to so hold obviates Section 107's clear protections.[5]

81.     The roots of Section 107 are deeply embedded in caselaw.  In *Delatour v. Meredith*, 144 F.2d 594, 595-96 (2d. Cir. 1944) the Second Circuit reversed the trial court's order that impounded a list of a debtor's creditors and stockholders finding that there was "no occasion for taking this drastic step."  The trustees had justified impounding these lists to control the reorganization proceedings and limit communication – remarkably similar justifications to the those advanced by Delphi.  *Id.*  In reversing the underlying order as improper, the Second Circuit stated that "courts should examine closely any petition for an impounding order."  *Id.*; *see also In re Itel Corp.* 17 B.R. 942, 946 (B.A.P. 9th Cir. 1982) (reversing bankruptcy court

---

[5]     In any event, any claimed rationale for sealing the Complaint disappeared before entry of the Third and Fourth Extension Orders -- the plan had already been confirmed.

order that impounded list of debtors' debenture holders and noting that the right to access

information "carries out the policy of the Act to promote general investor participation in the

reorganization and to afford the debtor's creditors and security holders an opportunity to

communicate with one another, organize committees or to take any other proper steps to protect

their mutual interests").

82.    Moreover, the Second Circuit has expressly defined "commercial information" to

be "information which would cause an ***unfair advantage to competitors*** by providing them

information as to the commercial operations of the debtor." *In re Orion Pictures Corp.*, 21 F.3d

24, 27 (2d Cir. 1994) (emphasis added); *In re Itel Corp.*, 17 B.R. at 946. Nothing in Delphi's

bare-bones Complaint involves information that would give an "unfair advantage to competitors"

– Spartech has never been a competitor of Delphi and none of the information in the Complaint

has anything to do with confidential "commercial operations of the debtor."

Accordingly, the Extension Orders should also be vacated on this ground.

## CONCLUSION

Delphi has engaged in a pattern of conduct that violates certain basic rights, *i.e.*, the

tactical use of a time-barred Complaint filed under seal, with issuance of summons and service of

process unilaterally withheld using a series of motions filed (but never served) over a 2½ year

period for a lawsuit now seeking to collect over $8.6 million for transfers allegedly made some

five years ago. Justice Louis Brandeis coined a marvelous phrase: "sunlight is the best

disinfectant," in praise of the benefits of transparency and candor. As this record reflects, neither

has been present here.

Dated: May 14, 2010                                     Respectfully submitted,


                                                        _____/s/  Michelle K. McMahon_____
                                                        BRYAN CAVE LLP
                                                        Michelle K. McMahon (MM-8130)
                                                        1290 Avenue of the Americas
                                                        New York, NY 10104
                                                        Telephone:  (212) 541-2000
                                                        Facsimile:  (212) 541-1493

                                                        BRYAN CAVE LLP
                                                        Lloyd A. Palans (pro hac vice pending)
                                                        Christopher J. Lawhorn (pro hac vice pending)
                                                        200 North Broadway, Suite 3600
                                                        St. Louis, MO 63102
                                                        Telephone:  (314) 259-2000
                                                        Facsimile:  (314) 259-2020
                                                        lapalans@bryancave.com
                                                        cjlawhorn@bryancave.com

                                                        *Attorneys for Spartech Polycom*