**EXHIBIT 1**

BRYAN CAVE LLP                                    **Hearing Date:  July 22, 2010**
Michelle K. McMahon (MM-8130)
1290 Avenue of the Americas
New York, NY 10104
Telephone:  (212) 541-2000
Facsimile:  (212) 541-1493

BRYAN CAVE LLP
Lloyd A. Palans (pro hac vice pending)
Christopher J. Lawhorn (pro hac vice pending)
200 North Broadway, Suite 3600
St. Louis, MO 63102
Telephone:  (314) 259-2000
Facsimile:  (314) 259-2020
lapalans@bryancave.com
cjlawhorn@bryancave.com

*Attorneys for GBC Metals LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                            :
In re:                                      :          Chapter 11:
                                            :
DELPHI CORPORATION, *et al*.,               :          Case No. 05-44481 (RDD)
                                            :          Jointly Administered
------------------------------------------------------------x
DELPHI CORPORATION                          :
                                            :          Adv. Pro. No. 07-02479 (RDD)
                              Plaintiff,     :
                                            :
              -against-                     :
                                            :
OLIN CORPORATION and                        :
GBC METALS, LLC,                            :
                                            :
                              Defendants.    :
------------------------------------------------------------x

**MOTION TO DISMISS FILED BY DEFENDANT
GBC METALS, LLC SEEKING AN ORDER (I) VACATING PRIOR ORDERS
ESTABLISHING PROCEDURES FOR ADVERSARY PROCEEDINGS THAT VIOLATE
PROCEDURAL DUE PROCESS, (II) DISMISSING THE ADVERSARY PROCEEDING
WITH PREJUDICE PURSUANT TO FED. R. CIV. P. 12(b) AND FED. R. BANKR. P. 7012(b),
OR (III) DISMISSING THE ADVERSARY PROCEEDING ON THE GROUNDS OF
LACHES, *RES JUDICATA* OR JUDICIAL ESTOPPEL[1]**

---

[1]    GBC Metals LLC hereby joins and adopts the Motion to Dismiss and accompanying Memorandum of Law in
       Support thereof filed by defendant Olin Corporation in this Adversary Proceeding which is filed concurrently
       herewith.

GBC Metals, LLC ("GBC"),[2] by its undersigned attorneys, respectfully states:

1.    GBC respectfully requests that this Court immediately dismiss with prejudice the complaint (the "Complaint") filed in this adversary proceeding, Adv. Pro. No. 07-02436, by Delphi Corporation and its affiliated debtors (collectively, "Delphi" or "Debtors") against Defendant Olin Corporation ("Olin") because Delphi's actions in filing the Complaint, concealing its existence, and attempting unilaterally and without notice to extend the statute of limitations for the alleged cause of action set forth in the Complaint violate fundamental notions of due process and constitute impermissible attempts to trample the rights of Olin and GBC (and other adversary defendants).

2.    More particularly, the Complaint should be dismissed for at least the following main reasons:

A.    The series of orders entered by the Court permitting the Complaint to be filed under seal and purportedly extending the time for Delphi to serve the Complaint and related summons upon Olin are void as against Olin and GBC (collectively, and as described more particularly in GBC's accompanying Memorandum of Law, the "Extension Orders") because each Extension Order violated procedural due process in that, among other things, each was entered without Olin or GBC having notice or an opportunity to be heard.

B.    The Complaint is barred by the applicable statute of limitations set forth in 11 U.S.C. § 546 because, among other things, the Extension Orders are void as against

---

[2]    GBC Metals, LLC is a wholly owned subsidiary of Global Brass & Copper, Inc., which acquired Olin Corporation's metal business as described herein.  References to "GBC" herein may also include Global Brass & Copper, Inc. with respect to this acquisition.

Olin and GBC, and the Complaint was not filed an served in a timely manner within the required timeframe, causing severe prejudice to Olin and GBC.

C.      The Complaint is barred by the doctrine of laches because Olin and GBC lacked knowledge that the alleged claim set forth in the Complaint might be asserted by Delphi,  Delphi delayed asserting the alleged claim despite the opportunity to do so, and Olin and GBC would be severely prejudiced if the claim and the Complaint were allowed to go forward now.

D.      The Complaint is barred by the doctrine of *res judicata* because Delphi failed to preserve the alleged cause of action set forth in the Complaint following confirmation of its plan of reorganization.

E.      The Complaint is barred by judicial estoppel due to Delphi's repeated representations and assertions that it would not pursue avoidance actions, including the alleged claims set forth in the Complaint.

F.      The Complaint is barred because the Extension Orders are void as against Olin and GBC in that cause did not exist to extend the time to serve the Complaint.

G.      The Complaint is barred because it was improperly filed under seal with no notice to Olin or GBC, in violation of the requirements of 11 U.S.C. § 107.

3.      In support of this Motion, GBC relies on the points and authorities set forth in its accompanying Memorandum of Law, which is incorporated herein as part of this Motion, and the pleadings and documents referred to therein.

WHEREFORE, GBC respectfully requests an order of this Court:

A.      Vacating the Extension Orders because, among other things: (i) Delphi's intentional failure to provide Olin or GBC with notice of the motions seeking entry of the

Extension Orders violates due process and renders the Extension Orders void and

unenforceable against Olin and GBC; (ii) cause did not exist to extend the time for service

of the Complaint under the Extension Orders; and/or (iii) the Complaint was improperly

filed under seal in violation of 11 U.S.C. § 107;

        B.      Dismissing the Complaint with prejudice pursuant to Fed. R. Civ. P.

12(b)(6), made applicable to this adversary proceeding by Fed. R. Bankr. P. 7012(b), on

the grounds that the Complaint violates Olin's and GBC's due process rights and is barred

by the two-year statute of limitations set forth in 11 U.S.C. § 546;

        C.      Dismissing the Complaint with prejudice on the grounds that it is barred

by laches, *res judicata* and/or judicial estoppel; and

        D.      Granting such other and further relief as is just and proper.


Dated: May 14, 2010              Respectfully submitted,


                               /s/  Michelle K. McMahon
                         BRYAN CAVE LLP
                         Michelle K. McMahon (MM-8130)
                         1290 Avenue of the Americas
                         New York, NY 10104
                         Telephone:  (212) 541-2000
                         Facsimile:  (212) 541-1493

                         BRYAN CAVE LLP
                         Lloyd A. Palans (pro hac vice pending)
                         Christopher J. Lawhorn (pro hac vice pending)
                         200 North Broadway, Suite 3600
                         St. Louis, MO 63102
                         Telephone:  (314) 259-2000
                         Facsimile:  (314) 259-2020
                         lapalans@bryancave.com
                         cjlawhorn@bryancave.com

                         *Attorneys for GBC Metals LLC*

BRYAN CAVE LLP                                              **Hearing Date:  July 22, 2010**
Michelle K. McMahon (MM-8130)
1290 Avenue of the Americas
New York, NY 10104
Telephone:  (212) 541-2000
Facsimile:  (212) 541-1493

BRYAN CAVE LLP
Lloyd A. Palans (pro hac vice pending)
Christopher J. Lawhorn (pro hac vice pending)
200 North Broadway, Suite 3600
St. Louis, MO 63102
Telephone:  (314) 259-2000
Facsimile:  (314) 259-2020
lapalans@bryancave.com
cjlawhorn@bryancave.com

*Attorneys for GBC Metals LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x
                                              :
In re:                                        :        Chapter 11:
                                              :
DELPHI CORPORATION, *et al.*,                 :        Case No. 05-44481 (RDD)
                                              :        Jointly Administered
-------------------------------------------------------------x
DELPHI CORPORATION                            :
                                              :        Adv. Pro. No. 07-02479 (RDD)
                              Plaintiff,       :
                                              :
                  -against-                   :
                                              :
OLIN CORPORATION and                          :
GBC METALS, LLC,                              :
                                              :
                              Defendants.      :
-------------------------------------------------------------x

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FILED BY DEFENDANT
GBC METALS, LLC SEEKING AN ORDER (I) VACATING PRIOR ORDERS
ESTABLISHING PROCEDURES FOR ADVERSARY PROCEEDINGS THAT VIOLATE
PROCEDURAL DUE PROCESS, (II) DISMISSING THE ADVERSARY PROCEEDING
WITH PREJUDICE PURSUANT TO FED. R. CIV. P. 12(b) AND FED. R. BANKR. P. 7012(b),
OR (III) DISMISSING THE ADVERSARY PROCEEDING ON THE GROUNDS OF
LACHES, *RES JUDICATA* OR JUDICIAL ESTOPPEL[1]**

---

[1]    GBC Metals LLC hereby joins and adopts the Motion to Dismiss and accompanying Memorandum of Law in
       Support thereof filed by defendant Olin Corporation in this Adversary Proceeding which is filed concurrently
       herewith.

