# UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re | : Chapter 11 |
|  | : |
| DELPHI CORPORATION, *et al.*, | : Case No. 05-44481 (RDD) |
|  | : |
| Debtors. | : Jointly Administered |
|  | : |
|  | : Hearing Date: May 20, 2010 |

**REPLY IN SUPPORT OF MOTION OF METHODE ELECTRONICS, INC. FOR AN ORDER (I) PERMITTING METHODE TO CONTINUE POST-PETITION LITIGATION WITH THE REORGANIZED DEBTORS IN MICHIGAN AND (II) OVERRULING THE REORGANIZED DEBTORS' TIMELINESS OBJECTION TO METHODE'S ADMINISTRATIVE EXPENSE CLAIMS**

| | |
|---|---|
| WACHTELL, LIPTON, ROSEN & KATZ | LOCKE LORD BISSELL & LIDDELL LLP |
| 51 West 52nd Street | 111 South Wacker Drive |
| New York, New York  10019 | Chicago, Illinois  60606 |
| Telephone:  (212) 403-1000 | Telephone:  (312) 443-0654 |
| Facsimile:  (212) 403-2000 | Facsimile:  (312) 896-6654 |
| | |
| Dated:  May 19, 2010 | *Attorneys for Methode Electronics, Inc.* |

Methode Electronics, Inc. ("Methode"), respectfully submits this Reply in support of its *Motion for an Order (I) Permitting Methode to Continue Post-Petition Litigation with the Reorganized Debtors in Michigan and (II) Overruling the Reorganized Debtors' Timeliness Objection to Methode's Administrative Expense Claims*.

## PRELIMINARY STATEMENT[1]

1.  Contrary to Delphi's assertion, the administrative claims asserted by Methode in this case were *not* untimely in any respect. As demonstrated in Methode's opening brief, Delphi's Modified Plan expressly contemplates "allowance" of claims in alternative forums by agreement of the parties. Here, Delphi irrefutably agreed that the Michigan courts would adjudicate Methode's administrative claims, whenever they arose. *Delphi* chose to sue Methode in Michigan based on a contract executed after confirmation of its plan; *Delphi* asserted in Michigan that the forum selection clause in that contract required its and Methode's claims to be adjudicated in Michigan; and *Delphi* furiously contested the counterclaim asserted by Methode in Michigan for months after the "bar date" that it asserts is applicable to the period before June 1, 2009.

2.  Putting aside Delphi's agreement, there is ample cause to recognize Methode's claims for the period prior to June 1, 2009, even if Methode's claim form of November 5, 2009 is deemed untimely as to those claims. As in other cases in which late claims have been allowed, the timing of Methode's filing did *not* result solely from anyone's inadvertence: Here, Delphi's undisputed post-confirmation conduct gave Methode every reason to believe that the *Michigan* courts, rather than this Court, would determine Methode's claims.

---

[1] Capitalized terms have the same meanings as in Methode's opening brief. Citations to "Methode Mem." and "Delphi Mem." refer respectively to Methode's opening brief and Delphi's objection to the Motion.

Moreover, Delphi has failed to show any cognizable prejudice from the purportedly untimely filing, which Methode made *before* Delphi's own Second Administrative Claims Bar Date.

    3.  Finally, even if Delphi were correct that Methode was required to file a claim by July 15, 2009 for the period ending on June 1, 2009, and that no cause exists to recognize the "tardy" claim, the suggestion that Methode's contract claim should be "expunged" is fundamentally wrong. Just as Methode's patent claims are not time-barred to the extent they arose after June 1, 2009 — which Delphi acknowledges (Delphi Mem. 3) — neither is Methode's breach of contract claim. On its face, Methode's administrative claim form filed on November 5, 2009 expressly seeks damages for "Delphi's premature and improper termination of the parties' contract," which occurred beginning on *August 27, 2009*, well after the initial July 15 bar date. It was Delphi that chose to terminate the Post-Confirmation Supply Agreement only *after* the First Administrative Claims Bar Date, and until then continued to perform under the contract, inflicting no damage on Methode at that time. Accordingly, there is no basis whatsoever to "expunge" Methode's contract claim on timeliness grounds. To the contrary, even if any contract claim for the period ending on June 1, 2009 were deemed untimely, the claims arising from Delphi's termination in August 2009 — which Methode expressly asserted — must be permitted to go forward.

