Hearing Date and Time: May 20, 2010 at 10:00 a.m.

Thomas M. Kennedy (TK-0993)
Susan M. Jennik (SJ-4607)
KENNEDY, JENNIK & MURRAY, P.C.
113 University Place
New York, NY 10003
(212) 358-1500

Attorneys for International Union of Electronic,
Electrical, Salaried, Machine and Furniture Workers-
Communications Workers of America

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------
In re:                                              :     Chapter 11
                                                    :
DPH Holdings Corp., et al.,                         :     Case No. 05-44481 (RDD)
                                                    :
                              Reorganized Debtors.  :     (Jointly Administered)
------------------------------------------------------------

### IUE-CWA RESPONSE TO REORGANIZED DEBTORS'
### OBJECTION TO SUBSTANTIAL CONTRIBUTION APPLICATION

The International Union of Electronic, Electrical, Salaried, Machine and Furniture Workers-Communications Workers of America ("IUE-CWA"), submits this Response to the Objection by DPH Holdings Corp ("DPH") filed on May 13, 2010, ("the Objection") (Docket No. 20064), to the IUE-CWA substantial contribution application (Docket Nos. 19113 and 19114).

### INTRODUCTION

DPH has objected on a variety of baseless grounds to the IUE-CWA's request, under § 503(b)(3)(D) and (b)(4) of the Bankruptcy Code, for attorneys' fees and expenses related to its substantial contribution to this case. DPH's waiver argument is plainly refuted by the documents on which it rests. The argument that IUE-CWA cannot recover for substantial contributions to

the estate in negotiating the EPCA and modified EPCA because an alternative plan was ultimately approved ignores the real value to the estate that accrued from the IUE-CWA's efforts to thwart an excessive management compensation scheme from being included in either EPCA plan or the ultimate plan. The U.S. Trustee supported the IUE-CWA request because:

> Among other things, the IUE-CWA objected to the Debtors' proposed Key Employment Compensation Plan (the "KECP") and the management compensation plan set forth in the Original Plan. As a result of the IUE-CWA's objection to the Original Plan, the Court reduced the bonus component of the compensation plan in the Original Plan from $87 million to $16.5 million, which represents a reduction of $70.50 million. *See* January 22, 2008 Transcript, at 180, lines 9-15.

(Docket No. 19860, at 29). DPH has said nothing which undercuts the Trustee's conclusion.

DPH also randomly alleges that hundreds of the time entries for which IUE-CWA seeks payment are not compensable. These allegations are inconsistent with the findings of the U.S. Trustee and the actions of DPH with regard to other substantial contribution applicants. After a careful review, under the reasonableness standard of 11 U.S.C. § 330 and the <u>United States Trustee Guidelines</u>, the U.S. Trustee concluded that the fees sought by the IUE-CWA "are reasonable and the services were beneficial to the estate and the expenses sought were actual and necessary". (Docket No. 19860 at 30). DPH has not challenged the submissions of other substantial contribution applicants that sought fees for activities similar to the IUE-CWA.

IUE-CWA should also be awarded attorneys' fees and expenses in responding to this baseless objection.

2

## ARGUMENT

I.  **IUE-CWA NEVER WAIVED ITS SUBSTANTIAL CONTRIBUTION CLAIM; THE IUE-CWA MOU WITH DELPHI AND GENERAL MOTORS SPECIFICALLY RECOGNIZES THAT IUE-CWA MADE A SUBSTANTIAL CONTRIBUTION TO DELPHI'S REORGANIZATION**

It is telling that the Objection asserts as its first point that the IUE-CWA "waived" its right to make a substantial contribution application as part of the settlement reached in its § 1113/1114 negotiations with Delphi Corporation ("Delphi"). The waiver argument is specious on its face. The alleged "waiver" asserted by DPH states, in the Memorandum of Understanding between the Debtors, the IUE-CWA, and General Motors Corporation ("the MOU"), that IUE-CWA waives and releases any and all claims "arising directly or indirectly from or in any way related to <u>any obligations under the collective bargaining agreements</u>". (Emphasis added) (Objection, ¶ 25; Docket No 9106, Ex. 1 at Section H.3). The plain language of this waiver relates solely to obligations arising under or related to the collective bargaining agreements. The IUE-CWA substantial contribution application does not arise under the collective bargaining agreements and is not related to Delphi's obligations under its collective bargaining agreements. A motion for recovery of reasonable compensation for professional services based on a party's substantial contribution to a bankruptcy case arises solely under § 503(b)(3)(D) and (b)(4) of the Bankruptcy Code. The DPH waiver argument is utterly baseless.

