**Hearing Date And Time:  June 30, 2010 at 10:00 a.m. (prevailing Eastern time)**
**Response Date And Time:  June 23, 2010 at 4:00 p.m. (prevailing Eastern time)**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
155 North Wacker Drive
Chicago, Illinois 60606
John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Kayalyn A. Marafioti

Attorneys for DPH Holdings Corp., et al.,
   Reorganized Debtors

DPH Holdings Corp. Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

DPH Holdings Corp. Legal Information Website:
http://www.dphholdingsdocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x | : | |
| In re | : | Chapter 11 |
| | : | |
| DPH HOLDINGS CORP., et al., | : | Case No. 05-44481 (RDD) |
| | : | |
| | : | (Jointly Administered) |
| Reorganized Debtors. | : | |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x | | |

REORGANIZED DEBTORS' MOTION FOR AN ORDER TO ENFORCE
MODIFIED PLAN AND MODIFICATION APPROVAL ORDER
<u>INJUNCTION AGAINST LEIGH OCHOA</u>

DPH Holdings Corp. ("DPH Holdings") and certain of its affiliated reorganized debtors in the above-captioned cases (together with DPH Holdings, the "Reorganized Debtors") hereby submit this Motion For An Order To Enforce Plan And Modification Approval Order Injunction Against Leigh Ochoa (the "Motion"), and respectfully represent as follows:

Preliminary Statement

1.  The Reorganized Debtors are bringing this Motion to enforce the injunction contained in the Modified Plan[1] and Modification Approval Order and enjoin the litigation associated with the action commenced by Leigh Ochoa against the Reorganized Debtors on November 6, 2009 (the "Nonbankruptcy Complaint")[2] in the United States District Court for the Eastern District of Michigan, Northern Division, Case No. 09-14383-TLL (the "Michigan District Court") asserting that Delphi Corporation improperly terminated Ms. Ochoa to interfere with her alleged entitlement to long term disability benefits (the "Michigan Action"). (Nonbankruptcy Complaint ¶ 8.)

2.  In the Michigan Action, Ms. Ochoa asserts damages resulting from the termination of her employment with Delphi Corporation, which occurred on or about August 24, 2009. Because Ms. Ochoa's claims are based on alleged pre-Effective Date actions committed by Delphi Corporation, the injunction contained in paragraph 22 of this Court's Modification Approval Order and in section 11.14 of the Modified Plan (the "Plan Injunction") stays Ms. Ochoa's cause of action against the Reorganized Debtors. Moreover, Ms. Ochoa has not filed a timely administrative expense claim, and accordingly any such claims would be automatically disallowed pursuant to paragraph 47 of the Modification Approval Order.

---

[1] Capitalized terms not defined in this Preliminary Statement are defined later in this Motion.
[2] A copy of the Nonbankruptcy Complaint is attached hereto as Exhibit A-1. On November 19, 2009, Ms. Ochoa filed an amended complaint (the "Amended Nonbankruptcy Complaint") naming DPH Holdings Corp. as the defendant. A copy of the Amended Nonbankruptcy Complaint is attached hereto as Exhibit A-2.

2

    3.  Ms. Ochoa has refused to dismiss or stay the Michigan Action despite being served with the Notice of Effective Date and being notified that continuing the Michigan Action violates the Plan Injunction.  The Reorganized Debtors have a profound interest in making sure that unambiguous provisions of the Modified Plan and Modification Approval Order are enforced and therefore request that this Court enjoin Ms. Ochoa from proceeding with the Michigan Action.

Background

    4.  On October 8 and 14, 2005, Delphi Corporation ("Delphi") and certain of its affiliates (together with Delphi, the "Debtors"), predecessors of the Reorganized Debtors, filed voluntary petitions in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as then amended (the "Bankruptcy Code").

    5.  On December 10, 2007, the Debtors filed their first amended joint plan of reorganization (Docket No. 11386) (the "Plan") and related disclosure statement (Docket No. 11388).  On January 25, 2008, the Court entered an order (Docket No. 12359) (the "Confirmation Order") confirming the Plan (as modified) (the "Confirmed Plan"), and the Confirmation Order became final on February 4, 2008.

