# EXHIBIT D

1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case No. 05-44481-rdd

- - - - - - - - - - - - - - - - - - - -x


In the matter of:


DPH HOLDINGS CORP., et al.,


          Reorganized Debtors.


- - - - - - - - - - - - - - - - - - - -x


          United States Bankruptcy Court

          One Bowling Green

          New York, New York


          April 1, 2010

          10:44 AM


B E F O R E:

HON. ROBERT D. DRAIN

U.S. BANKRUPTCY JUDGE

2

1

2      HEARING re Reorganized Debtors' Emergency Motion for Order

3      Under Section 105(a) of the Bankruptcy Code, Fed. R. Bankr. P.

4      7004(a) and 9006(b)(1) and Fed. R. Civ. P. 4(m) Extending

5      Deadline to Serve Process for Certain Avoidance Actions

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25      Transcribed by:  Lisa Bar-Leib

3

1

2    A P P E A R A N C E S :

3    BUTZEL LONG P.C.

4         Attorneys for DPH Holdings Corp., Reorganized Debtors

5         380 Madison Avenue

6         22nd Floor

7         New York, NY 10017

8

9    BY:  ERIC B. FISHER, ESQ.

10

11   TOGUT, SEGAL & SEGAL LLP

12        Attorneys for DPH Holdings Corp., Reorganized Debtors

13        One Penn Plaza

14        New York, NY 10110

15

16   BY:  DANIEL F.X. GEOGHAN, ESQ.

17

18   MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

19        Attorneys for Kostal of America Inc. and also Kostal

20         Mexicana S.A. de C.V.

21        150 West Jefferson

22        Suite 2500

23        Detroit, MI 48226

24

25   BY:  DONALD J. HUTCHINSON, ESQ.

4

1

2    ROBINSON & COLE LLP

3         Attorneys for Prudential Relocation, Prudential Relocation

4          Incorporated, Prudential Relocation International

5         1055 Washington Boulevard

6         9th Floor

7         Stamford, CT 06901

8

9    BY:  NATHAN C. ZEZULA, ESQ.

10

11   HONIGMAN MILLER SCHWARTZ & COHN LLP

12        Attorneys for Affinia Canada Corp., Itapsa S.A. de C.V., a

13         Mexican company, and Wix Filtration Products Europe

14         Limited and Valeo Schalter und Sensoren GMBH

15        2290 First National Building

16        660 Woodward Avenue

17        Detroit, MI 48226

18

19   BY:  JUDY B. CALTON, ESQ.

20

21

22

23

24

25

5

1

2    BODMAN LLP

3        Attorneys for Freudenberg-NOK General Partnership,

4         Freudenberg-NOK, Inc., Flexitech Inc. and Vibracoustic of

5         Mexico, S.A. de C.V.

6        1901 St. Antoine Street

7        6th Floor at Ford Field

8        Detroit, MI 48226

9

10    BY:  RALPH E. MCDOWELL, ESQ.

11        (TELEPHONICALLY)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

6

1                    P R O C E E D I N G S

2          THE COURT:  All right.  Let's go ahead with the

3    Delphi.

4          MR. FISHER:  Your Honor, Eric Fisher from Butzel Long

5    for DPH Holdings Corp.  And I'm here today with Daniel

6    Geoghan --

7          MR. GEOGHAN:  Daniel Geoghan from Togut, Segal &

8    Segal also here on behalf of DPH Holdings Corp.

9          THE COURT:  Okay.

10     MS. CALTON:  Judy Calton of Honigman Miller Schwartz &

11   Cohn.  And I'm here for Affinia Canada Corp., Itapsa S.A. de

12   C.V., a Mexican company, and Wix Filtration Products Europe

13   Limited.  And I'm also here -- and it's a German name which I

14   don't pronounce right -- Valeo Schalter und Sorenson (sic)

15   GMBH, which --

16         THE COURT:  That was pretty good actually.

17         MS. CALTON:  I'd like to call mind of the Affinia

18   defendants --

19         THE COURT:  Right.

20         MS. CALTON:  -- and the Valeo, if I could.

21         THE COURT:  Okay.  That's fine.  Thank you.

22         MR. HUTCHINSON:  Your Honor, my name is Donald

23   Hutchinson and I'm with Miller Canfield in Detroit.  And I

24   represent Kostal of America Inc. and also Kostal Mexicana S.A.

25   de C.V.

7

1          THE COURT:  Okay.  And I think we have someone on the

2     phone also?

3          MR. MCDOWELL (TELEPHONICALLY):  Yes, Your Honor.

4     Ralph McDowell, Bodman LLP.  I represent Freudenberg-NOK

5     General Partnership, Freudenberg-NOK Inc., Flexitech Inc. and

6     the Vibracoustic of Mexico S.A. de C.V.

7          THE COURT:  Okay.

8          MR. ZEZULA:  And, Your Honor, Nathan Zezula from

9     Robinson & Cole.  I'm here on behalf of the Prudential

10    entities., Prudential Relocation, Prudential Relocation

11    Incorporated and Prudential Relocation International.

12         THE COURT:  Okay.  All right.  So let me hear from

13    DPH.  This is their motion for an extension of time to serve.

14         MR. FISHER:  Your Honor, all of the objectants who

15    are appearing by telephone and in person and who filed

16    objections are -- represent foreign defendants.  And so, I'd

17    like to address the foreign defendants separately and first

18    just review with Your Honor the extension that we seek with

19    regard to preference actions we brought against other

20    categories of defendants.

21         THE COURT:  Okay.

22         MR. FISHER:  The motion seeks an extension with

23    regard to twenty-one defendants as to which we requested that

24    summonses be issued.  But as of the date that we filed this

25    emergency motion, summonses had not yet been issued by the

8

1    bankruptcy clerk.  And that's why we requested the extension.

2              Since filing the motion on March 25th, in most

3    instances, those summonses have been issued.  But I still

4    believe, Your Honor, that it would be prudent to grant the

5    extension as to those defendants.  And we're requesting only a

6    thirty-day extension of the service deadline in order to ensure

7    that we can accomplish service before that deadline expires.

8              THE COURT:  Okay.  How many do you have left, do you

9    know?

10             MR. FISHER:  Unissued summonses, Your Honor?  I

11   believe of the twenty-one, there is only one remaining.

12             THE COURT:  All right.

13             MR. FISHER:  The second category are instances where

14   we have attempted to accomplish service, again on domestic

15   defendants, but for one reason or another, service was

16   returned, in many instances because those companies are

17   reportedly now defunct or may have relocated.  So as to those

18   defendants, we're also requesting an extension of the service

19   deadline by thirty days in order to make a determination as to

20   whether it makes sense to proceed with those actions and to try

21   to complete service before the court-ordered deadline expires.

22             THE COURT:  Did you -- are these claimants -- so you

23   got the address off of proof of claim or --

24             MR. FISHER:  Yeah.  In instances where we were

25   dealing with claimants, we checked the claim register to

9

1    identify addresses that way.

2            THE COURT:  Okay.  And the other ones, you got their

3    address by doing corporate searches?

4            MR. FISHER:  Exactly, Your Honor.

5            THE COURT:  Okay.

6            MR. FISHER:  And to my knowledge, again, I suppose

7    there are questions about the extent to which our motion

8    reached these defendants, but we attempted to serve them at the

9    best addresses we could identify by FedEx and there are no

10   objections.

11           THE COURT:  And -- these are only eleven, I think,

12   actions.  The summons and complaint was returned as

13   undeliverable?  Is that what happened --

14           MR. FISHER:  Yes.

15           THE COURT:  -- in each case?

16           MR. FISHER:  Yes.

17           THE COURT:  All right.  And you've already checked to

18   see whether, in fact, you had the address wrong and, as far as

19   you could tell, the address was right?

20           MR. FISHER:  That's correct.  And so, we're doing

21   what we can to determine alternative addresses with regard to

22   these eleven.

23           THE COURT:  Okay.  All right.  Does anyone have

24   anything to say on the relief with regard to these two

25   categories of adversary proceedings, that is, the originally

10

1   twenty-one and now one where the clerk had simply not gotten

2   around at the time that the motion was filed to issuing the

3   summons, and where the summons and complaint were returned as

4   undeliverable?  All right.  Well, without prejudice to the

5   objectors, but in light of the facts as set forth before me,

6   I'll grant the motion with regard to those two categories for

7   the thirty-day extension.

8          MR. FISHER:  Your Honor, then addressing the category

9   of foreign defendants generally, we have -- foreign defendants,

10  of course, need to be served, in most cases, either pursuant to

11  the Hague Convention or pursuant to other treaties which has

12  required us to translate the summons and complaint, contact

13  foreign serving authorities in an effort to get these served.

14          As I'm sure Your Honor is aware, service through

15  international means can sometimes be a very lengthy process

16  that's out of the control of the plaintiffs.  And for that

17  reason, technically speaking, Rule 4(m) does not apply or

18  impose a deadline on foreign service.

19          What we're seeking with regard to these foreign

20  defendants is an extension of the deadline so that service can

21  be completed in accordance with applicable international and

22  treaty requirements.  And we're seeking an extension of 240

23  days in order to get that done.

24          THE COURT:  Well, let me -- actually, you kind of

25  touched on an issue that, I guess, it's always been lurking in

11

1    the background with regard to foreign defendants which is

2    whether there is a deadline.  Did the debtors take a view on

3    this issue at this point under Rule 4(m), whether there's a

4    deadline of 120 days that's applicable?

5           MR. FISHER:  Your Honor, I don't believe -- there's

6    no rule imposed deadline.  And I believe that there are cases

7    that have looked to Rule 4(m) by means of analogy but have

8    recognized that Rule 4(m) can't technically be applied to

9    foreign service because of the vicissitudes of accomplishing it

10   within that kind of time frame.  And so, I think that the

11   approach that Courts have adopted is one of reasonableness and

12   one of looking at potential prejudice to the foreign

13   defendants.

14          THE COURT:  Okay.

15          MR. FISHER:  With regard to prejudice, Your Honor, I

16   understand that many of the foreign defendants are complaining

17   that these actions were filed in August 2007 and are only being

18   unsealed and efforts to serve them are only being made now.

19   But with regard to this motion to extend the service deadline

20   which, by court order, expires on April 5th, the only relevant

21   question of prejudice is the question of whether any of these

22   defendants would suffer any prejudice as a result of the

23   service deadline being extended from April 5th for another 240

24   days.  In every instance, obviously, the objectants are now

25   aware of these complaints.  And so, there's no basis to believe

12

1    that any objectant would suffer prejudice as a result of the

2    extension of the deadline from April 5th.

3         To the extent that they're complaining about

4    prejudice that they claim they may have suffered because these

5    actions were filed back in August 2007 and are being unsealed

6    and prosecuted only at this time, that's not a matter that can

7    appropriately be raised with regard to the service motion.

8    There are other defendants who have filed motions seeking to

9    vacate Your Honor's orders that preserved these actions for

10   prosecution post-consummation.  These objectants can preserve

11   whatever rights they may have in that regard, but that's simply

12   not an issue that is appropriate for this motion which merely

13   seeks an extension of the service deadline to accomplish

14   foreign service.

