TOGUT SEGAL & SEGAL LLP  
One Penn Plaza, Suite 3335  
New York, New York 10119  
Neil Berger  
Richard K. Milin  
Daniel F.X. Geoghan  
Telephone: (212) 594-5000  
Facsimile: (212) 967-4258  
*Conflicts Counsel for Plaintiffs*

Hearing Date: July 22, 2010  
At: 10:00 a.m.

UNITED STATES BANKRUPTCY COURT  
SOUTHERN DISTRICT OF NEW YORK  
----------------------------------------------------------x  
In re:                                                    :   Chapter 11  
                                                          :   Case No. 05-44481 [RDD]  
DPH HOLDINGS CORP, *et al.*,                              :  
                                                          :   Adv. Pro. No. 07-02074, et seq.  
                    Reorganized Debtors,                  :  
                                                          :  
----------------------------------------------------------x  

## JOINDER IN PLAINTIFFS' OMNIBUS RESPONSE TO MOTIONS SEEKING, AMONG OTHER FORMS OF RELIEF, ORDERS TO VACATE CERTAIN PROCEDURAL ORDERS

TO THE HONORABLE ROBERT D. DRAIN,  
UNITED STATES BANKRUPTCY JUDGE:

Plaintiffs DPH Holdings Corporation and certain of its affiliated reorganized debtors (collectively, the "Reorganized Debtors" or "Plaintiffs"), in their capacities as plaintiffs in the adversary proceedings listed in Schedule A annexed hereto, by their conflicts counsel, join in the Omnibus Response filed on the Reorganized Debtors' behalf by the Butzel firm for reasons including:

1. *The Court's Preservation and Extension Orders were both substantively justified and procedurally appropriate*:

   A. *The Preservation Order was justified because the Debtors, the Court and potential preference defendants all benefited from its mechanisms for preserving the Debtors' preference claims without requiring prosecution of those claims at a time when doing so would have harmed the Debtors and their estates and would have been wasteful and costly for all parties. (See* Preservation

Motion[1] at ¶¶ 36-37 (keeping preference actions inactive and sealing them would "promote the plan process," "avoid needless costs," and "avoid unnecessarily alarming potential defendants"); Transcript of Record at 28, *In re DPH Holdings Corp.*, No. 05-44481 (RDD) (April 1, 2010) (Court notes that the Preservation Motion was "signed off on by the unsecured creditors' committee" and "there were no objections. Everyone was delighted not to be sued.").) Further, sealing the preference complaints protected the Debtors from the competitive pressures that suppliers' concerns about having been sued could have created even though prosecution of the complaints was unlikely at the time. (*See id.*) Indeed, it is undeniable that the Order in fact saved the parties from unnecessary burdens and expense because the Reorganized Debtors ultimately decided not to pursue more than 99% of the Debtors' 11,000 potential preference claims and almost 80% of the complaints the Debtors filed under seal. In addition, the Order included a safety valve: the Reorganized Debtors were authorized to provide copies of their complaints upon request (Preservation Order ¶ 7), and the Reorganized Debtors did so.

      B.    *The Extension Orders were similarly justified.* As this Court has noted, the same considerations that justified the Preservation Order also justified the Extension Orders through at least the end of 2008. The later Orders were justified by economic and industry conditions that required changes in the Debtors' Plan and presented new reasons to delay prosecution of claims that ultimately might not be pursued. (*See* Transcript of Record at 61-63, *In re DPH Holdings Corp.*, No. 05-44481 (RDD) (April 1, 2010); Third Extension Motion at ¶¶ 17-18.) Further, even though the Court had ample cause to extend service deadlines, no cause was required. *See Zapata v. City of New York*, 502 F.3d 192, 196 (2d Cir. 2007) ("[D]istrict courts have the discretion to grant extensions of the service period even where there is no good cause shown"). Evidence that a Movant has been unfairly prejudiced may merit individualized consideration, but it cannot justify vacating Orders that, as applied to the vastly larger group of potential defendants as a whole, were fully justified.

      C.    *The Court's Orders sealing the Reorganized Debtors' complaints and extending their time to serve were procedurally justified.* No notice was required for motions either to seal or to extend time. *See* Fed. R. Civ. P. 6(b); Fed. R. Bankr. P. 9018. Even so, the Debtors provided wide notice of their motions by, among other things: (i) serving those motions upon thousands of parties, including many of the Movants (*see* Affidavits of

---

[1] Capitalized terms have the meanings given to them in the Plaintiffs' Omnibus Response to Motions Seeking, Among Other Forms of Relief, Orders to Vacate Certain Procedural Orders, etc.

