# EQUIPMENT SCHEDULE NO. 1135

ORIGINAL

Doc# 12341135-001

876GMCo12341135

EQUIPMENT SCHEDULE
NO. 1135
TO MASTER LEASE AGREEMENT
DATED AS OF MAY 1, 1995

Lessor and Mailing Address: —

FIRST AMERICAN CAPITAL MANAGEMENT GROUP, INC.
1600 RAND TOWER, 527 MARQUETTE AVE. S.
MINNEAPOLIS, MN 55402

Lessee and Mailing Address:

GENERAL MOTORS CORPORATION
902 E. HAMILTON AVENUE
FLINT, MI 48550

Capitalized terms not defined herein shall have the meanings assigned to them in the Master Lease Agreement identified above ("Agreement"; said Agreement and this Schedule being collectively referred to as "Lease").

A.    EQUIPMENT

Pursuant to the terms of the Lease, Lessor agrees to acquire and lease to Lessee the Equipment listed on Annex A attached hereto and made a part hereof.

B.    FINANCIAL TERMS

1.    Advance Rent (if any): N/A

2.    Capitalized Lessor's Cost : $39,840.00

3.    Basic Term Lease Rate Factor: 1.642%

4.    Daily Lease Rate Factor: 0.0547%

5.    Basic Term (Number of Months): 60

6.    Basic Term Commencement Date: The last day of the calendar month in which the Commencement Date occurs for all the Equipment described herein.

7.    Equipment Location:  General Motors de Mexico S.A. de C.V.
Delphi P. E. S.
Predio Santo Tomas
Anillo Perimetral
Parral, Chihuahua, Mexico 131090

8.    Lessee's Federal Tax ID Number:  38-0572515

9.    Supplier: Hyster Company

10.    Last Delivery Date: _____

11.    Termination Date:  The later of (i) the 60th Basic Rent Date or (ii) the last day of any extension of this Lease.

12.    Purchase Option:  Fair Market Value.

13.    Renewal Option:  Provided that an Event of Default has not occurred and this Equipment Schedule has not previously been terminated, the Lessee shall have the right at its option, upon not less than 90 days' written notice to the Lessor prior to the original Termination Date, to renew all (but not less than all) of the Equipment subject to this Equipment Schedule for a firm term renewal period requested by Lessee of 12 or 24 months at a monthly renewal rate for such term as determined by Lessee and Lessor.

1

ORIGINAL

Doc# 1234135-001

14.    Return Provisions:    In furtherance, and not in limitation of, the use, maintenance and return conditions for the Equipment set forth in Section X of the Master Lease, Lessee hereby agrees to return the Equipment to Lessor in accordance with all of the terms and conditions of the Master lease and in compliance with the following special return conditions. Lessor or its agent shall conduct a preliminary inspection of the Equipment at the equipment location prior to the expiration of the Lease to minimize claims made after return, provided however, that Lessee shall nonetheless remain liable for the Equipment unless and until it is returned to Lessor as specified below.

    1.    At the time of return when loaded to its rated capacity, each unit shall:

        a.    Start under its own power and idle without water, fuel or oil leaks.

        b.    Move through its normal speed ranges in both forward and reverse;

        c.    Be in good appearance, free from all advertising, and insignia placed thereon by Lessee, in a clean condition, free of material rust and corrosion that would impede the normal operation of the units;

        d.    Steer normally right and left in both forward and reverse;

        e.    Be able to stop with its service brakes within a safe distance in both forward and reverse;

        f.    Lift, lower and tilt normally;

    2.    Be complete with no missing or damaged parts and have all components able to perform the function for which they were designed in accordance with the manufacturer's recommended specifications;

    3.    With respect to tires, averaged over all tires the remaining wear life shall be a minimum of 50% and there shall be no damage to any individual tire that precludes normal usage.

    4.    With respect to all batteries, all batteries must be capable of maintaining not less than 90% of the rated voltage charge and amp hours as when originally delivered and originally specified by the manufacturer. With respect to the battery chargers, be capable of maintaining its rated charging capacity.

    5.    Tender such units to Lessor at the Equipment Location or, at the option of Lessor, at any location designated by Lessor within two thousand (2,000) kilometers of said Equipment Location.

C.    TAX BENEFITS

Depreciation Deductions:

a.    Depreciation Method:    Two hundred percent (200%) declining balance method, switching to straight line method for the first (1st) taxable year for which using the straight line method with respect to the adjusted basis as of the beginning of such year will yield a larger allowance.

b.    Recovery Period: 5 years.

c.    Basis: 100% of Capitalized Lessor's Cost.

D.    TERM AND RENT

1.    Interim Rent.    For the period from and including the Lease Commencement Date to the Basic Term Commencement Date ("Interim Period"), Lessee shall pay as rent ("Interim Rent") for each unit of Equipment, the product of the Daily Lease Rate Factor times the Capitalized Lessor's Cost of such unit times the number of days in the Interim Period. Interim Rent shall be due on the Basic Term Commencement Date.

2

ORIGINAL
Doc# 12341135-001

2.  Basic Term Rent.  Commencing on the Basic Term Commencement Date, and on the last day of each
    month thereafter (each, a "Rent Payment Date") during the Basic Term, Lessee shall pay as rent ("Basic
    Term Rent") the product of the Basic Term Lease Rate Factor times the Capitalized Lessor's Cost of
    all Equipment on this Schedule.

3.  Adjustment to Capitalized Lessor's Cost.  Lessee hereby irrevocably authorizes Lessor to adjust the
    Capitalized Lessor's Cost up or down by no more than ten percent (10%) to account for equipment
    change orders, equipment returns, invoicing errors, and similar matters.  Lessee acknowledges and
    agrees that the Rent shall be adjusted as a result of such change in the Capitalized Lessor's Cost
    (pursuant to paragraphs 1 and 2 above).  Lessor shall send Lessee a written notice stating the final
    Capitalized Lessor's Cost, if different from that disclosed on this Schedule.

E.  INSURANCE

1.  Commercial (broad form comprehensive) general liability, including contractual liability coverage, in
    limits of not less than $2,000,000 per occurrence combined single limit for personal injury and property
    damage.

