Hearing Date and Time:  June 30, 2010 at 10:00 a.m., E.T.
Objection Deadline:  May 13, 2010 at 4:00 p.m., E.T.

JACOB & WEINGARTEN, P.C.
2301 W. Big Beaver, Ste. 777
Troy, Michigan  48084
Telephone:  (248) 649-1900
Facsimile:  (248) 649-2920
Howard S. Sher (*admitted pro hac vice*)
Alan J. Schwartz (*admitted pro hac vice*)

MILLER & CHEVALIER CHARTERED
655 15th Street, N.W., Ste. 900
Washington, D.C.  20005
Telephone:  (202) 626-5800
Facsimile:  (202) 626-5801
Anthony F. Shelley (*admitted pro hac vice*)
Timothy P. O'Toole (*admitted pr hac vice*)
Michael N. Khalil

Attorneys for Dennis Black, Charles Cunningham,
Kenneth Hollis, and the Delphi Salaried Retiree Association

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x
: 
In re                                                   :        Chapter 11
: 
DPH HOLDINGS CORP., *et al.,*          :        Case No. 05-44481(RDD)
: 
Reorganized Debtors.              :        (Jointly Administered)
: 
-------------------------------------------------------------x

**REPLY OF THE SALARIED RETIREES TO REORGANIZED DEBTORS'**
**LIMITED OBJECTION TO MOTION OF SALARIED RETIREES FOR**
**ORDER CONFIRMING THAT SECOND AMENDED COMPLAINT DOES NOT**
**VIOLATE MODIFIED PLAN OR PLAN MODIFICATION ORDER**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...........................................................................................1

BACKGROUND ...............................................................................................................3

    A.    These Bankruptcy Proceedings and Factual Statements by the
           Reorganized Debtors.....................................................................................3

    B.    The Michigan Litigation ..............................................................................5

    C.    The Reorganized Debtors' Limited Objection.............................................7

SALARIED RETIREES' REPLY ARGUMENTS ..............................................................9

    A.    The Salaried Retirees Do Not Seek Restoration of the Pension Plan
           to the Reorganized Debtors..........................................................................9

    B.    The Objection Is Barred by the Earlier Stipulation and Order .............................12

    C.    Even If Restoration of the Plan to the Reorganized Debtors Were
           Sought in the Michigan Litigation, It Would Not Violate the
           Modified Plan or the Plan Modification Order .......................................14

    D.    The Equitable Mootness Doctrine Is Inapplicable, and, Equity
           Instead Favors the Salaried Retirees' Position.......................................18

        1.    The Equitable Mootness Doctrine Applies Only Where
                There Is an Appeal of a Bankruptcy Court Order, Which Is
                Not the Case Here ......................................................................18

        2.    Equity Requires that the Reorganized Debtors Abide by the
                September Stipulation, and that the Michigan Court, in
                Ruling on the Propriety of the Plan's Termination, Not Be
                Constrained in the Relief It Can Award...................................22

CONCLUSION...............................................................................................................23

# TABLE OF AUTHORITIES

## *CASES*

*Atlantic Coast Line R.R. Co. v. Fla.*,
    295 U.S. 301 (1935)..................................................................................................11

*Bank of N.Y. Trust Co., NA v.  Official Unsecured Creditors' Comm.e (In re Pac. Lumber*
    *Co.)*, 584 F.3d 229 (5th Cir. 2009) .................................................................18, 23

*Chateaugay Corp. v. LTV Steel Co. (In re Chateaugay Corp.)*,
    10 F.3d 944 (2d Cir. 1993)........................................................................19, 22

*In re Continental Airlines*,
    91 F.3d 553 (3d Cir. 1996).................................................................................19

*Deutsche Bank AG v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network,*
    *Inc.)*, 416 F.3d 136 (2d Cir. 2005) .........................................................................19

*In re Ionosphere Clubs, Inc.*,
    85 F.3d 992 (2d Cir. 1996).................................................................................22

*Kosakow v. New Rochelle Radiology Assocs, P.C.*,
    274 F.3d 706 (2d Cir. 2001)........................................................................22, 23

*Mac Panel Co. v. Va. Panel Corp.*,
    283 F.3d 622 (4th Cir. 2002) .............................................................................21

*Retired Pilot Ass'n of US Airways, Inc. v. US Airways Group (In re US Airways Group)*,
    369 F.3d 806 (4th Cir. 2004) ........................................................................20, 21

*Search Market Direct, Inc. v. Jubber (In re Paige)*,
    584 F.3d 1327 (10th Cir. 2009) ..........................................................................19

## *STATUTES*

29 U.S.C. § 1303.............................................................................................17, 18, 21

29 U.S.C. § 1342..................................................................................................4, 7, 16

29 U.S.C. § 1347....................................................................................................14

TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:

Dennis Black, Charles Cunningham, Kenneth Hollis, and the Delphi Salaried Retiree

Association (collectively, the "Salaried Retirees") respectfully submit this reply to the Limited

Objection of the Reorganized Debtors to the Motion of Salaried Retirees for an Order

Confirming that the Second Amended Complaint Does Not Violate the Modified Plan or the Plan

Modification Order.

## PRELIMINARY STATEMENT

Currently pending before the Court is the amended motion of the Salaried Retirees to

confirm that the Second Amended Complaint they seek to file in *Black v. PBGC*, No. 2:09-cv-

12874-AJT-MKM (E.D. Mich.) ("the Michigan Litigation"), does not violate the Modified Plan

or the Plan Modification Order.  As the Reorganized Debtors recognize, the amended motion

was filed as a "precautionary measure."  *See* Reorganized Debtors' Ltd. Obj. to Mot. of Salaried

Retirees for Order Confirming that Second Am. Compl. Does Not Violate Mod. Plan or Plan

Mod. Order [hereinafter "Obj."] ¶ 9.  The only changes proposed by the Salaried Retirees to the

original complaint filed in the Michigan Litigation come in the final claim -- or claim 5 --

seeking relief against Treasury Department officials, the Auto Task Force, and formerly against

General Motors LLC ("GM").  **Significantly, the Second Amended Complaint does not seek**

