# Exhibit D

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| Dennis Black, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) Case No. 2:09-cv-13616 |
| | ) Hon. Arthur J. Tarnow |
| v. | ) Magistrate Judge Donald A. Scheer |
| | ) |
| Pension Benefit Guaranty Corporation, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFFS' OBJECTION TO PBGC'S MOTION TO ALTER OR AMEND THE COURT'S JANUARY 26, 2010 ORDER ON PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

Alan J. Schwartz
JACOB & WEINGARTEN, P.C.
777 Somerset Place
2301 Big Beaver Road
Troy, Michigan 48084
Telephone: 248-649-1900
Facsimile: 248-649-2920
E-mail:  alan@jacobweingarten.com

Anthony F. Shelley
Timothy P. O'Toole
Michael N. Khalil
MILLER & CHEVALIER CHARTERED
655 15th Street, N.W.
Suite 900
Washington, D.C. 20005
Telephone: 202-626-5800
Facsimile: 202-626-5801
E-mail:  ashelley@milchev.com
             totoole@milchev.com
             mkhalil@milchev.com

*Attorney for Plaintiffs*

Plaintiffs hereby submit this objection in opposition to the motion by Defendant Pension Benefit Guaranty Corporation ("PBGC") to Alter or Amend the Court's January 26, 2010 Order On Plaintiffs' Motion for Preliminary Injunction. The Court's order was fully supported by the law, and the PBGC's attempt to seek relief from it lacks merit. This Court should deny the PBGC's motion in its entirety.

1. As the Court is aware, Plaintiffs are participants in the Delphi Retirement Program for Salaried Employees ("the Plan"). Plaintiffs' lawsuit asserts in pertinent part that the PBGC improperly terminated the Plan in violation of Employee Retirement Income Security Act ("ERISA"), and in violation of the due process clause of the Fifth Amendment to the United States Constitution. In October of 2009, Plaintiffs filed a motion for a preliminary injunction seeking to maintain their pension benefits at pre-termination levels pending resolution of their Amended Complaint.

On January 26, 2010, this Court ruled that benefit reductions could take place as scheduled on February 1, 2010, but only if the PBGC took one of two steps designed to ensure that irreparable harm would not occur to Plaintiffs should this Court ultimately determine that Plan termination was unlawful. First, the PBGC could place sufficient funds in a segregated escrow account such that equitable relief could be granted if Plaintiffs were to prevail. As an alternative, the PBGC could stipulate to the Court's power to award full benefits to the participants if the Court determined the Plan had been illegally terminated. The Court concluded that if the PBGC were to meet either condition, Plaintiffs would be assured that they would be made whole if they prevailed in the lawsuit, and thus no irreparable harm would occur pending judicial review of the termination.

2. On January 28, 2010, the PBGC filed a motion informing the Court it would not meet either of the conditions.[1] While the PBGC claims that it "cannot" satisfy either condition, PBGC Motion at 2, it provides no support for this position. For example, the PBGC asserts, without citation, that Fed. R. Civ. P. 65(c) would somehow prohibit it from complying with the Order. *Id.* But Rule 65 is completely irrelevant here; this Court's order was not a bond condition placed on a movant as part of an order granting injunctive relief; rather, the Court's order was designed to preserve its ability to grant full relief in equity should Plaintiffs prevail in the litigation. Nor does the PBGC's suggestion that it cannot voluntarily post such security because it may not expend money for "purposes that are not authorized by federal law," (PBGC Motion at 2) survive even the most minimal scrutiny. Federal law, namely ERISA and the Constitution, "authorizes" this Court to award equitable relief to redress injury. *See* 29 U.S.C. § 1303(f)(1) (any participant who is "adversely affected by any action of the [PBGC] with respect to a plan . . . may bring an action against the [PBGC] for appropriate equitable relief in the appropriate court."); 5 U.S.C. § 705 ("On such conditions as may be required and to the extent necessary to prevent irreparable injury, the reviewing court . . . may issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings.").[2] This same federal law, moreover,

---

[1] PBGC's Motion to Alter or Amend the Court's January 26, 2010 Order on Plaintiffs' Motion for Preliminary Injunction, Dkt. No. 107 (hereafter, the "PBGC Motion").

