**Hearing Date and Time:  July 22, 2010 at 10:00 a.m. (Eastern Time)**

HONIGMAN MILLER SCHWARTZ AND COHN LLP
I. W. Winsten (P30528)
Judy B. Calton (P38733)
E. Todd Sable (P54956)
Douglas Salzenstein (P59288)
Marcia Bennett Boyce (P67584)
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226-3506
Telephone: (313) 465-7344
Facsimile: (313) 465-7345
Email: jcalton@honigman.com
Attorneys for Affinia, GKN, MSX and Valeo

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____/

In re:

DPH HOLDINGS CORP., et al.,

      Reorganized Debtors.

Chapter 11
Case No. 05-44481 (RDD)
Jointly Administered

_____/

DELPHI CORPORATION, et al.,

      Plaintiffs,

v.

AFFINIA GROUP HOLDINGS, INC.,
AFFINIA, AFFINIA CANADA CORP.,
AFFINIA GROUP, AFFINIA CANADA, BRAKE
PARTS, INC., ITAPSA S.A. DE C.V.
AND WIX FILTRATION
PRODUCTS EUROPE

      Defendants.

Adv. Pro. No. 07-02198 (RDD)

**REPLY MEMORANDUM**
**OF LAW IN SUPPORT**
**OF MOTIONS OF**
**AFFINA, GKN, MSX**
**AND VALEO…**

_____/

DELPHI CORPORATION, et al.,

    Plaintiffs,                                    Adv. Pro. No. 07-02328 (RDD)

v.

GKNS INTERMETALS,

    Defendant.

_____/

DELPHI CORPORATION,  et al.,

    Plaintiffs,                                    Adv. Pro. No. 07-02484 (RDD)

v.

MSX, MSX INTERNATIONAL AND MSX
INTERNATIONAL INC.,

    Defendants.

_____/

DELPHI CORPORATION, et al.,

    Plaintiffs,                                    Adv. Pro. No. 07-02534 (RDD)

v.

VALEO, VALEO AIRFLOW DIVISION, VALEO
CLIMATE CONTROL USA, VALEO ELECTRICAL
SYSTEMS, VALEO ELECTRONICS NA, VALEO
INC., VALEO SCHALTER UND SENSOREN AND
VALEO WIPER SYSTEMS & ELECTRIC MOTORS
NORTH AMERICA,

    Defendants.

_____/

**REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTIONS OF AFFINIA, GKN, MSX
AND VALEO TO: (A) VACATE CERTAIN PRIOR ORDERS OF THE COURT; (B) DISMISS
THE COMPLAINT WITH PREJUDICE; (C) AND DISMISS THE CLAIMS AGAINST
CERTAIN DEFENDANTS NAMED IN THE COMPLAINT; AND (D) DISMISS CLAIMS BASED
ON ASSUMPTION OF CONTRACTS; OR (E) IN THE ALTERNATIVE, TO REQUIRE
<u>PLAINTIFFS TO FILE A MORE DEFINITE STATEMENT</u>**

# TABLE OF CONTENTS

PAGE

INTRODUCTION ...........................................................................................1

ARGUMENT ..................................................................................................3

A.    The Debtors' Claims Must Be Dismissed To The Extent They Are Based
      On Assumed Contracts ........................................................................3

B.    Delphi Irrevocably Abandoned Its Preference Claims For Less Than
      $250,000 Or Against Foreign Suppliers ..............................................5

      1.    Delphi Abandoned These Claims ................................................6

      2.    Delphi Has No Valid Objection To Dismissal of the Abandoned
            Claims ......................................................................................7

            i.    Delphi Improperly Relies On § 554(c) Cases ...................7

            ii.   Delphi's Omnibus Response Relies Solely On An
                  Irrelevant Fact .................................................................9

C.    The Debtors Violated This Court's Case Management Orders By Failing
      To Provide Actual Notice To The Avoidance Defendants .......................9

D.    The Avoidance Complaints Must Be Dismissed Because The Debtors
      Failed To Timely Unseal The Complaints ............................................13

E.    Even Where A Complaint Is Timely Unsealed, It Must Be Dismissed
      Where There Is Substantial Prejudice ..................................................17

F.    In Any Event, The Procedures and Extension Orders Were Improper ........18

      1.    The 120-day Time Period For Service Cannot Be Extended To
            Facilitate Non-Service .............................................................18

      2.    No Cause, Good or Otherwise, Existed For Delphi's Request To
            Seal The Complaints And Delay Service In The First Place .........21

      3.    The Appropriate Remedy Is To Vacate The Procedures and
            Extension Orders And Dismiss ..................................................24

      4.    Delphi Will Not Be Prejudiced If The Orders Are Vacated .........25

G.      The Complaints Should Be Dismissed Under *Twombly* and *Iqbal* ........................26

H.      Delphi Has Refused To Enter Orders Dismissing Improperly Named
        Defendants ............................................................................................................28

CONCLUSION ...................................................................................................................28

# TABLE OF AUTHORITIES

<span style="font-variant: small-caps">CASES</span>

*Angell v. Haven (In re Careamerica)*,
    409 B.R. 346 (Bankr. E.D.N.C. 2009) ...................................................................................24

*Ayazi v. New York City Bd. of Educ.*,
    315 Fed. Appx. 313 (2d Cir. 2009) ........................................................................................6

*City of New York v. New York, N.H. & H. R.R. Co.*,
    344 U.S. 293 (1953) ..............................................................................................................11

*Coleman v. Greyhound Lines, Inc.*,
    100 F.R.D. 476 (N.D. Ill. 1984) ...........................................................................................18

*Efaw v. Williams*,
    473 F.3d 1038 (9th Cir. 2007) ..............................................................................................13

*Fedorov v. Peter T. Roach and Associates, P.C.*,
    354 F. Supp. 2d 471 (S.D.N.Y. 2005) ....................................................................................6

*Fimbres v. United States*,
    833 F.2d 138 (9th Cir. 1987) ...........................................................................................16, 18

*Knorr v. Coughlin*,
    159 F.R.D. 5 (N.D.N.Y. 1994) .......................................................................................... 17-18

*Montalbano v. Easco Hand Tools, Inc.*,
    766 F.2d 737 (2d Cir. 1985) ..................................................................................................18

*Perkins v. United States*,
    No. 86-363, 1987 WL 19842 (N.D.N.Y. Nov. 13, 1987) ......................................................18

*Redding v. Essex Crane Rental Corp. of Alabama*,
    752 F.2d 1077 (5th Cir. 1985) ..............................................................................................19

*Smith v. Pennsylvania Glass Sand Corp.*,
    123 F.R.D. 648 (N.D. Fla. 1988) .....................................................................................16, 18

*Spano v. Boeing Co.*,
    06-00743, 2008 U.S. Dist. LEXIS 54122 (S.D. Ill. July 16, 2008) .......................................23

*Standard Chartered Bank Int'l (Americas) Ltd. v. Calvo*,
    No. 10-cv-4684, p.3 (S.D.N.Y. June 16, 2010) ....................................................................12

*U.S. Brass & Copper Co. v. Caplan (In re Century Brass Products, Inc.),*
    22 F.3d 37 (2d Cir. 1994) ............................................................................................... 21-22

*United States Fire Ins. Co. v. Jesco Constr. Co.,*
    No. 03-2906, 2003 WL 21689654 (S.D.N.Y. July 16, 2003) ...................................................18

