**FOX ROTHSCHILD LLP**                                   **Hearing Date:  July 22, 2010 at 10:00 a.m.**
Midtown Building, Suite 400                              **Reply Deadline: July 2, 2010**
1301 Atlantic Avenue
Atlantic City, NJ  08401
Michael J. Viscount, Jr. (Admitted *pro hac vice*)
Brian R. Isen (*Pro hac vice pending*)
Tel: (609) 348-4515

          -and-

100 Park Avenue, 15th Floor
New York, NY 10017
Fred Stevens
Tel: (212) 878-7905

***Attorneys for M&Q Plastic Products, L.P.***

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re                                          :          Chapter 11
                                               :
DPH HOLDINGS CORP., et al.,                     :          Case No. 05-44481 (RDD)
                                               :
                          Debtors.             :           (Jointly Administered)
------------------------------------------------------------x
DELPHI CORPORATION, et al.,                     :
                                               :
                          Plaintiffs,           :
                                               :          Adv. Pro. No. 07-02743 (RDD)
              vs.                               :
                                               :
M&Q PLASTIC PRODUCTS AND                        :
M AND Q PLASTIC PRODUCTS.,                       :
                                               :
                          Defendants.           :
------------------------------------------------------------x

**REPLY OF M&Q PLASTIC PRODUCTS, L.P. IN SUPPORT OF
MOTION SEEKING AN ORDER (I) DISMISSING THE COMPLAINT WITH
PREJUDICE; (II) VACATING CERTAIN PRIOR ORDERS PURSUANT TO
FED. R. CIV. P. 60 AND FED R. BANKR. P. 9024; AND (III) IN THE
<u>ALTERATIVE, REQUIRING A MORE DEFINITE STATEMENT</u>**

AC1 922546v1 07/02/10

## TABLE OF CONTENTS

|  | Page |
|---|---|

TABLE OF AUTHORITIES ................................................................................... 3

PRELIMINARY STATEMENT ............................................................................. 4

REBUTTAL ARGUMENTS .................................................................................. 6

    A.    Joinder with Other Reply Submissions ....................................................... 6

    B.    The Court Should Discount the Reorganized Debtors Statement of
Facts and Acknowledge that Proper Notice was Never given to
Defendants who had a Particularized Interest in the Outcome of the
Proceedings Affecting Preference Claims ................................................... 7

    C.    The Lack of Transparency Benefited only the Debtors and Served to
Severely Burden the Defendants Many of Whom, such as M&Q are
now Prejudiced by the Resulting Delay ...................................................... 8

    D.    Constitutionally Protected Rights of the Defendants have been Violated
by the Judicial Action Initiated by the Debtors........................................... 11

    E.    Widespread Notice is not Synonymous with Adequate Notice ................... 14

    F.    Section 7.24 and Exhibit 7.24 of the Plan as Originally Confirmed can
not be Ignored in Assessment of the Res Judicata and Estoppel
Arguments Advanced by Defendants........................................................... 14

CONCLUSION ..................................................................................................... 15

AC1 922546v1 07/02/10

## TABLE OF AUTHORITIES

**Page(s)**

CASES

Adkins v. Children's Hospital,
     261 U.S. 525 (1923) ................................................................................................. 13

Armstrong v. Fairmont Community Hosp. Assoc., Inc.,
     659 F.Supp. 1524 (D. Minn. 1987) .......................................................................... 11

Brockett v. Winkle Terra Cotta Co.,
     81 F.2d 949 (C.A.8 1936) ......................................................................................... 13

Charles Wolff Packing Co. v. Court of Industrial Relations of State of Kansas,
     262 U.S. 522 (1923) ............................................................................................12, 13

County of Sacramento v. Lewis,
     523 U.S. 833 (1998) .................................................................................................. 13

In re New York, N. H. & H. R. Co.,
     289 F.Supp. 451, 454 (D.Conn. 1968) ..................................................................... 12

Lynch v. U.S.,
     292 U.S. 571 (1934) .................................................................................................. 12

Weitzman v. Stein,
     897 F.2d 653 (2d Cir. 1990) ..................................................................................... 12

Wolff v. McDonnell,
     418 U.S. 539, 558 (1974) .......................................................................................... 13

STATUTES

Article I, Section X of the Constitution of the United States ................................................11, 12

11 U.S.C.A. § 107(b) ................................................................................................................... 9

11 U.S.C.A. § 546(a) ................................................................................................................... 4

Fed. R. Bankr. P. Rule 7004(a) ................................................................................................... 4

