BRYAN CAVE LLP  
Michelle K. McMahon (MM-8130)  
1290 Avenue of the Americas  
New York, NY 10104  
Telephone: (212) 541-2000  
Facsimile: (212) 541-1493  

Hearing Date: July 22, 2010

BRYAN CAVE LLP  
Lloyd A. Palans (admitted pro hac vice)  
Christopher J. Lawhorn (admitted pro hac vice)  
200 North Broadway, Suite 3600  
St. Louis, MO 63102  
Telephone: (314) 259-2000  
Facsimile: (314) 259-2020  
lapalans@bryancave.com  
cjlawhorn@bryancave.com  

*Attorneys for Spartech Polycom*

UNITED STATES BANKRUPTCY COURT  
SOUTHERN DISTRICT OF NEW YORK  
-------------------------------------------------------x  

| | |
|---|---|
| In re: | Chapter 11: |
| DELPHI CORPORATION, *et al.*, | Case No. 05-44481 (RDD) |
| | Jointly Administered |

-------------------------------------------------------x  

| | |
|---|---|
| DELPHI CORPORATION | |
| | Adv. Pro. No. 07-02639 (RDD) |
| Plaintiff, | |
| -against- | |
| SPARTECH POLYCOM | |
| Defendants. | |

-------------------------------------------------------x  

**DEFENDANT SPARTECH POLYCOM'S REPLY MEMORANDUM  
OF LAW IN SUPPORT OF ITS MOTION TO DISMISS**

Spartech Polycom ("Spartech"), by its undersigned attorneys, hereby replies to the Reorganized Debtors' Omnibus Response to Motions Seeking, Among Other Forms of Relief, Orders to Vacate Certain Procedural Orders Previously Entered by This Court and to Dismiss the Avoidance Actions Against the Moving Defendants (the "Omnibus Response").[1]

**INTRODUCTION**

1.      Transparency is the bedrock of American jurisprudence.  Nowhere is this more important than Chapter 11, which is founded upon fiduciary obligations owed to an estate administered for the beneficial interests of creditors and all parties-in-interest.  All Bankruptcy Code[2] provisions and supporting rules affecting Chapter 11 are focused upon this common element:  promoting openness, honesty, and disclosure of information by debtors who avail themselves of the benefits of the Chapter 11 process.  The "fresh start" has long been reserved for the "honest but unfortunate debtor."  *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365 (2007).  The bankruptcy system depends upon both complete and timely disclosure.  Full disclosure includes claims against third parties.  Without full and accurate disclosure, creditors and interested parties are deprived of legal rights and an ability to fairly evaluate their relationships with the debtor.

2.      In this case, Delphi erred.  But, its "error" was by design.  Delphi designed a process to deny Spartech and other preference defendants the most basic notice, due process and disclosure.  More than 2½ years after a statute of limitations expired, Spartech was ambushed by a secret litigation procedure to file avoidance actions under seal and withhold summons and

---

[1] Given the substantial number of motions to dismiss being heard by this Court, this Reply focuses on arguments particularly applicable to Spartech.  In order not to burden the Court with repetitive arguments, Spartech joins in the reply briefs submitted by other defendants, and specifically, the replies filed by Affinia Group Holdings, Inc., et al., Wagner-Smith Company, EDS, et al., Johnson Controls, et al., and Olin Corp.

[2] Capitalized terms not defined herein shall have the meanings set forth in Spartech's Motion to Dismiss, etc. (the "Motion") [Docket No. 20114].

3437389                                1

service of process unilaterally with a series of *ex parte* motions that Delphi failed to serve on parties having a need to know. Justice Louis Brandeis coined a marvelous phrase: "Sunlight is the best disinfectant," in praise of the benefits of transparency and candor. Neither has been present here.

