**Hearing Date and Time:  July 22, 2010 at 10:00 a.m. (Eastern Time)**

James M. Sullivan
ARENT FOX, LLP
1675 Broadway
New York, NY 10019
(212) 484-3900

*Attorneys for The Timken Company, The
Timken Corporation, and MPB Corporation
d/b/a Timken Super Precision*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------- x

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| DELPHI CORPORATION, *et al.*, | : | Case No. 05-44481 (RDD) |
| | : | |
| Debtors. | : | (Jointly Administered) |

-------------------------------------------------- x

| | | |
|---|---|---|
| DELPHI CORPORATION, *et al.,* | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| -against- | : | Adv. Pro. No. 07-02688 (RDD) |
| | : | |
| TIMKEN, TIMKEN COMPANY, TIMKEN | : | |
| CORPORATION, TIMKEN FRANCE SAS, | : | |
| and TIMKEN SUPER PRECISION, | : | |
| | : | |
| Defendants. | : | |

-------------------------------------------------- x

**REPLY MEMORANDUM OF LAW IN SUPPORT OF THE MOTION BY THE
TIMKEN COMPANY, THE TIMKEN CORPORATION, AND MPB CORPORATION
D/B/A TIMKEN SUPER PRECISION SEEKING AN ORDER (I) PURSUANT TO FED.
R. CIV. P. 60 AND FED. R. BANKR. P. 9024, VACATING PRIOR ORDERS
ESTABLISHING PROCEDURES FOR CERTAIN ADVERSARY PROCEEDINGS,
INCLUDING THOSE COMMENCED BY THE DEBTORS UNDER 11 U.S.C. §§ 541,
544, 545, 547, 548, OR 549, AND EXTENDING THE TIME TO SERVE PROCESS FOR
SUCH ADVERSARY PROCEEDINGS, (II) PURSUANT TO FED. R. CIV. P. 12(b) AND
(c) AND FED. R. BANKR. P. 7012(b) and (c), DISMISSING THE ADVERSARY
PROCEEDING WITH PREJUDICE, (III) IN THE ALTERNATIVE, DISMISSING THE
ADVERSARY PROCEEDING ON GROUND OF JUDICIAL ESTOPPEL, OR (IV) IN
THE ALTERNATIVE, DISMISSING THE ADVERSARY PROCEEDING ON GROUND
OF LACHES**

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................1

ARGUMENT .......................................................................................................2

A.    The Debtors Violated The Due Process Clause And This Court's Case Management Orders By Failing To Provide Actual Notice To The Avoidance Defendants..........................................................................2

B.    The Avoidance Complaints Must Be Dismissed Because The Debtors Failed To Timely Unseal The Complaints .............................................6

C.    Even Where A Complaint Is Timely Unsealed, It Must Be Dismissed Where There Is Substantial Prejudice ................................................10

D.    In Any Event, The Procedures Order and Extension Orders Were Improper ......................................................................................13

    1.    The 120-day Time Period For Service Cannot Be Extended To Facilitate Non-Service ........................................................13

    2.    No Cause, Good or Otherwise, Existed For The Debtors' Request To Seal The Complaints And Delay Service In The First Place .............15

    3.    The Appropriate Remedy Is To Vacate The Procedures Order and Extension Orders And Dismiss.................................................19

    4.    The Debtors Will Not Be Prejudiced If The Orders Are Vacated.............19

E.    The Complaints Should Be Dismissed Under *Twombly* and *Iqbal* ......................20

F.    Judicial Estoppel Is Applicable To This Case .....................................23

G.    The Debtors' Claims Must Be Dismissed To The Extent They Are Based On Assumed Contracts ............................................................24

H.    The Debtors' Claims Must Be Dismissed To The Extent They Are Based On Prepayments...........................................................................25

I.    The Debtors' Claims Must Be Dismissed To The Extent The Claims Were Specifically Released..................................................................25

i

J.      The Debtors Irrevocably Abandoned Their Preference Claims For Less
        Than $250,000 Or Against Foreign Suppliers ...................................................... 26

K.      The Debtors' Claims Must Be Dismissed To The Extent They Are Against
        Improperly Named Defendants ........................................................................... 26

        L.      Timken Incorporates All Applicable Arguments Raised By Other
                Defendants In Their Dismissal Motions And Joins In The Reply
                Briefs of Other Defendants In Further Support Of The Motions .............. 26

CONCLUSION ................................................................................................................. 27

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re Allou Distributors, Inc.*,
   387 B.R. 365 (Bankr. E.D.N.Y. 2008) ................................................................21

*Angell v. Haveri (In re Careamerica, Inc.)*,
   409 B.R. 346 (Bankr. E.D.N.C. 2009) ................................................................20

*City of New York v. New York, N.H. & H.R. Co.*,
   344 U.S. 293 (1953) ............................................................................................6

*Coleman v. Greyhound Lines, Inc.*,
   100 F.R.D. 476 (N.D. Ill. 1984) ........................................................................14

*In re Eastman Kodak Company's Application*,
   2010 WL 2490982 (S.D.N.Y. June 15, 2010) .....................................................7

*Efaw v. Williams*,
   473 F.3d 1038 (9th Cir. 2007) .............................................................................8

*In re Epic Assocs. V*,
   54 B.R. 445 (Bankr. E.D. Va. 1985) ..................................................................17

*Feltman v. Keybank, N.A. (In re Levitt & Sons, LLC)*,
   No. 07-19845-BKC-RBR, 2010 Bankr. LEXIS 1284 (Bankr. S.D. Fla. Apr. 16, 2010) ........22

*Fimbres v. United States*,
   833 F.2d 138 (9th Cir. 1987) ........................................................................10, 14

*In re Food Mgmt. Group, LLC*,
   359 B.R. 543 (Bankr. S.D.N.Y. 2007) .................................................................7

*Galerie Des Monnaies of Geneva, Ltd. v. Deutsche Bank, A.G., N.Y. Branch*
   *(In re Galerie Des Monnaies of Geneva, Ltd.)*, 55 B.R. 253 (Bankr. S.D.N.Y. 1985),
   *aff'd*, 62 B.R. 224 (S.D.N.Y. 1986) ...................................................................24

*In re Gitto Global Corp.*,
   422 F.3d 1 (1st Cir. 2005) ....................................................................................7

*Hixon v. Highsmith*,
   147 F. Supp. 801 (E.D. Tenn. 1957) ..................................................................14

*In re Johns-Manville Corp.*,
  600 F.3d 135 (2d Cir. 2010) ............................................................................6

*Knorr v. Coughlin*,
  159 F.R.D. 5 (N.D.N.Y. 1994) ...................................................................13, 14

*Lane Hollow Coal Co. v. Dir., Office of Workers' Comp. Programs, U.S. Dep't of Labor*,
  137 F.3d 799 (4th Cir. 1998) ...........................................................................3

*In re McLaughlin*,
  415 B.R. 23 (Bankr. D.N.H. 2009), *rev'd in part on recons. on other grounds, 2009
  WL 4722236 (Oct. 23, 2009)* .........................................................................22

*Montalbano v. Easco Hand Tools, Inc.*,
  766 F.2d 737 (2d Cir. 1985) ............................................................................14

*Mullane v. Cent. Hanover Bank & Trust Co.*,
  339 U.S. 306 (1950) ..........................................................................................3

*In re Neal*,
  461 F.3d 1048 (8th Cir. 2006) .....................................................................7, 19

