# **Exhibit A**

IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
CIVIL DIVISION

FKMT, LLC
f/k/a MONARCH TRANSPORT, LLC )
)
Plaintiff, )
)
v. )    Case No. _____
)
DELPHI CORPORATION )
5725 Delphi Drive )
Troy, MI 48098 )    Div. No. _____
)    Chapter 60
)
Defendant. )

## PETITION FOR RECOVERY OF MONIES

COMES NOW, FKMT, LLC f/k/a MONARCH TRANSPORT, LLC ("Plaintiff"),
by and through its attorneys of record, and for its causes of action against the
Defendant(s) Delphi Corporation and affiliate Delphi Automotive Systems, LLC
(collectively "Defendant") states and alleges as follows:

## PARTIES, VENUE & JURISDICTION

1.    Plaintiff is a Kansas limited liability company.

2.    Defendant is a Delaware Corporation with a principal business office
location at 5725 Delphi Drive, Troy MI 48098 ("Defendant").

3.    Personal jurisdiction and venue are appropriate for this case in Jackson
County, Missouri because each of the contracts which are the subject matter of this
Petition occurred in and were performed in Jackson County, Missouri.

## GENERAL ALLEGATIONS

4.    Beginning on or about May, 2004 through September 30, 2007, Defendant entered a series of contracts with Plaintiff for purposes of using transportation services of Plaintiff for the benefit of Defendant ("Contracts"). Defendant entered into these Contracts with Plaintiff pursuant to which monies were to be paid to Plaintiff in exchange for transportation services to be performed by Plaintiff for Defendant.

5.    As a result of the Contracts, Defendant utilized the services of Plaintiff with the agreement that Defendant would be "invoiced" for services and Defendant would pay the monthly invoices. At various times since May, 2004 upon Defendant's request, Plaintiff has modified its format and method of "invoicing" Defendant to meet the formatting requirements of Defendant. At present, and continuing, Defendant owes to Plaintiff for services rendered by Plaintiff on behalf of Defendant the approximate sum of $214,440.96, plus balances due on invoices that were only partially paid of $23,704.82, for a total principal balance of the debt of $238,145.78.

6.    The obligation of Defendant to perform the terms of the Contracts in making payment on the outstanding invoices was relied upon by Plaintiff. Over the course of time, Plaintiff has been informed and believes and thereon alleges that Defendant failed to inform Plaintiff of Defendant's intention to forgo payment of monies due for services rendered. Because of this omission, intentionally or negligently committed by Defendant, Plaintiff has suffered damages.

7.    Between May, 2004 and September 30, 2007, Plaintiff made payments to Defendant for certain transportation services provided by Plaintiff to Defendant pursuant to various Contracts, other than the transportation services provided by Plaintiff pursuant

to the Contracts in which a claim hereunder is being made. Defendant failed to notify Plaintiff as to which Contracts it intended for some or all of these payments to be applied toward within a reasonable timeframe of making such payments. Plaintiff applied such undesignated payments toward the unpaid invoices as it elected. As such, the invoices which Plaintiff deems as unpaid differ from those deemed paid by Defendant. As such, in the event Defendant provides proof of payment of an invoice for which Plaintiff claims hereunder is unpaid, but for which such payment was applied by Plaintiff toward a different invoice, and the court concludes by reason of such payment that Plaintiff's claim hereunder is invalid, then Plaintiff hereby alternatively claims the invoice which it originally applied such payment toward as unpaid and due.

8.    Attached as Exhibit A, and incorporated herein by reference is a list of invoices toward which Defendant has previously acknowledged as not have a record of making a payment. Although the sum of such invoices approximates the total amount of invoices claimed by Plaintiff as outstanding, such invoices are not the specific invoices Plaintiff claims are outstanding.

9.    Monarch Logistics, LLC is an affiliate of Plaintiff. To the extent payments have been made by Defendant to Plaintiff toward invoices of Monarch Logistics, LLC or any other carrier, Plaintiff has already given credit toward amounts owed by Defendant to Plaintiff for such payments. As such, the amounts claimed by Plaintiff herein as owing are calculated after credit for such payments.

## FIRST CAUSE OF ACTION
### (Breach of Contract)

10.     Plaintiff hereby incorporates by reference each and every allegation contained in paragraphs 1 through 6 above, as though set forth in full.

11.     On or about May of 2004 and continuing through September 30, 2007, Defendant entered into the Contracts with Plaintiff whereby it was agreed that Defendant would perform, according to the terms of the Contracts, in the payment of monies to Plaintiff for transportation services rendered by Plaintiff.

12.     Plaintiff has performed all conditions, covenants and promises required to be performed in accordance with the terms and conditions of the Contracts when Defendant, summarily, and without just cause, breached, the terms of the Contracts by not performing under the terms and conditions of the Contracts.

13.     As a result of the breach by Defendant of the Contracts, Plaintiff has suffered damages in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
### (Negligent Misrepresentation)

14.     Plaintiff re-alleges and incorporates herein by this reference the allegations of paragraphs 1 thorough 10 above as though set forth in full.

15.     On or about May of 2004 through September 30, 2007, Defendant entered into the Contracts with Plaintiff whereby it was agreed that Defendant would perform according to the terms of the Contracts, in the payment of monies to Plaintiff by Defendant, for transportation services rendered by Plaintiff on behalf of Defendant.

16.     Plaintiff has performed all conditions, covenants and promises required to be performed in accordance with the terms and conditions of the Contracts when

Defendant, summarily, and without just cause, breached the terms of the Contracts by failing to make payment as required by it under the Contracts.

17. Defendant made untrue/unwarranted assertions, whose intent was to induce Plaintiff into the Contracts and which assertions Defendant knew to be untrue and unwarranted. Plaintiff would not have acted as it did without such assertions.

18. Defendant made untrue/unwarranted assertions to Plaintiff with knowledge of the untruthfulness of said assertions and with the knowledge of the effect that such misrepresentation would have upon Plaintiff because of their justified reliance thereupon.

19. The aforementioned conduct has caused damage to Plaintiff in and amount to be determined at trial.

## PRAYER

WHEREFORE, Plaintiff prays judgment as follows:

1. For damages in an amount to be determined at the time of trial;

2 For interest in an amount to be determined at trial;

3. For attorney's fees and costs related to the collection of the amount owed as described herein where determined appropriate;

Dated: November _____, 2008

RENKEMEYER CAMPBELL, LP

By: _____
Troy Renkemeyer, CPA, LLM
MO Bar #47371
7500 College Blvd., Suite 900
Overland Park, KS 66210
Telephone: 913-906-9810
Fax: 913-906-9840
trenkemeyer@rcwlawfirm.com
*Attorneys for Plaintiff*

# Exhibit A

| Invoice Number | Customer Name | Ship Date | Bill Date | Amount |
|---|---|---|---|---|
| 285 | Progressive Molded Products | 09/25/07 | 09/25/07 | 20.61 |
| 2794 | Delphi North Kansas City Cockpit Facilit | 01/13/05 | 01/13/05 | 1,828.50 |
| 2800 | Delphi North Kansas City Cockpit Facilit | 04/05/05 | 04/05/05 | 254.40 |
| 4022 | Delphi North Kansas City Cockpit Facilit | 01/06/05 | 04/05/05 | 1,828.50 |
| 4023 | Delphi North Kansas City Cockpit Facilit | 01/06/05 | 02/02/05 | 1,828.50 |
| 4025 | Delphi North Kansas City Cockpit Facilit | 01/06/05 | 02/26/05 | 1,149.04 |
| 4042 | Delphi North Kansas City Cockpit Facilit | 01/07/05 | 01/27/05 | 1,149.04 |
| 4075 | Delphi North Kansas City Cockpit Facilit | 01/10/05 | 01/27/05 | 1,828.50 |
| 4076 | Delphi North Kansas City Cockpit Facilit | 01/10/05 | 01/28/05 | 1,828.50 |
| 4376 | Delphi North Kansas City Cockpit Facilit | 01/31/05 | 03/16/05 | 1,828.50 |
| 4463 | Delphi North Kansas City Cockpit Facilit | 02/07/05 | 02/21/05 | 1,954.92 |
| 4534 | Delphi North Kansas City Cockpit Facilit | 02/11/05 | 06/27/05 | 1,819.88 |
| 4549 | Delphi North Kansas City Cockpit Facilit | 02/15/05 | 04/05/05 | 253.20 |
| 4584 | Delphi North Kansas City Cockpit Facilit | 02/16/05 | 02/22/05 | 1,143.62 |
| 4761 | Delphi North Kansas City Cockpit Facilit | 03/03/05 | 04/08/05 | 254.40 |
| 5112 | Delphi North Kansas City Cockpit Facilit | 03/24/05 | 03/28/05 | 1,790.00 |
| 5382 | Delphi North Kansas City Cockpit Facilit | 04/09/05 | 04/20/05 | 1,666.25 |
| 5703 | Delphi North Kansas City Cockpit Facilit | 05/05/05 | 05/06/05 | 232.20 |
| 5704 | Delphi North Kansas City Cockpit Facilit | 05/06/05 | 05/10/05 | 232.20 |
| 5972 | Delphi North Kansas City Cockpit Facilit | 05/13/05 | 05/17/05 | 1,170.72 |
| 6060 | Delphi North Kansas City Cockpit Facilit | 05/19/05 | 05/31/05 | 1,674.00 |
| 6131 | Delphi North Kansas City Cockpit Facilit | 05/23/05 | 05/27/05 | 2,307.22 |
| 6183 | Delphi North Kansas City Cockpit Facilit | 05/26/05 | 05/31/05 | 1,165.30 |
| 6299 | Delphi North Kansas City Cockpit Facilit | 06/06/05 | 06/29/05 | 1,666.25 |
| 6403 | Delphi North Kansas City Cockpit Facilit | 06/09/05 | 06/16/05 | 1,165.30 |
| 6435 | Delphi North Kansas City Cockpit Facilit | 06/14/05 | 06/29/05 | 231.13 |
| 7254 | Delphi North Kansas City Cockpit Facilit | 08/01/05 | 08/09/05 | 1,176.14 |
| 7259 | Delphi North Kansas City Cockpit Facilit | 07/29/05 | 08/10/05 | 2,328.68 |
| 7262 | Delphi North Kansas City Cockpit Facilit | 08/01/05 | 09/16/05 | 2,555.50 |
| 7263 | Delphi North Kansas City Cockpit Facilit | 08/01/05 | 08/09/05 | 2,495.50 |
| 249 | Delphi North Kansas City Cockpit Facilit | 12/16/05 | 12/16/05 | 247.05 |
| 250 | Delphi North Kansas City Cockpit Facilit | 12/12/05 | 12/12/05 | 410.07 |
| 274 | Delphi North Kansas City Cockpit Facilit | 11/30/06 | 11/30/06 | 2,783.42 |
| 276 | Delphi North Kansas City Cockpit Facilit | 11/30/06 | 11/30/06 | 2,783.42 |
| 277 | Delphi North Kansas City Cockpit Facilit | 11/30/06 | 11/30/06 | 2,253.74 |
| 278 | Delphi North Kansas City Cockpit Facilit | 11/30/06 | 11/30/06 | 2,253.74 |
| 14266 | Delphi North Kansas City Cockpit Facilit | 06/26/06 | 06/30/06 | 1,304.32 |
| 14267 | Delphi North Kansas City Cockpit Facilit | 06/26/06 | 06/30/06 | 1,304.32 |
| 14269 | Delphi North Kansas City Cockpit Facilit | 06/27/06 | 06/30/06 | 2,607.70 |
| 14270 | Delphi North Kansas City Cockpit Facilit | 06/27/06 | 06/30/06 | 2,607.70 |
| 14272 | Dura Systems | 06/30/06 | 06/30/06 | 2,223.97 |
| 14396 | Dura Systems | 07/03/06 | 07/18/06 | 2,223.97 |
| 14397 | Dura Systems | 07/05/06 | 07/31/06 | 2,223.97 |
| 14398 | Dura Systems | 07/06/06 | 07/13/06 | 2,223.97 |
| 14492 | JIT Service | 07/17/06 | 07/31/06 | 1,887.66 |
| 14520 | Dura Systems | 07/16/06 | 07/31/06 | 2,223.97 |
| 14713 | JIT Service | 07/24/06 | 07/31/06 | 1,887.66 |
| 14970 | JIT Service | 07/28/06 | 07/31/06 | 1,887.66 |
| 14991 | Delphi North Kansas City Cockpit Facilit | 07/29/06 | 08/25/06 | 2,253.74 |
| 14992 | Delphi North Kansas City Cockpit Facilit | 08/01/06 | 08/25/06 | 2,253.74 |
| 15064 | JIT Service | 08/08/06 | 08/17/06 | 1,887.66 |
| 15246 | JIT Service | 08/15/06 | 08/24/06 | 1,902.13 |

| | | | | | |
|---|---|---|---|---|---|
| 15289 | JIT Service | | 08/21/06 | 08/31/06 | 1,916.73 |
| 15532 | JIT Service | | 08/28/06 | 08/31/06 | 1,916.73 |
| 15859 | JIT Service | | 09/04/06 | 09/17/06 | 1,916.73 |
| 15966 | Delphi North Kansas City Cockpit Facilit | | 09/14/06 | 09/18/06 | 1,314.74 |
| 15987 | JIT Service | | 09/18/06 | 09/21/06 | 1,902.13 |
| 16128 | JIT Service | | 09/25/06 | 09/29/06 | 1,902.13 |
| 16162 | Delphi North Kansas City Cockpit Facilit | | 09/24/06 | 09/30/06 | 2,032.30 |
| 16297 | JIT Service | | 10/02/06 | 10/17/06 | 1,902.13 |
| 16442 | JIT Service | | 10/09/06 | 10/17/06 | 1,829.39 |
| 16495 | Delphi North Kansas City Cockpit Facilit | | 10/12/06 | 10/31/06 | 1,937.59 |
| 16665 | Delphi North Kansas City Cockpit Facilit | | 10/16/06 | 10/27/06 | 1,937.59 |
| 16666 | Delphi North Kansas City Cockpit Facilit | | 10/17/06 | 10/27/06 | 1,937.59 |
| 16669 | Delphi North Kansas City Cockpit Facilit | | 10/19/06 | 10/27/06 | 1,937.59 |
| 17137 | Delphi North Kansas City Cockpit Facilit | | 11/10/06 | 11/26/06 | 1,198.12 |
| 17340 | Delphi North Kansas City Cockpit Facilit | | 06/05/06 | 06/30/06 | 1,293.80 |
| 17341 | Delphi North Kansas City Cockpit Facilit | | 06/05/06 | 06/30/06 | 1,304.32 |
| 17342 | Delphi North Kansas City Cockpit Facilit | | 06/05/06 | 06/30/06 | 1,304.32 |
| 17540 | Delphi North Kansas City Cockpit Facilit | | 11/29/06 | 11/30/06 | 1,921.78 |
| 19854 | Dura Systems | | 03/27/07 | 03/29/07 | 2,391.71 |
| 20038 | Delphi North Kansas City Cockpit Facilit | | 04/03/07 | 04/11/07 | 2,815.35 |
| 20752 | Delphi North Kansas City Cockpit Facilit | | 05/14/07 | 05/23/07 | 2,637.38 |
| 20883 | DELPHI-T&I - NORTH KANSAS CITY | | 05/22/07 | 05/30/07 | 2,637.38 |
| 21266 | DELPHI-T&I - NORTH KANSAS CITY | | 06/12/07 | 06/19/07 | 2,637.38 |
| 21270 | Dura Systems | | 06/11/07 | 06/18/07 | 2,401.02 |
| 21550 | DELPHI-T&I - NORTH KANSAS CITY | | 08/25/07 | 08/28/07 | 2,637.38 |
| 21554 | DELPHI-T&I - NORTH KANSAS CITY | | 08/26/07 | 08/29/07 | 2,637.38 |
| 22427 | Dura Systems | | 08/13/07 | 08/20/07 | 2,437.77 |
| 22436 | Delphi North Kansas City Cockpit Facilit | | 08/15/07 | 08/27/07 | 1,304.32 |
| 22602 | Delphi North Kansas City Cockpit Facilit | | 08/20/07 | 08/27/07 | 1,293.80 |
| 22833 | DELPHI-T&I - NORTH KANSAS CITY | | 09/08/07 | 09/17/07 | 2,659.42 |
| 24000577MRCI-mon 29 - RYDER | | | 2/24/2005 | 4/5/2006 | 63,104.52 |

**Sub-Total**          **$ 207,263**

**Short-Paid Invoices (see Short-Pay tab)**    23,704.82

**Total Outstanding**        **$ 230,968**

# **Exhibit B**

# KORTENHOF
# McGLYNN LLC

**MAUREEN A. MCGLYNN**

June 23, 2010

**VIA ELECTRONIC TRANSMISSION**
**and U. S. MAIL**
Mr. Troy Renkemeyer
Renkemeyer Campbell, LP
7500 College Blvd., Suite 900
Overland Park, KS 66210

> **Re:   FKMT, LLC f/k/a Monarch Transport, LLC v. Delphi Corporation (n/k/a DPH Holdings Corp.), Case No. 0816-CV39025**

Dear Troy:

I have been asked to send this letter on behalf of DPH Holdings Corp. ("DPH Holdings") and certain of its affiliated reorganized debtors in their jointly administered bankruptcy cases (together with DPH Holdings, the "Reorganized Debtors") regarding the above-captioned proceeding (the "Proceeding"). As you are aware, on October 8, 2005, Delphi Corporation and certain of its affiliates (the "Debtors"), predecessors of the Reorganized Debtors, filed voluntary petitions in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as then amended (the "Bankruptcy Code").

As set forth in our pending Motion to Dismiss, FKMT, LLC (the "Plaintiff") is precluded from continuing the Proceeding by virtue of the Bankruptcy Court's Order Approving Modifications Under 11 U.S.C. § 1127(b) to (I) First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-In-Possession, as Modified and (II) Confirmation Order (Docket No. 12359) (Docket No. 18707) (the "Modification Approval Order"), entered on July 30, 2009. Specifically, absent relief from the Bankruptcy Court, your client is enjoined from taking action in the Proceeding pursuant to paragraph 22 of the Bankruptcy Court's Modification Approval Order and Article 11.14 of the Defendant's plan of reorganization (the "Modified Plan").

