Hearing Date And Time: July 22, 2010 at 10:00 a.m. (prevailing Eastern Time)

**MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP**
**Jeffrey Bernstein Esq.**
**Three Gateway Center**
**100 Mulberry Street**
**Newark, New Jersey 07102-4079**
**Telephone: (973) 622-7711**

- **and** -

**88 Pine Street, 24th Floor**
**New York, New York 10005**
**(212) 483-9490**

*Attorneys for New Jersey Self-Insurers Guaranty Association*

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 05-44481 (RDD) |
| DPH HOLDINGS CORP., et al. | Chapter 11 |
| Debtors. | (Jointly Administered) |

**SUPPLEMENTAL RESPONSE OF NEW JERSEY SELF-INSURERS**
**GUARANTY ASSOCIATION TO DEBTORS'**
**FORTY SIXTH OMNIBUS OBJECTION TO CLAIMS**
**(CLAIM NOS. 18602 and 19712)**

New Jersey Self-Insurers Guaranty Association (the "Association"), by and through its attorneys, McElroy, Deutsch, Mulvaney & Carpenter, LLP, respectfully submits this supplemental response to the Forty-Sixth Omnibus Objection to claims (the "Objection") filed by DPH Holdings Corp. (the "Reorganized Debtors"):

1. The Association filed its initial response to the Objection on April 15, 2010.

2. As stated in the Association's initial response, the Association was formed pursuant to N.J.S.A. 34:15-120.16 as a non-profit entity created to pay workers compensation claims of employees of bankrupt employers who are self-insured in the State of New Jersey, or were previously self-insured, like Delphi Corporation and affiliates (the "Debtors"), and have remaining liability. Employers who are self-insurers must be members of the Association "as a condition of their authority to self-insure in [New Jersey]." N.J.S.A. 34:15-120.16(a).

3. In New Jersey, an employer is only eligible to self-insure workers compensation obligations pursuant to N.J.S.A. § 34:15-77 if such employer meets the requirements established by the Commissioner of Insurance (the "Commissioner"). This includes making various submissions that demonstrate the employer's financial ability to pay. If the application to self-insure is approved, the employer is then required "to submit a surety bond in a form and amount determined by the Commissioner". See N.J.A.C. 11:2-33.3(g). Thereafter, the Commissioner will issue a certificate exempting the employer from the requirement of carrying insurance.

4. The Delphi Automotive Systems Corporation was approved as a self-insurer for its workers' compensation obligations and was required to obtain a bond in the amount of $5,500,000.00 payable to the Commissioner of Banking and Insurance, which it did in May of 1999 (the "Bond").[1]

5. Thereafter, Debtors filed voluntary chapter 11 petitions in October of 2005. Debtors' status as self-insured employers in the State of New Jersey subsequently ended.

---

[1] The Debtors have stated in the Statement of Disputed Issues at ¶ 8 that "the Debtors provided the Association with a letter of credit in the amount of $5,500,000.00 (the "Collateral) as security for the Debtor's obligations relating to worker's compensation benefits."   Under New Jersey law, the Debtors were required to post a bond with the Department of Banking and Insurance, which they did.   As stated *infra*, the Association is not aware of the terms or conditions of the letter of credit referenced by the Debtors.

6. On June 16, 2009, Debtors filed a First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors in Possession (As Modified) (the "Modified Plan"). Debtors also filed a Supplement to First Amended Disclosure Statement with Respect to First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors in Possession (As Modified) (the "Modified Disclosure Statement".

7. The Modified Disclosure Statement under the section titled Structure and Distributions under the Modified Plan states as follows at Section G, p. S-xxvii:

> As required by section 1129(a)(9) of the Bankruptcy Code, as incorporated by section 1127, priority tax claims will not be impaired but will also receive deferred cash payments over a period of six years. Certain states have filed claims in the event that the Debtors do not make workers' compensation payments in those states in which the Debtors are self-insured. In the event that such obligations must be covered by the states, certain states may have claims that could be entitled to priority treatment. <u>To the extent the claims are administrative claims, they will be satisfied under the Master Disposition Agreement or by DPH Holdings Co.</u> Any prepetition claims will be satisfied through application of existing letters of credit, treatment under one of the priority classes, or as general unsecured claims. To the extent no timely claim has been filed, such liabilities will be discharged. To the extent there are any priority claims other than priority tax claims, holders of any such allowed claims will receive payment in full in cash, unless the holder agrees to alternate treatment.

