**Hearing Date And Time:  July 22, 2010 at 10:00 a.m. (prevailing Eastern time)**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
155 North Wacker Drive
Chicago, Illinois 60606
John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler

- and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036

Attorneys for DPH Holdings Corp., et al.,
   Reorganized Debtors

DPH Holdings Corp. Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

DPH Holdings Corp. Legal Information Website:
http://www.dphholdingsdocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                              :
     In re                               :    Chapter 11
                                                              :
DPH HOLDINGS CORP., et al.,                                   :    Case No. 05-44481 (RDD)
                                                              :
                                                              :    (Jointly Administered)
     Reorganized Debtors.                :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

REORGANIZED DEBTORS' SUPPLEMENTAL OBJECTION IN RESPONSE TO
SUPPLEMENT TO MOTION OF METHODE ELECTRONICS, INC. FOR AN ORDER
(I) PERMITTING METHODE TO CONTINUE POST-PETITION LITIGATION WITH
REORGANIZED DEBTORS IN MICHIGAN AND (II) OVERRULING REORGANIZED
DEBTORS' TIMELINESS OBJECTION TO METHODE'S ADMINISTRATIVE EXPENSE CLAIMS

            DPH Holdings Corp. ("DPH Holdings") and certain of its affiliated reorganized

debtors in the above-captioned cases (together with DPH Holdings, the "Reorganized Debtors")

hereby submit this supplemental objection in response to the Supplement To Motion Of Methode

Electronics, Inc. For An Order (I) Permitting Methode To Continue Post-Petition Litigation With

The Reorganized Debtors In Michigan And (II) Overruling The Reorganized Debtors' Timeliness Objection To Methode's Administrative Expense Claims, filed June 28, 2010 (Docket No. 20274) (the "Supplement" or "Suppl.").[1]

## Status Of The Motion

At the May 20, 2010 hearing on this matter, Methode avoided a ruling on the timeliness of the Contract Claim portion of its Administrative Claims by stipulating that "Methode's Contract Claim does not seek to assert claims that arose prior to June 1, 2009." In other words, Methode voluntarily agreed to relinquish any claims that arose prior to June 1, 2009, thereby mooting the Reorganized Debtors' timeliness objection to its Contract Claim.[2] As a result of the stipulation, Methode agreed that its existing counterclaim for anticipatory breach of contract, pending in Michigan state court, was also moot. In light of Methode's agreement to submit to the Reorganized Debtors a proposed amended counterclaim alleging only a post-bar date breach of contract, the Court held in abeyance Methode's request to lift the Plan Injunction to allow litigation regarding the Contract Claim in Michigan state court "pending a stipulation between the parties or further application to this Court." (Order ¶1.c.)

On June 15, 2010, Methode provided to the Reorganized Debtors its proposed First Amended Counterclaim (the "Proposed Counterclaim"). (Suppl., Ex. C.) Despite the stipulation, the only wrongful conduct alleged in the Proposed Counterclaim is the same pre-bar date conduct that was alleged as the basis for the counterclaim filed in January 2009. Although

---

[1]    Methode's initial brief in support of the Motion, the Reorganized Debtors' objection, and Methode's reply are at Docket Nos. 19896, 20070, and 20164, respectively. The transcript of the May 20, 2010 hearing and the Court's order granting in part, denying in part, and determining to be moot in part the Motion are at Docket Nos. 20197 and 20240, respectively. Capitalized terms used and not otherwise defined herein have the meanings ascribed to the Court's order and the prior briefing.

[2]    With respect to the Patent Claim portion of Methode's Administrative Claim, the Court disallowed all claims that arose prior to June 1, 2009, finding that Methode had failed to establish excusable neglect or cause to justify its failure to timely file its Administrative Claims. (Order, Docket No. 20240 ¶¶ D and 1.a.)

2

abbreviated, the Proposed Counterclaim relies entirely on the same set of allegations, i.e., that

Delphi had no good faith intention to perform at the time it entered into the contract, but

concealed its intent in order to induce Methode to enter into the agreement.  (Suppl., Ex. C, ¶ 20,

24.)  Accordingly, on June 22, 2010, the Reorganized Debtors informed Methode that they

would not stipulate to lifting the Plan Injunction to allow Methode to litigate the Proposed

Counterclaim in Michigan state court.

## Argument

## I.        THE CLAIM PLEADED BY METHODE AROSE PRIOR TO THE BAR DATE

The Bankruptcy Code governs when a claim arises.  See Federated Dep't Stores v.

