**Hearing Date and Time:  July 22, 2010 at 10:00 a.m. (prevailing Eastern time)**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
155 North Wacker Drive
Chicago, Illinois 60606
John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler

   - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036

Attorneys for DPH Holdings Corp., et al.,
   Reorganized Debtors

DPH Holdings Corp. Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

DPH Holdings Corp. Legal Information Website:
http://www.dphholdingsdocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - -  -  x
                                      :
       In re                        :     Chapter 11
                                        :
DPH HOLDINGS CORP., et al.,    :     Case Number 05-44481 (RDD)
                                        :
                                        :     (Jointly Administered)
                   Reorganized Debtors.    :
                                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

**REORGANIZED DEBTORS' SUPPLEMENTAL REPLY WITH RESPECT TO
PROOFS OF ADMINISTRATIVE EXPENSE CLAIM NUMBERS 18602 AND
19712 (NEW JERSEY SELF-INSURERS GUARANTY ASSOCIATION)**

**("SUPPLEMENTAL REPLY – NEW JERSEY SELF INSURERS
GUARANTY ASSOCIATION")**

DPH Holdings Corp. ("DPH Holdings") and certain of its affiliated reorganized

debtors in the above-captioned cases (together with DPH Holdings, the "Reorganized Debtors")

hereby submit the Reorganized Debtors' Supplemental Reply With Respect To Proofs Of

Administrative Expense Claim Numbers 18602 And 19712 (New Jersey Self-Insurers Guaranty

Association) (the "Supplemental Reply"), and respectfully represent as follows:

### **Preliminary Statement**

1.    On October 8 and 14, 2005, Delphi Corporation and certain of its affiliates

(the "Debtors"), predecessors of the Reorganized Debtors, filed voluntary petitions in this Court

for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-

1330, as then amended (the "Bankruptcy Code").

2.    On July 14, 2009, the Association filed proof of claim number 18602 ("Claim

18602") against Delphi.  Claim 18602 asserts a contingent administrative expense claim for

workers' compensation program-related payments in the amount of $1,400,000.00.

3.    On October 6, 2009, the Debtors substantially consummated the First

Amended Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors

And Debtors-In-Possession, As Modified (the "Modified Plan"), which had been approved by

this Court pursuant to an order entered on July 30, 2009 (Docket No. 18707), and emerged from

chapter 11 as the Reorganized Debtors.  Article 9.6(a) of the Modified Plan provides that "[t]he

Reorganized Debtors shall retain responsibility for administering, disputing, objecting to,

compromising, or otherwise resolving all Claims against, and Interests in, the Debtors and

making distributions (if any) with respect to all Claims and Interests."

4.    On November 4, 2009, the Association filed proof of claim number 19712

("Claim 19712") against Delphi.  The Proof of Claim asserts a contingent, unliquidated

administrative expense claim for workers' compensation program-related payments (together

with Claim 18602, the "Claims").

     5.   On March 19, 2010, the Debtors objected to the Claims pursuant to the

Reorganized Debtors' Forty-Sixth Omnibus Objection Pursuant To 11 U.S.C. § 503(b) And Fed.

R. Bankr. P. 3007 To (I) Disallow And Expunge Certain Administrative Expense (A) Books And

Records Claims, (B) Methode Electronics Claims, (C) State Workers' Compensation Claims, (D)

Duplicate State Workers' Compensation Claims, (E) Workers' Compensation Claims, (F)

Transferred Workers' Compensation Claims, (G) Tax Claims, (H) Duplicate Insurance Claims,

And (I) Severance Claims, (II) Disallow And Expunge (A) A Certain Duplicate Workers'

Compensation Claim, (B) A Certain Duplicate Tax Claim, And (C) A Certain Duplicate

Severance Claim, (III) Modify Certain Administrative Expense (A) State Workers'

Compensation Claims And (B) Workers' Compensation Claims, And (IV) Allow Certain

Administrative Expense Severance Claims (Docket No. 19711), seeking to disallow and expunge

the Claims.

     6.   On April 15, 2010, the Association filed the Response Of New Jersey Self-

Insurers Guaranty Association (Claim Nos. 18602 And 19712) To Debtors' Forty-Sixth Omnibus

Claims Objection To Claims (Docket No. 19842) (the "Response").

     7.   On May 17, 2010, the Reorganized Debtors filed the Notice Of Claims

Objection Hearing With Respect To Debtors' Objection To Proofs Of Administrative Expense

Claim Nos. 18602 And 19712 (New Jersey Self-Insurers' Guaranty Association) (Docket No.

20130), scheduling an evidentiary hearing on the merits of the Proof of Claim for July 22, 2010,

at 10:00 a.m. (prevailing Eastern Time) in this Court.

8.   On May 24, 2010, the Reorganized Debtors filed their Statement Of Disputed Issues With Respect To Proof Of Administrative Claim Numbers 18602 And 19712 (New Jersey Self-Insurers Guaranty Association) (Docket No. 20184) (the "Statement of Disputed Issues").[1]

9.   On July 14, 2010, the Association filed the Supplemental Response Of New Jersey Self-Insurers Guaranty Association To Debtors' Forty-Sixth Omnibus Objection To Claims (Claim Nos. 18602 And 19712) (Docket No. 20412) (the "Supplemental Response").

## Argument

B.   The Association's Claims Are Contingent and Should Be Disallowed

10.   Section 502(e)(1)(B) of the Bankruptcy Code provides that a bankruptcy court is to disallow any claim for reimbursement or contribution of an entity that is liable with the debtor on or has secured the claim of a creditor to the extent that "such claim for reimbursement or contribution is contingent as of the time of allowance or disallowance of such claim for reimbursement or contribution."  11 U.S.C. § 502(e)(1)(B); see also Aetna Cas. & Sur. Co. v. Georgia Tubing Corp., 93 F.3d 56 (2d Cir. 1996) (disallowing surety bond issuer's contingent prospective subrogation claims as to bonds issued on behalf of debtor); In re Agway, Inc., 2008 WL 2827439, at *3 (Bankr. N.D.N.Y. July 18, 2008) (section 502(e)(1)(B) directs that the court "shall disallow" any claim for reimbursement or contribution to the extent that such claim is contingent at the time of disallowance).

11.   The Claims fall squarely within the parameters of section 502(e)(1)(B) and, accordingly, should be disallowed.  The Association is contingently liable for workers' compensation claims in New Jersey if the Reorganized Debtors default and the collateralized bond is exhausted.  If such a default were to occur, the Association would be entitled to a claim

---

[1]   The Debtors also expressly incorporate the entire Statement of Disputed Issues into this Supplemental Reply.

for reimbursement against the Reorganized Debtors to the extent the Association actually paid the workers' compensation claims directly. Both of the Claims explain that:

> The Association is a <u>potential</u> payer in connection with the Debtor's self-insured workers' compensation obligations <u>if</u> a bond established by the Debtor to satisfy such claims and any other layer of insurance coverage is insufficient. To assure that the Association has filed for such administrative expense claims . . . for which it <u>may</u> become responsible . . . should the bond coverage prove insufficient, giving rise to a claim against the Debtor, the Association files this administrative expense proof of claim to preserve its right to assert its claim against the Debtor . . . .

(Claim 18602, Ex. A (emphasis added); Claim 19712, Ex. A (emphasis added).)  Thus, the Claims are explicit that liability of the Debtors to the Association only will arise after the applicable surety bond is exhausted and the Association becomes obligated make workers' compensation payments.  Nowhere in the Response or the Supplemental Response does the Association assert that any event has occurred that would give the Association a current noncontingent administrative claim against the Debtors.  To the contrary, both acknowledge the contingent nature of the Claims.  (Supplemental Response ¶ 19 ("[The Association] will be required to pay claimants who do not otherwise receive compensation for their work-related injury claims after the Bond is exhausted."); Response ¶ 5 ("The Association is a 'secondary' payer in connection with Debtors' self-insured workers' compensation obligations behind payment of those obligations from the bond established by the Debtor.").)  The Claims, therefore, fall squarely within the scope of section 502(e)(1)(B) of the Bankruptcy Code and should be disallowed.

12. In fact, the uncontroverted evidence indicates that the contingency will never be triggered because the collateralized bond well exceeds the conservative actuarial estimate of workers' compensation claims in New Jersey.  As described by the Association, New Jersey workers' compensation claims are secured by a surety bond in the amount of $5.5 million, which,

in turn, is backed by a $5.5 million letter of credit.[2]  The Debtors' estimated liabilities on account of New Jersey workers' compensation obligations, however, represent only a fraction of the amount of collateral securing such claims.

13. To assess the extent that New Jersey workers' compensation claims are overcollateralized, the Reorganized Debtors hired the Oliver Wyman Group ("Oliver Wyman"), an independent, third-party actuarial firm, to prepare an actuarial report.  The March 26, 2010, Oliver Wyman report, attached as <u>Exhibit A</u> hereto, estimated the Debtors' net unpaid obligations on account of prepetition and postpetition workers' compensation claims in New Jersey at $2,296,000 and $632,000,[3] respectively.  The Oliver Wyman report, therefore, demonstrates that the $5.5 million in collateral securing New Jersey workers' compensation claims is more than double the actuarial estimate of the Debtors' potential exposure.  The Association does not contest the accuracy, analysis, or conclusions of the Oliver Wyman report.[4]

14. Accordingly, the uncontroverted evidence not only demonstrates that the Association presently has no claim against the Reorganized Debtors for reimbursement or contribution, but that the contingency that would give rise to a claim—exhaustion of the collateral in satisfaction of workers' compensation obligations—will never occur.  The Claims should, therefore, be disallowed and expunged in their entirety.

---

[2]    The Reorganized Debtors have apparently caused some confusion by referring to the letter of credit as the security for New Jersey workers' compensation claims.  To clarify, the Association correctly notes that New Jersey workers' compensation claims are guaranteed by a bond in the amount of $5.5 million.  As security for the bond, the Debtors provided CNA Surety Corporation ("CNA"), the surety issuing the bond, with a $5.5 million letter of credit.  Consequently, any payments by the surety to satisfy workers' compensation obligations on account of the bond come from proceeds of the letter of credit, which was fully drawn by CNA on or before March 17, 2010.

[3]    These estimated amounts reflect a discount rate of 4.1%.

[4]    Although not mentioned in the Supplemental Response, a copy of the Oliver Wyman report previously was provided to the Association.

C.        The Association's Arguments Regarding Application of Collateral Are Misplaced

15. Instead of addressing the dispositive issue—the contingent nature of the Claims—the Supplemental Reply fixates on the Reorganized Debtors' decision to satisfy New Jersey workers' compensation claims with the collateral securing such claims.  The Association argues that postpetition New Jersey workers' compensation claims are administrative claims and, therefore, the Modified Plan requires that the Reorganized Debtors pay such claims in the ordinary course and not from collateral, as described in the Reorganized Debtors' May 26, 2010, letter to the New Jersey Department of Banking and Insurance, attached as Exhibit B hereto. The Association is mistaken, however, and its argument only serves to highlight the contingent nature of the Claims.

16. As a threshold matter, no party has ever filed against the Reorganized Debtors a direct claim for postpetition workers' compensation in the state of New Jersey, thus apparently relying on the overcollateralized third-party surety bond to secure such payments.

17. Moreover, even if New Jersey postpetition workers' compensation obligations qualified as allowed administrative expense claims under the Modified Plan, the Reorganized Debtors still would be entitled to apply collateral in satisfaction of such claims.  In particular, section 2.1 of the Modified Plan provides that administrative claims may be satisfied by cash payments.  To this end, New Jersey workers' compensation claims are being satisfied as they come due with cash proceeds from the letter of credit.  There is no requirement in the plan that such payments come directly from the Reorganized Debtors.  Indeed, the Association acknowledges that "the Reorganized Debtors can utilize other sources of payment for administrative expenses."  (Supplemental Response ¶ 21.)  In addition, the Reorganized Debtors note that administrative expense claims can also be secured claims.  See City of New York v. R.H. Macy & Co. (In re R.H. Macy & Co.), 176 B.R. 315, 316-17 (S.D.N.Y. 1994) (holding that

7

secured claims are entitled to treatment as administrative expense claims). Section 5.1 of the

Modified Plan specifically provides for the application of collateral in satisfaction of secured

claims. Accordingly, even if there was an allowed administrative claim for New Jersey

postpetition workers' compensation obligations, the Reorganized Debtors' decision to satisfy

such claims through application of collateral would be consistent with the treatment required

under the Modified Plan.

18. The Association places undue emphasis on the November 18, 2009 letter sent

by John Brooks. The Reorganized Debtors are not, as the Association suggests, bound in any

way by the November 18 letter. The November 18 letter simply reflected the Reorganized

Debtors' business judgment at the time—immediately following their emergence from chapter

11—to continue paying postpetition workers' compensation claims in the ordinary course. Since

that time, and in light of the Oliver Wyman report demonstrating that New Jersey workers'

compensation claims are substantially oversecured, the Reorganized Debtors have determined

that New Jersey postpetition workers' compensation claims instead should be paid from the

proceeds of the $5.5 million letter of credit. As a result, the Reorganized Debtors have been able

to marshal their limited cash resources to pay unsecured administrative claims rather than further

contributing to the significant overcollateralization of New Jersey workers' compensation claims.

19. Finally, the Association objects to the application of the bond to postpetition

workers' compensation obligations, asserting that such application improperly shifts risk to the

Association because the collateral might <u>someday</u> be exhausted, thereby triggering <u>potential</u>

liability against the Association. As set forth above, this objection only underscores the

contingent nature of the Claims, thus mandating disallowance under Section 502(e)(1)(B).

Moreover, the Reorganized Debtors are entirely within their rights to satisfy claims from the

collateralized bond under the Modified Plan.  Nor is there any current requirement under New Jersey law to maintain the bond amount.  The bond was originally procured to obtain self-insured status in New Jersey.  The bond was calculated to cover projected self-insured workers' compensation obligations that would arise in the ordinary course of conducting business in New Jersey.  Now that the Reorganized Debtors have ceased to operate in New Jersey and are in the process of winding down their estates, the Reorganized Debtors no longer need to maintain "self-insured" status in New Jersey.  Thus, the bond is now appropriately being used to pay accrued claims of employees that no longer work for the Reorganized Debtors.  To require the Reorganized Debtors to pay this claims run-off without reducing the bond amount, and consequently ordering the return of collateral as claims are paid, would unnecessarily and unfairly increase the overcollateralization of New Jersey workers' compensation claims.

