KLESTADT & WINTERS, LLP
Tracy L. Klestadt
Patrick J. Orr
Joseph C. Corneau
292 Madison Avenue, 17th Floor
New York, New York 10018
(212) 972-3000

   - and -

WILDMAN, HARROLD, ALLEN & DIXON LLP
Jonathan W. Young
Mark L. Durbin
Mary E. Olson
225 West Wacker Drive, Suite 3000
Chicago, Illinois 60606
(312) 201-2000

Attorneys for Wiegel Tool Works, Inc.


UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DPH Holdings Corp., et al., | Chapter 11 |
| | Case No. 05-44481 (RDD) |
| Reorganized Debtors. | Jointly Administered |


**MOTION BY WIEGEL TOOL WORKS, INC.
SEEKING AN ORDER PROVIDING RELIEF FROM THE PLAN MODIFICATION
ORDER PURSUANT TO FED. R. CIV. P. 60 AND FED. R. BANKR. P. 9024**

TO:   THE HONORABLE ROBERT D. DRAIN,
      UNITED STATES BANKRUPTCY JUDGE:


Wiegel Tool Works, Inc. ("Wiegel"), by and through its undersigned counsel, as and for

its Motion for an Order Providing Relief from the Plan Modification Order Pursuant to Fed. R.

Civ. P. 60 and Fed. R. Bankr. P. 9024, respectfully sets forth as follows:

1

**PRELIMINARY STATEMENT**

1.      It is a well-settled principle of bankruptcy law that 11 U.S.C. §365 precludes a trustee from bringing a preference action against a creditor who receives pre-petition payments that are related to a contract that has been assumed.  In spite of this principle, the above-captioned debtors (collectively, the "Debtors") have continued to prosecute a preference action against Wiegel on the basis of pre-petition transfers made pursuant to contracts that, to the best of Wiegel's knowledge, have been assumed pursuant to the Debtors' confirmed plan of reorganization. While, at the time of the filing of the preference action, the Debtors arguably may not have made their final decision to assume the Wiegel contracts, the Debtors have continued to prosecute their preference claims long after the assumption of the underlying contracts. By filing the preference action under seal and repeatedly deferring the issuance of summons on these claims, the Debtors effectively prevented Wiegel from learning of the existence of this litigation, and from asserting corresponding rights of reimbursement and indemnification as part of Wiegel's cure claim.

2.      Consequently, Wiegel seeks an order of this court: granting relief, pursuant to Fed. R. Civ. P. 60 and Fed. R. Bankr. P. 9024, from the Order Approving Modifications Under 11 U.S.C. § 1127(b) to (i) First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-In-Possession, as Modified and (ii) Confirmation Order dated July 30, 2009 (the "Plan Modification Order") [Docket No. 18707] to the extent necessary to permit Wiegel to file an administrative expense claim against the Debtors equal to the amount of payments sought to be avoided by the Complaint (as defined below) that are related to contracts that were assumed by the Debtors.

3.    By granting this relief, the Court would permit Wiegel to exercise its rights and claims, as would have been the case had the existence of the preference action been timely disclosed.

**STATEMENT OF FACTS**

4.    On October 8, 2005, Delphi and certain of its subsidiaries each filed voluntary petitions for Chapter 11 relief. On October 14, 2005, three additional U.S. subsidiaries of Delphi also filed voluntary petitions for relief under Chapter 11 (the petition dates are collectively referred to herein as the "Petition Date").

5.    Prior to the commencement of the Debtors' cases, Wiegel provided certain goods and services to the Debtors pursuant to purchase orders placed by the Debtors with Wiegel (the "Wiegel Contracts").

A.    *Preservation of Estate Claims Procedure Motion and Order*

6.    On August 6, 2007, Debtors filed the Preservation of Estate Claims Procedures Motion [Docket No. 8905] seeking, among other things, the establishment of procedures for certain adversary proceedings, including those commenced by the Debtors under Bankruptcy Code §§ 541, 544, 545, 547, 548 or 553. Specifically, the Preservation of Estate Claims Procedures Motion requested the following relief: (i) pursuant to Fed. R. Civ. Pro. 4 (m), an extension of time beyond the initial 120-day period to serve certain adversary summonses and complaints; (ii) stay of the adversary proceedings until service of process was effected, and (iii) permission for the Debtors to file complaints under seal. *Id.*, ¶¶ 33-38.

