Neil A. Goteiner (NG 1644)
Dean M. Gloster, *Pro Hac Vice*
FARELLA BRAUN + MARTEL LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
Telephone:  (415) 954-4400
Facsimile:  (415) 954-4480

Hearing Date:  September 24, 2010 at 10:00 a.m.
Objection Deadline:  September 17, 2010

Attorneys for OFFICIAL COMMITTEE OF
ELIGIBLE SALARIED RETIREES


UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
-------------------------------------------------x
                                              :    Chapter 11
                                              :
    In re:                                    :    Case No. 05-44481 (RDD)
                                              :
DPH HOLDINGS CORP., et al.,                   :    (Jointly Administered)
                                              :
                                              :
                                              :
                                              :
             Reorganized Debtors.            :
-------------------------------------------------x
```

## FINAL REPORT OF THE OFFICIAL COMMITTEE OF RETIRED SALARIED EMPLOYEES PURSUANT TO 11 U.S.C. § 1114(d) AND REQUEST FOR INSTRUCTIONS

The Official Committee of Retired Salaried Employees appointed by this Court under 11

U.S.C. § 1114 (the "Salaried Retiree 1114 Committee") respectfully submits this final report as

required by paragraph 9 of the April 2, 2009 Salaried OPEB Settlement Order (Docket No.

16545) (the "Settlement Order") and requests further instructions from the Court to dissolve only

after modifications to a trust agreement are implemented to ensure funds set aside for Delphi

salaried retirees are properly spent by the Voluntary Employee Benefit Association ("DSRA

VEBA Trust") established under the Settlement Order.

Background

1.      On October 8 and 14, 2005, the Debtors filed voluntary petitions in this Court for

reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-

1330, as then amended (the "Bankruptcy Code").  The Debtors continue to operate their

businesses and manage their properties as debtors-in-possession under Bankruptcy Code sections

1107(a) and 1108.  This Court has ordered joint administration of these cases.

2.      On February 4, 2009, the Debtors filed a motion seeking the Court's approval to

cease contributions to retiree welfare benefit plans after March 31, 2009.  (Docket No. 14705

(the "OPEB Termination Motion").)

3.      At a hearing on February 24, 2009, the Court determined that Delphi could

terminate unvested retiree welfare benefits without following the procedures set forth in Section

1114 of the Bankruptcy Code.  (Docket No. 16380 (the "Provisional Salaried OPEB Termination

Order").)  The Court also directed the United States Trustee to appoint a Retirees' Committee

under the discretionary provisions of Section 1114, for purposes including meeting and

conferring with the debtors over any consensual modifications to the Provisional Salaried OPEB

Termination Order in return for waiving or settling the right to appeal from entry of that order.

(Id.)

4.      The United States Trustee appointed James R. Frost of East Amherst, NY; James

A. Hagenbach of Lockport, NY; James Sumpter of Noblesville, IN; James R. Conger of

Saginaw, MI; W. Ben Gifford of Kokomo, IN; Cathy Carroll of Wichita Falls, TX; and Robert

Todd Nicholson of Marion, IN, to serve as the Salaried Retiree 1114 Committee.  The

Committee members elected James Frost to serve as Committee chairman.  Subsequently James

Sumpter resigned as a member of the Committee and was not replaced.

5.      After discovery and an additional hearing on March 11, the Court finalized its

ruling authorizing Delphi to cease OPEB contributions as of April 1, 2009. (Docket No. 16448

(the "Final OPEB Termination Order").)

6.      The Salaried Retiree 1114 Committee reached agreement with the Debtors, and

on April 1, 2009 the Debtors filed an expedited motion seeking approval from this Court for the

compromise and settlement (the "Settlement") with the Salaried Retiree 1114 Committee.

(Docket No. 16535.)

7.      Among other things, under the Settlement, the Debtors agreed that the Debtors

would pay $8.75 million in overall subsidy payments to the Retirees' Committee for the benefit

of Delphi's salaried retirees, not subject to reduction because of enrollment levels, initially

designated as (i) a $1 million hardship fund, payable at the beginning of May 2009; (ii) $500,000

DSRA VEBA Trust set-up costs, payable at the beginning of May 2009 (which could also be

used for hardship fund or subsidizing retiree medical benefit costs); (iii) $1.25 million per month

for five months, payable monthly at the beginning of each of June through October 2009; and

(iv) one final payment of $1 million on November 1, 2009.  (Id.)

8.      This Court's approved the Settlement by the Settlement Order entered April 2,

2009 (Docket No.16545.)  The Settlement Order also authorized the Salaried Retiree 1114

Committee to form the DSRA VEBA Trust to offer a benefit eligible for the Health Coverage

Tax Credit under Internal Revenue Code Section 35(e)(1), 26 U.S.C. § 35(e)(1) (the "HCTC"),

which now pays 80% of the cost of health and prescription drug benefits for eligible retirees who

are at least 55 but not yet 65 and who are receiving benefits from the Pension Benefit Guaranty

Corporation ("PBGC") because of termination of their defined benefit pension plan and turnover

of the plan to the PBGC.  See 26 U.S.C. § 35(e)(1)(J)(iii).  (Id.)

9.    After entry of the Settlement Approval Order, the Debtors made the full amount of payments called for under the Settlement. Subsequently the defined benefit pension plan of the salaried employees of the Debtors was terminated July 31, 2009 and the PBGC took over as trustee of the terminated defined benefit pension plan of the salaried retirees August 4, 2009, triggering eligibility for the HCTC.

