IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                        :

      In re                           :       Chapter 11

                                          :

DPH HOLDINGS CORP., et al.,      :       Case No. 05-44481 (RDD)

                                          :

           Reorganized Debtors.      :       (Jointly Administered)

                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## AFFIDAVIT OF SERVICE

      I, Darlene Calderon, being duly sworn according to law, depose and say that I am employed by Kurtzman Carson Consultants LLC, the Court appointed claims and noticing agent for the Reorganized Debtors in the above-captioned cases.

      On August 20, 2010, I caused to be served the documents listed below (i) upon the parties listed on Exhibit A hereto via electronic notification, and (ii) upon the party listed on Exhibit B hereto via postage pre-paid U.S. mail:

1) Reorganized Debtors' Response to the Supplemental Brief of Illinois Tool Works, Inc. and ITW Food Equipment Group LLC in Support of Claim Nos. 11983, 11985, 11988, and 11989 (Docket No. 20520) [a copy of which is attached hereto as Exhibit C]

2) Reorganized Debtors' Response to Letter of Philip J. Carson (Docket No. 20521) [a copy of which is attached hereto as Exhibit D]

3) Reorganized Debtors' Objection to Motion for Allowance and Payment of Excellus Health Plans, Inc. and Its Affiliates to Permit Late Filed Claim Pursuant to Federal Rule of Bankruptcy Procedure 9006 ("Objection to Excellus Health Plans, Inc.'s Motion to File Late Claim") (Docket No. 20524) [a copy of which is attached hereto as Exhibit E]

4) Reorganized Debtors' Objection to Motion of the VEBA Committee for the Delphi Salaried Retirees Association Benefit Trust Pursuant to 11 U.S.C. § 105 and the Salaried OPEB Settlement Order to (I) Compel the Official Committee of Eligible Salaried Retirees to File Its Final Report with the Court Pursuant to the Terms of the Salaried OPEB Settlement Order; and, (II) to Direct the Office of the United States Trustee to Disband the Official Committee of Eligible Salaried Retirees ("Reorganized Debtors' Objection to VEBA Committee Motion") (Docket No. 20525) [a copy of which is attached hereto as Exhibit F]

On August 20, 2010, I caused to be served the document listed below upon the party listed on Exhibit G hereto via overnight mail:

5)  Reorganized Debtors' Response to the Supplemental Brief of Illinois Tool Works, Inc. and ITW Food Equipment Group LLC in Support of Claim Nos. 11983, 11985, 11988, and 11989 (Docket No. 20520) [a copy of which is attached hereto as Exhibit C]

On August 20, 2010, I caused to be served the document listed below upon the parties listed on Exhibit H hereto via overnight mail:

6)  Reorganized Debtors' Response to Letter of Philip J. Carson (Docket No. 20521) [a copy of which is attached hereto as Exhibit D]

On August 20, 2010, I caused to be served the document listed below upon the parties listed on Exhibit I hereto via overnight mail:

7)  Reorganized Debtors' Objection to Motion for Allowance and Payment of Excellus Health Plans, Inc. and Its Affiliates to Permit Late Filed Claim Pursuant to Federal Rule of Bankruptcy Procedure 9006 ("Objection to Excellus Health Plans, Inc.'s Motion to File Late Claim") (Docket No. 20524) [a copy of which is attached hereto as Exhibit E]

On August 20, 2010, I caused to be served the document listed below upon the parties listed on Exhibit J hereto via overnight mail:

8)  Reorganized Debtors' Objection to Motion of the VEBA Committee for the Delphi Salaried Retirees Association Benefit Trust Pursuant to 11 U.S.C. § 105 and the Salaried OPEB Settlement Order to (I) Compel the Official Committee of Eligible Salaried Retirees to File Its Final Report with the Court Pursuant to the Terms of the Salaried OPEB Settlement Order; and, (II) to Direct the Office of the United States Trustee to Disband the Official Committee of Eligible Salaried Retirees ("Reorganized Debtors' Objection to VEBA Committee Motion") (Docket No. 20525) [a copy of which is attached hereto as Exhibit F]

Dated:  August 25, 2010

_____/s/ Darlene Calderon_____
Darlene Calderon

State of California
County of Los Angeles

Subscribed and sworn to (or affirmed) before me on this 25th day of August, 2010, by Darlene Calderon, proved to me on the basis of satisfactory evidence to be the person who appeared before me.

Signature:  _/s/ Vanessa R. Quiñones_____

Commission Expires:_ 3/20/11_____

# EXHIBIT A

DPH Holdings Corp.
Post-Emergence Master Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | EMAIL | PARTY / FUNCTION |
|---------|---------|----------|----------|------|-------|-----|-------|-------|------------------|
| Barnes & Thornburg LLP | Deborah L. Thorne Kathleen L. Matsoukas | One N Wacker Drive | Suite 4400 | Chicago | IL | 60606 | 312-357-1313 | dthorne@btlaw.com kmatsoukas@btlaw.com | Counsel to Johnson Controls Battery Group, Inc.; Johnson Controls, Inc. (Power Solutions) |
| Delphi Automotive Systems LLP | Sean Corcoran Karen Craft David M. Sherbin | 5725 Delphi Drive | | Troy | MI | 48098 | 248-813-2000 | sean.p.corcoran@delphi.com karen.j.craft@delphi.com david.sherbin@delphi.com | Delphi Automotive Systems LLP |
| DPH Holdings Corp. | John Brooks | 5725 Delphi Drive | | Troy | MI | 48098 | 248-813-2143 | john.brooks@delphi.com | Reorganized Debtors |
| Honigman Miller Schwartz and Cohn LLP | Frank L. Gorman, Esq. Robert B. Weiss, Esq. | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226-3583 | 313-465-7000 | fgorman@honigman.com rweiss@honigman.com | Counsel to General Motors Corporation |
| Ruskin Moscou Faltischek PC | Jeffrey A. Wurst, Esq. | 1425 RXR Plaza | 15th Floor | Uniondale | NY | 11556 | 516-663-6535 | jwurst@rmfpc.com | |
| Skadden, Arps, Slate, Meagher & Flom LLP | Ron E. Meisler | 155 N Wacker Drive | Suite 2700 | Chicago | IL | 60606-1720 | 312-407-0700 | rmeisler@skadden.com | Counsel to the Reorganized Debtor |
| Weil, Gotshal & Manges LLP | Harvey R. Miller Robert J. Lemons | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8500 | harvey.miller@weil.com robert.lemons@weil.com | Counsel to General Motors Corporation |

In re. DPH Holdings Corp., et al.
Case No. 05-44481 (RDD)

Page 1 of 1

8/23/2010 5:51 PM
Post-Emergence Master Service List 100820.xlsx Email (7)

DPH Holdings Corp.
Post-Emergence 2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Adalberto Cañadas Castillo | | Avda Ramon de Carranza | 10-1° | Cadiz | | 11006 | Spain | 34 956 226 311 | adalberto@canadas.com | Representative to DASE |
| Adler Pollock & Sheehan PC | Joseph Avanzato | One Citizens Plz 8th Fl | | Providence | RI | 02903 | | 401-274-7200 | javanzato@apslaw.com | Attorneys for Fry's Metals Inc. and Specialty Coatings Systems Eft |
| Airgas, Inc. | David Boyle | 259 Radnor-Chester Road, Suite 100 | P.O. Box 6675 | Radnor | PA | 19087-8675 | | 610-902-6028 | david.boyle@airgas.com | Counsel to Airgas, Inc. |
| Akebono Brake Corporaton | Brandon J. Kessinger | 310 Ring Road | | Elizabethtown | KY | 42701 | | 270-234-5580 | bkessinger@akebono-usa.com | Representative for Akebono Corporation |
| Akin Gump Strauss Hauer & Feld, LLP | Christina M. Padien | 2029 Centure Park East | Suite 2400 | Los Angeles | CA | 90067 | | 310-229-1000 | cpadien@akingump.com | Counsel to Wamco, Inc. |
| Akin Gump Strauss Hauer & Feld, LLP | David M Dunn | 1333 New Hampshire Ave NW | | Washington | DC | 20036 | | 202-887-4000 | ddunn@akingump.com | Counsel to TAI Unsecured Creditors Liquidating Trust |
| Akin Gump Strauss Hauer & Feld, LLP | Ira S Dizengoff | One Bryant Park | | New York | NY | 10036 | | 212-872-1000 | idizengoff@akingump.com | Counsel to TAI Unsecured Creditors Liquidating Trust |
| Allen Matkins Leck Gamble & Mallory LLP | Michael S. Greger | 1900 Main Street | Fifth Floor | Irvine | CA | 92614-7321 | | 949-553-1313 | mgreger@allenmatkins.com | Counsel to Kilroy Realty, L.P. |
| Alliance for Sustainable Energy LLC | National Renewable Energy Laboratory | Jim Martin Senior Attorney | 1617 Golden Blvd MS 1734 | Golden | CO | 80401 | | 303-384-7497 | jim.martin@nrel.gov | Counsel for National Renewable Energy Laboratory |
| Alston & Bird, LLP | Craig E. Freeman | 90 Park Avenue | | New York | NY | 10016 | | 212-210-9400 | craig.freeman@alston.com | Counsel to Cadence Innovation, LLC |
| Alston & Bird, LLP | Dennis J. Connolly; David A. Wender | 1201 West Peachtree Street | | Atlanta | GA | 30309 | | 404-881-7269 | dconnolly@alston.com dwender@alston.com | Counsel to Cadence Innovation, LLC, PD George Co, Furukawa Electric Companay, Ltd., and Furukawa Electric North America APD, Inc. |
| American Axle & Manufacturing, Inc. | Steven R. Keyes | One Dauch Drive, Mail Code 6E-2-42 | | Detroit | MI | 48243 | | 313-758-4868 | steven.keyes@aam.com | Representative for American Axle & Manufacturing, Inc. |
| Anglin, Flewelling, Rasmussen, Campbell & Trytten, LLP | Mark T. Flewelling | 199 South Los Robles Avenue | Suite 600 | Pasadena | CA | 91101-2459 | | 626-535-1900 | mtf@afrct.com | Counsel to Stanley Electric Sales of America, Inc. |
| Arent Fox PLLC | Robert M. Hirsh | 1675 Broadway | | New York | NY | 10019 | | 212-484-3900 | Hirsh.Robert@arentfox.com | Counsel to Pullman Bank and Trust Company |
| Arnall Golden Gregory LLP | Darryl S. Laddin | 171 17th Street NW | Suite 2100 | Atlanta | GA | 30363-1031 | | 404-873-8120 | dladdin@agg.com | Counsel to Daishinku (America) Corp. d/b/a KDS America ("Daishinku"), SBC Telecommunications, Inc. (SBC) |
| Arnold & Porter LLP | Joel M. Gross | 555 Twelfth Street, N.W. | | Washington | D.C. | 20004-1206 | | 202-942-5000 | joel_gross@aporter.com | Counsel to CSX Transportation, Inc. |
| ATS Automation Tooling Systems Inc. | Carl Galloway | 250 Royal Oak Road | | Cambridge | Ontario | N3H 4R6 | Canada | 519-653-4483 | cgalloway@atsautomation.com | Company |
| Balch & Bingham LLP | Eric T. Ray | PO Box 306 | | Birmingham | AL | 35201 | | 205-251-8100 | eray@balch.com | Attorney for Alabama Power Company |
| Barack, Ferrazzano, Kirschbaum & Nagelberg LLP | Kimberly J. Robinson | 200 W Madison St Ste 3900 | | Chicago | IL | 60606 | | 312-984-3100 | kim.robinson@bfkn.com | Counsel to Motion Industries, Inc., EIS, Inc. and Johnson Industries, Inc. |
| Barack, Ferrazzano, Kirschbaum & Nagelberg LLP | William J. Barrett | 200 W Madison St Ste 3900 | | Chicago | IL | 60606 | | 312-984-3100 | william.barrett@bfkn.com | Counsel to Motion Industries, Inc., EIS, Inc. and Johnson Industries, Inc. |
| Barnes & Thornburg LLP | Alan K. Mills | 11 S. Meridian Street | | Indianapolis | IN | 46204 | | 317-236-1313 | alan.mills@btlaw.com | Counsel to Mays Chemical Company |
| Barnes & Thornburg LLP | Damon R Leichty | 600 1st Source Bank Center | 100 North Michigan | South Bend | IN | 46601 | | 574-233-1171 | damon.leichty@btlaw.com | Counsel to Bank of America, N.A. |

In re. DPH Holdings Corp., et al.
Case No. 05-44481 (RDD)

Page 1 of 22

8/23/2010 5:50 PM
Email (395)

DPH Holdings Corp.
Post-Emergence 2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | EMAIL | PARTY / FUNCTION |
|---------|---------|----------|----------|------|-------|-----|---------|-------|-------|------------------|
| Barnes & Thornburg LLP | David M. Powlen | 1000 N West Street | Suite 1200 | Wilmington | DE | 19801 | | 302-888-4536 | david.powlen@btlaw.com | Counsel to Howard County, Indiana |
| Barnes & Thornburg LLP | Deborah L. Thorne | One North Wacker Drive | Suite 4400 | Chicago | IL | 60606 | | 312-357-1313 | deborah.thorne@btlaw.com | Counsel to Johnson Controls Battery Group, Inc.; Johnson Controls, Inc. (Power Solutions) |
| Barnes & Thornburg LLP | John T. Gregg | 171 Monroe Avenue NW | Suite 1000 | Grand Rapids | MI | 49503 | | 616-742-3930 | jgregg@btlaw.com | Counsel to Priority Health; Clarion Corporation of America; Continental AG and Affiliates |
| Barnes & Thornburg LLP | Kathleen L. Matsoukas | One North Wacker Drive | Suite 4400 | Chicago | IL | 60606 | | 312-357-1313 | kathleen.matsoukas@btlaw.com | Counsel to Johnson Controls Battery Group, Inc.; Johnson Controls, Inc. (Power Solutions); Howard County, Indiana |
| Barnes & Thornburg LLP | Mark R. Owens | 11 S. Meridian Street | | Indianapolis | IN | 46204 | | 317-236-1313 | mark.owens@btlaw.com | Counsel to Clarion Corporation of America |
| Barnes & Thornburg LLP | Michael K. McCrory | 11 S. Meridian Street | | Indianapolis | IN | 46204 | | 317-236-1313 | michael.mccrory@btlaw.com | Counsel to Gibbs Die Casting Corporation; Clarion Corporation of America |
| Barnes & Thornburg LLP | Patrick E. Mears | 171 Monroe Avenue NW | Suite 1000 | Grand Rapids | MI | 49503 | | 616-742-3936 | pmears@btlaw.com | Counsel to Armada Rubber Manufacturing Company, Bank of America Leasing & Leasing & Capital, LLC, & AutoCam Corporation |
| Barnes & Thornburg LLP | Sarah Quinn Kuhny | 600 1st Source Bank Center | 100 North Michigan | South Bend | IN | 46601 | | 574-233-1171 | sarah.kuhny@btlaw.com | Counsel to Bank of America, N.A. |
| Barnes & Thornburg LLP | Wendy D. Brewer | 11 S. Meridian Street | | Indianapolis | IN | 46204 | | 317-236-1313 | wendy.brewer@btlaw.com | Counsel to Gibbs Die Casting Corporation |
| Bartlett Hackett Feinberg P.C. | Frank F. McGinn | 155 Federal Street | 9th Floor | Boston | MA | 02110 | | 617-422-0200 | ffm@bostonbusinesslaw.com | Counsel to Iron Mountain Information Management, Inc. |
| Beeman Law Office | Thomas M Beeman | 33 West 10th Street | Suite 200 | Anderson | IN | 46016 | | 765-640-1330 | tom@beemanlawoffice.com | Counsel to Madison County (Indiana) Treasurer |
| Bendinelli Law Office PC | Jerry Sumner | 11184 Huron Street | Suite 10 | Denver | CO | 80234 | | 303-940-9900 | js@colawfirm.com michelle@colawfirm.com | Counsel to Jose C Alfaro |
| Bernstein Litowitz Berger & Grossman | Hannah E. Greenwald | 1285 Avenue of the Americas | | New York | NY | 10019 | | 212-554-1411 | hannah@blbglaw.com | Counsel to Teachers Retirement System of Oklahoma; Public Employees's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Berry Moorman P.C. | James P. Murphy | 535 Griswold | Suite 1900 | Detroit | MI | 48226 | | 313-496-1200 | murph@berrymoorman.com | Counsel to Kamax L.P.; Optrex America, Inc.; GKN Sinter Metals, Inc. |
| Bialson, Bergen & Schwab | Kenneth T. Law, Esq. | 2600 El Camino Real | Suite 300 | Palo Alto | CA | 94306 | | 650-857-9500 | klaw@bbslaw.com | Counsel to UPS Supply Chain Solutions, Inc.. |

In re. DPH Holdings Corp., et al.
Case No. 05-44481 (RDD)

Page 2 of 22

8/23/2010 5:50 PM
Email (395)

DPH Holdings Corp.
Post-Emergence 2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Bialson, Bergen & Schwab | Lawrence M. Schwab, Esq. | 2600 El Camino Real | Suite 300 | Palo Alto | CA | 94306 | | 650-857-9500 | lschwab@bbslaw.com | Counsel to UPS Supply Chain Solutions, Inc.; Solectron Corporation; Solectron De Mexico SA de CV; Solectron Invotronics; Coherent, Inc.; Veritas Software Corporation |
| Bialson, Bergen & Schwab | Patrick M. Costello, Esq. | 2600 El Camino Real | Suite 300 | Palo Alto | CA | 94306 | | 650-857-9500 | pcostello@bbslaw.com | Solectron Corporation; Solectron de Mexico SA de CV; Solectron Invotronics and Coherent, Inc. |
| Bialson, Bergen & Schwab | Thomas M. Gaa | 2600 El Camino Real | Suite 300 | Palo Alto | CA | 94306 | | 650-857-9500 | tgaa@bbslaw.com | Counsel to  Veritas Software Corporation |
| Bingham McCutchen LLP | Kate K Simon | One State Street | | Hartford | CT | 06103 | | 860-240-2700 | kate.simon@bingham.com | Counsel to Sumitomo Corporation and Sumitomo Corp. of America |
| Bingham McHale LLP | Whitney L Mosby | 10 West Market Street | Suite 2700 | Indianapolis | IN | 46204 | | 317-635-8900 | wmosby@binghammchale.com | Counsel to Universal Tool & Engineering co., Inc. and M.G. Corporation |
| Blank Rome LLP | Marc E. Richards | The Chrylser Building | 405 Lexington Avenue | New York | NY | 10174 | | 212-885-5000 | mrichards@blankrome.com | Counsel to DENSO International America, Inc. |
| Bodman LLP | Ralph E. McDowell | 100 Renaissance Center | 34th Floor | Detroit | MI | 48243 | | 313-393-7592 | rmcdowell@bodmanllp.com | Counsel to Freudenberg-NOK; General Partnership; Freudenberg-NOK, Inc.; Flextech, Inc.; Vibracoustic de Mexico, S.A. de C.V.; Lear Corporation; American Axle & Manufacturing, Inc. |
| Bond, Schoeneck & King, PLLC | Camille W. Hill | One Lincoln Center | 18th Floor | Syracuse | NY | 13202 | | 315-218-8000 | chill@bsk.com | Counsel to Marquardt GmbH and Marquardt Switches, Inc.; Tessy Plastics Corp. |
| Bond, Schoeneck & King, PLLC | Charles J. Sullivan | One Lincoln Center | 18th Floor | Syracuse | NY | 13202 | | 315-218-8000 | csullivan@bsk.com | Counsel to Diemolding Corporation |
| Bond, Schoeneck & King, PLLC | Stephen A. Donato | One Lincoln Center | 18th Floor | Syracuse | NY | 13202 | | 315-218-8000 | sdonato@bsk.com | Counsel to Marquardt GmbH and Marquardt Switches, Inc.; Tessy Plastics Corp; Diemolding Corporation |
| Boult, Cummings, Conners & Berry, PLC | Austin L. McMullen | 1600 Division Street, Suite 700 | PO Box 34005 | Nashville | TN | 37203 | | 615-252-2307 | amcmullen@bccb.com | Counsel to Calsonic Kansei North America, Inc.; Calsonic Harrison Co., Ltd. |
| Boult, Cummings, Conners & Berry, PLC | Roger G. Jones | 1600 Division Street, Suite 700 | PO Box 34005 | Nashville | TN | 37203 | | 615-252-2307 | rjones@bccb.com | Counsel to Calsonic Kansei North America, Inc.; Calsonic Harrison Co., Ltd. |
| Brembo S.p.A. | Massimiliano Cini | Administration Department via Brembo 25 | 24035 Curno BG | Bergamo | | | Italy | 00039-035-605-529 | massimiliano_cini@brembo.it | Creditor |
| Brown & Connery, LLP | Donald K. Ludman | 6 North Broad Street | | Woodbury | NJ | 08096 | | 856-812-8900 | dludman@brownconnery.com | Counsel to SAP America, Inc. |
| Buchalter Nemer, A Profesional Corporation | Shawn M. Christianson | 333 Market Street | 25th Floor | San Francisco | CA | 94105-2126 | | 415-227-0900 | schristianson@buchalter.com | Counsel to Oracle USA, Inc.; Oracle Credit Corporation |
| Buchanan Ingersoll & Rooney PC | Mary Caloway | The Brandywine Building | 1000 West Street, Suite 1410 | Wilmington | DE | 19801 | | 302-552-4200 | mary.caloway@bipc.com | Counsel to Fiduciary Counselors |
| Buchanan Ingersoll & Rooney PC | Peter S. Russ | 620 Eighth Ave | 23rd Floor | New York | NY | 10018 | | 212-440-4400 | peter.russ@bipc.com | Counsel to ATEL Leasing Corp. |

In re. DPH Holdings Corp., et al.
Case No. 05-44481 (RDD)

Page 3 of 22

8/23/2010 5:50 PM
Email (395)

DPH Holdings Corp.
Post-Emergence 2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Buchanan Ingersoll & Rooney PC | William H. Schorling, Esq. | Two Liberty Place | 50 S. 16th St., Ste 3200 | Philadelphia | PA | 19102 | | 215-665-5326 | william.schorling@bipc.com | Counsel to Fiduciary Counselors |
| Butzel Long | Cynthia J. Haffey | 150 W. Jefferson | Suite 100 | Detroit | MI | 48226 | | 313-983-7434 | haffey@butzel.com | Counsel to Delphi Corporation |
| Butzel Long | Donald V. Orlandoni | 150 W. Jefferson | Suite 100 | Detroit | MI | 48226 | | 313-225-7063 | orlandoni@butzel.com | Counsel to Delphi Corporation |
| Cadwalader Wickersham & Taft LLP | Jeannine D'Amico | 1201 F St NW Ste 1100 | | Washington | DC | 20004 | | 202-862-2452 | jeannine.damico@cwt.com | Attorneys for the Audit Committee of Delphi Corporation |
| Cadwalader Wickersham & Taft LLP | John J. Rapisardi Esq Joseph Zujkowski Esq | One World Financial Center | | New York | NY | 10281 | | 212-504-6000 | john.rapisardi@cwt.com joseph.zujkowski@cwt.com | Counsel to the Auto Task Force of the U.S. Department of the Treasury |
| Cahill Gordon & Reindel LLP | Jonathan Greenberg | 80 Pine Street | | New York | NY | 10005 | | 212-701-3000 | jonathan.greenberg@BASF.COM | Counsel to Engelhard Corporation |
| Cahill Gordon & Reindel LLP | Kevin Burke | 80 Pine Street | | New York | NY | 10005 | | 212-701-3000 | kburke@cahill.com | Counsel to Engelhard Corporation |
| Calfee, Halter & Griswold LLC | Jean R. Robertson, Esq. | 1400 McDonald Investment Ctr | 800 Superior Ave | Cleveland | OH | 44114 | | 216-622-8404 | jrobertson@calfee.com | Counsel to Brush Engineered materials |
| Calinoff & Katz, LLP | Dorothy H. Marinis-Riggio Robert Calinoff | 140 East 45th Street | 17th Floor | New York | NY | 10017 | | 212-826-8800 | dhriggio@gmail.com rcalinoff@candklaw.com | Counsel to Computer Patent Annuities Limited Partnership, Hydro Aluminum North America, Inc., Hydro Aluminum Adrian, Inc., Hydro Aluminum Precision Tubing NA, LLC, Hydro Alumunim Ellay Enfield Limited, Hydro Aluminum Rockledge, Inc., Norsk Hydro Canada, I |
| Cantor Colburn LLP | Michael J Rye | 20 Church Street | 22nd Floor | Hartford | CT | 06103-3207 | | 860-286-2929 | mrye@cantorcolburn.com | Patent Counsel to Delphi Corporation et al., Debtors and Debtors-in-Possession |
| Carson Fischer, P.L.C. | Joseph M Fischer Patrick J Kukla | 4111 Andover Road | West 2nd Floor | Bloomfield Hills | MI | 48302 | | 248-644-4840 | brcy@carsonfischer.com | Counsel to Bing Metals Group, LLC; Behr America, Inc.; Findlay Industries; Vitec, LLC |
| Carson Fischer, P.L.C. | Robert A. Weisberg | 4111 Andover Road | West 2nd Floor | Birmingham | MI | 48302 | | 248-644-4840 | rweisberg@carsonfischer.com brcy@carsonfischer.com | Counsel to Cascade Die Casting Group, Inc.; Behr America, Inc. |
| Carter Ledyard & Milburn LLP | Aaron R. Cahn | 2 Wall Street | | New York | NY | 10005 | | 212-732-3200 | cahn@clm.com | Counsel to STMicroelectronics, Inc. |
| Chadbourne & Parke LLP | Douglas Deutsch, Esq. | 30 Rockefeller Plaza | | New York | NY | 10112 | | 212-408-5100 | ddeutsch@chadbourne.com | Counsel to EagleRock Capital Management, LLC |
| Clark Hill PLC | Joel D. Applebaum | 500 Woodward Avenue | Suite 3500 | Detroit | MI | 48226-3435 | | 313-965-8300 | japplebaum@clarkhill.com | Counsel to 1st Choice Heating & Cooling, Inc.; BorgWarner Turbo Systems Inc.; Metaldyne Company, LLC |
| Clark Hill PLC | Shannon Deeby | 500 Woodward Avenue | Suite 3500 | Detroit | MI | 48226-3435 | | 313-965-8300 | sdeeby@clarkhill.com | Counsel to BorgWarner Turbo Systems Inc.; Metaldyne Company, LLC |
| Clark Hill PLLC | Robert D. Gordon | 500 Woodward Avenue | Suite 3500 | Detroit | MI | 48226-3435 | | 313-965-8572 | rgordon@clarkhill.com | Counsel to ATS Automation Tooling Systems Inc. |
| Cleary Gottlieb Steen & Hamilton LLP | Deborah M. Buell | One Liberty Plaza | | New York | NY | 10006 | | 212-225-2000 | maofiling@cgsh.com | Counsel to Arneses Electricos Automotrices, S.A.de C.V.; Cordaflex, S.A. de C.V. |

In re. DPH Holdings Corp., et al.
Case No. 05-44481 (RDD)

Page 4 of 22

8/23/2010 5:50 PM
Email (395)

DPH Holdings Corp.
Post-Emergence 2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Cleary, Gottlieb, Steen & Hamilton LLP | James L. Bromley | One Liberty Plaza | | New York | NY | 10006 | | 212-225-2000 | maofiling@cgsh.com | Counsel to Bear, Stearns, Co. Inc.; Citigroup, Inc.; Credit Suisse First Boston; Deutsche Bank Securities, Inc.; Goldman Sachs Group, Inc.; JP Morgan Chase & Co.; Lehman Brothers, Inc.; Merrill Lynch & Co.; Morgan Stanley & Co., Inc.; UBS Securities, LLC |
| Cohen & Grigsby, P.C. | Thomas D. Maxson | 11 Stanwix Street | 15th Floor | Pittsburgh | PA | 15222-1319 | | 412-297-4706 | tmaxson@cohenlaw.com | Counsel to Nova Chemicals, Inc. |
| Cohen, Weiss & Simon LLP | Joseph J. Vitale Babette Ceccotti | 330 West 42nd Street | | New York | NY | 10036 | | 212-356-0238 | jvitale@cwsny.com bceccotti@cwsny.com | Counsel to International Union, United Automobile, Areospace and Agriculture Implement Works of America (UAW) |
| Cohn Birnbaum & Shea P.C. | Scott D. Rosen, Esq. | 100 Pearl Street, 12th Floor | | Hartford | CT | 06103 | | 860-493-2200 | srosen@cb-shea.com | Counsel to Floyd Manufacturing Co., Inc. |
| Connolly Bove Lodge & Hutz LLP | Jeffrey C. Wisler, Esq. | 1007 N. Orange Street | P.O. Box 2207 | Wilmington | DE | 19899 | | 302-658-9141 | jwisler@cblh.com | Counsel to ORIX Warren, LLC |
| Coolidge Wall Co. LPA | Ronald S. Pretekin | 33 West First Street | Suite 600 | Dayton | OH | 45402 | | 937-223-8177 | Pretekin@coollaw.com | Counsel to Harco Industries, Inc.; Harco Brake Systems, Inc.; Dayton Supply & Tool Coompany; Attorneys for Columbia Industrial |
| Covington & Burling | Susan Power Johnston Aaron R. Marcu | 620 Eighth Ave | | New York | NY | 10018 | | 212-841-1005 | sjohnston@cov.com | Special Counsel to the Debtor |
| Cox, Hodgman & Giarmarco, P.C. | Sean M. Walsh, Esq. | Tenth Floor Columbia Center | 101 W. Big Beaver Road | Troy | MI | 48084-5280 | | 248-457-7000 | swalsh@chglaw.com | Counsel to Nisshinbo Automotive Corporation |
| Curtin & Heefner, LLP | Daniel P. Mazo | 250 N. Pennslyvania Avenue | | Morrisville | PA | 19067 | | 215-736-2521 | dpm@curtinheefner.com | Counsel to SPS Technologies, LLC; NSS Technologies, Inc.; SPS Technologies Waterford Company; Greer Stop Nut, Inc. |
| Curtis, Mallet-Prevost, Colt & Mosle LLP | Cindi Eilbott | 101 Park Avenue | | New York | NY | 10178-0061 | | 212-696-6936 | ceilbott@curtis.com | Counsel to Flextronics International, Inc., Flextronics International USA, Inc.; Multek Flexible Circuits, Inc.; Sheldahl de Mexico S.A.de C.V.; Northfield Acquisition Co.; Flextronics Asia-Pacific Ltd.; Flextronics Technology (M) Sdn. Bhd |
| Damon & Morey LLP | William F. Savino | 1000 Cathedral Place | 298 Main Street | Buffalo | NY | 14202-4096 | | 716-856-5500 | wsavino@damonmorey.com | Counsel to Relco, Inc.; The Durham Companies, Inc. |
| David P. Martin | | 519 Energy Center Blvd | Ste 1104 | Northport | AL | 35401 | | 205-343-1771 | davidpmartin@erisacase.com davidpmartin@bellsouth.net | Co-Counsel for David Gargis, Jimmy Mueller, and D. Keith Livingston |
| Day Pitney LLP | Richard M. Meth | P.O. Box 1945 | | Morristown | NJ | 07962-1945 | | 973-966-6300 | rmeth@daypitney.com | Counsel to Marshall E. Campbell Company |
| Day Pitney LLP | Ronald S. Beacher Conrad K. Chiu | 7 Times Square | | New York | NY | 10036 | | 212-297-5800 | rbeacher@daypitney.com cchiu@daypitney.com | Counsel to IBJTC Business Credit Corporation, as successor to IBJ Whitehall Business Credit Corporation |

In re. DPH Holdings Corp., et al.
Case No. 05-44481 (RDD)

Page 5 of 22

8/23/2010 5:50 PM
Email (395)

DPH Holdings Corp.
Post-Emergence 2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Dechert LLP | Glenn E. Siegel James O. Moore | 1095 Avenue of the Americas | | New York | NY | 10036-6797 | | 212-698-3500 | glenn.siegel@dechert.com james.moore@dechert.com | Counsel for Kensington International Limited, Manchester Securities Corp. and Springfield Associates, LLC |
| Denso International America, Inc. | Carol Sowa | 24777 Denso Drive | | Southfield | MI | 48086 | | 248-372-8531 | carol_sowa@denso-diam.com | Counsel to Denso International America, Inc. |
| DiConza Law, P.C. | Gerard DiConza, Esq. | 630 Third Avenue, 7th Floor | | New York | NY | 10017 | | 212-682-4940 | gdiconza@dlawpc.com | Counsel to Tyz-All Plastics, Inc.; Co-Counsel to Tower Automotive, Inc. |
| Dinsmore & Shohl LLP | John Persiani | 1900 Chemed Center | 255 East Fifth Street | Cincinnati | OH | 45202 | | 513-977-8200 | john.persiani@dinslaw.com | Counsel to The Procter & Gamble Company |
| DLA Piper Rudnick Gray Cary US LLP | Richard M. Kremen Maria Ellena Chavez-Ruark | The Marbury Building | 6225 Smith Avenue | Baltimore | Maryland | 21209-3600 | | 410-580-3000 | richard.kremen@dlapiper.com | Counsel to Constellation NewEnergy, Inc. & Constellation NewEnergy - Gas Division, LLC |
| Drinker Biddle & Reath LLP | Andrew C. Kassner | 18th and Cherry Streets | | Philadelphia | PA | 19103 | | 215-988-2700 | andrew.kassner@dbr.com | Counsel to Penske Truck Leasing Co., L.P. |
| Drinker Biddle & Reath LLP | David B. Aaronson | 18th and Cherry Streets | | Philadelphia | PA | 19103 | | 215-988-2700 | david.aaronson@dbr.com | Counsel to Penske Truck Leasing Co., L.P. and Quaker Chemical Corporation |
| Duane Morris LLP | Joseph H. Lemkin | 744 Broad Street | Suite 1200 | Newark | NJ | 07102 | | 973-424-2000 | jhlemkin@duanemorris.com | Counsel to NDK America, Inc./NDK Crystal, Inc.; Foster Electric USA, Inc.; JST Corporation; Nichicon (America) Corporation; Taiho Corporation of America; American Aikoku Alpha, Inc.; Sagami America, Ltd.; SL America, Inc./SL Tennessee, LLC; and Hosiden America Corporation |
| Duane Morris LLP | Lewis R Olshin Esq | 30 South 17th Street | | Philadelphia | PA | 19103 | | 215-979-1129 | Olshin@duanemorris.com | Counsel to ACE American Insurance Company and Pacific Employers Insurance Company |
| Duane Morris LLP | Margery N. Reed, Esq. | 30 South 17th Street | | Philadelphia | PA | 19103-4196 | | 215-979-1000 | dmdelphi@duanemorris.com mreed@duanemorris.com | Counsel to ACE American Insurance Company and Pacific Employers Insurance Company |
| Duane Morris LLP | Wendy M. Simkulak, Esq. | 30 South 17th Street | | Philadelphia | PA | 19103-4196 | | 215-979-1547 | wmsimkulak@duanemorris.com | Counsel to ACE American Insurance Company and Pacific Employers Insurance Company |
| Dykema Gossett PLLC | Douglas S Parker | 39577 Woodward Ave | Suite 300 | Bloomfield Hills | MI | 48304 | | 248-203-0703 | dparker@dykema.com | Counsel for Federal Screw |
| Dykema Gossett PLLC | Robert D. Nachman | 10 South Wacker Drive | Suite 2300 | Chicago | IL | 60606 | | 312-876-1700 | rnachman@dykema.com | Counsel to MJ Celco, Inc. |
| Dykema Gossett PLLC | Sharon A. Salinas | 10 South Wacker Dr | Suite 2300 | Chicago | IL | 60606 | | 312-627-2199 | ssalinas@dykema.com | Counsel to Tremont City Barrel Fill PRP Group |
| Electronic Data Systems Corporation | Ayala Hassell | 5400 Legacy Dr. | Mail Stop H3-3A-05 | Plano | TX | 75024 | | 212-715-9100 | ayala.hassell@eds.com | Representattive for Electronic Data Systems Corporation |
| Ellenberg, Ogier, Rothschild & Rosenfeld, P.C. | Barbara Ellis-Monro | 170 Mitchell Street, SW | | Atlanta | GA | 30303 | | 404-581-3818 | bem@eorrlaw.com | Counsel to Southwire Company |
| Entergy Services, Inc. | Alan H. Katz | 639 Loyola Ave 26th Fl | | New Orleans | LA | 70113 | | | akatz@entergy.com | Assistant General Counsel to Entergy Services, Inc |

DPH Holdings Corp.
Post-Emergence 2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Epstein Becker & Green PC | Maura I. Russell Anthony B. Stumbo | 250 Park Ave | 11th Floor | New York | NY | 10177-1211 | | 212-351-4500 | MRussell@ebglaw.com | Counsel to SPCP Group LLC as agent for Silver Point Capital Fund LP and Silver Point Capital Offshore Fund Ltd |
| Ettelman & Hochheiser, P.C. | Gary Ettelman | c/o Premium Cadillac | 77 Main Street | New Rochelle | NY | 10801 | | 516-227-6300 | gettelman@e-hlaw.com | Counsel to Jon Ballin |
| Faegre & Benson LLP | Elizabeth K. Flaagan | 3200 Wells Fargo Center | 1700 Lincoln St | Denver | CO | 80203-4532 | | 303-607-3694 | eflaagan@faegre.com | Counsel to CoorsTek, Inc.; Corus, L.P. |
| Farrell Fritz PC | Louis A. Scarcella Patrick T. Collins | 1320 RexCorp Plaza | | Uniondale | NY | 11556-1320 | | 516-227-0700 | lscarcella@farrellfritz.com pcollins@farrellfritz.com | Counsel to Official Committee of Equity Holders |
| Filardi Law Offices LLC | Charles J. Filardi, Jr., Esq. | 65 Trumbull Street | Second Floor | New Haven | CT | 06510 | | 203-562-8588 | charles@filardi-law.com | Counsel to Federal Express Corporation |
| Finkel Goldstein Rosenbloom & Nash LLP | Ted J. Donovan | 26 Broadway | Suite 711 | New York | NY | 10004 | | 212-344-2929 | tdonovan@finkgold.com | Counsel to Pillarhouse (U.S.A.) Inc. |
| Foley & Lardner LLP | Ann Marie Uetz | 500 Woodward Avenue | Suite 2700 | Detroit | MI | 48226-3489 | | 313-234-7100 | auetz@foley.com | Counsel to PBR Tennessee |
| Foley & Lardner LLP | Jill L. Murch | 321 North Clark Street | Suite 2800 | Chicago | IL | 60610-4764 | | 312-832-4500 | jmurch@foley.com | Counsel to Kuss Corporation |
| Foley & Lardner LLP | John A. Simon | One Detroit Center | 500 Woodward Ave Suite 2700 | Detroit | MI | 48226-3489 | | 313-234-7100 | jsimon@foley.com | Counsel to Ernst & Young LLP |
| Foley & Lardner LLP | John R. Trentacosta Katherine R. Catanese | 500 Woodward Avenue | Suite 2700 | Detroit | MI | 48226-3489 | | 313-234-7100 | jtrentacosta@foley.com kcatanese@foley.com | Counsel to Kautex Inc. |
| Fox Rothschild LLP | Brian Isen | 1301 Atlantic Avenue | | Atlantic City | NJ | 08401 | | 609-348-2294 | bisen@foxrothschild.com | Counsel to M&Q Plastic Products L.P. |
| Fox Rothschild LLP | Fred Stevens | 100 Park Avenue | 15th Floor | New York | NY | 10017 | | 212-878-7900 | fstevens@foxrothschild.com | Counsel to M&Q Plastic Products, Inc. |
| Frederick T. Rikkers | | 419 Venture Court | P.O. Box 930555 | Verona | WI | 53593 | | 608-848-6350 | ftrikkers@rikkerslaw.com | Counsel to Southwest Metal Finishing, Inc. |
| Frost Brown Todd LLC | Ronald E. Gold | 2200 PNC Center | 201 East Fifth Street | Cincinnati | OH | 45202-4182 | | 513-651-6156 | rgold@fbtlaw.com | Counsel to AKS Receivables, LLC |
| Fulbright & Jaworski LLP | David A Rosenzweig | 666 Fifth Avenue | | New York | NY | 10103-3198 | | 212-318-3000 | drosenzweig@fulbright.com | Counsel to Southwest Research Institute Attorney for Solvay Fluorides, LLC |
| Fulbright & Jaworski LLP | Michael M Parker | 300 Convent St Ste 2200 | | San Antonio | TX | 78205 | | 210-224-5575 | mparker@fulbright.com | Counsel to Southwest Research Institute |
| Genovese Joblove & Battista, P.A. | David C. Cimo | 100 S.E. 2nd Street | Suite 4400 | Miami | FL | 33131 | | 305-349-2300 | dcimo@gjb-law.com | Counsel to Ryder Integrated Logistics, Inc. |
| Gibbons P.C. | David N. Crapo | One Gateway Center | | Newark | NJ | 07102-5310 | | 973-596-4523 | dcrapo@gibbonslaw.com | Counsel to Epcos, Inc. |
| Goldberg Segalla LLP | Attn Bruce W Hoover | 665 Main St Ste 400 | | Buffalo | NY | 14203 | | 716-566-5400 | bhoover@goldbergsegalla.com | Attorneys for MasTec Inc. |
| Gorlick, Kravitz & Listhaus, P.C. | Barbara S. Mehlsack | 17 State Street | 4th Floor | New York | NY | 10004 | | 212-269-2500 | bmehlsack@gkllaw.com | Counsel to International Brotherhood of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10; International Union of Operating Engineers Local Union Nos. 18, 101 and 832 |
| Goulston & Storrs, P.C. | Peter D. Bilowz | 400 Atlantic Avenue | | Boston | MA | 02110-333 | | 617-482-1776 | pbilowz@goulstonstorrs.com | Counsel to Thermotech Company |

In re. DPH Holdings Corp., et al.
Case No. 05-44481 (RDD)

Page 7 of 22

8/23/2010 5:50 PM
Email (395)

DPH Holdings Corp.
Post-Emergence 2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Grant & Eisenhofer P.A. | James J Sabella | 485 Lexington Ave | | New York | NY | 10017 | | 646-722-8520 | jsabella@gelaw.com | Counsel to Teachers Retirement System of Oklahoma; Public Employees's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Grant & Eisenhofer P.A. | Jay W. Eisenhofer | 45 Rockefeller Center | 650 Fifth Avenue | New York | NY | 10111 | | 212-755-6501 | jeisenhofer@gelaw.com | Counsel to Teachers Retirement System of Oklahoma; Public Employees's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Gratz, Miller & Brueggeman, S.C. | Matthew R. Robbins | 1555 N. RiverCenter Drive | Suite 202 | Milwaukee | WI | 53212 | | 414-271-4500 | mrr@previant.com | Counsel to International Brotherod of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10 |
| Graydon Head & Ritchey LLP | J. Michael Debbeler, Susan M. Argo | 1900 Fifth Third Center | 511 Walnut Street | Cincinnati | OH | 45202 | | 513-621-6464 | mdebbeler@graydon.com | Counsel to Grote Industries; Batesville Tool & Die; PIA Group; Reliable Castings |
| Greenberg Traurig, LLP | Maria J. DiConza | MetLife Bldg | 200 Park Avenue | New York | NY | 10166 | | 212-801-9200 | diconzam@gtlaw.com | Counsel to Samtech Corporation |
| Greenberg Traurig, LLP | Shari L. Heyen | 1000 Louisiana | Suite 1800 | Houston | TX | 77002 | | 713-374-3500 | heyens@gtlaw.com | Counsel to Samtech Corporation |
| Greensfelder, Hemker & Gale, P.C. | Cherie Macdonald J. Patrick Bradley | 10 S. Broadway | Suite 200 | St. Louis | MO | 63102 | | 314-241-9090 | ckm@greensfelder.com jpb@greensfelder.com | Counsel to ARC Automotive, Inc. |
| Hahn Loeser & Parks LLP | Lawrence E Oscar Christopher W Peer | 200 Public Square | Suite 2800 | Cleveland | OH | 44114 | | 216-621-0150 | leoscar@hahnlaw.com cpeer@hahnlaw.com | Counsel to Casco Products, a Unit of Sequa Corporation and ARC Automotive, Inc. |
| Halperin Battaglia Raicht, LLP | Alan D. Halperin Christopher J.Battaglia Julie D. Dyas | 555 Madison Avenue | 9th Floor | New York | NY | 10022 | | 212-765-9100 | cbattaglia@halperinlaw.net ahalperin@halperinlaw.net jdyas@halperinlaw.net | Counsel to Pacific Gas Turbine Center, LLC and Chromalloy Gas Turbine Corporation; ARC Automotive, Inc |
| Hancock & Estabrook LLP | R John Clark Esq | 1500 Tower I | PO Box 4976 | Syracuse | NY | 13221-4976 | | 315-471-3151 | rjclark@hancocklaw.com | Counsel to Alliance Precision Plastics Corporation |
| Harrington, Dragich & O'Neill PLLC | David G Dragich | 21043 Mack Avenue | | Grosse Pointe Woods | MI | 48236 | | 313-886-4550 | ddragich@hdolaw.com | Counsel to Intermet Corporation |
| Harris D. Leinwand | Harris D. Leinwand | 315 Madison Avenue | Suite 901 | New York | NY | 10017 | | 212-725-7338 | hleinwand@aol.com | Counsel to Baker Hughes Incorporated; Baker Petrolite Corporation |
| Haskell Slaughter Young & Rediker LLC | Robert H. Adams | 2001 Park Place North | Suite 1400 | Birmingham | AL | 35203 | | 205-251-1000 | rha@hsy.com | Counsel to Simco Construction, Inc. |
| Haynes and Boone, LLP | Judith Elkin | 153 East 53rd Street | Suite 4900 | New York | NY | 10022 | | 212-659-7300 | judith.elkin@haynesboone.com | Counsel to Highland Capital Management, L.P. |
| Haynes and Boone, LLP | Lenard M. Parkins Kenric D. Kattner | 1 Houston Center | 1221 McKinney, Suite 2100 | Houston | TX | 77010 | | 713-547-2000 | lenard.parkins@haynesboone.com kenric.kattner@haynesboone.com | Counsel to Highland Capital Management, L.P. |
| Herrick, Feinstein LLP | Paul Rubin | 2 Park Avenue | | New York | NY | 10016 | | 212-592-1448 | prubin@herrick.com | Counsel to Canon U.S.A., Inc. and Schmidt Technology GmbH |
| Hewlett-Packard Company | Kenneth F. Higman | 2125 E. Katella Avenue | Suite 400 | Anaheim | CA | 92806 | | 714-940-7120 | ken.higman@hp.com | Counsel to Hewlett-Packard Company |

In re. DPH Holdings Corp., et al.
Case No. 05-44481 (RDD)

Page 8 of 22

8/23/2010 5:50 PM
Email (395)

DPH Holdings Corp.
Post-Emergence 2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Hewlett-Packard Company | Ramona S. Neal | 11311 Chinden Blvd., M/S 314 | | Boise | ID | 83714-0021 | | 208-396-6484 | Ramona.neal@hp.com | Counsel to Hewlett-Packard Company |
| Hewlett-Packard Company | Sharon Petrosino | 420 Mountain Avenue | | Murray Hill | NJ | 07974 | | 908-898-4760 | sharon.petrosino@hp.com | Counsel to Hewlett-Packard Financial Services Company |
| Hinckley Allen & Snyder LLP | Michael J Pendell | 185 Asylum St CityPlace I | 35th Floor | Hartford | CT | 06103-3488 | | 860-725-6200 | mpendell@haslaw.com | Counsel to Barnes Group, Inc. |
| Hiscock & Barclay, LLP | J. Eric Charlton | 300 South Salina Street | PO Box 4878 | Syracuse | NY | 13221-4878 | | 315-425-2716 | echarlton@hiscockbarclay.com | Counsel to GW Plastics, Inc. |
| Hodgson Russ LLP | Garry M. Graber | 60 E 42nd St 37th Fl | | New York | NY | 10165-0150 | | 212-661-3535 | ggraber@hodgsonruss.com | Counsel to Hexcel Corporation |
| Hodgson Russ LLP | Julia S. Kreher | One M&T Plaza | Suite 2000 | Buffalo | NY | 14203 | | 716-848-1330 | jkreher@hodgsonruss.com | Counsel to Hexcel Corporation |
| Hogan & Hartson L.L.P. | Audrey Moog | Columbia Square | 555 Thirteenth Street, N.W. | Washington | D.C. | 20004-1109 | | 202-637-5677 | amoog@hhlaw.com | Counsel to Umicore Autocat Canada Corp. |
| Hogan & Hartson L.L.P. | Edward C. Dolan | Columbia Square | 555 Thirteenth Street, N.W. | Washington | D.C. | 20004-1109 | | 202-637-5677 | ecdolan@hhlaw.com | Counsel to Umicore Autocat Canada Corp. |
| Hogan & Hartson L.L.P. | Scott A. Golden | 875 Third Avenue | | New York | NY | 10022 | | 212-918-3000 | sagolden@hhlaw.com | Counsel to XM Satellite Radio Inc. |
| Hogan Lovells US LLP | Matthew P Morris | 875 Third Avenue | | New York | NY | 10022 | | 212-918-3000 | matthew.morris@hoganlovells.com | Counsel to TESA AG |
| Honigman, Miller, Schwartz and Cohn, LLP | Donald T. Baty, Jr. | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226 | | 313-465-7314 | dbaty@honigman.com | Counsel to Fujitsu Ten Corporation of America |
| Honigman, Miller, Schwartz and Cohn, LLP | E. Todd Sable | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226 | | 313-465-7548 | tsable@honigman.com | Counsel to Valeo Climate Control Corp.; Valeo Electrical Systems, Inc. - Motors and Actuators Division;Valeo Electrical Systems, Inc. - Wipers Division; Valeo Switches & Detection System, Inc. |
| Honigman, Miller, Schwartz and Cohn, LLP | I. W. Winsten, Esq. | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226 | | 313-465-7608 | iww@honigman.com | Counsel to Affina Group Holdings Inc. |
| Honigman, Miller, Schwartz and Cohn, LLP | Lawrence J. Murphy | 2290 First National Building | 660 Woodward Ave | Detroit | MI | 48226 | | 313-465-7488 | lmurphy@honigman.Com | Attorneys for Guide Corporation and Lightsource Parent Corporation |
| Honigman, Miller, Schwartz and Cohn, LLP | Seth A Drucker | 2290 First National Building | 660 Woodward Avenue Ste 2290 | Detroit | MI | 48226 | | 313-465-7626 | sdrucker@honigman.com | Counsel for Valeo Climate Control, Corp. |
| Howard & Howard Attorneys PC | Lisa S Gretchko | 39400 Woodward Ave | Ste 101 | Bloomfield Hills | MI | 48304-5151 | | 248-723-0396 | lgretchko@howardandhoward.com | Intellectual Property Counsel for Delphi Corporation, et al. |
| Howick, Westfall, McBryan & Kaplan, LLP | Louis G. McBryan | 3101 Tower Creek Parkway | Ste 600 One Tower Creek | Atlanta | GA | 30339 | | 678-384-7000 | lmcbryan@hwmklaw.com | Counsel to Vanguard Distributors, Inc. |
| Hunter & Schank Co. LPA | John J. Hunter | One Canton Square | 1700 Canton Avenue | Toledo | OH | 43624 | | 419-255-4300 | jrhunter@hunterschank.com | Counsel to ZF Group North America Operations, Inc. |
| Hunter & Schank Co. LPA | Thomas J. Schank | One Canton Square | 1700 Canton Avenue | Toledo | OH | 43624 | | 419-255-4300 | tomschank@hunterschank.com | Counsel to ZF Group North America Operations, Inc. |
| Hunton & Williams LLP | Steven T. Holmes | Energy Plaza, 30th Floor | 1601 Bryan Street | Dallas | TX | 75201 | | 214-979-3000 | sholmes@hunton.com | Counsel to RF Monolithics, Inc. |
| Hurwitz & Fine P.C. | Ann E. Evanko | 1300 Liberty Building | | Buffalo | NY | 14202 | | 716-849-8900 | aee@hurwitzfine.com | Counsel to Jiffy-Tite Co., Inc. |

DPH Holdings Corp.
Post-Emergence 2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Ice Miller | Ben T. Caughey | One American Square | Box 82001 | Indianapolis | IN | 46282-0200 | | 317-236-2100 | Ben.Caughey@icemiller.com | Counsel to Sumco, Inc. |
| Ice Miller LLP | Henry A. Efroymson | One American Square | 29th Floor | Indianapolis | IN | 46482 | | 317-236-2397 | henry.efroymson@icemiller.com | Counsel to Fin Machine Co. Ltd |
| Infineon Technologies North America Corporation | Greg Bibbes | 1730 North First Street | M/S 11305 | San Jose | CA | 95112 | | 408-501-6442 | greg.bibbes@infineon.com | General Counsel & Vice President for Infineon Technologies North America Corporation |
| Infineon Technologies North America Corporation | Jeff Gillespie | 2529 Commerce Drive | Suite H | Kokomo | IN | 46902 | | 765-454-2146 | jeffery.gillispie@infineon.com | Global Account Manager for Infineon Technologies North America |
| International Union of Operating Engineers | Richard Griffin | 1125-17th Avenue, N.W. | | Washington | DC | 20036 | | 202-429-9100 | rgriffin@iuoe.org | Counsel to International Brotherhood of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10; International Union of Operating Engineers Local Union Nos. 18, 101 and 832 |
| Jackson Walker LLP | Bruce J. Ruzinsky | 1401 McKinney St Ste 1900 | | Houston | TX | 77010 | | 713-751-4200 | bruzinsky@jw.com | Counsel to Constellation NewEnergy, Inc. |
| Jackson Walker LLP | Heather M. Forrest | 901 Main St Ste 600 | | Dallas | TX | 75202 | | 214-953-6000 | hforrest@jw.com | Counsel to Constellation NewEnergy, Inc. |
| James R Scheuerle | Parmenter O'Toole | 601 Terrace Street | PO Box 786 | Muskegon | MI | 49443-0786 | | 231-722-1621 | JRS@Parmenterlaw.com | Counsel to Port City Die Cast and Port City Group Inc |
| Jason, Inc. | Will Schultz, General Counsel | 411 E. Wisconsin Ave | Suite 2120 | Milwaukee | WI | 53202 | | 414-277-2110 | wschultz@jasoninc.com | General Counsel to Jason Incorporated |
| Jenner & Block LLP | Ronald R. Peterson | One IBM Plaza | | Chicago | IL | 60611 | | 312-222-9350 | rpeterson@jenner.com | Counsel to SPX Corporation (Contech Division), Alcan Rolled Products-Ravenswood, LLC, Tenneco Inc. and Contech LLC |
| Johnston, Harris Gerde & Komarek, P.A. | Jerry W. Gerde, Esq. | 239 E. 4th St. | | Panama City | FL | 32401 | | 850-763-8421 | gerdekomarek@bellsouth.net | Counsel to Peggy C. Brannon, Bay County Tax Collector |
| Jones Day | Corinne Ball | 222 East 41st Street | | New York | NY | 10017 | | 212-326-7844 | cball@jonesday.com | Counsel to WL. Ross & Co., LLC |
| Jones Day | Peter J. Benvenutti Michaeline H. Correa | 555 California St 26th Floor | | San Francisco | CA | 94104 | | 415-626-3939 | pjbenvenutti@jonesday.com mcorrea@jonesday.com | Attorneys for Symantec Corporation, Successor-in-Interest to Veritas Corporation |
| Jones Day | Scott J. Friedman | 222 East 41st Street | | New York | NY | 10017 | | 212-326-3939 | sjfriedman@jonesday.com | Counsel to WL. Ross & Co., LLC |
| Katten Muchin Rosenman LLP | John P. Sieger, Esq. | 525 West Monroe Street | | Chicago | IL | 60661 | | 312-902-5200 | john.sieger@kattenlaw.com | Counsel to TDK Corporation America and MEMC Electronic Materials, Inc. |
| Kaye Scholer LLP | Richard G Smolev | 425 Park Avenue | | New York | NY | 10022-3598 | | 212-236-8000 | rsmolev@kayescholer.com | Counsel to InPlay Technologies Inc |
| Kegler, Brown, Hill & Ritter Co., LPA | Kenneth R. Cookson | 65 East State Street | Suite 1800 | Columbus | OH | 43215 | | 614-426-5400 | kcookson@keglerbrown.com | Counsel to Solution Recovery Services |

In re. DPH Holdings Corp., et al.
Case No. 05-44481 (RDD)

Page 10 of 22

8/23/2010 5:50 PM
Email (395)

DPH Holdings Corp.
Post-Emergence 2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Keller Rohrback L.L.P. | Lynn Lincoln Sarko Cari Campen Laufenberg Erin M. Rily | 1201 Third Avenue | Suite 3200 | Seattle | WA | 98101 | | 206-623-1900 | lsarko@kellerrohrback.com claufenberg@kellerrohrback.com eriley@kellerrohrback.com | Counsel to Neal Folck, Greg Bartell, Donald McEvoy, Irene Polito, and Thomas Kessler, on behalf of themselves and a class of persons similarly situated, and on behalf of the Delphi Savings-Stock Purchase Program for Salaried Employees in the United States and the Delphi Personal Savings Plan for Hourly-Rate Employees in the United States |
| Keller Rohrback P.L.C. | Gary A. Gotto | National Bank Plaza | 3101 North Central Avenue, Suite 900 | Phoenix | AZ | 85012 | | 602-248-0088 | ggotto@kellerrohrback.com | Counsel to Neal Folck, Greg Bartell, Donald McEvoy, Irene Polito, and Thomas Kessler, on behalf of themselves and a class of persons similarly situated, and on behalf of the Delphi Savings-Stock Purchase Program for Salaried Employees in the United States and the Delphi Personal Savings Plan for Hourly-Rate Employees in the United States |
| Kelley Drye & Warren, LLP | Craig A. Wolfe | 101 Park Avenue | | New York | NY | 10178 | | 212-808-7800 | cwolfe@kelleydrye.com | Counsel to the Pension Benefit Guaranty Corporation |
| Kelley Drye & Warren, LLP | Merrill B. Stone | 101 Park Avenue | | New York | NY | 10178 | | 212-808-7800 | mstone@kelleydrye.com | Counsel to the Pension Benefit Guaranty Corporation |
| Kennedy, Jennick & Murray | Susan M. Jennik | 113 University Place | 7th Floor | New York | NY | 10003 | | 212-358-1500 | sjennik@kjmlabor.com | Counsel to The International Union of Electronic, Salaried, Machine and Furniture Workers - Communicaitons Workers of America |
| Kennedy, Jennick & Murray | Thomas Kennedy | 113 University Place | 7th Floor | New York | NY | 10003 | | 212-358-1500 | tkennedy@kjmlabor.com | Counsel to The International Union of Electronic, Salaried, Machine and Furniture Workers - Communicaitons Workers of America |
| Kerr Russell & Weber PLC | James E. DeLine | 500 Woodward Avenue | Suite 2500 | Detroit | MI | 48226 | | 313-961-0200 | jed@krwlaw.com | Counsel to Pontiac Coil, Inc. |
| Kerr Russell & Weber PLC | Patrick Warren Hunt | 500 Woodward Avenue | Suite 2500 | Detroit | MI | 48226 | | 313-961-0200 | pwh@krwlaw.com | Counsel to Pontiac Coil, Inc. |
| King & Spalding, LLP | Daniel Egan | 1185 Avenue of the Americas | | New York | NY | 10036 | | 212-556-2100 | degan@kslaw.com | Counsel to KPMG LLP |
| King & Spalding, LLP | H. Slayton Dabney, Jr. | 1185 Avenue of the Americas | | New York | NY | 10036 | | 212-556-2100 | sdabney@kslaw.com | Counsel to KPMG LLP |
| Kirkland & Ellis LLP | David Spiegel | 300 North LaSalle | | Chicago | IL | 60654 | | 312-862-2000 | david.spiegel@kirkland.com | |
| Kirkland & Ellis LLP | Jim Stempel | 200 East Randolph Drive | | Chicago | IL | 60601 | | 312-861-2000 | jstempel@kirkland.com | Counsel to Lunt Mannufacturing Company |
| Kirkpatrick & Lockhart Nicholson Graham LLP | Edward M. Fox | 599 Lexington Avenue | | New York | NY | 10022 | | 212-536-4812 | efox@klng.com | Counsel to Wilmington Trust Company, as Indenture trustee |
| Kokomo Gas & Fuel Company | Patti E Pope Revenue Recovery Manager | Northern Indiana Public Service Company | 801 East 86th Avenue | Merrillville | IN | 46410 | | | pepope@nisource.com | Kokomo Gas & Fuel Company |

In re. DPH Holdings Corp., et al.
Case No. 05-44481 (RDD)

Page 11 of 22

8/23/2010 5:50 PM
Email (395)

DPH Holdings Corp.
Post-Emergence 2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Kramer Levin Naftalis & Frankel LLP | Jordan D Kaye | 1177 Avenue of the Americas | | New York | NY | 10036 | | 212-715-9489 | jkaye@kramerlevin.com | Counsel to HP Enterprise Services, LLC; Vishay Americas Inc. |
| Krugliak, Wilkins, Griffiths & Dougherty CO., L.P.A. | Sam O. Simmerman | 4775 Munson Street N.W. | P.O. Box 36963 | Canton | OH | 44735-6963 | | 330-497-0700 | sosimmerman@kwgd.com | Counsel to for Millwood, Inc. |
| Kutak Rock LLP | Jay Selanders | 1010 Grand Blvd Ste 500 | | Kansas City | MO | 64106 | | 816-502-4617 | jay.selanders@kutakrock.com | Counsel to DaimlerChrysler Corporation; DaimlerChrysler Motors Company, LLC; DaimlerChrysler Canada, Inc. |
| Kutchin & Rufo, P.C. | Edward D. Kutchin | Two Center Plaza | Suite 620 | Boston | MA | 02108-1906 | | 617-542-3000 | ekutchin@kutchinrufo.com | Counsel to Parlex Corporation |
| Kutchin & Rufo, P.C. | Kerry R. Northrup | Two Center Plaza | Suite 620 | Boston | MA | 02108-1906 | | 617-542-3000 | knorthup@kutchinrufo.com | Counsel to Parlex Corporation |
| Lambert. Leser, Isackson, Cook & Guinta, P.C. | Adam D. Bruski | 309 Davidson Building | PO Box 835 | Bay City | MI | 48707-0835 | | 989-893-3518 | adbruski@lambertleser.com | Counsel to Creditor Linamar Corp. |
| Lambert. Leser, Isackson, Cook & Guinta, P.C. | Susan M. Cook | 309 Davidson Building | PO Box 835 | Bay City | MI | 48707-0835 | | 989-893-3518 | smcook@lambertleser.com | Counsel to Linamar Corporation |
| Latham & Watkins | Mark A. Broude | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1384 | mark.broude@lw.com | UCC Professional |
| Latham & Watkins | Michael J. Riela | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1200 | michael.riela@lw.com | UCC Professional |
| Latham & Watkins | Mitchell A. Seider | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1200 | mitchell.seider@lw.com | UCC Professional |
| Latham & Watkins | Robert Rosenberg | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1370 | robert.rosenberg@lw.com | UCC Professional |
| Law Offices of Michael O'Hayer | Michael O'Hayer Esq | 22 N Walnut Street | | West Chester | PA | 19380 | | 610-738-1230 | mkohayer@aol.com | Counsel to A-1 Specialized Services and Supplies Inc |
| Lewis and Roca LLP | Rob Charles, Esq. | One South Church Street | Suite 700 | Tucson | AZ | 85701 | | 520-629-4427 | rcharles@lrlaw.com | Counsel to Freescale Semiconductor, Inc. f/k/a Motorola Semiconductor Systems (U.S.A.) Inc. |
| Lewis and Roca LLP | Susan M. Freeman, Esq. | 40 North Central Avenue | Suite 1900 | Phoenix | AZ | 85004-4429 | | 602-262-5756 | sfreeman@lrlaw.com | Counsel to Freescale Semiconductor, Inc. f/k/a Motorola Semiconductor Systems (U.S.A.) Inc. |
| Linear Technology Corporation | John England, Esq. | General Counsel for Linear Technology Corporation | 1630 McCarthy Blvd. | Milpitas | CA | 95035-7417 | | 408-432-1900 | jengland@linear.com | Counsel to Linear Technology Corporation |
| Linebarger Goggan Blair & Sampson, LLP | Diane W. Sanders | 1949 South IH 35 (78741) | P.O. Box 17428 | Austin | TX | 78760-7428 | | 512-447-6675 | austin.bankruptcy@publicans.com | Counsel to Cameron County, Brownsville ISD |
| Linebarger Goggan Blair & Sampson, LLP | Elizabeth Weller | 2323 Bryan Street | Suite 1600 | Dallas | TX | 75201 | | 214-880-0089 | dallas.bankruptcy@publicans.com | Counsel to Dallas County and Tarrant County |
| Linebarger Goggan Blair & Sampson, LLP | John P. Dillman | P.O. Box 3064 | | Houston | TX | 77253-3064 | | 713-844-3478 | houston_bankruptcy@publicans.com | Counsel in Charge for Taxing Authorities: Cypress-Fairbanks Independent School District, City of Houston, Harris County |
| Locke Lord Bissell & Liddell | Kevin J. Walsh | 885 Third Avenue | 26th Floor | New York | NY | 10022-4802 | | 212-812-8304 | kwalsh@lockelord.com | Counsel to Sedgwick Claims Management Services, Inc. and Methode Electronics, Inc. |
| Locke Lord Bissell & Liddell | Timothy S. McFadden | 111 South Wacker Drive | | Chicago | IL | 60606 | | 312-443-0370 | tmcfadden@lockelord.com | Counsel to Methode Electronics, Inc. |
| Loeb & Loeb LLP | P. Gregory Schwed | 345 Park Avenue | | New York | NY | 10154-0037 | | 212-407-4000 | gschwed@loeb.com | Counsel to Creditor The Interpublic Group of Companies, Inc. and Proposed Auditor Deloitte & Touche, LLP |

In re. DPH Holdings Corp., et al.
Case No. 05-44481 (RDD)

Page 12 of 22

8/23/2010 5:50 PM
Email (395)

DPH Holdings Corp.
Post-Emergence 2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Loeb & Loeb LLP | William M. Hawkins | 345 Park Avenue | | New York | NY | 10154 | | 212-407-4000 | whawkins@loeb.com | Counsel to Industrial Ceramics Corporation |
| Lowenstein Sandler PC | Bruce S. Nathan | 1251 Avenue of the Americas | | New York | NY | 10020 | | 212-262-6700 | bnathan@lowenstein.com | Counsel to Daewoo International (America) Corp. |
| Lowenstein Sandler PC | Ira M. Levee | 1251 Avenue of the Americas | 18th Floor | New York | NY | 10020 | | 212-262-6700 | ilevee@lowenstein.com | Counsel to Teachers Retirement System of Oklahoma; Public Employes's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Lowenstein Sandler PC | Kenneth A. Rosen | 65 Livingston Avenue | | Roseland | NJ | 07068 | | 973-597-2500 | krosen@lowenstein.com | Counsel to Cerberus Capital Management, L.P. |
| Lowenstein Sandler PC | Michael S. Etikin | 1251 Avenue of the Americas | 18th Floor | New York | NY | 10020 | | 212-262-6700 | metkin@lowenstein.com | Counsel to Teachers Retirement System of Oklahoma; Public Employes's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Lowenstein Sandler PC | Scott Cargill | 65 Livingston Avenue | | Roseland | NJ | 07068 | | 973-597-2500 | scargill@lowenstein.com | Counsel to Cerberus Capital Management, L.P.; AT&T Corporation |
| Lowenstein Sandler PC | Vincent A. D'Agostino | 65 Livingston Avenue | | Roseland | NJ | 07068 | | 973-597-2500 | vdagostino@lowenstein.com | Counsel to AT&T Corporation |
| Lyden, Liebenthal & Chappell, Ltd. | Erik G. Chappell | 5565 Airport Highway | Suite 101 | Toledo | OH | 43615 | | 419-867-8900 | egc@lydenlaw.com | Counsel to Metro Fibres, Inc. |
| Maddin, Hauser, Wartell, Roth & Heller PC | Alexander Stotland Esq | 28400 Northwestern Hwy | Third Floor | Southfield | MI | 48034 | | 248-354-4030 | axs@maddinhauser.com | Attorney for Danice Manufacturing Co. |
| Madison Capital Management | Joe Landen | 6143 South Willow Drive | Suite 200 | Greenwood Village | CO | 80111 | | 303-957-4254 | jlanden@madisoncap.com | Representative for Madison Capital Management |
| Margulies & Levinson, LLP | Leah M. Caplan, Esq. | 30100 Chagrin Boulevard | Suite 250 | Pepper Pike | OH | 44124 | | 216-514-4935 | lmc@ml-legal.com | Counsel to Venture Plastics |
| Mastromarco & Jahn, P.C. | Victor J. Mastromarco, Jr. | 1024 North Michigan Avenue | P.O. Box 3197 | Saginaw | MI | 48605-3197 | | 989-752-1414 | vmastromar@aol.com | Counsel to H.E. Services Company and Robert Backie and Counsel to Cindy Palmer, Personal Representative to the Estate of Michael Palmer |
| Masuda Funai Eifert & Mitchell, Ltd. | Gary D. Santella | 203 North LaSalle Street | Suite 2500 | Chicago | IL | 60601-1262 | | 312-245-7500 | gsantella@masudafunai.com | Counsel to NDK America, Inc./NDK Crystal, Inc.; Foster Electric USA, Inc.; JST Corporation; Nichicon (America) Corporation; Taiho Corporation of America; American Aikoku Alpha, Inc.; Sagami America, Ltd.; SL America, Inc./SL Tennessee, LLC and Hosiden America Corporation |
| McCarter & English, LLP | David J. Adler, Jr. Esq. | 245 Park Avenue, 27th Floor | | New York | NY | 10167 | | 212-609-6800 | dadler@mccarter.com | Counsel to Ward Products, LLC |
| McCarter & English, LLP | Eduardo J. Glas, Esq. | Four Gateway Center | 100 Mulberry Street | Newark | NJ | 07102-4096 | | 913-622-4444 | eglas@mccarter.com | Counsel to General Products Delaware Corporation |
| McCarthy Tetrault LLP | Lorne P. Salzman | 66 Wellington Street West | Suite 4700 | Toronto | Ontario | M5K 1E6 | | 416-362-1812 | lsalzman@mccarthy.ca | Counsel to Themselves (McCarthy Tetrault LLP) |
| McDermott Will & Emery LLP | Gary O. Ravert | 340 Madison Avenue | | New York | NY | 10017-1922 | | 212-547-5477 | gravert@mwe.com | Counsel for Temic Automotive of North America, Inc. |

In re: DPH Holdings Corp., et al.
Case No. 05-44481 (RDD)

Page 13 of 22

8/23/2010 5:50 PM
Email (395)

DPH Holdings Corp.
Post-Emergence 2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| McDermott Will & Emery LLP | James M. Sullivan | 340 Madison Avenue | | New York | NY | 10017 | | 212-547-5477 | jmsullivan@mwe.com | Counsel to Linear Technology Corporation, National Semiconductor Corporation; Timken Corporation |
| McDermott Will & Emery LLP | Stephen B. Selbst | 340 Madison Avenue | | New York | NY | 10017 | | 212-547-5400 | sselbst@mwe.com | Counsel to National Semiconductor Corporation |
| McDermott Will & Emery LLP | Steven P. Handler Monica M. Quinn | 227 W Monroe St | | Chicago | IL | 60606 | | 312-372-2000 | shandler@mwe.com mquinn@mwe.com | Counsel for Temic Automotive of North America, Inc. |
| McDonald Hopkins Co., LPA | Scott N. Opincar, Esq. | 600 Superior Avenue, E. | Suite 2100 | Cleveland | OH | 44114 | | 216-348-5400 | sopincar@mcdonaldhopkins.com | Counsel to Republic Engineered Products, Inc. |
| McDonald Hopkins Co., LPA | Shawn M. Riley, Esq. | 600 Superior Avenue, E. | Suite 2100 | Cleveland | OH | 44114 | | 216-348-5400 | sriley@mcdonaldhopkins.com | Counsel to Republic Engineered Products, Inc. |
| McElroy, Deutsch, Mulvaney & Carpenter, LLP | Jeffrey Bernstein, Esq. | Three Gateway Center | 100 Mulberry Street | Newark | NJ | 07102-4079 | | 973-622-7711 | jbernstein@mdmc-law.com | Counsel to New Jersey Self-Insurers Guaranty Association |
| McGuireWoods LLP | Aaron G McCollough Esq | One James Center | 901 East Cary Street | Richmond | VA | 23219-4030 | | 804-775-1000 | amccollough@mcguirewoods.com | Counsel to Siemens Energy & Automation, Inc. |
| McGuireWoods LLP | Daniel F Blanks | One James Center | 901 East Cary Street | Richmond | VA | 23219 | | 804-775-1000 | dblanks@mcguirewoods.com | Counsel for CSX Transportation, Inc. |
| McGuireWoods LLP | John H Maddock III | One James Center | 901 East Cary Street | Richmond | VA | 23219-4030 | | 804-775-1178 | jmaddock@mcguirewoods.com | Counsel to Siemens Logistics Assembly Systems, Inc.; Counsel for CSX Transportation, Inc. |
| Meyer, Suozzi, English & Klein, P.C. | Attn Thomas R Slome Esq | 990 Stewart Ave Ste 300 | PO Box 9194 | Garden City | NY | 11530-9194 | | 516-741-6565 | tslome@msek.com | Counsel for Pamela Geller; JAE Electronics, Inc. |
| Meyer, Suozzi, English & Klein, P.C. | Hanan Kolko | 1350 Broadway | Suite 501 | New York | NY | 10018 | | 212-239-4999 | hkolko@msek.com | Counsel to The International Union of Electronic, Salaried, Machine and Furniture Workers - Communicaitons Workers of America |
| Meyers Law Group, P.C. | Merle C. Meyers | 44 Montgomery Street | Suite 1010 | San Francisco | CA | 94104 | | 415-362-7500 | mmeyers@mlg-pc.com | Counsel to Alps Automotive, Inc. |
| Meyers, Rodbell & Rosenbaum, P.A. | M. Evan Meyers | Berkshire Building | 6801 Kenilworth Avenue, Suite 400 | Riverdale Park | MD | 20737-1385 | | 301-699-5800 | emeyers@mrrlaw.net | Counsel to Prince George County, Maryland |
| Meyers, Rodbell & Rosenbaum, P.A. | Robert H. Rosenbaum | Berkshire Building | 6801 Kenilworth Avenue, Suite 400 | Riverdale Park | MD | 20737-1385 | | 301-699-5800 | rrosenbaum@mrrlaw.net | Counsel to Prince George County, Maryland |
| Miami-Dade County Tax Collector | April Burch | Paralegal Unit | 140 West Flagler St Ste 1403 | Miami | FL | 33130 | | 305-375-5314 | mdtcbkc@miamidade.gov | Paralegal Collection Specialist for Miami-Dade County |
| Michael Cox | | Cadillac Place | 3030 W. Grand Blvd., Suite 10-200 | Detroit | MI | 48202 | | 313-456-0140 | miag@michigan.gov | Attorney General for State of Michigan, Department of Treasury |
| Michigan Department of Labor and Economic Growth, Worker's Compensation Agency | Dennis J. Raterink | PO Box 30736 | | Lansing | MI | 48909-7717 | | 517-373-1176 | raterinkd@michigan.gov | Assistant Attorney General for Worker's Compensation Agency; Attorney for the Funds Administration for the State of Michigan |
| Michigan Department of Labor and Economic Growth, Worker's Compensation Agency | Michael Cox | PO Box 30736 | | Lansing | MI | 48909-7717 | | 517-373-1820 | miag@michigan.gov | Attorney General for Worker's Compensation Agency; Attorney for the Funds Administration for the State of Michigan |

In re. DPH Holdings Corp., et al.
Case No. 05-44481 (RDD)

Page 14 of 22

8/23/2010 5:50 PM
Email (395)

DPH Holdings Corp.
Post-Emergence 2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Miles & Stockbridge, P.C. | Thomas D. Renda | 10 Light Street | | Baltimore | MD | 21202 | | 410-385-3418 | trenda@milesstockbridge.com | Counsel to Computer Patent Annuities Limited Partnership, Hydro Aluminum North America, Inc., Hydro Aluminum Adrian, Inc., Hydro Aluminum Precision Tubing NA, LLC, Hydro Alumunim Ellay Enfield Limited, Hydro Aluminum Rockledge, Inc., Norsk Hydro Canada, Inc., Emhart Technologies LLL and Adell Plastics, Inc. |
| Miller & Martin PLLC | Dale Allen | 150 Fourth Ave North | Ste 1200 | Nashville | TN | 37219 | | | vjones@millermartin.com | Counsel to Averitt Express |
| Miller Johnson | Thomas P. Sarb Robert D. Wolford | 250 Monroe Avenue, N.W. | Suite 800, PO Box 306 | Grand Rapids | MI | 49501-0306 | | 616-831-1748 616-831-1726 | sarbt@millerjohnson.com wolfordr@millerjohnson.com | Counsel to Pridgeon & Clay, Inc. |
| Miller, Canfield, Paddock and Stone, P.L.C. | Jonathan S. Green | 150 W. Jefferson Avenue | Suite 2500 | Detroit | MI | 48226 | | 313-496-8452 | greenj@millercanfield.com | Counsel to Wells Operating Partnership, LP |
| Miller, Canfield, Paddock and Stone, P.L.C. | Marc N. Swanson | 150 W. Jefferson Avenue | Suite 2500 | Detroit | MI | 48226 | | 313-963-6420 | swansonm@millercanfield.com | Counsel to Brose North America Holding LP and its affiliates |
| Miller, Canfield, Paddock and Stone, P.L.C. | Timothy A. Fusco | 150 W. Jefferson Avenue | Suite 2500 | Detroit | MI | 48226 | | 313-496-8435 | fusco@millercanfield.com | Counsel to Niles USA Inc.; Techcentral, LLC; The Bartech Group, Inc.; Fischer Automotive Systems |
| Mintz, Levin, Cohn, Ferris Glovsky and Pepco, P.C. | Paul J. Ricotta | One Financial Center | | Boston | MA | 02111 | | 617-542-6000 | pjricotta@mintz.com pricotta@mintz.com | Counsel to Hitachi Automotive Products (USA), Inc. and Conceria Pasubio |
| Molex Connector Corp | Jeff Ott | 2222 Wellington Ct. | | Lisle | IL | 60532 | | 630-527-4254 | Jeff.Ott@molex.com | Counsel to Molex Connector Corp |
| Morgan, Lewis & Bockius LLP | Andrew D. Gottfried | 101 Park Avenue | | New York | NY | 10178-0060 | | 212-309-6000 | agottfried@morganlewis.com | Counsel to ITT Industries, Inc.; Hitachi Chemical (Singapore), Ltd. |
| Morgan, Lewis & Bockius LLP | Menachem O. Zelmanovitz | 101 Park Avenue | | New York | NY | 10178 | | 212-309-6000 | mzelmanovitz@morganlewis.com | Counsel to Hitachi Chemical (Singapore) Pte, Ltd. |
| Morgan, Lewis & Bockius LLP | Richard W. Esterkin, Esq. | 300 South Grand Avenue | | Los Angeles | CA | 90017 | | 213-612-1163 | resterkin@morganlewis.com | Counsel to Sumitomo Corporation |
| Moritt Hock Hamroff & Horowitz LLP | Leslie Ann Berkoff | 400 Garden City Plaza | | Garden City | NY | 11530 | | 516-873-2000 | lberkoff@moritthock.com | Counsel to Standard Microsystems Corporation and its direct and indirect subsidiares Oasis SiliconSystems AG and SMSC NA Automotive, LLC (successor-in-interst to Oasis Silicon Systems, Inc.) |
| Munsch Hardt Kopf & Harr, P.C. | Raymond J. Urbanik, Esq., Joseph J. Wielebinski, Esq. and Davor Rukavina, Esq. | 3800 Lincoln Plaza | 500 North Akard Street | Dallas | RX | 75201-6659 | | 214-855-7590 214-855-7561 214-855-7587 | rurbanik@munsch.com jwielebinski@munsch.com drukavina@munsch.com | Counsel to Texas Instruments Incorporated |
| Nantz, Litowich, Smith, Girard & Hamilton, P.C. | Sandra S. Hamilton | 2025 East Beltline, S.E. | Suite 600 | Grand Rapids | MI | 49546 | | 616-977-0077 | sandy@nlsg.com | Counsel to Lankfer Diversified Industries, Inc. |

In re. DPH Holdings Corp., et al.
Case No. 05-44481 (RDD)

Page 15 of 22

8/23/2010 5:50 PM
Email (395)

DPH Holdings Corp.
Post-Emergence 2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Nathan, Neuman & Nathan, P.C. | Kenneth A. Nathan | 29100 Northwestern Highway | Suite 260 | Southfield | MI | 48034 | | 248-351-0099 | Knathan@nathanneuman.com | Counsel to 975 Opdyke LP; 1401 Troy Associates Limited Partnership; 1401 Troy Associates Limited Partnership c/o Etkin Equities, Inc.; 1401 Troy Associates LP; Brighton Limited Partnership; DPS Information Services, Inc.; Etkin Management Services, Inc. and Etkin Real Properties |
| National City Commercial Capital | Lisa M. Moore | 995 Dalton Avenue | | Cincinnati | OH | 45203 | | 513-455-2390 | l.moore@pnc.com | Vice President and Senior Counsel to National City Commercial Capital |
| Nelson Mullins Riley & Scarborough | George B. Cauthen | 1320 Main Street, 17th Floor | PO Box 11070 | Columbia | SC | 29201 | | 803-7255-9425 | george.cauthen@nelsonmullins.com | Counsel to Datwyler Rubber & Plastics, Inc.; Datwyler, Inc.; Datwyler i/o devices (Americas), Inc.; Rothrist Tube (USA), Inc. |
| New Jersey Attorney General's Office Division of Law | Tracy E Richardson Deputy Attorney General | R.J. Hughes Justice Complex | 25 Market St P.O. Box 106 | Trenton | NJ | 08628-0106 | | 609-292-1537 | tracy.richardson@dol.lps.state.nj.us | Deputy Attorney General - State of New Jersey Division of Taxation |
| North Point | David G. Heiman | 901 Lakeside Avenue | | Cleveland | OH | 44114 | | 216-586-3939 | dgheiman@jonesday.com | Counsel to WL. Ross & Co., LLC |
| Office of the Chapter 13 Trustee | Camille Hope | P.O. Box 954 | | Macon | GA | 31202 | | 478-742-8706 | cahope@chapter13macon.com | Office of the Chapter 13 Trustee |
| Office of the Texas Attorney General | Jay W. Hurst | P.O. Box 12548 | | Austin | TX | 78711-2548 | | 512-475-4861 | jay.hurst@oag.state.tx.us | Counsel to The Texas Comptroller of Public Accounts |
| Ohio Environmental Protection Agency | c/o Michelle T. Sutter | Principal Assistant Attorney General Environmental Enforcement Section | 30 E Broad St 25th Fl | Columbus | OH | 43215 | | 614-466-2766 | msutter@ag.state.oh.us | Attorney for State of Ohio, Environmental Protection Agency |
| Orbotech, Inc. | Michael M. Zizza, Legal Manager | 44 Manning Road | | Billerica | MA | 01821 | | 978-901-5025 | michaelz@orbotech.com | Company |
| O'Rourke Katten & Moody | Michael Moody | 55 W Wacker Dr | Ste 1400 | Chicago | IL | 60615 | | 312-849-2020 | mmoody@orourkeandmoody.com | Counsel to Ameritech Credit Corporation d/b/a SBC Capital Services |
| Orrick, Herrington & Sutcliffe LLP | Alyssa Englund, Esq. | 666 Fifth Avenue | | New York | NY | 10103 | | 212-506-5187 | aenglund@orrick.com | Counsel to America President Lines, Ltd. And APL Co. Pte Ltd. |
| Orrick, Herrington & Sutcliffe LLP | Frederick D. Holden, Jr., Esq. | 405 Howard Street | | San Francisco | CA | 94105 | | 415-773-5700 | fholden@orrick.com | Counsel to America President Lines, Ltd. And APL Co. Pte Ltd. |
| Orrick, Herrington & Sutcliffe LLP | Raniero D'Aversa, Jr. | 51 West 52nd Street at 6th Avenue | | New York | NY | 10103-0001 | | 212-506-3715 | Rdaversa@orrick.com | Counsel to Bank of America, N.A. |
| Pachulski Stang Ziehl & Jones LLP | Michael R. Seidl | 919 N. Market Street, 17th Floor | P.O. Box 8705 | Wilmington | DE | 19899-8705 | | 302-652-4100 | mseidl@pszjlaw.com | Counsel for Essex Group, Inc. |
| Pachulski Stang Ziehl & Jones LLP | Robert J. Feinstein Ilan D. Scharf | 780 Third Avenue, 36th Floor | | New York | NY | 10017-2024 | | 212-561-7700 | Rfeinstein@pszjlaw.com Ischarf@pszjlaw.com | Counsel for Essex Group, Inc. |
| Patterson Belknap Webb & Tyler LLP | Daniel A. Lowenthal | 1133 Avenue of the Americas | | New York | NY | 10036 | | 212-336-2720 | dalowenthal@pbwt.com | Counsel to American Finance Group, Inc. d/b/a Guaranty Capital Corporation |
| Patterson Belknap Webb & Tyler LLP | David W. Dykhouse Phyllis S. Wallitt | 1133 Avenue of the Americas | | New York | NY | 10036-6710 | | 212-336-2000 | dwdykhouse@pbwt.com | Attorneys for Fry's Metals Inc. and Specialty Coatings Systems Eft |

In re. DPH Holdings Corp., et al.
Case No. 05-44481 (RDD)

Page 16 of 22

8/23/2010 5:50 PM
Email (395)

DPH Holdings Corp.
Post-Emergence 2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Paul H. Spaeth Co. LPA | Paul H. Spaeth | 130 W Second St Ste 450 | | Dayton | OH | 45402 | | 937-223-1655 | spaethlaw@phslaw.com | Attorneys for F&G Multi-Slide Inc and F&G Tool & Die Co. Inc. |
| Paul, Weiss, Rifkind, Wharton & Garrison | Andrew N. Rosenberg | 1285 Avenue of the Americas | | New York | NY | 10019-6064 | | 212-373-3000 | arosenberg@paulweiss.com | Counsel to Merrill Lynch, Pierce, Fenner & Smith, Incorporated |
| Paul, Weiss, Rifkind, Wharton & Garrison | Douglas R. Davis | 1285 Avenue of the Americas | | New York | NY | 10019-6064 | | 212-373-3000 | ddavis@paulweiss.com | Counsel to Noma Company and General Chemical Performance Products LLC |
| Paul, Weiss, Rifkind, Wharton & Garrison | Elizabeth R. McColm | 1285 Avenue of the Americas | | New York | NY | 10019-6064 | | 212-373-3000 | emccolm@paulweiss.com | Counsel to Noma Company and General Chemical Performance Products LLC |
| Peggy Housner | | Cadillac Place | 3030 W. Grand Blvd., Suite 10-200 | Detroit | MI | 48202 | | 313-456-0140 | housnerp@michigan.gov | Assistant Attorney General for State of Michigan, Department of Treasury |
| Penachio Malara LLP | Anne Penachio | 235 Main Street | Suite 600A | White Plains | NY | 10601 | | 914-946-2889 | apenachio@pmlawllp.com | Counsel to UVA Machine Company and its successors by acquisition |
| Pepe & Hazard LLP | Kristin B. Mayhew | 30 Jelliff Lane | | Southport | CT | 06890-1436 | | 203-319-4022 | kmayhew@pepehazard.com | Counsel for Illinois Tool Works Inc., Illinois Tool Works for Hobart Brothers Co., Hobart Brothers Company, ITW Food Equipment Group LLC and Tri-Mark, Inc. |
| Pepper, Hamilton LLP | Francis J. Lawall | 3000 Two logan Square | Eighteenth & Arch Streets | Philadelphia | PA | 19103-2799 | | 215-981-4000 | lawallf@pepperlaw.com | Counsel to Capro, Ltd, Teleflex Automotive Manufacturing Corporation and Teleflex Incorporated d/b/a Teleflex Morse (Capro) |
| Pepper, Hamilton LLP | Henry Jaffe | 1313 Market Street | PO Box 1709 | Wilmington | DE | 19899-1709 | | 302-777-6500 | jaffeh@pepperlaw.com | Counsel to SKF USA, Inc. |
| Pepper, Hamilton LLP | Nina M. Varughese | 3000 Two Logan Square | Eighteenth & Arch Streets | Philadelphia | PA | 19103-2799 | | 215-981-4000 | varughesen@pepperlaw.com | Counsel to Capro, Ltd; Teleflex Automotive Manufacturing Corporation; Teleflex Incorporated; Ametek; Cleo, Inc.; Sierra International, Inc. |
| Pickrel Shaeffer & Ebeling | Sarah B. Carter Esq | 2700 Kettering Tower | | Dayton | OH | 45423-2700 | | 937-223-1130 | scarter@pselaw.com | |
| Pierce Atwood LLP | Jacob A. Manheimer | One Monument Square | | Portland | ME | 04101 | | 207-791-1100 | jmanheimer@pierceatwood.com | Counsel to FCI Canada, Inc.; FCI Electronics Mexido, S. de R.L. de C.V.; FCI USA, Inc.; FCI Brasil, Ltda; FCI Automotive Deutschland Gmbh; FCI Italia S. p.A. |
| Pierce Atwood LLP | Keith J. Cunningham | One Monument Square | | Portland | ME | 04101 | | 207-791-1100 | kcunningham@pierceatwood.com | Counsel to FCI Canada, Inc.; FCI Electronics Mexido, S. de R.L. de C.V.; FCI USA, Inc.; FCI Brasil, Ltda; FCI Automotive Deutschland Gmbh; FCI Italia S. p.A. |
| Pietragallo Bosick & Gordon LLP | Richard J. Parks | 54 Buhl Blvd | | Sharon | PA | 16146 | | 724-981-1397 | rjp@pbandg.com | Counsel to Ideal Tool Company, Inc. |
| Pillsbury Winthrop Shaw Pittman LLP | Karen B. Dine | 1540 Broadway | | New York | NY | 10036-4039 | | 212-858-1000 | karen.dine@pillsburylaw.com | Counsel to Clarion Corporation of America, Hyundai Motor Company and Hyundai Motor America |

DPH Holdings Corp.
Post-Emergence 2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Pillsbury Winthrop Shaw Pittman LLP | Margot P. Erlich | 1540 Broadway | | New York | NY | 10036-4039 | | 212-858-1000 | margot.erlich@pillsburylaw.com | Counsel to MeadWestvaco Corporation, MeadWestvaco South Carolina LLC and MeadWestvaco Virginia Corporation |
| Pillsbury Winthrop Shaw Pittman LLP | Mark D. Houle | 650 Town Center Drive | Ste 550 | Costa Mesa | CA | 92626-7122 | | 714-436-6800 | mark.houle@pillsburylaw.com | Counsel to Clarion Corporation of America, Hyundai Motor Company and Hyundai Motor America |
| Pillsbury Winthrop Shaw Pittman LLP | Richard L. Epling | 1540 Broadway | | New York | NY | 10036-4039 | | 212-858-1000 | richard.epling@pillsburylaw.com | Counsel to MeadWestvaco Corporation, MeadWestvaco South Carolina LLC and MeadWestvaco Virginia Corporation |
| Pillsbury Winthrop Shaw Pittman LLP | Robin L. Spear | 1540 Broadway | | New York | NY | 10036-4039 | | 212-858-1000 | robin.spear@pillsburylaw.com | Counsel to MeadWestvaco Corporation, MeadWestvaco South Carolina LLC and MeadWestvaco Virginia Corporation |
| Porzio, Bromberg & Newman, P.C. | Brett S. Moore, Esq. | 100 Southgate Parkway | P.O. Box 1997 | Morristown | NJ | 07960 | | 973-538-4006 | bsmoore@pbnlaw.com | |
| Porzio, Bromberg & Newman, P.C. | John S. Mairo, Esq. | 100 Southgate Parkway | P.O. Box 1997 | Morristown | NJ | 07960 | | 973-538-4006 | jsmairo@pbnlaw.com | Counsel to Neuman Aluminum Automotive, Inc. and Neuman Aluminum Impact Extrusion, Inc. |
| Previant, Goldberg, Uelman, Gratz, Miller & Brueggeman, S.C. | Jill M. Hartley and Marianne G. Robbins | 1555 N. RiverCenter Drive | Suite 202 | Milwaukee | WI | 53212 | | 414-271-4500 | jh@previant.com  mgr@previant.com | Counsel to International Brotherood of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10 |
| PriceWaterHouseCoopers | Enrique Bujidos | Almagro | 40 | Madrid | | 28010 | Spain | 34 915 684 356 | enrique.bujidos@es.pwc.com | Representative to DASE |
| QAD, Inc. | Stephen Tyler Esq | 10,000 Midlantic Drive | Suite 100 West | Mt. Laurel | NJ | 08054 | | 856-840-2870 | xst@qad.com | Counsel to QAD, Inc. |
| Quarles & Brady LLP | Kasey C. Nye | One South Church Street | | Tucson | AZ | 85701 | | 520-770-8717 | knye@quarles.com | Counsel to Offshore International, Inc.; Maquilas Teta Kawi, S.A. de C.V.; On Semiconductor Corporation; Flambeau Inc. |
| Quarles & Brady LLP | Roy Prange | 33 E Main St Ste 900 | | Madison | WI | 53703-3095 | | 608-283-2485 | rlp@quarles.com | Counsel for Flambeau Inc. |
| Reed Smith | Ann Pille | 10 South Wacker Drive | | Chicago | IL | 60606 | | 312-207-1000 | apille@reedsmith.com | Counsel to Infineon; Infineon Technologies |
| Republic Engineered Products, Inc. | Joseph A Kaczka | 3770 Embassy Parkway | | Akron | OH | 44333 | | 330-670-3215 | jkaczka@republicengineered.com | Counsel to Republic Engineered Products, Inc. |
| Riddell Williams P.S. | Joseph E. Shickich, Jr. | 1001 4th Ave. | Suite 4500 | Seattle | WA | 98154-1195 | | 206-624-3600 | jshickich@riddellwilliams.com | Counsel to Microsoft Corporation; Microsoft Licensing, GP |
| Rieck and Crotty PC | Jerome F Crotty | 55 West Monroe Street | Suite 3390 | Chicago | IL | 60603 | | 312-726-4646 | jcrotty@rieckcrotty.com | Counsel to Mary P. O'Neill and Liam P. O'Neill |
| Russell Reynolds Associates, Inc. | Charles E. Boulbol, P.C. | 26 Broadway, 17th Floor | | New York | NY | 10004 | | 212-825-9457 | rtrack@msn.com | Counsel to Russell Reynolds Associates, Inc. |
| Satterlee Stephens Burke & Burke LLP | Christopher R. Belmonte | 230 Park Avenue | | New York | NY | 10169 | | 212-818-9200 | cbelmonte@ssbb.com | Counsel to Moody's Investors Service |

In re. DPH Holdings Corp., et al.
Case No. 05-44481 (RDD)

Page 18 of 22

8/23/2010 5:50 PM
Email (395)

DPH Holdings Corp.
Post-Emergence 2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Satterlee Stephens Burke & Burke LLP | Pamela A. Bosswick | 230 Park Avenue | | New York | NY | 10169 | | 212-818-9200 | pbosswick@ssbb.com | Counsel to Moody's Investors Service |
| Satterlee Stephens Burke & Burke LLP | Roberto Carrillo | 230 Park Avenue | Suite 1130 | New York | NY | 10169 | | 212-818-9200 | rcarrillo@ssbb.com | Attorney's for Tecnomec S.r.L. |
| Schafer and Weiner PLLC | Daniel Weiner | 40950 Woodward Ave. | Suite 100 | Bloomfield Hills | MI | 48304 | | 248-540-3340 | dweiner@schaferandweiner.com | Counsel to Dott Industries, Inc. |
| Schafer and Weiner PLLC | Howard Borin | 40950 Woodward Ave. | Suite 100 | Bloomfield Hills | MI | 48304 | | 248-540-3340 | hborin@schaferandweiner.com | Counsel to Dott Industries, Inc. |
| Schafer and Weiner PLLC | Michael R Wernette | 40950 Woodward Ave. | Suite 100 | Bloomfield Hills | MI | 48304 | | 248-540-3340 | mwernette@schaferandweiner.com | Counsel to Dott Industries, Inc. |
| Schafer and Weiner PLLC | Ryan Heilman | 40950 Woodward Ave. | Suite 100 | Bloomfield Hills | MI | 48304 | | 248-540-3340 | shellie@schaferandweiner.com rheilman@schaferandweiner.com | Counsel to Dott Industries, Inc. |
| Schiff Hardin LLP | Eugene J. Geekie, Jr. | 7500 Sears Tower | | Chicago | IL | 60606 | | 312-258-5635 | egeekie@schiffhardin.com | Counsel to  Means Industries |
| Schulte Roth & Zabel LLP | David J. Karp | 919 Third Avenue | | New York | NY | 10022 | | 212-756-2000 | david.karp@srz.com | Counsel to Parnassus Holdings II, LLC and Platinum Equity Capital Partners II, LP |
| Schulte Roth & Zabel LLP | James T. Bentley | 919 Third Avenue | | New York | NY | 10022 | | 212-756-2273 | james.bentley@srz.com | Counsel to Panasonic Automotive Systems Company of America |
| Schulte Roth & Zabel LLP | Michael L. Cook | 919 Third Avenue | | New York | NY | 10022 | | 212-756-2000 | michael.cook@srz.com | Counsel to Panasonic Automotive Systems Company of America; D.C. Capital Partners, L.P. |
| Schwartz Lichtenberg LLP | Barry E Lichtenberg Esq | 420 Lexington Ave Ste 2400 | | New York | NY | 10170 | | 212-389-7818 | barryster@att.net | Counsel to Marybeth Cunningham |
| Seyfarth Shaw LLP | Paul M. Baisier, Esq. | 1545 Peachtree Street, N.E. | Suite 700 | Atlanta | GA | 30309-2401 | | 404-885-1500 | pbaisier@seyfarth.com | Counsel to Murata Electronics North America, Inc.; Fujikura America, Inc. |
| Seyfarth Shaw LLP | Robert W. Dremluk | 620 Eighth Ave | | New York | NY | 10018-1405 | | 212-218-5500 | rdremluk@seyfarth.com | Counsel to Murata Electronics North America, Inc.; Fujikura America, Inc. |
| Seyfarth Shaw LLP | William J. Hanlon | World Trade Center East | Two Seaport Lane, Suite 300 | Boston | MA | 02210 | | 617-946-4800 | whanlon@seyfarth.com | Counsel to  le Belier/LBQ Foundry S.A. de C.V. |
| Shaw Gussis Fishman Glantz Wolfson & Towbin LLC | Brian L Shaw | 321 N. Clark St. | Suite 800 | Chicago | IL | 60654 | | 312-541-0151 | bshaw100@shawgussis.com | Counsel to ATC Logistics & Electronics, Inc. |
| Sheehan Phinney Bass + Green Professional Association | Bruce A. Harwood | 1000 Elm Street | P.O. Box 3701 | Manchester | NH | 03105-3701 | | 603-627-8139 | bharwood@sheehan.com | Counsel to Source Electronics, Inc. |
| Sheldon S. Toll PLLC | Sheldon S. Toll | 2000 Town Center | Suite 2550 | Southfield | MI | 48075 | | 248-358-2460 | lawtoll@comcast.net | Counsel to Milwaukee Investment Company |
| Sheppard Mullin Richter & Hampton LLP | Eric Waters | 30 Rockefeller Plaza | 24th Floor | New York | NY | 10112 | | 212-332-3800 | ewaters@sheppardmullin.com | Counsel to Gary Whitney |
| Sheppard Mullin Richter & Hampton LLP | Malani J. Sternstein | 30 Rockefeller Plaza | 24th Floor | New York | NY | 10112 | | 212-332-3800 | msternstein@sheppardmullin.com | Counsel to International Rectifier Corp. and Gary Whitney |
| Sheppard Mullin Richter & Hampton LLP | Theodore A. Cohen | 333 South Hope Street | 48th Floor | Los Angeles | CA | 90071 | | 213-620-1780 | tcohen@sheppardmullin.com | Counsel to Gary Whitney |
| Sheppard Mullin Richter & Hampton LLP | Theresa Wardle | 333 South Hope Street | 48th Floor | Los Angeles | CA | 90071 | | 213-620-1780 | twardle@sheppardmullin.com | Counsel to International Rectifier Corp. |
| Sher, Garner, Cahill, Richter, Klein & Hilbert, LLC | Robert P. Thibeaux | 5353 Essen Lane | Suite 650 | Baton Rouge | LA | 70809 | | 225-757-2185 | rthibeaux@shergarner.com | Counsel to Gulf Coast Bank & Trust Company |

In re. DPH Holdings Corp., et al.
Case No. 05-44481 (RDD)

Page 19 of 22

8/23/2010 5:50 PM
Email (395)

DPH Holdings Corp.
Post-Emergence 2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Sher, Garner, Cahill, Richter, Klein & Hilbert, LLC | Robert P. Thibeaux | 909 Poydras Street | 28th Floor | New Orleans | LA | 70112-1033 | | 504-299-2100 | rthibeaux@shergarner.com | Counsel to Gulf Coast Bank & Trust Company |
| Shipman & Goodwin LLP | Kathleen M. LaManna | One Constitution Plaza | | Hartford | CT | 06103-1919 | | 860-251-5603 | bankruptcy@goodwin.com | |
| Sills, Cummis Epstein & Gross, P.C. | Andrew H. Sherman | 30 Rockefeller Plaza | | New York | NY | 10112 | | 212-643-7000 | asherman@sillscummis.com | Counsel to Hewlett-Packard Financial Services Company |
| Sills, Cummis Epstein & Gross, P.C. | Jack M. Zackin | 30 Rockefeller Plaza | | New York | NY | 10112 | | 212-643-7000 | jzackin@sillscummis.com | Counsel to Hewlett-Packard Financial Services Company |
| Sills, Cummis Epstein & Gross, P.C. | Valerie A Hamilton Simon Kimmelman | 650 College Rd E | | Princeton | NJ | 08540 | | 609-227-4600 | vhamilton@sillscummis.com skimmelman@sillscummis.com | Counsel to Doosan Infracore America Corp. |
| Silver Point Capital, L.P. | Chaim J. Fortgang | Two Greenwich Plaza | 1st Floor | Greenwich | CT | 06830 | | 203-542-4216 | cfortgang@silverpointcapital.com | Counsel to Silver Point Capital, L.P. |
| Smith, Katzenstein & Furlow LLP | Kathleen M. Miller | 800 Delaware Avenue, 7th Floor | P.O. Box 410 | Wilmington | DE | 19899 | | 302-652-8400 | kmiller@skfdelaware.com | Counsel to Airgas, Inc. |
| Sonnenschein Nath & Rosenthal LLP | D. Farrington Yates | 1221 Avenue of the Americas | 24th Floor | New York | NY | 10020 | | 212-768-6700 | fyates@sonnenschein.com | Counsel to Molex, Inc. and INA USA, Inc. and United Plastics Group |
| Sonnenschein Nath & Rosenthal LLP | Monika J. Machen | 8000 Sears Tower | 233 South Wacker Drive | Chicago | IL | 60606 | | 312-876-8000 | mmachen@sonnenschein.com | Counsel to United Plastics Group |
| Sonnenschein Nath & Rosenthal LLP | Oscar N. Pinkas | 1221 Avenue of the Americas | 24th Floor | New York | NY | 10020 | | 212-768-6700 | opinkas@sonnenschein.com | Counsel to Schaeffler Canada, Inc. and Schaeffler KG |
| Sonnenschein Nath & Rosenthal LLP | Robert E. Richards | 7800 Sears Tower | 233 South Wacker Drive | Chicago | IL | 60606 | | 312-876-8000 | rrichards@sonnenschein.com | Counsel to Molex, Inc. and INA USA, Inc.; Counsel to Schaeffler Canada, Inc. and Schaeffler KG |
| Squire, Sanders & Dempsey L.L.P. | G. Christopher Meyer | 4900 Key Tower | 127 Public Sq | Cleveland | OH | 44114 | | 216-479-8692 | cmeyer@ssd.com | Counsel to Furukawa Electric Co., Ltd.; Counsel for the City of Dayton, Ohio |
| State of California Office of the Attorney General | Sarah E. Morrison | Deputy Attorney General | 300 South Spring Street Ste 1702 | Los Angeles | CA | 90013 | | 213-897-2640 | sarah.morrison@doj.ca.gov | Attorneys for the State of California Department of Toxic Substances Control |
| State of Michigan Department of Labor & Economic Growth, Unemployment Insurance Agency | Roland Hwang Assistant Attorney General | 3030 W. Grand Boulevard | Suite 9-600 | Detroit | MI | 48202 | | 313-456-2210 | hwangr@michigan.gov | Assistant Attorney General for State of Michigan, Unemployment Tax Office of the Department of Labor & Economic Growth, Unemployment Insurance Agency |
| State of Michigan Labor Division | Susan Przekop-Shaw | PO Box 30736 | | Lansing | MI | 48909 | | 517-373-2560 | przekopshaws@michigan.gov | Assistant Attorney General as Attorney for the Michigan Workers' Compensation Agency |
| Steel Technologies, Inc. | John M. Baumann | 15415 Shelbyville Road | | Louisville | KY | 40245 | | 502-245-0322 | jmbaumann@steeltechnologies.com | Counsel to Steel Technologies, Inc. |
| Sterns & Weinroth, P.C. | Michael A Spero Simon Kimmelman Valerie A Hamilton | 50 West State Street, Suite 1400 | PO Box 1298 | Trenton | NJ | 08607-1298 | | 609-392-2100 | jspecf@sternslaw.com | Counsel to Doosan Infracore America Corp. |
| Stevens & Lee, P.C. | Constantine D. Pourakis, Esq. | 485 Madison Avenue | 20th Floor | New York | NY | 10022 | | 212-319-8500 | cp@stevenslee.com | Counsel to Tonolli Canada Ltd.; VJ Technologies, Inc. and V.J. ElectroniX, Inc. |
| Stinson Morrison Hecker LLP | Mark A. Shaiken | 1201 Walnut Street | | Kansas City | MO | 64106 | | 816-842-8600 | mshaiken@stinsonmoheck.com | Counsel to Thyssenkrupp Waupaca, Inc. and Thyssenkrupp Stahl Company |

In re. DPH Holdings Corp., et al.
Case No. 05-44481 (RDD)

Page 20 of 22

8/23/2010 5:50 PM
Email (395)

DPH Holdings Corp.
Post-Emergence 2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Stites & Harbison PLLC | Madison L.Cashman | 424 Church Street | Suite 1800 | Nashville | TN | 37219 | | 615-244-5200 | robert.goodrich@stites.com | Counsel to Setech, Inc. |
| Stites & Harbison PLLC | Robert C. Goodrich, Jr. | 424 Church Street | Suite 1800 | Nashville | TN | 37219 | | 615-244-5200 | madison.cashman@stites.com | Counsel to Setech, Inc. |
| Stites & Harbison, PLLC | W. Robinson Beard, Esq. | 400 West Market Street | | Louisville | KY | 40202 | | 502-681-0448 502-587-3400 | wbeard@stites.com loucourtsum@stites.com | Counsel to WAKO Electronics (USA), Inc.,Ambrake Corporation, and Akebona Corporation (North America) |
| Stutman Treister & Glatt Professional Corporation | Christine M. Pajak Eric D. Goldberg Isaac M. Pachulski Esq Jeffrey H Davidson Esq | 1901 Avenue of the Stars | 12th Floor | Los Angeles | CA | 90067 | | 310-228-5600 | cpajak@stutman.com egoldberg@stutman.com ipachulski@stutman.com jdavidson@stutman.com | Counsel to CR Intrinsic Investors, LLC, Eliot Associates, L.P., Highland Capital Management, L.P. |
| Taft, Stettinius & Hollister LLP | Richard L .Ferrell | 425 Walnut Street | Suite 1800 | Cincinnati | OH | 45202-3957 | | 513-381-2838 | ferrell@taftlaw.com | Counsel to Wren Industries, Inc. |
| Taft, Stettinius & Hollister LLP | W Timothy Miller Esq | 425 Walnut Street | Suite 1800 | Cincinnati | OH | 45202 | | 513-381-2838 | miller@taftlaw.com | Counsel to Select Industries Corporation and Gobar Systems, Inc. |
| Teitelbaum & Baskin LLP | Jay Teitelbaum Ron Baskin | 3 Barker Avenue | 3rd Floor | White Plains | NY | 10601 | | 914-437-7670 | jteitelbaum@tblawllp.com rbaskin@tblawllp.com | Counsel to Mary H. Schaefer |
| Tennessee Department of Revenue | Marvin E. Clements, Jr. | c/o TN Attorney General's Office, Bankruptcy Division | PO Box 20207 | Nashville | TN | 37202-0207 | | 615-532-2504 | agbanknewyork@ag.tn.gov | Tennesse Department of Revenue |
| Thacher Proffitt & Wood LLP | Jonathan D. Forstot | Two World Financial Center | | New York | NY | 10281 | | 212-912-7679 | jforstot@tpw.com | Counsel to TT Electronics, Plc |
| Thacher Proffitt & Wood LLP | Louis A. Curcio | Two World Financial Center | | New York | NY | 10281 | | 212-912-7607 | lcurcio@tpw.com | Counsel to TT Electronics, Plc |
| The Furukawa Electric Co., Ltd. | Mr. Tetsuhiro Niizeki | 6-1 Marunouchi | 2-Chrome, Chiyoda-ku | Tokyo | Japan | 100-8322 | | | niizeki.tetsuhiro@furukawa.co.jp | Legal Department of The Furukawa Electric Co., Ltd. |
| The Timpken Corporation BIC - 08 | Robert Morris | 1835 Dueber Ave. SW | PO Box 6927 | Canton | OH | 44706-0927 | | 330-438-3000 | robert.morris@timken.com | Representative for Timken Corporation |
| Thompson & Knight | Rhett G. Cambell | 333 Clay Street | Suite 3300 | Houston | TX | 77002 | | 713-654-1871 | rhett.campbell@tklaw.com | Counsel to STMicroelectronics, Inc. |
| Thompson & Knight LLP | Ira L. Herman | 919 Third Avenue | 39th Floor | New York | NY | 10022-3915 | | 212-751-3045 | ira.herman@tklaw.com | Counsel to Victory Packaging |
| Thompson & Knight LLP | John S. Brannon | 1700 Pacific Avenue | Suite 3300 | Dallas | TX | 75201-4693 | | 214-969-1505 | john.brannon@tklaw.com | Counsel to Victory Packaging |
| Thompson Coburn Fagel Haber | Lauren Newman | 55 East Monroe | 40th Floor | Chicago | IL | 60603 | | 312-346-7500 | lnewman@tcfhlaw.com | Counsel to Aluminum International, Inc. |
| Thompson Coburn LLP d/b/a Thompson Coburn Fagel Haber | Dennis E. Quaid Esq | 55 E Monroe 37th Fl | | Chicago | IL | 60603 | | 312-580-2215 | dquaid@thompsoncoburn.com | Counsel for Penn Aluminum International Inc |
| Thompson Hine LLP | Jennifer L Maffett | 2000 Courthouse Plaza NE | 10 W Second St | Dayton | OH | 45402 | | 937-443-6600 | Jennifer.Maffett@ThompsonHine.com | Counsel to Rieck Group, LLC n/k/a Mechanical Construction Managers, LLC |
| TI Group Automotive Systms LLC | Timothy M. Guerriero | 12345 E Nine Mile Rd | | Warren | MI | 48089 | | 586-755-8066 | tguerriero@us.tiauto.com | General Counsel and Company Secretary to TI Group Automotive Systems LLC |
| Todd & Levi, LLP | Jill Levi, Esq. | 444 Madison Avenue | Suite 1202 | New York | NY | 10022 | | 212-308-7400 | jlevi@toddlevi.com | Counsel to Bank of Lincolnwood |
| Todtman Nachamie Spizz & Johns PC | Janice B. Grubin | 425 Park Avenue | 5th Floor | New York | NY | 10022 | | 212-754-9400 | jgrubin@tnsj-law.com | Counsel to Vanguard Distributors, Inc. |
| U.S. Department of Justice | Matthew L Schwartz Joseph N Cordaro | Assistant United States Attorneys | 86 Chambers St 3rd Fl | New York | NY | 10007 | | 212-637-1945 | matthew.schwartz@usdoj.gov Joseph.Cordaro@usdoj.gov | Counsel to Enviromental Protection Agency; Internal Revenue Service; Department of Health and Human Services; and Customs and Border Protection |
| Underberg & Kessler, LLP | Helen Zamboni | 300 Bausch & Lomb Place | | Rochester | NY | 14604 | | 585-258-2800 | hzamboni@underbergkessler.com | Counsel to McAlpin Industries, Inc. |
| Union Pacific Railroad Company | Mary Ann Kilgore | 1400 Douglas Street | MC 1580 | Omaha | NE | 68179 | | 402-544-4195 | mkilgore@UP.com | Counsel to Union Pacific Railroad Company |

DPH Holdings Corp.
Post-Emergence 2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| United Steel, Paper and Forestry, Rubber, Manufacturing, Energy | Allied Industrial and Service Workers, Intl Union (USW), AFL-CIO David Jury, Esq. | | Five Gateway Center Suite 807 | Pittsburgh | PA | 15222 | | 412-562-2546 | djury@usw.org | Counsel to United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers, International Union (USW), AFL-CIO |
| Vorys, Sater, Seymour and Pease LLP | Tiffany Strelow Cobb | 52 East Gay Street | | Columbus | OH | 43215 | | 614-464-8322 | tscobb@vorys.com | Counsel to America Online, Inc. and its Subsidiaries and Affiliates |
| Wachtell, Lipton, Rosen & Katz | Richard G. Mason | 51 West 52nd Street | | New York | NY | 10019-6150 | | 212-403-1000 | RGMason@wlrk.com | Counsel to Capital Research and Management Company |
| Warner Norcross & Judd LLP | Gordon J. Toering | 900 Fifth Third Center | 111 Lyon Street, N.W. | Grand Rapids | MI | 49503 | | 616-752-2185 | gtoering@wnj.com | Counsel to Robert Bosch Corporation; Counsel to Daewoo International Corp and Daewoo International (America) Corp |
| Warner Norcross & Judd LLP | Michael G. Cruse | 2000 Town Center | Suite 2700 | Southfield | MI | 48075 | | 248-784-5131 | mcruse@wnj.com | Counsel to Compuware Corporation |
| Warner Norcross & Judd LLP | Stephen B. Grow | 900 Fifth Third Center | 111 Lyon Street, N.W. | Grand Rapids | MI | 49503 | | 616-752-2158 | growsb@wnj.com | Counsel to Behr Industries Corp. |
| Weltman, Weinberg & Reis Co., L.P.A. | Geoffrey J. Peters | 175 South Third Street | Suite 900 | Columbus | OH | 43215 | | 614-857-4326 | gpeters@weltman.com | Counsel to Seven Seventeen Credit Union |
| White & Case LLP | Glenn Kurtz Gerard Uzzi Douglas Baumstein | 1155 Avenue of the Americas | | New York | NY | 10036-2787 | | 212-819-8200 | gkurtz@ny.whitecase.com guzzi@whitecase.com dbaumstein@ny.whitecase.com | Counsel to Appaloosa Management, LP |
| White & Case LLP | Thomas Lauria Frank Eaton | Wachovia Financial Center | 200 South Biscayne Blvd., Suite 4900 | Miami | FL | 33131 | | 305-371-2700 | tlauria@whitecase.com featon@miami.whitecase.com | Counsel to Appaloosa Management, LP |
| Whyte, Hirschboeck Dudek S.C. | Bruce G. Arnold | 555 East Wells Street | Suite 1900 | Milwaukee | WI | 53202-4894 | | 414-273-2100 | barnold@whdlaw.com | Counsel to Schunk Graphite Technology |
| Wickens Herzer Panza Cook & Batista Co | James W Moennich Esq | 35765 Chester Rd | | Avon | OH | 44011-1262 | | 440-930-8000 | jmoennich@wickenslaw.com | Counsel for Delphi Sandusky ESOP |
| Winston & Strawn LLP | David Neier Carey D. Schreiber | 200 Park Avenue | | New York | NY | 10166-4193 | | 212-294-6700 | dneier@winston.com cschreiber@winston.com | Counsel to Ad Hoc Group of Tranche A & B DIP Lenders |
| Winthrop Couchot Professional Corporation | Marc. J. Winthrop | 660 Newport Center Drive | 4th Floor | Newport Beach | CA | 92660 | | 949-720-4100 | mwinthrop@winthropcouchot.com | Counsel to Metal Surfaces, Inc. |
| Winthrop Couchot Professional Corporation | Sean A. O'Keefe | 660 Newport Center Drive | 4th Floor | Newport Beach | CA | 92660 | | 949-720-4100 | sokeefe@winthropcouchot.com | Counsel to Metal Surfaces, Inc. |
| Womble Carlyle Sandridge & Rice, PLLC | Allen Grumbine | 550 South Main St | | Greenville | SC | 29601 | | 864-255-5402 | agrumbine@wcsr.com | Counsel to Armacell |
| Womble Carlyle Sandridge & Rice, PLLC | Michael G. Busenkell | 222 Delaware Avenue | Suite 1501 | Wilmington | DE | 19801 | | | mbusenkell@wcsr.com | Counsel to Chicago Miniature Optoelectronic Technologies, Inc. |
| Woods Oviatt Gilman LLP | Ronald J. Kisinski | 700 Crossroads Bldg | 2 State St | Rochester | NY | 14614 | | 585-362-4514 | rkisicki@woodsoviatt.com | |
| Zeichner Ellman & Krause LLP | Stuart Krause | 575 Lexington Avenue | | New York | NY | 10022 | | 212-223-0400 | skrause@zeklaw.com | Counsel to Toyota Tsusho America, Inc. |

In re. DPH Holdings Corp., et al.
Case No. 05-44481 (RDD)

Page 22 of 22

8/23/2010 5:50 PM
Email (395)

# EXHIBIT B

DPH Holdings Corp.
Post-Emergence Master Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|
| United States Trustee | Brian Masumoto | 33 Whitehall Street | 21st Floor | New York | NY | 10004-2112 | 212-510-0500 | Counsel to United States Trustee |

In re. DPH Holdings Corp., et al.
Case No. 05-44481 (RDD)

Page 1 of 1

8/23/2010 5:52 PM
Post-Emergence Master Service List 100820.xlsx US Mail (1)

# EXHIBIT C

**Hearing Date and Time:  September 24, 2010 at 10:00 a.m. (prevailing Eastern time)**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
155 North Wacker Drive
Chicago, Illinois 60606
John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler


    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036

Attorneys for DPH Holdings Corp., et al.,
   Reorganized Debtors

DPH Holdings Corp. Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

DPH Holdings Corp. Legal Information Website:
http://www.dphholdingsdocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - -  -  x
                               :
       In re                      :     Chapter 11
                                 :
DPH HOLDINGS CORP., et al.,     :     Case Number 05-44481 (RDD)
                                 :
                                 :     (Jointly Administered)
                Reorganized Debtors.     :
                                 :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x


REORGANIZED DEBTORS' RESPONSE TO THE SUPPLEMENTAL BRIEF OF
ILLINOIS TOOL WORKS, INC. AND ITW FOOD EQUIPMENT GROUP LLC
IN SUPPORT OF CLAIM NOS. 11983, 11985, 11988, AND 11989

DPH Holdings Corp. and certain of its affiliated reorganized debtors in the above-captioned cases (collectively, the "Reorganized Debtors") hereby submit the Reorganized Debtors' Response To The Supplemental Brief Of Illinois Tool Works, Inc. And ITW Food Equipment Group LLC In Support Of Claim Nos. 11983, 11985, 11988, And 11989, and respectfully represent as follows:

### Preliminary Statement

1.      This matter is before the Court on the Reorganized Debtors' objection to proofs of claim numbers 11983, 11985, 11988, and 11989 (the "Claims") filed by Illinois Tool Works, Inc. and  ITW Food Equipment Group LLC (collectively, "ITW") relating to environmental contamination at the South Dayton Dump and Landfill in Ohio (the "Site").

2.      The Reorganized Debtors objected to the Claims on the grounds that the Debtors have no liability at the Site because the Site ceased accepting wastes for the disposal before the Debtors were formed as part of the divestiture by General Motors Corporation ("General Motors") of its Delphi Automotive Systems unit (the "Divestiture").  ITW attempts to avoid the fact that the Debtors did not exist when the Site operated by arguing that discovery will prove that the Debtors are liable as the successor to General Motors.  However, no amount of discovery will change the incontrovertible fact that, after the Divestiture,  General Motors continued to exist as an independent company with the majority of its assets and liabilities unaffected by the Divestiture.  This refutes ITW's arguments regarding successor liability in their entirety and leaves ITW with no valid claim against the Debtors.  Furthermore, no matter how ITW characterizes its claim against the Debtors, it is fundamentally a contingent claim for reimbursement of costs for which ITW is liable and therefore the claim must be disallowed under section 502(e)(1)(B) of the Bankruptcy Code.

2

## Argument

**I.    The Debtors Are Not the Successor to General Motors As a Matter of Law.**

3.    ITW's argument that the Debtors are the successors to General Motors is fundamentally flawed for two reasons.  First, ITW would have this Court apply Ohio law when, under New York choice of law principles,[1] Delaware law governs the question of corporate successorship in this case.  Second, ITW can prove no set of facts that would establish that the Divesture was a de facto merger, that ITW is a third-party beneficiary to the now-terminated contract between General Motors and the Debtors regarding the assumption and retention of environmental liabilities, or that the Debtors were a mere continuation of General Motors.  This is true under both Delaware and Ohio law, and therefore ITW has no valid claim against the Debtors.

**A.    Delaware Law Governs Whether the Debtors are the Corporate Successors to General Motors.**

4.    ITW contends that Ohio law governs its successor liability claims because the Site is located in Ohio and New York courts decide choice of law questions based on the *lex loci* test for tort claims.  Supplemental Brief Of Illinois Tool Works, Inc. And ITW Food Equipment Group LLC In Support Of Claim Nos. 11983, 11985, 11988 And 11989 ("ITW Supplemental Brief") ¶ 25 n.1.  The question of whether the Debtors are the corporate successors to General Motors, however, is not a matter of tort law and hence the *lex loci* test is irrelevant.  Instead, as the Southern District of New York has held, under the "paramount interest" test, the state of incorporation has the greatest interest in resolving questions of corporate successor

---

[1]    The Debtors agree with ITW that a federal court exercising bankruptcy jurisdiction over state law claims should apply the choice of law rules of the forum state. ITW Supplemental Brief ¶ 25 n.1; <u>see</u> <u>Adelphia Commc'ns Corp. v. Bank of America</u>, 365 B.R. 24, 26 (Bankr. S.D.N.Y. 2007).

liability. <u>Soviet Pan Am Travel Effort v. Travel Comm., Inc.</u>, 756 F.Supp. 126, 131 (S.D.N.Y.

1991). Accordingly, since both General Motors and Delphi are Delaware corporations,

Delaware state law governs whether Debtors are corporate successors to General Motors, not

Ohio law.

5.    Ultimately, however, the choice of law question need not be resolved as

ITW cannot, as a matter of law, establish that the Debtors are the corporate successors to General

Motors under either Delaware or Ohio law.

**B.    The Divestiture Was Not a _De Facto_ Merger Between the Debtors and General Motors.**

6.    ITW first tries to establish that the Debtors are successors to General

Motors by arguing that the Divestiture was a _de facto_ merger. This argument fails under either

Delaware or Ohio law. To establish a _de facto_ merger under Delaware law, a plaintiff must show

that: (1) the seller transferred all of its assets to the buyer; (2) payment was made in stock with

the buyer issuing its stock directly to the stockholders of the seller; and (3) the buyer agreed to

assume all debts and liabilities of the seller. <u>Xperex Corp. v. Viasystems Techs. Corp., LLC</u>,

2004 Del. Ch. LEXIS 172, *4-5 (Del. Ch. July 22, 2004); <u>see</u> <u>also</u> <u>Drug, Inc. v. Hunt</u>, 168 A. 87,

96 (Del. 1933).

7.    There can be no dispute that General Motors did not transfer all of its

assets to the Debtors; plainly, General Motors continued to own and operate assets after the

Divestiture. Furthermore, the terms of the Master Separation Agreement, pursuant to which the

Divestiture occurred, make clear that only certain of General Motors' assets were transferred to

the Debtors. <u>See</u> Master Separation Agreement Among General Motors Corporation, Delphi

Automotive Systems Corporation, Delphi Automotive Systems LLC, Delphi Technologies, Inc.

4

and Delphi Automotive Systems (Holding), Inc. (the "MSA") § 2.01.[2]  Accordingly, ITW cannot

prove the first element required for a *de facto* merger under Delaware law and its arguments

must be rejected.

    8.   Moreover, ITW concedes that it cannot meet the third element for a *de*

*facto* merger by acknowledging that the Debtors agreed to assume only "<u>certain</u> environmental

liabilities of General Motors."  ITW Supplemental Brief at ¶ 31 (emphasis added).  By ITW's

own admission, the Debtors did not assume all of General Motors' environmental liabilities, let

alone all of its liabilities generally.  For example, the MSA provides that General Motors

retained certain liabilities associated with its Delphi Automotive Systems unit, including certain

product liability claims, identified general litigation claims, and employment-related claims.

MSA §§ 7.01, 7.02, 7.03.  Furthermore, as ITW concedes, the Debtors did not even assume all of

the environmental liabilities associated with the Delphi business unit of General Motors.  Rather,

the Debtors and General Motors entered into the Environmental Matters Agreement by and

between General Motors Corporation and Delphi Automotive Systems Corporation (the

"EMA")[3] which allocated such liabilities between the parties.  Specifically, General Motors

retained all liabilities associated with third-party waste disposal sites that were attributable to the

transferred assets to the extent such liabilities were known at the time of the Divestiture.  EMA ¶

2.3.  Accordingly, because General Motors retained a significant portion of the liabilities

associated with its former Delphi business unit, ITW simply cannot prove the third element

necessary for a *de facto* merger under Delaware law.

---

[2]  The MSA was attached as Exhibit D to Reorganized Debtors' Supplemental Reply To Responses Of Certain
Claimants To Debtors' Objections To Proofs Of Claim Nos. 11983, 11985, 11988, And 11989 Filed By Illinois
Tool Works Inc. And ITW Food Equipment Group LLC (Docket No. 19603) (the "Reorganized Debtors'
Supplemental Reply").

[3]  The EMA was attached as Exhibit E to the Reorganized Debtors' Supplemental Reply.

9.    The same result is reached applying Ohio law.  As ITW acknowledges, a *de facto* merger under Ohio law requires: "(1) the continuation of the previous business activity and corporate personnel, (2) a continuity of shareholders resulting from a sale of assets in exchange for stock, (3) the immediate or rapid dissolution of the predecessor corporation, and (4) the assumption by the purchasing corporation of all liabilities and obligations ordinarily necessary to continue the predecessor's business operations."  ITW Supplemental Brief ¶ 28; citing Welco Indus. Inc. v. Applied Cos., 617 N.E.2d 1129, 1134 (Ohio 1993).

10.    To support the first element, ITW asserts that the Debtors had "a continuity of management and personnel" following the Divestiture.  ITW Supplemental Brief ¶ 30.  The Debtors strongly dispute these facts and any assertion that the second element is satisfied, but the Court need not consider such facts because, as a matter of law, ITW cannot prove the third and fourth elements of a *de facto* merger under Ohio law.   In fact, ITW concedes that the Divestiture does not meet the third requirement by recognizing that "obviously General Motors did not cease its operations as result of the divestiture."  Id. at ¶ 30.  ITW argues that this crucial fact is irrelevant because General Motors ceased the operations previously conducted by its Delphi Automotive Systems unit after the Divestiture.  Id.  But, dissolution of a corporation is entirely different from ceasing particular operations, and ITW's argument has already been rejected by Ohio courts and by federal courts applying Ohio law.  In Welco, for example, the Ohio Supreme Court held that the sale of the assets of a division is not a *de facto* merger even when the seller ceases all operations associated with that division as long as the selling corporate entity continues to exist after the transaction. 617 N.E.2d at 1134.  Consistent with this, the Ohio Court of Appeals has held that the *de facto* merger doctrine "presupposes that the predecessor corporation no longer exists."  Telxon Corp. v. Smart Media of Del., Inc., 2005 Ohio 4931, slip

6

op. at *50 (Ohio Ct. App. 2005). Likewise, the Third Circuit has noted that a critical element of
the *de facto* merger test under Ohio Law "is that one corporation survives while the other ceases
to exist." Berg Chilling Sys., Inc. v. Hull Corp., 435 F.3d 455, 470 (3d Cir. 2006). In Berg, the
court held that there was no *de facto* merger resulting from the sale of the assets of a corporate
division because the selling company continued to exist and continued to operate its other
divisions. Id. at 470. These cases are all factually similar to the present case and demonstrate
that, as a matter of law, ITW cannot establish that the Divestiture was a *de facto* merger under
Ohio law.

11.      ITW also concedes that it cannot meet Ohio's fourth element of a *de facto*
merger. As noted above, ITW concedes that the Debtors assumed some, but not all, of General
Motors' liabilities. Accordingly, ITW's attempts to position the Divestiture as a *de facto* merger
under Ohio law must be rejected.

### C.      The Environmental Matters Agreement Does Not Give ITW a Claim Against the Debtors.

12.      ITW next asserts that it has a valid claiming arising under the EMA, which,
as discussed above, allocated environmental liabilities between General Motors and Delphi. In
making this argument, ITW incorrectly states that the EMA was an executory contract that was
rejected by the Debtors and that ITW was a third-party beneficiary under the contract.

### (i)      The EMA Was Not An Executory Contract Rejected by the Debtors.

13.      ITW concedes, as it must, that the EMA was terminated under the Master
Disposition Agreement Among Delphi Corporation, GM Components Holdings, LLC, General
Motors Company, Motors Liquidation Company, DIP Holdco 3 LLC and Other Companies,
Dated As Of July 30, 2009 (the "MDA"). The MDA was entered into as part of the First
Amended Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors

And Debtors-In-Possession, As Modified (the "Modified Plan"), which was approved by this

Court pursuant to an order entered on July 30, 2009 (Docket No. 18707).

14.    Without explanation or any legal or factual support, ITW equates the

termination of the EMA with the rejection of an executory contract under Section 365 of the

Bankruptcy Code.  This is incorrect.  The EMA was terminated by the consent of both General

Motors and the Debtors under section 9.19 of the MDA.  See Modified Plan at Exhibit 7.7, §

9.19.1(C).  In contrast, the executory contracts that were rejected by the Debtors were rejected

unilaterally and listed on Exhibit 8.1(a) to the Modified Plan.  The EMA is not listed on this

exhibit.  See Modified Plan at Exhibit 8.1(a) and amendments thereto (Docket Nos. 17557,

18492, 18683, 18704).  Thus, ITW's threshold assumption with respect to the EMA is incorrect;

the EMA was not a rejected executory contract, and therefore ITW's argument that it has a claim

for rejection damages under Section 365(g) of the Bankruptcy Code necessarily fails.

**(ii)    ITW Was Not a Third-Party Beneficiary to the EMA.**

15.    Moreover, ITW cannot demonstrate that it was a third-party beneficiary to

the EMA.  As a threshold matter, ITW again directs the Court to the wrong governing law by

indicating that New York law should apply.  The correct choice of law is Delaware because the

EMA provides that it will be governed by the law of Delaware. EMA ¶ 9.8.  Under New York's

choice of law principles, if a contract has an express choice of law provision and the chosen

jurisdiction has sufficient contact with the transaction, this choice of law will govern disputes

arising out of the contract except in cases of fraud or violations of public policy.  Fieger v. Pitney

Bowes Credit Corp., 251 F.3d 386, 393 (2d Cir. 2001).  ITW has made no allegations of fraud or

violations of public policy and therefore Delaware governs ITW's claim that it is a third-party

beneficiary to the EMA.

8

16.    Under Delaware law, "[t]o qualify as a third-party beneficiary of a contract, (i) the contracting parties must have intended that the third party beneficiary benefit from the contract, (ii) the benefit must have been intended as a gift or in satisfaction of a pre-existing obligation to that person, and (iii) the intent to benefit the third party must be a material part of the parties' purpose in entering into the contract." Madison Realty Partners 7, LLC v. Ag ISA LLC, C.A. No. 18094, 2001 WL 406268, at *5 (Del. Ch. Apr. 17, 2001) (citing Guardian Constr. Co.v. TetraTech Richardson, Inc., 583 A.2d 1378, 1386-87 ((Del. Super. Ct. 1990)). ITW has not alleged any facts sufficient to meet these three prongs, nor has it even discussed these requirements; instead it bases its claim solely on the "notion that it is just and practical" for ITW to collect rejection damages for termination of the EMA.  ITW Supplemental Brief ¶ 34 (internal quotations omitted).  Such policy considerations, however, are irrelevant to whether ITW meets the requirements under Delaware law to be deemed a third-party beneficiary.  And, clearly, ITW does not.

17.    First, General Motors and Delphi must have intended ITW to benefit from the EMA at the time it was entered.  Hostetter v. Hartford Ins. Co., C.A. No. 85C-06-28, 1992 Del. Super. LEXIS 284, *17 (Del. Super. Ct. July 13, 1992) (since plaintiff was not named or identified in the contract and there was no indication that the contract was made with the specific intention to benefit plaintiff, plaintiff was not a third-party beneficiary).  Clearly this is not the case as General Motors' liability at the Site was not known in 1998, the date of the EMA.  This fact necessarily follows from the EMA, under which General Motors retained full liability for disposal sites that were known as of the date of the EMA and the Debtors assumed a portion of the liability at disposal sites where the liability was discovered after the EMA.  See EMA §2.3. Thus, if the Debtors assumed any liability at the Site under the EMA, such liability necessarily

9

was unknown to General Motors and the Debtors at the time of the EMA.  Accordingly, ITW

cannot possibly prove that General Motors and the Debtors intended for the EMA to benefit ITW.

18.    ITW cannot avoid this result by asserting that the EMA was generally

intended to benefit other responsible parties at the newly identified waste sites.  Delaware law

distinguishes intended beneficiaries, who can be third-party beneficiaries, from incidental

beneficiaries, who have no rights under contracts to which they are not parties.  Hostetter, 1992

Del. Super. LEXIS 284 at 17-19.  Intended beneficiaries are those who are specifically

contemplated to be benefited by a contract at the time it was made, while incidental beneficiaries

are those who are not specifically contemplated by the contract but may otherwise benefit from it.

Id.  The court in Hostetter rejected the plaintiff's argument that because she was in a general

class of individuals that could benefit from the insurance contract, she was an intended

beneficiary and instead held that those potential benefits were incidental to the intended purpose

of the contract, which was to protect the contracting party's assets.  Id. at  17-18.  Since neither

General Motors nor Delphi knew that ITW could have a potential claim against General Motors

for liability at this Site, they could not have intended for ITW to specifically benefit from this

contract.

19.    ITW similarly cannot meet the second requirement to establish third-party

beneficiary status because General Motors and the Debtors did not intend the EMA to be a gift or

in satisfaction of a pre-existing obligation.  Because General Motors and Delphi had no

knowledge of General Motors' potential liability at the Site, there could be no intent that the

contract be a gift to ITW or in satisfaction of a pre-existing obligation.

20.    Finally, even if ITW could somehow establish that the EMA was intended

to benefit ITW as a gift or in satisfaction of a pre-existing obligation, Delaware law also requires

10

that the benefit to a third party must have been a material part of the purpose of the contract.

Insituform of N. Am., Inc. v. Chandler, 534 A.2d 257, 270 (Del. Ch. 1987) (concluding that the

effect of a contract, "whether beneficial or not, or intended or not, was merely instrumental to

achievement of the contract's purpose and was, legally, incidental to the contract"). ITW

conceded that this was not the case with the EMA, stating that "[t]he obvious purpose of the

EMA was to assign liability, by agreement, for environmental damages caused by former GM

facilities." ITW Supplemental Brief ¶ 34. Furthermore, as stated in the Reorganized Debtors'

Supplemental Brief, the EMA was entered into for the express purpose of implementing the

Divestiture. See Reorganized Debtors' Supplement Brief at ¶ 21. Accordingly, the purpose of

the EMA was to effectuate the allocation of liabilities between General Motors and the Debtors

as part of the Divestiture, not to benefit any third parties. Any benefits that would have accrued

to ITW had the EMA not been terminated were incidental to the agreement and are insufficient

to give ITW enforceable rights under the contract.

> **D.    The Debtors Were Not a Mere Continuation of General Motors.**

21.    Finally, ITW's argument that the Debtors were a mere continuation of

General Motors must fail under both Delaware and Ohio law.   In Delaware, the mere

continuation theory of successor liability is interpreted narrowly and requires that "the new

company be the same legal entity as the old company." Ross v. DESA Holdings Corp., 2008

WL 4899226, at *4 (Del. Super. Ct. Sept. 30, 2008). Furthermore, whether the new company

continued the business operations of the old company is irrelevant; successor liability only

attaches if the new company is the "same legal person" as the old company. Id.; see also, e.g.,

Fountain v. Colonial Chevrolet Co., 1988 WL 40019, at *9 (Del. Super. Ct. Apr. 13, 1988).

Similarly, under Ohio law, the mere continuation exception is "narrowly construed to protect

11

corporations from unassumed liabilities." Flaugher v. Cone Automatic Mach. Co., 30 Ohio St. 3d 60, 64 (Ohio 1987).  And, as ITW admits, the basis of this exception under Ohio law is "the continuation of the corporate entity, not the business operation, after the transaction."  ITW Supplemental Brief ¶ 36 (quoting Per-Co, Ltd. v. Great Lakes Factors, 299 Fed. Appx. 559, 563 (6th Cir. 2008)).

22.      No amount of discovery will establish that the Debtors were the same legal entity as General Motors after the Divestiture.  Clearly General Motors continued as a separate and distinct entity from the Debtors, as evidenced by the two companies' separate SEC filings, separate articles of incorporation and, indeed, separate bankruptcy proceedings, all of which this Court may take judicial notice of for purposes of this sufficiency hearing.  Moreover, the mere fact that General Motors continued to exist at all after the Divestiture is fatal to ITW's argument under both Delaware and Ohio law.  Ross, 2008 WL 4899226 at *4 (finding that the new company was not the mere continuation of the old company when the old company continued to exist after the sale); Fehl v. S. W. C. Corp., 449 F.Supp. 48 (D. Del. 1978) (same); see also Travis v. Harris Corp., 565 F.2d 443, 447 (7th Cir. 1977) (applying Ohio law and finding that the mere continuation theory requires "the existence of only one corporation at the completion of the transfer."); McGaw v. South Bend Lathe, Inc., 598 N.E.2d 18, 21-22 (Ohio Ct. App. 1991) (stating that successor liability based on mere continuation cannot exist without "the seller's prompt extinction after the transfer").

23.      The only argument that ITW makes to support its mere continuation theory is that General Motors continued to own at least 80% of the stock of Delphi Corporation after the Divesture.  But this does not establish that Delphi Corporation was the same legal entity as General Motors and is thus insufficient to establish liability.  Furthermore, as set forth in the

MSA, as part of the Divestiture, General Motors was to distribute its ownership interest in the

Delphi Corporation to its shareholders by means of an exchange offer and/or pro rata distribution.

MSA at Recitals.  As shown by the records of the New York Department of Taxation and

Finance, this distribution occurred in May 1999, a mere five months after the Divestiture.  See

Advisory Opinion, State of New York Commissioner of Taxation and Finance, Petition No.

C990610A, November 3, 1999 (attached hereto as Exhibit A).  This brief period of ownership of

Delphi Corporation by General Motors is insufficient to render the Debtors the same legal entity

as General Motors, as is the fact that some of Delphi Corporation's stock was owned by the

shareholders of General Motors.  Per-Co, Ltd., 299 Fed. Appx. at 564.  In Per-Co, Ltd., the

acquiring company planned to institute an employee stock ownership plan in which the

stockholders of the selling corporation would own 79% of the stock of the acquiring corporation.

The court concluded that this "alteration in ownership . . . would have made the 'mere

continuation' theory inapposite."  Id. at 564.  Thus, under Per-Co, Ltd., ITW's claim of successor

liability based upon the theory of 'mere continuation' fails.

## II.    The Claims Are Barred by Section 502(e)(1)(B) of the Bankruptcy Code.

24.    Finally, ITW attempts to avoid disallowance of the Claims under Section

502(e)(1)(B) of the Bankruptcy Code by arguing that it has a direct claim against the Debtors for

the costs it will incur at the Site.  In doing so, ITW does not contest that it is a liable party at the

Site or that its claim is contingent.  Instead, it argues that its "direct" claim against the debtors is

not a claim for contribution or reimbursement.  However, this argument fails for two reasons.

First, ITW describes its claim as one for "past and future response costs it has incurred or will

incur itself."  ITW Supplemental Brief ¶ 43.  In other words, ITW seeks reimbursement of its

costs, and as such the Claims fall squarely within the scope of §502(e)(1)(B) which requires the

13

disallowance of contingent claims "for reimbursement" by co-liable parties.  11 U.S.C. §

502(e)(1)(B).  Because ITW has not contested that its claim is contingent and that it is co-liable

with the Debtors, its claim for reimbursement of cleanup costs must be rejected.  In re Hexcel

Corp., 174 B.R. 807 (Bankr. N.D. Cal. 1994) (claims for reimbursement of cleanup costs by co-

liable parties are disallowed under §502(e)(1)(B)).

> 25.    Second, ITW is wrong when it asserts that there is no risk of double

recovery against the Debtors because ITW is only attempting to recover the costs it will incur

directly at the Site.  The United States Environmental Protection Agency (EPA) has asserted a

claim against the Debtors that seeks recovery of all costs necessary to design the cleanup remedy

and implement it.  As set forth in EPA's proof of claim:

> > EPA expects to incur future response costs in connection with the remedial design
> > and remedial action for the South Dayton Site.  These costs have been estimated
> > by EPA at between $20 and 50 million.  Along with other identified [liable
> > parties], Delphi is jointly and severally liable to the United States for these
> > amounts.

Proof of Claim #14309, ¶ 7, attached hereto as Exhibit B.  This makes clear that EPA intends to

seek the full amount of the cleanup costs – not just oversight costs – from the Debtors.

Accordingly, ITW's claim is in direct competition with EPA's claim and if ITW's claim is not

disallowed, the Debtors could be both jointly and severally liable to EPA for the full cleanup

costs at the Site and to ITW for its share of the cleanup costs.  This is precisely the type of

double recovery that Section 502(e)(1)(B) is designed to avoid.

> 26.    In this regard, all but one of the cases cited by ITW are inapposite because

those cases did not involve competing claims by governmental entities or other third parties

seeking to recover the cleanup costs from the debtors.  For example, in In re Harvard Industries,

Inc., the court specifically noted that neither the federal nor the state environmental agencies had

14

filed a claim against the debtor for cleanup costs.  138 B.R. 10, 12 (Bankr. D. Del. 1992).

Similarly, the Court in In re Dant & Russell, Inc. noted that "third parties [were] not competing

over [the debtors'] funds for cleanup . . . – there is no third party creditor here."  951 F.2d 246,

248 (9th Cir. 1991).  Likewise, In re New York Trap Rock Corp. expressly acknowledged that

there was no "multiple liability on the debtor's part for the contingent claim asserted" by the

creditor.  153 B.R. 648, 651 (Bankr. S.D.N.Y. 1993).

       27.     The only other case cited by ITW is In re Allegheny Int'l, Inc. 126 B.R.

919, 923 (W.D. Penn. 1991).  That decision, however, has previously been criticized by the

Bankruptcy Court for the Southern District of New York for failing to recognize that,

fundamentally, claims for cleanup costs by co-liable parties are not direct claims but rather are

claims "to satisfy the obligation that both the debtor and the claimant had to the EPA for the

remediation of the properties."  In re Drexel Burnham Lambert Group, 148 B.R. 982, 989 (Bankr.

S.D.N.Y. 1991) (quoting In re Cottonwood Canyon Land Co., 146 B.R. 992 (Bankr. D. Colo.

1992).  The same is true here – ITW's claim is fundamentally a claim for reimbursement of the

costs necessary to satisfy the obligation to clean up the Site.  ITW admits its liability for this

obligation, and EPA has filed a claim against the Debtors for these same costs.  ITW's claim,

therefore, must be disallowed under  §502(e)(1)(B) of the Bankruptcy Code.

## Conclusion

       28.     ITW has not challenged the position that the Debtors did not exist at the

time the Site ceased accepting wastes for disposal.  Instead, it argues that the Debtors are liable

for General Motors' disposal of wastes because the Debtors are the corporate successors to

General Motors.  But, ITW cannot escape the plain fact that, after the Divestiture, General

Motors continued its own separate and distinct existence and that the Debtors did not acquire all

of General Motors' assets or assume all of its liabilities.  These facts preclude any finding that the

Debtors are corporate successors to General Motors under either the *de facto* merger or mere

continuation test.  Additionally, ITW has no valid claim under the EMA because that agreement

was terminated by the consent of both the Debtors and General Motors and was not a rejected

executory contract giving rise to rejection debtors.  Moreover, ITW clearly was not a third-party

beneficiary under the EMA and thus cannot assert any claims arising from the EMA.  Finally, as

contingent claims for reimbursement on an obligation for which ITW is liable, the Claims must

be disallowed under §502(e)(B)(1) of the Bankruptcy Code.

WHEREFORE the Reorganized Debtors respectfully request this Court enter an

order (a) sustaining the Reorganized Debtors' objection with respect to the Claims, (b)

disallowing and expunging the Claims in their entirety, and (c) granting such further and other

relief this Court deems just and proper.

Dated:    New York, New York
          August 20, 2010

                        SKADDEN, ARPS, SLATE, MEAGHER
                          & FLOM LLP

                        By:   /s/ John Wm. Butler, Jr.
                              John Wm. Butler, Jr.
                              John K. Lyons
                              Ron E. Meisler
                        155 North Wacker Drive
                        Chicago, Illinois 60606

                              - and -

                        Four Times Square
                        New York, New York 10036

                        Attorneys for DPH Holdings Corp., et al.,
                          Reorganized Debtors

16

## Exhibit A

**New York State Department of Taxation and Finance**

# Taxpayer Services Division
# Technical Services Bureau

TSB-A-99(27)C
Corporation Tax
November 3, 1999

STATE OF NEW YORK
COMMISSIONER OF TAXATION AND FINANCE

ADVISORY OPINION          PETITION NO. C990610A

On June 10, 1999, a Petition for Advisory Opinion was received from Delphi Automotive Systems Corporation, 1450 West Long Lake Road, Troy, Michigan 48098.

The issue raised by Petitioner, Delphi Automotive Systems Corporation, is whether it is a "new business" and thus entitled to the refundibility of investment tax credit, under section 210.12(e) of the Tax Law.

Petitioner submits the following statement of facts as the basis for this Advisory Opinion.

Before 1991, the production of parts by General Motors Corporation ("GM") was conducted by many separate automotive parts operations which GM had acquired over time.  These operations were generally managed independently from each other within the GM organization and were accounted for as separate divisions within GM.  In 1991, GM organized its component businesses into the Automotive Components Group in order to improve the competitiveness of these operations and increase its business through penetration of new markets.  Since that time, the Group has been transformed from a North America-based, captive component supplier to GM into a global supplier of components, integrated systems and modules for a wide range of customers.  In 1995, the group was given the name "Delphi Automotive Systems" ("Delphi") in order to establish its separate identity in the automotive parts industry.

Petitioner was incorporated in Delaware on September 16, 1998.  Petitioner is a holding company that holds a 100 percent interest in Delphi Automotive Systems LLC ("Delphi LLC"), a company that operates in New York State through several divisions including the Delphi Harrison Thermal Division ("Delphi Harrison") and Delphi's Energy and Engine Management Systems Division.  Delphi LLC was formed in Delaware on September 16, 1998.  Petitioner will be treating Delphi LLC as a branch or division of Petitioner for federal income tax purposes as provided under section 301.7701-3 of the Treasury Regulations, and will also be treating it as a branch or division of Petitioner for purposes of Article 9-A of the Tax Law.

On January 1, 1999, GM transferred certain assets to Petitioner, and its subsidiaries, and Petitioner and its subsidiaries have assumed, or agreed to assume, pay, perform, satisfy and discharge, the related liabilities.  This transaction qualified for "tax-free" treatment under section 351 of the Internal Revenue Code("IRC").

TSB-A-99(27)C
Corporation Tax
November 3, 1999

On February 5, 1999, immediately prior to which Petitioner was wholly owned by GM, Petitioner completed an initial public offering (the "IPO") of 100 million shares of Petitioner $.01 par value common stock thereby reducing GM's holdings to 82.3 percent.  On May 28, 1999, GM divested itself of its entire interest in Petitioner by distributing all of its shares of Petitioner's common stock to holders of GM's common stock (the "Distribution").  This Distribution was accomplished through a tax-free spin-off ( a pro rata distribution by GM of its shares of Petitioner's common stock to holders of GM's common stock) under section 355 of the IRC.

Petitioner is an independent publicly traded company headquartered in Troy, Michigan, that is listed on the New York Stock Exchange and other global exchanges.  Petitioner is an automotive supplier dealing in "Dynamics and Propulsion, Safety, Thermal and Electrical Architecture, and Electronics & Mobile Communications."  As a world leader in the automotive supply business, Petitioner is comprised of 196,000 employees operating 208 wholly-owned manufacturing sites, participates in 46 joint ventures and operates 27 technical centers in 36 countries.  Petitioner's integrated systems and modules are designed to simplify vehicle manufacturers' processes while meeting the demands of today's high-tech vehicles with its main focus being customer satisfaction through technology leadership, world class quality, cost, scheduled delivery and responsiveness.

Delphi Harrison's capital funding will be utilized for new product and process technologies such as newly designed compact / ultra-thin heat exchange products, newly designed compact air conditioning modules and new lean cell manufacturing processes.

Since May 28, 1999, the spin-off date from GM, not more than 50 percent of the number of shares of Petitioner's voting stock has been held by a taxpayer subject to tax under Article 9-A or any of the other provisions enumerated in section 210.12(j) of the Tax Law, because Petitioner is owned by many different investors, and is no longer owned by GM.  After the spin-off date, no shareholder owns more than 50 percent of Petitioner's voting stock.

Petitioner states that it is not substantially similar in operation to GM since Petitioner's business is the manufacture of automotive and non-automotive components while GM's business is the assembly and sale of motor vehicles.  Petitioner also states that for the years prior to 1999, the GM divisions that are now Delphi LLC operations that are still operating plants in New York State manufactured the following products:  Delphi Harrison which operates in Lockport, New York, manufactured condensers (which cover the complete range of automotive air conditioning needs), heater cores, evaporators, heating, ventilating and air conditioning modules, heavy-duty oil coolers, automotive oil coolers, radiators, powertrain cooling modules, accumulator dehydrators, 6-cylinder axial-type H-6 compressors, V-5f, V-6 and V-7 variable displacement compressors, and compact variable compressors; while Delphi's Energy and Engine Management Systems Division which operates in Rochester, New York, manufactured throttle bodies, fuel rails, fuel rail assemblies, integrated air fuel modules, exhaust gas recirculation valves (both linear and backpressure),

TSB-A-99(27)C
Corporation Tax
November 3, 1999

evaporative emissions canisters, and generator die casts.  No other GM plant manufactured similar products either in New York or in any other state during the years prior to 1999.

For calendar year 1999, Petitioner will be filing two short-period returns for both federal income tax purposes and New York State franchise tax purposes.  The first short period will be January 1, 1999 through May 31, 1999; the second short period will be June 1, 1999 through December 31, 1999.

It should be assumed for purposes of this advisory opinion that asset acquisitions by Petitioner will qualify for the investment tax credit under section 210.12(b)(1) of the Tax Law as property principally used by Petitioner in the production of goods by manufacturing.

**Discussion**

Section 301.7701-3(a) of the Treasury Regulations, provides that a business entity that is not required to be classified as a corporation is an "eligible entity" that can elect its classification for federal income tax purposes.  A domestic eligible entity that has a single member can elect to be classified as an association or elect to be disregarded as an entity separate from its owner.  Under section 301.7701-3(b)(1) of the Treasury Regulations, the default classification of an entity that has a single owner will be that it is not an entity separate from its owner.  If the entity wants to be classified as an association, it must make the election pursuant to section 301.7701-3(c) of the Treasury Regulations.

It has been established that the classification of an LLC for New York State tax purposes will follow the classification accorded the LLC for federal income tax purposes.  (See, FGIC CMRC Corp, Adv Op Comm T & F, April 1, 1996, TSB-A-96(11)C; and Department of Taxation and Finance Memorandum, TSB-M-94(6)I and (8)C, October 25, 1994.)  Following federal conformity with respect to classifying LLCs, a single member LLC which is a domestic eligible entity that does not make the election for federal income tax purposes pursuant to section 301.7701-3 of the Treasury Regulations would not be classified as an entity separate from its owner.  If its owner is a corporation, it would be considered a branch or division of the owner corporation.

In this case, Delphi LLC is treated as a division of Petitioner for federal income tax purposes and, therefore, Delphi LLC will be treated as a division of Petitioner for purposes of Article 9-A of the Tax Law.

Section 210.12 of the Tax Law allows an investment tax credit against the tax imposed under Article 9-A of the Tax Law.  For taxable years beginning after 1990, section 210.12 allows an investment tax credit equal to five percent with respect to the first $350 million of the investment credit base and four percent with respect to the investment credit base in excess of $350 million.  The

TSB-A-99(27)C
Corporation Tax
November 3, 1999

investment credit base is the cost or other basis for federal income tax purposes of qualified tangible personal property and other tangible property, including buildings and structural components of buildings.

Under section 210.12(b) of the Tax Law and section 5-2.2 of the Business Corporation Franchise Tax Regulations ("Article 9-A Regulations"), the term "qualified property" means tangible personal property and other tangible property, including buildings and structural components of buildings, which:

(1)    is acquired, constructed, reconstructed or erected by the taxpayer after December 31, 1968;

(2)    is depreciable pursuant to section 167 of the Internal Revenue Code;

(3)    has a useful life of four years or more;

(4)    is acquired by the taxpayer by purchase as defined in section 179(d) of the Internal Revenue Code;

(5)    has a situs in New York State; and

(6)    is principally used by the taxpayer in the production of goods by manufacturing, processing, assembling, refining, mining, extracting, farming, agriculture, horticulture, floriculture, viticulture or commercial fishing.

Section 210.12(e)(1) of the Tax Law, provides, in part, that:

if the amount of credit allowable under this subdivision for any taxable year reduces the tax to [the higher of the amounts prescribed in section 210.1(c) and (d) of the Tax Law] ... any amount of credit allowed for a taxable year commencing ... on or after [January 1, 1987] and not deductible in such year may be carried over to the fifteen taxable years next following such taxable year and may be deducted from the taxpayer's tax for such year or years.  In lieu of such carryover, any such taxpayer which qualifies as a new business under [section 210.12(j) of the Tax Law] may elect to treat the amount of such carryover as an overpayment of tax to be credited or refunded in accordance with the provisions of [section 1086 of the Tax Law], provided, however, the provisions of [section 1088(c) of the Tax Law] notwithstanding, no interest shall be paid thereon.

TSB-A-99(27)C
Corporation Tax
November 3, 1999

Section 210.12(e)(1) of the Tax Law provides that if  the amount of  investment tax credit allowed under section 210.12 of the Tax Law for any taxable year reduces the tax due for such year to less than the higher of the amounts prescribed in section 210.1(c) and (d) of the Tax Law, any amount of credit thus not deductible in such year may be carried over to the following 15 years, and may be deducted from the taxpayer's tax for such year or years.  In lieu of such carryover, a taxpayer which qualifies as a "new business" under section 210.12(j) of the Tax Law, may elect to treat the amount of such carryover as an overpayment of tax to be credited or refunded in accordance with the provisions of section 1086 of the Tax Law.

Section 210.12(j) of the Tax Law provides that for purposes of section 210.12(e) of the Tax Law, a "new business" shall include any corporation except:

1. a corporation in which over 50 percent of the number of shares of stock entitling their holders to vote for the election of directors or trustees is owned or controlled, either directly or indirectly, by a taxpayer subject to tax under Article 9-A; section 183, 184, 185,  186 of Article 9; Article 32 or 33 of the Tax Law; or

2. a corporation that is substantially similar in operation and in ownership to a business entity or entities taxable, or previously taxable under Article 9-A; section 183, 184, 185, or 186 of Article 9; Article 32 or 33; or Article 23 or that would have been subject to tax under Article 23, as such article was in effect on January 1, 1980, or the income (or losses) of which is (or was) includable under Article 22 of the Tax Law whereby the intent and purpose of section 210.12(e) of the Tax Law with respect to refunding of credit to new business would be evaded; or

3. a corporation that has been subject to tax under Article 9-A for more than four years (excluding short periods) prior to the taxable year during which the taxpayer first becomes eligible for the investment tax credit.

Therefore, a corporation is a "new business" *unless* it is described in any of these three conditions.  For the short period January 1, 1999 through May 31, 1999, Petitioner was not a new business, pursuant to section 210.12(j)(1) of the Tax Law, because for that entire period it was more than 50 percent owned by GM, a taxpayer under "Article 9-A of the Tax Law.

After GM's divestiture of stock in Petitioner on May 28, 1999, Petitioner was no longer more than 50 percent owned or controlled by a taxpayer described in section 210.12(j)(1) of the Tax Law. Further, while immediately upon such divestiture Petitioner was substantially similar in ownership to GM, since Petitioner was as of that moment a 100 percent publicly traded corporation, it must be presumed that such similarity in ownership was immediately dissipated, such that the situation described in section 210.12(j)(2) of the Tax Law no longer applied.  Therefore, with respect to

TSB-A-99(27)C
Corporation Tax
November 3, 1999

Petitioner's short period return, June 1, 1999 through December 31, 1999, Petitioner will satisfy the first and second conditions of section 210.12(j) of the Tax Law (i.e., was *not* as there described), from which it follows that Petitioner is and will be a new business with respect to qualifying property placed in service after May 28, 1999, and before the end of its first five taxable years (excluding short taxable periods).

DATED:  November 3, 1999                              /s/
                                                      John W. Bartlett
                                                      Deputy Director
                                                      Technical Services Bureau

        NOTE:          The opinions expressed in Advisory Opinions are
                       limited to the facts set forth therein.

## **Exhibit B**

FORM B10 (Official Form 10) (04/05)

| UNITED STATES BANKRUPTCY COURT  SOUTHERN   DISTRICT OF  NEW YORK | PROOF OF CLAIM |
|---|---|

| Name of Debtor | Case Number |
|---|---|
| Delphi Automotive Systems LLC | 05-44640 (RDD) |

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

**Received**

**AUG 0 9 2006**

**Kurtzman Carson**

Claim #14309
USBC SDNY
Delphi Corporation, et al.
05-44481 (RDD)

Name of Creditor (The person or other entity to whom the debtor owes money or property):

**U.S. Environmental Protection Agency**

Name and address where notices should be sent:

David J. Kennedy
Assistant U.S. Attorney, SDNY
86 Chambers Street, 3rd Floor
New York, NY 10007
Telephone number:   (212) 637-2733

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.
☐ Check box if you have never received any notices from the bankruptcy court in this case.
☐ Check box if the address differs from the address on the envelope sent to you by the court.

THIS SPACE IS FOR COURT USE ONLY

Account or other number by which creditor identifies debtor:

Check here ☐ replaces
if this claim  ☐ amends   a previously filed claim, dated:_____

**1. Basis for Claim**
- ☐ Goods sold
- ☐ Services performed     See attached.
- ☐ Money loaned
- ☐ Personal injury/wrongful death
- ☐ Taxes
- ☐ Other _____

- ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
- ☐ Wages, salaries, and compensation (fill out below)
  Last four digits of SS #: _____
  Unpaid compensation for services performed
  from _____ to _____
  (date)            (date)

**2. Date debt was incurred:**
See attached.

**3. If court judgment, date obtained:**
See attached.

**4. Total Amount of Claim at Time Case Filed:  $  See attached.**
  _____  _____  _____  _____
  (unsecured)       (secured)        (priority)       (Total)
  If all or part of your claim is secured or entitled to priority, also complete Item 5 or 7 below.
  ☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

**5. Secured Claim.**
☐ Check this box if your claim is secured by collateral (including a right of setoff).     See attached.

Brief Description of Collateral:
- ☐ Real Estate   ☐ Motor Vehicle
- ☐ Other_____

Value of Collateral:   $_____

Amount of arrearage and other charges at time case filed included in secured claim, if any:   $_____

**6. Unsecured Nonpriority Claim** $_____

☐ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority.

**7. Unsecured Priority Claim.**
☐ Check this box if you have an unsecured priority claim
Amount entitled to priority  $_____
Specify the priority of the claim:
- ☐ Wages, salaries, or commissions (up to $10,000),* earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(3).
- ☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(4).
- ☐ Up to $2,225* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(6).
- ☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child - 11 U.S.C. § 507(a)(7).
- ☐ Taxes or penalties owed to governmental units-11 U.S.C. § 507(a)(8).
- ☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(___).
*Amounts are subject to adjustment on 4/1/07 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment. $10,000 and 180-day limits apply to cases filed on or after 4/20/05. Pub. L. 109-8.

**8. Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

**9. Supporting Documents:**   Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

**10. Date-Stamped Copy:**   To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim

THIS SPACE IS FOR COURT USE ONLY

FILED
U.S. BANKRUPTCY COURT
S.D.N.Y.
2006 JUL 31  P 3

| Date | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any): |
|---|---|
| 7/31/06 | _____  DAVID J. KENNEDY, A.U.S.A. |

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

MICHAEL J. GARCIA
United States Attorney for the
Southern District of New York
By: DAVID J. KENNEDY (DK-8307)
Assistant United States Attorney
86 Chambers Street, Third Floor
New York, New York 10007
Tel. No.: (212) 637-2733
Fax No.: (212) 637-2686

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------x

In re:                                              CHAPTER 11

DELPHI AUTOMOTIVE SYSTEMS LLC,                       Case No. 05-44640-rdd

                                                    Jointly Administered

                        Debtors.

--------------------------------------------------------x

### PROOF OF CLAIM OF THE UNITED STATES ON BEHALF OF
### THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY

1.      The United States files this Proof of Claim at the request of the U.S.

Environmental Protection Agency ("EPA"), against debtor Delphi Automotive Systems LLC

("Delphi"), for response costs incurred and to be incurred by the United States under the

Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42

U.S.C. §§ 9601-9675 at the Superfund Sites set forth herein in Paragraphs 2 through 7, infra.  In

addition, with respect to equitable remedies that are not within the Bankruptcy Code's definition

of "claim," 11 U.S.C. § 101(5), this proof of claim is only filed in protective fashion.  See, e.g.,

Paragraphs 3, 8, 9, and 10, infra.

2.      Tremont City Landfill Superfund Site.  Delphi is liable to the United States under

CERCLA with respect to the Tremont City Landfill Superfund Site located at 3108 Snyder-

Domer Road, Tremont City, German Township, Clark County, Ohio (the "Tremont City Site").

The 80-acre Site includes several facilities including a closed 8.5 acre chemical waste landfill

(the "Barrel Fill" facility), a closed 56 acre sanitary landfill (the "Landfill" facility), and a 15.5

acre closed oil recycling and hazardous waste storage and transfer operation (the "Waste

Storage" facility). Delphi is liable to the United States because by contract, agreement or

otherwise, it arranged for disposal or treatment, or arranged with a transporter for transport for

disposal or treatment, of hazardous substances owned or possessed by Delphi at the Barrel Fill

and Landfill facilities owned by another party or entity, and containing hazardous substances,

pursuant to Section 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3). Delphi disposed of drums

and bulk wastes containing, inter alia, paint sludge, polyester resins, polystyrene, sulfuric acid

sludge, paint waste, polyol resin and caustic sludge at the Barrel Fill facility and solid wastes at

the Landfill facility. The closed Barrel Fill and Landfill operations are facilities within the

meaning of CERCLA. There have been releases or threats of releases of hazardous substances,

including but not limited to, inorganic compounds (antimony, arsenic, thallium, cyanide and

lead) and volatile organic compounds (xylene, methylene chloride, ethyl benzene and acetone),

from the facilities at the Tremont City Site. These hazardous substances have been released into

the waterways, surface water, soils, and sediments at the Tremont City Site. Other potentially

responsible parties may, along with Delphi, also be jointly and severally liable to the United

States under CERCLA with respect to the Barrel Fill and Landfill facilities.

     3.     This Proof of Claim is filed in a protective manner with respect to Delphi's

obligations to perform work with respect to the Tremont City Site. See Paragraph 8, infra. On

October 3, 2002, EPA entered into an Administrative Order on Consent ("AOC")(Docket # V-

2

W-03-C-719) with Delphi that required Delphi, and six other respondents, inter alia, to conduct a

Remedial Investigation/Feasibility Study ("RI/FS") at the Tremont City Site. Delphi and the

remaining AOC respondents have completed the RI field work. EPA estimates that it may cost

the jointly and severally liable parties, including Delphi, approximately $1 million to complete

the required work under the AOC, some of which has already been performed. EPA has not yet

selected remedial action under CERCLA for the Barrel Fill and Landfill facilities at the Tremont

City Site and Delphi has therefore not yet been ordered to perform remedial work, but may be

ordered by a court or other authority found to have jurisdiction to do so in the future. Since

investigations at the Barrel Fill and Landfill facilities at the Tremont City Site are continuing and

remedial action has not yet been selected, the cost of Remedial Design/Remedial Action

("RD/RA") to Delphi is uncertain at this time, but the work with respect to these facilities could

cost the jointly and severally liable parties, including Delphi, as much as a total of $22.2 million

or more, in addition to the $1 million described above. EPA estimates that RD/RA work relating

to the Barrel Fill facility could cost the jointly and severally liable parties, including Delphi,

approximately $7 million. EPA estimates that RI/FS work and RD/RA work relating to the

Landfill facility could cost the jointly and severally liable parties, including Delphi,

approximately $14.5 million.

    4.     Response costs have been and will be incurred by EPA with respect to the

Tremont City Site not inconsistent with the National Contingency Plan promulgated pursuant to

Section 105 of CERCLA, 42 U.S.C. § 9605, and set forth at 40 C.F.R. Part 300, as amended.

Under the AOC, Delphi is also liable to make payments for future oversight costs to EPA, which

EPA estimates to be $100,000. In addition, the United States has incurred unreimbursed

response costs to date of approximately $820,000 with respect to the Barrel Fill and Landfill

facilities at the Tremont City Site for previous work, including inter alia, a Preliminary

Assessment/Site Investigation ("PA/SI").   Delphi is jointly and severally liable to the United

States for the above amounts.   Delphi is also jointly and severally liable for interest due under 42

U.S.C. § 9607(a).   Other potentially responsible parties may along with Delphi also be jointly

and severally liable to the United States for all of the above amounts plus interest due under 42

U.S.C. § 9607(a).

     5.    <u>South Dayton Dump & Landfill Superfund Site</u>.  Delphi is liable to the United

States under CERCLA with respect to the South Dayton Dump and Landfill Superfund Site

("South Dayton Site") located at 1975 Dryden Road, Moraine, Ohio. Delphi is liable to the

United States because by contract, agreement or otherwise, it arranged for disposal or treatment,

or arranged with a transporter for transport for disposal or treatment, of hazardous substances

owned or possessed by Delphi at the South Dayton Site owned by another party or entity, and

containing hazardous substances, pursuant to Section 107(a)(3) of CERCLA, 42 U.S.C.

§ 9607(a)(3).  Delphi arranged for the disposed of hazardous wastes, including but not limited to

asbestos, flyash, metallic dust, oil and grease sludge and paint wastes at the South Dayton Site

from several Delphi facilities in the Dayton and Kettering, Ohio area.  The South Dayton Site is a

facility within the meaning of CERCLA.  The South Dayton Site was proposed for inclusion on

the National Priorities List ("NPL"), pursuant to CERCLA Section 105, 42 U.S.C. § 9605, on

September 23, 2004 (<u>see</u> 69 <u>Fed</u>. <u>Reg</u>. 56970).  There have been releases or threats of releases of

hazardous substances, including but not limited to, inorganic compounds (arsenic, cadmium,

chromium, mercury and lead) and volatile and semi-volatile organic compounds (1,2-

dichloroethene, tetrachloroethene, toluene, polychlorinated biphenyls ("PCBs")), at the South

Dayton Site. These hazardous substances have been released into the soil and groundwater at the

South Dayton Site. Other potentially responsible parties may, along with Delphi, also be jointly

and severally liable to the United States under CERCLA with respect to the South Dayton Site.

6.    Response costs have been and will be incurred by EPA with respect to the

South Dayton Site not inconsistent with the National Contingency Plan promulgated pursuant to

Section 105 of CERCLA, 42 U.S.C. § 9605, and set forth at 40 C.F.R. Part 300, as amended.

The United States has incurred unreimbursed response costs to date of approximately $404,349

with respect to the South Dayton Site. Delphi is liable to the United States for this amount.

Delphi is also liable for interest due under 42 U.S.C. § 9607(a). Other potentially responsible

parties may along with Delphi also be jointly and severally liable to the United States for all of

the above amounts plus interest due under 42 U.S.C. § 9607(a).

7.    EPA expects to incur future response costs in connection with the remedial

design and remedial action for the South Dayton Site. These costs have been estimated by EPA

at between $20 and 50 million. Along with other identified PRPs, Delphi is jointly and severally

liable to the United States for these amounts.

8.    Protective Filing For Work Obligations. The United States is not required to file a

proof of claim with respect to Delphi's injunctive obligations to comply with work requirements

arising under Orders of Courts, Administrative Orders, and other environmental regulatory

requirements imposed by law that are not claims under 11 U.S.C. § 101(5). Delphi and any

reorganized debtor(s) must comply with such mandatory injunctive and regulatory and

compliance requirements. The United States reserves the right to take future actions to enforce

5

any such obligations of Delphi. While the United States believes that its position will be upheld

by the Court, the United States has filed only in protective fashion with respect to such

obligations and requirements as indicated herein to protect against the possibility that Delphi will

contend that it does not need to comply with any such obligations and requirements and the

Court finds that it is not required to do so. Therefore, a protective contingent claim is filed in

the alternative for such obligations and requirements but only in the event that the Court finds

that such obligations and requirements are dischargeable claims under 11 U.S.C. § 101(5) rather

than obligations and requirements that reorganized Delphi must comply with. Nothing in this

Proof of Claim constitutes a waiver of any rights of the United States or an election of remedies

with respect to such rights and obligations.

      9.    <u>RCRA Compliance and Work Obligations</u>. This Proof of Claim is filed in a

protective manner with respect to Delphi's compliance and work obligations under the Resource

Conservation and Recovery Act ("RCRA"), 42 U.S.C. §§ 6901 - 6992k. <u>See</u> Paragraph 8, <u>supra</u>.

RCRA establishes a comprehensive regulatory program for generators of hazardous waste and

for owners and operators of facilities that treat, store, or dispose of hazardous waste. Delphi is

the owner and operator of RCRA-regulated facilities in including, but not limited to, Vandalia,

Ohio (Vandalia Facility), as well as other locations. Pursuant to its authority under RCRA, EPA

has promulgated regulations applicable to such generators and such owners and operators of

hazardous waste management facilities. The federal RCRA implementing regulations are set

forth at 40 C.F.R. Part 260 <u>et seq</u>. Pursuant to Section 3006 of RCRA, 42 U.S.C. § 6926, EPA

has authorized various States to administer various aspects of the hazardous waste management

program in such States. Pursuant to Section 3008(a) of RCRA, 42 U.S.C. § 6928(a), these

authorized State hazardous waste management program are enforceable by EPA.  Under RCRA,

Delphi is required, inter alia, to operate in compliance with RCRA regulatory requirements,

implement closure and post-closure work and corrective action work, and perform any necessary

action with respect to any imminent and substantial endangerment to health or the environment,

see, e.g., 42 U.S.C. §§ 6924, 6928, 6973, as required by RCRA and/or RCRA permits or

Administrative Orders.  For example, in or about January 2002, EPA and Delphi entered into a

RCRA Administrative Order on Consent with regard to the Vandalia, Ohio Facility, which

requires, inter alia, the continuing implementation of a Corrective Measures Plan at that Facility.

Delphi is liable for injunctive and compliance obligations that it is required to perform under

RCRA, RCRA permits, and all work requirements under RCRA permits and administrative

orders.  It is the position of the United States that a proof of claim is not required to be filed for

injunctive, compliance, and regulatory obligations and requirements under RCRA.  See

Paragraph 8, supra.  Other liable parties may along with Delphi also be jointly and severally

liable to the United States under RCRA.

      10.    Property of the Estate.  Delphi also has or may in the future have environmental

liabilities for properties that are part of its bankruptcy estate and/or for the migration of

hazardous substances from property of its bankruptcy estate.   For example, Delphi has voluntary

corrective action agreements for ongoing investigations pursuant to schedules approved by EPA

for certain facilities set forth in Paragraph 9, supra.  In accordance with 28 U.S.C. § 959, Delphi

is required to comply with non-bankruptcy law, including all applicable environmental laws, in

managing and operating its property.  Upon confirmation of any Plan of Reorganization,

reorganized Delphi will be liable as owner or operator of property in accordance with applicable

environmental law.  The United States is not required to file a proof of claim relating to property

of the estate other than for response costs incurred prior to the petition date.  The United States

reserves the right to file an application for administrative expense or take other appropriate action

in the future with respect to property of the estate.  This Proof of Claim is filed only protectively

with respect to property of the estate.

11.    This Proof of Claim reflects certain known liabilities of Delphi to the United

States.  The United States reserves the right to amend this claim to assert subsequently

discovered liabilities.   This Proof of Claim is without prejudice to any right under 11 U.S.C.

§ 553 to set off, against this claim, debts owed (if any) to the debtor by this or any other federal

agency.

12.    The United States has not perfected any security interest on its claims against

Delphi.

13.    This claim is filed as a general unsecured claim except to the extent of any

secured/trust interest in insurance proceeds received by Delphi on account of environmental

liability to the United States, disputed past cost amounts held in escrow by Delphi pending

dispute resolution, and to the extent administrative expense priority exists relating to property of

the estate, post-petition violations of law, or otherwise.  In addition, the United States will file

any application for administrative expense priority at the appropriate time.  The United States'

position with respect to injunctive, compliance, regulatory, and work obligations that are not

claims under 11 U.S.C. § 101(5) is set forth in Paragraph 8, supra.

14.    Except as stated in this Proof of Claim, no judgments against Delphi have been

rendered on this Proof of Claim.

15.     This Proof of Claim is also filed to the extent necessary to protect the United

States' rights relating to any insurance proceeds received by Delphi relating to sites discussed

herein and any funds being held in escrow by Delphi relating to the sites discussed herein.

Dated:     New York, New York
           July 31, 2006

Respectfully submitted,

FOR THE UNITED STATES OF AMERICA:

MICHAEL J. GARCIA
United States Attorney for the
Southern District of New York

DAVID J. KENNEDY (DK-8307)
Assistant United States Attorney
86 Chambers Street, Third Floor
New York, New York  10007
Tel. No.: (212) 637-2733
Fax No.: (212) 637-2730

W. BENJAMIN FISHEROW
Deputy Section Chief
Environment and Natural Resources Division

ALAN S. TENENBAUM
National Bankruptcy Coordinator
Environmental Enforcement Section
Environment and Natural Resources  Division
U.S. Department of Justice
P.O. Box 7611, Ben Franklin Station
Washington, D.C. 20044-7611
(202) 514-5409

FRANCIS J. BIROS
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources  Division
U.S. Department of Justice
P.O. Box 7611, Ben Franklin Station
Washington, D.C. 20044-7611
(202) 616-6552


OF COUNSEL:

DIANA L. EMBIL
THOMAS C. NASH
THOMAS WILLIAMS
Associate Regional Counsels
U.S. Environmental Protection Agency-- Region 5–Mail Code C14J
77 West Jackson Boulevard
Chicago, Illinois 60604-3594

# EXHIBIT D

**Hearing Date And Time:  August 27, 2010 at 10:00 a.m. (prevailing Eastern time).**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
155 North Wacker Drive
Chicago, Illinois 60606
John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036

Attorneys for DPH Holdings Corp., et al.,
   Reorganized Debtors

DPH Holdings Corp. Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

DPH Holdings Corp. Legal Information Website:
http://www.dphholdingsdocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                 :
        In re                          :    Chapter 11
                                   :
DPH HOLDINGS CORP., et al.,       :    Case No. 05-44481 (RDD)
                                 :
                                 :    (Jointly Administered)
            Reorganized Debtors.    :
                                 :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

REORGANIZED DEBTORS' RESPONSE TO
LETTER OF PHILIP J. CARSON

DPH Holdings Corp. and certain of its affiliated reorganized debtors in the above-captioned cases (collectively, the "Reorganized Debtors"), hereby submit this Response To Letter Of Philip J. Carson and respectfully represent as follows:

Background

1.     On October 8 and 14, 2005 (the "Petition Dates"), Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates (collectively, the "Debtors"), predecessors of the Reorganized Debtors, filed voluntary petitions under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as then amended (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of New York (the "Court").

2.     On June 16, 2009, this Court entered the Modification Procedures Order (as defined below) which, among other things, established July 15, 2009 (the "Administrative Claim Bar Date") as the deadline for filing a proof of administrative expense for the purpose of asserting an administrative expense claim for the period from the commencement of these chapter 11 cases through June 1, 2009.[1]

3.      On or before June 20, 2009, the Debtors, through Kurtzman Carson Consultants LLC ("KCC"), their claims and noticing agent in these chapter 11 cases, served Mr. Carson with a copy of the Notice Of Bar Date For Filing Proofs Of Administrative Expense, by first class mail at 119 W Jefferson, Frankenmuth, MI 48734 (the "Frankenmuth Address").

---

[1]     The Administrative Claim Bar Date was established pursuant to paragraph 38 of the Order (A)(I) Approving Modifications To Debtors' First Amended Plan Of Reorganization (As Modified) And Related Disclosures And Voting Procedures And (II) Setting Final Hearing Date To Consider Modifications To Confirmed First Amended Plan Of Reorganization And (B) Setting Administrative Expense Claims Bar Date And Alternative Transaction Hearing Date, entered by this Court on June 16, 2009 (Docket No. 17032) (the "Modification Procedures Order").  On July 15, 2009, this Court entered the Stipulation And Agreed Order Modifying Paragraph 38 Of Modification Procedures Order Establishing Administrative Expense Bar Date (Docket No. 18259) to provide that paragraph 38 of the Modification Procedures Order should be amended to require parties to submit an administrative expense claim form for administrative expense claims for the period from the commencement of these cases through May 31, 2009 rather than through June 1, 2009.

2

4.      On August 12, 2009, almost a month after the Administrative Claims Bar

Date, Mr. Carson filed proof of administrative expense claim number 19551 against Delphi,

which asserts an administrative expense claim in the amount of $1,000,000.00 (the "Claim")

stemming from personal injuries he suffered in 2007 while he was employed at Delphi.  Mr.

Carson listed the Frankenmuth Address on the Claim.

5.      On October 6, 2009, the Debtors substantially consummated the First

Amended Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors

And Debtors-In-Possession, As Modified (the "Modified Plan"), which had been approved by

this Court pursuant to an order entered on July 30, 2009 (Docket No. 18707), and emerged from

chapter 11 as the Reorganized Debtors.

6.      On October 15, 2009, the Reorganized Debtors objected to the Claim

pursuant to Reorganized Debtors' Thirty-Seventh Omnibus Objection Pursuant To 11 U.S.C. §

503(b) And Fed. R. Bankr. P. 3007 To Expunge Certain (I) Prepetition Claims, (II) Equity

Interests, (III) Books And Records Claims, (IV) Untimely Claims, (V) Paid Severance Claims,

(VI) Pension, Benefit And OPEB Claims, And (VII) Duplicate Claims (Docket No. 18984) (the

"Thirty-Seventh Omnibus Claims Objection").

7.      On November 16, 2009, the Reorganized Debtors' received an undocketed

letter from Mr. Carson responding to the Thirty-Seventh Omnibus Claims Objection.  In the

letter, Mr. Carson also requested that his address be updated to 11401 Vernon Ave., Port Richey,

FL 34668 (the "Port Richey Address").  Mr. Carson, however, did not send KCC his change of

address; and accordingly, KCC did not update the claims register to replace the Frankenmuth

Address with the Port Richey Address.

3

8.      Because the claim was filed after the July 15, 2009 Administrative Claim Bar Date, on January 14, 2010, the Reorganized Debtors' served Mr. Carson at the Frankenmuth Address (the address listed on the Claim) with the Notice Of Deadline To File Motion For Leave To File Late Administrative Expense Claim With Respect To Late Administrative Expense Claim Filed By Philip J. Carson (Administrative Expense Claim Number 19551) (Docket No. 19316) (the "Notice of Deadline").  The Notice of Deadline set January 25, 2010 as the deadline for Mr. Carson to file a motion for leave to file a late administrative expense claim with respect to the Claim (the "January 25 Deadline").

9.      Mr. Carson never filed a motion for leave to file a late administrative expense claim.  Accordingly, on March 2, 2010, the Reorganized Debtors served Mr. Carson at the Frankenmuth Address with the Notice Of Settlement Of Order Pursuant To 11 U.S.C. § 503(b) And Fed. R. Bankr. P. 3007 Disallowing And Expunging Administrative Expense Claims Filed By Philip J. Carson, Deborah Chapman, And Saundra Hamlin (Administrative Expense Claim Numbers 19551, 19284, And 19370) (Docket No. 19584) (the "Notice of Settlement" together with the Notice of Deadline, the "Notices").

10.     On March 25, 2010, this Court entered the Order Pursuant To 11 U.S.C. § 503(b) And Fed. R. Bankr. P. 3007 Disallowing And Expunging Administrative Expense Claims Filed By Philip J. Carson, Deborah Chapman, And Saundra Hamlin (Administrative Expense Claim Numbers 19551, 19284, and 19370) (Docket No. 19724) (the "Untimely Administrative Expense Claim Order").

11.     On August 2, 2010, the Court docketed a letter from Mr. Carson (Docket No. 20494) (the "Letter") contesting the disallowance of the Claim.

<u>Response</u>

12.    Bankruptcy Rule 2002(g) provides that "[n]otices to be mailed under Rule

2002 to a creditor . . . shall be addressed as such entity or an authorized agent has directed in its

last request filed in the particular case. For purposes of this subdivision – (A) a proof of claim

filed by a creditor . . . that designates a mailing address constitutes a filed request to mail notices

to that address. . . ." Fed. R. Bankr. P. 2002(g)(1)(A).

13.    The Reorganized Debtors believe that Mr. Carson was properly served

with the Notices because the Notices were mailed to the Frankenmuth Address, the address Mr.

Carson provided in the Claim.  The November 16, 2009 letter in response to the Thirty-Seventh

Omnibus Claims Objection was not sent to KCC.  In fact, Mr. Carson did not file any subsequent

designation of mailing address or contact KCC to update his address until April 15, 2010 - after

KCC served the Notices and the Court entered the Untimely Administrative Expense Claim

Order - when Mr. Carson emailed KCC requesting that his address be updated to 56 Rivocean

Dr., Ormond Beach, FL, 32176.

14.    Accordingly, the Reorganized Debtors believe that Mr. Carson's Claim

was properly disallowed and expunged pursuant to the Untimely Administrative Expense Claim

Order after he failed to file a motion for leave to file a late claim by the January 25 Deadline.

Therefore, the relief requested in Mr. Carson's Letter should be denied and the Untimely

Administrative Expense Claim Order should be unaffected.

15.    If, however, this Court believes that the Reorganized Debtors should have

served the Notices on Mr. Carson at the Port Richey Address, then the Reorganized Debtors

request that the Untimely Administrative Expense Order remain in place until Mr. Carson files a

motion for leave to file a late claim and such motion is granted by this Court.  The Reorganized

Debtors propose that they would send another notice to Mr. Carson providing him ten days to file a motion for leave to file a late claim in accordance with the protocol that has been adopted in these cases for untimely claims.

WHEREFORE the Reorganized Debtors respectfully request that this Court enter an order (a) denying the relief requested in the Letter, or in the alternative, allowing the Reorganized Debtors to serve Mr. Carson with a notice providing him ten days to file a motion for leave to file a late claim and (b) granting the Reorganized Debtors such other and further relief as is just.

Dated:     New York, New York
           August 20, 2010

                              SKADDEN, ARPS, SLATE, MEAGHER
                                & FLOM LLP

                              By:   /s/ John Wm. Butler, Jr.
                                   John Wm. Butler, Jr.
                                   John K. Lyons
                                   Ron E. Meisler
                              155 North Wacker Drive
                              Chicago, Illinois 60606

                                   - and -

                              Four Times Square
                              New York, New York 10036

                              Attorneys for DPH Holdings Corp., et al.,
                                 Reorganized Debtors

# EXHIBIT E

**Hearing Date And Time:  August 27, 2010 at 10:00 a.m. (prevailing Eastern time)**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
155 North Wacker Drive
Chicago, Illinois 60606
John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler

- and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036

Attorneys for DPH Holdings Corp., et al.,
    Reorganized Debtors

DPH Holdings Corp. Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

DPH Holdings Corp. Legal Information Website:
http://www.dphholdingsdocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                        :
        In re                           :    Chapter 11
                                        :
DPH HOLDINGS CORP., et al.,             :    Case No. 05-44481 (RDD)
                                        :
                                        :    (Jointly Administered)
            Reorganized Debtors.        :
                                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

REORGANIZED DEBTORS' OBJECTION TO MOTION FOR
ALLOWANCE AND PAYMENT OF EXCELLUS HEALTH PLANS, INC.
AND ITS AFFILIATES TO PERMIT LATE FILED CLAIM PURSUANT
TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9006

("OBJECTION TO EXCELLUS HEALTH PLANS, INC.'S
MOTION TO FILE LATE CLAIM")

DPH Holdings Corp. ("DPH Holdings") and certain of its affiliated reorganized

debtors in the above-captioned cases (together with DPH Holdings, the "Reorganized Debtors"),

successors of Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, former

debtors and debtors-in-possession (collectively, the "Debtors"), hereby object (the "Objection")

to the Motion For Allowance And Payment Of Excellus Health Plans, Inc. And Its Affiliates To

Permit Late Filed Claim Pursuant To Federal Rule Of Bankruptcy Procedure 9006 (Docket No.

20439) (the "Motion"), dated July 14, 2010, filed by Excellus Health Plans, Inc. ("Excellus"),

and respectfully represent as follows:

Preliminary Statement

1.      On or before June 20, 2009, the Debtors caused three copies of the Notice

Of Bar Date For Filing Proofs Of Administrative Expense (the "June 2009 Notice") to be served

on Excellus.  The June 2009 Notice stated that July 15, 2009 was the deadline for asserting an

Administrative Claim (as defined below) for the period from the commencement of these chapter

11 cases through June 1, 2009 (the "Initial Administrative Claim Bar Date").  In addition, on or

before October 9, 2009, the Reorganized Debtors caused three copies of the notice of Effective

Date[1] to be served on Excellus (the Effective Date Notice, together with the June 2009 Notice,

the "Notices") which, among other things, provided notice of the November 5, 2009 deadline for

filing Administrative Claims arising on or after June 1, 2009 (the "Final Administrative Claim

Bar Date," and together with the Initial Administrative Claim Bar Date, the "Administrative

Claim Bar Dates").  Excellus does not dispute that it received the Notices and that it had actual

knowledge of the Administrative Claims Bar Dates.  Yet Excellus waited more than a year after

the Initial Administrative Claim Bar Date and eight months after the Final Administrative Claim

---

[1]     Capitalized terms not defined in this Preliminary Statement are defined below.

2

Bar Date to request permission from this Court to file a late administrative expense request under

11 U.S.C. § 503(b) (an "Administrative Claim").  Excellus, however, offers no evidence that

would excuse its late filing under the excusable neglect standard outlined by the U. S. Supreme

Court in Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 391-92 (1993),

and as applied by the United States Court of Appeals for the Second Circuit (the "Second

Circuit").  See, e.g., Midland Cogeneration Venture Ltd. P'ship v. Enron Corp. (In re Enron

Corp.), 419 F.3d 115, 122-24 (2d Cir. 2005) (interpreting and applying Pioneer standard).

2.      Although the Second Circuit has held that the reason for the delay is the

most important factor under the Pioneer analysis, Excellus fails to present any reason, let alone a

viable one, for its failure to file a timely Administrative Claim.  Furthermore, Excellus contends

that its failure to file such a claim until a year after the Initial Administrative Claim Bar Date and

eight months after the Final Administrative Claim Bar Date is merely a "short delay."  Permitting

Excellus to file a late Administrative Claim at this late stage in the process would encourage

other claimants in a similar position to come forward, resulting in significant prejudice to the

Reorganized Debtors who possess limited resources to satisfy such claims.

3.      Excellus presents no reason for the delay and its failure to timely submit

an Administrative Claim was entirely within its control.  Specifically, the addresses to which

copies of the Notices were sent included the business addresses the Debtors knew were used by

Excellus.  Notwithstanding this ample and legally sufficient notice of the Administrative Claim

Bar Dates, Excellus did not take any action to submit an Administrative Claim.

4.      Accordingly, Excellus has not met its burden to establish excusable

neglect.  Because of its failure to timely file an Administrative Claim, Excellus is forever barred,

estopped, and enjoined from asserting an Administrative Claim against the Debtors.  (See

Modification Procedures Order ¶ 38; Modified Plan Article 10.5; Modification Approval Order ¶

3

47.)  Accordingly, this Court should not permit Excellus to file a late Administrative Claim and the Motion should be denied.

Background

B.    Delphi and Excellus Enter Into A Level Premium Agreement

5.    On October 27, 2003, Delphi and Excellus entered into a Level Premium Agreement (the "LPA").  Under the LPA, Excellus administered a medical benefits plan which covered certain Delphi employees and Delphi paid certain premiums to Excellus.  The payments due to Excellus during a given calendar year (a "Rating Period") were based on a fixed rate that was set during the summer of the year prior to the Rating Period (the "Fixed Rate").  After the Fixed Rate was set for the Rating Period, in the fall prior to the Rating Period the Superintendent of Insurance of New York approved the prevailing premium rate (the "Prevailing Rate").  Because the Fixed Rate needed to be set before the Prevailing Rate was approved, at the end of the Rating Period, the Fixed Rate paid by Delphi during the rating period was compared to the Prevailing Rate and any difference between the payments made by Delphi under the Fixed Rates and the payments that would have been made under the Prevailing Rate (the "Rate Variance") would be applied to increase or decrease the Fixed Rate negotiated during the following calendar year.  For example, for the 2008 plan year, the Fixed Rate was determined in summer 2007 and the Prevailing Rate was set in October 2007.  At the beginning of 2009, the amount paid under the Fixed Rate was compared to the amount that would have been paid under the Prevailing Rate for 2008 and any shortfall or overpayment would have been applied to increase or decrease the Fixed Rate for 2010 that would have been set in the summer of 2009 if the contract were to be renewed for 2010.

6.    Pursuant to the LPA, if the agreement were to be terminated, the difference between the amounts that would have been paid under the final Rating Period's

4

Prevailing Rate and the actual payments made during that Rating Period (the "Final Rate

Variance") would be paid by the relevant party in cash.  The LPA, however, does not address

when the Final Rate Variance becomes due and payable.

　　　　　7.　　　Delphi chose not to renew the LPA for the calendar year 2010 and the

LPA was terminated.  Because the Prevailing Rate for 2008 was higher than the Fixed Rate paid

by Delphi for 2008, on July 16, 2009, Excellus issued an invoice in the amount of $411,318.50

for the Final Rate Variance (the "Invoice").

C.　　　The Bar Dates And Deadlines For Asserting Claims

　　　　　8.　　　Bar Date For § 503(b) Claims Arising Through June 1, 2009.  On June 16,

2009, this Court entered the Modification Procedures Order which, among other things,

authorized the Debtors to commence solicitation of votes on their proposed modifications to their

first amended joint plan of reorganization (the "Proposed Modifications"), established July 15,

2009 as the Initial Administrative Claim Bar Date, [2] and included a form to be used to submit an

administrative expense claim (an "Administrative Claim Form").[3]  Accordingly, paragraph 38 of

the Modification Procedures Order provided that:

> Any party that wishes to assert an administrative claim under 11
> U.S.C. § 503(b) for the period from the commencement of these
> cases through June 1, 2009 shall file a proof of administrative

---

[2]　　The Initial Administrative Claim Bar Date was established pursuant to paragraph 38 of the Order (A)(I)
Approving Modifications To Debtors' First Amended Plan Of Reorganization (As Modified) And Related
Disclosures And Voting Procedures And (II) Setting Final Hearing Date To Consider Modifications To
Confirmed First Amended Plan Of Reorganization And (B) Setting Administrative Expense Claims Bar Date
And Alternative Transaction Hearing Date, entered by this Court on June 16, 2009 (Docket No. 17032) (the
"Modification Procedures Order").  On July 15, 2009, this Court entered the Stipulation And Agreed Order
Modifying Paragraph 38 Of Modification Procedures Order Establishing Administrative Expense Bar Date
(Docket No. 18259) to provide that paragraph 38 of the Modification Procedures Order should be amended to
require parties to submit an Administrative Claim Form (as defined below) for Administrative Claims for the
period from the commencement of these cases through May 31, 2009 rather than through June 1, 2009.

[3]　　On June 20, 2009, in accordance with the Modification Procedures Order, the Debtors caused Kurtzman Carson
Consultants LLC ("KCC") and Financial Balloting Group LLC or their agents to transmit notices containing
certain procedures for asserting an Administrative Claim and a copy of the Administrative Claim Form.

> expense (each, an "Administrative Expense Claim Form") for the
> purpose of asserting an administrative expense request, including
> any substantial contribution claims (each, an "Administrative
> Expense Claim" or "Claim") against any of the Debtors.  July 15,
> 2009 at 5:00 p.m. prevailing Eastern time shall be the deadline for
> submitting all Administrative Expense Claims (the "Administrative
> Expense Bar Date") for the period from the commencement of
> these cases through June 1, 2009.

(Modification Procedures Order ¶ 38.)  In addition, paragraph 41 of the Modification Procedures

Order provides that:

> Any party that is required but fails to file a timely Administrative
> Expense Claim Form shall be forever barred, estopped and
> enjoined from asserting such claim against the Debtors, and the
> Debtors and their property shall be forever discharged from any
> and all indebtedness, liability, or obligation with respect to such
> claim.

(Id. at ¶ 41.)

9.      On or before June 20, 2009, the Debtors, through KCC, the claims and

noticing agent in these chapter 11 cases, served Excellus with a copy of the June 2009 Notice by

first class mail at each of the addresses listed below:

| Excellus Health Planblue Choice<br>Daniel Zimmerman<br>165 Court St<br>Rochester, NY 14647 | Excellus Health Plan Inc Eft<br>Sharon Jackson Treasury Oper<br>Bc Bs Of Rochester<br>PO Box 9620<br>Rochester, NY 14604-0620 | Univera Healthcare<br>Jennifer Ruberto<br>An Excellus Company<br>205 Pk Club Ln<br>Buffalo, NY 14221-5239 |
| --- | --- | --- |

See Affidavit Of Service Of Evan Gershbein For Solicitation Materials Served On Or Before

June 20, 2009, dated June 23, 2009 (Docket No. 17267), the relevant portions of which are

attached hereto as Exhibit A.

10.     Bar Date For § 503(b) Claims Arising After June 1, 2009.  On July 30,

2009, this Court entered its Order Approving Modifications Under 11 U.S.C. § 1127(b) To (I)

First Amended Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates,

6

Debtors And Debtors-In-Possession, As Modified And (II) Confirmation Order (Docket No.

12359) (Docket No. 18707) (the "Modification Approval Order"), which approved the Debtors'

Proposed Modifications (the "Modified Plan").  Paragraph 47 of the Modification Approval

Order provides in part:

> [R]equests for payment of an Administrative [Expense] Claim
> (other than as set forth in the Modified Plan or otherwise
> contemplated by the Master Disposition Agreement, i.e., for such
> claims arising on or after June 1, 2009) must be filed, in
> substantially the form of the Administrative Claim Request Form
> attached as Exhibit 10.5 to the Modified Plan, with the Claims
> Agent and served on counsel for the Debtors and the Creditors'
> Committee no later than 30 days notice of after the Effective Date
> is filed on the docket of the Chapter 11 Cases.  **Any request for
> payment of an Administrative Claim pursuant to this
> paragraph that is not timely filed and served shall be
> disallowed automatically** without the need for any objection from
> the Debtors or the Reorganized Debtors.

(Modification  Approval Order ¶ 47 (emphasis added).)[4]

        11.      On October 6, 2009 (the "Effective Date"), the Debtors substantially

consummated the Modified Plan and closed the transactions under the Master Disposition

Agreement, dated as of July 30, 2009, by and among Delphi, GM Components Holdings, LLC,

General Motors Company, Motors Liquidation Company (f/k/a General Motors Corporation),

DIP Holdco 3 LLC (which assigned its rights to DIP Holdco LLP, subsequently renamed Delphi

Automotive LLP, a United Kingdom limited liability partnership), and the other sellers and

buyers party thereto.  In connection therewith, DIP Holdco LLP, through various subsidiaries

and affiliates, acquired substantially all of the Debtors' global core businesses, and GM

---

[4]    Because the liabilities asserted in the Motion relate to amounts due under the LPA for the 2008 plan year and
which could have been calculated by early 2009, the Reorganized Debtors believe that Excellus was required to
file an Administrative Claim by the Initial Administrative Claim Bar Date.  If, however, this court were to
determine that Excellus had until the Final Administrative Claim Bar Date to file a timely Administrative Claim,
the Motion was still filed more than eight months after the Final Administrative Claim Bar Date.  As set forth
below, Excellus fails to meet the excusable neglect standard set forth in Pioneer regardless of which bar date
applies.

Components Holdings, LLC and Steering Solutions Services Corporation acquired certain U.S.

manufacturing plants and the Debtors' non-core steering business, respectively.  The

Reorganized Debtors have emerged from chapter 11 as DPH Holdings and affiliates and remain

responsible for the post-Effective Date administration of these chapter 11 cases, including the

disposition of certain retained assets, the payment of certain retained liabilities as provided for

under the Modified Plan, and the eventual closing of the cases.

        12.     In compliance with paragraph 47 of the Modification Approval Order, the

Notice Of (A) Order Approving Modifications To First Amended Joint Plan Of Reorganization

Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession And (B)

Occurrence Of Effective Date (Docket No. 18958) (the "Effective Date Notice") was filed with

this Court on October 6, 2009.  Upon the occurrence of the Effective Date on October 6, 2009,

the Final Administrative Claim Bar Date was recognized as November 5, 2009.  As set forth

above, paragraph 47 of the Modification Approval Order provides that any administrative claim

for which a party has failed to timely file and serve a request for payment is automatically

disallowed without the need for any objection from the Debtors or the Reorganized Debtors.

(Modification Approval Order ¶ 47.)

        13.     On or before October 9, 2009, KCC served Excellus by first class mail

with a copy of the Effective Date Notice (at the address set forth in the creditor matrix), which,

among other things, provided notice of the Final Administrative Claim Bar Date, at each of the

addresses listed below:

| Excellus Health Planblue Choice Daniel Zimmerman 165 Court St Rochester, NY 14647 | Excellus Health Plan Inc Eft Sharon Jackson Treasury Oper Bc Bs Of Rochester PO Box 9620 Rochester, NY 14604-0620 | Univera Healthcare Jennifer Ruberto An Excellus Company 205 Pk Club Ln Buffalo, NY 14221-5239 |
| --- | --- | --- |

See Affidavit Of Service Of Evan Gershbein For Notice Of Effective Date Materials Served On

Or Before October 9, 2009, dated October 14, 2009 (Docket No. 18978), the relevant portions of

which are attached hereto as Exhibit B.

14.     Moreover, notice of the Final Administrative Claim Bar Date was also

published in The New York Times, USA Today (national and international editions), and The

Wall Street Journal (national and global editions). (See Affidavits of Publication at Docket Nos.

18990, 18989, and 19001.)

D.     Filing Of The Excellus Motion

15.     On July 19, 2010, more than a year after the Initial Administrative Claim

Bar Date and eight months after the Final Administrative Claim Bar Date, Excellus filed its

Motion seeking a determination that the failure to timely file an Administrative Claim was the

result of excusable neglect and asking this Court to permit a late filed Administrative Claim.

Argument

E.     Excellus Received Notice Of Administrative Claim Bar Dates

16.     Excellus does not dispute that it received the Notices setting forth the

Administrative Claim Bar Dates.  The Debtors provided adequate service of the June 2009

Notice and the Effective Date Notice and Excellus was therefore obligated to file any proofs of

claim by the applicable bar dates.[5]

17.     Because Excellus received the Notices, it was obligated to file any

Administrative Claims before the applicable Administrative Claim Bar Dates, in accordance with

---

[5]     As discussed above, Excellus was served with the June 2009 Notice and the Effective Date Notice.  Because the Debtors served copies of the Notices on Excellus directly, the Debtors' mailing of the Notices was proper and legally sufficient.  Courts uniformly presume that an addressee receives a properly mailed item when the sender presents proof that it is properly addressed, stamped, and deposited in the mail.  See, e.g., Hagner v. U.S., 285 U.S. 427, 430 (1932) ("The rule is well settled that proof that a letter properly directed was placed in a post office creates a presumption that it reached its destination in usual time and was actually received by the person to whom it was addressed.").

9

the procedures referenced in the Modification Procedures Order and Modification Approval

Order, or be barred, estopped, and enjoined from asserting those claims against the Reorganized

Debtors.  Accordingly, this Court should deny the Motion.

F.    Excellus Has Failed To Meet Its Burden Of Proof For Establishing Excusable Neglect

18.    Because Excellus received proper notice of the Administrative Claim Bar

Dates, Excellus can obtain the relief requested in the Motion only if it meets its burden to

establish excusable neglect pursuant to Bankruptcy Rule 9006(b)(1).  See In re R.H. Macy & Co.,

Inc., 161 B.R. 355, 360 (Bankr. S.D.N.Y. 1993) ("the burden of proving 'excusable neglect' is on

the creditor seeking to extend the bar date"); see also In re Dana Corp., 2007 WL 1577763, at *3

(Bankr. S.D.N.Y. 2007) (finding that the excusable neglect analysis applies to administrative

expense claims under section 503); In re DPH Holdings Corp., Hr'g Tr. at 44-45, August 20,

2009 [6] ("given the practice of treating claims and disputes related to missed bar dates for

administrative claims the same way as the courts treat missed bar dates for pre-petition claims, I

find . . . those cases . . . to be appropriate here, and for all intents and purposes on all fours.").

19.    Excellus has not met its burden for establishing excusable neglect under

the test outlined by the United States Supreme Court in Pioneer Investment Services Co. v.

Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 395 (1993).  In Pioneer, the Supreme Court held

that excusable neglect is the failure to comply with a filing deadline because of negligence.  Id.

at 394.  In examining whether a creditor's failure to file a claim by the bar date constituted

excusable neglect, the Supreme Court found that the factors include "[a] the danger of prejudice

to the debtor, [b] the length of the delay and its potential impact on judicial proceedings, [c] the

reason for the delay, including whether it was within the reasonable control of the movant, and [d]

---

[6]    A copy of the relevant portion of the August 20, 2009 hearing transcript is attached hereto as Exhibit C.

whether the movant acted in good faith." Id. at 395.  The Second Circuit has held the most

important factor is the reason for the delay, including whether it was within the reasonable

control of the movant.  Midland Cogeneration Venture Ltd. P'ship v. Enron Corp. (In re Enron

Corp.), 419 F.3d 115, 122-24 (2d Cir. 2005).  As this Court has consistently ruled on motions

under Bankruptcy Rule 9006(b)(1) seeking leave to file an untimely proof of claim, a movant

must first show that its failure to file a timely claim constituted "neglect," as opposed to

willfulness or a knowing omission.  Then, a movant must show by a preponderance of the

evidence that the neglect was "excusable."  See, e.g., Order Pursuant To 11 U.S.C. § 502(b) And

Fed. R. Bankr. P. 3007 (I) Denying United States Of America's Motion For Leave To File Late

Claim And (II) Disallowing And Expunging Proof Of Claim Number 16727, entered March 6,

2008 (Docket No. 12980) at Exh. A p. 2 (citing Pioneer), aff'd March 24, 2009 (Docket No.

16515).

       20.      Although the third factor of the Pioneer test – the reason for the delay – is

often dispositive, in this case three factors weigh in favor of the Reorganized Debtors: the reason

for the delay, the prejudice to the Reorganized Debtors, and the length of the delay.  Accordingly,

Excellus fails to meet the excusable neglect standard and the Motion should be denied.

       (i)    Reason For The Delay

       21.      In the Second Circuit, the reason for the delay is the most important factor

and is often dispositive. See In re Enron Corp., 419 F.3d at 122-24; In re Musicland Holding

Corp., 356 B.R. 603, 608 (Bankr. S.D.N.Y. 2006) (noting that the Second Circuit emphasizes the

reason for the delay in determining excusable neglect and stating that, "[t]he other factors are

relevant only in close cases" (citing Williams v. KFC Nat'l Mgmt. Co., 391 F.3d 411, 415-16 (2d

Cir. 2004))).

22.     Excellus has offered no reason for this delay, let alone a viable reason. This is not surprising because Excellus does not dispute that it was properly served with the Notices.  In fact, the Notices were served on the same street address as the one listed on Excellus's Invoice for the Debtors to submit payment.  Moreover, as evidenced by the Invoice dated July 16, 2009, Excellus undoubtedly knew approximately four months in advance of the Final Administrative Claim Bar Date that the Final Rate Variance was due and payable.  Yet, more than a year went by since the Invoice was issued before Excellus sought leave of this Court to file an untimely Administrative Claim.

23.     Courts in the Second Circuit have "taken a hard line" in applying the Pioneer test and focus on the reason for the delay, including whether it was within the reasonable control of the movant.  Silivanch v. Celebrity Cruises, Inc., 333 F.3d 355, 368 (2d Cir. 2003). "[T]he equities will rarely if ever favor a party who fail[s] to follow the clear dictates of a court rule [and] where the rule is entirely clear, we continue to expect that a party claiming excusable neglect will, in the ordinary course, lose under the Pioneer test."  Midland Cogeneration, 419 F.3d at 122-23.  Because Excellus failed to follow this Court's order to file proofs of administrative expense by the Administrative Claim Bar Dates, the reason for the delay was entirely within the control of Excellus.  Accordingly, because Excellus has not provided a valid reason for its delay in filing an Administrative Claim, this factor weighs heavily in favor of the Reorganized Debtors.

(ii)     Danger Of Prejudice To The Debtor

24.     Allowing Excellus to file a late claim more than nine months after the consummation of the Modified Plan will prejudice the Reorganized Debtors as well as other creditors in these cases who filed timely administrative expense claims.  Allowing untimely claims at this time may open the floodgates to any potential claimant who failed to file an

12

administrative expense claim on or before the applicable administrative claim bar date.  Courts

often have recognized the danger of opening the floodgates to potential claimants.  See, e.g., In

re Enron Corp., 419 F.3d at 132 n. 2 ("courts in this and other Circuits regularly cite the potential

'flood' of similar claims as a basis for rejecting late-filed claims"); In re Kmart Corp., 381 F.3d

709, 714 (7th Cir. 2004) (noting that if court allowed all similar late-filed claims, "Kmart could

easily find itself faced with a mountain of such claims"); In re Enron Creditors Recovery Corp.,

370 B.R. 90, 103 (Bankr. S.D.N.Y. 2007) ("'It can be presumed in a case of this size with tens of

thousands of filed claims, there are other similarly-situated potential claimants. . . . Any deluge

of motions seeking similar relief would prejudice the Debtors' reorganization process.'" (citation

omitted)); In re Dana Corp., 2007 WL 1577763, at *6 ("the floodgates argument is a viable one").

Accordingly, Excellus's argument that their claim does not prejudice the Reorganized Debtors

because the $411,318.50  amount of the claim "is minimal compared to the overall amount of the

administrative expenses" and "only a tiny fraction of the total administrative claims asserted

against the Debtors in these cases," is without merit.

       25.     The Administrative Claim Bar Dates were established to identify

administrative expense claims that would be paid pursuant to the terms of the Modified Plan.

Allowing Excellus to prevail on the Motion may inspire many other similarly situated potential

claimants to file similar motions.  Any potential claimant who, by its own error, failed to file a

timely administrative expense claim may seek to follow Excellus's lead.  Accordingly,

establishing a precedent for allowing untimely claims without a compelling justification would

greatly prejudice the Reorganized Debtors, their estates, and their creditors and undermine the

Debtors' restructuring efforts.

(iii)    Length Of The Delay

26.    Finally, the length of the delay also favors denying Excellus's Motion.
Given that Excellus had all the necessary information to complete its reconciliation of the 2008
premium payments by early 2009, it should have been aware of its Administrative Claim at that
time, well in advance of the Administrative Claim Bar Dates.  Excellus, however, did not even
issue its Invoice relating to the Final Variance Payment until July 16, 2009.  Furthermore,
Excellus failed to file an Administrative Claim for more than a year after it had issued the
Invoice.

27.    The Second Circuit has adopted a "strict" standard in the area of excusable
neglect, Asbestos Personal Injury Plaintiffs v. Travelers Indem. Co.  (In re Johns-Manville
Corp.), 476 F.3d 118, 120 (2d Cir. 2007).  Although Excellus waited more than a year to file its
late claim, Excellus characterizes this as a "short delay."  However, Courts considering excusable
neglect in this jurisdiction have characterized delays of six months as "substantial." See In re
Dana Corp., 2007 WL 1577763, at *5 (citing In re Enron, 419 F.3d at 125 (delay of more than
six months after bar date was "substantial")).  Accordingly, this factor also weighs in favor of the
Reorganized Debtors and further supports denying the Motion.

Conclusion

28.    Excellus has failed to provide any evidence of circumstances justifying the
extraordinary relief it seeks under the excusable neglect standard under Pioneer and has not met
its burden for establishing excusable neglect.  The Motion should, therefore, be denied.

14

WHEREFORE the Reorganized Debtors respectfully request that this Court enter
an order (a) denying the Motion, and (b) granting them such other and further relief as is just.


Dated: New York, New York
      August 20, 2010

           SKADDEN, ARPS, SLATE, MEAGHER
             & FLOM LLP


           By: /s/ John Wm. Butler, Jr.
             John Wm. Butler, Jr.
             John K. Lyons
             Ron E. Meisler
           155 North Wacker Drive
           Chicago, Illinois 60606
           (312) 407-0700

                - and –

           Four Times Square
           New York, New York 10036
           (212) 735-3000

           Attorneys for DPH Holdings Corp., et al.,
             Reorganized Debtors

## Exhibit A

IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                      :
         In re                                        :    Chapter 11
                                                      :
DELPHI CORPORATION, <u>et al.</u>,                    :    Case No. 05-44481 (RDD)
                                                      :
                               Debtors.               :    (Jointly Administered)
                                                      :
- - - - - - - - - - - - - - - - - - - - - - - - - - - x

<u>AFFIDAVIT OF SERVICE</u>

I, Evan Gershbein, being duly sworn according to law, depose and say that I am employed by Kurtzman Carson Consultants LLC, the Court appointed claims and noticing agent for the Debtors in the above-captioned cases. I submit this Affidavit in connection with the service of the solicitation materials for the **First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-In-Possession (As Modified)** [Docket No. 17030] ("the Plan").

On December 1, 2005, the Court signed and entered an Order Pursuant to 28 U.S.C. § 156(c) Authorizing Retention and Appointment of Kurtzman Carson Consultants LLC as Claims, Noticing and Balloting Agent for Clerk of Bankruptcy Court [Docket No. 1374] designating KCC as the official Balloting Agent.

KCC is charged with the duty of printing and distributing Solicitation Packages to creditors and other interested parties pursuant to the instructions set forth in the **Order (A)(I) Approving Modifications to Debtors' First Amended Plan of Reorganization (as Modified) and Related Disclosures and Voting Procedures and (II) Setting Final Hearing Date to Consider Modifications to Confirmed First Amended Plan of Reorganization and (B) Setting Administrative Expense Claims Bar Date and Alternative Transaction Hearing Date ("Modification Procedures Order")** [Docket No. 17032] ("Modification Procedures Order") as entered by the Court on June 16, 2009.

The various solicitation materials consist of the following documents:

1) Ballot for Accepting or Rejecting First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-In-Possession (As Modified) (Class A Secured Claims) ("Class A Ballot") (attached hereto as <u>Exhibit A</u>);

2) Ballot for Accepting or Rejecting First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-In-Possession (As Modified) (Class C-1 General Unsecured Claims) ("Class C-1 Ballot") (attached hereto as <u>Exhibit B</u>);



3) Ballot for Accepting or Rejecting First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-In-Possession (As Modified) (Class C-2 Pension Benefit Guaranty Corporation Claims) ("Class C-2 Ballot") (attached hereto as Exhibit C);

4) Ballot for Accepting or Rejecting First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-In-Possession (As Modified) (Class D General Motors Corporation Claim) ("Class D Ballot") (attached hereto as Exhibit D);

5) Notice of (1) Approval of Supplement; (2) Hearing on Modifications to Plan; (3) Deadline and Procedures for Filing Objections to Modifications of Plan; (4) Deadline and Procedures for Temporary Allowance of Certain Claims for Voting Purposes; (5) Treatment of Certain Unliquidated, Contingent, or Disputed Claims for Noticing, Voting, and Distribution Purposes; (6) Record Date; (7) Voting Deadline for Receipt of Ballots; and (9) Proposed Releases, Exculpation, and Injunction in Modified Plan ("Final Modification Hearing Notice") (attached hereto as Exhibit E);

6) a letter from the Delphi Corporation Official Committee of Unsecured Creditors ("Creditors' Committee Letter") (attached hereto as Exhibit F);

7) First Amended Disclosure Statement Supplement with Respect to First Amended Plan of Reorganization (As Modified), Modification Procedures Order and December 10, 2007 Solicitation Procedures Order, in CD-ROM format ("CD-ROM")

8) Notice of Non-Voting Status with Respect to Certain Claims and Interests ("Notice of Non-Voting Status") (attached hereto as Exhibit G);

9) Notice to Unimpaired Creditors of (I) Filing of Proposed Modified Plan of Reorganization, (II) Treatment of Claims Under Modified Plan, (III) Hearing on Approval of Modified Plan, and (IV) Deadline and Procedures for Filing Objections Thereto ("Unimpaired Notice") (attached hereto as Exhibit H);

10) a memorandum from Kurtzman Carson Consultants to additional notice parties of ballot recipients ("Ballot Notice Party Memo") (attached hereto as Exhibit I);

11) Notice of Bar Date for Filing Proofs of Administrative Expense ("Administrative Bar Date Notice") (attached hereto as Exhibit J); and

12) Administrative Expense Claim Form ("Administrative Expense Claim Form") (attached hereto as Exhibit K).

On or before June 20, 2009, I caused to be served a personalized Class A Ballot, Final Modification Hearing Notice, Creditors' Committee Letter, CD-ROM, Administrative Bar Date Notice, Administrative Expense Claim Form and a pre-addressed, postage pre-paid return envelope upon the parties listed on <u>Exhibit L</u> via postage pre-paid U.S. mail.

On or before June 20, 2009, I caused to be served a personalized Class C-1 Ballot, Final Modification Hearing Notice, Creditors' Committee Letter, CD-ROM, Administrative Bar Date Notice, Administrative Expense Claim Form and a pre-addressed, postage pre-paid return envelope upon the parties listed on <u>Exhibit M</u> via postage pre-paid U.S. mail.

On or before June 20, 2009, I caused to be served a personalized Class C-2 Ballot, Final Modification Hearing Notice, Creditors' Committee Letter, CD-ROM, Administrative Bar Date Notice, Administrative Expense Claim Form and a pre-addressed, postage pre-paid return envelope upon the party listed on <u>Exhibit N</u>  via postage pre-paid U.S. mail.

On or before June 20, 2009, I caused to be served a personalized Class D Ballot, Final Modification Hearing Notice, Creditors' Committee Letter, CD-ROM, Administrative Bar Date Notice, Administrative Expense Claim Form and a pre-addressed, postage pre-paid return envelope upon the party listed on <u>Exhibit O</u>  via postage pre-paid U.S. mail.

On or before June 20, 2009, I caused to be served the Final Modification Hearing Notice, Creditors' Committee Letter, CD-ROM, Administrative Bar Date Notice and Administrative Expense Claim Form upon the parties listed on <u>Exhibit P</u> via postage pre-paid U.S. mail.

On or before June 20, 2009, I caused to be served the Final Modification Hearing Notice, Notice of Non-Voting Status, Administrative Bar Date Notice and Administrative Expense Claim Form upon the parties listed on <u>Exhibit Q</u> via postage pre-paid U.S. mail.

On or before June 20, 2009, I caused to be served the Final Modification Hearing Notice, Creditors' Committee Letter, CD-ROM, Unimpaired Notice, Administrative Bar Date Notice and Administrative Expense Claim Form upon the parties listed on <u>Exhibit R</u> via postage pre-paid U.S. mail.

On or before June 20, 2009, I caused to be served the Final Modification Hearing Notice, Creditors' Committee Letter, CD-ROM, Notice of Non-Voting Status, Administrative Bar Date Notice and Administrative Expense Claim Form upon the parties listed on <u>Exhibit S</u> via postage pre-paid U.S. mail.

On or before June 20, 2009, I caused to be served the Final Modification Hearing Notice, Creditors' Committee Letter, CD-ROM, Ballot Notice Party Memo, Administrative Bar Date Notice and Administrative Expense Claim Form upon the parties listed on <u>Exhibit T</u> via postage pre-paid U.S. mail.

On or before June 20, 2009, I caused to be served the Final Modification Hearing Notice, Administrative Bar Date Notice and Administrative Expense Claim Form upon the parties listed on <u>Exhibit U</u> via postage pre-paid U.S. mail.

Dated: June 23, 2009

_____
Evan Gershbein

State of California
County of Los Angeles

Subscribed and sworn to (or affirmed) before me on this 23rd day of June, 2009, by Evan Gershbein, proved to me on the basis of satisfactory evidence to be the person who appeared before me.

Signature _____

Commission Expires: _10-1-09_

L. MAREE SANDERS
Commission # 1610322
Notary Public - California
Los Angeles County
My Comm. Expires Oct 1, 2009

4

# EXHIBIT J

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - -  -  x
                                                          :
         In re                                            :    Chapter 11
                                                          :
DELPHI CORPORATION, et al.,                               :    Case No. 05-44481 (RDD)
                                                          :
                               Debtors.      :    (Jointly Administered)
                                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

### NOTICE OF BAR DATE FOR FILING PROOFS OF ADMINISTRATIVE EXPENSE

PLEASE TAKE NOTICE that on June 16, 2009, the United States Bankruptcy
Court for the Southern District of New York (the "Bankruptcy Court") entered an order (the
"Modification Procedures Order") (Docket No. 17032), which among other things, established
**July 15, 2009** (the "Administrative Expense Bar Date") as the last date to file proof of
administrative expense (each, an "Administrative Expense Claim Form") for the purpose of
asserting administrative expense claims ("Administrative Expense Claims" or "Claims"), against
Delphi Corporation ("Delphi") and its affiliated debtors and debtors-in-possession (the "Debtors"
or "Company").  The Administrative Expense Bar Date and the procedure set out below for filing
proofs of administrative expense with respect to Claims apply to all alleged postpetition Claims
against the Debtors that arose, accrued, or that were incurred on or before **June 1, 2009**.

PLEASE TAKE FURTHER NOTICE that the Modification Procedures Order
requires all parties to file an Administrative Expense Claim Form with Kurtzman Carson
Consultants LLC ("KCC"), the claims, noticing, and solicitation agent in these cases, **so that
such Administrative Expense Claim Form is received on or before 5:00 p.m., prevailing
Eastern time, on the Administrative Expense Bar Date**.

### WHO SHOULD FILE AN ADMINISTRATIVE EXPENSE CLAIM FORM

You must file an Administrative Expense Claim Form if you believe that you are
entitled to an Administrative Expense Claim as described in 11 U.S.C. § 503, except as provided
below.

You do not need to file an Administrative Expense Claim Form for (i) any claim
for postpetition goods and services delivered to the Debtors prior to June 1, 2009 that are not yet
due and payable pursuant to the applicable contract terms, (ii) employee claims arising prior to
June 1, 2009 for wages, salary, and other benefits arising in the ordinary course of business that
are not yet due and payable; (iii) any claim for which the party has already properly filed an
Administrative Expense Claim Form or a proof of claim form with the Court which has not been
expunged by order of the Court and provided that such proof of claim clearly and unequivocally
sets forth that such claim is made for an administrative expense priority; (iv) any claim for fees
and/or reimbursement of expenses by a professional employed in these chapter 11 cases accruing
through January 25, 2008, to the extent that such claim is subject to this Court's Interim

Compensation Orders;[1] or (v) any claim asserted by any Debtor or any direct or indirect subsidiary of any of the Debtors in which the Debtors in the aggregate directly or indirectly own, control or hold with power to vote, 50% or more of the outstanding voting securities of such subsidiary.

## TIME AND PLACE FOR FILING ADMINISTRATIVE EXPENSE CLAIMS

**A signed original of any Administrative Expense Claim Form, together with accompanying documentation, must be delivered to Kurtzman Carson Consultants LLC, 2335 Alaska Avenue, El Segundo, CA 90245, so as to be received no later than 5:00 p.m., prevailing Eastern time, on the Administrative Expense Bar Date**.  Claims may be submitted in person or by courier service, hand delivery or mail addressed to KCC at the foregoing address. Any Claim submitted by facsimile, e-mail, or by other electronic means will not be accepted and will not be deemed filed until such Claim is submitted by one of the methods described in the preceding sentence.  Claims will be deemed filed only when actually received by KCC.  If you wish to receive acknowledgment of KCC's receipt of your Claim, you must also submit a copy of your original Claim and a self-addressed, stamped envelope.

## CONSEQUENCES OF FAILURE TO TIMELY SUBMIT ADMINISTRATIVE EXPENSE CLAIM FORM

**ANY PARTY THAT IS REQUIRED BUT FAILS TO FILE AN ADMINISTRATIVE EXPENSE CLAIM FORM IN ACCORDANCE WITH THIS NOTICE ON OR BEFORE THE ADMINISTRATIVE EXPENSE BAR DATE SHALL BE FOREVER BARRED, ESTOPPED, AND ENJOINED FROM ASSERTING SUCH CLAIM AGAINST THE DEBTORS AND REORGANIZED DEBTORS, AS APPLICABLE, AND THEIR PROPERTY SHALL BE FOREVER DISCHARGED FROM ANY AND ALL INDEBTEDNESS, LIABILITY, OR OBLIGATION WITH RESPECT TO SUCH CLAIM**.

---

[1] See Order Under 11 U.S.C. § 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals, dated November 4, 2005 (Docket No. 869) (the "Interim Compensation Order"); Supplemental Order Under 11 U.S.C. § 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals, dated March 8, 2006 (Docket No. 2747) (the "Supplemental Compensation Order"); Second Supplemental Order Under 11 U.S.C. Section 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals, dated March 28, 2006 (Docket No. 2986) (the "Second Supplemental Interim Compensation Order"); and Third Supplemental Order Under 11 U.S.C. § 331 Establishing Procedures For Interim Compensation And Reimbursement Of Expenses Of Professionals, dated May 5, 2006 (Docket No. 3630) (the "Third Supplemental Interim Compensation Order"); Fourth Supplemental Order Under 11 U.S.C. Section 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals, dated July 13, 2006 (Docket No. 4545) (the "Fourth Supplemental Interim Compensation Order"); Fifth Supplemental Order Under 11 U.S.C. Section 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses, dated October 13, 2006 (Docket No. 5310) (the "Fifth Supplemental Interim Compensation Order"); Sixth Supplemental Order Under 11 U.S.C. Section 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals, dated December 12, 2006 (Docket No. 6145) (the "Sixth Supplemental Interim Compensation Order"); and the Seventh Supplemental Order Under 11 U.S.C. §331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals, dated January 28, 2008 (Docket No. 12367) (together with the Interim Compensation Order, the Supplemental Compensation Order, the Second Supplemental Interim Compensation Order, the Third Supplemental Interim Compensation Order, the Fourth Supplemental Interim Compensation Order, the Fifth Supplemental Interim Compensation Order, and the Sixth Interim Compensation Order, the "Interim Compensation Orders").

PLEASE TAKE FURTHER NOTICE that all pleadings and orders of the Bankruptcy Court are publicly available along with the docket and other case information by accessing the Delphi Legal Information Website at www.delphidocket.com and may also be obtained, upon reasonable written request, from the Creditor Voting Agent, Kurtzman Carson Consultants LLC, 2335 Alaska Avenue, El Segundo, California 90245, Att'n: Delphi Corporation, et al.

Delphi Legal Information Hotline:          Delphi Legal Information Website:
Toll Free:  (800) 718-5305                 http://www.delphidocket.com
International:  (248) 813-2698

Dated: New York, New York
       June 16, 2009

SKADDEN, ARPS, SLATE, MEAGHER  & FLOM LLP

John Wm. Butler, Jr.                       Kayalyn A. Marafioti
Ron E. Meisler                             Thomas J. Matz
333 West Wacker Drive, Suite 2100          Four Times Square
Chicago, Illinois 60606                    New York, New York 10036

Attorneys for Delphi Corporation, et al., Debtors and Debtors-in-Possession

# EXHIBIT K

**United States Bankruptcy Court**

Southern District of New York

Delphi Corporation et al. Claims Processing

c/o Kurtzman Carson Consultants LLC, 2335 Alaska Avenue

El Segundo, California 90245

**Administrative Expense Claim Form**

| Debtor against which claim is asserted : | Case Name and Number |
|---|---|
| Delphi Corporation, *et al.* 05-44481 | In re Delphi Corporation., *et al.*  05-44481 |
| | Chapter 11, Jointly Administered |

**NOTE: This form should not be used to make a claim in connection with a request for payment for goods or services provided to the Debtors prior to the commencement of the case.  This Administrative Expense Claim Form is to be used solely in connection with a request for payment of an administrative expense arising after commencement of the case but prior to June 1, 2009, pursuant to 11 U.S.C. § 503.**

| Name of Creditor *(The person or other entity to whom the debtor owes money or property)* | ☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars. |
|---|---|
| | ☐ Check box if you have never received any notices from the bankruptcy court in this case. |
| Name and Address Where Notices Should be Sent | ☐ Check box if the address differs from the address on the envelope sent to you by the court. |
| Telephone No. | **THIS SPACE IS FOR COURT USE ONLY** |

| ACCOUNT OR OTHER NUMBER BY WHICH CREDITOR IDENTIFIES DEBTOR: | Check here if this claim  ☐ replaces<br>☐ amends a previously filed claim, dated: _____ |
|---|---|

**1. BASIS FOR CLAIM**

- ☐ Goods sold
- ☐ Services performed
- ☐ Money loaned
- ☐ Personal injury/wrongful death
- ☐ Taxes
- ☐ Other (Describe briefly)

- ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
- ☐ Wages, salaries, and compensation (Fill out below)
  Your social security number _____
  Unpaid compensation for services performed
  from _____ to _____
  (date)              (date)

| 2. DATE DEBT WAS INCURRED | 3.  IF COURT JUDGMENT, DATE OBTAINED: |
|---|---|

**4. TOTAL AMOUNT OF ADMINISTRATIVE CLAIM: $_____**
☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim.  Attach itemized statement of all additional charges.

**5. Brief Description of Claim (attach any additional information):**

**THIS SPACE IS FOR COURT USE ONLY**

6. **CREDITS AND SETOFFS**: The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.  In filing this claim, claimant has deducted all amounts that claimant owes to debtor.

7. **SUPPORTING DOCUMENTS**: *Attach copies of supporting documents*, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, or evidence of security interests.  DO NOT SEND ORIGINAL DOCUMENTS.  If the documents are not available, explain.  If the documents are voluminous, attach a summary. Any attachment must be 8-1/2" by 11".

8. **DATE-STAMPED COPY**: To receive an acknowledgement of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

| Date | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any) |
|---|---|

*The instructions below are general explanations of the law. In particular types of cases or circumstances, such as bankruptcy cases that are not filed voluntarily by a debtor, there may be exceptions to the general rules.*

| "DEFINITIONS" | | |
|---|---|---|
| **DEBTORS**<br>The person, corporation, or other entity that has filed a bankruptcy case is called the debtor.<br><br>**CREDITOR**<br>A creditor is any person, corporation, or other entity to whom the debtor owes a debt. | **ADMINISTRATIVE EXPENSE CLAIM**<br>Any right to payment constituting a cost or expense of administration of any of the Chapter 11 Cases arising under 11 U.S.C. § 503(b) of the Bankruptcy Code for the period from the commencement of these cases through June 1, 2009, provided however, that you do **not** need to file an Administrative Expense Claim Form for (i) any claim for postpetition goods and services delivered to the Debtors prior to June 1, 2009 that are not yet due and payable pursuant to the applicable contract terms; (ii) employee claims arising prior to June 1, 2009 for wages, salary, and other benefits arising in the ordinary course of business that are not yet due and payable; (iii) any claim for which the party has already properly filed an Administrative Expense Claim Form (as defined in the Modification Procedures Order) (Docket No. 17032) or a proof of claim form with the Court which has not been expunged by order of the Court and provided that such proof of claim clearly and unequivocally sets forth that such claim is made for an administrative expense priority; (iv) any claim for fees and/or reimbursement of expenses by a professional employed in these chapter 11 cases accruing through January 25, 2008, and which are subject to this Court's Interim Compensation Orders (as defined in Modification Procedures Order); or (v) any claim asserted by any Debtor or any direct or indirect subsidiary of any of the Debtors in which the Debtors in the aggregate directly or indirectly own, control or hold with power to vote, 50% or more of the outstanding voting securities of such subsidiary. | **ADMINISTRATIVE BAR DATE**<br>Pursuant to section 10.2 of the Modified Plan and paragraphs 38-39 of the Modification Procedures Order, all requests for payment of an Administrative Claim that has arisen between October 8, 2005 and June 1, 2009 must be filed no later than **July 15, 2009.** |

**Items to be completed in Administrative Expense Claim Form (if not already filled in):**

**Information about Creditor:**
Complete the section giving the name, address, and telephone number of the creditor to whom the Debtors owe money or property, and the Debtors' account number(s), if any. If anyone else has already filed an Administrative Expense Claim Form relating to this debt, if you never received notices from the bankruptcy court about this case, if your address differs from that to which the court sent notice, or if this Administrative Expense Claim Form replaces or changes an Administrative Expense Claim Form that was already filed, check the appropriate box on the form.

**1. Basis for Claim:**
Check the type of debt for which the Administrative Expense Claim Form is being filed. If the type of debt is not listed, check "Other" and briefly describe the type of debt. If you were an employee of the Debtors, fill in your social security number and the dates of work for which you were not paid.

**2. Date Debt Incurred:**
Fill in the date when the Debtors first owed the debt.

**3. Court Judgments:**
If you have a court judgment for this debt, state the date the court entered the judgment.

**4. Total Amount of Administrative Claim:**
Fill in the total amount of the entire Claim. If interest or other charges in addition to the principal amount of the Claim are included, check the appropriate place on the form and attach an itemization of the interest and charges.

**5. Brief Description of Claim:**
Describe the Administrative Expense Claim including, but not limited to, the actual and necessary costs and expenses of operating one or more of the Debtors' Estates or any actual and necessary costs and expenses of operating one or more of the Debtors' businesses.

**6. Credits and Setoffs:**
By signing this Administrative Expense Claim Form, you are stating under oath that in calculating the amount of your Claim you have given the Debtors credit for all payments received from the Debtors.

**7. Supporting Documents:**
You must attach to this Administrative Expense Claim Form copies of documents that show the Debtors owe the debt claimed or, if the documents are too lengthy, a summary of those documents. If documents are not available you must attach an explanation of why they are not available.

**8. Date-Stamped Copy:**
To receive an acknowledgement of the filing of your Claim, enclose a stamped, self-addressed envelope and copy of this Administrative Expense Claim Form.

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 357

# EXHIBIT U

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | Address4 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|---|
| EXCEL AIR TOOL CO INC | | 4778 DUES DR | | | | CINCINNATI | OH | 45246 | |
| EXCEL AIR TOOL CO INC EFT | | PO BOX 640212 | | | | CINCINNATI | OH | 45264-0212 | |
| EXCEL AUTOMATION | CHERYL WEBER | 9471 GREYSTONE | | | | BRECKSVILLE | OH | 44141 | |
| EXCEL CIRCUITS CO | | 50 NORTHPOINTE DR | | | | ORION | MI | 48359-1846 | |
| EXCEL CIRCUITS CO INC | | C/O WHITESELL R O & ASSOCIATE | 8332 OFFICE PK DR STE A | | | GRAND BLANC | MI | 48439-2035 | |
| EXCEL COMPUTER | | 3330 EARHART DR | STE 212 | | | CARROLLTON | TX | 75006 | |
| EXCEL ELECTROCIRCIUIT INC EFT | | 50 NORTHPOINTE DR | | | | ORION | MI | 48359-1846 | |
| EXCEL ELECTROCIRCUIT INC | | 50 NORTHPOINTE DR | | | | ORION | MI | 48359-184 | |
| EXCEL ELECTROCIRCUIT INC | | C/O RO WHITESELL ASSOCIATES | 5900 S MAIN ST STE 100 | | | CLARKSTON | MI | 48346 | |
| EXCEL ELECTROCIRCUIT INC EFT | | FRMLY CIRCUIT BOARD OF AMERICA | FMLY ELCEL CIRCUITS CO | 50 NORTHPOINTE DR | | ORION | MI | 48359-1846 | |
| EXCEL ENERGY TECHNOLOGIES LTD | | 624 S BOSTON STE 300 | | | | TULSA | OK | 74119 | |
| EXCEL ENGINEERING INC | | 25925 GLENDALE | | | | REDFORD | MI | 48239 | |
| EXCEL FORAL DESIGNS INC | | 100 RENAISSANCE CTR STE 134 | | | | DETROIT | MI | 48243 | |
| EXCEL HEALTH ENTERPRISES | | 4018 COLUMBUS AVE | | | | ANDERSON | IN | 46013 | |
| EXCEL HEALTH ENTERPRISES | | INC | 4018 COLUMBUS AVE | | | ANDERSON | IN | 46013 | |
| EXCEL HEALTH ENTERPRISES INC | | EXCEL HEALTH & WELLNESS | 4018 COLUMBUS AVE | | | ANDERSON | IN | 46013 | |
| EXCEL INC | | 509 LEE AVE | | | | LINCOLNTON | NC | 28092 | |
| EXCEL INC | | PO DRAWER 459 | | | | LINCOLNTON | NC | 28093-0459 | |
| EXCEL INDUSTRIAL ELECTRONICS | TONY MOCERI | 44360 REYNOLDS DR | PO BOX 46009 | | | CLINTON TWP | MI | 48036 | |
| EXCEL INDUSTRIES INC | | POBOX 46009 | | | | MT CLEMENS | MI | 48046-6009 | |
| EXCEL PARTNERSHIP INC | | 75 GLEN RD | | | | SANDY HOOK | CT | 06482 | |
| EXCEL PARTNERSHIP INC | | 75 GLEN RD STE 200 | | | | SANDY HOOK | CT | 06482 | |
| EXCEL PARTNERSHIP INC | EXCEL PARTNERSHIP INC | | 75 GLEN RD STE 200 | | | SANDY HOOK | CT | 06482 | |
| EXCEL PARTNERSHIP INC EFT | | 75 GLEN RD STE 200 | | | | SANDY HOOK | CT | 06482 | |
| EXCEL PATTERN WORKS INC | | 7020 CHASE RD | | | | DEARBORN | MI | 48126-1751 | |
| EXCEL PATTERN WORKS INC | | 7020 CHASE RD | | | | DEARBORN | MI | 48126-1791 | |
| EXCEL PERSONNEL INC | | 3737 RUE NOTRE DAME QUEST | | | | MONTREAL | PQ | H4C 1P8 | CANADA |
| EXCEL QUANTRONIX CORP | | 45 ADAMS AVE | | | | HAUPPAUGE | NY | 11788 | |
| EXCEL SCREW MACHINE TOOLS INC | | 20300 LORNE | | | | TAYLOR | MI | 48180 | |
| EXCEL SCREW MACHINE TOOLS INC | | 20300 LORNE ST | | | | TAYLOR | MI | 48180-1969 | |
| EXCEL SCREW MACHINE TOOLS INC | | 20300 LORNE | | | | TAYLOR | MI | 48180 | |
| EXCEL TECHNICAL SERVICES | | INC | PMB 141 | 7111 DIXIE HWY | | CLARKSTON | MI | 48346-2077 | |
| EXCEL TECHNICAL SERVICES EFT | | INC | PMB 141 | 7111 DIXIE HWY | | CLARKSTON | MI | 48346-2077 | |
| EXCEL TECHNICAL SERVICES INC | | ETS | PMB 141 | 7111 DIXIE HWY | | CLASRKSTON | MI | 48346-2077 | |
| EXCEL TECHNICAL SERVICES INC | RICARDO CARVAJAL | PMB 141 | 7111 DIXIE HWY | | | CLARKSTON | MI | 48346-2077 | |
| EXCEL TECHNOLOGY INC | | 41 RESEARCH WAY | | | | EAST SETAUKET | NY | 11733-3454 | |
| EXCELDA DISTRIBUTING SPA | ACCOUNTS PAYABLE | 11078 HI TECH DR | | | | WHITMORE LAKE | MI | 48189 | |
| EXCELDA MANUFACTURING CO | | 12785 EMERSON DR | | | | BRIGHTON | MI | 48116 | |
| EXCELDA MANUFACTURING CO | | PO BOX 67000 DEPT 101101 | | | | DETROIT | MI | 48267-1011 | |
| EXCELDA MANUFACTURING CO INC | | 12785 EMERSON DR | | | | BRIGHTON | MI | 48116 | |
| EXCELDA MANUFACTURING CO INC | | 12785 EMERSON DR | | | | BRIGHTON | MI | 48116-8562 | |
| EXCELDA MANUFACTURING COMPANY | | 12785 EMERSON DR | | | | BRIGHTON | MI | 48116 | |
| EXCELL EXPRESS INC | | 540 N LAPEER RD 170 | | | | ORION TWP | MI | 48362 | |
| EXCELL LLC | | 3242 PATTERSON RD | | | | BAY CITY | MI | 48706 | |
| EXCELL LLC | | PO BOX 1607 | | | | BAY CITY | MI | 48706 | |
| EXCELLENCE MANUFACTURING INC | | 629 IONIA AVE SW | | | | GRAND RAPIDS | MI | 49503-5148 | |
| EXCELLENCE MANUFACTURING INC | ACCOUNTS PAYABLE | 629 IONIA AVE SOUTHWEST | | | | GRAND RAPIDS | MI | 49503 | |
| EXCELLON ACQUISITION LLC | | 24751 CRENSHAW BLVD | | | | TORRANCE | CA | 90505-5308 | |
| EXCELLON ACQUISITION LLC | | FILE NO 57346 | | | | LOS ANGELES | CA | 90074-7346 | |
| EXCELLON AUTOMATION CO | | 24751 CRENSHAW BLVD | | | | TORRANCE | CA | 90505-530 | |
| EXCELLON INDUSTRIES | | EXCELLON AUTOMATION DIVISION | 24751 CRENSHAW BLVD | | | TORRANCE | CA | 90505-0000 | |
| EXCELLOY INDUSTRIES | | 608 E MCMURRAY RD B3 | | | | MCMURRAY | PA | 15317 | |
| EXCELLOY INDUSTRIES EFT | | 608 E MCMURRAY RD B3 | | | | MCMURRAY | PA | 15317 | |
| EXCELLUS HEALTH PLAN INC EFT SHARON JACKSON TREASURY OPER | | BC BS OF ROCHESTER | PO BOX 9620 | | | ROCHESTER | NY | 14604-0620 | |
| EXCELLUS HEALTH PLANBLUE CHOICE | DANIEL ZIMMERMAN | 165 COURT ST | | | | ROCHESTER | NY | 14647 | |
| EXCELORANT LLC | | 1800 ST JULIAN PL | | | | COLUMBIA | SC | 29202 | |
| EXCELSIOR SPRINGS SEATING SYSTEMS | | 301 SOUTH MCCLEARY RD | | | | EXCELSIOR SPRINGS | MO | 64024 | |
| EXCHANGE BANK OF ALABAMA | SUSAN WILLETT | ASSIGNEE PACKAGING INTEGRITY | PO BOX 178 | | | GADSDEN | AL | 35902 | |
| EXCHANGE CLUB OF LOCKPORT | | PO BOX 692 | | | | LOCKPORT | NY | 14094 | |
| EXCHANGE CLUBS OF ANDERSON | | 8756 SURREY DR | | | | PENDLETON | IN | 46064 | |
| EXCIMER VISION LASER LP | SIMON YEO | 101 YGNACIO VALLEY RD | STE 340 | | | WALNUT CREEK | CA | 94596 | |

Delphi Corporation

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | Address4 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|---|
| UNIVAR USA INC | | 2600 GARFIELD AVE | | | | LOS ANGELES | CA | 90040 | |
| UNIVAR USA INC | | 3025 EXON AVE | | | | CINCINNATI | OH | 45241 | |
| UNIVAR USA INC | | 30450 TRACY RD | | | | WALBRIDGE | OH | 43465 | |
| UNIVAR USA INC | | 3320 S COUNCIL | | | | OKLAHOMA CITY | OK | 73179 | |
| UNIVAR USA INC | | 3320 S COUNCIL RD | | | | OKLAHOMA CITY | OK | 73179 | |
| UNIVAR USA INC | | 7425 E 30TH ST | | | | INDIANAPOLIS | IN | 46219-111 | |
| UNIVAR USA INC | | 7603 NELSON RD | | | | FORT WAYNE | IN | 46803 | |
| UNIVAR USA INC | | CHEMCARE | 6100 CARILLON POINT | | | KIRKLAND | WA | 98033 | |
| UNIVAR USA INC | | MCKESSON CHEMICAL CO DIV | 6000 CASTEEL DR | | | CORAOPOLIS | PA | 15108 | |
| UNIVAR USA INC | | PO BOX 849027 | | | | DALLAS | TX | 75284-9027 | |
| UNIVAR USA INC | HDQTRS | 17425 NE UNION HILL RD | | | | REDMOND | WA | 98052 | |
| UNIVAR USA INC  EFT | | PO BOX 409692 | | | | ATLANTA | GA | 30384-9692 | |
| UNIVAR USA INC AS SUCCESSOR IN INTEREST TO PRILLAMAN CHEMICAL CORP | | 6100 CARILLON POINT | | | | KIRKLAND | WA | 98033 | |
| UNIVAR USA INC AS SUCCESSOR IN INTEREST TO PRILLAMAN CHEMICAL CORP | | 6100 CARILLON POINT | | | | KIRKLAND | WA | 98033 | |
| UNIVAR USA INC EFT | | FRMLY VAN WATERS & ROGERS INC | PO BOX 409692 | ADD CHNG CS 07 06 04 CS | | ATLANTA | GA | 30384-9692 | |
| UNIVAR USA INC EFT | | FRMLY VOPAK USA INC | PO BOX 409692 | ADD CHNG CS 06 29 04 | | ATLANTA | GA | 30384-9692 | |
| UNIVAR USA INC SUCCESSOR IN INTEREST TO PRILLAMAN CHEMICAL CORP | | 6100 CARILLON POINT | | | | KIRKLAND | WA | 98033 | |
| UNIVAR USA INC SUCCESSOR IN INTEREST TO PRILLAMAN CHEMICAL CORP | | 6100 CARILLON POINT | | | | KIRKLAND | WA | 98033 | |
| UNIVER OF TEXAS AT SAN ANTONIO | | 6900 N LOOP 1604 W | | | | SAN ANTONIO | TX | 78249-0607 | |
| UNIVER OF TEXAS AT SAN ANTONIO OFFICE OF BUSINESS MANAGER | | 6900 N LOOP 1604 W | | | | SAN ANTONIO | TX | 78249-0607 | |
| UNIVER OF TOLEDO AT SEAGATE | | CENTRE UNIVERSITY COLLEGE | DIV OF CONTINUING EDUCATION | 1111 RESEARCH DR | | TOLEDO | OH | 43614-2798 | |
| UNIVER OF WISCONSIN WHITEWATER | | STUDENT ACCOUNTS OFFICE | HYER HALL RM 110 | | | WHITEWATER | WI | 53190 | |
| UNIVERA HEALTHCARE | JENNIFER RUBERTO | AN EXCELLUS COMPANY | 205 PK CLUB LN | | | BUFFALO | NY | 14221-5239 | |
| UNIVERA HEALTHCARE CNY INC | | 8278 WILLETT PKWY | | | | BALDWINSVILLE | NY | 13027 | |
| UNIVERA HEALTHCARE CNY INC | | FMLY HEALTH SERVICES MEDICAL | 8278 WILLETT PKWY | | | BALDWINSVILLE | NY | 13027 | |
| UNIVERSAL ADHESIVE SYSTEMS LTD | | UNIT 18 JAMES WATT CLOSE | | | | DAVENTRY | NH | NN11 5RJ | GB |
| UNIVERSAL AIR CONDITIONING | | COMPANY INC | 5935 EAST FLORENCE AVE | | | BELL GARDENS | CA | 90201-4627 | |
| UNIVERSAL AIR CONDITIONING CO | | 5935 E FLORENCE AVE | | | | BELL | CA | 90201 | |
| UNIVERSAL AIR CONDITIONING COMPANY INC | | PO BOX 2008 | | | | BELL GARDENS | CA | 90202 | |
| UNIVERSAL AM CAN LTD | A/R | 11355 STEPHENS RD | | | | WARREN | MI | 48089 | |
| UNIVERSAL AM CAN LTD | A/R | 11355 STEPHENS RD | | | | WARREN | MI | 48089 | |
| UNIVERSAL AM CAN LTD EFT | | 11355 STEPHENS RD | SCAC OITP | | | WARREN | MI | 48089 | |
| UNIVERSAL AM CAN LTD EFT | | 11355 STEPHENS RD | | | | WARREN | MI | 48089 | |
| UNIVERSAL AM CAN LTD EFT | A R | 11355 STEPHENS RD | | | | WARREN | MI | 48090 | |
| UNIVERSAL AMCAN | RICK GNACKE | 11355 STEPHENS | | | | WARREN | MI | 48089 | |
| UNIVERSAL AMCAN | RICK GNACKE | PO BOX 33297 | | | | DETROIT | MI | 48232 | |
| UNIVERSAL AMERICA INC | | PO BOX 1240 | | | | GREENVILLE | TN | 37744-1240 | |
| UNIVERSAL AMERICA INC | | 109 COILE ST | | | | GREENEVILLE | TN | 37743 | |
| UNIVERSAL AMERICA INC | | 109 COLLIE ST | | | | GREENEVILLE | TN | 37744-1240 | |
| UNIVERSAL AMERICA INC | | PO BOX 1240 | | | | GREENVILLE | TN | 37744-1240 | |
| UNIVERSAL AUTOMATIC CORPORATION | | 2064 MANNHEIM RD | | | | DES PLAINES | IL | 60018-2909 | |
| UNIVERSAL BEARINGS INC | | 431 BIRKEY DR | | | | BREMEN | IN | 46506-200 | |
| UNIVERSAL BEARINGS INC | | 431 N BIRKEY ST | | | | BREMEN | IN | 46506-2016 | |
| UNIVERSAL BEARINGS INC | | PO BOX 38 | 431 N BIRKEY DR | | | BREMEN | IN | 46506 | |
| UNIVERSAL BEARINGS INC | | PO BOX 38 | | | | BREMEN | IN | 46506 | |
| UNIVERSAL BEARINGS INC | MICHAEL B WATKINS | BARNES & THORNBURG LLP | 100 N MICHIGAN 600 1ST SOURCE BANK CENTER | | | SOUTH BEND | IN | 46601-1632 | |
| UNIVERSAL BEARINGS INC | MICHAEL B WATKINS | BARNES & THORNBURG LLP | 100 N MICHIGAN 600 1ST SOURCE BANK CTR | | | SOUTH BEND | IN | 46601-1632 | |
| UNIVERSAL BEARINGS INC | MICHAEL B WATKINS | BARNES & THORNBURG LLP | 100 NORTH MICHIGAN 600 1ST SOURCEBANK CENTER | | | SOUTH BEND | IN | 46601-1632 | |
| UNIVERSAL BEARINGS INC EFT | | 431 BIRKEY DR | | | | BREMEN | IN | 46506-2016 | |
| UNIVERSAL BEARINGS LLC | | PO BOX 38 | | | | BREMEN | IN | 46506-0038 | |
| UNIVERSAL BEARINGS LLC | | 431 BIRKEY DR | | | | BREMEN | IN | 46506-2016 | |
| UNIVERSAL BINDERY CO | | 15220 HARPER AVE | | | | DETROIT | MI | 48224 | |

**Exhibit B**

IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                            :
    In re                               :       Chapter 11
                                            :
DELPHI CORPORATION, et al.,                 :       Case No. 05-44481 (RDD)
                                            :
                  Debtors.             :       (Jointly Administered)
                                            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

AFFIDAVIT OF SERVICE

      I, Evan Gershbein, being duly sworn according to law, depose and say that I am employed by Kurtzman Carson Consultants LLC, the Court appointed claims and noticing agent for the Debtors in the above-captioned cases.

      On or before October 9, 2009, I caused to be served the document listed below upon the parties listed on Exhibit A hereto via postage pre-paid U.S. mail:

      Notice of (A) Order Approving Modifications to First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-in-Possession and (B) Occurrence of Effective Date (Docket No. 18958)

      On or before October 13, 2009,  I caused to be served the appropriate number of copies of the document listed below (i) upon the service list attached hereto as Exhibit B, for subsequent distribution to beneficial holders of Common Stock, CUSIP 172737 10 8; 6 ½% Notes due 2009, CUSIP 247126 AB 1; 7 1/8% Notes due 2029, CUSIP 247126 AC 9; 6.55% Notes due 2006, CUSIP 247126 AD 7; 6.50% Notes due 2013, CUSIP 247126 AE 5; 8 ¼% Adjustable Rate Subordinated Note due 2033, CUSIP 247126 AF 2; and 6.197% Junior Subordinated Note due 2033, CUSIP 247126 AG 0, via Overnight mail and hand delivery; (ii) upon the parties set forth on Exhibit C via postage pre-paid U.S. Mail; (iii) upon the registered holders of Common Stock listed on Exhibit D, provided by Computershare as transfer agent, via postage pre-paid U.S. Mail; and (iv) upon the service list attached hereto as Exhibit E via Electronic mail.

      Notice of (A) Order Approving Modifications to First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-in-Possession and (B) Occurrence of Effective Date (Docket No. 18958)

0544481091015000000000001

Dated: October 14, 2009

_/s/ Evan Gershbein_
Evan Gershbein

State of California
County of Los Angeles

Subscribed and sworn to (or affirmed) before me on this 14th day of October, 2009, by
Evan Gershbein, proved to me on the basis of satisfactory evidence to be the person who
appeared before me.

Signature:  _/s/ Shannon J. Spencer_

Commission Expires: _6/20/10_

# EXHIBIT A

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | Address4 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|---|
| EXCALIBUR REGISTRATIONS | ACCOUNTS RECEIVABLE | 6029 14 MILE RD STE 200 | | | | STERLING HEIGHTS | MI | 48312 | |
| EXCEL | | 10205 NORTHWEST 19TH ST | | | | MIAMI | FL | 33172-2535 | |
| EXCEL AIR TOOL | ARNIE THIES | 4525 WEST 160TH ST | | | | CLEVELAND | OH | 44135 | |
| EXCEL AIR TOOL CO INC | | 3800 MONROE AVE STE 19C | | | | ROCHESTER | NY | 14534 | |
| EXCEL AIR TOOL CO INC | | 4525 W 160TH ST | | | | CLEVELAND | OH | 44135 | |
| EXCEL AIR TOOL CO INC | | 4741 DEVITT DR | | | | CINCINNATI | OH | 45246 | |
| EXCEL AIR TOOL CO INC | | 4778 DUES DR | | | | CINCINNATI | OH | 45246 | |
| EXCEL AIR TOOL CO INC EFT | | PO BOX 640212 | | | | CINCINNATI | OH | 45264-0212 | |
| EXCEL AUTOMATION | | 9471 GREYSTONE PKWY | | | | BRECKSVILLE | OH | 44141 | |
| EXCEL AUTOMATION | CHERYL WEBER | 9471 GREYSTONE | | | | BRECKSVILLE | OH | 44141 | |
| EXCEL CIRCUITS CO | | 50 NORTHPOINTE DR | | | | ORION | MI | 48359-1846 | |
| EXCEL CIRCUITS CO INC | | C/O WHITESELL R O & ASSOCIATE | 8332 OFFICE PK DR STE A | | | GRAND BLANC | MI | 48439-2035 | |
| EXCEL COMPUTER | | 3330 EARHART DR | STE 212 | | | CARROLLTON | TX | 75006 | |
| EXCEL ELECTROCIRCUIT INC EFT | | 50 NORTHPOINTE DR | | | | ORION | MI | 48359-1846 | |
| EXCEL ELECTROCIRCUIT INC | | 50 NORTHPOINTE DR | | | | ORION | MI | 48359-184 | |
| EXCEL ELECTROCIRCUIT INC | | C/O RO WHITESELL ASSOCIATES | 5900 S MAIN ST STE 100 | | | CLARKSTON | MI | 48346 | |
| EXCEL ELECTROCIRUIT INC EFT | | FRMLY CIRCUIT BOARD OF AMERICA | FMLY ELCEL CIRCUITS CO | 50 NORTHPOINTE DR | | ORION | MI | 48359-1846 | |
| EXCEL ENERGY TECHNOLOGIES LTD | | 624 S BOSTON STE 300 | | | | TULSA | OK | 74119 | |
| EXCEL ENGINEERING INC | | 25925 GLENDALE | | | | REDFORD | MI | 48239 | |
| EXCEL FORAL DESIGNS INC | | 100 RENAISSANCE CTR STE 134 | | | | DETROIT | MI | 48243 | |
| EXCEL HEALTH ENTERPRISES | | 4018 COLUMBUS AVE | | | | ANDERSON | IN | 46013 | |
| EXCEL HEALTH ENTERPRISES | | INC | 4018 COLUMBUS AVE | | | ANDERSON | IN | 46013 | |
| EXCEL HEALTH ENTERPRISES INC | | EXCEL HEALTH & WELLNESS | 4018 COLUMBUS AVE | | | ANDERSON | IN | 46013 | |
| EXCEL INC | | 509 LEE AVE | | | | LINCOLNTON | NC | 28092 | |
| EXCEL INC | | PO DRAWER 459 | | | | LINCOLNTON | NC | 28093-0459 | |
| EXCEL INDUSTRIAL ELECTRONICS | TONY MOCERI | 44360 REYNOLDS DR | PO BOX 46009 | | | CLINTON TWP | MI | 48036 | |
| EXCEL INDUSTRIES INC | | POBOX 46009 | | | | MT CLEMENS | MI | 48046-6009 | |
| EXCEL PARTNERSHIP INC | | 464 HERITAGE RD | | | | SOUTHBURY | CT | 06488 | |
| EXCEL PARTNERSHIP INC | | 75 GLEN RD | | | | SANDY HOOK | CT | 06482 | |
| EXCEL PARTNERSHIP INC | | 75 GLEN RD STE 200 | | | | SANDY HOOK | CT | 06482 | |
| EXCEL PARTNERSHIP INC | EXCEL PARTNERSHIP INC | 75 GLEN RD STE 200 | | | | SANDY HOOK | CT | 06482 | |
| EXCEL PARTNERSHIP INC EFT | | 75 GLEN RD STE 200 | | | | SANDY HOOK | CT | 06482 | |
| EXCEL PATTERN WORKS INC | | 7020 CHASE RD | | | | DEARBORN | MI | 48126-1751 | |
| EXCEL PATTERN WORKS INC | | 7020 CHASE RD | | | | DEARBORN | MI | 48126-1791 | |
| EXCEL PERSONNEL INC | | 3737 RUE NOTRE DAME QUEST | | | | MONTREAL | PQ | H4C 1P8 | CANADA |
| EXCEL QUANTRONIX CORP | | 45 ADAMS AVE | | | | HAUPPAUGE | NY | 11788 | |
| EXCEL SCREW MACHINE TOOLS INC | | 20300 LORNE ST | | | | TAYLOR | MI | 48180-1969 | |
| EXCEL SCREW MACHINE TOOLS INC | | 20300 LORNE | | | | TAYLOR | MI | 48180 | |
| EXCEL TECHNICAL SERVICES | INC | PMB 141 | 200 KIRTS BLVD STE A | | | TROY | MI | 48084-5286 | |
| EXCEL TECHNICAL SERVICES EFT | INC | PMB 141 | 200 KIRTS BLVD STE A | | | TROY | MI | 48084-5286 | |
| EXCEL TECHNICAL SERVICES INC | | ETS | PMB 141 | 200 KIRTS BLVD STE A | | TROY | MI | 48084-5286 | |
| EXCEL TECHNICAL SERVICES INC | | PMB 141 | 7111 DIXIE HWY | | | CLARKSTON | MI | 48346-2077 | |
| EXCEL TECHNICAL SERVICES INC | RICARDO CARVAJAL | PMB 141 | 7111 DIXIE HWY | | | CLARKSTON | MI | 48346-2077 | |
| EXCEL TECHNOLOGY INC | | 41 RESEARCH WAY | | | | EAST SETAUKET | NY | 11733-3454 | |
| EXCELDA DISTRIBUTING SPA | ACCOUNTS PAYABLE | 11078 HI TECH DR | | | | WHITMORE LAKE | MI | 48189 | |
| EXCELDA MANUFACTURING CO | | 12785 EMERSON DR | | | | BRIGHTON | MI | 48116 | |
| EXCELDA MANUFACTURING CO | | PO BOX 67000 DEPT 101101 | | | | DETROIT | MI | 48267-1011 | |
| EXCELDA MANUFACTURING CO INC | | 12785 EMERSON DR | | | | BRIGHTON | MI | 48116 | |
| EXCELDA MANUFACTURING CO INC | | 12785 EMERSON DR | | | | BRIGHTON | MI | 48116-8562 | |
| EXCELDA MANUFACTURING COMPANY | | 12785 EMERSON DR | | | | BRIGHTON | MI | 48116 | |
| EXCELL EXPRESS INC | | 540 N LAPEER RD 170 | | | | ORION TWP | MI | 48362 | |
| EXCELL LLC | | 3242 PATTERSON RD | | | | BAY CITY | MI | 48706 | |
| EXCELL LLC | | PO BOX 1607 | | | | BAY CITY | MI | 48706 | |
| EXCELLENCE MANUFACTURING INC | | 629 IONIA AVE SW | | | | GRAND RAPIDS | MI | 49503-5148 | |
| EXCELLENCE MANUFACTURING INC | ACCOUNTS PAYABLE | 629 IONIA AVE SOUTHWEST | | | | GRAND RAPIDS | MI | 49503 | |
| EXCELLON ACQUISITION LLC | | 24751 CRENSHAW BLVD | | | | TORRANCE | CA | 90505-5308 | |
| EXCELLON ACQUISITION LLC | | FILE NO 57346 | | | | LOS ANGELES | CA | 90074-7346 | |
| EXCELLON AUTOMATION CO | | 24751 CRENSHAW BLVD | | | | TORRANCE | CA | 90505-530 | |
| EXCELLON INDUSTRIES | | EXCELLON AUTOMATION DIVISION | 24751 CRENSHAW BLVD | | | TORRANCE | CA | 90505-0000 | |
| EXCELLOY INDUSTRIES | | 608 E MCMURRAY RD B3 | | | | MCMURRAY | PA | 15317 | |
| EXCELLOY INDUSTRIES EFT | | 608 E MCMURRAY RD B3 | | | | MCMURRAY | PA | 15317 | |
| EXCELLOY INDUSTRIES INC | | 608 E MCMURRAY RD STE B3 | | | | MCMURRAY | PA | 15317 | |
| EXCELLUS HEALTH PLAN INC EFT SHARON JACKSON TREASURY OPER | | BC BS OF ROCHESTER | PO BOX 9620 | | | ROCHESTER | NY | 14604-0620 | |
| EXCELLUS HEALTH PLANBLUE CHOICE | DANIEL ZIMMERMAN | 165 COURT ST | | | | ROCHESTER | NY | 14647 | |
| EXCELORANT LLC | | 1800 ST JULIAN PL | | | | COLUMBIA | SC | 29202 | |
| EXCELSIOR SPRINGS SEATING SYSTEMS | | 301 SOUTH MCCLEARY RD | | | | EXCELSIOR SPRINGS | MO | 64024 | |
| EXCHANGE BANK OF ALABAMA | SUSAN WILLETT | ASSIGNEE PACKAGING INTEGRITY | PO BOX 178 | | | GADSDEN | AL | 35902 | |
| EXCHANGE CLUB OF LOCKPORT | | PO BOX 692 | | | | LOCKPORT | NY | 14094 | |
| EXCHANGE CLUBS OF ANDERSON | | 8756 SURREY DR | | | | PENDLETON | IN | 46064 | |
| EXCIMER VISION LASER LP | SIMON YEO | 101 YGNACIO VALLEY RD | STE 340 | | | WALNUT CREEK | CA | 94596 | |
| EXCO TECHNOLOGIES LTD | | CASTOOL PRECISION TOOL | 17 STATE CROWN BLVD | | | SCARBOROUGH | ON | M1V 4B1 | CANADA |
| EXCO TECHNOLOGIES LTD | | CASTOOL PRECISION TOOL | 21 STATE CROWN BLVD | | | SCARBOROUGH | ON | M1V 4B1 | CANADA |
| EXCO TECHNOLOGIES LTD | | EXTEC | 60 SPY CT | | | MARKHAM | ON | L3R 5H6 | CANADA |
| EXEC WAREHOUSE INC | | PO BOX 37038 | | | | SOUTHDALE LONDON | ON | N6E 3T3 | CANADA |
| EXECT SEARCH INTERNATIONAL EFT | | DBA SANFORD ROSE ASSOCIATES | 5500 MAIN ST STE 340 | | | WILLIAMSVILLE | NY | 14221 | |
| EXECT SEARCH INTERNATIONAL INC | | SANFORD ROSE ASSOCIATES OF AMH | 5500 MAIN ST STE 340 | | | WILLIAMSVILLE | NY | 14221 | |
| EXECUTIVE BILINGUAL SERVICES | | 4466 OAKDALE ST | PO BOX 96 | | | GENESEE | MI | 48437 | |
| EXECUTIVE CENTER INC | | T A EXECUTIVE CTR OF GREENTREE | 1 EVES DR STE 111 | | | MARLTON | NJ | 08053 | |
| EXECUTIVE COMMITTEE OF DELPHI CORPS BOARD OF DIRECTORS | C/O SHEARMAN & STERLING | MARC D ASHLEY ESQ | 599 LEXINGTON AVE | | | NEW YORK | NY | 10022-6069 | |
| EXECUTIVE EDUCATION NETWORK | | PO BOX 911584 | | | | DALLAS | TX | 75391-1584 | |
| EXECUTIVE EDUCATION NETWORK | | PO BOX 98565 | | | | CHICAGO | IL | 60693-8565 | |
| EXECUTIVE EXPRESS | | TRANSPORTATION | 338 S SHARON AMITY RD | PMB 199 | | CHARLOTTE | NC | 28211-2806 | |

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | Address4 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|---|
| UNITIME SYSTEMS, INC | | 4900 PEARL EAST CIR STE 110 | | | | BOULDER | CO | 80301 | |
| UNITIVE ADVANCED SEMICONDUCTOR | | PACKAGING | PO BOX 14584 | RESEARCH TRIANGLE PK | | RTP | NC | 27709-4584 | |
| UNITIVE ELECTRONICS INC | | UNITIVE INC | 4512 S MIAMI BLVD STE 120 | | | DURHAM | NC | 27709 | |
| UNITIZE CO INC | | 1101 NAGLEY OL | | | | DAYTON | OH | 45402 | |
| UNITIZE COMPANY INC | | 1101 NEGLEY PL | | | | DAYTON | OH | 45402 | |
| UNITIZE COMPANY INC | | OBIT SHEET METAL CO INC | 1101 NEGLEY PL | | | DAYTON | OH | 45407-2258 | |
| UNITIZE COMPANY INC | | ORBIT MOVERS & ERECTORS INC | 1101 NEGLEY PL | | | DAYTON | OH | 45407 | |
| UNITIZE COMPANY INC | | ORBIT MOVERS & ERECTORS INC | 1101 NEGLEY PL | NTE 9910131254311 | | DAYTON | OH | 45407 | |
| UNITIZE COMPANY INC | | S&D OSTERFELD MECH CONT INC | 1101 NEGLEY PL | | | DAYTON | OH | 45407 | |
| UNITIZE COMPANY INC | | S&D OSTERFELD MECH CONT INC | FMLY OSTERFELD H J CO INC | 1101 NEGLEY PL | | DAYTON | OH | 45407 | |
| UNITIZE COMPANY INC  EFT | | ORBIT SHEET METAL INC | 1101 NEGLEY PL | | | DAYTON | OH | 45407-2258 | |
| UNITOG CO | | 6800 CINTAS BLVD | | | | CINCINNATI | OH | 45262 | |
| UNITOOLS PRESS CZ AS | | HRANICKA 328 | | | | VALASSKE MEZIRICI | | 75701 | CZECH REPUBLIC |
| UNITRACK INDUSTRIES INC | | 967 EAST MASTEN CIRCLE | | | | MILFORD | DE | 19963 | |
| UNITRACK INDUSTRIES INC | | 967 E MASTEN CIR | | | | MILFORD | DE | 19963 | |
| UNITRAK | | 299 WARD ST | | | | PORT HOPE | ON | L1A 3W4 | CANADA |
| UNITRAK | | PO BOX 330 | | | | PORT HOPE CANADA | ON | L1A 3W4 | CANADA |
| UNITRAK CORP LTD | | 299 WARD ST | | | | PORT HOPE | ON | L1A 4A4 | CANADA |
| UNITROL CORP | | 3321 N LAPEER | | | | AUBURN HILLS | MI | 48326 | |
| UNITROL CORP | | 3321 N LAPEER RD | | | | AUBURN HILLS | MI | 48326 | |
| UNITROL ELECTRONICS INC | | 702 LANDWEHR RD | | | | NORTHBROOK | IL | 60062 | |
| UNITROL ELECTRONICS INC | | 702 LANDWEHR RD | | | | NORTHBROOK | IL | 60062-231 | |
| UNITRON ELECTRONICS | | PO BOX 81488 | | | | ROCHESTER | MI | 48308-1488 | |
| UNITRON ELECTRONICS CO | | PO BOX 81488 | | | | ROCHESTER | MI | 48308-1488 | |
| UNITY CREDIT UNION | | 28820 MOUND RD | | | | WARREN | MI | 48092 | |
| UNITY CREDIT UNION | | 6060 COLLECTION DR | | | | SHELBY TOWNSHIP | MI | 48318 | |
| UNITY CREDIT UNION | | 6060 COLLECTION DR | | | | SHELBY TWP | MI | 48318 | |
| UNITY MANUFACTURING CO | ACCOUNTS PAYABLE | 1260 NORTH CLYBOURN AVE | | | | CHICAGO | IL | 60610 | |
| UNITY MANUFACTURING COMPANY | | 1260 NORTH CLYBOURN AVE | | | | CHICAGO | IL | 60610-1792 | |
| UNITY SALES LLC | | 10331 DAWSON CREEK BLVD 8A | | | | FORT WAYNE | IN | 46825 | |
| UNITY SALES LLC | | 10331 DAWSON CREEK BLVD A | | | | FORT WAYNE | IN | 46825-1908 | |
| UNIV OF AL AT BIRMINGHAM | | DEEP SOUTH CTR FOR | OCCUPATIONAL HEALTH & SAFETY | SCHOOL OF PUBLIC HEALTH | | BIRMINGHAM | AL | 35294-2010 | |
| UNIV OF ILLINOIS AT CHICAGO | | FINANCIAL SERVICES MC557 | 809 SOUTH MARSHFIELD AVE | ROOM 116A | | CHICAGO | IL | 60612 | |
| UNIV OF MICHIGAN CANCER CENTER | | 301 E LIBERTY STE 130 | | | | MACOMB | MI | 48042 | |
| UNIV OF TULSA DEPT OF GEOSCIENCES | | 600 S COLLEGE AVE | | | | TULSA | OK | 74104-3189 | |
| UNIV PARK MOBIL SERV CTR | | 10619 BRADDOCK RD | | | | FAIRFAX | VA | 22032 | |
| UNIVAR USA INC | | 1686 E HIGHLAND RD | | | | TWINSBURG | OH | 44087 | |
| UNIVAR USA INC | | 2000 GUINOTTE AVE | | | | KANSAS CITY | MO | 64120-1537 | |
| UNIVAR USA INC | | 2600 GARFIELD AVE | | | | LOS ANGELES | CA | 90040 | |
| UNIVAR USA INC | | 3025 EXON AVE | | | | CINCINNATI | OH | 45241 | |
| UNIVAR USA INC | | 30450 TRACY RD | | | | WALBRIDGE | OH | 43465 | |
| UNIVAR USA INC | | 3320 S COUNCIL | | | | OKLAHOMA CITY | OK | 73179 | |
| UNIVAR USA INC | | 3320 S COUNCIL RD | | | | OKLAHOMA CITY | OK | 73179 | |
| UNIVAR USA INC | | 7425 E 30TH ST | | | | INDIANAPOLIS | IN | 46219-111 | |
| UNIVAR USA INC | | 7603 NELSON RD | | | | FORT WAYNE | IN | 46803 | |
| UNIVAR USA INC | | CHEMCARE | 6100 CARILLON POINT | | | KIRKLAND | WA | 98033 | |
| UNIVAR USA INC | | MCKESSON CHEMICAL CO DIV | 6000 CASTEEL DR | | | CORAOPOLIS | PA | 15108 | |
| UNIVAR USA INC | | PO BOX 34325 | | | | SEATTLE | WA | 98124-1325 | |
| UNIVAR USA INC | | PO BOX 409692 | | | | ATLANTA | GA | 30384-9692 | |
| UNIVAR USA INC | | PO BOX 849027 | | | | DALLAS | TX | 75284-9027 | |
| UNIVAR USA INC | HDQTRS | 17425 NE UNION HILL RD | | | | REDMOND | WA | 98052 | |
| UNIVAR USA INC   EFT | | PO BOX 409692 | | | | ATLANTA | GA | 30384-9692 | |
| UNIVAR USA INC AS SUCCESSOR IN INTEREST TO PRILLAMAN CHEMICAL CORP | | 6100 CARILLON POINT | | | | KIRKLAND | WA | 98033 | |
| UNIVAR USA INC EFT | | FRMLY VAN WATERS & ROGERS INC | PO BOX 409692 | ADD CHNG CS 07 06 04 CS | | ATLANTA | GA | 30384-9692 | |
| UNIVAR USA INC EFT | | FRMLY VOPAK USA INC | PO BOX 409692 | ADD CHNG CS 06 29 04 | | ATLANTA | GA | 30384-9692 | |
| UNIVAR USA INC SUCCESSOR IN INTEREST TO PRILLAMAN CHEMICAL CORP | | 6100 CARILLON POINT | | | | KIRKLAND | WA | 98033 | |
| UNIVER OF TEXAS AT SAN ANTONIO | | 6900 N LOOP 1604 W | | | | SAN ANTONIO | TX | 78249-0607 | |
| UNIVER OF TEXAS AT SAN ANTONIO OFFICE OF BUSINESS MANAGER | | 6900 N LOOP 1604 W | | | | SAN ANTONIO | TX | 78249-0607 | |
| UNIVER OF TOLEDO AT SEAGATE | | CENTRE UNIVERSITY COLLEGE | DIV OF CONTINUING EDUCATION | | | TOLEDO | OH | 43614-2798 | |
| UNIVER OF WISCONSIN WHITEWATER | | STUDENT ACCOUNTS OFFICE | HYER HALL RM 110 | 1111 RESEARCH DR | | WHITEWATER | WI | 53190 | |
| UNIVERA HEALTHCARE | JENNIFER RUBERTO | AN EXCELLUS COMPANY | 205 PK CLUB LN | | | BUFFALO | NY | 14221-5239 | |
| UNIVERA HEALTHCARE CNY INC | | 8278 WILLETT PKWY | | | | BALDWINSVILLE | NY | 13027 | |
| UNIVERA HEALTHCARE CNY INC | | FMLY HEALTH SERVICES MEDICAL | 8278 WILLETT PKWY | | | BALDWINSVILLE | NY | 13027 | |
| UNIVERSAL ADHESIVE SYSTEMS LTD | | UNIT 18 JAMES WATT CLOSE | | | | DAVENTRY | | NN11 5RJ | GB |
| UNIVERSAL AIR CONDITIONING | | COMPANY INC | 5935 EAST FLORENCE AVE | | | BELL GARDENS | CA | 90201-4627 | |
| UNIVERSAL AIR CONDITIONING CO | | 5935 E FLORENCE AVE | | | | BELL GARDENS | CA | 90201 | |
| UNIVERSAL AIR CONDITIONING COMPANY INC | | PO BOX 2008 | | | | BELL GARDENS | CA | 90202 | |
| UNIVERSAL AM CAN LTD | A/R | 11355 STEPHENS RD | | | | WARREN | MI | 48089 | |
| UNIVERSAL AM CAN LTD | ATTN REBECCA C JOHNSON ESQ | 12755 E NINE MILE RD | | | | WARREN | MI | 48089 | |
| UNIVERSAL AM CAN LTD EFT | | 11355 STEPHENS RD | SCAC OITP | | | WARREN | MI | 48089 | |
| UNIVERSAL AM CAN LTD EFT | | 11355 STEPHENS RD | | | | WARREN | MI | 48089 | |
| UNIVERSAL AM CAN LTD EFT | A R | 11355 STEPHENS RD | | | | WARREN | MI | 48090 | |
| UNIVERSAL AMCAN | RICK GNACKE | 11355 STEPHENS | | | | WARREN | MI | 48089 | |
| UNIVERSAL AMCAN | RICK GNACKE | PO BOX 33297 | | | | DETROIT | MI | 48232 | |
| UNIVERSAL AMERICA INC | | 109 COILE ST | | | | GREENEVILLE | TN | 37743 | |
| UNIVERSAL AMERICA INC | | 109 COLLIE ST | | | | GREENEVILLE | TN | 37744-1240 | |
| UNIVERSAL AMERICA INC | | PO BOX 1240 | | | | GREENEVILLE | TN | 37744-1240 | |

**Exhibit C**

1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case No. 05-44481-rdd

- - - - - - - - - - - - - - - - - - - -x

In the Matter of:


DELPHI CORPORATION, et al.,


        Debtors.



- - - - - - - - - - - - - - - - - - - -x


                U.S. Bankruptcy Court

                One Bowling Green

                New York, New York


                August 20, 2009

                10:20 AM


B E F O R E:

HON. ROBERT D. DRAIN

U.S. BANKRUPTCY JUDGE

13

1    additional fact that would, I think, be implicated in the

2    litigation in that one of the principal OEMs that received the

3    CD players was General Motors, and General Motors waived a

4    substantial portion of their warranty claims in connection with

5    all the settlements that we had --

6            THE COURT:  So that would --

7            MR. BUTLER:  -- or dealt with.

8            THE COURT:  -- that would greatly reduce the fifteen

9    million in claims damages.

10           MR. BUTLER:  Arguably, Your Honor, it would.  I mean,

11   you know, you'd get in -- I think you'd get into an argument

12   about fungibility at the time, but that's what 9019 is designed

13   for us to assess.

14           THE COURT:  Right.

15           MR. BUTLER:  And, ultimately, the judgment reached was

16   this -- the settlements before Your Honor seem to be an

17   appropriate disposition of this litigation under these

18   circumstances.

19           THE COURT:  Okay.

20           Does anyone have anything to say on this motion?

21           All right, for the reasons stated in the motion, I'll

22   approve it as clearly a fair and reasonable settlement.

23           MR. BUTLER:  Your Honor, matter number 7 on the agenda

24   is the motion of Plymouth Rubber Company, LLC seeking to have

25   an administrative claim that was filed fifteen days after the

14

1   bar date to be deemed timely filed, at docket number 18714.

2   And counsel's here to present the motion.

3          THE COURT:  Okay.

4          MR. VINCEQUERRA:  Good morning, Your Honor.  James

5   Vincequerra, Duane Morris, for Plymouth Rubber Company, LLC.

6   I'll explain in a minute why I'm emphasizing the LLC.  With me

7   today is Kara Zaleskas from my -- Duane Morris' Boston office.

8          As a matter of housekeeping, Your Honor, Ms. Zaleskas

9   filed a pro hac vice motion approximately two weeks ago.  I

10  don't believe I saw the order on the docket yet.  I would just

11  ask, to the extent she is required to appear here --

12         THE COURT:  That's fine.  That's granted.

13         MR. VINCEQUERRA:  Thank you very much, Your Honor.  A

14  number of -- a lot of trees were killed in the filings in

15  connection with this matter.  We raise no less than five issues

16  as to why -- or reasons why our claim should be deemed timely

17  or should otherwise be -- or the new admin claims bar date

18  should not be deemed to apply to our claim.

19         I'm really going to focus here on two of the issues:

20  the improper notice issue first and then, to the extent that

21  Your Honor finds that the new bar date does apply to the claims

22  of Plymouth Rubber Company, LLC, the excusable -- the

23  components of excusable neglect.

24         I'll leave the balance of the arguments in our papers

25  with regard to the technicalities of the amended admin bar

15

1    date, or the new admin bar date, the efficacy of that

2    admitted -- or modification order and the informal notice to

3    our papers.  I think they're argued fairly clearly there.

4            THE COURT:  The informal proof-of-claim argument?

5            MR. VINCEQUERRA:  Yes, that's right.

6            THE COURT:  Okay.

7            MR. VINCEQUERRA:  I apologize.  I'll leave those to my

8    papers and reserve any statements on those for rebuttal to the

9    extent we deem it's necessary.

10           As an initial matter, do you have any questions about

11   the papers, Your Honor?  I'd be happy to answer them.

12           THE COURT:  Well, I've reviewed them, so -- I guess

13   the issue on whether it's Inc. or LLC, to my mind, is -- it

14   seems to me it's a non-issue because it was actually received

15   by the claimant, right?  It was received?

16           MR. VINCEQUERRA:  It was received the day after the

17   bar date.

18           THE COURT:  Well, no, I mean it was received by the

19   individual who forwarded it on.

20           MR. VINCEQUERRA:  Well, really, the -- I mean, the

21   point we're getting to is proper notice, I would imagine.  And

22   a couple of points.  The debtor to points to 2002(g) and

23   service on LLC first through the law firm Burns and Levinson

24   and then at the former address of the Plymouth Rubber, Inc.

25   entity.  A couple of points here, Your Honor.  Service was made

16

1   pursuant to outdated -- you know, an outdated claims --

2   outdated exhibit-and-schedules lists and based on a claim that

3   was filed by a different entity.  Service was effected on

4   counsel for a different entity.  Burns and Levinson LLC, which

5   makes up a bulk of the notice argument, never represented the

6   LLC entity.  I mean, and it's important to understand --

7            THE COURT:  Was there any -- is there anything in the

8   record about notice of Plymouth Rubber Company Inc.'s Chapter

9   11 case and reorganization by --

10           MR. VINCEQUERRA:  Delphi actively participated in that

11  case, Your Honor.

12           THE COURT:  How do I know that?

13           MR. VINCEQUERRA:  Excuse me?

14           THE COURT:  How do I know that?  Or will they

15  acknowledge that?

16           MR. VINCEQUERRA:  Well, I can't imagine they won't

17  acknowledge it, Your Honor, as they filed stipulations in that

18  case as well as, I believe, a claim.

19           THE COURT:  When did the plan confirm?

20           MR. VINCEQUERRA:  Plymouth Rubber Inc. confirmed its

21  plan and emerged from bankruptcy on August 31st, 2006.  And

22  maybe I should back up a little bit, Your Honor, and give you a

23  little bit of a time line here because that may be helpful.

24           THE COURT:  I mean, I know they sued LLC.

25           MR. VINCEQUERRA:  That -- you know, that's the rub

17

1   here, Your Honor.  They served the objection -- the notice of

2   the new bar date on Inc. at seven different locations, or five

3   different locations, wherever it -- however many it was, served

4   counsel for Inc.  Burns and Levinson has never represented the

5   reorganized debtor, and -- but they got it right when they

6   wanted to sue the new entity under the new purchase order.

7            THE COURT:  But, again, Mr. Collins forwarded this

8   notice on to LLC, right?

9            MR. VINCEQUERRA:  Well, you're right, Your Honor,

10  they --

11           THE COURT:  And he was acting as LLC's agent, wasn't

12  he?

13           MR. VINCEQUERRA:  Right, as part of the wind-down

14  staff.  And if --

15           THE COURT:  Okay.

16           MR. VINCEQUERRA:  -- if Your Honor is -- you know,

17  wants it moved forward to the excusable neglect argument, which

18  I think is also a very good argument, I don't think the notice

19  was proper there.  I think, you know -- at footnote 3 of their

20  objection is very telling.  They note that for the purposes of

21  their objection they presume that LLC is the successor-in-

22  interest to Inc.  I'm not aware of any case law that says you

23  can get the benefit of that assumption for notice requirements

24  under an --

25           THE COURT:  But, again --

18

1            MR. VINCEQUERRA:  -- under an admin --

2            THE COURT:  -- Mr. Collins made the same presumption,

3    right?  He sent the notice on to LLC?

4            MR. VINCEQUERRA:  He did send it on, there's -- we do

5    not contest that fact.

6            THE COURT:  Okay.

7            MR. VINCEQUERRA:  So if you have no other questions

8    for me on the proper notice -- we don't contest the fact that

9    Mr. Collins did receive actual notice -- I can move on to

10   excusable neglect.

11           THE COURT:  Okay.

12           MR. VINCEQUERRA:  Debtors don't contest two components

13   of excusable neglect:  They don't contest that the -- regarding

14   the length of delay or Plymouth Rubber's good faith.  So,

15   really all that we're left with, Your Honor, is the prejudice

16   requirement and the reason for delay.

17           Mr. Butler indicated that a proof of claim was filed

18   fifteen or sixteen days after the bar date.  That's technically

19   true.  We alerted -- well, we alerted counsel for the debtor

20   the day after the bar date, asking them to deem the claim

21   timely filed; that's reflected in Ms. Zaleskas' affidavit.

22           But to get to the point of excusable neglect, Your

23   Honor, what happened here is really a perfect storm for my

24   client.  The prior entity, the Inc. entity, will have business

25   relationships with Delphi as a result of the Delphi bankruptcy

19

1    and things that happened which, to be quite honest with you, my

2    firm was not involved with.  They went into bankruptcy and

3    reorganized.  When they emerged from bankruptcy, they had new

4    equity, substantially new officers and directors, effectively a

5    new entity; entered into a new purchase order agreement with

6    Delphi on January 30th, 2008.  About nine months after that,

7    that's approximately a year and a half after, they emerged from

8    bankrupt -- the reorganized debtor emerged from bankruptcy.

9          Approximately nine months after entry into that

10   purchase order, Delphi sued Plymouth Rubber Company, LLC in

11   Michigan for breach of the contract, for breach of the purchase

12   order agreement.  Plymouth Rubber Company, LLC counterclaimed,

13   and that's the basis of our -- those are the bases of our --

14   that's the basis of our admin claims.

15         Six days after Delphi sued Yongel (ph.) -- the Yongel

16   Company, another -- a supplier of Plymouth Rubber Company also

17   sued Plymouth Rubber Company, LLC.  And in that case as well,

18   Plymouth Rubber Company filed counterclaims both against Yongel

19   and Delphi.

20         Both those cases were consolidated for mediation

21   purposes and they're in global mediation.  The -- as a result

22   of the lawsuits from their principal buyer and their principal

23   supplier, Plymouth Rubber Company, LLC started its own line

24   down in October of 2008 and approximately three months after

25   that laid of all of its employees.  And that's where we have,

20

1    you know, the sole employee of the debtor, Mr. Collins.

2          So, you know, it's important to remember -- oh, let me

3    jump -- I'm sorry, excuse me, Your Honor, let me jump to the

4    portions of excusable neglect that are in dispute:  reason for

5    delay.  We laid out some of these facts because, I mean,

6    clearly there is a legitimate reason for Plymouth Rubber

7    Company, LLC's one-day delay in providing notice to the debtors

8    with regard to their admin claim.

9          THE COURT:  I guess my one issue with that is why

10   didn't Mr. Collins open the envelopes?

11          MR. VINCEQUERRA:  Why did he open the envelopes?

12          THE COURT:  Why didn't he?

13          MR. VINCEQUERRA:  Why didn't he?

14          THE COURT:  Right.  I mean, he got them on the 9th.

15   He put them -- it doesn't say this, but I guess one can infer

16   that he didn't open them, he put them in another envelope and

17   mailed them to Mr. -- it begins with an S, let me get the right

18   name -- Mr. Schultz.

19          MR. VINCEQUERRA:  Yes, that's right.  His name is --

20          THE COURT:  I don't understand why he didn't open the

21   envelopes, because they weren't received by Mr. Schultz until

22   six days later.  I mean, particularly if he'd been waiting --

23   if they'd been -- you know, if he only checks the P.O. box

24   every two weeks, I don't understand why he wouldn't have opened

25   the envelopes.

21

1          MR. VINCEQUERRA:  Well, I mean, it's not in his

2    papers, Your Honor, and anything I say would be pure, you know,

3    suspicion and guesswork.  But the fact of the matter is that

4    the notices were not addressed to the entity that employed him.

5    They were addressed to an Inc. -- the Inc. entity.  So, LLC

6    never filed a notice of appearance in this case, has never

7    appeared in this case until this dispute, and they never felt

8    that they had a need to appear in this case because they were

9    party to a post-petition contract that, under the prior plan,

10   gave them an allowed amended claim.

11         So, I mean, while it's pure, you know, circumspection

12   as to why he did not open the letter for a day and put it in

13   regular mail, the letter wasn't addressed to the entity that

14   employed him and the entity that's in wind-down.

15         THE COURT:  Well, it didn't employ Mr. Schultz either,

16   did it?

17         MR. VINCEQUERRA:  No, it did not.  So, Your Honor, to

18   continue on with reason for the delays, you know, there was an

19   aggressive timetable here for the bar date, from the height of

20   the holiday season.  We're in -- Plymouth Rubber Company, LLC

21   is in its own wind-down, is on a short staff, and I think that

22   there's ample justification here for the reason of delay -- for

23   the reason for delay.

24         To move to the other component that's in contest, as

25   to prejudice, I don't see, you know, any realistic manner of

22

1    prejudice here for the debtors.  They learned of the claim one

2    day after the bar date.  There's no contest that Ms. -- there's

3    no question that Ms. Zaleskas -- I mean, it's not contested

4    Ms. Zaleskas alerted the debtors to the claim the day after the

5    bar date.  The claim was filed a week and a half to two weeks

6    later, followed shortly by this motion.  The claim is an

7    unliquidated amount, is in the nature of a counterclaim, you

8    know, brought as a response to suits against Plymouth Rubber

9    Company, LLC.

10          My understanding from my reading of the plan and

11   disclosure statement in this case and some things in the news

12   is admin claims are anticipated to be paid in full, and there

13   are literally hundreds of millions of dollars of admin claims.

14          So I see very little chance for prejudice there.  The

15   debtors make the argument that -- you know, the classic

16   floodgates argument that you commonly see in pioneer type of

17   cases.  The facts of this case are so unique I really don't see

18   that as a reasonable prospect.  Two creditors of the debtors

19   with substantially similar names but different entities, you

20   know, the claimant being in wind-down, I just don't see the

21   floodgates opening here.

22          So with that, Your Honor, if you have no questions,

23   I'll turn it over to, I guess -- is it Mr. Powlen?

24          MR. POWLEN:  Yeah.

25          THE COURT:  Is it -- was it a compulsory counterclaim?

23

1    Does it arise under the same transaction or occurrence?

2         MR. VINCEQUERRA:  Rises under the same purchase order

3    agreement.

4         THE COURT:  Okay.

5         MR. VINCEQUERRA:  Thank you very much, Your Honor.

6         MR. BUTLER:  Judge, just one moment, if you don't

7    mind.

8       (Pause)

9         MR. BUTLER:  Your Honor, I just want to make sure the

10   record is clear here.  I have, and I think counsel will

11   acknowledge that we obtained, and I have for the Court, a

12   certification of conversion from a corporation to a limited

13   liability company of Plymouth Rubber Company, Inc., a

14   Massachusetts corporation.  It's -- it is the same company.  I

15   mean, we hear that it's different companies and not successors.

16   I actually have the documentation from the State of Delaware

17   Secretary of State's Office that we obtained that shows that on

18   September 1st, 2006 the same legal entity was converted from

19   one kind of corporation in Delaware to another kind of

20   corporation in Delaware.

21        So, I mean, I think the suggestion that these are

22   fundamentally different entities just is not accurate.  And

23   I've got the evidence here.  I don't think that counsel,

24   Mr. Vincequerra, would dispute the Secretary of State of

25   Delaware as to what the entity is, and I have that.

24

1        So this is the same legal entity that was converted on

2    the -- on September 1st.

3        Second, Your Honor, Mr. Vincequerra, in his argument,

4    made a major point about the fact that there was a new purchase

5    order in January of 2008.  And, in fact, there was a purchase

6    order that was reissued on -- in January of 2008 after the 2006

7    reorganization to Plymouth Rubber, and it was purchase order

8    number P6850008, and it was issued to the address 500 Turnpike

9    Street in Canton, Massachusetts.  That was the business address

10   that the parties New Plymouth, Plymouth LLC, whatever one wants

11   to call it, that is the address that Plymouth used with Delphi

12   in connection with the new purchase order that Mr. Vincequerra

13   referred to, and the PO was issued to that address.  And the

14   notice of administrative claims bar date was -- one of the

15   places that it went to was to that address in Canton.

16       And so I think that the -- you know, the argument that

17   the notice, in addition to being actually received, it also was

18   the business address that Delphi and Plymouth Rubber Company,

19   LLC used between themselves in the January 2008 purchase order

20   and was the appropriate business address.

21       I don't think, Your Honor, that this matter should

22   turn in any respect on the issue of notice.  Appropriate notice

23   was given; it was given in connection with -- to the

24   appropriate -- you know, the legal entity, which really was the

25   same entity converted, to the business address that was used in

25

1  the 2008 contract between the companies.  And the notice was

2  actually, in fact, received.

3       I think the question is more the excusable neglect

4  question here, and I only have a few comments on that.  First,

5  we acknowledged in our papers that we did receive a call from

6  counsel the day after the bar date.  That isn't unusual.  We

7  receive those kinds of calls fairly regularly when there are

8  bar date issues, and our response is always the same, which is

9  it's not our bar date to change, it's the Court's bar date, and

10  that we don't have any ability to change the date and people

11  need to take whatever steps they need to take to protect their

12  clients.  And the same kind of -- the same discussion was had

13  with counsel for Plymouth Rubber.

14       The fact that they waited a couple of weeks -- and it

15  wasn't just a week, it was the fact they waited until after the

16  plan modification hearing to submit the proof of claim two

17  weeks later, is -- you know, kind of mystifies me as to why

18  they chose to do that.  But that's not excusable neglect.  They

19  could have filed something the next day.  According to

20  Mr. Vincequerra's argument, it would have been -- you know, all

21  they needed to do was to file an administrative claim that

22  attached the lawsuit and that that would have done that.

23       I think when you look at the -- from the company's

24  perspective, the issue here is -- Your Honor, I think, knows

25  from the plan modification hearing and all of the pleadings

26

1    filed in connection with that, Delphi was on a mission over the

2    last fifteen, sixteen months since the prior plan, before it

3    was modified, hadn't gone effective, to try and develop a

4    solution for these cases that would be successful, that would

5    involve modifying the plan, emerging pursuant to a plan and

6    providing for the payment of administrative expenses that are

7    allowed.  And that took an enormous amount of effort and

8    negotiation to do that.  And one of the things, the processes

9    we went through in the latter part of July, was to assess all

10   of the claims that were made in connection with the bar date

11   and to evaluate those with our chief restructuring officer and

12   with the representatives of our other major stakeholders,

13   particularly with the -- some of the advisors of the DIP

14   lenders in connection with their credit bid so that we were all

15   comfortable in proceeding on the 29th here.  And that was based

16   on having an assessment of what the world of administrative

17   claims was through July -- or through May 31st, understanding,

18   as Your Honor knows, under the modified plan that's now been

19   approved, the -- there's another window bar date that's going

20   to go out covering June 1st through the anticipated effective

21   date of September 30th.

22          But making the assessment of what the unpaid

23   administrative claims were from the -- from October 5, 2005

24   through May 31, 2008 was a real exercise in connection with

25   preparing for the plan modification hearing.  And the fact that

1    counsel or their client chose not to file the claim for a

2    couple of weeks after they had actual notice and they had had

3    actual conversations with us I don't think fits within the

4    factors of excusable neglect.

5          That's all, Your Honor, the debtors would have to say

6    on this.

7          THE COURT:  Well, let me explore that a little bit

8    more.  Is there or was there an estimate of allowed

9    administrative claims that was a factor in the DIP lenders and

10    GM going forward on the 29th to propose the winning plan

11    support agreement and lead to the modified confirmation --

12          MR. BUTLER:  Yes, Your Honor.  You --

13          THE COURT:  -- of the plan?  Because, I mean, I don't

14    remember any testimony --

15          MR. BUTLER:  No.

16          THE COURT:  -- on, you know, some floor that -- or

17    some ceiling for administrative claims or anything.

18          MR. BUTLER:  No, there's not, Your Honor.  There was

19    not.  What Your Honor may recall was that one of the charts

20    that we put up and went through explained how the

21    administrative liabilities were going to be allocated among the

22    parties.

23          THE COURT:  Right.

24          MR. BUTLER:  It was intentional that -- and one of the

25    things we fought for in the MDA was not to have dollar cap

28

1    limitations.  There were, in fact -- that was a subject of

2    protracted negotiation, actually, as to whether or not there

3    would be limitations and what those liabilities would be and,

4    instead, the agreement was to do it by category.  And Your

5    Honor saw those categories allocated between the GM entity, the

6    DIPCo entity and DPH Holdings, the reorganized entity.

7             THE COURT:  Right.

8             MR. BUTLER:  And there was also a focus, and Your

9    Honor may recall that Mr. Stipp, in his sworn testimony,

10   provided in his declaration a fair amount of discussion about

11   the assessment of administrative claims as it related to DPH

12   Holdings' ability to be able to deal with its -- or what it

13   needed to satisfy as it moved forward.  And so there was an

14   assessment that went on, there was -- Mr. Stipp did make those

15   evaluations and make those assessment, and there was that, if

16   you will, sort of informal feasibility discussion among the

17   parties.  Ultimately, that didn't arise to the level, Your

18   Honor, of having -- beyond the sworn testimony, there wasn't

19   any controversy at the plan modification hearing about it

20   because ultimately it had been negotiated out.

21            THE COURT:  So which of the three entities would be

22   responsible for any affirmative recovery here?

23            MR. BUTLER:  Without prejudicing the estate, because I

24   may get this wrong, but my sense is that this is a retained

25   liability of DPH Holdings.  I don't know that this -- and the

29

1    reason I say that is because this supplier no longer does

2    business with the company.  This is a -- but I'd have to check

3    that in terms of -- go back and check that under the plan in

4    the negotiations.  But this is a supplier -- this is a former

5    supplier who, from the company's perspective, failed to live up

6    to its obligations under the purchase order, and it required

7    Delphi to incur a very substantial expense in re-sourcing from

8    the supplier who failed to live up to the terms of their

9    contract in the company.  And that's only why we sued them, and

10   we re-sourced the product.

11          So I think the re-sourced product and the

12   administrative liabilities associated with them go to, in fact,

13   DIPCo, but I think that the exposure under this litigation is

14   likely a DPH Holding obligation.  But I'd have to confirm that,

15   Judge.  That's my best recollection.

16          THE COURT:  Okay.  Well --

17          MR. BUTLER:  And as you know, DPH Holdings --

18          THE COURT:  It wouldn't be -- I guess it wouldn't be a

19   GM one because this isn't a GM plant --

20          MR. BUTLER:  No, it's not -- no, no, it's -- and

21   that's what I'm saying to you.  My -- and I think Ms. Kraft

22   (ph.) is here from the company and we just told her about

23   this -- my believe is the retained liability for the litigation

24   exposure would be DPH Holdings.  And the supplier contract for

25   what was the re-sourced contract, which is with another entity,

30

1   that obligation and the administrative claims associated with

2   it, that went to DIP Holdco, or will go to DIP Holdco.

3            THE COURT:  Okay.

4            MR. BUTLER:  I think that's the proper -- at least

5   that was the philosophy behind the negotiation at the time.

6            THE COURT:  All right.  And it looks like to me the

7   counterclaim -- you can correct if I'm wrong -- the

8   counterclaim just seeks monetary damages, right?  It doesn't

9   seek specific performance or anything like that?

10            MR. BUTLER:  That's correct.

11            THE COURT:  It's an unliquidated claim.  Have there

12   been any discussion as to what the damages are asserted to be

13   as far as the counterclaim?  Either one of you --

14            MR. BUTLER:  There was, Your Honor -- I'm advised, and

15   Mr. Vincequerra may know, I was advised it was a mediation.  I

16   don't know what was --

17            THE COURT:  Right.

18            MR. BUTLER:  -- put on the table at the mediation.

19            THE COURT:  I mean, I don't want you to reveal

20   settlement proposals, but, just, has there been a settlement of

21   what the damages could be?

22            MR. VINCEQUERRA:  Yes, Your Honor, that's the irony of

23   this whole thing for my client is that while this bar date

24   procedure has been going on, my client has been across the

25   table --

31

1          THE COURT:  No, I know there's been a mediation.  I'm

2     just trying to figure out what --

3          MR. VINCEQUERRA:  No, there have been -- you know, a

4     mediation is fairly far along.  There have been numbers

5     exchanged.

6          THE COURT:  I don't want to hear settlement proposals.

7     What I'm focusing on here is, on the issue of prejudice, you

8     had made a good point that these claims are going to be paid in

9     full under the modified plan.  The point I've just been

10    exploring with Mr. Butler is who's going to be paying them.  If

11    it is, as it would appear to me to be the case just from the

12    nature of the claim and the MDA, the remaining holding company,

13    the debtor wind-down company, then I did make a conclusion as

14    part of my ruling approving the modification of the plan that

15    that modification was feasible, and that was premised upon the

16    testimony about the likely amount of administrative claims and

17    the funding of the successor entity and the like.

18         So the reason I'm asking this question is to find out

19    how large your claim is.  It wasn't taken into account in that

20    testimony, and it was a large claim that may affect the

21    prejudice calculation.  I just don't know.  I mean, it's an

22    unliquidated claim.  I don't know whether it's large or not but

23    whether it's, you know, something that, for example, pales in

24    comparison to the debtors' claim.

25         So I'm not asking you about settlement discussions;

32

1    I'm asking what's been asserted, unless you want to tell me

2    what you think the realistic number is.  But that's up to you.

3          MR. VINCEQUERRA:  It's difficult to say , Your Honor,

4    because, to be quite honest with you, I haven't been involved

5    in the mediation.  I understand from our mediation statement

6    that that counterclaim number that we've been stuck at is

7    roughly twenty million dollars.  Again, that's as a

8    counterclaim that would be, obviously, offset against any

9    successful recovery that they have against us.

10          THE COURT:  Although it would seem to be it's

11   either/or, right?  Unless you settle it, either they breached

12   or you breached.  So I'm not sure there'd be much of an offset.

13          Okay.  All right.

14          MR. BUTLER:  Your Honor, that's all the debtors

15   have --

16          THE COURT:  Well --

17          MR. BUTLER:  -- unless you had a question.

18          THE COURT:  -- let me ask you, though, based upon a

19   twenty million dollar claim, how does that affect the -- was

20   any liability for this taken into account in the declarations

21   in support of the modification of the plan?

22          MR. BUTLER:  My understanding is the answer to that

23   question is no, there was no money allocated to this amount

24   through the -- whether the claims process was evaluated.

25          The -- and, you know, Your Honor, there has been a

33

1    wide variety of lawsuits started, stopped in hiatus, since

2    October of 2005.  And the debtors relied on the administrative

3    claims process here that went out to everybody as -- to catch

4    the claims that people were going to assert as part of the --

5    to understand as part of the plan modification process.

6         THE COURT:  And, again, this claim came in after the

7    plan modification hearing.

8         MR. BUTLER:  Correct.  It came in on the June 30 -- on

9    July 30th --

10        THE COURT:  The hearing was on the 29th.

11        MR. BUTLER:  -- and where the hearing was July 29th.

12   And the assessment was actually made in the days -- we spent

13   three or four days leading up to the July 29th hearing going

14   over this evaluation and assessment.

15        THE COURT:  Okay.

16        MR. BUTLER:  And I think -- you know, I don't have

17   Mr. Stipp here, Your Honor, but Ms. Kraft is here and she works

18   closely with Mr. Stipp.  I think that Mr. Stipp would tell you

19   that if he had an extra twenty million dollar -- if in fact,

20   taking their -- I think we disagree vigorously with the claim,

21   but if you add another twenty million dollars of litigation

22   exposure to the pot, would that be material, I think Mr. Stipp

23   would say yes, it's material.

24        THE COURT:  Well, what was funding again for --

25        MR. BUTLER:  Remember, the funding from -- I think it

34

1    was -- the entire funding from General Motors was fifty

2    million; plus, we had the plants that were retained which we

3    could sell off; plus, we had --

4              THE COURT:  But those are more dogs and cats than --

5              MR. BUTLER:  They were.

6              THE COURT:  Right.

7              MR. BUTLER:  Plus, we had the avoidance actions, to

8    the extent that there's collectability on some of the avoidance

9    actions.  And there were some other -- there were some -- I

10   think some other MRA payments, I think, from General Motors or

11   a few other sources of revenue.  But it was calibrated.  It

12   was -- you know, it was designed, as you know, to provide for

13   an efficient disposition of all of those assets and remediation

14   of the -- of some of the other issues and payment of the

15   liabilities.  So I think Mr. Stipp would argue that twenty

16   million was material in that calculation.

17             THE COURT:  Okay.

18             MR. BUTLER:  Thanks, Judge.

19             THE COURT:  Okay.

20             MR. POWLEN:  Just one minor point, Your Honor.

21   Mr. Butler -- I don't know if he passed it up, because I didn't

22   see him pass it up, but makes much of the fact that the

23   entities -- the LLC entity and the Inc. entity are the same.  I

24   know Your Honor said actual -- there was -- you know, the

25   notice was received, but they're the same entities.  And I know

35

1       Mr. Butler's familiar with the concept of a fresh start and a

2       reorganized debtor, but they're the same entities as they would

3       be in any post-effective date debtor that has entirely new

4       equity and has a fresh start in a bankruptcy.  That this was

5       not accomplished through a 363 sale and a transfer of assets

6       but rather an infusion of equity and a stock deal doesn't

7       change the fact that at the end of the day they were dealing

8       with a newly born entity.

9               Other than that, Your Honor, I have nothing further.

10      Thank you very much for your time.

11              THE COURT:  Okay.

12              Is -- neither Mr. Collins nor Mr. Schultz is here,

13      right?

14              MR. POWLEN:  No, Your Honor.

15              THE COURT:  They're not present?

16              MR. POWLEN:  No, Your Honor.  We had discussions with

17      Skadden, and prior to the hearing we agreed that we would just

18      rely on the affidavits.

19              THE COURT:  Okay.

20              Okay, anyone else?

21              Okay, I have before me a motion by Plymouth Rubber

22      Company, LLC for an order deeming its administrative expense

23      claim timely filed or for related relief.  The origin of this

24      dispute is that, in connection with proceeding to obtain the

25      modification and ultimate consummation of its confirmed but

36

1    unconsummated Chapter 11 plan, Delphi Corporation and its

2    affiliated debtors sought approval of an administrative claims

3    bar date for the Chapter 11 period through May of 2009.  The

4    debtors' confirmed Chapter 11 plan was not consummated because,

5    asserting breaches, the plan investors under that plan refused

6    to close in April of 2008.  That left Delphi with a significant

7    hole in the required funding for the confirmed plan.  Delphi

8    then spent close to a year dealing with ways to plug that hole

9    as well as to address the further deterioration in the

10   financial markets and in their perception of Delphi's value,

11   which led to a substantially different approach, ultimately, to

12   their exit from Chapter 11 under a Chapter 11 plan.

13           The debtors, in assessing their ability to emerge from

14   Chapter 11, and having entered into an agreement with an entity

15   called Platinum, as well as General Motors, that would have

16   provided for that combined entity's acquisition of most of the

17   debtors' business operations in return for sufficient cash to

18   deal with a portion of the administrative claims against the

19   debtors, plus stock -- I'm sorry, plus forms of contingent

20   consideration -- having entered into that transaction, the

21   debtors determined that they needed prompt means to calculate

22   the outstanding administrative claims other than the debtor-in-

23   possession financing claims against them, and, therefore,

24   obtained from the Court, in connection with establishing

25   procedures for consideration of the proposed modification to

37

1    the Chapter 11 plan involving GM and Platinum, the

2    administrative claims bar date.

3          The bar date notice provided for, for purposes of a

4    bar date, fairly short notice, but given the timing constraints

5    that the debtors faced, including, in essence, a week-to-week

6    extension of enforcement of remedies under the DIP facility and

7    a clear and short deadline from GM and Platinum, such notice

8    was appropriate under the circumstances.

9          The debtors sent out the notice and received timely

10   administrative claims from approximately 2,400 claimants.  The

11   claims procedures motion that is on the calendar for later

12   today states that approximately one billion dollars of

13   administrative claims were asserted in those proofs of claim,

14   plus unliquidated amounts.

15         Ultimately, the proposed modified plan was itself

16   modified, although not materially so for purposes of the issues

17   before me today -- and instead of Platinum acquiring

18   significant assets under the plan, along with GM, Platinum was

19   replaced by the debtors after an auction process by a

20   consortium of the debtor-in-possession lenders.  And that

21   group, plus GM, entered into an MDA with the debtors, which

22   formed the basis for the modified plan.  The Court held a

23   hearing on that modification and approved it on July 29th, two

24   weeks after the administrative claims bar date.

25         The rough structure of the plan provides for the

38

1    continuation of most of the debtors' businesses, either in the

2    hands of a GM acquisition company with respect to certain

3    facilities that primarily manufacture parts for GM vehicles, as

4    well as other assets that would go to the DIP lender

5    acquisition group.

6         The third split of the debtors' assets would be

7    retained by the debtors, since neither GM nor the DIP

8    acquisition group wanted to acquire them.  In addition, that

9    entity that would continue to hold those assets would receive a

10   cash payment by GM to enable that entity to pay administrative

11   claims against it that were not being assumed in connection

12   with the purchase of ongoing operations by the DIP acquisition

13   vehicle and GM acquisition vehicle.  And that amount of cash

14   was determined by the debtors in consultation with various

15   constituents, including GM, to be sufficient to have the

16   surviving debtor entity meet its obligations under the plan,

17   including the payment of allowed administrative claims.

18        The Court took testimony on that aspect of the

19   proposed plan modification in the form of an affidavit by

20   Mr. Stipp, in which he went through his analysis of likely

21   sources and uses of cash to pay that entity's administrative

22   claims.  No one cross-examined Mr. Stipp.  And based upon my

23   review of the MDA, the modified plan and the affidavits

24   submitted in support thereof, I concluded that the plan, as

25   modified, was feasible: that is, that it was not likely to be

39

1    succeeded by a liquidation under Chapter 7 and that it could be

2    performed, including the payment of administrative claims, as

3    contemplated by the plan.

4         The debtors sent out notice of the administrative

5    claims bar date as required by my order establishing the bar

6    date, and notice was actually received by Plymouth Rubber

7    Company, Inc. on -- it is acknowledged to have been received by

8    Plymouth Rubber Company, Inc. on July 9, 2009.  That's set

9    forth in the affidavit in support of Plymouth's motion of

10   Mr. Collins.

11        The debtors sent that notice to the address in their

12   post-petition purchase order between them and Plymouth Rubber

13   Company, LLC -- the same location.  The address on the envelope

14   was to Plymouth Rubber Company, Inc., which had been the entity

15   with which the debtors had done business prior to Plymouth's

16   Chapter 11 reorganization.

17        Mr. Collins, as I said, received the notice, which was

18   also sent to numerous other locations to Plymouth Rubber

19   Company, Inc., including to the counsel that filed the proof of

20   claim on behalf of Inc. in the Chapter 11 case.  Mr. Collins

21   did not open the notice but, instead, on July 10th, put it, and

22   apparently some other correspondence, in an envelope and

23   forwarded it to Mr. Schultz, who is described in the Collins

24   affidavit as a representative of Plymouth Rubber, LLC's parent,

25   or at least an affiliate, retained to manage Plymouth's

40

1    affairs, Versa Capital Management, Inc., which also manages the

2    funds which directly own the equity interest in Plymouth

3    Rubber.

4         Although mailed on July 10th, according to

5    Mr. Collins, the notice was not received by Mr. Schultz until

6    July 16th, at which point Mr. Schultz, unlike Mr. Collins,

7    opened the package, read the notice and immediately contacted

8    the debtors, seeking an extension of the bar date, which was

9    not agreed to.

10        It's undisputed that Plymouth did not file the proof

11   of claim and/or seek approval of an extension until July 30th,

12   after the plan modification hearing.

13        Plymouth requests that the Court consider its

14   administrative claim timely on a number of different grounds,

15   although most of the focus, properly so, of this hearing, has

16   been on the ground of excusable neglect.  Before I deal with

17   that issue and those factors, let me briefly deal with the

18   other bases for Plymouth's requested relief.

19        First, Plymouth contends that the Court did not have

20   power to establish the administrative claims bar date, given

21   the treatment of the administrative claims bar date in the

22   original plan and the confirmation order.  The plan itself

23   contemplated, in the definition of "administrative claim," the

24   potential for establishing a different administrative claims

25   bar date than was set forth in the plan, which was a date

41

1    forty-five days after the confirmation of the plan.  The plan

2    also reserved fully the debtors' rights in the event that the

3    plan did not go effective, which clearly was the case.

4           That plan, as I noted, contemplated a very different

5    outcome for creditors than the current modified plan.  Not only

6    was there no issue of the payment of all administrative claims,

7    requiring no determination, as a practical matter, by the Court

8    as to feasibility for potential failure to cover administrative

9    claims, but also the plan provided for full payment of

10   unsecured creditors at a deemed plan value, and a substantial

11   return to shareholders.  Consequently, the plan's

12   administrative claims bar date provision was appropriate for

13   that structure -- again, one where there was really no issue as

14   to whether the debtors would be able to pay all asserted

15   administrative claims.

16          The confirmation order similarly provided for a forty-

17   five day post-confirmation administrative claims bar date and

18   stated that it would govern in light of -- in the event of a

19   conflict between the plan and the confirmation order.  And

20   clearly it was an extant order.  However, the debtors' need to

21   set an earlier bar date, given the changes to their plan, was

22   clear and required the establishment of a different bar date,

23   clearly, in the context of the deadlines they were facing.  The

24   Court considered such a request to be appropriate, both in

25   light of the rights that the debtors reserved for themselves

42

1    under the confirmed but not consummated plan, as well as under

2    the Court's ability to amend the confirmation order, which on

3    this point, was quite clearly outdated.

4         Therefore, I believe that Plymouth's argument that the

5    Court exceeded its authority in setting a new administrative

6    claims bar date order, and that Delphi and the other parties

7    should be governed in this respect by the terms of the

8    confirmed plan and the confirmation order entered in 2008, is

9    not well taken and is denied.

10        Next, Plymouth argues, as a matter of due process,

11   that the notice to it of the administrative claims bar date was

12   deficient.  It does so on two grounds.  The first is that it

13   asserts the debtors were involved in post-petition litigation

14   commenced by the debtors in state court in Michigan against

15   Plymouth as well as subsequent litigation commenced by a third

16   party in Massachusetts.  The second is that the debtors knew

17   that Plymouth was represented by counsel in that litigation,

18   and, therefore, that in addition to the other places that the

19   debtors provided Plymouth with notice, they should have

20   provided notice to litigation counsel in the Michigan and

21   Massachusetts litigation. It should be noted that those counsel

22   did not file a notice of appearance in the Chapter 11 case and

23   that, in fact, they have not appeared in the Chapter 11 case

24   until this current motion.

25        The motion relies upon, primarily, on this point, In

43

1   re Grand Union Company, 204 B.R. 864 (Bankr. D. Del. 1997), in

2   which the bankruptcy court concluded in that case that the

3   debtors' direct mailing of notice to personal injury tort

4   claimants represented by counsel was inadequate notice of the

5   bar date, and that the notice should have been provided to the

6   personal injury counsel that Grand Union was dealing with.

7   That case flies in the face of a number of cases in the Second

8   Circuit, including in the Southern District of New York, which

9   state that notice requirements under the Bankruptcy Code,

10  including in respect of bar dates (and notices of similar

11  consequence), do not have to be sent to counsel representing

12  the claimant, but may instead only be sent -- or need only,

13  instead, be sent to the claimant itself.  See, for example, In

14  re Brunswick Baptist Church v. Brunswick Baptist Church, 2007

15  U.S. Dist. LEXIS 3319 (N.D.N.Y. Jan. 16, 2007); In re

16  Alexander's Inc. 176 B.R. 715 (Bankr. S.D.N.Y. 1995); In re

17  R.H. Macy & Company Inc. 161 B.R. 355 (Bankr. S.D.N.Y. 1993);

18  and Dependable Insurance Company v. Horton, 149 B.R. 49 (Bankr.

19  S.D.N.Y. 1992).

20      I should note further that Judge Walsh, in the Grand

21  Union case, made it clear that he was focusing on the unique

22  facts before him, where he found that the claimants who

23  received the notice were unsophisticated and that all dealings

24  in respect of their claims had previously been through their

25  respective counsel.  Clearly, Plymouth is not an

44

1    unsophisticated tort claimant here.

2         Consequently, based on the rationale of the Brunswick

3    Church case and the other cases I've cited, I do not believe

4    that the debtors were required to give notice to counsel of

5    record in the pending litigation, particularly as, as I noted,

6    that counsel had not appeared in the Chapter 11 case.

7         In addition, Plymouth contends that it filed through

8    its counterclaim in the pending non-bankruptcy litigation an

9    informal proof of claim that should be recognized by the Court,

10   and clearly that that proof of claim was timely in that it was

11   well before -- the counterclaim was filed well before the

12   expiry of the administrative claims bar date.  The argument,

13   however, again runs afoul of case law in this district and the

14   majority of the cases, including at the circuit court level

15   elsewhere: that is, that the document giving rise to the

16   informal proof of claim was not filed in this Court, but

17   rather, instead, only in the courts in Michigan and in

18   Massachusetts.

19        I should note that the cases that deal with this issue

20   are generally dealing with pre-petition claims.  But given the

21   practice of treating claims and disputes related to missed bar

22   dates for administrative claims the same way as the courts

23   treat missed bar dates for pre-petition claims, I find those

24   claims to be analogous -- those cases, I'm sorry, to be

25   appropriate here, and for all intents and purposes on all

1    fours.  For the close analogy see -- between disputes in

2    respect of late administrative claims and disputes in respect

3    of late pre-petition claims, see In re PT-1 Communications Inc.

4    386 B.R. 402 (Bankr. E.D.N.Y. 2007).

5        The informal proof of claim rule, as far as I can see,

6    has always, in the Second Circuit and in the Southern District,

7    been applied to claims that were not filed in the form of a

8    proof of claim, but that were filed in the bankruptcy court,

9    that show an intention to make a demand for money from the

10   debtors' estate.  See In re G.L. Miller & Company Inc. 45 F.2d.

11   115 (2d Cir. 1930), as well as the statement of the four-factor

12   test -- factor one of which is that the claim, the documents

13   have been timely filed with the bankruptcy court and had become

14   part of the judicial record -- in In re Enron Corporation 370

15   B.R. 90 (Bankr. S.D.N.Y. 2007).

16       The rationale for this, again, is the collective

17   nature of a bankruptcy case and the need to put more than just

18   the debtor on notice of the existence of the claim.  See also

19   In re M.J. Waterman & Associates Inc. 227 F.3d. 604 (6th Cir.

20   2000), and In re Trans World Airlines Inc. 182 B.R. 102 (D.

21   Del. 1995), which was reversed in part and affirmed in part,

22   reversed on other grounds, at 96 F.3d. 687 (3d Cir. 1996).

23   Consequently, I don't believe that the complaint or the

24   counterclaim asserted in the Massachusetts District Court

25   action and the Michigan State Court action would constitute an

46

1    informal proof of claim.

2         Lastly, the movant contends that notice was improper

3    because it was delivered, albeit at the same address, to

4    Plymouth Rubber Company, Inc. as opposed to Plymouth Rubber

5    Company, LLC.  The change in name resulted from the Chapter 11

6    reorganization of Plymouth Rubber Company, Inc., which is the

7    entity that had filed the proof of claim against the debtor's

8    estate.  The emerged, reorganized debtor changed its name to

9    Plymouth Rubber Company, LLC as the successor to Plymouth

10   Rubber Company, Inc., and that was the entity, again at the

11   same address, with which the debtor contracted post-petition

12   under the contract that is now the subject of the dispute in

13   Michigan and Massachusetts.

14        Plymouth contends that because the notice was sent to

15   "Inc." as opposed to "LLC," albeit at the same address, that

16   notice was constitutionally deficient.  Under the facts before

17   me, however, I do not accept that argument.  As set forth in

18   Mr. Collins' affidavit and in the motion itself, Mr. Collins

19   was the sole employee of Plymouth Rubber after it had

20   determined to wind down its affairs.  He was retained by the

21   managing  - or manager for Plymouth Rubber, LLC as well as the

22   manager for other investments owned by the fund that owned the

23   debtor, Versa Capital Management.  And I believe that, as

24   evidenced by the fact that Versa opened the notice and that

25   Versa had hired Mr. Collins to look after LLC's affairs, and

47

1    that, therefore, he was acting as Versa's agent in this matter,

2    there was sufficient actual notice as of July 9th for due

3    process purposes.

4         The issue then comes down to whether the late filing

5    of the proof of administrative claim should be permitted under

6    Bankruptcy Rule 9006 for excusable neglect.  A claims bar date

7    is an important milestone in most Chapter 11 cases, and clearly

8    here the administrative claims bar date was an important

9    milestone in this case for the reasons that I've already

10   stated.  See First Fidelity Bank N.A. v. Hooker Investments

11   Inc.(In re Hooker Investments Inc.), 937 F.2d. 833, 840 (2d

12   Cir. 1991), in which the Court said, "A bar order does not

13   function merely as a procedural gauntlet, but as an integral

14   part of the reorganization process."  See also In re Musicland

15   Holding Corporation, 356 B.R. 603, 607 (Bankr. S.D.N.Y. 2006).

16        In most cases, the filing of a bar date order and the

17   existence of a bar date enables the debtor and other

18   constituents to determine whether the projected payments under

19   a plan will actually satisfy the parties' expectations; and, in

20   particular, an administrative claims bar date enables the

21   parties to determine whether the plan they're proposing is

22   feasible, in that administrative claims need to be paid in full

23   for a plan to be confirmed and consummated.

24        Nevertheless, the bankruptcy court may enlarge the

25   time for filing proofs of claim where the failure to act was

48

1   the result of excusable neglect, under Bankruptcy Rule

2   9006(b)(1).  The U.S. Supreme Court has adopted a two-part

3   framework for the movant to establish its excusable neglect

4   under Rule 9006(b)(1).  The movant has the burden in this

5   regard.  See Midland Cogeneration Venture Limited Partnership

6   v. Enron Corporation 419 F.3d. 115, 121 (2d Cir. 2005).

7        That framework was set forth in Pioneer Investment

8   Services Company v. Brunswick Associates Limited Partnership,

9   507 U.S. 380 (1993).  First a failure to file the proof of

10  claim must have been caused by neglect, which the Court defined

11  as inadvertence, mistake or carelessness, including intervening

12  circumstances beyond the party's control.  Id. at 388.  A

13  tactical, or simply a knowing, decision not to file a timely

14  claim will not suffice.

15       Second, the movant's neglect must have been excusable,

16  which is to be determined in the exercise of the Court's

17  equitable discretion taking into account all relevant

18  circumstances surrounding the failure to file a timely claim,

19  id. at 395, guided, however, by the following four factors:

20  "the danger of prejudice to the debtor; the length of the delay

21  and its potential impact on judicial proceedings; the reason

22  for the delay, including whether it was within the reasonable

23  control of the movant; and whether the movant acted in good

24  faith." Id.

25       The Second Circuit has taken a "hard line" when

49

1    applying the Pioneer factors to motions under Rule 9006(b)(1)

2    and other federal rules premised on excusable neglect.  Again,

3    see In re Enron Corporation 419 F.3d at 122.  Although all four

4    Pioneer factors should be considered, the Second Circuit places

5    the greatest weight on the reason for the delay and whether it

6    was in the movant's reasonable control.  In re Musicland

7    Holdings Corp. 356 B.R. at 607.

8         In the normal case, the movant has acted in good

9    faith, for example, and that's the case here.  Thus, the Second

10   Circuit said, "In the typical case, three of the Pioneer

11   factors, the length of the delay, the danger of prejudice and

12   the movant's good faith, usually weigh in favor of the party

13   seeking the extension.  We and other circuits have focused on

14   the third factor, the reason for the delay, including whether

15   it was within the reasonable control of the movant.  The

16   equities will rarely, if ever, favor a party who fails to

17   follow the clear dictates of a Court rule.  Where the rule is

18   entirely clear, we continue to expect that a party claiming

19   excusable neglect will, in the ordinary course, lose under the

20   Pioneer test."  In re Enron Corporation 419 F.3d at 122-23; see

21   also Canfield v. Van Atta Buick/GMC Truck Inc. 127 F.3d 248,

22   250-51(2d Cir. 1997).

23        Factors other than the reason for the delay usually

24   are relevant, therefore, only in close cases. In re Musicland

25   Holdings Corporation 356 B.R. at 608.  This is a somewhat close

50

1    case, in that I accept that Plymouth Rubber was clearly in

2    wind-down mode, where it only had one employee, who, consistent

3    with the very limited nature of its operations (which from

4    Mr. Collins' affidavit, which is uncontroverted, pertained

5    almost entirely to the two pending litigations) meant that

6    Mr. Collins checked the post office box only roughly once every

7    two weeks.  In addition, the time for the bar date notice was

8    shortened here from the normal time that would usually be

9    provided.  And, finally, there was potentially some room for

10   confusion, given that the notice was addressed to "Inc." as

11   opposed to "LLC."

12          On the other hand, I find it very hard to understand

13   why, given Mr. Collins' sole function, which appears to be to

14   monitor the mail, and the fact that he did so only roughly once

15   every two weeks, he did not open the mail, but instead simply

16   forwarded it to Mr. Schultz of Versa.  It would not seem to me

17   that he should have done that, given that Plymouth had

18   established the P.O. box that he checked as opposed to setting

19   up an automatic forwarding from Plymouth's address to Versa's.

20   It would appear, instead, to me appropriate for Mr. Collins to

21   have acted as someone who actually read the mail as opposed to

22   as a second mailman for delivery purposes.

23          So, clearly, it was within Plymouth's control to have

24   had notice of the bar date, at least by July 9th.  Moreover,

25   Plymouth did not file its claim until after the hearing on plan

51

1    modification, which it needn't have waited for.  It had the

2    claim or was aware of the late claim issue on July 16th, but,

3    nevertheless, waited two weeks thereafter to do so.  So, all

4    things being considered, it appears to me that while this is a

5    somewhat close case, the neglect here was largely within the

6    control of Plymouth.

7         Secondly, while the time between the bar date and the

8    filing of the claim was relatively short, I conclude that there

9    was prejudice to the debtor and other parties that resulted

10   from the delay.  If, in fact, the responsibility for paying

11   this administrative claim, to the extent it is allowed, rested

12   with either GM or the DIP lender acquisition vehicle, it would

13   appear to me, particularly given the balance of factors on

14   whether the delay was within Plymouth's control, that the lack

15   of prejudice to the estate would have argued for letting the

16   claim be filed late.  (The fact that some party receives a

17   smaller distribution or another third party pays more money as

18   a result of a claim being allowed to be filed late is not

19   sufficient prejudice, it is not the type of prejudice that the

20   courts have in mind when they evaluate the prejudice factor

21   under Pioneer.)

22        However, here, I believe there is prejudice to the

23   estate.  And also, again, some blame should be laid on Plymouth

24   for causing this prejudice by not filing the claim until after

25   the plan modification hearing.  As represented by Mr. Butler,

52

1   who clearly was involved in the preparation for the plan

2   modification hearing and the debtors' efforts to determine

3   whether, in fact, the MDA would result in a feasible plan, the

4   calculation of likely administrative claims against a surviving

5   debtor entity was a key factor in moving forward with the

6   hearing on July 29th.

7         It's been stated that a demand number under the

8   counterclaim by Plymouth is approximately twenty million

9   dollars.  That number would have had a significant impact on

10  the debtors' presentation of the modification of the plan on

11  July 29th and the Court's consideration of whether the plan is

12  feasible or was feasible, and would have, if asserted as a

13  recovery against the debtors -- the surviving debtors, as an

14  administrative claim it could have had a very significant

15  impact on feasibility.  Consequently, it would appear to me

16  that although the delay was short, it was very significant, and

17  that both the debtors as well as the other parties to the MDA,

18  and ultimately the Court, moved ahead in reliance on that claim

19  not being asserted.

20        So, that prejudice, as well as my conclusion that the

21  lateness of the claim, first in terms of its being verbally

22  asserted only on July 16th and then actually formally asserted

23  after the plan modification hearing, was largely, if not

24  entirely, within the control of Plymouth, leads me to deny

25  Plymouth's motion.

53

1          Obviously, to the extent that it is asserting a right

2     to setoff or recoupment, the lateness of the claim should not

3     matter, so that what this ruling effectively does is preclude

4     Plymouth from an affirmative recovery against the debtor's

5     estate as opposed to, again, a recoupment or setoff right in

6     the Michigan and Massachusetts litigation.

7          So Mr. Butler, you can submit an order to that effect.

8          MR. BUTLER:  Yes, Your Honor.

9          THE COURT:  Okay.

10         MR. BUTLER:  Your Honor, the last matter on the agenda

11    for today, matter number 8, is a motion for authority to apply

12    the claims objection procedures to administrative expense

13    claims, filed at docket number 18715.  Your Honor, by this

14    motion, what we're seeking to do is to use the claims

15    procedures that Your Honor is familiar with, that have been

16    running on a separate claims track for the last two and a half

17    years, to apply those to administrative claims.  And I think it

18    goes without saying that the -- and I think Your Honor has

19    observed in the past, that the procedures that have been

20    adopted by the Court here back on December 7th of 2006 at

21    docket number 6089, have served the debtors well and have dealt

22    with an expeditious treatment of almost 17,000 proofs of claim,

23    and through some 34 omnibus claims objections that addressed

24    over 14,000 of those claims, and have resulted in the

25    disallowance or withdrawal of over 10,000 of those claims.  So

# EXHIBIT F

Hearing Date And Time:  August 27, 2010 at 10:00 a.m. (prevailing Eastern time)

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr.
John K. Lyons
Albert L. Hogan, III
Ron E. Meisler

                - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000

DPH Holdings Corp. Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

DPH Holdings Corp. Legal Information Website:
http://www.dphholdingsdocket.com

Attorneys for DPH Holdings Corp., et al.,
 Reorganized Debtors

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                             :
        In re                                :        Chapter 11
                                             :
DPH HOLDINGS CORP., et al.,                  :        Case No. 05-44481 (RDD)
                                             :
                Reorganized Debtors.         :        (Jointly Administered)
                                             :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

REORGANIZED DEBTORS' OBJECTION TO MOTION OF THE VEBA COMMITTEE FOR
THE DELPHI SALARIED RETIREES ASSOCIATION BENEFIT TRUST PURSUANT TO 11
U.S.C. § 105 AND THE SALARIED OPEB SETTLEMENT ORDER TO (I) COMPEL THE
OFFICIAL COMMITTEE OF ELIGIBLE SALARIED RETIREES TO FILE ITS FINAL REPORT
WITH THE COURT PURSUANT TO THE TERMS OF THE SALARIED OPEB SETTLEMENT
ORDER; AND, (II) TO DIRECT THE OFFICE OF THE UNITED STATES TRUSTEE TO
DISBAND THE OFFICIAL COMMITTEE OF ELIGIBLE SALARIED RETIREES

("REORGANIZED DEBTORS' OBJECTION TO VEBA COMMITTEE MOTION")

DPH Holdings Corp. and its affiliated reorganized debtors in the above-captioned cases (collectively, the "Reorganized Debtors") hereby submit this objection to the Motion Of The VEBA Committee For The Delphi Salaried Retirees Association Benefit Trust Pursuant To 11 U.S.C. § 105 And The Salaried OPEB Settlement Order To (I) Compel The Official Committee Of Eligible Salaried Retirees To File Its Final Report With The Court Pursuant To The Terms Of The Salaried OPEB Settlement Order; And, (II) To Direct The Office Of The United States Trustee To Disband The Official Committee Of Eligible Salaried Retirees (Docket No. 20462), dated July 23, 2010 (the "Motion").

<u>Preliminary Statement</u>

1.    In the Motion, the VEBA Committee seeks an order compelling the official committee of eligible salaried retirees (the "Retirees' Committee") to file the report contemplated by paragraph nine of the Salaried OPEB Settlement Order (Docket No. 16547) and directing the Office of the United States Trustee (the "U.S. Trustee") to disband the Retirees' Committee upon the filing of the report.  Based on discussions with the Retirees' Committee's counsel, it is the Reorganized Debtors' understanding that the Retirees' Committee intends to file the report prior to the hearing on the Motion on August 27, 2010.  At that point, the portion of the Motion related to the report will become moot and should be denied on that basis.

2.    As for the remaining portion of the Motion, putting aside the merits of the VEBA Committee's request to disband the Retirees' Committee, the request should be denied because it comes from an inappropriate source without standing to seek relief from this Court. Indeed, the Motion itself makes clear that the VEBA Committee does not have a sufficient stake in these cases to qualify as a party in interest under 11 U.S.C. § 1109(b), and it cannot point to any injury in fact that satisfies the minimum requirements for standing under Article III of the Constitution.  In addition, although the VEBA Committee's motives in bringing the Motion are

2

not entirely clear, it appears that they are asking the Court to intervene in a non-bankruptcy post-emergence dispute between the VEBA Committee and the Retirees' Committee concerning the administration of the Delphi Salaried Retirees Association Benefit Trust (the "DSRA VEBA"). That dispute does not belong in this Court.

3.      Furthermore, the VEBA Committee's request to disband the Retirees' Committee before the Court has the opportunity to review the Retirees' Committee's report is, at best, premature.  At each stage of the Retirees' Committee's existence, the Court has tailored the Retirees' Committee's authority based on the facts and circumstances as they existed at the time. That measured approach is apparent from the Provisional Salaried OPEB Termination Order, which authorized the appointment of the Retirees' Committee and set forth its initial grant of authority (Docket No. 16380 ¶¶ 8-11), and from the Final OPEB Termination Order and the Salaried OPEB Settlement Order, in which the Court augmented the Retirees' Committee's authority to enable the Retirees' Committee to address the issues in play when those orders were entered (Docket No. 16448 ¶ 8; Docket No. 16547 ¶¶ 6, 9).  Any further determination regarding the Retirees' Committee should await the Court's review of the report, and should arise from either the Court's own motion or a motion by the Reorganized Debtors or some other appropriate party in interest.  The VEBA Committee's desire to advance its own undisclosed agenda by shutting down the Retirees' Committee should not play any role in the Court's consideration of this issue.

<u>Argument</u>

A.      <u>The VEBA Committee's Request For An Order Compelling The Retirees' Committee To File The Report Within 30 Days Will Be Mooted By The Retirees' Committee's Filing Of The Report Before The Hearing</u>

4.      The first item of relief sought by the VEBA Committee is an order compelling the Retirees' Committee to file the report contemplated by paragraph nine of the

Salaried OPEB Settlement Order within 30 days.  (Docket No. 20462 ¶¶ 27-28.)  As discussed

above, it is the Reorganized Debtors' understanding that the Retirees' Committee intends to file

the report before the hearing on the Motion on August 27, 2010.  If that happens, the Court

should deny this portion of the Motion on mootness grounds, even if it concludes that the VEBA

Committee is a party in interest and that it has constitutional standing.  See In re In-Store Adver.

Sec. Litig., 163 F.R.D. 452, 455 (S.D.N.Y. 1995) (holding that motion to compel production of

documents was mooted by target's post-motion production of documents); In re Thomson

McKinnon Sec. Inc., 152 B.R. 840, 843 (Bankr. S.D.N.Y. 1993) (holding that motion to compel

assumption or rejection of lease was mooted by post-motion confirmation of plan of

reorganization providing for rejection of all leases).

    B.    The VEBA Committee Has Not Established That It Is A Party In Interest Under
           11 U.S.C. § 1109(b) Or That It Has Constitutional Standing

      5.    In the second part of its Motion, the VEBA Committee asks the Court to

enter an order directing the U.S. Trustee to disband the Retirees' Committee.  As a threshold

matter, there are two fundamental problems with the VEBA Committee's attempt to seek this

relief.  First, the VEBA Committee has failed to establish that it is a party in interest within the

meaning of 11 U.S.C. § 1109(b), which provides:  "A party in interest, including the debtor, the

trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity

security holder, or any indenture trustee, may raise and may appear and be heard on any issue in

a case under this chapter."

      6.    The term "party in interest" is not defined by the United States Bankruptcy

Code, Krys v. Official Comm. of Unsecured Creditors of Refco Inc. (In re Refco Inc.), 505 F.3d

109, 117 (2d Cir. 2007), and the examples set forth in section 1109(b) are not exhaustive, Doral

Ctr., Inc. v. Ionosphere Clubs, Inc. (In re Ionosphere Clubs, Inc.), 208 B.R. 812, 814 (S.D.N.Y.

1997).  The term is broad, "but not infinitely expansive."  Refco, 505 F.3d 109, 118 (2d Cir.

2007) (internal quotation marks omitted); accord 7 Collier on Bankruptcy ¶ 1109.03 (Alan N.

Resnick & Henry J. Sommer eds., 16th ed. 2009) ("Although the concept of 'party in interest' is

necessarily broad, it was not intended to include literally every conceivable entity that may be

involved in or affected by the chapter 11 proceedings.").

   7.  As the Second Circuit explained in its most recent decision addressing

section 1109(b), "'[i]t is important that a bankruptcy court is not too facile in granting

applications for standing.  Overly lenient standards may potentially over-burden the

reorganization process by allowing numerous parties to interject themselves into the case on

every issue, thereby thwarting the goal of a speedy and efficient reorganization.'"  Refco, 505

F.3d at 118 (quoting In re Ionosphere Clubs, Inc., 101 B.R. 844, 850 (Bankr. S.D.N.Y. 1989)).

   8.  In determining whether a party is a party in interest under section 1109(b),

courts ask whether the party has demonstrated "that it has a direct financial stake in the outcome

of the case."  Savage & Assocs., P.C. v. Mandl (In re Teligent Servs., Inc.), 417 B.R. 197, 210

(Bankr. S.D.N.Y. 2009) (internal quotation marks omitted), aff'd, No. 09 Civ. 09674, 2010 WL

2034509 (S.D.N.Y. May 13, 2010); accord In re Copperfield Invs., LLC, 421 B.R. 604, 610

(Bankr. E.D.N.Y. 2010).  That approach is consistent with the "general theory behind the

section," which is "that anyone holding a direct financial stake in the outcome of the case should

have an opportunity (either directly or through an appropriate representative) to participate in the

adjudication of any issue that may ultimately shape the disposition of his or her interest."  7

Collier on Bankruptcy ¶ 1109.01[1]; accord Ionosphere Clubs, 208 B.R. at 814 (quoting Collier

on this point).

9.      The VEBA Committee has not demonstrated that it satisfies this test.  The VEBA Committee does not fall within any of the illustrative categories of parties in interest set forth in section 1109(b), nor has it shown that it has a direct financial stake in these chapter 11 cases.  To the extent the VEBA Committee addresses this issue, it merely contends that it is concerned that the Retirees' Committee's continued existence could lead to increased administrative costs for the DSRA VEBA.  (Docket No. 20462 at 3.)  The VEBA Committee, however, has not supported that vague assertion with any concrete illustrations of how the relief sought in the Motion will affect the DSRA VEBA's administrative costs going forward.  Although the VEBA Committee complains about the Retirees' Committee's request for documents in January 2010 (id. at 3 & ¶ 21), the Motion shows that the VEBA Committee completed its response to that request in March 2010 (id. ¶ 22), and there is no indication that the Retirees' Committee has made any subsequent request for documents or taken any other action that would result in an inappropriate increase in the DSRA VEBA's future administrative costs.

10.      Furthermore, there is no continuing financial connection between the DSRA VEBA and these chapter 11 cases.  The Reorganized Debtors' obligations concerning the DSRA VEBA were established in the Salaried OPEB Settlement Order.  (Docket No. 16547.) The Reorganized Debtors have performed all of those obligations, including the obligation to make subsidy payments of $8.75 million to the Retirees' Committee for the benefit of salaried retirees.  (See Docket No. 16547 ¶ (a).)  Given that the Reorganized Debtors have satisfied all of their financial and other obligations related to the DSRA VEBA, the VEBA Committee has no direct financial stake in these cases.  Accordingly, the VEBA Committee is not a party in interest under section 1109(b), and the Motion to disband the Retirees' Committee should be denied on that ground.

6

11.     The second fundamental problem, related to the first, is that the VEBA

Committee has not demonstrated that it has standing to pursue the relief requested in the Motion

under Article III of the Constitution.  To satisfy the constitutional component of standing, the

VEBA Committee must establish, among other things, "an injury in fact."  Lujan v. Defenders of

Wildlife, 504 U.S. 555, 560 (1992).  An injury in fact is "an invasion of a legally protected

interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or

hypothetical."  Id.

12.     The Motion does not identify any injury to the VEBA Committee that

meets these requirements.  Again, the VEBA Committee makes a passing reference to the

possibility of increased administrative costs for the DSRA VEBA (Docket No. 20462 at 3), but

has not provided any basis for concluding that that possibility is actual or imminent, rather than

conjectural or hypothetical.  In addition, the VEBA Committee has not demonstrated that it has a

legally protected interest in maintaining the DSRA VEBA's administrative costs at any particular

level in any event.  Because the VEBA Committee has failed to show an injury in fact, it also

cannot satisfy the remaining requirements of constitutional standing, all of which are premised

on the existence of an underlying injury in fact.  See Monsanto Co. v. Geertson Seed Farms, 130

S. Ct. 2743, 2752 (2010) (explaining that injury in fact must be "fairly traceable to the

challenged action" and "redressable by a favorable ruling").  Thus, the VEBA Committee's

request to disband the Retirees' Committee also fails for lack of constitutional standing.

C.      The VEBA Committee's Request For An Order Directing The U.S. Trustee To
        Disband The Retirees' Committee Is Flawed

13.     Even if the VEBA Committee was a party in interest and had

constitutional standing to seek the disbandment of the Retirees' Committee, its request for an

order directing the U.S. Trustee to disband the Retirees' Committee "upon submission of the . . .

Report with the Court" (Docket No. 20462 ¶ 29) should still be denied.  Under the VEBA

Committee's proposal, the Retirees' Committee would cease to exist as of the moment it filed the

report (or very shortly thereafter), before the Court, the Reorganized Debtors, the salaried

retirees represented by the Retirees' Committee, or anyone else has the chance to read the report,

which may or may not have favorable things to say about the VEBA Committee.  If the Retirees'

Committee files the report before the hearing, the sequence of events will not unfold in that

manner.  But when the VEBA Committee filed the Motion, it did not expect the Retirees'

Committee to file the report before the hearing.  Yet it still sought immediate disbandment upon

filing.  This curious aspect of the VEBA Committee's proposal has contributed to the

Reorganized Debtors' suspicions as to the VEBA Committee's motives in filing the Motion.

14.    Having said that, the Reorganized Debtors agree with the VEBA

Committee on at least one point – the Retirees' Committee's authority was established and

circumscribed by the terms of the Court's prior orders, and when the Retirees' Committee files

the report, it will have exhausted the limited grants of authority provided in those orders.  From

the Reorganized Debtors' perspective, the Retirees' Committee is not authorized to take any

action beyond filing the report.  Under these circumstances, an order directing the U.S. Trustee

to formally disband the Retirees' Committee is unnecessary.

8

<u>Conclusion</u>

WHEREFORE the Reorganized Debtors respectfully request that the Court enter

an order denying the Motion and granting the Reorganized Debtors such other and further relief

as is just.

Dated:  New York, New York
        August 20, 2010

                              SKADDEN, ARPS, SLATE, MEAGHER &
                                FLOM LLP

                       By:  /s/ John Wm. Butler, Jr.
                              John Wm. Butler, Jr.
                              John K. Lyons
                              Albert L. Hogan, III
                              Ron E. Meisler
                              155 North Wacker Drive
                              Chicago, Illinois 60606
                              (312) 407-0700

                                    - and -

                              Four Times Square
                              New York, New York 10036
                              (212) 735-3000

                              Attorneys for DPH Holdings Corp., <u>et al.</u>,
                                Reorganized Debtors

# EXHIBIT G

DPH Holdings Corp.
Special Parties

| Company | Contact | Address1 | Address2 | City | State | Zip |
|---|---|---|---|---|---|---|
| Illinois Tool Works ITW Food Equipment Group | Pepe & Hazard LLP | Kristin B Mayhew Esq | 30 Jelliff Ln | Southport | CT | 06890 |

In re. DPH Holdings Corp., et al.
Case No. 05-44481 (RDD)

Page 1 of 1

8/23/2010 5:49 PM
ITW Special Party.xlsx
Illinois Tool Special Party

# EXHIBIT H

DPH Holdings Corp.
Special Parties

| Company | Address1 | City | State | Zip |
|---|---|---|---|---|
| Philip J Carson | 11401 Vernon Ave | Port Richey | FL | 34668 |
| Philip J Carson | 119 W Jefferson | Frankenmuth | MI | 48734 |
| Philip J Carson | 56 Rivocean Dr | Ormond Beach | FL | 32176 |

In re. DPH Holdings Corp., et al.
Case No. 05-44481 (RDD)

Page 1 of 1

8/23/2010 5:46 PM
Carson Special Parties

# EXHIBIT I

DPH Holdings Corp.
Special Parties

| Company | Contact | Address1 | Address2 | City | State | Zip |
|---|---|---|---|---|---|---|
| Excellus Health Plan Inc Eft Sharon Jackson Treasury Oper | Bc Bs Of Rochester | PO Box 9620 | | Rochester | NY | 14604-0620 |
| Excellus Health Planblue Choice | Daniel Zimmerman | 165 Court St | | Rochester | NY | 14647 |
| Harris Beach PLLC | Lee E Woodard | One Park Place 4th Floor | 300 South State Street | Syracuse | NY | 13202 |
| Univera Healthcare | Jennifer Ruberto | An Excellus Company | 205 Pk Club Ln | Buffalo | NY | 14221-5239 |

In re. DPH Holdings Corp., et al.
Case No. 05-44481 (RDD)

Page 1 of 1

8/23/2010 5:48 PM
Excellus Special Parties

# EXHIBIT J

DPH Holdings Corp.
Special Parties

| Company | Contact | Address1 | City | State | Zip |
|---|---|---|---|---|---|
| Farella Braun & Martel LLP | Neil A Goteiner Dean M Gloster | 235 Montgomery Street 17th Floor | San Francisco | CA | 94104 |
| Krieg Devault LLP | Patricia L Beaty Esq | One Indiana Square Suite 2800 | Indianapolis | IN | 46204 |
| Satterlee Stephens Burke & Burke LLP | Timothy T Brock Esq Abigail Snow Esq | 230 Park Avenue Suite 1130 | New York | NY | 10169 |

Delphi Corporation
Special Parties

| Company | Contact | Address1 | City | State | Zip |
|---|---|---|---|---|---|
| Jacob & Weingarten PC | Howard S Sher<br>Alan J Schwartz | 2301 W Big Beaver Ste 777 | Troy | MI | 48084 |
| Miller & Chevalier | Anthony F Shelley<br>Timothy P Otoole<br>Michael N Khalil | 655 15th St NW Ste 900 | Washington | DC | 20005 |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 1 of 1

8/23/2010 5:53 PM
Salaried Retirees Special Parties.xlsx