**Hearing Date:  September 24, 2010**
**Hearing Time:  10:00 a.m. (Prevailing Eastern Time)**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
155 North Wacker Drive
Chicago, Illinois 60606
John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Kayalyn A. Marafioti

Attorneys for DPH Holdings Corp., et al.,
   Reorganized Debtors

DPH Holdings Corp. Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

DPH Holdings Corp. Legal Information Website:
http://www.dphholdingsdocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x | : | |
| In re | : | Chapter 11 |
| | : | |
| DPH HOLDINGS CORP., et al., | : | Case No. 05-44481 (RDD) |
| | : | |
| | : | (Jointly Administered) |
| Reorganized Debtors. | : | |
| | : | |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x | | |

## REORGANIZED DEBTORS' SUPPLEMENTAL REPLY WITH RESPECT TO PROOF OF ADMINISTRATIVE EXPENSE CLAIM NUMBER 17330 (RANDY D. AUSTIN)

("SUPPLEMENTAL REPLY – RANDY D. AUSTIN")

DPH Holdings Corp. and certain of its affiliated reorganized debtors in the above-captioned cases (collectively, the "Reorganized Debtors"), hereby submit the Reorganized Debtors' Supplemental Reply With Respect To Proof Of Administrative Expense Claim Number 17330 (the "Supplemental Reply") filed by Randy D. Austin  and respectfully represent as follows:

Background

1.      On October 8 and 14, 2005, Delphi Corporation and certain of its affiliates (collectively, the "Debtors"), predecessors of the Reorganized Debtors, filed voluntary petitions in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as then amended.

2.      On July 6, 2009, Randy D. Austin (the "Claimant"), a retired employee of the Debtors, filed proof of administrative expense claim number 17330 (the "Administrative Claim") against Delphi Corporation.  The Administrative Claim asserts an administrative expense claim in the amount of (i) $35,260.00 for benefits arising under a severance agreement plus (ii) outplacement services (the "Claim").

3.      On October 6, 2009, the Debtors substantially consummated the First Amended Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession, As Modified (the "Modified Plan"), which had been approved by this Court pursuant to an order entered on July 30, 2009 (Docket No. 18707), and emerged from chapter 11 as the Reorganized Debtors.  In connection with the consummation of the Modified Plan, Delphi emerged from chapter 11 as DPH Holdings Corp.  Article 9.6(a) of the Modified Plan provides that "[t]he Reorganized Debtors shall retain responsibility for administering, disputing, objecting to, compromising, or otherwise resolving all Claims against, and Interests in,

2

the Debtors and making distributions (if any) with respect to all Claims and Interests." Modified Plan, art. 9.6

4.      On November 6, 2009, the Reorganized Debtors objected to the Administrative Claim pursuant to the Reorganized Debtors' Thirty-Ninth Omnibus Objection Pursuant To 11 U.S.C. § 503(b) And Fed. R. Bankr. P. 3007 To Expunge Certain Administrative Expense (I) Workers' Compensation Claims, (II) Workers' Compensation Claims Transferred To GM Buyers, And (III) Severance Claims (Docket No. 19045) (the "Thirty-Ninth Omnibus Claims Objection").

5.      Mr. Austin submitted an undocketed letter in response to the Thirty-Ninth Omnibus Claims Objection (the "First Response").

6.      On February 12, 2010, the Reorganized Debtors objected to the Administrative Claim pursuant to the Reorganized Debtors' Forty-Fifth Omnibus Objection Pursuant To 11 U.S.C. § 503(b) And Fed. R. Bankr. P. 3007 To (I) Expunge Certain Administrative Expense (A) Severance Claims, (B) Books And Records Claims, (C) Duplicate Claims, (D) Pension And Benefit Claims, And (E) Transferred Workers' Compensation Claims, (II) Modify And Allow Certain Administrative Expense Severance Claims, And (III) Allow Certain Administrative Expense Severance Claims (Docket No. 19423) (the "Forty-Fifth Omnibus Claims Objection").

7.      On March 8, 2010, Mr. Austin submitted a letter in response to the Forty-Fifth Omnibus Claims Objection (Docket No. 19651) (the "Second Response"), asserting that the Debtors have satisfied the $35,260.00 asserted in the Administrative Claim, but requests an arbitrary amount of $5,000.00 for the denial of outplacement services.

