```
UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                            :   Chapter 11
In re:                                      :
                                            :   Case No. 05-44481 (RDD)
DPH HOLDINGS CORP., et al.,                 :
                                            :   (Jointly Administered)
                 Reorganized Debtors        :
------------------------------------------------------------x
```

### MEMORANDUM OF DECISION ON DEBTORS' OBJECTION
### TO CLAIM OF JOSE C. ALFARO AND MARTHA ALFARO

Appearances:

    Skadden, Arps, Slate, Meagher & Flom LLP, by John K. Lyons and Ron E. Meisler, for the Reorganized Debtors

    Bendinelli Law Office, P.C., by Bobby Gerald Sumner, for Jose C. Alfaro and Martha Alfaro

Hon. Robert D. Drain, United States Bankruptcy Judge:

### Background

As set forth in the complaint dated April 7, 2005 (the "Complaint") of Jose C. Alfaro and Martha Alfaro (the "Alfaros") against General Motors Corporation ("GM") and Delphi Auto Systems LLC ("DAS"), among other defendants, filed in the United States District Court for the District of Colorado (the "District Court"), Mr. Alfaro was seriously injured in the crash of a 2000 Chevrolet Silverado 1500 4X4, LTD in which he was riding.

Upon the commencement of the chapter 11 cases of DAS and its affiliated debtors and debtors in possession (with DAS, the "Debtors") in this Court, the Alfaros' District Court personal injury action was stayed against the Debtors under 11 U.S.C. § 362(a).

1

The Alfaros timely filed a proof of claim in the Debtors' chapter 11 cases (Claim No. 15613) based on the Complaint, a copy of which was attached to the proof of claim. Thereafter, a second proof of claim (Claim No. 16471) for the Alfaros was filed in the Debtors' chapter 11 cases, which was identical to the first with the exception that the amount of their claim was reduced from $1,500,000 to $500,000. The Debtors later objected to the first proof of claim as having been amended and superseded by the second proof of claim, and, there being no objection to the requested relief, the Court entered an order on April 23, 2007 granting the objection and disallowing the first proof of claim. Months later the Debtors objected to the second claim on the basis that it was filed after the bar date established for filing proofs of claim in these cases. Again there was no opposition to this objection, and the Court entered an order on September 28, 2007 disallowing the second claim as untimely.

On August 10, 2009, the Alfaros filed a third proof of claim (Claim No. 19543), which is identical to their first proof of claim. The Debtors objected to it on the basis that the new claim was untimely and that it was, further, barred by the Court's orders disallowing their prior claims. The Alfaros then sought relief under Fed.R.Bankr.P. 9024, which incorporates Fed.R.Civ.P. 60, from the Court's orders disallowing their prior claims, as well as sought, under Fed.R.Bankr.P. 9006, to have the third proof of claim be deemed timely filed based on excusable neglect. Their basis for doing so was the allegation that their former counsel, since fired, had filed the second proof of claim without their authorization and, again without their knowledge, had defaulted on the Debtors' prior claim objections. They also contended that, because of the second claim's tardiness, the Court's April 23, 2007 order should not have disallowed the first-filed

claim, in any event, but, rather, should have disallowed the second claim, which would render the filing of the third claim moot.

The Debtors' reply and response to the Alfaros' objection and motion raised the issue upon which this claim dispute ultimately is to be decided. That issue does not involve the contentions underlying the Alfaros' Bankruptcy Rule 9024 motion, or whether the Alfaros should be permitted to file a late claim under Bankruptcy Rule 9006 based on excusable neglect, or the timeliness of the Alfaros' proofs of claim, including whether the second and third proofs of claim should be treated as amendments relating back to their first proof of claim.

Instead, in their reply and response the Debtors noted that the District Court had granted summary judgment to GM in the Alfaros' personal injury action by an Order Granting Motion for Summary Judgment and Dismissing the Plaintiffs' Claims Against General Motors Corporation, dated October 17, 2006 (Hon. Marcia S. Kreiger, D.J.), a copy of which was attached as Exhibit G to the Debtors' First Supplemental Reply (the "Summary Judgment Order"). Specifically, the District Court determined in the Summary Judgment Order that the Alfaros had not submitted sufficient competent evidence to establish a triable issue of fact that the Chevrolet Silverado had caused their injuries. Summary Judgment Order at 4. The Debtors argued, therefore, that the Alfaros were barred by collateral estoppel, or issue preclusion from pursuing their claims against the Debtors based on the same Complaint and, more specifically, a component manufactured by DAS and installed in the Chevrolet Silverado that was found in the Summary Judgment Order not to have caused their injuries.

