**Hearing Date and Time:  October 21, 2010 at 10:00 a.m. (prevailing Eastern time)**

Joseph Serino
Michael A. Cohen
Kirkland & Ellis LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile:   (212) 446-4900

- and-

Lisa Pierce Reisz (application for *pro hac vice* admission to be filed)
Tiffany Strelow Cobb (admitted *pro hac vice*)
Jesse Cook-Dubin (application for *pro hac vice* admission to be filed)
VORYS, SATER, SEYMOUR AND PEASE LLP
52 East Gay Street
Columbus, Ohio  43215
Telephone: 614-464-8322
Facsimile:  614-719-4663
Email:  tscobb@vorys.com

Attorneys for AOL Inc. f/k/a AOL LLC

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| DPH Holdings Corporation, et al., | ) |
| | ) Case No. 05-44481 (RDD) |
| Debtor. | ) (Jointly Administered) |
| | ) |

**SUPPLEMENTAL RESPONSE OF AOL INC. F/K/A AOL LLC TO REORGANIZED DEBTORS' THIRTY-SIXTH AND THIRTY-SEVENTH OMNIBUS OBJECTIONS PURSUANT TO 11 U.S.C. § 503(B) AND FED. R. BANKR. P. 3007 TO EXPUNGE CERTAIN (I) PREPETITION CLAIMS, (II) EQUITY INTERESTS, (III) BOOKS AND RECORDS CLAIMS, (IV) UNTIMELY CLAIMS, (V) PAID SEVERANCE CLAIM, (VI) PENSION, BENEFIT, AND OPEB CLAIMS, AND (VII) DUPLICATE CLAIMS**

AOL Inc. f/k/a AOL LLC ("AOL") submits this Supplemental Response to the Thirty-

Sixth and Thirty-Seventh Omnibus Objections Pursuant to 11 U.S.C. § 503(b) and Fed. R.

Bankr. P. 3007 to Expunge Certain (I) Prepetition Claims, (II) Equity Interests, (III) Books and

Records Claims, (IV) Untimely Claims, (V) Paid Severance Claims, (VI) Pension, Benefit, and

OPEB Claims, and (VII) Duplicate Claims (the "36th Objection" and the "37th Objection,"

respectively; collectively, the "Objection") of Reorganized Debtors DPH Holdings Corp., *et al.*

("Debtors").[1]  In support of this Supplemental Response, and pursuant to the Claims Objection

Procedures Order, AOL submits the Declaration of Mara Perrone Bowater (the "Bowater Decl."

or "Bowater Declaration") and the Declaration of Ronald J. Lovato (the "Lovato Decl." or

"Lovato Declaration").

## PRELIMINARY STATEMENT

1.      Debtors' Objection relates to two claims filed by AOL: a prepetition claim in the

amount of $969,141.63 and an administrative claim in the amount of $560,911.50.  Both of these

claims arose under a certain Confidential Partner Marketing Agreement between AOL and

Delphi Automotive Systems LLC dated May 5, 2005 (the "Partner Agreement"), Confidential

Partner Marketing Agreement between AOL and Delphi Automotive Systems LLC dated June

22, 2001, and AOL Delphi Retiree Offer Agreement between Delphi Automotive Systems LLC

and AOL dated May 5, 2005, (collectively, the "Agreement").[2] See Bowater Decl. ¶ 4.  True

and accurate copies of these three documents are attached to the Bowater Declaration as Exhibits

A, B and C, respectively.

2.      Pursuant to the Agreement, AOL offered its internet access and software services

to Debtors' employees and retirees at rates that were discounted significantly over AOL's

published monthly rates ("Delphi Rates").  Bowater Decl. ¶ 5; Lovato Decl. ¶ 12.  Debtors

---

[1] Under the Order Pursuant To 11 U.S.C. § 502(b) and Fed. R. Bankr. P. 2002(m), 3007, 7016, 7026, 9006, 9007, And 9014 Establishing (i) Dates For Hearings Regarding Objections To Claims And (ii) Certain Notices And Procedures Governing Objections To Claims (Docket No. 6089) (the "Claims Objection Procedures Order"), AOL was required to submit this Supplemental Response no later than 30 business days prior to the hearing currently scheduled on October 21, 2010.  Pursuant to the powers granted to them by the Claims Objection Procedures Order, Debtors agreed to extend AOL's deadline for filing its Supplemental Response through and including September 17, 2010.
[2] Due to the commercially sensitive nature of the information contained in the Agreement, copies of the Agreement will be provided to Debtors and the Court but will not be filed and served on other Notice Parties

agreed to pay a portion of the Delphi Rate (the "Delphi Portion") for AOL accounts belonging to employees or retirees deemed eligible pursuant to the Agreement (the "Participants"). Bowater Decl. ¶ 6; Lovato Decl. ¶ 13. Debtors' employees and retirees who met the eligibility criteria specified in the Agreement were able to register for AOL service at the discounted Delphi Rates, provided they agreed to pay the remainder of the Delphi Rate (the "Employee Portion"), typically by providing a credit card number to AOL, and agreed to be bound by AOL's published Terms of Service. Bowater Decl. ¶ 7; Lovato Decl. ¶ 14. This Supplemental Response refers to the services provided to Participants under the Agreement as the "Program."

