# EXHIBIT A

Gloster, Dean (19) x4472

| | |
|---|---|
| **From:** | Gloster, Dean (19) x4472 |
| **Sent:** | Thursday, September 16, 2010 5:15 PM |
| **To:** | 'Patricia L. Beaty' |
| **Subject:** | FW: Delphi/DPH Retiree Benefit Trust--Resolving issues and moving forward |

No response?

Dean

-----Original Message-----

| | |
|---|---|
| **From:** | Gloster, Dean (19) x4472 |
| **Sent:** | Monday, September 13, 2010 1:38 PM |
| **To:** | 'Patricia L. Beaty' |
| **Subject:** | Delphi/DPH Retiree Benefit Trust--Resolving issues and moving forward |

Patricia--

I'm summarizing my proposal in our discussions last week, and the changes I have asked for, on behalf of the 1114 Committee. Please send this on to the VEBA board.

As I mentioned, one concern is that the trust has disbursed only a tiny fraction of the over $8 million received from Delphi (which is quite different from prior similar retiree programs set up through 1114, like the Delta non-pilot's, where there was a much more vigorous outreach to distribute the hardship fund), and is administering a benefits program that's an order of magnitude larger than that (many tens of millions of dollars of benefits eligible for the Health Coverage Tax Credit.)

Almost any organization (from corporation to homeowners' association) that is handling or administering many tens of millions of dollars for the benefit of others would have directors or trustees chosen, elected, and re-elected periodically from the outside, so that there is practical accountability and an effective check and correction mechanism for running properly in the future. That's especially true where what we have is an essentially self-selected board of a retiree organization administering medical and prescription drug benefits, which are absolutely critical to thousands of people who have lost their pensions, in a very technical area involving a tax subsidy, where few of the current trustees have prior experience with benefits and many of them are not even enrolled in the benefits they are administering.

The difficulty is that the current VEBA board is "not comfortable" in following the trust agreement to permit the 1114 Committee to determine succession and replacement trustees given the numerous resignations and forced removals, and the VEBA board has refused (so far) to seat the replacement trustees selected by the VEBA board or to follow the provisions of the trust agreement in that regard. You've made clear that the VEBA board is also not comfortable with having the DSRA board select replacement trustees in the future, as the trust agreement provides once the 1114 Committee is disbanded. I understand that the chair of the VEBA board has expressed his intent to modify the trust agreement as soon as the 1114 Committee is disbanded, to change the provisions on how trustees are selected in the future, to permit the existing VEBA board to become self-perpetuating.

I can understand the anger and frustration of some (or all) of the current members of the VEBA board at past criticism from the outside (and in particular the way that was communicated.) It's unfortunate that in any volunteer organization, no good deed goes unpunished, and as we discussed, exchanges of emails have a tendency to escalate in tone, and then escalate from there. One of my goals, in making this proposal, is to end the dynamic and the dichotomy of the insular VEBA board feeling criticized by the DSRA board and the 1114 Committee members, by opening up the VEBA board so that there can be a direct input into how things are run rather than ineffective, annoying, possibly uninformed and always demoralizing criticism from the outside. People need to stop throwing metaphorical bricks, but the only way to get them to do that, is to open up so that there is another way to participate. And it is absolutely not the right response to criticism to prevent any change of trustees now or in the future.

I want to get this resolved so that the 1114 Committee can promptly be disbanded, its members and the DSRA board members can stop criticizing, but we can all be sure that the benefit program we all set up at great effort will continue into the future for the benefit of the retirees and their family members that it serves.

Here are the changes I proposed:

1. There needs to be an explicit cap on trustee compensation in the trust agreement. You suggested that if at some point that cap becomes inappropriate (hyper inflation, inability to get anyone to serve, etc.) the Bankruptcy Court or a federal District Court could approve future changes to the cap. That seems fine.

1

2. There needs to be an expansion (and/or change) of the current board of trustees to seat additional members who are satisfactory to the 1114 Committee and the DSRA board. You mentioned that the VEBA Committee would not find anyone acceptable who had any connection to the 1114 Committee or the DSRA Board, because of Board members' anger regarding past criticism from members of those bodies, and that any new trustee had to meet rigid expertise qualifications that none of the existing trustees have.

I would ask the VEBA Board to reconsider those objections, which seem to go too far. There is a finite pool of retirees willing to put in the time and effort necessary to serve. My experience (extensive and under crisis, facing deadlines and dealing with very difficult issues in negotiating with Delphi in the bankruptcy) with the individual members of the 1114 Committee is that they were constructive, flexible, capable of compromise, and willing to work together and change their individual views to do what was best for the retirees. They also worked very hard getting up to speed and doing initial work to set up the HCTC-eligible benefits program. If there are one or two individuals the current VEBA board believes it cannot work with, that is one thing, but if they cannot work with anyone who was on the 1114 Committee or the DSRA board, that suggests the issue is really with members of the VEBA board. It's important for us all to remember that the goal here is to have a program set up to serve the retirees, which is transparent and set up to run years into the future effectively and consistent with fiduciary duties. And my goal is to end the squabbling, and the only way to do that is to make the tent bigger, not to leave people with no alternative but criticize from the outside.

3. There needs to be a means of selecting trustees in the future that ensures they are responsive to those who are the beneficiaries of the trust and so that communication, service, and fiduciary performance are encouraged and mandated. That means staggered terms and elections, not simply having the VEBA board members select their own successors. You mentioned having staggered elections at an annual meeting of the beneficiaries of the program or the DSRA generally, or both so long as the DSRA is around. That might be a workable solution.

4. The arrangement implementing these changes also needs to make sure they aren't simply undone immediately after the 1114 committee is disbanded. (For example, the current board of the VEBA again votes to remove all trustees except themselves and then amends the trust agreement to remove the relevant provisions limiting compensation and regarding election of trustees.) As I mentioned, that would require certain portions of the trust agreement to become non-amendable simply by vote of the trustees and limitations on removal of the new trustees.

5. You had expressed concern that if these simple changes are agreed to, then there might be others requested. That's not the case. My goal is a global, complete, final resolution of things with minimal changes so that this program everyone can rightfully be proud of goes forward and the board of trustees and operative agreements are set up to facilitate proper operation in the future, and we can end the current criticism and carping. And to disband the 1114 committee, once its mission has been ensured, through the adoption of these changes.

Obviously, implementing these changes also has to meet the needs of the current VEBA board, but these requests are all reasonable and for the benefit and protection of the beneficiaries of the benefit program administered by the board.

I hope these simple changes are acceptable to the VEBA board. Please let me know in the next couple of days. Under the circumstances, when the issue under discussion is a cap on compensation of trustees and preventing the current trustees from becoming a self-perpetuating board without outside accountability, it would be a clear breach of fiduciary duty and an inappropriate and invalid action for the current board to amend the trust agreement to prevent a means to implement these changes.

In other bankruptcy cases, I am working to set up HCTC-eligible benefit trusts, and I would personally like to see what has happened in the Delphi case serve as an example of how retirees can work together to have a program that works and provides tens of millions of dollars of subsidized health care, not serve as an example of how people dig in (on all sides) to fight over the running of the program instead.

Thank you, and I hope we can resolve this quickly and move on so that the good work everyone has done and accomplished to date can go forward for the benefit of retirees and their dependents without any more energy, time, and trust resources spent on arguing about the board.

**Dean M. Gloster**
Attorney at Law

---

**Farella Braun + Martel LLP**
RUSS BUILDING
235 MONTGOMERY STREET

2

SAN FRANCISCO / CA 94104

---

T 415.954.4400
D 415.954.4472
F 415.954.4480
www.fbm.com