# EXHIBIT A



WWW.KRIEGDEVAULT.COM

June 9, 2010

**Patricia L. Beaty**
**Direct Dial: (317) 238-6278**
**E-mail: pbeaty@kdlegal.com**

*VIA ELECTRONIC DELIVERY*

Delphi Committee of Retired Employees (1114 Committee):

James Frost                           W. Ben Gifford
Cathy Carol                           James Hagenbach
James Conger                          Robert Todd Nicholson

     RE:    Delphi Salaried Retirees Association Benefit Trust

Dear Committee Members:

     We represent the Delphi Salaried Retirees Association Benefit Trust VEBA Committee (the "Committee") in its capacity as the Trustee of the Delphi Salaried Retirees Association Benefit Trust (the "VEBA"). We have been asked by our client to respond to your letter dated June 7, 2009 on behalf of our client. As has been previously communicated to you by the Committee on May 12, 2010, May 26, 2010 and June 1, 2010, the Committee believes the 1114 Committee has fulfilled its purpose by establishing the VEBA and has requested that you file your final report with the United States Bankruptcy Court for the Southern District of New York (the "Court").

     In your response dated June 7, 2010 you indicate that certain governance issues should be addressed and sufficient progress made with respect to the resolution of those issues before you will consider the VEBA established and file your final report with the Court. The governance issues you listed include a lack of transparency with the Delphi Salaried Retirees Association Board of Directors, interpretation of the terms of the VEBA trust agreement and Bylaws, investment of VEBA assets and compliance with ERISA and HIPAA. As stated in the previous communications referenced above, the Court's compromise and settlement order of April, 2009 (the "Settlement Order") limited the role of the 1114 Committee to establishing the VEBA Trust and ensuring that Delphi made the required payments to the VEBA. There is no authority provided in the Settlement Order or the Delphi Salaried Retirees Association Benefit Trust Agreement (the "Trust Agreement") for the 1114 Committee to dictate the policies or procedures to be implemented by the Committee. Furthermore, the Trust Agreement provides that the Committee has the responsibility, as the plan administrator and the trustee of the VEBA as those terms are defined or used under ERISA, to control and manage the operation and overall design

 KRIEG|DEVAULT℠                              WWW.KRIEGDEVAULT.COM

June 9, 2010
Page 2

and administration of the VEBA.   Because the governance of the Committee and administration of the VEBA are matters outside the scope of the 1114 Committee's jurisdiction and purpose the Committee does not believe there is any justification for you to withhold filing your final report with the Court.

As you have been previously advised, the VEBA Committee is willing to approve payment from the set-up fund to cover your expenses in preparing the final report.  However, as previously communicated, the VEBA Committee will only approve such expenses to the extent it determines them to be reasonable.  In this regard, the VEBA Committee has approved an expenditure from the set-up fund to cover the expenses to the extent such expenses do not exceed $1,000.

In the e-mail transmitting your letter, you state that you have two separate final reports in progress and that the determination as to which report gets filed depends upon whether the VEBA Committee provides you with additional detailed information for the first quarter of 2010 and implements governance policies and procedures that conform to your specifications. The additional information you are requesting includes, but is not limited to, a 2010 financial forecast, list of enrollments and changes during the quarter, call response time, investment of VEBA assets, an enrollment plan for 2011 and a report of committee turnover and candidates considered.  On March 14, 2010, the VEBA Committee provided you with more than sufficient information regarding the operation of the VEBA Trust over the last year to enable you to file your final report with the Court.  The information provided included a copy of the VEBA Trust's financial records, the Summary Plan Description, the Trust Agreement and Bylaws pursuant to which the VEBA Trust was established and is operated as well as procedures and processes relating to the hardship award committee.  Pursuant to the terms of the Settlement Order, your final report to the Court should inform the Court as to how the settlement proceeds have been spent and allocated fairly and equitably to or on behalf of salaried retirees.  Based on both the information previously provided to the 1114 Committee and the Settlement Order, the VEBA Committee has determined that the additional information will not be provided for two reasons. First, the Committee believes that it has already provided you with sufficient information to enable you to file your final report with the Court.  Second, the additional information requested does not relate to how the settlement proceeds were allocated fairly among participants and is therefore outside the scope of what is needed to file your final report.

As discussed in the first paragraph of this letter, the Committee has the sole responsibility and authority to establish the policies and procedures under which it will operate.  The 1114 Committee does not have the responsibility or authority to dictate how the VEBA Committee will operate or share information with the Delphi Salaried Retirees Association Board of Directors and participants.

                                           WWW.KRIEGDEVAULT.COM

June 9, 2010
Page 3

      The Committee is again requesting that you file your final report with the Court and seek dissolution.  If you do not agree to this request by June 14, the Committee will file a motion with the Court requesting that the Court order such action.  Both the Committee and I would each appreciate receiving a copy of your report when it is filed.

