

## State of New Jersey
### DEPARTMENT OF ENVIRONMENTAL PROTECTION

JON S. CORZINE
*Governor*

LISA P. JACKSON
*Commissioner*

IN THE MATTER OF
THE NEW BRUNSWICK SITE                  :     REMEDIATION
DELPHI ENERGY & CHASSIS SYSTEMS AND      :     AGREEMENT
DELPHI AUTOMOTIVE SYSTEMS LLC

ISRA Case # E20060211

This Remediation Agreement is issued and entered into pursuant to the authority vested in the Commissioner of the New Jersey Department of Environmental Protection, (hereinafter the "NJDEP") by N.J.S.A. 13:1D-1 et seq., the Industrial Site Recovery Act, N.J.S.A. 13:1K-6 et seq., and the Spill Compensation and Control Act, N.J.S.A. 58:10-23.11 through 23.14 and duly delegated to the Assistant Director within the Division of Remediation Support pursuant to N.J.S.A. 13:1B-4.

## FINDINGS

1. The property that is the subject of this Remediation Agreement is owned by Delphi Automotive Systems LLC and operated by Delphi Energy & Chassis Systems. It is located at 760 Jersey Avenue and is designated as Block 598, Lots 3, 4, 5.01 and 12.01 on the tax maps of the City of New Brunswick, Middlesex County, New Jersey (hereinafter the "New Brunswick industrial establishment" or the "Site"). The North American Industrial Classification System (NAICS) number which best describes the operations at the New Brunswick industrial establishment is 335911.

2. On June 2, 2006, Delphi Automotive Systems LLC submitted to NJDEP an application for a Remediation Agreement pursuant to N.J.A.C. 7:26B-4.1. This Remediation Agreement application is incorporated herein by reference and includes the following information:

   A.     Transaction

              Seller:     Delphi Automotive Systems LLC

              Buyer:      Johnson Controls, Inc.

       Description:   Delphi Automotive Systems LLC has reached an agreement pursuant to a Chapter 11 Bankruptcy to sell the real property at the Site to Johnson Controls, Inc. Operations will continue.

B.   Responsible Person(s) executing this Remediation Agreement and responsible for conducting the remediation of the New Brunswick industrial establishment.

Name:   Delphi Automotive Systems LLC

Address:   5825 Delphi Drive
M/C 480-410-186
Troy, Michigan 48098

Telephone No.:   (248) 813-1428

3.   The NJDEP and Delphi Automotive Systems LLC expressly agree that the terms and conditions of this Remediation Agreement shall apply to the industrial establishment listed in Paragraph 1 above. Furthermore, NJDEP and Delphi Automotive Systems LLC agree to administer and complete all applicable ISRA program requirements, including the remediation funding source requirements and any other remedial measures undertaken pursuant to this Remediation Agreement and ISRA, for the industrial establishment.

4.   The transaction described in Paragraph 2.A above is the transfer of ownership or operations of an industrial establishment as defined by ISRA. NJDEP and Delphi Automotive Systems LLC expressly agree that the transaction described in Paragraph 2.A above is subject to ISRA. Delphi Automotive Systems LLC has requested that NJDEP prepare a Remediation Agreement which, when effective, will allow the transaction described in Paragraph 2.A above to be in compliance with ISRA prior to the completion of all administrative and remediation requirements pursuant to ISRA.

5.   By entering into this Remediation Agreement, Delphi Automotive Systems LLC neither admits to any fact, fault or liability under any statute or regulation concerning the condition of the Site nor waives any rights or defenses with regard to the Site except as specifically provided in this Remediation Agreement.

## AGREEMENT

I.   Remediation

1.   Delphi Automotive Systems LLC agrees to remediate the New Brunswick industrial establishment and to submit the following documents as established below:

A.   Within one hundred and eighty (180) calendar days after the NJDEP's receipt of the General Information Notice or such additional time as authorized by NJDEP, Delphi Automotive Systems LLC shall submit a preliminary assessment report, site investigation report, and remedial investigation work plan, as applicable, prepared in accordance with

N.J.A.C. 7:26E or Delphi Automotive Systems LLC shall submit a Negative Declaration for the New Brunswick industrial establishment.

