## REMEDIATION TRUST FUND AGREEMENT

**TO:**  **New Jersey Department of Environmental Protection**
**Division of Remediation Support**
**Oversight Resources Allocation Element**
**Office of Accountability**
**401 East State Street, 5th Fl W**
**P.O. Box 028**
**Trenton, NJ 08625**
**Attn: Remediation Funding Source Coordinator**

Remediation Trust Fund Agreement, "Agreement", entered into as of *September 22*, 2006 by and between DELPHI AUTOMOTIVE SYSTEMS LLC, known as "Grantor" and J.P. Morgan Trust Company, National Association, a national banking association, the "Trustee".

WHEREAS, Grantor has entered into a Remediation Agreement with the New Jersey Department of Environmental Protection (hereinafter "NJDEP" or the "Department") dated July 26, 2006 under which Grantor has agreed, among other things, to post a remediation funding source in accordance with N.J.S.A. 58:10B-3 and N.J.A.C. 7:26C-7;

WHEREAS, Grantor, acting through its duly authorized officer or management official, has selected the Trustee under this Agreement, and the Trustee is willing to act as Trustee.

NOW, THEREFORE, the Grantor and the Trustee agree as follow:

Section 1.    Definitions.

As used in this Agreement:

(a)  The term "Grantor" means DELPHI AUTOMOTIVE SYSTEMS LLC and any successors or assigns of the Grantor.  The name, address and title of the Grantor is:

Delphi Automotive Systems LLC
5825 Delphi Drive, M/C 480-410-186
Troy, Michigan 48098

(b)  The term "Trustee" means the Trustee who enters into the Agreement and any successor Trustee, who has the authority to act as a trustee and whose trust operations are regulated and examined by a Federal or New Jersey agency.  The name, address and title of the Trustee is:

J.P. Morgan Trust Company, National Association
227 W. Monroe Street, 26th Floor
Chicago, IL 60606
Attn: Rory Nowakowski, Asst Vice President

(c)  The term "Commissioner" means the Commissioner of the New Jersey Department of Environmental Protection.

(d)  The term "Beneficiary" means the New Jersey Department of Environmental Protection.

Section 2.    Identification of Site(s)

This Agreement pertains to the site identified on Schedule "A" attached hereto.

Section 3.    Establishment of Fund.

The Grantor and the Trustee hereby establish a trust fund, hereinafter the "Fund", for the benefit of the Department. The Grantor and the Trustee intend that no third party shall have access to the Fund except as herein provided. The Fund is established initially as consisting of the property, which is acceptable to the Trustee and the Department, described in Schedule "B", attached hereto. Such property and any other property subsequently transferred to the Trustee is referred to as the Fund, together with all earnings and profits thereon, less any payments or distributions made by the Trustee pursuant to this Agreement. The Fund shall be held by the Trustee, in Trust, as hereinafter provided. The Trustee shall not be responsible nor shall it undertake any responsibility for the amount or adequacy of, nor any duty to collect from the Grantor, any payments necessary to discharge any liabilities of the Grantor established by the Department.

Section 4.    Payment for Remediation.

The Trustee shall make payment from the Fund as the Department shall direct, in writing, to provide for the payment of the costs of remediation of the Site(s). The Trustee shall reimburse the Grantor or other persons, as specified by the Department, from the Fund for expenditures in such amounts, as the Department shall direct in writing. In addition, the Trustee shall refund to the Grantor such amounts the Department specifies in writing. Upon refund, such funds shall no longer constitute part of the Fund, as defined herein.

Section 5.    NJDEP's Use of the Remediation Funding Source.

Upon the Trustee's and Grantor's receipt from the Department of a written notice that the Grantor has failed to perform the remediation of the Site, and the Grantor's subsequent failure to initiate efforts to remediate the Site within thirty (30) days after receipt of the notice, the Trustee shall disburse the monies from the Fund as directed by the Department in writing to the Department or another person designated by the Department in accordance with N.J.A.C 7:26C-7.12(c) and (d).

Section 6.    Payments Comprising the Fund.

Payments made to the Trustee for the Fund shall consist of cash or securities acceptable to the Trustee.

2

<u>Section 7.</u>    <u>Trustee Management</u>.

The Trustee shall invest and reinvest the principal and income of the Fund and keep the Fund invested as a single fund, without distinction between principal and income, in accordance with general investment policies and guidelines which the Grantor may communicate in writing to the Trustee from time to time, subject, however, to the provisions of this Section. In investing, reinvesting, exchanging, selling and managing the Fund, the Trustee shall discharge his duties with respect to the Fund solely in the interest of the Department as the beneficiary and with the care, skill, prudence and diligence under the circumstances then prevailing which persons of prudence, acting in a like capacity and familiar with such matters, would use in the conduct of an enterprise of a like character and with like aims; except that:

(i)  Securities or other obligations of the Grantor, or any other owner or operator of the facilities or any of their affiliates, as defined in the Investment Company Act of 1940, as amended, 15 U.S.C. 80a-2(a), shall not be acquired or held, unless they are securities or other obligations of the Federal or a State government;

(ii)  The Trustee is authorized to invest the Fund in time or demand deposits of the Trustee, to the extent the Fund (or at least the portion of the Fund eligible to be insured) is insured by the Federal Deposit Insurance Corporation or State government; and

(iii)  The Trustee is authorized to hold cash awaiting investment of distribution uninvested for a reasonable time and without liability for the payment of interest thereon.

