| United States Bankruptcy Court<br>Southern District of New York<br>Delphi Corporation et al. Claims Processing<br>c/o Kurtzman Carson Consultants LLC, 2335 Alaska Avenue<br>El Segundo, California 90245 | Administrative<br>Expense Claim<br>Form | |
|---|---|---|
| Debtor against which claim is asserted :<br>Delphi Corporation, et al. 05-444481 | Case Name and Number<br>In re Delphi Corporation., et al. 05-44481<br>Chapter 11, Jointly Administered | **COPY** |

NOTE: This form should not be used to make a claim in connection with a request for payment for goods or services provided to the Debtors prior to the commencement of the case. This Administrative Expense Claim Request form is to be used solely in connection with a request for payment of an administrative expense arising after commencement of the case but prior to June 1, 2009, pursuant to 11 U.S.C. § 503.

| Name of Creditor<br>*(The person or other entity to whom the debtor owes money or property)*<br>Johnson Controls, Inc. (Power Solutions)<br><br>Name and Address Where Notices Should be Sent<br>c/o Stephen T. Bobo<br>Reed Smith, LLP<br>10 S. Wacker Dr., 40th Flr., Chicago, IL 60606<br>Telephone No.<br>(312) 207-1000 | ☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.<br>☐ Check box if you have never received any notices from the bankruptcy court in this case.<br>☐ Check box if the address differs from the address on the envelope sent to you by the court. | THIS SPACE IS FOR<br>COURT USE ONLY |
|---|---|---|
| ACCOUNT OR OTHER NUMBER BY WHICH CREDITOR IDENTIFIES DEBTOR: | Check here if this claim ☐ replaces<br>☐ amends   a previously filed claim, dated: _____ | |

1. BASIS FOR CLAIM
   ☐ Goods sold
   ☐ Services performed
   ☐ Money loaned
   ☐ Personal injury/wrongful death
   ☐ Taxes
   ☒ Other (Describe briefly)  Environmental Claims

   ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
   ☐ Wages, salaries, and compensation (Fill out below)
   Your social security number _____
   Unpaid compensation for services performed
   from _____ to _____
        (date)            (date)

2. DATE DEBT WAS INCURRED
   Various

3. IF COURT JUDGMENT, DATE OBTAINED:

4. TOTAL AMOUNT OF ADMINISTRATIVE CLAIM: $ 10,148,941 + oversight costs of NJDEP
   ☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all additional charges.

5. Brief Description of Claim (attach any additional information):
   Indemnification and statutory claims for environmental contamination of New Brunswick, New Jersey facility.

6. **CREDITS AND SETOFFS**: The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim. In filing this claim, claimant has deducted all amounts that claimant owes to debtor.

7. **SUPPORTING DOCUMENTS**: *Attach copies of supporting documents*, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, or evidence of security interests. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary. Any attachment must be 8-1/2" by 11".

8. **DATE-STAMPED COPY**: To receive an acknowledgement of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

| Date<br>July 13, 2009 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any)<br>*[signature]*<br>Stephen T. Bobo, Attorney for Johnson Controls, Inc. | THIS SPACE IS FOR COURT USE ONLY<br><br>**RECEIVED**<br>JUL 1 4 2009<br>KURTZMANCARSONCONSULTANTS |
|---|---|---|

## MEMORANDUM IN SUPPORT OF ADMINISTRATIVE EXPENSE CLAIMS OF JOHNSON CONTROLS, INC. AND JOHNSON CONTROLS BATTERY GROUP, INC.

Johnson Controls, Inc. ("JCI") and Johnson Controls Battery Group, Inc. ("JCBGI") assert administrative expense claims against Delphi Automotive Systems LLC ("Delphi") arising from Delphi's sale of certain real property commonly known as 760 New Jersey Avenue, New Brunswick, New Jersey (the "Property") to JCI in 2006. JCI subsequently transferred the Property to JCBGI, which remains the owner of the Property.

### A. Factual Background

1. Delphi sold the Property to JCI pursuant to a certain Transfer Agreement Relating To Transfer of Delphi's New Brunswick Battery Facility To JCI entered into between those parties and dated May 26, 2006 (the "Transfer Agreement"). The Transfer Agreement was approved by an order dated June 26, 2006 entered by the United States Bankruptcy Court for the Southern District of New York in Bankruptcy Case No. 05-44481 (RDD) (the "Sale Approval Order"), and the transaction closed shortly thereafter. A copy of the Transfer Agreement is attached hereto as Exhibit A.

2. Before it could sell the Property, Delphi was required to comply with applicable New Jersey law, including the New Jersey Industrial Site Recovery Act, as amended, N.J.S.A. 13:1K-6 et seq. ("ISRA"). In order to begin to comply with ISRA, Delphi entered into a Remediation Agreement with the New Jersey Department of Environmental Protection ("NJDEP") dated July 26, 2006 (the "Remediation Agreement"). Pursuant to the Remediation Agreement, Delphi agreed to investigate and clean up the Property after selling it and agreed to establish financial assurance that it could complete the cleanup. NJDEP required Delphi to establish financial assurance in the initial amount of $535,000.

