# EXHIBIT D

1

1

2   UNITED STATES BANKRUPTCY COURT

3   SOUTHERN DISTRICT OF NEW YORK

4   Case No. 05-44481

5   - - - - - - - - - - - - - - - - - -x

6   In the Matter of:

7

8   DELPHI CORPORATION,

9

10          Debtor.

11

12   - - - - - - - - - - - - - - - - - -x

13

14              United States Bankruptcy Court

15              One Bowling Green

16              New York, New York

17

18              July 19, 2007

19              10:08 AM

20

21   B E F O R E:

22   HON. ROBERT D. DRAIN

23   U.S. BANKRUPTCY JUDGE

24

25

2

1

2    HEARING re Debtors' Motion for an Order Under Section 105 and

3    363 Authorizing Implementation of Key Employee Compensation

4    Program

5

6    HEARING re Motion for an Order Authorizing Official Committee

7    of Unsecured Creditors to Prosecute Debtors' Claims and

8    Defenses Against General Motors Corporation and Certain Former

9    Officers of the Debtors

10

11   HEARING re Ex Parte Motion for Order Authorizing Official

12   Committee of Equity Security Holders to File Under Seal

13   Supplemental Objection to the Motion for an Order Authorizing

14   Official Committee of Unsecured Creditors to Prosecute Debtors'

15   Claims and Defenses Against General Motors Corporation and

16   Certain Former Officers of the Debtors

17

18

19

20

21

22

23

24

25

37

1    THE COURT:  That's fine.  We just have the Furukawa

2    matter and then the --

3    MR. BUTLER:  And the claims objections.  It shouldn't

4    be a much longer time.  We're just trying to get --

5    THE COURT:  The omnibus claim objection.  Okay.

6    That's fine.  So I'll come back at, say five of eleven.

7    MR. BUTLER:  Thank you, Your Honor.

8    THE COURT:  Thank you.

9    (Recess from 10:48 a.m. until 10:58 a.m.)

10   THE COURT:  Please be seated.  Okay, back on the

11   record in Delphi.

12   MR. BUTLER:  Thank you, Your Honor.  Your Honor, we

13   have three contested matters on today's agenda.  The first is

14   the Furukawa Electric relief from automatic stay, a contested

15   matter at docket number 7410.  Mr. Berger represents the

16   company in connection with this contested hearing and I will

17   cede the podium to him and to counsel for Furukawa.

18   THE COURT:  Okay.

19   MR. MCELWEE:  Michael McElwee for Furukawa, Your

20   Honor.  May I proceed?

21   THE COURT:  Yes.  I was just going to say, you should

22   go near a microphone.

23   MR. MCELWEE:  Oh, I will.  Given the amount of

24   briefing that's been done in this case, Your Honor, I'd like to

25   restrict myself to really two basic points and they are these.

38

1    First question is, did Delphi present its 25 million dollar

2    breach of warranty claim to this court in a procedurally

3    correct way.  And the second question is, even if Delphi did

4    present its 25 million dollar claim in a correct way, do any of

5    the traditional convenience factors justify adjudicating that

6    case in New York as opposed to Michigan.  We think these issues

7    are related for reasons that I'll explain.

8            It is useful, I think, Your Honor, to mention what

9    really are many of the undisputed facts in this case.  It's

10   undisputed that Delphi filed its 25 million dollar claim

11   against Furukawa in the state court in Michigan.  It's

12   undisputed that they filed that law suit approximately eleven

13   months before they sought protection under the Bankruptcy Code

14   in this court.  It's undisputed that that case raises only

15   state law claims.  It's also undisputed that Furukawa

16   Corporation and Delphi Corporation are both Delaware

17   corporations and both have their headquarters literally within

18   approximately thirty miles of each other in the suburbs of

19   Detroit.

20           Virtually, every fact that the case has applied to

21   determine the convenience of litigation warrants litigating

22   this case in Detroit or in the Detroit area and not in the

23   Southern District of New York.  Both parties are in the suburbs

24   of Detroit.  Literally all of the documentary evidence is in

25   Detroit.  All of the physical evidence is in Detroit.  The

39

1    lawyers who represent the parties in the Michigan case are both

2    from Michigan.  There really is none of the convenience factors

3    that would warrant transferring the case here.  Which raises

4    the question how then did Delphi justify filing a duplicate

5    case in this bankruptcy proceeding.

