**Hearing Date And Time: October 21, 2010 at 10:00 a.m. (prevailing Eastern time)**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
155 North Wacker Drive
Chicago, Illinois 60606
John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036

Attorneys for DPH Holdings Corp., et al.,
   Reorganized Debtors

DPH Holdings Corp. Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

DPH Holdings Corp. Legal Information Website:
http://www.dphholdingsdocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
|  |  |  |
|---|---|---|
|  | : |  |
| In re | : | Chapter 11 |
|  | : |  |
| DPH HOLDINGS CORP., et al., | : | Case No. 05-44481 (RDD) |
|  | : |  |
|  | : | (Jointly Administered) |
| Reorganized Debtors. | : |  |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

REORGANIZED DEBTORS' OMNIBUS (I) REPLY TO FKMT, LLC F/K/A MONARCH TRANSPORT, LLC'S RESPONSE TO REORGANIZED DEBTORS' MOTION FOR AN ORDER TO ENFORCE MODIFIED PLAN AND MODIFICATION APPROVAL ORDER INJUNCTION AGAINST FKMT, LLC F/K/A MONARCH TRANSPORT, LLC (DOCKET NO. 20445) AND (II) OBJECTION TO FKMT, LLC F/K/A MONARCH TRANSPORT, LLC'S (A) MOTION TO LIFT PLAN INJUNCTION (DOCKET NO. 20444) AND (B) MOTION FOR DECLARATION THAT THE ADMINISTRATIVE EXPENSE CLAIMS BAR DATE DOES NOT APPLY (DOCKET NO. 20482)

DPH Holdings Corp. ("DPH Holdings") and certain of its affiliated reorganized debtors in the above-captioned cases (together with DPH Holdings, the "Reorganized Debtors") hereby submit this omnibus (i) reply to the Response of FKMT, LLC (f/k/a Monarch Transport, LLC) (Docket No. 20445) in support of the Reorganized Debtors' motion to enforce the Plan Injunction against FKMT, LLC (f/k/a Monarch Transport, LLC) (Docket No. 20364) (the "Reorganized Debtors' Motion to Enforce Plan Injunction")[1] and (ii) objection to FKMT, LLC's (a) Motion To Lift The Injunction Contained In The Modification Approval Order And Modified Plan (Docket No. 20444) (the "Motion to Lift Plan Injunction") and (b) Motion For Declaration That The Administrative Expense Bar Date Does Not Apply (Docket No. 20482) (the "Motion for Declaration") and respectfully represent as follows:

<u>Preliminary Statement</u>

1.      The Reorganized Debtors' Motion seeks to enforce the Plan Injunction against FKMT—and does not seek to adjudicate at this time the merits of the claims FKMT has asserted in the Missouri Action.  FKMT[2] challenges the Reorganized Debtors' Motion to Enforce Plan Injunction because it asserts that:

- The Debtors failed to provide FKMT with any of the required notices of the bankruptcy, including the notice of the July 15, 2009 deadline for filing a proof of administrative expense for the period from the commencement of these chapter 11 cases through May 31, 2009 (the "First Administrative Expense Bar Date Notice") and the Effective Date Notice,

---

[1]     Capitalized terms used and not otherwise defined herein have the meanings ascribed to them in the Reorganized Debtors' Motion to Enforce Plan Injunction.

[2]     Contrary to every pleading filed by counsel for FKMT in the Missouri Action, counsel now asserts that this Response has been filed "pro se" by counsel as "an authorized representative for FKMT, LLC f/k/a Monarch Transport, LLC."  (Response ¶ 1.)  Mr. Renkemeyer is a licensed attorney and is not representing himself in this matter, but rather FKMT.  The Reorganized Debtors do not speculate as to Mr. Renkenmeyer's motives for his recent "pro se" filings, but note that federal courts widely recognize that a corporation may not proceed pro se. See Jones v. Niagara Frontier Transp. Auth., 722 F.2d 20, 22 (2d Cir. 1983) ("it is established that a corporation, which is an artificial entity that can only act through agents, cannot proceed pro se").

- The Debtors waived their right to rely on the Plan Injunction;[3] and
- 11 U.S.C. § 503(b) is inapplicable to FKMT's unpaid shipping invoices and therefore FKMT's claims are not subject to this Court's orders establishing the First Administrative Expense Bar Date and Final Administrative Expense Bar Date. (Response ¶¶ 10, 17, 20.)  The same assertions are repeated in FKMT's Motion to Lift Plan Injunction and Motion for Declaration.  (See Motion to Lift Plan Injunction ¶¶ 10, 17, 18, 20; Motion for Declaration ¶ 1.)  FKMT's Motion for Declaration also requests, as alternative relief, that FKMT be granted leave to file an administrative expense claim.  (Motion for Declaration ¶ 2.)

2.    These assertions are incorrect for the following reasons, which are set forth in

more detail below:

- The Debtors provided FKMT with adequate service of each applicable notice in accordance with Bankruptcy Rule 2002(g)(2) and at the notice address set forth in the applicable July 19, 2004 Master Transportation Agreement between Delphi Automotive Systems LLC and FKMT, which is the operative agreement between the parties;
- The Debtors have not waived any rights (express or implied) with respect to relying on orders of this Court or the Plan Injunction, including without limitation any provision of the Modified Plan or Modification Approval Order and in fact absent an explicit filing with this Court disclosing such waiver, FKMT was deemed to have waived its right to argue such a waiver, as explicitly set forth in Article 14.11 of the Modified Plan; and
- FKMT's assertion that requests for payment of shipping invoices exempt FKMT from this Court's bar dates because shipping services are not administrative expenses is without merit as a matter of law—as it was without merit when FKMT first advanced this argument six months ago.  (See Reorganized Debtors' Motion to Enforce Plan Injunction at Exh. G.)  After asserting this Court's bar dates do not apply, FKMT fails to present any reason for why its failure to file a timely Administrative Claim should be excused or otherwise ignored.  (See Motion for Declaration ¶ 2.)

3.    For the reasons set forth below and in the Reorganized Debtors' Motion to

Enforce Plan Injunction, FKMT's Response must be overruled and its Motion to Lift Plan

Injunction and Motion for Declaration should both be denied.

---

[3]    Based on FKMT's broad interpretation of statements in pleadings in the Missouri Action, which interpretation is disputed by the Reorganized Debtors, FKMT asserts that the Debtors have waived their right to rely on the Plan Injunction.

<u>Background</u>

4.        By way of background, the following chart summarizes certain key dates in the

Reorganized Debtors' dispute with FKMT:

| Date | Event/Summary |
|------|---------------|
| 7/19/2004 | • **Master Transportation Agreement**: Delphi Automotive Systems LLC and Monarch Transport, LLC enter into Master Transportation Agreement, describing Monarch Transport, LLC as "a Kansas limited liability company with principal business offices at 1616 Argentine Blvd., Kansas City, KS 66105." The Master Transportation Agreement also contains a notice provision requiring notices to be sent to this address. |
| 10/8/2005; 10/14/2005 | • **Petition Dates**: Delphi Corporation and certain of its subsidiaries and affiliates, including Delphi Automotive Systems LLC filed voluntary petitions in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as then amended (the "Bankruptcy Code"). |
| 10/12/2005 | • **Letter Agreement with Monarch Transportation**: Letter Agreement executed between the Debtors and Monarch Transport, LLC to pay 90% of Monarch Transport, LLC's estimated prepetition trade claim on a provisional basis pursuant to the Order Under 11 U.S.C. §§ 105(a), 363(b), 1107, And 1108 Authorizing Payment Of Certain Prepetition (I) Shipping And Delivery Charges For Goods In Transit And (II) Customs Duties (Docket No. 202). |
| 2/17/2006 | • **Reconciliation Payment Letter Agreement**: Letter Agreement executed between the Debtors and Monarch Transport, LLC "in full and final settlement" of the prepetition trade claim. |
| 4/20/2006 | • **Bar Date Notice Served (Docket No. 3501)**: Monarch Transport, LLC served with three copies of the Bar Date Notice, notifying Monarch Transport, LLC of the July 31, 2006 Bar Date, which was served at 1616 Argentine Boulevard, Kansas City, KS 66105 and P.O. Box 413231, Kansas City, MO 64141-323. |
| 11/30/2007 | • **Monarch Transport, LLC sale to Osage Holdings, L.L.C.**: Monarch Transport, LLC sold the majority of its assets, including the company name, and changed its name to FKMT, LLC; however, FKMT retained the outstanding account receivables. |
| 12/1/2008 | • **FKMT's Nonbankruptcy Complaint**: Filed in Circuit Court of Jackson County, Missouri, Civil Division, Case No. 0816-CV39025, seeking to collect on receivables allegedly owed by Delphi Corporation in connection with unpaid invoices that became due between May 2004 and September 2007. |
| 4/18/2009 | • **Delphi's Nonbankruptcy Answer**: Delphi files its Answer to FKMT's Nonbankruptcy Complaint in the Missouri Circuit Court. |
| 6/20/2009 | • **First Administrative Expense Bar Date Notice Served (Docket No. 17267)**: Established July 15, 2009 as the deadline for filing a proof of administrative expense for the purpose of asserting an administrative expense request against any of the Debtors under 11 U.S.C. § 503(b) for the period from the commencement of these chapter 11 cases through May 31, 2009 First Administrative Claim Bar Date. FKMT served with three copies of the First Administrative Expense Bar Date Notice, notifying FKMT of the First Administrative Claim Bar Date, which was served at 1616 Argentine Boulevard, Kansas City, KS 66105 and P.O. Box 413231, Kansas City, MO 64141-323. |
| 10/6/2009 | • **Effective Date**: The Debtors substantially consummated the Modified Plan and closed the transactions under the Master Disposition Agreement and the Reorganized Debtors emerged from chapter 11. |

| 10/9/2009 | • **Effective Date Notice Served (Docket No. 18978)**: FKMT served with a copy of the Effective Date Notice (at the addresses set forth in the creditor matrix and the Master Transportation Agreement), which, among other things, provided notice of the Final Administrative Expense Bar Date and notice of the Plan Injunction. FKMT served with three copies of the Effective Date Notice, notifying Monarch Transport, LLC of the Final Administrative Claim Bar Date, which was served at 1616 Argentine Boulevard, Kansas City, KS 66105 and P.O. Box 413231, Kansas City, MO 64141-323. |
|---|---|
| 6/23/2010 | • **Letter Requesting that FKMT Dismiss Nonbankruptcy Complaint**: Local counsel to the Reorganized Debtors in the Missouri Action sent a letter to counsel for FKMT describing the relevant provisions of the Modified Plan and the Modification Approval Order, explaining why the Missouri Action violated those provisions, and demanding that DPH Holdings be dismissed from the Missouri Action with prejudice. |
| 6/25/2010 | • **DPH Holdings' Nonbankruptcy Motion to Stay**: DPH Holdings filed its Motion to Stay on the grounds that the claims asserted in the Nonbankruptcy Complaint were discharged and enjoined pursuant to the Modification Approval Order and the Modified Plan. |
| 7/2/2010 | • **Reorganized Debtors' Motion to Enforce Plan Injunction**: Reorganized Debtors filed their Motion to Enforce Plan Injunction with this Court. |
| 7/17/2010 | • **Missouri Court grants Nonbankruptcy Motion to Stay**: Missouri Court grants the relief requested in DPH Holdings' Nonbankruptcy Motion to Stay. The order granting such relief is attached as <u>Exhibit A</u>. |

<u>Argument</u>

A.    <u>FKMT Received Adequate Notice Of The Bar Dates And The Plan Injunction</u>

5.    FKMT asserts that it "was not in a reasonable position to seek information []
related to the bankruptcy proceedings" and that the Debtors "failed to provide FKMT actual
notice of the bankruptcy proceedings at any time." (Response ¶¶ 13-14.) This assertion is false.
Indeed, FKMT's Response impeaches that very statement. Specifically, FKMT states that did
receive notices related to the bankruptcy proceeding "sent on or before April 12, 2006 . . .
notifying [FKMT] of the initial filing by Delphi for bankruptcy in this Court." (Response ¶ 10;
Motion to Lift Plan Injunction ¶ 10.) Further contradicting FKMT's assertion, FKMT's
predecessor, Monarch Transport LLC, entered into a letter agreement with the Debtors to pay
90% of Monarch Transport, LLC's estimated prepetition trade claim on October 12, 2005 on a
provisional basis (the "Letter Agreement"). A copy of the Letter Agreement is attached hereto as
<u>Exhibit B</u>. The Letter Agreement was executed by Scott Crader, Mr. Renkenmeyer's former
business partner at Monarch Transport LLC, after (and on account of) the Debtors' chapter 11
filings and was "subject to reconciliation with [FKMT's] books and records."

6.       On February 17, 2006, following the reconciliation of the Debtors' books and records with FKMT's books and records, FKMT entered into a release agreement (the "Release Agreement") whereby FKMT agreed that it "no longer had any prepetition amounts owing to you and that you will forever waive any and all claims, rights or causes of action related to such prepetition amounts."  A copy of the Release Agreement is attached hereto as <u>Exhibit C</u>.  Both the Letter Agreement and the Release Agreement were signed by Scott Crader, Mr. Renkenmeyer's former business partner.  (<u>See</u> Response In Opposition To Motion For Summary Judgment, Exh. B, Aff. of Rozalyn R. Burns ¶ 8.)  A copy of the Rozalyn R. Burns Affidavit is attached hereto as <u>Exhibit D</u>.  Yet FKMT asserts prepetition claims in the action it commenced against the Debtors on December 1, 2008 in Missouri Circuit Court (the "Nonbankruptcy Complaint") that were expressly released by its predecessor in the Release Agreement.  (<u>See</u> Reorganized Debtors' Motion to Enforce Plan Injunction at Exh. A.)

7.       FKMT appears to dispute that the Bar Date Notice was sent to FKMT[4] at the addresses set forth in the paragraph 10 of the Reorganized Debtors' Motion to Enforce Plan Injunction.  (Response ¶ 10; Motion to Lift Plan Injunction ¶ 10.)  FKMT asserts that the only notices related to the bankruptcy proceeding which were sent to FKMT "were the notices sent on or before April 12, 2006 . . . notifying [FKMT] of the initial filing by Delphi for bankruptcy in this Court." (Response ¶ 10; Motion to Lift Plan Injunction ¶ 10.)  The Bar Date Notice was sent to FKMT after the Bar Date Order was entered by this Court.  (Reorganized Debtors' Motion to Enforce Plan Injunction ¶¶ 9-10.)  It is too convenient that FKMT uses the date, April 12, 2006, the date the Bar Date Order was entered, but approximately one week before the Bar Date Notice

---

[4]    FKMT's predecessor, Monarch Transport, LLC, is referred to as FKMT to avoid confusion with the purchaser of Monarch Transport LLC's assets, Osage Holdings, L.L.C., which also purchased the name Monarch Transport, LLC in November 2007 and currently does business under the name Monarch Transport, LLC.

was served.  To be clear, Mr. Renkenmeyer did not sell FKMT's assets to New Monarch until late 2007—more than 18 months after the Bar Date Notice was served.  Mr. Renkemeyer should have known about the Bar Date Notice.  Among other things, his company was still doing business with the Debtors, and the bar date was widely known among Delphi's stakeholders.  In addition, his former business partner and owner of New Monarch, Scott Crader, still occupied the space where the notices were being sent and Mr. Renkenmeyer could easily have arranged for his mail to be forwarded.

8.    On January 20, 2006 and April 18, 2006, the Debtors filed their schedule of liabilities and amended schedule of liabilities (the "Schedules").  Copies of these Schedules are attached hereto as Exhibits E-1 and E-2.  The Schedules listed FKMT's address as follows, in accordance with the Debtors' records:

> Monarch Transport LLC
> P.O. Box 413231
> Kansas City, MO 64141-3231

9.    Contrary to counsel's assertions, FKMT never filed a "formal change of address" with Delphi.  (Response ¶ 7.)  The document FKMT submits as evidence that it requested a formal change of address proves just the opposite; what FKMT submitted was merely an EFT Remit Authorization, and does not operate to change the address where notices are sent under the applicable Master Transportation Agreement or under the law.  A copy of the EFT Remit Authorization is attached as Exhibit F and a copy of the Master Transportation Agreement is attached hereto as Exhibit G.  The Master Transportation Agreement provided the terms and conditions governing FKMT's provision of transportation services to the Debtors.  And paragraph 17 of the Master Transportation Agreement is controlling with respect to notice under the contract.  Specifically, paragraph 17 states:

**17. <u>NOTICES</u>.**  Except as otherwise provided in this Agreement,
all required notices shall be in writing and will be considered given
when delivered personally, express mail courier, or registered or
certified mail, return receipt requested, addressed as follows (or
any other address that is specified in writing by either party):

> Delphi: Delphi Automotive Systems LLC
> 5725 Delphi Drive
> Troy, MI 48098
> Attention: Global Logistics Director
> Mail Code: 483-400-216
>
> Carrier: Monarch Transport, LLC
> 1616 Argentine Blvd.
> Kansas City, KS 66105

10.     Moreover, paragraph 23 of the Master Transportation Agreement contains an

integration clause providing that the agreement and the attached appendices "contain the entire

understanding of the parties" and that any amendment to the agreement must be "signed in

writing by both parties."  (Master Transportation Agreement ¶ 23.)  Accordingly, FKMT did not

comply with the terms of the notice provision contained in the Master Transportation Agreement.

In addition, the EFT Payment Authorization is simply not reasonably sufficient under the

circumstances to alert the Debtors or this Court's notice agent, Kurtzman Carson Consultants

LLC, of the change of name and address.  Therefore, submitting the EFT Payment Authorization

could not have possibly obviated FKMT's need to take the simple, but necessary, steps so that

mail sent to 1616 Argentine Boulevard, Kansas City, KS 66105 was forwarded to Mr.

Renkenmeyer at his new address.

11.     Indeed, the Notices were sent to Monarch Transport, LLC's business address at

1616 Argentine Boulevard, Kansas City, KS 66105 (as reflected in the Debtors' creditor matrix

and the address specified in the Master Transportation Agreement) and to P.O. Box 413231,

Kansas City, MO 64141-3231 (the address reflected in the Debtors' Schedules).  Although

FKMT disputes that certain Notices were received by FKMT, elsewhere in its pleadings FKMT acknowledges that the Notices in question were sent to the business address set forth in the Master Transportation Agreement. (Response ¶ 12; Motion to Lift Plan Injunction ¶ 12.)

12.    Not only did FKMT fail to comply with the notice provision, but it also did not satisfy Bankruptcy Rule 2002's requirement for changing a mailing address. Specifically, Bankruptcy Rule 2002(g) provides that "if a creditor . . . has not filed a request designating a mailing address under Rule 2002(g)(1) or Rule 5003(e), the notices shall be mailed to the address shown on the list of creditors or schedule of liabilities, whichever is filed later. See Fed. R. Bankr. P. 2002(g)(2); see also Charles Borden v. Brunswick Baptist Church (In re Brunswick Baptist Church), 2007 WL 160749, *4 (N.D.N.Y. Jan. 16, 2007) (debtor not required to send bar date notice to known counsel of parties-in-interest when counsel did not file notice of appearance with bankruptcy court until "over two months after the deadline for filing proofs of claim.") As set forth in the Reorganized Debtors' Motion to Enforce Plan Injunction, each bar date notice was sent to the address listed on the Debtors' Schedules. FKMT never filed a notice of appearance or a proof of claim in these chapter 11 cases or contacted KCC to request that notices be sent to an address other than the address set forth in the Debtors' creditor matrix and schedules. Therefore, the Debtors fully met their obligations under Bankruptcy Rule 2002(g)(2) to serve FKMT with a copy of the bar date notice, notwithstanding FKMT's protestations to the contrary. FKMT was properly served with the Notices at the addresses, addressed to the entities, as set forth on the Debtors' Schedules.

13.    The Reorganized Debtors complied with their noticing obligations as set forth under the Master Transportation Agreement and Bankruptcy Rule 2002 by sending copies of the Notices, including the Effective Date Notice, to FKMT at the addresses set forth in the Master

Transportation Agreement and listed on the Debtors' Schedules.  Accordingly, the Debtors'

proper mailing of the Notices constitutes effective service, and FKMT's assertions that it never

received the Debtors' Notices should be rejected.[5]

B.    The Reorganized Debtors Have Not Waived The Plan Injunction Or Any Order Of This
      Court

      14.    Notwithstanding the fact that FKMT failed to file the any claim in these chapter

11 cases, FKMT argues that the Reorganized Debtors have waived the right to rely on the Plan

Injunction and this Court's bar dates.  In support of this waiver argument, FKMT argues that

Delphi Corporation's April 16, 2009 Interpleader filed in the Missouri Action specifically

acknowledges that a portion of the invoices asserted in the Missouri Action had not been paid,

and therefore this alleged admission against interest results in the Reorganized Debtors' waiver

of the Plan Injunction and administrative expense bar dates set by this Court.  (Response ¶ 15;

Exh. A.)  This so-called acknowledgement, however, was explicitly subject to "review of

Delphi's books and records."  (Id.)  Moreover, the very correspondence FKMT points to in

reliance of the Debtors' alleged acknowledgment states that "Delphi has no proof that these loads

were ever actually delivered."  (Response at Exh. D.)

      15.    In addition, it is of note that the Reorganized Debtors never represented or

suggested that FKMT did not need to comply with this Court's orders.  Moreover, the section

14.11 of the Modified Plan explicitly states that each holder of a claim was deemed to have

waived, among other things, its right to assert that its claims against the Debtors should be

allowed absent an applicable filing with the Bankruptcy Court.  (Modified Plan § 14.11 (claimant

waives right to assert that claim should be allowed "in a certain amount, in a certain priority . . .

---

[5]    See, e.g., Hagner v. United States, 285 U.S. 427, 430 (1932) ("The rule is well settled that proof that a letter
       properly directed was placed in a post office creates a presumption that it reached its destination in usual time
       and was actually received by the person to whom it was addressed.").

by virtue of an agreement made with the Debtors and/or their counsel, or any other party, if such agreement was not disclosed in this Plan, the Disclosure Statement, or papers filed with the Bankruptcy Court.").) See also  Midland Cogeneration Venture Ltd. P'ship v. Enron Corp. (In re Enron Corp.), 419 F.3d 115, 122-23 (2d Cir. 2005) (holding that where bankruptcy court's bar date order is clear, equities will rarely if ever favor a party who fails to follow the rule). Accordingly, the statements in Delphi's Interpleader cannot and do not constitute a waiver of the Plan Injunction or the administrative expense bar dates.

16.    FKMT also tries to assert in its Response that these statements constitute "gross negligent acts or intentional acts" which could possibly bar the Reorganized Debtors from relying on the Plan Injunction and discharge. (Response ¶ 19.)  In other words, FKMT attempts to take advantage of the carve-out to the exculpation and release provisions contained in the Modified Plan.  Specifically, paragraph 20 of the Modification Approval Order states the exculpation provisions and releases granted pursuant to Article 11 of the Modified Plan does not extend to "any action or omission to the extent that such action or omission is determined in a final order to have constituted intentional fraud or willful misconduct."  (Modification Approval Order ¶ 20.)  Despite these bold allegations, FKMT (a) misstates the applicable standard to be "gross negligence or intentional acts" rather than the actual standard of "intentional fraud or willful misconduct" and (b) has not pleaded facts sufficient to satisfy the "intentional fraud and willful misconduct" qualifier to the exculpation and release provisions contained in paragraph 20 Modification Approval Order.  Bradley v. Rell, No. 1:07-CV-0148, 2010 U.S. Dist. LEXIS 29606, at *13 (N.D.N.Y. Mar. 25, 2010) (claimant must make "'[f]actual allegations . . . enough to raise a right to relief above the speculative level [to a plausible level],' assuming (of course) that all the allegations in the complaint are true." (quoting Bell Atl. Corp. v. Twombly, 550 U.S

544, 555 (2007))).  Regardless, FKMT would bear the burden of establishing a <u>prima facie</u> case

of intentional fraud and willful misconduct.  <u>See</u> <u>In re DPH Holdings Corp.</u>, Hr'g Tr. at 74-75,

Feb. 25, 2010 (Party asserting that discharge and Plan Injunction were not violated by

nonbankruptcy action without first "asking [the Court] whether the injunction's breached or not

[must set] forth a <u>prima facie</u> case on it.")

C.      <u>Payment Of Postpetition Shipping Invoices Constitutes A Request For An Administrative
        Expense Covered By The First Administrative Expense Bar Date Notice And The
        Effective Date Notice</u>

        17.      Finally, having failed to file a timely administrative expense claim. FKMT

continues to advance the argument it asserted in the Missouri Action, that postpetition invoices

are not administrative expenses under section 503(b) of the Bankruptcy Code.  (Response ¶ 20;

Motion to Lift Plan Injunction ¶ 20; Motion for Declaration ¶ 1.)  This argument is similarly

without legal support, as section 503(b) of the Bankruptcy Code does not contain an exhaustive

list of specific goods or services which may qualify as administrative expenses.  <u>See</u> <u>In re

Chateaugay Corp.</u>, 102 B.R. 335, 353 (Bankr. S.D.N.Y. 1989) ("a Court is not limited to the

specific examples of claims explicitly set for [sic] in § 503(b) as giving rise to an administrative

expense."); <u>In re DeSardi</u>, 340 B.R. 790, 800 (Bankr. S.D. Tex. 2006) ("Administrative priority

may be granted to appropriate claims that are not explicitly enumerated in the categories."); <u>In re

Mandel</u>, 319 B.R. 743, 745 (Bankr. S.D. Fla. 2005) ("The claims enumerated in section 503(b),

which qualify as administrative expenses, are not the only claims that are entitled to

administrative priority." (citing <u>Varsity Carpet Serv., Inc. v. Richardson</u>, 19 F.3d 1371, 1377

(11th Cir. 1994))); 4 Collier on Bankruptcy, 503.01 at p. 203-8 (16th rev. ed. 2009)

("administrative expenses are generally those that are incurred by the estate after entry of the

order for relief.").

