**Hearing Date And Time: October 21, 2010 at 10:00 a.m. (prevailing Eastern time)**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
155 North Wacker Drive
Chicago, Illinois 60606
John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036

Attorneys for DPH Holdings Corp., et al.,
   Reorganized Debtors

DPH Holdings Corp. Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

DPH Holdings Corp. Legal Information Website:
http://www.dphholdingsdocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                :

     In re                          :     Chapter 11
                                :
DPH HOLDINGS CORP., et al.,    :     Case No. 05-44481 (RDD)
                                :
                                :     (Jointly Administered)
        Reorganized Debtors.     :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

REORGANIZED DEBTORS' SUPPLEMENTAL REPLY TO SUBSTANTIAL
CONTRIBUTION APPLICATION OF HIGHLAND CAPITAL MANAGEMENT L.P.
PURSUANT TO 11 U.S.C. § 503(b)(3)-(4) FOR REIMBURSEMENT OF ACTUAL
<u>AND NECESSARY EXPENSES AND PROFESSIONAL FEES</u>

DPH Holdings Corp. ("DPH Holdings") and its affiliated reorganized debtors in the above-captioned cases (together with DPH Holdings, the "Reorganized Debtors"), successors to Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, former debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this Supplemental Reply To Substantial Contribution Application Of Highland Capital Management L.P. Pursuant To 11 U.S.C. § 503(b)(3)-(4) For Reimbursement Of Actual And Necessary Expenses And Professional Fees (the "Supplemental Reply"), and respectfully represent as follows:

## Background

1.  Highland Capital Management L.P. ("Highland") filed the Application Of Highland Capital Management, L.P. Pursuant To 11 U.S.C. §§ 503(b)(3) And 503(b)(4) For Allowance And Reimbursement Of Reasonable Professional Fees And Actual, Necessary Expenses In Making A Substantial Contribution In These Chapter 11 Cases (Docket No. 19112) (the "Highland Application") on November 20, 2009.

2.  On April 15, 2010, the United States Trustee objected to the Highland Application (Docket No. 19860).

3.  On May 13, 2010, the Reorganized Debtors also objected to the Highland Application (Docket No. 20064) (the "Objection").

4.  In response to those objections, Highland filed a Supplement to the Highland Application, dated May 19, 2010 (Docket No. 20160) (the "Highland Supplement") and the Declaration of Patrick Daugherty in support of the Highland Application, dated June 28, 2010 (Docket No. 20284) (the "Daugherty Declaration").

2

Relief Requested

5.   By this Supplemental Reply, the Reorganized Debtors object to the Highland Application as amended by the Highland Supplement and the Daugherty Declaration. Specifically, the Reorganized Debtors respond to two new issues Highland raised in the Highland Supplement and the Daugherty Declaration. First, Mr. Daugherty suggests in his Declaration that Highland's competing investment proposals led to lower commitment fees in the Amended EPCA.[1] (Daugherty Decl. ¶¶ 19-20, 27.) Mr. Daugherty's speculation notwithstanding, Highland's actions taken as a prospective bidder are not the sort of extraordinary efforts that may form the basis for a substantial-contribution claim. Moreover, Highland's investment proposals, as a factual matter, did not contribute to lower fees under the Amended EPCA. Second, Highland has amended the amount of its claim for professional fees and expenses since filing its Application. (Highland Supplement ¶ 4; Daugherty Decl. ¶ 2 and Ex. A.) Even assuming that Highland made a substantial contribution to the estates, certain of the amended fees and expenses claimed are unreasonable and unrelated to the benefit that Highland believes it conferred.[2]

---

[1] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed in the Objection.

