Neil A. Goteiner (NG 1644)
Dean M. Gloster (Admitted *Pro Hac Vice*)
FARELLA BRAUN + MARTEL LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
Telephone:  (415) 954-4400
Facsimile:  (415) 954-4480

Hearing Date & Time: October 21, 2010 at 10:00 a.m. (prevailing Eastern Time)

Attorneys for OFFICIAL COMMITTEE OF
ELIGIBLE SALARIED RETIREES

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------x
                :
   In re:                                         :
                :
DPH HOLDINGS CORP., et al.,   :
                :
                :
                :
   Reorganized Debtors.   :
---------------------------------------------------x

Chapter 11

Case No. 05-44481 (RDD)

(Jointly Administered)

**SUPPLEMENTAL RESPONSE BY OFFICIAL COMMITTEE OF ELIGIBLE
SALARIED RETIREES TO LIMITED OBJECTION BY VEBA COMMITTEE**

      The Official Committee of Eligible Salaried Retirees ("Salaried Retiree 1114 Committee") files this supplemental response to objection in connection with its Final Report and Request for Instructions (docket number 20527; re-filed as docket number 20617, because the text did not appear in the original filing accessible through the docket).  The VEBA Committee (the "VEBA Board"), consisting of the trustees of the DSRA VEBA Trust (the "VEBA") formed under orders of this Court to provide benefits to Delphi retirees eligible for the Health Coverage Tax Credit, filed a limited opposition (docket number 20605) (the "Limited Opposition") arguing that the Salaried Retiree 1114 Committee should be disbanded.  The

Salaried Retiree 1114 Committee asked that before that disbanding, the VEBA should adopt amendments to the trust agreement to provide basic protections like future beneficiary election of trustees.

At the hearing on September 24, 2010, this Court requested that prior to disbanding the Salaried Retiree 1114 Committee, the VEBA Board adopt changes to the trust agreement to provide for meaningful beneficiary election of trustees, and that the parties try to reach agreement over those provisions.

After that hearing, misinterpreting the Court's remarks, the Salaried Retiree 1114 Committee purported to appoint additional and some replacement trustees for the VEBA Board. After unambiguous and stern clarification and direction from the Court on an October 5, 2010 conference call that the status quo was to be preserved until beneficiary voting under the amended trust agreement, the Salaried Retiree Committee, at the Court's request and direction, immediately rescinded those appointments, annulled them, and agreed they were a legal nullity. That same day, the purported reconstituted board disbanded retroactively.  Declaration of Dean Gloster in Support of Response to Limited Objection by VEBA Committee ("Gloster Decl.") at pp. 1-2, ¶ 2.  Undersigned counsel sent a letter (after review and comment by the VEBA Committee's counsel) to the VEBA's vendors clarifying unambiguously that the VEBA Committee had exclusive authority on behalf of the VEBA.  Gloster Decl. at p. 2, ¶ 3, and Exhibit A to Gloster Decl.

At the hearing on September 24, 2010, the Court continued the hearing to this date, directing that the trust agreement be amended in the meantime to provide for meaningful beneficiary voting to permit them to replace the board.  This Court provided guidance on the voting amendments to be adopted: "[M]ake sure that in the future, those who are the

beneficiaries of this trust, can replace the board if the board isn't acting properly by a majority vote." (Transcript of Hearing, p. 14, lines 4-7.)  In discussing specifics, the Court explained "it seems appropriate to me that you could have a staggered board, because you don't want to lose the expertise of people, necessarily, but it shouldn't be super-staggered.  The beneficiaries should have a say on their rights." (Transcript of Hearing, p. 15, lines 23-25 and p. 16, line 1.)

Unfortunately, only on October 18, 2010 did the VEBA Board circulate a draft amendment.  It instead provides for super-staggered terms where the board can only be removed over four years of consecutive elections, with no vote on any of the existing trustees until mid-2012, and it permits the existing board to amend even those provisions in the future to stretch out their terms even longer.  Gloster Decl. at p. 3, ¶ 5 and Exhibit C.

**Discussion**

1.      On October 8, 2010, the Salaried Retiree 1114 Committee provided suggestions to counsel for the VEBA Board on the voting provisions, that there should be an open nomination process, that those enrolled in the benefits administered by the VEBA be eligible to vote, that the terms and election provisions not be amendable later by the trustees (making them effectively irrelevant), that the board not retain unfettered discretion to remove those elected by the beneficiaries (which would make the elections simply an advisory vote), and that the board trustees be elected for staggered two year terms to provide for both continuity and a meaningful ability for beneficiaries to effect change if things were not run well.  Gloster Decl. at p. 2-3, ¶ 4 and Exhibit B.

