# EXHIBIT D

**From:** Gloster, Dean (19) x4472
**Sent:** Monday, October 18, 2010 10:42 PM
**To:** 'Patricia L. Beaty'
**Cc:** 'Timothy T. Brock'
**Subject:** RE: DSRA VEBA Amendments

Patricia--

I'll try to reach you early in the morning, my time. (I have an out of the office meeting at 8:30 my time, so I'll call you before that.) I have forwarded this to the 1114 committee, but I wanted to give you my quick reaction:

A  It will be difficult to let "Current Retirees" vote online, as there will be difficulty verifying identity, etc., and this should not be a popularity contest among those who retired from Delphi prior to April 1, 2009. The beneficiaries who are eligible to vote should be the beneficiaries of the benefits in the program, that is, those who are enrolled in the health and prescription drug benefits, because they are the ones who are directly affected by decisions of the board in running that program and they're also the ones who will have direct experience about whether the program is meeting their needs or is turning into a disaster. (And if it is, board members will be motivated to fix it, if they want to stay on the board.) They are also easy to reach, because the third party administrator has their addresses, and the election of those in charge of the program is related to their benefit. They can be mailed ballots and can vote online with the last four digits of their social security number or something, which could be verified.

B. On the super-staggered terms:

1. This is exactly the provision Judge Drain said he did NOT want in the agreement: "Super-staggered" terms, where none of the current board are up for election until 2012 and there is no meaningful opportunity to change a majority of the board for many years.

2. In some ways, this is a step backward from your last proposal, because you now have board members serving unlimited numbers of consecutive terms. Since they retain the ability to remove any trustee they don't agree with, and since a majority is never elected in any election (only two a year) there will never be significant change, even if the trustees end up (for example) nearly destroying the program.

3. If removal of a trustee clearly breaching fiduciary duties to participants is necessary by the other trustees to address your co-fiduciary concerns, removal should be limited to those grounds.

4. On your issue of continuity, that is addressed by having roughly half the board stay and having staggered two year terms. If the board is doing an even somewhat adequate job running the program, those current members then up for re-election would be re-elected easily anyway, by the beneficiaries enrolled in the program in place. It is important, however, to have meaningful elections of roughly half the board, for critical process reasons:
A. The current board members are essentially self-selected, and they shouldn't cement themselves in place without accountability.
B. If (heaven forbid) the programs are being run terribly now or in the future, the trustees are wasting assets, etc., the beneficiaries should be able to cause a change of direction.
C. Even must more important, regular election of half the board by the beneficiaries enrolled in the program improves the likelihood of better decision making (or at least a better framework for making decisions) because board members who want to be re-elected will strongly consider the beneficiaries' experience of the programs that their decisions affect--and in the future will be less likely to make decisions that run a risk of creating major harm to the program, because they'll be accountable for that at the next election. Which means that regular elections leads to a better run program, even if all the trustees just keep getting re-elected.

I ask you to consider that feedback and to present a trust agreement amendment that provides a real

10/19/2010

election by those enrolled in the program, not the "super-staggered" terms for Trustees that Judge Drain specifically directed you not include.

Again, I'll call you in the morning.

Dean Gloster.

-----Original Message-----
**From:** Patricia L. Beaty [mailto:pbeaty@kdlegal.com]
**Sent:** Monday, October 18, 2010 5:26 PM
**To:** Gloster, Dean (19) x4472
**Subject:** DSRA VEBA Amendments

Dean:

I received your voice message responding to my message about the amendments to the Trust Agreement and Bylaws. Attached are the documents for your review. I strongly disagree that replacing 3 of the members in a little over a year from now, 2 the following year and 2 the next year is a super staggered term. You must keep in mind that this VEBA only began offering coverage as of September of 2009. The first replacements will be in June of 2012 which is not even a full three-year term. In an effort more for future voting and elections, the replacement schedule set forth in the amendment to the Bylaws provides for all 5 of the current members to be potentially replaced by June of 2013 with the other two (Joe McHugh who is the treasurer and has only served since May 15, 2010 and the new person to be elected in June 2011) being replaced in June 2014 which would be approximately a three year term. This VEBA is too complex in my opinion to replace a majority of the board members with experience before June of 2012.

