Timothy T. Brock, Esq.
Abigail Snow, Esq.
SATTERLEE STEPHENS BURKE & BURKE LLP
230 Park Avenue, Suite 1130
New York, New York 10169
(212) 818-9200

Patricia L. Beaty, Esq. (admitted *pro hac vice*)
KRIEG DEVAULT LLP
One Indiana Square, Suite 2800
Indianapolis, IN 46204
(317) 636-4341

*Co-Counsel for Delphi Salaried Retirees*
*Association Benefit Trust VEBA Committee*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) )  Chapter 11 ) |
| DPH HOLDINGS CORP., *et al*., | )  Case No. 05-44481 (RDD) ) |
| Reorganized Debtors. | )  Jointly Administered ) ) |

**SUPPLEMENTAL DECLARATION OF PATRICIA L. BEATY, ESQ., IN FURTHER**
**SUPPORT OF THE LIMITED OBJECTION OF THE VEBA COMMITTEE FOR**
**THE DELPHI SALARIED RETIREES ASSOCIATION BENEFIT TRUST**
**TO THE FINAL REPORT OF THE OFFICIAL COMMITTEE OF**
**RETIRED SALARIED EMPLOYEES PURSUANT TO 11 U.S.C. § 1114(d) AND IN**
**RESPONSE TO THE SUPPLEMENTAL RESPONSE TO THE LIMITED OBJECTION**

I, PATRICIA L. BEATY, hereby declare:

1.      I am an attorney at law admitted to practice before the state bar of Indiana

and the U.S. District Courts for the Northern and Southern Districts of Indiana.

2.      I am associated with the firm of Krieg DeVault, LLP which maintains

offices for the practice of law, inter alia, at One Indiana Square, Ste. 2800, Indianapolis, Indiana.

3.      I have been admitted to practice before this Court in this particular matter *pro hac vice*. (Docket No. 20632.)

4.      I am an ERISA attorney.

5.      I have represented Objector, the VEBA Committee (the "<u>VEBA Committee</u>") for the Delphi Salaried Retirees Association Benefit Trust (the "<u>DSRA VEBA</u>"), since January 28, 2010.  I have personal knowledge of the facts set forth in this declaration (the "<u>Declaration</u>") and, if called as a witness, I would testify thereto.

6.      I am submitting this Declaration in response to the Supplemental Response ("<u>Supp. Resp.</u>") of the Official Committee of Eligible Salaried Retirees appointed pursuant to 11 U.S.C. § 1114 (the "<u>1114 Committee</u>").  (Docket No. 20632.)

7.      As ERISA counsel for the VEBA Committee, I am hereby setting forth the myriad cogent reasons supporting the VEBA Committee's proposed amendments to its governing documents, including the proposed schedule of elections ("<u>election schedule</u>") set forth in the VEBA Committee's proposed amendments to the VEBA Committee's By-Laws ("<u>By-Laws</u>").  (<u>See</u> Gloster Decl. in Supp. of Supp. Resp., Exh. C.)   I thereby respectfully ask that the Court overrule the Supplemental Response in its entirety and order that the VEBA Committee's proposed amendments to its governing documents are approved and that the office of the U.S. Trustee is to take action to dissolve the 1114 Committee.

8.      I take particular exception with the 1114 Committee's characterization of the election schedule as "super-staggered" (Supp. Resp. Preliminary Statement at ¶¶ 3, 5) or the amendments overall as otherwise contravening in any way the direction provided by this Court during the September 24, 2010 hearing ("<u>Hearing</u>"), as clarified during the subsequent October 5, 2010 telephonic status hearing ("<u>Status Hearing</u>").

9.      I circulated the VEBA Committee's proposed amendments to these governing documents, i.e., the VEBA Committee Trust Agreement ("Trust Agreement") and By-Laws, in good faith to Mr. Gloster on October 18, 2010.  I was, unfortunately, unable to provide Mr. Gloster with a comprehensive set of proposed amendments earlier than that date, in no small part, because the VEBA Committee has been occupied with:  1) renewal of benefits programs and the enrollment process for the upcoming 2011 year; 2) ongoing due diligence pertaining to, and related negotiations with, insurance broker Cone Insurance Group ("Cone"); and, above all, 3) the turmoil created by the 1114 Committee's attempted reconstitution of the VEBA Committee in the week after the Hearing and its aftermath.[1]

10.      Procedurally, I have doubts about the filing of the Supplemental Response:  I believed that the VEBA Committee's proposed amendments to the governing documents had addressed the concerns of all parties and of the Court and that, with the presumed support of the 1114 Committee, the VEBA and 1114 Committees would have, as the Court directed at the Hearing, informed the Office of the U.S. Trustee that the parties had come to an agreement without the necessity of filing the agreed-upon amendments themselves.  (Hrg. Tr. at 19-4 to 19-10.)   Instead, the Court is presented with the VEBA Committee's proposed amendments, in the first instance, pursuant to the 1114 Committee's objection thereto.

