Hearing Date and Time:  November 18, 2010 at 10:00 a.m. (prevailing Eastern time)

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
155 North Wacker Drive
Chicago, Illinois 60606
John Wm. Butler, Jr.
John K. Lyons
Albert L. Hogan, III
Ron E. Meisler

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036

DPH Holdings Corp. Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Attorneys for DPH Holdings Corp., et al.,
  Reorganized Debtors

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                  :
         In re                                    :     Chapter 11
                                                  :
DPH HOLDINGS CORP., et al.,                       :     Case No. 05-44481 (RDD)
                                                  :
                Reorganized Debtors.              :     (Jointly Administered)
                                                  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
```

REORGANIZED DEBTORS' OBJECTION TO MOTION OF JOHNSON CONTROLS
INC. POWER SOLUTIONS AND JOHNSON CONTROLS BATTERY GROUP, INC.
FOR AN ORDER COMPELLING DPH HOLDINGS TO COMPLY WITH THE
TRANSFER AGREEMENT RELATING TO TRANSFER OF DELPHI'S NEW
BRUNSWICK BATTERY FACILITY TO JOHNSON CONTROLS, INC., FOR
ADEQUATE ASSURANCE OF FINANCIAL ABILITY TO PERFORM UNDER
TRANSFER AGREEMENT, AND IN THE ALTERNATIVE, FOR LEAVE TO TAKE
2004 EXAMINATION OF DPH HOLDINGS CORP AND FOR OTHER RELIEF

("REORGANIZED DEBTORS' OBJECTION TO JOHNSON CONTROLS' MOTION")

DPH Holdings Corp. ("DPH Holdings") and certain of its affiliated reorganized debtors in the above-captioned cases (collectively, the "Reorganized Debtors"), successors to Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, former debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this objection to the Motion Of Johnson Controls Inc. Power Solutions And Johnson Controls Battery Group, Inc. For An Order Compelling DPH Holdings To Comply With The Transfer Agreement Relating To Transfer Of Delphi's New Brunswick Battery Facility To Johnson Controls, Inc., For Adequate Assurance Of Financial Ability To Perform Under Transfer Agreement, And In The Alternative, For Leave To Take 2004 Examination Of DPH Holdings Corp And For Other Relief, dated October 6, 2010 (Docket No. 20656) (the "Motion").

Preliminary Statement

1.   In the Motion, Johnson Controls, Inc. and Johnson Controls Battery Group, Inc. (collectively, "Johnson Controls") make various requests for relief based on DPH-DAS LLC's alleged breaches of environmental and indemnification provisions of a transfer agreement pursuant to which DPH-DAS LLC's predecessor sold a battery facility to Johnson Controls, Inc. The same allegations are at the heart of Johnson Controls' administrative claims, which seek in excess of $10 million in indemnification payments arising from the same alleged breaches of the same provisions of the same transfer agreement. The administrative claims are the subject of pending contested matters governed by the claim procedures that have been in place since December 2006 and have been used to resolve thousands of claims in these chapter 11 cases. The Motion is nothing more than an improper attempt to circumvent the claim procedures, and the Motion should be denied on that ground.

2.   Furthermore, in its effort to litigate its administrative claims outside of the claim procedures, Johnson Controls has put forward three requests for relief that do not make

2

sense in this context.  First, Johnson Controls seeks an order compelling DPH-DAS LLC to perform its alleged obligations under the transfer agreement, but under New York law[1] the remedy of specific performance is not available when there is an adequate legal remedy, such as the indemnification payments to which Johnson Controls claims it is entitled.  Second, Johnson Controls' demand for adequate assurance of future performance also fails under New York law because the right to make such a demand is confined to contracts for the sale of goods covered by the New York Uniform Commercial Code and other limited circumstances that are not present here.  Third, Johnson Controls requests the authority to conduct an examination relating to its administrative claims under Fed. R. Bankr. P. 2004 despite the existence of the pending contested matters concerning those claims.  This request violates the "well recognized rule that once an adversary proceeding or contested matter is commenced, discovery should be pursued only under the Federal Rules of Civil Procedure and not by Rule 2004."  In re Enron Corp., 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002).  In sum, there is no basis for granting any of the relief requested in the Motion, and the Motion should be denied on those grounds as well.

