

# State of New Jersey

| | | |
|---|---|---|
| CHRIS CHRISTIE<br>Governor | OFFICE OF THE ATTORNEY GENERAL<br>DEPARTMENT OF LAW AND PUBLIC SAFETY<br>DIVISION OF LAW | PAULA T. DOW<br>Attorney General |
| KIM GUADAGNO<br>Lt. Governor | 25 MARKET STREET<br>PO BOX 093<br>TRENTON, NJ 08625-0093 | ROBERT M. HANNA<br>Director |

November 15, 2010

**ELECTRONICALLY FILED**
Honorable Robert D. Drain
United States Bankruptcy Judge
United States Court House
300 Quarropos Street
White Plains, N.Y. 10601-4140

    Re:  DPH Holdings Corp., et al.
           Bankruptcy Case No. 05-44481

Dear Judge Drain:

Please accept this letter in support of the Motion made by Johnson Controls Battery Group, Inc. ("Johnson Controls"), for an order compelling the debtor to comply with all of the provisions of the Industrial Site Recovery Act, N.J.S.A. 13:1K-6 to 13, including the regulations promulgated pursuant thereto, N.J.A.C. 7:26C-5.10, Remediation Trust Fund Requirements, which require an annual affirmation of the trust's existence and a cost estimate that includes any readjustment required since the last one.

Statutory Framework

The Environmental Cleanup Responsibility Act ("ECRA"),



November 15, 2010
Page 2

now the Industrial Site Recovery Act ("ISRA"), N.J.S.A. 13:1K-6 to 13, was enacted in 1983 for the purpose of relieving the public from bearing the burden of remediating industrial sites contaminated with hazardous substances and abandoned by private businesses that, deciding to cease their operations, just "walk away from the scene," see Dixon Venture v. Dixon Crucible Company, 122 N.J. 228, 584 A.2d 797 (1991), or "dump and run," see In re Adoption of N.J.A.C. 7:26B, 128 N.J. 442, 461, 608 A.2d 288, 298 (1992).  In order to achieve this goal, ISRA provides that, upon the closure, sale or transfer of an industrial establishment, the owner or operator of the industrial establishment must either submit a cleanup plan to the Department detailing the measures necessary to detoxify the property, or obtain approval from the Department of a "negative declaration" in which the owner or operator has certified that there has been no discharge of hazardous substances or wastes or that any such discharge has been cleaned up in accordance with procedures approved by the Department and there remain no hazardous substances or wastes on the property.  N.J.S.A. 13:1K-8.

"Industrial establishments" are those: (1) at which hazardous substances or wastes are present; and (2) which also have a designated reference number as determined by the North American Industrial Classification System of Codes.  N.J.S.A. 13:1D-139.

November 15, 2010
Page 3

The magnitude of New Jersey's hazardous waste problem is beyond dispute. <u>Matter of Kimber Petroleum Corp</u>., 110 N.J. 69, 88, 539 A.2d 1181 (1988) (Wilentz, C.J. dissenting). Decades of industrial activity have left this state with a legacy of hazardous waste. That legacy continues to threaten the State's public health and ecology. <u>In Re Adoption of N.J.A.C. 7:26B</u>, <u>supra</u>, 128 N.J. at 446, 608 A.2d at 290. Thus, in enacting ECRA, the Legislature recognized that the generation, handling, storage and disposal of hazardous substances and wastes pose an inherent risk of harm, and that the closing of operations and the transfer of real property where hazardous substances were used must be conducted in a rational and orderly way so as to mitigate potential risk. N.J.S.A. 13:1K-7 (1983).

ISRA is quite unlike other environmental regimes in that it uses market forces to bring about the reversal of environmental pollution. <u>Dixon Venture</u>, <u>supra</u>, 122 N.J. 228, 584 A.2d 797. Although ISRA does not impose an independent duty to clean up the property during a period of operation, the owner cannot walk away from the scene after deciding to cease operations without developing and implementing a cleanup plan. <u>Id</u>. Furthermore, ISRA was designed to impose upon both the owner and the operator of an industrial establishment a "self-executing duty to remediate" upon closure, sale or transfer of certain potentially polluted

properties. See Superior Air Products Co. v. N.L. Industries, Inc., 216 N.J. Super. 46, 62-65, 522 A.2d 1025, 1034-36 (App. Div. 1987), certif. dismissed, 126 N.J. 308, 598 A.2d 872 (1991).

