Hearing Date and Time:  December 16, 2010 at 10:00 a.m. (prevailing Eastern time)
Response Date and Time:  December 9, 2010 at 4:00 p.m. (prevailing Eastern time)

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
155 North Wacker Drive
Chicago, Illinois 60606
John Wm. Butler, Jr.
John K. Lyons
Albert L. Hogan, III
Ron E. Meisler

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036

DPH Holdings Corp. Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Attorneys for DPH Holdings Corp., et al.,
  Reorganized Debtors

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                      :
      In re                                          :        Chapter 11
                                                      :
DPH HOLDINGS CORP., et al.,              :        Case No. 05-44481 (RDD)
                                                     :
           Reorganized Debtors.        :        (Jointly Administered)
                                                     :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

REORGANIZED DEBTORS' MOTION FOR ORDER ENFORCING MODIFIED PLAN AND PLAN MODIFICATION ORDER INJUNCTIONS AGAINST INDENTURE TRUSTEE WITH RESPECT TO CERTAIN 1994 BONDS ISSUED BY THE COUNTY OF TRUMBULL, OHIO

("SECOND INDENTURE TRUSTEE PLAN INJUNCTION MOTION")

DPH Holdings Corp. ("DPH Holdings") and certain of its affiliated reorganized debtors in the above-captioned cases (collectively, the "Reorganized Debtors"), successors to Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, former debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this motion for an order enforcing against the indenture trustee with respect to certain bonds issued by the County of Trumbull, Ohio in 1994 (the "Indenture Trustee"), the injunctions set forth in the First Amended Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession (As Modified) (the "Modified Plan") (Docket No. 18707 Ex. A art. 11.14) and this Court's order approving the Modified Plan (the "Plan Modification Order") (Docket No. 18707 ¶ 22).  On July 1, 1994, the County of Trumbull, Ohio ("Trumbull County") and Dai-Ichi Kangyo Trust Company of New York, as trustee, entered into an Indenture of Trust under which Trumbull County issued the Sewage Disposal Revenue Bonds (General Motors Corporation Project) Series 1994 in the aggregate principal amount of $2.75 million (the "Bonds").  The Bank of New York Mellon Corporation has served as the successor Indenture Trustee throughout these chapter 11 cases.

Preliminary Statement

1.      Since the substantial consummation of the Modified Plan, the Indenture Trustee has demanded that DPH Holdings make payments concerning the 1994 Bonds pursuant to a prepetition contract executed by and between Delphi and General Motors Corporation ("GM") in 1999.  The Indenture Trustee did not file a contingent proof of claim concerning the Bonds, and its post-emergence pursuit of a discharged prepetition claim constitutes a clear violation of the injunctions in Article 11.14 of the Modified Plan and paragraph 22 of the Plan Modification Order.  (Docket No. 18707 Ex. A art. 11.14; Docket No. 18707 ¶ 22.)

2

2.  The Indenture Trustee's status as a prepetition creditor under the 1999 agreement was not elevated to post-petition claimant status when Delphi and GM entered into the Amended And Restated Master Restructuring Agreement (the "Amended MRA") in 2008. The Amended MRA was part of a global settlement between Delphi and GM that was intended to affect only the rights and obligations as between Delphi and GM and specifically precluded third-party beneficiaries by it terms.  The Indenture Trustee was not a party to the Amended MRA, and any argument that the Indenture Trustee had rights under the Amended MRA as a third-party beneficiary is foreclosed by, among other things, the provision of the Amended MRA expressly negating the existence of such beneficiaries.  (Docket No. 14287 Ex. B § 8.18)

3.  This provision disposes of the notion that the Indenture Trustee's status was improved by reason of the Amended MRA.[1]  See Edward B. Fitzpatrick, Jr. Constr. Corp. v. Suffolk County, 525 N.Y.S.2d 863, 866 (N.Y. App. Div. 1988) ("Where a provision in the contract expressly negates enforcement by third parties, that provision is controlling."); James v. State, 457 N.Y.S.2d 148, 152 (N.Y. App. Div. 1982) ("The contractual provision here expressly negates an intent to benefit third parties and is necessarily decisive as to the rights of such parties."), aff'd, 457 N.E.2d 802 (N.Y. 1983).

