Hearing Date and Time:  November 18, 2010 at 10:00 a.m. (prevailing Eastern time)

BARNES & THORNBURG LLP
One North Wacker Drive, Suite 4400
Chicago, Illinois 60606
Telephone:  (312) 357-1313
Facsimile:  (312) 759-5646

Deborah L. Thorne (admitted *pro hac vice*)
Kathleen L. Matsoukas (KL-1821)
Telephone:  (312) 214-8307
Email:  deborah.thorne@btlaw.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| DPH HOLDINGS CORP., *et al.*, | ) No. 05-44481 (RDD) |
| | ) |
| Reorganized Debtors. | ) Jointly Administered |
| | ) |
| | ) |
| | ) |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION OF
JOHNSON CONTROLS INC. POWER SOLUTIONS AND JOHNSON CONTROLS
BATTERY GROUP, INC. FOR AN ORDER COMPELLING DPH HOLDINGS TO
COMPLY WITH THE TRANSFER AGREEMENT RELATING TO TRANSFER OF
DEPHI'S NEW BRUNSWICK BATTERY FACILITY TO JOHNSON CONTROLS, INC.,
FOR ADEQUATE ASSURANCE OF FINANCIAL ABILITY TO PERFORM UNDER
TRANSFER AGREEMENT, AND IN THE ALTERNATIVE, FOR LEAVE TO TAKE
2004 EXAMINATION OF DPH HOLDINGS CORP AND FOR OTHER RELIEF**

Johnson Controls Inc. Power Solutions and Johnson Controls Battery Group, Inc.

("JCBGI") (collectively, "JCI"), as their reply (the "Reply") in further support of their motion for

an Order (1) compelling DPH Holdings Corp. ("DPH") to comply with the Transfer Agreement

Relating to Transfer of Delphi's New Brunswick Battery Facility to JCI ("Transfer Agreement");

(2) in the alternative, ordering DPH to provide adequate assurance of financial ability to perform

its obligations under the Transfer Agreement; and (3) in the alternative, in the event that DPH refuses to provide adequate assurance of its financial ability to perform under the Transfer Agreement, authorizing JCI to take the 2004 Examination of DPH and for other relief (the "Motion"), state as follows:

1.  DPH does not respond to the substance of the Motion because it cannot contradict JCI's assertions. DPH mischaracterizes the Motion as an attempt to adjudicate administrative claims JCI asserted in July 2009. It is not. JCI filed the Motion because in 2010 Delphi violated the New Jersey Industrial Site Recovery Act, as amended ("ISRA"), N.J.S.A. 13:K-6 et seq., and the Transfer Agreement this Court authorized in 2006.[1] These violations deny JCI any assurance that DPH intends to and is capable of performing post-petition obligations DPH undertook in 2006, which include remediating the Site and indemnifying JCI.

2.  DPH violated ISRA and thereby breached the Transfer Agreement by failing to estimate as required by ISRA the cost of remediating the Property and by failing to provide the New Jersey Department of Environmental Protection ("NJDEP") with financial assurance in the amount of a properly made estimate.

3.  When the Transfer Agreement was negotiated and signed, it was recognized that the Property was contaminated by lead and other pollutants and required remediation under ISRA. Delphi agreed in the Transfer Agreement, and in a separate Remediation Agreement DPH signed with NJDEP to remediate the Property after the sale in accordance with ISRA to enable the Property's sale while remediation remained unfinished..

---

[1] On May 26, 2006, Delphi agreed to sell a battery manufacturing plant located in New Brunswick, New Jersey (the "Property") to JCI under the terms of a Transfer Agreement which this Court approved on June 26, 2006 (the "Sale Approval Order") [Docket No. 4363]. A true and correct copy of the Transfer Agreement is attached to the Motion as Exhibit A.

2

4. ISRA and the Remediation Agreement both require Delphi to submit annually to NJDEP a revised estimate of the cost of remediating the Property, to obtain NJDEP approval of that estimate and to deposit into a trust fund (the "Trust Fund") an amount equal to the approved estimate. Delphi did not submit a new estimate or make any deposits into the Trust Fund in 2010.

5. The Transfer Agreement also provides that Delphi, as seller of the Property will indemnify JCI for "any breach of [the Transfer Agreement]." Transfer Agreement §7.1(a). In a Notice of Violation ("NOV") dated November 4, 2010 sent to John Brooks of DPH and copied to JCI, NJDEP asserted that DPH has violated ISRA by failing to provide financial assurance to NJDEP as required by ISRA and by failing to remediate the Property. On November 15, 2010, the State of New Jersey filed a letter addressed to this Court supporting JCI's Motion, enclosing NJDEP's NOV, and asking this Court to compel DPH to comply with ISRA [Docket #20788].

6. As the Motion recites, last summer JCI met with John Brooks, the President of DPH and others to seek a resolution of this matter. Mr. Brooks refused to tell JCI what assets (or the value of the assets) were held by DPH that were set aside to satisfy DPH's obligations under ISRA and the Transfer Agreement. DPH also failed to state when or whether it intended to comply with the environmental laws of the State of New Jersey.

