## **FIRST AMENDED AND RESTATED** DELPHI SALARIED RETIREES ASSOCIATION BENEFIT TRUST AGREEMENT

This AGREEMENT AND INDENTURE OF TRUST, (the "Trust Agreement"), was originally made and executed as of the 21st day of April, 2009, by and between the 1114 Committee and the Trustee (as those terms are defined herein) and is hereby amended and restated as of the 15th day of November, 2010 (the "Amendment Date") by the Trustee.

WHEREAS, Delphi Corporation and its domestic affiliates (collectively "Delphi") filed petitions for relief under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. 101-1330, in the Bankruptcy Court for the Southern District of New York (the "Court"), Case No. 05-44481 (Jointly Administered) (the "Bankruptcy Cases");

WHEREAS, Delphi sought to eliminate its retiree benefit obligations for its salaried retirees. On February 24, 2009 the Court Ordered that a Committee of Salaried Retirees be selected by the United States Trustee in the Bankruptcy Cases to represent certain affected salaried retirees (the "1114 Committee");

WHEREAS, after extensive negotiation, Delphi compromised on a settlement (the "Settlement") with the Committee of Eligible Salaried Retirees (the "Retirees' Committee") and the Delphi Salaried Retirees' Association (the "Association"), in complete and final resolution of the Retirees' Committee's and the Association's appeals (collectively, the "Appeals") of the OPEB Termination Orders in return for funding a VEBA trust (the "Trust") to be created and administered by the 1114 Committee and/or a designee thereof, said Settlement Agreement being approved by the Court on April 2, 2009 (a copy of the Settlement Agreement and Order approving it are attached hereto as Exhibit A);

WHEREAS, the 1114 Committee has authorized and mandated the creation of a VEBA Committee (the "VEBA Committee") for purposes consistent with the terms of this Trust;

WHEREAS, Delphi has agreed through the Settlement Agreement to make certain contributions to the Trust to subsidize salaried retiree welfare benefits; to fund a Hardship Fund; and to provide funds for establishing and maintaining the Trust;

WHEREAS, the Trust shall enable the VEBA Committee to establish certain retiree welfare benefit plans ("Plans") to provide retiree benefits as set forth herein, with the obligation and discretion to determine and modify the benefits provided by the Trust, and the VEBA Committee shall be the plan administrator and named fiduciary of the Plans;

WHEREAS, the Trust shall enable the VEBA Committee to establish and administer a Hardship Fund to provide additional consideration for retiree benefits consistent with the criteria set forth herein;

WHEREAS, the VEBA Committee is willing to enter into this Trust Agreement to establish the Trust for the purposes of providing such retiree welfare benefits consistent with the intent of the aforementioned "Settlement Agreement";

WHEREAS, the 1114 Committee has engaged in significant efforts to set up the Trust in

1


**EXHIBIT** A

a particular manner, which has included efforts to find suitable agents and third parties to provide necessary services to the Trust, such as insurance brokers, third party insurance providers and the like; and

WHEREAS, it is intended that this Trust shall qualify as a single employer employee welfare benefit plan under the applicable provisions of the Employee Retirement Income Security Act of 1974, as amended ("ERISA").;

WHEREAS, the Trust Agreement has been previously amended to authorize the Trust to provide benefits to hourly retirees of Delphi and their dependants and survivors; and

WHEREAS, at the request of the 1114 Committee and the direction of the Court, the VEBA Committee has agreed to adopt amendments to this Trust Agreement to permit Current Retirees (as defined herein) and Enrolled Beneficiaries (as defined herein) to vote on the election of members of the VEBA Committee in the future as provided in this amended and restated Trust Agreement, and has amended and restated this Trust Agreement to provide for those elections.

NOW, THEREFORE, the VEBA Committee and 1114 Committee hereby establishTrustee amends and restates this Trust upon the following terms and conditionsAgreement as follows:

## ARTICLE I
### Definitions

1.    The following words and phrases shall have the meaning set forth below:

(A)    *VEBA Committee*:  The individuals named in Article XI herein, as duly authorized by the 1114 Committee, and their successors as appointed or elected from time to time pursuant to the terms of this Trust Agreement, acting collectively as Plan Administrator of the Plans and Trustee to sponsor, control and manage the operation and overall design and administration of the Trust and the Plans. As of the Amendment Date, the VEBA Committee consists of Den Black, Vince Wilson, Carol Harvey-Light, James Baker, Marianne Baker, and Joe McHugh, with one vacancy on the VEBA Committee.

(B)    *Benefits*:  The retiree welfare benefits described in the Plans.

(C)    *Company*:  Delphi Corporation, its successor in interest DPH, Inc., and its direct, indirect subsidiaries, and affiliated entities together with their successors in interest.

(D)    Investment Manager:  An entity to be selected by the VEBA Committee to manage any assets held by the Trust and who is either:

(i)    an investment adviser registered as such under the Investment Advisors Act of 1940 (hereinafter "Act"); or

(ii)    a bank, as defined in the Act; or an insurance company qualified to manage, acquire, or dispose of any asset of an employee benefit plan under the laws of more than one State.

2

(E)   *Third Party Administrator ("TPA")*:   A qualified entity or qualified person appointed by and utilized by the Trust and agreed to by the 1114 Committee, unless the 1114 Committee has been dissolved or discharged by the court, to administer the Benefits, thereafter as deemed appropriately necessary and/or beneficial to the Trust..

(F)   *Member*: A member of the VEBA Committee.

(G)   *Current Retirees*:   Are Delphi Salaried Retirees (their spouses or eligible dependents) who are receiving a Delphi pension benefit under the Delphi plan and whose: (1) retiree benefits were sought to be eliminated and/or reduced by Delphi or (2) who were receiving or eligible to receive subsidized retiree benefits (as that term is defined in Section 1114 of the Bankruptcy Code) from Delphi prior to or on April 1, 2009.

(H)   *Future Retirees*:   Are Delphi Salaried Retirees (their spouses or eligible dependents) who retired on or after April 2, 2009 under a Delphi plan and do not otherwise qualify as a Current Retiree.

(I)   *Other Retirees*:   Are Delphi Salaried Retirees (their spouses or eligible dependents) who are receiving a Delphi pension benefit under a Delphi plan and do not otherwise qualify as a Current Retiree or Future Retiree.

(J)   *Participant*: A Current Retiree, Future Retiree (as those terms are defined in above) or other person deemed to have eligibility in the Trust in the event that eligibility is expanded as set forth herein, including without limitation by the Trust's agreement to provide benefits for hourly retirees of Delphi, their spouses, survivors and dependents.

(K)   *Plans*:   The retiree benefit plans established by the VEBA Committee, setting forth the terms and conditions of retiree welfare benefits for Participants, as may be amended from time to time.

(L)   *Trustee*: Collectively, the VEBA Committee.

(M)   *Trust Fund*: Any funds, except funds held in or allocated to the Hardship Fund or to the Set-Up Fund, held by the Trustee hereunder, increased by investment earnings thereon and reduced by investment losses thereon, reasonable administration expenses and payments for Benefits.

