SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
155 North Wacker Drive
Chicago, Illinois 60606
John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036

Attorneys for DPH Holdings Corp., et al.,
   Reorganized Debtors

DPH Holdings Corp. Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

DPH Holdings Corp. Legal Information Website:
http://www.dphholdingsdocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - x
                     :
    In re                  :     Chapter 11
                     :
DPH HOLDINGS CORP., et al.,    :     Case Number 05-44481 (RDD)
                     :
                     :     (Jointly Administered)
        Reorganized Debtors.    :
                     :
- - - - - - - - - - - - - - - - - - - - - - - - - - - x

REORGANIZED DEBTORS' SECOND SUPPLEMENTAL REPLY TO RESPONSES OF
ATEL LEASING CORPORATION TO REORGANIZED DEBTORS' OBJECTIONS TO (I)
PROOF OF ADMINISTRATIVE EXPENSE CLAIM NUMBER 18427 AND (II) THE
ADMINISTRATIVE EXPENSE CLAIM ASSERTED IN THE MOTION
OF ATEL LEASING CORPORATION AT DOCKET NO. 6990

("SECOND SUPPLEMENTAL REPLY REGARDING ADMINISTRATIVE
EXPENSE CLAIMS OF ATEL LEASING CORPORATION")

DPH Holdings Corp. and certain of its affiliated reorganized debtors in the above-captioned cases (together with DPH Holdings Corp., the "Reorganized Debtors") hereby submit the Reorganized Debtors' Second Supplemental Reply To Responses Of ATEL Leasing Corporation To Reorganized Debtors' Objections To (I) Proof Of Administrative Expense Claim Number 18427 And (II) The Administrative Expense Claim Asserted In The Motion Of ATEL Leasing Corporation At Docket No. 6990 (the "Second Supplemental Reply"), and respectfully represent as follows:

<u>Preliminary Statement</u>

1.      Contrary to the plain and unambiguous language of the ATEL Stipulation,[1] ATEL asserts two arguments in its Supplemental Response[2] for why the plain language of the release provision does not control: (i) the release in the ATEL Stipulation is ambiguous and open to two separate interpretations and (ii) in the alternative, if the release in the ATEL Stipulation is not ambiguous, then ATEL should be permitted to present evidence of unilateral mistake in connection with the negotiation and execution of the ATEL Stipulation, with the hope of striking the release language negotiated between the parties.  (Supplemental Response ¶¶ 20-22.)  To the contrary, "[i]f the contractual language is unambiguous, courts must interpret and enforce the contract as written, because an unambiguous contract reflects the parties' intent as a matter of law." <u>In re Egbert R. Smith Trust</u>, 480 Mich. 19, 25 (2008); <u>see also</u> <u>Rory v. Continental Insurance Co.</u>, 473 Mich. 457, 468 (2005) (contracts are to be enforced as

---

[1]    Capitalized terms used and not otherwise defined herein have the meanings ascribed to them in the Reorganized Debtors' Supplemental Reply To Responses Of ATEL Leasing Corporation To Reorganized Debtors' Objections To (I) Proof Of Administrative Expense Claim Number 18427 And (II) The Administrative Expense Claim Asserted In The Motion Of ATEL Leasing Corporation At Docket No. 6990 (Docket No. 20776) (the "First Supplemental Reply").

[2]    Supplemental Response Of ATEL Leasing Corporation To Reorganized Debtors' Objections To (I) Proof Of Administrative Claim Number 18427 And (II) The Administrative Expense Claim Asserted In The Motion Of ATEL Leasing Corporation At Docket No. 6990 (Docket No. 20798) (the "Supplemental Response").

written); <u>DaimlerChrysler Corp. v. Wesco Distribution, Inc.</u>, 281 Mich. App. 240, 248 (Mich. Ct.

App. 2008) (quoting <u>Badiee v. Brighton Area Schools,</u> 265 Mich. App. 343, 351 (Mich. Ct. App.

2005) ("An unambiguous contract must be enforced according to its terms.")).

        2.      The release in the ATEL Stipulation is clear.  First, ATEL released all

claims relating to the ATEL Cure Proposal or Assumption and Assignment Objection.  Second,

ATEL released all claims "which the ATEL Releasing Parties have, ever had, or hereafter shall

have against the Debtors."  (ATEL Stipulation ¶ 3.)  Moreover, the parties did contemplate a

global release of all claims which arose before the date of the ATEL Stipulation, as reflected by

the carve-out in paragraph 6 for any claims "arising after [October 7, 2009]."  (ATEL Stipulation

¶ 6.)

        3.      This Court has already interpreted a substantially similar release provision

in these chapter 11 cases, and accordingly the law of the case supports the Reorganized Debtors'

position that the unambiguous terms of the release in paragraph 3 of the ATEL Stipulation

effectively releases ATEL's administrative expense claims.  (<u>See</u> Nov. 29, 2007 Hr'g Tr. at 49:4-

10 ("Hr'g Tr.") ("[I]t is a release not only of claims, which may be susceptible to a somewhat

narrow definition but might not apply to administrative expense claims . . . [b]ut also releases the

right to assert any liability of any kind or nature whatsoever including those arising under statute.

And of course, the basis for asserting an administrative expense is under Section 503(b) of the

Bankruptcy Code.").)  A copy of the relevant portion of the hearing transcript is attached hereto

as <u>Exhibit A</u>.  Moreover, the cases cited by ATEL to argue that broad releases are ambiguous if

the release does not specify in a recital each claim being released are inapposite.  Finally, a

unilateral mistake by ATEL in releasing its claims that arose prior to the date of the ATEL

Stipulation does not provide a basis for rewriting the terms of the contract.

<u>Argument</u>

4.    For the reasons set forth below, each of proof of administrative expense

claim number 18427 and the administrative expense claim asserted in the motion at docket

number 6990 should be disallowed and expunged in its entirety, and ATEL's motion at docket

number 6990 should be deemed moot because ATEL has not stated a valid claim (i.e. a

sufficiency hearing is appropriate).[3]

B.    <u>The ATEL Stipulation Releases The Claims.</u>

5.    If a contract is unambiguous on its face, its proper construction is a

question of law.  <u>Wilkie v. Auto-Owners Ins. Co.</u>, 469 Mich. 41, 47 (2003).  Pursuant to the

ATEL Stipulation, the release provides as follows:

> The ATEL Releasing Parties <u>further release and waive any right to assert any</u>
> <u>other claim, cause of action, demand, lien, or liability of every kind and nature</u>
> <u>whatsoever, including those arising under contract, statute, or common law,</u>
> <u>whether or not known or suspected at this time,</u> which relate to the ATEL Cure
> Proposal or Assumption and Assignment Objection <u>or which the ATEL Releasing</u>
> <u>Parties have, ever had, or hereafter shall have against the Debtors based upon,</u>
> <u>arising out of, related to, or by reason of any event, cause, thing, act, statement, or</u>
> <u>omission occurring before the date of this Stipulation.</u>

(ATEL Stipulation ¶ 3 (emphasis added).)  As discussed above, this Court has already ruled on

the validity of a substantially similar release at the Twenty-Fifth Omnibus Hearing in these

chapter 11 cases.  The arguments raised by ATEL in its attempt to inject ambiguity into a crystal

clear release run contrary to the law of the case.  In November 2007, this Court denied a motion

for administrative expense claim filed by Intermet Corporation.  (Hr'g Tr. 49-50.)  Previously,

Intermet Corporation expressly released all prepetition claims against the Debtors as a part of the

settlement of its proofs of claim numbers 14107, 14489, and 15770 (the "Interment Settlement

---

[3]    ATEL filed a motion at docket number 6990 that asserted amounts owed on account of postpetition lease
payments that arose before February 17, 2007 and proof of administrative expense claim number 18427 that
asserted amounts owed on account of postpetition lease payments that were due on or before May 31, 2009.

4

Agreement").[4]  At the hearing, this Court ruled that the release was "a release not only of claims,

which may be susceptible to a somewhat narrow definition but might not apply to administrative

expense claims . . . [b]ut also releases the right to assert any liability of any kind or nature

whatsoever including those arising under statute. And of course, the basis for asserting an

administrative expense is under Section 503(b) of the Bankruptcy Code."  (Hr'g Tr. at 49:4-10.)

Specifically, this Court ruled that because Intermet's claim was "very clearly related to and by

reason of a prepetition thing, the defining agreement, that gives rise to the right to the refund."

(Id. at 49: 21-23.)  And accordingly, "based on a reading of the settlement agreement, . . .

Intermet has released this claim."  (Id. at 50:3-4.)

       6.     In its attempt to avoid the plain and unambiguous language of the broad

release, ATEL asserts that "the recitals do not state that the parties intend to resolve any other

issues or claims." (Supplemental Response ¶ 20.)  Specifically, ATEL asserts that the intent of

the ATEL Stipulation "was to resolve solely the parties' disputes concerning the cure amount and

administrative expense claim for one group of equipment schedules."  (Supplemental Response ¶

9 (emphasis added).)  ATEL contradicts its interpretation regarding the intent of the ATEL

Stipulation later on in the same pleading, however, when it states that the ATEL Stipulation

"expressly contains a recital that 'the Debtors and ATEL have reached an agreement to settle and

resolve the ATEL Cure Proposal and the Assumption And Assignment Objection'."

(Supplemental Response ¶ 20 (emphasis added).)  The ATEL Cure Proposal, which is attached

---

[4]   The Intermet Settlement Agreement provided that Intermet Corporation:

   Release[s] and waive[s] any right to assert any other claim, cause of action, demand, or liability
of every kind and nature whatsoever, including those arising under contract, statute, or common
law, whether or not known or suspected at this time, which relate to the Claim and which the
Releasing Parties have, ever had, or hereafter shall have against the Debtors based upon, arising
out of, related to, or by reason of any event, cause, thing, act, statement, or omission occurring
before the Petition Date.

(See Docket No. 11075 Exh. B.)

hereto as <u>Exhibit B</u>, asserted a cure amount of $710,881.87, which arose under the very same

Leases described in the Supplemental Response and was not limited to the one group of

equipment schedules that ATEL asserts were released in the ATEL Stipulation.  Moreover,

paragraph 6 of the ATEL Stipulation contains an express carve-out from the broad release in

paragraph 3, further refuting ATEL's argument that the other provisions of the contract favor a

narrow reading of the release.  Paragraph 6 of the ATEL Stipulation states:

> Any claims <u>arising after the date of this Stipulation</u> or relating to outstanding
> postpetition obligations that are not yet due and payable in connection with ATEL
> contracts being in connection with ATEL contracts being assumed by the Debtors
> and assigned to the applicable buyer <u>shall either be (i) paid in the ordinary course
> or (ii) subject to the procedures set forth in the Modified Pan for the payment of
> Administrative Claims</u>.

(ATEL Stipulation ¶ 6 (emphasis added).)  Thus, the terms of the ATEL Stipulation itself

contemplate a broad release.

       7.      To support its assertion that the release is ambiguous, ATEL relies on

<u>Rickel & Assoc., Inc. v Smith</u>, 272 B.R. 74 (Bankr. S.D.N.Y. 2002).[5]  <u>Rickel</u> is not on point.  In

<u>Rickel</u>, the defendants "intentionally or recklessly provided . . . false information" and defrauded

the debtor-plaintiff and the creditors' committee into selling stock warrants owned by the debtor-

plaintiff to the defendants for much less than they were actually worth.  <u>Id.</u> at 82.

       8.      One of the defendants in <u>Rickel</u> attempted to rely on broad release

language contained in a settlement of an employment dispute between himself and the debtor-

plaintiff where bad faith and potential fraud were at issue.  Notably, the release language was

contained in a settlement agreement executed in June 2000, only three months after the sale in

---

[5]    The other cases upon which ATEL relies are also distinguishable.  <u>See</u> <u>Warden v. E.R. Squibb & Sons</u>, 840 F.
Supp. 203 (E.D.N.Y. 1993) (construing agreement so that it is legally enforceable); <u>Perritano v. Mamaroneck</u>,
126 A.D. 2d 623 (N.Y. App. Div. 2d Dep't 1987) (determining rights under collective bargaining agreement).

question and nearly <u>eight months before</u> the court appointed examiner filed its report examining the potentially fraudulent activity of the defendant. <u>Rickel</u>, 274 B.R. at 84. Moreover, another provision of the settlement agreement contained a waiver of rights, but the debtor (the releasing party) did not waive any rights pursuant to that provision. <u>Id.</u> at 86. Accordingly, the bankruptcy court found that the settlement agreement contained "facial ambiguity." <u>Id.</u>

9.      The ATEL Stipulation, on the other hand, was the result of good faith negotiations between sophisticated parties represented by counsel to reach the resolution of a commercial dispute. Moreover, there are no conflicting provision of the ATEL Stipulation and no allegations of underlying fraud. And unlike <u>Rickel</u>, where the party granting the releases may not have known of the claims it was releasing (or believed these claims were not valuable due to the misrepresentations of the defendant), the ATEL Stipulation contains a release of claims already asserted by ATEL at the time the ATEL Stipulation was signed.[6] Indeed, as explained above, the carve-out in paragraph 6 of the ATEL Stipulation reflects a knowledge of what was being released. Under Michigan law, the express terms of a release govern its scope <u>See Taggart v. United States</u>, 880 F.2d 867, 869 (6th Cir. Mich. 1989); <u>see</u> <u>also</u> <u>Locafrance U.S. Corp. v. Intermodal Sys. Leasing, Inc.</u>, 558 F.2d 1113, 1115 (2d Cir. 1977) (where a general release is given in a commercial dispute, and reflects the product of negotiation by parties represented by counsel, it is less likely that a court will find the broad language to be inadvertent or unintended.).

10.     Furthermore, ATEL's interpretation of the release would render large sections of paragraphs 3 and 6 of the ATEL Stipulation superfluous. Courts disfavor contract

---

[6]    Claims arising under the very same Leases that were asserted in Claim 18427 and the ATEL Administrative Claim asserted in the Motion were also asserted in the ATEL Cure Proposal.

interpretations that render provisions of a contract superfluous. See Klapp v United Ins. Group Agency, Inc., 468 Mich. 459, 468 (2003) ("A court must give effect to every word, phrase, and clause in a contract and avoid an interpretation that would render any part of the contract surplusage or nugatory."); see also Third Horizon Group V. Molitor & Molitor, Inc., 2001 Mich. App. LEXIS 1159, *9 (Mich. Ct. App. Aug. 24, 2001).  Specifically, ATEL asserts that the broad release only relates to the Assumption and Assignment Agreement and the ATEL Cure Proposal. According to ATEL's interpretation, the emphasized language would be superfluous:

> The ATEL Releasing Parties further release and waive any right to assert any other claim, cause of action, demand, lien, or liability of every kind and nature whatsoever, including those arising under contract, statute, or common law, whether or not known or suspected at this time, which relate to the ATEL Cure Proposal or Assumption and Assignment Objection <u>or which the ATEL Releasing Parties have, ever had, or hereafter shall have against the Debtors based upon, arising out of, related to, or by reason of any event, cause, thing, act, statement, or omission occurring before the date of this Stipulation</u>.

(ATEL Stipulation ¶ 3.)  Because ATEL expressly released "any right to assert any other claim, cause of action, demand, lien, or liability of every kind and nature whatsoever, including those arising under contract, statute, or common law, whether or not known or suspected at this time . . . which the ATEL Releasing Parties have, ever had, or hereafter shall have against the Debtors based upon, arising out of, related to, or by reason of any event, cause, thing, act, statement, or omission occurring before the date of this Stipulation," any argument that ATEL may have regarding the narrow interpretation of the release provision of the ATEL Stipulation is without merit.  Likewise, if ATEL's interpretation of the release were correct, the carve-out in paragraph 6 of the ATEL Stipulation for claims "arising after the date of the Stipulation" would be unnecessary because nothing other than the ATEL Cure Proposal or Assumption and Assignment Objection would have been released.  (ATEL Stipulation ¶ 6.)

11.    <u>ATEL Cannot Rewrite The ATEL Stipulation On The Grounds Of</u>

<u>Unilateral Mistake</u>.  "To obtain reformation, a plaintiff must prove a mutual mistake of fact, or

mistake on one side and fraud on the other, by clear and convincing evidence.  A unilateral

mistake is not sufficient to warrant reformation.  A mistake in law – a mistake by one side or the

other regarding the legal effect of an agreement – is not a basis for reformation."  <u>Casey v. Auto</u>

<u>Owners Ins. Co.</u>, 729 N.W. 2d 277, 285 (Mich. Ct. App. 2006).  Because there is no allegation of

fraud or wrongdoing by the Debtors and the ATEL Stipulation is unambiguous, even a unilateral

mistake of fact by ATEL would not provide a basis for reforming or rescinding the ATEL

Stipulation.  Accordingly, an evidentiary hearing is not necessary to establish that paragraph 3 of

the ATEL Stipulation releases any claims against the Reorganized Debtors arising prior to

October 7, 2009. <u>See</u> <u>generally</u>, <u>Wilkie v. Auto-Owners Ins. Co.</u>, 469 Mich. 41, 47 (2003) (the

proper interpretation of a contract is a question of law).

<div align="center">Conclusion</div>

12.    For the foregoing reasons, and because ATEL's claims arose before

October 7, 2009 and have been fully released pursuant to the ATEL Stipulation, therefore (a)

ATEL has not met its burden of proof to establish a claim against the Reorganized Debtors and

(b) the Claims fail to state a claim against the Reorganized Debtors under Bankruptcy Rule 7012.

Because the Claims have been fully released by the ATEL Stipulation, the Forty-Sixth Omnibus

Claims Objection and the Forty-Eighth Omnibus Objection should be sustained as to the Claims,

and each of the Claims should be disallowed and expunged in its entirety.  Furthermore, because

all other issues asserted in the Motion were resolved through the Assumption and Assignment

Process, the Motion should be rendered moot.

WHEREFORE the Reorganized Debtors respectfully request this Court enter an

order (a) sustaining the objections relating to the Claims, (b) disallowing and expunging each of

the Claims in its entirety, (c) rendering moot the motion of ATEL Leasing Corporation filed at

docket number 6990, and (d) granting such further and other relief this Court deems just and

proper.

Dated:  New York, New York
        November 17, 2010

                              SKADDEN, ARPS, SLATE, MEAGHER
                                 & FLOM LLP

                              By:  /s/ Ron E. Meisler
                                 John Wm. Butler, Jr.
                                 John K. Lyons
                                 Ron E. Meisler
                              155 North Wacker Drive
                              Chicago, Illinois 60606

                                 - and -

                              Four Times Square
                              New York, New York 10036

                              Attorneys for DPH Holdings Corp., et al.,
                                 Reorganized Debtors

# Exhibit A

1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case No. 05-44481

- - - - - - - - - - - - - - - - - - - - -x

In the Matter of:


DELPHI CORPORATION,


      Debtor.


- - - - - - - - - - - - - - - - - - - - -x


          United States Bankruptcy Court

          One Bowling Green

          New York, New York


          November 29, 2007

          10:08 AM


B E F O R E:

HON. ROBERT D. DRAIN

U.S. BANKRUPTCY JUDGE

31

1    and adequate notice.  And, frankly, I think what you're doing,

2    as far as the particularized notices, is more than the rule

3    requires.  But I'm happy to hear that motion.

4              MR. BUTLER:  Your Honor, I'm actually hopeful that

5    Your Honor, when we file the motion at the end of the day, that

6    we will be able to continue our current procedures.  Because we

7    think they are with Your Honor early on in this case one in

8    particularized notice and we've been doing that.  So I think

9    that we probably far see the amended Rule.  But the point for

10   us is we simply didn't want to have an ambiguity in this record

11   and then have all of a sudden objections based on --

12             THE COURT:  No, I understand that.

13             MR. BUTLER:  -- noncompliance of the rules.  So --

14             THE COURT:  I understand that.  That's fine.

15             MR. BUTLER:  So we will be filing that on Friday for

16   consideration.

17             THE COURT:  Okay.  In other words, I think you can

18   still have omnibus objections as long as people get

19   particularized notice.

