**Hearing Date and Time:  February 17, 2011 at 10:00 a.m.**
**Reply Deadline:  January 28, 2011**

HONIGMAN MILLER SCHWARTZ AND COHN LLP
I. W. Winsten (P30528)
Jason R. Abel (P70408)
Judy B. Calton (P38733)
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226-3506
Telephone: (313) 465-7344
Facsimile: (313) 465-7345
Email: jcalton@honigman.com

*Attorneys for Affinia Group Holdings Inc.*
*and Brake Parts Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------x
                                          :
In re:                                    :        Chapter 11
                                          :        Case No. 05-44481 (RDD)
       DPH HOLDINGS CORP, *et al.,*        :
                                          :
------------------------------------------x
                                          :
DELPHI AUTOMOTIVE SYSTEMS, LLC,           :
                                          :
       Plaintiff,                         :        Adv. Pro. No. 07-02198 (RDD)
                                          :
v.                                        :
                                          :
AFFINIA GROUP HOLDINGS INC.,              :
and BRAKE PARTS INC.,                     :
                                          :
       Defendants.                        :
------------------------------------------x

**AFFINIA GROUP HOLDINGS INC.'S AND BRAKE PARTS INC.'S**
**BRIEF IN OPPOSITION TO REORGANIZED DEBTORS'**
**MOTION FOR LEAVE TO FILE AMENDED COMPLAINTS**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iv

INTRODUCTION ................................................................................................................... 1

STATEMENT OF FACTS ..................................................................................................... 2

    A.    The Affinia Companies And Their Relationship With Delphi ........................... 2

    B.    Delphi's Original Complaint ................................................................................. 3

    C.    The Dismissal Of The Original Complaint .......................................................... 3

    D.    DAS's Motion For Leave To Amend .................................................................... 4

    E.    The Court Dismissed With Prejudice The Prior Plaintiffs And
            Defendants Not Included In The Proposed Amended Complaint ..................... 4

    F.    The Proposed Amended Complaint Does Not Comply with the
            Dismissal Order or Properly Plead a Preference Claim .................................... 4

           1.    The Proposed Amended Complaint Does Not Purport To
                  Provide Antecedent Debt Information ..................................................... 5

           2.    Holdings Was Not A Creditor And No Antecedent Debt Was
                  Owed To It ................................................................................................ 5

           3.    No Transfers Were Made To Holdings ................................................... 6

           4.    Some Of The Holdings Transfers Were Actually Made To
                    Group, But They Cannot Be Avoided ..................................................... 6

    G.    None Of The Affinia Companies Received  Notice Of The Extension
            Motions And Orders ............................................................................................ 8

    H.    The December 2007 Disclosure Statement .......................................................... 9

    I.    This Court's Statements That Proposed Defendants Which Did Not
            Receive  Notice Of The Extension Motions May Now Challenge Them
            De Novo ................................................................................................................ 10

    J.    The Affinia Companies Were Prejudiced By The Lack Of Notice ................. 11

    K.    DAS Was Solvent During The Preference Period ............................................ 12

**ARGUMENT** ................................................................................................**14**

**I.**    **THE STANDARD FOR GRANTING LEAVE TO AMEND** ....................................**14**

**II.**    **DAS'S PROPOSED AMENDED COMPLAINT IS FUTILE** .....................................**15**

    **A.**    **DAS's Proposed Amended Complaint Fails To Comply With The Dismissal Order By Not Setting Forth The Antecedent Debt** ........................**15**

        **1.**    **DAS Fails Even To Attempt To Identify Any Debt Owed To Holdings** ...............................................................................**16**

        **2.**    **DAS Fails To Identify A "Debt Owed By The Debtor"** .......................**17**

        **3.**    **DAS Fails To Plead An "Antecedent" Debt** .........................................**18**

    **B.**    **DAS Cannot State A Preference Claim Against Holdings** ...............................**18**

        **1.**    **Holdings Was Not A DAS Creditor** .........................................................**18**

        **2.**    **Holdings Never Received Any Transfers From DAS** ............................**18**

    **C.**    **The Proposed Amended Complaint Is Futile Because The Extension Orders Were Improvidently Entered And Should Be Vacated, Leaving DAS's Claims Barred By The Statute of Limitations** ........................**19**

        **1.**    **The Affinia Defendants Received No *Actual Notice* Of Delphi's Extension Motions** ..................................................................**20**

        **2.**    **The Affinia Defendants Were Not On Inquiry Notice Of Delphi's Extension Motions** ...................................................................**21**

    **D.**    **The Affinia Defendants Were Not Required To Do Anything Even If They Were On Actual Notice** ................................................................................**24**

    **E.**    **The Proposed Amended Complaint Is Futile Because DAS Did Not Properly Plead And Cannot Prove It Was Insolvent At The Time Of The Disputed Transfers** ........................................................................................**25**

**III.**    **THE PROPOSED AMENDED COMPLAINT  WOULD SUBSTANTIALLY PREJUDICE THE AFFINIA DEFENDANTS** ...........................**27**

    **A.**    **Prejudice Is Presumed As A Matter Of Law** .....................................................**27**

    **B.**    **The Affinia Defendants Would Suffer Actual Prejudice From Amendment** ...........................................................................................................**29**

    **C.**    **Delphi's Undue Delay Should Bar Amendment** .................................................**29**

**IV.    NO FURTHER AMENDMENT SHOULD BE PERMITTED** ....................................**31**

**V.    INCORPORATION OF OTHER DEFENDANTS' BRIEFS**......................................**31**

**CONCLUSION** ........................................................................................................................**32**

## TABLE OF AUTHORITIES

**CASES**

*Akers v. Koubourlis,*
  869 F.2d 1319 (9th Cir. 1989) ............................................................26

*Anderson, Anderson v. Air West, Inc.,*
  542 F.2d 522 (9th Cir. 1976) ......................................................... 28-30

*Ashcroft v. Iqbal,*
  __ U.S. __, 129 S. Ct. 1937 (2009)...............................................16, 26

*Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. La Salle P'ship,*
  526 U.S. 434 (1999)...............................................................................27

*Barrows v. Forest Laboratories, Inc.,*
  742 F.2d 54 (2d Cir. 1984).................................................................14

*City of New York v. New York, N.H. & H. R.R. Co.,*
  344 U.S. 293 (1953)...............................................................................22

*EBS Litigation LLC v. Barclays Global Investors, N.A.,*
  304 F.3d 302 (3rd Cir. 2002) ...............................................................22

*Farhang v. Indian Inst. of Tech.,*
  2010 U.S. Dist. LEXIS 53975 (N.D. Cal. June 1, 2010) .......................28

*Fimbres v. United States,*
  833 F.2d 138 (9th Cir. 1987) ..............................................................20

*Fokkena v. Winston, Reuber, Byrne, P.C.,*
  189 B.R. 744 (Bankr. N.D. Iowa 1995) ................................................26

*Hunt v. Alliance N. Am. Gov't Income Trust, Inc.,*
  159 F.3d 723 (2d Cir. 1998)................................................................15

*IMF Sales Associates, Inc. v. Racal-Vadic Information Systems, Inc.,*
  94 B.R. 223 (Bankr. D. Mass 1988) ...............................................5, 26

*In re Roblin Industries, Inc.,*
  78 F.3d 30 (2d Cir. 1996).....................................................................26

*In re Theatre Row Phase II Associates,*
  385 B.R. 511 (Bankr. S.D.N.Y. 2008)..................................................13

*Iridium IP LLC v. Motorola, Inc.,*
  373 B.R. 283 (Bankr. S.D.N.Y. 2007) (Peck, J.).................................27

*John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp.*,
    22 F.3d 458 (2d Cir. 1994)...................................................................................14

*McLaughlin v. Anderson*,
    962 F.2d 187 (2d Cir. 1992).............................................................................15, 30

*Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc.*
    526 U.S. 344 (1999)................................................................................... 24-25

*Newman v. Warnaco Group, Inc.*,
    335 F.3d 187 (2d Cir. 2003)........................................................................ 6, 21-22

*Nivram Corp. v. Harcourt Brace Jovanovich, Inc.*,
    840 F. Supp. 243 (S.D.N.Y. 1993) ......................................................................21

*Redding v. Essex Crane Rental Corp. of Alabama*,
    752 F.2d 1077 (5th Cir. 1985) ...........................................................................29

