LAMBERT, LESER, ISACKSON, COOK & GIUNTA, P.C.
Rozanne M. Giunta (Mich. Bar No. P29969)
Susan M. Cook (Mich. Bar No. P31514)
Adam D. Bruski (Mich. Bar No. P70030)
916 Washington Ave, Suite 309
PO Box 835
Bay City, MI  48707
989-893-3518
rgiunta@lambertleser.com

Attorneys for Defendant Stephenson and Sons Roofing

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| _____ | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| DPH HOLDINGS CORP., et al., | ) | Case No. 05-44481 (RDD) |
| | ) | |
| Debtors. | ) | Hon. Robert D. Drain |
| | ) | |
| _____ | ) | |
| | ) | |
| DELPHI CORPORATION, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| STEPHENSON AND SONS ROOFING | ) | Adv. Pro. No. 07-02654 (RDD) |
| Defendant. | ) | |
| _____ | ) | |

**OBJECTION TO THE REORGANIZED DEBTORS' MOTION**
**FOR LEAVE TO FILE AMENDED COMPLAINTS**

NOW COMES the Defendant in the above-captioned matter, by and through its

counsel, Lambert, Leser, Isackson, Cook & Giunta, P.C., and for its Objection to the

Reorganized Debtors' Motion for Leave to File Amended Complaints (the "Motion to

Amend") hereby states as follows:

## I.    PRELIMINARY STATEMENT

In September 2007, Delphi Corporation opened a file that allegedly contained a sealed complaint against the Defendant (the "Original Complaint").  The sealed Original Complaint sought to avoid and recover $1,374,034.71 in alleged preferential transfers purportedly made in late 2005.  Delphi Corporation provided no notice to the Defendant that it had filed the Original Complaint or that it had done so only after seeking leave to initiate the matter under seal.  In February 2010, over four years after the alleged preferential transfers were purportedly made, the Reorganized Debtors, as successors to Delphi Corporation, *et al.* (collectively, "Delphi" or the "Debtors"), finally served the Defendant with the heretofore-secret Original Complaint.

Because the Defendant received no notice regarding the Original Complaint or Delphi's efforts to keep its avoidance actions hidden from public view, the Defendant took no special steps to preserve its records with respect to Delphi, to hold exit interviews with employees who were knowledgeable about the Delphi relationship or to make arrangements to keep in touch with former employees in case the Defendant would need them to provide information or serve as witnesses.[1]  Neither did the Defendant set aside funds as a contingency to cover the costs of litigation of this matter or to cover any amounts required to be paid should the case be decided against the Defendant.  In addition,

---

[1] The Debtors admit lack of notice to the Defendant in their Omnibus Response in opposition to the various defendants' dismissal motions.  Omnibus Response at p. 29, fn. 8.  Nor was, as the Debtors now contend in their Motion to Amend, the information provided in the December 2007 Disclosure Statement sufficient to have put the Defendant on notice.  Given the time interval, the Defendant cannot say either way whether it received or reviewed this document.  However this is irrelevant as that Disclosure Statement provided for a 100 percent plan, did not disclose that the Defendant had been sued, expressly stated that there was no intention to pursue the preference actions that had been filed under seal, noted that Delphi's Extension Orders were already a fait accompli, but provided that Delphi's extension of time to serve the preference complaints expired in February 2008.  This document was insufficient to put the Defendant on notice that it had been sued.

the Defendant has suffered two fires which have destroyed a substantial portion of its records as they relate to its transactions with Delphi.

Meanwhile, the Defendant has continued about its business in the normal course, having no indication for over four years that there was a possible liability in excess of $1.3 million hanging over its head.  Despite this clear prejudice, Delphi contended that it may, nonetheless, proceed against the Defendant – in excess of two years after the statute of limitations has expired and over four years after the alleged preference payments were made -- because it obtained, again without any notice to the Defendant, four extensions to serve its sealed Original Complaint ("Extension Orders").

The Defendant filed a Motion to (A) Vacate Certain Prior Orders of the Court; (B) Dismiss the Complaint with Prejudice; or (C) In the Alternative to Require Plaintiffs to File a More Definite Statement (the "Defendant's Dismissal Motion"), which was heard and considered by the Court on July 22, 2010.  After that hearing, the Court entered an order dismissing the Original Complaint and requiring that the Debtors file the instant Motion to Amend, seeking leave to file an amended complaint which they attached (the "Amended Complaint").  In the Motion to Amend, the Debtors continue to allege that no prejudice will be worked against the Defendant if it is allowed, over five years since the dates of the alleged transactions, to amend its preference complaint to comply with the pleading standards they woefully neglected upon the filing of the Original Complaint.

The Debtors' continued assertions that the Defendant has not and is not suffering prejudice as a result of the Debtors' conduct of this case is simply untrue from both a factual and legal standpoint.  If the Amended Complaint is allowed and this case is permitted to continue, the Defendant will be at a severe disadvantage in its efforts to

defend this matter. For these reasons, and as set forth more fully herein, the Defendant respectfully requests that this Honorable Court deny the Debtors leave to amend their Original Complaint, find that the matter is dismissed with prejudice, and close this case.

## II.    STATEMENT OF FACTS

On October 8 and October 14, 2005, Delphi Corporation and certain of its subsidiaries and affiliates (collectively, the "Debtors" or "Delphi") each filed voluntary petitions for relief under Title 11 of Chapter 11 of the United States Code (the "Bankruptcy Code"). Under 11 U.S.C. § 546(a), the 2-year statute of limitations for the Debtors to bring avoidance actions therefore expired in October 2007.

## A.    Debtors Never Gave the Defendant Notice of the Preservation of Estate Claims Procedures Motion or Any of the Extension Motions

1.    Debtors' Preservation of Estate Claims Procedures Motion

On August 6, 2007, shortly before the 2-year limitations period was set to expire, the Debtors sought entry of an order seeking, among other things, the establishment of procedures for certain adversary proceedings, including those commenced under 11 U.S.C. § 547. As pertinent here, these procedures sought to include: (a) leave for the Debtors to file avoidance actions under seal; (b) an extension of time beyond the 120-day period provided for in Fed. R. Civ. P. 4(m) to serve summonses and complaints; and (c) a stay of adversary proceedings until service of process was effected. (Preservation of Estate Claims Procedure Motion, Docket No. 8905, ¶¶ 33-38) ("First Extension Motion"). The Debtors gave the Defendant no notice of the First Extension Motion. (Affidavit of Service, Docket No. 9039). At no point during the pendency of the Delphi bankruptcy did the Defendant appear on a service list. Therefore, the Defendant could not have received notice of this action unless Delphi specifically directed it to the company. General notice to the 2002

Service List would not have included the Defendant.  Nor was notice to the Unsecured Creditors' Committee relevant to the Defendant as the Committee does not represent the interests of potential defendants to preference actions.  It is in the best interests of the other unsecured creditors collectively to obtain preference recoveries and thus increase the value of the estate.

The Debtors justified their need for relief by asserting that most of the adversary proceedings would be resolved by its reorganization plan and therefore never pursued. (First Extension Motion ¶¶ 33-34).  Indeed, because the Debtors asserted that the claims likely would be resolved by the Debtors' 100% plan, the Debtors argued that the proposed procedures would not "prejudic[e] the rights of any defendants." Quite to the contrary, the Debtors asserted that the procedures would actually benefit the defendants by, among other things, allowing them to "avoid having to . . . retain counsel." (*Id*.) The Debtors apparently felt that failing to provide the defendants with notice and an opportunity to be heard (and object) was a good thing, contending that the proposed procedures would "avoid unnecessarily alarming" the defendants. (*Id.* ¶ 37). Of course, failing to furnish notice to the defendants (and sealing the avoidance complaints) also provided the Debtors with an obvious tactical advantage in their negotiations with suppliers and drafting of plans of reorganization.

On August 16, 2007, the Court entered an order providing, among other things, an extension of time to March 31, 2008 to serve the adversary complaints, as well as permission to file the complaints under seal. [Docket No. 9105] (the "Procedures Order").

