David H. Stein, Esquir  (DS 8514)
Deirdre Woulfe Pacheco, Esquire (DP 6171)
Letitia Accarrino, Esquire (LA 8791)
WILENTZ, GOLDMAN & SPITZER, P.A.
90 Woodbridge Center Drive
Suite 900, Box 10
Woodbridge, New Jersey 07095-0958
Telephone: (732) 636-8000
            - and -
110 William Street, 26th Floor
New York, New York 10038-3927
Telephone: (212) 267-3091
*Attorneys for A-1 Specialized Services & Supplies, Inc.*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------X

| | |
|---|---|
| IN RE: | Chapter 11 |
| DELPHI CORPORATION, *et al.*, | Case No. 05-44481 (RDD) |
| Reorganized Debtors | (Jointly Administered) |
| | Adv. Pro. Nos. 07-02084 |
| DELPHI AUTOMOTIVE SYSTEMS, LLC, | and 02096 (RDD) |
| Plaintiff, | |
| -against- | **Hearing Date and Time:** |
| | **February 17, 2011 at 10:00 a.m.** |
| A-1 SPECIALIZED SERVICES & SUPPLIES, INC., | **Reply Deadline:** |
| Defendant. | **January 28, 2011** |

--------------------------------------------------------X

## RESPONSE AND OBJECTION (INCLUDING JOINDER OF MOTION BY ATS AUTOMATION TOOLING SYSTEMS INC.) BY A-1 SPECIALIZED SERVICES & SUPPLIES, INC. TO MOTION BY REORGANIZED DEBTORS FOR LEAVE TO FILE AMENDED COMPLAINT

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF FACTS ........................................................................................................... 2

ARGUMENT ............................................................................................................................... 5

POINT I ........................................................................................................................................ 5

AMENDMENT OF THE COMPLAINT SHOULD NOT BE
PERMITTED SINCE IT WOULD BE FUTILE ............................................................. 5

A.   The Avoidance of Allegedly Preferential Transfers From
A-1 is Barred By 11 U.S.C. § 546 (e) ....................................................... 7

B.   Avoidance Of Several of the Allegedly Preferential
Transfers From A-1 is Barred By Delphi's Assumption of
the Prepetition PGM Supply Agreement ................................................. 11

C.   The Amended Complaint Does Not Adequately Allege a
Preference Claim Against A-1 ................................................................ 13

1.   The Proposed Amended Complaint Incorrectly Identifies
the Transferor ............................................................................. 13

2.   The Proposed Amended Complaint Does Not Adequately
Identify the Antecedent Debt ..................................................... 15

3.   The Proposed Amended Complaint Does Not Adequately
Allege Insolvency; at a Minimum the Burden to
Demonstrate Insolvency Should Be On Plaintiff ......................... 20

POINT II ..................................................................................................................................... 23

JUSTICE DEMANDS THAT AMENDMENT OF THE COMPLAINTS
SHOULD NOT BE PERMITTED ................................................................................. 23

A.   Bad Faith Concealment During Settlement Negotiations ......................... 24

B.   Undue Delay, Facts Within Reach of Plaintiff, No Excuse ...................... 27

C.   The Improper Use of Rule 4(m) by Plaintiff and the Lack
of Procedural Due Process Also Mandate Denial of the
Motion to Amend ................................................................................... 30

#3337935.03 (154642.002)

## TABLE OF CONTENTS (cont'd)

**PAGE**

POINT III ................................................................................................................................... 31

    PLAINTIFF IS EQUITABLY ESTOPPED FROM BRINGING
    PREFERENCE ACTIONS AGAINST A-1 THAT WERE NOT
    DISCLOSED AT THE TIME THE PARTIES' SETTLEMENT
    AGREEMENT WAS EXECUTED ............................................................................... 31

POINT IV ................................................................................................................................... 32

    PLAINTIFF'S CLAIMS ARE BARRED UNDER 11 U.S.C. §502(d)
    BECAUSE PLAINTIFF EXPRESSLY AGREED TO ALLOW A-1'S
    CLAIM BY STIPULATION ......................................................................................... 32

POINT V ..................................................................................................................................... 35

    INCORPORATION OF OTHER DEFENDANTS' BRIEFS ........................................... 35

## TABLE OF AUTHORITIES

**PAGE**

## CASES

Acito v. IMCERA Group, Inc.,
  47 F.3d 47 (2d Cir. N.Y. 1995) .............................................................................................. 6

Akers v. Koubourlis,
  869 F.2d 1319 (9th Cir. 1989) ............................................................................................. 22

Alfa, S.A.B. de C.V. v. Enron Creditors Recovery Corp.
  (In re Enron Creditors Recovery Corp.),
  422 B.R. 423 (S.D.N.Y. 2009) ........................................................................................ 7, 11

Anderson, Anderson v. Air West, Inc.,
  542 F.2d 522 (9th Cir. 1976) ......................................................................................... 27, 28

Angell v. BER Care, Inc. (In re Careamerica, Inc.),
  409 B.R. 737 (Bankr. E.D.N.C. 2009) ................................................................................ 18

Angell v. Rose Hill Enters., LLC (In re Careamerica, Inc.),
  2010 Bankr. LEXIS 263 (Bankr. E.D.N.C. January 14, 2010) ............................................. 19

Ashcroft v. Iqbal,
  129 S.Ct. 1937 (2009) .................................................................................................. passim

BCP Liquidating LLC v. Bridgeline Gas Mktg., LLC
  (In re Borden Chems. & Plastics Operating Ltd. P'ship),
  336 B.R. 214 (Bankr. D. Del. 2006) ...................................................................................... 8

Bell Atl. Corp. v. Twombly,
  550 U.S. 544 (2007) ..................................................................................................... passim

Bevill, Bresler & Schulman Asset Mgmt. Corp. v. Spencer S&L Ass'n,
  878 F.2d 742 (3d Cir. N.J. 1989) ........................................................................................ 10

Caliolo v. Azdel (In re Cambridge Indus. Holdings, Inc.),
  2003 WL 21697190 (Bankr. D.Del. July 18, 2003) ........................................................ 33, 34

Caliolo v. Saginaw Bay Plastics, Inc. (In re Cambridge Indus. Holdings, Inc.),
  2006 WL 516764 (D.Del. Mar. 2, 2006) .............................................................................. 34

Caliolo v. TKA Fabco Corp. (In re Cambridge Indus. Holdings),
  2003 WL 1818177 (Bankr. D.Del Apr. 2, 2003) ............................................................. 33, 34

#3337935.03 (154642.002)

## TABLE OF AUTHORITIES (cont'd)

**PAGE**

Caterpillar Inc. v. Estate of Lacefield-Cole,
   520 F. Supp.2d 989 (N.D. Ill. 2007)..........................................................................6

Collyard v. Washington Capitals,
   477 F. Supp. 1247 (D. Minn. 1979)..........................................................................6

Eastern Air Lines, Inc. v. Insurance Co. (In re Ionosphere Clubs, Inc.),
   85 F.3d 992 (2d Cir. N.Y. 1996) ...........................................................................31

Enron Corp. v. Bear, Stearns Int'l Ltd. (In re Enron Corp.),
   323 B.R. 857 (Bankr. S.D.N.Y. 2005).................................................................7, 8

Farhang v. Indian Inst. of Tech.,
   2010 U.S. Dist. LEXIS 53975 (N.D. Cal. June 1, 2010)......................................28

Feltman v. Keybank, N.A. (In re Levitt & Sons, LLC),
   2010 Bankr. LEXIS 1284
     (Bankr. S.D. Fla. April 16, 2010)......................................................................19

Fokkena v. Winston, Reuber, Byrne, P.C.,
   189 B.R. 744 (Bankr. N.D. Iowa 1995).................................................................22

Foman v. Davis,
   371 U.S. 178 (1962) ...........................................................................................5, 23

Halpert v. Wertheim & Co.,
   81 F.R.D. 734 (S.D.N.Y. 1979)...............................................................................6

Hayes v. New England Millwork Distribs., Inc.,
   602 F.2d 15 (1st Cir. Mass. 1979) .........................................................................27

Health-Chem Corp. v. Baker,
   915 F.2d 805 (2d Cir. N.Y. 1990) ...........................................................................6

Heckler v. Community Health Servs.,
   467 U.S. 51, 81 L.Ed. 2d 42 (1984).......................................................................31

Homeplace of America, Inc. v. Salton, Inc. (In re Waccamaw's Homeplace),
   325 B.R. 524 (Bankr. D. Del. May 31, 2005) .......................................................34

Hutson v. E.I. du Pont de Nemours & Co. (In re Nat'l Gas Distribs., LLC),
   556 F.3d 247 (4th Cir. N.C. 2009) ..........................................................................9

IMF Sales Associates, Inc. v. Racal-Vadic Information Systems, Inc.,
   94 B.R. 223 (Bankr. D. Mass 1988) ......................................................................22

## TABLE OF AUTHORITIES (cont'd)

**PAGE**

In re Borden Chemicals,
   336 Bankr. 214 .................................................................................................8

In re Nat'l Gas Distribs., Inc.,
   556 F.3d at 256 ...............................................................................................10

In re Olympic Natural Gas Co.,
   294 F.3d at 741 (5th Cir. 2002)...................................................................9, 10

In re Roblin Industries, Inc.,
   78 F.3d 30 (2d Cir. 1996)...............................................................................21

In re Superior Toy & Mfg. Co.,
   78 F.3d 1169 (7th Cir. 1996)..........................................................................11

Iridium IP LLC v. Motorola, Inc. (In re Iridium Operating LLC),
   373 B.R. 283 (Bankr. S.D.N.Y. 2007)......................................................22, 23

Kaiser Steel Corp. v. Pearl Brewing Cor.
   (In re Kaiser Steel Corp.),
   952 F.2d 1230 (10th Cir. Col. 1991) ..............................................................10

Kimmelman v. Port Auth. of N.Y. and N.J.
   (In re Kiwi Int'l Air Lines, Inc.),
   344 F.3d 311 (3rd Cir. 2003) ..........................................................................11

Kosakow v. New Rochelle Radiology Assocs., P.C.,
   274 F.3d 706 (2d Cir. N.Y. 2001) ...................................................................31

LaRoche Indus. v. Gen Am. Transp. Corp.,
   284 B.R. 406 (Bankr. D.Del. 2002).................................................................33

Las Vegas Ice & Cold Storage Co. v. Far West Bank,
   893 F.2d 1182 (10th Cir. 1990).......................................................................29

