# EXHIBIT 7

**Hearing Date and Time:  July 22, 2010 at 10:00 a.m.**
**Objection Date and Time:  June 7, 2010 at 4:00 p.m.**

David H.Stein, Esq. (DS 8514)
Deirdre Woulfe Pacheco, Esq. (DP 6171)
Letitia Accarrino, Esq. (LA8791)
WILENTZ, GOLDMAN & SPITZER, P.A.
90 Woodbridge Center Drive
Suite 900, Box 10
Woodbridge, New Jersey  07095-0958
Telephone: (732) 636-8000
110 William Street
26th Floor
New York, New York 10038-3927
Telephone (212) 267-3828
*Attorneys for A-1 Specialized Services & Supplies, Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------X

IN RE:

DELPHI CORPORATION, *et al.*,

           Debtor.

                             Chapter 11

DELPHI CORPORATION, et al.,

           Plaintiffs,

      -against-

A-1 Specialized SVC & Supp., Inc.,

           Defendant.

Case No. 05-44481 (RDD)

Jointly Administered

Adv. Pro. No. 07-02084 (RDD)

-----------------------------------------------------X

**JOINDER OF A-1 SPECIALIZED SERVICES & SUPPLIES, INC.**
**TO PENDING MOTION FOR AN ORDER DISMISSING THE COMPLAINT**
**WITH PREJUDICE, AND VACATING CERTAIN PRIOR ORDERS**
**PURSUANT TO FED. R. CIV. P. 60 AND FED. R. BANKR. P. 9024 WITH**
**SUPPLEMENTAL BRIEFING**

## TABLE OF CONTENTS

**PAGE**

STATEMENT OF FACTS ........................................................................................ 1

SUPPLEMENTAL ARGUMENTS ........................................................................ 4

I. THE FILING OF THE COMPLAINTS UNDER SEAL IN 2007
WAS NOT SUFFICIENT TO TOLL THE STATUTE OF
LIMITATIONS ................................................................................ 4

II. RULE 4(m) DOES NOT LEND ITSELF TO PROSPECTIVE
APPLICATION .............................................................................. 7

III. PURSUANT TO RECENT SECOND CIRCUIT AUTHORITY,
THE EXTENSION ORDERS CANNOT BIND DEFENDANTS
IN THESE PREFERENCE ACTIONS FOR LACK OF DUE
PROCESS ...................................................................................... 10

IV. PLAINTIFFS HAVE NAMED THE DEFENDANT
INCORRECTLY IN BOTH ADVERSARY PROCEEDINGS ........... 11

V. PLAINTIFFS' CLAIMS ARE BARRED UNDER 11 U.S.C.
§502(d) BECAUSE PLAINTIFFS EXPRESSLY AGREED TO
ALLOW A-1'S CLAIM BY STIPULATION .................................. 12

CONCLUSION ................................................................................................ 16

#3282923 (154642.002)

## TABLE OF AUTHORITIES

**PAGE**

## CASES

Allen v. Amtrak,
    2004 WL 2830629 (E.D. Pa. 2004) ..................................................................... 7

Caliolo v. Azdel, Inc. (In re Cambridge Indus. Holdings, Inc.),
    2003 WL 21697190 (Bankr. D.Del. July 18, 2003) ................................... 14, 15

Caliolo v. Saginaw Bay Plastics, Inc.,
    2006 WL 516764 (D.Del. Mar. 2, 2006) ......................................................... 14

Caliolo v. TKA Fabco Corp. (In re Cambridge Indus. Holdings, Inc.),
    2003 WL 1818177 (Bankr. D.Del Apr. 2, 2003) ...................................... 14, 15

Eastern Refractories Co. v. Forty Eight Insulations, Inc.,
    187 F.R.D. 503 (S.D.N.Y. 1999) ...................................................................... 9

Gardenhire v. IRS  (In re Gardenhire),
    209 F.3d 1145 (9th Cir. 2000) ......................................................................... 9

Hernandez-Avila v. Averill,
    725 F.2d 25 (2d Cir. 1984) .............................................................................. 12

Hixon v. Highsmith,
    147 F. Supp. 801 (E.D. Tenn. 1957) ................................................................ 6

Homeplace of Am., Inc. v. Salton, Inc. (In re Waccamaw's Homeplace),
    325 B.R. 524(Bankr. D. Del. May 31, 2005) .................................................. 14

In re Itel Corp.,
    17 B.R. 942 (9th Cir. BAP 1982) .................................................................... 9

In re Johns-Manville Corp.,
    ___ F.3d ___, 2010 U.S. App. LEXIS 5877 (2d Cir. 2010) ...................... 10, 11

LaRoche Indus. V. Gen Am. Transp. Corp.,
    284 B.R. 406 (Bankr. D.Del. 2002) ................................................................ 14

Male v. Tops Friendly Markets,
    2008 WL 1836948 (W.D.N.Y. 2008) ............................................................... 6

Rake v. Wade,
    508 U.S. 464 (1993) ......................................................................................... 9

