# EXHIBIT E

## SETTLEMENT AGREEMENT

THIS AGREEMENT, dated as of September 21, 2007 (this "Settlement Agreement"), is entered into by and between A-1 Specialized Services & Supplies, Inc. ("A-1") and Delphi Automotive Systems LLC ("DAS LLC").

RECITALS:

WHEREAS, on September 16, 2002, DAS LLC and A-1 entered into an agreement (the "PGM Reclamation Agreement"), pursuant to which A-1 agreed to reclaim certain platinum group metals ("PGM") received from and on behalf of DAS LLC.

WHEREAS, on December 1, 2004, DAS LLC and A-1 entered into a Platinum Group Metals Supply Agreement (the "Prepetition PGM Supply Agreement"), pursuant to which A-1 agreed to supply DAS LLC with Palladium and Rhodium metals.

WHEREAS, on October 8, 2005 (the "Petition Date"), Delphi Corporation ("Delphi"), together with certain of its U.S. affiliates, including DAS LLC (collectively, the "Debtors"), filed voluntary petitions under chapter 11 of title 11 of the Bankruptcy Code, in the United States Bankruptcy Court for the Southern District of New York (the "Delphi Bankruptcy Court").

WHEREAS, on October 18, 2005, A-1 submitted a demand to the Debtors asserting a reclamation claim in the amount of $430,384.00 arising from the supply of Palladium and Rhodium prior to the Petition Date (the "Reclamation Demand").

WHEREAS, on February 21, 2006, the Debtors sent a statement of reclamation to A-1 (the "Statement of Reclamation") with respect to the Reclamation Demand, whereby the Debtors asserted that the valid amount of the Reclamation Demand is $126,839.25 (the "Reclamation Claim"), subject to the Debtors' right to seek, at any time, a judicial determination that certain reserved defenses (the "Reserved Defenses") to the Reclamation Claim are valid.

WHEREAS, A-1 failed to respond to the Statement of Reclamation. Thus, pursuant to the Amended Final Reclamation Order Under 11 U.S.C. §§ 362, 503, And 546 And Fed. R. Bankr. P. 9019 Establishing Procedures For The Treatment Of Reclamation Claims (Docket No. 881) entered by the Delphi Bankruptcy Court on November 4, 2005, A-1 has been deemed to have consented to the amount set forth in the Statement of Reclamation, subject to the Reserved Defenses.

WHEREAS, on November 17, 2005, A-1 filed proof of claim number 644 against Delphi, asserting a secured claim in an unliquidated amount (the "Claim") arising from the supply of Palladium and Rhodium, which metals are also subject to the Reclamation Demand, prior to the Petition Date.

WHEREAS, on October 20, 2006, DAS LLC and A-1 entered into a Platinum Group Metals Supply Agreement pursuant to which A-1 agreed to supply DAS LLC with Palladium metal (the "Postpetition PGM Supply Agreement," and together with the PGM Reclamation Agreement and the Prepetition PGM Supply Agreement, the "Agreements").

WHEREAS, on October 31, 2006, the Debtors objected to the Claim pursuant to the Debtors' (i) Third Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (a) Claims With Insufficient Documentation, (b) Claims

1



Unsubstantiated By Debtors' Books And Records; And (c) Claims Subject To Modification And (ii) Motion To Estimate Contingent And Unliquidated Claims Pursuant To 11 U.S.C. § 502(c) (Docket No. 5452) (the "Third Omnibus Claims Objection").

WHEREAS, on November 20, 2006, A-1 filed its Response To Third Omnibus Claims Objection By A-1 Specialized Services & Supplies, Inc., Claimant (Docket No. 5882) (the "Response").

WHEREAS, on June 6, 2007, the Debtors filed a motion (Docket No. 8179) seeking authority from the Delphi Bankruptcy Court to, among other things: (a) sell their global catalyst business (the "Catalyst Business"); and (b) pursuant to section 365 of the Bankruptcy Code, assume and assign the Agreements (among other agreements) to the purchaser of the Catalyst Business.

WHEREAS, pursuant to objections filed by A-1 on July 18, 2007 (Docket No. 8670) and August 6, 2007 (Docket No. 8977), A-1 opposed the assumption and assignment of the Agreements to the purchaser of the Catalyst Business.

