# EXHIBIT G

1                          UNITED STATES BANKRUPTCY COURT
                            SOUTHERN DISTRICT OF NEW YORK
2

3                                              .
    IN RE:                                     .   Case No. 05-44481
4                                              .
    DELPHI CORPORATION, et al,                 .   New York, New York
5                                              .   Tuesday, March 21, 2006
                              Debtors.         .   10:02 a.m.
6    . . . . . . . . . . . . . . . .

7
              TRANSCRIPT OF SECTION 1102(a)(2) EVIDENTIARY HEARING
8                   BEFORE THE HONORABLE ROBERT D. DRAIN
                        UNITED STATES BANKRUPTCY JUDGE
9
    APPEARANCES:
10
    For the Debtors:                   John Wm. Butler, Jr., Esq.
11                                      David E. Springer, Esq.
                                        SKADDEN, ARPS, SLATE, MEAGHER
12                                       & FLOM, LLP
                                        333 West Wacker Drive, Suite 2100
13                                      Chicago, Illinois 60606

14                                      Kayalyn A. Marafioti, Esq.
                                        SKADDEN, ARPS, SLATE, MEAGHER
15                                       & FLOM, LLP
                                        Four Times Square
16                                      New York, New York 10036

17   (Appearances continued)

18   Audio Operator:                    Electronically Recorded
                                        by Greg White, ECRO
19
     Transcription Company:             Rand Transcript Service, Inc.
20                                      311 Cheyenne Road
                                        Lafayette, New Jersey  07848
21                                      (973) 383-6977

22

23   Proceedings recorded by electronic sound recording,
     transcript produced by transcription service.
24

25



0544481060322000000000031

```
 1   A P P E A R A N C E S:   (Continued)

 2   For Appaloosa
     Management, LP:                    Thomas E. Lauria, Esq.
 3                                      Rudolph F. Aragon, Esq.
                                        Frank L. Eaton, Esq.
 4                                      WHITE & CASE, LLP
                                        Wachovia Financial Center
 5                                      200 South Biscayne Boulevard
                                        Suite 4900
 6                                      Miami, Florida 33131

 7                                      Glenn M. Kurtz, Esq.
                                        Douglas P. Baumstein, Esq.
 8                                      WHITE & CASE, LLP
                                        1155 Avenue of the Americas
 9                                      New York, New York 10036

10
     For the U.S. Trustee:             Alicia M. Leonhard, Esq.
11                                      U.S. DEPARTMENT OF JUSTICE
                                        Office of the U.S. Trustee
12                                      33 Whitehall Street, Suite 2100
                                        New York, New York 10004
13

14   For the Official Committee
     of Unsecured Creditors:           Robert J. Rosenberg, Esq.
15                                      John W. Weiss, Esq.
                                        LATHAM & WATKINS, LLP
16                                      53rd at Third, 885 Third Avenue
                                        New York, New York 10022
17

18   For JPMorgan, et al:              Kenneth S. Ziman, Esq.
                                        Robert Trust, Esq.
19                                      SIMPSON, THACHER & BARTLETT, LLP
                                        425 Lexington Avenue
20                                      New York, New York 10017

21

22

23

24

25
```

Sheehan - Cross/Aragon                                  152

1   dividends, did it not?

2   A    Yes, sir.

3   Q    And the company, in the year 2005, for the first quarter,

4   paid a dividend.  Am I correct?

5   A    Yes, sir.

6   Q    Now, the second quarter of 2005, the company paid a

7   dividend then or for that quarter, as well, did it not?

8   A    Yes, sir.

9   Q    And that dividend was voted on by the board of directors

10  at a meeting of the board on June 22nd, 2005, right?

11  A    Yes, sir.

12  Q    You attended that meeting, when the board voted on that

13  dividend.  Correct, sir?

14  A    Yes sir.

15  Q    And Mr. Resnick, who is going to come and testify as an

16  expert and as the investment banker and financial advisor of

17  the company since May the 1st of 2005, he was at that

18  meeting, as well, was he not?

19  A    Yes, sir.

20  Q    And the board voted on that dividend on June the 22nd,

21  2005 and it was actually paid on August the 2nd, 2005, was it

22  not?

23  A    Yes, sir.

24  Q    And that was Delphi's last dividend payment.  Correct,

25  sir?

Sheehan - Cross/Aragon                                    153

1   A   Yes, sir.

2   Q   And so, there was a dividend payment made on August the

3   2nd, 2005 to all 561,000 -- 561 million -- strike that.

4   There was a dividend payment made to all of the over 300,000

5   owners of Delphi stock as of August the 2nd, 2005, right?

6   A   A dividend was paid to all of our shareholders, yes.

7   Q   Right.   And it was a dividend of one-and-a-half cents per

8   shareholder -- or per share, right?

9   A   That's what the board agreed on.

10  Q   And at that time, on August the 2nd, 2005, when this

11  dividend was paid, there were over 561 million shares of

12  Delphi common stock issued and outstanding, correct?

13  A   Approximately, yes.

14  Q   Now, Delphi is a Delaware company, is it not, sir?

15  A   Yes, sir.

16  Q   And it's been a Delaware company since you first came on

17  board with the company in July of 2002, right?

