**EXHIBIT D**

05-44481-rdd   Doc 20863-4   Filed 11/23/10   Entered 11/23/10 21:43:46   Exhibit D to Opposition DPH HOLDINGS CORP., et al.

- 213 -

1       Requiring for them to do all those things seems to me
2  to be the minimum of fairness --
3       THE COURT: Well, look, it's a motion for leave to
4  amend the complaint on unusual circumstances. It's really
5  their risk if I turn them down again, right? So --
6       MR. WINSTEN: My only point was that it should be
7  Iqbal plus, not Iqbal minus.
8       THE COURT: Well, I don't know what that means. And,
9  frankly, I think the Supreme Court's been pretty careful not to
10 turn Iqbal into a plus.
11      MR. WINSTEN: Right.
12      THE COURT: So --
13      MR. WINSTEN: But these are our --
14      THE COURT: But I think that the risk of being turned
15 down on the basis of the complaint still isn't good enough is a
16 serious enough -- the consequences of that are serious enough
17 so I assume that the plaintiffs are going to be pretty careful.
18      MR. WINSTEN: A suggestion when we get there is that
19 they ought to attach a draft --
20      THE COURT: Well, you have to do that.
21      MR. WINSTEN: Yes. So we know --
22      THE COURT: Yeah, absolutely.
23      MR. WINSTEN: -- what the form's going to be.
24      THE COURT: Got to do that.
25      MR. WINSTEN: Let me move to assumed contracts. This

05-44481-rdd    Doc 20863-4    Filed 11/23/10    Entered 11/23/10 21:43:46    Exhibit D to Opposition PHS OS CORP., et al.
DPH HOLDINGS CORP., et al.

- 214 -

1    is another way in which you can --

2              THE COURT: Well, I don't think there's any issue on

3    this, right? How about if the debtors acknowledge that if the

4    contract has been assumed there's no preference?

5              MR. WINSTEN: Well, what's interesting, Your Honor, is

6    we --

7              THE COURT: Well, let me just -- is there -- is that

8    an issue?

9              MR. GEOGHAN: There's no debate about that, Your

10   Honor. The concept we all agree on; the problem has been in

11   corroborating the information that's been supplied. And what

12   we've done --

13             THE COURT: Okay.

14             MR. GEOGHAN: -- in any instance where a defendant has

15   said 'you have assumed our contract and the preference payment

16   that you're seeking to recover was made pursuant to that

17   contract' is we've compared notes and tried to get to the

18   bottom of it and where, in fact, that's the case then we

19   voluntarily dismiss either the particular claim or the action

20   as a whole if all of the claims were pursuant to an assumed

21   contract. So there's no conceptual disagreement.

22             MR. WINSTEN: Well, there is in this sense, Your

23   Honor, because we have three clients who had assumed contracts:

24   MSX, GKN and Valeo. Take MSX that has four -- there's a four

25   million preference claim against them. We believe it's all as

05-44481-rdd  Doc 20863-4  Filed 11/23/10  Entered 11/23/10 21:43:46  Exhibit D to Opposition Pgs 4 of 5
DPH HOLDINGS CORP., et al.

- 215 -

1   to assumed contracts. We file our motion. Not one word in
2   their brief in opposition in any way opposing dismissal of
3   those claims because they're assumed contracts. Not one word
4   in opposition. We give them a proposed order, 'please agree
5   that to the extent this claim is based upon transfers as to
6   these contracts, we're not seeking a dismissal of entirety. To
7   the extent your claim is based upon transfers with respect to
8   these assumed contracts, they're out of the case'. They won't
9   agree to do it.
10              Now, as to Valeo and GKN, which is represented by the
11  Togut firm, rather than just being silent, as the Butzel firm
12  has been as to MSX, the Togut firm says 'none of these were in
13  respect to assumed contracts; it's pointless to do so'. Our
14  view is we don't need to worry about that now. We have a hot
15  disagreement as to whether these were transfers with respect to
16  assumed contracts. All we're looking for is a plain vanilla
17  order that says 'to the extent any of these transfers were with
18  respect to these identified assumed contracts in our motions,
19  they're out of the case'. That's all. We can start out later.
20              THE COURT: But if there's a factual dispute as to
21  whether it was assumed or not, what does the order do? It
22  doesn't say anything.
23              MR. WINSTEN: Well, they're not even recognizing the
24  point I gave you.
25              THE COURT: No, he just did. And he would have to;

05-44481-rdd Doc 20863-4 Filed 11/23/10 Entered 11/23/10 21:43:46 Exhibit D to Opposition DPH HOLDINGS CORP., et al.

- 216 -

1  it's the law.
2      MR. WINSTEN: Is the Togut firm recognizing your
3  point?
4      THE COURT: He said that in his pleading.
5      MR. GEOGHAN: We've recognized the point, Your Honor.
6  We were asked the question, we provided the information --
7      THE COURT: He recognizes the legal -- he recognized
8  the legal point.
9      MR. GEOGHAN: -- the contract numbers; everything in
10 support.
11     THE COURT: The law's clear on that -- I just ruled on
12 this about four months ago in Coudert Brothers in pretty
13 egregious circumstances so if the plan trustee lost there, he's
14 going to lose here too if the contract was, in fact, assumed.
15 But there's the issue of whether it was, in fact, assumed.
16     MR. FISHER: An example, though, Your Honor, of how we
17 really need to nail this down --
18     THE COURT: Well, that goes to the complaint.
19     MR. FISHER: Well, yeah, exactly. We've asked the
20 Togut firm for that information. They've given us information
21 but none of it's linked to purchase orders; none of it's --
22 it's all just them saying none of them --
23     THE COURT: Well, that's why you need show the
24 antecedent debt in the complaint.
25     MR. WINSTEN: You got it. Exactly. Just another