Hearing Date and Time: February 17, 2011 at 10:00 a.m.
Reply Deadline: January 28, 2011

Douglas L. Lutz, Esq.
Lindsey F. Baker, Esq.
**FROST BROWN TODD LLC**
2200 PNC Center
201 East Fifth Street
Cincinnati, OH 45202
513-651-6800 Telephone
513-651-6981 Facsimile
dlutz@fbtlaw.com
lbaker@fbtlaw.com

Attorneys for Sprimag Inc.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x

| | |
|---|---|
| In re | : Chapter 11 |
| | : Case No. 05-44481 [RDD] |
| DPH HOLDINGS CORP, *et al.*, | : |
| | : Jointly Administered |
| Reorganized Debtors. | : |
| | : |

---------------------------------------------------------x

| | |
|---|---|
| DELPHI AUTOMOTIVE SYSTEMS, LLC, | : |
| | : |
| Plaintiff, | : |
| | : Adv. Pro. No. 07-02644 [RDD] |
| v. | : |
| | : |
| SPRIMAG INC., | : |
| | : |
| Defendant. | : |

---------------------------------------------------------x

### SPRIMAG INC.'S OBJECTION TO REORGANIZED DEBTORS' MOTION FOR LEAVE TO FILE AMENDED COMPLAINTS AND REQUEST FOR ENTRY OF AN ORDER VACATING CERTAIN PRIOR ORDERS PURSUANT TO FED. R. CIV. P. 60 AND FED R. BANKR. P. 9024

Sprimag Inc. ("Sprimag"), by and through its undersigned counsel, hereby objects to the

*Reorganized Debtors' Motion for Leave to File Amended Complaints* (the "Motion to Amend")

(Docket No. 24) and requests entry of an order denying the Motion to Amend and, to the extent necessary, vacating certain prior orders pursuant to Fed. R. Civ. P. 60 and Fed. R. Bankr. P. 9024. In support of this Objection, Sprimag respectfully states:

## BACKGROUND

1.      On October 8, 2005, Delphi and certain of its subsidiaries (the "Initial Filers") each filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). On October 14, 2005 (together with October 8, 2005, the "Petition Dates"), three additional U.S. subsidiaries of Delphi (together with the Initial Filers, the "Debtors") filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

2.      The two-year statute of limitations for the Debtors to bring an avoidance action against Sprimag began to run upon the Debtors' respective Petition Dates, which were October 8, 2005 and October 14, 2005, in accordance with section 546(a) of the Bankruptcy Code.

3.      On August 6, 2007, contemplating confirmation of a reorganization plan that would "waive or release most if not all avoidance causes of action," the Debtors filed a motion seeking entry of an order for, among other things, the establishment of procedures to govern certain adversary proceedings, including those commenced under Bankruptcy Code § 541, 544, 545, 547, 548, or 553 (the "Preservation of Estate Claims Procedures Motion") (Docket No. 8905). *See Preservation of Estate Claims Procedures Motion*, ¶ 13. Through the proposed procedures, the Debtors sought to toll the statute of limitations by asking for an extension of time to serve certain adversary summonses and complaints and a stay of the applicable adversary proceedings until service of process was effected. *Id.* at ¶¶ 33-35. The Debtors also requested permission to file certain adversary proceeding complaints under seal. *Id.* at ¶¶ 36-38.

4.      On August 16, 2007, this Court entered an order granting the relief requested in the Preservation of Estate Claims Procedures Motion (the "Preservation of Estate Claims Procedures Order") (Docket No. 9105). Among other things, the order extended the Debtors' deadline to serve adversary proceeding summonses and complaints until March 31, 2008 and authorized the complaints to be filed under seal. *See Preservation of Estate Claims Procedures Order,* ¶¶ 7-10.

5.      On October 1, 2007, the Debtors allegedly filed a complaint to initiate the above-captioned adversary proceeding (the "Original Complaint") (Docket No. 7). As permitted by the Preservation of Estate Claims Procedures Order, the Debtors filed the Original Complaint under seal, giving no notice to Sprimag of the action. The Original Complaint sought to recover allegedly preferential transfers received by Sprimag in the amount of $542,900.00.

6.      Thereafter, by motions dated February 28, 2008, April 10, 2008, and October 2, 2009, the Debtors sought to extend the deadline to serve adversary proceeding summonses and complaints further and further (together the "Extension Motions," individually and respectively the "February 2008 Extension Motion," the "April 2008 Extension Motion," and the "October 2009 Extension Motion"). By orders dated March 28, 2008, April 30, 2008, and October 22, 2009, this Court granted each of the Extension Motions and effectively allowed the delay of service of process indefinitely by tying the service deadline to the confirmation of the Plan (as defined below) (together the "Extension Orders," individually and respectively the "March 2008 Extension Order," the "April 2008 Extension Order," and the "October 2009 Extension Order").

7.      ***Sprimag did <u>not</u> receive any notice of the Preservation of Estate Claims Procedures Motion, the Preservation of Estate Claims Procedures Order, any of the Extension Motions, or any of the Extension Orders***.  Sprimag was <u>not</u> listed on the affidavits of service

3

filed in connection with the Preservation of Estate Claims Procedures Motion, the Preservation

of Estate Claims Procedures Order, any of the Extension Motions, or any of the Extension

Orders.  A true and correct copy of the relevant portions of the filed affidavits of service are

attached hereto and incorporated herein collectively as <u>Exhibit A</u>.[1] At no time was Sprimag

advised that it was an actual or potential defendant in any claim.[2]

8.      In the meantime, the Debtors were working toward confirmation of a plan of

reorganization. On or about December 10, 2007, the Debtors filed their First Amended Joint Plan

of Reorganization (the "Plan") (Docket No. 11386), which was confirmed by order of the court

dated January 25, 2008 (the "Confirmation Order") (Docket No. 12359). The Plan, as confirmed,

provided for the payment in full of unsecured creditors of the Debtors. Exhibit 7.24 to the Plan,

which set forth the five actions the Debtors would retain under the Plan, did not contain any

reference to Sprimag or to the Original Complaint.

