**JAECKLE FLEISCHMANN & MUGEL, LLP**
12 Fountain Plaza, Suite 800
Buffalo, New York 14202
Tel: 716.856.0600
Fax: 716.856.0432
Beverley S. Braun, Esq. (admitted *pro hac vice*)
bbraun@jaeckle.com

*Attorneys for Jamestown Container Corporation*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| DPH HOLDINGS CORP., *et al.*, | ) | No. 05-44481 (RDD) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| DELPHI CORPORATION, *et al.,* | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Adv. Pro. No. 07-02322 |
| -against- | ) | |
| | ) | |
| JAMESTOWN CONTAINER CORP., | ) | |
| | ) | |
| Defendant. | ) | |

## RESPONSE AND OBJECTION TO THE REORGANIZED DEBTORS'
## MOTION FOR LEAVE TO FILE AMENDED COMPLAINTS

Jamestown Container Corporation ("JCC"), by and through its undersigned counsel,

Jaeckle, Fleischmann & Mugel, LLP, and for its Response and Objection to the Reorganized

Debtors' Motion for Leave to File Amended Complaints (hereinafter the "Motion to Amend")

hereby states as follows:

## PRELIMINARY STATEMENT

1.      This Court should deny the Reorganized Debtors' (hereinafter "Debtors") motion for leave to amend, which asks that this Court exercise its discretion to permit Delphi Automotive Systems, LLC  (hereinafter "Plaintiff" or "Delphi") to file an Amended Complaint against Jamestown Container Corp. (hereinafter "JCC") to recover $1,482,333.47 in alleged preferential transfers[1].

2.      As discussed below, the proposed Amended Complaint is futile and JCC will be severely prejudiced by Debtors' undue delay if this case is permitted to proceed.

## RELEVANT BACKGROUND

3.      On October 5, 2005, Delphi Corporation and the majority of its subsidiaries each filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code ("Bankruptcy Code").  On October 14, 2005, three additional subsidiaries of Delphi Corporation filed voluntary for petitions for relief under Chapter 11 of the Bankruptcy Code.

4.      Pursuant to 11 U.S.C. §546(a), the Debtors had two years from their respective petition dates in which to bring an avoidance action.

5.      Prior and subsequent to the Debtors' filing dates, JCC provided the Debtors with various packaging materials and contract packaging services in connection with the packaging of service parts, including radiators, for distribution by Delphi.

### A.      Preservation of Estate Claims Procedures Motion and Order

6.      By motion dated August 6, 2007 (the "Preservation of Estate Claims Procedures Motion"), the Debtors sought entry of an order seeking, among other things, the establishment of

---

[1] Incredulously, Plaintiff now asserts a preference claim for $1,482,333,47 in its proposed amended complaint when the original complaint (*see* JCC A.P. Docket No. 1) only asserted a claim for $1,478,726.94.

procedures for certain adversary procedures, including those commenced by the Debtors under
Bankruptcy Code §§541, 544, 545, 547, 548 and 553.  Among other things, the procedures
sought included:  (i) leave for Debtors to file avoidance actions under seal; (ii) an extension of
time beyond the 120-day period provided for in Fed. R. Civ. P. 4(m) to serve summonses and
complaints; and (c) a stay of adversary proceedings until service of process was effectuated.
(Docket No. 8905, ¶¶ 33-38).

7.    The aforementioned procedures were purportedly intended to permit the Debtors
to "preserve the status quo," and to preserve "potentially valuable assets without disrupting the
plan process of existing business relationships prematurely or prejudicing the rights of any
defendants," as well as to "avoid having to force all potential defendants to retain counsel to
defend against adversary proceedings when, in fact, most of them likely will be resolved by a
reorganized plan and never pursued." (Docket No. 8905, ¶¶33-34).

8.    As for justifying the need to file the complaints under seal, the Debtors asserted
that such action was necessary to "avoid unnecessarily alarming potential defendants," because
"Debtors have worked to preserve and repair their business relationships with many of the
potential defendants during these cases and have negotiated or regained favorable credit terms
with many suppliers and are continuing to do so."  (Docket No. 8905 ¶37).

9.    JCC was not provided with notice of the Preservation of Estate Claims Procedures
Motion.  *See* Affidavit of Service, dated August 10, 2007 (Docket No. 9039).  See also the
Declaration of Richard Weimer, annexed hereto as **Exhibit "A"**.

10.    On August 16, 2007, this Court entered the Preservation of Estate Claims
Procedures Order (Docket Number 9105), which (i) allowed the Debtors to file adversary
proceeding complaints under seal, (ii) directed the Court to delay issuing summonses for

complaints unless and until the Debtors notified the Clerk of their intent to prosecute such

actions, (iii) stayed each adversary action unless and the until the Debtors effectuated service of

process on the respective defendants, and (iv) extended the deadline under Fed. R. Civ. P. 4(m)

by which the Debtors would have to serve process by March 31, 2008, so that the complaints

would not be subject to dismissal under Fed. R. Civ. P. 4(m).

11.    The March 31, 2008 deadline by which to serve process was six months after the

commencement date of this adversary proceeding; however, it was only a two month extension

beyond the 120 days afforded under Fed. R. Civ. P. 4(m).

**B.    Commencement of Adversary Proceeding Against JCC**

12.    On September 28, 2007, the Plaintiffs filed the original Complaint in this

adversary proceeding (*see* JCC A.P. Docket No. 1) under seal with the Clerk.  That Complaint

sought to recover, pursuant to Bankruptcy Code §§547 and 550, alleged preferential transfers

made to JCC in the aggregate amount of $1,478,726.94 (Id.).  The Debtors did not serve any

notice to JCC related to the filing of the Complaint against it.

13.    The statute of limitations for commencing an avoidance action pursuant to

Bankruptcy Code §547(a) expired on or before October 14, 2007.[2]

14.    The only alleged information within the original Complaint that was specific to

JCC is the list of allegedly avoidable transfers attached to the Complaint as Exhibit A.

**C.    Confirmation of the Debtors' Plan of Reorganization**

15.    On or about December 10, 2007, the Debtors filed their First Amended Joint Plan

of Reorganization (the "Plan") (Docket No. 11386), which Plan was confirmed by Order of this

Court on January 25, 2008 (Docket No. 12359).  The Plan, as confirmed, provided for the

payment in full of the unsecured creditors of the Debtors.  Exhibit 7.24 to the Plan, which set

---

[2] For the initial filers in the bankruptcy, the statute of limitations expired on October 8, 2007.

forth the actions the Debtors sought to retain under the Plan, did not contain <u>any</u> reference to JCC or this adversary proceeding.

