# EXHIBIT "C"

- 1 -

1

2    UNITED STATES BANKRUPTCY COURT

3    SOUTHERN DISTRICT OF NEW YORK

4    Case No. 05-44481 (RDD); Adv. Proc. No. 07-02619 (RDD);

5    Adv. Proc. No. 07-02242 (RDD); Adv. Proc. No. 07-02256 (RDD);

6    Adv. Proc. No. 07-02333 (RDD); Adv. Proc. No. 07-02580 (RDD);

7    Adv. Proc. No. 07-02661 (RDD); Adv. Proc. No. 07-02743 (RDD);

8    Adv. Proc. No. 07-02768 (RDD); Adv. Proc. No. 07-02769 (RDD);

9    Adv. Proc. No. 07-02790 (RDD); Adv. Proc. No. 07-02076 (RDD);

10   Adv. Proc. No. 07-02084 (RDD); Adv. Proc. No. 07-02096 (RDD);

11   Adv. Proc. No. 07-02125 (RDD); Adv. Proc. No. 07-02177 (RDD);

12   Adv. Proc. No. 07-02188 (RDD); Adv. Proc. No. 07-02211 (RDD);

13   Adv. Proc. No. 07-02212 (RDD); Adv. Proc. No. 07-02236 (RDD);

14   Adv. Proc. No. 07-02250 (RDD); Adv. Proc. No. 07-02262 (RDD);

15   Adv. Proc. No. 07-02270 (RDD); Adv. Proc. No. 07-02291 (RDD);

16   Adv. Proc. No. 07-02328 (RDD); Adv. Proc. No. 07-02337 (RDD);

17   Adv. Proc. No. 07-02348 (RDD); Adv. Proc. No. 07-02432 (RDD);

18   Adv. Proc. No. 07-02436 (RDD); Adv. Proc. No. 07-02449 (RDD);

19   Adv. Proc. No. 07-02479 (RDD); Adv. Proc. No. 07-02525 (RDD);

20   Adv. Proc. No. 07-02534 (RDD); Adv. Proc. No. 07-02539 (RDD);

21   Adv. Proc. No. 07-02551 (RDD); Adv. Proc. No. 07-02581 (RDD);

22   Adv. Proc. No. 07-02597 (RDD); Adv. Proc. No. 07-02618 (RDD);

23   Adv. Proc. No. 07-02623 (RDD); Adv. Proc. No. 07-02659 (RDD);

24   Adv. Proc. No. 07-02672 (RDD); Adv. Proc. No. 07-02702 (RDD);

25   Adv. Proc. No. 07-02723 (RDD); Adv. Proc. No. 07-02743 (RDD);

- 2 -

1   Adv. Proc. No. 07-02744 (RDD); Adv. Proc. No. 07-02750 (RDD);

2   Adv. Proc. No. 07-02188 (RDD)

3   - - - - - - - - - - - - - - - - - - - -x

4   In the Matter of:

5   DPH HOLDINGS CORP., et al.,

6                      Reorganized Debtors.

7   - - - - - - - - - - - - - - - - - - - -x

8   DELPHI CORPORATION, et al.,

9                      Plaintiffs,

10       -against-

11   SETECH INC., et al.,

12                      Defendants.

13   - - - - - - - - - - - - - - - - - - - -x

14   DELPHI CORPORATION, et al.,

15                      Plaintiffs,

16       -against-

17   DUPONT COMPANY, et al.,

18                      Defendants.

19   - - - - - - - - - - - - - - - - - - - -x

20   DELPHI CORPORATION, et al.,

21                      Plaintiffs,

22       -against-

23   ECO-BAT AMERICA LLC,

24                      Defendant.

25   - - - - - - - - - - - - - - - - - - - -x

- 3 -

```
 1    - - - - - - - - - - - - - - - - - - - -x

 2    DELPHI CORPORATION, et al.,

 3                         Plaintiffs,

 4         -against-

 5    GLOBE MOTORS INC.,

 6                         Defendant.

 7    - - - - - - - - - - - - - - - - - - - -x

 8    DELPHI CORPORATION, et al.,

 9                         Plaintiffs,

10         -against-

11    PHILIPS SEMICONDUCTOR, et al.,

12                         Defendants.

13    - - - - - - - - - - - - - - - - - - - -x

14    DELPHI CORPORATION, et al.,

15                         Plaintiffs,

16         -against-

17    SUMMIT POLYMERS INC.,

18                         Defendant.

19    - - - - - - - - - - - - - - - - - - - -x

20    DELPHI CORPORATION, et al.,

21                         Plaintiffs,

22         -against-

23    M & Q PLASTIC PRODUCTS, et al.,

24                         Defendants.

25    - - - - - - - - - - - - - - - - - - - -x
```

