HEARING DATE AND TIME: FEBRUARY 17, 2011 AT 10:00 A.M. ET
REPLY DEADLINE: JANUARY 28, 2011

HOWICK, WESTFALL, McBRYAN & KAPLAN, LLP
3101 TOWER CREEK PARKWAY
SUITE 600, ONE TOWER CREEK
ATLANTA, GEORGIA 30339
TELEPHONE:    (678) 384-7000
FACSIMILE:    (678) 384-7034
LOUIS G. McBRYAN (LG 1352) (PRO HAC VICE)
ATTORNEYS FOR VANGUARD DISTRIBUTORS, INC.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: : | |
| : | |
| DELPHI CORPORATION, ET AL.    : | CHAPTER 11 |
| : | |
| DEBTORS.    : | CASE NO. 05-44481 (RDD) |
| : | |
| : | |
| : | (JOINTLY ADMINISTERED) |
| : | |
| DELPHI CORPORATION, *ET AL.*    : | ADVERSARY PROCEEDING NO. |
| : | 07-02539 |
| PLAINTIFFS,    : | |
| : | |
| -AGAINST-    : | |
| : | |
| VANGUARD DISTRIBUTORS, INC.,    : | |
| : | |
| DEFENDANT.    : | |
| ————————————————x | |

## VANGUARD DISTRIBUTORS, INC.'S RESPONSE IN OPPOSITION TO REORGANIZED DEBTORS' MOTION FOR LEAVE TO FILE AMENDED COMPLAINTS

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................. ii

I.      INTRODUCTION............................................................................1

II.     PERTINENT FACTS AND PROCEDURAL POSTURE ...................................1

III.    ARGUMENT.................................................................................2

        A.     The Motion to Amend should be denied as unduly prejudicial.............2

        B.     The Motion to Amend should be denied as Plaintiff acted
             in bad faith..........................................................................5

        C.     The Motion to Amend should be denied as futile....................................8

        D.     The Motion to Amend should be denied as the Amended Complaint ...
             fails to plead sufficient facts on its face..................................................10

        E.     The Motion to Amend should be denied because the transactions
             listed in Amended Complaint, Exhibit 1, cannot form the basis for
             a claim for which relief may be granted ................................................12

        F.     The Court's statements that proposed Defendants which did
             not receive notice of the Extension Motions may now challenge
             them de novo........................................................................................13

IV.    INCORPORATION OF OTHER DEFENDANTS BRIEFS ............................14

V.     CONCLUSION ............................................................................15

# TABLE OF AUTHORITIES

## Cases

*Ashcroft v. Iqbal,*
    129 S.Ct.1937, 173 L. Ed. 2d 868 (2009) .................................................... 9, 10, 12

*Barcia v. Sitkin,*
    367 F.3d 87, 107 (2d Cir. 2004) ............................................................ 5

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ........................... 9,10, 12

*Burnett v. New York Cent. R.R. Co.,*
    380 U.S. 424, 428 (1965) ................................................................. 3

*Cohen v. Citibank,*
    1997 U.S. Dist. LEXIS 2112, No. 95 Civ. 4826, 1997 WL 88378, at *2 (S.D.N.Y.
    Feb. 28, 1997) ........................................................................ 2

*CVC Claims Litigation LLC v.Citicorp Venture Capital, et al.,*
    2006 U.S. Dist. LEXIS 31395 (S.D. N.Y. 2006) .................................... 2

*Enron Corp. v. Bear, Stearns Int'l Ltd. (In re Enron Corp.),*
    323 B.R. 857, 861 (Bankr. S.D.N.Y. 2005) .......................................... 7

*Foman v. Davis,*
    371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962) ....................... 2, 3, 8,10

*Grannis v. Ordean,*
    234 U.S. 385, 394 (1914) ................................................................. 5

*In re Hydrogen, L.L.C.,*
    2010 Bankr. LEXIS 1106, *38 (Bankr. S.D.N.Y., Apr. 20, 2010) ...................... 10

*In re Iridium Operating, LLC,*
    373 B.R. 273 (Bankr. S.D.N.Y. 2007) ................................................ 11

*Ka Kin Wong, et al., v. HSBC USA, Inc.,*
    2010 U.S. Dist. LEXIS 81058 (S.D.N.Y. 2010) .................................... 9

*Lucente v. Int'l Bus. Mach. Corp.,*
    310 F.3d 243, 258 (2d Cir. 2002) ...................................................... 9

*Mullane v. Central Hanover Bank & Trust Co.,*
    339 U.S. 306, 314 (1950) ................................................................. 5

