VARNUM LLP  
Bridgewater Place, P.O. Box 352  
Grand Rapids, MI 49501-0352  
Mary Kay Shaver  
Bryan R. Walters (admitted *pro hac vice*)  
Tel.: (616) 336-6000

Hearing Date and Time: February 17, 2011, at 10 a.m.  
Reply Deadline: January 28, 2011

*Attorneys for Summit Polymers, Inc.*

**UNITED STATES BANKRUPTCY COURT**  
**SOUTHERN DISTRICT OF NEW YORK**

――――――――――――――――――――――――x

In re:

DPH HOLDINGS CORP., et al.,

            Debtors.

Case No. 05-44481-rdd  
Chapter 11  
(Jointly Administered)

――――――――――――――――――――――――x

DELPHI CORPORATION, et al.,

            Plaintiff,

    v.

SUMMIT POLYMERS INC. ,

            Defendant.

Adv. Proc. No. 07-02661-rdd

――――――――――――――――――――――――x

**DEFENDANT SUMMIT POLYMERS INC.'S BRIEF IN OPPOSITION TO MOTION FOR LEAVE TO FILE AMENDED COMPLAINT**

**I.    INTRODUCTION**

The Reorganized Debtors' Motion for Leave to File an Amended Complaint should be denied. Not only does the proposed First Amended Complaint ("Amended Complaint") violate the due process rights of Summit Polymers, Inc. ("Summit"), it also fails to comply with this Court's September 7, 2010, Order. It is obvious that the Reorganized Debtors and their counsel did not undertake a reasonable inquiry into the evidentiary support for the factual contentions alleged in the proposed Amended Complaint. The Reorganized Debtors' failure to conduct a

reasonable investigation before submitting the proposed Amended Complaint is evidenced in four distinct ways:

1.    The proposed Amended Complaint falsely states that Delphi Automotive Systems LLC ("DAS") made all of the transfers to Summit.  However, the Reorganized Debtors' own statements of financial affairs show that nine of the 22 alleged transfers, in an amount totaling almost $675,000, were made by Delphi Mechatronic Systems ("Mechatronic"), a different Delphi entity than DAS that is not a plaintiff to the proposed Amended Complaint.  That these transfers were made by Mechatronic is also apparent from a quick review of the remittance statements for these payments.

2.    The Reorganized Debtors also falsely allege that DAS was a contracting entity on every contract for which Summit received a transfer.  However, a quick review of the relevant purchase orders shows that several of the contracts were with entities other than DAS, such that Summit was not a creditor to DAS on these payments.

3.    The Reorganized Debtors also completely ignore that the Debtors[1] waived and released any preference claims against Summit for prefunding transfers.  A prefunding transfer

---

[1] The Debtors were Delphi Corporation, ASEC Manufacturing General Partnership, ASEC Sales General Partnership, Aspire, Inc., Delco Electronics Overseas Corporation, Delphi Automotive Systems (Holding), Inc., Delphi Automotive Systems Global (Holding), Inc., Delphi Automotive Systems Human Resources LLC, Delphi Automotive Systems International, Inc., Delphi Automotive Systems Korea, Inc., Delphi Automotive Systems LLC, Delphi Automotive Systems Overseas Corporation, Delphi Automotive Systems Risk Management Corp., Delphi Automotive Systems Services LLC, Delphi Automotive Systems Tennessee, Inc., Delphi Automotive Systems Thailand, Inc., Delphi China LLC, Delphi Connection Systems, Delphi Diesel Systems Corp., Delphi Electronics (Holding) LLC, Delphi Foreign Sales Corporation, Delphi Furukawa Wiring Systems LLC, Delphi Integrated Service Solutions, Inc., Delphi International Holdings Corp., Delphi International Services, Inc., Delphi Liquidation Holding Company, Delphi LLC, Delphi Mechatronic Systems, Inc., Delphi Medical Systems Colorado Corporation, Delphi Medical Systems Corporation, Delphi Medical Systems Texas Corporation, Delphi NY Holdings Corporation, Delphi Receivables LLC, Delphi Services Holding Corporation, Delphi Technologies, Inc., DREAL, Inc., Environmental Catalysts, LLC, Exhaust Systems Corporation, MobileAria, Inc., Packard Hughes Interconnect Company, Specialty Electronics, Inc., and Specialty Electronics International Ltd.

agreement between the Debtors and Summit explicitly waived any preference claim for the $999,214.64 transferred from DAS to Summit on the day before the bankruptcy filing. However, the Reorganized Debtors included this $999,214.64 transfer in their proposed Amended Complaint.

