# EXHIBIT D

March 22, 2006

TO:    Summit Polymers, Inc
       6715 S. Sprinkle Road
       Portage, MI 49002-9707

Dear James H. Haas:

    As you are no doubt aware, on October 8, 2005 (the "Petition Date"), Delphi Corporation ("Delphi"), together with certain of its U.S. affiliates (collectively, the "Debtors"), filed voluntary petitions under chapter 11 of the United States Bankruptcy Code (11 U.S.C. §§ 101-1330, as amended) (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Cases" and the "Bankruptcy Court," respectively). On the Petition Date, we requested the Bankruptcy Court's authority to pay certain suppliers and take certain other actions with respect to certain suppliers in recognition of the importance of continuity in our business operations and our desire that the Bankruptcy Cases have as little effect on our operations as possible. On October 13, 2005 and March 8, 2006, the Bankruptcy Court entered orders (collectively, the "Order") authorizing us, under certain conditions, to waive and release certain of our rights under the Bankruptcy Code with respect to certain suppliers that agree to the terms set forth below and to be bound by the terms of the Order. A copy of each order is available on our restructuring website, www.delphidocket.com.

    Prior to the Petition Date, you received a payment in the amount of $ 999,214.64 from the Debtors (the "Prefunding Transfer"), which payment prefunded certain obligations of the Debtors to you that would otherwise have constituted pre-bankruptcy claims. As such, you constitute a "Prefunded Supplier" as such term is used in the Order. In accordance with paragraph 7 of the Order, the Debtors hereby agree to waive and release their rights, and the rights of their respective estates, under section 547 of the Bankruptcy Code to avoid the Prefunding Transfer in exchange for your agreement to the terms hereof.

    To receive the waiver and release described in the preceding paragraph, each selected supplier must agree to continue supplying goods to the Debtors based on "Customary Trade Terms." In the Order, Customary Trade Terms are defined as MNS-2 payment terms and those other terms and conditions as are embodied in the Delphi's General Terms and Conditions or such other more favorable trade terms, practices and programs (including, but not limited to, credit limits, pricing, cash discounts, timing of payments, allowance, rebates, coupon reconciliation, normal product mix and availability, and other applicable terms and programs) in effect between such supplier and the Debtors in the twelve months prior to the Petition Date.

    For purposes of administration of this trade program as authorized by the Bankruptcy Court, the Debtors and you agree as follows:

        (a)    You will provide MNS-2 payment terms or such other more favorable payment terms in effect between such supplier and the Debtors in the twelve months prior to the Petition Date as follows:

(b)    In consideration for the payment described herein, you agree not to file or otherwise assert against any or all of the Debtors, their estates, or any other person or entity or any of their respective assets or property (real or personal) any lien (regardless of the statute or other legal authority upon which such lien is asserted) related in any way to any remaining prepetition amounts allegedly owed to you by the Debtors arising from agreements entered into prior to the Petition Date. Furthermore, if you have taken steps to file or assert such a lien prior to entering into this letter agreement, you agree to take all necessary steps to remove such lien as soon as possible. Nothing contained in this paragraph (b) shall apply to liens asserted by you that are related to tooling invoice 585498, with respect to which you and the Debtors reserve all of your and their respective rights; provided, however, that you agree that your only recourse with respect to seeking payment of any amounts outstanding under tooling invoice 585498 shall be to either (i) seek payment of such amounts under the Order Under 11 U.S.C. §§ 105, 363(b), 546(b), 1107, and 1108 Authorizing Payment of Contractors and Service Providers in Satisfaction of Liens, under which you acknowledge payment is made at the Debtors' discretion, or (ii) file a proof of claim against the relevant Debtor, which claim shall be resolved in accordance in accordance with a claims reconciliation process to be established by order of the Bankruptcy Court at a later date; provided, further, however, for the avoidance of doubt, you acknowledge and agree that you shall not have the right to refuse to honor your obligations under any agreement between you and any of the Debtors (including, without limitation, the timely delivery of goods to the Debtors as provided in such agreements) solely on account of nonpayment of any amounts referred to in the preceding clause without receiving prior relief from the automatic stay provisions of section 362 of the Bankruptcy Code by order of the Bankruptcy Court.

