MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.
Attorneys for Defendant
150 West Jefferson Avenue, Suite 2500
Detroit, MI 48226
Telephone: (313) 963-6420
Fax: (313) 496-8450
Email: fusco@millercanfield.com
       swansonm@millercanfield.com
Timothy A. Fusco
Marc N. Swanson

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| In re | Chapter 11 |
| DPH HOLDINGS CORP., *et al.*, | Jointly Administered<br>Case No. 05-44481-RDD |
|     Debtors. | |

---

| | |
|---|---|
| DELPHI CORPORATION, *et al.*, | |
|     Plaintiffs, | Adversary Proceeding No.<br>07-02414-RDD |
| VS. | |
| NILES USA, INC., | |
|     Defendant. | |

---

### NILES USA, INC.'S RESPONSE IN OPPOSITION TO REORGANIZED DEBTORS' MOTION FOR LEAVE TO FILE AMENDED COMPLAINTS

## I.     <u>INTRODUCTION</u>

This Court should deny the Reorganized Debtors' motion asking that this Court exercise

its discretion to permit Delphi Automotive systems, LLC ("<u>DAS</u>") to file an amended complaint

against Niles USA, Inc. to recover $19,742,280.88 in alleged preferential transfers.  The

Proposed Amended Complaint (as defined below) is futile, and Niles USA, Inc. will be severely

prejudiced by DAS's undue delay if this case is permitted to proceed. As explained below:

- Niles USA, Inc. was not a creditor and never received any of the transfers identified on the Original Complaint (as defined below) or the Proposed Amended Complaint from DAS.

- Niles America Wintech, Inc. ("<u>Niles Wintech</u>") received the transfers identified on the Original Complaint from DAS but it is party to a release from the Debtors which preclude the Debtors from recovering any of the transfers.

- DAS's Proposed Amended Complaint fails to comply with this Court's September 7, 2010 Dismissal Order and does not properly plead the antecedent debt for any of the transfers.

- The additional alleged transfers identified on the Proposed Amended Complaint do not relate back to the Original Complaint

Accordingly, the Motion to Amend should be denied and the complaints dismissed with

prejudice.

## II.     <u>BACKGROUND</u>

### A.     **Niles USA, Inc., Niles America Wintech, Inc. and the Debtors**

On October 8, 2005, ("<u>Petition Date</u>") Delphi Corporation and certain of its affiliates

(collectively, "<u>Debtors</u>") filed voluntary petitions for relief under Chapter 11 of the Bankruptcy

Code.   Prior to the Petition Date, Niles Wintech was a party with the Debtors to various

agreements ("Supply Agreements") under which it supplied automotive parts to the Debtors. *See* Exhibit A, Hohauser Dec. ¶ 20.   Niles USA, Inc. did not then or has ever provided goods or services to any of the Debtors. *Id.*

On March 31, 2006, the Debtors and Niles Wintech entered into a court approved agreement ("March 31 Agreement").  The March 31 Agreement is attached as Exhibit B. The final paragraph on Page 3 of the March 31 Agreement provides:

> The Debtors hereby agree that, upon execution of this letter agreement by you, the Debtors will waive and release their rights, and the rights of their respective estates, under chapter 5 of the Bankruptcy Code, to the fullest extent that such waiver would have otherwise occurred by operation of law upon assumption of the Agreement, to avoid payments made to you with respect to the Agreement, subject to potential reinstatement upon your breach of the terms of this letter agreement as provided above.

Accordingly, the Debtors irrevocably waived any and all claims under chapter 5 of the Bankruptcy Code against Niles Wintech.  The Debtors' apparently recognize the waiver since they have not sought relief against Niles Wintech.

### B.    Delphi's Original Complaint

The Debtors' original Complaint to Avoid and Recover Transfers Pursuant to 11 U.S.C. §§ 547 and 550 ("Original Complaint") was filed under seal on or about September 28, 2007, but not unsealed and served on Niles USA until in or around March 2010.   The plaintiffs in the Original Complaint were "Delphi Corporation and the other above captioned debtors and debtors in possession." There were two defendants in the Original Complaint: Niles USA, Inc. and Niles USA. The plaintiffs sought to recover $9,870,916.64 in alleged transfers ("Original Transfers").

