**Hearing Date: February 17, 2011 at 10:00 a.m.**

**Objection/Response Deadline: January 28, 2011**

BOSE MCKINNEY & EVANS LLP
David J. Jurkiewicz
Attorney No. 18018-53
111 Monument Circle, Suite 2700
Indianapolis, Indiana  46204
(317) 684-5000 / (317) 684-5173 (FAX)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| DELPHI CORPORATION, et al., | ) | Case No. 05-44481 (RDD) |
| | ) | (Jointly Administered) |
| Debtors. | ) | Chapter 11 |
| ⸻⸻⸻⸻ | ) | |
| | ) | |
| DELPHI CORPORATION, et al., | ) | Adversary Case No.: 07-02098 (RDD) |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DECATUR PLASTIC PRODUCTS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**RESPONSE OF DECATUR PLASTIC PRODUCTS, INC.
TO REORGANIZED DEBTORS' MOTION FOR LEAVE TO FILE
AMENDED COMPLAINTS AND THE PROPOSED FIRST AMENDED
COMPLAINT FILED IN ADVERSARY CASE NO. 07-02098**

1781104/12212-4

## TABLE OF CONTENTS

INTRODUCTION...............................................................................................................1

STATEMENT OF PROCEEDINGS...............................................................................1

ARGUMENT ........................................................................................................................4

I.      THE STANDARD FOR GRANTING LEAVE TO AMEND.............................4

II.     DAS'S PROPOSED AMENDED COMPLAINT IS FUTILE ........................5

        A.      DAS Assumed The Decatur Contract ...............................................5

        B.      Setoff.............................................................................................................6

        C.      DAS's Proposed Amended Complaint Fails To Comply With The
                Dismissal Order By Not Setting Forth The Antecedent Debt............7

                1.      DAS Fails Even To Attempt To Identify Any Debt Owed To
                        Decatur...........................................................................................9

                2.      DAS Fails To Plead An "Antecedent" Debt .............................9

        D.      The Proposed Amended Complaint Is Futile, Because The Extension
                Orders Were Improvidently Entered And Should Be Vacated,
                Leaving DAS's Claims Barred By The Statute of Limitations........10

                1.      Decatur Received No *Particularized Notice* That Decatur Was
                        A Preference Defendant ...........................................................10

                        a.      Even if Decatur Was On Inquiry Notice, It Was
                                Reasonable For It To Do Nothing – Just Like The Other
                                11,000 Potential Preference Defendants .....................10

                        b.      Delphi Misled Decatur To Believe That No Preference
                                Action Had Been Filed, Or Would Be Pursued, Against
                                It........................................................................................11

        E.      Decatur Was Not Required To Do Anything Even If It Was On Actual
                Notice...........................................................................................................12

        F.      The Proposed Amended Complaint Is Futile Because DAS Did Not
                Properly Plead And Cannot Prove It Was Insolvent At The Time Of
                The Disputed Transfers..........................................................................12

III.    THE PROPOSED AMENDED COMPLAINT WOULD SUBSTANTIALLY
        PREJUDICE DECATUR ........................................................................................14

        A.    Prejudice Is Presumed As A Matter Of Law........................................................14

        B.    Decatur Would Suffer Actual Prejudice From Amendment ...........................16

        C.    Delphi's Undue Delay Should Bar Amendment................................................17

IV.     NO FURTHER AMENDMENT SHOULD BE PERMITTED ...................................18

V.      INCORPORATION OF OTHER DEFENDANTS' BRIEFS.....................................19

CONCLUSION .........................................................................................................................19

## INTRODUCTION

In this Response, Decatur Plastic Products, Inc. ("Decatur") highlights certain reasons that the Motion for Leave to File Amended Complaints and the proposed First Amended Complaint filed in Adversary Case No. 07-02098 ("Motion for Leave") are not appropriate under law or based upon the facts in this case.  Under the circumstances, the Court should end these proceedings now and not permit the relief sought in the Motion for Leave[1].

## STATEMENT OF PROCEEDINGS

On October 8, 2005, Delphi and certain of its subsidiaries (the "Initial Filers" each filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").  On October 14, 2005, three additional U.S. subsidiaries of Delphi (together with the Initial Filers, the "Debtors") filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

Prior to the commencement of the Debtors' cases, Decatur provided goods and services to Delphi.

By motion dated August 6, 2007 (the "Preservation of Estate Claims Procedures Motion"), the Debtors sought entry of an order seeking, among other things, the establishment of procedures for certain adversary proceedings, including those commenced by the Debtors under Bankruptcy Code §§ 541, 544, 545, 547, 548 or 553.

