STEVENS & LEE, P.C.
485 Madison Avenue, 20th Floor
New York, NY  10022
(212) 319-8500
Constantine D. Pourakis (cp@stevenslee.com)

Attorneys for Globe Motors, Inc.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | Case No. 05-44481 (RDD) |
| DELPHI CORPORATION, *et.al.*, | : | (Jointly Administered) |
| | : | |
| | : | |
| DELPHI CORPORATION, *et.al.*, | : | |
| | : | Adv. Pro. No. 07-02333 (RDD) |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| GLOBE MOTORS, INC. and GLOBE MOTORS, | : | |
| | : | |
| Defendants. | : | |

**BRIEF OF GLOBE MOTORS, INC. IN OPPOSITION TO REORGANIZED**
**DEBTORS' MOTION FOR LEAVE TO FILE AMENDED COMPLAINT**

Globe Motors, Inc. ("Globe"), by its undersigned counsel, objects to the motion to amend

complaint and respectfully alleges:

**Introduction**

Due process is a fundamental principle of the American jurisprudence.  Globe submits

that Delphi Corporation ("Delphi") and its co-debtors and co-plaintiffs have denied Globe due

process by filing adversary complaints under seal and by filing a series of motions **without**

**providing notice to Globe** and have attempted to improperly extend the two-year statute of

limitations imposed pursuant to 11 U.S.C. § 546(a).

SL1 1037248v1/105400.00001

Globe thus seeks an order of this Court:

(i)      denying the debtors'/plaintiffs' motion for leave to amend the adversary complaint in the above-captioned proceeding against Globe;

(ii)      vacating, with respect to Globe, pursuant to Fed. R. Civ. P. 60 and Fed. R. Bankr. P. 9024, the orders of this Court, dated August 16, 2007 (the "Preservation of Estate Claims Procedures Order"); March 28, 2008 (the "Extension of Avoidance Action Service Deadline Order"); April 30, 2008 (the "Postconfirmation Extension of Avoidance Action Service Deadline Order"); and October 22, 2009 (the "Supplemental Postconfirmation Extension of Avoidance Action Service Deadline Order" and, together with the Extension of Avoidance Action Service Deadline Order and the Postconfirmation Extension of Avoidance Action Service Deadline Order, the "Extension Orders"), on the grounds that each such order is void against Globe by virtue of the Debtors' intentional failure to provide Globe with notice of the motions and that the Extension Orders were improvidently made;

(iii)      dismissing, with prejudice, the above-captioned proceeding against Globe, pursuant to Fed. R. Civ. P. 12(b) and Fed. R. Bankr. P. 7012(b) on the ground that it is barred by the two-year statute of limitations imposed by 11 U.S.C. § 546(a) and, therefore, fails to state a claim upon which relief may be granted; and/or

(iv)      in the alternative, dismissing, with prejudice, the above-captioned proceeding against Globe, on the ground that it is barred by judicial estoppel.

**Background Facts**

1.      On October 8, 2005, Delphi and certain of its subsidiaries each filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").  On October 14, 2005, three additional U.S. subsidiaries of Delphi (together with the

initial debtors, the "Debtors") filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

2.      Prior to the commencement of the Debtors' cases, Globe sold products to Delphi but did not file a proof of claim in the Debtors' cases.  Because Globe was not a creditor of the Debtors, it had no basis for participating in the Debtors' cases.

3.      By motion dated August 6, 2007 (the "Preservation of Estate Claims Procedures Motion"), the Debtors sought entry of an order seeking, among other things, the establishment of procedures for certain adversary proceedings, including those commenced by the Debtors under Bankruptcy Code §§ 541, 544, 545, 547, 548 or 553.  The procedures sought included (i) pursuant to Fed. R. Civ. P. 4(m), an extension of time beyond the initial 120-day period to serve certain adversary summonses and complaints, (ii) a stay of the applicable adversary proceedings until service of process was effected, and; (iii) permitting the Debtors to file the complaints under seal.

4.      The aforementioned procedures were purportedly intended to permit the Debtors to preserve the status quo, and potentially valuable assets without disrupting the plan process or prejudicing the rights of any defendants, and to forcing potential defendants to retain counsel to defend against adversary proceedings when most of them likely would be resolved by a reorganization plan and never pursued.

5.      In addition, as relates to the request to file the complaints under seal, the Debtors also sought to so act in order to avoid unnecessarily alarming potential defendants with whom they had business relationships.

