Michael L. Schein (MS-0241)            **Return Date:  December 17, 2010**
VEDDER PRICE P.C.                   **Time:  2:30 P.M.**
1633 Broadway, 47th Floor
New York, New York  10019
Telephone:     (212) 407-7700
Facsimile:     (212) 407-7799

*Attorneys for The Intec Group, Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>DELPHI CORPORATION, <u>et al.</u>,<br><br>        Debtors. | Chapter 11<br>Case No. 05-44481 (RDD) |
| DELPHI CORPORATION, <u>et al.</u>,<br><br>        Plaintiffs,<br><br>Against<br><br>INTEC GROUP,<br><br>        Defendant. | Adv. Pro. No. 07-02525 (RDD) |

**OPPOSITION OF DEFENDANT THE INTEC GROUP, INC. TO REORGANIZED**
**DEBTORS' MOTION FOR LEAVE TO FILE AMENDED COMPLAINTS**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................... 1

BACKGROUND .................................................................................................... 3

I.      Reorganized Debtors' Relationship With Intec Group ..................................... 3

II.     The Extension Motions ................................................................................... 5

        A.    Intec Group Received No Notice Of First Extension Motion Or Procedures
              Order ...................................................................................................... 5

        B.    Reorganized Debtors Commence Adversary Proceeding Against Intec
              Group ...................................................................................................... 6

        C.    First Amended Joint Plan Of Reorganization ........................................... 7

        D.    Intec Group Received No Notice Of Second Extension Motion Or Second
              Extension Order ...................................................................................... 7

        E.    Intec Group Received No Notice Of Third Extension Motion Or Third
              Extension Order ...................................................................................... 8

        F.    Intec Group Received No Notice Of Fourth Extension Motion Or Fourth
              Extension Order ...................................................................................... 9

        G.    The Modified Plan ................................................................................. 10

        H.    Reorganized Debtors Finally Serve The Original Complaint Four And One
              Half Years Later.................................................................................... 11

        I.    Dismissal Procedures Order................................................................... 11

i

# TABLE OF CONTENTS
(continued)

**Page**

III.    Intec Group's Motion To Dismiss ........................................................................... 12

IV.    Reorganized Debtors' Motion To Amend The Original Complaint ............................... 12

ARGUMENT .......................................................................................................................... 14

I.    Legal Standards ........................................................................................................ 14

II.    Reorganized Debtors' Motion To Amend Should Be Denied  Because Granting Such Relief Would Be Futile. ........................................................................................ 16

III.    Reorganized Debtors' Motion To Amend Is Also Futile Because  Intec Group Has Complete Defenses To The Amended Complaint .......................................................... 17

IV.    Motion To Amend Should Be Denied Due To  Undue Prejudice To Intec Group .......... 20

V.    Intec Group Would Be Further Prejudiced Because Amended Complaint Is Barred By The Statute Of Limitations, Laches And Judicial Estoppel ....................................... 22

VI.    Intec Group Incorporates All Applicable Arguments Raised By Other Defendants In Their Responses And Oppositions To Reorganized Debtors' Motion To Amend ...... 24

RESERVATION OF RIGHTS ................................................................................................ 24

CONCLUSION ....................................................................................................................... 24

# TABLE OF AUTHORITIES

**Page**

## CASES

AEP Energy Servs. Gas Holding Co. v. Bank of America, N.A.,
  2010 WL 4261227 (2d Cir. 2010)............................................................... 14, 20

Anderson v. Air West, Inc.,
  542 F.2d 522 (9th Cir. 1976) ................................................................... 21

Ansam Assocs., Inc. v. Cola Petroleum, Ltd.,
  760 F.2d 442 (2d Cir. 1985)..................................................................... 20

Ashcroft v. Iqbal,
  129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ................................. 1, 15, 16, 25

Barber v. Riverside Int'l Trucks, Inc. (In re Pearson Indus., Inc.),
  142 B.R. 831 (Bankr. C.D.Ill. 1992).......................................................... 18

Bell Atlantic Corp. v. Twombly,
  550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)......................... 2, 15, 16, 25

Christy v. Alexander & Alexander of New York (In re Finley, Kumble, Wagner, Heine,
  Underberg, Manley, Myerson & Casey),
  130 F.3d 52 (2d Cir. 1997)....................................................................... 20

Coral Petroleum, Inc. v. Banque Paribas-London,
  797 F.2d 1351 (5th Cir. 1986) ................................................................. 19

Farhang v. Indian Inst. of Tech.,
  2010 U.S. Dist. LEXIS 53975 (N.D. Cal. June 1, 2010) ......................... 21

Foman v. Davis,
  371 U.S. 178 (1962)................................................................................. 14

Hunt v. Alliance N. Am. Gov't Income Trust, Inc.,
  159 F.3d 723 (2d Cir. 1998).................................................................... 14

In re Aldridge,
  94 B.R. 589 (Bankr. W.D.Mo. 1988)........................................................ 18

In re Grove Peacock Plaza, Ltd.,
  142 B.R. 506 (Bankr. S.D. Fla. 1992) ..................................................... 18

In re Wall Tire Distribs., Inc.,
  116 B.R. 867 (Bankr. M.D.Ga. 1990)....................................................... 18

McCarthy v. The Dun & Bradstreet Corp.,
  482 F.3d 184, 200 (2d Cir. 2007)............................................................ 14

McLaughlin v. Anderson,
  962 F.2d 187 (2d Cir. 1992).................................................................... 14

Official Comm. of Unsecured Creditors of Enron Corp. v. Whalen (In re Enron Corp.),
  357 B.R. 32  (Bankr. S.D.N.Y. 2006) ...................................................... 18

Papasan v. Allain,
    478 U.S. 265 (1986) .................................................................................................. 15, 17

Redding v. Essex Crane Rental Corp. of Alabama,
    752 F.2d 1077 (5th Cir. 1985) ................................................................................... 21

Richardson v. United White Shipping Co.,
    38 F.R.D. 494 (N.D. Cal. 1965) ................................................................................ 21

Rodriguez v. Diaz,
    2010 WL 1838814 (S.D.N.Y. 2010) .......................................................................... 14

Rooster, Inc. v. Roy (In re Rooster, Inc.),
    *127 B.R. 560 (Bankr. E.D.Pa. 1991)* ....................................................................... 18

Ruffolo v. Oppenheimer & Co.,
    987 F.2d 129 (2d Cir. 1993) ....................................................................................... 14

Savage & Associates, P.C. v. County of Fairfax (In re Teligent Services, Inc.),
    No. 06 C 03721, 2009 WL 2152320 (S.D.N.Y. July 17, 2009) ................................. 19

