Hearing Date and Time:  February 17, 2011 at 10:00 a.m. (prevailing Eastern time)
Reply deadline: January 28, 2011 at 4:00 p.m. (prevailing Eastern time)

BARNES & THORNBURG LLP
One North Wacker Drive, Suite 4400
Chicago, Illinois 60606
Telephone:  (312) 357-1313
Facsimile:  (312) 759-5646

Deborah L. Thorne (admitted *pro hac vice*)
Kathleen L. Matsoukas (KL-1821)
Email: deborah.thorne@btlaw.com
        kathleen.matsoukas@btlaw.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | ) Chapter 11 |
| DELPHI CORPORATION, *et al.*, | ) No. 05-44481 (RDD) |
| Reorganized Debtors. | ) Jointly Administered |
| DELPHI CORPORATION, *et al.* | ) |
| Plaintiffs, | ) Adv. Pro. No. 07-2348 |
| -against- | ) |
| JOHNSON CONTROLS, JOHNSON CONTROLS BATTERY GROUP, JOHNSON CONTROLS GMBH & CO. KG and JOHNSON CONTROLS, INC. | ) |
| Defendants. | ) |

**DEFENDANTS JOHNSON CONTROLS, JOHNSON CONTROLS BATTERY GROUP,
AND JOHNSON CONTROLS INC.'S OBJECTION TO PLAINTIFF'S MOTION FOR
LEAVE TO FILE A FIRST AMENDED COMPLAINT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iv

PRELIMINARY STATEMENT ..........................................................................................1

STATEMENT OF FACTS ...................................................................................................2

      A.     The Debtors File Their Chapter 11 Case and Proposed Plan...................................2

      B.     The Debtors Fail to Give JCI Notice of Any of the Motions to Preserve the Avoidance Claims and/or Extend Time to Serve Those Claims............................3

            1.    The First and Second Extension Motions. .................................................3

            2.    The Third Extension Motion.......................................................................6

            3.    The Modified Plan and the Fourth Extension Motion ................................7

            4.    The Debtors serve the Complaint on JCI in March 2010, approximately two and a half years after it was filed under seal................8

      C.     The Court dismisses Plaintiff's Complaint against JCI.............................................9

      D.     Plaintiff files its Motion to file the First Amended Complaint.............................10

ARGUMENT......................................................................................................................10

I.      STANDARD OF REVIEW ......................................................................................10

II.     PLAINTIFF'S MOTION FAILS BECAUSE THE REMAINING CLAIMS ALLEGED IN THE PROPOSED FIRST AMENDED COMPLAINT WOULD NOT SURVIVE A MOTION TO DISMISS UNDER RULE 12(B)(6)..........................11

      A.     Plausibility standard under Rule 12(b)(6) and Rule 8 ..........................................11

      B.     Rule 12(b)(6) and 11 U.S.C. § 547 ......................................................................12

      C.     The Motion must be denied because Plaintiff fails to sufficiently identify the allegedly preferential transfers and the antecedent debt that accounts for those transfers...............................................................................................14

            1.    The numbers provided by Plaintiff in Exhibit 2 are meaningless to JCI, and do nothing to identify the antecedent debt....................................14

2.   Exhibit 1 and Exhibit 2 are internally inconsistent, casting further
doubt on Plaintiff's antecedent debt allegations. ........................................ 17

3.   Without more information, JCI will be unable to respond to the
proposed FAC, if filed. ............................................................................ 17

D.   The Motion must also be denied because Plaintiff's own filings
demonstrate that Plaintiff was not insolvent at the time of the transfers. ............. 17

E.   No leave should be granted to allow Debtors another opportunity to
amend. .......................................................................................................... 19

III.   THE MOTION SHOULD BE DENIED AS BARRED BY THE STATUTE OF
LIMITATIONS BY THE OPERATION OF RULE 4(M) TO VOID THE
EXTENSION ORDERS. ................................................................................... 20

A.   The lack of notice to JCI of the Extension Motions and the lack of service
of the Complaint for over four years renders the orders unenforceable. ............... 21

1.   Rule 4(m) is not a proper mechanism for extending the statute of
limitations. ............................................................................................... 21

2.   In other cases in which courts allowed extensions based on Rule
4(m), notice was given to the potential defendants. .................................... 23

3.   The Extension Orders granted here should be vacated. ............................ 24

B.   The Court is free to vacate the Extension Orders. ................................................. 26

C.   The Motion should be denied because the proposed FAC is barred by the
two-year statute of limitations applicable to avoidance actions. .......................... 27

IV.   THE JCI DEFENDANTS INCORPORATE ALL APPLICABLE ARGUMENTS
RAISED BY OTHER DEFENDANTS IN THEIR OPPOSITION
MEMORANDA. ................................................................................................ 29

CONCLUSION ................................................................................................................. 30

iii

## TABLE OF AUTHORITIES

### CASES

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87 (2d Cir. 2007).........................12

*Adams v. AlliedSignal General Aviation Avionics*, 74 F.3d 882 (8th Cir. 1996)..........................22

*Akers v. Koubourlis*, 869 F.2d 1319 (9th Cir. 1989)......................................................18

*Angell v. BER Care, Inc. (In re Caremerica, Inc.)*, 409 B.R. 737 (Bankr. E.D.N.C. 2009)..........15

*Ashcroft v. Iqbal*, 556 U.S. ---, 129 S. Ct. 1937 (2009) ......................................1, 12, 14, 16, 18 19

*Bank of America National Trust & Sav. Association v. 203 N. La Salle Partnership*, 526
    U.S. 434 (1999)..............................................................................................19

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................1, 12, 14, 16, 19

*City of New York v. New York, N.H. & H. R.R. Co.*, 344 U.S. 293 (1953).............................25, 26

*Cleveland Board of Ed. v. Loudermill*, 470 U.S. 532 (1985) .......................................25

*Crown Cork & Seal Co. v. Parker*, 462 U.S. 345 (1983) ............................................27

*Feltman v. Keybank, N.A. (In re Levitt and Sons, LLC)*, No. 07-19845-BKC-RBR, 2010
    WL 1539878 (Bankr. S.D. Fla. Apr. 16, 2010) .......................................13

*Foman v. Davis*, 371 U.S. 178 (1962) ...................................................................11

*In re Fugazy Express, Inc.*, 982 F.2d 769 (2d Cir. 1992) .............................................26

*Fustok v. Conticommodity Servs., Inc.*, 122 F.R.D. 151 (S.D.N.Y. 1988) ....................27

*In re Global Crossing, Ltd.*, 385 B.R. 52 (Bankr. S.D.N.Y. 2008) ...............................25

*Iridium IP LLC v. Motorola, Inc.*, 373 B.R. 283 (Bankr. S.D.N.Y. 2007) ....................19

*In re Johns-Manville Corp.*, 600 F.3d 135 (2d Cir. 2010)............................................26

*Lachance v. Erickson*, 522 U.S. 262 (1998) ..........................................................25

*Lawson v. Ford Motor Co. (In re Roblin Indus., Inc.)*, 78 F.3d 30 (2d Cir. 1996).......................18

*In re Lenox Healthcare Inc.*, 311 B.R. 404 (Bankr. D. Del. 2004)................................22

*McCurdy v. Am. Board of Plastic Surgery*, 157 F.3d 191 (3d Cir. 1998) ....................................22

*McNally v. Yarnall*, 764 F. Supp. 853 (S.D.N.Y. 1991)................................................................11

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950)..........................................25

*Official Committee of Unsecured Creditors of Hydrogen, LLC v. Blomen (In re Hydrogen)*, 431 B.R. 337 (Bankr. S.D.N.Y. 2010).........................................12, 13, 15, 16, 19

*Order of R.R. Telegraphers v. Ry Express Agency, Inc.*, 321 U.S. 342 (1944) ......................28, 29

*Panaras v. Liquid Carbonic Indus. Corp.*, 94 F.3d 338 (7th Cir. 1996) ......................................22

*Parker v. Columbia Pictures Indus.*, 204 F.3d 326 (2d Cir. 2000)..............................................10

