Phillips Lytle LLP
Angela Z. Miller (AM4473)
Allan L. Hill (AH3707)
437 Madison Avenue, 34th Fl.
New York, New York 10022
Telephone: (212) 759-4888
  and
3400 HSBC Center
Buffalo, New York 14203
Telephone: (716) 847-8400
Fax: (716) 852-6100

*Attorneys for E.I. du Pont de Nemours and Company and affiliates*

Hearing Date: December 16, 2010 at 10:00 a.m. ET

Response Deadline: November 24, 2010 at 4:00 p.m. ET

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

In re:

DPH HOLDINGS CORP., *et al.*,

------------------------------------------------------------

DELPHI AUTOMOTIVE SYSTEMS, LLC,

                Plaintiffs,

       v.

DUPONT COMPANY, DUPONT POWDER COATINGS USA INC., and E I DUPONT DE NEMOURS & CO. INC.,

                Defendants.
------------------------------------------------------------x

Chapter 11

Case No. 05-44481 (RDD)

(Jointly Administered)

Adv. Pro. No. 07-02242 (RDD)

**OBJECTION OF DUPONT POWDER COATINGS USA INC. AND E I DUPONT DE NEMOURS AND COMPANY TO REORGANIZED DEBTORS' MOTION FOR LEAVE TO FILE AMENDED COMPLAINTS**

      E.I. du Pont de Nemours and Company ("**DuPont**"), and Dupont Powder Coatings USA Inc. (collectively, the "**Defendants**"), by their attorneys, Phillips Lytle LLP, submit this Objection to the Reorganized Debtors' Motion to Leave to File Amended Complaints ("**Motion for Leave**") (A.P. Docket No. 29) filed on September 7, 2010, together with the Declaration of Susan F. Herr dated November 23, 2010, filed and served herewith. In support of this Objection, Defendants state as follows:

## I. BACKGROUND

1. On October 8 and 14, 2005 (collectively, the "**Petition Date**"), Delphi Corporation and its affiliates and subsidiaries (collectively, the "**Debtors**"), including Delphi Automotive Systems, LLC ("**DAS**") filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

### A. Defendants' Prepetition Business Relationship with the Debtors

2. Before and after the Petition Date, the Defendants, primarily through the Engineering Polymers unit of DuPont, sold industrial resins and other products to the Debtors for use in the manufacturing of automotive parts at more than ten different facilities operating by the Debtors across the country and in Mexico, including, among others, the Debtors' facilities located in Brownsville, Texas; Saginaw, Michigan; El Paso, Texas; Chihuahua, Mexico; Laurel, Mississippi; Rochester, New York; Kokomo, Indiana; Pontiac, Michigan; Warren, Ohio; Irvine, California; and Flint, Michigan.

3. DuPont and DAS were parties to a Loan Term Global Contract dated as of October 10, 2003, as amended by Amendment No. 1 to Contract dated October 14, 2004, Amendment No. 2 to Contract dated January 1, 2006, the Contract Regarding Modified Payment Terms dated March 6, 2006, the Contract Regarding Modified Payment Terms dated June 30, 2006, and Amendment No. 3 to Contract dated September 1, 2006 (collectively, the "**Global Contract**").

4. Defendants supplied industrial resins and related products to the Debtors under the terms and conditions set forth in the Global Contract.

5. In particular, Defendants sold goods to the Debtors under the Global Contract pursuant to more than 100 separate purchase orders and purchase order modifications.

6.    In addition, the Defendants sold goods to the Debtors pursuant to at least 50 other purchase orders which were unrelated to the Global Contract.

7.    In total, the sale of goods by the Defendants to the Debtors prior to the Petition Date was governed by not less than 150 separate purchase orders and purchase order modifications.

**B.    Post-Petition Amendments to the Global Contract**

8.    After the Petition Date, Defendants, lacking any knowledge of the pendency of this Adversary Proceeding, continued to sell goods to the Debtors.

9.    Indeed, after the Petition Date, DuPont negotiated four amendments to the Global Contract with the Debtors, which extended the term of the Global Contract and provided the Debtors with favorable and competitive pricing, productivity and cost reduction initiatives, specialized product development, and the opportunity to earn significant rebates.

