Phillips Lytle LLP
Angela Z. Miller (AM4473)
Allan L. Hill (AH3707)
437 Madison Avenue, 34th Fl.
New York, New York  10022
Telephone:  (212) 759-4888
  and
3400 HSBC Center
Buffalo, New York  14203
Telephone:  (716) 847-8400
Fax:  (716) 852-6100

Hearing Date:  December 16, 2010 at 10:00 a.m. ET

Response Deadline:  November 24, 2010 at 4:00 p.m. ET

*Attorneys for E.I. du Pont de Nemours and Company and affiliates*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x

In re:

DPH HOLDINGS CORP., *et al.*,

---------------------------------------------------------------

DELPHI AUTOMOTIVE SYSTEMS, LLC,

                 Plaintiffs,

       v.

DUPONT COMPANY, DUPONT POWDER
COATINGS USA INC., and E I DUPONT DE
NEMOURS & CO. INC.,

                 Defendants.
---------------------------------------------------------------x

Chapter 11

Case No. 05-44481 (RDD)

(Jointly Administered)

Adv. Pro. No. 07-02242 (RDD)

**DECLARATION OF SUSAN HERR IN RESPOSNE TO REORGANIZED DEBTORS' MOTION FOR LEAVE TO FILE AMENDED COMPLAINTS**

I, SUSAN HERR, declare under penalty of perjury pursuant to 28 U.S.C. § 1746, that the following is true and correct to the best of my knowledge, information and belief:

    1.    At all times relevant herein, until August 1, 2010, I was a Bankruptcy/Credit Specialist with E.I. du Pont de Nemours and Company ("**DuPont**") and am

now a contract employee working in the same capacity.  As such, I have reviewed of books and records of DuPont, Dupont Company, and Dupont Powder Coatings USA Inc. (collectively, the "**Defendants**") concerning transactions with Delphi Corporation and its affiliates and subsidiaries (collectively, the "**Debtors**"), including Delphi Automotive Systems, LLC ("**DAS**").

2. I am familiar the facts and circumstances giving rise to the Debtor's complaint commencing this Adversary Proceeding, filed on September 28, 2007 ("**Complaint**") (A.P. Docket No. 1).

### **Defendants' Business Relationship with the Debtors**

3. On October 8 and 14, 2005 (collectively, the "**Petition Date**"), the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

4. Before and after the Petition Date, the Defendants, through various business units but primarily Defendants' Engineering Polymers unit, sold industrial resins and other products to the Debtors for use in the manufacturing of automotive parts at more than ten different facilities operating by the Debtors across the country and in Mexico, including, among others, the Debtors' facilities located in Brownsville, Texas; Saginaw, Michigan; El Paso, Texas; Chihuahua, Mexico; Laurel, Mississippi; Rochester, New York; Kokomo, Indiana; Pontiac, Michigan; Warren, Ohio; Irvine, California; and Flint, Michigan.

5. DuPont and DAS were parties to a Loan Term Global Contract dated as of October 10, 2003, as amended by Amendment No. 1 to Contract dated October 14, 2004, Amendment No. 2 to Contract dated January 1, 2006, the Contract Regarding Modified Payment Terms dated March 6, 2006, the Contract Regarding Modified Payment Terms dated June 30, 2006, and Amendment No. 3 to Contract dated September 1, 2006 (collectively, the "**Global Contract**").

6. DuPont supplied 100% of DAS' global manufacturing needs for specific industrial resins and related products under the terms and conditions set forth in the Global Contract.

7. In particular, DuPont sold goods to DAS under the Global Contract pursuant to more than one hundred (100) separate purchase orders and purchase order modifications.

8. In addition, the Defendants sold goods to the Debtors pursuant to at least fifty (50) other purchase orders and purchase order modifications which were unrelated to the Global Contract.

9. In total, the sale of goods by the Defendants to the Debtors prior to the Petition Date was governed by not less than one hundred fifty (150) separate purchase orders and purchase order modifications.

**Lack of Notice of the Commencement of this Adversary Proceeding**

10. On September 28, 2007, the Debtors commenced this Adversary Proceeding by filing the Complaint under seal.

11. The Complaint seeks to recover nearly $17 million in alleged preferential transfers made in 2005.

12. Defendants did not have knowledge that Debtors would seek to recover any alleged preferential transfers received by the Debtors until the Defendants received the Complaint on or about March 25, 2010.

13. The Defendants were not served with notice of the Debtors' motion to file adversary proceeding complaints under seal or any motions to extend the time for service of the Complaint.

14. Although the Defendants' counsel may have received electronic notice of the Debtors' motion to file adversary proceeding complaints under seal or the motions to extend the time for service of the Complaint, the Defendants did not have any knowledge that the Complaint had been filed or that the Debtors would seek to recover alleged preferential transfers made to the Defendants.

15. As a result, the Defendants' counsel and the Defendants themselves were not actively monitoring the voluminous dockets of these bankruptcy cases for any filings related to the Debtors' claims against the Defendants in connection with the alleged preferential transfers.

