MCGRAIL & BENSINGER LLP
676A Ninth Avenue #211
New York, New York  10036
Telephone:  (646) 290-6496
Facsimile:  (646) 224-8377
David C. McGrail, Esq. (DM 3904)

Counsel to Sunstone Components Group, Inc. (f/k/a Solid State Stamping Inc.)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X

| | |
|---|---|
| In re: : | Chapter 11 |
| : | |
| DELPHI CORPORATION, et al., : | Case No. 05-44481-RDD |
| : | |
| Debtors. : | |

--------------------------------------------------------------X

| | |
|---|---|
| DELPHI CORPORATION, et al., : | |
| : | |
| Plaintiffs, : | Adv. No. 07-02633-RDD |
| v. : | |
| : | |
| SOLID STATE STAMPING INC., SOLID : | |
| STATE STAMPING I and SOLID STATE : | |
| STAMPLING INC., : | |
| : | |
| Defendants. : | |

--------------------------------------------------------------X

### SUNSTONE COMPONENTS GROUP, INC.'S JOINDER IN THE OBJECTIONS AND BRIEFS WITH RESPECT TO REORGANIZED DEBTORS' MOTION FOR LEAVE TO FILE AMENDED COMPLAINTS

Defendant Sunstone Components Group, Inc. (f/k/a Solid State Stamping Inc.) ("SCG"), by and through its undersigned counsel, hereby joins in, and incorporates by reference, similarly situated defendants' objections and briefs with respect to Reorganized Debtors' Motion for Leave to File Amended Complaints, including, without limitation, Affinia Group Holding's Inc.'s and Blake Parts, Inc.'s Brief in Opposition to Reorganized Debtors' Motion for Leave to File Amended Complaints (D.I. # 20841).

In support of this joinder, SCG attaches the Declaration of Neil A. Allen as Exhibit A

hereto.

DATED:   November 24, 2010
         New York, New York

MCGRAIL & BENSINGER LLP

s/ David C. McGrail
David C. McGrail, Esq. (DM 3904)
676A Ninth Avenue #211
New York, New York  10036
Telephone:  (646) 290-6496
Facsimile:  (646) 224-8377

Counsel to Sunstone Components Group, Inc. (f/k/a
Solid State Stamping Inc.)

**Exhibit A**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

In re:                                          :     Chapter 11
                                                :
DELPHI CORPORATION, et al.,                     :     Case No. 05-44481-RDD
                                                :
                              Debtors.           :
------------------------------------------------------------X
DELPHI CORPORATION, et al.,                     :
                                                :
                              Plaintiffs,        :     Adv. No. 07-02633-RDD
            v.                                   :
                                                :
SOLID STATE STAMPING INC., SOLID                :
STATE STAMPING I and SOLID STATE                :
STAMPLING INC.,                                  :
                                                :
                              Defendants.        :
------------------------------------------------------------X

## DECLARATION OF NEIL D. ALLEN IN SUPPORT OF SUNSTONE COMPONENTS GROUP, INC.'S JOINDER IN THE OBJECTIONS AND BRIEFS WITH RESPECT TO REORGANIZED DEBTORS' MOTION FOR LEAVE TO FILE AMENDED COMPLAINTS

STATE OF CALIFORNIA            )
                               ) ss.:
COUNTY OF RIVERSIDE            )

Pursuant to 28 § 1746, Neil D. Allen, declares as follows:

### Background

1.    I have been employed by Sunstone Components Group, Inc. (f/k/a Solid State Stamping Inc.) ("SCG") since 2000 and currently am its Executive Vice President and Chief Operating Officer.

2.    I work at SCG's corporate offices, which are located at 42580 Rio Nedo, Temecula, CA 92590-3727. I am familiar with the day-to-day operations, business, and financial affairs of SCG.

3.      I submit this declaration in support of SCG's Joinder in the Objections and

Briefs With Respect to Reorganized Debtors' Motion for Leave to File Amended Complaints,

Dated November 24, 2010.

4.      I have personal knowledge of the facts set forth herein, and if I were called

to testify, I would and could testify competently concerning those facts.

### SCG/Delphi Relationship

5.      Since 1986, SCG has supplied connection terminal pins to Delphi and its

predecessors. The parties have operated under Delphi's general terms and conditions, which

were in place on October 8, 2005, when Delphi filed for bankruptcy protection.

6.      Since 1996, Delphi has submitted purchase orders to SCG electronically,

SCG has processed those purchase orders through its electronic requisition purchasing system,

and Delphi has paid SCG through electronic funds transfers.

7.      Historically, including from January 1, 2003 through October 8, 2005,

SCG has had great difficulty reconciling Delphi's payments with its purchase orders and

invoices, in large part because different Delphi entities have been responsible for purchasing,

pricing, and payment. Delphi's purchase orders, invoices, and payments almost never match up.

8.      As of October 8, 2005, Delphi represented approximately 90% of SCG's

business. While that percentage has decreased in recent years, Delphi is still one of SCG's

largest customers.

