KEATING MUETHING & KLEKAMP PLL          Hearing Date:    2/17/2011 at 10:00 (ET)
One East Fourth Street, Suite 1400           Response:        1/28/2011
Cincinnati, OH  45202
Telephone:     (513) 579-6400
Facsimile:     (513) 579-6457
Jason V. Stitt, Esq.
*Counsel for Defendant, F.A. Tech Corporation*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

———————————————————     )
In re:                                                     )    Chapter 11
                                                           )
DELPHI CORPORATION, *et al.*,               )    Case No. 05-44481 [RDD]
                                                           )    (Jointly Administered)
                        Debtors.                    )
                                                           )
———————————————————     )
                                                           )
DELPHI CORPORATION, *et al.*,               )    Adv. Proc. No. 07-02350 [RDD]
                                                           )
                        Plaintiffs,              )
                                                           )
        -v-                                             )
                                                           )
F.A. TECH CORPORATION,                      )
                                                           )
                        Defendant.               )
———————————————————     )

**F.A. TECH CORPORATION'S OBJECTION TO REORGANIZED DEBTORS'**
**MOTION FOR LEAVE TO FILE AMENDED COMPLAINTS**

F.A. Tech Corporation ("F.A. Tech"), by and through its undersigned counsel, hereby

files this objection to the Reorganized Debtors' Motion for Leave to File Amended Complaints

[Doc. No. 20575; Adv. Proc. Doc. No. 29] (the "Motion to Amend").  Granting leave so that the

above-captioned Plaintiffs (the "Plaintiffs") may prosecute the proposed Amended Complaint

(attached as Exhibit A to the Motion to Amend) (the "Proposed Amended Complaint") is futile,

and F.A. Tech will be severely prejudiced by the Plaintiffs' undue delay if this case is permitted

to proceed.  As explained below, F.A. Tech had no notice of Extension Motions and Extension

Orders (defined below) and may challenge same, *de novo.* The Proposed Amended Complaint fails to comply with this Court's September 7, 2010 Dismissal Order by failing to properly plead with respect to antecedent debt. Further, Plaintiffs under the Proposed Amended Complaint were solvent as of the petition date and at the time of the alleged transfers. If the Plaintiffs are allowed to amend the Complaint and this case is permitted to continue, F.A. Tech will be at a severe disadvantage in its efforts to defend this matter due to the length of time in which the Plaintiffs have successfully concealed the proceedings. In response to the Motion to Amend, F.A. Tech respectfully states as follows:

## I.    Procedural Background

1.    On October 8, 2005, Delphi Corporation ("Delphi") and certain of its subsidiaries (the "Initial Filers") each filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). On October 14, 2005, three additional U.S. subsidiaries of Delphi (collectively, together with the Initial Filers, the "Debtors") filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

2.    Prior to the commencement of the Debtors' bankruptcy cases, F.A. Tech manufactured machinery and equipment for the Debtors for use in the Debtors' business operations.

3.    By motion dated August 6, 2007 (the "First Extension Motion") [Doc. No. 8905], the Debtors requested the entry of an order seeking, among other things, the establishment of procedures for certain adversary proceedings, including those filed under seal by the Debtors under Bankruptcy Code §§ 541, 544, 545, 547, 548 or 553. [First Extension Motion, at ¶ 17.] As pertinent here, the relief sought included: (i) pursuant to Fed. R. Civ. P. 4(m), an extension of time beyond the initial 120-day period to serve certain adversary summonses and complaints,

(ii) a stay of the various adversary proceedings until service of process was effected, and (iii) authorization for the Plaintiffs to file the Complaints under seal.  *Id.* at ¶¶ 33-38.

4.    These forms of relief requested by the Debtors were purportedly intended to permit the Debtors to "preserve the status quo," and to allow the Debtors to pursue plan confirmation without having to prosecute the sealed adversary proceedings.  *Id.* at ¶ 36.  The Debtors also argued that "sealing should promote the plan process and avoid needless costs relating to actions that remain unnecessary under the Debtors' prospective plan."  *Id.*

5.    In addition, pursuant to the request to file the Complaints under seal, the Debtors also sought to prevent any party, including F.A. Tech, from discovering the sealed Complaints in order to "avoid unnecessarily alarming potential defendants" because the "Debtors have worked to preserve and repair their business relationship with many of the potential defendants during these cases and have negotiated or regained favorable credit terms with many suppliers and are continuing to do so.  The Debtors are also engaged in negotiations with some of the potential defendants on issues unrelated to avoidance actions."  *Id.* at ¶ 37.

6.    No notice of the Preservation of Estate Claims Procedures Motion was given to F.A. Tech.  *See*, Affidavit of Service of the Preservation of Estate Claims Procedures Motion filed by the Debtors on August 10, 2007 [Doc. No. 9039].