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS ..................................................................................... 3

ARGUMENT .......................................................................................................... 8

I.    THE EXTENSION ORDERS SHOULD BE VACATED AS AGAINST OLIN/GBC ON THE GROUNDS THAT EACH VIOLATED PROCEDURAL DUE PROCESS AS THEY WERE ENTERED WITHOUT OLIN AND/OR GBC HAVING NOTICE OR AN OPPORTUNITY TO BE HEARD ................................................................ 8

    A.    This Court Has The Power To Vacate The Extension Orders ...................................... 8

    B.    Delphi Failed To Serve Olin (Or GBC) With Notice Of The Motions Seeking The Extension Orders And Failed To Provide Olin (Or GBC) An Opportunity To Be Heard On The Motions .................................................. 9

II.    THE COMPLAINT IS BARRED BY THE STATUTE OF LIMITATIONS AND SHOULD BE DISMISSED ................................................................ 12

    A.    Once The Extension Orders Are Vacated, Delphi's Complaint Against Olin Is Barred By The Statute Of Limitations ................................................ 12

    B.    Olin/GBC's Ability To Defend The Complaint Has Been Severely Prejudiced By Delphi's Failure To Comply With The Statute Of Limitations ............................. 13

III.    THE COMPLAINT IS ALSO BARRED BY LACHES AND SHOULD BE DISMISSED ... 16

IV.    THE COMPLAINT IS BARRED BY *RES JUDICATA* BECAUSE DELPHI FAILED TO PRESERVE THE ALLEGED CAUSE OF ACTION, AND IT SHOULD BE DISMISSED ................................................................................ 17

V.    THE COMPLAINT IS ALSO BARRED BY JUDICIAL ESTOPPEL ................................ 21

VI.    THE EXTENSION ORDERS SHOULD BE VACATED BECAUSE THERE WAS NO GOOD CAUSE TO EXTEND THE TIME FOR SERVICE ....................................... 23

    A.    "Good Cause" Did Not Exist ................................................................ 23

    B.    The Facts Did Not Warrant A Discretionary Extension ............................. 25

VII.    THE EXTENSION ORDERS SHOULD BE VACATED BECAUSE THE COMPLAINTS WERE IMPROPERLY SEALED ................................................ 27

CONCLUSION ................................................................................................ 29

# TABLE OF AUTHORITIES

## Cases

*Bank of Cape Verde v. Bronson*,
    167 F.R.D. 370 (S.D.N.Y. 1996) ................................................................................................ 24

*Barcia v. Sitkin*,
    367 F.3d 87 (2d Cir. 2004)........................................................................................................ 10

*Board of Regents v. Tomanio*,
    446 U.S. 478 (1980) ............................................................................................................ 14, 25

*Browning v. Levy*,
    283 F.3d 761 (6th Cir. 2002).................................................................................................... 21

*Burnett v. N.Y. Cent. R.R. Co.*,
    380 U.S. 424 (1965) ................................................................................................................. 15

*Delatour v. Meredith*,
    144 F.2d 594 (2d. Cir. 1944).................................................................................................... 28

*Eastern Refractories Co. v. Forty Eight Insulations, Inc.*,
    187 F.R.D. 503 (S.D.N.Y. 1999) ................................................................................. 23, 25, 26

*Family Golf Ctrs., Inc. v. Acushnet Co. (In re Randall's Island Family Golf Ctrs., Inc.)*,
    288 B.R. 701 (Bankr. S.D.N.Y. 2003) ............................................................................... 14, 15

*Galerie Des Monnaies of Geneva, Ltd. v. Deutsche Bank, A.G., New York Branch (In re Galerie Des Monnaies of Geneva, Ltd)*,
    55 B.R. 253 (Bankr. S.D.N.Y. 1986) ....................................................................................... 22

*Grannis v. Ordean*,
    234 U.S. 385 (1914)................................................................................................................. 10

*Gucci v. Sinatra (In re Gucci)*,
    197 Fed. Appx. 58 (2d Cir. 2006) ............................................................................................ 16

*In re Am. Preferred Prescription, Inc.*,
    266 B.R. 273 (E.D.N.Y. 2000).................................................................................................. 21

*In re Cornwall*,
    9 Blatchf. 114, 6 F. Cas. 586 (C.C.D. Conn. 1871) (No. 3,250).............................................. 14

*In re Food Management Group, LLC*,
    359 B.R. 543 (Bankr. S.D.N.Y. 2007) ..................................................................................... 27

*In re Galerie Des Monnaies of Geneva, Ltd.*,
    62 B.R. 224 (S.D.N.Y. 1986).................................................................................................... 20

*In re Gitto Global Corp.*,
    No. 05-10334, 2005 WL 1027348, at *7 (D. Mass. May 2, 2005) ........................................... 27

*In re I. Appel Corp.*,
    300 B.R. 564 (Bankr. S.D.N.Y. 2003) ..................................................................................... 18

*In re Itel Corp.*
    17 B.R. 942 (B.A.P. 9th Cir. 1982)..................................................................................... 28, 29

*In re Johns Manville Corp.*,
__ F.3d __, 2010 WL 1007832, at *20 (2d Cir. 2010)........................................................ 12

*In re Orion Pictures Corp.*,
21 F.3d 24 (2d Cir. 1994)............................................................................................... 29

*In re Sherman-Noyes & Prairie Apartments Real Estate*,
59 B.R. 905 (Bankr. N.D. Ill. 1986).............................................................................. 27

*In re: Century Brass Products, Inc. v. Caplan*,
22 F.3d 37 (2d Cir. 1994).............................................................................................. 14

*In re: Lathop, Haskins & Co.*,
223 F. 912 (2d Cir. 1915)............................................................................................... 16

*International Ry. of Cent. Am. v. United Fruit Co.*,
373 F.2d 408 (2d. Cir. 1967).......................................................................................... 15

*Kunica v. St. Jean Fin., Inc.*,
233 B.R. 46 (S.D.N.Y. 1999).......................................................................................... 21

*Lavin v. The Emigrant Indus. Savings Bank*,
1 F. 641 (C.C. S.D. N.Y. 1880)...................................................................................... 11

*Luessenhop v. Clinton County*,
466 F.3d 259 (2d Cir. 2006)........................................................................................... 11

*Lugo v. Keane*,
15 F.3d 29 (2d Cir. 1994)............................................................................................... 11

*Matarese v. LeFevre*,
801 F.2d 98 (2d Cir. 1986)............................................................................................... 9

*McCrae v. KLLM Inc.*,
89 Fed. Appx. 361 (3d Cir. 2004).................................................................................. 26

*McKibben v. Credit Lyonnais*,
1999 WL 604883, at *4 (S.D.N.Y. Aug. 10, 1999)........................................................ 26

*Mitchell v. Washingtonville Cent. Sch. Dist.*,
190 F.3d 1. (2d. 1998).................................................................................................... 22

*Mullane v. Central Hanover Bank & Trust Co.*,
339 U.S. 306 (1950)................................................................................................ 10, 11

*Mused v. U.S. Dep't of Agriculture Food and Nutrition Serv.*,
169 F.R.D. 28 (W.D.N.Y. 1996)..................................................................................... 16

*New Hampshire v. Maine*,
532 U.S. 742 (2001)....................................................................................................... 21

*Pichardo v. Ashcroft*,
374 F.3d 46 (2d Cir. 2004)............................................................................................... 9

*Recreational Props., Inc. v. Southwest Mortg. Serv., Inc.*,
804 F.2d 311 (5th Cir. 1986)........................................................................................... 8

*Rosenshein v. Kleban*,
918 F. Supp. 98 (S.D.N.Y. 1996).................................................................................... 22

*Rothensies v. Electric Storage Battery Co.*,
329 U.S. 296 (1946)................................................................................... 14, 15, 25, 26

*Simer v. Rios*,
   661 F.2d. 655 (7th Cir. 1981)........................................................................................... 8

*Simon v. Safelite Glass Corp.*,
   128 F.3d 68 (2d. Cir. 1997)........................................................................................... 21

*Spinale v. United States*,
   No. 03 CIV 1704, 2005 WL 659150, at *3 & *4 (S.D.N.Y. Mar. 16, 2005)........................................... 23

*United States v. Kubrick*,
   444 U.S. 111 (1979)........................................................................................... 14, 15, 25

*United States v. Uccio*,
   940 F.2d 753 (2d Cir. 1991)........................................................................................... 8

*Volkswagenwerk Aktiengesellschaft v. Schlunk*,
   486 U.S. 694 (1988)........................................................................................... 11

## Statutes

11 U.S.C. § 107(a) ........................................................................................... 27

11 U.S.C. § 546 ........................................................................................... 14

11 U.S.C. § 546(a) ........................................................................................... 12

## Other Authorities

1 HORACE G. WOOD, A TREATISE ON THE LIMITATION OF ACTIONS 8-9 (4th ed. 1916) ........................ 15

GBC Metals, LLC ("GBC"),[2] by its undersigned attorneys, respectfully states:

## PRELIMINARY STATEMENT

1.      This case is about the tactical use of a time-barred avoidance action filed under seal, with summons and service of process unilaterally withheld using a series of motions filed but never served, only to be unveiled 2½ years later after the applicable statute of limitations had run.

2.      On or about September 26, 2007, Delphi Corporation and its affiliated debtors (collectively, "Delphi" or "Debtors") commenced this action against Defendant Olin Corporation ("Olin") by filing a Complaint (defined below), under seal, seeking judgment against Olin in excess of $24.5 million plus interest, costs and attorneys' fees.