    4.  For these reasons, Delphi's objection to Methode's administrative expense claims as untimely should be overruled. Once that objection is overruled, Methode should be permitted to prosecute its claims in the Michigan courts chosen by Delphi, as Delphi already acknowledges should be the outcome with respect to Methode's patent claims.

# ARGUMENT[2]

5.      Given that Delphi concedes that the Patent Action may proceed in Michigan, does not seriously contest Methode's motion as to forum, and devotes the bulk of the Response to its time-bar objection to Methode's contract claims, this Reply first addresses Delphi's time-bar contentions.

## POINT I

## DELPHI'S OBJECTION TO METHODE'S CLAIMS AS UNTIMELY SHOULD BE OVERRULED.

**A.    Methode's Administrative Expense Claims Were Not Tardily Filed.**

6.      As Methode demonstrated in its opening brief, the Modified Plan provides that administrative expense claims may be "allowed" and "adjudicated" by a court *other than* this Court if the parties so agree. *See* Modified Plan §§ 1.9(a), 9.6(c); Methode Mem. ¶¶ 34-35. And Delphi unequivocally agreed to the resolution of the parties' contract dispute in Michigan state court by entering into a post-confirmation contract with a mandatory forum selection clause, invoking that forum selection clause when initiating the Contract Action there, and continuing aggressively to pursue litigation in Michigan for more than a year, even after the First Administrative Claims Bar Date and the Effective Date of the Modified Plan. In light of that agreement, Delphi has no valid basis to assert that Methode defaulted on its claim by not filing a claim form with this Court by July 15, 2009.

7.      Delphi's only response to Methode's straightforward reading of the Modified Plan is to assert, without explanation, that it "makes no sense." Delphi Mem. 9. But the words of the Modified Plan speak for themselves, and they plainly contemplate the

---

[2] Methode takes issue with certain of the factual representations made in Delphi's brief that go to the merits of the parties' disputes, and reserves all rights to contest Delphi's factual assertions at a later date as necessary.

-3-

"allowance" of administrative claims by agreed-upon courts other than this Court. Delphi could have proposed a Plan that prohibited rather than permitted such an alternative allowance process, but it did not, and it must live with the consequences of that choice. *Cf. In re Fawcett*, 758 F.2d 588, 591 (11th Cir. 1985) ("[T]he debtor as draftsman of the plan has to pay the price if there is any ambiguity about the meaning of the terms of the plan. This comports with the long-standing rule that ambiguous terms of a document are to be interpreted against the party that drafted them.").

8. By its own conduct, Delphi long ago *confirmed* Methode's interpretation of the Modified Plan by continuing to litigate the Contract Action in Michigan for nearly five months after the July 15, 2009 bar date. If Delphi actually believed that Methode was precluded from obtaining relief on its contract claim after the First Administrative Claims Bar Date, there is no reason why, long after the bar date passed, it would have engaged in extensive discovery and discovery-related motion practice and briefed and argued a preliminary injunction motion — without once suggesting that Methode had supposedly forfeited the claim being litigated.[3] Delphi should not now be permitted to renege on the alternative allowance process it has vigorously embraced. *See Greyhound Lines, Inc.* v. *Rogers (In re Eagle Bus Mfg., Inc.)*, 62 F.3d 730, 738 (5th Cir. 1995) ("If Greyhound had in fact believed that these claims were barred it would not have allowed the Claimants to participate in the ADR and would not have negotiated with them for several months after passage of the bar date.").