In fact, this MOU, which DPH argues includes a waiver by IUE-CWA of its right to make this application, specifically contemplates that the IUE-CWA will be entitled to file a substantial contribution motion with this Court based on the MOU's substantial contribution to the Debtors' plan of reorganization:

> The Parties also acknowledge that (i) <u>the consideration provided by IUE-CWA pursuant to this Agreement and all attachments to this Agreement constitutes a substantial contribution to Delphi's plan of reorganization,</u> (ii) <u>this contribution is necessary to the</u>

3

<u>success of Delphi's plan of reorganization, and (iii) IUE- CWA would not have made this contribution without obtaining the terms and releases provided for herein.</u> The Parties further acknowledge that nothing in the preceding sentence shall give rise to or entitle IUE-CWA to seek or be allowed any claim against or consideration from any entity, including Delphi, other than as specifically approved by the Bankruptcy Court.

(Docket No. 9106, Ex. 1 at Section G. 5) (Emphasis added). The alleged waiver objection does not survive the MOU's specific recognition that the IUE-CWA had made a substantial contribution to the successful reorganization of Delphi.

The claim that the IUE-CWA's substantial contribution motion would constitute an impermissible modification of the collective bargaining agreement ("CBA") and MOU is equally specious. The MOU and CBA will remain the same whether or not this motion is granted or denied. In fact, the CBA has been assumed by the new Delphi and not DPH. The CBA will not be impacted in the slightest by this motion. Further, since the MOU specifically contemplated that IUE-CWA would make a substantial contribution motion, this motion can hardly constitute an impermissible modification of that agreement.

The waiver and modification arguments are so lacking in merit that they demonstrate that the DPH has no legitimate objection to the IUE-CWA substantial contribution motion.

## II. THE SUBSTANTIAL CONTRIBUTION OF THE IUE-CWA TO THE DEBTORS' SUCCESSFUL REORGANIZATION IS NOT DIMINISHED BY THE DEBTORS' NEGOTIATION OF SUCCESSOR PLANS

DPH argues that the extraordinary contributions made by IUE-CWA in reducing its proposed management compensation bonus plan are not compensable because the original EPCA and the Amended EPCA were not consummated and therefore "no demonstrable benefit was conferred on the Debtors' estates as a result of the IUE-CWA's prosecution of its objections to those matters". (Objection, ¶ 28). This argument fails for several reasons.

4

Since Debtors proposed the grossly inflated management compensation plans in the first place that would have overcharged the estate by some $70 million dollars, it is hard to credit their present concern for the estate. The Unsecured Creditors' Committee ("the Committee"), whatever its vigor in other areas, was largely complicit in allowing Delphi management to propose plan after plan that would grossly overcompensate management as compared to other stakeholders in this litigation.[1] It was only the vigilance of the IUE-CWA (and other unions) that kept these management compensation plans from swallowing the estate entirely.

While it is true that the ultimate Plan of Reorganization did not contain the management compensation plans that were contested by the IUE-CWA, it is not clear, and should not be presumed, that the unusually large reduction in the proposed emergence bonus plan ordered by this Court in response to the objection of the IUE-CWA did not influence the future discussions by Delphi with the ultimate purchasers. Simply put, had the originally proposed compensation plan sailed through without reduction, Delphi management would have had such a large potential recovery that they may well have held out for some level of compensation as part of any subsequent Plan.

IUE-CWA also disputes the basic notion that an otherwise appropriate substantial contribution motion must be denied because subsequent events ultimately drive a different plan than the Plan proposed at the time of that contribution. A rule that makes professional compensation in Chapter 11 cases turn on which plan is ultimately approved could have an interesting impact on other professionals in this case. For instance, the Seventh and Final

---

[1] It is simply unrealistic to expect bankruptcy counsel and members of a Committee to take a tough position on management compensation when they know their own legal fees are subject to scrutiny and, as a practical matter, the bankruptcy bar and the corporate representatives on a Committee depend on maintaining friendly relationships with management. Union counsel, in contrast, are free of such constraints and can and do vigorously point out when the emperor has no clothes and the management fees are far too high.