    6.  On October 3, 2008, the Debtors filed a motion under 11 U.S.C. § 1127 for an order approving (i) certain modifications to the Confirmed Plan and related disclosure statement and (ii) related procedures for re-soliciting votes on the Confirmed Plan, as modified (Docket No. 14310) (the "Plan Modification Motion").  On June 1, 2009, the Debtors filed a supplement to the Plan Modification Motion (the "Motion Supplement"), which sought approval of (i) certain modifications to the Confirmed Plan (the "Modified Plan"), (ii) supplemental disclosure, and (iii) procedures for re-soliciting votes on the Modified Plan.

3

A.   Ms. Ochoa's Postpetition Claim

7.   On or about August 24, 2009, Ms. Ochoa was terminated from her employment with Delphi in connection with a reduction in force program. Coincidentally, at the time of her termination, Ms. Ochoa was on an approved leave of absence. Ms. Ochoa's postpetition claims arose prior to the Debtors' emergence from chapter 11 on October 6, 2009 and therefore are subject to the applicable bar dates set for all administrative expense claims and subject to the various provisions of the Modified Plan and Modification Approval Order, including the discharge and Plan Injunction. As described in more detail below, the bar dates established by this Court's orders for asserting administrative expense claims were July 15, 2009[3] for claims arising through June 1, 2009 and November 5, 2009 for claims arising through October 6, 2009.[4] (See Modification Procedures Order ¶ 38; Modification Approval Order ¶ 47.) Despite these bar dates, Ms. Ochoa filed the Michigan Action on November 6, 2009 without either filing an administrative expense claim in these chapter 11 cases or seeking leave of this Court to lift the Plan Injunction. She did so despite the fact that she and the lawyer she retained to file the Michigan Action collectively received some 48 notices of these bar date procedures.

---

[3]   The July 15, 2009 bar date was established pursuant to paragraph 38 of the Order (A)(I) Approving Modifications To Debtors' First Amended Plan Of Reorganization (As Modified) And Related Disclosures And Voting Procedures And (II) Setting Final Hearing Date To Consider Modifications To Confirmed First Amended Plan Of Reorganization And (B) Setting Administrative Expense Claims Bar Date And Alternative Transaction Hearing Date, entered by this Court on June 16, 2009 (Docket No. 17032) (the "Modification Procedures Order"). On July 15, 2009, this Court entered the Stipulation And Agreed Order Modifying Paragraph 38 Of Modification Procedures Order Establishing Administrative Expense Bar Date (Docket No. 18259) to provide that paragraph 38 of the Modification Procedures Order should be amended to require parties to submit an Administrative Expense Claim Form for Claims for the period from the commencement of these cases through May 31, 2009 rather than through June 1, 2009.

[4]   The November 5, 2009 bar date was established pursuant to paragraph 47 of the Order Approving Modifications Under 11 U.S.C. § 1127(b) to (I) First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-In-Possession, as Modified and (II) Confirmation Order (Docket No. 12359) (Docket No. 18707) (the "Modification Approval Order").

4

B.      The Bar Dates And Deadlines For Asserting Administrative Claims

   8.      Bar Date For § 503(b) Claims Arising Through June 1, 2009.  On June 16, 2009, this Court entered the Modification Procedures Order which, among other things, authorized the Debtors to commence solicitation of votes on their proposed modifications to their first amended joint plan of reorganization (the "Proposed Modifications"), established July 15, 2009 as the deadline for filing a proof of administrative expense for the purpose of asserting an administrative expense request against any of the Debtors under 11 U.S.C. § 503(b) for the period from the commencement of these chapter 11 cases through May 31, 2009 (the "First Administrative Claim Bar Date"), and included a form to be used to submit an administrative expense claim (the "Administrative Claim Form").[5]

   9.      On or before June 20, 2009, the Debtors, through KCC, the claims and noticing agent in these chapter 11 cases, served Ms. Ochoa with two copies of the Notice Of Bar Date For Filing Proofs Of Administrative Expense (the "Notice"), by first class mail at each of the addresses below:

| Leigh Ochoa<br>3390 W Willard Rd<br>Birch Run, MI 48415 | Leigh A Ochoa<br>3390 W Willard Rd<br>Birch Run, MI 48415 |
|---|---|