15        THE COURT:  What about -- I know of at least one of

16   the objections raised that -- the fact that DPH is seeking, I

17   think later this month, approval of omnibus procedures for

18   dealing with discovery and pretrial issues related to adversary

19   proceedings in general.  And I take it the objection basically

20   says should we be focusing on -- or should we be forced to

21   focus on the procedures and/or be bound by them if we haven't

22   yet been served.

23        MR. FISHER:  Your Honor, I think the answer to that

24   is simple.  That motion is scheduled to be heard on April 22nd.

25   And the proposed order providing for the case management

13

1   procedures specifies that any party may apply for relief from

2   that order.  And any foreign defendant served after that order

3   -- after a case management order is entered with regard to

4   these cases can seek relief certainly on the grounds that they

5   had not been served and thus were not a party to these cases --

6         THE COURT:  Well, would they even have to seek relief

7   if they're not a party?  I mean, it's odd to say that they'd be

8   bound if they're not party to an adversary proceeding that's

9   been --

10        MR. FISHER:  Your Honor, the purpose --

11        THE COURT:  -- served yet.

12        MR. FISHER:  -- of the case management order, of

13  course, is to have uniform procedures in place that expedite

14  these cases --

15        MR. FISHER:  So as a practical matter, it would seem

16  to me that they would want to participate in the hearing,

17  although with regard to deadlines and such, obviously those

18  deadlines would have to run from service, right?  They wouldn't

19  be running from the filing of the complaint.

20        MR. FISHER:  That's correct, Your Honor.

21        THE COURT:  Okay.

22        MR. FISHER:  And certainly, if any of the objectants'

23  counsel wishes to consent to service and be heard on April

24  22nd, that certainly would simplify matters greatly.

25        THE COURT:  You would not preclude any of these

14

1   objecting defendants from arguing in opposition to the case

2   management procedures on the basis that they haven't been

3   served yet, right?

4           MR. FISHER:  Certainly not, Your Honor.

5           THE COURT:  And that wouldn't constitute an

6   appearance or acceptance of service or a waiver if they did

7   that.

8           MR. FISHER:  Absolutely not, Your Honor.

9           THE COURT:  Okay.  All right.  Okay.

10          MR. ZEZULA:  Your Honor?

11          THE COURT:  Whoever wants to speak first is fine.

12          MR. ZEZULA:  Nathan Zezula for Prudential.  We were

13  one of the defendants that was served on, I believe, March

14  24th, just a few days ago.

15          THE COURT:  Okay.

16          MR. ZEZULA:  I understand we don't fit into the

17  categories that the Court just laid out.  I'd like to get some

18  objections on the record.  If this is not the proper time to do

19  those, I can --

20          THE COURT:  Well, I think the motion's moot as to

21  your client 'cause you were served within the date of the prior

22  order.

23          MR. ZEZULA:  Correct, Your Honor.  We'd be objecting

24  to the order that allows that the complaints be sealed and

25  served three years after the --

15

1       THE COURT:  Oh, but that would be a motion to vacate.

2       MR. ZEZULA:  Yes, Your Honor.

3       THE COURT:  And you don't waive any rights in respect

4   of whatever rights you have to seek such relief by appearing

5   today.

6       MR. ZEZULA:  Thank you, Your Honor.

7       THE COURT:  Okay.  You don't need to stay if you

8   don't want to.  But you're here, so --

9       MR. ZEZULA:  Right.

10      THE COURT:  All right.

11      MS. CALTON:  Judy Calton for the Affinia and Valeo

12  foreign defendants.  And I'd like to note in the reply brief

13  which got e-mailed out last night, plaintiffs make some

14  representations about the Valeo entities.  They're wrong.

15  They're unsworn.  We put in the declaration of Thomas F. Miller

16  as to which names were names of real entities, et cetera.  So I

17  would just -- I don't know basis of those representations but

18  we actually have sworn representations as to names that don't

19  represent real entities, et cetera, that were not agreed.

20      THE COURT:  Okay.

21      MS. CALTON:  Okay.  The extension request today is

22  not 240 days but it's three years two months from the

23  expiration of the statute of limitations.  Rule 4(f) applies.

24  Time to serve foreign defendants, under Rule 4(f), as you said,

25  uses 4(m), the 120 days, as a model.  But because there's some

16

1     understanding of the complexity of foreign service, they're not

2     bound by that.  And according to the Second Circuit in the

3     Montalbano v. Easco opinion, they use a due diligence standard

4     for timing of foreign service.  And dismissal, which I think

5     would also be whether you should extend it, is proper, or not

6     extending it, where the plaintiffs "have not exactly bent

7     backwards to affect service".

8            Plaintiffs have not exactly bent over backwards to

9     affect service.  After this last six month extension, which

10    they got in October 2009, knowing the issues with foreign

11    service, they can't claim that was a surprise to them, they

12    didn't start the process of foreign service until March.

13    Instead, they followed a deliberate strategy of requesting

14    summons first for the small dollar amounts.  And the record

15    shows that in November they requested twenty-eight ranging from

16    261 to 700,000 something.  And they kept moving up with dollar

17    amounts.  In February, they were averaging about a million and

18    a half.  Then in March, they moved into the big dollar amount.

19    For Affinia, which has seventeen million plus at issue, they

20    requested that on March 4.  For Valeo, which has over nineteen

21    million at issue, they requested it on March 18th.  That's not

22    due diligence.  That's not bending over backward, particularly

23    where they have to be translated, go through where you start a

24    proceeding in the other country, et cetera.  They had to know

25    that wasn't enough time.  And they had to know that these were

17

1   the big dollar ones.

2        And apparently, from one of the replies, it wasn't

3   until March 24 that paperwork was sent to the international

4   process server to start the process.  So you're talking they

5   waited until two weeks were left before this expiration of the

6   fourth extension to do anything.  And they do cite Wise v. DOD

7   but that's a 4(m) case not a foreign one.

8        And they also cite a four factor test from Gore on

9   what the Court should look at in deciding whether to grant an

10  extension.  And I was -- it came so late last night and I

11  didn't have the right kind of computer access so I couldn't

12  read the Gore opinion.  But I'd be very surprised if that

13  involved a fifth request asking extensions over three years for

14  the expiration of the statute of limits.

15       But the four factors get denial with time-barred

16  refiling of case.  That is certainly true -- that certainly

17  favors the plaintiff.  But that one factor alone cannot be

18  sufficient to justify extension 'cause then they could always

19  get an extension no matter what.

20       The second factor is defendant have notice of a claim

21  before the expiration of the statute of limitation.  Well,

22  there was no notice because the August motion to preserve

23  claims also included a request for abandonment.  And the

24  debtors represented to the Court that they had decided to

25  abandon claims against foreign vendors and the Court granted

1   that motion.  It's the exact same motion and order that

2   preserved and provided for the filing under seal.  I don't know

3   how the foreign defendants could know, based on that motion and

4   order, that they were going to be sued anyway and under seal.

5   They didn't have notice.  They have notice that the claims

6   against them were being abandoned.  Now, they haven't come up

7   with a reason why that isn't an effective abandonment.  And I'm

8   not arguing today to rule that they were abandoned.  But

9   certainly, the foreign defendants have notice that they were

10  abandoned to the extent they were noticed.  And I have to say,

11  well, Valeo defendants were given notice of that motion; the

12  Affinia defendants were not.  They weren't served with it.  So

13  there's just no basis to say that they have notice before the

14  expiration of the statute of limitations.

15          THE COURT:  Where --

16          MS. CALTON:  And -- okay.  I'm sorry --

17          THE COURT:  Can I interrupt you --

18          MS. CALTON:  Yeah.

19          THE COURT:  -- cause I'm afraid I'll forget some of

20  my questions as you go along.  Where is the deadline in Rule

21  4(f)?

22          MS. CALTON:  There is no deadline.  There is no

23  expressed deadline.  That's why the Courts have said that they

24  look to 4(m) as some kind of guidance.  But that's not --

25          THE COURT:  But why --

19

1          MS. CALTON:  -- it.

2          THE COURT:  If there's no deadline then --

3          MS. CALTON:  Then they look to a due diligence

4    standard.

5          THE COURT:  But to meet what?  To meet what deadline?

6          MS. CALTON:  They don't state.

7          THE COURT:  How can you be due diligent --

8          MS. CALTON:  Because they --

9          THE COURT:  -- if there's no deadline?

10          MS. CALTON:  In the due diligence cases, they are

11   going by analogy to the 120 days.

12          THE COURT:  But there is no 120 days in 4(f).

13          MS. CALTON:  Well, you know, I don't think it was

14   intended that there'd never be a deadline for a foreign

15   company.  And I think you have to look at initiation rather

16   than accomplishment.

17          THE COURT:  But how do we know what the deadline is?

18   And if you're saying -- I mean, I take it, you're trying to put

19   this into 4(f) because --

20          MS. CALTON:  I realize that --

21          THE COURT:  -- because you don't want the amendment

22   to 4(m) which gives the Court the discretion to extend the

23   period even if there's not good cause whatever that means.

24          MS. CALTON:  Yes.

25          THE COURT:  But --

20

1        MS. CALTON:  You know, I would say ---

2        THE COURT:  I mean, I guess I need to know what the

3   deadline is before I can determine what the due diligence

4   should be.

5        MS. CALTON:  If it weren't established some other

6   way, it was established by the extension order which applied

7   both to foreign and non-foreign.

8        THE COURT:  So the orders --

9        MS. CALTON:  So you'll get a --

10       THE COURT:  -- themselves establish the deadline?

11       MS. CALTON:  Yes.

12       THE COURT:  Doesn't that in itself then vitiate your

13   argument that I should be looking back to the date of the

14   initial order as opposed to the date when the debtors sought

15   this particular request?

16       MS. CALTON:  No.  I've seen no case that discusses

17   repeated deadlines like this.

18       THE COURT:  Well, I understand that.

19       MS. CALTON:  Yes.

20       THE COURT:  But if you're talking about the basis for

21   due diligence being a deadline and whether you're using due

22   diligence to comply with the deadline, and if the deadline is a

23   deadline that's set only in the order, then it would seem to me

24   that the timing should start from the deadline that that order

25   sets not from deadlines set by earlier orders.

1       MS. CALTON:  I believe that the rule implies some

2   kind of reasonableness standard because otherwise there'd never

3   be a deadline no matter what.  And I think the Courts are

4   saying the same thing. I don't agree that you --

5       THE COURT:  Well --

6       MS. CALTON:  -- look back to the most recent ones but

7   let's say you did.  It was 180 days and they didn't start until

8   almost the expiration of that --

9       THE COURT:  Okay.  No.  I --

10      MS. CALTON:  -- to try to do that.

11      THE COURT:  -- understand that argument.  I guess the

12  other question I had is, isn't this really just about if the

13  debtor says that issue and that issues about due process and

14  the effect of a delay, including the effect on evidence and the

15  like, that occurred up to the date of their most recent

16  request -- aren't those issues for a different type of

17  proceeding which is a motion to vacate the orders or a motion

18  for adoption of sort of presumptions in the adversary

19  proceeding with regard to --

20      MS. CALTON:  It's my belief --

21      THE COURT:  -- who has the burden as regard to

22  evidence?