Service, Docket Nos. 9039, 9141, 12970, 13315, 13415, 13540, 18967); (ii) providing descriptions of the motions in their original and modified Disclosure Statements, which the Court approved as supplying adequate information; and (iii) filing the operative Disclosure Statement with their December 2007 Form 8-K.

        D.    *Even if the Court's Preservation and Extension Orders had been improper, vacating them or dismissing the Reorganized Debtors' complaints would be unjust.* Any objection to sealing the complaints is moot. The appropriate remedy, if there were a basis for a remedy, would be to unseal the complaints – and that has already occurred. Also, even if the Court were to vacate its prior Orders, it should proceed to extend the Reorganized Debtors' time to serve process now so that service on the Movants will be deemed timely absent a clear showing of individualized prejudice. The Court can and should extend the Reorganized Debtors' time to serve under Fed.R.Civ.P. 4(m) for good cause – even at this late date – because, among other things, the Reorganized Debtors properly relied upon the Court's Orders and cannot justly be penalized for doing so.

    2.    ***The Court's Preservation and Extension Orders did not violate the Movants' due process rights.***

        A.    *Absent prejudice, there was no due process violation.* The Movants were entitled to notice of the Debtors' preference actions that was, "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and *afford them an opportunity to present their objections.*" *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (emphasis added). Thus, unless a Movant can demonstrate undue prejudice that denied it a fair opportunity to present its defenses, any alleged lack of notice did not violate its due process rights. *See, e.g., Hartigan v. Peters*, 871 F.2d 1336, 1340 (7th Cir. 1989); Fed. R. Civ. P. 61. Further, the Movants may take advantage of the Federal Rules of Evidence and Bankruptcy Procedure, case law interpreting those Rules and other safeguards to ensure that they each have an ample opportunity to present their defenses.

        B.    *The Court should deny the motions to dismiss because the record does not demonstrate that any Movant has suffered genuine prejudice.* As shown in Schedule B, even the three Movants in the adversary proceedings that are identified in Schedule A that have submitted sworn statements purporting to demonstrate prejudice have merely made conclusory assertions that fall short. Further, the Court cannot properly rely on those assertions without permitting the Reorganized Debtors to

3

test them through discovery in the context of the Movants' potential defenses.

3.   *The Reorganized Debtors' complaints cannot properly be dismissed based on the statute of limitations.* The complaints were filed before the applicable limitations period had expired, and filing a complaint tolls the statute unless and until the time to serve, including any extensions, has expired. *See Clyburne v. Center for Comprehensive Health Practice, Inc.*, 2006 WL 1559238 at *3 (S.D.N.Y. June 5, 2006) (citing *Frasca v. U.S.*, 921 F.2d 450 (2d Cir. 1990)).

4.   *Laches provides no ground to dismiss.* Laches does not apply to the Reorganized Debtors' complaints because the complaints were filed within the applicable limitations period and were served within the time permitted by the Court's Orders. *See, e.g., Astra USA, Inc. v. Bildman*, 2010 WL 1731815 at *2 (2d Cir. April 30, 2010) ("it is well established that, as a general rule, '[l]aches is not a defense to an action filed within the applicable statute of limitations.'") (quoting *United States v. Milstein*, 401 F.3d 53, 63 (2d Cir. 2005) (quoting *United States v. RePass*, 688 F.3d 154, 158 (2d Cir. 1982)).

5.   *The Reorganized Debtors did not abandon their preference claims against the Movants or provide a basis for dismissal under the doctrines of res judicata or judicial estoppel.* When the Reorganized Debtors' actual statements are examined, it is clear that the Reorganized Debtors sought to preserve their preference claims as they expressly stated in their Disclosure Statement and Plan, as modified. Moreover, although the Reorganized Debtors sought authority to abandon some avoidance claims, they were not directed to abandon and did not in fact abandon them. (*See, e.g.,* Plan Exhibit 7.19 (*Non-Exclusive* List of Retained Actions that listed the Movants' preference actions by number) (emphasis added); Disclosure Statement at 150 (Debtors were "authorized (but not directed)" to abandon certain claims).) Further, the Reorganized Debtors' early statements to the Court concerning their intention not to pursue certain preference claims were conditioned on consummation of the Plan before the Court when the statements were made. (*See* Confirmed Plan Art. 7.1 (conditioning the Confirmed Plan on consummation of Restructuring Transactions which ultimately did not close).) Consequently, these statements were not inconsistent with the Reorganized Debtors' decision to pursue preference claims against the Movants after the Plan had been modified.