2.  "All Risks" property insurance for the Equipment in an amount equal to the Stipulated Loss Value, with
    no co-insurance requirement.

Except as expressly modified hereby, all terms and provisions of the Agreement shall remain in full force and effect.
This Schedule is not binding or effective with respect to the Agreement or Equipment until executed on behalf of
Lessor and Lessee by authorized representatives of Lessor and Lessee, respectively.

IN WITNESS WHEREOF, Lessee and Lessor have caused this Schedule to be executed by their duly authorized
representatives.

LESSOR:                                          LESSEE:

FIRST AMERICAN CAPITAL MANAGEMENT GROUP, INC.    GENERAL MOTORS CORPORATION,

By: _____                      By: _____

Name: _____                      Name:   Marsha L. Smith

Title: _____                      Title:   Purchasing Senior Buyer

        L. HOOD
      V P. / C. F. O.

Doc# 12341135-001

ANNEX A
TO
EQUIPMENT SCHEDULE NO. 1135
TO MASTER LEASE AGREEMENT
DATED AS OF MAY 1, 1995

ORIGINAL

DESCRIPTION OF EQUIPMENT

| Supplier/ Manufacturer | Serial Numbers | Type and Model of Equipment | Number of units | Cost/unit | Total Cost |
|---|---|---|---|---|---|
| Equipment Location: General Motors de Mexico S.A. de C.V. Delphi P. E. S. Predio Santo Tomas Anillo Perimetral Parral, Chihuahua, Mexico 131090 | | | | | |
| Hyster/Hyster PO#P1S01110 PRD2054A-001 | | W20XTA 2,000 lb Capacity Electric Walkie Stacker With the following: Voltage: 24V Battery Discharge Indicator with Lift Interrupt Drive Tire: Poly Load Wheels: Dual Poly Mast: 3 Stage 182/83/44FFL Sideshifter: MFG STD Butterfly Control Handle Three Speed Forward and Reverse Freight | 4 | $9,960.00 | $39,840.00 |
| | | TOTAL EQUIPMENT COST: | | | $39,840.00 |

Initials: _____
Lessor    Lessee

Doc# 12341135-001

ANNEX C
TO
EQUIPMENT SCHEDULE NO. 1135
TO MASTER LEASE AGREEMENT
DATED AS OF MAY 1, 1995

ORIGINAL

To:  FIRST AMERICAN MANAGEMENT GROUP, INC. ("Lessor")

Pursuant to the provisions of the above schedule and lease (collectively, the "Lease"), Lessee hereby certifies and warrants that all Equipment listed below has been delivered and installed (if applicable); and (b) Lessee has received the Equipment for all purposes of the Lease.

Lessee does further certify that as of the date hereof (I) Lessee is not in default under the Lease; (ii) the representations and warranties made by Lessee pursuant to or under the Lease are true and correct on the date hereof; and (iii) Lessee has reviewed and approves of the purchase documents for the Equipment, if any.

### DESCRIPTION OF EQUIPMENT

| Supplier/ Manufacturer | Serial Numbers | Type and Model of Equipment | Number of units | Cost/unit | Total Cost |
|---|---|---|---|---|---|
| Equipment Location: | | | | | |
| General Motors de Mexico S.A. de C.V. | | | | | |
| Delphi P. E. S. | | | | | |
| Predio Santo Tomas | | | | | |
| Anillo Perimetral | | | | | |
| Parral, Chihuahua, Mexico 131090 | | | | | |
| | | | | | |
| Hyster/Hyster | A453N01553V | W20XTA | 4 | $9,960.00 | $39,840.00 |
| PO#P1S01110 | A453N01554V | 2,000 lb Capacity Electric Walkie Stacker | | | |
| PRD2054A-001 | A453N01555V | With the following: | | | |
| | A453N01556V | Voltage: 24V | | | |
| | | Battery Discharge Indicator with Lift Interrupt | | | |
| | | Drive Tire: Poly | | | |
| | | Load Wheels: Dual Poly | | | |
| | | Mast: 3 Stage 182/83/44FFL | | | |
| | | Sideshifter: MFG STD | | | |
| | | Butterfly Control Handle | | | |
| | | Three Speed Forward and Reverse | | | |
| | | Freight | | | |

TOTAL EQUIPMENT COST:                                        $39,840.00

LESSEE:
GENERAL MOTORS CORPORATION

By: _Marsha F Smith_
     Authorized Representative
Name:  Marsha L. Smith
Title:   Purchasing Senior Buyer

Date:   3 - 4 - 99

Doc# 12341135-001

ANNEX D
TO
EQUIPMENT SCHEDULE NO. 1135
TO MASTER LEASE AGREEMENT
DATED AS OF MAY 1, 1995

ORIGINAL

STIPULATED LOSS VALUE TABLE*

| RENTAL | STIPULATED LOSS VALUE |
|---|---|
| Interim Rent | 115% |
| Basic Term Rent | |
| 1 | 114% |
| 2 | 113% |
| 3 | 112% |
| 4 | 111% |
| 5 | 111% |
| 6 | 110% |
| 7 | 109% |
| 8 | 108% |
| 9 | 107% |
| 10 | 106% |
| 11 | 105% |
| 12 | 104% |
| 13 | 103% |
| 14 | 102% |
| 15 | 101% |
| 16 | 100% |
| 17 | 99% |
| 18 | 98% |
| 19 | 97% |
| 20 | 96% |
| 21 | 95% |
| 22 | 94% |
| 23 | 93% |
| 24 | 92% |
| 25 | 91% |
| 26 | 90% |
| 27 | 89% |
| 28 | 88% |
| 29 | 87% |
| 30 | 86% |
| 31 | 85% |
| 32 | 84% |
| 33 | 83% |
| 34 | 82% |
| 35 | 81% |
| 36 | 80% |
| 37 | 79% |
| 38 | 77% |

firstame\els.1135

Doc# 12341135-001

ORIGINAL

| | |
|---|---|
| 39 | 76% |
| 40 | 75% |
| 41 | 74% |
| 42 | 73% |
| 43 | 72% |
| 44 | 71% |
| 45 | 69% |
| 46 | 68% |
| 47 | 67% |
| 48 | 66% |
| 49 | 65% |
| 50 | 64% |
| 51 | 62% |
| 52 | 61% |
| 53 | 60% |
| 54 | 59% |
| 55 | 57% |
| 56 | 56% |
| 57 | 57% |
| 58 | 54% |
| 59 | 52% |
| 60 | 51% |

*The Stipulated Loss Value or Termination Value for any unit of Equipment shall be equal to the Capitalized Lessor's Cost of such unit multiplied by the appropriate percentage derived from the above tables. In the event that the lease term is for any reason extended, then the last percentage figure shown above shall control throughout any such extended term.