**to make alterations to the first four claims contained in the original complaint in the**

**Michigan Litigation, all of which claims are against the Pension Benefit Guaranty**

**Corporation ("PBGC") and challenge the PBGC's termination of the Delphi Retirement**

**Program for Salaried Employees (the "Pension Plan"), a pension plan that earlier was**

**sponsored by Delphi Corporation ("the Debtor").  The original complaint was filed in the**

**Michigan Litigation only after the form of the complaint was stipulated to by the Reorganized Debtors and approved by this Court.**

Though the Second Amended Complaint does not alter the four claims against the PBGC, and indeed mirrors the language in the original complaint, the Reorganized Debtors are using the Salaried Retirees' motion as an opportunity to improperly object to the claims asserted by the Salaried Retirees against the PBGC -- albeit in what they term a "limited" manner.  In addition to the fact that the claims against the PBGC in the Second Amended Complaint are unchanged from the claims asserted against the PBGC in the original complaint, the Reorganized Debtors have not pinpointed any specific language in the Second Amended Complaint that constitutes some sort of an affront on the Modified Plan or the Plan Modification Order, and have not identified any action the Salaried Retirees seek to take or have ever taken against the PBGC in the Michigan Litigation that causes offense to this Court's orders or proceedings.  Nonetheless, the Reorganized Debtors opaquely object to the Second Amended Complaint *if* or *to the extent that* or *insofar as* it might be read to result in the Pension Plan being restored to the Reorganized Debtors.

The Court should overrule the Reorganized Debtors' objection for the following reasons: (i) the objection is academic and hypothetical, for it endeavors to avert relief (*i.e.* restoration of the Pension Plan to the Reorganized Debtors) nowhere sought by -- and indeed vehemently opposed by -- the Salaried Retirees in the Michigan Litigation; (ii) the Reorganized Debtors are barred from raising their current objection as a result of their earlier stipulation and this Court's order concerning the original complaint; (iii) the Modified Plan and the Plan Modification Order do not prohibit the restoration of the Pension Plan to the Reorganized Debtors; and (iv) the "equitable mootness doctrine" on which the Reorganized Debtors rely does not assist their cause,

and, further, equity estops the Reorganized Debtors from further pressing their objection.  For these reasons, the Reorganized Debtors' objection lacks merit, and the Court should grant the Salaried Retirees' amended motion to confirm that the Second Amended Complaint does not violate the Modified Plan or the Plan Modification Order.

## BACKGROUND

### A.    These Bankruptcy Proceedings and Factual Statements by the Reorganized Debtors

Certainly the Court is far more familiar with these proceedings than are the Salaried Retirees, and the Salaried Retirees therefore do not seek for present purposes lengthily to recite relevant events in this Court.  However, the Salaried Retirees do wish at the outset to correct one set of the glaring factual misstatements in the Reorganized Debtors' background description in their objection.  In describing the Court's entry of the Modified Plan, the Reorganized Debtors state that "the Court found, among other things, that . . . reorganization under the Modified Plan would not *have been* possible so long as the Debtors' pension obligations existed" and that "there were clear grounds under [ERISA] . . . for the PBGC's termination of the Debtors' pension plans and for the Debtors *to have entered* into termination and trusteeship agreements with the PBGC."  Obj. ¶ 4 (emphasis added).

In reality, the Reorganized Debtors here have both the tense and the substance wrong. The Court could not have, at the time of the hearing on the Modified Plan, blessed any prior alleviation of the Debtors' pension obligations and pension termination and trusteeship agreements because those were not entered between the Debtor and the PBGC until *after* entry of the Modified Plan.  Furthermore, the Court has carefully refrained from sanctioning whether the later termination of the Pension Plan (which did occur outside of these proceedings) comported with ERISA, since solely a federal district court had (and has) jurisdiction, under ERISA, to

3

adjudicate the termination of the Pension Plan.  *See* 29 U.S.C. § 1342.  The Salaried Retirees

point out these factual errors in the background section of the Reorganized Debtors' objection

because the misstatements are the Reorganized Debtors' first efforts in the course of the

objection illegitimately to imply that the termination of the Pension Plan was part and parcel of

the Modified Plan and Plan Modification Order, such that any effort to restore the Pension Plan

to the Reorganized Debtors must necessarily constitute a breach of the Modified Plan and the

Plan Modification Order.

      The Salaried Retirees also wish to emphasize that, earlier in these proceedings, on

September 11, 2009, the Debtors stipulated to the filing of the original complaint in the Michigan

Litigation, a complaint containing the same claims against the PBGC as the Second Amended

Complaint.  *See* Stipulation Concerning the Automatic Stay in Connection with the

Commencement of an Action Against the PBGC (Exh. A to this Reply) [hereinafter

"Stipulation"]; *compare* Salaried Retirees' Orig. Compl., in *Black v. PBGC*, No. 2:09-cv-13616-

AJT-DAS (E.D. Mich.) (attached to the Stipulation, which is Exh. A to this Reply) *with*

Proposed Second Am. Compl., in *Black v. PBGC*, No. 2:09-cv-13616-AJT-DAS (E.D. Mich.)

(Exh. 2 to Salaried Retirees' Am. Mot. for Order Confirming that Second Am. Compl. Does Not

Violate the Mod. Plan or the Plan Mod. Order [hereinafter "Salaried Retirees' Am. Mot."]).  In

the Stipulation, which was approved pursuant to an order of this Court, the Debtors agreed to any

necessary modification of the automatic stay (though the Salaried Retirees did not concede in the

Stipulation that any such modification was necessary) to allow for the commencement of the

Michigan Litigation, provided that "*the plaintiffs to the Action* shall not use the Action or the

proceedings related thereto as a collateral attack against any order of this Court."  Stipulation ¶ 1

(emphasis added).  The Debtors also reserved their right "to contend that the Salaried Workers

through their proceedings subsequent to the initiation of the Action, or any other party through

any proceeding, are attempting to collaterally challenge a prior order of this Court"; likewise,

"the Salaried Workers reserve[d] their rights to contest any aspect of such a contention in the

appropriate court." *Id.* ¶ 2.