[2] *See also* 5 U.S.C. § 702 (stating that "[a]n action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the

(footnote continued on next page)

"authorizes" the PBGC to expend funds to comply with lawful court orders such as the one entered by this Court. There is simply no merit to the PBGC's suggestion that it "cannot" lawfully comply with this Court's order. Rather, precisely the opposite is true -- the PBGC cannot lawfully *fail* to comply with this Court's order. *Cooper v. Aaron*, 358 U.S. 1, 18-19 (1958).

Finally, the PBGC's assertion that it cannot satisfy the second condition because, "[a]s the statutory trustee of the Salaried Plan . . . PBGC has the authority to pay to participants only 'benefits under the plan in accordance with the requirements of [Title IV of ERISA]'" (PBGC Motion at 2), defies credulity. First, the PBGC, as statutory trustee of the Plan, has been paying out full benefits to Plaintiffs for some time now, so clearly Title IV provides the PBGC with the authority to pay full benefits.[3] Second, the PBGC's assertion that it would no longer remain as the Plan's statutory trustee upon a determination that the Plan were improperly terminated has no support in ERISA or common sense. ERISA specifically authorizes the PBGC to serve as a statutory trustee for non-terminated plans. *See* 29 U.S.C. § 1342(b). The PBGC voluntarily sought to become the trustee of the Plan, one result of which is that it owes a fiduciary responsibility to the Plan and its participants. *See* 29 U.S.C. § 1342(d)(3) ("a trustee appointed under this section shall be . . . with respect to the plan, a fiduciary within the meaning of

---

(footnote continued from previous page)
United States is an indispensable party. The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States").

[3] *See* PBGC's Memorandum of Law in Support of its Motion for Summary Judgment on Count Four at 11 ("Since the termination and trusteeship of the Plan, PBGC has been directing the Plan's administration, to ensure a smooth transition in the processing of claims and payment of benefits.").

4

paragraph (21) of section 3 of this Act [29 U.S.C. § 1002(21)]"). The PBGC cannot abandon its fiduciary duties just because they have become inconvenient. The PBGC will remain the trustee of the Plan, until such time as a court orders otherwise.

3. Despite its refusal to comply with either of the conditions set forth by this Court, the PBGC also summarily asserts that "no irreparable harm" will result to the Plaintiffs. PBGC Motion at 3. The contrary is true, however. In essence, the PBGC has now informed the Court that it intends never to make Plaintiffs whole even if they prevail in this litigation. The Court cannot countenance such a position. Addressing the issue of irreparable harm, the Court noted that where income is ultimately recoverable, irreparable harm usually cannot be established, but a "much different scenario exists if funds are not recoverable because a statute does not permit monetary damages." Order at 2.

To prevent this very harm, the Court made its denial of Plaintiffs' motion contingent on the PBGC acceding to one of two options, both of which were designed to prevent the compromising of the Court's ability to grant effective relief if Plaintiffs ultimately prevailed. The PBGC's refusal to comply with the Court's contingencies makes crystal clear that the only way the Court can maintain its ability meaningfully to provide relief is by granting Plaintiffs' motion for a preliminary injunction.

4. This is particularly so in light of the completely unacceptable alternative proposed by the PBGC in its papers regarding the available relief. According to the PBGC, this Court's remedial powers are limited to "reversing PBGC's termination of the Plan," which "would require PBGC to return the Plan to DPH Holdings, Inc. ('Old Delphi'), the liquidating debtor . . ." PBGC Motion at 3. The PBGC then acknowledges that "the Plan would then face

5

imminent abandonment as Old Delphi quickly disappears, and PBGC likely would be required to immediately seek re-termination of the Plan." *Id.* Obviously such relief would not make Plaintiffs whole; instead, it would unlawfully compound the harm that Plaintiffs would have to bear.