*United States v. Deglomini,*
    111 F. Supp. 2d 198 (E.D.N.Y. 2000) ...................................................................... 14-15, 23

*United States v. Heckler,*
    428 F. Supp. 269 ......................................................................................................15

*United States v. Marion,*
    404 U.S. 307 (1971).....................................................................................................16

*United States v. Sherwood,*
    38 F.R.D. 14 (D. Conn. 1964) ..........................................................................................15

*United States v. Srulowitz,*
    819 F.2d 37 (2d Cir. 1987)...............................................................................................16

*United States v. Watson,*
    599 F.2d 1149 (2d Cir. 1979), *amended on reh'g by* 690 F.2d 15 (2d Cir. 1979),
    *modified en banc sub nom, United States v. Muse,* 633 F.2d 1041 (2d Cir. 1980) .................14

*United States v. Muse,*
    633 F.2d 1041 (2d Cir. 1980);  ........................................................................................14

*United States v. Gigante,*
    436 F. Supp. 2d 647 (S.D.N.Y. 2006)...................................................................... 14-15, 23

*Vaughn v. Air Line Pilots Ass'n, Int'l,*
    395 B.R. 520 (E.D.N.Y. 2008) ...........................................................................................4

*Zapata v. City of New York,*
    502 F.3d 192 (2d Cir. 2007)........................................................................................17, 19

**STATUTES**

11 U.S.C. § 107 .................................................................................................................. 13, 16, 21

11 U.S.C. § 365 .................................................................................................................................... 4

11 U.S.C. § 546 .................................................................................................................................... 9

11 U.S.C. § 547 .................................................................................................................................... 4

11 U.S.C. § 550(a) ............................................................................................................................. 25

11 U.S.C. § 554(a) ..................................................................................................................... *Passim*

11 U.S.C. § 554(c) .......................................................................................................................... 5-6

## INTRODUCTION

Defendants Affinia Group Holdings, Inc., Affinia Canada Corp., Brake Parts, Inc., Itapsa S.A. de C.V., and Wix Filtration Products Europe Limited ("Affinia"), GKN Sinter Metals LLC ("GKN"), MSX International, Inc. ("MSX") and Valeo Climate Control Corp., Valeo Electrical Systems, Inc., Valeo Inc., and Valeo Schalter und Sensoren GmbH ("Valeo") (collectively the "Defendants") file this joint Reply Brief in support of their motions to dismiss in their four separate adversary proceedings.[1]  Affinia, GKN, MSX and Valeo also incorporate by reference the other lead Reply Briefs submitted by Hewlett Packard (Adv. Pro. No. 07-02262) and by Wagner Smith (Adv. Pro. No. 07-02581), and the Reply Briefs submitted by all the other defendants in the other adversary proceedings.

In this joint Reply Brief, these Defendants highlight certain important points, including that the Debtors have refused to dismiss the portions of their complaints that:

A.    are based on assumed contracts, even though their Omnibus Response did not oppose this relief;

B.    assert claims for less than $250,000 or against foreign suppliers, even though they irrevocably abandoned these claims under § 554(a) when their abandonment motion was approved; and

C.    assert claims against non-existent entities, even though they agreed to dismiss these claims in their Omnibus Response.

Most important, however, the Debtors' avoidance complaints should be dismissed in total for a host of reasons, including that:

---

[1]  Each of the Defendants has filed this same Reply Brief in adversary proceedings 07-02198 (Affinia),  07-02328 (GKN), 07-02484 (MSX) and 07-02534 (Valeo).

A.    the Debtors violated the Court's Case Management Order (requiring actual notice to "all parties with a particularized interest in the subject matter of the Filing"), and misrepresented that particularized notice was provided to these Defendants when, in fact, it never was;

B.    the Debtors failed to timely unseal the complaints when their purported justification for sealing ceased to exist and, under long-established Second Circuit authority, the remedy is dismissal of their complaints, and, even if the complaints were timely unsealed (which they were not), the Second Circuit still requires that they be dismissed where, as here, the defendants suffered substantial actual prejudice during the time the complaints were sealed;

C.    the Debtors admit that the entire purpose for the Procedures And Extension Orders was to "defer serving process on defendants" and, as a matter of law, the Rule 4(m) service deadline may not be extended for the purpose of facilitating non-service; and

D.    the Debtors effectively concede that they have not complied with the pleading standard set forth in *Twombly* and *Iqbal* and have not set forth specific facts that support each element of their claim and, having failed to do so after all of these years, their complaints should be dismissed.

Under the circumstances, this Court should end these proceedings now and dismiss all the complaints.

2

## ARGUMENT

**A.    The Debtors' Claims Must Be Dismissed To The
Extent They Are Based On Assumed Contracts**

MSX, Valeo, and GKN moved to dismiss the claims against them to the extent they are based on assumed contracts.    Their motions were supported with copies of the Notices of Assumption that Delphi filed in the Bankruptcy Court.    The Debtors concede in their Omnibus Response ("Omnibus Response") at Exhibit C that these Defendants moved to dismiss on this basis.

The Butzel firm represents the Debtors in the MSX proceeding.    The Butzel firm's Omnibus Response on behalf of the Debtors ***did not oppose*** the dismissal of complaints to the extent that they were based on the identified assumed contracts.    Thus, the Debtors (through the Butzel firm) have consented to MSX's motion to dismiss to the extent the complaint is based on transfers relating to assumed contracts.

The Togut firm represents the Debtors in the GKN and Valeo proceedings.    The Togut Firm joined in Butzel's Omnibus Response (the "Joinder"), and thus adopted its arguments.    The Joinder also states, on page 6, in pertinent part:

> [T]he Reorganized Debtors will consider requests to dismiss based
> on these allegations voluntarily and in good faith in an effort to
> minimize future motion practice.

Nevertheless, to date, the Debtors have improperly refused to consent to orders dismissing its preference complaints against MSX, GKN, and Valeo to the extent the Debtors' claims are based on assumed contracts.    *See* Exs. 1, 2, and 3 (emails and proposed orders sent to Delphi's counsel).

3

The Debtors' apparent unwillingness to dismiss the claims now is both bewildering and contrary to the specific direction of this Court. In fact, this Court, at the April 1, 2010 hearing, bluntly declared that:

> "If your contract was assumed then you're not going to have a preference in respect of payments in the contract that was assumed.
>
> \* \* \*
>
> [I]t's crystal clear that if the payment is in respect of an assumed contract then there's no issue."

*See* Omnibus Response at Ex. D (April 1, 2010 Tr. pp. 50, 52).

Moreover, there can be no dispute that this Court may take judicial notice of "prior pleadings, orders, judgments, and other items appearing in the Court's records of prior litigation that is closely related to the case sub judice…." *In re Chase*, 392 B.R. 72, 80 (Bankr. S.D.N.Y. 2008). This Court has clearly held, for example, that:

> "[I]f a plaintiff's allegations are clearly contradicted by documents incorporated into the pleadings by reference [or of which judicial notice may be taken], the court need not accept them."

*In re Delphi Corp.,* 2008 WL 3486615, at *3 (Bankr. S.D.N.Y. Aug. 11, 2008). In a bankruptcy case, the court may take judicial notice of all the documents filed in the case. *In re Theatre Row Phase II Associates*, 385 B.R. 511, 520 (Bankr. S.D.N.Y. 2008) (when considering a motion to dismiss in an adversary proceeding, the court took note of "the contents of the various pleadings in [the other] adversary proceedings, as well as pleadings and other documents in the [Chapter 11] case itself"); *see also Vaughn v. Air Line Pilots Ass'n, Int'l*, 395 B.R. 520, 529 n.2 (E.D.N.Y. 2008) (explaining that "the Court will consider several other documents that have been provided with the parties' motion papers because they are explicitly referenced in the [complaint], incorporated by reference, or within the purview of judicial notice, which include the transcript

and decisions of the Bankruptcy Court in connection with the termination of the pilots' defined benefit plan.").