Fed. R. Bankr. P. 9024 ................................................................................................................. 4

Fed. R. Civ. P. 60 ......................................................................................................................... 4

Fed. R. Civ. P. Rule 4(m) ............................................................................................................ 4

3

M&Q Plastic Products, L.P., purported defendant in the above-captioned adversary proceeding ("Defendant" or "M&Q")[1], by and through its counsel, Fox Rothschild LLP, in further support of its motion for an order (i) dismissing with prejudice the plaintiff's complaint commencing this action, (ii) vacating certain prior orders pursuant to Fed. R. Civ. P. 60, made applicable by Fed. R. Bankr. P. 9024, and (iii) in the alternative, requiring a more definitive statement of the claims asserted in the complaint (the "Motion"), and as and for its reply (the "Reply") to the Reorganized Debtors' omnibus response (the "Omnibus Response") to the Motion and others like it filed by similarly situated avoidance action defendants in other adversary proceedings in this bankruptcy case (collectively, the "Dismissal Motions"), respectfully submits, as follows:

**PRELIMINARY STATEMENT**

Plaintiffs[2] filed an inadequately plead preference complaint in this matter under seal in late 2007 (the "Complaint"), just a few days before the statute of limitations was to run, and kept it secret from M&Q, for 2 ½ more years while it attempted to reorganize, all the while taking advantage of favorable terms negotiated in August 2005, just a few short months before the bankruptcy filing in October 2005.  Plaintiffs were able to do this, notwithstanding the two (2) year statute of limitations applicable under Bankruptcy Code Section 546(a) and the 120 day service of process requirements of Fed. R. Civ. P. Rule 4(m), made applicable by Bankruptcy

---

[1] The Complaint names M&Q Plastic Products and M and Q Plastic Products as defendants.  The supplier of goods to Delphi was M&Q Plastic Products, L.P.  The named defendants as well as M&Q reserve all rights and defenses arising out the Reorganized Debtors' failure to name the proper party defendant in this preference case.  In addition, as discussed in the Motion, Defendant M&Q Plastic Products, L.P. sold its operating assets to a third party and ceased doing business in early 2008.  The remaining assets of the Defendant were placed into a liquidating trust effective September 2009, and the company and its sole partners have each filed certificates of termination in the jurisdictions of their respective formations.
[2] The terms "Plaintiffs", "Debtors", "Reorganized Debtors" and "Delphi" are used interchangeably through out this Reply and in all instances mean that same party which is the Reorganized Debtors and the Debtors before them in this Bankruptcy Case.

4

AC1 922546v1 07/02/10

Rule 7004(a), through a series of motions and arguments wherein it persuaded the Court of its contrived need for the relief that was then provided in a series of Orders which have been identified in the Motion and in the Omnibus Response.[3]   Unfortunately for M&Q and the other defendant parties who have filed Dismissal Motions which are the subject of the proceeding now before the Court (collectively, sometimes herein called the "Defendants"), the Defendants did not receive the kind of notice of the ongoing proceedings that was not only required by basic principals of constitutional due process, but also that which was specifically required by the applicable Case Management Order previously entered in the Bankruptcy Case to which the Plaintiff was bound.

In the Omnibus Response, the Reorganized Debtors (as the Plaintiffs in all of these cases) have attempted to justify what has taken place over these past 5 years. They argue disingenuously that all of what they did had the blessing of the Court and is therefore acceptable. They somehow find the audacity to maintain that notice was given, no one objected and the harm to others is inconsequential compared to the burdens that openness and candor would have placed upon the Debtors' attempts to reorganize.  They even mischaracterize the facts that are pertinent, in a continuing effort to keep the Court and other litigants constantly off balance in their "win at all cost" strategy.

Unfortunately for the Reorganized Debtors, the Defendants have taken the time now to learn much more about this case than anyone cares to know.  In preparing to file the Dismissal Motions and related submissions, Defendants have now been able to set out for the Court a true, accurate and fully transparent picture of what the Reorganized Debtors and the Debtors before them have been up to in the Bankruptcy Case.  The record is now clear that (1) there never was

---

[3] All capitalized terms uses herein without definition shall have the meanings assigned to them in the Motion, unless the context clearly indicates to the contrary.