3. Delphi's justification for its conduct only demonstrates the lack of candor and flaws of its actions. Delphi confirms that it designed complaint-sealing procedures to gain tactical commercial advantages over defendants by negotiating favorable terms with supplier-adversaries, preventing disruption to relationships with supplier-adversaries, and preventing its supplier-adversaries from securing and consulting with counsel (or as Delphi spins it: "spared [its adversaries] the burdens and expense of retaining counsel"). Omnibus Resp. ¶ 2.

4. Section 107 of the Bankruptcy Code (*i.e.*, Delphi's authority for sealing the preference complaints), was not meant to arm a debtor with a stealth weapon reserved for future combat with suppliers or contract parties. Like the Code itself, the statute embraces openness and disclosure. *See* 11 U.S.C. § 107(a). Section 107 provides a shield to protect an "honest" debtor (or other parties) from detrimental disclosure of confidential or proprietary commercial information that third parties might use to the debtor's disadvantage. Section 107 is not a sword permitting a debtor to hide avoidance actions that basic due process requires be disclosed to the targets of those actions. As the architect/engineer of this flawed strategy, Delphi undertook the risk that its dormant Complaint, when exposed to light of day, would be dismissed and its claims time-barred!

5. The prejudice suffered by Spartech highlights the inherent impropriety of Delphi's strategy. Not realizing that the Complaint had been filed under seal against it, Spartech took no special actions to organize, hold, or preserve records with respect to Delphi or preserve

information from Spartech employees knowledgeable about the Delphi business relationship.  As a result, Spartech suffered great prejudice, and has been harmed in its ability to defend the Complaint.

6.  Delphi had options prior to the expiration of the limitations period:  sue Spartech; don't sue Spartech; obtain a tolling agreement with Spartech; or don't obtain a tolling agreement.  Regardless of the alternative chosen, Delphi's choice should have been disclosed.  Instead, Delphi remained silent, while preserving the benefits of its commercial relationships with Spartech.  Transparency, openness, and disclosure – that are the bedrock of Chapter 11 – were ignored while Delphi benefitted.

7.  In the course of its 50-plus page Omnibus Response, Delphi makes numerous attempts to justify this ill-gotten benefit.  Spartech's Motion squarely confronts many of these arguments and explains why the Extension Orders must be vacated and the Complaint dismissed, so Spartech will not repeat those arguments.  However, Spartech is compelled to address inaccuracies in several arguments raised by Delphi in its Omnibus Response:

- *First*, Delphi cannot avoid the fact that it violated Spartech's Due Process rights by somehow asserting that Spartech did not have a property interest to be protected by due process;

- *Second*, Delphi cannot shift the burden of providing notice to Spartech;

- *Third*, Delphi cannot provide any arguments that support multiple, sealed extensions of an expired statute of limitations at the expense of Spartech; and

- *Finally*, Delphi cannot defeat each of Spartech's additional legal arguments justifying dismissal – Laches, *Res Judicata*, and Judicial Estoppel – based on the cases Delphi cites.

The inescapable conclusion is that Delphi's conduct was improper, the Extension Orders should be vacated, and the Complaint should be dismissed.

# ARGUMENT

## I. SPARTECH HAS A PROPERTY RIGHT TO BE FREE FROM SECRET, TIME-BARRED CLAIMS, AND DELPHI CANNOT HIDE THE FACT THAT IT VIOLATED DUE PROCESS BY ARGUING TO THE CONTRARY.

8. Spartech's Motion explains that Delphi violated Spartech's rights to receive notice (due process) by hiding the Complaint and secretly attempting to extend the statute of limitations. Delphi now argues that Spartech could not have been denied due process because they have not been deprived of a "property right" subject to protection by due process. Delphi is wrong.