*In re NM Holdings Co., LLC*,
  407 B.R. 232 (Bankr. E.D. Mich. 2009)...........................................................22

*Official Comm. Of Unsecured Creditors of Hydrogen v. Blomen (In re Hydrogen, L.L.C.)*,
  __ B.R. __, No. 08-14139 (AJG), 2010 WL 1609536 (Bankr. S.D.N.Y. 2010) .............21, 22

*In re Orion Pictures Corp.*,
  21 F.3d 24 (2d Cir. 1994) .............................................................................7, 17

*Perkins v. United States*,
  No. 86-363, 1987 WL 19842 (N.D.N.Y. Nov. 13, 1987)...................................14

*In re Phar-Mor, Inc.*,
  191 B.R. 675 (N.D. Ohio 1995) .........................................................................7

*Redding v. Essex Crane Rental Corp. of Ala.*,
  752 F.2d 1077 (5th Cir. 1985) .........................................................................15

*Smith v. Pa. Glass Sand Corp.*,
  123 F.R.D. 648 (N.D. Fla. 1988)..................................................................10, 14

*In re Southold Dev. Corp.*,
  148 B.R. 726 (E.D.N.Y. 1992) ..........................................................................13

*Spano v. Boeing Co.*,
  06-00743, 2008 U.S. Dist. LEXIS 54122 (S.D. Ill. July 16, 2008).......................19

*Standard Chartered Bank Int'l (Ams.) Ltd. v. Calvo*,
    2010 WL 2490995 (S.D.N.Y. June 16, 2010) ........................................................................7

*In re Superior Toy Mfg. Co., Inc.*,
    78 F.3d 1169 (7th Cir. 1996) ...................................................................................24, 25

*In re Teligent, Inc.*,
    306 B.R. 752 (Bankr. S.D.N.Y. 2004) ..................................................................................25

*U.S. Brass & Copper Co. v. Caplan (In re Century Brass Prods., Inc.)*,
    22 F.3d 37 (2d Cir. 1994) .................................................................................17, 18

*U.S. Fire Ins. Co. v. Jesco Constr. Co.*,
    No. 03-2906, 2003 WL 21689654 (S.D.N.Y. July 16, 2003)..................................................14

*United States v. Deglomini*,
    111 F. Supp. 2d 198 (E.D.N.Y. 2000) .......................................................8, 9, 10, 19

*United States v. Gigante*,
    436 F. Supp. 2d 647 (S.D.N.Y. 2006) ......................................................8, 10, 19

*United States v. Heckler*,
    428 F. Supp. 269 (S.D.N.Y. 1976) ...................................................................................10

*United States v. Marion*,
    404 U.S. 307 (1971) .............................................................................................11

*United States v. Muse*,
    633 F.2d 1041 (2d Cir. 1980) ...................................................................................8

*United States v. Sherwood*,
    38 F.R.D. 14 (D. Conn. 1964) .............................................................................10

*United States v. Srulowitz*,
    819 F.2d 37 (2d Cir. 1987) ...................................................................................11

*United States v. Watson*,
    599 F.2d 1149 (2d Cir. 1979), *amended on reh'g by* 690 F.2d 15 (2d Cir. 1979),
    *modified en banc sub nom* ......................................................................8, 9, 11, 19

*Zapata v. City of New York*,
    502 F.3d 192 (2d Cir. 2007) ...................................................................................13, 15

**STATUTES**

11 U.S.C. § 107 ...................................................................................7, 10, 17

11 U.S.C. § 365 ...................................................................................25

11 U.S.C. § 546 ...................................................................................................................... 2

11 U.S.C. § 547 ................................................................................................................ 21, 24

11 U.S.C. § 550(a) ................................................................................................................ 22

## OTHER AUTHORITIES

Fed. R. Bankr. P. 7003 .......................................................................................................... 14

Fed. R. Civ. P. 3 .................................................................................................................... 14

Fed. R. Civ. P. 4(m) ........................................................................................................passim

Fed. R. Civ. P. 8(a) ............................................................................................................... 22

Fed. R. Civ. P. 11 .............................................................................................................. 12, 20

## INTRODUCTION

Defendants The Timken Company, The Timken Corporation, and MPB Corporation d/b/a

Timken Super Precision (collectively, "Timken" or the "Defendants"), by and through their

undersigned counsel, respectfully file this Reply Brief in support of their Motion to Dismiss.

Timken also incorporates by reference the reply briefs submitted by Affinia (07-02198), Hewlett

Packard (07-02262) and Wagner Smith (07-02581), and the reply briefs submitted by all the

other similarly situated preference defendants in the other adversary proceedings.

The preference complaints asserted by Delphi Corporation and certain of its debtor

affiliates (collectively, the "Debtors") should be dismissed in total for a host of reasons,

including that:

   A.   the Debtors violated the Due Process Clause and the Court's Case
        Management Order (requiring actual notice to "all parties with a
        particularized interest in the subject matter of the Filing"), and
        misrepresented that particularized notice was provided to these Defendants
        when, in fact, it never was;

   B.   the Debtors failed to timely unseal the complaints when their purported
        justification for sealing ceased to exist and, under long-established Second
        Circuit authority, the remedy is dismissal of their complaints, and, even if
        the complaints were timely unsealed (which they were not), the Second
        Circuit still requires that they be dismissed where, as here, the defendants
        suffered substantial actual prejudice during the time the complaints were
        sealed;

   C.   the Debtors admit that the entire purpose for the Procedures Order (as
        defined below) and the Extension Orders (as defined below) was to "defer
        serving process on defendants" and, as a matter of law, the Rule 4(m)
        service deadline may not be extended for the purpose of facilitating non-
        service;

   D.   the Debtors effectively concede that they have not complied with the
        pleading standard set forth in *Twombly* and *Iqbal* and have not set forth
        specific facts that support each element of their claim and, having failed to
        do so after all of these years, their complaints should be dismissed; and

1

E.      the Debtors are judicially stopped from prosecuting the preference action against Timken because they previously represented to the Court that they would only prosecute preference actions against three named defendants and their affiliates.

In addition, the preference complaint should be dismissed as against Timken to the extent (i) the claims are based on transfers made in connection with assumed contracts, (ii) the claims are based upon transfers that were prepayments, (iii) the claims were the subject of a specific release of liability, (iv) the Debtors abandoned the claims for less than $250,000 or against foreign suppliers, and (v) the claims are against an improperly named defendant.

## ARGUMENT

**A.      The Debtors Violated The Due Process Clause And This Court's Case Management Orders By Failing To Provide Actual Notice To The Avoidance Defendants**

In its motion, Timken argued that the combination of permitting the Debtors to file the avoidance complaints under seal – thereby concealing from Timken that it had been sued – while repeatedly extending the Debtors' time to serve process for well over two years – all without notice and an opportunity to object – violated Timken's procedural due process rights.   The effect of this deprivation is clear – the congressionally-mandated statute of limitations, codified at 11 U.S.C. § 546, was purportedly extended by well over two and a half years, without notice and an opportunity to be heard.