Moreover, because your client failed to file either a proof of claim or an administrative expense claim form in accordance with the procedures approved by the Bankruptcy Court evidencing the liabilities asserted in the Proceeding, your client's claim is barred and has been disallowed and discharged under the Modification Approval Order. By way of background, the Bankruptcy Court established three separate bar dates during the course of Delphi's chapter 11

---

cases. The first bar date was July 31, 2006 and applied to claims arising before the Debtors filed for chapter 11 on October 8, 2005.[1] As described in more detail below, the bar dates established by this Court's orders for asserting administrative expense claims were July 15, 2009[2] for claims arising through May 31, 2009, and November 5, 2009 for claims arising through October 6, 2009. (See Modification Procedures Order ¶ 38; Modification Approval Order ¶ 47; Modified Plan §§ 10.2, 10.5.) Because your client has not filed a proof of claim or an administrative expense claim as required by the Bankruptcy Court, the claims asserted in the Proceeding against my client have been disallowed and expunged. Accordingly, please immediately file a stipulation dismissing your case. Alternatively, DPH Holdings will be forced to exercise its legal alternatives including, but not limited to, commencing proceedings in the Bankruptcy Court to enforce the Bankruptcy Court's Modification Approval Order and Modified Plan against you.

As a courtesy, I have enclosed a summary of the relevant procedural history and applicable provisions from the plan of reorganization and the Bankruptcy Court's orders. For a copy of relevant orders and the Modified Plan, please go to http://www.dphholdingsdocket.com.

Thank you for your immediate attention to this matter.

Sincerely,

Maureen A. McGlynn

MAM:ms
Enclosures
cc: Tom Franklin

---

[1] See Order Under 11 U.S.C. §§ 107(b), 501, 502, And 1111(a) And Fed R. Bankr. P. 1009, 2002(a)(7), 3003(c)(3), And 5005(a) Establishing Bar Dates For Filing Proofs Of Claim And Approving Form And Manner Of Notice Thereof, entered by the Bankruptcy Court on April 12, 2006 (Docket No. 3206) (the "Bar Date Order") setting a bar date of July 31, 2006 for creditors to file proofs of claim in Delphi's chapter 11 cases.

[2] The July 15, 2009 bar date was established pursuant to paragraph 38 of the Bankruptcy Court's order entered on June 16, 2009 (Docket No. 17032) (the "Modification Procedures Order"). On July 15, 2009, this Court entered the Stipulation And Agreed Order Modifying Paragraph 38 Of Modification Procedures Order Establishing Administrative Expense Bar Date (Docket No. 18259) to provide that paragraph 38 of the Modification Procedures Order should be amended to require parties to submit an Administrative Expense Claim Form for Claims for the period from the commencement of these cases through May 31, 2009 rather than through June 1, 2009.

## SUMMARY OF PROCEDURAL HISTORY AND APPLICABLE PROVISIONS

On March 17, 2006, the Debtors filed a motion with the Bankruptcy Court seeking entry of an order establishing bar dates for all creditors to file proofs of claim against the Debtors in their chapter 11 cases.  On April 12, 2006, the Bankruptcy Court granted the motion pursuant to the Order Under 11 U.S.C. §§ 107(b), 501, 502, And 1111(a) And Fed R. Bankr. P. 1009, 2002(a)(7), 3003(c)(3), And 5005(a) Establishing Bar Dates For Filing Proofs Of Claim And Approving Form And Manner Of Notice Thereof (Docket No. 3206) (the "Bar Date Order")[1] setting a bar date of July 31, 2006 for creditors to file proofs of claim in Delphi's chapter 11 cases.  Pursuant to paragraph 2 of the Bar Date Order:

[A]ll persons and entities, including, without limitation, individuals, partnerships, limited liability companies, corporations, estates, trusts, unions, indenture trustees, the United States Trustee, and governmental units (individually, a "Person" or "Entity," and collectively, "Persons" or "Entities" or the "Creditors") holding or wishing to assert claims (as such term is defined in 11 U.S.C. § 101(5)) against the Debtors (collectively, the "Claims") shall file a separate, completed, and executed proof of claim form (either in the form mailed to Creditors or otherwise conforming substantially to Form No. 10 of the Official Bankruptcy Forms, a copy of which is attached as Exhibit A hereto) on or before 5:00 p.m., Eastern Standard Time on July 31, 2006 (the "General Bar Date").

Bar Date Order ¶ 2.

In connection with the First Amended Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession (As Modified) (Docket No. 17030) (the "Modified Plan"), the Debtors sought an order from the Bankruptcy Court, among other things, establishing a bar date for the submission of claims asserting administrative expense priority under 11 U.S.C. § 503(b) and approving the Modified Plan. In connection therewith, and after notice and a hearing, on June 16, 2009, the Bankruptcy Court entered that certain Order (A)(I) Approving Modifications To Debtors' First Amended Plan Of Reorganization (As Modified) And Related Disclosures And Voting Procedures And (II) Setting Final Hearing Date To Consider Modifications To Confirmed First Amended Plan Of Reorganization And (B) Setting Administrative Expense Claims Bar Date And Alternative Transaction Hearing Date (Docket No. 17032) (the "Modification Procedures Order"). Pursuant to paragraphs 38 and 41 of the Modification Procedures Order:

[A]ny party that wishes to assert an administrative claim under 11 U.S.C. § 503(b) for the period from the commencement of these cases through June 1, 2009 shall file a proof of administrative expense (each, an "Administrative Expense Claim Form") for the purpose of asserting an administrative expense request, including any substantial contribution claims (each, an "Administrative Expense Claim" or "Claim") against any of the Debtors. July 15, 2009 at 5:00 p.m. prevailing Eastern time shall be the deadline for submitting all Administrative Expense

---

[1]    All references herein to the Bankruptcy Court Docket can be found at www.dphholdingsdocket.com

Claims (the "[Initial] Administrative Expense Bar Date") for the period from the commencement of these cases through June 1, 2009.

Modification Procedures Order ¶ 38.

[A]ny party that is required but fails to file a timely Administrative Expense Claim Form shall be forever barred, estopped and enjoined from asserting such claim against the Debtors, and the Debtors and their property shall be forever discharged from any and all indebtedness, liability, or obligation with respect to such claim.

Modification Procedures Order ¶ 41.

On July 30, 2009, the Bankruptcy Court entered its Order Approving Modifications Under 11 U.S.C. § 1127(b) to (I) First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-In-Possession, as Modified and (II) Confirmation Order (Docket No. 12359) (Docket No. 18707) (the "Modification Approval Order"), which confirmed the Modified Plan. On October 6, 2009, the Modified Plan was substantially consummated and became effective. On that date, the Debtors emerged from chapter 11 as reorganized entities (the "Reorganized Debtors") and many of the corporate entities changed their corporate names.

Paragraph 47 of the Modification Approval Order provides in part (emphasis added):

[R]equests for payment of an Administrative [Expense] Claim (other than as set forth in the Modified Plan or otherwise contemplated by the Master Disposition Agreement, i.e., for such claims arising on or after June 1, 2009) must be filed, in substantially the form of the Administrative Claim Request Form attached as Exhibit 10.5 to the Modified Plan, with the Claims Agent and served on counsel for the Debtors and the Creditors' Committee no later than 30 days notice of after the Effective Date is filed on the docket of the Chapter 11 Cases [November 5, 2009].[2] Any request for payment of an Administrative Claim pursuant to this paragraph that is not timely filed and served shall be disallowed automatically without the need for any objection from the Debtors or the Reorganized Debtors.

Modification Approval Order ¶ 47 (emphasis added). In addition, the Modified Plan provides that:

[T]he distributions and rights that are provided in [the Modified] Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims and Causes of Action, whether known or unknown, against, liabilities of, liens on, obligations of, rights against, and Interests in the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to [the Modified] Plan on account of such Claims, rights, and Interests, including, but not limited to, Claims and Interests that arose before the Effective Date . . . .

---

[2]    The Effective Date of the Plan was October 6, 2009, which means Bar Date for Admin Claims that arose after June 1, 2009, was November 5, 2009.

Modified Plan Art. 11.2.

[T]he satisfaction, release, and discharge pursuant to [Article XI of the Modified Plan] shall act
as an injunction against any Person commencing or continuing any action, employment of
process, or act to collect, offset, or recover any Claim, Interest, or Cause of Action satisfied,
released, or discharged under [the Modified] Plan to the fullest extent authorized or provided by
the Bankruptcy Code . . . .

Modified Plan Art. 11.14 (emphasis added). Similarly, paragraph 22 of the Modification
Approval Order provides that:

[T]he Debtors and all Persons shall be precluded and permanently enjoined on and after the
Effective Date from (a) commencing or continuing in any manner any Claim, action,
employment of process, or other proceeding of any kind with respect to any Claim, Interest,
Cause of Action, or any other right or Claim against the Reorganized Debtors, which they
possessed or may possess prior to the Effective Date, (b) the enforcement, attachment, collection,
offset, recoupment, or recovery by any manner or means of any judgment, award, decree, order,
or otherwise with respect to any Claim, Interest, Cause of Action, or any other right or Claim
against the Reorganized Debtors, which they possessed or may possess prior to the Effective
Date, (c) creating, perfecting, or enforcing any encumbrance of any kind with respect to any
Claim, Interest, Cause of Action, or any other right or Claim against the Reorganized Debtors,
which they possessed or may possess prior to the Effective Date, and (d) asserting any Claims,
Interests, or Causes of Action that are satisfied, discharged, released, or subject to exculpation
hereby or by the Modified Plan.

Modification Approval Order ¶ 22.

3

# **Exhibit C**

IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                        :
        In re                           :    Chapter 11
                                        :
DELPHI CORPORATION, et al.,             :    Case No. 05-44481 (RDD)
                                        :
                        Debtors.        :    (Jointly Administered)
                                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
```

AFFIDAVIT OF SERVICE

I, Evan Gershbein, being duly sworn according to law, depose and say that I am employed by Kurtzman Carson Consultants, LLC, the Court appointed claims and noticing agent for the Debtors in the above-captioned cases.

On or before April 20, 2006, I caused to be served the documents listed below upon the parties listed on Exhibit A hereto via postage pre-paid U.S. mail:

1) Notice of Bar Date for Filing Proofs of Claim [a copy of which is attached hereto as Exhibit B]

2) Proof of Claim form [a copy of which is attached hereto as Exhibit C]

Dated: April 28, 2006

                                    _____/s/ Evan Gershbein_____
                                    Evan Gershbein

Subscribed and sworn to (or affirmed) before me on this 28th day of April, 2006, by Evan Gershbein, personally known to me or proved to me on the basis of satisfactory evidence to be the person who appeared before me.

Signature : _____/s/ Amy Lee Huh_____

Commission Expires: _____3/15/09_____

# EXHIBIT A

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Monarch Mfg Inc | | 228 Byers Rd Ste 200 | Rmt Chg Per Ltr 05 06 04 Am | | Miamiburg | OH | 45342 | |
| Monarch Mfg Inc | | 7728 Service Ctr Dr | | | West Chester | OH | 45069 | |
| Monarch Mfg Inc | Accounts Payable | 2 Richlynn Dr | | | Belcamp | MD | 21017 | |
| Monarch Mfg Inc Eft Arkay Industries | | L 2611 | | | Columbus | OH | 43260 | |
| Monarch Services | | Calle 4 792 13 | Saltillo Coah 25107 | | | | | Mexico |
| Monarch Services Eft | | Cuarta Avenida 792 B | Nazario Ortiz Garza Saltillo | | Coah | | | Mexico |
| Monarch Services Sc | | Calle 4a No 795 B | Fracc Nazario Ortiz Garza | | Saltillo | | 25107 | Mexico |
| Monarch Services SC | Col Nazario Ortiz Garza | Cuarta Ave 792 B | | | Saltillo Coah | | 25107 | Mexico |
| Monarch Tool & Gage Co | | 23450 Telegraph Rd | | | Southfield | MI | 48034 | |
| Monarch Tool & Gauge Co | | 23450 Telegraph Rd | | | Southfield | MI | 48034 | |
| Monarch Tool and Gauge Co | | 23450 Telegraph Rd | | | Southfield | MI | 48034 | |
| Monarch Transport | Randy Shepperd | 1616 Argentine Blvd | | | Kansas City | KS | 66105 | |
| Monarch Transport Llc | | 1616 Argentine Blvd | Rmt Chg 5 11 05 Cm | | Kansas City | KS | 66105 | |
| Monarch Transport Llc | | PO Box 413231 | | | Kansas City | MO | 64141-3231 | |
| Monarch Water Systems | | 1230 Burnett Dr | | | Xenia | OH | 45385 | |
| Monarch Water Systems Inc | | 1230 Burnett Dr | | | Xenia | OH | 45385 | |
| Monarch Water Systems Inc Eft | | 1230 Burnett Dr | | | Xenia | OH | 45385 | |
| Monarch Welding & Engineering | | 1566 Tech Pk Dr | | | Bay City | MI | 48706 | |
| Monarch Welding & Engineering | | 23538 Pinewood St | | | Warren | MI | 48091-3122 | |
| Monarch Welding & Engineering | | 519 W Hackley Ave | | | Muskegon | MI | 49444 | |
| Monarch Welding & Engineering | | Inc | 1566 Tech Pk Dr | | Bay City | MI | 48706 | |
| Monarch Welding & Engineering Inc | | 23538 Pinewood | | | Warren | MI | 48091 | |
| Monard Elsa | | 913 Royal Ave | | | Royal Oak | MI | 48073 | |
| Monast Karen | | 99 Dean Rd | | | Spencerport | NY | 14559 | |
| Monast Karen | | 99 Dean Rd | | | Spencerport | NY | 14559 | |
| Monaster Michael | | 1011 W Grove Ctr St | | | West Covina | CA | 91790 | |
| Monastesse Leslie W | | 1454 Kwana Ct | | | Prescott | AZ | 86301-4447 | |

# Exhibit D

IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x
                                        :
       In re                            :    Chapter 11
                                        :
DELPHI CORPORATION, et al.,             :    Case No. 05-44481 (RDD)
                                        :
                    Debtors.            :    (Jointly Administered)
                                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x
```

AFFIDAVIT OF SERVICE

I, Evan Gershbein, being duly sworn according to law, depose and say that I am employed by Kurtzman Carson Consultants LLC, the Court appointed claims and noticing agent for the Debtors in the above-captioned cases. I submit this Affidavit in connection with the service of the solicitation materials for the **First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-In-Possession (As Modified)** [Docket No. 17030] ("the Plan").

On December 1, 2005, the Court signed and entered an Order Pursuant to 28 U.S.C. § 156(c) Authorizing Retention and Appointment of Kurtzman Carson Consultants LLC as Claims, Noticing and Balloting Agent for Clerk of Bankruptcy Court [Docket No. 1374] designating KCC as the official Balloting Agent.

KCC is charged with the duty of printing and distributing Solicitation Packages to creditors and other interested parties pursuant to the instructions set forth in the **Order (A)(I) Approving Modifications to Debtors' First Amended Plan of Reorganization (as Modified) and Related Disclosures and Voting Procedures and (II) Setting Final Hearing Date to Consider Modifications to Confirmed First Amended Plan of Reorganization and (B) Setting Administrative Expense Claims Bar Date and Alternative Transaction Hearing Date ("Modification Procedures Order")** [Docket No. 17032] ("Modification Procedures Order") as entered by the Court on June 16, 2009.

The various solicitation materials consist of the following documents:

1) Ballot for Accepting or Rejecting First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-In-Possession (As Modified) (Class A Secured Claims) ("Class A Ballot") (attached hereto as Exhibit A);

2) Ballot for Accepting or Rejecting First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-In-Possession (As Modified) (Class C-1 General Unsecured Claims) ("Class C-1 Ballot") (attached hereto as Exhibit B);



3) Ballot for Accepting or Rejecting First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-In-Possession (As Modified) (Class C-2 Pension Benefit Guaranty Corporation Claims) ("Class C-2 Ballot") (attached hereto as <u>Exhibit C</u>);

4) Ballot for Accepting or Rejecting First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-In-Possession (As Modified) (Class D General Motors Corporation Claim) ("Class D Ballot") (attached hereto as <u>Exhibit D</u>);

5) Notice of (1) Approval of Supplement; (2) Hearing on Modifications to Plan; (3) Deadline and Procedures for Filing Objections to Modifications of Plan; (4) Deadline and Procedures for Temporary Allowance of Certain Claims for Voting Purposes; (5) Treatment of Certain Unliquidated, Contingent, or Disputed Claims for Noticing, Voting, and Distribution Purposes; (6) Record Date; (7) Voting Deadline for Receipt of Ballots; and (9) Proposed Releases, Exculpation, and Injunction in Modified Plan ("Final Modification Hearing Notice") (attached hereto as <u>Exhibit E</u>);

6) a letter from the Delphi Corporation Official Committee of Unsecured Creditors ("Creditors' Committee Letter") (attached hereto as <u>Exhibit F</u>);

7) First Amended Disclosure Statement Supplement with Respect to First Amended Plan of Reorganization (As Modified), Modification Procedures Order and December 10, 2007 Solicitation Procedures Order, in CD-ROM format ("CD-ROM")

8) Notice of Non-Voting Status with Respect to Certain Claims and Interests ("Notice of Non-Voting Status") (attached hereto as <u>Exhibit G</u>);

9) Notice to Unimpaired Creditors of (I) Filing of Proposed Modified Plan of Reorganization, (II) Treatment of Claims Under Modified Plan, (III) Hearing on Approval of Modified Plan, and (IV) Deadline and Procedures for Filing Objections Thereto ("Unimpaired Notice") (attached hereto as <u>Exhibit H</u>);

10) a memorandum from Kurtzman Carson Consultants to additional notice parties of ballot recipients ("Ballot Notice Party Memo") (attached hereto as <u>Exhibit I</u>);

11) Notice of Bar Date for Filing Proofs of Administrative Expense ("Administrative Bar Date Notice") (attached hereto as <u>Exhibit J</u>); and

12) Administrative Expense Claim Form ("Administrative Expense Claim Form") (attached hereto as <u>Exhibit K</u>).