See Modified Disclosure Statement, Section G, p. S-xxvii (emphasis added).

8. The Modified Disclosure Statement, under the section titled Summary of the Claims Process, Key Classes of Claims at Section D (6) (c), p. S-39 further states as follows in pertinent part:

> <u>To the extent asserted workers' compensation claims are administrative expense claims related to their respective acquired assets, such claims will be assumed by one of the Buyers pursuant to the Master Disposition Agreement with remaining administrative claims to be retained and paid by DPH Holdings Co.</u> Any prepetition claims not barred by the Bar Date will be satisfied through the application of existing letters of credit, pursuant to the treatment set forth for either of the priority classes, or as set forth in Article 5.3 for allowed prepetition general unsecured claims, and will be discharged pursuant to the Modified Plan.

See Modified Disclosure Statement, Section D (6) (c), p. S-39 (emphasis added).

9. Debtors' Modified Plan became effective on October 6, 2009.

10. On or about November 18, 2009, Reorganized Debtors issued a letter from their President to the Directors of Certain State Workers' Compensation Agencies (the "November Letter"). Counsel is advised that the New Jersey Commissioner of Banking and Insurance received the November Letter and a copy was provided to the Association. The November Letter, attached to the *Certification of Jeffrey Bernstein, Esq.* as Exhibit A ("Exhibit A"), states the following, in pertinent part:

> Under the Modified Plan, it is DPH Holdings' view that individual workers' compensation claims for injuries arising <u>before October 8, 2005</u>, the date Delphi filed for Chapter 11 protection, are <u>general unsecured claims</u> and are <u>discharged and released</u>. Individuals asserting such claims against the Reorganized Debtors will only be entitled to a potential distribution, not likely to exceed 4.2 cents on the dollar in the most optimistic case, to the extent they filed valid and timely proofs of claim against the Reorganized Debtors. Accordingly, as of October 4, 2009, there will be no further payments on a current basis on account of these prepetition individual workers' compensation claims by the Reorganized Debtors.

See Exhibit A (emphasis in original)[2].

11. The November Letter further stated:

> However, <u>DPH Holdings Corp. will continue to make payments</u> in the ordinary course for valid individual workers' compensation claims for injuries arising <u>on or after October 8, 2005 but on or before October 6, 2009</u>. We understand that certain state workers' compensation agencies may have applied proceeds from letters of credit or other collateral previously posted by the Reorganized Debtors to fund the postpetition claims. This is not necessary in that DPH Holdings will continue to pay these claims in due course.

Id. (emphasis in original).

12. Thereafter, and based upon the November Letter, the Insurance Examiner for the State of New Jersey sent a letter to the surety, National Fire Insurance Company of Hartford, demanding

payment of the Bond in the penal sum of $5,500,000.00 since the Debtors had indicated they would be defaulting on pre-petition claims. See *Certification of Jeffrey Bernstein, Esq.*, Exhibit B.

13. Thus, the Bond was called in order to pay the pre-petition claims and, consistent with the Modified Plan and Disclosure Statement and the November Letter, Administrative Claims for the period of October 8, 2005 through October 6, 2009 would be paid in due course by the Reorganized Debtors. It is the understanding of the Association that such post-petition payments were, in fact, made in due course by the Reorganized Debtors.

14. The Reorganized Debtors are now retreating from their past position with respect to the post-petition claims and are asserting that not only the pre-petition but also the post-petition claims will be paid from the Bond.

15. On or about May 26, 2010 the Reorganized Debtors' counsel sent a letter to the State of New Jersey, Department of Banking and Insurance, Office of Solvency Regulation (the "May Letter") stating that since the Reorganized Debtors believe, based on their expert's report, that the pre and post-petition claims are less than $5,500,000.00, that

> [b]eginning June 1, 2010, the Reorganized Debtors will discontinue direct payments on account of postpetition workers' compensation claims. Both prepetition and postpetition New Jersey workers' compensation claims will be paid by CNA Surety Corporation directly from proceeds of the $5,500,000.00 letter of credit.

See *Certification of Jeffrey Bernstein, Esq.*, Exhibit C ("Exhibit C"). Unlike the November Letter, the May Letter which alters Debtors' responsibility to pay post-petition claims directly comes from the Debtors' counsel, as opposed to its president.

---

2 The November Letter was also attached as Exhibit C to the Guaranty Association's Response and is being attached to this Supplemental Response for ease of reference.