Wongco (In re R.H. Macy & Co.), 236 B.R. 583, 589 (Bankr. S.D.N.Y. 1999) (stating that

existence of claim is governed by non-bankruptcy law but determination of when claim arises is

governed by Bankruptcy Code); Riverwood Int'l Corp. v. Olin Corp. (In re Manville Forest Prod.

Corp.), 225 B.R. 862, 866 (Bankr. S.D.N.Y. 1998) (same).  Under the Bankruptcy Code, an

administrative expense must fall within the definition of a "claim" before it can be deemed to

arise.  Section 101(5) of the Code defines a "claim" as a "right to payment, whether or not such

right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured,

disputed, undisputed, legal, equitable, secured or unsecured." 11 U.S.C. § 101(5).  Congress

intended the term "claim" to have "the broadest possible definition … [including] all legal

obligations of the debtor, no matter how remote or contingent." Pearl-Phil GMT LTD. v. Caldor

Corp., 266 B.R. 575, 580 (S.D.N.Y. 2001) quoting H.R. Rep. No. 95-595, at 649 (1977).

There can be no doubt that the Proposed Counterclaim is a claim that arose prior

to June 1, 2009.  It rises or falls solely on the allegations of pre-bar date conduct that are the only

wrongful conduct alleged in the Proposed Counterclaim.  Indeed, a comparison of paragraph 20

of the Proposed Counterclaim with the original counterclaim shows that the original allegations

are merely restated in the Proposed Counterclaim in abbreviated fashion. In the Proposed

Counterclaim Methode alleges that:

> 20. Delphi cannot rely on its termination for convenience clause in the 2008 Agreement, because unbeknownst to Methode, Delphi lacked any good faith intention to perform its obligations under the supply agreement when it obtained Methode's commitment to three-year pricing. Delphi concealed its intent and its efforts to in-source production of Methode's bladders in order to induce Methode to enter a three-year agreement with lower pricing as opposed to entering a one-year agreement with higher pricing.

(Suppl., Ex. C, ¶ 20) (emphasis added).

But the original counterclaim, filed in January 2009, made exactly the same

operative allegations:

> 42. Delphi induced Methode to enter and continue discussions for a three-year agreement based on the false pretense that Delphi intended to perform its obligations under the agreement in good faith.

> \* \* \*

> 44. Delphi concealed its intent to in-source or re-source Methode shortly after executing the agreement . . . .

(See Walsh Decl., Ex. E, Jan. 2009 Counterclaim ¶¶ 42, 44) (emphasis added). In other words,

both the pre- and post-bar date versions of the counterclaim allege exactly the same actionable

conduct – that Delphi had no good faith intention to perform at the time it entered into the

contract, but concealed its intent to re-source in order to induce Methode to enter into the

agreement. Indeed, all Methode has done is condense all of its prior factual allegations into a

single conclusory paragraph to obscure the fact that the supposedly post-bar date breach claim

rests entirely on pre-bar date conduct.

The only new allegation in the Proposed Counterclaim is that the Reorganized

Debtors have now completed the in-sourcing. (See Suppl., Ex. C, ¶ 16.) However, Delphi's in-

4

sourcing efforts were known to Methode long before the bar date and were specifically pleaded as the basis for Methode's breach claim in the original counterclaim.  (See Walsh Decl., Ex. E, Jan. 2009 Counterclaim ¶¶ 44-45.)  Methode pleads no other basis for the breach of contract claim it now contends arose after the bar date.  Critically, Methode does not allege that the termination-for-convenience clause is ambiguous or that it has been violated, altered, or waived by post-bar date conduct.  Instead, Methode's only claim in the Proposed Counterclaim is that the termination-for-convenience provision of the agreement should be voided to remedy alleged bad faith and fraudulent inducement at inception.  Accordingly, Methode's Proposed Counterclaim fails to allege any new claim other than the same claim that it possessed and actually filed suit on in January 2009, long before the bar date.

Methode attempts to rely on an illusory distinction between "anticipatory breach" and "breach" to overcome the fact that both versions of the counterclaim allege the same conduct. The original counterclaim alleges that Delphi committed an "anticipatory breach or anticipatory repudiation" by "demonstrate[ing] its unequivocal intent not to perform under the parties' three-year supply agreement" (Id. at ¶ 48), while the Proposed Counterclaim alleges that Delphi breached the contract when it "prematurely and unlawfully terminat[ed] all purchases of the subject parts from Methode in August 2009."  (Ex. C, ¶ 19.)  In other words, Methode attempts to use the Reorganized Debtors' subsequent cancellation of the contract pursuant to the termination for convenience clause to revive its time-barred claims from January 2009.