WHEREFORE the Reorganized Debtors respectfully request this Court enter an order (a) sustaining the objections with respect to the Claims, (b) disallowing and expunging each of the Claims in its entirety subject to any right claimant may have under section 502(j) of the Bankruptcy Code, and (c) granting such further and other relief this Court deems just and proper.

Dated:    New York, New York
          July 20, 2010

SKADDEN, ARPS, SLATE, MEAGHER
   & FLOM LLP


By:   /s/ John Wm. Butler, Jr.
     John Wm. Butler, Jr.
     John K. Lyons
     Ron E. Meisler
155 North Wacker Drive
Chicago, Illinois 60606


    - and -


Four Times Square
New York, New York 10036

Attorneys for DPH Holdings Corp., et al.,
   Reorganized Debtors

# Exhibit A

March 26, 2010

# Actuarial Analysis of New Jersey Workers' Compensation Unpaid Losses as of February 28, 2010

Delphi Automotive LLP

# OLIVER WYMAN

MARSH   MERCER   KROLL
GUY CARPENTER   OLIVER WYMAN

# Contents

1. Introduction ........................................................................................................................1

2. Considerations ...................................................................................................................2

3. Background ........................................................................................................................4

4. Summary of Results ...........................................................................................................5
   - Unpaid Losses and ALAE ............................................................................................5
   - Comparison to Prior Report .........................................................................................6

5. Methodology ......................................................................................................................8
   - Estimates of Ultimate Losses .......................................................................................8
   - Unpaid Losses .............................................................................................................10

6. Data Reliance ..................................................................................................................11

7. Limitations ......................................................................................................................13

8. Distribution and Use .......................................................................................................15

9. Closing ............................................................................................................................16

10. Glossary of Terms ..........................................................................................................17

**Actuarial Analysis**                                                              Delphi Automotive

<div style="border: 1px solid black; width: 120px; height: 150px; text-align: center;">

**1**

</div>

## Introduction

Oliver Wyman Actuarial Consulting, Inc. (Oliver Wyman) has been retained by Delphi
Automotive LLP (Delphi or the Company) to review its workers' compensation (WC)
program in the State of New Jersey.  Specifically, the scope of services includes the
following:

- Estimated unpaid losses and ALAE as of February 28, 2010 for claims occurring
  through July 31, 2006;

- Breakdown of the above unpaid losses and ALAE between pre-petition and post-
  petition

- The above estimates discounted using an annual investment rate of 4.1%

The estimates are based on data evaluated as of February 28, 2010 and additional
information provided to Oliver Wyman through March 25, 2010.

**2**

## Considerations

As stated above, Oliver Wyman has been retained by Delphi to review its workers' compensation program in the state of New Jersey. This report sets forth the results of the analysis and is accompanied by exhibits which should be considered an integral part of this report.

Oliver Wyman's estimates are presented as *actuarial central estimates* (central estimates), which consistent with the applicable actuarial standard of practice, are defined as the expected values over the range of reasonably possible, as opposed to all conceivable, outcomes. Estimates are also provided at varying probability levels, representing the range of reasonably possible outcomes. Additionally, results are presented on both nominal and discounted bases, that is, considering the time value of money.

The terms *unpaid losses*, *reserves* and *liabilities* are used interchangeably throughout this report and accompanying exhibits. Also, unless otherwise stated, all references to *losses* should be understood to include ALAE.

Please note that ALAE is an insurance industry term which generally refers to defense, litigation and medical cost containment amounts. Unallocated loss adjustment expense (ULAE) is the insurance industry term generally used to refer to other claims-handling costs such as fees paid to third party administrators (TPAs) and salaries paid to in-house defense attorneys.

The scope of this project does not include the estimation of any expenses that are sometimes associated with self-insurance programs. Such expenses include ALAE, ULAE; excess insurance premiums; the costs of trustee, legal, administrative, risk

management and actuarial services; fees and assessments; and costs for surety bonds or letters of credit pertaining to outstanding liabilities.

All estimates provided in this report are net of non-insurance recoveries.  Oliver Wyman makes no assessment, and is not expressing an opinion, concerning the collectability of insurance.

It is intended that this analysis will be used by the Company solely as a guide in its determination of its liabilities related to its retained workers' compensation exposures in the state of New Jersey.  The conclusions in this report are related to its stated purpose only and may not be applicable for other purposes.



**3**

# Background

Delphi, formerly a division under General Motors Corp., became a separate company on May 28, 1999.  Liabilities incurred prior to that date were assumed by General Motors.

Pre-petition corresponds to claims with date of loss before October 8, 2005 whereas post-petition include claims with loss dates on and after October 8, 2005.   On August 1, 2006, Delphi sold the U.S. Battery operations in New Brunswick, New Jersey to Johnson Controls, Inc.

The table below summarizes the historical retentions for Delphi in the state of New Jersey:

| Policy Period | Historical Retention |
|---|---|
| Inception to 9/30/00 | $1 million |
| 10/1/00 to 9/30/02 | $2 million |
| 10/1/02 to 9/30/05 | $5 million |
| 10/1/05 to 7/31/06 | $1 million |

As requested by Delphi, the analysis was performed on a gross basis which does not consider the historical retentions reflected above.  However, no claims have approached the historical retention.  For the purpose of this analysis, we have assumed that a limit of $10 million is representative of unlimited losses.

**Actuarial Analysis**                                                                    Delphi Automotive



**4**

# Summary of Results

## Unpaid Losses and ALAE

Exhibit A, Page 1 and 2 and the table below summarize the pre-petition and post-petition unpaid losses as of February 28, 2010. All estimates are net of applicable recoveries.

| Unpaid Losses & ALAE ($000's) As of 2/28/2010 | | |
|---|---|---|
| | *Nominal* | *Discounted @ 4.1%* |
| Pre-Petition | 2,955 | 2,296 |
| Post-Petition | 826 | 632 |

Oliver Wyman notes a significant increase in the number of claims in the post-petition period. It is our understanding that the anticipated sale of the New Brunswick plant on July 31, 2006 contributed in the increase. Furthermore, the average case reserve in the post-petition period is lower than historical averages. To the extent there is inadequacy in the case reserves, the selected ultimate for this period is likely understated. Based on discussions with the Company, the lower than average case reserve is not the result of any change in case reserve methodology. A further complication with respect to the estimation of unpaid amounts is Delphi's bankruptcy exit plan, which created significant changes to Delphi's workers' compensation program and mix of exposures. Over the past few years, Delphi sold off or closed most of its plants in the United States and laid-off thousand of employees. All of these factors contribute significantly to the uncertainty of the unpaid losses and ALAE. Oliver Wyman, therefore, cautions Delphi that results could vary substantially from estimates in this report.

Unpaid losses are composed of claim examiner estimates (also called case reserves) and an incurred but not reported (IBNR) provision. The claim examiner estimates are

established by individual claim adjusters on open claims. Claim examiner estimates are based on the facts of a claim as they are known today; however, the ultimate value of each claim will likely differ from the current case reserve estimate.

IBNR is estimated by Oliver Wyman and includes a provision for a) events that have occurred that will give rise to claims that have not yet been reported; b) the possibility that claims that have been closed will re-open; c) claims that have been reported but have not yet been entered into the claim system; and d) development on known open claims.

The fact that the IBNR estimate includes a provision for development on known claims does not necessarily imply that there is a problem with the claim examiner estimates. For property and casualty lines of business, the tendency is that, in aggregate, damages or injuries are worse than originally thought. Please note that Oliver Wyman's IBNR estimate is appropriate for all historical policy periods in aggregate but not necessarily for any one particular accident period.

Discounting calculations assume a future payment pattern based on historical payment experience. It is assumed that liabilities will be supported by valid assets which have appropriate maturities and sufficient liquidity to meet the cash flow requirements of the self-insured program. Oliver Wyman makes no guarantee that the Company has sufficient funds to meet its claim liability obligations, and is not expressing an opinion on the appropriateness of the annual rate used in this analysis.

## Comparison to Prior Report

Unpaid losses pre-petition decreased by approximately $887 thousand since the prior evaluation as of December 31, 2004. The reconciliation of prior to current unpaid losses and ALAE for pre-petition claims is summarized below.

| Reconciliation of Unpaid Amounts from 12/31/2004 to 2/28/2010 ($000's) | | |
|---|---|---|
| Indicated Unpaid as of 12/31/2004: | | 3,841 |
| Expected Ultimate for Period 1/1/2005 to 10/7/2005: | (+) | 1,460 |
| Actual Payment for Period 1/1/2005 to 2/28/2010: | (-) | 3,026 |
| Change in Ultimate: | (+) | 680 |
| Indicated Unpaid as of 2/28/2010: | | 2,955 |

The decrease in unpaid losses is primarily due to actual payments made since December 31, 2004 offset by the increase in our estimate of ultimate losses for claims occurring on or prior to December 31, 2004 and the additional provision for losses occurring between December 31, 2004 and the end of the pre-petition period on October 7, 2005. Post-petition unpaid losses and ALAE total approximately $826 thousand.

A comparison of losses and ALAE as of December 31, 2004 and February 28, 2010 is shown in Exhibit B, Page 3.  For accidents occurring through December 31, 2004, paid losses increased by $2.3 million, while incurred losses increased by $1.7 million over the same time frame. Selected ultimate losses increased by $680 thousand.  This increase is mostly driven by paid and incurred development that was more than anticipated in the "Prior" periods.

<div style="border:1px solid black; display:inline-block;">

**5**

</div>

## Methodology

The estimates in this report are developed in accordance with the principles of the Casualty Actuarial Society and the applicable standards of the Actuarial Standards Board. Below is a discussion of the details underlying the actuarial methodologies and assumptions of Oliver Wyman's analysis. Oliver Wyman's projections for the Company assume that the patterns observed in historical accident periods will be applicable to future policy periods.

### Estimates of Ultimate Losses

To determine estimated ultimate losses for the Company, Oliver Wyman applied several generally accepted actuarial techniques, including the following:

- Paid loss development method
- Incurred loss development method
- Case reserve development method
- Paid Bornhuetter-Ferguson method
- Incurred Bornhuetter-Ferguson method

The methods are described in more detail below.

### Loss Development Methods

Under the *incurred loss development method*, a loss reporting pattern is applied directly to the latest incurred losses (case reserves plus cumulative paid losses) to project ultimate losses.

Under the *paid loss development method*, a mathematical procedure similar to the incurred loss development method is used.  Paid losses are used in place of incurred losses and payment patterns are used in place of reporting patterns.

Oliver Wyman derived loss development patterns based on the available historical experience for the Company, supplemented with insurance industry data where appropriate.  For example, if an entity's exposure is small, if there are not enough historical periods of data to determine its own patterns, or if the entity's own patterns are volatile, then insurance industry data may be applied.

The advantages of the incurred loss development method are that incurred losses provide a larger statistical database than paid losses (since case reserves are used in addition to payments) and that incurred losses provide more current information (since payments lag behind the establishment of case reserves).  A disadvantage of the incurred loss development method is that its predictive accuracy is dependent on consistent case reserving practices and philosophies.

Under the *case reserve development method*, a mathematical procedure similar to the loss development methods is used.  Case reserves are used in place of losses and a case reserving pattern is established using the payment and reporting patterns.

An advantage of the case reserve development method is that when data is incomplete, the case reserves can still be used to estimate a case reserving pattern.  Also, the case development method is a good alternative when only a few open claims remain in the accident period.

## Bornhuetter-Ferguson Methods

Under the *incurred Bornhuetter-Ferguson (B-F) method*, an entity's (or industry's) historical reporting pattern is used to estimate the percentage of ultimate losses which are unreported as of the valuation date.  This percentage is then multiplied by preliminary ultimate losses to produce expected unreported losses.  Expected unreported losses are also known as IBNR.

The *paid B-F method* relies on a mathematical procedure similar to the incurred B-F method.  Payment patterns are used in place of reporting patterns and unpaid losses are estimated in place of unreported losses.  Unpaid losses equal claim examiner estimates plus IBNR.

The preliminary ultimate losses are based on the results of the loss development methods described above.  The loss development factors are the same as those applied in the loss development methods.

An advantage of the B-F method is that estimates of ultimate losses tend to be more stable than estimates produced by the loss development method.  This is because estimates based on the B-F method are a weighted average between the estimate based on the loss development method and the preliminary ultimate loss.

## Estimated Ultimate Number of Claims

Similar to the paid and incurred loss development factors, reported claim count development factors are calculated based on historical claim triangles created from the Company's own experience, supplemented with insurance industry data where appropriate.  The selected count development factors are applied to the Company's reported counts as of the current evaluation date to determine an estimate of the ultimate number of claims.

## Unpaid Losses

To determine unpaid losses as of February 28, 2010, actual payments as of the same date were subtracted from the selected ultimate losses.

Oliver Wyman's approach to estimating probability levels measures the variability or statistical fluctuation associated with the self-insurance process itself, i.e., "process risk." Oliver Wyman has also judgmentally introduced a variable for "parameter risk," which is defined as the additional fluctuation which would result from misestimating the parameters of expected number of claims and the average claim cost.  The methodology does not, however, consider "model risk," or the risk that the techniques used by Oliver Wyman may not be appropriate to the Company's experience.

The parameters for the model were determined based on Oliver Wyman's analysis of the claim detail.  Specifically, Oliver Wyman has assumed the unpaid losses follow a lognormal distribution.  The frequency for the distribution was estimated based on the number of open and IBNR claims, while the severity was based on the Company's own loss experience.  The parameters for the model do not consider potential variability in payout pattern.



**6**

## Data Reliance

For this study, Oliver Wyman relied on the accuracy and completeness of data and information provided by the Company and Sedgwick Claims Management Services (Sedgwick), without independent audit. This actuarial analysis is based upon the review of this data and also insurance industry data, along with practical knowledge and training in actuarial theory, which together enable us to interpret the results of the calculations. Throughout the process, the data play an important role. The accuracy and validity of the actuarial analysis are dependent on, among other things, the quality of the data used. If the underlying data are inaccurate or incomplete, the results of Oliver Wyman's analysis may likewise be inaccurate or incomplete.

Oliver Wyman has attempted to review the data used directly in this analysis for the purpose of identifying values that are questionable or relationships that are materially inconsistent. In cases where the data are incomplete or inaccurate, Oliver Wyman has considered whether the use of such data may produce material biases in the results of this study, or whether the data are so inadequate that the data cannot be used to satisfy the purpose of this study.