7.    The relief sought in the Preservation of Estate Claims Procedures Motion was, according to the Debtors, meant to "preserve the status quo," and to protect "potentially valuable assets without disrupting the plan process or existing business relationships prematurely or prejudicing the rights of any defendants," as well as to "avoid having to force all potential

3

defendants to retain counsel to defend against adversary proceedings when, in fact, most of them likely will be resolved by a reorganization plan and never pursued." *Id.*, ¶¶ 33-34. The Debtors asserted that most of the adversary proceedings would be resolved by their reorganization plan (100 percent plan) and that they would not ultimately pursue the actions. *Id.*

8.    Wiegel was not provided notice of the Preservation of Estate Claims Procedures Motion. *See* Affidavit of Service [Docket No. 9039].

9.    On August 16, 2007, the Court entered the Preservation of Estate Claims Procedures Order, granting the relief requested in the Preservation of Estate Claims Procedures Motion by (i) allowing Debtors to file adversary proceeding complaints under seal; (ii) providing for the requested delay of the issuance of summonses for complaints unless and until the Debtors notified the Clerk of the Court of their intent to prosecute; (iii) staying each adversary action unless and until the Debtors effectuated service of process on the respective defendants; and (iv) extending the deadline by which the Debtors would have to serve process to March 31, 2008. *See* Preservation of Estate Claims Procedures Order, ¶¶ 7-10 [Docket No. 9105].

10.   On September 29, 2007, Debtors commenced an adversary proceeding against Wiegel by filing the Complaint under seal. The Complaint seeks to recover, pursuant to 11 U.S.C. §§ 547 and 550, alleged preferential transfers made to Wiegel in the aggregate amount of $3,590,074.91. (Adversary Proceeding 07-02605, Complaint attached hereto as Exhibit 1). Summons was not issued on the Complaint at that time.

11.   On January 25, 2008, the Court entered an order confirming the Debtors' first amended joint plan of reorganization (the "Plan"). *See* Findings of Fact, Conclusions of Law, and Order under 11 U.S.C. §§ 1129(a) and (b) and Fed. R. Bankr. P. 3020 confirming First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and

4

Debtors-in-Possession, as Modified, dated January 25, 2008 ("Confirmation Order") [Docket No. 12359].

B.   *Extensions of Avoidance Action Service Deadline Motions and Orders*

12.   On February 8, 2008, the Debtors filed an Extension of Avoidance Action Service Deadline Motion, seeking to modify Paragraph 8 of the Preservation of Estate Claims Procedures Order, and to extend for a second time, the deadline by which the Debtors must serve process to May 31, 2008.  *See* Extension of Avoidance Action Service Deadline Motion, ¶ 18 (the "Second Extension Order") [Docket No. 12922].  The asserted purpose for this extension was to "enable the Debtors to fulfill their fiduciary responsibility to preserve valuable estate assets in a manner that would not unnecessarily disrupt the emergence process or the Debtors' current business relationship with potential defendants that are necessary to the Debtors' ongoing operations," as well as to reduce the "administrative and economic burdens" of the adversary proceedings to the Debtors, the Court, and the Defendants."  *Id.*, ¶ 21.

13.   On April 10, 2008, the Debtors, on the heels of the Second Extension Order, filed a motion to extend the service deadline to thirty (30) days after the substantial consummation of the Debtors' plan.  *See* Postconfirmation Extension of Avoidance Action Service Deadline Motion (the "Third Extension Motion") [Docket No. 13361].  This request was apparently made in response to an announcement made just days prior that the plan would not close due to investors refusing to fund their investments under the confirmed plan.  Debtors provided the same justification for the requested relief as they did previously—to avoid disrupting the Debtors' emergence from bankruptcy and to maintain the current business relationship with potential defendants who are necessary to the Debtors ongoing operations.  *See* Third Extension

5

Motion, ¶ 22. An order granting the requested relief in the Third Extension Motion was granted on April 30, 2008. [Docket No. 13484].