10.    The Salaried Retirees 1114 Committee formed the DSRA VEBA Trust and together with the original DSRA VEBA Trust trustees, created a trust agreement to govern the DSRA VEBA Trust. A board of trustees for the DSRA VEBA Trust was appointed, and with the assistance of an outside insurance broker, the DSRA VEBA Trust obtained competitive quotes from various insurers and rolled out a benefit for eligible salaried retirees and their dependants, intended to be particularly attractive for those eligible for HCTC subsidies. Over 4700 retirees and dependants have already enrolled in the benefits offered, as detailed on Exhibit A. A hardship process was established that has provided further assistance to salaried retirees with extraordinary needs out of the funds provided by the Debtors. The funds provided by the Debtors were paid over to the DSRA VEBA Trust.

11.    Concurrent with the termination of the salaried employees defined pension plan, Delphi also terminated the hourly rate employees defined benefit pension plan and the PBGC also took over as trustee of that plan, again triggering eligibility for the HCTC.

12.    The DSRA VEBA Trust trustees board voted to expand eligibility, contingent on this Court's approval, to ensure that the hourly Delphi retirees would be eligible for HCTC subsidies available under the DSRA VEBA Trust benefit plans. The Court subsequently enter an order authorizing the VEBA to provide benefits for hourly retirees and their dependants, intended to be eligible for the HCTC subsidies. (December 18, 2009 Docket 19407.) Thereafter,

4

numerous hourly employees elected the more heavily HCTC-subsidized benefit from the DSRA

VEBA Trust over what they might have otherwise been eligible for under agreements with

General Motors.

Final Accounting

13.    The Settlement Order requires the Salaried Retiree 1114 Committee to provide

the Court a final accounting regarding the funds from Debtors and their use.

14.    The information for this final accounting has been received by the Salaried

Retiree 1114 Committee from the DSRA VEBA Trust, and has not been independently verified

by the Salaried Retiree 1114 Committee. The DSRA VEBA Trust sponsors health, prescription

drug, and vision care benefits for Delphi retirees, but that benefit program is essentially self-

funding, as it is paid for out of premiums paid by enrollees and subsidized by the HCTC.

15.    A total of $8,750,000 was received from the Debtors and turned over to the

DSRA VEBA Trust. Initially, $1,000,000 of those funds were earmarked for a hardship fund

and $500,000 for administrative costs. As set forth in more detail on attached Exhibit B.1

("2009 Income and Expenses"), almost all of those funds remained in the DSRA VEBA Trust at

the end of 2009. In 2009 (when it became operational) the DSRA VEBA Trust spent $250,975

in expenses. The largest category of expenses was $133,489 for insurance subsidy and hardship

program payments for Delphi salaried retirees. The next largest expense was for $59,290 in

legal fees and costs for the law firm of Stahl, Cowen, Crowley, Addis LLC.

16.    As set forth in more detail on attached Exhibit B.2, received from the DSRA

VEBA Trust, the DSRA VEBA Trust paid an additional $132,703 in hardship payments and

subsidy payments for salaried retirees in the first quarter of 2010, and had $39,842 in other

expenses.

5

<u>Remaining Concerns</u>

17.     The 1114 Salaried Retiree Committee is grateful for the opportunity to serve the

salaried retirees in this case and proud to have accomplished the creation and rollout of an 80%

federal tax credit-subsidized comprehensive health, prescription drug, vision care and dental

benefit for eligible Delphi retirees. The 1114 Salaried Retiree Committee is also pleased that the

DRSA VEBA Benefit Trust was able to sponsor a benefit for retirees aged 65 and older and was

also able to open its HCTC-subsidized benefit program to hourly Delphi retirees who

unexpectedly had their pensions turned over to the PBGC, and that it has implemented a hardship

program for salaried retirees facing special hardship.

18.     Nevertheless, the 1114 Salaried Retiree Committee has some remaining concerns

regarding protections that should be put in place to ensure that the DRSA VEBA Trust will

continue to provide benefits for retirees and be managed appropriately in light of fiduciary

duties. Specifically, 6 members of the original trustees of the DSRA VEBA Trust resigned, and

when the 1114 Salaried Retiree Committee appointed replacement trustees, as provided in the

trust agreement, those new trustees were removed by the remaining DSRA VEBA Trust trustees

(and those trustees then themselves appointed successors, not in accordance with the trust

agreement.)

19.     The Trust Agreement for the DSRA VEBA Trust, attached as Exhibit C, provides

in Article XI, Section 3 that "Succession planning and election of new VEBA Committee

members will be the responsibility of the 1114 committee until they have been dismissed by the

court and thereafter becomes the responsibility of the DSRA Board through member voting."

20.     The existing Trustees of the VEBA have not followed this provision, and the

current chair has stated that as soon as the 1114 Salaried Retiree Committee is discharged, he

intends to amend the VEBA Trust agreement to prevent the DSRA Board from selecting

successor trustees, which creates the risk of turning the existing trustees into a permanent, self-

selected group with power over the remaining funds (and the much larger benefit program.) In

light of that risk, the 1114 Salaried Retiree Committee has requested that the DSRA VEBA Trust

agree (1) to cap any future compensation of trustees; (2) to provide for clear succession in the

trust agreement with clarification of who is currently serving as trustees, and (3) to provide that

those limitations cannot simply be amended in the future by the then-trustees to eliminate these

protections.  The 1114 Salaried Retiree Committee respectfully requests that this Court delay

discharge of the 1114 Salaried Retiree Committee for a short period to permit those

modifications to be negotiated and implemented for the protection of retirees in the future.

Dated:  San Francisco, California
       August 20, 2010

                     FARELLA BRAUN & MARTEL LLP

                     By:  */s/ Neil A. Goteiner*
                          Neil A. Goteiner
                          Dean M. Gloster

                     235 Montgomery Street, 17th Floor
                     San Francisco, California  94104
                     (415) 954-4400

                     Attorneys for OFFICIAL COMMITTEE OF
                     ELIGIBLE SALARIED RETIREES