3

8. On May 3, 2010, the Reorganized Debtors' filed the Reorganized Debtors' Statement Of Disputed Issues With Respect To Proof Of Administrative Expense Claim Number 17330 (Randy D. Austin) ("Statement of Disputed Issues - Randy D. Austin") (Docket No. 19969) (the "May Statement Of Disputed Issues").

9. On May 6, 2010, the Reorganized Debtors held a telephonic meet and confer with Mr. Austin, during which time Mr. Austin claimed that he contacted the Debtors' outplacement service provider, Lee Hecht Harrison ("LHH"), before July 1, 2009. The Reorganized Debtors requested any documentation that Mr. Austin may have supporting that claim.

10. On May 28, 2010, the Reorganized Debtors filed the Notice Of Adjournment Of Claims Objection Hearing With Respect To Debtors' Objection To Proof Of Administrative Expense Claim Number 17330 Filed By Randy D. Austin ("Notice Of Adjournment Of Claims Objection Hearing As To Proof Of Administrative Expense Claim Number 17330") (Docket No. 20204) anticipating documentation from Mr. Austin.

11. On June 2, 2010, Mr. Austin submitted the Response Of Randy D. Austin To Objection To Claim No. 17330 (Docket No. 20213) (the "Third Response," together with the First Response and the Second Response, the "Responses"), asserting that he verbally contacted LHH, without stating the date and time the outplacement service provider was contacted.

12. Subsequently, counsel for the Reorganized Debtors again requested information in support of Mr. Austin's $5,000 claim for outplacement services. Specifically, the Reorganized Debtors requested: (1) any documentation that supports Mr. Austin's claim that he placed a call to Lee Hecht Harrison Services between May 1, 2009 and July 1, 2009; (2) the date when Mr. Austin began employment after leaving the Debtors; (3) the name of Mr. Austin's

4

current employer; and (4) any documentation supporting any out of pocket cost that Mr. Austin may have incurred while searching for employment.

        13.    Mr. Austin responded that he began employment with General Electric on December 14, 2009 and that he continues to be employed by General Electric. Mr. Austin, however, did not provide any documentation supporting his claim that he contacted LHH between May 1, 2009 and July 1, 2009.

        14.    On July 21, 2010, the Reorganized Debtors filed the Notice Of Claims Objection Hearing With Respect To Reorganized Debtors' Objection To Proof Of Administrative Expense Claim Number 17330 (Randy D. Austin) (Docket No. 20454), scheduling an evidentiary hearing on the merits of the Administrative Claim for September 24, 2010,[1] at 10:00 a.m. (prevailing Eastern time) in this Court.

<u>Argument</u>

        15.    Mr. Austin has failed to provide sufficient evidence to support his claim. The burden of proof to establish a claim against an estate rests on the claimant and, if a proof of claim does not include sufficient factual support, the proof of claim is not entitled to a presumption of <u>prima facie</u> validity pursuant to Bankruptcy Rule 3001(f) . <u>In re WorldCom, Inc.</u>, No. 02-13533, 2005 WL 3832065, at *4 (Bankr. S.D.N.Y. Dec. 29, 2005) (only a claim that alleges facts sufficient to support legal liability to claimant satisfies claimant's initial obligation to file substantiated proof of claim); <u>see also</u> <u>In re Allegheny Int'l, Inc.</u>, 954 F.2d 167, 173 (3d Cir. 1992) (in its initial proof of claim filing, claimant must allege facts sufficient to support claim); <u>In re Chiro Plus, Inc.</u> 339 B.R. 111, 113 (Bankr. D.N.J. 2006) (claimant bears initial

---

[1]   Pursuant to the Notice Rescheduling Of Fifty-Ninth Omnibus Hearing And Thirty-Seventh Claims Hearing (Docket No. 20417), the Thirty-Seventh Claims Hearing was rescheduled from September 14, 2010 to September 24, 2010.