3

Given how the collateral estoppel issue found its way into this dispute, the Court asked the parties to submit supplemental memoranda on it. Having reviewed those submissions and the other pleadings and exhibits in this matter, including the record of the District Court personal injury action provided to the Court, I have determined that the Summary Judgment Order precludes the Alfaros from pursuing their claims against the Debtors. This memorandum states the reasons for that conclusion. The other issues raised by the Alfaros in their objection to the Debtors' objection to Claim No. 19543 and their motion for relief under and Bankruptcy Rules 9006 and 9024 are therefore moot.

## Jurisdiction

This Court has jurisdiction over the Debtors' objection to the Alfaros' claim -- a contested matter arising in this case under section 502 of the Bankruptcy Code -- under 28 U.S.C. § 1334(b). This is a core proceeding under 28 U.S.C. § 157(b)(2)((B).

## Discussion

The parties agree that the Court must apply the law of Colorado -- the state where the Summary Judgment Order was issued -- to determine whether that order precludes the Alfaros' claims against the Debtors. See 28 U.S.C. § 1738; Marrese v. Am. Acad. of Orthopaedic Surgeons, 470 U.S. 373, 380 (1985). When considering the issue of collateral estoppel here, the Court is bound by the rulings of the Colorado Supreme Court and, in the absence of such rulings on point, must try to predict how that court would rule. Elletson v. Riggle (In re Riggle), 389 B.R. 167, 174 (D. Colo. 2007). In so predicting, the Court must follow intermediate Colorado state court decisions unless other authority demonstrates that the Colorado Supreme Court would decide otherwise, id.; and, of course, the decisions of other courts interpreting Colorado law and the underlying

4

elements of the doctrine in other jurisdictions are persuasive authority. Daitom, Inc. v. Pennwalt Corp., 741 F.2d 1569, 1574-75 (10th Cir. 1984).

Under Colorado law, collateral estoppel, or issue preclusion[1] "bars re-litigation of an issue if (1) the issue is identical to an issue actually litigated and necessarily adjudicated in the prior proceeding; (2) the party against whom estoppel was sought was a party to or was in privity with a party in the prior proceeding; (3) there was a final judgment on the merits in the prior proceeding; and (4) the party against whom the doctrine is asserted had a full and fair opportunity to litigate in the prior proceeding." Stanton v. Schultz, 222 P.3d 303, 307 (Colo. 2010); Bebo Constr. Co. v. Mattox & O'Brien, P.C., 990 P.2d 78, 84-85 (Colo. 1999). "The burden of establishing these elements rests with the party seeking preclusion." Bebo Constr., 990 P.2d at 85.

The Alfaros do not dispute that the Debtors have proven the second and third elements of collateral estoppel. The Alfaros were, of course, a party in the District Court personal injury action, and the Summary Judgment Order, with the District Court's January 2, 2007 Judgment, constitutes a final judgment against them. In re Water Rights of Tonko v. Mallow, 154 P.3d 397, 406 (Colo. 2007) ("A judgment is final when it ends an action leaving nothing further for the court to do in order to completely determine the rights of the parties involved in the proceeding."); Bebo Constr., 990 P.2d at 85 ("An issue decided on a motion for summary judgment may collaterally estop relitigation of that issue in a subsequent proceeding.").

---

[1] "Issue preclusion is a judicially created, equitable doctrine intended to relieve parties of multiple lawsuits, conserve judicial resources, and promote reliance on the judicial system by preventing inconsistent decisions." In re Water Rights of Tonko v. Mallow, 154 P.3d 397, 405 (Colo. 2007) (internal quotation and citations omitted). As an equitable doctrine, collateral estoppel need not be applied in every case in which it could be applied, if countervailing policies or equities outweigh its purpose. Arapahoe County Pub. Airport Auth. v. FAA, 242 F.3d 1213, 1220 (10th Cir. 2001); Western Group Nurseries, Inc. v. Pomeranz, 867 P.2d 12, 15 (Colo. App.1993), cert. denied, 1994 Colo. LEXIS 158 (Colo. Feb. 7, 1994) (declining to apply issue preclusion were there already were two inconsistent rulings on the issue).