3.    Although Debtors originally indicated that their "books and records do not reflect the *existence* of the asserted Claims" – a statement directly contradicted by Debtors' Schedules and Statements of Financial Affairs ( the "Schedules")[3] from their filing through the present – Debtors now allege that AOL "overcharged DAS LLC since the inception of the programs reflected in the Agreement[]." <u>See, respectively</u>, Objection ¶ 20 (emphasis added); Schedule F, at 45; Reorganized Debtors' Statement of Disputed Issues with Respect to Proofs of Claim Numbers 9882 and 18609 (AOL LLC f/k/a America Online, Inc./SPCP Group LLC and AOL LLC) ¶ 11 (the "Debtors' Statement"). Although not contained in Debtors' Statement, Debtors have conveyed to AOL their assertion that AOL continued to bill Debtors for Participants who were no longer eligible for the Program.

4.    Debtors' assertions are misplaced. Under the Agreement, it was ***Debtors'*** responsibility to provide information regarding which Participants were no longer eligible for the Delphi Rates. Partner Agreement ¶ 1.4.3.b. And of course, this makes sense: only Debtors would know which of its employees retire or otherwise leave Debtors' employ. AOL agrees that

---

[3]See Docket No. 10, In re Delphi Automotive System LLC, Case No. 05-44640-ddd, Delphi Automotive Systems LLC – Amended and Restated Schedules of Assets and Liabilities, Schedule F (America Online Inc. nka AOL scheduled claim of $944,476).

Participants were required to apply and be verified by a third party designee[4] before AOL would provide the discounted Delphi Rates to such Participants. However, under the Agreement, the obligation to "confirm . . . that those individuals participating in the Program are Employees" fell squarely on the Debtors. Id.

     5.     The Court should allow AOL's claims as filed and overrule Debtors' Objection, for a number of reasons:

- Given that Debtors' assertions in the Objection (e.g., that its books and records did not reflect the "existence" of the claims) directly conflict with Debtors' Schedules, the Objection was insufficient to overcome the *prima facie* validity of AOL's prepetition claim or the evidence presented by AOL in support of its administrative claim.

- Even if the new allegations raised in Debtors' Statement had merit – which they do not – Debtors waived them by failing to allege anything beyond a generic "books and records" objection in the original Objection.

- As Debtors did not express any concerns to AOL about the accuracy of AOL's invoices until, at the earliest, the Spring of 2007, the unpaid invoices became an account stated under controlling New York law and cannot be questioned absent a showing of fraud—which Debtors have not alleged, let alone proven.

- Additionally, Debtors' payment of some invoices but not others constitutes partial payment of the account, which is considered an acknowledgment of the validity of the account under New York law.

- Debtors' claim that half the Participants were not eligible under the Agreement – for which they have no basis other than a "review of certain invoices," see Debtors' Statement ¶ 10 –does not disprove AOL's right to payment, because it was Debtors' responsibility under the Agreement to inform AOL when a Participant ceased to be eligible for the Delphi Rates. Stated otherwise, even if one were to assume, arguendo, that certain of the Participants had become ineligible due to a change in their employment status at Debtors, such evidence alone is insufficient to render the invoices in accurate under the Agreement; rather, notice **from Debtors** "of changes in individuals' employment status, and . . . whether any such individuals have become Retirees" is a necessary component to disprove the validity of AOL's invoices. Such evidence is lacking here.

---

[4]  Debtors do, however, distort the words of the Agreement to imply that this designee was an agent of AOL's, when, in fact, AOL was merely required to "approve" the designee's retention, and was prohibited from withholding such approval without reason.

4

## FACTUAL BACKGROUND

6.        On July 19, 2006, AOL timely filed its claim (Claim No. 9882) (the "Pre-Petition Claim"), in the amount of $969,141.63 (the "Pre-Petition Claim Amount") for services rendered pre-petition to the Debtors' employees and retirees pursuant to the Agreement. *See* Docket No. 19060, Response of AOL LLC to Reorganized Debtors' Thirty-Sixth Omnibus Objection Pursuant to 11 U.S.C. Section 503(B) and Fed. R. Bankr. P. 3007 to Expunge Certain (I) Prepetition Claims, and (II) Equity Interests, (III) Books and Records Claims, (IV) Untimely Claims, (V) Paid Severance Claim, (VI) Pension, Benefit and OPEB Claims, and (VII) Duplicate Claims (Exhibit 1 attached thereto).  On July 15, 2009, AOL timely filed its administrative expense claim (Claim No. 18609) (the "Administrative Claim" and, together with the Pre-Petition Claim, the "Claims"), in the amount of $560,911.50 (the "Administrative Claim Amount" and, together with the Pre-Petition Claim Amount, the "Claimed Amounts"), for services rendered postpetition under the Agreement. *See* Docket No. 19062, Response of AOL LLC to Reorganized Debtors' Thirty-Seventh Omnibus Objection Pursuant to 11 U.S.C. Section 503(B) and Fed. R. Bankr. P. 3007 to Expunge Certain (I) Prepetition Claims, and (II) Equity Interests, (III) Books and Records Claims, (IV) Untimely Claims, (V) Paid Severance Claim, (VI) Pension, Benefit and OPEB Claims, and (VII) Duplicate Claims (Exhibit 1 attached thereto).  The Debtors have denied that ***any*** amount is due to AOL, purportedly on the grounds that the Claims "assert dollar amounts or liabilities that are not owing pursuant to the Reorganized Debtors' books and records."  36th Objection at p. 8; 37th Objection at p. 7.