                             Very truly yours,

                             *Patricia L. Beaty*

                             Patricia L. Beaty

KD_IM-2815096_1.DOC

# EXHIBIT B



May 13, 2010

*VIA ELECTRONIC DELIVERY*

Delphi Committee of Retired Employees (1114 Committee):

James Frost        W. Ben Gifford
Cathy Carol        James Hagenbach
James Conger       Robert Todd Nicholson

      RE:    Delphi Salaried Retirees Association Benefit Trust

Dear Committee Members:

      We are writing to respectfully request that the 1114 Committee file its final report with the United States Bankruptcy Court Southern District of New York (the "Court") and be dissolved as soon as practicable as we believe that the 1114 Committee has fulfilled its role with respect to the Delphi Salaried Retirees Association Benefit Trust (the "VEBA Trust").

      Pursuant to the terms of the Court's order dated February 26, 2009, the Court directed the United States Trustee to appoint a retirees committee under the provisions of Section 1114 of the Bankruptcy Code (the "1114 Committee") to represent certain Delphi active salaried employees, retirees, and their spouses for certain limited purposes. Pursuant to the same Court order, the purpose of the 1114 Committee was to: (1) establish that Salaried OPEB benefits had vested with respect to any eligible Delphi salaried retiree or group thereof; and (2) meet and confer with Delphi to: (a) explore the efficacy of potentially preserving any applicable federal tax credits for retirees arising from Delphi's implementation of the authority granted by the Court's order and (b) consider any modifications to the Court's order that would be mutually agreeable to Delphi and the 1114 Committee and that would settle and waive any appellant rights with respect to the Court's order that Delphi may terminate Salaried OPEB benefits.

      The 1114 Committee entered into a compromise and settlement with Delphi under which the 1114 Committee would dismiss its appeals with respect to the Court order allowing Delphi to terminate certain welfare benefit plans (the "OPEB Termination Order") and Delphi would make certain payments to a voluntary employees' beneficiary association ("VEBA") for the benefit of Delphi's salaried retirees. The Court approved the compromise and settlement in April of 2009 (the "Settlement Order"). The Settlement Order authorized and directed the 1114 Committee to establish a VEBA and to file a report with the Court upon completion of Delphi's payments to the VEBA detailing how the settlement proceeds were spent and allocated fairly and equitably to or on behalf of salaried retirees.

**May 13, 2010**
Page 2

In accordance with the Settlement Order, the 1114 Committee established the VEBA Trust in April, 2009 and appointed a committee of individuals to operate and administer the VEBA Trust (the "VEBA Committee"). As of November 1, 2009, Delphi had made all the payments to the VEBA Trust that were required pursuant to the terms of the Settlement Order. On March 14, 2010, the VEBA Committee provided the members of the 1114 Committee with more than sufficient information regarding the operation of the VEBA Trust over the last year to enable the 1114 Committee to file its final report with the Court. The information provided included a copy of the VEBA Trust's financial records, the Summary Plan Description, the Trust Agreement and Bylaws pursuant to which the VEBA Trust was established and is operated as well as procedures and processes relating to the hardship award committee. As part of the transmission of such information, we inquired as to when we could expect the 1114 Committee to file its final report with the Court. As of the date of this letter, we have not received a response.

Because we believe that the 1114 Committee has fulfilled its purpose and has sufficient information to file its final report with Court, we respectfully request that the 1114 Committee file such final report with the Court and seek dissolution by May 30, 2010. If you are unwilling or unable to take this action, we will do so on your behalf. Please advise as to how you wish to proceed on this matter.

Very truly yours,

VEBA COMMITTEE

Dennis Black

Carol Harvey-Light

James Baker

Marianne Baker

Elaine Hofius

Vincent Wilson

KD_276963_1.DOC

# EXHIBIT C

**Response to first VEBA letter**

From: Jim Frost [mailto:james.r.frost@roadrunner.com]
Sent: Saturday, May 15, 2010 3:47 PM
To: 'Carol Light'; 'Den Black'; 'pbeaty@kdlegal.com'
Cc: 'Elaine Hofius'; 'Jim Baker'; 'mab346@comcast.net'; 'Vince Wilson';
'DGloster@fbm.com'; 'wbgifford@aol.com'; 'Nicholson'; 'Jim Hagenback'; 'Jim Conger';
'Cathy Carroll'; 'Richard Strusienski'; 'pjdobosz@verizon.net'; 'jgosik@mac.com';
'Dadbruce1@aol.com'; 'John Norris'; 'JDC3119@aol.com'
Subject: FW: 1114 Committee Final Report
Importance: High

Carol,
I noticed Joe Mchugh on distribution, is he a new VEBA BOD member? I removed him. He
didn't sign the letter.

I'm sending this response on behalf of the 1114 committee and some members of the DSRA
BOD. I'm sending to you, Den your co-chair and Patricia because it is clear that the
letter was drafted and signatures handled by KD.

I've attached the letter from the court and the US Trustee appointing members of the
1114, as a reminder. The individuals were chosen and submitted in Feb 2009 by the DSRA
and counsel representing them in Bankruptcy court. We have NOT designated you to
report for us, so please don't threaten your fellow volunteers with fulfilling their
obligations, they are alive, well and able to do this on their own. They also have
been ready and willing to help the VEBA committee, some serving on the committee
before being pushed off. We will report when we have a report together. Also attached
is the agenda for the meeting where you were asked to address governance, which has
been an issue since May of 2009 and the recent request for Q1 information to analyze
the results, based on observed governance issues. The data has indicated that the
Governance continues to be inadequate.