B.     Within three hundred (300) calendar days after the NJDEP's receipt of the General Information Notice or within one hundred twenty (120) calendar days from receipt of NJDEP's written approval of the Remedial Investigation Workplan or longer as authorized by NJDEP, Delphi Automotive Systems LLC shall submit a Remedial Investigation Report in accordance with N.J.A.C. 7:26E or Delphi Automotive Systems LLC shall submit a Negative Declaration for the New Brunswick industrial establishment.

C.     Within four hundred and twenty (420) calendar days after the NJDEP's receipt of the General Information Notice or within one hundred and twenty (120) calendar days from receipt of NJDEP's written approval of the Remedial Investigation Report or longer as authorized by NJDEP, Delphi Automotive Systems LLC shall submit a Negative Declaration for the New Brunswick industrial establishment, or Delphi Automotive Systems LLC shall submit a Remedial Action Work plan as applicable, prepared in accordance with N.J.A.C. 7:26E.

D.     The NJDEP will review all documents in accordance with N.J.A.C. 7:26B and N.J.A.C. 7:26E.

2.     If NJDEP determines any submittal made under this section is inadequate or incomplete, the NJDEP shall provide Delphi Automotive Systems LLC with written notification of each deficiency, and Delphi Automotive Systems LLC shall revise and resubmit the required information within thirty (30) calendar days, or longer as authorized by NJDEP, from receipt of such notification. The determination as to whether or not the submittal, as modified, conforms to the Technical Requirements for Site Remediation, N.J.A.C 7:26E and the Department's written comments and is otherwise acceptable to by the Department shall be made solely by the Department in writing.

3.     If the NJDEP determines that no further action is required at the New Brunswick industrial establishment, Delphi Automotive Systems LLC shall submit a negative declaration, in accordance with N.J.A.C. 7:26B-6.7, within thirty (30) calendar days or longer as authorized by NJDEP from receipt of the NJDEP's request for the submission of the negative declaration.

4.     Nothing in this Remediation Agreement shall be construed to limit, restrict or prohibit any Person(s) responsible for conducting the remediation of the New Brunswick industrial establishment from implementing any applicable ISRA compliance options in accordance with N.J.A.C. 7:26B-5 to satisfy the requirements of ISRA.

5.     If at any time that this Remediation Agreement is in effect the NJDEP determines that the requirements of N.J.A.C. 7:26E are not being achieved or that additional remediation is required to protect the public health and safety or the environment from contamination at the Site, Delphi Automotive Systems LLC shall conduct such additional remediation as the NJDEP directs.

6.  The NJDEP will consider a request for an extension of time to perform any requirement under this Remediation Agreement, provided that any extension request is submitted to the NJDEP fourteen (14) calendar days prior to any applicable deadline to which the extension request refers.

II.  Remediation Funding Source and Remediation Funding Source Surcharge

7.  Delphi Automotive Systems LLC agrees to establish and maintain for the duration of this Remediation Agreement a remediation funding source in an amount equal to the Department-approved estimate of the remediation costs related to compliance with this Remediation Agreement, including all operation, maintenance and monitoring costs of all engineering and institutional controls, pursuant to N.J.A.C. 7:26E-8, used to remediate the Site, pursuant to N.J.A.C. 7:26C-7. Delphi Automotive Systems LLC agrees that the initial remediation funding source amount is **$535,000.00**.

8.  Delphi Automotive Systems LLC agrees to pay an annual remediation funding source surcharge if required to do so pursuant to N.J.A.C. 7:26C-7.8.

III.  Project Cost Review

9.  Beginning three hundred sixty-five (365) calendar days after the effective date of this Remediation Agreement, and annually thereafter on the same calendar day, Delphi Automotive Systems LLC agrees to submit to the Department a detailed review of all remediation costs expended by Delphi Automotive Systems LLC to comply with this Remediation Agreement, including:

    (a)  A detailed summary of all monies spent to date pursuant to this Remediation Agreement;

    (b)  The detailed estimated remediation costs required to comply with this Remediation Agreement, including all operation, maintenance and monitoring costs; and

    (c)  The reason for any changes from the previously submitted cost review.