<u>Section 8.</u>    <u>Commingling and Investment</u>.

The Trustee is expressly authorized in its discretion:

(a)  To transfer from time to time any or all of the assets of the Fund to any common, commingled or collective trust fund created by the Trustee in which the Fund is eligible to participate, subject to all of the provisions thereof, to be commingled with the assets of other trusts participating therein; and

(b)  To purchase shares in any investment company registered under the Investment Company Act of 1940, 15 U.S.C. 80a-1 <u>et</u> <u>seq</u>., including one which may be created, managed, underwritten, or to which investment advice is rendered or the shares of which are sold by the Trustee. The Trustee may vote such shares in its discretion.

<u>Section 9.</u>    <u>Express Powers of Trustee</u>.

Without in any way limiting the powers and discretion's conferred upon the Trustee by the other provisions of this Agreement or by law, the Trustee is expressly authorized and empowered:

1019008.1

(a)  To sell, exchange, convey, transfer or otherwise dispose of any property held by it, by public or private sale.  No person dealing with the Trustee shall be bound to see to the application of the purchase money or to inquire into the validity or expedience of any such sale or other disposition;

(b)  To make, execute, acknowledge and deliver any and all documents of transfer and conveyance and any and all other instruments that may be necessary or appropriate to carry out the powers herein granted;

(c)  To register any securities held in the Fund in its own name or in the name of a nominee and to hold any security in bearer form or in book  entry, or to combine certificates representing such securities with certificates of the same issue held by the Trustee in other fiduciary capacities, or to deposit or arrange for the deposit of such securities in a qualified central depository even though, when so deposited, such securities may be merged and held in bulk in the name of the nominee of such depository with other securities deposited therein by another person, or to deposit or arrange for the deposit of any securities issued by the Federal Government of the United States or any agency or instrumentality thereof, with a Federal Reserve bank, but the books and records of the Trustee shall at all times show that all securities are part of the Fund;

(d)  To deposit any cash in the Fund in interest-bearing accounts maintained or savings certificates issued by the Trustee, in its separate corporate capacity, or in any other banking institution affiliated with the Trustee, to the extent insured by an agency of the Federal or State government; and

(e)  To compromise or otherwise adjust all claims in favor of or against the Fund.

Section 10.    Taxes and Expenses.

All taxes of any kind that may be assessed or levied against or in respect of the fund and all brokerage commissions incurred by the Fund shall be paid from the Fund.  All other expenses incurred by the Trustee in connection with the administration of this Trust, including fees for legal services rendered to the Trustee, the compensation of the Trustee to the extent not paid directly by the Grantor and all other proper charges and disbursements of the Trustee shall be paid from the Fund.

Section 11.    Annual Valuation.

The Grantor and Trustee shall, annually, at least thirty (30) calendar days prior to the anniversary date of establishment of the Fund, furnish to the Grantor and to the Department a statement confirming the value of the Trust and the continuation of the Trust for the next 12-month period.  Any securities in the Fund shall be valued at market value as of no more than sixty (60) calendar days prior to the anniversary date of establishment of the Fund.  The failure of the Grantor to object in writing to the Trustee within ninety (90) calendar days after the statement has been furnished to the Grantor and the Department shall constitute a conclusively binding assent by the Grantor, barring the Grantor from asserting any claim or liability against the Trustee with respect to matters disclosed in the statement.

4

1019008.1

Section 12.    Advice of Counsel.

The Trustee may, from time to time, consult with counsel, who may be counsel to the Grantor, with respect to any questions arising as to the construction of this Agreement or any action to be taken hereunder. The Trustee shall be fully protected, to the extent permitted by law, in acting upon the advice of counsel.

Section 13.    Trustee Compensation.

The Trustee shall be entitled to reasonable compensation, from time to time, for its services, as agreed upon in writing with the Grantor.

Section 14.    Successor Trustee.

The Trustee may resign or the Grantor may replace the Trustee, but such resignation or replacement shall not be effective until the Grantor has appointed a successor trustee and this successor accepts the appointment. The successor trustee shall have the same powers and duties as those conferred upon the Trustee hereunder. Upon the successor trustee's acceptance of the appointment, the Trustee shall assign, transfer and pay over to the successor Trustee the funds and properties constituting the Fund. If for any reason, the Grantor cannot or does not act in the event of the resignation of the Trustee, the Trustee may apply to a court of competent jurisdiction for the appointment of a successor Trustee or for instructions. The successor trustee shall specify the date on which it assumes administration of the trust in writing sent to the Grantor, the Department and the present Trustee by certified mail ten (10) calendar days before such change becomes effective. Any expenses incurred by the Trustee as a result of any of the acts contemplated by this Section shall be paid as provided in Section 10.