3. After entering into the Remediation Agreement with NJDEP, Delphi investigated the Property and made several submissions to NJDEP regarding the results of its investigation and sought from NJDEP a statement that no further action was needed for certain portions of the Property. NJDEP responded in a lengthy letter to Delphi dated May 8, 2009 which rejected most of Delphi's assertions that it had sufficiently investigated the Property. NJDEP required Delphi to investigate the Property further before submitting a plan for its cleanup. Delphi has not responded to NJDEP's May 8, 2009 letter and has indicated that it intends to seek additional time until August 13, 2009 to respond to NJDEP.

4. NJDEP has incurred oversight costs in response to the release or threatened release of hazardous substances at the Property and will continue to incur such oversight costs. If Delphi does not pay for these oversight costs, NJDEP could seek to recover them from JCBGI, as the current owner of the Property, under either the federal Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended ("CERCLA"), 42 U.S.C. § 9601

et seq., or the New Jersey Spill Compensation and Control Act, as amended (the "Spill Act"), N.J.S.A. 58:10-23.11 et seq. Delphi's liability under ISRA for NJDEP's oversight costs does not prevent NJDEP from using its CERCLA or Spill Act authority to seek to recover these costs from JCBGI.

5.     JCI and JCBGI each assert contractual claims for indemnification arising under § 7.1.A of the Transfer Agreement. JCI also asserts contractual indemnification claims under Exhibit 3.6.H to the Transfer Agreement (the "Environmental Matters Exhibit"). Both JCI and JCBGI assert statutory claims against Delphi arising under CERCLA and the Spill Act.

## B. Claims for Indemnification under Transfer Agreement § 7.1.A

6.     Both JCI and JCBGI are entitled to indemnification from Delphi under Transfer Agreement § 7.1.A against damages, losses and expenses resulting from Delphi's breach of "any of its warranties or covenants" under the Transfer Agreement. Delphi covenanted in § 4.1 of the Environmental Matters Exhibit to investigate and clean up the Property as required by NJDEP to satisfy ISRA.

7.     Delphi has already breached or will breach this covenant by failing to complete the ISRA cleanup and failing to provide adequate financial assurance for that cleanup's completion. It is now clear that Delphi intends to liquidate pursuant to its Amended Plan of Reorganization without either performing the ISRA cleanup itself or setting aside an adequate reserve to fund the cleanup work by a third party. Delphi does not intend even to respond to the NJDEP regarding its further investigation of the Property until well after: (i) the Administrative Expense claims bar date, (ii) the date set for filing objections to the Modified Plan of Reorganization, and (iii) the hearing on confirmation of the Modified Plan of Reorganization. Despite receiving the May 8, 2009 letter from NJDEP requiring substantial additional investigation of the Property, Delphi also has not increased the amount of financial assurance provided to NJDEP to provide for funding to complete the cleanup beyond the initial $535,000 posted in 2006. Consequently, Delphi is attempting to put its liquidating plan into effect without ensuring completion or adequate funding of the ISRA cleanup. These omissions violate its covenant in § 4.1 of the Environmental Matters Exhibit.

8.     Under § 7.2 of the Transfer Agreement, it is sufficient for purposes of indemnification that JCI and JCBGI know of facts which may become the basis of a third-party claim against them. In particular, Delphi's failure to complete its ISRA cleanup obligations will likely make JCI and JCBGI subject to one or more claims by NJDEP under either the Spill Act or CERCLA to compel either or both of them to clean up the Property themselves. Accordingly, JCI and JCBGI are entitled to indemnification for the costs of performing the ISRA cleanup (the "Cleanup Costs"), as well as related costs and expenses.

9.     As set forth on the remediation summary attached as Exhibit B, the cleanup work that ISRA requires to be done includes the following actions: Cleaning of the Building Interior, Facility Decontamination, and Soil Remediation and Disposal. The estimated Cleanup Costs for this work total $8,973,550, plus the accrued and accruing oversight costs of NJDEP. In addition,

JCI and JCBGI are entitled under § 7.1.A to be reimbursed for the expenses of investigation and attorneys fees they have accrued and will continue to accrue. To date, JCI and JCBGI have incurred attorneys' fees totaling $178,916 in connection with environmental issues relating to the Property, and they expect to incur extensive additional attorneys' fees both in connection with this claim and in dealing with the NJDEP. In similar environmental litigation that was recently resolved through mediation, JCI and JCBGI incurred attorneys' fees totaling $996,475. Therefore the total expected legal expense that will be incurred is $1,175,391.

10. The total amount that JCI and JCBGI are entitled to be indemnified for under §7.1.A of the Transfer Agreement is $10,148,941 plus the NJDEP oversight costs. Delphi must either pay this total amount directly to JCI and JCBGI or else place that amount in trust for the sole purposes of funding the ISRA Cleanup Costs and oversight costs relating to the Property and reimbursing JCI and JCBGI for their attorneys fees.