6          THE COURT:  Well, could -- maybe I misunderstand the

7    current state of the litigation here but aren't I right that a

8    claim was filed here by Furukawa for breach of contract, the

9    two Furukawa entities, --

10          MR. MCELWEE:  Furukawa --

11          THE COURT:  There was an objection to the claim.

12          MR. MCELWEE:  Yes.

13          THE COURT:  There've been or there was at least one

14   meet and confer and maybe more meet and confer sessions after

15   Furukawa responded to the objection.  And Delphi has provided

16   its issues list, right?

17          MR. MCELWEE:  That's correct.

18          THE COURT:  Delphi has not asserted a counterclaim

19   yet, has it?

20          MR. MCELWEE:  Well, in its issues list, it very

21   specifically indicated that it wanted the Court to decide its

22   25 million dollar claim here.

23          THE COURT:  All right.  But it has not teed up the

24   counterclaim for me yet, right?  I don't normally get the --

25   the issues list is really for the parties.

40

1          MR. MCELWEE:  Well, Delphi has indicated that it

2   intends to proceed.

3          THE COURT:  But it hasn't done that yet, right?  And

4   that's an important step because when a debtor formally asserts

5   a counterclaim as part of an objection to a claim, that

6   triggers under Bankruptcy Rule 3007 the adversary proceeding

7   rules.

8          MR. MCELWEE:  Correct.

9          THE COURT:  That doesn't seem to have happened yet.

10         MR. MCELWEE:  Well, if there is no claim pending here

11  on this twenty-five million dollar breach of warranty claim by

12  Delphi in this court, then this is really a very different

13  proceeding today.

14         THE COURT:  Well, there's an objection to your claim

15  and there may be a res judicata effect or a collateral estoppel

16  effect as a result of the litigation of that objection.  But I

17  just wanted to make sure I understood the current procedural

18  context that I'm operating under.

19         MR. MCELWEE:  Well, all of that's right.  I mean, I

20  do think some of the details matter for the two.  There was the

21  third omnibus objection where Delphi objected only on a books

22  and records basis to Furukawa's claim.  They raised no other

23  objection in that third omnibus objection to Furukawa's claim.

24  They then asserted in their response and in the description of

25  the issues in connection with the response that they were going

41

1    to raise not a books and records objection but that the claim

2    itself lacked merit on the substance of the claim, which is

3    very different than the books and records objection they

4    originally submitted.  And when they submitted that proposal to

5    the Court, they indicated in the proposal that they want the

6    Court to decide the twenty-five million dollar claim that's

7    pending in Michigan.  Now you are correct, that might not

8    constitute the correct way of placing that claim in front of

9    the Court.  In fact, that's one of the points we argue.  But

10   that nevertheless is clearly what Delphi's intention is in this

11   case.

12           THE COURT:  Okay.

13           MR. MCELWEE:  So our point is this.  That if Delphi

14   wants to initiate duplicate litigation in New York that it

15   already has on file in Detroit, it should file a removal

16   petition under Section 1452.  It should not attempt to append

17   that claim as part of the claims objection procedure under the

18   third omnibus objection.

19           THE COURT:  But isn't it just a flip side of -- they

20   terminated the contract --

21           MR. MCELWEE:  That's correct.

22           THE COURT:  -- because they say your clients breached

23   the contract.  You filed a proof of claim saying they breached

24   the contract by terminating it.  It's the flip side, isn't it?

25           MR. MCELWEE:  That's correct.  And we had to file

42

1    that proof of claim by the bar date or the allowance of our

2    claim in state court would be barred under the claims

3    adjudication rule, procedures under the Code.

4         THE COURT:  But the Second Circuit's been pretty

5    clear that that doesn't matter as far as the bankruptcy court's

6    jurisdiction or whether the claim litigation is core or the

7    like, does it?