18.    Indeed, under the Bankruptcy Code, the only bases for paying FKMT's undisputed claims for shipping expenses which arose after the Petition Date but prior to the Effective Date would be either under 11 U.S.C. § 1129(a)(4), which provides for payments pursuant to a plan, or under 11 U.S.C. § 503, which allows for the payment of administrative expenses.  Because the Modified Plan did not provide for payment of FKMT's postpetition shipping invoices, the sole basis for paying FKMT's claim against the Reorganized Debtors would be as an allowed administrative expense under 11 U.S.C. § 503 and Article 2.1 of the Modified Plan.

19.    Yet in an effort to escape the consequences of its failure to file a claim in these chapter 11 cases, FKMT insists that postpetition invoices are not administrative expenses under section 503(b) of the Bankruptcy Code.  (Response ¶ 20; Motion to Lift Plan Injunction ¶ 20; Motion for Declaration ¶ 1.)  FKMT alleges that its claim against the Reorganized Debtors for unpaid invoices arising from shipping services "clearly do not fall under any provision of 11 U.S.C. 503(b)"—presumably because such services are not specifically enumerated in section 503(b).  If FKMT is right, then even if FKMT had filed its claim on a timely basis or satisfied the excusable neglect standard applied to late claims, there would be no basis under the law for the Reorganized Debtors to pay its claims, and accordingly, the claims would be disallowed and FKMT's motions denied.

20.    FKMT's argument also fails to address the scope and plain language of this Court's orders establishing the First Administrative Expense Bar Date and Final Administrative Expense Bar Date.  For example, the paragraph 38 of the Modification Procedures Order provides in part:

> [A]ny party that wishes to assert an administrative claim under 11
> U.S.C. § 503(b) for the period from the commencement of these

cases through June 1, 2009 shall file a proof of administrative
expense (each, an "Administrative Expense Claim Form") for the
purpose of asserting an administrative expense request, including
any substantial contribution claims (each, an "Administrative
Expense Claim" or "Claim") against any of the Debtors. July 15,
2009 at 5:00 p.m. prevailing Eastern time shall be the deadline for
submitting all Administrative Expense Claims (the "Administrative
Claim Bar Date") for the period from the commencement of these
cases through June I, 2009.

(Modification Procedures Order ¶ 38.)

Furthermore, paragraph 41 of the Modification Procedures Order provides that:

any party that is required but fails to file a timely Administrative
Expense Claim Form shall be forever barred, estopped and
enjoined from asserting such claim against the Debtors, and the
Debtors and their property shall be forever discharged from any
and all indebtedness, liability, or obligation with respect to such
claim.

(Modification Procedures Order ¶ 41.)

Similarly, paragraph 47 of the Modification Approval Order states that:

requests for payment of an Administrative [Expense] Claim (other
than as set forth in the Modified Plan or otherwise contemplated by
the Master Disposition Agreement, i.e., for such claims arising on
or after June 1, 2009) must be filed, in substantially the form of the
Administrative Claim Request Form attached as Exhibit 10.5 to the
Modified Plan, with the Claims Agent and served on counsel for
the Debtors and the Creditors' Committee no later than 30 days
notice of after the Effective Date is filed on the docket of the
Chapter 11 Cases.  Any request for payment of an Administrative
Claim pursuant to this paragraph that is not timely filed and served
shall be disallowed automatically without the need for any
objection from the Debtors or the Reorganized Debtors.

(Modification  Approval Order ¶ 47.)

The plain language from this Court's prior orders sets forth both the requirement to file a timely administrative expense claim and the consequences for failing to file such a claim.[6]

54.    After insisting that postpetition invoices are not administrative expenses governed by this Court's prior order, FKMT alternatively seeks "temporary leave of Court to file an Administrative Expense Claim" without offering any argument for why its failure to file a timely claim resulted from excusable neglect.  (Motion for Declaration ¶ 2.)

55.    FKMT offers no evidence that its late filing should be excused.  Under the law, to be excused from a filing of a proof of claim after the applicable bar date, a claimant must establish excusable neglect, which standard was set forth by the United States Supreme Court in Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 391-92 (1993), and as applied by the United States Court of Appeals for the Second Circuit (the "Second Circuit").  In Pioneer, the Supreme Court held that excusable neglect is the failure to comply with a filing deadline because of negligence.  Id. at 394.  In examining whether a creditor's failure to file a claim by the bar date constituted excusable neglect, the Supreme Court found that the factors include "[a] the danger of prejudice to the debtor, [b] the length of the delay and its potential impact on judicial proceedings, [c] the reason for the delay, including whether it was within the reasonable control of the movant, and [d] whether the movant acted in good faith."  Id. at 395. The Second Circuit has held the most important factor is the reason for the delay, including whether it was within the reasonable control of the movant.  In re Enron Corp., 419 F.3d 115, 122-24 (2d Cir. 2005).

---

[6]    Excerpts containing the relevant provisions of this Court's orders have previously been sent to counsel for FKMT.  (Reorganized Debtors' Motion to Enforce Plan Injunction at Exh. B.)

56.    As this Court has consistently ruled on motions under Bankruptcy Rule 9006(b)(1) seeking leave to file an untimely proof of claim, a movant must first show that its failure to file a timely claim constituted "neglect," as opposed to willfulness or a knowing omission.  FKMT's pleadings, and specifically it Motion for Declaration, reveal that FKMT's failure to file an administrative expense claim is not the result of neglect, but instead is part of FKMT's mistaken legal opinion that postpetition shipping invoices are not administrative expenses under section 503(b) of the Bankruptcy Code.  (Response ¶ 20; Motion to Lift Plan Injunction ¶ 20; Motion for Declaration ¶ 1.)  Then, a movant must show by a preponderance of the evidence that the neglect was "excusable."  See, e.g., Order Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 (I) Denying United States Of America's Motion For Leave To File Late Claim And (II) Disallowing And Expunging Proof Of Claim Number 16727, entered March 6, 2008 (Docket No. 12980) at Exh. A p. 2 (citing Pioneer), aff'd March 24, 2009 (Docket No. 16515).

57.    FKMT has not argued that its failure to file a timely Administrative Expense Claim was resulted from excusable neglect, let along carried its burden to prove excusable neglect by a preponderance of the evidence.[7]  For that reason, FKMT's request for leave to file an Administrative Expense Claim must be denied.

---

[7]    The Reorganized Debtors reserve all rights to supplement this pleading in the event FKMT argues that its failure to file an Administrative Expense Claim was the result of excusable neglect.  Moreover, even if this Court found that a motion for leave to file a late Administrative Expense Claim would be well taken as long as FKMT established excusable neglect, the Plan Injunction stays the Missouri Action absent a court order to the contrary.  And even if FKMT could establish that such claims were not discharged, the Plan Injunction contained in paragraph 22(a) of the Modification Approval Order would still apply to "commencing or continuing in any manner any Claim, action, employment of process, or other proceeding . . . against the Reorganized Debtors, which they possessed or may possess prior to the Effective Date," whether or not such claim was discharged pursuant to the Modified Plan.  (Modification Approval Order ¶ 22; Modified Plan § 11.14)

58.    Accordingly, the Reorganized Debtors request that FKMT's Motion to Lift

Plan Injunction and Motion for Declaration be denied and its Response to the Reorganized

Debtors' Motion to Enforce Plan Injunction be overruled.

WHEREFORE the Reorganized Debtors respectfully request that this Court enter an order (a) granting the relief requested in the Reorganized Debtors' Motion to Enforce Plan Injunction, (b) denying FKMT's Motion to Lift Plan Injunction and FKMT's Motion for Declaration, and (c) granting the Reorganized Debtors such other and further relief as is just.

Dated:   New York, New York
   October 14, 2010

        SKADDEN, ARPS, SLATE, MEAGHER
         & FLOM LLP


        By:  /s/ Ron E. Meisler
          John Wm. Butler, Jr.
          John K. Lyons
          Ron E. Meisler
        155 North Wacker Drive
        Chicago, Illinois 60606


         - and -


        Four Times Square
        New York, New York 10036

        Attorneys for DPH Holdings Corp., et al.,
         Reorganized Debtors

**<u>Exhibit A</u>**

IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
AT KANSAS CITY

FKMT, LLC.,                          )
                                     )
              Plaintiff,             )
                                     )
v.                                   )          Case No:  0816-CV39025
                                     )
                                     )          Division 6
DELPHI CORPORATION, et al.,          )
              Defendants.            )

## ORDER

Before the court is defendant Delphi Corporation's motion to hold proceedings in

abeyance filed June 29, 2010. The parties appeared for a case management conference

on July 8, 2010. After reviewing the pleadings filed by the parties and being in all other

respects duly advised in the premises;

**IT IS HEREBY ORDERED** that defendant Delphi Corporation's unopposed

motion to hold proceedings in abeyance is **GRANTED**. This matter is taken off the trial

docket. The case, including all pending motions is stayed until further notification from

the Court. This case is set for a Telephonic Case Management Conference on Thursday,

August 26, 2010, at 2:30 p.m.

**IT IS SO ORDERED.**

Dated: July 14, 2010

_____
J. DALE YOUNGS, CIRCUIT JUDGE

I hereby certify that a copy of the foregoing was
Emailed/Mailed/Faxed this 14th day of July 2010, to:
Maureen McGlynn        mo@mcglynnlaw.com
Troy Renkemeyer        trenkemeyer@rcwlawfirm.com
Thomas Franklin        tmflaw@swbell.net
Adam Caine
Judicial Law Clerk, Division Six

**Exhibit B**

Oct.12. 2005  3:26PM   Monarch Transport LLC                          No.1732  P. 2

October 12, 2005

TO:   **Scott Crader**
      **Monarch Transportation**
      **1616 Argentine Blvd**
      **Kansas City, Ks. 66105**

Dear Valued Supplier:

As you are no doubt aware, on October 8, 2005 (the "Petition Date"),
Delphi Corporation and certain of its U.S. affiliates (collectively, the "Debtors"), filed
voluntary petitions under chapter 11 of the United States Bankruptcy Code in the United
States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Cases"
and the "Bankruptcy Court," respectively). The Debtors have received the Bankruptcy
Court's authority to pay certain suppliers in recognition of the importance of continuity in
our business operations and our desire that the Bankruptcy Cases have as little effect on
our operations as possible.

In accordance with the authority granted to them under the Bridge Order
under 11 U.S.C. §§ 105 and 363(b) authorizing payment of certain prepetition (a)
Shipping and delivery charges for goods in transit and (b) customs duties (the "Order"),
the Debtors are making the payment included herewith. The Debtors will provisionally
pay you 90% of your estimated prepetition trade claim (net of any (i) setoffs of $0 to be
memorialized in a separate stipulation to be presented to the Court, (ii) credits, including,
without limitation, prepetition deposits of $0 provided by the Debtors, or (iii) discounts)
(the "Trade Claim"). You hereby acknowledge and agree that the amount of the Trade
Claim is based upon the Debtors' books and records and subject to reconciliation with
your books and records. To the extent that this reconciliation results in the amount of
your actual prepetition trade claim being less than the estimated amount of your
prepetition trade claim, you agree to promptly disgorge any excess amount of the Trade
Claim. In exchange for receiving such payment, you hereby agree that you no longer
have any prepetition amounts owing to you and that you will forever waive any and all
claims, rights or causes of action related to any such prepetition amounts.

You hereby agree that you will keep the terms of this Agreement together with all
related settlement discussions strictly confidential. You may disclose the terms of this
Agreement only to your management personnel that need to know such information to
implement the terms of this Agreement and legal counsel and other advisors with whom
you have a recognized legal privilege; provided that all such parties have been informed
of the confidentiality restrictions contained herein. You further agree that you will be
responsible and liable for any breach of the confidentiality provisions set forth in this
Agreement by your management personnel, legal counsel and other advisors. You
acknowledge that failure to honor the confidentiality provisions contained herein would
cause significant economic harm to the Debtors. Any discussions by you with any third
parties, including the press or media or consultants, regarding this Agreement and its
terms are expressly prohibited.

090016-001282

Oct-12- 2005  3:26PM   Monarch Transport LLC                    No.1732  p P. 3

Further, in exchange for receiving payment of the Trade Claim, you hereby agree that you have reviewed the terms and provisions of the Order and that you consent to be bound by such terms, including, without limitation, the extension of normal and customary trade terms, practices and programs.

You also hereby acknowledge and agree that you continue to be bound by the terms of each agreement between you and one or more of the Debtors, including, without limitation, the general terms and conditions applicable thereto, except to the extent modified by the terms of this agreement and the United States Bankruptcy Code.

The Debtors expressly reserve all of their rights at law and in equity, including, without limitation, all of their rights as debtors-in-possession under the United States Bankruptcy Code. Without limiting the generality of the foregoing sentence, this agreement, and any payment made hereunder, does not constitute (a) a waiver of the Debtors' rights (i) to dispute any claim, (ii) to reject any agreement, contract, purchase order or other document under section 365 of the United States Bankruptcy Code, or (iii) to take, or refrain from taking any other action under any applicable section of the United States Bankruptcy Code or any other applicable law, or (b) an approval, adoption or assumption of any agreement, contract, purchase order or other document under section 365 of the United States Bankruptcy Code or any other applicable law, all of the Debtors' rights with respect to which are expressly reserved.

If you have any questions about this Agreement or our financial restructuring, please do not hesitate to call (866) 688-8679.

Sincerely,

DELPHI CORPORATION

By: _____

Its: Director, Global Logistics

ACCEPTED AND AGREED BY:

Scott Grader

By: _____

Its: Owner

Dated: 12-Oct-05

2

532682.03-Chicago Server 2A - MSW

090016-001283

**<u>Exhibit C</u>**

February 17, 2006

TO:   Scott Crader
      **Monarch Transportation**
      **1616 Argentine Blvd.**
      **Kansas City, KS 66105**

Dear Valued Supplier:

As you are aware, on October 8, 2005, Delphi Corporation and certain of its U.S. affiliates (collectively, the "Debtors"), filed voluntary petitions under chapter 11 of the United States Bankruptcy Code. On or about October 10, 2005, in accordance with the authority granted to them under the Order Under 11 U.S.C. §§ 105(a), 363(b), 1107, and 1108 Authorizing Payment of Certain Prepetition (i) Shipping and Delivery Charges for Goods in Transit and (ii) Customs Duties (the "Order"), the Debtors made a payment to you on account of your prepetition trade claim (the "Trade Claim").

Pursuant to that certain letter agreement between you and the Debtors dated October 12, 2005 (the "Letter Agreement"), you acknowledged and agreed that the amount of the Trade Claim was based upon the Debtors' books and records and subject to reconciliation with your books and records. Such reconciliation has been completed and, based upon the results thereof, the Debtors will pay you an additional $0 (the "Reconciliation Payment") in full and final settlement of the Trade Claim. In exchange for receiving such Reconciliation Payment, you hereby agree that you no longer have any prepetition amounts owing to you and that you will forever waive any and all claims, rights or causes of action related to any such prepetition amounts.

You further acknowledge and agree that you continue to be bound by the terms of the Letter Agreement and that the terms of the Letter Agreement and the Order apply to the Debtors' payment of the Reconciliation Payment. If you have any questions about this agreement, please do not hesitate to call (866) 688-8679.

Sincerely,

DELPHI CORPORATION

By: _____
Its:  Director, Global Logistics

Dated: _____

ACCEPTED AND AGREED BY:
Monarch Transportation.

By: _____
Its: _____

**<u>Exhibit D</u>**

# IN THE CIRCUIT COURT
## OF JACKSON COUNTY, MISSOURI
### CIVIL DIVISION

| | |
|---|---|
| FKMT, LLC<br>f/k/a MONARCH TRANSPORT, LLC,   ) | |
| )   | |
| Plaintiff,   ) | |
| )   | |
| v.   ) | |
| )   | |
| DELPHI CORPORATION,   ) | |
| )   | |
| Defendant, Counterclaimant,   )<br>And Third-Party Plaintiff,   ) | Case No. 0816-CV39025 |
| )   | |
| )   | Division 6 |
| v.   ) | Chapter 60 |
| )   | |
| FKMT, LLC,   ) | |
| )   | |
| Plaintiff and Counter-defendant,   ) | |
| )   | |
| and   ) | |
| )   | |
| MONARCH TRANSPORT LLC,   )<br>f/k/a OSAGE HOLDINGS, LLC,   ) | |
| )   | |
| Third-Party Defendant.   ) | |

## AFFIDAVIT OF ROZALYN R. BURNS

COMES NOW Affiant Rozalyn R. Burns, being first duly sworn and under oath and

does hereby state:

1.      I am an adult over the age of 18 years and I am competent to give the

testimony set forth in this Affidavit.

2.      The information set forth herein is based upon the books and records of

Delphi Corporation, as well as upon personal information.

3.      I work in the Corporate Logistics Department for Delphi Corporation in Troy,

Michigan, a position I have held at all times relevant hereto.

4.      In or about January 2008, I was contacted by Troy Renkemeyer, who claimed that Delphi owned money for transportation services performed by "Monarch Transport." I subsequently learned that Monarch Transport sold its assets and company name in September 2007, and that Old Monarch and New Monarch were making competing claims that money was due to each of them.

5.      Over the ensuing months, I worked with Troy Renkemeyer, attorney for and owner of Old Monarch, to discern what money Delphi owed, if any.

6.      After investigation, Delphi identified several invoices for transportation services for which payment information could not be readily confirmed. A summary of those invoices is attached to Delphi's responses to Old Monarch's Motions for Summary Judgment, as Exhibit A. However, Delphi also determined that a number of the invoices for which Old Monarch demanded payment had already been paid in full. See Exhibit A and Exhibit B-1, attached hereto.

7.      Several of the invoices for which Mr. Renkemeyer demanded payment relate to transportation services provided before October 2005, at which time Delphi filed a Voluntary Petition for Relief under Chapter 11 of the United States Bankruptcy Code ("pre-petition invoices").

8.      At all times relevant hereto, Delphi has attempted to work in good faith with Troy Renkemeyer and his former business partner Scott Crader to reconcile payment information and to answer all questions they raised.

9.      In December 2008, Old Monarch filed suit against Delphi, demanding payment on the invoices identified in plaintiff's Exhibit A. The invoices over which Old Monarch filed suit fall into three categories:

(a)    Invoices for which Delphi has not yet located payment information ("interplead invoices");

(b)    Invoices for which Delphi has made payment in full ("disputed invoices"); and

(c)    Pre-petition invoices, which have also been paid in full.

10.    I understand that Troy Renkemeyer, as counsel for Old Monarch, allowed Delphi an extension of time to answer the lawsuit so that the parties could attempt resolution.

11.    In March 2009, while Delphi continued to work with Troy Renkemeyer to discern what money, if any, was owed to Old Monarch, attorney Tom Franklin asserted that the money was actually due to his client, New Monarch.

12.    When an amicable solution proved impossible, Delphi answered Old Monarch's lawsuit with an interpleader action, asking this Court to rule on whether the interplead invoices should be paid to Old or New Monarch.

13.    In its Motion for Summary Judgment for Amounts Not Interplead (the "disputed invoices"), Old Monarch references a document it calls "Exhibit B," and asserts that Exhibit B contains "a separate list of the remaining invoices for which plaintiff believes are outstanding and due from Delphi." See Old Monarch's Memorandum in Support of its Motion for Summary Judgment for Amounts Not Interplead, at ¶ 4.

14.    Every invoice listed on plaintiff's Exhibit B as a non-interplead invoice is also listed on plaintiff's Exhibit A, entitled "Interplead Invoices."

15.    Plaintiff's Exhibit A clearly identifies whether an invoice is "paid" or "outstanding." For paid invoices, Exhibit A also lists the payment date and check number. The same information is identified on Delphi's Exhibit A.

3

16.    By searching Delphi's database of paid invoices, I have confirmed that every invoice on Old Monarch's Exhibit B, with the exception of number 6183, has been paid. Documentation of these payments is attached to this affidavit as Exhibit B-1.

17.    Invoice number 6183, dated 05/26/2005, was also identified by Old Monarch as unpaid. However, Delphi has documentation that the money due for this invoice was paid to Old Monarch as part of Delphi's bankruptcy settlement. See December 2, 2005 e-mail from Tom Gay of Delphi to Scott Crader of Old Monarch, a copy of which is attached hereto as Exhibit B-2 and incorporated herein by reference.

18.    Further, Scott Crader of Monarch Transportation, signed letters dated October 12, 2005 and February 17, 2006, admitting that Delphi had paid all pre-petition invoices and that Monarch Transport "will no longer have any pre-petition amounts owing to [it]" and "will forever waive any and all claims, rights or causes of action related to any such pre-petition amounts." See Exhibits B-3 and B-4, attached hereto.

19.    The documents attached to this affidavit as Exhibits B-1 through B-4 are true and accurate copies of the information reflected therein; are documents kept in the ordinary course of Delphi's business; and were made contemporaneous with the actions and events they describe.

FURTHER AFFIANT SAYETH NOT.

_____

Rozalyn R. Burns

Subscribed and sworn to before me this 31st day of July, 2009.

_____

Notary Public

My commission expires: 7/21/14

KATHLEEN A. BAMBACH
NOTARY PUBLIC, STATE OF MI
COUNTY OF OAKLAND
MY COMMISSION EXPIRES Jul 21, 2014
ACTING IN COUNTY OF Oakland

5

## **Exhibit E-1**

In re: DELPHI AUTOMOTIVE SYSTEMS LLC Debtor, Case No. 05-44640          Entity #39

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM, IF CLAIM IS SUBJECT TO SETOFF, SO STATE | CONTINGENT, UNLIQUIDATED DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|
| 1027358 - 10006432<br>MOLER MARILYN<br>(Address on File) | WORKERS COMPENSATION<br>CLAIM NUMBER: 04-854152 | Contingent,<br>Disputed,<br>Unliquidated | Unknown |
| 1624782 - 10399940<br>MOLEX CONNECTOR CORP<br>PO BOX 101853<br>ATLANTA   GA   303921853 | ACCOUNTS PAYABLE | Disputed,<br>Unliquidated | $75,735.49 |
| 1624786 - 10399941<br>MOLEX INC<br>PO BOX 101853<br>ATLANTA   GA   303921853 | ACCOUNTS PAYABLE | Disputed,<br>Unliquidated | $7,884,692.14 |
| 1027364 - 10006433<br>MOLINA SUSAN<br>(Address on File) | WORKERS COMPENSATION<br>CLAIM NUMBER: 04-889292 | Contingent,<br>Disputed,<br>Unliquidated | Unknown |
| 1624790 - 10399942<br>MOLITOR INTERNATIONAL<br>1550 COLLINS LN<br>MIDLAND  MI   48640 | ACCOUNTS PAYABLE | | $4,478.50 |
| 1624809 - 10399944<br>MONARCH LATHES LP<br>PO BOX 931883<br>CLEVELAND   OH   441935125 | ACCOUNTS PAYABLE | | $109.40 |
| 1624810 - 10399945<br>MONARCH MACHINE TOOL INC<br>PO BOX 4863<br>UTICA   NY   13501 | ACCOUNTS PAYABLE | | $860.00 |
| 1560840 - 10107113<br>MONARCH MARKING SYSTEMS, INC.<br>c/o COOLIDGE WALL WOMSLEY &<br>   LOMBARD<br>Attn  SHANNON L. COSTELLO<br>33 WEST FIRST STREET<br>SUITE 600<br>DAYTON   OH   45402-1289 | ENVIRONMENTAL CLAIMS<br>CERCLA: TREMONT BARREL FILL PRP | Contingent,<br>Disputed,<br>Unliquidated | Unknown |
| 1560840 - 10107114<br>MONARCH MARKING SYSTEMS, INC.<br>c/o COOLIDGE WALL WOMSLEY &<br>   LOMBARD<br>Attn  TIM HOFFMAN<br>33 WEST FIRST STREET<br>SUITE 600<br>DAYTON   OH   45402-1289 | ENVIRONMENTAL CLAIMS<br>CERCLA: TREMONT BARREL FILL PRP | Contingent,<br>Disputed,<br>Unliquidated | Unknown |
| 1624814 - 10399946<br>MONARCH SERVICES<br>CALLE 4 792-13<br>SALTILLO COAH 25107<br>MEXICO | ACCOUNTS PAYABLE | | $16,413.50 |
| 1624816 - 10399947<br>MONARCH TRANSPORT LLC<br>PO BOX 413231<br>KANSAS CITY   MO   641413231 | ACCOUNTS PAYABLE | Disputed,<br>Unliquidated | $36,414.47 |

**<u>Exhibit E-2</u>**

In re: DELPHI AUTOMOTIVE SYSTEMS LLC Debtor, Case No. 05-44640          Entity #39

## AMENDED AND RESTATED SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM, IF CLAIM IS SUBJECT TO SETOFF, SO STATE | CONTINGENT, UNLIQUIDATED DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|
| 1624816 - 10408452<br>MONARCH TRANSPORT LLC<br>PO BOX 413231<br>KANSAS CITY    MO   641413231 | ACCOUNTS PAYABLE<br>APRIL 2006 AMENDMENT - AMENDS<br>SCHEDULE NUMBER 10399947 SCHEDULED<br>FOR $36,414.47 | Disputed,<br>Unliquidated | $37,558.09 |
| 1624817 - 10411686<br>MONARCH WATER SYSTEMS<br>1230 BURNETT DRIVE<br>XENIA    OH   45385 | ACCOUNTS PAYABLE<br>APRIL 2006 AMENDMENT - AMENDS<br>SCHEDULE NUMBER 10404280 SCHEDULED<br>FOR $.00 | | $0.00 |
| 1624818 - 10399948<br>MONARCH WELDING & ENGINEERING<br>INC<br>23538 PINEWOOD<br>WARREN    MI   48091 | ACCOUNTS PAYABLE | | $13,506.00 |
| 1027383 - 10006434<br>MONAST KAREN<br>(Address on File) | WORKERS COMPENSATION<br>CLAIM NUMBER: 79501757 | Contingent,<br>Disputed,<br>Unliquidated | Unknown |
| 1027386 - 10006435<br>MONCADA NANCY<br>(Address on File) | WORKERS COMPENSATION<br>CLAIM NUMBER: NJ0000374971 | Contingent,<br>Disputed,<br>Unliquidated | Unknown |
| 1027390 - 10006436<br>MONCRIEF RUTH<br>(Address on File) | WORKERS COMPENSATION<br>CLAIM NUMBER: L234315-22 | Contingent,<br>Disputed,<br>Unliquidated | Unknown |
| 2145536 - 10405164<br>MONEY, JIM<br>(Address on File) | INDEMNIFIED CO-DEFENDANT<br>C3-03-440, USDC SOUTHERN DISTRICT OH | Contingent,<br>Disputed,<br>Unliquidated | Unknown |
| 1027402 - 10006437<br>MONKABA-WADSWORTH NANCY<br>(Address on File) | WORKERS COMPENSATION | Contingent,<br>Disputed,<br>Unliquidated | Unknown |
| 1624830 - 10399949<br>MONLANGROUP<br>DIV OF ENVIRODYNE TECHNOLOGIES<br>PO BOX 7<br>COMSTOCK    MI   490410007 | ACCOUNTS PAYABLE | | $7,850.00 |
| 1624840 - 10409282<br>MONOGRAMS & MORE INC<br>IMPRESSIONS SPECIALTY ADV<br>8914 S TELEGRAPH<br>TAYLOR    MI   48180 | ACCOUNTS PAYABLE<br>APRIL 2006 AMENDMENT - AMENDS<br>SCHEDULE NUMBER 10399950 SCHEDULED<br>FOR $4,952.91 | | $0.00 |
| 2145537 - 10405165<br>MONREAN, ROBERT<br>(Address on File) | INDEMNIFIED CO-DEFENDANT<br>05-CV-2004, COMMON PLEAS TRUMBELL<br>COUNTY    OH | Contingent,<br>Disputed,<br>Unliquidated | Unknown |
| 1027407 - 10006438<br>MONROE ANGELA<br>(Address on File) | WORKERS COMPENSATION<br>CLAIM NUMBER: 04-818207 | Contingent,<br>Disputed,<br>Unliquidated | Unknown |
| 1624844 - 10399951<br>MONROE AUTO EQUIPMENT<br>TENNECO AUTOMOTIVE INC<br>1 INTERNATIONAL DR<br>MONROE    MI   48161 | ACCOUNTS PAYABLE | | $482,521.76 |

**<u>Exhibit F</u>**

# DELPHI
### Driving Tomorrow's Technology

Delphi Corporation
**EFT Payment Authorization**

Please complete and return this Electronic Funds Transfer (EFT) Authorization Form. This form is necessary in order to make payments to your company for shipments or services provided to Delphi Automotive Systems, North American Operations. Please type or print clearly.