[2] Highland also contends that "Delphi cannot be heard to object" (Highland Supplement ¶ 6) to the Highland Application because, in a March 2008 e-mail, the Debtors' chief restructuring officer, John Sheehan, acknowledged Highland's support during the Debtors' chapter 11 cases and stated that he, along with Debtors' general counsel David Sherbin, would "in connection with our role as Delphi Fee Committee members, (should Highland choose to submit a Fee Application) be supportive of Highland's fee application" (Highland Supplement Ex. A, the "March 2008 E-mail"). Highland's contention is mistaken. Mr. Sheehan's statements in the March 2008 E-mail are irrelevant to the question of whether Highland's actions—when viewed in hindsight—ultimately conferred any actual benefit to the estates. See, e.g., In re Granite Partners, L.P., 213 B.R. 440, 447 (Bankr. S.D.N.Y. 1997) ("The substantial contribution test is applied in hindsight, and scrutinizes the actual benefits to the case"). When making their respective statements in the March 2008 E-mail, each party was hopeful that the Debtors would exit chapter 11 pursuant to the Confirmed Plan and the Amended EPCA. Those hopes proved illusory when Appaloosa's failure to close the Amended EPCA on April 4, 2008, fatally torpedoed the Confirmed Plan. (See Objection ¶ 16.) Thus, any of Highland's actions that Mr. Sheehan was referencing did not, as it turned out, substantially contribute to the estates. Moreover, to the extent that Highland intends to argue that Mr. Sheehan's statements should somehow force the Reorganized Debtors to

*(cont'd)*

3

Reply To Highland Supplement And Daugherty Declaration

A.     The Lower Fees In the Amended EPCA Do Not Support Highland's Substantial-Contribution Claim.

6.     To make its claim for substantial contribution, Highland argues that its efforts as a prospective bidder resulted in terms more favorable to the estate in the Amended EPCA as compared to the Original EPCA. (Highland Application ¶ 1.) Highland—apparently recognizing that its Application failed to point to any demonstrable benefit conferred on the estates from its role as a prospective investor—now attempts to resuscitate its claim through the Daugherty Declaration in which Mr. Daugherty hypothesizes that the lower commitment fees paid under the terms of the Amended EPCA (as compared to the fees that would have been due under the Original EPCA) resulted from the Debtors' use of the Highland proposals as leverage in negotiations with Appaloosa. (Daugherty Decl. ¶¶ 19-20, 27.) This new argument cannot save Highland's claim because (i) as a matter of law, Highland's actions here, as a prospective bidder, are not the kind of extraordinary efforts sufficient to form the basis of a substantial-contribution claim and (ii) as a matter of fact, Highland has not proven that its work developing and advocating for its investment proposals were the driving force behind the lower commitment fees in the Amended EPCA.

                 **(a)    Highland's Actions Taken as a Prospective Bidder Cannot Support Its Substantial-Contribution Claim.**

7.     Highland bears "an especially difficult burden in passing the substantial contribution test since [it is] presumed to act primarily in [its] own interests," and such "[e]fforts

---

*(cont'd from previous page)*
     acquiesce to Highland's substantial contribution claims, Highland is also mistaken because the March 2008 E-mail (referencing as it does only past actions by Highland that conferred no benefit to the estates) cannot be construed to represent a binding commitment, enforceable against the Reorganized Debtors, to support the claims actually brought in the Highland Application after the collapse of the Confirmed Plan. See, e.g., McMullen v. Meijer, Inc., 355 F.3d 485, 490 (6th Cir. 2004) ("It is an elemental tenet of Michigan contract law, which applies here, that past consideration cannot serve as legal consideration for a subsequent promise." (citing Shirey v. Camden, 22 N.W.2d 98, 102 (Mich. 1946)).

4

undertaken by creditors solely to further their own self interest are not compensable under section 503(b)." In re Dana Corp., 390 B.R. 100, 108 (Bankr. S.D.N.Y. 2008) (internal quotation marks omitted). "[C]ompensation under section 503 is reserved for those rare and extraordinary circumstances when the creditor's involvement truly enhances the administration of the estate." Id.

8. Here, Highland makes no claim that it somehow furthered the administration of the estates by taking on a responsibility or role akin to that of a statutory or *ad hoc* committee.[3] (See, e.g., Hr'g Tr. 157:8-11, May 20, 2010 (Docket No. 20197) (noting that to succeed on substantial contribution claims individual creditors must "have done something extraordinary in terms of the administration of the case or filled a gap where those who are charged with acting in the interest of groups haven't acted").) Rather, Highland's claim that it is responsible for the lower commitment fees in the Amended EPCA is rooted solely on Highland's efforts as a prospective bidder developing and advocating for its own investment proposals. (See, e.g., Daugherty Decl. ¶¶ 12, 18-19, 27.) But as the court held in In re Dana Corp., such actions of a "prospective bidder" are "hardly extraordinary" and are "taken essentially for its own economic self interest with any incidental benefit to the Debtors' estates from its actions failing, as a matter of law, to rise to the level of a substantial contribution within the meaning of section 503(b) of the Bankruptcy Code." In re Dana, 390 B.R. at 111.