2.      All these suggestions were initially ignored or rejected.  On the evening of October 18, 2010, for the first time and without prior discussion, counsel for the VEBA

Committee circulated draft amendments to the VEBA trust agreement and bylaws.  Gloster Decl. at pp. 3-4, ¶ 5 and Exhibit C.

3. In those draft amendments, the beneficiaries actually enrolled in the benefits (including spouses, survivors and hourly Delphi retirees) could not vote, but "Current Retirees" (those salaried retirees who retired before April 1, 2009) could, even if not enrolled.  The trustees could not eliminate voting entirely, but were free to change the terms of office or the staging of elections or any other specifics or details.  There was no limitation on setting or modifying eligibility or to require an open nomination process.  And the trustees still retained unfettered rights to remove any newly elected trustee.  Even more important, however, instead of providing for prompt meaningful elections, the bylaws (freely amendable to stretch the terms and change election dates) actually prevent any meaningful change by the beneficiaries in the near or medium term:  None of the existing trustees are up for election until mid-2012, some 20 months from now (although a vacancy is filled in June 2011.)  Three (a minority) are up for election in 2012 (unless they amend those provisions to delay elections further), but the remaining trustees are elected two in 2013 and two in 2014.  That means no beneficiary can vote on the existing trustees for twenty months, and it would take four years of consecutive elections to remove the current board—exactly the "super-staggered" terms the Court directed that the amendment <u>not</u> provide.  Id.

4. In emails at night on October 18 and early in the morning of October 19, 2010 undersigned counsel raised these problems and issues with counsel for the VEBA Board, and even provided suggested provisions taken from another similar draft trust agreement that would address or resolve them.  Gloster Decl. at p. 4, ¶ 6 and Exhibit D.

4

5.      In discussions on October 19, 2010, Counsel for the VEBA Board agreed some of those provisions could be changed, but not (A) the super-staggered election schedule; (B) the trustees' ability to amend even that schedule after 5 years; and (C) the right of the trustees to remove any newly-elected trustee, without specified cause.  Together, that prevents beneficiaries from having a meaningful say on the performance of the existing trustees for almost two years, and prevents them from having a meaningful say on the makeup of the board even longer.  The only trustee they can elect in mid-2011, to a vacant position, can immediately be removed by the existing board even without specified cause.  In the future, the trustees can simply extend their terms to half a decade or longer.

6.      The VEBA Committee's reluctance to permit meaningful elections is troubling, because unless the benefit programs are run very, very badly in a way that is apparent to the beneficiaries enrolled in them, existing board members who stood for election would likely be re-elected.  No one can guaranty good decision making.  Meaningful elections, however, where the beneficiaries enrolled in the critical programs being administered can elect a majority (or even almost half) of the board do provide a check on bad decision making and misbehavior. They also provide an incentive to make good decisions and focus the trustees on delivering benefits for the Delphi retirees they should serve.

7.      The Salaried Retiree 1114 Committee respectfully requests that the Court provide guidance that beneficiaries have a meaningful, rather than meaningless, vote on the makeup of the board in the amendment to the trust agreement to be adopted before disbanding of the Salaried Retiree 1114 Committee.  Specifically, the Salaried Retiree 1114 Committee requests that an amendment provide:

5

- Board terms should not be super-staggered over four years (as the Court directed that they not be) and instead half the board should be elected in 2011 and the other half in 2012, for two-year terms.

- Beneficiaries enrolled in the medical and prescription drug programs administered by the VEBA should be eligible to vote in the election, as they will know the most about how the programs are run and whether they are deteriorating or improving.

- There should be an open nomination process.

- If only a minority of the board is elected in 2011, the majority cannot remove the newly-elected trustees without cause, making the election meaningless.

- The trustees cannot amend those provisions, making the amendment itself meaningless.

8. If the Court provides that guidance to the VEBA Board and its counsel, language for the amendment could be agreed within a day or two, it could be put on the record by stipulation, and the Salaried Retiree 1114 Committee could (and should) be immediately disbanded.

**Conclusion**

9. The amendment requiring beneficiary voting on the board should provide meaningful protections for the retirees, their spouses and survivors who rely on these critical programs—not almost insurmountable protections for the positions of the existing trustees, who should instead stay motivated to deliver a quality tax-subsidized health and prescription drug program and to avoid misconduct short of ERISA litigation. The Salaried Retiree 1114 Committee respectfully requests that the Court provide guidance on the trust agreement amendment to facilitate that result.

Dated:  San Francisco, California
October 19, 2010

FARELLA BRAUN & MARTEL LLP

By:  */s/ Neil A. Goteiner*
Neil A. Goteiner
Dean M. Gloster

235 Montgomery Street, 17th Floor
San Francisco, California  94104
(415) 954-4400

Attorneys for OFFICIAL COMMITTEE OF ELIGIBLE SALARIED RETIREES

10629\2401629.1