This amendment to the Bylaws is for the long-term operation of the VEBA and we must review it with that goal in mind. While I know there are hard feelings between many of the current VEBA board members and the 1114 Committee, that can not be the reason to implement a poor election process for an ERISA plan.

Let's plan on chatting tomorrow morning when you get into the office.

Best regards,
Patricia



| **Patricia L. Beaty** | One Indiana Square |
| Associate | Suite 2800 |
| | Indianapolis IN 46204 |
| D 317-238-6278 | T 317-636-4341 |
| C 317-402-8287 | F 317-636-1507 |
| pbeaty@kdlegal.com | www.kriegdevault.com |
| Indiana \| Illinois \| Georgia \| Florida | |

vCard | Bio

 Please consider the environment before printing this email.

CONFIDENTIALITY STATEMENT
This e-mail message is for the sole use of the recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited.

10/19/2010

If you are not the intended recipient(s), please contact the sender by reply e-mail and destroy all copies of the original message. IRS Circular 230 Notice: Advice rendered in this communication, including attachments, on U.S. tax issues (i) is not intended or written to be used, and it cannot be used, for the purpose of avoiding penalties that may be imposed by the IRS on taxpayers, and (ii) may not be used or referred to in promoting, marketing or recommending a partnership or other entity, investment plan or arrangement. This notice is intended to comply with Section 10.35 of IRS Circular 230, which is located at http://www.irs.gov/pub/irs-pdf/pcir230.pdf.

**From:** Gloster, Dean (19) x4472
**Sent:** Tuesday, October 19, 2010 3:53 AM
**To:** Gloster, Dean (19) x4472; 'Patricia L. Beaty'
**Cc:** 'Timothy T. Brock'
**Subject:** RE: DSRA VEBA Amendments

Patricia--

Here are some other problems with your proposed amendments:

1. The trust agreement should state that anyone is eligible to serve and provide for an open nomination process (e.g., that by a certain date an interested nominee simply applies to run in writing) so that an open election is not prevented (as now) by the existing VEBA board passing restrictions on who can serve in the open seat and the other seats up for election.

2. Instead of simply prohibiting the trustees from adopting an amendment to the trust agreement that eliminates "Current Retiree voting" (but permits, for example, changing the trustees' terms of office to a decade long and postpones those elections until then) the provisions on voting procedures, eligibility to run, and trustee terms should be amendable only by vote of the beneficiaries.

3. As Judge Drain requested, notice of all amendments to the trust agreement should go to the beneficiaries (which, as I explained below, should include everyone enrolled in the benefit program) and that provision should also not be subject to amendment without a vote by the beneficiaries.

I recently drafted a trust agreement for a different organization which incorporated all of these provisions (because it was finalized after Judge Drain's remarks at the September 24 hearing, and including all those features seemed both fair and a good idea to prevent future abuse) and can send you the operative provisions.

> -----Original Message-----
> **From:** Gloster, Dean (19) x4472
> **Sent:** Monday, October 18, 2010 10:42 PM
> **To:** 'Patricia L. Beaty'
> **Cc:** 'Timothy T. Brock'
> **Subject:** RE: DSRA VEBA Amendments
>
> Patricia--
>
> I'll try to reach you early in the morning, my time. (I have an out of the office meeting at 8:30 my time, so I'll call you before that.) I have forwarded this to the 1114 committee, but I wanted to give you my quick reaction:
>
> A It will be difficult to let "Current Retirees" vote online, as there will be difficulty verifying identity, etc., and this should not be a popularity contest among those who retired from Delphi prior to April 1, 2009. The beneficiaries who are eligible to vote should be the beneficiaries of the benefits in the program, that is, those who are enrolled in the health and prescription drug benefits, because they are the ones who are directly affected by decisions of the board in running that program and they're also the ones who will have direct experience about whether the program is meeting their needs or is turning into a disaster. (And if it is, board members will be motivated to fix it, if they want to stay on the board.) They are also easy to reach, because the third party administrator has their addresses, and the election of those in charge of the program is related to their benefit. They can be mailed ballots and can vote online with the last four digits of their social security number or something, which could be verified.
>
>     B. On the super-staggered terms:

1. This is exactly the provision Judge Drain said he did NOT want in the agreement: "Super-staggered" terms, where none of the current board are up for election until 2012 and there is no meaningful opportunity to change a majority of the board for many years.