11.      The undersigned respectfully submits that the proposed amendments to the VEBA Committee Trust Agreement ("Trust Agreement") and By-Laws, including the proposed

---

[1] Indeed, given the negotiations with Cone and the need to review proposals from third-party vendor insurers for health, dental, vision and life insurance coverage for the DRSA VEBA beneficiaries for the quickly-approaching 2011 calendar year, the attempted coup by the 1114 Committee could not have come at a worse time. Even after the Status Hearing, the VEBA Committee had to spend time and energy reassuring third-party vendors that the actions taken by the so-called "Reconstituted Committee" were not sanctioned by the Court and that the existing VEBA Committee was the proper party to be issuing instructions to vendors.  The VEBA Committee has made the amendment of the governing documents a priority but could not do so at the expense of jeopardizing the roll-out of benefits for DRSA VEBA beneficiaries for the 2011 year.

election schedule, provide for the continuity of experience that the VEBA Committee requires in order for it to best fulfill its fiduciary duties under ERISA and the Trust Agreement to the DRSA VEBA beneficiaries.  These reasons are set forth in detail infra.

12.    By contrast, the proposed alternative schedule proposed by the 1114 Committee (Supp. Resp. ¶ 5), for those same reasons, could very well potentially deprive the VEBA Committee of the hard-won experience that its trustees have acquired in the past year at a time when the VEBA Committee will need it the most, experience that the Court understood to be necessary.  (Hrg. Tr. at 15-23 to 16-1 (stating it "seems appropriate to me that you could have a staggered board, because you don't want to lose the expertise of people, necessarily, but it shouldn't be super-staggered. The beneficiaries should have a say on their rights.").[2]

13.    Under the circumstances of this case and VEBA, the amendments are appropriate in general and, in particular, where they set forth the coming election schedule, are prudent while at the same time implementing the Court's directive that the VEBA Committee be ultimately answerable to the beneficiaries of the DRSA VEBA.  In particular and in summary, the amendments, including the election schedule (trustee terms, timing of elections, and composition or contested positions within each annual election), were arrived at after a lengthy process of due diligence by the VEBA Committee and its ERISA counsel.

14.    First, the proposed three-year term for each trustee is appropriate, given the normal three-year term usually served by members on boards for most non-profit

---

[2] I have, on behalf of the VEBA Committee, attempted to address the various points raised by the 1114 Committee in its Supplemental Response.  (See Supp. Resp. ¶ 7.)  I was, however, under the impression from my last teleconference with counsel for the 1114 Committee, Mr. Gloster, that only the election schedule remained as a sticking point between the VEBA Committee and the 1114 Committee, something that his Declaration appears to bear out. See Gloster Decl. ¶ 7 ("On October 19, 2010 I initiated two lengthy discussions with Ms. Beaty, counsel for the VEBA Board. After reluctance on some provisions, we reached general agreement on several changes, but not to any even modest change to the proposed four-year staging of trustee elections or to limit the remaining board members' power to remove any newly elected trustee.")

organizations and the complexity of the VEBA itself.  This VEBA takes advantage of the Health

Coverage Tax Credit ("HCTC") which is a federal program that subsidizes 80% of an eligible

participant's health insurance premiums but which also requires that certain procedures and

processes be followed in order to ensure beneficiary participation and payment / subsidization of

premium payments.  This VEBA also provides medical coverage to beneficiaries who are

eligible for Medicare.

15.    In short, the existing trustees have discovered the hard way that this

VEBA Committee requires that its trustees have familiarity with multiple sets of complex

bureaucratic rules in order to ensure the acquisition of the best plans for the beneficiaries.  It

takes a new VEBA Committee member one full year to go through the request for proposal

("RFP") process, selection of insurers and various benefit plans for the next calendar year along

with involvement in the actual enrollment process.  To have terms that are shorter than three

years would only ensure that as soon as a new VEBA Committee became familiar with the

programs and running of the VEBA, he or she would be up for election.[3]

16.    Second, the election schedule is, moreover, appropriate in terms of timing

and composition of future elections.  As to timing, the VEBA Committee is currently in the

process of open enrollment for 2011 benefits and will be engaging in open enrollment for the life

insurance programs during April 2011.  Given the amount of work the VEBA Committee must

accomplish between now and April 2011, the tumult of conducting an election alone entails that

it would be preferable to conduct the election no earlier than May 2011.

17.    As to composition, the VEBA Committee chose to fill the existing open

seat through the first election to be held in Spring 2011 (with the new trustee to begin serving on

---

[3] While the VEBA Committee is well aware that an election does not mean that a sitting trustee would
necessarily fail to be re-elected, the prudent course is to set forth an election schedule which takes the possibility for
such turnover into account.