## Background

A.  The Chapter 11 Filings

3.  On October 8 and 14, 2005, the Debtors filed voluntary petitions for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 1101-1174 (the "Bankruptcy Code").

B.  The Claims Objection Procedures Order And The Order Authorizing Use Of Administrative Claim Objection Procedures

4.  On December 7, 2006, this Court entered the Claim Objection Procedures Order.  (Docket No. 6089.)  The Claim Objection Procedures Order establishes comprehensive

---

[1]    The transfer agreement is governed by New York law.  (Docket No. 20656 Ex. A Ex. A § 6.1.)

3

procedures for resolving the thousands of claims filed against the former Debtors in these chapter 11 cases. It includes provisions addressing, among other things, the filings required by the Reorganized Debtors and claimants, the nature and timing of discovery, alternative dispute resolution mechanisms, and sufficiency and claims objection hearings before this Court.

        5.      On October 22, 2009, this Court entered the Order Authorizing Use Of Administrative Claim Objection Procedures, which provides that "[t]he Reorganized Debtors are authorized and directed to apply the claims objection procedures set forth in the Claims Objection Procedures Order to any dispute with respect to Administrative Claims," and that "[a]ll Administrative Claims shall be subject to the Claims Objection Procedures." (Docket No. 18998 ¶¶ 2-3.)

        C.      <u>The Administrative Claims</u>

        6.      On or about July 13, 2009, Johnson Controls, Inc. filed administrative expense claim number 18719, which asserts an administrative claim against Delphi Automotive Systems LLC ("DAS LLC") in the amount of approximately $10.1 million plus an unliquidated amount. On the same date, Johnson Controls Battery Group, Inc. filed administrative expense claim number 18720, a substantially identical administrative claim against DAS LLC in the amount of approximately $13.1 million plus an unliquidated amount. Copies of these administrative claims (the "Administrative Claims") are attached to this objection as <u>Exhibit A</u> and <u>Exhibit B</u>.

        7.      The Administrative Claims arise from DAS LLC's sale of certain property in New Brunswick, New Jersey to Johnson Controls, Inc. in 2006 pursuant to a Transfer Agreement Relating To Transfer Of Delphi's New Brunswick Battery Facility To JCI between Johnson Controls, Inc. and DAS LLC, dated May 26, 2006 (the "Transfer Agreement"). (Ex A at 1; Ex. B at 1.) Johnson Controls, Inc. later transferred the property to Johnson Controls

Battery Group, Inc. (Ex. A at 1; Ex. B at 1.) DPH-DAS LLC is the successor to DAS LLC with respect to the Transfer Agreement.

8. In the Administrative Claims, Johnson Controls asserts that it is entitled to indemnification under the Transfer Agreement based on (i) DPH-DAS LLC's alleged failure to comply with the New Jersey Industrial Site Recovery Act ("ISRA") in connection with the remediation of the property and (ii) an indemnification provision in the Transfer Agreement addressing certain environmental damages related to pre-closing environmental contamination, pre-closing compliance matters, and pre-closing off-site liability.[2] (Ex. A ¶¶ 5, 6-14; Ex. B ¶¶ 5, 6-14.)

9. Each of the Administrative Claims is an "Administrative Claim" within the meaning of the Order Authorizing Use Of Administrative Claim Objection Procedures. (See Docket No. 18998 at 1 n.1; Docket No. 18707 Ex. A art. 1.4.) The Administrative Claims are therefore subject to the Claims Objection Procedures Order.

D.  <u>The Reorganized Debtors' Objection To The Administrative Claims</u>

10. In accordance with the Claim Objection Procedures Order, the Reorganized Debtors objected to the Administrative Claims on books and records grounds on March 19, 2010 as part of the Forty-Sixth Omnibus Claims Objection. (Docket No. 19711 ¶¶ 12, 15-18 & Ex. A at 18.)