In order to facilitate the completion of commercial transactions, the Department had adopted a practice under which a property owner may proceed with the sale of a site before fulfilling its obligations under ISRA by entering into a Remediation Agreement or an Administrative Consent Order with the Department. See Dixon Venture, supra, 122 N.J. at 233, 584 A.2d at 800. This procedure has been recognized by the Supreme Court as a means of avoiding "draconian" application of ISRA, specifically, allowing a transfer of ownership of the industrial establishment to proceed, while insuring that the owner will not "dump and run" from contaminated property. In Re Adoption of N.J.A.C. 7:26B, supra, 128 N.J. at 461, 608 A.2d at 298. Thus, the debtor was not prevented from selling its sites when the opportunity arose prior to completion of any required remediation.

ISRA obligations have already been found not to constitute "claims" pursuant to § 101(5) of the Bankruptcy Code by the United States Court of Appeals for the Third Circuit in Torwico Electronics, Inc. v. State of New Jersey, Department of Environmental Protection and Energy, 8 F.3d 146 (3d Cir. 1993), cert. denied 114 S.Ct. 1576 (1994), holding that obligations under

November 15, 2010
Page 5

orders or statutory provisions that require performance rather than payment are not "claims" subject to discharge in bankruptcy and that Torwico's obligations to clean up its former site of operations are not only nondischargeable but "run with the waste." The Torwico ruling was based in part on the Second Circuit's ruling in In Re Chateaugay Corp., 944 F.2d 997, 1008 (2nd Cir. 1991), aff'g 112 B.R. 513 (S.D.N.Y. 1990).  The Second Circuit held that a cleanup order, "no matter how phrased," that requires taking any action that accomplishes the dual objectives of removing accumulated wastes, and stopping or ameliorating ongoing pollution from such wastes, is not a dischargeable "claim."  944 F.2d at 1008.

The self-executing duty to remediate imposed by ISRA does not fit the definition of a "claim" found at 11 U.S.C. 101(5). Breach of this duty cannot possibly give rise to a right to payment. Safety-Kleen, Inc. v. Wyche, 274 F.3d 846, 866 (4th Cir. 2001), is instructive, as the court there found that financial assurance requirements, such as are sometimes present under ISRA, are not money judgments and are within the regulatory exception to the automatic stay because their primary purpose is deterring environmental misconduct.

N.J.S.A. 58:10B-3 provides for the establishment and maintenance of the remediation funding source that must be

November 15, 2010
Page 6

established and maintained by the owner or operator of an industrial establishment or any other person required to perform remediation activities such as the debtor here is required to perform. Delphi, now DPH Holdings, as the new corporation is called, chose to provide an environmental trust fund and Delphi is obligated to keep the environmental trust updated and to supply updated notifications to the DEP annually. See N.J.S.A. 58:10B-3a.

The regulations promulgated at N.J.A.C. 7:26C-10 require an entity establishing this remediation funding source to submit to the Department every year a revised estimate of the costs incurred in the previous year and a detailed revision of the costs expected to be incurred during the following 365 days in order to comply with the Remediation Agreement. On November 4, 2010, the Department issued a Notice of Violation to Delphi for failing to comply with these regulations and with the Remediation Agreement. See Notice of Violation, attached hereto, and made a part hereof. DPH Holdings must be compelled to correct the violations enumerated on the attached Notice of Violation.

I thank Your Honor for your attention to this matter.

Respectfully submitted,

PAULA T. DOW
ATTORNEY GENERAL OF NEW JERSEY

November 15, 2010
Page 7

By:_____
    Rachel Jeanne Lehr
    Deputy Attorney General