Background

A.  The 1994 Loan Agreement

4.  On July 1, 1994, Trumbull County entered into a Loan Agreement with GM (the "1994 Loan Agreement"), a copy of which is attached to this Motion as Exhibit A. Under the 1994 Loan Agreement, Trumbull County agreed to lend to GM the proceeds from the

---

[1] It is instructive that the Indenture Trustee also did not file a contingent administrative claim concerning the Bonds.

sale of the Bonds (Ex. A § 4.1), and GM agreed to make to the Indenture Trustee certain payments of principal, premium, and interest with respect to the Bonds (Ex. A § 4.2(a)).

    B.    <u>The 1999 Agreement</u>

    5.    On January 1, 1999, in connection with the spin-off of Delphi Automotive Systems Corporation from GM, GM and Delphi Automotive Systems LLC ("DAS LLC") entered into an Assignment And Assumption Agreement – Industrial Development Bonds (the "1999 Agreement"), a copy of which is attached to this Motion as <u>Exhibit B</u>. Under the 1999 Agreement, GM assigned to DAS LLC the 1994 Loan Agreement (Ex. B § 1), and DAS LLC assumed certain obligations of GM under the 1994 Loan Agreement (Ex. B § 2). In addition, DAS LLC agreed to indemnify GM for losses relating to the 1994 Loan Agreement. (Ex. B § 6.) DPH Holdings is the successor to DAS LLC with respect to the 1999 Agreement.

    C.    <u>The Chapter 11 Filings And Payments On The Bonds</u>

    6.    On October 8 and 14, 2005, the Debtors filed voluntary petitions for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 1101-1174. The Reorganized Debtors believe that GM made payments on the Bonds from the petition dates in October 2005 through the effective date of the Amended MRA in September 2008. The Debtors made payments on the Bonds from September 2008 through the termination of the Amended MRA in October 2009.

    D.    <u>The Amended MRA</u>

    7.    On September 12, 2008, Delphi and GM entered into the Amended MRA, subject to this Court's approval. The Debtors filed a motion seeking this Court's approval of the Amended MRA on September 12, 2008 (Docket No. 14164), and this Court entered an order granting the motion on September 26, 2008 (Docket No. 14287). Under the order, the Debtors

4

were "authorized, but not directed, to implement, deliver, and perform their obligations under the . . . Amended MRA."  (Docket No. 14287 ¶ 2.)

8.  The Amended MRA amended and restated the earlier Master Restructuring Agreement between Delphi and GM (the "MRA").  Similar to the MRA, the Amended MRA allocated the longer-term responsibilities of Delphi and GM as part of the global settlement agreement between those parties.  Unlike the MRA, the Amended MRA became effective independent of and in advance of the effective date of the Debtors' plan of reorganization.

9.  The Amended MRA provided that, as of the effective date of the Amended MRA in September 2008, the 1999 Agreement "shall, as applicable, be either assumed, reinstated, or ratified (including as amended, as applicable)."[2]  (Docket No. 14287 Ex. B § 5.01(a)(vi).)

10.  The Amended MRA also included a termination provision stating that the Amended MRA "may be terminated . . . and the transactions contemplated hereby abandoned, upon the occurrence of," among other things, the "mutual written consent of both Delphi and GM."  (Docket No. 14287 Ex. B § 8.02(a).)  The consent of the Indenture Trustee (or of any other third party) was not required.

---

[2]  Delphi did not assume the 1999 Agreement under 11 § U.S.C. 365.  As of October 2005, when the Debtors filed their chapter 11 petitions, and September 2008, when Delphi and GM executed and this Court approved the Amended MRA, the 1999 Agreement was not an "executory contract" within the meaning of section 365, as there were not unperformed obligations on both sides.  See ReGen Capital I, Inc. v. Halperin (In re Wireless Data, Inc.), 547 F.3d 484, 488 n.1 (2d Cir. 2008) ("Although § 365 does not define the term 'executory contracts,' courts have long employed the definition articulated by Professor Countryman, i.e., 'a contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other.'"); COR Route 5 Co. v. Penn Traffic Co. (In re Penn Traffic Co.), 524 F.3d 373, 379 (2d Cir. 2008) (citing same definition).  The 1999 Agreement was therefore not subject to assumption or rejection pursuant to section 365.  In re Ridizio, Inc., 204 B.R. 417, 421 (Bankr. S.D.N.Y. 1997); In re Raymond, 129 B.R. 354, 357 (Bankr. S.D.N.Y. 1991).