7. JCI has filed the Motion in an effort to assure that DPH has sufficient assets to perform its obligations to remediate the Property and indemnify JCI under the Transfer Agreement – both of which are post-petition obligations -- and *not*, as DPH suggests, to circumvent this Court's procedures or resolve the claim objection DPH filed to object to administrative claims made by JCI in July 2009.

3

8.    JCI believes that the remediation of the Facility will cost approximately $8 million, and that DPH should set aside at least $8 million in the Trust Fund. The $8 million to be deposited in the Trust Fund is not the same amount as the Administrative Claims asserted by JCI.

9.    There is really only one way that DPH can perform its obligations to JCI: DPH must comply with ISRA. To do so, DPH must deposit $8 million into the Trust Fund. Such a sum will financially assure compliance with ISRA and prove that DPH can indemnify JCI if it fails to comply with ISRA. Moreover, DPH must resume the remediation of the Property in accordance with the NOV.

10.   In its response, DPH attempts to distort the Motion in an effort to divert attention away from its violations of the Transfer Agreement and New Jersey law. Putting aside the fact that it is outrageous for DPH to object to the performance of obligations which DPH knowingly assumed and this Court approved in June 2006, JCI understands that eventually the objection will be addressed in the normal course of the objections procedures. Now, however, JCI is concerned that, by the time JCI's administrative claims are addressed, DPH will not then have sufficient funds to satisfy its obligations under ISRA and the Transfer Agreement, particularly since DPH has stated that its books and records reflect *no* obligations under the Transfer Agreement.

11.   JCI is mindful that under the Claims Objection Procedure Order (Docket No. 6089) and the subsequent Administrative Claim Objection Procedure Order (Docket No. 18998)[2], DPH has the sole ability to determine the order in which it adjudicates administrative

---

[2] Surprisingly, despite that the Sale Approval Order had been entered well before the Claims Objection Procedure Order, and JCI's and JCBGI's claims were filed before the entry of the Administrative Claim Objection Procedure Order, JCI was never served with notice of either motion seeking entry of these orders despite prior orders of this court that parties impacted by certain motions be granted particularized notice of the actual motion. (*See* Affidavit of Service for Motion for Order Pursuant to 11 U.S.C. §§ 502(b) and 502(c) and Fed.R.Bankr.P. 2002(m), 3007, 7016, 7026, 9006, 9007, and 9014 Establishing (I) Dates for Hearings Regarding Disallowance or Estimation of

claims and has the ability to manipulate the order so that it does not seek adjudication of JCI's administrative claim until there are no further funds available to pay administrative claims. In spite of that, the Motion does not impact that procedure and is not meant to circumvent it. What this Motion seeks is compliance with statutory and contractual obligations that Delphi Automotive Systems assumed when it sold the Property. At this point, based on DPH's objections to JCI's and JCBGI's claims, information obtained from the State of New Jersey, DPH's own unwillingness to provide the required financial assurance, the NOV and the NJ Letter, JCI does not have any reason to believe that DPH intends to or is able to perform the financial obligations that are part and parcel of ISRA and the Transfer Agreement.

12. DPH should be required to comply with ISRA and therefore with the Transfer Agreement.

13. The person authorized to reconcile and resolve this objection is Deborah L. Thorne, Barnes & Thornburg LLP, One North Wacker Drive, Suite 4400, Chicago, Illinois 60606-2833.

WHEREFORE, Johnson Controls, Inc. and Johnson Controls Battery Group, Inc. request entry of an Order as follows:

    a. Granting the Motion;

    b. Compelling DPH Holdings Corp. to Comply with the post petition Requirements of the Transfer Agreement;

    c. Compelling DPH Holdings Corp. to Provide Adequate Assurance of Financial Ability to Perform its post petition Obligations under the Transfer Agreement;

---

Claims and (II) Certain Notices and Procedures Governing Hearings Regarding Disallowance or Estimation of Claims; and [Proposed] Order Pursuant to 11 U.S.C. §§ 502(B) and 502(C) and Fed. R. Bankr. P. 2002(M), 3007, 7016, 7026, 9006, 9007, and 9014 Establishing (I) Dates For Hearings Regarding Disallowance Or Estimation Of Claims and (II) Certain Notices and Procedures Governing Hearings Regarding Disallowance or Estimation of Claims [Docket No. 5465]; and Affidavit of Service for Motion for Order Pursuant to 11 U.S.C. §§ 105(a) and 503(b) for Order Authorizing Debtors to Apply Claims Objection Procedures to Administrative Expense Claims [Docket No. 18745].)

5

    d.      Granting leave to JCI and JCBG to take the 2004 Examination of DPH; and

    e.      For such other relief as this Court deems just.

Dated: November 16, 2010

                        BARNES & THORNBURG LLP
                        Counsel to Johnson Controls Battery Group, Inc.
                        and Johnson Controls, Inc. (Power Solutions)

                        By:   /s/Kathleen L. Matsoukas
                              Deborah L. Thorne (admitted *pro hac vice*)
                              Kathleen L. Matsoukas (KL-1821)
                              Business Address:
                              One North Wacker Drive, Suite 4400
                              Chicago, Illinois 60606
                              Telephone: (312) 357-1313