(N)   *Hardship Fund*:   The Hardship Fund shall consist of the $1,000,000 Hardship Fund payment to be made by Delphi to the Trust. The Hardship Fund shall be used for the purposes set forth herein. The Hardship Fund shall be accounted for separately from the Trust Fund, but may be kept in the same account and commingled with the Trust Fund provided that a separate accounting for the Hardship Fund corpus shall be maintained. In the event that the Hardship Fund is commingled with the Trust Fund and any interest, investment returns, or other increases to the overall fund are realized, the Hardship Fund shall not be increased. All costs associated with the administration of the Hardship Fund (such as postage) shall be deducted from the Hardship Fund.

(O)   *Set-Up Fund*: The Set-Up Fund shall consist of the $500,000 payment to

3

be made by Delphi to the Trust. The Set-Up Fund shall be used to pay reasonable fees and costs incurred to establish the Trust, roll out benefits and to administer the Trust, whether said fees and costs be used for professional services, to reimburse VEBA Committee Members or the 1114 Committee, for the costs incurred by them in the administration of their duties as set forth herein or otherwise as necessary to affect the goals of the Trust. As expressly set forth in the Settlement Agreement, the VEBA Committee may elect at any time to transfer the corpus of the Set-Up Fund to the Trust Fund if it determines that the Purpose of the Trust would be more effectively met by such an election. The recommended goal is that the Trustee will manage costs so that a substantial portion of the Set Up Funds areis available for said transfer.

(P)     *Bylaws*: The Bylaws of the VEBA Trust ("Bylaws") are the BYLAWS OF DELPHI SALARIED RETIREES ASSOCIATION (DSRA) BENEFIT TRUST dated 4/21/09 duly authorized by the 1114 Committee and the VEBA Committee, as may be amended from time to time pursuant to the terms of this Trust or the Bylaws. A copy of the Bylaws are attached hereto and incorporated herein as Exhibit C. In the event of any conflict between the Bylaws and the Trust Agreement, the Trust Agreement shall control.

(Q)     *Voting Beneficiary:* A Current Retiree, as defined herein, or a participant who is enrolled in any of the Plans administered by the Trust (an "Enrolled Participant").

## ARTICLE II
## Creation Of Trust and Purpose

1.      There is hereby created and established the Delphi Voluntary Employee Benefit Administration Trust. The Trust shall be located in the State of Michigan and shall have such address as the VEBA Committee shall establish from time to time. The initial address for the Trust is reflected in Exhibit B hereto.

2.      The Purpose of the Trust, subject to the eligibility criteria and using the defined terms set forth in Article IX below or otherwise herein, is to provide health insurance, prescription drug, vision care, dental, and life insurance benefit plans for Retirees; to provide supplements for insurance premiums from the Trust Fund; and to provide disbursement of funds from the Hardship Fund for the benefit of Current Retirees as defined below:

(A)     All Retirees (and, as authorized by the Trust, hourly retirees of Delphi, their spouses, survivors, and dependants) will have the ability to participate in the benefit plans that will be sponsored by the Trust, however, any funds received from the settlement reached with Delphi Corporation in the Bankruptcy Cases shall only be applied to supplement health care insurance premiums for Current Retirees or to provide payments to Current Retirees through the Hardship Fund pursuant to the guidelines set forth herein. Future Retirees and Other Retirees are not eligible to participate in the Trust Fund or the Hardship Fund.

(B)     The Hardship Fund should be managed to last as long as possible. The recommended target is, twenty-four months from the date of the first Hardship Fund Payment.

(C)     The Trust Fund will provide subsidies to Current Retirees. Those subsidies will take into consideration the burden of health care insurance cost and the type of insurance plans available to the Current Retirees when establishing subsidies. For retirees not

eligible for Medicare coverage the subsidies will be the same amount, regardless of age. Then for retirees that are eligible for Medicare the subsidy will not exceed 30 % of the subsidy for retirees not eligible for Medicare. If Delphi Corporation should default in the payments to the Trust Fund then the intent will be for the Trustee to make the monies received for the Trust Fund to last as long as reasonably possible.

(D)    The Trust Fund should be managed to last as long as possible and with appropriate adjustments that may have to be made to the subsidies based on changes in legislation that govern the VEBA Funds such as ERISA, changes in qualifications for Health Care Tax Credits or changes in the Current Retirees qualifications for those plans or regulations.

(E)    It is intended that this Trust shall qualify as a tax exempt voluntary employees' benefit association under section 501(c)(9) of the Internal Revenue Code of 1986, as amended (the "Code").

3.    The Trust is further empowered to expand the qualifications for participation in the Trust to other retirees in the U.S. Automotive Industry if permitted by section 501(c)(9) of the Code or other applicable laws, provided such an expansion is determined to be prudent and in the best interests of the Retirees as determined by the VEBA Committee, and provided further that no such retirees will be eligible to receive premium supplements from the Trust Fund or to participate in the Hardship Fund. Expanded qualifications for participation will be done under appropriate modifications to this trust agreement as agreed at that time.

## ARTICLE III
### Acceptance of Trust

The VEBA Committee shall be collectively the Trustee (the "Trustee") of the Trust. The Trustee accepts the Trust hereby created and covenants to hold or to direct the holding of all cash and other property which it may receive hereunder upon the terms of and in accordance with the conditions hereinafter set forth.

## ARTICLE IV
### Eligibility for Benefits

1.    The VEBA Trust is to benefit only the salaried retirees (including any and all surviving spouses, eligible spouses and eligible dependents) of Delphi who:

(A)    Are "**Current Retirees**" as defined above;

(B)    Current Retirees, Future Retirees and Other Retirees may collectively be referred to as the "Eligible Retirees". Only individuals meeting the aforementioned criteria shall be the Participants unless the Trust is modified as allowed herein consistent with applicable law and in the best judgment of the VEBA Committee. Delphi retirees do not have to be in the VEBA to participate in the Hardship Fund, but they must be a Current Retiree and have been receiving benefits prior to April 1, 2009.

(C)    Only Current Retirees are eligible to receive premium supplements from the Trust Fund or the Hardship Fund. Future Retirees and Other Retirees are eligible to

5

participate in the Benefit Plans and to otherwise enjoy the benefits of participating in the Trust, except that they are not eligible to receive premium supplements from the Trust Fund and are not eligible to participate in the Hardship Fund.

<u>Notwithstanding the foregoing, as determined by the Trustees, hourly retirees of Delphi, their spouses, dependents and survivors are eligible to participate in the Plans administered by the Trust.</u>

2.      Any and all Hardship Fund eligibility determinations shall be solely and exclusively the responsibility of the Trustee in accordance with the terms of this Trust Agreement (and Exhibits thereto). In any such decisions the Trustee shall be bound by a reasonable interpretation of the Purpose of the Trust. Individual requests for consideration to participate in the Trust must be made in writing to the VEBA Committee at the address herein for Notice. Within 60 days from receipt of such a request the Trustee shall send a written determination of eligibility using the standards set forth herein for eligibility or the standards prevailing at the time of any such determination if amendment has been made to the Trust. An individual may file an appeal of any such decision within 90 days after receipt of the Trustee's decision regarding eligibility, stating with specificity why the individual believes that he or she is eligible to participate in the Trust. The Trustee shall respond to such an appeal within 60 days. The timeframes and/or processes set forth herein may be modified by a majority vote of the VEBA Committee. To be clear, determinations of eligibility to participate in the Trust are separate and apart from determinations of eligibility to participate in particular healthcare plans that may be offered by the VEBA Trust. Said determinations are governed by the terms of the particular Plan documents and applicable State and Federal law.