20             MR. BUTLER:  Thank you, Your Honor, for that

21   guidance.

22             THE COURT:  Okay.

23             MR. BUTLER:  Your Honor, the last matter on today's

24   agenda, now moving as matter number 8, this is Internet

25   Corporation's motion for payment of administrative expenses.

32

1   There are a small number of exhibits before I cede the podium

2   to Mr. Dragich for their argument.  There are a small number of

3   exhibits that I believe there's no objection to in terms of

4   being put into the record which was Exhibit 1 is Intermet's

5   motion for payment of the administrative expense claim and the

6   various exhibits.  Exhibit 2 is our objection with the various

7   evidentiary exhibits, the contracts and so forth, the

8   settlement agreements.  And then the prior joint stipulation

9   between the parties that Your Honor signed at docket number

10  9696.  But seeing as this argument in part relates up to the

11  documents between the parties, we wanted to move those matters

12  into evidence.  There is no objection, I believe.

13          THE COURT:  No opposition?

14          MR. DRAGICH:  No objection, Your Honor.

15          THE COURT:  Okay.  Can I start with a point the

16  debtors raised towards the end of their objection that I don't

17  think you've had a chance to respond to, which is why isn't

18  this claim barred by the settlement agreement from August?

19          MR. DRAGICH:  Your Honor, for the record, David

20  Dragich from Foley & Lardner on behalf of Intermet Corporation.

21  In response to your question, the claim -- Intermet's claim,

22  whatever its character, whether it's administrative or a pre-

23  petition claim, is not barred or waived as a consequence of the

24  settlement agreement.  Your Honor, if we turn to the debtor's

25  objection in paragraph 14, it recites the language of the

33

1   settlement agreement.  And the very last three lines, let's

2   say, it provides that the debtors release or waive the claims

3   arising out of events, causes, acts, statements or omissions --

4            THE COURT:  Well, you left --

5            MR. DRAGICH:  -- which occurred before --

6            THE COURT:  You left out some language.  The release

7   says "The releasing parties" -- which would include Intermet --

8   "further release and waive any right to assert any other claim,

9   cause of action, demand or liability of every kind and nature

10  whatsoever, including those arising under contract statute or

11  common law whether or not known or suspected at this time which

12  relate to the claim in which the releasing parties have, ever

13  had or hereafter shall have against the debtors based upon

14  arising out of, related to or by reason of any event, cause,

15  thing, act, statement or omission occurring before the petition

16  date."  And I'm assuming what the debtors contend is that this

17  is at least related to the 2003 contract since that's what

18  gives rise the right to a rebate -- refund, a refund of the

19  rebate.  I mean, I understand.  If it said -- but the word

20  "related to" is pretty broad.

21           MR. DRAGICH:  Well, Your Honor, it depends.  I agree

22  that it's broad.  But it says related to or by any reason of

23  any event, cause, thing or omission occurring -- it relates to

24  those acts or omissions before -- that occurred before the

25  petition date.  It's our position, Your Honor, that the act or

34

1   the omission, Delphi's failure and cessation of ordering parts

2   from Intermet, was a post-petition act not one --

3           THE COURT:  But isn't the "thing" -- you know, they

4   use that word "thing", too.  Isn't the "thing" the contract?

5           MR. DRAGICH:  The contract is what defines the

6   parties' obligation but the breach or the termination -- it's

7   our view was the post-petition -- arose from the post-petition

8   conduct of the debtor.

9           THE COURT:  And it has no relation to the "thing" --

10  to the contract?

11          MR. DRAGICH:  Well, it's an obligation of the

12  contract so, yes.

13          THE COURT:  So it relates to it.

14          MR. DRAGICH:  We're reading -- Intermet and the

15  debtors read the clause differently, Your Honor.

16          THE COURT:  Okay.

17          MR. DRAGICH:  And that is that it's our view the

18  "related to" is not relates to the contract.  It relates to the

19  act or omission.  And if it's the act or omission that we're

20  addressing, that's the post-petition omission by the debtor to

21  order the steering knuckles under the supply agreement from

22  Intermet.

23          THE COURT:  Okay.

24          MR. DRAGICH:  Your Honor seems relatively familiar

25  with the background.  Would you like a brief recitation of some

35

1    of the underlying facts, Your Honor, that are not in dispute?

2              THE COURT:  Well, let me just -- only one point.  And

3    it goes back to the settlement agreement again.  What is the

4    relation of this rebate agreement to the claim that was filed?

5    Was the rebate agreement related to the provision of the

6    products and services that were covered by the claim?

7              MR. DRAGICH:  I don't recall, Your Honor.  I can't

8    answer that as I sit here -- stand here.

9              THE COURT:  Okay.  Okay.  All right.

10             MR. DRAGICH:  Your Honor, what -- the factual issues

11   are largely agreed to between the parties as far as entry into

12   the supply agreement, entry into the rebate agreement and what

13   the rebate requires of the parties.  So I won't repeat those

14   here.  What the parties have agreed to do with respect to the

15   claim, if Your Honor allows the claim, whether it be

16   administrative or pre-petition, the amount of that claim has

17   not yet been reconciled.  The debtor has not said outright that

18   there is no claim -- or no claim.  Whether it should be allowed

19   or not is a separate issue.  But the parties have agreed that

20   if Your Honor grants a claim, whether it be administrative or

21   pre-petition, that an evidentiary hearing be scheduled for the

22   next omnibus hearing to determine what that amount is.

23             THE COURT:  Okay.

24             MR. DRAGICH:  Your Honor, what we request is that the

25   Court allow an administrative claim pursuant to the obligations

36

1    of the rebate agreement.  Intermet views this as a post-

2    petition administrative claim because it arose solely because

3    of the debtors' post-petition conduct, its termination of the

4    supply agreement.  Your Honor approved a sale today regard the

5    Saginaw Chassis asset sale motion.  And that sale sold

6    substantially all of the assets that the debtor used in

7    supplying General Motors pursuant to the GMT 900 program.

8    Intermet in turn supplied Delphi pursuant to that program.  So

9    if Delphi is no longer supplying at all as a result of that

10   sale, there has been a termination of the contract that in 2007

11   September, just a couple months ago, at that time, the debtors

12   ceased ordering parts from Intermet.  But for two years --

13            THE COURT:  Well, see, you're not saying they've

14   actually formally terminated but they're in anticipatory breach

15   in essence?

16            MR. DRAGICH:  We believe, Your Honor, they've

17   terminated by their conduct.  And we've sent them ---

18            THE COURT:  At a minimum it would be anticipatory

19   breach, I guess.

20            MR. DRAGICH:  Which we've given a notice pursuant to

21   our letter prior to this motion.  The motion itself could be

22   deemed a notice of termination as a consequence of that breach.

23   They clearly, Your Honor, are not going to be ordering

24   additional parts from Intermet.  They no longer supply pursuant

25   to that program.

37

1          The purpose behind this concept, Your Honor, under

2     503 of the Code is to encourage parties to continue to do

3     business with the debtor on a post-petition basis.  This

4     section assumes that if the debtor commits a post-petition

5     breach as part of that ongoing relationship, the nondebtor

6     party will be protected.  It will be protected because it will

7     be awarded a resulting administrative claim.  That's what

8     Intermet requests today, Your Honor.

9          THE COURT:  How does this further that policy?

10         MR. DRAGICH:  Your Honor, for two years

11    post-petition -- so almost two years.  From October 2005 until

12    September 2007, Intermet performed under that contract.  That

13    entire contract, when viewed in total, imposed upon the debtor

14    the obligation if it didn't order the minimum requirements to

15    refund that advanced rebate that was previously paid by

16    Intermet.  That was a central component of the contract.

17    Intermet relied on all terms of the contract in providing a

18    benefit to the debtor for almost two years during the

19    bankruptcy proceeding.

20         THE COURT:  How's that different from the pension

21    years in McFarland's Race Elevator?  They worked for the debtor

22    post-petition.

23         MR. DRAGICH:  But, Your Honor, as --

24         THE COURT:  But --

25         MR. DRAGICH:  I'm sorry.

38

1       THE COURT:  -- the Court said that the consideration

2    for the particular claim that was asserted to be an

3    administrative claim was provided pre-petition.

4       MR. DRAGICH:  Can you repeat your question, Your

5    Honor.  I'm not sure I followed that.

6       THE COURT:  Well, those people worked post-petition.

7    And they were paid for their post-petition work.  And they were

8    paid for their -- the portion of their post-petition pension

9    that came due post-petition for the post-petition work.  But

10   the second circuit said the claim based on pre-petition

11   consideration, even though it accrued post-petition, was a pre-

12   petition claim.  And even though they were working post-

13   petition.  They were under a contract that covered the whole --

14   you know, pre- and post-petition period.  But the Court said

15   this consideration they already provided by their hours worked

16   pre-petition.  Therefore it's a pre-petition claim.

17      MR. DRAGICH:  I think the situation here is different

18   though, Your Honor, because in this instance Intermet has

19   provided value to the debtor post-petition in the form of

20   continuing its supply.

21      THE COURT:  They were working.  I mean, there's

22   nothing more valuable than having an employee show up at the

23   office and do his or her job.

24      MR. DRAGICH:  Agreed, Your Honor.  And they were paid

25   for that labor.  Like Intermet was paid for the goods that it

39

1    shipped.  However, the difference is, Your Honor, is that here

2    we're dealing with a commercial contract.  And all of the

3    commercial terms are relevant as far as inducing the parties to

4    act.  In this instance, Intermet assumed and performed the

5    contract on the basis that the debtor would return performance.

6    Meaning, they were only willing to assume the risk of

7    continuing supply if the debtor would then also perform its

8    obligation if it didn't fulfill the minimum requirements.

9         THE COURT:  Did Intermet move to compel assumption or

10   rejection of the contract?

11        MR. DRAGICH:  It didn't, Your Honor, because -- nor

12   did the debtor reject the contract.  If the debtor truly wanted

13   to relieve itself of the obligations within the rebate

14   agreement or the underlying supply agreement, it could have

15   rejected the contract.  It didn't do that.  It simply --

16        THE COURT:  It didn't assume it, though, either, did

17   it?

18        MR. DRAGICH:  No, Your Honor.  By its conduct, it

19   breached the contract and in our view terminated.  The whole

20   purpose of the contract is now gone, Your Honor, because the

21   debtor no longer supplies General Motors pursuant to that

22   program.  So there would be no business purpose for the debtor

23   to assume a contract that it's not performing.

24        Just moving to one other issue raised in the debtors'

25   objection, Your Honor, I think I've addressed our view on the

40

1    waiver issue pursuant to the settlement agreement.  I'd also --

2    the debtor also argues in the objection that Intermet somehow

3    waived its claim by failing to file a proof of claim.  The

4    debtor contends that Intermet had merely a contingent claim.

5    If Your Honor accepted that view, every party in this case,

6    every nondebtor party to an executory contract would have to

7    file a proof of claim irrespective of whether there's been a

8    pre-petition breach.  Surely that's not a requirement that the

9    Court would impose on each and every nondebtor party to a

10   contract.  At the time of the filing, at the time of the bar

11   date, there had been no termination of the contract and

12   therefore Intermet would not have reason to file a claim.  So

13   for that reason, Your Honor, Intermet believes it had not

14   waived the claim in any way as far as failing to file a proof

15   of claim because it wasn't required to.  And second, the

16   settlement agreement does not constitute a waiver because it

17   deals solely with acts or omissions of the debtor giving rise

18   to a claim that were pre-petition.  And it's our view that the

19   acts that gave rise to the claim in this instance were post-

20   petition.  Thank you, Your Honor.

21           THE COURT:  Okay.

22           MR. BUTLER:  Your Honor, I only have a couple of

23   observations.  The first observation is that I understand Mr.

24   Dragich's need to argue what he does which this -- and he

25   relies in looking at Exhibit 2-B, the settlement agreement, and

41

1    at the relevant paragraph there that Your Honor discussed on

2    the record with him.  And he relies on the words before the

3    petition date which is a concession as we're concerned that

4    if -- that he's saying all these acts occurred after the

5    petition date and somehow were not related because I think it's

6    a concession by Intermet that if in fact it was before the

7    petition date, they are barred by the settlement agreement and

8    they did not file any other proof of claim.  The proof of claim

9    that has -- so they're either barred by the bar date order or

10   they're barred by their own signature on a settlement

11   agreement.

12            THE COURT:  Well, I don't see how they'd be barred by

13   the bar date order because the bar date order gives a -- you

14   haven't rejected this contract yet.

15            MR. BUTLER:  Right.  Your Honor -- that's correct,

16   Your Honor, but the reality is that if people have specific

17   claims, for example, I mean -- and I know the facts are in

18   dispute here and I think that among the facts that are not in

19   dispute just so the record indicates, Your Honor, the 417,200

20   dollars is, I think -- the debtors would concede the

21   appropriate calculation under the contract.  But that relates

22   to -- the vast majority of that relates to transactions that

23   occurred in the pre-petition period.  And Intermet knows that

24   as well.

25            THE COURT:  Well, that's -- I'm sorry.  That's why I

42

1    asked -- I didn't ask this correctly.  This rebate agreement is

2    just -- there's this one-page agreement.  Is it incorporated in

3    some other executory contract where they were supposed to be

4    providing this knuckle?

5            MR. BUTLER:  No.  As I understand it, Your Honor, the

6    rebate agreement was part of the original undertaking back in

7    200 -- I think it's 2003, if I remember the exact date.

8            THE COURT:  I'm not sure it matters.  It goes to the

9    bar date issue.  If it's part and parcel of an agreement that's

10   still executory and hasn't been rejected, then I think they

11   have more time to file a proof of claim.  If it's a stand alone

12   document, I think you're probably right, that they were

13   obligated to file a proof of claim because a big portion of it

14   is pre-petition.  And liquidated.

15           MR. BUTLER:  Yes, Your Honor.

16           THE COURT:  But it's just not clear to me whether it

17   is part of -- whether it's a stand alone agreement or whether

18   it's actually a rider to or an exhibit to or incorporated in an

19   ongoing agreement.

20           MR. BUTLER:  Your Honor, I mean, they haven't -- this

21   is their proof of claim, their motion.  I mean, I know the

22   facts -- the facts of the case are it is a stand alone

23   agreement.  It relates to the transaction.  It relates to it.

24           THE COURT:  Well, that's a separate issue about

25   whether --

43

1          MR. BUTLER:  I know, but that's the point.  And --

2          THE COURT:  Yeah.

3          MR. BUTLER:  And that's sort of observation number

4    one.  Your Honor, observation number two is that Intermet knows

5    the law here.  They know the law applicable to this and it's

6    not what they just argued before Your Honor.  They understand

7    Ace Elevator, Your Honor's case.  They understand second

8    circuit law and they understand that administrative priority

9    claims require that the claim arise out of a post-petition

10   transaction on the part of the debtor and be allowable only to

11   the extent that the consideration supporting the claim is right

12   to payment was both supplied to and beneficial to the debtors'

13   estate and the operation of its business from the Ace Elevator

14   Company case.  And the reason we know that is because they

15   themselves -- Intermet Corporation was a debtor itself in

16   Chapter 11.  That is exactly the lines they used in fighting

17   all of the administrative claims in their case.  And we filed

18   an example of that, which is now before Your Honor as Exhibit

19   2-A, the Intermet objection -- their omnibus objection to

20   claims in their case that was filed.  So Intermet knows the

21   law.

22         THE COURT:  Do you know, did they win on that one?

23         MR. BUTLER:  Yeah.  I have no idea what the outcome

24   was.

25         THE COURT:  Okay.  I mean, because if they did, you

44

1   may have a judicial estoppel point.  Otherwise --

2           MR. BUTLER:  But it states -- well, it's their

3   position.  It's not -- I don't know what their judgm -- whether

4   the judge agreed.

5           THE COURT:  No, I know.

6           MR. BUTLER:  It certainly indicates what their view

7   is.

8           THE COURT:  It's the difference between shrugging

9   your shoulders and say well, I felt that one day but I feel it

10  different today and actually being estopped as a legal matter.

11          MR. BUTLER:  Yeah.  I haven't gone through the -- and

12  sought what the order was.  My -- I suspect in fact that they

13  did win it but we certainly could find out, Your Honor.

14          THE COURT:  Okay.

15          MR. BUTLER:  But that's certainly -- Intermet knows

16  the issue.  And then finally, whether or not they themselves

17  were judicially estopped based on that position they've taken

18  in their cases, the fact is they can't -- this claim can't

19  survive as an administrative claim under the law here in the

20  second circuit and in this district.

21          THE COURT:  Okay.

22          MR. BUTLER:  There is no question here that this did

23  not arise out of a pre-petition transaction.  We agree with Mr.

24  Dragich the facts are the facts and they've been indicated

25  here.  This was a December 12th, 2003 letter agreement.  The

45

1    rebate was advanced at that time.  The majority of the

2    production here occurred in 2004 and 2005 prior to the Chapter

3    11 being filed.  There was never an attempt by them to seek

4    assumption of the contracts.  Other parties have.  Your Honor

5    knows there is a contract assumption procedures process here in

6    this case that suppliers insisted on.  They never availed

7    themselves of any of those issues.  And while it's true the

8    debtors have not terminated this contract, this contract may

9    well to the extent that it has no benefit to the estate be

10   rejected and then the rejection would be considered under the

11   Bankruptcy Code a pre-petition rejection not an administrative

12   act.  There is no administrative act here.

13            And I just don't see either under the case law

14   applicable in this district or under the actual facts of this

15   case or given the failure of Intermet to protect any interest

16   it might have with respect to the executory contract in this

17   case for the last two and a half years to come in and now say

18   oh, well, it can't be a pre-petition claim so now it's got to

19   be administrative because that's the only way we can win is

20   something, Your Honor, that the Court should dispose of.  Thank

21   you.

22            THE COURT:  Okay.

23            MR. DRAGICH:  Your Honor, may I address --

24            THE COURT:  Yeah.  You could stay there if you're --

25   that's fine.

46

1          MR. DRAGICH:  Okay.  Thank you, Your Honor.  Just

2   with respect to the pleading that the debtors attached that

3   Intermet filed in its own case, Your Honor, I don't think we

4   have a disagreement as to what the law says.  And I think we

5   accurately cited it in our papers in our case.

6          THE COURT:  I'm not going to hold it against you.

7          MR. DRAGICH:  Well, Your Honor, I'd like to just

8   explain, Your Honor, our position on that because I think it

9   bears responding to the debtors' remarks.

10          If the debtor engages in a post-petition act that

11   causes the nondebtor party damages, it's our position that the

12   creditor is entitled to an administrative claim.  If the

13   nondebtor party provides value to the debtor post-petition and

14   the debtor accepts that benefit, we believe that the nondebtor

15   party is entitled to administrative claim.  That's what our

16   papers say.

17          How you apply the facts of the situation in the

18   Intermet case and here is the issue where we disagree.  In that

19   case, Your Honor, just very briefly, there were services

20   rendered by sales representatives pre-petition.  And the

21   argument in that case by the representatives was that the

22   debtor, Intermet in that case, post-petition failure to renew a

23   contract gave rise to administrative claims.  So we're talking

24   about totally different facts, Your Honor, and that's why we

25   believe the cases are not on the same issue.

47

1          THE COURT:  But this -- you have to admit this is not

2     a tort, right?  They didn't burn down Intermet's building, as

3     I'm reading in Brown.  The wrong here is a breach of a

4     contract, isn't it?

5          MR. DRAGICH:  Agreed, Your Honor.  Post-petition

6     breach is our view.

7          THE COURT:  Well, all right.  Of a contract that

8     hasn't been assumed.

9          MR. DRAGICH:  Correct, Your Honor.  We believe it's

10    been terminated by the debtors' conduct.

11         THE COURT:  All right.  Okay.  All right.  Intermet

12    Corporation seeks allowance as an administrative claim of its

13    right to a refund under a 2003(e) pre-petition agreement with

14    Delphi Automotive Services -- Systems, excuse me, LLC, DAS LLC.

15    As is clear from the claim and from oral argument, that claim

16    is premised upon the alleged post-petition breach of that

17    agreement.  The agreement has not been assumed by DAS LLC nor

18    rejected.  However, Intermet contends that with the sale, which

19    I've approved today, of the Saginaw Michigan operation, DAS LLC

20    is at least an anticipatory breach of the agreement and that it

21    is no longer capable of being performed further without their

22    being a refund owed under it.