*Richardson v. United White Shipping Co.*,
    38 F.R.D. 494 (N.D. Cal. 1965)..........................................................................28

*Ruffolo v. Oppenheimer & Co.*,
    987 F.2d 129 (2d Cir. 1993)..............................................................................15

*Shannon v. GE*,
    186 F.3d 186 (2d Cir. 1999)..............................................................................28

*Smith v. Pennsylvania Glass Sand Corp.*,
    123 F.R.D. 648 (N.D. Fla. 1988) ........................................................................21

*Staehr v. Hartford Fin. Servs. Group*,
    547 F.3d 406 (2d Cir. 2008)........................................................................ 21-23

*United Student Aid Funds, Inc. v. Espinosa*,
    __ U.S. __, 130 S. Ct. 1367 (2010)......................................................................24

*Veazey v. Young's Yacht Sale & Service, Inc.*,
    644 F.2d 475 (5th Cir. 1981) ............................................................................28

*VFB LLC v. Campbell Soup Co.*,
    482 F.3d 624 (3d. Cir. 2007)..............................................................................27

*Zapata v. New York*,
    502 F.3d 192 (2d Cir. 2007)..............................................................................29

**STATUTES**

11 U.S.C. § 547.............................................................................................................16, 18, 25, 26

28 U.S.C. § 1446.............................................................................................................................24

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 4(m)..................................................................................*Passim*

Federal Rule of Civil Procedure 15 ...........................................................................................14

Federal Rule of Civil Procedure 41(b)..................................................................................28, 30

## INTRODUCTION

This Court should deny the Reorganized Debtors' motion for leave to amend, which asks that the Court exercise its discretion to permit Delphi Automotive Systems, LLC ("DAS") to file an amended complaint against Affinia Group Holdings Inc. ("Holdings") and Brake Parts Inc. ("Brake" and, collectively with Holdings, the "Affinia Defendants") to recover $5,949,797 in alleged transfers.

The proposed amended complaint is futile, and the Affinia Defendants will be severely prejudiced by DAS's undue delay if this case is permitted to proceed.  As explained below:

A.     The Affinia Defendants were not served with, and had no notice – actual or otherwise – of the Reorganized Debtors' motions to extend the time to serve the preference actions (the "Extension Motions") or the orders that granted them (the "Extension Orders").   *See* Delphi Omnibus Response to the prior dismissal motions (Affinia D. I. 49), at 29, n. 8.

B.     Because the Affinia Defendants had no notice of the Extension Orders, they may now challenge them *de novo*.  *See* July 22, 2010 Tr. at 103, 119 (If a defendant "didn't get notice, its wide open" and "they should be able to argue to me as if the motions were being made right now").

C.     Delphi was not entitled to obtain the Extension Orders, including the April 30, 2008 Extension Order, because Rule 4(m) may be used only to facilitate service (and not to authorize a delay in service), and it was not proper for Delphi to use Rule 4(m) to avoid prosecuting preference actions for more than two years while it preserved its business relationship with unsuspecting defendants and used its resources in other areas it deemed more important.

D.     Any preference action is time-barred without the Extension Orders.

E.     DAS proposed amended complaint fails to comply with this Court's September 7, 2010 Dismissal Order, and does not plead the antecedent debt for any transfer.

F.     DAS's claims are futile because:

1.     Holdings was not a creditor and never received any of the $5,575,474 in transfers that DAS alleges it received.

2.     The transfers were advance deposits and were made for the benefit of a foreign supplier.

1

3.    The transfers were not made by DAS.

G.    DAS's claims are also futile because it was solvent at the time it made the alleged preferential transfers.  DAS had a net worth of over $2.6 billion as confirmed by its bankruptcy schedules, and it cannot establish the essential insolvency element.

H.    The Affinia Defendants have suffered great prejudice because of Delphi's more than two year delay in serving this action, during which time it closed all of its Delphi facilities, lost track of its knowledgeable former employees and did not preserve much of its Delphi data.

Therefore, this Court should exercise its discretion to deny the motion and spare the Affinia Defendants the further expense of opposing claims that are unlikely to ever succeed.

## STATEMENT OF FACTS

A.    **The Affinia Companies And Their Relationship With Delphi**

The "Affinia Companies" are a worldwide group of companies that produce component parts for automotive brake systems.  All of the Affinia Companies are direct or indirect subsidiaries of proposed defendant Affinia Group Holdings Inc. ("Holdings"), a pure holding company that has no business operations.  Holdings has not manufactured or supplied parts or goods for Delphi Corporation or any of its affiliates ("Delphi") or anyone else.  Exhibit A (Stewart Declaration), ¶¶ 3-4.

Proposed defendant Brake Parts Inc. ("Brake") was the Affinia Companies' United States manufacturer of brake parts.  Brake had contracts with Delphi entities to provide a limited volume of parts.  Exhibit B (Mendeljian Declaration), ¶¶ 5-6.

Nonparty Affinia Canada Corp. ("Canada") is a Canadian corporation and a foreign supplier.  Canada was the Affinia Companies' principal supplier to Delphi Corporation and its various affiliates (collectively, "Delphi").  Over ninety (90%) percent of the parts provided by

the Affinia Companies to Delphi were from Canada's plant in Ontario, Canada, under contracts

between Delphi and Canada. *Id*.

**B.**    **Delphi's Original Complaint**

The Debtors' original Complaint to Avoid and Recover Transfers Pursuant to 11 U.S.C.

§§ 547 and 550 (the "Original Complaint") was filed under seal on September 28, 2007, but not

unsealed and served on any of the Affinia Companies until March 2010.  The "plaintiffs" in the

Original Complaint were "Delphi Corporation ('Delphi') and all of the other "debtors and

debtors-in-possession."   There were eight defendants named in the Original Complaint:   (i)

Holdings; (ii) Affinia; (iii) Canada; (iv) Affinia Group; (v) Affinia Canada; (vi) Brake; (vii)

Itapsa S.A. de C.V.; and (viii) Wix Filtration Products Europe.

**C.**    **The Dismissal Of The Original Complaint**

In response to the motion to dismiss by the Affinia Defendants and others of the Affinia

Companies, and the motions to dismiss filed by the other defendants in the preference actions,

the Court entered its September 7, 2010 Order Granting In Part First Wave Motions to Dismiss

(Affinia D.I. 59) (the "Dismissal Order").   The Dismissal Order dismissed with prejudice as

abandoned all claims against foreign suppliers or against defendants who received less than

$250,000, and dismissed the balance of the claims without prejudice because the debtors had

failed to plead sufficient facts to state a claim.   The Court then permitted the Reorganized

Debtors to file a motion to seek leave to file an amended complaint, and expressly ordered that

the proposed amended complaint shall "set forth, *at a minimum*, the transfers, the transferee, any

known subsequent transferee against whom relief is sought, the antecedent debt and which

Reorganized Debtor is the Plaintiff."   *Id*. (emphasis supplied).

3

**D.    DAS's Motion For Leave To Amend**

On September 7, 2010, the Reorganized Debtors' filed their Motion for Leave to File Amended Complaints (the "Motion to Amend") (Affinia D.I. 58), which attached the proposed First Amended Complaint to Avoid and Recover Transfers Pursuant to 11 U.S.C. §§ 547 and 550 (the "Proposed Amended Complaint").

The Proposed Amended Complaint names only one Plaintiff, DAS and only two Defendants:  (i) Holdings; and (ii) Brake.  The Reorganized Debtors did not seek leave to pursue an amended complaint on behalf of any plaintiff, other than DAS, or against any of the Affinia Companies, except Holdings and Brake.

**E.    The Court Dismissed With Prejudice The Prior Plaintiffs
And Defendants Not Included In The Proposed Amended Complaint**

Given that the Reorganized Debtors elected to proceed on behalf of only DAS and against only Holdings and Brake, the Court entered its September 27, 2010 Order Dismissing Parties and Claims Not Included in Proposed First Amended Complaint, (Affinia D.I. 60) (the "Nonparty Dismissal Order"), which dismissed with prejudice all claims by any of the Debtors or Reorganized Debtors, other than DAS, and all claims against Affinia Companies that had been dropped from the Proposed Amended Complaint.

**F.    The Proposed Amended Complaint Does Not Comply
with the Dismissal Order or Properly Plead a Preference Claim**

The Proposed Amended Complaint seeks to avoid and recover $5,949,797 in aggregate transfers:  $5,575,474 against Holdings and $374,322 against Brake.