2.    Debtors Commence An Adversary Proceeding Against the Defendant

On September 30, 2007 Delphi opened a file for an adversary proceeding against the Defendant, seeking to recover $1,374,034.71 in alleged preferential transfers.    The Defendant was provided no notice of the filing of this Original Complaint.

3.    The First Amended Joint Plan of Reorganization

On or about December 10, 2007, the Debtors filed their First Amended Joint Plan of Reorganization, [Docket No. 11386] (the "Confirmed Plan"), which was confirmed by order of the Court dated January 25, 2008. [Docket No. 12359] (the "Confirmation Order"). The Confirmed Plan provided for the payment in full of unsecured creditors of the Debtors. Exhibit 7.24 to the Confirmed Plan, which set forth the actions the Debtors sought to retain under the plan, notably did not contain any reference to the Defendant or the Original Complaint.[2]

4.    Debtors' Second Extension of Avoidance Action Service Deadline Motion

On February 8, 2008, the Debtors filed a motion seeking a second extension – until May 31, 2008 – to serve their sealed complaints. (Extension of Avoidance Action Service Deadline Motion, Docket No. 12922, ¶ 18) ("Second Extension Motion").    The asserted purpose for this extension was to "enable the Debtors to fulfill their fiduciary responsibility to preserve valuable estate assets in a manner that would not unnecessarily disrupt the emergence process or the Debtors' current business relationships with potential defendants that are necessary to the Debtors' ongoing operations," as well as to reduce the

---

[2] Section 14.3 of the Confirmed Plan and Modified Plan (defined below) provide that the Debtors "may alter, amend, or modify any Exhibits to this Plan under Section 1127(a) of the Bankruptcy Code at any time prior to the Confirmation Date."  The Confirmation Date was January 25, 2008. Thus, after January 25, 2008, the Debtors did not have the right under the Modified Plan to amend or add to Exhibit 7.24 (renumbered as Exhibit 7.19 in the Modified Plan).

"administrative and economic burdens of the adversary proceedings to the Debtors, the Court, and the defendants." (*Id.* ¶ 21).  Stated more plainly, the Debtors were using the bankruptcy process to mislead the defendants and induce them to continue with normal business relations.

The Second Extension Motion reaffirmed that the Debtors would "not retain any causes of action asserted in the [adversary proceedings] except those specifically listed in Exhibit 7.24 of the Plan." (*Id.* ¶ 17). In fact, the Debtors stated that of the 742 adversary proceedings commenced under seal, only the claims related to Laneko Engineering Co., Wachovia Bank, N.A., Laneko Engineering Co, Inc., and their affiliates and subsidiaries (the "Laneko Defendants"), were subject to the Procedures Order. (*Id.* ¶ 17 n.4). This fact was confirmed by the Court during an exchange with counsel for the Debtors during oral argument on the Second Extension Motion -- the Court recognized that: "[t]he plan [only] reserve[d] or retain[ed] the ability to pursue a very small number of avoidance actions."

Again, the Debtors gave no notice of the Second Extension Motion to the Defendant. (Affidavit of Service, Docket No. 12970).  The Court granted the second extension on March 28, 2008. (Docket No. 13277, ¶ 2) (the "Second Extension Order").

5.    Debtors' Third Extension of Avoidance Action Service Deadline Motion

Days later, on April 4, 2008, the Debtors announced that the plan investors had refused to fund their investments under the Confirmed Plan so that the necessary exit financing for the plan would not close.  Only days after that (on April 10, 2008 – a mere 13 days after the Second Extension Order), the Debtors rushed to the Court and filed yet another motion seeking to extend the service deadline, this time until 30 days after the substantial consummation of the Debtors' plan.  (Postconfirmation Extension of Avoidance

Action Service Deadline Motion, Docket No. 13361, ¶ 19) (the "Third Extension Motion"). Based on the April 4 announcement that the Confirmed Plan could not, essentially, be consummated, this had the practical effect of extending the limitations period indefinitely.

Despite the lack of funding and paucity of immediate paths to reorganization, the Debtors, once again, offered the same justification for their third request – to avoid "unnecessarily disrupt[ing] the emergence process or the Debtors' current business relationships with potential defendants that are necessary to the Debtors' ongoing operations." (*Id.* ¶ 22). The Debtors also asserted that they and the defendants should not be required to spend resources on the adversary proceedings when "most of the Adversary Proceedings will not be prosecuted if the Plan were to become effective and likely not be prosecuted under any modified plan." (*Id.*)

Again, the Debtors gave the Defendant no notice of the Third Extension Motion. (Aff. of Service, Docket No. 13415). Moreover, like the Second Extension Motion, the Third Extension Motion provided that only the claims related to Laneko Defendants were subject to the Procedures Order. (*Id.* ¶ 18 n.4). And, unlike the Defendant, the Laneko Defendants were actually provided with notice of the motion. (*Id.*; Aff. of Service, Docket No. 13415). Indeed, during oral argument, counsel for the Debtors specifically represented and admitted that the

> reasons we gave specific notice to Lenico (sic) and Wachovia was because those were the only two parties that had been identified under Exhibit 7.24 of the plan as having the avoidance actions preserved under the plan and, therefore, we gave particularized notice to them of the relief sought by the debtors.

The Court granted the requested third extension on April 30, 2008. (Docket No. 13484, ¶ 2) (the "Third Extension Order").

6.    Debtors' Fourth Extension of Avoidance Action Service Deadline Motion

On October, 2, 2009 – four years after the bankruptcy petition was filed, two years after expiration of the statute of limitations and over a year after entry of the Third Extension Order – the Debtors filed yet another motion to extend the deadline for service of process, this time until 180-days after substantial consummation of the plan. (Supplemental Postconfirmation Extension of Avoidance Action Service Deadline Motion, Docket No. 18952, ¶ 16) ("Fourth Extension Motion") (and, together with the First, Second and Third Extension Motions, the "Extension Motions"). The effective date of the plan occurred on October 6, 2009. (Docket No. 18958, ¶ 2). Again, the Debtors gave no notice of the Fourth Extension Motion to the Defendant. (Affidavit of Service Docket No. 18967).

The Court granted the fourth extension on October 22, 2009. (the "Fourth Extension Order," Docket No. 18999, ¶ 2) (and, together with the Procedures Order and the Second and Third Extension Orders, the "Extension Orders"). Importantly, during the October 22, 2009 hearing on the Debtors' motion, the Court explicitly stated that the extension was without prejudice to the rights of the defendants in the avoidance actions to argue defenses other than statute of limitations.

**B.    The Defendant Suffers Great Prejudice During the Time It Has No Notice**

During the time Delphi intentionally concealed the avoidance actions, the Defendant has continued about its business in a normal fashion. Because the Defendant received no notice regarding the Original Complaint, the Defendant took no special steps to organize and preserve its records with respect to Delphi, to hold exit interviews with employees who were knowledgeable about the Delphi business relationship or to make arrangements to keep in touch with those employees in case the Defendant would need them to provide

litigation information or serve as witnesses.  Neither did the Defendant set aside funds as a contingency to cover the costs of litigation of this matter or to cover any amounts required to be paid should the case be decided against the Defendant.

In addition, the Defendant has suffered two fires which have destroyed a substantial portion of its records as they relate to its transactions with Delphi.  Meanwhile, the Defendant has continued about its business, having no indication for over four years that there was a possible liability in excess of $1.3 million hanging over its head.  As a result, the Defendant has suffered great prejudice, and will be harmed in its ability to defend this action should the Amended Complaint be allowed.

**C.    Delphi Finally Serves the Complaint 4 Years Later**

After having provided no notice to the Defendant that a sealed complaint had been filed against it (or notice of any of the Extension Motions or Orders), Delphi finally served the Defendant with the Original Complaint in February 2010, over two years after expiration of the statute of limitations and over four years after the alleged preferential transfers were made.