Leadsinger, Inc. v. BMG Music Publ'g,
   512 F.3d 522 (9th Cir. Cal. 2008) .....................................................................5

Marson v. Jones & Laughlin Steel Corp.,
   87 F.R.D. 151 (E.D. Wis. 1980).......................................................................24

Mervyn's LLC v. Lubert-Adler Group IV, LLC (In re Mervyn's Holdings, LLC),
   426 B.R. 96 (Bankr. D. Del. 2010)..................................................................20

## TABLE OF AUTHORITIES (cont'd)

Official Committee of Unsecred Creditors of
  Hydrogen, LLC v. Blomen (In re Hydrogen, LLC),
  431 B.R. 337 (Bankr. S.D.N.Y. 2010)............................................................................. 17, 18

Pan American World Airways, Inc. v. Abrams,
  764 F. Supp. 864 (S.D.N.Y. 1991) ..........................................................................................6

Redding v. Essex Crane Rental Corp. of Alabama,
  752 F.2d 1077 (5th Cir. 1985)................................................................................................29

Reisner v. General Motors Corp.,
  511 F. Supp. 1167 (S.D.N.Y. 1981) .......................................................................................24

Rhythms Netconnections Inc. v. Cisco Systems, Inc. (In re Rhythms Netconnections Inc),
  300 B.R. 404 (Bankr. S.D.N.Y. 2003)...............................................................................33, 34

Richardson v. United White Shipping Co.,
  38 F.R.D. 494 (N.D. Cal. 1965) .............................................................................................27

Ruffolo v. Oppenheimer & Co.,
  987 F.2d 129 (2d Cir. N.Y. 1993) .......................................................................................5, 6

Sands v. McCormick,
  502 F.3d 263 (3d Cir. Pa. 2007).............................................................................................17

Shannon v. GE,
  186 F.3d 186 (2d Cir. 1999)....................................................................................................27

Sierra Invs., LLC v. SHC, Inc. (In re SHC, Inc.),
  329 B.R. 438 (Bankr. D. Del. 2005).......................................................................................19

Smith v. Commanding Officer, Air Force Accounting & Finance Center,
  555 F.2d 234 (9th Cir. Cal. 1977) ............................................................................................6

State Teachers Retirement Bd. v. Fluor Corp.,
  654 F.2d 843 (2d Cir. N.Y. 1981) ..........................................................................................23

Sunquest Info. Sys., Inc. v. Dean Witter Reynolds,
  40 F. Supp.2d 644 (W.D.Pa. 1999) ........................................................................................19

Tyco Laboratories, Inc. v. Cutler-Hammer, Inc.,
  490 F. Supp. 1 (S.D.N.Y. 1980)..............................................................................................23

United States v. New Castle County,
  116 F.R.D. 19 (D. Del. 1987)..................................................................................................24

## TABLE OF AUTHORITIES (cont'd)

**PAGE**

*Veazey v. Young's Yacht Sale & Service, Inc.*,
    644 F.2d 475 (5th Cir. 1981).............................................................................................28

*VFB LLC v. Campbell Soup Co.*,
    482 F.3d 624 (3rd Cir. Del. 2007)...............................................................................22, 23

*Williams v. Morgan Stanley Capital Group, (In re Olympic Natural Gas Co.)*,
    294 F.3d 737 (5th Cir. Tex. 2002)......................................................................................8

*Williams v. Morgan Stanley Capital Group,*
    *(In re Olympic Natural Gas Co.)*,
    258 B.R. 161 (Bankr. S.D. Tex. 2001),
    *aff'd*, 294 F.3d 737 (5th Cir. 2002) ...................................................................................9

*Zapata v. New York,*
    502 F.3d 192 (2d Cir. 2007)...............................................................................................28

*Zucker v. Freeman (In re NetBank, Inc.),*
    424 B.R. 568 (M.D. Fla. 2010) .........................................................................................18

## STATUTES

11 U.S.C. § 101 (25) ...............................................................................................................9

11 U.S.C. § 101 (51A) ...........................................................................................................10

11 U.S.C. § 502(d).................................................................................................................32

11 U.S.C. § 546 (e) .................................................................................................................7

11 U.S.C. § 546(c) ..................................................................................................................3

11 U.S.C. § 546(e) ..................................................................................................... 1, 7, 8, 11

11 U.S.C. § 547 .......................................................................................................................4

11 U.S.C. § 547(b)(3) ............................................................................................................20

11 U.S.C. §502(d)..................................................................................................................32

## RULES

Fed. R. Bank. P. 9024 ...........................................................................................................30

Fed. R. Civ. P. 15(a)(1)(A)....................................................................................................27

## TABLE OF AUTHORITIES (cont'd)

**PAGE**

Fed. R. Civ. P. 41(b) ............................................................................................... 27, 28

Fed. R. Civ. P. 60 ...................................................................................................... 30

Fed. R. Civ. P. 8 .......................................................................................................... 5

Rule 4(m) ................................................................................................................. 2, 30

Rule 7015 .................................................................................................................... 27

## OTHER AUTHORITIES

5 *Collier on Bankruptcy*
  § 556.03 [2] at 556-6 (15th ed. rev. 2001) ......................................................... 9, 10

H.R. Rep. No. 101-484,
  *reprinted in* 1990 U.S.C.C.A.N. 223 ...................................................................... 8

H.R. Rep. No. 97-420 (1982),
  *reprinted in* 1982 U.S.C.C.A.N. 583 .................................................................. 7, 8

In re Chemtura Corp.,
  Bench Decision on Confirmation at 34
  n.106 (Hon. Robert E. Gerber, J.) ........................................................................ 22

## LIST OF EXHIBITS

Exhibit 1     Joint Stipulation and Agreed Order Compromising and Allowing Proof of Claim
               Number 644 entered on October 9, 2007

Exhibit 2     The initially filed complaints regarding alleged preferential transfers to A-1, both
               dated September 26, 2007

Exhibit 3     July 22 Hearing Transcript (selected pages from transcript)

Exhibit 4     Proposed Amended Complaint with Exhibit 1

Exhibit 5     Selected data from NYXdata.com for September, 2010

Exhibit 6     Selected pages from In re Chemtura Corp., Bench Decision on Confirmation
               (Hon. Robert E. Gerber, J.)

Exhibit 7     First Wave Motions, dated May 14, 2010

#3337935.03 (154642.002)

Movant A-1 Specialized Services & Supplies, Inc. ("A-1" or the "Defendant"), by its undersigned attorneys, Wilentz, Goldman & Spitzer, P.A., hereby responds and objects to the motion (the "Motion") by the Reorganized Debtors for leave to file amended complaints (the "Proposed Amended Complaints") dated September 7, 2010 in these actions.   A-1 also hereby joins ATS Automation Tooling Systems Inc. in its motion and brief dated October 22, 2010 for relief from the fourth order extending time to serve the complaint (Docket No. 20699).

## PRELIMINARY STATEMENT

The Plaintiff, Delphi Automotive Systems, LLC ("DAS, LLC") should not be permitted to amend its originally filed complaints (the "Complaints") in A-1's case because it would be futile.   These actions are barred as a matter of law by 11 U.S.C. § 546(e) because the alleged preferential transfers enumerated in the Proposed Amended Complaints represent settlement payments to A-1, a forward contract merchant in the commodities platinum, palladium and rhodium ("PGM").   11 U.S.C. § 546(e) immunizes from avoidance settlement payments made by a forward contract merchant in the commodities trade.

Amendment is also futile as to several of the transfers addressed by the Proposed Amended Complaint (amounting to $855,920.00 of the total amount sought) because they took place pursuant to a supply agreement that was assumed by the Debtors in their plan.

Finally, amendment is futile because the Proposed Amended Complaint does not pass muster.   The Plaintiff has not correctly identified the transferor of the alleged transfers.   Nor has it correctly identified the antecedent debts for which the alleged preferential transfers were made.   Finally, it has not provided adequate proof of insolvency in the face of its own admission that DAS, LLC, the alleged transferor, was solvent as of the petition date.

Moreover, justice militates against amendment in this case instead of requiring it, where A-1 has been prejudiced by the Debtors' active concealment of the filing of the Complaints after entering into a settlement agreement with A-1 and before filing a stipulation of settlement with the bankruptcy court. Since the settlement agreements fixed A-1's claims against the estate at that point in time, it would be inequitable to permit amendment so that these previously concealed claims can proceed. Plaintiff's failure to alert A-1 that it intended to and, later, had in fact filed suit to recover prepetition transfers severely prejudiced the outcome of the settlement discussions. To permit Plaintiff to amend in the face of its own concealment would be a travesty of justice.

In any event, the Debtors should be equitably estopped from amending due to their own acts of concealment during settlement negotiations with A-1.

The unusual circumstances of this case--where complaints were filed under seal over three years ago and the Plaintiff's time to serve them extended on four separate occasions in the name of Rule 4(m)--without constitutionally sufficient notice--also demand denial of permission to amend in the interests of justice.

## STATEMENT OF FACTS

Before and after the commencement of the Debtors' bankruptcy cases on October 8 and 14, 2005 ("Petition Date"), A-1 has supplied Delphi Automotive Systems LLC ("DAS LLC") with PGM for use in the manufacturing of automotive components, both through direct sale to DAS LLC and by reclaiming PGM from DAS LLC's automotive manufacturing scrap. Declaration of Ashok Kumar (Kumar Decl., filed contemporaneously herewith) ¶ 11. Prior to the Petition Date, A-1 had entered into a reclamation agreement with DAS, LLC, dated September 16, 2002 ("Prepetition PGM Reclamation Agreement") and a supply agreement dated December 1, 2004 ("Prepetition PGM Supply Agreement"). Kumar Decl. ¶¶ 13, 18 (Exhibit A

-2-

thereto).  On October 20, 2006, A-1 entered into a postpetition supply agreement with DAS LLC ("Postpetition PGM Supply Agreement").

On October 18, 2005, A-1 submitted a demand to the Debtors asserting a reclamation claim pursuant to 11 U.S.C. § 546(c) arising from the supply of palladium and rhodium prior to the petition date ("Reclamation Demand").  On November 17, 2005, A-1 filed proof of claim number 644 (the "A-1 Claim") in the Debtor's bankruptcy proceedings.  On February 21, 2006, the Debtors sent A-1 a statement of reclamation to which A-1 did not respond.  On October 31, 2006, the Debtors objected to the A-1 Claim (Docket No. 5452).