## TABLE OF AUTHORITIES (cont'd)

**PAGE**

Rhythms Netconnections Inc. v. Cisco Systems, Inc. (In re Rhythms Netconnections Inc.),
    300 B.R. 404 (Bankr. S.D.N.Y. 2003)............................................................... 14, 15

Roe v. New York,
    49 F.R.D. 279 (S.D.N.Y. 1970)........................................................................6

Wanamaker v. Columbian Rope Co.,
    713 F. Supp. 533 (N.D.N.Y. 1989)...................................................................6

Zapata v. City of New York,
    502 F.3d 192 (2d Cir. 2007)............................................................................9

**STATUTES**

11 U.S.C. § 546 ...................................................................................................4

11 U.S.C. § 546(a) ..............................................................................................4

11 U.S.C. § 546(c) ..............................................................................................2

11 U.S.C. § 547 ...............................................................................................3, 4

**11 U.S.C. §502(d)** ............................................................................................12

28 U.S.C. §2075 ..................................................................................................9

**OTHER AUTHORITIES**

Fed. R. Bankr. P. ............................................................................................5, 7

Fed. R. Bankr. P. 7003.05 (15th ed. 2007).........................................................5

Fed. R. Bankr. P. 7004 .....................................................................................5, 7

Fed. R. Bankr. P. 7004(a)...................................................................................8

Fed. R. Bankr. P. 7010 .....................................................................................11

Fed. R. Civ P. 10..............................................................................................11

Fed. R. Civ. P. 15.............................................................................................12

Fed. R. Civ. P. 3.............................................................................................4, 5

Fed. R. Civ. P. 4(a) ...........................................................................................5

Fed. R. Civ. P. 4(m) ...............................................................................3, 4, 7, 8

## TABLE OF AUTHORITIES (cont'd)

**PAGE**

Fed. R. Civ. P. 8.................................................................................................16

**RULES**

1 *Moore's Federal Practice* §4.82 [1] (3d ed. 2009)....................................8, 9

*1 Moore's Federal Practice* 3d §3.04 [1] (3d ed. 2007)..............................5

4 Charles Alan Wright & Arthur R. Miller, *Fed. Practice & Procedure* § 1051 (3d ed. 2002, 2009 pocket part)..................................................................................5

4 Charles Alan Wright & Arthur R. Miller, *Fed. Practice & Procedure* § 1056 (3d ed. 2002).....6

Movant A-1 Specialized Services & Supplies, Inc. ("A-1"), by its undersigned attorneys,

Wilentz, Goldman & Spitzer, P.A., hereby joins (the "Joinder") and adopts the arguments set

forth in the following motion (the "Motion") filed by Hewlett-Packard Company and affiliates

(collectively, the "Preference Defendants"):

> MOTION OF HEWLETT-PACKARD COMPANY AND
> AFFILIATES FOR AN ORDER DISMISSING THE
> COMPLAINT WITH PREJUDICE, AND VACATING CERTAIN
> PRIOR ORDERS PURSUANT TO FED. R. CIV. P. 60 AND
> FED. R. BANKR. P. 9024, dated April 9, 2010 [Adv. Pro. No. 07-
> 02449, Docket No. 17] .

A copy of that Motion is annexed hereto as Exhibit 6 for ready reference. The facts set

forth in the Motion are substantially similar with respect to A-1, except as more specifically

stated and amended herein, such that A-1 adopts the arguments contained in the Motion,[1] and any

relief granted for the benefit of one or more of the Preference Defendants should be granted for

A-1. A-1 also has certain additional facts particular to A-1 and supplemental arguments, set

forth below, to present in support of the dismissal of the Complaints (attached hereto as Exhibits

1 and 2).[2]

A-1 supplements and/or amends the facts and law set forth in the Motion[3] as follows:

## STATEMENT OF FACTS

1.      Before and after the commencement of the Debtors' bankruptcy cases, A-1 has

supplied Delphi Automotive Systems LLC ("DAS LLC") with platinum, palladium and rhodium

---

[1] A-1 does not join in the argument set forth in paragraphs 77 and 78 of the Motion since it is factually inapplicable to A-1.

[2] All terms which are used in this document and which are not defined herein shall have the same meaning as set forth in the Motion.

[3] Numerous other motions have been filed by the defendants in the various avoidance actions commenced by the Plaintiffs. The motions seek dismissal of the complaints on various legal grounds. Because the facts relating to those actions are in many ways similar to those found here, A-1 also incorporates all applicable arguments raised by the other defendants in the dismissal motions filed in those actions.

("platinum group metals," also known as "PGM") for use in the manufacturing of automotive components, both through direct sale to DAS LLC and by reclaiming PGM from DAS LLC's automotive manufacturing scrap. Prior to the petition date, A-1 had entered into a reclamation agreement with DAS, LLC, dated September 16, 2002 ("Prepetition PGM Reclamation Agreement") and a supply agreement dated December 1, 2004 ("Prepetition PGM Supply Agreement"). On October 20, 2006, A-1 entered into a postpetition supply agreement with DAS LLC ("Postpetition PGM Supply Agreement").