WHEREAS, the Debtors removed the Agreements from those that will be assumed and assigned to the purchaser of the Catalyst Business.

WHEREAS, A-1 currently owes to DAS LLC 348.079 troy ounces of Platinum, 3,787.253 troy ounces of Palladium and 292.688 troy ounces of Rhodium under the PGM Reclamation Agreement.

WHEREAS, pursuant to the PGM Reclamation Agreement, DAS LLC currently holds as surety metal securing A-1's performance under the PGM Reclamation Agreement, 500 troy ounces of A-1's Platinum, 3,000 troy ounces of A-1's Palladium and 200 troy ounces of A-1's Rhodium.

WHEREAS, DAS LLC and A-1 have agreed to enter into this Settlement Agreement to: (i) net and deliver the PGM each party owes to the other; (ii) consensually amend the Prepetition PGM Supply Agreement and the PGM Reclamation Agreement; (iii) consensually terminate the Postpetition PGM Supply Agreement; (iv) resolve the Third Omnibus Claims Objection with respect to the Claim; and (v) withdraw the Reclamation Demand.

WHEREAS, on June 26, 2007, the Delphi Bankruptcy Court entered that certain Amended And Restated Order Under 11 U.S.C. §§ 363, 502, And 503 And Fed. R. Bankr. P. 9019(b) Authorizing Debtors To Compromise Or Settle Certain Classes Of Controversy And Allow Claims Without Further Court Approval (Docket No. 8401) (the "Settlement Procedures Order"), pursuant to which the Debtors are authorized to settle certain claims and classes of controversy, including, but not limited to, the allowance of claims within those classes, in the Delphi Bankruptcy Cases without further court approval. Pursuant to the Settlement Procedures Order, the Debtors will seek authority to settle the claims as set forth herein.

NOW THEREFORE, in consideration of the premises set forth above and by execution of this Settlement Agreement, DAS LLC and A-1 agree as follows:

1. **Netting And Delivery Of PGM.** After netting the PGM, and contemporaneously with A-1's performance of its obligations under Section 3 hereof, the parties agree to deliver on

2



September 28, 2007, to the existing INCO vault location in Acton, England (the "INCO Vault"), the PGM each party owes to the other as follows:

    a. **Platinum.** DAS LLC agrees to deliver 151.921 troy ounces of Platinum to A-1.

    b. **Palladium.** A-1 agrees to deliver 797.253 troy ounces of Palladium to DAS LLC.

    c. **Rhodium.** A-1 agrees to deliver 92.688 troy ounces of Rhodium to DAS LLC.

2. **Amendment And Termination Of The Agreements.** DAS LLC and A-1 agree that, in consideration for the agreement to net and deliver PGM and to deposit Surety PGM (as defined below), each of the Agreements will be amended and/or terminated, as the case may be, effective as of the closing date of the sale of the Catalyst Business (the "Effective Date"), as follows:

    a. **Amended Prepetition PGM Supply Agreement.** The Prepetition PGM Supply Agreement is amended and restated pursuant to the Amendment To Platinum Group Metals Supply Agreement Between Delphi Automotive Systems LLC And A-1 Specialized Services (the "Amended Supply Agreement"). A copy of the Amended Supply Agreement is attached hereto as Exhibit A.

    b. **Amended PGM Reclamation Agreement.** The PGM Reclamation Agreement is amended and restated pursuant to the Award Letter Amendment (the "Amended PGM Reclamation Agreement", and together with the Amended Supply Agreement, the "Amended Agreements"). A copy of the Amended PGM Reclamation Agreement is attached hereto as Exhibit B.

    c. **Termination Of The Postpetition PGM Supply Agreement.** The Postpetition PGM Supply Agreement is terminated without penalty or damages from either party to the other, and such agreement shall be of no further force and effect.