18  A   Yes, sir.

19  Q   And the company and the board always attempted to comply

20  with Delaware corporate law, I take it.   Is that correct?

21  A   Yes, sir.

22  Q   Now, under Delaware, you are aware, are you not, Mr.

23  Sheehan, that in order to pay a dividend, a company has to

24  have a surplus or the company has to have profits for the

25  fiscal year in which a dividend was paid or the previous year

Sheehan - Cross/Aragon                                     154

1   to that.  You know that, don't you?

2   A    That is my understanding, yes.

3   Q    Now, Delphi didn't have profits for the fiscal year 2005,

4   did it?

5   A    The year 2005 was in progress at that point in time.

6   Q    There was no profits, though, that year, were there?

7   A    During the period of time up until the board meeting in

8   June of 2005, for that shortened period of a year, interim

9   period, yeah, that's correct.

10  Q    And the company did not have profits for the previous

11  year, 2004, did it?

12  A    No, sir.

13  Q    So to pay a dividend, and therefore, to be in compliance

14  with Delaware law that you understand, the company would have

15  to have had a surplus.  Isn't that true?

16  A    Yes, sir.

17  Q    And you understand, do you not, sir, that to have a

18  surplus, a company has to have an excess of net assets over

19  the capital of the company, right?

20  A    Yes, sir.

21  Q    And net assets are defined as the assets of the company

22  minus the total liabilities, right?

23  A    Yes, sir.

24  Q    And then from that, you deduct the capital, correct, in

25  order to get the surplus?

Sheehan - Cross/Aragon                                       155

1   A   Yes, sir.

2   Q   All right.  In fact, you yourself made that calculation,

3   did you not, prior to that meeting on July or June the 22nd,

4   2005?

5   A   I considered that matter, yes.

6   Q   You made that calculation in your head, didn't you?

7   A   That's what I testified to.  Yes, sir.

8   Q   Right.  And you made that calculation along with a couple

9   of members of the legal staff of Delphi, didn't you?

10  A   The legal staff explained to me the Delaware law with

11  respect to the matter.

12  Q   So the legal staff knew you had to have a surplus and

13  they wanted to make sure that you did that calculation and

14  you did the calculation and bingo, you came up with a

15  positive surplus, correct?

16  A   As it was explained to me that Delaware law considered

17  the definition.

18  Q   Right.  The legal staff and you wanted to make sure you

19  didn't make a dividend payment that was contrary to Delaware

20  law, so that's why they had you do that, right?

21  A   The issue of surplus was considered for a number of

22  reasons and not just the one you're referring to.

23  Q   Now, sir, in order to have a surplus, the company has to

24  have, as we just talked about it, net assets that are over

25  net liability.  Isn't that right?  That would have to be the

Sheehan - Cross/Aragon                          156

1   case.

2   A    As defined by Delaware law and case law, yes.

3   Q    Right.   And in order to be legal under Delaware law, both

4   when the vote was made on June 22nd of 2005 and when the

5   dividend was paid on August the 2nd, 2005, the company has to

6   have had net assets that were bigger than the net liabilities

7   in order to have a surplus, correct?

8        MR. BUTLER:   Your Honor, that's a legal conclusion,

9   as he testified.   I have no problem with this line of

10  questioning after that point in time, but that's a legal

11  question.

12       THE COURT:   Can you say the question again?

13       MR. ARAGON:   I'm not sure if I could repeat that

14  again.   I was on a roll, sir, so --

15       (Laughter.)

16       MR. ARAGON:   But I'll try it again.

17  BY MR. ARAGON:

18  Q    So when the company voted on the dividend on June 22nd,

19  2005, and when the dividend was actually paid on August the

20  2nd, 2005, the company had to have had a surplus, which means

21  that the company would have had to have net assets that

22  exceeded net liabilities.   Isn't that correct?

23  A    As defined by Delaware law and case law, yes.

24  Q    Okay.   Now, at the time the dividend was paid, August the

25  2nd, 2005, about two months prior to the filing of this

Sheehan - Cross/Aragon                                        157

1   bankruptcy, the company had not come to any conclusion about

2   being insolvent, had it?

3   A    No, sir.

4   Q    In fact, you thought you were solvent.  That's why you

5   paid the dividend, right?

6   A    Yes, sir.

7   Q    Okay.  Now, the company, though, on October the 8th,

8   2005, announced to the world that it was insolvent.  Isn't

9   that right?

10  A    No, sir.  We announced that we were filing for a

11  reorganization.

12  Q    There's no question, is there, sir, that by December the

13  7th, 2005, this would be four months after the payment of the

14  dividend on August the 2nd, 2005, the company responded to

15  Appaloosa's motion by stating that it was hopelessly

16  insolvent and it used the words hopelessly insolvent.  Isn't

17  that true?

18  A    In a letter to the U.S. Trustee, in response to her

19  request, we stated those words, yes.

20  Q    And I take it, sir, as the chief restructuring offer of

21  the company, you personally believed that Appaloosa was

22  hopelessly insolvent, even though just four months prior to

23  that --

24        MR. BUTLER:  Delphi.

25        MR. ARAGON:  Delphi.  Excuse me.  We'll start again.