9.      On October 3, 2008, the Debtors filed a motion seeking approval of modifications

to the Plan, which included changes to the Plan that provided for substantially lower recoveries

to the Debtors' unsecured creditors. On June 16, 2009, the Debtors filed a First Amended Joint

Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors, and Debtors-in-

Possession (As Modified) (the "Modified Plan") (Docket. No. 17030). On July 2, 2009, after the

deadline to commence solicitation of votes on the Modified Plan had passed, the Debtors filed

the Exhibits to the Modified Plan (Docket. No. 17557). The Exhibits included Exhibit 7.19,

which listed retained causes of action as now including additional avoidance actions filed under

---

[1] An affidavit of service for the Third Extension Order is not included in Exhibit A. Upon information and belief, the
Third Extension Order was not served until after the Original Complaint was unsealed.

[2] In fact, Sprimag sold its general unsecured claim in these chapter 11 cases in March, 2006, approximately 15
months **prior** to the entry of the Preservation of Estate Claims Procedure Order.

seal. Therefore, it was not until July of 2009 that the Debtors revealed their intention to pursue all 177 of the adversary proceedings filed under seal instead of the five proceedings it had originally indicated in Exhibit 7.24 to the Plan. Further, Exhibit 7.19 listed the actions only by adversary proceeding number, again leaving Sprimag with still no knowledge of this action. On July 30, 2009, the Court entered an order approving the Modified Plan (the "Modified Plan Confirmation Order") (Docket No. 18958). The Modified Plan became effective on October 6, 2009.

10.   Ultimately, Sprimag was not notified of this adversary proceeding until it was served with a summons and the Complaint on December 8, 2009, over four years after the alleged transfers occurred and over two and one-half years after the statute of limitations expired.

11.   On February 19, 2011, Sprimag filed the *Answer of Sprimag Inc. to Compliant to Avoid and Recover Transfer Pursuant to 11 U.S.C. §§§ 547 and 550* (the "Answer") (Docket No. 11). Thereafter, certain similarly situated defendants filed motions to dismiss their respective adversary proceedings (the "Motions to Dismiss") and argued, among other things, that the filing of the complaints under seal was unauthorized by statute, that no good cause existed to extend the time for service of the complaints, and that the complaints failed to plead sufficient facts to state a cause for relief.

12.   On July 22, 2010, a hearing was held on the Motions to Dismiss. On September 7, 2010, in response to the arguments made in the Motions to Dismiss, this Court entered the *Order Granting in Part First Wave Motions to Dismiss* (the "Dismissal Order") (Docket No. 27). In the Dismissal Order, this Court dismissed certain complaints without prejudice "because the Debtors have failed to plead sufficient facts to state a claim, and have not complied with Rule 8 of the Federal Rules of Civil Procedure, made applicable by Rule 7008 of the Federal Rules of Bankruptcy

5

Procedure." *See Dismissal Order,* ¶ 4. This Court then ordered the Reorganized Debtors to file a motion for leave to amend certain complaints by September 7, 2010, attaching a proposed amended complaint. Pursuant to the Dismissal Order, the Reorganized Debtors were required to include certain information in the amended complaint, including for each alleged transfer, at a minimum, "the transferor, the transferee, any known subsequent transferee against whom relief is sought, the antecedent debt and which Reorganized Debtor is the plaintiff." *Id.*

13.    On September 7, 2010, the Debtors filed the Motion to Amend seeking leave from this Court to amend the Original Complaint. Attached to the Motion to Amend as an exhibit is a proposed *First Amended Complaint to Avoid and Recover Transfers Pursuant to 11 U.S.C. §§ 547 and 550* (the "Proposed Amended Complaint"). A true and correct copy of the Proposed Amended Complaint is attached hereto and incorporated herein as <u>Exhibit B</u>. In the Proposed Amended Complaint, the Plaintiff seeks to recover allegedly preferential transfers allegedly received by Sprimag in the amount of $542,900.00.

## OBJECTION

14.    The Motion to Amend should be denied for at least three reasons. First, the Proposed Amended Complaint: (a) is futile (especially because Sprimag received absolutely no notice of the Preservation of Estate Claims Procedures Order, the Extension Motions, the Extension Orders, or the Original Complaint); (b) will severely prejudice Sprimag; and thus (c) does not meet the requirements of Fed. R. Civ. P. 15(a). Second, the Proposed Amended Complaint does not comply with the requirements of the Dismissal Order. Third, pursuant to the Dismissal Order, the Plaintiff is not entitled to further amend the Proposed Amended Complaint.

6

A.    **The Motion to Amend should be denied because it does not meet the requirements of Fed. R. Civ. P. 15(a).**

15.    Federal Rule of Civil Procedure 15(a), incorporated by Federal Rule of Bankruptcy Procedure 7015 ("Rule 15(a)"), provides that a court should freely give leave to amend a complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2). Courts have found however, that "[t]he liberal amendment policy prescribed by Rule 15(A) does not mean that leave will be granted in all cases." *Wright, Miller, Kane & Marcus,* 6 Fed. Prac. & Proc. Civ. § 1487 (3d ed. 2010). "Indeed, the text of the rule makes it clear that permission to amend is not to be given automatically but is allowed only 'when justice so requires.'" *Id.*

16.    The United States Supreme Court has articulated a standard for whether a court should grant leave to amend under Rule 15(a). *See Forman v. Davis,* 371 U.S. 178 (1962). In *Forman,* the United States Supreme Court enunciated five reasons to deny a request for leave to amend, including (i) undue delay, (ii) bad faith or dilatory motive on the part of the movant, (iii) repeated failure to cure deficiencies by amendments previously allowed, (iv) undue prejudice to the opposing party by virtue of allowance of the amendment, and (v) futility of the amendment. *Id.* at 182.