16.     Section 14.3 of the Plan provides that the Debtors "may alter, amend, or modify any exhibits to this Plan under Section 1127(a) of the Bankruptcy Code <u>at any time prior to the Confirmation Date</u>."  (Docket No. 11386)(emphasis added).

**D.     The Second Extension Motion and Order**

17.     By motion dated February 28, 2008 (the "Second Extension Motion")(Docket No. 12922), the Debtors sought to modify Paragraph 8 of the Preservation of Estate Claims Procedures Order, so as to extend for a <u>second</u> time the deadline under Fed. R. Civ. P. 4(m) whereby the Debtors would have until May 31, 2008 in which to serve process.  The request represented an additional two-month extension.

18.     The stated purpose for this extension was to "enable the Debtors to fulfill their fiduciary responsibility to preserve valuable estate assets in a manner that would not unnecessarily disrupt the emergence process of the Debtors' ongoing operations," as well as to reduce the "administrative and economic burdens of the adversary proceedings to the Debtors, the Court, and the defendants." (Docket No. 12922, ¶21).

19.     The Second Extension Motion reaffirmed that the Debtors would "not retain <u>any</u> causes of action asserted in the [adversary proceedings] except those specifically listed in Exhibit 7.24 of the Plan."  (<u>Id.</u>, ¶ 17) (emphasis added).  In fact, the Debtors stated in the Second Extension Motion that of the 742 adversary proceedings commenced under seal, only the claims related to Laneko Engineering Co., Wachovia Bank, National Association, Laneko Engineering Co., Inc. and the affiliates and subsidiaries (hereinafter collectively referred to as the "Laneko Defendants") were subject to the Procedures Order.  (<u>Id.</u>, ¶ 17, n4).

20.     On March 28, 2008, this Court granted the Second Extension Motion (Docket No. 13277 (the "Second Extension Order")) wherein Paragraph 8 of the Preservation of Estate Claims Procedures Order was modified, so that the time under Fed. R. Civ. P. 4(m) by which the Debtors must serve process on the defendants in the various adversary proceedings was further extended to May 31, 2008.

21.     JCC was not provided with notice of the Second Extension Motion.  *See* Affidavit of Service, dated March 4, 2008 (Docket No. 12970).

**E.     Third Extension Motion and Order**

22.     On April 4, 2008, the Debtors announced that the plan investors had refused to fund their investments under the Confirmed Plan and that the necessary exit financing for the plan would not close.  By motion dated April 10, 2008 (the "Third Extension Motion"), the Debtors sought yet again to extend the service deadline for the adversary proceedings to 30 days after substantial consummation of the Debtors' plan.  (Docket No. 13361, ¶19).  The Debtors again purported that relief requested was necessary to avoid "disrupt[ing] the emergence process of the Debtors' current business relationships with potential defendants that are necessary to the Debtors' ongoing operations."  (Id., ¶ 22).  Additionally, the Debtors asserted that the third extension was in the best interest of all parties because "most of the Adversary Proceedings will not be prosecuted if the Plan were to become effective and likely will not be prosecuted under any modified plan."  (Id.)

23.     The Third Extension Motion again stated that the Debtors would "not retain any of the causes of action asserted in the [adversary proceedings] except those specifically listed on Exhibit 7.24 to the Plan," and that of the 742 adversary proceedings commenced under seal, only

the claims against the Laneko Defendants were subject to the Preservation of Estate Claims Procedures Order. (Docket No. 13361, ¶ 18, n.4).

24.     JCC was not provided with notice of the Third Extension Motion.  *See* Affidavit of Service, dated April 16, 2008. (Docket No. 13415).

25.     On April 30, 2008, the Court entered an order (the "Third Extension Order") (Docket No. 13484), modifying Paragraph 8 of the Preservation of Estate Claims Procedures Order, as previously modified by the Second Extension Order, so that the time under Fed. R. Civ. P. 4(m) by which the Debtors must serve a defendant in the adversary proceedings with a summons and complaint was further extended until 30 days after the later of:  (i) substantial consummation of the Plan or any modified Chapter 11 plan for the Debtors; or (ii) December 31, 2008.

**F.     Entry of Modification Approval Order and Effective Date**

26.     On July 30, 2009, the Court entered an order (the "Modification Approval Order") (Docket No. 18707) approving certain modifications to the Plan (the "Modified Plan").

27.     The effective date of the Modified Plan occurred on October 6, 2009.  (Docket No. 18707, ¶3).

**G.     Fourth Extension Motion and Order**

28.     By motion dated October 2, 2009 (the "Fourth Extension Motion" )(Docket No. 18952), the Debtors again sought to further modify Paragraph 8 of the Preservation of Estate Claims Procedures Order, so as to extend for a <u>fourth</u> time the deadline under Fed. R. Civ. P. 4(m) by which the Debtors were required to serve process until 180 days after substantial confirmation of the Modified Plan.

29.     The Debtors stated that this further extension was necessary in light of the fact that the Debtors now anticipated that they would retain 177 of the adversary proceedings filed under seal.  The Debtors asserted that 30 days after the substantial consummation of the Modified Plan was not sufficient time to "assess the ongoing relationship with certain defendants and whether events since initiating the [adversary proceedings] have impacted the Debtors' estimated recoveries," and determine whether to pursue such retained adversary proceedings. The Debtors then fell back into their altruistic mantra than an extension "would reduce the administrative and economic burdens of the [retained adversary proceedings] on the Debtors and the potential defendants."  (Docket No. 18952, ¶¶17, 19).

30.     JCC was not provided with notice of the Fourth Extension Motion.  See Affidavit of Service, dated October 7, 2009.  (Docket No. 18967).

31.     On October 22, 2009, the Court entered an order (the "Fourth Extension Order") (Docket No. 18999), modifying Paragraph 8 of the Preservation of Estate Claims Procedures Order, so that the time under Fed. R. Civ. P. 4(m) by which the Debtors were required to serve a defendant in the adversary proceedings with a summons and complaint was further extended until 180 days after substantial consummation of the Modified Plan.

32.     On March 12, 2010, more than two years after the Complaint was filed and the statute of limitations had expired, the Complaint was unsealed and a summons was issued.