- 4 -

```
 1   - - - - - - - - - - - - - - - - - - -x

 2   DELPHI CORPORATION, et al.,

 3                      Plaintiffs,

 4        -against-

 5   RSR CORPORATION, et al.,

 6                      Defendants.

 7   - - - - - - - - - - - - - - - - - - -x

 8   DELPHI CORPORATION, et al.,

 9                      Plaintiffs,

10        -against-

11   RSR/ECOBAT,

12                      Defendant.

13   - - - - - - - - - - - - - - - - - - -x

14   DELPHI CORPORATION, et al.,

15                      Plaintiffs,

16        -against-

17   TYCO et al.,

18                      Defendants.

19   - - - - - - - - - - - - - - - - - - -x

20   DELPHI CORPORATION, et al.,

21                      Plaintiffs,

22        -against-

23   AHAUS TOOL & ENGINEERING INC.,

24                      Defendant.

25   - - - - - - - - - - - - - - - - - - -x
```

- 5 -

1   - - - - - - - - - - - - - - - - - - - -x

2   DELPHI CORPORATION, et al.,

3                     Plaintiffs,

4       -against-

5   A 1 SPECIALIZED SVC & SUPP., INC.,

6                     Defendant.

7   - - - - - - - - - - - - - - - - - - - -x

8   DELPHI CORPORATION, et al.,

9                     Plaintiffs,

10      -against-

11  A-1 SPECIALIZED SERVICES,

12                    Defendant.

13  - - - - - - - - - - - - - - - - - - - -x

14  DELPHI CORPORATION, et al.,

15                    Plaintiffs,

16      -against-

17  ATS AUTOMATION TOOLING SYSTEMS INC., et al.,

18                    Defendants.

19  - - - - - - - - - - - - - - - - - - - -x

20  DELPHI CORPORATION, et al.,

21                    Plaintiffs,

22      -against-

23  CORNING INC., et al.,

24                    Defendants.

25  - - - - - - - - - - - - - - - - - - - -x

- 6 -

1    - - - - - - - - - - - - - - - - - -x

2    DELPHI CORPORATION, et al.,

3                        Plaintiffs,

4        -against-

5    CRITECH RESEARCH INC.,

6                        Defendant.

7    - - - - - - - - - - - - - - - - - -x

8    DELPHI CORPORATION, et al.,

9                        Plaintiffs,

10        -against-

11    DOSHI PRETTL INTERNATIONAL, et al.,

12                        Defendants.

13    - - - - - - - - - - - - - - - - - -x

14    DELPHI CORPORATION, et al.,

15                        Plaintiffs,

16        -against-

17    D & R TECHNOLOGY LLC, et al.,

18                        Defendants.

19    - - - - - - - - - - - - - - - - - -x

20    DELPHI CORPORATION, et al.,

21                        Plaintiffs,

22        -against-

23    DSSI, et al.,

24                        Defendants.

25    - - - - - - - - - - - - - - - - - -x

- 7 -

1    - - - - - - - - - - - - - - - - - - -x

2    DELPHI CORPORATION, et al.,

3                        Plaintiffs,

4        -against-

5    DANOBAT MACHINE TOOL CO. INC.,

6                        Defendant.

7    - - - - - - - - - - - - - - - - - - -x

8    DELPHI CORPORATION, et al.,

9                        Plaintiffs,

10       -against-

11   EDS, et al.,

12                       Defendants.

13   - - - - - - - - - - - - - - - - - - -x

14   DELPHI CORPORATION, et al.,

15                       Plaintiffs,

16       -against-

17   BP, et al.,

18                       Defendants.

19   - - - - - - - - - - - - - - - - - - -x

20   DELPHI CORPORATION, et al.,

21                       Plaintiffs,

22       -against-

23   CARLISLE, et al.,

24                       Defendants.

25   - - - - - - - - - - - - - - - - - - -x

- 8 -

1    - - - - - - - - - - - - - - - - - - -x

2    DELPHI CORPORATION, et al.,

3                          Plaintiffs,

4         -against-

5    GKNS INTERMETALS,

6                          Defendant.

7    - - - - - - - - - - - - - - - - - - -x

8    DELPHI CORPORATION, et al.,

9                          Plaintiffs,

10        -against-

11   EX-CELL-O MACHINE TOOLS INC.,

12                         Defendant.

13   - - - - - - - - - - - - - - - - - - -x

14   DELPHI CORPORATION, et al.,

15                         Plaintiffs,

16        -against-

17   JOHNSON CONTROLS, et al.,

18                         Defendants.

19   - - - - - - - - - - - - - - - - - - -x

20   DELPHI CORPORATION, et al.,

21                         Plaintiffs,

22        -against-

23   NILES USA INC., et al.,

24                         Defendants.

25   - - - - - - - - - - - - - - - - - - -x

- 9 -

1    - - - - - - - - - - - - - - - - - - -x

2    DELPHI CORPORATION, et al.,

3                         Plaintiffs,

4         -against-