*Oneida Indian Nation of N.Y. v. City of Sherrill,*
    337 F.3d 139, 168 (2d Cir. 2003).......................................................................... 8

*Protter v. Nathan's Famous Sys., Inc.,*
    904 F.Supp. 101, 111 (E.D.N.Y. 1995) ................................................................ 2

*Ricciuti v. N.Y.C. Transit Auth.,*
    941 F.2d 119, 123 (2d Cir. 1991).......................................................................... 9

*VFB v. Campbell Soup Co.,*
    482 F. 3d 624, 633 (3d. Cir 2007)................................................................. 11, 12

*Weigner v. City of New York,*
    852 F.2d 646, 654 (2d Cir. 1988).......................................................................... 5

*Zapata v. City of New York,*
    502 F.3d 192, 198 (2d Cir.2007)........................................................................ 7,8

**Rules**

Fed. R. Civ. P. 15(a) ........................................................................................... 2

**Treatises**

128 Cong. Rec. 9848, 9851, *reprinted at* 96 F.R.D. 122.................................... 5
Wright & Miller, *Federal Practice and Procedure: Civil* 3d § 1056 & n. 32.................... 5

## I.   INTRODUCTION

Vanguard Distributors, Inc. ("Vanguard"), by and through its counsel, files its Response in Opposition to Reorganized Debtors' Motion for Leave to File Amended Complaints. The Amended Complaint, attached as an exhibit to the Motion, fails to cure the pleading defects of the Original Complaint and the Motion should be denied.

## II.   PERTINENT FACTS AND PROCEDURAL POSTURE

The deadline for commencing an adversary proceeding against Vanguard on account of an allegedly avoidable preference expired on October 8, 2007[1]. Delphi filed the Complaint under seal on September 29, 2007(the "Original Complaint") , but did not serve Vanguard with such Complaint until March 2010, over two years after the statute of limitations contained in Section 546(a) expired. The Original Complaint was not served on Vanguard within the 120 day period required under Rule 4(m) of the Federal Rules of Civil Procedure and Rule 7001(a)(1) of the Federal Rules of Bankruptcy Procedure. Instead, Plaintiff filed three Motions to extend the deadline for service of process (the "Extension Motions") and a Motion for Entry of a Case Management Order. None of the motions or notices of hearing were served on Vanguard. On May 14, 2010, Vanguard filed a Motion to Dismiss the Adversary Proceeding and on July 2, 2010, filed its Motion for Joinder in further support of Motion for Order Vacating Certain Prior Orders and Dismissing the Adversary Proceeding with prejudice (the "Motions"). The Motions were scheduled for hearing on July 22, 2010.

---

[1] Section 546(a) of the Bankruptcy Code, which sets for the statute of limitations on avoiding powers, provides, "[a]n action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of – (1) the later of – (A) 2 years after the entry of the order for relief; or (B) 1 year after the appointment or election of the first trustee under section 702, 1104, 1163, 1202, or 1302 of this title if such appointment or such election occurs before the expiration of the period specified in subparagraph (A); or (2) the time the case is closed or dismissed. 11 U.S.C. § 546(a).

Subsequent to the July 22, 2010, Fifty-Seventh Omnibus Hearing, this Court entered an Order on September 9, 2010, which dismissed Plaintiff's Complaint, without prejudice, for failure to plead sufficient facts to state a claim and for failure to comply with Rule 8 of the Federal Rules of Civil Procedure, made applicable by Rule 7008 of the Federal Rules of Bankruptcy Procedure. The Order directed Plaintiff to file a motion for leave to amend the Complaint by September 7, 2010. Vanguard now files its response to Plaintiff's Motion to Amend filed September 7, 2010.

III.    **ARGUMENT**

A.    **The Motion to Amend should be denied as unduly prejudicial.**

Rule 15(a) of the Federal Rules of Civil Procedure requires that courts freely grant leave to amend "when justice so requires." Fed. R. Civ. P. 15(a). "[I]t is the usual practice upon granting a motion to dismiss to allow leave to replead." *Cohen v. Citibank,* 1997 U.S. Dist. LEXIS 2112, No. 95 Civ. 4826, 1997 WL 88378, at *2 (S.D.N.Y. Feb. 28, 1997). Absent a showing of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or the futility of the amendment, a plaintiff should be granted leave to replead. *CVC Claims Litigation LLC v.Citicorp Venture Capital, et al.,* 2006 U.S. Dist. LEXIS 31395 (S.D. N.Y. 2006); *See Protter v. Nathan's Famous Sys., Inc.,* 904 F.Supp. 101, 111 (E.D.N.Y. 1995) (citing *Foman v. Davis,* 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)).