    4.    Finally, the Reorganized Debtors alleged transfers relating to over 40 contracts, in an amount totaling over $1.7 million, that were assumed by Debtors under either an express agreement between Debtors and Summit or under the First Amended Joint Plan of Reorganization (as Modified). The law is clear that preferences related to assumed contracts cannot be recovered. Counsel for the Reorganized Debtors clearly did not consult its clients' own documents, including its clients' own agreements and plan of reorganization, to determine whether any of the transfers in the proposed Amended Complaint related to assumed contracts.

It has now been more than five years since the Debtors filed their bankruptcy petitions, and counsel for the Reorganized Debtors *still* cannot draft a complaint that properly identifies which Delphi entity made the transfers or which Delphi entity contracted with Summit for each of the transfers. In making their most recent allegations, the Reorganized Debtors completely ignored their prefunding transfer agreement with Summit and did not account for those contracts which were expressly assumed. Frankly, the Reorganized Debtors' lack of investigation into the evidentiary support for the factual allegations in the proposed Amended Complaint is sanctionable. Enough is enough. The Reorganized Debtors' Motion for Leave should be denied.

## II.    THE PROPOSED AMENDED COMPLAINT STILL VIOLATES THE STATUTE OF LIMITATIONS AND SUMMIT'S DUE PROCESS RIGHTS.

Summit was one of many Defendants that moved to dismiss the original Complaint because of the procedure by which the Complaint was filed under seal and the time for service of the Complaint and summons was extended for more than two years. This procedure violated

Summit's due process rights and was an improper end-run around the statute of limitations enacted by Congress. Summit reiterates this as a basis for denying the Motion for Leave and incorporates by reference both the prior arguments and any new arguments advanced by any defendant on this issue.

### III. THE REORGANIZED DEBTORS FAILED TO CONDUCT A REASONABLE INQUIRY INTO THE FACTS ALLEGED IN THE PROPOSED AMENDED COMPLAINT.

This Court dismissed the original Complaint without prejudice "because the Debtors have failed to plead sufficient facts to state a claim, and have not complied with Rule 8 of the Federal Rules of Civil Procedure, made applicable by Rule 7008 of the Federal Rules of Bankruptcy Procedure." 9/7/10 Order [Dkt. #20579] ¶ 4. This Court further ordered the following:

> By no later than September 7, 2010, the Reorganized Debtors shall file a motion for leave to amend the complaint in each Adversary Proceeding the Reorganized Debtors intend to pursue (each, a "Motion to Amend"). Each Motion to Amend shall attach a proposed amended complaint that, for each alleged transfer shall set forth, at a minimum, the transferor, the transferee, any known subsequent transferee against whom relief is sought, the antecedent debt and which Reorganized Debtor is the plaintiff.

*Id.*

Implicit in its Order is an expectation that the Reorganized Debtors would undertake a reasonable factual inquiry in order to properly present these "minimum" facts. By submitting the Motion for Leave and proposed Amended Complaint, counsel for the Reorganized Debtors certified to the best of its knowledge that "after an inquiry reasonable under the circumstances, the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Bankr. P. 9011(b)(3).

A cursory examination of the proposed Amended Complaint demonstrates that counsel for the Reorganized Debtors clearly did *not* make a reasonable inquiry into the evidentiary

4

support for the factual allegations against Summit. This is demonstrated in four distinct ways, each of which is discussed below.

A. **THE PROPOSED AMENDED COMPLAINT FALSELY ALLEGES THAT ALL OF THE TRANSFERS WERE MADE BY DAS.**

This Court's September 7, 2010, Order required that any amended complaint identify the transferor for each alleged transfer. 9/7/10 Order [Dkt. #20579] ¶ 4. On its face the proposed Amended Complaint appears to meet this requirement, as it alleges that the transfers "were made by Plaintiff [DAS] from Plaintiff's account." Am. Compl. ¶ 22. The proposed Amended Complaint also includes a chart that purports to identify certain information about each of the transfers to Summit and states that the "Obligor and Transferring Entity" for each of the allegedly preferential transfers was DAS. *Id.* Ex. 1.

However, the Reorganized Debtors' *own statements of financial affairs* shows that many of these transfers were not made by DAS. Specifically, nine of the 22 transfers, in an amount totaling $674,538.78, were made by Delphi Mechatronic Systems ("Mechatronic"), which is not a plaintiff to this adversary proceeding. *See* Statement of Financial Affairs, p. 34 [Case No. 05-44567, Dkt. # 6].

All the Reorganized Debtors' counsel had to do in preparing the proposed Amended Complaint was look at its clients' own statements of financial affairs when making its factual allegations concerning the transfers, and it would have recognized that nine transfers, covering almost $675,000, were not transfers made by DAS. However, the Reorganized Debtors clearly failed to do so.