(c)    You will hereafter extend to the Debtors all Customary Trade Terms (as defined in the Order).

The Debtors' waiver and release of their rights, and the rights of their respective estates, under section 547 of the Bankruptcy Code to avoid the Prefunding Transfer in the manner set forth in the Order may occur only upon execution of this letter by a duly authorized representative of your company and the return of this letter to the Debtors. Your execution of this letter agreement and return of the same to the Debtors constitutes an agreement by you and the Debtors:

(a)    to the Customary Trade Terms;

(b)    that, for a period of no less than the greater of (i) two (2) years from the Petition Date or (ii) the remaining term of your purchase orders or other supply agreements governing your supply of goods to the Debtors, you will continue to supply the Debtors with goods, pursuant to the Customary Trade Terms and that the Debtors will pay for such goods in accordance with Customary Trade Terms;

(c)    that you have reviewed the terms and provisions of the Order and that you consent to be bound by such terms;

2

(d)    that you will not separately seek payment for reclamation and similar claims outside the terms of the Order (provided, however, that your entry into this letter agreement shall not limit your right to request payment of any remaining outstanding prepetition claims pursuant to the procedures provided in the Order Under 11 U.S.C. §§ 363(b) and 365(a) and Fed. R. Bankr. P. 9019 Approving Procedures to Assume Certain Amended and Restated Sole Source Supplier Agreements); and

(e)    that if you fail to abide by the terms of this Agreement, the Prefunding Transfer will be deemed to have been in payment of then outstanding postpetition obligations owed to you and that you will immediately repay to the Debtors any Prefunding Transfer to the extent that the aggregate amount of such payments exceed the postpetition obligations then outstanding without the right of any setoffs, claims, provision for payment of reclamation, or trust fund claims, or otherwise.

The Debtors and you also hereby agree that any dispute with respect to this agreement, the Order, and/or your participation in the Trade Payment Program shall be determined by the Bankruptcy Court.

You hereby agree that you will keep the terms of this Agreement together with all related settlement discussions strictly confidential. You may disclose the terms of this Agreement only to your management personnel that need to know such information to implement the terms of this Agreement and legal counsel and other advisors with whom you have a recognized legal privilege; provided that all such parties have been informed of the confidentiality restrictions contained herein. You further agree that you will be responsible and liable for any breach of the confidentiality provisions set forth in this Agreement by your management personnel, legal counsel and other advisors. You acknowledge that failure to honor the confidentiality provisions contained herein would cause significant economic harm to the Debtors. Any discussions by you with any third parties, including the press or media or consultants, regarding this Agreement and its terms are expressly prohibited.

You also hereby acknowledge and agree that you continue to be bound by the terms of each purchase order or supply agreement between you and one or more of the Debtors, including, without limitation, the general terms and conditions applicable thereto, except to the extent modified by the terms of this agreement and the United States Bankruptcy Code.

The Debtors expressly reserve all of their rights at law and in equity, including, without limitation, all of their rights as debtors-in-possession under the United States Bankruptcy Code. Without limiting the generality of the foregoing sentence, this agreement, and any payment made hereunder, does not constitute (a) a waiver of the Debtors' rights (i) to dispute any claim, (ii) to reject any agreement, contract, purchase order, or other document under section 365 of the United States Bankruptcy Code, or (iii) to take, or refrain from taking, any other action under any applicable section of the United States Bankruptcy Code or any other applicable law or (b) an approval, adoption, or assumption of any agreement, contract, purchase order, or other document under section 365 of the United States Bankruptcy Code or any other applicable law, all of the Debtors' rights with respect to which are expressly reserved.

If you have any questions about this Agreement or our financial restructuring, please do not hesitate to call (248)655-0726.

Sincerely,

DELPHI AUTOMOTIVE SYSTEMS LLC

By: Brett Lenzizion
Its: Purchasing Manager

537562.01-Chicago Server 2A - MSW

Agreed and Accepted by:
Summit Polymers, Inc

By James H. Haas
   Its:  President

Dated: March 22, 2006