### C.    Dismissal of the Original Complaint

On May 14, 2010, Niles USA, Inc. filed a motion to dismiss the Original Complaint.  On September 7, 2010, this Court signed its order Granting In Part First Wave Motions to Dismiss ("Dismissal Order"). [Niles Doc. No. 27].  Pursuant to the Dismissal Order, the Court permitted

the Reorganized Debtors to file a motion to seek leave to file an amended complaint, and expressly ordered that the proposed amended complaint shall "set forth, *at a minimum*, the transfers, the transferee, any known subsequent transferee against whom relief is sought, the antecedent debt and which Reorganized Debtors is the Plaintiff." *Id.* (emphasis supplied).

### D.   DAS's Motion for Leave to Amend

On September 7, 2010, the Reorganized Debtors filed their Motion for Leave to File Amended Complaints ("Motion to Amend"), which attached the proposed First Amended Complaint ("Proposed Amended Complaint"). [Niles Doc. No. 25]. The Proposed Amended Complaint sought to recover $19,742,280.88 in alleged transfers ("Amended Transfers") from Niles USA, Inc. This was approximately double the amount the Debtors sought to recover in the Original Complaint.

## III.   ARGUMENT

### A.   Standard For Granting Leave to Amend

Leave to amend under Rule 15 of the Federal Rules of Civil Procedure is not granted automatically; instead "it is within the sound discretion of the court whether to grant leave to amend." *John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp.*, 22 F.3d 458, 462 (2d Cir. 1994). "[C]onsiderations of undue delay, bad faith, and prejudice to the opposing party [are] all touchstones of a district court's discretionary authority to deny leave to amend." *Barrows v. Forest Laboratories, Inc.*, 742 F.2d 54, 58 (2d Cir. 1984).

Likewise, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). For example, "it is proper to deny leave to replead where there is no merit in the proposed amendments or amendment would be futile." *Hunt v.*

*Alliance N. Am. Gov't Income Trust, Inc.*, 159 F.3d 723, 728 (2d Cir. 1998).  Courts thus are justified in denying leave to amend where, as here, proposed amendments cannot withstand a motion to dismiss or fail to comply with a court's order regarding required allegations.  *Ruffolo*, 987 F.2d at 131 (affirming denial of leave to amend where proposed amendment failed to allege necessary facts); *McLaughlin v. Anderson*, 962 F.2d 187, 195 (2d Cir. 1992) (affirming denial of leave to amend where proposed amendment failed to comply with court's order).

As explained below, the Debtors' motion for leave to amend "is unlikely to be productive" as to Niles USA, Inc. and should be denied.

### B.    DAS' Proposed Amended Complaint is Futile

#### 1.    *DAS Cannot State a Preference Claim Against Niles USA, Inc.*

The Proposed Amended Complaint is futile because DAS cannot state a preference claim against Niles USA, Inc. Niles USA, Inc. did not supply any Delphi entity, including DAS. Hohauser Declaration ¶ 20.  Neither Delphi nor DAS owed any debt to Niles USA, Inc.  *Id.*  DAS's alleged transfers were thus not on account of an antecedent debt – or any debt – owed to Niles USA, Inc.

Furthermore, Niles USA, Inc. never received any of Original Transfers or the Amended Transfers.  Hohauser Declaration ¶ 16, 18.  Rather, ***nonparty*** Niles Wintech was the recipient of the Original Transfers.  As set forth in the March 31 Agreement, the Debtors irrevocably waived any and all claims under chapter 5 of the Bankruptcy Code (including those set forth in the Original Complaint and the Proposed Amended Complaint) against Niles Wintech.  As a result, this adversary proceeding must be dismissed with prejudice because the Proposed Amended Complaint is futile.