By motion dated February 28, 2008 (the "Extension of Avoidance Action Service Deadline Motion"), the Debtors sought to modify Paragraph 8 of the Preservation of Estate Claims Procedures Order, so as to extend for a second time the deadline under Fed. R. Civ. P.

---

[1] Because the issues in this Response are similar to the issues addressed by many similarly situated preference defendants, Decatur joins in and adopts the Brief in Opposition to Reorganized Debtor's Motion for Leave to File Amended Complaints filed by Affinia Group Holdings, Inc. and Brake Parts, Inc. in Adversary Proceeding No. 07-02198, portions of which are set forth in this Response.  This Response also sets forth specific matters relevant to the Decatur adversary.

4(m) by which the Debtors would be required to serve process by an additional two months to May 31, 2008.

By motion dated April 10, 2008 (the "Postconfirmation Extension of Avoidance Action Service Deadline Motion"), the Debtors sought to further modify Paragraph 8 of the Preservation of Estate Claims Procedures Order, as modified by the Extension of Avoidance Action Service Deadline Order, so as to extend for a third time the deadline under Fed. R. Civ. P. 4(m) by which the Debtors would have to serve process until 30 days after substantial consummation of the Plan or any modified plan.

By motion dated October 2, 2009 (the "Supplemental Postconfirmation Extension of Avoidance Action Service Deadline Motion"), the Debtors sought to further modify Paragraph 8 of the Preservation of Estate Claims Procedures Order, as modified by the Extension of Avoidance Action Service Deadline Order and the Postconfirmation Extension of Avoidance Action Service Deadline Order, so as to extend for a fourth time the deadline under Fed. R. Civ. P. 4(m) by which the Debtors were required to serve process until 180 days after substantial consummation of the Modified Plan.

Decatur received ECF notice of the Preservation of Estate Claims Procedures Motion, the Extension of Avoidance Action Service Deadline Motion, the Postconfirmation Extension of Avoidance Action Service Deadline Motion, and the Supplemental Postconfirmation Extension of Avoidance Action Service Deadline Motion (collectively the "Extension Orders"), but did not receive particularized notice and was not afforded due process and a meaningful opportunity to object to any of these motions.

While Plaintiffs commenced the Adversary Proceeding against Decatur on September 28, 2007, by filing the Complaint under seal with the Clerk — which Complaint seeks to recover,

pursuant to Bankruptcy Code §§ 547 and 550, alleged preferential transfers made to Decatur in excess of $1,127,684.35.00 — Decatur was not served with the Complaint until on or about February 24, 2010, well over two years after the limitations period provided by Bankruptcy Code § 546(a) expired.

On April 28, 2010, Decatur filed its Motion to Join in Pending Motions to Dismiss Adversary Proceedings. On June 7, 2010, the Plaintiff filed its Response to Motions to Vacate Certain Orders and Dismiss Adversary Actions. On July 2, 2010, Decatur filed its Joinder to Various Replies of Similarly Situated Defendants to: (A) Vacate Certain Prior Orders of the Court; (B) Dismiss the Complaint With Prejudice; or (C) in the Alternative, to Dismiss the Claims Against Certain Defendants Named in the Complaint and to Require Plaintiff to File a More Definite Statement.

In response to the motion to dismiss by Decatur, and the motions to dismiss filed by the other defendants in the preference actions, the Court entered its September 7, 2010 Order Granting In Part First Wave Motions to Dismiss (the "Dismissal Order"). The Dismissal Order dismissed the claims without prejudice because the debtors had failed to plead sufficient facts to state a claim. The Court then permitted the Reorganized Debtors to file a motion to seek leave to file an amended complaint, and expressly ordered that the proposed amended complaint shall "set forth, *at a minimum*, the transfers, the transferee, any known subsequent transferee against whom relief is sought, the antecedent debt and which Reorganized Debtor is the Plaintiff." *Id*. (emphasis supplied).

On September 7, 2010, the Reorganized Debtors' filed their Motion for Leave to File Amended Complaints (the "Motion to Amend"), which attached the proposed First Amended

Complaint to Avoid and Recover Transfers Pursuant to 11 U.S.C. §§ 547 and 550 (the "Proposed Amended Complaint").

The Proposed Amended Complaint names only one Plaintiff, Delphi Automotive Systems, LLC ("DAS") and only one Defendant, Decatur.

## ARGUMENT

### I.    THE STANDARD FOR GRANTING LEAVE TO AMEND

Leave to amend under Rule 15 of the Federal Rules of Civil Procedure is not granted automatically; instead "it is within the sound discretion of the court whether to grant leave to amend." *John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp.*, 22 F.3d 458, 462 (2d Cir. 1994). "[C]onsiderations of undue delay, bad faith, and prejudice to the opposing party [are] all touchstones of a district court's discretionary authority to deny leave to amend." *Barrows v. Forest Laboratories, Inc.*, 742 F.2d 54, 58 (2d Cir. 1984).