6.      No notice of the Preservation of Estate Claims Procedures Motion was given to Globe.

SL1 1037248v1/105400.00001

7.     On August 16, 2007, this Court entered the Preservation of Estate Claims Procedures Order, granting the aforementioned relief requested in the Preservation of Estate Claims Procedures Motion by (i) allowing the Debtors to file adversary proceeding complaints under seal, (ii) directing the Clerk of the Court to delay issuing summonses for complaints unless and until the Debtors notified the Clerk of their intent to prosecute such actions, (iii) staying each adversary action unless and until the Debtors effectuated service of process on the respective defendants, and (iv) extending the deadline under Fed. R. Civ. P. 4(m) by which the Debtors would have to serve process to March 31, 2008, so that the complaints would not be subject to dismissal under Fed. R. Civ. P. 4(m).

8.     Paragraph 11 of the Preservation of Estate Claims Procedures Order provides that "[t]he Debtors must serve a copy of this order upon each defendant in any [adversary proceeding] either when the Debtors serve a summons and complaint on the defendant or as soon thereafter as practicable."

9.     On September 28, 2007, the Debtors commenced the above-captioned adversary proceeding against Globe (the "Adversary Proceeding") by filing a complaint (the "Complaint") under seal with the Clerk.  The Complaint seeks to recover, pursuant to Bankruptcy Code Sections 547 and 550, alleged preferential transfers made to Globe in the aggregate amount of $456,551.96.

10.    Pursuant to Bankruptcy Code Sections 546(a), the statute of limitations for commencing avoidance actions under Code Sections 541, 544, 545, 547, 548 or 553 expired on **October 8, 2007**.

11.    On January 25, 2008, the Court entered an order confirming the Debtors' first amended joint plan of reorganization (the "Plan"; the "Confirmation Order").

SL1 1037248v1/105400.00001

12.     By motion dated February 28, 2008 (the "Extension of Avoidance Action Service Deadline Motion"), the Debtors sought to modify Paragraph 8 of the Preservation of Estate Claims Procedures Order, so as to extend for a second time the deadline under Fed. R. Civ. P. 4(m) by which the Debtors would be required to serve process by an additional two months to May 31, 2008.

13.     The stated purposes for the extension was for the Debtors to fulfill their fiduciary responsibilities to preserve valuable estate assets in a manner that would not unnecessarily disrupt the emergence process or the Debtors' business relationships with potential defendants and to reduce the burdens of the adversary proceedings on the parties and the Court.

14.     In the Extension of Avoidance Action Service Deadline Motion, the Debtors also stated that they would "not retain any of the causes of action asserted in the [adversary proceedings] except those specifically listed on Exhibit 7.24 to the Plan."[1]  (*Id*. at ¶ 17)  In fact, the Debtors stated that of the 742 adversary proceedings commenced under seal, only the claims relating to Laneko Engineering Co., Wachovia Bank, National Association, Laneko Engineering Co. Inc., and their affiliates and subsidiaries were subject to the Preservation of Estate Claims Procedures Order.  (*Id*.)

15.     No notice of the Preservation of Estate Claims Procedures Motion was given to Globe.

16.     On March 28, 2008, the Court entered the Extension of Avoidance Action Service Deadline Order, modifying Paragraph 8 of the Preservation of Estate Claims Procedures Order so that the time under Fed. R. Civ. P. 4(m) by which the Debtors must serve a defendant in the adversary proceedings with a summons and complaint was further extended to May 31, 2008.

---

[1]  Exhibit 7.24 to the Plan apparently was not filed with the Court.

17.     Consistent with Paragraph 11 of the Preservation of Estate Claims Procedures Order, Paragraph 2 of the Extension of Avoidance Action Service Deadline Order provided that the "Debtors shall serve a copy of this order upon each defendant in any [adversary proceeding] either when the Debtors serve a summons and complaint on such defendant or as soon thereafter as practicable." (*Id.* at ¶2)

18.     By motion dated April 10, 2008 (the "Postconfirmation Extension of Avoidance Action Service Deadline Motion"), the Debtors sought to further modify Paragraph 8 of the Preservation of Estate Claims Procedures Order, as modified by the Extension of Avoidance Action Service Deadline Order, so as to extend for a third time the deadline under Fed. R. Civ. P. 4(m) by which the Debtors would have to serve process until 30 days after substantial consummation of the Plan or any modified plan.

19.     The stated purposes for the next extension were identical to the purpose set forth in support of the Extension of Avoidance Action Service Deadline Motion.