Warsco v. Preferred Technical Group,
    258 F.3d 557 (7th Cir. 2001) ..................................................................................... 17

Zapata v. New York,
    502 F.3d 192 (2d Cir. 2007) ....................................................................................... 21

Zenith Radio Corp. v. Hazeltine Research, Inc.,
    401 U.S. 321,  91 S.Ct. 795, 802, 28 L.Ed.2d 77 (1971) .......................................... 20

**STATUTES**

11 U.S.C. § 1127(a) ........................................................................................................... 7
11 U.S.C. § 541 .................................................................................................................. 5
11 U.S.C. § 544 .................................................................................................................. 5
11 U.S.C. § 545 .................................................................................................................. 5
11 U.S.C. § 546(a) ....................................................................................................... 22, 23
11 U.S.C. § 547 ................................................................................................... 5, 6, 17, 18
11 U.S.C. § 547(b) ....................................................................................................... 18, 24
11 U.S.C. § 547(b)(2) ................................................................................................... 17, 18
11 U.S.C. § 547(b)(3) ...................................................................................................... 16
11 U.S.C. § 547(f) ........................................................................................................... 13
11 U.S.C. § 548 .................................................................................................................. 5
11 U.S.C. § 550 ........................................................................................................... 6, 18
11 U.S.C. § 550(a) .......................................................................................................... 20
11 U.S.C. § 553 .................................................................................................................. 5
770 ILCS 105 ............................................................................................................... 3, 19
IND. CODE ANN. §§ 32-33-16-0.5 ................................................................................ 3, 19

**RULES**

Fed. R. Bankr. P. 7004(m)(1) ........................................................................................... 5

**TABLE OF AUTHORITIES**
**(cont'd)**

**Page**

Fed. R. Bankr. P. 7008 ............................................................................................................. 1
Fed. R. Civ. P. 15 ....................................................................................................................... 14
Fed. R. Civ. P. 8(a) ............................................................................................... 1, 2, 15, 16, 17
Fed. R. Civ. P. 8(a)(2) ............................................................................................................... 15

The Intec Group, Inc. ("Intec Group"), by and through its attorneys, Vedder Price P.C., for its opposition to the Reorganized Debtors' Motion for Leave to File Amended Complaints (the "Motion to Amend") [Adv. Dkt. No. 27], and in further support of its Motion to Dismiss and Joinder in Hewlett Packard Company and Affiliates' Motion to Dismiss Plaintiffs' Complaint (the "Motion to Dismiss") [Adv. Dkt. No. 21] previously filed with this Court, respectfully states as follows:

## INTRODUCTION

As the Court is aware, Delphi Corporation ("Delphi") and its jointly administered affiliates (collectively with Delphi, the "Reorganized Debtors") commenced this action against Intec Group more than three years ago by filing the Original Complaint (as defined below) under seal.  The Reorganized Debtors, however, did not serve the Original Complaint until two and one half years after the statute of limitations expired.  Intec Group, like a number of other similarly situated preference defendants, filed its Motion to Dismiss in light of the procedural and substantive deficiencies underlying the Reorganized Debtors' Original Complaint.  At the hearing (the "July 22nd Hearing") on the Motion to Dismiss (and motions to dismissed filed by other similar defendants), the Court directed the Debtors to file the Motion to Amend in order to, among other things, plead facts to satisfy the pleading standards required under Rule 8(a) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), made applicable by Rule 7008 of the Federal Rules of Bankruptcy Procedure ("Fed. R. Bankr. P."), as clarified by the Supreme Court in Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949, 173 L.E.2d 868 (2009) ("Iqbal") and Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 560-61, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ("Twombly").  (See Order Granting in Part First Wave Motions to Dismiss (the "Dismissal Order") [Adv. Dkt. No. 29], ¶ 4.)

As demonstrated below, the Reorganized Debtors' Motion to Amend should be denied because, among other things, the Amended Complaint (as defined below) fails to comply with Fed. R. Civ. P. 8(a) and this Court's Dismissal Order by failing to, among other things, (a) identify any antecedent debt(s) on account of which the Subject Transfer (as defined below) was made and (b) set forth any facts establishing the alleged transferor's purported insolvency at the time of the Subject Transfer.

*Assuming arguendo* that the Amended Complaint satisfies the pleading standards under Fed. R. Civ. P. 8(a) and this Court's Dismissal Order, the Reorganized Debtors' Motion to Amend should still be denied because the Amended Complaint improperly (a) seeks to recover transfers that were not made on account of antecedent debts, (b) seeks to recover transfers that were for or on account of obligations owed to Intec Group from parties other than DAS (as defined below), (c) alleges that the Subject Transfer enabled Intec Group to receive more than it would have received in a chapter 7 liquidation, (d) seeks to recover transfers made to or for the benefit of a foreign supplier, despite such relief having been dismissed by this Court and (e) seeks to recover transfers made to or for the benefit of non-defendants Intec Mexico, LLC and A.I. Technologies, LLC.

Most importantly, the Reorganized Debtors' Motion to Amend fails to cure (nor can it) the myriad of procedural deficiencies underlying the Reorganized Debtors' filing of this action and service of the Original Complaint. Indeed, the Motion to Amend does not alter the fact that Intec Group received no notice, actual or otherwise, of any of the motions and orders that purportedly extended the Reorganized Debtors' deadline to serve the Original Complaint two and a half years after the statute of limitations expired, and four and a half years after the Subject Transfer was made. When all of this is taken as a whole, Intec Group has been unduly

prejudiced by the acts and omissions of the Reorganized Debtors, warranting under the facts and circumstances of this case, denial with prejudice of the Reorganized Debtors' relief. Accordingly, the Motion to Amend should be denied and this Adversary Proceeding should be dismissed, both with prejudice.

## **BACKGROUND**

### I.     **Reorganized Debtors' Relationship With Intec Group**

1.     Intec Group and certain of its affiliated entities, including A.I. Technologies, LLC ("A.I. Technologies") and Intec Mexico, LLC ("Intec Mexico," collectively, with Intec Group and A.I. Technologies, "Intec"), are Tier 1 suppliers and global leaders in the manufacturing of precision insert molded and injection molded thermoplastic parts.  (Declaration of Daryl Dishong dated May 12, 2010 ("May Dishong Aff."), ¶ 4, originally annexed to the Motion to Dismiss as Exhibit B, and annexed hereto as Exhibit A.)  Prior to the Reorganized Debtors' bankruptcy filings, Intec manufactured thermoplastic parts for some (but not all) of the Reorganized Debtors. (Id., ¶ 5.)