*Petrucelli v. Bohringer and Ratzinger*, 46 F.3d 1298 (3d Cir. 1995).........................................22

*TWA Inc. Post Confirmation Estate v. Marsh USA, Inc. (In re TWA Inc. Post Confirmation Estate)*, 305 B.R. 228 (Bankr. D. Del. 2004) ........................................13, 15, 16

*In re Teligent Servs. Inc.*, 372 B.R. 594 (Bankr. S.D.N.Y. 2007) ..............................................23

*Textile Banking Co. v. Rentschler*, 657 F.2d 844 (7th Cir. 1981)................................................27

*United States v. Uccio*, 940 F.2d 753 (2d Cir. 1991)...................................................................26

*United Student Aid Funds, Inc. v. Espinosa*, --- U.S. ---, 130 S. Ct. 1367 (2010)........................26

*VFB LLC v. Campbell Soup Co.*, 482 F.3d 624 (3d Cir. 2007) ....................................................19

*Valley Media, Inc. v. Borders, Inc. (In re Valley Media, Inc.)*, 288 B.R. 189 (Bankr. D. Del. 2003) .............................................................................................................13, 15

*Zapata v. City of New York*, 502 F.3d 192 (2d Cir. 2007) ...........................................................22

**STATUTES AND RULES**

11 U.S.C. § 1127................................................................................................................................7

11 U.S.C. § 546....................................................................................................................3, 27, 29

11 U.S.C. § 547................................................................................1, 2, 12, 13, 14, 17, 18

28 U.S.C. § 158..............................................................................................................................26

Fed. R. Civ. P. 3 ................................................................................................21

Fed. R. Civ. P. 4 ................................................2, 3, 20, 21, 22, 23, 25, 28

Fed. R. Civ. P. 6 ................................................................................................22

Fed. R. Civ. P. 8 ................................................................................1, 11, 12

Fed. R. Civ. P. 12 ............................................................................1, 9, 11, 12

Fed. R. Civ. P. 15 ........................................................1, 10, 11, 19, 20, 21, 27

Fed. R. Civ. P. 60 ......................................................................................26, 27

Fed. R. Bankr. P. 7003 ....................................................................................21

Fed. R. Bankr. P. 7004 ....................................................................................21

Fed. R. Bankr. P. 7012 ....................................................................................11

Fed. R. Bankr. P. 7015 ....................................................................................10

Fed. R. Bankr. P. 9006 ....................................................................................22

Fed. R. Bankr. P. 9024 ....................................................................................27

## OTHER AUTHORITY

Wright & Miller, *Federal Practice and Procedure*: *Civil* 3d § 1056 & n.32 ..............................21

TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:

Defendants Johnson Controls, Johnson Controls Battery Group, and Johnson Controls,

Inc. (each a "**Defendant**," and collectively the "**JCI Defendants**"), by their undersigned counsel,

as its objection to Plaintiff Delphi Automotive Systems, LLC's ("**Plaintiff**") motion for leave to

file a first amended complaint ("**FAC**") pursuant to Fed. R. Civ. P. 15 (the "**Motion**"),

respectfully state as follows:

<u>**PRELIMINARY STATEMENT**</u>

This Court should deny Plaintiff's motion for leave to amend, which asks that it exercise

its discretion to permit Plaintiff to file an amended complaint against the JCI Defendants to

recover $1,918,222.32 in alleged transfers.

Plaintiff's proposed FAC is futile for the following reasons:

- The proposed FAC is subject to dismissal for failure to meet the pleading standard under Rule 12(b)(6) and Rule 8 because it does not adequately allege the existence of an antecedent debt to support *any* avoidance claims against any of the JCI defendants.

  o It will be impossible for the JCI Defendants to respond to the proposed FAC because the JCI Defendants cannot identify the antecedent debt from the meaningless information provided therein.

  o Because Plaintiff has failed to sufficiently allege its claims under 11 U.S.C. § 547(b), the proposed FAC is insufficient as a matter of law under the Supreme Court's recent decisions in *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009).

- The proposed FAC is futile because the Plaintiff was solvent at the time it made the alleged preferential transfers and thus Plaintiff cannot rely on the presumption of insolvency to establish the essential insolvency element.

- The proposed FAC is futile because the Extension Orders must be vacated, and any preference action is time-barred without the Extension Orders by the applicable statute of limitations.

1

o    The JCI Defendants were not served with, and had no notice –
actual or otherwise – of the Reorganized Debtors' motions to
extend the time to serve the preference actions (the "Extension
Motions"), the orders that granted them (the "Extension Orders"),
or even the Modified Plan or Disclosure Statement. The JCI
Defendants never received *any* notice that the Debtors had filed
this complaint, nor notice that the JCI Defendants might be subject
to the Debtors' assertion of post-confirmation avoidance claims on
transfers that were made in mid- to late-2005, approximately 4 ½
to 5 years ago.

o    Delphi was not entitled to obtain the Extension Orders because it
was not proper for Delphi to use Rule 4(m) to avoid prosecuting
preference actions for more than two years and to keep these
complaints secret precisely so that they could increase their
chances of negotiating favorable business deals with various
parties (including the JCI Defendants) without having to disclose
that preference actions had already been filed against these entities
without their knowledge.

o    The proposed FAC is futile because it is time-barred by the statute
of limitations, which applies in the absence of the Extension
Orders.

Plaintiff's efforts to state a claim against the JCI Defendants for avoidance under § 547
are woefully insufficient and made in disregard of this Court's orders and the JCI Defendants'
procedural due process rights. Any result other than denial of the Plaintiff's Motion based upon
the futility of the underlying complaint would not only injure the JCI Defendants' rights to notice
and an opportunity to be heard, it would seriously impact its ability to successfully defend
against five-year old claims, now a full three years after the expiration of the statute of
limitations. Accordingly, the JCI Defendants respectfully request that Plaintiff's Motion be
denied with prejudice in its entirety.

## STATEMENT OF FACTS

### A.    The Debtors File Their Chapter 11 Case and Proposed Plan

On October 8, 2005, and October 14, 2005, Delphi Corporation and certain of its
subsidiaries and affiliates (collectively the "**Debtors**" or "**Delphi**") each filed voluntary petitions

2

for relief under Title 11 of Chapter 11 of the United States Bankruptcy Code (the "**Bankruptcy Code**").

On or about December 10, 2007, the Debtors filed their First Amended Joint Plan of Reorganization (Docket No. 11386) (the "**Confirmed Plan**"), which was confirmed by order of the Court dated January 25, 2008 (Docket No. 12359) (the "**Confirmation Order**"). The Confirmed Plan provided for the payment in full of general unsecured claims held by creditors of the Debtors. (Confirmed Plan at 30, §5.3.) Exhibit 7.24 to the Confirmed Plan, entitled "Retained Actions," set forth the various claims and actions that the Debtors sought to retain under the Confirmed Plan. (*See* Docket No. 11608.) Notably, Exhibit 7.24 did not contain any reference to any potential claims against the JCI Defendants.

    **B.**    **The Debtors fail to give the JCI Defendants notice of any of the motions to preserve the avoidance claims and/or extend time to serve those claims. .**

        **1.**    **The First and Second Extension Motions**

Under 11 U.S.C. § 546(a), the two-year statute of limitations for the Debtors to bring avoidance actions in connection with the Delphi proceedings was to expire in late 2007. On August 6, 2007, shortly before the two-year limitations period was set to expire, the Debtors sought entry of an order seeking, among other things, the establishment of certain procedures, including (a) leave for Debtors to file avoidance actions under seal; (b) an extension of time beyond the 120-day period provided for in Fed. R. Civ. P. 4(m) to serve summonses and complaints; and (c) a stay of adversary proceedings until service of process was effectuated. (Docket No. 8905, ¶¶ 33-38 ("**First Extension Motion**").)[1] The Debtors justified their need for the relief sought in the First Extension Motion by asserting that most of the adversary

---

[1] Due to the voluminous nature of the pleadings, affidavits of service, and other publicly-filed documents referenced herein, the documents are not attached as exhibits but rather referenced by docket number. Unless otherwise indicated, the docket number shall refer to the main bankruptcy case, No. 05-44481.

proceedings would be resolved by confirmation of its plan of reorganization (which provided for

payment of the unsecured claims on a 100% basis) and thus would "become relevant again only

in the unlikely event that the Debtors do not timely emerge from chapter 11." (*See* First

Extension Motion ¶¶ 16, 33-34.) They further represented that filing the actions under seal

would "avoid unnecessarily alarming potential defendants" as the Debtors sought to work with

the potential defendants to "preserve and repair" the Debtors' "business relationship" with those

defendants. (*Id.* ¶ 37.)