10.    During the negotiations between the Debtors and DuPont regarding amendments to the Global Contract and continuation of business post-petition, the Debtors never indicated to DuPont that the Debtors would seek to recover the alleged preferential transfers made by the Debtors to the Defendants.

**C.    The Defendants' Sale of Claims Against the Debtors**

11.    DuPont and Latigo Master Fund, Ltd. ("**Claims Buyer**") entered into a Transfer of Claim Agreement dated December 14, 2006 ("**Transfer Agreement**"), pursuant to which DuPont sold to the Claims Buyer certain pre-petition claims of DuPont against the Debtors in the aggregate amount of $2,444,634.79 ("**Prepetition Claim**").

12.    The purchase price paid by the Claims Buyer to DuPont under the Transfer Agreement was $2,273,510.35, totaling 93% of the Prepetition Claim.

**D.    Lack of Notice of the Commencement of this Adversary Proceeding**

13.    On September 28, 2007, the Debtors commenced this Adversary Proceeding by filing under seal the Complaint to Avoid and Recover Transfers Pursuant to 11 U.S.C. §§ 547 and 550 ("**Original Complaint**") (A.P. Docket No. 1).

14.    The Original Complaint seeks to recover alleged preferential transfers in the aggregate amount of $16,628,682.75 allegedly received by several DuPont entities, including the Defendants, from the Debtors in 2005.

15.    The Original Complaint was filed by each of the Debtors as plaintiffs and did not specify which of the Debtors purportedly made each of the alleged preferential transfers or which of the DuPont entities received such transfers.

16.    Defendants did not have knowledge that Debtors would seek to recover any alleged preferential transfers received by the Debtors until the Defendants were served with the Original Complaint on or about March 25, 2010.

17.    The Defendants *were not served* with notice of the Debtors' motion to file adversary proceeding complaints under seal or any motions to extend the time for service of the Original Complaint.

18.    Although the Defendants' counsel may have received electronic notice of the Debtors' motion to file adversary proceeding complaints under seal or the motions to extend the time for service of the Original Complaint, the Defendants did not have any knowledge that the Original Complaint had been filed or that the Debtors would seek to recover alleged preferential transfers made to the Defendants.

19.    The Defendants were aware, however, that a two-year statute of limitations governs avoidance action.

- 4 -

20.     Moreover, the Debtors' First Amended Disclosure Statement filed on December 10, 2007 and approved by the Court, provided for a 100 percent plan, did not disclose that any DuPont entity had been or would be sued, and expressly stated that there was no intention to pursue the preference actions.

21.     Upon expiration of the applicable statute of limitation in October 2007, the Defendants had no reason to suspect that the Debtors would attempt to recover any alleged preferential transfers from the Defendants.

22.     As a result, the Defendants' counsel and the Defendants themselves were not actively monitoring the voluminous dockets of these bankruptcy cases for any filings related to the Debtors' claims against the Defendants in connection with the alleged preferential transfers.

### E.      Dismissal of the Original Complaint

23.     The Defendants filed a joinder to certain motions to dismiss filed by other defendants in the various preference actions commenced by the Debtors (collectively, "**First Wave Motions to Dismiss**"), seeking dismissal of the Original Complaint for the reasons stated in the First Wave Motions to Dismiss (Docket No. 19,999, as amended by 20,063).

24.     The Defendants later filed a statement in support of various reply briefs filed by other defendants in support of the First Wave Motions to Dismiss (Docket No. 20,323).

25.     On September 9, 2010, the Court entered an order granting in part the First Wave Motions to Dismiss ("**Dismissal Order**") (Docket No. 20,579). The Dismissal Order dismissed with prejudice as abandoned all claims against foreign suppliers or against defendants who received less than $250,000.

- 5 -

26.  The Dismissal Order further dismissed various complaints filed by the Debtors, including the Original Complaint, without prejudice for failure "to plead sufficient facts to state a claim" as required by Rule 8 of the Federal Rules of Civil Procedure, made applicable by Rule 7008 of the Federal Rules of Bankruptcy Procedure.

### F.  Motion for Leave to File the Amended Complaint

27.  On September 7, 2010, the Debtors filed the Motion for Leave, seeking leave to file its First Amended Complaint to Avoid and Recover Transfers Pursuant to 11 U.S.C. §§ 547 and 550 ("**Amended Complaint**").