16. The Defendants were aware, however, that a two-year statute of limitations governs avoidance actions.

17. Upon expiration of the applicable statute of limitation in October 2007, the Defendants had no reason to suspect that the Debtors would attempt to recover any alleged preferential transfers from the Defendants.

**Prejudice**

18. The filing of the Complaint under seal and service of the Complaint nearly four and a half years after the Petition Date prejudiced the Defendants in the following manner.

A.  Post-Petition Amendments to the Global Contract

19. After the Petition Date, Defendants, lacking any knowledge of the pendency of this Adversary Proceeding, continued to sell goods to the Debtors.

20. Indeed, after the Petition Date, DuPont negotiated four amendments to the Global Contract with the Debtors, which extended the term of the Global Contract and provided

the Debtors with favorable and competitive pricing, productivity and cost reduction initiatives, specialized product development, and the opportunity to earn significant rebates.

21. During the negotiations between the Debtors and DuPont regarding amendments to the Global Contract and continuation of business post-petition, the Debtors never indicated to DuPont that the Debtors would seek to recover the alleged preferential transfers made by the Debtors to the Defendants.

22. If Defendants had knowledge that the Debtors would seek to recover the alleged preferential transfers from the Defendants, they would not have continued to do business with the Defendants without some assurance that all of the prepetition contracts between the Debtors and the Defendants would be assumed.

23. In addition, if DuPont had knowledge that the Debtors would seek to recover the alleged preferential transfers from the Defendants, DuPont would not have extended the term of the Global Contract and certainly would not have provided the Debtors with more favorable terms of payment.

B.  The Defendants' Sale of Claims Against the Debtors

24. DuPont and Latigo Master Fund, Ltd. ("**Claims Buyer**") entered into a Transfer of Claim Agreement dated December 14, 2006 ("**Transfer Agreement**"), pursuant to which DuPont sold to the Claims Buyer certain claims of DuPont against the Debtors in the aggregate amount of $2,444,634.79 ("**Prepetition Claim**").

25. The purchase price paid by the Claims Buyer to DuPont under the Transfer Agreement was $2,273,510.35, totaling 93% of the Prepetition Claim.

26. If Defendants had knowledge that the Debtors would seek to recover the alleged preferential transfers from the Defendants during the time in which the Complaint was

sealed, the Defendants would have had the option to pay to the Debtors the full amount the alleged preferential transfer and then file a claim against the Debtors pursuant to Rule 3002(c)(3) for the amount paid ("**Avoided Transfer Claim**").

27. Had the Debtors disclosed to the Defendants that the Debtors would seek to recover the alleged preferential transfers from the Defendants during the time in which the Complaint was sealed, the Defendants likely would have been able to sell the Avoided Transfer Claim for at least 93 cents on the dollar in the same manner that DuPont sold the Prepetition Claim pursuant to the Transfer Agreement.

28. The Debtors' failure to disclose the filing of the Complaint or the existence of the alleged preferential transfer claims against the Defendants prevented the Defendants from taking advantage of the favorable market for the sale of claims against the Debtor which existed prior to March 2010.

C.  Prejudice in Defending Against the Debtor's Preference Claims

29. As is noted above, the sale of goods by the Defendants to the Debtors prior to the Petition Date was governed by not less than one hundred fifty (150) separate purchase orders and purchase order modifications.

30. In addition, the Complaint seeks to recover approximately 250 separate transfers made by DAS to the Defendants pursuant to the purchase orders.

31. As a result of the service of the Complaint nearly four and a half years after the Petition Date, the documentary evidence regarding the alleged preferential transfers is no longer readily available to the Defendants because of the complexity of the Debtors' and the Defendants' accounting systems, specifically, the Debtors' use of a delivery note number for payment versus the Defendants' use of an invoice number for each transaction; the complexity

and sheer number of transactions between the Debtors and the Defendants; and changes to the electronic accounting systems of both the Debtors and the Defendants from the Pre-petition period to the present.  In addition, the Debtors and the Defendants entered into stipulations agreeing to the allowance of the Defendants' claims against the Debtors.  The Defendants subsequently made adjustments to their books and records to reflect the allowed amounts of its claims.  Given the passage of time since the petition was filed, many of the Defendants records have been electronically archieved making the retrieval of specific payment application and transaction history time-consuming and difficult, especially given the extensive number of transaction between the Debtors and the Defendants over time.

32.    Had the Debtors disclosed to the Defendants that the Debtors would seek to recover the alleged preferential transfers from the Defendants during the time in which the Complaint was sealed, the Defendants would have retained all records regarding the transactions with the Debtors prior to the Petition Date and all other information which would be necessary in defending this Adversary Proceeding.

33.    In addition, the Defendants would have obtained relevant information from all employees who were involved in the transactions with the Debtors prior to the Petition Date, each of whom is necessary to present a defense in this Adversary Proceeding and some of whom are longer available to assist in such defense.

Dated:  November 23, 2010

                                                          /s/ Susan Herr
                                                          Susan Herr

Doc # 01-2411495.2