### Lack of Notice

9.      SCG received, by United States Mail, certain "first day" pleadings from

Delphi after it filed its bankruptcy case on October 8, 2005. From January 2006 through

February 2010, however, it received only two pleadings with respect to either Delphi's

bankruptcy case or the Adversary Proceeding (as defined below): (1) the First Amended

Disclosure Statement With Respect to First Amended Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-in-Possession, Dated December 10, 2007, and related documents and (2) the Notice of (A) Order Approving Modifications to First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-in-Possession and (B) Occurrence of Effective Date, dated October 6, 2009.

10.    SCG did not receive electronic notice of any filings in either Delphi's bankruptcy case or the Adversary Proceeding.

11.    Upon information and belief, on August 6, 2007, Delphi sought entry of an order seeking, among other things, the establishment of procedures for certain adversary proceedings, including obtaining leave to file avoidance actions under seal, an extension of time beyond the 120-period provided for in Fed. R. Civ. P. 4(m) to serve summons and complaints, and a stay of adversary proceedings until service of process was effected (the "Preservation of Estate Claims Procedures Motion").

12.    SCG never received, nor did it have knowledge of, the Preservation of Estate Claims Procedures Motion or any of the subsequent motions and other pleadings which, upon information and belief, sought similar extensions and relief.

13.    Upon information and belief, on September 29, 2007 Delphi filed an adversary proceeding (the "Adversary Proceeding") against SCG under seal.

14.    SCG was not aware of the Adversary Proceeding until it was served with a summons and the Complaint in late February 2010.

**Prejudice**

15.    Prior to April 15, 2008, SCG used M2K as its information and electronic storage system for all of its customers. The M2K system was the repository/server that housed all of SCG's (1) account and accounting information (including general ledgers, accounts

3

receivable aging, and payment information), (2) electronic requisition purchasing system for inventory and purchase order management, and (3) electronic files (including all of SCG's emails) with respect to Delphi (collectively, the "Delphi Electronic Information").

16.     On April 15, 2008, SCG acquired Molding International and Engineering ("MIE") and adopted MIE's information and electronic storage system. In connection therewith, all then-existing Delphi Electronic Information (and other customer electronic information) was purged. The purging process took about a month, with all Delphi Electronic Information purged by September 30, 2008 at the absolute latest.

17.     <u>As a result, SCG has absolutely no pre-April 15, 2008 Delphi Electronic Information. That data no longer exists and cannot, under any circumstances or at any cost, be retrieved or recovered.</u>

18.     In connection with, and shortly after, its acquisition of MIE, SCG also destroyed all pre-April 15, 2005 hard copies of all documents with respect to its Delphi transactions (and other customer transactions).

19.     To the extent any hard copies exist, they would cover the period from April 15, 2005 to April 15, 2008 and would be located in a storage facility containing approximately 1,000 boxes of SCG documents.

20.     Those documents are not indexed by customer. Thus, to find hard copies of Delphi documents (if they even exist) would be a monumental task, requiring countless hours of searching at an expense that SCG cannot even begin to estimate.

21.     In any event, because transactions between Delphi and SCG have generally been undertaken electronically since 1996, SCG does not believe that it has extensive documentation regarding Delphi transactions in hard copy form. Among other things, it would not have any copies of Delphi checks, as Delphi made payments via electronic funds transfers.

4

22.     Finally, there were two redwelds of hard copies of documents located at SCG's headquarters. Those redwelds have been turned over to SCG's outside counsel. I have been informed by outside counsel that those documents contain limited, if any, information regarding the purported preference payments set forth in the Complaint and the Amended Complaint and absolutely none of the historical information necessary to mount an "ordinary course" defense or certain other defenses.

23.     I have reviewed Schedule A to both the Complaint and the Amended Complaint. SCG has no information regarding those purported transactions other than what is described herein.

24.     The individuals most familiar with the purported transactions set forth in the Complaint and the Amended Complaint, prior transactions with Delphi, and other matters regarding SCG's relationship with Delphi prior to October 8, 2005 are Mike Dake, who was SCG's Vice President of Finance, and Louise Hanton, who was SCG's Accounting Manager. Mr. Dake left SCG in November 2008 and Ms. Hanton left in March 2009.

25.     Had SCG known that Delphi commenced the Adversary Proceeding against it on September 30, 2007, it would have taken steps to prepare its defense, including preserving the Delphi Electronic Information, keeping hard copies of any pre-April 15, 2005 documents, keeping hard copies of any April 15, 2005-April 15, 2008 documents on site, and gathering information from Mr. Dake and Ms. Hanton prior to their departures.

26.     Because SCG was unaware of the Adversary Proceeding until February 2010, it did not take any of these steps and, as a result, has been greatly prejudiced in its ability to defend the Adversary Proceeding.

5

27.   SCG is not a large company (fewer than 100 employees) and does not have anywhere near the financial wherewithal to satisfy a $3,117,041.10 judgment (the amount set forth in the Amended Complaint).

I declare under penalty of perjury under the laws of the United States of American that the foregoing is true and correct.

November 24, 2010
Temecula, CA

s/ Neil D. Allen
Neil D. Allen

6