7.    On August 16, 2007, this Court entered the Preservation of Estate Claims Procedures Order [Doc. No. 9105] (the "First Extension Order"), granting the relief requested in the Preservation of Estate Claims Procedures Motion by (i) allowing the Debtors to file adversary proceeding Complaints under seal, (ii) directing the Clerk of the Court not to identify any defendants in any adversary proceeding filed under seal, (iii) directing the Clerk of the Court to delay issuing summonses for complaints unless and until the Debtors notified the Clerk of

their intent to prosecute such actions, (iv) staying each adversary action unless and until the Debtors effectuated service of process on the respective defendants, and (v) extending the deadline under Fed. R. Civ. P. 4(m) by which the Debtors would have to serve process to March 31, 2008, so that the Complaints would not be subject to dismissal under Fed. R. Civ. P. 4(m).  [First Extension Order, at ¶¶ 7-10].

8.      Paragraph 11 of the First Extension Order provides that "[t]he Debtors must serve a copy of this order upon each defendant in any [adversary proceeding] either when the Debtors serve a summons and complaint on the defendant or as soon thereafter as practicable."  *Id.* at ¶ 11.

9.      On September 26, 2007, Plaintiffs commenced the Adversary Proceeding by filing its Complaint to Avoid and Recover Transfers Pursuant to 11 U.S.C. §§ 547 and 550 (the "Complaint") under seal with the Clerk but did not commence the case by service of process nor give any other notice to F.A. Tech at that time.  The Complaint seeks to recover alleged preferential transfers made to F.A. Tech in the aggregate amount of $420,597.00.

10.     The statue of limitations for commencing avoidance actions pursuant to Bankruptcy Code §§ 541, 544, 545, 547, 548 or 553 expired on or before October 14, 2007.  *See,* 11 U.S.C. § 546(a).

11.     By motion dated February 28, 2008 (the "Second Extension Motion") [Doc. No. 12922], the Debtors sought to modify Paragraph 8 of the Preservation of Estate Claims Procedures Order to extend, for a second time, the deadline under Fed. R. Civ. P. 4(m) by which the Debtors would be required to serve process by an additional two months to May 31, 2008. [Second Extension Motion at ¶ 18].

- 4 -

12.    The stated purpose for this extension was to "enable the Debtors to fulfill their fiduciary responsibility to preserve valuable estate assets in a manner that would not unnecessarily disrupt the emergence process or the Debtors' current business relationships with potential defendants that are necessary to the Debtors' ongoing operations," as well as to "reduce the administrative and economic burdens [of the adversary proceedings] on the Debtors, the Court, the Clerk of the Court, and the potential defendants." *Id.* at ¶ 21.

13.    In the Second Extension Motion, the Debtors also stated that they would "not retain any of the causes of action asserted in the [adversary proceedings] except those specifically listed on Exhibit 7.24 to the Plan." *Id.* at ¶ 17.  In fact, the Debtors explicitly stated that, of the 742 adversary proceedings commenced under seal, only the claims relating to Laneko Engineering Co., Wachovia Bank, National Association, Laneko Engineering Co. Inc., and their affiliates and subsidiaries were subject to the Preservation of Estate Claims Procedures Order. *Id.* at ¶ 17, n.4.  Exhibit 7.24 to the Plan does not specifically list either the Adversary Proceeding or Complaint against F.A. Tech.

14.    No notice of the Second Extension Motion was given to F.A. Tech.  *See*, Affidavit of Service of Presentation of Estate Claims Motion filed March 5, 2008 [Doc. No. 12970].

15.    On March 28, 2008, the Court entered the Extension of Avoidance Action Service Deadline Order [Doc. No. 13277] (the "Second Extension Order"), modifying Paragraph 8 of the First Extension Order so that the time under Fed. R. Civ. P. 4(m) by which the Debtors must serve a defendant in the adversary proceedings with a summons and complaint was further extended to May 31, 2008.  [Second Extension Order at ¶ 2].

16.    Consistent with Paragraph 11 of the First Extension Order, Paragraph 2 of the Second Extension Order provided that the "Debtors shall serve a copy of this order upon each

defendant in any [adversary proceeding] either when the Debtors serve a summons and complaint on such defendant or as soon thereafter as practicable." *Id.* at ¶ 2.

17.    By motion dated April 10, 2008 (the "Third Extension Motion") [Doc. No. 13361], the Debtors sought to further modify Paragraph 8 of the First Extension Order, as modified by the Second Extension Order, so as to extend for a third time the deadline under Fed. R. Civ. P. 4(m) - i.e., the deadline by which the Debtors would have to serve process - until thirty days after substantial consummation of the Plan or any modified plan.  [Third Extension Motion, at ¶ 19].