3.      Less than two months later, on November 19, 2007, GBC purchased Olin's metal business: (i) without knowledge that a $24.5 million lawsuit against Olin had been filed under seal and/or was pending against Olin, (ii) without notice or disclosure to GBC that a $24.5 million contingent loss exposure risk was looming against GBC's newly acquired business, (iii) without any opportunity for GBC to adjust its purchase price for the Olin business to account for a $24.5 million contingent loss exposure risk, (iv) without any opportunity for GBC to escrow any portion of the purchase price pending resolution of the Complaint, and/or (v) without any opportunity for GBC to obtain express indemnity protections from Olin for this $24.5 million contingent loss exposure risk.  Olin asserts and now maintains that GBC must indemnify and defend Olin for this $24.5 million contingent loss exposure risk pursuant to its purchase

---

[2]      GBC Metals, LLC is a wholly owned subsidiary of Global Brass & Copper, Inc., which acquired Olin Corporation's metal business as described herein.  References to "GBC" herein may also include Global Brass & Copper, Inc. with respect to this acquisition.

agreement with GBC.  *See* Declaration of John Walker attached hereto as Exhibit "A" (the "Walker Declaration").

4.       Delphi violated fundamental principles of procedural due process by filing a series of motions (never served) that established unique (and unprecedented) procedures that permitted Delphi to file adversary actions under seal and continually delay service of process for 2½ years, again, after the statute of limitations had run.  These unique procedures bestowed one-sided benefits upon Delphi, including allowing Delphi to "avoid unnecessarily alarming" defendants (Preservation of Estate Claims Procedure Motion [Dkt. 8905], ¶ 37) (the "First Extension Motion"), and providing Delphi with an obvious tactical advantage to negotiate favorable credit terms with suppliers without disclosing to those same suppliers that they had been sued.  *Id.*, ¶¶ 33-34, 37.  If this proceeding is not dismissed, these tactics result in the unilateral extension of a statute of limitations that expired on October 8, 2007 for a lawsuit now seeking to collect over $24.5 million, based on transfers allegedly made some five years ago. Accordingly, GBC seeks an order from the Court:

- Vacating the interlocutory Extension Orders (defined below) because: (a) Delphi's intentional failure to provide Olin or GBC with notice of the motions seeking entry of the Extension Orders violates due process and renders the Extension Orders void and unenforceable against Olin and GBC; (b) cause did not exist to extend the time for service of the Complaint; and/or (c) the Complaint was improperly filed under seal pursuant to 11 U.S.C. §107.[3]

- Dismissing with prejudice the Complaint against Olin and GBC, pursuant to Fed. R. Civ. P. 12(b)(6), made applicable by Fed. R. Bankr. P. 7012(b), on the grounds that it is barred by the applicable 2-year statute of limitations.

- In the alternative, dismissing the Complaint with prejudice on the grounds that it is barred by laches, *res judicata* and judicial estoppel.

---

[3]    To the extent the Court deems the Extension Orders to be "final" orders – which they are not – the orders should be vacated for the same reasons, pursuant to Fed. R. Civ. P. 60(b)(4), (5) and (6) made applicable by Fed. R. Bankr. P. 9024.

## STATEMENT OF FACTS

5.      On October 8, 2005, Delphi Corporation and certain of its subsidiaries filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  On October 14, 2005, three additional U.S. subsidiaries of Delphi filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

6.      Prior to the commencement of the Debtors' cases, Delphi purchased copper, zinc and tin goods from Olin.

7.      Pursuant to section 546(a) of the Bankruptcy Code, the statute of limitations for Delphi to bring avoidance actions against Olin began to run upon the filing of Delphi's bankruptcy petition on October 8, 2005.

8.      By motion dated August 6, 2007, Delphi requested entry of an order seeking, among other things, the establishment of procedures for adversary proceedings, including those commenced by the Debtors under sections 541, 544, 545, 547, 548 or 553 of the Bankruptcy Code.  First Extension Motion, ¶ 17.  The procedures which Delphi sought included:  (i) an extension of time beyond the initial 120-day period to serve certain adversary summonses and complaints pursuant to Fed. R. Civ. P. 4(m), (ii) a stay of the applicable adversary proceedings until service of process was effected, and (iii) permitting Delphi to file the complaints under seal (the "Preservation Procedures" ).  *Id.*, ¶¶ 33-38.  Delphi did not give any notice to Olin or GBC of this motion.  Affidavit of Service dated August 10, 2007 [Dkt. 9039].  On August 16, 2007, the Court entered an order providing, among other things, an extension of time to March 31, 2008 to serve adversary summonses and complaints as well as permission to file the complaints under seal.  Preservation of Estate Claims Procedures Order [Dkt. 9105] (the "Procedures Order").

9.      On September 26, 2007, Delphi commenced this adversary proceeding by filing a complaint against Olin under seal with the Clerk (the "Complaint").  The Complaint seeks to recover, pursuant to Sections 547 and 550 of the Bankruptcy Code, alleged preferential transfers made to Olin in the aggregate amount of $24,534,559.41.  Delphi failed to serve Olin with summons or notice of the Complaint until March 24, 2010, well beyond two years since Delphi's bankruptcy case was filed.

10.     On October 8, 2007, the statute of limitations for commencing a preference action by Delphi against Olin expired.

11.     On November 19, 2007, GBC purchased Olin's metal business without any knowledge that the Complaint had been filed against Olin.

12.     GBC was prejudiced by Delphi's filing of the Complaint under seal as well as Delphi's subsequent failure to provide any notice of the Complaint in at the least the following ways:

(i)     GBC had no knowledge that a $24.5 million lawsuit against Olin had been filed under seal and/or was pending against Olin;

(ii)    GBC was without notice that a $24.5 million contingent loss exposure risk was looming against GBC's newly acquired business;

(iii)   GBC had no opportunity to adjust its purchase price for the Olin business to account for a $24.5 million contingent loss exposure risk;

(iv)    GBC had no opportunity to escrow any portion of the purchase price pending resolution of the Complaint; and/or

(v)     GBC had no opportunity to negotiate and obtain express indemnity protections from Olin for this $24.5 million contingent loss exposure risk.

*See* Walker Declaration (Exhibit "A" hereto).

13.    On or about December 10, 2007, Delphi filed its First Amended Joint Plan of

Reorganization, [Dkt. 11386] (the "Confirmed Plan"), which was confirmed by order of the

Court dated January 25, 2008 [Dkt. 12359] (the "Confirmation Order").  The Confirmed Plan

provided for payment in full of all unsecured creditors.  Exhibit 7.24 to the Confirmed Plan,

which set forth the actions Delphi sought to retain under the plan, notably made no reference to

Olin, GBC or the Complaint.[4]

14.    On February 28, 2008, Delphi sought a second extension – until May 31, 2008 –

to serve its sealed complaints.  Extension of Avoidance Action Service Deadline Motion

[Dkt. 12922], ¶ 18 (the "Second Extension Motion").  Delphi professed a need to allow the

actions filed against all defendants to remain under seal so as not to disrupt "current business

relationships" with defendants which are necessary to Delphi's ongoing operations as well as

reduce the "administrative and economic burdens" of the adversary proceedings to the Debtors,

the Court and the defendants.  *Id.*, ¶ 21.  No notice of the Second Extension Motion was given to

Olin or GBC.  Affidavit of Service dated March 4, 2008 [Dkt. 12970].  On March 28, 2008, the

Court granted the relief requested in the Second Extension Motion.  Extension of Avoidance

Action Service Deadline Order [Dkt. 13277], ¶ 2 (the "Second Extension Order").

15.    The Second Extension Motion reaffirmed that Delphi would "not retain any

causes of action asserted in the [adversary proceedings] except those specifically listed in

Exhibit 7.24 of the Plan."  Second Extension Motion, ¶ 17.  In fact, with regard to 742 adversary

proceedings filed under seal, only the claims related to Laneko Engineering Co., Wachovia

---

[4]    Section 14.3 of the Confirmed Plan and Modified Plan (defined below) provides that the Debtors "may alter,
amend, or modify any Exhibits to this Plan under Section 1127(a) of the Bankruptcy Code *at any time prior to
the Confirmation Date*."  (Emphasis added).  The Confirmation Date was January 25, 2008.  Thus, after
January 25, 2008, the Debtors did not have the right to amend or add to Exhibit 7.24 (renumbered as Exhibit
7.19 in the subsequent Modified Plan).

Bank, National Association, Laneko Engineering Co, Inc., and their affiliates and subsidiaries (the "Laneko Defendants"), were subject to the Procedures Order.  *Id.*, ¶ 17 n.4.

16.     On April 10, 2008, Delphi sought a third extension, seeking to extend the service deadline until 30 days after substantial consummation of the Debtors' plan.  Postconfirmation Extension of Avoidance Action Service Deadline Motion [Dkt. 13361], ¶ 19 (the "Third Extension Motion").  No notice of the Third Extension Motion was given to Olin or GBC.  Affidavit of Service dated April 16, 2008 [Dkt. 13415].  On April 30, 2008, the Court granted the relief requested in the Third Extension Motion, extending the service deadline to the later of 30 days after substantial consummation of a plan or December 31, 2008.  Postconfirmation Extension of Avoidance Action Service Deadline Order [Dkt. 13484], ¶ 2 (the "Third Extension Order").

17.     Despite changed circumstances materially and adversely affecting Delphi's emergence from bankruptcy, Delphi, once again, offered the same justification for its third request – to avoid "unnecessarily disrupt[ing] the emergence process or the Debtors' current business relationships with potential defendants that are necessary to the Debtors' ongoing operations."  Third Extension Motion, ¶ 22.  Delphi also professed that it and the defendants should not be required to spend resources on the adversary proceedings when "*most* of the Adversary Proceedings will *not* be prosecuted if the Plan were to become effective and likely *will not be prosecuted under any modified plan*."  *Id.* (emphasis added).