---

[3] Delphi's blithe attempt to chalk up its post-Effective Date litigation conduct to its own purportedly excusable "inadvertence" trivializes the extent of the proceedings that took place in Michigan before Delphi sought a stay. By December 2009, when Delphi first raised its bankruptcy in seeking to stay the Contract Action, Methode had incurred large legal fees, due in large part to its retention of numerous contract attorneys and an electronic discovery consultant to aid Methode in responding to Delphi's broad discovery demands. *See* Walsh Decl. ¶ 11. These costs inflicted by Delphi's supposed "inadvertence" are very significant to Methode, which is a fraction of Delphi's size.

-4-

9. Indeed, in its September 8, 2009 response to Methode's preliminary injunction motion, Delphi directly stated that, by virtue of this Court's approval of the Modified Plan, there was no reason for any "apprehensions" regarding the "collectibility" of Methode's claims against Delphi. Walsh Decl. Ex. I at 19. Delphi's position — which the Michigan state court accepted in denying Methode's preliminary injunction motion (Walsh Decl. Ex. J at 3) — is squarely at odds with Delphi's newly minted position that Methode had by then already forfeited any collection rights it might have. In short, the parties' conduct long has been consistent with the understanding that Methode was not required to make a filing in this Court by July 15, 2009. Delphi chose to participate vigorously in the litigation of Methode's contract claim, placing burdens on both Methode and the Michigan state court without ever suggesting that Methode's claim had been forfeited. In these circumstances, any argument that Methode is barred from asserting its rights has been effectively waived. *Cf. Huskey* v. *Allen County Farmers Servs., Inc.*, 2006 WL 2570347, at *3 (W.D. Ky. Sept. 5, 2006) (debtor's right to invoke automatic stay to bar complaint was waived where debtor "acted inconsistently with an intention to use the automatic stay as a defense" by "proceed[ing] with the litigation as if there was no defect in the Plaintiffs' Complaint").

10. Furthermore, contrary to Delphi's arguments, the "informal proof of claim" doctrine also supports the conclusion that Methode was not required to file a claim form by July 15, 2009. Delphi's assertion that the doctrine should not be applied absent a filing with the bankruptcy court ignores the particular facts of this case. Here, it was *Delphi* that initiated litigation with Methode in Michigan, and it was *Delphi* that insisted that the parties' forum selection clause *precluded* Methode from bringing its claims anywhere but in Michigan. If there is ever a case in which an "informal proof of claim" may be filed outside the debtor's home

bankruptcy court, it is this one, where the Debtors themselves chose another court to resolve its disputes with the claimant.[4]

**B.    In the Alternative, Methode Should Be Permitted "For Cause" to File a Tardy Proof of Claim.**

11.    In the event this Court concludes that Methode was required to file a claim form by July 15, 2009 to preserve claims for the period preceding June 1, 2009, the Court should nonetheless overrule Delphi's timeliness objection. Section 503(a) of the Bankruptcy Code provides that "[a]n entity . . . may tardily file [a] request [for payment of an administrative expense] if permitted by the court *for cause*." 11 U.S.C. § 503(a) (emphasis added). For all the reasons set forth in Methode's opening brief, there is evident "cause" to permit Methode's filing if it is deemed tardy.

12.    Invoking Bankruptcy Rule 9006(b)(1), which states generally that the court "for cause" may enlarge the time for taking an action upon a showing of "excusable neglect," Delphi attempts to argue that the Rule "equates 'cause' with 'excusable neglect,'" and therefore dictates that the "excusable neglect" standard controls. Delphi Mem. 11. Not so. Delphi's argument contravenes the plain language of section 503(a) of the Bankruptcy Code specifically governing the making of tardy administrative expense requests, which does *not* qualify the Court's power to permit a late filing for "cause" with a requirement of "excusable neglect."

13.    The cases that Delphi cites in support of its contention that the "excusable neglect" standard controls do not justify Delphi's attempted rewrite of section 503(a). Neither *In

---

[4] Delphi's additional assertion that Methode's filings in the Michigan state court did not provide notice of the amount of Methode's counterclaim is also mistaken. In its brief in support of its preliminary injunction motion, Methode specifically noted that "[i]f Delphi is allowed to terminate the contract prematurely," Methode would "lose the un-recouped portion of the $40 million Methode invested in reliance on Delphi's promise to purchase parts." Methode Preliminary Injunction Brief at 12; *see also id.* at 22 (if the preliminary injunction is denied, "[a] division into which Methode invested more than $40 million to satisfy Delphi's requirements would be destroyed").