5

Application of Skadden, Arps, Slate, Meagher & Flom LLP for attorneys' fees ("the Skadden Application") sought compensation under § 330 of some $92 million. (Docket No. 19256). The Skadden Application demonstrates that a very high proportion of these fees were expended in connection with the EPCA and the Amended EPCA. Should Skadden now forfeit its fees for that activity since those plans failed and were ultimately replaced by a different plan? The Committee counsel billed some $19 million and much of its time was spent in connection with the failed EPCA and Amended EPCA. (Docket No. 19212). Should those monies be returned to the estate? It is unlikely that Debtors' counsel and Committee counsel would agree to this suggestion since they undoubtedly believe that if the services were reasonably necessary when they were provided, the compensation they earned should be paid.

It will come as no surprise that the IUE-CWA also believes that the compensability of its substantial contributions to this estate should be judged by the circumstances applicable when the contributions were made. The U.S. Trustee also concluded that:

> With respect to the 1113 and 1114 issues, the IUE-CWA played a lead role in litigating the 1113 and 1114 motions and in negotiating the MOU between the IUE-CWA, GM and the Debtors regarding modification of collective bargaining agreements and retiree benefits approved by the Court on August 16, 2007. *See* ECF Doc. No. 9106. The IUE-CWA supported the special attrition program proposed by the Debtors which reduced IUE-CWA represented employees from 8,500 to 2,000. *See* Application, at 2 and 9, and ECF Doc. No. 3038, ¶ 11. Through the IUE-CWA's efforts, the Debtors were able to meet the goal of their Transformation Plan to obtain "significant labor and retiree cost savings and other modifications from the unions representing the employees of the Debtors." *See* Affidavit of Robert S. Miller, at 71, ¶ 142, ECF Doc. No. 7. The IUE-CWA also objected to the commitment fees set forth in the EPCA and the lock up agreement in the Amended EPCA. *See* Application, at 10-11. Both provisions were modified and the IUE-CWA withdrew its objections. *Id.* The IUE-CWA has met its burden of proof under Sections 5103(b)(3) and (4). Its efforts resulted in a substantial benefit to the estate in the form of reduced emergence bonuses for executives, and most importantly to the Debtors, significant reductions in labor costs.

(Docket No. 19860 at 29-30).

6

DPH cites *In re Granite Partners LP*, 213 B.R.440 (Bankr. S.D.N.Y. 1997) for the proposition that the substantial contribution test under § 503(b)(4) is applied in hindsight in measuring the actual benefit to the estate. As this Court pointed out in *In re Bayou Group*, No. 06-22306 (RDD), 2010 WL 1416776, at *12, n. 18 (S.D.N.Y. April 5, 2010), the difference in evaluating professional fees under § 503(b)(4) and § 330 "really applies to whether there has been a substantial contribution" and "Once the movant has established a substantial contribution, the reasonableness of the professional's services in making that contribution should be measured by looking at what a reasonable professional would have done to achieve a goal under the circumstances".

The actual holdings of *Granite Partners* in denying the proposed substantial contribution recovery are easily distinguishable from the IUE-CWA application. The court first concluded that for a party which partially loses an automatic stay litigation to seek recovery of its attorney fees in resisting the automatic stay order is "like maiming a person, losing the ensuing lawsuit, and then demanding kudos for clarifying the law of battery". 213 B.R. at 448. The court next held that nothing the substantial contribution applicants did or said facilitated the successful reorganization or added value to the estate and that a substantial contribution award cannot be given for unsuccessfully defending a position their clients were not entitled to take under applicable law. Finally, the court held that services a firm renders "solely to its clients for their exclusive benefit" are not compensable as a substantial contribution to the estate. *Id.* at 451-52.

The *Granite Partners* rulings do not apply to IUE-CWA. First, the IUE-CWA is not in the position of a litigant seeking recovery of fees based on unsuccessful litigation against the estate. Second, the IUE-CWA did add substantial value to the estate by taking a leading role in the § 1113/1114 litigation that was an absolute necessity before the estate could be reorganized

7

and by aggressively limiting management compensation both in the ongoing KECP motions and the management bonus litigation. Third, in each matter for which IUE-CWA seeks recovery of its attorneys' fees, its position was substantially upheld by this Court or a significant settlement was achieved that benefited the estate. Finally, IUE-CWA was a vigorous advocate not only for its own interests but for union members generally, for the communities in which they reside and for the estate as a whole. The IUE-CWA achievements were not solely, or even significantly, for the IUE-CWA as an institution but rather for the benefit of other stakeholders impacted by this estate.