See Affidavit Of Service Of Evan Gershbein For Solicitation Materials Served On Or Before June 20, 2009, dated June 23, 2009 (Docket No. 17267), the relevant portions of which are attached hereto as Exhibit B-1.  Ms. Ochoa's counsel in the Michigan Action has not filed a notice of appearance on behalf of Ms. Ochoa in these chapter 11 cases and accordingly did not

---

[5]   On June 20, 2009, in accordance with the Modification Procedures Order, the Debtors caused Kurtzman Carson Consultants LLC ("KCC") and Financial Balloting Group LLC or their agents to transmit notices containing certain procedures for asserting an Administrative Claim and a copy of the Administrative Claim Form.

5

receive a copy of the Notice in its capacity as counsel to Ms. Ochoa.[6] However, her counsel in the Michigan Action was served with no less than 23 copies of the Notice.[7] (See Exhibit B-1.)

          10.      Bar Date For § 503(b) Claims Arising After June 1, 2009. On July 30, 2009, this Court entered its Modification Approval Order, which approved the Debtors' Proposed Modifications and confirmed the Debtors' Modified Plan.

> Paragraph 47 of the Modification Approval Order provides in part:
>
> requests for payment of an Administrative [Expense] Claim (other than as set forth in the Modified Plan or otherwise contemplated by the Master Disposition Agreement, i.e., for such claims arising on or after June 1, 2009) must be filed, in substantially the form of the Administrative Claim Request Form attached as Exhibit 10.5 to the Modified Plan, with the Claims Agent and served on counsel for the Debtors and the Creditors' Committee no later than 30 days notice of after the Effective Date is filed on the docket of the Chapter 11 Cases. **Any request for payment of an Administrative Claim pursuant to this paragraph that is not timely filed and served shall be disallowed automatically** without the need for any objection from the Debtors or the Reorganized Debtors.

(Modification Approval Order ¶ 47 (emphasis added).)

          11.      On October 6, 2009 (the "Effective Date"), the Debtors substantially consummated the Modified Plan and closed the transactions under the Master Disposition Agreement, dated as of July 30, 2009, by and among Delphi, GM Components Holdings, LLC, General Motors Company, Motors Liquidation Company (f/k/a General Motors Corporation), DIP Holdco 3 LLC (which assigned its rights to DIP Holdco LLP, subsequently renamed Delphi Automotive LLP, a United Kingdom limited liability partnership), and the other sellers and

---

[6] See Charles Borden v. Brunswick Baptist Church (In re Brunswick Baptist Church), 2007 WL 160749, *4 (N.D.N.Y. Jan. 16, 2007) (debtor not required to send bar date notice to known counsel of parties-in-interest when counsel did not file notice of appearance with bankruptcy court until "over two months after the deadline for filing proofs of claim.")

[7] The Notice was served on Mr. Mastromarco in his capacity as counsel to numerous creditors in these chapter 11 cases.

buyers party thereto. In connection therewith, DIP Holdco LLP, through various subsidiaries and affiliates, acquired substantially all of the Debtors' global core businesses, and GM Components Holdings, LLC and Steering Solutions Services Corporation acquired certain U.S. manufacturing plants and the Debtors' non-core steering business, respectively. The Reorganized Debtors have emerged from chapter 11 as DPH Holdings and affiliates and remain responsible for the post-Effective Date administration of these chapter 11 cases, including the disposition of certain retained assets, the payment of certain retained liabilities as provided for under the Modified Plan, and the eventual closing of the cases.

12. In compliance with paragraph 47 of the Modification Approval Order, the notice of Effective Date was filed on October 6, 2009 with this Court in these chapter 11 cases (Docket No. 18958) (the "Effective Date Notice"). Upon the occurrence of the Effective Date on October 6, 2009, the bar date for filing Administrative Expense Claims for claims arising on or after June 1, 2009 was recognized as November 5, 2009 (the "Final Administrative Expense Bar Date"). As set forth above, paragraph 47 of the Modification Approval Order provides that any administrative claim for which a party has failed to timely file and serve a request for payment is automatically disallowed without the need for any objection from the Debtors or the Reorganized Debtors. (Modification Approval Order ¶ 47.)