23      MS. CALTON:  No.  It's my belief they have the burden

24  of obtaining the extension 'cause otherwise they wouldn't have

25  moved it and they have to establish it.  And I think prejudice

22

1    that we've already suffered which would be compounded is a

2    factor.  And I would also talk when you get up to the prejudice

3    issue, the Second Circuit in the Zapata case said if you're

4    after the statute of limitations, we'll presume prejudice.  So

5    I don't think, one, it's presumed and, two, we have actual

6    prejudice and, three, we have the potential prejudice.  I don't

7    know to what extent a case management order guiding the great

8    majority of these cases and carving out a very few would, in

9    essence, protect their rights.  That's the fourth factor from

10   the Gore test that they cite.

11          The third factor is very interesting.  It's that

12   defendant attempted to conceal defects in service which I have

13   to presume is to fool the plaintiff into thinking service had

14   been effective and then let the deadline pass.  That's

15   obviously not the case here in the Gore test.  That one favors

16   us.  We have -- that we didn't have notice before the deadline,

17   that one favors us.  And we have prejudice which is both

18   presumed and actual here.

19          So I think, out of the four Gore factors, three of

20   them favor not extending and only the fact that the claims

21   would be barred favor doing it.  I don't see how that alone can

22   be enough.  And in fact, they have another prejudice which I

23   think really came up in their reply brief that I got last

24   night.  They want to claim that because the foreign defendants

25   shut down factories and didn't take extra steps to preserve

23

1    their records and preserve their witnesses, they should be

2    liable for spoliation sanctions.

3              THE COURT:  No.  They want to claim that if, in fact,

4    evidence was destroyed with knowledge of the complaint then

5    they --

6              MS. CALTON:  Yeah.  But they're claiming knowing that

7    Delphi -- the three preference actions even though you didn't

8    know against whom --

9              THE COURT:  Well, that's not going to go very far.

10             MS. CALTON:  Okay.  But I mean, that's just an

11   example of the nightmare of prejudice here.

12             THE COURT:  Well --

13             MS. CALTON:  Delphi is --

14             THE COURT:  It's not going to be a nightmare.

15             MS. CALTON:  Okay.  Well, Delphi's been given --

16             THE COURT:  On the other hand, if someone knew of the

17   existence of a complaint against them then that'd be a

18   different story.  I mean, it's that simple.

19             MS. CALTON:  I don't know how they could have the way

20   it happened here.  But --

21             THE COURT:  Well, you know, people do run things.

22             MS. CALTON:  Okay.  Delphi has given ample cause to

23   deny an extension.

24             THE COURT:  I mean, there was a motion, right?  There

25   was a motion to do this, to file it under seal and the like.

24

1    It was served on people who had filed notices of appearance.  I

2    believe it was served on at least one of your clients.

3              MS. CALTON:  Yes.  But not the Affinia one.

4              THE COURT:  I understand.

5              MS. CALTON:  Yeah.

6              THE COURT:  But I'm just dealing with the spoliation

7    argument.  If one of your clients -- if it turns out to be

8    evidence that one of your clients followed up with Delphi and

9    said I got this motion.  Am I one of the defendants?  If

10   Delphi -- the evidence will show Delphi said yes, you are then

11   they may be right about spoliation.  On the other hand, if

12   there was no follow-up, if someone was in the dark then that's

13   a pretty easy issue.

14             MS. CALTON:  Okay.  Well, I think they've given ample

15   cause to deny the extension by sleeping on their obligation of

16   due diligence to initiate service.  And any more extension

17   should be denied.

18             THE COURT:  Okay.  Of course, in Zapata, the service

19   was after the period expired and there was no attempt to

20   request service within the period.

21             MS. CALTON:  Yes.  But the standard or framework in

22   which you evaluate it did go where you -- yep.  You presume

23   that there will be prejudice to the plaintiff because their

24   claim will be time barred.  But you also have to presume

25   prejudice.  And then you have to start weighing those.  You

25

1      can't say that there's no prejudice to the defendant.

2              THE COURT:  Okay.

3              MR. HUTCHINSON:  Your Honor, I'll try to address just

4      some of the issues that seem to be of concern to the Court.

5              THE COURT:  Okay.

6              MR. HUTCHINSON:  And again, my name is Donald

7      Hutchinson and I represent Kostal of America Inc. and Kostal

8      Mexicana, S.A. de C.V.  I'll call them Kostal America and

9      Kostal Mexico.

10             Your Honor, with respect to the issue of prejudice,

11     is the issue of prejudice just based on a measure of where we

12     are today as opposed to 240 days down the road or does the

13     issue of prejudice going back to the time these complaints were

14     filed -- what's the two tests for today's motion?

15             THE COURT:  Right.

16             MR. HUTCHINSON:  I think that the argument that we

17     have made in opposition to this motion is that the whole period

18     of prejudice is relevant because the whole procedure that

19     started in August of 2007 was an intentional scheme to deny

20     notice to these defendants.  The purpose of filing these papers

21     under seal, the purpose of delaying the issuance of summons,

22     the purpose of extending the deadline to serve a summons and

23     complaint has been expressed in every one of the motions that

24     has been filed on this respect as to not interrupt the debtors'

25     negotiations with these people that might be potential

26

1   preference defendants, the debtors' ongoing business

2   relationships with these people.  The whole purpose, again,

3   expressed is to deceive these defendants and to make them

4   believe that they are not being sued.  And I can speak -- I

5   can't speak for Ms. Calton's clients but --

6           THE COURT:  Wasn't the motion on notice?

7           MR. HUTCHINSON:  It was not noticed to my client.

8   They knew nothing about this, any of this, until two days ago

9   for Kostal Mexico and three days ago for Kostal America.

10          You know, the debtors did rush out and they did --

11  with respect to our clients, they did, on March 18th, request

12  for the first time the issuance of the summons in our adversary

13  proceeding.  The summons was issued on the 24th and on that

14  same day, they made an attempt of sort to serve the summons and

15  complaint on both Kostal America and Kostal Mexico.  They

16  actual did effectuate service and process on Kostal America so

17  this motion is moot with respect to Kostal America.

18          THE COURT:  Right.

19          MR. HUTCHINSON:  With respect to Kostal Mexico, what

20  they attempted to do is they attempted to mail a copy to an

21  address in Alabama where they thought Kostal Mexico had a place

22  of business and officers who might be able to accept process.

23  And then they also sent a Federal Express package down to

24  Juarez where our client is located in Mexico.

25          So they had in mind, at least, the means --

1          THE COURT:  So what was needed to serve them in

2     Mexico?

3          MR. HUTCHINSON:  They had to go through the Inter-

4     American Conference which is like the Hague Convention.  You

5     have to go through the Mexican court.  You have to get the

6     Court to -- you have this Court communicate to the Mexican

7     court and the Mexican court will take the documents and

8     translate them into Spanish and the Mexican court --

9          THE COURT:  Well, I thought that you could have it

10    translated by -- the Court doesn't translate them, right?  I

11    thought you have them --

12         MR. HUTCHINSON:  I am not one hundred percent sure

13    because I'm told that the Inter-American -- I forgot the name

14    of the document but it's not the Hague Convention that applies.

15         THE COURT:  No.  It's the Inter-American Conference.

16         MR. HUTCHINSON:  And I'm not one hundred percent

17    familiar with that particular convention.

18         But short of the -- what I'm trying to say with

19    respect to what they did on March 24th is they did, at this

20    point, have an idea of how they might get some notice to Kostal

21    America and Kostal Mexico, but they didn't bother to do that in

22    August of 2007.  And that's why --

23         THE COURT:  I'm sorry.  They didn't bother to do that

24    until --

25         MR. HUTCHINSON:  In August of 2007 when they were --

28

1          THE COURT:  All right.  But I have to say -- excuse

2     me.  There was a motion filed then.  And it wasn't a motion to

3     deceive.  All right?  I would not have approved a motion to

4     deceive.  It was a motion signed off on by the unsecured

5     creditors' committee saying that there's a recognition that

6     there's a two year statute of limitation and also recognizing

7     that, at the time, the plan was going to pay creditors a

8     hundred cents on the dollar and that it didn't really make

9     sense for creditors to have to hire people like you to defend

10    them in a situation where it was likely to be moot.

11          MR. HUTCHINSON:  It could --

12          THE COURT:  And it was on very wide notice.  I accept

13    that it wasn't on notice to your client.  But there were lots

14    and lots of potential recipients of references who got actual

15    notice of it.  And there were no objections.  Everyone was

16    delighted not to be sued.  They understood.

17          MR. HUTCHINSON:  Well, but it could have been

18    accomplished in -- the steps that were taken were not -- one,

19    the papers were filed under seal.  Two, the Court was

20    instructed to issue a summons --

21          THE COURT:  The adversaries were filed under the

22    seal --

23          MR. HUTCHINSON:  Right.

24          THE COURT:  -- not the motion for approval of it.

25          MR. HUTCHINSON:  No.  I understand that.  But let me

1    say, there were three steps taken.  One was to file the

2    documents under seal.  The second was to defer the issuance of

3    the summons.  And the third was to defer the time period for

4    the debtor to file -- or to serve the summons and complaint.

5    The latter two steps were the only two things that were

6    necessary to accomplish the laudatory purpose of not requiring

7    the debtors and defendants to engage in litigation that might

8    never be pursued.  There was no reason --

9            THE COURT:  What's the first thing --

10           MR. HUTCHINSON:  -- to seal the documents.

11           THE COURT:  What's the first thing a client does when

12   it gets a summons and a complaint?

13           MR. HUTCHINSON:  Investigates the matter.

14           THE COURT:  And hires a lawyer.

15           MR. HUTCHINSON:  And hires a lawyer.

16           THE COURT:  All right.

17           MR. HUTCHINSON:  But if the clients had been notified

18   that complaints had been filed but they might not be pursued,

19   that the Court has authorized and directed that summons shall

20   not be issued and that the debtors are not going to be required

21   to file and serve a summons because the debtors might never be

22   pursuing these actions, that is something that gives notice to

23   the potential defendants that there might be a lawsuit down the

24   road and if they need to take steps to preserve their knowledge

25   and record, they should do so.  Or if they want to take steps

30

1    to resolve the matter, they can do that.  But at the same time,

2    not waste their time if they want to take the chance that the

3    lawsuits will go forward.  This filing under seal -- the only

4    purpose that you can attach to that is to keep the matter away

5    from the potential defendants, keep them from knowing that

6    they're targets of a lawsuit.

7            THE COURT:  I guess I come back to my basic question,

8    though, which is aren't all those arguments properly made in

9    two other contexts, either a motion to vacate those orders or,

10   alternatively, for the Court, when it gets to issues of

11   evidence, to -- and, of course, 547 has both its own

12   requirements which the debtor has to prove and affirmative

13   defenses.  So I'm assuming this would come in more likely in

14   affirmative defenses to shift the burden onto the debtor

15   because there's the evidentiary issue.  It seems to me that,

16   given the existence of the orders and the extensive history of

17   those orders which we're just barely the scratching the surface

18   of now, that those sorts of arguments really are out of place

19   here where the deadline is already established by that order

20   and that the focus really should be on the next 240 days or

21   whatever date they're requesting.