6.   *The defendants' motions to dismiss for failure to plead in sufficient detail and for more definite statements under Bankruptcy Rules 7008 and 7012, and Fed. R. Civ. P. 8, 12(b)(6) and 12(e) should be denied subject to renewal at a suitable time after the Court's ruling on the present Motions.*

4

A.  Some Movants have argued that the complaints should be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to comply with the requirements of Fed.R.Civ.P. 8(a) and, in the alternative, that they are entitled to a more definite statement under Fed.R.Civ.P. 12(e). This Court need not address the requirements of Rule 8(a), however, if the Reorganized Debtors can satisfy Rule 12(e), because it is well established that the pleading requirements of Rule 12(e) equal or exceed those of Rule 8(a). *See, e.g., Nagler v. Admiral Corp.*, 248 F.2d 319, 323 (2d Cir. 1957) (stating that Rule 12(e) was adopted to allow courts to require "fuller disclosure" than Rule 8(a) in particular cases); *Wik v. City of Rochester*, 2008 WL 4911805 at *20 (W.D.N.Y. Nov. 13, 2008) (construing motion to dismiss under Rule 8(a) as a motion under Rule 12(e)); *Pell v. Pall Corp.*, 2007 WL 2445217 (E.D.N.Y. Aug. 20, 2007) (denying motion to dismiss in part for failure to comply with Rule 12(b)(6), but granting motion under Rule 12(e)); *Marquandt-Glenn Corp. v. Lumelite Corp.*, 11 F.R.D. 175, 176-77 (S.D.N.Y. 1951) (denying motion to dismiss for failure to comply with Rule 8(a) but granting Rule 12(e) motion).

B.  The Reorganized Debtors believe that their complaints are clearly plausible on their face and pled in sufficient detail. In the interests of efficiency, however, the Reorganized Debtors propose to attempt to moot the Movants' arguments. The Reorganized Debtors respectfully suggest that the Court deny the motions subject to renewal at a suitable time after the Court's ruling. In the interim, supplementing the documents Reorganized Debtors have already provided, the Reorganized Debtors will undertake to provide Movants who have sought dismissal on this ground with any additional facts necessary to enable them to answer the complaints against them, thereby satisfying the requirements of Rule 12(e). *See, e.g., Atchoo v. Redline Recovery Services LLC*, 2010 WL 1416738 at *2 (W.D.N.Y. April 5, 2010) ("A motion pursuant to Rule 12(e) should not be granted unless the complaint is so excessively vague and ambiguous as to be unintelligible and as to prejudice the defendant seriously in attempting to answer it.") (quoting *Kok v. First Unum Life Ins. Co.*, 154 F.Supp.2d 777, 781-82 (S.D.N.Y. 2001)); Fed. R. Civ. P. 12(e) (a 12(e) motion "must be made before a filing a responsive pleading").

C.  Once the Movants have sufficient information to enable them to answer, there would be no point in requiring the Reorganized Debtors to incur the expense and delays inherent in amending and serving amended complaints. The Reorganized Debtors will consider any continuing demand that they amend particular complaints, however, in a good faith effort to render motion practice unnecessary. Also, the Movants can refile an appropriate motion if they maintain that the

Reorganized Debtors have failed to provide sufficient information to enable them to answer.

D.  In contrast to *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), on which the Movants rely, the Reorganized Debtors are not seeking to "unlock the doors of discovery." *Id.* at 1949. Further, there can be no real question as to the plausibility of the Reorganized Debtors' preference claims. Accordingly, rather than waste time and resources clarifying the *complaints*, the Reorganized Debtors propose to clarify their *claims*.

7.  *Arguments asserting an assumption of relevant contracts or misidentification of defendant entities cannot justify dismissing the Reorganized Debtors' complaints because those arguments raise factual issues, and the Court must accept the complaints' factual allegations as true for purposes of a motion to dismiss.* See, e.g., Enron Corp. v. Granite Construction Co. (In re Enron Corp.), 2006 WL 2400369 at *3 (Bankr. S.D.N.Y.) ("In considering a Rule 12(b)(6) motion to dismiss for failure to state a claim for relief, the court accepts as true all material facts alleged in the complaint and draws all reasonable inferences in favor of the plaintiff."). However, the Reorganized Debtors will consider requests to dismiss based on these allegations voluntarily and in good faith in an effort to minimize future motion practice.