Initials:

Lessor        Lessee

firstame\els.1135

# EQUIPMENT SCHEDULE NO. A-1

RSL

EQUIPMENT SCHEDULE
SCHEDULE NO. A-1
DATED THIS 7TH DAY OF AUGUST, 1995
TO MASTER LEASE AGREEMENT NO. 9808MIG512
DATED AS OF AUGUST 1, 1995

Lessor and Mailing Address:

AMERICAN FINANCE GROUP

98 NORTH WASHINGTON STREET

BOSTON, MA  02114

Lessee and Mailing Address:

GENERAL MOTORS CORPORATION, DELPHI
HARRISON THERMAL SYSTEMS

200 UPPER MOUNTAIN ROAD / BLDG. 7A

LOCKPORT, NY  14094

Capitalized terms not defined herein shall have the meanings assigned to them in the Master Lease Agreement identified above ("Agreement"; said Agreement and this Schedule being collectively referred to as "Lease").

A.    EQUIPMENT

        Pursuant to the terms of the Lease, Lessor agrees to acquire and lease to Lessee the Equipment listed on Schedule B attached hereto and made a part hereof.

B.    FINANCIAL TERMS

| | | |
|---|---|---|
| 1. | Advance Rent (if any): | N/A . |
| 2. | Capitalized Lessor's Cost: | $221,850.00 . |
| 3. | Basic Term Lease Rate Factor: | .014783000 . |
| 4. | Daily Lease Rate Factor: | .000492767 . |
| 5. | Basic Term (Number of Months): | 60 . |
| 6. | Basic Term Commencement Date: | 10-01-95 . |
| 7. | Equipment Location: | see Annex A . |
| 8. | Lessee's Federal Tax ID Number: | 01·053·9643 . |
| 9. | Supplier: | see Annex A . |
| 10. | Last Delivery Date: | see Annex A . |
| 11. | First Termination Date:    01-01-96 | ( 3 ) months after the Basic Term Commencement Date. |
| 12. | Option Price: | Fair Market Value . |

1

C.    TAX BENEFITS

Depreciation Deductions:

a.    Depreciation Method:    Two hundred percent (200%) declining balance
method, switching to straight line method for the first (1st) taxable
year for which using the straight line method with respect to the
adjusted basis as of the beginning of such year will yield a larger
allowance.

b.    Recovery Period:  5 years.

c.    Basis:  One Hundred percent (100%) of Capitalized Lessor's Cost.

D.    TERM AND RENT

1.    Interim Rent.    For the period from and including the Lease
Commencement Date to the Basic Term Commencement Date ("Interim
Period"), Lessee shall pay as rent ("Interim Rent") for each unit of
Equipment, the product of the Daily Lease Rate Factor times the
Capitalized Lessor's Cost of such unit times the number of days in the
Interim Period.  Interim Rent shall be due on October 1, 1995.

2.    Basic Term Rent.  Commencing on October 1, 1995, and on the same day
of each month thereafter (each, a "Rent Payment Date") during the
Basic Term, Lessee shall pay as rent ("Basic Term Rent") the product
of the Basic Term Lease Rate Factor times the Capitalized Lessor's
Cost of all Equipment on this Schedule.

3.    Adjustment to Capitalized Lessor's Cost.    Lessee hereby irrevocably
authorizes Lessor to adjust the Capitalized Lessor's Cost up or down
by no more than ten percent (10%) to account for equipment change
orders, equipment returns, invoicing errors, and similar matters.
Lessee acknowledges and agrees that the Rent shall be adjusted as a
result of such change in the Capitalized Lessor's Cost (pursuant to
paragraph 1 and 2 above).  Lessor shall send Lessee a written notice
stating the final Capitalized Lessor's Cost, if different from that
disclosed on this Schedule.

E.    RETURN CONDITIONS

In furtherance, and not in limitation of, the use, maintenance and return
conditions for the Equipment set forth in Sections V and X of the Agreement,
Lessee hereby agrees to return the Equipment to Lessor in accordance with all of
the terms and conditions of the Agreement and in compliance with the following
special return conditions:

Each item of Equipment shall be in both good appearance and operating
condition, less reasonable wear and tear. Each tire, brake and wheel shall have
50% remaining life. Each unit and component of such unit shall be capable of
performing or meeting the manufacturer's minimum performance specifications when
new, including but not limited to, the upper coupler, air lines, electrical
system, braking system, safety and warning devices and attachments. Floor, wall,
glass and roof damage will be limited to $200.00 in total.  Lessee shall also
de-identify each unit by properly removing any decals, paint and all other
Lessee markings.

2

Each item of Equipment shall not be operated more than 1000 hours per year. In the event that any item of Equipment is operated more than 1000 hours, Lessee shall pay to Lessor a charge of twenty-five cents (.25) for each additional hour of operation.    Upon the expiration of the Lease Term, or any extension or renewal thereof, Lessee shall properly prepare, pack and ship each item of Equipment in accordance with this Section E and the Master Lease.

If any of the above conditions are not met, the Lessee has the option of repairing the Equipment at his own expense, or if repairs are performed by Lessor or Lessor's agent, Lessee shall pay any costs associated therewith.

F.    INSURANCE

1.    Commercial (broad form comprehensive) general liability, including contractual liability coverage, in limits of not less than Five Million dollars ($5,000,000.00) per occurrence combined single limit for personal injury and property damage.