> **B.    The Michigan Litigation**

The Court is also already familiar with the course of proceedings in the Michigan

Litigation, with the Salaried Retirees having previously been before this Court seeking approval

for the filing of the original complaint in the Michigan Litigation and in connection with the

dispute resulting in GM's dismissal from the Michigan Litigation.  With respect to the current

status of proceedings in the Michigan Litigation, the Salaried Retirees moved for a preliminary

injunction seeking to halt -- until their complaint could be finally adjudicated -- the PBGC from

diminishing their pension benefits to amounts the PBGC asserts are available under the statutory

guidelines applicable for the terminated plans it insures.  The U.S. District Court for the Eastern

District of Michigan ("the Michigan Court") thereafter issued an order requiring the PBGC either

to escrow "the difference between the Plaintiffs' current benefits levels paid under the [Pension]

Plan and the reduced levels of benefits Plaintiffs are set to begin receiving" or to "file a

stipulation with th[e] Court specifying that if th[e] Court finds, after a consideration of the merits

of Plaintiffs' complaint, that the PBGC improperly terminated the Plan and wrongfully reduced

benefits, then Plaintiffs are entitled in this action to (and will be compensated by the PBGC with)

the difference between their current levels paid under the Plan and the reduced level of benefits

plaintiffs are set to begin receiving."  Order on Pls.' Mot. for Prelim. Inj., in *Black v. PBGC*, No.

2:09-cv-13616-AJT-DAS (E.D. Mich.) at 2-3 (Dkt. No. 101 Jan. 26, 2010) (Exh. B to this Reply)

[hereinafter "Mich. Ct.'s Prelim. Inj. Order"].

That order on the preliminary injunction now has spawned:  (1) a series of submissions *from the PBGC* asserting that the Michigan Court has overstepped its bounds and that the only relief available to the Salaried Retirees in the Michigan Litigation is relinquishment of the Pension Plan back to the Debtor; (2) strong responses from the Salaried Retirees *opposing* restoration of the Pension Plan and instead insisting on relief solely against the PBGC; and (3) a ruling from the Michigan Court rejecting the PBGC's effort to limit relief to restoration of the Pension Plan to the Debtor and confirming that the Salaried Retirees are entitled to equitable relief *against the PBGC* in the event they succeed on the merits in the Michigan Litigation.  *See* PBGC's Mot. to Alter or Amend the Ct.'s Jan. 26, 2010 Order on Pls.' Mot. for Prelim. Inj., in *Black v. PBGC*, No. 2:09-cv-13616-AJT-DAS (E.D. Mich.) at 2-3 (Dkt. No. 107 Jan. 28, 2010) (Exh. C to this Reply) [hereinafter "PBGC Mot. to Amend in *Black v. PBGC*"]; Pl.'s Obj. to PBGC's Mot. to Alter or Amend the Ct.'s Jan. 26, 2010 Order on Pls.' Mot. for Prelim. Inj., in *Black v. PBGC*, No. 2:09-cv-13616-AJT-DAS (E.D. Mich.) at 3-7 (Dkt. No. 110 Jan. 29, 2010) (Exh. D to this Reply) [hereinafter "Salaried Retirees' Obj. to PBGC Mot. to Amend in *Black v. PBGC*"]; Order Denying Def. PBGC's Mot. to Alter or Amend the Ct.'s Jan. 26, 2010 Order on Pls.' Mot. for Prelim. Inj., in *Black v. PBGC*, No. 2:09-cv-13616-AJT-DAS (E.D. Mich.) at 2-3 (Dkt. No. 122 Feb. 17, 2010) (Exh. E to this Reply) [hereinafter "Mich. Ct.'s Order Denying PBGC Mot. to Amend"]; PBGC's Stmt. regarding Ct.'s Jan. 26, 2010 Order on Pl.'s Mot. for Prelim. Inj., in *Black v. PBGC*, No. 2:09-cv-13616-AJT-DAS (E.D. Mich.) at 2 (Dkt. No. 126 Mar. 4, 2010) (Exh. F to this Reply) [hereinafter "PBGC Stmt. in *Black v. PBGC*"]; Pls.' Mot. for an Order to Show Cause as to Why the PBGC Should Not Be Held in Violation of Ct.'s Order on Prelim. Inj., in *Black v. PBGC*, No. 2:09-cv-13616-AJT-DAS (E.D. Mich.) at 3-5 (Dkt.

No. 130 Mar. 16, 2010) (Exh. G to this Reply) [hereinafter "Salaried Retirees' Mot. for an Order

to Show Cause in *Black v. PBGC*"].[1]

### C.    The Reorganized Debtors' Limited Objection

In the text of their objection, the Reorganized Debtors do not object to any specific

language in the proposed Second Amended Complaint with respect to the claims against the

PBGC.  Again, they had stipulated in September 2009 to the original complaint containing the

same claims against the PBGC.  The Reorganized Debtors assert that a line in the prayer for

relief (again, present in the original complaint to whose filing they stipulated) contains an

implication that they do not like:  according to the Reorganized Debtors, "the Salaried Retirees in

their Second Amended Complaint seek to undo the termination [of the Plan] and restore the

Pension Plan."   Obj. ¶ 7.  If that would mean "the Pension Plan being put to the Reorganized

Debtors," the Reorganized Debtors maintain that the Second Amended Complaint "implies a

potential collateral attack on the Modified Plan and the Modification Approval Order."  *Id.* ¶ 10.

The line in the prayer for relief in the Second Amended Complaint that supposedly leads to this

implication is the request that the Michigan Court "[a]ward[] appropriate equitable relief against

the Defendants to undo the Plan's termination and to place the parties in the position they were

prior to termination of the Plan."  Second Am. Compl., ¶ E of Prayer for Relief (attached as Exh.

2 to Salaried Retirees' Am. Mot.).