Nothing in ERISA suggests that a plaintiff whose plan is improperly terminated by the PBGC is limited to a wholly inferior form of relief, particularly when the Court has available to it the ability to make Plaintiffs whole using the escrow mechanism set forth in its January 26, 2010 order. Moreover, to the extent the PBGC is unhappy with being forced to take steps to prevent irreparable harm in such a manner, it has only itself to blame. The Administrative Record makes quite clear that the PBGC rashly moved to terminate the Plan by agreement to elude adjudication, but adjudication would have itself avoided any form of irreparable harm, as well as obviating the need for the type of escrow account ordered by the Court. In other words, had the PBGC chosen to resolve any questions about termination through adjudication (as ERISA requires), it could have made any reductions safe in the knowledge that it they could not be overturned later.

5. The PBGC's assertion that Plaintiffs are limited to having DPH Holdings take over the Plan is also completely unfounded as a matter of law. Congress specifically authorized those wronged by the PBGC's actions to seek equitable relief, and equitable relief can be sufficiently flexible so as to ensure that Plaintiffs are made whole. As Plaintiffs have previously noted, "'[t]he essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case. Flexibility rather than rigidity has distinguished it. The qualities of mercy and practicality have made equity the instrument for

6

nice adjustment and reconciliation between the public interest and private needs.'" *Carter-Jones Lumber Co. v. Dixie Distrib. Co.*, 166 F.3d 840, 846 (6th Cir. 1999) (quoting *Hecht Co. v. Bowles*, 321 U.S. 321, 329 (1944)).

As a result of the hasty and erroneous termination of their Plan by the PBGC, Plaintiffs are in imminent danger of losing vested pension benefits earned throughout their careers. As a result of the PBGC's settlement agreements with Delphi Corporation ("Delphi") and General Motors Company ("New GM"), the Plan's former sponsor has been allowed to liquidate its assets while escaping available mechanisms that might have permitted liens to be placed on those assets to protect the Plan participants. As a result of this illegal conduct, any Plan underfunding has been exacerbated, and the PBGC has hamstrung its ability to make up the gap. With its decision to release $200 million in asserted liens and waive its ability to assert liens against Delphi's foreign assets valued conservatively at $2.4 billion dollars, the PBGC squandered the meaningful opportunity the Plan had to recover from Delphi. Had the PBGC proceeded with the termination proceedings initiated in this Court in July 2009 (which the statute on its face requires), it would not find itself in this position. It is only because it insisted on attempting to bypass ERISA's requirement that it obtain a court decree that it now finds itself in the unenviable position of having to make the Plan's participants whole. Put simply, what the PBGC broke, the PBGC must fix. Or, as Justice Cardozo more eloquently put it, "[a] situation so unique is a summons to a court of equity to mould its plastic remedies in adaptation to the instant need." *Atl. Coast Line R.R. Co. v. Fla.*, 295 U.S. 301, 316 (1935).

In effect, the PBGC argues that it may act negligently, unlawfully, even unconstitutionally, and foist the consequences for those bad actions on the very people that it

7

exists to protect, without having to shoulder any of the responsibility itself. It does so without reference to any authority other than its own indignation. However, Congress specifically authorized those aggrieved by the agency's actions to seek equitable relief. As such, it is the PBGC that will have to find a way to make Plaintiffs whole in the event they prevail on the merits.

Because the PBGC has conceded that absent a preliminary injunction the Plaintiffs will suffer irreparable harm, and because the Court, sitting in equity, is fully empowered to do equity, Plaintiffs' motion for a preliminary injunction should be granted.

Respectfully submitted,

/s/ Anthony F. Shelley
Anthony F. Shelley

| | |
|---|---|
| Alan J. Schwartz (P38144) | Anthony F. Shelley (admitted *pro hac vice*) |
| JACOB & WEINGARTEN, P.C. | Timothy P. O'Toole (admitted *pro hac vice*) |
| 777 Somerset Place | Michael N. Khalil |
| 2301 Big Beaver Road | MILLER & CHEVALIER CHARTERED |
| Troy, Michigan 48084 | 655 15th St. NW, Suite 900 |
| Telephone: 248-649-1900 | Washington, DC 20005 |
| Facsimile: 248-649-2920 | Telephone: 202-626-5800 |
| E-mail: alan@jacobweingarten.com | Facsimile: 202-626-5801 |
| | E-mail: ashelley@milchev.com |
| | totoole@milchev.com |
| | mkhalil@milchev.com |

*Attorneys for Plaintiffs*

8