Thus, this Court should now dismiss the preference claims to the extent they are based on assumed contracts. It would defeat the purpose of 11 U.S.C. § 365, which is to make the nondebtor contracting party whole, if the Court were to permit claims based on assumed contracts to proceed. *In re Superior Toy Manufacturing Co., Inc.,* 78 F.3d 1169, 1174 (7th Cir. 1996) ("Section 11 U.S.C. § 547 and 11 U.S.C. § 365 are mutually exclusive avenues for a trustee. A trustee may not prevail under both); *see also In re Teligent Inc.*, 306 B.R. 752, 760 (Bankr. S.D.N.Y. 2004) (following *Superior Toy,* explaining that an assumption order bars avoidance of a preference).

Accordingly, MSX, GKN and Valeo request that the Court enter orders dismissing these proceedings to the extent they are based on payments made with respect to assumed contracts.

**B.    Delphi Irrevocably Abandoned Its Preference Claims
For Less Than $250,000 Or Against Foreign Suppliers**

In their motions to dismiss, these Defendants requested dismissal of the claims that are for less than $250,000 or against defendants which were foreign suppliers, because the Debtors abandoned these claims under 11 U.S.C. § 554(a). In its Omnibus Response, Delphi addresses the abandonment issue only briefly at pages 35-36, and, in its tepid opposition, relies exclusively on cases that involve the very different concept of technical abandonment under 11 U.S.C. § 554(c) and irrelevant events that occurred after it irrevocably abandoned these claims.

As explained below, the portion of the complaints that assert these abandoned claims must be dismissed.

### 1.    **Delphi Abandoned These Claims**

Under § 554(a), it is the abandonment motion by the debtor that itself irrevocably declares the intent to abandon.  *In re Woods*, 173 F.3d 770, 778 (10th Cir. 1999).  As the Tenth Circuit declared in *Woods*, a § 554(a) abandonment request is made by motion and, as such:

> [A]bandonment under §554(a) . . . by very definition must be intentional and unequivocal and . . . the general rule of irrevocability applies rather strictly. . . .

In their First Extension Motion, Debtors requested authority under § 554(a) to abandon selected categories of claims, including claims for under $250,000 and claims against foreign suppliers.  First Extension Motion, ¶¶ 17, 25, 26 (Ex. G to Omnibus Response).  It is undisputed that the Debtors unequivocally expressed their intent to abandon these claims in their motion.[2]

At the August 16, 2007 hearing, the Court approved the Debtors' request to abandon these claims.  *See* August 16, 2007 Tr. at pp. 8-11, attached as Ex. I to the Omnibus Response. The Court then entered its August 16, 2007 Order which, at paragraph 5, expressly approved and authorized the abandonment of these claims.  *See* Ex. H to the Omnibus Response.

Upon the passage of the 10 day appeal period, the Debtors' abandonment of these claims under § 554(a) became irrevocable.  *In re Malden Mills Indus.*, 30 B.R. 688, 701 (B.A.P. 1st Cir. 2004) ("the date of any approved abandonment should be the date the notice of motion for abandonment was filed"); *In re Grossinger's Associates*, 184 B.R. 429, 432 (Bankr. S.D.N.Y. 1995) (abandonment is irrevocable once it occurs); *In re Woods*, *supra* (irrevocability is strictly applied).

---

[2] The Debtors justified the abandonment of these claims because they expected a 100 percent plan, they did not intend to pursue any preference claims, and that it was not prudent to assert claims for less than $250,000 or against foreign suppliers when their value likely did not exceed the cost of bringing them.  The Debtors eliminated over 85% of their 11,000 potential preference claims by abandoning these categories of claims, and thereby meaningfully reduced their administrative burden.  *See* Omnibus Response, Ex G at ¶¶ 13-16, 25.

6

## 2.    Delphi Has No Valid Objection To Dismissal of the Abandoned Claims

### i.    Delphi Improperly Relies On § 554(c) Cases

The Debtors' abandonment under § 554(a) is at issue here.  However, in its Omnibus Response, Delphi cites only to cases that involve a "technical" abandonment under § 554(c), such as where a case was closed without administering estate property and there is an issue whether the trustee intended to abandon that asset.  *Ayazi v. New York City Bd. of Educ.*, 315 Fed. Appx. 313 (2d Cir. 2009) (§ 554(c) preconditions not met);  *In re Chartschlaa*, 538 F.3d 116 (2d Cir. 2008) (after § 554(a) motion was not prosecuted to entry of an order, court rejected argument that technical abandonment occurred under § 554(c) because there was no intent to abandon); *Fedorov v. Peter T. Roach and Associates, P.C.*, 354 F. Supp. 2d 471 (S.D.N.Y. 2005) (lawsuit abandoned because bankruptcy closed without administering it).  Of course, under § 554(c), where  technical abandonment is the result of mistake or inadvertence, the Court may reverse the abandonment or find that abandonment never occurred if the trustee never manifested a clear intent to abandon.  *In re Ozer*, 208 B.R. 630, 633 (Bankr. E.D.N.Y. 1997).

In stark contrast, in this case, the Debtors requested abandonment by motion under § 554(a) (which motion declared the Debtors' unequivocal intent to abandon) and the motion was approved by Court order, which rendered the Debtors' abandonment irrevocably effective. Therefore, the Debtors' abandonment was completely effective and irrevocable when its motion was granted.

In fact, this Court made this very point to Delphi's counsel at the recent April 1, 2010 hearing, when Delphi's counsel's made the same unusual contention that the Order approving the Debtors' abandonment of these claims was not effective unless and until the Debtors later separately acted on its authorization to abandon:

MR. GEOGHAN:  . . . [T]he intent of the [abandonment] motion was to seek authorization to abandon these -- to abandon transfers and certain parties.  But it didn't direct -- it didn't seek the Court to direct that we abandon them.

**THE COURT:  But the Court doesn't direct abandonment. You get authority to abandon because you're abandoning.**

MR. GEOGHAN:  Yes your honor.  But clearly, in this case, these were not abandoned.  . . .

**THE COURT:  But how could it not be abandoned when you've got authority to abandon them?  I mean, what more do you need?**

MR. GEOGHAN:  Your Honor, we would have needed to not file the complaint against the foreign suppliers.  In addition, your honor, I don't believe these parties were part of the group of foreign suppliers that the debtors were intending to abandon.

THE COURT:  But the motion didn't say that, right?

MR. GEOGHAN:  Well, the motion might not have - -

\*    \*    \*

THE COURT:  . . . I don't think the motion carved out types of foreign suppliers against whose claims weren't going to be abandoned, did it.

MR. GEOGHAN:  No, Your Honor.  I don't believe it did….

\*    \*    \*

**THE COURT:  . . . . I am having trouble following the other point.  I mean, the motion doesn't say we are seeking authority but we may not use it, right.  It doesn't say that.  It says we are seeking authority to abandon.**

*See* April 1, 2010 Tr. pp. 45-47, attached as Ex D to the Omnibus Response (emphasis added).