5

any justification for the entry of the Preservation of Estate Claims Order which allowed the Complaints to be filed under seal, (2) the rationale behind the entry of the Extension Orders was inappropriate in that it permitted the Plaintiffs to make no effort at all to serve Defendants who had been sued, (3) the Modified Plan should never have been confirmed without the provision to all Defendants of real notice designed to inform them of the intention of the Debtors to attempt to prosecute lawsuits which had been previously abandoned under the Plan as originally confirmed, (4) in any event, any rationale for secrecy, no matter how concocted and spurious, ceased to exist no later than April 2008 (7 months after the Complaints were filed under seal), when it became clear that the Original Plan would not be funded and would have to be modified as it was over a year later, and (5) the Reorganized Debtors were able to accomplish all of this, primarily because they deprived the Court of any opportunity to hear a contrary view from the very parties who had a particularized interest in the outcome of the proceedings.

Given all that has transpired and the new awareness that has been brought to light by the opening of the process and the transparency that has evolved through these proceedings, there can be no question that the appropriate remedy at this time is for the Court to dismiss, with prejudice, the Complaints filed in this and the other Avoidance Actions against the Defendants.

## REBUTTAL ARGUMENTS

### A.   Joinder with Other Reply Submissions

Detailed reply submissions have been or will be filed in this matter by (i) the Honigman Miller firm on behalf of Affinia Group Holdings, Inc. *et al.* (D.I. 20304)[4] (the "Affinia Reply"), (ii) the Cleary Gottlieb firm on behalf of the HP Enterprises and Affiliates (D.I. 20331) (the "HP Reply"), (iii) the Barnes & Thornburg firm on behalf of Johnson Controls, Inc. et al. (D.I. 20298) (the "JCI Reply") and (iv) the Morgan Lewis firm on behalf of Wagner-Smith Company (D.I.

---

[4] All references are to the Docket of the Bankruptcy Case, unless otherwise noted.

6

20306) ( the "Wagner-Smith Reply" and together with the Affinia Reply, the HP Reply and the

JCI Reply, herein called the "Primary Reply Submissions").   In addition to the Primary Reply

Submissions, other Defendants will also file Replies to the Omnibus Response (collectively,

together with the Primary Reply Submissions, herein called the "Defendant Reply

Submissions").  M&Q joins in and hereby incorporates by this reference all of the arguments and

other points made in the Primary Reply Submissions and the other Defendant Reply

Submissions.

> **B.     The Court Should Discount the Reorganized Debtors**
> **Statement Of Facts and Acknowledge that Proper Notice**
> **was Never given to Defendants who had a Particularized Interest**
> **in the Outcome of Proceedings Affecting Preference Claims**

The Statement of Facts in the Omnibus Response of the Reorganized Debtors, ¶¶ 12-41,

contains many inaccuracies and statements intending to mislead.  The Reorganized Debtors try to

make it sound like the Debtors have actually reorganized, and that the prosecution of these

lawsuits is critical to the ability of the enterprise to succeed.  Nothing could be further from the

truth.  The fact is that the enterprise that was pre filing Delphi was sold to third parties, and that

what is happening now with the preference actions is just simply a "money grab" to pay the

professionals and priority creditors whose expectations for recovery were dashed when the

Debtors found themselves unable to effectuate the Plan as originally confirmed in January 2008.

Also significant is that in the Omnibus Reply, the Reorganized Debtors fail to talk about

the Case Management Order that the court entered in the Bankruptcy Case.   The Case

Management Order both recognizes the need for, and requires the giving of, special notice by

mail to any party who had a *particularized interest* in the subject matter of a filing by the

Debtors.   In connection with the proceedings before the Bankruptcy Court relating to the

Preservation of Estate Claims Motion, the Extension Motions, and the Plan Modifications, the

7

Debtors absolutely failed to comply with the notice requirement of the Case Management Order. Yet, in FN 2 on page 14 of the Omnibus Reply, the Reorganized Debtors boldly claim that they did comply. How can they say such a thing when it is patently untrue? As set forth in M&Q's Dismissal Motion, and reinforced by the Declaration of Joseph Mallozzi which is being filed with and by this reference made a part of this Rely as Exhibit "A" (the "Mallozzi Declaration"), M&Q never received notice by mail of any of what was happening in connection with the Debtors' Avoidance Actions, and certainly was never notified about the fact that the various Preservation of Claims and Extension Motions and the Plan Modifications would result in M&Q being sued for return of payments made as a result of alleged preferences. In fact, M&Q actually made numerous attempts after the filing of bankruptcy by Delphi to obtain clarification and information about payments it received in the lead up to bankruptcy, only to be continually stymied by lack of response or refusal by Delphi personnel to provide any information at all on the subject. The failure to bring this entire situation to the attention of M&Q and the other Defendants in a way that was designed to inform is what makes the present actions of the Reorganized Debtors in pursuing preference claims so abhorrent, and this alone should be sufficient justification for dismissal of the Complaints, with prejudice.