9. The due process clause proscribes the "deprivation of life, liberty or property by adjudication" without prior "notice and opportunity for hearing appropriate to the nature of the case." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313, (1950). A legal cause of action constitutes property protected by the Due Process Clause. *See, e.g.*, *Mullane*, 339 U.S. at 312-13 (right "to have the trustee answer for negligent or illegal impairments of their interests" was protected property interest).[3] Indeed, Courts unequivocally recognize that *a protected right exists in being free from litigation once the statute of limitations expires*. *See Crum v. Vincent,* 493 F.3d 988, 997 (8th Cir. 2007) ("An individual has a vested right to be free from suit or sanction once the statute of limitations for that violation has expired"); *Thorogood v. Sears, Roebuck & Co.,* No. 06 c 1999, 2009 U.S. Dist. LEXIS 18541, *7 (N.D. Ill. Mar. 11, 2009) (recognizing that a defendant has a vested right to be free from suit once a statute of limitations or a statute of repose period expires); *Rodriguez-Suris v. Montesinos*, 935 F. Supp. 71

---

[3] *See also Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428 (1982) (right of the complainant to use the state fair employment practices act's adjudicatory procedures was a species of property); *Martinez v. California*, 444 U.S. 277, 281-282 (1980)("a state tort claim is a "species of 'property' protected by the Due Process Clause.")

3437389                                    4

(D.P.R. 1996) (stating that the right to be free from a claim upon which the statute of limitations has expired is as important as an aggrieved party's right to file an action), *vacated on other grounds*, 123 F.3d 10 (1st Cir. 1997); *Doe v. Roman Catholic Diocese*, 862 S.W.2d 338, 340 (Mo. 1993) ("[O]nce the original statute of limitation expires and bars the plaintiff's action, the defendant has acquired a vested right to be free from suit").  Delphi does not mention or address any of these cases.

10.    Moreover, the two-year statute of limitations in Section 546 is a vested, substantive right.  *See, e.g., Kilmer v. Flocar*, 212 F.R.D. 66 (N.D.N.Y. 2002) (because statutes of limitations are substantive in nature, state limitations laws are applied in federal diversity cases).  Section 546 is a legislative mandate that within two years after entry of the order for relief, the defendant has a right to be free from claims.  The use of procedural rules to obtain a result not contemplated by the accompanying substantive law is simply not permitted.  *See* 28 U.S.C. § 2075 (rules prescribed by the United States Supreme Court "shall not abridge, enlarge, or modify any substantive right"); *see also Morse v. Perrotta (In re Perrotta)*, 406 B.R. 1, 8 (Bankr. D. N.H. 2009) ("Therefore, to the extent that the Bankruptcy Rules and the Bankruptcy Code are inconsistent, the statute controls.").  Again, Delphi does not cite or address these cases.

## II.    DELPHI CANNOT SHIFT ITS BURDEN TO PROVIDE NOTICE TO SPARTECH.

11.    Perhaps recognizing the error of its flawed design, Delphi now advances an argument that its failure to give notice to Spartech and sealing lawsuits is okay because Spartech could have discovered the $8.6 million Complaint merely by making an affirmative inquiry to Delphi. Omnibus Resp. ¶ 71.  Delphi explains that it retained sole discretion to advise any of its adversaries that a secret suit was pending against them, and that it could have told adversaries had they only asked.  *Id.*  Delphi claims it used its sole discretion to let unspecified adversaries

3437389                                       5

know they had been sued, but only if the adversaries had the foresight to make inquiry of Delphi. *Id*. However, Delphi does not allege that it provided notice to Spartech or any notice that they could inquire whether they had been sued.

12.     Delphi cites no case law – and none exists – justifying its unique "notice-shifting" scheme. Delphi's novel yet shockingly bold, "notice-shifting" procedure can best be described as "if you ask – I may tell." At the risk of repetition, "sunlight is the best disinfectant," yet Spartech was left in the dark. The Extension Orders should be vacated and the Complaint dismissed.

### III.   DELPHI FAILS TO PROVIDE ANY ARGUMENTS THAT SUPPORT MULTIPLE SEALED EXTENSIONS OF AN EXPIRED STATUTE OF LIMITATIONS AT THE EXPENSE OF SPARTECH.