In response, the Debtors claim that Timken has not been deprived of an "identifiable liberty or property interest."   Indeed, it is the Debtors' position that, because Timken can defend against the claims now, nearly three years after the statute of limitations expired, the due process violations that led up to the issuance of the Procedures Order and the Extension of Avoidance Action Service Deadline Order dated March 28, 2008, the Postconfirmation Extension of Avoidance Action Service Deadline Order dated April 30, 2008, and the Supplemental

2

Postconfirmation Extension of Avoidance Action Service Deadline Order dated October 22, 2009 (collectively the "Extension Orders") are, in effect, harmless. *See* Omnibus Response, ¶ 7 (claiming that the defendants are "now receiving all of the process that they are due"). As outlined in the Reply Briefs filed by the various defendants, including the briefs filed by Hewlett Packard (07-02262) and Wagner-Smith Co. (07-02581), all of which are incorporated herein by reference, the Debtors' arguments are specious, are based on a complete misunderstanding of the protections afforded litigants under the Due Process Clause, and none of the Orders are binding on the defendants.

The Debtors allege that the defendants' due process claims are premature because formal discovery has not been completed and the Court has not entered any judgments. The Debtors' claim, therefore, that none of the defendants' interests that are protected by the Due Process Clause have been violated. However, the entry of the Extension Orders violated the defendants' protected interest in the essence of due process itself — the requirement that litigation be commenced within a limitations period and the right to receive meaningful notice at a meaningful time of an action that adversely affected their interest. *See Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) ("An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections . . . The notice must be of such nature as reasonably to convey the required information . . . "); *Lane Hollow Coal Co. v. Dir., Office of Workers' Comp. Programs, U.S. Dep't of Labor*, 137 F.3d 799, 807 (4th Cir. 1998) ("The Due Process Clause does not create a right to *win* litigation; it creates a right *not to lose* without a fair opportunity to defend oneself."). The sealing of the Complaint, the Debtors' decision to not

3

disclose to the defendants that they were potential targets, and the extension of the service deadlines well beyond the time originally sought for the Debtors to implement their 100-percent plan, taken together, effectively more than doubled the statute of limitations for bringing the preference action. While the Debtors attempt to separate these harms, the extraordinary relief the Debtors sought in the Extension Motions had the cumulative effect of depriving the defendants of any meaningful notice that the requested relief implicated their rights and the right to be able to plan a timely defense against the adversary action, while at the same time allowing the Debtors to induce the defendants to continue doing business with them for several years.

Moreover, apart from the due process violation, the Debtors are in violation of this Court's own notice procedures. Prior to entry of the August 16, 2007 Preservation of Estate Claims Procedures Order (The "Procedures Order"), in a series of Case Management Orders (each a "CMO"), the Court specifically directed the Debtors to provide ***actual notice***, by overnight mail, to "***all parties with a particularized interest in the subject of [any] Filing***." *See* Docket No. 2883 (Supplemental CMO); Docket No. 5418 (Amended Eighth Supplemental CMO). For example, the March 20, 2006 CMO, which was incorporated into the Eighth Supplemental CMO, provides, in relevant part:

> Every Filing shall be subject to the filing and notice procedures described herein (the "Notice Procedures"). All Filings shall be served (a) via overnight mail upon all parties with a particularized interest in the subject of the Filing . . .

No one can deny that these Defendants each had a particularized interest in the motion that led to the entry of the Procedures Order. The motion sought to: (a) conceal the filing of the avoidance actions from the very defendants to be named in the lawsuits; and (b) delay service until long after the statute of limitations period expired.

4

It is also clear that ***the Debtors not only completely ignored the Court's CMO (<u>none</u> of the avoidance defendants, including The Timken Company, The Timken Corporation, and MPB Corporation d/b/a Timken Super Precision, received actual notice of the First Extension Motion as required by the CMO),[1] but the Debtors obtained the relief now at issue by specifically misrepresenting to the Court that they had provided actual notice pursuant to the Court's CMOs when they had not***. *See* Omnibus Response, Ex. G (August 6, 2007 Extension Motion, ¶ 55) (representing to the Court that the Debtors had complied with the notice provisions of the CMO).  Having failed to properly serve the Defendants with the actual motion pursuant to the CMO and having misrepresented that they had done so, the Debtors cannot now claim that these Defendants are bound by the Procedures Order.  Accordingly, the Procedures Order should be vacated and the avoidance actions dismissed.

Moreover, the Debtors' reference to the fact that one of the Timken Defendants happened, by sheer coincidence, to be on the "Master Service List" – and thus received a general, non-particularized electronic "notification" every time a filing was made in the case (like the thousands of other entities on the list) – is completely irrelevant.  Not only did Timken not receive actual notice as specifically required by the CMO, but such a generalized, non-specific "notification" is deficient as a matter of law.[2]

Timken was specifically told – by the Debtors and the Court in the CMO – that it would receive actual notice if it had a "particularized interest" in a filing (and was entitled to rely on that representation) and, prior to March 2010, every representation made by the Debtors

---

[1] The Debtors' Omnibus Response does not dispute that the Debtors failed to provide actual notice of the First Extension Motion (that lead to entry of the Procedures Order) to any of the avoidance defendants, as required by the Court's Case Management Order.

[2] Furthermore, some of the Timken Defendants received no notice at all.

5

(including those made in the Debtors' August 2007 motion) suggested that the Debtors would not pursue avoidance actions against any entity (including Timken) other than the four Laneko defendants. And, of course, it is black-letter law that a defendant, like Timken, does not have a duty to monitor bankruptcy filings and guess whether a filing may affect its interests. *See City of New York v. New York, N.H. & H.R. Co.*, 344 U.S. 293 (1953). That, of course, was the entire point of the Court's CMO – to provide particularized notice to those affected – and is certainly why merely receiving an electronic "notification" that a filing was made, that does not identify the defendant, and is the same notice that thousands of others on the "Master List" received, is no notice at all. *See In re Johns-Manville Corp.,* 600 F.3d 135, 154-58 (2d Cir. 2010) (to be effective, notice must permit the defendant to intelligently understand that its rights were going to be permanently affected, necessitating a need to appear and defend).[3]

As such, the Procedures Order should be vacated as to all defendants and the avoidance actions dismissed.

**B.    The Avoidance Complaints Must Be Dismissed Because
The Debtors Failed To Timely Unseal The Complaints**

Because of the strong legislative policy favoring repose, the Procedures Order and Extension Orders must be vacated and the avoidance actions dismissed, for several other reasons.

First, as a threshold matter, the sealing of complaints in civil matters is highly disfavored and rarely, if ever, appropriate. As Judge William Pauley explained just days ago, "matters should not be shrouded in secrecy," particularly where the opposing party – like the moving defendants here – "did not have an opportunity to weigh in." *See Standard Chartered Bank Int'l (Ams.) Ltd. v. Calvo*, 2010 WL 2490995, at *2 (S.D.N.Y. June 16, 2010); *see also In re Eastman*

---

[3] The requirement of particularized notice is especially important in a chapter 11 case of this magnitude where thousands of pleadings are filed (*i.e.*, as of June 22, 2010, there have been 20,264 filings on the Debtors' bankruptcy docket.)

6

*Kodak Company's Application,* 2010 WL 2490982, at *1 (S.D.N.Y. June 15, 2010) (recognizing that the presumption of public access must be maintained with respect to complaints because "it is a pleading essential to the Court's adjudication of the matter as well as the public's interest in monitoring the federal courts").   The court tellingly concluded:

> Applications like this one spawn considerable mischief.   If granted, they conceal the very existence of lawsuits from the public. . . .   The Court will not permit the parochial interest of one party to trump the public interest in the efficient and transparent administration of justice.

*See Standard Chartered Bank,* 2010 WL 2490995, at *2.