On or before June 20, 2009, I caused to be served a personalized Class A Ballot, Final Modification Hearing Notice, Creditors' Committee Letter, CD-ROM, Administrative Bar Date Notice, Administrative Expense Claim Form and a pre-addressed, postage pre-paid return envelope upon the parties listed on <u>Exhibit L</u> via postage pre-paid U.S. mail.

On or before June 20, 2009, I caused to be served a personalized Class C-1 Ballot, Final Modification Hearing Notice, Creditors' Committee Letter, CD-ROM, Administrative Bar Date Notice, Administrative Expense Claim Form and a pre-addressed, postage pre-paid return envelope upon the parties listed on <u>Exhibit M</u> via postage pre-paid U.S. mail.

On or before June 20, 2009, I caused to be served a personalized Class C-2 Ballot, Final Modification Hearing Notice, Creditors' Committee Letter, CD-ROM, Administrative Bar Date Notice, Administrative Expense Claim Form and a pre-addressed, postage pre-paid return envelope upon the party listed on <u>Exhibit N</u> via postage pre-paid U.S. mail.

On or before June 20, 2009, I caused to be served a personalized Class D Ballot, Final Modification Hearing Notice, Creditors' Committee Letter, CD-ROM, Administrative Bar Date Notice, Administrative Expense Claim Form and a pre-addressed, postage pre-paid return envelope upon the party listed on <u>Exhibit O</u> via postage pre-paid U.S. mail.

On or before June 20, 2009, I caused to be served the Final Modification Hearing Notice, Creditors' Committee Letter, CD-ROM, Administrative Bar Date Notice and Administrative Expense Claim Form upon the parties listed on <u>Exhibit P</u> via postage pre-paid U.S. mail.

On or before June 20, 2009, I caused to be served the Final Modification Hearing Notice, Notice of Non-Voting Status, Administrative Bar Date Notice and Administrative Expense Claim Form upon the parties listed on <u>Exhibit Q</u> via postage pre-paid U.S. mail.

On or before June 20, 2009, I caused to be served the Final Modification Hearing Notice, Creditors' Committee Letter, CD-ROM, Unimpaired Notice, Administrative Bar Date Notice and Administrative Expense Claim Form upon the parties listed on <u>Exhibit R</u> via postage pre-paid U.S. mail.

On or before June 20, 2009, I caused to be served the Final Modification Hearing Notice, Creditors' Committee Letter, CD-ROM, Notice of Non-Voting Status, Administrative Bar Date Notice and Administrative Expense Claim Form upon the parties listed on <u>Exhibit S</u> via postage pre-paid U.S. mail.

On or before June 20, 2009, I caused to be served the Final Modification Hearing Notice, Creditors' Committee Letter, CD-ROM, Ballot Notice Party Memo, Administrative Bar Date Notice and Administrative Expense Claim Form upon the parties listed on <u>Exhibit T</u> via postage pre-paid U.S. mail.

On or before June 20, 2009, I caused to be served the Final Modification Hearing
Notice, Administrative Bar Date Notice and Administrative Expense Claim Form upon the
parties listed on <u>Exhibit U</u> via postage pre-paid U.S. mail.

Dated: June 23, 2009

_____
Evan Gershbein

State of California
County of Los Angeles

Subscribed and sworn to (or affirmed) before me on this 23rd day of June, 2009, by
Evan Gershbein, proved to me on the basis of satisfactory evidence to be the person who
appeared before me.

Signature _____

Commission Expires: _10-1-09_

```
L. MAREE SANDERS
Commission # 1610322
Notary Public - California
Los Angeles County
My Comm. Expires Oct 1, 2009
```

4

# EXHIBIT U

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | Address4 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|---|
| MONARCH MACHINE TOOL INC | | PO BOX 4863 | | | | UTICA | NY | 13501 | |
| MONARCH MACHINE WORKS INC | | 110 BROADWAY | | | | NORTH ATTLEBORO | MA | 02760 | |
| MONARCH MACHINE WORKS INC | | 110 BROADWAY | | | | NORTH ATTLEBORO | MA | 02761 | |
| MONARCH MACHINE WORKS INC | | PO BOX 807 | | | | NORTH ATTLEBORO | MA | 02761 | |
| MONARCH MANUFACTURING INC | | 2 RICHLYNN DR | | | | BELCAMP | MD | 21017 | |
| MONARCH MARKING SYSTEMS INC | | 11034 SHADY TRL STE 104 | | | | DALLAS | TX | 75229 | |
| MONARCH MARKING SYSTEMS INC | | 1405 CENTRE CIRCLE DR | | | | DOWNERS GROVE | IL | 60515 | |
| MONARCH MARKING SYSTEMS INC | | 25 S ALEX RD | | | | MIAMISBURG | OH | 45342 | |
| MONARCH MARKING SYSTEMS INC | | 25 SOUTH ALEX | | | | MIAMISBURGH | OH | 45342 | |
| MONARCH MARKING SYSTEMS INC | | 34000 CAPITOL AVE | | | | LIVONIA | MI | 48150 | |
| MONARCH MARKING SYSTEMS INC | | IDENTIFICATION SYSTEMS DIV | 1 KOHNLE DR | | | MIAMISBURG | OH | 45342-3632 | |
| MONARCH MARKING SYSTEMS INC | | PITNEY BOWES CO | 7644 MCEWEN RD | | | CENTERVILLE | OH | 45459 | |
| MONARCH MARKING SYSTEMS INC | | PO BOX 608 | | | | DAYTON | OH | 45401-0608 | |
| MONARCH MARKING SYSTEMS INC | | PRAXAR MONARCH | PO BOX 945687 | | | ATLANTA | GA | 30394 | |
| MONARCH MARKING SYSTEMS INC | C/O COOLIDGE WALL WOMSLEY & LOMBARD | SHANNON L COSTELLO | 33 WEST FIRST ST | STE 600 | | DAYTON | OH | 45402-1289 | |
| MONARCH MARKING SYSTEMS INC | C/O COOLIDGE WALL WOMSLEY & LOMBARD | TIM HOFFMAN | 33 WEST FIRST ST | STE 600 | | DAYTON | OH | 45402-1289 | |
| MONARCH MFG | | 7728 SERVICE CTR DR | | | | WEST CHESTER | OH | 45069 | |
| MONARCH MFG INC | | 228 BYERS RD STE 200 | RMT CHG PER LTR 05 06 04 AM | | | MIAMIBURG | OH | 45342 | |
| MONARCH MFG INC | | 7728 SERVICE CTR DR | | | | WEST CHESTER | OH | 45069 | |
| MONARCH MFG INC EFT | ACCOUNTS PAYABLE | 2 RICHLYNN DR | | | | BELCAMP | MD | 21017 | |
| MONARCH MFG INC EFT ARKAY INDUSTRIES | | L 2611 | | | | COLUMBUS | OH | 43260 | |
| MONARCH SERVICES | | CALLE 4 792 13 | SALTILLO COAH 25107 | | | | | | MEXICO |
| MONARCH SERVICES EFT | | CUARTA AVENIDA 792 B | NAZARIO ORTIZ GARZA SALTILLO | | | COAH | | | MEXICO |
| MONARCH SERVICES SC | | CALLE 4A NO 795 B | FRACC NAZARIO ORTIZ GARZA | | | SALTILLO | | 25107 | MEXICO |
| MONARCH SERVICES SC | COL NAZARIO ORTIZ GARZA | CUARTA AVE 792 B | | | | SALTILLO COAH | | 25107 | MEXICO CP |
| MONARCH TOOL & GAGE CO | | 23450 TELEGRAPH RD | | | | SOUTHFIELD | MI | 48034 | |
| MONARCH TOOL & GAUGE CO | | 23450 TELEGRAPH RD | | | | SOUTHFIELD | MI | 48034 | |
| MONARCH TOOL AND GAUGE CO | | 23450 TELEGRAPH RD | | | | SOUTHFIELD | MI | 48034 | |
| MONARCH TRANSPORT | RANDY SHEPPERD | 1616 ARGENTINE BLVD | | | | KANSAS CITY | KS | 66105 | |
| MONARCH TRANSPORT LLC | | PO BOX 413231 | | | | KANSAS CITY | MO | 64141-3231 | |
| MONARCH TRANSPORT LLC | | 1616 ARGENTINE BLVD | RMT CHG 5 11 05 CM | | | KANSAS CITY | KS | 66105 | |
| MONARCH TRANSPORT LLC | | PO BOX 413231 | | | | KANSAS CITY | MO | 64141-3231 | |
| MONARCH WATER SYSTEMS | | 1230 BURNETT DR | | | | XENIA | OH | 45385 | |
| MONARCH WATER SYSTEMS | | 1230 BURNETT DR | | | | XENIA | OH | 45385 | |
| MONARCH WATER SYSTEMS INC | | 1230 BURNETT DR | | | | XENIA | OH | 45385 | |
| MONARCH WATER SYSTEMS INC EFT | | 1230 BURNETT DR | | | | XENIA | OH | 45385 | |
| MONARCH WELDING & ENGINEERING | | 1566 TECH PK DR | | | | BAY CITY | MI | 48706 | |
| MONARCH WELDING & ENGINEERING | | 23538 PINEWOOD ST | | | | WARREN | MI | 48091-3122 | |
| MONARCH WELDING & ENGINEERING | | 519 W HACKLEY AVE | | | | MUSKEGON | MI | 49444 | |
| MONARCH WELDING & ENGINEERING | | INC | 1566 TECH PK DR | | | BAY CITY | MI | 48706 | |
| MONARCH WELDING & ENGINEERING INC | | 23538 PINEWOOD | | | | WARREN | MI | 48091 | |
| MONARCH WELDING & ENGINEERING INC | | 23538 PINEWOOD ST | | | | WARREN | MI | 48091-3122 | |
| MONARCH WELDING & ENGINEERING INC | | 1566 TECH PARK DR | | | | BAY CITY | MI | 48706 | |
| MONARD ELSA | | 913 ROYAL AVE | | | | ROYAL OAK | MI | 48073 | |
| MONAST KAREN | | 99 DEAN RD | | | | SPENCERPORT | NY | 14559 | |
| MONAST KAREN | | 99 DEAN RD | | | | SPENCERPORT | NY | 14559 | |
| MONAST, KAREN | | 99 DEAN RD | | | | SPENCERPORT | NY | 14559 | |
| MONASTER MICHAEL | | 1011 W GROVE CTR ST | | | | WEST COVINA | CA | 91790 | |
| MONASTESSE LESLIE W | | 1454 KWANA CT | | | | PRESCOTT | AZ | 86301-4447 | |
| MONASTESSE LINDA S | | 2010 BROUGHTON SPRING RD | | | | SOUTHSIDE | AL | 35907-5309 | |
| MONASTESSE WILLIAM | | 222 N FLORENCE | | | | FULLERTON | CA | 92833 | |
| MONCADA NANCY | | 55 S PENINGTON RD | | | | NEW BRUNSWICK | NJ | 08901 | |
| MONCADA NANCY | | 55 S PENINGTON RD | | | | NEW BRUNSWICK | NJ | 08901 | |
| MONCREE JEFFERY | | 1037 DENNISON AVE | | | | DAYTON | OH | 45408 | |
| MONCRIEF CAROLYN | | 4222 BROWNELL BLVD | | | | FLINT | MI | 48504 | |

# **Exhibit E**

IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                   :

|  |  |  |
|---|---|---|
| In re | : | Chapter 11 |
|  | : |  |
| DELPHI CORPORATION, et al., | : | Case No. 05-44481 (RDD) |
|  | : |  |
| Debtors. | : | (Jointly Administered) |
|  | : |  |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

AFFIDAVIT OF SERVICE

I, Evan Gershbein, being duly sworn according to law, depose and say that I am employed by Kurtzman Carson Consultants LLC, the Court appointed claims and noticing agent for the Debtors in the above-captioned cases.

On or before October 9, 2009, I caused to be served the document listed below upon the parties listed on Exhibit A hereto via postage pre-paid U.S. mail:

Notice of (A) Order Approving Modifications to First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affilicates, Debtors and Debtors-in-Possession and (B) Occurrence of Effective Date (Docket No. 18958)

On or before October 13, 2009, I caused to be served the appropriate number of copies of the document listed below (i) upon the service list attached hereto as Exhibit B, for subsequent distribution to beneficial holders of Common Stock, CUSIP 172737 10 8; 6 ½% Notes due 2009, CUSIP 247126 AB 1; 7 1/8% Notes due 2029, CUSIP 247126 AC 9; 6.55% Notes due 2006, CUSIP 247126 AD 7; 6.50% Notes due 2013, CUSIP 247126 AE 5; 8 ¼% Adjustable Rate Subordinated Note due 2033, CUSIP 247126 AF 2; and 6.197% Junior Subordinated Note due 2033, CUSIP 247126 AG 0, via Overnight mail and hand delivery; (ii) upon the parties set forth on Exhibit C via postage pre-paid U.S. Mail; (iii) upon the registered holders of Common Stock listed on Exhibit D, provided by Computershare as transfer agent, via postage pre-paid U.S. Mail; and (iv) upon the service list attached hereto as Exhibit E via Electronic mail.

Notice of (A) Order Approving Modifications to First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affilicates, Debtors and Debtors-in-Possession and (B) Occurrence of Effective Date (Docket No. 18958)

0544481091015000000000001

Dated: October 14, 2009

                                        */s/ Evan Gershbein*

                                          Evan Gershbein

State of California
County of Los Angeles

Subscribed and sworn to (or affirmed) before me on this 14th day of October, 2009, by Evan Gershbein, proved to me on the basis of satisfactory evidence to be the person who appeared before me.