1462147-1                                                    5

16. The Association seeks to have the Reorganized Debtors do what they are obligated to do under the Modified Plan, as further stated in the November Letter and pay the administrative claims in full in the ordinary course of their business and not from the corpus of the Bond.

17. The Bond exists for the payment of the claims on which the Reorganized Debtors have defaulted –the Debtors have declared that they are defaulting on the pre-petition claims. The Reorganized Debtors will only pay cents on the dollar, if anything, for each of the pre-petition claims and the remaining amount of the claim will be paid for by the Bond.

18. The Reorganized Debtors cannot default on the post-petition claims because the Reorganized Debtors are required to pay such claims under the Modified Plan and pursuant to the Bankruptcy Code.

19. By using the Bond for the payment of the post-petition claims for which the Reorganized Debtors are wholly responsible, the Reorganized Debtors are transferring the risk related to the obligations they undertook under the Modified Plan from themselves to the Association - who will be required to pay claimants who do not otherwise receive compensation for their work-related injury claims after the Bond is exhausted. See N.J.S.A. 34:15-120.19.

20. Reorganized Debtors have stated that they will now pay the pre-petition and post-petition claims from a letter of credit through CNA. See Exhibit C. The Association is not aware of the terms or conditions of this letter of credit. New Jersey Law requires, as a condition to receiving self-insured status and doing business in New Jersey, the posting of a bond which is not the property of the Reorganized Debtors (and was not the Property of the Debtors) but exists for the benefit of the Debtors' former employees. The arrangement the employer makes with the surety in order to procure the bond and the collateral that is required by the surety for that purpose is between the employer and the surety.

21. While the Association does not challenge the use of the Bond for the payment of pre-petition claims for which the Reorganized Debtors have defaulted, the Association submits that the use of the Bond for post-petition claims that are wholly the responsibility of the Reorganized Debtors is improper and not authorized by the Bankruptcy Code or New Jersey law. Although the Reorganized Debtors can utilize other sources of payment for administrative expenses, any reduction of the letter of credit described by the Reorganized Debtors through the payment of post-petition workers compensation claims should not result in a corresponding reduction of the Bond.

22. In summary, the Reorganized Debtors have declared a default regarding payment of pre-petition workers compensation claims, therefore, the Bond, posted by Debtors in 1999 for the benefit of their employees pursuant New Jersey law, as part of their requirements to be self-insured in New Jersey, will be utilized to pay such pre-petition claims. The Association does not challenge the use of the Bond to pay for the pre-petition claims on which the Reorganized Debtors have defaulted.

23. In contrast, the Reorganized Debtors have not defaulted on the post-petition claims – as they are to be paid in the ordinary course under the Modified Plan. The Reorganized Debtors confirmed in the November Letter that they would make such payments. The November Letter was consistent with the Plan.

24. In the May Letter the Reorganized Debtors' counsel stated that they would be using a letter of credit to pay the post-petition claims instead of paying them in the ordinary course. The terms and conditions of the letter of credit referenced by the Reorganized Debtors are unknown to the Association and appear to be beyond the scope of New Jersey law, and the Bond.

25. The Bond proceeds are not the property of the Reorganized Debtors and should not be used for payments that are the Debtors' responsibility. The Association objects to the use of the

proceeds of the Bond to pay for the post-petition claims. Such use of the Bond proceeds improperly transfers risk to the Association who is responsible to pay claims once the bond is exhausted. The Association does not object to the Reorganized Debtors use of another source of funds to pay the post-petition claims as long as the Bond is not correspondingly reduced.

**WHEREFORE**, the New Jersey Self-Insurers Guaranty Association respectfully requests that the Court deny the relief sought by the Debtors at this time unless the Reorganized Debtors agree to pay their post-petition claims in the ordinary course from its funds and not from the Bond.

Dated: July 14, 2010

Respectfully submitted,

**McElroy, Deutsch, Mulvaney & Carpenter, LLP**
*Attorneys for New Jersey Self-Insurers Guaranty Association*

By:*/s/Jeffrey Bernstein*
    Jeffrey Bernstein, Esq.
    Three Gateway Center
    100 Mulberry Street
    Newark, New Jersey  07102-4079
    Telephone: (973) 622-7711
    Fax: (973) 622.5314

- and -

**McElroy, Deutsch, Mulvaney & Carpenter, LLP**
88 Pine St., 24th Floor
New York, NY 10005
Telephone: (212) 483.9490
Fax: (212) 483.9129