The distinction Methode tries to draw between "anticipatory breach" and "breach" under Michigan law is irrelevant to the issue of when a "claim" arose within the meaning of section 101(5) of the Bankruptcy Code.  Anticipatory breach is not a different or separate claim but rather is a doctrine that allows a party to sue for total breach when the contract is repudiated

5

without having to wait for the time of performance.  The word "anticipatory" refers to the

conduct of the breaching party in committing a total breach before performance is due.  It does

not refer to the plaintiff's anticipation that there might be a breach in the future.[3]  Thus,

"anticipatory breach" is a fully-formed claim for total breach of contract that does not depend on

any future events.  <u>See, e.g.</u>, <u>Paul v. Bogle</u>, 484 N.W.2d 728, 735 (Mich. Ct. App. 1992) ("'Under

the doctrine of anticipatory breach, if a party to a contract, prior to the time of performance,

unequivocally declares the intent not to perform, the innocent party has the option to either sue

immediately for the breach of contract or wait until the time of performance.'" (citation omitted));

<u>see also</u> <u>Stoddard v. Mfrs. Nat'l Bank</u>, 593 N.W.2d 630, 640 (Mich. Ct. App. 1999) (same);

Restatement (Second) of Contracts § 253(1) ("Where an obligor repudiates a duty before he has

committed a breach by non-performance and before he has received all of the agreed exchange

for it, his repudiation alone gives rise to a claim for damages for total breach.").

       Thus, if Delphi "demonstrated its unequivocal intent not to perform" prior to the

bar date, as Methode alleged in January 2009, then Methode's claim for breach of contract fully

matured at that time.  The original counterclaim and the Proposed Counterclaim are

indistinguishable for purposes of determining when a claim arose because both involve the same

allegations, the same elements, the same evidence, and the same damages for total breach.[4]

---

[3]    As explained in the Restatement,

> An obligee under a contract is ordinarily entitled to the protection of his expectation that
> the obligor will perform.  For this reason, a repudiation by the obligor . . . generally gives
> rise to a claim for damages for total breach even though it is not accompanied or
> preceded by a breach by non-performance.  Such a repudiation is sometimes elliptically
> called an "anticipatory breach," meaning a breach by anticipatory repudiation, because it
> occurs before there is any breach by non-performance.

Restatement (Second) of Contracts § 253 Comment a.

[4]    The Second Circuit has explained that "'it is the <u>facts</u> surrounding the transaction or occurrence which
operate to constitute the cause of action, <u>not the legal theory</u> upon which a litigant relies.'" <u>Saud v. Bank of
N.Y.</u>, 929 F.2d 916, 919 (2d Cir. 1991) (emphasis added) (quoting <u>Expert Elec., Inc. v. Levine</u>, 554 F.2d
1227, 1234 (2d Cir. 1977)).

Moreover, Methode's prior allegation that it had a fully formed claim for total breach in January

2009 precludes Methode's current attempt to allege that no breach claim arose until August 2009.

      Even under Methode's incorrect formulation that its claim for anticipatory breach

of contract is really a claim for "anticipated" breach of contract (May 20, 2010 Tr. p. 24)

triggering "no damages" (Reply ¶ 3) until an actual breach,[5] Methode would still have had a

contingent administrative claim.  The Second Circuit has held that a claim is contingent "if the

debtor's legal duty to pay does not come into existence until triggered by the occurrence of a

future event." Mazzeo v. U.S. (In re Mazzeo), 131 F.3d 295, 303 (2d Cir. 1997).  Even the

possibility of a future breach is ordinarily enough to create a contingent administrative claim.

See In re Caldor, Inc.-NY, 240 B.R. 180, 191-192 (Bankr. S.D.N.Y. 1999), aff'd, 266 B.R. 575

(S.D.N.Y. 2001) (finding that "contract-based claims arise at the time the contract is entered into,

rather than upon the occurrence of subsequent events such as termination" and that "whenever an

entity provides goods or services to a debtor-in-possession, it has a contingent administrative

claim").  Here, however, Methode not only contemplated the possibility of a breach of contract

but was fully on notice of the basis of its claim long before the bar date.