Oliver Wyman has not, however, audited or verified this data since this is beyond the scope of the assignment. Also, it should be noted that Oliver Wyman's review of data may not always reveal imperfections and that there may be situations where it is impossible or impracticable to perform a sufficient review of the data.

Specifically, the data relied upon are as follows:

- Detailed claims listing as of February 28, 2010 provided by Sedgwick including the following data elements: claim number, paid loss amounts, case reserve, recovery amounts, date of occurrence, date reported, date closed, and status (open, closed, etc.)

- Historical claims listings, i.e., the same loss data as above but evaluated at previous yearly intervals as of 2/28/xx dates, i.e. 2/28/09, 2/28/08, 2/28/07,…until 2/28/01, provided by Sedgwick

- An annual investment rate of 4.1% provided by Delphi

- Oliver Wyman's prior study *New Jersey Workers' Compensation Loss Experience as of December 31, 2004*, dated June 7, 2005

- Industry information as published by the National Council on Compensation Insurance, Inc. (NCCI)

<div style="border:1px solid black; width:2in; height:2in; text-align:center;">

**7**

</div>

## Limitations

The results contained in this analysis represent Oliver Wyman's professional judgment, considering the limitations noted throughout this report. However, variation from these or any other estimates of unpaid claims is not only possible but probable. Actual future payments may vary significantly and in either direction from the estimates provided.

The study's conclusions were based on an analysis of the data and estimation of many contingent events. Future costs were developed from the historical claim experience and covered exposure, with adjustments for anticipated changes. The estimates make no provision for extraordinary future emergence of new classes of losses or types of losses not sufficiently represented in historical databases or which are not yet quantifiable.

Oliver Wyman has assumed that the mix of exposures is consistent throughout the historical periods. To the extent that the Company's operations have not been consistent and reflect different degrees of loss potential, then projections based on historical experience may not be reflective of current or future loss levels, and estimated ultimate losses may be too high or too low.

As noted earlier, the sources of uncertainty affecting Oliver Wyman's estimates are numerous and include factors internal and external to the Company. Internal factors include items such as changes in claim reserving or settlement practices. External influences include, but are not limited to, changes in the legal, social, or regulatory environment surrounding the claims process. Uncontrollable factors such as general economic conditions and future cost of living adjustments also contribute to the variability. For example, Oliver Wyman has not estimated the potential impact of increased auditing by Medicare as a result of the Medicare, Medicaid and SCHIP Extension Act of 2007.

Specifically, workers' compensation has received a tremendous amount of nationwide attention from politicians, employers, providers and the public in general. Recent years have seen an escalation in the number of legislative reforms, judicial rulings, and social phenomena affecting this business. Some of the many sources of uncertainty in our reserve estimates include changes in benefit levels and medical fee schedules.

Even if there were no unanticipated changes, there exists an inherent fluctuation in the amount of actual claims around the expected amount due to the random nature of the claims process.

The discount calculations assume a future payout pattern based on historical payout experience and other assumptions. Oliver Wyman makes no guarantee that the Company has sufficient funds to meet its claim liability obligations, and is not expressing an opinion on the appropriateness of the annual investment rate used in the calculations.

Greater uncertainty exists when preparing estimates on a discounted basis since results are dependent on additional parameters such as the assumed payment pattern, actual funds invested, and the actual investment return. In fact, the American Academy of Actuaries Actuarial Standard of Practice No. 20, *Discounting of Property and Casualty Loss and Loss Adjustment Expense Reserves*, indicates that a discounted reserve is not an adequate estimate of economic value unless a risk margin is included.

Oliver Wyman relied on loss reporting patterns, and loss payment patterns obtained from insurance industry sources. Although it is believed that these industry data provide insight into predicting the Company's loss experience, the use of external data adds to the variability associated with this report's projections. To the extent that the Company's costs and development patterns differ from the industry sources' costs and patterns, actual future payments will differ from the estimates provided.

All insurance is considered to be valid and fully collectible. Oliver Wyman makes no assessment and is not expressing an opinion concerning the ability to collect any insurance. Oliver Wyman has not evaluated the financial strength, claims paying ability or any other factors with regard to the Company's insurers.

Numbers in the exhibits may be shown with more significant digits than their accuracy suggests. This has been done to simplify the review of the calculations. In addition, in some instances, the computer retains more digits than those displayed. Therefore, there may be differences in the actual values shown due to rounding.



**8**

## Distribution and Use

It is intended that this analysis will be used by Delphi's Board of Directors, its management, its auditors and state regulatory agencies solely as a guide in its determination of its liabilities related to its retained workers' compensation exposures in the state of New Jersey. The results may also be used in the Company's internal management reports. The conclusions in this report are related to its stated purpose only and may not be applicable for other purposes. Any other distribution or use of this analysis, other than to the Company's auditors, Board of Directors, management and state regulatory agencies is unauthorized without Oliver Wyman's prior written consent.

Should further distribution of this actuarial report be authorized, this analysis must be distributed in its entirety, including all text and exhibits. This report should not replace the due diligence on behalf of any third party and Oliver Wyman assumes no liability related to third party use of this report.

The information and advice contained in this report (including all text and exhibits) is not intended by Oliver Wyman to be used, and it cannot be used, for the purpose of avoiding penalties under the Internal Revenue Code that may be imposed on the taxpayer.



**9**

## Closing

It has been a pleasure to provide this analysis to Delphi Automotive LLP.  Oliver Wyman is prepared to discuss the results at your convenience.

*The undersigned actuaries are Members of the Casualty Actuarial Society (CAS) and Members of the American Academy of Actuaries (MAAA) and meet the Qualification Standards to perform the actuarial analysis contained herein.*

*Oliver Wyman Actuarial Consulting, Inc.:*

_____

Suzanne Black, FCAS, MAAA
*777 South Figueroa Street,  Suite 2200*
*Los Angeles, CA  90017*
*(213) 346-5625*
*suzanne.black@oliverwyman.com*

_____

Jeff Trichon, FCAS, MAAA
*212 Carnegie Center, 3rd Floor*
*Princeton, NJ 08540*
*(609) 520-2991*
*jeff.trichon@oliverwyman.com*

<div style="border:1px solid black;">

**10**

</div>

# Glossary of Terms

*Accrual Basis*

Accounting for all costs associated with claims that occurred by a certain date, regardless of whether the claims are reported and regardless of whether the claims are paid.

*Actuarial Central Estimate*

Estimate that represents an expected value over the range of reasonably possible outcomes. Such range of reasonably possible outcomes may not include all conceivable outcomes.

*Allocated Loss Adjustment Expenses (ALAE)*

Costs associated with the handling and settling of claims that can be directly attributed to the particular claim.

*Claim Examiner Estimates / Case Reserves*

The amount of future payments estimated by the claim adjuster and risk management section for each claim.

*Coefficient of Variation*

A measure of relative dispersion within a probability distribution, i.e., the standard deviation of the probability distribution divided by its expected value (mean).

*Development*

Change or growth from one evaluation of a policy period to a subsequent evaluation.

*Discount*

The discount equals the ultimate cost minus the present value of the ultimate cost.

*Funding Requirement*

The amount of estimated ultimate loss and ALAE for claims that will occur between specific dates in the future.

*IBNR (Incurred but not reported)*

Case development for reported claims and loss and ALAE amounts for claims that have occurred but are not reported as of the evaluation date or are not yet entered into the claims system as of the evaluation date.

*Frequency*

The ultimate number of claims per unit of exposure.

*Incurred Losses*

Cumulative paid losses plus case reserves.

*Loss Cost*

Ultimate losses divided by exposure. The exposure could be number of employees, payroll, revenue, vehicles, etc.

*Model Risk*

The risk that the methods are not appropriate to the circumstances or that the models are not representative of the specified phenomenon.

*Parameter Risk*

Uncertainty in the <u>probability</u> of each outcome because of mis-quantified or unknown parameters. An example of parameter variance is a two-headed coin or loaded dice.

*Process Risk*

Uncertainty in the outcome because more than one outcome is possible. For example, when tossing a coin, a head or tail is possible or when rolling a dice, a value of one to six is possible.

*Salvage*

Recoveries due to the sale of damaged or recovered property.

*Subrogation*

Recoveries from a third party responsible for the loss for which a claim has already been paid.

*Unpaid Estimate*

The estimated amount of future losses and ALAE payments required to settle all claims which occurred prior to the analysis evaluation date. The amount includes case reserves plus the IBNR estimate.

**Delphi Automotive - New Jersey**
**Workers Compensation - Loss & ALAE**
**Unpaid Loss & ALAE Estimate - Probability Levels - Post-Petition**
**Statutory Limits**

| Post-Petition | | Total Unpaid | CV |
|---|---|---|---|
| Nominal | | 825,685 | 59.6% |
| Discounted at 4.1% | | 631,719 | |

| Probability Level Factors | | Unpaid | Discounted Unpaid |
|---|---|---|---|
| 95.0% | 2.128 | 1,756,844 | 1,344,135 |
| 90.0% | 1.741 | 1,437,862 | 1,100,087 |
| 80.0% | 1.366 | 1,128,101 | 863,093 |
| 70.0% | 1.147 | 947,042 | 724,568 |
| 60.0% | 0.988 | 815,546 | 623,962 |
| 50.0% | 0.859 | 709,199 | 542,598 |



Probability Distribution of Unpaid Estimate
Post-Petition

_Note:_
Probability level factors based on log-normal distribution

**Delphi Automotive - New Jersey**
**Workers Compensation - Loss & ALAE**
**Unpaid Loss & ALAE Estimate - Probability Levels - Pre-Petition**
**Statutory Limits**

| Pre-Petition | | Total Unpaid | CV |
|---|---|---|---|
| **Nominal** | | 2,954,962 | 54.2% |
| **Discounted at 4.1%** | | 2,296,238 | |

| Probability Level Factors | | Unpaid | Discounted Unpaid |
|---|---|---|---|
| 95.0% | 2.026 | 5,986,111 | 4,651,680 |
| 90.0% | 1.685 | 4,978,235 | 3,868,481 |
| 80.0% | 1.348 | 3,982,150 | 3,094,444 |
| 70.0% | 1.147 | 3,390,036 | 2,634,325 |
| 60.0% | 1.000 | 2,954,377 | 2,295,783 |
| 50.0% | 0.879 | 2,597,944 | 2,018,807 |



*Note:*
Probability level factors based on log-normal distribution

**Delphi Automotive - New Jersey**
**Workers Compensation - Loss & ALAE**
**Discounted Unpaid Loss & ALAE**
**Statutory Limits**
**As of 2/28/2010**

| Accident Period | Total Nominal Unpaid | Discount Factor @ 4.1% | Total Discounted Unpaid |
|---|---|---|---|
| | (1) | (2) | (3) |
| Prior | 754,428 | 0.891 | 671,830 |
| 1/1/1993-12/31/1993 | 80,460 | 0.767 | 61,714 |
| 1/1/1994-12/31/1994 | 0 | 0.759 | 0 |
| 1/1/1995-12/31/1995 | 22,249 | 0.750 | 16,697 |
| 1/1/1996-12/31/1996 | 99,211 | 0.743 | 73,722 |
| 1/1/1997-12/31/1997 | 48,578 | 0.735 | 35,696 |
| 1/1/1998-12/31/1998 | 49,926 | 0.728 | 36,343 |
| 1/1/1999-12/31/1999 | 160,777 | 0.720 | 115,826 |
| 1/1/2000-12/31/2000 | 96,252 | 0.719 | 69,218 |
| 1/1/2001-12/31/2001 | 215,319 | 0.719 | 154,786 |
| 1/1/2002-12/31/2002 | 386,731 | 0.726 | 280,627 |
| 1/1/2003-12/31/2003 | 94,691 | 0.734 | 69,504 |
| 1/1/2004-12/31/2004 | 179,038 | 0.744 | 133,227 |
| 1/1/2005-10/7/2005 | 767,302 | 0.752 | 577,047 |
| 10/8/2005-7/31/2006 | 825,685 | 0.765 | 631,719 |
| Total | 3,780,646 | | 2,927,957 |

Notes:
(1)  From Exhibit B, Page 4, Column (5)
(2)  From Appendix B, Column (1)
(3)  = (1) x (2)

**Delphi Automotive - New Jersey**
**Workers Compensation - Loss & ALAE**
**Reconciliation of Unpaid Amounts from 12/31/2004 to 2/28/2010**
**Statutory Limits**
**Pre-Petition**

| | | | |
|---|---|---|---:|
| (1) | Indicated Unpaid as of 12/31/2004: | | 3,841,467 |
| (2) | Expected Ultimate for Period 1/1/2005 to 10/7/2005: | (+) | 1,460,000 |
| (3) | Actual Payment for Period 1/1/2005 to 2/28/2010: | (-) | 3,026,400 |
| (4) | Change in Ultimate: | (+) | 679,894 |
| (5) | Indicated Unpaid as of 2/28/2010: | | 2,954,962 |

*Notes:*
(1)  From Exhibit B, Page 3, Column (11)
(2)  Based on selected ultimate
(3)  Provided by Sedgwick
(4)  Based on prior and current selected ultimate
(5)  = (1) + (2) - (3) + (4)