14.     Over a year later, on October 22, 2009, the court entered an order granting a fourth extension extending the deadline for service of process, but this time it was until 180 days after substantial consummation of the plan. [Docket No. 18999].

15.     As a result of the foregoing orders, the Debtors were effectively granted a two and a half year period before which they were required to serve the adversary complaints that had been filed. The combination of the sealing of the Complaint and the deferral of service deprived Wiegel of any opportunity to learn that it had been sued in this Court.

C.      *Assumption and Assignment of Executory Contracts, Cure Claim Procedural Order and Ratification of Cure Amount*

16.     On June 16, 2009, the Debtors filed the First Amended Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-in-Possession (As Modified) (the "Modified Plan") [Docket No. 17030]. The Modified Plan provides that all executory contracts and unexpired leases as to which any Debtor is a party shall be deemed automatically assumed in accordance with the provisions and requirements of 11 U.S.C. §§ 365 and 1123 as of the effective date set forth in the Modified Plan, unless the contract was specifically rejected through the means enumerated in the Modified Plan. *See* Modified Plan, Article VIII. To Wiegel's knowledge, only one contract has been rejected due to the agreement expiring or terminating by its express terms.[1] *See* Affidavit of Service of Evan Gershbein re: Notice of Non-Assumption under the Modified Plan with Respect to Certain Expired or Terminated Contracts or Leases Previously Deemed to be Assumed and Assigned under Confirmed Plan of Reorganization, p. 102 [Docket No. 17728].

6

17. On July 30, 2009, the court entered an order that, in relevant part, ratified the cure claim amounts for executory contracts assumed pursuant to the Modified Plan as determined by the reconciliation process set forth and implemented by Cure Claim Procedures Orders (as defined below), and further set the Administrative Claims Bar Date as the deadline by which a counterparty must file and serve any claims for defaults accruing after June 1, 2009. *See* Order Approving Modification Under 11 U.S.C. § 1127(b) to (I) First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-in-Possession, as Modified and (II) Confirmation Order (the "Plan Modification Order") [Docket No. 18707], ¶¶ 28-29. The Cure Claim Procedures Orders include the following: **(a)** Order Approving (i) Disclosure Statement, (ii) Record Date, Voting Deadline, and Procedures for Temporary Allowance of Certain Claims, (iii) Hearing Date to Consider Confirmation of Plan, (iv) Procedures for Filing Objections to Plan, (v) Solicitation Procedures for Voting on Plan, (vi) Cure Claim Procedures, (vii) Procedures for Resolving Disputes Relating to Postpetition Interest, and (viii) Reclamation Claim Procedures dated December 10, 2007 (the "Solicitation Procedures Order") [Docket No. 11389]; **(b)** Findings of Fact, Conclusion of Law, and Order Under 11 U.S.C. §§ 1129(a) and (b) and Fed. R. Bankr. P. 3020 Confirming the First Amended Joint Plan of Reorganization of Delphi Corporation and certain Affiliates, Debtors and Debtors-in-Possession, as Modified dated January 25, 2008 (the "Confirmation Order") [Docket No. 12359]; and **(c)** Order (a)(i) Approving Modification to Debtors' First Amended Plan or Reorganization (as Modified) and Related Disclosures and Voting Procedures and (ii) Setting Final Hearing Date to Consider Modifications to Confirmed First Amended Plan of Reorganization and (b) Setting Administrative Expense Claims Bar Date and Alternative Transaction Hearing Date dated June

---

[1] To the extent that the Complaint seeks to avoid transfers related to the known rejected contract, Wiegel does not seek the relief set forth in this motion for any such transfers.