burden of sufficiently alleging claim and establishing facts to support legal liability); <u>In re Armstrong Finishing, L.L.C.</u>, No. 99-11576-C11, 2001 WL 1700029, at *2 (Bankr. M.D.N.C. May 2, 2001) (only when claimant alleges facts sufficient to support its proof of claim is it entitled to have claim considered <u>prima facie</u> valid); <u>In re United Cos. Fin. Corp.</u>, 267 B.R. 524, 527 (Bankr. D. Del. 2000) (claimant must allege facts sufficient to support legal basis for its claim to have claim make <u>prima facie</u> case). Even if the allegations in the Proof of Claim were sufficient to make a <u>prima facie</u> claim, the Debtors have rebutted that claim by providing specific evidence refuting the validity of the Claim. To shift the burden of production back to a claimant, a debtor must "refute at least one of the allegations that is essential to the claim's legal sufficiency." <u>In re WorldCom, Inc.</u>, No. 02-13533, 2005 WL 3832065, at *4 (Bankr. S.D.N.Y. 2005) (citing <u>In re Allegheny Int'l, Inc.</u>, 954 F.2d 167, 173-74 (3d Cir.1992)). In this case, the Debtors have refuted the allegations that are essential to the Claim. The burden therefore "reverts to the claimant to prove the validity of the claim by a preponderance of the evidence . . . . The burden of persuasion is always on the claimant." <u>Id.</u> Here, Mr. Austin has not met that burden.

        16.     In his Administrative Claim and Responses, Mr. Austin asserts that Delphi owes him $5,000.00 for the denial of outplacement services, but he has failed to present any compelling evidence demonstrating that the amounts asserted in the Claim are owing by the Reorganized Debtors. By contrast, as reflected in the declaration of Dean Unrue, a copy of which is attached hereto as <u>Exhibit A</u>, the Reorganized Debtors' believe that the they do not owe Mr. Austin any amount. (<u>See</u> Declaration Of Dean Unrue In Support Of Reorganized Debtors' Supplemental Reply With Respect To Proof Of Administrative Expense Claim Number 17330

6

(Randy D. Austin) (the "Unrue Declaration").[2] Mr. Austin has not met his burden and has failed to adequately support his claims and establish that the Reorganized Debtors owe an outstanding liability to Mr. Austin in the amount asserted in the Claim.

    17.  Moreover, the Debtors applied the same separation procedures to Mr. Austin as all other similarly situated employees that were separated from the Debtors. See Unrue Declaration at ¶ 4. Specifically, when an employee is separated from Delphi, that employee attends a separation meeting with a member of the Delphi human resources department. See Unrue Declaration at ¶ 4. Mr. Austin's separation meeting took place on March 2, 2009 (the "Separation Meeting"). Id. During the Separation Meeting, Mr. Austin received, among other things, the Delphi Separation Allowance Plan Employee Policy, Benefit And Outplacement Services Information (the "SAP Package") See Unrue Declaration at ¶ 5. As is customary with all separated employees, each page of the SAP Package was reviewed with Mr. Austin in the presence of an executive from the functional area, including the contact information for LHH, the Debtors' outplacement services provider as well as the deadline to request outplacement services. Id. Mr. Austin did not contact either LHH or the Delphi human resources department until July 17, 2009, nearly three weeks after the contact deadline. See Unrue Declaration at ¶ 6. No employee that has contacted LHH or Delphi human resources to obtain outplacement services more than 60 days after separation has ever received such outplacement services. Id. In addition, no former employee has ever received a monetary award in lieu of outplacement services that were to be provided by LHH, even if contact was made within 60 days of separation. Id.

---

[2] The Reorganized Debtors also expressly incorporate their entire Amended And Restated Statement Of Disputed Issues With Respect To Proof Of Administrative Claim Number 17330 (Randy D. Austin) (Docket No. 20478) into this Supplemental Reply.

18. In his Responses, Mr. Austin contends that he was not able to contact either LHH or Delphi human resources due to a plant shutdown from June 29, 2009 through July 10, 2009. However, the shutdown did not affect Mr. Austin's ability to contact LHH, and his first contact to Delphi human resources employee, Lisa N. Fronk, regarding outplacement service was made on July 17, 2009, five days after the plant was reopened from shutdown and nearly three weeks after Mr. Austin's contact deadline. See Unrue Declaration at ¶ 6. In his initial contact with Ms. Fronk, Mr. Austin explained that his contact was prompted by his interaction with another former employee who had made positive comments about LHH. See Unrue Declaration at ¶ 6. Prior to that employee's positive comments to Mr. Austin about LHH, Mr. Austin made no attempt to contact LHH or Delphi human resources despite having the contact information in his possession. Id.