5

Moreover, the Alfaros cannot dispute that the issue of causation in the present claim dispute was identical to the causation issue decided by the District Court in the prior proceeding and was necessarily decided by the District Court. The Debtors would be liable to the Alfaros, if at all, only because of parts manufactured by DAS that were installed in the Chevrolet Silverado. The District Court's determination in the personal injury action that the Alfaros had failed to show sufficient competent evidence to raise a factual issue whether the Silverado caused their injuries necessarily subsumed whether they had shown sufficient competent evidence to establish a triable issue of fact regarding whether the DAS parts installed by GM in the Silverado caused their injuries. See Bebo Constr., 990 P.2d at 85 and 86 (for collateral estoppel purposes, the determination of the prior issue must have been necessary to the judgment by the prior adjudicatory body); see also In re Water Rights of Tonko, 154 P.3d at 405-06 (no issue preclusion where prior court did not necessarily reach issue before present court); Huffman v. Westmoreland Coal Co., 205 P.3d 501, 506-507 (Colo. App. 2009) (the necessary factual or legal issues, or both, must be the same in the two adjudications).[2]

The parties disagree, however, whether the causation issue was "actually litigated" and whether the Alfaros had "a full and fair opportunity to litigate" it in the District Court proceeding.

The Alfaros contend that the Summary Judgment Order was essentially a default judgment and, therefore, is not entitled to collateral estoppel effect, relying on, among

---

[2] In this claim dispute the Alfaros have the same burden of proof, under the same Federal Rules, that they had in the District Court action; moreover, this is not an instance where the second court is faced with a policy to construe the statute narrowly that the prior court did not have before it, as is the case in the many reported decisions involving the application of collateral estoppel to a later non-dischargeability action under section 523 of the Bankruptcy Code. See, e.g., In re Riggle, 389 B.R. at 177 ("'Exceptions to discharge are to be narrowly construed, and because of the fresh start objectives of bankruptcy, doubt is to be resolved in the debtor's favor.'"), quoting Belco First Fed. Credit Union v. Kaspar (In re Kaspar), 125 F.3d 1358, 1361 (10th Cir. 1997).

6

other decisions, In re Riggle, 389 B.R. at 167, as well as the Restatement (Second) of Judgments § 27, comment e, which states, "In the case of a judgment entered by . . . default, none of the issues is actually litigated."[3]

(The Alfaros contention that they did not have "a full and fair opportunity to litigate" in the District Court is based on their view that their attorney at the time improperly defaulted on GM's motion for summary judgment in the District Court action. Therefore, this argument is basically the same as the Alfaros' contention that the Summary Judgment Order should not be preclusive because it was essentially a default judgment and will be addressed in that context. In any event, however, to the extent that the "actually litigated" and "full and fair opportunity to litigate" factors are not duplicative here, the Court finds that the Debtors have established the latter factor by showing, as discussed below, that the Alfaros and their counsel had and exhibited a strong incentive to litigate the causation issue and that, as noted in footnote 2, above, the issues, procedures and remedies in the District Court action and in the present action are essentially the same. See In re Riggle, 389 B.R. at 178 ("Under Colorado law, determining whether a party had a full and fair opportunity to litigate requires an analysis of (1) whether the remedies and procedures in the first proceeding are substantially different from the proceeding in which collateral estoppel is asserted; (2) whether the party in the first proceeding had sufficient incentive to vigorously assert or defend his position; and (3) the extent to which the issues are identical."), citing McNichols v. Elk Dance Colo., LLC (In re Elk Dance Colo., LLC), 139 P.3d 660, 669 (Colo. 2006); Bebo Constr., 990 P.2d at 87.)

---

[3] The Colorado courts have relied on the Restatement (Second) of Judgments when considering the parameters of issue preclusion. See, e.g., Bebo Constr., 990 P.2d at 85; Michaelson v. Michaelson, 884 P.2d 695, 701 (Colo. 1994)

7

The Debtors, on the other hand, contend that the Summary Judgment Order was a judgment on the merits that considered the evidence offered, to the extent it was chosen to be offered, by the Alfaros after discovery and, therefore, was "actually litigated." They argue that, while default judgments are generally not accorded collateral estoppel effect, the Summary Judgment Order was in fact a substantive consideration of the evidence, produced after discovery, rather than a simple default judgment where the party to be charged with collateral estoppel did not meaningfully participate in the prior litigation.