A.        *Program Mechanics*

7.        To facilitate billing, for its internal use, AOL maintains a system of price index codes ("PI Codes").  Bowater Decl. ¶ 8; Lovato Decl. ¶ 15.  Each AOL internet services account receives a PI Code reflecting the monthly charge for such account.  Bowater Decl. ¶ 8; Lovato

Decl. ¶ 15.  Consistent with this system, AOL assigned one of a number of Delphi-specific PI

Codes ("Delphi PI Codes") to each Participant's account.  Bowater Decl. ¶ 9; Lovato Decl. ¶ 16.

For a given Participant account, these Delphi PI Codes determined the amount of the Employee

Portion and Delphi Portion for which AOL charged the Participant and Debtors, respectively.

Bowater Decl. ¶ 9; Lovato Decl. ¶ 16.

    8.    A typical Participant might expect to receive AOL service by paying the

Employee Portion of approximately $5.00 per month, which was significantly less than AOL's

published rates, which often exceeded $20.00 per month during the period covered by the

Agreement.  Lovato Decl. ¶ 16.  Under the Agreement, once Debtors notified AOL that a

Participant was no longer eligible for the Program, the Agreement contemplated AOL's

movement of that Participant onto  a retail PI Code (or if applicable, a retiree PI Code).  Partner

Agreement ¶ 1.4.3.b; see Bowater Decl. ¶ 12; Lovato Decl. ¶ 19.  The pricing associated with the

Delphi PI Code was less than the pricing associated with higher retail PI Codes.  So, while AOL

increased customer volume from the Program, for every Participant who was moved off the

Program (due to ineligibility or otherwise) and placed onto a higher retail PI Code, the greater

the revenue to AOL.  Accordingly, AOL had every economic incentive to ensure that ineligible

Participants were removed from the Delphi PI Code and placed onto the higher retail PI Code as

contemplated under the Agreement.Bowater Decl. ¶ 13; Lovato Decl. ¶ 20.

B.    *Unpaid Amounts*

    9.    The Pre-Petition Claim Amount represents the aggregate of the Delphi Portions

for all Participants that came due prior to the Petition Date and remain unpaid; the

Administrative Claim Amount represents the Delphi Portion for each Participant that came due

between the Petition Date[5] and December 31, 2007 (the "Administrative Period"), when the

Agreement expired according to its terms and remain unpaid.

10.    The Agreement states that AOL shall invoice Debtors monthly for the Delphi

Portion, and Debtors were obligated to make all payments required in immediately available

funds.  Partner Agreement ¶ 1.4.2.c.  The operative language of the Agreement is as follows:

1.4.3.    <u>Change Over Of Existing AOL Accounts</u>.

a.    <u>Change Due To Expiration Of This Agreement</u>. As of the date that the applicable AOL Account expires under the terms of this Agreement, the AOL Account may, at AOL's sole discretion, immediately convert to AOL's then-standard monthly subscription fees, or some other program, and at rates as AOL determines in its sole discretion. AOL agrees to provide reasonable advance notice to such individuals with respect to such changes to their AOL Account and will provide the Employee with a means to cancel its AOL Account without penalty before such changes to their AOL Account and will otherwise provide such individuals with a right to cancel their AOL Account in accordance with AOL's standard cancellation policies.

b.    <u>Change Of Employment Status During Term Of Agreement</u>. Delphi shall confirm, in accordance with the Operations Plan, that those individuals participating in the Program are Employees. Delphi shall provide reports to AOL on a schedule set forth in the Operations Plan, notifying AOL of changes in individuals' employment status, and shall state whether any such individuals have become Retirees. After receiving such notification from Delphi, AOL will provide to each such individual notice of transfer of such individual's AOL Account to a standard monthly subscription fee, or, if applicable to the monthly rate under the Retiree Offer Agreement.

Partner Agreement ¶ 1.4.3.a., b.

11.    In fact, AOL invoiced Debtors monthly for amounts due, both prior to the Petition

Date and during the Administrative Period.[6]  Debtors failed to pay AOL for the invoices attached

to the Pre-Petition Claim.  Bowater Decl. ¶¶ 14-15.  During the Administrative Period, Debtors

paid consistently until approximately February 2007, with the exception of the invoice dated

April 18, 2006, which was also unpaid.  <u>Id.</u>

---

[5] Capitalized terms not defined herein have the meanings ascribed to them in the Objection.
[6] As demonstrated by the chart in the following paragraph, there were two periods in 2007 when there was a slight delay in issuing invoices.