Let me address the attached paragraph in your letter, first:

On March 14, 2010, the VEBA Committee provided the members of the 1114 Committee with
(1)more than sufficient information regarding the operation of the VEBA Trust over the
last year to enable the 1114 Committee to file its final report with the Court The
information provided included a copy of the VEBA Trust's financial records
(2), the Summary Plan Description
(3), the Trust Agreement
(4) and Bylaws
(5) pursuant to which the VEBA Trust was established and is operated as
well as procedures and processes relating to the hardship award committee
(6). As part of the transmission of such information, we inquired as to when we could
expect the 1114 Committee to file its final report with the Court. As of the date of
this letter, we have not received a response.

Where are we in our analysis (see number references above):
(1) you have not addressed the governance issues - what are your CA's for verified,
documented non-conformances
(2) financial records verify approved expenditures by you and Den for unapproved
activities and non-VEBA business. Further, $25,000 in legal fees in Q1? Please
explain!

(3) we have not received the SPD, furthermore it is now 135 days late, (required in 120 days from Sept 1) an ERISA non-compliance, how will this be prevented in the future
(4) part of the governance issues noted Feb 1, 2010, is repeated non-compliances to the signed Trust agreement. Furthermore, you have not executed the selections made by the 1114 per the TA AND you have ignored the DSRA BOD who takes over this responsibility when the 1114 is dissolved. Additionally, the VEBA treasurer resigned and was replaced totally transparent to the 1114 and DSRA, ignoring the Trust agreement and just when Trusteeship was changed and an investment manager was hired
(5) regarding the bylaws, there have been violations of resignation procedures and you have allowed your counsel to have inconsistencies between the TA and bylaws, with no bylaws change to comply
(6) recent hardship procedures and processes have been changed, with potential harm to the most needy Delphi salaried retirees. There was little data analysis, decision input and the 1114 or DSRA were not involved or consulted.

To be up front and clear, this list of governance issues, requested to be addressed since August 2009, still exist and need to be addressed. As of today, $8 million dollars remain uninvested and are causing future beneficiaries from receiving benefits.

See 01Feb Agenda:
Next meeting (Wednesday 2-3-10, 7:30PM)
a. Governance questions for the sake of retirees:
i. how will the VEBA provide transparency for the DSRA and the recipients of benefits?
ii. how will and when will the VEBA correct non-conformances to the Trust agreement and bylaws; prevent further non-conformances? To prevent ERISA issues and potential legal costs
iii. how will and when will the VEBA correct non-conformances in their fiduciary responsibilities; prevent further non-conformances? Investment, unauthorized expenditures of start-up funds (future hardship funds)

At this point, beneficiaries are unaware of these issues. These unresolved issues represent LEGAL liabilities that, unaddressed, could come up in the future. The 1114 committee will not dissolve until they are addressed to ensure there is a VEBA, properly governed with NO legal liabilities.

Items 1-6 above, at this point if not resolved, will be a part of our report if forced to do May 30, 2010. At this point, May 30 is not our target. It is when we can submit a clean report - Established a VEBA WITH GOOD GOVERNANCE and spent and allocated the proceeds fairly and equitably ON BEHALF OF SALARIED RETIREES.

What is your purpose for spending legal fees and valuable retiree time on expediting the dissolution of the 1114, when the 1114 has no negative impact on retiree benefits and proper governance of the VEBA and its funding? Can't be the beneficiaries, which should be the priority.


Respectfully, and with apology, I don't ignore problems

Jim Frost
1114 Committee Chairman

Confidentiality Notice:  The information contained in this email and any attachments
to it may be legally privileged and include confidential information intended only for
the recipient(s) identified above.  If you are not one of those intended recipients,
you are hereby notified that any dissemination, distribution or copying of this email
or its attachments is strictly prohibited.  If you have received this email in error,
please notify the sender of that fact by return email and permanently delete the email
and any attachments to it immediately.  Please do not retain, copy or use this email
or its attachments for any purpose, nor disclose all or any part of its contents to
any other person.  Thank you.

From: Carol Light [mailto:carol.light1@gmail.com]
Sent: Friday, May 14, 2010 8:10 PM
To: 'Cathy Carroll'; 'Jim Conger'; Jim Frost; 'Jim Hagenback'; Nicholson;
wbgifford@aol.com
Cc: Den Black; Elaine Hofius; Jim Baker; Joe McHugh; mab346@comcast.net; Vince Wilson
Subject: 1114 Committee Final Report
Importance: High

Dear 1114 Committee Members,

With respect, the VEBA Committee is requesting, via the attached letter, that you take
all necessary actions to file your final report and seek dissolution with the NY
Bankruptcy Court by May 30, 2010.  Since our March 14, 2010 report to you provided
more than sufficient information for this court filing, we will decline any additional
requests that you may make of us for updates and/or information.