10.  At any time after Delphi Automotive Systems LLC submits the first cost review pursuant to the preceding paragraph Delphi Automotive Systems LLC may request the Department's approval to reduce the amount of the remediation funding source to reflect the remaining remediation costs necessary to comply with obligations under this Remediation Agreement. If the Department grants written approval to such a request, Delphi Automotive Systems LLC may amend the amount of the then existing remediation funding source consistent with that approval.

11.  If the estimated costs of meeting Delphi Automotive Systems LLC's obligations in this Remediation Agreement at any time increase to an amount greater than the remediation funding source, Delphi Automotive Systems LLC agrees to within thirty (30) calendar days after receipt

of written notice of the Department's determination, increase the amount of the then existing remediation funding source or provide an additional remediation funding source such that the total amount equals the Department's approved estimated cost.

12. If Delphi Automotive Systems LLC implements a remedial action at the site that includes institutional and/or engineering controls pursuant to N.J.A.C. 7:26E-8, the Delphi Automotive Systems LLC agrees to maintain a remediation funding source, pursuant to N.J.A.C. 7:26C-7, in an amount that is sufficient to pay for the operation, maintenance and monitoring of the engineering and institutional controls.

IV. Project Coordination

13. Within seven (7) calendar days after the effective date of this Remediation Agreement, Delphi Automotive Systems LLC shall submit to the NJDEP the name, title, address and telephone number of the individual who shall be Delphi Automotive Systems LLC technical contact for the NJDEP for all matters concerning this Remediation Agreement and Delphi Automotive Systems LLC shall designate an agent for the purpose of service for all matters concerning this Remediation Agreement and shall provide the NJDEP with the agent's name and address.

14. Unless otherwise directed by NJDEP, any submission to be made to NJDEP in accordance with this Remediation Agreement and ISRA shall be directed to:

> New Jersey Department of Environmental Protection
> Division of Remediation Support
> 401 East State Street
> P.O. Box 028
> Trenton, NJ 08625-0028

V. Oversight Cost Reimbursement

15. All submissions required pursuant to this Remediation Agreement shall be accompanied by all appropriate fees pursuant to N.J.A.C. 7:26B-8.

16. Within thirty (30) calendar days after receipt from the NJDEP of a written summary, conforming to N.J.A.C. 7:26B-8.2, of the NJDEP's oversight costs, including all accrued interest incurred pursuant to the paragraph below, determined pursuant to N.J.A.C. 7:26B-8, Delphi Automotive Systems LLC shall submit to the NJDEP a cashier's or certified check payable to the "Treasurer, State of New Jersey" and submitted with DEP Form 062A in accordance with N.J.A.C. 7:26B-8.4, for the full amount of the NJDEP's oversight costs. Nothing contained in the paragraph shall be construed to limit or restrict any person's ability to contest any oversight costs calculated pursuant to N.J.A.C. 7:26B-8.2(d) in accordance with the oversight cost review procedures at N.J.A.C. 7:26B-8.3.

17.   Interest shall accrue on the unpaid balance of oversight costs, beginning at the end of the thirty (30) calendar day period established in the preceding paragraph, at the rate established by Rule 4:42 of the current edition of the Rules Governing the Courts of the State of New Jersey.

VI.   Force Majeure

18.   If any event specified in the following paragraph occurs which Delphi Automotive Systems LLC believes or should believe will or may cause delay in the compliance or cause non-compliance with any provision of this Remediation Agreement, Delphi Automotive Systems LLC shall notify the NJDEP in writing within seven (7) calendar days of the start of delay or knowledge of the anticipated delay, as appropriate, referencing this paragraph and describing the anticipated length of the delay, the precise cause or causes of the delay, any measures taken or to be taken to minimize the delay, and the time required to take any such measures to minimize the delay. Delphi Automotive Systems LLC shall take all necessary action to prevent or minimize any such delay.

19.   The NJDEP will extend in writing the time for compliance for a period no longer than the delay resulting from such circumstances as determined by the NJDEP only if:

(a)   Delphi Automotive Systems LLC has complied with the notice requirements of the preceding paragraph;

(b)   Any delay or anticipated delay has been or will be caused by fire, flood, riot, strike or other circumstances beyond the control of Delphi Automotive Systems LLC; and

(c)   Delphi Automotive Systems LLC has taken all necessary action to prevent or minimize any such delay.