Section 15.    Instructions to the Trustee.

All orders, requests and instructions by the Grantor to the Trustee shall be in writing, signed by such persons as are designated in Schedule "C". The Trustee shall be fully protected in acting without inquiry in accordance with the Grantor's orders, requests and instructions. All orders, requests and instructions by the Department to the Trustee shall be in writing and the Trustee shall act and shall be fully protected in acting in accordance with such orders, requests and instructions. The Trustee shall have the right to assume, in the absence of written notice to the contrary, that no event constituting a change or a termination of the authority of any person to act on behalf of the Grantor of the Department hereunder has occurred. The Trustee shall have no duty to act in the absence of such orders, requests and instructions from the Grantor and/or the Department, except as provided for herein.

Section 16.    Amendment of Agreement.

This Agreement may be amended by an instrument in writing executed jointly by the Grantor or the Grantor's principals, successors, and assigns if Grantor has dissolved, the Trustee and the Department or by the Trustee and the Department if the Grantor ceases to exist and no successors or assigns are named.

5

1019008.1

Section 17.    Irrevocability and Termination.

Subject to the right of the parties to amend this Agreement, as provided in Section 15, this Trust shall be irrevocable and shall continue until terminated at the written agreement of the Grantor, the Trustee and the Department or of the Trustee and the Department, if the Grantor ceases to exist.  Upon termination of the Trust, all remaining trust property, less final trust administration expenses, shall be delivered to the Grantor.

Section 18.    Immunity and Indemnification.

The Trustee shall not incur personal liability of any nature in connection with any act of omission, made in good faith, in the administration of this Trust or in carrying out any directions by the Grantor or the Department issued in accordance with the Agreement.  The Trustee shall be indemnified and saved harmless by the Grantor or from the Trust Fund, or both, from and against any personal liability to which the Trustee may be subjected by reason of any act or conduct in its official capacity, including all expenses reasonably incurred in its defense in the event the Grantor fails to provide such defense.

Section 19.    Choice of Law.

This Agreement shall be administered, construed and enforced according to the laws of the State of New Jersey.

Section 20.    Interpretation.

As used in this Agreement, words in the singular include the plural and words in the plural include the singular.

The descriptive headings for each Section of this Agreement shall not affect the interpretation or the legal efficacy of this Agreement.

[SIGNATURES ON FOLLOWING PAGE]

6

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed by their respective officer or management officials, duly authorized, and their corporate seals to be hereunto affixed and attested, as of the date first above written:

DELPHI AUTOMOTIVE SYSTEMS LLC

By: _____    DATE: 9/21/06.

TITLE: FINANCE DIRECTOR
        Automotive Holding Group

J.P. MORGAN TRUST COMPANY,
NATIONAL ASSOCIATION, as Trustee

                                        DATE: _____

By: _____

TITLE: _____

7

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed by their respective officer or management officials, duly authorized, and their corporate seals to be hereunto affixed and attested, as of the date first above written:

DELPHI AUTOMOTIVE SYSTEMS LLC

By: _____

DATE: 9/21/06.

TITLE: FINANCE DIRECTOR
            AUTOMOTIVE HOLDING GROUP

J.P. MORGAN TRUST COMPANY,
NATIONAL ASSOCIATION, as Trustee

By: _____

DATE: _____9/22/06_____

TITLE: Authorized Officer

7

1019008.1

## SCHEDULE A

Delphi Automotive Systems LLC
760 Jersey Avenue
New Brunswick, New Jersey 08901

Block 598, Lots 3, 4, 5.01, and 12.01

Case No. E2006-0211

## SCHEDULE B

FIVE HUNDRED THIRTY FIVE THOUSAND and 00/100 Dollars ($535,000.00)

1019008.1

## SCHEDULE C

### CERTIFICATION

The person with the obligation <u>to establish</u> the remediation funding source has the obligation to execute and submit the certification required by N.J.A.C 7:26C-1.2(a)2, not any other person establishing the remediation funding source pursuant to N.J.A.C. 7:26C-7.

> "I certify under penalty of law that I am fully aware of the requirements of N.J.S.A. 58:10B-3 as they pertain to remediation funding sources. Specifically, I am aware of the responsibilities to establish and maintain the remediation funding source. Additionally, I acknowledge that the remediation funding source as required by N.J.A.C. 7:26C-7 shall be maintained until such time as an alternative remediation funding source is submitted to the Department and it has been approved by the Department in writing or the Department determines that it is no longer necessary to maintain a remediation funding source. I am aware that there are significant civil penalties for knowingly submitting false, inaccurate or incomplete information and that I am committing a crime of the fourth degree if I make a written false statement which I do not believe to be true. I am also aware that if I knowingly direct or authorize the violation of any statute, I am personally liable for the penalties."

By: _____   Date: ___9/20/2006___

James Hunt, Delphi Global Remediation Manager

1019008.1