### C. Contractual indemnification claims under Environmental Matters Agreement § 2

11. Section 2 of the Environmental Matters Exhibit requires Delphi to indemnify JCI for Environmental Damages arising from Pre-Closing Environmental Contamination. The New Jersey Attorney General's office has informed counsel for JCI that it believes that neither the Sale Approval Order nor the provisions of the Bankruptcy Code prevent NJDEP from asserting claims against JCI and JCBGI with respect to pre-closing environmental conditions at the Property.

12. Under the definition of "Environmental Damages" in §1.9 of the Environmental Matters Exhibit, JCI is entitled to indemnification for any cost "arising out of an Environmental Law" and incurred under such law in response to contamination that Delphi caused.

13. The clean up of the areas that Delphi has already disclosed to NJDEP under ISRA and whatever additional cleanup work is required as a result of Delphi's subsequent disclosures to NJDEP are required by ISRA. Therefore the cost of such work is also subject to indemnification under § 2.1 of the Environmental Matters Exhibit. The estimated Cleanup Costs are detailed on the attached schedule.

14. JCI is entitled to indemnification under §2.1 of the Environmental Matters Exhibit in the amount of $8,973,550 for the Cleanup Costs to comply with ISRA, as set forth on the attached Exhibit B, plus NJDEP's oversight costs. In addition, JCI is entitled to indemnification for the attorneys fees it has already incurred in the amount of $178,916 and the attorneys fees it expects to the incur in the amount of $996,475. Therefore, JCI is entitled to indemnification in the total amount of $10,148,941 plus NJDEP's oversight costs pursuant to § 2.1 of the Environmental Matters Exhibit.

### D. Statutory Claims

15. JCI and JCBGI are also entitled to administrative expense status for their statutory claims against Delphi, which are: (1) a claim for cost recovery against Delphi under Section

- 3 -

107(a) of CERCLA, 42 U.S.C. § 9607(a); and (2) a claim for contribution under the Spill Act. See N.J.S.A. 58:10-23.11f.a(2)(a).

16. JCBGI has incurred and continues to incur costs to remove lead from stormwater which enters the Property and is required to do so under a New Jersey Pollutant Discharge Elimination System permit issued by NJDEP (the "Stormwater Permit") pursuant to the New Jersey Water Pollution Control Act, as amended, N.J.S.A. 58:10A-1 et seq. Under the Stormwater Permit, JCI has been incurring an annual cost of approximately $380,400 since 2006 to remove lead present in such stormwater as a result of Delphi's operations.

17. JCI has incurred costs in response to the release or threat of release to the environment of lead on floors in buildings at the Property. The amount of such costs is $3,315.

18. Neither JCI nor JCBGI operated a battery manufacturing operation on the Property. JCBGI operated a battery fill and form operation at the Property for a seven month period. These operations did not involve the receipt, processing, recycling or reclamation of lead.

19. Portions of the Property were operated by either Delphi or its predecessor, General Motors Corporation, for more than sixty years, from 1945 until 2006, to manufacture lead/acid storage batteries for, primarily, the automotive industry. As described by Delphi in submittals made on its behalf to NJDEP pursuant to ISRA, Delphi is a former owner and a former operator of the Property that has discharged lead and a variety of other hazardous substances at the Property.

20. JCI and JCBGI are entitled under CERCLA § 107(a) and under the Spill Act to recover from Delphi all costs JCBGI has incurred to remove lead from Property stormwater and all costs JCI has incurred in response to the release or threat of release of lead from buildings at the Property, since all such lead results from the acts and omissions of Delphi or its predecessors. The amounts that JCBGI can recover from Delphi for stormwater treatment are costs already incurred, which total $760,800, and the costs that will continue to be incurred for ongoing treatment in the future, the present value of which is $3,324,355, as set forth in the spreadsheet attached as Exhibit C.

21. In addition, provision should be made for the Cleanup Costs under the Spill Act and CERCLA §107(a). JCI and JCBGI are entitled to declaratory relief that Delphi is liable for all contamination existing at the Property at the time it was sold to JCI, and either Delphi should be required to escrow funds for the Cleanup Costs, or else JCI and JCBGI should be permitted to recover that amount from Delphi. The necessary cleanup work includes the following remedial activities: Cleaning of the Building Interior, Facility Decontamination, and Soil Remediation and Disposal. These Cleanup Costs are estimated to total $8,973,550, as set forth on the attached Exhibit B. In addition, JCI and JCBGI can recover NJDEP's oversight costs.

22. JCI is entitled to recover the $3,315 it has already incurred in response to the release or threat of a release to the environment under Section 107(a) of CERCLA and the Spill Act, and is also entitled to have the Cleanup Costs amount of $8,973,550 plus NJDEP's

US_ACTIVE-101907451.4-STBOBO-319417-00077 7/13/09 5:42 PM

oversight costs either escrowed or paid over to JCI to use in connection with completing the cleanup of the Property.

23.   JCBGI is entitled to recover from Delphi under Section 107(a) of CERCLA and the Spill Act for the $760,800 it has incurred in connection with the stormwater cleanup, and JCBGI is also entitled to have Delphi either escrow $3,324,355 for the costs of future stormwater treatment and escrow $8,973,550 for the Cleanup Costs plus NJDEP's oversight costs, or pay those amounts over to JCBGI.