8         MR. MCELWEE:  That's true.  The courts have held that

9    that doesn't matter in terms of determining the court's core

10   jurisdiction.  But it does matter in terms of the voluntary

11   abstention standards.  I mean, under the voluntary abstention

12   standards, this case is pending in state court.  Furukawa has

13   the right to a trial by jury and all of the convenience factors

14   warrant maintaining the case in the Eastern District of

15   Michigan

16        THE COURT:  Having filed the claim, doesn't the jury

17   trial right go away?

18        MR. MCELWEE:  -- rather than the Southern District of

19   New York.  Excuse me, Your Honor?

20        THE COURT:  Having filed the claim doesn't the jury

21   trial right as to breach go away?

22        MR. MCELWEE:  If the case comes here it does.  Not if

23   it stays in state court.

24        THE COURT:  Well, but the case is here because the

25   claim is filed.

43

1          MR. MCELWEE:  Excuse me, Your Honor?

2          THE COURT:  But the issue is here because the claim

3    is filed.  The claim of breach.

4          MR. MCELWEE:  There is a claim here and the question

5    then is whether the Court will allow the case to be adjudicated

6    in Michigan --

7          THE COURT:  But all I'm saying on the jury trial

8    point, having filed a proof of claim here, I can try the case,

9    right?  I can try the breach of contract case asserted in the

10   proof of claim?

11         MR. MCELWEE:  If there is an objection made on the

12   basis that the contract is unenforceable or that we breached

13   the warranty, that's correct.

14         THE COURT:  Okay.  Okay.

15         MR. MCELWEE:  So, essentially, our argument, Your

16   Honor, is that if you look at what Delphi offered to justify

17   presenting the case here even if it's not properly filed here,

18   is that it gets to adjudicate its twenty-five million dollar

19   claim under the Court's December 6th, 2006 procedural order

20   which is an order that limits the parties to one hour each and

21   to not calling parties --

22         THE COURT:  But you know it doesn't do that.  You've

23   read the --

24         MR. MCELWEE:  I would presume not.  But if you look

25   at their papers, there's no other justification for their

44

1    motion.

2            THE COURT:  Well, I assume at the meet and confer you

3    discussed, as paragraph K on page 14 of the procedures makes it

4    very clear you're supposed to, modifications to deal with the

5    specifics of the claim.  I assume you discussed that at the

6    meet and confer session.

7            MR. MCELWEE:  Well, that's correct.  I think the two-

8    hour hearing is plenty fine to adjudicate the original books

9    and records objection that they made.  It's not adequate to

10   deal with their twenty-five million dollar counterclaim.

11   That's our point.

12           THE COURT:  Well, is it adequate to deal with the

13   breach claim that your client asserted?

14           MR. MCELWEE:  Clearly not.  And if they were to

15   present an objection to the claim outside the context of the

16   third omnibus objection, the Court would have to deal with that

17   question.  But the third omnibus objection was only a books and

18   records objection.  It was not an objection to the substance of

19   the claim.

20           THE COURT:  You don't think you've had adequate

21   notice of the basis for their objection?

22           MR. MCELWEE:  They have indicated in their

23   description of the issues they intend to present, they intend

24   to present those breach of claims to the Court.  They've also

25   indicated clearly they want them resolved under the two-hour

45

1    limitation under the December 6th order.

2            THE COURT:  Is that right, Mr. Berger?

3            MR. BERGER:  Your Honor, in fact we have discussed

4    paragraph 9(k) of the procedures order and a proposed

5    modification of the discovery, time before Your Honor, number

6    of witnesses, confirmed to Furukawa that if depositions need to

7    happen in Michigan we'll do depositions in Michigan.  Documents

8    have already been passed back and forth.  All we're talking

9    about happening here is what Your Honor has observed, is a

10   trial on the breach issue.  We're fully willing to be

11   accommodative on those other issues.

12           THE COURT:  Have you discussed the mediation that's

13   contemplated by the procedures order?

14           MR. BERGER:  Not yet, Your Honor.  I'm going to be

15   careful about how I describe negotiations other than to say

16   that we were approaching that issue and haven't had response to

17   that.

18           THE COURT:  Am I right that from the papers that

19   that's a first step in the -- if the matter were to be brought

20   to Michigan, mediation is a first step?