**Bank Verification:** In addition to filling out this form you must provide confirmation of your bank account and routing number with one of three options:
1) Have your bank provide a contact name, phone number, stamp and/or signature on appropriate lines below, or
2) Your bank must use their own stationery to confirm bank routing information and your company's bank account number, or
3) You must provide a copy of a voided check with your company's bank account and routing information.

For all currencies, the receiving bank must include the bank's SWIFT ID Number. Canadian banks must provide their routing/transit number; German and Spanish banks must provide their in-country bank ID numbers, and United Kingdom banks must provide the appropriate Sort Code.

The undersigned ("Payee") authorizes Delphi Automotive Systems and any of its subsidiaries and affiliates (collectively, "Delphi Automotive Systems") to make payment for goods and services covered by any purchase order or agreement, now or hereinafter in effect, through electronic fund transfer.

In connection with electronic fund transfers, the Payee agrees as follows:

1) Payee will use reasonable efforts to verify and ensure that the Depository Institution selected by Payee is able to receive electronic fund transfers from Delphi Automotive Systems' originating bank directly, or from a correspondent bank or through an automated clearing house or any other electronic payment network designated or approved by Delphi Automotive Systems from time to time.

2) Payee may, at least 30 days prior to the effective date of the next electronic fund payment by Delphi Automotive Systems, change any portion of the information provided in this document by submitting to Delphi Automotive Systems an amended payment authorization in a form acceptable to Delphi Automotive Systems. The Payee is responsible for any loss which may arise by reason of any error, mistake, or fraud regarding the information provided to Delphi Automotive Systems or the Payee's failure to follow the procedure set forth in this document.

3) The payment terms specified in the applicable purchase order or agreement, other than the MNS2 payment term, are modified by adding three calendar days to the time period for payment. For example, for the "net 30 days" payment term, the electronic funds transfer will occur on the 33rd day. If the payment date is a non-banking day, the electronic funds transfer will occur the following day on which both Delphi Automotive Systems' originating bank and Payee's Depository Institution are available to transmit and receive electronic funds transfers.

4) Electronic fund transfers will be deemed to have been made when the Payee's Depository Institution receives or has control of the payment. Any loss of payment following the point at which the Payee's Depository Institution receives or has control of the payment will be borne by the payee.

5) In the event of duplicate payment, overpayment, fraudulent payment or payment made in error, Payee will promptly cause the return of funds to Delphi Automotive Systems at its designated originating bank.

6) In the event that payment has not been received by Payee, Payee shall notify Delphi Automotive Systems immediately in writing and Delphi Automotive Systems will have a reasonable period in which to make the payment, and until the expiration of that period, Payee agrees that it will not have or pursue any rights or remedies against Delphi Automotive Systems for any failure to make payment including, without limitation, actual, incidental, or consequential damages.

Company Name & Duns Number: _FKMT, LLC c/o TROY Renkemeyer_          Contact Name: _TROY Renkemeyer_

Remit Address: _7500 College Blvd, Suite 900_          Telephone Number: _913-906-9810_

_Overland Park, KS 66210_          Fax Number: _913-906-9840_

## Banking Information

E-mail Address: _Trenkemeyer@RCWLawfirm.com_

Account Name: _FKMT, LLC_          Account Currency: _US Dollars_
(List All Acceptable)

Account Number: _2701 0304_          Bank Name: _Commerce Bank_

IBAN / Swift/ Local Bank ID / Routing Number / UK Sort Code _101 000019_          Bank Address: _13441 State Line Road_

Bank Contact Name & Phone Number: _June/Ali    816-524-2828_          _Kansas City MO 64145_

Bank Signature/Verification Stamp: _June_

COMMERCE BANK
13441 STATE LINE RD.
KANAS CITY, MO 64145

The Payee accepts the terms of this agreement executed on this ___26___ day of _February_, 20 _09_

_____          _TROY Renkemeyer, Attorney_
(Payee Authorized Signature)          (Printed Name & Title)

The requested documents may be mailed or emailed to
Attn: Vendor MasterDept./Disbursement Services Mail DLF IT Park Plot No 129-132 OPP APHB Colony, Gachibowli Hyd-19.INDIA
Juarez.DelphiA.EFTContacts@Delphi.c (if emailing do not send originals)

# **Exhibit G**

## MASTER TRANSPORTATION AGREEMENT

THIS MASTER TRANSPORTION AGREEMENT (hereinafter, this "Agreement"), made and entered into as of the 19th day of July, 2004, is by and between Delphi Automotive Systems LLC, a Delaware limited liability company with principal business offices at 5725 Delphi Drive, Troy, Michigan 48098 (hereinafter called "Delphi") and Monarch Transport, LLC, a Kansas limited liability company with principal business offices at 1616 Argentine Blvd. Kansas City, KS 66105 (hereinafter called "Carrier").

## RECITALS

WHEREAS, Carrier, as an independent contractor, desires to furnish transportation and transportation-related services (collectively, "Transportation Services") to Delphi and is duly registered as a carrier in interstate commerce with the Federal Motor Carrier Safety Administration ("FMCSA") and with those state regulatory agencies listed on Appendix A to this Agreement;

WHEREAS, subject to the terms and conditions, representations, and warranties of this Agreement, Delphi desires to obtain from Carrier Transportation Services;

WHEREAS, the Transportation Services provided herein are intended by the parties to be contract carriage as defined in 49 U.S.C. § 13102(4) and §14101(b);

NOW, THEREFORE, Delphi and Carrier agree as follows:

**1. APPLICABILITY.** Transportation Services provided pursuant to this Agreement shall be performed between origin and destination points and/or places as more specifically named in the Appendices attached to this Agreement. Additional services may be included from time to time upon amendment of this Agreement in the manner designated herein.

**2. APPENDICES.** The following appendices attached to this Agreement are hereby incorporated by reference into, and expressly made an integral part of, this Agreement:

> Appendix A – Carrier's Operating Authorities
> Appendix B – Delphi's North American Facilities and Affiliates
> Appendix C – Rules and Accessorial Charges
> Appendix D – Rate Schedules

From time to time after the date of this Agreement, Delphi and Carrier may, by mutual agreement, amend the above appendices or add additional appendices to this Agreement. To be effective, any such appendix must be in writing, signed by both parties and dated. Appendices shall remain in effect until superceded by written agreement of the parties, termination or expiration of the specific appendix, or termination of this Agreement, whichever occurs first. In the event that any term or provision of any appendix is inconsistent with those contained in the remainder of this Agreement, the term or provision in the appendix shall govern. Notwithstanding Section 4 of this Agreement, appendices may be terminated individually by

Delphi:
Carrier:

Version 5.00 - 031205

DELPHI-001101

either party, with or without cause, by giving the other party at least sixty (60) days' prior written notice of intent to terminate. All appendices will terminate upon termination of this Agreement.

**3. TERM OF AGREEMENT.** The term of this Agreement shall be for a period of three (3) years commencing July 19, 2004 and ending July 18, 2007, ("Term"). After the Term, this Agreement shall remain in effect until terminated by either party, with or without cause, as provided in Section 4 of this Agreement.

**4. TERMINATION.**

    a.  Termination Without Cause.

        i.  During the Term, the parties may terminate this Agreement without cause before the end of the Term by delivering sixty (60) days' prior written notice of intent to terminate to Carrier.

        ii.  After the Term, either party may terminate this Agreement without cause by delivering sixty (60) days' prior written notice of intent to terminate to the other party.

    b.  Termination For Cause.

        i.  Delphi may terminate this Agreement immediately without notice and without further obligation if a petition in bankruptcy is filed by or against Carrier, a receiver or trustee is appointed for Carrier, Carrier becomes insolvent or makes a general assignment for the benefit of its creditors.

        ii.  Delphi may terminate this Agreement immediately without notice and without further obligation if all or any portion of Carrier's operating authority shall be revoked, suspended or otherwise limited, or Carrier's insurance policy is canceled, reduced or otherwise invalidated, or Carrier receives an "Unsatisfactory" safety rating at any time from the FMCSA.

        iii.  Carrier shall promptly and in writing notify Delphi of the occurrence of any events set forth in sub-Sections 4.b.i. and ii. above. If Carrier fails to so notify Delphi, Carrier shall not assess, and Delphi shall have no obligation to pay, transportation rates and charges occurring after the date of such events. Furthermore, Carrier will immediately relinquish control over all Delphi goods in its possession and control in accordance with Delphi's written delivery instructions.

    c.  Notice of Termination. Any notice of termination shall be delivered by facsimile transmission with a duplicate copy sent via US mail, postage prepaid, or express courier to the appropriate party as identified in Section 17 of this Agreement.


Delphi:
Carrier:

2

Version 5.00 -031205

**DELPHI-001102**

d. <u>Unsatisfactory Performance</u>. If Carrier's performance is, in Delphi's sole judgment, unsatisfactory, Delphi shall make written demand upon Carrier to improve its performance. If Carrier cannot or does not improve its performance within thirty (30) days after such demand, Delphi shall at any time thereafter be entitled to terminate this Agreement immediately upon written notice to Carrier.

## 5. <u>TRANSPORTATION SERVICES.</u>

a. <u>Non-Exclusive Services</u>. Carrier agrees to provide, on a non-exclusive basis as described in Section 12 of this Agreement, Transportation Services set forth in the appendices to this Agreement and as may reasonably be required by Delphi. Volumes are not guaranteed. Carrier shall perform all Transportation Services identified in the appendices in accordance with the terms and conditions of this Agreement including the applicable appendices. If Carrier is itself unable to fulfill any delivery obligations, then Carrier must use an alternate means to fulfill its obligations, honor the rate and service requirements specified in this Agreement including the appendices, and be solely responsible for any charges in excess of those set forth in the appendices.

b. <u>Commencement of Services</u>. Commitments for specific Transportation Services will be made through the issuance of a shipping document (for example, but not limited to, a bill of lading, shipping notice, or shipping order) in either written or electronic form, in accordance with Delphi's established procedures. All shipping documents shall be subject to the terms and conditions of this Agreement and applicable appendices.

c. <u>On-Time Deliveries; Holiday Schedules</u>. Carrier recognizes that Delphi requires shipments to be delivered on-time to maintain the continuity of its and its customer's operations. Therefore, Delphi and Carrier agree to the following:

  i. Carrier will deliver shipments in accordance with predetermined schedules in accordance with Delphi's established procedures. Absent notice to the contrary, production days will be assumed to be Monday through Friday, except on established Delphi Holidays listed in Appendix C to this Agreement

  ii. If for any shipment, Carrier determines it will be unable to meet the applicable service schedule in the appendices, the "Service Guarantee" (Section 6.d.) will apply.

  iii. Actual transit times should not exceed the transit times shown on the applicable appendices. If Carrier fails to meet a specified transit time, Delphi may, in addition to any other remedies, terminate all or any part of this Agreement including the appendices without any further liability hereunder and without relieving Carrier of any liability arising under this Agreement including the appendices prior to such termination.


Delphi:
Carrier:

3

Version 5.00 -031205

**DELPHI-001103**

d.  <u>Cooperation; Best Efforts</u>.  Delphi and Carrier will cooperate in all matters relating to Transportation Services, including efforts to improve processes and reduce the cost of Transportation Services for their mutual benefit.  Carrier will use its best skills and judgment to perform the Transportation Services in furtherance of the interests of Delphi, and in a safe, timely, diligent, efficient and economical manner.

e.  <u>Continuous Improvement</u>.  Carrier will implement a company-wide "continuous improvement process" relative to Carrier's business with Delphi, which shall focus on achieving customer satisfaction.  Carrier will make available to Delphi upon request its continuous improvement plan describing the process Carrier uses to implement continuous improvement and the documentation used to monitor and evaluate the process.  Carrier, in conjunction with Delphi, will identify programs and processes to improve transportation-related operations and efficiencies of the parties.

f.  <u>Quality Management</u>.  Carrier will participate in Delphi's Quality Management Program and Problem Reporting and Resolution (PR&R) Process.  Carrier will use the medium established by Delphi to participate in the Quality Management Program and PR&R Process to include, but not limited to: e-business portal, internet or access to world wide web.

## 6. <u>CARRIER'S OBLIGATIONS.</u>

a.  <u>Compliance with Laws, Rules and Regulations</u>.  Carrier represents such and warrants to Delphi, and Delphi enters into this Agreement in reliance upon such representation and warranty, that Carrier, and, to the extent Carrier elects to use agents or other subcontractors ("Subcontractor") to perform the Transportation Services, that Carrier and Subcontractor: (i) possess all licenses, certifications, qualifications, and similar approvals from applicable federal, state, local, and foreign regulatory authorities required to lawfully conduct each of their respective operations and to perform the Transportation Services contemplated by this Agreement, to include, but not limited to be a duly registered carrier in interstate commerce with the FMCSA; (ii) duly registered in intrastate commerce with all appropriate state regulatory agencies as listed on Appendix A to this Agreement, copies of which registrations are attached to this Agreement under Appendix A and (iii) are in compliance in all respects with, and, at its sole expense, shall continue to comply with, all of the provisions of the Interstate Commerce Act, related laws, rules and regulations of the FMCSA, and all provisions of applicable federal, state, local, and foreign laws, rules and regulations required to perform the Transportation Services contemplated by this Agreement .

b.  <u>ISO 9001 and/or 9002</u>.  Carrier represents and warrants to Delphi, and Delphi enters into this Agreement in reliance upon such representation and warranty, that Carrier has been certified as an ISO 9001 and/or ISO 9002 supplier, and that Carrier will continuously maintain, at its sole expense, such certification.

Delphi: 
Carrier:

4

Version 5 00 -031205

DELPHI-001104

c. <u>Distinct Needs; Priority</u>. Carrier acknowledges that Delphi, as a world leading supplier of vehicle electronics, transportation components, integrated systems, and modules, has distinct needs and requires priority service from its suppliers. Carrier agrees that Carrier's equipment and personnel shall be allocated to Delphi's Transportation Services needs on a priority basis.

d. <u>Service Guarantee</u>. Carrier shall promptly and efficiently receive, transport in compliance with all applicable laws, deliver safely, and damage free, with reasonable dispatch and without delay, the goods entrusted to it pursuant to this Agreement, whether shipped to, or received from, Delphi or from/to third parties at the request of Delphi.

    i. Carrier's Service will be 100% guaranteed for all Delphi locations and all non-Delphi off-site receiving locations involved (whether shipment is made on a "collect", prepaid" or "bill to third party" basis). Carrier is expected to deliver goods entrusted to it during the guaranteed scheduled window time. If Carrier expects or knows that it will be unable for any reason to deliver goods entrusted to it within the scheduled window time for any specific shipment, then Carrier's management will immediately contact Delphi whether as shipper, consignee or third party by telephone and coordinate with Delphi to determine whether such goods are critical and should be moved by expedited (including, but not limited to, airfreight and air charter) service or an alternate carrier. If Carrier's delivery failure is not a result of an event or circumstance described in Section 20, Force Majeure, Carrier will, after having consulted with Delphi, arrange for the expedited service and resulting freight charges will be the responsibility of the Carrier. Also, when any delay is due to Carrier, no charge for loading and unloading will be billed to Delphi and Carrier will be responsible and pay for loading and unloading charges. Delphi will be responsible for the otherwise applicable charges from the origin to destination.

    ii. If a Delphi Facility requests that a shipment be expedited that would otherwise arrive at the scheduled window time, such expedited service will be shipped on a collect basis to the destination specified by the requesting Delphi Facility. Carrier's charges for all time required in unloading and reloading for diversion per the Delphi Facility's request is listed in Appendix C to this Agreement.

    iii. If Carrier is requested by Delphi to perform cartage in conjunction with an air carrier or other form of expedited mode transportation, the rates specified in Appendix C shall apply. Delphi will be responsible for the otherwise applicable charges from origin to the point where transfer to expedited mode is made.

Delphi: 
Carrier:

Version 5.00 -031205

DELPHI-001105

      iv.     Carrier will advise Delphi via telephone and in writing of any shipper's failure to have a shipment available at the scheduled pick-up time, if such delay will affect Carrier's delivery commitments.

e.  <u>Brokers; Bonding.</u>  Carrier must work with Delphi designated customs brokers and shall perform all document transfers promptly and without charge to Delphi or such customs brokers.  Carrier will be adequately bonded.

f.  <u>Receipts and Bills of Lading</u>

      i.     <u>Bill of Lading or Receipt</u>.  Each shipment received by Carrier shall be evidenced by a bill of lading or receipt in a form agreed upon by the parties, signed by Carrier, and showing the kind, quantity and condition of goods received by Carrier.  Such bill of lading or receipt shall be conclusive evidence of receipt of such goods by Carrier in apparent good order and condition unless such goods are not readily observable (contents and condition of contents of packages unknown) or as may be otherwise noted on the face of such receipt.

      ii.     <u>Through Bill of Lading</u>.  All bills of lading shall be "through bills of lading" to ultimate destination and Carrier shall be liable to Delphi for loss, damage or delay in accordance with the terms of this Agreement regardless of any separate agreements entered into by Carrier with connecting carriers, subcontractors, cartage agents, or third parties.

      iii.     <u>Delivery Receipt</u>.  Carrier shall obtain an acknowledgement of delivery for all shipments by notation on the bill of lading or a delivery receipt, signed and dated by the consignee.  Upon Delphi's request, Carrier agrees to provide copies of same to Delphi in sufficient detail to substantiate billing for the services provided.  Carrier shall retain such records for five (5) years after delivery of the involved shipments or for such greater period of time as may be required by law.

      iv.     <u>Period of Carrier Responsibility</u>.  Carrier's duties and responsibilities under this Agreement shall commence when Carrier takes possession and control of shipper's goods or upon execution of such bill of lading or receipt by Carrier, whichever occurs first, and shall end when consignee signs the bill of lading or delivery receipt and Carrier delivers shipper's goods.

      v.     <u>Conflict Between Agreement and Shipping Documentation</u>.  To the extent any term or condition of any bill of lading or receipt conflicts in any way with any term, condition or provision of this Agreement, this Agreement shall govern.

Delphi: 
Carrier:

6

DELPHI-001106

g. <u>Interlining; Substituted Service</u>. Carrier agrees not to interline or use other motor carriers, or brokers, or to use "substituted services" by rail for Delphi's goods without the prior written agreement of Delphi. When, for Carrier's convenience, Carrier elects to use a Subcontractor for any Transportation Services described herein to serve a point it is authorized to serve, Carrier may do so at its expense, in which case Carrier shall continue to be fully liable for any loss, damage or delay to said shipments. If Carrier uses a Subcontractor, Carrier agrees to remain liable for any loss, damage or delay to Delphi's goods incurred in transit to the same extent that Carrier would be liable if it performed the transportation directly. Carrier will be responsible for all acts and omission of its Subcontractors, and will also be responsible for the payment of its Subcontractors' respective freight charges. Carrier warrants that it will only subcontract to parities who maintain the insurance coverage and limits set forth in Section 10 of this Agreement. If Carrier subcontracts with parties who do not maintain the required insurance coverage and limits, Carrier agrees to assume the responsibilities of the subcontracted parties to Delphi under this clause.

h. <u>Disclosure; Freight Bills</u>. Carrier agrees to comply with the provisions of 49 U.S.C. § 13708 requiring carriers to disclose the actual rates, charges or allowances on freight bills, prohibiting false or misleading information on documents

i. <u>Financial Reports</u>. Within thirty (30) days of filing with the FMCSA, Carrier agrees to submit to Delphi a copy of its Quarterly Financial Report as filed with the FMCSA pursuant to its regulations. If Carrier is not subject to FMCSA regulations, Carrier agrees to submit other evidence of its financial condition acceptable to Delphi, on a quarterly basis.

j. <u>Right to Audit.</u> Carrier shall keep a separate account of the costs of providing Transportation Services in accordance with generally accepted accounting principles in the United States. Delphi, either by its own personnel or by its contractors (e.g. accounting firm), shall have the right to review, at its own expense, Carrier's books and records related to the Transportation Services during regular business hours. All information derived from any such audit will be used by Delphi solely for purposes consistent with the terms and conditions, and provisions of this Agreement.

k. <u>Diversion and Re-consignment</u>. Carrier shall not divert or re-consign any shipment except upon written instructions of Delphi. Carrier shall not accept instructions for diversion or re-consignment without notice to Delphi, and written consent of Delphi.

l. <u>Motor Vehicles, Equipment and Drivers</u>. At Carrier's sole cost and expense, Carrier will provide all facilities, vehicles, equipment and drivers and other personnel necessary to carry out the Transportation Services. Carrier's drivers and other personnel will conduct themselves in a professional manner at all times. The number and type of any special vehicles or equipment required for Transportation Services will be described in the applicable appendices. Except as provided in any such

Delphi: 
Carrier:

7

Version 5.00 -031205

DELPHI-001107

appendices, Delphi will have no responsibility for such special vehicles or equipment separate from or in addition to the responsibilities provided herein.

i.   <u>Lawful Operation</u>. Carrier will, at its sole cost and expense, operate its motor vehicles and other equipment in a safe, efficient, economical and lawful manner. Carrier agrees to maintain, at its sole cost and expense, all motor vehicles, and other equipment used in the performance of the Transportation Services in good working condition and lawful operating condition at all times. Delphi shall have the right to immediately terminate this Agreement without notice if Carrier's equipment is not so maintained.

ii.   <u>Qualified Personnel</u>. Carrier shall, at its sole cost and expense, employ in the operation of its motor vehicles and equipment only qualified and licensed personnel, and shall procure and maintain such other licenses and permits as required by federal, state, local and foreign authorities with respect to such Transportation Services.

iii.   <u>Operating Expenses</u>. Carrier shall bear the cost and expense of all fuel, oil, tires, parts, service, maintenance and repair in connection with the use and operation of the motor vehicles and other equipment and which may be required to keep such motor vehicles and other equipment in good repair and mechanical condition. Delphi shall not be liable to Carrier for any damage sustained by or to Carrier's motor vehicles and other equipment or for loss by confiscation or seizure of Carrier's motor vehicles and other equipment by any authority, whether public or private.

iv.   <u>Exclusive Control</u>. Carrier shall have sole and exclusive control and direction over

(a)   The manner in which Carrier and its Subcontractors perform the Transportation Services provided for hereunder, and Carrier shall utilize such persons as it may deem necessary in connection therewith, it being understood and agreed that such individuals shall be subject to discharge, discipline, and control solely and exclusively by Carrier. Carrier fully assumes all responsibility for the acts and omissions of its Subcontractors and, when applicable, shall have exclusive liability for the payment of federal, state, local, and foreign payroll taxes or contributions or taxes for unemployment insurance, workers' compensation, old age pensions or other social security and related protection, and agrees to comply with all applicable rules and regulations pertaining thereto. If under the applicable state unemployment compensation law, Carrier has the right to elect whether or not to come under and be bound by the terms of such law, Carrier shall either self-insure or promptly register under said law.