9. Highland was the "second largest beneficial stockholder in Delphi with aggregate holdings of approximately 8.8% of the issued and outstanding common stock." (Daugherty Decl. ¶ 5.) Concluding that the Appaloosa proposals threatened Highland's equity position,

---

[3] To the extent that Highland might believe that its objection to the Original EPCA conferred a substantial contribution to the estates, Highland is mistaken. Highland's objection was largely duplicative of the objections filed by the Equity Committee and other parties, and the only three arguably unique points cannot form the basis for a substantial contribution claim here. (See Objection ¶ 18 & n.6.)

5

Highland decided to shop its own investment proposal to the various stakeholders in order to protect its own interests. (See, e.g., Daugherty Decl. ¶¶ 7-9, 14-16; see also Objection ¶ 13.) Highland never sought to form or join a statutory committee. Highland never took it upon itself to negotiate more favorable terms (including commitment fees) from Appaloosa. Instead, Highland left that work to the statutory committees and Delphi. (See, e.g., Daugherty Decl. ¶¶ 16-17.)

10. Highland was certainly under no obligation to negotiate with Appaloosa or to serve on a committee, and Highland was perfectly free to advocate for its own investment proposal. But in doing so, Highland cannot now look to the estates to pay the legal bills for its failed bid. As here, debtors in bankruptcy cases are wise to use proposals from competing investors against each other to negotiate better terms for the benefit of the estate. But, if a prospective bidder could, for that reason alone, claim it made a substantial contribution to the estate, then every failed prospective bidder in every bankruptcy case in the country would be entitled to its fees and costs. Such a result would be an untenable expansion of the law under section 503(b)(3) and (4) of the Bankruptcy Code. Highland's Application should, therefore, be denied.

### (b) The Amended EPCA's Lower Commitment Fees Were Not the Result of Highland's Investment Proposals.

11. Setting aside the (fatal) problem with Highland's application—that the efforts of a prospective bidder are not the sort of extraordinary efforts that may support a substantial-contribution claim—Highland's investment proposals, as a factual matter, were not the driving force behind the lower commitment fees in the Amended EPCA for which Highland takes credit. Through the Daugherty Declaration, Highland claims for the first time that it is responsible for a

6

"$19 million" reduction in the commitment fees payable under the Amended EPCA.[4] (Daugherty Decl. ¶ 19.)  To hang its substantial-contribution claim on these lower commitment fees, Highland must, among other things, prove by a preponderance of the evidence that its efforts were the driving force resulting in those lower fees.  See In re Dana, 390 B.R. at 108 ("The burden of proof is on the applicant to demonstrate by a preponderance of the evidence that it has made a substantial contribution in the case.").  Highland's evidence cannot carry its burden.

12.     Mr. Daugherty argues that the reduction in fees was a "direct and proximate result of Delphi's use of Highland as a foil against Appaloosa in the July 2007 negotiations." (Daugherty Decl. ¶ 19.)  His only support for that argument is his observation that the fees under the Amended EPCA, $63.75 million, were approximately the same as the fees under Highland's final proposal which was "negotiated at the same time that Delphi was negotiating with Appaloosa." (Id.)  He believes that this is "not a coincidence."  (Id.)  But just as correlation is never proof of causation, the ultimate similarity between the fees payable under the Amended EPCA and those in Highland's final proposal is not proof that the fees in the Amended EPCA were lowered in response to Highland's bids.