2. In some ways, this is a step backward from your last proposal, because you now have board members serving unlimited numbers of consecutive terms. Since they retain the ability to remove any trustee they don't agree with, and since a majority is never elected in any election (only two a year) there will never be significant change, even if the trustees end up (for example) nearly destroying the program.

3. If removal of a trustee clearly breaching fiduciary duties to participants is necessary by the other trustees to address your co-fiduciary concerns, removal should be limited to those grounds.

4. On your issue of continuity, that is addressed by having roughly half the board stay and having staggered two year terms. If the board is doing an even somewhat adequate job running the program, those current members then up for re-election would be re-elected easily anyway, by the beneficiaries enrolled in the program in place. It is important, however, to have meaningful elections of roughly half the board, for critical process reasons:
A. The current board members are essentially self-selected, and they shouldn't cement themselves in place without accountability.
B. If (heaven forbid) the programs are being run terribly now or in the future, the trustees are wasting assets, etc., the beneficiaries should be able to cause a change of direction.
C. Even must more important, regular election of half the board by the beneficiaries enrolled in the program improves the likelihood of better decision making (or at least a better framework for making decisions) because board members who want to be re-elected will strongly consider the beneficiaries' experience of the programs that their decisions affect--and in the future will be less likely to make decisions that run a risk of creating major harm to the program, because they'll be accountable for that at the next election. Which means that regular elections leads to a better run program, even if all the trustees just keep getting re-elected.

I ask you to consider that feedback and to present a trust agreement amendment that provides a real election by those enrolled in the program, not the "super-staggered" terms for Trustees that Judge Drain specifically directed you not include.

Again, I'll call you in the morning.

Dean Gloster.
-----Original Message-----
**From:** Patricia L. Beaty [mailto:pbeaty@kdlegal.com]
**Sent:** Monday, October 18, 2010 5:26 PM
**To:** Gloster, Dean (19) x4472
**Subject:** DSRA VEBA Amendments

Dean:

I received your voice message responding to my message about the amendments to the Trust Agreement and Bylaws. Attached are the documents for your review. I strongly disagree that replacing 3 of the members in a little over a year from now, 2 the following year and 2 the next year is a super staggered term. You must keep in mind that this VEBA only began offering coverage as of September of 2009. The first replacements will be in June of 2012 which is not even a full three-year term. In an effort more for future voting and elections, the replacement schedule set forth in the amendment to the Bylaws provides for all 5 of the current members to be potentially replaced by June of 2013 with the other two (Joe McHugh who is the treasurer and has only served since May 15, 2010 and the new person to be elected in June 2011) being replaced in June 2014 which would be approximately a three year term. This VEBA is too complex in my opinion to replace a majority of the board members with experience before June of 2012.

This amendment to the Bylaws is for the long-term operation of the VEBA and we must review it with

that goal in mind. While I know there are hard feelings between many of the current VEBA board members and the 1114 Committee, that can not be the reason to implement a poor election process for an ERISA plan.

Let's plan on chatting tomorrow morning when you get into the office.

Best regards,
Patricia



| **Patricia L. Beaty** | One Indiana Square |
| Associate | Suite 2800 |
|  | Indianapolis IN 46204 |
| D 317-238-6278 | T 317-636-4341 |
| C 317-402-8287 | F 317-636-1507 |
| pbeaty@kdlegal.com | www.kriegdevault.com |
| Indiana \| Illinois \| Georgia \| Florida | |

vCard | Bio

 Please consider the environment before printing this email.