June 1, 2011) given both the novelty of the election process and because no sitting trustee has yet served for three years.  Given the complexity of this VEBA, it would be unwise to eliminate foundation trustees only 26 months after the VEBA's formation and only 20 months after the VEBA rolled out its first benefit programs.[4]

18.    Third, the election schedule is not "super-staggered."  It opens up the very possibility that the VEBA Committee could indeed lose its core of three foundation trustees in 2012.  Although the potential loss of such trustees would be unfortunate, this possibility would be fair:  these trustees will have served for three years each and, under the terms of the proposed amendments, should be subject to an election at the end of their respective three-year terms.  These are "meaningful" elections and the VEBA Committee's existing trustees—while attending first and foremost to their fiduciary duties under ERISA, elections or no—each bear that fact very much in mind.[5]

19.    Finally, looking beyond the election schedule, the VEBA Committee's existing trustees must retain the ability, by a majority vote, to remove a trustee.  ERISA imposes co-fiduciary liability on each VEBA Committee trustee.  If one trustee is not fulfilling his or her fiduciary duties, the other trustees need to be able to remove that individual.   In any event, removal requires a majority vote of the VEBA Committee and any trustee – not just new trustees – will be subject to such removal.

---

[4] Moreover, the VEBA Committee needs to gain experience with elections by setting up the practical side of the election process with its third party vendor.

[5] There is nothing in the proposed amendments requiring anything other than an "open nomination process."  See Supp. Resp. ¶ 7.  Moreover, the VEBA Committee is fine with allowing enrollees (other than Current Retirees) to participate in elections.  The VEBA Committee only originally selected Current Retirees because the census information for those folks had been provided by Delphi so they could be more easily located and contacted as not all are actually enrolled in the program.  In addition, the allegations made by the 1114 Committee and its counsel to-date have always boiled down to the DRSA VEBA's assets somehow being wasted; thus, because only Current Retirees are entitled to any subsidies under the VEBA trust, that was the class chosen to elect the VEBA Committee members.  This VEBA allows individuals other than the Current Retiree group to participate in the actual underlying benefit plans but only the Current Retiree group is eligible to receive any of the assets of the VEBA through subsidies.

20.     Moreover, the VEBA Committee's prerogative to remove trustees has not been changed and, as given, was in the original governing documents as these were drafted and executed by the 1114 Committee.  It is thus unfair for the 1114 Committee to complain about the VEBA Committee retaining a necessary power that the 1114 Committee itself vested in it.

21.     If anything, it is especially inequitable that the very party objecting to the VEBA Committee's present amendments is the 1114 Committee, which has been the same group impending the VEBA Committee from extricating the DRSA VEBA from its onerous connection to Cone Insurance Group, see Limited Obj. at ¶ 22, a connection that has resulted in the latter's receipt of approximately $1.8 million a year in commissions.  Regardless of who is paying for these commissions, the VEBA Committee has misgivings about this arrangement and is working to change this state of affairs.

22.     Generally, I thus reiterate the final point of my Affidavit filed in support of the Limited Objection (Beaty Aff. ¶ 20):  the VEBA Committee has the sole responsibility and authority to establish the policies and procedures under which it will operate.  The 1114 Committee does not have the responsibility or authority to dictate how the VEBA Committee will operate:  its continued efforts to do so in the guise of implementing the Court's directions as to the election of VEBA Committee trustees should thereby be overruled.

23.     In particular, the VEBA Committee cannot tie its hands forever by making every aspect of the amended governing documents, including the election procedures, set in stone.  As noted, the VEBA Committee must be allowed to police itself and remove trustees, whether new or not, through majority voting (and that majority will remain accountable to the beneficiaries through elections, the latter comprising a "non-amendable" amendment).  More broadly, the VEBA Committee is an entity with an expected lifespan of 15 years, perhaps more,

and, as such, the VEBA Committee needs the flexibility to adjust its governing documents, including the election procedures, in light of changing conditions, regulatory and otherwise. Should every critical amendment be rendered non-amendable, the VEBA Committee – unlike every other board of all those non-profit entities with which I am familiar – will be unable to amend its governing documents (despite the passing of the 1114 Committee and these bankruptcy cases) without a court order. Thus, the 1114 Committee would inflict upon the VEBA Committee the expense of seeking expensive court (i.e., U.S. District Court, pursuant to ERISA) intervention over the most minor of governance details, to the detriment of the DRSA VEBA trust funds and, ultimately, the beneficiaries. The 1114 Committee would only thereby guarantee the waste of trust fund resources that it has always ostensibly decried.

24.    On behalf of the VEBA Committee, I thus respectfully ask the Court to overrule the Supplemental Response in its entirety and, given the 1114 Committee's own submission of this matter directly to the Court, enter an order approving the VEBA Committee's proposed amendments to its governing documents and that the Office of the U.S. Trustee is to take appropriate action to dissolve the 1114 Committee.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated:  October 20, 2010

 /s/ Patricia L. Beaty
PATRICIA L. BEATY