E.  <u>Johnson Controls' Response</u>

11. On April 15, 2010, Johnson Controls filed its response to the Forty-Sixth Omnibus Claims Objection, as contemplated by the Claim Objection Procedures Order. (Docket

---

[2] The Administrative Claims also assert causes of action under the federal Comprehensive Environmental Response, Compensation, and Liability Act of 1980 and the New Jersey Spill Compensation and Control Act. (Ex. A ¶¶ 5, 15-23; Ex. B ¶¶ 5, 15-23.)

5

No. 19843.) As provided in the Claim Objection Procedures Order, Johnson Controls' response gave rise to a contested claim and created a separate contested matter under Fed. R. Bankr. P. 9014 as to each of the Administrative Claims. (Docket No. 6089 ¶ 5.) It also triggered the provision of the Claim Objection Procedures Order adjourning claims hearings with respect to contested claims, which states:

> All Contested Claims for which a timely Response is filed <u>shall be automatically adjourned to a future hearing, the date of which shall be determined by the Debtors, in their sole discretion</u>, by serving the Claimant with notice as provided herein. The Debtors may send such notice to each Claimant <u>when they deem it appropriate to do so</u>, subject to the requirements of the Bankruptcy Code, the Bankruptcy Rules, and any further order of this Court.

(Docket No. 6089 ¶ 9(a)(i) (emphasis added).)

12.    As of this writing, the Reorganized Debtors have not made a determination as to a hearing date for the Administrative Claims or served Johnson Controls with a hearing notice with respect to the Administrative Claims. Johnson Controls does not and cannot contend that the Reorganized Debtors' actions in this regard conflict with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Claim Objection Procedures Order, or any other order entered by this Court in these chapter 11 cases.

F.    <u>Johnson Controls' Motion</u>

13.    In the Motion, Johnson Controls seeks an order (i) compelling DPH Holdings to comply with the Transfer Agreement, (ii) requiring DPH Holdings to provide adequate assurance of future performance under the Transfer Agreement, or (iii) authorizing Johnson Controls to conduct an examination of DPH Holdings pursuant to Fed. R. Bankr. P. 2004 "in order to determine whether sufficient funds have been set aside to cover the [Administrative Claims]." (Docket No. 20656 at 1-2 & ¶ 45.) Like the Administrative Claims, the Motion is premised on the notion that DAS LLC has violated ISRA in connection with the

6

remediation of the property, and that Johnson Controls is entitled to indemnification under the Transfer Agreement for cleanup costs and other costs and expenses related to the remediation. (<u>Compare</u> Docket No. 20656 at 2-4 & ¶¶ 1-18, <u>with</u> Ex. A ¶¶ 1-14, <u>and</u> Ex. B ¶¶ 1-14.)

        14.    The Reorganized Debtors will address the merits of Johnson Controls' allegations through the claim procedures. For purposes of this objection, the important points are that the Motion is deficient on procedural grounds and sets forth requests for relief that have no basis under applicable law.

<u>Argument</u>

A.    <u>The Motion Is An Improper Attempt To Circumvent The Claim Procedures</u>

        15.    Johnson Controls' Motion should be denied because it constitutes an improper attempt to resolve the issues presented by the Administrative Claims outside of the claim procedures established by the Claim Objection Procedures Order. Johnson Controls' argument that DPH-DAS LLC has violated ISRA and the Transfer Agreement in connection with its remediation of the transferred property is identical to the core allegations set forth in the Administrative Claims. (<u>Compare</u> Docket No. 20656 at 2-4 & ¶¶ 1-18, <u>with</u> Ex. A ¶¶ 1-14, <u>and</u> Ex. B ¶¶ 1-14.)

        16.    In the Motion, Johnson Controls acknowledges the overlap between the Motion and the Administrative Claims, and it concedes that it filed the Motion because of the Reorganized Debtors' objection to and denial of liability for the Administrative Claims. As Johnson Controls states in the Motion:

> JCI filed an administrative claim in this case as a result of the indemnification provisions in the Transfer Agreement. The administrative claim represents the indemnification liability that Delphi owes to JCI on a post-petition basis plus additional costs which stem from the damages JCI has sustained post-sale as a result of Delphi's failure to remediate the Property on a timely basis. Not only has Delphi filed an objection to the JCI administrative claims stating that it reflects no amounts due to JCI in its books and records . . . , it has also failed to

7

> acknowledge any liability in a face-to-face meeting between the parties. <u>It is for these reasons, that JCI files this motion</u> seeking adequate assurance that DPH Holdings has sufficient assets to perform its obligations under ISRA and under the Transfer Agreement.