5

11. The Indenture Trustee was not a party to the Amended MRA. With regard to third-party beneficiaries, the Amended MRA provided as follows:

> Section 8.18 <u>Third Party Beneficiaries</u>. Except as otherwise provided in section 8.06 herein with respect to the releases of the GM Parties and GM Suppliers, <u>nothing contained in this Agreement is intended to confer any rights or remedies under or by reason of this Agreement on any person or entity other than the Parties hereto</u>, nor is anything in this Agreement intended to relieve or discharge the obligation or liability of any third party to any Party to this Agreement, <u>nor shall any provision give any third party any right of subrogation or action over or against any Party to this Agreement</u>.

(Docket No. 14287 Ex. B § 8.18 (emphasis added).

E. <u>Termination Of The Amended MRA Pursuant To The MDA</u>

12. On July 30, 2009, this Court entered the Plan Modification Order approving the Modified Plan and the Master Disposition Agreement among Delphi, GM Components Holdings, LLC, GM, Motors Liquidation Company, DIP Holdco 3, LLC, and the other sellers and other buyers party thereto (the "MDA"). (Docket No. 18707.) A copy of the MDA is attached to this Motion as <u>Exhibit C</u>.

13. The MDA includes the following provision terminating the Amended MRA:

> 9.19.2. <u>Effective on the Closing Date, without further action by the Parties the [Amended] MRA shall</u> (except as specifically set forth below) <u>be terminated in its entirety and the parties thereto shall have no further obligations thereunder</u> (other than as specifically set forth in this <u>Section 9.19.2</u>), including, without limitation, any obligations of Delphi for payments with respect to flowbacks under Section 5.11 of the [Amended] MRA or otherwise. Nothwithstanding the foregoing, Old GM agrees to pay any and all amounts due to Delphi which accrue under the [Amended] MRA for periods prior to Closing regardless of the date on which such amounts become due under the terms of the [Amended] MRA. In addition, Old GM shall continue to be responsible for the payment of all costs and amounts due to Delphi under the [Amended] MRA with respect to the Athens Facility (as defined in the [Amended] MRA).

6

(Ex. C § 9.19.2 (emphasis added).)  This provision is in accord with the termination provision set forth in the Amended MRA, which allowed Delphi and GM to terminate the Amended MRA by "mutual written consent."  (Docket No. Docket No. 14287 Ex. B § 8.02(a).)

14.     The "Closing Date" referenced in the MDA occurred on October 6, 2009, when the Debtors substantially consummated the Modified Plan and emerged from chapter 11. (See Docket No. 18958.)  The Amended MRA was therefore terminated effective as of October 6, 2009.

F.     Pre-Termination Notice To The Indenture Trustee

15.     The Debtors disclosed that the Amended MRA would be terminated pursuant to the MDA (or, more precisely, an earlier version of the Master Disposition Agreement among Delphi, GM Components Holdings, LLC, GM, Parnassus Holdings II, LLC, and the other sellers and other buyers party thereto) in a number of filings related to the Modified Plan, including:

- the (A) Supplement To Motion For Order (I) Approving Modifications To Debtors' First Amended Plan Of Reorganization (As Modified) And Related Disclosures And Voting Procedures And (II) Setting Final Hearing Date To Consider Modifications To Confirmed First Amended Plan Of Reorganization And (B) Request To Set Administrative Expense Claims Bar Date And Alternative Sale Hearing Date, dated June 1, 2009 (Docket No. 16646 at 10; Docket No. 16646 Ex. 1-A, Ex. 7.7 § 9.19.2; Docket No. 16646 Ex. 2 at S-x, S-8, S-18, S-39);

- the Debtors' Omnibus Reply To Objections To Plan Modification Approval Motion, dated June 10, 2009 (Docket No. 16935 Ex. C at S-x, S-8, S-18, S-41);

- the First Amended Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession, dated June 16, 2009 (Docket No. 17030 Ex. 7.7 § 9.19.2); and

- the Supplement To First Amended Disclosure Statement With Respect To First Amended Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession (As Modified), dated June 16, 2009 (Docket No. 17031 at S-x, S-8, S-20, S-43).

7

16. Although the Indenture Trustee received notice of the hearing on the Modified Plan and the deadline and procedures for objecting to the Modified Plan (Docket No. 17267), it did not object to the termination of the Amended MRA in connection with the Modified Plan or at any other time.