## ARTICLE V
## Contributions and Funding

1.      Contributions:

(A)     *The Trust Fund*. The Trust Fund shall be funded by contributions from the Company amounting to the aggregate amount of $7,250,000 and/or future contributions from Participants, and all such contributions shall be in-evocable. Company contributions to the Trust Fund shall be in cash as provided in the Settlement Agreement. All contributions so received, together with the income therefrom and any other increments thereon, shall be held, invested, reinvested and administered by the Trustee pursuant to the terms of this Trust Agreement, without distinction between principal and income. The Trustee, in cooperation with the 1114 Committee, as long as it shall be active, shall have the enforcement power to require the Company to make or cause to be made contributions to the Trust in accordance with the terms of the Settlement Agreement.

(B)     *The Hardship Fund*. The Hardship Fund shall be funded by a contribution of $1,000,000 from the Company in cash as provided in the Settlement Agreement. The Hardship Fund shall be allocated as set forth herein. The Trustee, in cooperation with the 1114 Committee, as long as it shall be active, shall have the enforcement power to require the Company to make or cause to be made contributions to the Trust in accordance with the terms of the Settlement Agreement.

6

(C)    *The Set-Up Fund.*  The Set-Up Fund shall be funded by a contribution of $500,000 from the Company in cash as provided in the Settlement Agreement.  The Set-Up Fund shall be allocated as set forth herein.  The VEBA Committee is specifically empowered to use funds from the Set-Up fund to benefit the Trust by transferring such funds as it seems appropriate and in the best interests of the Current Retirees into the Trust Fund The Trustee, in cooperation with the 1114 Committee, as long as it shall be active, shall have the enforcement power to require the Company to make or cause to be made contributions to the Trust in accordance with the terms of the Settlement Agreement.

2.      *Investment Guidelines*:  The VEBA Committee shall adopt investment guidelines governing the investment of the Trust Fund and, the Hardship Fund.  Said guideline(s) may be amended from time to time as the Trustee deems appropriate to best effectuate the Purpose of the Trust.  All such investments shall be consistent with ERISA and any other applicable laws and regulations.

3.      *No Reversion or Prohibited Inurement*:  No part of the Trust Fund shall revert to or inure to the benefit of any organization or individual other than through the payment of Benefits and reasonable administration expenses of the Trust.

## ARTICLE VI
### Trustee

1.      *General Duties of Trustee*:

(A)    The Trustee shall hold, manage, invest and reinvest the Trust Fund through duly appointed and retained fiduciary agents as described herein.  The Trustee does not guarantee the solvency of the Trust Fund;

(B)    The Trustee shall discharge its duties solely in the interest of the Participants,

(i)    and for the exclusive Purpose of providing Benefits and defraying the expenses of administering the Trust in keeping with the Purpose of the Trust;

(ii)    with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims; and

(iii)    in accordance with this Trust Agreement in so far as it is consistent with ERISA.

(C)    The Trustee shall hold, manage, invest and reinvest the Hardship Fund and shall distribute the corpus of the Hardship Fund consistent with the terms of the Hardship Plan incorporated herein as Exhibit D.

2.      *Investment Powers of Trustee*:  The Trustee (directly or through the appointed Investment Manager) is authorized and empowered:

7

(A)    To invest and reinvest the Trust Fund, Hardship Fund, and any accretions thereto, without distinction between principal and income, in cash or securities, including but not limited to stock, common or preferred, interests in regulated investment companies bonds and mortgages, and other evidences of indebtedness, and deposits in a bank or other financial institution under state or Federal supervision, which bear a reasonable rate of interest. In making such investments, the Trustee shall not be restricted by any state law or state statute designating investments eligible for trust funds unless constrained or governed by ERISA.

(B)    The Trustee may not (and none of its VEBA Committee Members will) receive direct or indirect consideration for any investment or investment decision made on behalf of the Trust.

(C)    The Trustee is bound by the terms of the Bylaws agreed to contemporaneously with this Trust Agreement by the VEBA Committee and the 1114 Committee unless any such terms conflict with the terms of this Trust Agreement, in which case the terms of the Trust Agreement have primacy. The VEBA Committee may amend the Bylaws as it sees fit in the administration of its duties to the Trust as set forth herein by a super-majority vote of the VEBA Committee, any time after the 1114 Committee has been dismissed by the Court, or make changes with the written approval of the 1114 Committee.

(D)    The Trustee is further empowered to hold un-invested, from time to time, without liability for interest thereon, such amounts as are deemed necessary and/or prudent for the cash requirements of the Trust, and to keep such portion of the Trust Fund in cash or cash balances (and/or other liquid instruments) as the Trustee may from time to time deem to be in the best interests of the Trust Fund;

(i)    To utilize a general disbursement account, i.e., in the form of a demand deposit and/or time deposit account, for distributions from the Trust, without incurring any liability for payment of interest thereon, notwithstanding the Trustee's receipt of income with respect to float involving the disbursement account;

(ii)    To hold assets of the Trust Fund and Hardship Fund in cash or equivalents, government securities, or straight debt securities in varying proportions when and for so long as, in the opinion of the Trustee, prevailing market and economic considerations indicate that it is in the best interest of the Trust Fund to do so.

(E)    To purchase annuity contracts on the lives of Participants.

(F)    To exercise investment discretion under this Section in a restricted manner, due to the liquidity needs of the Plans, consistent with the funding policy.

(G)    Notwithstanding the foregoing, in no event shall the Trustee or Investment Manager make any investment prohibited by ERISA. Further, the Trustee and/or Investment Manager: (a) shall not allow investment by the Trust Fund, directly or indirectly, in nor allow the use derivatives or futures contracts, except in a collective investment vehicle that does not employ derivatives or futures contracts as a principal part of its investment strategy; and (b) the Trust Fund and/or Hardship Fund shall not invest in investment funds exempt from registration under the Investment Company Act of 1940 by reason of 3(c)(1) or (3)(c)(7) that utilize leverage

or long-short strategies.

3.      *Administrative Powers of Trustee*:  The Trustee shall be further authorized and empowered, in its discretion, to exercise any and all of the following rights, powers and privileges with respect to the Trust Fund:

(A)     To register any investment held in the Trust in its own name or in the name of one or more of its nominees and to hold any investment in bearer form or other negotiable form, to utilize the services of a depository clearing Corporation (such as the Depository Trust Company) to the extent permitted by law, and to combine certificates representing such investments with certificates of the same issue held by the Trustee in other fiduciary capacities, but the books and records of the Trustee shall at all times show that all such investments are part of the Trust.