23         It appears from Exhibit C to the motion for

24    administrative expense payment that a large portion of the

25    refund is attributable to pre-petition conduct of DAS LLC in

48

1      addition to being based upon a pre-petition agreement.

2              As was noted at oral argument, although it was

3      asserted that this element of the agreement was important to

4      Intermet, Intermet has never moved in this case to compel

5      assumption or assignment of the -- I'm sorry, assumption or

6      rejection of the agreement under the procedures previously

7      adopted by the Court for such requests.

8              The debtor objects to the administrative expense

9      claim on two main grounds, at least the two grounds that I'm

10     going to focus on.  The first, is that the administrative

11     expense claim is barred as having been released by Intermet

12     pursuant to a settlement agreement that it entered into in

13     August of this year with Delphi Corporation on behalf of itself

14     and certain of its U.S. affiliates, including DAS LLC.  In that

15     agreement, the releasing parties, which include Intermet,

16     agreed upon the allowed amount of a large claim that had been

17     failed by Intermet, roughly 3.7 million dollars, as a pre-

18     petition general unsecured claim.  And then provided for a

19     further release and waiver of any right "to assert any other

20     claim, cause of action, demand or liability of any kind and

21     nature whatsoever including those arising under contract,

22     statute or common law, whether or not known or suspected at

23     this time which relate to the claim that was settled and which

24     the releasing parties have, ever had or hereafter shall have

25     against the debtors based upon arising out of, related to or by

49

1    reason of any event, cause, thing, act, statement or omission

2    occurring before the petition date."

3          I think two points are worth noting in respect of

4    this release.  First, it is a release not only of claims, which

5    may be susceptible to a somewhat narrow definition but might

6    not apply to administrative expense claims.  But also releases

7    the right to assert any liability of any kind or nature

8    whatsoever including those arising under statute.  And of

9    course, the basis for asserting an administrative expense is

10   under Section 503(b) of the Bankruptcy Code.

11         Second, as discussed at oral argument, the release is

12   broadly written to apply to any such rights that Intermet may

13   have or hereafter shall have by recognizing rights arising in

14   the future, i.e., during the post-petition period.  Arising out

15   of, based upon or related to by reason of any event, cause of

16   action, thing, act statement or omission occurring before the

17   petition date.

18         Intermet contends it can get out of this release or

19   that this release doesn't cover its administrative expense

20   claim because the administrative expense arises post-petition.

21   However, it is very clearly related to and by reason of a pre-

22   petition thing, the defining agreement, that gives rise to the

23   right to the refund, which is the 2003 contract.  And it is at

24   a minimum related to that agreement since that's how the

25   calculation of the claim is made based upon the terms of the

50

1    rebate agreement or the refund provided for in the 2003

2    agreement.

3            So I conclude, based on a reading of the settlement

4    agreement, that Intermet has released this claim -- or this

5    administrative expense claim.

6            I will, however, address the other argument that the

7    debtor made here in opposition to the administrative expense

8    claim which is that even if the administrative expense claim

9    had not been released, it would not be entitled to

10   administrative expense treatment.  I believe that that argument

11   is correct.  The law on what constitutes an administrative

12   expense is quite clear in the second circuit and the parties

13   essentially acknowledge that with one exception that I should

14   deal with first.  The cases cited first and foremost by

15   Intermet are cases involving post-petition torts or other

16   wrongful activity separate and apart from the breach of the

17   contract.  And those cases, i.e., Reading Company v. Brown, 391

18   U.S. 471 (1968) and Pennsylvania Department of Environmental

19   Resources v. Tri-State Clinical Labs, Inc., 178 F.3d 685 (3d

20   Cir. 1999), therefore, really are not applicable here.  The

21   Courts in those cases were dealing with the problems of

22   permitting a debtor to commit a tort or other wrongful activity

23   other than the breach of a contract post-petition.  And having

24   that -- the victim of that wrongful activity nevertheless

25   compensated in so-called tiny bankruptcy dollars.  And

51

1    obviously for the correct and good reasons concluded that that

2    would not be proper and therefore provide for an administrative

3    claim for such wrongful activity.

4         Here, however, the right as claimed by Intermet to

5    have its breach claim treated as an administrative expense is

6    determined by those cases that deal with the rights of parties

7    to unassumed and unrejected executory contracts to assert a

8    claim for administrative expense treatment.  And those cases

9    are clear that the claimant has a tough burden to sustain its

10   right to priority treatment under Section 503(b) which provides

11   for administrative expense priority for the actual necessary

12   cost and expenses of preserving the estate.  As the Supreme

13   Court stated in Howard Delivery Service, Inc. v. Zurich

14   American Insurance Co., 126 Supreme Court 2105 (2006), "to give

15   priority to a claimant not clearly entitled thereto is not only

16   inconsistent with the policy of equality of distribution, it

17   dilutes the value of the priority for those creditors that

18   Congress intended to prefer."

19        Given that well-established principle, the Courts in

20   this circuit have set forth a test for the allowance of an

21   administrative expense claim including on behalf of a party to

22   an unassumed and unrejected executory contract.  That party

23   must demonstrate, one, that its claim arose from a transaction

24   with or on account of consideration furnished to the debtor-in-

25   possession; and, two, the transaction or consideration directly

52

1    benefited the debtor-in-possession.  And the reference to the

2    debtor-in-possession there is key.  It's not the debtor, i.e.,

3    the pre-petition debtor but the post-petition debtor.  Here,

4    the transaction was with the pre-petition debtor under the 2003

5    contract and, more importantly, the consideration provided the

6    600,000 dollars was provided pre-petition.  Therefore, there

7    was no inducement by the debtor-in-possession in return for

8    that consideration.

9            The fact that it is alleged at least that Intermet

10   continued to provide the steering knuckle sets post-petition is

11   no different to my mind than the fact that the employees of Ace

12   Elevator or McFarlands continued to work post-petition.  The

13   particular claim that they were asserting and that Intermet is

14   asserting is premised upon the provision of pre-petition

15   consideration under a pre-petition agreement.  And

16   consequently, under the law of this circuit, and I believe

17   everywhere else would be therefore treated as a pre-petition

18   claim if it were not waived.  See generally In re Patient

19   Education Media, Inc., 221 B.R. 97 (Bankr. S.D.N.Y. 1998) which

20   I believe is the most favorable case to a claimant in

21   Intermet's position but clearly under the reasoning of Judge

22   Bernstein in that case, would not accord the administrative

23   expense status to someone in Intermet's position.  See also In

24   re Ace Elevator, 347 B.R. 473 (Bankr. S.D.N.Y. 2006) and the

25   cases cited therein including specifically Trustees of

53

1   Amalgamated Insurance Fund v. McFarlands, Inc., 79 F.2d 98 (2d

2   Cir. 1986).

3           So, for those separate and independent reasons, each

4   of which would justify denial of the motion, I'll deny the

5   motion.  So, Mr. Butler, you can submit an order to that

6   effect.

7           MR. BUTLER:  Yes, Your Honor, we will.  Your Honor,

8   that completes the matters set for the omnibus agenda today.

9           THE COURT:  Okay.  Thank you.  Let's hope we all get

10  over our colds.

11          MR. BERGER:  Yes, Your Honor.

12          (Whereupon these proceedings were concluded at 11:30

13  a.m.)

14

15

16

17

18

19

20

21

22

23

24

25

# Exhibit B

BUCHANAN INGERSOLL & ROONEY PC
One Chase Manhattan Plaza
New York, New York 10005
Telephone: (212) 440-4400
Facsimile: (212) 440-4401
E-mail: susan.persichilli@bipc.com
Susan P. Persichilli, Esq. (SP- 0368)

*Attorneys for ATEL Leasing Corporation,*
*as agent for Eireann II, CAI-UBK Equipment,*
*CAI-ALJ Equipment, II BU de Mexico*
*S.A. de C.V .and Eireann* III

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
                                                        :    Chapter 11

In re:                                              :

                                                       :    Case No. 05-44481 (RDD)

DELPHI CORPORATION, <u>et</u> <u>al.</u>,                :

                                                       :    (Jointly Administered)

                                 Debtors.        :
-------------------------------------------------------------- X

### <u>CURE CLAIM OF ATEL LEASING CORPORATION</u>

    ATEL Leasing Corporation ("<u>ATEL</u>") as agent for: (i)  Eireann II, a division of ATEL

Transatlantic Investors, Inc. ("ATI"),  (ii)  CAI-UBK Equipment, a division of ATI, (iii) CAI-

ALJ Equipment , a division of ATI, (iv) II Bu de Mexico S.A. de C.V.,  and (v) Eireann III, a

division of ATEL Transatlantic Investors II, Inc. (collectively, the "<u>Claimants</u>"), by and through

its counsel, Buchanan Ingersoll & Rooney PC, hereby submits this Cure Claim (the "<u>Cure</u>

<u>Claim</u>") pursuant to Article 8.2 of the Debtors' First Amended Joint Plan of Reorganization of

Delphi Corporation and Certain Affiliates, Debtors and Debtors in Possession, as Modified (the

"<u>Plan</u>") and respectfully states as follows:



## BACKGROUND

1.    Pursuant to a certain Master Lease Agreement, dated as of August 19, 1997, General Motors Corporation ("GMC"), entered into a Master Lease Agreement ("MLA-American Finance") with American Finance Group, Inc. ("American Finance"). *See* Exhibit A.

2.    Pursuant to a certain Master Lease Agreement, dated as of May 1, 1995, GMC entered into a Master Lease Agreement ("MLA-First American") with First American Capital Management Group, Inc. ("First American"). *See* Exhibit A.

3.    Pursuant to the MLA-American Finance and MLA-First American master lease agreements, GMC entered into numerous Equipment Schedules (the Equipment Schedules, as they incorporate by reference all of the terms and conditions of the two Master Lease Agreements described herein, are hereinafter known as the "Leases"), regarding certain equipment, all with related equipment, attachments and accessories as set forth in the Leases (the "Equipment'). *See* Exhibit A.

4.    Pursuant to one or more assignments, Delphi Corporation and certain of its subsidiaries and affiliates were assigned GMC's interests as Lessee under the Leases. *See* Exhibit A. Pursuant to various other assignments, the interests of American Finance and First American, as Lessors under their respective Leases, were assigned to one of the Claimants, with ATEL acting as agent for each Claimant. *See* Exhibit A.

## BANKRUPTCY FILING

5.    On October 8, 2005, and subsequently, on October 14, 2005 (collectively, the "Filing Date"), Delphi Corporation and certain of its subsidiaries and affiliates, the debtors in the above-captioned cases (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United State Code, as amended (the "Bankruptcy Code").

6.      On July 28, 2006, ATEL timely filed a proof of claim, Claim No. 12195 (the "Claim") against Delphi Corporation, *et al.* and Delphi Automotive Systems, Inc. for amounts due and owing to ATEL under the Leases.   A copy of the Claim is attached hereto as Exhibit A.[1] The Claim asserts a claim as of July 18, 2006 in the amount of $4,140,179.97, of which $582,300.00 is asserted as secured, $3,306,138.54 as unsecured, and $251,741.43 as an administrative expense claim.

7.      On or about October 31, 2006, the Debtors objected to the Claim pursuant to the Debtors' Third Omnibus Objection (Substantive) Pursuant to 11 U.S.C.§ 502(b) and Fed. R. Bankr. P. 3007 to Certain (A) Claims with Insufficient Documentation, (B) Claims Unsubstantiated by Debtors' Books and Records, and (C) Claims Subject to Modification and (II) Motion to Estimate Contingent and Unliquidated Claims Pursuant to 11 U.S.C. § 502(c) (the "'Objection"). *See* Docket Entry No. 5452.

8.      On or about November 22, 2006, ATEL filed a response to the Objection (the "Response"). *See* Docket Entry No. 5781.

9.      On or about September 4, 2007, the Debtors filed Notice of Claims Objection Hearing with Respect to the Debtors' Objection to the Claim which provided for a hearing date of November 8, 2007. *See* Docket Entry No. 9242.

10.     On or about September 11, 2007, the Debtors filed the Debtors' Statement of Disputed Issues with Respect to the Claim.  *See* Docket Entry No. 9330.

11.     On September 19, 2007, the Debtors' representatives and ATEL's representatives participated in a "meet and confer" pursuant to the Order Pursuant to 11 U.S.C.§  502(b) and

---

1 The Proof of Claim filed with the Court included a copy of the underlying master lease agreements and leases together with the amendments and schedules thereto.  As the agreements are voluminous they are not attached hereto, but will be made available upon request.

Fed. R. Bankr. P. 2002(m), 3007, 7016, 7026, 9006, and 9014 Establishing (i) Dates for Hearings

Regarding Objections to claims and (ii) Certain Notices and Procedures Governing Objections to

Claim, entered December 7, 2006. *See* Docket Entry No. 6089.

12.    Subsequently, the Debtors and ATEL entered into a Joint Stipulation and Agreed

Order Compromising and Allowing Proof of Claim Number 12195 (the "Claims Stipulation"),

that was approved by this Court on November 5, 2007. The Claims Stipulation provides, among

other things, that the Claim shall be allowed in the amount of $191,055.40 and shall be treated as

an allowed general unsecured non-priority claim against the estate of DLS, LLC. *See* Docket

Entry No. 10842.

13.    On December 10, 2007, this Court approved the Debtors' disclosure statement and

on the same day, the Debtors filed the Plan.

14.    On December 28, 2007, the Debtors filed Exhibit 8.1(a) to the Plan, which

discloses three categories of executory contracts and unexpired leases that are to be rejected

pursuant to the Plan. Pursuant to Exhibit 8.1(a) and the Plan, all of the Leases were assumed by

the Debtors.

15.    On January 25, 2008, this Court approved the Plan by entering its Findings of

Fact, Conclusions of Law, and Order Under 11 U.S.C. §§ 1129(a) and (b) and Fed. R. Bankr. P.

3020 Confirming First Amended Joint Plan of Reorganization of Delphi Corporation and Certain

Affiliates, Debtors and Debtors-in-Possession, as Modified (the "Confirmation Order").

16.    Pursuant to the Plan and the Confirmation Order, in the event that a non-Debtor

party wishes to assert an entitlement to Cure, such party must serve and file a Cure Claim within

forty-five (45) days after entry of the Confirmation Order, after which the Debtors shall have

forty-five (45) days to file an objection to the Cure Claim.  Accordingly, ATEL submits this

Cure Claim in satisfaction of such requirements under the Plan and Confirmation Order.

## CURE CLAIM

17.      Under section 365(b)(1) of the Bankruptcy Code, prior to the Debtors' assumption

of the Leases, the Debtors must cure all outstanding defaults due thereunder.  Pursuant to the

terms of the Leases, the Debtors are in default under the Leases based upon their failure, *inter*

*alia*, to pay pre-petition and post-petition rent, taxes and/or other obligations due under the

Leases.

18.      As set forth in the Claims Stipulation, the allowed unsecured pre-petition Claim

under the Leases is $191,055.40.  In addition, as of February 29, 2008, the total amount due and

owing post-petition under the Leases is $470,637.93 plus additional outstanding sales and

property taxes.  *See* <u>Exhibit B</u> for a breakdown of the total post-petition amounts due and owing

under the Leases.

19.      Moreover, the Leases provide in pertinent part, that upon a declaration of default,

and to the extent permitted by law, the debtor shall pay "all reasonable costs and expenses,

including reasonable legal fees incurred by the Lessor in connection with the enforcement of, but

not the administration of, the Agreement."  *See* the Leases at Section XII(a).  As of the date of

this Cure Claim and subject to continued accrual, ATEL has incurred the aggregate amount of

$46,585.00 in legal fees and the aggregate amount of $2,603.54 in expenses.

20.    There will also be certain taxes or other adjustments that have yet to be billed or become due under the Leases, but ATEL is unable at this time to provide those amounts. Accordingly, the Cure Amount listed below is subject to change, and ATEL reserves the right to modify the Cure Amount accordingly.

21.    As of the date hereof and subject to continued accrual, ATEL asserts that the total *cure* amount under the Leases is approximately $710,881.87 (the "Cure Amount").  However, to the extent that rent, attorneys' fees, taxes and any other charges continue to accrue or become due and/or ATEL suffers other liabilities and/or losses under the Leases, ATEL hereby reserves its right to amend and/or supplement the Cure Amount to reflect such additional amounts.

Dated: New York, New York
       March 5, 2008

                              BUCHANAN INGERSOLL & ROONEY LLP
                              *Attorneys for ATEL Leasing Corporation,*
                              *as agent for Eireann II, CAI-UBK Equipment,*
                              *CAI-ALJ Equipment, II BU de Mexico*
                              *S.A. de C.V .and Eireann* III


                              By:    /s/  Susan P. Persichilli
                                     Susan P. Persichilli, Esq. (SPP-0368)
                                     One Chase Manhattan Plaza
                                     New York, New York 10005
                                     (212) 440-4400

**EXHIBIT A**

**ATEL LEASING CORPORATION'S PROOF OF CLAIM**

| **United States Bankruptcy Court**<br>Southern District of New York | **PROOF OF CLAIM** | **Received**<br><br>AUG 05 2006 |
|---|---|---|
| In re (name of Debtor) Delphi Corporation, et al, and Delphi Automotive Systems LLC | Case Numbers<br>05-44481 and 05-44640 | Kurtzman Carson |

NOTE: This form should not be used to make a claim for an administrative expenses arising after the commencement of the case. A "request" for payment of an administrative expense may be files pursuant to 11 U.S.C. § 503.

12195

**COPY**

| Name of Creditor:  ATEL Leasing Corporation, as agent for: 1) Eireann II, a division of ATEL Transatlantic Investors, Inc. (ATEL Transatlantic Investors, Inc. is hereinafter referred to as "ATI"). 2) CAI-UBK Equipment, a division of ATI. 3) CAI-ALJ Equipment, a division of ATL 4) II Bu de Mexico S.A. de C.V., a Mexican company, and 5) Eireann III, a division of ATEL Transatlantic Investors II, Inc. ("ATI II") | Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars |
|---|---|
| Name and Address Where Notices Should be Sent<br>ATEL Leasing Corporation, as Agent for Creditor<br>600 California Street, 6th Floor<br>San Francisco, CA 94108<br>Attn:  V.  Morais or R. Wilder<br>Telephone No. (415) 989-8800 | Check box if you have never received any notices from the bankruptcy court in this case.<br><br>Check box if the address differs from the address on the envelope sent to you by the court |

**THIS SPACE IS FOR COURT USE ONLY**

| ACCOUNT OR OTHER NUMBER BY WHICH CREDITOR IDENTIFIES DEBTOR:<br>Various-See Proof of Claim Calculations Spreadsheet attached. | Check this box if the claim ☐ replaces ☐ amends a previous claim. Dated : |
|---|---|

**1.    BASIS FOR CLAIM**

|  |  |
|---|---|
| Goods sold | Retiree benefits as defined in 11 U.S.C. § 1114(a) |
| Services performed | Wages, salaries, and compensation (fill out below) |
| Money loaned | Your social security number _____ |
| Personal injury/wrongful death | Unpaid compensation for services performed |
| Taxes | from _____ (date) to _____ (date) |
| XXXX  Other (Describe briefly): Lease of personal property used in Debtor's business operations. |  |

**2.    DATE DEBT WAS INCURRED**
Master Lease Agreements dated as of 05/01/95 and 08/19/97

**3.    IF COURT JUDGMENT, DATE OBTAINED**

**4.**    Classification of Claim. Under the Bankruptcy code all claims are classified as one or more of the following: (1) Unsecured nonpriority, (2) Unsecured Priority,   (3) Secured  It is possible for party of a claim to be in one category and part in another
CHECK THE APPROPRIATE BOX OR BOXES that best describe your claim and STATE THE AMOUNT OF THE CLAIM AS OF THE DATE CASE FILED.