With respect to Holdings, the Proposed Amended Complaint alleges that DAS made the following five transfers to Holdings in September 2005 totaling $5,575,474 (collectively, the "Holdings Transfers"):

| Transfer Recipient | Transferring Entity | Transfer Date | Transfers Amount | Antecedent Debt/ Check Number | Purchase Order/ Invoice | Transfer Type |
|---|---|---|---|---|---|---|
| Holdings | DAS | 9/1/2005 | $3,025,474.84 | | | Check |
| Holdings | DAS | 9/26/2005 | $650,000.00 | C2000042158 | | Check |
| Holdings | DAS | 9/21/2005 | $750,000.00 | C2000042046 | | Check |
| Holdings | DAS | 9/21/2005 | $400,000.00 | C2000042047 | | Check |
| Holdings | DAS | 9/15/2005 | $750,000.00 | C2000041910 | | Check |
| **Total** | | | $5,575,474.84 | | | |

### 1.     The Proposed Amended Complaint Does Not Purport To Provide Antecedent Debt Information

The Amended Complaint does not provide the antecedent debt information required by the Dismissal Order.  DAS has not identified any contract, purchase order or invoice that obligated it to pay Holdings or Brake any money, let alone for these specific transfers.  Although DAS contends it has listed check numbers in the antecedent debt column for four of the Holdings Transfers ($2,550,000 of the $5,575,474 in purported Holdings Transfers), a check does not represent an antecedent debt.  It is only evidence of a transfer.  And, in any event, DAS is wrong when it says there were checks for these purported transfers.  The entries cited by DAS are not check numbers.  Exhibit A, Stewart Declaration, ¶¶ 17-18.

Moreover, DAS provided no information whatsoever for the September 1, 2005 purported transfer in the amount of $3,025,474.  *There is just a blank space where DAS admits it was supposed to identify the antecedent debt for this purported $3,025,474 transfer.*

### 2.     Holdings Was Not A Creditor And No Antecedent Debt Was Owed To It

None of the Holdings Transfers were on account of an antecedent debt owed to Holdings. Simply put, Holdings did not supply any Delphi entity and neither Delphi nor DAS owed any debt to Holdings.  Exhibit A, Stewart Declaration, ¶ 12.

### 3.    No Transfers Were Made To Holdings

Holdings also never received any of the Holdings Transfers.    Exhibit A, Stewart Declaration ¶ 13.    DAS is flat out wrong when it contends Holdings received transfers and DAS can offer no evidence whatsoever to support this contention.

### 4.    Some Of The Holdings Transfers Were Actually Made To Group, But They Cannot Be Avoided

Nonparty Affinia Group, Inc. ("Group") received three of the purported Holdings Transfers, totaling $1,800,000 (the "Group Transfers").[1]    Group did not receive the other two purported Holdings Transfers totaling $3,775,474 (the "Unknown Transfers"), and the Affinia Companies have no knowledge about these purported transfers.    Exhibit A, Stewart Declaration, ¶¶ 13-15.[2]

As to the three transfers that Group received, they were received as a mere conduit for Canada, a foreign supplier.    Group was not a creditor of any Delphi entity, it did not supply product to any of them, it is not a party to this proceeding and there was no antecedent debt owed Group.    *Id.*

Plus, the claims against all other Affinia Companies were dismissed with prejudice by the Nonparty Dismissal Order.    So DAS cannot assert a claim against nonparty Group.

Regardless, and as explained below, the Group Transfers can never be avoided because they were advance deposits for future shipments.    Exhibit B, Mendeljian Declaration ¶¶ 11-14.

### a.    DAS Cannot Avoid The Group Transfers Because They Were Not Made By DAS

---

[1] The transfers were made on September 15, 16 and 22, 2005.

[2] Affinia requested copies of the purchase orders between DAS and Holdings and Brake and the documents described in the Purchase Order/Invoice Number/Antecedent Debt/Check Number column of Exhibit 1 to the Amended Complaint on October 18, 2010, but DAS never responded.    *See* 10/18/10 e-mail (attached as Exhibit C).

Contrary to the allegations in the Amended Complaint, DAS was not the transferring entity for the $1.8 million in Group Transfers (and the Group Transfers were not made by check). The Group Transfers were wire transfers from Delphi Corporation, not DAS. Exhibit A, Stewart Declaration, ¶¶ 17-18. Attached to the Stewart Declaration as Exhibit 4 is a copy of the wire transfer detail for the $1.8 million in Group Transfers showing the transferring party was Delphi Corporation.

Of course, Delphi Corporation was dismissed as a plaintiff with prejudice by the Nonparty Dismissal Order. Therefore, DAS cannot avoid transfers made by Delphi Corporation.

### b.    The Group Transfers Were Advance Deposits

In 2005, the Affinia Companies knew that Delphi was actively trying to resource its business from the Affinia Companies to alternative suppliers. Resourcing is generally a time consuming process, because the customer needs to locate alternative suppliers, take bids from the alternative suppliers, in some instances have new tooling made, and build up an inventory bank of parts to facilitate the move. During the resourcing process, the customer needs cooperation from the supplier. Once the resourcing process is complete to the extent the customer's supply of parts from the alternative supplier is assured, the customer no longer needs the supplier. It is not uncommon in the automotive industry for a customer, after it has resourced from a supplier to an alternative supplier, to delay or refuse payment to the former supplier. Exhibit B, Mendeljian Declaration, ¶ 7.

Because of the pending resourcing and other reasons, on August 9, 2005, the Affinia Companies deemed themselves insecure and made a demand for adequate assurance of future performance from Delphi. As a result, the Affinia Companies and Delphi entered into an Agreement dated August 15, 2005 (the "Agreement"), whereby Delphi agreed to pay for future component parts delivered on or after August 15, 2005 on a "net immediate" basis. By

7

August 23, 2005, Delphi was in breach of the payment terms under the Agreement.  Exhibit B, Mendeljian Declaration, ¶¶ 8-10.

Accordingly, the Affinia Companies told Delphi that Canada would cease providing Delphi with parts unless Delphi paid Canada advance deposits against future shipments to be made by Canada (with the deposits to be held as security).  The advance deposits were in rounded dollar amounts because they were based on estimates, as opposed to being based upon actual shipments of parts.  Exhibit B, Mendeljian Declaration, ¶ 11.

Due to Delphi's urgency in securing parts from Canada, and difficulties Delphi was experiencing in sending funds on an expedited basis to Canada's bank accounts in Canada, it was agreed that Delphi would wire transfer the advance deposits to Group, with Group serving as a mere conduit of the funds on Canada's behalf.  Upon Group's receipt of the funds from Delphi, Canada would supply Delphi with the parts for which the deposits served as security, and Group would transfer the deposits to Canada.  Once Group received an advance deposit from Delphi, the advance deposit was transferred to Canada from Group, either directly or by applying a credit to an intercompany account.  Exhibit B, Mendeljian Declaration, ¶¶ 12, 14.

G.    **None Of The Affinia Companies Received Notice Of The Extension Motions And Orders**

Holdings never filed a proof of claim against Delphi.  None of the Affinia Companies had an attorney appear for any of them or file a request for notice in the Delphi case.  Exhibit A, Stewart Declaration, ¶ 6.  Thus, none of the Affinia Companies were on the ECF notice list (the "2002 List") that Delphi used to serve its various motions regarding its sealing of preference complaints and extensions to serve the complaints (the "Extension Motions") and the orders granting the Extension Motions (the "Extension Orders").

As a result:

1.   None of the Affinia Companies received notice of the August 6, 2007 Preservation of Estate Claims Motion, D.I. 8905, or the order granting it. D.I. 9105.  *See* Affidavit of Service, D.I. 9039; Affidavit of Service, D.I. 9141.

2.   None of the Affinia Companies received notice of the February 8, 2008 Extension of Avoidance Action Service Deadline Motion, D.I. 12922 or the order granting it. D.I. 13277.  *See* Affidavit of Service, D.I. 12970; See Affidavit of Service, D.I. 13315.