Despite having over four years to prepare it, the Original Complaint was bare-bones, providing no information other than the alleged "transfer date," "transfer amount" and "transfer type" for the transfers that Delphi seeks to avoid.  For example, the Original Complaint did not identify which of the numerous Debtors actually owed the money allegedly transferred.   The Original Complaint also did not identify which Debtor actually made the alleged payments (or out of which Debtor's bank account).  In fact, the Original Complaint even failed to set forth the identity of the actual plaintiffs making the avoidance claims (*i.e.*, which Delphi entities are suing); instead, the Original Complaint only stated

that it was brought on behalf of "Delphi Corporation ('Delphi') and other [unnamed] above-captioned debtors and debtors in possession."

### D.    The Defendant and Other Similarly-Situated Defendants Bring Motions to Dismiss

Based on the various inequities created by the artificial extension of the deadline to serve the Original Complaint and the deficiencies of that pleading itself, the Defendant and numerous other defendants who were similarly situated filed motions to dismiss.  After hearing on these motions on July 22, 2010 the Court entered an Order Grating in Part First Wave Motions to Dismiss (the "Dismissal Order", signed September 7, 2010).  In addition to disposing with prejudice of certain specific adversary proceedings and all those filed against foreign suppliers or those in which the amount in controversy did not exceed $250,000.00, the Dismissal Order held that:

> All remaining claims in all of the Adversary Proceedings in which a First Wave Motion, a Second Wave Motion (as defined in the Procedures Order), a motion for judgment on the pleadings, and/or a joinder in any of the foregoing are DISMISSED without prejudice because the Debtors have failed to plead sufficient facts to state a claim, and have not complied with Rule 8 of the Federal Rules of Civil Procedure, made applicable by Rule 7008 of the Federal Rules of Bankruptcy Procedure. By no later than September 7, 2010, the Reorganized Debtors shall file a motion for leave to amend the complaint in each Adversary Proceeding the Reorganized Debtors intend to pursue (each, a "Motion to Amend"). Each Motion to Amend shall attach a proposed amended complaint that, for each alleged transfer shall set forth, at a minimum, the transferor, the transferee, any known subsequent transferee against whom relief is sought, the antecedent debt and which Reorganized Debtor is the plaintiff.

On September 7, 2010, the Debtors filed the Motion to Amend, attaching the Amended Complaint.  In response, the Defendant files the instant Objection to the Motion

to Amend and asks, for the reasons set forth herein, that the Court not allow the Amended

Complaint to be filed.

### III.    RELEVANT LAW AND ARGUMENT

**A.    The Motion to Amend Fails to Meet the Requirements of Fed. R. Bankr. P. 7015 and Fed. R. Civ. P. 15**

The Debtors, in the Motion to Amend state that under Fed. R. Civ. P. 15(a)(2), made

applicable by Fed. R. Bankr. P. 7015, "a party may amend its pleading only with the

opposing party's written consent or the court's leave. The court should freely give leave

when justice so requires."  However, the Debtors, again in their own Motion to Amend note

that a motion to amend, although "left to the sound discretion of the district court," can be

denied if there is "good reason to deny the motion." *Citing Acito v. IMCERA Group, Inc.*, 47

F.3d 47, 55 (2d Cir. 1995).  As for what those "good reasons" to deny a motion to amend

might be, the Debtors reference the case of *Monahan v. New York City Dept. of Corrections*,

214 F.3d 275, 283 (2d Cir. 2000)) (*citing Foman v. Davis*, 371 U.S. 178, 182 (1962)) where

the Second Circuit states that "absent evidence of undue delay, bad faith or dilatory motive

on the part of the movant, undue prejudice to the opposing party, or futility, Rule 15's

mandate must be obeyed."  "[C]onsiderations of undue delay, bad faith, and prejudice to the

opposing party [are] all touchstones of a district court's discretionary authority to deny

leave to amend." *Barrows v. Forest Laboratories, Inc.,* 742 F.2d 54, 58 (2d Cir. 1984).

Likewise, "[w]here it appears that granting leave to amend is unlikely to be

productive, . . . it is not an abuse of discretion to deny leave to amend."  *Ruffolo v.

Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir. 1993).  For example, "it is proper to deny

leave to replead where there is no merit in the proposed amendments or amendment

would be futile."  *Hunt v. Alliance N. Am. Gov't Income Trust, Inc.,* 159 F.3d 723, 728 (2d Cir.

1998).   Courts thus are justified in denying leave to amend where, as here, proposed amendments cannot withstand a motion to dismiss or fail to comply with a court's order regarding required allegations*. Ruffolo,* 987 F.2d at 131 (affirming denial of leave to amend where proposed amendment failed to allege necessary facts); *McLaughlin v. Anderson,* 962 F.2d 187, 195 (2d Cir. 1992) (affirming denial of leave to amend where proposed amendment failed to comply with court's order).

The Debtors, however, in their Motion to Amend have the temerity to state, without qualification or reference to the facts of this unique proceeding that "[h]ere, there is no good reason to deny the Motion, and none of the concerns the Second Circuit identified in *Monahan* are present."   Motion to Amend, ¶ 20.   Quite to the contrary of the Debtors' pronouncement that everything is on the up and up, the actual facts of this case are entirely different and are a textbook example of the concerns expressed in cases like *Monahan* for which a motion to amend should not be granted.   "Justice" as used in Fed. R. Civ. P. 15(a)(2) *does not* require that amendment of the Original Complaint be granted.   In fact, justice requires just the opposite.   *Monahan* cites as possible reasons for denial of a motion to amend "evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility".   *Monahan,* 214 F.3d at 283.   There are presented here ample and overwhelming reasons for this Court, relying on the Debtors' own case of *Monahan* to deny the Motion to Amend.

1.      The Two Year Extension of the Service Deadline for the Original Complaint and the Presentment of the Amended Complaint Over Three Years After This Case Was Opened Constitutes Undue Delay

Much has been said by this Defendant and others of the unprecedented delay in the prosecution of these adversary proceedings - far beyond anything that could have been

envisioned by the drafters of the relevant sections of the Code and Rules. The issues related to the Debtors' various requests for extensions were addressed, briefed, and argued in connection with the defendants' motions to dismiss and as of the date of this Objection, they remain largely undecided by the Court. While this Objection will refrain from reiterating those issues wholesale, they do form an integral part of the argument that the Debtors' Motion to Amend should not be granted for reasons of undue delay, bad faith, prejudice to the Defendant, and futility.

Although the Debtors' Motion to Amend itself was brought in a timely fashion per the requirements of the Court's Dismissal Order, reference to the broader picture cannot be neglected. **The Motion to Amend is an attempt made on September 7, 2010 to amend a complaint filed on September 30, 2007**.

Section 546 provides a statute of limitations which requires that any actions to recover preferential transfers be brought within the first two years of the debtor's initial Chapter 11 filing. *See, e.g., Pugh v. Brook (In re Pugh),* 158 F.3d 530 (11th Cir. 1998); *McFarland v. Leyh (In the Matter of Tex. Gen. Petroleum Corp.),* 52 F.3d 1330, 1337-38 (5th Cir. 1995). The mere existence of such a provision shows that Congress did not intend the debtor to have an unlimited amount of time in which to resolve preference claims. The most basic concepts of justice and fair play require that a defendant not be forced to defend a suit based on stale allegations and facts and further, that a Chapter 11 proceeding be administered efficiently, promptly, and with as little disruption to the debtor's creditors as possible.

In their Extension Motions, the Debtors relied on Fed. R. Civ. P. 4(m), made applicable to this case through Fed. R. Bankr. P. 7004 as the statutory framework for their

repeated requests to delay service of the secret Original Complaint. Rule 4(m) provides a time limit for service of a complaint, stating that "[i]f a defendant is not served within 120 days after the complaint is filed, the court--on motion or on its own after notice to the plaintiff--must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period."