On September 21, 2007, DAS LLC and A-1 entered into a Settlement Agreement. Kumar Decl. ¶ 27 (Exhibit E thereto).  The Settlement Agreement terminated the Postpetition PGM Supply Agreement, and replaced it by amending and restating the Prepetition PGM Reclamation Agreement by amendment dated September 28, 2007 and amending and restating the Prepetition PGM Supply Agreement by amendment dated September 21, 2007 (together, the "Amended Agreements"), and provided for their assumption in the Plan.  Kumar Decl. ¶ 27.  The Settlement Agreement was memorialized in the Joint Stipulation and Agreed Order Compromising and Allowing Proof of Claim Number 644 (A-1 Specialized Services & Supplies, Inc.) (the "Stipulation") entered October 9, 2007 (Docket No. 10516, annexed hereto as **Exhibit 1**), which allowed the A-1 Claim against DAS LLC in the amount of $430,384.00 as an allowed general unsecured non-priority claim against the estate of DAS LLC.

The Amended Agreements continue to govern A-1's relationship with DAS LLC today. Kumar Decl. ¶ 27.  Thus, like the Preference Defendants in the Motion, A-1 has been during the pendency of the Debtors' bankruptcy proceedings and both before and after confirmation of their

First Amended Plan of Reorganization, an ongoing supplier to the Debtors and Reorganized Debtors. Kumar Decl. ¶ 11.

Based upon the Petition Dates of these bankruptcy cases, the deadline for commencing an adversary proceeding against A-1 on account of an allegedly avoidable preference pursuant to 11 U.S.C. § 547 expired on or before October 14, 2007.

The two original Complaints regarding alleged preferential transfers to A-1 were both dated September 26, 2007 and, according to the docket sheet in each case, were filed under seal[1] with the Clerk on September 28, 2007, after execution of the Settlement Agreement and before entry of the Stipulation.

On May 14, 2010, A-1 filed motions to dismiss ("First Wave Motions to Dismiss," "First Wave Motions") each adversary proceeding on various procedural grounds, some of which have not yet been adjudicated.  See Adv. Pro. Nos. 07-02084, 07-02096 (Docket Nos. 21 and 22, respectively).   On July 20, 2010, A-1 filed an additional motion to dismiss each adversary proceeding on Section 546(e) grounds ("Second Wave Motion," Docket Nos. 28 and 29, respectively).

At a hearing conducted on July 22, 2010 and in its order dated September 7, 2010 ("Dismissal Order"), this Court granted in part the First Wave Motions, dismissing all adversary proceedings in which a First or Second Wave Motion had been filed because the Debtors failed

---

[1] Since A-1 was on the Debtors' 2002 service list, it apparently received a copy of the original motion (the "Preservation of Estate Claims Procedures Motion") [Docket No. 8905] by the Debtors for an order seeking entry of an order, *inter alia*, establishing certain procedures to govern adversary proceedings, including those commenced under 11 U.S.C. § 547, which (i) permitted the Plaintiff to file complaints and keep the adversary proceedings under seal; (ii) directed the Clerk of the Court to "defer issuing a summons after the filing of a complaint, unless and until the Debtors intend to pursue the claims in the complaint," (iii) extended the time beyond the initial 120-day period to serve certain adversary summonses and complaints, and (iv) stayed the applicable adversary proceedings until service of process was effected.  Since the Debtors did not identify which creditors were the targets for potential avoidance actions the notice of the Preservation of Estate Claims Procedures Motion and its subsequent extensions was wholly inadequate.  See *infra* at 28-29.

to plead sufficient facts to state a claim and had not complied with Rule 8 of the Federal Rules of

Civil Procedure, made applicable by Rule 7008 of the Federal Rules of Bankruptcy Procedure.

Thus, the Complaints were dismissed.

A-1's Second Wave Motion, although dispositive of these adversary proceedings, was

never heard by this Court because entry of the Dismissal Order mooted the Second Wave

Motion. A-1 sets forth this defense in full as part of its futility argument contained herein.

The two Complaints the Debtors initially filed were duplicative: they listed the same

transfers in amount, each totaling $3,003,377.99, but each Complaint shows slightly different

dates for the alleged transfers. See **Exhibit 2**. Neither Complaint named the defendant correctly.

In the Motion and the Proposed Amended Complaint, the Plaintiff has in effect consolidated the

adversary proceedings into one by requesting leave to file a single amended complaint against

A-1; and the Plaintiff now uses A-1's correct name in the caption of the proposed complaint.

On September 7, 2010, roughly three years after the normal expiration of the Bankruptcy

Code's statute of limitations to file preference actions, Plaintiff filed its Reorganized Debtors'

Motion for Leave to File Amended Complaints, attaching the Proposed Amended Complaint.

## ARGUMENT

### POINT I

### AMENDMENT OF THE COMPLAINT SHOULD NOT BE PERMITTED SINCE IT WOULD BE FUTILE

This Court has discretion whether or not to grant leave to amend a complaint, Ruffolo v.

Oppenheimer & Co., 987 F.2d 129, 131 (2d Cir. N.Y. 1993). However, it is not an abuse of

discretion to refuse to grant leave to amend where amendment would be futile. Foman v. Davis,

371 U.S. 178, 182 (1962)(denial not abuse of discretion where amendment would be futile);

Leadsinger, Inc. v. BMG Music Publ'g, 512 F.3d 522, 532 (9th Cir. Cal. 2008)(amendment

exercise in futility where no amendment could save complaint); Acito v. IMCERA Group, Inc., 47 F.3d 47, 55 (2d Cir. N.Y. 1995)(supplementary allegations did not cure original complaint); Ruffolo, 987 F.2d at 131 (plaintiff had full opportunity for discovery and proposed new pleading did not allege necessary facts to show fraud or complicity); Health-Chem Corp. v. Baker, 915 F.2d 805, 810 (2d Cir. N.Y. 1990) (no merit in proposed amendments); Caterpillar Inc. v. Estate of Lacefield-Cole, 520 F. Supp.2d 989, 995-996 (N.D. Ill. 2007)(estate bound by previous admissions, thus amendment to answer would be futile); Pan American World Airways, Inc. v. Abrams, 764 F. Supp. 864, 870 (S.D.N.Y. 1991)(intervening decisions on preemption issue made proposed amendments to answer to add counterclaims futile).

A good example of futility is where a party is immune from suit, as was the government in Smith v. Commanding Officer, Air Force Accounting & Finance Center, 555 F.2d 234, 235 (9th Cir. Cal. 1977), or where the proposed amended pleading may be defeated by a motion for summary judgment or a motion to dismiss. Halpert v. Wertheim & Co., 81 F.R.D. 734, 735 (S.D.N.Y. 1979); Collyard v. Washington Capitals, 477 F. Supp. 1247, 1249 (D. Minn. 1979)(proposed amended complaint failed to state claim for which relief could be granted).

Amendment of the Complaints here would be futile on three grounds: (1) the Defendant has a complete defense to the action on Section 546 (e)grounds; (2), the Settlement Agreement the Defendant entered into with the Plaintiff assuming the Prepetition PGM Supply Agreement bars Plaintiff from recovering any allegedly preferential transfers made for goods supplied pursuant thereto; and (3) even as amended, the Proposed Amended Complaint does not pass muster under the standards of Twombly and Iqbal.

### A.   The Avoidance of Allegedly Preferential Transfers From A-1 is Barred By 11 U.S.C. § 546 (e)

The cause of action filed against A-1 to recover preferential transfers set forth in the Proposed Amended Complaint is barred by 11 U.S.C. § 546(e).[2]

11 U.S.C. § 546(e)[3] provides as follows:

> (e) Notwithstanding section 544, 545, 547, and 548 (a)(1)(B) of this title, the trustee may not avoid a transfer that is a margin payment, as defined in section 101, 741, 761 of this title, or **settlement payment**, as defined in section 101 or 741 of this title, made by or to a commodity broker, **forward contract** merchant, stockbroker, financial institution, or securities clearing agency, that is made before the commencement of the case, except under section 548(a)(1)(A) of this title.

(emphasis added).

The legislative history of Section 546(e) reveals that the provision was intended to "minimize the displacement caused in the commodities and securities markets in the event [of] a major bankruptcy affecting those industries." H.R. Rep. No. 97-420, at 1 (1982), *reprinted in* 1982 U.S.C.C.A.N. 583; Alfa, S.A.B. de C.V. v. Enron Creditors Recovery Corp. (In re Enron Creditors Recovery Corp.), 422 B.R. 423, 429 (S.D.N.Y. 2009); Enron Corp. v. Bear, Stearns Int'l Ltd. (In re Enron Corp.), 323 B.R. 857, 864 (Bankr. S.D.N.Y. 2005). The purpose of Section 546(e), as amended in 1982, is to ensure that "in the case of the commodities trading industry, the contractual right to liquidate a commodities contract or forward contract may not be

---

[2] In technical terms, the amendments contained in the current version of the Bankruptcy Code related to Section 546(e) and its definitions that were part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") and the 2006 amendments do not apply to this case. The Debtors filed their bankruptcy petition on October 8, 2005 and the bulk of the BAPCPA amendments became effective in cases filed on October 17, 2005, just nine days later. In any event, the version of Section 546(e) (and its related definitions contained in Section 101) in effect as of October 8, 2005 requires dismissal of the Complaints without reference to the 2005 and 2006 amendments.

[3] As effective prior to BAPCPA, which added the words "financial participant" to the list of parties in the penultimate clause.

stayed, avoided or limited in any bankruptcy proceeding brought under Title 11." H.R. Rep. No.

97-420, at 2 (1982), *reprinted in* 1982 U.S.C.C.A.N. 583-84.

Moreover, Congress particularly intended for Section 546(e) to reach transactions that

were "risk-shifting in nature," which would include the risk that the price of a commodity like

natural gas would rise or drop after a contract was entered." BCP Liquidating LLC v. Bridgeline

Gas Mktg., LLC (In re Borden Chems. & Plastics Operating Ltd. P'ship), 336 B.R. 214, 221

(Bankr. D. Del. 2006) (*quoting* H.R. Rep. No. 101-484, at 4, *reprinted in* 1990 U.S.C.C.A.N.

223, 226). These policy concerns apply to the course of business between A-1 and Delphi. To

meet A-1's obligations under the Prepetition PGM Supply Agreement, A-1 had to arrange for

adequate supplies of metal in advance and hedge itself against additional demands pursuant to

the contract. Kumar Decl. ¶ 19. In the lease agreements between Delphi and A-1, A-1 bore the

risk that the market price of metal would decline, see Kumar Decl. ¶¶ 22-23, and the return of the

metal at lease end was part of the network of forward supply transactions entered into by A-1

within its network of forward PGM merchants. Kumar Decl. ¶ 8. Through the safe harbor

provision, Congress sought to prevent the "ripple effect" created by "the insolvency of one

commodity or security firm from spreading to other firms and possibly threatening the collapse

of the affected industry." Enron Corp., 323 B.R. at 864.