2.    On October 18, 2005, A-1 submitted a demand to the Debtors asserting a reclamation claim pursuant to 11 U.S.C. § 546(c) arising from the supply of palladium and rhodium prior to the petition date ("Reclamation Demand"). On November 17, 2005, A-1 filed proof of claim number 644 (the "Claim") in the Debtor's bankruptcy proceedings. On February 21, 2006, the Debtors sent A-1 a statement of reclamation to which A-1 did not respond. On October 31, 2006, the Debtors objected to the A-1 Proof of Claim (Docket No. 5452).

3.    On September 21, 2007, DAS LLC and A-1 entered into a Settlement Agreement (annexed hereto as Exhibit 3). The Settlement Agreement terminated the Postpetition PGM Supply Agreement, and replaced it by amending and restating the Prepetition PGM Reclamation Agreement by amendment dated September 28, 2007 and amending and restating the Prepetition PGM Supply Agreement by amendment dated September 21, 2007 (together, the "Amended Agreements"). The Settlement Agreement was memorialized in the Joint Stipulation and Agreed Order Compromising and Allowing Proof of Claim Number 644 (A-1 Specialized Services & Supplies, Inc.) (the "Stipulation") entered October 9, 2007 (Docket No. 10516, annexed hereto as Exhibit 4), which allowed the A-1 Claim against DAS LLC in the amount of $430,384.00 as an allowed general unsecured non-priority claim against the estate of DAS LLC. The Amended

-2-

Agreements continue to govern A-1's relationship with DAS LLC today. Thus, like the Preference Defendants in the Motion, A-1 has been during the pendency of the Debtors' bankruptcy proceedings and both before and after confirmation of their First Amended Plan of Reorganization, an ongoing supplier to the debtors and reorganized debtors.

4.      Based upon the Petition Dates of these bankruptcy cases, the deadline for commencing an adversary proceeding against A-1 on account of an allegedly avoidable preference pursuant to 11 U.S.C. § 547 expired on or before October 14, 2007.

5.      The Plaintiffs' two complaints (the "Complaints") regarding alleged preferential transfers to A-1 were both dated September 26, 2007 and, according to the docket sheet in each case, were filed under seal[4] with the Clerk on September 28, 2007, after execution of the Settlement Agreement and before entry of the Stipulation. The Complaints list the same transfers in amount, each totaling $3,003,377.99, but each Complaint shows slightly different dates for the transfers. Neither Complaint names the defendant correctly: Plaintiffs named as defendant "A 1 Specialized Svc. & Supp. Inc." in Adversary Proceeding 07-02084 and named as defendant "A-1 Specialized Services" in Adversary Proceeding 07-02096, while the entity's correct name is A-1 Specialized Services & Supplies, Inc. Plaintiffs did not serve A-1 with such Complaints until March 19, 2010, and March 30, 2010, respectively, well over two years after the statute of limitations contained in Section 546(a) expired.

---

[4] Since A-1 was on the Debtors' 2002 service list, it apparently received a copy of the original motion (the "Preservation of Estate Claims Procedures Motion") [Docket No. 8905] by the Debtors for an order seeking entry of an order, *inter alia*, establishing certain procedures to govern adversary proceedings, including those commenced under 11 U.S.C. § 547, which (i) permitted the Plaintiffs to file complaints and keep the adversary proceedings under seal; (ii) directed the Clerk of the Court to "defer issuing a summons after the filing of a complaint, unless and until the Debtors intend to pursue the claims in the complaint," (iii) extended the time beyond the initial 120-day period to serve certain adversary summonses and complaints, and (iii) stayed the applicable adversary proceedings until service of process was effected. Since the Debtors did not identify which creditors were the targets for potential avoidance actions the notice of the Motion and its subsequent extensions was wholly inadequate. See *infra* at 11-12.

-3-

6.    The Complaints are sparse in actual fact: failing to identify which of the debtor entities made the alleged transfers, providing no factual description of the nature of the transactions involved and seeking to rely on a simple recitation of some of the legal elements for a prima facie case under 11 U.S.C. § 547.

## SUPPLEMENTAL ARGUMENTS

### I.    THE FILING OF THE COMPLAINTS UNDER SEAL IN 2007 WAS NOT SUFFICIENT TO TOLL THE STATUTE OF LIMITATIONS

7.    Plaintiffs attempted to improperly utilize several procedural devices at once in order to alter A-1's substantive and due process rights as a potential preference defendant in these adversary proceedings. As described at length in their motion dated August 6, 2007 (the "Preservation of Estate Claims Procedures Motion")(Docket No. 8905), the Debtors sought entry of an order seeking, among other things, the establishment of procedures for certain adversary proceedings, in order to enable them to preserve these actions. However, despite benefiting from the Court's orders permitting special procedures for filing and serving the complaints and staying the actions, the statute of limitations set forth in Section 546(a) was not tolled because Plaintiffs did not properly commence these actions. Nowhere do any of this Court's orders, which did permit Plaintiffs to file the complaints under seal, extend the time for service under Rule 4(m), and stay the adversary proceedings until service of process had been effected, specifically provide that the statute of limitations was tolled. See Exhibits E, I, K and M to the Motion. Thus, the question is whether the filing of the complaints under seal was adequate within the meaning of Rule 3 to toll the statute of limitations set forth in 11 U.S.C. § 546.