3. **Surety PGM Or Letter Of Credit.** Contemporaneously with the delivery of PGM as set forth in Section 1 above, and to secure its obligations under the Amended PGM Reclamation Agreement, A-1 agrees to either (i) deposit PGM (the "Surety PGM") on September 28, 2007 in a new Delphi account to be established at the INCO Vault, or (ii) provide a letter of credit (the "LOC") as follows:

    a. **Value.** From the date on which A-1 deposits the Surety PGM or provides the LOC to the Effective Date, the value of the Surety PGM or LOC must be a minimum of $2 million and a maximum of $2.5 million. From and after the Effective Date, A-1's Surety PGM and LOC requirements will be as set forth in the Amended PGM Reclamation Agreement. The value of the PGM (to the extent Surety PGM is used) will be calculated by the prior month average of the LPPM afternoon fix for Platinum and Palladium.

3



    b.    **LOC.** The LOC must be approved by DAS LLC and must be from a bank or other surety satisfactory to DAS LLC.

    c.    **Quantities Of Surety PGM.** The initial target levels of the Surety PGM are 1,000 troy ounces of Platinum and 3,000 troy ounces of Palladium.

    d.    **Failure To Perform.** If A-1 fails to perform any of its obligations under the Amended PGM Reclamation Agreement, DAS LLC is authorized to utilize the Surety PGM or draw down on the LOC to satisfy any amounts owed by A-1 to DAS LLC. If DAS LLC utilizes the Surety PGM or draws down on the LOC to satisfy such amounts, A-1 must, within thirty (30) days after notice of such utilization, replenish the Surety PGM or the LOC to a level that satisfies the requirements of Section 3.A above.

4.    **Section 365 Of The Bankruptcy Code.**

    a.    **Reservation Of Rights.** Subject to Section 4.b below, for the avoidance of doubt, neither this Settlement Agreement nor the Amended Agreements: (i) modify the manner in which section 365 of the Bankruptcy Code applies to such agreements, i.e. for the avoidance of doubt, section 365 of the Bankruptcy Code applies the same to the Prepetition PGM Supply Agreement and the PGM Reclamation Agreement prior to the Effective Date as it will to the Amended Agreements following the Effective Date; (ii) constitute a waiver of the Debtors' rights to reject the Amended Agreements or any other agreement, contract, purchase order or other document under section 365 of the Bankruptcy Code; or (iii) constitute an approval or assumption of the Amended Agreements or any other agreement, contract, purchase order or other document under section 365 of the Bankruptcy Code or any other applicable law, all of the Debtors' rights with respect to which are expressly reserved.

    b.    **Assumption Of The Amended Agreements.** DAS LLC agrees that, subject to the (i) effectiveness of the Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession (the "Plan") and (ii) consummation of this Settlement Agreement, it will assume the Amended Agreements pursuant to Article VIII of the Plan. A-1 agrees that it will not object to, or otherwise oppose, such assumption of the Amended Agreements.

5.    **Allowed General Unsecured Non-Priority Claim And Cure Amount.** DAS LLC acknowledges and agrees that the Claim shall be allowed against DAS LLC in the amount of Four Hundred Thirty Thousand, Three Hundred Eighty-Four Dollars and Zero Cents ($430,384.00) (the "Agreed-Upon Claim"). The Agreed-Upon Claim shall be treated as a prepetition general unsecured non-priority claim. The amount of the Agreed-Upon Claim also constitutes the total amounts owing for prepetition arrearages (the "Cure Amount") under the Amended Agreements and the total amount of A-1's cure claim (the "Cure Claim") resulting from the assumption of the Amended Agreements. Payment or distribution on account of the Cure Claim in the amount of the Cure Amount shall satisfy in full A-1's Agreed-Upon Claim.



6.  **Withdrawal Of Reclamation Demand.** A-1 agrees that, subject to the (i) effectiveness of the Plan and (ii) consummation of this Settlement Agreement, A-1 shall withdraw the Reclamation Demand with prejudice.

7.  **Waiver Of Rights.**

    a.  **A-1.** A-1, on its behalf and on behalf of each of its predecessors, successors, assigns, parents, subsidiaries and affiliated companies, and each of their former, current and future officers, directors, owners, employees and other agents (the "A-1 Releasing Parties") hereby acknowledges and agrees that the allowance of the Agreed-Upon Claim is in full satisfaction of the Claim (including, without limitation, the Reclamation Demand) and hereby waives any and all rights to assert, against any and all of the Debtors, that the Claim is anything but a prepetition general unsecured non-priority claim against DAS LLC. The A-1 Releasing Parties further release and waive any right to assert any other claim, cause of action, demand or liability of every kind and nature whatsoever, including those arising under contract, statute or common law, whether or not known or suspected at this time, which relate to the Claim and/or the Agreements, including, but not limited to, the amendment or termination of the Agreements, and which the A-1 Releasing Parties have, ever had or hereafter shall have against the Debtors based upon, arising out of, related to or by reason of any event, cause, thing, act, statement or omission occurring on or before the Effective Date.