1.    **Due to the futility of the Proposed Amended Complaint, the Motion to Amend should be denied by this Court.**

17.    An amendment is futile if the amended complaint would not survive a motion to dismiss. *Austin Driveway Serv., Inc. v. O & G Ind., Inc. (In re Austin Driveway Servs.)*, 179 B.R. 390, 394 (Bankr. D. Conn. 1995) (citing *McNally v. Yarnall*, 764 F.Supp. 853 (S.D.N.Y.1991)); *Vigilant Insurance Co. v. Servco Oil, Inc.*, 2010 U.S. Dist. LEXIS 67490 (D. Conn. 2010) (a court may deny a motion to amend where the amended portion of the complaint would fail to state a cause of action), citing *Parker v. Columbia Pictures Industries,* 204 F.3d

7

326 (2nd Cir. 2000); *see also Rose v. Hartford Underwriters Ins. Co.,* 203 F.3d 417 (6th Cir.

2000) (citation omitted) (holding that a proposed amendment is futile if the amendment could not

withstand a motion to dismiss); *Partington v. Bugliosi,* 56 F.3d 1147 (9th Cir. 1995).

Furthermore, numerous courts have held that a proposed amendment that fails to include

allegations to cure defects in the original pleading should be denied as futile. *Acito v. IMCERA*

*Group, Inc.,* 47 F.3d 47 (2d Cir. 1995); *see also Long v. U.S. Dept. of Defense,* 616 F. Supp.

1280 (E.D.N.Y. 1985) (denying a motion to amend because "[g]ranting leave to amend the

original complaint… would be futile, because even if leave to amend the original complaint was

granted, plaintiff's claims would still be barred by the statute of limitations").

18.    The Proposed Amended Complaint is futile and would not survive a motion to

dismiss for at least three reasons. First, because Sprimag did not receive any notice of the

Preservation of Estate Claims Procedures Motion, the Preservation of Estate Claims Procedures

Order, each of the Extension Motions, or each of the Extension Orders, those orders should be

vacated by this Court. Second, the Proposed Amended Complaint fails to satisfy the pleading

standard required by the United States Supreme Court and Federal Rule of Civil Procedure 8(a).

Third, the Proposed Amended Complaint is barred by the doctrine of laches.

**a.    The Proposed Amended Complaint is futile because Sprimag *did not receive any notice* of the Preservation of Estate Claims Procedures Motion, the Preservation of Estate Claims Procedures Order, each of the Extension Motions, or each of the Extension Orders, and consequently the Preservation of Estate Claims Procedures Order and the Extension Orders should be vacated by this Court.**

19.    The combination of permitting the Debtors to file the Original Complaint under

seal – thereby concealing from Sprimag that it had been sued – while repeatedly extending the

Debtors' time to serve process for nearly two and one-half years after the expiration of the statute

of limitations – **all without any notice to Sprimag** – has resulted in a proceeding devoid of procedural due process.[3]

20.    Sprimag did not receive any notice of the Preservation of Estate Claims Procedures Motion, the Preservation of Estate Claims Procedures Order, any of the Extension Motions, or any of the Extension Orders.  Sprimag was not listed on the affidavits of service filed in connection with the Preservation of Estate Claims Procedures Motion, the Preservation of Estate Claims Procedures Order, any of the Extension Motions, or any of the Extension Orders. At no time was Sprimag advised that it was an actual or potential defendant in any claim.

21.    It has been long-recognized that: "The core of due process is the right to notice and a meaningful opportunity to be heard." *Lachance v. Erickson,* 522 U.S. 262, 266 (1998). In *Mullane v. Central Hanover Bank & Trust Co.,* the United States Supreme Court established the requirements for due process:

> [T]here can be no doubt that at a minimum [the Due Process Clause] require[s] that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case… ***An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the action and afford them an opportunity to present objections.***

339 U.S. 306, 313-14 (1950) (citations omitted) (emphasis added).  Indeed, the right to be heard "has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest." *Id,* at 314.

---

[3] The Plaintiff filed the Original Complaint and the Proposed Amended Complaint with knowledge that Sprimag did not receive notice of the Preservation of Estate Claims Procedures Motion, the Preservation of Estate Claims Procedures Order, any of the Extension Motions, or any of the Extension Orders. The Plaintiff should have at a minimum reviewed the applicable affidavits of service to ensure that each potential defendant was listed. This type of carelessness is sanctionable and accordingly Sprimag reserves the right to file a motion under Rule 9011 of the Federal Rules of Bankruptcy Procedure.

22.     Accordingly, the United States Supreme Court and the Second Circuit Court of Appeals both recognize that, if a party, like Sprimag, is not afforded due process during the proceeding that led up to entry of an order, the party is not bound and the order is unenforceable against that party. For example, in *City of New York v. New York, N.H. & H. R.R. Co.,* 344 U.S. 293 (1953), the City, a creditor of the debtor, did not receive notice of the claims bar date order despite the fact that the debtor was required to mail notice of the order to the City. The Supreme Court held that the City, whose identity and address were known, was not bound by the claims bar date because it was not given notice by the debtor. Similarly, in *In re Johns Manville Corp.,* 600 F.3d 135 (2d Cir. 2010), the Second Circuit Court of Appeals held that because Chubb Indemnity Insurance Company did not receive notice of the proceedings that led to the approval of a settlement agreement and related orders, it was not bound by the orders (because to bind Chubb would violate its due process rights).

23.     Likewise, in *United States v. Castro,* 243 B.R. 380 (D. Ariz. 1999), the government did not receive notice of a motion filed by the debtor seeking determination of tax liability or the court's related order. Because the government received no notice, the court held the order was void as a matter of law (in violation of due process) and was vacated as to the government. *See also In re Krueger,* 88 B.R. 238 (BAP 9th Cir. 1988) (vacating order of dismissal on due process grounds, explaining that the debtor did not receive notice of the hearing; and as a result, the court retroactively reinstated the automatic stay and held that a foreclosure sale was void in violation of the automatic stay).