33.     Although the Plaintiff filed an affidavit of service in connection with the purported service of the original Complaint, JCC has no such record of receipt.  See Weimer Declaration.  Moreover, to the extent that such service was effectuated, there is no indication that the Complaint was served with the Preservation of Estate Claims Procedure Order dated October 22, 2010 (Docket No. 18999), as required by this Court.

34.     On July 1, 2010, JCC filed its Motion to Dismiss the Complaint as part of the Second Wave of dismissal motions in this bankruptcy.  *See* JCC A.P. Docket No. 28.

35.     On July 22, 2010, this Court heard arguments as to the First Wave motions and entered an Order Granting in Part First Wave Motions to Dismiss (hereinafter the "Dismissal Order", signed September 7, 2010).  The Dismissal Order dismissed with prejudice certain specific adversary proceedings and all those adversary proceedings filed against foreign suppliers or those supplies in which the amount in controversy did not exceed $250,000.00.  The Dismissal Order further held that:

> All remaining claims in all of the Adversary Proceedings in which a First Wave Motion, a Second Wave Motion (as defined in the Procedures Order), a motion for judgment on the pleadings, and/or a joinder in any of the foregoing are DIMISSED without prejudice because the Debtors have failed to plead sufficient facts to state a claim, and have not complied with Rule 8 of the Federal Rules of Civil Procedure, made applicable by Rule 7008 of the Federal Rules of Bankruptcy Procedure.  By no later than September 7, 2010, the Reorganized Debtors shall file a motion for leave to amend the complaint in each Adversary Proceeding the Reorganized Debtors intend to pursue (each, a "Motion to Amend").  Each Motion to Amend shall attached a proposed amended complaint, that for each alleged transfer shall set forth, at a minimum, the transferor, the transferee, any known subsequent transfer against whom relief is sought, the antecedent debt and which Reorganized Debtor is the plaintiff.

36.     On September 7, 2010, Plaintiff filed the Motion to Amend, attaching the proposed Amended Complaint.  A copy of the proposed Amended Complaint with the last page of exhibit 1 is annexed hereto as **Exhibit "B"**.  Exhibit 1 to the proposed Amended Complaint as to JCC is approximately 60 pages in length.  As a result, only the final page, which includes the total amount of the alleged preferential transfers is provided at this time.  The complete Exhibit 1 is available at the JCC A.P. at Docket No. 30.

37.    JCC files this instant Response and Objection to Debtors' Motion to Leave to File

Amend Complaints and requests, for the reasons set forth herein, that Debtors' motion be denied

in its entirety.


## ARGUMENT

## I.    PLAINTIFF'S MOTION TO AMEND FAILS TO COMPLY WITH FED. R. CIV. P. 15 AND FED. R. BANKR. P. 7015.

38.    In support of their motion to amend, Debtors rely upon Fed. R. Civ. P. 15(a)(2),

made applicable by Fed. R. Bankr. P. 7015, which states, "a party may amend its pleading only

with the opposing party's written consent or the court's leave.  The court should freely give leave

when justice so requires."  As noted by the Debtors, however, the court is not require to grant

leave to amend especially where there is good cause to deny such a motion, such as the presence

of "undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the

opposing party or futility…."  Monahan v. New York City Dept. of Corrections, 214 F.3d 275,

283 (2d Cir. 2000) (citations omitted).

39.    Indeed, "[c]onsiderations of undue delay, bad faith, and prejudice to the opposing

party [are] all touchstones of a district court's discretionary authority to deny leave to amend."

*Barrows v. Forest Laboratories, Inc.*, 742 F.2d 54, 58 (2d Cir. 1984)(alteration in original).

Furthermore, "[w]here it appears that granting leave to amend is unlikely to be productive,…it is

not an abuse of discretion to deny leave to amend."  Ruffalo v. Oppenheimer & Co., 987 F.2d

129, 131 (2d Cir. 1993).  Moreover, "it is proper to deny leave to replead where there is no merit

in the proposed amendments or amendment would be futile."  Hunt v. Alliance N. Am. Gov't

Income Trust, Inc., 159 F.3d 723, 728 (2d Cir. 1998).  Such is precisely the case here.

40.    In this case, Debtors casually assert that none of the <u>Monahan</u> factors are present, therefore their motion to amend should be granted.  Conspicuously absent from Debtors' motion is <u>any</u> argument as to why justice requires granting their motion.  Indeed, the same prejudice, harm, due process and procedural violations which plagued the filing and service of the original Complaint are present here.

**A.    The Proposed Amended Complaint is Barred by the Statute of Limitations**

41.    The Debtors' claims, brought more than two years after the statute of limitations has expired, are barred as a matter of law.

42.    Pursuant to 11 U.S.C. §546(a):

> An action or proceeding under section 544, 545, 547, 548 or 553 of this title may not be commenced after the earlier of – (1) the later of (A) 2 years after the entry of the order for relief; or (B) 1 year after the appointment or election of the first trustee under section 702, 1104, 1163, 1202, or 1302 of this title if such appointment or such election occurs before the expiration of the period specified in subparagraph (A); or (2) the time the case is closed or dismissed.

43.    Consequently, the deadline for the Debtors to commence an adversary proceeding against JCC based upon allegedly avoidable preference transfers expired on or before October 14, 2007.

44.    JCC was not served with the original Complaint until almost two and a half years later.  Now, the Debtors seek to file an Amended Complaint which was included in Debtors' motion to amend, served on September 7, 2010.  Indeed, Debtors seek to amend a complaint which was filed almost three <u>years</u> earlier.  In JCC's case, not only is the Amended Complaint more than three years after the surreptitious filing of the original Complaint, but now the Debtors are seeking the return of additional funds <u>NOT</u> identified in the original Complaint.

45.      Pursuant to Fed. R. Civ. P. 4(m), as adopted by Fed. R. Bankr. P. 7004(m), a court may dismiss a complaint where it has not been served within 120 days of filing.  Moreover, a plaintiff may obtain an extension of time to serve a complaint where there is "good cause shown."