5    METHODE ELECTRONICS INC., et al.,

6                         Defendants.

7    - - - - - - - - - - - - - - - - - - -x

8    DELPHI CORPORATION, et al.,

9                         Plaintiffs,

10        -against-

11   MICROCHIP,

12                        Defendant.

13   - - - - - - - - - - - - - - - - - - -x

14   DELPHI CORPORATION, et al.,

15                        Plaintiffs,

16        -against-

17   HEWLETT PACKARD, et al.,

18                        Defendants.

19   - - - - - - - - - - - - - - - - - - -x

20   DELPHI CORPORATION, et al.,

21                        Plaintiffs,

22        -against-

23   OLIN CORP,

24                        Defendant.

25   - - - - - - - - - - - - - - - - - - -x

- 10 -

1   - - - - - - - - - - - - - - - - - -x

2   DELPHI CORPORATION, et al.,

3                           Plaintiffs,

4        -against-

5   INTEC GROUP,

6                           Defendant.

7   - - - - - - - - - - - - - - - - - -x

8   DELPHI CORPORATION, et al.,

9                           Plaintiffs,

10       -against-

11  VALEO, et al.,

12                          Defendants.

13  - - - - - - - - - - - - - - - - - -x

14  DELPHI CORPORATION, et al.,

15                          Plaintiffs,

16       -against-

17  VANGUARD DISTRIBUTORS,

18                          Defendant.

19  - - - - - - - - - - - - - - - - - -x

20  DELPHI CORPORATION, et al.,

21                          Plaintiffs,

22       -against-

23  VICTORY PACKAGING, et al.,

24                          Defendants.

25  - - - - - - - - - - - - - - - - - -x

- 11 -

1    - - - - - - - - - - - - - - - - - - -x

2    DELPHI CORPORATION, et al.,

3                        Plaintiffs,

4        -against-

5    WAGNER-SMITH COMPANY,

6                        Defendant.

7    - - - - - - - - - - - - - - - - - - -x

8    DELPHI CORPORATION, et al.,

9                        Plaintiffs,

10        -against-

11    WELLS FARGO BUSINESS, et al.,

12                        Defendants.

13    - - - - - - - - - - - - - - - - - - -x

14    DELPHI CORPORATION, et al.,

15                        Plaintiffs,

16        -against-

17    SELECT TOOL & DIE CORP.,

18                        Defendant.

19    - - - - - - - - - - - - - - - - - - -x

20    DELPHI CORPORATION, et al.,

21                        Plaintiffs,

22        -against-

23    SHUERT INDUSTRIES INC.,

24                        Defendant.

25    - - - - - - - - - - - - - - - - - - -x

- 12 -

1   - - - - - - - - - - - - - - - - - - -x

2   DELPHI CORPORATION, et al.,

3                          Plaintiffs,

4       -against-

5   SUMITOMO, et al.,

6                          Defendants.

7   - - - - - - - - - - - - - - - - - - -x

8   DELPHI CORPORATION, et al.,

9                          Plaintiffs,

10      -against-

11  TECH CENTRAL,

12                         Defendant.

13  - - - - - - - - - - - - - - - - - - -x

14  DELPHI CORPORATION, et al.,

15                         Plaintiffs,

16      -against-

17  PRUDENTIAL RELOCATION, et al.,

18                         Defendants.

19  - - - - - - - - - - - - - - - - - - -x

20  DELPHI CORPORATION, et al.,

21                         Plaintiffs,

22      -against-

23  LDI INCORPORATED,

24                         Defendant.

25  - - - - - - - - - - - - - - - - - - -x

- 13 -

1   - - - - - - - - - - - - - - - - - - -x

2   DELPHI CORPORATION, et al.,

3                          Plaintiffs,

4        -against-

5   M & Q PLASTIC PRODUCTS, et al.,

6                          Defendants.

7   - - - - - - - - - - - - - - - - - - -x

8   DELPHI CORPORATION, et al.,

9                          Plaintiffs,

10       -against-

11  REPUBLIC ENGINEERED PRODUCTS, et al.,

12                         Defendants.

13  - - - - - - - - - - - - - - - - - - -x

14  DELPHI CORPORATION, et al.,

15                         Plaintiffs,

16       -against-

17  RIECK GROUP LLC,

18                         Defendant.

19  - - - - - - - - - - - - - - - - - - -x

20  DELPHI CORPORATION, et al.,

21                         Plaintiffs,

22       -against-

23  CRITECH RESEARCH INC.,

24                         Defendant.

25  - - - - - - - - - - - - - - - - - - -x

- 14 -

1        U.S. Bankruptcy Court

2        300 Quarropas Street

3        White Plains, New York

4

5        July 22, 2010

6        10:20 AM

7

8

9    B E F O R E :

10   HON. ROBERT D. DRAIN

11   U.S. BANKRUPTCY JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

DPH HOLDINGS CORP., et al.