In the instant case, however, allowing Plaintiffs to amend the Complaint would compound the actual harm and prejudice already suffered by Vanguard as a result of the filing of the Complaint under seal. Without any notice, Vanguard was and is exposed to potential liabilities of up to $4,000,000.00 and is deprived of the ability to preserve or

recover evidence needed in its defense. The transactions at issue are now five years old. The Original Complaint was filed September 29, 2007, shortly before the statute of limitations ran and three months prior to the filing of the Disclosure Statement. The Disclosure Statement represented that the Debtors did not, at that time, intend to pursue potential preference claims in light of the distributions to be made under the Plan of Reorganization. As far as Vanguard knew, the statute of limitations had run on any preference claim against it.

The purpose of a statute of limitations is to put an "end date" on the time a Plaintiff may bring a claim against a prospective defendant, in order to allow the defendant relief from the threat of suit. Statutes of limitation are primarily designed to ensure fairness by preventing the revival of stale claims after the evidence has been lost and the witnesses memories have faded. *Burnett v. New York Cent. R.R. Co.*, 380 U.S. 424, 428 (1965).

Plaintiff argues that amendment of the Original Complaint will not prejudice Vanguard but will simplify its defense of the action and streamline discovery. To argue that allowing amendment will aid Vanguard is disingenuous at best. Vanguard was served with the Original Complaint almost four and a half years after the main case was filed, and almost two and a half years after the statute of limitations was thought to have run. Because of the delay in the service of process, Vanguard, in the false belief that there was no litigation, has not retained all records of the transactions, resulting in a loss of evidence, such as e-mail and handwritten, contemporaneous notes, which would be essential in defending this action. Likewise, Vanguard has not retained all its employees or contact information for all witnesses whose personal knowledge is relevant to this

action, each of whom is essential in defending the action.  These facts give Plaintiff an

unfair advantage, because it knew of the litigation, and had the ability to retain and gather

information, data and knowledge that is forever lost to Vanguard.  See Affidavit of

Sylvester Formey, previously attached to Defendant's Motion to Dismiss and attached

herein as Exhibit "A".

Since the Plan of Reorganization proposed to pay the claims at 100 percent, no

preference actions were to be pursued except those specifically enumerated in the

Disclosure Statement.  Had Vanguard known of the pending preference action, it could

have paid Plaintiff or negotiated a settlement of the preference action and obtained a

claim under Section 502(h) of the Bankruptcy Code.  Vanguard could have sold the

claim against Plaintiff for 100 percent or more of its value prior to the collapse of the

Plan financing.  In fact, The Timkin Company did just that.  It sold a portion of its claim

for 100 percent on December 19, 2006 and the remainder for 102 percent on July 31,

2007.  Vanguard also lost the option of opposing the extension motions and seeking

dismissal of the lawsuit when it was filed.  It has been forced, through no fault of its

own, to expend time and money fighting a battle where Plaintiff has been given all the

advantage.  Plaintiff's deliberate actions wrongly deprived Vanguard of options in

dealing with the preference action.

Throughout this time, Plaintiff continued to seek extensions under Rule (4)(m)

of the Federal Rules of Civil Procedure, which is incorporated into the Bankruptcy

Rules by Rule 7004(a)(1).  The rule provides that if defendants in an adversary

proceeding are not served with the complaint within the 120 day period set forth in Rule

4(m), the action may be dismissed and the plaintiff barred from commencing a new

action. Wright & Miller, *Federal Practice and Procedure: Civil* 3d § 1056 & n. 32 (noting that "[a] dismissal for failing to make service in timely fashion leaves the plaintiff in the same position as if the action never had been commenced, and it is possible that the statute of limitations will have expired between the commencement by filing under Rule 3 of the Fed.R.Civ.P. and the dismissal for failure to comply with the 120-day requirement")(citing 128 Cong. Rec. 9848, 9851, *reprinted at* 96 F.R.D. 122). Plaintiff secretly used Rule 4(m) to extend the service of the summons and effectively extend the statute of limitations under Section 546 to Vanguard's detriment.

**B.    The Motion to Amend should be denied as Plaintiff acted in bad faith.**

It has long been held that the "fundamental requisite of due process of law is the opportunity to be heard." *Grannis v. Ordean*, 234 U.S. 385, 394 (1914). This right to be heard, however, "has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Thus, an "elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* at 314; *Barcia v. Sitkin*, 367 F.3d 87, 107 (2d Cir. 2004); *Weigner v. City of New York*, 852 F.2d 646, 654 (2d Cir. 1988).