That these transfers were not made by DAS is also easily confirmed by looking at the remittance information concerning each of these transfers. A copy of those remittance statements is attached as **Exhibit A**, and a chart comparing the actual transferee to the allegations

5

in the proposed Amended Complaint is attached as **Exhibit B**. Notably, out of the approximately 400 underlying transactions for which Summit is alleged to have received transfers in Exhibit 1 of the proposed Amended Complaint, 258 of those transactions involved Mechatronic as the transferor. A reasonable inquiry into the facts concerning these transfers would necessarily involve an examination of the remittance statements to see who made the payments at issue, particularly given this Court's admonishment of the Reorganized Debtors for not alleging this information in their prior Complaint.

### B.    MANY OF THE ALLEGATIONS IN THE PROPOSED AMENDED COMPLAINT CONCERNING THE CONTRACTING PARTIES ARE ALSO INCORRECT.

In an attempt to meet the *minimum* requirements set forth by the Court in its September 7, 2010, Order, the proposed Amended Complaint alleges that "Mechatronic and Plaintiff [DAS] entered into certain purchase agreements . . . with Defendant for the supply of various goods . . . ." Am. Compl. ¶ 14. Similarly, the chart attached to the proposed Amended Complaint identifies both DAS and Mechatronic as the contracting entities for each of the transactions that triggered the transfers. *Id.* Ex. 1. This is a necessary element of the claims, as in order for a transfer from DAS to Summit to be a preference, Summit must have been a creditor of DAS with regard to that transfer. 11 U.S.C. § 547(b)(1).

This allegation is also false. A cursory review of the purchase orders for these transactions shows many transactions for which DAS was not the contracting entity to which Summit was a creditor. Copies of the purchase orders are attached as **Exhibit C**. A chart comparing the actual contracting entity to the allegations in the proposed Amended Complaint is attached as **Exhibit B**.[2]

---

[2] None of the purchase orders identify *both* DAS and Mechatronic as the contracting parties. This is directly contrary to DAS's allegation that both it and Mechatronic were the contracting entities on *every* contract.

6

Again, this is not a typographical error or a minor oversight. The Reorganized Debtors' failure to examine *their own purchase orders* before filing the proposed Amended Complaint is further evidence that the Reorganized Debtors and their counsel did not engage in a reasonable factual inquiry prior to submitting the proposed Amended Complaint.

### C. THE PROPOSED AMENDED COMPLAINT ALLEGES AS PREFERENCES PREFUNDING TRANSFERS EXPRESSLY WAIVED.

A third example of the Reorganized Debtors' failure to undertake a reasonable inquiry before making the factual allegations in the proposed Amended Complaint concerns the Reorganized Debtors' failure to account for their Prefunding Transfer Agreement with Summit. On March 8, 2006, the Bankruptcy Court entered an order authorizing the Debtors to waive and release preference claims against certain suppliers agreeing to certain terms and conditions. [Dkt. # 2755]. Pursuant to this order and on March 22, 2006, the Debtors expressly agreed "to waive and release their rights, and the rights of their respective estates, under Section 547 of the Bankruptcy Code to avoid the Prefunding Transfer . . . ." 3/22/06 Prefunding Transfer Agreement, **Ex. D**. The Prefunding Transfer to Summit was in the amount of $999,214.64 and was made on October 6, 2005. *Id.*

However, the proposed Amended Complaint includes an allegation that the Prefunding Transfer on October 6, 2005, in the amount of $999,214.64 was a transfer recoverable by DAS. *See* Am. Compl. Ex. 1. This is directly contrary to the Prefunding Transfer Agreement, entered into by the Debtors over four years ago.

Once again, this is not a minor clerical error or small oversight. Summit believes that the Reorganized Debtors entered into similar agreements with numerous suppliers. The Reorganized Debtors' failure to account for the express waiver of preference claims in these prefunding

7

transfer agreements is yet further evidence that the Reorganized Debtors and their counsel did not engage in a reasonable factual inquiry prior to submitting the proposed Amended Complaint.

        **D.**       **MANY OF THE TRANSFERS ALLEGED IN THE PROPOSED AMENDED COMPLAINT RELATE TO CONTRACTS THAT WERE ASSUMED.**

A final example of the Reorganized Debtors' utter failure to undertake a reasonable inquiry before making the factual allegations in the proposed Amended Complaint relates to transfers involving contracts that were assumed. On December 12, 2005, the Bankruptcy Court entered an order authorizing the Debtors to assume agreements with certain suppliers agreeing to certain terms and conditions. [Dkt. # 1494]. Pursuant to such order and on April 13, 2006, Debtors and Summit entered into an agreement under which Debtors agreed to assume 35 of their contracts with Summit. 4/13/06 Assumption Agreement, **Ex. E**. Many of the transfers in the proposed Amended Complaint were for payment on one of these 35 contracts. The proposed Amended Complaint alleges $939,904.37 in transfers on these expressly assumed contracts. A chart showing the payments on these expressly assumed contracts is attached as **Exhibit F**.