**2.    *DAS Fails to Identify Any Debt Owed to Niles USA, Inc.***

DAS's Proposed Amended Complaint fails to comply with the minimum requirements set forth in this Court's Dismissal Order.  Specifically, DAS's Proposed Amended Complaint once again fails adequately to plead facts regarding the antecedent debt for each transfer alleged by DAS.  DAS's only allegations regarding the existence of an antecedent debt are bare-bones and are presented in Paragraph 22 of the Proposed Amended Complaint, where DAS alleges:

> Plaintiff made, or caused to be made, each Transfer listed on Exhibit 1 for, or on account of, an antecedent debt owed to Defendants as of the date on which each Transfer was made.  The documents evidencing the antecedent debt include the purchase orders and/or invoices/bills of lading identified on Exhibit 1, which purchase orders and/or invoices/bills of lading include evidence of the amount of the antecedent debt and the approximate dates the subject goods contemplated by the Agreements were ordered by Plaintiff pursuant to the Agreements and/or were provided by Defendants.

This allegation is not, however, supported in the Proposed Amended Complaint or in Exhibit 1.  Exhibit 1 shows transfers allegedly made to Niles USA, Inc. and lists the amounts and dates of those transfers.  However, no information is supplied which shows what debt was paid by the alleged transfers or when the payment obligation arose.  Contrary to the assertion contained on Exhibit 1, the column entitled "Purchase Order/Invoice Number/Antecedent Debt" does not reference any invoices from Niles USA, Inc. or Niles Wintech to any of the Debtors. Hohauser Dec. ¶ 19.  Some of the letters/numbers referenced in the column entitled "Purchase Order/Invoice Number/Antecedent Debt" are purchase orders from the Debtors to Niles Wintech, but simply referencing a purchase order does not provide sufficient information to identify an antecedent debt because it does not identify when the goods were provided or when the payment obligation arose.

Furthermore, even if DAS's conclusory allegations contained sufficient facts of the existence of an antecedent debt, there are no allegations of any kind as to when the debts were

incurred in relation to the transfers listed on Exhibit 1.  In light of DAS's failure to make any factual allegations concerning when the debts were incurred, the Proposed Amended Complaint is futile.

### C.    The Amended Transfers Do Not Relate Back

Generally, leave to amend is freely granted and is mandatory if the amended complaint alleges the same conduct, transactions and occurrences alleged in the original pleading. However, the Proposed Amended Complaint can be distinguished from the general rule because it does not simply state an increased amount but rather, appears to allege entirely different transactions than those alleged in the Original Complaint.  In other words, Delphi is not more precisely identifying the transactions alleged in the Original Complaint but is instead, identifying completely different transactions or transfers.

In deciding issues of relation back, a court should not "undermine the purpose of repose for which statutes of limitations were designed."  *Mackensworth v. S.S. Am. Merchant*, 28 F.3d 246, 252 (2d Cir. 1994) (affirming denial of leave to amend).  Thus, "[i]f the facts in the original pleading do not provide defendant with notice of facts out of which the time-barred claim arises then relation back is inappropriate."  *106 Mile Transp. Associates v. Koch*, 656 F. Supp. 1474, 1487 (S.D.N.Y. 1987).

It is well-settled that the mere fact that DAS's Proposed Amended Complaint and the Original Complaint both alleged preferential transfers is not determination of whether the new transfers identified in the Proposed Amended Complaint related back.  Rather, "[i]n the context of preference actions, each potential preferential transfer is a separate and distinct transaction: a preference action based on one transfer does not put defendant on notice of claims with respect to any other unidentified transfers.  *In re 360Networks (USA) Inc.*, 367 B.R. 428, 432-34 (Bankr. S.D.N.Y. 2007

Another case which explains why the Proposed Amended Complaint should not be allowed is *Austin Driveway Services, Inc. v. Coan (In re Austin Driveway Services, Inc.)*, 179 B.R. 390 (Bankr. D. Conn.1995). In that case, the trustee filed an original complaint simply alleging that the defendant received preferential transfers in the aggregate amount of $79,237.03 but did not identify specific transfers. Defendant filed a motion for a more definitive statement requesting that plaintiff allege the specific amount, date and method of payment of each alleged transfer. The motion was granted and subsequently, the trustee filed amended complaints (first amended and second amended) alleging six separate transactions in the aggregate amount of $79,237.03. In response to the trustee's discovery requests, defendant identified a seventh transfer that had not been alleged in the original nor the amended complaints (apparently, this additional transfer was made to defendant by a non-debtor party on behalf of the debtor). The trustee moved to amend the complaint for a third time to allege this additional transfer. The court denied the trustee leave to amend to include this additional transfer.