Likewise, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). For example, "it is proper to deny leave to replead where there is no merit in the proposed amendments or amendment would be futile." *Hunt v. Alliance N. Am. Gov't Income Trust, Inc.*, 159 F.3d 723, 728 (2d Cir. 1998). Courts thus are justified in denying leave to amend where, as here, proposed amendments cannot withstand a motion to dismiss or fail to comply with a court's order regarding required allegations. *Ruffolo*, 987 F.2d at 131 (affirming denial of leave to amend where proposed amendment failed to allege necessary facts); *McLaughlin v. Anderson*, 962 F.2d 187, 195 (2d Cir. 1992) (affirming denial of leave to amend where proposed amendment failed to comply with court's order).

As explained below, Delphi's motion for leave to amend "is unlikely to be productive" as to Decatur and should be denied.

## II.    DAS'S PROPOSED AMENDED COMPLAINT IS FUTILE

### A.    <u>DAS Assumed The Decatur Contract</u>

Prior to filing of the bankruptcy Petition, on February 9, 2004, the Debtor and Decatur entered into the Delphi Corporation Long Term Contract ("Contract"), attached hereto as **Exhibit A**. This Contract requires Decatur to provide 100% of production and service requirements for the Mercedes W164 and Mercedes W251 programs. There are no other contracts or parts relationships between the Debtor and Delphi. Section 5 of the Contract states, "all Products will be ordered by Buyer, and delivered by Seller, in accordance with written purchase orders (including related delivery releases and shipping instructions) issued by Buyer from time to time during this Contract".

On or about November 30, 2007, the Debtor filed its Notice of Assumption and/or Assignment of Executory Contract or Unexpired Lease to Purchasers in Connection with Sale of Interiors and Closures Businesses (Docket 11165), wherein <u>Exhibit 1</u> thereto provides for assumption of the Contract and related purchase orders.

On December 19, 2007, the Debtor filed its Omnibus Reply to Objections to (A) Notices of Assumption and/or Assignment and (B) Cure Notices in Connection with Interiors and Closures Businesses Sale (Docket 11545). Section 12 of the Debtor's Omnibus Reply specifically assumes the Contract and related purchase orders. The Contract was assumed pursuant to the Order entered on December 21, 2007 (Docket 11579).

It is well-settled precedent that a preference action cannot be maintained to recover sums paid under an executory contract that is assumed by the debtor. *See, e.g.*, *In re Teligent, Inc.*,

306 B.R. 752 (Bankr. S.D.N.Y. 2004), *aff'd* 324 B.R. 479 (S.D.N.Y. 2005); *see also Kimmelman v. Port Authority of N.Y. & N.J. (In re Kiwi Int'l Air Lines, Inc.)*, 344 F.3d 311, 318 (3d Cir. 2003); *In re Superior Toy & Mfg. Co.*, 78 F.3d 1169, 1172 (7th Cir. 1996). In *Hays v. Nano-Tex, Inc. (In re Galey & Lord, Inc.)*, 2008 WL 5140055, *7 (Bankr. N.D. Ga. 2008) the court explicitly ruled that when invoices and a license agreement act as a unified contract based on their plain language, the Debtor's assumption of the license agreement necessarily bars any preference action based on the invoices. Accordingly, assumption of the Contract with Decatur in connection with the sale of its cockpits and interior systems and integrated closure systems businesses operate as a complete defense to any alleged preference liability by DAS for payments received under the Contract.

In a bankruptcy case, the court may take judicial notice of all the documents filed in the case. *In re Theatre Row Phase II Associates*, 385 B.R. 511, 520 (Bankr. S.D.N.Y. 2008) (when considering a motion to dismiss an adversary proceeding, the court took note of "the contents of the various pleadings in [the other] adversary proceedings, as well as pleadings and other documents in the [Chapter 11] case itself").

Accordingly, Decatur requests that the Court enter orders dismissing these proceedings to the extent they are based on payments made with respect to the Contract.