20.     The Postconfirmation Extension of Avoidance Action Service Deadline Motion once again stated that (i) the Debtors would "not retain any of the causes of action asserted in the [adversary proceedings] except those specifically listed on Exhibit 7.24 to the Plan;" and (ii) of the 742 adversary proceedings commenced under seal, only the claims relating to Laneko Engineering Co., Wachovia Bank, National Association, Laneko Engineering Co. Inc., and their affiliates and subsidiaries were subject to the Preservation of Estate Claims Procedures Order. Unlike the other defendants, these three entities were provided with notice of the Postconfirmation Extension of Avoidance Action Service Deadline Motion.

21.     No notice of the Postconfirmation Extension of Avoidance Action Service Deadline Motion was given to Globe.

22.     On April 30, 2008, the Court entered the Postconfirmation Extension of Avoidance Action Service Deadline Order, modifying Paragraph 8 of the Preservation of Estate Claims Procedures Order, as previously modified by the Extension of Avoidance Action Service Deadline Order, so that the time under Fed. R. Civ. P. 4(m) by which the Debtors must serve a defendant in the adversary proceedings with a summons and complaint was further extended until 30 days after the later of substantial consummation of the Plan or any modified Chapter 11 plan for the Debtors and December 31, 2008.

23.     On July 30, 2009, the Court entered an order (the "Modification Approval Order") approving certain modifications to the Plan (the "Modified Plan").  The effective date of the Modified Plan occurred on October 6, 2009.

24.     By motion dated October 2, 2009 (the "Supplemental Postconfirmation Extension of Avoidance Action Service Deadline Motion"), the Debtors sought to further modify Paragraph 8 of the Preservation of Estate Claims Procedures Order, as modified by the Extension of Avoidance Action Service Deadline Order and the Postconfirmation Extension of Avoidance Action Service Deadline Order, so as to extend for a fourth time the deadline under Fed. R. Civ. P. 4(m) by which the Debtors were required to serve process until 180 days after substantial consummation of the Modified Plan.

25.     The Debtors stated that this further extension was necessary in light of the fact that the Debtors now anticipated that they would retain 177 of the adversary proceedings filed under seal.  The Debtors asserted that 30 days after substantial consummation of the Modified Plan was not sufficient time to assess the ongoing relationships with certain defendants and the impact the Debtors' estimated recoveries, and to determine whether to pursue such adversary

SL1 1037248v1/105400.00001

proceedings.  The Debtors then repeated their mantra about sparing the burdens on the parties and the Court.

26.    No notice of the Supplemental Postconfirmation Extension of Avoidance Action Service Deadline Motion was given to Globe.

27.    On October 22, 2009, the Court entered the Supplemental Postconfirmation Extension of Avoidance Action Service Deadline Order, modifying Paragraph 8 of the Preservation of Estate Claims Procedures Order, as previously modified by the Extension of Avoidance Action Service Deadline Order and the Postconfirmation Extension of Avoidance Action Service Deadline Order, so that the time under Fed. R. Civ. P. 4(m) by which the Debtors were required to serve a defendant in the adversary proceedings with a summons and complaint was further extended until 180 days after substantial consummation of the Modified Plan.

28.    Globe was served with the Complaint on or about December 29, 2009—**more than two years after the limitations** period provided by Bankruptcy Code § 546(a) expired.

29.    Numerous preference defendants filed motions to dismiss the Plaintiffs' adversary complaints against them.  This Court then entered its September 7, 2010 Order Granting In Part First Wave Motions To Dismiss, which dismissed with prejudice as abandoned all claims against foreign suppliers or against defendants who received less than $250,000 in transfers and dismissed the balance of the claims without prejudice because the Plaintiffs had failed to plead sufficient facts to state a claim.  The Court permitted the Plaintiffs to file motions for leave to file amended complaints and expressly ordered that the proposed amended complaints set forth, at a minimum, the transfers, the transferee, any known subsequent transferee against whom relief is sought, the antecedent debt and the Debtor/transferor.

SL1 1037248v1/105400.00001

30.    This Court determined that any defendant, like Globe, who did not receive notice of the Debtors' Extension Motions, may now challenge *de novo* the entry of the Extension Orders.

31.    On September 7, 2010, the Plaintiffs filed motions for leave to file amended complaints and proposed amended complaints to avoid and recover preferential transfers.

32.    Globe preserved its rights by joining in the motions to dismiss the adversary complaint and motions to vacate the above-described orders filed by other defendants.  (Lead case docket no. 20341; Adv. Pro. Docket nos. 15, 27)  Many of those arguments are asserted again below.