2.     In connection with such manufacturing, Intec maintains tooling, molds and related products (collectively "Tooling") in various of its facilities located within the United States and abroad.  (Id.)  Prior to the bankruptcy filings, the Reorganized Debtors owed $2,823,787.60 in the aggregate to Intec, which indebtedness was fully secured by the Tooling located, among other locations, in Illinois and Indiana pursuant to the Illinois Tool and Die Lien Act (770 ILCS 105, et seq.) and the Indiana State Code (IND. CODE ANN. §§ 32-33-16-0.5, et seq.) (collectively, the "Statutory Liens").  (Declaration of Daryl Dishong dated November 23, 2010 ("Nov. Dishong Aff."), ¶ 6, annexed hereto as Exhibit B.)  The estimated value of the Tooling at the time of the Subject Transfer was not less than $2,500,000.00.  (Id.)

3.    To induce Intec to continue supplying to the Reorganized Debtors after their bankruptcy filing, the Reorganized Debtors wired $2,450,000.00 (the "Subject Transfer") to Intec Group on October 7, 2005.  (Id., ¶ 7.)  In reliance of the Subject Transfer, Intec Group continued to supply the Reorganized Debtors during their bankruptcy cases.  (Id.)

4.    As described in the email annexed as Exhibit A to the Nov. Dishong Affidavit, and consistent with numerous conversations among Everett W. Montgomery, Jr., head of Reorganized Debtors' global chemicals purchasing, Steven M. Perlman, President and CEO, Intec Group, and Daryl M. Dishong, Chief Financial Officer, Intec Group:

(a)    $1,050,000.00 of the Subject Transfer (the "Advance Transfer") was payment in advance to Intec to supply parts to the Reorganized Debtors during their bankruptcy cases.  (Id., ¶ 8(a).);

(b)    $1,305,397.48 of the Subject Transfer (the "Third Party Transferee Transfer"), $643,220.20 of which was an advancement of funds, was transferred to or for the benefit of A.I. Technologies and Intec Mexico.  (Id., ¶ 8(b).);

(c)    $560,461.02 of the Subject Transfer (the "Intec Mexico Transfer"), $286,639.50 of which was an advancement of funds,[1] was transferred to or for the benefit of Intec Mexico, a foreign supplier.  (Id., ¶ 8(c).); and

(d)    $112,244.48 of the Subject Transfer (the "Third Party Obligor Transfer") was for or on account of obligations owed to Intec Group from entities other than Delphi Automotive Systems, LLC ("DAS"), the plaintiff listed in the Amended Complaint, including Delco Electronics and Delphi Energy & Chassis.  (Id., ¶ 8(d).)

---

[1]  Both the $643,220.20 of the Third Party Transferee Transfer and the $286,639.50 of the Intec Mexico Transfer are a part of the Advance Transfer.

## II.    The Extension Motions

### A.    Intec Group Received No Notice Of First Extension Motion Or Procedures Order

5.    On August 6, 2007, two years into the bankruptcy,[2] the Reorganized Debtors sought to establish procedures governing certain adversary proceedings, including those commenced by the Reorganized Debtors under Bankruptcy Code §§ 541, 544, 545, 547, 548 or 553 (the "First Extension Motion") [Dkt. No. 8905].  In relevant part, the procedures included: (a) an extension of time beyond the initial 120-day period to serve certain adversary summonses and complaints pursuant to Fed. R. Bankr. P. 7004(m)(1); (b) a stay of the applicable adversary proceedings until service of process was effected and (c) permission for the Reorganized Debtors to file the complaints under seal.  (Id., ¶¶ 33-38).  The Reorganized Debtors also sought authority to abandon certain potential avoidance causes of action, including, without limitation, all causes of action against foreign suppliers.  (Id., ¶ 17).  The Reorganized Debtors purportedly sought such relief to preserve "the status quo" and to protect "potentially valuable assets without disrupting the plan process or existing business relationships prematurely or prejudicing the rights of any defendants."  (Id., ¶¶ 33-34).  The Reorganized Debtors also sought to file the complaints under seal in order to "avoid unnecessarily alarming potential defendants," and because the "Debtors have worked to preserve and repair their business relationship with many of the potential defendants during these cases and have negotiated or regained favorable credit terms with many suppliers and are continuing to do so."  (Id., ¶ 37).

---

[2]  Intec Group never filed an appearance in any of the Reorganized Debtors' bankruptcy cases.  In fact, except for the limited filing of a reclamation claim on October 21, 2010, Intec Group never monitored (nor had reason to monitor) the Reorganized Debtors' bankruptcy docket or requested its counsel do so on its behalf.  (Nov. Dishong Aff., ¶ 11.)

6.      On August 16, 2007, without notice to or knowledge by Intec Group, the First Extension Motion was approved and an order entered by the Court (the "Procedures Order") [Dkt. No. 9105]. Among other things, the Procedures Order extended the Reorganized Debtors' deadline to serve adversary proceeding summonses and complaints until March 31, 2008, authorized the complaints to be filed under seal and authorized the Reorganized Debtors to abandon certain avoidance actions. (Procedures Order, ¶¶ 7-10.)

7.      Despite the importance of the foregoing relief, Intec Group received no notice, actual or otherwise, of the First Extension Motion or the Procedures Order. (May Dishong Aff., ¶ 11.) This is confirmed by the affidavits of service filed in respect of both the First Extension Motion and Procedures Order. (See Affidavit of Service of First Extension Motion [Dkt. No. 9039]; Affidavit of Service of Procedures Order [Dkt. No. 9141].)

> **B.      Reorganized Debtors Commence Adversary Proceeding Against Intec Group**

8.      On September 26, 2007, the Reorganized Debtors filed a complaint (the "Original Complaint") in this adversary proceeding under seal with the Court. The Original Complaint sought to recover the Subject Transfer pursuant to Sections 547 and 550 of the Bankruptcy Code. (Original Compl., ¶ 3.) Intec Group again received no notice, actual or otherwise, of the filing of the Original Complaint, nor can Intec Group confirm that the sealed Original Complaint was actually filed prior to the expiration of the applicable statute of limitations. (Nov. Dishong Aff., ¶ 9.)

9.      On September 29, 2007, the Reorganized Debtors also filed under seal with the Court a complaint against Intec Mexico, styled as *DPH Holdings Corp. v. Intec Mexico*, Adv. Pro. No. 07-02528-RDD (the "Intec Mexico Case"). However, by order dated September 22, 2010, the Reorganized Debtors dismissed, with prejudice, such adversary proceeding (the "Mexico Case Order") [Intec Mexico Adv. Dkt. No. 8].