In the First Extension Motion, the Debtors represented to this Court that service of the

motion had been made in accordance with the Court's Supplemental Case Management Order

(Docket No. 2883) and the Court's Eighth Supplemental Case Management Order (Docket No.

5418). (*Id.* ¶ 55.) The Court's Supplemental Case Management Order required that "[a]ll

Filings shall be served (a) via overnight mail upon all parties with a particularized interest in the

subject of the Filing . . . ." (Supplemental Case Management Order ¶ 15.) The JCI Defendants

had a particularized interest in the motions because the JCI Defendants were defendants in one of

the complaints filed under seal. Contrary to the Debtors' representations to the Court that service

was provided to parties with a particularized interest, the JCI Defendants received **no** notice of

the First Extension Motion by overnight mail or any other method. (Declaration of David E.

Kirtley ("**Kirtley Decl.**") ¶ 3, attached hereto as Exhibit A.) Indeed, the Affidavit of Service for

the First Extension Motion does not list any of the JCI Defendants as parties served with the First

Extension Motion. (*See generally* Docket No. 9039.) Nor did the Debtors and any of the JCI

Defendants enter into any tolling agreement with respect to the claims against the JCI

Defendants. Because the JCI Defendants had no notice of the First Extension Motion, the JCI

Defendants had no ability to file an objection or otherwise challenge the entry of the order requested by the Debtors.

On August 16, 2007, the Court entered an order providing, among other things, the requested abandonment, an extension of time to March 31, 2008 to serve the adversary complaints, and permission to file the complaints under seal. (*See* Docket No. 9105 (the "**Procedures Order**").) Following entry of the Procedures Order, on or about September 28, 2007, the Debtors commenced Adversary Proceeding No. 07-2348 against JCI seeking the recovery of $1,918,222.32 in alleged preferential transfers (the "**JCI Adversary Proceeding**"). While the original complaint in the JCI Adversary Proceeding (the "**Complaint**") (which does not appear on the docket until March 18, 2010 (*see* Adv. Pro. Docket No. 6)), is dated September 26, 2007, the JCI Defendants have been unable to confirm that the Complaint was actually filed at that time, or any time before the statute of limitations for avoidance actions ran on or about October 13, 2007.

On February 8, 2008, the Debtors filed a motion seeking a second extension – until May 31, 2008 – to serve their sealed complaints. (*See* Docket No. 12922 ("**Second Extension Motion**") ¶ 18.) The Debtors again represented to this Court in the Second Extension Motion that the purpose of the motion was to "enable the Debtors to fulfill their fiduciary responsibility to preserve valuable estate assets in a manner that would not unnecessarily disrupt the emergence process or the Debtors' current business relationships with potential defendants that are necessary to the Debtors' ongoing operations," as well as to reduce the "administrative and economic burdens of the adversary proceedings to the Debtors, the Court, and the defendants." (*Id.* ¶ 21.) At this time, the Confirmed Plan, which provided for 100% recovery to unsecured creditors, was still in place.

Again, the Debtors gave no notice of the Second Extension Motion to any of the JCI

Defendants, notwithstanding their representations to the Court that the Debtors had complied

with the applicable notice procedures which required particularized notice. (*See* Second

Extension Motion ¶ 26; Kirtley Decl. ¶ 3.) The affidavit of service for the Second Extension

Motion does not list any of the JCI Defendants as having been served with the motion. (*See*

*generally* Docket No. 12970.) Accordingly, the JCI Defendants had no opportunity to object to

the Second Extension Motion, which the Court granted on March 28, 2008. (*See* Docket No.

13277 (the "**Second Extension Order**").)

> ## 2.    The Third Extension Motion

On April 4, 2008, the Debtors announced that the plan investors had refused to fund their

investments under the Confirmed Plan and that the necessary exit financing for the plan would

not close. On April 10, 2008, the Debtors sought yet again to extend the service deadline for the

adversary proceedings to 30 days after substantial consummation of the Debtors' plan. (*See*

Docket No. 13361 (the "**Third Extension Motion**") ¶ 19.) The Debtors attempted to justify the

need for relief on the need to avoid "disrupt[ing] the emergence process or the Debtors' current

business relationships with potential defendants that are necessary to the Debtors' ongoing

operations." (*Id.* ¶ 22.) Moreover, the Debtors asserted that the third extension was in the best

interests of all parties because "most of the Adversary Proceedings will not be prosecuted if the

Plan were to become effective and likely will not be prosecuted under any modified plan." (*Id.* ¶

22.)

As with the previous motions, the Debtors did not give notice to any of the JCI

Defendants of the Third Extension Motion (Kirtley Decl. ¶ 3; *see generally* Docket No. 13415.)

even though it represented to the Court that it had provided particularized notice in accordance

with the Supplemental Case Management Order.  On April 30, 2008, the Court granted the Third

Extension Motion.  (*See* Docket No. 13484 (the "**Third Extension Order**").)

### 3.    The Modified Plan and the Fourth Extension Motion

On October 3, 2008, the Debtors filed a motion under 11 U.S.C. § 1127 for an order

approving (i) certain modifications to the Plan and related disclosure statement and (ii) related

procedures for re-soliciting votes on the Confirmed Plan, as modified (the "**Plan Modification**

**Motion**").  (Docket No. 14310.)  On June 1, 2009, the Debtors filed a supplement to the Plan

Modification Motion which sought approval of certain modifications to the Confirmed Plan.

(*See* Docket No. 16646.)  On June 16, 2009, the Debtors filed the First Amended Plan of

Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-in-Possession

(As Modified) (the "**Modified Plan**").  (*See* Docket No. 17030.)   The Debtors filed the exhibits

to the Modified Plan on July 2, 2009.  (*See* Docket No. 17557.)  Notably, unlike the Confirmed

Plan, the Modified Plan no longer provided for a 100% payout to unsecured creditors.  The

Debtors did not serve the JCI Defendants with the Plan Modification Motion, the Modified Plan,

or the exhibits thereto.  (Kirtley Decl. ¶ 3; *see* Docket Nos. 16657, 17618.)  This Court entered

an order approving the Modified Plan on July 30, 2009 (the "**Modification Order**").  (Docket

No. 18707.)  The JCI Defendants had a particularized interest in the Modified Plan as it and its

Disclosure Statement disclosed that the Debtors intended to pursue the Preference Actions

against a number of defendants who were not identified except by case number.

On October 2, 2009, two years after expiration of the statute of limitations, over a year

after the Third Extension Order was entered, and seven days before the effective date of the plan

on October 6, 2009, the Debtors filed another motion to extend the deadline for service of

process – this time, until 180 days after substantial consummation of the plan.  (Docket No.

18952 ("**Fourth Extension Motion**") ¶ 16.)  The Debtors made substantially the same

arguments that they made in their prior applications for extensions, including that the fourth

extension "would reduce the administrative and economic burdens" on the Debtors and potential

defendants given that the Debtors "might not ultimately pursue" the actions against the

defendants.  (*Id.* ¶¶ 18-19.)  The Debtors again represented to the Court that notice was given to

parties-in-interest in accordance with the case management orders.  (*Id.* ¶ 24.)  In spite of that

statement, no notice, particularized or otherwise, was given to the JCI Defendants.  (Kirtley

Decl. ¶ 3; *see generally* Docket No. 18967.)   The JCI Defendants would have wanted to know

that the Debtors intended to pursue the preference actions which was disclosed in the Fourth

Extension Order.  The Court granted the Fourth Extension Motion on October 22, 2009.  (Docket

No. 18999 (the "**Fourth Extension Order**," and together with the Procedures Order and the

Second and Third Extension Orders, the "**Extension Orders**").)  However, during the hearing on

October 22, 2009 on the Fourth Extension Motion, the Court explicitly stated that the extension

was without prejudice to the rights of the defendants in the avoidance actions to argue defenses

other than statute of limitations.  (October 22, 2009 Tr. at 6, attached hereto as Exhibit B.)