28.  The Amended Complaint seeks to recover alleged preferential transfers in the aggregate amount of $16,877,816.18 allegedly made by DAS to the Defendants

29.  DAS is the only plaintiff under the Amended Complaint which only identifies three named Defendants.

## II.  THE DEBTORS' MOTION FOR LEAVE TO AMEND THE COMPLAINT SHOULD BE DENIED

30.  Rule 15(a) (2) states that "[t]he court should freely give leave [to amend the complaint] when justice so requires." Fed. R. Civ. Pro. 15(a) (2), made applicable by Fed. R. Bankr. Pro. 7015.

31.  Although leave to amend is liberally granted, the "court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." McCarthy v Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007).

### A.  The Amended Complaint is Futile

32.  "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." Lucente v. Int'l Bus. Machines Corp., 310 F.3d 243, 258 (2d Cir. 2002).

- 6 -

33.     Because the determination whether amending the complaint is futile incorporates the standard for granting a motion to dismiss under Rule 12(b)(6), leave should not be granted where the proposed amended complaint does not contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 555, 570 (2007)).

34.     For the same reason, leave to amend a complaint may be denied where an affirmative defense is "clearly established by the allegations within" the proposed amended complaint. Pani v. Empire Blue Cross Blue Shield, 152 F. 3d 67, 75 (2d Cir. 1998).

35.     In addition, the court is permitted to "rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6)" and, likewise, in determining whether an amendment to the complaint would be futile. *Id.*

### *(i)   The Amended Complaint Fails to Allege Facts Sufficient to State a Claim against Defendants*

36.     The Original Complaint did not specify which of the Debtors made each alleged preferential transfer to the Defendants.

37.     In order to remedy the pleading deficiency, the Amended Complaint alleges that DAS "made, or caused to be made" each of the alleged preferential transfers to the Defendants "for or, on account of, an antecedent debt owed to the Defendants" pursuant to certain purchase orders and invoices referred on Exhibit 1 to the Amended Complaint. *See* Amended Complaint, ¶ 24.

38.     The Amended Complaint further alleges that DAS "assumed or otherwise became obligated for all payment obligations" under the purchase orders and other agreements between the Debtors and the Defendants.

39.  The Amended Complaint fails to allege specific facts to support each element of Section 547 of the Bankruptcy Code.  *See* Iqbal, 129 S. Ct. at 1949.

40.  First, among other things, DAS does not allege that it, in fact, made the alleged preferential transfers to the Defendants; rather, the Amended Complaint states that DAS "made, or caused to be made," the alleged preferential transfers.

41.  Second, the Amended Complaint does not adequately allege that each of the alleged preferential transfers was made "on account of an antecedent debt owed by" DAS itself.  11 U.S.C. § 547(b)(2); *see generally* In re Caremerica, Inc., 409 BR 737, 750-751 (Bankr. E.D.N.C. 2009).

42.  Rather, the Amended Complaint alleges that DAS performed accounting and payment services on behalf of the Debtors and was "obligated" on the debt owed to the Defendants.

*(ii)    The Amended Complaint is Barred by Laches*

43.  As is more fully set forth in the First Wave Motions, the doctrine of laches bars the plaintiff's claims where the "plaintiff unreasonably delayed bringing suit thereby causing prejudice to the defendant."  Profitness Physical Therapy v. Pro-Fit Orthopedic, 314 F. 3d 62, 69 (2nd Cir. 2002).

44.  Here, the facts demonstrating the unreasonableness of the Debtors' four and a half year delay in commencing this Adversary Proceeding are fully set forth in the First Wave Motions.

45.  In addition, the filing of the Complaint under seal and service of the Original Complaint nearly four and a half years after the Petition Date prejudiced the Defendants in several ways.

46.     First, *if* Defendants had knowledge that the Debtors would seek to recover the alleged preferential transfers from the Defendants, they *would not* have continued to do business with the Defendants without some assurance that all of the prepetition contracts between the Debtors and the Defendants would be assumed.

47.     Similarly, *if* DuPont had knowledge that the Debtors would seek to recover the alleged preferential transfers from the Defendants, DuPont *would not* have extended the term of the Global Contract and certainly *would not* have provided the Debtors with more favorable terms of payment.