18.    The Debtors stated that their purpose for this extension was identical to that set forth in support of the Second Extension Motion, namely, to "enable the Debtors to fulfill their fiduciary responsibility to preserve valuable estate assets in a manner that would not unnecessarily disrupt the emergence process or the Debtors' current business relationships with potential defendants that are necessary to the Debtors' ongoing operations," as well as "reduce the administrative and economic burdens of the [adversary proceedings] on the Debtors, the Court, the Clerk of the Court, and the potential defendants." *Id.* at ¶ 22.

19.    The Third Extension Motion once again stated that (i) the Debtors would "not retain any of the causes of action asserted in the [adversary proceedings] except those specifically listed on Exhibit 7.24 to the Plan;" and (ii) of the 742 adversary proceedings commenced under seal, only the claims relating to Laneko Engineering Co., Wachovia Bank, National Association, Laneko Engineering Co., Inc., and their affiliates and subsidiaries were subject to the Preservation of Estate Claims Procedures Order. *Id.* at ¶ 18, n.4.  Unlike many of the other 174 defendants (including F.A. Tech), these three entities were provided with notice of the Third Extension Motion. *Id.* at ¶ 18, n.4.

20.    No notice of the Third Extension Motion was given to F.A. Tech.  *See,* Affidavit of Service filed for the Third Extension Motion on April 16, 2008 [Doc. No. 13415].

21.    On April 30, 2008, the Court entered the Postconfirmation Extension of Avoidance Action Service Deadline Order [Doc. No. 13484] (the "Third Extension Order") modifying Paragraph 8 of the First Extension Order, as previously modified by the Second Extension Order, so that the time under Fed. R. Civ. 4(m) by which the Debtors must serve a defendant in the adversary proceedings with a summons and complaint was further extended until thirty days after the later of substantial consummation of the Plan or of any modified Chapter 11 plan for the Debtors and December 31, 2008.  [Third Extension Order, at ¶ 2].

22.    By motion dated October 2, 2009 (the "Fourth Extension Motion") (collectively, with the First Extension Motion, the Second Extension Motion, and the Third Extension Motion, the "Extension Motions") [Doc. No. 18952], the Debtors sought to further modify Paragraph 8 of the First Extension Order, so as to extend for a fourth time the deadline under Fed. R. Civ. P. 4(m), by which the Debtors were required to serve process, until 180 days after substantial consummation of their modified Plan of Reorganization.

23.    No notice of the Fourth Extension Motion was given to F.A. Tech.  *See*, Affidavit of Service for the Fourth Extension Motion filed October 7, 2009 [Doc. No. 18967].

24.    On October 22, 2009, the Court entered the Supplemental Postconfirmation Extension Order (the "Fourth Extension Order") (collectively, with the First Extension Order, the Second Extension Order, and the Third Extension Order, the "Extension Orders") [Doc. No. 18999] modifying Paragraph 8 of the First Extension Order, as previously modified.  As a result, the time under Fed. R. Civ. P. 4(m) by which the Debtors were required to serve a defendant in the adversary proceedings with a summons and complaint was further extended

- 7 -

until 180 days after substantial consummation of the Modified Plan.  [Fourth Extension Order, at ¶ 2].

25.    F.A. Tech was finally served with the Complaint on or about December 12, 2009, well over two years after the limitations period provided by Bankruptcy Code § 546(a) expired and after the original time period for service of the Complaint under Fed. R. Civ. P. 4(m) had run.

26.    On May 14, 2010, F.A. Tech filed its Joinder of F.A. Tech Corporation to Motions (I) to Vacate Prior Orders Establishing Procedures for Certain Adversary Proceedings, Including Those Commenced by the Debtors Under 11 U.S.C. §§ 541, 544, 545, 547, 548, or 549, and Extending the Time to Serve Process Under Such Adversary Proceedings, (II) Dismissing the Adversary Proceeding With Prejudice, Or (III) In the Alternative, Dismissing the Adversary Proceeding on the Ground of Judicial Estoppel (the "Motion to Dismiss") [Doc. No. 26], wherein F.A. Tech sought dismissal of the adversary proceeding.

27.    At the July 22, 2010 hearing on the Motion to Dismiss, this Court concluded that "if [a Defendant] didn't get notice, it's wide open and I should look at it as whether, you know, it was appropriate to have entered those orders.  And they should have all their – you know, their rights to say the [Procedures Order and Extension Orders] shouldn't have been entered." [July 22, 2010 Tr., at pp. 103, 119].  Indeed, this Court held that if, as here, a party had no notice of Delphi's Motions, "it's a slam dunk as far as looking at the order as brand new."  *Id*. at 107.