18.     On October 2, 2009, Delphi sought a fourth extension, seeking to extend for the fourth time the deadline for service of process, until 180 days after substantial consummation of the Debtors' plan.  Supplemental Postconfirmation Extension of Avoidance Action Service Deadline Motion [Dkt. 18952], ¶ 16 (the "Fourth Extension Motion").  No notice of the Fourth

Extension Motion was given to Olin or GBC.  Affidavit of Service dated October 7, 2009 [Dkt.

18967].  On October 22, 2009, the Court granted the relief requested in the Fourth Extension

Motion.  Supplemental Postconfirmation Extension of Avoidance Action Service Deadline Order

[Dkt. 18999], ¶ 2 (the "Fourth Extension Order" and together with the Procedures Order and the

Second and Third Extension Orders are collectively, the "Extension Orders").

19.    Nearly four years after commencing its Chapter 11 proceedings, and following a

second round of disclosures and voting, Delphi's revised and modified plan (the "Modified

Plan") went "effective" on October 6, 2009.  Notice of (A) Order Approving Modifications to

First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates,

Debtors and Debtors-in-Possession and (B) Occurrence of Effective Date, dated October 6, 2009

[Dkt. 18958], ¶ 2.

20.    Eventually, the Complaint was unsealed, and Delphi mailed a copy of the

Complaint to Olin on or about March 19, 2010 – over 2½ years after the Complaint was filed

under seal and after the statute of limitations provided by Section 546(a) of the Bankruptcy Code

had expired.  On March 24, 2010, Olin transmitted a copy of the Complaint to GBC and

maintains that GBC must defend and indemnify Olin pursuant to the terms of the Purchase

Agreement.

21.    After purchasing Olin's metal business less than two months after a $24.5 million

Complaint had been filed under seal against Olin, GBC took no special actions to organize, hold

or preserve records with respect to Delphi or interview GBC employees (*i.e.*, former Olin

employees) knowledgeable about the Delphi business relationship.  As a result, GBC has

suffered great prejudice and has been harmed in its ability to defend the Complaint.

## ARGUMENT

**I.    THE EXTENSION ORDERS SHOULD BE VACATED AS AGAINST OLIN/GBC ON THE GROUNDS THAT EACH VIOLATED PROCEDURAL DUE PROCESS AS THEY WERE ENTERED WITHOUT OLIN AND/OR GBC HAVING NOTICE OR AN OPPORTUNITY TO BE HEARD**

22.    GBC respectfully submits that the combination of permitting Delphi to file the Complaint under seal – thereby concealing from Olin (and GBC) that Olin had been sued for $24.5 million – while continually extending Delphi's time to serve process for more than 2½ years past the expiration of the statute of limitations – again without notice to Olin (and/or GBC) – has resulted in a proceeding devoid of procedural due process.  Accordingly, the Extension Orders must be vacated as against Olin and GBC.

**A.    This Court Has The Power To Vacate The Extension Orders**

23.    The Extension Orders are interlocutory orders that the Court can reconsider or modify at its discretion.  *See United States v. Uccio*, 940 F.2d 753, 757-58 (2d Cir. 1991).

24.    Even if the Court were to conclude that its Extension Orders are "final," the same relief requested by GBC is warranted under Fed. R. Civ. P. 60(b)(4), (5) and (6) for the following three reasons:

- First, Fed. R. Civ. P. 60(b)(4), made applicable by Fed. R. Bankr. P. 9024, authorizes a court to relieve a party from a final order if the order is void.  Fed. R. Civ. P. 60(b)(4).  A court must grant relief under this Rule if the order is void as a violation of due process for failing to provide proper notice.  *Simer v. Rios*, 661 F.2d. 655, 663-64 (7th Cir. 1981) (judgment was void as a violation of due process due to the failure to give proper notice to class members); *Recreational Props., Inc. v. Southwest Mortg. Serv., Inc.,* 804 F.2d 311, 314 (5th Cir. 1986) (under Fed. R. Civ. P. 60(b)(4), vacation of a void order that violates due process is mandatory, not discretionary).

- Second, Fed. R. Civ. P. 60(b)(5) and (6) also provide, in relevant part:

> On motion and just terms, the Court may relieve a party or
> its legal representative from a final judgment, order or
> proceeding for the following reasons . . . . (5) applying it [the
> order] prospectively is no longer equitable; or (6) any other
> reason that justifies relief.

- And, third, Fed. R. Civ. P. 60(b)(6) "confers broad discretion on the trial court to
  grant relief when appropriate to accomplish justice [and] it constitutes a grand
  reservoir of equitable power to do justice in a particular case." *Pichardo v.
  Ashcroft*, 374 F.3d 46, 55-56 (2d Cir. 2004) (quoting *Matarese v. LeFevre*, 801
  F.2d 98, 106 (2d Cir. 1986).  Furthermore, "it is properly invoked where there are
  extraordinary circumstances, or where the judgment may work an extreme and
  undue hardship" as here.  *Id.*

All of these grounds exist for vacating the Extension Orders in the present case.

       **B.**      **Delphi Failed To Serve Olin (Or GBC) With Notice Of The Motions Seeking
The Extension Orders And Failed To Provide Olin (Or GBC) An
Opportunity To Be Heard On The Motions**

      25.      Delphi obtained unilateral extensions of the deadlines to serve the Complaint.

While the requests for these extensions were not filed under seal, Delphi did not provide any

notice to Olin (or GBC) of the Extension Orders or the related motions.  Neither Olin nor GBC

had any opportunity to be heard on matters that fundamentally affected its rights.

      26.      As support for multiple Extension Orders, Delphi's motions alleged that they

merely wanted to "avoid unnecessarily alarming potential defendants" and save the defendants

from having to "retain counsel to defend against adversary proceedings...."  First Extension

Motion, ¶¶ 33, 37.  This maneuver also provided Delphi with a tactical advantage with its

suppliers:  "Debtors have worked to preserve and repair their business relationship with many of

the potential defendants during these cases and have negotiated or regained favorable credit

terms with many suppliers and are continuing to do so."  *Id.*, ¶ 37.  Delphi's stated intent was to

"preserve the status quo" and "potentially valuable assets without disrupting the plan process or

existing business relationships prematurely or prejudicing the rights of any defendants."  *Id.*, ¶¶

33-34.  Delphi knew it had filed a $24.5 million lawsuit against Olin.  But Olin (and GBC) did

not.  In other words, Delphi was concerned that if Olin knew that it was being sued for $24.5

million, Delphi's business relationship with Olin (and GBC) would be impaired.

27.     Dephi also justified the Extension Orders as "reduc[ing] the administrative and

economic burdens of the [adversary proceedings] on the Debtors, the Court, the Clerk of Court,

and the potential defendants."  Second Extension Motion, ¶ 21; Third Extension Motion, ¶ 22;

Fourth Extension Motion, ¶ 19.  Delphi's professed concerns and good intentions toward Olin's

interests are reminiscent of an old axiom – with Delphi as a friend, one needs no enemy.

28.     Delphi's self-interested justifications cannot support the wholesale evisceration of

Olin and GBC's procedural due process rights.  Delphi had two clear options: (1) sue Olin or not

sue Olin; or (2) obtain an agreement with Olin to toll the statute of limitations or not obtain a

tolling agreement from Olin.   Delphi bears responsibility for its actions (or inactions).  Instead,

Delphi advanced creative, yet infirm, procedures that violated Olin's (and GBC's) due process

rights and caused severe prejudice.

29.     It has long been held that the "fundamental requisite of due process of law is the

opportunity to be heard."  *Grannis v. Ordean*, 234 U.S. 385, 394 (1914).  However, this right to

be heard "has little reality or worth unless one is informed that the matter is pending and can

choose for himself whether to appear or default, acquiesce or contest."  *Mullane v. Central

Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).  Thus, an "elementary and fundamental

requirement of due process in any proceeding which is to be accorded finality is notice

reasonably calculated, under all the circumstances, to apprise interested parties of the pendency

of the action and afford them an opportunity to present their objections."  *Id.*; *Barcia v. Sitkin*,

367 F.3d 87, 107 (2d Cir. 2004) (same).

30.     In *Luessenhop v. Clinton County*, 466 F.3d 259, 269-270 (2d Cir. 2006), a taxpayer claimed to have received insufficient notice of foreclosure proceedings where the county sent notice of foreclosure via certified mail and the notice was returned unclaimed.  The Second Circuit vacated the underlying judgment finding that the county's notice was insufficient because the county failed to take any additional steps to apprise the taxpayer of the impending action although additional steps were practicable and not burdensome.  *Id.* ("This requirement of 'notice reasonably calculated' must be made in good faith, for, 'when notice is a person's due, process which is a mere gesture is not due process.') (citing *Mullane*, 339 U.S. at 315); *Lugo v. Keane*, 15 F.3d 29, 30 (2d Cir. 1994) (vacating judgment for failure to provide notice and an opportunity to be heard because "[n]o principle is more fundamental to our system of judicial administration than that a person is entitled to notice before adverse judicial action is taken against him."); *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 707 (1988) (due process requires notice of pendency of action and opportunity to be heard).