-6-

*re Dana Corp.*, 2007 WL 1577763 (Bankr. S.D.N.Y. May 30, 2007), nor *In re Northwest Airlines*, 2010 WL 502837 (Bankr. S.D.N.Y. Feb. 9, 2010), provides any analysis supporting the application of Rule 9006(b)'s "excusable neglect" standard.  And *In re PT-1 Communications, Inc.*, 386 B.R. 402 (Bankr. E.D.N.Y. 2007), does not even mention either the "cause" or "excusable neglect" standard in disallowing a late-filed claim.

14. In any event, Methode has satisfied even an "excusable neglect" standard. In its objection, Delphi insists that "where notice is clear, and is received by counsel, the failure to comply is willful conduct that cannot be excused under the 'excusable neglect' standard." Delphi Mem. 14.  This formulation of the standard would eviscerate the concept of "excusable neglect" by establishing a *per se* rule that a late filing will only be allowed where a claimant does not receive clear notice.  Any such rule would clash head-on with the holding of the Supreme Court in *Pioneer* that "the enlargement of prescribed time periods under the 'excusable neglect' standard of Rule 9006(b)(1) *is not* limited to situations where the failure to timely file is due to circumstances beyond the control of the filer."  *Pioneer Inv. Servs. Co.* v. *Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 391 (1993) (emphasis added).

### 1. Methode Acted Reasonably and in Good Faith.

15. As discussed above, the Modified Plan states on its face that Delphi and an administrative claimant may agree to "adjudicate" and "allow" a claim in a court other than this Court.  Moreover, for months after the bar date it now invokes, Delphi's conduct and submissions to the Michigan state court were entirely at odds with its current position that Methode was required to file a claim form with this Court.  This is the antithesis of providing clear notice to Methode that it would be required to file an administrative claim form by July 15, 2009.  Rather, it represents a manipulative and inequitable "lying in the weeds" by Delphi that should not be rewarded.

16.     In the Fifth Circuit's decision in *Greyhound Lines*, which Delphi cannot meaningfully distinguish, the court excused a claimant from filing a claim form before the pre-petition claim bar date where the debtor actively participated in alternative dispute resolution and negotiations with the claimant for months before and after the bar date. *See Greyhound Lines*, 62 F.3d at 739-40. Here, as in *Greyhound Lines*, Delphi actively litigated with Methode, in a forum chosen by Delphi, from 2008 through the First Administrative Claims Bar Date and for months afterward.

17.     Delphi attempts to distinguish *Greyhound Lines* by urging that, unlike the *Greyhound Lines* claimant who participated in court-ordered alternative dispute resolution, Methode "was not forced to pursue litigation" against Delphi. Delphi Mem. 15. But the Forum Selection Clause that Delphi itself has insisted is "mandatory, valid, and enforceable" (Walsh Decl. Ex. N at 6-7; *see also* Walsh Decl. Ex. M at 6-10), forced Methode to bring its claim in Michigan state court. And Methode's counterclaim in the Contract Action was based on the same contract and the same operative facts as the contract claims that Delphi asserted. Methode therefore risked forfeiting its rights if it did not raise its claim in response to Delphi's complaint. *See* Mich. Ct. R. 2.203; *Steward* v. *Casey*, 2003 WL 133083, at *2 (Mich. Ct. App. 2003). Accordingly, in order to ensure that its rights were preserved, and just like the *Greyhound Lines* claimants, Methode *was* "forced to pursue litigation" against Delphi.