In *In re Bayou*, 2010 WL 1416776, this Court granted a substantial contribution motion over the objection of the U.S. Trustee because the movant Unofficial Creditors' Committee demonstrated that it had truly enhanced the administration of the Chapter 11 case. This Court characterized "the majority of cases allowing creditors' substantial contribution claims under Section 503(b)(3)(D) and (b)(4)" as having found that "the creditor played a leadership role that normally would be expected of an estate-compensated professional but was not so performed" or "must have, consistent with pre-Bankruptcy Code practice, involved a creditor who actively facilitated the negotiation and successful confirmation of the Chapter 11 Plan". *Id.* at *9.

The IUE-CWA played a leadership role in the areas for which it seeks reimbursement that the estate compensated professionals did not (or could not) perform and which facilitated the successful confirmation of the Chapter 11 Plan. The IUE-CWA played a leadership role in policing management compensation plans throughout this proceeding. The eventual changes forced by the IUE-CWA objections in the KECP and management bonus plans were important contributions to the ongoing estate and the ultimate plan that was confirmed. The IUE-CWA

8

leadership role in the § 1113/1114 proceedings were a lynch pin of the Debtors' successful reorganization.

### III. ADDING AND SUBTRACTING THE FINANCIAL ADVISOR FEES TO THE IUE-CWA APPLICATION WOULD BE A ZERO SUM GAME THAT DOES NOT LIMIT THIS SUBSTANTIAL CONTRIBUTION APPLICATION

DPH's last throwaway argument alleges that any amount of fees IUE-CWA seeks should "be offset by payments previously made by the Debtors to the IUE-CWA's financial advisors." (Objection, ¶ 32) because the UAW and IUE-CWA Financial Advisor Payment Order ("Payment Order") provides that "any Advisor Fees paid by the Debtor shall be applied against and considered part of any distribution in respect of any resolution of any claims the Unions may have (without diminishing any claims employees have) against the Debtors in these Chapter 11 cases, whether by settlement agreement or judgment of this Court." The Payment Order does not bar IUE-CWA from seeking reimbursement of the fees that were required to be paid to its financial advisor – IUE-CWA could do so – but the quoted language ensured that any advisor fees would be reduced from any such recovery. Debtors were sensibly limiting their obligations to pay only once for the financial advice provided to the IUE-CWA. DPH is now twisting this language to allow it to offset its obligation for entirely unrelated professional fees for the services of the IUE-CWA attorneys.

This interpretation is also inconsistent with the MOU provisions acknowledging that the IUE-CWA was entitled to make a substantial contribution motion. It is far more reasonable to interpret the Payment Order language as ensuring that any such substantial contribution motion did not seek to recover fees that the Delphi estate had already incurred. This last minute post hoc rationalization of the Payment Order should be denied.

9

IV.  **IUE-CWA HAS SHOWN THAT THE SERVICES FOR WHICH IT SEEKS COMPENSATION WERE REASONABLE AND NECESSARY**

DPH seeks to exclude $864,085.00 from the compensation sought on the basis that the time entries include "noncompensable services such as reviewing the docket, hearing, document review and client conversations". (Objection, ¶ 31).  DPH also asserts that IUE-CWA

> cannot recover fees relating to case administration, monitoring, and education because such services are performed for the client and not the estate. … Examples of noncompensable services include attending hearings, conducting discovery, reviewing papers, and communicating with clients.

(Objection, ¶ 20) (citations omitted).

It is difficult to imagine what legal services would be considered compensable by DPH if § 503(b)(3) and (4) excluded time reasonably spent attending hearings which benefitted the estate, conducting discovery in connection with pending matters that benefitted the estate, reviewing necessary documents and communicating with clients about matters intended to benefit the estate.  The U.S. Trustee has not objected to IUE-CWA's request for compensation for these services. (Docket No. 19860, at 3, 28-30).  The U.S. Trustee reviewed the IUE-CWA counsel's time and expense records under the reasonableness standard of 11 U.S.C. § 330 and the United States Trustee Guidelines and concluded that "[b]ased on this review, it appears that the fees sought are reasonable and the services were beneficial to the estate and the expenses sought were actual and necessary." (*Id.* at 30). And, DPH has not objected to compensation for the same kinds of services in applications filed by others.  (See, *e.g.,* Application of Senior Noteholders, Docket No. 19091, ¶¶ 30, 32, 33-38, 44; Application of C.R./Elliott Noteholders, Docket No. 19115, ¶¶ 15-16; Application of the Trade Committee, Docket No. 19116, ¶¶ 11, 30).