13. On or before October 9, 2009, KCC served Ms. Ochoa with two copies of the Effective Date Notice, which, among other things, provided notice of the Final Administrative Expense Bar Date, by first class mail at each of the addresses below:

| Leigh Ochoa<br>3390 W Willard Rd<br>Birch Run, MI 48415 | Leigh A Ochoa<br>3390 W Willard Rd<br>Birch Run, MI 48415 |
|---|---|

7

See Affidavit Of Service Of Evan Gershbein For Notice Of Effective Date Materials Served On Or Before October 9, 2009, dated October 14, 2009 (Docket No. 18978), the relevant portions of which are attached hereto as Exhibit B-2.  As set forth above, counsel in the Michigan Action has not filed a notice of appearance on behalf of Ms. Ochoa in these chapter 11 cases, but was nevertheless served with 21 separate copies of the Effective Date Notice.  (See Exhibit B-2.)

C.        Postpetition Action In Michigan Federal Court

14.       The Michigan Action.  On November 6, 2009, Ms. Ochoa commenced the Michigan Action against Delphi.  On November 19, 2009, Ms. Ochoa filed the Amended Nonbankruptcy Complaint in Michigan District Court, naming DPH Holdings as the defendant.  In the Nonbankruptcy Complaint, Ms. Ochoa seeks damages against the Reorganized Debtors in connection with her termination and the Reorganized Debtors' alleged violation of her rights under 29 U.S.C. § 1140.  (See Amended Nonbankruptcy Complaint ¶¶ 4-5, 15.)

15.       On January 19, 2010, DPH Holdings filed its answer (the "Answer") and its affirmative defenses ("Affirmative Defenses") to Ms. Ochoa's Amended Nonbankruptcy Complaint in the Michigan District Court.  In its Affirmative Defenses, DPH Holdings pleaded, among other things, that Ms. Ochoa "failed to file a claim with the Bankruptcy Court overseeing the Defendant's Chapter 11 case, and is therefore barred and/or enjoined from proceeding against Defendant in this matter."  (Affirmative Defenses ¶ 9.)

16.       Request That Ms. Ochoa Dismiss Michigan Action.  On April 12, 2010, local counsel to the Reorganized Debtors in the Michigan Action sent a letter to counsel for Ms. Ochoa describing the relevant provisions of the Modified Plan and the Modification Approval Order, explaining why the Michigan Action violated those provisions, and demanding that DPH Holdings be dismissed from the Michigan Action with prejudice.  A copy of this letter is attached hereto as Exhibit C.

8

17. On April 20, 2010, counsel to Ms. Ochoa responded to the letter and informed the Reorganized Debtors that they would not dismiss DPH Holdings from the Michigan Action because the claims asserted against the Reorganized Debtors arose after June 1, 2009, the cut-off date for claims subject to the First Administrative Claim Bar Date. A copy of this letter is attached hereto as <u>Exhibit D</u>. Ms. Ochoa's letter did not address the failure to file an administrative expense claim by the Final Administrative Expense Bar Date, as required by paragraph 47 of the Modification Approval Order and the Effective Date Notice.

18. On April 27, 2010, counsel to the Reorganized Debtors responded to Ms. Ochoa's April 20, 2010 letter to clarify that the Modified Plan and the Modification Approval Order also established a Final Administrative Expense Bar Date, applicable to claims that arose on or after June 1, 2009 but before the Effective Date of the Modified Plan. A copy of the April 27, 2010 letter is attached hereto as <u>Exhibit E</u>.

19. <u>Motion to Stay Michigan Action</u>. On May 12, 2010, after repeated attempts to negotiate an amicable dismissal, or even a stay, of the Michigan Action on account of the Plan Injunction, DPH Holdings filed a motion to stay discovery and all pre-trial proceedings in the Michigan Action (the "Motion to Stay") on the grounds that the claims asserted in the Nonbankruptcy Complaint were discharged and enjoined pursuant to the Modification Approval Order and Modified Plan. A copy of the Motion to Stay is attached hereto as <u>Exhibit F</u>.