22           MR. HUTCHINSON:  I agree that the two situations that

23   you described are certainly appropriate times and places to

24   discuss the issue that we're talking about.  But I think that

25   this is also an appropriate time.  And if I have an argument

31

1    why that whole history is relevant to today's motion, my

2    argument is that this step, the step that they seek to take

3    today, is a step to continue the chain of, really -- if it

4    wasn't intentional, it was de facto deception.

5            THE COURT:  But on the prejudice point, if we're

6    just -- I mean, I think you have to make that argument because

7    as of the date that your client got this motion, they knew

8    there was a complaint.

9            MR. HUTCHINSON:  Yes.

10           THE COURT:  So there's no -- I don't know where the

11   prejudice would be from here to the date that they serve it.

12   Was there any prejudice then?

13           MR. HUTCHINSON:  Well, no, probably not.

14           THE COURT:  So -- okay.

15           MR. HUTCHINSON:  So that's my argument.  If you don't

16   accept it, you don't accept it and I'll move on.

17           THE COURT:  Okay.  No.  I appreciate that.

18           MR. HUTCHINSON:  With respect, though -- with respect

19   to the other argument, the -- as I said, with respect to Kostal

20   America -- and part of the reason I'm here, Your Honor, is

21   because I didn't want to be, by my absence, waiving any --

22           THE COURT:  No.  You're not as I made clear to

23   Prudential's counsel.  That's not it.

24           MR. HUTCHINSON:  Or both by my presence, I don't mean

25   to waive any of those arguments --

32

1          THE COURT:  You're not.  I hope I made that clear

2     with Prudential.  It's the same with you.

3          MR. HUTCHINSON:  But I also am concerned about this

4     present motion.  And this deception and prejudice argument is

5     but one point.  The other is that whether or not Rule 4(m) is

6     applicable to service in a foreign country and whether there's

7     any deadline with respect to service in a foreign country.

8     Well, the previous motions that have granted that extension

9     represented to the Court that the reason for it is because

10    service in a foreign country takes time.  So those prior orders

11    that did set deadlines, I think, it's really quite ambiguous as

12    to whether or not they apply to service in a foreign country.

13    I mean, the debtor was requesting an extension of the deadline

14    to serve foreign defendants but if there was no deadline then

15    why were they requesting it and why was it necessary to enter

16    orders.

17          THE COURT:  Well, I mean, it didn't matter, right?

18    It's kind of ice in winter.

19          MR. HUTCHINSON:  Pardon me?

20          THE COURT:  It didn't matter.  If they didn't need

21    it --

22          MR. HUTCHINSON:  Then it was just an exercise --

23          THE COURT:  Then it was just ice in winter.  It was a

24    comfort order to them.

25          MR. HUTCHINSON:  An exercise in futility or

33

1    something, I don't know.

2           THE COURT:  Well, it's an exercise -- I mean, I

3    guess -- the same thought crossed my mind.  If there's no

4    deadline, why did the debtors ask for this with regard to

5    foreign --

6           MR. HUTCHINSON:  Yeah.

7           THE COURT:  -- foreign defendants at all.  There is,

8    obviously, an issue as to whether it applies or not.  Some

9    courts say it does; some courts say it doesn't.  If it doesn't,

10   I don't see how anyone's hurt, right?  I mean --

11          MR. HUTCHINSON:  Right.

12          THE COURT:  -- if it doesn't apply, if there's no

13   deadline then no one's hurt.

14          MR. HUTCHINSON:  Well, what I think all of the cases

15   do say -- I think what all of the cases do say, if there is no

16   deadline then I think what happens then is when the plaintiff

17   does effect service in a foreign country pursuant to the

18   appropriate treaty then that defendant is free to come in and

19   say, well, although there isn't an explicit deadline, it was

20   too late and I'm prejudiced.  And so then --

21          THE COURT:  But again, it comes back --

22          MR. HUTCHINSON:  -- our evidence --

23          THE COURT:  It comes back to prejudice in conducting

24   the lawsuit, right?

25          MR. HUTCHINSON:  Pardon me?

34

1      THE COURT:  Then it comes back to prejudice in

2   conducting the lawsuit.

3      MR. HUTCHINSON:  Right.  And then you go back to the

4   whole thing because it's a -- the courts' other orders weren't

5   really -- you know, all the orders, the order they're

6   requesting today and the previous order, said the deadline

7   under 4(m) is extended.

8      THE COURT:  But if there's no deadline, it doesn't

9   mean anything.

10      MR. HUTCHINSON:  Right.  So then the defendant, when

11   we get served in 240 days --

12      THE COURT:  Right.

13      MR. HUTCHINSON:  -- will come in and we'll say, well,

14   you know what, this is -- this service is untimely.  And --

15   based on equitable arguments that have been justified in the

16   other courts.  And we'll say they have the complaints on file

17   in 2007 and it's 2010 now.

18      THE COURT:  But isn't the standard on such a

19   motion -- I mean, everyone agrees that 4(f) and not 4(m)

20   applies to individuals, right?  So in an individual context

21   like that, isn't the standard actually more flexible?  Isn't

22   the Court supposed to weigh -- I mean, isn't there a general --

23      MR. HUTCHINSON:  Oh, yeah.  I'm saying that there

24   would be a flexible standard.

25      THE COURT:  I mean, it's more flexible than 4(m).

35

1           MR. HUTCHINSON:  Yeah.  I'm saying that there would

2      be a flexible standard.

3           THE COURT:  All right.  Well --

4           MR. HUTCHINSON:  If that's the way it is --

5           THE COURT:  -- it would seem to me that -- well, that

6      raises an interesting issue.  And you were talking about not

7      wanting to waive rights.

8           MR. HUTCHINSON:  Yeah.  I don't want to waive rights.

9           THE COURT:  So let me -- I should pose the same

10     question to DPH on this.  If, in fact, it turns out that 4(f)

11     applies and not 4(m), so therefore there's really no deadline

12     except sort of a sense of what's fair, is this motion really

13     moot and you'll deal with it on a case by case basis when you

14     get people's answer?

15          MR. HUTCHINSON:  Your Honor, even if the rules don't

16     provide a deadline, we've conducted ourselves as though --

17          THE COURT:  You said there's an order -- there's a

18     deadline in the order?

19          MR. HUTCHINSON:  -- the third extension order sets a

20     deadline.  And so, perhaps there is an element of this motion

21     that is an abundance of caution.  But certainly in light of

22     that deadline, we didn't want to let the deadline lapse without

23     making some motion to call to the Court's attention the issue

24     of foreign service.

25          THE COURT:  So the only issue that would be preserved

1    here, if I rule in the debtors' favor, in your view, would be

2    not issues based on inadequacy of service but rather issues

3    with respect to any attempt to vacate the prior orders and have

4    the limitations period apply or issues with regard to perhaps

5    shifting the burden of proof if people make a case that because

6    of the delay, they shouldn't be put to the affirmative task of

7    showing, for example, ordinary course or new value if the

8    amount of the delay they're -- when this disappeared.

9        MR. HUTCHINSON:  Your Honor, yes.  Our position is

10   that to the extent that any defendant argues that they've been

11   prejudiced as a result of the delay that preceded this motion,

12   they preserve those arguments and those arguments may

13   appropriately be presented at any of the various forums that

14   Your Honor suggested.

15       THE COURT:  i.e., in my -- now I'm assuming, for sake

16   of argument, 4(m) applies.  And in my weighing of the factors,

17   one of the factors being prejudice, that weighing exercise is

18   not necessarily collateral estoppel for purposes of an argument

19   about the -- either a discovery dispute or the weighing of

20   evidence or a party's burden.

21       MR. HUTCHINSON:  Correct, Your Honor.  And if the

22   parties focus on the prejudice -- and I don't believe there's

23   been any showing of prejudice that follows this motion --

24       THE COURT:  Well, that's true.

25       MR. HUTCHINSON:  -- then it makes clear that anything

1    that preceded this motion is an argument that's preserved.

2         THE COURT:  That's probably the better way to look at

3    it.  The debtors' view is that the only prejudice that I should

4    be weighing here is the prejudice over the next 240 days not

5    the prior period.

6         MR. HUTCHINSON:  Exactly, Your Honor.

7         THE COURT:  Okay.  All right.

8         MR. HUTCHINSON:  I did have one --

9         THE COURT:  In which case, clearly, there'd be no

10   collateral estoppel issue because that's not even at issue here

11   then.  All right.

12        MR. HUTCHINSON:  Your Honor, I did have some more to

13   say and I'll try to be quick with it.

14        THE COURT:  Okay.  Go ahead.  That's fine.

15        MR. HUTCHINSON:  With respect to the request, if the

16   debtors are then continuing to request an extension of a

17   deadline or get a comfort order with respect to foreign

18   defendants --

19        THE COURT:  Right.

20        MR. HUTCHINSON:  -- then there's still -- it seems to

21   me there's still some showing that needs to be made that they

22   deserve such an extension.  And I think that the history here

23   does not support a showing that they deserve an extension.  And

24   as Ms. Calton described during her presentation, I don't

25   understand why the debtors waited until two weeks until the

38

1    expiration of the current deadline even to request the issuance

2    of a summons.  That doesn't --

3         THE COURT:  Okay.

4         MR. HUTCHINSON:  That doesn't -- you know, there's

5    got to be some explanation for that that's not been said or --

6    in any of the papers or today.  And if there is a reason, I'd

7    like to know what that is.  But they could have easily have

8    requested all of those immediately after the Court entered the

9    last order or, I think, back in April of 2008 when the funding

10   for the reorganization plan fell through in the first place.  I

11   just don't see any explanation for that.  And it seems to me

12   not -- what's happened here is it has the appearance of

13   nonchalance and that the Court will grant any extension that

14   the debtors want.  And maybe there's something that I'm not

15   seeing.  But --

16        THE COURT:  Okay.

17        MR. HUTCHINSON:  And then the last thing is, as Ms.

18   Calton said, the papers that were filed initially in August of

19   2007 requested authority without further procedures to abandon

20   claims for preferences for -- against -- for payments to

21   foreign suppliers of the debtors.  That was explicit in that

22   motion and the Court ordered granting that motion, explicitly

23   granted that authority.  And I don't understand why those

24   claims are still alive in light of that.  And some showing has

25   to be made, I think, for the purpose of this motion why those

39

1   claims are alive.  And I don't think anything's been said about

2   that.

3           THE COURT:  Okay.  All right.  So why don't we turn

4   to the first question.  Why did the debtors wait until mid-

5   March to start some of these foreign service of process efforts

6   when, clearly, it takes longer than a month to do it?

7           MR. FISHER:  Your Honor, to that point, I would point

8   out, first, even if we had asked for these summonses a month

9   ago or two months ago, we would still be before Your Honor

10  asking for an extension of the deadline because of how long it

11  takes --

12          THE COURT:  Right.

13          MR. FISHER:  -- to complete foreign service.

14  Following consummation of the plan --

15          THE COURT:  But you could say that if you started the

16  process on April 4th, too.  I mean, there's some point where it

17  just doesn't look right.