WHEREFORE, based upon all of the foregoing and the Omnibus Response, Plaintiffs respectfully request that the Court deny the Motions, and grant such other and further relief as is just and appropriate.

Dated: New York, New York
June 7, 2010

DPH Holdings Corp., *et. al*
By their conflicts counsel,
TOGUT, SEGAL & SEGAL LLP
By:

/s/ Neil Berger
NEIL BERGER
RICHARD K. MILIN
DANIEL F.X. GEOGHAN
One Penn Plaza
New York, New York 10119
(212) 594-5000

6

SCHEDULE A

| Defendants | Adversary Proceeding Number | Motion to Dismiss Docket Number |
|---|---|---|
| GKNS Intermetals | 07-02328 | Docket No. 22 |
| Ex Cell O Machine Tools Inc. | 07-02337 | Docket No. 18<br>Amended Docket No. 22 |
| Johnson Controls, et. al. | 07-02348 | Docket No. 28<br>Docket No. 29 |
| Valeo, et al. | 07-02534 | Docket No. 28 |
| NGK, et al. | 07-02541 | Docket No. 27 |
| Sumitomo, et al. | 07-02659 | Docket No. 33<br>Docket No. 34<br>Docket No. 37 |
| Prudential Relocation, et al. | 07-02702 | Docket No. 22 |

## SCHEDULE B

| Defendants | Comments |
|---|---|
| GKNS Intermetals<br><br>Adv. Pro. No. 07-02328 | The Declaration of Craig Connop submitted by defendant GKNS Intermetals states that it has been "substantially prejudiced in its ability to defend this adversary proceeding by the delay in receiving notice of the complaint against GKN." *Id.* at ¶ 10. In particular, it states that "[i]f GKN had known that Delphi had sued it, GKN could have and would have taken steps to organize and preserve its records with respect to Delphi, hold exit interviews with Former Key Employees and make arrangements to maintain contact with the Former Key Employees..." *Id.* at ¶ 9. This Declaration which in substantial part is identical to that of Valeo, does not identify any specific records concerning Delphi that have in fact been disposed of or any employee with relevant knowledge who is in fact no longer at, or available to, GKN. The Declaration also does not identify any defense to Delphi's actions that it will be unable to present effectively. Consequently, in addition to the fact that the Reorganized Debtors have not yet had an opportunity to take discovery concerning GKN's assertions, those assertions are conclusory and fail to establish any genuine prejudice. |
| Johnson Controls, *et al.*<br><br>Adv. Pro. No. 07-02348 | The Declaration of David E. Kirtley submitted by defendants Johnson Controls, *et al.* states that "If JCI had known that Delphi commenced an action against JCI, it could have taken steps to (1) challenge any motions made by Plaintiff, and (2) organize and preserve its records with respect to Delphi." *Id.* at ¶ 5. It adds that employees with knowledge of JCI's records with respect to Delphi "may no longer be with the company." *Id.* at ¶ 4. This Declaration does not identify any specific records concerning Delphi that have in fact been disposed of or any employee with relevant knowledge who is in fact no longer at, or available to, JCI. The Declaration also does not identify any defense to Delphi's actions that it will be unable to present effectively. Consequently, in addition to the fact that the Reorganized Debtors have not yet had an opportunity to take discovery concerning JCI's assertions, those assertions are conclusory and fail to establish any genuine prejudice. |
| Valeo, *et al.*<br><br>Adv. Pro. No. 07-02534 | The Declaration of Thomas F. Miller submitted by defendant Valeo, *et al.* states that it has been "substantially prejudiced in its ability to defend this adversary proceeding by the delay in receiving notice of the complaint against it." *Id.* at ¶ 9. In particular, Mr. Miller states that "[i]f Valeo had known that Delphi commenced an action it could have and would have taken special steps to organize and preserve its records with respect to Delphi, hold exit interviews with terminated employees who were knowledgeable about the Delphi business relationship and make arrangements to maintain contact with those terminated employees..." *Id.* at 8. This Declaration, which in substantial part is identical to that of GKN, does not identify any specific records concerning Delphi that have in fact been disposed of or any employee with relevant knowledge who is in fact no longer at, or available to, Valeo. The Declaration also does not identify any defense to Delphi's actions that it will be unable to present effectively. Consequently, in addition to the fact that the Reorganized Debtors have not yet had an opportunity to take discovery concerning Valeo's assertions, those assertions are conclusory and fail to establish any genuine prejudice. In addition, Mr. Miller fails to state whether he worked for Valeo before its reorganization. |