2.    "All Risks" property insurance for the Equipment in an amount equal to the Stipulated-Loss Value, with no co-insurance requirement.

Except as expressly modified hereby, all terms and provisions of the Agreement shall remain in full force and effect.    This Schedule is not binding or effective with respect to the Agreement or Equipment until executed on behalf of Lessor and Lessee by authorized representatives of Lessor and Lessee, respectively.

This Equipment Schedule incorporates by reference the Equipment Lease and each Equipment Schedule constitutes a separate and independent Lease.    Terms defined in an Equipment Schedule and not otherwise defined herein shall have the meanings ascribed to them in such Equipment Schedule.    In the event of a conflict between the terms of an Equipment Schedule and the Equipment Lease, the terms of the Equipment Schedule shall govern.

IN WITNESS WHEREOF, Lessee and Lessor have caused this Schedule to be executed by their duly authorized representatives as of the date first above written.

LESSOR:                                          LESSEE:

AMERICAN FINANCE GROUP                            GENERAL MOTORS CORPORATION, DELPHI
                                                 HARRISON THERMAL SYSTEMS

By: _____                    By: _____

Name: _____                    Name: _____

Title: _____                    Title: _____

COUNTERPART NO. _1_ OF _2_ SERIALLY NUMBERED
MANUALLY EXECUTED COUNTERPARTS. TO THE EXTENT
IF ANY THAT THIS DOCUMENT CONSTITUTES CHATTEL
PAPER UNDER THE UNIFORM COMMERCIAL CODE, NO
SECURITY INTEREST MAY BE CREATED THROUGH THE
TRANSFER AND POSSESSION OF ANY COUNTERPART
OTHER THAN COUNTERPART NO. 1.

3

ANNEX A
TO
SCHEDULE NO. A-1
TO MASTER LEASE AGREEMENT NO. 9808MIG512
DATED AS OF AUGUST 1, 1995

| Manufacturer | Serial Numbers | Type and Model of Equipment | Number of Units | Cost Per Unit |
|---|---|---|---|---|

see Attached Schedule A and Schedule B

Initials:    _____    _____
             Lessor          Lessee

. 4

NOT APPLICABLE

ANNEX B
TO
SCHEDULE NO. A-1
TO MASTER LEASE AGREEMENT NO. 9808MIG512
DATED AS OF AUGUST 1, 1995

PURCHASE ORDER ASSIGNMENT AND CONSENT

THIS ASSIGNMENT AGREEMENT, dated as of _____ ("Agreement),
between American Finance Group ("Lessor") and General Motors Corporation,
Delphi Harrison Thermal Systems ("Lessee").

WITNESSETH:

Lessee desires to lease certain equipment ("Equipment") from Lessor
pursuant to the above schedule and lease (collectively, "Lease"). All terms
used herein which are not otherwise defined shall have the meaning ascribed to
them in the Lease.

Lessee desires to assign, and Lessor is willing to acquire, certain of
Lessee's rights and interest under the purchase order(s), agreement(s), and/or
document(s) (the "Purchase Orders") Lessee has heretofore issued to the
Supplier(s) of such Equipment.

NOW, THEREFORE, in consideration of the mutual covenants herein contained,
Lessor and Lessee hereby agree as follows:

SECTION 1.   ASSIGNMENT.

(a) Lessee does hereby assign and set over to Lessor all of Lessee's
rights and interests in and to such Equipment and the Purchase Orders as the
same relate thereto including, without limitation, (i) the rights to purchase,
to take title, and to be named the purchaser in the bill of sale for such
Equipment, (ii) all claims for damages in respect of such Equipment arising as a
result of any default by the Supplier (including, without limitation, all
warranty and indemnity claims), and (iii) any and all rights of Lessee to compel
performance by the Supplier.

(b) If, and so long as, no default exists under the Lease, Lessee shall
be, and is hereby, authorized during the term of the Lease to assert and
enforce, at Lessee's sole cost and expense, from time to time in the name of and
for the account of Lessor and/or Lessee, as their interest may appear, whatever
claims and rights Lessor may have against any Supplier of the Equipment.

SECTION 2.   CONTINUING LIABILITY OF LESSEE.

It is expressly agreed that, anything herein contained to the contrary
notwithstanding: (a) Lessee shall at all times remain liable to the Supplier to
perform any duties and obligations of the purchaser under the Purchase Orders,
except respecting payment provided for in the Lease so long as Lessee has
complied with its obligations under Section I(b) of the Lease, to the same
extent as if this Agreement had not been executed, (b) the execution of this
Agreement shall not modify any contractual rights of the Supplier under the

5

Purchase Orders, except respecting payment provided for in the Lease, and the liabilities of the Supplier under the Purchase Orders shall be to the same extent and continue as if this Agreement had not been executed, (c) the exercise by the Lessor of any of the rights hereunder shall not release Lessee from any of its duties or obligations to the Supplier, except payment provided for in the Lease, under the Purchase Orders, and (d) Lessor shall not have any obligation or liability under the Purchase Orders by reason of, or arising out of, this Agreement or be obligated to perform any of the obligations or duties of Lessee under the Purchase Orders or to make any payment (other than under the terms and conditions set forth in the Lease) or to make any inquiry of the sufficiency of or authorization for any payment received by any Supplier or to present or file any claim or to take any other action to collect or enforce any claim for any payment assigned hereunder.


        IN WITNESS WHEREOF, the parties have caused this Agreement to be duly executed as of the date first above written.

LESSOR:                              LESSEE:

AMERICAN FINANCE GROUP               GENERAL MOTORS CORPORATION, DELPHI
                                     HARRISON THERMAL SYSTEMS

By:    NOT APPLICABLE                By:    NOT APPLICABLE

Title: _____              Title: _____

6

ANNEX C
TO
SCHEDULE NO. A-1
TO MASTER LEASE AGREEMENT NO. 9808MIG512
DATED AS OF AUGUST 1, 1995

CERTIFICATE

To:  American Finance Group ("Lessor")

Pursuant to the provisions of the above schedule and lease (collectively, the "Lease"), Lessee hereby certifies and warrants that all Equipment listed below has been delivered and installed (if applicable); and (b) Lessee has received the Equipment for all purposes of the Lease.