---

[1] The Salaried Retirees must also correct another statement in the background portion of the Reorganized
Debtors' objection, this time describing a prior lawsuit in Michigan.  After noting that the Salaried
Retirees in earlier litigation in Michigan sought to enjoin the Pension Plan's fiduciaries from entering into
any agreement with the PBGC to terminate the Pension Plan, but then dismissed that action, the
Reorganized Debtors assert that the Salaried Retirees dismissed that case supposedly "[b]ecause it was
clear that the Salaried Retirees had violated the automatic stay."  Obj. ¶ 5.  This Court never so found;
instead, the Salaried Retirees dismissed that lawsuit because the PBGC in the meantime had commenced
(though it later aborted) an action to terminate the Pension Plan, which under ERISA automatically stayed
the Salaried Retirees' lawsuit against the fiduciaries.  *See* 29 U.S.C. § 1342(f).

Importantly, in the objection, the Reorganized Debtors do not object as a general matter to the Second Amended Complaint, but only to the relief requested in the Second Amended Complaint "[t]o the extent that," or "if," or "insofar as" the Second Amended Complaint "seeks to undo the PBGC's termination of the Pension Plan and *restore the Pension Plan to the Reorganized Debtors*." Obj. ¶ 18 (emphasis added). Accordingly, the Reorganized Debtors' objection appears aimed not at any specific language in the Second Amended Complaint or at its claims as a general matter, but at preventing the alleged contingency that the Second Amended Complaint's adjudication, in their view, conceivably could lead to the restoration of the Plan to them. As their relief, the Reorganized Debtors ask the Court to "ma[ke] clear that obligations relating to the Pension Plan could never be imposed on the Reorganized Debtors." *Id.* ¶ 13.

With respect to the legal theory for their objection, the Reorganized Debtors contend that, notwithstanding their stipulation in September 2009 to the filing of the original complaint containing the same language, they now have a second bite at the apple to contest the agreed upon language, pursuant to the equitable mootness doctrine. In addition, the Reorganized Debtors assert that restoration of the Pension Plan to the Reorganized Debtors (if that were sought by the Salaried Retirees) would violate the Modified Plan and the Modification Approval Order.

## SALARIED RETIREES' REPLY ARGUMENTS

The Court should overrule the Reorganized Debtors' objection.  First, the objection is based on a false premise -- namely, that the Salaried Retirees seek to restore the Pension Plan to the Reorganized Debtors.  The Salaried Retirees only seek relief from the PBGC.  They do not seek any relief against the Reorganized Debtors and have fought at every turn in the Michigan Litigation *the PBGC's effort* to press for relief that might send the Pension Plan back to the Reorganized Debtors.  Moreover, the Michigan District Court has rejected restoration of the Pension Plan to the Reorganized Debtors as a viable form of relief on the claims against the PBGC.   Second, the stipulated order entered by the Court in September 2009 precludes the Reorganized Debtors from seeking to alter the language of the Second Amended Complaint that replicates the language in the original complaint.  Third, even if the Second Amended Complaint sought to restore the Pension Plan to the Reorganized Debtors (which, again, it does not), such relief would not violate the Modified Plan or the Plan Modification Order.  Finally, even if the Second Amended Complaint sought restoration of the Pension Plan to the Reorganized Debtors (which it does not), and even if a restoration would be contrary to the Modified Plan or the Plan Modification Order (which it would not), the equitable mootness doctrine is no barrier to the Salaried Retirees' further pursuit of the claims against the PBGC that the Court earlier authorized and to which the Reorganized Debtors earlier stipulated.

A.     **The Salaried Retirees Do Not Seek Restoration of the Pension Plan to the Reorganized Debtors**

The Reorganized Debtors' objection rests on a false premise:  according to them, the Salaried Retirees may be "seeking to put the Pension Plan to the Reorganized Debtors."  Obj. ¶ 12.  The Salaried Retirees seek no such relief in the Michigan Litigation.  As relevant to the claims against the PBGC, the Salaried Retirees seek relief solely against the PBGC; indeed, the

Reorganized Debtors are not even parties to the Michigan Litigation.  In the part of the prayer for

relief that the Reorganized Debtors now question, the Salaried Retirees ask the Michigan Court

to "[a]ward[] appropriate equitable relief *against the Defendants* to undo the Plan's termination

and to place *the parties* in the position they were prior to termination of the Plan."  Second Am.

Compl., ¶ E of the Prayer for Relief (attached as Exh. 2 to Am. Mot.) (emphasis added); *see* Obj.

¶ 8.

        In numerous filings in the Michigan Litigation, the Salaried Retirees have made clear that

the relief they seek is for *the PBGC*, which currently holds the Pension Plan, to be required to

administer the Pension Plan as if it had never been terminated.  In addition, the Michigan Court

has expressly rejected any notion that the Pension Plan should be returned to the Reorganized

Debtors, as that would -- the Michigan Court has found -- constitute no relief at all for the

Salaried Retirees.

        For instance, earlier this year, in its motion to amend the Michigan Court's ruling that the

PBGC escrow funds or otherwise agree to pay the Salaried Retirees amounts (in the event they

prevail) equal to the pension benefits lost during the course of completing the Michigan

Litigation, *the PBGC* asserted that the only appropriate equitable relief in the event of a victory

by the Salaried Retirees would be an order "requir[ing] PBGC to return the Plan to DPH

Holdings, Inc. ('Old Delphi'), the liquidating debtor, which would then be obligated to

administer the Plan and pay full Plan benefits" and which then ultimately would go bankrupt

again.  PBGC Mot. to Amend in *Black v. PBGC* at 3 (Exh. C to this Reply).  In response, the

Salaried Debtors vehemently opposed the relief suggested by the PBGC, calling it "completely

unfounded as a matter of law" and inadequate to make the Salaried Retirees whole.  Salaried

Retirees' Obj. to PBGC Mot. to Amend in *Black v. PBGC*, at 6 (Exh. D to this Reply).  The

Salaried Retirees said:

> [W]hat the PBGC broke, *the PBGC must fix*.  Or as Justice Cardozo more eloquently put it, "a situation so unique is a summons to a court of equity to mould its plastic remedies in adaption to the instant need."  *Atl. Coast Line R.R. Co. v. Fla.*, 295 U.S. 301, 316 (1935).  In effect, the PBGC argues that it may act negligently, unlawfully, even unconstitutionally, and foist the consequences for those bad actions on the very people that it exists to protect, without having to shoulder any of the responsibility itself.  It does so without reference to any authority other than its own indignation.  However, Congress specifically authorized those aggrieved by the agency's actions to seek equitable relief.  As such, *it is the PBGC* that will have to find a way to make Plaintiffs whole in the event they prevail on the merits.