Delphi has not cited a single case that supports its contention that a § 554(a) abandonment is not effective until the Debtors later "act" upon it.  This is because the law is

clear – the Debtors' § 554(a) abandonment was complete when the Court entered its August 16, 2007 Order. There was nothing left to do then – the claims were irrevocably abandoned.[3]

### ii.    Delphi's Omnibus Response Relies Solely On An Irrelevant Fact

The only fact upon which Delphi relies to support its contention that the Debtors did not intend to abandon these claims is that the Debtors later filed 742 adversary proceedings which included some claims for less than $250,000 and against foreign suppliers. However, it is irrelevant what occurred after the Debtors' motion to abandon was granted. Upon the Court's granting of the motion, the abandonment was irrevocable and incontestable. *In re Woods*, *supra*; *In re Maiden Mills*, *supra*. It did not matter what the Debtors later did, or whether they included an abandoned claim in a later filed adversary proceeding.[4] The Debtors had irrevocably abandoned these claims.

Under the circumstances, the Court should dismiss the portion of the complaints that assert claims for less than $250,000 or against foreign suppliers.

### C.    The Debtors Violated This Court's Case Management Orders By Failing To Provide Actual Notice To The Avoidance Defendants

In their motions, these Defendants argued that the combination of permitting the Debtors to file the avoidance complaints under seal – thereby concealing from the defendants that they had been sued – while repeatedly extending the Debtors' time to serve process for well over two years – all without notice and an opportunity to object – violated their procedural due process rights. The effect of this deprivation is clear – the congressionally-mandated statute of

---

[3] Thus, the Debtors simply mischaracterized the August 16, 2007 Order when they five months later stated in their Disclosure Statement that they were "authorized (but not directed)" to abandon these claims. Omnibus Response, Exhibit E, p. DS-150.

[4] After it abandoned these claims, the Debtors later filed 742 adversary proceedings which included some claims for less than $250,000 or against foreign suppliers, including as to affiliates of Affinia, Valeo, and others. The fact that the Debtors included abandoned claims in their complaints was consistent with the Debtors' representation to the Court that it did not want to devote the necessary administrative time to carefully review its preference claims.

9

limitations, codified at 11 U.S.C. § 546, was purportedly extended by well over 2 ½ years,

without notice and an opportunity to be heard.

In response, Delphi claims that the Defendants have not been deprived of an "identifiable

liberty or property interest."  Indeed, it is Delphi's position that, because the Defendants can

defend against the claims now, nearly three years after the statute of limitations expired, the due

process violations that led up to the issuance of the Procedures and Extension Orders are, in

effect, harmless.[5]  *See* Omnibus Response ¶ 7 (claiming that the defendants are "now receiving

all of the process that they are due").  As outlined in the reply briefs filed by the various

defendants, including the briefs filed by Hewlett Packard (Adv. Pro. No. 07-02262) and Wagner-

Smith Co. (Adv. Pro. No. 07-02581), all of which are incorporated herein by reference, Delphi's

arguments are specious, are based on a complete misunderstanding of the protections afforded

litigants under the Due Process Clause, and none of the Orders are binding on the defendants.

Moreover, apart from the Due Process violation, the Debtors are in violation of this

Court's own notice procedures.  Prior to entry of the Procedures Order, in a series of Case

Management Orders (each a "CMO"), the Court specifically directed the Debtors to provide

***actual notice***, by overnight mail, to "***all parties with a particularized interest in the subject of***

***[any] Filing***."  *See* Docket No. 2883 (March 20, 2006 Supplemental CMO); Docket No. 5418

(Eighth Supplemental CMO).  For example, the March 20, 2006 Supplemental CMO, which was

incorporated into the Eighth Supplemental CMO, provides, in relevant part:

> Every Filing shall be subject to the filing and notice procedures
>
> described herein (the "Notice Procedures").  All Filings shall be

---

[5] Delphi's Omnibus Response does not dispute or contest Defendants' argument that the
Procedures and Extension Orders were interlocutory, rather than final orders.  Having failed to address or
counter this issue, Delphi can no longer contest that the orders were interlocutory.

served (a) via overnight mail upon all parties with a particularized

interest in the subject of the of the Filing . . .

Ex. 4 (Mar. 20, 2006 Supplemental CMO).

No one can deny that these Defendants each had a particularized interest in the motion

that led to the entry of the August 2007 Procedures Order.  The motion sought to: (a) conceal the

filing of the avoidance actions from the very defendants to be named in the lawsuits; and (b)

delay service until long after the statute of limitations period expired.

It is also clear that ***the Debtors not only completely ignored the Court's CMO (<u>none</u> of***

***the avoidance defendants, including Affinia, Valeo, GKN and MSX, received actual notice of***

***the First Extension Motion as required by the CMO),[6] but the Debtors obtained the relief now***

***at issue by specifically misrepresenting to the Court that they had provided actual notice***

***pursuant to the Court's CMOs when they had not***.  *See* Omnibus Response, Ex. G (August 6,

2007 Extension Motion, ¶ 55) (representing to the Court that the Debtors had complied with the

notice provisions of the CMO).  Having failed to properly serve the Defendants with the actual

motion pursuant to the CMO and having misrepresented that it had done so, Delphi cannot now

claim that these Defendants are bound by the Procedures Order.  Accordingly, the Procedures

Order should be vacated and the avoidance actions dismissed.

Moreover, Delphi's reference to the fact that Valeo happened, by sheer coincidence, to be

on the "Master Service List" – and thus received a general, non-particularized electronic

"notification" every time a filing was made in the case (like the thousands of other entities on the

---

[6] Delphi's Omnibus Response admits that the Debtors failed to provide particularized notice of
the First Extension Motion (that lead to entry of the Procedures Order) to any of the avoidance
defendants, as required by the Court's Case Management Order.  Footnote 8 to Paragraph 69 of the
Omnibus Response, moreover, does not even contend that Affinia, GKN or MSX received non-
particularized electronic "notification" pursuant to the "Master Service List" (which merely sends out
electronic copies to the thousands of entities on the List of a filing made in the bankruptcy case).

list) – is completely irrelevant.[7]  Such a generalized, non-specific "notification" is deficient as a matter of law.

Valeo was specifically told – by the Debtors and the Court in the CMO – that it would receive actual notice if it had a "particularized interest" in a filing (and was entitled to rely on that representation) and, prior to March 2010, every representation made by the Debtors (including those made in the Debtors' August 2007 motion) suggested that the Debtors would not pursue avoidance actions against any entity (including Valeo) other than the four Laneko Defendants.  And, of course, it is black-letter law that a defendant, like Valeo, does not have a duty to monitor bankruptcy filings and guess whether a filing may affect its interests.  *City of New York v. New York, N.H. & H. R.R. Co.*, 344 U.S. 293 (1953).  That, of course, was the entire point of the Court's CMO – to provide particularized notice to those affected – and is certainly why merely receiving an electronic "notification" that a filing was made, that does not identify the defendant, and is the same notice that thousands of others on the "Master List" received, is no notice at all!  *In re Johns Manville Corp.,* 600 F.3d 135, 154-58 (2d Cir. 2010) (to be effective, notice must permit the defendant to intelligently understand that its right were going to be permanently affected, necessitating a need to appear and defend).[8]

As such, the Procedures Order should be vacated as to all defendants and the avoidance actions dismissed.

---

[7] Delphi, of course, admits that no notice, not even this insufficient "Master List" notice, was given to Affinia, GKN or MSX.  *See* Omnibus Response, footnote 8 to Paragraph 69.