C.    **The Lack of Transparency Benefited only the Debtors and Served to Severely Burden the Defendants Many of Whom, such as M&Q, are now Prejudiced by the Resulting Delay**

Argument I of the Reorganized Debtors, stated at ¶¶ 42-52 of the Omnibus Response, is that the Court was justified in entering the Preservation Order and the subsequent Extension Orders, because everyone benefitted. However, the position is disingenuous, because the only real beneficiary of the secrecy was the Debtor. No one disputes that there was a benefit in not having to litigate when there was a chance for a 100% plan. But that benefit could have been

AC1 922546v1 07/02/10

achieved with full transparency by the simple issuance of a stay of litigation pending the outcome of the complicated reorganization proceedings. At least then, both supplier and customer would have been on equal footing in their commercial dealings and Defendants, like M&Q, could have made their own decisions about whether and to what extent to commit resources to the preparation for litigation that might or might not someday move forward. The truth is that the Debtors wanted an advantage in their commercial dealings with suppliers, especially suppliers who might get sued in a "free fall" bankruptcy, so they elected instead to remove the transparency from the bankruptcy process and they did it under the guise of the necessity to protect commercial information. It may have sounded good at the time, especially when the very parties whose rights were effected were not given the proper notice of what was going on and were afforded no informed opportunity to convey contrary arguments to the Court.[5] No matter how the Reorganized Debtors try to spin this now, there was no valid reason in law for the Complaints to be filed in secret, the Debtors acted in bad faith in asking the Court to sanction the scheme, and the Reorganized Debtors should not now be permitted to benefit.

For a much more detailed discussion of the deficiencies in the process promoted by the Debtors, including analysis of Bankruptcy Code section 107(b), concepts of substantive and procedural due process and applicable case authority, reference is made to the Section II of the Primary Reply Submissions.

In any event, the delay has placed M&Q in a difficult if not impossible position, because the business that was M&Q no longer exits. As set forth in detail in the Motion, and confirmed

---

[5] If it is true that the Official Committee of Unsecured Creditors did not oppose the any of the Debtors motions to file under seal and delay serving Avoidance Action Complaints, that should be of no moment in these proceedings. It is common knowledge that the interest of a committee is generally aligned with that of the debtor and not with the transferee on the issue of preference litigation, especially where, as is apparently the case here, the preference recoveries are required to fund administrative expenses of the chapter 11 case and the post sale and confirmation wind-down.

AC1 922546v1 07/02/10

by the Mallozzi Declaration, M&Q is now nothing more than a shell existing only to the extent

of limited assets in a liquidating trust set up after the assets and business that supplied the

Debtors was sold in March of 2008.  At the time of its sale, M&Q was not aware of the

Complaint that had been filed under seal, and made no provision to defend this lawsuit.  Now,

over two (2) years later, the former CFO and other key employees who handled the Delphi

account are no longer with the company, and many relevant records are in the possession and

control of a third party who has no interest in the outcome of this case and little or no incentive

to assist M&Q in its defense.

To argue or even suggest, as have the Reorganized Debtors in defense of their actions,

that M&Q and other Defendants should have known or suspected that it would be sued for

preference liability is ludicrous.  It may be intuitively difficult for the Reorganized Debtors to

understand, but most people outside of the bankruptcy and restructuring realm are not aware that

payments made before bankruptcy are subject to avoidance under preference law.  In this case,

M&Q had sold its general unsecured claim and abandoned its reclamation claim before August

of 2007 when the Debtor sought leave to file avoidance actions under seal.  Aside from its

ongoing post-petition supply relationship which had continued in the ordinary course, M&Q had

no reason to concern itself with the Bankruptcy Case of Delphi and, as the record has shown,

was not given any reason to be concerned about preference claims by the Debtors.  In fact, also

as reflected by the record, public pronouncements at the time were that pre-petition unsecured

creditors would receive a 100% dividend, which as a matter of law means there would be zero

preference exposure.

AC1 922546v1 07/02/10

Under these circumstances, the Debtors brought all of this upon themselves, and they should now have to live with the consequences, which rightfully should be dismissal with prejudice.