13.     Spartech's Motion explained that Delphi improperly sought and obtained relief to seal the Complaint as well as unilateral extensions of the deadlines to serve the Complaint. Spartech Motion to Dismiss ¶¶ 64-82 [Docket No. 20114]. Spartech's cited cases demonstrate that sealing a Complaint and extending the time to serve a Complaint require circumstances outside of the ordinary (*i.e.,* commercial or other circumstances requiring protection of the specific information and good cause, respectively). Delphi does not challenge this authority.

14.     Instead, Delphi incorrectly asserts that its actions were permissible because it needed special protection to preserve both the "status quo" and its "existing business relationships" and that this amounted to "commercial information" under the statute. First Extension Motion ¶ 33-34. Delphi claimed that the Debtors had "worked to preserve and repair their business relationship with many of the potential defendants during these cases and h[ad] negotiated or regained favorable credit terms with many suppliers and [were] continuing to do so." *Id*. ¶ 37; *see also* Omnibus Resp. ¶¶ 48-49, 56.

15.  Delphi asserts that providing notice may have upset these relationships with suppliers. *Id.* We agree. But these facts are hardly extraordinary. Every plaintiff risks certain consequences in filing any lawsuit. Delphi cites no case that affords a Chapter 11 debtor extra protections from the consequences of its intentional acts. A quick look at Delphi's cited cases demonstrates that disruption of business relationships between a plaintiff and defendant is not an extraordinary circumstance worth of special protection:

- *Bank of Cape Verde v. Bronson*, 167 F.R.D. 370, 371-72 (S.D.N.Y. 1996) (extending the service deadline because the parties were engaged in settlement discussions, the court held "there will be no further extensions" because it would be without good cause to do so);

- *Mejia v. Castle Hotel*, 164 F.R.D. 343 (S.D.N.Y. 1996) (granting one limited extension of nine days based on unique circumstances, including waiting for a right to sue letter from the EEOC);

- *In re Global Crossing, Ltd.*, 295 B.R. 720, 725 (Bankr. S.D.N.Y. 2003) (sealing was proper because there existed the threat that a competitor would interfere with or prevent the consummation of a beneficial commercial transaction);

- *In re Orion Pictures Corp.,* 21 F.3d 24, 28 (2d Cir. 1994) (defining commercial information as information that would provide an "unfair advantage to *competitors*.") (emphasis added); and

- *In re I.G. Servs. Ltd*, 244 B.R. 377, 388 n. 14 (Bankr. W.D. Tex. 2000), cited by Delphi, was reversed by *In re Blackwell*, 263 B.R. 505, 510 (W.D. Tex. 2000) (vacating the confidentiality order at issue and setting it aside in its entirety).

16.  Delphi's cited authorities simply do not support its conduct here. The Court should vacate the Extension Orders and dismiss the Complaint.[4]

---

[4] The lead case cited by Delphi, *Spano v. Boeing*, No. 3:06-cv-00743, 2008 U.S. Dist. LEXIS 54122 (S.D. Ill. July 16, 2008), to support its assertion that the proper remedy for improperly sealing is simply unsealing, is no support at all. In *Spano*, the court raised its objection *sua sponte* because the filings at issue failed to comply with Seventh Circuit rules. *Id.* None of the parties involved in *Spano* alleged they were prejudiced by the sealing as they are here. *Id.* As in *In re Itel Corp.,* 17 B.R. at 946, and *In re Blackwell*, 263 B.R. 505, the Court should vacate and set aside the sealing orders in their entirety.