In fact, 11 U.S.C. § 107 provides the ***only basis*** for permitting the sealing of court records in bankruptcy courts.[4]   And, as Hewlett Packard detailed in its Reply Brief (07-02262), the Debtors' asserted basis for sealing does not come close to satisfying the narrow "commercial information" standard set forth in *In re Orion Pictures Corp.*, 21 F.3d 24, 27 (2d Cir. 1994) (defining "commercial information" as information "which would cause an unfair business advantage to competitors by providing them information as to the commercial operations of the debtor").

Second, even assuming *arguendo* that the initial determination to seal the avoidance complaints and delay service was justified by the prospect of a 100-percent plan (as the Debtors' repeatedly allege in their Omnibus Response), a party's ability to keep an action a secret through the sealing of a complaint is not boundless.  *See Efaw v. Williams*, 473 F.3d 1038, 1041 (9th Cir. 2007) (explaining that, while a district court has the power to extend the time to serve under Rule 4(m), "no court has ruled that the discretion is limitless").

---

[4]   *See In re Gitto Global Corp.*, 422 F.3d 1, 8 (1st Cir. 2005); *In re Neal*, 461 F.3d 1048, 1053 (8th Cir. 2006); *In re Food Mgmt. Group, LLC*, 359 B.R. 543, 554 (Bankr. S.D.N.Y. 2007); *In re Phar-Mor, Inc.*, 191 B.R. 675, 679 (N.D. Ohio 1995).

7

Indeed, even in the criminal context – where there is an explicit rule of criminal procedure that permits sealing and strong policy justifications for allowing the sealing of complaints[5] – the sealing of a complaint will <u>not</u> be allowed to toll the statute of limitations if the Government does not unseal the complaint as soon as the stated reason for sealing no longer exists.  The Second Circuit has explained:

> [W]hen a sealed indictment has tolled the statute of limitations, the policy of repose underlying the statute demands that the Government unseal the indictment as soon as its legitimate need for delay has been satisfied.

*United States v. Watson*, 599 F.2d 1149, 1154 (2d Cir. 1979) [Watson I], *amended on reh'g by* 690 F.2d 15 (2d Cir. 1979) [Watson II], *modified en banc sub nom; see also United States v. Muse*, 633 F.2d 1041 (2d Cir. 1980); *United States v. Gigante*, 436 F. Supp. 2d 647 (S.D.N.Y. 2006) ("Even if the Government has a legitimate prosecutorial purpose for sealing an indictment, the time period in which the indictment may remain sealed is not boundless.  Rather, the Government is required to unseal the indictment 'as soon as its legitimate need for delay has been satisfied.'").  ***This requirement protects against "the inevitable prejudice to the defendant occasioned by the delay*.**"  *United States v. Deglomini*, 111 F. Supp. 2d 198, 200 (E.D.N.Y. 2000).  And, as discussed in *Watson I*, these statute of limitations and prejudice concerns are separate and distinct from speedy trial concerns under the Sixth Amendment.  *See Watson I*, 599 F.2d at 1155-57.

Here, the Procedures Order was the only order that addressed the sealing of the avoidance complaints and it specifically authorized the Debtors to unseal the complaints at their discretion.

---

[5] Courts are, of course, more generous in the criminal context because of the important government interest in sealing complaints to facilitate the government's investigation into criminal activity, to protect the safety of informants and other witnesses, to prevent evidence supporting such criminal activity from being destroyed and to prevent the defendants from avoiding arrest and witnesses from avoiding being interviewed.  [24 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 606.02[2][c] n. 80 (3d ed.).]

The purported need for sealing the complaints then expired no later than April 2008. In fact, as the Debtors recognize in their Omnibus Response, this Court has already concluded that, after the EPCA funding fell through in April 2008, the "primary rationale for the prior extension orders no longer applied." *See* Omnibus Response, at ¶ 38 and Exhibit G (April 1, 2010 Tr. p. 62).

Accordingly, even if the original sealing order was justified by the prospect of a 100-percent plan, when the facts changed (in April 2008) and the purported original motivation fell away, ***the Debtors were required*** to immediately unseal the avoidance complaints and pursue the avoidance actions (as this Court allowed them to do under the terms of the Procedures Order). Having chosen, for whatever reason, not to do so, the avoidance actions must now be dismissed. *See Watson I*, 599 F.2d at 1156 (dismissing indictment for failure to unseal after the motivation for the delay went away); *Deglomini*, 111 F. Supp. 2d at 203 (same).

This conclusion is mandated here, where the Debtors not only failed to immediately unseal the complaints, but the Debtors failed to do so for two additional years ***after*** the EPCA funding fell through (and well in excess of a year after it became crystal clear that the EPCA funding would never return). Moreover, even after filing their amended plan documents and thereafter, when they knew that they would be suing the 177 avoidance defendants and that there would be substantially lower creditor recoveries, the Debtors still chose not to unseal the complaints and proceed with their actions.

It is well-settled that such a lengthy delay between the sealing and unsealing of a complaint renders the original sealing of the complaint unreasonable as a matter of law. *See Deglomini*, 111 F. Supp. 2d at 200 (dismissing indictment, concluding that a 14-month time period between sealing and unsealing was unreasonable); *Gigante*, 436 F. Supp. 2d at 659 (two-

9

year delay was unreasonable); *United States v. Sherwood*, 38 F.R.D. 14, 20 (D. Conn. 1964) (13-month delay was unreasonable); *United States v. Heckler*, 428 F. Supp. 269, 272 (S.D.N.Y. 1976) (12-month delay was unreasonable).

Moreover, the fact that the Debtors allegedly may not have known whether they would have sufficient funds to pursue the adversary proceedings after the EPCA funding fell through cannot support the continued sealing of the complaints and service extensions sought by the Debtors.  Omnibus Response, ¶ 38.  Rule 4(m) and Section 107 simply cannot be utilized to permit a party to conceal the filing of a complaint beyond the statute of limitations period so they can, as the Debtors suggested, "wait and see" if they can or really want to prosecute the action at some later date.  *See Smith v. Pa. Glass Sand Corp.*, 123 F.R.D. 648, 651 (N.D. Fla. 1988) ("Plaintiff cannot deliberately or even inadvertently 'wait and see' if his financial resources improve enough to allow him to diligently prosecute his case."); *Fimbres v. United States*, 833 F.2d 138, 139 (9th Cir. 1987) (rejecting Rule 4(m) extension, explaining that the notion that the plaintiff lacked the financial resources to prosecute the action amounted to nothing more than an improper intentional delay in service).  If such a "wait and see" rationale were permitted, § 107 and Rule 4(m) would be rendered meaningless.

As a result, the Debtors did not unseal the complaints in a timely manner and the remedy for their failure to do so is the dismissal of their complaints.

## C.    Even Where A Complaint Is Timely Unsealed, It Must Be Dismissed Where There Is Substantial Prejudice

Even if the Court were to conclude that the sealing of the complaints was justified (which, as discussed throughout, it was not) and that the Debtors unsealed them in a timely manner (which they clearly did not), the avoidance complaints must still be dismissed where a

defendant suffers substantial actual prejudice during the time period the file is sealed.[6]  As the

Second Circuit explained:

> But when the defendant can show substantial actual prejudice [as a result of the sealing of an indictment], the indictment must be dismissed, for even a legitimate prosecutorial interest is then insufficient to effectuate statute of limitations policies.

*Watson II*, 690 F.3d at 16; *see also United States v. Srulowitz*, 819 F.2d 37, 40 (2d Cir. 1987).