Signature:  */s/ Shannon J. Spencer*

Commission Expires: *6/20/10*

2

# EXHIBIT A

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | Address4 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|---|
| MONARCH MFG | | 7728 SERVICE CTR DR | | | | WEST CHESTER | OH | 45069 | |
| MONARCH MFG INC | | 228 BYERS RD STE 200 | RMT CHG PER LTR 05 06 04 AM | | | MIAMIBURG | OH | 45342 | |
| MONARCH MFG INC | | 7728 SERVICE CTR DR | | | | WEST CHESTER | OH | 45069 | |
| MONARCH MFG INC | ACCOUNTS PAYABLE | 2 RICHLYNN DR | | | | BELCAMP | MD | 21017 | |
| MONARCH MFG INC EFT ARKAY INDUSTRIES | | L 2611 | | | | COLUMBUS | OH | 43260 | |
| MONARCH SERVICES | | CALLE 4 792 13 | SALTILLO COAH 25107 | | | | | | MEXICO |
| MONARCH SERVICES EFT | | CUARTA AVENIDA 792 B | NAZARIO ORTIZ GARZA SALTILLO | | | COAH | | | MEXICO |
| MONARCH SERVICES SC | | CALLE 4A NO 795 B | FRACC NAZARIO ORTIZ GARZA | | | SALTILLO | | 25107 | MEXICO |
| MONARCH SERVICES SC | COL NAZARIO ORTIZ GARZA | CUARTA AVE 792 B | | | | SALTILLO COAH | | 25107 | MEXICO CP |
| MONARCH TOOL & GAGE CO | | 23450 TELEGRAPH RD | | | | SOUTHFIELD | MI | 48034 | |
| MONARCH TOOL & GAUGE CO | | 23450 TELEGRAPH RD | | | | SOUTHFIELD | MI | 48034 | |
| MONARCH TOOL AND GAUGE CO | | 23450 TELEGRAPH RD | | | | SOUTHFIELD | MI | 48034 | |
| MONARCH TRANSPORT | | 1616 ARGENTINE BLVD | | | | KANSAS CITY | KS | 66105 | |
| MONARCH TRANSPORT LLC | RANDY SHEPPERD | 1616 ARGENTINE BLVD | RMT CHG 5 11 05 CM | | | KANSAS CITY | KS | 66105 | |
| MONARCH TRANSPORT LLC | | PO BOX 413231 | | | | KANSAS CITY | MO | 64141-3231 | |
| MONARCH WATER SYSTEMS | | 1230 BURNETT DR | | | | XENIA | OH | 45385 | |
| MONARCH WATER SYSTEMS INC | | 1230 BURNETT DR | | | | XENIA | OH | 45385 | |
| MONARCH WATER SYSTEMS INC EFT | | 1230 BURNETT DR | | | | XENIA | OH | 45385 | |
| MONARCH WELDING & ENGINEERING | | 1566 TECH PK DR | | | | BAY CITY | MI | 48706 | |
| MONARCH WELDING & ENGINEERING | | 23538 PINEWOOD ST | | | | WARREN | MI | 48091-3122 | |
| MONARCH WELDING & ENGINEERING | | 519 W HACKLEY AVE | | | | MUSKEGON | MI | 49444 | |
| MONARCH WELDING & ENGINEERING | | INC | 1566 TECH PK DR | | | BAY CITY | MI | 48706 | |
| MONARCH WELDING & ENGINEERING INC | | 1566 TECH PARK DR | | | | BAY CITY | MI | 48706 | |
| MONARCH WELDING & ENGINEERING INC | | 23538 PINEWOOD ST | | | | WARREN | MI | 48091-3122 | |
| MONARCH WELDING & ENGINEERING INC | | 23538 PINEWOOD | | | | WARREN | MI | 48091 | |
| MONARD ELSA | | 913 ROYAL AVE | | | | ROYAL OAK | MI | 48073 | |
| MONAST KAREN | | 99 DEAN RD | | | | SPENCERPORT | NY | 14559 | |
| MONASTER MICHAEL | | 1011 W GROVE CTR ST | | | | WEST COVINA | CA | 91790 | |
| MONASTESSE LESLIE W | | 1454 KWANA CT | | | | PRESCOTT | AZ | 86301-4447 | |
| MONASTESSE LINDA S | | 2010 BROUGHTON SPRING RD | | | | SOUTHSIDE | AL | 35907-5309 | |
| MONASTESSE WILLIAM | | 222 N FLORENCE | | | | FULLERTON | CA | 92833 | |
| MONCADA NANCY | | 55 S PININGTON RD | | | | NEW BRUNSWICK | NJ | 08901 | |
| MONCREE JEFFERY | | 1037 DENNISON AVE | | | | DAYTON | OH | 45408 | |
| MONCRIEF CAROLYN | | 4222 BROWNELL BLVD | | | | FLINT | MI | 48504 | |
| MONCRIEF EDDIE | | 190 LILBURNE DR | | | | YOUNGSTOWN | OH | 44505-4858 | |
| MONCRIEF RUTH | | 1782 NEWFIELD RD | | | | COLUMBUS | OH | 43209 | |
| MONCRIEF WILLIE | | 3462 SENORA S E | | | | GRAND RAPIDS | MI | 49508 | |
| MONCRIEF WILLIE J | | 3462 SENORA AVE SE | | | | GRAND RAPIDS | MI | 49508-2508 | |
| MONCRIEF, BLENDA | | 1719 JOY ST | | | | SAGINAW | MI | 48601 | |
| MONCZKA MITCHELL | | 875 ROLLING HILLS LN APT 2 | | | | LAPEER | MI | 48446-4779 | |
| MONDA CROSS C O TARRANT CTY CSO | | 100 HOUSTON 3RD FL CIV CTS BLD | | | | FORT WORTH | TX | 76196 | |
| MONDAY RODEHEFFER JONES & | | ALBRIGHT | 1915 BROAD RIPPLE AVE | | | INDIANAPOLIS | IN | 46220 | |
| MONDAY RODEHEFFER JONES AND ALBRIGHT | | 1915 BROAD RIPPLE AVE | | | | INDIANAPOLIS | IN | 46220 | |
| MONDEAU GARY | | 6357 DAVISON RD | | | | BURTON | MI | 48509 | |
| MONDEJAR, RACHELLE | | 340 MAPLELAWN ST SW | | | | WYOMING | MI | 49548 | |
| MONDELLO PAMELA | | 3319 CHECKERED TAVERN RD | | | | GASPORT | NY | 14067 | |
| MONDI PACKAGING GB LTD | | OLD HALL INDSTL EST | | | | WIRRAL | | 0CH62- 3QH | UNITED KINGDOM |
| MONDI PLC | | BUILDING 1 1ST FL | | | | ADDLESTONE | SY | KT15 2PG | GB |
| MONDOL RAJENDRA | | 3380 CHRISTY WAY | | | | SAGINAW | MI | 48603 | |
| MONDRAGON ASSEMBLY S COOP | | POLIGONO BAINETXE A 5 | | | | ARETXABALETA | 20 | 20550 | ES |
| MONDRAGON ASSEMBLY SA DE CV | | CIRCUITO EL MARQUES NO 2 NAVE B | | | | EL MARQUES | QRO | 76240 | MX |
| MONDRAGON DIANA | | 130 SPRITCHARD AVE A | | | | FULLERTON | CA | 92833 | |
| MONDRAGON EDUARDO | | 9458 BURNING TREE | | | | SAGINAW | MI | 48609 | |
| MONDRAGON, EDUARDO RAUL | | 9458 BURNING TREE | | | | SAGINAW | MI | 48609 | |
| MONDY PACKAGING | | OLD HALL INDUSTRIAL ESTATE | PO BOX CH623QH | | | WIRRAL | | L623QH | UNITED KINGDOM |
| MONEY DANIEL | | 3526 CHAMBERS RD | | | | VASSAR | MI | 48768 | |
| MONEY GARY | | 7259 OAKBAY DR | | | | NOBLESVILLE | IN | 46062 | |
| MONEY JAMES | | 6003 LAKEWOOD DR | | | | FAIRFIELD | OH | 45011 | |
| MONEY JIM | | 6003 LAKEWOOD DR | | | | FAIRFIELD | OH | 45011 | |
| MONEY NORA S | | 616 CANDYWOOD DR | | | | VIENNA | OH | 44473-9505 | |
| MONEYBRAKE STEVE | | 11610 ORCHARD PARK DR | | | | SPARTA | MI | 49345-9552 | |
| MONEYPENNY LARRY | | 4932 STROUPS HICKOX RD | | | | W FARMINGTON | OH | 44491-8757 | |
| MONEYPENNY, LARRY | | 4932 STROUPS HICKOX RD | | | | W FARMINGTON | OH | 44491 | |
| MONFALCONE MARIETTA | | 970 H CTR PL DR | | | | ROCHESTER | NY | 14615-4018 | |
| MONG GREGORY J | | 2601 NILES VIENNA RD | | | | NILES | OH | 44446-4403 | |
| MONGEON MARY | | 5151 SHUNPIKE RD | | | | LOCKPORT | NY | 14094 | |
| MONGEON, MARY JOAN | | 4 OAKSHIRE WY | | | | PITTSFORD | NY | 14534 | |
| MONGIELO DAVID | | 5306 ERNEST RD | | | | LOCKPORT | NY | 14094-5414 | |
| MONGIELO DAVID S | | 5306 ERNEST RD | | | | LOCKPORT | NY | 14094 | |
| MONICA BERNADETE SOUZA | | 4950 E BUDLONG ST | | | | ANAHEIM | CA | 92807 | |
| MONICA G GILBERT | | 3000 VIA SAN CARLO | | | | MONTEBELLO | CA | 90640 | |
| MONICA J MACHEN | SONNENSCHEIN NATH & ROSENTHAL LLP | 8000 SEARS TOWER | | | | CHICAGO | IL | 60606 | |
| MONICA JOHN | | 4138 ARLINGTON | | | | ROYAL OAK | MI | 48073 | |
| MONICA JOY SMITH | | RR1 BOX 123C SUNSET | | | | HAUBSTADT | IN | 47639 | |
| MONICA MARTIN | | 3805 N LUPINE LN APT F | | | | CALABASAS | CA | 91302 | |
| MONICA MCGRIFF | | 1695 W BUSH RD | | | | PARDEEVILLE | WI | 53954 | |
| MONICA MOSHENKO | | 50 CAMPBELL BLVD | | | | GETZVILLE | NY | 14068 | |
| MONICA R JONES | | 961 CANAAN | | | | ST LOUIS | MO | 63147 | |
| MONICA THOMPSON | | 2276 WOODVIEW RD 818 | | | | YPSILANTI | MI | 48198 | |
| MONICATTI PAUL F | | 1301 W LONG LAKE RD STE 135 | | | | TROY | MI | 48098 | |
| MONIE PHILLIP | | 7600 SPRINGDAWN RD | | | | TROTWOOD | OH | 45426 | |

# **Exhibit F**

**IN THE CIRCUIT COURT**
**OF JACKSON COUNTY, MISSOURI**
**CIVIL DIVISION**

FKMT, LLC                                              )
f/k/a MONARCH TRANSPORT, LLC,                          )
                                                       )
      Plaintiff,                       )
                                                       )
v.                                                     )
                                                       )
DELPHI CORPORATION,                                    )
                                                       )
      Defendant, Counterclaimant,      )     Case No. 0816-CV39025
      And Third-Party Plaintiff,       )
                                                       )     Division 6
v.                                                     )     Chapter 60
                                                       )
FKMT, LLC,                                             )
                                                       )
      Plaintiff and Counter-defendant, )
                                                       )
and                                                    )
                                                       )
MONARCH TRANSPORT LLC,                                 )
f/k/a OSAGE HOLDINGS, LLC,                             )
                                                       )
      Third-Party Defendant.           )

FILED
DEPT. OF CIVIL RECORDS
COURT ADMINISTRATOR'S OFFICE

APR 0 3 2010

CIRCUIT COURT OF JACKSON CO., MO.

BY _____
                              DCA

## DELPHI CORPORATION'S MOTION TO DISMISS FOR FAILURE TO FILE THE MANDATORY ADMINISTRATIVE CLAIM

COMES NOW defendant/counterclaimant/third-party plaintiff Delphi Corporation, by and through its attorneys Kortenhof McGlynn LLC and Maureen A. McGlynn, and prays that this Court dismiss plaintiff's action against it because plaintiff failed to file an administrative claim in the Bankruptcy Court, as more fully set forth herein:

1.    On October 8 and 14, 2005, Delphi Corporation ("Delphi") and certain of its domestic affiliates (including without limitation, Delphi Automotive Systems LLC and collectively referred to herein as the "Debtors,") filed petitions for reorganization relief under

Chapter 11 of Title 11 of the United States Code in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court).

2.      On December 10, 2007, in the Chapter 11 case In re Delphi Corporation, et al., Case No. 05-44481 (RDD) (Bankr. S.D.N.Y.) (n/k/a In re DPH Holdings Corp., et al.), the Debtors filed their First Amended Joint Plan of Reorganization (Docket No. 11386)[1] (the "Plan") and related disclosure statement (the "Disclosure Statement") (Docket No. 11388). On January 25, 2008, the Bankruptcy Court entered an order (Docket No. 12359) (the "Confirmation Order") confirming the Plan, as modified (the "Confirmed Plan"). The Confirmation Order became final on February 4, 2008.

3.      On June 16, 2009, in the Chapter 11 case In re Delphi Corporation, et al., Case No. 05-44481 (RDD) (Bankr. S.D.N.Y.) (n/k/a In re DPH Holdings Corp., et al.), the Debtors filed the First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-In-Possession (As Modified) (Docket No.17030) (the "Modified Plan"). The Modified Plan made certain modifications to the terms of the Confirmed Plan. To comply with the requirements of 11 U.S.C. §§1125 and 1127, on the same date, the Debtors filed a supplement to the Disclosure Statement (the "Supplement").

4.      In connection with the Debtors' Modified Plan and the Supplement, the Debtors sought an order from the Bankruptcy Court, among other things, approving the Supplement as containing adequate information, as defined under 11 U.S.C. §1125, authorizing the solicitation of votes on the Modified Plan, and establishing a bar date for the submission of claims asserting administrative expense priority under 11 U.S.C. §503(b). In connection therewith, and after notice and a hearing, on June 16, 2009, the Bankruptcy Court entered that certain Order (A)(I) Approving Modifications to Debtors' First Amended Plan of

---

[1] All references herein to the Bankruptcy Court Docket can be found at www.dphholdingsdocket.com

Reorganization (As Modified) and Related Disclosures and Voting Procedures and (II) Setting Final Hearing Date to Consider Modifications to Confirmed First Amended Plan of Reorganization and (B) Setting Administrative Expense Claims Bar Date and Alternative Transaction Hearing Date (Docket No. 17032) (the "Modification Procedures Order").

   5.    Pursuant to Paragraphs 38 and 41 of the Modification Procedures Order:

> Any party that wishes to assert an administrative claim under 11 U.S.C. §503(b) for the period from the commencement of these cases through June 1, 2009 shall file a proof of administrative expense (each, an "Administrative Expense Claim Form") for the purpose of asserting an administrative expense request, including any substantial contribution claims (each, an "Administrative Expense Claim" or "Claim") against any of the Debtors. July 15, 2009 at 5:00 p.m. prevailing Eastern time shall be the deadline for submitting all Administrative Expense Claims (the "[Initial] Administrative Expense Bar Date") for the period from the commencement of these cases through June 1, 2009.

Modification Procedures Order ¶38.

> Any party that is required but fails to file a timely Administrative Expense Claim Form shall be forever barred, estopped and enjoined from asserting such claim against the Debtors, and the Debtors and their property shall be forever discharged from any and all indebtedness, liability, or obligation with respect to such claim.

Modification Procedures Order ¶41.

   6.    As noted on the Affidavit of Service executed by Evan Gershbein and filed in the Chapter 11 cases (Docket No. 17267), due and proper notice of the initial Administrative Expense Bar Date was provided to plaintiff on or prior to June 20, 2009. In addition to providing direct service through the mailing of applicable documents as provided in Paragraph 42 of the Modification Procedures Order, notice of the initial Administrative Expense Bar Date was also published in the Detroit Free Press, the New York Times (national edition), the Wall Street Journal (national, European, and Asian editions), and USA Today (worldwide) as required by Paragraph 43 of the Modification Procedures Order (see

3

applicable affidavits of publication at Docket Nos. 17407-17411). Pursuant to Paragraph 44 of the Modification Procedures Order, satisfaction of direct notice and publication notice constitutes adequate and sufficient notice of the Initial Administrative Expense Bar Date and is deemed to satisfy the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules of the Bankruptcy Court.

7.      On July 30, 2009, the Bankruptcy Court entered its Order Approving Modifications Under 11 U.S.C. §1127(b) to (I) First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-In-Possession, as Modified and (II) Confirmation Order (Docket No. 12359) (Docket No. 18707) (the "Modification Approval Order"), which confirmed the Debtors' Modified Plan.

8.      On October 6, 2009, the "Effective Date" of the Modified Plan occurred and the Modified Plan was substantially consummated. On that date, the Debtors emerged from Chapter 11 as reorganized entities (the "Reorganized Debtors").

9.      Paragraph 47 of the Modification Approval Order provides in part that "any request for payment of an Administrative Claim **that is not timely filed and served shall be disallowed automatically** without the need for any objection from the Debtors or the Reorganized Debtors." Modification Approval Order ¶47 (emphasis added).

10.     Plaintiff is asserting that Delphi owes money for previously unpaid transportation invoices, for services performed prior to June 1, 2009. Assertion of this type of claim falls squarely into the types of claims that were required to be filed by the Initial Administrative Expense Date as set forth in Paragraph 38 of the Modification Procedures Order.

4

11.    Plaintiff failed to file an Administrative Expense Claim by the Initial Administrative Claims Bar Date and **thus is barred from asserting any claim that arose prior to June 1, 2009, against any of the Debtors including, without limitation Delphi Corporation and certain of its domestic affiliates**.

12.    Because Plaintiff failed to file an Administrative Expense Claim before the applicable bar date, pursuant to the Bankruptcy Court's order, any administrative expense claim that may have been assertable by plaintiff shall be disallowed automatically. Accordingly, this action should be dismissed with prejudice.

13.    Moreover, pursuant to the discharge of the Debtors contained in Article 11.2 of the Modified Plan, plaintiff may only receive a distribution on its claim as provided by the Modified Plan. Specifically, under 11 U.S.C. §1141(d) and pursuant to the terms of the Modification Approval Order and the Modified Plan, upon the Effective Date, all claims against the Debtors that arose on or prior to the Effective Date were discharged. Specifically, Article 11.2 of the Modified Plan provides that:

> The distributions and rights that are provided in [the Modified] Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims and Causes of Action, whether known or unknown, against, liabilities of, liens on, obligations of, rights against, and Interests in the Debtors of any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to [the Modified] Plan on account of such claims, rights, and Interests, including, but not limited to Claims and Interests that arose before the Effective Date.

Modified Plan Art. 11.2.

14.    In addition, upon the effectiveness of the Modified Plan, an injunction was imposed. Specifically, the Modified Plan and the Modification Approval order contain a permanent injunction against, among other things, the commencement or continuation of any

action to recover against any claim against the Debtors that arose on or prior to October 6,

2009. Article 11.14 of the Modified plan provides that (emphasis added):

> The satisfaction, release and discharge pursuant to [Article XI of the
> Modified Plan] **shall act as an injunction against any Person
> commencing or continuing any action, employment of process, or act
> to collect, offset, or recover any Claim, Interest, or Cause of Action
> satisfied, released, or discharged under [the Modified] Plan to the
> fullest extent authorized or provided by the Bankruptcy Code...**

Modified Plan Art. 11.14 (emphasis added).

15.   Similarly, Paragraph 22 of the Modification Approval order provides that:

> The Debtors and all Persons shall be precluded and permanently enjoined
> on and after the Effective Date from (a) commencing or continuing in any
> manner any Claim, action, employment of process, or other proceeding of
> any kind with respect to any Claim, Interest, Cause of Action, or any other
> right or Claim against the Reorganized Debtors, which they possessed or
> may possess prior to the Effective Date, (b) the enforcement, attachment,
> collection, offset, recoupment, or recovery by any manner or means of any
> judgment, award, decree, order, or otherwise with respect to any Claim,
> Interest, Cause of Action, or any other right or Claim against the
> Reorganized Debtors, which they possessed or may possess prior to the
> Effective Date, (c) creating, perfecting, or enforcing any encumbrance of
> any kind with respect to any Claim, interest, Cause of Action, or any other
> right or Claim against the Reorganized Debtors, which they possessed or
> may possess prior to the Effective Date, and (d) asserting any Claims,
> Interest, or Causes of Action that are satisfied, discharged, released, or
> subject to exculpation hereby or by the Modified Plan.

Modification Approval Order ¶22. Accordingly, the permanent injunction in the Modified

Plan and Modification Approval Order prohibits the commencement or continuation of any

action to recover any claim against the Debtors that arose on or prior to October 6, 2009.

16.   Because Plaintiff failed to file an administrative claim in the Bankruptcy

Court on or prior to the bar dates established by the Bankruptcy Court, plaintiff is barred

from asserting claims against the Debtors.   Therefore, this action must be dismissed with

prejudice.

WHEREFORE, Delphi Corporation prays that this Court immediately dismiss plaintiff's claims against it, with prejudice, each party to bear its own costs.

**KORTENHOF MCGLYNN LLC**

Maureen A. McGlynn - #40552
mo@mcglynnlaw.com
1015 Locust St., Suite 710
St. Louis, Missouri 63101
PH:  (314) 727-1000
Fax:  (314) 727-2960
**Attorneys for Delphi Corporation**

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing was mailed, postage prepaid, on this _1st_ day of _April_ , 2010, to:

**Attorney for Plaintiff**
Troy Renkemeyer
Renkemeyer Campbell, LP
7500 College Blvd., Suite 900
Overland Park, KS  66210

**Attorney for New Monarch**
Mr. Thomas M. Franklin
The Franklin Law Firm
300 UMB Bank Building
1310 Carondelet Dr.
Kansas City, MO  64114

M. Sandmel

# **Exhibit G**

IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
AT KANSAS CITY

FKMT, LLC                                        )
f/k/a MONARCH TRANSPORT, LLC,                    )
                                                 )
          Plaintiff,                             )
                                                 )
v.                                               )          Case No.  0816-CV39025
                                                 )
DELPHI CORPORATION                               )          Division No. 6
                                                 )          Chapter 60
          Defendant, Counterclaimant,            )
          And Third-Party Plaintiff,             )
                                                 )
v.                                               )
                                                 )
FKMT, LLC                                        )
                                                 )
          Plaintiff and Counter-defendant        )
                                                 )
v.                                               )
                                                 )
MONARCH TRANSPORT LLC,                           )
f/k/a/ OSAGE HOLDINGS, LLC,                      )
                                                 )
          Third-Party Defendant.                 )

## PLAINTIFF'S RESPONSE TO DELPHI CORPORATION'S MOTION TO DISMISS FOR FAILURE TO FILE THE MANDATORY ADMINISTRATIVE CLAIM

**COMES NOW** Plaintiff FKMT, LLC (hereinafter "FKMT") by and through

undersigned counsel, and prays for this Court to deny Defendant/counterclaimant/third-

party plaintiff Delphi Corporation's (hereinafter "Delphi") Motion to Dismiss for Failure

to File the Mandatory Administrative Claim.  In support of its position, Plaintiff FKMT

states as follows:

1.      Plaintiff is not required to file proof of administrative expense by filing an

Administrative Expenses Claim Form against Defendant Delphi.