      Despite Methode's agreement with the Court at the hearing that "[a]t this point

Methode's contract claim is predicated upon post bar date conduct" (Tr. p. 24), the opposite is

true, as the Proposed Counterclaim is predicated entirely on pre-bar date conduct.  Although it is

true that the parties and the Court engaged in a fairly lengthy colloquy regarding the

consequences of Methode's stipulation (Id. pp. 23-33), Methode has picked and chosen certain

snippets from the colloquy to invert the meaning of its stipulation.  (See Suppl. ¶ 5.)  Specifically,

the Court was at pains to say that although pre-bar date conduct may be relevant and would not

---

[5]      Contrary to Methode's current position that no damages previously arose, Methode sought breach of
contract damages in its original counterclaim.  (See Walsh Decl., Ex. E, ¶ 51.)

automatically be excluded from evidence, the basis for the claim must be post-bar date conduct. (See Tr. 28-29, 30.)  The Reorganized Debtors interpreted this to mean, for example, that otherwise admissible evidence regarding the meaning of the contract would not be excluded simply because it dated to a time before the bar date.  However, the stipulation would have no meaning if Methode can recharacterize post-bar date conduct permitted under the contract as unlawful based solely on allegations of wrongdoing that occurred and were actionable prior to the bar date.

Methode's formulation of its Proposed Counterclaim implicitly concedes that Delphi had a contractual right to terminate the contract for convenience, and that the only wrongful conduct alleged is pre-bar date bad faith and fraudulent concealment.  Thus, in violation of the stipulation, Methode's catch-all allegation that "Delphi's conduct constitutes a breach of the 2008 Agreement" (Id. ¶ 24) is based only upon pre-bar date conduct.

## II.    THE COURT SHOULD RETAIN LITIGATION OF THE CONTRACT CLAIM

Although the Court expressly declined to rule on whether it would lift the Plan Injunction to allow Methode to litigate a properly pleaded claim in Michigan state court, the Court recognized that the strongest reason for it to retain the litigation of the Contract Claim was to enforce its own orders and the stipulation.  (May 20, 2010 Tr. pp. 52-53, 55.)  The stipulation prohibits Methode from using its allegations of bad faith/fraudulent concealment at the inception of the agreement as the basis for its claim, yet that is exactly what Methode has done.  Based on the Proposed Counterclaim, that remains a live issue that counsels strongly in favor of keeping the case here.  (See Id. p. 56.)

The Proposed Counterclaim also demonstrates that Methode cannot plead a live claim for breach that is not based upon pre-bar date conduct.  Delphi's termination for convenience was pursuant to a right expressly bargained for in the agreement, and it provided

8

Methode a contractual recovery for raw materials, work-in-process and finished goods inventory possessed by Methode at the time that Delphi elected to exercise the termination for convenience provision.  (See General Terms & Conditions, Walsh Decl., Ex. B ¶11.)  Moreover, the agreement provided that "[t]he purchase price for such finished goods, raw materials and work-in-process" would be Methode's "sole and exclusive recovery from [Delphi] (without regard to the legal theory which is the basis for any claim . . .) on account of such termination."  (Id.)  The Court is very familiar with these terms and conditions and there is no reason to defer to the Michigan court to enforce them.  Moreover, the interpretation and enforcement of the termination-for-convenience provision is a question of law.  See Willkie v. Auto-Owners Ins. Co., 664 N.W.2d 776, 782, 787-88 (Mich. 2003) (unambiguous contract cannot be rewritten based on attempt to divine parties' alleged "reasonable expectations").[6]

---

[6]    In any event, as previously noted, on November 1, 2009, Methode expressly invoked this exclusive remedy by submitting a cancellation claim in the amount of $761,755.94 (as amended by Methode on November 18, 2009).  The Reorganized Debtors are fully prepared to complete the reconciliation of this claim once Methode acknowledges that it is Methode's "sole and exclusive recovery" under the contract.

WHEREFORE, the Reorganized Debtors respectfully request that this Court enter an order denying Methode's request to lift the Plan Injunction to continue litigation of Methode's Contract Claim in Michigan state court and granting the Reorganized Debtors such other and further relief as is just.

Dated:   New York, New York
         July 15, 2010

                                   SKADDEN, ARPS, SLATE, MEAGHER
                                      & FLOM LLP

                                   By:   /s/ John Wm. Butler, Jr.
                                          John Wm. Butler, Jr.
                                          John K. Lyons
                                          Ron E. Meisler
                                   155 North Wacker Drive
                                   Chicago, Illinois 60606

                                            - and -

                                   Four Times Square
                                   New York, New York 10036

                                   Attorneys for DPH Holdings Corp., et al.,
                                      Reorganized Debtors