Exhibit B
Page 3

**Delphi Automotive - New Jersey**
**Workers Compensation - Loss & ALAE**
**Comparison - Statutory Limits**

| | As of 2/28/2010 | | | | | | As of 12/31/2004 | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Accident Period | Paid to date | Case Reserves | Incurred to date | IBNR | Total Unpaid | Selected Ultimate | Paid to date | Case Reserves | Incurred to date | IBNR | Total Unpaid | Selected Ultimate |
| | (1) | (2) | (3) | (4) | (5) | (6) | (7) | (8) | (9) | (10) | (11) | (12) |
| Prior | 3,575,572 | 495,426 | 4,070,999 | 259,001 | 754,428 | 4,330,000 | 2,906,158 | 312,999 | 3,219,157 | 124,873 | 437,872 | 3,344,030 |
| 1/1/1993-12/31/1993 | 669,540 | 16,498 | 686,038 | 63,962 | 80,460 | 750,000 | 496,967 | 241,057 | 738,024 | 46,976 | 288,033 | 785,000 |
| 1/1/1994-12/31/1994 | 635,162 | 0 | 635,162 | 0 | 0 | 635,162 | 568,536 | 17,792 | 586,329 | 63,671 | 81,464 | 650,000 |
| 1/1/1995-12/31/1995 | 162,752 | 8,603 | 171,355 | 13,645 | 22,249 | 185,000 | 152,352 | 0 | 152,352 | 0 | 0 | 152,352 |
| 1/1/1996-12/31/1996 | 330,789 | 68,013 | 398,802 | 31,198 | 99,211 | 430,000 | 292,490 | 0 | 292,490 | 0 | 0 | 292,490 |
| 1/1/1997-12/31/1997 | 451,422 | 16,236 | 467,658 | 32,342 | 48,578 | 500,000 | 440,509 | 18,757 | 459,266 | 97,734 | 116,491 | 557,000 |
| 1/1/1998-12/31/1998 | 350,074 | 17,508 | 367,583 | 32,417 | 49,926 | 400,000 | 330,533 | 0 | 330,533 | 23,863 | 23,863 | 354,395 |
| 1/1/1999-12/31/1999 | 589,223 | 74,019 | 663,242 | 86,758 | 160,777 | 750,000 | 495,715 | 21,357 | 517,072 | 179,928 | 201,285 | 697,000 |
| 1/1/2000-12/31/2000 | 383,748 | 40,240 | 423,988 | 56,012 | 96,252 | 480,000 | 241,898 | 151,768 | 393,666 | 142,334 | 294,102 | 536,000 |
| 1/1/2001-12/31/2001 | 494,681 | 128,200 | 622,881 | 87,119 | 215,319 | 710,000 | 433,991 | 235,050 | 669,041 | 185,959 | 421,009 | 855,000 |
| 1/1/2002-12/31/2002 | 783,269 | 234,148 | 1,017,417 | 152,583 | 386,731 | 1,170,000 | 338,472 | 388,831 | 727,302 | 280,698 | 669,528 | 1,008,000 |
| 1/1/2003-12/31/2003 | 230,309 | 18,379 | 248,689 | 76,311 | 94,691 | 325,000 | 89,966 | 123,761 | 213,728 | 329,272 | 453,034 | 543,000 |
| 1/1/2004-12/31/2004 | 560,962 | 16,772 | 577,734 | 162,266 | 179,038 | 740,000 | 96,213 | 286,877 | 383,090 | 567,910 | 854,787 | 951,000 |
| 1/1/2005-10/7/2005 | 692,698 | 484,837 | 1,177,535 | 282,465 | 767,302 | 1,460,000 | | | | | | |
| 10/8/2005-7/31/2006 | 424,315 | 387,735 | 812,050 | 437,950 | 825,685 | 1,250,000 | | | | | | |
| Total | 10,334,516 | 2,006,615 | 12,341,131 | 1,774,032 | 3,780,646 | 14,115,162 | 6,883,801 | 1,798,249 | 8,682,050 | 2,043,218 | 3,841,467 | 10,725,268 |

| | Difference | | | | | |
|---|---|---|---|---|---|---|
| Accident Period | Paid To date | Case Reserves | Incurred To date | IBNR | Total Unpaid | Selected Ultimate |
| | (13) | (14) | (15) | (16) | (17) | (18) |
| Prior | 669,414 | 182,427 | 851,841 | 134,128 | 316,555 | 985,970 |
| 1/1/1993-12/31/1993 | 172,573 | (224,559) | (51,986) | 16,986 | (207,573) | (35,000) |
| 1/1/1994-12/31/1994 | 66,626 | (17,792) | 48,834 | (63,671) | (81,464) | (14,838) |
| 1/1/1995-12/31/1995 | 10,400 | 8,603 | 19,003 | 13,645 | 22,249 | 32,648 |
| 1/1/1996-12/31/1996 | 38,299 | 68,013 | 106,312 | 31,198 | 99,211 | 137,510 |
| 1/1/1997-12/31/1997 | 10,913 | (2,521) | 8,391 | (65,391) | (67,913) | (57,000) |
| 1/1/1998-12/31/1998 | 19,542 | 17,508 | 37,050 | 8,554 | 26,063 | 45,605 |
| 1/1/1999-12/31/1999 | 93,508 | 52,662 | 146,170 | (93,170) | (40,508) | 53,000 |
| 1/1/2000-12/31/2000 | 141,850 | (111,528) | 30,322 | (86,322) | (197,850) | (56,000) |
| 1/1/2001-12/31/2001 | 60,690 | (106,850) | (46,160) | (98,840) | (205,690) | (145,000) |
| 1/1/2002-12/31/2002 | 444,797 | (154,683) | 290,114 | (128,114) | (282,797) | 162,000 |
| 1/1/2003-12/31/2003 | 140,343 | (105,382) | 34,961 | (252,961) | (358,343) | (218,000) |
| 1/1/2004-12/31/2004 | 464,748 | (270,105) | 194,644 | (405,644) | (675,748) | (211,000) |
| 1/1/2005-10/7/2005 | | | | | | |
| 10/8/2005-7/31/2006 | | | | | | |
| Total | 2,333,702 | (664,206) | 1,669,497 | (989,602) | (1,653,808) | 679,894 |

*Notes:*
(1)  Provided by Sedgwick
(2)  = (3) - (1)
(3)  Provided by Sedgwick
(4)  = (6) - (3)
(5)  = (2) + (4)
(6)  From Exhibit B, Page 5, Column (10)
(7) - (12)  From Oliver Wyman's 12/31/2004 report
(13)  = (1) - (7)
(14)  = (2) - (8)
(15)  = (3) - (9)
(16)  = (4) - (10)
(17)  = (5) - (11)
(18)  = (6) - (12)

**Delphi Automotive - New Jersey**
**Workers Compensation - Loss & ALAE**
**Summary - Statutory Limits**
**As of 2/28/2010**

| | Loss & ALAE | | | | | | Counts - Excluding Closed Without Payment | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Accident Period | Paid to date | Case Reserves | Incurred to date | IBNR | Total Unpaid | Selected Ultimate | Closed | Open | Reported | IBNR | Open & IBNR | Selected Ultimate |
| | (1) | (2) | (3) | (4) | (5) | (6) | (7) | (8) | (9) | (10) | (11) | (12) |
| Prior | 3,575,572 | 495,426 | 4,070,999 | 259,001 | 754,428 | 4,330,000 | 257 | 22 | 279 | 0 | 22 | 279 |
| 1/1/1993-12/31/1993 | 669,540 | 16,498 | 686,038 | 63,962 | 80,460 | 750,000 | 62 | 2 | 64 | 0 | 2 | 64 |
| 1/1/1994-12/31/1994 | 635,162 | 0 | 635,162 | 0 | 0 | 635,162 | 65 | 0 | 65 | 0 | 0 | 65 |
| 1/1/1995-12/31/1995 | 162,752 | 8,603 | 171,355 | 13,645 | 22,249 | 185,000 | 66 | 1 | 67 | 0 | 1 | 67 |
| 1/1/1996-12/31/1996 | 330,789 | 68,013 | 398,802 | 31,198 | 99,211 | 430,000 | 58 | 3 | 61 | 0 | 3 | 61 |
| 1/1/1997-12/31/1997 | 451,422 | 16,236 | 467,658 | 32,342 | 48,578 | 500,000 | 62 | 1 | 63 | 0 | 1 | 63 |
| 1/1/1998-12/31/1998 | 350,074 | 17,508 | 367,583 | 32,417 | 49,926 | 400,000 | 56 | 1 | 57 | 0 | 1 | 57 |
| 1/1/1999-12/31/1999 | 589,223 | 74,019 | 663,242 | 86,758 | 160,777 | 750,000 | 60 | 8 | 68 | 0 | 8 | 68 |
| 1/1/2000-12/31/2000 | 383,748 | 40,240 | 423,988 | 56,012 | 96,252 | 480,000 | 58 | 4 | 62 | 0 | 4 | 62 |
| 1/1/2001-12/31/2001 | 494,681 | 128,200 | 622,881 | 87,119 | 215,319 | 710,000 | 48 | 5 | 53 | 0 | 5 | 53 |
| 1/1/2002-12/31/2002 | 783,269 | 234,148 | 1,017,417 | 152,583 | 386,731 | 1,170,000 | 54 | 5 | 59 | 0 | 5 | 59 |
| 1/1/2003-12/31/2003 | 230,309 | 18,379 | 248,689 | 76,311 | 94,691 | 325,000 | 43 | 2 | 45 | 1 | 3 | 46 |
| 1/1/2004-12/31/2004 | 560,962 | 16,772 | 577,734 | 162,266 | 179,038 | 740,000 | 52 | 3 | 55 | 1 | 4 | 56 |
| 1/1/2005-10/7/2005 | 692,698 | 484,837 | 1,177,535 | 282,465 | 767,302 | 1,460,000 | 64 | 6 | 70 | 2 | 8 | 72 |
| 10/8/2005-7/31/2006 | 424,315 | 387,735 | 812,050 | 437,950 | 825,685 | 1,250,000 | 77 | 37 | 114 | 5 | 42 | 119 |
| Total | 10,334,516 | 2,006,615 | 12,341,131 | 1,774,032 | 3,780,646 | 14,115,162 | 1,082 | 100 | 1,182 | 9 | 109 | 1,191 |

| | Averages | | | | |
|---|---|---|---|---|---|
| Accident Period | Paid per Closed | Case per Open | Incurred per Reported | Unpaid per Open & IBNR | Ultimate Claim Cost |
| | (13) | (14) | (15) | (16) | (17) |
| Prior | 13,913 | 22,519 | 14,591 | 34,292 | 15,520 |
| 1/1/1993-12/31/1993 | 10,799 | 8,249 | 10,719 | 40,230 | 11,719 |
| 1/1/1994-12/31/1994 | 9,772 | | 9,772 | | 9,772 |
| 1/1/1995-12/31/1995 | 2,466 | 8,603 | 2,558 | 22,249 | 2,761 |
| 1/1/1996-12/31/1996 | 5,703 | 22,671 | 6,538 | 33,070 | 7,049 |
| 1/1/1997-12/31/1997 | 7,281 | 16,236 | 7,423 | 48,578 | 7,937 |
| 1/1/1998-12/31/1998 | 6,251 | 17,508 | 6,449 | 49,926 | 7,018 |
| 1/1/1999-12/31/1999 | 9,820 | 9,252 | 9,754 | 20,097 | 11,029 |
| 1/1/2000-12/31/2000 | 6,616 | 10,060 | 6,839 | 24,063 | 7,742 |
| 1/1/2001-12/31/2001 | 10,306 | 25,640 | 11,752 | 43,064 | 13,396 |
| 1/1/2002-12/31/2002 | 14,505 | 46,830 | 17,244 | 77,346 | 19,831 |
| 1/1/2003-12/31/2003 | 5,356 | 9,190 | 5,526 | 31,564 | 7,065 |
| 1/1/2004-12/31/2004 | 10,788 | 5,591 | 10,504 | 44,760 | 13,214 |
| 1/1/2005-10/7/2005 | 10,823 | 80,806 | 16,822 | 95,913 | 20,278 |
| 10/8/2005-7/31/2006 | 5,511 | 10,479 | 7,123 | 19,659 | 10,504 |
| Total | 9,551 | 20,066 | 10,441 | 34,685 | 11,852 |

*Notes:*
(1) Provided by Sedgwick
(2) = (3) - (1)
(3) Provided by Sedgwick
(4) = (6) - (3)
(5) = (2) + (4)
(6) From Exhibit B, Page 5, Column (10)
(7) Provided by Sedgwick
(8) = (9) - (7)
(9) Provided by Sedgwick
(10) = (12) - (9)
(11) = (8) + (10)
(12) From Exhibit C, Page 5, Column (4)
(13) = (1) / (7)
(14) = (2) / (8)
(15) = (3) / (9)
(16) = (5) / (11)
(17) = (6) / (12)

**Delphi Automotive - New Jersey**
**Workers Compensation - Loss & ALAE**
**Selected Ultimates - Statutory Limits**
**As of 2/28/2010**

| Accident Period | Paid to date | Incurred to date | Open and IBNR Claims | Paid Development Method | Incurred Development Method | Case Development Method | Paid Bornhuetter-Ferguson Method | Incurred Bornhuetter-Ferguson Method | Prior Selected Ultimate | **Selected Ultimate** | Selected Ultimate Counts | Implied Ultimate Severity |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | (1) | (2) | (3) | (4) | (5) | (6) | (7) | (8) | (9) | (10) | (11) | (12) |
| Prior | 3,575,572 | 4,070,999 | 22 | 3,935,824 | 4,204,220 | 4,333,330 | 3,959,717 | 4,203,987 | 3,344,030 | 4,330,000 | 279 | 15,520 |
| 1/1/1993-12/31/1993 | 669,540 | 686,038 | 2 | 774,657 | 721,026 | 695,222 | 771,019 | 722,327 | 785,000 | 750,000 | 64 | 11,719 |
| 1/1/1994-12/31/1994 | 635,162 | 635,162 | 0 | 746,641 | 670,226 | 635,162 | 729,996 | 668,391 | 650,000 | 635,162 | 65 | 9,772 |
| 1/1/1995-12/31/1995 | 162,752 | 171,355 | 1 | 194,377 | 181,718 | 175,998 | 193,348 | 182,079 | 152,352 | 185,000 | 67 | 2,761 |
| 1/1/1996-12/31/1996 | 330,789 | 398,802 | 3 | 402,180 | 425,460 | 435,905 | 404,246 | 424,730 | 292,490 | 430,000 | 61 | 7,049 |
| 1/1/1997-12/31/1997 | 451,422 | 467,658 | 1 | 558,726 | 502,909 | 476,989 | 553,366 | 504,865 | 557,000 | 500,000 | 63 | 7,937 |
| 1/1/1998-12/31/1998 | 350,074 | 367,583 | 1 | 441,954 | 400,034 | 378,786 | 437,596 | 401,734 | 354,395 | 400,000 | 57 | 7,018 |
| 1/1/1999-12/31/1999 | 589,223 | 663,242 | 8 | 758,746 | 734,065 | 719,497 | 755,989 | 735,255 | 697,000 | 750,000 | 68 | 11,029 |
| 1/1/2000-12/31/2000 | 383,748 | 423,988 | 4 | 507,991 | 477,240 | 457,749 | 504,230 | 478,955 | 536,000 | 480,000 | 62 | 7,742 |
| 1/1/2001-12/31/2001 | 494,681 | 622,881 | 5 | 675,794 | 713,734 | 738,858 | 680,878 | 711,319 | 855,000 | 710,000 | 53 | 13,396 |
| 1/1/2002-12/31/2002 | 783,269 | 1,017,417 | 5 | 1,120,333 | 1,197,293 | 1,250,960 | 1,131,910 | 1,191,512 | 1,008,000 | 1,170,000 | 59 | 19,831 |
| 1/1/2003-12/31/2003 | 230,309 | 248,689 | 3 | 349,183 | 303,192 | 269,252 | 341,355 | 307,325 | 543,000 | 325,000 | 46 | 7,065 |
| 1/1/2004-12/31/2004 | 560,962 | 577,734 | 4 | 918,542 | 733,934 | 597,962 | 882,609 | 753,578 | 951,000 | 740,000 | 56 | 13,214 |
| 1/1/2005-10/7/2005 | 692,698 | 1,177,535 | 8 | 1,237,366 | 1,570,975 | 1,817,485 | 1,310,790 | 1,529,200 | N/A | 1,460,000 | 72 | 20,278 |
| 10/8/2005-7/31/2006 | 424,315 | 812,050 | 42 | 853,959 | 1,144,876 | 1,342,712 | 927,142 | 1,102,590 | N/A | 1,250,000 | 119 | 10,504 |
| Total | 10,334,516 | 12,341,131 | 109 | 13,476,273 | 13,980,901 | 14,325,868 | 13,584,191 | 13,917,850 | 10,725,268 | 14,115,162 | 1,191 | 11,852 |