7

16, 2009 (the "Modification Procedures Order") [Docket No. 17032] (collectively, the "Cure Claim Procedures Orders"). It is important to note that every Cure Claim Procedures Order was entered after the filing of the sealed adversary complaints but well before any adversary was served. Thus, at the time the Debtors submitted their proposed cure amounts, they had already filed their lawsuit against Wiegel, but had not factored the amounts at issue in that lawsuit into their cure schedule.

18.  The Plan Modification Order further set the Administrative Claim Bar Date for claims accruing after June 1, 2009 for thirty (30) days after the effective date, so the Administrative Claim Bar Date was November 5, 2009. *See* Plan Modification Order, ¶ 47.

D.  *Debtor Finally Serves the Complaint on Wiegel*

19.  The Complaint that was filed in September 2007, well in advance of any notice of assumption of any of Wiegel's contracts, was served in April, 2010, approximately two and a half years after the expiration of the applicable statute of limitations.

20.  The Plan Modification Order thus rendered the assumption of the Wiegel Contracts effective, and ratified the Debtors' proposed cure schedule for those contracts, without making any provision for the substantial, additional amounts that would be owed to Wiegel if the Debtors prevailed in the adversary proceeding. And because the adversary proceeding had not yet been disclosed to Wiegel, and because service had not yet been effectuated, Wiegel had no meaningful opportunity to assert its rights and claims in connection with these events.

## ARGUMENT

**I.   WIEGEL SHOULD BE GRANTED RELIEF FROM THE PLAN MODIFICATION ORDER PURSUANT TO FED. R. CIV. P. 60(B) ON THE BASIS OF NEWLY DISCOVERED EVIDENCE**

21.  Fed. R. Civ. P. 60(b), as made applicable by Fed. R. Bankr. P. 9024, provides, in relevant part:

8

> On motion and just terms, the court may relieve a party . . . from a final judgment, order, or other proceeding for the following reasons:
>
>> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>> * * *
>> (6) any other reason that justifies relief.

22. A Fed. R. Civ. P. 60 motion should be granted if the movant can "demonstrate not only that the evidence existed at the time of the prior action and that it justifiably was not available to the movant . . . but also that the evidence would be admissible and of such import as probably to have changed the result . . . ." *In re Cross Media Marketing Corp.*, No. Civ. 4228, 2006 WL 2337177, at *9 (S.D.N.Y. 2006). Granting of a Fed. R. Civ. P. 60 motion is justified when it will "prevent a grave miscarriage of justice even though the newly discovered evidence supporting that order would have been available to the moving party at trial had that party exercised proper diligence," but only with respect to circumstances under which the evidence is "practically conclusive." *See id*.

23. The Complaint against Wiegel was filed on September 29, 2007, and was deposited in the mail for service on Wiegel approximately two and a half years later on April 1, 2010. The Complaint existed at the time any notice of assumption and assignment and cure claim amount was filed, and the Modified Plan was confirmed. The procedures adopted in these cases effectively precluded Wiegel from having any opportunity to identify the pending adversary proceeding, or to seek indemnification and reimbursement based on this lawsuit as part of the cure process accompanying the assumption of Wiegel's contracts with the Debtors.

24. Had Wiegel been apprised of the filing of the Complaint, Wiegel would have taken the appropriate steps to preserve these indemnification and reimbursement rights. Specifically, Wiegel would have objected to the Debtor's proposed cure schedule, and requested

9

that any cure obligation include the amounts at issue in the Debtors' pending adversary proceeding against Wiegel.

25. A preference action is precluded by a debtor's assumption of its agreement with the creditor. Consequently, the Debtor's assumption of the Wiegel Contracts should preclude them from establishing the portion of their *prima facie* case against Wiegel codified at 11 U.S.C. §547(b)(5). *See In re Kiwi International Air Lines, Inc.*, 344 F.3d 311, 313-319 (3d Cir. 2003) (holding an assumption of an executory contract pursuant to section 365 precludes a preference action against a creditor for prepetition payments), *see also In re Coudert Bros., LLP*, No. 09 Civ. 5047, 2009 WL 2868722, *9 (S.D.N.Y. 2009) (dismissing the avoidance action brought by the trustee pursuant to a lease assumed under section 365 on the basis that the assumption precluded the trustee avoidance power). It would defeat the purpose of 11 U.S.C. § 365—which is to make the counter party to the contract whole—if the court were to permit the counter party to the assumed contract to be sued on a preference claim. *See In re Superior Toy Manufacturing Co., Inc.*, 78 F.3d 1169, 1174 (7th Cir. 1996) ("Section 11 U.S.C. § 547 and 11 U.S.C. § 365 are mutually exclusive avenues for a trustee. A trustee may not prevail under both."); *see also In re Teligent Inc.*, 306 B.R. 752, 760 (Bankr. S.D.N.Y. 2004 (citing Superior Toy) (explaining that an assumption order bars avoidance of a preference).