19. After numerous informal discovery requests, Mr. Austin was served with formal discovery request on August 17, 2010 requesting information describing the dates on which he contacted LHH or Delphi human resources and information describing out of pocket expenses he may have incurred while searching for employment. Mr. Austin has failed to provide any information that supports his contention that he suffered any out of pocket expenses from the denial of outplacement services. Moreover, Mr. Austin was not damaged by the denial of outplacement services. Mr. Austin has received the very benefit that outplacement services was to provide because he has been gainfully employed since December 14, 2009.

20. For all the reasons discussed above, the Reorganized Debtors are not liable to Mr. Austin for any amounts asserted in the Claim.

WHEREFORE the Reorganized Debtors respectfully request that this Court enter an order (a) disallowing and expunging the Administrative Claim in its entirety and (b) granting the Reorganized Debtors such other and further relief as is just.

Dated: New York, New York
August 26, 2010

SKADDEN, ARPS, SLATE, MEAGHER
 & FLOM LLP

By:   /s/ John Wm. Butler, Jr.
John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler
155 North Wacker Drive
Chicago, Illinois 60606

- and -

Four Times Square
New York, New York 10036

Attorneys for DPH Holdings Corp., et al.,
 Reorganized Debtors

9

# Exhibit A

                                                              **Hearing Date:  September 24, 2010**
                                                         **Hearing Time:  10:00 a.m. (prevailing Eastern time)**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
155 North Wacker Drive
Chicago, Illinois 60606
John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036

Attorneys for DPH Holdings Corp., et al.,
   Reorganized Debtors

DPH Holdings Corp. Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

DPH Holdings Corp. Legal Information Website:
http://www.dphholdingsdocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                                  :
     In re                                       :          Chapter 11
                                                  :
DPH HOLDINGS CORP., et al.,            :          Case No. 05-44481 (RDD)
                                               :
            Reorganized Debtors.  :         (Jointly Administered)
                                               :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

       DECLARATION OF DEAN UNRUE IN SUPPORT OF REORGANIZED DEBTORS'
     SUPPLEMENTAL REPLY WITH RESPECT TO PROOF OF ADMINISTRATIVE
             EXPENSE CLAIM NUMBER 17330 (RANDY D. AUSTIN)

                      ("UNRUE DECLARATION – AUSTIN")

Dean Unrue declares as follows:

1. DPH Holdings Corp. and its affiliated reorganized debtors (the "Reorganized Debtors"), are the successors to Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates (the "Debtors"), former debtors and debtors-in-possession in these Chapter 11 cases. I submit this declaration in support of the Reorganized Debtors' Supplemental Reply With Respect To Proof Of Administrative Expense Claim Number 17330 (Randy D. Austin) (the "Supplemental Reply"). Capitalized terms not otherwise defined in this declaration have the meanings ascribed to them in the Supplemental Reply.

2. Except as otherwise indicated, all facts set forth in this declaration are based upon my personal knowledge, my review of relevant documents and data, my opinion, and my experience with and knowledge of Delphi's relationship with Randy D. Austin. If I were called upon to testify, I could and would testify to the facts set forth herein.

3. Since May 2006, I have served as the senior Delphi Claims Administrator, responsible for overseeing the reconciliation and settlement of all proofs of claim filed against the Debtors in these Chapter 11 cases. I am responsible for, among other things, overseeing the investigation into and reconciliation of Mr. Austin's proof of administrative expense claim number 17330 (the "Claim"). I have drawn the following conclusions relevant to the Claim:

Review Of The Claim

4. My staff routinely begins the investigation into a proof of claim by reviewing the exhibits supporting the claim that are attached to the proof of claim, the response, and any supplemental response that has been filed. During this review, I have determined that Mr. Austin was separated from Delphi on May 1, 2009. When an employee is separated from Delphi that employee attends a separation meeting with a member of the Delphi human resources

department. Mr. Austin's separation meeting took place on March 2, 2009 (the "Separation Meeting").