The Debtors thus assert that this case is governed by the rule stated in Ries v. Sukut (In re Sukut), 357 B.R. 834, 841 (Bankr. D. Colo. 2006), that a default judgment is "actually litigated" for purposes of issue preclusion based on "evidence that the parties engaged in a meaningful assessment of the facts and then the defendant made a conscious choice not to contest the entry of judgment, or that the court rendered findings based on evidence presented in some form, through affidavits, proffers, or at trial."  See also In re Riggle, 389 B.R. at 175 ("[W]here the party seeking to apply collateral estoppel presents evidence that the prior court rendered findings based on actual evidence or that the parties engaged in a meaningful assessment of the facts and then the defendant made a conscious choice not to contest the entry of judgment, a court may appropriately find the issue was actually litigated."); In re Austin, 93 B.R. 723, 727 (Bankr. D. Colo 1988) ("'Actually litigated' does not, necessarily and always, mean actually and conclusively tried before a judge or jury. 'Actually litigated' can be construed to mean that the dispute proceeded through all phases of litigation appropriate to the case, while providing full and fair protection of litigants' rights, and according to the parties a meaningful opportunity for a

8

trial on the merits."); Huffman v. Westmoreland Coal Co., 205 P.3d at 506-507 (favorably citing In re Gottheiner, 703 F.2d 1136, 1140 (9th Cir. 1983); Chao v. Johnson (In re Johnson), 2007 U.S. Dist. LEXIS 12969 at ***7-**14 (S.D. Tex. Feb. 26, 2007); and 18A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 4444, at 296 (2d ed. 2006), in applying collateral estoppel based on consent to summary judgment after extensive discovery conducted by both parties.)

To decide the foregoing dispute, the Court must examine the record in the District Court action, most importantly the Summary Judgment Order itself but also the rest of the record, to put the Summary Judgment Order in its proper context. In re Riggle, 389 B.R. at 175, 179; Evans v. Dunston (In re Dunston), 146 B.R. 269, 277 (D. Colo. 1992)

GM moved for summary judgment in the District Court action on July 21, 2006 ("Summary Judgment Motion"). See Exhibit B to Debtors' First Supplemental Reply. There having been no response to GM's Summary Judgment Motion, on August 21, 2006 GM moved to adjudicate that motion on an expedited basis ("Motion to Adjudicate"), see Exhibit D to Debtors' First Supplemental Reply, which notes that the Alfaros had not timely responded to the Summary Judgment Motion under D.C.COLO.L.CIV.R. 56.1(A). The Alfaros objected to the Motion to Adjudicate two days later, on August 23 (the "Objection") (see Exhibit E to Debtors' First Supplemental Reply); GM replied on September 11, 2006 (see Exhibit F to Debtors' First Supplemental Reply); and the District Court issued its Summary Judgment Order on October 17, 2006, effectively denying the Alfaros' Objection to GM's Motion to Adjudicate by granting the Summary Judgment Motion.

9

The premise of GM's Summary Judgment Motion was that -- fact discovery having been completed and the parties having produced their expert reports -- the Alfaros had not established a *prima facie* case; more specifically, GM contended that the Alfaros' expert had not identified a specific defect in the Silverado that might have caused the accident and no other witness had been identified to offer testimony for the plaintiffs regarding any such defect.  Summary Judgment Motion at 4-6.  GM attached the report of the Alfaros' expert, William G. Broadhead, as Exhibit A-3 to the Summary Judgment Motion, and also attached the reports of GMC's experts, Kathryn F. Anderson, Daniel Davee and John Sprague, as Exhibits A-4, A-5 and A-6, respectively.  The Alfaros' Objection to the Motion to Adjudicate noted, first, that the experts' depositions had not yet been taken and, second, that it was clear from Mr. Broadhead's report that "there are genuine issues of fact remaining in the case, to be determined by a jury."  The Objection also attached certain pages of Mr. Broadhead's expert report in support of that contention.  Objection at 4.

Although when the Summary Judgment Motion was filed Mr. Broadhead had not yet been deposed, he was deposed on August 25, 2006, and GM offered to supplement its Summary Judgment Motion with the transcript of his testimony.  See GM's Reply Brief in Support of its Motion to Adjudicate Summary Judgment Motion at 2, n.2.  Another expert for the Alfaros, Dennis F. Shanahan, M.D. was deposed on August 29, 2006, see Exhibit B-1 to the Alfaros' Motion to Alter or Amend the Judgment under Fed.R.Civ.P. 59; however, it appears that Dr. Shanahan's report did not cover the critical causation issue -- in any event, the Alfaros did not refer to it in their Objection.  Nor did the Alfaros submit the deposition transcripts of either Mr. Broadhead or Dr. Shanahan to the District

10

Court before the District Court issued the Summary Judgment Order on October 17, 2006.