12.    The Claims relate to the following invoices sent by AOL to Debtors:

| Arising | Inv. No. | Inv. Date | Service Dates | Participants | Amount |
|---|---|---|---|---|---|
| PREPET | 182340 | 5/17/05 | April 2005 | 25,963 | $181,881.00 |
| PREPET | 184529 | 6/21/05 | May 2005 | 25,920 | $181,440.00 |
| PREPET | 186108 | 7/21/05 | June 2005 | 25,875 | $181,125.00 |
| PREPET | 188647 | 9/16/05 | July 2005 | 25,838 | $180,866.00 |
| PREPET | 188648 | 9/16/05 | August 2005 | 25,804 | $109,667.00 |
| PREPET | 189962 | 10/12/05 | September 2005 | 25,764 | $109,497.00 |
| PREPET | 193072 | 12/5/05 | October 2005 | 25,702 | $24,663.37 |
| ADMIN | 193072 | 12/5/05 | October 2005 | 25,702 | $84,560.13 |
| PREPET | 194468 | 12/21/05 | October 2005 | 1 | $2.26 |
| ADMIN | 194468 | 12/21/05 | October 2005 | 1 | $7.74 |
| ADMIN | 200116 | 4/18/06 | March 2006 | 24,357 | $103,517.25 |
| ADMIN | 217753 | 2/22/07 | January 2007 | 21,520 | $91,460.00[7] |
| ADMIN | 225242 | 6/20/07 | February 2007 | 11,452 | $48,671.00 |
| ADMIN | 225220 | 6/20/07 | March 2007 | 11,054 | $46,979.50 |
| ADMIN | 225243 | 6/20/07 | April 2007 | 10,552 | $44,846.00 |
| ADMIN | 225240 | 6/20/07 | May 2007 | 10,224 | $43,452.00 |
| ADMIN | 226806 | 7/10/07 | June 2007 | 9,655 | $41,033.75 |
| ADMIN | 229384 | 8/14/07 | July 2007 | 9,071 | $38,551.75 |
| ADMIN | 231898 | 9/18/07 | August 2007 | 8,754 | $37,204.50 |
| ADMIN | 235616 | 11/2/07 | September 2007 | 8,322 | $35,368.50 |
| ADMIN | 241006 | 1/17/08 | October 2007 | 7,963 | $33,842.75 |
| ADMIN | 241000 | 1/17/08 | November 2007 | 7,504 | $31,982.00 |
| ADMIN | 242251 | 1/28/08 | December 2007 | 7,082 | $30,098.50 |

Copies of these invoices are attached to the Bowater Declaration as Exhibit D. The total number

of Participants reflected on the invoices for the Delphi Portion is actually less than the total

number of AOL customers billed the corresponding Employee Portion under applicable Delphi

PI Codes for the same. Bowater Decl. ¶ 19; Lovato Decl. ¶ 21.

C.    *Allegations by Debtors*

13.    Debtors only raised concerns as to the accuracy of these invoices in response to

inquiries regarding Debtors' failure to pay invoice number 200116, dated April 18, 2006

(postpetition). Bowater Decl. ¶ 16. At the end of 2006, AOL's collection department began

---

[7] AOL subsequently issued a Credit Memo concerning invoice number 217753 (among others), where AOL reduced
the number of Participants being invoiced to Debtors to 12,628 Participants. The supporting documentation filed
with the Administrative Claim refers to the Credit Memo, and the credit stated in the Credit Memo is reflected in the
Administrative Claim Amount.

sustained efforts to contact Debtors to determine why this invoice had not been paid.  Id.  When

these attempts failed, the undersigned counsel contacted Debtors' counsel for assistance in

obtaining payment of invoice number 200116.  Debtors' counsel's response was that the

nonpayment was likely an oversight and that he would let AOL's counsel know if there was any

other reason for Debtors' nonpayment.

14.     On August 2, 2006, AOL announced that AOL's internet access and software

services would be made available for free to broadband users.  Id. ¶ 17.  Between August 2006

and December 2007, AOL's paying membership declined by a total of 46 percent due to the

announcement to provide free access.  Id.  As a result of this high percentage of customers

altering their billing rates, AOL spent significant time from August 2006 through 2007 changing

applicable PI Codes and making appropriate pricing adjustments for all affected customers,

including, but not limited to, the Participants under the Program.  Id.

15.     In June 2007, AOL issued a credit memo to Debtors with respect to the Program,

resulting in a net credit to Debtors of $66,096 (the "Credit Memo").  *See also, supra*, at n.6.

While the Credit Memo covered the period of January 2006 through January 2007, the credits

owed to Delphi occurred for the billing months of November 2006 through January 2007 alone;

for the earlier months of January 2006 through October 2006, the billing adjustments in the

Credit Memo resulted in a positive amount due to AOL.  A copy of the Credit Memo is attached

to the Bowater Declaration as Exhibit E.  The impetus for the Credit Memo was a discovered

error in the interpretation of AOL reporting.  The error was pinpointed to the period covered by

the Credit Memo, and the Credit Memo corrected the interpretation errors.  Id. ¶ 18.

16.     Debtors did not raise any dispute as to the accuracy of AOL's invoices until—at

the earliest—the Spring of 2007 (which again, was in response to AOL's inquiry on the status of

payment of the then-stale April 2006 invoice).  To the contrary, without complaint, Debtors paid

dozens of invoices issued by AOL under the Agreement—including all invoices issued prior to

May 17, 2005, all invoices issued during the Administrative Period, other than the one issued

April 18, 2006, and those issued after AOL initiated communications to seek payment of the

April 2006 invoices, i.e. invoices dated February 22, 2007 and thereafter.