We understand that there may be some minor costs (< $500) associated with filing this
report/request for dissolution, which will be covered by the VEBA, if you get pre-
spending approval from either Den or I, and then  submit the associated
invoices.   Please assume that any legal fees that you may contemplate incurring will
not be covered by us, without prior approval of the full VEBA Committee.

We, along with many other Delphi retirees, are certainly grateful for all the work
that the 1114 Committee did to set up VEBA, but your report filing/request for
dissolution is now very much past due and must be completed.   As we have requested
in the past, please supply us with a copy of your final report and all other related
documents before these materials are submitted to the Court.

Sincerely,
Carol Harvey-Light
DSRA Benefits Trust Co-Chair
e-mail:  carol.light1@gmail.com
cell:  +1 810 877 2133
phone:  810 629 1835

This e-mail transmission and any attachments that accompany it may contain information
that is privileged, confidential or otherwise exempt from disclosure under applicable
law and is intended solely for the use of the individual(s) to whom it was intended to
be addressed. If you have received this e-mail by mistake, or you are not the intended
recipient, any disclosure, dissemination, distribution, copying or other use or
retention of this communication or its substance is prohibited.  If you have received
this communication in error, please immediately reply to the author via e-mail that
you received this message by mistake and also permanently delete the original and all
copies of this e-mail and any attachments from your computer. Thank you.

# EXHIBIT D



May 26, 2010

*VIA ELECTRONIC DELIVERY*

Delphi Committee of Retired Employees (1114 Committee):

| | |
|---|---|
| James Frost | W. Ben Gifford |
| Cathy Carol | James Hagenbach |
| James Conger | Robert Todd Nicholson |

      RE:    Delphi Salaried Retirees Association Benefit Trust

Dear Committee Members:

We are writing to follow up on our prior correspondence to the 1114 Committee dated May 12, 2010 pursuant to which we requested that the 1114 Committee file its final report with the United States Bankruptcy Court Southern District of New York (the "Court") and be dissolved as soon as practicable as we believe the 1114 Committee has fulfilled its role with respect to the Delphi Salaried Retirees Association Benefit Trust (the "VEBA Trust").

Following our May 12, 2010 letter to the 1114 Committee, we received correspondence from the 1114 Committee indicating that it would file its final report and seek dissolution voluntarily based upon resolution of governance issues. The governance issues raised involved appointment of VEBA Committee Members and expenditures purportedly not related to VEBA business and not authorized by the VEBA Committee. With respect to the appointment of VEBA Committee Members, there are currently six VEBA Committee Members which is one more than the minimum of five required under the Trust Agreement and no current plans to add any additional Members at this time. As a result, while we believe that we did seek input from the 1114 Committee with respect to the filling of vacancies on the VEBA Committee, it seems that this issue is not a current issue and should not prevent the 1114 Committee from filing its final report with the Court.

With respect to the expenditure of funds on non-VEBA business and without VEBA Committee approval, we find such an accusation to be baseless and without merit. The VEBA Committee has not and will not spend VEBA funds on any non-VEBA business. In addition, the VEBA Committee does require approval by its Members before expending VEBA funds. Without specific facts as to what expenditure is being referenced, we can not address the matter other than to say that the VEBA Committee takes its responsibilities and duties very seriously. It is and will continue to be the policy and practice of the VEBA Committee to present all

May 26, 2010
Page 2

expenditures to its Members for approval and to pursue only those expenditures that are both
necessary for the administration of the VEBA Trust and approved by its Members.

Finally, concerns have been raised as to the decision by the VEBA Committee to hold the
funds received from Delphi in cash. We want to advise you that the Trust Agreement specifically
provides that the VEBA Committee, as the Trustee, is empowered to keep such portion of the
VEBA Trust in cash or cash balances as it deems to be in the best interest of the VEBA Trust.
Based on the market conditions at the time funds were deposited to the VEBA Trust, the VEBA
Committee made the decision that due to the steep and steady decline in the market and the
economic recession it would be in the best interest of participants and beneficiaries to keep the
VEBA Trust in cash to preserve principal. The VEBA Committee is currently in the process of
interviewing and selecting an investment manager for the VEBA Trust.

While we respect the work that the 1114 Committee has done in establishing the VEBA
Trust and have tried to address your concerns, the Court's compromise and settlement order
dated April of 2009 (the "Settlement Order") limited the role of the 1114 Committee to
establishing the VEBA Trust and ensuring that Delphi made the required payments to the VEBA
Trust. There is no requirement or empowerment in the Settlement Order that the 1114
Committee approve and agree with every action taken by VEBA Committee or that the VEBA
Committee seek such approval. The purpose of the 1114 Committee was to establish the VEBA
Trust and ensure that Delphi made the payments to the VEBA Trust required by the Settlement
Order. As the plan administrator and named fiduciary under the Trust Agreement, it is the VEBA
Committee that is responsible for the administration of the VEBA Trust on a daily basis.