20.   The burden of proving that any delay is caused by circumstances beyond the control of Delphi Automotive Systems LLC and the length of any such delay attributable to those circumstances shall rest with Delphi Automotive Systems LLC.

21.   "Force Majeure" shall not include the following:

(a)   Delay in an interim requirement with respect to the attainment of subsequent requirements;

(b)   Increases in the cost or expenses incurred by Delphi Automotive Systems LLC in fulfilling the requirements of this Remediation Agreement;

(c)   Contractor's breach, unless Delphi Automotive Systems LLC demonstrates that such breach falls within paragraph 19 above; and

(d)   Failure to obtain access required to implement this Remediation Agreement, unless denied by a court of competent jurisdiction.

VII. <u>Reservation of Rights</u>

22. By entering into this Remediation Agreement, the NJDEP does not waive its right to seek, assess or collect civil or civil administrative penalties or any other legal or equitable relief against Delphi Automotive Systems LLC for past, present and future violations by Delphi Automotive Systems LLC of any New Jersey environmental statutes or regulations.

23. The NJDEP reserves the right to require Delphi Automotive Systems LLC to take or arrange for the taking of any and all additional measures if the NJDEP determines that such actions are necessary to protect human health or the environment.

24. Delphi Automotive Systems LLC admits that it has agreed to comply with the terms of this Remediation Agreement. Neither the entry into this Remediation Agreement nor the conduct of Delphi Automotive Systems LLC hereunder, shall be construed as any admission of fact, fault or liability by Delphi Automotive Systems LLC under any applicable laws or regulations.

25. Except as otherwise set forth herein, by the execution of this Remediation Agreement, the NJDEP does not release any person from any liabilities or obligations such person may have pursuant to ISRA and the ISRA regulations, or any other applicable authority, nor does the NJDEP waive any of its rights or remedies pursuant thereto.

26. This Remediation Agreement shall not be constructed to affect or waive the claims of Federal or State natural resources trustees against any person for damages or injury to, destruction of, or loss of natural resources, unless expressly provided herein, and then only to the extent expressly provided herein.

VIII. <u>Penalties</u>

27. Delphi Automotive Systems LLC agrees to pay penalties for its violations of this Remediation Agreement, or for its violations of a deed notice or declaration of environmental restriction that is part of a remedial action implemented pursuant to the Remediation Agreement, according to the amounts and conditions in this section.

28. Delphi Automotive Systems LLC agrees:

(a) That each violation of any requirement, condition or deadline in this Remediation Agreement constitutes an additional, separate, and distinct violation to which penalties apply;

(b) That each day that a violation continues constitutes an additional, separate, and distinct violation to which penalties apply;

(c) To pay interest, at the rate set forth in the New Jersey Court Rules, R. 4:42-11(a)i, on any unpaid penalty pursuant to this Remediation Agreement commencing on the first

day after it has agreed to pay a penalty pursuant to this Remediation Agreement;

(d) That nothing in this Remediation Agreement shall prevent the simultaneous accrual of separate penalties for separate violations of this Remediation Agreement;

(e) That its payment of a penalty pursuant to this Remediation Agreement does not alter Delphi Automotive Systems LLC's responsibility to complete any requirement of this Remediation Agreement; and

(f) To regard payments of penalties pursuant to this Remediation Agreement as payments of civil or civil administrative penalties pursuant to the Spill Compensation And Control Act, N.J.S.A. 58:10-23.11 through -23.14.

29. Delphi Automotive Systems LLC agrees to pay a penalty for all violations of this Remediation Agreement beginning on the first calendar day following the day the noncompliance begins and continually thereafter until the final day of correction of the noncompliance, in the following amounts:

| Calendar Days After Due Date | Penalty |
|---|---|
| 1 – 7 days | $ 500 per calendar day |
| 8 – 14 days | $ 1,000 per calendar day |
| 15 days and over | $ 2,500 per calendar day |

30. The Department will provide Delphi Automotive Systems LLC with written notice of each violation, including a description of the conditions of this Remediation Agreement that Delphi Automotive Systems LLC has violated, the date that Delphi Automotive Systems LLC was to have completed each task, the duration of the violation, and the amount of the penalty that is due and owing pursuant to Paragraph 29, above.