21           MR. BERGER:  Absolutely, yes, Your Honor.

22           THE COURT:  Okay.  All right.  I guess I don't

23   understand why this isn't just a delay tactic.

24           MR. BERGER:  Again, I'm having a hard time hearing

25   you.

46

1        THE COURT:  I don't understand why this motion by

2   Furukawa isn't just a delay tactic.  You're -- it seems to me

3   you're on full notice of the claim objection.  The claim

4   objection procedures contemplate -- and if the debtor for some

5   reason doesn't live up to them you can come back to the court

6   and say they're not living up to them -- adjustments to deal

7   with the particular aspects of the litigation that may require

8   more than the streamlined procedures that generally apply.  And

9   the order provides for the very type of mediation that would be

10  the first step in the place where you want to go.  And you're

11  wanting to put that off.  I don't -- why isn't this just a

12  delay tactic?

13        MR. MCELWEE:  Because the case in the state court was

14  pending for eleven months before the bankruptcy filed --

15        THE COURT:  And what's happened in it?  Have they had

16  the mediation?

17        MR. MCELWEE:  We have not had mediation yet in state

18  court --

19        THE COURT:  Have they had any discovery?

20        MR. MCELWEE:  Yes.  We're completed with written

21  discovery, interrogatories --

22        THE COURT:  Have you asserted the counterclaim?

23        MR. MCELWEE:  We couldn't assert the counterclaim

24  because of the automatic stay.

25        THE COURT:  And you've had any -- what fact discovery

VERITEXT/NEW YORK REPORTING COMPANY
212-267-6868                                      516-608-2400

47

1   have you had?

2            MR. MCELWEE:  Excuse me, Your Honor?

3            THE COURT:  What fact discovery have you had?

4            MR. MCELWEE:  We've completed all of the written

5   discovery, interrogatories have been exchanged, document

6   requests have been exchanged, we're tying up the last details

7   about the exchanging of certain engineering reports that are

8   important to the outcome of the case.  And we're ready to start

9   depositions.

10            THE COURT:  Has the court had any involvement in the

11  matter?

12            MR. MCELWEE:  The court has had involvement.  I'm not

13  sure exactly what the court means.  But the court has entered a

14  pre-trial order.  It's established deadlines.  The parties have

15  agreed to extend those deadlines from time to time.  The courts

16  have sort of --

17            THE COURT:  So it's been pending for how long?

18            MR. MCELWEE:  It's been pending since, I think, late

19  October of 2005.

20            THE COURT:  Has there been any activity since the

21  petition date?

22            MR. MCELWEE:  Very little since the petition date.

23  The case has been consistently adjourned since the petition

24  date because Delphi represented at the parties that it was too

25  busy with its reorganization to attend the case.

48

1          THE COURT:  Well, why would it be going forward in

2     any event given the automatic stay?

3          MR. MCELWEE:  Well, it is an affirmative claim filed

4     by Delphi in state court.  There isn't any automatic stay that

5     prevents the case from going forward.

6          THE COURT:  It was pre-petition.

7          MR. MCELWEE:  Excuse me, Your Honor?

8          THE COURT:  It's pre-petition but there's been no --

9     there's been very little activity since the petition date, you

10    say?

11         MR. MCELWEE:  It's been adjourned several times since

12    the petition date because Delphi has told us they don't have

13    the time to attend to the case because they're so busy with

14    their reorganization.

15         THE COURT:  Okay.  And there's been no counterclaim

16    asserted?

17         MR. MCELWEE:  No.  The counterclaim was asserted by

18    way of a proof of claim filed in this case.

19         THE COURT:  How could you have completed document

20    discovery if you haven't asserted the counterclaim?