(b)   Carrier maintains the unrestricted right to control how its equipment will be utilized to meet the quoted transit times. This includes


**DELPHI-001108**

motor vehicle selection, acceptance of the goods as loaded, transfer of shipments and mixture of freight. All motor vehicles must be acceptable in size, weight carrying capacity, and configuration to transport the shipment, subject to sub-Section 6.l.iv. above.

    v.    <u>Safe Transportation.</u> Delphi will not request, and Carrier will not perform, Transportation Services, which will require Carrier, or any of its Subcontractors or employees to violate speed, safety or transportation laws, or any other applicable laws, rules or regulations.

    vi.    Unless otherwise provided in the appendices to this Agreement, Carrier will have operable two-way communication onboard in the form of satellite tracking or cell phone.

    vii.    Carrier will comply with Delphi trailer safety standards, and other rules and standards published periodically in writing by Delphi and issued to carriers generally, subject to sub-Section 6.l.iv. above.

m. <u>Display of Delphi's Name.</u> Carrier shall not display any trade name or any mark of Delphi upon Carrier's vehicles or other equipment. Carrier will not advertise or publish the fact it has contracted to furnish Transportation Services to Delphi, or use any trademark, trade name, or other mark of Delphi in advertising or promotional materials, without the prior written consent of Delphi.

n. <u>Clean Equipment.</u> Carrier's equipment offered to Delphi for loading of the goods to be transported is to be clean, odor-free, dry, leak-proof and free of contamination and infestation. Carrier's equipment shall be subject to inspection for suitability and cleanliness by Delphi. The cleanliness or suitability of equipment must meet Delphi's standards of acceptability for the specific products to be transported.

o. <u>Hazardous and Non-Hazardous Waste.</u> Carrier hereby covenants and agrees that no trailer, vehicle or other equipment which transports goods for Delphi hereunder shall ever have been used to transport refuse, garbage, trash or solid or liquid waste of any kind whatsoever, whether hazardous or non-hazardous. Notwithstanding anything to the contrary herein, in the event that Carrier breaches the terms of this sub-Section o., Delphi shall have the right to immediately terminate this Agreement.

p. <u>Delay; Accidents.</u> Carrier shall notify Delphi, whether as shipper, consignee or third party, immediately by telephone, of the occurrence of any accidents, spills, theft, hijacking or other events, which impair the safe and prompt delivery of the goods in its control.

q. <u>Rejected or Returned Shipments.</u> If a shipment is rejected by the consignee, the shipment will be returned to the point of origin or be re-consigned. The applicable

Delphi: 
Carrier:

9

Version 5.00 -031205

**DELPHI-001109**

rate for the return of the shipment will be the same as the inbound rate, and will be paid by the original shipper.

r.  Required Advance Electronic Presentation of Cargo Information. With respect to ground transportation-related services involving the importation of Delphi goods into the United States, Carrier further warrants that it is a Free and Secure Trade (FAST) and Customs-Trade Partnership Against Terrorism (C-TPAT) approved Carrier utilizing only FAST approved commercial drivers as promulgated by the Bureau of Customs and Border Protection.

# 7. COMPENSATION AND PAYMENT.

a.  Rates

i.  Applicable Rates. Delphi agrees to pay to Carrier the rates set forth in Appendix D attached to this Agreement as full and complete compensation for the Transportation Services to be provided under this Agreement. Said rates are intended to apply to all goods shipped or received by Delphi, its Affiliates and/or third parties for Delphi's or any of its Affiliate's account from or to all of Delphi shipping and receiving points.

ii.  No Rate Adjustments. Rates set forth on Appendix D shall remain in effect throughout the Term, provided, however, rates may be established or amended in accordance with Section 2 to meet Delphi's changing shipping schedules and needs.

iii.  Shipments Not Covered by Rate Schedule. If Carrier accepts shipments from Delphi or its agents, which are not covered by Appendix D, Delphi agrees to pay reasonable rates and charges for such contract transportation. In determining the reasonable rates and charges for such transportation, the parties shall consider the then-prevailing level of rates and charges being quoted and assessed for similar transportation services.

iv.  Prepaid, Collect and Third Party Billing. This Agreement shall govern shipments tendered on freight "prepaid", "collect" or "bill to third party" basis.

v.  Delphi's Affiliates. The provisions of this Agreement shall inure to the benefit of Delphi, including its subsidiaries, affiliates, divisions and its parent company, and its parent company's subsidiaries and divisions, which are listed in Appendix B hereto. If any such Delphi Facility has rates and charges in effect on the date of this Agreement lower than those specified in Appendix D to this Agreement, such lower rates and charges shall continue to apply and shall be deemed an amendment to Appendix D to this Agreement, approved by Delphi and Carrier.



Delphi:

Carrier:

10

Version 5.00 -031205

**DELPHI-001110**

vi. <u>Inbound Prepaid Shipments from Delphi's Suppliers.</u>  It is the parties' intent to provide through this Agreement, a contractual relationship with Carrier for Delphi's vendors and suppliers on shipments transported into Delphi's facilities on inbound prepaid shipments unless a lower rate results from application of vendors' and suppliers' rates, contracts or discounts.

vii. <u>Outbound Collect Shipments.</u>  Rates and charges in Appendix D may also apply to Delphi's component suppliers when Delphi is the shipper and the supplier is responsible for the freight charges.

b. <u>Rules; Tariffs.</u>

i. <u>Applicable Rules.</u>  Shipments tendered to Carrier pursuant to this Agreement shall be subject to the rules set forth in Appendix C to this Agreement, including all accessorial and ancillary charges.  Carrier agrees that there are no other applicable rates or charges except those established in Appendices to this Agreement.

ii. <u>Non-Applicability of Tariffs.</u>  Tariffs, service guides or similar publications maintained by Carrier are not applicable to Transportation Services provided pursuant to this Agreement.

iii. <u>Mileages.</u>  Mileages will be determined through the use of the currently effective "Rand McNally, Household Goods MileMaker Mileage Guide, Practical Route Option."

iv. <u>Non-Alternation.</u>  Except as provided in sub-Sections 7.a.v. and vi. of this Agreement, the rules, rates and charges in this Agreement will apply to the exclusion of all other rules, rates or charges published between the same points, and the same routes, in Delphi tariffs or publications, if any.

c. <u>Payment; Procedure.</u>  Carrier shall invoice Delphi promptly following delivery of the shipment, Delphi may require submittal of a bill of lading and/or proof of delivery with invoice as a condition of payment.  Carrier agrees that no penalties, loss of discount or interest will be assessed to Delphi for past due amounts.  Time for payment will commence upon receipt by Delphi of a correct and complete invoice for Transportation Services rendered, and any cash discount privileges will be extended until such time as payment is due hereunder.  Unless otherwise expressly agreed to in writing, the payment date will be the date established by Delphi's Multilateral Netting System ("MNS-2"), which provides, subject to banking and Delphi Holidays, that payment will be made on the second day of the second month following the receipt of a proper invoice.  If the MNS-2 is a Saturday, Sunday or bank or Delphi Holiday, then payment will be on the next business day.  If the parties have agreed in writing to an electronic funds transfer, then Delphi shall transfer funds electronically to the bank designated by Carrier in the applicable electronic funds transfer agreement ("EFT").

Delphi 
Carrier

11

**DELPHI-001111**

In the event of an electronic funds transfer, Delphi will have three (3) additional days from the EFT payment date in which to make the transfer. International movements between United States and Canada will be paid in U.S. funds. Movements made intra-Canada will be paid in Canadian funds.

    i.    <u>Freight Bills; Invoices</u>. Carrier agrees to submit invoices via Electronic Data Interchange ("EDI"). Carrier's freight bills and/or invoices will contain all required data elements as defined by Delphi in the Carrier Reference Manual.

    ii.    <u>Time Limits; Freight Bill Submission.</u> Invoices which are submitted for payment for Transportation Services performed more than twelve (12) months (determined by shipping date) prior to receipt of the invoice by Delphi will not be accepted for payment, except that clerical errors, mathematical errors, extension errors and duplicate payments may be corrected at any time.

d.    <u>Right to Set Off Claims</u>. Delphi shall have the right to set off claims for loss, damage or delay, and claims for overcharge or duplicate payment, against freight or other charges owed to Carrier. Carrier shall have no lien for the retention of freight to secure payment of freight charges.

e.    <u>Time Limits; Overcharge and Undercharge Claims</u>. Each party retains the right for eighteen (18) months following payment to identify any erroneous under- or over-payment of the individual rates identified in this Agreement, and to file a claim accordingly. All overcharges and duplicate payments shall be processed by Carrier in accordance with 49 CFR Part 378.

f.    <u>Time Limits; Suits for Freight Charges</u>. Carrier must bring a civil action to recover charges for Transportation Services provided by Carrier within two (2) years after the date of shipment.

## 8. <u>LIABILITY FOR LOSS, DAMAGE OR DELAY.</u>

a.    <u>Common Carrier Liability- Property Damage and Cargo Loss</u>. Carrier agrees that, in the transportation of all goods hereunder, it assumes the liability for full actual loss, damage or injury to property or goods tendered for the account of Delphi for Transportation Services under this Agreement subject to the provisions of 49 U.S.C. § 14706, and 49 CFR Part 370 (claim regulations), such liability to exist during the Period of Carrier Responsibility specified in sub-Section 6.f.iv. of this Agreement.

b.    <u>Disposition of Damaged Material</u>. In assessing any loss or damage, Carrier understands goods which are transported for Delphi, including vehicles and components thereof, involve distinct needs surrounding maintenance of the quality associated with Delphi parts and safety. Damaged material will not be given to Carrier as part of the claims disposition process.

Delphi: 
Carrier:

12

Version 5.00 -031205

**DELPHI-001112**

c.   Additional Damages.  Carrier shall also be liable for Delphi's reasonable expenses incurred in mitigation of damage, including inspection, sorting, segregating, refurbishing, repackaging and re-shipping, plus Delphi's administrative expenses incurred in connection with the processing of claims against Carrier, plus a proportion of the freight charge for the whole shipment, equal to the ratio of the weight of lost or damaged goods to the weight of the entire shipment.

d.   Non-Applicability of Tariffs.  Irrespective of any provisions in Carrier's tariffs, service guides or similar publications, Carrier's liability for loss, damage or delay shall be determined solely by the terms of this Agreement.  Any attempts to limit Carrier's liability by tariff or other provisions incorporated by reference in a bill of lading or shipping document shall be deemed null and void.

e.   Replacement Shipments.  Carrier acknowledges that Delphi may utilize other carriers to facilitate the movement of delayed shipments, or to ship replacement goods.  If Carrier fails to make timely delivery of any shipment, Carrier shall be responsible for necessary costs, charges, fees and expenses resulting from such delay as per the Service Guarantee in Section 6.d. of this Agreement.

f.   Claims; Filing Requirements.  Claims shall be made in writing, addressed to the Carrier at the address in Section 17.

g.   Time Limits; Claims for Loss or Damage.  The time limit within which Delphi must file a claim against Carrier shall be twelve (12) months from the date of delivery or within twelve (12) months of a reasonable time for delivery if a complete loss. Carrier agrees to acknowledge all claims within thirty (30) days of receipt. All claims shall be paid, settled or disallowed by Carrier within forty-five (45) days of filing. Dis-allowances shall state a lawful reason for declining to accept responsibility for the claim, and shall be stated by the Carrier, not its insurer.  A claim shall not be invalidated when Delphi is unable to determine the amount of the claim within twelve (12) months.  Claims for uncertain amounts shall not be disallowed for that reason alone.

h.   Time Limits; Suits for Loss or Damage.  The time limit within which Delphi must institute suit against Carrier to recover on a claim shall be two (2) years and a day from the date Delphi receives a written disallowance from Carrier.

i.   Suits; Expenses and Attorneys' Fees.  If Delphi is successful in recovering a claim against Carrier in a court of law or arbitration proceeding, Delphi shall be entitled to recover all of its expenses incurred in collecting its claim, including reasonable attorneys' fees, costs and interest from the date of delivery or scheduled delivery of the shipment.  Carrier shall be entitled to recover said expenses only upon a finding by a court or arbitrator that a suit was instituted by the claimant in bad faith. Notwithstanding the foregoing, if applicable state law imposes an obligation of mutuality, each party shall bear its own attorneys' fees and costs.

Delphi: 
Carrier:

13

Version 5.00 -031205

DELPHI-001113

j. <u>Concealed Damage Claims</u>. Claims based on a concealed loss or damage reported to Carrier within fifteen (15) days of the date of delivery shall be treated by Carrier as though an exception notation had been made on the delivery receipt at the time of delivery.

k. <u>Damaged or Refused Shipments; Salvage</u>. Carrier shall not dispose of damaged or rejected goods without the prior written consent of Delphi. Delphi may determine, within its sole discretion, and not subject to a reasonableness standard, whether the goods may be salvaged, and if salvageable, the value of such salvage. Any salvage receipts shall be credited against Delphi's claim against Carrier. Carrier shall deliver all damaged shipments at its expense in accordance with Delphi's instructions.

l. <u>Shipper Load and Count</u>. If shipments are loaded and counted by the shipper ("SL&C"), Carrier will count the goods at the first break-bulk point and report damages, overages and shortages via phone to Delphi, confirmed in writing, or Carrier will be liable for all such damages and shortages.

m. <u>Willful Misconduct</u>. Willful misconduct, negligence, fundamental material breach or conversion on the part of Carrier, its employees, officers, directors or agents shall vitiate any and all liability limitations contained in this agreement.

n. <u>Claims Elimination</u>. Carrier is expected to manage operations in a manner which eliminates loss and damage claims. All operations and management personnel must be trained in damage elimination. The Carrier's performance must be tracked in all service areas, especially claims frequency. This performance tracking should also be used when selecting and utilizing services other than those directly controlled by the Carrier.

o. <u>Survival of Provisions</u>. The provisions of this Section 8 shall survive cancellation, termination, or expiration of this Agreement.

**9. <u>CONTRACT CARRIAGE</u>.** Delphi and Carrier intend and expressly agree this Agreement is to be a contract authorized under 49 U.S.C. §13102(4) and § 14101(b) to provide specified services under specified rates and conditions, and hereby expressly waive any and all rights and remedies under the motor carrier provisions of the Interstate Commerce Act, 40 United States Code §13101 *et seq.*, for the Transportation services provided hereunder. The parties hereto intend that the contractual arrangement be continuous in nature until such time as this Agreement terminates or is terminated by one or both of the parties. Any use of bills of lading, or other freight documents referring to "common carriers" and/or "tariffs", shall not alter the contract relationship created hereunder between the parties.

**10. <u>INSURANCE</u>.**

a. <u>Liability, Workers Compensation, Employers Liability and Cargo</u>. Carrier will defend, hold harmless and indemnify Delphi for any claim for insurance premium or any claim by any employee of the Carrier for injuries sustained in the ordinary course

Delphi:
Carrier:

14

Version 5.00 -031206

DELPHI-001114

of business, including, but not limited to, drivers, lumper's, helpers, agents or Subcontractors of Carrier. Carrier shall, at its sole cost and expense, obtain and maintain in full force at all times during the existence of this Agreement, the following types of insurance coverage's, with minimum limits as set forth below.

i.   <u>Commercial General Liability</u>. Covering liability arising from premises, operations, independent contractors, products-completed operations, personal and advertising injury, and blanket contractual liability - US$1,000,000 each occurrence.

ii.  <u>Business Automobile Liability</u>. Covering all owned, hired, and non-owned vehicles - US$1,000,000 each occurrence, including all applicable statutory coverage's.

iii. <u>Workers Compensation</u>. Statutory limits for all states of operation (U.S. only).

iv.  <u>Employers Liability</u>. US$1,000,000 each employee for bodily injury by accident and - US$1,000,000 each employee for bodily injury by disease.

v.   <u>Blanket Crime.</u> Coverage including employee dishonesty for acts against or involving Delphi property - US$250,000 per occurrence (or Cargo Insurance without an exclusion for Crime or a bond as provided in Section 10b. below).

vi.  <u>Cargo Insurance</u>. Motor Truck Cargo Legal Liability on an "all risk" basis including loading and unloading and interim storage. Limit will be equal at least to the highest value shipped on any one conveyance (or in storage) and in any event not less than US$250,000 each claim.

vii. If any governmental body requires amounts of insurance in excess of that required in this Section 10, such required minimums will take precedence.

b. <u>Cargo Insurance; Employee Infidelity</u>. Carrier's cargo insurance policies shall not exclude coverage for infidelity, fraud, dishonesty or criminal acts of Carrier's employees, agents, officers or directors. If said policy contains such exclusions, Carrier shall obtain and furnish a surety bond providing such coverage to the satisfaction of Delphi or by maintaining Crime Insurance with limits of US$250,000.

c. <u>Cargo Insurance; BMC-32 Endorsement</u>. Carrier shall also obtain and deliver to Delphi a BMC-32 Endorsement to its cargo insurance policy in the form required by the FMCSA in 49 CFR § 387.313. Said endorsement shall protect Delphi for loss of or damage to its goods while in the possession or control of Carrier under this Agreement, up to the limits of said endorsement, and subject to its limitations.

d. <u>Additional Insured on Liability Policies</u>. Delphi shall be an additional insured on the Commercial General Liability and Business Automobile Liability policies.


DELPHI-001115

e. <u>Loss Payee on Cargo Policy</u>. Delphi shall be a "loss payee" on the cargo liability policy.

f. <u>Waiver of Subrogation and Primary Policies</u>. Carrier's insurance policies shall provide for a waiver of subrogation and shall be written as primary policies not contributing with or in excess of coverage that Delphi may carry.

g. <u>Certificates of Insurance</u>. Carrier shall provide certificates of insurance evidencing the insurance coverage required under this Agreement including additional insured on the Commercial General Liability and Business Automobile Liability policies and loss payee on the Cargo Policy. The certificates of insurance shall contain a clause providing that the insurer will not cancel or change coverage of the insurance without first giving Delphi thirty (30) days' prior written notice. Such certificates shall be in a form acceptable to and underwritten by an insurance company reasonably satisfactory to Delphi and with an A.M. Best Company rating of A- (A minus) or above.

h. <u>Self-Insurance</u>. If Carrier is self-insured, it shall provide evidence of such, including proof of acceptance of self-insurance status by the FMCSA or other governing agency.

i. <u>No Representation as to Adequacy</u>. It is expressly understood that Delphi does not represent that the types or minimum limits of the insurance set forth herein are adequate to protect the Carrier's interests and the purchase of appropriate insurance coverage's or the furnishing of a certificate of insurance shall not release Carrier from its respective obligations or liabilities under this agreement. Deductible amounts under the foregoing policies shall be paid by Carrier.

**11. INDEMNITY.** Carrier shall indemnify, defend and hold harmless Delphi, its subsidiaries and affiliates, and its and their shareholders, directors, officers, employees, agents and representatives, from any and all claims, demands, actions, damages, liabilities, costs and expenses, including reasonable attorneys' fees and expenses, for the death or personal injury of individuals, and/or the damage, loss or destruction of real or personal property of individuals; except those claims, demands, actions, damages, liabilities, costs and expenses arising out of the sole negligence or intentional acts of Delphi and/or its subsidiaries and affiliates. Carrier's indemnification under this Agreement includes any and all costs and expenses incurred in connection with the enforcement of this Section 11. The provisions of this Section 11 shall survive termination or expiration of this Agreement.

**12. NON-EXCLUSIVE AGREEMENT.** It is understood and agreed between the parties hereto that this is a non-exclusive Agreement and that Carrier shall be free to accept freight for transportation from shippers other than Delphi and that Delphi shall be free to tender freight for transportation to carriers other than Carrier.

**13. NO AGENCY.** Carrier shall perform the Transportation Services hereunder as an independent contractor. Carrier represents that it is entirely independent and that it is not, and will not become as a result of entering into this Agreement, substantially economically

Delphi: 
Carrier:

16

Version 5 00 -031'2/05

**DELPHI-001116**

dependent upon Delphi and there is no functional integration of Delphi's and the Carrier's respective operations. Nothing in this Agreement makes either party the agent or legal representative of the other for any purpose whatsoever, nor grants either party any authority to assume or create any obligation on behalf of or in the name of the other party. Without affecting the foregoing, Carrier will, at its expense, comply with all applicable federal, state, local, and foreign laws and regulations for social security, unemployment compensation, and tax withholding laws, immigration, occupational health and safety of its employees, wages and hours of employment, and affirmative and equal employment opportunity and employment practices. Carrier further agrees not to discriminate in its employment practices due to age, sex, race, color, creed or national origin and shall indemnify and hold harmless Delphi from any damage resulting from such failure.

**14. ALTERNATIVE DISPUTE RESOLUTION.** If the parties agree to arbitrate, disputes shall be submitted to the American Arbitration Association for arbitration under that organization's Commercial Arbitration Rules and Procedures. If so submitted to arbitration, no court action can be taken by either party prior to conclusion of the arbitration proceeding (other than the filing of suit to protect against the running of any period of limitations set forth in this Agreement or applicable statute), and the Arbitrator's decision shall be final and binding and judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction thereof.

**15. ELECTRONIC DATA INTERCHANGE.** All information communicated electronically by Carrier will be in compliance with the standards of the American National Standard Institute. All shipping documents issued will be subject to the terms and conditions of this Agreement including the applicable Appendices. The Carrier shall retain or archive such transmissions in a suitable permanent media for a period of at least five years and shall make print copies of such records available on request.

**16. ASSIGNMENT.** Delphi may assign its rights and obligations under this Agreement to any controlled affiliate without Carrier's prior written consent. Carrier may not assign or delegate its rights or obligations under this Agreement without Delphi's prior written consent.

**17. NOTICES.** Except as otherwise provided in this Agreement, all required notices shall be in writing and will be considered given when delivered personally, express mail courier, or registered or certified mail, return receipt requested, addressed as follows (or any other address that is specified in writing by either party):

|          |                                      |
|----------|--------------------------------------|
| Delphi:  | Delphi Automotive Systems LLC        |
|          | 5725 Delphi Drive                    |
|          | Troy, MI 48098                       |
|          | Attention: Global Logistics Director |
|          | Mail Code: 483-400-216               |
|          |                                      |
| Carrier: | Monarch Transport, LLC               |
|          | 1616 Argentine Blvd.                 |
|          | Kansas City, KS 66105                |

Delphi:
Carrier:

17

Version 5.00 -031205

DELPHI-001117

**18. GOVERNING LAW.** This Agreement shall be construed and enforced according to the internal laws of the State of Michigan, applicable to contracts executed in and to be performed entirely within that state.

**19. CONFIDENTIALITY.** As part of the business relationship between Carrier and Delphi, Carrier may be in or come into possession of information or data which constitute trade secrets, know-how, confidential information or are otherwise considered secret by Delphi (hereinafter "Information"). In consideration of the receipt of such Information and potential business, Carrier agrees to maintain such Information in the utmost of confidence; to use such Information solely in connection with the provision of Transportation Services and not in any manner harmful to Delphi; and to take all measures necessary to protect such Information. Each party will keep confidential, in accordance with its procedures for maintaining the confidence of other information of similar kind, the terms of this Agreement, including the appendices hereto, and not disclose such Information to non-affiliated third parties (excluding freight bill auditors, freight bill payers, and consultants) except as required by law, rule or regulation.

**20. FORCE MAJEURE.** Any delay or failure by either party to perform its obligations hereunder will be excused if, and to the extent that, such delay or failure is caused by or arises out of an event or occurrence beyond the reasonable control of such party and without its fault or negligence, such as, by way of example, acts of God or the public enemy, explosion, riot, war, sabotage, insurrection, fire, flood, labor disorder, (including lockouts, strikes and slowdowns), civil commotion, closing of the public highways and actions of a government authority (whether or not valid); provided that written notice of such delay or failure (including the anticipated duration of the delay) is given by the affected party to the other party within ten (10) days of the event or occurrence. If delay by Carrier lasts more than thirty (30) days or Carrier does not provide adequate assurance to Delphi that the delay will cease within thirty (30) days, Delphi may immediately terminate this Agreement, in whole or in part, without liability.

**21. ACCESSORIAL CHARGES.** Delphi's 'Schedule of Changes Addendum' to Appendix C 'Rules and Accessorial Charges' is hereby incorporated into and made an integral part of this Agreement. All provisions of such Addendum apply; provided, however, that in the event of a conflict with an appendix, such appendix will control with respect to its routes, rates and charges only. Notwithstanding the requirement in Section 2 that amendments be in writing and signed by both parties and dated, Delphi may make revisions to the Schedule of Charges Addendum and any revision to such the such Addendum will also become a part of this Agreement, provided (i) Delphi provides Carrier with a copy of such revision, and (ii) Carrier does not object to such revision within thirty (30) days of receipt thereof.

**22. SEVERABILITY.** If any provision of this Agreement is invalid or unenforceable under any statue, regulation, ordinance, executive order or other rule of law, such provision will be deemed reformed or deleted, as the case may be, but only to the extent necessary to comply with such statue, regulation, ordinance, order or rule, and the remaining provisions of this Agreement will remain in full force and effect.

Delphi: 
Carrier:

18

Version 5.00 -031205

**DELPHI-001118**

**23. ENTIRE AGREEMENT.** This Agreement and the attached appendices contain the entire understanding of the parties, supercede all prior or contemporaneous discussions, understandings, negotiations and agreements, whether oral or written, and cannot be amended except in writing and, subject to Section 21 above, signed by both parties.

**24. JURISDICTION AND VENUE.** Any lawsuit arising directly or indirectly out of this Agreement shall be litigated in the Circuit Court for Oakland County, Michigan, or if original jurisdiction can be established, in the United States District Court for the Eastern District of Michigan.

**25. WAIVER.** A waiver of a breach of any term of this Agreement will not be considered (i) a waiver of a further breach of the same term, or (ii) a waiver of a breach of any other term.

**26. COUNTERPARTS.** This Agreement may be signed in one or more counterparts, and each counterpart will be considered an original Agreement. All of the counterparts will be considered one document and become a binding agreement when one or more counterparts have been signed by each of the parties and delivered to the other.

**27. TITLES AND HEADINGS.** Titles and headings are inserted in this Agreement for reference purposes only, and must not be used to interpret this Agreement.

**28. THIRD-PARTY BENEFICIARIES.** This Agreement confers no rights or remedies on any third party, other than the parties to this Agreement and their respective successors and permitted assigns.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed by their duly authorized representatives as of the date first above written.