13.     Mr. Daugherty himself states that Mr. Sheehan told him that in Delphi's negotiations with Appaloosa and Highland, Delphi "use[d] Highland against Appaloosa, and vice versa in order to come up with the best deal Delphi could get with the lowest costs in fees to the

---

[4]  As an aside, Mr. Daugherty's $19 million figure is incorrect.  Mr. Daugherty mistakenly assumes that the $6.375 million Arrangement Fee in the Amended EPCA (Debtors' Reply In Support Of Delphi-Appaloosa Investment And Plan Framework Motion, dated Aug. 1, 2007 (Docket No. 8843), Ex. A ("Amended EPCA") § 2(h)(iii)) was also in the Original EPCA.  It was not.  The total commitment fees in the Original EPCA were $76.125 million (a $21 million Preferred Commitment Fee and a $55.125 million Standby Commitment Fee). (Debtors' Omnibus Reply To Objections To Plan Investment And Framework Support Approval Motion, dated January 10, 2007 (Docket No. 6531), Ex. B ("Original EPCA") § 2(h)(i)-(ii).)  Therefore, the fees payable under the Amended EPCA ($63.75 million, including the $6.375 million Arrangement Fee) were $12.375 million less than the commitment fees payable under the Original EPCA.  (All Appaloosa and Highland EPCA proposals referenced herein are available from counsel for the Reorganized Debtors upon request.)

company." (Daugherty Decl. ¶ 17 (emphasis added).)  Thus, for all Highland has shown, because Delphi was using both competing bidders against each other, Appaloosa might have lowered its commitment fees before Highland allowing Delphi's negotiators to use Appaloosa's proposals as leverage against Highland.  In fact, the commitment fees in Highland's initial December 21, 2006, proposal were $117.5 million (Highland Capital Management, LP's Objection And Response To Expedited Motion For Order Authorizing And Approving The Equity Purchase And Commitment Agreement Pursuant To Sections 105(a), 363(b), 503(b) And 507(a) Of The Bankruptcy Code And The Plan Framework Support Agreement Pursuant To Sections 105(a), 363(b) And 1125(e) Of the Bankruptcy Code, dated Dec. 28, 2006 (Docket No. 6330), Ex. A. ("Highland's December 21, 2006, Proposal") at 3)—$41.375 million more than the fees in the Original EPCA (Original EPCA § 2(h)).  Thus, coming out of the gate, Appaloosa, not Highland, offered the lower commitment fees.

14.     Moreover, Delphi and the committees, not Highland, negotiated the Appaloosa deal.  Highland has pointed to no reason to believe why these parties, rather than Highland, are not to thank for the lower commitment fees in the Amended EPCA.  Stated another way, Highland failed to "separate out a benefit conferred directly by" Highland from a benefit conferred by Delphi, the committees, or other parties.  (Hr'g Tr. 117:15, May 20, 2010 (Docket No. 20197).)

15.     In contrast to Mr. Daugherty's speculation that Delphi used Highland's proposal to negotiate lower fees in the Amended EPCA, when the actual proposals are compared what becomes clear is that the reduction in commitment fees between the Original EPCA and the Amended EPCA was most likely a function of the corresponding decrease in the total investment between the Original EPCA and the Amended EPCA.  The Original EPCA's total investment

8

was $3.405 billion (Original EPCA §§ 1(a), 2(a) & sched. 2) with total commitment fees of $76.125 million (Original EPCA § 2(h)(i)-(ii)).  Thus, the Original EPCA's commitment fees were 2.24% of the total investment.  The Amended EPCA's total investment, in comparison, was $2.55 billion (Amended EPCA § 2(a) & sched. 2) with total fees of $63.75 million (Amended EPCA § 2(h)(i)-(iii)).  Thus, the Amended EPCA's fees were 2.50% of the proposed total investment, roughly similar to the 2.24% under the Original EPCA.[5]

16.     With regard to Highland, its initial December 21, 2006, proposal offered a total investment of $4.7 billion with a "Backstop Fee" of 2.5% of the proposed investment—$117.5 million.  (Highland's December 21, 2006, Proposal at 3.)  And the total investment in Highland's final proposal, dated July 17, 2007, was approximately $3.309 billion with commitment fees of $60.750 million, or 1.84% of the total investment.[6]  (Highland EPCA Proposal, dated July 17, 2007, §§ 1(a), 2(a), 2(g)(i).)