### CONFIDENTIALITY STATEMENT

This e-mail message is for the sole use of the recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient(s), please contact the sender by reply e-mail and destroy all copies of the original message. IRS Circular 230 Notice: Advice rendered in this communication, including attachments, on U.S. tax issues (i) is not intended or written to be used, and it cannot be used, for the purpose of avoiding penalties that may be imposed by the IRS on taxpayers, and (ii) may not be used or referred to in promoting, marketing or recommending a partnership or other entity, investment plan or arrangement. This notice is intended to comply with Section 10.35 of IRS Circular 230, which is located at http://www.irs.gov/pub/irs-pdf/pcir230.pdf.

10/19/2010

| | |
|---|---|
| **From:** | Gloster, Dean (19) x4472 |
| **Sent:** | Tuesday, October 19, 2010 4:13 AM |
| **To:** | 'Patricia L. Beaty' |
| **Cc:** | 'Timothy T. Brock' |
| **Subject:** | Relevant trust agreement provisions |

2400432_1.DOC
(29 KB)

As I mentioned Patricia, here are the relevant trust agreement provisions from a different retiree VEBA we set up in a different case just this month, which call for elections just over a year after the first appointment of the board (not 3 years after, as you provide) and provide for election of half the board in alternating years. They weren't drafted because of a dispute between two committees but to provide for fair future elections, given that the board was initially appointed by the board of a retiree organization which was itself going out of existence in the future.

1

"**Beneficiaries**" shall mean Eligible Beneficiaries who elect to participate in one of the Plans.

"**Majority of the Voting Beneficiaries**" shall mean the vote of greater than 50% of the Beneficiaries that have voted (in accordance with the procedures set forth for such vote) on a matter provided for the vote of the Beneficiaries.

"**Cause**" shall mean the occurrence of any of the following: (i) a Director's breach of his or her fiduciary duties, (ii) a commission of any self dealing by the Director, (iii) a commission of fraud by the Director or (iv) a Director's conviction by, or entry of a plea of guilty or *nolo contendere* in, a court of competent jurisdiction for any crime which constitutes a felony in the jurisdiction involved.

The Trustee, acting by a majority vote of the Board, may only amend the provisions of Section 10.2 (notice of Agreement amendments) 12.4 (terms of office) and 12.5 (nominations and elections) of this Agreement with the approval of a Majority of the Voting Beneficiaries. Any amendment or modification shall be by written instrument executed by the applicable parties under this Section.

(10.2) A copy of any amendment to this Agreement (and any change to compensation of Board members) shall be sent to Beneficiaries at the address provided by each Beneficiary to the Administrator (and may be included in the annual enrollment package).

(12.4) *Term of Office*. The first election/appointment of Class A Directors after the initial appointment of such Directors under this Agreement shall occur in January 2012 and such Class A Directors shall serve two-year terms. The first election/appointment of Class B Directors after the initial appointment of such Directors under this Agreement shall occur in January 2013 and such Class B Directors shall serve two-year terms so that Class A Directors and Class B Directors are elected in alternate calendar years.

(12.5) *Nomination and Election Process*. For terms beginning after the end of the Initial Period, Individuals interested in serving on the Board shall submit their name and a 1-page summary of their qualifications to serve on the Board (the "**Candidate Statement**") to an entity or address designated by the Board by a deadline announced by the Board at least 45 days before the proposed election date, and unless in the reasonable determination of the Board such materials are defamatory or otherwise actionable, the Candidate Statements shall be provided to Beneficiaries. If practical, the Board will try to minimize mailing costs by providing them together with the annual enrollment packages to be mailed to Beneficiaries. The Candidate Statement submitted by nominees must include a statement that such candidate does not have a conflict of interest that would prevent him or her from serving as a Director, and must identify whether he or she is a [company] retiree. The proposed Directors submitting a Candidate Statement receiving the most Beneficiary votes in any Board election shall be appointed to the Board until each vacant spot on the Board up for election has been filled.

10629\2400432.1