(Docket No. 20656 at 3-4 (emphasis added).)

17. The issues raised by the Administrative Claims and the Motion should be resolved through the claim procedures – indeed, the Order Authorizing Use Of Administrative Claim Objection Procedures provides that the Administrative Claims "shall" be resolved in that manner. (Docket No. 18998 ¶ 3.) There is no basis for Johnson Controls' attempt to short-circuit the claim procedures by filing a Motion that asks this Court to make premature rulings regarding the same factual and legal matters addressed in the Administrative Claims. Allowing Johnson Controls to circumvent the claim procedures in this matter could open the door to similar motions from other claimants seeking quick rulings on their unresolved claims. This could lead in short order to an evisceration of the carefully crafted claim procedures that have proven to be an effective means of managing the more than 20,000 prepetition and postpetition claims filed in these chapter 11 cases.

18. There is nothing exceptional about Johnson Controls' Administrative Claims. They should be resolved through the claim procedures, just like the thousands of other claims that have been moved through the procedures since December 2006, and this Court should reject Johnson Controls' attempt to litigate the Administrative Claims under the guise of the Motion.

   B. <u>Johnson Controls' Requests For Relief Are Also Improper</u>

19. This Court should also deny the Motion on the independent grounds that Johnson Controls' requests for relief are not viable in this context. The first request seeks an order compelling DPH-DAS LLC to perform its alleged environmental and indemnification

8

obligations under the Transfer Agreement.  (Docket No. 20656 at 4 & ¶ 37.)  Under New York law, however, "[s]pecific performance is not available as a remedy for breach of contract where . . . there is an adequate remedy at law (i.e., money damages)."  <u>Alpha Auto Brokers, Ltd. v. Cont'l Ins. Co.</u>, 728 N.Y.S.2d 769, 770 (N.Y. App. Div. 2001) (internal quotation marks omitted here and throughout); <u>T.F. Demilo Corp. v. E.K. Constr. Co.</u>, 616 N.Y.S.2d 240, 240 (N.Y. App. Div. 1994).

20. In this case, Johnson Controls alleges that DPH-DAS LLC has breached section 2.1 of the Environmental Matters exhibit to the Transfer Agreement, under which DPH-DAS LLC agreed to indemnify Johnson Controls, Inc. for certain environmental damages arising from pre-closing environmental contamination, pre-closing compliance matters, or pre-closing off-site liability.  (Docket No. 20656 at 2-3 & ¶ 2.)  It also alleges that DPH-DAS LLC has breached section 4.1 of the Environmental Matters exhibit to the Transfer Agreement, which requires DPH-DAS LLC to "file such papers, and conduct such investigation and remediation as required by the New Jersey Department of Environmental Protection . . . to satisfy the requirements of [ISRA] and regulations promulgated thereto," and that the alleged breach of that provision triggers Johnson Controls' right to indemnification under section 7.1.A of the Transfer Agreement.  (Docket No. 20656 at 2-3 & ¶ 1.)

21. There is no question that Johnson Controls has an adequate remedy at law in the form of indemnification payments for the alleged breaches.  Indeed, that is the very remedy that Johnson Controls is pursuing in the Administrative Claims.  (<u>See</u> Ex. A ¶ 5 ("JCI and JCBGI each assert contractual claims for indemnification arising under § 7.1.A of the Transfer Agreement.  JCI also asserts contractual indemnification claims under Exhibit 3.6.H to the Transfer Agreement (the 'Environmental Matters Exhibit')."); Ex. B ¶ 5 (same).)  Because

9

Johnson Controls has an adequate remedy at law, its for an order compelling DAS-DPH LLC to perform under the Transfer Agreement is barred by well-established New York law.

22. Johnson Controls' second request for relief – in which it asks this Court to order DPH-DAS LLC to provide adequate assurance of future performance under the Transfer Agreement – also misses the mark because that remedy is not available here.