G. <u>The Bar Date And The Indenture Trustee's Failure To File A Proof Of Claim</u>

17. On April 12, 2006, this Court entered an order establishing July 31, 2006 as the bar date for filing proofs of claim, including proofs of claim regarding contingent claims (the "Bar Date"). (Docket No. 3206 ¶ 2.) The Indenture Trustee was timely served with notice of the Bar Date and an individualized proof of claim form (Docket No. 3501), but it did not file a proof of claim concerning the Bonds on or before the Bar Date. Furthermore, the Indenture Trustee has not filed a proof of claim concerning the Bonds after the Bar Date.[3]

H. <u>The Modified Plan And Plan Modification Order Injunctions</u>

18. Article 11.14 of the Modified Plan provides:

Subject to Article 11.13 of this Plan, the satisfaction, release, and discharge pursuant to this <u>Article XI</u> shall act as an injunction against any Person commencing or continuing any action, employment of process, or act to collect, offset, or recovery any Claim, Interest, or Cause of Action satisfied, released, or discharged under this Plan to the fullest extent authorized or provided by the Bankruptcy Code, including, without limitation, to the extent provided for or authorized by sections 524 and 1141 thereof.

(<u>See</u> Docket No. 18707 Ex. A art. 11.14.)

19. Similarly, the Plan Modification Order provides:

Except as otherwise specifically provided in the Modified Plan, the MDA Documents, or this order and except as may be necessary to enforce or remedy a breach of the Modified Plan, the Debtors and all Persons shall be precluded and

---

[3] The Indenture Trustee also received notice of the bar date of July 15, 2009 for filing proofs of administrative expenses arising on or before June 1, 2009 (Docket No. 17267) and the bar date 30 days after the effective date of the Modified Plan for filing proofs of administrative expenses arising after June 1, 2009 (Docket No. 18978). The Indenture Trustee did not file a proof of administrative expenses concerning the Bonds on or before those bar dates (or thereafter).

8

permanently enjoined on and after the Effective Date from (a) commencing or continuing in any manner any Claim, action, employment of process, or other proceeding of any kind with respect to any Claim, Interest, Cause of Action, or any other right or Claim against the Reorganized Debtors, which they possessed or may possess prior to the Effective Date, (b) the enforcement, attachment, collection, offset, recoupment, or recovery by any manner or means of any judgment, award, decree, order, or otherwise with respect to any Claim, Interest, Cause of Action, or any other right or Claim against the Reorganized Debtors, which they possessed or may possess prior to the Effective Date, (c) creating, perfecting, or enforcing any encumbrance of any kind with respect to any Claim, Interest, Cause of Action, or any other right or Claim against the Reorganized Debtors, which they possessed or may possess prior to the Effective Date, and (d) asserting any Claims, Interests, or Causes of Action that are satisfied, discharged, released, or subject to exculpation hereby or by the Modified Plan.

(Docket No. 18707 ¶ 22.)

    I.    <u>The Indenture Trustee's Post-Emergence Pursuit Of A Claim Against DPH Holdings</u>

    20.    Since the effective date of the Modified Plan on October 6, 2009, the Indenture Trustee has asserted that DPH Holdings remains obligated to perform the obligations assumed by DAS LLC under the 1999 Agreement – i.e., that it remains obligated to make to the Indenture Trustee certain post-emergence cash payments with respect to the Bonds. The Indenture Trustee demanded payment from DPH Holdings in a letter dated August 20, 2010.

<u>Jurisdiction And Venue</u>

    21.    This matter arises under title 11 of the United States Code or arises in a case under title 11 of the United States Code. This Court has subject matter jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334, the Modified Plan (Docket No. 18707 Ex. A art. XIII), and the Plan Modification Order (Docket No. 18707 ¶ 56). This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b). This Court is the proper venue for this matter pursuant to 28 U.S.C. §§ 157 and 1409.

Relief Requested

22.     The Reorganized Debtors respectfully request that this Court enter an order enjoining the Indenture Trustee from taking any further action against DPH Holdings or any of the former Debtors concerning any demand for payment with respect to the Bonds.