(B)     In compliance herewith, the Trustee may give to any registrar, transfer agent, or insurer, including but not limited to corporations, state, or Federal authorities or agents, any bond or other guarantee which may be required, provided the Trustee shall be exempt to the maximum extent permissible by applicable law from any need to post a bond.  Any registrar, transfer agent, or insurer shall be indemnified by the Trust and held harmless from any action either at law or in equity for acting upon or in compliance with the instructions received in writing from the Trustee, unless the damages, liability, costs, expenses or claims arise from the other party's negligence or willful misconduct.

(C)     To vote upon any stocks, bonds or other securities; to give general or special proxies or powers or attorney with or without power of substitution; to exercise any conversion privileges, subscription rights, or other options, and to make any payments incidental thereto; to oppose or to consent to, or otherwise participate in, corporate reorganizations or other changes affecting corporate securities, to delegate discretionary powers, and to pay any assessments or charges in connection therewith; and generally to exercise any of the powers of an owner with respect to stocks, bonds, securities, or other properties held as part of the Trust Fund.

(D)     To settle, compromise, or submit to arbitration any claims, debts, or damage due or owing to or from the Trust Fund or Hardship Fund, to commence or defend suits in any federal or state Court having jurisdiction over a particular matter or legal or administrative proceedings, and to represent the Trust Fund or Hardship Fund in all legal and administrative proceedings, provided, however, the Trustee shall not be obligated to take any action or to appear and participate in any action which would subject it to expense or liability unless it is first indemnified in an amount and manner satisfactory to it, or is furnished with funds sufficient, in its sole judgment, to cover the same.

(E)     To borrow money for the purposes of the Trust from any person or entity (other than the Trustee in its individual capacity or other party in interest unless authorized by ERISA) and to pledge assets of the Trust Fund as security for repayment.  The maximum that can be borrowed is 25% in totality of the asset value of the Trust.

(F)     To employ suitable agents, advisors, accounts and counsel and to pay their

reasonable expenses and compensation from the Trust Fund, Set-Up Fund or Hardship Fund, as appropriate.

(G)    To make, execute, acknowledge, and deliver any and all documents of transfer and conveyance and any and all other instruments that may be necessary or appropriate to carry out the powers herein granted.

(H)    Subject to the limitations reflected herein, do any and all acts with respect to the assets held in the Trust that an owner of any asset held by the Trust could perform.

(I)    In addition to the foregoing powers, the Trustee shall also have all of the powers, rights and privileges conferred upon trustees by the fiduciary law of the State of Michigan to the extent such law is not preempted by Federal law, and the power to do all acts, take all proceedings, and execute all rights and privileges, although not specifically mentioned herein, as the Trustee may deem necessary to administer the Trust Fund, Set-Up Fund or Hardship Fund and to ~~earn/~~carry out the Purposes of this Trust.

4.    *Authority of Trustee*:  Persons shall be under no obligation to ascertain the power and authority of the Trustee to make any sale, transfer, assignment, or investment of the whole or any part of the Trust Fund at any time held hereunder, or to make any contract in relation thereto, nor shall any insurance company be required to ascertain the power or authority of the Trustee to apply for and purchase any insurance or annuity contract, and any such person or company may rely upon any factual information furnished by the Trustee in connection therewith.  All parties dealing with the Trustee with respect to the Trust shall have the right to assume that the Trustee has full power and authority in all respects to deal with the Trust Fund, Set-Up Fund or Hardship Fund and shall not be affected by any notice to the contrary, and no purchaser shall be required to see to the application of the purchase money.

5.    *Trustee's' Compensation and Expenses and Taxes*:  The Trustee and the 1114 Committee shall be reimbursed for any reasonable, direct out-of-pocket expenses it (or its individual VEBA Committee Members), incur in setting up and/or administering the Trust, including, but not limited to, reasonable counsel fees and/or other professional fees incurred by it as Trustee that are timely provided for reimbursement.  Such compensation and expenses shall be paid from the Set-Up Fund or the Trust Fund as determined by the VEBA Committee.  All taxes of any kind and all kinds whatsoever that may be levied or assessed under existing or future laws upon, or in respect of, the Trust Fund, Set-Up Fund or Hardship Fund or their income, shall be paid from the Trust Fund, Set-Up Fund or Hardship Fund as deemed appropriate by the Trustee.

## ARTICLE VII
### Distributions and Disbursements

1.    *Authority regarding distributions and reporting*:  The Trustee is authorized to disburse to itself from the Trust Fund, Set-Up Fund or Hardship Fund, as it deems appropriate, its fees and to reimburse itself for the reasonable costs incurred in the performance of its duties, as well as any claim for indemnity under this Trust Agreement, consistent with Article VI, Section 5 and Article X, Section 2, of this Trust Agreement.  The Trustee is authorized to make

disbursements from the Trust Fund, Set-Up Fund or Hardship Fund, as it deems appropriate, to pay the reasonable expenses and VEBA Committee Members in the performance of their duties for the Trust, including the reimbursement (or direct payment) of the reasonable costs and fees incurred to retain actuaries, consultants, attorneys, accountants and other professionals reasonably necessary to assist in the performance of their duties hereunder. The Trustee shall maintain and/or cause to be maintained descriptions of all fees and expenses paid and/or incurred by the Trust Fund. Said documentation shall contain (at a minimum) the full amounts of fees and expenses, a narrative describing the Purpose of each fee and/or expense, and shall contain the location of any meetings and/or Purposes of any travel expenses.

2.    *Payment for Plan Benefits*:  The Trustee will cause payments from the Trust Fund to be utilized to pay Benefits under the Plans.  The Trustee will cause payments from the Hardship Fund to be utilized to provide direct subsidies to third party insurers with respect to health care premiums otherwise payable by Current Retirees, individually or as a group, as deemed appropriate pursuant to the guidelines set forth herein for the Hardship Fund and/or to be applied toward the premiums of any health care plan offered through this VEBA.

3.    *Delegation of Authority*:  Written directions from a person who has been authorized in writing to act as an agent for the Trustee shall be treated as directions by such Trustee with respect to such matters as are within the scope of authority that the Trust has delegated to such designated agent.

## ARTICLE VIII

~~ARTICLE VIII~~
## Trust Accounts

1.    *Right to Set Up Separate Accounts*:  The Trustee shall have the right, but not the obligation, to allocate the assets within the Trust Fund, Hardship Fund and/or Set-Up Fund for accounting Purposes, and to establish separate or combined accounts for each of the Plans or Funds to better effectuate or administer the Trust, as determined in the sole discretion of the Trustee.  The funds allocated to such accounts and sub-accounts may be commingled for investment Purposes.  The Trustee may further eliminate one or more accounts and transfer funds between accounts as needed to prudently manage the Trust.