SECURED CLAIM $582,300.00  **SEE ATTACHED RIDER**
(Attach evidence of perfection of security interest)
Brief Description of Collateral: Various lease machine tools and material handling equipment.

Amount of arrearage and other charges at time case filed included in secured claim above, if any $ 148,742.59

UNSECURED NONPRIORITY CLAIM  $3,306,138.54 A Claim is unsecured if there is no collateral or lien on property of the debtor securing the claim or to the extent that the value of such property is less than the amount of the claim.

UNSECURED PRIORITY CLAIM $251,741.43
Specify the priority of the claim: Post petition amounts due under an executory contract.

Wages, salaries, or other commissions (up to $400), * earned not more than 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. § 507(a)(3)

Contributions to an employee benefit plan – 11 U.S.C. § 507(a)(4)

Up to $1,800* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507(a)(6)

Alimony, maintenance, or support owed to spouse, former spouse, or child – 11 U.S.C. § 507(a)(7)

Taxes or penalties of governmental units – 11 U.S.C. § 507(a)(8)

Other – Specify applicable paragraph of 11 U.S.C. § 507(a) 1
*Amounts are subject to adjustment on 4/1/98 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment

**5.    TOTAL AMOUNT OF**
CLAIM AS OF JULY 18, 2006
$3,306,138.54  + $582,300.00 + $251,741.43  =

| (Unsecured)  (Secured)  (Priority-Administrative Claims Due to Date) | **$4,140,179.97** |
|---|---|
|  | (Total) |

Check box if claim includes charges in addition to the principal amount of the claim. Attach itemized statement of all additional charges. SEE ATTACHED SPREADSHEET.

**6.**    Date: CREDITS AND SETOFFS: The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim  In filing this claim, claimant has deducted all amounts that claimant owes debtor.

**THIS SPACE IS FOR COURT USE ONLY**

**7.**    SUPPORTING DOCUMENT: *Attach copies of supporting documents*, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgements, or evidence of security interest.  If the documents are not available, explain. If the documents are voluminous, attach a summary.

**8.**    TIME STAMPED COPY: To receive an acknowledgement of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

| Date: July 27, 2006 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim<br><br>Russell H. Wilder, Senior Vice President for ATEL Leasing Corporation |
|---|---|

Penalty for presenting fraudulent claim: Fine up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. § 152 and 3571.

(b)    Pursuant to one or more assignments, Debtor was assigned GMC's interests as Lessee under the Leases. Pursuant to various other assignments, the interests of AFG and FACMGI as the Lessors under their respective Leases have been assigned to either; 1) Eireann II, a division of ATEL Transatlantic Investors, Inc., 2) CAI-UBK Equipment, a division of ATI, 3) CAI-ALJ Equipment, a division of ATI, 4) II Bu de Mexico S.A. de C.V., a Mexican company, or 5) Eireann III, a division of ATEL Transatlantic Investors II, Inc., a California corporation , with ATEL acting as agent for each of the same.

4.    Pursuant to Section XII (4) of the Leases, the Debtor is responsible for liquidated damages in the approximate amount of $4,140,179.97, plus interest thereon, from the date of default, at the rate as stated in Section XXI (e) of the Leases. This Claim is not subject to any setoff or counterclaim, other than amounts paid to the Secured Party pursuant to its Proof of Claim, which has been or may be separately filed.

5.    This Claim is a general unsecured and administrative claim for breach of contract under the Leases. In the alternative, Creditor claims that it is a secured creditor pursuant to the Lease and the precautionary Uniform Commercial Code Financing Statements filed in connection therewith. The Creditor also claims any post petition rents or other amounts not previously made in accordance with the Leases.

6.    The Claims asserted herein are made without prejudice to the Creditor's right to amend this Proof of Claim and the Creditor hereby reserves its right to amend this Proof of Claim and to assert an additional administrative claim at some future date, including, without limitation, interest on post-petition late payments, indemnification amounts and costs and expenses incurred in enforcing Creditor's rights under the Leases and the other Agreements. ATEL reserves all of its rights against the Debtor and all other entities. The execution or filing of this Proof of Claim shall not be deemed a waiver of any rights of ATEL to trial by jury or otherwise, nor a consent to jurisdiction of the Bankruptcy Court with respect to any counterclaim or any other claim against ATEL by Debtor or any other person or entity.

Dated: July 27, 2006

                    ATEL Leasing Corporation
                    As Agent for Creditor


                    _____
                         Russell H. Wilder
                    Title:  Senior Vice President

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In re:                                          )
                                                )
Delphi Corporation, et al                       )
Delphi Automotive Systems LLC                   )  Case Nos. 05-44481 (RDD)
                                                )     and 05-44640
                                                )  Chapter 11
                                                )
                              Debtor.           )
_____             )  **RIDER TO PROOF OF CLAIM**
                                                )

     1.    The undersigned, Russell H. Wilder, serves as Senior Vice President for ATEL Leasing Corporation ("ATEL") a corporation organized under the laws of the State of California, with executive offices at 600 California Street, 6th floor, San Francisco, California 94108, and is authorized to make this Proof of Claim on behalf of; 1) Eireann II, a division of ATEL Transatlantic Investors, Inc. (ATEL Transatlantic Investors, Inc. is a corporation formed under the laws of the State of California and is hereinafter referred to as "ATI") , 2) CAI-UBK Equipment, a division of ATI, 3) CAI-ALJ Equipment, a division of ATI, 4) II Bu de Mexico S.A. de C.V., a Mexican company, ("CAI-Mexico"), and 5) Eireann III, a division of ATEL Transatlantic Investors II, Inc., a California corporation ("ATI II"), each of ATEL, ATI, ATI II and CAI-Mexico having an office at 600 California Street, 6th floor, San Francisco, California 94108 ("Creditor").

     2.    Delphi Corporation, et al ("Debtor") as lessee, is indebted to ATEL under the Agreements (as defined below) in an unliquidated amount (the "Claim").

     3.    The consideration for the Claim, and basis for Debtor's liability, is as follows:

     (a)    Pursuant to a Master Lease dated as of August 19, 1997, Debtor's former owner, General Motors Corporation ("GMC"), entered into a Master Lease Agreement ("MLA-AFG") with American Finance Group, Inc. ("AFG"). Pursuant to a Master Lease Agreement dated as of May 1, 1995, Debtor's former owner, GMC entered into a Master Lease Agreement ("MLA-FACMGI") with First American Capital Management Group, Inc. ("FACMGI"). Pursuant to the two Master Lease Agreements MLA-AFG and MLA-FACMGI, GMC entered into numerous Equipment Schedules (the Equipment Schedules, as they incorporate by reference all of the terms and conditions of the two Master Lease Agreements described herein, are hereinafter known as the "Leases"), regarding certain equipment, all with related equipment, attachments and accessories as set forth in the Leases (the "Equipment").

# EXHIBIT B

## BREAKDOWN OF THE TOTAL POST-PETITION AMOUNTS DUE AND OWING UNDER THE LEASES

**Delphi**

**Aging Report - as of 2/29/2008**

| Pre-petition cut-off date | 10/8/2005 |
|---|---|
| Post-petition cut-off date | 2/29/2008 |

| Customer | Acct # | Lease # | Invoice # | InvDate | Due Date | InvAmt | Amount Due | 30Days | 60Days | 90Days | 120Days | Over120Days | Transaction | Lease Reference | Grace Days | Billing Date | # Days Late | # Months Late (round to month) | Late fee rate | Total late fee |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| GENERAL MOTORS CORPORATION | 87001 | 8TGMCO12341118 | 870000029 | 8/26/005 | 10/9/005 | 433.53 | 433.53 | - | - | - | - | 433.53 | Sales Tax | 592595-001 DI | 10 | 11/9/005 | 841 | 29 | 1% | 125.72 |
| GENERAL MOTORS CORPORATION | 87001 | 8TGMCO12341118 | 870000029 | 8/26/005 | 10/9/005 | 2,890.10 | 2,890.10 | - | - | - | - | 2,890.10 | Rent | 592595-001 DI | 10 | 11/9/005 | 841 | 29 | 1% | 838.13 |
| GENERAL MOTORS CORPORATION | 87001 | 8TGMCO12341134 | 870000030 | 8/26/005 | 10/9/005 | 1,465.35 | 1,465.35 | - | - | - | - | 1,465.35 | Sales Tax | 592612-001 DI | 10 | 11/9/005 | 841 | 29 | 1% | 424.95 |
| GENERAL MOTORS CORPORATION | 87001 | 8TGMCO12341134 | 870000030 | 8/26/005 | 10/9/005 | 9,768.83 | 9,768.83 | - | - | - | - | 9,768.83 | Rent | 592612-001 DI | 10 | 11/9/005 | 841 | 29 | 1% | 2,833.96 |
| GENERAL MOTORS CORPORATION | 87001 | 8TGMCO12341135 | 870000031 | 8/26/005 | 10/9/005 | 98.13 | 98.13 | - | - | - | - | 98.13 | Sales Tax | 592613-001 DI | 10 | 11/9/005 | 841 | 29 | 1% | 28.46 |
| GENERAL MOTORS CORPORATION | 87001 | 8TGMCO12341135 | 870000031 | 8/26/005 | 10/9/005 | 654.17 | 654.17 | - | - | - | - | 654.17 | Rent | 592613-001 DI | 10 | 11/9/005 | 841 | 29 | 1% | 189.71 |
| GENERAL MOTORS-POWERTRAIN | 75006 | 7SMCO081601 | 750006657 | 8/26/005 | 10/1/005 | 338.49 | 338.49 | - | - | - | - | 338.49 | Rent | 592060-000-DI | 10 | 11/10/005 | 840 | 28 | 1% | 94.78 |
| GENERAL MOTORS-POWERTRAIN | 75006 | 7SMCO081601 | 750006691 | 9/28/005 | 11/9/005 | 338.49 | 338.49 | - | - | - | - | 338.49 | Rent | 592060-000-DI | 10 | 12/10/005 | 810 | 27 | 1% | 91.19 |
| GENERAL MOTORS CORPORATION | 87001 | 8TGMCO12341118 | 870000032 | 9/28/005 | 11/9/005 | 433.53 | 433.53 | - | - | - | - | 433.53 | Sales Tax | 592595-001 DI | 10 | 12/10/005 | 810 | 27 | 1% | 117.05 |
| GENERAL MOTORS CORPORATION | 87001 | 8TGMCO12341134 | 870000033 | 9/28/005 | 11/9/005 | 1,465.35 | 1,465.35 | - | - | - | - | 1,465.35 | Sales Tax | 592612-001 DI | 10 | 12/10/005 | 810 | 27 | 1% | 395.64 |
| GENERAL MOTORS CORPORATION | 87001 | 8TGMCO12341134 | 870000033 | 9/28/005 | 11/9/005 | 9,768.83 | 9,768.83 | - | - | - | - | 9,768.83 | Rent | 592612-001 DI | 10 | 12/10/005 | 810 | 27 | 1% | 2,637.58 |
| GENERAL MOTORS CORPORATION | 87001 | 8TGMCO12341135 | 870000034 | 9/28/005 | 11/9/005 | 98.13 | 98.13 | - | - | - | - | 98.13 | Sales Tax | 592613-001 DI | 10 | 12/10/005 | 810 | 27 | 1% | 26.50 |
| GENERAL MOTORS CORPORATION | 87001 | 8TGMCO12341135 | 870000034 | 9/28/005 | 11/9/005 | 654.17 | 654.17 | - | - | - | - | 654.17 | Rent | 592613-001 DI | 10 | 12/10/005 | 810 | 27 | 1% | 176.63 |
| GENERAL MOTORS CORPORATION | 87001 | 8TGMCO12341135 | 750006690 | 11/16/05 | 12/8/05 | 397.78 | 397.78 | - | - | - | - | 397.78 | Property Tax | 592613-001 DI | 10 | 12/18/05 | 802 | 27 | 1% | 107.40 |
| GENERAL MOTORS CORPORATION | 87001 | 8TGMCO12341118 | 870000035 | 10/26/005 | 12/9/005 | 433.53 | 433.53 | - | - | - | - | 433.53 | Sales Tax | 592595-001 DI | 10 | 1/9/06 | 780 | 26 | 1% | 122.72 |
| GENERAL MOTORS CORPORATION | 87001 | 8TGMCO12341118 | 870000036 | 10/26/005 | 12/9/005 | 1,465.35 | 1,465.35 | - | - | - | - | 1,465.35 | Sales Tax | 592612-001 DI | 10 | 1/9/06 | 780 | 26 | 1% | 380.99 |
| GENERAL MOTORS CORPORATION | 87001 | 8TGMCO12341134 | 870000036 | 10/26/005 | 12/9/005 | 9,768.83 | 9,768.83 | - | - | - | - | 9,768.83 | Rent | 592612-001 DI | 10 | 1/9/06 | 780 | 26 | 1% | 2,539.90 |
| GENERAL MOTORS CORPORATION | 87001 | 8TGMCO12341135 | 870000037 | 10/26/005 | 12/9/005 | 98.13 | 98.13 | - | - | - | - | 98.13 | Sales Tax | 592613-001 DI | 10 | 1/9/06 | 780 | 26 | 1% | 25.51 |
| GENERAL MOTORS CORPORATION | 87001 | 8TGMCO12341135 | 870000037 | 10/26/005 | 12/9/005 | 654.17 | 654.17 | - | - | - | - | 654.17 | Rent | 592613-001 DI | 10 | 1/9/06 | 780 | 26 | 1% | 170.08 |
| GENERAL MOTORS-POWERTRAIN | 75006 | 7SMCO081601 | 750006722 | 10/26/005 | 12/1/005 | 338.49 | 338.49 | - | - | - | - | 338.49 | Rent | 592060-000-DI | 10 | 1/10/06 | 779 | 26 | 1% | 368.61 |
| GENERAL MOTORS CORPORATION | 87001 | 8TGMCO12341118 | 870000038 | 11/28/005 | 1/9/006 | 433.53 | 433.53 | - | - | - | - | 433.53 | Sales Tax | 592595-001 DI | 10 | 2/9/06 | 749 | 25 | 1% | 108.38 |
| GENERAL MOTORS CORPORATION | 87001 | 8TGMCO12341134 | 870000039 | 11/28/005 | 1/9/006 | 1,465.35 | 1,465.35 | - | - | - | - | 1,465.35 | Sales Tax | 592612-001 DI | 10 | 2/9/06 | 749 | 25 | 1% | 266.34 |
| GENERAL MOTORS CORPORATION | 87001 | 8TGMCO12341134 | 870000039 | 11/28/005 | 1/9/006 | 9,768.83 | 9,768.83 | - | - | - | - | 9,768.83 | Rent | 592612-001 DI | 10 | 2/9/06 | 749 | 25 | 1% | 2,442.37 |
| GENERAL MOTORS CORPORATION | 87001 | 8TGMCO12341135 | 870000040 | 11/28/005 | 1/9/006 | 98.13 | 98.13 | - | - | - | - | 98.13 | Sales Tax | 592613-001 DI | 10 | 2/9/06 | 749 | 25 | 1% | 24.53 |
| GENERAL MOTORS CORPORATION | 87001 | 8TGMCO12341135 | 870000041 | 11/28/005 | 1/9/006 | 654.17 | 654.17 | - | - | - | - | 654.17 | Rent | 592613-001 DI | 10 | 2/9/06 | 749 | 25 | 1% | 163.54 |
| GENERAL MOTORS-POWERTRAIN | 75006 | 7SMCO081601 | 750007952 | 11/28/005 | 1/1/006 | 338.49 | 338.49 | - | - | - | - | 338.49 | Rent | 592060-000-DI | 10 | 2/10/06 | 748 | 25 | 1% | 84.62 |
| GENERAL MOTORS CORPORATION | 87001 | 8TGMCO12341118 | 870000042 | 12/27/005 | 2/9/006 | 433.53 | 433.53 | - | - | - | - | 433.53 | Sales Tax | 592595-001 DI | 10 | 3/10/06 | 720 | 24 | 1% | 81.24 |
| GENERAL MOTORS CORPORATION | 87001 | 8TGMCO12341134 | 870000043 | 12/27/005 | 2/9/006 | 1,465.35 | 1,465.35 | - | - | - | - | 1,465.35 | Sales Tax | 592612-001 DI | 10 | 3/10/06 | 720 | 24 | 1% | 104.26 |
| GENERAL MOTORS CORPORATION | 87001 | 8TGMCO12341134 | 870000043 | 12/27/005 | 2/9/006 | 9,768.83 | 9,768.83 | - | - | - | - | 9,768.83 | Rent | 592612-001 DI | 10 | 3/10/06 | 720 | 24 | 1% | 351.68 |
| GENERAL MOTORS CORPORATION | 87001 | 8TGMCO12341135 | 870000044 | 12/27/005 | 2/9/006 | 98.13 | 98.13 | - | - | - | - | 98.13 | Sales Tax | 592613-001 DI | 10 | 3/10/06 | 720 | 24 | 1% | 2,344.52 |
| GENERAL MOTORS CORPORATION | 87001 | 8TGMCO12341135 | 870000045 | 12/27/005 | 2/9/006 | 654.17 | 654.17 | - | - | - | - | 654.17 | Rent | 592613-001 DI | 10 | 3/10/06 | 720 | 24 | 1% | 22.57 |
| GENERAL MOTORS-POWERTRAIN | 75006 | 7SMCO081601 | 750008160 | 12/27/005 | 2/28/006 | 433.53 | 433.53 | - | - | - | - | 433.53 | Sales Tax | 592595-001 DI | 10 | 3/10/06 | 720 | 24 | 1% | 24.51 |
| GENERAL MOTORS CORPORATION | 87001 | 8TGMCO12341118 | 870000046 | 1/26/006 | 3/9/006 | 1,465.35 | 1,465.35 | - | - | - | - | 1,465.35 | Sales Tax | 592612-001 DI | 10 | 4/9/06 | 690 | 23 | 1% | 159.71 |
| GENERAL MOTORS CORPORATION | 87001 | 8TGMCO12341134 | 870000046 | 1/26/006 | 3/9/006 | 9,768.83 | 9,768.83 | - | - | - | - | 9,768.83 | Rent | 592612-001 DI | 10 | 4/9/06 | 690 | 23 | 1% | 97.75 |
| GENERAL MOTORS CORPORATION | 87001 | 8TGMCO12341134 | 870000046 | 1/26/006 | 3/9/006 | 98.13 | 98.13 | - | - | - | - | 98.13 | Sales Tax | 592613-001 DI | 10 | 4/9/06 | 690 | 23 | 1% | 87.75 |
| GENERAL MOTORS CORPORATION | 87001 | 8TGMCO12341135 | 870000047 | 1/26/006 | 3/9/006 | 654.17 | 654.17 | - | - | - | - | 654.17 | Rent | 592613-001 DI | 10 | 4/9/06 | 690 | 23 | 1% | 91.53 |
| GENERAL MOTORS CORPORATION | 87001 | 8TGMCO12341135 | 870000047 | 1/26/006 | 3/9/006 | 98.13 | 98.13 | - | - | - | - | 98.13 | Sales Tax | 592613-001 DI | 10 | 4/9/06 | 690 | 23 | 1% | 337.03 |
| GENERAL MOTORS-POWERTRAIN | 75006 | 7SMCO081601 | 750008607 | 2/27/006 | 4/1/006 | 654.17 | 654.17 | - | - | - | - | 654.17 | Rent | 592613-001 DI | 10 | 4/9/06 | 690 | 23 | 1% | 150.46 |
| GENERAL MOTORS-POWERTRAIN | 75006 | 7SMCO081601 | 750008607 | 3/1/06 | 4/3/06 | 338.49 | 338.49 | - | - | - | - | 338.49 | Rent | 592060-000-DI | 10 | 4/10/06 | 689 | 23 | 1% | 77.85 |
| GENERAL MOTORS-POWERTRAIN | 75006 | 7SMCO081601 | 750008607 | 3/1/06 | 4/3/06 | 338.49 | 338.49 | - | - | - | - | 338.49 | Rent | 592060-000-DI | 10 | 5/10/06 | 659 | 22 | 1% | 74.47 |