3.   None of the Affinia Companies received notice of the April 20, 2008 Postconfirmation Extension of Avoidance Action Service Deadline Motion, D.I. 13361 or the order granting it.  D.I. 13484.  *See* Affidavit of Service. D.I. 13415; Affidavit of Service, D.I. 13540; and

4.   None of the Affinia Companies received notice of the October 2, 2009 Supplemental Postconfirmation Extension of Avoidance Action Service Deadline Motion, D.I. 18952 or order granting it.  D.I. 18999.  *See* Affidavit of Service. D.I. 18967.  Upon information and belief, D.I. 18999 was not served until after the Original Complaint was unsealed

See Exhibit A, Stewart Declaration ¶19.  Delphi admits as much in its Omnibus Response in opposition to the various defendants dismissal motions.  *See* Affinia D.I. 49, at p. 29, fn. 8.

**H.    The December 2007 Disclosure Statement**

Given the passage of time, the Affinia Companies do not know if any of them received the December 2007 Disclosure Statement or, if they did, whether they read it.  Exhibit A, Stewart Declaration, ¶ 20.  However, it does not matter.

The December 2007 Disclosure Statement provided for a 100 cent plan, did not disclose that any of the Affinia Companies had been sued, expressly stated that there was no intention to pursue the preference actions that had been filed under seal, noted that Delphi's Extension Orders were already a *fait accompli*, but provided that Delphi's extension of time to serve the preference complaints expired in February 2008.  Therefore, even if the Affinia Companies had received and read it, this Disclosure Statement would not have provided notice to any of them

9

that they had been sued, they had the opportunity to object or be heard on any motion, or there was any risk to them if they were not served by February 2008.

**I.**      **This Court's Statements That Proposed Defendants Which Did Not Receive Notice Of The Extension Motions May Now Challenge Them De Novo**

Recognizing that notice of Delphi's Extension Motions may have been insufficient or non-existent with regard to some of the preference defendants, such as the Affinia Defendants, this Court has repeatedly held that these defendants could challenge the Extension Motions *de novo*. On April 1, 2010, for example, this Court recognized the inequity of binding defendants to decisions in adversary proceedings of which they were unaware. According to the Court:

> Well, would they even have to seek relief if they're not a party. I mean, it's odd to say that they'd be bound if they're not party to an adversary proceeding that's been . . . served yet.

April 1, 2010 Tr., at p. 13 (attached as Exhibit I).

Likewise, this Court concluded during the July 22, 2010 hearing on Affinia's motion to dismiss that:

> [I]f [a Defendant] didn't get notice, it's wide open and I should look at it as whether, you know, it was appropriate to have entered those orders. And they should have all their – you know, their rights to say the [Procedures Order and Extension Orders] shouldn't have been entered.
>
> * * *
>
> [I]f someone really didn't get notice of the extension motions, then it would seem to me they should be able to argue to me as if the motions were being made right now . . . .

July 22, 2010 Tr., at pp. 103, 119 (attached as Exhibit J). Indeed, this Court held that if, as here, a party had no notice of Delphi's Motions, "***it's a slam dunk as far as looking at the order as brand new***." *Id*. at 107 (emphasis supplied).

**J.      The Affinia Companies Were Prejudiced By The Lack Of Notice**

Having no notice that any of them had been sued or that the time for service of the secret complaint against them had been extended multiple times, the Affinia Companies closed plants and laid off employees who had worked with Delphi without taking any steps to organize or preserve information.  Declaration of Patrick Manning ("Manning Declaration"), ¶ 5 (Exhibit K hereto).

In 2005, the Affinia Companies announced a global restructuring plan to align their global capacity to meet the changing environment for its product.  This restructuring included the closure of facilities, discontinuation of operations and shifting of some of the manufacturing base to countries such as China, India and Mexico.  Beginning in the second quarter of 2006, and by the end of 2009, the Affinia Companies closed 46 facilities.  These closed facilities included virtually every facility that had done business with Delphi.  Manning Declaration ¶ 5; Stewart Declaration, ¶ 21.

The Affinia Companies took no steps to organize and preserve their records with respect to Delphi.  The Affinia Companies did not archive their employees' computerized information with respect to Delphi, and, when employees left, the Affinia Companies wiped clean the hard drives of their computers.  As a result, the Affinia Companies have lost most of their computerized data with respect to its dealings with Delphi.  Manning Declaration ¶ 5; Stewart Declaration ¶¶ 21-27.

In addition, the Affinia Companies did not hold exit interviews with departing employees who were knowledgeable about the Delphi business relationship or make arrangements to keep in touch with them.  The Affinia Companies have lost track of many of their former employees who dealt with Delphi.  Manning Declaration ¶ 5; Stewart Declaration ¶ 28.

11

Moreover, employees have died over the past five years.  For example, Ted Lazarcheff, who was the Affinia Companies' Vice President of Sales, died in 2007, leaving the Affinia Companies at a great disadvantage in understanding what actually transpired with Delphi. Exhibit A, Stewart Declaration ¶ 25.

If the Affinia Companies had known that Delphi was suing them (despite the passage of the statute of limitations), they would have taken special steps to organize and preserve their records with respect to Delphi, and would have held interviews with employees, including exit interviews with laid off employees, who were knowledgeable about the Delphi business relationship.  They also would have made arrangements to keep in touch with former employees in case they needed them to provide litigation information or serve as witnesses.  Manning Declaration, ¶ 5; Stewart Declaration ¶¶ 27-28.

The Affinia Defendants have been gravely prejudiced in their ability to defend this adversary proceeding by Delphi's delay in serving the complaint.

**K.**     **DAS Was Solvent During The Preference Period**

DAS Proposed Amended Complaint pleads only the bare legal conclusion that it was insolvent at the time of the Transfers.  The sole allegation in the Proposed Amended Complaint with respect to insolvency is at Paragraph 24 and states only that "Plaintiff is presumed to have been, and was in fact, insolvent at the time the Transfers were made."  DAS's Proposed Amended Complaint offers no facts to support this conclusory statement or to make the allegation plausible.

And for good reason.  DAS has *admitted* that it was solvent at the time of the Transfers. DAS's own schedules, previously filed with this Court and thus subject to judicial notice,[3] state that, *as of its petition date, DAS had over $2.6 billion in net equity*, with total assets of $8,133,427,809 and total liabilities of $5,526,447,015.  *See* Notice of Amendments of Schedules of Assets and Liability, dated April 18, 2006 (Case No. 05-44641 D.I. 10) (excerpts attached as Exhibit D).

DAS's solvency is consistent with the "transformational issues" that drove Delphi to filing for bankruptcy.  Delphi's Chapter 11 filing was elective, not driven by liquidity or balance sheet concerns.  As this Court observed on March 22, 2006, Delphi's case was "not a simple balance sheet restructuring . . . because there is too much funded debt on the books."  March 22, 2006 Tr., at 174 (excerpts attached as Exhibit E).   Instead, the bankruptcy filings were driven by Delphi's "transformational issues" such as labor, pension and General Motors Corporation ("GM") problems.  *Id*. at 174-175.  Based on DAS's schedules, however, DAS was not liable for the debts associated with these transformational issues.   Instead, the liabilities for these transformational issues, such as GM legacy obligations, pension obligations, GM indemnities and certain labor agreements were the obligation of Delphi Corporation, DAS's ultimate parent. *Compare* Schedule G to the DAS Schedule (DAS D.I. 5) (not scheduling union contracts or collective bargaining agreements as executory contracts) *with* Delphi Corporation Schedule G (D.I. 1854) (scheduling union contracts and collective bargaining agreements as executory contracts).

---

[3] *See In re Theatre Row Phase II Associates*, 385 B.R. 511, 520 (Bankr. S.D.N.Y. 2008) (holding that a court may take judicial notice of all documents filed in a case).

In fact, even DAS's parent, Delphi Corporation, appears to have been solvent during the preference period. Delphi "declared a dividend on Delphi common stock of $0.015 per share on June 22, 2005, which was paid on August 2, 2005." *See* Exhibit F, Delphi's 8/8/05 SEC Form 10-Q (the "10-Q"), at p. 6. As of June 30, 2005, there were 561,415,901 outstanding shares of Delphi common stock. *Id*. at p. 1. Thus, the dividend amounted to a $8,421,238 payment to shareholders during the preference period. According to John B. Sheehan, Delphi's chief restructuring officer, this dividend was from the capital surplus of Delphi's net assets in excess of its total liabilities. March 21, 2006 Tr., at pp. 152-157 (excerpts attached as Exhibit G). Tellingly, Delphi took no steps during its bankruptcy to recover this dividend.