The ability to extend the service deadline under Rule 4(m) must be read with reference to the statute of limitations provided in 11 U.S.C. § 546. The entire purpose of a statute of limitations is to put a limit on the time in which a plaintiff may assert a claim against a defendant in order to allow, at some point, the possible defendant to be relieved from the threat of suit. These limitations are primarily enacted to prevent litigation of claims where time has led both to the loss of evidence and the dimming of the memories of those who might be called to testify as witnesses in the matter. *Burnett v. New York Cent. R.R. Co.*, 380 U.S. 424, 428 (1965). These limits allow a possible defendant to know approximately how long it must retain records or other evidence, set aside possible funding reserves to litigate, settle, or pay on a claim, and for how long connections should be maintained with possible witnesses should their testimony be required. In addition, potential defendants may be required under SEC or other guidelines to provide disclosures of potential causes of action against their companies. The Defendant had every right, once an "appropriate period" for service after the Section 546 deadline had passed, to assume that it was not subject to preference claims arising from the Debtors' bankruptcy and act accordingly. This "appropriate period" for service under Rule 4(m) could not be, based on any prior experience with preference actions, considered to be two years.

Courts have held that in considering a Rule 4(m) motion, they should take into account whether the statute of limitations will have run during the extension. See, e.g., *Zapata v. City of New York*, 502 F.3d 192, 198 (2d Cir. 2007) (a court may deny extension solely based on the prejudice to the defendant arising from the running of the statute of limitations); *McCurdy v. American Bd. of Plastic Surgery,* 157 F.3d 191, 197 (3d Cir. 1998) (refusing to grant a Rule 4(m) extension, stating that while courts should strive to resolve cases on their merits, "justice also requires that the merits of a particular dispute be placed before the court in a timely fashion so that the defendant is not forced to defend against stale claims"); *Adams v. AlliedSignal Gen. Aviation Avionics*, 74 F.3d 882, 887-888 (8th Cir. 1996) (denying Rule 4(m) motion despite running of statute of limitations, given plaintiffs' "repeated opportunities to correct their service insufficiencies"); *In re Teligent Servs. Inc.,* 372 B.R. 594, 601 (Bankr. S.D.N.Y. 2007) (affirming bankruptcy court's dismissal of adversary proceeding for failure to serve the complaint under Rule 4(m), despite that the statute of limitations had run, and despite that the defendant was on notice of the claims).

The Delphi Debtors are not the only ones to attempt to use Rule 4(m) as a means for essentially extending the statute of limitations governing preference claims. Similar tactics were employed in *In re Safety-Kleen Corp., et al.,* No. 00-2303 (PJW) (Bankr. D. Del., filed June 9, 2000); *In re Interstate Bakeries Corp., et al.,* No. 04-45814 (Bankr. W.D. Mo., filed September 22, 2004); and *In re Calpine Corporation*, No. 05-60200 (BRL) (Bankr. S.D.N.Y., filed Dec. 20, 2005). However, there are important distinctions between the procedures used in each of these cases and those employed by the Delphi Debtors. In *Safety-Kleen* notice of the Rule 4(m) motions was not formally served upon the defendants but the debtors did notify each of them by letter of their actions and the rationale therefore. In

*Interstate Bakeries,* the Rule 4(m) motion included a copy of a draft complaint and was served on all parties who were identified as potential preference defendants. In that case, the committee also sent a memorandum to each of the defendants explaining the purpose of the extensions. *See LAST IN LINE: Putting Preference Claims on Hold in the Wonder Hostess Chapter 11; ABI Journal,* Vol. XXV, No. 10, p. 18, Dec/Jan 2007. Finally, in *Calpine,* while an order was entered allowing preference complaints to be filed under seal and the service deadline extended beyond the statute of limitations, there is at least indication that at the time the Debtors were in the process of negotiating with the defendants who, therefore, had at least some notice that preference actions were pending. In addition, the debtors in *Calpine* only requested an extension of 60 days in which to serve the complaints.

In contrast, the Delphi Debtors never attempted to negotiate, give formal notice, or otherwise inform the Defendant that it had initiated an adversary proceeding against it until two years after the fact when the Original Complaint was actually served. In the interim, the Debtors had been filing the various Extension Motions alleging, until the very end, that they did not intend to actually pursue the actions and that they did not wish to disrupt supplier relations by informing those suppliers that they had initiated, in some cases, multi-million dollar litigation against them. Delphi took no steps to act in concert with the defendants or explain their rationale for seeking to preserve their causes of action. Instead, for two years, they deliberately hid from the defendants they fact that they had been sued behind justifications which, after the funding for the original plan fell through became increasingly hollow.

The Ninth Circuit has stated that ""[n]o court has ruled that the discretion [under Rule 4(m)] is limitless." *Efaw v. Williams,* 473 F.3d 1038, 1041 (9th Cir. 2007). Now, over

three years since Original Complaint was filed, the Debtors are requesting that this Court

allow them to file an Amended Complaint, stating that undue delay is not present.  The

Defendant believes that the facts, the law, and a common sense of justice say otherwise.

The Debtors' repeated abuse of Rule 4(m), which is meant to protect potential defendants

from being sued without timely notice, should not be further twisted to allow them to

extend, far beyond its natural lifespan, the expired statute of limitations applicable to these

matters.

Recognizing that notice of Delphi's Extension Motions may have been insufficient or

non-existent with regard to some of the preference defendants, such as this one, this Court

has repeatedly held that these defendants could challenge the Extension Motions *de novo.*

On April 1, 2010, for example, this Court recognized the inequity of binding defendants to

decisions in adversary proceedings of which they were unaware.  According to the Court:

> Well, would they even have to seek relief if they're not a party.
> I mean, it's odd to say that they'd be bound if they're not party
> to an adversary proceeding that's been . . . served yet.

April 1, 2010 Tr., at p. 13.

Likewise, this Court concluded during the July 22, 2010 hearing on the Defendant's

motion to dismiss that:

> [I]f [a Defendant] didn't get notice, it's wide open and I should
> look at it as whether, you know, it was appropriate to have
> entered those orders.  And they should have all their - you
> know, their rights to say the [Procedures Order and Extension
> Orders] shouldn't have been entered.
>
> * **
> *
> [I]f someone really didn't get notice of the extension motions,
> then it would seem to me they should be able to argue to me as
> if the motions were being made right now . . . .

July 22, 2010 Tr., at pp. 103, 119.  Indeed, this Court held that if, as here, a party had

no notice of Delphi's Motions, **"it's a slam dunk as far as looking at the order as brand**

**new."**  *Id.* at 107 (emphasis supplied).

2.    The Denial of Notice and Unprecedented Extension of the Service Deadline
Constituted Bad Faith on the Part of the Debtors

For over two years, the Debtors went to great lengths to conceal from the Defendant

the fact that it had been sued.  The Debtors justified this subterfuge by stating that sealing

of the complaints would prevent defendants from having to employ counsel for what were

(according to repeated statements from Debtors' counsel) actions likely to be dismissed

anyway based on the 100% plan originally envisioned.  However, the plain facts of the

matter are as follows.  First as argued in this and the Defendant's Motion to Dismiss, the

Defendant had the right to know it had been sued.  Second, it is up to the Defendant to

decide when and if it engages counsel to protect its interests – the Debtors were neither

empowered nor qualified to make this decision for them.  Third, whatever pretense that

these actions would not be pursued on account of the 100% plan evaporated at the same

time as that plan.  Fourth, as the Debtors plainly also state in their Extension Motions,

another purpose of sealing and delaying the service of the complaints was to prevent

disruption of the Debtors' relationship with its suppliers.  Again, the Defendant had a right

to know it was subject to substantial liability as set forth in the Original Complaint.  It is the

Defendant, not the Debtors who gets to decide how it structures its commercial

relationship with the Debtor as a result of being sued.

In the case of the Defendant, there was no ongoing commercial relationship between

the parties – it was not a post-petition supplier to Delphi and thus, the Debtors' logic on this

point, as represented to the Court is without merit.  It is for these reasons and for the other

reasons discussed herein which show the prejudice inflicted upon the Defendant that the

Defendant believes constitutes bad faith on the part of the Debtors and which should,

pursuant to *Monahan* prevent the Debtors from filing their Amended Complaint.