Thus, 11 U.S.C. § 546(e) "immunizes from avoidance settlement payments made by a

forward contract merchant." Williams v. Morgan Stanley Capital Group, (In re Olympic Natural

Gas Co.), 294 F.3d 737, 739, 740 (5th Cir. Tex. 2002); see In re Borden Chemicals, 336 Bankr.

214 payments made prepetition by debtor for natural gas furnished under supply agreement,

including "true up" payment, were entitled to Section 546(e) safe harbor).

As defined prior to BAPCPA, the term "forward contract merchant" is

-8-

> a person **whose business consists in whole or in part of entering
> into forward contracts as or with merchants in a commodity**,
> as defined in section 761(8) of this title, or any similar good,
> article, service, right, or interest which is presently or in the future
> becomes the subject of dealing in the forward contract trade."

(emphasis added).  The words "in whole or in part" have the effect that "essentially any person

that is in need of protection with respect to a forward contract in a business setting should be

covered . . ."  5 *Collier on Bankruptcy* § 556.03 [2] at 556-6 (15th ed. rev. 2001).  A-1 is a

"forward contract merchant" because the majority of A-1's business consists of entering into

forward transactions with respect to PGM, which are commodities.  Kumar Decl. ¶ 5; taghere

see Williams v. Morgan Stanley Capital Group, (In re Olympic Natural Gas Co.), 258 B.R. 161,

163 (Bankr. S.D. Tex. 2001), aff'd, 294 F.3d 737 (5th Cir. 2002)(commodities include precious

metals).

    The term "forward contract" is defined in 11 U.S.C. § 101 (25),[4] which means

> A **contract** (other than a commodity contract) **for the purchase,
> sale or transfer of a commodity**, as defined in section 761(8) of
> this title, or any similar good, article, service, right, or interest
> which is presently or in the future becomes the subject of dealing
> in the forward contract trade, or product or byproduct thereof, **with
> a maturity date more than two days after the date the contract
> is entered into**, including, but not limited to, a repurchase
> transaction, reverse repurchase transaction, consignment, lease,
> swap, hedge transaction, deposit, loan option, allocated transaction,
> unallocated transaction, or any combination thereof or option
> thereon.

(emphasis added).  The parenthetical exclusion "commodity contract" means an on-exchange

futures transaction.  In re Olympic Natural Gas Co., 294 F.3d at 741 (5th Cir. 2002); see Hutson

v. E.I. du Pont de Nemours & Co. (In re Nat'l Gas Distribs., LLC), 556 F.3d 247, 257 (4th Cir.

N.C. 2009)("forward contracts" need not be traded on any exchange or in any financial market").

---

[4] Again, the pre-BAPCPA definition.

Thus, "forward contracts" within the meaning of Section 101(25), and therefore within the ambit

of Section 546(e), include the type of non-market traded, private agreements involved here.  In re

Olympic Natural Gas Co., 294 F.3d at 741 (quoting 5 *Collier on Bankruptcy* ¶ 556.02[2], at

55605 (Lawrence P. King ed., 15th ed. 2002)(forward contracts are "contracts for the future

purchase or sale of commodities that are not subject to the rules of a contract merchant or board

of trade."); In re Nat'l Gas Distribs., Inc., 556 F.3d at 256-257.  A-1's forward transactions with

Delphi are not traded on any exchange or financial market.   Kumar Decl. ¶¶ 5, 9, 15.   The

Supply Agreement between Delphi and A-1 was a forward contract providing for the supply by

A-1 to Delphi of a fixed amount of metal each month at future prices, id. ¶¶ 18-20; and the lease

agreements between A-1 and Delphi settled at the end of each lease term (in 30 to 90 days).  Id.

¶¶ 7, 8, 22.

The payments sought to be recovered by Plaintiff satisfy the definition of "settlement

payments" as defined in 11 U.S.C. § 101 (51A), which provides:

> The term "settlement payment" means, for purposes of the forward
> contract provisions of this title, a preliminary settlement payment,
> a partial settlement payment, an interim settlement payment, a
> settlement payment on account, a final settlement payment, a net
> settlement payment, or any other similar payment commonly used
> in the forward contract trade.

The term "settlement payment" is to be interpreted broadly.   See In re Olympic Natural

Gas Co., 294 F.3d at 739, 742 (term encompasses monthly net payment made in settlement of

each month's natural gas trades)(citing 5 *Collier on Bankruptcy* ¶ 546.06 [2][b], at 546-48,

Kaiser Steel Corp. v. Pearl Brewing Cor. (In re Kaiser Steel Corp.), 952 F.2d 1230, 1240 (10th

Cir. Col. 1991)); Bevill, Bresler & Schulman Asset Mgmt. Corp. v. Spencer S&L Ass'n, 878

F.2d 742, 751, 752 (3d Cir. N.J. 1989)(settlement payment definition "extremely broad:"

includes "transfers which are normally regarded as part of the settlement process, whether they

-10-

occur on the trade date, the scheduled settlement day, or any other date in the settlement process for the particular type of transaction at hand"); In re Enron Creditors Recovery Corp., 422 B.R. at 430- 434 (eschewing narrow definition of "settlement payment").

The alleged "preferential transfers" sought in the Complaints were payments made in settlement of the parties' trades: they were either payments for metal delivered on a monthly basis at forward prices pursuant to the Prepetition PGM Supply Agreement, Kumar Decl. ¶¶ 18-20, 21; or payments of the cost of leasing metal from A-1 based upon the difference between spot and forward prices, id. ¶¶ 8, 22, 23, 25; or payments in settlement of the PGM return obligation of Delphi. Id. ¶¶ 22, 24.

Since the transactions covered by the Complaints fall squarely within the safe harbor of 11 U.S.C. § 546(e), amendment of the existing Complaints would be futile and should not be permitted.

B.    **Avoidance Of Several of the Allegedly Preferential Transfers From A-1 is Barred By Delphi's Assumption of the Prepetition PGM Supply Agreement**

Delphi assumed the Prepetition PGM Supply Agreement with A-1 in a settlement agreement and as part of its confirmed plan. Since a preference action is precluded by a debtor's assumption of its agreement with its creditor, Delphi's assumption of the Prepetition PGM Supply Agreement precludes plaintiff from establishing its prima facie case under Section 547(b)(5). The reasoning is that the debtor is required to cure all defaults prior to assumption, and make the other contracting party whole before it may be permitted to assume the agreement. See Kimmelman v. Port Auth. of N.Y. and N.J. (In re Kiwi Int'l Air Lines, Inc.), 344 F.3d 311, 318-319 (3rd Cir. 2003); In re Superior Toy & Mfg. Co., 78 F.3d 1169 (7th Cir. 1996). At this Court's July 22, 2010 hearing on the First Wave Motions to Dismiss, the Court indicated its agreement with the legal principle that if a contract is assumed, there can be no preference as to

-11-

payments made thereunder. July 22 Hearing Transcript at 214 (selected pages from transcript attached hereto as **Exhibit 3**).

On September 21, 2007, DAS LLC and A-1 entered into a Settlement Agreement allowing A-1's claim against DAS LLC (which had originally been asserted in A-1's proof of claim #644 in an unliquidated amount) against the estate of DAS LLC. Kumar Decl., Exhibit E. The Settlement Agreement was memorialized in the Stipulation, entered on October 9, 2007 (**Exhibit 1**). The Settlement Agreement provided for, among other things, the amendment and restatement of A-1's prepetition supply agreement with DAS, LLC, Kumar Decl., Exhibit E ¶ 2(a) at page 3, and that, subject to the effectiveness of the joint plan of reorganization and consummation of the Settlement Agreement, DAS, LLC would assume the Prepetition PGM Supply Agreement. "DAS LLC agrees that, subject to the (i) effectiveness of the Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-in-Possession and (ii) consummation of this Settlement Agreement, it will assume the Amended Agreements pursuant to Article VIII of the Plan." Kumar Decl., Exhibit E ¶ 4 (a) at page 4. This Court approved and signed the Stipulation, thereby allowing A-1's prepetition unsecured claim in the amount of $430,384.00. Exhibit 1 at page 4.

On July 30, 2009 this Court entered an order approving Delphi's modified first amended plan of reorganization ("Modified Plan") (Docket No. 12359). The plan as modified was attached to the order as Exhibit A. Article 8.1(a) of the Modified Plan provided for the automatic assumption of executory contracts with certain non-applicable exclusions. Thus, the Modified Plan assumed the Prepetition PGM Supply Agreement.

Of the allegedly preferential payments sought to be avoided by the proposed amended complaint, $855,920 were made pursuant to the Prepetition PGM Supply Agreement. Kumar

-12-

Decl. ¶¶ 18, 21. The highlights on Exhibit 1 to the Proposed Amended Complaint (attached

hereto as **Exhibit 4**) indicate those payments that were made pursuant to the Prepetition PGM

Supply Agreement.

Since amendment of the complaint would be futile as to those alleged transfers, leave to

amend should be denied as to them.

### C.    The Amended Complaint Does Not Adequately Allege a Preference Claim Against A-1

This Court's September 7, 2010 order dismissed the complaints filed against A-1 on

September 28, 2007 without prejudice because

> the Debtors have failed to plead sufficient facts to state a claim, and have not complied with Rule 8 of the Federal Rules of Civil Procedure, made applicable by Rule 7008 of the Federal Rules of Bankruptcy Procedure. By no later than September 7, 2010, the Reorganized Debtors shall file a motion for leave to amend the complaint in each Adversary Proceeding the Reorganized Debtors intend to pursue (each, a "Motion to Amend"). Each Motion to Amend shall attach a proposed amended complaint that, for each alleged transfer shall set forth, *at a minimum*, the transferor, the transferee, any known subsequent transferee against whom relief is sought, the antecedent debt and which Reorganized Debtor is the plaintiff.

(emphasis added).

The Proposed Amended Complaint (**Exhibit 4** hereto) is deficient in failing to properly

allege (i) the identity of the transferor, (ii) the antecedent debt, and (iii) insolvency. Amendment

would be futile because the proposed claim itself is deficient within the meaning of Twombly,

Iqbal and the bankruptcy cases interpreting them in the preferential transfer context.