8.    Here, the statute of limitations of Section 546(a) was not tolled by the commencement of these actions because service of the summons and complaint did not follow within a reasonable period of time. In other words, Plaintiffs did not "commence" these actions

-4-

in 2007 within the meaning of Rule 7003 when they filed the Complaints with the bankruptcy court under seal.

9.    Commencement of a civil action is defined in Fed. R. Civ. P. 3, made applicable by Bankruptcy Rule 7003. "A civil action is commenced by filing a complaint with the court." Rule 3 cannot be read in a vacuum. As *Collier on Bankruptcy* points out, Rule 7003 and Rule 7004 are "closely related." 10 *Collier on Bankruptcy* ¶ 7003.05 at 7003-5 (15th ed. 2007) . "Civil Rule 4(a) provides that when the complaint is filed the clerk **shall** issue a summons and deliver it for service, along with a copy of the complaint, to the plaintiff or plaintiff's attorney. Thus, an adversary proceeding is commenced when, under Rule 7003, the complaint is filed and such filing pursuant to Rule 7003 starts the procedural process set forth in Rule 7004." *Id.* (emphases added). See *1 Moore's Federal Practice* 3d §3.04 [1] (3d ed. 2007). ("Rule 3 must be construed with Rule 4, which governs the service of summonses. Complaints filed under Rule 3 apply to cases and against parties where service has been effected pursuant to Rule 4"). "...Rule 3 works in tandem with several other rules to ensure that defendants receive fair notice of the claims against them, the relief sought, and the consequences of their failure to defend." 4 Charles Alan Wright & Arthur R. Miller, *Fed. Practice & Procedure* § 1051 at page 215 (3d ed. 2002, 2009 pocket part).

10.    The original 1937 Advisory Committee Note on Rule 3 identified the issue of whether the mere filing of a complaint under Rule 3 could toll the statute of limitations or whether more was required, and answered it with the requirement of Rule 4(a) for prompt issuance and service of complaints.

> This rule provides that the first step in an action is the filing of the complaint. **Under Rule 4(a) this is to be followed forthwith by issuance of a summons and its delivery to an officer for service.** Other rules providing for dismissal for failure to

-5-

> prosecute suggest a method available to attack unreasonable delay in prosecuting an action after it has been commenced. **When a federal or state statute of limitations is pleaded as a defense, a question may arise under this rule whether the mere filing of the complaint stops of the running of the statute, or whether any further step is required, such as, service of the summons and complaint** or their delivery to the marshal for service. **The answer to this question may depend on whether it is competent for the Supreme Court , exercising its power to make rules of procedure without affecting substantive rights, to vary the operation of statutes of limitations. The requirement of Rule 4(a) that the clerk shall forthwith issue the summons and deliver it to the marshal for service will reduce the chances of such a question arising.**

(emphasis added).

The Advisory Committee did not answer its own question, "placing its faith in the command in the original text of Rule 4 that a summons be issued "forthwith" to avoid controversies over the timing of service of process. 4 Charles Alan Wright & Arthur R. Miller, *Fed. Practice & Procedure* § 1056 at page 239 (3d ed. 2002). Service within a reasonable time is needed to satisfy or toll the statute of limitations. Hixon v. Highsmith, 147 F. Supp. 801, 803 (E.D. Tenn. 1957)(Rules 3 and 4 "contemplate the issuing of a summons and the placing of a summons in proper channels for service in order to toll the statute of limitations").

11.    Courts in this Circuit have limited the impact of the mere filing of a complaint when the plaintiff has otherwise failed to follow necessary  procedures provided in the rules of court. See Male v. Tops Friendly Markets, 2008 WL 1836948 at *5 (W.D.N.Y. 2008) (original complaint did not satisfy the statute of limitations because it did not contain factual allegations and thus did not provide fair notice of the claim); Wanamaker v. Columbian Rope Co., 713 F. Supp. 533, 538-539 (N.D.N.Y. 1989) (failure to pay statutorily required filing fee means that complaint was not filed within the meaning of Rule 3); Roe v. New York, 49 F.R.D. 279, 281 (S.D.N.Y. 1970) (filing of a complaint in which the names of all plaintiffs were fictitious was

-6-

ineffective to commence an action); <u>Allen v. Amtrak</u>, 2004 WL 2830629 at *3 (E.D. Pa.
2004)("defective pleading fails to provide adequate notice to unnamed defendants, fails to
inform the public of facts surrounding court proceedings, and/or fails to apprise named
defendants of the identities of additional plaintiffs or of parties similarly situated").