    b.  **DAS LLC.** To the extent, if any, that A-1 violated the automatic stay provisions of section 362 of the Bankruptcy Code in connection with the PGM Reclamation Agreement, DAS LLC, on its behalf and on behalf of each of its predecessors, successors, assigns, parents, subsidiaries and affiliated companies, and each of their former, current and future officers, directors, owners, employees and other agents, hereby releases A-1 from and of any claims they have or may have on account of such violations, if any.

8.  **Withdrawal Of Response.** A-1 agrees that, within three (3) business days following the Effective Date, it shall withdraw its Response to the Third Omnibus Claims Objection with prejudice.

9.  **Confidentiality.** Each party agrees to keep the Amended Agreements, this Settlement Agreement, and the terms thereof (collectively, the "Confidential Information") confidential and except as otherwise set forth in this paragraph, required by the Settlement Procedures Order, by the Delphi Bankruptcy Court, or by applicable law, each party will disclose the Confidential Information only to (i) its management personnel who need to know such information to implement the terms of this Agreement and (ii) its retained legal counsel and other retained advisors with whom the disclosing party has determined to consult with in connection with implementation of or performance under this Agreement; *provided, however,* that DAS LLC and any of the Debtors shall be entitled to disclose the Confidential Information to any statutory committee appointed in the Debtors' Bankruptcy Cases and any of such committee's legal counsel and other advisors, and to any other Notice Party, as that term is defined in the Settlement Procedures Order, and such Notice Party's legal counsel; *provided*

5



further, however, that each party and their affiliates may disclose the Confidential Information when required by law or court order or when requested by a governmental entity exercising jurisdiction over a party to this Settlement Agreement. Each party will inform each recipient of the Confidential Information regarding the confidentiality restrictions set forth herein at or before the initial disclosure to such person. Notwithstanding the foregoing, the parties hereto acknowledge and agree that the Debtors shall be entitled to submit that certain Joint Stipulation And Agreed Order Compromising And Allowing Proof Of Claim Number 644 (A-1 Specialized Services & Supplies, Inc.) (the "Stipulation"), which Stipulation A-1 has approved and A-1's counsel has executed, to the Delphi Bankruptcy Court for signature and entry on the docket in the Delphi Bankruptcy Cases, and which Stipulation shall be publicly available following its submission.

10. **Governing Law.** This Settlement Agreement shall be governed by, and construed and enforced in accordance with, as appropriate, the United States Bankruptcy Code and the laws of the State of Michigan, without regard to conflicts of law principles.

11. **Venue And Retention Of Jurisdiction.** The parties hereto irrevocably and unconditionally submit to the jurisdiction of the Delphi Bankruptcy Court for any litigation arising out of or relating to this Settlement Agreement and the transactions contemplated hereby (and agree not to commence any litigation relating thereto except in the Delphi Bankruptcy Court).

12. **Representations And Warranties.** The parties hereto acknowledge that they are executing this Settlement Agreement without reliance on any representations, warranties or commitments other than those representations, warranties and commitments expressly set forth in this Settlement Agreement.

13. **Entire Understanding.** This Settlement Agreement constitutes the entire understanding of the parties in connection with the subject matter hereof. This Settlement Agreement may not be modified, altered or amended except by an agreement in writing signed by the Debtors and A-1.

14. **No Party Deemed Drafter.** This Settlement Agreement is being entered into among competent persons who are experienced in business and represented by counsel, and has been reviewed by A-1 and its counsel. Therefore, any ambiguous language in this Settlement Agreement shall not be construed against any particular party as the drafter of such language.

15. **Counterparts.** This Settlement Agreement may be executed in any number of counterparts and by the different parties hereto in separate counterparts, each of which shall be deemed to be an original, but all of which taken together shall constitute one and the same agreement. Delivery of an executed counterpart of this Settlement Agreement by facsimile or electronic mail shall be equally as effective as delivery of an original executed counterpart of this Settlement Agreement.