24.     This Court recognized this fundamental right of a defendant when addressing whether certain unserved foreign defendants would need to seek relief from the uniform case management order proposed by the Debtors. This Court stated:

> Well, would they even have to seek relief if they're not a party. I
> mean, it's odd to say that they'd be bound if they're not party to an
> adversary proceeding that's been… served yet.

*See April 1, 2010 Transcript*, ¶ 13.

25.     Moreover, Sprimag's due process rights are not affected by the fact that Sprimag

knew of the Debtors' chapter 11 cases.[4] In *City of New York,* the Supreme Court expressly

declared that the due process clause entitles creditors to reasonable notice from a bankruptcy

court before they will be bound – even where the creditor knew of the bankruptcy proceedings

but did not monitor them. The Court stated:

> Nor can the bar order against New York be sustained because of
> the city's knowledge that reorganization of the railroad was taking
> place in the court. The argument is that such knowledge puts a
> duty on creditors to inquire for themselves about possible court
> orders limiting the time for filing claims. But even creditors who
> have knowledge of a reorganization have a right to assume that the
> statutory 'reasonable notice' will be given them before their claims
> are forever barred.

344 U.S. at 297. The Supreme Court has never wavered from this reasoning. *See e.g. Richards v.*

*Jefferson County,* 517 U.S. 793, 800 n.5 (1996) (no duty to intervene in suit in which the party is

a stranger); *Mennonite Bd. of Missions v. Adams,* 462 U.S. 791, 799 (1983) ("a party's ability to

take steps to safeguard its interests does not relieve the State of its constitutional obligation" to

serve notice).

26.     Federal Rule of Civil Procedure 60(b), as made applicable by Federal Rule of

Bankruptcy Procedure 9024, provides, in relevant part:

---

[4] In addition, receipt of the Debtors' Disclosure Statement was not sufficient notice of the preservation of the
Original Complaint. The Disclosure Statement simply indicated that Delphi had previously filed adversary actions
against certain unspecified defendants and had already been granted its Extension Order on August 16, 2007, which
expired on March 31, 2008. *See Disclosure Statement* at 193. The Disclosure Statement did not give Sprimag notice
and an opportunity to object to the Extension Motions, nor did it alert Sprimag that it could be exposed to litigation
after early 2008.

11

On motion and just terms, the Court may relieve a party or its legal representative from a final judgment, order or proceeding for the following reasons:… (5)… applying [the order] prospectively is no longer equitable; or (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b); Fed. R. Bankr. P. 9024(b).

27.     Sprimag has been deprived of its procedural due process rights through the filing of the Original Complaint under seal without notice to Sprimag of its status as a defendant. Sprimag was not served with the Preservation of Estate Claims Procedures Motion, the Preservation of Estate Claims Procedures Order, the Extension Motions, or the Extension Orders – and did not have the opportunity to object to those pleadings, the very pleadings that allow the Plaintiff to pursue this adversary proceeding against Sprimag today. Applying the Preservation of Estate Claims Procedures Order and each of the Extension Orders prospectively against Sprimag is inequitable and clearly a due process violation. Because Sprimag did not receive notice of the Preservation of Estate Claims Procedures Order or the Extension Orders, the Preservation of Estate Claims Procedures Order and the Extension Orders must be vacated by this Court under Rule 60(b) and are a legal nullity as to Sprimag. *See United Student Aid Funds, Inc. v. Espinosa,* 130 S.Ct. 1367 (2010) (where notice and an opportunity to be heard are not provided, the order is a "legal nullity").

28.     Because the Preservation of Estate Claims Procedures Order and the Extension Orders must be vacated by this Court, the Proposed Amended Complaint is futile and this Court should deny the Motion to Amend. Furthermore, given that the Preservation of Estate Claims Procedures Order and the Extension Orders must be vacated by this Court, the Original Complaint should be dismissed with prejudice. Sprimag was clearly deprived of its right to procedural due process, and should not be forced to spend additional time and resources defending this adversary proceeding.

12

      b.      **The Proposed Amended Complaint is futile because it fails to satisfy the pleading standard required by the United States Supreme Court and Federal Rule of Civil Procedure 8(a).**

29.      To avoid dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), the United States Supreme Court has held that a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Though a Court must accept supporting facts alleged in the Proposed Amended Complaint as true, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 555.

30.      The Proposed Amended Complaint would not survive a motion to dismiss because it fails to plead "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1940 (2009) (citation and quotation marks omitted) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."). Federal Rule of Civil Procedure 8(a)(2), made applicable through Federal Rule of Bankruptcy Procedure 7008, "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the… claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (citing *Conley v. Gibson,* 355 U.S. 41, 47 (1957)). However, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual obligations, a plaintiff's obligations to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*

31.    The Proposed Amended Complaint fails to plead sufficient facts to support the
elements of section 547(b) of the Bankruptcy Code. Specifically, the Proposed Amended
Complaint fails to plead sufficient facts to show the existence of an antecedent debt. *See OHC
Liquidation Trust v. Credit Suisse First Boston (In re Oakwood Homes Corp.)*, 340 B.R. 510,
522-23 (Bankr. D. Del. 2006) (finding that preferential transfer claims must contain
particularized facts including an identification of the nature and amount of each antecedent debt);
*see also In re Hydrogen, L.L.C.,* 431 B.R. 337, 355 (Bankr. S.D.N.Y. 2010) (finding that an
amended complaint contained so few relevant facts that it amounted merely to a formulaic
recitation of the elements, citing *Iqbal*, and could not survive the motion to dismiss).