46.      In this case, the Plaintiffs sought four extensions of time in which to serve the Complaint.  Significantly, the early extensions were for a limited duration and were based upon the Debtors' stated purpose to preserve its rights while it was attempting to effectuate a 100 cent plan.  The later extensions, in contrast, served no legitimate purpose, and the Debtors were effectively granted unlimited time (30 days after substantial consummation) in which to effectuate service of the Complaints.  Moreover, there is no indication that the Plaintiffs could not identify JCC as a defendant in a potential action or that the Plaintiffs could not locate JCC to effectuate service.  Finally, in support of their Third Extension Motion, the Debtors relied upon Bank of Cape Verde v. Bronson, 167 F.R.D. 370 (S.D.N.Y. 1996); however, the facts of that case are inapposite to this case in that in Bank of Cape Verde, the parties were in active settlement discussions and the plaintiff requested an extension of time to serve the complaint to preserve its right in the event that settlement could not be achieved.  It is also significant to note that, in that case, the potential defendant knew about the claims against it and had notice of the action within the relevant statute of limitations—such is not the case here.  Indeed, here JCC was not even provided with notice of the extension motion, let alone an opportunity to object in the event it might be subject to an avoidance action.  To allow the Debtors to file and serve the Amended Complaint would render 11 U.S.C. §546(a) a nullity and eviscerate the purpose of a statute of limitations.

> 1.      *Plaintiffs Did Not Adequately Preserve Their Claims Within the Statute of Limitations.*

47.     It is axiomatic that statutes of limitations, such as that set forth in 11 U.S.C. §546(a), are statutes of repose giving a plaintiff notice of the time within which to prosecute a legal claim while alerting potential defendants of the time wherein they may be exposed to liability.  While plaintiffs may be able to pursue claims beyond an applicable statutory period, courts have limited those rights to situations where the plaintiff has not slept on its rights, has commenced a timely action in a court of competent jurisdiction, the particular defect in the complaint is waivable, and the defendant "could not have relied upon the policy of repose embodied in the limitation statute, for it was aware that [the plaintiff] was actively pursuing his … remedy."  Burnett v. N.Y.Cent.R.R.Co., 380 U.S.424, 429 (1965)(alteration in original).

48.     In this case, no such exceptional circumstances or "good cause" can be shown for the late service of the original Complaint or to permit leave to file the Amended Complaint. Indeed, the service of the original Complaint (upon which the Amended Complaint is predicated) more than two years after it was filed, under seal, as was done for no other reason than to benefit the Debtors.

49.     The Debtors' behavior is even more egregious in light of the fact that JCC was never notified of the various extension motions and corresponding orders.  Even if JCC had received notice, there was nothing in any of the motions or the Plan which identified any intention of the Debtors to pursue a claim against JCC—in fact, the Plan expressly stated that the Debtors would only affirmatively seek claims against the Laneko Defendants.

50.     The Debtors represented to the Court the importance of their business relationships and their desire to not prejudice their vendors with unnecessary lawsuits.  JCC, just as with the Debtors' other vendors, had the right to take the Debtors' representations to this Court at face value.

51.    Having obtained two brief extensions, the Debtors requested of this Court an

extension of the service deadline for an <u>indefinite</u> period of time, to wit, until substantial

consummation of the reorganization plan.  In seeking this extension, the Debtors lost sight of,

and indeed abused, the purpose of Fed. R. Civ. P. 4(m).  Furthermore, as the original motivations

for the extensions – a 100 cent plan and the need to protect business relationships – dissipated,

the Debtors did not make <u>any</u> effort to pursue this (or any) avoidance action.  Even after filing

their amended plan documents and years later, when the Debtors knew they would be serving

177 defendants with complaints previously filed under seal and not just the five actions identified

in the Plan, the Debtors did not unseal the dockets. Rather, the Debtors continued to seek a

further extension based upon a purported need to assess "existing business relationships with

potential defendants."  (Docket No. 18952, ¶17).

52.    While courts prefer to decide cases in their merits, the procedural rules governing

such actions would be rendered meaningless if parties were allowed to disregard or manipulate

them for their own convenience.  As a result, there are limits whereby a case must be determined

on its procedural stature.  Mused v. U.S.Dep't of Agric. Food and Nutrition Serv., 169 F.R.D. 28,

35 (W.D.N.Y. 1996).  Having chosen to conceal this adversary proceeding at every opportunity,

even when the Debtors' initial reasoning was no longer applicable, the Debtors' dilatory tactics

should not be rewarded.

2.    *JCC Has Been Prejudiced by Continued Concealment of the Complaint
After the Expiration of the Statute of Limitations.*

53.    In addition to not showing "good cause", the delay in proceeding with this action

prejudices JCC.  Incredulously (and consistent with the Debtors' self-serving actions), the

Debtors assert that extending the service deadlines would not "prejudice the potential

defendants." (Preservation of Estate Claims Procedures Motion, Docket No. 8905, ¶48).

However, in seeking leave to amend the Complaint almost three years after it was filed, JCC is prejudiced on multiple levels. It has been almost five years since the Debtors filed their voluntary petitions and more than three years since the original Complaint was filed. Should this Court grant Debtors' motion for leave to amend, JCC will be required to defend against a stale claim and one in which applicable records and personnel are either not available or, in the case of personnel, unable to recollect facts and circumstances surrounding specific transfers.

54.     JCC understands that the issue before this Court is whether Debtors' should be allowed leave to serve an Amended Complaint. However, as Debtors' admit, the Amended Complaint, and its timeliness, is predicated on the filing of the original Complaint. As a result, the sealing of the original Complaint and waiting two and half years to serve it on JCC is effectively no different than if the Plaintiffs had filed the Complaint, or the Amended Complaint, more than two years past the expiration of the statute of limitation—in both scenarios, JCC was denied timely notice. As the United States Supreme Court has expressly stated, "[l]imitations periods are intended to put defendants on notice of adverse claims." Crown Cork & Seal Co. v. Parker, 462 U.S. 345, 352(1983). Indeed, statutes of limitations do not exist so that one party can engage in litigation by ambush, rather statutes of limitations "are designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories faded, and witnesses have disappeared." Order of R.R. Telegraphers v. Ry Express Agency, Inc., 321 U.S. 342, 348-49 (1944). See also, United States v. Kubrick, 444 U.S. 111, 117 (1979) (stating that statutes of limitations "protect defendants and the courts from having to deal with cases in which the search for truth may be seriously impaired by the loss of evidence, whether by death or disappearance of witnesses, fading memories, disappearance of documents, or otherwise.")

15

55.     Where, as here, JCC was not given timely notice, resulting in unfair prejudice and warranting the denial of Debtors' motion for leave to amend.  Order of R.R. Telegraphers, 321 U.S. at 349 ("[E]ven if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitations and … the right to be free from stale claims in time comes to prevail over the right to prosecute them."