- 103 -

1    this point, but to me the Constitutional issue, you know, the

2    due-process issue here, is not so much the running of time as

3    the issue of whether and how the defendants got notice of the

4    Rule 4 motions.  If they didn't get notice, then it's wide

5    open.  If they did get notice, I think there's a 60(b) hurdle.

6    But if they didn't get notice, it's wide open and I should look

7    at it as whether, you know, it was appropriate to have entered

8    those orders.  And they should have all their -- you know,

9    their right to say they shouldn't have been entered.

10             MS. SCHWEITZER:  Right.  Your Honor, I think Your

11   Honor -- as you're raising, there are very difficult questions

12   raised when you look at both sides of this argument.  You

13   raised several points and I'd like to take some of them in

14   turn.  The first one is just the raising of the 4(m) and the

15   fact the Supreme Court has said that there's no per se due-

16   process violation in terms of changing a statute of

17   limitations.  That's said in the context of policy decisions of

18   policymakers making a uniform decision that 'We're going to

19   change the rule.  We're going to change the law because BP has

20   now intoxicated the entire Gulf of Mexico and we need to say

21   it's not fair that people have a year to bring those claims.'

22   There's been no grand policy decisions here.

23             And in fact the debtors didn't need more time to bring

24   the claims.  The debtors said 'I'll file these claims in a

25   timely manner.'

DPH HOLDINGS CORP., et al.

- 104 -

1          THE COURT:  But, I mean, a policy could be un-

2     Constitutional too.  I mean, Congress may say that we want to,

3     you know -- well --

4          MS. SCHWEITZER:  Right.

5          THE COURT:  -- that 'We decide as a policy matter to

6     legalize slavery.  You know, that clearly violate the due-

7     process clause.  It's a policy decision, but --

8          MS. SCHWEITZER:  Right.

9          THE COURT:  So I don't --

10         MS. SCHWEITZER:  But --

11         THE COURT:  I mean, I think the point is that the

12    statute of limitations, I don't believe, is the type of

13    interest that's protected by due process.

14         MS. SCHWEITZER:  But I think that there's two

15    different things that happen here to the debtors is that they

16    claim that they satisfied the statute of limitations.  They

17    said 'We filed these timely,' right?  And 'We met the two and a

18    half year deadline.'

19         THE COURT:  Right.

20         MS. SCHWEITZER:  'But what we want to do after that

21    point is put these in a drawer, put them under lock and seal

22    and affirmatively not tell people about these claims' in two

23    different ways:  in filing these extension motions without

24    particularized notice, and I'll get to that; and the second way

25    is affirmatively sealing not only the complaint, which we now

DPH HOLDINGS CORP., et al.

- 105 -

1   know contains no confidential information, no commercial reason

2   that you need to sell this complain other than to let someone

3   know it doesn't exist.

4            THE COURT:  Right.

5            MS. SCHWEITZER:  And they not only sealed that, but

6   they actually sealed the docket itself so that any diligent

7   counterparty who regularly searches the federal docket to find

8   out if they've been sued and whether it's because they're

9   selling their company or because they want to take reserves or

10  because they want to do whatever they do in the ordinary

11  course, could not find this docket.

12           And the debtors' explanation for that is they want to

13  preserve business relationships with folks, folks I assume like

14  HP who has continued to do business with them.

15           THE COURT:  I understand, but to me that all goes to

16  laches.  I mean, it just -- it strikes me that tomorrow

17  Congress could say that for debtors-in-possession the two-year

18  period is a six-year period.  And there's nothing that you all

19  could do about that.

20           MS. SCHWEITZER:  But the fact --

21           THE COURT:  I mean, you could vote out your

22  congressmen, but that would be it.

23           MS. SCHWEITZER:  Right, and -- fair enough, but I

24  think that the answer there is that if you -- that these

25  arguments definitely do bleed into each other.  And whether you

DPH HOLDINGS CORP., et al.

- 106 -

1   want to say it's per se laches, which you can, again, decide on

2   a motion to dismiss, that there are facts that are common to

3   people, right?  That the complaints themselves were hidden from

4   everyone for two and a half years.

5          Rule 4(m) is an extension of time to serve people, not

6   to not serve people.  They asked for permission not to serve

7   people.  And what they said in their original motions, which is

8   probably different than how it played out, was, 'We want to

9   preserve business relationships.  We want to work with

10  people --

11         THE COURT:  No, I understand that point and it seems

12  to me it may make more sense to move from, sort of, the basic

13  due process argument that you started out with to the point

14  that the order shouldn't have been entered in the first place

15  and can be looked at, you know, on a blank slate for those who

16  didn't get notice of them.