The Debtors deliberately hid the existence of the preference actions from Vanguard by filing the preference action under seal, disclosing only the case numbers and not the defendants in the Disclosure Statement. Further, Vanguard was not given any notice of or an opportunity to respond to the extension motions. To

the contrary, the motions, with the added component of authority to file the complaints under seal, devised a procedural Star Chamber where Vanguard was intentionally kept in the dark as to its defendant status. Plaintiff continually concealed this information from Vanguard, the only party with an adverse interest in this adversary proceeding. Such a deprivation of due process is wrong and in bad faith, and inevitably led to the Court acting upon false information as set forth above.

Delphi attempted to justify this lack of procedural due process on the grounds that it "avoid[ed] unnecessarily alarming potential defendants" and "having to force all potential defendants to retain counsel to defend against adversary proceedings when, in fact, most of them likely will be resolved by a reorganization plan and never pursued." (Preservation of Estate Claims Procedures Motion, at ¶¶ 34, 37). These justifications have no merit; in fact, they are patronizing and self-serving substitutes for any real analysis into the issue of the foreseeable harm that would ensue from the abridging of due process.

Delphi had an option – to sue the defendants or not to sue the defendants. Importantly, Vanguard would have had notice that it was being sued, and it would have had the ability to oppose the motions seeking the Preservation of Estate Claims Procedures Order and the Extension Orders. Vanguard, in the false belief that there was no litigation, has not retained all records of the transactions, resulting in a loss of evidence, such as e-mail and handwritten, contemporaneous notes, which would be essential in defending this action.

Rather than mere "alarm," the secret stripping of Vanguard's due process rights has resulted in actual harm and prejudice to Vanguard including an abrogation of the statute of repose directly resulting in potential liabilities of up to $4,000,000.00 and an inability to preserve evidence needed in its defense. No reported cases permit a stripping of due process rights to prevent "alarm", and there was far more harm in not having been served.

The simple fact is that there would have been no harm in serving Vanguard, which was familiar with bankruptcy proceedings and avoidance actions and aware of a chapter 11 debtor's fiduciary duty to preserve assets. In fact, Delphi made no real attempt to determine the actual harm to Vanguard, or to present ways to alleviate that harm to the Court. Vanguard had no opportunity to be heard regarding the balancing of the equities, and it is clear that Delphi made no earnest attempt to inform the Court of the harm that would be inflicted on the defendants by the extension motions, let alone the severe prejudices that Delphi could easily have foreseen.

There was no balancing of interests or harm in this equation as required by *Zapata v. City of New York*, 502 F.3d 192, 198 (2d Cir.2007)(affirming reversal of extension of time and dismissal); all of the benefits were to Delphi, and all of the harm was to Vanguard. A true balancing of the harm would need first to ask the harm to Vanguard, which, apparently was not addressed. Also, as addressed by *Enron Corp. v. Bear, Stearns Int'l Ltd. (In re Enron Corp.)*, 323 B.R. 857, 861 (Bankr. S.D.N.Y. 2005), the Court needs to balance the harm to the entire commodities industry if the proscriptions of section 546(e) of the Bankruptcy Code are so lightly cast aside. As noted by the *Enron* Court, 546(e) was intended to preclude actions exactly like the

action at bar, which threaten the very foundations of secure trading. *See id.* at 864.
There is no evidence that such considerations were brought before the Court at all.

By preventing Vanguard from being heard by the Court, Plaintiff effectively
prevented the Court from weighing the prejudice to Vanguard inherent in the extension
of time to serve. "*It is obvious that any defendant would be harmed by a generous
extension of the service period beyond the limitations period for the action, especially if
the defendant had no actual notice of the existence of the complaint until the service
period had expired.*" *Zapata v. City of New York, supra*, 502 F.3d at 198. (emphasis
added) "Prejudice is assumed in the case of individuals sued after the statute has run."
*Id.* at 195.

Plaintiff and its counsel should have openly filed and timely served the
preference action rather than secretly preserving it for two and a half years. The delay
prejudiced Vanguard and Plaintiff should not now benefit from its secrecy by receiving
a second bite at the apple.

By not giving Vanguard notice that it had been sued and by denying Vanguard
the right to be heard and object to the motions supporting the Preservation of Estate
Claims Procedures Order and each of the Extension Orders, Plaintiff maneuvered
itself into this corner where the Complaint should be dismissed on procedural and
substantive grounds. Having devised and imposed this scheme on Vanguard, Plaintiff
cannot now cry foul to the effects of its machinations.