Moreover, as is the Reorganized Debtors are aware, the Reorganized Debtors' First Amended Joint Plan of Reorganization (as Modified) expressly assumed many contracts, listing over 4,000 pages of contracts that were expressly assumed. [Dkt. #12359] The Modified Plan expressly assumed seven additional contracts with Summit (beyond those assumed in April 2006) for which the proposed Amended Complaint alleges preferential transfers totaling $787,803.69. *See* **Ex. F**.

It is well established that a preference claim may not be brought where the transfer was in payment for goods shipped under a contract that was assumed as part of a plan of reorganization. Payments within the preference period on account of a contract or lease assumed during the bankruptcy case are not avoidable under Section 547(b). *See Kimmelman v. Port Auth. of N.Y. &*

8

*N.J. (In re Kiwi Int'l Air Lines Inc.)*, 344 F.3d 311 (3d Cir. 2003); *In re Superior Toy & Mfg. Co.*, 78 F.3d 1169, 1174 (7th Cir. 1996); *Alvarado v. Walsh (In re LCO Enters.)*, 12 F.3d 938 (9th Cir. 1993); *Seidle v. GATX Leasing Corp.*, 778 F.2d 659 (11th Cir. 1985); *Philip Sens. Corp. v. Luntz (In re Philip Servs. (Delaware) Inc.)*, 284 B.R. 541, 553 (Bankr. D. Del. 2002); *MMR Holding Corp. v. C & C Consultants Inc. (In re MMR Holding Corp.)*, 203 B.R. 605, 613 (Bankr. M.D. La. 1996); *Virtual Network Servs. Corp. v. Brook Furniture (In re Virtual Network Servs. Corp.)*, 97 B.R. 433 (Bankr. N.D. Ill. 1989). This Court has also acknowledged that payments on assumed contracts cannot be transfers. 7/22/10 Tr. At 277, **Ex. G**.

Once again, the Reorganized Debtors' failure to consider whether any of the transfers in the proposed Amended Complaint related to contracts that were assumed is not a minor error. Rather, it reflects a fundamental failure of the Reorganized Debtors and their counsel to undertake a reasonable inquiry into the factual basis of their claims.

### E. THE REORGANIZED DEBTORS' MOTION SHOULD ALSO BE DENIED BECAUSE DAS WAS SOLVENT DURING THE PREFERENCE PERIOD.

The Reorganized Debtors' conclusory allegation in paragraph 24 of the proposed Amended Complaint that DAS was insolvent at the time the transfers were made is contradicted by DAS's own schedules and the undisputed evidence. Summit incorporates by reference the arguments advanced by the other Defendants that leave should be denied because DAS has not properly alleged, and cannot prove, insolvency.

### F. DENIAL OF THE MOTION FOR LEAVE IS WARRANTED.

The Reorganized Debtors had more than *five years* to investigate their claims against Summit. The proposed Amended Complaint is riddled with so many fundamental factual errors that it is obvious that the Reorganized Debtors and their counsel have not met their Rule 9011 obligations to undertake a reasonable inquiry into the evidentiary basis for the factual allegations

9

set forth in the proposed Amended Complaint. This is particularly egregious in light of this Court's September 7, 2010, Order giving the Reorganized Debtors one last chance to amend their Complaint to properly set forth these fundamental factual contentions.

Courts have been clear that Rule 9011 and its parallel, Fed. R. Civ. P. 11, require a reasonable investigation of the facts alleged in the complaint. "The rule imposes on counsel a duty to look before leaping and may be seen as a litigation version of the familiar railroad crossing admonition to 'stop, look, and listen.'" *Lieb v. Topstone Indus. Inc.*, 788 F.2d 151, 157 (3d Cir. 1986). Dismissal of a complaint (or, in this case, denying a motion for leave to amend) is an appropriate remedy where the complaint evidences a failure to reasonably investigate the claims asserted therein and the plaintiff has already had the opportunity to amend its complaint previously. *See Carman v. Treat*, 7 F.3d 1379, 1382 (8th Cir. 1993). In this case, the Reorganized Debtors had more than five years to get their facts straight with regard to the alleged transfers by Summit, but still cannot come remotely close to doing so. Enough is enough. The Motion for Leave should be denied.

Grand Rapids, Michigan
Dated: November 24, 2010         VARNUM LLP

                                By: /s/ Bryan R. Walters
                                    Bryan R. Walters
                                    Bridgewater Place, P.O. Box 352
                                    Grand Rapids, MI 49501-0352
                                    (616) 336-6000
                                    brwalters@varnumlaw.com

                                    *Attorneys for Defendant Summit Polymers, Inc.*

3382944_1.DOC