> Generally, an amended complaint will relate back if it "merely adds a new legal ground for relief, changes the date and location of the transaction alleged, … spells out the details of the transaction originally alleged, … [or] merely increases the *ad damnum* clause …"  *Pereira v. Hong Kong & Shanghai Banking Corp. (In re Kam Kuo Seaford Corp.)*, 67 B.R. 304, 306 (Bankr.S.D.N.Y.1986).

The Court held that in the preference context, each alleged preference should be considered a distinct transaction which does not relate back to any other transaction in the absence of an underlying unifying scheme or course of conduct. *In re Austin Driveway Services, Inc.* 179 B.R. at 395.

In paragraph 3 of the Original Complaint, the plaintiffs stated that the adversary proceeding was brought to "direct the return of certain avoidable transfers (the "Transfers") that

were made by Plaintiff to Defendant, as more fully and particularly identified in Exhibit '1'

annexed hereto." Original Complaint ¶ 3.   The Original Complaint did not put Niles USA, Inc.

on notice that Delphi intended to challenge additional transfers.  *See 360 Networks*, 367 B.R. at

431, 433-34 (allegation that plaintiff made "at least $17,300,644.54" in transfers did not give

notice that plaintiff intended to challenge additional transfers); *MBC Greenhouse Co. v. CTC*

*Direct, Inc.*, 307 B.R. 787, 793-94 (Bankr. D. Del. 2004)(where complaint sought to avoid

transfers in the amount of $2,880,141,32 as summarized in an exhibit to the complaint, plaintiff

could not amend complaint after statute of limitations had passed to add 33 additional transfers

because complaint only evidence plaintiff's intent to avoid the transfers listed on the exhibit.)

DAS is attempting to use the 27 new transfers it identified on the Proposed Amended

Complaint to more than double its claim.  There is no basis for DAS to assert that the 27 new

transfers relate back to claims in its Original Complaint, rendering amendment futile.


**D.     No Further Amendment Should be Permitted**

This Court made clear on the record during the hearing on the "First Wave Motions" that

it would not tolerate Delphi presenting a proposed amended complaint that failed to meet its

minimal pleading requirements.  In response to a request by a preference defendant that Delphi

should be held to a higher standard of pleading specificity given Delphi's five years to prepare

for this adversary proceeding, this Court stated:

> [I]t's a motion for leave to amend the complaint on unusual circumstances.
> ***It's really their risk if I turn them down again, right***?  [I] think that the risk
> of being turned down on the basis [that] the complaint still isn't good enough
> [after amendment] is a serious enough – ***the consequences of that are serious***
> ***enough*** so I assume that the plaintiffs are going to be pretty careful.

7/22/10 Tr., at p. 213.

Despite this Court's admonition and despite having an unprecedented amount of time to acquire the data necessary to make out its *prima facie* case, the Proposed Amended Complaint still fails even to meet the minimum pleading requirements identified in the Dismissal Order. Delphi has abused this process for too long and cost Niles USA, Inc. and this Court far too much in both time and resources. No further amendment is warranted, and Delphi's avoidance action against Niles USA, Inc. should now be dismissed with prejudice.

### E.    Incorporation of Other Defendants' Briefs

Niles USA, Inc. incorporates all of the other meritorious arguments raised by the other preference defendants in opposition to Delphi's motion for leave to amend with regard to them.

## IV.    <u>CONCLUSION</u>

For all of the reasons stated in this Response, the Debtors' Motion should be DENIED.