## B.    <u>Setoff</u>

Decatur filed a Demand to Exercise Setoff with the bankruptcy court on October 30, 2005 (Docket 799), wherein it asserted a Setoff Right in the amount of $479,736.47 against DAS. On July 31, 2006, Decatur filed Proof of Claim No. 14173, wherein it asserted a secured claim for Decatur's setoff and reclamation rights in the amount of $479,736.47 as well as an unsecured claim for $28,839.78 against DAS. On March 1, 2007, Decatur and DAS entered into

the *Settlement Agreement Between Delphi Automotive Systems, LLC and Decatur Plastic Products, Inc. to Permit Setoff of Mutual Prepetition Obligations Under Section 553 of the Bankruptcy Code* (the "Setoff Settlement Agreement"), wherein the parties agreed that the amount of Decatur's Setoff Right was actually $372,217.00.  A copy of the Setoff Settlement Agreement is attached hereto as **Exhibit B**.  In connection with the Setoff Settlement Agreement, Decatur paid $101,349.00 to DAS to satisfy the balance that remained in favor of DAS after the exercise of the Setoff and withdrew Proof of Claim No. 14173 on May 21, 2007 (Docket 7985).

Had Decatur not received payment from Delphi for the amounts represented by the preference demand, Decatur would have been entitled to assert a secured setoff claim thereon and there would not have been a net balance of $101,349.00 payable to DAS as part of the post-petition Setoff Settlement Agreement.  To permit DAS to receive proceeds under the Setoff Settlement Agreement and to assert a preference claim allows DAS to double-dip or collect twice on the $101,349.00 Setoff Settlement Agreement payment.

C.    **DAS's Proposed Amended Complaint Fails To Comply With The Dismissal Order By Not Setting Forth The Antecedent Debt**

DAS's Proposed Amended Complaint fails to comply with the minimum requirements set forth in this Court's Dismissal Order.  Specifically, DAS's Proposed Amended Complaint once again fails adequately to plead facts regarding the antecedent debt for each transfer alleged by DAS.  DAS's only allegations regarding the existence of an antecedent debt are bare-bones and are presented in Paragraph 22 of the Proposed Amended Complaint, where DAS alleges:

> Plaintiff made, or caused to be made, each Transfer listed on Exhibit 1 for, or on account of, an antecedent debt owed to Defendants as of the date on which each Transfer was made.  The documents evidencing the antecedent debt include the purchase orders and/or invoices/bills of lading identified on Exhibit 1, which purchase orders and/or invoices/bills of lading include evidence of the amount of the antecedent debt and the approximate dates the

subject goods contemplated by the Agreements were ordered by Plaintiff pursuant to the Agreements and/or were provided by Defendants.

Pursuant to Section 547(b)(2) of the Bankruptcy Code, an avoidance action requires a transfer "for or on account of an antecedent debt owed by the debtor before such transfer was made." 11 U.S.C. § 547(b)(2). The Bankruptcy Code does not define the term "antecedent debt." The Bankruptcy Appellate Panel for the Second Circuit has opined, however, that:

> The case law is clear that for purposes of Section 547(b)(2) "an antecedent debt" is a pre-existing debt that was incurred when the debtor previously obtained a property interest in the consideration provided by the creditor that gave rise to the debt. The consideration may have been a loan or ***the furnishing of goods or services***, but when the debtor ***obtained the loan, goods or services***, the creditor had a claim, matured or unmatured, that it could then assert against the debtor's bankruptcy estate if payment was not made at the time a petition was filed. At that point the debt was "antecedent" for purposes of Section 547(b)(2).

*In re Bennett Funding* Group, 220 B.R. 739, 742 (Bankr. 2d Cir. 1998) (emphasis supplied). An antecedent debt generally arises when the debtor "***obtain[s]***" the goods or services for which it contracted. *Id*.

Factual allegations regarding an "antecedent debt" necessary to satisfy an avoidance action, therefore, must address three distinct elements: (i) a debt (evidenced by a contract and performance under that contract giving rise to an obligation to pay), (ii) which was owed by the debtor, and (iii) which was antecedent to the transfer. DAS fails to plead any of these elements in anything more than a conclusory manner, which this Court, in dismissing Delphi's original complaint, has already recognized is impermissible. *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

1.     **DAS Fails Even To Attempt To Identify Any Debt Owed To Decatur**

Paragraph 22 of the Proposed Amended Complaint – DAS's sole antecedent debt allegation – fails to present any factual allegation establishing the existence of a debt with regard to the purported $1,131,551.53 in transfers to Decatur.

First, the Proposed Amended Complaint fails to identify any contract or other agreement giving rise to a debt to Decatur.  According to Paragraph 22, Exhibit 1 to the Proposed Amended Complaint identifies the "purchase orders," "invoices," and "bills of lading," underlying the debt for each of the alleged transfers, while Paragraph 13 of the Proposed Amended Complaint refers to certain tooling agreements for the supply of certain tooling to DAS.  DAS incorrectly asserts the basis for Decatur antecedent debt. Decatur did not provide any tooling to DAS.  Decatur supplied parts to DAS.