## Legal Arguments

## I.    THE COMPLAINT IS BARRED BY THE STATUTE OF LIMITATIONS AND SHOULD BE DISMISSED.

33.    Section 546(a) of the Bankruptcy Code, which sets forth the statute of limitations on avoiding powers, provides:

> An action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of - (1) the later of - (A) 2 years after the entry of the order for relief; or (B) 1 year after the appointment or election of the first trustee under section 702, 1104, 1163, 1202, or 1302 of this title if such appointment or such election occurs before the expiration of the period specified in subparagraph (A); or (2) the time the case is closed or dismissed.

11 U.S.C. § 546(a).  The deadline for commencing an adversary proceeding against Globe on account of an allegedly avoidable preference expired on October 8, 2007.  The Plaintiffs filed the Complaint under seal on September 29, 2007, but did not serve Globe with the Complaint until December 22, 2009, **more than two years after the statute of limitations** contained in Section 546(a) expired.

9

34.    To bridge the gap between the time that Globe should have been served with the Complaint and the date on which it was actually served with the Complaint, the Plaintiffs rely on the Extension Orders sought and entered, pursuant to Fed. R. Civ. P. 4(m), *ex parte* from Globe. Fed. R. Civ. P. 4(m), made applicable by Fed. R. Bankr. P. 7004(a), provides, in relevant part:

> *Time Limit for Service.* If a defendant is not served within 120 days after the complaint is filed, the court - on motion or on its own after notice to the plaintiff - must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

35.    The Extension Orders should not have been entered, as good cause did not exist to extend the time to serve process as a matter of law. Good cause generally exists under Fed. R. Civ. P. 4(m) when service is not completed on a named defendant within the required 120-day period. *Ahern v. Neve*, 285 F.Supp.2d 317, 320 (E.D.N.Y. 2003). It does not exist, however, in situations where the Plaintiffs know and can serve the named defendants but choose not to do so, and where the sole purpose in seeking the extension of time is to prevent defendants from learning that they had been sued.[2] The use of procedural rules to obtain a result not contemplated by the accompanying substantive law is simply not permitted. See 28 U.S.C. § 2075 (rules prescribed by the United States Supreme Court "shall not abridge, enlarge, or modify any substantive right"); *see also Morse v. Perrotta (In re Perrotta)*, 406 B.R. 1, 8 (Bankr. D.N.H. 2009) ("Therefore, to the extent that the Bankruptcy Rules and the Bankruptcy Code are inconsistent, the statute controls").

---

[2]   As support for extending the time to serve defendants, the Debtors cited *Bank of Cape Verde v. Bronson*, 167 F.R.D. 370, 371-72 (S.D.N.Y. 1996) for the proposition that good cause existed where future events would have likely "obviated the need to serve the complaint" and when the plaintiff requested the extension before the deadline expired. In *Cape Verde*, however, the third-party plaintiff was pursuing good-faith settlement negotiations with the plaintiff and third-party defendants, and had already served all or most of the parties to the action prior to the expiration of the 120-day deadline. That is quite dissimilar from this situation, where Globe was not, and could not possibly have been, in settlement negotiations with the Debtors insofar as it did not even know it had been sued.

36.     Moreover, while courts do have discretion to extend the time for service of process, such extensions were not warranted here.  Courts have held that statutes of limitation are statutes of repose, and they "are enacted upon the presumption, that one having a well-founded claim will not delay enforcing it beyond a reasonable time, if he has the power to sue."  *In re Cornwall*, 9 Blatchf. 114, 6 F.Cas. 586, 591 (C.C.D. Conn. Sept. Term 1871).  Indeed, the purpose of statutes of repose is to give notice to plaintiffs of the time within which to bring suit and to potential defendants of the time beyond which exposure to liability ceases.  *See Diversified Hospitality Groin Inc. v. Carson Pirie Scott & Co.*, 1991 WL 35953, at *5 (S.D.N.Y. Mar. 8, 1991).

37.     Statutes of repose are only to be outweighed where "the interests of justice require vindication of the plaintiff's rights."  *Family Golf Ctrs., Inc. v. Acushnet Co. (In re Randall's Island Family Golf Ctrs., Inc.)*, 288 B.R. 701, 705 (Bankr. S.D.N.Y. 2003).  Such circumstances occur where the plaintiff has not slept on its rights, has commenced a timely action in a court of competent jurisdiction, the particular defect in the complaint is waivable and frequently waived, and the defendant "could not have relied upon the policy of repose embodied in the limitation statute, for it was aware that [the plaintiff was actively pursuing his . . . remedy."  *Id*.  (quoting *Burnett v. N.Y. Cent. R.R. Co.*, 380 U.S. 424, 428-29 (1965)).