C.    **First Amended Joint Plan Of Reorganization**

10.    On or about December 10, 2007, again without notice to or knowledge by Intec Group, the Reorganized Debtors filed their First Amended Joint Plan of Reorganization (the "Plan") [Dkt. No. 11386], which was confirmed by order of the Court dated January 25, 2008 (the "Confirmation Order") [Dkt. No. 12359].  The Plan provided for, among other things, the payment in full of allowed general unsecured claims against the Reorganized Debtors. Additionally, Exhibit 7.24 to the Plan, which set forth causes of actions the Reorganized Debtors sought to retain, did not reference Intec Group, any of the other Intec entities or the Original Complaint.[3]

D.    **Intec Group Received No Notice Of Second Extension
Motion Or Second Extension Order**

11.    By motion dated February 28, 2008 (the "Second Extension Motion") [Docket No. 12922], the Reorganized Debtors sought a second extension of the deadline to serve process in respect of certain avoidance actions.  The stated purpose for this extension was to (a) "enable the Debtors to fulfill their fiduciary responsibility to preserve valuable estate assets in a manner that would not unnecessarily disrupt the emergence process or the Debtors' current business relationships with potential defendants that are necessary to the Debtors' ongoing operations" and (b) to reduce the "administrative and economic burdens" of the adversary proceedings on the Reorganized Debtors, the Court and the defendants.  (Second Extension Motion, ¶ 21.)

---

[3] Section 14.3 of the Confirmed Plan and Modified Plan (as defined below) provide, among other things, that the Reorganized Debtors "may alter, amend, or modify any Exhibits to this Plan under Section 1127(a) of the Bankruptcy Code **at any time prior to the Confirmation Date**."  (Emphasis added).  The Confirmation Date was January 25, 2008.  Thus, after January 25, 2008, the Reorganized Debtors had no authority under the Modified Plan to amend or supplement Exhibit 7.24 (renumbered as Exhibit 7.19 in the Modified Plan).

12.    The Second Extension Motion also reaffirmed that the Reorganized Debtors would "not retain any of the causes of action asserted in the [a]dversary [p]roceedings [filed under seal] except those specifically listed on Exhibit 7.24 to the Plan." (Id., ¶ 17).  In fact, the Reorganized Debtors explicitly stated that only those causes of action relating to Laneko Engineering Co., Wachovia Bank, National Association, Laneko Engineering Co. Inc. and their affiliates and subsidiaries (collectively, the "Laneko Defendants") were subject to the Procedures Order.  (Id., ¶ 17, n.4).  This admission was confirmed by the Court during an exchange with Reorganized Debtors' counsel, wherein the Court noted that:  "[t]he plan [only] reserve[d] or retain[ed] the ability to pursue a very small number of avoidance actions."  (March 19, 2008 Tr. p. 22, annexed to the Motion to Dismiss as Exhibit C.)

13.    On March 28, 2008, once again without notice to or knowledge by Intec Group, this Court granted the Second Extension Motion (the "Second Extension Order") [Dkt. No. 13277].  (May Dishong Aff., ¶ 11.)  This is further confirmed by the affidavits of service in respect of both the Second Extension Motion and Second Extension Order.  (See Affidavit of Service of Second Extension Motion [Dkt. No. 12970]; Affidavit of Service of Second Extension Order [Dkt. No. 13315].)

     **E.    Intec Group Received No Notice Of Third Extension
        Motion Or Third Extension Order**

14.    On April 4, 2008, the Reorganized Debtors announced that the plan investors had refused to fund the Plan and therefor exit financing was no longer available.  Only days later (on April 10, 2008), the Reorganized Debtors rushed in to Court and filed yet another extension motion, seeking this time to extend the service deadline until 30 days after substantial consummation of the Plan (the "Third Extension Motion") [Dkt. No. 13361].    This

announcement had the practical effect of extending the statute of limitations period indefinitely, a fact that was not lost upon the Reorganized Debtors and prejudices Intec Group.

15.    As with the prior relief, the Third Extension Motion provided that only claims related to the Laneko Defendants were subject to the Procedures Order.  (Third Extension Motion, ¶ 18, n.4).  But, unlike Intec Group, the Laneko Defendants actually received notice of the Procedures Order.  (Id.; see Affidavit of Service [Dkt. No. 13415]).  In fact, during oral argument, Reorganized Debtors' counsel represented to the Court that:

> [the] reasons we gave specific notice to Lenico (*sic*) and Wachovia was because those were the only two parties that had been identified under Exhibit 7.24 of the plan as having the avoidance actions preserved under the plan and, therefore, we gave particularized notice to them of the relief sought by the debtors.

(April 30, 2008 Tr. pp. 11-12, annexed to the Motion to Dismiss as Exhibit D).

16.    On April 30, 2008, despite the critical nature of this relief, Intec Group (again) received no notice, actual or otherwise, that the Court approved the Third Extension Motion (the "Third Extension Order") [Dkt. No. 13484].  This is (again) confirmed by the affidavits of service in respect of both the Third Extension Motion and Third Extension Order.  (See Affidavit of Service [Dkt. No. 13415]; Affidavit of Service [Dkt. No. 13540].)

**F.    Intec Group Received No Notice Of Fourth Extension
        Motion Or Fourth Extension Order**

17.    On October 2, 2009, more than two years after the Original Complaint was filed, the Reorganized Debtors sought yet another extension, this time another 180 days after substantial consummation of the Plan (the "Fourth Extension Motion," and together with the First Extension Motion, the Second Extension Motion and the Third Extension Motion, collectively, the "Extension Motions") [Dkt. No. 18952].

18.    The Reorganized Debtors argued that this further extension was necessary because, unlike before, they now intended to prosecute 177 of the complaints filed under seal. The Reorganized Debtors claimed that an extension "would reduce the administrative and economic burdens of the [retained adversary proceedings] on the Debtors and the potential defendants." (Id., ¶ 19.)

19.    On October 22, 2009, again without notice to or knowledge by Intec Group, this Court granted the Fourth Extension Motion (the "Fourth Extension Order") [Dkt. No. 18999].

20.    Despite the continued prejudice, Intec Group once again never received notice, actual or otherwise, of the Fourth Extension Motion or the order approving the relief therein. (May Dishong Aff., ¶ 11.)  This is again confirmed by the affidavit of service in respect of the Fourth Extension Motion.  (See also Affidavit of Service [Dkt. No. 18967]).

### G.    The Modified Plan

21.    On October 3, 2008, the Reorganized Debtors filed a Motion for Order (I) Approving Modifications To Debtors' First Amended Plan Of Reorganization (As Modified) And Related Disclosures And Voting Procedures And (II) Setting Final Hearing Date To Consider Modifications To Confirmed First Amended Plan Of Reorganization [Dkt. No. 14310], which sought approval of material modifications to the Plan, including, a material reduction in recoveries for general unsecured creditors.