    4.       **The Debtors serve the Complaint on the JCI Defendants in March
2010, approximately two and a half years after it was filed under seal.**

On March 24, 2010, the Debtors purported to serve their five-page Complaint in the JCI

Adversary Proceeding on the JCI Defendants.  (JCI Adv. Pro. Docket No. 12.)   The Complaint

asserted one cause of action against all JCI Defendants to avoid and recover 21 allegedly

preferential transfers listed on Exhibit 1 attached to the Complaint.  (*See id.*)  Exhibit 1 listed

only the date, amount, and method of each transfer; it did not specify to which JCI entity the

transfer was made or which Debtor entity made the transfer.  (*See id.*)

C.    **The Court dismisses Plaintiff's Complaint against the JCI Defendants.**

On May 14, 2010, the JCI Defendants joined other preference defendants and filed their

motion to (A) Vacate Certain Prior Orders of the Court; (B) Dismiss the Complaint with

Prejudice; or (C) in the Alternative, to Dismiss the Claims Against Certain Defendants Named in

the Complaint and (D) To Require Plaintiffs to File a More Definite Statement (the "**JCI**

**Dismissal Motion**") in the JCI adversary proceeding.  (Adv. Pro. No. 07-2348 at Docket Nos.

28, 29, 30.)  The motion sought dismissal of the adversary proceeding against the JCI Defendants

and the Complaint on a variety of grounds including expiration of the statute of limitations, *res*

*judicata*, Debtors' prior abandonment of certain claims, and failure to state a claim under Rule

12(b)(6).  The Debtors filed an omnibus response to the Motion, and the Motions were heard on

July 22, 2010.

On September 7, 2010, following the July hearing on the First Wave Motions to Dismiss

filed by various preference defendants, including the JCI Defendants, this Court entered the

"Order Granting In Part First Wave Motions to Dismiss" (the "Dismissal Order").  (*See* Adv.

Pro. No. 07-2348, at Docket No. 40.)   In that Order, the Court held that claims against foreign

suppliers and claims of less than $250,000 in the aggregate were dismissed with prejudice.

Additionally, the Court held that all of the Debtors' claims in the Adversary Proceedings were

dismissed without prejudice for "failure to plead sufficient facts to state a claim," without

prejudice to the Debtors' ability to file a motion for leave to amend the complaint in each

Adversary Proceeding no later than September 7, 2010.  (Dismissal Order ¶ 4.)  The Court

further held that "[a]ll other arguments raised by defendants in the Adversary Proceedings that

were not ruled upon at the Hearing or pursuant to this Order, and all responses thereto, are

preserved."  (Dismissal Order ¶ 5.)

### D.    Plaintiff files its Motion to file the First Amended Complaint.

In accordance with the Court's Dismissal Order, Plaintiff filed the Motion on September 7, 2010, seeking leave to file the FAC pursuant to Rule 15 of the Federal Rules of Civil Procedure. (*See* Adv. Pro. No. 07-2348, at Docket No. 39.)  The proposed FAC contains certain new, albeit generic, allegations with respect to the Plaintiff's operations, including that Plaintiff was the operating subsidiary in North America, that it entered into requirements contracts with suppliers, "including Defendants," and that payments were made and processed through the Debtors' Electronic Data Interchange System.  (FAC ¶¶ 10-13.)

Plaintiff further alleges that the defendants "were parties to numerous purchase orders for the supply of products to Debtors" and attaches a new exhibit, Exhibit 2, which purports to serve as the basis for the antecedent debt on which the transfers were based.  (FAC ¶¶ 22, 28.)  While Exhibit 2 lists allegedly preferential transfers by date, party, and amount, the additional references to "Document Number," "Bill of Lading," and "Check Number" do not identify the any antecedent debt and appear to be internal Delphi identification numbers which mean nothing to the JCI Defendants, and provide the JCI Defendants no basis on which to identify the transfers or determine whether they were in fact transfers on account of an antecedent debt.

## ARGUMENT

### I.    STANDARD OF REVIEW

Rule 15(a) of the Federal Rules of Civil Procedure is incorporated into bankruptcy proceedings by Rule 7015 of the Federal Rules of Bankruptcy Procedure.  Rule 15(a) provides that leave to amend a complaint "shall freely be given when justice so requires."  Fed. R. Civ. P. 15(a); *see also Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 339 (2d Cir. 2000).  However, the Supreme Court has interpreted Rule 15 to permit such amendments only when the party

seeking the amendment (1) has not unduly delayed, (2) is not acting in bad faith or with a

dilatory motive; (3) when the opposing party will not be unduly prejudiced by the amendment,

and (4) when the amendment is not futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962). "An

amendment is considered futile if the amended pleading fails to state a claim or would be subject

to a motion to dismiss on some other basis." *McNally v. Yarnall*, 764 F. Supp. 853, 855

(S.D.N.Y. 1991) (citations omitted).

II.     **PLAINTIFF'S MOTION FAILS BECAUSE THE REMAINING CLAIMS
        ALLEGED IN THE PROPOSED FIRST AMENDED COMPLAINT WOULD
        NOT SURVIVE A MOTION TO DISMISS UNDER RULE 12(B)(6).**

        Plaintiff's Motion should be denied because the First Amended Complaint, if filed, would

not survive a motion to dismiss and is therefore futile.  The Motion does not adequately plead the

existence of an antecedent debt, because it provides no information that would allow the JCI

Defendants to conduct an investigation to determine the basis for the purportedly preferential

transfers.  Additionally, the Motion does not adequately plead that the presumption of insolvency

applies here, because Plaintiff's own First Day schedules show that Plaintiff was solvent on the

petition date.

        A. **Plausibility standard under Rule 12(b)(6) and Rule 8**

        As set forth above, a motion pursuant to Rule 15 must be denied if the proposed

amendment would nevertheless fail under Rule 12(b)(6) of the Federal Rules of Civil Procedure,

which is incorporated into adversary proceedings by Rule 7012(b) of the Federal Rules of

Bankruptcy Procedure.

        In reviewing a motion to dismiss under Rule 12(b)(6), a court must accept as true all

factual allegations contained in the complaint and draw all reasonable inferences in the plaintiff's

11

favor.[2]  *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).  However,

"[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted).  While Rule 8(a)(2) "marks a

notable and generous departure from the hyper-technical, code-pleading regime of a prior era,"

"it does not unlock the doors of discovery for a plaintiff armed with nothing more than

conclusions." *Ashcroft v. Iqbal,* 556 U.S. ---, 129 S.Ct. 1937, 1950 (2009).  "Where a complaint

pleads facts that are merely consistent with a defendant's liability, it stops short of the line

between possibility and plausibility of entitlement to relief." *Id.* at 1949 (citing *Twombly,* 550

U.S. at 557) (quotation marks omitted).  This standard "is not akin to a 'probability requirement,'

but it asks for more than a sheer possibility that a defendant has acted unlawfully" and "demands

more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Id.*  This

construction of Rule 8 and Rule 12(b)(6) "is intended as a policy matter to weed out meritless

cases prior to the commencement of discovery, thereby minimizing the expenditure of the

judicial system's resources on such cases." *In re Hydrogen*, 431 B.R. at 346.

### B. Rule 12(b)(6) and 11 U.S.C. § 547

Section 547 of the Code "authorizes the avoidance of 'any transfer of an interest of the

debtor in property' if five conditions enumerated in subsection (b) are satisfied, subject to one of

seven defenses available under subsection (c)." *In re Hydrogen*, 431 B.R. at 355.  Specifically, a

debtor may avoid any transfer of interest of the debtor in property:

(1) to or for the benefit of a creditor;

---

[2] In addition to the complaint, the court may also consider documents incorporated by reference into the complaint, documents in the plaintiff's possession or knowledge upon which the plaintiff relied in bringing suit, and facts of which the court may take judicial notice. *See Official Committee of Unsecured Creditors of Hydrogen, LLC v. Blomen (In re Hydrogen)*, 431 B.R. 337, 345 (Bankr. S.D.N.Y. 2010).