48.     Second, *if* Defendants had knowledge that the Debtors would seek to recover the alleged preferential transfers from the Defendants during the time in which the Original Complaint was sealed, the Defendants would have had the option to pay to the Debtors the amount of the alleged preferential transfer, file a claim against the Debtors pursuant to Rule 3002(c)(3) for the amount paid ("**Avoided Transfer Claim**"), and sell the Avoided Transfer Claim for at least 93 cents on the dollar in the same manner that DuPont sold the Prepetition Claim pursuant to the Transfer Agreement.

49.     Thus, the Debtors' failure to disclose the filing of the Original Complaint or the existence of the alleged preferential transfer claims against the Defendants prevented the Defendants from taking advantage of the favorable market for the sale of claims against the Debtors which existed prior to March 2010.

50.     Third, as a result of the service of the Original Complaint nearly four and a half years after the Petition Date, the documentary evidence regarding the alleged preferential transfers is no longer readily available to the Defendants because of the complexity of the Debtors' and the Defendants' accounting systems, specifically, the Debtors' use of a delivery

note number for payment versus the Defendants' use of an invoice number for each transaction; the complexity and sheer number of transactions between the Debtors and the Defendants; and changes to the electronic accounting systems of both the Debtors and the Defendants from the pre-petition period to the present. In addition, the Debtors and the Defendants entered into stipulations agreeing to the allowance of the Defendants' claims against the Debtors. The Defendants subsequently made adjustments to their books and records to reflect the allowed amounts of its claims. Given the passage of time since the petition was filed, many of the Defendants records have been electronically archived making the retrieval of specific payment application and transaction history time-consuming and difficult, especially given the extensive number of transaction between the Debtors and the Defendants over time.

51. As is noted above, the sale of goods by the Defendants to the Debtors prior to the Petition Date was governed by not less than 150 separate purchase orders.

52. In addition, the Complaint seeks to recover approximately 250 separate transfers alleged to have been made by DAS to the Defendants pursuant to the purchase orders.

53. Had the Debtors disclosed to the Defendants that the Debtors would seek to recover the alleged preferential transfers from the Defendants during the time in which the Original Complaint was sealed, the Defendants would have retained all records regarding the transactions with the Debtors prior to the Petition Date and all other information which would be necessary in defending this Adversary Proceeding.

54. In addition, the Defendants would have obtained relevant information from all employees who were involved in the transactions with the Debtors prior to the Petition Date, each of whom is necessary to present a defense in this Adversary Proceeding and some of whom are longer available to assist in such defense.

- 10 -

> *(iii)    The Amended Complaint is Barred by the Statute of Limitations and the Orders Extending the Time for the Debtors to Serve the Complaint Should be Vacated.*

55.    For the reasons stated in the First Wave Motions, the Amended Complaint is barred by the statute of limitations set forth in Section 546(a) of the Bankruptcy Code.

> *(iv)    This Court's Statements That Proposed Defendants Which Did Not Receive Notice of the Extension Motions May Now Challenge Them De Novo*

56.    Recognizing that notice of Delphi's motions to extend the time to serve the Original Complaint may have been insufficient or non-existent, this Court repeatedly held that defendants in DuPont's circumstance could challenge the extension motions *de novo*. On July 22, 2010, for example, this Court recognized the inequity of binding defendants to decisions in adversary proceedings of which they were unaware. According to the Court:

> [I]f [a Defendant] didn't get notice, it's wide open and I should look at it as whether, you know, it was appropriate to have entered those orders. And they should have all their – you know, their rights to say the [Procedures Order and Extension Orders] shouldn't have been entered.
>
> * * *
>
> [I]f someone really didn't get notice of the extension motions, then it would seem to me they should be able to argue to me as if the motions were being made right now . . . .

July 22, 2010 Transcript, at pp. 103, 119. Indeed, this Court held that if, as here, a party had no notice of the extension motions, "*it's a slam dunk as far as looking at the order as brand new and that person can raise whatever issue they want as to that order*." *Id.* at 107 (emphasis supplied).

> *(vi)    The Amended Complaint is Barred by Judicial Estoppel and Res Judicata*

57.    For the reasons stated in the First Wave Motions, the Amended Complaint is barred by the doctrines of judicial estoppel and res judicata.