28.    On September 7, 2010, this Court entered its Order Granting in Part First Wave Motions to Dismiss (the "Dismissal Order") [Doc. No. 31] which dismissed the Complaint without prejudice on the grounds the Plaintiffs "have failed to plead sufficient facts to state a claim, and have not complied with Rule 8 of the Federal Rules of Civil Procedure, made

applicable by Rule 7008 of the Federal Rules of Bankruptcy Procedure." The Dismissal Order

further required the Plaintiffs to file a Motion for Leave to File Amended Complaints.

29.     On that same date, the Plaintiffs filed their Motion for Leave to File Amended

Complaints attaching the Proposed Amended Complaint which designates Delphi Automotive

Systems, LLC ("DAS") as the plaintiff for the adversary proceeding.

## II.     Standard Of Law

30.     The Plaintiffs seek leave to amend the Complaint pursuant to Civil Rule 15 made

applicable to these proceedings by Federal Rule of Bankruptcy Procedure 7015. The purpose of

Rule 15 is to "permit liberal amendment to facilitate determination of claims on the merits and to

prevent litigation from becoming a technical exercise in the fine points of pleading." *Mervyn's*

*LLC v. Lubert-Adler Group IV, LLC (In re Mervyn's Holdings, LLC)*, 426 B.R. 96, 101 (Bankr.

D. Del. 2010). Leave to amend under Rule 15 of the Federal Rules of Civil Procedure is not

granted automatically; instead "it is within the sound discretion of the court whether to grant

leave to amend." *John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp.*, 22 F.3d 458, 462 (2d

Cir. 1994). "[C]onsiderations of undue delay, bad faith, and prejudice to the opposing party [are]

all touchstones of a district court's discretionary authority to deny leave to amend." *Barrows v.*

*Forest Laboratories, Inc.*, 742 F.2d 54, 58 (2d Cir. 1984).

31.     Further, a court should deny a motion to amend where granting it would be futile.

"Futility means that the complaint, as amended, would fail to state a claim upon which relief

would be granted. . . . In assessing 'futility,' [a] court applies the same standard of legal

sufficiency as applies under Rule 12(b)(6). . . ." Thus, a court "may properly deny leave to

amend where the amendment would not withstand a motion to dismiss." *Id*. at 102 quoting

*Massarsky v. General Motors Corp.*, 706 F.2d 111, 125 (3d Cir. 1983); *see also*, *Ruffolo v.*

*Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) (Likewise, "[w]here it appears that

- 9 -

granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend.")  As explained below, the Proposed Amended Complaint does not satisfy the requisite pleadings standards and, as such, the Motion to Amend must be denied.

## III.    Argument

### A.    The Proposed Amended Complaint Is Futile Because The Extension Orders Were Improvidently Entered And Should Be Vacated, Leaving The Claims Barred By The Statute Of Limitations.

32.    For all the reasons set forth in F.A. Tech's prior Motions to Dismiss and the dismissal motions filed by the other preference defendants, which are incorporated herein, the Extension Orders were entered in violation of Federal Rule of Civil Procedure 4(m) and DAS may not unseal and serve preference complaints against them years after the limitations period expires.  Moreover, this Court has already determined that anyone, like F.A. Tech, who did not receive notice of the Extension Motions, may now challenge, *de novo,* the entry of the Extension Orders.  *See,* July 22, 2010 Tr. at p. 260 ("My preliminary view is that people who truly did not get notice of the extension motions can argue their merits on the merits; it's not a Rule 60 requirement.  They can argue them as if they were being argued for the first time.").

33.    The indisputable evidence, including Delphi's own admissions and documents, confirms that the Debtors failed to provide F.A. Tech with ***any*** actual notice of the Extension Motions.  Specifically, (i) F.A. Tech never appeared in Delphi's bankruptcy action; and (ii) F.A. Tech never requested ECF notice.  Indeed, in its Omnibus Response in opposition to the various defendants' dismissal motions, the Plaintiffs admitted that they never served F.A. Tech.  *See,* Omnibus Response [Doc. No. 27, at p. 29, fn. 8].  Thus, F.A. Tech can now challenge, *de novo,* the entry of the Extension Orders, including the Third Extension Order that was entered after Delphi's funding fell through, on the new basis that Delphi purportedly needed more time to determine how it wished to proceed in light of the loss of its buyer's 100 cent plan.

34.    The Extension Orders, in relevant part, authorized the extension of the time to serve the Complaint pursuant to Civil Rule 4(m).  Civil Rule 4(m) is incorporated into the Bankruptcy Rules by Bankruptcy Rule 7004(a)(1) and provides that, "If a defendant is not served within 120 days after the complaint is filed, the court - on motion or in its own after notice to the plaintiff - must dismiss the action without prejudice against the defendant or order that service be made within a specified time.  But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period."  [Fed. R. Civ. P. 4(m) (2010)].