31.     Neither Olin nor GBC had any way of knowing that Olin was a defendant in a secret case.  Within two short months after the Complaint was filed under seal seeking a judgment against Olin for $24.5 million, GBC purchased Olin's metal business.  Olin and GBC had no way of knowing that their rights were being repeatedly impaired by a stealth Complaint or orders entered with no notice to them.  This deprivation of adequate notice violated both Olin's and GBC's fundamental due process rights.

32.     It is black letter law that if a party such as Olin (or GBC) is not afforded due process during the proceeding that led up to entry of an order, the party is not bound and the order is void and unenforceable against that party.  *Lavin v. The Emigrant Indus. Savings Bank*, 1 F. 641, 664 (C.C. S.D. N.Y. 1880) ("if jurisdiction be taken where there has been no service of

process or notice the proceeding is a nullity.  It is not only voidable, but it is absolutely void.")

*In re Johns Manville Corp*., __ F.3d __, 2010 WL 1007832, at *20 (2d Cir. 2010) (because

Chubb Indemnity Insurance Company did not receive notice of the proceedings that led to

approval of an underlying settlement agreement, plan and other orders at issue, it was not bound

by the orders - otherwise its due process rights would be violated).  Accordingly, the Extension

Orders must be vacated and the Complaint dismissed.

## II.   THE COMPLAINT IS BARRED BY THE STATUTE OF LIMITATIONS AND SHOULD BE DISMISSED

33.     Section 546(a) of the Bankruptcy Code establishes the statute of limitations on

avoiding powers, and it states:

> An action or proceeding under section 544, 545, 547, 548, or 553 of this title *may not be commenced* after the earlier of – (1) the later of – (A) *2 years after the entry of the order for relief*; or (B) 1 year after the appointment or election of the first trustee under section 702, 1104, 1163, 1202, or 1302 of this title if such appointment or such election occurs before the expiration of the period specified in subparagraph (A); or (2) the time the case is closed or dismissed.

11 U.S.C. § 546(a) (emphasis added).

34.     Because any or all of the Extension Orders should be vacated *ab initio*, the

Complaint is barred by the two-year statute of limitations.  A statute of limitations serves to

protect a defendant from an "evergreen" litigation risk, not to create a moving target subject to a

plaintiff's self-serving, unilateral interests.  Delphi's claim is barred.

### A.     Once The Extension Orders Are Vacated, Delphi's Complaint Against Olin Is Barred By The Statute Of Limitations

35.     Once any or all of the Procedures Orders or Extension Orders are vacated and/or

modified, the issuance of summons and service of process extensions contained therein are,

correspondingly, eliminated.  As a result, the claims asserted in the Complaint are time-barred by

the plain terms of Section 546 of the Bankruptcy Code.  While this result may appear harsh,

Delphi's wound is self-inflicted.  The extinguishment of Delphi's avoidance claims was brought about by Delphi's own strategic decisions – Delphi made its decision to try for the best of all worlds – attempting to preserve the preference actions under seal while at the same time maintaining vendor relationships and negotiating the best credit terms possible with its target defendants.  Delphi cannot have it both ways.

36.     Delphi, quite simply, took a risk.  Delphi made an election to hide the avoidance actions from all defendants for 2½ years while taking the opportunity to negotiate more favorable credit terms than they otherwise would have been able had the defendants known they were being sued.  As the architect/engineer of this strategy, Delphi undertook the risk that the avoidance actions would be dismissed for any number of reasons, including that they are time-barred under the statute of limitations.

37.     GBC purchased Olin's metal business and was entitled to rely upon the passing of a statutory bar date imposed for the precise purpose of providing certainty for GBC in its acquisition of Olin's business.  In the absence of any timely notice of extension of the statute of limitations to Olin and/or GBC, the defendants were entitled to rely on the fact that no avoidance action could be brought after the expiration of the two-year statute of limitations.  Such is the intent of the statute.  GBC purchased Olin's metal business *after* the statute of limitation passed for Delphi to file a $24.5 million preference Complaint against Olin.

**B.    Olin/GBC's Ability To Defend The Complaint Has Been Severely Prejudiced By Delphi's Failure To Comply With The Statute Of Limitations**

38.     Delphi's self-serving, *seriatim* extensions unilaterally contravened the Congressionally-mandated statute of limitations by more than 2½ years, all for the convenience of Delphi and at the expense of Olin and GBC.

39.    Congress chose to impose a two-year statute of limitations on avoidance actions.

11 U.S.C. § 546.  *See e.g., In re: Century Brass Products, Inc. v. Caplan*, 22 F.3d 37, 39-40 (2d

Cir. 1994) (holding that two-year statute of limitations applies to debtors-in-possession and

finding nothing in the legislative history to the contrary).  "If there are to be exceptions to the

statutes of limitations, it is for Congress, rather than for the Courts to create [] them."  *Rothensies*

*v. Electric Storage Battery Co.*, 329 U.S. 296, 301-302 (1946).

40.    The statute of limitations (*i.e.*, the two-year limitation embedded in

section 546(a)), is a statute of repose "enacted upon the presumption, that one having a well-

founded claim will not delay enforcing it beyond a reasonable time, if he has the power to sue."

*In re Cornwall*, 9 Blatchf. 114, 6 F. Cas. 586, 591 (C.C.D. Conn. 1871) (No. 3,250).

41.    "Thus in the judgment of most legislatures and courts, there comes a point at

which the delay of a plaintiff in asserting a claim is sufficiently likely either to impair the

accuracy of the fact-finding process or to upset settled expectations that a substantive claim will

be barred without respect to whether it is meritorious."  *See Board of Regents v. Tomanio*, 446

U.S. 478, 487 (1980); *see also United States v. Kubrick*, 444 U.S. 111, 117 (1979) (asserting that

statutes of limitation "protect defendants and the courts from having to deal with cases in which

the search for truth may be seriously impaired by the loss of evidence, whether by death or

disappearance of witnesses, fading memories, disappearance of documents, or otherwise").

42.    Statutes of repose are only to be outweighed where "the interests of justice require

vindication of the plaintiff's rights."  *Family Golf Ctrs., Inc. v. Acushnet Co. (In re Randall's*

*Island Family Golf Ctrs., Inc.*), 288 B.R. 701, 705 (Bankr. S.D.N.Y. 2003).  Such circumstances

occur only where a plaintiff has not slept on its rights, has commenced a timely court action in a

court of competent jurisdiction, a particular defect in the complaint is waivable and frequently

waived, and the defendant "could not have relied upon the policy of repose embodied in the

limitation statute, for it was aware that [the plaintiff] was actively pursuing his . . . remedy." *Id.*

(quoting *Burnett v. N.Y. Cent. R.R. Co.*, 380 U.S. 424, 428-29 (1965)) (emphasis added).  None

of these circumstances are present here.

43.    By keeping this Complaint sealed more than 2½ years ***after*** the statute of

limitations expired, Delphi deliberately chose a course of action that assured that the evils the

statute of limitations was designed to prevent will actually occur – evidence lost, memories faded

and witnesses having disappeared.  *See International Ry. of Cent. Am. v. United Fruit Co.*, 373

F.2d 408, 416 (2d. Cir. 1967); *Kubrick*, 444 U.S. at 117.  As a result, Olin/GBC's ability to

defend itself has been substantially impaired.

44.    In its various motions supporting the Extension Orders, Delphi failed to mention

that the extensions served to place Olin and GBC in a worse litigation position and Delphi in a

better litigation position.  While Delphi was able to collect, retain and preserve evidence that

supported allegations filed in Complaints under seal, Olin and GBC were kept in the dark while

evidence may have eroded and/or witness memories faded.  Delphi's assertion that the

Preservation Procedures would not "prejudic[e] the rights of any defendants" is wrong.  First

Extension Motion, ¶ 33.  The fruits of Delphi's efforts served to more than double the two-year

statute of limitations period – without the assent of or notice to Olin or GBC.

45.    In view of the prejudice to Olin (and GBC), the appropriate remedy is to dismiss

the Complaint.  "[E]ven if one has a just claim it is unjust not to put the adversary on notice to

defend within the period of limitation and the right to be free from stale claims in time comes to

prevail over the right to prosecute them."  *Rothensies*, 329 U.S. at 301-302; *see also* 1 HORACE

G. WOOD, A TREATISE ON THE LIMITATION OF ACTIONS 8-9 (4th ed. 1916) ("The underlying

purpose of statutes of limitation is to prevent the unexpected enforcement of stale claims

concerning which persons interested have been thrown off their guard by want of prosecution.").

46.    The fact that a motion to dismiss is founded upon procedural grounds – as

opposed to substantive grounds – does not affect the bona fide merits of the motion:

> if the Rules are to mean anything, parties must diligently try to
> follow them and courts must enforce them, even if it means that
> cases must sometimes be finally determined on procedural grounds
> rather than on their substantive merits.

*Mused v. U.S. Dep't of Agriculture Food and Nutrition Serv.*, 169 F.R.D. 28, 35 (W.D.N.Y.

1996).

47.    Delphi's failure to notify Olin that it had been sued and Delphi's efforts in

denying Olin (and GBC) the right to be heard upon the motions supporting each of the Extension

Orders have violated Olin's and GBC's fundamental due-process rights; as a result, the

Complaint should be dismissed.