### 2. Reorganized Delphi Would Not Be Prejudiced by Methode's Filing.

18.     Delphi also fails to demonstrate that it would suffer any prejudice if Methode's November 5, 2009 claim form were recognized as timely for the pre-June 1, 2009 period. Delphi suggests that prejudice can be found in its exposure to a potential $40.5 million administrative expense. But prejudice means something more than just "a simple dollar-for-

-8-

dollar depletion of assets otherwise available for timely filed claims. Were it otherwise, virtually all late filings would be condemned by [the prejudice] factor; they seek to share, with timely filed claims, in the bankrupt's limited resources." *Manousoff* v. *Macy's Ne., Inc. (In re R.H. Macy & Co.)*, 166 B.R. 799, 802 (S.D.N.Y. 1994); *accord Manus Corp.* v. *NRG Energy Inc. (In re O'Brien Envtl. Energy, Inc.)*, 188 F.3d 116, 126 (3d Cir. 1999).

19. Critically, Delphi's Modified Plan and the orders approving it established at Delphi's request *two* bar dates — one on July 15, 2009 and another 30 days after the Effective Date. Delphi thereby agreed and obviously expected that parties could and would file administrative claims between those two dates. And Methode did just that, filing a claim form on November 5, 2009, *before* the passing of the second bar date. Delphi can hardly assert prejudice from a claim filed before the second bar date when Delphi's own process contemplated that administrative claims of *any* amount could be made during that period. And Methode's claim filing was entirely consistent with the fact that Delphi continued to do business with Methode under the Post-Confirmation Supply Agreement, without purporting to terminate the contract, until well after the first bar date had passed.

20. Delphi argues hollowly that allowing a late-filed claim would risk "opening the floodgates to potential claimants." Delphi Mem. 15. The highly unusual confluence of factors leading to Methode's lack of a filing before July 15, 2009 — litigation initiated by Delphi in a non-bankruptcy forum of its choosing, a mandatory forum selection clause, Delphi's consistent and aggressive litigation of the claims before and after the bar date, and Delphi's continued performance under the contract with no damages to Methode until after the bar date — make it wholly unrealistic to expect that other administrative claimants are in a

position remotely like Methode's. Allowing Methode to file a tardy claim will open the floodgates to nothing.

21. Methode, by contrast, would suffer extensive harm if its claim were not deemed timely. In addition to other injury, Methode would have to write off the extensive costs it incurred as Delphi aggressively pursued litigation in Michigan without ever raising the bar date. Having been lulled into believing — based on Delphi's conduct and the language Delphi placed in its own Modified Plan — that no filing in this Court would be necessary, such an outcome would be patently inequitable.

C.   **In Any Event, Methode's Contract and Patent Claims For the Period Subsequent to June 1, 2009 Are Plainly Not Time-Barred.**

22. Delphi acknowledges that Methode's patent claims for the period beginning June 1, 2009 are *not* time-barred. *See* Delphi Mem. 3. By the same token, Methode's contract claim obviously is not time-barred for the period beginning June 1, 2009, since Methode filed its administrative claim on November 5, 2009, prior to the Second Administrative Claims Bar Date.

23. Methode interposed its January 2009 counterclaim in Michigan in order to preempt Delphi's threat of contract termination. As the Michigan state court recognized, however, "[n]either Delphi's complaint nor Methode's counter complaint prevented the parties from continuing to do business together, and *Delphi continued to purchase parts from Methode*." Walsh Decl. Ex. X at 2 (emphasis added). It was not until Delphi notified Methode in late August 2009 of its intent to terminate the Post-Confirmation Supply Agreement that the parties stopped doing business together under the contract. *See* Walsh Decl. Ex. J at 2 ("[T]he litigation did not preclude the parties from continuing to do business under the agreement. *That state of*

-10-

*affairs has now ended*, as Plaintiff has announced its intention to no longer order parts pursuant to the agreement, in favor of producing the parts on its own.") (emphasis added)).