*In re Granite Partners, L.P.,* 213 B.R. 440, 453-54, cited by DPH, does not stand for the absurd proposition put forth by DPH: that discovery and attendance at hearings cannot be

10

compensable services. Rather, *Granite Partners* merely holds that services "rendered solely to its clients for their exclusive benefit" are not compensable pursuant to § 503(b)(3) and (4). 213 B.R. at 453. Here, IUE-CWA seeks compensation for services that are not directly related to its members, such as the KECP and management bonus issues, or were broadly relevant to the successful administration of this case, such as the § 1113/1114 hearings and negotiation. The work performed by IUE-CWA counsel opposing the Debtors' proposed KECP plans benefitted all creditors by limiting the amount of money paid to managers during the case and by establishing limits on the emergence bonuses which would be permitted by this Court. (January 22, 2008 Transcript at 180:9-15).

Of a total of 367 time entries which DPH asserts are noncompensable, 223 are challenged because they related to discovery or document review and 72 entries are challenged because they related to attendance at or preparation for a hearing. A total of 103 entries are opposed as "Scope (duration, subject)", a category unexplained by DPH. However most of those disputed as "Scope" entries, are also challenged in another category. A total of 12 entries are opposed as "Client Communications". (Debtor' Ex. B at 17). Review of the entries makes it apparent that DPH is reaching in order to manufacture objections to the IUE-CWA application. For example, DPH objects to 39 entries because they relate to "Travel", including the following, in Ex. B at 5:

| Date | Timekeeper | Service Provided | Time Billed |
|---|---|---|---|
| 7/6/2007 | TK | Prepare revised counterteroffer; Present to Delphi; Conferences with leadership on proposals; Conferences re scheduling, travel. | 5.30 |
| 7/5/2007 | TK | Travel to Detroit; Conferences leadership on counterproposals; Revise counterproposals; Conferences with Delphi reps and presentation of proposals; Meeting with leadership on strategy re: proposals. | 8.00 |

11

Debtors cite no authority for its position that "travel" is a noncompensable service where work is also being performed.[2] Indeed, Debtors do not object to paying for travel time for the Trade Committee counsel. (Docket No. 19119 at 3 and 7).

A total of 17 entries are challenged for "Insufficient Detail", including an entry that was made on October 10, 2006 by Mr. Kennedy for 2.40 hours, stating: "Prep for and attend conference re: Delphi deal structure." (Debtors' Ex. B at 8). It is difficult to see how that entry was in any way insufficient.

A total of 9 entries are alleged to be "Other Administration". An example of an "administrative" entry to which the Debtors object was made on April 26, 2006 by Larry Magarik, Esq. for 1.50 hours, stating: "Accumulated calls (7), emails (32); review Brief." (Debtors' Ex. B at 13). Telephone calls, review of email and review of papers are hardly administrative work which is noncompensable. The reality is that substantial attorney time must be spent in this kind of case by key attorneys in reviewing emails about the pending motions in order to keep up with the events in the case.

The U.S. Trustee, responsible for ensuring compliance with its guidelines regarding professional fees did not find any inadequacies in the IUE-CWA application. The Debtors have not demonstrated that any of the time entries were improper or insufficient. All of the services for which IUE-CWA seeks to be compensated were necessary and reasonable.

---

[2] The Kennedy Firm does not bill its clients for travel time unless work is also being performed, typically review of documents relevant to the meeting or hearing for which the travel occurred. On July 5, 2007, Mr. Kennedy flew from New York at 8:40 a.m. and arrived in Detroit at 10:45 a.m. for meetings with top Delphi and union management that consumed the entire day and into the evening. More than 8 hours was spent in these negotiations apart from the travel time during which work was also performed in preparation for those meetings.

## CONCLUSION

For the foregoing reasons, the application by IUE-CWA for $1,238,304.85 in attorneys' fees and expenses under § 503(b)(3)(D) and (b)(4) of the Bankruptcy Code should be granted. Given the baseless nature of these objections, the IUE-CWA should also be compensated for the time required to respond.

Dated: May 19, 2010
       New York, NY

                        Respectfully submitted,

                        KENNEDY, JENNIK & MURRAY, P.C.
                        Attorneys for International Union of Electronic,
                        Electrical, Salaried, Machine and Furniture
                        Workers-Communications Workers of America

                        By: _____
                            Thomas M. Kennedy (TK-0993)
                            Susan M. Jennik (SJ-4607)
                        113 University Place
                        New York, NY 10003
                        Tel. (212) 358-1500