20. On May 25, 2010, Ms. Ochoa filed her response (the "Response") and brief in opposition ("Response Brief") to the Motion to Stay, asserting that the injunction and discharge did not apply to her claims, because under 11 U.S.C. § 523(a)(6), claims for intentional torts enjoyed a "complete exclusion from the Bankruptcy Rules." (Response at ¶ 3.) Copies of the Response and supporting Response Brief are attached hereto as <u>Exhibit G</u>. In her Response

9

Brief opposing the Motion to Stay, Ms. Ochoa quotes section 523(a)(6) of the Bankruptcy Code (Response Brief at p. 6), but set forth no explanation for why the prohibition against discharging an individual debtor from an intentional tort was applicable to the discharge granted to the Debtors, in each case corporate debtors not subject to section 523(a)(6).[8]

21.  On June 1, 2010, the Reorganized Debtors filed their reply in support of the Motion to Stay (the "Reply"), explaining to the Michigan District Court that this Court retained exclusive jurisdiction to interpret its own orders and that this Motion would be filed so that this matter would be heard by June 30, 2010. (Cf. Modification Approval Order ¶ 56; Modified Plan § 13(p), (r).) A copy of the Reply is attached hereto as Exhibit H.

## Jurisdiction

22.  This Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334, Section 13 of the Modified Plan and paragraph 56 of the Modification Approval Order. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Relief Requested

23.  The Reorganized Debtors seek entry of an order enjoining Ms. Ochoa from proceeding with the Michigan Action and directing Ms. Ochoa to take such action as is necessary to dismiss the Michigan Action.

## Basis For Relief

24.  The Reorganized Debtors have a profound interest in making sure that unambiguous provisions of the Modified Plan and Modification Approval Order are enforced.

---

[8]  Contrary to Ms. Ochoa's assertion, section 523(a)(6) of the Bankruptcy Code is inapplicable to corporate debtors and chapter 11 allows for a broader discharge for corporate debtors than it does for individual debtors. See Ackles v. A.H. Robins Co. (In re A.H. Robins Co.) 59 B.R. 99, 101 (Bankr. E.D. Va. 1986) (intentional torts are dischargeable in a chapter 11 case by confirmation of a corporate debtor's plan of reorganization), aff'd 828 F.2d 1029, 1031 (4th Cir. 1987).

10

By proceeding with the Michigan Actions without having filed a motion in this Court to lift the Plan Injunction, Ms. Ochoa seeks to litigate claims in the Michigan District Court that have been discharged, violating both the Modification Approval Order and the Modified Plan.  This Court should exercise its jurisdiction and enforce the Plan Injunction because "a bankruptcy court is undoubtedly the best qualified to interpret and enforce its own orders, including those providing for discharge and injunction and therefore should not abstain from doing so."  Texaco Inc. v. Sanders (In re Texaco, Inc.), 182 B.R. 937, 947 (Bankr. S.D.N.Y. 1995).

Applicable Authority

D.   **The Michigan Action Violates The Modification Procedures Order, The Modified Plan, And The Modification Approval Order**

25.   Pursuant to the discharge of the Debtors contained in section 11.2 of the Modified Plan, Ms. Ochoa may only receive a distribution on a claim against the Reorganized Debtors as provided by the Modified Plan.  However, Ms. Ochoa failed to timely file an Administrative Expense Claim on or prior to the Final Administrative Expense Bar Date and thus is barred from asserting any claim that arose on or prior to the Effective Date against the Reorganized Debtors.  (Modification Approval Order ¶ 47.)

26.   As set forth below, under the clear and unambiguous language of the Modification Procedures Order, the Modification Approval Order and the Modified Plan, Ms. Ochoa was required not only to file timely an Administrative Expense Claim, but to obtain an order from this Court to lift the Plan Injunction in order to prosecute the Michigan Action against the Reorganized Debtors.  Moreover, paragraph 22 of the Modification Approval Order and section 11.14 of the Modified Plan enjoin Ms. Ochoa from commencing or proceeding with the Michigan Action because her claim arose prior to the Effective Date – whether or not a timely Administrative Expense Claim was filed.