18          MR. FISHER:  Well, the final order entered by Your

19  Honor was in October 2009.

20          THE COURT:  Right.

21          MR. FISHER:  And it contemplated that following the

22  effective date, these summonses and complaints would be

23  unsealed and the service process would begin.

24          THE COURT:  Right.

25          MR. FISHER:  Beginning in October 2009 and for the

40

1    months following, the reorganized debtors' resources were

2    extremely taxed with pursuing the transactions that had to be

3    completed in order to realize their emergence from

4    reorganization.  The debtors engaged new counsel to prosecute

5    these preference cases and we proceeded to have these cases

6    unsealed and served in an expeditious manner under the

7    circumstances.  Given the age of the cases, in a number of

8    instances, we've had to do a certain amount of research to

9    understand what's happened to these entities during the period

10   since August 2007.

11           And in terms of -- and --

12           THE COURT:  But is that -- but these are the big

13   ones, right?  I mean, that's --

14           MR. FISHER:  So to that point, Your Honor, we had to

15   make a choice.  We couldn't launch all 177 actions at once.  It

16   would have been taxing to the clerk's office.  It would have

17   been taxing to the resources of the debtors.  And so, we

18   divided them up into tranches.  I suppose that we could have

19   made a choice alphabetically.  We could have made a choice

20   otherwise.  We did, in fact, roll out the cases in ascending

21   order of the value of the claims at issue.  I think that if we

22   had focused on the fact that some of these higher dollar value

23   defendants were foreign defendants, perhaps we could have

24   moved -- we could have sought to have them unsealed earlier but

25   we simply didn't.

41

1          In terms of the standard, I think that there's been

2    some confusion about what it is that we need to show to get an

3    extension of the deadline assuming there is a deadline, of

4    course.  And certainly, we can make a showing of good cause and

5    then in the absence of prejudice, the Court is required to

6    grant the extension.  Here, the good cause is simply the length

7    of time that it takes to complete foreign service.  But even

8    without a showing of good cause, Your Honor, in the absence of

9    prejudice, the Court has discretion, by analogy to Rule 4(m),

10   to extend the deadline.

11          THE COURT:  Okay.

12          MR. MCDOWELL (TELEPHONICALLY):  Your Honor?

13          THE COURT:  I'm sorry --

14          MR. MCDOWELL:  Your Honor?

15          MR. FISHER:  Oh.

16          THE COURT:  Oh.  Who's this?

17          MR. FISHER:  Is someone on the phone?

18          THE COURT:  Yeah.  Is someone on the phone?

19          MR. MCDOWELL:  Yeah.  Excuse me, Your Honor.  Ralph

20   McDowell for Freudenberg --

21          THE COURT:  Oh, yes, of course.

22          MR. MCDOWELL:  It's harder when I'm not there to see

23   exactly what's going on.  Could I just speak briefly?

24          THE COURT:  Well, I had another question for the

25   debtor.  The second question that counsel raised, which was a

1    good one, is at least in some of the cases, one of the factors

2    that Courts consider is whether the lawsuit is frivolous.  And

3    the objectors here have said we're -- these causes of action

4    have already been abandoned.  So what is the response to that?

5              MR. FISHER:  As Your Honor indicated, we are, in this

6    hearing, skating along the surface of the issues that

7    surrounded entry of the three preservation orders.

8              THE COURT:  Right.

9              MR. FISHER:  As to a certain class of foreign

10   suppliers, the debtors sought authorization to abandon certain

11   potential claims against them.  The debtors never, in fact,

12   abandoned those claims.  And to the extent that this is some

13   sort of collateral estoppel type argument --

14             THE COURT:  But wasn't authorization granted?

15             MR. FISHER:  Authorization to abandon certain claims

16   against certain foreign suppliers was granted, Your Honor.

17             THE COURT:  Okay.

18             MR. FISHER:  Specifically, with regard to the issue

19   of the abandonment, I'd like to defer to my colleague, Mr.

20   Geoghan, from the Togut law firm.

21             THE COURT:  Okay.

22             MR. GEOGHAN:  Good morning, Your Honor.  Dan Geoghan

23   from Togut, Segal & Segal.  Your Honor, while it's true the

24   motion was filed seeking authorization to abandon certain

25   transfers to foreign suppliers, the order entered did not

43

1    direct the debtors to do so, number one.  Number two, that

2    ordered entered on August of 2007 -- these complaints were

3    filed in late September of 2007.  Clearly, these claims were

4    not abandoned.  They were preserved and kept.  The category of

5    foreign suppliers that were not pursued did not include the

6    defendants.  They were not abandoned.

7            THE COURT:  All right.  So it's -- it'll be your

8    position that the relief sought that was granted in the August

9    letter didn't pertain to these lawsuits?

10           MR. GEOGHAN:  Your Honor, I wouldn't say that the

11   relief sought in the August order doesn't pertain at all to

12   these lawsuits.  But I would say, as to the debtors' decisions

13   as to which foreign suppliers to abandon did not include these

14   defendants.

15           THE COURT:  Okay.  All right.

16           MR. HUTCHINSON:  Well, Your Honor, the motion said to

17   the contrary.  The motion said the debtor had made the

18   determination that it is not worthwhile to pursue lawsuits

19   against foreign -- for payments to foreign suppliers.  That's

20   what it says.

21           MS. CALTON:  It's paragraph 26 of the motion.

22           MR. HUTCHINSON:  Oh, I'll read it.  "In addition, the

23   debtors seek authority to abandon the following categories of

24   potential preference actions which the debtors, in their

25   business judgment, have decided should not be pursued."  And

44

1    the subcategory is Roman numerals.  And number (ix) is

2    "Payments to Foreign Suppliers".  Again, "the debtors in their

3    business judgment, have decided should not be pursued".

4    Payments to foreign suppliers.

5            MR. GEOGHAN:  Your Honor, if I may, to reiterate one

6    point and make a second, first, to reiterate, I appreciate

7    that's what -- the motion sought that authorization.  These

8    claims were clearly not abandoned.  They were maintained --

9            THE COURT:  You're taking the view that there was a

10   category of claims in which you were authorized to abandon but

11   then you had to take some affirmative action to actually

12   abandon them?

13           MR. GEOGHAN:  Well, we didn't file a complaint

14   against them, Your Honor.  We abandoned them.  They were left

15   behind the statute of limitations.

16           THE COURT:  Okay.  Well, I don't -- does anyone have

17   the actual order?

18           MS. CALTON:  Yes, Your Honor.

19           THE COURT:  Is it attached to -- it's attached as an

20   exhibit?

21           MS. CALTON:  I have an extra copy that I could pass

22   up, if it's okay.

23           THE COURT:  Well, I thought it was attached as an

24   exhibit to your motion.  But --

25           MS. CALTON:  No.  It got attached to the --

45

1          THE COURT:  But I'm kind of fumbling around here so I

2     don't -- I can't find it.

3          MS. CALTON:  I quoted it.

4          THE COURT:  If you could give me the copy, that would

5     be great.  Thank you.

6        (Pause)

7          THE COURT:  All right.  But this doesn't fall under

8     that additional category where you have the notice mechanism,

9     right?

10          MS. CALTON:  I have the motion if you'd like to see

11     how they had before --

12          THE COURT:  No.  I was just -- you're not saying that

13     this --

14          MR. GEOGHAN:  Your Honor, I'm sorry.  What was the

15     question?

16          THE COURT:  Are you saying that these causes of

17     action fall into the additional categories where this mechanism

18     to provide notice to the creditors' committee and the equity

19     committee -- and if they say it's okay then they can be

20     abandoned?

21          MR. GEOGHAN:  No, Your Honor.  I don't believe that

22     is what I'm saying.

23          THE COURT:  Okay.

24          MR. GEOGHAN:  I am saying that the category that was

25     described at -- excuse me -- that the intent of the motion was

46

1   to seek authorization to abandon these -- to abandon transfers

2   and certain parties.  But it didn't direct -- it didn't seek

3   the Court to direct that we abandon them.

4           THE COURT:  But the Court doesn't direct abandonment.

5   You get authority to abandon because you're abandoning.

6           MR. GEOGHAN:  Yes, Your Honor.  But clearly, in this

7   case, these were not abandoned.  In addition, Your Honor --

8           THE COURT:  But how could it be not abandoned when

9   you've got authority to abandon them?  I mean, what more do you

10  need?

11          MR. GEOGHAN:  Your Honor, we would have needed to not

12  file the complaint against the foreign suppliers.  In addition,

13  Your Honor, the -- I don't believe these parties were part of

14  the group of foreign suppliers that the debtors were intending

15  to abandon.

16          THE COURT:  But the motion didn't say that, right?

17          MR. GEOGHAN:  Well, the motion might not have --

18          THE COURT:  Did it specify out types of categories

19  that weren't going to be abandoned by type of supplier?

20          MR. GEOGHAN:  Excuse me?

21          THE COURT:  Did the motion -- I don't think the

22  motion carved out types of foreign suppliers against whose

23  claims weren't going to be abandoned, did it?

24          MR. GEOGHAN:  No, Your Honor.  I don't believe it

25  did.  But it -- again, two points.  It did not seek an order

1   abandoning them -- authority to abandon them in its discretion.

2           MR. HUTCHINSON:  It doesn't say that either.

3           MR. GEOGHAN:  And, Your Honor, the group of

4   suppliers --

5           MS. CALTON:  It already exercised it.

6           MR. GEOGHAN:  -- it was directed at was not simply a

7   matter of all foreign suppliers.  It was directed at suppliers

8   that received payments pursuant to certain first day orders,

9   that being the foreign creditors.

10          THE COURT:  No.  That I understand.  I understand

11  that point.  I'm having trouble following the other point.  I

12  mean, the motion doesn't say we're seeking authority but we may

13  not use it, right?  It doesn't say that.  It says we're seeking

14  authority to abandon.

15          MR. GEOGHAN:  Correct, Your Honor.  I don't believe

16  it says that -- they were seeking the authority.  But again,

17  Your Honor, they also -- the order also does not say -- the

18  order does not say the debtors are abandoned.  And clearly --

19  again, Your Honor, clearly -- and there were not many, as Your

20  Honor can see, from the number of foreign defendants that have

21  shown up, there were not many that were abandoned.  Excuse me.

22  There were not many that were preserved.

23          THE COURT:  Okay.

24      (Pause)

25          MR. GEOGHAN:  Yeah.  And let me add, in response to

48

1    what Ms. Calton just mentioned, there were approximately forty-

2    two.  There were 11,000 potential defendants.

3            THE COURT:  All right.

4            MS. CALTON:  Your Honor, could I just make one big

5    point?  He said that they were authorized to exercise their

6    discretion after the order.  However, in paragraph 26, they

7    said they've already exercised their discretion and decided not

8    to pursue them.  So I don't think that's correct.