Lessee does further certify that as of the date hereof (i) Lessee is not in default under the Lease; (ii) the representations and warranties made by Lessee pursuant to or under the Lease are true and correct on the date hereof; and (iii) Lessee has reviewed and approves of the purchase documents for the Equipment, if any.

DESCRIPTION OF EQUIPMENT

| Manufacturer | Serial Numbers | Type and Model of Equipment |
|---|---|---|

See Attached Schedule A

_____
Authorized Representative

Dated:  8/10/95

ANNEX D
TO
SCHEDULE NO. A-1
TO MASTER LEASE AGREEMENT NO. 9808MIG512
DATED AS OF AUGUST 1, 1995

STIPULATED LOSS AND TERMINATION VALUE TABLE*


SEE ATTACHED EXHIBIT ONE    .


Initials:

Lessor    Lessee

*The Stipulated Loss Value or Termination Value for any unit of Equipment shall be equal to the Capitalized Lessor's Cost of such unit multiplied by the
appropriate percentage derived from the above tables. In the event that the lease term is for any reason extended, then the last percentage figure shown
above shall control throughout any such extended term.


8

LLR40D-01                          AMERICAN FINANCE GROUP                    8/08/95  17:01:27  PAGE  1

Schedule A - Rental Schedule Economics


LESSEE:       DELPHI HARRISON THERMAL SYSTEMS

LESSOR:          AMERICAN FINANCE GROUP

RENTAL SCHEDULE:                      A-1

LEASE TERM (months):                          60

PRIMARY START DATE:                   10/01/1995

LEASE EXPIRATION DATE:                9/30/2000

PAYMENT FREQUENCY:                    MONTHLY

ADVANCE/ARREARS:                      ADVANCE

LEASE RATE:                           .014783000

PER DIEM LEASE RATE:                  .000492767

PERIODIC RENT:                        $3,279.61

NUMBER OF PAYMENTS:                           60

TOTAL INTERIM RENT:                   $6,012.62

PAYMENT COMMENCEMENT DATE:            10/01/1995

TOTAL EQUIPMENT COST:                 $221,850.00

DOCUMENTATION FEE:                    $20.00

_____  LESSEE INITIALS

_____  LESSOR INITIALS

LLR41D-01                          AMERICAN FINANCE GROUP                          8/08/95  17:01:33  PAGE   1

Schedule B Equipment Description

LESSEE: DELPHI HARRISON THERMAL SYSTEMS            RENTAL SCHEDULE AND ACCEPTANCE CERTIFICATE NUMBER: A-1

LESSOR: AMERICAN FINANCE GROUP

| Equipment Cost | Serial Number | Year Manufacturer | Model | Type | Acceptance Date |
|---|---|---|---|---|---|
| 221,850.00 | | RAIL KING | RZ SS4600 | RAILCAR MOVER | 8/07/1995 |
| 221,850.00 | Total for Location 200 UPPER MOUNTAIN RD | | LOCKPORT | NY 14094 | |

221,850.00 Total Equipment Cost

GENERAL MOTORS COPROATION, DELPHI HARRISON THERMAL SYSTEMS
EXHIBIT 1
RENTAL SCHEDULE AND ACCEPTANCE CERTIFICATE NO A-1

(Stated as Percentage of Equipment Cost)

| AFTER PRIMARY TERM PAYMENT NO. | TERMINATION BY SALE | CASUALTY VALUE |
|---|---|---|
| Prior to 1 | | 120.00 |
| 1 | | 119.49 |
| 2 | | 118.96 |
| 3 | | 118.43 |
| 4 | 120.89 | 117.89 |
| 5 | 120.34 | 117.34 |
| 6 | 119.79 | 116.79 |
| 7 | 119.22 | 116.22 |
| 8 | 118.65 | 115.65 |
| 9 | 118.06 | 115.06 |
| 10 | 117.47 | 114.47 |
| 11 | 116.87 | 113.87 |
| 12 | 116.26 | 113.26 |
| 13 | 115.63 | 112.63 |
| 14 | 115.00 | 112.00 |
| 15 | 114.36 | 111.36 |
| 16 | 113.71 | 110.71 |
| 17 | 113.05 | 110.05 |
| 18 | 112.38 | 109.38 |
| 19 | 111.70 | 108.70 |
| 20 | 111.01 | 108.01 |
| 21 | 110.30 | 107.30 |
| 22 | 109.59 | 106.59 |
| 23 | 108.87 | 105.87 |
| 24 | 108.13 | 105.13 |
| 25 | 107.38 | 104.38 |
| 26 | 106.63 | 103.63 |
| 27 | 105.86 | 102.86 |
| 28 | 105.08 | 102.08 |
| 29 | 104.28 | 101.28 |
| 30 | 103.48 | 100.48 |
| 31 | 102.66 | 99.66 |
| 32 | 101.83 | 98.83 |
| 33 | 100.99 | 97.99 |
| 34 | 100.13 | 97.13 |
| 35 | 99.27 | 96.27 |
| 36 | 98.39 | 95.39 |
| 37 | 97.49 | 94.49 |
| 38 | 96.59 | 93.59 |
| 39 | 95.66 | 92.66 |
| 40 | 94.73 | 91.73 |
| 41 | 93.78 | 90.78 |
| 42 | 92.82 | 89.82 |
| 43 | 91.84 | 88.04 |
| 44 | 90.85 | 87.85 |
| 45 | 89.85 | 86.85 |
| 46 | 88.02 | 85.82 |
| 47 | 87.79 | 84.79 |
| 48 | 86.74 | 83.74 |
| 49 | 85.67 | 82.67 |
| 50 | 84.59 | 81.59 |
| 51 | 83.49 | 80.49 |
| 52 | 82.38 | 79.38 |
| 53 | 81.25 | 78.25 |
| 54 | 80.10 | 77.10 |
| 55 | 78.93 | 75.93 |
| 56 | 77.75 | 74.75 |
| 57 | 76.56 | 73.56 |
| 58 | 75.34 | 72.34 |
| 59 | 74.11 | 71.11 |
| 60 | 73.00 | 70.00 |

68 DELPOA - ZRZ

## AMENDMENT AND RENEWAL

THIS AMENDMENT AND RENEWAL (the "Agreement") is entered into as of this 19th day of May, 2003 by and between **Delphi Corporation**, a Delaware corporation, with its principal office at 2900 South Scatterfield Road, Anderson, IN 46018 ("Lessee"), and **Eireann II, a division of ATEL Transatlantic Investors, Inc.**, a California corporation (as successor in interest by assignment), with its principal offices at 600 California Street, 6th Floor, San Francisco, CA 94108 ("Lessor").