*Id.* at 7-8 (emphasis added).

Ruling on the PBGC's motion to amend the preliminary injunction order, the

Michigan Court rejected the PBGC's position and denied the PBGC's motion.  The

Michigan Court termed as tantamount to no relief at all the PBGC's stance that, in the

event of a victory by the Salaried Retirees, the Michigan Court could only order the Plan

returned to the Debtor.  Agreeing with the Salaried Retirees' point that "they are entitled

to equitable relief if the plan were wrongly terminated," the Michigan Court "decline[d]

to accept Defendant's position that Plaintiffs cannot obtain any relief in this lawsuit if the

Court concludes that the PBGC acted improperly."  Mich. Ct.'s Order Denying PBGC

Mot. to Amend in *Black v. PBGC* at 2-3 (Exh. E to this Reply).

Later, the PBGC made still another filing -- trying further to avoid holding the pension

funds in escrow or an obligation to replenish lost benefits -- in which it insisted that the

Michigan Court again was hamstrung as a matter of equity to restoring the Pension Plan back to

the Debtor in the event of a victory by the Salaried Retirees.  *See* PBGC'S Stmt. in *Black v.

PBGC* at 2 (Exh. F to this Reply) (noting that, in the event the Pension Plan's termination were

invalidated, the PBGC would agree to "relinquish the Plan and its more than $2 billion in assets, along with payment and participant records that will allow the administrator to determine and pay the amount of Plan benefits owed to each participant to date"). Once more, the Salaried Retirees strongly opposed the PBGC's position. They filed a motion for an order to show cause (which remains pending) as to why the PBGC should not be held in violation of the Michigan Court's order insofar as the PBGC has not held the disputed funds in escrow and has not stipulated to pay the Salaried Retirees amounts equal to the lost benefits. There, the Salaried Retirees repeated their arguments that relinquishing the Pension Plan to the Debtor is an unacceptable, wholly inadequate remedy and that they are entitled to be made whole *by the PBGC*. *See* Salaried Retirees' Mot. for an Order to Show Cause at 4-5 (Exh. G to this Reply).

Thus, not only does the Second Amended Complaint not seek relief against the Reorganized Debtors, but the Salaried Retirees have fought vociferously against any effort (pressed by the PBGC) eventually to relinquish the Pension Plan to the Debtor; and the Michigan Court has rejected putting the Pension Plan back to the Debtor as a viable form of equitable relief in the Michigan Litigation. Under these circumstances, the Reorganized Debtors' objection seeks to prevent a result neither sought nor sanctioned in the Michigan Litigation. As a consequence, the Court should overrule the Reorganized Debtors' objection, preventing them from further holding up or complicating pursuit of the Second Amended Complaint in the Michigan Litigation.

### B.    The Objection Is Barred by the Earlier Stipulation and Order

The order entered in September 2009 by the Court approving the stipulation between the Reorganized Debtors and the Salaried Retirees allowing for the filing of the original complaint in the Michigan Litigation precludes the Reorganized Debtors from now objecting to the same

language contained in the Second Amended Complaint. There is no dispute that, with respect to the claims against the PBGC, the Second Amended Complaint does not differ from the original complaint; and the line in the prayer for relief on which the Reorganized Debtors focus is identical to one in the original complaint. Having stipulated to the use of that language already, the Reorganized Debtors cannot now object to it. Put differently, it is now approximately eight months since the entry of the order approving the stipulation and the effective date of the Modified Plan, the Second Amended Complaint contains the same claims already asserted against the PBGC, and the Reorganized Debtors never appealed the order approving the stipulation or sought relief from such order. In such circumstances, the Reorganized Debtors should not now be heard to object to the same claims being asserted in the Second Amended Complaint, and such an objection is without merit.

The Stipulation did contain a proviso that the Reorganized Debtors were consenting to the filing of the original complaint in the Michigan Litigation provided that "the plaintiffs to the Action shall not use the Action . . . as a collateral attack against any order of this Court." Stipulation ¶ 1. The Reorganized Debtors cannot point to any act the Salaried Retirees have taken to use the Michigan Litigation in the claims against the PBGC to collaterally attack any order of this Court.

The stipulation also reserved the Reorganized Debtors' ability to contend here or in another forum that the Salaried Retirees "through their proceedings subsequent to the initiation of the Action" or "any other party through any proceeding" are collaterally attacking a prior order of this Court. *Id.* ¶ 2. But again the Reorganized Debtors can point to no action the Salaried Retirees have taken with respect to the PBGC claims to undermine an order of this Court. The pleadings language offered by the Salaried Retirees is exactly the same as language

to which the Reorganized Debtors have already consented and cannot constitute such action.

Further, if the Reorganized Debtors believe that the PBGC is taking action in the Michigan

Litigation that will or may constitute a collateral attack on a prior order of this Court, then the

Reorganized Debtors should be seeking relief against the PBGC, not against the Salaried

Retirees.

The Reorganized Debtors appear to argue that consummation of the Modified Plan

subsequent to the entry of the stipulated order gives them a new opportunity to challenge the

previously approved claims against the PBGC in the Michigan Litigation.  The Modified Plan

had already been approved at the time of the entry of the stipulated order.  The consummation of

the Modified Plan involved no new order of this Court.  The Reorganized Debtors were

obviously aware of the terms of the Modified Plan at the time they consented to the entry of the

stipulated order.  The bottom line is, if the original complaint with the same language was

consistent with this Court's orders (which it was), then the Second Amended Complaint,

containing the same language, must also be.