[8] The requirement of particularized notice is especially important in a chapter 11 case of this magnitude where thousands of pleadings are filed (i.e., as of June 22, 2010, there have been 20,264 filings on the Debtors' bankruptcy docket.)

**D.      The Avoidance Complaints Must Be Dismissed Because
The Debtors Failed To Timely Unseal The Complaints**

Because of the strong legislative policy favoring repose, the Procedures and Extension

Orders must be vacated and the avoidance actions dismissed, for several other reasons.

First, as a threshold matter, the sealing of complaints in civil matters is highly disfavored

and rarely, if ever, appropriate.   As Judge William Pauley explained just days ago, "matters

should not be shrouded in secrecy," particularly where the opposing party – like the moving

defendants here – "did not have an opportunity to weigh in."   Ex. 5, *Standard Chartered Bank*

*Int'l (Americas) Ltd. v. Calvo*, No. 10-cv-4684, p.3 (S.D.N.Y. June 16, 2010); *see also* Ex. 6, *In*

*re Matter of Eastman Kodak Company's Application For An Order Sealing The Files In Civil*

*Actions Against Ability Enterprise Company Ltd. and Kyocera Corp.*, p.1 (S.D.N.Y. June 15,

2010) (recognizing that the presumption of public access must be maintained with respect to

complaints because "it is a pleading essential to the Court's adjudication of the matter as well as

the public's interest in monitoring the federal courts").   The court tellingly concluded:

> Applications like this one spawn considerable mischief.   If
> granted, they conceal the very existence of lawsuits from the
> public. . . .  The Court will not permit the parochial interest of one
> party to trump the public interest in the efficient and transparent
> administration of justice.

*See Standard Chartered Bank,* p. 3.

In fact, 11 U.S.C. § 107 provides the **only basis** for permitting the sealing of court records

in bankruptcy courts.[9]  And, as Hewlett Packard detailed in its Reply Brief (Adv. Pro. No. 07-

02262), the Debtors' asserted basis for sealing does not come close to satisfying the narrow

"commercial information" standard set forth in *In re Orion Pictures Corp.*, 21 F.3d 24, 27 (2d

Cir. 1994) (defining "commercial information" as information "which would cause an unfair

business advantage to competitors by providing them information as to the commercial

operations of the debtor").

Second, even assuming *arguendo* that the initial determination to seal the avoidance

complaints and delay service was justified by the prospect of a 100 percent plan (as Delphi

repeatedly alleges in its Omnibus Response), a party's ability to keep an action a secret through

the sealing of a complaint is not boundless.  *Efaw v. Williams*, 473 F.3d 1038, 1041 (9th Cir.

2007) (explaining that, while a district court has the power to extend the time to serve under Rule

4(m), "no court has ruled that the discretion is limitless").

Indeed, even in the criminal context – where there is an explicit rule of criminal

procedure that permits sealing and strong policy justifications for allowing the sealing of

complaints[10] –  the sealing of a complaint will <u>not</u> be allowed to toll the statute of limitations if

the Government does not unseal the complaint as soon as the stated reason for sealing no longer

exists.  The Second Circuit has explained:

---

[9]  *In re Gitto Global Corp.*, 422 F.3d 1, 8 (1st Cir. 2005); *In re Neal*, 461 F.3d 1048, 1053 (8th Cir. 2006); *In re Food Mgmt. Group LLC*, 359 B.R. 543, 554 (Bankr. S.D.N.Y. 2007); *In re Phar-Mor, Inc.*, 191 B.R. 675, 679 (N.D. Ohio 1995).

[10]  Courts are, of course, more generous in the criminal context because of the important government interest in sealing complaints to facilitate the government's investigation into criminal activity, to protect the safety of informants and other witnesses, to prevent evidence supporting such criminal activity from being destroyed and to prevent the defendants from avoiding arrest and witnesses from avoiding being interviewed. 24 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 606.02[2][c] n. 80 (3d ed.)

14

> [W]hen a sealed indictment has tolled the statute of limitations, the
> policy of repose underlying the statute demands that the
> Government unseal the indictment as soon as its legitimate need
> for delay has been satisfied.

*United States v. Watson*, 599 F.2d 1149, 1154 (2d Cir. 1979) [Watson I], *amended on reh'g by* 690 F.2d 15 (2d Cir. 1979) [Watson II], *modified en banc sub nom. United States v. Muse*, 633 F.2d 1041 (2d Cir. 1980); *United States v. Gigante*, 436 F. Supp. 2d 647 (S.D.N.Y. 2006) ("Even if the Government has a legitimate prosecutorial purposes for sealing an indictment, the time period in which the indictment may remain sealed is not boundless. Rather, the Government is required to unseal the indictment 'as soon as its legitimate need for delay has been satisfied.' "). ***This requirement protects against "the inevitable prejudice to the defendant occasioned by the delay*.**" *United States v. Deglomini*, 111 F. Supp. 2d 198, 200 (E.D.N.Y. 2000). And, as discussed in *Watson I*, these statute of limitations and prejudice concerns are separate and distinct from speedy trial concerns under the Sixth Amendment. *Watson I*, 599 F.2d at 1155-57.

Here, the August 2007 Procedures Order was the only order that addressed the sealing of the avoidance complaints and it specifically authorized the Debtors to unseal the complaints at their discretion. The purported need for sealing the complaints then expired no later than April 2008.[11] As Delphi recognizes in its Omnibus Response, this Court has already concluded that, after the EPCA funding fell through in April 2008, the "primary rationale for the prior extension orders no longer applied." *See* Omnibus Response, at ¶ 38 and Exhibit G (April 1, 2010 Tr. p. 62).

---

[11] In fact, by that time, the Debtors had ceased doing business with any of the Affinia Defendants, so that there was no business justification for keeping the complaint against it sealed.

Accordingly, even if the original sealing order was justified by the prospect of a 100 percent plan, when the facts changed (in April 2008) and the purported original motivation fell away, **the Debtors were required** to immediately unseal the avoidance complaints and pursue the avoidance actions (as this Court allowed them to do under the terms of the Procedures Order). Having chosen, for whatever reason, not to do so, the avoidance actions must now be dismissed. *Watson I*, 599 F.2d at 1156 (dismissing indictment for failure to unseal after the motivation for the delay went away); *Deglomini*, 111 F. Supp. 2d at 203 (same).

This conclusion is mandated here, where the Debtors not only failed to immediately unseal the complaints, but the Debtors failed to do so for two additional years **after** the EPCA funding fell through (and well in excess of a year after it became crystal clear that the EPCA funding would never return)!  Moreover, even after filing their amended plan documents and thereafter, when they knew that they would be suing the 177 avoidance defendants and there would be substantially lower creditor recoveries, the Debtors still chose not to unseal the complaints and proceed with their actions.

It is well-settled that such a lengthy delay between the sealing and unsealing of a complaint renders the original sealing of the complaint unreasonable as a matter of law. *Deglomini*, 111 F. Supp. 2d at 200 (dismissing indictment, concluding that a 14 month time period between sealing and unsealing was unreasonable); *Gigante*, 436 F. Supp. 2d at 659 (two year delay was unreasonable); *United States v. Sherwood*, 38 F.R.D. 14, 20 (D. Conn. 1964) (13-month delay was unreasonable); *United States v. Heckler*, 428 F. Supp. 269, 272 (12-month delay was unreasonable).