### D.    Constitutionally Protect Rights of the Defendants have been Violated by the Judicial Action Initiated by the Debtors

Argument II of the Reorganized Debtors at ¶¶ 57-71 of the Omnibus Response, is that Defendants have failed to establish a substantive due process violation that requires a remedy. The position is that Defendants have not established a deprivation of life, liberty or property, and that even if the Defendants are able to identify a constitutionally protected right that is deprived, they had sufficient notice and failed to do anything about it.  Fortunately, the Reorganized Debtors themselves have confirmed the fallacy of this position by themselves indentifying the deprived right, as the right freely and without interference, to contract and engage in commerce. This right of the suppliers, like M&Q, who contracted with the Debtors is both constitutionally protected and was infringed upon by the Debtors who knowingly and with the added help of various Orders of the Court set up a scheme to gain advantage from unsuspecting suppliers who continued favorable trade terms without the knowledge of Complaints filed under seal seeking millions of dollars of preference recovery – in the case of M&Q, the amount at issue is $6.6 million.

Article I, Section X of the Constitution of the United States (the "Constitution") provides that "no State shall . . . [pass any] … Law impairing the Obligation of Contracts."  While this clause does not apply to federal authority, the due process clause of the Constitution's Fifth Amendment forbids a flagrant impairment of contract by a federal governmental body. Armstrong v. Fairmont Community Hosp. Assoc., Inc., 659 F.Supp. 1524, 1533 (D. Minn. 1987) (federal hospital funding regulations requiring participants to participate in Medicare and

11

Medicaid were not unconstitutional where contracts were unambiguous and hospital was on notice when it acted to accept the funding).

Valid contracts are "property", whether the obligor is a private individual, a municipality, a state, or the United States. Lynch v. U.S., 292 U.S. 571, 579 (1934). The Fifth Amendment prohibits the deprivation of property without just compensation. Id. The right to be free from depravation of property is as applicable to action by a court as it is to action by legislative and executive branches of government. In re New York, N. H. & H. R. Co., 289 F. Supp. 451, 454 (D.Conn. 1968). In In re New York, N.H. & H.R. Co, creditors protested a debtor's reorganization plan in the Southern District of New York on the grounds that the continued deficit operation of the bankrupt corporation was a taking of the creditor's property without due process of law. In order to avoid arbitrarily restricting the creditors' rights, the court held that the creditors were entitled to a constitutional minimum of value for property that the debtor sold to a purchaser. Id.

In Weitzman v. Stein, 897 F.2d 653 (2d Cir. 1990), the Second Circuit reiterated that a action by a court may violate a party's due process rights. In Weitzman, the district court issued a preservation order requiring a party, during the pendency of the litigation, to hold and retain his assets. Id. at 657. The Second Circuit said such an order implicates due process, because the preservation order was really a preliminary injunction, and Rule 65 of the Federal Rules of Civil Procedure forbids such an injunction without notice to the adverse party. Id. The court vacated the district court's preservation order as a violation of Fifth Amendment due process. Id. at 658.

While the freedom of contract is not absolute and is subject to certain restraints, the restraints must not be arbitrary or unreasonable. Freedom is the rule and restraint the exception. The legislative authority to abridge can be justified only by exceptional circumstances. Charles

12

Wolff Packing Co. v. Court of Industrial Relations of State of Kansas, 262 U.S. 522, 534 (1923)

(citing Adkins v. Children's Hospital, 261 U.S. 525 (1923)).

The federal government (and this includes the judicial branch) may impair contracts under the bankruptcy power. However, the bankruptcy power is still subject to the Fifth Amendment. Brockett v. Winkle Terra Cotta Co., 81 F.2d 949, 952-53 (8th Cir. 1936). Arbitrary action of government that deprives a party of a contract without procedural due process or without any legitimate governmental objective violates the Fifth Amendment. County of Sacramento v. Lewis, 523 U.S. 833, 845-46 (1998) (citing Wolff v. McDonnell, 418 U.S. 539, 558 (1974)).

The right to contract is an important economic right. In this case, the Debtors deprived the Defendants of that right by doing business and in some instances negotiating and renegotiating trade terms when a very important fact was known to the Debtors, but not to anyone else. They admit in their filings for the Preservation Order and in the Omnibus Response that there was commercial information they wanted to protect under seal from widespread disclosure. They told the Court then and repeat to all now, that they wanted to protect the commercial advantages they had gained with certain suppliers who were also Defendants. Thus, instead of making full disclosure to the affected parties, the Debtors solicited the Court's assistance in creating a way to act in secret. It is one thing to not fully disclose information that might to pertinent to a commercial dealings. It is another thing altogether to affirmatively act to prevent the dissemination of the information that might be beneficial to the other contract party and detrimental to the commercial interests of the Debtor. Certainly, the Debtors can not be suggesting that either (i) this is not a constitutionally protected right, or (ii) the Preservation Order and the Extension Orders did not deprive Defendants of this right. Coupled with the lack

13

of adequate notice and opportunity to be heard, all of which is discussed elsewhere in this Reply and in the Primary Reply Submissions, what we have is a violation of due process guaranteed by the Constitution and which, in this case, can only be remedied by a dismissal of the Complaints, with prejudice.