3437389                                             7

IV. **DELPHI CANNOT DEFEAT EACH OF SPARTECH'S ADDITIONAL LEGAL ARGUMENTS JUSTIFYING DISMISSAL – LACHES, *RES JUDICATA*, AND JUDICIAL ESTOPPEL – BASED UPON DELPHI'S CITED AUTHORITIES.**

17. Spartech's Motion explained that in addition to a myriad of other reasons for dismissing the Complaint, the doctrines of Laches, *Res Judicata*, and Judicial Estoppel each serve as an independent basis to reach that same conclusion. Delphi's incorrect arguments to the contrary can each be quickly addressed.

### Laches

18. Delphi does not contest that the three elements of laches are satisfied here. *See Gucci v. Sinatra* (*In re Gucci*), 197 Fed. Appx. 58, 60 (2d Cir. 2006) (discussing elements of laches). Spartech had no knowledge that a Complaint had been filed against it (Element 1). Delphi had full opportunity to timely serve the Complaint or obtain tolling agreements (Element 2). Spartech was prejudiced by the delay (Element 3).

19. Instead, Delphi argues that this Court should delay resolution of this issue until summary judgment. Delphi is wrong. *See, e.g., Guenther v. Sedco, Inc.*, No. 93 Civ. 4143, 1998 U.S. Dist. LEXIS 19901, at *9-13 (S.D.N.Y. Dec. 21, 1998) (granting motion to dismiss on basis of laches even where complaint was filed within the statute of limitations); *Solow Bldg. Co., LLC v. Nine West Group, Inc.,* No. 00 Civ. 7685, 2001 U.S. Dist. LEXIS 8848, at *10-17 (S.D.N.Y. June 28, 2001) (granting motion to dismiss on basis of laches, and noting that even had the statute of limitations not run, laches may be applicable); *Lennon v. Seaman,* 63 F. Supp. 2d 428, 439 (S.D.N.Y. 1999). Even Delphi's own cited case recognizes that the laches defense may be considered on a motion to dismiss when the relevant facts are clear from the face of the complaint – as here. *John Wiley & Sons, Inc. v. Daniel,* No. 06 Civ. 13373, 2007 U.S. Dist. LEXIS 33412, *5, n2 (S.D.N.Y. April 30, 2007).

20.     Delphi next argues that laches is inappropriate where a party filed within the statute of limitations, but once again, Delphi fails to alert the Court to contrary authority. *See, e.g., DeSilvio v. Prudential Lines, Inc,* 701 F.2d 13, 15 (2d Cir. 1983); *Guenther v. Sedco,* No. 93 Civ. 4143, 1998 U.S. Dist. LEXIS 19901, at *9-13 (granting motion to dismiss on basis of laches). Accordingly, the doctrine of laches warrants dismissal of the Complaint.

### *Res Judicata*

21.     As Spartech's Motion discussed, this Court lacks post-confirmation jurisdiction because this avoidance action is not preserved under the Confirmed Plan. In response, Delphi argues that its Modified Plan resuscitated its preference actions. Delphi's argument fails for at least two reasons:

22.     First, "[a] confirmed chapter 11 plan 'operates to preclude the assertion of actions which arose out of the prepetition relationship of the parties, the facts of which were fully known by the debtor.'" *In re Kelley,* 199 B.R. 698, 704 (B.A.P. 9th Cir. 1996); *see also In re I. Appel Corp.*, 300 B.R. 564, 567-69 (Bankr. S.D.N.Y. 2003) ("[C]onfirmation of a bankruptcy plan . . . . must be accorded *res judicata* effect"). In its First Amended Joint Plan ("Confirmed Plan"), Delphi represented that it would ***not*** retain any preference actions under the Confirmed Plan. Upon confirmation of the Confirmed Plan, this avoidance action was no longer preserved. *Res judicata* bars Delphi from pursuing the avoidance action now.