Here, there is an "irrebuttable presumption" of prejudice from the delay in unsealing and

serving.  *See United States v. Marion*, 404 U.S. 307, 322 & n.14 (1971).  Moreover, Timken has,

by way of declaration, submitted unrebutted evidence of substantial actual prejudice, including

the selling of a division, which rendered certain witnesses and documents potentially relevant to

the adversary proceeding outside of Timken's access or control, and upgrading computer

systems, which will likely make older files very costly to retrieve if not entirely unavailable.  *See*

Decl. of Michael Hart dated 5-14-10 ¶ 11-12.  Additionally, Robert E. Morris's July 1, 2010

Declaration (the "Morris Declaration") shows that, had Timken known it was being sued, it

could have mitigated its damages by repaying the alleged preferences and selling the resulting

claim under Section 502(h) of the Bankruptcy Code.  *See* Morris Decl. ¶ 7.  In fact, on July 31,

2007, just sixteen days before the Procedures Order was entered and less than two months before

the Complaint was filed under seal, certain of the Timken Defendants sold their existing claims

for 102% of the face amount of the claims.  *See id.* ¶ 5.  The purchaser had expressed to Timken

a strong desire to purchase additional claims at the same price.  *See id.* ¶ 6.  The sealing of the

Complaint deprived Timken of the opportunity to sell its 502(h) claim for a profit and thus

---

[6]  Of course, as explained in Hewlett Packard's Reply Brief (07-02262), there is no requirement to show prejudice from a deprivation of due process rights.

11

mitigate its damages in full.[7]    Additionally, if the Complaint had not been sealed, Timken could have moved to dismiss on the basis that the Debtors would not have been able to prove that the payments to Timken were preferential given that they were proposing a 100-percent plan.  *See id.* ¶ 8.  In fact, the Debtors' decision to file the preference complaints at a time when a 100-percent plan was contemplated may have violated Rule 11 of the Federal Rules of Civil Procedure.  Finally, had Timken been aware of the adversary proceeding at the time it was filed, Timken would likely have negotiated differently with the Debtors.  *See id.* ¶ 9.  In particular, Timken had significant negotiating power with respect to new contracts to continue supplying the Debtors with the same parts it had been supplying under expiring contracts, because it would have been difficult, time consuming, and expensive for the Debtors to resource the production to an alternative supplier.  *See id.*  If Timken had known of the adversary proceeding, Timken likely would have refused to accept the new contracts to replace expiring contracts unless the Debtors dismissed the adversary proceeding.  *See id.*  The filing under seal, therefore, was not a benefit to Timken, but to the Debtors, as it provided the Debtors with optionality to which they were not entitled.

Indeed, the Second Circuit has specifically declared that, in situations such as ours:

> It is obvious that any defendant would be harmed by a generous extension of the service period beyond the limitations period for the action, ***especially if the defendant had no actual notice of the existence of the complaint until the service period had expired.***

*Zapata v. City of New York*, 502 F.3d 192, 198 (2d Cir. 2007) (emphasis supplied).

---

[7] Although Timken believes that the purchaser of the claims has the obligation to purchase any 502(h) claims resulting from this lawsuit, the purchaser has denied such obligation.

12

Under the circumstances, even if the complaints were timely unsealed, the complaints must be dismissed because of the substantial actual prejudice Timken suffered.  Timken submits that this is a critical threshold issue that must be addressed before this case can proceed.

**D.  In Any Event, The Procedures Order and Extension Orders Were Improper**

      **1.  The 120-day Time Period For Service Cannot**
            **Be Extended To Facilitate Non-Service**

The Debtors' Omnibus Response also admits that, when petitioning the Court for relief, the Debtors sought to facilitate the **_non-service_**, rather than the service of their sealed avoidance complaints (ultimately ensuring that the avoidance defendants did not receive notice for over two and a half years).  For example, in paragraph 56, the Debtors admit that the Procedures Order (entered before the complaints were even filed) permitted the Debtors to "defer serving process on defendants."  Omnibus Response, ¶ 56.  Likewise, Paragraph 2 acknowledges that the Order allowed the Debtors to "serve [the complaints] only if and when it became necessary to do so." *Id*. ¶ 2.  Based on this admission, there could never have been cause, good or otherwise, to seal the complaints and extend the 120-day time period set forth in Rule 4(m).

It is universally recognized that Rule 4(m) was enacted to "force parties and their attorneys to **_diligently prosecute their causes of action_**."  *Knorr v. Coughlin*, 159 F.R.D. 5, 6 (N.D.N.Y. 1994) (emphasis supplied); *see also In re Southold Dev. Corp.*, 148 B.R. 726, 729 (E.D.N.Y. 1992) ("The 120-day service requirement of Rule [4(m)] was adopted in order to encourage the 'prompt movement of civil actions in the federal courts'").

For this very reason, courts have routinely held that it is an abuse of discretion to permit an extension when the plaintiff is attempting to delay, rather than facilitate service.  *See, e.g., Montalbano v. Easco Hand Tools, Inc.*, 766 F.2d 737, 740 (2d Cir. 1985) (affirming the dismissal of a complaint based on lack of effort to serve, explaining that dismissal was

13

particularly appropriate where the plaintiff "has not exactly bent over backward to effect service"); *Smith*, 123 F.R.D. at 651 ("Plaintiff cannot deliberately or even inadvertently 'wait and see' if his financial resources improve enough to allow him to diligently prosecute his case."); *Fimbres*, 833 F.2d at 139 (same).

As one court pointedly explained:

> Even under Rule 4(m), "though leniency may sometimes be appropriate for those who have in good faith attempted timely service, to afford it to litigants who have failed to make even the most basic efforts would ***turn Rule 4(m) into a toothless tiger***.

*Knorr*, 159 F.R.D. at 7 (emphasis supplied).

Indeed, because the purpose of Rule 4(m)[8] is to facilitate (rather than impede) prompt service, courts have recognized that the "entire focus [of Rule 4(m)] was to force plaintiffs' (more realistically their lawyers') diligence ***in order to preserve causes of action against limitations problems***." *Coleman v. Greyhound Lines, Inc.*, 100 F.R.D. 476, 477 (N.D. Ill. 1984) (emphasis added); *see also Perkins v. United States*, No. 86-363, 1987 WL 19842, at *3 (N.D.N.Y. Nov. 13, 1987); *U.S. Fire Ins. Co. v. Jesco Constr. Co.*, No. 03-2906, 2003 WL 21689654, at *3 (S.D.N.Y. July 16, 2003) ("The primary purpose of service of process is to give a defendant legal notice of the claims asserted against him so that he may prepare his defense.").

Here, by intentionally structuring their request for relief to seal the complaints and delay service indefinitely, the Debtors undertook a course of action that ensured the very evil Congress was attempting to prevent when enacting Rule 4(m) – that the complaint would not be served

---

[8] Rule 4(m)'s requirement of timely service also must be read in conjunction with Rule 3, made applicable here by Bankruptcy Rule 7003. The 1937 Adversary Committee Note on Rule 3 notes the interrelated nature of Rules 3 and 4, acknowledging that an argument that "the mere filing a complaint stops the running of the statute" of limitations would raise questions about rules of procedure affecting substantive rights. The Note found that Rule 4's requirement of prompt service would "reduce the chance of such a question arising." Fed. R. Civ. P. 3, advisory committee's note, ¶ 4. *See Hixon v. Highsmith,* 147 F. Supp. 801, 803 (E.D. Tenn. 1957) (Rules 3 and 4 "contemplate the issuing of a summons and the placing of a summons in proper channels for service in order to toll the statute of limitations.").