2.      According to 11 U.S.C. §503(b), administrative expenses include:

(1)

    (A)    the actual, necessary costs and expenses of preserving the estate including –

        (i)    wages, salaries, and commissions for services rendered after the commencement of the case; and

        (ii)    wages and benefits awarded pursuant to a judicial proceeding or a proceeding of the National Labor Relations Board as back pay attributable to any period of time occurring after commencement of the case under this title, as a result of a violation of Federal or State law by the debtor, without regard to the time of the occurrence of unlawful conduct on which such award is based or to whether any services were rendered, if the court determined that payment of wages and benefits by reason of the operation of this clause will not substantially increase the probability of layoff or termination of current employees, or of nonpayment of domestic support obligations, during the case under this title;

    (B)    any tax -

        (i)    incurred by the estate, whether secured or unsecured, including property taxes fro which liability is in rem, in personam, or both, except a tax of a kind specified in section 507 (a)(8) of this title; or

        (ii)    attributable to an excessive allowance of a tentative carryback adjustment that the state received, whether the taxable year to which such adjustment related ended before or after the commencement of the case;

    (C)    any fine, penalty, or reduction in credit relating to a tax of a kind specified in subparagraph (B) of this paragraph; and

    (D)    notwithstanding the requirements of subsection (a), a governmental unit shall not be required to file a request for the payment of an expense described in subparagraph (B) or (C), as a condition of its being an allowed administrative expense;

(2)    compensation and reimbursement awarded under section 330 (a) of this title;

(3)    the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by –

    (A)    a creditor that files a petition under section 303 of this title;

    (B)    a creditor that recovers, after the court's approval, for the benefit of the estate any property transferred or concealed by the debtor;

    (C)    a creditor in connection with the prosecution of a criminal offense relating to the case or to the business or property of the debtor;

    (D)    a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title, in making a substantial contribution in a case under chapter 9 or 11 of this title;

    (E)    a custodian superseded under section 543 of this title, and compensation for the services of such custodian; or

(F)    a member of a committee appointed under section 1102 of
this title, if such expenses are incurred in the performance of the duties of
such committee;

(4)    reasonable compensation for professional services rendered by an
attorney or an accountant of an entity whose expense is allowable under
subparagraph (A), (B), (C), (D), or (E) of paragraph (3) of this subsection,
based on the time, the nature, the extent, and the value of such services,
and the cost of comparable services other than in a case under this title,
and reimbursement for actual, necessary expenses incurred by such
attorney or accountant;

(5)    reasonable compensation for services rendered by an indenture
trustee in making a substantial contribution in a case under chapter 9 or 11
of this title, based on the time, the nature, and the value of such services,
and the cost of comparable services other than in a case under this title;

(6)    the fees and mileage payable under chapter 119 of title 28;

(7)    with respect to a nonresidential real property lease previously
assumed under section 365, and subsequently rejected, a sum equal to all
monetary obligations due, excluding those arising from or relating to a
failure to operate or a penalty provision, for the period of 2 years
following the later of the rejection date or the date of actual turnover of the
premises, without reduction or setoff for any reason whatsoever except for
sums actually received or to be received from an entity other than the
debtor, and the claim for remaining sums due for the balance of the term
of the lease shall be a claim under section 502 (b)(6);

(8)    the actual, necessary costs and expenses of closing a health care
business incurred by a trustee or by a Federal agency (as defined in section
551 (1) of title 5) or a department or agency of a State or political
subdivision thereof, including any cost or expenses incurred –

(A)    in disposing of patient records in accordance with section
351; or

(B)    in connection with transferring patients from the health care
business that is in the process of being closed to another health care
business; and

(9)    the value of any goods received by the debtor within 20 days
before the date of commencement of a case under this title in which the
goods have been sold to the debtor in the ordinary course of such debtor's
business.

3.    Plaintiff's claim against Defendant Delphi is for unpaid invoices arising

from shipping services provided by Plaintiff on behalf of Defendant Delphi, services

which clearly do not fall under any provision of 11 U.S.C. 503(b) above, and therefore

Plaintiff was not required to file an Administrative Expenses Claim Form in order to reserve its claim asserted in this litigation.

      4.      Contrary to the assertion of Defendant Delphi, Plaintiff never received the notice of the initial Administrative Expense Bar Date. As such, the Debtor's Modified Plan and the Modification Approval Order do not apply to the claim asserted by Plaintiff in this litigation.

      5.      On April 18, 2009, Defendant Delphi filed a Third-Party Petition in Interpleader way in advance of the Administrative Expense Bar Date set for July 15, 2009.

      6.      Defendant Delphi failed to place any money with the Court pursuant to their interpleader action which, had such funds been placed with the Court, said funds would not have been prevented from being distributed pursuant the bar on administrative expenses.

      7.      Defendant has consistently represented to Plaintiff, both before and after the bar date of July 15, 2009, that it intended to pay the invoices that it interplead. *See* email attached hereto as Exhibit A. These representations constitute a waiver of any rights it may have to rely upon in the Modification Approval Order to dismiss its obligations sought to be enforced by Plaintiff. In the alternative, the representations are misrepresentations made by Defendant Delphi to Plaintiff and relied upon by Plaintiff.

      WHEREFORE, Plaintiff FKMT prays that this Court deny Defendant Delphi's Motion to Dismiss and for such other and appropriate relief as the Court deems just.

                        Respectfully submitted,

                        RCW LAW FIRM

By: _____

Troy Renkemeyer, MO Bar #47371
7500 College Blvd., Suite 900
Overland Park, KS 66210
Telephone: 913-906-9810
Fax: 913-906-9840
trenkemeyer@rcwlawfirm.com
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

It is hereby certified that a copy of the above document was mailed by U.S. mail,
first-class postage prepaid, this ___15___ day of ___May___, 2010 to the following:

Maureen A. McGlynn
McGlynn and Luther
500 North Broadway, Suite 1515
St. Louis, MO 63102
*Attorneys for Defendant*

Thomas M. Franklin
The Franklin Law Firm
300 UMB Bank Building
1310 Carondelet Drive
Kansas City, MO 64114
*Attorneys for Monarch Transport, LLC
(f/k/a Osage Holdings, LLC)*

RENKEMEYER CAMPBELL, LP

By: _____

Troy Renkemeyer, CPA, LLM
MO Bar #47371
7500 College Blvd., Suite 900
Overland Park, KS 66210
Telephone: 913-906-9810
Fax: 913-906-9840
trenkemeyer@rcwlawfirm.com
*Attorneys for Plaintiff*

**Troy Renkemeyer**

| | |
|---|---|
| **From:** | Maureen A. McGlynn [mo@mcglynnlaw.com] |
| **Sent:** | Monday, November 09, 2009 12:43 PM |
| **To:** | Troy Renkemeyer |
| **Subject:** | Monarch v. Delphi et al |

Troy,

My client needs the Bills of Lading and proof of delivery for the loads underlying the invoices you sent last week. Apparently that is the heart of the problem here: Delphi has no proof that these loads were ever actually delivered. Can you get this information?

Mo

**Maureen A. McGlynn**
**McGlynn & McGlynn LLC**
**500 North Broadway, Suite 1515**
**Saint Louis, MO 63102**
**(314) 727-1000**
**FAX (314) 727-2960**
**mo@mcglynnlaw.com**

# **Exhibit H**

**IN THE CIRCUIT COURT
OF JACKSON COUNTY, MISSOURI
CIVIL DIVISION**



FKMT, LLC                                           )
f/k/a MONARCH TRANSPORT, LLC,                       )
                                                    )
     Plaintiff,                                  )
                                                    )
v.                                                  )
                                                    )
DELPHI CORPORATION,                                 )
                                                    )
     Defendant, Counterclaimant,                 )    Case No. 0816-CV39025
     And Third-Party Plaintiff,                  )
                                                    )    Division 6
v.                                                  )    Chapter 60
                                                    )
FKMT, LLC,                                          )
                                                    )
     Plaintiff and Counter-defendant,            )
                                                    )
and                                                 )
                                                    )
MONARCH TRANSPORT LLC,                              )
f/k/a OSAGE HOLDINGS, LLC,                          )
                                                    )
     Third-Party Defendant.                      )

## DELPHI CORPORATION'S REPLY TO PLAINTIFF'S OPPOSITION TO DELPHI'S MOTION TO DISMISS BASED UPON THE BANKRUPTCY ORDER AND PLAINTIFF'S FAILURE TO FILE A MANDATORY CLAIM

### INTRODUCTION

      Delphi has pending before this Court its Motion to Dismiss based upon an Order of

Bankruptcy and plaintiff's failure to file the mandatory administrative claim. Plaintiff filed a

memorandum in opposition to Delphi's motion, based upon two erroneous arguments: First,

plaintiff incorrectly concludes, without authority, that Monarch Transport was not required to

file proof of an administrative expense; second, plaintiff improperly asserts that it did not

receive notice of the requirement to file such a claim, although notice was sent. As set forth

more fully below, both arguments are completely without merit, and plaintiff's lawsuit must be dismissed.

## ARGUMENT

**Despite plaintiff's arguments to the contrary, Monarch Transport was required to file an Administrative Claim.**

The Bankruptcy Court's Modification Procedures Order, a copy of which is attached hereto as Exhibit A, sets forth the requirement that plaintiff needed to file an Administrative Claim to preserve its ability to collect on previously unpaid invoices for transportation services, if any. In relevant part, the Order reads:

> **Any party that wishes to assert an administrative claim** under 11 U.S.C. §503(B) from the period from the commencement of these cases through June 1, 2009 **shall file a proof of administrative expense** (each, an "Administrative Expense Claim Form") for the purpose of asserting an administrative expense request...July 15, 2009 at 5:00 p.m. prevailing Eastern time shall be the deadline for submitting all Administrative Expense Claims...

*See* Exhibit A at paragraph 38 (emphasis added). By its plain language, the Modification Procedures Order required plaintiff to submit a claim form.

Paragraph 39 of the Modification Procedures Order identifies a limited group of creditors who are exempt and therefore not required to file an Administrative Claim to preserve their rights against Delphi. This defined group includes any creditor who holds:

> Any claim for post-petition goods and services delivered to the debtors prior to June 1, 2009, **that are not yet due and payable pursuant to the applicable contract terms.**

*See* Exhibit A at paragraph 39 (emphasis added). This exemption does not act to relieve Monarch Transport of the requirement of filing an Administrative Claim. Rather, although plaintiff says that it delivered goods and services to Delphi after the original bankruptcy Petition was filed and before June 1, 2009, plaintiff also argues that payment is long overdue.

By definition, then, this removes Monarch Transport from the group of creditors to whom the stated exemption applies. Rather, only those creditors delivering post-petition goods and services prior to June 2, 2009, **for which payment in the ordinary course of business is not yet due**, are relieved of the Administrative Claim requirement.

It remains without dispute that plaintiff's claim against Delphi falls squarely within the language of the Modification Procedures Order, such that plaintiff was required to file an Administrative Claim form to preserve its rights against Delphi. No such form was filed and therefore plaintiff retains no right to collect any money allegedly due.

**Despite plaintiff's arguments to the contrary, plaintiff was provided notice.**

Plaintiff incorrectly argues that it did not receive notice of the Administrative Claim requirement. To the contrary, Delphi's agent mailed all required notices and information to three entities/addresses associated with Monarch Transport:

> MONARCH TRANSPORT
> RANDY SHEPPERD
> 1616 ARGENTINE BOULEVARD
> KANSAS CITY, KS 66105
>
> MONARCH TRANSPORT
> 1616 ARGENTINE BOULEVARD
> RMT CHG 5 11 05 CM
> KANSAS CITY, KS 66105
>
> MONARCH TRANSPORT LLC
> P.O. BOX 413231
> KANSAS CITY, MO 64141-3231

*See* Affidavit of Dean Unrue, attached hereto as Exhibit B.[1]  Further, legally sufficient notice was published in numerous newspapers. *See* Exhibit B. Because notice was properly delivered, plaintiff's argument in this respect must fail.

---

[1] Mr. Unrue is currently traveling abroad on business, but drafted and approved an Affidavit in support of this pleading. An executed copy of said Affidavit will be immediately filed.

WHEREFORE, Delphi Corporation prays that this Court immediately dismiss plaintiff's claims against it, with prejudice, each party to bear its own costs, and for such other and further relief as this Court deems just and proper.

**KORTENHOF MCGLYNN LLC**

Maureen A. McGlynn #40552
mo@mcglynnlaw.com
1015 Locust St., Suite 710
St. Louis, Missouri 63101
PH: (314) 727-1000
Fax: (314) 727-2960
**Attorneys for Delphi Corporation**

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing was mailed, postage prepaid, on this 14th day of June, 2010, to:

**Attorney for Plaintiff**
Troy Renkemeyer
Renkemeyer Campbell, LP
7500 College Blvd., Suite 900
Overland Park, KS 66210

**Attorney for New Monarch**
Mr. Thomas M. Franklin
The Franklin Law Firm
300 UMB Bank Building
1310 Carondelet Dr.
Kansas City, MO 64114

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                   :

     In re                            :          Chapter 11
                                   :

DELPHI CORPORATION, et al.,     :          Case No. 05-44481 (RDD)
                                   :

              Debtors.    :          (Jointly Administered)
                                   :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

ORDER (A)(I) APPROVING MODIFICATIONS TO DEBTORS' FIRST AMENDED PLAN
OF REORGANIZATION (AS MODIFIED) AND RELATED DISCLOSURES AND VOTING
PROCEDURES AND (II) SETTING FINAL HEARING DATE TO CONSIDER
MODIFICATIONS TO CONFIRMED FIRST AMENDED PLAN OF REORGANIZATION
AND (B) SETTING ADMINISTRATIVE EXPENSE CLAIMS BAR DATE AND
ALTERNATIVE TRANSACTION HEARING DATE

("MODIFICATION PROCEDURES ORDER")

Upon the motion dated October 3, 2008 (Docket No. 14310) (the "Motion"),[1] and

the supplement to the Motion dated June 1, 2009 (Docket No. 16646) (the "Motion Supplement")

of Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and

debtors-in-possession in the above-captioned cases (each, a "Debtor"), for entry of an order (i)

approving (a) certain modifications to the confirmed First Amended Joint Plan of Reorganization

of Delphi Corporation and Certain Affiliates, Debtors and Debtors-In-Possession, as amended on

January 25, 2008 (the "Confirmed Plan"), (b) certain supplements to the First Amended

Disclosure Statement with respect to the Confirmed Plan (Docket No. 11388) (the "December 10

---

[1]    Capitalized terms not defined herein shall have the meanings ascribed to them in the Order Approving (I)
Disclosure Statement, (II) Record Date, Voting Deadline, and Procedures for Temporary Allowance of Certain
Claims, (III) Hearing Date to Consider Confirmation of Plan, (IV) Procedures for Filing Objections to Plan, (V)
Solicitation Procedures for Voting on Plan, (VI) Cure Claim Procedures, (VII) Procedures for Resolving
Disputes Relating to Postpetition Interest, and (VIII) Reclamation Claim Procedures, entered on December 10,
2007 (Docket No. 11389) (the "December 10 Solicitation Procedures Order"), a copy of which is attached
hereto as Exhibit A without exhibits.

Disclosure Statement"), and (c) related modifications to those voting procedures set forth in the

December 10 Solicitation Procedures Order, (ii) setting a final hearing date for approval of the

Debtors' proposed plan modifications, (iii) setting of a bar date for filing proofs claim for

administrative expenses for postpetition claims arising before June 1, 2009, and (iv) setting an

alternative sale hearing (the "Alternative Sale Hearing") date of July 23, 2009, to be used, only if

necessary, to consider the sale of substantially all the Debtors' assets if the Court does not

approve the Debtors' proposed plan modifications on that date; and upon the objections of Robert

Ward (Docket No. 14338), Sheryl Carter (Docket No. 14339), Liquidity Solutions, Inc. (Docket

No. 14340), Pension Benefit Guaranty Corporation (Docket No. 16893), Kensington

International Limited, Manchester Securities Corp, and Springfield Associates LLC (Docket No.

16895), Autocam Corporation (Docket No. 16896), JP Morgan Chase Bank, NA (Docket No.

16897), Appaloosa Management LP, A-D Acquisition Holdings, LLC, Harbinger Del-Auto

Investment Company Ltd., Harbinger Capital Partners Master Fund I, Ltd., Merrill, Lynch,

Pierce, Fenner & Smith, Incorporated, Pardus Special Opportunities Master Fund L.P., and

Pardus DPH Holdings (Docket No. 16898), Official Committee of Unsecured Creditors (Docket

No. 16900), Collective of DIP Lenders (Docket No. 16903), UBS Securities LLC (Docket No.