*Notes:*
(1)  Provided by Sedgwick
(2)  Provided by Sedgwick
(3)  From Exhibit C, Page 5, Column (5)
(4)  From Exhibit C, Page 1, Column (3)
(5)  From Exhibit C, Page 1, Column (6)
(6)  From Exhibit C, Page 2, Column (6)

(7)  From Exhibit C, Page 3, Column (6)
(8)  From Exhibit C, Page 4, Column (6)
(9)  From Oliver Wyman's 12/31/2004 report
(10)  Selected
(11)  From Exhibit C, Page 5, Column (4)
(12)  = (10) / (11)

Exhibit C
Page 1

**Delphi Automotive - New Jersey**
**Workers Compensation - Loss & ALAE**
**Paid and Incurred Development Methods**
**As of 2/28/2010**
**Statutory Limits**

| Accident Period | Age | Paid Development Method | | | Incurred Development Method | | |
|---|---|---|---|---|---|---|---|
| | | Paid To date | Cumulative Development Factor | Estimated Ultimate | Incurred To date | Cumulative Development Factor | Estimated Ultimate |
| | | (1) | (2) | (3) | (4) | (5) | (6) |
| Prior | | 3,575,572 | 1.101 | 3,935,824 | 4,070,999 | 1.033 | 4,204,220 |
| 1/1/1993-12/31/1993 | 206 | 669,540 | 1.157 | 774,657 | 686,038 | 1.051 | 721,026 |
| 1/1/1994-12/31/1994 | 194 | 635,162 | 1.176 | 746,641 | 635,162 | 1.055 | 670,226 |
| 1/1/1995-12/31/1995 | 182 | 162,752 | 1.194 | 194,377 | 171,355 | 1.060 | 181,718 |
| 1/1/1996-12/31/1996 | 170 | 330,789 | 1.216 | 402,180 | 398,802 | 1.067 | 425,460 |
| 1/1/1997-12/31/1997 | 158 | 451,422 | 1.238 | 558,726 | 467,658 | 1.075 | 502,909 |
| 1/1/1998-12/31/1998 | 146 | 350,074 | 1.262 | 441,954 | 367,583 | 1.088 | 400,034 |
| 1/1/1999-12/31/1999 | 134 | 589,223 | 1.288 | 758,746 | 663,242 | 1.107 | 734,065 |
| 1/1/2000-12/31/2000 | 122 | 383,748 | 1.324 | 507,991 | 423,988 | 1.126 | 477,240 |
| 1/1/2001-12/31/2001 | 110 | 494,681 | 1.366 | 675,794 | 622,881 | 1.146 | 713,734 |
| 1/1/2002-12/31/2002 | 98 | 783,269 | 1.430 | 1,120,333 | 1,017,417 | 1.177 | 1,197,293 |
| 1/1/2003-12/31/2003 | 86 | 230,309 | 1.516 | 349,183 | 248,689 | 1.219 | 303,192 |
| 1/1/2004-12/31/2004 | 74 | 560,962 | 1.637 | 918,542 | 577,734 | 1.270 | 733,934 |
| 1/1/2005-10/7/2005 | 63 | 692,698 | 1.786 | 1,237,366 | 1,177,535 | 1.334 | 1,570,975 |
| 10/8/2005-7/31/2006 | 54 | 424,315 | 2.013 | 853,959 | 812,050 | 1.410 | 1,144,876 |
| Total | | 10,334,516 | | 13,476,273 | 12,341,131 | | 13,980,901 |

_Notes:_
(1)  Provided by Sedgwick
(2)  Based on Appendix A, Page 1
(3)  = (1) x (2)
(4)  Provided by Sedgwick
(5)  Based on Appendix A, Page 1
(6)  = (4) x (5)

Exhibit C
Page 2

**Delphi Automotive - New Jersey**
**Workers Compensation - Loss & ALAE**
**Case Development Method**
**As of 2/28/2010**
**Statutory Limits**

| Accident Period | Age | Paid To date | Case Reserves | Percent Incurred | Percent Paid | Indicated IBNR | Estimated Ultimate |
|---|---|---|---|---|---|---|---|
| | | (1) | (2) | (3) | (4) | (5) | (6) |
| Prior | | 3,575,572 | 495,426 | 96.8% | 90.8% | 262,331 | 4,333,330 |
| 1/1/1993-12/31/1993 | 206 | 669,540 | 16,498 | 95.1% | 86.4% | 9,184 | 695,222 |
| 1/1/1994-12/31/1994 | 194 | 635,162 | 0 | 94.8% | 85.1% | 0 | 635,162 |
| 1/1/1995-12/31/1995 | 182 | 162,752 | 8,603 | 94.3% | 83.7% | 4,643 | 175,998 |
| 1/1/1996-12/31/1996 | 170 | 330,789 | 68,013 | 93.7% | 82.2% | 37,102 | 435,905 |
| 1/1/1997-12/31/1997 | 158 | 451,422 | 16,236 | 93.0% | 80.8% | 9,332 | 476,989 |
| 1/1/1998-12/31/1998 | 146 | 350,074 | 17,508 | 91.9% | 79.2% | 11,203 | 378,786 |
| 1/1/1999-12/31/1999 | 134 | 589,223 | 74,019 | 90.4% | 77.7% | 56,256 | 719,497 |
| 1/1/2000-12/31/2000 | 122 | 383,748 | 40,240 | 88.8% | 75.5% | 33,762 | 457,749 |
| 1/1/2001-12/31/2001 | 110 | 494,681 | 128,200 | 87.3% | 73.2% | 115,977 | 738,858 |
| 1/1/2002-12/31/2002 | 98 | 783,269 | 234,148 | 85.0% | 69.9% | 233,543 | 1,250,960 |
| 1/1/2003-12/31/2003 | 86 | 230,309 | 18,379 | 82.0% | 66.0% | 20,564 | 269,252 |
| 1/1/2004-12/31/2004 | 74 | 560,962 | 16,772 | 78.7% | 61.1% | 20,228 | 597,962 |
| 1/1/2005-10/7/2005 | 63 | 692,698 | 484,837 | 75.0% | 56.0% | 639,950 | 1,817,485 |
| 10/8/2005-7/31/2006 | 54 | 424,315 | 387,735 | 70.9% | 49.7% | 530,662 | 1,342,712 |
| Total | | 10,334,516 | 2,006,615 | | | 1,984,737 | 14,325,868 |

Notes:
(1) Provided by Sedgwick
(2) Provided by Sedgwick
(3) Based on Appendix A, Page 1
(4) Based on Appendix A, Page 1
(5) = (2) x [ 1 - (3) ] / [ (3) - (4) ]
(6) = (1) + (2) + (5)

Exhibit C
Page 3

**Delphi Automotive - New Jersey**
**Workers Compensation - Loss & ALAE**
**Paid Bornhuetter-Ferguson Method**
**As of 2/28/2010**
**Statutory Limits**

| Accident Period | Age | Preliminary Ultimate | Cumulative Development Factors | Expected Unpaid | Expected Paid | Actual Paid | Estimated Ultimate |
|---|---|---|---|---|---|---|---|
| | | (1) | (2) | (3) | (4) | (5) | (6) |
| Prior | | 4,196,864 | 1.101 | 384,144 | 3,812,719 | 3,575,572 | 3,959,717 |
| 1/1/1993-12/31/1993 | 206 | 747,842 | 1.157 | 101,479 | 646,363 | 669,540 | 771,019 |
| 1/1/1994-12/31/1994 | 194 | 635,162 | 1.176 | 94,834 | 540,328 | 635,162 | 729,996 |
| 1/1/1995-12/31/1995 | 182 | 188,048 | 1.194 | 30,596 | 157,452 | 162,752 | 193,348 |
| 1/1/1996-12/31/1996 | 170 | 413,820 | 1.216 | 73,456 | 340,363 | 330,789 | 404,246 |
| 1/1/1997-12/31/1997 | 158 | 530,817 | 1.238 | 101,944 | 428,873 | 451,422 | 553,366 |
| 1/1/1998-12/31/1998 | 146 | 420,994 | 1.262 | 87,522 | 333,472 | 350,074 | 437,596 |
| 1/1/1999-12/31/1999 | 134 | 746,406 | 1.288 | 166,766 | 579,640 | 589,223 | 755,989 |
| 1/1/2000-12/31/2000 | 122 | 492,615 | 1.324 | 120,482 | 372,133 | 383,748 | 504,230 |
| 1/1/2001-12/31/2001 | 110 | 694,764 | 1.366 | 186,197 | 508,567 | 494,681 | 680,878 |
| 1/1/2002-12/31/2002 | 98 | 1,158,813 | 1.430 | 348,641 | 810,172 | 783,269 | 1,131,910 |
| 1/1/2003-12/31/2003 | 86 | 326,187 | 1.516 | 111,045 | 215,142 | 230,309 | 341,355 |
| 1/1/2004-12/31/2004 | 74 | 826,238 | 1.637 | 321,647 | 504,591 | 560,962 | 882,609 |
| 1/1/2005-10/7/2005 | 63 | 1,404,170 | 1.786 | 618,093 | 786,078 | 692,698 | 1,310,790 |
| 10/8/2005-7/31/2006 | 54 | 999,418 | 2.013 | 502,827 | 496,591 | 424,315 | 927,142 |
| Total | | 13,782,157 | | 3,249,675 | 10,532,482 | 10,334,516 | 13,584,191 |

Notes:
(1)  Based on Exhibit C, Page 1, Columns (3) and (6)
(2)  Based on Appendix A, Page 1
(3)  = (1) x [ 1 - 1 / (2) ]
(4)  = (1) - (3)
(5)  Provided by Sedgwick
(6)  = (3) + (5)

Exhibit C
Page 4

**Delphi Automotive - New Jersey**
**Workers Compensation - Loss & ALAE**
**Incurred Bornhuetter-Ferguson Method**
**As of 2/28/2010**
**Statutory Limits**

| Accident Period | Age | Preliminary Ultimate | Cumulative Development Factors | Expected IBNR | Expected Incurred | Actual Incurred | Estimated Ultimate |
|---|---|---|---|---|---|---|---|
| | | (1) | (2) | (3) | (4) | (5) | (6) |
| Prior | | 4,196,864 | 1.033 | 132,988 | 4,063,875 | 4,070,999 | 4,203,987 |
| 1/1/1993-12/31/1993 | 206 | 747,842 | 1.051 | 36,289 | 711,552 | 686,038 | 722,327 |
| 1/1/1994-12/31/1994 | 194 | 635,162 | 1.055 | 33,229 | 601,933 | 635,162 | 668,391 |
| 1/1/1995-12/31/1995 | 182 | 188,048 | 1.060 | 10,725 | 177,323 | 171,355 | 182,079 |
| 1/1/1996-12/31/1996 | 170 | 413,820 | 1.067 | 25,928 | 387,892 | 398,802 | 424,730 |
| 1/1/1997-12/31/1997 | 158 | 530,817 | 1.075 | 37,207 | 493,610 | 467,658 | 504,865 |
| 1/1/1998-12/31/1998 | 146 | 420,994 | 1.088 | 34,151 | 386,843 | 367,583 | 401,734 |
| 1/1/1999-12/31/1999 | 134 | 746,406 | 1.107 | 72,014 | 674,392 | 663,242 | 735,255 |
| 1/1/2000-12/31/2000 | 122 | 492,615 | 1.126 | 54,968 | 437,647 | 423,988 | 478,955 |
| 1/1/2001-12/31/2001 | 110 | 694,764 | 1.146 | 88,438 | 606,326 | 622,881 | 711,319 |
| 1/1/2002-12/31/2002 | 98 | 1,158,813 | 1.177 | 174,095 | 984,718 | 1,017,417 | 1,191,512 |
| 1/1/2003-12/31/2003 | 86 | 326,187 | 1.219 | 58,637 | 267,551 | 248,689 | 307,325 |
| 1/1/2004-12/31/2004 | 74 | 826,238 | 1.270 | 175,845 | 650,393 | 577,734 | 753,578 |
| 1/1/2005-10/7/2005 | 63 | 1,404,170 | 1.334 | 351,665 | 1,052,505 | 1,177,535 | 1,529,200 |
| 10/8/2005-7/31/2006 | 54 | 999,418 | 1.410 | 290,540 | 708,878 | 812,050 | 1,102,590 |
| Total | | 13,782,157 | | 1,576,720 | 12,205,438 | 12,341,131 | 13,917,850 |

Notes:
(1)  Based on Exhibit C, Page 1, Columns (3) and (6)
(2)  Based on Appendix A, Page 1
(3)  = (1) x [ 1 - 1 / (2) ]
(4)  = (1) - (3)
(5)  Provided by Sedgwick
(6)  = (3) + (5)