26. To Wiegel's knowledge, the Debtors have assumed all but one of the Wiegel Contracts in connection with their sales of businesses and plan of reorganization. Payments made to Wiegel should not be recoverable as preferences because, had these payments not been made and received pre-petition, Wiegel would nevertheless have been entitled to such amounts as part of the approved cure amounts of the assumed contracts. *See In re Kiwi International Air Lines, Inc.*, 344 F.3d at 322 ("[T]he payments to all three of the defendants here are not

10

recoverable as preferences because, had the creditors not received the payments pre-petition, they would have received amounts reflecting those sums, in any event, when the Bankruptcy Court approved the cures of the assumed agreements.").

27.   It necessarily follows that, if the Debtors persist in prosecuting the claims at issue in their adversary proceeding, Wiegel should be permitted to assert its right under 11 U.S.C. § 365 to be made whole for all amounts owing under the assumed Wiegel Contracts, which amounts would of course include any sums disgorged to the Debtors in connection with the adversary proceeding. By definition, Wiegel could not have brought this issue to the Court's attention at the time the Modification Order was entered. And even were it otherwise, Wiegel would still merit relief under the "practically conclusive" test for Rule 60(b)(3) relief. Under this test, relief is preserved for those circumstances under which the newly discovered evidence is outcome determinative, and relief should be granted because the ends of justice require it. *See Ferrell v. Trailmobile, Inc.*, 223 F.2d 697, 699 (5th Cir. 1955) (opening a judgment on the basis of photocopies of money orders establishing payment of a debt discovered after the judgment).

28.   Simply stated, had it been provided timely notice of the Complaint, Wiegel would have been able to avail itself of the protections afforded to contract counterparties under 11 U.S.C. § 365, and one of two outcomes would have resulted. Either Wiegel would have been entitled to a cure amount that incorporates the claims sought under the Complaint for transfers associated with assumed contracts, or the Complaint would have been dismissed to the extent any claims are for transfers related to assumed contracts.

29.   This Court has the power and discretion under Rule 60(b) to remedy this situation, and to permit Wiegel to seek indemnification and reimbursement for any liability it incurs in

connection with the defense of the adversary proceeding. Wiegel respectfully submits that, on this record, Rule 60(b) relief would be proper, and in the interests of justice.

**WHEREFORE**, for all of the foregoing reasons, Wiegel respectfully requests that this Court enter an order: (i) granting Wiegel relief from the Plan Modification Order pursuant to Fed. R. Civ. P. 60(b) to allow Wiegel to assert an administrative expense claim in an amount equal to the transfers sought to be avoided by the Debtors under the Complaint that relate to assumed Wiegel contracts; and (ii) granting such other and further relief as may be just and fitting under the circumstances.

Dated: New York, New York
July 30, 2010

Respectfully submitted,

KLESTADT & WINTERS, LLP

By: /s/Patrick J. Orr
  Tracy L. Klestadt
  Patrick J. Orr
  Joseph C. Corneau
292 Madison Avenue, 17th Floor
New York, New York 10018
(212) 972-3000

  - and -

WILDMAN, HARROLD, ALLEN & DIXON LLP
Jonathan W. Young
Mark L. Durbin
Mary E. Olson
225 West Wacker Drive, Suite 3000
Chicago, Illinois 60606
(312) 201-2000

Attorneys for Wiegel Tool Works, Inc.