5.    During the Separation Meeting, Mr. Austin received, among other things, the Delphi Separation Allowance Plan Employee Policy, Benefit And Outplacement Services Information (the "SAP Package"), relevant portions of which are attached hereto as Exhibit A. As is customary with all separated employees, each page of the SAP Package was reviewed with Mr. Austin in the presence of an executive from the functional area, including the contact and deadline information for Lee Hecht Harrison ("LHH"), the Debtors' outplacement services provider. As described during the Separation Meeting and in writing in the SAP Package, outplacement services should commence within 60 days of his separation – on or before June 29, 2010. To receive outplacement serviced Mr. Austin was informed that he must contact LHH or Delphi human resources on or before June 29, 2009.

6.    Although the plant was shut down from June 29, 2009 through July 10, 2009, the shutdown did not affect Mr. Austin's ability to contact LHH as described in the Separation Meeting. Furthermore, his first contact to a Delphi human resources employee, Lisa N. Fronk, regarding outplacement service was made on July 17, 2009, five days after the plant was reopened from shutdown and nearly three weeks after Mr. Austin's contact deadline. In his initial contact with Ms. Fronk, Mr. Austin explained that his contact was prompted by his interaction with another former employee who had made positive comments about LHH. Prior to that employee's positive comments to Mr. Austin about LHH, Mr. Austin made no attempt to contact LHH, despite having the contact information in his possession. No employee that has contacted LHH or Delphi human resources to obtain outplacement services more than 60 days after separation has ever received such outplacement services. In addition, no employee has ever

3

received a monetary award in lieu of outplacement services that were to be provided by LHH, even if such employee made contact to either LHH or Delphi human resources within the 60 day limitation.

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing statements are true and correct.

Executed on August 26, 2010 in Troy, Michigan.

*/s/ Dean Unrue*
Dean Unrue

# Exhibit A



# Delphi Separation Allowance Plan
## Employee Policy, Benefit and Outplacement Services Information

This material presents general information only and is based on policy and benefit plan provisions in effect as of this date. It is not intended to nor does it provide all details about each program and policy. Complete descriptions of each are contained in official plan documents that are the governing plans over other oral or written statements. Furthermore, Delphi Corporation reserves the right to amend, change, or terminate any program, benefit, or policy at any time. Only the Board of Directors, or its delegate, has this authority. The information contained herein and any specific item described does not imply any guarantee.

## POLICY PROVISIONS

### Eligibility

Separation Allowance Plan benefits are payable to U.S. employees compensated as regular or flexible service salaried employees, who are separated from employment as the result of an Eligible Termination which includes without limitation:

- Mutually Satisfactory Release;
- Certain Special Separations which may include:
  - The closing of an office or business location;
  - A reduction in force;
  - Downsizing;
  - Restructuring, reorganization or re-engineering of a business group, unit or department;
  - Job elimination; or
  - Other circumstances Delphi determines which may or may not be characterized as a Limited Program of Terminations

Separation Allowance Plan benefits are not payable in the event of employment termination as a result of:

- Retirement;
- Quit (which includes an employee's failure to accept a suitable offer of employment);
- Discharge (for personal misconduct);
- Voluntary termination of employment unless the termination results from participation in a special incentive separation program which treats the separation as an Eligible Termination.
- Transfers between the Corporation and any of its wholly owned or substantially wholly owned domestic and foreign subsidiaries or other entity owned by Delphi;
- Separation arising out of outsourcing, the sale of a corporate unit, merger or other combination, spin-off, reorganization, liquidation, dissolution, or other winding up involving Delphi where the employee continues or is offered the opportunity to continue employment;
- A court decree;
- Death;
- Release due to unsatisfactory performance while in the Orientation and Development period;
- Final Release.

### Severance Pay

Eligible Employees who <u>do not</u> sign a Release of Claims will be eligible to receive one (1) month's base pay if length of service is five (5) or more years. Employees with less than five (5) years of service will be paid only through the end of the month in which the Employee last works and receive no severance pay without signed Release of Claims.