Although the Summary Judgment Order is terse, when placed in the foregoing context it is clear that it was not only a decision on the merits but also that the issue of causation was "actually litigated" and that the Alfaros had "a full and fair opportunity to litigate" it for purposes of issue preclusion.  The District Court found that the Alfaros had "failed to produce any evidence in support of their claims," Summary Judgment Order at 4, not because the Alfaros had simply failed to litigate the matter but, rather, because -- after the completion of all fact discovery, after the production and submission of the parties' expert reports and the depositions of the Alfaros' experts, and after the District Court decided to treat the Objection as "a response to the motion for summary judgment," id. -- the District Court concluded that the Alfaros had not carried their underlying evidentiary burden on summary judgment.

In other words, in deciding the Summary Judgment Motion the District Court had before it the relevant expert reports on causation, which were not only attached to GMC's Motion for Summary Judgment but also were cited in the Objection as the basis for the Alfaros' contention that "there are genuine issues of fact remaining in the case, to be determined by a jury."  Objection at 4.  The District Court disagreed with that argument of the Alfaros based on the facts before it, not because the Alfaros did not actually litigate the matter.  In their Objection, which the District Court expressly considered as a response to the Summary Judgment Motion, the Alfaros' counsel had the ability to include any other evidence produced during fact discovery to show why the District

11

Court should not grant the Motion to Adjudicate, but they chose to refer only to the expert reports, which were insufficient to stave off summary judgment.

The subsequent history of the litigation only confirms that the causation issue was "actually litigated" and that the Alfaros and their counsel had a vigorous incentive to litigate. On October 30, 2006 the Alfaros' moved to alter or amend the Summary Judgment Order under Fed.R.Civ.P. 59(e), asserting, as they had in their Objection, that GM had not carried its burden on summary judgment and also citing purportedly newly discovered evidence identified during the experts' depositions. See Exhibit H to Debtors' First Supplemental Reply at 3. GM objected, and on December 8, 2006 the District Court issued an Order Denying Plaintiff's Motions, reiterating, first, that, contrary to their legal argument, the Alfaros had the burden of showing a *prima facie* case on causation in response to the Summary Judgment Motion and, second, finding that the allegedly newly discovered evidence had been in the Alfaros' possession well before the Summary Judgment Order was issued. See Exhibit J to Debtors' First Supplemental Reply. Again, therefore, the Alfaros, or their counsel, actively litigated the causation issue and showed that they had a strong incentive to do so, this time on a Rule 59 basis, but fell short in convincing the District Court.

After denying the Alfaros' Rule 59 motion, the District Court issued its Judgment Under Fed.R.Civ.P. 54(b) (the "Judgment"), on January 2, 2007. See Exhibit K to Debtors' First Supplemental Reply. Consistent with the context of the Summary Judgment Order, the Summary Judgment Order itself, and the Rule 59 litigation, the Judgment is clearly a judgment on the merits in a case involving multiple parties -- that

is, it is titled a judgment under Fed.R.Civ.P. 54(b) -- not a default judgment under Federal Rules 54(c) and 55.

The Debtors therefore have established each of the elements of collateral estoppel under Colorado law, and the Court concludes that the Alfaros should now be precluded from re-litigating the issue of causation, there being no other factors that here outweigh the purposes of the issue preclusion doctrine. Bebo Constr., 990 P.2d at 86; Huffman v. Westmoreland Coal, 205 P.3d at 508; In re Sukut, 357 B.R. at 839; In re Austin, 93 B.R. at 277; see also In re Johnson, 2007 U.S. Dist. LEXIS 12969 at *7-14.

## Conclusion

The Debtors' objection to the Alfaros' claim is granted on the basis of issue preclusion, and the Alfaros' related motions under Bankruptcy Rules 9024 and 9006 are denied as moot. The Debtors should submit an order consistent with this memorandum.

Dated:  White Plains, New York
       August 31, 2010

                              /s/Robert D. Drain
                              Hon. Robert D. Drain
                              United States Bankruptcy Judge