17.    Although the Agreement obligated the Debtors to verify employment status and to

notify AOL of any changes in such status, in their Spring 2007 communications to AOL, the

Debtors asked AOL to provide any documentation that AOL had relative to the Participants'

employment status.  In response, and in an effort to work towards a mutually acceptable

settlement, AOL provided the Debtors with a snapshot of the names and other identifying

information for Participants as of a single recent date, to the extent that AOL had such

information and despite the fact that the reporting obligation under the Agreement flowed from

Debtors to AOL, not from AOL to Debtors.  Thereafter, Debtors informed AOL that some of

these individuals ceased to be employed by Debtors prior to December 31, 2007.  Yet, Debtors

did not then—or now—provide any evidence that Debtors fulfilled their contractual obligations

under the Agreement by providing AOL with the requisite information to  inform AOL of such

employment status changes.  Had Delphi done so, AOL could have moved the alleged ineligible

Participants from discounted pricing to a non-Delphi PI Code that was more profitable for AOL.

18.    Debtors have devised a flawed syllogism purporting to show that AOL

"dramatic[ally] overcharge[d]" the Debtors for many years.  Debtors simplistically and

incorrectly assert that, because they cannot account for all Participants listed on the informal

snapshot of Participants provided by AOL's counsel in an effort to settle this matter, AOL must

have been overbilling the Debtors.

10

19.     But Debtors' conclusory analysis disregards key facts that undercut this syllogism.  Most importantly, the Agreement put the burden on ***Debtors*** to inform AOL of Participants' changes in employment status.  Partner Agreement ¶ 1.4.3.b.  When Debtors informed AOL of such status changes, AOL moved employees between the categories of eligible participants (e.g., from eligible employee to eligible retiree) or out of the Program entirely, as appropriate.   Without evidence that Debtors ever notified AOL that the alleged unaccounted-for Participants had ceased to be eligible Participants under the Agreement, or evidence of fraud (of which there is none), the Debtors' Objection must fail.

20.     Finally, Debtors' Schedules—which were filed under penalty of perjury—list AOL as holding an unsecured claim for $944,475.00 (the "AOL Schedule Claim") that is not disputed, unliquidated or contingent.  See Schedule F, at 45.  Yet, contrary to their own schedules – which ***still*** have not been amended – Debtors now ask this Court to disallow AOL's Claims in full.  Of course, to contend as its sole basis for objection that the AOL Claims are not supported by their books and records when their own Schedules identify the Pre-Petition Claim as being just that—supported by their books and records—reveals the inaccuracy of Debtors' position.

## ARGUMENT

**I.     Debtors Waived Their Objections To The Claims Because AOL Has At All Times Been Listed On Debtors' Schedules As The Holder Of An Undisputed, Fixed And Liquidated Prepetition Claim, And Debtors Are Now Raising Grounds Not Asserted In The Objection**

21.     Debtors' filings in this case are demonstrably inconsistent and irreconcilable.  Compare Objection ¶ 20 (asserting that Debtors' books and records did not reflect the ***existence*** of AOL's Pre-Petition Claim) with Schedule F, at 45 (listing AOL's Pre-Petition Claim as noncontingent, liquidated and undisputed in the amount of $944,476.00).

11

22.    The Objection alleged that Debtors' books and records did not reflect AOL's Claims.  No other grounds for objecting to AOL's claims were stated in the Objection.  To the contrary, Debtors affirmatively represented to the Court that "Debtors' books and records do not reflect the **existence** of the asserted Claims."  Objection ¶ 20 (emphasis added).

23.    This representation was untrue as to AOL's Pre-Petition Claim.  As stated above, Debtors scheduled AOL's Pre-Petition Claim as noncontingent, liquidated and undisputed.  See Schedule F, at 45.

24.    More than ten months after filing their books and records Objection, Debtors now acknowledge that they were aware of the Agreement and received multiple invoices from AOL thereunder—stated differently, that their books and records **did** show liabilities to AOL at the time Debtors filed the Objection.  Debtors' Statement. ¶¶ 9-11.

25.    Having acknowledged the AOL Pre-Petition Claim in their Schedules as undisputed, liquidated and not contingent; having failed to amend their Schedules; and having conceded in the Debtors' Statement that Debtors' books and records **do** reflect the invoices at issue, Debtors must be foreclosed from now disputing the AOL Claims.[8]  A debtor waives any objection to a claim not specifically stated in its objection to such claim, and cannot raise grounds for the first time in a post-objection, pre-hearing brief.  E.g., In re Nazu, Inc., 350 B.R. 304, 311 (Bankr. S.D. Tex. 2006).[9]

---

[8] Debtors' attempt in their Objection to reserve their "right" to assert additional objections to AOL's Claims is insufficient.  See Nazu, 350 B.R. at 311.  Nor can the Debtors file a new objection to AOL's claims *ab initio*; the Claims/Interests Objection Deadline established by Debtors' First Amended Joint Plan of Reorganization (As Modified) (Dkt. No. 16646, Exh. 1-A) (the "Plan") occurred 120 days following the Effective Date of the Plan, i.e., February 3, 2010.

[9] Although the Claims Objection Procedures Order provides that the alleged grounds for disallowing a claim that are stated in **Debtors' Statement** are "without prejudice to the Debtors' right to later identify and assert additional legal and factual bases for disallowance," such Order makes no similar provision regarding grounds listed in the original objection to claim.