In addition to setting forth the purpose of the 1114 Committee, the Settlement Order
directs the 1114 Committee to file a report with the Court upon completion of Delphi's payments
to the VEBA Trust. Despite the fact that Delphi made its last payment to the VEBA Trust in
November of 2009, the 1114 Committee has yet to file its final report with the Court. The report
is to detail how the settlement proceeds are being disbursed and allocated fairly and equitably to
or on behalf of salaried retirees. As stated in our previous letter, the 1114 Committee has the
information necessary to file its final report with the Court. Pursuant to the terms of the
Settlement Order, the final report is not intended to be a recap of each and every action taken by
the VEBA Committee nor a critique of the same by the 1114 Committee. Rather the report has a
limited, specific focus and that is to tell the Court how the settlement proceeds are being
disbursed and allocated among the retirees. That information can easily be found in the Trust
Agreement.

Because the 1114 Committee has fulfilled its limited purpose as set forth in the
Settlement Order and has the necessary information to file its final report, we again respectfully
request that by May 30, 2010, the 1114 Committee file its final report with the Court and seek
dissolution or tell us specifically, in writing, where in the Settlement Order it provides that the

May 26, 2010
Page 3

1114 Committee's purpose was more than the establishment the VEBA Trust and ensuring
Delphi made payments to the VEBA Trust in accordance with the Settlement Order.

Very truly yours,

**VEBA COMMITTEE**

Carol Harvey-Light

Dennis A. Black

James A. Baker

Marianne Baker

Vincent Wilson

Joseph J. McHugh

KD_2786676_4.DOC

# EXHIBIT E

To: Carol Harvey-Light, Dennis A. Black, James A. Baker, Marianne Baker, Vincent   Wilson, Joseph
     J. McHugh

From: Delphi Salaried Retirees 1114 Committee

Cc: John Norris, Bruce Gump, Chet Gosik, Dick Davis, Paul Dobosz, Dean Gloster, Patricia Beaty

Subject: Detail response to VEBA letters (May 26, 2010 and May 13, 2010) on Final Report


This is a more detailed response to your letter of May 13, 2009 and May 26, 2009. As stated in your
letter the purpose of the 1114 Committee was to establish the VEBA Trust and ensure that Delphi
made the payments to the VEBA Trust required by the Settlement Order. For us to submit a final
report in confidence that the VEBA is ESTABLISHED and will provide an ongoing benefit to retirees
we represent, we believe the Governance issues below need to be adequately addressed.


We will be prepared to submit reports indicating that the VEBA is established and providing benefits
to DSRA retires. A final report will be submitted when the following Governance issues have made
sufficient progress to indicate they are in control:

1. Governance issues to be addressed for the sake of DSRA beneficiaries (February 1, 2010
   agenda request):
     a. how will the VEBA provide transparency for the DSRA and the recipients of benefits?
          i. NO overlap of DSRA and VEBA chairs (per bylaws, DSRA BOD people on
             VEBA, not officers)
     b. how will and when will the VEBA correct non-conformances to the Trust agreement
        and bylaws; prevent further non-conformances? To prevent ERISA issues and potential
        legal costs
          i. VEBA BOD selection (Comply with 1114requests, transfer to DSRA BOD)
          ii. Contracts
          iii. Bylaws modified to support the Trust agreement
     c. how will and when will the VEBA correct non-conformances in their fiduciary
        responsibilities; prevent further non-conformances? Investment, unauthorized
        expenditures of start-up funds (future trust funds)
          i. Investment ( current lost benefit opportunities, $20,000/month)
          ii. Hardship potential of 10 years, meeting most needy
          iii. Start-up funds to Trust, extend subsidy another $300,000, 10 months at current
               burn
     d. How and when will the VEBA correct non-conformances to ERISA in the VEBA
        insurance programs.
          i. Publishing the SPD to all members within 120 days of the program's
             implementation.
          ii. Identifying and correcting any HIPAA irregularities.

There are documented, repeated non-conformances to the Trust Agreement that have been ignored and
pose a long term liability to DSRA beneficiaries if not corrected and prevented.

Please continue your efforts to correct these non-conformances and show through the committed transparency to the DSRA BOD that you are making progress so we can fulfill your request and submit a final report with **<u>confidence</u>** that we have "set up a VEBA". The VEBA is not "set-up" if there are hanging governance issues that threaten the long term viability of the benefits needed by DSRA members.....Our goal, your goal and the DSRA's goal.


Delphi Salaried Retirees 1114 Committee,

James Frost        W. Ben Gifford
Cathy Carroll      James Hagenbach
James Conger       Robert Todd Nicholson

# EXHIBIT F

To: Carol Harvey-Light, Dennis A. Black, James A. Baker, Marianne Baker, Vincent Wilson, Joseph J.
    McHugh

From: Delphi Salaried Retirees 1114 Committee

Cc: John Norris, Bruce Gump, Chet Gosik, Dick Davis, Paul Dobosz, Dean Gloster, Patricia Beaty

Subject: Response to VEBA letters (May 26, 2010 and May 13, 2010) on Final Report


This is in response to your subject letters. The Committee of Retired Employees Pursuant to 11
U.S.C. § 1114(d) (1114 Committee) was charged, among other tasks, by the Salaried OPEB Settlement
(Delphi Docket 16547) to:
    *"... file a report with the Court upon completion of the Debtor's payments under the
Settlement, detailing how the Settlement proceeds were spent and allocated fairly and equitably to or
on behalf of salaried retirees".*

The Debtor's payments having been received, although only a small portion of the proceeds
actually having been *spent,* the 1114 Committee began a dialogue with the VEBA Committee to
provide information that would support the filing of the required report with the Court. The 1114
Committee made their formal request for this information on January 26, 2010 and the VEBA
Committee response was received by March 14, 2010. Subsequently we have requested updated
information to include activities during the first quarter of 2010 and are awaiting receipt of those
materials.