31. Delphi Automotive Systems LLC agrees to pay each penalty required by this Remediation Agreement by cashier's check or certified check payable to the "Treasurer, State of New Jersey," accompanied by DEP Form 062A and a letter referencing this Remediation Agreement and the violations for which Delphi Automotive Systems LLC is submitting the payment within thirty (30) calendar days after its receipt of a penalty payment demand from the Department pursuant to Paragraph 30 above.

32. Delphi Automotive Systems LLC agrees that nothing herein shall limit the Department's ability, upon Delphi Automotive Systems LLC's failure to pay a penalty pursuant to this Remediation Agreement, to pursue civil or civil administrative penalties or take any other enforcement action for any violations of this Remediation Agreement.

33. Delphi Automotive Systems LLC agrees to pay a penalty in the amount of the economic benefit (in dollars) which Delphi Automotive Systems LLC has realized as a result of not complying, or by delaying compliance, with the requirements of this Remediation Agreement, including the following:

(a) The amount of savings realized from avoided capital or noncapital costs resulting from the violation;

(b) The return earned or that may be earned on the amount of the avoided costs;

(c) All benefits accruing to the violator as a result of a competitive market advantage enjoyed by reason of the violation; and

(d) All other benefits resulting from the violation.

34. Delphi Automotive Systems LLC agrees that the Department will consider the following factors in determining a penalty for economic benefit:

(a) The amount of capital investments required, and whether they are one-time or recurring;

(b) The amount of one-time non-depreciable expenditures;

(c) The amount of annual expenses;

(d) The useful life of capital;

(e) Applicable tax, inflation and discount rates;

(f) The amount of low interest financing, the low interest rate, and the corporate debt rate; and

(g) Any other factors relevant to economic benefit.

35. If the total economic benefit was derived from more than one violation, Delphi Automotive Systems LLC agrees that the Department may apportion the total economic benefit amount among the violations from which it was derived so as to increase each civil administrative penalty assessment to an amount no greater than $50,000 per violation.

IX. General Provisions

36. No modification or waiver of this Remediation Agreement shall be valid except by written amendment to this Remediation Agreement duly executed by Delphi Automotive Systems LLC and the NJDEP. Any amendment to this Remediation Agreement shall be executed by Delphi Automotive Systems LLC and the NJDEP. The NJDEP reserves the right to require the resolution of any outstanding violations of ISRA or this Remediation Agreement prior to executing any such amendment.

37. This Remediation Agreement shall be binding, jointly and severally, on each signatory, its successors, assignees and any trustee in bankruptcy or receiver appointed pursuant to a proceeding in law or equity. No change in the ownership or corporate status of any signatory or of the industrial establishment or site shall alter signatory's responsibilities under this Remediation Agreement.

38. Delphi Automotive Systems LLC agrees not to contest the authority or jurisdiction of the NJDEP to issue this Remediation Agreement; Delphi Automotive Systems LLC further agrees not to contest the terms or conditions of this Remediation Agreement except as to interpretation or application of such specific terms and conditions that are being enforced in any action brought by the NJDEP to enforce the provisions of this Remediation Agreement.

39. Delphi Automotive Systems LLC shall provide to the NJDEP written notice of the dissolution of its corporate or partnership identity, the liquidation of the majority of its assets or the closure, termination or transfer of operations at least five (5) calendar days prior to such action. Delphi Automotive Systems LLC shall also provide written notice to the NJDEP of a filing of a petition for bankruptcy no later than five business days after such filing. These requirements shall be in addition to any other statutory requirements arising from the dissolution of corporate or partnership identity, the liquidation of the majority of assets, or the closure, termination or transfer of operations.

40. For persons executing this Remediation Agreement on behalf of a corporate entity, Delphi Automotive Systems LLC shall submit to the NJDEP, along with the executed original Remediation Agreement, documentary evidence in the form of a corporate resolution, that the signatory has the authority to bind Delphi Automotive Systems LLC to the terms of this Remediation Agreement.

41. Delphi Automotive Systems LLC expressly agrees that in the event that Delphi Automotive Systems LLC fails or refuses to perform any obligation(s) under this Remediation Agreement as determined by the NJDEP, the NJDEP shall have the right to exercise any option or combination of options available to the NJDEP under this Remediation Agreement, or any other statute.