21         MR. MCELWEE:  Because we're producing and discovering

22    documents related to Delphi's affirmative claims against

23    Furukawa.

24         THE COURT:  Okay.

25         MR. MCELWEE:  That's really all I have, Your Honor.

49

1           THE COURT:  Okay.

2           MR. MCELWEE:  Thank you.

3           MR. BERGER:  Your Honor, I'll be very brief.  The

4    reason that our omnibus claim objection was a books and records

5    objection is that we didn't have anything on record as an

6    obligation to Furukawa.  Furukawa never filed a counterclaim in

7    the state court action.  It filed its counterclaim by way of

8    the proof of claim.  I think as Your Honor has observed from

9    our papers and from the comments I hear today, there is, from

10   the debtor's opinion, no way to adjudicate the claim objection

11   without consideration of Delphi's defense, which Furukawa must

12   have anticipated to have been our affirmative claim against

13   Furukawa.

14           The action was stayed.  It did not proceed.  The

15   debtors chose instead to challenge the Furukawa claim as part

16   of the claim objection process.  I think what Mr. McElwee is

17   trying to articulate to Your Honor is that a part of what I

18   represented to the Court the last time I was here is that we

19   worked through the Memorial Day weekend to get through

20   confidentiality issues pertaining to certain engineering

21   reports.  We've agreed to confidentiality.  We provided those

22   engineering reports to Furukawa.  That's the document

23   production that's been going on.  We heard nothing since two

24   days after that weekend.

25           THE COURT:  I'm sorry.  So the document production

50

1   was

2           MR. BERGER:  In connection with the claim objection

3   proc --

4           THE COURT:  -- in connection with this claim

5   objection not the

6           MR. BERGER:  Here, Your Honor.

7           THE COURT:  -- Michigan action?

8           MR. BERGER:  Yes.

9           THE COURT:  Is that right?

10          MR. MCELWEE:  No.  We asked for the -- they're called

11  (indiscernible) reports.  We asked for both of those reports in

12  our state court discovery.  Delphi consistently indicated that

13  they refused to supply the report because they were

14  confidential.  We agreed to a protective order in the state

15  court case to facilitate the production of those reports.  They

16  still weren't produced.  So then we engaged in lengthy

17  negotiations with Delphi to get the documents produced.  But I

18  was operating under the assumption given that lengthy history

19  that those documents were produced in the context of the state

20  court case not in the bankruptcy case.

21          THE COURT:  Notwithstanding the discussions that

22  resolved this were done as a result of the meet and confer

23  sessions under the claims procedure order?

24          MR. MCELWEE:  We did have meetings under the claims

25  procedure order, that's correct.

51

1          THE COURT:  Okay.

2          MR. MCELWEE:  The parties then conferred as part of

3     the --

4          MR. BERGER:  Your Honor, I have nothing left to

5     address concerning statements that Mr. McElwee said.  I think

6     our papers are clear.  We think this is a core proceeding.  We

7     don't think that there's any basis for abstention.  There's no

8     basis for relief from the automatic stay.  If we need to, we

9     will confront abstention issues in connection with removal or

10    counterclaims under 157(b)(2)(C).  But I did want to finish my

11    statement by referring to the agreement of confidentiality.  We

12    produced those documents two days after that holiday weekend.

13    We heard nothing in exchange until forty-eight hours ago.  And

14    we got a letter from Mr. McElwee for the first time identifying

15    eight witnesses.  So we've joined in Your Honor's observation

16    that, at least from the debtors' perspective, this is just

17    sidewise movement.  We'd like to move forward, agree on a

18    discovery schedule, take depositions wherever it's convenient

19    for the parties and then come back to Your Honor and have this

20    claim resolved.

21         THE COURT:  Okay.  Well, when you say this claim, let

22    me make sure I understand that.  When you say this claim, you

23    mean the claim that Furukawa has filed?

24         MR. BERGER:  Yes, Your Honor.  But as part of that,

25    Your Honor, we think, would have to consider the affirmative

52

1    claim asserted by Delphi against Furukawa.  I understand the

2    procedural issue whether or not, not that I doubt that, in the

3    context of a claim objection process Your Honor could be asked

4    to enter a judgment for an affirmative monetary recovery

5    against Furukawa.

6              THE COURT:  Well, you can join the objection.  You

7    could --

8              MR. BERGER:  I could.

9              THE COURT:  You could with the demand for relief, you

10   know, affirmative demand for relief.  But that hasn't been done

11   yet, I gather.

12             MR. BERGER:  It has not been yet but I think that it

13   could happen and one of the things we would obviously explore

14   is 157(b)(2)(C) which expressly provides that counterclaims by

15   the debtor against parties that file claims in the estate can

16   be considered to be core.  But we're not there yet, Your Honor.