Delphi Automotive Systems LLC

By:

Title: Director, Global Logistics

Monarch Transport, LLC

By:

Title: General Manager

Delphi:

Carrier:

19

Version 5.00 -031205

DELPHI-001119

APPENDIX A
CARRIER'S OPERATING AUTHORITIES

CONTRACT CARRIER

Delphi:
Carrier: 

19

Version 3 1 - 021215

DELPHI-001120

## APPENDIX B
### DELPHI'S NORTH AMERICAN FACILITIES AND AFFILIATES

Divisional Global Logistics Managers

| | |
|---|---|
| Delphi Electronics & Safety Headquarters | 765-451-4082 |
| Delphi Energy and Chassis Headquarters | 248-813-4431 |
| Delphi Thermal & Interior Systems Headquarters | 248-655-0908 |
| Delphi Packard Electric Systems Headquarters | 330-373-7444 |
| Delphi Saginaw Steering Systems Headquarters | 989-757-3508 |
| Delphi Product & Service Solutions Headquarters | 248-267-8748 |

| Division | Plant Name | Cisco | Address | City | State | Country | Zip |
|---|---|---|---|---|---|---|---|
| E&S | Deltronicos de Matamoros SA de CV | 66610 | Carretera A Matamoros KM. 13.5 , Brecha E-99 A.P. 1201 | Matamoros | Tamaulipas | Mexico | 88780 |
| E&S | Delnosa | 66972 | Parque Industrial Del Norte S/N , Libramiento Matamoros , Monterrey | Reynosa | Tamaulipas | Mexico | 88500 |
| E&S | JV: Flip Chip Tech. | N/A | 3701 University Dr, Bldg. B, | Phoenix | Arizona | United States | 85034 |
| E&S | HE Microwave | N/A | 2900 E. Elvira Rd. | Tuscon | Arizona | United States | 85706-7129 |
| E&S | Kokomo Ops | 66001 | 2151 East Lincoln Rd. | Kokomo | Indiana | United States | 46904-9005 |
| E&S | Plants 6-7-9 | 66001 | 2033 East Boulevard | Kokomo | Indiana | United States | 46904-9005 |
| E&S | Plant 10 | 66001 | 1800 East Lincoln Rd. | Kokomo | Indiana | United States | 46904-9005 |
| E&S | Cuneo Service | 66001 | 1125 East Vaile Ave. | Kokomo | Indiana | United States | 46904-9005 |
| E&S | Plant 8 | 66001 | 2100 East Lincoln Rd. | Kokomo | Indiana | United States | 46904-9005 |
| E&S | FAB III | 66001 | 2150 East Lincoln Rd. | Kokomo | Indiana | United States | 46904-9005 |
| E&S | Plant 12/ERC | 66001 | 2705 South Goyer Rd. | Kokomo | Indiana | United States | 46904-9005 |
| E&S | Flint Operations | 66031 | 4134 Davison Rd. | Burton | Michigan | United States | 48529 |
| E&S | Flint Operations | 66031 | 3224 Davison Rd. | Flint | Michigan | United States | 48556 |
| E&S | Fuba Automotive | N/A | 2944 Waterview Dr. | Rochester Hills | Michigan | United States | 48309 |
| E&S | JV: CEI | 66614 | 2408-A Industrial Dr. | Springfield | Tennessee | United States | 37172 |
| E&S | Los Indios Distribution Center | 66610 | 601 Joaquin Cavazos Rd. | Los Indios | Texas | United States | 78567 |

Delphi:
Carrier: 

21

Version 5.00 -031205

DELPHI-001121

| Division | Plant Name | Cisco | Address | City | State | Country | Zip |
|---|---|---|---|---|---|---|---|
| D | Milwaukee Operations | 66011 | 7929 South Howell | Oak Creek (Milwaukee) | Wisconsin | United States | 53154 |
| E&C | Oshawa Operations | 34031 | 700 Park Road South | Oshawa | Ontario | Canada | L1J8R1 |
| E&C | Oshawa Battery | 35009 | 1255 Stevenson Rd. S | Oshawa | Ontario | Canada | L1J8P9 |
| E&C | Productos Delco de Chihuahua | 34065 | Ave. de las Industrias 4909, Nombre de Dios | Chihuahua | Chihuahua | Mexico | 31110 |
| E&C | Delphi Sistemas de Enegia Chihuahua | 35028 | Ave Industrias 4907, ZI Nobre De Dios | Chihuahua | Chihuahua | Mexico | 31110 |
| E&C | Sistemas Electricos y Conmutadores | 31022 35024 | Avenida de las Industrias #1230 Parque Industrial Antonio J. Bermúdez | Juarez | Chihuahua | Mexico | 32310 |
| E&C | Saltillo | 34063 | Carretera Saltillo, P. Negras, KM 8.54 8540, 25900 | Ramos Arizpe | Coahuila | Mexico | 25900 |
| E&C | Torreon | 35032 | Calle Alamedas 750 Esquina Torreon MX. | Torreon | Coahuila | Mexico | 37077 |
| E&C | Bujias Mexicanas (Bumex) | N/A | Bujias Mexicana SA de CV, Av. Benito Juarez 80, San Pablo Xalpa | Mexico City | Estado de Mexico | Mexico | 54090 |
| E&C | Tebo | N/A | Calle Ferrocarril 5, Francc. Industrial Alce Blanco, Naucalpan de Juarez, Edo. | Celaya | Guanajuato | Mexico | 38000 |
| E&C | Gabriel de Mexico - JV | N/A | Gabriel de Mexico SA de CV, Calle de los Ryes 10 y 2, Fracc. Industrial Puente de Viga | Tlalnepantla | Mexico | Mexico | 54070 |
| E&C | Katcon | N/A | Katco S A. de C.V. Av Manuel Ordonez 601, Santa Catarina | Monterrey | Nuevo Leon | Mexico | 64849 |
| E&C | San Luis Potosi | N/A | 215 Zona Industrial del Potosi | San Luis Potosi | San Luis Potosi | Mexico | 78395 |
| E&C | Ca-Le | N/A | Empresa A-DE De Tlaxcala, S A. De C.V. , Manzana 2 Seccion C, C.D. Industrial Xicontencatl | Tetla | Tlaxcala | Mexico | 90430 |
| E&C | Anaheim | 35010 | 1201 N. Magnolia Ave | Anaheim | California | United States | 92801-2609 |
| E&C | Cerritos BDC | 35990 | 16028 South Marquardt Ave. | Cerritos | California | United States | 90703 |
| E&C | Jacksonville BDC | 55003 | 12740 Kenan Dr. Building 100 | Jacksonville | Florida | United States | 32216 |
| E&C | Fitzgerald | 35012 | 342 Perry House Rd. | Fitzgerald | Georgia | United States | 31750 |
| E&C | Bolingbrook BDC | 35997 | 471 Quadrangle Dr. | Bolingbrook | Illinois | United States | 60440 |
| E&C | Anderson Generator Plant 11 | 35111 | 2911 South Scatterfield Road | Anderson | Indiana | United States | 46016 |

Delphi: 
Carrier:

22

Version 5.00 -031205

**DELPHI-001122**

| Division | Plant Name | Cisco | Address | City | State | Country | Zip |
|---|---|---|---|---|---|---|---|
| E&C | Plant #18 | 35118 | 2900 S. Scatterfeild Rd. | Anderson | Indiana | United States | 46016 |
| E&C | Plant #20 | 35120 | 2620 E. 38th St. | Anderson | Indiana | United States | 46018 |
| E&C | Plant #38 | 35138 | 2900 S. Scatterfeild Rd. | Anderson | Indiana | United States | 46016 |
| E&C | Indianapolis Batteries Plant 39 | 35039 | 7601 East 88th Street | Indianapolis | Indiana | United States | 46256 |
| E&C | Indianapolis Foreign Trade Zone | 35437 | 1910 Girls School Rd. | Indianapolis | Indiana | United States | 46256 |
| E&C | Olathe | 35008 | 400 W. Dennis Ave. | Olathe | Kansas | United States | 66061 |
| E&C | Coopersville | 58006 | 999 West Randall | Coopersville | Michigan | United States | 49404 |
| E&C | Flint East | 31005 | 1300 N. Dort Hwy | Flint | Michigan | United States | 48556 |
| E&C | Flint West | 31023 | 300 N. Chevrolet Ave | Flint | Michigan | United States | 48555 |
| E&C | Delphi Energy & Chassis World Headquarters | 34999 | 4800 South Saginaw Street | Flint | Michigan | United States | 48507 |
| E&C | Grand Rapids | 58005 | 2100 Burlingame Ave, SE | Grand Rapids | Michigan | United States | 49509-1753 |
| E&C | Delphi E&C - Nabco | N/A | 14407 Industrial Dr. | Kaleva | Michigan | United States | 49645 |
| E&C | Delphi E&C - Nabco | 35511 | 639 N. Mill | Marion | Michigan | United States | 46256 |
| E&C | Delphi E&C - Nabco Plant 69 | 35602 | 591 E. Church Ave. | Reed City | Michigan | United States | 49677 |
| E&C | Saginaw | 41048 | 2328 E. Genesee Ave. | Saginaw | Michigan | United States | 48601 |
| E&C | Laurel, Plt 28 | 35018 | One Thames Ave. | Laurel | Mississippi | United States | 39440 |
| E&C | Cranbury BDC | 35908 | One Capital Drive - Suite 102 | Cranbury | New Jersey | United States | 08512 |
| E&C | New Brunswick | 35006 | 760 Jersey Ave. | New Brunswick | New Jersey | United States | 08901 |
| E&C | Rochester | 58001 | 1000 Lexington Ave. | Rochester | New York | United States | 14606 |
| E&C | Home Ave | 34005 | 2701 Home Ave, | Dayton | Ohio | United States | 45417 |
| E&C | Wisconsin Blvd | 41001 | 1420 Wisconsin Blvd. | Dayton | Ohio | United States | 45408 |
| E&C | Needmore Rd | 41002 | 3100 Needmore Rd, | Dayton | Ohio | United States | 45414 |
| E&C | Kettering | 34001 | 2000 Forrer Blvd. | Kettering | Ohio | United States | 45420 |
| E&C | Sandusky | 42017 | 2509 Hayes Ave. | Sandusky | Ohio | United States | 44870 |
| E&C | Vandalia | 34008 | 480 N. Dixie Dr. | Vandalia | Ohio | United States | 45377 |
| E&C | Catalyst | N/A | 1301 Main Parkway | Tulsa | Oklahoma | United States | 74156 |

Delphi: 
Carrier:

23

Version 5.00 -031205

DELPHI-001123

| Division | Plant Name | Cisco | Address | City | State | Country | Zip |
|---|---|---|---|---|---|---|---|
| E&C | Saturn Vertical Logistics Cent | 34033 | 1974 Ridgecrest Drive | Columbia | Tennessee | United States | 38401 |
| E&C | Roanoke BDC | 35919 | 724 Henrietta Creek Rd. | Roanoke | Texas | United States | 76262 |
| E&C | Wichita Falls | 31021 | 8600 Central Freeway N. | Wichita Falls | Texas | United States | 76306 |
| E&C | Milwaukee | 31020 | 7929 South Howell | Milwaukee (Oak Creek) | Wisconsin | United States | 53154 |
| T&I | Delphi Harrison Thermal Systems c/o Automodular | 37638 | 1100 Squires Beach Road | Pickering | Ontario | Canada | L1W 3M8 |
| T&I | Silao Operations | 37606 | Lotes 47 al 50, Manzana 4 Parque Industiral Fipasi | Silao | Mexico | Mexico | 36100 |
| T&I | Tuscaloosa Operations | 37008 | 3440 Kauloosa Ave | Tuscaloosa | Alabama | United States | 35401 |
| T&I | Delphi Harrison Thermal Systems c/o Modas | 37672 | 5020 Flournoy Lucas Road | Shreveport | Louisiana | United States | 71129 |
| T&I | Delphi Harrison Thermal Systems c/o Jamestown Container | 37610 | 2345 Walden Avenue | Buffalo | New York | United States | 14225 |
| T&I | Delphi Harrison Thermal Systems c/o Integrated Quality Solutions | 37026 | 2299 Kenmore Avenue | Kenmore | New York | United States | 14217 |
| T&I | Delphi Harrison Thermal Systems c/o Par Industries | 37629 | 5638 Old Saunders Settlement Road | Lockport | New York | United States | 14094 |
| T&I | Delphi Harrison Thermal Systems Building 6 A & E | 37011 | 200 Upper Mountain Road | Lockport | New York | United States | 14094 |
| T&I | Lockport Complex | 37002 | 200 Upper Mountain Rd. Bldg 7, Plt 2 | Lockport | New York | United States | 14094 |
| T&I | Lockport Complex | 37003 | 200 Upper Mountain Rd.Bldg 8, Plt 5 | Lockport | New York | United States | 14094 |
| T&I | Lockport Complex | 37004 | 200 Upper Mountain Rd.Bldg 9, Plt 4 | Lockport | New York | United States | 14094 |
| T&I | Lockport Complex | 37015 | 200 Upper Mountain Rd.-Model Shop Plt2 Bldg 7 | Lockport | New York | United States | 14094 |
| T&I | Delphi Harrison Thermal Systems c/o Mariah Industries | 37679 | 3193 Buffalo Ave | Niagara Falls | New York | United States | 14303 |
| T&I | Delphi Harrison Thermal Systems c/o Park Enterprises | 37027 | 226 Jay Street | Rochester | New York | United States | 14608 |
| T&I | Kettering operations | 37024 | 3535 South Kettering Boulevard | Kettering | Ohio | United States | 45439 |
| T&I | Moraine Operations | 37007 | 3600 Dryden Rd | Moraine | Ohio | United States | 45439 |
| T&I | Delphi Harrison Thermal Systems c/o Jamestown Moraine Industries | 37607 | 2447 D. East River Road | Moraine | Ohio | United States | 45439 |
| T&I | Delphi Harrison Thermal Systems c/o TDS Automotive | 37661 | 1331 North Main Street | Mt Pleasant | Tennessee | United States | 38474 |

Delphi
Carrier 

24

Version 5.00 -031205

DELPHI-001124

| Division | Plant Name | Cisco | Address | City | State | Country | Zip |
|---|---|---|---|---|---|---|---|
| T&I | Rio Bravo XX | 37009 | 32 Celerity Wagon | El Paso | Texas | United States | 79906 |
| E&S | Rimir | 36701 | Ave. Michigan y Ohio S/N. Parque Industrial del Norte | Matamoros | Tamaulipas | Mexico | 87310 |
| E&S | CMM (Matamoros) | 39701 | Ave. Michigan y Prolongación Uniones. Parque Industrial del Norte A.P. 478 | Matamoros | Tamaulipas | Mexico | 87310 |
| T&I | Adrian | 39050 | 1450 E. Beecher | Adrian | Michigan | United States | 49221 |
| T&I | Lake Orion | 36117 | 4872 Lapeer Road | Lake Orion | Michigan | United States | 48359 |
| T&I | Tuscaloosa Customer Service Center | 36702 | 11005 Ed Stephens Rd | Cottondale | Alabama | United States | 35453 |
| T&I | Lansing Cockpit Assembly | 36703 | 4521 W. Mt. Hope Hwy Suite 2 | Lansing | Michigan | United States | 48917 |
| T&I | North Kansas City Cockpit Plant | 36118 | 144 West 23rd Avenue | North Kansas City | Missouri | United States | 64116 |
| T&I | Columbus | 36121 | 200 Georgesville Rd., MS C-10 | Columbus | Ohio | United States | 43228 |
| T&I | Vandalia | 39002 | 250 Northwoods Blvd. | Vandalia | Ohio | United States | 45377 |
| P | Noma Automotive | 60998 | 245 Drumlin Circle | Concord | Ontario | Canada | L4K3ER |
| P | Plant 51   A.C.E. II (Casas Grandes) | 60851 | Ave. Tulum y Montealbán S/N Parque Industrial Paquimé | Casas Grandes | Chihuahua | Mexico | 31700 |
| P | Plant 52   A.C.E. I (Chihuahua I) | 60852 | Parque Industrial Las Américas S/N | Chihuahua | Chihuahua | Mexico | 31200 |
| P | Plant 56   A.C.E. V (Chihuahua II) | 60856 | Km. 3 Carr. a Avalos y Ave. Pacheco S/ N | Chihuahua | Chihuahua | Mexico | 31090 |
| P | Plant 54   A.C.E. VIII (Chihuahua III) | 60859 | Parque Industrial Las Américas S/N | Chihuahua | Chihuahua | Mexico | 31200 |
| P | Plant 57   A.C.E.IV (Cuauhtemoc) | 60857 | Carr. a Anahuac Km. 5 Parque Industrial Cuauhtemoc | Cuauhtemoc | Chihuahua | Mexico | 31579 |
| P | Plant 55   A.C.E. III (Delicias) | 60855 | Calle 3a. y Avenida 16 Poniente # 1501 | Delicias | Chihuahua | Mexico | 33000 |
| P | Plant 34   R.B E. III | 60834 | Ave. Rio Bravo S/N Parque Industrial Rio Bravo Waterfill | Juarez | Chihuahua | Mexico | 32550 |
| P | Plant 35   R.B.E. X | 60835 | Calle Tapioca 5516, fracc. Ampliacion Aeropuerto, Apartado Postal | Juarez | Chihuahua | Mexico | 32310 |
| P | Plant 39   R.B.E. I (C.C.E. I) | 60835 | Ave. De las Industrias S/N Parque Industrial Antonio J. Bermudez | Juarez | Chihuahua | Mexico | 32310 |
| P | Plant 31   R.B.E. XI | 60836 | Calle Tapioca #9411 | Juarez | Chihuahua | Mexico | 32320 |

Delphi  Carrier

25

Version 5.00 -031205

DELPHI-001125

| Division | Plant Name | Cisco | Address | City | State | Country | Zip |
|---|---|---|---|---|---|---|---|
| P | Plant 37  R.B.E. IX (C.C.E. III) | 60837 | Ave. Tecnológico y Juan Kepler #6915 | Juarez | Chihuahua | Mexico | 32320 |
| P | Plant 38 / 38A R.B.E. V  C.C.E. V) | 60838 | Fresnel y Farenheit #8525 Parque Industrial Antonio J. Bermúdez | Juarez | Chihuahua | Mexico | 32310 |
| P | Plant 32  R.B.E. VII (C.C.E. VII) | 60841 | Ave. Rio Bravo S/N Parque Industrial Rio Bravo Waterfill | Juarez | Chihuahua | Mexico | 32550 |
| P | Plant 33  R.B.E. IV | 60842 | Rafael Perez Sena y Henry Dunant  Parque Industrial Omega | Juarez | Chihuahua | Mexico | 32320 |
| P | Volvo Truck Mfg. Facility | N/A | Lote Bravo II | Juarez | Chihuahua | Mexico | 32310 |
| P | Bermudez Industrial Park Calle | N/A | Bermudez Industrial Park | Juarez | Chihuahua | Mexico | 32310 |
| P | Plant 58  A.C.E. VI | 60858 | Carr. Panamericana Km. 1588 | Meoqui | Chihuahua | Mexico | 33130 |
| P | Plant 50 A.C.E. XI | 60455 | Predio Santo Tomás S/N | Parral I | Chihuahua | Mexico | 33800 |
| P | Plant 88  E.C.C.S.A. VI (Sabinas) | 60888 | Vicente Riva Pialacio # 1705 | Sabinas | Coahuila | Mexico | 26760 |
| P | Cerritos Complex Plts 93/94 E.C.C.S.A. IX / X | 60893 | Juan Navarro #390 Amiento Fundadores | Saltillo | Coahuila | Mexico | 25020 |
| P | Cerritos Complex Plts 93/94 E.C.C.S.A. IX / X | 60894 | Juan Navarro #390 Amiento Fundadores | Saltillo | Coahuila | Mexico | 25020 |
| P | Delphi Mechantronic Systems | 60054 | Poniente 4 Y Norte No 6 | Matamoros | Matamoros | Mexico | 87310 |
| P | Plant 87 E.C.C.S.A. V | 60887 | Carretera A Don Martin #200 | Anahuac | Nuevo Leon | Mexico | 65030 |
| P | Plant 86 E.C.C.S.A. IV | 60886 | Ave. Alamo 80 | Linares | Nuevo Leon | Mexico | 67755 |
| P | Plant 83  E.C.C.S.A. I | 60883 | Pablo Livas #2501, Col. Las Villas | Monterrey | Nuevo Leon | Mexico | 67070 |
| P | Plant 84 E.C.C.S.A. II | 60884 | Serafin Pena #2055, Col. Fomerrey | Monterrey | Nuevo Leon | Mexico | 67070 |
| P | Plant 96 E.C.C S.A. XI | 60896 | Ave. Mexico #200 | Monterrey | Nuevo Leon | Mexico | 67070 |
| P | Plt 85 E.C.C.S.A. III (Sabinas Hidalgo) | 60885 | Calle Iturbide #1305 poniente | Sabinas Hidalgo | Nuevo Leon | Mexico | 65200 |
| P | Plant 59  A.C.E. VII (Los Mochis) | 60895 | Blvd. Macario Gaxiola #1001 Sur Col. Raúl Romanillo | Los Mochis | Sinaloa | Mexico | 81280 |
| P | Plt 81 / Dist Ctr A.A. I | 60848 | Iturbide #6970, Parque I. Longoria | Nuevo Laredo | Tamaulipas | Mexico | 88075 |
| P | Plant 82  A.A. II (Nuevo Laredo II) | 60882 | Av Finsa Esquina Con Fidel Velazyuez, Parque Industrial Finsa | Nuevo Laredo | Tamaulipas | Mexico | 88075 |
| P | Victoria Plts 91/92 E.C.C.S.A. VII / VIII | 60891 | Boulevard Adolfo Lopez Mateos #805 PTE, Col. Las Adelitas | Victoria | Tamaulipas | Mexico | 87020 |

Delphi 
Carrier

Version 5 00 -031205

**DELPHI-001126**

| Division | Plant Name | Cisco | Address | City | State | Country | Zip |
|---|---|---|---|---|---|---|---|
| P | Plant 62   Cableados II (Fresnillo I) | 60860 | Ave. Del Parque #33 Col. Esparza | Fresnillo | Zacatecas | Mexico | 99080 |
| P | Plant 63  Cableados III  (Fresnillo II) | 60861 | Calle Apozol #101, Col. Solidaridad | Fresnillo | Zacatecas | Mexico | 99010 |
| P | Plant 61 Cableados I (Zacatecas) | 60863 | Calzada de la Revolución #63 Col. Ejidal | Guadalupe | Zacatecas | Mexico | 98600 |
| P | Foley | 53015 | 17195 Hwy. U.S. 98 W | Foley | Alabama | United States | 36535 |
| P | Plant 43    Gadsden | 60092 | 4605 Airport Rd. | Gadsden | Alabama | United States | 35904 |
| P | Fort Defiance | 53020 | P.O Box 679 (Street Addres - Old Coal Mine Rd) | Fort Defiance | Arizona | United States | 86504 |
| P | Irvine | 53201 | 17150 Von Karman Avenue | Irvine | California | United States | 92713-9685 |
| P | Packard Hughes Interconnect | 53205 | 9475 Nicola Tesla Court | San Diego | California | United States | 92154 |
| P | Delphi Mechatronic Systems | 60046 | 3110 Woodcreek Dr | Downers Grove | Illinois | United States | 60515 |
| P | Lyall Technologies | 60975 | 808 S. Cleveland Ave | Mt. Ayr | Iowa | United States | 50854 |
| P | Lyall Technologies | 60975 | 111 E. Dewey St | Murray | Iowa | United States | 50174 |
| P | Brookhaven Plants 23 / 26 / 28 | 60030 | 925 Industrial Park Rd | Brookhaven | Mississippi | United States | 39601 |
| P | Brookhaven - ABM Warehouse | 60031 | 120 Boyce Dr | Brookhaven | Mississippi | United States | 39601 |
| P | Clinton Complex Plants 21 / 22 / 25 / 27 | 60021 | 1001 Industrial Park Dr | Clinton | Mississippi | United States | 39056 |
| P | Clinton Complex Plants 21 / 22 / 25 / 27 | 60022 | 1001 Industrial Park Dr | Clinton | Mississippi | United States | 39056 |
| P | Plant 24 - Clinton | 60024 | 947 Industrial Park Dr | Clinton | Mississippi | United States | 39056 |
| P | Columbia Cable Co. | N/A | 96 Old Hwy 98 | Columbia | Mississippi | United States | 39429 |
| P | Hattiesburg Cable Co. | N/A | 6633 Hwy 49 | Hattiesburg | Mississippi | United States | 39401 |
| P | Hazelhurst Warehouse | 60037 | 220 W Whitworth St | Hazelhurst | Mississippi | United States | 39083 |
| P | Lextron | 60501 | 251 W Mitchell | Jackson | Mississippi | United States | 39213 |
| P | Yazoo Cable Co. | N/A | 2003 Gordon Ave | Yazoo City | Mississippi | United States | 39194 |
| P | Plant 45    Cortland | 60060 | 1000 W.  Main St | Cortland | Ohio | United States | 44410 |

Delphi 
Carrier

Version 5.00 -031205

DELPHI-001127

| Division | Plant Name | Cisco | Address | City | State | Country | Zip |
|---|---|---|---|---|---|---|---|
| P | Plant 7 Rootstown | 60040 | 5245 S. Prospect St. | Ravenna (Rootstown Twp.) 44266 | Ohio | United States | 44266 |
| P | Plant 3 Dana Street | 60003 | 408 Dana Street | Warren | Ohio | United States | 44486 |
| P | Plant 4 Dana Street | 60003 | 408 Dana Street | Warren | Ohio | United States | 44486 |
| P | Plant 6 Dana Street | 60003 | 408 Dana Street | Warren | Ohio | United States | 44486 |
| P | Plant 8 Griswold Street | 60008 | Griswold and Paige Ave. | Warren | Ohio | United States | 44486 |
| P | N. River Rd. Plt 10 | 60010 | 1265 N River Rd | Warren | Ohio | United States | 44483 |
| P | N. River Rd. Plt 11 | 60011 | 1265 N River Rd | Warren | Ohio | United States | 44483 |
| P | N. River Rd. Plt 13 | 60013 | 1265 N River Rd | Warren | Ohio | United States | 44483 |
| P | N. River Rd. Plt 14 | 60014 | 1265 N River Rd | Warren | Ohio | United States | 44483 |
| P | N. River Rd. Plt 15 | 60015 | 1265 N River Rd | Warren | Ohio | United States | 44483 |
| P | N. River Rd. Plt 19 | 60036 | 1265 N River Rd | Warren | Ohio | United States | 44483 |
| P | N. River Rd. Plt 49 | 60049 | 1265 N River Rd | Warren | Ohio | United States | 44483 |
| P | N. River Rd. Plt 46 | 60061 | 1265 N River Rd | Warren | Ohio | United States | 44483 |
| P | Freightliner Customer Service Center | 60404 | 265 Parkway east | Duncan | South Carolina | United States | 29334 |
| P | Specialty Electronics, Inc. | N/A | 19200 Asheville Highway | Landrum | South Carolina | United States | 29356 |
| P | Delphi Mechatronic Systems | 60045 | 615 Elca Ln Ste A | Brownsville | Texas | United States | 78521 |
| S | Plant 38 | 44971 | 10 Atlas Court | Brampton | Ontario | Canada | L6T 5C1 |
| S | Plant 68 RB | 44032 | Carretera Internal Zaragoza Isleta  Parque Indal Rio Bravo | NV Zaragoza | Chihuahua | Mexico | 32550 |
| S | Plant 65, A.C.E. | 44391 | Santa Rosa de Viterbo # 12 (FINSA) | Queretaro | Queretaro | Mexico | 76246 |
| S | Plant 66, A C E. | 44391 | Santa Rosa de Viterbo # 12 (FINSA) | Queretaro | Queretaro | Mexico | 76246 |
| S | Plant 22 | 44001 | PO Box 311-US 31N | Athens | Alabama | United States | 35611 |
| S | Plant 21 | 44021 | PO Box 311-US 31N | Athens | Alabama | United States | 35611 |