17.     This comparison shows that, in the Appaloosa proposals, commitment fees held roughly constant as a percentage of total investment, and therefore the commitment fees in the Amended EPCA decreased as a function of the lower total investment in the Amended EPCA.  Likewise, the similarity between the amount of commitment fees in the Amended EPCA and those in Highland's final bid likely resulted largely from Highland decreasing its proposed investment in correlation with the lower proposed investments in each of the Appaloosa

---

[5] Indeed, if the $6.375 million Arrangement Fee in the Amended EPCA were excluded from the comparison (the Original EPCA did not have an arrangement fee), the commitment fees as a percentage of the total investment in the Amended EPCA were 2.25%, which is almost identical to the 2.24% in the Original EPCA.

[6] The fees in the final Highland proposal could, in fact, increase to a total of 2.4% of the proposed investment if the extension fees of as much as $18.23 million were to become applicable.  (Highland EPCA Proposal, dated July 17, 2007, § 2(g)(ii).)

9

proposals.[7] Thus, Highland's belief that the lower commitment fees in the Amended EPCA were the result of Highland's efforts is simply incorrect. Highland, therefore, cannot prove how its efforts—separated from the efforts of Delphi, the committees, and other parties-in-interest— "conferred a direct, significant and demonstrably positive benefit upon the estate." In re Dana, 390 B.R. at 108.

B.    Fees And Expenses Of Haynes And Boone Are Not Reasonable.

18.    In the Highland Supplement, Highland decreased its claim for reimbursement for the fees and expenses of Haynes and Boone (and walked away from its claim for reimbursement for the fees and expenses of its financial advisor, Loughlin, Meghji). (Highland Supplement ¶ 4; Daugherty Decl. ¶ 2 & Ex. A.) At this time, Highland requests reimbursement only for $1,699,774.65 in fees and $50,614.59 in expenses for Haynes and Boone. Even if this Court were to determine that Highland made a substantial contribution to the estate, Highland would only be entitled to compensation for the services of Haynes and Boone that were reasonable "based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title," as well as "reimbursement for actual, necessary expenses incurred." 11 U.S.C. § 503(b)(4). As set forth below, the fees and expenses requested in the Highland Supplement and detailed in Exhibit A to the Daugherty Declaration are not reasonable.

19.    Highland's sole theory for how it substantially contributed to the estate is that Highland's investment proposals created a competitive environment thereby improving the terms

---

[7]    Even though the commitment fee percentage in Highland's final proposal did decrease relative to the percentage in its original proposal, if the 1.83% fee percentage in the final proposal were applied to its $4.7 billion original offer, the commitment fees would still equal approximately $86 million—more than the fees in any Appaloosa proposal. Thus, the actual correlation of the fees in the Amended EPCA and Highland's final proposals most likely resulted from Highland lowering its total proposed investment.

of the Amended EPCA. As the Reorganized Debtors discussed in Objection ¶ 21, the relevant time period in which Highland developed and advocated for its competing proposals includes only the months of December 2006, January 2007, and April through July 2007. All of Haynes and Boone's fees and expenses outside of those months are unrelated to Highland's claimed substantial contribution and are, therefore, not reimbursable. Highland, however, continues to claim reimbursement for Haynes and Boone's fees and expenses from August, November, and December of 2007. (Daugherty Decl. Ex. A.) Haynes and Boone's fees and expenses from those months were not related to developing Highland's investment proposals or the Amended EPCA, and therefore they are not reimbursable.

20. Moreover, a review of Highland's amended fee details shows that even during the relevant time frame, Highland continues to claim fees for Haynes and Boone work related only to case administration, monitoring, and education that are not compensable from the estate. See In re Granite Partners, 213 B.R. at 453-54; see also Objection ¶¶ 20-21.

11

WHEREFORE the Reorganized Debtors respectfully request that this Court enter an order (a) granting the relief requested herein, (b) denying the Application filed by Highland, and (c) granting the Reorganized Debtors such other and further relief as is just.

Dated:   New York, New York
         October 18, 2010

                                           SKADDEN, ARPS, SLATE, MEAGHER
                                              & FLOM LLP

                                           By:   /s/ John Wm. Butler, Jr.
                                                  John Wm. Butler, Jr.
                                                  John K. Lyons
                                                  Ron E. Meisler
                                          155 North Wacker Drive
                                          Chicago, Illinois 60606

                                          - and -

                                          Four Times Square
                                          New York, New York 10036

                                          Attorneys for DPH Holdings Corp., et al.,
                                             Reorganized Debtors