23. As the New York Court of Appeals explained in Norcon Power Partners, L.P. v. Niagara Mohawk Power Corp., 705 N.E.2d 656 (N.Y. 1998), the doctrine of demand for adequate assurance of future performance is limited to situations where the non-demanding party is insolvent or the contract at issue is either a contract for the sale of goods governed by the New York Uniform Commercial Code or a commercial contract closely analogous to a contract for the sale of goods, such as a contract for the sale of electricity. Id. at 669-70; see Merrill Lynch Int'l v. XL Capital Assurance Inc., 564 F. Supp. 2d 298, 306 (S.D.N.Y. 2008) (explaining that "the New York Court of Appeals has extended the doctrine beyond the U.C.C. context only in limited circumstances, viz., where it found the contract to be closely analogous to one for the sale of goods"); Jordan v. Can You Imagine, Inc., 485 F. Supp. 2d 493, 502 n.5 (S.D.N.Y. 2007) ("New York courts are reluctant to extend the right to demand adequate assurances of performance beyond insolvency settings, contracts for the sale of goods governed by the Uniform Commercial Code, and closely analogous contracts."); Bank of N.Y. v. River Terrace Assocs., LLC, 804 N.Y.S.2d 728, 729 (N.Y. App. Div. 2005) (explaining that "[t]he Court of Appeals has enjoined the courts to proceed warily in extending this UCC doctrine to the common law of this state," and holding that the doctrine does not apply to loan agreements).

24. Johnson Controls has not established that DPH-DAS LLC (or DPH Holdings, the entity responsible for making disbursements on account of administrative claims)

10

is insolvent, nor can it show that the environmental and indemnification provisions of the Transfer Agreement at issue here are closely analogous to a contract for the sale of goods.  In addition, no provision of the Transfer Agreement authorizes Johnson Controls to demand adequate assurance of future performance.  And although Johnson Controls cites 11 U.S.C. § 105(a) as a supposed source of authority for its request (Docket No. 20656 ¶ 38), that section "does not authorize the bankruptcy court to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity."  <u>Solow v. Kalikow</u> (In re Kalikow), 602 F.3d 82, 96 (2d Cir. 2010); <u>New England Dairies, Inc. v. Dairy Mart Convenience Stores, Inc.</u> (In re Dairy Mart Convenience Stores, Inc.), 351 F.3d 86, 92 (2d Cir. 2003).  For these reasons, Johnson Controls has no right to demand adequate assurance of future performance under the Transfer Agreement, and its second request for relief should be denied.

        25.    In its final request for relief, Johnson Controls seeks the authority to conduct an examination of DPH Holdings under Fed. R. Bankr. P. 2004 "in order to determine whether sufficient funds have been set aside to cover the [Administrative Claims]."  (Docket No. 20656 ¶ 45.)  In making this request, Johnson Controls ignores the critical fact that its April 2010 response to the Reorganized Debtors' objection to the Administrative Claims (Docket No. 19843) gave rise to a contested matter with respect to each of the Administrative Claims.  This is clear from paragraph 5 of the Claim Objection Procedures Order, which provides:

> To the extent that a Response is filed with respect to any claim listed in a claims objection (each, a "Contested Claim"), each such Claim and the objection to such Claim asserted in the claims objection <u>shall be deemed to constitute a separate contested matter as contemplated by Bankruptcy Rule 9014</u>.

(Docket No. 6089 ¶ 5 (emphasis added).)

11

26. In this circuit, it is a "well recognized rule that once an adversary proceeding or contested matter is commenced, discovery should be pursued only under the Federal Rules of Civil Procedure and not by Rule 2004."[3] Enron, 281 B.R. at 840; accord In re Recoten Corp., 307 B.R. 751, 755 (Bankr. S.D.N.Y.), aff'd, No. 04 Civ. 2466, 2004 WL 1497570 (S.D.N.Y. July 1, 2004); In re Bd. of Dirs. of Hopwell Int'l Ins. Ltd., 258 B.R. 580, 586-87 (Bankr. S.D.N.Y. 2001); In re Bennett Funding Group, Inc., 203 B.R. 24, 29 (Bankr. N.D.N.Y. 1996); In re Bakalis, 199 B.R. 443, 448 (Bankr. E.D.N.Y. 1996); In re Ecam Publ'ns, Inc., 131 B.R. 556, 559 (Bankr. S.D.N.Y. 1991). Johnson Controls has not cited any contrary authority from this circuit.