Applicable Authority

A.    The Indenture Trustee Is Violating The Modified Plan And Plan Modification Order Injunctions

23.     The Indenture Trustee may believe that it is a third-party beneficiary of the 1999 Agreement pursuant to which DAS LLC assumed certain obligations of GM under the 1994 Loan Agreement.  To the extent that the Indenture Trustee is demanding payments from DPH Holdings as a third-party beneficiary of the 1999 Agreement, there is no question that its actions are in violation of the injunctions set forth in Article 11.14 of the Modified Plan and paragraph 22 of the Plan Modification Order.

24.     Those injunctions prohibit parties from taking action against DPH Holdings or any of the other former Debtors with respect to, among other things, any "Claim." (Docket No. 18707 Ex. A art. 11.14; Docket No. 18707 ¶ 22.)  For purposes of the Modified Plan and the Plan Modification Order, a "Claim" is "a claim against one of the Debtors (or all or some of them), whether or not asserted, as defined in section 101(5) of the Bankruptcy Code." (Docket No. 18707 Ex. A art. 1.29; Docket No. 18707 at 4 n.1.)

25.     Under 11 U.S.C. § 101(5)(A), a "claim" includes a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." "Congress intended by this language to adopt the broadest available definition of 'claim.'" Johnson v. Home

10

State Bank, 501 U.S. 78, 83 (1991). It is "sufficiently broad to encompass any possible right to payment." Mazzeo v. U.S. (In re Mazzeo), 131 F.3d 295, 302 (2d Cir. 1997).

26. When, as here, a right to payment is based on a contract, the right arises when the contract is executed, not when the alleged breach occurs, even if the alleged breach occurs post-petition. See Olin Corp. v. Riverwood Int'l Corp. (In re Manville Forest Prods. Corp.), 209 F.3d 125, 129 (2d Cir. 2000) (explaining that "a right to payment based on a written indemnification contract arises at the time the indemnification agreement is executed"); Pearl-Phil GMT (Far East) Ltd. v. Caldor Corp., 266 B.R. 575, 582 (S.D.N.Y. 2001) (explaining that "contract-based bankruptcy claims arise at the time the contract is executed," and that "courts consistently hold that a post-petition breach of a pre-petition contract gives rise only to a pre-petition claim"); Riodizio, 204 B.R. at 424 n.6 ("The postpetition breach of a prepetition contract gives rise only to a prepetition claim.").

27. Based on these authorities, the Indenture Trustee's status as a purported third-party beneficiary of the 1999 Agreement gave rise to a contingent prepetition claim for which it did not file a proof of claim on or before the Bar Date (or thereafter). This is a Claim within the meaning of the injunctions in the Modified Plan and the Plan Modification Order, and the Indenture Trustee's post-emergence demand for payment from DPH Holdings under a prepetition contract constitute a textbook example of a violation of those injunctions.

B. The Indenture Trustee Had No Rights Under The Amended MRA

28. The Indenture Trustee may also believe that its status as a prepetition creditor under the 1999 Agreement with a duty to file a contingent proof of claim on or before the Bar Date was somehow improved when Delphi and GM "assumed, ratified, or reinstated" the 1999 Agreement under the Amended MRA. (Docket No. 14287 Ex. B § 5.01(a)(vi).) But that is

11

incorrect.  The Indenture Trustee was not a party to the Amended MRA.  Nor was it a third-party beneficiary of the Amended MRA.[4]

29.  Under New York law, a party asserting rights as a third-party beneficiary of a contract must demonstrate that, among other things, "the contract was intended for [its] benefit."[5]  Mendel v. Henry Phipps Plaza West, Inc., 844 N.E.2d 748, 751 (N.Y. 2006); Ca. Pub. Employees' Ret. Sys. v. Shearman & Sterling, 741 N.E.2d 101, 104 (N.Y. 2000) ("CALPERS").  "The best evidence of the intent to bestow a benefit upon a third party is the language of the contract itself."  767 Third Ave. LLC v. Orix Capital Mkts., LLC, 812 N.Y.S.2d 8, 11 (N.Y. App. Div. 2006); 243-249 Holding Co. v. Infante, 771 N.Y.S.2d 651, 652 (N.Y. App. Div. 2004).