2.    *Record Maintenance*:  The Trustee shall keep or cause to be kept accurate and detailed accounts with respect to the assets constituting the Trust Fund, including but not limited to, records with respect to contributions to the Fund, disbursements from the Fund, the purchase or sale of assets, the cost and fair market value of assets retained, and the income, gain or loss derived periodically from the investments held in the Trust Fund.  All related books and records maintained by the Trustee and/or related information and documents shall be open to inspection by any and all individual members of the VEBA Committee and the 1114 Committee, as long as it will be active.

3.    *Designation of Additional Trustees*:  The VEBA Committee may designate an additional Trustee (with some or all Trustee powers enumerated herein) to act hereunder. However, the designated additional Trustee will be governed by the VEBA Committee who will

have total responsibility as the Trustee.

4.    *Documents Evidencing Trusteeship*:  In the event any additional Trustee is appointed, is removed or resigns, any such appointment, removal or resignation must be in writing.

## ARTICLE IX
## Protection of the Trustee

1.    *Indemnification*:  No person who serves on the VEBA Committee and/or in the capacity as Trustee shall be personally liable for any good faith act taken or omitted, nor for an act taken or omitted by any agent, employee, attorney, or service provider selected with reasonable care, nor for any act taken or omitted without his or her knowledge or consent by any other Member who serves on the VEBA Committee or as Trustee, nor for any loss incurred through investment of the Trust Funds or failure to invest, provided however, that nothing herein shall relieve a fiduciary from responsibility or liability of responsibility, obligation or duty imposed by ERISA.

2.    The VEBA Committee (serving as Trustee) and Members shall be indemnified and held harmless by the Trust from and against any and all liability to which the Trustee or any individual VEBA Committee Member may be subjected as a result of this Trust Agreement, including all fees and expenses reasonably incurred in its defense or in the defense of individual Committee Members, except to the extent the damages, liability, costs, expenses or claims directly arise from gross negligence or willful misconduct or to the extent prohibited by ERISA. The indemnification provided to the Trustee hereunder shall also apply to any liability arising from the acts or omissions of any predecessor trustee or other fiduciaries of the Trust.  Subject to the foregoing, the Trustee shall be liable to the extent it has contributed to such liability incurred by any other fiduciary of the Trust; and each shall be entitled to contribution from the other on the basis of the judicially determined comparative fault of each party causing the loss, liability and/or expense.

(A)    In the event that the Members of the VEBA Committee or any of them are named as defendants in a lawsuit or proceeding involving the Plans or the Trust Fund, Set-Up Fund and/or Hardship Fund, the Members of the VEBA Committee and/or the Trustee generally shall be entitled to receive on a current basis indemnity payments provided for under this Article, however:  if a final judgment entered in the lawsuit or proceeding holds that the VEBA Committee Member or Trustee is guilty of gross negligence or willful misconduct or has breached their fiduciary responsibility under ERISA with respect to the Plans or the Funds, such person or persons shall be required to refund the indemnity payments that he or she has received.

## ARTICLE X
## Right to Amend or Terminate

1.    *Termination*:  This Trust shall continue for such time as may be necessary to accomplish the Purpose for which it was created, provided that continuation of the Trust is fiscally practicable.  The Trust may be terminated by the VEBA Committee if and only if the goals of the Trust can no longer be effectuated and/or pursuant to the orderly wind-down of the

Trust when it is expected that the Trust Fund will be exhausted within a reasonable future time and the costs of maintaining the Trust Fund outweigh the benefits of maintaining same. Upon termination of the Trust, any assets which are not needed to discharge Trust liabilities shall be distributed to the then living Current Retirees in conformance with the allocation of benefits as previously administered and pursuant to the best judgment of the VEBA Committee.

2.      *Liquidation*: Upon termination of the Trust, the Trustee shall hold the Trust Fund, Hardship Fund and/or Set-Up Fund until said Funds are completely exhausted by paying Benefits and paying the reasonable expenses of the Trust, including expenses involved in the termination. Any remaining assets shall be distributed to or for the benefit of the Participants in an equitable manner determined at the sole discretion of the VEBA Committee.

3.      *Right to Amend*: The VEBA Committee may, from time to time, amend, in whole or in part, the provisions of this Trust Agreement; provided, however, that no such amendment may permit any part of the Trust Fund to be used for or diverted to Purposes other than those specified in the Purposes of Trust expressed herein. Further, the VEBA Committee may not modify Article IX herein to lower the threshold of Trustee culpability nor may it expand or narrow the class of eligible retirees reflected in Article IV, paragraph 1 except within the strict confines of the discretion granted thereunder. Notwithstanding any provision of this Trust Agreement, the VEBA Committee may not modify Article XI regarding the terms of service of VEBA Committee members, the removal and replacement of VEBA Committee members, the election of VEBA Committee members, the providing of notice of changes to the Trust Agreement, Bylaws, except (A) as required by future changes to applicable law, or (B) as authorized by order of a Federal District Court of competent jurisdiction. For the avoidance of doubt, if there is any significant uncertainty as to the requirements of applicable law, the VEBA Committee shall seek an order of a Federal District Court of competent jurisdiction before seeking to modify those provisions of Article XI.

### ARTICLE XI
### Procedures for VEBA Committee

1.      Composition of VEBA Committee: The VEBA Committee shall be comprised of ~~no less than five~~seven (5~~7~~) individuals ~~and no more than nine (9)~~, unless seven individuals. ~~The initial VEBA Committee shall consist of nine (9) individuals. This number may be reduced upon a majority vote~~are not willing to serve, in which case it shall be comprised of fewer individuals; provided, however, that the vacant seats shall be up for election (for partial terms) at the next annual election to permit returning the size of the VEBA Committee to seven (7) individuals. At no time while serving as a Member of the VEBA Committee, shall any Member be employed by and/or otherwise act as an agent, employee or consultant of or to the Company.

2.      ~~*Initial Designation: The initial*~~ *as of the Amendment Date*: As of the Amendment Date, the VEBA Committee ~~shall consist~~consisted of the following ~~nine~~six (9~~6~~) named Members, with one vacancy:

      (A)      Den Black;

      (B)      Carol Harvey-Light;

(C)    Vincent Wilson;

(D)    ~~John Brooks~~Jim Baker;

(E)    ~~John Norris~~Marianne Baker;

~~(F) Richard Strusienski, Jr.;~~

(F)    ~~(G) Richard Davis~~Joe McHugh;

~~(H) Patricia Lott; and~~

~~(I) Elaine Hofius~~

The above identified VEBA Committee members were <u>either</u> duly elected and appointed by the 1114 Committee as part of the scope of its duties as specifically set forth in the Bylaws <u>or were appointed by the VEBA Committee itself after resignations, vacancies, and removals of Members by the VEBA Committee.</u>  The VEBA Committee may also appoint non-voting Ex-Officio members of the VEBA Committee as it deems necessary and appropriate to assist it in carrying out its duties under the Trust.  Ex-Officio members of the VEBA Committee shall have no right to vote on any matters and may not act on behalf of the Trust or the VEBA Committee unless specifically authorized in writing to do so by a Chairperson of the VEBA Committee.