| Customer | Acct # | Lease # | Invoice # | InvDate | Due Date | InvAmt | Amount Due | 30Days | 60Days | 90Days | 120Days | Over120Days | Transaction | Lease Reference | Grace Days | Billing Date | # Days Late | # Months Late (round to month) | Late fee rate | Total late fee |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| GENERAL MOTORS CORPORATION | 87001 | 87GMCO12341118 | 870000448 | 3/6/06 | 4/30/06 | 433.53 | 433.53 | - | - | - | - | 433.53 | Sales Tax | 592395-001 DI | 10 | 5/1/06 | 659 | 22 | 1% | 95.38 |
| GENERAL MOTORS CORPORATION | 87001 | 87GMCO12341118 | 870000448 | 3/6/06 | 4/30/06 | 1,669.34 | 1,669.34 | - | - | - | - | 381.52 | Rent | 592395-001 DI | 10 | 5/1/06 | 659 | 22 | 1% | 83.93 |
| GENERAL MOTORS CORPORATION | 87001 | 87GMCO12341134 | 870000449 | 3/6/06 | 4/30/06 | 1,465.35 | 1,465.35 | - | - | - | - | 1,465.35 | Sales Tax | 592613-001 DI | 10 | 5/1/06 | 659 | 22 | 1% | 322.38 |
| GENERAL MOTORS CORPORATION | 87001 | 87GMCO12341134 | 870000449 | 3/6/06 | 4/30/06 | 9,768.83 | 9,768.83 | - | - | - | - | 9,768.83 | Rent | 592613-2001 DI | 10 | 5/1/06 | 659 | 22 | 1% | 2,149.14 |
| GENERAL MOTORS CORPORATION | 87001 | 87GMCO12341135 | 870000450 | 3/6/06 | 4/30/06 | 98.13 | 98.13 | - | - | - | - | 98.13 | Sales Tax | 592613-3-001 DI | 10 | 5/1/06 | 659 | 22 | 1% | 21.59 |
| GENERAL MOTORS CORPORATION | 87001 | 87GMCO12341135 | 870000450 | 3/6/06 | 4/30/06 | 654.17 | 654.17 | - | - | - | - | 654.17 | Rent | 592613-3-001 DI | 10 | 5/1/06 | 659 | 22 | 1% | 143.92 |
| GENERAL MOTORS CORPORATION | 87001 | 87GMCO12341118 | 870000451 | 3/29/06 | 5/30/06 | 433.53 | 433.53 | - | - | - | - | 433.53 | Sales Tax | 592395-001 DI | 10 | 6/9/06 | 629 | 21 | 1% | 91.04 |
| GENERAL MOTORS CORPORATION | 87001 | 87GMCO12341118 | 870000452 | 3/29/06 | 5/30/06 | 1,669.34 | 1,669.34 | - | - | - | - | 381.52 | Rent | 592395-001 DI | 10 | 6/9/06 | 629 | 21 | 1% | 64.11 |
| GENERAL MOTORS CORPORATION | 87001 | 87GMCO12341134 | 870000453 | 3/29/06 | 5/30/06 | 1,465.35 | 1,465.35 | - | - | - | - | 1,465.35 | Sales Tax | 592613-001 DI | 10 | 6/9/06 | 629 | 21 | 1% | 307.72 |
| GENERAL MOTORS CORPORATION | 87001 | 87GMCO12341134 | 870000454 | 3/29/06 | 5/30/06 | 9,768.83 | 9,768.83 | - | - | - | - | 9,768.83 | Rent | 592613-2001 DI | 10 | 6/9/06 | 629 | 21 | 1% | 2,051.45 |
| GENERAL MOTORS-POWERTRAIN | 75006 | 75GMCO0081601 | 750000834 | 3/29/06 | 5/31/06 | 98.13 | 98.13 | - | - | - | - | 98.13 | Sales Tax | 592613-3-001 DI | 10 | 6/9/06 | 629 | 21 | 1% | 20.61 |
| GENERAL MOTORS-POWERTRAIN | 75006 | 75GMCO0081601 | 750000835 | 3/29/06 | 5/31/06 | 654.17 | 654.17 | - | - | - | - | 654.17 | Rent | 592060-0001-DI | 10 | 6/10/06 | 628 | 21 | 1% | 1,315.38 |
| GENERAL MOTORS CORPORATION | 87001 | 87GMCO12341118 | 870000456 | 4/27/06 | 6/30/06 | 338.49 | 338.49 | - | - | - | - | 338.49 | Rent | 592060-0001-DI | 10 | 7/1/06 | 598 | 20 | 1% | 71.08 |
| GENERAL MOTORS CORPORATION | 87001 | 87GMCO12341135 | 870000457 | 4/27/06 | 6/30/06 | 338.49 | 338.49 | - | - | - | - | 338.49 | Sales Tax | 592061-2-001 DI | 10 | 7/1/06 | 598 | 20 | 1% | 67.70 |
| GENERAL MOTORS CORPORATION | 87001 | 87GMCO12341135 | 870000458 | 4/27/06 | 6/30/06 | 385.75 | 385.75 | - | - | - | - | 171.08 | Rent | 592061-2-001 DI | 10 | 7/1/06 | 598 | 20 | 1% | 14.22 |
| GENERAL MOTORS CORPORATION | 87001 | 87GMCO12341134 | 870000459 | 4/27/06 | 6/30/06 | 1,263.23 | 1,263.23 | - | - | - | - | 1,263.23 | Sales Tax | 592613-001 DI | 10 | 7/1/06 | 598 | 20 | 1% | 282.25 |
| GENERAL MOTORS CORPORATION | 87001 | 87GMCO12341134 | 870000460 | 4/27/06 | 6/30/06 | 8,421.39 | 8,421.39 | - | - | - | - | 8,421.39 | Rent | 592613-2001 DI | 10 | 7/1/06 | 598 | 20 | 1% | 1,684.28 |
| GENERAL MOTORS CORPORATION | 87001 | 87GMCO12341135 | 870000461 | 4/27/06 | 6/30/06 | 98.13 | 98.13 | - | - | - | - | 98.13 | Sales Tax | 592061-3-001 DI | 10 | 7/1/06 | 598 | 20 | 1% | 19.63 |
| GENERAL MOTORS CORPORATION | 87001 | 87GMCO12341135 | 870000461 | 4/27/06 | 6/30/06 | 654.17 | 654.17 | - | - | - | - | 654.17 | Rent | 592061-3-001 DI | 10 | 7/1/06 | 598 | 20 | 1% | 130.83 |
| GENERAL MOTORS CORPORATION | 87001 | 87GMCO12341134 | 870000462 | 6/12/06 | 7/30/06 | 1,263.23 | 1,263.23 | - | - | - | - | 1,263.23 | Sales Tax | 592061-2-001 DI | 10 | 8/9/06 | 568 | 19 | 1% | 240.01 |
| GENERAL MOTORS CORPORATION | 87001 | 87GMCO12341134 | 870000464 | 6/12/06 | 7/30/06 | 8,421.39 | 8,421.39 | - | - | - | - | 8,421.39 | Rent | 592613-2001 DI | 10 | 8/9/06 | 568 | 19 | 1% | 1,600.06 |
| GENERAL MOTORS CORPORATION | 87001 | 87GMCO12341135 | 870000465 | 6/12/06 | 7/30/06 | 98.13 | 98.13 | - | - | - | - | 98.13 | Sales Tax | 592061-3-001 DI | 10 | 8/9/06 | 568 | 19 | 1% | 18.64 |
| GENERAL MOTORS-POWERTRAIN | 75006 | 75GMCO0081601 | 750000882 | 6/12/06 | 7/30/06 | 654.17 | 654.17 | - | - | - | - | 654.17 | Rent | 592061-3-001 DI | 10 | 8/9/06 | 568 | 19 | 1% | 124.29 |
| GENERAL MOTORS CORPORATION | 87001 | 87GMCO12341135 | 870000466 | 6/28/06 | 8/30/06 | 98.13 | 98.13 | - | - | - | - | 98.13 | Sales Tax | 592061-3-001 DI | 10 | 8/9/06 | 568 | 19 | 1% | 64.31 |
| GENERAL MOTORS CORPORATION | 87001 | 87GMCO12341134 | 870000467 | 6/28/06 | 8/30/06 | 338.49 | 338.49 | - | - | - | - | 338.49 | Rent | 592061-3-001 DI | 10 | 8/10/06 | 567 | 19 | 1% | 78.04 |
| GENERAL MOTORS CORPORATION | 87001 | 87GMCO12341118 | 870000468 | 6/28/06 | 8/30/06 | 433.53 | 433.53 | - | - | - | - | 433.53 | Sales Tax | 592395-001 DI | 10 | 9/9/06 | 537 | 18 | 1% | 300.40 |
| GENERAL MOTORS CORPORATION | 87001 | 87GMCO12341118 | 870000448 | 6/28/06 | 8/30/06 | 1,669.34 | 1,669.34 | - | - | - | - | 1,669.34 | Rent | 592395-001 DI | 10 | 9/9/06 | 537 | 18 | 1% | 227.33 |
| GENERAL MOTORS CORPORATION | 87001 | 87GMCO12341135 | 870000449 | 6/28/06 | 8/30/06 | 1,263.23 | 1,263.23 | - | - | - | - | 1,263.23 | Sales Tax | 592613-001 DI | 10 | 9/9/06 | 537 | 18 | 1% | 1,515.98 |
| GENERAL MOTORS CORPORATION | 87001 | 87GMCO12341134 | 870000450 | 6/28/06 | 8/30/06 | 8,421.39 | 8,421.39 | - | - | - | - | 8,421.39 | Rent | 592613-2001 DI | 10 | 9/9/06 | 537 | 18 | 1% | 17.66 |
| GENERAL MOTORS CORPORATION | 87001 | 87GMCO12341135 | 870000451 | 6/28/06 | 8/30/06 | 98.13 | 98.13 | - | - | - | - | 98.13 | Sales Tax | 592061-3-001 DI | 10 | 9/9/06 | 537 | 18 | 1% | 117.75 |
| GENERAL MOTORS-POWERTRAIN | 75006 | 75GMCO0081601 | 870000452 | 6/28/06 | 8/30/06 | 654.17 | 654.17 | - | - | - | - | 654.17 | Rent | 592061-3-001 DI | 10 | 9/9/06 | 537 | 18 | 1% | 60.93 |
| GENERAL MOTORS CORPORATION | 87001 | 87GMCO12341134 | 870000453 | 7/26/06 | 9/30/06 | 338.49 | 338.49 | - | - | - | - | 338.49 | Rent | 592061-3-001 DI | 10 | 10/10/06 | 536 | 18 | 1% | 57.95 |
| GENERAL MOTORS CORPORATION | 87001 | 87GMCO12341118 | 870000454 | 7/26/06 | 9/30/06 | 433.53 | 433.53 | - | - | - | - | 433.53 | Sales Tax | 592395-001 DI | 10 | 10/10/06 | 506 | 17 | 1% | 73.70 |
| GENERAL MOTORS CORPORATION | 87001 | 87GMCO12341118 | 870000455 | 7/26/06 | 9/30/06 | 2,890.10 | 2,890.10 | - | - | - | - | 2,890.10 | Rent | 592395-001 DI | 10 | 10/10/06 | 506 | 17 | 1% | 491.32 |
| GENERAL MOTORS CORPORATION | 87001 | 87GMCO12341134 | 870000456 | 7/26/06 | 9/30/06 | 1,263.23 | 1,263.23 | - | - | - | - | 1,263.23 | Sales Tax | 592613-001 DI | 10 | 10/10/06 | 506 | 17 | 1% | 214.75 |
| GENERAL MOTORS CORPORATION | 87001 | 87GMCO12341134 | 870000457 | 7/26/06 | 9/30/06 | 8,421.39 | 8,421.39 | - | - | - | - | 8,421.39 | Rent | 592613-2001 DI | 10 | 10/10/06 | 506 | 17 | 1% | 1,431.46 |
| GENERAL MOTORS CORPORATION | 87001 | 87GMCO12341135 | 870000458 | 7/26/06 | 9/30/06 | 98.13 | 98.13 | - | - | - | - | 98.13 | Sales Tax | 592061-3-001 DI | 10 | 10/10/06 | 506 | 17 | 1% | 16.68 |
| GENERAL MOTORS-POWERTRAIN | 75006 | 75GMCO0081601 | 870000459 | 7/26/06 | 9/30/06 | 654.17 | 654.17 | - | - | - | - | 654.17 | Rent | 592061-3-001 DI | 10 | 10/10/06 | 506 | 17 | 1% | 111.21 |
| GENERAL MOTORS CORPORATION | 87001 | 87GMCO12341118 | 870000461 | 8/28/06 | 10/30/06 | 433.53 | 433.53 | - | - | - | - | 433.53 | Sales Tax | 592395-001 DI | 10 | 11/9/06 | 476 | 16 | 1% | 69.36 |
| GENERAL MOTORS CORPORATION | 87001 | 87GMCO12341118 | 870000462 | 8/28/06 | 10/30/06 | 2,890.10 | 2,890.10 | - | - | - | - | 2,890.10 | Rent | 592395-001 DI | 10 | 11/9/06 | 476 | 16 | 1% | 64.43 |
| GENERAL MOTORS CORPORATION | 87001 | 87GMCO12341134 | 870000464 | 8/28/06 | 10/30/06 | 1,263.23 | 1,263.23 | - | - | - | - | 1,263.23 | Sales Tax | 592613-001 DI | 10 | 11/9/06 | 476 | 16 | 1% | 202.12 |
| GENERAL MOTORS CORPORATION | 87001 | 87GMCO12341134 | 870000465 | 8/28/06 | 10/30/06 | 8,421.39 | 8,421.39 | - | - | - | - | 8,421.39 | Rent | 592613-2001 DI | 10 | 11/9/06 | 476 | 16 | 1% | 1,347.42 |
| GENERAL MOTORS CORPORATION | 87001 | 87GMCO12341135 | 870000466 | 8/28/06 | 10/30/06 | 98.13 | 98.13 | - | - | - | - | 98.13 | Sales Tax | 592061-3-001 DI | 10 | 11/9/06 | 476 | 16 | 1% | 15.70 |
| GENERAL MOTORS CORPORATION | 87001 | 87GMCO12341135 | 870000470 | 8/28/06 | 10/30/06 | 654.17 | 654.17 | - | - | - | - | 654.17 | Rent | 592061-3-001 DI | 10 | 11/9/06 | 476 | 16 | 1% | 104.67 |

**Late Fee Summary**

| Delinq Date | # Days Late | # Months Late (rnd to week) | Late fee rate | Total late fee |
|---|---|---|---|---|
| 11/10/06 | 475 | 16 | 1% | 54.16 |
| 11/10/06 | 455 | 16 | 1% | 36.86 |
| 11/10/06 | 455 | 16 | 1% | 18.43 |
| 12/10/06 | 445 | 15 | 1% | 50.77 |
| 12/10/06 | 445 | 15 | 1% | 65.03 |
| 12/10/06 | 445 | 15 | 1% | 433.52 |
| 12/10/06 | 445 | 15 | 1% | 189.48 |
| 12/10/06 | 445 | 15 | 1% | 1,263.21 |
| 12/10/06 | 445 | 15 | 1% | 14.72 |
| 12/10/06 | 445 | 15 | 1% | 98.13 |
| 1/9/07 | 415 | 14 | 1% | 60.69 |
| 1/9/07 | 415 | 14 | 1% | 404.61 |
| 1/9/07 | 415 | 14 | 1% | 176.85 |
| 1/9/07 | 415 | 14 | 1% | 1,178.99 |
| 1/9/07 | 415 | 14 | 1% | 13.74 |
| 1/9/07 | 415 | 14 | 1% | 91.58 |
| 1/10/07 | 414 | 14 | 1% | 47.39 |
| 2/9/07 | 384 | 13 | 1% | 56.36 |
| 2/9/07 | 384 | 13 | 1% | 75.11 |
| 2/9/07 | 384 | 13 | 1% | 164.22 |
| 2/9/07 | 384 | 13 | 1% | 1,094.78 |
| 2/9/07 | 384 | 13 | 1% | 12.76 |
| 2/9/07 | 384 | 13 | 1% | 85.04 |
| 2/10/07 | 383 | 13 | 1% | 44.00 |
| 2/19/07 | 374 | 13 | 1% | 21.39 |
| 3/10/07 | 355 | 12 | 1% | 40.62 |
| 3/10/07 | 355 | 12 | 1% | 52.68 |
| 3/10/07 | 355 | 12 | 1% | 334.54 |
| 3/10/07 | 355 | 12 | 1% | 151.59 |
| 3/10/07 | 355 | 12 | 1% | 1,001.57 |
| 3/10/07 | 355 | 12 | 1% | 11.74 |
| 3/10/07 | 355 | 12 | 1% | 78.50 |
| 3/29/07 | 336 | 12 | 1% | 188.13 |
| 3/29/07 | 336 | 12 | 1% | 2,842.00 |
| 3/29/07 | 336 | 12 | 1% | 46.61 |
| 3/29/07 | 336 | 12 | 1% | 734.30 |
| 3/29/07 | 336 | 12 | 1% | 30.30 |
| 3/29/07 | 336 | 12 | 1% | 457.80 |
| 4/9/07 | 325 | 11 | 1% | 43.29 |
| 4/9/07 | 325 | 11 | 1% | 728.19 |
| 4/9/07 | 325 | 11 | 1% | 47.69 |
| 4/9/07 | 325 | 11 | 1% | 306.66 |
| 4/9/07 | 325 | 11 | 1% | 136.96 |
| 4/9/07 | 325 | 11 | 1% | 926.35 |