During the preference period, Delphi's common stock also continuously traded between $2.00 and $5.90 per share. *See* Exhibit H (daily trading prices for Delphi Corporation stock for the period 7/01/2005 to 10/15/2005). The market valued Delphi, during the preference period, as having an equity value of between $1,122,813,802 and $3,312,353,816.

Consistent with these facts, as late as February 2008, more than two years into its bankruptcy, Delphi was still proposing a 100 cent plan to its creditors.

## ARGUMENT

## I.    THE STANDARD FOR GRANTING LEAVE TO AMEND

Leave to amend under Rule 15 of the Federal Rules of Civil Procedure is not granted automatically; instead "it is within the sound discretion of the court whether to grant leave to amend." *John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp*., 22 F.3d 458, 462 (2d Cir. 1994). "[C]onsiderations of undue delay, bad faith, and prejudice to the opposing party [are] all touchstones of a district court's discretionary authority to deny leave to amend." *Barrows v. Forest Laboratories, Inc*., 742 F.2d 54, 58 (2d Cir. 1984).

14

Likewise, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). For example, "it is proper to deny leave to replead where there is no merit in the proposed amendments or amendment would be futile." *Hunt v. Alliance N. Am. Gov't Income Trust, Inc.*, 159 F.3d 723, 728 (2d Cir. 1998). Courts thus are justified in denying leave to amend where, as here, proposed amendments cannot withstand a motion to dismiss or fail to comply with a court's order regarding required allegations. *Ruffolo*, 987 F.2d at 131 (affirming denial of leave to amend where proposed amendment failed to allege necessary facts); *McLaughlin v. Anderson*, 962 F.2d 187, 195 (2d Cir. 1992) (affirming denial of leave to amend where proposed amendment failed to comply with court's order).

As explained below, Delphi's motion for leave to amend "is unlikely to be productive" as to the Affinia Defendants and should be denied.

## II.    DAS'S PROPOSED AMENDED COMPLAINT IS FUTILE

### A.    DAS's Proposed Amended Complaint Fails To Comply With The Dismissal Order By Not Setting Forth The Antecedent Debt

DAS's Proposed Amended Complaint fails to comply with the minimum requirements set forth in this Court's Dismissal Order. Specifically, DAS's Proposed Amended Complaint once again fails adequately to plead facts regarding the antecedent debt for each transfer alleged by DAS. DAS's only allegations regarding the existence of an antecedent debt are bare-bones and are presented in Paragraph 23 of the Proposed Amended Complaint, where DAS alleges:

> Plaintiff made, or caused to be made, each Transfer listed on Exhibit 1 for, or on account of, an antecedent debt owed to Defendants as of the date on which each Transfer was made. The documents evidencing the antecedent debt include the purchase orders and/or invoices/bills of lading identified on Exhibit 1, which purchase orders and/or invoices/bills of lading include evidence of the amount of the antecedent debt and the approximate dates the subject goods contemplated by the Agreements were ordered by Plaintiff pursuant to the Agreements and/or were provided by Defendants.

15

Pursuant to Section 547(b)(2) of the Bankruptcy Code, an avoidance action requires a transfer "for or on account of an antecedent debt owed by the debtor before such transfer was made." 11 U.S.C. § 547(b)(2). The Bankruptcy Code does not define the term "antecedent debt." The Bankruptcy Appellate Panel for the Second Circuit has opined, however, that:

> The case law is clear that for purposes of Section 547(b)(2) "an antecedent debt" is a pre-existing debt that was incurred when the debtor previously obtained a property interest in the consideration provided by the creditor that gave rise to the debt. The consideration may have been a loan or *the furnishing of goods or services*, but when the debtor *obtained the loan, goods or services*, the creditor had a claim, matured or unmatured, that it could then assert against the debtor's bankruptcy estate if payment was not made at the time a petition was filed. At that point the debt was "antecedent" for purposes of Section 547(b)(2).

*In re Bennett Funding* Group, 220 B.R. 739, 742 (Bankr. 2d Cir. 1998) (emphasis supplied). An antecedent debt generally arises when the debtor "*obtain[s]*" the goods or services for which it contracted. *Id.*

Factual allegations regarding an "antecedent debt" necessary to satisfy an avoidance action therefore must address three distinct elements: (i) a debt (evidenced by a contract and performance under that contract giving rise to an obligation to pay), (ii) which was owed by the debtor, and (iii) which was antecedent to the transfer. DAS fails to plead any of these elements in anything more than a conclusory manner, which this Court, in dismissing Delphi's original complaint, has already recognized is impermissible. *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

### 1.    DAS Fails Even To Attempt To Identify Any Debt Owed To Holdings

Paragraph 23 of the Proposed Amended Complaint – DAS's sole antecedent debt allegation – fails to present any factual allegation establishing the existence of a debt with regard to the purported $5,575,474 in transfers to Holdings.

16

First, the Proposed Amended Complaint fails to identify any contract or other agreement giving rise to a debt to Holdings.  According to Paragraph 23, Exhibit 1 to the Proposed Amended Complaint identifies the "purchase orders," "invoices," and "bills of lading," underlying the debt for each of the alleged transfers.  It does not.  Rather, Exhibit 1 merely identifies alleged "check number[s]" for four of the alleged transfers to Holdings and then completely is blank regarding the "antecedent debt" for DAS's largest – over $3 million – purported transfer to Holdings.

Clearly, a check is not a contract giving rise to a debt or a debt itself.[4]  It merely is a medium of payment evidencing, at most, a transfer.

Second, DAS's Proposed Amended Complaint fails to identify any action by the Affinia Defendants, such as the delivery of goods, that would give rise to the existence of a debt under a purchase order or other agreement (even if one had been alleged).  As discussed above, the case law is clear that an antecedent debt does not arise until DAS actually "obtained" the goods or services for which it contracted, and there is no such allegation here.  *See supra* at 16.

DAS completely fails to comply with this Court's requirement that it identify the specific antecedent debts underlying its transfers to Holdings.

### 2.    DAS Fails To Identify A "Debt Owed By The Debtor"

DAS fails to make any allegation whatsoever that any of its purported transfers were made based on a "debt owed *by the debtor*" – by DAS, not Delphi or the other Reorganized Debtors – as required to satisfy Section 547(b)(2) of the Bankruptcy Code.  DAS instead merely

---

[4] And, in any event, DAS is wrong when it says there were checks for its purported transfers.  The entries cited by DAS are not check numbers.  Exhibit A, Stewart Declaration, ¶¶ 17-18.

alleges that the debt was "owed *to Defendants*,"[5] presumably because DAS does not know which of the Reorganized Debtors actually owed the debt.  Proposed Amended Complaint ¶ 23 (emphasis supplied).  Under the plain language of Section 547(b)(2) of the Bankruptcy Code, DAS cannot maintain an avoidance action based on such third-party debts.

### 3.    DAS Fails To Plead An "Antecedent" Debt

DAS also fails to plead facts establishing that the alleged debts in question were actually "antecedent."  Exhibit 1 to the Proposed Amended Complaint does not state when any alleged debt arose.  There is no basis, other than DAS's conclusory assertions, for DAS to claim the existence of any "antecedent" debt as required to state a claim under Section 547(b)(2) of the Bankruptcy Code.

### B.    DAS Cannot State A Preference Claim Against Holdings

The Proposed Amended Complaint would be futile because DAS cannot state a preference claim against Holdings.

### 1.    Holdings Was Not A DAS Creditor

Holdings did not supply any Delphi entity, including DAS.  Exhibit A, Stewart Declaration, ¶ 12. Neither Delphi nor DAS owed any debt to Holdings.  *Id*.  DAS's alleged transfers thus were not on account of an antecedent debt – or any debt – owed to Holdings.

### 2.    Holdings Never Received Any Transfers From DAS

Holdings never received any of DAS's alleged transfers.  *Id*., Exhibit A, Stewart Declaration, ¶ 13.  Rather, *nonparty* Affinia Group, Inc. ("Group") was the recipient of three of

---

[5] Similarly, DAS does not distinguish to which of the Affinia Defendants any alleged debt was owed:  was it owing to Holdings, to whom transfers were allegedly made, or to other Affinia-related entities?  DAS also does not allege whether Holdings was the initial transferee or a subsequent transferee.

the purported transfers to Holdings – totaling $1,800,000.[6]    DAS's claims against Group, however, have already been dismissed with prejudice pursuant to the Nonparty Dismissal Order. Moreover, as discussed above, DAS could never have even asserted a claim against Group because the transfers at issue: (i) were made by Delphi not DAS; (ii) were advance deposits, not payments of antecedent debts; and (iii) were made to a non-party, and a foreign supplier, Affinia Canada Corp. *See supra* at 2.