3.    Great and Irreparable Prejudice to the Defendant Will Result if the Motion to Amend
is Granted

As discussed herein, at other points in this Objection, and in the Defendant's Motion

to Dismiss, the prejudice that would result to the Defendant if the Debtors are allowed to

file the Amended Complaint and proceed with this case is astounding.  The preferential

transactions alleged in the Amended Complaint supposedly occurred between August and

October 2005.  As of September 2010, when the Debtors filed the Motion to Amend, five

years had passed since the occurrence of the alleged transfers.  If this matter is to proceed

to trial the earliest possible date at which this Court will take testimony is likely to be six

years after events in question.

For this Defendant and the others involved in these cases, this is a very long amount

of time.  Employees who may have knowledge of these transactions have moved on,

documents have not been maintained, and very little remains with which the Defendant

can refute the allegations of the Debtors.  In fact, since the filing of the Original Complaint

the Defendant has suffered two fires, resulting in the loss of substantial records.  In

addition, for the three years since the Original Complaint was filed, the Defendant could

have worked to set aside funds which could be used to litigate, settle, or in the worst case

scenario, satisfy a judgment on these claims.  Instead, through the deliberate actions of the

Debtors and as a real and very practical matter, the passage of time and the secrecy

attendant to the Original Complaint have placed the Defendant in a position of weakness regarding defense of these claims and diminished its chances of successful litigation in ways that would not be present had these matters moved forward three years ago or had the Defendant at least been aware of the existence of the Original Complaint and been able to preserve records, keep in contact with potential witnesses, and financially plan to cope with the claims.

In recognition of the natural prejudice resulting from a party's delay in prosecuting an action, including by delaying service of the complaint, the Second Circuit recognizes that "prejudice to defendants resulting from unreasonable delay may be presumed . . . [and] is particularly appropriate where, as here, the plaintiff's delay was prolonged." *Shannon v. GE,* 186 F.3d 186 (2d Cir. 1999) (internal citations and quotations omitted).

Indeed, courts regularly recognize that "[f]ailure to use reasonable diligence in serving a summons is more fraught with possibilities of unfairness and abuse than failure to diligently prosecute an action after summons is served." *Richardson v. United White Shipping Co.,* 38 F.R.D. 494, 496 (N.D. Cal. 1965) (dismissal where service perfected 28 months after the filing of the action). This is because such delay "affects all the defendant's preparations." *Anderson, Anderson v. Air West, Inc.,* 542 F.2d 522, 525 (9th Cir. 1976) (dismissal under Rule 41(b) based on failure to serve for a year despite entry of order extending service period); *Farhang v. Indian Inst. of Tech.,* 2010 U.S. Dist. LEXIS 53975, at *14-15 (N.D. Cal. June 1, 2010) (delayed service prejudiced defendant "by depriving him of the opportunity to engage in earlier preparation and participation in the suit."). Indeed, "[d]elay alone can infuse an adverse element into the proper flow of litigation: evidence deteriorates or disappears, memories fade, and witnesses die or move away." *Veazey v.*

*Young's Yacht Sale & Service, Inc.,* 644 F.2d 475, 478 (5th Cir. 1981) (dismissal under Rule

41(b) for failure to serve for nearly 21 months).

In addition, where, as here, a plaintiff files its complaint immediately prior to the

running of the statute of limitations and then fails to serve, prejudice to defendants is

magnified:

> Once the statute [of limitations] has run, a potential defendant
> who has not been served is entitled to expect that he will no
> longer have to defend against the claim. If service can be
> delayed indefinitely once the complaint is filed within the
> statutory period, these expectations are defeated and the
> statute of limitations no longer protects defendants from stale
> claims.

*Anderson,* 542 F.2d at 525; *see also Zapata v. New York*, 502 F.3d 192, 198 (2d Cir. 2007) ("It

is obvious that any defendant would be harmed by a generous extension of the service

period beyond the limitations period for the action, especially if the defendant had no

actual notice of the existence of the complaint until the service period had expired. . ."*);

*Redding v. Essex Crane Rental Corp. of Alabama*, 752 F.2d 1077, 1078 (5th Cir. 1985)

(holding that it was an "obvious misuse of the judicial process" to prevent defendant from

learning of action by failing to serve)

By keeping this action a secret for well over two years after the statute of limitations

expired, the Debtors deliberately chose a course of action that will guarantee that the evils

the statute of limitations were designed to prevent will actually occur – evidence has been

lost, memories have faded and witnesses have disappeared. *Order of R. Telegraphers v.*

*Railway Express Agency, Inc.*, 321 U.S. 342, 348-49 (1944); *United States v. Kubrick*, 444 U.S.

111, 117 (1979) (statutes of limitation "protect defendants and the courts from having to

deal with cases in which the search for truth may be seriously impaired by the loss of

evidence, whether by death or disappearance of witnesses, fading memories, disappearance of documents, or otherwise"). As a result, the Defendant's ability to defend itself has been substantially impaired. Sealing the complaint and waiting over two years to serve it on the Defendant is, in fact, no different than if the Debtors filed the Complaint long past the expiration of the statute of limitations. And, of course, it is black-letter law that procedural rules, such as Rule 4(m) cannot "abridge, enlarge, or modify any substantive right." 28 U.S.C. § 2075; *In re Perrotta*, 406 B.R. 1, 8 (Bankr. D.N.H. 2009) ("Therefore, to the extent that the Bankruptcy Rules and the Bankruptcy Code are inconsistent, the statute controls.").

Further, the delay and secrecy of the Original Complaint denied to the Defendant certain options which, regardless of whether it decided to choose them or not, would have been available to it had it known of the Original Complaint from the outset. For instance, the Defendant could have chosen to file a bankruptcy proceeding itself in order to absolve itself of the liability. Or, as claims were routinely trading for 100% or more when it appeared that Delphi was going to confirm a 100% plan, the Defendant could have paid the alleged preference, received a 502(h) claim, and then sold the 502(h) claim to recoup the payment.

In addition, the lack of due process resulting from the actions in these cases to date has had the additional effect of disenfranchising the Defendant from participating in the case and voting on the Plan and Modified Plan. Indeed, under Section 502(d), "a transferee of an avoidable transfer has an allowable claim once it turns over such property for which it is liable," and that it may file a proof of claim on account of same. *Fleet Nat'l Bank v. Gray (In re Bankvest Capital Corp.)*, 375 F.3d 51, 57 n.4 (1st Cir. 2004). That, in turn, allows it to

"[participate] in the voting and distribution from the estate." *In re Hamilton*, 179 B.R. 749, 752 (Bankr. S.D. Ga. 1995) (quoting In re Kolstad, 928 F.2d 171, 174 (5th Cir. 1991), *reh'g denied,* 936 F.2d 571 (5th Cir. 1991), *cert. denied,* 502 U.S. 958 (1991)).  Had it known of the adversary complaint against it, the Defendant would have had the option to turn over the allegedly preferential transfer and become a creditor of the estate, with a say in its administration.  While the Defendant would not necessarily have done this, that decision, and the others noted above, rested only with the Defendant and should not have been denied them by the Debtors' actions.

4.    The Debtors' Attempt to Amend the Complaint After its Dismissal by the Court Renders the Amendment Futile

As noted above, the statute of limitations to bring preference actions began to run upon the Debtors' respective petition dates (October 8 or 14, 2005) and expired, at the latest, on October 13, 2007, over three years ago.  In the Dismissal Order, the Court dismissed the case initiated by the filing of the Original Complaint.  Although the Court stated that such dismissal was "without prejudice", the Defendant believes that a dismissal at this stage can only be *with prejudice* on account of the expired statute of limitations and therefore bars and renders futile the Debtors' request to file the Amended Complaint.