### 1.    The Proposed Amended Complaint Incorrectly Identifies the Transferor

This Court previously noted that it was important which of the Debtors made the

transfers. See Exhibit 3, July 22 Hearing Transcript at 206 ("First of all, it's not Delphi, there's

-13-

like forty-two debtors here.  So it's not listed who did this.  I think that's important.")
Mr. Fisher, counsel for the plaintiff, even admitted that:  ". . . Your Honor, it is important to say
which debtor entity we're talking about.  It is important to say exactly which transferee we're
talking about."  Id.  The Court noted in its ruling:  "First, the complaint does not identify the
particular debtor, and there were over forty debtors here, who was the transferor. . . [a]nd third,
the complaint, where there are multiple transferees, does not assert which defendant was the
initial transferee, those parties' rights being different under section 550 of the Bankruptcy Code."
Id. at 276.

The Proposed Amended Complaint reflects Delphi Automotive Systems, LLC as the
plaintiff in its caption.  See Exhibit 4 at 1.  It also states that "Plaintiff made certain payments to
Defendant in satisfaction  of amounts due for goods previously shipped by Defendant under the
Agreements (the "Transfers"), Proposed Amended Complaint ¶ 19; and that "On or within ninety
(90) days prior to the Initial Filing Date, Plaintiff made, or caused to be made, the Transfers
listed on Exhibit 1 to, or for the benefit of, Defendant."  Proposed Amended Complaint ¶ 21.  It
goes on to say that "Such Transfers constituted transfers of interests in Plaintiff's property
because they were made by Plaintiff from Plaintiff's account."  Proposed Amended Complaint
¶ 22.  Exhibit 1 to the Proposed Amended Complaint identifies DAS, LLC as the obligor and
transferring entity.

**The allegations in the Proposed Amended Complaint are that Delphi Automotive**
**Systems, LLC was the transferor.**  However, the documents evidencing each wire transfer
from Delphi Corporation to A-1 (documents which A-1 has previously filed with the Court)
corresponding to the alleged preferential payments clearly indicate that ***Delphi Corporation was***
***the transferor***.  See Ashok Kumar Decl. ¶ 17, Exhibit B.  How were both DAS, LLC and Delphi

-14-

Corp. involved in the alleged transfers?  Or, was only one of them truly involved?  The Proposed Amended Complaint does not make the situation clearer, only renders it even more ambiguous than before.

The Plaintiff has not complied with this Court's directive, and has not made clear how the alleged transfers came to A-1.  If the money went from DAS, LLC to Delphi Corporation and then to A-1, DAS is really asserting a claim under Section 550 for recovery of a transfer from an immediate or mediate transferee (A-1) of the initial transferee (Delphi Corporation).  Or, if the money went from ASEC (the entity that A-1 invoiced) to DAS, LLC (or the reverse) and then to Delphi Corporation and then finally to A-1, DAS is really asserting a claim under Section 550 for recovery of a transfer from a transferee that took for value under Section 550(b)(1).  If so, the complaint is deficient.

In any event, since Delphi Corporation clearly made the transfers according to documentation already in Plaintiff's hands and DAS, LLC is named as the plaintiff, the Proposed Amended Complaint has named the wrong transferor and is deficient.

### 2.    The Proposed Amended Complaint Does Not Adequately Identify the Antecedent Debt

Against the backdrop of the recent Supreme Court cases Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009), Delphi presents the question whether a preference complaint based upon antecedent debt *reflected only by intercompany records, not invoices from a third party*, can pass muster.  The answer should be no.  Like the plaintiff in Twombly, Plaintiff has not come up with "enough facts to state a claim to relief that is plausible on its face."  550 U.S. at 570; Iqbal, 129 S.Ct. at 1950 ("only a complaint that states a plausible claim for relief survives a motion to dismiss").

-15-

In Twombly, the Court granted certiorari to consider whether a complaint in an antitrust case was sufficient to withstand a Rule 12(b)(6) motion to dismiss. The complaint alleged that certain telecommunication providers had entered into an agreement not to compete in violation of Section 1 of the Sherman Act. Twombly, 550 U.S. at 551. Section 1 of the Sherman Act requires a contract, combination or conspiracy in restraint of trade or commerce to establish liability. The Twombly defendants moved to dismiss based on the lack of factual support in the complaint showing that the alleged anticompetitive conduct arose from an agreement. 550 U.S. at 553.

In considering the motion to dismiss, the Court held that stating such a claim requires a complaint with enough factual matter, taken as true, "to suggest that an agreement was made." Twombly, 550 U.S. at 556. "Factual allegations must be enough to raise a right to relief above the speculative level." Id. at 555. The plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id.

The Plaintiff fails to provide a specific and identifiable antecedent debt for each transfer, including the purchase order or invoice number. Instead, it provides only some apparently internally generated numbers which A-1 cannot identify.

Exhibit 1 to the Proposed Amended Complaint identifies a column as "Purchase Order/Invoice Number/Antecedent Debt." See Exhibit 4 hereto. The numbers in that column allegedly identifying those documents are unrecognizable to A-1. Kumar Decl. ¶¶ 36-38. The Purchase Order/Invoice column identifies these documents as "Invoices," even though Plaintiff also says that it did not accept invoices. The Proposed Amended complaint alleges that Plaintiff DAS, LLC, "did not accept physical invoices from Defendant in connection with Defendant's

-16-

shipment of goods under the Agreements. Rather, Plaintiff used its accounts payable system to make payment to Defendant." Exhibit 4 ¶ 17.

A-1 sent invoices to the Debtors memorializing the transactions and the numbering system used in Exhibit 1 to the Proposed Amended Complaint was not in any way related to A-1's invoice numbering system.    Kumar Decl. ¶ 37. Even if the documents referred to in Exhibit 1 represent items in some sort of internal debit/credit accounting system known only to the Debtors, they do not suffice to document an antecedent debt. Since these documents were never sent to A-1, they do not evidence a debt owing by ASEC or DAS, LLC to A-1. Instead, they only represent an intercompany transfer or at best, a debt, *between ASEC and DAS, LLC.* While an agreement or assumption of debt between related debtors is not normally a prerequisite of a preference claim, Plaintiff makes it one here by claiming that the only basis of DAS, LLC's antecedent debt to A-1 was its assumption or obligation to make such payment on ASEC's behalf. Exhibit 4 ¶ 14. But there is no factual matter to support the statement. This violates the dictates of Twombly:  "[W]e hold that stating such a claim requires a complaint with enough factual matter to suggest that an agreement was made." Twombly, 550 U.S. at 556.

Plaintiff does not explain how DAS, LLC "assumed or otherwise became obligated" for ASEC's payment obligations—this is merely stated as a legal conclusion. The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Iqbal, 129 S. Ct. at 1949; Sands v. McCormick, 502 F.3d 263, 267-68 (3d Cir. Pa. 2007); see Official Committee of Unsecred Creditors of Hydrogen, LLC v. Blomen (In re Hydrogen, LLC), 431 B.R. 337, 344, 347 (Bankr. S.D.N.Y. 2010).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

For example, in <u>Angell v. BER Care, Inc. (In re Careamerica, Inc.)</u>, 409 B.R. 737, 750 (Bankr. E.D.N.C. 2009), the court found insufficient facts in a preference complaint to support the trustee's contention that fund flowing through <u>BER Care, Inc.</u> originated with the debtors. Instead, there was only the bare allegation that "the debtors transferred its (sic) funds into bank accounts operated by the debtors' principals." The court found that statement to be conclusory and lacking in factual support. <u>Id.</u> The statement made by Plaintiff here is quite similar in its lack of factual support, though it relates to a different element of the cause of action. <u>See also</u> <u>Zucker v. Freeman (In re NetBank, Inc.)</u>, 424 B.R. 568, 572 (M.D. Fla. 2010) (mere allegation that defendant was an insider of the debt at the time the transfer was made was a legal conclusion, not a well pled fact—plaintiff must allege facts establishing that at the time of the transfer Defendant wielded sufficient control over Debtor such that he was an insider).

Then, in apparent contradiction to its earlier statements about DAS, LLC, ASEC and the absence of physical invoices, <u>see</u> Exhibit 4 ¶¶ 14-18, Plaintiff alleges that:

> Plaintiff made, or caused to be made, each transfer listed on Exhibit 1 for, or on account of, an antecedent debt owed to Defendant as of the date on which each Transfer was made. The documents evidencing the antecedent debt include the purchase orders and/or invoices/bills of lading identified on Exhibit 1, which purchase orders and/or invoices/bills of lading include evidence of the antecedent debt and the approximate dates the subject goods contemplated by the Agreements were ordered pursuant to the Agreements and/or were provided by Defendant.

Exhibit 4 ¶ 23. The "antecedent debt" allegation is formulaic and conclusory, forbidden by <u>Twombly</u>. <u>See</u> <u>Hydrogen</u>, 431 B.R. at 355. Even worse, it makes no sense when compared to the rest of the complaint, which stated that there were no physical invoices to support the antecedent debt. And the documents attached as Exhibit 1 are *not* purchase orders, invoices or bills of lading, but apparently some records of intercompany accounts payable or even transfers. <u>See</u> Kumar Decl. ¶¶ 36-38. "[I]f the allegations of [the] complaint are contradicted by

-18-

documents made a part thereof, the document controls and the Court need not accept as true the

allegations of the complaint.  Sierra Invs., LLC v. SHC, Inc. (In re SHC, Inc.), 329 B.R. 438, 442

(Bankr. D. Del. 2005); see also Sunquest Info. Sys., Inc. v. Dean Witter Reynolds, 40 F. Supp.2d

644, 649 (W.D.Pa. 1999)(in event of factual discrepancy between the pleadings and the attached

exhibit, the exhibit controls).  The same should be true of documents which are conspicuously

absent.

In summary, the proposed amended complaint does not adequately inform the defendant

A-1 of the "antecedent debt."  See Angell v. Rose Hill Enters., LLC (In re Careamerica, Inc.),

2010 Bankr. LEXIS 263, *8-*9 (Bankr. E.D.N.C. January 14, 2010)(granting motion to dismiss

amended complaint in part because the essential element, antecedent debt, was lacking).  In a

case somewhat similar to this, the bankruptcy court granted a motion to dismiss and authorized

filing of an amended complaint within 20 days of entry of the order dismissing the action.

Feltman v. Keybank, N.A. (In re Levitt & Sons, LLC), 2010 Bankr. LEXIS 1284 (Bankr. S.D.