12.    Timely disclosure of the contents of a complaint is an important part of the statute
of limitations, because notice enables a defendant to gather the appropriate facts and prepare its
defense before the facts and witnesses are dissipated.  Thus, the instant actions were not properly
commenced in 2007 within the meaning of Bankruptcy Rule 7003 and should be dismissed as
time-barred for lack of service within an appropriate period of time.

## II.    RULE 4(m) DOES NOT LEND ITSELF TO PROSPECTIVE APPLICATION

13.    Bankruptcy Rule 7004 makes Rule 4(m) applicable in adversary proceedings.
Rule 7004 is about service of process on defendants.  The subject matter and purpose of Rule 4 is
**disclosure**, in other words, *service of the complaint* to give the defendant timely notice of the
action being brought against him.  The use of Rule 4(m) as a device to permit the indefinite
tolling of a statute of limitations by allowing service of a summons and copy of a complaint to be
prospectively delayed more than 120 days after a complaint *is expected to be filed* is not
contemplated.  The assumption made by Rule 4(m) is backward looking:  that the complaint has
been filed already and service diligently attempted before an extension is sought:  "If a defendant
is not served within 120 days after the complaint is filed . . ." (emphasis added).   The Rule
simply does not lend itself to prospective application (particularly without notice to defendants)
in advance of filing a complaint, since that would mean that plaintiff had not even attempted
service.

#3283383 (154642.002)

14.    Rather, Rule 4(m) has been used almost exclusively[5] when plaintiff's good-faith attempt to effect service within the 120 days of the filing of the complaint has for some reason been unsuccessful. Fed. R. Civ. P. 4(m), made applicable by Fed. R. Bankr. P. 7004(a), provides, in relevant part:

> *Time Limit for Service.* If a defendant is not served within 120 days after the complaint is filed, the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

15.    Typically, extensions of time are granted for good cause in the event plaintiff, despite the exercise of diligence, has been unable to serve a defendant within the 120-day period. The court must grant the extra time if the plaintiff demonstrates good cause, and the plaintiff has the burden of demonstrating good cause. See 1 *Moore's Federal Practice* §4.82 [1] at 4-117 (3d ed. 2009). "Good cause" exists only in "exceptional circumstances where the plaintiff's failure to serve process in a timely manner was the result of circumstances beyond its control." Eastern

---

[5] While Plaintiffs cited the example of *Ames Department Stores, Inc.*, Case No. 01-42217 (REG)(Bankr. S.D.N.Y.) (Order Extending Time For Service of Process With Respect to Certain Preference Actions Feb. 3, 2004, Docket No. 2524), in their Preservation of Estate Claims Procedures Motion, page 26 n.17, this example is factually and legally inapposite.

Although Judge Gerber did rely on 4(m) to extend the deadline for service in the *Ames* case, an exhibit to the motion disclosed the adversary defendants' identities for all the world to see. See Motion of Debtors for Order and Scheduling Order Extending the Time for Service of Process With Respect to Certain Preference Actions at 2 and Exhibit B ("Ames Motion," Docket No. 2464). More importantly, the complaints had already been filed when the relief was requested, Ames Motion at 3, and only one extension of time to complete service was requested. Also, the defendants in the adversary proceedings involved were vendors or providers of services to the Ames debtors, but the alleged preferential payments were made to a commercial factor and not directly to the defendants in those cases.

The debtors in *Ames* had already commenced actions against the commercial factors and had yet to conclude whether or not a viable cause of action existed against the vendors themselves. Cause for the extension was provided by plaintiffs' continuing efforts to obtain discovery from the factors and the vendors as to their contractual and payment arrangements. Ames Motion at 3, 4. Finally, and most importantly, the order referred to as an example permitted only a simple Rule 4 (m) extension and not the combination of procedural maneuvers sought by Plaintiffs in this case: filing the complaints under seal in derogation of the disclosure requirements of Rule 3; deferral of issuing a summons after the filing of a complaint, staying the applicable adversary proceedings until service of process was effected, plus the multiple extensions supposedly pursuant to Rule 4(m).

-8-

Refractories Co. v. Forty Eight Insulations, Inc., 187 F.R.D. 503, 505-6 (S.D.N.Y. 1999).[6]

"Generally a court will not recognize good cause for failing to effect timely service solely because plaintiff will be barred by the statute of limitations from pursuing a new action." See 1 Moore's Federal Practice 3d §4.82 [2] at 4-120 (3d ed. 2009). To grant an extension in advance solely to toll the statute of limitations is not good cause either—especially where, as in this case, Plaintiffs did not even attempt to serve the defendants within the allotted 120 day time period.