6

Accepted and agreed to by:

| | |
|---|---|
| Delphi Automotive Systems LLC | A-1 Specialized Services & Supplies, Inc. |
| By: _Dean R Unru_ | By: _[signature]_ |
| Name: DEAN R UNRU | Name: A. TOWNE |
| Title: DELPHI (CORP) ADMINISTRATOR | Title: DIRECTOR |
| Dated: Sept 21, 2007 | Dated: Sep 21, 2007 |

7

EXHIBIT A
SUPPLY AGREEMENT

## AMENDMENT TO PLATINUM GROUP METALS SUPPLY AGREEMENT BETWEEN DELPHI AUTOMOTIVE SYSTEMS LLC AND A-1 SPECIALIZED SERVICES

This Amendment dated September 21, 2007, is made to the Platinum Group Metals Supply Agreement (as amended, this "Agreement") dated as of December 1, 2004 by and between A-1 Specialized Services ("Seller") and Delphi Automotive Systems LLC ("Buyer"). This Amendment will be effective as of the closing of the sale of Buyer's catalyst business to Umicore ("Effective Date").

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree to amend and restate the Agreement in its entirety as of the Effective Date as follows:

Seller agrees to sell, and Buyer agrees to purchase Platinum Group Metals on the following terms:

| | |
|---|---|
| **Period of Delivery:** | Purchases and sales pursuant to this Agreement shall commence on the ("Effective Date") and shall continue indefinitely. In addition, both parties shall have a right to terminate this Agreement upon 90 days prior notice, without premium, penalty, or damages. Any termination of this Agreement will automatically terminate the reclaim letter agreement (the "Reclaim Agreement") between the parties dated as of the date of this Amendment. This Agreement will automatically terminate, without premium, penalty, or damages, upon termination of the Reclaim Agreement, provided that the terminating party is not then in breach. The supply agreement is subject to annual re-negotiation of the terms and conditions related to the business, beginning [January 1, 2009]; and failing mutual agreement as to revised terms, either party may give a notice of termination as referred to above. |
| **Materials:** | Platinum sponge 99.95% purity per ASTM standards. |
| **Delivery Location:** | Delphi pool account at Johnson Matthey, Valley Forge, PA or INCO, Acton, England as an alternate location if acceptable and agreed to by Delphi prior to shipment. |
| **Delivery /Deposit Fees:** | INCO Acton, England – No charge to Delphi for delivery or deposit fees<br>Johnson Matthey, Valley Forge, PA –<br>A-1 agrees to pay JM Valley Forge, PA deposit fees. In the event, the deposit fees exceed $1.00 per toz., Delphi will cover the increased cost as verified in writing by JM. The deposit fees will be evaluated quarterly and any increased cost will be implemented in the following quarter. |
| **Quantities:** | Platinum: 400 toz. per month. At Delphi discretion and with notification to A-1 by the 20th day of the month prior to the |

1



EXHIBIT A
SUPPLY AGREEMENT

| | |
|---|---|
| | pricing period for the subsequent month's delivery, Delphi may declare a reduced quantity up to and including zero for delivery. |
| Optional Quantities: | Platinum: an option to declare up to 300 toz. additional per month to be declare as specified below in the Declarations. |
| Declarations: | Buyer shall declare all quantities by the 20th day of the month prior to the start of the pricing period. |