32.    Two decisions are particularly helpful in determining what is required to plead
antecedent debt after *Twombly* and *Iqbal*. First, in *Angell v. Haven (In re Careamerica)*, the
bankruptcy court applied in *Twombly* to a preference action. 409 B.R. 346 (Bankr. E.D.N.C.
2009). Finding that the trustee's complaint must plead sufficient factual allegations to establish
that a preference action is plausible, the court analyzed each element of section 547(b) of the
Bankruptcy Code to determine if sufficient factual allegations were pled. In doing so, the court
held that the trustee's complaint did not contain sufficient factual allegations to show it was
plausible that the alleged transfers were made on account of antecedent debt. The bankruptcy
court explained that "the trustee must assert the nature and amount of the antecedent debt in
order to allege a plausible claim for relief." *Id.* at 351.

33.    Second, in *Charys Liquidating Trust v. Hades Advisors, LLC (In re Charys
Holding Company, Inc.),* the United States Bankruptcy Court for the District of Delaware
dismissed a preference complaint for failure to plead facts sufficient to satisfy the standards set
forth by the United States Supreme Court in *Twombly* and *Iqbal*. 2010 WL 2788152 (Bankr. D.

14

Del. 2010). Specifically the court held that the complaint contained no facts from which the court could infer that the transfer was made on account of antecedent debt. *Id.* at \*5. Defining antecedent debt as "[a] debtor's prepetition obligation that existed before a debtor's transfer of an interest in property," the court found that the complaint failed to allege that any services were provided prior to the transfer or that any other preexisting debt was owed. *Id*. The court noted that although the complaint specified the date of the alleged transfer, it failed to allege that services were performed prior to that date. *Id.*

34.    Consequently, under recent interpretations of *Twombly* and *Iqbal,* the Proposed Amended Complaint must include facts in support of the existence of an antecedent debt, including not only the nature and amount of the antecedent debt, but also specific allegations as to the goods provided or services performed prior to the alleged transfer date. The Proposed Amended Complaint fails to meet this standard. Specifically, the Proposed Amended Complaint fails to show that a debt existed prior to each of the alleged transfers.

35.    The Plaintiff has pled certain facts in an attempt to show that the alleged transfers were made on account of an antecedent debt, but such facts are insufficient. In the Proposed Amended Complaint, the Plaintiff merely provided a purchase order number as evidence of antecedent debt. Despite the contention of the Plaintiff, a purchase order number is insufficient to show the existence of an antecedent debt. While the existence of a purchase order shows that certain goods were ordered by the Debtors, it does not show that such goods were delivered prior to the alleged transfer date as required by the court in *Charys*. *Id.* The existence of a purchase order also does not conclusively establish that a debt was owed by the Plaintiff to Sprimag at the time of each transfer. Because the Plaintiff failed to plead sufficient facts to show that these alleged transfers were made on account of an antecedent debt, the Proposed Amended Complaint

15

does not satisfy the pleading requirements set forth by the United States Supreme Court and would not survive a motion to dismiss.  As a result of the Plaintiff's failure to adequately plead facts to support the allegation that the alleged transfers were made on account of antecedent debt, the Proposed Amended Complaint is futile and the Motion to Amend should be denied by this Court.

> **c.    The Proposed Amended Complaint is barred by the doctrine of laches, and therefore is futile.**

36.    The Proposed Amended Complaint is barred by the doctrine of laches, making it futile. The Second Circuit Court of Appeals requires a defendant to satisfy three elements to prevail on a laches defense: (1) that it lacked knowledge that the claim might be asserted against it; (2) that the plaintiff delayed in asserting the claim despite the opportunity to do so; and (3) that it would be prejudiced if the claim were now allowed to go forward. *See e.g., Gucci v. Sinatra (In re Gucci)*, 197 Fed. Appx. 58, 60 (2d Cir. 2006).

37.    Sprimag can satisfy each of these three elements. First, as set forth above, Sprimag did not have any knowledge of the Original Complaint or even that a complaint was foreseeable. Because the Original Complaint was filed and left under seal until December of 2009, Sprimag had no way of knowing it was a potential defendant in an avoidance action. Second, it should go without dispute that the Debtors delayed the claims against Sprimag despite the opportunity to assert them. Finally, as described below, Sprimag would suffer ample prejudice if this Court were to now allow the claims to go forward. For the foregoing reasons, the Proposed Amended Complaint cannot survive a motion to dismiss, making it futile, and the Motion to Amend should be denied by this Court.

16

2. **Sprimag will suffer undue prejudice if the Motion to Amend is granted by this Court.**

38.     Not only will Sprimag suffer actual prejudice, but prejudice is presumed as a matter of law in these circumstances. Therefore, the Motion to Amend should be denied by this Court.

a. **Prejudice is presumed as a matter of law.**

39.     In recognition of the natural prejudice resulting from a party's delay in prosecuting an action, including by delaying service of the complaint, the Second Circuit recognizes that "prejudice to defendants resulting from unreasonable delay may be presumed . . . [and] is particularly appropriate where, as here, the plaintiff's delay was prolonged." *Shannon v. GE*, 186 F.3d 186 (2d Cir. 1999) (internal citations and quotations omitted).

40.     Indeed, courts regularly recognize that "[f]ailure to use reasonable diligence in serving a summons is more fraught with possibilities of unfairness and abuse than failure to diligently prosecute an action after summons is served." *Richardson v. United White Shipping Co.*, 38 F.R.D. 494, 496 (N.D. Cal. 1965) (dismissal where service perfected 28 months after the filing of the action).   This is because such delay "affects all the defendant's preparations." *Anderson*, *Anderson v. Air West, Inc.*, 542 F.2d 522, 525 (9th Cir. 1976) (dismissal under Rule 41(b) based on failure to serve for a year despite entry of order extending service period); *Farhang v. Indian Inst. of Tech.*, 2010 U.S. Dist. LEXIS 53975, at *14-15 (N.D. Cal. June 1, 2010)  (delayed service prejudiced defendant "by depriving him of the opportunity to engage in earlier preparation and participation in the suit.").   Indeed, "[d]elay alone can infuse an adverse element into the proper flow of litigation: evidence deteriorates or disappears, memories fade,

and witnesses die or move away." *Veazey v. Young's Yacht Sale & Service, Inc.*, 644 F.2d 475, 478 (5th Cir. 1981) (dismissal under Rule 41(b) for failure to serve for nearly 21 months).[5]

41.    In addition, where, as here, a plaintiff files its complaint immediately prior to the running of the statute of limitations and then fails to serve, prejudice to defendants is magnified:

> Once the statute [of limitations] has run, a potential defendant who has not been served is entitled to expect that he will no longer have to defend against the claim. If service can be delayed indefinitely once the complaint is filed within the statutory period, these expectations are defeated and the statute of limitations no longer protects defendants from stale claims.