> 3.    *Debtors Cannot Use Fed. R. Civ. P. 4(m) and Fed. R. Bankr. P. 7004(m) to Expand Their Substantive Rights.*

56.     Finally, the Debtors, in seeking to amend the original Complaint, seek to use Fed. R. Civ. P 4(m) and, by application, Fed. R. Bankr. P. 7004(m) to assert claims which would have failed if they had been litigated within the applicable statute of limitations period.  It is black-letter law that procedural rules, such as Bankruptcy Rule 7004(m), cannot "abridge, enlarge, or modify any substantive right."  28 U.S.C. §2075.  Where the Bankruptcy Rules and Bankruptcy Code are inconsistent, the Code controls.  In re Perrotta, 406 B.R. 1, 8 (Bankr. D.N.H. 2009)("[T]o the extent that the Bankruptcy Rules and the Bankruptcy Code are inconsistent, the statute controls.").  At the time the Complaint was filed, there was a confirmed plan in place pursuant to which the creditors would be paid in full.  This adversary proceeding would have been barred since preference or avoidance actions inure to the benefit of the creditors. Accordingly, "it is illogical for a debtor to be permitted to invoke §547 if its creditors have all been paid in full."  Adelphia Recovery Trust v. Bank of Amer., N.A., 390 B.R. 80, 98 (S.D.N.Y. 2008)(dismissing preference claims where plan provided for full payment).  Indeed, this rationale was adopted by the Debtors in its Preservation of Estate Claims Procedures Motion (Docket No. 8905, ¶13), wherein the Debtors stated, "avoiding preferential transfers would provide no benefit to the Debtors' estates because any party returning such a transfer would be entitled to a claim for the same amount, to be paid in full under such a plan."

57.    The Debtors should not be allowed to overcome a substantive bar to a claim merely by repeatedly extending the time to serve JCC under Fed. R. Bankr. P. 7004(m) until the facts become more favorable to the Debtors.  See, e.g., In re Global Crossing, Ltd., 385 B.R. 52, 82 (S.D.N.Y. 2008) (stating that it "would at best be debatable" to use Fed. R. Civ. P 4(m) to extend statute of limitations while searching for unidentified prospective defendants) (emphasis added).

58.    Accordingly, Debtors' motion for leave to amend the Complaint should be denied as amendment would be futile as the Amended Complaint would be barred by the two-year statute of limitations in 11 U.S.C. §546(a) and therefore fails to state a claim upon which relief may be granted.

**B.    The Amended Complaint Would is Barred by the Doctrine of Laches,**

59.    In addition to being barred by the applicable statute of limitations, this adversary proceeding, even under an Amended Complaint, is also barred by the doctrine of laches.  In the Second Circuit, to prevail on a laches defense, a defendant must establish that:  (i) the defendant lacked knowledge that the claim might be asserted against it; (ii)  the plaintiff delayed in asserting the claim despite the opportunity to do so; and (iii) the defendant would be prejudiced if the claim were  allowed to go forward.  Ikelionwu v. United States, 150 F.3d 233, 237 (2d Cir. 1998).

60.    In this case, JCC can meet all three requirements.  As to the first requirement, the original Complaint was filed under seal in September 2007 and remained sealed until March of this year.  Furthermore, since JCC was not one of the top 60 creditors, it was not provided notice of any of the prior extension motions, which may have served as an independent basis for giving JCC potential notice.  Finally the Second and Third Extension Motions, along with the Plan,

assert that the Debtors would <u>not</u> pursue avoidance actions against any creditor but for the Laneko Defendants.

61.    In assessing a laches defense, the combined per-complaint and post-filing time period are taken into account.  The court should consider the resulting prejudice to the defendant as a result of any delay both pre- and post-filing.  <u>Allens Cress/Corbetts Glen Preservation Group, Inc. v. Caldera</u>, 2 Fed.Appx. 162, 165 (2d Cir. 2001).

62.    As to the second requirement, the Debtors had numerous opportunities in which to assert the claim against JCC.  Instead, the Debtors chose to conceal the claim, continually seeking delays.  Assuming, *arguendo*, that sealing the complaints and delaying service was permissible initially, as soon as the Plaintiffs became aware that not all creditors would be paid in full, it was at that point that the Plaintiffs had an obligation to unseal the dockets—not continue with solicitation for a modified amended plan with the intended defendants concealed.

63.    Finally, JCC would be prejudiced if this claim is allowed to proceed.  As discussed in ¶¶48, 49, *supra*, time has improved the Debtors' position through the loss and erosion of evidence that was once in JCC's possession.   Moreover, through the lack of notice, JCC has been deprived of the opportunity to participate in the bankruptcy cases to the fullest extent, including objecting to the various extension motions.  Consequently, any claim which Debtors' may have against JCC is barred by the doctrine of laches and the Debtors' motion for leave to amend must be denied.

C.    **The Proposed Amended Complaint is Barred by Judicial Estoppel**

64.    This adversary proceeding is also barred by judicial estoppel.

65.    The doctrine of judicial estoppel "prevents a party from asserting a factual position in a legal proceeding that is contrary to a position previously taken [that party] in a prior

legal proceeding." In re Venture Mortgage Funding, L.P., 245 B.R. 460, 471 (Bankr. S.D.N.Y.

2000) (citation omitted), aff'd, 282 F.3d 185 (2d Cir. 2002).  Indeed, "[j]udicial estoppel is

invoked … to prevent the party from playing fast and loose with the courts, and to protect the

essential integrity of the judicial process."  Rosenshein v. Kleban, 918 F.Supp. 98, 2014

(S.D.N.Y. 1996).

66.    In the Second Circuit there are two factors that must be satisfied to invoke the

doctrine of judicial estoppel:  (i) the party against whom estoppel is asserted took an inconsistent

position in a prior proceeding, and (ii) the first tribunal adopted the inconsistent position in some

manner, such as by rendering a favorable judgment.  In re Venture Mortgage Fund, L.P.,  245

B.R. at 472.  The doctrine, however, does not depend upon prejudice to the party invoking it.  In

re Galerie Des Monnaies of Geneva, Ltd., 55 B.R. 253, 260 (Bankr. S.D.N.Y. 1985), aff'd, 62

B.R. 224 (S.D.N.Y. 1896).

67.    In this case, both factors are satisfied.  First, in their Second Extension Motion,

the Debtors asserted that they would "not retain any of the causes of action asserted in the

[adversary proceedings] except those specifically listed in Exhibit 7.24 to the Plan." (Docket No.