17         MS. SCHWEITZER:  Right.  Well, I think that -- so

18  let's take the notice argument, because I know that is another

19  thing you raised and it's a fair point.  There are certain

20  defendants in the room such as Mr. Gottfried whose clients were

21  not creditors of the estate at all.  They didn't appear; they

22  weren't creditors; they closed their books; they weren't on

23  notice of the motion.  I think that's the most extreme version

24  of 'I, A, didn't know there was a claim against me, I didn't

25  even know I had to hire a lawyer to monitor this bankruptcy

DPH HOLDINGS CORP., et al.

- 107 -

1   case and I certainly was never told of the extension of

2   times' --

3          THE COURT:  Right.

4          MS. SCHWEITZER:  -- 'so I didn't have an opportunity

5   to contest that.'  I, quite frankly, think that's the slam

6   dunk, right?  Because you look at that and you say --

7          THE COURT:  Well, it's a slam dunk as far as looking

8   at the order as brand new.  I don't think it necessarily means

9   that the orders aren't effective as to that person; it just

10  means that that person can raise whatever issue they want as to

11  that order -- as to those orders.

12         MS. SCHWEITZER:  Right.  And I would happily go into

13  the arguments as looking as the orders as brand new, but I do

14  want to be respectful of not dupli --

15         THE COURT:  I'm sorry.  The arguments of?

16         MS. SCHWEITZER:  Of looking at each of these orders

17  brand new and how they played out --

18         THE COURT:  Okay.

19         MS. SCHWEITZER:  I do want to be respectful of the

20  fact that Mr. Winsten was going to address --

21         THE COURT:  All right.

22         MS. SCHWEITZER:  -- those arguments, so --

23         THE COURT:  Okay.

24         MS. SCHWEITZER:  -- I won't step on that point.

25         THE COURT:  That's fine.

DPH HOLDINGS CORP., et al.

- 108 -

1        MS. SCHWEITZER:  But I do want to address even the

2    idea of people who had, what the debtors would say of notice,

3    of the arguments because they were on a Rule 2002 service list

4    or the like of that.

5        THE COURT:  Right.

6        MS. SCHWEITZER:  What the debtors are saying is that

7    'We recognize that it's our duty to file and serve complaints.

8    We want to put these complaints under seal.  We want all this

9    motion, which is not only an extension motion; this motion says

10   we started out with 11,000 claims and we crossed out a whole

11   bunch of these claims.  We abandoned a whole bunch of other

12   claims.  We're concerned with protecting debtor relationships

13   and we intend to not sue most of these people under this

14   existing plan or any other plan, modified, that we file in the

15   future.  We generally do not want to preserve these claims.

16   But, we're moving quickly.  We know that we don't have the time

17   to think this through.  Allow us to put this placeholder in the

18   docket now and to go over time and figure out if we want these

19   claims to be pursued.'

20        And I will point, again, to the foreign defendants,

21   that if you're a foreign defendant as some of the HP and EDS

22   clients were, who didn't even have contracts with the debtor,

23   but if you were and you were diligent enough, these -- that

24   'I'm curious and I want to look at this motion, even though it

25   didn't pertain to appear to me and they're waiving it against

DPH HOLDINGS CORP., et al.

- 109 -

1   me', then what the debtor is saying was, 'Well, if you were

2   really curious, you would have called the debtor counsel and

3   asked'.  And why one of the 100 or 700 out of 11,000 that are

4   being preserved in the debtors' discretion, 'even though I have

5   continuing business relationships with you, even though I'm a

6   foreign defendant, even though I think I have ordinary course

7   defenses and you say you're not preserving any of those claims

8   at all.'

9          And this idea -- I understand; I don't mean to make

10  light of receiving notice on the 2002 service list, but this

11  idea that there's not particularized notice, you're not telling

12  the 700 or 177 people, 'This order related to you' is not

13  frivolous.  When you look at the time that these motions were

14  entered on the docket, the first motion was docket number

15  8,905.  So if you were getting stuff in the mail along the way

16  as the creditors do in the case, that means -- let's say, half

17  of those are affidavits of service.  Let's just cross out half

18  of them.  This is probably the 4,500th pleading you've received

19  in the mail at that point.  You're paying your attorney, what,

20  500 dollars an hour to review these pleadings, and let's say

21  they're spending a quarter of an hour reviewing each of these

22  pleadings.

23         At that point, you've asked your attorney to go

24  looking for ways the debtors could step on your rights, you've

25  spent 563,000 dollars just in monitoring the docket in a case

DPH HOLDINGS CORP., et al.

- 110 -

1    where the debtors themselves could have just said, the same way

2    they do for claims objections, the same way they do for

3    extensions of time to assume and reject leases, the same way

4    they do for every other motion that faces deadlines, they serve

5    you individualized notice and it says, 'You are one of the

6    small bucket of people who are not the 11,000 that we're

7    abandoning.  You're one of the 177 or the 762.'