### C.    The Motion to Amend should be denied as futile.

Where an amendment would be futile, courts can deny leave to amend. *See
Oneida Indian Nation of N.Y. v. City of Sherrill,* 337 F.3d 139, 168 (2d Cir. 2003) (citing

*Foman v. Davis,* 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)). "A proposed amendment to a pleading would be futile if it could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." *Id.* (citing *Ricciuti v. N.Y.C. Transit Auth.,* 941 F.2d 119, 123 (2d Cir. 1991)); *Ka Kin Wong, et al., v. HSBC USA, Inc.,* 2010 U.S. Dist. LEXIS 81058 (S.D.N.Y. 2010); *Lucente v. Int'l Bus. Mach. Corp.,* 310 F.3d 243, 258 (2d Cir. 2002). The Amended Complaint against Vanguard is futile as it fails to meet the pleading standard of Rule 8 of the Federal Rules of Civil Procedure, made applicable by Rule 7008 of the Federal Rules of Bankruptcy Procedure. The Amended Complaint, like its predecessor, relies on factually threadbare conclusory statements as to its cause of action. of Plaintiff's insolvency during the preference period.

   While Plaintiff acknowledges that it must comply with the pleading standards enunciated in *Ashcroft v. Iqbal,* 129 S.Ct.1937, 173 L. Ed. 2d 868 (2009) and *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), the Amended Complaint falls short of the requirements set forth in *Iqbal* and *Twombley.* *Iqbal, supra,* enunciated two interrelated tests that must be applied to determine if a complaint can withstand a motion to dismiss under Fed. R. Civ. P. 12(b)(6). First, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal* at 1949. Second, "Only a complaint that states a plausible claim for relief survives a motion to dismiss…where the well-pleaded facts do not permit the court to infer more than the possibility of [a cause of action], the complain has alleged—but it has not shown—that the pleader is entitled to relief" as required by Fed. R. Civ. P. 8(a)(2). *Id.* It follows

that Plaintiff's Amended Complaint which offers labels, conclusions and a formulaic recitation of the elements of a preference will not suffice. Nor, according to *Twombly*, does a complaint suffice if it tenders "naked assertions devoid of further factual enhancement". *Iqbal* at 1949 quoting *Twombly*, *supra*. "A court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal* at 1950. Plaintiff's Amended Complaint also fails to meet the pleading requirements because it fails to allege sufficient facts to support its bare allegations.

**D.     The Motion to Amend should be denied as the Amended Complaint Fails to Plead Sufficient Facts on its Face.**

The Amended Complaint "must also allege enough facts with respect to each of the …elements of section 547(b) in order to put Defendants on notice for the preference claims." *In re Hydrogen, L.L.C.*, 2010 Bankr. LEXIS 1106, *38 (Bankr. S.D.N.Y., Apr. 20, 2010). One of the fundamental elements of an actionable preference is Section 547(b)(3)'s requirement that the subject transfer was "made while the debtor was insolvent." As to this essential element, the Amended Complaint says only "Pursuant to Bankruptcy Code section 547(f), for purposes of this Adversary Proceeding, Plaintiff is presumed to have been, and was in fact, insolvent at the time the Transfers were made." On its face, this allegation runs afoul of both the *Iqbal* and *Twombly* tests. First, it makes only a formulaic recitation of a legal conclusion about the Section 547(b)(3) insolvency element. The allegation falls short because, as a legal conclusion, it is not to be taken as true. Second, the allegation makes only naked assertions of insolvency; it does not set

forth facts showing that Plaintiff's financial condition was such that the sum of its debts was greater than all of its property, at fair valuation, exclusive of property that was fraudulently transferred, as defined in Section 101(32)(a) of the Bankruptcy Code.

The shortcomings of Plaintiff's allegations of insolvency are underscored by the fact that its schedules, verified under penalty of perjury by an authorized officer, show convincingly that it had a book-value positive net worth of more than $2,000,000,000.00 dollars. This figure was first scheduled in Plaintiff's case (05-44640) on January 20, 2006 and was confirmed in four subsequent amendments of the schedules. In addition, a 100% Plan of Reorganization, as amended and modified, was confirmed for all the Debtor entities on July 30, 2009, further evidencing Plaintiff's solvency.