Respectfully Submitted,

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

By /s/ Timothy A. Fusco
Timothy A. Fusco (P13768)
Marc N. Swanson (P71149)
Attorneys for Defendant, Niles USA, Inc.
150 West Jefferson Avenue, Suite 2500
Detroit, MI 48226
Telephone: (313) 963-6420
Fax: (313) 496-8450
Email: fusco@millercanfield.com

Dated: November 24, 2010

# Exhibit A

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.
Attorneys for Defendant
150 West Jefferson Avenue, Suite 2500
Detroit, MI 48226
Telephone: (313) 963-6420
Fax: (313) 496-8450
Email: fusco@millercanfield.com
        swansonm@millercanfield.com
Timothy A. Fusco
Marc N. Swanson

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---

In re

DPH HOLDINGS CORP., *et al.*,

        Debtors.

---

DELPHI CORPORATION, *et al.*,

        Plaintiffs,

vs.

NILES USA, INC..,

        Defendant.

---

Chapter 11

Jointly Administered
Case No. 05-44481-RDD

Adversary Proceeding No.
07-02414-RDD

---

## DECLARATION OF JAY HOHAUSER IN SUPPORT OF NILES USA, INC.'S RESPONSE IN OPPOSITION TO REORGANIZED DEBTORS' MOTION FOR LEAVE TO FILE AMENDED COMPLAINTS

1.      If called as a witness, I am competent to testify to the facts contained in this Declaration and these facts are true.

2.      This Declaration is submitted in support of Niles USA, Inc.'s *Response in Opposition to Reorganized Debtors' Motion for Leave to File Amended Complaints* ("Response").

18,589,597.1\129141-00001

3.    Niles America Michigan, Inc. ("NMI") is a Michigan corporation, incorporated on September 28, 1993.

4.    NMI has adopted the assumed name and does business as Niles USA, Inc.

5.    Niles USA, Inc. was first registered with the State of Michigan on September 29, 2005 and was renewed on October 6, 2010.

6.    Niles America Wintech, Inc. ("Niles Wintech") is a Kentucky corporation, incorporated on October 31, 1994.

7.    Niles Wintech adopted the assumed name of Wintech, Inc. on September 5, 2005, according to Kentucky corporation records.

8.    I was hired by NMI on April 1, 2004.

9.    When I was initially hired by NMI, my job title was Business Manager, Transplant Unit.  I was responsible for NMI's business accounts with Honda, Subaru, and Mitsubishi.

10.    Scot McColl, who held the title "Business Manager, GM," left NMI in 2006.

11.    In September of 2006, I was given the additional responsibility of Business Manager, GM.  This responsibility was concurrent with my responsibilities under my title as Business Manager, Transplant Unit.

12.    In November of 2007, I was promoted to Deputy General Manager, Sales, responsible for the same business accounts I had previously managed, namely GM, Honda, Subaru, and Mitsubishi.

13.    In October of 2009, I was promoted to General Manager, Sales.  As a result of this promotion, I was responsible for the same accounts that I managed as Deputy General

Manager, Sales, plus I was given responsibility for NMI's account with Nissan. Nissan is NMI's largest customer.

14.    In July of this year, I was promoted again to General Manager, Sales & Administration, responsible for all of NMI's customers as well as for Administrative functions, such as payroll and insurance, among others.

15.    I have reviewed the Debtors' *First Amended Complaint to Avoid and Recover Transfers Pursuant to 11 U.S.C. §§ 547 and 550* ("Proposed Amended Complaint") and Exhibit 1 attached to it, as well as the Debtor's *Complaint to Avoid and Recover Transfers Pursuant to 11 U.S.C. §§ 547 and 550* ("Original Complaint") and Exhibit 1 attached to it.

16.    After reviewing Original Complaint Exhibit 1, I determined that NMI, also known as Niles USA, Inc., did not receive any of the transfers identified there.

17.    After reviewing Original Complaint Exhibit 1, I determined that all of the transfers identified there were received by Niles Wintech.

18.    After reviewing Proposed Amended Complaint Exhibit 1, I determined that NMI, also known as Niles USA, Inc., did not receive any of the transfers identified there.