Second, DAS's Proposed Amended Complaint fails to identify any action by Decatur, such as the delivery of goods, that would give rise to the existence of a debt under a purchase order or other agreement (even if one had been alleged).  As discussed above, the case law is clear that an antecedent debt does not arise until DAS actually "obtained" the goods or services for which it contracted, and there is no such allegation here.

DAS completely fails to comply with this Court's requirement that it identify the specific antecedent debts underlying its transfers to Decatur and DAS misidentifies the parts supplier relationship with Decatur.

2.     **DAS Fails To Plead An "Antecedent" Debt**

DAS also fails to plead facts establishing that the alleged debts in question were actually "antecedent."  Exhibit 1 to the Proposed Amended Complaint does not state

when any alleged debt arose.  There is no basis, other than DAS's conclusory assertions, for DAS to claim the existence of any "antecedent" debt as required to state a claim under Section 547(b)(2) of the Bankruptcy Code.

**D.**     **The Proposed Amended Complaint Is Futile, Because The Extension Orders Were Improvidently Entered And Should Be Vacated, Leaving DAS's Claims Barred By The Statute of Limitations**

For all for the reason set forth in Decatur's prior joinder in motions to dismiss and the dismissal motions filed by the other preference defendants, which are incorporated here, the Extension Orders were entered in violation of Federal Rule of Civil Procedure 4(m) and Decatur's due process and other rights, and DAS may not unseal and serve preference complaints against Decatur years after the limitations period expires.

**1.**     **Decatur Received No *Particularized Notice* That Decatur Was A Preference Defendant**

**a.**     **Even if Decatur Was On Inquiry Notice, It Was Reasonable For It To Do Nothing – Just Like The Other 11,000 Potential Preference Defendants**

Even if Decatur was on inquiry notice that DAS might assert a preference claim against it, it was reasonable for Decatur to do nothing.  After all, none of the 11,000 potential preference defendants objected to any of the Extension Motions.  Certainly, if 11,000 other potential preference defendants did not object, then it was reasonable for Decatur not to do so as well.  This especially is true where Decatur had no obligation to monitor Delphi's bankruptcy proceeding, even if they were aware of it. *City of New York v. New York, N.H. & H. R.R. Co.*, 344 U.S. 293, 297 (1953) ("[E]ven creditors who have knowledge of a reorganization have a right to assume that the statutory 'reasonable notice' will be

given them before their claims are forever barred" and have no obligation to monitor the proceedings before they receive formal notice).

### b.  Delphi Misled Decatur To Believe That No Preference Action Had Been Filed, Or Would Be Pursued, Against It

The fact that no defendant actually objected to the Extension Motions is unsurprising given that Delphi's actions and representations specifically were intended to dissuade any such inquiry.  Indeed, Delphi repeated its "no adversary proceedings" mantra throughout much of the bankruptcy proceedings, assuring defendants that avoidance actions would be limited only to a few named parties that did not include Decatur.  *See* 2/28/08 Extension Motion (Docket 12922), ¶ 17 (Delphi would "not retain any causes of action asserted in the [adversary proceedings] except those specifically listed in Exhibit 7.24 of the Plan" (claims related to third parties)); March 19, 2008 Tr., at p. 22 (the Court stated that "[t]he plan [only] reserve[d] or retain[ed] the ability to pursue a very small number of avoidance actions.").  Based on Delphi's statements, Decatur had no reasonable basis to inquire further.  *See Staehr*, 547 F.3d at 414 (holding that a party's "seemingly benign explanation" of actions that suggested fraud made it "reasonable for Plaintiffs not to inquire" further).

Even Delphi's Disclosure Statement suggested that no inquiry was necessary.  Indeed, the Disclosure Statement gave Decatur every reason to believe that, as of March 31, 2008, the avoidance actions had been dropped.  Specifically, the Disclosure Statement stated that "[t]he Debtors have until March 31, 2008 to serve each defendant with the summons and complaint, without prejudice to the Debtors' right to seek further extensions of the deadline."  Disclosure Statement

(Docket 11388) at 196. Thus, immediately after March 31, 2008, having not been served with a summons and complaint, Decatur would have had no reason to believe that it was still the subject of a preference action.

This was particularly true here because DAS's schedules showed that it was solvent with more than $2.6 in net equity at the time of its petition. No supplier could reasonably assume it could be sued by a solvent DAS to avoid a preference.

**E.     Decatur Was Not Required To Do Anything Even If It Was On Actual Notice**

It is also undisputed that Decatur was never served with process in the sealed preference action until 2010 – years after the first Extension Order was entered in 2007. As such, Decatur had the right to ignore the entire proceeding until it was formerly served. *Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc*. 526 U.S. 344, 350 (1999).