38.     Here, Globe was entitled to rely, and indeed did rely, upon the policy of repose embedded within Section 546(a) of the Bankruptcy Code, having received no notice for **more than two years after the statute of limitations** had expired that it had been sued by the Plaintiffs.  And it should go without saying that Globe could not have determined it had been sued due to the Complaint being filed under seal.

11

39.      Accordingly, while it is generally the policy of the courts to decide cases on the merits where possible,

> if the Rules are to mean anything, parties must diligently try to follow them and courts must enforce them, even if it means that cases must sometimes be finally determined on procedural grounds rather than on their substantive merits.

*Mused v. U.S. Dep't of Agriculture Food and Nutrition Serv.*, 169 F.R.D. 28, 35 (W.D.N.Y. 1996).  By not giving notice to Globe that it had been sued and denying Globe the right to be heard and object to the motions supporting the Preservation of Estate Claims Procedures Order and each of the Extension Orders, the Plaintiffs maneuvered themselves into this situation in which the Complaint should be dismissed on procedural, and not substantive, grounds.  Having set into motion this scheme, the Debtors cannot now cry foul.  In sum, the Complaint should be dismissed for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6); Fed. R. Bankr. P. 7012(b).

## II.      THE PRESERVATION OF ESTATE CLAIMS PROCEDURES ORDERS AND THE EXTENSION ORDERS SHOULD BE VACATED AS AGAINST GLOBE ON THE BASIS THAT EACH IS VOID BY VIRTUE OF THE PLAINTIFFS' INTENTIONAL FAILURE TO PROVIDE GLOBE WITH NOTICE OF THE MOTIONS IN SUPPORT THEREOF AND THAT SUCH ORDERS SHOULD NOT HAVE BEEN ENTERED.

40.      Fed. R. Civ. P. 60(b), as made applicable by Fed. R. Bankr. P. 9024, provides, in relevant part:

> On motion and just terms, the Court may relieve a party or its legal representative from a final judgment, order or proceeding for the following reasons: . . . (6) any other reason that justifies relief.

41.      Globe submits that the combination of permitting the Plaintiffs to file the Complaint under seal -- thereby preventing Globe from discovering that it had been sued -- while continually extending the Plaintiffs' time to serve process **more than two years past the expiration of the statute of limitations** set forth in Bankruptcy Code §546(a) -- also without

notice to Globe -- has resulted in a proceeding completely devoid of procedural due process. Accordingly, and for the reasons set forth below, the Preservation of Estate Claims Procedures Order and each of the Extension Orders must be vacated as against Globe.

### A. The Complaint Was Improperly Filed under Seal Pursuant to Section 107 of the Bankruptcy Code.

42.    There "is a strong presumption and public policy in favor of public access to court records," which is "rooted in the public's First Amendment right to know about the administration of justice." *In re Food Management Group, LLC*, 359 B.R. 543, 553 (Bankr. S.D.N.Y. 2007) (internal citations and quotations omitted).   In fact, the "public interest in openness of court proceedings is at its zenith when issues concerning the integrity and transparency of bankruptcy court proceedings are involved." *Id.*; *see also Gitto v. Worcester Telegram & Gazette Corp. (In re Gitto Global Corp.*), 422 F.3d 1, 7 (1st Cir. 2005) ("This governmental interest is of special importance in the bankruptcy arena, as unrestricted access to judicial records fosters confidence among creditors regarding the fairness of the bankruptcy system.").

43.    Section 107(a) of the Bankruptcy Code codified the common law right of public access in the bankruptcy setting and provides, in relevant part, that "a paper filed in a case under this title and the dockets of a bankruptcy court are public records and open to examination by an entity at reasonable times without charge." 11 U.S.C. § 107(a); *Food Management*, 359 B.R. at 553.  The "plain meaning of §107(a) mandates that all papers filed with the bankruptcy court are 'public records' unless the bankruptcy court 'decides to protect the information pursuant to the standards set forth in [§] 107(b)'." *Food Management*, 359 B.R. at 553 (quoting *Air Line Pilots Ass'n Int'l v. Am. Na'l Bank and Trust Co. (In re Ionosphere Clubs*), 156 B.R. 414, 433 n.7 (S.D.N.Y. 1993)).