22.    On June 16, 2009, the Reorganized Debtors filed their First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors, and Debtors-In-Possession (As Modified) (the "Modified Plan") [Dkt. No. 17030].  On July 2, 2009, after the voting deadline had passed, the Reorganized Debtors filed revised exhibits to the Modified Plan [Dkt. No. 17557].  Those exhibits included, among others, Exhibit 7.19, which set forth an updated list of retained causes of action.  However, such causes of action were identified only by

10

adversary number and not by defendant name, which prevented any defendant, including Intec Group, from determining its impact.

23.    On July 30, 2009, the Court entered an order approving the Modified Plan, which became effective on October 6, 2009.  [Dkt. No. 18707].

### H.    Reorganized Debtors Finally Serve The Original Complaint Four And One Half Years Later

24.    Without any notice or knowledge that a sealed complaint had been filed against it (or notice of any of the Extension Motions or Extension Orders), Intec Group was served in March 2010 with the Original Complaint.  Such service was made more than two and one half years after the expiration of the statute of limitations and four and one half years after receipt of the Subject Transfer.

25.    As a direct result of the Reorganized Debtors' delay tactics, Intec Group's ability to defend itself in this proceeding has been unduly prejudiced.  Among other things, Intec Group never (a) organized and preserved any of its records with respect to the Reorganized Debtors, (b) held exit interviews with any former employees knowledgeable about the Reorganized Debtors' business and these transactions or (c) maintained communications with those former employees to the extent needed as witnesses or for discovery purposes.  (Nov. Dishong Aff., ¶ 10.)

### I.    Dismissal Procedures Order

26.    On March 23, 2010, this Court consolidated this action with the other similarly situated avoidance actions and established procedures for the purpose of adjudicating pending and soon-to-be-filed motions to dismiss pursuant to the Order Establishing Certain Procedures with Respect to Pending Motions to Dismiss Adversary Proceedings (the "Dismissal Procedures Order") [Dkt. No. 19947].

### III.    Intec Group's Motion To Dismiss

27.    On March 14, 2010, Intec Group filed its Motion to Dismiss and accompanying Memorandum of Law [Adv. Dkt. No. 23] seeking, among other things, to dismiss with prejudice the Original Complaint.

28.    On June 7, 2010, the Reorganized Debtors filed their Omnibus Response to Motion Seeking, Among other Forms of Relief, Orders to Vacate Certain Procedural Orders Previously Entered by This Court and to Dismiss the Avoidance Actions Against the Moving Defendants [Adv. Dkt. No. 25].

29.    On July 22, 2010, the Court held a hearing on the first wave of defendants' motions to dismiss, including Intec Group's Motion to Dismiss.  On September 7, 2010, the Court entered its Order Granting in Part First Wave Motions to Dismiss (the "Dismissal Order") [Adv. Dkt. No. 29] which, among other things, dismissed without prejudice the Original Complaint for failure to plead sufficient facts to state a claim.  (Dismissal Order, ¶ 4.)  The Dismissal Order also required the Reorganized Debtors, among other things, to file a motion for leave to amend the complaint in each adversary proceeding they intended to pursue and to include "*a proposed amended complaint that, for each alleged transfer shall set forth, at a minimum, the transferor, the transferee, any known subsequent transferee against whom relief is sought, the antecedent debt and which Reorganized Debtor is the plaintiff.*"  (Id.) (emphasis added.)  The Dismissal Order also confirmed that the Reorganized Debtors had abandoned claims against foreign suppliers and that all causes of action against foreign suppliers were dismissed with prejudiced.  (Id., ¶ 3.)

### IV.    Reorganized Debtors' Motion To Amend The Original Complaint

30.    On September 7, 2010, the Reorganized Debtors filed their Motion to Amend with respect to the Original Complaint and included therewith a proposed amended complaint

against Intec Group (the "Amended Complaint").  The Reorganized Debtors did not seek leave

to pursue an amended complaint on behalf of any plaintiff other than DAS, or against any Intec

entity other than Intec Group.

31.    While the Reorganized Debtors cured certain deficiencies in the Original

Complaint, the Amended Complaint fails to identify, in violation of this Court's Dismissal

Order, any of the antecedent debt(s) on account of which the Subject Transfer was made.

Specifically, the Amended Complaint alleges that:

> Plaintiff made, or caused to be made, each Transfer listed on
> Exhibit 1 for, or on account of, an antecedent debt owed to
> Defendant as of the date on which each Transfer was made. *The
> documents evidencing the antecedent debt include the purchase
> orders and/or invoices/bills of lading identified on Exhibit 1*, which
> purchase orders and/or invoices/bills of lading include evidence of
> the amount of the antecedent debt and the approximate dates the
> subject goods contemplated by the Agreements were ordered by
> Plaintiff pursuant to the Agreements and/or were provided by
> Defendant.

(Amended Comp., ¶ 22.) (emphasis added).  However, Exhibit 1 to the Amended Complaint

(annexed hereto as Exhibit C) is void of any details (i.e., a blank space) regarding the "Purchase

Order/Invoice Number/Antecedent Debt" or the "Purchase Order/Invoice."    The only

information provided is the date and amount of the wire comprising the Subject Transfer, which

does not represent an antecedent debt(s).  In fact, nowhere in the Amended Complaint is there

any information, let alone evidence, regarding the alleged antecedent debt(s) and mandated by

this Court.

32.    The Amended Complaint also fails to allege any facts supporting DAS' allegation

that it was insolvent at the time of the Subject Transfer.  Rather, the Amended Complaint badly

asserts that "[p]ursuant to Bankruptcy Code section 547(f), for purposes of this Adversary

**ARGUMENT**

I.    **Legal Standards**

33.    Leave to amend under Fed. R. Civ. P. 15 is not granted automatically and should be permitted only in the absence of, among other things, undue prejudice to the opposing party or futility of amendment.  See Foman v. Davis, 371 U.S. 178, 182 (1962); see also McCarthy v. The Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007 ("A district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party."); AEP Energy Servs. Gas Holding Co. v. Bank of America, N.A., 2010 WL 4261227, at *23 (2d Cir. 2010) ("Leave to amend may be denied on grounds of futility if the proposed amendment fails to state a legally cognizable claim or fails to raise triable issues of fact."); Rodriguez v. Diaz, 2010 WL 1838814, at *5 (S.D.N.Y. 2010) ("Futility generally turns on whether the proposed amended pleading states a viable claim.").