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made-

    (A) on or within 90 days before the date of the filing of the petition; or

    (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if –

    (A) the case were a case under chapter 7 of this title;

    (B) the transfer had not been made; and

    (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b).

      "Thus, for purposes of pleading sufficiency, the Amended Complaint must allege enough facts with respect to each of the foregoing elements of section 547(b) in order to put Defendants on notice for the preference claims." *In re Hydrogen*, 431 B.R. at 355. Specifically, "the following information must be pled in a complaint to survive a motion to dismiss: (a) *an identification of the nature and amount of each antecedent debt* and (b) an identification of each alleged preference transfer by (i) date, (ii) name of debtor/transferor, (iii) name of transferee and (iv) the amount of the transfer." *TWA Inc. Post Confirmation Estate v. Marsh USA, Inc. (In re TWA Inc. Post Confirmation Estate)*, 305 B.R. 228, 232 (Bankr. D. Del. 2004) (emphasis added) (citations omitted); *see also Valley Media, Inc. v. Borders, Inc. (In re Valley Media, Inc.)*, 288 B.R. 189, 192 (Bankr. D. Del. 2003) (same); *see also Feltman v. Keybank, N.A. (In re Levitt and*

13

*Sons, LLC)*, No. 07-19845-BKC-RBR, 2010 WL 1539878, at *2 (Bankr. S.D. Fla. Apr. 16,

2010) (holding that in order to satisfy the pleading requirements under *Iqbal* and *Twombly*, a

complaint asserting claims under § 547 must "demonstrate that the transfers at issue were

transfers of the debtor's property" and not just transfers "made from related entities").

> **C. The Motion must be denied because Plaintiff fails to sufficiently identify the allegedly preferential transfers and the antecedent debt that accounts for those transfers.**

Plaintiff's Motion should be denied because the proposed FAC fails to plead sufficient

facts to give the JCI Defendants notice of the antecedent debt that purportedly forms the basis for

Plaintiff's claims under § 547.

> **1. The numbers provided by Plaintiff in Exhibit 2 are meaningless to JCI, and do nothing to identify the antecedent debt.**

Plaintiff's only allegations regarding the existence of an antecedent debt are bare-bones

and are presented in Paragraph 28 of the proposed FAC, wherein Plaintiff alleges:

> Plaintiff made, or caused to be made, each portion of each Transfer for, or on account of, an antecedent debt (the "Debt") owed by Plaintiff to Defendants prior to the date on which the Transfer was made as more fully described in Exhibit "2."

Plaintiff, in its Motion, argues that Exhibit 2 to the proposed FAC serves as a sufficient basis for

its allegations that the transfers were made in payment of antecedent debt. However, Exhibit 2

does not state what antecedent debt was owed by Delphi to the JCI Defendants. The proposed

FAC provides *no* information that would allow the JCI Defendants to identify the antecedent

debt. Exhibit 2 lists numbers that are meaningless to the JCI Defendants, including "Document

Numbers," "Bill of Lading" numbers,[3] and "Check Numbers" that the JCI Defendants can only

surmise are internal Delphi numbers. The JCI Defendants have no record of any of these

---

[3] "Bills of Lading" may indicate delivery of certain items, but may include pre-paid items or cash on delivery (COD) transfers. JCI cannot determine, based on the allegations of the FAC, what invoices or purchase orders are related to the alleged deliveries.

numbers, and cannot use them to identify the transfers or any antecedent debt, because the
numbers have no meaning and no reference in the JCI Defendants' accounting systems. The
information provided simply does not demonstrate that certain amounts were owed by Plaintiff
prior to transfer. The JCI Defendants have repeatedly requested that Delphi provide them with
documentation, including purchase orders or other documents that would show antecedent debt,
but Delphi has refused to – or is unable to – provide this information.

Because Delphi has not adequately pled the existence of antecedent debt, the Motion
must be denied. *See In re Hydrogen*, 431 B.R. at 355 (holding that certain preference claims
failed to survive a motion to dismiss because, among other things, "no allegation has been made
that any transfer was made for or on account of a specific and identifiable antecedent debt owed
by the debtor"); *see also In re TWA Inc. Post Confirmation Estate*, 305 B.R. at 232 (holding that
"the following information must be pled in a complaint to survive a motion to dismiss: (a) *an
identification of the nature and amount of each antecedent debt* and (b) an identification of each
alleged preference transfer by (i) date, (ii) name of debtor/transferor, (iii) name of transferee and
(iv) the amount of the transfer") (emphasis added); *In re Valley Media, Inc.*, 288 B.R. at 192
(same); *Angell v. BER Care, Inc. (In re Caremerica, Inc.)*, 409 B.R. 737, 751 (Bankr. E.D.N.C.
2009) ("[Plaintiff] must assert the nature and amount of the antecedent debt in order to allege a
plausible claim for relief.")

Specifically, in *In re Hydrogen*, the court found that the preference claims brought by the
plaintiff were "facially deficient in multiple respects," including that "no allegation [was] made
that any transfer was made for or on account of a specific and identifiable antecedent debt owed
by the Debtor." *In re Hydrogen*, 431 B.R. at 355. The court held that "for purposes of pleading
sufficiency, the Amended Complaint must allege enough facts with respect to each of the

15

foregoing elements of section 547(b) in order to put Defendants on notice for the preference

claims" and that the plaintiff's allegations were insufficient "for notice and identification

purposes." *Id.*

Here, the JCI Defendants have not been put on notice for the preference claims, because

Plaintiff has not specifically identified the antecedent debt, nor provided the JCI Defendants with

enough information to identify the antecedent debt from their own records. Providing some

details as to the allegedly preferential payments is not enough if, as here, the details are

meaningless to the JCI Defendants and do not enable them to identify the "nature" of the

antecedent debt. *See In re TWA Inc. Post Confirmation Estate*, 305 B.R. at 232. These numbers

may as well have been left out of the FAC, for they do nothing to give notice to the JCI

Defendants of the antecedent debt or in fact the transfers, and may, as far as the JCI Defendants

are concerned, be wholly "made up" numbers. The JCI Defendants do not have the cancelled

checks, payment advice or the purchase orders, or any of the back-up documents that could shed

some light on the nature of these transfers. Plaintiff could have attached documents to the

proposed FAC – such as purchase orders – to provide factual context for its listing of

meaningless "document numbers" and "bill of lading" numbers, rendering Plaintiff's claims

"plausible" under *Twombly and Iqbal*. Instead, Plaintiff chose not to do so (or, perhaps, was

unable to do so). Plaintiff's recitation of the antecedent debt is thus nothing more than a

conclusory assertion of that element, and Plaintiff's failure to plead the antecedent debt with

specificity is fatal to the FAC. Simply put, Plaintiff fails to comply with the *Twombly* and *Iqbal*

pleading requirements, and furthermore, it is impossible for the JCI Defendants to identify the

antecedent debt or the transfers alleged by Plaintiff in the proposed FAC given the limited and/or

meaningless information provided therein.

16

### 2. Exhibit 1 and Exhibit 2 are internally inconsistent, casting further doubt on Plaintiff's antecedent debt allegations.

Aside from the fact that the numbers provided in Exhibit 2 are meaningless, Exhibit 1 and Exhibit 2 are internally inconsistent, casting doubt on whether the numbers in Exhibit 2 are even meaningful to *Plaintiff*. Exhibit 1 provides that certain of the transfers to the JCI defendants were made by check, and others were made by "EFT" or "electronic funds transfers." (*See* proposed FAC at Ex. 1.) However, Exhibit 2 lists "Check Numbers" for *each and every transfer* alleged therein. (*See* proposed FAC at Ex. 2.) Exhibit 1 and Exhibit 2 are thus inconsistent because they cannot be reconciled and give JCI no basis on which to determine whether a transfer was by check or by EFT.