### *(vi) DAS Was Solvent During the Preference Period*

58. The proposed Amended Complaint pleads only in conclusion that it was insolvent at the time of the Transfers. The sole allegation in the Amended Complaint with respect to insolvency is at Paragraph 24 and states only that "Plaintiff is presumed to have been, and was in fact, insolvent at the time the Transfers were made." The Amended Complaint offers no facts to support this conclusory statement.

59. In fact, DAS has *admitted* that it was solvent at the time of the Transfers. DAS's own schedules, which this Court can take judicial notice of, state that, *as of the Petition Date, DAS had over $2.6 billion in net equity,* with total assets of $8,133,427,809 and total liabilities of $5,526,447,015. *See* Notice of Amendments of Schedules of Assets and Liability, dated April 18, 2006 (Case No. 05-44641, Docket No. 10).

60. The Debtors' (including DAS') bankruptcy filings were driven by their "transformational issues" such as labor, pension and General Motors Corporation ("GM") problems. Moreover, based on DAS's schedules, DAS was not liable for the debts associated with these transformational issues that its affiliates were.

61. Moreover, Dephi's performance in the marketplace also confirms solvency.

62. Given DAS's failure properly to plead insolvency and the fact that DAS was indeed solvent (with a $2.6 billion net equity), any amendment is futile here. DAS cannot prove a crucial element of its avoidance action.

B. **Permitting the Plaintiff to Amend the Complaint Would Prejudice Defendants**

63. In determining whether granting leave to amend would prejudice a defendant, the courts consider whether the amendment to the complaint "would require the

- 12 -

opponent to expend significant additional resources to conduct discovery and prepare for trial or significantly delay the resolution of the dispute." Ruotolo v. City of New York, 514 F. 3d 184, 192 (2d Cir. 2008) (internal citations omitted).

64. Delay is prejudicial where it places an "unfair burden on the opposing party." Adams v. Gould Inc., 739 F. 2d 858, 868 (3rd Cir. 1984).

65. In addition, "the longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice." Block v. First Blood Associates, 988 F.2d 344, 350 (2d Cir. 1993).

66. Here, as noted above, the Defendants were prejudiced by the substantial delay in the commencement of this Adversary Proceeding.

67. Notwithstanding the Debtors' arguments to the contrary in the Motion for Leave, the prejudice suffered by the Defendant in connection with the delay in commencing this Adversary Proceeding is inseparable from the prejudice that would arise from permitting DAS to file the Amended Complaint.

68. For all of the reasons noted above, permitting DAS to file the Amended Complaint would impose an unfair burden on the Defendants.

## III. DEFENDANTS RESPECTFULLY INCORPORATE ALL OTHER ARGUMENTS IN OPPOSITION TO THE MOTION FOR LEAVE AND IN SUPPORT OF THE MOTIONS TO DISMISS

69. Several defendants in the various avoidance actions commenced by the Debtors have filed motion to dismiss the complaints filed the Debtors on various grounds and have filed objections to the Debtors' Motion for Leave. Because the factual circumstances of the other defendants in these matters are similar to the Defendants' factual circumstances, the

Defendants respectfully incorporate all applicable arguments raised by the other defendants in their oppositions to the Motion for Leave and in the motions to dismiss.

## IV.  MEMORANDUM OF LAW

70.    Because the arguments and legal authorities supporting the relief requested are fully set forth in this Objection, the Defendants respectfully submits that no separate memorandum of law in support of this Objection is required pursuant to Local Bankruptcy Rule 9013-1(a).

WHEREFORE, the Defendants respectfully requests that the Court enter an order sustaining this Objection and denying the Motion, and for such other and further relief as the Court deems appropriate.

Dated:  Buffalo, New York
        November 24, 2010

                              PHILLIPS LYTLE LLP

                              By   /s/ Angela Z. Miller
                                    Angela Z. Miller (AM4473)
                                    Allan L. Hill (AH3707)
                              437 Madison Avenue, 34th Fl.
                              New York, New York  10022
                              Telephone:  (212) 759-4888
                                -and-
                              3400 HSBC Center
                              Buffalo, New York  14203
                              Telephone:  (716) 847-8400
                              Fax:  (716) 852-6100

                              *Attorneys for the Defendants E.I. du Pont de Nemours and Company and affiliates*

Doc # 01-2412633.3