35.    The Extension Orders should not have been entered, as good cause did not exist to extend the time to serve process as a matter of law.  Good cause generally exists under Fed. R. Civ. P. 4(m) when service is not completed on a named defendant within the required 120-day period.  *Ahern v. Neve*, 285 F.Supp.2d 317, 320 (E.D.N.Y. 2003).  It does not exist, however, in situations where the plaintiffs know and can serve the named defendants, but simply choose not to do so, and where the sole purpose in seeking the extension of time is to prevent defendants from learning that they had been sued.  The use of procedural rules to obtain a result not contemplated by the accompanying substantive law is simply not permitted.  *See*, 28 U.S.C. § 2075 (rules proscribed by the United States Supreme Court "shall not abridge, enlarge, or modify any substantive right"); *see also, Morse v. Perrotta (In re Perrotta)*, 406 B.R. 1, 8 (Bankr. D. N.H. 2009) ("Therefore, to the extent that the Bankruptcy Rules and the Bankruptcy Code are inconsistent, the statute controls.").

36.    Through the Extension Motions, the Plaintiffs sought extensions of time to serve adversary defendants for starkly different reasons between the Second Extension Motion and the Third Extension Motion.  In *Global Crossing Estate Representative v. Alta Partners Holdings LDC (In re Global Crossing, Ltd)*, 385 B.R. 52 (Bankr. S.D.N.Y. 2008), the Court found that it

was inappropriate to enforce a prior order in the case which had extended the time to serve under

Rule 4(m) because such order was based upon different reasons than its predecessor service

extension orders.   The same error was committed in this case, because the Second Extension

Motion is based upon categorically distinct premises than the Third Extension Motion.

37.     In *Global Crossing*, the plaintiff Estate Representative sought and obtained

successive orders extending the time to serve complaints.   *Id.* at 57.   The order the Court

ultimately overturned was that which extended the Estate Representative's time to serve

unnamed and unidentified defendants (including the "Dividend Recipients") beyond the time the

Estate Representative originally had to serve the original defendant EquiServe.   *Id.*   The

Dividend Recipients asked the Court to vacate (or at least regard as ineffective for statute of

limitations purposes) such order.   The Court remarked that:

> As counsel for one of the Dividend Recipients pointed out, the first
> extension motion sought a Rule 4(m) extension for a very specific
> purpose--to complete service on approximately 455 complaints
> that could not yet be effected.   It "morphed" into an undertaking
> for a quite different purpose, to address EquiServe's conduit
> defense and to "identify, locate and then serve all new defendants."

*Id.* at 84-85.

38.     The Court concluded that the first Rule 4(m) order was appropriately entered for

the purposes for which it was sought, but "had neither the purpose nor effect of extending the

statute of limitations for claims against then-unnamed and unidentified Dividend Recipients."

*Id*. at 77.

39.     The Court ruled:

> that the purpose and effect of the first Rule 4(m) order was to
> address the needs that had been articulated in the first Rule 4(m)
> motion, all of which were variants of a common theme--difficulties
> in effecting service.   The Court did not then have occasion to
> consider, and did not consider, the extent, if any, to which Rule

4(m) could be used to address different needs, such as the ones now before the Court. Addressing such different needs was not the purpose of the first Rule 4(m) order. Nor should (or does) the Court rule that it nevertheless had that effect.

*Id.* at 84.

40.    The Court reflected that a contrary ruling would raise serious separation of powers concerns "because it would enable a court to subvert the legislatively declared policies of finality and repose underlying the statute of limitations solely on the basis of a plaintiff's ex parte submission." *Id*. at 89, n. 116.

41.    As described above, the Second Extension Motion and the Third Extension Motion were filed in starkly different contexts and based upon categorically distinct rationales. As in *Global Crossing*, here the rationales "morphed".

42.    The Second Extension Motion, on the one hand, was based on the status of the case as one in which creditors would be paid in full and the Debtors would not pursue preference avoidance actions. The Third Extension Motion, on the other hand, was filed at a time where the Debtors did not have funding for the confirmed plan of reorganization and the case was aptly characterized as a free fall.

43.    The holding in *Global Crossings* applies squarely to entry of the Third Extension Order. Because it was based upon different premises and reasons than the First Extension Order, looking at the Third Extension Motion, *de novo,* yields a conclusion that the Court must deny the Third Extension Motion. A denial of the Third Extension Motion will result in the lapse of the time to serve F.A. Tech and, therefore, amending the Complaint will be futile.

**B.    DAS Cannot Avoid Any Transfers Because It Was Solvent At The Time It Made The Transfers.**

44.    As determined by the Court in the Dismissal Order, the Complaint did not satisfy the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure, as set forth in *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ("Twombly"), and *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009) ("Iqbal").

45.    In *Twombly*, the Supreme Court established the standard by which federal courts are to determine motions to dismiss.    Under *Twombly*, to survive a motion to dismiss, the complaint must contain sufficient factual matter to "state a claim for relief that is plausible on its face." *Id.* at 570.    A pleading that only offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not suffice. *Id.* at 555.    The Supreme Court recently elaborated on this matter in *Iqbal* holding that "[t]hreadbare recitals of a cause of action supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S.Ct. at 1949.