## III.    THE COMPLAINT IS ALSO BARRED BY LACHES AND SHOULD BE DISMISSED

48.    Laches is based on the venerable maxim "vigilantibus non dormientibus aequitas

subvenit," meaning "equity aids the vigilant, not those who slumber on their rights" and bars one

from asserting a claim who has unduly delayed the prosecution of his claim.  *In re: Lathop,*

*Haskins & Co*., 223 F. 912, 917-18 (2d Cir. 1915) (upholding dismissal of claim for failure to

file within four years of the time period established by the district court).

49.    In the Second Circuit, a defendant need only demonstrate three elements to

prevail on a laches defense:  (1) that it lacked knowledge that the claim might be asserted against

it; (2) that the plaintiff delayed asserting the claim despite the opportunity to do so; and (3) that it

would be prejudiced if the claim were now allowed to go forward.  *Gucci v. Sinatra* (*In re*

*Gucci*), 197 Fed. Appx. 58, 60 (2d Cir. 2006).

50.     As described more fully above, each of these three elements is met.  Olin and

GBC had no knowledge, actual or constructive, that a Complaint seeking $24.5 million had been

filed against Olin.  Delphi had full opportunity to timely file and serve the Complaint against

Olin or obtain tolling agreements, but instead Delphi chose to hide the Complaint for more than

two years after the expiration of the statute of limitations.  For all the reasons stated, Olin and

GBC are prejudiced if the Complaint is allowed to proceed.

**IV.     THE COMPLAINT IS BARRED BY *RES JUDICATA* BECAUSE DELPHI
         FAILED TO PRESERVE THE ALLEGED CAUSE OF ACTION, AND IT
         SHOULD BE DISMISSED**

51.     This Court lacks post-confirmation jurisdiction over the Complaint, and Delphi

lacks standing to pursue it, because neither this avoidance action nor the other asserted avoidance

actions were preserved or retained under the Confirmed Plan or the Modified Plan.

52.     In the initial First Amended Disclosure Statement with Respect to First Amended

Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-

in-Possession (the "Disclosure Statement") [Docket No. 11388], Delphi represented that it would

*not* retain any preference actions under the Confirmed Plan, except for those specifically listed in

Exhibit 7.24 to the Confirmed Plan.  *See* Disclosure Statement, §§ VIII(D)(10)(a) and IX(F)(23)

("Causes of Action against Persons arising under section 544, 545, 547, 548, or 553 of the

Bankruptcy Code or similar state laws will *not be retained* by the Reorganized Debtors unless

specifically listed on Exhibit 7.24 to the Plan" (emphasis added)).  Delphi also represented to the

Court and all affected parties that "[i]f the Plan is confirmed, these [avoidance] actions will be

dismissed."  *Id.*, § VIII(D)(10)(b).

53.     Exhibit 7.24 to the Confirmed Plan did not include any reference to the Complaint

or any other avoidance actions, and listed only the unrelated actions against the Laneko

Defendants.  *See* Confirmed Plan Exhibit 7.24 [Docket No. 11608].  In addition, the Disclosure

Statement contained no discussion of the identity of the defendants, the nature of the claims or

any estimated value of the potential avoidance actions to Delphi's estate – indeed, the

Liquidation Analysis that accompanied the Disclosure Statement as Appendix E specifically

noted that ***it did not account for any potential recoveries with respect to avoidance actions,***

***assuming their value at zero***.  *See* Disclosure Statement, Appendix E.

54.    This Court entered its Confirmation Order on January 25, 2008, specifically

noting that "[i]t is also in the best interests of holders of Claims and Interests that Avoidance

Actions shall not be retained by the Reorganized Debtors unless specifically listed on Exhibit

7.24 of the Plan."  Confirmation Order, ¶ CCC.  Upon confirmation of the Confirmed Plan, the

avoidance actions were no longer preserved, and the Debtors waived any ability they may have

had to pursue them.

55.    It is axiomatic that "[t]he confirmation of a bankruptcy plan of reorganization

must be accorded *res judicata* effect … [and] prevents the subsequent assertion of any claim not

preserved in the plan as required by § 1123(b)(3)."  *In re I. Appel Corp.*, 300 B.R. 564, 567

(Bankr. S.D.N.Y. 2003) (finding a post-confirmation preference action is not barred by the res

judicata effect of the confirmation order where the confirmed plan contained a general

reservation of rights to pursue preference actions post-confirmation).  Because here the

confirmed plan expressly waived any right to bring preference actions post confirmation, the

doctrine of *res judicata* bars the Debtors from pursuing any causes of action other than those

specifically preserved in Exhibit 7.24 to the Confirmed Plan.[5]

---

[5]    GBC recognizes that Section 14.7(b) of the Confirmed Plan contains a provision to the effect that the
Confirmed Plan, the Disclosure Statement, and related documents would become null and void to the extent the
Confirmed Plan failed to become effective.  Despite that provision, Delphi cannot nullify the effect its
representations had on its creditors and all parties-in-interest – and the reliance of those parties on such

56.     After its initial Confirmed Plan failed, Delphi subsequently attempted to revive

the avoidance actions in connection with its Modified Plan.  Once again, Delphi failed to

disclose the identity of defendants and provided creditors with virtually no description or

discussion of the nature of the claims or any estimated value of potential avoidance actions.

Instead, the Supplement to First Amended Disclosure Statement with Respect to First Amended

Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-

in-Possession (As Modified) (the "Supplemental Disclosure Statement") [Docket No. 17031]

simply referred to a new Plan Exhibit 7.19, which purportedly intended to disclose all causes of

action Delphi sought to retain under the Modified Plan.  And, once again, the Liquidation

Analysis accompanying the Supplemental Disclosure Statement contained no explanation of any

estimated value of potential avoidance actions to creditors, mentioning only that they were

included under the general asset category "Other."  *See* Supplemental Disclosure Statement,

Appendix C.  No reference to the impact of potential avoidance action recoveries (which were

not anticipated under the Confirmed Plan) appears in Delphi's "Comparison of the December 10,

2007 and the May 28, 2009 Hypothetical Liquidation Analyses" included with the Liquidation

Analysis in the Supplemental Disclosure Statement.  *Id.*

57.     With respect to preference actions, Plan Exhibit 7.19 to the Modified Plan

contained nothing more than a cryptic list of adversary proceeding case numbers, with no

indication of the names of the potential defendants, the value of the alleged claims, or the basis

for the alleged claims.  *See* Modified Plan Exhibit 7.19 [Docket 17557].  Nor did Modified Plan

Exhibit 7.19 contain any explanation as to why the cryptic list of case numbers referenced fewer

---

representations – in connection with their Disclosure Statement and the Plan, including Delphi's representations
that avoidance actions would not be pursued if the plan was confirmed.  And, the plan was confirmed.

than 200 avoidance actions when Delphi had previously referred to the potential existence of

more than 11,000 avoidance action claims in the Disclosure Statement.

58.     A disclosure statement is "critical" for creditors in determining their vote on a

plan.  Creditors consider avoidance actions and the possible recoveries from such actions in

casting their votes.  *See In re Galerie Des Monnaies of Geneva, Ltd.*, 62 B.R. 224, 226 (S.D.N.Y.

1986).  But Delphi's creditors never had that opportunity.  Delphi essentially provided no

information on preference recoveries in either the Disclosure Statement or the Supplemental

Disclosure Statement, and, in fact, expressly stated that its original Liquidation Analysis "[did]

not include recoveries resulting from any potential preferences …"  Disclosure Statement,

Appendix E.  Delphi could not have preserved claims it did not properly disclose.

59.     Assuming *arguendo* that Delphi retained any ability to revive the avoidance

actions in connection with its Modified Plan after having abandoned them previously, Delphi

failed to describe any such actions in the Modified Plan and Supplemental Disclosure Statement

in a manner sufficient to preserve them.  Modified Plan Exhibit 7.19 did not disclose the identity

of any preference action defendant, the nature of the claims or, more importantly, the value of

the claims.  It was merely a list of random, meaningless numbers.  Nothing in the Supplemental

Disclosure Statement provided creditors any indication as to whom or what the potential

avoidance actions might entail or their impact upon distributions to creditors.  And, because all

of the complaints were filed under seal, even if creditors or potential defendants would have had

notice that Delphi intended to pursue preference claims, such parties were precluded from

obtaining any cogent information about them.

60.     Despite Delphi's changed circumstances that led to the Modified Plan—and

which obviated the need for any further secrecy with respect to avoidance actions—neither the

Supplemental Disclosure Statement nor any other filings related to the Modified Plan included

any discussion of Delphi's intent to reverse position with respect to avoidance action claims.

Rather, Delphi attempted to include only a blanket reservation of rights with respect to avoidance

actions through a cryptic list of adversary proceeding numbers, which is insufficient to preserve

such alleged claims. *See, e.g.*, *In re Am. Preferred Prescription, Inc.*, 266 B.R. 273, 277

(E.D.N.Y. 2000); *Kunica v. St. Jean Fin., Inc.*, 233 B.R. 46, 56 (S.D.N.Y. 1999); *Browning v.

Levy,* 283 F.3d 761, 775 (6th Cir. 2002) ("blanket" reservation of rights without any factual basis

for reserved claims insufficient to save claims).