24. In the wake of Delphi's attempted termination in late August 2009, Methode filed its administrative claim form as "a protective filing" (Walsh Decl. Ex. Z at 2), consistent with this Court's order establishing the Second Administrative Claims Bar Date for the post-June 1, 2009 period. In addition to referencing the counterclaim asserted by Methode on January 9, 2009 for anticipatory repudiation, the form stated explicitly that Methode was asserting a claim, and seeking damages, for Delphi's "termination of the parties' three year contract" when it delivered a notice of termination on *August 27, 2009* that was purportedly effective on *September 10, 2009*. *See* Walsh Decl. Ex. Z at 2. In sum, *Delphi* chose to terminate its contract with Methode only after the First Administrative Claims Bar Date, in late August 2009, even as it chose to continue performance under the contract until that time; and Methode plainly asserted a timely claim for that breach in its claim form submitted to this Court on November 5, 2009.

25. Delphi finds it significant that Methode has yet to amend its counterclaim to assert a breach of contract claim based on the termination that occurred in August and September of 2009. *See* Delphi Mem. 18. It is not. Putting aside that the Contract Action has been stayed, Delphi overlooks the fact that Michigan has liberal rules permitting parties to amend claims to conform to the proof. *See* Mich. Ct. R. 2.118. Other than the stay of the Contract Action, from which Methode seeks relief from this Court, nothing prevents Methode from amending its counterclaim to allege a breach of contract based on Delphi's August 2009 contract termination. (And of course, if this Court declines to permit Methode to continue

-11-

pursuing its contract claim in Michigan, nothing would prevent Methode from pursuing its claim in this Court based on Delphi's contract termination.)

26.  Accordingly, while Methode submits that it was not required to file an administrative claim in this Court before July 15, 2009, Methode at a minimum unquestionably filed a timely claim based on the termination of the Post-Confirmation Supply Agreement. There is absolutely no basis for Delphi's assertion that Methode is time-barred from recovering damages stemming from Delphi's August 2009 termination, which Methode contends was in breach of the Post-Confirmation Supply Agreement.  To the contrary, while Delphi disputes the merits of Methode's claim for breach arising from Delphi's purported termination, that claim is no more time-barred than is the "cancellation claim" that Methode submitted to Delphi shortly before it made its protective administrative claim filing, which Delphi itself acknowledges is not time-barred (*see* Delphi Mem. 17-19).[5]

### POINT II

### LITIGATION OF DELPHI'S CLAIMS SHOULD BE PERMITTED TO CONTINUE IN THE MICHIGAN COURTS.

**A.    The Plan Modification Order Does Not Enjoin Litigation of Methode's Claims in the Michigan Courts.**

27.  As demonstrated above, Delphi has no meaningful answer to the language in its Modified Plan that permits administrative expense claims to be "adjudicated" and "allowed" in non-bankruptcy forums when the parties agree.  Consequently, there is no basis for Delphi's assertion that the Plan Injunction requires Methode's claims to be "resolved by the

---

[5] The Court's bench ruling cited by Delphi denying the motion of Plymouth Rubber Company, LLC ("Plymouth Rubber") to file a tardy administrative expense claim has no bearing here, as Methode's situation differs significantly from Plymouth Rubber's in numerous respects.  Among other things, whereas Delphi terminated its contract with Plymouth Rubber in 2008 (*see* Plymouth Rubber Mot. [D.I. 18714] at 10), Delphi continued to do business with Methode, and did not terminate its supply contract with Methode, until *after* the First Administrative Claims Bar Date, and continued to litigate Methode's contract claim thereafter even beyond the Effective Date.

-12-

Bankruptcy Court using the Claims Objection Procedures," Walsh Decl. Ex. V at 11, where the injunction is expressly subject to exceptions as "specifically provided in the Modified Plan," Plan Modification Order ¶ 22. Indeed, Delphi concedes that the Patent Action should proceed in Michigan despite the Plan Injunction.