27.     Discharge of the Debtors.  Under 11 U.S.C. § 1141(d) and pursuant to the terms of the Modification Approval Order and the Modified Plan, upon the Effective Date, the distributions and rights provided in the Modified Plan operates as a discharge of all Claims[9] and Causes of Action[10] against the Debtors that arose on or prior to the Effective Date.  Specifically, section 11.2 of the Modified Plan provides that:

> the distributions and rights that are provided in [the Modified] Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims and Causes of Action, whether known or unknown, against, liabilities of, liens on, obligations of, rights against, and Interests in the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to [the Modified] Plan on account of such Claims, rights, and Interests, **including, but not limited to, Claims and Interests that arose before the Effective Date** . . . .

(Modified Plan at § 11.2 (emphasis added).)

28.     The claims asserted in the Michigan Actions fall squarely within the discharge granted under section 11.2 of the Modified Plan.

29.     The Plan Injunction.  In addition, upon the Effective Date of the Modified Plan, an injunction was imposed.  Specifically, the Modified Plan and the Modification Approval Order contain a permanent injunction against, among other things, the commencement or continuation of any action to recover against any claim against the Reorganized Debtors that arose prior to October 6, 2009, the Effective Date of the Modified Plan.  Section 11.14 of the Modified Plan provides that:

---

[9] "Claim" means a claim against one of the Debtors (or all or some of them), whether or not asserted, as defined in section 101(5) of the Bankruptcy Code.  (Modified Plan at § 1.29.)

[10] "Causes of Action" means any and all actions, proceedings, causes of action, suits, accounts, demands, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment, and claims, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, non-contingent, matured, unmatured, disputed, undisputed, secured, or unsecured, and whether asserted or assertable directly or derivatively in law, equity, or otherwise, including Avoidance Claims, unless otherwise waived or released by the Debtors or the Reorganized Debtors to the extent such Cause of Action is a Cause of Action held by the Debtors or the Reorganized Debtors.  (Modified Plan at § 1.25.)

> the satisfaction, release, and discharge pursuant to [Article XI of the Modified Plan] shall act as an injunction **against any Person commencing or continuing any action, employment of process, or act to collect, offset, or recover any Claim, Interest, or Cause of Action satisfied, released, or discharged under [the Modified] Plan to the fullest extent authorized or provided by the Bankruptcy Code** . . .

(Modified Plan at § 11.14 (emphasis added).)

        30.    Similarly, paragraph 22 of the Modification Approval Order provides that:

> <u>Injunction.</u> Except as otherwise specifically provided in the Modified Plan, the MDA Documents, or this order and except as may be necessary to enforce or remedy a breach of the Modified Plan, **the Debtors and all Persons shall be precluded and permanently enjoined on and after the Effective Date from** (a) **commencing or continuing in any manner any Claim, action, employment of process, or other proceeding of any kind with respect to any Claim, Interest, Cause of Action, or any other right or Claim against the Reorganized Debtors, which they possessed or may possess prior to the Effective Date**, (b) the enforcement, attachment, collection, offset, recoupment, or recovery by any manner or means of any judgment, award, decree, order, or otherwise with respect to any Claim, Interest, Cause of Action, or any other right or Claim against the Reorganized Debtors, which they possessed or may possess prior to the Effective Date, (c) creating, perfecting, or enforcing any encumbrance of any kind with respect to any Claim, Interest, Cause of Action, or any other right or Claim against the Reorganized Debtors, which they possessed or may possess prior to the Effective Date, and (d) asserting any Claims, Interests, or Causes of Action that are satisfied, discharged, released, or subject to exculpation hereby or by the Modified Plan.

(Modification Approval Order ¶ 22 (emphasis added).)

        31.    Accordingly, the permanent injunction in the Modified Plan and Modification Approval Order prohibits the commencement or continuation of any action to recover any claim against the Debtors that arose prior to the Effective Date.