9            MR. GEOGHAN:  Your Honor, may -- I have one other

10   point.  I don't believe, and particularly with regard to the

11   Kostal defendants, that there's any reliance on this.  Even

12   if -- I'm not sure what the argument would be in that regard.

13   They alleged they were not served with the order so they had no

14   reliance on it.

15           THE COURT:  No.  It's a different point.  It's not a

16   reliance point.  It's -- again, there's no reason to extend a

17   deadline to serve if the underlying lawsuit if frivolous.  I'm

18   not sure it is frivolous.  But that's the context that this is

19   being raised in.

20           MR. GEOGHAN:  And again, Your Honor, I don't believe

21   they are frivolous.  The debtors preserved these assets.  In

22   some cases, they are substantial.

23           THE COURT:  Okay.

24           MR. GEOGHAN:  Thank you.

25           THE COURT:  All right.  Mr. McDowell, you were going

1   to say something?

2          MR. MCDOWELL:  Yes.  Thank you, Your Honor.  Just

3   briefly, I concur with counsel for the other defendants.  My

4   case is a little bit different.  My defendants are an adversary

5   proceeding, 07-02783.  And as noted in our objection, the

6   claims against my clients were released over five years ago.

7   So this falls clearly into the category that you're discussing

8   now in terms of frivolous complaints.  We should not have to

9   receive the complaint, deal with it, answer it, file a motion

10  to dismiss or anything else.  We attached to the agreement that

11  we negotiated with Mr. Geoghan's firm that has a very clear

12  brief in it.  And so, no extension should apply.  In fact, our

13  case should be dismissed.

14          THE COURT:  What's the debtors' response to that?

15          MR. FISHER:  Your Honor, I haven't seen the objection

16  about which counsel on the phone is speaking.  I can certainly

17  tell the Court that we have no interest in pursuing frivolous

18  actions and that if, in fact, as to this defendant there is a

19  release, we are happy to confer with counsel, look at what

20  counsel's argument is and if, in fact, the release applies to

21  this action, discontinue the action.  But I simply don't know

22  enough about the facts to which counsel on the phone is

23  referring.

24          MR. MCDOWELL:  Your Honor, we, like the other

25  defendants, we did not know about the motion because it wasn't

50

1   served although we have been toiling in this case for four and

2   a half years, five years with these debtors.

3          THE COURT:  I'm sorry.  Which motion are you

4   referring to as not being served?

5          MR. MCDOWELL:  The present motion to extend the time

6   in our adversary proceeding.

7          THE COURT:  Okay.

8          MR. MCDOWELL:  And so, as soon as we found out about

9   it on Friday, we placed a call to Mr. Fisher's office.  None of

10  them -- he was out of town so we upped the call to colleagues.

11  But those weren't returned.  And it is unfair for all of the

12  numerous responses -- actions that we've had to take in this

13  case over the years, we have had to respond to all of --

14         THE COURT:  Okay.  Well, I'm not holding you to

15  having to have replied or objected to the motion other than

16  your objecting orally in court.  I haven't seen the objection

17  either.  What is the release that you're relying on?

18         MR. MCDOWELL:  Your Honor, there was an agreement

19  which calls for the assumption of our contract which, of

20  course, is clear evidence that there's no preference.

21         THE COURT:  Oh.  Well, all right.  Yeah, you're

22  right.  If your contract was assumed then you're not going to

23  have a preference in respect of payments in the contract that

24  was assumed.

25         MR. MCDOWELL:  But there's also just a flat out

1   release --

2          THE COURT:  And you can't see but the debtors are

3   nodding their -- the debtors' boys are nodding their heads at

4   that.

5          MR. MCDOWELL:  Yes.  But again, Your Honor, we've

6   been run through the ringer on the case.  And to have to

7   respond to the complaint, where is the due diligence on their

8   part to say, wait a minute, we released these guys?  Why are we

9   pursuing a lawsuit against them.  And the thirteen million

10  dollars, it can't be ignored.  It needs to be dealt with.  But

11  why should we have to respond?  And again, it seems --

12         THE COURT:  Was your client -- were these payments in

13  respect of that contract?

14         MR. MCDOWELL:  Your Honor --

15         THE COURT:  Would your client have other contractual

16  relationships with the debtor?

17         MR. MCDOWELL:  My client would not, Your Honor.  The

18  complaint is not detailed.  It has very, very little

19  information about the transfers.

20         THE COURT:  All right.  Well, I think with regard to

21  your issue, it seems to me that if, in fact, the payments are

22  in respect of a contract that was assumed -- the payments that

23  are now being challenged are in respect of a contract that was

24  assumed during the bankruptcy case, then I would deny the

25  debtors' motion with regard to your adversary proceeding.

52

1           If the payments were in respect of other obligations,

2     other antecedent debt, then -- obligations arising under a

3     contract that was assumed during the bankruptcy case, under

4     365, then my inclination is to extend the service date with

5     regard to your client but only thirty days so that the debtor

6     can review the release that you'd be relying on separate and

7     apart from assumption.  And I would have a hearing before that

8     thirty-day period would expire.  And my belief is that if the

9     release is clear, the whole thing will become moot because the

10    debtor won't be pursuing the adversary proceeding.

11          MR. MCDOWELL:  So the hearing that you speak of, Your

12    Honor, would be like a status conference or --

13          THE COURT:  Well, it would have to be a hearing

14    because there'd be a deadline.  But it just seems to me that

15    this is -- what you're referring to is a different level of

16    issue than the abandonment order issue.  It's clearer to me --

17    well, it's crystal clear that if the payment is in respect of

18    an assumed contract then there's no issue.  It also seems to me

19    that when the debtors' lawyers have the opportunity to review

20    the release, they'll know one way or the other whether it

21    applies and will either drop the lawsuit 'cause it's been

22    released or present to you and to me a reason why they

23    shouldn't.

24          But you're saying you actually have a written release

25    that's part of the assumption?

1          MR. MCDOWELL:  Yes, Your Honor.  It clearly says that

2     there is a release with respect to assumed contracts and any

3     other 547.

4          THE COURT:  Okay.

5          MR. MCDOWELL:  Again, it --

6          THE COURT:  All right.  Well, then -- and that was

7     approved by order of the Court?

8          MR. MCDOWELL:  It was -- Your Honor, it was approved

9     as part of the -- there was a procedure under the orders of the

10    Court regarding assumption and --

11         THE COURT:  Right.

12         MR. MCDOWELL:  -- critical vendors.

13         THE COURT:  Okay.  All right.  So that's my

14    inclination with regard to your objection -- which, again, I

15    haven't seen either.  And I'm not faulting you for it.  This

16    was brought on on short notice.

17         MR. MCDOWELL:  Yeah.  We filed it in the adversary

18    proceeding, Your Honor, which is where the motion that we

19    didn't receive was filed.

20         THE COURT:  Okay.  Fine.  Okay.  All right.  Well, is

21    there anything else?

22         MR. HUTCHINSON:  Just one thing, Your Honor.  Again,

23    when they talked about the diligence that they've been

24    exercising to pursue -- to get these cases going and get the

25    deposits going, they say that 177 cases is just too much to hit

54

1    the courts with.  But, you know, in this court alone, I'm

2    familiar with, I believe, in the Ames case, there were 1500

3    preference lawsuits.  I think in the Tower Automotive case,

4    there were 1600.

5            THE COURT:  Oh, I agree with that.  On the other

6    hand, it's unrebutted that perhaps because of all the other

7    lawsuits that are happening and all the other activity that is

8    happening, as of the date the motion was made, the clerk's

9    office wasn't able to process twenty-one of them.  So, you

10   know, you all don't see this but -- because normally, these

11   matters are on omnibus days.  But the sheer number of lift stay

12   motions over the last six months has gone up, I'd say, ten-

13   fold.  Where I used to have two or three a week, I now have

14   fifty a week.  So I think that -- that doesn't take the onus

15   off the debtor.  But it does take some onus off the clerk's

16   office, I think.

17           Okay.  I have a motion before me by DPH Holdings

18   Corporation, which is the successor under Delphi Inc. and its

19   related debtors' confirmed and effective Chapter 11 plan, to

20   the debtors' rights in respect of avoidance proceedings for

21   further extension of its date to serve or cause the service of

22   summons and complaint in adversary proceedings that were

23   commenced, in fact, years ago.

24           The motion originally sought approval of the

25   extension of time to serve sixty-two defendants.  Those

55

1    defendants fell into three categories.  There has been no

2    objection to the motion with respect to two of those categories

3    and I'll address those first.  They are, first, actions in

4    which the clerk of the court has not yet issued a summons and,

5    second, actions in which service was attempted at the best

6    addresses available to DPH but not completed, it appears in

7    each case, because of either the change in location of the

8    defendant without reasonable basis for the debtor to know about

9    change in location or, more likely, the dissolution of the

10   defendant.

11        In the first category, the clerk has been able to

12   issue summonses on all but one action.  My belief is it's

13   probably likely that the clerk will be able to issue the

14   summons in respect of that action also before the April 5th

15   deadline.  But in that case, as well as in the latter category,

16   I believe that an extension of time under Federal Rule 4(m),

17   which applies to these adversary proceedings under Bankruptcy

18   Rule 7004, is appropriate.  These are each domestic

19   corporations or entities -- these defendants are.  And so,

20   therefore, Rule 4(m) clearly applies to them.

21        It appears to me in both cases that the plaintiff,

22   DPH Holdings, has sought to serve the defendants in the two

23   categories in good faith in reliance on the Court's prior

24   orders and -- which extended the deadline to serve them and

25   that the order to serve them during the current period is not

56

1   due to a failing of the claimant.  And therefore, under the

2   words of Rule 4(m), "the Court shall authorize the extension"

3   which, as requested, is for thirty days.

4           The third category of -- and I'm sorry.  Before I

5   continue, Mr. McDowell, I take it from the name of your client

6   that your client is a foreign entity, is that correct?

7           MR. MCDOWELL:  Your Honor, no.

8           THE COURT:  No?

9           MR. MCDOWELL:  Certain of my clients are domestic

10  entities.

11          THE COURT:  Oh, all right.  Well, they had a --

12          MR. MCDOWELL:  And --

13          THE COURT:  Then they're probably covered by this.

14          MR. MCDOWELL:  Well, it's not clear, Your Honor.

15  They mixed everything together.  They have all the names wrong.

16  They have entities that don't exist.  And so, they -- their

17  motion, which they captioned in the main case but then filed in

18  the adversary proceeding so that no one received it -- they

19  have my client listed on Exhibit C just under the name

20  Freudenberg, et al., and the adversary proceeding.

21          THE COURT:  Okay.  But Exhibit C is the foreign ones,

22  right?

23          MR. MCDOWELL:  Correct.

24          THE COURT:  All right.  So I don't believe that your

25  clients would be covered by my ruling on the -- that I just

57

1   gave on the other two categories.  I don't think your client is

2   the one that's not been served yet.  And I would doubt that

3   your client's the one whose service has been returned, address

4   unknown, or unable to deliver.

5          So let me turn to your client now.  The third

6   category of defendants where the debtors' successor, DPH

7   Holdings, has sought an extension of time to serve is

8   Freudenberg-NOK General Partnership?  Is that the correct name?

9          MR. MCDOWELL:  That is a correct name of one of my

10   clients, yes.