WHEREAS, Lessor and Lessee's predecessor in interest entered into that Master Lease Agreement No. 9708DEG545 dated as of August 29, 1997 ("Master Lease") and Equipment Schedule Nos. A-2, A-3, A-4, and A-5 thereto, as amended, dated as of December 12, 1997, March 2, 1998, April 3, 1998 and April 30, 1998, respectively (Equipment Schedule Nos. A-2, A-3, A-4 and A-5, as amended, and the Master Lease to the extent it applies thereto collectively, the "Leases");

WHEREAS, Lessee formerly was known as "Delphi Energy and Management Systems, a division of General Motors Corporation" and became a separate corporate entity effective as of September 16, 1998 and by operation of law assumed all rights and obligations under the Leases;

WHEREAS, Lessee changed its name to Delphi Corporation;

WHEREAS, Lessee and Lessor desire to memorialize such assumption by operation of law and name change in writing;

WHEREAS, Lessee and Lessor desire to extend the term of each of the Leases for an additional twelve (12) months;

NOW THEREFORE, the undersigned, for valuable consideration, the receipt and sufficiency of which is hereby acknowledged, hereby agree as follows in furtherance of the foregoing:

FOR VALUE RECEIVED, Lessee confirms all references to Lessee in the Leases shall mean Delphi Corporation and hereby acknowledges the terms of the Leases and and agrees to pay and perform all obligations of Lessee under the Leases (including, without limitation, indemnity obligations and any obligations to insure, maintain and, if any, purchase leased property).

Lessee and Lessor hereby agree to extend the terms of the Leases as follows:

| Equipment Schedule No. | Renewal Start | Renewal Maturity | Renewal Rent | No. of Pmts |
|---|---|---|---|---|
| A-2 | 1/1/03 | 12/31/03 | $33,850 | 12 mo. in adv. |
| A-3 | 5/1/03 | 4/30/04 | $8,860 | 12 mo. in adv. |
| A-4 | 6/1/03 | 5/31/04 | $5,835 | 12 mo. in adv. |
| A-5 | 6/1/03 | 5/31/04 | $9,275 | 12 mo. in adv. |

-1-

For each Lease, the Stipulated Loss Value during the term of the renewal shall be 72.03%.

For each Lease, the Termination Value during the term of the renewal shall be 75.03%.

In conjunction with this Agreement, Lessee agrees to promptly provide in form and substance acceptable to Lessor such other documents as may be reasonably required by Lessor from time to time, including, without limitation, any Uniform Commercial Code financing statements.

Except as amended hereby, all other terms and conditions of the Leases remain in full force and effect.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date set forth above.

Lessee:
Delphi Corporation
(f/k/a Delphi Energy and Management Systems)

By: _____

Name: James A. Bertrand

Title: President, S+I and Attae

Date: 6/3/03

Lessor:
Eireann II, a division of
ATEL Transatlantic Investors, Inc.

By: _____

Name: Vasco H. Mora
      Sr. Vice President
Title: of Manager

ATEL LEGAL DEPARTMENT
APPROVED
AS TO FORM

BY: _____

W:\AFG PORTFOLIOS\UBK\Delphi Energy\Full Assignment Assumption Consent without Recourse.(E8 Nos. A-2 to A-5).051903.doc

## AMENDMENT AND RENEWAL

THIS AMENDMENT AND RENEWAL (the "Agreement") is entered into as of this 19th day of May, 2003 by and between **Delphi Corporation**, a Delaware corporation, with its principal office at 2900 South Scatterfield Road, Anderson, IN 46018 ("Lessee"), and **Eireann III, a division of ATEL Transatlantic Investors, Inc.**, a California corporation (as successor in interest by assignment), with its principal offices at 600 California Street, 6th Floor, San Francisco, CA 94108 ("Lessor").

**WHEREAS,** Lessor and Lessee's predecessor in interest entered into that Master Lease Agreement No. 9708DEG545 dated as of August 29, 1997 ("Master Lease") and Equipment Schedule No. A-1 thereto dated as of October 7, 1997 (Equipment Schedule No. A-1, and the Master Lease to the extent it applies thereto collectively, the "Lease");

**WHEREAS,** Lessee formerly was known as "Delphi Energy and Management Systems, a division of General Motors Corporation" and became a separate corporate entity effective as of September 16, 1998 and by operation of law assumed all rights and obligations under the Lease;

**WHEREAS,** Lessee changed its name to Delphi Corporation;

**WHEREAS,** Lessee and Lessor desire to memorialize such assumption by operation of law and name change in writing;

**WHEREAS,** Lessee and Lessor desire to extend the term of the Lease for an additional twelve (12) months;

**NOW THEREFORE,** the undersigned, for valuable consideration, the receipt and sufficiency of which is hereby acknowledged, hereby agree as follows in furtherance of the foregoing:

**FOR VALUE RECEIVED,** Lessee confirms all references to Lessee in the Lease shall mean Delphi Corporation and hereby acknowledges the terms of the Lease and and agrees to pay and perform all obligations of Lessee under the Lease (including, without limitation, indemnity obligations and any obligations to insure, maintain and, if any, purchase leased property).

Lessee and Lessor hereby agree to extend the term of the Lease as follows:

| Equipment Schedule No. | Renewal Start | Renewal Maturity | Renewal Rent | No. of Pmts |
|---|---|---|---|---|
| A-1 | 6/1/03 | 5/31/04 | $2,835.00 | 12 mo. In adv. |

The Stipulated Loss Value during the term of the renewal shall be 72.03%.