### C. Even If Restoration of the Plan to the Reorganized Debtors Were Sought in the Michigan Litigation, It Would Not Violate the Modified Plan or the Plan Modification Order

Though the Salaried Retirees categorically do not seek to put the Pension Plan back to the

Reorganized Debtors, such relief would not -- if it were sought -- violate the Modified Plan or

the Plan Modification Order.  At the outset, the Reorganized Debtors assertion that restoration of

the Pension Plan to them violates this Court's orders proves too much.  ERISA itself gives the

PBGC the right to restore a terminated pension plan, and indeed the PBGC has asserted in the

Michigan Litigation that appropriate equitable relief should include, and only include, such a

restoration.  *See* 29 U.S.C. § 1347 (the PBGC has the right to "take whatever action is necessary

and within its power to restore the plan to its status prior to the determination that the plan was to

14

be terminated under section 4041 or 4042"). Under the Reorganized Debtors' logic, the

Modified Plan and the Plan Modification Order would erase this provision of ERISA, since -- if

they bar restoration -- it should not matter whether the PBGC or some other party is seeking the

restoration. Suffice it to say that even the Debtors' counsel noted at the July 2009 hearing on the

Modified Plan that, if relevant pension plans later were terminated, the PBGC retained the right

to restore them. *See* Tr. of Plan Modification Hag. at 190:16-22 (July 29, 2009) (Exh. H to this

Reply) (hereinafter "July 29 Tr.").

Furthermore, the Pension Plan was not terminated pursuant to any order of this Court, a

scenario that would seem necessary if restoration were somehow to have been prohibited by the

Modified Plan or the Plan Modification Order. Though the Reorganized Debtors do not overtly

contend that the Pension Plan was terminated pursuant to orders of this Court, they make the

claim that "termination of the Debtors' pension plans was a condition precedent to the PBGC

Settlement Agreement," which was approved by this Court (thus supposedly resulting in the

Michigan Litigation potentially being a collateral attack on this Court's orders if the Michigan

Litigation undoes the termination of the Plan by restoring it to the Reorganized Debtors). Obj.

¶ 22. Again this proves too much, for it would mean that a bankruptcy court effectively could

prevent a pension plan's restoration even by the PBGC by including the termination as a

necessary predicate for one of the bankruptcy court's orders, notwithstanding that the bankruptcy

court did not have authority to terminate the pension plan in the first instance, and Congress

expressly gave the PBGC in ERISA the right to restore a plan.

In any event, the Pension Plan termination was not a condition precedent to the PBGC

Settlement Agreement with the Debtor. The provision of the PBGC Settlement Agreement that

the Reorganized Debtors rely upon, namely paragraph 6 of the PBGC Settlement Agreement,

states only that execution of the termination and trusteeship agreement was a condition

precedent, *not* the termination of the Pension Plan, and even then only upon an independent

finding by the PBGC under 29 U.S.C. § 1342 that it should initiate and/or proceed with an

involuntary termination of the plan.[2]  As the Court made clear in approving the PBGC

Settlement Agreement, the various pension plans could only be terminated on a proper finding

by, and at the discretion of, the PBGC.   *See, e.g.*, July 29 Tr. at 214:22 - 215:2 ("It's clear to me

from reading the settlement agreement that the termination under Section 1142 of the pension

plans described therein is left to the determination of the PBGC.  And it is only if and when the

PBGC issues a notice of determination pursuant to Section 29 U.S.C. that any obligation of the

debtors kicks in."); *id.* at 215:8-10 ("So the agreement insofar it deals with termination of the

pension plan hinges upon the PBGC's actions under 1142 and not the debtors.").  This

distinction is critical, for as the Court noted, "[a]ll of the language in the PBGC settlement

agreement pertaining to the determination by the PBGC is expressed in terms of a condition

occurring later or in precatory language, or as stated to the extent that the PBGC so acts."  *Id.* at

215:4-7.

Still further, the Court made clear at the July 2009 hearing on the Modified Plan that, in

approving the PBGC Settlement Agreement, it was not ruling on the propriety of the PBGC's

---

[2] The PBGC Settlement Agreement states in relevant part: "The effectiveness of this Agreement shall be
subject to each of the following conditions . . . (f) solely as to Delphi, execution of the termination and
trusteeship agreements as set forth in section 3(a) and 3(b)(i) above, each of which condition in this
subsection (f) may be waived by Delphi."  Settlement Agmt. ¶ 6.  Paragraph 3(a) provides that "[a]s soon
as reasonably practicable after entry of an order approving the Modified Plan . . . PBGC staff will
determine whether to initiate and/or proceed with the involuntary termination under 29 U.S.C. § 1342 of
each of the Pension Plans . . . .  Upon issuance by the PBGC of a notice of determination pursuant to 29
U.S.C. § 1342, that the Non-Bargaining Plans should terminate, with a date of plan termination as of the
Termination Date, PBGC and the plan administrator shall execute termination and trusteeship agreements
in the form attached hereto as Exhibit C with respect to each non-Bargaining Plan, establishing the
Termination Date as the date of plan termination, and appointing PBGC as the statutory trustee of each
non-Bargaining Plan."

actions, but was concerned only with evaluating the agreement from the point of view of the

Debtor.  "It is not my function or jurisdiction to evaluate whether the PBGC is acting properly or

not in the context of this motion.  I'm not being asked to approve the PBGC's actions.  Rather, as

the Bankruptcy Code and case law is clear, I am supposed to evaluate a settlement from the

perspective of the debtors' estate and creditors."  July 29 Tr. at 215:16-22; *see also id.* at 210:2-

13 ("The debtors do not ask for a determination that they are authorized to enter into the

termination agreement with the PBGC under Section 3(b)(i) of the settlement agreement for all

purposes . . . .  So I'm not determining and not being asked to determine whether Delphi as plan

administrator would have the right to enter into the termination and trusteeship agreement in the

form attached as Exhibit C to the settlement agreement otherwise.").

Finally, the Court made clear at the hearing on the Modified Plan that its orders

contemplated challenges to any PBGC termination of the pension plans in actions under 29

U.S.C. § 1303, which would necessarily have to be brought in another forum.  *Id.* at 211:14-20

("So again, without ultimately deciding the underlying issues, including whether the only remedy

for parties aggrieved by such a determine[ation] by the PBGC is under 29 U.S.C. Section 1303, I

conclude that the plan modification is feasible and that the agreement is not illusory and that the

debtors, therefore, are exercising proper business judgment to enter into it."); *id.* at 217:7-14

("Finally, it was argued that the settlement agreement would give this Court's blessing to actions

by the PBGC as opposed to authorizing the debtor to perform the settlement . . . .  I note further

that for purposes of clarity the order that the debtors have asked me to enter specifically reserves

parties rights under 29 U.S.C. Section 1303."); *id.* at 217:19-22 ("to the extent the PBGC actions

in entering into that agreement are subject to review, my order approving the settlement does not

preclude such review as a matter of law"); *see generally* 29 U.S.C. § 1303(f)(2) (ERISA

requiring that suits against the PBGC be brought in an "appropriate" United States district court).