Moreover, the fact that the Debtors allegedly may not have known whether they would have sufficient funds to pursue the adversary proceedings after the EPCA funding fell through

16

cannot support the continued sealing of the complaints and service extensions sought by the

Debtors.  Omnibus Response, ¶ 38.  Rule 4(m) and Section 107 simply cannot be utilized to

permit a party to conceal the filing of a complaint beyond the statute of limitations period so they

can, as the Debtors suggested, "wait and see" if they can or really want to prosecute the action at

some later date.  *Smith v. Pennsylvania Glass Sand Corp.*, 123 F.R.D. 648, 651 (N.D. Fla. 1988)

("Plaintiff cannot deliberately or even inadvertently 'wait and see' if his financial resources

improve enough to allow him to diligently prosecute his case."); *Fimbres v. United States*, 833

F.2d 138, 139 (9th Cir. 1987) (rejecting Rule 4(m) extension, explaining that the notion that the

plaintiff lacked the financial resources to prosecute the action amounted to nothing more than an

improper intentional delay in service).  If such a "wait and see" rationale were permitted, § 107

and Rule 4(m) would be rendered meaningless.

As a result, the Debtors did not unseal the complaints in a timely manner and the remedy

for their failure to do so is the dismissal of their complaints.

**E.      Even Where A Complaint Is Timely Unsealed, It Must
        Be Dismissed Where There Is Substantial Prejudice**

Even if the Court were to conclude that the sealing of the complaints was justified

(which, as discussed throughout, it was not) and that Delphi unsealed them in a timely manner

(which it clearly did not), the avoidance complaints must still be dismissed where, as here, a

defendant suffers substantial actual prejudice during the time period the file is sealed.[12]  As the

Second Circuit explained:

> But when the defendant can show substantial actual prejudice [as a
>
> result of the sealing of an indictment], the indictment must be

---

[12]  Of course, as explained in Hewlett Packard's Reply Brief (Adv. Pro. No. 07-02262), there is
no requirement to show prejudice from a deprivation of due process rights.

> dismissed, for even a legitimate prosecutorial interest is then
> insufficient to effectuate statute of limitations policies.

*Watson II*, 690 F.3d at 16; *United States v. Srulowitz*, 819 F.2d 37, 40 (2d Cir. 1987).

Here, there is an "irrebuttable presumption" of prejudice from the delay in unsealing and serving. *United States v. Marion*, 404 U.S. 307, 322 & n.14 (1971). Moreover, Affinia, Valeo, GKN, and MSX have, by way of declarations, submitted unrebutted evidence of substantial actual prejudice, including the closing of plants and the loss of evidence and witnesses.

Indeed, the Second Circuit has specifically declared that, in situations such as ours:

> It is obvious that any defendant would be harmed by a generous
> extension of the service period beyond the limitations period for
> the action, ***especially if the defendant had no actual notice of the***
> ***existence of the complaint until the service period had expired.***

*Zapata v. City of New York*, 502 F.3d 192, 198 (2d Cir. 2007) (emphasis supplied).

Under the circumstances, even if the complaints had been timely unsealed, the complaints must be dismissed because of the substantial actual prejudice the Defendants suffered. Defendants submit that this is a critical threshold issue that must be addressed before this case can proceed.

**F.    <u>In Any Event, The Procedures and Extension Orders Were Improper</u>**

**1.    <u>The 120-day Time Period For Service Cannot Be Extended To Facilitate
Non-Service</u>**

Delphi's Omnibus Response also admits that, when petitioning the Court for relief, the Debtors sought to facilitate the ***<u>non-service</u>***, rather than the service of their sealed avoidance complaints (ultimately ensuring that the avoidance defendants did not receive notice for over 2 ½

years).  For example, in paragraph 56, Delphi admits that the August 2007 Procedures Order (entered before the complaints were even filed) permitted the Debtors to "defer serving process on defendants."  Omnibus Response, ¶ 56.  Likewise, Paragraph 2 acknowledges that the Order allowed the Debtors to "serve [the complaints] only if and when it became necessary to do so."  *Id*. ¶ 2. Based on these admissions, there could never have been cause, good or otherwise, to seal the complaints and extend the 120-day time period set forth in Rule 4(m).

It is universally recognized that Rule 4(m) was enacted to "force parties and their attorneys to ***diligently prosecute their causes of action***."  *Knorr v. Coughlin*, 159 F.R.D. 5, 6 (N.D.N.Y. 1994) (emphasis supplied); *In re Southold Development Corp.*, 148 B.R. 726, 729 (E.D.N.Y. 1992) ("The 120-day service requirement of Rule [4(m)] was adopted in order to encourage the 'prompt movement of civil actions in the federal courts' ").

For this very reason, courts have routinely held that it is an abuse of discretion to permit an extension when the plaintiff is attempting to delay, rather than facilitate service.  *See, e.g.*, *Montalbano v. Easco Hand Tools, Inc.*, 766 F.2d 737, 740 (2d Cir. 1985) (affirming the dismissal of a complaint based on lack of effort to serve, explaining that dismissal was particularly appropriate where the plaintiff "has not exactly bent over backward to effect service"); *Smith v. Pennsylvania Glass Sand Corp.*, 123 F.R.D. 648, 651 (N.D. Fla. 1988) ("Plaintiff cannot deliberately or even inadvertently 'wait and see' if his financial resources improve enough to allow him to diligently prosecute his case."); *Fimbres v. United States*, 833 F.2d 138, 139 (9th Cir. 1987) (same).

As one court pointedly explained:

Even under Rule 4(m), "though leniency may sometimes be appropriate for those who have in good faith attempted timely

service, to afford it to litigants who have failed to make even the

most basic efforts would **turn Rule 4(m) into a toothless tiger**.

*Knorr*, 159 F.R.D. at 7 (emphasis supplied).

Indeed, because the purpose of Rule 4(m) is to facilitate (rather than impede) prompt

service, courts have recognized that the "entire focus [of Rule 4(m)] was to force plaintiffs'

(more realistically their lawyers') diligence **in order to preserve causes of action against**

**limitations problems**." *Coleman v. Greyhound Lines, Inc.*, 100 F.R.D. 476, 477 (N.D. Ill. 1984)

(emphasis added); *Perkins v. United States*, No. 86-363, 1987 WL 19842, at *3 (N.D.N.Y. Nov.

13, 1987); *United States Fire Ins. Co. v. Jesco Constr. Co.*, No. 03-2906, 2003 WL 21689654, at

*3 (S.D.N.Y. July 16, 2003) ("The primary purpose of service of process is to give a defendant

legal notice of the claims asserted against him so that he may prepare his defense.").

Here, by intentionally structuring their request for relief to seal the complaints and delay

service indefinitely, the Debtors undertook a course of action that ensured the very evil Congress

was attempting to prevent when enacting Rule 4(m) would occur – that the complaint would not

be served (and no effort would be made to serve the complaint), thereby preventing the

Defendants from receiving notice and timely preserving documents and testimony necessary for

their defense. The harm posed by the Debtors' actions is unassailable. *Zapata*, 502 F.3d at 198

("It is obvious that any defendant would be harmed by a generous extension of the service period

beyond the limitations period for the action, especially if the defendant had no actual notice of

the existence of the complaint until the service period had expired . . ."). As the Fifth Circuit has

declared:

> Counsel was intentionally keeping the case unknown to the named
> defendant for the purpose of manipulating his own claim in a state
> court. His delay was indefinite. He was blocking the right of the
> potential defendant to know that a suit had been filed against it in

federal court, blocking discovery, and blocking the right of the
putative defendant to preserve its defenses. This not only was not
good cause, it was an ***obvious misuse of the judicial process***.