### E.   Widespread Notice is not Synonymous with Adequate Notice

Argument III of the Reorganized Debtors set out in ¶¶ 72-74 of the Omnibus Response can be synthesized as, "every thing is fine, because the Court allowed them to file under seal" which they did after giving "widespread notice." A thorough discussion of the notice aspects of Defendants' position as it relates to the due process issues raised by the actions of the Debtors in the Bankruptcy case can be found in the Affinia Reply, Argument C, pp. 9 *et seq* and in the HP Reply, Argument C, pp. 9 *et seq*. M&Q only wishes to emphasize that just because the notice might have been widespread – in that it was given in many varied ways, does not mean it was adequate, if the very people it was intended to effect were not directly, clearly and transparently made aware of the fact that their rights were being effected. Here, the Debtors may have given notice to many parties by e-mail and electronic filings, but the only thing that really matters is that they failed to follow their own Case Management Order and the Court's directive that they mail notice to those parties ***with a particularized interest in the filings***. Having failed in this regard, M&Q and the many other Defendants involved in these cases were denied basic due process which would require that they receive notice intending to inform them of what was being requested so an effected party could decide how best to proceed and if desired express contrary views for the Court to consider in structuring appropriate relief. Accordingly, the Complaint should be dismissed with prejudice.

### F.   Section 7.24 and Exhibit 7.24 of the Plan as Originally Confirmed can not be Ignored in Assessment of the Res Judicata and Estoppel Arguments Advanced by Defendants

AC1 922546v1 07/02/10

Argument IV of the Reorganized Debtors, set forth in ¶¶ 75-81 of the Omnibus Response, is an attack on the *res judicata* argument of the Defendants which maintains that the initial confirmation of the Plan in January 2008, without preservation of these Avoidance Actions, bars the attempt to move forward now. The soundness of Defendants' arguments on this point is addressed in the JIG Reply, Argument I, pp. 2-7, and in the HP Reply, Argument III(A), pp. 20 *et seq.* The only point to be made here by M&Q is that the Court should not ignore the effect of the confirmation of the Plan in January 2008 containing Sections 7.24 and 7.25, and the corresponding Exhibit 7.24, the effect of which is to preserve only four (4) specifically delineated Avoidance Actions, none of which are the one filed against M&Q, and abandon all of the rest. The fact that the Plan did not become effective and had to be modified is and should be of no consequence, per the citations contained in the JIG Reply, *supra*, p. 4. Moreover, for a plan modification that seeks to resurrect previously abandoned Avoidance Actions, as was proposed by and is now postulated by the Debtors, there can be no question that under the principals of due process and certainly under the Court's Case Management there must at a minimum be notice to the parties who had ***a particularized interest*** in the outcome. M&Q received no such notice, and the same is likely true as to many other of the Defendants, as to which these actions should now be dismissed with prejudice.

## CONCLUSION

For the reasons set forth in this Reply, in the Motion, in the Primary Reply Submissions and in all of the other Defendant Reply Submissions, Defendant, M&Q, respectfully requests that the Complaint filed against M&Q in this matter be dismissed with prejudice, that the Extension Orders be vacated, and that the Court grant to Defendant, M&Q, such other and further relief as is proper and just.

AC1 922546v1 07/02/10

Dated:  New York, New York
        July 2, 2010

                                    FOX ROTHSCHILD LLP


                            By:  */s/ Michael Viscount*
                                 Michael J. Viscount (Admitted *pro hac vice*)
                                 Brian R. Isen (*Pro hac vice pending*)
                                 Midtown Building, Suite 400
                                 1301 Atlantic Avenue
                                 Atlantic City, NJ  08401
                                 (609) 348-4515


                                        -and-

                                 Fred Stevens
                                 100 Park Avenue, 15th Floor
                                 New York, New York 10017
                                 (212) 878-7900

                                 *Attorneys for Defendant M&Q Plastic Products, LP*

AC1 922546v1 07/02/10