23.     Second, even if one could read the Modified Plan and the accompanying Disclosure Statement as containing a blanket reservation, it is still insufficient. *See In re Kelley,* 199 B.R. at 704 ("Even a blanket reservation by the debtor reserving 'all causes of action which the debtor may choose to institute' has been held insufficient to prevent the application of *res judicata* to a specific action."). "The identification must not only be express, but also the claim

must be specific. A blanket reservation that seeks to reserve all causes of action reserves nothing. To hold otherwise would eviscerate the finality of a bankruptcy plan containing such a reservation, a result at odds with the very purpose of a confirmed bankruptcy plan." *D & K Properties Crystal Lake v. Mutual Life Ins. Co. of New York*, 112 F.3d 257, 261(7th Cir. 1997).

24. Notwithstanding Delphi's comments, Delphi's cases confirm the same. *See Goldin Assoc., LLC*, No. 00 Civ. 8688, 2004 U.S. Dist. LEXIS 9153, at *16-19 (S.D.N.Y. May 20, 2004) (Disclosure Statement contained a lengthy and detailed summary of claims); *In re I. Appel Corp.*, 300 B.R. at 567-69 (general reservation clause was accompanied by a disclosure statement that "named the specific targets of the potential claims"). Here, even the Disclosure Statement accompanying the Modified Plan is inadequate to enable the affected adversaries or any interested parties to make an informed judgment regarding the Modified Plan. Rather, Plan Exhibit 7.19 to the Modified Plan contained nothing more than a cryptic list of adversary numbers, with no indication of the names of potential defendants, the value of the alleged claims or the basis for the alleged claims. *See* Modified Plan Exhibit 7.19 [Docket No. 17557]. This cryptic list is neither adequate nor transparent. *Res judicata* dooms the Complaint.

### Judicial Estoppel

25. Delphi attempts to avoid judicial estoppel by "instructing" the parties that the Court "construed" its various orders to preserve all the pending preference claims. Omnibus Resp. ¶ 87. But Spartech was entitled to rely on both the express abandonment of preference claims in the Confirmed Plan and Delphi's representations to the Court that it would only pursue certain specified defendants – none of which included Spartech.

26. The cases cited by Delphi fail to save it from its prior representations. Delphi cites to *Loral Fairchild Corp. v. Matsushita Elec. Indus. Co.*, 840 F. Supp. 211, 219 (E.D.N.Y.

1994), for the proposition that judicial estoppel did not apply because "[t]here was no final adjudication of the ownership question." However, in that case there was no Confirmed Plan disavowing the preference claims, as here. *See In re Galerie Des Monnaies, Ltd.,* 62 B.R. 224, 226 (Bankr. S.D.N.Y. 1985) (affirming dismissal of appellant's action applying the doctrine of judicial estoppel to prevent appellant from pursuing alleged preferential transfers where appellant's claim was contrary to its prior position when it represented to its creditors as part of the confirmation process of its reorganization plan that it knew of no such transfers) (cited by Delphi at Omnibus Resp. ¶ 67). Judicial estoppel bars Delphi's claims and protects the integrity of the Courts from procedural schemes. That is this case. For this reason also, the Complaint should be dismissed.

## CONCLUSION

For the foregoing reasons and authorities cited herein, Spartech respectfully requests that the Court (i) vacate the Extension Orders, (ii) dismiss the Complaint against Spartech with prejudice, and (iii) grant such further and other relief as this Court may deem just and proper.

Dated:  July 2, 2010                                Respectfully submitted,

       /s/  Michelle K. McMahon
BRYAN CAVE LLP
Michelle K. McMahon (MM-8130)
1290 Avenue of the Americas
New York, NY 10104
Telephone:  (212) 541-2000
Facsimile:  (212) 541-1493

BRYAN CAVE LLP
Lloyd A. Palans (admitted pro hac vice)
Christopher J. Lawhorn (admitted pro hac vice)
200 North Broadway, Suite 3600
St. Louis, MO 63102
Telephone:  (314) 259-2000
Facsimile:  (314) 259-2020
lapalans@bryancave.com
cjlawhorn@bryancave.com

*Attorneys for Spartech Polycom*