14

(and no effort would be made to serve the complaint), thereby preventing the defendants from receiving notice and timely preserving documents and testimony necessary for their defense. The harm posed by the Debtors' actions is unassailable.  *See Zapata*, 502 F.3d at 198 ("It is obvious that any defendant would be harmed by a generous extension of the service period beyond the limitations period for the action, especially if the defendant had no actual notice of the existence of the complaint until the service period had expired . . .").  As the Fifth Circuit has declared:

> Counsel was intentionally keeping the case unknown to the named defendant for the purpose of manipulating his own claim in a state court. His delay was indefinite. He was blocking the right of the potential defendant to know that a suit had been filed against it in federal court, blocking discovery, and blocking the right of the putative defendant to preserve its defenses. This not only was not good cause, it was an ***obvious misuse of the judicial process***.

*Redding v. Essex Crane Rental Corp. of Ala.*, 752 F.2d 1077, 1078 (5th Cir. 1985) (emphasis added).

Here, the Extension Motion achieved a result that was clearly prohibited by Rule 4(m), and the resulting orders should be vacated and the complaints dismissed.

## 2. No Cause, Good or Otherwise, Existed For The Debtors' Request To Seal The Complaints And Delay Service In The <u>First Place</u>

The Debtors also continue to claim that the extension motions were necessary, in the first instance, in order to preserve the "status quo" and to allow the Debtors to "negotiate favorable terms with its suppliers" in light of the 100-percent plan.  Omnibus Response, ¶¶ 48-49, 55.  The Debtors contend that, without these protections, the Debtors would have suffered "significant harm" and "commercial injury."  *Id.* ¶¶ 44-45, 49.  The Debtors' self-serving justifications have no merit at all.

15

To begin with, the notion that the Debtors continue to advance – that the Debtors needed to seal the complaints (and delay service) in order to avoid being "irreparably harmed" – is insulting.  Nothing in the avoidance complaints was confidential or potentially damaging to the Debtors in any way.  The Debtors, in fact, had absolutely no problem unsealing the complaints in 2010 when it concluded that it no longer had a use for the avoidance defendants.

In reality, the "information" that the Debtors sought to conceal from the defendants was, quite obviously, the mere fact that an avoidance action (seeking millions of dollars) had been filed in the first place.  By intentionally keeping the defendants in the dark, the Debtors were able to maintain an ***uneven playing field***, with one party, the Debtors, having an informational advantage over the other during the parties' ongoing business dealings and negotiations.  *See, e.g.*, Morris Decl. ¶ 9.[9]

And, of course, the Debtors' scheme, by the Debtors' own admission, worked.  The Debtors were able to extract "favorable" terms during the parties' negotiations and then, years after the limitations period expired, they were able to spring their avoidance actions on 177 unsuspecting defendants.  Cause cannot exist for sealing a complaint under such circumstances – to facilitate uneven, bad faith negotiations.  *See In re Orion Pictures, Corp.*, 21 F.3d at 27 (defining "commercial information" under § 107 to be "information which would cause an *unfair advantage to competitor*s by providing them information as to the *commercial operations* of the debtor").

_____

[9] Mr. Morris states at Paragraph 9 of his Declaration: "Had Timken been aware of the adversary proceeding at the time it was filed, Timken would likely have negotiated differently with Delphi.  In particular, Timken had significant negotiating power with respect to the new contracts to continue supplying Delphi with the same parts it had been supplying under expiring contracts, because it would have been difficult, time consuming, and expensive for Delphi to resource the production to an alternative supplier.  If Timken had known of the adversary proceeding, Timken likely would have refused to accept the new contracts to replace expiring contracts unless the Debtors dismissed the adversary proceeding.  Accordingly, Timken was substantially prejudiced by the filing of the adversary action under seal."

16

Indeed, it is black-letter law that sealing orders are improper where, as here, they are merely used to facilitate the Debtor's reorganization or to assuage fears that disclosure of allegations in an adversary complaint would adversely affect its business activities. *See, e.g.*, *In re Epic Assocs. V*, 54 B.R. 445, 449 (Bankr. E.D. Va. 1985). If this were not the rule, such garden-variety concerns, ***which exist in every bankruptcy case***, would eviscerate Section 107's clear protections.

In fact, the Second Circuit has considered and rejected the identical idea, advanced by the Debtors at ¶ 56 of their Omnibus Response, that the limitations period for preference actions can be extended beyond the statutory two-year period in order to allow the debtor "to pursue ongoing business operations through preservation of their supply base, and to continue developing a plan of reorganization that would allow the Debtors to emerge from Chapter 11." *See U.S. Brass & Copper Co. v. Caplan (In re Century Brass Prods., Inc.)*, 22 F.3d 37, 41 (2d Cir. 1994). Specifically, in *Century Brass*, the Second Circuit overruled lower-court precedent that previously held that the two-year limitations period only applied to trustees, not debtors in possession ("DIP"), based on the belief that the premature initiation of preference actions would impede the debtors' reorganization. While the Second Circuit recognized that a "DIP is generally involved in attempts to reorganize and continue the debtor's business" and that many believed that "subjecting a DIP to the two-year limitations period would unduly hobble its efforts to reorganize or to negotiate with creditors," the Court rejected the notion that the two-year statute of limitations should not apply to DIPs, holding that the "two-year limitations period represents Congress's balancing of the interests of the debtor in negotiation . . . against the interest of other persons in the repose of claims that may be made against them." *Id*. at 41.

17

Thus, under *Century Brass*, a debtor's assertion that relief is needed in order to help it reorganize and continue its business – the exact same arguments made by the Debtors here – cannot be used to extend or toll, as a practical matter, the statute of limitations.    The impact of *Century Brass* is clear:  the avoidance actions should be dismissed because the arguments that were relied upon in fashioning the Orders have been rejected by the Second Circuit as insufficient to render the limitations period inapplicable to a debtor-in-possession.

The Debtors further argue that the Procedures Order was necessary to protect the defendants from themselves (preventing the defendants from becoming "alarmed" and running off and incurring legal fees).    This is absurd.    First, how were the Debtors "benefiting" the defendants by preventing them from retaining counsel to protect their interests?    There is not a single case in the history of American jurisprudence that supports the view that a plaintiff may conceal both the filing of a complaint and a series of motions that eviscerate a defendant's legal rights, because informing the defendant would "unnecessarily alarm" the defendant and force it into the "inconvenient position" of retaining legal counsel to protect its interests.[10]

Additionally, if, as the Debtors contend, everyone understood that the initial plan was going to pay 100 percent, there was no reason to believe that the defendants would have acted irrationally.    Instead, had particularized notice been provided, documents and testimony relevant to the claims could have been preserved by the defendants and tolling or stay of litigation agreements entered into.    By hiding these actions unnecessarily, the Debtors chose a course that prevented the defendants from doing so.    Having chosen this course of action, the Debtors must now live with the consequences that the avoidance complaints should be dismissed.

---

[10]  In fact, as set forth in the Morris Declaration, Timken could have taken steps to protect itself, such as repaying the alleged preferential payment and selling the resulting 502(h) claim to a claim purchaser.  *See* Morris Decl. ¶ 7.