16904), Wilmington Trust Company (Docket No. 16907), and various individual letter

objections; and the Court having reviewed the Motion and the supplements to the December 10

Disclosure Statement (as modified, the "Supplement"); and a hearing having been held on June

10, 2009 (the "Preliminary Modification Hearing"); and upon the representations of the Debtors,

GM and Parnassus/Platinum on the record of the Preliminary Modification Hearing regarding

section 9.40 of the MDA, and the subsequent modification of that provision; and the Court

having reviewed and considered (i) the Supplement, (ii) the Motion, (iii) the Motion Supplement,

2

(iv) the adequacy of notice, and (v) the record established at the Preliminary Modification Hearing, including the evidence proffered or adduced at the Preliminary Modification Hearing; and the Debtors having submitted proposed modifications of the Supplement in light of the Court's comments at the hearing, and the Court having found and concluded that, as modified, the Supplement contains "adequate information" for purposes of sections 1125 and 1127(c) and (f) of the Bankruptcy Code; and for the reasons stated on the record at the Preliminary Modification Hearing, and after due deliberation thereon, and good cause appearing therefor, the Court hereby finds as follows:

A.    The Supplement complies with the requirements of 11 U.S.C. §§ 101-1330 (the "Bankruptcy Code"), and the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and satisfies the requirements of section 1127(c) of the Bankruptcy Code because the Debtors' Supplement and proposed procedures comply with the requirements of section 1125 of the Bankruptcy Code, including without limitation, disclosing adequate information as that term is defined in section 1125 of the Bankruptcy Code and complying with the requirements of Bankruptcy Rule 3016(c) by sufficiently describing in specific and conspicuous bold language the provisions of the Confirmed Plan, as modified (the "Modified Plan") that provide for releases and injunctions against conduct not otherwise enjoined under the Bankruptcy Code and sufficiently identifying the persons and entities that are subject to the releases and injunctions.

B.    Good cause exists for shortened notice of the hearing on the adequacy of the Supplement under Bankruptcy Rule 9006(c)(1). The Debtors' notice of the hearing on the Motion, the Motion Supplement, the Supplement, the Preliminary Modification Hearing, and the time fixed for filing objections to the Motion Supplement was good and sufficient under the particular circumstances, and no other or further notice need be given.

C.     The Debtors' solicitation procedures, as approved by this Court in the December 10 Solicitation Procedures Order, with such modifications as set forth herein, are applicable and appropriate for the Debtors to resolicit votes on the Modified Plan.

D.     Resolicitation of votes for holders of claims and/or interests in Classes C-1 (General Unsecured Claims) and D (GM Claim) is appropriate because of the nature of the modifications included in the Modified Plan.

E.     Solicitation of votes for holders of claims in Class C-2 (PBGC Claim) is appropriate because of the nature of the modifications included in the Modified Plan.

F.     Solicitation of votes for holders of claims and/or interests in Class A (Secured Claims) is appropriate because of the nature of the modifications included in the Modified Plan.

G.     Not soliciting votes from holders of claims and/or interests in Classes E, G, and H [2] is appropriate because of the nature of the modifications included in the Modified Plan.

H.     The Debtors' solicitation procedures, as approved by this Court in the December 10 Solicitation Procedures Order, with such modifications as set forth herein, are applicable and appropriate for the Debtors to resolicit votes on the Modified Plan.

I.     The Debtors' proposed procedures for transmitting the Supplement, the Modified Plan, the Ballots (as defined below), and the voting instructions are adequate, in good faith, and comply with the requirements of Bankruptcy Rule 3017(d) and (e).

J.     Because of the lapse of time and amount of claims trading between the November 26, 2007 record date approved in the December 10 Solicitation Procedures Order and

---

[2]     Class E consists of all Section 510(b) Note Claims against Delphi Corporation, Class G consists of all interests in existing common stock of Delphi Corporation and all Section 510(b) Equity Claims against Delphi Corporation, and Class H consists of all Section 510(b) ERISA Claims against the applicable Debtor.

4

the date of the filing of the Motion Supplement, it is equitable to read section 1127(d) of the

Bankruptcy Code to apply to current holders of claims or interests as of June 8, 2009.

Accordingly, June 8, 2009 shall be the Record Date (as defined below) to determine the holder of

a claim or interest for all purposes relating to the Modified Plan.

           K.        The form of the Final Modification Hearing Notice (as defined below) and

the Debtors' proposed procedures for distributing and publishing the Final Modification Hearing

Notice, as described more fully in the Motion Supplement, are fair and reasonable.

           L.        The forms of the Amended Cure Amount Notice (as defined below) and

the Notice of Non-Assumption of Executory Contracts (as defined below) and the Debtors'

proposed modified cure claim procedures, as described more fully in the Motion Supplement, are

fair and reasonable.

           M.        The form of the GM Components Assumption and Assignment Notice (as

defined below) and the procedures for the Debtors to assume and assign to GM Components

Holdings, LLC ("GM Component"), an affiliate of General Motors Corporation ("GM") the GM

Components Assumed Contracts (as defined below) are fair and reasonable.

           N.        The form of the Parnassus Assumption and Assignment Notice (as defined

below) and the procedures for the Debtors to assume and assign to Parnassus Holdings II, LLC

("Parnassus") the Parnassus Assumed Contracts (as defined below) are fair and reasonable.

           O.        The form of the Administrative Expense Claim Form (as defined below)

and the Notice of Administrative Claim Bar Date (as defined below) and the procedures for the

parties to file Administrative Expense Claims (as defined below) are fair and reasonable.

           P.        The Debtors have shown that cause exists for establishing July 15, 2009 as

the Administrative Expense Bar Date, in accordance with General Order M-279.

Q.      Upon the record of the Preliminary Modification Hearing and these cases,

the relief requested in the Motion as supplemented by the Motion Supplement is in the best

interests of the Debtors, their estates, their creditors, their interest holders, and other parties-in-

interest.

R.      The Debtors have demonstrated that sound business judgment exists to

schedule the Alternative Sale Hearing on July 23, 2009.

Accordingly, it is hereby

ORDERED, ADJUDGED AND DECREED THAT:

1.      The Motion as supplemented by the Motion Supplement is GRANTED

except to the extent provided herein.

2.      To the extent not already withdrawn or reflected in changes to the

Supplement that have been made as required by the Court, all objections filed or otherwise

asserted against the Motion, the Motion Supplement, or the Supplement are hereby overruled.

3.      The Debtors are hereby authorized and directed to solicit votes to accept

or reject the Modified Plan in accordance with the procedures set forth in the December 10

Solicitation Procedures Order, as modified herein.

4.      Key Dates And Deadlines.  When applying the procedures set forth in the

December 10 Solicitation Procedures Order with respect to the Modified Plan, the following

dates shall replace the dates included in the December 10 Solicitation Procedures Order:

| Event And Paragraph From December 10 Solicitation Procedures Order | Proposal Under Plan Modification Approval Order |
|---|---|
| Deadline For Trustees And Transfer Agents Must Provide Record Holder Information (as of June 8, 2009 voting record date) To Securities Voting Agent (¶14) | no later than two business days after the later of (a) the Record Date (defined below) and (b) the date this order is entered |
| Solicitation Mailing Deadline (¶10) | June 20 2009 |
| Deadline For Filing Of Plan Exhibits And | July 2, 2009 |

6

| Event And Paragraph From December 10 Solicitation Procedures Order | Proposal Under Plan Modification Approval Order |
|---|---|
| Disclosure Statement Appendices (the "Exhibit Filing Date") (¶40) | |
| Rule 3018(a) Motion Deadline (¶24-26) | Received no later than 4:00 p.m. (prevailing Eastern time) on July 2, 2009<br><br>If the Debtors objected to a claim or interest after June 19, 2009, the Rule 3018(a) Motion Deadline would be extended for that claim or interest such that the deadline would be ten days following the filing of the Debtors' objection |
| Plan Objection Deadline (¶8) | July 15, 2009 at 4:00 p.m. (prevailing Eastern time) |
| Voting Deadline (¶29) | Received by the Voting Agents by 7:00 p.m. (prevailing Eastern time) on July 15, 2009 |
| Voting Agent Certification Deadline (¶37) | July 20, 2009 at 4:00 p.m. (prevailing Eastern time) |
| Final Modification Hearing Date (¶7) | To commence on July 23, 2009 |

The Debtors shall file their reply in support of the Modified Plan and the Master Disposition Agreement and in support of the transactions set forth in the Master Disposition Agreement, as modified by the 363 Implementation Agreement (as defined below) and file any proposed revisions to the final order approving the Modified Plan and submit a proposed form of section 363 sale order no later than July 21, 2009.

      5.     Ballots. The Debtors' proposed forms of ballots, in substantially the forms annexed to this order as Exhibit B (as may be specifically modified for particular classes of claims or interests), are hereby approved for use in connection with the Debtors' solicitation of votes to accept or reject the Modified Plan.

      6.     Notices. Except as set forth below, the Notices listed in the chart below and attached hereto substantially in the forms of Exhibits C, D, E, F, and G attached hereto, are substantially similar to those approved by the December 10 Solicitation Procedures Order and

the Debtors are authorized to use such notices in same manner that each corresponding notice

was used under the December 10 Solicitation Procedures Order, except as otherwise set forth

herein:

| Exhibit to this Order | Title of Notice | Exhibit to December 10 Solicitation Procedures Order |
|---|---|---|
| C | Unimpaired Notice | D |
| D | Non-Voting Status Notice | E |
| E | Notice To Parties Subject To A Post-Solicitation Date Objection | F |
| F | Notice to Employees Regarding Multiple Solicitation Documents | N |
| G | Final Plan Modification Approval Hearing Notice | C |
| H | Amended Cure Amount Notice | O |
| I | Notice of Non-Assumption of Executory Contracts | N/A |
| J | GM Components Assumption and Assignment Notice | N/A |
| K | Parnassus Assumption and Assignment Notice | N/A |
| L | Administrative Expense Claim Request | N/A |
| M | Notice of Administrative Claim Bar Date | N/A |
| N | Supplemental Procedures for Evaluating Non-Solicited Alternative Transactions | N/A |

7.    Approval Of Supplement. Pursuant to Bankruptcy Rule 3017(b), the

Supplement (filed June 16, 2009) is approved as containing adequate information within the

meaning of section 1125(a) of the Bankruptcy Code.

8.    The Debtors are authorized to (i) make non-material changes to the

Supplement and related documents (including the exhibits thereto and to the Supplement) and (ii)

revise the Supplement and related documents (including the exhibits thereto) to add further

disclosure concerning events occurring at or after the Preliminary Modification Hearing, before

distributing it to each person and entity in accordance with the terms of this order; provided,

however, that the Debtors shall file copies with the Court of any changed pages blacklined to show such changes.

    9.  Final Modification Hearing Date. The hearing (the "Final Modification Hearing") to consider approval of the Modified Plan, as the same may be further modified or amended, shall commence on July 23, 2009 (the "Final Modification Hearing Date"), at 10:00 a.m. (prevailing Eastern time), or as soon thereafter as counsel can be heard, before the undersigned United States Bankruptcy Judge, in the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 610, New York, New York 10004. Subject to the Alternative Sale Hearing, the Final Modification Hearing may be adjourned from time to time by announcing such adjournment in open court or otherwise, all without further notice to parties-in-interest.

    10.  Objections To Proposed Modifications To Confirmed Plan. July 15, 2009 at 4:00 p.m. (prevailing Eastern time) (the "Modified Plan Objection Deadline") is fixed as the last date and time for filing and serving objections to approval of the Modified Plan. Objections, if any, must (i) be in writing, (ii) comply with the Bankruptcy Rules and the Local Bankruptcy Rules for the Southern District of New York, (iii) set forth the name of the objector and the nature and amount of any claim or interest asserted by the objector against or in the Debtors, their estates, or their property, (iv) state with particularity the legal and factual bases for the objection, and (v) be filed with the Court together with proof of service, and served by personal service, overnight delivery, or first-class mail, with a hard copy delivered to the chambers of the Honorable Robert D. Drain, and served so that they are RECEIVED no later than the Modified Plan Objection Deadline by the following (collectively, the "Notice Parties"):

   The Debtors

Delphi Corporation
5725 Delphi Drive
Troy, Michigan 48098
Att'n: General Counsel

Counsel For The Debtors
Skadden, Arps, Slate, Meagher & Flom LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(800) 718-5305
Att'n: John Wm. Butler, Jr.
Att'n: Ron E. Meisler

and

Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square
New York, New York 10036
Att'n: Kayalyn A. Marafioti
Att'n: Gregory W. Fox

United States Trustee
The Office of the United States Trustee
33 Whitehall Street, Suite 2100
New York, New York 10004
Att'n: Brian Masumoto

Counsel For The Creditors' Committee
Latham & Watkins LLP
885 Third Avenue
New York, New York 10022
Att'n: Robert J. Rosenberg
Att'n: Mitchell A. Seider
Att'n: Mark A. Broude

Counsel For The Postpetition Lenders
Davis Polk & Wardwell
450 Lexington Avenue
New York, New York 10022
Att'n: Donald S. Bernstein
Att'n: Brian M. Resnick

Counsel For The Tranche C Collective
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, New York 10019

Att'n: Richard Mancino
Att'n: Marc Abrams

Counsel For The United States Department of the Treasury
Cadwalader, Wickersham & Taft LLP
One World Financial Center
New York, New York 10281
Att'n: John J. Rapisardi
Att'n: Oren B. Haker

Counsel For The United States Department of Justice
United States Department of Justice
86 Chambers Street, 3rd Floor
New York, New York 10007
Att'n: Matthew L. Schwartz
Att'n: Joseph N. Cordaro

Counsel For General Motors Corporation
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
Att'n: Jeffrey L. Tanenbaum
Att'n: Robert J. Lemons

Counsel For Parnassus Holdings II, LLC
Schulte Roth & Zabel LLP
919 Third Avenue
New York, NY 10022
Att'n: Adam C. Harris
Att'n: David J. Karp

**Objections not timely-filed and served in the manner set forth above may not be considered**

**by the Court and may be deemed overruled.**

        11.    Record Date. Notwithstanding anything to the contrary in Bankruptcy

Rule 3017(d), June 8, 2009 shall be fixed as the record date (the "Record Date") for determining

the members of Class A, Class C-1 (General Unsecured Claims), Class C-2 (PBGC Claim), and

Class D[3] (together, the "Voting Classes") entitled to receive Solicitation Packages and entitled to

vote to accept or reject the Modified Plan.

           12.     Content And Transmittal Of Solicitation Packages. On or before June 20,

2009 (the "Solicitation Date"), the Debtors shall cause Kurtzman Carson Consultants LLC (the

"Creditor Voting Agent" or "KCC") and Financial Balloting Group, LLC (the "Securities Voting

Agent," and together with the Creditor Voting Agent, the "Voting Agents") or their agents to

transmit by first class mail to the holders of claims against and interests in the Debtors as of the

Record Date, with respect to Classes A, C-1, C-2, and D, respectively, a solicitation package (the

"Solicitation Package") containing a copy or conformed version of:

      A.     the Final Modification Hearing Notice;

      B.     to the extent applicable, the appropriate ballot and notice as set forth above for the specific creditor or interest holder, with appropriate voting instructions, in substantially the forms attached hereto as Exhibit B (as may be modified for particular classes and with instructions attached thereto), and a pre-addressed postage prepaid return envelope;

      C.     a CD-ROM containing this order (without exhibits attached), a copy of the December 10 Solicitation Procedures Order (without exhibits), the Supplement, the Modified Plan, and the publicly-filed materials appended thereto; and

      D.     a solicitation letter from the official committee of unsecured creditors, if any.

           13.     No Notice Or Transmittal For Classes F and I. With respect to holders of

claims or interests in Class F (Intercompany Claims), the Debtors shall not be required to send to

holders of Class F Intercompany Claims ballots, the Solicitation Package, or any other notice in

connection with the Motion or the Motion Supplement.

---

[3]    Class A consists of all Secured Claims against the applicable Debtor or consolidated group of Debtors. Class C-1 consists of all General Unsecured Claims against the applicable Debtor or consolidated group of Debtors, Class C-2 consists of PBGC Claims against the applicable Debtor or consolidated group of Debtors, and Class D consists of the GM Claim against the applicable Debtor or consolidated group of Debtors.

14. With respect to holders of claims or interests in non-voting Class I (Other Interests), the Debtors shall not be required to send to the members of Class I ballots, the Solicitation Package, or any other notice in connection with the Motion or the Motion Supplement.

15. Unimpaired Notice To Be Provided To Holders Of Claims In Class K. The Unimpaired Creditors (as defined in the Modified Plan) in Class K (Other Priority Claims) are conclusively presumed to have accepted the Modified Plan and solicitation of votes from holders of claims in Class K is not required. In lieu of a ballot and in accordance with Bankruptcy Rule 3017(d), the Solicitation Packages mailed to the Unimpaired Creditors in Class K shall contain a notice of non-voting status substantially in the form of Exhibit C to this order.

16. Non-Voting Status Notice To Be Provided To Holders Of Claims And Interests In Classes E, G, and H. With respect to holders of claims or interests in non-voting Classes E, G, and H, the Debtors shall send to such holders a (i) Non-Voting Status Notice substantially in the form of Exhibit D annexed hereto and (ii) a Final Plan Modification Approval Hearing Notice (as defined below) substantially in the form of Exhibit G annexed hereto. The Debtors shall also send holders of claims and interests in Classes E, G-2, and H (i) an Administrative Expense Claim Form (as defined below), substantially in the form of Exhibit L annexed hereto, and (ii) a Notice of Administrative Claim Bar Date (as defined below), substantially in the form of Exhibit M annexed hereto. The Debtors shall not be required to send to holders of claims or interests in non-voting Classes E, G, and H the Solicitation Package, or any other notice in connection with the Motion or the Motion Supplement.

17. Final Modification Hearing Notice. The notice of the Final Modification Hearing and the Modified Plan Objection Deadline (the "Final Modification Hearing Notice")

substantially in the form of Exhibit G annexed hereto is approved and shall be included in the

Solicitation Packages distributed to all creditors and interest holders and all persons or entities on

the Debtors' master service list.

18.     Subject to the exceptions detailed in this order with regard to members of

Classes F and I, notice of the Final Modification Hearing shall be effected in the same manner,

and served on the same categories of parties, as that of the Confirmation Hearing Notice in the

December 10 Solicitation Procedures Order; provided that the Debtors shall only be required to

provide supplemental publication notice of the Final Modification Hearing by causing the Final

Modification Hearing Notice to be published not fewer than 25 days before the Final

Modification Hearing in the Detroit Free Press, the New York Times (national edition), the Wall

Street Journal (national, European, and Asian editions), and USA Today (worldwide). The Final

Modification Hearing Notice complies with the requirements of Bankruptcy Rules 2002(c)(3)

and 3017(f) by including in conspicuous bold language a statement that the Modified Plan

proposes releases and injunctions against conduct not otherwise enjoined under the Bankruptcy

Code, describing briefly the nature of the releases and injunctions, identifying the persons and

entities that are subject to the releases and injunctions, and providing those persons and entities

that are not creditors or equity security holders with contact information to obtain a copy of the

Modified Plan and Supplement.