Exhibit C
Page 5

**Delphi Automotive - New Jersey**
**Workers Compensation - Loss & ALAE**
**Selection of Ultimate Counts - Excluding Closed Without Payment**
**As of 2/28/2010**

| Accident Period | Age | Reported Counts | Cumulative Development Factor | Estimated Ultimate Counts | Selected Ultimate Counts | Open and IBNR Claims |
|---|---|---|---|---|---|---|
| | | (1) | (2) | (3) | (4) | (5) |
| Prior | | 279 | 1.000 | 279 | 279 | 22 |
| 1/1/1993-12/31/1993 | 206 | 64 | 1.000 | 64 | 64 | 2 |
| 1/1/1994-12/31/1994 | 194 | 65 | 1.000 | 65 | 65 | 0 |
| 1/1/1995-12/31/1995 | 182 | 67 | 1.000 | 67 | 67 | 1 |
| 1/1/1996-12/31/1996 | 170 | 61 | 1.000 | 61 | 61 | 3 |
| 1/1/1997-12/31/1997 | 158 | 63 | 1.000 | 63 | 63 | 1 |
| 1/1/1998-12/31/1998 | 146 | 57 | 1.000 | 57 | 57 | 1 |
| 1/1/1999-12/31/1999 | 134 | 68 | 1.000 | 68 | 68 | 8 |
| 1/1/2000-12/31/2000 | 122 | 62 | 1.001 | 62 | 62 | 4 |
| 1/1/2001-12/31/2001 | 110 | 53 | 1.003 | 53 | 53 | 5 |
| 1/1/2002-12/31/2002 | 98 | 59 | 1.007 | 59 | 59 | 5 |
| 1/1/2003-12/31/2003 | 86 | 45 | 1.013 | 46 | 46 | 3 |
| 1/1/2004-12/31/2004 | 74 | 55 | 1.021 | 56 | 56 | 4 |
| 1/1/2005-10/7/2005 | 63 | 70 | 1.031 | 72 | 72 | 8 |
| 10/8/2005-7/31/2006 | 54 | 114 | 1.040 | 119 | 119 | 42 |
| Total | | 1,182 | | 1,191 | 1,191 | 109 |

*Notes:*
(1)  Provided by Sedgwick
(2)  Based on Appendix A, Page 4
(3)  = (1) x (2)
(4)  Selected
(5)  = (4) - Closed Counts

**Delphi Automotive - New Jersey**
**Workers Compensation - Loss & ALAE**
**Loss Data**
**As of 2/28/2010**

| | Loss & ALAE | | Claim Counts | | |
| | Statutory Limits | | Excluding Closed Without Payment | | Closed Without |
| Accident Period | Paid | Incurred | Reported | Closed | Payment |
|---|---|---|---|---|---|
| Prior | 3,575,572 | 4,070,999 | 279 | 257 | 5 |
| 1/1/1993-12/31/1993 | 669,540 | 686,038 | 64 | 62 | 5 |
| 1/1/1994-12/31/1994 | 635,162 | 635,162 | 65 | 65 | 9 |
| 1/1/1995-12/31/1995 | 162,752 | 171,355 | 67 | 66 | 4 |
| 1/1/1996-12/31/1996 | 330,789 | 398,802 | 61 | 58 | 2 |
| 1/1/1997-12/31/1997 | 451,422 | 467,658 | 63 | 62 | 10 |
| 1/1/1998-12/31/1998 | 350,074 | 367,583 | 57 | 56 | 11 |
| 1/1/1999-12/31/1999 | 589,223 | 663,242 | 68 | 60 | 16 |
| 1/1/2000-12/31/2000 | 383,748 | 423,988 | 62 | 58 | 9 |
| 1/1/2001-12/31/2001 | 494,681 | 622,881 | 53 | 48 | 11 |
| 1/1/2002-12/31/2002 | 783,269 | 1,017,417 | 59 | 54 | 5 |
| 1/1/2003-12/31/2003 | 230,309 | 248,689 | 45 | 43 | 7 |
| 1/1/2004-12/31/2004 | 560,962 | 577,734 | 55 | 52 | 8 |
| 1/1/2005-10/7/2005 | 692,698 | 1,177,535 | 70 | 64 | 9 |
| 10/8/2005-7/31/2006* | 424,315 | 812,050 | 114 | 77 | 25 |
| Total | 10,334,516 | 12,341,131 | 1,182 | 1,082 | 136 |

*Note:*
 Data provided by Sedgwick
 Claims between 10/8/2005 and 7/31/2009 are post-petition
 * Plant closed as of 7/31/2006

Oliver Wyman Actuarial Consulting, Inc.

**Delphi Automotive - New Jersey**
**Workers Compensation - Loss & ALAE**
**Large Loss Listing (Incurred > $250,000)**
**As of 2/28/2010**

| | | | | Loss & ALAE | | |
| Claim Number | Accident Date | Policy Period Beginning | Status | Paid | Case Reserves | Incurred |
|---|---|---|---|---|---|---|
| A318205120-0001-01 | 2/22/1971 | 1/1/1971 | Open | 219,208 | 149,642 | 368,850 |
| 8118219313-0001-01 | 1/13/1976 | 1/1/1976 | Open | 235,546 | 86,170 | 321,716 |
| 8118218751-0001-01 | 10/27/1989 | 1/1/1989 | Closed | 412,748 | 0 | 412,748 |
| 8118218872-0001-01 | 1/3/1992 | 1/1/1992 | Open | 447,979 | 87,284 | 535,263 |
| 8118218928-0001-01 | 5/5/1992 | 1/1/1992 | Closed | 316,563 | 0 | 316,563 |
| A118203379-0001-01 | 5/2/2001 | 1/1/2001 | Open | 251,777 | 82,858 | 334,635 |
| A218201959-0001-01 | 4/3/2002 | 1/1/2002 | Open | 187,809 | 191,444 | 379,253 |
| 380509218015 | 9/15/2005 | 1/1/2005 | Open | 11,540 | 408,195 | 419,736 |

_Note:_
Data provided by Sedgwick

**Delphi Automotive - New Jersey**
**Workers Compensation - Loss & ALAE**
**Actual vs Expected Paid Loss & ALAE Between 12/31/2004 and 2/28/2010**
**Statutory Limits**

| Accident Period | Selected Ultimate @ 12/31/2004 | Paid @ 12/31/2004 | Percent Unpaid @ 12/31/2004 | Percent Unpaid @ 2/28/2010 | Expected Payment | Actual Payment | Difference in Payment |
|---|---|---|---|---|---|---|---|
| | (1) | (2) | (3) | (4) | (5) | (6) | (7) |
| Prior | 3,344,030 | 2,906,158 | 14.2% | 8.2% | 186,128 | 669,414 | 483,287 |
| 1/1/1993-12/31/1993 | 785,000 | 496,967 | 18.1% | 13.6% | 70,999 | 172,573 | 101,574 |
| 1/1/1994-12/31/1994 | 650,000 | 568,536 | 19.5% | 14.1% | 22,581 | 66,626 | 44,044 |
| 1/1/1995-12/31/1995 | 152,352 | 152,352 | 21.3% | 14.8% | 0 | 10,400 | 10,400 |
| 1/1/1996-12/31/1996 | 292,490 | 292,490 | 23.4% | 15.6% | 0 | 38,299 | 38,299 |
| 1/1/1997-12/31/1997 | 557,000 | 440,509 | 27.1% | 16.7% | 44,606 | 10,913 | (33,693) |
| 1/1/1998-12/31/1998 | 354,395 | 330,533 | 31.2% | 17.9% | 10,207 | 19,542 | 9,335 |
| 1/1/1999-12/31/1999 | 697,000 | 495,715 | 36.8% | 19.3% | 95,944 | 93,508 | (2,436) |
| 1/1/2000-12/31/2000 | 536,000 | 241,898 | 43.8% | 21.0% | 153,226 | 141,850 | (11,376) |
| 1/1/2001-12/31/2001 | 855,000 | 433,991 | 53.2% | 23.0% | 238,994 | 60,690 | (178,304) |
| 1/1/2002-12/31/2002 | 1,008,000 | 338,472 | 64.5% | 26.5% | 394,654 | 444,797 | 50,143 |
| 1/1/2003-12/31/2003 | 543,000 | 89,966 | 77.0% | 30.5% | 273,535 | 140,343 | (133,192) |
| 1/1/2004-12/31/2004 | 951,000 | 96,213 | 91.7% | 35.9% | 519,940 | 464,748 | (55,192) |
| Total | 10,725,268 | 6,883,801 | | | 2,010,813 | 2,333,702 | 322,890 |

Notes:

(1)  From Oliver Wyman's 12/31/2004 report
(2)  From Oliver Wyman's 12/31/2004 report
(3) - (4)  Based on the selected loss development factors from Oliver Wyman's 12/31/2004 report
(5)  = [ (1) - (2) ] x [ (3) - (4) ] / (3)
(6)  Provided by Sedgwick
(7)  = (6) - (5)

**Delphi Automotive - New Jersey**
**Workers Compensation - Loss & ALAE**
**Actual vs Expected Incurred Loss & ALAE Between 12/31/2004 and 2/28/2010**
**Statutory Limits**

| Accident Period | Selected Ultimate @ 12/31/2004 | Incurred @ 12/31/2004 | Percent IBNR @ 12/31/2004 | Percent IBNR @ 2/28/2010 | Expected Incurred | Actual Incurred | Difference in Incurred |
|---|---|---|---|---|---|---|---|
| | (1) | (2) | (3) | (4) | (5) | (6) | (7) |
| Prior | 3,344,030 | 3,219,157 | 3.1% | 1.4% | 68,701 | 851,841 | 783,141 |
| 1/1/1993-12/31/1993 | 785,000 | 738,024 | 6.2% | 3.1% | 23,610 | (51,986) | (75,596) |
| 1/1/1994-12/31/1994 | 650,000 | 586,329 | 7.8% | 3.4% | 36,034 | 48,834 | 12,800 |
| 1/1/1995-12/31/1995 | 152,352 | 152,352 | 9.4% | 3.8% | 0 | 19,003 | 19,003 |
| 1/1/1996-12/31/1996 | 292,490 | 292,490 | 11.3% | 4.4% | 0 | 106,312 | 106,312 |
| 1/1/1997-12/31/1997 | 557,000 | 459,266 | 13.6% | 5.1% | 60,972 | 8,391 | (52,581) |
| 1/1/1998-12/31/1998 | 354,395 | 330,533 | 16.4% | 6.0% | 15,147 | 37,050 | 21,903 |
| 1/1/1999-12/31/1999 | 697,000 | 517,072 | 19.6% | 7.6% | 110,560 | 146,170 | 35,610 |
| 1/1/2000-12/31/2000 | 536,000 | 393,666 | 24.0% | 9.1% | 88,322 | 30,322 | (58,000) |
| 1/1/2001-12/31/2001 | 855,000 | 669,041 | 30.3% | 10.9% | 118,867 | (46,160) | (165,027) |
| 1/1/2002-12/31/2002 | 1,008,000 | 727,302 | 38.8% | 13.2% | 185,347 | 290,114 | 104,768 |
| 1/1/2003-12/31/2003 | 543,000 | 213,728 | 49.6% | 15.9% | 223,357 | 34,961 | (188,396) |
| 1/1/2004-12/31/2004 | 951,000 | 383,090 | 71.8% | 19.1% | 417,007 | 194,644 | (222,363) |
| Total | 10,725,268 | 8,682,050 | | | 1,347,924 | 1,669,497 | 321,573 |

Notes:
(1)  From Oliver Wyman's 12/31/2004 report
(2)  From Oliver Wyman's 12/31/2004 report
(3) - (4)  Based on the selected loss development factors from Oliver Wyman's 12/31/2004 report
(5)  = [ (1) - (2) ] x [ (3) - (4) ] / (3)
(6)  Provided by Sedgwick
(7)  = (6) - (5)

**Delphi Automotive - New Jersey**
**Workers Compensation - Loss & ALAE**
**Selected Loss Development Factors**

| Age | Statutory Limits | |
| --- | --- | --- |
| | Cumulative Paid | Cumulative Incurred |
| | (1) | (2) |
| 50 | 2.138 | 1.447 |
| 62 | 1.801 | 1.340 |
| 74 | 1.637 | 1.270 |
| 86 | 1.516 | 1.219 |
| 98 | 1.430 | 1.177 |
| 110 | 1.366 | 1.146 |
| 122 | 1.324 | 1.126 |
| 134 | 1.288 | 1.107 |
| 146 | 1.262 | 1.088 |
| 158 | 1.238 | 1.075 |
| 170 | 1.216 | 1.067 |
| 182 | 1.194 | 1.060 |
| 194 | 1.176 | 1.055 |
| 206 | 1.157 | 1.051 |

_Note:_
(1) - (2)  From Appendix A, Pages 2 and 3

**Delphi Automotive - New Jersey**
**Workers Compensation - Loss & ALAE**
**Paid Development**
**As of 2/28/2010**
**Statutory Limits**

| Accident Period | 50 | 62 | 74 | 86 | 98 | 110 | 122 | 134 | 146 | 158 | 170 | 182 | 194 | 206 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1993 | | | | | 495,223 | 495,615 | 496,315 | 496,494 | 497,792 | 581,054 | 597,467 | 625,423 | 647,153 | 669,540 |
| 1994 | | | | 551,046 | 552,250 | 559,460 | 565,764 | 569,392 | 597,689 | 602,138 | 629,070 | 629,083 | 635,162 | |
| 1995 | | | 152,099 | 152,352 | 152,352 | 152,352 | 152,352 | 152,352 | 152,358 | 152,461 | 152,506 | 162,752 | | |
| 1996 | | 232,082 | 234,302 | 240,020 | 241,390 | 292,490 | 294,407 | 301,097 | 309,948 | 327,775 | 330,789 | | | |
| 1997 | 317,149 | 331,446 | 356,770 | 358,810 | 443,993 | 445,464 | 449,868 | 449,880 | 449,893 | 451,422 | | | | |
| 1998 | 272,340 | 306,804 | 320,133 | 330,533 | 330,533 | 330,775 | 330,821 | 348,026 | 350,074 | | | | | |
| 1999 | 305,066 | 473,453 | 495,715 | 523,267 | 542,131 | 542,983 | 566,755 | 589,223 | | | | | | |
| 2000 | 178,167 | 239,809 | 287,209 | 342,954 | 362,199 | 370,603 | 383,748 | | | | | | | |
| 2001 | 446,354 | 503,938 | 383,648 | 409,551 | 467,154 | 494,681 | | | | | | | | |
| 2002 | 584,458 | 706,786 | 747,364 | 781,611 | 783,269 | | | | | | | | | |
| 2003 | 204,578 | 216,594 | 227,478 | 230,309 | | | | | | | | | | |
| 2004 | 493,603 | 506,152 | 560,962 | | | | | | | | | | | |
| 2005 | 562,897 | 758,574 | | | | | | | | | | | | |
| 2006 | 358,439 | | | | | | | | | | | | | |

| Accident Period | 50-62 | 62-74 | 74-86 | 86-98 | 98-110 | 110-122 | 122-134 | 134-146 | 146-158 | 158-170 | 170-182 | 182-194 | 194-206 | 206-Ult |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1993 | | | | | 1.001 | 1.001 | 1.000 | 1.003 | 1.167 | 1.028 | 1.047 | 1.035 | 1.035 | |
| 1994 | | | | 1.002 | 1.013 | 1.011 | 1.006 | 1.050 | 1.007 | 1.045 | 1.000 | 1.010 | | |
| 1995 | | | 1.002 | 1.000 | 1.000 | 1.000 | 1.000 | 1.000 | 1.001 | 1.000 | 1.067 | | | |
| 1996 | | 1.010 | 1.024 | 1.006 | 1.212 | 1.007 | 1.023 | 1.029 | 1.058 | 1.009 | | | | |
| 1997 | 1.045 | 1.076 | 1.006 | 1.237 | 1.003 | 1.010 | 1.000 | 1.000 | 1.003 | | | | | |
| 1998 | 1.127 | 1.043 | 1.032 | 1.000 | 1.001 | 1.000 | 1.052 | 1.006 | | | | | | |
| 1999 | 1.552 | 1.047 | 1.056 | 1.036 | 1.002 | 1.044 | 1.040 | | | | | | | |
| 2000 | 1.346 | 1.198 | 1.194 | 1.056 | 1.023 | 1.035 | | | | | | | | |
| 2001 | 1.129 | 0.761 | 1.068 | 1.141 | 1.059 | | | | | | | | | |
| 2002 | 1.209 | 1.057 | 1.046 | 1.002 | | | | | | | | | | |
| 2003 | 1.059 | 1.050 | 1.012 | | | | | | | | | | | |
| 2004 | 1.025 | 1.108 | | | | | | | | | | | | |
| 2005 | 1.348 | | | | | | | | | | | | | |
| 2006 | | | | | | | | | | | | | | |