Eligible Employees who <u>sign and do not</u> revoke a Release of Claims will be eligible to receive Severance Pay according to the following schedule:

| Length of Service | Months of Severance Pay |
| --- | --- |
| 0 but less than 5 | 1 months |
| 5 but less than 10 | 2 months |
| 10 but less than 15 | 3 months |
| 15 but less than 20 | 4 months |
| 20 but less than 25 | 5 months |
| 25 or more | 6 months |

Severance Pay will be:

- Based on the employee's unbroken length of service, calculated on full, 12 month, years of service.
- Calculated on the last monthly base salary except for those employees returning to "regular active" from "flexible service" status. An Employee who, at the time he or she is notified of their Eligible Termination, was a "flexible service" employee for less than 60 days and who, immediately prior to being classified "flexible service", was a "regular active" employee will be returned to "regular active" status for purposes of determining Severance Pay.
- Paid in semi-monthly payments based on the above table

- Taxable
- Severance Payments will begin the first regularly scheduled payroll following the date of separation if Human Resources received the signed Release of Claims and the seven-day revocation period has expired prior to the payroll processing cutoff. Otherwise, the Severance Payments will begin on the first available payroll processing date following receipt of the signed Release of Claims and expiration of the seven-day revocation period
- Payments may be reduced by any amount owed by the Employee to the Corporation.
- Severance Payments are issued as payroll live check, direct deposit will discontinue

**Other Transition Assistance**
Other Transition Assistance consists of (1) the opportunity to utilize Delphi-provided outplacement services to assist employees in obtaining employment outside the Corporation and (2) a $2,000 payment included in the last regularly scheduled payroll check which the Employee, at his or her discretion, may use toward COBRA health care continuation coverage through Delphi. The local HR Representative will assist in scheduling outplacement service. Use of the outplacement service should commence within sixty days of separation and will generally be limited to six months in duration. 

- Eligible Employees who <u>sign</u> a Release of Claims will receive Severance Pay and Other Transition Assistance.
- Eligible Employees who <u>do not</u> sign a Release of Claims will not be eligible for Other Transition Assistance.

**Vacation**
- Employees will vest vacation on a monthly basis.  <u>Example</u>: Separation effective 5/1/2009, vacation vested four (4) months or 33.3%. Vacation for an employee with 5 yrs service = 120 hours, (120 x .333=39.96) hours vested, round to nearest whole or 40 hours of entitlement.
- Employees impacted by the <u>involuntary programs</u> will be allowed to revoke their deductions for purchased days with their final regularly scheduled paycheck.  Employees may use vacation purchased through payroll deductions; however no payment may be received after the plan year. Employees who have used more days than deducted through payroll will have the remaining dollars deducted from their last regularly scheduled paycheck.  Vested vacation must be utilized prior to purchase days.

**Company Car Allowance**
- Company car allowances will be discontinued at the end of the pay period in which the last day of work occurred.

**Tuition Assistance**
- The tuition assistance program is suspended for 2009, employees will not be eligible for reimbursement of courses started after January 1, 2009.

**Incentive Compensation**
- Employees must be on the active roll on date of the incentive compensation payout to be eligible to receive incentive compensation. Eligible employees who retire or accept a separation payment under Separation Allowance Plan guidelines prior to the payout maintain their eligibility to receive a prorated award.

**Flexible Compensation Payment**
- The Flexible Compensation payment program is suspended for 2009 and will not be paid.

# Career Transition Service
### Delphi Corporation

Lee Hecht Harrison provides the following customized Career Transition Services. These services are designed to assist all levels in the organization make a successful career transition. It includes every element of support that an individual might need and has been tailored to meet the needs of Delphi's employees. Services are provided for the length of time specified by the organization.

### *Phase 1: Months 1-3*

Built around LHH's proven **Milestones for Career Transition** process for successful job search.

- Includes both team and individual consultation with LHH consultants
- Personal and career assessment
- "Milestones" Seminar for Career Transition, Productivity Clinic
- Membership in Job Search Work Team
- Access to LHH office facilities and workspace or equivalent LHH@HOME administrative support
- Access to Career Resource Network
- Access to Interactive Workshops and LHH Job Lead Development activities
- Financial Planning seminars

### *Phase 2: Months 4-6*

Milestones activity continues, with scheduled visits to LHH office to meet with LHH career consultant, and participate in Job Search Work Team on the day the team meets. Access to workspace also provided on that day. Access to Career Resource Network continues on remote basis (accessed from home 24/7, and from office on JSWT day).

### *Phase 3: Months 7-8*

At completion of Month 6, client may be eligible for service continuation, if he/she has not yet landed and is fully engaged in search. If so, an additional month of service (at same support level as Phase 2) will be provided. A second month (to a maximum of two) may also be provided as necessary and appropriate.

LHH Career Transition Assistance: 1-800-665-8193