**II.      AOL's Claims Are An Account Stated Because (A) Debtors Received Sufficiently Detailed Invoices And Failed To Object To Them Within A Reasonable Period Of Time, And (B) Debtors Made Partial Payments On The Account**

26.      AOL has established the prima facie case for an account stated.[10]

> Under federal and New York law, an account stated refers to a promise to pay a stated sum of money which the parties had agreed upon as the amount due.  It is incumbent upon the party in receipt of an account to examine the statement and make all necessary objections because an agreement to pay an indebtedness may be implied if a party receiving a statement of account keeps it without objecting to it within a reasonable amount of time unless fraud, mistake or other equitable considerations are shown.

FTI Consulting, Inc. v. Rossi, No. 03 Civ. 4033, 2004 U.S. Dist. LEXIS 2860, *7-8 (S.D.N.Y. Aug. 27, 2004) (internal marks and citations omitted).  Debtors' agreement to pay the invoices represented by AOL's Claims is implied from Debtors' conduct, namely, keeping the invoices without objecting to them, and making partial payments to AOL.

27.      To state a claim for an account stated, AOL need only show the following: "'(1) an account was presented; (2) it was accepted as correct; and (3) debtor promised to pay the amount stated.'"  IMG Fragrance Brands, LLC v. Houbigant, Inc., 679 F. Supp. 2d 395, 411 (S.D.N.Y. 2009), quoting The Haskell Co. v. Radiant Energy Corp., No. 05CV4403, 2007 U.S. Dist. LEXIS 69425, *12 (E.D.N.Y. Sept. 19, 2007).  "The account stated is based upon prior transactions between the parties with respect to the correctness of the account items and balance

---

[10] As stated in AOL's response briefs filed on November 11, 2009, AOL submits that its Pre-Petition Claim is *already* prima facie evidence of the amount stated therein—evidence that Debtors have not sufficiently rebutted to put the burden on AOL of proving its Pre-Petition Claim.  See Response of AOL LLC to Reorganized Debtors' Thirty-Sixth Omnibus Objection Pursuant to 11 U.S.C. § 503(b) and Fed. R. Bankr. P. 3007 to Expunge Certain (I) Prepetition Claims, (II) Equity Interests, (III) Books and Records Claims, (IV) Untimely Claims, (V) Paid Severance Claim, (VI) Pension, Benefit, and OPEB Claims, and (VII) Duplicate Claims (Dkt. No. 19060); Response of AOL LLC to Reorganized Debtors' Thirty-Seventh Omnibus Objection Pursuant to 11 U.S.C. § 503(b) and Fed. R. Bankr. P. 3007 to Expunge Certain (I) Prepetition Claims, (II) Equity Interests, (III) Books and Records Claims, (IV) Untimely Claims, (V) Paid Severance Claim, (VI) Pension, Benefit, and OPEB Claims, and (VII) Duplicate Claims (Dkt. No. 19062) (collectively, the "Responses").  Whether deemed an account stated or simply entitled to an unrebutted presumption of validity under the Bankruptcy Code, the Pre-Petition Claim should be allowed in its entirety.

due." Camacho Mauro Mulholland LLP v. Ocean Risk Retention Group Inc., No. 09 Civ. 9114,

2010 U.S. Dist. LEXIS 51789, *11-12 (S.D.N.Y. May 26, 2010).

D.    *AOL has satisfied the first element of an account stated, i.e., that AOL presented an account to Debtors.*

      28.    To prove that an account was presented, the party seeking to collect on the

account must show only that the invoice or other statement of account was sent to the account

debtor in the ordinary course. AFL Fresh & Frozen Fruits & Vegetables, Inc. v. De-Mar Food

Services Inc., No. 06Civ. 2142, 2007 U.S. Dist. LEXIS 90144, *13 (S.D.N.Y. Dec. 7, 2007) ("To

establish a claim for an account stated, the plaintiff must put forth proof that defendant received

the bill"); FTI Consulting, 2004 U.S. Dist. LEXIS 2860, *14  (recognizing presumption that

properly addressed and mailed notice has been received).  As evidenced by the Declaration of

Mara Perrone Bowater and the invoices attached to the Claims, AOL sent to Debtors those

invoices representing the full amount of the Claims.

E.    *The second and third elements of an account stated – Debtors' acceptance of the account and promise to pay it – are satisfied by implication, due to Debtors' retention of invoices without objection and partial payment of the account.*

      29.    "The second and third requirements (acceptance of the account as correct and a

promise to pay the amount stated) may be implied if a party receiving a statement of account

keeps it without objecting to it within a reasonable time or if the debtor makes partial payment."

IMG Fragrance Brands, 679 F. Supp. 2d at 411 (quoting LeBoeuf, Lamb, Greene & MacRae,

L.L.P. v. Worsham, 185 F.3d 61, 64 (2d Cir. 1999)) (internal marks omitted); see also Candelarie

v. Scientific Innovations, Inc., No. 08-CV-1714, 2009 U.S. Dist. LEXIS 78140, *12 n.4

(E.D.N.Y. Aug. 28, 2009) ("New York has frequently recognized account stated claims based on

a debtor's acknowledgment of a debt, even without any apparent evidence that the debtor

promised to pay it").  Although the test for proving an account stated by implication is phrased

14

with the disjunctive term "or," a debtor's silence **and** partial payment is particularly persuasive evidence of an account stated. Shea & Gould v. Burr, 598 N.Y.S.2d 261, 262 (1993) ("The failure to object to the unitemized bill for a period of five months suffices to give rise to an account stated, especially in view of the partial payment made").