The Delphi bankruptcy proceeding will likely continue for some time and the 1114 Committee
feels that submission of their report by the date suggested by the VEBA Committee would be
premature. Rather it would be more appropriate to file the report when a more significant portion of
the proceeds have actually been spent and our concerns with the activities of the VEBA have been
addressed.

During our review to date the 1114 Committee has identified several concerns with the
activities of the VEBA and is in the process of providing details of these issues to the VEBA
Committee for resolution. In general these issues involve governance, transparency of activities,
investment of funds, compliance with the Trust Agreement and compliance with HIPAA and ERISA
regulations. We are sure you will agree that if such issues are ignored they pose a long term liability to
DSRA beneficiaries.

We understand your desire to move this process along. To that end the 1114 Committee, during
our meeting, May 20, 2010 unanimously approved an expenditure of $50,000 from start-up funds, to
be administered by Jim Frost, 1114 Chairperson, per Trust Agreement Article I, Paragraph 1,
Statement O ("to reimburse VEBA Committee Members or the 1114 Committee for the costs incurred
by them in the administration of their duties"). These funds will be used to cover a retainer and
attorney fees to allow the 1114 Committee to complete its duties.

Please be clear that the 1114 Committee is the only entity appointed by the Court to report on
these matters. The 1114 Committee has neither delegated any of their duties to any other parties nor
authorized any other parties to act for them. Any attempt by others to misrepresent themselves as

members of the 1114 Committee or as speaking for the 1114 Committee would constitute fraud. Regrettably such an action would require a strong response to the Court by the 1114 Committee.


Delphi Salaried Retirees 1114 Committee

James Frost        W. Ben Gifford
Cathy Carroll      James Hagenbach
James Conger       Robert Todd Nicholson

# EXHIBIT G



June 1, 2010


*VIA ELECTRONIC DELIVERY*


Delphi Committee of Retired Employees (1114 Committee):

| | |
|---|---|
| James Frost | W. Ben Gifford |
| Cathy Carol | James Hagenbach |
| James Conger | Robert Todd Nicholson |

      RE:    Delphi Salaried Retirees Association Benefit Trust

Dear Committee Members:

      We received your letter responding to our second request that the 1114 Committee file its final report with the United States Bankruptcy Court Southern District of New York (the "Court") and be dissolved as soon as practicable.   In such letter you state that the members have unanimously approved an expenditure of $50,000 from the VEBA Trust start-up fund, to be administered by the 1114 Committee Chairperson, to cover attorney fees to assist the 1114 Committee in the completion of its duties.  We are writing to inform the 1114 Committee that we can not authorize a $50,000 expenditure from the set-up fund to "cover a retainer and attorney fees to allow the 1114 Committee to complete its duties."  As we have previously communicated, we believe that the 1114 Committee has completed its role with respect to the establishment of the VEBA and the only outstanding obligation of the 1114 Committee is to file its final report with the Court.

      As the Trustee and fiduciary of the VEBA Trust, we are obligated by the terms of the Trust Agreement and the fiduciary provisions of the Employee Retirement Income Security Act of 1974, as amended to ensure that only reasonable expenses associated with the establishment and administration of the VEBA Trust are paid from VEBA Trust assets.  We do not believe that $50,000 in attorney fees to assist the 1114 Committee in preparing a final report to the Court is a reasonable or necessary expense for which VEBA Trust assets should be expended.   Pursuant to the Settlement Order, the objective of the 1114 Committee's final report is to inform the Court as to how the settlement proceeds are being disbursed and allocated among retirees.  We do not believe that $50,000 is a reasonable cost for such a report.

      Because the 1114 Committee has fulfilled its limited purpose as set forth in the Settlement Order and has the necessary information to file its final report but refuses to do so, we

June 1, 2010
Page 2

will proceed with our request that the Court require the 1114 Committee file its final report and be dissolved.