42. Except as otherwise provided, the requirements of this Remediation Agreement shall be deemed satisfied upon the receipt by Delphi Automotive Systems LLC of written notice from the NJDEP that Delphi Automotive Systems LLC has demonstrated, to the satisfaction of the NJDEP, that Delphi Automotive Systems LLC has completed the substantive and financial obligations imposed by this Remediation Agreement. Such written notice shall not relieve Delphi Automotive Systems LLC from the obligation to conduct future investigation or remediation activities pursuant to federal, State or local laws for matters not addressed by this Remediation Agreement.

43. Compliance with the terms of this Remediation Agreement shall not excuse any Person(s) from obtaining and complying with any applicable federal, state or local permits, statutes, regulations and/or orders while carrying out the obligations imposed by ISRA through this

Remediation Agreement. The execution of this Remediation Agreement shall not excuse any Person(s) from compliance with all other applicable environmental permits, statutes, regulations and/or orders and shall not preclude NJDEP from requiring that the Person(s) obtain and comply with any permits, and/or orders issued by NJDEP under the authority of the Water Pollution Control Act, N.J.S.A. 58:10A-1 et seq., the Solid Waste Management Act, N.J.S.A. 13:1E-1 et seq., and the Spill Compensation and Control Act N.J.S.A. 58:10-23.11 et seq., for the matters covered herein. The terms and conditions of any such permit shall not be preempted by the terms and conditions of this Remediation Agreement if the terms and conditions of any such permit are more stringent than the terms and conditions of this Remediation Agreement. Should any of the measures to be taken by the Person(s) during the remediation of any ground water and surface water pollution result in a new or modified discharge as defined in the New Jersey Pollutant Discharge Elimination System ("NJPDES") regulations, N.J.A.C. 7:14A-1 et seq., then the Person(s) shall obtain a NJPDES permit or permit modification from NJDEP prior to commencement of said activity.

44. This Remediation Agreement shall be effective upon the execution of this Remediation Agreement by Delphi Automotive Systems LLC and the NJDEP. The transaction described at Findings, Paragraph 2.A above, may be consummated upon the execution of this Remediation Agreement. Delphi Automotive Systems LLC shall return a fully executed Remediation Agreement to the NJDEP together with the signature authorization required above within five business days from the effective date.

**NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION**

Date: 6-13-06   By: _____
Ronald T. Corcory, Assistant Director
Oversight Resources Allocation Element

**DELPHI AUTOMOTIVE SYSTEMS LLC**

Date: 7-26-06.   By: _____

GLENN HOWARTH
Print Full Name Signed Above
DELPHI FACILITIES SERVICES GROUP, DIRECTOR
OF GLOBAL OPERATIONS, NORTH AMERICA
Title

# DELPHI

| | |
|---|---|
| Date: | December 9, 2005 |
| From: | Mark R. Weber |
| To: | Delegated Signatory |
| CC: | Delphi Global Remediation Manager |
| | New Brunswick Site Environmental Remediation Manager |
| | Delphi Facilities Services Group Director of Global Operations, North America |
| | Delphi Environmental Technical Services Group |
| | New Jersey Assistant Director of Site Remediation |
| | Delphi Legal Staff - Environmental |
| Subject: | Confirmation of Signatory Authority Under EPA Environmental Programs |

As provided under Section 7:26B1.6 of the New Jersey Administration Code, this letter re-assigns delegation of Signatory Authority for New Brunswick Manufacturing. The Delphi Facilities Services Group Director of Global Operations, North America, the Delphi Global Remediation Manager and the New Brunswick Site Environmental Remediation Manager are hereby designated as duly authorized representatives of Delphi Automotive Systems upon departure of the person in the previously authorized position. As such, the individual in the position indicated is authorized to sign and/or certify reports and other documents necessary to comply with the State of New Jersey's Industrial Site Recovery Act, NJSA 13:1k et seq., NJAC 7:26B et seq. (ISRA), along with any other information requested by the New Jersey Department of Environmental Protection regarding ISRA.

This letter serves as a delegation under applicable state and local laws regarding the ISRA program for this facility.

Mark R. Weber

*[signature]*

Executive Vice President

FACILITIES SERVICES GROUP    MC 480-410-186    5825 DELPHI DRIVE    TROY, MICHIGAN 48098