17   We're in a claim objection process.

18             THE COURT:  Okay.  So right now, the process you're

19   dealing with is one where you, simply, on the merits or through

20   a settlement, want to defeat the proof of claim that's been

21   filed for breach?

22             MR. BERGER:  That's right.

23             THE COURT:  You're reserving your rights as to

24   whether that may at some point translate through res judicata

25   or collateral estoppel or some other preclusive doctrine on the

53

1 | merits --

2 |        MR. BERGER:  Correct, Judge.

3 |        THE COURT:  -- of the affirmative relief that you

4 | think that you may be entitled to.

5 |        MR. BERGER:  That's correct, Judge.

6 |        THE COURT:  And you're reserving your rights whether

7 | you want to join a request for affirmative relief with the

8 | claim objection?

9 |        MR. BERGER:  That is correct, as well, Your Honor.

10 |        THE COURT:  Okay.

11 |        MR. MCELWEE:  Can I make just one additional

12 | comment -- well, actually, two, Your Honor?

13 |        THE COURT:  Yes.  Sure.

14 |        MR. MCELWEE:  First of all, I hope the Court

15 | understands that Delphi's papers are full of representations

16 | that it is now pressing the twenty-five million dollar claim as

17 | part of this case.

18 |        THE COURT:  I didn't see that.

19 |        MR. MCELWEE:  If that's not true, then that's fine.

20 |        THE COURT:  I just didn't see that.  I really don't

21 | see it in their papers.  In any event, it's not.

22 |        MR. MCELWEE:  The other issue we are now going to

23 | have two cases involving the same substantive breach argument,

24 | one pending in New York and one pending in Michigan which is

25 | going to involve a res judicata.  The question is which court

54

1    is going to get to a judgment first and therefore which court's

2    judgment will be res judicata from the other -- there are lots

3    of comity reasons why that kind of proceeding is not favored

4    under American law.

5              THE COURT:  Well, you don't believe that your claim

6    is a compulsory counterclaim for breach?

7              MR. MCELWEE:  Not under Michigan's purpose --

8              THE COURT:  No?  Okay.  All right.  I have a motion

9    before me by Furukawa Electric North America APD. and Furukawa

10   Electric Company Ltd. for abstention on both a mandatory and

11   alternatively a discretionary basis.  And in addition, for

12   relief from the automatic stay for cause under Section

13   362(d)(1) to permit Furukawa to be sued in a pre-petition state

14   court action and, I gather, to permit Furukawa to raise a

15   counterclaim in that action.  And finally, for an order

16   "limiting the scope of the claim objection hearing" scheduled

17   by the debtors previously in the case.

18             The movant Furukawa appears at oral argument to have

19   abandoned its claim that mandatory abstention is required here

20   under 28 U.S.C. Section 1334(c)(2) but in any event, to be

21   clear, it's not required here because the claim objection is an

22   objection to a filed proof of claim by Furukawa of the two

23   Furukawa entities in this case and as a result, under 28 U.S.C.

24   157(b)(2), that matter, that claim objection is a core matter

25   arising under the Bankruptcy Code and under well-established

55

1   case law that fact precludes mandatory abstention.

2        Furukawa argued that it should be relieved of that

3   result because it filed its proof of claim as a consequence of

4   the bar date and would otherwise be precluded from filing its

5   breach of contract claim.  But that argument is unavailing in

6   light of clear second circuit precedent, including In re S.G.

7   Philips Constructor's, Inc., 45 F.3d 702 (2d Cir. 1995).

8        A clear example of how the filing of the proof of

9   claim changes the abstention analysis can be found in In re

10   Asousa Partnership, A-S-O-U-S-A, 276 BR 55 (Bankruptcy ED

11   Pennsylvania 2002) in which there had been a pre-petition state

12   court law suit based on state court causes of action brought by

13   the debtor.  The bankruptcy court consequently abstained.