Delphi:
Carrier:

Version 5 00 -031205

DELPHI-001128

| Division | Plant Name | Cisco | Address | City | State | Country | Zip |
|---|---|---|---|---|---|---|---|
| S | Plant 23 | 44123 | PO Box 311-US 31N | Athens | Alabama | United States | 35611 |
| S | Plant 12 | 44068 | 499 East County Road, 300 South | New Castle | Indiana | United States | 47362 |
| S | Plant 47 | 44018 | 10000 Business Blvd | Dry Ridge | Kentucky | United States | 41035 |
| S | Plant 33 | 44604 | 665 Lapeer | Oxford | Michigan | United States | 48051 |
| S | Plant 46 | 44001 | 1860 Jefferson Ave | Saginaw | Michigan | United States | 48601 |
| S | Plant 48 | 44019 | 915 S  Niagra | Saginaw | Michigan | United States | 48602 |
| S | Plant 14 | 44707 | 2975 Nodular Drive | Saginaw | Michigan | United States | 48601 |
| S | Plant 45 | 44001 | 3680 Cass Rd | Traverse City | Michigan | United States | 49684 |
| S | Plant 36 | 44974 | 50 Enterprise Drive | Vassar | Michigan | United States | 48768 |
| S | Plant 49 | 44020 | 110 East 9th St | Decatur | Mississippi | United States | 39327 |
| S | Plant 39 | 44601 | Highway 13S | Polkville | Mississippi | United States | 39117 |
| S | Plant 37 | 44001 | 1655 Tech Drive | Bay City | Michigan | United States | 48706 |
| S | Plant 30 | 44030 | 2010 N Dort Highway | Flint | Michigan | United States | 48506 |
| S | Plant 1 | 44015 | 3900 E. Holland Rd | Saginaw | Michigan | United States | 48601 |
| S | Plant 17 | 44017 | 3900 E. Holland Rd | Saginaw | Michigan | United States | 48601 |
| S | Plant 3 | 44023 | 3900 E. Holland Rd | Saginaw | Michigan | United States | 48601-9494 |
| S | Plant 4 | 44024 | 3900 E. Holland Rd | Saginaw | Michigan | United States | 48601-9494 |
| S | Plant 5 | 44025 | 3900 E. Holland Rd | Saginaw | Michigan | United States | 48601-9494 |
| S | Plant 6 | 44026 | 3900 E. Holland Rd | Saginaw | Michigan | United States | 48601-9494 |
| S | Plant 7 | 44027 | 3900 E. Holland Rd | Saginaw | Michigan | United States | 48601-9494 |
| S | Plant 32 | 44603 | 165 W Morley Drive | Saginaw | Michigan | United States | 48601 |
| S | Plant 35 | 44970 | 2440 Aero Park Drive | Traverse City | Michigan | United States | 49684 |
| S | Plant 31 | 44001 | 1555 Enterprise Parkway | Twinsburg | Ohio | United States | 44087 |
| S | Plant 40 | 44031 | 48 Walter Jones Blvd | El Paso | Texas | United States | 79906 |
| S | MTC | 44033 | 9650-C Railroad Drive | El Paso | Texas | United States | 79924 |
| S | Plant 43 | 44401 | 14215 Transportation St | Laredo | Texas | United States | 78044 |
| S | Plant 43 (Laredo Distribution Warehouse) | 44034 | 13701 Mines Rd. | Laredo | TX | United States | 78045 |

Delphi: 
Carrier:

Version 5 00 -031205

DELPHI-001129

| Division | Plant Name | Cisco | Address | City | State | Country | Zip |
|---|---|---|---|---|---|---|---|
| DP&SS | Delphi Product & Service Solutions Headquarters | 24002 | 1441 W. Long Lake Rd. | Troy | MI | United States | 48098 |
| DP&SS | Delphi Product & Service Solutions USA Distribution | 24002 | Dock 22 & 23 6032 Gateway Dr. | Plainfield | IN | United States | 46168 |

Delphi:
Carrier: 

30

Version 5.00 -031205

DELPHI-001130

## APPENDIX C
## RULES AND ACCESSORIAL CHARGES

**1. APPLICABILITY.** The provisions of this Appendix C apply except to the extent specifically addressed differently in the attached Master Transportation Agreement including Appendices thereto. Capitalized terms used herein but not defined herein shall have the meaning assigned to them in the Master Transportation Agreement.

**2. ADDITIONAL LICENSES AND PERMITS.** If Carrier obtains additional licenses and/or permits at the specific request of Delphi (e.g. overweight license or foreign commerce license), then Carrier will separately list the actual cost of such licenses and/or permits on its freight bill. Carrier's charges for "in-bond shipments" (defined as shipments that are transported through a foreign country subject to a bond) are limited to the amounts in the attached Schedule of Charges Addendum.

**3. DETENTION EXCEPTIONS ONLY.** When Carrier's vehicles are delayed or detained on the premises of the Delphi Facility or on premises designated by Delphi, the following will apply:

    a. <u>Detention With Power.</u> Free time will start upon arrival or scheduled arrival at Delphi Facility, whichever is later. Carrier will provide two (2) hours free time for the purposes of loading or unloading. In any case where a trailer will be unloaded and reloaded, then such two (2) hours free time will stop upon completion of the unloading, and will re-start upon reloading. After the expiration of the free time herein provided, charges for detaining a power unit will be assessed as noted in the attached Schedule of Charges Addendum.

    b. <u>Detention Without Power.</u> Carrier will provide 24 hours free time for the purpose of loading and unloading. After the expiration of the free time herein provided, charges for detaining a trailer will be assessed as noted in the attached Schedule of Charges Addendum.

    c. Neither free time nor detention will start on Saturday, Sunday, Delphi Holidays or a Delphi Shutdown Period, but will commence at 7:00 a.m. on the next business day following a Saturday, Sunday, Delphi Holiday, or Delphi Shutdown Period. "Delphi Holidays" are, as applicable between U.S. and Canada, generally defined as the days of celebration for: New Year's Day, Martin Luther King Jr. Holiday, Good Friday, Easter Monday, Victoria Day, Memorial Day, Independence Day, Canada Civic Holiday, Canada Day, Labor Day, U.S. National Election Day, Veterans' Day, Canada Thanksgiving Day and the previous Friday, U.S. Thanksgiving Day and the following Friday and December 24 through December 31, and any other days mutually agreed upon as a Holiday or any other day designated by Delphi as a Holiday. A "Delphi Shutdown Period" is defined as any period in which Delphi has designated a corporate-wide cessation of operations.

Delphi: 
Carrier:

31

Version 5.00 -031205

DELPHI-001131

**4. <u>LOADING AND BLOCKING.</u>** Prior to leaving origin, the Carrier is responsible for ensuring the load or shipment is properly loaded, blocked, braced, secured and tarped, when applicable, for safe and damage free transportation. Pallets and banded lots will not be broken down by the Carrier. This provision may not apply when Carrier is tendered a sealed trailer.

**5. <u>PICKUP OR DELIVERY SERVICE ON SUNDAYS OR DELPHI HOLIDAYS.</u>** When a Delphi Facility requests Carrier to pickup or deliver freight, or spot trailers, on a Sunday or Delphi Holiday, such service will be subject to the charges as printed in the attached Schedule of Charges, unless it is a Delphi Holiday but not a Carrier Holiday, in which event normal rates apply. Some Delphi Facilities have continuous operations. Therefore, delivery may be required seven (7) days a week.

**6. <u>RE-CONSIGNMENT OR DIVERSION.</u>** Requests for re-consignment can be made by phone and must be confirmed in writing by the respective PC& L person having authority to do so for the requesting Delphi Facility. Re-consignment and diversion are considered synonymous and are defined as:
- Change in the name of consignor or consignee,
- Change in the place of delivery within original delivery point (e.g., dock 1 instead of dock 2),
- Change in the destination point, or
- Relinquishment of shipment at point of origin.

If any or all of the above occur, the maximum diversion charge according to the attached Schedule of Charges Addendum, will be assessed in addition to other charges which may apply within this appendix.

**7. <u>RE-DELIVERY.</u>** Delphi will be assessed a charge for re-delivery according to the attached Schedule of Charges Addendum when Carrier's shipment is tendered for delivery to a Delphi Facility and through no fault of the Carrier, such delivery cannot be accomplished at that facility. Before Carrier's driver leaves the Delphi Facility, the driver and/or a Carrier representative must notify the Delphi facility's material/transportation department of the problem.

**8. <u>SERVICE GUARANTEE.</u>** Reference Section 6.d in the Master Transportation Agreement

**9. <u>SCHEDULED PICKUP.</u>** Delphi and Carrier will work together to establish scheduled pickup times. .

**10. <u>BROKERAGE FEES</u>.** None will apply. All shipments or programs involving brokerage, customs, duty or GST must be handled by the Delphi designated broker, as per Section 6.e.

**11. <u>SERVICE REQUIREMENTS.</u>** Transit time is to be inclusive of a 5 day work week, excluding Delphi Holidays. Transit time calculations should be expressed in hours and include day of pickup and day of delivery. If the transit hours are such that a delivery cannot be made (e.g., flow thru terminal closed, Delphi Holiday, etc.), delivery will be made at the next scheduled delivery time. This will constitute "on-time" delivery and Delphi will not be responsible for any detention or other additional charges in connection therewith.

Delphi:
Carrier:

32

Version 5 00 -031205

**DELPHI-001132**

12. **STOP-OFFS, TRUCKLOAD ONLY.** A single shipment, subject to truckload rates, may be stopped in transit for partial loading or unloading. A general provision to this rule is the entire shipment must be available for pickup at time of tender.

    a.    <u>Stop-Off Charges.</u> The initial pickup and the final delivery are not subject to stop-off charges. Except as provided, each stop-off will be subject to a stop-off charge according to the attached Schedule of Charges Addendum.

    b.    <u>Line Haul.</u> Line haul charges will be determined on the basis of the contracted truckload rate from origin point to destination point

        <u>EXAMPLE:</u>
A Delphi Facility and Carrier have a contract rate for truckload shipments between Dayton, OH and Flint, MI of $300. Assuming the mileage for this lane is 300 miles, the effective rate would be $1 per mile (300 miles = $300).

Delphi requests Carrier pickup a shipment in Dayton, stop-off in Columbus, then deliver to Flint (mileage from Dayton-Columbus-Flint equals 400 miles). The following charges would apply for this example:

| $ 400 - | Line haul (400 miles @ $1 per mile) |
|---------|-------------------------------------|
| 30 - | Stop-off charge in Columbus |
| $ 430 - | Total charge |

    c.    **Intra-Plant Stops.** Pickup or delivery service may be performed at additional loading or unloading sites at origin, destination or intermediate stop-off points within the continuous private property at the place of the party receiving the service. Carrier is responsible for providing proof of an "Intra-Plant Stop". The charge for Intra-Plant Stops is listed in the attached Schedule of Charges.

13. **VEHICLES FURNISHED BUT NOT USED.** A charge will be assessed to the Delphi Facility if the request for pickup of a truckload shipment is cancelled after the Carrier's vehicle has entered the property of the shipping location. The attached Schedule of Charges will govern all charges. A dock stamp or shippers' signature is required to verify vehicle arrived at shipping location.



Delphi:
Carrier:

33

Version 5.00 -031205

DELPHI-001133

SCHEDULE OF CHARGES ADDENDUM

**ALL CHARGES DENOMINATED IN $ U.S. DOLLARS**

| | | | |
|---|---|---|---|
| **Re:** | **Article 2.** | Additional Licenses and Permits | |
| | | Charges for handling each "In-Bond" shipment will not exceed: | $25. |
| **Re:** | **Article 3.** | Detention Charges | |

<u>Time Period With Power</u>
for each 30-minute period or fraction thereof beyond
free time (Saturday, Sunday and Delphi Holidays excluded):        $15.
<u>Time Period Without Power</u>
for each 24-hour period or fraction thereof beyond free
time (Saturday, Sunday and Delphi Holidays included):        $25.

| | | | |
|---|---|---|---|
| **Re:** | **Article 5.** | Pickup or Delivery Service on Sundays or Delphi Holidays | |

Per Driver Hour:        $33.
Minimum Charge of 4 Hours:        $132.

| | | | |
|---|---|---|---|
| **Re:** | **Article 6.** | Re-Consignment or Diversion Charge (Per Shipment): | $25. |
| **Re:** | **Article 8.** | Re-Delivery | |

If re-delivery of a shipment is required, a charge per        $75. TL Per Vehicle
vehicle or trailer will be assessed:        $35. LTL Per Shipment
        $75. Maximum Charge

**Re:    Article 9.    Service Guarantee**

Cartage, loading and unloading for expedited services:        $5. Per CWT
        $30. Minimum Charge
        $250. Maximum Charge

**Re:    Article 12.    Stop-Offs**

Charges Per Stop:        $30. Per Stop
Intra-Plant Stops:        $20. Per Stop

**Re:    Article 13.    Vehicle Furnished But Not Used**

The charge will be assessed to a Delphi Facility making        $75. TL
such a request:        $35. LTL

Delphi:
Carrier: 

Version 5.00 -031205

DELPHI-001134

# DELPHI

**Monarch Transport LLC** ("Carrier").

1. This is a revision of the Master Transportation Agreement between Delphi Automotive Systems LLC ("Delphi") and dated 7/19/2004

2. In accordance with section 2, Delphi and Carrier desire to include and or amend Appendix D Lanes and Rates, Schedule(s) to the Agreement

3. This revision in its entirety, will replace all previous Editions (Revisions and/or Amendments) to Appendix D or the Agreement

4. Unless otherwise noted, the Effective and Termination Date for each lane (route) listed below will be in accordance with Section 3 (Term of Agreement)

5. Except as expressly modified by this Revision, all other Terms and Conditions of the Agreement will remain unchanged and in full force and in effect

Appendix D    Monarch Transport LLC

Revision effective date    Monday, April 30, 2007

| Lane ID | Version | Carrier | Origin | City | State | Destination | City | State | One Way | Round Trip | Funds | Basis | Equip | GST | Stop Fee | Rev # | One Way | Round Trip | Effective Date | Termination Date | Execution Date |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| C136 | | 36118 | Dura Manufacturing | Gladwin | MI | Delphi T&I Kansas City | Kansas City | MO | $980,000 | $1,850,000 | USD | Flat Rate | 53' CV | | $0.00 | 1 | 822 | 1,644 | 12/6/2004 | 7/31/2007 | 6/9/2006 |
| GC37 | | 36118 | Delphi E&S | Los Indios | TX | Delphi T&I | | | $1,800,000 | $2,300,000 | USD | Flat Rate | 53' CV | | $30.00 | 3 | 1,073 | 2,146 | 3/21/2005 | 7/31/2007 | 6/9/2006 |
| MR23 | | 36118 | Delphi T&I | N Kansas City | | Progressive Molded | | | $50,000 | $240,000 | USD | Flat Rate | 53' CV | | $0.00 | 0 | | | 7/19/2004 | 6/25/2006 | 6/9/2006 |
| AT08 | 0 | 24000 | Per Route Detail | xx | xx | Delphi T&I | N Kansas City | MO | $215,000 | $215,000 | USD | Flat Rate | 53' CV | | $30.00 | 6 | 34 | 68 | 2/27/2005 | 7/16/2006 | 6/9/2006 |
| AT08 | 0 | 36118 | PROGRESSIVE MOLDED PRODUCTS INC | Saint Joseph | MO | Delphi T&I | N Kansas City | MO | $215,000 | $215,000 | USD | Flat Rate | 53' CV | | $30.00 | 8 | 34 | 68 | 7/17/2006 | 7/18/2007 | 6/9/2006 |
| AT08 | 1 | 24000 | Per Route Detail | xx | xx | Delphi T&I | N Kansas City | MO | $215,000 | $215,000 | USD | Flat Rate | 53' CV | | $30.00 | 6 | 46 | 92 | 2/27/2006 | 7/16/2006 | 6/9/2006 |
| AT08 | 1 | 36118 | PROGRESSIVE MOLDED PRODUCTS INC | Saint Joseph | MO | Delphi T&I | N Kansas City | MO | $215,000 | $215,000 | USD | Flat Rate | 53' CV | | $30.00 | 8 | 46 | 92 | 7/17/2006 | 7/18/2007 | 6/9/2006 |
| AT08 | 2 | 24000 | Per Route Detail | xx | xx | Delphi T&I | N Kansas City | MO | $215,000 | $215,000 | USD | Flat Rate | 53' CV | | $30.00 | 6 | 46 | 92 | 2/27/2006 | 7/16/2006 | 6/9/2006 |
| AT08 | 2 | 36118 | PROGRESSIVE MOLDED PRODUCTS INC | Saint Joseph | MO | Delphi T&I | N Kansas City | MO | $215,000 | $215,000 | USD | Flat Rate | 53' CV | | $30.00 | 8 | 46 | 92 | 7/17/2006 | 7/18/2007 | 6/9/2006 |
| AT08 | 3 | 24000 | Per Route Detail | xx | xx | Delphi T&I | N Kansas City | MO | $215,000 | $215,000 | USD | Flat Rate | 53' CV | | $30.00 | 6 | 34 | 68 | 2/27/2006 | 7/16/2006 | 6/9/2006 |
| AT08 | 3 | 36118 | PROGRESSIVE MOLDED PRODUCTS INC | Saint Joseph | MO | Delphi T&I | N Kansas City | MO | $215,000 | $215,000 | USD | Flat Rate | 53' CV | | $30.00 | 8 | 34 | 68 | 7/17/2006 | 7/18/2007 | 6/9/2006 |
| AT09 | | 24000 | Per Route Detail | xx | xx | Delphi T&I | N Kansas City | MO | $600,000 | $1,084,000 | USD | Flat Rate | 53' CV | | $30.00 | 8 | 487 | 974 | 8/1/2005 | 7/16/2006 | 6/9/2006 |
| AT09 | | 36118 | LUNT MFG | Hampshire | IL | Delphi T&I | N Kansas City | MO | $600,000 | $1,084,000 | USD | Flat Rate | 53' CV | | $30.00 | 9 | 487 | 974 | 7/17/2006 | 7/17/2007 | 6/9/2006 |
| AT10 | | 24000 | Per Route Detail | xx | xx | Delphi T&I | N Kansas City | MO | $0.000 | $1,561,840 | USD | Flat Rate | 53' CV | | $30.00 | 7 | 676 | 1,352 | 10/16/2005 | 7/16/2006 | 6/9/2006 |
| AT10 | | 36118 | JIT SERVICES INC | Huntsville | AL | Delphi T&I | N Kansas City | MO | $0.000 | $1,561,840 | USD | Flat Rate | 53' CV | | $30.00 | 10 | 676 | 1,352 | 7/17/2006 | 7/17/2007 | 6/9/2006 |
| AT11 | | 24000 | Per Route Detail | xx | xx | Delphi T&I | N Kansas City | MO | $833,300 | $1,569,680 | USD | Flat Rate | 53' CV | | $30.00 | 6 | 648 | 1,296 | 8/1/2005 | 7/16/2006 | 6/9/2006 |
| AT11 | | 36118 | Carrospot Inc | Three Rivers | MI | Delphi T&I | N Kansas City | MO | $833,300 | $1,569,680 | USD | Flat Rate | 53' CV | | $30.00 | 11 | 648 | 1,296 | 7/17/2006 | 7/16/2007 | 6/9/2006 |

Delphi

Carrier



For Delphi/Data 2 Logistics Billing Information.
www.Data2Logistics.com/delphiuser

Page 1 of 2

Delphi - Logistics Shared Services

DELPHI-001135

Appendix D   Monarch Transport LLC

Revision effective date   Monday, April 30, 2007

| Lane ID | Version | Carrier | Origin City | State | Destination | Dest. City | State | One Way | Round Trip | Funds | Rails | Equip | GST | Stop Fee | Em. # | One Way | Round Trip | Effective Date | Termination Date | Revision Date |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| AT12 | 24090 | Per Route Depot | xx | xx | Delphi T&I NKC | North Kansas City | MO | $0.000 | $2,146.250 | USD | Flat Rate | 53' CV | | $30.00 | 6 | 1,020 | 2,040 | 8/1/2005 | 7/16/2006 | 6/9/2006 |
| AT12 | 36118 | Delphi Lockport | Lockport | NY | Delphi T&I NKC | North Kansas City | MO | $0.000 | $2,146.250 | USD | Flat Rate | 53' CV | | $30.00 | 12 | 1,020 | 2,040 | 7/17/2006 | 9/27/2006 | 6/9/2006 |
| AT13 | 24090 | Per Route Depot | xx | xx | Delphi T&I Kansas City | Kansas City | MO | $980.000 | $1,853.000 | USD | Flat Rate | 53' CV | | $30.00 | 6 | 820 | 1,640 | 8/1/2005 | 7/16/2006 | 6/9/2006 |
| AT13 | 36118 | DURA AUTOMOTIVE SYSTEMS Inc. | Gladwin | MI | Delphi T&I Kansas City | Kansas City | MO | $980.000 | $1,853.000 | USD | Flat Rate | 53' CV | | $30.00 | 13 | 820 | 1,640 | 7/17/2006 | 7/16/2006 | 6/9/2006 |
| AT16 | 36118 | Collins & Aikman | Columbia | MO | Delphi T&I NKC | Kansas City | MO | $0.000 | $400.000 | USD | Flat Rate | 53' DD | | $30.00 | 15 | 134 | 268 | 7/17/2006 | 2/11/2007 | 9/29/2006 |
| AT22 | 36118 | Collins & Aikman | RANTOUL | IL | DELPHI Thermal | Kansas City | MO | $0.000 | $1,596.000 | USD | Flat Rate | 53' CV | | $30.00 | 18 | 440 | 880 | 8/21/2006 | 7/16/2007 | 8/7/2006 |
| AD13 | 24090 | Per Route Depot | xx | xx | Delphi T&I Kansas City | Kansas City | MO | $980.000 | $1,853.000 | USD | Flat Rate | 53' CV | | $30.00 | 19 | 819 | 1,639 | 7/17/2006 | 9/17/2006 | 8/14/2006 |
| AT17 | 36118 | Delphi Adrian | Adrian | MI | Delphi T&I | Kansas City | MO | $0.000 | $1,685.000 | USD | Flat Rate | 53' CV | | $20.00 | 16 | 733 | 1,466 | 7/17/2006 | 1/7/2007 | 12/4/2006 |
| AD13 | 36118 | DURA AUTOMOTIVE SYSTEMS | Gladwin | MI | Delphi T&I Kansas City | Kansas City | MO | $980.000 | $1,853.000 | USD | Flat Rate | 53' CV | | $30.00 | 20 | 819 | 1,639 | 9/18/2006 | 4/8/2007 | 3/20/2007 |
| AD13 | 36118 | DURA AUTOMOTIVE SYSTEMS | Gladwin | MI | Delphi T&I Kansas City | Kansas City | MO | $980.000 | $1,853.000 | USD | Flat Rate | 53' CV | | $30.00 | 23 | 862 | 1,701 | 4/9/2007 | 7/16/2007 | 3/20/2007 |
| AT16 | 36118 | Collins & Aikman | Columbia | MO | Delphi T&I NKC | North Kansas City | MO | $0.000 | $410.000 | USD | Flat Rate | 53' DD | | $30.00 | 21 | 134 | 268 | 2/12/2007 | 4/8/2007 | 3/30/2007 |
| AT12 | 36118 | Delphi Lockport | Lockport | NY | Delphi T&I NKC | North Kansas City | MO | $0.000 | $2,220.000 | USD | Flat Rate | 53' CV | | $30.00 | 14 | 1,020 | 2,040 | 9/28/2006 | 4/17/2007 | 4/2/2007 |
| AT16 | 36118 | Collins & Aikman | Columbia | MO | Delphi T&I NKC | Kansas City | MO | $0.000 | $410.000 | USD | Flat Rate | 53' DD | | $30.00 | 22 | 134 | 268 | 4/9/2007 | 5/13/2007 | 4/2/2007 |
| AT12 | 37897 | Delphi Lockport | Lockport | NY | Delphi T&I NKC | North Kansas City | MO | $0.000 | $2,220.000 | USD | Flat Rate | 53' CV | | $30.00 | 24 | 1,020 | 2,040 | 4/2/2007 | 4/29/2007 | 4/27/2007 |
| NT38 | 37897 | Delphi Lockport | Lockport | NY | Delphi T&I NKC | North Kansas City | MO | $0.000 | $2,220.000 | USD | Flat Rate | 53' CV | | $30.00 | 24 | 1,020 | 2,040 | 4/30/2007 | 7/16/2007 | 4/27/2007 |

Delphi Automotive Systems

By _____

Title: Director, Global Indirect Manager
Supply Chain Management

Monarch Transport LLC

By _____

Title _____

For Delphi/Data 2 Logistics Billing Information
www.Data2Logistics.com/delphiuser

Page 2 of 2

Delphi - Logistics Shared Services

Delphi
Carrier _____

DELPHI-001136

# DELPHI

1  This is a revision of the Master Transportation Agreement between Delphi Automotive Systems LLC ("Delphi") and
   dated  7/19/2004

2  In accordance with section 2, Delphi and Carrier desire to include and or amend Appendix D (Lanes and Rates, Schedules) to the Agreement.

3  This revision in its entirety, will replace all previous Editions (Revisions and/or Amendments) to Appendix D or the Agreement

4  Unless otherwise noted, the Effective and Termination Date for each lane (route) listed below will be in accordance with Section 3 (Term of Agreement)

5  Except as expressly modified by this Revision, all other Terms and Conditions of the Agreement will remain unchanged and in full force and in effect

Monarch Transport LLC  ("Carrier").