27. Most courts in other jurisdictions follow this rule as well. E.g., Conley v. Cent. Mortgage Co., 414 B.R. 157, 159 (E.D. Mich. 2009); Intercontinental Enters., Inc. v. Keller (In re Blinder, Robinson & Co.), 127 B.R. 267, 274-75 (D. Colo. 1991); In re J & R Trucking, Inc., 431 B.R. 818, 821 (Bankr. N.D. Ind. 2010); Wash. Mut., 408 B.R. at 50; In re Barnes, 365 B.R. 1, 6 (Bankr. D.D.C. 2007); 2435 Plainfield Ave., 223 B.R. at 456; In re Symington, 209 B.R. 678, 685 (Bankr. D. Md. 1997); In re Szadowski, 198 B.R. 140, 141-42 (Bankr. D. Md. 1996); In re Buick, 174 B.R. 299, 305 (Bankr. D. Colo. 1994); In re French, 145 B.R. 991, 992 (Bankr. D.S.D. 1992); In re Valley Forge Plaza Assocs., 109 B.R. 669, 674 (Bankr.

---

[3] The purpose of the rule is to prevent parties from using examinations under Fed. R. Bankr. P. 2004 to circumvent the greater procedural safeguards associated with discovery under Fed. R. Civ. P. 26-37, which are made applicable to adversary proceedings by Fed. R. Bankr. P. 7026-7037 and to contested matters by Fed. R. Bankr. P. 9014. See In re Wash. Mut., Inc., 408 B.R. 45, 51 (Bankr. D. Del. 2009) ("The primary concern of courts is the use of Rule 2004 examinations to circumvent the safeguards and protections of the Federal Rules of Civil Procedure."); Enron, 281 B.R. at 841 ("Based on Rule 2004's substantive differences, courts have expressed concern that Rule 2004 examinations not be used as a tactic to circumvent the safeguards of the Federal Rules of Civil Procedure."); 2435 Plainfield Ave., Inc. v. Twp. of Scotch Plains (In re 2435 Plainfield Ave., Inc.), 223 B.R. 440, 456 (Bankr. D.N.J. 1998) ("In order to prevent injustice, and to insure that parties in bankruptcy adversary proceedings have the same rights as parties to a federal suit in a non-bankruptcy context, it is important to insure that the procedural safeguards of the discovery process provided in Fed. R. Civ. P. 26-37 . . . are not avoided by permitting a Rule 2004 examination while an adversary proceeding is pending.").

12

E.D. Pa. 1990); Moore v. Lang (In re Lang), 107 B.R. 130, 132 (Bankr. N.D. Ohio 1989); First Fin. Sav. Ass'n v. Kipp (In re Kipp), 86 B.R. 490, 491 (Bankr. W.D. Tex. 1988).

28.    Consistent with these authorities, the existence of the contested matters with respect to the Administrative Claims precludes Johnson Controls' request for an examination concerning the Administrative Claims under Rule 2004.  Johnson Controls will have the opportunity to take discovery in the contested matters.  That discovery will be governed by Fed. R. Civ. P. 26-37, to the extent those rules are incorporated by Fed. R. Bankr. P. 9014, and by the discovery procedures set forth in the Claim Objection Procedures Order (Docket No. 6089 ¶ 9(h)).

Conclusion

WHEREFORE, the Reorganized Debtors respectfully request that this Court enter and order sustaining this objection, denying the Motion, and granting the Reorganized Debtors such other and further relief as is just.

Dated: New York, New York
       November 10, 2010

                                 SKADDEN, ARPS, SLATE, MEAGHER
                                    & FLOM LLP

                       By: /s/ Ron E. Meisler
                            John Wm. Butler, Jr.
                            John K. Lyons
                            Albert L. Hogan, III
                            Ron E. Meisler
                            155 North Wacker Drive
                            Chicago, Illinois 60606

                                    - and -

                            Four Times Square
                            New York, New York 10036

                            Attorneys for DPH Holdings Corp., et al.,
                              Reorganized Debtors