30.  "Where a provision in the contract expressly negates enforcement by third parties, that provision is controlling."  IMS Eng'rs-Architects, P.C. v. State, 858 N.Y.S.2d 486, 489 (N.Y. App. Div. 2008) (internal quotation marks omitted); Edward B. Fitzpatrick, Jr. Constr., 525 N.Y.S.2d at 866; see also Facilities Dev. Corp. v. Miletta, 584 N.Y.S.2d 491, 494 (N.Y. App. Div. 1992) (explaining that "such a provision is controlling if it expressly negates third-party enforcement"); Nepco Forged Prods., Inc. v. Consol. Edison Co. of N.Y., 470 N.Y.S.2d 680, 681 (N.Y. App. Div. 1984) ("Where a provision exists in an agreement expressly negating an intent to permit enforcement by third parties, . . . that provision is decisive."); James, 457 N.Y.S.2d at 152 ("The contractual provision here expressly negates an intent to benefit third parties and is necessarily decisive as to the rights of such parties.").

---

[4] Unlike the Debtors' obligations relating to the bonds addressed in the companion injunction motion regarding bonds issued by the Michigan Strategic Fund in 1995 (Docket No. 20722), the Debtors' post-petition administrative claim obligations, if any, relating to the Bonds at issue here were transferred to DIP Holdco 3, LLC (now known as Delphi Automotive LLP ("New Delphi")) pursuant to the MDA.  (See Ex. C § 2.2.2.)  Thus, even if the Debtors had somehow undertaken post-petition obligations to the Indenture Trustee by reason of the Amended MRA, the Indenture Trustee would have a cause of action against New Delphi with respect to those obligations.

[5] The Amended MRA is governed by New York law.  (Docket No. 14287 Ex. B § 8.10.)

31.     New York courts routinely reject claims by supposed third-party beneficiaries when the contract states that there are no third-party beneficiaries. See, e.g., Mendel, 844 N.E.2d at 751; First Keystone Consultants, Inc. v. DDR Constr. Servs., 904 N.Y.S.2d 113, 115 (N.Y. App. Div. 2010); Mid-Valley Oil Co. v. Hughes Network Sys., Inc., 863 N.Y.S.2d 244, 247-48 (N.Y. App. Div. 2008); IMS Eng'rs-Architects, 858 N.Y.S.2d at 488-89; Adelaide Prods., Inc. v. BKN Int'l AG, 834 N.Y.S.2d 3, 8 (N.Y. App. Div. 2007); Rahim v. Sottile Sec. Co., 817 N.Y.S.2d 33, 35 (N.Y. App. Div. 2006); 767 Third Ave., 812 N.Y.S.2d at 11; PT. Bank Mizuho Indonesia v. PT. Indah Kiat Pulp & Paper Corp., 808 N.Y.S.2d 72, 73 (N.Y. App. Div. 2006); Bd. of Managers of Alexandria Condo. v. Broadway/72nd Assocs., 729 N.Y.S.2d 16, 18 (N.Y. App. Div. 2001); Baltia Air Lines, Inc. v. CIBC Oppenheimer Corp., 709 N.Y.S.2d 54, 56 (N.Y. App. Div. 2000).

32.     In this case, Delphi and GM included in the Amended MRA a specific provision precluding the existence of any third-party beneficiary. Section 8.18 of the Amended MRA stated that:

> nothing contained in this Agreement is intended to confer any rights or remedies under or by reason of this Agreement on any person or entity other than the Parties hereto, . . . nor shall any provision give any third party any right of subrogation or action over or against any Party to this Agreement.

(Docket No. 14287 Ex. B § 8.18.)

33.     The language of Section 8.18 is clear, unambiguous, and unequivocal. It contains no exception for the Indenture Trustee and no exception for Section 5.01 of the Amended MRA, the provision under which Delphi and GM "assumed, reinstated, or ratified" the 1999 Agreement. (Docket No. 14287 Ex. B § 5.01.) Consistent with the authorities cited above, Section 8.18, standing alone, defeats the notion that the Indenture Trustee obtained any right, remedy, or right of action under Section 5.01 or any other provision of the Amended MRA.

13

Accordingly, there is no basis for concluding that Delphi undertook post-petition obligations enforceable by the Indenture Trustee by virtue of the Amended MRA.