3.    *Term of Office, Officers, Succession<u>; voting by Voting Beneficiaries</u>*:  The term of office of the VEBA Committee Members and the selection ~~and duties of the Officers is set forth in the Bylaws, as may be amended from time to time pursuant to the terms of the Bylaws. Succession planning and election of new~~<u>of those</u> VEBA Committee Members ~~will be the responsibility of the 1114 committee until they have been dismissed by the court and thereafter becomes the responsibility of the DSRA Board through member voting.~~<u>is as follows:</u>

(A) *Election of Trustees/VEBA Committee Members:*  Existing Members shall run, if at all, for the term of the seat they currently occupy.

Before the end of March 2011, the vacant seat shall be filled by an election by the Voting Beneficiaries for a three year term starting in April, 2011, and the seats currently filled by Den Black and Vince Wilson (for which they may not initially stand for reelection as described below) shall be filled by an election by the Voting Beneficiaries for a two year term.

Before the end of March 2012, the seat currently filled by Carol Harvey-Light shall be filled by an election by the Voting Beneficiaries (for which she may not initially stand for reelection as described below) for a two year term starting in April, 2012, and the seats currently filled by Jim Baker and Marianne Baker (for which they may not initially stand for reelection as described below) shall be filled by an election by the Voting Beneficiaries for a three year term.

Before the end of March 2013, the seat currently filled by Joe McHugh (for which he may not initially stand for reelection as described below), and the two seats currently filled by Den Black and Vince Wilson (and then filled their successors as elected in April 2011) shall be filled by an election by the Voting Beneficiaries for a three year term starting in April, 2013.

14

Before the end of March, 2014, the currently empty seat and the seat filled by Carol Harvey-Light (and then filled by her successor elected in April 2012) shall be filled by an election by the Voting Beneficiaries for a three year term, starting in April, 2014.

Before the end of March 2015, the seats currently filled by Jim Baker and Marianne Baker (and then filled by them or their successors as elected in April 2012) shall be filled by an election by the Voting Beneficiaries for a three year term, starting in April 2015.

Thereafter, elections shall be held at the expiration of the terms for which Members have been elected, for three year terms of office. In no event, may a future trustee (except as provided above, for the existing Members) serve for more than three years without standing for election unless the Trust is dissolved.

Notwithstanding any provision to the contrary, including without limitation the provision calling for open nominations, with respect to the first election cycle beginning in 2011 and ending in 2013 (that is, the elections in 2011, 2012, and 2013), no individual who is either a member of the VEBA Committee as of the date of November 16, 2010 or any individual who was a member of the VEBA Committee prior to November 16, 2010 will be eligible to be nominated for or otherwise to run for election to the VEBA Committee or to serve for those terms. Beginning with the elections in 2014, any current or former Member of the VEBA Committee (including those individuals) may stand for election and serve.

(B) *Removal of Trustees/Members.* Members may only be removed, with or without cause, but only by a vote of two thirds of the VEBA Committee, as then constituted after giving effect to any election that has occurred.

(C) *Replacement Members.* In the event of a vacancy on the VEBA Committee, whether from resignation, death, disability, removal or otherwise, the position shall be offered to the individual receiving the most votes at the most recent election (but not having been elected.) If that person accepts the position, that person shall become a Member and shall fill the vacant position. If that person refuses the position, the VEBA Committee shall appoint a successor, but in any event shall be subject to a ratification election for the remainder of the term he or she is appointed to at the next election date.

(D) *Election Procedures.* Any person not clearly ineligible under ERISA to serve as a trustee may stand for election by providing a written nomination to the VEBA Committee in the month prior to the election date, and the VEBA Committee shall provide at least one month's advance notice of the nomination deadline and the election process to all Enrolled Participants (and, by Web as set forth below, to all Voting Beneficiaries), to permit nominations in advance of any transmittal of ballots and acceptance of votes. The election procedures shall be fair, open, transparent, and shall include a fair opportunity for candidates (even those not currently on the VEBA Board) to communicate directly with those eligible to vote, and votes shall be counted by a third party (not the VEBA Committee or its counsel.) Six weeks prior to adopting election procedures for the April 2011 elections, the VEBA Committee shall provide the individuals who constituted the 1114 Committee as of the Amendment Date the detailed and specific draft election procedures for their review and comment and shall take those comments into account in adopting fair, open, and balanced election procedures.

(E) *Notice.* The VEBA Board shall provide to all Enrolled Participants written notice of all changes to the Trust Agreement, the Bylaws, and any changes to compensation of the Members, and shall provide a current copy of the Trust Agreement, the Bylaws the latest form 5500 and all compensation for the members on the website of the DSRA or such other publicly accessible website as is appropriate to provide notice to Voting Beneficiaries.

(F) *Notice to the Court.* This Amendment to the Trust Agreement shall be filed with the Court, to provide notice to the Enrolled Participants and Current Retirees of the changes to the Trust Agreement.

4.    *Meetings*:

(A)    The VEBA Committee may establish rules from time to time for the transaction of its business, and such rules may be set forth in the Bylaws. The Members of the VEBA Committee may appoint, in writing, committees with such powers as the VEBA Committee shall determine, may authorize one or more of their number or any agent to execute or deliver any instrument or make any payment on behalf of the VEBA Committee and may, at the expense of the Trust, retain counsel, employ agents and independent contractors and obtain clerical, medical, actuarial, legal and/or accounting services as the VEBA Committee may deem advisable to carry out its duties. In addition, the VEBA Committee may designate certain ministerial administrative functions to one or more persons or institutions pursuant to a written agreement formally expressing the nature of such function(s) and the limitations of any such grant of authority to act on behalf of the VEBA Committee.

(B)    The VEBA Committee shall hold meetings as frequently as is necessary to ensure the efficient administration of the Trust and Plans, but not less than three (3) meetings (in person or by telephone) during each calendar year. The Chairperson, or any two (2) Members, may call a special meeting of the VEBA Committee by giving at least four (4) business days' advance written notice of the time and place thereof to all other Members, provided the meeting is telephonic or has capacity for telephonic participation.

(C)    One Committee Member, or another individual so designated by the VEBA Committee, shall maintain minutes of all VEBA Committee meetings, but such minutes need not be verbatim. Copies of such minutes shall be provided to all Members and to such other parties as the VEBA Committee may designate.

5.    *Place of Meeting; Telephonic Meetings*: Meetings of the VEBA Committee may be held at any place designated in the notice of meeting. Meetings of the VEBA Committee may be held through any communications equipment if all persons participating can hear each other, and such participation in a meeting shall be considered presence at the meeting.

6.    *Quorum*: A majority of the Members of the VEBA Committee then in office shall constitute a quorum for the Purpose of transacting any business.

7.    *Vote of Members*:

(A)    Each Committee Member shall have one vote. Except as otherwise

specified in this Trust Agreement or the Bylaws, all actions of the VEBA Committee shall be by majority vote of those present or voting by proxy, at a meeting at which a quorum is present.

(B)    The vote of any absent Committee Member may be cast by proxy but said proxy shall be evidenced in writing, although it need not be writing in any prescribed form, i.e. to avoid unnecessary formality there is no required proxy form.