**Invoice Detail**

| Customer | Acct # | Lease # | Invoice # | InvDate | Due Date | InvAmt | Amount Due | 30Days | 60Days | 90Days | 120Days | Over120Days | Transaction | Lease Reference | Grace Days |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| GENERAL MOTORS-POWERTRAIN | 75006 | 75GMCO081601 | 750008154 | 8/28/06 | 10/31/06 | 338.49 | 338.49 | - | - | - | - | 338.49 | Rent | 592064-001-DI | 10 |
| GENERAL MOTORS-POWERTRAIN | 75006 | 75GMCO081501 | 750008202 | 11/6/06 | 12/20/06 | 220.38 | 220.38 | - | - | - | - | 220.38 | Property Tax | 592059-001 DI | 10 |
| GENERAL MOTORS-POWERTRAIN | 75006 | 75GMCO081501R1A | 750008203 | 11/6/06 | 12/20/06 | 115.19 | 115.19 | - | - | - | - | 115.19 | Property Tax | 592059-001 DI | 10 |
| GENERAL MOTORS-POWERTRAIN | 75006 | 75GMCO081601 | 750008178 | 9/26/06 | 11/30/06 | 338.49 | 338.49 | - | - | - | - | 338.49 | Rent | 592064-001 DI | 10 |
| GENERAL MOTORS CORPORATION | 87001 | 87GMCO1234118 | 870000471 | 9/26/06 | 11/30/06 | 433.53 | 433.53 | - | - | - | - | 433.53 | Sales Tax | 592595-001 DI | 10 |
| GENERAL MOTORS CORPORATION | 87001 | 87GMCO1234118 | 870000471 | 9/26/06 | 11/30/06 | 2,890.10 | 2,890.10 | - | - | - | - | 2,890.10 | Rent | 592595-001 DI | 10 |
| GENERAL MOTORS CORPORATION | 87001 | 87GMCO1234134 | 870000472 | 9/26/06 | 11/30/06 | 1,263.23 | 1,263.23 | - | - | - | - | 1,263.23 | Sales Tax | 592613-001 DI | 10 |
| GENERAL MOTORS CORPORATION | 87001 | 87GMCO1234134 | 870000472 | 9/26/06 | 11/30/06 | 8,421.39 | 8,421.39 | - | - | - | - | 8,421.39 | Rent | 592613-001 DI | 10 |
| GENERAL MOTORS CORPORATION | 87001 | 87GMCO1234135 | 870000473 | 9/26/06 | 11/30/06 | 98.13 | 98.13 | - | - | - | - | 98.13 | Sales Tax | 592611-001 DI | 10 |
| GENERAL MOTORS CORPORATION | 87001 | 87GMCO1234135 | 870000473 | 9/26/06 | 11/30/06 | 654.17 | 654.17 | - | - | - | - | 654.17 | Rent | 592611-001 DI | 10 |
| GENERAL MOTORS-POWERTRAIN | 75006 | 75GMCO081601 | 750008225 | 10/1/06 | 12/31/06 | 338.49 | 338.49 | - | - | - | - | 338.49 | Rent | 592064-001-DI | 10 |
| GENERAL MOTORS CORPORATION | 87001 | 87GMCO1234118 | 870000477 | 11/29/06 | 1/30/07 | 433.53 | 433.53 | - | - | - | - | 433.53 | Sales Tax | 592595-001 DI | 10 |
| GENERAL MOTORS CORPORATION | 87001 | 87GMCO1234118 | 870000491 | 11/29/06 | 1/30/07 | 2,890.10 | 2,890.10 | - | - | - | - | 2,890.10 | Rent | 592595-001 DI | 10 |
| GENERAL MOTORS CORPORATION | 87001 | 87GMCO1234134 | 870000475 | 11/29/06 | 1/30/07 | 1,263.23 | 1,263.23 | - | - | - | - | 1,263.23 | Sales Tax | 592613-001 DI | 10 |
| GENERAL MOTORS CORPORATION | 87001 | 87GMCO1234134 | 870000478 | 11/29/06 | 1/30/07 | 8,421.39 | 8,421.39 | - | - | - | - | 8,421.39 | Rent | 592613-001 DI | 10 |
| GENERAL MOTORS CORPORATION | 87001 | 87GMCO1234135 | 870000476 | 11/29/06 | 1/30/07 | 98.13 | 98.13 | - | - | - | - | 98.13 | Sales Tax | 592611-001 DI | 10 |
| GENERAL MOTORS CORPORATION | 87001 | 87GMCO1234135 | 870000479 | 11/29/06 | 1/30/07 | 654.17 | 654.17 | - | - | - | - | 654.17 | Rent | 592611-001 DI | 10 |
| GENERAL MOTORS-POWERTRAIN | 75006 | 75GMCO081601 | 750008246 | 12/1/06 | 1/31/07 | 338.49 | 338.49 | - | - | - | - | 338.49 | Rent | 592064-001-DI | 10 |
| GENERAL MOTORS CORPORATION | 87001 | 87GMCO1234118 | 750008281 | 1/24/07 | 2/9/07 | 164.51 | 164.51 | - | - | - | - | 164.51 | Property Tax | 592060-001-DI | 10 |
| GENERAL MOTORS CORPORATION | 87001 | 87GMCO1234118 | 750008206 | 12/28/06 | 2/28/07 | 338.49 | 338.49 | - | - | - | - | 338.49 | Rent | 592060-001-DI | 10 |
| GENERAL MOTORS CORPORATION | 87001 | 87GMCO123411 | 890000271 | 1/24/07 | 2/9/07 | 433.53 | 433.53 | - | - | - | - | 433.53 | Sales Tax | 592295-001 DI | 10 |
| GENERAL MOTORS CORPORATION | 87001 | 87GMCO1234118 | 870000480 | 12/28/06 | 2/28/07 | 2,787.80 | 2,787.80 | - | - | - | - | 2,787.80 | Rent | 592295-001 DI | 10 |
| GENERAL MOTORS CORPORATION | 87001 | 87GMCO1234134 | 870000481 | 12/28/06 | 2/28/07 | 1,263.23 | 1,263.23 | - | - | - | - | 1,263.23 | Sales Tax | 592613-001 DI | 10 |
| GENERAL MOTORS CORPORATION | 87001 | 87GMCO1234135 | 870000482 | 12/28/06 | 2/28/07 | 8,421.39 | 8,421.39 | - | - | - | - | 8,421.39 | Rent | 592613-001 DI | 10 |
| GENERAL MOTORS CORPORATION | 87001 | 87GMCO1234135 | 870000479 | 12/28/06 | 2/28/07 | 98.13 | 98.13 | - | - | - | - | 98.13 | Sales Tax | 592611-001 DI | 10 |
| GENERAL MOTORS CORPORATION | 87001 | 87GMCO1234135 | 870000482 | 12/28/06 | 2/28/07 | 654.17 | 654.17 | - | - | - | - | 654.17 | Rent | 592611-001 DI | 10 |
| DELPHI CORPORATION | 68009 | 68DELP0A-2R2 | 680010224 | 3/14/07 | 3/19/07 | 1,567.71 | 1,567.71 | - | - | - | - | 1,567.71 | Property Tax | DELPHENA-2 | 10 |
| DELPHI CORPORATION | 68009 | 68DELP0A-2R2 | 680010224 | 3/14/07 | 3/19/07 | 31,354.16 | 23,683.36 | - | - | - | - | 23,683.36 | Rent | DELPHENA-2 | 10 |
| DELPHI CORPORATION | 68009 | 68DELP0A-3R1 | 680010225 | 3/14/07 | 3/19/07 | 465.05 | 465.05 | - | - | - | - | 800.10 | Property Tax | DELPHENA-1 | 10 |
| DELPHI CORPORATION | 68009 | 68DELP0A-3R1 | 680010226 | 3/14/07 | 3/19/07 | 8,101.10 | 6,119.17 | - | - | - | - | 6,119.17 | Rent | DELPHENA-1 | 10 |
| DELPHI CORPORATION | 68009 | 68DELP0A-4-R3 | 680010226 | 3/14/07 | 3/19/07 | 252.53 | 252.53 | - | - | - | - | 252.53 | Property Tax | DEPHIA-4 | 10 |
| DELPHI CORPORATION | 68009 | 68DELP0A-4-R3 | 680010226 | 3/14/07 | 3/19/07 | 5,050.65 | 3,815.01 | - | - | - | - | 3,815.01 | Rent | DEPHIA-4 | 10 |
| DELPHI CORPORATION | 68009 | 68DELP0A-5-R3 | 680010227 | 3/14/07 | 3/19/07 | 401.69 | 401.69 | - | - | - | - | 6,068.29 | Property Tax | DEPHIA-5 | 10 |
| DELPHI CORPORATION | 68009 | 68DELP0A-5-R3 | 680010227 | 3/14/07 | 3/19/07 | 8,033.75 | 6,068.29 | - | - | - | - | 6,068.29 | Rent | DEPHIA-5 | 10 |
| GENERAL MOTORS CORPORATION | 87001 | 87GMCO1234118 | 870000483 | 1/31/07 | 3/30/07 | 433.53 | 433.53 | - | - | - | - | 433.53 | Sales Tax | 592595-001 DI | 10 |
| GENERAL MOTORS CORPORATION | 87001 | 87GMCO1234118 | 870000483 | 1/31/07 | 3/30/07 | 2,787.80 | 2,787.80 | - | - | - | - | 2,787.80 | Rent | 592295-001 DI | 10 |
| GENERAL MOTORS CORPORATION | 87001 | 87GMCO1234134 | 870000484 | 1/31/07 | 3/30/07 | 1,263.23 | 1,263.23 | - | - | - | - | 1,263.23 | Sales Tax | 592613-001 DI | 10 |
| GENERAL MOTORS CORPORATION | 87001 | 87GMCO1234134 | 870000484 | 1/31/07 | 3/30/07 | 8,421.39 | 8,421.39 | - | - | - | - | 8,421.39 | Rent | 592613-001 DI | 10 |

| Billing Date | # Days Late | # Months Late (round to month) | Late fee rate | Total late fee |
|---|---|---|---|---|
| 4/9/07 | 325 | 11 | 1% | 10.79 |
| 4/9/07 | 325 | 11 | 1% | 71.96 |
| 4/10/07 | 324 | 11 | 1% | 185.13 |
| 4/10/07 | 324 | 11 | 1% | 37.23 |
| 4/26/07 | 308 | 11 | 1% | 72.74 |
| 5/10/07 | 294 | 10 | 1% | 187.00 |
| 5/10/07 | 294 | 10 | 1% | 33.85 |
| 5/10/07 | 294 | 10 | 1% | 43.35 |
| 5/10/07 | 294 | 10 | 1% | 219.41 |
| 5/10/07 | 294 | 10 | 1% | 126.32 |
| 5/10/07 | 294 | 10 | 1% | 842.14 |
| 5/10/07 | 294 | 10 | 1% | 9.81 |
| 6/9/07 | 264 | 9 | 1% | 65.42 |
| 6/9/07 | 264 | 9 | 1% | 9.10 |
| 6/9/07 | 264 | 9 | 1% | 30.02 |
| 6/9/07 | 264 | 9 | 1% | 197.47 |
| 6/9/07 | 264 | 9 | 1% | 113.69 |
| 6/9/07 | 264 | 9 | 1% | 757.93 |
| 6/9/07 | 264 | 9 | 1% | 8.83 |
| 6/9/07 | 264 | 9 | 1% | 58.88 |
| 6/10/07 | 263 | 9 | 1% | 30.46 |
| 7/10/07 | 233 | 8 | 1% | 23.12 |
| 7/10/07 | 233 | 8 | 1% | 27.08 |
| 7/10/07 | 233 | 8 | 1% | 34.68 |
| 7/10/07 | 233 | 8 | 1% | 41.98 |
| 7/10/07 | 233 | 8 | 1% | 101.06 |
| 7/10/07 | 233 | 8 | 1% | 7.85 |
| 7/10/07 | 233 | 8 | 1% | 52.33 |
| 8/9/07 | 203 | 7 | 1% | 41.75 |
| 8/9/07 | 203 | 7 | 1% | 40.47 |
| 8/9/07 | 203 | 7 | 1% | 30.35 |
| 8/9/07 | 203 | 7 | 1% | 36.75 |
| 8/9/07 | 203 | 7 | 1% | 24.76 |
| 8/9/07 | 203 | 7 | 1% | 165.85 |
| 8/9/07 | 203 | 7 | 1% | 6.87 |
| 8/9/07 | 202 | 7 | 1% | 45.79 |
| 8/10/07 | 202 | 7 | 1% | 44.25 |
| 8/10/07 | 202 | 7 | 1% | 20.69 |
| 8/10/07 | 202 | 7 | 1% | 23.69 |
| 8/17/07 | 195 | 7 | 1% | 133.37 |
| 9/9/07 | 172 | 6 | 1% | 13.37 |
| 9/9/07 | 172 | 6 | 1% | 35.77 |
| 9/9/07 | 172 | 6 | 1% | 24.34 |
| 9/9/07 | 172 | 6 | 1% | 153.87 |

| Customer | Acct # | Lease # | Invoice # | InvDate | Due Date | InvAmt | Amount Due | 30Days | 60Days | 90Days | 120Days | Over120Days | Transaction | Lease Reference | Grace Days |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| GENERAL MOTORS CORPORATION | 87001 | 87GMCO123411135 | 870000485 | 1/31/07 | 3/30/07 | 98.13 | 98.13 | - | - | - | - | 98.13 | Sales Tax | 592613-2001 DI | 10 |
| GENERAL MOTORS-POWERTRAIN | 87001 | 87GMCO123411135 | 870000485 | 1/31/07 | 3/30/07 | 654.17 | 654.17 | - | - | - | - | 654.17 | Rent | 592613-4001 DI | 10 |
| GENERAL MOTORS CORPORATION | 70019 | 7XGMCO048602R2 | 700014965 | 1/31/07 | 3/31/07 | 1,870.00 | 1,870.00 | - | - | - | - | 1,680.01 | Rent | 590583-002 DI | 10 |
| GENERAL MOTORS-POWERTRAIN | 75006 | 75GMCO0081601 | 750008304 | 1/31/07 | 3/31/07 | 338.49 | 338.49 | - | - | - | - | 338.49 | Rent | 592060-001 DI | 10 |
| GENERAL MOTORS CORPORATION | 70019 | 7XGMCO048602R2 | 700014933 | 3/26/07 | 4/16/07 | 661.29 | 661.29 | - | - | - | - | 661.29 | Property Tax | 590583-002 DI | 10 |
| GENERAL MOTORS CORPORATION | 70019 | 7XGMCO048602R2 | 700014916 | 2/21/07 | 4/30/07 | 1,870.00 | 1,870.00 | - | - | - | - | 1,870.00 | Rent | 590583-002 DI | 10 |
| GENERAL MOTORS-POWERTRAIN | 75006 | 75GMCO0081601 | 750008325 | 2/21/07 | 4/30/07 | 338.49 | 338.49 | - | - | - | - | 338.49 | Rent | 592060-001 DI | 10 |
| GENERAL MOTORS CORPORATION | 87001 | 87GMCO123411118 | 870000486 | 2/21/07 | 4/30/07 | 433.53 | 433.53 | - | - | - | - | 433.53 | Rent | 592595-001 DI | 10 |
| GENERAL MOTORS CORPORATION | 87001 | 87GMCO123411134 | 870000487 | 2/21/07 | 4/30/07 | 2,194.12 | 2,194.12 | - | - | - | - | 2,194.12 | Rent | 592395-001 DI | 10 |
| GENERAL MOTORS CORPORATION | 87001 | 87GMCO123411134 | 870000487 | 2/21/07 | 4/30/07 | 1,263.33 | 1,263.33 | - | - | - | - | 1,263.33 | Rent | 592612-001 DI | 10 |
| GENERAL MOTORS CORPORATION | 87001 | 87GMCO123411135 | 870000488 | 2/21/07 | 4/30/07 | 8,421.39 | 8,421.39 | - | - | - | - | 8,421.39 | Rent | 592612-001 DI | 10 |
| GENERAL MOTORS CORPORATION | 87001 | 87GMCO123411135 | 870000488 | 2/21/07 | 4/30/07 | 98.13 | 98.13 | - | - | - | - | 98.13 | Sales Tax | 592613-2001 DI | 10 |
| GENERAL MOTORS-POWERTRAIN | 75006 | 75GMCO0081501 | 750008339 | 3/15/07 | 5/30/07 | 654.17 | 654.17 | - | - | - | - | 101.14 | Rent | 592059-001 DI | 10 |
| GENERAL MOTORS CORPORATION | 87001 | 87GMCO123411118 | 870000489 | 3/15/07 | 5/30/07 | 577.87 | 577.87 | - | - | - | - | 433.53 | Rent | 592595-001 DI | 10 |
| GENERAL MOTORS CORPORATION | 87001 | 87GMCO123411134 | 870000489 | 3/15/07 | 5/30/07 | 433.53 | 433.53 | - | - | - | - | 433.53 | Sales Tax | 592595-001 DI | 10 |
| GENERAL MOTORS CORPORATION | 87001 | 87GMCO123411134 | 870000490 | 3/15/07 | 5/30/07 | 2,194.12 | 2,194.12 | - | - | - | - | 2,194.12 | Rent | 592395-001 DI | 10 |
| GENERAL MOTORS CORPORATION | 87001 | 87GMCO123411135 | 870000490 | 3/15/07 | 5/30/07 | 1,263.33 | 1,263.33 | - | - | - | - | 1,263.33 | Rent | 592612-001 DI | 10 |
| GENERAL MOTORS CORPORATION | 87001 | 87GMCO123411135 | 870000491 | 3/15/07 | 5/30/07 | 8,421.39 | 8,421.39 | - | - | - | - | 8,421.39 | Rent | 592612-001 DI | 10 |
| GENERAL MOTORS CORPORATION | 87001 | 87GMCO123411135 | 870000491 | 3/15/07 | 5/30/07 | 98.13 | 98.13 | - | - | - | - | 98.13 | Sales Tax | 592613-2001 DI | 10 |
| GENERAL MOTORS-POWERTRAIN | 75006 | 75GMCO0081501 | 870000491 | 3/15/07 | 5/31/07 | 654.17 | 654.17 | - | - | - | - | 654.17 | Rent | 592613-4001 DI | 10 |
| GENERAL MOTORS-POWERTRAIN | 75006 | 75GMCO0081601 | 750008381 | 4/17/07 | 6/30/07 | 338.49 | 338.49 | - | - | - | - | 338.49 | Rent | 592060-001 DI | 10 |
| GENERAL MOTORS CORPORATION | 87001 | 87GMCO123411118 | 750008382 | 4/17/07 | 6/30/07 | 577.87 | 288.94 | - | - | - | - | 288.94 | Rent | 592059-001-DI | 10 |
| GENERAL MOTORS CORPORATION | 87001 | 87GMCO123411134 | 870000492 | 4/17/07 | 6/30/07 | 433.53 | 433.53 | - | - | - | - | 433.53 | Rent | 592595-001 DI | 10 |
| GENERAL MOTORS CORPORATION | 87001 | 87GMCO123411135 | 870000492 | 4/17/07 | 6/30/07 | 433.53 | 433.53 | - | - | - | - | 433.53 | Sales Tax | 592595-001 DI | 10 |
| GENERAL MOTORS CORPORATION | 87001 | 87GMCO123411135 | 870000493 | 4/17/07 | 6/30/07 | 1,669.34 | 524.78 | - | - | - | - | 524.78 | Rent | 592061-001-DI | 10 |
| GENERAL MOTORS CORPORATION | 87001 | 87GMCO123411135 | 870000493 | 4/17/07 | 6/30/07 | 1,263.33 | 1,263.33 | - | - | - | - | 1,263.33 | Rent | 592612-001 DI | 10 |
| GENERAL MOTORS CORPORATION | 87001 | 87GMCO123411135 | 870000494 | 4/17/07 | 6/30/07 | 8,421.39 | 8,421.39 | - | - | - | - | 8,421.39 | Rent | 592612-001 DI | 10 |
| GENERAL MOTORS CORPORATION | 87001 | 87GMCO123411135 | 870000494 | 4/17/07 | 6/30/07 | 98.13 | 98.13 | - | - | - | - | 98.13 | Sales Tax | 592613-2001 DI | 10 |
| GENERAL MOTORS-POWERTRAIN | 75006 | 75GMCO00788228131A | 750008401 | 5/17/07 | 7/30/07 | 654.17 | 654.17 | - | - | - | - | 654.17 | Rent | 592613-4001 DI | 10 |
| GENERAL MOTORS-POWERTRAIN | 75006 | 87GMCO123411118 | 750008402 | 5/17/07 | 7/30/07 | 802.42 | 996.15 | - | - | - | - | 996.15 | Rent | 592032-002 DI | 10 |
| GENERAL MOTORS CORPORATION | 87001 | 87GMCO123411134 | 870000495 | 5/17/07 | 7/30/07 | 577.87 | 577.87 | - | - | - | - | 577.87 | Rent | 592059-001-DI | 10 |
| GENERAL MOTORS CORPORATION | 87001 | 87GMCO123411135 | 870000495 | 5/17/07 | 7/30/07 | 433.53 | 433.53 | - | - | - | - | 433.53 | Sales Tax | 592595-001 DI | 10 |
| GENERAL MOTORS CORPORATION | 87001 | 87GMCO123411135 | 870000496 | 5/17/07 | 7/30/07 | 1,669.34 | 524.78 | - | - | - | - | 524.78 | Rent | 592061-001-DI | 10 |
| GENERAL MOTORS-POWERTRAIN | 75006 | 75GMCO00788228131A | 870000496 | 5/17/07 | 7/30/07 | 353.71 | 353.71 | - | - | - | - | 2,358.02 | Rent | 592612-2001 DI | 10 |
| GENERAL MOTORS-POWERTRAIN | 75006 | 75GMCO00788228131A | 870000497 | 5/17/07 | 7/30/07 | 4,379.18 | 4,379.18 | - | - | - | - | 2,358.02 | Rent | 592612-2001 DI | 10 |
| GENERAL MOTORS CORPORATION | 70019 | 75GMCO00788228131A | 700015901 | 7/24/07 | 8/7/07 | 98.13 | 98.13 | - | - | - | - | 98.13 | Property Tax | 590583-002 DI | 10 |
| GENERAL MOTORS-POWERTRAIN | 75006 | 75GMCO0078822 | 750008409 | 6/22/07 | 8/30/07 | 654.17 | 654.17 | - | - | - | - | 654.17 | Rent | 592613-4001 DI | 10 |
| GENERAL MOTORS-POWERTRAIN | 75006 | 75GMCO0078803 | 750008410 | 6/22/07 | 8/30/07 | 632.08 | 632.08 | - | - | - | - | 632.08 | Rent | 592032-002 DI | 10 |
| GENERAL MOTORS-POWERTRAIN | 75006 | 75GMCO0081601 | 750008411 | 6/22/07 | 8/30/07 | 999.81 | 999.81 | - | - | - | - | 399.81 | Rent | 590583-002 DI | 10 |
| GENERAL MOTORS-POWERTRAIN | 75006 | 75GMCO00788411 | 870000497 | 5/17/07 | 7/31/07 | 338.49 | 338.49 | - | - | - | - | 399.81 | Rent | 592060-001 DI | 10 |
| GENERAL MOTORS CORPORATION | 75006 | 75GMCO0081501R1A | 700015902 | 8/7/07 | 8/30/07 | 1,762.36 | 1,762.36 | - | - | - | - | 1,762.36 | Property Tax | 590583-002 DI | 10 |
| GENERAL MOTORS-POWERTRAIN | 75006 | 75GMCO00788228131A | 750008422 | 6/22/07 | 8/30/07 | 802.42 | 996.15 | - | - | - | - | 996.15 | Rent | 592032-002 DI | 10 |
| GENERAL MOTORS-POWERTRAIN | 75006 | 75GMCO00788228131A | 750008411 | 5/17/07 | 8/30/07 | 577.87 | 577.87 | - | - | - | - | 577.87 | Rent | 592059-001-DI | 10 |
| GENERAL MOTORS-POWERTRAIN | 75006 | 75GMCO00788228131A | 750008425 | 7/22/07 | 8/30/07 | 2,752.34 | 2,564.54 | - | - | - | - | 2,564.54 | Rent | 592059-001-DI | 10 |