C.    <u>**The Proposed Amended Complaint Is Futile Because The Extension Orders Were Improvidently Entered And Should Be Vacated, Leaving DAS's Claims Barred By The Statute of Limitations**</u>

For all for the reason set forth in Affinia's prior motion to dismiss[7] and the dismissal motions filed by the other preference defendants, which are incorporated here, the Extension Orders were entered in violation of Federal Rule of Civil Procedure 4(m) and the Affinia Defendants' due process and other rights, and DAS may not unseal and serve preference complaints against them years after the limitations period expires.

Moreover, this Court has already determined that anyone, like the Affinia Defendants, who did not receive notice of Delphi's Extension Motions, may now challenge *de novo* the entry of the Extension Orders.  *See* July 22, 2010 Tr. at 103, 119 (Exhibit J) ("[I]f someone really didn't get notice of the extension motions, then it would seem to me they should be able to argue to me as if the motions were being made right now . . . .").

---

[6] The transfers were made on September 15, 16 and 22, 2005.

[7] *See* Motion Of Affinia Group Holdings Inc., Affinia Canada Corp., And Brake Parts Inc. To: (A) Vacate Certain Prior Orders Of The Court; (B) Dismiss The Complaint With Prejudice; (C) Dismiss Claims Against Certain Defendants Named In The Complaint;  And (D) Dismiss Claims Based On Assumption Of Contracts; Or (E) In The Alternative, To Require Plaintiffs To File A More Definitive Statement.  (Affinia D.I. 41) and supporting papers (i.e. Affinia D.I. 42, 50, 52).

### 1.    The Affinia Defendants Received No
### _Actual Notice_ Of Delphi's Extension Motions

The indisputable evidence, including Delphi's own admissions and documents, confirms that Delphi failed to provide the Affinia Defendants with **any** actual notice of its Extension Motions.  Specifically, (i) Holdings never filed a proof of claim against Delphi or DAS; (ii) Holdings never appeared in Delphi's bankruptcy action; and (iii) the Affinia Defendants never requested ECF notice.  Exhibit A, Stewart Declaration, ¶ 6.  As a result, the Affinia Defendants received no notice of any of the Extension Motions.  Indeed, Delphi admitted, in its Omnibus Response in opposition to the various defendants' dismissal motions, that it never served the Affinia Defendants  _See_ Omnibus Response (Affinia D.I. 49), at p. 29, fn. 8.

Delphi's 2007 Disclosure Statement, assuming it was even sent to the Affinia Defendants, also failed to put the Affinia Defendants on actual notice that their rights were in jeopardy.  The Disclosure Statement simply indicated that Delphi had **_previously_** filed adversary actions against certain **_unspecified_** defendants and **_had already been granted_** its Extension Order on August 16, 2007, which expired on March 31, 2008.  _See_ Disclosure Statement (D.I. 11388) at 193; Extension Order (D.I. 9105).  The Disclosure Statement did not give the Affinia Defendants notice and an opportunity to object to anything or alert them that they could be exposed to any litigation after early 2008.

Thus, the Affinia Defendants can now challenge _de novo_ the entry of the Extension Orders, including the April 2008 Extension Order that was entered after Delphi's EPCA funding fell through on the new basis that Delphi purportedly needed more time to determine how it wished to proceed in light of the loss of its buyer's 100 cent plan.  As explained in the Affinia Defendants' prior briefs, Rule 4(m) is designed to facilitate service, not non-service.  Thus the Rule 4(m) extension should not have been granted. _See Fimbres v. United States_, 833 F.2d 138,

139 (9th Cir. 1987) (rejecting Rule 4(m) extension, explaining that the notion that the plaintiff lacked the financial resources to prosecute the action amounted to nothing more than an improper intentional delay in service); *Smith v. Pennsylvania Glass Sand Corp.*, 123 F.R.D. 648, 651 (N.D. Fla. 1988) ("Plaintiff cannot deliberately or even inadvertently 'wait and see' if his financial resources improve enough to allow him to diligently prosecute his case."). Indeed, if such a "wait and see" rationale were permitted, the statute of limitations would be rendered meaningless.

### 2. The Affinia Defendants Were Not On Inquiry Notice Of Delphi's Extension Motions

The Affinia Defendants also were not on "inquiry notice" of the Extension Motions. As an initial matter, the law is clear that "[a party] bear[s] a heavy burden in establishing that [another party] was on inquiry notice as a matter of law." *Nivram Corp. v. Harcourt Brace Jovanovich, Inc.*, 840 F. Supp. 243, 249 (S.D.N.Y. 1993) (discussing "inquiry notice" in the context of fraud actions) (quoted in *Newman v. Warnaco Group, Inc.,* 335 F.3d 187, 195 (2d Cir. 2003). Moreover, "[i]nquiry notice may be found as a matter of law only when uncontroverted evidence clearly demonstrates when the plaintiff should have discovered" the conduct at issue. *Staehr v. Hartford Fin. Servs. Group*, 547 F.3d 406, 427 (2d Cir. 2008).

Here, the Affinia Defendants were not on inquiry notice of the Extension Motions or even that a preference action had been filed against them. Simply put, there are no facts that show, or could show, that it was reasonable for them to have inquired about the Extension Motions or preference action.[8]   In fact, Delphi admits that it intended to conceal from the preference defendants that they had been sued.

---

[8] As the Second Circuit explained, albeit in the context of a fraud action, "the critical factor for purposes of inquiry notice in ***any*** case is when the circumstances would suggest to an

In *EBS Litigation LLC v. Barclays Global Investors, N.A.*, 304 F.3d 302 (3rd Cir. 2002), the court rejected the notion that "an objectively-reasonable shareholder" should have been on inquiry notice that a debtor may have a claim against it for return of a distribution, even though the debtor's bankruptcy petition should have alerted him to the fact that the debtor's earlier pronouncements regarding its solvency may have been incorrect, and especially where the debtor continued to misrepresent its financial condition while in bankruptcy. *Id.* at 306. As the court emphasized:

> [W]e must not lose sight of the practical realities of the situation. We suspect it would not occur to an objectively-reasonable stockholder with full knowledge of the applicable law, even if he or she suspected that the distribution of D&B stock might be vulnerable to a challenge, to do anything about it unless such a challenge became a reality.

*Id.* EBS thus refutes any suggestion that the Affinia Defendants should have been on inquiry notice.

### a. Even if the Affinia Defendants Were On Inquiry Notice, It Was Reasonable For Them Do Nothing – Just Like The Other 11,000 Potential Preference Defendants

Even if the Affinia Defendants were on inquiry notice that DAS might assert a preference claim against them, it was reasonable for them to do nothing. After all, none of the 11,000 potential preference defendants objected to any of the Extension Motions. Certainly, if 11,000 other potential preference defendants did not object, then it was reasonable for the Affinia Defendants not to do so as well This especially is true where the Affinia Defendants had no obligation to monitor Delphi's bankruptcy proceeding, even if they were aware of it. *City of*

---

investor of ordinary intelligence the probability that she has been defrauded." *Id.* at 429 (emphasis in original) (internal quotations omitted); *see also Newman v. Warnaco Group, Inc.*, 335 F.3d 187, 193 (2d Cir. 2003) ("[T]he information provided must trigger notice with sufficient storm warnings to alert a reasonable person to the probability that there were either misleading statements or significant omissions involved") (quoting *Morin v. Trupin*, 809 F. Supp. 1081, 1097 (S.D.N.Y. 1993)).

*New York v. New York, N.H. & H. R.R. Co.*, 344 U.S. 293, 297 (1953) ("[E]ven creditors who have knowledge of a reorganization have a right to assume that the statutory 'reasonable notice' will be given them before their claims are forever barred" and have no obligation to monitor the proceedings before they receive formal notice).