For all for the reasons set forth in the Defendant's prior motion to dismiss and the dismissal motions filed by the other preference defendants, which are incorporated here, the Extension Orders were entered in violation of Federal Rule of Civil Procedure 4(m) and the Defendant's due process and other rights, and the Debtors may not unseal and serve preference complaints against them years after the limitations period expires.

Moreover, this Court has already determined that anyone, like the Defendant, who did not receive notice of Delphi's Extension Motions, may now challenge *de novo* the entry of the Extension Orders. *See* July 22, 2010 Tr. at 103, 119 ("[I]f someone really didn't get notice of the extension motions, then it would seem to me they should be able to argue to me as if the motions were being made right now . . . .").

Courts have consistently recognized that the Rule 4(m) requirement that a case be dismissed (and then refiled) must be followed even where, as here, the passage of time will result in the re-filed complaint being barred by the statute of limitations. *Burks v. Griffith*, 100 F.R.D. 491, 493 (N.D.N.Y. 1984); Wright & Miller, *Federal Practice & Procedure*, § 1137, p. 386-87 (3d ed. 2002) ("The dismissal-without-prejudice provision allows a plaintiff to refile the complaint as if it never had been filed, but it does not provide relief from defenses based on the passage of time, such as the statute of limitations.").

A statute of limitations, such as the two- year limitations period found in Section 546(a), is a statute of repose "enacted upon the presumption, that one having a well-founded claim will not delay enforcing it beyond a reasonable time, if he has the power to sue." *In re Cornwall*, 9 Blatchf. 114, 6 F. Cas. 586, 591 (C.C.D. Conn. Sept. Term 1871). "Statutes of repose are intended to give plaintiffs notice of the time within which they may prosecute legal claims and to alert potential defendants of the time beyond which their exposure to liability ceases." *Diversified Hospitality Group, Inc. v. Carson Pirie Scott & Co.*, No 90 CIV 2957 (WK), 1991 WL 35953, at *5 (S.D.N.Y. Mar. 8, 1991).

Accordingly, the Defendant submits that Delphi's claims, once dismissed were barred by the statute of limitations from amendment. This fact, standing alone, does not warrant the granting of the Motion to Amend. Courts have repeatedly recognized that "[t]he fact

that plaintiff's claims may be time-barred does not require us to exercise our discretion in favor of plaintiff." *Eastern Refractories*, 187 F.R.D. at 506; *McKibben v. Credit Lyonnais*, 1999 WL 604883, at *4 (S.D.N.Y. Aug. 10, 1999) (denial of a further extension "is still proper if it occurs after the expiration of the applicable statute of limitations period, and its effect is to bar the plaintiff's claims"). As the Supreme Court explained: "[E]ven if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and the right to be free from stale claims in time comes to prevail over the right to prosecute them." *Order of R. Telegraphers*, 321 U.S. at 349.   Federal courts of appeals have, in fact, concluded that trial courts may revoke a previously granted Rule 4(m) extension if the court later determines that the extension was inappropriate (particularly where, as here, the defendant was not given notice or an opportunity to be heard in the first instance):

> [Rule 4(m)] does not address the authority of a district court that has granted an extension to revoke it if it subsequently determines that good cause had not been shown. We discern no reason why a district court should not be able to do so, especially were (as here) the party to be served was initially not given notice of the motions to extend or given a formal opportunity to respond to them. . . . If a district court concludes that good cause had not been shown, it is within its discretion to vacate its prior extension of time for effecting service that was based upon that erroneous foundation.

*McCrae v. KLLM Inc.*, 89 Fed. Appx. 361, 363 (3d Cir. 2004).

The statute of limitations issue Delphi now faces is entirely the result of Delphi's own making. After the plan funding fell through in early 2008, the Debtors could no longer argue that they would not have to proceed with some or all of the preference actions. Indeed, as the facts changed, the original alleged motivation for the extension, a 100% plan, completely fell away.  By that time, the Debtors also knew (or should have known) that it had been three years since the preference payments had purportedly been made, that the

statute of limitations period had expired. The Debtors, nevertheless, made a conscious decision to seek an indefinite extension of the time to serve the complaints and to keep the complaints a secret (in order to continue to obtain a tactical advantage in their negotiations with various defendants). *See supra*. The Debtors must now live with the consequences of their actions. Simply put, the Debtors' decision to conceal the avoidance actions in order to secure a better negotiating position (a decision that worked) should not have also been cause, good or otherwise, to allow the Debtors to benefit, again at the expense of the defendants, by allowing them to avoid service of the Original Complaint and indefinitely extend the statute of limitations.

**B.    The Amended Complaint Still Fails to Meet the Requirements of Fed. R. Civ. P. 8 and the *Twombly/Iqbal* Standard**

As determined by the Court in the Dismissal Order, the Original Complaints did not satisfy the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure, as set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ("*Twombly*"), and *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009) ("*Iqbal*").

In *Twombly*, the Supreme Court established the standard by which federal courts are to determine motions to dismiss.  Under *Twombly*, to survive a motion to dismiss, the complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Id.* at 570.  A pleading that only offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not suffice. *Id.* at 555.  The Supreme Court recently elaborated on this matter in *Iqbal*:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of

> action supported by mere conclusory statements, do not
> suffice. Rule 8 marks a notable and generous departure from
> the hyper-technical, code- pleading regime of a prior era, but it
> does not unlock the doors of discovery for a plaintiff armed
> with nothing more than conclusions. Second, only a complaint
> that states a plausible claim for relief survives a motion to
> dismiss. Determining whether a complaint states a plausible
> claim for relief will, as the Court of Appeals observed, be a
> context-specific task that requires the reviewing court to draw
> on its judicial experience and common sense. But where the
> well-pleaded facts do not permit the court to infer more than
> the mere possibility of misconduct, the complaint has alleged—
> but it has not "show[n]"—"that the pleader is entitled to relief."
> Fed. Rule Civ. Proc. 8(a)(2).
>
> In keeping with these principles a court considering a motion
> to dismiss can choose to begin by identifying pleadings that,
> because they are no more than conclusions, are not entitled to
> the assumption of truth. While legal conclusions can provide
> the framework of a complaint, they must be supported by
> factual allegations. When there are well-pleaded factual
> allegations, a court should assume their veracity and then
> determine whether they plausibly give rise to an entitlement to
> relief.

*Iqbal*, 129 S. Ct. 1937, 1949, 1950 (2009) (internal citations to *Twombly* and corresponding

quotation marks omitted).

   In *Angell v. Haven (In re Careamerica)*, 409 B.R. 346 (Bankr. E.D.N.C. 2009), the

bankruptcy court applied the Supreme Court's holding in *Twombly* to a preference action.

The defendant filed a motion to dismiss the trustee's claims to avoid alleged preferential

and fraudulent transfers. The bankruptcy court concluded that, based on the Supreme

Court's holdings in *Twombly*, the trustee's complaint must plead sufficient factual

allegations to establish that a preference cause of action is plausible.  *Id*. at 350.  The

bankruptcy court then analyzed each element of the preference statute to determine if

sufficient factual allegations were pleaded.

The bankruptcy court held that the trustee's complaint did not contain sufficient factual allegations to show it was plausible that a transfer of an interest of the debtor in property had occurred because the complaint failed to identify which of the debtors made the alleged transfers.  *Id.*  Moreover, the bankruptcy court held that the trustee's complaint did not contain sufficient factual allegations to show it was plausible that the alleged transfers were made on account of an antecedent debt.  The bankruptcy court explained that "the trustee must assert the nature and amount of the antecedent debt in order to allege a plausible claim for relief."  *Id.* at 351.  The trustee's complaint merely recited the statutory element that the transfer was made "for, or on account of, an antecedent debt owed by the Debtors to the Defendant before the transfers were made."  *Id.*  The complaint lacked any facts showing the existence of an antecedent debt.  The bankruptcy court explained that in order to satisfy the pleading requirements under *Twombly* "the trustee must allege facts regarding the nature and amount of the antecedent debt which, if true, would render plausible the assertion that a transfer was made for or on account of such antecedent debt." *Id.*

Finding that the Original Complaint failed to meet the standards set forth above, the Court, in the Dismissal Order required that the complaints attached by the Debtors to any Motion to Amend should, "for each alleged transfer shall set forth, at a minimum, the transferor, the transferee, any known subsequent transferee against whom relief is sought, the antecedent debt and which Reorganized Debtor is the plaintiff."