Fla. April 16, 2010).  The complaint in that case alleged that a number of the Debtors had

become jointly and severally liable, through guaranties and related loan and security agreements,

for the obligations of the other debtors.  "The Complaint does not specify the extent of the total

loan amounts, nature of the underlying obligations, which entities were obligated, or which

entities were the source of the funds allegedly paid to KeyBank," the defendant. Levitt, 2010

Bankr. LEXIS at *3.  Many of the problems addressed in Levitt persist.  We know the amount of

the claim, but the identity of transferor is wrong, and it is unclear which entity was obligated to

repay A-1, and why.

While the court in Levitt gave permission to file an amendment, Plaintiff here has already

had "one bite at the apple" in the form of the Proposed Amended Complaint.  Plaintiff should not

now, five years after commencement of this bankruptcy case and over three years after the normal expiration of the statute of limitations and the filing of the original Complaints, when it has certainly had the benefit of much time to assemble its records and  when it has been represented by competent professionals throughout, be heard to request even more time to "get its ducks in a row."  See Mervyn's LLC v. Lubert-Adler Group IV, LLC (In re Mervyn's Holdings, LLC), 426 B.R. 96 (Bankr. D. Del. 2010)(where second amended complaint did not plead sufficient facts to state fraudulent conveyance claim, among other things, court denied motion to amend first amended complaint).

It is not a defendant's job to provide a plaintiff  with the blueprint for an adequately pled complaint.  A-1 should not have to shoulder the burden of an improperly pleaded complaint by pointing out its deficiencies, only to allow Plaintiff yet another chance at amendment.

> **3.      The Proposed Amended Complaint Does Not Adequately Allege Insolvency; at a Minimum the Burden to Demonstrate Insolvency Should Be On Plaintiff**

Another question presented by the complaint is whether it is sufficient in the light of Twombly and Iqbal, for a debtor whose own schedules state that it was solvent by as margin of $2 billion as of the Petition Date, to make a bare allegation of insolvency?  Again, the answer should be no.

An element of the prima facie case for recovery of a preferential transfer is that the transfer must have been made "while the debtor was insolvent."  11 U.S.C. § 547(b)(3).  The Plaintiff here is DAS LLC.  While Section 547(f) does supply a presumption of insolvency for the ninety days prior to the filing of the petition, the presumption is rebuttable.  Given the Plaintiff's own knowledge of several facts tending to show that DAS was solvent during that period, the Plaintiff should have set forth specific facts in its complaint (if such are available),

-20-

showing that DAS' financial condition was such that the sum of its debts was greater than all of its property at a fair valuation, exclusive of property that was fraudulently transferred. Instead, Plaintiff has made only a naked assertion of insolvency, failing to allege any specifics. In light of the recent Supreme Court cases on pleading and the plaintiff's own admissions in the schedules, the bare assertion is insufficient to validate the presumption. The burden was on Plaintiff to provide more detailed allegations, and that burden has not been met.

The schedules filed by DAS in case 05-44640 reflect a book value positive net worth of over $2 billion. These schedules were filed on January 20, 2006 initially reflecting assets of $8,129,515,432 and liabilities of $6,059,642,099 (Docket No. 3) and confirmed in four subsequent amendments of DAS' schedules in case No. 05-44640, on February 1, 2006 (Docket No. 8); April 18, 2006 (Docket No. 10) (assets of $8,133,427,809 and liabilities of $5,526,447,015); October 12, 2007 (Docket No. 76); and October 10, 2008 (Docket No. 84). Also, based on DAS's schedules, DAS was not liable for the debts associated with "transformational" issues such as labor, pension and General Motors Corporation problems. Instead, the liabilities for these transformational issues, such as GM legacy obligations, pension obligations, GM indemnities and certain labor agreements were the obligation of Delphi Corporation, DAS's ultimate parent. *Compare* Schedule G to the DAS Schedule (DAS Docket No. 5) (not scheduling union contracts or collective bargaining agreements as executory contracts) *with* Delphi Corporation Schedule G (Docket No. 1854) (scheduling union contracts and collective bargaining agreements as executory contracts).

These DAS admissions conclusively rebut any presumption of DAS's insolvency during the preference period. See, e.g., In re Roblin Industries, Inc., 78 F.3d 30, 34-35 (2d Cir. 1996) (schedules showing solvency rebutted presumption so that trustee bore burden of coming

forward to prove insolvency); <u>Akers v. Koubourlis</u>, 869 F.2d 1319, 1322 (9th Cir. 1989) (debtors' schedules indicating greater assets than debts rebutted presumption); <u>IMF Sales Associates, Inc. v. Racal-Vadic Information Systems, Inc.</u>, 94 B.R. 223, 225 n.3 (Bankr. D. Mass 1988) ("Racal has rebutted the [section 547(f) presumption] by offering the schedules which show the debtor was solvent."); <u>Fokkena v. Winston, Reuber, Byrne, P.C.</u>, 189 B.R. 744, 747 (Bankr. N.D. Iowa 1995) ("Debtor's schedules filed in his chapter 11 case are sufficient to support a finding of solvency at the time of the transfers.  The presumption was rebutted.").

Also, stock in Delphi itself, DAS' parent was being actively traded in the $2 to $5 range in the month before its bankruptcy filing, September 2005.  See **Exhibit 5** hereto (selected data from NYXdata.com for September, 2010).  Upon information and belief, early on claims in the case were being purchased for 100% or more.  Finally, as late as February 2008, more than two years into its bankruptcy, Delphi was still proposing a 100 cent plan to its creditors.  Delphi's performance in the marketplace also confirms solvency. These market-based indications of value are very persuasive.  Recent circuit cases and cases in this District have determined that evidence of market valuations can be more persuasive than expert evidence on the topic, because expert evidence can be subjective and vulnerable to manipulation.  <u>See</u> <u>In re Chemtura Corp.</u>, Bench Decision on Confirmation at 34 n.106 (Hon. Robert E. Gerber, J.)("marketplace is often as good or better an indication of a company's value than expert testimony alone would be," as long as unusual financial accounting techniques or fraud are not involved) (selected pages attached hereto as **Exhibit 6**).  <u>See</u> <u>VFB LLC v. Campbell Soup Co.</u>, 482 F.3d 624, 633 (3rd Cir. Del. 2007); <u>Iridium IP LLC v. Motorola, Inc. (In re Iridium Operating LLC)</u>, 373 B.R. 283, 339 (Bankr. S.D.N.Y. 2007)(rejecting expert testimony in favor of market evidence in evaluating whether a company was insolvent for purposes of avoidance action).

While postpetition events may be considered, hindsight analysis is improper in valuing a company's pre-bankruptcy assets. <u>Iridium,</u> 373 B.R. at 345. A company's stock price is an appropriate means for determining value, <u>see</u> <u>VFB</u>, 482 F.3d at 631 (affirming district court reliance upon stock price and market-based valuations) and the market price is "a more reliable measure of the stock's value than the subjective estimates of one or two expert witnesses." <u>VFB LLC</u>, 482 F.3d at 633 (citation omitted).

Given DAS's failure properly to plead insolvency and the fact that DAS was solvent (with over $2 billion in net equity), any amendment is futile here. DAS cannot prove a crucial element of its avoidance action.

**POINT II**

**JUSTICE DEMANDS THAT AMENDMENT OF THE
COMPLAINTS SHOULD NOT BE PERMITTED**

While amendment of a complaint shall be freely given when justice so requires, the ability to amend must be balanced against the prejudice to the opposing party as a result of the amendment. <u>Foman v. Davis,</u> 371 U.S. at 182.

The amendment should not be allowed where there has been undue delay, bad faith, or improper motive. <u>Foman v. Davis,</u> 371 U.S. 178, 182 (1962); <u>State Teachers Retirement Bd. v. Fluor Corp.,</u> 654 F.2d 843, 856 (2d Cir. N.Y. 1981); <u>see</u> <u>Tyco Laboratories, Inc. v. Cutler-Hammer, Inc.,</u> 490 F. Supp. 1, 3 (S.D.N.Y. 1980) (plaintiffs could have moved to amend and supplement their complaint in the manner proposed long before; thus proposed amendment did not serve the interests of justice). In a case where plaintiff moved to amend a four-year-old complaint to add a $5 million punitive damages claim which involved an unsettled point of law, amendment was not permitted. <u>Marson v. Jones & Laughlin Steel Corp.,</u> 87 F.R.D. 151, 152 (E.D. Wis. 1980)(simple willfulness claim was permitted as amendment); <u>see</u> <u>Reisner v. General</u>

-23-

Motors Corp., 511 F. Supp. 1167, 1172 (S.D.N.Y. 1981) (amendment denied where motivation for filing amended complaint was to forestall ruling on summary judgment against plaintiff, after completion of discovery and when case was nearly five years old and proposed amendment included facts that should have been within plaintiffs' knowledge at time earlier complaint was drafted).

Typically, prejudice under Rule 15 is presented in the case law delay within the course of the litigation, for example, if a new party is brought in after the completion of discovery and close to trial.  See, e.g., United States v. New Castle County, 116 F.R.D. 19, 24-25 (D. Del. 1987).  But prejudice can also be found to exist under the unusual circumstances of this case. There has been extensive prejudice to A-1 in the over three year delay after the normal expiration of the statute of limitations for  these causes of action.  The prejudice springs from three sources: *first*, and most shocking, that during the execution and filing of a global settlement agreement between the parties plaintiff filed secret adversary proceedings against A-1, the party it was negotiating with; *second*, that over the lengthy passage of time since the filing of the Complaints documents and memories have been dissipated; and *third*, that the plaintiff unfairly sought, in secret, orders from this Court that would extend the preference statute of limitations, see *infra* at 28-29.

### A.    Bad Faith Concealment During Settlement Negotiations

A-1 was prejudiced by Delphi's bad faith and concealment in entering into a settlement agreement and stipulation with it, having filed the two preference lawsuits against it a few days after the settlement agreement was signed.  See Kumar Decl. ¶¶ 27-35.  Following A-1's filing of its proof of claim and formal debtor objection thereto, the parties negotiated and entered into a consent order granting A-1 an allowed claim in a modified amount.  Kumar Decl. ¶ 27.  The execution  of  the  September 21,  2007  Settlement  Agreement  between  A-1  and  Delphi

-24-

Automotive Systems LLC ("DAS," "DAS LLC"), Kumar Decl. ¶27, Exhibit E, took place *just
five days before* the September 26, 2007 dates on the Complaints in adversary proceedings 07-
02084 and 07-02096 and *seven days before* they were filed under seal with the Clerk on
September 28, 2007.