16.    Rather, Plaintiffs sought permission in advance for an extension of the 120 days—before they had even filed the complaints. The extension was sought, together with the other relief requested in the Preservation of Estate Claims Procedures Motion, in order to secretly enlarge the statute of limitations period to bring "pocket" preference actions against suppliers in this bankruptcy case. While it has suggested there may be some circumstances under which an extension could be granted absent good cause, Zapata v. City of New York, 502 F.3d 192, 196 (2d Cir. 2007) (dismissing plaintiff's complaint where record showed delay and

---

[6] By definition, this cannot be warranted by good cause—because the intention and effect of the Rule 4 (m) extension sought by Plaintiffs was to affect defendants' substantive rights under the preference statutes. Under 28 U.S.C. §2075, only the Supreme Court has the power to prescribe practice and procedure in cases under title 11. Even where the Supreme Court is involved in the rulemaking, "[s]uch rules shall not abridge, enlarge, or modify any substantive right." It was Congress' intention in enacting Title 11 that the rule-making power of the Supreme Court be limited and exercised consistently with the substantive provisions of Title 11. In re Itel Corp., 17 B.R. 942, 944 (9th Cir. BAP 1982).

A preference action is a creature of statute, not common law, and therefore is defined and restricted by the statutes governing it. The Supreme Court has noted that when interpreting the Bankruptcy Code, "[w]here the statutory language is clear, our 'sole function . . . is to enforce it according to its terms.'" Rake v. Wade, 508 U.S. 464, 471 (1993) (citation omitted)(superseded by statute on other grounds). "Close adherence to the text of the relevant statutory provisions and rules is especially appropriate in a highly statutory area such as bankruptcy." Gardenhire v. IRS (In re Gardenhire), 209 F.3d 1145, 1148 (9th Cir. 2000).

The procedures followed in this case to "get around" the Section 546 (a) requirements render the two-year limitations period set forth in that statute meaningless: if the standards adopted by this Court were adopted by other bankruptcy courts, preference actions may be "preserved" indefinitely upon a showing that the debtor wants to avoid "unnecessarily alarming potential defendants," see Preservation of Estate Claims Procedures Motion Claims Preservation Motion ¶ 37, so that it can lull them into settlements, have its plan confirmed, and then re-launch an attack held in abeyance out of view. With no notice to defendants of the pendency of the actions, defendants have no opportunity to preserve records and witnesses in support of their own defenses. Moreover, defendants that are not aware of actions will not be able to make disclosure of the pendency of such actions to their shareholders as is required by federal securities laws.

neglect in effecting service), the Second Circuit, in weighing the prejudice to each party in

Zapata noted that "[i]t is obvious that any defendant would be harmed by a generous extension of

the service period beyond the limitations period for the action, especially if the defendant had no

actual notice of the existence of the complaint until the service period had expired."  502 F.3d at

198 (emphasis added). That is exactly what happened to A-1 here.

### III.    PURSUANT TO RECENT SECOND CIRCUIT AUTHORITY, THE EXTENSION ORDERS CANNOT BIND DEFENDANTS IN THESE PREFERENCE ACTIONS FOR LACK OF DUE PROCESS

17.    A-1 and other undisclosed respondents/defendants of the Preservation of Estate

Claims Procedures Motion (and its several extensions) were not provided constitutionally

sufficient notice.  They were provided no effective notice, thus rendering the  Preservation of

Estate Claims Procedures Orders and the Extension Orders void.

18.    The Second Circuit's March 22, 2010 decision in In re Johns-Manville Corp., ___

F.3d __, 2010 U.S. App. LEXIS 5877 (2d Cir. 2010) found that a party's due process rights were

violated even though the party, Chubb Indemnity Insurance, had received a form of notice of a

hearing that led to the order it sought to later contest.  Where the party receiving notice would

have to have been supernaturally prescient as to the potential impact of the order that could be

entered after the hearing because it was lacking sufficient information at the time, that notice was

constitutionally insufficient.

19.    The Johns-Manville court held that based on the information provided in the

notice, Chubb could not have known that its rights were being affected. The court elaborated:

> In order to comprehend that the contemplated channeling
> injunction would bar Chubb's *in personam*, non-derivative claims
> against Travelers, the recipient of this Notice would have to predict
> that the bankruptcy court would exceed its in rem jurisdiction in
> entering the 1986 Orders.  Such a recipient would also have to be
> presumed to know--or be able to discern from the 1984 Notice
> document--the factual extent of Travelers relationship with

-10-

> Manville, which ultimately served as the lynchpin of the
> bankruptcy court's 2004 interpretation of the 1986 Orders.
> [citation omitted] The bankruptcy court's factfindings are presently
> uncontested, and Chubb was undoubtedly a "sophisticated insurer"
> in the early 1980s. [citation omitted] But we cannot attribute to
> Chubb the sort of prescience that these predictions would have
> required, and the August 2, 1984 Notice was insufficient to
> communicate these issues.

Id. at *63-*64.

20.    The same is the case with A-1—the notice of the Preservation of Estate Claims Procedures Motion did not alert it to the fact that two adversary complaints were to be filed under seal against A-1, the Plan made no reference to any adversary proceeding against A-1, and the Debtors continued to represent that they did not intend to pursue the overwhelming majority of the avoidance actions they had filed. Moreover, A-1 was in the final stages of inking its settlement agreement with the debtors at the time. As in the Johns-Manville case, it would have been impossible for A-1 to know that preference actions were to be secretly filed against it and that its rights vis-a-vis those actions would be affected absent its appearance and objection to the Preservation of Estate Claims Procedures Motion and extensions. Thus, the Preservation of Estate Claims Procedures Orders and the Extension Orders cannot be binding on A-1 because of the lack of due process attendant upon their entry.