| | |
|---|---|
| Date for Delivery of each Monthly Installment | Delivery into Delphi pool account to be made within the first 5 calendar days of the month. |
| Prices: | Platinum: Average of the LPPM afternoon fix of the month prior to the month of delivery.. Total discount to Delphi from A-1 will be $1.50 per toz (See Example). The pricing is to be determined as follows: during the calendar month preceding a delivery of platinum by A-1, the daily afternoon price of platinum published by the London Platinum and Palladium Market (LPPM), referred to as the "LPPM afternoon fix", will be recorded by A-1 and Delphi. After the last such daily afternoon price for said calendar month has been published, the arithmetic mean of all such published daily prices will be calculated.<br><br>EXAMPLE: #1 Pt delivered to JMPA or INCO.<br>$1,300.00    PT price per toz (prior month's avg.)<br>1.50    Maximum discount<br>$1,298.50    PT Price per toz |
| Payment: | Via Electronic Funds Transfer (EFT) Net 15 days in USD to Seller's nominated account after receipt of the goods to Delphi pool account. |
| Title: | A-1 will deliver platinum into the Delphi Account at the Johnson Matthey Valley Forge, PA or INCO Limited Refinery at Acton, England and title to such metals shall irrevocably pass to Delphi upon receipt into the Delphi Account, and A-1 will have no right thereafter to withdraw such metals. |
| Assignment: | This Agreement may not be assigned by either party unless the written consent of the other party is first obtained; provided however, that Delphi has the right to assign any of its rights or obligations hereunder to any division, subsidiary, or affiliate of Delphi Automotive Systems LLC and to any assignee of the Purchase Order(s). A-1 has the right to assign this Agreement to a wholly owned affiliate, subsidiary or division of A-1 Specialized Services & Supplies and to any assignee of the |

2

EXHIBIT A
SUPPLY AGREEMENT

| | |
|---|---|
| | Purchase Order(s). |
| **Dispute Resolution:** | Except as otherwise provided in this Agreement, the parties hereby agree that any dispute, controversy or claim arising under this Agreement, or the breach thereof (a "Dispute"), shall first be subject to informal dispute resolution discussions between the two parties. The party asserting the existence of a Dispute as to the interpretation of any provision of this Agreement or the performance by the other party of any of its obligations hereunder shall notify the other party in writing of the nature of the asserted Dispute. Within 10 Business Days of receipt of such notice, representatives from each party shall arrange and have a personal or telephone conference in which they attempt to resolve such Dispute. If those individuals are unable to resolve the Dispute within such time frame, the Dispute shall be settled by arbitration administered in the State of Michigan under the rules of the American Arbitration Association then in effect for the resolution of commercial disputes by an arbitrator(s) selected by mutual agreement of the parties, or by the American Arbitration Association absent such mutual agreement, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. Any findings of such arbitration shall be final and binding on the parties, and all reasonable costs (including attorneys' fees) incurred as a result of a Dispute being referred to arbitration will be borne by the party against whom any award is made. Any dispute regarding the meaning and/or application of this agreement shall be described in written form as a notice from one of the parties to the other, and the parties shall negotiate in good faith for not less than thirty days to resolve such dispute. If the parties have not resolved such dispute within such thirty days, either party may submit the dispute for resolution by the American Arbitration Association, in accordance with its rules and procedures, with a venue in Michigan. The application of this dispute resolution paragraph will not affect the rights of the parties to termination as described in the Period Of Delivery as set forth above. |
| **Amendments:** | Terms and conditions of this Agreement are in addition to Delphi standard terms and conditions as reflected on the back of the Delphi purchase order (the "Delphi Terms"). Should any conflict exist between the terms of this Agreement and the Delphi Terms, these additional terms shall govern. |

| | |
|---|---|
| **Minority Purchases:** | A-1 shall provide documentation to Delphi declaring metal, quantities and dollar amounts sold to other processors that may be used. Delphi shall provide A-1 with the proper form for such documentation which Delphi will require to be submitted on a |

3

11/14/2007  09:31    248-813-8042                    DELPHI                                    PAGE  04/04
09/21/2007  14:54 FAX                                                                           ☒008

**EXHIBIT A**
**SUPPLY AGREEMENT**

|  | monthly basis. This documentation must be on A-1 letterhead and must assign all minority credits through other processor to Delphi. |
|---|---|

Acknowledged and agreed to as of [insert date that parties sign this Amendment], 2007.