*Anderson*, 542 F.2d at 525; *see also Zapata v. New York,* 502 F.3d 192, 198 (2d Cir. 2007) ("It is obvious that any defendant would be harmed by a generous extension of the service period beyond the limitations period for the action, especially if the defendant had no actual notice of the existence of the complaint until the service period had expired. . ."); *Redding v. Essex Crane Rental Corp. of Alabama*, 752 F.2d 1077, 1078 (5th Cir. 1985) (holding that it was an "obvious misuse of the judicial process" to prevent defendant from learning of action by failing to serve).

### b.    Sprimag will suffer actual prejudice if this Court grants the Motion to Amend.

42.    "Perhaps the most important factor listed by the Court for denying leave to amend is that the opposing party will be prejudiced if the movant is permitted to alter a pleading." *Wright, Miller, Kane & Marcus,* 6 Fed. Prac. & Proc. Civ. § 1487 (3d ed. 2010); *see also Zenith*

---

[5] Unfortunately, based on Delphi's decision to delay prosecution of this action for approximately five years, this action presents the unusual circumstance where amendment is sought at the beginning of the action, but years after the action was filed.  To fully understand and analyze Sprimag's prejudice, resulting here from Delphi's failure timely to effectuate service compounded by Delphi's attempt to amend, this Court should instead look to the more closely analogous context of dismissals for failure to prosecute under Fed. R. Civ. P. 41(b) – more specifically, where courts have considered the prejudice caused by failure to timely serve defendants. Rule 41(b) provides yet another basis for dismissal of the Original Complaint.

*Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 91 S. Ct. 795, 28 L. Ed. 2d 77 (1971) (holding that although whether to grant leave to amend is within the discretion of the court, the court is required to take into account any prejudice that the opposing party would suffer as a result).

43.     Granting the Motion to Amend and allowing the Plaintiff to proceed against Sprimag with the Proposed Amended Complaint would not serve the interests of justice, and would greatly prejudice Sprimag. Because the Original Complaint was filed under seal, Sprimag had no knowledge of the Original Complaint until December of 2009. As a result, Sprimag is not in the position to properly defend the claims asserted in the Proposed Amended Complaint. While the Plaintiff was able to collect and retain the evidence that supported the allegations it made under seal, Sprimag was kept in the dark and is left without the information necessary to defend itself in the event that this Court grants the Motion to Amend.

44.     In the time frame of the Debtors' extensions, from October of 2007 to December of 2009, Sprimag underwent certain changes that will prejudice it in defending this adversary proceeding. Sprimag's project manager, the manager of the Delphi account at the time of the alleged transfers, is now deceased. If forced to defend this adversary proceeding, Sprimag would have to do so without the assistance of its former project manager, whose recollection will be pertinent to Sprimag's defense. Furthermore, upon information and belief, the machinery sold by Sprimag to the Debtors in connection with the alleged transfers has been sold by the Debtors, and sold again by that purchaser. Obtaining necessary information for Sprimag's defense will likewise be extremely difficult. Attached hereto and incorporated herein as <u>Exhibit C</u> is the affidavit of Joseph Vanden-Eynden (the "Vanden-Eynden Affidavit") which further illustrates the prejudice that will be suffered by Sprimag if this Court grants the Motion to Amend.

19

45. Because prejudice is presumed as a matter of law and because Sprimag will suffer

undue, actual prejudice if the Motion to Amend is granted, this Court should deny the Motion to

Amend.

**B.     The Motion to Amend should be denied because the Proposed Amended Complaint
fails to comply with the requirements of the Dismissal Order.**

46. In the Dismissal Order, this Court specified certain elements which were required

to be included in the Proposed Amended Complaint, stating:

> By no later than September 7, 2010, the Reorganized Debtors shall
> file a motion for leave to amend the complaint in each Adversary
> Proceeding the Reorganized Debtors intend to pursue (each, a
> "Motion to Amend").  Each Motion to Amend shall attach a
> proposed amended complaint that, for each alleged transfer shall
> set forth, at a minimum, the transferor, the transferee, any known
> subsequent transferee against whom relief is sought the antecedent
> debt and which Reorganized Debtors is the plaintiff.

47. While the Plaintiff has complied with the Dismissal Order in one respect by

designating which Reorganized Debtor is the plaintiff in this adversary proceeding[6], the Plaintiff

has failed to comply with the other minimum requirements of the Dismissal Order.

**1.     The Debtors failed to plead facts related to the antecedent debt.**

48. Section 547(b)(2) of the Bankruptcy Code provides that in order to have a valid

complaint to avoid a transfer as a preference, the transfer at issue must have been:

> (2) for or on account of an antecedent debt owed by the debtor
> before such transfer was made.

---

[6] The Proposed Amended Complaint indicates that Delphi Automotive Systems, LLC ("DAS" or the "Plaintiff") is
the plaintiff in this adversary proceeding. Pursuant to the Dismissal Order, all claims by any of the Debtors or
Reorganized Debtors other than DAS should be dismissed with prejudice.  *See* Document No. 60 in Adversary
Proceeding No. 07-02198 "Order Dismissing Parties and Claims Not Included in Proposed First Amended
Complaint."