12922, ¶17, n.4).  In fact, the Debtors stated that of the 742 adversary proceedings commenced

under seal, only the claims related to the Laneko Defendants were subject to the Preservation of

Estate Claims Procedures Order.  (Id, ¶ 17).  The Debtors again reiterated this position in their

Third Extension Motion.  (Docket No.13361, ¶18, n. 4).  As for the second factor, it was satisfied

when this Court adopted the positions advanced by the Debtors when it entered orders granting

the relief sought in the Debtors' Second and Third Extension Motions.

By bringing this Complaint against JCC, the Plaintiffs now take the opposite position from the

one they advanced in two consecutive motions, and which was adopted by the Court in its entries

of the March 2008 Second Extension Order and the April 2008 Third Extension Order.  Courts in this district have refused to allow debtors to manipulate the system in this way, finding that,"[t]his is precisely the sort of 'about-face' that undermines the integrity of the bankruptcy process." Rosenshein, 918 F.Supp. at 105.

> **D.**      **The Proposed Amended Complaint is Barred by *Res Judicata***

68.      This action is also barred by the doctrine of *res judicata*.  It is well-settled that "a bankruptcy court's order confirming a reorganization plan constitutes a final judgment on the merits and is to be given preclusive effect under res judicata." In re Amer. Preferred Prescription, Inc., 266 B.R. 273, 277 (E.D.N.Y. 2000).  The "right to bring subsequent litigation must be specifically reserved in the confirmed plan," or it is lost.  Id. at 278 (citation omitted)(emphasis added).  The Modified Plan and related disclosure statement provide no specific information about the claims against JCC, despite the Debtors' ability to provide such information.  As a result, Debtors' claim is barred by the doctrine of *res judicata*.


**II.      THE PRESERVATION OF ESTATE CLAIMS PROCEDURES ORDER AND THE EXTENSION ORDERS SHOULD NOT BE APPLIED TO JCC**

69.      At the July 22, 2010 hearing, this Court dismissed without prejudice, this adversary proceeding.  However, at that hearing, this Court recognized that where, as here, a defendant may have been given no notice or insufficient notice, then the defendant could challenge the Extension Motions and accompanying orders *de novo*.  Specifically, this Court stated (*see* July 22, 2010 Tr., at pp. 103, 119, relevant portions of which are annexed hereto as **Exhibit "C"**):

> [I]f [a Defendant] didn't get notice, it's wide open and I should look at whether, you know, it was appropriate to have entered those orders.  An they should have all their – you know, their

> rights to say the [Procedures Order and Extension Orders]
> shouldn't have been entered.
> *
> *
> [I]f someone really didn't get notice of the extension motions, then
> it would seem to me they should be able to argue to me as if the
> motions were being made right now….

70.    While JCC asserts that Debtors should not be allowed to amend their Complaint against JCC for procedural and equitable bases, JCC alternatively asserts that Debtors' motion should be denied that it has been deprived its procedural due process rights through the Debtors' filing of the original Complaint under seal while continuously seeking to extend time to serve process in excess of two years past the expiration of the statute of limitations.  Accordingly, the order approving the Preservation of Estate Claims Procedures Motion, each of the Extension Orders, and the Modified Plan Confirmation Order should not be applied as against JCC, as the original Complaint was improperly filed under seal pursuant to 11 U.S.C. §107 and there was no good cause to extend time for service pursuant to Fed. R. Civ. P. 4(m) and Fed. R. Bankr. P. 7004(m).

**A.    The Original Complaint Was Improperly Filed Under Seal Pursuant to Section 107 of the Bankruptcy Code.**

71.    There "is a strong presumption and public policy in favor of public access to court records," which is "rooted in the public's First Amendment right to know about the administration of justice."  In re Food Mgmt. Group, 359 B.R. 543,553 (Bankr. S.D.N.Y. 2007) (internal citations and quotations omitted).  Indeed, "[t]his governmental interest in the bankruptcy arena, as unrestricted access to judicial records fosters confidence among creditors regarding the fairness of the bankruptcy system."  In re Gitto Global Corp., 442 F.3d 1, 7 (1st Cir. 2005)(citation omitted).

72.    Section 107 of the Bankruptcy Code codified the common law right of public access in the bankruptcy setting and provides, in relevant part, that "a paper filed in a case under this title and dockets of a bankruptcy court are public record and open to examination by an entity at reasonable times without charge." 11 U.S.C. §107(a).  As a result, the "plain meaning of §107(a) mandates that *all* papers filed with the bankruptcy court are 'public records' unless the bankruptcy court decides to protect the information pursuant to the standards set forth in [§] 107(b)."  In re Food Mgmt. Group, 359 B.R. at 553 (emphasis in original)(internal citations and quotations omitted).

73.    Pursuant to 11 U.S.C. §107(b), there are two narrow exceptions to the general right of public access where "compelling or extraordinary circumstances" require that access be limited.  These exceptions only apply to "(1) protect an entity with respect to a trade secret or confidential research, development, or commercial information; or (2) protect a person with respect to scandalous or defamatory matter contained in a paper filed in a case under this title." 11 U.S.C. §107(b).  However, "a judge must carefully and skeptically review sealing requests to insure that there really is an extraordinary or compelling need" to keep the material private.  In re Food Mgmt. Group, 359 B.R. at 554 (citation and quotation marks omitted).

74.    The Debtors invoked Section 107(b)(1) when requesting that the Court permit the filing of the complaints commencing the avoidance action adversary proceedings under seal. Specifically, the Debtors alleged that the filing was necessary to maintain the *status quo* and that the Debtors "have worked to preserve and repair their business relationship with many of the potential defendants during these cases…" (Docket No.  8905, ¶37).  Essentially, the Debtors argued that commencing the actions under seal was necessary to maintain good working relationships with its current vendors.

75.     Courts, however, have never interpreted Section 107(b)(1) to protect information that would be prejudicial to the Debtors vis-à-vis their own creditors.  Rather, commercial information has been defined "as information which would cause an <u>unfair advantage to competitors</u> by providing them information as to the commercial operations of the debtor."  <u>In re Orion Pictures Corp.</u>, 21 F.3d 24, 27 (citation and quotation marks omitted)(emphasis added). Information pertaining to the Debtors' intent to initiate preference litigation against JCC certainly does not fall within the above definition of confidential commercial information, as it neither provides information as to the commercial operations of the Debtor nor bestows an unfair advantage upon competitors.

76.     Accordingly, the Preservation of Estate Claims Procedures Order which granted the authority to file the original Complaint under seal should be vacated as to JCC thereby precluding Debtors' motion for leave to amend.