8           The burden there was not so great on the debtors that

9    they should -- 'We should be forced to explain why we read the

10   motion, didn't understand it or didn't realize in the face of

11   it that it applied to me or didn't realize that the debtor

12   meant his when they said that, didn't realize that when they

13   said that they were protecting business relationships that

14   wasn't my business relationship with them.'

15          And what I think is especially --

16          THE COURT:  Well -- I'm sorry; go ahead.

17          MS. SCHWEITZER:  Okay.  No, go ahead.

18          THE COURT:  Well, I mean the -- it wasn't buried in a

19   motion, right?  The tile of the motion would have showed you

20   that there, you know, if you had a concern about a preference,

21   it would have alerted you to that, wouldn't it?

22          MS. SCHWEITZER:  It would have told you that the

23   debtors -- well, the first -- let's -- I think there's two

24   different portions of the motions, right?  There's the two --

25   first two motions; they're sixty-day extensions, right?  And I

DPH HOLDINGS CORP., et al.

- 111 -

1   don't want to say no harm, no foul, but it was understandable

2   and whether you want to say people looked at that, at that time

3   and said, 'I don't know, you know.  Maybe this is all going to

4   go away, whatever.  It doesn't seem so important.  It's

5   probably not me.'  Whatever people did or didn't say or they

6   didn't even read it -- who knows, right?

7        When you get to the third motion, docket entry, again,

8   13,361, so this is the seventh, eighth, ninth, hundredth,

9   thousandth pleading you've gotten in the mail and you see this

10  and you say, 'Okay, the debtors are saying of 11,000 people,

11  762 of them are the ones that I'm preserving actions against,

12  that, again, not today, but I want to work through.'

13       You would have to tell defendants that your job is to

14  call the debtor, to make the assumption that out of 11,000

15  claims, you're one of 762 people whose rights are possibly

16  being affected because the debtor might in the future, you

17  know, decided to prosecute that action against you, again, when

18  they're good and ready.

19       I think at the time that motion was entered, no one

20  necessarily saw that this was going to be another two and a

21  half year process, that the plan was going to change so

22  substantially, that this was going to evolve over time.  And

23  certainly, it's just -- it seems inconsistent with the law of

24  when you start with the premise that the law says you must

25  preserve an action, you must file it against a person and you

DPH HOLDINGS CORP., et al.

- 112 -

1    must serve it on them.  And the debtors saying, 'Oh, we have to

2    seal these complaints.  These are relationships that we want to

3    preserve.'

4           The debtors wouldn't have informally or formally

5    notified you the way that they do, quite frankly, in every

6    other case, which is the debtors panic; they get to a week

7    before, there's such --

8           THE COURT:  Well, if it was just filed, people

9    wouldn't have checked either, right, because they -- I mean,

10   you argue that it's not particularized, it's just file on the

11   docket, it's not served on them.

12          MS. SCHWEITZER:  But, that actually --

13          THE COURT:  I'm just not sure how the sealing really

14   fits into that at this point.

15          MS. SCHWEITZER:  I think the way the sealing fits in

16   is whether you want to take it in the context of the plan.  I

17   mean the plan would be the most extreme version, but it's the

18   same as the other adversary proceedings.  It's as if you said,

19   'Gee, I want to know if my rights are affected.  I want to know

20   if I should really be one of these people who's calling the

21   debtor.  I want to know if I should be concerned' --

22          THE COURT:  It would be easier to check the docket --

23          MS. SCHWEITZER:  it'd be --

24          THE COURT:  -- than to call the debtor.  Yeah, I agree

25   with that.  You could just -- you could use the electronic

DPH HOLDINGS CORP., et al.

- 113 -

1    docket to see if there was an adversary proceeding filed.  I

2    agree with that.

3           But let me ask.  The Supreme Court this year talked

4    about notice for due process purposes in the Espinosa case.

5    And they said that actual notice of the plan was enough, even

6    though it was the plan that improperly dealt with the

7    nondischargeable student loan.  That was -- it was enough to

8    take it out of 60(b)(4) and was, you know, was sufficient due

9    process.  How is this different from that?

10          MS. SCHWEITZER:  Well, what I think is different is

11   that the concern here is that you're taking a process and

12   taking literal procedures and turning on the head the

13   expectations of all parties involved in that process.  What

14   you're saying is I'm going to file a plan on you, right, and

15   I've got my plan disclosure statement in the mail.

16          The exhibit is missing on retained actions.  Thirteen

17   days before the objection deadline, I'm going to file a notice

18   of plan supplement on the docket that lists docket numbers, not

19   actual case names, docket numbers, and if you, when you get

20   served by mail in the thirteen days before the confirmation

21   deadline, go to look up that exhibit, you're going to find a

22   link again to 177 docket numbers out of 11,000 potential

23   claims.  You're going to go to those links and you're going to

24   hit a roadblock.