Finally, market data at the time of the transactions at issue show the debtor to be solvent. Market data was used by the court in two recent Third Circuit cases as a measure of a debtor's solvency at a particular point in time. In *VFB v. Campbell Soup Co.*, 482 F. 3d 624, 633 (3d. Cir 2007), the Court concluded that the debtor was solvent at the time of an alleged fraudulent transfer on the basis of the debtor's ability to raise nearly $200 billion in the bond market while maintaining a market capitalization above $1.1 billion. "Absent some reason to distrust it, the market price is a more reliable measure of the stock's value than the subjective estimates of one or two expert witnesses." *Id.* In a subsequent case involving a leveraged buy out, *In re Iridium Operating, LLC*, 373 B.R. 273 (Bankr. S.D.N.Y. 2007), the Court used similar reasoning to conclude that the debtor's access to credit as well as its positive stock valuations at the time of the transfer compelled it to find the debtor solvent. In the instant case, on September 1, 2005, the Delphi stock was trading at over five dollars per share and on July

1, 2005, Delphi bonds were trading for between $74.25 and $97.25. Following the reasoning of the *Campbell's Soup* and *Iridium* cases, these market prices are the best measure of the Debtors' solvency.

In fact, even DAS's parent, Delphi Corporation, appears to have been solvent during the preference period. Delphi "declared a dividend on Delphi common stock of $0.015 per share on June 22, 2005, which was paid on August 2, 2005." *See* Exhibit F, Delphi's 8/8/05 SEC Form 10-Q (the "10-Q"), at p. 6. As of June 30, 2005, there were 561,415,901 outstanding shares of Delphi common stock. *Id.* at p. 1. Thus, the dividend amounted to an $8,421,238.00 payment to shareholders during the preference period. According to John B. Sheehan, Delphi's chief restructuring officer, this dividend was from the capital surplus of Delphi's net assets in excess of its total liabilities. March 21, 2006 Tr., at pp. 152-157. Tellingly, Delphi took no steps during its bankruptcy to recover this dividend.

During the preference period, Delphi's common stock also continuously traded between $2.00 and $5.90 per share. The market valued Delphi, during the preference period, as having an equity value of between $1,122,813,802 and $3,312,353,816.

Consistent with these facts, as late as February 2008, more than two years into its bankruptcy, Delphi was still proposing a 100 cent plan to its creditors. It follows that Plaintiff was solvent at the time of the alleged transfers and the allegation of insolvency has no basis in fact.

**E.     The Motion to Amend should be denied because the Transactions
Listed in Amended Complaint Exhibit 1 Cannot Form the Basis for a
Claim for Which Relief May be Granted.**

The Amended Complaint is also facially insufficient because it contains only

general legal conclusions with no factual basis regarding the alleged transfers. *See Iqbal*

and *Twombley, supra.* The allegations were intentionally vague so that they could

become a template for many, and perhaps all, of the 177 purportedly active adversary

proceedings at bar. These legal conclusions are asserted solely as a formulaic recitation

of the statutory elements at paragraphs 19-26. No *facts* to support those conclusions are

alleged in the Amended Complaint.

Specifically, paragraph twenty-two (22) of the Amended Complaint alleges that

"Plaintiff made, or caused to be made, each Transfer listed on Exhibit 1 for, or on

account of, an antecedent debt owed to Defendant as of the date on which each Transfer

was made. The documents evidencing the antecedent debt include the purchase orders

and/or invoices/bills of lading identified in Exhibit 1, which purchase orders evidence the

amount of the antecedent debt and the approximate dates the subject services ...were

ordered by Plaintiff...and/or were provided by Defendant." The Amended Complaint

incorporates an Exhibit "1" as a list of the Alleged Transfers at issue, but it is devoid of

facts regarding those Alleged Transfers. The facts behind the recitation cannot be alleged

in the Amended Complaint because they are indisputably fatal to it. Here, no *facts*

supporting the elements of section 547(b) of the Bankruptcy Code are alleged. The

Court, from reading the Complaint, cannot ascertain what was paid in exchange for what,

i.e. the underlying facts of any given transaction. Therefore, the court should deny the

motion to amend as futile. The bare allegations of the Amended Complaint are without

the requisite factual support and fail to state a cause of action upon which relief may be

granted.

**F.     This Court's Statements That Proposed Defendants Which Did Not
          Receive Notice Of The Extension Motions May Now Challenge Them
          De Novo.**

Recognizing that notice of Delphi's Extension Motions may have been

insufficient or non-existent with regard to some of the preference defendants, such as the

Vanguard Defendant, this Court has repeatedly held that these defendants could challenge

the Extension Motions *de novo*.  On April 1, 2010, for example, this Court recognized the

inequity of binding defendants to decisions in adversary proceedings of which they were

unaware.  According to the Court:

> Well, would they even have to seek relief if they're not a
> party.  I mean, it's odd to say that they'd be bound if
> they're not party to an adversary proceeding that's been . . .
> served yet.