19.    After reviewing Proposed Amended Complaint Exhibit 1, I determined that none of the number and letter sequences listed in the "Purchase Order/Invoice Number/Antecedent Debt" column are Niles Wintech or Niles USA, Inc. invoice numbers.

20.    Niles USA, Inc. provides sales and administrative support to Niles Wintech and has no manufacturing assets or capabilities. All of the products sold to the above captioned Debtors were manufactured and sold by Niles Wintech and all payments received from the Debtors were to Niles Wintech.

**I DECLARE UNDER PENALTY OF PERJURY, THAT THE FOREGOING IS TRUE
AND CORRECT.  EXECUTED ON NOVEMBER 24, 2010.**

_____  11/24/10

Jay Hohauser

# Exhibit B

March 31, 2006

TO:    Niles America Wintech, Inc

Dear Valued Supplier:

   As you are no doubt aware, on October 8, 2005 (the "<u>Petition Date</u>"), Delphi
Corporation ("<u>Delphi</u>"), together with certain of its U.S. affiliates (collectively, the "<u>Debtors</u>"),
filed voluntary petitions under chapter 11 of the United States Bankruptcy Code (11 U.S.C. §§
101-1330, as amended) in the United States Bankruptcy Court for the Southern District of New
York (the "<u>Bankruptcy Cases</u>" and the "<u>Bankruptcy Court</u>," respectively). On November 18,
2005, we requested the Bankruptcy Court's authority to assume certain of our agreements with
suppliers in recognition of the importance of continuity in our business operations and our desire
that the Bankruptcy Cases have as little effect on our operations as possible. On December 12,
2005, the Bankruptcy Court entered an order (the "<u>Order</u>") authorizing us, under certain
conditions, to assume certain agreements with suppliers that agree to the terms set forth below
and to be bound by the terms of the Order. A copy of the Order is enclosed

   To have the agreement between you and the Debtors that is listed on <u>Schedule A</u>
hereto (the "<u>Agreement</u>") assumed pursuant to section 365 of the Bankruptcy Code and to
receive payment on pre-bankruptcy claims, you must agree to each of the following terms and
conditions:

   (a)  You will extend the term of the Agreement and continue supplying
the Debtors with the goods provided under the Agreement through and including at least January
10, 2008, unless the Debtors earlier reject or otherwise terminate the Agreement (the
"<u>Extension</u>").

   (b)  You acknowledge and agree that the Agreement, and all of the
terms thereof including the Delphi's General Terms and Conditions (a copy of which is enclosed
herewith), including, without limitation, the termination for convenience provisions contained in
Section 11 thereof, are enforceable by the Debtors against you.

   (c)  You will supply goods to the Debtors at the prices set forth in the
Agreement on net-immediate (with a unit price discount of 0.75%) payment terms and those
other terms and conditions as are acceptable to the Debtors and you and are consistent with the
terms and conditions contained in the Agreement (collectively, the "<u>Customary Trade Terms</u>").

   (d)  You are adequately assured of future performance for the term of
the Extension and waive any right to seek further adequate assurance of future performance,
whether pursuant to section 365(b)(1)(C) of the Bankruptcy Code or otherwise.

   (e)  You agree that the Debtors will pay you 75% of the outstanding
prepetition liabilities of the Debtors under the Agreement as of the effective date of assumption

as listed on Schedule A hereto (the "Trade Claim")  The Debtors will pay the amount of the Trade Claim to you in six equal installments with the first installment paid March 31, 2006 and the remaining five installments paid on the last day of each of the next five calendar quarters (i.e., March 31; June 30; September 30; and December 31) beginning with the first calendar quarter following the calendar quarter in which the effective date of assumption occurs  Payment of such amount at the times provided in the preceding sentence will constitute cure of all defaults under the Agreement and compensation of all actual pecuniary losses to you resulting from any such defaults, and you waive any further rights that you may have under section 365(b) of the Bankruptcy Code; provided, however, that the Trade Claim shall not constitute an administrative expense pursuant to section 503 of the Bankruptcy Code and you waive any right to assert a claim under section 503 on account of the Trade Claim

(f)    In the event of any termination or subsequent rejection of the Agreement, you will not receive any payments of Cure that are to be paid on or after the effective date of such termination (the "Remaining Cure"); provided, however, that, upon any termination of the Agreement, you will receive an allowed general unsecured claim against the relevant Debtor for the amount of the Remaining Cure, which general unsecured claim shall be addressed pursuant to the terms of the plan of reorganization which is confirmed and consummated in the Debtors' chapter 11 cases.