**F.     The Proposed Amended Complaint Is Futile Because DAS Did Not Properly Plead And Cannot Prove It Was Insolvent At The Time Of The Disputed Transfers**

The DAS Proposed Amended Complaint pleads only the bare legal conclusion that it was insolvent at the time of the Transfers. The sole allegation in the Proposed Amended Complaint with respect to insolvency is at Paragraph 23 and states only that "Plaintiff is presumed to have been, and was in fact, insolvent at the time the Transfers were made." DAS's Proposed Amended Complaint offers no facts to support this conclusory statement or to make the allegation plausible.

DAS has *admitted* that it was solvent at the time of the Transfers. DAS's own schedules, previously filed with this Court and thus subject to judicial notice, state that, *as of its petition date, DAS had over $2.6 billion in net equity*, with total assets of $8,133,427,809 and total

liabilities of $5,526,447,015.  *See* Notice of Amendments of Schedules of Assets and Liability,

dated April 18, 2006 (Case No. 05-44641 Docket 10).

Consistent with these facts, as late as February 2008, more than two years into its

bankruptcy, Delphi was still proposing a 100 percent plan to its creditors.

DAS fails to plead properly in its Proposed Amended Complaint and, cannot prove, an

essential element of its avoidance claim:  that DAS – the only plaintiff named in the Proposed

Amended Complaint – made transfers to Decatur at a time when DAS was insolvent. *See* 11

U.S.C. § 547(b) (authorizing a trustee to avoid a transfer only if it was, among other things,

"made while the debtor was insolvent").

The failure to properly plead facts that show DAS's insolvency is no surprise.  This is

because DAS was solvent.  *See supra* at 12-14.  In fact, DAS's own bankruptcy schedules show

DAS was solvent, and had more than $2.6 billion in net equity, at the time of its petition.  These

DAS admissions conclusively rebut any presumption of DAS's insolvency during the preference

period.  *See, e.g.*, *In re Roblin Industries, Inc.*, 78 F.3d 30, 34-35 (2d Cir. 1996) (schedules

showing solvency rebutted presumption so that trustee bore burden of coming forward to prove

insolvency); *Akers v. Koubourlis*, 869 F.2d 1319, 1322 (9th Cir. 1989) (debtors' schedules

indicating greater assets than debts rebutted presumption); *IMF Sales Associates, Inc. v. Racal-*

*Vadic Information Systems, Inc.*, 94 B.R. 223, 225 n.3 (Bankr. D. Mass 1988) ("Racal has

rebutted the [section 547(f) presumption] by offering the schedules which show the debtor was

solvent."); *Fokkena v. Winston, Reuber, Byrne, P.C.*, 189 B.R. 744, 747 (Bankr. N.D. Iowa

1995) ("Debtor's schedules filed in his chapter 11 case are sufficient to support a finding of

solvency at the time of the transfers.  The presumption was rebutted.").

Moreover, DAS's parent, Delphi, was also solvent. During the preference period, Delphi even distributed a dividend to its shareholders.

Moreover, Delphi's performance in the marketplace, which many observers believe is the best indicator of enterprise value, also confirms solvency. *See, e.g., Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. La Salle P'ship*, 526 U.S. 434, 457 (1999) (acknowledging that "the best way to determine value is exposure to a market"); *VFB LLC v. Campbell Soup Co.*, 482 F.3d 624, 633 (3d. Cir. 2007) ("Absent some reason to distrust it, the market price is a more reliable measure of the stock's value than the subjective estimates of one or two expert witnesses."); *Iridium IP LLC v. Motorola, Inc.*, 373 B.R. 283, 293 (Bankr. S.D.N.Y. 2007) (Peck, J.) ("[T]he public trading market constitutes an impartial gauge of investor confidence and remains the best and most unbiased measure of fair market value and, when available to the Court, is the preferred standard of valuation."). For example, in the month leading up to Delphi's bankruptcy, Delphi was trading on the New York Stock Exchange at around $3-$5 per share, suggesting a market capitalization of between $1,122,813,802 and $3,312,353,816.

Given DAS's failure properly to plead insolvency and the fact that DAS was solvent (with a $2.6 billion net equity), any amendment is futile here. DAS cannot prove a crucial element of its avoidance action.