SL1 1037248v1/105400.00001

44.     Section 107(b) of the Bankruptcy Code establishes two exceptions to the general right of access where under "compelling or extraordinary circumstances" an exception is necessary.  *Video Software Dealers Ass'n v. Orion Pictures Corp (In re Orion Pictures)*, 21 F.3d 24, 27 (2d Cir. 1994).  Section 107(b) provides:

> On request of a party in interest, the bankruptcy court shall, and on the bankruptcy court's own motion, the bankruptcy court may - (1) protect an entity with respect to a trade secret or confidential research, development, or commercial information; or (2) protect a person with respect to scandalous or defamatory matter contained in a paper filed in a case under this title.

11 U.S.C. § 107(b).  However, "a judge must carefully and skeptically review sealing requests to insure that there really is an extraordinary circumstance or compelling need" to keep the material private.  *Food Management*, 359 B.R. at 554 (citation and quotation omitted).

45.     The Debtors invoked Section 107(b)(1) when requesting that the Court permit the filing of the complaints commencing the avoidance action adversary proceedings under seal.  As mentioned above, in the Preservation of Estate Claims Procedures Motion, the Debtors sought to characterize preservation of the status quo and existing business relationships as "commercial information" in need of protection.  In connection therewith, the Debtors alleged that they "have worked to preserve and repair their business relationship with many of the potential defendants during these cases and have negotiated or regained favorable credit terms with many suppliers and are continuing to do so."[3]

46.     Commercial information, however, has never been defined by the Courts so broadly as to protect information that would be prejudicial to the Debtors vis-à-vis their own

---

[3]   In support of their proposition that ongoing business relationships were "commercial information" entitled to protection, the Debtors cited *In re Service Merchandise, et al.*, Case No. 39902649 (Bankr. M.D. Tenn. Feb. 27, 2001), in which the court gave the debtors authority to file under seal certain adversary proceedings while they continued negotiations with the defendants, who were also the debtors' business partners.  Even if the ruling were correct as a matter of law, which Globe disputes, the case is inapposite to the situation here, as Globe is not a business partner of the Debtors.

SL1 1037248v1/105400.00001

creditors.  Rather, commercial information has been defined "as information which would cause an unfair advantage to competitors by providing them information as to the commercial operations of the debtor."  *Orion Pictures*, 21 F.3d at 27.  Globe is not a competitor of the Debtors.  The fact that the Debtors are seeking to avoid allegedly preferential payments to Globe was, therefore, not "commercial information" that needed to be kept or should have been kept confidential.  Accordingly, the Preservation of Estate Claims Procedures Order as relates to the authority to file the Complaint under seal should be vacated as to Globe.

**B.      Globe Was Not Served with Notice of the Motions in Support of the Preservation of Estate Claims Procedures Order and Each of the Extension Orders.**

47.      It has long been held that the "fundamental requisite of due process of law is the opportunity to be heard."  *Grannis v. Ordean*, 234 U.S. 385, 394 (1914).  This right to be heard, however, "has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest."  *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).  Thus, an "elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Id*. at 314; *Barcia v. Sitkin*, 367 F.3d 87, 107 (2d Cir. 2004) (same); *Weigner v. City of New York*, 852 F.2d 646, 654 (2d Cir. 1988) (same).

48.      Globe was not given any notice of the motions for the Preservation of Estate Claims Procedures Order and each of the Extension Orders, and none of the motions identified Globe as a potential defendant.  On the contrary, the motions, with their authority to file the complaints under seal, were, in fact, designed to keep Globe in the dark as to its status as a

defendant. The information was continually suppressed against Globe—*i.e.*, the party with an adverse interest in the matter. Such a deprivation amounts to a denial of due process.

49. The Debtors attempted to justify the lack of procedural due process on the grounds that it avoided unnecessarily alarming potential defendants and forcing potential defendants to retain counsel to defend against adversary proceedings when most of them likely would be resolved by a reorganization plan and never pursued.

50. These justifications have no merit. The Debtors had an option: sue the defendants or refrain from suing the defendants. Significantly, Globe would have had notice that it was being sued, and it would have had the ability to oppose the motions seeking the Preservation of Estate Claims Procedures Order and the Extension Orders.

51. The Debtors' lack of due process had the additional effect of disenfranchising Globe from participating in the case and voting on the Plan and Modified Plan. Indeed, under Section 502(d), it is implicit that "a transferee of an avoidable transfer has an allowable claim once it turns over such property for which it is liable," and that it may file a proof of claim on account of same. *Fleet Nat'l Bank v. Gray ( In re Bankvest Capital*, 375 F.3d 51, 57 n.4 (1st Cir. 2004). That, in turn, allows it to "[participate] in the voting and distribution from the estate." *In re Hamilton*, 179 B.R. 749, 752 (Bankr. S.D. Ga. 1995) (quoting *In re Kolstad*, 928 F.2d 171, 174 (5th Cir. 1991), *reh'g denied*, 936 F.2d 571 (5th Cir. 1991), *cert. denied*, 502 U.S. 958 (1991)).