34.    Likewise, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend." Ruffolo v. Oppenheimer & Co., 987 F.2d 129, 131 (2d Cir. 1993).  For example, "it is proper to deny leave to replead where there is no merit in the proposed amendments or amendment would be futile." Hunt v. Alliance N. Am. Gov't Income Trust, Inc., 159 F.3d 723, 728 (2d Cir. 1998).  Courts thus are justified in denying leave to amend where, as here, proposed amendments cannot withstand a motion to dismiss or fail to comply with a court's order regarding required allegations.  Ruffolo, 987 F.2d at 131 (affirming denial of leave to amend where proposed amendment failed to allege necessary facts); McLaughlin v. Anderson, 962 F.2d 187, 195 (2d Cir. 1992) (affirming denial of leave to amend where proposed amendment failed to comply with court's order).

35.     Pursuant to Fed. R. Civ. P. 8(a)(2), a pleading must contain, among other things, a "short and plain statement of the claim showing that the pleader is entitled to relief…."  The Supreme Court, in <u>Twombly</u> and <u>Iqbal</u>, clarified this standard in evaluating the adequacy of a pleading under such rule.

36.     In <u>Twombly</u>, the Supreme Court expressly held that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  <u>Twombly</u>, 550 U.S. at 555 (<u>quoting</u> <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986)).  Indeed, "[f]actual allegations must be enough to raise a right to relief above the speculative level…."  <u>Id</u>. (internal citation omitted).  "Rule 8(a) contemplate[s] the statement of circumstances, occurrences, and events in support of the claim presented and does not authorize a pleader's bare averment that he wants relief and is entitled to it."  <u>Id</u>. at 556, n.3 (internal citation omitted).

37.     In <u>Iqbal</u>, the Supreme Court expanded such pleading requirements, holding that a complaint fails as a matter of law "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement,'" and that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  <u>Iqbal</u>, 129 S.Ct. at 1950 (<u>quoting</u> <u>Twombly</u>, 550 U.S. at 557).  <u>Id</u>.  Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'the pleader is entitled to relief.'"  <u>Id</u>. (<u>quoting</u> Fed. R. Civ. P. 8(a)(2)).

38.     As demonstrated below, the Reorganized Debtors' Motion to Amend is unlikely to be productive and otherwise fails to show that the estate is entitled to such relief.

II.    **Reorganized Debtors' Motion To Amend Should Be Denied
Because Granting Such Relief Would Be Futile**

39.    This Court should deny the Reorganized Debtors' Motion to Amend because the

proposed Amended Complaint fails to (a) satisfy the pleading requirements set forth in Twombly

and Iqbal and (b) comply with this Court's direction set forth in the Dismissal Order.

40.    As described above, the Amended Complaint fails to identify any antecedent

debt(s) on account of which the Subject Transfer was made.  Despite the Reorganized Debtors'

allegation that "[t]he documents evidencing the antecedent debt include the purchase orders

and/or invoices/bills of lading identified on Exhibit 1," Exhibit 1 is blank and contains no details

regarding the "Purchase Order/Invoice Number/Antecedent Debt" or the "Purchase

Order/Invoice."  (See Amended Comp., ¶ 31.)  Moreover, the only description is the date and

amount of the Subject Transfer.  This is not evidence, let alone evidence of an antecedent debt.

Thus, under Rule 8(a), as clarified by Twombly and Iqbal, such conclusory statements and lack

of evidence warrant denial of leave to amend.  This is bolstered by the fact that the Amended

Complaint violates this Court's Dismissal Order by failing to, at a minimum, set forth the

antecedent debt(s).  Accordingly, this Court should deny leave to amend and dismiss with

prejudice this proceeding.  (Dismissal Order, ¶ 4.)

41.    The Amended Complaint also fails to tender any facts establishing DAS'

insolvency at the time of the Subject Transfer.  As discussed above, the Amended Complaint

baldly states that "[p]laintiff is presumed to have been, and was in fact, insolvent at the time the

Transfers were made."  (Amended Compl., ¶ 23.)  Such statement is nothing more than a

"formulaic recitation" of a legal conclusion of the insolvency element under Section 547(b)(3).

See, e.g., Twombly, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the 'grounds' of his

'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of

the elements of a cause of action will not do.")  (quoting Allain, 478 U.S. at 286).  As this Court

noted when it dismissed the Original Complaint, such conclusory pleading is impermissible and

fails to meet today's pleading requirements.

42.    Accordingly, the Amended Complaint fails to state a claim for relief under

Section 547(b) of the Bankruptcy Code, and the Reorganized Debtors' Motion to Amend should

be denied.

### III.    Reorganized Debtors' Motion To Amend Is Also Futile Because Intec Group Has Complete Defenses To The Amended Complaint

43.    *Assuming arguendo* that the proposed Amended Complaint complies with the

pleading standards under Fed. R. Civ. P. 8(a), it is still futile to grant leave to amend because

Intec Group has complete defenses to the cause of action asserted in the Amended Complaint.

As explained below, the Amended Complaint improperly (a) seeks to recover transfers that were

not made on account of antecedent debts, (b) seeks to recover transfers that were for or on

account of obligations owed to Intec Group from parties other than DAS, (c) alleges that the

Subject Transfer enabled Intec Group to receive more than it would have received in a chapter 7

liquidation, (d) seeks to recover transfers made to or for the benefit of a foreign supplier despite

such relief having been dismissed by this Court and (e) seeks to recover transfers made to or for

the benefit of non-defendants Intec Mexico and A.I. Technologies.

44.    First, as discussed above, the Advance Transfer was a payment in advance and

not payment for or on account of an antecedent debt.  (Nov. Dishong Aff., ¶ 8(a).)  By definition,

a transfer is avoidable as a preference only if such transfer is "for or on account of an antecedent

debt…."   11 U.S.C. § 547(b)(2).   While the term "antecedent debt" is not defined in the

Bankruptcy Code, a debt is "antecedent" if it is incurred prior to the transfer.  See, e.g., Warsco

v. Preferred Technical Group, 258 F.3d 557, 569 (7th Cir. 2001).  Advance payments are not

considered payments on account of an "antecedent debt" and, therefore, are not avoidable as preferences. See e.g., Rooster, Inc. v. Roy (In re Rooster, Inc.), *127 B.R. 560, 567 (Bankr. E.D.Pa. 1991)* (prepayments on silk orders not on account of an antecedent debt); In re Aldridge, 94 B.R. 589 (Bankr. W.D.Mo. 1988) (early payments on installment note not on account of an antecedent debt); In re Wall Tire Distribs., Inc., 116 B.R. 867, 871 (Bankr. M.D.Ga. 1990) (equipment lease payments required to be paid in advance of the first day of each month under the lease agreement not made on account of an antecedent debt). Accordingly, the Advance Transfer cannot be recovered under Sections 547 and 550 of the Bankruptcy Code.