### 3. Without more information, JCI will be unable to respond to the proposed FAC, if filed.

Because Plaintiff has failed to identify and plead the antecedent debt, it follows that, if the proposed FAC is filed, the JCI Defendants will be severely prejudiced in their ability to defend against the allegations. The JCI Defendants will be unable even to file an accurate answer, much less to state defenses or argue that the transfers do not fall within § 547, because it will be unable to admit or deny that the transfers were made on account of an antecedent debt.

### D. The Motion must also be denied because Plaintiff's own filings demonstrate that Plaintiff was not insolvent at the time of the transfers.

Plaintiff's Motion must be denied for the separate and independent reason that Plaintiff's own filings indicate that Plaintiff was solvent at the time of the transfers. Item (3) of § 547(b) requires that the plaintiff in a preference action plead and ultimately prove that it was insolvent at the time of the allegedly preferential transfers. 11 U.S.C. § 547(b)(3). A creditor may rebut the Bankruptcy Code § 547(f) presumption "by introducing some evidence that the debtor was not in fact insolvent at the time of the transfer. If the creditor introduces such evidence, the trustee must

prove insolvency by a preponderance of the evidence." *Lawson v. Ford Motor Co. (In re Roblin Indus., Inc.)*, 78 F.3d 30, 34 (2d Cir. 1996).

Plaintiff's allegation that it was insolvent at the time of the transfers relies solely on the presumption of insolvency, pursuant to which "the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition." 11 U.S.C. § 547(f). Plaintiff's only allegation of insolvency is thus a bare bones, conclusory recitation of the avoidance statute – exactly the "[t]hreadbare recital[] of the elements of a cause of action supported by mere conclusory statements," that the Supreme Court stated "does not suffice." *Iqbal*, 129 S. Ct. at 1949.

Moreover, despite Plaintiff's conclusory allegation that the presumption of insolvency applies to satisfy Plaintiff's pleading requirement with respect to item (3) of § 547(b), evidence of which the Court can take judicial notice (including Plaintiff's own schedules filed in connection with the commencement of the Chapter 11 cases), show that Plaintiff was solvent, and had more than $2.6 in net equity, at the time of its petition. These admissions conclusively rebut any presumption of Plaintiff's insolvency during the preference period. *See, e.g., In re Roblin Indus., Inc.*, 78 F.3d 30, 34-35 (2d Cir. 1996) (schedules showing solvency rebutted presumption so that trustee bore burden of coming forward to prove insolvency); *Akers v. Koubourlis*, 869 F.2d 1319, 1322 (9th Cir. 1989) (debtors' schedules indicating greater assets than debts rebutted presumption).

Moreover, Plaintiff's parent, Delphi, was also solvent. During the preference period, Delphi even distributed a dividend to its shareholders – a dividend that was never returned. (*See* Delphi's 8/8/05 SEC Form 10-Q, attached hereto as Exhibit C, at 6.) Then, during the first two years of its bankruptcy, Delphi represented that it expected a 100 cent plan. Delphi's

18

performance in the marketplace, which many observers believe is the best indicator of enterprise value, also confirms solvency. *See, e.g., Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. La Salle P'ship*, 526 U.S. 434, 457 (1999) (acknowledging that "the best way to determine value is exposure to a market"); *VFB LLC v. Campbell Soup Co.*, 482 F.3d 624, 633 (3d. Cir. 2007) ("Absent some reason to distrust it, the market price is a more reliable measure of the stock's value than the subjective estimates of one or two expert witnesses."); *Iridium IP LLC v. Motorola, Inc.*, 373 B.R. 283, 293 (Bankr. S.D.N.Y. 2007) (Peck, J.) ("[T]he public trading market constitutes an impartial gauge of investor confidence and remains the best and most unbiased measure of fair market value and, when available to the Court, is the preferred standard of valuation."). In the month leading up to Delphi's bankruptcy, Delphi was trading on the New York Stock Exchange at around $3-5 per share, suggesting a market capitalization of between $1,122,813,802 and $3,312,353,816. (*See* daily trading prices for Delphi Corporation stock for the period 7/01/2005 to 10/15/2005, attached hereto as Exhibit D).

Accordingly, Plaintiff should not be permitted to rely on the conclusory allegation of the presumption of insolvency where its own filings and admissions elsewhere in this case directly contradict that allegation.

### E. No leave should be granted to allow Debtors another opportunity to amend.

Permitting amendment of complaints to comply with *Twombly* and *Iqbal* is done with liberality under Rule 15(a)(2), "at the court's discretion when justice so requires." *In re Hydrogen*, 431 B.R. at 363. With respect to the Motion, however, the language of the Dismissal Order fairly indicates that no further amendment of Proposed Amended Complaints is permissible. Such a reading of the Dismissal Order is consistent with the Court's concern with

burden-shifting in the unusual circumstances of the bankruptcy cases and the adversary

proceedings.

The Dismissal Order required timely filing of the Motion and also required that the

Motion attach a proposed amended complaint containing an express minimum of information

with respect to each alleged transfer.  In paragraph 4 of the Dismissal Order, the Court ordered as

follows:

> By no later than September 7, 2010, the Reorganized Debtors shall file a
> motion for leave to amend the complaint in each Adversary Proceeding
> the Reorganized Debtors intend to pursue (each a "Motion to Amend").
> *Each Motion to Amend shall attach a proposed amended complaint that,
> for each alleged transfer shall set forth, at a minimum,* the transferor, the
> transferee, any known subsequent transferee against whom relief is
> sought, the antecedent debt and which Reorganized Debtor is the plaintiff.

(emphasis added).  The fair implication of the language used by the Court is that Plaintiff has

until September 7, 2010 to file an amended complaint that contains, "at a minimum," the

information requested by the Court.  Just as Plaintiff's failure to file such motion on or before

September 7, 2010 would have resulted in dismissal with prejudice of every adversary

proceeding in which such default occurred, Plaintiff should be barred from further amendment of

the proposed amended complaints in the event that the complaints fail to meet the express

"minimum" of information provision required by the quoted passage from the Dismissal Order,

which includes the antecedent debt.  Plaintiffs should not be permitted to take yet another shot at

an amendment, more than three years after the Complaint was originally filed.

### III.    THE MOTION SHOULD BE DENIED AS BARRED BY THE STATUTE OF LIMITATIONS BY THE OPERATION OF RULE 4(M) TO VOID THE EXTENSION ORDERS.

Plaintiff's Motion should be denied under Rule 4(m) and Rule 15 because Rule 4(m) does

not support the use of multiple extensions of time to effectively extend the statute of limitations.

This is especially true where as in this case the extensions are gained without notice to the actual

defendants. Such extensions amount to a denial of due process. Accordingly, under Rule 15,

Plaintiff's proposed amendment should be denied.

### A. The lack of notice to JCI of the Extension Motions and the lack of service of the Complaint for over four years renders the orders unenforceable.

JCI respectfully submits that its fundamental procedural due process rights – particularly

its right to notice and an opportunity to be heard in the JCI Adversary Proceeding – have been

egregiously violated by the Debtors' failure to serve the JCI Defendants with any notice of the

Adversary Proceeding, the Complaint, the Extension Motions, and various other motions, and the

Debtors' intentional concealment of the JCI Adversary Proceeding by arranging to seal the

Complaint until 2 ½ years after the expiration of the statute of limitations.

### 1. Rule 4(m) is not a proper mechanism for extending the statute of limitations.

Rule 3 of the Federal Rules of Civil Procedure provides that "[a] civil action is

commenced by filing a complaint with the court." Fed. R. Civ. P. 3 (applied to bankruptcy

proceedings by Rule 7003 of the Federal Rules of Bankruptcy Procedure). However, Rule 3

must be construed with Rule 4, which governs the service of summonses and protects defendants

by requiring service of the complaint within a reasonable time frame. Rule 4(m), which is

incorporated into the Bankruptcy Rules by Rule 7004(a)(1), provides that if defendants in an

adversary proceeding are not served with the complaint within the 120-day period set forth under

Rule 4(m), the action may be dismissed and the plaintiff barred from commencing a new action.