46.    DAS fails to plead properly in its Proposed Amended Complaint and cannot prove an essential element of its avoidance claim: that DAS – the only plaintiff named in the Proposed Amended Complaint – made transfers to F.A. Tech at a time when DAS was insolvent. *See,* 11 U.S.C. § 547(b) (authorizing a trustee to avoid a transfer only if it was, among other things, "made while the debtor was insolvent").

47.    DAS's only allegation of insolvency merely is a bare bones, conclusory recitation of the avoidance statute, namely that: "[p]ursuant to Bankruptcy Code Section 547(f), for purposes of this Adversary Proceeding, Plaintiff is presumed to have been, and was in fact, insolvent at the time the Transfers were made." [Proposed Amended Complaint, at ¶ 24].    This is exactly the "[t]hreadbare recital[] of the elements of a cause of action supported by mere conclusory statements," that the Supreme Court stated "does not suffice." *Iqbal*, 129 S.Ct. at 1949.

48.    Delphi's failure to properly plead facts that show DAS's insolvency is no surprise.    This is because DAS was solvent.    In fact, DAS's own bankruptcy schedules show

DAS was solvent and had more than $2.6 billion in net equity, at the time of its petition. These DAS admissions conclusively rebut any presumption of DAS's insolvency during the preference period. *See, e.g.*, *In re Roblin Industries, Inc.*, 78 F.3d 30, 34-35 (2d Cir. 1996) (schedules showing solvency rebutted presumption so that trustee bore burden of coming forward to prove insolvency); *Akers v. Koubourlis*, 869 F.2d 1319, 1322 (9th Cir. 1989) (debtors' schedules indicating greater assets than debts rebutted presumption); *IMF Sales Associates, Inc. v. Racal-Vadic Information Systems, Inc.*, 94 B.R. 223, 225 n.3 (Bankr. D. Mass 1988) ("Racal has rebutted the [section 547(f) presumption] by offering the schedules which show the debtor was solvent."); *Fokkena v. Winston, Reuber, Byrne, P.C.*, 189 B.R. 744, 747 (Bankr. N.D. Iowa 1995) ("Debtor's schedules filed in his chapter 11 case are sufficient to support a finding of solvency at the time of the transfers. The presumption was rebutted.").

49.    Given DAS's failure to properly plead insolvency and the fact that DAS was solvent (with a $2.6 billion in net equity), any amendment is futile here. DAS cannot prove a crucial element of its avoidance action.

### C.    The Amended Complaint Fails To Properly Assert A Claim That The Transfers Were Made On Account Of Antecedent Debt.

50.    DAS's Proposed Amended Complaint fails to comply with the minimum requirements set forth in this Court's Dismissal Order. Specifically, DAS's Proposed Amended Complaint once again fails adequately to plead facts regarding the antecedent debt for each transfer alleged by DAS. DAS's only allegations regarding the existence of an antecedent debt are bare-bones and are presented in Paragraph 23 of the Proposed Amended Complaint, where DAS alleges:

> Plaintiff made, or caused to be made, each Transfer listed on Exhibit 1 for, or on account of, an antecedent debt owed to Defendants as of the date on which each Transfer was made. The

documents evidencing the antecedent debt include the purchase orders and/or invoices/bills of lading identified on Exhibit 1, which purchase orders and/or invoices/bills of lading include evidence of the amount of the antecedent debt and the approximate dates the subject goods contemplated by the Agreements were ordered by Plaintiff pursuant to the Agreements and/or were provided by Defendants.

51.    Pursuant to Section 547(b)(2) of the Bankruptcy Code, an avoidance action requires a transfer "for or on account of an antecedent debt owed by the debtor before such transfer was made."  11 U.S.C. § 547(b)(2).  The Bankruptcy Code does not define the term "antecedent debt."  Debt is "antecedent" for preference purposes if it was incurred before debtor made the allegedly preferential transfer.  Additionally, a debt is incurred when the debtor becomes legally bound to pay.  *Peltz v. New Age Consulting Services, Inc.*, 279 B.R. 99 (Bankr. D. Del. 2002).  The right to payment generally arises when the debtor obtains the goods or services.  *In re First Jersey Securities, Inc.*, 180 F.3d 504, 510 (3rd Cir.1999).