61.     In short, no claims were preserved against defendants under Bankruptcy Code

Section 1123(b)(3)(B) *ab initio*, and no claims were preserved in Delphi's subsequent attempts

under the extension motions or the Modified Plan.  Accordingly, Delphi's claims against Olin

(and GBC) should be dismissed.[6]

## V.     THE COMPLAINT IS ALSO BARRED BY JUDICIAL ESTOPPEL

62.     The doctrine of judicial estoppel "prevents a party in a legal proceeding from

taking a position contrary to a position the party has taken in an earlier proceeding."  *Simon v.

Safelite Glass Corp.*, 128 F.3d 68, 71-72 (2d. Cir. 1997).  Judicial estoppel "generally prevents a

party from prevailing in one phase of a case on an argument and then relying on a contradictory

argument to prevail in another phase."  *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001).

Courts have uniformly recognized that the purpose of judicial estoppel is to "protect the integrity

of the judicial process … by prohibiting parties from deliberately changing positions according

to the exigencies of the moment."  *Id.* at 749-750; *see also Simon,* 128 F.3d at 71-72; *Rosenshein*

---

[6]     To the extent the Complaint is not otherwise dismissed, GBC reserves the right to assert that the Complaint is
also barred by the *res judicata* effect of the final resolution and allowance of certain prepetition claims against
Delphi relating to the relationship of Olin (and/or GBC) with Delphi which claims were fully and finally
resolved after the Complaint was filed under seal.

*v. Kleban*, 918 F. Supp. 98, 104 (S.D.N.Y. 1996) ("Judicial estoppel is invoked … to prevent the party from playing fast and loose with the courts, and to protect the essential integrity of the judicial process.").  "The doctrine does not depend upon prejudice to the party invoking it." *Galerie Des Monnaies of Geneva, Ltd. v. Deutsche Bank, A.G., New York Branch (In re Galerie Des Monnaies of Geneva, Ltd)*, 55 B.R. 253, 260 (Bankr. S.D.N.Y. 1986).

63.    In the Second Circuit, two factors that must be satisfied to invoke the doctrine of judicial estoppel are: (i) the party against whom estoppel is asserted took an inconsistent position in a prior proceeding, and (ii) the first tribunal adopted the inconsistent position in some manner, such as by rendering a favorable judgment.  *Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1. (2d. 1998).

64.    Delphi repeatedly represented to the Court (both orally and in writing) that, with respect to avoidance actions, it only intended to pursue claims against certain specific defendants not including Olin or GBC.  Delphi took this position in Exhibit 7.24 to the Confirmed Plan, confirmed this position in its Second Extension Motion and reaffirmed this position in its Third Extension Motion.  The Court, in turn, accepted Delphi's position that it intended to pursue only four avoidance claims when it entered orders granting the relief sought.

65.    By bringing the Complaint against Olin (and the other avoidance defendants), Delphi now takes the exact opposite position that Delphi advanced in the prior motions which were adopted by the Court.  Under the doctrine of judicial estoppel, the Court should not sanction Delphi's attempt to pursue 177 avoidance claims after Delphi consistently stated it intended to pursue no more than a few unrelated claims.  If the Court knew when ruling on the extension motions that Delphi would actually prosecute 177 (rather than 4) avoidance actions, the actions may not have remained under seal while the statute of limitations was repeatedly

extended over 2½ years, all without providing any notice to Olin (much less GBC). When ruling

on the extension motions, the Court ensured that the Laneko Defendants – the 4 preserved

defendants – received notice of Delphi's motions.

66. Accordingly, GBC requests that the Court exercise its discretion and apply the

doctrine of judicial estoppel to prevent Delphi from pursing the Complaint against Olin, which

Delphi repeatedly indicated would not be pursued.

## VI.    THE EXTENSION ORDERS SHOULD BE VACATED BECAUSE THERE WAS NO GOOD CAUSE TO EXTEND THE TIME FOR SERVICE

67. Even in the absence of Delphi's due process violations – which alone mandates

that the Extension Orders be vacated – the orders should be vacated on several additional

grounds. First, cause simply did not exist for the repeated extension requests made by Delphi.

Pursuant to Fed. R. Civ. P. 4(m), made applicable by Fed. R. Bankr. P. 7004, courts can only

extend a plaintiff's time for service upon: (i) a showing of "good cause;" or (ii) where the court

finds that a discretionary extension of service is appropriate. *See Eastern Refractories Co. v.*

*Forty Eight Insulations, Inc.*, 187 F.R.D. 503, 505-06 (S.D.N.Y. 1999). Under either test, it was

Delphi's burden to establish entitlement to an extension. And, where, as here, the delay in

service is substantial, this burden is a heavy one to overcome. *See Spinale v. United States*, No.

03 CIV 1704, 2005 WL 659150, at *3 & *4 (S.D.N.Y. Mar. 16, 2005).

### A.    "Good Cause" Did Not Exist

68. Under the first test, "good cause" exists only in "exceptional circumstances where

the plaintiff's failure to serve process in a timely manner was the result of circumstances beyond

its control." *Eastern Refractories*, 187 F.R.D. at 505. That is not the case here. Delphi could

have easily filed and served the Complaint within 120 days or attempted to obtain tolling

agreements within the original 120-day period.  Instead, Delphi made a conscious decision to seal the Complaint for 2½ years.

69.    In fact, "good cause" cannot exist where, as here, Delphi's failure to serve the Complaint was part of an admitted strategy to obtain a tactical advantage over Olin and the other defendants when renegotiating the parties' ongoing and/or future business relationships.  The dynamics of the negotiations between Delphi and other defendants would have unquestionably changed had defendants known that they were being sued for the return of hundreds of millions of dollars.

70.    In support of the extension motions, Delphi claimed that good cause existed because: (i) future events would have likely "obviated the need to serve the [] complaint;" and (ii) it had requested the extension before the deadline expired, citing *Bank of Cape Verde v. Bronson*, 167 F.R.D. 370 (S.D.N.Y. 1996).  In *Bank of Cape Verde*, the third-party plaintiff was pursuing good faith settlement negotiations with the plaintiff and the third-party defendants knew of the plaintiff's complaint (the plaintiff having already served all or most of the parties to the action prior to the expiration of the 120-day deadline).  This is a far cry from the situation here, where Olin (and GBC) were not, and could not have been, in settlement negotiations with Delphi – because Olin (and GBC) did not know Olin had been sued.  Moreover, as discussed below, the idea that future events would "obviate the need to serve the [] complaint" ended (to the extent it ever existed in the first place) when Delphi's circumstances materially and adversely changed and its plan investors refused to provide funding in April 2008, before entry of the Third and Fourth Extension Orders.

24

### B.    The Facts Did Not Warrant A Discretionary Extension

71.    Notwithstanding the lack of good cause, a court may still conclude that a

discretionary extension is appropriate.  Four factors are to be considered in this regard:

> (1) whether the applicable statute of limitations would bar the re-filed
> action; (2) whether the defendant had actual notice of the claims
> asserted in the complaint; (3) whether the defendant had attempted to
> conceal the defect in service; and (4) whether the defendant would be
> prejudiced by the granting of plaintiff's request for relief from the
> provision.  *Eastern Refractories*, 187 F.R.D. at 506.

72.    Here, the two-year statute of limitations would bar the re-filed action (factor 1).

Neither Olin nor GBC had notice of the claims asserted in the Complaint (factor 2).  Neither Olin

nor GBC ever attempted to conceal any defect in service (factor 3). And, there can be no doubt

that GBC has been prejudiced by the multiple extensions (factor 4).  The alleged preferential

payments occurred some five years ago and the statute of limitations expired 2½ years ago.

After the filing of the Complaint, under seal, and after the statute of limitations came and went

without any avoidance action filed against Olin, GBC purchased Olin's metals business unaware

that a $24.5 million contingent exposure risk existed.  More than 2½ years after purchasing

Olin's metal business, GBC's ability to defend itself has been substantially impaired.

73.    By keeping this Complaint under seal for over 2½ years ***after*** the statute of

limitations expired, Delphi intentionally chose a path to ensure that the evils that the statute of

limitations was designed to prevent will actually occur.  *Rothensies*, 329 U.S. at 301-302.  The

protections that the statute of limitations is designed to preserve are eviscerated if cause is found

to have existed.  *See Tomanio*, 446 U.S. at 487; *Kubrick*, 444 U.S. at 117.

74.    While it is clear that vacating any or all the Extension Orders will result in

Delphi's claims being barred by the statute of limitations (factor 1), this fact, standing alone, did

not warrant the granting of an extension.  Courts repeatedly recognize that "[t]he fact that

plaintiff's claims may be time-barred does not require us to exercise our discretion in favor of plaintiff." *Eastern Refractories*, 187 F.R.D. at 506; *see also McKibben v. Credit Lyonnais*, 1999 WL 604883, at *4 (S.D.N.Y. Aug. 10, 1999) (denial of an extension "is still proper if it occurs after the expiration of the applicable statute of limitations period, and its effect is to bar the plaintiff's claims").

75.    As the Supreme Court explained: "[E]ven if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and the right to be free from stale claims in time comes to prevail over the right to prosecute them." *Rothensies*, 329 U.S. at 301-302.  Federal courts of appeals have, in fact, concluded that trial courts may revoke a previously granted Rule 4(m) extension if the court later determines that the extension was inappropriate (particularly where, as here, the defendant was not given notice or an opportunity to be heard in the first instance). *See McCrae v. KLLM Inc.*, 89 Fed. Appx. 361, 363 (3d Cir. 2004).