28. Delphi spills much ink arguing that the Forum Selection Clause is unenforceable because Methode's contract claim is a core proceeding. Notably, however, Delphi fails to cite a single case involving a forum selection clause contained in a *post*-petition contract. The cases on which Delphi relies — *Brown* v. *Mortgage Electronic Registration Systems, Inc. (In re Stephanie Brown)*, 354 B.R. 591 (D.R.I. 2006), *Statutory Committee of Unsecured Creditors* v. *Motorola, Inc. (In re Iridium Operating LLC)*, 285 B.R. 822 (S.D.N.Y. 2002), and *N. Parent, Inc.* v. *Cotter & Co. (In re N. Parent, Inc.)*, 221 B.R. 609 (Bankr. D. Mass. 1998) — all involved *pre*-petition contracts. And one case cited by Delphi, *Breeden* v. *The Aegis Consumer Funding Group Inc. (In re Bennett Funding Group, Inc.)*, 259 B.R. 243 (N.D.N.Y. 2001), actually held that the case should be transferred pursuant to a forum selection clause *notwithstanding* the policy of centralizing claims administration.

29. All that aside, Delphi's argument about the enforceability of the Forum Selection Clause really has no relevance here. The point here is not that the Forum Selection Clause is enforceable against Delphi (although it is), but that the Forum Selection Clause, along with Delphi's invocation of that clause in multiple proceedings, strongly evidences Delphi's consent to adjudicate the Contract Action in Michigan state court, thus bringing Methode's contract claim within section 1.9(a) of the Modified Plan. The Forum Selection Clause provides that Delphi "*agrees* that the forum and venue for any legal or equitable action" arising out of the Post-Confirmation Supply Agreement "will lie in the appropriate federal or state courts in the

-13-

State of Michigan." Walsh Decl. Ex. B ¶ 26 (emphasis added). And Delphi itself has argued that the Forum Selection Clause is "mandatory, valid, and enforceable." *See, e.g.*, Walsh Decl. Ex. N at 6-7; *see also* Walsh Decl. Ex. M at 6-10. Regardless of whether Methode's claim is core or non-core, Delphi plainly agreed to adjudicate it in Michigan, and the Plan Injunction therefore does not require Methode's claim to be "resolved by the Bankruptcy Court using the Claims Objection Procedures."

**B.    Methode Should Be Permitted to Litigate Its Contract Claims in Michigan.**

30.    As Methode showed in its opening brief, requiring the Contract Action to be litigated in this Court as opposed to the Michigan state court would waste judicial resources, unfairly prejudice Methode, and burden this Court with an unfamiliar case that raises issues purely of Michigan state law and has virtually no effect on the administration of Delphi's estate. Accordingly, even if the Plan Injunction were to apply to Methode's claim, there are ample grounds for this Court both to lift the Plan Injunction and to exercise its discretion under 28 U.S.C. § 1334(c)(1) to abstain from hearing the claim.

31.    Delphi argues at most that discretionary abstention is not warranted because this Court is *capable* of hearing the Contract Action. *See* Delphi Mem. 26. Delphi's argument once again misses the point. Regardless of whether this Court has jurisdiction to hear the dispute, there is every reason for this Court not to exercise that jurisdiction. The Michigan court that has been handling the Contract Action for over a year is familiar with the facts and legal issues, can accommodate both parties' request for a jury trial and, as Delphi itself has asserted, is closest to the location of the parties, witnesses, and potential evidence. *See* Walsh Decl. Ex. M at 13-15.

-14-

# CONCLUSION

32. For the reasons set forth herein and in Methode's opening brief and supporting documents, the Court should grant Methode's motion, permit litigation of Methode's claims in the Michigan courts, and overrule the timeliness objection of the Reorganized Debtors to Methode's administrative claims.

Dated: May 19, 2010
New York, New York

**WACHTELL, LIPTON, ROSEN & KATZ**

/s/ Douglas K. Mayer
Douglas K. Mayer
Emil A. Kleinhaus
Alexander B. Lees
51 West 52nd Street
New York, New York  10019
Telephone:  (212) 403-1000
Facsimile:  (212) 403-2000

**LOCKE LORD BISSELL & LIDDELL LLP**
Ann Marie Walsh
111 South Wacker Drive
Chicago, Illinois  60606
Telephone:  (312) 443-0654
Facsimile:  (312) 896-6654

*Attorneys for Methode Electronics, Inc.*