13

    E.    <u>Ms. Ochoa Was Properly Served With Notice Of The Administrative Expense Claims Bar Dates</u>

        32.    To date, Ms. Ochoa has not contested receipt of either the Notice or the Effective Date Notice. The Debtors' proper mailing of the Notice and the Effective Date Notice constitutes effective service. Courts uniformly presume that an addressee receives a properly mailed item when the sender presents proof that it properly addressed, stamped, and deposited the item in the mail. <u>See</u>, <u>e.g.</u>, <u>Hagner v. United States</u>, 285 U.S. 427, 430 (1932) ("The rule is well settled that proof that a letter properly directed was placed in a post office creates a presumption that it reached its destination in usual time and was actually received by the person to whom it was addressed."); <u>Leon v. Murphy</u>, 988 F.2d 303, 309 (2d Cir. 1993) (finding, under New York law, that presumption of receipt arises when sender "'presents proof of the office procedure followed in a regular course of business, and these procedures establish that the required notice has been properly addressed and mailed'" (citation omitted)); <u>In re R.H. Macy & Co.</u>, 161 B.R. 355, 359 (Bankr. S.D.N.Y. 1993) ("Mail properly addressed, stamped and deposited in the mail system is presumed to have been received by the party to whom it has been addressed."). Accordingly, the Debtors provided Ms. Ochoa timely, proper, and sufficient service of the Notice and the Effective Date Notice.

        33.    Instead, Ms. Ochoa has asserted in pleadings before the Michigan District Court that section 523(a)(6) of the Bankruptcy Code prevents the discharge of claims arising from intentional torts. As discussed above, this argument is without merit and fails to distinguish the different treatment afforded to individual and corporate debtors. <u>See</u> <u>Ackles v. A.H. Robins Co. (In re A.H. Robins Co.)</u> 59 B.R. 99, 101 (Bankr. E.D. Va. 1986) (intentional torts are dischargeable in a chapter 11 case by confirmation of a corporate debtor's plan of reorganization), <u>aff'd</u> 828 F.2d 1029, 1031 (4th Cir. 1987).

F.      This Court Has the Authority To Enforce The Modified Plan And The Modification Approval Order

34.      Moreover, the Michigan Action runs afoul of the Modified Plan and Modification Approval Order, and this Court should not abstain from interpreting and enforcing its own orders. See In re Texaco, Inc., 182 B.R. 937, 947 (Bankr. S.D.N.Y. 1995) ("[A] bankruptcy court is undoubtedly the best qualified to interpret and enforce its own orders, including those providing for discharge and injunction and therefore should not abstain from doing so."). This is especially true where, as here, a party "acts potentially in violation of an injunction without seeking permission from the Court that issued the injunction." In re DPH Holdings Corp., Hr'g Tr. at 89, Feb. 25, 2010.

35.      Specifically, a bankruptcy court retains subject matter jurisdiction to enforce both the plan and its order confirming that plan, as it "is axiomatic that a court possesses the inherent authority to enforce its own orders" and agreements approved by the court. In re Continental Airlines, Inc., 236 B.R. 318, 326 (Bankr. D. Del. 1999), aff'd, 2000 WL 1425751 (D.Del. Sep. 12, 2000), aff'd, 279 F.3d 226 (3rd Cir. 2002); see also Travelers Indemnity Co. v. Bailey, 129 S. Ct. 2195, 2205 (2009) ("as the Second Circuit recognized, . . . the Bankruptcy Court plainly had jurisdiction to interpret and enforce its own prior orders.") "In the bankruptcy context, courts have specifically, and consistently, held that the bankruptcy court retains jurisdiction, inter alia, to enforce its confirmation order." Continental Airlines, 236 B.R. at 326. As the court explained, "we do not find significant the fact that the Plan may have been substantially consummated in this case. That fact does not divest us of our inherent jurisdiction to enforce the Confirmation Order issued by this Court." Id.