11          THE COURT:  Okay.  As well as other entities, I

12   guess, aggregating thirty -- in thirty other actions where the

13   defendants are foreign corporations or foreign entities.  As I

14   said, one of those entities, or perhaps more than one but

15   they're all listed in the same adversary proceeding, I'll refer

16   to the Freudenberg-NOK General Partnership, counsel for

17   Freudenberg has asserted at this hearing that his clients'

18   executory contract, upon which the challenged payments were

19   made, was subsequently assumed during the Chapter 11 case.  If

20   that were, in fact, the case, that is, that the Court approved

21   assumption of the contract, I believe that the lawsuit would be

22   clearly lacking in merit in that it's a condition to the

23   assumption of an executory contract that all defaults under the

24   cured -- which would include, I believe as a matter of res

25   judicata, the requirement that the debtor pay in full the

58

1    resulting claim that would occur if the preference had been

2    avoided which, in essence, would mean that there wouldn't be a

3    basis for a preference in the first place since the claim is

4    paid in full.  I just ruled on this issue and was affirmed by

5    the district court in the Credaire (ph.) Brothers case.  So if,

6    in fact, that is the case, there wouldn't be a basis for

7    pursuing their lawsuit.

8            Counsel also asserts that in the agreement and as

9    part of the assumption, there is a waiver of all preference

10   claims against his clients.  Neither I nor the debtor have been

11   able to examine that release but if, in fact, that release does

12   waive all preference claims or these preference claims then,

13   again, the lawsuit would not have merit.

14           As I'm about to say with regard to the other twenty-

15   nine actions, there is some issue, although it is not entirely

16   clear to me, that the debtors are facing a deadline to serve

17   the thirty complaints against the foreign defendants covered by

18   their motion.  Therefore, this is not, unfortunately, the type

19   of issue that, I believe, is properly deferrable so that the

20   parties can review the underlying documents and determine

21   whether they want to proceed or not with the motion with regard

22   to Freudenberg.  So I believe that it's appropriate to extend

23   the service deadline thirty days but to direct DPH to promptly

24   review with Freudenberg's counsel, Mr. McDowell of Bodman LLP,

25   the details of the assumption of the contract, the alleged

1    avoidable preferences and the asserted release to determine

2    whether they want to pursue the complaint.  And I will not

3    further extend the deadline if I conclude, notwithstanding the

4    debtors' intention to pursue a request for a further

5    extension -- I will not hesitate to deny that request if I

6    believe, in fact, that the lawsuit clearly has no merit.

7         So with regard to Freudenberg, the debtors should get

8    a hearing date roughly twenty-nine or twenty-eight days from

9    now to hear their request for a further extension of the period

10   to serve.  But again, I'm directing them, in the meantime, to

11   try to resolve this issue one way or the other.

12        I have objections from two other creditors that are

13   not now moot that fall into this group of foreign defendants.

14   The so-called Affinia group defendants as well as Kostal

15   Mexicana -- and Kostal Mexicana, S.A. de C.V.  It's

16   acknowledged that the third defendant, the third Kostal

17   defendant, has been served and, therefore, that this motion is

18   moot as to that defendant, Kostal of America, Inc. although the

19   record is clear that Kostal of America, Inc. has preserved all

20   of its rights that don't pertain to this particular motion,

21   including, without limitation, its right to try to seek to

22   vacate the Court's prior orders extending the date to be served

23   of it.

24        There is --

25        MS. CALTON:  Can I point out there's the German Valeo

60

1    also?

2            THE COURT:  Sorry?

3            MS. CALTON:  The German Valeo.

4            THE COURT:  Oh, yes.  They're not in the same

5    complaint but I'm --

6            MS. CALTON:  Yeah.

7            THE COURT:  -- including them in the Affinia group of

8    objectors --

9            MS. CALTON:  Okay.

10           THE COURT:  -- represented by Honigman Miller.

11           The history of this motion is somewhat lengthy and, I

12   believe, ultimately not particularly relevant to the present

13   motion for reasons I'll explain.  But it is relevant in one key

14   respect.  The Delphi debtors, like all Chapter 11 debtors, had

15   a two-year limitations period post-petition, under Section 546

16   of the Bankruptcy Code, to bring actions to avoid preferences,

17   fraudulent transfers and the like.  Faced with that impending

18   deadline and with an analysis that showed in excess of 11,000

19   potential recipients of avoidable transfers, the debtors, with

20   their -- in consultation with their official creditors'

21   committee, determined to seek an order that would allow the

22   debtors to preserve these causes of action notwithstanding the

23   running of is statute of limitations or to -- in light of the

24   statute of limitations running -- excuse me -- but delay the

25   issuance of summonses by the clerk of the court and staying any

1    activity in the adversary actions commenced until service of

2    process and extending the deadline under Federal Rule 4(m) by

3    which the debtors would have to serve process.

4            The Court granted that request by order dated August

5    16th, 2007.  Notwithstanding the number of adversary --

6    potential adversary proceedings they could bring, the debtor

7    actually brought only 742 within the statute of limitations

8    period.  It, even with respect to those 742, did not actively

9    seek, as would have been required by the August 16th, 2007

10   order, to have the summonses issued and proceedings become live

11   and active for two reasons.  The first, which applied at the

12   time the original motion was entered and continued for some

13   time, was the good faith belief shared by all parties in the

14   case that the debtors were on track to confirm and consummate a

15   Chapter 11 plan that would have paid unsecured creditors in

16   full or with at least sufficient value so that it would have

17   made no sense to have actually pursued the avoidance actions or

18   to have caused the defendants in those actions to incur any

19   cost in response.  That situation pertained at least until

20   April of 2008.  In the meantime, the Court had entered an

21   extension (sic), in light of that fact, granting a further

22   extension of the time to serve without prejudice to the

23   debtors' rights to seek further extension.

24           In April of 2008, the investors under the debtors'

25   confirmed Chapter 11 plan announced their intention not to

62

1    close their investment under that plan.  It was not clear at

2    the time whether they could nevertheless be forced to close or

3    whether the debtors' monetary claims against them would force

4    them to close as a practical matter.  In light of that

5    uncertainty, the debtors sought another deadline which was

6    granted in a second extension order dated April 30th, 2008 of

7    the time to serve 742 complaints.

8         It became clear during the course, the remaining

9    course of 2008, that the plan investors were not going to close

10   the plan or a closely similar modified plan and, instead, the

11   debtors turned their attention to a new plan.  During this

12   period, the debtors also narrowed down the number of potential

13   proceedings that they determined to pursue but delayed the

14   prosecution of to 177.  The rationale for -- or the primary

15   rationale for the prior extension orders and the original

16   preservation order in delaying service at that time, i.e., that

17   the pursuit of such action might not, in fact, benefit the

18   estate because it was likely that creditors would receive a

19   hundred cents or close to a hundred cents on the dollar no

20   longer applied.  However, the debtors concluded that even with

21   respect to the 177 claims, there may not be a sufficient basis

22   to pursue those claims actively and force any parties to incur

23   additional cost in respect thereto.

24        Frankly, by that point in the case, and we're now

25   focusing on the fall of 2009, it was not clear whether the

63

1    debtors had sufficient funds to even conduct their case let

2    alone pursue adversary proceedings.  And the specter of

3    conversion to Chapter 7 where a Chapter 7 trustee would be

4    pursuing the proceedings was quiet real.  Consequently, the

5    debtors sought, and the Court granted, a third extension motion

6    extending a deadline under Federal Rule 4(m) to April 5, 2010.

7    And that order was issued October 2, 2009.

8         As I noted at the beginning of my ruling, when this

9    motion was filed, the present motion before me, there were

10   sixty-two adversary proceedings where the debtor was concerned

11   that service might not be completed by April 5th.  Presently,

12   it appears that there are forty-two, thirty of which fall into

13   the category of foreign defendant proceedings.

14        There is, and always has been, an issue as to whether

15   any deadline for service applies with respect to the foreign

16   corporate defendants because such an issue exists, however.

17   And as for the existence of the issue, see In re Harnischfeger

18   Industries, Inc., 288 B.R. 79, 86 (Bankr. D. Del. 2003).  The

19   debtors, exercising, I think, proper discretion to try to avoid

20   any question about the issue, obtained an extension under

21   Section 4(m), thus avoiding, as far as through the date of the

22   extension, any issue that the complaint should be dismissed for

23   failure to serve within an applicable deadline.

24        The debtors, when posed with this question now as to

25   whether there is, in fact, a deadline, have taken the position

64

1    that the prior orders imposed a deadline at the debtors' own

2    request, although albeit it was an extended one, and did so

3    under Rule 4(m).  To the extent, therefore, that Rule 4(m)

4    itself does not apply to these corporate and non-individual

5    foreign defendants, it seems to me, and the debtors have

6    certainly taken this position, that it was adopted by the

7    Court's prior order as the basis for extending the deadline

8    or -- and not only extending it, but creating a new deadline.

9    It appears to me, therefore, that I should review this request

10   and the opposition to it on the basis that it is, in fact,

11   governed by Rule 4(m) notwithstanding the arguments that one

12   would make on a clean slate if there had been no prior orders

13   issued relying on 4(m) that, as adopted by some Courts, Rule

14   4(m) not only does not apply to foreign individuals, under

15   4(f), but also does not apply to foreign corporations because

16   Rule 4(h) incorporates Rule 4(f).

17           The Rule, that is, Rule 4(m), was amended in 1993 to

18   provide that the Court shall enlarge the 120-day period set

19   forth therein for good cause which was already there but also

20   that the Court, in addition, in its discretion, extend the

21   deadline in the Rule, the 120 days.  The Second Circuit has

22   made it clear in its reading of the Rule, including the

23   commentary that accompanied the amendment, that Courts have

24   discretion to grant extensions even in the absent of good

25   cause.  Zapata v. City of New York, 402 F.3d 192, 196 (2nd Cir.

65

1    2007).

2            One of the reasons for the amendment, as noted by the

3    Zapata case as well as the commentary for the amendment, was

4    taking into account the prejudice to the plaintiff in the event

5    that a dismissal without prejudice if good cause is not shown

6    would, in fact, prejudice the defendant because the statute of

7    limitations had run which would be the instance here.  There

8    would clearly be no viability to a lawsuit filed if I were to

9    dismiss these adversary proceedings for failure to be served

10   during the deadline because the statute of limitations had

11   expired.

12           Nevertheless, the Second Circuit ruled that prejudice

13   to the plaintiff is not dispositive unlike other Courts in

14   other jurisdictions but, rather, that it is a factor to

15   consider in the exercise of the Court's discretion if, in fact,

16   there is a lack of good cause to bring the -- to obtain the

17   extension.  Other Courts have considered what other factors to

18   evaluate in the absence of good cause under Rule 4(m).