The Termination Value during the term of the renewal shall be 75.03%.

In conjunction with this Agreement, Lessee agrees to promptly provide in form and substance acceptable to Lessor such other documents as may be reasonably required by Lessor from time to time, including, without limitation, any Uniform Commercial Code financing statements.

Except as amended hereby, all other terms and conditions of the Lease remain in full force and effect.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date set forth above.

Lessee:
Delphi Corporation
(f/k/a Delphi Energy and Management Systems)

By: _____

Name: James A. Bertrand

Title: President, S & I and AHG

Date: 6/3/03

Lessor:
Eireann III, a division of
ATEL Transatlantic Investors, Inc.

By: _____

Name: Vasco H. Morais
Sr. Vice President

Title: of Manager    6/3/03

ATEL LEGAL DEPARTMENT
APPROVED
AS TO FORM
BY: _____

W:\AFG PORTFOLIOS\UBK\Delphi Energy\Full Assignment Assumption  Consent without Recourse.(ES Nos. A-2 to A-5).051903.doc

# EQUIPMENT SCHEDULE NO. A-2

RSL

**EQUIPMENT SCHEDULE**
**SCHEDULE NO. A-2**
**DATED THIS 12TH DAY OF DECEMBER, 1997**
**TO MASTER LEASE AGREEMENT NO. 9708DEG545**
**DATED AS OF AUGUST 29, 1997**

Lessor and Mailing Address:

AMERICAN FINANCE GROUP, INC.
24 SCHOOL STREET
FLOOR 7
BOSTON, MA 02108

Lessee and Mailing Address:

GENERAL MOTORS CORPORATION,
DELPHI ENERGY & ENGINE SYSTEMS
2900 SOUTH SCATTERFIELD ROAD
ANDERSON, IN 46018-2439

Capitalized terms not defined herein shall have the meanings assigned to them in the Master Lease Agreement identified above ("Agreement"; said Agreement and this Schedule being collectively referred to as "Lease").

A.    EQUIPMENT

Pursuant to the terms of the Lease, Lessor agrees to acquire and lease to Lessee the Equipment listed on Annex A attached hereto and made a part hereof.

B.    FINANCIAL TERMS

1.    Advance Rent (if any):  N/A

2.    Capitalized Lessor's Cost:  $2,793,573.50

3.    Basic Term Lease Rate Factor:  .013462000

4.    Daily Lease Rate Factor:  .000448733

5.    Basic Term (Number of Months):  60

6.    Basic Term Commencement Date:  01-01-98

7.    Equipment Location:  2900 South Scatterfield Road, Anderson, IN 46013

8.    Lessee's Federal Tax ID Number:  38-0572515

9.    Supplier:  Liebherr-America, Inc., Saline, MI / Emag-Bohle L.L.C., Farmington Hills, MI

10.    Last Delivery Date:  N/A

11.    First Termination Date:  04-01-98 ( 3 ) months after the Basic Term Commencement Date.

12.    Option Price:  Fair Market Value

Rev. 5/14/92

C.    TAX BENEFITS

Depreciation Deductions:

a.    Depreciation Method:  Two hundred percent (200%) declining balance method, switching to straight line method for the first (1st) taxable year for which using the straight line method with respect to the adjusted basis as of the beginning of such year will yield a larger allowance.

b.    Recovery Period: 7 years                                                                                        .

c.    Basis:  One Hundred percent (100%) of Capitalized Lessor's Cost.

D.    TERM AND RENT

1.    Interim Rent.  For the period from and including the Lease Commencement Date to the Basic Term Commencement Date ("Interim Period"), Lessee shall pay as rent ("Interim Rent") for each unit of Equipment, the product of the Daily Lease Rate Factor times the Capitalized Lessor's Cost of such unit times the number of days in the Interim Period.  Interim Rent shall be due on January 1, 1998.

2.    Basic Term Rent.  Commencing on ___January 1, 1998___ , and on the same day of each month thereafter (each, a "Rent Payment Date") during the Basic Term, Lessee shall pay as rent ("Basic Term Rent") the product of the Basic Term Lease Rate Factor times the Capitalized Lessor's Cost of all Equipment on this Schedule.

3.    Adjustment to Capitalized Lessor's Cost.  Lessee hereby irrevocably authorizes Lessor to adjust the Capitalized Lessor's Cost up or down by no more than ten percent (10%) to account for equipment change orders, equipment returns, invoicing errors, and similar matters.  Lessee acknowledges and agrees that the Rent shall be adjusted as a result of such change in the Capitalized Lessor's Cost (pursuant to paragraphs 1 and 2 above).  Lessor shall send Lessee a written notice stating the final Capitalized Lessor's Cost, if different from that disclosed on this Schedule.

E.    INSURANCE

1.    Commercial (broad form comprehensive) general liability, including contractual liability coverage, in limits of not less than ___Five Million___ dollars ($5,000,000.00) per occurrence combined single limit for personal injury and property damage.

2.    "All Risks" property insurance for the Equipment in an amount equal to the Stipulated Loss Value, with no co-insurance requirement.

Except as expressly modified hereby, all terms and provisions of the Agreement shall remain in full force and effect.  This Schedule is not binding or effective with respect to the Agreement or Equipment until executed on behalf of Lessor and Lessee by authorized representatives of Lessor and Lessee, respectively.

IN WITNESS WHEREOF, Lessee and Lessor have caused this Schedule to be executed by their duly authorized representatives as of the date first above written.

LESSOR:                                                    LESSEE:

AMERICAN FINANCE GROUP, INC.                               GENERAL MOTORS CORPORATION,
                                                           DELPHI ENERGY & ENGINE SYSTEMS
By _____                                     By _____
Name ___L I S A   G.   R Y A N___                          Name ___Donald L. Runkle___
Title _____                                  Title ___Vice President & General___ Manager

COUNTERPART NO. _1_ OF _2_ SERIALLY NUMBERED
MANUALLY EXECUTED COUNTERPARTS. TO THE EXTENT
IF ANY THAT THIS DOCUMENT CONSTITUTES CHATTEL
PAPER UNDER THE UNIFORM COMMERCIAL CODE, NO
SECURITY INTEREST MAY BE CREATED THROUGH THE
TRANSFER AND POSSESSION OF ANY COUNTERPART
OTHER THAN COUNTERPART NO. 1.