All of this illustrates that the termination of the Pension Plan was not authorized by this

Court's orders, was not protected by this Court's orders, and was not enforceable via this Court's

orders. In such circumstances, the Reorganized Debtors cannot credibly contend that undoing

the termination, even if it would result in restoration of the Pension Plan to the Reorganized

Debtors, violates the Modified Plan and the Plan Modification Order. Still, to reiterate, the

Salaried Retirees do not seek to have the Pension Plan restored to the Reorganized Debtors; their

only point here is that the Reorganized Debtors' assertion that the Modified Plan and the Plan

Modification Order necessarily preclude such a restoration is legally untenable.

> **D.     The Equitable Mootness Doctrine Is Inapplicable, and, Equity Instead
> Favors the Salaried Retirees' Position**

The Reorganized Debtors rely on the equitable mootness doctrine to bar the Salaried

Retirees from seeking in the Michigan Litigation to restore the Pension Plan to the Reorganized

Debtors (again, relief that the Salaried Retirees do not seek). For several reasons, the doctrine

here has no application and, in fact, its objectives would, if anything, favor estopping the

Reorganized Debtors from pursuing their objection.

> **1.     The Equitable Mootness Doctrine Applies Only Where There Is an
> Appeal of a Bankruptcy Court Order, Which Is Not the Case Here**

The application of the equitable mootness doctrine to the Michigan Litigation would be

an unprecedented expansion of the doctrine, and would turn the concept of equity on its head.

The doctrine "has evolved in *bankruptcy appeals to constrain appellate review, and potential*

*reversal, of orders confirming reorganization plans.*"  *Bank of New York Trust Co., NA v.*

*Official Unsecured Creditors' Comm. (In re Pacific Lumber Co.)*, 584 F.3d 229, 240 (5th Cir.

2009) (emphasis added).  A review of the factors a court is to consider in deciding whether to

apply the doctrine demonstrates its inapplicability outside the context of a bankruptcy appeal.

> Constitutional and equitable considerations dictate that substantial consummation
> will not moot an *appeal* if all of the following circumstances exist: (a) *the court
> can still order some effective relief*, (b) such relief will not affect the re-
> emergence of the debtor as a revitalized corporate entity, (c) such relief will not
> unravel intricate transactions so as to knock the props out from under the
> authorization for every transaction that has taken place and create an
> unmanageable, uncontrollable situation for the Bankruptcy Court, (d) the parties
> who would be adversely affected by the modification have *notice of the appeal*
> and an opportunity to participate in the proceedings, and (e) *the appellant* pursued
> with diligence all available remedies to obtain a *stay of execution of the
> objectionable order* . . . if the failure to do so creates a situation rendering it
> inequitable to reverse *the orders appealed from.*

*Chateaugay Corp. v. LTV Steel Co. (In re Chateaugay Corp.)*, 10 F.3d 944, 952-53 (2d Cir.

1993) (internal quotation marks and citations omitted and emphasis added).

Equitable mootness is "a prudential doctrine," to be "invoked to avoid disturbing a

reorganization plan once implemented." *Deutsche Bank AG v. Metromedia Fiber Network, Inc.

(In re Metromedia Fiber Network, Inc.)*, 416 F.3d 136, 144 (2d Cir. 2005).  As a prudential

doctrine, it does not "raise a threshold question" of another court's "power to rule." *Id.*; *see also

In re Continental Airlines*, 91 F.3d 553, 560 (3d Cir. 1996) (describing equitable mootness as "a

kind of appellate abstention"); *Search Mkt. Direct, Inc. v. Jubber (In re Paige)*, 584 F.3d 1327,

1331 n.1 (10th Cir. 2009) ("the basis of a dismissal under equitable mootness is not so much that

a claim has truly become moot as it is that a weighing of the equities -- and particularly the

interests of innocent parties -- suggests that the more equitable approach is for the court to

decline to hear a challenge to the plan").

Because the doctrine of equitable mootness is prudential rather than jurisdictional, and is

designed to evaluate when *appellate review of bankruptcy court orders confirming bankruptcy

reorganization plans* has become moot, the fact that the Salaried Retirees do not seek to appeal

19

the order approving the reorganization plan (nor any other order of this Court) is dispositive, as

is the fact that the relief to which the Reorganized Debtors object would not be granted by this

Court, or any court reviewing a decision of this Court; rather the Reorganized Debtors would

propose using a prudential doctrine to limit the relief that could be awarded by another court

(that is, as a jurisdictional bar).

Indeed, no court has -- to the best of the Salaried Retiree's knowledge -- ever applied the

equitable mootness doctrine outside the context of a bankruptcy appeal.  At the very least, the

Reorganized Debtors have not offered any such precedent.  Moreover, the Reorganized Debtors

acknowledge that the doctrine, by its terms, does not apply, but argue that because the Michigan

Litigation seeks to "undo termination of the Pension Plan," the Michigan Litigation is

"functionally similar to an appeal insofar as it seeks to reverse certain actions that were approved

under the Modification Approval Order."  Obj. at 8-9 n.1.  As has been discussed at length, *see

supra* p.  15-19, this argument is faulty, because this Court has never ruled on the propriety of

the Pension Plan's termination.