*Redding v. Essex Crane Rental Corp. of Alabama*, 752 F.2d 1077, 1078 (5th Cir. 1985)
(emphasis supplied).

Here, the Extension Motion achieved a result that was clearly prohibited by Rule 4(m),

and the resulting orders should be vacated and the complaints dismissed.

> **2.    No Cause, Good or Otherwise, Existed For Delphi's Request To Seal The
> Complaints And Delay Service In The First Place**

Delphi also continues to claim that the extension motions were necessary, in the first

instance, in order to preserve the "status quo" and to allow the Debtors to "negotiate favorable

terms with its suppliers" in light of the 100 percent plan.    Omnibus Response, ¶¶ 48-49, 55.

Delphi contends that, without these protections, the Debtors would have suffered "significant

harm" and "commercial injury." *Id.* ¶¶ 44-45, 49.  Delphi's self-serving justifications have no

merit at all.

To begin with, the notion that Delphi continues to advance – that the Debtors needed to

seal the complaints (and delay service) in order to avoid being "irreparably harmed" – is

insulting.  Nothing in the avoidance complaints was confidential or potentially damaging to the

Debtors in any way.  Delphi, in fact, had absolutely no problem unsealing the complaints in 2010

when it concluded that it no longer had a use for the avoidance defendants.

In reality, the "information" that the Debtors sought to conceal from the defendants was,

quite obviously, the mere fact that an avoidance action (seeking millions of dollars) had been

filed in the first place.  By intentionally keeping the Defendants in the dark, the Debtors were

able to maintain an ***uneven playing field***, with one party, the Debtors, having an informational

advantage over the other during the parties' ongoing business dealings and negotiations.  *See*,

21

*e.g.*, Declaration of Jim Shaul, Ex. E to Docket 22 in the GKN Adversary Proceeding (Case No. 07-02328).[13]

And, of course, the Debtors' scheme, by Delphi's own admission, worked.  The Debtors were able to extract "favorable" terms during the parties' negotiations and then, years after the limitations period expired, they were able to spring their avoidance actions on 177 unsuspecting defendants.  Cause cannot exist for sealing a complaint under such circumstances – to facilitate uneven, bad faith negotiations.  *In re Orion Pictures*, 21 F.3d 24, 27 (2d Cir. 1994) (defining "commercial information" under § 107 to be "information which would cause an *unfair advantage to competitor*s by providing them information as to the *commercial operations* of the debtor").

Indeed, as Affinia, GKN, MSX and Valeo argued in their original motions, it is black-letter law that protective orders are improper where, as here, they are merely used to facilitate the debtor's reorganization or to assuage fears that disclosure of allegations in an adversary complaint would adversely affect its business activities.  *In re Epic Associates*, 54 B.R. 445, 449 (E.D. Va. 1985). If this were not the rule, such garden-variety concerns, **which exist in every bankruptcy case**, would eviscerate Section 107's clear protections.

In fact, the Second Circuit has considered and rejected the identical idea, advanced by the Debtors at ¶ 56 of their Omnibus Response, that the limitations period for preference actions can be extended beyond the statutory two-year period in order to allow the debtor "to pursue ongoing

---

[13] Mr. Shaul states at Paragraph 5 of his Declaration: "If GKN had known about the lawsuit Delphi had filed against it, it would have negotiated differently with Delphi.  In particular, GKN had significant negotiating power with respect to the new contracts to continue supplying Delphi with the same parts it had been supplying under expiring contracts, because it would have been difficult, time consuming and expensive for Delphi to resource the production to an alternative supplier.  If GKN had known of the lawsuit, GKN would have refused to accept the new contracts to replace expiring contracts unless Delphi dismissed the lawsuit."  Delphi deliberately omitted reference to Mr. Shaul's declaration when it summarized the Defendants' declarations of prejudice in Exhibit B to the Joinder.

business operations through preservation of their supply base, and to continue developing a plan of reorganization that would allow the Debtors to emerge from Chapter 11." *U.S. Brass & Copper Co. v. Caplan (In re Century Brass Products, Inc.)*, 22 F.3d 37 (2d Cir. 1994). Specifically, in *Century Brass*, the Second Circuit overruled lower court precedent which previously held that the 2-year limitations period only applied to trustees, not debtors in possession ("DIP"), based on the belief that the premature initiation of preference actions would impede the debtor's reorganization.    While the Second Circuit recognized that a "DIP is generally involved in attempts to reorganize and continue the debtor's business" and that many believed that "subjecting a DIP to the two-year limitations period would unduly hobble its efforts to reorganize or to negotiate with creditors," the Court rejected the notion that the two-year statute of limitations should not apply to DIPs, holding that the "two-year limitations period represents Congress's balancing of the interests of the debtor in negotiation . . ., against the interest of other persons in the repose of claims that may be made against them." *Id*. at 41.

Thus, under *Century Brass*, a debtor's assertion that relief is needed in order to help it reorganize and continue its business – the exact same arguments made by the Debtors here – cannot be used to extend or toll, as a practical matter, the statute of limitations.   The impact of *Century Brass* is clear: the avoidance actions should be dismissed because the arguments that were relied upon in fashioning the Orders have been rejected by the Second Circuit as insufficient to render the limitations period inapplicable to a debtor-in-possession.

Delphi further argues that the Procedures Order was necessary to protect the Defendants from themselves (preventing the Defendants from becoming "alarmed" and running off and incurring legal fees).   This is absurd.   First, how were the Debtors "benefiting" the Defendants by preventing them from retaining counsel to protect their interests?   There is not a single case in

the history of American jurisprudence that supports the view that a plaintiff may conceal both the filing of a complaint and a series of motions that eviscerate a defendant's legal rights, because informing the defendant would "unnecessarily alarm" the defendant and force it into the "inconvenient position" of retaining legal counsel to protect its interests.[14]

Additionally, if, as Delphi contends, everyone understood that the initial plan was going to pay 100 percent, there was no reason to believe that the defendants would have acted irrationally. Instead, had particularized notice been provided, documents and testimony relevant to the claims could have been preserved by the Defendants and tolling or stay of litigation agreements entered into. By hiding these actions unnecessarily, the Debtors chose a course that prevented the defendants from doing so. Having chosen this course of action, Delphi must now live with the consequences that the avoidance complaints should be dismissed.

**3.    The Appropriate Remedy Is To Vacate The Procedures and Extension Orders And Dismiss**

Additionally, contrary to the position advocated by Delphi, if a complaint has been improperly sealed <u>and</u> the statute of limitations has, as a result, purportedly been tolled, the appropriate remedy is the dismissal of the complaint (not the unsealing of a document that has already been unsealed). *Watson*, 599 F.2d at 1156 (dismissing proceeding); *Deglomini*, 111 F. Supp. 2d at 203 (same); *Gigante*, 436 F. Supp. 2d at 659 (same).

The cases cited by Delphi have no bearing on the situation before the court and, instead, address irrelevant scenarios such as: (a) the unsealing of records by the court where the party who sealed the records failed to obtain leave of the court (*see Spano v. Boeing Co.*, 06-00743,

---

[14]    Delphi is really claiming its delay benefited the suppliers it elected not to sue or serve. However, we are dealing here with the rights of defendants who were sued and who were kept in the dark for years before they were served.