18

3.    **The Appropriate Remedy Is To Vacate The
Procedures Order and Extension Orders And
Dismiss**

Additionally, contrary to the position advocated by the Debtors, if a complaint has been

improperly sealed <u>and</u> the statute of limitations has, as a result, purportedly been tolled, the

appropriate remedy is the dismissal of the complaint (not the unsealing of a document that has

already been unsealed). *See Watson I*, 599 F.2d at 1156 (dismissing proceeding); *Deglomini*,

111 F. Supp. 2d at 203 (same); *Gigante*, 436 F. Supp. 2d at 659 (same).

The cases cited by the Debtors have no bearing on the situation before the court and,

instead, address irrelevant scenarios such as: (a) the unsealing of records by the court where the

party who sealed the records failed to obtain leave of the court (*see Spano v. Boeing Co.*, 06-

00743, 2008 U.S. Dist. LEXIS 54122, at *5 (S.D. Ill. July 16, 2008)); and (b) the unsealing of

records pursuant to a motion to unseal (*see In re Neal*, 461 F.3d 1048, 1050 (8th Cir. 2006)).

4.    **The Debtors Will Not Be Prejudiced If The Orders Are Vacated**

Finally, to the extent that the Debtors claim that they will be prejudiced if the Procedures

Order and Extension Orders are vacated, such claims are unfounded.

As discussed above, the Debtors already benefited from an uneven playing field when

negotiating favorable terms with their suppliers. The extinguishment of the Debtors' claims has,

quite simply, been brought about by the Debtors' own strategic decisions. The Debtors took a

risk, electing to hide the avoidance actions from the defendants in order to negotiate more

favorable contract terms than it otherwise would have been able to had the defendants known

that the Debtors were suing them. Having made this election, the Debtors clearly undertook a

risk that when the defendants were finally served, the avoidance actions would be dismissed for

any number of reasons. This risk was not unknown. The Court specifically reminded the

Debtors that the extensions granted by the Court were without prejudice to the rights of the defendants in the avoidance actions to argue defenses.

Indeed, the Debtors were clearly able to facilitate their own reorganization by improperly keeping the avoidance complaints a secret. Had the Debtors filed unsealed complaints, they would have undoubtedly had greater difficulty negotiating new contracts which were commercially feasible from the Debtors' perspective. So, by secreting the complaints, the Debtors preserved their ability to reorganize. But the Debtors cannot have their cake and eat it too – the avoidance defendants are harmed at both ends while the Debtors are benefitted at both ends. This is hardly fair; especially in the context of a chapter 11 case, which is conducted for the benefit of creditors as well as the debtors.

Second, had the Procedures Order and Extension Orders not been entered, it is doubtful that the Debtors would have brought these 177 avoidance actions given the Debtors' belief in 2007 that there would be a 100-percent plan and their decision not to pursue 11,000+ other potential preference actions. In fact, the Debtors' decision to file the preference complaints at a time when a 100-percent plan was contemplated was likely a violation of Rule 11 of the Federal Rules of Civil Procedure.

E.    **The Complaints Should Be Dismissed Under *Twombly* and *Iqbal***

The Debtors do not seriously dispute that their bare-bones preference complaints do not contain sufficient factual allegations to state a claim for relief under the pleading standards set forth in *Twombly* and *Iqbal*. Indeed, in addition to *Angell v. Haveri (In re Careamerica, Inc.)*, 409 B.R. 346 (Bankr. E.D.N.C. 2009), which has become the leading *Twombly*/*Iqbal* decision addressing the preference pleading standard, Chief Judge Gonzalez recently issued an opinion dismissing a preference action, concluding that the complaint failed to allege sufficiently detailed

20

facts with respect to each of the five elements of § 547(b).  *See Official Comm. Of Unsecured Creditors of Hydrogen v. Blomen (In re Hydrogen, L.L.C.)*, __ B.R. __, No. 08-14139 (AJG), 2010 WL 1609536, at *11-12 (Bankr. S.D.N.Y. 2010).

Recognizing that they had not fulfilled the *Twombly/Iqbal* standard, the Debtors requested in their Omnibus Response that, in lieu of dismissal, they be allowed "informally" to provide the defendants with information necessary to answer the complaints.  Stated differently, instead of amending their complaint, the Debtors want "informally" to provide information to the various defendants and then, based on the defendants' interpretation of this information, have the defendants answer the Debtors' still deficient complaint.

The Debtors' solution is, quite clearly, no solution at all.  The Debtors' complaints should be dismissed for failing to satisfy *Twombly*/*Iqbal* for the reasons articulated by Hewlett Packard (07-02262) in its Reply Brief.  Having failed to avail themselves of the opportunity to amend their defective complaints within the five years since the alleged claims accrued, the Debtors should not be given yet another bite at the apple to replead.  The Debtors' failure to file properly-pled complaints is particularly inexcusable given that the Debtors admit that the documents required to draft adequate complaints were "routine documents" and that it "retained such basic information" but elected not to plead it.  Omnibus Response, ¶ 62.

The Debtors' reliance on *In re Allou Distributors, Inc.*, 387 B.R. 365, 405 (Bankr. E.D.N.Y. 2008) and *In re NM Holdings Co., LLC*, 407 B.R. 232 (Bankr. E.D. Mich. 2009) is misplaced, because both decisions pre-dated *Iqbal*.  Furthermore, the complaint in *Allou* was far more detailed than the Complaint filed in this action.  Specifically, the *Allou* plaintiffs included basic allegations identifying the debtor that made each transfer and the defendant that received each transfer.  Here, the Debtors' complaints only identify a list of transfers and nothing else.

21

For example, for each transfer, the Debtors do not even identify the contract at issue, which entity is the plaintiff, which entity is the defendant, the antecedent debt, or the alleged transferee status of the defendant under 11 U.S.C. § 550(a).

Cases decided after Iqbal confirm that the Complaint in this case does not meet the requirements of Fed. R. Civ. P. 8(a) on multiple fronts. *See In re Hydrogen, L.L.C.*, 2010 WL 1609536, at *12 (applying Rule 8(a) to dismiss preference claims where pleadings failed to allege "that any transfer was made for or on account of a specific and identifiable antecedent debt owed by the debtor"); *Feltman v. Keybank, N.A. (In re Levitt & Sons, LLC)*, No. 07-19845-BKC-RBR, 2010 Bankr. LEXIS 1284, at *5-6 (Bankr. S.D. Fla. Apr. 16, 2010) (applying *Iqbal* to dismiss a preference complaint, where "Plaintiffs [sic] failure to adequately distinguish identity with respect to various obligors, guarantors, and transferors allegedly involved in the transactions with KeyBank is fatal to Counts I, II, III, IV, and V of the Complaint."); *In re McLaughlin*, 415 B.R. 23, 27 (Bankr. D.N.H. 2009), *rev'd in part on recons. on other grounds, 2009 WL 4722236 (Oct. 23, 2009)* ("*Iqbal* requires the pleadings to assert facts relating to the nature and amount of the antecedent debt."). The Debtors fail to cite to any preference cases decided after *Iqbal* that hold to the contrary.

In any event, even if the Debtors' complaints are not dismissed (as the circumstances here require), the Debtors must correct their pleading deficiencies by amending and properly re-pleading their claims. Timken has the right to answer a complaint that adequately pleads a claim against it. If the allegations are not amended, the defendants, the Debtors, and the Court will be left to guess what the defendants are admitting, what they are denying, and what issues remain for trial.

Accordingly, if the Court is going to permit the Debtors to amend the preference complaints, the Debtors should be required to re-plead and, at a minimum, identify the following for each transfer at issue:

1.    The name of the specific plaintiff and the specific defendant for that transfer;

2.    The identity of the transferor;

3.    The identity of the transferee;

4.    The specific and identifiable antecedent debt for each transfer, including the PO number and/or contract number;

5.    The interest of each debtor-plaintiff in the property transferred;

6.    Facts showing that the transferee was a creditor of the debtor whose property was transferred; and

7.    Whether the defendant is named as the initial transferee, the party for whose benefit the transfer was made, the immediate transferee, or mediate transferee.