19.     Additional Procedures For Vote Tabulation. Holders of claims in Classes

1D through 12D shall receive a single ballot (the "GM Ballot"), which ballot shall apply to all

claims asserted by General Motors Corporation against all Debtors. The vote with respect to the

GM Ballot shall be applied to each Debtor entity and/or each consolidated group of Debtors.

Holders of claims in Classes 1C-2 through 12C-2 shall receive a single ballot (the "PBGC

Ballot"), which ballot shall apply to all claims asserted by the Pension Benefit Guaranty

Corporation against all Debtors. The vote with respect to the PBGC Ballot shall be applied to

each Debtor entity and/or each consolidated group of Debtors.

        20.    Vote Certification. The requirement under Rule 3018-1 of the Local

Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York

for the certification of acceptance and rejections of the plan is modified to require the Voting

Agents to file their certifications no later than 4:00 p.m. (prevailing Eastern time) on July 20,

2009.

        21.    Service of all notices and documents described herein in the time and

manner as set forth herein, including the service and publication of the Final Modification

Hearing Notice, as described in the Motion Supplement, shall be adequate and sufficient and no

other or further notice shall be necessary.

        22.    Effect Of Failure Of Class To Vote. On the record at the June 10, 2009

hearing, the Debtors reserved their right to assert at the Final Modification Hearing that if no

claim holder of a particular class submits a vote to accept or reject the Modified Plan, such class

shall be deemed to have accepted the Modified Plan. The Debtors' ballots shall inform creditors

that the Debtors have requested the Bankruptcy Court to make such a finding and that creditors

are therefore encouraged to timely complete and return their ballots.

        23.    Maintenance Of Records By Intermediary Record Holders. Pursuant to

the procedures approved in the December 10 Solicitation Procedures Order, Intermediary Record

Owners who were required to use the Master Ballot voting process were required to retain for

inspection by the Court the Beneficial Owner Ballots cast by Beneficial Owners for one year

following the January 11, 2008 Voting Deadline set by that order, and Intermediary Record

Owners who were required to send Prevalidated Ballots to Beneficial Owners for direct return to

the respective Voting Agent were also required to retain for inspection by the Court a list of

those Beneficial Owners to whom the Prevalidated Ballots were sent for one year following the

January 11, 2008 Voting Deadline. To facilitate the Debtors' resolicitation of votes on the

Modified Plan, the Intermediary Record Owners shall maintain these records and any other data

relating to Beneficial Holders for additional time, until at least July 15, 2010.

         24.    Distribution Of Solicitation Packages By Intermediary Record Owners.

Within five business days after an Intermediary Record Owner's receipt of the Solicitation

Packages, the Intermediary Record Owner shall distribute the Solicitation Packages to the

respective Beneficial Owners for which they hold Securities and who are entitled to vote on the

Modified Plan. For the avoidance of doubt, holders of interests in Class G (Common Stock)

shall only receive a (i) Non-Voting Status Notice and (ii) Final Plan Modification Approval

Hearing Notice.

         25.    Voting By Beneficial Owners. Intermediary Record Owners are hereby

authorized and directed to use the appropriate procedure set forth below for obtaining the votes

of Beneficial Owners. First, the Intermediary Record Owners may forward the Solicitation

Package to the Beneficial Owners of the Securities who are entitled to vote on the Modified Plan

for voting, which package shall include a beneficial owner ballot substantially in the form of the

beneficial owner ballots attached as part of Exhibit B to this order (the "Beneficial Owner Ballot")

and a return envelope provided by, and addressed to, the Intermediary Record Owner. Upon

receipt of the Beneficial Owner Ballots, the Intermediary Record Owner shall summarize the

individual votes of its Beneficial Owners, as reflected on the Beneficial Owner Ballots, on a

master ballot in substantially the form of the master ballots attached as part of Exhibit B to this

16

order (each a "Master Ballot"). The Intermediary Record Owners shall then return the Master

Ballot to the Securities Voting Agent prior to the Voting Deadline.

26.    Alternatively, if an Intermediary Record Owner is unable to use the option

above, it may prevalidate a Beneficial Owner Ballot (a "Prevalidated Ballot") by signing that

ballot and by indicating on that ballot the identity of the Intermediary Record Owner, the amount

of Securities owned by the Beneficial Owner, and the appropriate account numbers through

which the Beneficial Owner's holdings are derived.  The Intermediary Record Owner shall then

forward a Solicitation Package, including the Prevalidated Ballot and a return envelope

addressed to the appropriate Securities Voting Agent, for voting by the Beneficial Owner.

27.    The Debtors are hereby authorized to reimburse Intermediary Record

Owners for their reasonable and customary out-of-pocket expenses incurred in performing the

tasks described above upon written request of the Intermediary Record Owner, subject to the

Court's jurisdiction to resolve any disputes over any such request for reimbursement.

28.    Notices To Union-Represented Employees And Former Employees.  The

Debtors shall not be required to provide the current and former employees represented by Unions

(as defined in the Modified Plan) or non-represented hourly active employees and retirees with

any specialized notices.

29.    Notice To Employees Receiving Multiple Solicitation Documents.  For

those current and former employees who may receive multiple documents as part of the

solicitation process, the Debtors shall be authorized, in their sole discretion, to make available by

either normal internal communications channels or posting on the Delphi intranet and at

www.delphidocket.com a notice substantially in the form attached hereto as hereto as Exhibit F

which form is hereby approved.

30.     Modified Cure Claim Procedures. The procedures established in the
December 10 Solicitation Procedures Order with respect to the assumption of executory
contracts shall continue in full force and effect, except as expressly modified herein. The
Debtors shall continue to apply the previously established procedures to resolve the remaining
disputed cure amounts, except as provided herein. Notwithstanding anything to the contrary in
the December 10 Solicitation Procedures Order, the Confirmed Plan, or the Confirmation Order,
each counterparty to a Material Supply Agreement (as defined in the Modified Plan) to the extent
owed a Cure Amount pursuant to the procedures established by the December 10 Solicitation
Procedures Order, the Confirmation Order, or as modified by this order, shall be paid in cash for
the cure of monetary defaults under a Material Supply Agreement assumed pursuant to the
Modified Plan. Except as provided below, the Debtors shall not be required to send out new or
additional Cure Amount Notices (as defined in the Modified Plan) under the Modified Plan. The
Debtors shall work to resolve objections that were timely submitted pursuant to the procedures
set forth in the December 10 Solicitation Procedures Order, the Confirmed Plan, and
Confirmation Order with respect to the Cure Amount Notices.

31.     For any executory contracts or unexpired leases for which the Debtors sent
Cure Amount Notices containing amounts which were overstated, at least 20 days prior to the
Effective Date (as defined in the Modified Plan) of the Modified Plan, the Debtors are authorized
but not directed to file with the Court and to serve a separate notice substantially in the form of
Exhibit H attached hereto which shall state the amount the Debtors believe necessary to cure
such contract (the "Amended Cure Amount Notice"). If a contract counterparty does not object
to the Amended Cure Amount Notice by the deadline set forth below, the cure as set forth in the

Amended Cure Amount Notice shall be paid pursuant to the procedures set forth in the Modified
Plan.

          32.     If an affected contract counterparty disagrees with the cure amount listed
on the Amended Cure Amount Notice, the contract counterparty shall then have ten days from
the service of the Amended Cure Amount Notice to object to the revised cure amount, and shall
be required to state in its objection, with specificity, the legal and factual basis of its objection.
Any objection to an Amended Cure Amount Notice must be filed with the Court and be served
on the Notice Parties. If no objection is timely received, each counterparty shall be deemed to
have consented to the cure amount set forth on the Amended Cure Amount Notice.

          33.     Any unresolved objection to an Amended Cure Amount Notice shall be
scheduled to be heard at a claims hearing following 20 days' notice thereof provided by the
Debtors or the Reorganized Debtors, as applicable, to the applicable counterparty, or such other
date as may be agreed upon by the parties. If an objection to an Amended Cure Amount Notice
cannot be resolved consensually among the parties, notwithstanding anything to the contrary
herein or in the Confirmation Order, the Debtors or the Reorganized Debtors, as the case may be,
would have the right to reject the contract or lease for a period of five days after entry of a final
order establishing cure in an amount not acceptable to the Debtors or the Reorganized Debtors,
as the case may be, or the assignee.

          34.     For counterparties to Material Supply Agreements (as defined in the
Confirmed Plan) or such Other Executory Contracts or Unexpired Leases (as defined in the
Confirmed Plan) who submitted Cure Proposals by the March 10, 2008 deadline, whether or not
such Cure Proposal was subject to a cure proposal objection, whose contracts have expired or
have been terminated since the Cure Amount Notices were sent out, the Debtors shall send a

Notice of Non-Assumption of Executory Contracts substantially in the form attached hereto as Exhibit I, which form is hereby approved, by mailing such notice to the counterparty to an expired or terminated Material Supply Agreement or Other Executory Contracts or Unexpired Leases by July 2, 2009, notifying the counterparty that such contracts are no longer being assumed or cured.

35.     At least 20 days prior to the Effective Date of the Modified Plan, the Debtors shall file with the Court and serve (a) a notice (the "GM Components Assumption and Assignment Notice"), substantially in the form attached hereto as Exhibit J, identifying GM Components as the party to which the Debtors' would assign all of their rights, title, and interests in certain executory contacts and unexpired leases (the "GM Components Assumed Contracts") as provided in the master disposition agreement attached as an exhibit to the Modified Plan (the "Master Disposition Agreement") and (b) a notice (the "Parnassus Assumption and Assignment Notice," and together with the GM Components Assumption and Assignment Notice the "MDA Assumption and Assignment Notices"), substantially in the form attached hereto as Exhibit K, identifying Parnassus as the party to which the Debtors would assign all of their rights, title, and interests in certain executory contacts and unexpired leases (the "Parnassus Assumed Contracts," and together with the GM Components Assumed Contracts, the "Assigned Contracts") as provided in the Master Disposition Agreement.  The cure amounts established pursuant to the procedures in the Confirmed Plan and the December 10 Solicitation Procedures Order shall remain in effect for the Assigned Contracts, except as may be modified by the Amended Cure Amount Notice.  Each contract counterparty to an Assigned Contract shall have ten days from the service of the applicable MDA Assumption and Assignment Notice to object to the proposed assumption, including an objection on account of a postpetition default, and would be required to

20

state in its objection, with specificity, the legal and factual basis of its objection. Contract

counterparties shall not be entitled to dispute previously established cure amounts. Any

objection to an MDA Assumption and Assignment Notice must be filed with the Court and

served on the Notice Parties. If no objection is timely received, each counterparty to the

Assigned Contracts shall be deemed to have consented to the assumption and shall be deemed to

have waived its right to challenge the Debtors' or Reorganized Debtors' assumption of such

contract or lease and shall be barred from challenging the ability of any Debtor or Reorganized

Debtor, as the case may be, or its assignee to provide "adequate assurance of future performance"

(within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be

assumed, or any other matter pertaining to assumption. If no objection is timely received, each

counterparty to the Assigned Contracts would be deemed to have consented to the assignment to

GM Components or Parnassus, as applicable, of the Assigned Contracts and would be deemed to

have waived its right to challenge the Debtors' or Reorganized Debtors', as the case may be,

assignment of such contract or lease and would be barred from challenging the ability of any

Debtor or Reorganized Debtor, as the case may be, or GM Components or Parnassus or their

assignees to provide "adequate assurance of future performance" (within the meaning of section

365 of the Bankruptcy Code) under the contract or lease to be assumed, or any other matter

pertaining to assumption. If an alternative transaction described on Exhibit N hereto is selected

by the Debtors, the contract counterparties shall be provided notice (the "Successful Bidder

Notice") of such transaction and the opportunity to challenge the "adequate assurance of future

performance" of the Successful Bidder at or prior to the Final Modification Hearing or the

Alternative Sale Hearing, as applicable.

36.    Any unresolved objection to an MDA Assumption and Assignment Notice

or to the Successful Bidder Notice would be scheduled to be heard at a claims hearing following

20 days' notice thereof provided by the Debtors or the Reorganized Debtors, as applicable, to the

applicable counterparty, or such other date as may be agreed upon by the parties. If an objection

to an MDA Assumption and Assignment Notice or to the Successful Bidder Notice cannot be

resolved consensually among the parties, the Debtors propose that notwithstanding anything to

the contrary herein or in the Confirmation Order, the Debtors or the Reorganized Debtors, as the

case may be, would have the right to reject (and shall if directed by a Buyer pursuant to the terms

of the Master Disposition Agreement or the agreement with the Successful Bidder, as applicable)

the contract or lease for a period of five days after entry of a final order establishing adequate

assurance on terms not reasonably acceptable to the Debtors or the Reorganized Debtors, as the

case may be, and the assignee.

37.    Elimination Of Notice For Reclamation Claims. The Debtors shall not be

required to send out any additional notices to holders of reclamation claims asserted by sellers of

goods with a statutory or common law right to reclamation or holders of such claims (the

"Reclamation Claims") in connection with the solicitation of votes on the Modified Plan. The

Debtors shall provide each holder of a Reclamation Claim with a Class C-1 (General Unsecured

Claims) ballot including the amount of the Reclamation Claim as a general unsecured

nonpriority claim.

38.    Establishment Of Bar Date For Administrative Expense Claims. Any

party that wishes to assert an administrative claim under 11 U.S.C. § 503(b) for the period from

the commencement of these cases through June 1, 2009 shall file a proof of administrative

expense (each, an "Administrative Expense Claim Form") for the purpose of asserting an

22

administrative expense request, including any substantial contribution claims (each, an

"Administrative Expense Claim" or "Claim") against any of the Debtors. July 15, 2009 at 5:00

p.m. prevailing Eastern time shall be the deadline for submitting all Administrative Expense

Claims (the "Administrative Expense Bar Date") for the period from the commencement of these

cases through June 1, 2009.

                    39.     Notwithstanding anything in the preceding paragraph, creditors holding or

wishing to assert the following types of claims against the Debtors need not file an

Administrative Expense Claim Form:

- Any claim for postpetition goods and services delivered to the Debtors prior to June 1, 2009 that are not yet due and payable pursuant to the applicable contract terms;

- Employee claims arising prior to June 1, 2009 for wages, salary, and other benefits arising in the ordinary course of business that are not yet due and payable;

- Any claim for which the party has already properly filed an Administrative Expense Claim Form or a proof of claim form with the Court which has not been expunged by order of the Court and provided that such proof of claim clearly and unequivocally sets forth that such claim is made for an administrative expense priority;

- Any claim for fees and/or reimbursement of expenses by a professional employed in these chapter 11 cases accruing through January 25, 2008, to the extent that such claim is subject to this Court's Interim Compensation Orders (defined below);[4] or

---

4    See Order Under 11 U.S.C. § 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals, dated November 4, 2005 (Docket No. 869) (the "Interim Compensation Order"); Supplemental Order Under 11 U.S.C. § 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals, dated March 8, 2006 (Docket No. 2747) (the "Supplemental Compensation Order"); Second Supplemental Order Under 11 U.S.C. Section 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals, dated March 28, 2006 (Docket No. 2986) (the "Second Supplemental Interim Compensation Order"); and Third Supplemental Order Under 11 U.S.C. § 331 Establishing Procedures For Interim Compensation And Reimbursement Of Expenses Of Professionals, dated May 5, 2006 (Docket No. 3630) (the "Third Supplemental Interim Compensation Order"); Fourth Supplemental Order Under 11 U.S.C. Section 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals, dated July 13, 2006 (Docket No. 4545) (the "Fourth Supplemental Interim Compensation Order"); Fifth

(cont'd)

- Any claim asserted by any Debtor or any direct or indirect subsidiary of any of the Debtors in which the Debtors in the aggregate directly or indirectly own, control, or hold with power to vote, 50 percent or more of the outstanding voting securities of such subsidiary.

40. To submit a valid Administrative Expense Claim, parties-in-interest must submit a Claim on an Administrative Expense Claim Form substantially in the form attached hereto as Exhibit L and deliver such Claim to its claims agent:

> Kurtzman Carson Consultants LLC
> 2335 Alaska Avenue
> El Segundo, California 90245
> Att'n: Delphi Corporation, et al.
> Case No. 05-44481 (RDD)

so as to be received no later than the Administrative Expense Bar Date. Claims may be submitted in person or by courier service, hand delivery or mail addressed to Kurtzman Carson Consultants LLC at the foregoing address. Any Administrative Expense Claim Form submitted by facsimile, e-mail, or by other electronic means shall not be accepted and shall not be deemed filed until such Administrative Expense Claim Form is submitted by one of the methods described in the foregoing sentence. Administrative Expense Claim Forms shall be deemed filed only when actually received by KCC.

41. Any party that is required but fails to file a timely Administrative Expense Claim Form shall be forever barred, estopped and enjoined from asserting such claim against the

---

*(cont'd from previous page)*

Supplemental Order Under 11 U.S.C. Section 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses, dated October 13, 2006 (Docket No. 5310) (the "Fifth Supplemental Interim Compensation Order"); Sixth Supplemental Order Under 11 U.S.C. Section 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals, dated December 12, 2006 (Docket No. 6145) (together with the Interim Compensation Order, the Supplemental Compensation Order, the Second Supplemental Interim Compensation Order, the Third Supplemental Interim Compensation Order, the Fourth Supplemental Interim Compensation Order, and the Fifth Supplemental Interim Compensation Order, the "Interim Compensation Orders").

Debtors, and the Debtors and their property shall be forever discharged from any and all indebtedness, liability, or obligation with respect to such claim.