**Arithmetic Averages**

| | 50-62 | 62-74 | 74-86 | 86-98 | 98-110 | 110-122 | 122-134 | 134-146 | 146-158 | 158-170 | 170-182 | 182-194 | 194-206 | 206-Ult |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| All Periods | 1.204 | 1.039 | 1.049 | 1.053 | 1.035 | 1.014 | 1.017 | 1.015 | 1.047 | 1.021 | 1.038 | 1.022 | 1.035 | |
| 7 Period | 1.238 | 1.038 | 1.059 | 1.068 | 1.043 | 1.015 | 1.017 | | | | | | | |
| 5 Period | 1.154 | 1.035 | 1.075 | 1.047 | 1.018 | 1.019 | 1.023 | 1.017 | 1.047 | | | | | |
| 3 Period | 1.144 | 1.072 | 1.042 | 1.066 | 1.028 | 1.026 | 1.031 | 1.012 | 1.021 | 1.018 | 1.038 | | | |
| 2 Period | 1.187 | 1.079 | 1.029 | 1.071 | 1.041 | 1.040 | 1.046 | 1.003 | 1.030 | 1.005 | 1.034 | 1.022 | | |

**$ Weighted Averages**

| | 50-62 | 62-74 | 74-86 | 86-98 | 98-110 | 110-122 | 122-134 | 134-146 | 146-158 | 158-170 | 170-182 | 182-194 | 194-206 | 206-Ult |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| All Periods | 1.202 | 1.027 | 1.051 | 1.050 | 1.027 | 1.016 | 1.018 | 1.017 | 1.053 | 1.028 | 1.028 | 1.022 | 1.035 | |
| 7 Period | 1.227 | 1.023 | 1.056 | 1.062 | 1.035 | 1.018 | 1.018 | | | | | | | |
| 5 Period | 1.175 | 1.015 | 1.068 | 1.041 | 1.018 | 1.022 | 1.026 | 1.022 | 1.053 | | | | | |
| 3 Period | 1.175 | 1.074 | 1.046 | 1.051 | 1.027 | 1.030 | 1.029 | 1.010 | 1.021 | 1.028 | 1.028 | | | |
| 2 Period | 1.197 | 1.091 | 1.038 | 1.050 | 1.043 | 1.040 | 1.044 | 1.003 | 1.025 | 1.006 | 1.013 | 1.022 | | |

**Industry**

| | 50-62 | 62-74 | 74-86 | 86-98 | 98-110 | 110-122 | 122-134 | 134-146 | 146-158 | 158-170 | 170-182 | 182-194 | 194-206 | 206-Ult |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Age To Age | 1.088 | 1.058 | 1.041 | 1.031 | 1.022 | 1.018 | 1.016 | 1.014 | 1.012 | 1.010 | 1.009 | 1.009 | 1.008 | |
| Age to Ult | 1.503 | 1.381 | 1.305 | 1.254 | 1.216 | 1.189 | 1.168 | 1.150 | 1.134 | 1.121 | 1.110 | 1.099 | 1.090 | 1.082 |

**Prior**

| | 50-62 | 62-74 | 74-86 | 86-98 | 98-110 | 110-122 | 122-134 | 134-146 | 146-158 | 158-170 | 170-182 | 182-194 | 194-206 | 206-Ult |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Age To Age | 1.187 | 1.118 | 1.084 | 1.058 | 1.047 | 1.026 | 1.022 | 1.018 | 1.014 | 1.013 | 1.010 | 1.008 | 1.006 | |
| Age to Ult | 2.069 | 1.744 | 1.560 | 1.439 | 1.360 | 1.299 | 1.266 | 1.239 | 1.217 | 1.201 | 1.185 | 1.174 | 1.164 | 1.157 |

**Selected**

| | 50-62 | 62-74 | 74-86 | 86-98 | 98-110 | 110-122 | 122-134 | 134-146 | 146-158 | 158-170 | 170-182 | 182-194 | 194-206 | 206-Ult |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Age To Age | 1.187 | 1.100 | 1.080 | 1.060 | 1.047 | 1.032 | 1.028 | 1.020 | 1.020 | 1.018 | 1.018 | 1.016 | 1.016 | |
| Age to Ult | 2.138 | 1.801 | 1.637 | 1.516 | 1.430 | 1.366 | 1.324 | 1.288 | 1.262 | 1.238 | 1.216 | 1.194 | 1.176 | 1.157 |

**Delphi Automotive - New Jersey**
**Workers Compensation - Loss & ALAE**
**Incurred Development**
**As of 2/28/2010**
**Statutory Limits**

| Accident Period | 50 | 62 | 74 | 86 | 98 | 110 | 122 | 134 | 146 | 158 | 170 | 182 | 194 | 206 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1993 | | | | | 508,223 | 505,140 | 505,840 | 526,069 | 738,024 | 674,004 | 684,839 | 689,415 | 681,393 | 686,038 |
| 1994 | | | | 560,097 | 567,218 | 589,079 | 589,990 | 600,107 | 616,367 | 669,743 | 638,828 | 638,828 | 635,162 | |
| 1995 | | | 152,099 | 152,352 | 152,352 | 152,352 | 152,352 | 152,352 | 162,597 | 193,157 | 193,312 | 171,355 | | |
| 1996 | | 236,082 | 245,284 | 246,854 | 278,175 | 292,490 | 310,096 | 327,211 | 368,822 | 387,126 | 398,802 | | | |
| 1997 | 367,103 | 388,629 | 376,230 | 443,460 | 459,266 | 473,658 | 459,638 | 467,658 | 467,658 | 467,658 | | | | |
| 1998 | 309,106 | 323,413 | 374,076 | 330,533 | 330,533 | 330,533 | 339,842 | 349,646 | 367,583 | 367,583 | | | | |
| 1999 | 616,569 | 502,681 | 517,072 | 576,020 | 627,460 | 680,429 | 670,218 | 663,242 | | | | | | |
| 2000 | 697,945 | 391,551 | 433,206 | 402,387 | 421,186 | 428,543 | 423,988 | | | | | | | |
| 2001 | 669,547 | 680,292 | 466,658 | 590,377 | 622,881 | 622,881 | | | | | | | | |
| 2002 | 787,465 | 806,342 | 1,021,176 | 1,017,107 | 1,017,417 | | | | | | | | | |
| 2003 | 220,497 | 232,490 | 256,467 | 248,689 | | | | | | | | | | |
| 2004 | 673,466 | 653,029 | 577,734 | | | | | | | | | | | |
| 2005 | 1,198,674 | 1,259,550 | | | | | | | | | | | | |
| 2006 | 730,035 | | | | | | | | | | | | | |

| Accident Period | 50-62 | 62-74 | 74-86 | 86-98 | 98-110 | 110-122 | 122-134 | 134-146 | 146-158 | 158-170 | 170-182 | 182-194 | 194-206 | 206-Ult |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1993 | | | | | 0.994 | 1.001 | 1.040 | 1.403 | 0.913 | 1.016 | 1.007 | 0.988 | 1.007 | |
| 1994 | | | | 1.013 | 1.039 | 1.002 | 1.017 | 1.027 | 1.087 | 0.954 | 1.000 | 0.994 | | |
| 1995 | | | 1.002 | 1.000 | 1.000 | 1.000 | 1.000 | 1.067 | 1.188 | 1.001 | 0.886 | | | |
| 1996 | | 1.039 | 1.006 | 1.127 | 1.051 | 1.060 | 1.055 | 1.127 | 1.050 | 1.030 | | | | |
| 1997 | 1.059 | 0.968 | 1.179 | 1.036 | 1.031 | 0.970 | 1.017 | 1.000 | 1.000 | | | | | |
| 1998 | 1.046 | 1.157 | 0.884 | 1.000 | 1.000 | 1.028 | 1.029 | 1.051 | 1.000 | | | | | |
| 1999 | 0.815 | 1.029 | 1.114 | 1.089 | 1.084 | 0.985 | 0.990 | | | | | | | |
| 2000 | 0.561 | 1.106 | 0.929 | 1.047 | 1.017 | 0.989 | | | | | | | | |
| 2001 | 1.016 | 0.686 | 1.265 | 1.055 | 1.000 | | | | | | | | | |
| 2002 | 1.024 | 1.266 | 0.996 | 1.000 | | | | | | | | | | |
| 2003 | 1.054 | 1.103 | 0.970 | | | | | | | | | | | |
| 2004 | 0.970 | 0.885 | | | | | | | | | | | | |
| 2005 | 1.051 | | | | | | | | | | | | | |
| 2006 | | | | | | | | | | | | | | |

**Arithmetic Averages**

| | 50-62 | 62-74 | 74-86 | 86-98 | 98-110 | 110-122 | 122-134 | 134-146 | 146-158 | 158-170 | 170-182 | 182-194 | 194-206 | 206-Ult |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| All Periods | 0.955 | 1.027 | 1.038 | 1.041 | 1.027 | 1.005 | 1.024 | 1.104 | 1.047 | 1.000 | 0.964 | 0.991 | 1.007 | |
| 7 Period | 0.927 | 1.033 | 1.048 | 1.051 | 1.030 | 1.005 | 1.024 | | | | | | | |
| 5 Period | 1.023 | 1.009 | 1.055 | 1.038 | 1.032 | 1.007 | 1.023 | 1.044 | 1.047 | | | | | |
| 3 Period | 1.025 | 1.085 | 1.077 | 1.034 | 1.034 | 1.001 | 1.019 | 1.042 | 1.079 | 0.995 | 0.964 | | | |
| 2 Period | 1.010 | 0.994 | 0.983 | 1.028 | 1.009 | 0.987 | 1.020 | 1.000 | 1.025 | 1.015 | 0.943 | 0.991 | | |

**$ Weighted Averages**

| | 50-62 | 62-74 | 74-86 | 86-98 | 98-110 | 110-122 | 122-134 | 134-146 | 146-158 | 158-170 | 170-182 | 182-194 | 194-206 | 206-Ult |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| All Periods | 0.945 | 1.013 | 1.043 | 1.036 | 1.030 | 1.000 | 1.022 | 1.115 | 1.016 | 0.996 | 0.989 | 0.991 | 1.007 | |
| 7 Period | 0.930 | 1.016 | 1.048 | 1.042 | 1.034 | 1.000 | 1.022 | | | | | | | |
| 5 Period | 1.023 | 0.997 | 1.052 | 1.035 | 1.034 | 0.999 | 1.019 | 1.036 | 1.016 | | | | | |
| 3 Period | 1.025 | 1.097 | 1.064 | 1.026 | 1.036 | 0.997 | 1.013 | 1.036 | 1.049 | 0.985 | 0.989 | | | |
| 2 Period | 1.022 | 0.942 | 0.991 | 1.020 | 1.007 | 0.987 | 1.011 | 1.000 | 1.022 | 1.020 | 0.974 | 0.991 | | |

**Industry**

| | 50-62 | 62-74 | 74-86 | 86-98 | 98-110 | 110-122 | 122-134 | 134-146 | 146-158 | 158-170 | 170-182 | 182-194 | 194-206 | 206-Ult |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Age To Age | 1.033 | 1.022 | 1.014 | 1.012 | 1.010 | 1.010 | 1.009 | 1.008 | 1.007 | 1.007 | 1.006 | 1.005 | 1.005 | |
| Age to Ult | 1.216 | 1.177 | 1.152 | 1.136 | 1.122 | 1.111 | 1.100 | 1.091 | 1.082 | 1.075 | 1.068 | 1.062 | 1.056 | 1.051 |

**Prior**

| | 50-62 | 62-74 | 74-86 | 86-98 | 98-110 | 110-122 | 122-134 | 134-146 | 146-158 | 158-170 | 170-182 | 182-194 | 194-206 | 206-Ult |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Age To Age | 1.085 | 1.055 | 1.039 | 1.033 | 1.026 | 1.020 | 1.017 | 1.017 | 1.010 | 1.008 | 1.006 | 1.005 | 1.004 | |
| Age to Ult | 1.414 | 1.304 | 1.236 | 1.190 | 1.152 | 1.123 | 1.100 | 1.082 | 1.064 | 1.054 | 1.046 | 1.040 | 1.035 | 1.032 |