30.    The two to twenty-three months that elapsed between Debtors' receipt of the invoices and the first time Debtors informed AOL of any concern Debtors had with respect to those invoices (i.e., Spring 2007) was, as a matter of law, long enough to create an account stated. "Whether a statement has been kept long enough to create an implied account stated is ordinarily a question of fact; such an inquiry, however, becomes a question of law when only one inference is rationally possible." Chase Manhattan Bank v. Rockefeller Ctr. Props. (In re Rockefeller Ctr. Props.), No. 00 Civ. 647, 2002 U.S. Dist. LEXIS 212, *13 (S.D.N.Y. Jan. 8, 2002), aff'd, 46 Fed. Appx. 47 (2d Cir. 2002). A number of courts in this district have held that delays of longer than five months in protesting invoices are per se unreasonable. E.g., Sidley Holding Corp. v. Ruderman, No. 08 Civ. 2513, 2009 U.S. Dist. LEXIS 126040, *31-32 (S.D.N.Y. Dec. 30, 2009) (magistrate report citing district court decision in same case); Navimex S.A. de C.V. v. S/S Northern Ice, 617 F. Supp. 103, 106 (S.D.N.Y. 1984); see Shea & Gould, 598 N.Y.S.2d at 262. Courts especially disfavor objections raised on the eve of, or worse, by the filing of, litigation. E.g., White Diamond Co. v. Castco, Inc., 436 F. Supp. 2d 615, 624 (S.D.N.Y. 2006) ("An objection to an account stated that is first made only after litigation on the account stated has been commenced is, **as a matter of law**, not made within a reasonable time") (emphasis added).

31.    Significantly, courts have treated a lengthy delay in objecting to the **first** in a string of invoices as proof of an account stated as to **subsequent months'** invoices, **even when**

*the final invoices in the series were paid within one or two months of the account debtor's first*

*objection*.  E.g., Camacho Mauro Mulholland, 2010 U.S. Dist. LEXIS 51789, *22.

32.     The second and third elements of an account stated are further met by Debtors'
partial payment of the account with AOL.  Debtors paid all invoices issued prior to May 17,
2005.  Debtors' payment of 13 postpetition invoices (covering the periods November 2005
through February 2006, and April 2006 through December 2006) is especially probative of
Debtors' acknowledgment of the validity of the account.  Although Debtors will no doubt argue
that payment of individual invoices does not represent an acknowledgment of correctness
regarding the entire sum invoiced, the U.S. District Court for the Southern District of New York
recently rejected precisely that argument.  Id., *23.

F.      *Debtors have not alleged or proven fraud or mistake within the meaning of the account
        stated doctrine.*

33.     Even if a small number of Participants were not Eligible Participants – which
AOL rejects – not only have Debtors failed to provide evidence that they provided the requisite
reporting from which AOL could have removed a Participant from the Program to a PI Code
more economically beneficial to AOL, but Debtors have not alleged or shown fraud or mistake
of the type necessary to reopen an account stated.  "It is incumbent upon the party in receipt of
an account to examine the statement and make all necessary objections because an agreement to
pay an indebtedness may be implied if a party receiving a statement of account keeps it without
objecting to it within a reasonable amount of time unless fraud, mistake or other equitable
considerations are shown."  Hackensack Cars, Inc. v. Lifestyle Limousine Serv. Corp., No. 87
Civ. 2764, 1990 U.S. Dist. LEXIS 6391, *10 (S.D.N.Y. May 25, 1990) (internal marks omitted),
quoting Kramer, Levin, Nessen, Kamin & Frankel v. Aronoff, 638 F. Supp. 714, 719 (S.D.N.Y.
1986).

34.    The types of invoicing errors that Debtors have implied existed are not the type of "mistake" that would permit Debtors to reopen the account stated.  The district court has held that a debtor may not attack the process used to calculated invoices, but only factual mistakes— and that even then, permissible adjustments to the account are limited to the extent of factual mistakes proved by the debtor:

> Once an account stated has been established, the debtor may no longer contest the accounting method which was used throughout the relationship without protest.  Instead, the debtor is limited to proving factual mistakes within the context of an accounting method it is no longer entitled to challenge.  If the debtor does prove such factual mistakes, the debtor may be entitled to an adjustment to those specific portions of the account, but not to avoid the entire account stated.

Chase Manhattan Bank, 2002 U.S. Dist. LEXIS 212, at *21.  Accordingly, Debtors are precluded from challenging the method AOL used to calculate the number of Eligible Participants.  And if Debtors' objection is that the baseline number of Eligible Participants was incorrect at some point in the past, causing errors in every invoice after such point in time, the account may only be reopened if, and to the extent that, Debtors prove such a factual mistake.  Id.

**III.    Honoring The Account Stated Is Consistent With The Severe Prejudice AOL Would Suffer If The Account Were Reopened**

35.    Until the filing of the Objection (and, in fact, afterward as well), Debtors have represented to this Court and AOL that AOL's Pre-Petition Claim was undisputed.  In the period between issuance of the invoices and the filing of the Objection, both Debtors and AOL experienced major reductions in their workforce, including the departures of numerous individuals at both companies who were involved with administration of the Program.