Very truly yours,

**VEBA COMMITTEE**

Carol Harvey-Light

Dennis A. Black

James A. Baker

Marianne Baker

Vincent Wilson

Joseph J. McHugh

KD_2797229_1.DOC

# EXHIBIT H

## Cullen Grace

| | |
|---|---|
| **From:** | Jim Frost [james.r.frost@roadrunner.com] |
| **Sent:** | Monday, June 07, 2010 5:59 AM |
| **To:** | 'Carol Light' |
| **Cc:** | 'Den Black'; 'Jim Baker'; 'Cathy Carroll'; 'Jim Conger'; 'Nicholson'; wbgifford@aol.com; 'Joe McHugh'; mab346@comcast.net; 'Vince Wilson'; Patricia L. Beaty; DGloster@fbm.com; jhagenbach@roadrunner.com; 'Paul Dobosz'; 'Chet Gosik'; 'Dick Davis'; 'Bruce Gump'; 'John Norris' |

**Subject:** RE: 1114 Committee

Carol,
Response to your e-mail below and back up information attached. We have 2 reports in progress with a target of June 30. Which report we submit and the cost will depend on the level of cooperation from you in providing the information requested and resolution of 1114 committee and DSRA BOD concerns, both addressed in the attached. Also attached is the response to the first letter which we are still waiting for a response to. I'll call Patricia later and see if we can avoid bouncing letters back and forth, spending money on legal letters (3 to date from the VEBA, probably costing $600 each).

The 1114 committee and DSRA BOD believe it is in the best interest of DSRA VEBA beneficiaries that we work together to resolve our differences as professional volunteer leaders with minimal use of legal counsel and costs. We are all volunteering time and talent for the good of the same group of financially devastated people. If we keep our focus on the beneficiaries, we think we can get where we need to be.

**From:** Carol Light [mailto:carol.light1@gmail.com]
**Sent:** Tuesday, June 01, 2010 8:14 PM
**To:** 'Cathy Carroll'; 'Jim Conger'; Jim Frost; 'Jim Hagenback'; Nicholson; wbgifford@aol.com
**Cc:** Den Black; Jim Baker; Joe McHugh; mab346@comcast.net; Vince Wilson; 'Patricia L. Beaty'; DGloster@fbm.com
**Subject:**

Dear 1114 Committee Members,

As the attached letter explains in detail, the VEBA Committee cannot and will not approve your request for $50K of VEBA set up funds to complete your final report. Since the VEBA Committee provided the 1114 with all the information it needs for its final report on 14 March 2010, we believe your filing and request for dismissal can be done immediately and for a cost of approximately $1K.
*[Jim Frost] The VEBA committee has not provided the latest information requested, April 27, 2010 and then follow-up on information requested Feb 1. The cost will depend on the cooperation we get in providing the information requested for submitting a report in CONFIDENCE. What the VEBA believes and what the 1114 committee believes are different based on the analysis of the original information provided and observed interactions with the DSRA and other stakeholders.*
   Any costs beyond this $1K amount will be considered excessive by the VEBA committee and will not be paid unless pre-approved by the entire VEBA Committee.
*[Jim Frost] the costs will be reasonable and documented through invoices for all to see. The 1114 has nothing to hide and has been transparent with the VEBA and DSRA.*

Again, we are asking you to immediately proceed with filing your final report and request for dismissal
*[Jim Frost] we are and need the information requested. We have started 2 reports as noted above.*

9/23/2010

, so that we can all avoid the additional legal costs that will be incurred because of your continuing refusal to do so.
*[Jim Frost] we have never refused to fulfill our responsibility, we are working on it and need the information requested to complete the report.*

We look forward to working out our differences constructively.

Jim Frost
1114 Committee Chairman

Confidentiality Notice: The information contained in this email and any attachments to it may be legally privileged and include confidential information intended only for the recipient(s) identified above. If you are not one of those intended recipients, you are hereby notified that any dissemination, distribution or copying of this email or its attachments is strictly prohibited. If you have received this email in error, please notify the sender of that fact by return email and permanently delete the email and any attachments to it immediately. Please do not retain, copy or use this email or its attachments for any purpose, nor disclose all or any part of its contents to any other person. Thank you.

**From:** Carol Light [mailto:carol.light1@gmail.com]
**Sent:** Tuesday, June 01, 2010 8:14 PM
**To:** 'Cathy Carroll'; 'Jim Conger'; Jim Frost; 'Jim Hagenback'; Nicholson; wbgifford@aol.com
**Cc:** Den Black; Jim Baker; Joe McHugh; mab346@comcast.net; Vince Wilson; 'Patricia L. Beaty'; DGloster@fbm.com
**Subject:**

Dear 1114 Committee Members,

As the attached letter explains in detail, the VEBA Committee cannot and will not approve your request for $50K of VEBA set up funds to complete your final report. Since the VEBA Committee provided the 1114 with all the information it needs for its final report on 14 March 2010, we believe your filing and request for dismissal can be done immediately and for a cost of approximately $1K. Any costs beyond this $1K amount will be considered excessive by the VEBA committee and will not be paid unless pre-approved by the entire VEBA Committee.

Again, we are asking you to immediately proceed with filing your final report and request for dismissal, so that we can all avoid the additional legal costs that will be incurred because of your continuing refusal to do so.