14   Thereafter, in response to a bar date order, the defendant in

15   that action filed a proof of claim arising out of the same

16   facts and the Court determined because the objection to the

17   proof of claim was a core matter, and indeed the counterclaim

18   was a core matter, that is, the original claim brought by the

19   debtor and now a counterclaim to the proof of claim brought by

20   the debtor was a core matter under 28 U.S.C. 157(b)(3) that it

21   would not abstain as to the adjudication of the claim objection

22   and the related counterclaim.

23        There is an alternative reason for denying the

24   request for mandatory abstention is that is I did not believe

25   that the request is timely made given that the litigation in

56

1   the state court has been proceeding for well over a year.  But

2   more importantly, that as did the claimant in S.G. Philips,

3   Furukuwa here did not seek either state relief or abstention

4   until well after the implementation of the claims procedures

5   put in place by my prior order in this case that we're dealing

6   with this its claim.

7          Furukawa also requests discretionary abstention, also

8   under 28 U.S.C. Section 1334.  The Court may exercise its

9   discretion under 1334(c) to abstain on a discretionary basis

10  even in a non-core matter.  However, abstention under Section

11  1334(c)(1) should be used rarely or invoked by the Court

12  rarely, particularly where the proceeding is a core matter.

13  Contrary to Furukawa's suggestion in its surreply papers, Judge

14  Lifland didn't invent that notion in his recent opinion in In

15  re Cow Pine Corporation.  Rather, it's been well-settled under

16  the law of the southern district.  See, for example, In re Rob,

17  139 BR 791 (Bank. S.D.N.Y. 1992).

18         Here where the basis for the request for

19  discretionary abstention under 1334(c)(1) is that there's a

20  pending state court law suit to which Furukawa would join its

21  claim here as a counterclaim.  I have considered the factors

22  laid out by the Courts in determining whether one should

23  permissibly abstain, which are also laid out at Judge Lifland's

24  Cow Pine opinion, 2007 WL 39124 at page 3 (Bank. S.D.N.Y.

25  2007).  And I concluded that those factors do not support

57

1    permissive abstention.  Obviously, the debtor has to deal with

2    the claims process here in its case.  The Court has previously

3    on notice to all claimants adopted claims management procedures

4    to permit the efficient yet fair liquidation of claims asserted

5    against the estate, including Furukawa's claim which is in

6    excess of 2.5 million dollars.

7          And so, therefore, as far as the affect on the estate

8    and the efficient administration of the estate, consistent with

9    this matter being a core proceeding, the bankruptcy court is

10   the proper court for the liquidation of Furukawa's claim.

11         Moreover, other considerations do not support

12   abstaining in light of the action pending in Michigan state

13   court.  First, the Michigan action and its flip side, the claim

14   here, do not appear to turn on state law issues that are

15   unsettled as opposed to state law issues that involve the

16   interpretation of contracts and weighing disputed factual

17   assertions as to breach.  The Courts in this circuit have

18   focused on the unsettled nature of state law as a primary

19   reason for it deferring to a pending state court action under

20   1334(c)(1).  See In re Pan Am Corporation, 950 F.2d 839 (2d

21   Cir. 1991).

22         I do not believe that trying the claim objection will

23   unduly burden the Court's docket.  The question of whether the

24   issue of burden is particularly appropriate for me to consider

25   in the first place given that this is a core matter, given that

58

1    Furukawa filed a proof of claim here, the claim objection can

2    be tried without a jury.

3          And finally, it does not appear to me that the state

4    court action has progressed in any meaningful way and that the

5    only real breakthrough in connection with document exchange

6    occurred as a result of the meet and confer procedures

7    contemplated by my claims management order.  I'll also note

8    that that order contemplates, for a claim of this size,

9    mandatory non-binding mediation before trial of the action

10   which is also contemplated under Michigan law.  It's clear to

11   me that that mediation would occur promptly here and that if

12   there's any sense of forum shopping, I believe it's on

13   Furukawa's part.  Not so much forum shopping but in a sense of

14   desiring to delay both mediation and trial which I believe

15   would ensue as a result of abstention.

16         I also note that Furukawa has presented no evidence

17   that the Michigan action would proceed expeditiously and would

18   determine its counterclaim, its claim here and it's clear there

19   would be a counterclaim in the Michigan action.  And it's its

20   burden to do so under Section 1334.