Appendix D     Monarch Transport LLC

Revision effective date     Monday, April 16, 2007

| Lane ID | Version | Carr | Origin | City | State | Destination | City | State | Directional Rate One Way | Round Trip | Funds | Basis | Equip | GST | Stop For | Rev | Directional Miles One Way | Round Trip | Effective Date | Termination Date | Revision Date |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| C130 | | 36116 | Dura Manufacturing | Gladwin | MI | Delphi T&I Kansas City | Kansas City | MO | $960.000 | $1,653.000 | USD | Flat Rate | 53 CV | | $0.00 | 1 | 822 | 1,644 | 12/6/2004 | 7/31/2007 | |
| G037 | | 36116 | Delphi F&S | Los Indios | TX | Delphi T&I | | | $1,800.000 | $2,300.000 | USD | Flat Rate | 53 CV | | $30.00 | 3 | 1,073 | 2,146 | 3/21/2005 | 7/31/2007 | 6/3/2006 |
| MI633 | | 36116 | Delphi T&I | N Kansas City | | Progressive Molded | St Joseph | MO | $0.000 | $240.000 | USD | Flat Rate | 53 CV | | $0.00 | 0 | | | 7/19/2004 | 6/25/2006 | |
| AT08 | 0 | 24000 | Per Route Detail | xx | xx | Delphi T&I | N Kansas City | MO | $215.000 | $215.000 | USD | Flat Rate | 53 CV | | $30.00 | 6 | 34 | 68 | 2/27/2006 | 7/16/2006 | 6/3/2006 |
| AT08 | 0 | 36116 | PROGRESSIVE MOLDED PRODUCTS INC | Saint Joseph | MO | Delphi T&I | N Kansas City | MO | $215.000 | $215.000 | USD | Flat Rate | 53 CV | | $30.00 | 8 | 34 | 68 | 7/17/2006 | 7/18/2007 | 6/9/2006 |
| AT08 | 1 | 24000 | Per Route Detail | xx | xx | Delphi T&I | N Kansas City | MO | $215.000 | $215.000 | USD | Flat Rate | 53 CV | | $30.00 | 6 | 46 | 92 | 2/27/2006 | 7/16/2006 | 6/3/2006 |
| AT08 | 1 | 36116 | PROGRESSIVE MOLDED PRODUCTS INC | Saint Joseph | MO | Delphi T&I | N Kansas City | MO | $215.000 | $215.000 | USD | Flat Rate | 53 CV | | $30.00 | 8 | 46 | 92 | 7/17/2006 | 7/18/2007 | 6/9/2006 |
| AT08 | 2 | 24000 | Per Route Detail | xx | xx | Delphi T&I | N Kansas City | MO | $215.000 | $215.000 | USD | Flat Rate | 53 CV | | $30.00 | 6 | 46 | 92 | 2/27/2006 | 7/16/2006 | 6/3/2006 |
| AT08 | 2 | 36116 | PROGRESSIVE MOLDED PRODUCTS INC | Saint Joseph | MO | Delphi T&I | N Kansas City | MO | $215.000 | $215.000 | USD | Flat Rate | 53 CV | | $30.00 | 8 | 46 | 92 | 7/17/2006 | 7/18/2007 | 6/9/2006 |
| AT08 | 3 | 24000 | Per Route Detail | xx | xx | Delphi T&I | N Kansas City | MO | $215.000 | $215.000 | USD | Flat Rate | 53 CV | | $30.00 | 6 | 34 | 68 | 2/27/2006 | 7/16/2006 | 6/3/2006 |
| AT08 | 3 | 36116 | PROGRESSIVE MOLDED PRODUCTS INC | Saint Joseph | MO | Delphi T&I | N Kansas City | MO | $215.000 | $215.000 | USD | Flat Rate | 53 CV | | $30.00 | 8 | 34 | 68 | 7/17/2006 | 7/18/2007 | 6/9/2006 |
| AT09 | | 24000 | Per Route Detail | xx | xx | Delphi T&I | N Kansas City | MO | $600.000 | $1,094.000 | USD | Flat Rate | 53 CV | | $30.00 | 8 | 487 | 974 | 8/1/2005 | 7/16/2006 | 6/9/2006 |
| AT09 | | 36116 | LUNT MFG | Hampshire | IL | Delphi T&I | N Kansas City | MO | $600.000 | $1,094.000 | USD | Flat Rate | 53 CV | | $30.00 | 9 | 487 | 974 | 7/17/2006 | 7/17/2007 | 6/9/2006 |
| AT10 | | 24000 | Per Route Detail | xx | xx | Delphi T&I | N Kansas City | MO | $0.000 | $1,581.940 | USD | Flat Rate | 53 CV | | $30.00 | 7 | 676 | 1,352 | 10/16/2005 | 7/16/2006 | 6/9/2006 |
| AT10 | | 36116 | JIT SERVICES INC | Huntsville | AL | Delphi T&I | N Kansas City | MO | $0.000 | $1,581.940 | USD | Flat Rate | 53 CV | | $30.00 | 10 | 676 | 1,352 | 7/17/2006 | 7/17/2007 | 6/9/2006 |
| AT11 | | 24000 | Per Route Detail | xx | xx | Delphi T&I | N Kansas City | MO | $833.300 | $1,569.680 | USD | Flat Rate | 53 CV | | $30.00 | 6 | 648 | 1,296 | 8/1/2005 | 7/16/2006 | 6/9/2006 |
| AT11 | | 36116 | Camoplant Inc | Three Rivers | MI | Delphi T&I | N Kansas City | MO | $833.300 | $1,569.680 | USD | Flat Rate | 53 CV | | $30.00 | 11 | 648 | 1,296 | 7/17/2006 | 7/18/2007 | 6/9/2006 |

Delphi _____
Carrier _____

DELPHI-001137

Appendix D

Monarch Transport LLC

Revision effective date    Monday, April 16, 2007

| Lane ID | Version | Lane | Origin | | | Destination | | | Directional Rate | | | Funds | Basis | Equip | GST | Stop Fee | Rev. # | One Way | Round Trip | Effective | Termination | Revision |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | Origin | City | State | Destination | City | State | One Way | Round Trip | | | | | | | | Directional Miles | | Date | Date | Date |
| AT12 | | 24000 | Per Route Detail | xx | xx | Delphi T&I NKC | North Kansas City | MO | $0.000 | $2,148.250 | USD | Flat Rate | 53' CV | | $30.00 | 6 | 1,020 | 2,040 | 8/1/2005 | 7/16/2006 | 6/9/2006 |
| AT12 | | 36118 | Delphi Lockport | Lockport | NY | Delphi T&I NKC | North Kansas City | MO | $0.000 | $2,148.250 | USD | Flat Rate | 53' CV | | $30.00 | 12 | 1,020 | 2,040 | 7/17/2006 | 9/27/2006 | 6/9/2006 |
| AT13 | | 24000 | Per Route Detail | xx | xx | Delphi T&I Kansas City | Kansas City | MO | $980.000 | $1,853.000 | USD | Flat Rate | 53' CV | | $30.00 | 6 | 820 | 1,640 | 8/1/2005 | 7/16/2006 | 6/9/2006 |
| AT13 | | 36118 | DURA AUTOMOTIVE SYSTEMS INC. | Gladwin | MI | Delphi T&I Kansas City | Kansas City | MO | $980.000 | $1,853.000 | USD | Flat Rate | 53' CV | | $30.00 | 13 | 820 | 1,640 | 7/17/2006 | 7/16/2006 | 6/9/2006 |
| AT16 | | 36119 | Collins & Aikman | Columbia | MO | Delphi T&I NKC | Kansas City | MO | $0.000 | $400.000 | USD | Flat Rate | 53' DD | | $30.00 | 15 | 134 | 268 | 7/17/2006 | 2/11/2007 | 6/29/2006 |
| AT22 | | 36119 | COLLINS & AIKMAN | RANTOUL | IL | DELPHI Thermal | Kansas City | MO | $0.000 | $1,094.000 | USD | Flat Rate | 53' CV | | $30.00 | 18 | 440 | 880 | 8/21/2006 | 7/16/2007 | 8/7/2006 |
| AD13 | | 24000 | Per Route Detail | xx | xx | Delphi T&I Kansas City | Kansas City | MO | $980.000 | $1,853.000 | USD | Flat Rate | 53' CV | | $30.00 | 19 | 819 | 1,639 | 7/17/2006 | 9/17/2006 | 8/14/2006 |
| AT17 | | 36118 | Delphi Adrian | Adrian | MI | Delphi T&I | Kansas City | MO | $0.000 | $1,685.000 | USD | Flat Rate | 53' CV | | $30.00 | 16 | 733 | 1,466 | 7/17/2006 | 1/7/2007 | 12/4/2006 |
| AD13 | | 36118 | DURA AUTOMOTIVE SYSTEMS | Gladwin | MI | Delphi T&I Kansas City | Kansas City | MO | $980.000 | $1,853.000 | USD | Flat Rate | 53' CV | | $30.00 | 20 | 819 | 1,639 | 9/18/2006 | 4/8/2007 | 3/20/2007 |
| AD13 | | 36118 | DURA AUTOMOTIVE SYSTEMS | Gladwin | MI | Delphi T&I Kansas City | Kansas City | MO | $980.000 | $1,853.000 | USD | Flat Rate | 53' DD | | $30.00 | 23 | 892 | 1,701 | 4/9/2007 | 7/16/2007 | 3/20/2007 |
| AT16 | | 36118 | Collins & Aikman | Columbia | MO | Delphi T&I NKC | Kansas City | MO | $0.000 | $410.000 | USD | Flat Rate | 53' DD | | $30.00 | 21 | 134 | 268 | 2/12/2007 | 4/8/2007 | 3/30/2007 |
| AT16 | | 36118 | Collins & Aikman | Columbia | MO | Delphi T&I NKC | Kansas City | MO | $0.000 | $410.000 | USD | Flat Rate | 53' DD | | $30.00 | 22 | 134 | 268 | 4/9/2007 | 6/18/2008 | 3/30/2007 |
| AT12 | | 36118 | Delphi Lockport | Lockport | NY | Delphi T&I NKC | North Kansas City | MO | $0.000 | $2,226.000 | USD | Flat Rate | 53' CV | | $30.00 | 14 | 1,020 | 2,040 | 9/28/2006 | 4/1/2007 | 4/3/2007 |
| AT12 | | 36797 | Delphi Lockport | Lockport | NY | Delphi T&I NKC | North Kansas City | MO | $0.000 | $2,220.000 | USD | Flat Rate | 53' CV | | $30.00 | 24 | 1,020 | 2,040 | 4/2/2007 | 7/18/2007 | 4/3/2007 |

Delphi Automotive Systems

By

Title: DGSM Global Indirect Manager
Supply Chain Management

Monarch Transport LLC

By

Title

For Delphi/Data 2 Logistics Billing Information
www.Data2Logistics.com/delphiuser

Page 2 of 2

Delphi - Logistics Shared Services



Delphi
Carrier

DELPHI-001138

*Linda Bauck — J.*
*248-813-8099*

# DELPHI

Monarch Transport LLC ("Carrier")

1. This is a revision of the Master Transportation Agreement between Delphi Automotive Systems LLC ("Delphi") and dated 7/19/2006.

2. In accordance with section 2, Delphi and Carrier desire to include and/or amend Appendix B (Lanes and Rates, Schedule(s)) to the Agreement.

3. This revision in its entirety, will replace all previous Exhibits (Revisions and/or Amendments) in Appendix B or the Agreement.

4. Unless otherwise agreed, the Effective and Termination Date for each blue route lane(s) listed below will be in accordance with Section 3 (Term of Agreement).

5. Except as expressly modified by this Revision, all other Terms and Conditions of the Agreement will remain unchanged and in full force and in effect.

Appendix B:    Monarch Transport LLC

Revision effective date:    Monday, April 02, 2007

| Line ID | Version | Status | Shipper | Origin City | St | Consignee | Dest City | St | Char Req | Rev | Annual Rev | Funct | Basis | Scale | CST | Ship Fee | Per # | Sup/Fee | Out Way | Round Trip | Effective Date | Termination Date | Revision Date |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A004 | | | Pro Route Detail | | XX | Delphi TBI | N Kansas Cty | MO | $1,800,000 | $2,320,300 | USD | Flat Rate | 32 CV | | | $30.00 | 6 | | 1,138 | 2,730 | 8/1/2004 | 4/16/2006 | 8/1/2004 |
| C136 | | | Data Manufacturing | | Detroit | TBI | Delphi TBI Kansas Ctr | | $995,000 | $1,561,000 | USD | Flat Rate | 52 CV | | | $35.00 | 3 | | 822 | 1,644 | 10/8/2004 | 7/31/2007 | |
| G037 | | | Delphi E&S | | Los Holly | TX | Delphi TBI | | $1,900,000 | $2,320,000 | USD | Flat Rate | 52 CV | | | $30.00 | 3 | | 1,013 | 2,148 | 10/1/2004 | 10/1/2007 | |
| MP03 | | | Delphi TBI | | N Kansas Cty | MO | Progressive Various | | $0.00 | $0.00 | USD | Flat Rate | 52 CV | | | $35.00 | 0 | | | | 7/19/2006 | 7/19/2006 | |
| A156 | 0 | | Pro Route Detail | | XX | Delphi TBI | N Kansas Cty | MO | $216,000 | $215,000 | USD | Flat Rate | 52 CV | | | $25.00 | 6 | | 24 | 48 | 2/27/2006 | 7/18/2006 | 8/1/2004 |
| AT08 | 0 | | PROGRESSIVE MOLDED PRODUCTS INC | | Saint Joseph | MO | Delphi TBI | N Kansas Cty | MO | $215,000 | $215,000 | USD | Flat Rate | 52 CV | | | $35.00 | 6 | | 24 | 46 | 7/11/2006 | 7/18/2006 | 8/1/2006 |
| AT08 | | | Pro Route Detail | | XX | Delphi TBI | N Kansas Cty | MO | $215,000 | $215,000 | USD | Flat Rate | 52 CV | | | $30.00 | 6 | | 44 | 92 | 2/27/2006 | 7/18/2006 | 9/9/2006 |
| AT08 | 1 | | PROGRESSIVE MOLDED PRODUCTS INC | | Saint Joseph | MO | Delphi TBI | N Kansas Cty | MO | $215,000 | $215,000 | USD | Flat Rate | 52 CV | | | $30.00 | 6 | | 46 | 92 | 2/27/2006 | 7/18/2006 | 9/9/2006 |
| AT09 | | | Pro Route Detail | | XX | Delphi TBI | N Kansas Cty | MO | $215,500 | $215,500 | USD | Flat Rate | 52 CV | | | $30.00 | 6 | | 47 | 96 | 2/27/2006 | 7/16/2006 | 9/5/2006 |
| AT08 | 2 | | PROGRESSIVE MOLDED PRODUCTS INC | | Saint Joseph | MO | Delphi TBI | N Kansas Cty | MO | $215,000 | $215,000 | USD | Flat Rate | 52 CV | | | $30.00 | 6 | | 34 | 63 | 7/11/2006 | 7/18/2007 | 6/9/2006 |
| AT09 | 3 | | PROGRESSIVE MOLDED PRODUCTS INC | | Saint Joseph | MO | Delphi TBI | N Kansas Cty | MO | $215,000 | $215,000 | USD | Flat Rate | 52 CV | | | $25.00 | 4 | | 34 | 63 | 7/11/2006 | 7/18/2007 | 6/9/2006 |
| AT09 | | | Pro Route Detail | | XX | Delphi TBI | N Kansas Cty | MO | $500,000 | $1,564,700 | USD | Flat Rate | 52 CV | | | $30.00 | 4 | | 487 | 974 | 9/11/2006 | 7/18/2006 | 6/9/2006 |
| AT09 | | | UNIT MFG | | Hampton | IA | Delphi TBI | N Kansas Cty | MO | $500,000 | $1,564,700 | USD | Flat Rate | 52 CV | | | $30.00 | 9 | | 487 | 974 | 7/11/2007 | 7/18/2007 | 6/9/2006 |
| AT10 | | | Pro Route Detail | | XX | Delphi TBI | N Kansas Cty | MO | $60,700 | $1,561,950 | USD | Flat Rate | 52 CV | | | $30.00 | 10 | | 678 | 1,332 | 10/1/2006 | 7/26/2006 | 7/26/2006 |
| AT10 | | | JTI SERVICES INC | | Madisonia | IA | Delphi TBI | N Kansas Cty | MO | $60,700 | $1,561,950 | USD | Flat Rate | 52 CV | | | $30.00 | 10 | | 678 | 1,332 | 7/11/2007 | 7/14/2007 | 6/9/2006 |
| AT11 | | | Pro Route Detail | | XX | Delphi TBI | N Kansas Cty | MO | $653,200 | $1,599,000 | USD | Flat Rate | 52 CV | | | $35.00 | 6 | | 648 | 1,206 | 9/7/2006 | 7/16/2006 | 9/9/2006 |

Delphi - Logistics Shared Services

Delphi: _____
Carrier: _____

DELPHI-001139

Appendix D-

Revisions effective date:     Monday, April 02, 2007

Monarch Transport LLC

| Lane ID | Tractor | Oper | Origin | City | Area | Destination | City | State | Dist Key | Board Plan (Annual) | Loads | Rate | Fuel | GST | Supp Fee | Drs # | Per Day | Round Trip | Directional Miles Effective Date | Termination Date | Revision Date |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| AT11 | 36518 | Dana Power | Dana Power | XX | NO | Delphi T&I | N Kansas City | MO | $825,780 | $1,660,860 | USD | Flat Rate | 53 CV | | $30.00 | 11 | 845 | 7,206 | 7/17/2006 | 7/16/2007 | 6/9/2006 |
| AT12 | 36000 | Per Route Desk | Per Route Desk | Lebanon | 8A | Delphi T&I NVC | North Kansas City | MO | $7,000 | $2,146,966 | USD | Flat Rate | 53 CV | | $30.00 | 4 | 1,026 | 7,240 | 6/1/2006 | 7/16/2006 | 6/9/2006 |
| AT13 | 36518 | Per Route Desk | Per Route Desk | NV | Delphi T&I NVC | North Kansas City | MO | $0.00 | $2,146,350 | USD | Flat Rate | 53 CV | | $30.00 | 12 | 7,206 | 7,240 | 3/17/2006 | 6/10/2006 | 6/9/2006 |
| AT15 | 36000 | Per Route Desk | XX | 6A | Delphi T&I Kansas City | Kansas City | MO | $869,000 | $1,850,010 | USD | Flat Rate | 53 CV | | $30.00 | 6 | 830 | 7,240 | 8/1/2006 | 7/16/2006 | 6/9/2006 |
| AT18 | 36518 | Delphi Lockout DANA AUTOMOTIVE SYSTEMS, INC. | Gonzon | NV | Delphi T&I Kansas City | Kansas City | MO | $895,000 | $1,670,610 | USD | Flat Rate | 53 CV | | $30.00 | 13 | 129 | 1,840 | 7/17/2006 | 6/9/2006 | 6/9/2006 |
| AT18 | 36518 | Delphi Lockout | Lockout | VT | Delphi T&I NVC | North Kansas City | MO | $813.50 | $3,320,000 | USD | Flat Rate | 53 CV | | $30.00 | 14 | 1,420 | 2,840 | 8/1/2006 | 7/16/2007 | 8/16/2006 |
| AT18 | 36518 | Cedas & Atman | Columbia | MO | Delphi T&I NVC | Kansas City | MO | $0.00 | $495,000 | USD | Flat Rate | 53 CV | | $70.00 | 1 | 134 | 295 | 7/17/2006 | 8/11/2007 | 6/24/2006 |
| AT22 | 36518 | COLLINS & AIKMAN | RANTOUL | IL | Delphi T&I Terminal | Kansas City | MO | $0.00 | $1,050,000 | USD | Flat Rate | 53 CV | | $30.00 | 10 | 441 | 1,539 | 8/1/2006 | 7/17/2006 | 8/11/2006 |
| AD15 | 36000 | Per Route Desk | XX | 6A | Delphi T&I Kansas City | Kansas City | MO | $895,000 | $1,850,000 | USD | Flat Rate | 53 CV | | $30.00 | 16 | 318 | 1,840 | 3/17/2006 | 7/16/2006 | 6/14/2006 |
| AT17 | 36518 | Per Route Desk | Admin | VT | Delphi T&I | Kansas City | MO | $0.00 | $1,650,000 | USD | Flat Rate | 53 CV | | $30.00 | 16 | 781 | 1,408 | 7/17/2006 | 1/25/2007 | 1/24/2006 |
| AD13 | 36119 | DANA AUTOMOTIVE SYSTEMS | Graham | VI | Delphi T&I Kansas City | Kansas City | MO | $500,000 | $1,025,000 | USD | Flat Rate | 53 CV | | $30.00 | 20 | 824 | 1,818 | 4/3/2007 | 7/16/2007 | 4/30/2007 |
| AD19 | 36119 | DANA AUTOMOTIVE SYSTEMS | Graham | MI | Delphi T&I Kansas City | Kansas City | MO | $895,000 | $1,500,000 | USD | Flat Rate | 53 CV | | $70.00 | 22 | 832 | 1,701 | 4/3/2007 | 7/16/2007 | 4/30/2007 |
| AD14 | 36119 | DANA AUTOMOTIVE SYSTEMS | Columbia | MO | Delphi T&I NVC | Kansas City | MO | $0.00 | $410,000 | USD | Flat Rate | 53 CV | | $30.00 | 21 | 184 | 794 | 3/19/2007 | 8/16/2007 | 3/30/2007 |
| AT16 | 36518 | Cedas & Aikman | Columbia | MO | Delphi T&I NVC | Kansas City | MO | $30,000 | $410,000 | USD | Flat Rate | 53 CV | | $30.00 | 22 | 134 | 768 | 4/3/2007 | 8/16/2006 | 3/30/2007 |

Monarch Transport LLC
By: _____
Title: Vice President

DANA AUTOMOTIVE SYSTEMS
By: _____
Title: Global Indirect Manager
Supply Chain Management

Delphi Cashless

For Delphi/Dana 2 Logistics Billing Information
www.Dana2Logistics.com/delightsun

Page 2 of 2

Delphi - Logistics Shared Services

DELPHI-001140

Mar. 6. 2007  2:16PM   Monarch Transport LLC   No.6732   P. 1

# DELPHI

1. This is a revision of the Master Transportation Agreement between Delphi Automotive System LLC ("Delphi") and Monarch Transport LLC ("Carrier"),
   dated 7/19/2004

2. In accordance with section 2, Delphi and Carrier desire to include and/or amend Appendix D (Lanes and Rates, Schedules) to the Agreement.

3. This revision in its entirety, will repeat all previous Editions (Revisions and/or Amendments) to Appendix D or the Agreement.

4. Unless otherwise noted, the Effective and Termination Date for each lane (route) listed below will be in accordance with Section 3 (Term of Agreement).

5. Except as expressly modified by this Revision, all other Terms and Conditions of the Agreement will remain unchanged and in full force and in effect.