34. This conclusion is reinforced by the contracting parties' termination of the Amended MRA. That is because an alleged third-party beneficiary must establish "the existence of a valid and binding contract between other parties." Mendel, 844 N.E.2d at 751; CALPERS, 741 N.E.2d at 104. The Amended MRA was terminated on October 6, 2009 pursuant to the MDA. (See Ex. C § 9.19.2) The MDA provides that, upon termination of the Amended MRA, "the parties thereto shall have no further obligations thereunder." (Ex. C § 9.19.2.) As described above, Delphi and GM terminated the Amended MRA in accordance with its terms, which granted Delphi and GM the right to terminate the Amended MRA by "mutual written consent" (Docket No. 14287 Ex. B § 8.02(a).), and with notice to the Indenture Trustee, which did not object. The Amended MRA was not a valid and binding contract following its termination on October 6, 2009. This bars the Indenture Trustee from asserting that it is a third-party beneficiary of the Amended MRA with respect to the payments at issue here, all of which allegedly became due after October 6, 2009.[6]

35. The New York Court of Appeals addressed an analogous situation in Burns Jackson Miller Summit & Spitzer v. Lindner, 451 N.E.2d 459 (N.Y. 1983). In that case, a law firm claimed that it was an intended third-party beneficiary of contracts between unions and transit authorities, and that it was harmed when the union breached the contracts by engaging in

---

[6] Moreover, the unopposed termination of the Amended MRA pursuant to the MDA provides further support for the conclusion that the Amended MRA was not intended to benefit third parties. As this Court noted in its ruling on September 24, 2010 that certain third parties were not third-party beneficiaries of the Delphi-GM Environmental Matters Agreement (the "EMA"), which was also terminated pursuant to the MDA: "[T]he termination of the parties' rights under the [EMA] is important. The MDA pursuant to which the EMA was terminated was on notice to the parties in interest in this case, as part of the confirmation of Delphi's plan. And this aspect of the MDA was not opposed. The termination of the . . . EMA, pursuant to the [MDA] reflected a settlement as between – a global settlement, as between GM and Delphi." (Docket No. 20640 at 107:19-108:2 (emphasis added).)

14

a strike in April 1980.  Id. at 462.  The court rejected the claim, in part because the contracts expired in March 1980, explaining:  "The contracts having expired before the strike, any rights of plaintiff as a third-party beneficiary of them expired with it."  Id. at 469-70.  As a result, the firm could not point to a "valid and binding contract . . . , a sine qua non" for any intended third-party beneficiary.  Id. at 469.

36.  A similar case is Prince v. Dembitzer, 597 N.Y.S.2d 381 (N.Y. App. Div. 1993), in which third parties alleged that they were intended beneficiaries of a partnership or joint venture agreement, and that their rights were violated by a purchase of property in contravention of the agreement.  Id. at 381-82.  The claim failed on the grounds that, among other things, "the partnership or joint venture had terminated in September [1988]," before the defendants negotiated and made the purchase at issue.  Id. at 382.  Thus, the third parties could not establish "a valid and binding contract in existence," as required under New York law.  Id.

## Conclusion

In sum, the Indenture Trustee had no rights under the Amended MRA because (i) it was not a party to the Amended MRA and Delphi and GM specified in the unmistakable language of Section 8.18 that there are no third-party beneficiaries and (ii) the Amended MRA was terminated on October 6, 2009 and ceased being a valid and binding contract on that date. To the extent DPH Holdings had any obligations to the Indenture Trustee concerning the Bonds, the source of those obligations was the prepetition 1999 Agreement.  The Indenture Trustee did not file a proof of claim concerning the Bonds, and any right to payment under the 1999 Agreement is a Claim within the meaning of the injunctions set forth in Article 11.14 of the Modified Plan and paragraph 22 of the Plan Modification Order.

WHEREFORE, the Reorganized Debtors respectfully request that this Court enter an order enjoining the Indenture Trustee from taking any further action against DPH Holdings or

15

any of the former Debtors concerning any demand for payment with respect to the Bonds and

granting the Reorganized Debtors such other and further relief as is just.

Dated: New York, New York
       November 15, 2010

                                 SKADDEN, ARPS, SLATE, MEAGHER
                                   & FLOM LLP

                       By: /s/ Ron E. Meisler
                          John Wm. Butler, Jr.
                          John K. Lyons
                          Albert L. Hogan, III
                          Ron E. Meisler
                          155 North Wacker Drive
                          Chicago, Illinois 60606

                                 - and -

                          Four Times Square
                          New York, New York 10036

                          Attorneys for DPH Holdings Corp., et al.,
                            Reorganized Debtors