(C)    In addition to decisions made at meetings, except as otherwise provided herein, actions may be taken without a meeting by unanimous written consent of the Committee Members.

8.    *Compensation*: Unless Article IV, Section 8 of the Bylaws areis modified subject to the terms therein, Committee Members shall serve without compensation. A Committee Member, however, will be entitled to the reimbursement of reasonable expenses incurred by him or her in performing duties as deemed reasonable and necessary by the VEBA Committee.

9.    *Reporting*: The VEBA Committee is required to send at least one report each year to the Participants that, at a minimum, must reflect the general financial status of the Trust Funds (i.e. investment performance), the identification of the VEBA Committee Members, and other administrative plan issues that would be of material benefit if communicated to the Participants. The report must further provide an address for Participants to contact the VEBA Committee (with respect to non-Plan administration issues) and to inform the Participants that Government Reports and Returns, trust expense itemization and copies of the effective Trust Agreement will be made available for inspection and review upon reasonable notice.

## ARTICLE XII
### Powers adand Duties of the VEBA Committee

1.    *General*: The VEBA Committee shall be responsible for the administration, amendment and overall operation of the Trust and the Plans. Subject to the provisions of this Trust Agreement and applicable laws, the VEBA Committee shall have sole, absolute and discretionary authority to adopt such rules and regulations and take all actions that it deems desirable or necessary for the administration of the Trust, as long it does not conflict with the intent of the aforementioned "Settlement Agreement", to determine facts relating to participation in the Plans and Trust and to interpret and construe the terms of the Plans and Trust a. The decisions of the VEBA Committee will be conclusive, final and binding on all Participants and all other parties to the maximum extent allowed by law.

2.    *Benefits*:

(A)    *Establishment of Plans*. The VEBA Committee shall administer and/or cause to have administered the Retiree Benefit Plans to be created to effectuate the Purpose of this Trust, as may be amended from time to time by the VEBA Committee.

(B)    *Plans Must Be In Writing*. The VEBA Committee may make changes to the Plan Description Documents, but solely to effectuate the Purposes and intent of the Plans and this Trust. Nothing in the Plan Description Documents may be interpreted nor drafted to alter the terms of this Trust Agreement.

(C)    *Benefits*.    The Plans shall include benefits, co-pays, Participant contributions, and any other features that the VEBA Committee from time to time determines appropriate and desirable to the extent consistent with the intent of the Trust Agreement, as expressed in the Plan Documents. In altering the Plan Documents, the VEBA Committee shall take into account relevant circumstances, including, without limitation, the degree to which Participants as a group may obtain new and/or alternative resources or coverage sources, as well as the resources of the Trust Fund based upon expected contributions and investment returns. Benefits provided under the Plans shall be limited to those benefits permitted by Section 501(c)(9) of the Code.

(D)    *Method of Providing Benefits*.    Benefits under the Plans may be fully insured, partially insured or self-insured, as determined by the VEBA Committee from time to time. The cost of benefits under the Plans shall not exceed the amount expected to be available under the Trust. The Plans may provide for different programs for different groups of Participants. Subject to paragraph 2(b) above and the Purposes of the Trust, the VEBA Committee, in its sole discretion, shall decide the amount of subsidy for a Current Eligible Retiree as long as the Trust is in existence. The exercise of this discretion shall be limited to the design of the Plans and may not be used in making decisions regarding benefits for individual Participants (except in connection with claims for benefits under the terms of the Plans or in decisions relating to the Hardship Fund to effectuate its Purposes).

3.    *Investment Guidelines*:    The VEBA Committee shall establish investment guidelines for managing all or any part of the Trust Fund. In order to effectuate these guidelines, the VEBA Committee shall direct investment of Trust Fund assets by and through the appointment and counsel of an Investment Manager.

4.    *Government Reports and Returns*:    The VEBA Committee shall file (or caused to be filed) all reports and returns, including but not limited to, any IRS Form 5500 series and IRS Form 990 series, that are required to be made with respect to the Trust and the Plans.

5.    *Compromise or Settle Claims*:    The VEBA Committee may compromise, settle and release claims or demands in favor of or against the Trust or the VEBA Committee on such terms and conditions as the VEBA Committee may deem advisable.

6.    *Appointment of Administrator; Delegation of Authority*:    The VEBA Committee may appoint a third party to perform any of its administrative functions. The VEBA Committee may by written resolution delegate to any one or more Committee Members the authority to act on behalf of the full VEBA Committee to the extent set forth in the resolution. In conjunction with 1114 Committee's efforts to set up the VEBA Trust, the 1114 Committee may have entered into contracts for services. The VEBA Committee shall adopt and/or ratify such contracts as necessary. The VEBA Committee, moreover, shall seek to continue with said contracts unless and/or until the VEBA Committee deems said contracts or related commitments are no longer in the best interest of the Plan Participants in the exercise of the VEBA Committee's fiduciary responsibilities. Notwithstanding, nothing in this Trust Agreement other than the benefits created on behalf of the Plan Participants, is intended nor shall be construed as creating any third party beneficiary rights or obligations with respect to any Service Contracts or related commitments.

7.    *Consultation*:  The VEBA Committee may engage or consult with counsel or other advisors and, may direct payment of reasonable compensation from the Trust Fund and may take or may refrain from taking any action in accordance with or reliance upon the opinion of counsel or such advisors.

8.    *Reliance on Written Instruments*:  Each Member of the VEBA Committee shall be fully protected in acting upon any instrument, certificate or paper believed by him or her to be genuine and to be signed or presented by a duly authorized person or persons, and shall be under no duty to make any investigation or inquiry as to any statement contained in any such writing, but may accept the same as conclusive evidence of the truth and accuracy of the statements therein contained.

9.    *Bonding*:  The Members of the VEBA Committee shall be bonded in the amount required by Section 412 of ERISA and may be covered by liability insurance in accordance with Section 410(b) of ERISA.  To the extent permitted by applicable law, the costs of such bonding and insurance shall be expenses paid by the Trustee using Trust Funds.

## ARTICLE XIII
### Powers and Duties of Investment Manager

1.    The VEBA Committee shall appoint one or more Investment Managers for the Purpose of investing and/or reinvestment of all or any portion of the Trust Fund and/or the Hardship Fund.  The VEBA Committee shall prudently select and retain the Investment Manager, taking into account management fees and other transaction costs, along with other appropriate considerations.  An Investment Manager must present evidence of its qualifications as an Investment Manager under Section 3(38) of ERISA, and shall acknowledge in writing its appointment as a fiduciary of the Trust Fund.

2.    The Investment Manager shall have investment responsibility for that portion of the assets of the Trust Fund that it has been appointed to manage.  An Investment Manager that has been thus granted such responsibility shall have all of the investment powers enumerated in Article VI, paragraph 2 hereof.  The VEBA Committee shall have no duty to recommend any investment or reinvestment of the Trust Fund by or at the direction of such Investment Manager, nor shall the Trustee be charged with the duties imposed by Article VI, paragraph 2 to the extent any such grant of authority for the investment or reinvestment of the Trust Fund is granted to the Investment Manager.  Except to the extent provided by ERISA or under other applicable law, the Trustee shall not be liable or responsible for any loss resulting to the Trust Fund by reason of any investment or reinvestment or any non-investment pursuant to the provisions of this paragraph resulting from a good faith recommendation by the Investment Manager.