| Customer | Acct # | Lease # | Invoice # | Inv Date | Due Date | Inv Amt | Amount Due | 30 Days | 60 Days | 90 Days | 120 Days | Over 120 Days | Transaction | Lease Reference | Grace Days | Billing Date | # Days Late | # Months Late (to month) | Late fee rate | Total late fee |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| GENERAL MOTORS CORPORATION | 87001 | 87GMCO1234118 | 870000498 | 6/22/07 | 8/10/07 | 433.53 | 433.53 | - | - | - | - | 433.53 | Sales Tax | 592295-001 DI | 10 | 9/9/07 | 172 | 6 | 1% | 26.01 |
| GENERAL MOTORS CORPORATION | 87001 | 87GMCO1234118 | 870000498 | 6/22/07 | 8/10/07 | 524.78 | 524.78 | - | - | - | - | 524.78 | Rent | 592295-001 DI | 10 | 9/9/07 | 172 | 6 | 1% | 31.49 |
| GENERAL MOTORS-POWERTRAIN | 87001 | 87GMCO1234134 | 870000499 | 6/22/07 | 8/10/07 | 555.83 | 303.18 | - | - | - | - | 303.18 | Sales Tax | 592561-001 DI | 10 | 9/9/07 | 172 | 6 | 1% | 18.19 |
| GENERAL MOTORS CORPORATION | 87001 | 87GMCO1234134 | 870000499 | 6/22/07 | 8/10/07 | 3,705.46 | 2,021.16 | - | - | - | - | 2,021.16 | Rent | 592561-001 DI | 10 | 9/9/07 | 172 | 6 | 1% | 121.27 |
| GENERAL MOTORS CORPORATION | 87001 | 87GMCO1234135 | 870000500 | 6/22/07 | 8/10/07 | 98.13 | 98.13 | - | - | - | - | 98.13 | Sales Tax | 592361-001 DI | 10 | 9/9/07 | 172 | 6 | 1% | 5.89 |
| GENERAL MOTORS-POWERTRAIN | 87001 | 87GMCO1234135 | 870000500 | 6/22/07 | 8/10/07 | 654.17 | 654.17 | - | - | - | - | 654.17 | Rent | 592361-001 DI | 10 | 9/9/07 | 172 | 6 | 1% | 39.25 |
| GENERAL MOTORS CORPORATION | 75006 | 75GMCO0078803 | 750008411 | 7/18/07 | 8/11/07 | 632.08 | 632.08 | - | - | - | - | 632.08 | Rent | 592033-002 DI | 10 | 9/10/07 | 171 | 6 | 1% | 37.92 |
| GENERAL MOTORS-POWERTRAIN | 75006 | 75GMCO0078822 | 750008432 | 6/22/07 | 8/11/07 | 1,234.49 | 1,234.49 | - | - | - | - | 1,234.49 | Rent | 592059-001 DI | 10 | 9/10/07 | 171 | 6 | 1% | 74.07 |
| GENERAL MOTORS CORPORATION | 75006 | 75GMCO0081601 | 750008433 | 6/22/07 | 8/11/07 | 338.49 | 338.49 | - | - | - | - | 338.49 | Rent | 592060-001 DI | 10 | 9/10/07 | 171 | 6 | 1% | 20.31 |
| GENERAL MOTORS CORPORATION | 87001 | 87GMCO1234118 | 750008447 | 7/18/07 | 9/10/07 | 632.08 | 632.08 | - | - | - | - | 632.08 | Rent | 592033-003 DI | 10 | 10/10/07 | 141 | 5 | 1% | 31.60 |
| GENERAL MOTORS-POWERTRAIN | 87001 | 87GMCO1234118 | 750008448 | 7/18/07 | 9/10/07 | 1,234.49 | 1,234.49 | - | - | - | - | 1,234.49 | Rent | 592059-001 DI | 10 | 10/10/07 | 141 | 5 | 1% | 61.72 |
| GENERAL MOTORS CORPORATION | 87001 | 87GMCO1234134 | 750008450 | 7/18/07 | 9/10/07 | 802.42 | 596.15 | - | - | - | - | 596.15 | Rent | 592059-001 DI | 10 | 10/10/07 | 141 | 5 | 1% | 29.81 |
| GENERAL MOTORS CORPORATION | 87001 | 87GMCO1234135 | 750008451 | 7/18/07 | 9/10/07 | 577.87 | 577.87 | - | - | - | - | 577.87 | Rent | 592059-001 DI | 10 | 10/10/07 | 141 | 5 | 1% | 28.89 |
| GENERAL MOTORS-POWERTRAIN | 75006 | 75GMCO0081501R1A | 750008501 | 7/18/07 | 9/10/07 | 2,752.34 | 2,564.54 | - | - | - | - | 2,564.54 | Rent | 592059-001 DI | 10 | 10/10/07 | 141 | 5 | 1% | 128.23 |
| GENERAL MOTORS CORPORATION | 87001 | 87GMCO1234118 | 750008452 | 7/18/07 | 9/10/07 | 338.49 | 338.49 | - | - | - | - | 338.49 | Rent | 592060-001 DI | 10 | 10/10/07 | 141 | 5 | 1% | 16.92 |
| GENERAL MOTORS-POWERTRAIN | 87001 | 87GMCO1234118 | 870000501 | 7/18/07 | 9/10/07 | 433.53 | 433.53 | - | - | - | - | 433.53 | Sales Tax | 592295-001 DI | 10 | 10/10/07 | 141 | 5 | 1% | 21.68 |
| GENERAL MOTORS CORPORATION | 87001 | 87GMCO1234118 | 870000502 | 7/18/07 | 9/10/07 | 524.78 | 524.78 | - | - | - | - | 524.78 | Rent | 592295-001 DI | 10 | 10/10/07 | 141 | 5 | 1% | 26.24 |
| GENERAL MOTORS-POWERTRAIN | 87001 | 87GMCO1234118 | 870000502 | 7/18/07 | 9/10/07 | 303.18 | 303.18 | - | - | - | - | 303.18 | Sales Tax | 592561-001 DI | 10 | 10/10/07 | 141 | 5 | 1% | 15.16 |
| GENERAL MOTORS CORPORATION | 87001 | 87GMCO1234135 | 870000503 | 7/18/07 | 9/10/07 | 3,705.46 | 2,021.16 | - | - | - | - | 2,021.16 | Rent | 592561-001 DI | 10 | 10/10/07 | 141 | 5 | 1% | 101.06 |
| GENERAL MOTORS CORPORATION | 87001 | 87GMCO1234135 | 870000503 | 7/18/07 | 9/10/07 | 98.13 | 98.13 | - | - | - | - | 98.13 | Sales Tax | 592361-001 DI | 10 | 10/10/07 | 141 | 5 | 1% | 4.91 |
| GENERAL MOTORS-POWERTRAIN | 87001 | 87GMCO1234135 | 870000503 | 7/18/07 | 9/10/07 | 654.17 | 654.17 | - | - | - | - | 654.17 | Rent | 592361-001 DI | 10 | 10/10/07 | 141 | 5 | 1% | 32.71 |
| GENERAL MOTORS CORPORATION | 75006 | 75GMCO0077501R1A | 750008509 | 10/4/07 | 10/16/07 | 35.04 | 35.04 | - | - | - | - | 35.04 | Property Tax | 592019-900 DI | 10 | 10/26/07 | 125 | 5 | 1% | 1.75 |
| GENERAL MOTORS CORPORATION | 75006 | 75GMCO0077501R1A | 750008509R1A | 10/4/07 | 10/16/07 | 77.96 | 77.96 | - | - | - | - | 77.96 | Property Tax | 592019-900 DI | 10 | 10/26/07 | 125 | 5 | 1% | 3.90 |
| GENERAL MOTORS-POWERTRAIN | 75006 | 75GMCO0078803R1A | 750008891 | 10/4/07 | 10/16/07 | 76.47 | 76.47 | - | - | - | - | 76.47 | Property Tax | 592033-002 DI | 10 | 10/26/07 | 125 | 5 | 1% | 3.82 |
| GENERAL MOTORS CORPORATION | 75006 | 75GMCO0078803R1A | 750008982 | 10/4/07 | 10/16/07 | 42.46 | 42.46 | - | - | - | - | 42.46 | Property Tax | 592033-003 DI | 10 | 10/26/07 | 125 | 5 | 1% | 2.12 |
| GENERAL MOTORS-POWERTRAIN | 87001 | 87GMCO1234118 | 750008983 | 10/4/07 | 10/16/07 | 149.36 | 149.36 | - | - | - | - | 149.36 | Property Tax | 592059-001 DI | 10 | 10/26/07 | 125 | 5 | 1% | 7.47 |
| GENERAL MOTORS CORPORATION | 87001 | 87GMCO1234118 | 750008985 | 10/4/07 | 10/16/07 | 149.36 | 149.36 | - | - | - | - | 149.36 | Property Tax | 592059-001 DI | 10 | 10/26/07 | 125 | 5 | 1% | 7.47 |
| GENERAL MOTORS-POWERTRAIN | 75006 | 75GMCO0081501 | 750008989 | 10/4/07 | 10/16/07 | 69.91 | 69.91 | - | - | - | - | 69.91 | Property Tax | 592019-900 DI | 10 | 10/26/07 | 125 | 5 | 1% | 3.50 |
| GENERAL MOTORS CORPORATION | 75006 | 75GMCO0081501R1A | 750008986 | 10/4/07 | 10/16/07 | 615.44 | 615.44 | - | - | - | - | 615.44 | Rent | 592059-001 DI | 10 | 10/26/07 | 125 | 5 | 1% | 30.77 |
| GENERAL MOTORS-POWERTRAIN | 75006 | 75GMCO0081501R1A | 750008879 | 10/3/07 | 10/16/07 | 104.16 | 104.16 | - | - | - | - | 104.16 | Property Tax | 592060-001 DI | 10 | 10/26/07 | 125 | 5 | 1% | 5.21 |
| GENERAL MOTORS CORPORATION | 75006 | 75GMCO0081901R1 | 750008901 | 10/3/07 | 10/16/07 | 596.15 | 596.15 | - | - | - | - | 596.15 | Rent | 592033-003 DI | 10 | 11/9/07 | 111 | 4 | 1% | 3.60 |
| GENERAL MOTORS CORPORATION | 75006 | 75GMCO0081601 | 750008866 | 8/16/07 | 10/10/07 | 577.87 | 577.87 | - | - | - | - | 577.87 | Rent | 592059-001 DI | 10 | 11/9/07 | 111 | 4 | 1% | 23.11 |
| GENERAL MOTORS-POWERTRAIN | 75006 | 75GMCO0081501R1A | 750008867 | 8/16/07 | 10/10/07 | 2,564.47 | 2,564.47 | - | - | - | - | 2,564.47 | Rent | 592059-001 DI | 10 | 11/9/07 | 111 | 4 | 1% | 102.58 |
| GENERAL MOTORS CORPORATION | 87001 | 87GMCO1234118 | 750008470 | 8/16/07 | 10/10/07 | 433.53 | 433.53 | - | - | - | - | 433.53 | Sales Tax | 592059-001 DI | 10 | 11/9/07 | 111 | 4 | 1% | 17.34 |
| GENERAL MOTORS-POWERTRAIN | 87001 | 87GMCO1234118 | 750008474 | 8/16/07 | 10/10/07 | 524.78 | 524.78 | - | - | - | - | 524.78 | Rent | 592033-002 DI | 10 | 11/9/07 | 111 | 4 | 1% | 20.09 |
| GENERAL MOTORS CORPORATION | 87001 | 87GMCO1234134 | 870000505 | 8/16/07 | 10/10/07 | 555.83 | 303.18 | - | - | - | - | 303.18 | Sales Tax | 592561-001 DI | 10 | 11/9/07 | 111 | 4 | 1% | 12.13 |
| GENERAL MOTORS CORPORATION | 87001 | 87GMCO1234134 | 870000506 | 8/16/07 | 10/10/07 | 3,705.46 | 2,021.16 | - | - | - | - | 2,021.16 | Rent | 592561-001 DI | 10 | 11/9/07 | 111 | 4 | 1% | 80.85 |
| GENERAL MOTORS-POWERTRAIN | 87001 | 87GMCO1234135 | 870000507 | 8/16/07 | 10/10/07 | 98.13 | 98.13 | - | - | - | - | 98.13 | Sales Tax | 592361-001 DI | 10 | 11/9/07 | 111 | 4 | 1% | 3.93 |
| GENERAL MOTORS CORPORATION | 87001 | 87GMCO1234135 | 870000508 | 8/16/07 | 10/10/07 | 654.17 | 654.17 | - | - | - | - | 654.17 | Rent | 592361-001 DI | 10 | 11/10/07 | 110 | 4 | 1% | 26.17 |
| GENERAL MOTORS-POWERTRAIN | 75006 | 75GMCO0078803 | 750008473 | 8/16/07 | 10/11/07 | 632.08 | 632.08 | - | - | - | - | 632.08 | Rent | 592033-002 DI | 10 | 11/10/07 | 110 | 4 | 1% | 25.28 |
| GENERAL MOTORS CORPORATION | 75006 | 75GMCO0078822 | 750008494 | 8/16/07 | 10/31/07 | 1,234.49 | 1,234.49 | - | - | - | - | 1,234.49 | Rent | 592059-001 DI | 10 | 11/10/07 | 100 | 4 | 1% | 49.38 |
| GENERAL MOTORS CORPORATION | 75006 | 75GMCO0081601 | 750008495 | 8/16/07 | 10/31/07 | 338.49 | 338.49 | - | - | - | - | 338.49 | Rent | 592060-001 DI | 10 | 11/10/07 | 100 | 4 | 1% | 13.54 |
| GENERAL MOTORS-POWERTRAIN | 75006 | 75GMCO0081601 | 750008901 | 8/16/07 | 10/31/07 | 338.49 | 338.49 | - | - | - | - | 338.49 | Rent | 592060-001 DI | 10 | 11/10/07 | 100 | 4 | 1% | 7.76 |
| GENERAL MOTORS CORPORATION | 75006 | 75GMCO0081601R1 | 750009052 | 11/6/07 | 11/20/07 | 166.13 | 166.13 | - | - | - | 166.13 | 194.09 | Property Tax | 592060-001 DI | 10 | 11/20/07 | 90 | 3 | 1% | 4.98 |