### b. Delphi Misled The Affinia Defendants To Believe That No Preference Action Had Been Filed, Or Would Be Pursued, Against Them

The fact that no defendant actually objected to the Extension Motions is unsurprising given that Delphi's actions and representations specifically were intended to dissuade any such inquiry. Indeed, Delphi repeated its "no adversary proceedings" mantra throughout much of the bankruptcy proceedings, assuring defendants that avoidance actions would be limited only to a few named parties that did not include the Affinia Defendants. *See* 2/28/08 Extension Motion (D.I. 12922), ¶ 17 (Delphi would "not retain any causes of action asserted in the [adversary proceedings] except those specifically listed in Exhibit 7.24 of the Plan" (claims related to third parties)); March 19, 2008 Tr., at p. 22 (the Court stated that "[t]he plan [only] reserve[d] or retain[ed] the ability to pursue a very small number of avoidance actions."). Based on Delphi's statements, the Affinia Defendants had no reasonable basis to inquire further. *See Staehr*, 547 F.3d at 414 (holding that a party's "seemingly benign explanation" of actions that suggested fraud made it "reasonable for Plaintiffs not to inquire" further).

Even Delphi's Disclosure Statement suggested that no inquiry was necessary. Indeed, the Disclosure Statement gave the Affinia Defendants every reason to believe that, as of March 31, 2008, the avoidance actions had been dropped. Specifically, the Disclosure Statement stated that "[t]he Debtors have until March 31, 2008 to serve each defendant with the summons and complaint, without prejudice to the Debtors' right to seek further extensions of the deadline." Disclosure Statement (D.I. 11388) at 196. Thus, immediately after March 31, 2008, having not

been served with a summons and complaint or any notice of a motion to further extend the service deadline, the Affinia Defendants would have had no reason to believe that they were still the subject of a preference action.

This was particularly true here because DAS's schedules showed that it was solvent with more than $2.6 in net equity at the time of its petition. *See supra* at 12-14. No supplier could reasonably assume it could be sued by a solvent DAS to avoid a preference.

### D.    The Affinia Defendants Were Not Required To Do Anything Even If They Were On Actual Notice

It is also undisputed that the Affinia Defendants were never served with process in the sealed preference action until 2010 – years after the first Extension Orders was entered in 2007, and that Holdings never filed a proof of claim, or took any other action that would allow this Court to exercise jurisdiction over it, in Delphi's bankruptcy proceeding.[9] As such, the Affinia Defendants had the right to entirely ignore the entire proceeding until they were formerly served. *Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc.* 526 U.S. 344, 350 (1999).

In *Murphy Brothers*, the defendant had actual notice of the lawsuit after it was provided a courtesy copy of the complaint by plaintiff's counsel. Despite having the complaint, the defendant ignored the lawsuit and took no action to remove it within the limited 30 day period mandated by 28 U.S.C. § 1446. When the defendant was later formally served with the complaint, it attempted to remove the action to federal court. The plaintiff argued that the defendant had waived its removal right because it had actual notice of the lawsuit (through the courtesy copy) and did not timely seek to remove. In bluntly rejecting the plaintiff's contention

---

[9] The present case is unlike *United Student Aid Funds, Inc. v. Espinosa*, __ U.S. __, 130 S. Ct. 1367, 1378 (2010), where the petitioner, a student loan creditor, placed itself within the jurisdiction of the bankruptcy court by filing a proof of claim and then did nothing after it was given advance notice that a material part of its claim would be extinguished.

and endorsing the defendant's right to ignore the lawsuit until it was formally served, the Court

declared:

> Service of process, under longstanding tradition in our system of justice, is fundamental to **any procedural imposition** on a named defendant.
>
> \* \* \*
>
> In the absence of service of process (or waiver of service by the defendant), a court ordinarily may not exercise power over a party the complaint names as defendant. . . . **Accordingly, one becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure** stating the time within which the party served must appear and defend. . . . Unless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights.

*Id*. at 350-51 (internal citations omitted) (emphasis supplied).  The Court thus emphatically

declared that a defendant's "procedural rights [do not] slip away before service of a summons."

*Id*. at 356.  Here, no summons having been served on the Affinia Defendants, there can be no

contention that the Affinia Defendants' procedural rights, including their right to challenge *de*

*novo* the Extension Orders, was ever lost.

### E.    The Proposed Amended Complaint Is Futile Because DAS Did Not Properly Plead And Cannot Prove It Was Insolvent At The Time Of The Disputed Transfers

DAS fails to plead properly in its Proposed Amended Complaint and, cannot prove, an

essential element of its avoidance claim:  that DAS – the only plaintiff named in the Proposed

Amended Complaint – made transfers to the Affinia Defendants at a time when DAS was

insolvent. *See* 11 U.S.C. § 547(b) (authorizing a trustee to avoid a transfer only if it was, among

other things, "made while the debtor was insolvent").

25

DAS's only allegation of insolvency merely is a bare bones, conclusory recitation of the avoidance statute, namely that: "[p]ursuant to Bankruptcy Code section 547(f), for purposes of this Adversary Proceeding, Plaintiff is presumed to have been, and was in fact, insolvent at the time the Transfers were made."  Proposed Amended Complaint ¶ 24.  This is exactly the "[t]hreadbare recital[] of the elements of a cause of action supported by mere conclusory statements," that the Supreme Court stated "does not suffice."  *Iqbal*, 129 S. Ct. at 1949.

Delphi's failure to properly plead facts that show DAS's insolvency is no surprise.  This is because DAS was solvent.  *See supra* at 12-14.  In fact, DAS's own bankruptcy schedules show DAS was solvent, and had more than $2.6 in net equity, at the time of its petition.  These DAS admissions conclusively rebut any presumption of DAS's insolvency during the preference period.  *See, e.g.*, *In re Roblin Industries, Inc.*, 78 F.3d 30, 34-35 (2d Cir. 1996) (schedules showing solvency rebutted presumption so that trustee bore burden of coming forward to prove insolvency); *Akers v. Koubourlis*, 869 F.2d 1319, 1322 (9th Cir. 1989) (debtors' schedules indicating greater assets than debts rebutted presumption); *IMF Sales Associates, Inc. v. Racal-Vadic Information Systems, Inc.*, 94 B.R. 223, 225 n.3 (Bankr. D. Mass 1988) ("Racal has rebutted the [section 547(f) presumption] by offering the schedules which show the debtor was solvent."); *Fokkena v. Winston, Reuber, Byrne, P.C.*, 189 B.R. 744, 747 (Bankr. N.D. Iowa 1995) ("Debtor's schedules filed in his chapter 11 case are sufficient to support a finding of solvency at the time of the transfers.  The presumption was rebutted.").

Moreover, DAS's parent, Delphi, was also solvent.  During the preference period, Delphi even distributed a dividend to its shareholders – a dividend that was never returned.  *See* Exhibit F, at p. 6.  Then, during the first two years of its bankruptcy, Delphi represented that it expected a 100 cent plan.

Moreover, Delphi's performance in the marketplace, which many observers believe is the best indicator of enterprise value, also confirms solvency. *See, e.g., Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. La Salle P'ship*, 526 U.S. 434, 457 (1999) (acknowledging that "the best way to determine value is exposure to a market"); *VFB LLC v. Campbell Soup Co*., 482 F.3d 624, 633 (3d. Cir. 2007) ("Absent some reason to distrust it, the market price is a more reliable measure of the stock's value than the subjective estimates of one or two expert witnesses."); *Iridium IP LLC v. Motorola, Inc*., 373 B.R. 283, 293 (Bankr. S.D.N.Y. 2007) (Peck, J.) ("[T]he public trading market constitutes an impartial gauge of investor confidence and remains the best and most unbiased measure of fair market value and, when available to the Court, is the preferred standard of valuation.").  For example, in the month leading up to Delphi's bankruptcy, Delphi was trading on the New York Stock Exchange at around $3-5 per share, suggesting a market capitalization of between $1,122,813,802 and $3,312,353,816.  *See* Exhibit H (daily trading prices for Delphi Corporation stock for the period 7/01/2005 to 10/15/2005).  Delphi Corporation also made a dividend payment from capital surplus during the preference period.  *See supra* at 14.

Given DAS's failure properly to plead insolvency and the fact that DAS was solvent (with a $2.6 billion net equity), any amendment is futile here.  DAS cannot prove a crucial element of its avoidance action.