The Amended Complaint still fails under the *Twombly/Iqbal* standard.  Specifically, it offers only "a formulaic recitation of the elements of a cause of action" as regards the insolvency of the Plaintiff at the time of the alleged transfers.  The sole allegation in the

Proposed Amended Complaint with respect to insolvency is at Paragraph 23 and states only that "Plaintiff is presumed to have been, and was in fact, insolvent at the time the Transfers were made."  To prove this element of Section 547, the Debtors merely point to the fact that the Debtors filed petitions for relief under Chapter 11.  However, this is insufficient as a Chapter 11 filing is not automatically proof of insolvency.  Instead, in the case of Delphi Automotive Systems, LLC ("DAS") (the now-identified transferor Plaintiff) the Amended and Restated Schedules for that entity show total assets of $8,133,427,809.00 against total liabilities of $5,526,447,015.00.  In other words, the Plaintiff in this case, at the date of filing possessed approximately $2.6 billion in equity.  Consistent with these facts, as late as February 2008, more than two years into its bankruptcy, Delphi was still proposing a 100 percent plan to its creditors.

Although Section 547(f) provides a presumption of insolvency, the Defendant argues that under the *Twombly/Iqbal* standard, the plaintiff in a preference action is still required to set forth the facts upon which its legal conclusions are based.  At this point the Defendant is not required to prove solvency – although the schedules noted above go a long way to contradict the Debtors' mere assertion of insolvency in the Amended Complaint.

Further, the Plaintiff fails to make any allegation whatsoever that any of its purported transfers were made based on a "debt owed **by the debtor**" - by DAS, not Delphi or the other Reorganized Debtors - as required to satisfy Section 547(b)(2) of the Bankruptcy Code.  The Plaintiff instead merely alleges that the debt was "owed to Defendants," presumably because DAS does not know which of the Reorganized Debtors actually owed the debt.  Under the plain language of Section 547(b)(2) of the Bankruptcy Code, DAS cannot maintain an avoidance action based on such third-party debts.  In fact, the evidence

of the antecedent debt provided by the Debtors in the Amended Complaint is merely reference to what is identified as a "Purchase Order/Invoice Number". The document in question have not been produced. This is the direct equivalent of suing on a written contract, but failing to attach the contract to the complaint. Rule 8 and *Twombly/Iqbal* simply do not allow for such minimalist pleadings.

DAS also fails to plead facts establishing that the alleged debts in question were actually "antecedent." Exhibit 1 to the Proposed Amended Complaint does not state when any alleged debt arose. There is no basis, other than DAS's conclusory assertions, for DAS to claim the existence of any "antecedent" debt as required to state a claim under Section 547(b)(2) of the Bankruptcy Code.

Rule 8 requires proper pleading as a threshold issue for initiation of a case. The Debtors have again failed to meet this standard and therefore the Amended Complaint should not be allowed. In the Motion to Amend, the Debtors argue that they should not be penalized because the Supreme Court "enhanced" the Rule 8 pleading standards after the Original Complaint was filed. As support for this position, the Debtors list certain cases in which leave to amend complaints was freely granted where the original complaint was filed prior to *Iqbal*. Specifically, the Debtors reference *Elsady v. Rapid Global Business Solutions, Inc.*, 2010 U.S. Dist. LEXIS 17276, *11 (E.D. Mich., Feb. 26, 2010) and *Kasten v. Ford Motor Co.*, 2009 U.S. Dist. LEXIS 101348, *15 (E.D. Mich., Oct. 30, 2009). However, in each of these instances the original pleadings were filed just days before the Supreme Court's decision in *Iqbal*. In the instant case, the Original Complaint was filed two years prior to *Iqbal* but was not served on the Defendant until after that case was published. The Debtors could have motioned the Court to amend, prior to service, what were clearly defective complaints.

However they did not - perhaps the Debtors feared that leave to amend would not be granted – and perhaps they would have been right.  Whatever the reason, however, the Debtors served defective complaints on this and the other Defendants.  They should not now be able to use the fact that the Original Complaints are now over three years old as justification for failing to comply with "modern" pleading standards.

Therefore, because the Amended Complaint still does not meet the requirements of Rule 8, and state a claim for relief under 11 U.S.C. § 547, the Court should not allow it to be filed in accordance with the Motion to Amend.

### C.    The Amended Complaint is Barred by Judicial Estoppel

The doctrine of judicial estoppel "prevents a party from asserting a factual position in a legal proceeding that is contrary to a position previously taken by [that party] in a prior legal proceeding."  *In re Venture Mortgage Fund, L.P.*, 245 B.R. 460, 471 (Bankr. S.D.N.Y. 2000), *aff'd*, 282 F.3d 185 (2d Cir. 2002).  Judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase."  *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001).  Courts have uniformly recognized that the purpose of judicial estoppel is to "protect the integrity of the judicial process ... by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *Id.* at 749-750; *see also Rosenshein v. Kleban*, 918 F. Supp. 98, 104 (S.D.N.Y. 1996) ("Judicial estoppel is invoked ... to prevent the party from playing fast and loose with the courts, and to protect the essential integrity of the judicial process").  "The doctrine does not depend upon prejudice to the party invoking it."  *Galerie Des Monnaies of Geneva, Ltd. v. Deutsche Bank, A.G., New York Branch (In re Galerie Des Monnaies of Geneva, Ltd)*, 55 B.R. 253, 260 (Bankr. S.D.N.Y. 1986).

The Supreme Court in *New Hampshire* observed that "the circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle." *New Hampshire*, 532 U.S. at 750 (internal citations omitted).  The Second Circuit has identified two factors that must be satisfied to invoke the doctrine of judicial estoppel: (i) the party against whom estoppel is asserted took an inconsistent position in a prior proceeding, and (ii) the first tribunal adopted the inconsistent position in some manner, such as by rendering a favorable judgment.  *In re Venture Mortgage Fund, L.P.*, 245 B.R. at 472.

As discussed in detail above, the Debtors repeatedly represented to the Court (both orally and in writing) that, with respect to avoidance actions that they intended to preserve and pursue, they only intended to pursue claims against the Laneko Defendants.  The Debtors took this position in Exhibit 7.24 to the Confirmed Plan, confirmed this position in their Second Extension Motion and reaffirmed this position in their Third Extension Motion.  The Court, in turn, accepted Debtors' position that it intended to pursue only four avoidance claims when it entered orders granting the relief sought by the Debtors in their motions.

By bringing the Complaint and the Amended Complaint against the Defendant (and the other avoidance defendants), Delphi now takes the exact opposite position than that: (i) advanced in the prior motions; and (ii) adopted by the Court.  The Defendant respectfully submits, pursuant to doctrine of judicial estoppel, that the Court should not sanction the Debtors' attempt to "play fast and loose with the court" and allow Delphi to pursue over one hundred avoidance claims after the Debtors previously, and consistently, stated they intended to pursue no more than four claims.  Had the Court known, when ruling on the

motions, that the Debtors would actually file 177 (rather than 4) avoidance actions, the

Defendant is confident the Court would not have permitted the Debtors to file their actions

under seal and repeatedly extend the statute of limitations by over two years, all without

providing any notice to the Defendant (and the other defendants).  Indeed, when ruling on

the motions, the Court ensured that the Laneko Defendants – the 4 preserved defendants –

received notice of the Debtors' motions.

Accordingly, the Defendant requests that the Court exercise its discretion and apply the

doctrine of judicial estoppel to prevent the Debtors from pursing their claims against the

Defendant, which the Debtors had repeatedly indicated they would not pursue.