Thus, the Complaints were filed in secret just after the Settlement Agreement was
executed on September 21, 2007 and just before presenting the resulting Stipulation to the Court.
The Stipulation was entered October 9, 2007 (Exhibit 1 hereto).  The Settlement Agreement was
a global document.  Not only did it allow A-1's proof of claim in a certain amount, resolving the
objection thereto; but it was to "net and deliver" the PGM owed to each party by the other; also it
amended and restated the Prepetition PGM Supply Agreement between A-1 and DAS, LLC; and
amended and restated the Prepetition PGM Reclamation Agreement (by which A-1 would
reclaim the metals from catalytic converters supplied by DAS, LLC); terminated the Postpetition
PGM Supply Agreement; and withdrew A-1's reclamation demand.  A-1 also agreed to provide a
deposit of metal with a value of at least $2 million to secure its obligations under the amended
reclamation agreement.  Kumar Decl., Exhibit E.  Thus, the Settlement Agreement became the
blueprint for the parties' business relationship going forward.

Perhaps most importantly, the Settlement Agreement specifically stated that:  "DAS LLC
and A-1 have agreed to enter into this Settlement Agreement to:  net and deliver the PGM each
party owes to the other . . ."  Kumar Decl. ¶ 29, Exhibit E at 2.  The Settlement Agreement
recited the amount of metal each party held for each of the three types of metal held, platinum,
palladium and rhodium, and netted the two amounts against each other.  For example, it stated
that A-1 currently owed DAS LLC 348.079 troy ounces of Platinum and DAS  LLC currently
held 500 troy ounces of A-1's Platinum secured A-1's performance under the prepetition PGM

reclamation agreement. These amounts were offset against each other in the "Netting and Delivery of PGM" section of the Settlement Agreement so that on September 28, 2007 DAS LLC agreed to deliver 151.921 troy ounces of Platinum to A-1, netting the 348.079 ounces and the 500 ounces against each other. Kumar Decl. ¶ 30.

Clearly, then, the Settlement Agreement was meant to net and offset the current metal balances each party held against each other. See Kumar Decl. ¶ 31. This was in keeping with the constant trading back and forth of metal between the parties as part of their hedging agreements and as a result of the metal reclamation process. See Kumar Decl. ¶ 32. Had A-1 known that there would later be a demand for the refund of large payments for pre-petition metal shipped or leased for DAS LLC's account, that would have resulted in a much larger amount of metal owed by DAS LLC to A-1 and the Settlement Agreement would have been adjusted accordingly. See Kumar Decl. ¶ 34.

In addition, in allowing A-1's prepetition claim, the Settlement Agreement provided that the allowed amount "constitutes the total amounts owing for prepetition arrearages (the "Cure Amount" under the Amended Agreements and the total amount of A-1's cure claim (the "Cure Claim) resulting from the assumption of the Amended Agreements." Kumar Decl., Exhibit E at 4. Had the Complaints for recovery of the alleged preferential transfers been disclosed contemporaneously with the negotiations, the Cure Amount as defined in the Settlement Agreement would have had to be much larger.

The complaints filed against A-1 under seal in late September of 2007 were filed in bad faith: the Debtors sought to keep the filed complaints a "secret" as it negotiated with A-1. Had A-1 known that Delphi was filing these actions against it, the terms of any settlement agreement between the parties would have likely been very different. Kumar Decl. ¶¶ 34, 35. Thus, to

-26-

permit amendment of the Complaints and allow these "secret" claims to proceed would be contrary to the interests of justice.

### B.    Undue Delay, Facts Within Reach of Plaintiff, No Excuse

Second, the plaintiff's failure to include adequate allegations in their complaint over the several years since filing the complaints against was so careless that it appears to be grossly negligent or willful.[5] "[W]here . . .considerable time has elapsed between the filing of the complaint and the motion to amend, the movant has the burden of showing some 'valid reason for his neglect and delay.'" Hayes v. New England Millwork Distribs., Inc., 602 F.2d 15, 19-20 (1st Cir. Mass. 1979). But the Plaintiff does not show any such reason.

In recognition of the natural prejudice resulting from a party's delay in prosecuting an action, including by delaying service of the complaint, the Second Circuit recognizes that "prejudice to defendants resulting from unreasonable delay may be presumed . . . [and] is particularly appropriate where, as here, the plaintiff's delay was prolonged." Shannon v. GE, 186 F.3d 186 (2d Cir. 1999) (internal citations and quotations omitted).

Indeed, courts regularly recognize that "[f]ailure to use reasonable diligence in serving a summons is more fraught with possibilities of unfairness and abuse than failure to diligently prosecute an action after summons is served." Richardson v. United White Shipping Co., 38 F.R.D. 494, 496 (N.D. Cal. 1965) (dismissal where service perfected 28 months after the filing of the action). This is because such delay "affects all the defendant's preparations." Anderson, Anderson v. Air West, Inc., 542 F.2d 522, 525 (9th Cir. 1976) (dismissal under Rule 41(b) based on failure to serve for a year despite entry of order extending service period); Farhang v. Indian

---

[5] The Plaintiff would have been permitted to amend the Complaints as of right before A-1 filed its initial motion to dismiss on May 14, 2010, see Rule 7015, Fed. R. Civ. P. 15(a)(1)(A), thus giving them close to three years after the Complaints were filed to investigate and amend.

Inst. of Tech., 2010 U.S. Dist. LEXIS 53975, at *14-15 (N.D. Cal. June 1, 2010) (delayed service prejudiced defendant "by depriving him of the opportunity to engage in earlier preparation and participation in the suit."). Indeed, "[d]elay alone can infuse an adverse element into the proper flow of litigation: evidence deteriorates or disappears, memories fade, and witnesses die or move away." Veazey v. Young's Yacht Sale & Service, Inc., 644 F.2d 475, 478 (5th Cir. 1981) (dismissal under Rule 41(b) for failure to serve for nearly 21 months).[6]

In addition, where, as here, a plaintiff files its complaint immediately prior to the running of the statute of limitations and then fails to serve, prejudice to defendants is magnified:

> Once the statute [of limitations] has run, a potential defendant who has not been served is entitled to expect that he will no longer have to defend against the claim. If service can be delayed indefinitely once the complaint is filed within the statutory period, these expectations are defeated and the statute of limitations no longer protects defendants from stale claims.

Anderson, 542 F.2d at 525; see also Zapata v. New York, 502 F.3d 192, 198 (2d Cir. 2007) ("It is obvious that any defendant would be harmed by a generous extension of the service period beyond the limitations period for the action, especially if the defendant had no actual notice of the existence of the complaint until the service period had expired. . ."); Redding v. Essex Crane Rental Corp. of Alabama, 752 F.2d 1077, 1078 (5th Cir. 1985) (holding that it was an "obvious misuse of the judicial process" to prevent defendant from learning of action by failing to serve).

---

[6] Unfortunately, based on Delphi's decision to delay prosecution of this action for five years, this action presents the unusual circumstance where amendment is sought at the beginning of the action, but years after the action was filed. To fully understand and analyze A-1's prejudice, resulting here from Delphi's failure timely to effectuate service compounded by Delphi's attempt to amend, this Court should instead look to the more closely analogous context of dismissals for failure to prosecute under Fed. R. Civ. P. 41(b) – more specifically, where courts have considered the prejudice caused by failure to timely serve defendants. Indeed, had this court not already dismissed the Complaints, Rule 41(b) would have provided yet another basis for dismissal.

-28-

The extreme staleness of this action has inevitably led to the dissipation of witnesses' memories and relevant documentation, now three years after the preference statute of limitations expired.  See Kumar Decl. ¶ 39.  A-1 certainly cannot lay its hands on the alleged invoices claimed to evidence the antecedent debt in the Proposed Amended Complaint.  Kumar Decl. ¶¶ 36-38.

Moreover, "where the party seeking amendment knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint, the motion to amend is subject to denial."  Las Vegas Ice & Cold Storage Co. v. Far West Bank, 893 F.2d 1182, 1185 (10th Cir. 1990)(citation omitted).  Indeed, the Debtors admitted in their own omnibus response to the First Wave Motions to Dismiss dated June 7, 2010 that it retained the "documentation/information memorializing the preference transactions," Omnibus Response ¶ 62, but for some reason elected not to plead it.  See also Exhibit 3, July 22 Transcript at 202 (plaintiff admitted to having necessary information to supplement initial complaints through discovery provided to defendants).

Although A-1 has already filed its Second Wave Motion on Section 546(e) grounds accompanied by a certification with documentation attached stating that it was a seller of PGM metals, commodities, to Delphi, the Debtors still cannot manage to get it right.  They state in the Proposed Amended Complaint that A-1 was a supplier of "parts" to the Reorganized Debtors, instead of supplying them with commodities.  Plaintiff's conduct in apparently never taking the time to read A-1's Second Wave Motion is grossly negligent.  A plaintiff should not be permitted leave to amend when it is patently obvious from the facts that it does not deserve another chance to keep its action alive.