### IV.    PLAINTIFFS HAVE NAMED THE DEFENDANT INCORRECTLY IN BOTH ADVERSARY PROCEEDINGS

21.    A-1's correct name is "A-1 Specialized Services & Supplies, Inc." In Adversary Proceeding 07-02084, Plaintiffs named "A 1 Specialized Svc. & Supp. Inc." and in Adversary Proceeding 07-02096 named "A-1 Specialized Services". These entities do not exist. Thus, A-1 moves to dismiss the cases for failure to name the proper party in each complaint. See Fed. R. Civ Pro. 10, incorporated by reference in Bankruptcy Rule 7010 ("The title to the complaint must name all the parties . . ."). Should the Plaintiffs wish to amend, they must seek leave of

-11-

court pursuant to Rule 15. Hernandez-Avila v. Averill, 725 F.2d 25, 28 n.4 (2d Cir. 1984). The Debtors were engaged with A-1 on multiple levels at the time. Debtors were doing their preference analysis and drafting these complaints, filing a proof of claim, sending a statement of reclamation, negotiating a post-petition supply agreement, objecting to A-1's proof of claim and reviewing A-1's responsive pleadings, then - most noteably -  negotiating and executing a comprehensive settlement agreement with A-1 dated one week prior to the secret complaints. There is no debtor excuse for mis-naming its ongoing trading partner in these circumstances.

## V.    PLAINTIFFS' CLAIMS ARE BARRED UNDER 11 U.S.C. §502(d) BECAUSE PLAINTIFFS EXPRESSLY AGREED TO ALLOW A-1'S CLAIM BY STIPULATION

22.    Section 502(d) of the Bankruptcy Code requires disallowance of a claim of an entity which has received a preferential transfer:

> Notwithstanding subsections (a) and (b) of this section, the court **shall** disallow any claim of any entity from which property is recoverable under sections 542, 543, 550, or 553 of this title . . . unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section 522(i), 542, 543, 550, or 553 of this title.

11 U.S.C. §502(d). (emphasis added)

23.    Following A-1's proof of claim and formal debtor objection thereto, the parties negotiated over the course of a year and entered into a consent order granting A-1 an allowed claim in a modified amount. As set forth in the Statement of Facts above, on September 21, 2007, DAS LLC and A-1 entered into a Settlement Agreement allowing A-1's claim against DAS LLC (which had originally been asserted in A-1's proof of claim #644 in an unliquidated amount) in the amount of $430,384.00 as an allowed general unsecured non-priority claim against the estate of DAS LLC (Exhibit 3). The Settlement Agreement was memorialized in the

-12-

Stipulation, entered October 9, 2007 (Exhibit 4). This Court approved and signed the Stipulation, thereby deeming A-1's claim allowed in the amount of $430,384.00.[7] *Meanwhile, the Plaintiffs' two complaints (the "Complaints") regarding alleged preferential transfers to A-1 were both dated September 26, 2007 and, according to the docket sheet in each case, were filed under seal with the Clerk on September 28, 2007, just days after the execution of the Settlement Agreement and just days before presenting the resulting Stipulation to the Court for entry.*

24.    Based upon the language of section 502(d), Plaintiffs are barred from bringing this adversary proceeding. The claims alleged in the Complaints are related to the Prepetition PGM Reclamation Agreement and the Prepetition PGM Supply Agreement; these claims have already been adjudicated by this Court. If Plaintiffs wished to address allegations of preferential transfers to A-1, they could have and should have done so during the claims allowance process. Plaintiffs may not now re-litigate claims they have already settled, and for which settlement has been approved by order of this Court.

25.    The Debtors were charged with examining proofs of claim and objecting to the allowance of any improper claim. In their unique position, the Plaintiffs clearly knew about the alleged preferential transfers to A-1 prior to the adjudication of A-1's claim, and it was incumbent upon the Plaintiffs to raise any known objection contemporaneously: *the preference complaints were filed in late September 2007, within days of entering into the Settlement Agreement and Stipulation allowing A-1's claim.*

---

[7] Two and a half years later, in April of 2010 A-1 received a notice to the effect that the Debtors asserted they were "preserving" their objection to A-1's claim because of a "preference-related claim." See Docket No. 19770. However, the Debtors did not seem to have been aware that the claim was previously stipulated in a fixed amount because the claim amount is shown as "unliquidated" on the notice. The notice is attached hereto as Exhibit 5.