For A-1 Specialized Services & Supplies, Inc          For Delphi Automotive Systems LLC

_____                      _____
Signature                                             Signature

ASHUK KUMAR                                           Vpe Hageman
Printed Name:                                         Printed Name:

Direcer   Sep 21st/07                                 P&M Manager   9/21/07
Title:                                                Title:

cc:   John Novak, Phyllis Kinsey, Sherry Bonadies

4

EXHIBIT B
RECLAMATION AGREEMENT

# DELPHI

Attn:       Ashok Kumar 215-788-9222

Company:    A-1 Specialized Services & Supplies

From:       Val Hoffmann

Company:    Delphi Automotive Systems LLC ("Delphi")

Date:       [insert date this letter is signed], with an effective date as of September 28, 2007 ("Effective Date")

Subject:    Award Letter Amendment

1. **CONGRATULATION!** A-1 Specialized Services has been awarded a contract to supply Delphi Corporation's Global PGM reclaim requirements, such agreement (this "Letter Agreement") to continue from the Effective Date for the term of the Platinum Group Metals Supply Agreement dated as of December 1, 2004 by and between A-1 Specialized Services and Delphi, as amended on [insert date of PGM Supply amendment], 2007 (the "PGM Supply Agreement"). Delphi looks forward to continuing our positive relationship.

2. Following are the agreed upon reclaim terms for the Catalyst and Catalytic Converter manufacturing sites: San Luis Potosi, Mexico (Catalyst); Shanghai, China (Catalyst & Converter); Clayton, Australia (Catalyst & Converter); Port Elizabeth, South Africa (Converter); Blonie, Poland (Converter) and Gurgaon, India (Converter). Reclaim shipments from the catalyst manufacturing locations is not expected to exceed 24 months.

**Monolith**
Return Rate's
Pt    98%
Pd    98%
Rh    85%

**Treatment Charge/lb.:** $0.86-each year
**Refining Charges/toz**
Pt   $8.00
Pd   $6.00
Rh   $45.00

**Dry Powder/Slurry**
Return Rate
Pt    98%
Pd    98%
Rh    85%

**Treatment Charge/lb.:** $1.01-each year
**Refining Charges/toz**
Pt   $8.00
Pd   $6.00
Rh   45.00

Following are the agreed upon reclaim terms for the Oxygen Sensor plant: Torreon, Mexico

1

| Torreon, Mexico | Return Terms | Refining Charges/toz |
|---|---|---|
| Inks | 97% | $7.50 |
| Rags | Identical to above monolith terms | |
| Ceramic Elements (unfired & fired) | Identical to above monolith terms | |
| Ceramic Tape Frames | Identical to above monolith terms | |
| Ceramic Tape Complete | Identical to above monolith terms | |
| Ink Jars | Identical to above monolith terms | |
| Oxygen Sensors | net wt*0.004 Pt and 0.0004 Pd | |
| Oxygen Sensor in Housing/no harness | net wt*0.004 Pt and 0.0004 Pd | |
| Coats, Adhesive Tape, Gloves, Trash | Identical to above monolith terms | |

Scrap Metals from Oxygen Sensor Housing & Harness:
    Gold (Au)
    Stainless Steel (SS)
    Copper (Cu)
    Silver (Ag)
    Palladium (Pd)
    Sale of scrap metals to be negotiated

3. **Transportation:** Delphi will deliver to A-1 collection point.
   **Return Location:** INCO, Acton, England ("INCO")

   **Transportation:** Delphi will deliver to A-1 collection point.
   **Return Location:** INCO, Acton, England

Delphi is responsible for the shipping cost to the closest A-1 collection point for all locations.

4. **Surety Metal, Letter of Credit:** A-1 agrees to provide Delphi with security against metal to be reclaimed for Delphi in the following amounts:

   | First year: | US$2.5 million |
   | Second year: | US$1.5 million |
   | Following years: | US$750,000.00 |

Such security will be provided by A-1 in one of the following manners:

**Letter of Credit:** Subject to Delphi's approval, A-1 will provide Delphi, as of the effective date of this Agreement, with a letter of credit in the amount of the required security from a bank or other surety satisfactory to Delphi; or

**Surety Metal Deposit:** A-1 will deposit, at Inco, in an account of Delphi, as of the effective date of this Agreement, PGM with a market value equal to the amount of the

2

required security. The value of the deposited metal(s) will be determined in accordance with the pricing formulas of this Agreement. The specific amounts of specific PGM in this deposit will be at the selection of A-1, provided that the market value will equal the amount of the required security. The amounts of specific PGM in this deposit will then be adjusted by A-1 at the beginning of each month in which this Agreement is in force and effect in order to maintain a market value equal to the amount of the required security. Such adjustments may include increases or decreases in the specific amounts of any specific metals in this deposit, at the direction of A-1, provided that the market value will continue to equal the amount of the required security, and Delphi agrees to facilitate such adjustments to this deposit in its account.