49.     Courts have found that this provision requires the plaintiff in a preference action to allege facts that support its contentions that:  (1) the transfer was in connection with a debt, *see Hydrogen*, 431 B.R. at 355; (2) which was owed by the plaintiff/debtor, *see, e.g., Chemical Bank v. Dana*, 234 B.R. 585, 596 (D. Conn. 1999); and (3) which was antecedent (incurred before) the transfer.  *See, e.g., In re Dorholt, Inc.*, 224 F.3d 871, 873 (8th Cir. 2000).  In the Proposed Amended Complaint, the Debtors have failed to allege facts which support any of the elements of section 547(b)(2) of the Bankruptcy Code.

50.     First, the Plaintiff failed to allege facts related to whether the alleged transfers were made in connection with debt. In the Proposed Amended Complaint, the Plaintiff does not allege any facts which would indicate that the alleged transfers made to Sprimag were on account of any debt. In fact, the Plaintiff's only allegations about the existence of a debt are found in paragraph 22 of the Proposed Amended Complaint, which states:

> Plaintiff made, or caused to be made, each Transfer listed on Exhibit 1 for, or on account of, an antecedent debt owed to Defendant as of the date on which each Transfer was made. The documents evidencing the antecedent debt include the purchase orders and/or invoices/bills of lading identified on Exhibit 1, which purchase order and/or invoices/bills of lading include evidence of the amount of the antecedent debt and the approximate dates the subject services contemplated by the Agreements were ordered by Plaintiff pursuant to the Agreements and/or were provided by Defendant.

51.     In paragraph 22 of the Proposed Amended Complaint, the Plaintiff in essence admits that it has no evidence in its possession which would show that DAS was indebted to Sprimag at the time of the alleged transfers. This is likely because the Plaintiff in fact has no evidence of any kind in its possession which would support its statement that the alleged transfers were made on account of an antecedent debt. Exhibit 1 to the Proposed Amended Complaint includes two columns allegedly related to antecedent debt. One of the columns is

21

titled "Purchase Order/Invoice Number/Antecedent Debt" and the other is titled "Purchase Order/Invoice." The first column allegedly includes the purchase order or invoice number related to the transfer and the second column indicates whether the number is in fact a purchase order number or an invoice number. As further explained herein, the existence of a purchase order does not conclusively establish that a debt was owed by the Plaintiff to Sprimag at the time of each transfer.

52.     Second, the Debtors failed to allege facts sufficient to establish that the debt, to the extent there was a debt, was owed by the Plaintiff. As stated by DAS in paragraph 12 of the Proposed Amended Complaint and in its sworn Statement of Financial Affairs filed in the DAS Chapter 11 case, DAS performed accounting and payment functions for the other Reorganized Debtors. The Proposed Amended Complaint does not allege or provide any facts that DAS, the Plaintiff, owed any debt, to extent there was a debt, to Sprimag. The language used in paragraph 22 of the Proposed Amended Complaint is, in the words of the United States Supreme Court, merely "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements ..." which are insufficient to support a claim under Rule 8 of the Federal Rules of Civil Procedure, as incorporated by Rule 7008 of the Federal Rules of Bankruptcy Procedure ("Rule 8"). *Iqbal*, 129 S. Ct. at 1949 (citation and quotation marks omitted).

53.     Third, the Debtors failed to allege facts to support the allegation that the debt, to the extent that there was a debt, was antecedent. In the Proposed Amended Complaint, DAS did not plead any facts related to when the alleged debts were incurred by DAS and whether those alleged debts arose prior to the alleged transfers. Even if this Court finds that the Plaintiff's conclusory allegations in paragraph 22 of the Proposed Amended Complaint constituted sufficient factual allegations of the existence of a debt, there are no allegations of any kind as to

when these debts were incurred in relation to the alleged transfers. Because the Plaintiff has failed to plead sufficient facts related to the existence of an antecedent debt for each of the alleged transfers, the Plaintiff has failed to comply with the requirements set forth in the Dismissal Order. As a result, the Motion to Amend should be denied by this Court.

>   **2.    The Debtors failed to identify the transferor, the transferee, and known subsequent transferees of the alleged transfers.**

54.    DAS's Statement of Financial Affairs, filed in the DAS chapter 11 case, state the following:

>   Consolidated Accounts Payable and Disbursements System. Certain of the Debtors use a consolidated accounts payable and disbursements system through which such Debtors pay substantially all business-related expenses. All such payments are made by Delphi Automotive Systems LLC ("DAS LLC") and are then charged to the appropriate entity through intercompany accounts. Payments made by DAS LLC to third parties on behalf of other affiliated entities are reflected as payments to creditors in Question 3a of DAS LLC's Statement of Financial Affairs.

55.    Under this payable system, DAS's bank accounts could have been used by other Debtors to pay outside third party debts owed by other Delphi entities. Therefore, it is likely in many cases that DAS was an initial transferee of a transfer for the payment of a debt of another Delphi entity. *See generally* 11 U.S.C. § 550(a).[7]

56.    Despite the Plaintiff's knowledge of its own payment system, the Plaintiff did not even attempt to allege whether it was the initial transferee of the transfers at issue in this case (making Sprimag a subsequent transferee) or whether Sprimag was in fact the initial transferee. *See generally* 11 U.S.C. § 550(b) (providing protection for subsequent transferees). The failure to make any factual allegations concerning which parties were the transferors, the transferees and

---

[7] The Debtors were only substantively consolidated for purposes of plan voting and claim distributions.

23

the subsequent transferees, constitutes a clear failure to comply with the terms of the Dismissal

Order. Therefore, the Motion to Amend should be denied.

**C.    No further amendments of the Proposed Amended Complaint should be permitted by this Court.**

57.    The language of the Dismissal Order indicates that no further amendment of the

Proposed Amended Complaint is permissible. In paragraph 4 to the Dismissal Order, this Court

ordered as follows:

> By no later than September 7, 2010, the Reorganized Debtors shall file a motion for leave to amend the complaint in each Adversary Proceeding the Reorganized Debtors intend to pursue (each a "Motion to Amend"). ***Each Motion to Amend shall attach a proposed amended complaint that, for each alleged transfer shall set forth, at a minimum,*** the transferor, the transferee, any known subsequent transferee against whom relief is sought, the antecedent debt and which Reorganized Debtor is the plaintiff.