**B.      JCC Was Not Served with Notice of the Motions is Support of the Preservation of Estate Claims Procedures Order and Each of the Extension Orders.**

77.     JCC's procedural due process rights were also violated in that it was never served with the notice of motions associated with the Preservation of Estate Claims Procedures Order and each of the extension orders.  It has long been held that the "fundamental requisite of due process of law is the opportunity to be heard."  <u>Grannis v. Ordean</u>, 234 U.S. 385, 394 (1914). This right to be heard, however, "has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest." <u>Mullane v. Central Hanover Bank & Trust Co.</u>, 339 U.S. 306, 314 (1950).

78.     In this case, JCC was not provided with any notices related to the Preservation of Estate Claims Procedures Order and each of the Extension Orders.  Furthermore, none of the

motions identified JCC as a potential defendant.  Consequently, JCC was deprived of due process.  Had JCC been provided with notice that it was being sued, or a minimum that the Debtors had even contemplated suing JCC, JCC would have had the ability to oppose the motions seeking the Preservation of Estate Claims Procedure Orders and the Extension Orders.

79.    The lack of due process pursued by the Debtors had the additional negative effect of disenfranchising JCC and other defendants from fully participating in these cases and  voting on the Plan and Modified Plan.  Indeed, pursuant to 11 U.S.C. §502(d), if JCC repaid any allegedly preferential transfer, it would have been entitled to file a claim and vote on the Plan and the Modified Plan with a potentially much larger claim than it otherwise had.  The justification for depriving JCC of its right to engage in the bankruptcy cases to the fullest extent merely so the Debtors could purportedly cultivate better credit terms and avoid upsetting vendors is patently improper and not justifiable under the Bankruptcy Code.

**C.    There Was No "Good Cause" To Extend the Time for Service.**

80.    Finally, Debtors rely on the Extension Orders to justify the lengthy delay in service of the original Complaint. Fed. R. Civ. P. 4(m), made applicable by Fed. R. Bankr. P. 7004(m), provides that "if the plaintiff shows good cause for the failure [to serve within 120 days after the Complaint is filed], the court must extend the time for service for an appropriate period." (Alteration in original).

81.    Good cause is "generally found only in exceptional circumstances where the plaintiff's failure to serve process in a timely manner was the result of circumstances beyond its control." E. Refractories Co. v. Forty Eight Insulations, Inc., 187 F.R.D. 503, 505 (S.D.N.Y. 1999).  Good cause is measured against the plaintiff's reasonable efforts to effect service and the prejudice to the defendant from the delay.  AIG Managed Mkt. Neutral Fund v. Askin Capital

Mgmt., L.P., 197 F.R.D. 104, 108 (S.D.N.Y. 2000). Relevant factors to consider in determining whether "good cause" exists, such that an extension should be granted under Fed. R. Civ. P. 4(m), include: "(1) whether the applicable statue of limitations would bar the refiled action; (2) whether the defendant had actual notice of the claims asserted in the complaint; (3) whether the defendant had attempted to conceal the defect in service; and (4) whether the defendant would be prejudiced by the granting of plaintiff's request for the relief from the provision." E. Refractories Co., 187 F.R.D. at 506. In this case, none of the factors supported a finding that "good cause" existed such that the Debtors were allowed four extensions in which to serve the Complaint.

82.     As discussed in Paragraph 47, supra, good cause for an extension under Fed. R. Civ. P. 4(m) may exist where the plaintiff and defendant are in settlement negotiations and the plaintiff seeks to stay service while discussions ensue. Good cause also exists where service is attempted, but not completed, on a named defendant within the 120-day period. See, e.g., In re Global Crossing, Ltd., 385 B.R. at 85. Good cause, however, does not exist where the plaintiffs have identified and can serve the defendants, but have chosen not to do so for business reasons. The lack of good cause in this case is exacerbated by the fact that the original complaint was filed under seal. Consequently, JCC, had no notice of any potential liability. Accordingly, the order approving the Preservation of Estate Claims Procedures Motion, each of the Extension Orders, and the Modified Plan Confirmation Order must be vacated as to JCC thereby precluding Debtors' motion for leave to amend.

## III.    JCC WILL SUFFER PREJDUICE IF THE DEBTORS' MOTION FOR LEAVE TO AMEND IS GRANTED

83.     In support of their motion for leave to amend, Debtors glibly assert that "instead of prejudicing the Defendants, the additional facts alleged in the Amended Complaints are likely to simplify the Defendants' defense of these actions and provide a basis for streamlining

discovery." This is another of Debtors' self-serving statements in support of the procedural subterfuge which has occurred throughout these proceedings.

84.     Indeed, Debtors incredulously and cavalierly assert that the only prejudice which the various defendants could have suffered "relates to the filing under seal and delayed service of the *Original Complaints*." What Debtors conveniently ignore is that since the Amended Complaints are predicated on the original complaints, prejudice associated with the filing and notification of the original complaints must be a factor for this Court.

85.     As discussed previously, JCC has been prejudiced in this matter since the first Order which directed that the Complaint be filed under seal. From that moment on, JCC has been denied the opportunity to participate in this bankruptcy fully and to make informed decisions regarding the significant potential adversary claim it now faces. For example, had the original complaint been timely filed and served in 2007, JCC could have made decisions about settling the claim, filing a claim pursuant to 502(h) and possibly selling such claim when there was a market to do so. Due to the Debtors' actions, however, such options are forever lost. Furthermore, it is disingenuous for Debtors' to assert that the Amended Complaint will "streamline" discovery when the proposed Amended Complaint against JCC asserts a claim for almost $3,000 more than what was claimed in the original Complaint. While the assertion of new transfers is the time-barred, JCC will still need to expend considerable effort to ascertain which of the now alleged specific transfers were not included in the original Complaint.

86.     Finally, without notice of this adversary proceeding, key documents and personnel upon which JCC would have relied upon in defense of this action are no longer available. Section 527 of the Bankruptcy Code makes it clear that it is the defendant's burden in a preference action to establish its defenses. In serving a Complaint almost two and half years

after it was filed (which was already at the end of the statute of limitations period), Debtors ask
JCC, as well as all other defendants who did not receive any notice or adequate notice, to now
defend a stale action.