25          And so in those last ten days, if you really do

DPH HOLDINGS CORP., et al.

- 114 -

1    consider yourself on notice and you really did want to look

2    into this, you're running against the wall and you're running

3    against the wall to find out that the debtors have, in fact,

4    sued you two and a half years earlier.

5         Now, I understand there are things in bankruptcy that

6    are sometimes preferable notice, the best possible notice

7    versus minimally adequate notice, but the difference here is

8    the debtors didn't merely say, 'I want to tell -- give people

9    comfort that, look, I filed this against you, I don't really

10   mean it.'  Or, 'I don't know if I mean it.  Let's all sit

11   tight, let's all join the benefit of the breather and the

12   benefit of working through whether these are meritorious claims

13   and we can all do that together.'  The debtors, instead,

14   unilaterally, at every turn, said, 'I'm not going to tell you.'

15   And the due process cases around planned disclosure and the res

16   judicata cases around planned disclosure generally say, 'Well,

17   if the debtor preserves everything, everyone knows they're

18   affected.'  Right?  Or if was just too burdensome for the

19   debtor that they couldn't really possibly have gone through and

20   sorted out the cases so early on in their proceeding, we're

21   going to give them a little slack.

22        But here the debtors knew exactly what they were

23   preserving.  And they didn't serve that plan exhibit on anyone.

24   They didn't unseal the dockets at that point.  They didn't even

25   ask for effective relief to seal the dockets in the context of

DPH HOLDINGS CORP., et al.

- 115 -

1    the plan or to seal a schedule in the plan that would have

2    listed the peoples' names.  What they said was, 'Oh, we already

3    got that relief a year and a half earlier and we're going to

4    get it again after the plan is confirmed because it worked so

5    well.  Let's just keep doubling down', all on the principal of

6    'We're protecting ongoing business relationships.'

7            And to say to people that you, as the defendant, have

8    to be on the watch and you have to come forward when you think

9    something unjust is happening, really shifts the burden on you.

10   You're saying you don't just have a burden to defend against

11   claims; you have a burden to actively monitor dockets and

12   actively ferret out when the debtors are doing things contrary

13   to your expectations.  Not just things that they would

14   ordinarily would be entitled to do, but when they're actually

15   burying claims and putting them to the back of the road, well

16   beyond the initial purpose which was just status quo and

17   nonprejudice.  Now, you have to spend the time and money -- at

18   what point is a creditor allowed to tell their attorneys, 'Stop

19   spending money.'?

20           I mean, doing the same math they had given you, if you

21   look at the third extension that was after the plan, you get

22   over to a million dollars in monitoring the docket, spending

23   fifteen minutes a pleading; whether it's the plan or any other

24   motion, times the number of 13,000 motions.  You're talking

25   about over a million dollars -- and you're smiling because the

DPH HOLDINGS CORP., et al.

- 116 -

1    answer is no one spends a million dollars monitoring these

2    cases --

3            THE COURT:  No, I know, but no one spends fifteen

4    minutes on every pleading, either.  You know that that --

5            MS. SCHWEITZER:  Take it in half, take it in a

6    quarter, take it in a eighth; tell me my rates are outrageous

7    at 500 dollars an hour.  I'm fine with that, but you're telling

8    the clients, every one of these 11,000 transferees, that they

9    have to spend the time monitoring all 13,000 pleadings to make

10    sure there's no 'Gotcha' in there, to make sure the debtor is

11    not still holding on to a claim against them.  Because it's not

12    only the 177 that survived, in the debtors' world --

13            THE COURT:  Well, what --

14            MS. SCHWEITZER:  -- it's all 11,000 people.

15            THE COURT:  -- I guess what's missing here is the

16    ability to know whether any of these movants got actual notice.

17    I mean, I find it hard to believe that none of them was aware

18    of what was going on.

19            MS. SCHWEITZER:  Well, I think there are different

20    levels of "aware of what was going on".  I think there's a

21    level of 'I didn't know anything that was going on because I

22    didn't even know that Delphi was in bankruptcy.'  Right?  I

23    mean, there's that level.

24            THE COURT:  Right.

25            MS. SCHWEITZER:  There's 'I knew that Delphi was in

DPH HOLDINGS CORP., et al.

- 117 -

1    bankruptcy but I didn't know about the statute of limitations'

2    or 'I did know and I didn't see this motion' or 'I didn't

3    understand this motion'.  And then there are people who got the

4    motion in the mail, maybe, maybe not, but even people who got

5    the motion in the mail, did they really know that they were a

6    defendant?  And I don't think the debtors have ever suggested

7    that they voluntarily told anyone.  And I can certainly say for

8    my clients, it wasn't the typical case where you get the letter

9    in the mail warning you.

10            THE COURT:  But it's the -- for me to dismiss all of

11   these complaints on this theory, it has to apply to that last

12   group, right?  Someone that got it in the mail, maybe even put

13   two and two together and said, 'Oh, I may be at risk here.