April 1, 2010 Tr., at p. 13.

Likewise, this Court concluded during the July 22, 2010 hearing on Vanguard's

Motion to Dismiss that:

> [I]f [a Defendant] didn't get notice, it's wide open and I
> should look at it as whether, you know, it was appropriate
> to have entered those orders.  And they should have all
> their – you know, their rights to say the [Procedures Order
> and Extension Orders] shouldn't have been entered.

> \* \* \*

> [I]f someone really didn't get notice of the extension
> motions, then it would seem to me they should be able to
> argue to me as if the motions were being made right now . .
> . .

July 22, 2010 Tr., at pp. 103, 119. Indeed, this Court held that if, as here, a party had no notice of Delphi's Motions, "*it's a slam dunk as far as looking at the order as brand new.*" *Id.* at 107 (emphasis added).

## IV.    INCORPORATION OF OTHER DEFENDANTS' BRIEFS

The Vanguard Defendant incorporates all other meritorious arguments raised by the other preference defendants in opposition to Delphi's motion for leave to amend with regard to them.

## V.    CONCLUSION

Plaintiff's Motion for Leave to Amend Complaints should be denied and the Complaint against Vanguard dismissed with prejudice. Granting the Motion to Amend would further prejudice and unduly harm Vanguard. Plaintiff acted in bad faith by secretly filing the action under seal and by failing to give Vanguard notice and an opportunity to respond to the extension motions. These actions were all in an attempt to circumvent the statute of limitations.

The Motion should also be denied because Vanguard has shown that it would be unduly prejudiced, amendment would be futile and Plaintiff acted in bad faith. It follows that Plaintiff should not be rewarded for this conduct by allowing it to now amend its Complaint against Vanguard.

Dated: Atlanta, Georgia
       November 24, 2010

Respectfully submitted,

HOWICK, WESTFALL, McBRYAN
& KAPLAN, LLP


By: s/ Louis G. McBryan
       Louis G. McBryan

Suite 600, One Tower Creek
3101 Towercreek Parkway
Atlanta, Georgia 30339

HOWICK, WESTFALL, McBRYAN & KAPLAN, LLP
3101 Tower Creek Parkway
Suite 600, One Tower Creek
Atlanta, Georgia 30339
Telephone:    (678) 384-7000
Facsimile:    (678) 384-7034
Louis G. McBryan (LG 1352) (pro hac vice)
Attorneys for Vanguard Distributors, Inc.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | : |
| | : |
| DELPHI CORPORATION, et al. | :   Chapter 11 |
| | : |
| Debtors. | :   Case No. 05-44481 (RDD) |
| | : |
| | : |
| | :   (Jointly Administered) |
| DELPHI CORPORATION, *et al.* | :   Adversary Proceeding No. 07-02539 |
| | : |
| Plaintiffs, | : |
| | : |
| -against- | : |
| | : |
| VANGUARD DISTRIBUTORS, INC., | : |
| | : |
| Defendant. | : |
| | x |

## <u>VERIFICATION</u>

   Personally appeared before the undersigned subscribing officer, duly authorized to

administer oaths, Sylvester Formey, who after being sworn, deposes and says that he has read the

foregoing Response in Opposition to Reorganized Debtors' Motion for Leave to File Amended

Complaints and that the facts contained therein are true and correct to the best of his knowledge.

[SIGNATURE PAGE TO FOLLOW]

{File: 00043191.DOC / }

This _23rd_ day of November, 2010.

_____
SYLVESTER FORMEY

Sworn to and subscribed to before me
this _23rd_ day of November, 2010.

_____
Notary Public
My commission expires: ~~JANICE R. BLAKE~~
                       Notary Public, Chatham County, GA
                       My Commission Expires August 19, 2012

{File: 00043191.DOC / }

EXHIBIT "A"

HOWICK, WESTFALL, McBRYAN & KAPLAN, LLP
3101 Tower Creek Parkway
Suite 600, One Tower Creek
Atlanta, Georgia 30339
Telephone:    (678) 384-7000
Facsimile:    (678) 384-7034
Louis G. McBryan (LG 1352) (pro hac vice)