(g)    Upon any termination or any subsequent rejection of the Agreement, you agree that the amount of damages which you may assert against the relevant Debtor on account of such termination shall not exceed the amount of damages arising upon a termination for convenience in accordance with the terms of Section 11 of Delphi's General Terms and Conditions.

(h)    You will receive an allowed general unsecured claim against the appropriate Debtor for the remaining balance of the amount of the outstanding prepetition liabilities of the Debtors under the Agreement as of the effective date of assumption as listed on Schedule A hereto, which general unsecured claim shall be addressed pursuant to the terms of the plan of reorganization which is confirmed and consummated in the Debtors' chapter 11 cases.

(i)    In consideration for the payment described herein, you agree not to file or otherwise assert against any or all of the Debtors, their estates, or any other person or entity or any of their respective assets or property (real or personal) any lien (regardless of the statute or other legal authority upon which such lien is asserted) related in any way to any remaining prepetition amounts allegedly owed to you by the Debtors arising from agreements entered into prior to the Petition Date, including, without limitation, the Agreement. Furthermore, if you have taken steps to file or assert such a lien prior to entering into this letter agreement, you agree to take all necessary steps to remove such lien as soon as possible.

(j)    You represent and warrant to the Debtors that you have not sold, conveyed or otherwise transferred your Trade Claim to any other party.  You further represent and warrant that you do not have insurance under which you could seek payment of your Trade Claim or any portion thereof.

2

Assumption of the Agreement and payment of your Trade Claim in the manner set forth in the Order may occur only upon execution of this letter by a duly authorized representative of your company and the return of this letter to the Debtors. Your execution of this letter agreement and return of the same to the Debtors constitutes an agreement by you and the Debtors:

(a)    to the Customary Trade Terms and to the amount of the Trade Claim;

(b)    that, for the term of the Extension, you will continue to supply the Debtors with goods pursuant to the Customary Trade Terms, and that the Debtors will pay for such goods in accordance with Customary Trade Terms;

(c)    that you have reviewed the terms and provisions of the Order and that you consent to be bound by such terms;

(d)    that you will not separately seek payment for reclamation and similar claims outside the terms of the Order;

(e)    that if you breach your obligations under this letter agreement, you shall be liable to the Debtors for any and all consequential damages resulting from such breach;

(f)    that, upon written notice of a breach described in paragraph (e) above from the Debtors, you will not be entitled to further installment payments of Cure until further order of the Bankruptcy Court;

(g)    that, in the event that the Bankruptcy Court determines that you are in breach of this letter agreement, you will immediately disgorge all payments received on account of your Trade Claim and the Debtors' avoidance rights under chapter 5 of the Bankruptcy Code and any related rights under section 502(d) of the Bankruptcy Code, to the extent waived by the terms hereof, shall immediately be reinstated without further order of the Bankruptcy Court; and

(h)    that you irrevocably consent to the Debtors' ability to sue you for injunctive relief in this Court upon a breach under the Agreement or this letter agreement.

The Debtors and you also hereby agree that any dispute with respect to this agreement, the Order, and/or any breach under the Agreement shall be determined by the Bankruptcy Court.

The Debtors hereby agree that, upon execution of this letter agreement by you, the Debtors will waive and release their rights, and the rights of their respective estates, under chapter 5 of the Bankruptcy Code, to the fullest extent that such waiver would have otherwise occurred by operation of law upon assumption of the Agreement, to avoid payments made to you with respect to the Agreement, subject to potential reinstatement upon your breach of the terms of this letter agreement as provided above.