## III.    THE PROPOSED AMENDED COMPLAINT WOULD SUBSTANTIALLY PREJUDICE DECATUR

### A.    Prejudice Is Presumed As A Matter Of Law

In recognition of the natural prejudice resulting from a party's delay in prosecuting an action, including by delaying service of the complaint, the Second Circuit recognizes that "prejudice to defendants resulting from unreasonable delay may be presumed . . . [and] is

particularly appropriate where, as here, the plaintiff's delay was prolonged." *Shannon v. GE*, 186 F.3d 186 (2d Cir. 1999) (internal citations and quotations omitted).

Indeed, courts regularly recognize that "[f]ailure to use reasonable diligence in serving a summons is more fraught with possibilities of unfairness and abuse than failure to diligently prosecute an action after summons is served." *Richardson v. United White Shipping Co.*, 38 F.R.D. 494, 496 (N.D. Cal. 1965) (dismissal where service perfected 28 months after the filing of the action). This is because such delay "affects all the defendant's preparations." *Anderson*, *Anderson v. Air West, Inc.*, 542 F.2d 522, 525 (9th Cir. 1976) (dismissal under Rule 41(b) based on failure to serve for a year despite entry of order extending service period); *Farhang v. Indian Inst. of Tech.*, 2010 U.S. Dist. LEXIS 53975, at *14-15 (N.D. Cal. June 1, 2010) (delayed service prejudiced defendant "by depriving him of the opportunity to engage in earlier preparation and participation in the suit."). Indeed, "[d]elay alone can infuse an adverse element into the proper flow of litigation: evidence deteriorates or disappears, memories fade, and witnesses die or move away." *Veazey v. Young's Yacht Sale & Service, Inc.*, 644 F.2d 475, 478 (5th Cir. 1981) (dismissal under Rule 41(b) for failure to serve for nearly 21 months).[2]

In addition, where, as here, a plaintiff files its complaint immediately prior to the running of the statute of limitations and then fails to serve, prejudice to defendants is magnified:

> Once the statute [of limitations] has run, a potential defendant who has not been served is entitled to expect that he will no longer have to defend against the claim. If service can be delayed indefinitely once the complaint is filed within the statutory period, these

---

[2] Unfortunately, based on Delphi's decision to delay prosecution of this action for five years, this action presents the unusual circumstance where amendment is sought at the beginning of the action, but years after the action was filed. To fully understand and analyze Decatur's prejudice, resulting here from Delphi's failure timely to effectuate service compounded by Delphi's attempt to amend, this Court should instead look to the more closely analogous context of dismissals for failure to prosecute under Fed. R. Civ. P. 41(b) – more specifically, where courts have considered the prejudice caused by failure to timely serve defendants. Indeed, had this court not already dismissed Delphi's Complaint, Rule 41(b) would have provided yet another basis for dismissal.

> expectations are defeated and the statute of limitations no longer
> protects defendants from stale claims.

*Anderson*, 542 F.2d at 525; *see also Zapata v. New York,* 502 F.3d 192, 198 (2d Cir. 2007) ("It is

obvious that any defendant would be harmed by a generous extension of the service period

beyond the limitations period for the action, especially if the defendant had no actual notice of

the existence of the complaint until the service period had expired. . ."); *Redding v. Essex Crane*

*Rental Corp. of Alabama*, 752 F.2d 1077, 1078 (5th Cir. 1985) (holding that it was an "obvious

misuse of the judicial process" to prevent defendant from learning of action by failing to serve)

## B.    Decatur Would Suffer Actual Prejudice From Amendment

Having no notice that it had been sued or that the time for service of the secret complaint

against it had been extended, Decatur laid off employees who had worked with Delphi without

taking any steps to organize or preserve information.

Decatur took no steps to organize and preserve their records with respect to Delphi.

Decatur did not archive their employees' computerized information with respect to Delphi, and,

when employees left, Decatur wiped clean the hard drives of their computers.  As a result,

Decatur has lost computerized data with respect to its dealings with Delphi.

In addition, Decatur did not hold exit interviews with departing employees who were

knowledgeable about the Delphi business relationship or make arrangements to keep in touch

with them.

If Decatur had known that Delphi was suing them (despite the passage of the statute of

limitations), they would have taken special steps to organize and preserve their records with

respect to Delphi, and would have held interviews with employees, including exit interviews

with laid off employees, who were knowledgeable about the Delphi business relationship.  They

also would have made arrangements to keep in touch with former employees in case they needed them to provide litigation information or serve as witnesses.

Decatur has been prejudiced in its ability to defend this adversary proceeding by Delphi's delay in serving the complaint.

Leaving aside the Second Circuit's presumption of prejudice, Decatur has presented evidence of actual prejudice.