52. The Debtors knew that if Globe repaid an allegedly preferential transfer, it would have been entitled to file a claim, participate in the case and vote on the Plan and the Modified Plan. Depriving Globe of its right to participate in the bankruptcy cases simply to avoid having

SL1 1037248v1/105400.00001

the Debtors cast in a bad light to Globe is improper and not justifiable under the Bankruptcy Code.[4]

53.    For all of the foregoing reasons, the Preservation of Estate Claims Procedures Orders, the Extension of Avoidance Action Service Deadline Order, the Postconfirmation Extension of Avoidance Action Service Deadline Order, and the Supplemental Postconfirmation Extension of Avoidance Action Service Deadline Order should be vacated on the ground that they are improperly entered and, thus, void against Globe.

## III.    THE COMPLAINT IS BARRED BY JUDICIAL ESTOPPEL AND SHOULD BE DISMISSED.

54.    The equitable principle of judicial estoppel "prevents a party from asserting a factual position in a legal proceeding that is contrary to a position previously taken by [that party] in a prior legal proceeding." *In re Venture Mortgage Fund, L.P.*, 245 B.R. 460, 471 (2000), *aff'd*, 282 F.3d 185 (2d Cir. 2002).  The purpose of judicial estoppel is to "protect the integrity of the judicial process . . . by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001); *see also Rosenshein v. Kleban*, 918 F.Supp. 98, 104 (S.D.N.Y. 1996) ("Judicial estoppel is invoked . . . to prevent the party from playing fast and loose with the courts, and to protect the essential integrity of the judicial process.").

55.    In the Second Circuit, the following two factors must be satisfied to invoke the doctrine of judicial estoppel:  (i) the party against whom estoppel is asserted took an inconsistent position in a prior proceeding, and (ii) the first tribunal adopted the inconsistent position in some manner, such as, by rendering a favorable judgment.  *Venture Mortgage*, 245 B.R. at 472.  The

---

[4] Globe received copies of the disclosure statement and plan as well as a ballot but was not aware that it had a claim in the case — least of all a claim in connection with a hypothetical repayment of a preference action Globe did not know existed.

doctrine, however, does not depend upon prejudice to the party invoking it. *Galerie Des Monnaies of Geneva, Ltd. v. Deutsche Bank, A.G., New York Branch (In re Galerie Des Monnaies of Geneva, Ltd.*), 55 B.R. 253, 260 (Bankr. S.D.N.Y. 1985), *aff'd*, 62 B.R. 224 (S.D.N.Y. 1986).

56.       Here, both factors are satisfied.  First, in their Extension of Avoidance Action Service Deadline Motion, the Debtors asserted that they would "not retain any of the causes of action asserted in the [adversary proceedings] except those specifically listed on Exhibit 7.24 to the Plan."  In fact, the Debtors stated that of the 742 adversary proceedings commenced under seal, only the claims relating to Laneko Engineering Co., Wachovia Bank, National Association, Laneko Engineering Co. Inc., and their affiliates and subsidiaries were subject to the Preservation of Estate Claims Procedures Order.  The Debtors reiterated this assertion in their Postconfirmation Extension of Avoidance Action Service Deadline Motion.

57.       Second, the Court, in entering the orders upon the representations set forth in the Extension of Avoidance Action Service Deadline Motion and the Postconfirmation Extension of Avoidance Action Service Deadline Motion, adopted an inconsistent position.

58.       By serving the Complaint on Globe, the Debtors are now attempting to reverse a legal position previously asserted in two of their motions and adopted by the Court in its entry of the Extension of Avoidance Action Service Deadline Order and the Postconfirmation Extension of Avoidance Action Service Deadline Order.  Such action is impermissible and, accordingly, the Complaint should be dismissed.  *See Galerie Des Monnaies*, 55 B.R. at 260 (granting defendant's motion to dismiss where debtor who stated in its disclosure statement that it has no preference actions "may not thereafter reverse its field and commence a preference action for its own benefit.").