45.    Second, the Third Party Obligor Transfer was made on account of obligations owed to Intec Group from third parties Delco Electronics and Delphi Energy & Chassis, and not from any obligation(s) of DAS. (Nov. Dishong Aff., ¶ 8(b).) Pursuant to Section 547(b)(2), a debtor may recover only those transfers for or on account of an antecedent debt *owed by that same debtor*. 11 U.S.C. §547(b)(2). Courts have routinely found that where an obligation satisfied is not owed by the debtor that makes the transfer, there is no preference under Section 547(b). See Official Comm. of Unsecured Creditors of Enron Corp. v. Whalen (In re Enron Corp.), 357 B.R. 32, 49 (Bankr. S.D.N.Y. 2006) ("Only those transfers on account of an antecedent debt owed by the debtor are subject to avoidance under section 547(b); transfers on account of an antecedent debt owed by a third-party are not."); Barber v. Riverside Int'l Trucks, Inc. (In re Pearson Indus., Inc.), 142 B.R. 831, 845 (Bankr. C.D. Ill. 1992) ("Where an obligation of the debtor is satisfied with property of a third party, or where the obligation which is satisfied is not owed by the debtor, there is no transfer which is subject to recovery."); In re Grove Peacock Plaza, Ltd., 142 B.R. 506, 513 (Bankr. S.D. Fla. 1992) ("No transfer of property of the debtor occurs when a third party pays the creditor directly.... 'It is essential that the debtor have

an interest in the property transferred so that the estate is thereby diminished.'") (citations omitted) (quoting Coral Petroleum, Inc. v. Banque Paribas-London, 797 F.2d 1351, 1355-56 (5th Cir. 1986)).

46.    Accordingly, the Third Party Obligor Transfer cannot be recovered under Sections 547 and 550 of the Bankruptcy Code.

47.    Third, contrary to the bald allegations in the Amended Complaint (¶ 24), Intec Group will not receive more than it would have received if this case was administered under chapter 7 of the Bankruptcy Code.  As described above, Intec Group is a fully secured creditor by virtue of the Statutory Liens its possesses on the Tooling located in Illinois and Indiana, which Tooling had a value, as of the date of the Subject Transfer, of not less than $2,500,000.00. (Nov. Dishong Aff., ¶ 6; see also Illinois Tool and Die Lien Act, 770 ILCS 105, et seq.; Indiana Code, IND. CODE ANN. §§ 32-33-16-0.5, et seq.)  As a result, Intec Group will not receive, by virtue of the Subject Transfer, more than it would have received in a chapter 7 liquidation.  See Savage & Associates, P.C. v. County of Fairfax (In re Teligent Services, Inc.), No. 06 C 03721, 2009 WL 2152320, at *4 (S.D.N.Y. July 17, 2009) ("[P]ayments on account of secured debts are not preferential.").  Accordingly, the Subject Transfer is not recoverable under Sections 547 and 550.

48.    Fourth, the Amended Complaint improperly seeks to avoid and recover the Intec Mexico Transfer notwithstanding that the Reorganized Debtors abandoned those claims pursuant to this Court's Dismissal Order and the Mexico Case Order.  As discussed above, the Intec Mexico Case was dismissed *with prejudice*, and it is disingenuous for the Reorganized Debtors to attempt a "back door" recovery of such transfers.  Accordingly, such relief must be denied.

19

49.    Finally, the Amended Complaint improperly seeks to recover the Third Party Transferee Transfer, which was made to or for the benefit of non-defendant transferees, A.I. Technologies and Intec Mexico.  Pursuant to Section 550(a) of the Bankruptcy Code, a debtor may recover avoidable transfers only from "(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or (2) any immediate or mediate transferee of such initial transferee."  11 U.S.C. § 550(a); see also Christy v. Alexander & Alexander of New York (In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey), 130 F.3d 52, 55-56 (2d Cir. 1997).  As described herein, Intec Group was a mere conduit of the Third Party Transferee Transfer, and neither an "initial transferee" of the Third Party Transferee Transfer, nor an entity for whose benefit the Third Party Transferee Transfer was made.  Finley, 130 F.3d at 56-57.  Accordingly, DAS may not recover the Third Party Transferee Transfer from defendant Intec Group.

## IV.    Motion To Amend Should Be Denied Due To Undue Prejudice To Intec Group

50.    In determining whether leave to amend should be granted, a "court [is] required to take into account any prejudice that might result to the party opposing the amendment."  Ansam Assocs., Inc. v. Cola Petroleum, Ltd., 760 F.2d 442, 446 (2d Cir. 1985) (quoting Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 330-31, 91 S.Ct. 795, 802, 28 L.Ed.2d 77 (1971)); see also AEP Energy Servs. Gas Holding Co. v. Bank of America, N.A., 2010 WL 4261227, at *22 (2d Cir. 2010) (noting that "prejudice to the opposing party resulting from a proposed amendment [is] among the 'most important' reasons to deny leave to amend").

51.    One form of prejudice is the unreasonable delay by the plaintiff in prosecuting the action.  Indeed, courts regularly recognize that "[f]ailure to use reasonable diligence in serving a summons is more fraught with possibilities of unfairness and abuse than failure to diligently

prosecute an action after summons is served." Richardson v. United White Shipping Co., 38 F.R.D. 494, 495-96 (N.D. Cal. 1965) (dismissal where service perfected 28 months after the filing of the action). This is because such delay "affects all the defendant's preparations." Anderson v. Air West, Inc., 542 F.2d 522, 525 (9th Cir. 1976) (dismissal under Rule 41(b) based on failure to serve for a year despite entry of order extending service period); Farhang v. Indian Inst. of Tech., 2010 U.S. Dist. LEXIS 53975, at *14-15 (N.D. Cal. June 1, 2010) (delayed service prejudiced defendant "by depriving him of the opportunity to engage in earlier preparation and participation in the suit…").

52.    As discussed above, at no point prior to the service of the Original Complaint did Intec Group have any indication, let alone notice or knowledge, that the Reorganized Debtors not only "preserved" their ability to avoid the Subject Transfer, but had actually filed a sealed complaint against Intec Group, despite the statute of limitations having expired long ago. In fact, all of the Extension Motions and Extension Orders were entered without any opportunity by the Intec entities to assess and respond thereto, despite the significant impact of such relief. See, e.g., Zapata v. New York, 502 F.3d 192, 198 (2d Cir. 2007) ("It is obvious that any defendant would be harmed by a generous extension of the service period beyond the limitations period for the action, especially if the defendant had no actual notice of the existence of the complaint until the service period had expired...."); Redding v. Essex Crane Rental Corp. of Alabama, 752 F.2d 1077, 1078 (5th Cir. 1985) (holding that it was an "obvious misuse of the judicial process" to prevent defendant from learning of action by failing to serve).