*Id.*; Wright & Miller, *Federal Practice and Procedure: Civil* 3d § 1056 & n.32 (noting that "[a]

dismissal for failing to make service in timely fashion leaves the plaintiff in the same position as

if the action never had been commenced, and it is possible that the statute of limitations will have

expired between the original commencement by filing under Rule 3 and the dismissal for failure

to comply with the 120-day requirement") (citing 128 Cong. Rec. 9848, 9851, *reprinted at* 96

F.R.D. 122); *see also* Fed. R. Civ. P. 6(b), reflected in Bankruptcy Rule 9006(b) (granting the

bankruptcy court discretion to extend certain deadlines "with or without motion or notice" if the

request is made prior to the expiration of the deadline, or, if the request is made subsequent to the

expiration of the specified period, by motion on a showing of excusable neglect).

A plaintiff in an adversary proceeding can extend the time to serve the complaint by

making a motion for an extension of time pursuant to Rule 4(m), under which the time for

service can be extended at the court's discretion.  Fed. R. Civ. P. 4(m); *see also Petrucelli v.*

*Bohringer and Ratzinger*, 46 F.3d 1298, 1305 (3d Cir. 1995).  Nevertheless, many courts have

held that if the sole reason for the request is the fact that the statute of limitations would

otherwise run, courts are permitted – and perhaps should – refuse to allow an extension under

Rule 4(m).  *See, e.g., Zapata v. City of New York*, 502 F.3d 192, 198 (2d Cir. 2007) (holding that

a court may, in its discretion, deny an extension solely based on the prejudice to the defendant

arising from the running of the statute of limitations); *McCurdy v. Am. Bd. of Plastic Surgery*,

157 F.3d 191, 197 (3d Cir. 1998) (upholding the district court's refusal to grant a Rule 4(m)

extension, stating that while courts should strive to resolve cases on their merits, "justice also

requires that the merits of a particular dispute be placed before the court in a timely fashion so

that the defendant is not forced to defend against stale claims"); *Panaras v. Liquid Carbonic*

*Indus. Corp.*, 94 F.3d 338, 341 (7th Cir. 1996); *Petrucelli*, 46 F.3d at 1306; *In re Lenox*

*Healthcare Inc.*, 311 B.R. 404, 408 (Bankr. D. Del. 2004); *cf. Adams v. AlliedSignal Gen.*

*Aviation Avionics*, 74 F.3d 882, 887-888 (8th Cir. 1996) (denying Rule 4(m) motion despite

running of statute of limitations, given plaintiffs' "repeated opportunities to correct their service

insufficiencies"); *In re Teligent Servs. Inc.*, 372 B.R. 594, 601 (Bankr. S.D.N.Y. 2007)

(affirming bankruptcy court's dismissal of adversary proceeding for failure to serve the complaint under Rule 4(m), despite that the statute of limitations had run, and despite that the defendant was on notice of the claims).

### 2. In other cases in which courts allowed extensions based on Rule 4(m), notice was given to the potential defendants.

Although certain courts have allowed debtors to extend the time to serve summons under Rule 4(m) in preference adversaries and effectively extended the statute of limitations, in each case notice was provided to the defendants. The notice which was provided eliminated the problems faced by Plaintiff in these adversary proceedings as the prejudice to the defendants was substantially reduced. For example, the debtors in *In re Safety-Kleen Corp.* et al., No. 00-2303 (PJW) (Bankr. D. Del., filed June 9, 2000) filed several motions, beginning in August 2002, in which they sought additional time beyond the 120 days allowed under Rule 4(m) to serve the adversary complaints. As in this case, the debtors in *Safety-Kleen* represented that the extensions were necessary to an efficient reorganization, because it was important that the adversary proceedings remain "dormant." The debtors notified the defendants of the existence of the pending actions by letter, explaining the status of the actions and informing the defendants that they need not take action until the complaints were served. The court granted the debtors' motions, ultimately extending the time for service until July 2004, almost two years longer than would have originally been allowed until Rule 4(m).

A similar strategy was employed by the debtors in the *Interstate Bakeries* case (*In re Interstate Bakeries Corporation*, No. 04-45814 (JWV) (Bankr. W.D. Mo. filed Sept. 22, 2004). Before the statute of limitations ran on debtors' preference claims, the debtors sought bankruptcy court approval of a procedural order that would allow them to file a single complaint against all trade and other preference defendants and a separate complaint against the pre-petition lenders.

23

The motion seeking the procedural order included a copy of the draft complaint *and was served upon all parties listed as potential preference defendants.*

In this case, however, because the adversaries were kept secret from the defendants, substantial prejudice was suffered by the defendants, including the JCI Defendants. Due process was not provided to the JCI Defendants. As a result, memories are no longer sharp, documents are missing, and defendants negotiated with Delphi not knowing that they were defendants in an adversary proceeding. Because the Plaintiff in this action chose to keep the complaint secret, and chose not to give notice even of the Extension Motions, a clear and unfair disadvantage was provided to the Plaintiff and due process was thrown out the window.

### 3. The Extension Orders granted here should be vacated.[4]

Here, Plaintiff's failure to give the JCI Defendants notice of the existence of the adversary proceeding – despite the Debtors' representation to this Court that they complied with the procedures orders requiring particularized service – is what renders the Extension Orders improper. Plaintiff represented to this Court in each and every Extension Motion that it had complied with the notice requirements set forth in the Court's procedural orders. Plaintiff's representation was *false* because Plaintiff never served particularized notice of the Extension Motions on the JCI Defendants, despite that the JCI Defendants were undoubtedly parties with a particularized interest in the outcome of the motions. The fact that the JCI Defendants did not have notice of these pleadings and filings is undisputed. Nor is it disputed that the JCI

---

[4] There can be no dispute that the JCI Defendants are entitled to challenge the validity of the Extension Orders. Recognizing that notice of Delphi's Extension Motions may have been insufficient or non-existent with regard to some of the preference defendants, such as the JCI Defendants, this Court has repeatedly held that these defendants could challenge the Extension Motions *de novo*. This Court concluded during the July 22, 2010 hearing that "[I]f someone really didn't get notice of the extension motions, then it would seem to me they should be able to argue to me as if the motions were being made right now . . . ." (*See* July 22, 2010 Tr., at 103, 119 (attached hereto as Exhibit E).

Defendants were denied the opportunity to respond or object to the motions despite the impact

that the motions had on their procedural due process rights and the resulting prejudice to them.

Rather, the JCI Defendants had every right and reason to assume that Plaintiff would not be

pursuing any actions against them given the language in the Confirmed Plan.

The JCI Defendants' procedural due process rights would be seriously violated and the

purposes of Rule 4(m) rendered meaningless if the Extension Orders are permitted to stand

against the JCI Defendants and the JCI Adversary Proceeding is permitted to continue. *See In re*

*Global Crossing, Ltd.*, 385 B.R. 52, 59 (Bankr. S.D.N.Y. 2008) (finding, in evaluating the

applicability of Rule 4(m), that there was "no basis in law or fairness" to extend "a statute of

limitations protecting unnamed and unknown defendants by a year and a half . . . . The Court

must be wary of making the statute of limitations a nullity"). The fact that the JCI Defendants

may have known of the Debtors' bankruptcy proceedings is of no import here because mere

knowledge of the bankruptcy proceeding or possible existence of a claim does not satisfy the

notice requirement. *See City of New York v. New York, N.H. & H. R.R. Co.*, 344 U.S. 293, 297

(1953). Accordingly, the Extension Orders must be vacated and declared null and void with

respect to the JCI Defendants. It has long been recognized that "[t]he core of due process is the

right to notice and a meaningful opportunity to be heard." *Lachance v. Erickson*, 522 U.S. 262,

266 (1998) (citing *Cleveland Bd. of Ed. v. Loudermill*, 470 U.S. 532, 542 (1985)). The right to

be heard "has little reality or worth unless one is informed that the matter is pending and can

choose for himself whether to appear or default, acquiesce or contest." *Mullane v. Central*

*Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Accordingly, if a party is not afforded

due process during the proceeding that led up to the entry of an order, the party will not be bound

by that order. *See United Student Aid Funds, Inc. v. Espinosa*, --- U.S. ---, 130 S.Ct. 1367, 1377

(2010) (where notice and an opportunity to be heard are not provided, the order is a "legal nullity"). *City of New York*, 344 U.S. at 296-97 (finding that a creditor who did not receive notice of a claims bar date order was not bound by the claims bar date due to the lack of notice, even where the creditor was aware of the bankruptcy proceedings); *See In re Johns-Manville Corp.*, 600 F.3d 135, 157-58 (2d Cir. 2010) (finding that where a party did not receive notice of proceedings that led to the entry of certain orders that adversely affected the party, the party was not bound by those orders).