52.    Courts have found that this provision requires the plaintiff in a preference action to allege facts that support its contentions that: (1) the transfer was in connection with a debt (*see, In re Hydrogen, L.L.C.*, 431 B.R. 337, 355 (Bankr. S.D.N.Y. 2010)); (2) which was owed by the plaintiff/debtor (*see, e.g., Chemical Bank v. Dana*, 234 B.R. 585, 596 (D. Conn. 1999)); and (3) which was antecedent (incurred before) the transfer (*see, e.g., In re Dorholt, Inc.*, 224 F.3d 871, 873 (8th Cir. 2000)).  In the Proposed Amended Complaint, the Plaintiffs have failed to adequately allege facts which support the elements of Section 547(b)(2) of the Bankruptcy Code.

53.    In the Proposed Amended Complaint, DAS fails to plead any of these elements in anything more than a conclusory manner which this Court, in dismissing Delphi's original complaint, has already recognized is not permissible.  *Iqbal*, 129 S.Ct. at 1949 (2009)

- 16 -

("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

54.     The Proposed Amended Complaint fails to identify any action by F.A. Tech, such as the delivery of goods, which would give rise to the existence of a debt under a purchase order or other agreement (even if one had been alleged).  As discussed above, the case law is clear that an antecedent debt does not arise until DAS actually "obtained" the goods or services for which it contracted, and there is no such allegation here.  *See, First Jersey,* 180 F.3d at 510.

55.     The Proposed Amended Complaint completely fails to comply with this Court's requirement that it identify the specific antecedent debts underlying its transfers to F.A. Tech. Therefore, the Motion to Amend must be denied.

> **D.     The Proposed Amended Complaint Is Barred By The Doctrine Of Laches And, Therefore, Is Futile.**

56.     The Proposed Amended Complaint is barred by the doctrine of laches, making it futile.  The Second Circuit Court of Appeals requires a defendant to satisfy three elements to prevail on a laches defense: (1) that it lacked knowledge that the claim might be asserted against it; (2) that the plaintiff delayed in asserting the claim despite the opportunity to do so; and (3) that it would be prejudiced if the claim were now allowed to go forward.  *See, e.g., Gucci v. Sinatra (In re Gucci)*, 197 Fed. Appx. 58, 60 (2d Cir. 2006).

57.     F.A. Tech satisfies each of these elements.  First, as set forth above, F.A. Tech did not have any knowledge of the Complaint or even that a complaint was foreseeable.  Because the Complaint was filed and left under seal until December of 2009, F.A. Tech had no way of knowing it was a potential defendant in an avoidance action.  Second, it should go without dispute that the Debtors delayed asserting the claims against F.A. Tech despite the opportunity to assert them.  Finally, as described below, F.A. Tech would suffer ample prejudice if this Court

were to now allow the claims to go forward. For the foregoing reasons, the Proposed Amended Complaint cannot survive a motion to dismiss, making it futile, and the Motion to Amend should be denied by this Court.

        **E.**      **The Proposed Amended Complaint Would Severely Prejudice F.A. Tech.**

58.    In recognition of the natural prejudice resulting from a party's delay in prosecuting an action, including delaying service of the complaint, the Second Circuit recognizes that "prejudice to defendants resulting from unreasonable delay may be presumed . . . [and] is particularly appropriate where, as here, the plaintiff's delay was prolonged." *Shannon v. GE*, 186 F.3d 186 (2d Cir. 1999) (internal citations and quotations omitted).

59.    Courts regularly recognize that "[f]ailure to use reasonable diligence in serving a summons is more fraught with possibilities of unfairness and abuse than failure to diligently prosecute an action after summons is served." *Richardson v. United White Shipping Co*., 38 F.R.D. 494, 496 (N.D. Cal. 1965) (dismissal where service perfected 28 months after the filing of the action). This is because such delay "affects all the defendant's preparations." *Anderson v. Air West, Inc.*, 542 F.2d 522, 525 (9th Cir. 1976) (dismissal under Rule 41(b) based on failure to serve for a year despite entry of order extending service period); *Farhang v. Indian Inst. of Tech*., 2010 U.S. Dist. LEXIS 53975, at *14-15 (N.D. Cal. June 1, 2010) (delayed service prejudiced defendant "by depriving him of the opportunity to engage in earlier preparation and participation in the suit."). Indeed, "[d]elay alone can infuse an adverse element into the proper flow of litigation: evidence deteriorates or disappears, memories fade, and witnesses die or move away." *Veazey v. Young's Yacht Sale & Service, Inc.*, 644 F.2d 475, 478 (5th Cir. 1981) (dismissal under Rule 41(b) for failure to serve for nearly 21 months).

60.    In addition, where a plaintiff files its complaint immediately prior to the running of the statute of limitations and then fails to serve, prejudice to defendants is magnified.