76.    The issue Delphi now faces is the result of Delphi's own making.  As Delphi's circumstances changed to materially and adversely affect its exit from chapter 11, Delphi could no longer argue that it would not have to proceed without pursuing the preference actions. Delphi must now live with the consequences.  At no time before or after the statute of limitations expired did Delphi seek a tolling agreement with Olin or GBC.  Instead, Delphi elected to conceal the complaints in order to preserve business relationships and secure better negotiating positions (a decision that worked until now).  This should not be "cause," good or otherwise, to allow Delphi to benefit, again at the expense of the preference defendants, by allowing Delphi to avoid service of the Complaint and unilaterally extend the statute of limitations.

77.     Accordingly, the Extension Orders should be vacated because there was no cause to extend (or continue to extend) the time for issuance of summons and service of process.

## VII.    THE EXTENSION ORDERS SHOULD BE VACATED BECAUSE THE COMPLAINTS WERE IMPROPERLY SEALED

78.     Finally, the Extension Orders should be vacated because Delphi improperly obtained leave to file its avoidance complaints under seal.

79.     Under 11 U.S.C. § 107 (relied upon by Delphi), papers filed in bankruptcy proceedings "are public records and open to examination by an entity at reasonable times without charge."  11 U.S.C. § 107(a).  This Congressional presumption of public access "is rooted in the public's First Amendment right to know about the administration of justice."  *In re Food Management Group, LLC*, 359 B.R. 543, 553 (Bankr. S.D.N.Y. 2007).  Indeed, "public interest in openness of court proceedings is at its zenith when issues concerning the integrity and transparency of bankruptcy court proceedings are involved."  *Id.*

80.     Because the statute reflects strong policy considerations, Section 107 sets forth only two narrowly-defined exceptions -- documents can be filed under seal if they: (i) contain sensitive commercial information; or (ii) defamatory material.  Section 107(b) provides:

> the bankruptcy court may – (1) protect an entity with respect to a trade secret or confidential research, development, or commercial information; or (2) protect a person with respect to scandalous or defamatory matter contained in a paper filed in a case under this title.

81.     Motions to seal documents are "disfavored" and, as a general rule "should be entered only when actually necessary to protect a party from harm." *In re Gitto Global Corp.*, No. 05-10334, 2005 WL 1027348, at *7 (D. Mass. May 2, 2005) (citing *In re Sherman-Noyes & Prairie Apartments Real Estate*, 59 B.R. 905, 909 (Bankr. N.D. Ill. 1986)).

82.     Here, Delphi claimed that it needed special protection in order to preserve both the "status quo" and its "existing business relationships" and that this amounted to "commercial

information" under the statute.  First Extension Motion, ¶ 33-34.  In so doing, Delphi claimed

that it had "worked to preserve and repair their business relationship with many of the potential

defendants during these cases and h[ad] negotiated or regained favorable credit terms with many

suppliers and [were] continuing to do so."  *Id.*, ¶ 37.

83.    This rationale, however, cannot possibly rise to the "exceptional circumstances"

envisioned by Congress. The need to protect one's business operations and supplier relationships

exists in every corporate reorganization.  This garden-variety concern is neither "unusual" nor

"exceptional" in any sense, and to so hold obviates Section 107's clear protections.[7]

84.    The roots of Section 107 are deeply embedded in caselaw.  In *Delatour v.*

*Meredith*, 144 F.2d 594, 595-96 (2d. Cir. 1944) the Second Circuit reversed the trial court's

order that impounded a list of a debtor's creditors and stockholders finding that there was "no

occasion for taking this drastic step."  The trustees had justified impounding these lists to control

the reorganization proceedings and limit communication – remarkably similar justifications to

the those advanced by Delphi.  *Id.*  In reversing the underlying order as improper, the Second

Circuit stated that "courts should examine closely any petition for an impounding order."  *Id.*;

*see also In re Itel Corp.* 17 B.R. 942, 946 (B.A.P. 9th Cir. 1982) (reversing bankruptcy court

order that impounded list of debtors' debenture holders and noting that the right to access

information "carries out the policy of the Act to promote general investor participation in the

reorganization and to afford the debtor's creditors and security holders an opportunity to

communicate with one another, organize committees or to take any other proper steps to protect

their mutual interests").

---

[7]    In any event, any claimed rationale for sealing the Complaint disappeared before entry of the Third and Fourth
Extension Orders -- the Modified Plan had already been confirmed.

85.     Moreover, the Second Circuit has expressly defined "commercial information" to be "information which would cause an unfair advantage to competitors by providing them information as to the commercial operations of the debtor." *In re Orion Pictures Corp.*, 21 F.3d 24, 27 (2d Cir. 1994) (emphasis added); *In re Itel Corp.* 17 B.R. at 946.  Nothing in Delphi's bare-bones Complaint involves information that would give an "unfair advantage to competitors" – neither Olin nor GBC has ever been a competitor of Delphi and none of the information in the Complaint has anything to do with confidential "commercial operations of the debtor."

Accordingly, the Extension Orders should also be vacated on this ground.

## CONCLUSION

Delphi has engaged in a pattern of conduct that violates certain basic rights, *i.e.*, the tactical use of a time-barred Complaint filed under seal, with issuance of summons and service of process unilaterally withheld using a series of motions filed (but never served) over a 2½ year period, for a lawsuit now seeking to collect over $24.5 million for transfers allegedly made some five years ago.  Justice Louis Brandeis coined a marvelous phrase:  "sunlight is the best disinfectant," in praise of the benefits of transparency and candor.  As this record reflects, neither has been present here.

Dated: May 14, 2010                     Respectfully submitted,


       /s/  Michelle K. McMahon

BRYAN CAVE LLP
Michelle K. McMahon (MM-8130)
1290 Avenue of the Americas
New York, NY 10104
Telephone:  (212) 541-2000
Facsimile:  (212) 541-1493

BRYAN CAVE LLP
Lloyd A. Palans (pro hac vice pending)
Christopher J. Lawhorn (pro hac vice pending)
200 North Broadway, Suite 3600
St. Louis, MO 63102
Telephone:  (314) 259-2000
Facsimile:  (314) 259-2020
lapalans@bryancave.com
cjlawhorn@bryancave.com

*Attorneys for GBC Metals LLC*

**EXHIBIT A**

BRYAN CAVE LLP
Michelle K. McMahon (MM-8130)
1290 Avenue of the Americas
New York, NY 10104
Telephone: (212) 541-2000
Facsimile: (212) 541-1493

BRYAN CAVE LLP
Lloyd A. Palans (pro hac vice pending)
Christopher J. Lawhorn (pro hac vice pending)
200 North Broadway, Suite 3600
St. Louis, MO 63102
Telephone: (314) 259-2000
Facsimile: (314) 259-2020
lapalans@bryancave.com
cjlawhorn@bryancave.com

*Attorneys for GBC Metals, LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | Chapter 11: |
| | : | |
| DELPHI CORPORATION, *et al.*, | : | Case No. 05-44481 (RDD) |
| | : | Jointly Administered |

-----------------------------------------------------------x

| | | |
|---|---|---|
| DELPHI CORPORATION | : | |
| | : | Adv. Pro. No. 07-02436 (RDD) |
| Plaintiff, | : | |
| | : | |
| -against- | : | |
| | : | |
| OLIN CORPORATION and, | : | |
| GBC METALS, LLC, | : | |
| | : | |
| Defendants. | : | |

-----------------------------------------------------------x

<u>**DECLARATION OF JOHN WALKER**</u>

John Walker, first being duly sworn and under oath, states:

I am John Walker and I am over 18 years old. I am the Chief Executive Officer of Global

Brass & Copper, Inc. and GBC Metals, LLC (collectively "GBC"). I was involved in the

acquisition of Olin Corporation's ("Olin") metals business on behalf of GBC, and have personal knowledge of the facts stated in this declaration. If called and sworn as a witness, I could and would testify competently to the matters set forth herein.

1.     GBC purchased the metals business of Olin on November 19, 2007 pursuant to a Purchase Agreement dated October 15, 2007 (the "Purchase Agreement").

2.     At the time GBC purchased Olin's metal business:

(i)     GBC had no information or knowledge that any $24.5 million lawsuit (the "Complaint") against Olin had been filed by Delphi Corporation under seal and/or was pending against Olin;

(ii)    GBC had no information or knowledge that this $24.5 million contingent loss exposure risk was looming against its newly purchased business,

(iii)   GBC had no knowledge or opportunity to adjust the purchase price of the Purchase Agreement to account for this $24.5 million contingent loss exposure risk;

(iv)    GBC had no knowledge or opportunity to escrow any portion of the purchase price pending resolution of the Complaint; and

(v)     GBC had no knowledge or opportunity to obtain express indemnification protections from Olin for this contingent loss exposure risk which Olin now maintains that GBC must indemnify and defend Olin pursuant to the Purchase Agreement.

3.     On March 24, 2010, Olin transmitted a copy of the Complaint to GBC and asserts and maintains that GBC must defend and indemnify Olin pursuant to the Purchase Agreement, which GBC disputes.

I declare under penalty of perjury that the foregoing is true and correct.

_____
John Walker