36.      Moreover, pursuant to the Modified Plan and the Modification Approval Order, this Court retained exclusive jurisdiction to, among other things, "hear and determine all

15

disputes involving the existence, nature or scope of the Debtors' discharge" (Modified Plan at § 13(p)) and over all matters related to the Modified Plan. (See Modification Approval Order ¶ 56.) See Travelers, 129 S. Ct. at 2205 ("when the Bankruptcy Court entered the [prior plan confirmation and settlement orders,] it explicitly retained jurisdiction to enforce its injunctions").

G.  The Reorganized Debtors Will Suffer Harm Should Ms. Ochoa Continue To Prosecute The Michigan Action Against DPH Holdings

37. Under settled law, when a party unilaterally violates a bankruptcy court order, that violation, standing alone, constitutes the only harm necessary for a renewed injunction. See, e.g., Balanoff v. Glazier (In re Steffan), 97 B.R. 741, 746 (Bankr. N.D.N.Y 1989) ("the usual equitable grounds for relief, such as irreparable damage, need not be shown" in injunctions in bankruptcy cases) (quotation omitted).

38. The Reorganized Debtors have been harmed by having to litigate a claim in Michigan District Court that was permanently enjoined pursuant to the Modification Approval Order. The Reorganized Debtors have already been forced to incur fees and costs in defending the Michigan Action and in bringing this Motion. The Reorganized Debtors would be harmed further in the (unlikely) event that the Michigan District Court were to enter a judgment against the Reorganized Debtors in favor of Ms. Ochoa. The Reorganized Debtors also may have to defend a dismissal of the Michigan Action on appeal. Under all scenarios, the Reorganized Debtors are faced with both the threat of liability and the expense of attorneys' fees. These harms arise from the direct violation of the Modified Plan and this Court's Modification Approval Order.

39. Moreover, the Reorganized Debtors would suffer direct financial harm because the deductible for the relevant insurance policy Delphi carried at the time is $5,000,000, and any resulting judgment under that amount would result in a claim payable by the

16

Reorganized Debtors. The Reorganized Debtors should be able to rely on the Modified Plan and the Modification Approval Order and not be compelled to litigate disallowed and discharged claims in the Michigan Action, especially where Ms. Ochoa has not sought relief in this Court from the Plan Injunction.

40. Pursuant to Fed. R. Bankr. P. 7001(7), the relief sought by the Reorganized Debtors in this Motion is properly brought by motion as a contested matter pursuant to Fed. R. Bank. P. 9014, rather than in a separate adversary proceeding. Specifically, because the Reorganized Debtors are merely seeking to enforce provisions of the Modified Plan, under Fed. R. Bankr. P. 7001(7), no adversary proceeding is required. See In re Continental Airlines, Inc., 236 B.R. 318, 327 (Bankr. D. Del. 1999), aff'd, 2000 WL 1425751 (D.Del. Sep. 12, 2000), aff'd, 279 F.3d 226 (3rd Cir. 2002).

## Notice

Notice of this Motion has been provided (a) to Leigh Ochoa and her counsel in the Michigan Action and (b) in accordance with the Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And Administrative Procedures, entered March 20, 2006 (Docket No. 2883), and the Nineteenth Supplemental Order Under 11 U.S.C. §§ 102(l) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And Administrative Procedures, entered May 25, 2010 (Docket No. 20189). In light of the nature of the relief requested, the Reorganized Debtors submit that no other or further notice is necessary.

WHEREFORE the Reorganized Debtors respectfully request that this Court enter an order (a) to (i) enforce the Plan Injunction against Leigh Ochoa and (ii) direct Ms. Ochoa to take such action as is necessary to dismiss the Michigan Action and (b) grant the Reorganized Debtors such other and further relief as is just.

Dated:  New York, New York
        June 5, 2010

        SKADDEN, ARPS, SLATE, MEAGHER
          & FLOM LLP

By:  /s/ Ron E. Meisler
    John Wm. Butler, Jr.
    John K. Lyons
    Ron E. Meisler
155 North Wacker Drive
Chicago, Illinois 60606

- and -

By:  /s/ Kayalyn A. Marafioti
    Kayalyn A. Marafioti
Four Times Square
New York, New York 10036

Attorneys for DPH Holdings Corp., et al.,
   Reorganized Debtors