19           The Second Circuit in Zapata, without actually

20   listing factors or a specific sequence of analysis that the

21   Court should undertake, clearly highlighted two other points:

22   first, the prejudice to the defendant of a further extension,

23   including the fact that the limitations period would have run;

24   and the plaintiff's diligence, although, clearly, the diligence

25   to be considered where there's not been a showing of good faith

66

1    basis for an extension is something less than normal diligence

2    that would support a good faith extension.  At least, that

3    appears clear to me given the circumstances when one would

4    consider these factors in the first place, i.e., in the absence

5    of good cause, and the fact that, in the Zapata case, that lack

6    of diligence was shown by the plaintiff both failing to take

7    any efforts to serve the defendant during the period when the

8    deadline was in place and the plaintiff's failure to seek an

9    extension of the date to serve during that period.  (502 F.3d

10   at 199)

11           Other Courts have actually listed factors.  See, for

12   example, Gore v. DRBA Group, Inc., 2009 WL 884565 (S.D.N.Y.

13   March 27, 2009) at page 6; Gonzalez v. Derderian (ph.), 2007

14   U.S. Dis. LEXIS 7479 (D. R.I., January 26, 2007) at page 13 and

15   14 as well as at page 26.  See also Harnischfeger Industries,

16   288 B.R. 79 at 87-88.

17           The plaintiff here would tailor -- takes the position

18   that I don't need to get into the foregoing factors because it

19   has shown good cause for an extension in that it has diligently

20   pursued service and the factors since the October 2009 order

21   was entered show a good reason why they have not served these

22   thirty foreign defendants.  I believe that, recognizing as the

23   plaintiff does that serving foreign defendants takes more than,

24   in most cases, a month.  I have serious reservations that, in

25   fact, there is good cause to extend the period for defendants

1   where the effort to serve did not begin until a month before

2   the April 5th deadline.  It appears to me that the excuse,

3   which is that the debtor was burdened with other things, falls

4   away at least with the effectiveness of the Chapter 11 plan and

5   the commencement of cleanup litigation and approval of

6   attorneys' fees and the like which normally follows such an

7   event.

8        However, I believe that in weighing the factors in

9   the exercise of my discretion, that there is a basis to extend

10  the period to serve the objectants and those who have not

11  objected who are foreign defendants.  The factors to be

12  evaluated, as set forth in the Gore case, are whether the

13  applicable statute of limitations would bar the refiled action

14  if I were to dismiss without prejudice; whether the defendant

15  had actual notice of the claims asserted in the complaint;

16  whether the defendant had attempted to conceal the defect in

17  service; and whether the defendant would be prejudiced by the

18  granting of the plaintiff's request for relief from that

19  provision.  In addition, as set forth by the Rhode Island court

20  in the Gonzalez case, I believe it's also worthwhile to

21  consider whether the underlying complaint is frivolous and

22  whether, in not showing good cause, the plaintiff has been so

23  neglectful of the matter that an extension here would encourage

24  disregard for the deadline set forth in the ruling.

25        Clearly, the first factor, which is a significant

1    one, that is, it underlies the basis for the amendment to the

2    Rule 93, is in the debtors' favor here as I've said already.

3    It does no good to dismiss these actions without prejudice,

4    because the statute of limitations has run.  Secondly, and this

5    is the most important consideration, I believe, with regard to

6    this motion, I believe that the proper focus is not on

7    prejudice to the defendants from the date that the adversary

8    proceedings were commenced back in 2007, but prejudice

9    resulting from a further extension.  I do not believe there is

10   any prejudice resulting from a further extension that would

11   outweigh or counterbalance the prejudice to the plaintiff of

12   having the complaints dismissed.  The defendants have been on

13   notice of the adversary proceedings commenced against them at

14   least since the date of this motion and will be acting

15   accordingly.

16       Moreover, to the extent there is prejudice as a

17   result of the Court's prior orders granting extensions, it

18   would seem to me that that prejudice is outweighed by two

19   factors.  First, the orders were issued and the debtors, I

20   believe, reasonably relied on them.  And more important, my

21   ruling with regard to prejudice here, I believe, has no

22   collateral estoppel or res judicata effect with regard to any

23   arguments that the defendants will make in the adversary

24   proceedings with regard to any inability that they had before

25   they knew of the complaints against them -- I'm sorry -- any

69

1   ability that they have to assert affirmative defenses based on

2   the disappearance of witnesses or evidence before the

3   defendants knew of the existence of the complaints against

4   them.

5          Further, the Court's weighing of these factors in the

6   exercise of its discretion on this motion, I believe, would not

7   have collateral estoppel or res judicata effect with regard to

8   any attempt by these defendants or any other defendant, to seek

9   to vacate any of the Court's prior orders, including the

10  original one in August of 2007, allowing the complaints to be

11  filed under seal.

12         Therefore, I believe that the prejudice that should

13  be focused on here, again, is future prejudice, coupled with an

14  analysis of whether there was any meaningful prejudice during

15  the last few months, during the operative period of the last

16  extension order.  I don't believe that there has been prejudice

17  during that period and, again, that there is any prejudice

18  based on an extension of time as requested by the debtor.

19         Clearly, there's been no attempt to conceal a defect

20  in service by these objectors, so that factor does not weigh in

21  favor of the plaintiff here.  But it's really only a factor

22  that does weigh in favor of the plaintiff if the contrary is

23  shown.  It doesn't particularly help the defendant.

24         The objectors have contended that the lawsuit is also

25  essentially frivolous against them.  They have done that on two

70

1    different grounds.  I've already dealt with the Freudenberg

2    defendants.  And I believe that potentially, if what counsel

3    has represented to me is true, the lawsuit would be frivolous,

4    and therefore, on that basis, I will grant only a thirty-day

5    extension on the terms that I explained earlier.

6         The other basis, as asserted by the other defendants,

7    is that the debtors obtained an order authorizing them to

8    abandon causes of action, including, as asserted by the

9    defendants, these causes of action -- causes of action in

10   respect of payments to suppliers.  I believe that this issue is

11   not, based on the record before me, what I could call as a

12   frivolous -- or points to the complaint being frivolous, which

13   I think is the only basis where this type of factor should be

14   considered in this context, which is whether there should be an

15   extension of the time to serve or a complaint should

16   alternatively be effectively dismissed forever because of

17   failure to serve timely.  I am reluctant to cause that to occur

18   without a full record on what was, in fact, sought under the

19   order granting the debtor the right to abandon, what notice was

20   given, and what was argued to the Court at that time.  I

21   believe that it is more appropriately taken up in the context

22   of a motion to dismiss as opposed to a motion to preclude

23   additional time to serve and effectively to have the case be

24   dismissed because of a missed deadline to serve.

25        That leaves the last point, which is whether the

71

1    plaintiff here has been so lacking in diligence that the Court

2    should not exercise its discretion and preserve the cause of

3    action.  Clearly, the defendants -- I'm sorry -- clearly the

4    plaintiff here has done considerably more than the plaintiff

5    did in the Zapata case.  The other cases cited to me by the

6    defendant objectors for the proposition that the plaintiff's

7    lack of diligence should justify the effective dismissal of

8    these lawsuits also more closely resemble the facts in Zapata,

9    that is, they involved instances where the plaintiff did

10   nothing or went through a sham process of service or -- and/or

11   did not seek an extension of time before the limitations period

12   expired.

13       Here, while it is clear to me that the efforts begun

14   by the debtors could not be completed with regard to the

15   remaining foreign objectants within the deadline, the debtors

16   did seek -- I'm sorry -- DPH did seek an extension within the

17   deadline period and did, I believe, commence the effort to

18   serve the foreign defendants in good faith.  Moreover, this

19   deadline was self-imposed.  This is, I believe, a unique

20   context where they have taken upon themselves to impose a

21   deadline under Rule 4(m) when, in fact, it may well not apply

22   given 4(m)'s reference to 4(f) and 4(h)'s incorporation of

23   4(m).

24       Therefore, in exercising my discretion, I'll permit

25   them one final extension, barring any extraordinary efforts by

1    the defendants to thwart service in the future.

2              So, counsel for DPH should submit, I think, three

3    orders:  one granting the request for thirty days in the first

4    two categories; one consistent with my ruling with regard to

5    the Freudenberg defendants; and one with regard to the other

6    foreign defendants.  Again, my ruling is without prejudice, and

7    specifically, I believe, without claim or issue preclusion

8    effect with regard to motions to vacate my prior orders or

9    arguments that defendants may make that the Court should adopt

10   various burden-shifting mechanisms, if, in fact, the ceiling of

11   the complaints preclude the defendants from asserting

12   administrative defenses because of the effect that it had on

13   their ability to marshal evidence.  But I believe those issues

14   are more properly taken up in that context rather than in this

15   context, with regard to a service deadline.

16             MS. CALTON:  Can I attempt to clarify a statement

17   that the Court made?

18             THE COURT:  Sure.

19             MS. CALTON:  Early on in the opinion, you said that

20   the motion to extend the April 2000 motion was to preserve

21   these claims, and I'm hoping the Court isn't making any

22   judgment on the abandonment issue that it wasn't to preserve

23   some and abandon others?

24             THE COURT:  Oh, no, I'm not.  The abandonment -- and

25   I should say, when I'm talking about without prejudice, that's

73

1    also without prejudice to anything on the merits, including

2    that these claims have been abandoned.

3              MS. CALTON:  Okay.

4              THE COURT:  Yeah.  But no.  I meant that only in the

5    sense that it was meant to extend the time -- the deadline to

6    serve because without that extension, the 546 would apply.

7              UNIDENTIFIED SPEAKER:  Excuse me, Your Honor?

8              THE COURT:  Okay.  Thank you.

9              MR. FISHER:  Thank you, Your Honor.

10             MR. GEOGHAN:  Thank you, Your Honor.

11             MR. HUTCHINSON:  Thank you.

12        (Whereupon these proceedings were concluded at 12:52 p.m.)

13

14

15

16

17

18

19

20

21

22

23

24

25

74

1

2                          I N D E X

3

4                        R U L I N G S

5    DESCRIPTION                              PAGE      LINE

6    Reorganized debtors' motion seeking further    10        6

7    extension of deadline to serve process for

8    certain avoidance actions with regard to

9    first two categories of defendants granted

10   Reorganized debtors' motion seeking further    58        22

11   extension of deadline to serve Freudenberg

12   defendants granted allowing 30-day extension

13   with no further extension to be allowed if

14   lawsuit found to be without merit

15   Reorganized debtors' motion seeking further    70        4

16   extension of deadline to serve remaining

17   foreign defendants granted allowing for

18   one final extension of thirty days

19

20

21

22

23

24

25

75

1

2                         C E R T I F I C A T I O N

3

4       I, Lisa Bar-Leib, certify that the foregoing transcript is a

5       true and accurate record of the proceedings.

6       Lisa Bar-Leib    Digitally signed by Lisa Bar-Leib
                          DN: cn=Lisa Bar-Leib, c=US
                          Reason: I am the author of this
                          document
7       _____    Date: 2010.04.06 10:01:06 -04'00'

8       LISA BAR-LEIB

9       AAERT Certified Electronic Transcriber (CET**D-486)

10

11

12      Veritext

13      200 Old Country Road

14      Suite 580

15      Mineola, NY 11501

16

17      Date:  April 6, 2010

18

19

20

21

22

23

24

25