Rev. 5/14/92

ANNEX A
TO
SCHEDULE NO. A-2
TO MASTER LEASE AGREEMENT NO. 9708DEG545
DATED AS OF AUGUST 29, 1997

DESCRIPTION OF EQUIPMENT

| Manufacturer | Serial Numbers | Type and Model of Equipment | Number of Units | Cost Per Unit |
|---|---|---|---|---|
| Emag-Bohle LLC | 6M720.05165 6M720.05166 | VSC 250 Twin Machine w/ Hopper Feed System | 2 | $721,786.25 |
| Liebherr | FN0960 FN0961 FN0962 | LC 82 CNC Hobbing Machine | 3 | $450,000.00 |

Initials: _____        _____
　　　　　　Lessor　　　　　　　　　　Lessee

Rev. 5/14/92

ANNEX B
TO
SCHEDULE NO. A-2
TO MASTER LEASE AGREEMENT NO. 9708DEG545
DATED AS OF AUGUST 29, 1997

PURCHASE ORDER ASSIGNMENT AND CONSENT

THIS ASSIGNMENT AGREEMENT, dated as of ____December 12, 1997____ ("Agreement), between American Finance Group, Inc. ("Lessor") and General Motors Corporation, Delphi Energy & Engine Management Systems ("Lessee").

## WITNESSETH:

Lessee desires to lease certain equipment ("Equipment") from Lessor pursuant to the above schedule and lease (collectively, "Lease"). All terms used herein which are not otherwise defined shall have the meaning ascribed to them in the Lease.

Lessee desires to assign, and Lessor is willing to acquire, certain of Lessee's rights and interest under the purchase order(s), agreement(s), and/or document(s) (the "Purchase Orders") Lessee has heretofore issued to the Supplier(s) of such Equipment.

NOW, THEREFORE, in consideration of the mutual covenants herein contained, Lessor and Lessee hereby agree as follows:

SECTION 1.   ASSIGNMENT.

(a)    Lessee does hereby assign and set over to Lessor all of Lessee's rights and interests in and to such Equipment and the Purchase Orders as the same relate thereto including, without limitation, (i) the rights to purchase, to take title, and to be named the purchaser in the bill of sale for such Equipment, (ii) all claims for damages in respect of such Equipment arising as a result of any default by the Supplier (including, without limitation, all warranty and indemnity claims), and (iii) any and all rights of Lessee to compel performance by the Supplier.

(b)    If, and so long as, no default exists under the Lease, Lessee shall be, and is hereby, authorized during the term of the Lease to assert and enforce, at Lessee's sole cost and expense, from time to time in the name of and for the account of Lessor and/or Lessee, as their interest may appear, whatever claims and rights Lessor may have against any Supplier of the Equipment.

SECTION 2.   CONTINUING LIABILITY OF LESSEE.

It is expressly agreed that, anything herein contained to the contrary notwithstanding:  (a) Lessee shall at all times remain liable to the Supplier to perform any duties and obligations of the purchaser under the Purchase Orders, except respecting payment provided for in the Lease so long as Lessee has complied with its obligations under Section 1(b) of the Lease, to the same extent as if this Agreement had not been executed, (b) the execution of this Agreement shall not modify any contractual rights of the Supplier under the Purchase Orders, except respecting payment provided for in the Lease, and the liabilities of the Supplier under the Purchase Orders shall be to the same extent and continue as if this Agreement had not been executed, (c) the exercise by the Lessor of any of the rights hereunder shall not release Lessee from any of its duties or obligations to the Supplier, except payment provided for in the Lease, under the Purchase Orders, and (d) Lessor shall not have any obligation or liability under the Purchase Orders by reason of, or arising out of, this Agreement or be obligated to perform any of the obligations or duties of Lessee under the Purchase Orders or to make any payment (other than under the terms and conditions set forth in the Lease) or to make any inquiry of the sufficiency of or authorization for any payment

Rev. 5/14/92

received by any Supplier or to present or file any claim or to take any other action to collect or enforce any claim for any payment assigned hereunder.

　　　　IN WITNESS WHEREOF, the parties have caused this Agreement to be duly executed as of the date first above written.

LESSOR:                                    LESSEE:

AMERICAN FINANCE GROUP, INC.               GENERAL MOTORS CORPORATION,
                                           DELPHI ENERGY & ENGINE SYSTEMS

By _T.R. M. Ryan_                          By _____

Title _Manager Trade Underwriting_        Title _Vice President & General_ Manager


CONSENT AND AGREEMENT


　　　　Supplier hereby consents to the above assignment agreement ("Agreement") and agrees not to assert any claims against Lessor or Lessee inconsistent with such Agreement.  Supplier agrees that the Purchase Orders are hereby amended as necessary to provide as follows:

　　　　(a)　　Title to and risk of loss of the Equipment shall pass to Lessor upon Lessee's execution of the Certificate for such Equipment; and

　　　　(b)　　Supplier hereby waives and discharges any security interest, lien, or other encumbrance in or upon the Equipment and agrees to execute such documents as Lessor may request evidencing the release of any such encumbrance and the conveyance of title thereto to Lessor.

　　　　(c)　　Supplier agrees that on and after the date this Consent is executed, it will not make any addition to or delete any items from the Equipment referred to in the Agreement without the prior written consent of both Lessor and Lessee.

　　　　IN WITNESS WHEREOF, the undersigned has caused this Consent to be executed this _____ day of December, 1997.

　　　　　　　　　　　　　　　　　　　SUPPLIER:

　　　　　　　　　　　　　　　　　　　_____

　　　　　　　　　　　　　　　　　　　By _____

　　　　　　　　　　　　　　　　　　　Title _____

Rev. 5/14/92