The case on which the Reorganized Debtors principally rely, *Retired Pilot Ass'n of US

Airways, Inc. v. US Airways Group (In re US Airways Group)*, 369 F.3d 806 (4th Cir. 2004),

does not assist them.  The principal difference between the current situation and *US Airways* is

that, unlike here, the termination of the pension plan was in *US Airways* actually adjudicated by

the bankruptcy court.  There, US Airways sought to terminate the pension plan at issue pursuant

to a distress termination.  "US Airways could effect such a 'distress termination' only upon the

bankruptcy court's finding that, unless the pension plan is terminated, US Airways will be unable

to pay all its debts pursuant to a plan of reorganization and will be unable to continue in business

outside the chapter 11 reorganization process."  *Id.* at 808.  The bankruptcy court entered an

order finding that US Airways had demonstrated the financial requirements necessary for a distress termination on March 2, 2003, and the bankruptcy court issued an order approving US Airways' reorganization plan on March 18, 2003.  *Id.* at 808-09.  A group of retired pilots appealed the bankruptcy court's termination order, and it was in the context of that *appeal* that the district court applied the equitable mootness doctrine.  The district court refused to consider their appeal of the plan termination because the retired pilots did not move to stay the order, nor challenge or request a stay of the reorganization plan.  *Id.*  The Fourth Circuit upheld the decision, noting that "*[w]ithin the context of a bankruptcy proceeding*, a court may dismiss an *appeal* as equitably moot 'when it becomes impractical and imprudent to upset the plan of reorganization at this late date.'"  *Id.* at 809 (quoting *Mac Panel Co. v. Va. Panel Corp.*, 283 F.3d 622, 625 (4th Cir. 2002) (emphasis added).

Unlike in *US Airways*, the Salaried Retirees do not seek to appeal a ruling of this Court (or any court for that matter) in challenging the Pension Plan's termination in the Michigan Litigation.  Pursuant to 29 U.S.C. § 1303, and consistent with the September 2009 Stipulation and accompanying Order from this Court, the Salaried Retirees filed a lawsuit against the PBGC on September 14, 2009, in the Michigan Court, challenging the PBGC's termination of the Pension Plan.  The Michigan Court will be the first court to rule on the propriety of the termination, and as such, any comparison to the *US Airways* decision is simply inapposite.

Ultimately, what is at the heart of the Reorganized Debtors' objection is concern that a restoration to them of the Pension Plan (again, not sought by the Salaried Retirees) might present them with new liabilities, not that it would upset an order of this Court.  *See, e.g.*, Obj. at ¶ 20. However, this, by itself, is not a grounds for upsetting the Michigan Litigation.  As the Second Circuit has noted, "[a] claimant should not be out of court on grounds of mootness solely

because its injury is too great for the debtor to satisfy in full." *In re Chateaugay Corp.*, 10 F.3d at 954.

> **2.      Equity Requires that the Reorganized Debtors Abide by the September Stipulation, and that the Michigan Court, in Ruling on the Propriety of the Plan's Termination, Not Be Constrained in the Relief It Can Award**

Even if it were somehow appropriate to apply the equitable mootness doctrine to a case outside the context of a bankruptcy appeal, other equitable principles prevent its application here. Assuming just for argument that the Reorganized Debtors somehow sought restoration of the Pension Plan as a useful equitable remedy, the Reorganized Debtors would be seeking to undo, through the equitable mootness doctrine, the protections provided to the Salaried Retirees under ERISA to full equitable relief in the case that the PBGC wrongly terminated their Pension Plan. The Reorganized Retirees would seek to do so by faulting the Salaried Retirees for failing to seek a stay of the imaginary order terminating their plan, pending their appeal of that imaginary termination order, even though *no court has yet ruled on the propriety of the termination.* In short, they seek to do a complete end run around the protections Congress bestowed upon pension plan participants in ERISA.

If equity requires anything in this instance, it requires a conclusion that the Reorganized Debtors be equitably estopped from raising these arguments now. "The doctrine of equitable estoppel is properly invoked where the enforcement of the rights of one party would work an injustice upon the other party due to the latter's justifiable reliance upon the former's words or conduct." *Kosakow v. New Rochelle Radiology Assocs., P.C.,* 274 F.3d 706, 725 (2d Cir. 2001) (citing *In re Ionosphere Clubs, Inc.*, 85 F.3d 992, 999 (2d Cir. 1996)). "Under federal law, a party may be estopped from pursuing a claim or defense where: 1) the party to be estopped makes a misrepresentation of fact to the other party with reason to believe that the other party

will rely upon it; 2) and the other party reasonably relies upon it; 3) to her detriment." *Id.* The Salaried Retirees initiated the Michigan Litigation only after the Debtors entered into the September 2009 Stipulation, and have since invested massive amounts of time and money (as have the PBGC, numerous amicus, and the Michigan Court) in the Michigan Litigation. If the Debtors had reservations about the form of relief that the Salaried Retirees sought through the Michigan Litigation, they should have raised them at that time, before the Salaried Retirees relied upon, to their detriment, the September stipulation and order. The Salaried Retirees proceeded with the litigation in the justifiable belief that the Reorganized Debtors would not subsequently contest the relief to which they previously stipulated. Because it is well settled that "[e]quitable mootness should protect legitimate expectations of parties to bankruptcy cases but should not be a shield for sharp or unauthorized practices," *Bank of New York Trust Co., NA v. Official Unsecured Creditors' Comm. (In re Pacific Lumber Co.)*, 584 F.3d 229, 244 (5th Cir. 2009), the Reorganized Debtors should be precluded from using equitable mootness in this instance.

## CONCLUSION

The Court should grant the Amended Motion of the Salaried Retirees for an Order Confirming that the Second Amended Complaint Does Not Violate the Modified Plan or Plan Modification Order and should overrule the Reorganized Debtors' objection.

Respectfully submitted,

Dated: June 23, 2010

/s/ Howard S. Sher
Howard S. Sher (admitted pro hac vice)
Alan J. Schwartz (admitted pro hac vice)
JACOB & WEINGARTEN, P.C.
2301 W. Big Beaver, Ste. 777
Troy, Michigan 48084
Telephone: (248) 649-1900
Facsimile: (248) 649-2920

Anthony F. Shelley
Timothy P. O'Toole
Michael N. Khalil
MILLER & CHEVALIER CHARTERED
655 15th Street, NW, Ste. 900
Washington, DC 20005
Telephone: (202) 626-5800
Facsimile: (202) 626-5801

Attorneys for Dennis Black, Charles
Cunningham, Kenneth Hollis and
The Delphi Salaried Retiree Association