2008 U.S. Dist. LEXIS 54122, at *5 (S.D. Ill. July 16, 2008)); and (b) the unsealing of records

pursuant to a motion to unseal (*see In re Neal*, 461 F.3d 1048 (8th Cir. 2006)).

### 4.    Delphi Will Not Be Prejudiced If The Orders Are Vacated

Finally, to the extent that Delphi claims that it will be prejudiced if the Procedures and

Extension Orders are vacated, such claims are unfounded.

As discussed above, the Debtors already benefited from an uneven playing field when

negotiating favorable terms with their suppliers.  The extinguishment of the Debtors' claims has,

quite simply, been brought about by the Debtors' own strategic decisions.  The Debtors took a

risk, electing to hide the avoidance actions from the Defendants in order to negotiate more

favorable contract terms than it otherwise would have been able to had the Defendants known

that the Debtors were suing them.  Having made this election, Delphi clearly undertook a risk

that when the Defendants were finally served, the avoidance actions would be dismissed for any

number of reasons.  This risk was not unknown.  The Court specifically reminded Delphi that the

extensions granted by the Court were without prejudice to the rights of the defendants in the

avoidance actions to argue defenses.

Indeed, the Debtors were clearly able to facilitate their own reorganization by improperly

keeping the avoidance complaints a secret.  Had the Debtors filed unsealed complaints, they

would have undoubtedly had great difficulty negotiating new contracts which were commercially

feasible from the Debtors' perspective.  That fact alone would have caused the Debtors' ability to

operate in chapter 11 to be substantially harmed if not completely destroyed, leading to their

failure and likely liquidation.  So, by secreting the complaints, the Debtors preserved their ability

to reorganize.  But the Debtors cannot have their cake and eat it too – the avoidance defendants

are harmed at both ends while the Debtors are benefitted at both ends.  This is hardly fair;

especially in the context of a chapter 11 case which is conducted for the benefit of creditors as well as the debtors.

Second, had the Procedures and Extension Orders not been entered, it is doubtful that the Debtors would have brought these 177 avoidance actions given the Debtors' belief in 2007 that there would be a 100 percent plan and their decision not to pursue 11,000+ other potential preference actions.

G.    **The Complaints Should Be Dismissed Under *Twombly* and *Iqbal***

Delphi does not seriously dispute that its bare-bones preference complaints do not contain sufficient factual allegations to state a claim for relief under the pleading standards set forth in *Twombly* and *Iqbal*.  Indeed, in addition to *Angell v. Haven (In re Careamerica)*, 409 B.R. 346 (Bankr. E.D.N.C. 2009), which has become the leading *Twombly*/*Iqbal* decision addressing the preference pleading standard, Chief Judge Gonzalez recently issued an opinion dismissing a preference action, concluding that the complaint failed to allege sufficiently detailed facts with respect to each of the five elements of § 547(b).[15]  *In re Hydrogen, L.L.C.*, __ B.R. __, 2010 WL 1609536, at *11-12 (Bankr. S.D.N.Y. 2010).

Here, Delphi's complaints only identify a list of transfers and nothing else.  For example, for each transfer, Delphi does not even identify the contract at issue, which entity is the plaintiff, which entity is the defendant, the antecedent debt, or the alleged transferee status of the defendant under 11 U.S.C. § 550(a).

Recognizing this fact, Delphi's Omnibus Response requests, in lieu of dismissal, that it be allowed "informally" to provide the defendants with information necessary to answer the

---

[15] Delphi relies on *In re Allou Distributors, Inc.*, 387 B.R. 365, 405  (E.D.N.Y. 2008) and *In re NM Holdings Co., LLC*, 407 B.R. 232 (Bankr. E.D. Mich. 2009).  Both of these cases were issued without the benefit of the holding in *Iqbal* that the factual plausibility standards apply to all civil actions, not just in the antitrust context.

complaints. Stated differently, instead of amending its complaint, Delphi wants "informally" to provide information to the various defendants and then, based on the defendants' interpretation of this information, have the defendants answer the Debtors' still deficient complaint.

Delphi's solution is, quite clearly, no solution at all. Delphi's complaints should be dismissed for failing to satisfy *Twombly/Iqbal* for the reasons articulated by Hewlett Packard (Adv. Pro. No. 07-02262) in its Reply Brief. Having failed to avail themselves of the opportunity to amend their defective complaints within the five years since the alleged claims accrued, the Debtors should not be given yet another bite at the apple to replead. The Debtors' failure to file properly pled complaints is particularly inexcusable given that the Debtors admit that the documents required to draft adequate complaints were "routine documents" and that it "retained such basic information" but elected not to plead it. Omnibus Response, ¶ 62.

In any event, even if Delphi's complaints are not dismissed (as the circumstances here require), Delphi must correct its pleading deficiencies by amending and properly re-pleading its claims. Affinia, Valeo, GKN, and MSX have the right to answer a complaint that adequately pleads a claim against them. If the allegations are not amended, the Defendants, Delphi, and the Court will be left to guess what the defendants are admitting, what they are denying and what issues remain for trial.

Accordingly, if the Court is going to permit Delphi to amend, Delphi should be required to re-plead and, at a minimum, identify the following for each transfer at issue:

1. The name of the specific plaintiff and the specific defendant for that transfer;

2. The identity of the transferor;

3. The identity of the transferee;

4. The specific and identifiable antecedent debt for each transfer, including the PO number and/or contract number;

27

5.      The interest of each debtor-plaintiff in the property transferred;

6.      Facts showing that the transferee was a creditor of the debtor whose property was transferred; and

7.      Whether the defendant is named as the initial transferee, the party for whose benefit the transfer was made, the immediate transferee or mediate transferee.

These are the minimum facts necessary to state a claim for each transfer.

## H.    Delphi Has Refused To Enter Orders Dismissing Improperly Named Defendants

In footnote 13 of Delphi's Omnibus Response, the Debtors agreed to dismiss all of the non-entity/non-existent defendants that they sued. These include Affinia, Affinia Group, Affinia Canada, MSX, MSX International, Valeo, Valeo Airflow Division, Valeo Electronics NA and Valeo Wiper Systems & Electronic Motors North America.

Consistent with Delphi's agreement in the Omnibus Response, Affinia, MSX and Valeo asked Delphi to sign consent orders to that effect. See Exs. 7, 8 and 9. The Butzel firm, on behalf of Delphi, signed the consent order in the Affinia proceeding, but has not responded to date with respect to MSX (but presumably will agree to the same relief). The Togut firm, however, inconsistently, has refused to sign the consent order in the Valeo proceeding. Accordingly, the Defendants request that the Court dismiss such defendants with prejudice in the Affinia, [16] MSX and Valeo proceedings.

## CONCLUSION

For the reasons stated above and for the reasons stated in the original memorandums of law, the preference complaints should be dismissed.

---

[16] The Affinia consent order has been submitted to the Court for entry.

Respectfully submitted,

HONIGMAN MILLER SCHWARTZ AND COHN LLP

Attorneys for Defendants
By: /s/ Judy B. Calton _____
    I. W. Winsten (P30528)
    Judy B. Calton (P38733)
    E. Todd Sable (P54956)
    Douglas Salzenstein (P59288)
    Marcia Bennett Boyce (P67584)
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226-3506
Telephone:  (313) 465-7344
Facsimile:  (313) 465-7345
e-mail:  jcalton@honigman.com

Dated:  July 2, 2010

DETROIT.4252894.3