These are the minimum facts necessary to state a claim for each transfer. Additionally, the Debtors should be required to omit from the Complaint any transfers that are unavoidable as a matter of law because of a release or a contract assumption, or because they were not on account of an antecedent debt, such as prepayments.

## F.    Judicial Estoppel Is Applicable To This Case

While the Debtors weave the many threads of numerous pleadings to argue that they disclosed their intention to preserve hundreds of preference claims, the simple and irrefutable fact is that at least two of the motions to the Court seeking further extension orders stated that the orders would only apply to three named defendants and their affiliates. *See* Extension of Avoidance Action Service Deadline Motion, ¶ 17, n.4; Postconfirmation Extension of Avoidance Action Service Deadline Motion, ¶ 18, n.4. The Debtors assert that the moving parties simply

23

misinterpreted the footnote.    Omnibus Response, ¶ 87.    It is respectfully submitted that the statements of the Debtors *were* misleading.    Candor would have dictated a statement that the Extension Orders would apply to hundreds of defendants, not merely three.    At a minimum, the Debtors obfuscated their intentions in a manner that could mislead the Court.    The Debtors should not now be permitted to prosecute the avoidance actions in obvious contradiction of their prior representations.    *See Galerie Des Monnaies of Geneva, Ltd. v. Deutsche Bank, A.G., N.Y. Branch (In re Galerie Des Monnaies of Geneva, Ltd.*), 55 B.R. 253, 259-60 (Bankr. S.D.N.Y. 1985), *aff'd*, 62 B.R. 224 (S.D.N.Y. 1986).    Accordingly, the Complaint should be dismissed with prejudice.

**G.    The Debtors' Claims Must Be Dismissed To The
Extent They Are Based On Assumed Contracts**

As more fully explained in Section A of the Affinia Reply Brief (No. 07-02198), any claims against Timken that are based on assumed contracts should be dismissed.    The Morris Declaration shows that a substantial portion of the allegedly preferential transfers that are the subject of the adversary proceeding relate to assumed contracts and purchase orders.    *See* Morris Decl. ¶ 10.    This Court, at the April 1, 2010 hearing, specifically noted:

> "If your contract was assumed then you're not going to have a preference in respect of payments in the contract that was assumed.
>
> \* \* \*
>
> [I]t's crystal clear that if the payment is in respect of an assumed contract then there's no issue."

*See* Omnibus Response, at Ex. D (April 1, 2010 Tr. pp. 50, 52).

Moreover, it would defeat the purpose of 11 U.S.C. § 365, which is to make the nondebtor contracting party whole, if the Court were to permit claims based on assumed contracts to proceed.    *See In re Superior Toy Mfg. Co., Inc.,* 78 F.3d 1169, 1174 (7th Cir. 1996) ("Section 11 U.S.C. § 547 and 11 U.S.C. § 365 are mutually exclusive avenues for a trustee.    A

24

trustee may not prevail under both); *see also In re Teligent, Inc.*, 306 B.R. 752, 760 (Bankr.

S.D.N.Y. 2004) (following *Superior Toy,* explaining that an assumption order bars avoidance of

a preference).

The assumption of the contracts is part of the record, and the Court may take judicial

notice of such assumption in ruling on the Motion.  *See* Morris Decl. ¶ 10.  Accordingly, Timken

requests that the Court enter orders dismissing these proceedings to the extent they are based on

payments made with respect to assumed contracts.

**H.**     **The Debtors' Claims Must Be Dismissed To The Extent They Are Based On Prepayments**

To the extent that any of the Debtors' claims are not based on antecedent debt, such as

when the Debtors made prepayments, those payments are not a preference.  As discussed in the

Morris Declaration, at least three of the payments that the Debtors made to Timken, namely the

$1,000,000 payment dated September 28, 2005, the $1,100,000 payment dated October 3, 2005,

and the $507,400 payment dated October 6, 2005, were prepayments and therefore are

unavoidable as a matter of law.  *See* Morris Decl. ¶ 12.

**I.**     **The Debtors' Claims Must Be Dismissed To The Extent The Claims Were Specifically Released**

As the Morris Declaration explains, in the Assumption Agreement entered into on or

around June 2, 2006, the Debtors explicitly released Timken from liability for "any transfers

made by the Debtors to [Timken] relating to the Supply Agreement, to the fullest extent that such

waiver would have otherwise occurred by operation of law upon assumption of the Supply

Agreement…."  *See* Morris Decl. ¶ 11.  The Assumption Agreement further released Timken

from avoidance claims and causes of action related to "any transfers made by the Debtors to

[Timken] in the 90 days prior to October 8, 2005 relating to goods supplied by [Timken] to the

Debtors in connection with the Grand Rapids Facilities other than with respect to the Supply Agreement…." *See id.* To the extent that the Debtors seek recovery related to these previously-released claims, the claims should be dismissed.

**J.      The Debtors Irrevocably Abandoned Their Preference
Claims For Less Than $250,000 Or Against Foreign
Suppliers**

Among other arguments, Timken joins the section of the Affinia Reply Brief (07-02198) discussing claims for less than $250,000[11] or against defendants that were foreign suppliers. Timken asks that if Debtors serve Timken France SAS, a foreign supplier, in this case, all claims against Timken France SAS be dismissed based on the arguments contained in Affinia's Reply Brief.

**K.      The Debtors' Claims Must Be Dismissed To The Extent
They Are Against Improperly Named Defendants**

In footnote 13 of the Debtors' Omnibus Response, the Debtors agreed to dismiss all of the non-entity/non-existent defendants that they sued. This includes "Timken," as that term was used by the Debtors in the Complaint, and not as it is being used in this Reply Brief (as shorthand for The Timken Company, The Timken Corporation, and MPB Corporation d/b/a Timken Super Precision). Accordingly, the Court should strike this defendant from the Complaint and the case should be dismissed against this defendant with prejudice.

**L.      Timken Incorporates All Applicable Arguments Raised By Other Defendants In
Their Dismissal Motions And Joins In The Reply Briefs of Other Defendants In
Further Support Of The Motions**

Numerous other motions and memoranda in support have been filed by the defendants in the various avoidance actions. These motions seek the dismissal of the avoidance complaints on

---

[11] Because the Debtors provided no detail in the Complaint regarding the specific Timken Defendant allegedly obligated to return each transfer, the Timken Defendants do not know whether any of the claims were abandoned on the basis of the $250,000 threshold.

26

various legal grounds.  Because the facts surrounding those actions are, in many respects, similar to those found in Timken's Motion, Timken incorporates all applicable arguments raised by all other defendants in their Motions to Dismiss and joins in any and all memoranda in further support of the Motions to Dismiss.

## <u>CONCLUSION</u>

For the reasons stated above and for the reasons stated in the original memorandums of law, the preference complaints should be dismissed.

Dated: July 2, 2010

ARENT FOX LLP

By:        */s/ James M. Sullivan*
James Sullivan
1675 Broadway
New York, New York 10019
Telephone: (212) 484-3900
Facsimile: (212) 484-3990
Email:  sullivan.james@arentfox.com

*Counsel to The Timken Company, The Timken Corporation, and MPB Corporation d/b/a Timken Super Precision*