      42.     To provide further notice of the Administrative Expense Bar Date, the Debtors are authorized, but not directed, to mail a notice ("Notice of Administrative Claim Bar Date") substantially in form attached hereto as Exhibit M along with a form of Administrative Expense Claim Form to all parties that will receive the Final Modification Hearing Notice and any other party in the Debtors' discretion that they deem appropriate by the June 20, 2009 Solicitation Mailing Deadline.  Notwithstanding the foregoing, the Debtors shall not be required to send a Notice of Administrative Claim Bar Date or an Administrative Expense Claim Form with the Solicitation Packages to be received by (a) holders of Senior Note Claims (as defined in the Modified Plan), (b) holders of TOPrS Claims (as defined in the Modified Plan), or (c) holders of interests in Class G-1.  For the avoidance of doubt, the Debtors shall not be required to send a Notice of Administrative Claim Bar Date or an Administrative Expense Claim Form to any other holder or owner of any of the Debtors' Senior Notes (as defined in the Modified Plan), TOPrS (as defined in the Modified Plan), or Existing Common Stock (as defined in the Modified Plan) on account of their holding of such securities.

      43.     Within five days of the date of entry of this order, or as soon thereafter as practicable, the Debtors shall publish the Notice of Administrative Claim Bar Date in the Detroit Free Press, the New York Times (national edition), the Wall Street Journal (national, European, and Asian editions), and USA Today (worldwide) and (b) electronically through posting on the Delphi legal information website, www.delphidocket.com.

      44.     Provision of notice of the Administrative Expense Bar Date to the persons and entities set forth in the Supplement and this order, in the manner set forth above and as

25

described more particularly in the Motion Supplement, shall constitute adequate and sufficient

notice the Administrative Expense Bar Date and shall be deemed to satisfy the requirements of

the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules of this Court.

        45.    Scheduling A Sale Hearing Date In The Alternative. If the Debtors are not

able to implement the transactions contemplated in the Master Disposition Agreement through

the Modified Plan and obtain approval of such modifications under section 1127 of the

Bankruptcy Code on July 23, 2009, the Court shall conduct on July 23, 2009 an asset sale

hearing under section 363 of the Bankruptcy Code to complete the transactions set forth in the

Master Disposition Agreement, as may be modified by the "363 Implementation Agreement" (as

defined in the Master Disposition Agreement). The Debtors shall file the 363 Implementation

Agreement by July 2, 2009. Any objections to the Master Disposition Agreement being

consummated pursuant to 11 U.S.C. §§ 363 and 365 and as modified by the 363 Implementation

Agreement must be filed by July 15, 2009 at 4:00 p.m. (prevailing Eastern time) and shall be

served in the same manner and on the same parties as objections to the Modified Plan as

provided in this order. The failure of any objecting person or entity to timely file and serve its

objection by July 15, 2009 may be a bar to the assertion, at the July 23, 2009 hearing or

thereafter, of any objection to (a) the consummation of the Master Disposition Agreement, as

modified by the 363 Implementation Agreement, pursuant to 11 U.S.C. §§ 363 and 365, (b) the

sale, or (c) the Debtors' consummation and performance of the Master Disposition Agreement.

The Debtors shall file a proposed form of sale order to implement the transactions contemplated

in the Master Disposition Agreement, as modified by the 363 Implementation Agreement, by

July 21, 2009.

26

46.    Supplemental Procedures for Evaluating Non-Solicited Alternative

Transactions. To the extent that a "Potential Bidder" desires to submit to the Debtors a proposed

alternative transaction to be considered by the Debtors in lieu of the Master Disposition

Agreement, the procedures attached hereto as Exhibit N and incorporated herein by reference

shall govern in all respects (the "Supplemental Procedures"). The Debtors may seek Court

approval, in recognition of the Company Buyer's expenditure of time, energy, and resources, of

an expense reimbursement or other form of buyer protection to be paid from the proceeds of a

successful alternative transaction if the Company Buyer is not the Successful Bidder (as such

term is defined in the Supplemental Procedures). If the Court approves such reimbursement or

other protection, such order shall become part of the Supplemental Procedures. To the extent

that any DIP Lender participates directly or indirectly as a Potential Bidder, other than solely in

respect of the exercise of remedies under section 363(k) of the Bankruptcy Code, such DIP

Lender shall be deemed to have irrevocably consented to the transactions contemplated by the

Supplemental Procedures and ultimately approved by this Court for all purposes under the DIP

Credit Agreement and applicable law (with the exception of disputing whether the Supplemental

Procedures were, in fact, followed). The retained professionals to the Creditors' Committee are

authorized and directed to monitor the administration of the procedures established herein and

may advise the Court through a section 105 chambers conference or as the Court may otherwise

permit or direct of any material non-compliance with these procedures by any person. In order

to facilitate an alternative transaction, notwithstanding any other provision in the Master

Disposition Agreement, any other agreement contemplated thereby or any agreement between

GM and Parnassus or their respective affiliates, GM, its affiliates and representatives shall be

entitled to (i) furnish to any individual or entity (which may include, without limitation, any

27

potential purchaser, financing source or other interested party) (A) all exhibits, schedules and

agreements under the Master Disposition Agreement and any other related agreements between

GM and Parnassus or their respective affiliates and (B) information related to the Transferred

Assets and Liabilities (as defined in the Supplemental Procedures) and the transactions

contemplated by the Master Disposition Agreement or by agreements between GM and

Parnassus or their respective affiliates, (ii) participate in discussions or negotiations with any

such individual or entity or (iii) enter into and perform under any agreement (whether as

purchaser, equity participant, financing source, customer or otherwise) with any such individual

or entity related to any alternative transaction. Neither Parnassus nor any of its affiliates shall

have any claims, including, without limitation, for breach of the Master Disposition Agreement,

any other agreement contemplated thereby or any other agreement between GM and Parnassus or

their respective affiliates, against GM, its affiliates, or its representatives arising from or relating

to any action permitted by this paragraph.

        47.    This Court shall retain jurisdiction to hear and determine all matters

arising from the implementation of this order.

Dated: New York, New York
      June 16, 2009


                    /s/ Robert D. Drain
                    UNITED STATES BANKRUPTCY JUDGE

28

## **Exhibit I**

## AFFIDAVIT OF MAUREEN A. McGLYNN

COMES NOW AFFIANT, being first duly sworn, and does hereby state:

1.    My name is Maureen A. McGlynn. I am an adult over the age of 21years and I am competent to give this testimony.

2.    I am an attorney, licensed to practice in the states of Missouri and Illinois.

3.    I am counsel of record for Delphi Corporation, now known as DPH Holdings Corp., in a lawsuit entitled *FKMT, LLC f/k/a Monarch Transport LLC v. Delphi Corporation et al.* currently pending in the Circuit Court of Jackson County, Missouri at Cause Number 0816-CV-39025 (hereafter, the "Missouri Action").

4.    On April 3, 2010, my office filed Delphi's Motion to Dismiss with the Jackson County Circuit Court, based upon plaintiff FKMT, LLC's failure to file the mandatory administrative claim with the United States Bankruptcy Court. To date, that motion has neither been set for hearing nor adjudicated.

5.    On June 25, 2010, at the instruction of my client, my office filed Delphi's Memorandum withdrawing the previously filed Motion to Dismiss in the Missouri Action.

6.    Also on June 25, 2010, my office filed Delphi's Motion to Hold Proceedings in Abeyance in the Missouri Action.

7.    There is no state or local rule governing a party's decision to withdraw a previously filed motion.

8.    It is my understanding and belief that Delphi's Motion to Dismiss has been effectively withdrawn and that the Jackson County Circuit Court will neither set it for hearing nor rule upon it.

FURTHER AFFIANT SAYETH NOT.

_____
Maureen A. McGlynn

Subscribed and sworn to before me, a Notary Public, this 2nd day of July, 2010.

_____
Notary Public

```
" NOTARY SEAL "
Nichole S. Webb, Notary Public
St. Louis City, State of Missouri
My Commission Expires 7/9/2011
Commission Number 07387445
```

# **Exhibit J**

## IN THE CIRCUIT COURT
## OF JACKSON COUNTY, MISSOURI
## CIVIL DIVISION

FKMT, LLC                                    )
f/k/a MONARCH TRANSPORT, LLC,                )
                                             )
    Plaintiff,             )
                                             )
v.                                           )
                                             )
DELPHI CORPORATION,                          )
                                             )
    Defendant, Counterclaimant,    )    Case No. 0816-CV39025
    And Third-Party Plaintiff,     )
                                             )    Division 6
v.                                           )    Chapter 60
                                             )
FKMT, LLC,                                   )
                                             )
    Plaintiff and Counter-defendant,    )
                                             )
and                                          )
                                             )
MONARCH TRANSPORT LLC,                       )
f/k/a OSAGE HOLDINGS, LLC,                   )
                                             )
    Third-Party Defendant.  )

## DELPHI CORPORATION'S MEMORANDUM WITHDRAWING ITS PREVIOUSLY FILED MOTION TO DISMISS, FOR SUBMISSION OF THE ISSUE TO THE BANKRUPTCY COURT

COMES NOW defendant Delphi Corporation, n/k/a DPH Holdings Corp. ("Delphi"), and respectfully withdraws its Motion to Dismiss for Failure to File the Mandatory Administrative Claim, originally filed with this Court on April 3, 2010, for submission of the issue to the United States Bankruptcy Court, and in support hereof states:

1.    On April 3, 2010, Delphi filed its Motion to Dismiss based upon plaintiff FKMT, LLC's failure to file the mandatory administrative claim with the United States Bankruptcy Court.

2.      More recently, the Honorable Robert D. Drain of the United States Bankruptcy Court, the judge presiding over Delphi's bankruptcy proceedings, expressed his willingness and preference to adjudicate matters related to his rulings and orders. Accordingly, in various state court cases, Delphi has now chosen to submit to Judge Drain issues such as those presented in its Motion to Dismiss herein, to ensure uniform interpretation and enforcement of the Bankruptcy Court's Orders.

3.      A bankruptcy court is undoubtedly the best qualified to interpret and enforce its own orders. *Texaco, Inc. vs. Sanders*, 182 B.R. 937, 947 (Bankr. S.D.N.Y. 1995). To this end, a bankruptcy court retains subject matter jurisdiction to enforce both the Plan and its orders confirming that Plan, and holds inherent authority to enforce its own orders. *In re Continental Airlines, Inc.*, 236 B.R. 318, 326 (Bankr. D.Del. 1999), *aff'd.* 2000 WL 1425751 (D.Del. Sep. 12, 2000), *aff'd*, 279 F.3d 226 (3rd Cir. 2002).

WHEREFORE, defendant Delphi Corporation hereby withdraws its previously-filed Motion to Dismiss for Failure to File the Mandatory Administrative Claim, and its Reply Brief related to that Motion, and states that it will submit the issue to the United States Bankruptcy Court for immediate determination.

KORTENHOF MCGLYNN LLC

Maureen A. McGlynn - #40552
mo@mcglynnluther.com
1015 Locust St., Suite 710
St. Louis, Missouri 63101
PH:  (314) 727-1000
Fax: (314) 727-2960
**Attorneys for Delphi Corporation**

2

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the above and foregoing was mailed, postage prepaid, on this 25th day of June , 2010, to:

**Attorney for Plaintiff**
Troy Renkemeyer
Renkemeyer Campbell, LP
7500 College Blvd., Suite 900
Overland Park, KS  66210

**Attorney for New Monarch**
Mr. Thomas M. Franklin
The Franklin Law Firm
300 UMB Bank Building
1310 Carondelet Dr.
Kansas City, MO  64114

# **Exhibit K**

**IN THE CIRCUIT COURT**
**OF JACKSON COUNTY, MISSOURI**
**CIVIL DIVISION**

FKMT, LLC )
f/k/a MONARCH TRANSPORT, LLC, )
)
    Plaintiff, )
)
v. )
)
DELPHI CORPORATION, )
)
    Defendant, Counterclaimant, )    Case No. 0816-CV39025
    And Third-Party Plaintiff, )
)    Division 6
v. )    Chapter 60
)
FKMT, LLC, )
)
    Plaintiff and Counter-defendant, )
)
and )
)
MONARCH TRANSPORT LLC, )
f/k/a OSAGE HOLDINGS, LLC, )
)
Third-Party Defendant. )

**DELPHI CORPORATION'S MOTION TO**
**HOLD PROCEEDINGS IN ABEYANCE**

    COMES NOW defendant Delphi Corporation, n/k/a DPH Holdings Corp. ("Delphi"), by

and through its attorneys Kortenhof McGlynn LLC and Maureen A. McGlynn, and prays that

this Court hold these proceedings in abeyance until further action has been taken in and by the

Bankruptcy Court. In this context, Delphi respectfully requests that the injunction ordered by the

United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court")

that became effective on October 6, 2009 be honored, and that the proceedings in this Court be

held in abeyance until further order of the Bankruptcy Court to the contrary. As further support,

Delphi states:

       1.      On October 8 and 14, 2005 Delphi and certain of its affiliates filed voluntary

petitions in the Bankruptcy Court for reorganization relief under 11 U.S.C. §§ 101-1330, as then

amended (the "Bankruptcy Code").

       2.      On July 30, 2009, the Bankruptcy Court entered its Order Approving

Modifications Under 11 U.S.C. § 1127(b) to (I) the First Amended Joint Plan of Reorganization

of Delphi Corporation and Certain Affiliates, Debtors and Debtors-In-Possession, as Modified

and (II) Confirmation Order (Docket No. 12359) (the "Modification Approval Order") (Docket

No. 18707), which modified and approved the Modified Plan.[1]

       3.      On October 6, 2009, the Modified Plan was substantially consummated and the

Debtors emerged from chapter 11 as reorganized entities.[2]

       4.      In addition, upon the effectiveness of the Modified Plan, an injunction was

imposed, including a permanent injunction against the continuation of any action to recover

against the Debtors that arose on or prior to October 6, 2009;

> The satisfaction, release, and discharge pursuant to [Article XI of the
> Modified Plan] **shall act as an injunction against any Person
> commencing or continuing any action, employment of process, or act
> to collect, offset, or recover any Claim, Interest, or Cause of Action
> satisfied, released, or discharged under [the Modified] Plan to the
> fullest extent authorized or provided by the Bankruptcy Code** . . .

Modified Plan Article 11.14.

Similarly, paragraph 22 of the Modification Approval Order provides that:

---

[1]  The Modified Plan is attached to the Modification Approval Order (Docket No. 18707) and can be found at
www.dphholdingsdocket.com.

[2]  On the effective date, the reorganized company Delphi Corporation filed the relevant documents in the state of
Delaware to change its corporate name to DPH Holdings Corp.

> **...the Debtors and all Persons shall be precluded and
> permanently enjoined on and after the Effective Date from (a)**
> commencing or **continuing in any manner any Claim, action,**
> employment of process, or **other proceeding of any kind with
> respect to any Claim, Interest, Cause of Action, or any other
> right or Claim against the Reorganized Debtors, which they
> possessed or may possess prior to the Effective Date...**

5.    The instant action for allegedly unpaid invoices is clearly a proceeding with

respect to a "Claim" or "Cause of Action" as defined in the Modified Plan,[3] which the Plaintiff

possessed prior to the Effective Date. Thus, this proceeding is plainly and expressly enjoined by

paragraph 22(a) of the Plan Modification Order. Said injunction is binding on this court pursuant

to the Supremacy Clause of the U.S. Constitution.[4]  See also Maryland v. Louisiana, 451 U. S.

725, 746 (1981).

6.    Indeed, as stated by the United States Supreme Court in Celotex v. Edwards,

"Persons subject to an injunctive order issued by a court with jurisdiction are expected to obey

that decree until it is modified or reversed. . . ."  514 U.S. 300 (1995), quoting GTE Sylvania,

Inc. v. Consumers Union of United States, Inc., 445 U.S. 375, 386 (1980).

7.    By continuing to pursue its claims in this Court, and by arguing that the

Bankruptcy Court injunction does not apply or need not be followed, Plaintiff is engaging in an

improper collateral attack on the Plan Modification Order – an action that the Supreme Court

found impermissible in Celotex.[5]

---

[3]  See Articles 1.25 and 1.29 of the Modified Plan, appended to the Modification Approval Order.

[4]  U.S. CONST. art. VI, cl. 2.

[5]  In Celotex, the United States Bankruptcy Court for the Middle District of Florida issued an injunction
prohibiting judgment creditors from proceeding against the debtor's sureties without the Bankruptcy Court's
permission. Notwithstanding that order, certain judgment creditors filed a motion with the United States District
Court for the Northern District of Texas seeking execution against a surety on a bond, which the district court
granted and the Fifth Circuit affirmed. The Supreme Court reversed the Fifth Circuit decision, ruling, among

*(cont'd)*

8.      As the Supreme Court clearly established in its Celotex opinion, Plaintiff should

address any complaint it has with the plan injunction in the Bankruptcy Court – not this Court.

Thus, until Plaintiff takes action in the Bankruptcy Court, this Court should honor the plan

injunction and hold this action in abeyance.

9.      Accordingly, Plaintiff is enjoined from proceeding with litigation to address any

claims against the entity formerly known as Delphi Corporation in this Court without first

seeking recourse in the Bankruptcy Court. Pursuant to the various orders of the Bankruptcy

Court, the underlying dispute should be resolved in this Court if and only to the extent that

Plaintiff obtains relief from the injunction from the Bankruptcy Court.

WHEREFORE, Delphi Corporation, n/k/a DPH Holdings prays that its Motion should be

granted, and all action in this Court should be held in abeyance until further order of the

Bankruptcy Court to the contrary.

**KORTENHOF MCGLYNN LLC**

Maureen A. McGlynn / #40552
mo@mcglynnlaw.com
1015 Locust St., Suite 710
St. Louis, Missouri 63101
PH:   (314) 727-1000
Fax:  (314) 727-2960
**Attorneys for Delphi Corporation**

---

*(cont'd from previous page)*

    other things, that if the judgment creditors thought that the injunction was improper, they should have challenged
the injunction in the bankruptcy court and then, if necessary, appealed to the appropriate Florida district court
and then to the Eleventh Circuit. Id. at 313. The Supreme Court went on to state that it was impermissible for
the judgment creditors to collaterally attack the injunction in the Texas federal courts as such action would
seriously undercut the orderly process of the law. Id.

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing was mailed, postage prepaid, on this 25th day of June , 2010, to:

**Attorney for Plaintiff**
Troy Renkemeyer
Renkemeyer Campbell, LP
7500 College Blvd., Suite 900
Overland Park, KS  66210

**Attorney for New Monarch**
Mr. Thomas M. Franklin
The Franklin Law Firm
300 UMB Bank Building
1310 Carondelet Dr.
Kansas City, MO  64114

5