**Selected**

| | 50-62 | 62-74 | 74-86 | 86-98 | 98-110 | 110-122 | 122-134 | 134-146 | 146-158 | 158-170 | 170-182 | 182-194 | 194-206 | 206-Ult |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Age To Age | 1.080 | 1.055 | 1.042 | 1.036 | 1.027 | 1.018 | 1.017 | 1.017 | 1.012 | 1.008 | 1.006 | 1.005 | 1.004 | |
| Age to Ult | 1.447 | 1.340 | 1.270 | 1.219 | 1.177 | 1.146 | 1.126 | 1.107 | 1.088 | 1.075 | 1.067 | 1.060 | 1.055 | 1.051 |

**Delphi Automotive - New Jersey**
**Workers Compensation - Loss & ALAE**
**Reported Counts - Excluding Closed Without Payment**
**As of 2/28/2010**

| Accident Period | 50 | 62 | 74 | 86 | 98 | 110 | 122 | 134 | 146 | 158 | 170 | 182 | 194 | 206 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1993 | | | | | 60 | 60 | 60 | 60 | 61 | 63 | 63 | 64 | 64 | 64 |
| 1994 | | | | 61 | 61 | 62 | 62 | 62 | 63 | 64 | 65 | 65 | 65 | |
| 1995 | | | 63 | 63 | 63 | 63 | 63 | 63 | 64 | 67 | 67 | 67 | | |
| 1996 | | 58 | 58 | 59 | 59 | 59 | 59 | 59 | 61 | 61 | 61 | | | |
| 1997 | 62 | 62 | 62 | 62 | 62 | 62 | 62 | 63 | 63 | 63 | | | | |
| 1998 | 54 | 54 | 55 | 56 | 56 | 56 | 57 | 57 | 57 | | | | | |
| 1999 | 51 | 52 | 52 | 53 | 60 | 66 | 67 | 68 | | | | | | |
| 2000 | 56 | 58 | 60 | 61 | 62 | 62 | 62 | | | | | | | |
| 2001 | 47 | 47 | 48 | 52 | 53 | 53 | | | | | | | | |
| 2002 | 56 | 57 | 59 | 59 | 59 | | | | | | | | | |
| 2003 | 43 | 43 | 45 | 45 | | | | | | | | | | |
| 2004 | 55 | 55 | 55 | | | | | | | | | | | |
| 2005 | 83 | 84 | | | | | | | | | | | | |
| 2006 | 100 | | | | | | | | | | | | | |

| Accident Period | 50-62 | 62-74 | 74-86 | 86-98 | 98-110 | 110-122 | 122-134 | 134-146 | 146-158 | 158-170 | 170-182 | 182-194 | 194-206 | 206-Ult |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1993 | | | | | 1.000 | 1.000 | 1.000 | 1.017 | 1.033 | 1.000 | 1.016 | 1.000 | 1.000 | |
| 1994 | | | | 1.000 | 1.016 | 1.000 | 1.000 | 1.016 | 1.016 | 1.016 | 1.000 | 1.000 | | |
| 1995 | | | 1.000 | 1.000 | 1.000 | 1.000 | 1.000 | 1.016 | 1.047 | 1.000 | 1.000 | | | |
| 1996 | | 1.000 | 1.017 | 1.000 | 1.000 | 1.000 | 1.000 | 1.034 | 1.000 | 1.000 | | | | |
| 1997 | 1.000 | 1.000 | 1.000 | 1.000 | 1.000 | 1.000 | 1.016 | 1.000 | 1.000 | | | | | |
| 1998 | 1.000 | 1.019 | 1.018 | 1.000 | 1.000 | 1.018 | 1.000 | 1.000 | | | | | | |
| 1999 | 1.020 | 1.000 | 1.019 | 1.132 | 1.100 | 1.015 | 1.015 | | | | | | | |
| 2000 | 1.036 | 1.034 | 1.017 | 1.016 | 1.000 | 1.000 | | | | | | | | |
| 2001 | 1.000 | 1.021 | 1.083 | 1.019 | 1.000 | | | | | | | | | |
| 2002 | 1.018 | 1.035 | 1.000 | 1.000 | | | | | | | | | | |
| 2003 | 1.000 | 1.047 | 1.000 | | | | | | | | | | | |
| 2004 | 1.000 | 1.000 | | | | | | | | | | | | |
| 2005 | 1.012 | | | | | | | | | | | | | |
| 2006 | | | | | | | | | | | | | | |

**Arithmetic Averages**

| | 50-62 | 62-74 | 74-86 | 86-98 | 98-110 | 110-122 | 122-134 | 134-146 | 146-158 | 158-170 | 170-182 | 182-194 | 194-206 | 206-Ult |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| All Periods | 1.009 | 1.017 | 1.017 | 1.019 | 1.013 | 1.004 | 1.004 | 1.014 | 1.019 | 1.004 | 1.005 | 1.000 | 1.000 | |
| 7 Period | 1.012 | 1.022 | 1.020 | 1.024 | 1.014 | 1.005 | 1.004 | | | | | | | |
| 5 Period | 1.006 | 1.027 | 1.024 | 1.034 | 1.020 | 1.007 | 1.006 | 1.013 | 1.019 | | | | | |
| 3 Period | 1.004 | 1.027 | 1.028 | 1.012 | 1.033 | 1.011 | 1.010 | 1.011 | 1.016 | 1.005 | 1.005 | | | |
| 2 Period | 1.006 | 1.023 | 1.000 | 1.010 | 1.000 | 1.008 | 1.007 | 1.000 | 1.000 | 1.000 | 1.000 | 1.000 | | |

**Weighted Averages**

| | 50-62 | 62-74 | 74-86 | 86-98 | 98-110 | 110-122 | 122-134 | 134-146 | 146-158 | 158-170 | 170-182 | 182-194 | 194-206 | 206-Ult |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| All Periods | 1.010 | 1.016 | 1.016 | 1.017 | 1.013 | 1.004 | 1.005 | 1.014 | 1.019 | 1.004 | 1.005 | 1.000 | 1.000 | |
| 7 Period | 1.013 | 1.022 | 1.018 | 1.022 | 1.014 | 1.005 | 1.005 | | | | | | | |
| 5 Period | 1.007 | 1.027 | 1.023 | 1.032 | 1.020 | 1.007 | 1.006 | 1.013 | 1.019 | | | | | |
| 3 Period | 1.006 | 1.026 | 1.026 | 1.012 | 1.034 | 1.011 | 1.011 | 1.011 | 1.016 | 1.005 | 1.005 | | | |
| 2 Period | 1.007 | 1.020 | 1.000 | 1.009 | 1.000 | 1.008 | 1.008 | 1.000 | 1.000 | 1.000 | 1.000 | 1.000 | | |

**Selected**

| | 50-62 | 62-74 | 74-86 | 86-98 | 98-110 | 110-122 | 122-134 | 134-146 | 146-158 | 158-170 | 170-182 | 182-194 | 194-206 | 206-Ult |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Age To Age | 1.012 | 1.010 | 1.008 | 1.006 | 1.004 | 1.002 | 1.001 | 1.000 | 1.000 | 1.000 | 1.000 | 1.000 | 1.000 | |
| Age to Ult | 1.044 | 1.031 | 1.021 | 1.013 | 1.007 | 1.003 | 1.001 | 1.000 | 1.000 | 1.000 | 1.000 | 1.000 | 1.000 | 1.000 |

Appendix B

**Delphi Automotive - New Jersey**
**Workers Compensation - Loss & ALAE**
**Estimated Discounting Factors**
**Statutory Limits**
**As of 2/28/2010**

| Accident Period | Maturity in Months @ 2/28/2010 | Discount Factor @ 4.1% | Percentage of ultimate loss to be paid in the following period (months): | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | 0 - 12 | 12 - 24 | 24 - 36 | 36 - 48 | 48 - 60 | 60 - 72 | 72 - 84 | 84 - 96 | 96 - 108 | 108 - 120 | 120 + |
| | | (1) | (2) | (3) | (4) | (5) | (6) | (7) | (8) | (9) | (10) | (11) | (12) |
| Prior | | 0.891 | 0.4% | 0.3% | 0.3% | 0.2% | 0.1% | 0.1% | 0.1% | 0.0% | 0.0% | 0.0% | 0.0% |
| 1/1/1993-12/31/1993 | 206 | 0.767 | 1.3% | 1.2% | 1.2% | 1.1% | 1.0% | 0.9% | 0.9% | 0.8% | 0.7% | 0.6% | 3.8% |
| 1/1/1994-12/31/1994 | 194 | 0.759 | 1.4% | 1.3% | 1.2% | 1.2% | 1.1% | 1.0% | 0.9% | 0.9% | 0.8% | 0.7% | 4.4% |
| 1/1/1995-12/31/1995 | 182 | 0.750 | 1.3% | 1.4% | 1.3% | 1.2% | 1.2% | 1.1% | 1.0% | 0.9% | 0.9% | 0.8% | 5.1% |
| 1/1/1996-12/31/1996 | 170 | 0.743 | 1.5% | 1.3% | 1.4% | 1.3% | 1.2% | 1.2% | 1.1% | 1.0% | 0.9% | 0.9% | 5.9% |
| 1/1/1997-12/31/1997 | 158 | 0.735 | 1.5% | 1.5% | 1.3% | 1.4% | 1.3% | 1.2% | 1.2% | 1.1% | 1.0% | 0.9% | 6.7% |
| 1/1/1998-12/31/1998 | 146 | 0.728 | 1.6% | 1.5% | 1.5% | 1.3% | 1.4% | 1.3% | 1.2% | 1.2% | 1.1% | 1.0% | 7.6% |
| 1/1/1999-12/31/1999 | 134 | 0.720 | 1.6% | 1.6% | 1.5% | 1.5% | 1.3% | 1.4% | 1.3% | 1.2% | 1.2% | 1.1% | 8.5% |
| 1/1/2000-12/31/2000 | 122 | 0.719 | 2.1% | 1.6% | 1.6% | 1.5% | 1.5% | 1.3% | 1.4% | 1.3% | 1.2% | 1.2% | 9.5% |
| 1/1/2001-12/31/2001 | 110 | 0.719 | 2.3% | 2.1% | 1.6% | 1.6% | 1.5% | 1.5% | 1.3% | 1.4% | 1.3% | 1.2% | 10.5% |
| 1/1/2002-12/31/2002 | 98 | 0.726 | 3.3% | 2.3% | 2.1% | 1.6% | 1.6% | 1.5% | 1.5% | 1.3% | 1.4% | 1.3% | 11.5% |
| 1/1/2003-12/31/2003 | 86 | 0.734 | 4.0% | 3.3% | 2.3% | 2.1% | 1.6% | 1.6% | 1.5% | 1.5% | 1.3% | 1.4% | 12.5% |
| 1/1/2004-12/31/2004 | 74 | 0.744 | 4.9% | 4.0% | 3.3% | 2.3% | 2.1% | 1.6% | 1.6% | 1.5% | 1.5% | 1.3% | 13.6% |
| 1/1/2005-10/7/2005 | 63 | 0.752 | 5.5% | 4.8% | 3.9% | 3.2% | 2.3% | 2.1% | 1.6% | 1.6% | 1.5% | 1.5% | 14.4% |
| 10/8/2005-7/31/2006 | 54 | 0.765 | 7.7% | 5.3% | 4.6% | 3.7% | 3.0% | 2.3% | 1.9% | 1.6% | 1.5% | 1.5% | 15.2% |

Notes:
   (1)  Based on columns (2) through (12)
(2) - (12)  Based on Appendix A, Page 1

# OLIVER WYMAN

**Consulting Actuaries**
777 South Figueroa Street, Suite 2200
Los Angeles, CA 90017
1 213 346 5625

MARSH   MERCER   KROLL
GUY CARPENTER   OLIVER WYMAN

# Exhibit B

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

155 NORTH WACKER DRIVE

CHICAGO, ILLINOIS 60606-1720

TEL: (312) 407-0700

FAX: (312) 407-0411

www.skadden.com

DIRECT DIAL
312.407.0860
DIRECT FAX
312.407.8532
EMAIL ADDRESS
JOHN.LYONS@SKADDEN.COM

FIRM/AFFILIATE OFFICES

BOSTON
HOUSTON
LOS ANGELES
NEW YORK
PALO ALTO
SAN FRANCISCO
WASHINGTON, D.C.
WILMINGTON

BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SÃO PAULO
SHANGHAI
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

May 26, 2010

Via Electronic Mail
Kwame A. Asare
Office of Solvency Regulation
Department of Banking and Insurance
kwame.asare@dobi.state.nj.us

Via Electronic Mail
Eleanor Heck
Deputy Attorney General
Attorney General of New Jersey
Eleanor.Heck@dol.lps.state.nj.us

RE:    *In re DPH Holdings Corp.* – Payment of
Postpetition New Jersey Workers'
Compensation Obligations

Dear Mr. Asare:

I write on behalf of DPH Holdings Corp. and certain of its affiliated reorganized debtors (collectively, the "Reorganized Debtors"), successors to Delphi Corporation and its affiliated debtors and debtors-in-possession (the "Debtors"). Following the Debtors' emergence from chapter 11 on October 6, 2009, the Debtors discontinued payments on all prepetition workers' compensation claims. Since that time, obligations arising on account of prepetition workers' compensation claims have been satisfied in the ordinary course with proceeds from the $5,500,000.00 letter of credit securing New Jersey workers' compensation claims, which was fully drawn by CNA Surety Corporation, a third-party surety company, on or before March 17, 2010.

The Reorganized Debtors have retained the Oliver Wyman Group, an independent, third-party actuarial firm. On March 26, 2010, Oliver Wyman issued a report, a copy of which is attached to this letter,

Kwame A. Asare
Eleanor Heck
May 26, 2010
Page 2

estimating the Debtors' net unpaid obligations to New Jersey employees
on account of both prepetition and postpetition workers' compensation
claims in an amount that is substantially less than the remaining
amount of the collateral securing such claims. Accordingly, beginning
June 1, 2010, the Reorganized Debtors will discontinue direct payments
on account of postpetition workers' compensation claims. Both prepetition
and postpetition New Jersey workers' compensation claims will be paid
by CNA Surety Corporation directly from proceeds of the $5,500,000.00
letter of credit. In light of the significant over-collateralization, we would
like to discuss reduction of the CNA bond, and the consequent return of
collateral, to match anticipated exposure. We will be in touch with you
shortly to set up a conference call to discuss these matters.

If you have any questions or wish to discuss this matter
further, please contact me or my colleague Brandon M. Duncomb (phone:
312.407.0110; e-mail: brandon.duncomb@skadden.com).

Very truly yours,

/s/ John K. Lyons

Enclosure