36.    Debtors' extreme delay in raising their concerns about the invoices undeniably prevented AOL from migrating any applicable Participants from a Delphi PI Code to a higher PI Code more favorable to AOL.  The Agreement expressly provides that after AOL receives notice

17

from Debtors that an individual is no longer an employee of Debtors, "AOL may, at AOL's sole

discretion, immediately convert to AOL's then-standard monthly subscription fees, or some

other program, and at rates as AOL determines in its sole discretion."  Partner Agreement ¶

1.4.3.a.  Had Debtors fulfilled their contractual obligation to update AOL with accurate

employment status, AOL would have had the option to cease providing such services or to bill

such former employee directly for a higher monthly amount. Because of Delphi's failure to

timely notify AOL of the alleged changes in employment status, AOL now has no ability to seek

the Delphi Portion for which it originally invoiced Debtors – let alone the portion of its published

rates that exceeded the Employee Portion – directly from these alleged former employees of the

Debtors.

**IV.      It Was Debtors' Responsibility To Inform AOL When A Participant Ceased To Be
           Eligible For The Delphi Rates; Debtors Cannot Escape Their Obligations To AOL
           By Simply Alleging That Some Participants On AOL's Rolls Did Not Appear On
           Debtors' Internal Eligibility Lists**

37.    Account stated principle aside, the evidence supports that Debtors owe the

Claimed Amounts.  "The elements of a cause of action for breach of contract are (1) formation of

a contract between plaintiff and defendant; (2) performance by plaintiff; (3) defendant's failure

to perform; and (4) resulting damage."  Clearmont Property, LLC v. Eisner, 872 N.Y.S.2d 725,

728 (2009) (quoting Hecht v Components Intl., Inc., 22 Misc 3d 360, 364, 867 N.Y.S.2d 889,

895 (2008)). AOL has established, and Debtors have no grounds for disputing, that AOL

provided services to at least the number of individuals stated in AOL's invoices to Debtors.  Nor

is there any dispute as to whether Debtors have fully paid AOL for those services; they have not.

AOL has established its prima facie right to payment on the Claims in the Claimed Amounts.

38.    Debtors' assertions that AOL did not perform its obligations under the Agreement

are premised on a misreading of the Agreement.  As stated above, according to the express terms

of the Agreement, Debtors had the contractual obligation to notify AOL of any change in Participants' eligibility—not the other way around. Partner Agreement ¶ 1.4.3.b. Accordingly, Debtors must do more than prove that AOL continued to invoice Debtors for the Delphi Portion for certain Participants after those Participants ceased to be eligible for the Program. Debtors must show that they instructed AOL to remove such Participants from the Program through the contractually required reporting. Without such evidence, AOL's Claims should be allowed in their entirety.

39.    Even if one assumes, <u>arguendo</u>, that AOL billed the Debtors for services provided to former employees, it was the Debtors' obligation to update such employment status—not AOL's—and any failure to fulfill that obligation would result, under the Agreement, in the permissible invoicing by AOL for such persons. Indeed, such information was in Debtors' sole possession and control.

## **RESERVATION OF RIGHTS**

40.    AOL incorporates by reference, as if fully restated herein, the Claims and the Responses, including all arguments made therein and not addressed in this Supplemental Response.

41.    AOL reserves the right to supplement this response at any time, including but not limited to the Amended Supplemental Response date set forth in the Claims Objection Procedures Order, and to respond to any future objections filed by the Debtors or any other party on any ground whatsoever, whether substantive or procedural.

## **CONCLUSION**

42.    Debtors' sole assertion in their Objection is that their books and records do not reflect the "existence" of the Claims.  Debtors waived any other arguments by not raising them therein.  That is especially true given that Debtors' books and records obviously ***did*** reflect the existence of the Claims—Debtors scheduled them, and scheduled them as undisputed, liquidated and noncontingent.  Alternatively, Debtors' unreasonable delay in raising concerns about AOL's invoices, combined with Debtors' partial payment to AOL, constitutes an account stated under New York law.  And, even if Debtors had timely and meaningfully asserted their objections to AOL and the Court, Debtors would still have failed to disprove AOL's right to payment of the amounts listed in its invoices as there is no evidence that Delphi provided reporting to undermine the validity of the invoices.  The Agreement establishes that it was Debtors' responsibility to communicate changes in Participants' eligibility to AOL or the parties' designee.  Absent proof that Debtors communicated such changes but AOL failed to update its records accordingly, Debtors' Objection must fail.

43.    Therefore, for the reasons set forth herein, AOL respectfully requests that the Court enter an order (i) denying the Objection, (ii) allowing AOL's Pre-Petition Claim in the amount of $969,141.63, (iii) allowing AOL's Administrative Claim in the amount of $560,911.50, and (iv) granting such other and further relief as the Court deems just and proper.

Dated: September 17, 2010
New York, New York

Respectfully submitted,

VORYS, SATER, SEYMOUR AND
PEASE LLP


*/s/ Tiffany Strelow Cobb*
Lisa Pierce Reisz (application for *pro hac
vice* admission to be filed)
Tiffany Strelow Cobb (admitted *pro hac
vice*)
Jesse Cook-Dubin (application for *pro hac
vice* admission to be filed)
52 East Gay Street
Columbus, Ohio 43216
Phone: (614) 464-8322
Fax:    (614) 719-4663

-and-

Joseph Serino
Michael A. Cohen
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile:   (212) 446-4900

Attorneys for AOL Inc. f/k/a AOL LLC