Regards,
Carol
DSRA Benefit Trust Co-Chair

Carol Harvey-Light
e-mail: carol.light1@gmail.com
cell: +1 810 877 2133
phone: 810 629 1835

*This e-mail transmission and any attachments that accompany it may contain information that is privileged, confidential or otherwise exempt from disclosure under applicable law and is intended solely for the use of the*

*individual(s) to whom it was intended to be addressed. If you have received this e-mail by mistake, or you are not the intended recipient, any disclosure, dissemination, distribution, copying or other use or retention of this communication or its substance is prohibited.  If you have received this communication in error, please immediately reply to the author via e-mail that you received this message by mistake and also permanently delete the original and all copies of this e-mail and any attachments from your computer. Thank you.*

9/23/2010

# EXHIBIT I

**From:** Jim Frost [mailto:james.r.frost@roadrunner.com]
**Sent:** Tuesday, April 27, 2010 7:00 AM
**To:** 'Carol Light'; 'Den Black'; 'Elaine Hofius'
**Cc:** 'Jim Baker'; mab346@comcast.net; 'Vince Wilson'; 'Cathy Carroll'; wbgifford@aol.com; 'Nicholson'; 'Jim Hagenback'; 'Jim Conger'; 'Dobosz, Paul'; 'Norris, John'; 'Gump, Bruce'; 'Gosik, Chet & Judy'; 'Davis, Dick'
**Subject:** VEBA status and performance Q1 2010

Carol, Den, Elaine
Sorry for the short notice, I have a follow-up meeting with the 1114 committee Wednesday at 4PM to check on final report analysis/status and a DSRA BOD meeting Thursday 7PM to report same. Could you send me a summary of VEBA operations for Q1 2010, namely:

1. Financial
    a.  status beginning of period in 3 areas (start-up, hardship, trust)
    b.  quarter income, expenses, end of quarter balances
    c.  2010 forecast
2. Customer
    a.  beginning period enrollments, changes over quarter
    b.  biggest issues and resolution
    c.  call response time
3. Operations
    a.  Status of SPD (late)
    b.  IRS private letter ruling status
    c.  Investment plan
    d.  Benefits, enrollment plan for 2011
4. Organizational
    a.  Board turnover (who left, reason)
    b.  Board candidates (who considered, status)

Thanks in advance, this will help us assess the performance of the VEBA in meeting short term and longer term expectations of DSRA beneficiaries and their families.

If the timing is too short here, sorry (hopefully you have already done this yourself), let me know when we can expect this report of operations

Jim Frost
1114 Committee Chairman

Confidentiality Notice:  The information contained in this email and any attachments to it may be legally privileged and include confidential information intended only for the recipient(s) identified above.  If you are not one of those intended recipients, you are hereby notified that any dissemination, distribution or copying of this email or its attachments is strictly prohibited.  If you have received this email in error, please notify the sender of that fact by return email and permanently delete the email and any attachments to it immediately.  Please do not retain, copy or use this email or its attachments for any purpose, nor disclose all or any part of its contents to any other person.  Thank you.

**Item 1 Complete:**
**From:** hofius@aol.com [mailto:hofius@aol.com]
**Sent:** Wednesday, May 12, 2010 7:33 AM
**To:** denblack@cox.net; froststar2@roadrunner.com; pjdobosz@verizon.net; bruceg.delphi@gmail.com; jimhthomas@aol.com; JGOSIK@MAC.COM; NorrisJohnC@aol.com; jdc3119@aol.com
**Subject:** 1st Qtr DSRA Benefit Trust Financials

Dear DSRA BOD:

Attached is the 1st qtr 2010 Financials for DSRA Benefit Trust.

Best Regards,

Elaine Hofius
DSRA Benefit Trust Treasurer

**Item 1 Analysis:**
1. **No investment policy, strategy, .4% return**
2. **$25,000 February legal expenditure**

**Requests:**
1. **Governance improvement for investment**
2. **Copies of invoices for evaluation**

# EXHIBIT J

1114 Committee Minutes of July 16, 2009

Present:  J. Frost, J. Conger, J. Hagenbach, T. Nicholson, B. Gifford, C. Carroll

Ben Gifford reported on the Warren roll-out stating approximately 250 - 300 people were in attendance and the presentation went well.

Jim Frost reported he had spoken with M. Moore from Marsh earlier and they were re-convening at 5:00 p.m. today.  Jim reported that Moore stated the VEBA board has to stop pushing the one-year contract or we (Delphi Salary Retirees) won't have Marsh and won't have an HCTC approved plan for the retirees.  Frost also discovered that the VEBA board is creating confusion with vendors who have already gone through extensive negotiations and internal buy-in to this new, high risk program.

Due to recent resignations of VEBA board members, Frost proposed the following and asked the 1114 Committee to vote on the proposals:

1.  Jim and Marianne Baker have volunteered to be on the VEBA board specifically to takeover the hardship application and award activity.  Jim would be a member of the board with Marianne being an ex-officio member of the board.

    After some discussion of the nominees' backgrounds, all members of the 1114 Committee voted unanimously in favor of this proposal.

2.  Jim Frost and Ben Gifford have volunteered to be members of the VEBA board (previously, they were ex-officio members).

    After some discussion as to the necessity of having 1114 Committee representation on the board, all members of the 1114 Committee voted unanimously in favor of this proposal.  Frost and Gifford abstained from voting on this proposal.

The next meeting is scheduled for Friday, July 17, 2009 at 4:00 p.m. ET.

Respectfully submitted,

Cathy Carroll