21         So for those reasons, I'll deny the motion to abstain

22   either on a mandatory or permissive basis.

23         As far as the request for limiting the scope of the

24   debtors' claim objection, the request, I think, falls into two

25   categories.  The first, I think, was dealt with at oral

59

1  argument but let me reiterate.  The procedural posture of the

2  claim objection at this point is that it is just that, a claim

3  objection.  It may end up having a preclusive affect if tried

4  and decided against either party in respect of any affirmative

5  recovery that the debtor would seek from Furukawa.  But at this

6  point it is simply a claim objection.  The debtor has the

7  option of joining in that claim objection a request for

8  affirmative relief similar to their request that it made of the

9  Michigan court pre-petition.  But I don't believe it has done

10  that yet.  If and when it does that, under Rule 3007, that

11  triggers the adversary proceeding rules.

12        Frankly, given the nature of this claim objection

13  itself, I believe and I believe the record on the claim

14  objection procedures motion and the order that ensued from that

15  made this clear as well, that order contemplates that the

16  parties will meet and confer in light of the nature of the

17  objection and the nature of the proof that would be required in

18  the claim objection litigation to modify the discovery and

19  trial procedures laid out in the claim procedures motion -- I'm

20  sorry, the claim procedures order as set forth in paragraph

21  9(k).  And that if that exercise were conducted in good faith,

22  the adversary rules would in essence be followed in any event.

23  And if there was no agreement, the parties under the claim

24  objection procedures order could come back to me as well as

25  they can assert rule 3007.

60

1  The fact that there is a pending state court

2  litigation brought by Delphi has been suggested by Furukawa to

3  mean that there will be a potential for dual track litigation,

4  inefficiency and ultimately contradictory court rulings.  I

5  don't believe that is the case.  As I noted, Furukawa has yet

6  to assert its counterclaim in the state court litigation.  It

7  seeks relief from the automatic stay here to do so.  And it's

8  hard for me to see that litigation proceeding without that

9  counterclaim being asserted.

10  Moreover, given the exigencies of this bankruptcy

11  case, which is on a relatively fast track at this point, and

12  the creditors' concern in negotiating the framework for a plan

13  on the prompt liquidation of claims and even the liquidation of

14  claims so that they -- the allowed claims fall within a certain

15  threshold number, it appears likely to me that either the

16  debtor will succeed in withdrawing or staying the Michigan

17  action or withdrawing it without prejudice in light of the

18  process here or that this process will be completed first.

19  In that regard, I do not see a basis on the record

20  before me for lifting the automatic stay to permit Furukawa to

21  raise its counterclaims in litigation in Michigan that the

22  debtor is not pursuing.  And I do that for the same reasons

23  that I denied permissive abstention which overlap with the

24  Sonax factors.

25  So, Mr. Berger, you can submit an order denying the

VERITEXT/NEW YORK REPORTING COMPANY
212-267-6868                                  516-608-2400

61

1    motion for those reasons.

2              Okay.  So this leaves the omnibus objection?

3              MR. BUTLER:  Yes, Your Honor.  There are two omnibus

4    objections to deal with in connection with the remaining

5    matters on the agenda.  The first of those is matter number 9,

6    the sixteenth omnibus claims objection filed at docket number

7    8271.  This related to twenty-six claims.  They're either

8    duplicative of other claims or have been amended or superseded

9    by later filed claims or protective in nature.

10             With respect to these claims, Your Honor, the debtors

11   received five timely filed formal responses which covers twenty

12   of the twenty-six claims as a result under the protocol we've

13   been using with respect to these omnibus claims objections.

14   Today we're seeking relief only with respect to the uncontested

15   claims.  Those involve six claims asserting liquidated claims

16   of approximately 1.2 million and we are prepared to adjourn the

17   hearing with respect to the twenty claims covered by the five

18   response and put those on the claims track.  We filed an

19   omnibus reply with respect to -- and have the charts indicating

20   where those are and I've submitted a proposed order to Your

21   Honor.

22             THE COURT:  Okay.  Does anyone have anything to say

23   in respect of the sixteenth omnibus claim objection as

24   modified?  That is, the relief that's being sought today.

25   Okay, in light of the fact that the debtors are just going