Appendix D.   Monarch Transport LLC

Revision effective date:   Wednesday, February 14, 2007

| Lane ID | Version | Date | Origin Delphi | Origin City | Origin State | Destination Installation | Destination City | Destination State | Loads | One Way | Round Trip | $ and/ | Basis | $/mi | GST | Day Fee | Ave > | Ste Wy | Round Trip | Effective Date | Termination Date | Revision Date |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A054 | | 2/6000 | Par Route Detail | XX | | Delphi T&I | N Kansas City | MO | $1,920,000 | $1,920,000 | $2,320,200 | USD | Flat Rate | 57 CV | $30.00 | 8 | 1,154 | 2,235 | 8/17/2004 | 4/16/2006 | |
| A059 | | 2/6000 | Par Route Detail | XX | | Delphi T&I | N Kansas City | MO | $215,000 | $215,000 | $215,000 | USD | Flat Rate | 57 CV | $30.00 | 8 | 48 | 92 | 8/17/2005 | 2/09/2006 | |
| C116 | | 2/6118 | Douglas Warehousing | Clinton | MI | Delphi T&I Kansas City | Kansas City | KS | $980,000 | $980,000 | $1,953,000 | USD | Flat Rate | 57 CV | $90.00 | 1 | 822 | 1,644 | 12/02/2004 | 7/01/2007 | |
| G017 | | 2/6113 | Delphi E&S | Las Vegas | TX | Delphi T&I | N Kansas City | MO | $1,430,000 | $1,430,000 | $2,330,000 | USD | Flat Rate | 57 CV | $30.00 | 3 | 1,073 | 2,146 | 9/27/2005 | 7/01/2007 | |
| H003 | | 2/6118 | Delphi T&I | N Kansas City | MO | Progressive Molded | St. Joseph | MO | $0.000 | $0.000 | $300,000 | USD | Flat Rate | 57 CV | $0.00 | 0 | | | 7/19/1904 | 6/25/2006 | |
| A106 | 0 | 2/6040 | Par Route Detail | XX | | Delphi T&I | N Kansas City | MO | $215,000 | $215,000 | $215,000 | USD | Flat Rate | 57 CV | $30.00 | 8 | 34 | 64 | 2/27/2006 | 7/06/2006 | 6/9/2006 |
| A126 | 0 | 2/6118 | PROGRESSIVE MOLDED PRODUCTS LLC | St Joseph | MO | Delphi T&I | N Kansas City | MO | $215,000 | $215,000 | $215,000 | USD | Flat Rate | 57 CV | $32.00 | 8 | 34 | 68 | 12/7/2006 | 7/06/2007 | 6/9/2006 |
| A126 | 1 | 2/6040 | Par Route Detail | XX | | Delphi T&I | N Kansas City | MO | $215,000 | $215,000 | $215,000 | USD | Flat Rate | 57 CV | $30.00 | 4 | 48 | 97 | 2/27/2006 | 7/06/2006 | 6/9/2006 |
| A106 | 1 | 2/6118 | PROGRESSIVE MOLDED PRODUCTS LLC | St Joseph | MO | Delphi T&I | N Kansas City | MO | $215,000 | $215,000 | $215,000 | USD | Flat Rate | 57 CV | $32.00 | 4 | 48 | 97 | 12/7/2006 | 7/06/2007 | 6/9/2006 |
| A104 | 2 | 2/6000 | Par Route Detail | XX | | Delphi T&I | N Kansas City | MO | $215,000 | $215,000 | $215,000 | USD | Flat Rate | 57 CV | $30.00 | 8 | 48 | 97 | 2/27/2006 | 7/06/2006 | 6/9/2006 |
| A104 | 2 | 2/6118 | PROGRESSIVE MOLDED PRODUCTS LLC | St Joseph | MO | Delphi T&I | N Kansas City | MO | $215,230 | $215,230 | $210,000 | USD | Flat Rate | 57 CV | $150.00 | 8 | 48 | 97 | 7/17/2006 | 7/16/2007 | 6/9/2006 |
| A104 | 3 | 2/6000 | Par Route Detail | XX | | Delphi T&I | N Kansas City | MO | $2.5.000 | $215,000 | $215,000 | USD | Flat Rate | 57 CV | $150.00 | 8 | 34 | 68 | 7/17/2006 | 7/16/2006 | 6/9/2006 |
| A104 | 3 | 2/6118 | PROGRESSIVE MOLDED PRODUCTS INC. | St Joseph | MO | Delphi T&I | N Kansas City | MO | $215,000 | $215,000 | $215,000 | USD | Flat Rate | 57 CV | $150.00 | 8 | 34 | 68 | 7/17/2006 | 7/16/2007 | 6/9/2006 |
| A108 | | 2/4000 | Par Route Detail | XX | | Delphi T&I | N Kansas City | MO | $500,000 | $500,000 | $1,564,000 | USD | Flat Rate | 57 CV | $30.00 | 5 | 437 | 874 | 8/17/2005 | 7/06/2006 | 6/9/2006 |
| A109 | | 2/6118 | Humphrey | | L | Delphi T&I | N Kansas City | MO | $500,000 | $500,000 | $1,000,000 | USD | Flat Rate | 57 CV | $35.00 | 8 | 437 | 874 | 7/17/2006 | 7/17/2007 | 6/9/2006 |
| A110 | | 2/0000 | Par Route Detail | XX | | Delphi T&I | N Kansas City | MO | $0.000 | $0.000 | $1,000,000 | USD | Flat Rate | 57 CV | $35.00 | 7 | 676 | 1,387 | 10/18/2005 | 7/18/2006 | 6/9/2006 |
| A110 | | 2/6118 | JIT SERVICES INC | Huntsville | AL | Delphi T&I | N Kansas City | MO | $0.000 | $0.000 | $1,591,000 | USD | Flat Rate | 57 CV | $30.00 | 10 | 676 | 1,352 | 7/17/2006 | 7/17/2007 | 6/9/2006 |

Delphi - Logistics Shared Services

For Delphi/Data 2 Logistics Billing Information
www.Data2Logistics.com/Delphinter

Page 1 of 2

DELPHI-001141

Appendix D

Revision effective date:     Monarch Transport LLC
                             Wednesday, February 14, 2007

| Lane ID | Tracking | Effect | Origin | | | Destination | | | Directional Rate | | | | | | | Day Fixed | One T | Over Tg | Directional Value | | Effective | | Termination | | Revision |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | Origin | City | State | Destination | City | State | Round Trip | One Way | Funds | Basis | Equip | CST | Day Fix | One T | Over Tg | One Way | Round Trip | From | Thru | From | Thru | Date |
| AT11 | 24700 | | Per Route Debit | KC | AA | Delphi TBI | K.Kansas City | MO | $1,983,940 | $333,100 | USD | Flat Rate | 53' CV | | $30.00 | 6 | 841 | 1,218 | | | 8/1/2005 | 7/14/2006 | | 6/9/2006 |
| AT11 | 35116 | | Conceptual Inc | Trans River | MI | Delphi TBI | N.Kansas City | MO | $1,528,508 | $891,100 | USD | Flat Rate | 53' CV | | $30.00 | 1* | 841 | 1,218 | | | 7/15/2006 | 7/14/2007 | | 6/9/2006 |
| AT12 | 24700 | | Per Route Debit | KC | zz | Delphi TBI/ KC | North Kansas City | MO | $2,149,250 | $8,000 | USD | Flat Rate | 53' CV | | $30.00 | 6 | 1,500 | 2,040 | | | 8/1/2005 | 7/14/2006 | | 6/8/2006 |
| AT12 | 35116 | | Per Route Debit | Lockport | NY | Delphi TBI NKC | North Kansas City | MO | $2,149,250 | $8,000 | USD | Flat Rate | 53' CV | | $30.00 | 12 | 1,500 | 2,040 | | | 7/15/2006 | 9/27/2008 | | 6/8/2006 |
| AT13 | 34000 | | Per Route Debit | PA | ss | Delphi TBI Kansas City | Kansas City | MO | $983,900 | $983,900 | USD | Flat Rate | 53' CV | | $30.73 | 6 | 820 | 1,640 | | | 8/1/2006 | 7/14/2006 | | 6/8/2006 |
| AT13 | 35116 | | ELGRA AUTOMOTIVE SYSTEMS INC | Gladwin | MI | Delphi TBI Kansas City | Kansas City | MO | $483,000 | $483,000 | USD | Flat Rate | 53' CV | | $30.00 | 12 | 820 | 1,640 | | | 7/15/2006 | 7/17/2008 | | 6/9/2006 |
| AT42 | 35116 | | Delphi Lockport | Lockport | NY | Delphi TBI NKC | North Kansas City | MO | $97,000 | $97,000 | USD | Flat Rate | 53' CV | | $30.00 | 14 | 1,020 | 2,040 | | | 6/26/2006 | 11/14/2007 | | 9/20/2006 |
| AT16 | 35116 | | Chelra & Aldman | Columbia | MO | Delphi TBI NKC | Kansas City | MO | $3,000 | $3,000 | USD | Flat Rate | 53' CD | | $30.00 | 15 | 134 | 248 | | | 3/17/2006 | 2/11/2007 | | 8/22/2006 |
| AT22 | 36116 | | COLLINS & ALKMAN | RANTOJL | IL | DELPHI Thermal | Kansas City | MO | $5,000 | $5,000 | USD | Flat Rate | 53' CV | | $30.00 | 18 | 440 | 810 | | | 6/27/2006 | 7/16/2007 | | 8/7/2008 |
| AD23 | 34500 | | Per Route Debit | KC | II | Delph TBI Kansas City | Kansas City | MO | $7,033,000 | $590,000 | USD | Flat Rate | 53' CV | | $32.00 | 19 | 819 | 1,633 | | | 7/17/2009 | 9/11/2006 | | 8/14/2006 |
| AD13 | 35116 | | SURA AUTOMOTIVE SYSTEMS | Gladwin | MI | Delp TBI/Kansas City | Kansas City | MO | $3,959,900 | $590,000 | USD | Flat Rate | 53' CV | | $30.00 | 20 | 819 | 1,633 | | | 6/13/2006 | 7/10/2007 | | 8/14/2006 |
| AT17 | 35116 | | Delph Aidan | Adrian | MI | Delp TBI | Kansas City | MO | $97,000 | $97,000 | USD | Flat Rate | 53' CV | | $30.00 | 16 | 731 | 1,461 | | | 17/1/2003 | 7/7/2002 | | 12/4/2006 |
| AT16 | 35116 | | Collins & Alkman | Columbia | MO | Delphi TBI NKC | Kansas City | MO | $6,000 | $6,000 | USD | Flat Rate | 53' CD | | $30.00 | 21 | 134 | 248 | | | 2/1/2007 | 7/12/2010 | | 1/29/2007 |



Monarch Transport LLC

By: _____

Title: 3/-5/2009

For Delphi/Dana 2 Logistics Billing Information,
www.Dana2Logistics.com/delphiuser

Page 2 of 2

Delphi - Logistics Shared Services

Delphi Automotive Systems

By: _____

Title: Delphi Global Indirect Manager
Supply Chain Management



Delphi
Carrier _____

DELPHI-001142

Mar. 6. 2007  2:16PM   Monarch Transport    No.6733   P. 3

# DELPHI

1. This is a revision of the Master Transportation Agreement between Delphi Automotive Systems LLC ("Delphi") and dated 7/19/2004

2. In accordance with section 2, Delphi and Carrier desire to include and/or amend Appendix D (Lanes and Rates, Schedules) to the Agreement

3. This revision in its entirety, will replace all previous Editions (Revisions and/or Amendments) to Appendix D of the Agreement.

4. Unless otherwise noted, the Effective and Termination Date for each lane (rate) listed below will be in accordance with Section 3 (Term of Agreement)

5. Except as expressly modified by this Revision, all other Terms and Conditions of the Agreement as all remain unchanged and in full force and in effect.

Appendix D:         Monarch Transport LLC
Revision effective date:    Friday, December 09, 2006

| Lane ID | Version | Lane | Origin Delphi | | | | Destination | | | | | Directional Rate | | | | | | | | | | Directional Value | | | Effective | Termination | Revision |
|---------|---------|------|-------|------|-------|------|-------------|-----|------|-------|-------|-------------|--------|--------|-------|-----|-----|--------|--------|---------|---------|--------|--------|-------------|-------------|----------|
| | | | City | State | Destination | City | State | Fuel | One Way | Total | Round Trip | Funds | Basis | Equip | GST | Ship Fee | Sm # | One Way | Round Trip | Effective | Termination | Revision |
| AO54 | | Per Route Diesel | ** | xx | Delphi T&I | N Kansas City | MO | $1,800,000 | $2,250,000 | USD | Flat Rate | 53' CV | $30.00 | 8 | 1,158 | 2,230 | 8/1/2006 | 4/16/2008 | 8/9/2006 |
| A789 | | Per Route Diesel | ** | xx | Delphi T&I | N Kansas City | MO | $315,000 | $315,000 | USD | Flat Rate | 53' CV | $30.00 | 8 | 45 | 57 | 8/1/2006 | 3/30/2008 | 8/9/2006 |
| C138 | | Core Manufacturing | Clayton | MI | Delphi T&I Kansas City | Monarch City | MO | $967,000 | $1,950,000 | USD | Flat Rate | 53' CV | $0.00 | 1 | 822 | 344 | 12/6/2004 | 7/31/2007 | 8/9/2006 |
| C037 | | DHC418JB | Las Plazas | TX | Delphi T&I | N Kansas City | MO | $1,450,000 | $1,300,000 | USD | Flat Rate | 53' CV | $30.05 | 5 | 1,071 | 2,145 | 12/16/2005 | 7/31/2007 | 8/9/2006 |
| B9933 | | Delphi T&I | N Kansas City | TX | Delphi T&I | St. Joseph | MO | $0.001 | $240.78C | USD | Flat Rate | 53' CV | $0.00 | 0 | | | 7/18/2004 | 3/30/2008 | 8/9/2006 |
| A100 | 0 | Per Route Diesel | xx | xx | Delphi T&I | N Kansas City | MO | $315,000 | $315,000 | USD | Flat Rate | 53' CV | $30.00 | 8 | 34 | 58 | 10/7/2006 | 7/18/2007 | 8/9/2006 |
| A100 | 0 | PROGRESSIVE MOLDED PRODUCTS INC | xx | MO | Delphi T&I | N Kansas City | MO | $315,000 | $315,000 | USD | Flat Rate | 53' CV | $30.00 | 8 | 34 | 58 | 7/17/2006 | 7/18/2007 | 8/9/2006 |
| A106 | | Per Route Diesel | xx | xx | DHC418JB | N Kansas City | MO | $215,000 | $210,000 | USD | Flat Rate | 53' CV | $30.00 | 8 | 44 | 67 | 10/7/2006 | 7/18/2007 | 8/9/2006 |
| A708 | 1 | PROGRESSIVE MOLDED PRODUCTS INC | Sarre Joseph | xx | Delphi T&I | N Kansas City | MO | $915,000 | $915,000 | USD | Flat Rate | 53' CV | $30.00 | 8 | 44 | 92 | 7/17/2006 | 7/18/2007 | 8/9/2006 |
| A706 | 1 | Per Route Diesel | xx | xx | Delphi T&I | N Kansas City | MO | $315,000 | $315,000 | USD | Per Diem | 53' CV | $35.00 | 4 | 44 | 92 | 7/17/2006 | 7/18/2007 | 8/9/2006 |
| A120 | 2 | Per Route Diesel | Sarre Joseph | xx | Delphi T&I | N Kansas City | MO | $215,000 | $215,000 | USD | Flat Rate | 53' CV | $33.00 | 8 | 44 | 88 | 7/10/2006 | 7/18/2007 | 8/9/2006 |
| A120 | 2 | PROGRESSIVE MOLDED PRODUCTS INC | xx | xx | Delphi T&I | N Kansas City | MO | $315,000 | $315,000 | USD | Flat Rate | 53' CV | $12.50 | 5 | 34 | 88 | 7/17/2006 | 7/18/2007 | 8/9/2006 |
| A120 | 3 | PROGRESSIVE MOLDED PRODUCTS INC | Sarre Joseph | xx | Delphi T&I | N Kansas City | MO | $715,200 | $215,200 | USD | Flat Rate | 53' CV | $12.50 | 5 | 34 | 88 | 7/17/2006 | 7/18/2007 | 8/9/2006 |
| A701 | | Per Route Diesel | xx | xx | Delphi T&I | N Kansas City | MO | $400,000 | $400,000 | USD | Flat Rate | 53' CV | $30.01 | 6 | 487 | 974 | 6/1/2006 | 7/18/2008 | 8/9/2006 |
| A709 | | LUIS MFG | Hampshire | IL | DHC418JB | N Kansas City | MO | $1,204,000 | $1,204,000 | USD | Flat Rate | 53' CV | $30.01 | 6 | 487 | 174 | 7/17/2006 | 7/18/2007 | 8/9/2006 |
| A710 | | Per Route Diesel | xx | IL | Delphi T&I | N Kansas City | MO | $0.000 | $1,591,940 | USD | Flat Rate | 53' CV | $30.00 | 7 | 674 | 1,352 | 7/17/2006 | 7/17/2007 | 8/9/2006 |
| A710 | | JIT SERV CTR INC | Hillsdale | AL | Delphi T&I | N Kansas City | MO | $0.000 | $1,591,940 | USD | Flat Rate | 53' CV | $30.00 | 5 | 675 | 1,352 | 7/17/2006 | 7/17/2007 | 8/9/2006 |

For Delphi/Class 2 Logistics Billing Information:
www.DataXLogistics.com/delphi

Delphi
Carrier

Delphi - Logistics Shared Services

Page 1 of 2

DELPHI-001143

Mar. 6. 2007  2:17PM   Monarch Transport LLC                    No.6733   P. 4

Appendix D

Monarch Transport LLC

Revision effective date       Friday, December 08, 2006

| Line ID | Class | Origin | | Rate | Destination | | | Departure Rate | | | | | | | | Round Trip Miles | | | Effective | | Revision |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Origin | City | Rate | Destination | City | State | One Way | Round Trip | Funds | Basis | Style | CSZ | Loy Fee | Esc. | Cur Rej | Round Trip | Effective Date | Termination Date | Revision Date |
| AT11 | 24000 | Per Route Detail | -- | XX | DRHM TBI | N Kansas City | MO | $627.399 | $1,569,840 | USD | Flat Rate | 53 CV | | $90.00 | 4 | 648 | 1,296 | 8/12/2003 | 12/8/2006 | 8/6/2006 |
| AT11 | 54116 | Chrescut Inc. | Terre Haute | XX | DRHM TBI | N Kansas City | MO | $631.392 | $1,589.640 | USD | Flat Rate | 53 CV | | $90.05 | 11 | 648 | 1,296 | 7/11/2004 | 1/10/2007 | 6/6/2006 |
| AT12 | 24230 | Per Route Detail | XX | XX | DRHM TBI NYC | North Kansas City | MO | $0.00 | $2,148.250 | USD | Flat Rate | 53 CV | | $90.03 | 0 | 1,120 | 2,340 | 8/1/2005 | 7/28/2008 | 8/9/2005 |
| AT12 | 59118 | Per Route Detail | Lockport | NY | DRHM TBI NYC | North Kansas City | MO | $0.00 | $2,148.250 | USD | Flat Rate | 53 CV | | $90.03 | 17 | 1,120 | 2,340 | 7/17/2006 | 8/27/2008 | 8/9/2005 |
| AT13 | 24200 | Per Route Detail | XX | XX | Delph TBI Kansas City | Kansas City | MO | $590.000 | $1,150.000 | USD | Flat Rate | 53 CV | | $90.03 | 6 | 920 | 1,840 | 6/4/2005 | 3/16/2008 | 6/5/2005 |
| AT13 | 59118 | DURA AUTOMOTIVE SYSTEMS INC | Gresham | IN | Delph TBI Kansas City | Kansas City | MO | $591.200 | $1,150.100 | USD | Flat Rate | 53 CV | | $90.03 | 11 | 920 | 1,840 | 7/17/2006 | 7/18/2008 | 6/27/2006 |
| AT12 | 59118 | Delph Lockport | Lockport | NY | Delph TBI NYC | North Kansas City | MO | $0.00 | $2,230.000 | USD | Flat Rate | 53 CV | | $90.00 | 15 | 1,120 | 2,340 | 9/28/2006 | 7/18/2007 | 6/29/2006 |
| AT18 | 39118 | COWns & Aikman | Columbus | IN | Delph TBI NYC | Kansas City | MO | $0.00 | $490.000 | USD | Flat Rate | 53 CV | | $90.00 | 14 | 134 | 200 | 7/17/2006 | 7/18/2007 | 6/29/2006 |
| AT22 | 39111 | COLUNS & ASPMAX | RICHMOND | IN | DELPHI Thermal | Kansas City | MO | $0.00 | $1,500.000 | USD | Flat Rate | 53 CV | | $90.00 | 16 | 440 | 880 | 9/01/2006 | 7/16/2007 | 1/7/2006 |
| AD18 | 24060 | Per Route Detail | XX | XX | Delph TBI Kansas City | Kansas City | MO | $690.300 | $1,653.000 | USD | Flat Rate | 53 CV | | $90.00 | 19 | 819 | 1,151 | 7/17/2006 | 9/1/2007 | 8/14/2006 |
| AD19 | 38118 | DURA AUTOMOTIVE SYSTEMS | Gresham | IN | Delph TBI Kansas City | Kansas City | MO | $982.200 | $1,755.000 | USD | Flat Rate | 53 CV | | $90.00 | 23 | 819 | 1,151 | 9/1/2006 | 7/18/2007 | 8/21/2006 |
| AT17 | 36118 | Delph Aren | Aman | XX | Delph TBI | Kansas City | MO | $0.00 | $1,600.900 | USD | Flat Rate | 53 CV | | $90.00 | 16 | 723 | 481 | 7/21/2004 | 1/27/2007 | 12/4/2006 |

Delph Automotive Systems LLC

By: _____

Title: DuSM Global Indirect Manager
Supply Chain Management

Monarch Transport LLC

By: _____

Title: _____

For Delphi/Data 2 Logistics Billing Information
www.Data2Logistics.com/delphinor

Page 2 of 2

Delphi – Logistics Shared Services

Delphi Center _____

**DELPHI-001144**

# DELPHI

Monarch Transport LLC ("Carrier"),

1  This is a revision of the Master Transportation Agreement between Delphi Automotive Systems LLC ("Delphi") and
   dated:  7/19/2004

2  In accordance with section 2, Delphi and Carrier desire to include and/or amend Appendix D (Lanes and Rates, Schedules), to the Agreement

3  This revision in it's entirety, will replace all previous Editions (Revisions and/or Amendments) to Appendix D or the Agreement

4  Unless otherwise noted, the Effective and Termination Date for each lane (route) listed below will be in accordance with Section 3 (Term of Agreement)

5  Except as expressly modified by this Revision, all other Terms and Conditions of the Agreement will remain unchanged and in full force and in effect

Appendix D        Monarch Transport LLC

Revision effective date        Thursday, March 02, 2006

| Lane ID | Version | Cusco | Origin | Origin City | Origin State | Destination | Destination City | Destination State | Directional Rate One Way | Directional Rate Round Trip | Funds | Basis | Equip | Stop Fee | Rev. # | Directional Miles One Way | Directional Miles Round Trip | Effective Date | Termination Date |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| MR01 | | 36118 | Delphi T&I | N Kansas City | MO | Comp Logistics | Lansing | MI | $0.000 | $1,725.000 | USD | Flat Rate | 53' CV | $0.00 | 0 | | | 7/19/2004 | 7/31/2005 |
| MR02 | | 36118 | Delphi T&I | N Kansas City | MO | Crocker Limited | Three Rivers | MI | $0.000 | $1,550.000 | USD | Flat Rate | 53' CV | $0.00 | 0 | | | 7/19/2004 | 7/31/2005 |
| MR03 | | 36118 | Delphi T&I | N Kansas City | MO | Progressive Molded | St. Joseph | MO | $0.000 | $240.000 | USD | Flat Rate | 53' CV | $0.00 | 0 | | | 7/19/2004 | 4/10/2005 |
| C135 | | 36118 | Dura Manufacturing | Gladwin | MI | Delphi T&I Kansas | Kansas City | MO | $0.000 | $1,853.000 | USD | Flat Rate | 53' CV | $0.00 | 1 | 822 | | 7/19/2004 | 7/31/2007 |
| C135 | | 36118 | Lurit Manufacturing | Hampshire | IL | Delphi T&I | N Kansas City | MO | $980.000 | $1,084.000 | USD | Flat Rate | 53' CV | $0.00 | 2 | | 1,644 | 12/6/2004 | 7/31/2007 |
| G037 | | 36118 | Delphi E&S | Los Indios | TX | Delphi T&I | N Kansas City | MO | $600.000 | $2,300.000 | USD | Flat Rate | 53' CV | $30.00 | 3 | 1,073 | | 3/21/2005 | 7/31/2007 |
| G053 | | 36118 | PMP | St Joseph | MO | Delphi T&I | N Kansas Cy | MO | $1,800.000 | $215.000 | USD | Flat Rate | 53' CV | $0.00 | 4 | | 2,146 | 4/11/2005 | 7/31/2005 |
| G065 | | 36118 | Delphi Lockport | Lockport | NY | Delphi T&I NKC | orth Kansas Ci | MO | $0.000 | $2,146.250 | USD | Flat Rate | 53' CV | $0.00 | 5 | | | 5/9/2005 | 7/31/2005 |
| AD04 | | 24000 | Per Route Detail | Per Route Detail | XX | Delphi T&I | N Kansas Cy | MO | $1,800.000 | $2,300.000 | USD | Flat Rate | 53' CV | $30.00 | 6 | 1,156 | 2,230 | 8/1/2005 | 2/26/2007 |
| AT08 | | 24000 | Per Route Detail | Per Route Detail | XX | Delphi T&I | N Kansas Cy | MO | $215.000 | $215.000 | USD | Flat Rate | 53' CV | $30.00 | 6 | 46 | 92 | 8/1/2005 | 2/26/2007 |
| AT08 | 0 | 24000 | Per Route Detail | Per Route Detail | XX | Delphi T&I | N Kansas Cy | MO | $215.000 | $215.000 | USD | Flat Rate | 53' CV | $30.00 | 6 | 34 | 68 | 2/27/2006 | 7/18/2007 |
| AT08 | 1 | 24000 | Per Route Detail | Per Route Detail | XX | Delphi T&I | N Kansas Cy | MO | $215.000 | $215.000 | USD | Flat Rate | 53' CV | $30.00 | 6 | 46 | 92 | 2/27/2006 | 7/18/2007 |
| AT08 | 2 | 24000 | Per Route Detail | Per Route Detail | XX | Delphi T&I | N Kansas Cy | MO | $215.000 | $215.000 | USD | Flat Rate | 53' CV | $30.00 | 6 | 46 | 92 | 2/27/2006 | 7/18/2007 |

Delphi – Logistics Shared Services



Page 1 of 2

DELPHI-001145

Appendix D      Monarch Transport LLC

Revision effective date      Thursday, March 02, 2006

| Lane ID | Version | Csce | Origin | | | Destination | | | Directional Rate | | | | | | | Directional Miles | | Effective | Termination |
| | | | Origin | City | State | Destination | City | State | One Way | Round Trip | Funds | Basis | Equip | Stop Fee | Rev. # | One Way | Round Way | Date | Date |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| AT08 | 3 | 24000 | Per Route Detail | Per Route Detail | XX | Delphi T&I | N Kansas Cty | MO | $215.000 | $215.000 | USD | Flat Rate | 53' CV | $30.00 | 6 | 34 | 68 | 2/27/2006 | 7/18/2007 |
| AT09 | | 24000 | Per Route Detail | Per Route Detail | XX | Delphi T&I | N Kansas City | MO | $600.000 | $1,084.000 | USD | Flat Rate | 53' CV | $30.00 | 6 | 487 | 974 | 8/1/2005 | 7/17/2007 |
| AT11 | | 24000 | Per Route Detail | Per Route Detail | XX | Delphi T&I | N Kansas City | MO | $833.300 | $1,589.680 | USD | Flat Rate | 53' CV | $30.00 | 6 | 648 | 1,296 | 8/1/2005 | 3/10/2007 |
| AT12 | | 24000 | Per Route Detail | Per Route Detail | XX | Delphi T&I NKC | orth Kansas Ci | MO | $0.000 | $2,146.250 | USD | Flat Rate | 53' CV | $30.00 | 6 | 1,020 | 2,040 | 8/1/2005 | 7/18/2007 |
| AT13 | | 24000 | Per Route Detail | Per Route Detail | XX | Delphi T&I Kansas | Kansas City | MO | $980.000 | $1,853.000 | USD | Flat Rate | 53' CV | $30.00 | 6 | 820 | 1,640 | 8/1/2005 | 7/18/2007 |
| AT10 | | 24000 | Per Route Detail | Per Route Detail | XX | Delphi T&I | N Kansas City | MO | $0.000 | $1,581.840 | USD | Flat Rate | 53' CV | $30.00 | 7 | 676 | 1,352 | 10/18/2005 | 7/17/2007 |

Delphi-ASPproductsystems LLC
By:
Type  Director, Model Logistics.

Monarch Transport LLC
By:
Title

Delphi
Carrier

Page 2 of 2

Delphi - Logistics Shared Services