3.    The Investment Manager may only receive such compensation as is approved by the VEBA Committee.  Said compensation shall be paid from the Trust Fund and Hardship Fund and/or its investments proportionate to each Fund value as is customary in the investment industry.

## ARTICLE XIV
## Third Party Administrator

1.    *Appointment*:    The VEBA Committee can elect to use a Third Party Administrator. The Third Party Administrator shall, among other duties delegated by the VEBA Committee, serve as administrator for processing of claims for benefits under and in accordance with the Plans.

2.    *Compensation*:    The Third Party Administrator may only receive such compensation as is approved by the VEBA Committee and/or reflected in any Service Contract.

3.    *Duties and Responsibilities*:    The Third Party Administrator shall be responsible for administering the Benefits, including collecting and paying premiums and maintaining the necessary records for the administration of the Benefits. The specific duties and responsibilities of the Third Party Administrator shall be detailed in an agreement or agreements between the VEBA Trust and the Third Party Administrator.

## ARTICLE XV
## Miscellaneous

1.    *Fiduciary Duties*:    Except as otherwise provided herein, each fiduciary shall have only those powers, duties, responsibilities and obligations as are specifically allocated to it under the Trust Agreement and by the Trustee. Neither the Trustee nor any Committee Member shall have responsibility for the performance of any entity not specifically so allocated.

2.    *Benefits Not Guaranteed*:    The Trustee does not guarantee the payment of Benefits. Each Participant and beneficiary of a Participant shall look solely to the assets of the Trust Fund for payment of their Benefits. Nothing contained in the Trust or the Plans shall constitute a guarantee that the liquid assets of the Trust Fund will be sufficient to pay any Benefit to any person or make any other payment. Payments to be paid from the Trust Fund are limited to the liquid assets remaining in the Trust Fund at the time payment is made. Except for payments of Benefits under the Plans, no Participant shall receive any distribution of cash or other thing of Current or exchangeable value, either from the Trustee, on account of or as a result of the Trust Fund created hereunder.

3.    *Rights Are Not Created*:    Nothing appearing in or done pursuant to the Trust Agreement will be held or construed to give any person any legal or equitable right or interest in the Trust Fund, Set-Up Fund, Hardship Fund or any part thereof or distribution therefrom or against the Trustee, or its fiduciary professionals, except as expressly provided in the Trust Agreement or as provided in ERISA. No Participant, Current Retiree, Future Retiree or any other individual or group of individuals have vested rights on any kind to the Trust Fund, Set-Up Fund or Hardship Fund other than as a Current Retiree and only as strictly construed by the terms of this Trust Agreement.

4.    *No Alienation of Benefits*:    No benefit, right or interest of any person hereunder will be subject to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance or charge or to seizure, attachment or other legal, equitable or other process; and the Trust will not be liable for, or subject to, the debts, liabilities or other obligations of such person. In the event

of an attempt to anticipate, alienate, sell, transfer, assign, pledge, encumber or charge such benefit, right or interest, or to subject it to seizure, attachment or other legal, equitable or other process, such benefit, right or interest will immediately cease and terminate; but the VEBA Committee, in its sole discretion, may pay or apply for the benefit of such person or his family so much of such benefit, right or interest as it may deem advisable.

5.    *Destruction of Records*:  The Trustee is authorized to destroy correspondence, or other files, including but not limited to, correspondence of transmittal for checks, statements and account analyses, and correspondence dealing with terminated or deceased participants, after a period of six (6) years from the due date of any annual tax return with respect to each fiscal year of the Trust.

6.    *Headings*:  Headings and titles are for convenience only, and the text will control in all matters.

7.    *Applicable State Law*:  To the extent that state law applies, the provisions of the Trust Agreement will be construed, enforced and administered according to the laws of Michigan, without regard to the choice of law rules thereof.  Beneficiaries of the Trust further agree to bring any cause of action relating to and/or arising out of this Trust Agreement in the District Court of for the Eastern District of Michigan.

8.    *Notice*:  For the Purposes of this Agreement, telephone, telephone voice messaging, facsimile transmission, telex, electronic mail and other forms of telephonic or electronic communication, as well as all forms of oral communication, shall not be deemed to be "in writing" or "written;" provided, however, that an Instruction or any other notice or communication furnished via a facsimile transmission shall be deemed provided "in writing" if received by the person to whom such Instruction, notice or communication is addressed. Notwithstanding the foregoing, nothing in this Trust Agreement shall preclude the parties hereto from agreeing in writing to accept Instructions or communications in any other media.  Notice to the Trust itself, the VEBA Committee, the Trustees and/or the Members shall be sent to the address set forth in Exhibit B.   This addressee and recipient may be modified at the sole discretion of the VEBA Committee.

9.    *Counterparts*.  This Trust Agreement may be executed in any number of counterparts, any of which may be executed and transmitted by facsimile or other electronic means mutually acceptable to the parties hereto, and each of which will be deemed to be an original of this Trust Agreement and all of which, when taken together, will be deemed to constitute one and the same instrument.

[SIGNATURES ON NEXT PAGE]

~~EXECUTED as of the ___ day of April 2009~~      **~~Delphi   Committee   of   Retired   Employees~~
~~(1114 Committee)~~**

~~By:  James Frost~~

_____

~~By James Hagenbach~~

_____

~~By James Conger~~

_____

~~By W.  Ben Gifford~~

_____

~~By Cathy Carroll~~

_____

~~By Robert Todd Nicholson~~

_____

22

EXECUTED as of the —15th day of April 2009 ~~VEBA BOARD AS TRUSTEE~~November 2010

**VEBA BOARD AS TRUSTEE**

By: Den Black

_____

By: Carol Light

_____

By: Vincent Wilson

_____

By: ~~John Brooks~~Jim Baker

_____

By: ~~John Norris~~Marianne Baker

_____

By: ~~Richard Davis~~Joe McHugh

_____

By: ~~Patricia Lott~~

_____

By: ~~Elaine Hofius~~

_____

23

By:  Richard Strusienski, Jr.

KD_3086231_1.DOC

| Summary Report: Litera Change-Pro ML 6.5.0.177 Document Comparison done on 11/17/2010 11:30:11 AM | |
| --- | --- |
| **Style Name:** Default Style | |
| **Original Filename:** | |
| **Original DMS:** iw://IM-DMS/iManage/2430102/1 | |
| **Modified Filename:** | |
| **Modified DMS:** iw://IM-DMS/iManage/2427902/2 | |
| **Changes:** | |
| Add | 67 |
| Delete | 40 |
| Move From | 2 |
| Move To | 2 |
| Table Insert | 0 |
| Table Delete | 4 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| **Total Changes:** | 115 |