| Customer | Acct # | Lease # | Invoice # | InvDate | Due Date | InvAmt | Amount Due | 30Days | 60Days | 90Days | 120Days | Over 120Days | Transaction | Lease Reference | Gross Days | Deling Date | # Days Late | # Months Late (to nearest) | Late fee use | Total late fee |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| GENERAL MOTORS-POWERTRAIN | 75006 | 75OAC0078801 | 750088968 | 9/18/07 | 11/30/07 | 644.37 | 644.37 | - | - | - | 644.37 | - | Rent | 592032-2001 DI | 10 | 12/1/07 | 80 | 3 | 1% | 19.33 |
| GENERAL MOTORS-POWERTRAIN | 75006 | 75OAC0078803 | 750088969 | 9/18/07 | 11/30/07 | 632.08 | 632.08 | - | - | - | 632.08 | - | Rent | 592032-2003 DI | 10 | 12/1/07 | 80 | 3 | 1% | 18.96 |
| GENERAL MOTORS-POWERTRAIN | 75006 | 75OAC0078822 | 750088970 | 9/18/07 | 11/30/07 | 1,234.49 | 1,234.49 | - | - | - | 1,234.49 | - | Rent | 592032-2002 DI | 10 | 12/1/07 | 80 | 3 | 1% | 37.03 |
| GENERAL MOTORS-POWERTRAIN | 75006 | 75OAC0078822R1A | 750088971 | 9/18/07 | 11/30/07 | 802.42 | 596.15 | - | - | - | 596.15 | - | Rent | 592032-2002 DI | 10 | 12/1/07 | 80 | 3 | 1% | 17.88 |
| GENERAL MOTORS-POWERTRAIN | 75006 | 75OAC0080601R3 | 750088963 | 9/18/07 | 11/30/07 | 883.53 | 0.03 | - | - | - | 0.03 | - | Rent | 592050-001 DI | 10 | 12/1/07 | 80 | 3 | 1% | 0.00 |
| GENERAL MOTORS-POWERTRAIN | 75006 | 75OAC0081501 | 750088972 | 9/18/07 | 11/30/07 | 577.87 | 577.87 | - | - | - | 577.87 | - | Rent | 592059-2001 DI | 10 | 12/1/07 | 80 | 3 | 1% | 17.34 |
| GENERAL MOTORS-POWERTRAIN | 75006 | 75OAC0081501R1A | 750088973 | 9/18/07 | 11/30/07 | 2,564.47 | 2,564.47 | - | - | - | 2,564.47 | - | Rent | 592059-001 DI | 10 | 12/1/07 | 80 | 3 | 1% | 76.93 |
| GENERAL MOTORS-POWERTRAIN | 75006 | 75OAC0081601 | 750088974 | 9/18/07 | 11/30/07 | 338.49 | 338.49 | - | - | - | 338.49 | - | Rent | 592060-001 DI | 10 | 12/1/07 | 80 | 3 | 1% | 10.15 |
| GENERAL MOTORS-POWERTRAIN | 75006 | 75OAC0081901-R1 | 750088975 | 9/18/07 | 11/30/07 | 372.50 | 372.50 | - | - | - | 372.50 | - | Rent | 592063-001-DI | 10 | 12/1/07 | 80 | 3 | 1% | 11.18 |
| GENERAL MOTORS CORPORATION | 87000 | 87OAC012345110 | 870000969 | 9/18/07 | 11/30/07 | 433.53 | 433.53 | - | - | - | 433.53 | - | Sales Tax | 592259-001 DI | 10 | 12/1/07 | 80 | 3 | 1% | 13.01 |
| GENERAL MOTORS CORPORATION | 87000 | 87OAC012345118 | 870000968 | 9/18/07 | 11/30/07 | 524.78 | 524.78 | - | - | - | 524.78 | - | Rent | 592259-001 DI | 10 | 12/1/07 | 80 | 3 | 1% | 15.74 |
| GENERAL MOTORS CORPORATION | 87001 | 87OAC012341134 | 870000970 | 9/18/07 | 11/30/07 | 555.83 | 303.18 | - | - | - | 303.18 | - | Sales Tax | 592261-2001 DI | 10 | 12/1/07 | 80 | 3 | 1% | 9.10 |
| GENERAL MOTORS CORPORATION | 87001 | 87OAC012341134 | 870000970 | 9/18/07 | 11/30/07 | 3,705.46 | 2,021.16 | - | - | - | 2,021.16 | - | Rent | 592261-2001 DI | 10 | 12/1/07 | 80 | 3 | 1% | 60.63 |
| GENERAL MOTORS CORPORATION | 87001 | 87OAC012341135 | 870000971 | 9/18/07 | 11/30/07 | 98.13 | 98.13 | - | - | - | 98.13 | - | Sales Tax | 592261-1401 DI | 10 | 12/1/07 | 80 | 3 | 1% | 2.94 |
| GENERAL MOTORS CORPORATION | 87001 | 87OAC012341135 | 870000971 | 9/18/07 | 11/30/07 | 654.17 | 654.17 | - | - | - | 654.17 | - | Rent | 592261-1401 DI | 10 | 12/1/07 | 80 | 3 | 1% | 19.63 |
| GENERAL MOTORS-POWERTRAIN | 75006 | 75OAC0078822R1A | 750088994 | 10/17/07 | 12/30/07 | 802.42 | 596.15 | - | - | 596.15 | - | - | Rent | 592032-2002 DI | 10 | 1/9/08 | 50 | 2 | 1% | 11.92 |
| GENERAL MOTORS-POWERTRAIN | 75006 | 75OAC0080601R3 | 750088995 | 10/17/07 | 12/30/07 | 883.53 | 0.02 | - | - | 0.02 | - | - | Rent | 592050-001 DI | 10 | 1/9/08 | 50 | 2 | 1% | 0.00 |
| GENERAL MOTORS-POWERTRAIN | 75006 | 75OAC0081501 | 870000993 | 10/17/07 | 12/30/07 | 577.87 | 577.87 | - | - | 577.87 | - | - | Rent | 592059-2001 DI | 10 | 1/9/08 | 50 | 2 | 1% | 11.56 |
| GENERAL MOTORS-POWERTRAIN | 75006 | 75OAC0081501R1A | 870000994 | 10/17/07 | 12/30/07 | 2,564.47 | 2,564.47 | - | - | 2,564.47 | - | - | Rent | 592059-001 DI | 10 | 1/9/08 | 50 | 2 | 1% | 51.29 |
| GENERAL MOTORS CORPORATION | 87001 | 87OAC012341134 | 870000974 | 10/17/07 | 12/30/07 | 433.53 | 433.53 | - | - | 433.53 | - | - | Sales Tax | 592261-2001 DI | 10 | 1/9/08 | 50 | 2 | 1% | 3.67 |
| GENERAL MOTORS CORPORATION | 87001 | 87OAC012341134 | 870000974 | 10/17/07 | 12/30/07 | 2,890.10 | 1,771.64 | - | - | 1,771.64 | - | - | Rent | 592261-2001 DI | 10 | 1/9/08 | 50 | 2 | 1% | 35.43 |
| GENERAL MOTORS CORPORATION | 87001 | 87OAC012341135 | 870000975 | 10/17/07 | 12/30/07 | 303.18 | 303.18 | - | - | 303.18 | - | - | Sales Tax | 592261-1401 DI | 10 | 1/9/08 | 50 | 2 | 1% | 6.06 |
| GENERAL MOTORS CORPORATION | 87001 | 87OAC012341135 | 870000976 | 10/17/07 | 12/30/07 | 2,021.16 | 2,021.16 | - | - | 2,021.16 | - | - | Rent | 592261-1401 DI | 10 | 1/9/08 | 50 | 2 | 1% | 40.42 |
| GENERAL MOTORS CORPORATION | 87001 | 87OAC012341135 | 870000976 | 10/17/07 | 12/30/07 | 98.13 | 98.13 | - | - | 98.13 | - | - | Sales Tax | 592261-1401 DI | 10 | 1/9/08 | 50 | 2 | 1% | 1.96 |
| GENERAL MOTORS CORPORATION | 87001 | 87OAC012341135 | 870000976 | 10/17/07 | 12/30/07 | 654.17 | 654.17 | - | - | 654.17 | - | - | Rent | 592261-1401 DI | 10 | 1/9/08 | 50 | 2 | 1% | 13.08 |
| GENERAL MOTORS-POWERTRAIN | 75006 | 75OAC0078801 | 750009993 | 11/20/07 | 1/30/08 | 644.37 | 644.37 | - | 644.37 | - | - | - | Rent | 592032-2001 DI | 10 | 1/10/08 | 49 | 2 | 1% | 12.89 |
| GENERAL MOTORS-POWERTRAIN | 75006 | 75OAC0078803 | 750009994 | 11/20/07 | 1/30/08 | 632.08 | 632.08 | - | 632.08 | - | - | - | Rent | 592032-2003 DI | 10 | 1/10/08 | 49 | 2 | 1% | 12.64 |
| GENERAL MOTORS-POWERTRAIN | 75006 | 75OAC0078822 | 750009995 | 11/20/07 | 1/30/08 | 1,234.49 | 1,234.49 | - | 1,234.49 | - | - | - | Rent | 592032-2002 DI | 10 | 1/10/08 | 49 | 2 | 1% | 24.69 |
| GENERAL MOTORS-POWERTRAIN | 75006 | 75OAC0081601 | 750009996 | 11/20/07 | 1/30/08 | 338.49 | 338.49 | - | 338.49 | - | - | - | Rent | 592060-001 DI | 10 | 1/10/08 | 49 | 2 | 1% | 6.77 |
| GENERAL MOTORS-POWERTRAIN | 75006 | 75OAC0081901-R1 | 750009997 | 11/20/07 | 1/30/08 | 372.50 | 372.50 | - | 372.50 | - | - | - | Rent | 592063-001-DI | 10 | 1/10/08 | 49 | 2 | 1% | 7.45 |
| GENERAL MOTORS CORPORATION | 87000 | 87OAC012345118 | 870000984 | 11/20/07 | 1/30/08 | 524.78 | 524.78 | - | - | - | - | - | Rent | 592259-001 DI | 10 | 1/10/08 | 49 | 2 | 1% | 11.56 |
| GENERAL MOTORS-POWERTRAIN | 75006 | 75OAC0078822R1A | 750009960 | 11/20/07 | 2/29/08 | 802.42 | 596.15 | 596.15 | - | - | - | - | Rent | 592032-2002 DI | 10 | 2/9/08 | 19 | 1 | 1% | 5.96 |
| GENERAL MOTORS-POWERTRAIN | 75006 | 75OAC0080601R3 | 750009961 | 11/20/07 | 2/29/08 | 883.53 | 0.89 | 0.89 | - | - | - | - | Rent | 592050-001 DI | 10 | 2/9/08 | 19 | 1 | 1% | 0.01 |
| GENERAL MOTORS-POWERTRAIN | 75006 | 75OAC0081501 | 87000985 | 11/20/07 | 2/29/08 | 433.53 | 433.53 | 433.53 | - | - | - | - | Rent | 592059-2001 DI | 10 | 2/9/08 | 19 | 1 | 1% | 4.34 |
| GENERAL MOTORS-POWERTRAIN | 75006 | 75OAC0081501R1A | 87000985 | 11/20/07 | 2/29/08 | 1,774.41 | 1,771.64 | 1,771.64 | - | - | - | - | Rent | 592059-001 DI | 10 | 2/9/08 | 19 | 1 | 1% | 17.72 |
| GENERAL MOTORS CORPORATION | 87001 | 87OAC012341134 | 870000984 | 11/20/07 | 2/29/08 | 303.18 | 303.18 | 303.18 | - | - | - | - | Sales Tax | 592261-2001 DI | 10 | 2/9/08 | 19 | 1 | 1% | 3.05 |
| GENERAL MOTORS CORPORATION | 87001 | 87OAC012341134 | 870000984 | 11/20/07 | 2/29/08 | 2,021.16 | 2,021.16 | 2,021.16 | - | - | - | - | Rent | 592261-2001 DI | 10 | 2/9/08 | 19 | 1 | 1% | 20.21 |
| GENERAL MOTORS CORPORATION | 87001 | 87OAC012341135 | 870000985 | 11/20/07 | 2/29/08 | 98.13 | 98.13 | 98.13 | - | - | - | - | Sales Tax | 592261-1401 DI | 10 | 2/9/08 | 19 | 1 | 1% | 0.98 |
| GENERAL MOTORS CORPORATION | 87001 | 87OAC012341135 | 870000985 | 11/20/07 | 2/29/08 | 654.17 | 654.17 | 654.17 | - | - | - | - | Rent | 592261-1401 DI | 10 | 2/10/08 | 18 | 1 | 1% | 6.54 |
| GENERAL MOTORS-POWERTRAIN | 75006 | 75OAC0078822 | 750009993 | 12/18/07 | 2/29/08 | 1,234.49 | 1,234.49 | 1,234.49 | - | - | - | - | Rent | 592032-2002 DI | 10 | 2/10/08 | 18 | 1 | 1% | 12.24 |
| GENERAL MOTORS-POWERTRAIN | 75006 | 75OAC0081601 | 750009991 | 12/18/07 | 2/29/08 | 318.49 | 318.49 | 318.49 | - | - | - | - | Rent | 592060-001 DI | 10 | 2/10/08 | 18 | 1 | 1% | 3.38 |
| GENERAL MOTORS-POWERTRAIN | 75006 | 75OAC0081901-R1 | 750009103 | 12/18/07 | 2/29/08 | 372.50 | 372.50 | 372.50 | - | - | - | - | Rent | 592063-001-DI | 10 | 2/70/08 | 18 | 1 | 1% | 3.73 |
| GENERAL MOTORS CORPORATION | 87000 | 87OAC012345118 | 750009104 | 12/18/07 | 2/29/08 | 632.08 | 632.08 | 632.08 | - | - | - | - | Rent | 592032-2003 DI | 10 | 3/10/08 | 0 | 0 | 1% |  |
| GENERAL MOTORS CORPORATION | 75006 | 75OAC0078803 | 750009104 | 12/18/07 | 2/29/08 | 632.08 | 632.08 | 632.08 | - | - | - | - | Rent | 592032-2003 DI | 10 | 3/10/08 | 0 | 0 | 1% |  |

| Customer | Acct # | Lease # | Invoice # | InvDate | Due Date | InvAmt | Amount Due | 30Days | 60Days | 90Days | 120Days | Over120Days | Transaction | Lease Reference | Grace Days | Delinq Date | # Days Late | # Months Late (round to month) | Late fee rate | Total late fee |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| GENERAL MOTORS-POWERTRAIN | 75006 | 75GMCC0078822 | 750009105 | 12/18/07 | 2/29/08 | 1,234.49 | 1,234.49 | - | - | - | - | - | Rent | 592032-002 DI | 10 | 3/10/08 | 0 | 0 | 1% | |
| GENERAL MOTORS-POWERTRAIN | 75006 | 75GMCC0078822R1A | 750009106 | 12/18/07 | 2/29/08 | 802.42 | 596.15 | - | - | - | - | - | Rent | 592032-002 DI | 10 | 3/10/08 | 0 | 0 | 1% | |
| GENERAL MOTORS-POWERTRAIN | 75006 | 75GMCC0080601R3 | 750009098 | 12/18/07 | 2/29/08 | 883.53 | 883.53 | - | - | - | - | - | Rent | 592050-001 DI | 10 | 3/10/08 | 0 | 0 | 1% | |
| GENERAL MOTORS-POWERTRAIN | 75006 | 75GMCC0081501 | 750009107 | 12/18/07 | 2/29/08 | 577.87 | 577.87 | - | - | - | - | - | Rent | 592059-001-DI | 10 | 3/10/08 | 0 | 0 | 1% | |
| GENERAL MOTORS-POWERTRAIN | 75006 | 75GMCC0081501R1A | 750009108 | 12/18/07 | 2/29/08 | 2,564.47 | 2,564.47 | - | - | - | - | - | Rent | 592059-001 DI | 10 | 3/10/08 | 0 | 0 | 1% | |
| GENERAL MOTORS-POWERTRAIN | 75006 | 75GMCC0081601 | 750009109 | 12/18/07 | 2/29/08 | 338.49 | 338.49 | - | - | - | - | - | Rent | 592060-001-DI | 10 | 3/10/08 | 0 | 0 | 1% | |
| GENERAL MOTORS-POWERTRAIN | 75006 | 75GMCC0081901-R1 | 750009110 | 12/18/07 | 2/29/08 | 372.50 | 372.50 | - | - | - | - | - | Rent | 592065-001-DI | 10 | 3/10/08 | 0 | 0 | 1% | |
| GENERAL MOTORS CORPORATION | 87001 | 87GMCC01234118 | 87000089 | 12/18/07 | 2/29/08 | 433.53 | 433.53 | - | - | - | - | - | Sales Tax | 592595-001 DI | 10 | 3/10/08 | 0 | 0 | 1% | |
| GENERAL MOTORS CORPORATION | 87001 | 87GMCC01234118 | 87000089 | 12/18/07 | 2/29/08 | 2,890.10 | 2,890.10 | - | - | - | - | - | Rent | 592595-001 DI | 10 | 3/10/08 | 0 | 0 | 1% | |
| GENERAL MOTORS CORPORATION | 87001 | 87GMCC01234134 | 87000990 | 12/18/07 | 2/29/08 | 303.18 | 303.18 | - | - | - | - | - | Sales Tax | 592612-001 DI | 10 | 3/10/08 | 0 | 0 | 1% | |
| GENERAL MOTORS CORPORATION | 87001 | 87GMCC01234134 | 87000990 | 12/18/07 | 2/29/08 | 2,021.16 | 2,021.16 | - | - | - | - | - | Rent | 592612-001 DI | 10 | 3/10/08 | 0 | 0 | 1% | |
| GENERAL MOTORS CORPORATION | 87001 | 87GMCC01234135 | 87000991 | 12/18/07 | 2/29/08 | 98.13 | 98.13 | - | - | - | - | - | Sales Tax | 592613-001 DI | 10 | 3/10/08 | 0 | 0 | 1% | |
| GENERAL MOTORS CORPORATION | 87001 | 87GMCC01234135 | 87000991 | 12/18/07 | 2/29/08 | 654.17 | 654.17 | - | - | - | - | - | Rent | 592613-001 DI | 10 | 3/10/08 | 0 | 0 | 1% | |
| | | | | | Total post-petition | $ 411,985.60 | 411,985.60 | 8,402.20 | 3,221.93 | 9,020.32 | 11,161.53 | 365,935.40 | | | | | | | | $ 58,652.33 |

Current Active Leases
as of 2/28/2008

| CO# | ACCT # | CUST-NAME | LEASE # | COMM-DATE | MATURITY-DATE | RENT | PmtType | LEASE-EQ-DESC |
|---|---|---|---|---|---|---|---|---|
| 75 | 75006 | GENERAL MOTORS-POWERTRAIN | 75GMCO078801 | 01-Sep-00 | 01-Jul-03 | 644.37 | M | FORKLIFTS-ELECTRIC |
| 75 | 75006 | GENERAL MOTORS-POWERTRAIN | 75GMCO078803 | 01-Sep-00 | 01-Jul-03 | 632.08 | M | FORKLIFTS-ELECTRIC |
| 75 | 75006 | GENERAL MOTORS-POWERTRAIN | 75GMCO078822 | 01-Sep-00 | 01-Jul-03 | 1,234.49 | M | FORKLIFTS-ELECTRIC |
| 75 | 75006 | GENERAL MOTORS-POWERTRAIN | 75GMCO078822R1A | 01-Apr-05 | 01-Apr-07 | 596.15 | M | FORKLIFTS-ELECTRIC |
| 75 | 75006 | GENERAL MOTORS-POWERTRAIN | 75GMCO080601R3 | 01-Apr-07 | 01-Apr-08 | 883.53 | M | (5) HYSTER E80XL2 LIFT TRUCKS |
| 75 | 75006 | GENERAL MOTORS-POWERTRAIN | 75GMCO081501 | 01-Sep-00 | 01-Jul-03 | 577.87 | M | FORKLIFTS-ELECTRIC |
| 75 | 75006 | GENERAL MOTORS-POWERTRAIN | 75GMCO081501R1A | 01-Apr-05 | 01-Apr-07 | 2,565.54 | M | FORKLIFTS-ELECTRIC |
| 75 | 75006 | GENERAL MOTORS-POWERTRAIN | 75GMCO081601 | 01-Sep-00 | 01-Jul-03 | 338.49 | M | FORKLIFTS-ELECTRIC |
| 75 | 75006 | GENERAL MOTORS-POWERTRAIN | 75GMCO081901-R1 | 01-Oct-04 | 01-Oct-05 | 242.11 | M | FORKLIFTS-ELECTRIC |
| 87 | 87001 | GENERAL MOTORS CORPORATIO | 87GMCO12341118 | 01-Sep-00 | 01-Mar-04 | 2,890.10 | M | LIFT TRUCKS |
| 87 | 87001 | GENERAL MOTORS CORPORATIO | 87GMCO12341134 | 01-Sep-00 | 01-Mar-04 | 2,021.16 | M | LIFT TRUCKS |
| 87 | 87001 | GENERAL MOTORS CORPORATIO | 87GMCO12341135 | 01-Sep-00 | 01-Apr-04 | 654.17 | M | FORKLIFTS |

**Total**                    $13,278.06

BUCHANAN INGERSOLL & ROONEY PC
One Chase Manhattan Plaza
New York, New York 10005
Telephone: (212) 440-4400
Facsimile: (212) 440-4401
E-mail: susan.persichilli@bipc.com
Susan P. Persichilli, Esq. (SP- 0368)

*Attorneys for ATEL Leasing Corporation,*
*as agent for Eireann II, CAI-UBK Equipment,*
*CAI-ALJ Equipment, II BU de Mexico*
*S.A. de C.V .and Eireann* III

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                     :          Chapter 11
In re:                                :
                                       :          Case No. 05-44481 (RDD)
DELPHI CORPORATION, et al.,     :
                                       :          (Jointly Administered)
                      Debtors.      :
------------------------------------------------------------ X

STATE OF NEW YORK      )
                             ) ss.:
COUNTY OF NEW YORK    )

      **K. Simone Knox**, being duly sworn, deposes and says:

      I am not a party to the within action, am over 18 years of age and am employed by

Buchanan Ingersoll & Rooney PC, attorneys for ATEL Leasing Corporation,as agent for Eireann II,

CAI-UBK Equipment, CAI-ALJ Equipment, II BU de Mexico S.A. de C.V .and Eireann III

      On March 5, 2008 I served via **U.S. Postal  First Class Mail**, a true and correct copy of

**CURE CLAIM OF ATEL LEASING CORPORATION, together with exhibits** upon all the parties listed

on the attached Service List.

                                /s/ K. Simone Knox
                                  K. Simone Knox

Sworn before me this
5th day of March, 2008

/s/ Susan Persichilli
Notary Public, State of New York
No. 01PE4778216
Qualified in New York County
Commission Expires December 31, 2010

## SERVICE LIST

In re : DELPHI CORPORATION, *et al* (Debtor)
Chapter 11  --  Case No. 05-44481 (RDD)

**Alicia M. Leonhard, Esq.**
**Office of the United States Trustee**
33 Whitehall Street
21st Floor
New York, New York 10004

**David M. Sherbin, Esq.**
**General Counsel**
**Delphi Corporation**
**5725 Delphi Drive**
**Troy, Michigan 48098**

**John William Butler, Jr., Esq.**
**Skadden, Arps, Slate, Meagher & Flom LLP**
West Wacker Drive, Suite 2100
Chicago, Illinois  60606

**Kayalyn A. Marafioti, Esq.**
**Skadden, Arps, Slate, Meagher & Flom LLP**
Four Times Square
New York, New York  10036

#376382-v1