## III.   THE PROPOSED AMENDED COMPLAINT  WOULD SUBSTANTIALLY PREJUDICE THE AFFINIA DEFENDANTS

### A.    Prejudice Is Presumed As A Matter Of Law

In recognition of the natural prejudice resulting from a party's delay in prosecuting an action, including by delaying service of the complaint, the Second Circuit recognizes that "prejudice to defendants resulting from unreasonable delay may be presumed . . . [and] is

particularly appropriate where, as here, the plaintiff's delay was prolonged." *Shannon v. GE*, 186 F.3d 186 (2d Cir. 1999) (internal citations and quotations omitted).

Indeed, courts regularly recognize that "[f]ailure to use reasonable diligence in serving a summons is more fraught with possibilities of unfairness and abuse than failure to diligently prosecute an action after summons is served." *Richardson v. United White Shipping Co.*, 38 F.R.D. 494, 496 (N.D. Cal. 1965) (dismissal where service perfected 28 months after the filing of the action). This is because such delay "affects all the defendant's preparations." *Anderson*, *Anderson v. Air West, Inc.*, 542 F.2d 522, 525 (9th Cir. 1976) (dismissal under Rule 41(b) based on failure to serve for a year despite entry of order extending service period); *Farhang v. Indian Inst. of Tech.*, 2010 U.S. Dist. LEXIS 53975, at *14-15 (N.D. Cal. June 1, 2010) (delayed service prejudiced defendant "by depriving him of the opportunity to engage in earlier preparation and participation in the suit."). Indeed, "[d]elay alone can infuse an adverse element into the proper flow of litigation: evidence deteriorates or disappears, memories fade, and witnesses die or move away." *Veazey v. Young's Yacht Sale & Service, Inc.*, 644 F.2d 475, 478 (5th Cir. 1981) (dismissal under Rule 41(b) for failure to serve for nearly 21 months).[10]

In addition, where, as here, a plaintiff files its complaint immediately prior to the running of the statute of limitations and then fails to serve, prejudice to defendants is magnified:

---

[10] Unfortunately, based on Delphi's decision to delay prosecution of this action for five years, this action presents the unusual circumstance where amendment is sought at the beginning of the action, but years after the action was filed. To fully understand and analyze the Affinia Defendants' prejudice, resulting here from Delphi's failure timely to effectuate service compounded by Delphi's attempt to amend, this Court should instead look to the more closely analogous context of dismissals for failure to prosecute under Fed. R. Civ. P. 41(b) – more specifically, where courts have considered the prejudice caused by failure to timely serve defendants. Indeed, had this court not already dismissed Delphi's Complaint, Rule 41(b) would have provided yet another basis for dismissal.

> Once the statute [of limitations] has run, a potential defendant who
> has not been served is entitled to expect that he will no longer have
> to defend against the claim. If service can be delayed indefinitely
> once the complaint is filed within the statutory period, these
> expectations are defeated and the statute of limitations no longer
> protects defendants from stale claims.

*Anderson*, 542 F.2d at 525; *see also Zapata v. New York,* 502 F.3d 192, 198 (2d Cir. 2007) ("It is

obvious that any defendant would be harmed by a generous extension of the service period

beyond the limitations period for the action, especially if the defendant had no actual notice of

the existence of the complaint until the service period had expired. . ."); *Redding v. Essex Crane*

*Rental Corp. of Alabama*, 752 F.2d 1077, 1078 (5th Cir. 1985) (holding that it was an "obvious

misuse of the judicial process" to prevent defendant from learning of action by failing to serve)

### B.    The Affinia Defendants Would Suffer Actual Prejudice From Amendment

Leaving aside the Second Circuit's presumption of prejudice, the Affinia Defendants

have presented evidence of actual prejudice.    *See supra* at 11-12.  Specifically, lacking

knowledge of Delphi's preference action, the Affinia Companies closed every facility that had

done business with Delphi, failed to archive, and then wiped clean, computerized Delphi data for

many of their employees, and then lost track of many of their employees who had relationships

with Delphi.  Exhibit K, Manning Declaration ¶ 5.  The Affinia Companies thus are at a great

disadvantage in defending a preference action.

### C.    Delphi's Undue Delay Should Bar Amendment

This Court did not order Delphi to delay service on the Affinia Defendants or suggest that

Delphi should do so.  Rather, this Court merely extended the deadline by which Delphi had to

complete service.  Delphi made the election to keep its avoidance action from the Affinia

Defendants in order to negotiate more favorable contract terms than it otherwise would have

been able to had the defendants known about the avoidance actions.  Having made this election,

Delphi clearly undertook a risk that, when the defendants were finally served, the avoidance actions would be dismissed for any number of reasons, including the statute of limitations. This risk certainly was not unknown. Indeed, this Court specifically reminded Delphi that the extensions granted by the Court were without prejudice to the rights of the defendants in the avoidance actions to argue defenses other than statute of limitations. 10/22/09 Tr., at p. 6, excepts attached as Exhibit L.

Delphi's actions here are reminiscent of the plaintiff's failure to serve process in *Anderson v. Air West,* 542 F.2d 522 (9th Cir. 1976), which is instructive. In *Anderson*, the plaintiff filed suit the day before the statute of limitations was due to run. *Id.* at 524. The plaintiff then obtained an *ex parte* order extending indefinitely the time for serving defendants until he could obtain their addresses through discovery. *Id.* Rather than proceed with this discovery and diligently pursue service, however, the plaintiff delayed. *Id.*

When the plaintiff in *Anderson* ultimately did effectuate service – one year later – the trial court dismissed the action under Fed. R. Civ. P. 41(b), holding that the plaintiff, like Delphi here, "deliberately delayed, trying to decide whether he really wanted to serve the [Defendants]." *Id.* at 525. The Ninth Circuit then affirmed, stating that:

> The importance of personal service in triggering defense preparation is demonstrated by this case, where the defendants did not get together to plan their defense until after they had all been served. Plaintiff's assertion that they could, and should, have been planning earlier is an attempt to switch the burden of going forward with the action to the defendants. The plaintiff cannot in this manner escape her responsibility to diligently prosecute the action.

*Id.* at 525.

Here, as in *Anderson*, Delphi chose to keep this action a secret for well over two years *after* the statute of limitations expired, adopting a course of action that guaranteed the evils that

30

the statutes of limitations were designed to prevent would actually occur – evidence has been lost, memories have faded and witnesses have disappeared. Delphi should not be allowed to take further advantage of the prejudice resulting from its undue delay by amending now.

## IV.    NO FURTHER AMENDMENT SHOULD BE PERMITTED

This Court made clear on the record during the hearing on the "First Wave Motions" that it would not tolerate Delphi presenting a proposed amended complaint that failed to meet its minimal pleading requirements. Specifically, responding to the Affinia Defendants' counsel's request that Delphi should be held to a higher standard of pleading specificity given Delphi's five years to prepare for this adversary proceeding, this Court stated:

> [I]t's a motion for leave to amend the complaint on unusual circumstances. ***It's really their risk if I turn them down again, right***? [I] think that the risk of being turned down on the basis [that] the complaint still isn't good enough [after amendment] is a serious enough – ***the consequences of that are serious enough*** so I assume that the plaintiffs are going to be pretty careful.

7/22/10 Tr., at p. 213, excepts attached as Exhibit J (emphasis supplied).

Despite this Court's admonition and despite having an unprecedented amount of time to acquire the data necessary to make out its *prima facie* case, Delphi's Proposed Amended Complaint still fails even to meet the minimum pleading requirements identified in the Dismissal Order. Delphi has abused this process for too long and cost the Affinia Defendants and this Court far too much in both time and resources. No further amendment is warranted, and Delphi's avoidance action against Affinia should now be dismissed with prejudice.

## V.    INCORPORATION OF OTHER DEFENDANTS' BRIEFS

The Affinia Defendants incorporate all of the other meritorious arguments raised by the other preference defendants in opposition to Delphi's motions for leave to amend with regard to them.

## CONCLUSION

For all of the reasons set forth above, Delphi's Motion should be DENIED.

Respectfully submitted,

HONIGMAN MILLER SCHWARTZ AND COHN LLP
Attorneys for the Affinia Defendants

By: /s/   Judy B. Calton                              
    I. W. Winsten (P30528)
    Judy B. Calton (P38733)
    Jason R. Abel (P70408)
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226-3506
Telephone:  (313) 465-7344
Facsimile:  (313) 465-7345
e-mail:  jcalton@honigman.com

Dated:  November 23, 2010

8393697.8