### D.    The Amended Complaint is Barred by Res Judicata

The Debtors lack standing to pursue the causes of action set forth in the Amended

Complaint because they did not retain those actions in the Modified Plan, other than their

claims against the Laneko Defendants, and did not have the authority under the Modified

Plan to amend Exhibit 7.19/7.24 to preserve causes of action not listed in Exhibit

7.19/7.24.  In addition, the Debtors' claims should be barred by *res judicata* because the

Debtors did not adequately describe the preserved causes of action in the Modified Plan so

as to preserve the avoidance actions for the benefit of the estate.

It is black-letter law that "[t]he confirmation of a bankruptcy plan of reorganization

must be accorded res judicata effect ... [and] prevents the subsequent assertion of any claim

not preserved in the plan as required by § 1123(b)(3)."  *In re I. Appel Corp.*, 300 B.R. 564,

568 (Bankr. S.D.N.Y. 2003).  "[T]he general rule is that, absent an express plan provision to

the contrary, the debtor loses the right to bring bankruptcy causes of action, such as to

recover a preference or for turnover, after the confirmed plan's effective date." Hon.

William L. Norton, Jr. & William L. Norton III, Norton Bankruptcy Law and Practice §109:16

(3d. ed. 2009) (citing *Int'l Asset Recovery Corp. v. Thomsom McKinnon Sec. Inc.*, 335 B.R. 520,

525 (S.D.N.Y. 2005)).

As discussed above, on December 27, 2007, the Debtors listed the causes of action

they intended to preserve in Exhibit 7.19/7.24 to the Confirmed Plan.  Article 7.24 of the

Confirmed Plan and Article 7.19 Modified Plan [Docket No. 18707] state that "Causes of

Action against Persons arising under section 544, 545, 547, 548, or 553 of the Bankruptcy

Code or similar state laws shall not be retained by the reorganized Debtors unless

specifically listed on Exhibit 7.24 [7.19 in the Modified Plan]." Upon entry of the

Confirmation Order, the Debtors lost the ability to amend Exhibit 7.19/7.24.  Accordingly,

the Debtors are barred by application of *res judicata* from pursuing any causes of action

other than those specifically preserved in Exhibit 7.19/7.24.

Additionally, even if the Court finds that the Debtors had the right to amend Schedule

7.19/7.24, the Debtors have not adequately described the avoidance actions in order to

preserve them under the Modified Plan.  Exhibit 7.19/7.24 provided no information on the

avoidance causes of action to be retained -- it did not disclose the identity of the defendants

or, more importantly, the value of the claims.  Indeed, because all of the complaints were

filed under seal, neither the creditors nor the potential defendants could review the

preserved causes of action to glean this information.  Moreover, neither the Amended

Disclosure Statement [Docket No. 17071] nor the Modified Plan included any discussion of

the Debtors' reversal of their position with respect to pursuing claims only against the

Laneko Defendants.  In short, the Debtors only provided a blanket reservation, which is

insufficient to avoid the *res judicata* effect of a confirmed plan.  *Browning v. Levy,* 283 F.3d

761, 764 (6th Cir. 2002).  The Sixth Circuit explained:

> NW's blanket reservation was of little value to the bankruptcy
> court and the other parties to the bankruptcy proceeding
> because it did not enable the value of NW's claims to be taken
> into account in the disposition of the debtor's estate.
> Significantly, it neither names SSD nor states the factual basis
> for the reserved claims.  We therefore conclude that NW's
> blanket reservation does not defeat the application of res
> judicata to its claims against SSD.

*Id.* at 775.  Accordingly, the Debtors should not be permitted to file the Amended Complaint.

### E.    The Amended Complaint is Barred by Laches

Delphi's Amended Complaint should also be barred by laches.  A defendant may prevail on a laches defense if it establishes: (1) that it lacked knowledge that the claim might be asserted against it; (2) that the plaintiff delayed asserting the claim despite an opportunity to do so; and (3) that it would be prejudiced if the claim were now allowed to go forward.  *In re Gucci*, 197 Fed. Appx. 58, 60 (2d Cir. 2006); *Rapf v. Suffolk Cty*, 755 F.2d 282, 292 (2d Cir. 1985).

First, as was described above, the Defendant had absolutely no knowledge that a claim was asserted against it.  Second, the Debtors had numerous opportunities to assert their claim against the Defendant in the open, particularly after the Debtors knew that their creditors would no longer be paid 100 percent and that certain avoidance actions would be prosecuted (there was no justification for keeping the complaints a secret after this date).  Instead, the Debtors chose to conceal the claim for over two years after the statute of limitations expired and four years after the purported preferential transfers were made.

Finally, as also detailed above, the Defendant would be severely prejudiced if the action is allowed to go forward.  Despite the Debtors' soothing noises to the contrary, the

only party to benefit from Delphi's secrecy is Delphi. Accordingly, the filing of the Amended Complaint is barred by laches.

**F.     Even if the Motion to Amend is Granted, the Defendant Possesses Valid Defenses to the Allegations Set Forth Therein**

Although this is not the time and forum to discuss them in detail, the Defendant simply notes that should the Amended Complaint be allowed, the Defendant possesses defenses including but not limited to those set forth in the Defendant's Answer to the Original Complaint that rebut the claims stated in the Amended Complaint and which will, should this matter proceed, ensure that the Defendant is the prevailing party in this litigation.

**G.     The Defendant Incorporates All Applicable Arguments Raised by Other Defendants in their Objections to the Motion to Amend**

Numerous other objections to the Motion to Amend are being filed by the defendants in the other adversary proceedings who are similarly-situated to this Defendant. Because the facts surrounding those actions are, in many respects, similar to those found here, the Defendant incorporates all applicable arguments raised by the other defendants in their objections to the Motion to Amend.

### IV.    CONCLUSION

This Court made clear on the record during the hearing on the "First Wave Motions" that it would not tolerate Delphi presenting a proposed amended complaint that failed to meet its minimal pleading requirements. Specifically, responding to the Affinia Defendants' counsel's request that Delphi should be held to a higher standard of pleading specificity given Delphi's five years to prepare for this adversary proceeding, this Court stated:

[I]t's a motion for leave to amend the complaint on unusual circumstances. **It's really their risk if I turn them down again, right?** [I] think that the risk of being turned down on the basis [that] the complaint still isn't good enough [after amendment] is a serious enough **- the consequences of that are serious enough** so I assume that the plaintiffs are going to be pretty careful.

7/22/10 Tr., at p. 213, excepts (emphasis supplied).

Despite this Court's admonition and despite having an unprecedented amount of time to acquire the data necessary to make out its prima facie case, the Amended Complaint still fails even to meet the minimum pleading requirements identified in the Dismissal Order.  Delphi has abused this process for too long and cost the Defendant and this Court far too much in both time and resources.  The concealment of the Original Complaint from the Defendant and the delay in service for over two years has unduly prejudiced the Defendant and violated its basic legal rights, including under the Due Process Clause. Delphi misled the Court in its motions and the defendants in their business relationships. The Original Complaint was not served on the Defendant until well after the expiration of the statute of limitations and four years after the alleged preferential transfers were made. Delphi is attempting impermissible use of the procedural rules to double the Congressionally mandated 2-year statute of limitations.  Given all of this past delay, bad faith, prejudice and the futility of filing the Amended Complaint, the Debtor's Motion to Amend should be denied in full and this case finally and fully dismissed with prejudice.

Respectfully submitted,

LAMBERT, LESER, ISACKSON,
COOK & GIUNTA, P.C.

Dated: November 23, 2010                   By:            /s/ Rozanne M. Giunta
_____
Rozanne M. Giunta (MI Bar No. P29969)
Susan M. Cook (MI Bar No. P31514)
Adam D. Bruski (MI Bar No. P70030)
Attorneys for the Defendant
916 Washington Ave, Suite 309
PO Box 835
Bay City, MI  48707
989-893-3518
rgiunta@lamertleser.com