**C.    The Improper Use of Rule 4(m) by Plaintiff and the Lack of Procedural Due Process Also Mandate Denial of the Motion to Amend**

The Court stated that it would consider the Rule 4(m) issues previously raised by many of the defendants in the context of a motion to amend, but noted that the matter had already been "briefed and argued."  See Exhibit 3 at 229; Dismissal Order at 2 ("[a]ll other arguments raised by defendants in the Adversary Proceedings that were not ruled upon at the Hearing or pursuant to this Order, and all responses thereto, are preserved.")  Rather than restate those arguments in full, A-1 respectfully refers the Court to its arguments in that regard previously  made in its First Wave Motions, see First Wave Motions at 4-11 (attached hereto as **Exhibit 7**): (1) this Court's orders extending Plaintiff's time to serve the Complaints ("Extension Orders") did not expressly toll the statute of limitations, and, taking into account the relationship between Rules 3 and 4, the mere filing of the Complaints without more in 2007 was not adequate to toll the statute, Exhibit 7 at 4-7; (2); Rule 4(m) should not have been prospectively applied to grant the Plaintiff sequential extensions of the time to serve the Complaints, Exhibit 7 at 7-10; and (3) the notice of attempts to extend that statute of limitations was not constitutionally sufficient, Exhibit 7 at 10-11.  A-1 also respectfully refers the Court to its joinder and adoption of the arguments set forth in the briefs of other defendants in these adversary proceedings.[7]

---

[7] A-1 joined and adopted the arguments set forth in Motion of Hewlett-Packard Company and Affiliates for an Order Dismissing the Complaint With Prejudice, and Vacating Certain Prior Orders Pursuant to Fed. R. Civ. P. 60 and Fed. R. Bank. P. 9024, dated April 9, 2010 [Adv. Pro. No. 07-02449, Docket No. 17] at 11-20, 26-32 and the arguments set forth in the following reply briefs (the "Briefs") filed by Hewlett-Packard Company and affiliates, Affinia, GKN, MSX and Valeo (together, the "Preference Defendants") on the First Wave Motions Reply of HP Enterprise Services, LLC and Affiliates for an Order Dismissing the Complaint With Prejudice, and Vacating Certain Prior Orders Pursuant to Fed. R. Civ. P. 60 and Fed. R. Bank. P. 9024, dated July 2, 2010 [Adv. Pro. No. 07-02262, Docket No. 31] ("H-P Brief") at 2-16 and Reply Memorandum of Law in Support of Motions of Affinia, GKN, MSX and Valeo to: (A) Vacate Certain Prior Orders Of The Court; (B) Dismiss the Complaint With Prejudice; (C) and Dismiss the Claims Against Certain Defendants Named in the Complaint; and (D) Dismiss Claims Based on Assumption of Contracts; or (E) in the alternative, To Require Plaintiffs to File a More Definite Statement, dated July 2, 2010 [Adv. Pro. Nos. 07-02328, Docket No. 30; 07-02484 Docket No. 36, 07-02534 Docket No. 41]("Affinia Brief") at 9-26.

## POINT III

### PLAINTIFF IS EQUITABLY ESTOPPED FROM BRINGING PREFERENCE ACTIONS AGAINST A-1 THAT WERE NOT DISCLOSED AT THE TIME THE PARTIES' SETTLEMENT AGREEMENT WAS EXECUTED

The principle of equitable estoppel bars a party from asserting claim where a party makes a definite misrepresentation, including a misrepresentation by silence, and had reason to believe the other party would rely on it (regardless of whether the person making the misrepresentation intended to deceive), Kosakow v. New Rochelle Radiology Assocs., P.C., 274 F.3d 706, 726 (2d Cir. N.Y. 2001), and the other party relies on it, to its detriment. See Heckler v. Community Health Servs., 467 U.S. 51, 59, 81 L.Ed. 2d 42 (1984).

The doctrine of equitable estoppel is properly invoked where enforcement of rights of one party would work an injustice upon the other due to the latter's justifiable reliance upon the former's words or conduct. Eastern Air Lines, Inc. v. Insurance Co. (In re Ionosphere Clubs, Inc.), 85 F.3d 992, 999 (2d Cir. N.Y. 1996)(debtor was estopped by its own conduct in renegotiating and obtaining judicial approval of insurance agreement from opposing enforcement of that agreement when it found it convenient).

The Plaintiff, just like the debtor in Ionosphere Clubs, should not be heard to disavow a Settlement Agreement, negotiated between the parties to its own benefit (to allow its business relationship with A-1 to continue and to liquidate A-1's claim at a certain amount) by bringing a lawsuit that it concealed at that time and would have affected the amount of A-1's claim and the balance of metal owing between the parties.

#3337935.03 (154642.002)

<u>POINT IV</u>

**PLAINTIFF'S CLAIMS ARE BARRED UNDER 11 U.S.C. §502(d) BECAUSE PLAINTIFF EXPRESSLY AGREED TO ALLOW A-1'S CLAIM BY STIPULATION**

Section 502(d) of the Bankruptcy Code requires disallowance of a claim of an entity

which has received a preferential transfer:

> Notwithstanding subsections (a) and (b) of this section, the court **shall** disallow any claim of any entity from which property is recoverable under sections 542, 543, 550, or 553 of this title . . . unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section 522(i), 542, 543, 550, or 553 of this title.

11 U.S.C. § 502(d).  (emphasis added).

Following A-1's proof of claim and formal debtor objection thereto, the parties

negotiated over the course of a year and entered into a consent order granting A-1 an allowed

claim in a modified amount.  As set forth in the Statement of Facts above, on September 21,

2007, DAS LLC and A-1 entered into a Settlement Agreement allowing A-1's claim against

DAS LLC (which had originally been asserted in A-1's proof of claim #644 in an unliquidated

amount) in the amount of $430,384.00 as an allowed general unsecured non-priority claim

against the estate of DAS LLC (Kumar Decl., Exhibit E).  The Settlement Agreement was

memorialized in the Stipulation, entered October 9, 2007 (Exhibit 1).  This Court approved and

signed the Stipulation,  thereby deeming A-1's claim allowed in the amount of $430,384.00.

Based upon the language of section 502(d), Plaintiff is barred from bringing this

adversary proceeding.  The claims alleged in the Complaints are related to the Prepetition PGM

Reclamation Agreement and the Prepetition PGM Supply Agreement; these claims have already

been adjudicated by this Court.  If Plaintiff wished to address allegations of preferential transfers

to A-1, it could have and should have done so during the claims allowance process.  Plaintiff

-32-

may not now re-litigate claims it has already settled, and for which settlement has been approved by order of this Court.

The Debtors were charged with examining proofs of claim and objecting to the allowance of any improper claim. In their unique position, the Plaintiff clearly knew about the alleged preferential transfers to A-1 prior to the adjudication of A-1's claim, and it was incumbent upon the Plaintiff to raise any known objection contemporaneously: the preference complaints were filed in late September 2007, within days of entering into the Settlement Agreement and Stipulation allowing A-1's claim.

Several courts have had an opportunity to consider whether debtors waive their right to recover on an alleged preferential transfer to a creditor whose proof of claim has already been adjudicated and whose claim has been allowed by order of the court. The only reported case on point in this District is Rhythms Netconnections Inc. v. Cisco Systems, Inc. (In re Rhythms Netconnections Inc), 300 B.R. 404 (Bankr. S.D.N.Y. 2003), which found that Section 502(d) should not bar assertion of preference claims under the facts of that case. Other courts have split on the issue. See e.g., Caliolo v. Azdel (In re Cambridge Indus. Holdings, Inc.), 2003 WL 21697190, *5 (Bankr. D.Del. July 18, 2003) ("Cambridge II") (holding that if a claim has been allowed, there can no longer be an avoidable preference transfer due from that claimant; Caliolo v. TKA Fabco Corp. (In re Cambridge Indus. Holdings), 2003 WL 1818177, *2 (Bankr. D.Del Apr. 2, 2003) ("Cambridge I") (holding that preference claim brought after claim was already allowed was barred on 'the principles of claim preclusion'); LaRoche Indus. v. Gen Am. Transp. Corp., 284 B.R. 406, 408-09 (Bankr. D.Del. 2002) (concluding that "§ 502(d) stands for the proposition that if a claim is allowed there is no longer a voidable transfer due from that claimant"); but see Caliolo v. Saginaw Bay Plastics, Inc. (In re Cambridge Indus. Holdings,

-33-

Inc.), 2006 WL 516764 (D.Del. Mar. 2, 2006) (holding that there is no waiver of preference

claim if not brought during the claims allowance process); Homeplace of America, Inc. v. Salton,

Inc. (In re Waccamaw's Homeplace), 325 B.R. 524, 535 (Bankr. D. Del. May 31, 2005) (same).

However, Judge Lifland distinguished Rhythms on its facts from other cases which had held

differently.  In Rhythms, the settlement as to the creditor's contracts and claim was signed less

than two months after the petition date:  "[t]he Debtors and their statutory Creditors' Committee

were in triage and were far from a point where they could be expected to have commended a

preference analysis or a claims review."  Rhythms, 300 B.R. at 409.

A-1 contends that those decisions holding that a preference action is barred where a

creditor's claim has already been deemed allowed, *particularly where the debtor has already*

*conducted its "preference analysis" and already secretly filed the preference claim with the*

*court, before the settlement is finalized*, are the more reasoned decisions in this situation given

both the plain language and legislative history of Section 502(d).

Judge Lifland pointed out in the Rhythms decision that in Cambridge I, the Court decided

against the sort of "sandbagging" that can happen after a claim is resolved if the debtor

commences an adversary proceeding alleging the receipt of an avoidable preference.  Rhythms,

300 B.R. at 409 (citing Cambridge I at *2).   Similarly, in Cambridge II, "the debtor filed a

preference action before the creditor filed its proof of claim, "allowing enough time to combine

and determine both cases correctly."  Rhythms, 300 B.R. at 409 (citing Cambridge II at *3).

A-1's situation most closely matches the factual circumstances in Cambridge II, although

A-1's situation is the more egregious because, as the stipulation was being negotiated, the

Debtors knew that they had already filed secret preference actions against A-1, whereas in

Cambridge II, the creditor was aware that an adversary proceeding was pending.  Cambridge II

-34-

at *3.  Therefore, this Court should find that Section 502(d) of the Bankruptcy Code precludes Plaintiff's pursuit of any recovery of any allegedly preferential transfers from A-1.  Since the Court has already entered an Order allowing A-1's claim in a specific and fixed amount, resolving the debtors/Plaintiff's objections to a A-1's 'unliquidated' proof of claim, implicit in that resulting Allowance Order is a determination that A-1 was not the recipient of any preferential payment.

## POINT V

### INCORPORATION OF OTHER DEFENDANTS' BRIEFS

A-1 hereby incorporates all of the other meritorious arguments raised by the other preference defendants in opposition to Delphi's motions for leave to amend with regard to them.

Given the facts here, justice dictates that leave to amend be denied.

**WHEREFORE**, A-1 respectfully requests that the Court enter an order (1) denying the Motion, (2) vacating or setting aside this Court's Fourth Extension Order  and (3) providing such other and further relief as this Court may deem necessary or appropriate under the circumstances.

Dated:    Woodbridge, New Jersey
November 23, 2010

Respectfully submitted,

/s/ Deirdre Woulfe Pacheco
By:  Deirdre Woulfe Pacheco, Esquire
**WILENTZ, GOLDMAN & SPITZER, P.A.**
David H. Stein, Esquire
Deirdre Woulfe Pacheco, Esquire
Letitia Accarrino, Esquire
90 Woodbridge Center Drive
Suite 900, Box 10
Woodbridge, New Jersey 07095
(732 ) 636-8000
- and -
110 William Street, 26th Floor
New York, New York 10038-3927
(212) 267-3091
Attorneys for A-1 Specialized Services & Supplies, Inc.

-35-