26.     Several courts have had an opportunity to consider whether debtors waive their right to recover on an alleged preferential transfer to a creditor whose proof of claim has already been adjudicated and whose claim has been allowed by order of the court.  The only reported case on point in this District seems to be Rhythms Netconnections Inc. v. Cisco Systems, Inc. (In re Rhythms Netconnections Inc), 300 B.R. 404 (Bankr. S.D.N.Y. 2003), which found that Section 502 (d) should not bar assertion of preference claims under the facts of that case.  Other courts have split on the issue.  See e.g,. Caliolo v. Azdel, Inc. (In re Cambridge Indus. Holdings, Inc.), 2003 WL 21697190, *5 (Bankr. D.Del. July 18, 2003) ("Cambridge II") (holding that if a claim has been allowed, there can no longer be an avoidable preference transfer due from that claimant; Caliolo v. TKA Fabco Corp. (In re Cambridge Indus. Holdings, Inc.), 2003 WL 1818177, *2 (Bankr. D.Del Apr. 2, 2003) ("Cambridge I") (holding that preference claim brought after claim was already allowed was barred on 'the principles of claim preclusion'); LaRoche Indus. v. Gen. Am. Transp. Corp., 284 B.R. 406, 408-09 (Bankr. D.Del. 2002) (concluding that "§502(d) stands for the proposition that if a claim is allowed there is no longer a voidable transfer due from that claimant"); but see Caliolo v. Saginaw Bay Plastics, Inc., 2006 WL 516764 (D.Del. Mar. 2, 2006) (holding that there is no waiver of preference claim if not brought during the claims allowance process); Homeplace of Am., Inc. v. Salton, Inc. (In re Waccamaw's Homeplace), 325 B.R. 524, 535 (Bankr. D. Del. May 31, 2005) (same).

27.     However, Judge Lifland distinguished Rhythms on its facts from other cases which had held differently.  In Rhythms, the settlement as to the creditor's contracts and claim was signed less than two months after the petition date:  "[t]he Debtors and their statutory Creditors' Committee were in triage and were far from a point where they could be expected to have commended a preference analysis or a claims review." Rhythms, 300 B.R. at 409.

-14-

A-1 contends that those decisions holding that a preference action is barred where a creditor's claim has already been deemed allowed, *particularly where the debtor has already conducted its "preference analysis" and already secretly filed the preference claim with the court, before the settlement is finalized,* are the more reasoned decisions in this situation given both the plain language and legislative history of Section 502(d).

28.    Judge Lifland pointed out in the <u>Rhythms</u> decision that in <u>Cambridge I</u>, the Court decided against the sort of "sandbagging" that can happen after a claim is resolved if the debtor commences an adversary proceeding alleging the receipt of an avoidable preference. <u>Rhythms</u>, 300 B.R. at 409 (citing <u>Cambridge I</u> at *2). Similarly, in <u>Cambridge II</u>, "the debtor filed a preference action before the creditor filed its proof of claim, "allowing enough time to combine and determine both cases correctly." <u>Rhythms</u>, 300 B.R. at 409 (citing <u>Cambridge II</u> at *3).

29.    A-1's situation most closely matches the factual circumstances in <u>Cambridge II</u>, although A-1's situation is the more egregious because, as the stipulation was being negotiated, the Debtors knew that they had already filed secret preference actions against A-1, whereas in <u>Cambridge II</u>, the creditor was aware that an adversary proceeding was pending. <u>Cambridge II</u> at *3. Therefore, this Court should find that Section 502(d) of the Bankruptcy Code precludes Plaintiffs' pursuit of any recovery of any allegedly preferential transfers from A-1. Since the Court has already entered an Order allowing A-1's claim in a specific and fixed amount, resolving the debtors/Plaintiffs' objections to a A-1's 'unliquidated' proof of claim, implicit in that resulting Allowance Order is a determination that A-1 was not the recipient of any preferential payment.

## CONCLUSION

WHEREFORE, A-1 respectfully requests that the Court enter an order (i) dismissing the

Complaints for failing to state a claim upon which relief can be granted and as barred by judicial

estoppel and res judicata; (ii) to the extent required, vacating each of the Preservation of Estate

Claims Procedures Orders and the Extension Orders  and the Modified Plan Confirmation Order

(to the extent it allows for retention of these causes of action), as against A-1; (iii) dismissing the

Complaints for failure to satisfy Rule 8; and (v) for such other and further relief as this Court

may deem necessary or appropriate in the circumstances.

Dated:   Woodbridge, New Jersey
         May 12, 2010

                                        Respectfully submitted,


                                        /s/ Deirdre Woulfe Pacheco


                                        By: _____
                                               Deirdre Woulfe Pacheco, Esq.

                                        WILENTZ, GOLDMAN & SPITZER, P.A.
                                        David H. Stein, Esq.
                                        Deirdre Woulfe Pacheco, Esq.
                                        Letitia Accarrino, Esq.
                                        90 Woodbridge Center Drive
                                        Suite 900, Box 10
                                        Woodbridge, NJ  07095
                                        (732 ) 636 -8000
                                        110 William Street
                                        26th Floor
                                        New York, New York 10038-3927
                                        Attorneys for A-1 Specialized
                                        Services & Supplies, Inc.

-16-

#3283383 (154642.002)