The letter of credit or surety metal deposit is intended to and may be drawn upon by Delphi if and to the extent that A-1 fails to return metal reclaimed for Delphi pursuant to this Letter Agreement, or to pay for reclaimed metal acquired by A-1 pursuant to this Letter Agreement.

5. **Tenure:** From and after the "**Effective Date**", this Letter Agreement supercedes and replaces in its entirety the Reclaim Award Letter dated as of 9/16/02 between the parties. Each year runs from January 1 through December 31. The current Reclaim Agreement terms and conditions will apply through the balance of the 2007 calendar year.

Delphi reserves the right to benchmark all costs throughout the contract period.

Delphi agrees to split 50%/50% all cost savings initiatives by Value Chain activities.

6. **Termination:** Either party can terminate this Letter Agreement by giving written notice to the other party with 90 days prior notice, without premium, penalty, or damages. Any termination of this Agreement will automatically terminate the supply agreement (the "**Supply Agreement**") between the parties dated as of the date of this Amendment. This Agreement will automatically terminate, without premium, penalty, or damages, upon termination of the Supply Agreement, provided that the terminating party is not then in breach. The reclaim agreement is subject to annual re-negotiation of the terms and conditions related to the business, beginning January 1, 2009; and failing mutual agreement as to revised terms, either party may give a notice of termination as referred to above.

7. **Payment for Reclaim Services:** A-1 will provide a settlement invoice upon receipt of assay results. Delphi will reconcile the invoice and calculate the quantity of platinum to be retained by A-1 as payment. Quantity retained will be based on the prior months average London Platinum and Palladium Market (LPPM) afternoon fix for all settlements in the current month. Delphi will provide settlement instructions to A-1 for the retention of platinum for payment of reclaim services.

8. **Sale to A-1, and Payment For Such Sold Reclaimed PGM:** Delphi will sell the reclaimed PGM processed by A-1 to A-1 upon receipt of the assay results, in exchange for payment to Delphi within 45 days of the receipt of unreclaimed material at A-1. The 45 day period shall begin on the date of A-1's receipt of unreclaimed material (i.e., scrap) (per clause 2 above) or on the day of witnessing of the material by Delphi or

3

its representative, which ever is earlier.. Delphi may exercise its rights against all surety metals for payments that have exceeded the 45 day window that were not a result of A-1's normal material process flow of processing lots by size and date received.

A-1 will purchase the PGM resulting from the reclaim process (less the quantity of PGM to be retained by A-1 as payment for reclaim services as defined in clause 7 above) from Delphi at the prior month average of the LPPM afternoon fix for platinum (Pt) and palladium (Pd) and the prior month average of the Johnson Matthey (JM) North America Index less 1.25% for Rhodium for all PGM settling in the current month. Payment from A-1 to Delphi will be through Electronic Funds Transfer (EFT) to a specified Delphi account.

9. **Assignment:** This Agreement may not be assigned by either party unless the written consent of the other party is first obtained; provided however, that Delphi has the right to assign any of its rights or obligations hereunder to any division, subsidiary, or affiliate of Delphi Automotive Systems LLC and to any assignee of the Purchase Order(s). A-1 has the right to assign this Agreement to a wholly owned affiliate, subsidiary or division of A-1 Specialized Services & Supplies and to any assignee of the Purchase Order(s).

10. **Title:** Title to the PGM sold to A-1 under clause 8 above will transfer from Delphi to A-1 upon receipt of payment to Delphi.

11. **Terms and Conditions:** The Terms and Conditions of this agreement are in addition to Delphi's standard terms and conditions as reflected on the back of the Delphi purchase order. Should any conflict exist, these additional terms shall be considered superseding those on the purchase order.

A-1 and Delphi agree to Global Reclaim Procedures dated September 1, 2002.

For A-1 Specialized Services & Supplies, Inc        For Delphi Automotive Systems LLC

_____                        _____
Signature                                            Signature

    Nov 13th/2007                                        11/13/07
_____                        _____
Printed Name:                                        Printed Name:

4

---

Title: _____   Title: *PGM CATAGORY MANAGER*

cc:   John Novak, Phyllis Kinsey, Sherry Bonadies