*Dismissal Order*, ¶ 4 (emphasis added).

58.    The Plaintiff was required to file a motion to amend along with a proposed

amended complaint. The Proposed Amended Complaint filed by the Plaintiff was required by

this Court, at a minimum, to include certain information.[8] Failure to include any of the

information required by the Dismissal Order mandates denial of the Motion to Amend on

account of non-compliance with the Dismissal Order. Furthermore, if this Court finds that the

Plaintiff failed to include the minimum information for certain transfers, and not others, the

Motion to Amend should be denied with respect to those transfers.

59.    The Debtors had enviable resources and unprecedented time for acquiring the data

necessary to make out *prima facie* cases in the preference actions they have chosen to pursue.

---

[8] In paragraph 29 of the Motion to Amend, the Debtors state that they understood this Court to instruct them at the July Hearing to include in the proposed amended complaints the items set forth in the Dismissal Order, "at a minimum."

24

The Debtors have had five years to assemble necessary data, which includes, at a minimum, all of the data required by the Dismissal Order. The Debtors have had five years to figure out, for each transfer, the identity of the transferor, the identity of the transferee, the identity of any known subsequent transferee against whom relief is sought, and the antecedent debt. In entering the Dismissal Order, this Court justly required that the Plaintiff show *at a minimum* that it has or has not sufficient data to meet the pleading standards required by the United States Supreme Court in *Twombly* and *Iqbal*.

60. Therefore, any denial of the Motion to Amend, in whole or in part, should be with prejudice, for failure to meet the "minimum" expressly set forth in the Dismissal Order. The language of the Dismissal Order can be fairly read not to permit second chances. To permit the Plaintiff to extend again the pleading process is not justifiable. To place onto Sprimag the burden of assisting the Plaintiff by pointing out gaps in the Proposed Amended Complaint, to be cured by further amendment, would violate the letter and spirit of the Dismissal Order.

**D.     The Defendant incorporates all applicable arguments raised by other defendants in their objections to the Motion to Amend.**

61. Numerous other objections to the Motion to Amend have been filed by the defendants in the various avoidance actions. These objections seek denial of the Motion to Amend on various legal grounds. Because the facts surrounding those actions are, in many respects, similar to those found here, Sprimag incorporates all applicable arguments raised by the other defendants in their objections to the Motion to Amend, including, but not limited to, the argument that Plaintiff was solvent at the time of the alleged transfers. Furthermore, Sprimag reserves the right to amend or supplement this Objection.

25

## CONCLUSION

62.     Due to the futility of the Proposed Amended Complaint and the prejudice that Sprimag will suffer as a result of the Proposed Amended Complaint, the Motion to Amend should be denied by this Court. Rule 15 of the Federal Rules of Civil Procedures only allows amendment of a complaint "when justice so requires." Sprimag asserts that only injustice will result from this Court granting the Motion to Amend and allowing the Plaintiff to further pursue this adversary proceeding. In drafting the Proposed Amended Complaint, the Debtors have failed to comply with the Dismissal Order. This shows sloppiness on the part of the Plaintiff who was so graciously given a second chance by this Court. For these reasons and for the reasons set forth herein, Sprimag respectfully requests that this Court deny the Motion to Amend.

WHEREFORE, Sprimag respectfully requests that this Court enter an Order (i) sustaining this Objection; (ii) denying the relief sought by the Motion to Amend; (iii) to the extent necessary to afford complete relief, vacating, with respect to Sprimag, pursuant to Fed. R. Civ. P. 60 and Fed. R. Bankr. P. 9024, certain orders of this Court, including the Preservation of Estate Claims Procedures Order dated August 16, 2007, the Extension Orders dated March 28, 2008, April 30, 2008, and October 22, 2009 respectively; and (iv) for such other and further relief as this Court may deem necessary and appropriate.

Dated:  November 24, 2010                     Respectfully submitted,


                                              */s/ Douglas L. Lutz*
                                              Douglas L. Lutz, Esq.
                                              Lindsey F. Baker, Esq.
                                              **FROST BROWN TODD LLC**
                                              2200 PNC Center
                                              201 East Fifth Street
                                              Cincinnati, OH 45202
                                              513-651-6800 Telephone
                                              513-651-6981 Facsimile
                                              dlutz@fbtlaw.com
                                              lbaker@fbtlaw.com

                                              Attorneys for Sprimag Inc.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing *Objection to Reorganized Debtors' Motion for Leave to File Amended Complaints and Request for Entry of an Order Vacating Certain Prior Orders Pursuant to Fed. R. Civ. P. 60 and Fed. R. Bankr. P. 9024* was sent via regular United States mail, postage prepaid, and by ECF noticing, as indicated, on November 24, 2010 to the parties listed below.

*/s/ Douglas L. Lutz*
Douglas L. Lutz

### VIA ECF NOTICING / REGULAR MAIL

Eric Fisher, Esq.
Butzel Long, a Professional Corporation
380 Madison Avenue
22nd Floor
New York, NY 10017
fishere@butzel.com
*Counsel for Plaintiffs*

Cynthia J. Haffey, Esq.
Butzel Long
150 W. Jefferson Avenue
Sutie 100
Detroit, MI 48226
haffey@butzel.com
*Counsel for Plaintiffs*

### VIA REGULAR MAIL

Togut, Segal & Segal LLP
One Penn Plaza
Suite 3335
New York, NY 10119
*Counsel for Plaintiffs*

Honorable Robert D. Drain, Bankruptcy Judge
United States Bankruptcy Court
300 Quarropas Street
White Plains, New York 10601

2211981vvv2