## IV.    THE PROPOSED AMENDED COMPLAINT FAILS TO MEET THE PLEADING REQUIREMENTS OF FED. R. CIV. P. 8 AND THE *TWOMBLY/IQBAL* STANDARD

87.    As determined by this Court in its Dismissal Order, the Original Complaints did
not satisfy the pleading requirements of Fed. R. Civ. Pro. 8 as set forth in Bell Atlantic Corp. v.
Twombly, 550 U.S. 544 (2007) and expanded by Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009).  In
their motion for leave to amend, Debtors assert that they should be allowed to amend the original
complaints because at the time the original complaints were filed in September 2007, Iqbal had
not yet been decided.  Consequently, the original complaints complied with the then applicable
pleading standard.   This argument is without merit.  Debtors did not serve their original
Complaints until March 2010, after , Iqbal had been decided.   Debtors didn't hesitate to seek
Court permission to delay serving the original Complaints.  Certainly, they could have sought
Court permission to amend the complaints prior to service.  Regardless of what standard applied
at the time the original Complaint was filed, the Amended Complaint must comply with
Twombly and Iqbal, which the proposed Amended Complaint in this case fails to do.

88.    As articulated by the United States Supreme Court, to satisfy Fed. R. Civ. P. 8
pleading requirements, "a complaint must contain sufficient factual matter, accepted as true, to
'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949
(2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  However, "where
the well-pleaded facts do not permit the court to infer more than the mere possibility of

misconduct, the complaint has alleged − but it has not 'show[n]' – 'that the pleader is entitled to relief'…."  Iqbal, supra, 129 S. Ct. at 1950 (quoting Fed. Rule Civ. P. 8(a)(2)).

89.    In considering a motion to dismiss, or in this case evaluating the proposed Amended Complaint, the Court need not accept the legal conclusions contained in the Complaint − only the facts alleged must be accepted as true.  Id. at 1949 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  Based upon the United States Supreme Court's precedence of Twombly and Iqbal, when evaluating the sufficiency of a complaint on its face, the court must engage in a two-part inquiry.  First, the court begins "by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 129 S. Ct. at 1950.  Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. While the plausibility standard is not equivalent to probability, the standard requires "more than a sheer possibility that a defendant acted unlawfully." Id. at 1949 (citing Twombly, 550 U.S. at 556).  Furthermore, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (internal quotations omitted).

90.    In In re Caremerica, Inc., 409 B.R. 737, 751 (Bankr. E.D.N.C. 2009), the court, applying Iqbal, dismissed a complaint brought pursuant to §547 where the trustee failed to "allege facts regarding the nature and amount of antecedent debt which, if true, would render plausible the assertion that a transfer was made for or on account of such antecedent debt."  The same should be done here.

91.    Finding that the original Complaint failed to comply with the pleading requirements of Fed. R. Civ. P. 8, this Court, in its Dismissal Order required that in any proposed amended complaint, each alleged transfer, "shall set forth, as a minimum, the transferor, the transferee, and known subsequent transferee against whom relief is sought, the antecedent debt and which Reorganized Debtor is the plaintiff.

92.    Under the Twombly/Iqbal standard, the proposed Amended Complaint still fails to state a claim.  Specifically, the Amended Complaint offers only a "formulaic recitation of the elements of the cause of action" with respect to the insolvency of the Plaintiff at the time of the alleged transfers, to wit, paragraph 23 of the Amended Complaint which states, "for the purposes of this Adversary Proceeding, Plaintiff is presumed to have been, and was in fact, insolvent at the time the Transfers were made."

93.    Debtors rely solely upon the fact that they filed for relief under Chapter 11 as their basis for insolvency.  However, this is insufficient as a Chapter 11 filing is not automatically proof of insolvency.

94.    In this case, the now identified transferor plaintiff is Delphi Automotive Systems, LLC ("DAS").    As reported in its Amended and Restated Schedules, at the time of filing, DAS showed total assets of $8,133,427,809.00 against total liabilities of $5,526,447,015.00 resulting in DAS being solvent with almost $2.6 billion in net equity.  As a result, without more, DAS is not entitled to the presumption of insolvency during the preference period.  See, e.g. In re Roblin Industries, Inc., 78 F.3d 30, 30-35 (2d Cir. 1996) (holding that schedules showing solvency rebutted presumption so that trustee bore burden of coming forward to prove insolvency).

95.    Indeed, DAS's solvency at the time of filing is no surprise as its parent, Delphi was also solvent.  In fact, for the first several years of this bankruptcy, Debtors represented that

they expected a 100 cent plan.  By Debtors own admissions, bankruptcy was filed to reorganize labor <u>not</u> because of insolvency.

96.     As a result of failing to properly plead insolvency Debtors have failed, yet again, to comply with the pleading requirements of Fed. R. Civ. P. 8.  Furthermore, since DAS, the transferor plaintiff was solvent at the time of filing, any amendment to the original complaint would be futile as DAS cannot meet the requirements of §547(f).  As a result, Debtors' motion to for leave to amend the complaints should be denied.

97.     DAS also fails to plead facts establishing that the alleged debts in questions were actually "antecedent."  Exhibit 1 to the proposed Amended Complaint does not state when any debt actually arose; rather, it contains a series of purchase order or invoice numbers which do not contain a date.  Other than DAS's conclusory allegations, there is no basis for DAS to claim the existence of any "antecedent" debt as required to state a claim pursuant to §547(b)(2) of the Bankruptcy Code.

98.     Again, under <u>Iqbal</u>, Fed. R. Civ. P. 8 requires more than "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements…."  Having failed to provide anything more than conclusory allegations, Debtors' motion for leave to amend should be denied.

## V.    JCC INCORPORATES ALL APPLICABLE ARGUMENTS RAISED BY OTHER DEFENDANTS IN THEIR OBJECTIONS TO THE MOTION TO AMEND

99.     JCC incorporate all of the other meritorious arguments raised by the other preference defendants in opposition to Debtors' motions for leave to amend with regard to them.

30

## MEMORANDUM OF LAW

100.    The legal points and authorities upon which this objection relies are incorporated

herein.  JCC respectfully requests that the requirement of filing a separate memorandum of law

under Local Rule 9013-1(b) be deemed satisfied.

WHEREFORE, for the foregoing reasons, JCC respectfully requests that Delphi's motion

should be denied in its entirety.


Dated: Buffalo, New York
November 24, 2010

**JAECKLE FLEISCHMANN & MUGEL, LLP**
By: /s/ Beverley S. Braun
Beverley S. Braun, Esq. (admitted *pro hac vice*)
12 Fountain Plaza, Suite 800
Buffalo, New York 14202
Tel: 716-856-0600
Fax:  716-856-0432
bbraun@jaeckle.com
*Counsel to Jamestown Container Corp.*