14   Well, I'll just, you know, I'll let it go by.'  Isn't it the

15   case that to dismiss these complaints, I have to -- on these

16   motions, I have to find that?

17            MS. SCHWEITZER:  I think you have to find that the

18   debtors -- and, again, this is where it looks back to the due

19   process issues, is that the debtors' wholesale took a position

20   and created a strategy which whatever good intentions they had

21   when they first asked for it and whatever their intentions were

22   even in the spring of 2008, took you down the path where the

23   wholesale matter -- it's unfair to let these proceedings go

24   forward.  And particularly when you see the complaints that are

25   at hand because this isn't over in terms of figuring out how

DPH HOLDINGS CORP., et al.

- 118 -

1   we've been sued and what the notice is.  When you look at the

2   sufficiency of the complaints --

3          THE COURT:  Well, that's a separate issue.  I

4   understand that issue.  That's a separate issue.

5          MS. SCHWEITZER:  I think it's a separate issue, but I

6   think that -- I mean, first, my answer would be yes.  You can

7   take notice of the fact that there's a passage of time, that

8   there's been not only two things, a lack of notice -- a lack of

9   adequate notice, and not only a lack of notice but a concerted

10  effort to hide the complaints, coupled with the fact of the

11  passage of time and the things that have happened over that

12  time, the defendants didn't have an opportunity during this

13  time to use those complaints to their advantage, quite frankly.

14  That the -- whether to get information from the debtors before

15  the business were sold and, quite frankly, taking the debtors'

16  explanation at face value, 'We wanted to preserve business

17  relationships because we didn't want adverse consequences to

18  flow from the knowledge that these complaints existed.'

19          What did that mean?  People could have said, 'I'm

20  doing business with you and I don't want to keep doing business

21  with you.'  'I'm doing business with you but I want these

22  claims settled, as a part of doing business with you.'  'I'm

23  not doing business with you, but I would happily trade away

24  some of these claims for doing business with you.'  'I got a

25  plan in the mail but you know what?  Everything is going so

DPH HOLDINGS CORP., et al.

- 119 -

1    smoothly with you, I'm going to say' --

2            THE COURT:  But, again, isn't that on a case-by-case

3    basis?  I mean, I -- as far as I can see, there's one case that

4    concludes that 4(m) relief was improperly granted and that case

5    wasn't on due process grounds.  The Ninth Circuit just said,

6    'You know, we don't really set a standard for when it's

7    improperly granted, but it was improperly granted.'  So, I

8    mean, it just seems to me that it's much more of a case-by-case

9    analysis, depending on the, you know, the harm that happened to

10   people.

11           MS. SCHWEITZER:  Right.  Well, I guess --

12           THE COURT:  With the exception -- let me stop you.

13           MS. SCHWEITZER:  Okay.

14           THE COURT:  With the exception that under Rule

15   60(b)(4), if someone really didn't get notice of the extension

16   motions, then it would seem to me they should be able to argue

17   to me as if the motions were being made right now, although

18   I'll hear the debtors on that.  But, that seems to be the way

19   to look at it.

20           MS. SCHWEITZER:  Right.  Well, Your Honor --

21           THE COURT:  And then, the notice that would trigger

22   the Rule 60(b)(4) analysis would be due process notice and

23   consistent with not only Espinosa, but Mulane and the like.

24   It's true, if -- if the notice was buried or confusing or the

25   like, then I would understand that, too, as a violation of due

DPH HOLDINGS CORP., et al.

- 213 -

1    Requiring for them to do all those things seems to me

2    to be the minimum of fairness --

3        THE COURT:  Well, look, it's a motion for leave to

4    amend the complaint on unusual circumstances.  It's really

5    their risk if I turn them down again, right?  So --

6        MR. WINSTEN:  My only point was that it should be

7    Iqbal plus, not Iqbal minus.

8        THE COURT:  Well, I don't know what that means.  And,

9    frankly, I think the Supreme Court's been pretty careful not to

10   turn Iqbal into a plus.

11       MR. WINSTEN:  Right.

12       THE COURT:  So --

13       MR. WINSTEN:  But these are our --

14       THE COURT:  But I think that the risk of being turned

15   down on the basis of the complaint still isn't good enough is a

16   serious enough -- the consequences of that are serious enough

17   so I assume that the plaintiffs are going to be pretty careful.

18       MR. WINSTEN:  A suggestion when we get there is that

19   they ought to attach a draft --

20       THE COURT:  Well, you have to do that.

21       MR. WINSTEN:  Yes.  So we know --

22       THE COURT:  Yeah, absolutely.

23       MR. WINSTEN:  -- what the form's going to be.

24       THE COURT:  Got to do that.

25       MR. WINSTEN:  Let me move to assumed contracts.  This