Attorneys for Vanguard Distributors, Inc.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | : |
| DELPHI CORPORATION, et al., | : Chapter 11 |
| Debtors. | : Case No. 05-44481 (RDD) |
| | : |
| | : (Jointly Administered) |
| DELPHI CORPORATION, et al., | : Adversary Proceeding No. 07-02539 (RDD) |
| Plaintiffs, | : |
| -against- | : |
| VANGUARD DISTRIBUTORS, INC., | : |
| Defendant. | : |

256373 v1

AFFIDAVIT IN SUPPORT OF MOTION BY VANGUARD DISTRIBUTORS, INC.
SEEKING AN ORDER DISMISSING THE ADVERSARY PROCEEDING WITH
PREJUDICE (I) PURSUANT TO FED.R.CIV.P. 12(b) AND FED.R.BANKR.P.
7012(b);(II) PURSUANT TO FED.R.CIV.P. 60 AND FED.R.BANKR.P. 9024, VACATING
PRIOR ORDERS ESTABLISHING PROCEDURES FOR CERTAIN ADVERSARY
PROCEEDINGS INCLUDING THOSE COMMENCED BY DELPHI UNDER 11 U.S.C.
§§ 541, 544, 545, 547, 548, AND/OR 549, AND EXTENDING THE TIME TO SERVE
PROCESS FOR SUCH ADVERSARY PROCEEDINGS, OR (III) IN THE
ALTERNATIVE, DISMISSING THE ADVERSARY PROCEEDING ON THE GROUND
OF JUDICIAL ESTOPPEL

SYLVESTER FORMEY declares as follows:

1.      I am Chief Executive Officer and principal of Defendant Vanguard Distributors,

Inc. ("Vanguard"). I submit this Affidavit in support of Vanguard's motion to dismiss the

adversary proceeding against Vanguard.

2.      Vanguard provided to Delphi, pursuant to contract, tools used in Delphi's Ohio

and Mississippi plants.

3.      The transfers alleged in Exhibit "1" to the Complaint, to the extent any such

occurred, (the "Alleged Transfers") were exclusively pursuant to the term of the contracts

between the parties and were, therefore, in the ordinary course of business and contemporaneous

exchanges for new value.

4.      Vanguard is neither Laneko Engineering Co., Wachovia Bank, National

Association nor Laneko Engineering Co. Inc. nor a parent, affiliate or subsidiary thereof.

256373 v1                                         2

## NO NOTICE WAS GIVEN TO VANGUARD

5.    Vanguard had no knowledge that Delphi would sue, or in fact did sue, Vanguard until it received the Complaint on April 5, 2010.

6.    Vanguard was not served with any notice of any motions to extend service of, or in, this action.

7.    It is clear that the sealing of the action against Vanguard, while delaying the service of the action, was calculated to deceive Vanguard for the purpose of gaining litigation advantages for Delphi.

## PREJUDICE TO VANGUARD AND TO ME PERSONALLY

8.    The filing of this action under seal and then the subsequent secreting of the action, literally for years, is repugnant. Actual prejudice to Vanguard and to me personally was the foreseeable and actual result. The prejudice stems from the following:

(a)    Unless our Motion is granted, Vanguard has lost all benefit from the statute of repose, which it relied upon in its fiscal and insurance planning. Vanguard was entitled to rely, and had no reason not to rely, and did, in fact, rely upon the law and policy of repose, which I am informed is embedded in section 546(a) of the Bankruptcy Code, without having been served or received notice for more than two years after the statute of limitations had expired. Vanguard also had no way to discover that it had been sued because the Complaint was filed under seal.

(b)    Vanguard, in the false belief that there was no litigation, has not retained all records of the transactions, resulting in a loss of evidence, such as e-mail and handwritten, contemporaneous notes, which would be essential in defending this action. Likewise, Vanguard has not retained all its employees or contact information for all witnesses whose personal knowledge is relevant to this action, each of whom is essential in defending the action. These

256373 v1

3

facts give Delphi an unfair advantage, because they knew of the litigation, and had the ability to retain, indeed gather information, data and knowledge that is forever lost to Vanguard.

9.      Thus, Vanguard is unduly prejudiced by the present action, by Delphi's scheme to secret this litigation, and is in present danger of new liability directly and proximately created by Delphi's scheme to secret this litigation.

10.      Based on the foregoing, I pray that this Court grant Vanguard's motion in its entirety and dismiss the action.

Executed:      Savannah, Georgia
                     May 13, 2010.

I declare under penalties of perjury that the foregoing is true and correct.

s/ Sylvester Formey
SYLVESTER FORMEY

Sworn to and subscribed to
before me this 13th day of May, 2010.

s/ Janice R. Blake
Notary Public, Chatham County, GA
My Commission Expires August 19, 2012