3

   You hereby agree that you will keep the terms of this letter agreement together with all related settlement discussions strictly confidential. You may disclose the terms of this letter agreement only to your management personnel that need to know such information to implement the terms of this letter agreement and legal counsel and other advisors with whom you have a recognized legal privilege; <u>provided</u> that all such parties have been informed of the confidentiality restrictions contained herein. You further agree that you will be responsible and liable for any breach of the confidentiality provisions set forth in this letter agreement by your management personnel, legal counsel and other advisors. You acknowledge that failure to honor the confidentiality provisions contained herein would cause significant economic harm to the Debtors. Any discussions by you with any third parties, including the press or media or consultants, regarding this letter agreement and its terms are expressly prohibited.

   The Debtors expressly reserve all of their rights at law and in equity, including, without limitation, all of their rights as debtors-in-possession under the United States Bankruptcy Code. Without limiting the generality of the foregoing sentence, this agreement, and any payment made hereunder, does not constitute a waiver of the Debtors' rights (i) to dispute any claim, or (ii) to take, or refrain from taking, any other action under any applicable section of the United States Bankruptcy Code or any other applicable law.

   If you have any questions about this Agreement or our financial restructuring, please do not hesitate to call (866) 688-8679.

       Sincerely,

       DELPHI AUTOMOTIVE SYSTEMS LLC

       By: JAY LONDHE
        Its: ELECTRICAL COMMODITY MANAGER

Agreed and Accepted by:

NILES AMERICA WINTECH, INC.

By:
  Its: President & CEO

Dated: March 31, 2006

4

**Schedule A**

| Agreement | Total Prepetition Obligations Outstanding as of the Effective Date of Assumption |
|---|---|
| Delphi Purchase Order SAGNOI3244 | $3,827,215.04 |

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.
Attorneys for Defendant
150 West Jefferson Avenue, Suite 2500
Detroit, MI 48226
Telephone: (313) 963-6420
Fax: (313) 496-8450
Email: fusco@millercanfield.com
      swansonm@millercanfield.com
Timothy A. Fusco
Marc N. Swanson

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————————

| | |
|---|---|
| In re | Chapter 11 |
| DPH HOLDINGS CORP., *et al.*, | Jointly Administered<br>Case No. 05-44481-RDD |
|      Debtors. | |

————————————————————

| | |
|---|---|
| DELPHI CORPORATION, *et al.*, | |
|      Plaintiffs, | Adversary Proceeding No.<br>07-02414-RDD |
| VS. | |
| NILES USA, INC., | |
|      Defendant. | |

————————————————————

### <u>CERTIFICATE OF SERVICE</u>

Timothy A. Fusco hereby certifies that, on November 24, 2010, he served a copy of the foregoing ***Niles USA, Inc.'s Response In Opposition To Reorganized Debtors' Motion For Leave To File Amended Complaints*** upon counsel for the Plaintiff and reorganized debtors by e-mail directed to the email address set forth below and that he provided a courtesy copy of the same to the Chambers of the Honorable Robert D. Drain, United States Bankruptcy Judge via email and First Class Mail addressed to chambers:

     Daniel F. X. Geoghan, Esq.
     Togut Segal & Segal LLP
     One Penn Plaza
     Suite 3335

New York, NY 10119
**Via Email: dgeoghan@teamtogut.com**

Eric B. Fisher, Esq.
Butzel Long
380 Madison Avenue, 22nd Floor
New York, NY 10017
**Via Email: fishere@butzel.com**

The Honorable Robert D. Drain
United States Bankruptcy Court
300 Quarropas Street
White Plains, NY 10601-4140
**Via Email: rdd.chambers@nysb.uscourts.gov**

/s/ Timothy A. Fusco
    Timothy A. Fusco (P13768)
Miller, Canfield, Paddock and Stone, P.L.C.
150 West Jefferson Avenue, Suite 2500
Detroit, MI 48226
Telephone: (313) 963-6420
Fax: (313) 496-8450
Email: fusco@millercanfield.com

Dated: November 24, 2010

18,592,283.1\129141-00001