## C.  <u>Delphi's Undue Delay Should Bar Amendment</u>

This Court did not order Delphi to delay service on Decatur or suggest that Delphi should do so.  Rather, this Court merely extended the deadline by which Delphi had to complete service. Delphi made the election to keep its avoidance action from Decatur in order to negotiate more favorable contract terms than it otherwise would have been able to had the defendants known about the avoidance actions.  Having made this election, Delphi clearly undertook a risk that, when the defendants were finally served, the avoidance actions would be dismissed for any number of reasons, including the statute of limitations.   This risk certainly was not unknown. Indeed, this Court specifically reminded Delphi that the extensions granted by the Court were without prejudice to the rights of the defendants in the avoidance actions to argue defenses other than statute of limitations.  10/22/09 Tr., at p. 6.

Delphi's actions here are reminiscent of the plaintiff's failure to serve process in *Anderson v. Air West,* 542 F.2d 522 (9th Cir. 1976), which is instructive.  In *Anderson*, the plaintiff filed suit the day before the statute of limitations was due to run.  *Id.* at 524.  The plaintiff then obtained an *ex parte* order extending indefinitely the time for serving defendants until he could obtain their addresses through discovery.  *Id.*  Rather than proceed with this discovery and diligently pursue service, however, the plaintiff delayed.  *Id.*

When the plaintiff in *Anderson* ultimately did effectuate service – one year later – the trial court dismissed the action under Fed. R. Civ. P. 41(b), holding that the plaintiff, like Delphi here, "deliberately delayed, trying to decide whether he really wanted to serve the [Defendants]." *Id.* at 525. The Ninth Circuit then affirmed, stating that:

> The importance of personal service in triggering defense preparation is demonstrated by this case, where the defendants did not get together to plan their defense until after they had all been served. Plaintiff's assertion that they could, and should, have been planning earlier is an attempt to switch the burden of going forward with the action to the defendants. The plaintiff cannot in this manner escape her responsibility to diligently prosecute the action.

*Id.* at 525.

Here, as in *Anderson*, Delphi chose to keep this action a secret for well over two years *after* the statute of limitations expired, adopting a course of action that guaranteed the evils that the statutes of limitations were designed to prevent would actually occur – evidence has been lost, memories have faded and witnesses have disappeared. Delphi should not be allowed to take further advantage of the prejudice resulting from its undue delay by amending now.

## IV.    NO FURTHER AMENDMENT SHOULD BE PERMITTED

This Court made clear on the record during the hearing on the "First Wave Motions" that it would not tolerate Delphi presenting a proposed amended complaint that failed to meet its minimal pleading requirements. Specifically, this Court stated:

> [I]t's a motion for leave to amend the complaint on unusual circumstances. ***It's really their risk if I turn them down again, right***? [I] think that the risk of being turned down on the basis [that] the complaint still isn't good enough [after amendment] is a serious enough – ***the consequences of that are serious enough*** so I assume that the plaintiffs are going to be pretty careful.

7/22/10 Tr., at p. 213 (emphasis supplied).

Despite this Court's admonition and despite having an unprecedented amount of time to acquire the data necessary to make out its *prima facie* case, Delphi's Proposed Amended Complaint still fails even to meet the minimum pleading requirements identified in the Dismissal Order. Delphi has abused this process for too long and cost Decatur and this Court far too much in both time and resources. No further amendment is warranted, and Delphi's avoidance action against Decatur should now be dismissed with prejudice.

## V.    INCORPORATION OF OTHER DEFENDANTS' BRIEFS

Decatur incorporates all of the other meritorious arguments raised by the other preference defendants in opposition to Delphi's motions for leave to amend with regard to it.

### CONCLUSION

For all of the reasons set forth above, Delphi's Motion should be DENIED.


Dated:  November 24, 2010                 Respectfully submitted,

                                          /s/  David J. Jurkiewicz
                                          David J. Jurkiewicz (18018-53)
                                          BOSE MCKINNEY & EVANS LLP
                                          111 Monument Circle, Suite 2700
                                          Indianapolis, Indiana 46204
                                          (317) 684-5000
                                          (317) 684-5173 (FAX)
                                          djurkiewicz@boselaw.com

                                          Attorneys for Decatur Plastic Products, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on the 24th day of November, 2010, a copy of the foregoing was filed electronically.  Notice of this filing will be sent to the following parties through the Court's Electronic Case Filing System.  Parties may access this filing through the Court's system.

Eric Fisher
BUTZEL LONG
fishere@butzel.com

I further certify that on the 24th day of November, 2010, a copy of the foregoing was mailed by first-class U.S. Mail, postage prepaid, and properly addressed to the following:

TOGUT SEGAL & SEGAL LLP
One Penn Plaza, Suite 3335
New York, New York  10119

/s/  David J. Jurkiewicz
David J. Jurkiewicz