SL1 1037248v1/105400.00001

## IV.    THE DEBTORS CANNOT SATISFY THE STANDARD FOR LEAVE TO AMEND THE COMPLAINT.

59.    Leave to amend under Fed. R. Bankr. P. 7015 is not granted automatically; it is within the court's discretion to grant leave to amend.  *John Hancock Mut. Life Ins. Co. v. Amerford Intl. Corp*., 22 F.3d 458, 462 (2d Cir. 1994).  "[C]onsiderations of undue delay, bad faith, and prejudice to the opposing party [are] all touchstones of a district court's discretionary authority to deny leave to amend." *Barrows v. Forest Laboratories, Inc*., 742 F.2d 54, 58 (2d Cir. 1984).

60.    The Debtors' weak justification for the delay and subterfuge in keeping the complaint under seal and extending its statute of limitation for so long without notice to Globe cannot satisfy the standard under Rule 7015.  *See Smith v. Pennsylvania Glass Sand Corp*., 123 F.R.D. 648, 651 (N.D. Fla. 1988) ("Plaintiff cannot deliberately or even inadvertently 'wait and see' if his financial resources improve enough to allow him to diligently prosecute his case."). Indeed, if a "wait and see" approach were justifiable, all statutes of limitations would be turned on their heads.

61.    Here, prejudice to Globe and undue delay warrant denial of the motion for leave to amend the Complaint.  First, the Second Circuit recognizes that "prejudice to defendants resulting from unreasonable delay may be presumed…[and] is particularly appropriate where, as here, the plaintiff's delay was prolonged." *Shannon v. GE*, 186 F.3d 186 (2d. Cir. 1999) (citations and quotations omitted).

62.    Many courts find that "[f]ailure to use reasonable diligence in serving a summons is more fraught with possibilities of unfairness and abuse than failure to diligently prosecute an action after summons is served." Such lack of diligence necessarily can lead to dismissal.  *See e.g., Richardson v. United White Shipping Co*., 38 F.R.D. 494, 496 (N.D. Cal. 1965) (dismissal

19

where service perfected 28 months after filing of action); *Anderson, Anderson v. Air West, Inc*., 542 F.2d 522, 525 (9th Cir. 1976) (dismissal under Rule 41(b) based on failure to serve for a year despite entry of order extending service period); *Farhang v. Indian Inst. Of Tech*, 2010 U.S. Dist. LEXIS 53975, at *14-15 (N.D. Cal. June 1, 2010) (delayed service prejudiced defendant "by depriving him of the opportunity to engage in earlier preparation and participation in the suit.")

63.    The court in *Anderson* had this to say about delay of service of summons:

> Once the statute [of limitations] has run, a potential defendant who has not been served is entitled to expect that he will no longer have to defend against the claim.  If service can be delayed indefinitely once the complaint is filed within the statutory period, these expectations are defeated and the statute of limitations no longer protects defendants from stale claims.

*Anderson*, 542 F.2d at 525; *see also, Zapata v. New York*, 502 F.3d 192, 198 (2d Cir. 2007) ("It is obvious that any defendant would be harmed by a generous extension of the service period beyond the limitations period for the action, especially if the defendant had no actual notice of the existence of the complaint until the service period had expired…..").

64.    The undue delay of service of summons and failure to serve notice of the Extension Motions prejudiced Globe by denying its due process rights, *i.e*., the right to participate in these cases, the right to oppose and be heard on the Extension Motions, the right to obtain counsel timely and move to dismiss the Complaint and to preserve records and testimony in defense of the Complaint.

## Conclusion

65.    The Extension Orders were improperly entered without notice to Globe and, thus, should be vacated.  Consequently, the Complaint served on Globe **more than two years after the statute of limitation had expired** should be dismissed with prejudice.  Moreover, the

SL1 1037248v1/105400.00001

Debtors' motion for leave to amend the Complaint is flawed due to undue delay and prejudice to Globe. That motion should be denied.

66.     Finally, Globe incorporates herein and joins all of the meritorious arguments raised by other preference defendants in opposition to the Debtors' motions for leave to amend preference complaints.

Dated: November 24, 2010          **STEVENS & LEE, P.C.**

By:     _/s/ Constantine D. Pourakis_____
Constantine D. Pourakis
485 Madison Avenue, 20th floor
New York, NY 10022
Telephone: (212) 319-8500
Email: cp@stevenslee.com

- and -

Colleen E. McManus (Illinois bar no. 06243473)
**Much Shelist Denenberg Ament & Rubenstein, P.C.**
191 N. Wacker Drive, Suite 1800
Chicago, IL 60606
Telephone: 312-521-2000
Email: cmcmanus@muchshelist.com

SL1 1037248v1/105400.00001