53.    Further, because Intec Group had no notice or knowledge of this proceeding until five years after the Subject Transfer was made, it undertook no special steps to (a) organize and preserve its records with respect to the Reorganized Debtors, (b) hold exit interviews with any

former employees knowledgeable about the Reorganized Debtors' business and these transactions or (c) maintain communications with those former employees to the extent needed as witnesses or for discovery responses.  (Nov. Dishong Aff., ¶ 10.)  In fact, Intec Group has likely lost records and employees, and failed to put aside adequate reserves.  (Id.)

54.    Taken as a whole, the foregoing acts and omissions have without question prejudiced Intec Group's ability to defend itself in this adversary proceeding.  The Motion to Amend does not cure such prejudice and it would cause further harm to Intec Group if this proceeding were permitted to continue under such circumstances.  Accordingly, leave to amend should be denied.

## V.    **Intec Group Would Be Further Prejudiced Because Amended Complaint Is Barred By The Statute of Limitations, Laches and Judicial Estoppel**

55.    Intec Group would be further prejudiced if the Reorganized Debtors were granted leave to file the Amended Complaint because the Amended Complaint, like the Original Complaint, is barred by the expiration of the statute of limitations, laches and judicial estoppel. (See Motion to Dismiss.)

56.    As discussed above, due to the numerous procedural deficiencies underlying the Reorganized Debtors' commencement of this adversary proceeding and service of the Original Complaint, the Extension Orders should be vacated with respect to Intec Group, and the extensions granted therein deemed null and void.  The rules permitting extensions of time to serve complaints and the sealing of documents are intended to give debtors some latitude in the protection of their assets, but the rules are not boundless, and certainly not intended to more than double the limitations set forth in Section 546(a) of the Bankruptcy Code.

57.    Here, the Reorganized Debtors' deadline to commence an adversary proceeding against Intec Group to avoid a certain allegedly preferential transfer expired on or before

October 14, 2007. The Reorganized Debtors, however, did not serve Intec Group with the Original Complaint until almost two and a half years later (in March 2010) as a result of the multiple extensions of time obtained by their Extension Motions. To the extent the Extension Orders are voided with respect to Intec Group, the Reorganized Debtors have failed to adequately preserve their claims within the statute of limitations period set forth in Section 546(a), thus the Amended Complaint should be barred. The Motion to Amend does not alter this fact, nor could it.

58.    The Original Complaint is also barred by laches. (See Motion to Dismiss.) As described above, Intec Group had no knowledge that the Reorganized Debtors would assert the preference claim against it, let alone two and a half years after the statute of limitations had expired. The Reorganized Debtors had ample opportunity to assert the preference claim against Intec Group, but they instead chose to conceal that claim until after expiration of the statute of limitations. For the reasons discussed herein and in the Motion to Dismiss, Intec Group would be severely prejudiced if the Reorganized Debtors were granted leave to amend the Original Complaint and prosecute this action against Intec Group. Accordingly, the Motion to Amend should be denied because the Original Complaint (and the Amended Complaint) is barred by laches.

59.    The Original Complaint is also barred by judicial estoppel. (See Motion to Dismiss.) As described above, the Reorganized Debtors have repeatedly represented to the Court that they intended only to pursue avoidance actions against the Laneko Defendants. However, many years later, the Reorganized Debtors now seek leave to amend the Original Complaint in order to take a position opposite to the litigation that had been pending (albeit

under seal) before this Court.  The doctrine of judicial estoppel bars the Reorganized Debtors from pursuing such relief.  Accordingly, leave to amend should be denied.

## VI.    Intec Group Incorporates All Applicable Arguments Raised By Other Defendants In Their Responses And Oppositions To Reorganized Debtors' Motion To Amend

60.    Numerous other oppositions and responses to the Reorganized Debtors' Motion to Amend have been filed by other similarly situated defendants.  These oppositions and responses seek the denial of the Motion to Amend on various legal grounds, including those raised here. Because the facts surrounding those actions are, in many respects, substantially similar to the facts here, Intec Group hereby joins in, adopts and incorporates by reference all applicable arguments raised by the other defendants in their oppositions and responses to those Motions to Amend.

61.    Additionally, to the extent the arguments raised in the Motion to Dismiss and raised by defendants in the various avoidance actions were not ruled upon at the July 22nd Hearing or pursuant to the Dismissal Order, Intec Group hereby reasserts and incorporates herein by reference all such applicable arguments and applicable facts.

## RESERVATION OF RIGHTS

62.    Intec Group reserves its rights to raise at the hearing on the Reorganized Debtors' Motion to Amend any other responses to the relief sought therein, including, without limitation, any responses filed by the Reorganized Debtors and/or any other party in interest.

## CONCLUSION

63.    The Motion to Amend seeks leave to file an Amended Complaint that fails to plead facts sufficient to state a cause of action under Section 547(b) of the Bankruptcy Code, despite this Court's express requirement that any amended complaint set forth certain "minimum" requirements, including identification of all antecedent debts.  The Reorganized

Debtors' failure to comply with the Court's Dismissal Order and the pleading standards under Twombly and Iqbal, alone, require denial of the Motion to Dismiss.  However, denial of the Motion to Amend is also proper under the circumstances because Intec Group has a complete defense to the claim asserted in the Amended Complaint, rendering the Amended Complaint futile.  Finally, this Court should deny leave to amend the Complaint because there is simply no basis to ignore the myriad of procedural deficiencies underlying the Reorganized Debtors' commencement of this adversary proceeding and service of the Original Complaint.

64.    Accordingly, for all of the reasons set forth above, the Motion to Amend should be denied and this adversary proceeding should be dismissed, both with prejudice.

Dated:  November 24, 2010          VEDDER PRICE P.C.
        New York, New York

                                   By:  */s/ Michael L. Schein*
                                   _____
                                        Michael L. Schein (MS-0241)
                                        1633 Broadway, 47th Floor
                                        New York, New York  10019
                                        Tel. No.   (212) 407-7700
                                        Fax No.   (212) 407-7799
                                        Email:  mschein@vedderprice.com

                                        - and –

                                        Stephanie K. Hor-Chen (SH-3374)
                                        222 North LaSalle Street, Suite 2600
                                        Chicago, IL  60601-1003
                                        Tel. No.   (312) 609-7500
                                        Fax No.   (312) 609-5005
                                        Email:  schen@vedderprice.com