### B. The Court is free to vacate the Extension Orders.

It should be noted that the Court has the ability to vacate the Extension Orders because they are interlocutory rather than final orders. In order for a bankruptcy court order to be "final" within the meaning of 28 U.S.C. § 158(d), the order "must completely resolve all of the issues pertaining to a discrete claim, including issues as to the proper relief." *In re Fugazy Express, Inc.*, 982 F.2d 769, 776 (2d Cir. 1992). Because the Extension Orders did not resolve all of the disputed issues, including JCI's liability and the amount of any damages, the orders are not final and this Court is free to reconsider or modify the Extension Orders in its discretion. *See United States v. Uccio*, 940 F.2d 753, 758 (2d Cir. 1991) ("[F]or until there is a final judgment in a case, an interlocutory ruling generally remains subject to reconsideration or modification."[5]

Even if the Court were to conclude that the Extension Orders were "final," the Court would still be permitted to void the Extension Orders pursuant to Rule 60(b) of the Federal Rules of Civil Procedure, made applicable to adversary proceedings by Rule 9024 of the Federal Rules of Bankruptcy Procedure. Rule 60(b)(4) authorizes a court to relieve a party from a final order if

---

[5] While it may "inform[] the court's discretion," *id.* at 758, the existence of the law of the case doctrine does not limit the court's power to modify or void an interlocutory order. Indeed, the Second Circuit has stated that where a litigant was not given notice and an opportunity to be heard, the law of the case doctrine does not foreclose a party's due process argument. *See In re Johns-Manville Corp.*, 600 F.3d at 150-51. Accordingly, there is no legal impediment to this Court's ability to modify or void the Extension Orders in its discretion.

the order is void.  Fed. R. Civ. P. 60(b)(4).  A court must grant relief under this Rule if the order

"is void because entry of the order violates due process rights."  *Fustok v. Conticommodity*

*Servs., Inc.*, 122 F.R.D. 151, 154-55 (S.D.N.Y. 1988) (citing *Textile Banking Co. v. Rentschler*,

657 F.2d 844, 850 (7th Cir. 1981)).  The Court may also grant relief under Rule 60(b)(5) if

"applying [the order] prospectively is no longer equitable" or under Rule 60(b)(6) if there is "any

other reason that justifies relief."

### C. The Motion should be denied because the proposed FAC is barred by the two-year statute of limitations applicable to avoidance actions.

The fact that the Extension Orders are void with respect to the JCI Defendants renders the

FAC time-barred by the two-year statute of limitations for avoidance actions, and renders the

Motion futile under Rule 15.  Section 546(a) of the Bankruptcy Code lists the statute of

limitations applicable to avoidance claims.  Under that section, an action or proceeding under

sections 544, 547, and 548 (which form the basis for the FAC):

> may not be commenced after the earlier of – (1) the later of – (A) 2
> years after the entry of the order for relief; or (B) 1 year after the
> appointment or election of the first trustee under section 702, 1104,
> 1163, 1202, or 1302 of this title if such appointment or such
> election occurs before the expiration of the period specified in
> subparagraph (A); or (2) the time the case is closed or dismissed.

11 U.S.C. § 546(a).

"Limitations periods are intended to put defendants on notice of adverse claims . . . ."

*Crown Cork & Seal Co. v. Parker*, 462 U.S. 345, 352 (1983) (citations omitted).  They are

essential to the fundamental procedural due process rights of a party to defend itself against a

legal action because they provide a party with notice of when a plaintiff's right to pursue a claim

against that party will no longer be available.  Statutes of limitation thus "promote justice by

preventing surprises through the revival of claims that have been allowed to slumber until

27

evidence has been lost, memories have faded, and witnesses have disappeared." *Order of R.R.*

*Telegraphers v. Ry Express Agency, Inc.*, 321 U.S. 342, 348-49 (1944).

The statute of limitations applicable to the Debtors' pursuit of any avoidance actions

commenced on the petition dates (October 8 and 14, 2005) and expired, at the latest, on October

13, 2007.  Given that the Extension Orders are void under Rule 4(m) and should be vacated as to

the JCI Defendants, the service extensions contained therein are also void.  Moreover, there is no

justification for any equitable tolling of the applicable statute of limitations.  Indeed, equitable

considerations require that the Complaint be dismissed due to the Debtors' failure to provide the

JCI Defendants with notice sufficient to make them aware that it was at least *possible* that claims

against the JCI Defendants could be asserted at a later date.  Instead, the Debtors chose to roll the

dice and proceed without notice to the JCI Defendants because it was more important to the

Debtors to preserve their business strategy (which required that the JCI Defendants be unaware

of the Complaint) than it was for the Debtors to properly preserve their claims against the JCI

Defendants.  The Debtors lost that bet.  While the Debtors may argue that dismissal of the

Complaint would be extreme or somehow inequitable, the Debtors *brought this situation upon*

*themselves* by choosing to keep the adversary proceedings secret in order to negotiate more

favorable deals for the various debtor entities all while representing to the Court that the

likelihood of pursuing the actions was minimal.  The Debtors were aware of this risk; indeed,

they were warned by the Court on October 22, 2009 that the extensions were granted without

prejudice to the rights of the defendants to assert defenses thereto.

The lack of notice to the JCI Defendants of the pending adversary proceeding meant that

the JCI Defendants did not take steps to preserve documents or testimony that would be relevant

to the preference claims.  The result is that, assuming the Court permits the filing of the FAC, the

28

JCI Defendants will be unable to meaningfully answer the FAC and otherwise defend against the allegations therein, because of the passage of time and the fact that many individuals have left the JCI Defendants and documents have been destroyed or otherwise lost. (*See* Kirtley Decl. ¶ 4.) Thus, Plaintiff's actions in seeking the entry of the Extension Orders while failing to give notice to the JCI Defendants has had precisely the effect predicted by the Supreme Court: "evidence has been lost, memories have faded, and witnesses have disappeared." *Order of R.R. Telegraphers*, 321 U.S. at 348-49.

Accordingly, the JCI Defendants respectfully request that the Court vacate the Extension Orders and deny the Motion as futile given that the FAC is barred by the applicable statute of limitations contained in 11 U.S.C. § 546(a).

## IV.    THE JCI DEFENDANTS INCORPORATE ALL APPLICABLE ARGUMENTS RAISED BY OTHER DEFENDANTS IN THEIR OPPOSITION MEMORANDA.

Numerous other responses have been filed by the defendants in the various avoidance actions, including the separate objection filed by Johnson Controls GmbH & Co KG. These responses oppose the Motion on various legal grounds. Because the facts surrounding those actions are, in many respects, similar to those found here, the JCI Defendants incorporates all applicable arguments raised by the other adversary proceeding defendants in their opposition memoranda to the motion to amend the complaints in the adversary complaints applicable to them.

## CONCLUSION

For the reasons set forth herein, the JCI Defendants respectfully request that this Court

deny the Motion with prejudice in its entirety, and request all further relief as this Court deems

proper and just.

Dated:  November 24, 2010            Respectfully submitted,

                                        BARNES & THORNBURG LLP

                                        By:    /s/Kathleen L. Matsoukas
                                               Deborah L. Thorne (admitted *pro hac vice*)
                                               Kathleen L. Matsoukas (KL-1821)
                                                 One North Wacker Drive, Suite 4400
                                                 Chicago, Illinois 60606-2833
                                                 Telephone:  (312) 357-1313

                                        Counsel to Johnson Controls, Johnson Controls
                                        Battery Group, and Johnson Controls, Inc.