*Anderson*, 542 F.2d at 525 ("Once the statute [of limitations] has run, a potential defendant who has not been served is entitled to expect that he will no longer have to defend against the claim."); *see also, Zapata v. New York,* 502 F.3d 192, 198 (2d Cir. 2007) ("It is obvious that any defendant would be harmed by a generous extension of the service period beyond the limitations period for the action, especially if the defendant had no actual notice of the existence of the complaint until the service period had expired. . . . "); *Redding v. Essex Crane Rental Corp. of Alabama*, 752 F.2d 1077, 1078 (5th Cir. 1985) (holding that it was an "obvious misuse of the judicial process" to prevent defendant from learning of action by failing to serve.)

61.    Moreover, F.A. Tech will suffer actual prejudice if the Plaintiffs are permitted to amend the Complaint and continue this action.  Because F.A. Tech had no notice regarding the Complaint or Delphi's efforts to keeps its avoidance actions hidden from public view, F.A. Tech took no special steps to preserve its records with respect to Delphi, nor to hold exit interviews with employees who were knowledgeable about the Delphi relation.  Neither did F.A. Tech set aside funds as a contingency to cover the costs of litigation of this matter or to cover any amounts required to be paid should the case be decided against F.A. Tech.  Finally, F.A. Tech was denied information that was highly pertinent to its continued relationship with the Debtors, especially regarding post-petition projects sought by the Debtors.  Had F.A. Tech had all the information, F.A. Tech may well have leveraged its position as a supplier to the Debtors in order to resolve Plaintiffs' preference claim.

## IV.    No Further Amendments Of The Proposed Amended Complaint Should Be Permitted By This Court

62.    The Debtors had enviable resources and unprecedented time for acquiring the data necessary to make prima facie cases in the preference actions they have chosen to pursue.  The Plaintiffs have had five years to assemble necessary data which includes, at a minimum, all of

the data required by the Dismissal Order.  The Plaintiffs have had five years to figure out, for each transfer, the identity of the transferor, the identity of the transferee, the identity of any known subsequent transferee against whom relief is sought, and the antecedent debt.  In entering the Dismissal Order, this Court justly required that the Plaintiffs show at a minimum that they have or have not sufficient data to meet the pleading standards required by the United States Supreme Court in *Twombly* and *Iqbal*.

63.    Therefore, any denial of the Motion to Amend, in whole or in part, should be with prejudice, for failure to meet the "minimum" expressly set forth in the Dismissal Order.  The language of the Dismissal Order can be fairly read not to permit second chances.  To permit the Plaintiffs to extend again the pleading process is not justifiable.  To place onto F.A. Tech the burden of assisting the Plaintiffs by pointing out gaps in the Proposed Amended Complaint, to be cured by further amendment, would violate the letter and spirit of the Dismissal Order.

## V.    Joinder And Incorporation Of Arguments Not Expressly Stated Herein

64.    F.A. Tech joins in and incorporates all arguments made by other defendants to preference actions in the DPH Holdings Corp., *et al.* bankruptcy case, in opposition to the Debtors' motions for leave to amend their complaints, to the extent not inconsistent herewith.  Because the facts surrounding those actions are, in many respects, similar to those found here, F.A. Tech incorporates all applicable arguments raised by other defendants.

## VI.    Conclusion

The Proposed Amended Complaint fails to satisfy the necessary pleading standards and, as such, leave to amend will be futile.  Moreover, through the Plaintiffs' acts to conceal its claims against F.A. Tech, F.A. Tech has been severely prejudiced and would be at a distinct disadvantage in its ability to defend this action should the Court grant leave to amend.  Thus,

F.A. Tech requests that this Court deny the Motion to Amend and grant F.A. Tech such other

relief as it deems proper.

Respectfully submitted,


*/s/ Jason V. Stitt*
Jason V. Stitt (0078513)
KEATING MUETHING & KLEKAMP PLL
One East Fourth Street, Suite 1400
Cincinnati, Ohio 45202
Telephone:   (513) 639-3964
Facsimile:    (513) 579-6457
jstitt@kmklaw.com
*Counsel for Defendant, F.A. Tech Corporation*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 24, 2010, a true and correct copy of the foregoing **F.A. TECH CORPORATION'S OBJECTION TO REORGANIZED DEBTORS' MOTION FOR LEAVE TO FILE AMENDED COMPLAINTS** was served, through the Court's ECF System, on all parties requesting electronic service, and by U.S. mail to the following persons at the following addresses:

Eric B. Fisher, Esq.
Barry N. Seidel, Esq.
Butzel Long
380 Madison Avenue
22nd Floor
New York, New York  10017

Cynthia J. Haffey, Esq.
Butzel Long
150 W. Jefferson Avenue
Suite 100
Detroit, Michigan  48226

Albert Togut, Esq.
Togut, Segal & Segal LLP
One Penn Plaza
Suite 3335
New York, New York  10119

Honorable Robert D. Drain
U.S. Bankruptcy Judge
United States Bankruptcy Court
300 Quarropas Street
White Plains, New York 10601

*/s/ Jason V. Stitt*
Jason V. Stitt (0078513)

3684375.1