**WINDELS MARX LANE & MITTENDORF, LLP**
156 West 56th Street
New York, New York 10019
(212) 237-1000
Howard L. Simon (hsimon@windelsmarx.com)
Leslie S. Barr (lbarr@windelsmarx.com)
Antonio J. Casas (acasas@windelsmarx.com)

**NUTTER McCLENNEN & FISH LLP**
155 Seaport Boulevard
Boston, Massachusetts 02210
telephone (617) 439-2390
Peter Nils Baylor (pbaylor@nutter.com)

Attorneys for Defendant Tyco Adhesives, L.P.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re<br><br>DPH HOLDINGS CORP, *et al.,* | Chapter 11<br><br>Case No. 05-44481 (RDD)<br><br>Jointly Administered<br><br>Adv. Pro. No. 07-02790 (RDD) |
| DELPHI CORPORATION, et al. ,<br><br>Plaintiffs,<br><br>-against-<br><br>TYCO, TYCO ADHESIVES, TYCO ELECTRONICS - RAYCHEM, TYCO ELECTRONICS CORP., TYCO ELECTRONICS CORPORATION, TYCO ELECTRONICS IDENTIFICATION TYCO ELECTRONICS LOGISTICS AG, and TYCO/ELECTRONICS,<br><br>Defendants. | |

---

### MEMORANDUM OF LAW IN OPPOSITION TO DELPHI'S MOTION TO AMEND ITS COMPLAINT

---

## TABLE OF CONTENTS

**TABLE OF CONTENTS** ................................................................. I

**TABLE OF AUTHORITIES** .......................................................... III

**PRELIMINARY STATEMENT** ...................................................... 1

**STATEMENT OF FACTS** ............................................................ 3

    **A.**    The Delphi Debtors Sought Bankruptcy Protection, and DAS Reported a Positive Net Worth and Assumed the Contract with TA. ................... 3

    **B.**    TA Filed a Proof of Claim that Was Quickly Expunged Without a Dispute ......... 4

    **C.**    The Court Allowed the Delphi Debtors to Hide Certain Preference Actions from TA and Many Others for 2 ½ Years. .......................... 5

        1.    The Court Ordered the Delphi Debtors to Notify Parties With "Particularized Interests" in Motions or Applications. ................ 5

        2.    The Delphi Debtors Moved for a Preservation/First Extension Order and Failed to Serve TA. ............................. 5

        3.    The Delphi Debtors Filed the Preference Complaints Under Seal. ........... 8

        4.    The Delphi Debtors Filed a Reorganization Plan and Failed to Serve the Disclosure Statement on TA. .................... 9

        5.    The Delphi Debtors Moved for a Second Extension Order and Failed to Serve TA. ................................. 9

        6.    The Delphi Debtors Moved for a Third Extension Order and Failed To Serve TA. ................................. 10

        7.    The Delphi Debtors Moved for a Fourth Extension Order and Failed to Serve TA. ................................. 11

        8.    The Delphi Debtors Finally Served the Complaint on TA Years Late. ................................. 12

    **D.**    Defendants Filed First and Second Wave Dismissal Motions, and The Court Dismissed the Complaints, Gave the Delphi Debtors an Opportunity to Amend and Left Other Issues Open. ................... 12

    **E.**    The Proposed Amended Complaint Relies Exclusively on a Presumption of Insolvency. ................................. 13

**ARGUMENT** ................................................................. 14

**POINT I**

     THE DELPHI DEBTORS' MOTION TO AMEND IS FUTILE BECAUSE DAS ASSUMED THE CONTRACT WITH TA AND WAIVED THE ASSERTED PREFERENCE CLAIM. ................................. 14

**POINT II**

    THE DELPHI DEBTORS' MOTION TO AMEND IS FUTILE AND UNDULY
PREJUDICIAL BECAUSE THEY SERVED THE ORIGINAL COMPLAINT TOO
LATE AFTER KEEPING IT A SECRET FROM TA FOR 2 ½ YEARS. ...................... 15

        1.      The Delphi Debtors Did Not Serve any of the Extension Motions
or the Disclosure Statement on TA, and thus TA Had No Opportunity
to be Heard. ......................................................................................... 17

        2.      TA Was Harmed. .................................................................................. 17

**POINT III**

    THE DELPHI DEBTORS' PROPOSED AMENDED PLEADING FAILS TO STATE A
CLAIM UNDER *IQBAL* AND *TWOMBLY* BECAUSE IT RELIES SOLELY ON THE
PRESUMPTION OF INSOLVENCY AND IT APPEARS DAS WAS, IN FACT,
SOLVENT AT THE TIME OF THE CLAIMED PREFERENCE PAYMENTS. .......... 18

**CONCLUSION** .................................................................................................................. 20

## TABLE OF AUTHORITIES

Page(s)

CASES

*Ashcroft v. Iqbal,*
    129 S.Ct. 1937 (2009)..................................................................... 3, 12, 13, 18, 19

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)....................................................................... 3, 12, 13, 18, 19

*Burch v. Pioneer Credit Recovery,*
    551 F.3d 122 (2d Cir. 2009)........................................................................ 19

*Cellular Technical Services Co. v. Trueposition,*
    609 F. Supp. 2d 223 (D. Conn. 2009)........................................................ 19

*Global Crossing Estate Representative v. Alta Partners Holding LDC,*
    385 B.R. 52 (Bankr. S.D.N.Y. 2008)........................................................ 16

*McCarthy v. Dun & Bradstreet Corp.*
    482 F.3d 184 (2d Cir 2007)........................................................................ 14

STATUTES

11 U.S.C. §546(a).......................................................................................... 5, 16

11 U.S.C. § 547(b)(4)(A)................................................................................... 3

RULES

Fed. R. Civ. P. 4(m)................................................................................5, 7, 15, 17

Fed. R. Civ. P. 15(a)........................................................................................ 14

Fed. R. Civil. P. 8 ........................................................................................... 18

## PRELIMINARY STATEMENT

Tyco Adhesives, L.P. ("TA") opposes the motion of DPH Holdings Corp. and its affiliates (collectively, the "Delphi debtors," which include without limitation Delphi Automotive Systems, LLC ("DAS")) for leave to file amended complaints.[1]

With respect to TA, the proposed amended complaint ignores a critical fact that without question makes the subject motion futile: DAS, the sole plaintiff in the proposed amended complaint, assumed the contract under which TA received the transfers that DAS now seeks to avoid as preferences. The assumption agreement, which was entered into pursuant to Court-approved procedures for assuming sole source supplier contracts, covered numerous contracts between DAS and Tyco entities, including the contract with TA referred to as Purchase Order PEDP4850041. DAS expressly waived any right to recover as a preference any transfers made under that purchase order or any of the other assumed contracts. The Court need not go any further -- it should deny the Delphi debtors' motion and dismiss this case based on the assumption agreement and waiver alone.

There are additional reasons why the Delphi Debtors' motion should be denied. For one thing, this avoidance action and hundreds of others like it are untimely because the Delphi debtors submitted the complaints under seal at the filing deadline and then, without just cause, waited over two years to serve them on TA and the other defendants. The Court approved this procedure upon assurances from the Delphi debtors that TA and the others would not be harmed. The Delphi Debtors admitted that keeping the complaints a secret would give them an advantage in maintaining existing contracts and negotiating new ones with defendants; however, they told the Court that there would be no prejudice in the end because they planned to drop the preference

---

[1] DPH Holdings Corp. was formerly known as Delphi Corporation. "Delphi debtors," as used below, includes Delphi Corporation before the name change.

{70246137:4}

claims or pay all unsecured creditors in full. But the Delphi debtors knew by the time they asked

the Court for the last extension of time to serve everyone (if not earlier) that many of the actions

would go forward, including the one against TA, and that a 100% payment plan was no longer

feasible. Even assuming the earlier orders were somehow justified, it was evident at that point

that there was no rationale for allowing a further extension.

When the Delphi debtors finally served the complaints after 2 ½ years, TA was taken by

complete surprise, and the long delay caused the company real harm. The affidavits of service

demonstrate that the Delphi debtors *never served TA with* the various motions and Court orders

that had allowed them to file the complaint under seal and repeatedly delay service. The Delphi

Debtors *also never served TA with* the Disclosure Statement with respect to the First Amended

Plan of Reorganization. TA consequently lost an opportunity early on to use its leverage as a

sole source supplier to resolve the preference claim on favorable terms. It also lost any chance to

sell its 502(h) claim, assuming the Delphi debtors could prove a preference. The Delphi debtors'

*ex parte* applications to the Court and the secret extension orders deprived TA of a fair

opportunity to be heard on a matter that had a detrimental impact on the company.

The long-delayed service of the complaint was unwarranted, unfair and prejudicial. The

Court should review afresh its extension orders, vacate them as to TA and rule that the

preference claim as to TA is stale and cannot be revived by any amendment to the complaint.

The Delphi debtors' motion should also be denied because they have failed to cure all the

deficiencies in their original pleading. The Delphi debtors' proposed amended complaint is still

insufficient as to one essential element: DAS only pleads the presumption of insolvency under

the Bankruptcy Code. Given the undisputed facts that appear to indicate that DAS was solvent

when it made the challenged transfers to TA (a reported net worth of more than $2 billion around

that time and the initial plan to make a 100% distribution to creditors), the proposed pleading falls short of the requirements of *Ashcroft v. Iqbal,* 129 S.Ct. 1937 (2009) and *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007). As pled, there is simply no justification for the Delphi Debtors to force TA and many others to defend hundreds of preference claims that may very well have no merit.

To summarize, DAS assumed the contract with TA and waived the subject preference claim. The Delphi Debtors also waited too long to serve the complaint (2 ½ years) while failing to serve TA with any of the numerous extension motions or the Disclosure Statement, and TA was clearly harmed by the delay and the lack of an opportunity to be heard. Lastly, the Delphi debtors' proposed pleading is still lacking on the critical element of proof of insolvency. The Court should deny the Delphi debtors' motion and dismiss the case for any one or all of these reasons.

## STATEMENT OF FACTS

The relevant facts should be undisputed since most come from the Delphi debtors' own submissions or this Court's orders.

**A.    The Delphi Debtors Sought Bankruptcy Protection, and DAS Reported a Positive Net Worth and Assumed the Contract with TA.**

On October 8 and 14, 2005, the Delphi debtors filed voluntary petitions for relief under Title 11, Chapter 11 of the United State Code (the "Bankruptcy Code"). The preference period for non-insiders extended back 90 days to around the beginning of July 2005. 11 U.S.C. § 547(b)(4)(A). Schedules filed later indicated that DAS had a positive book value of $2 billion-plus around the time of the preference period.

The Delphi debtors[2] filed a motion on November 18, 2005 to "Approve Procedures to Assume Certain Amended and Restated Sole Source Supplier Agreements," and the Court granted the motion on December 12, 2005. (Docket Nos. 1098, 1494).[3] One of the resulting assumption agreements signed by DAS covered sole source supplier TA and Purchase Order PEDP4850041 ("P4850041"), the contract that is the subject of this preference action. The agreement was confirmed by letter dated May 10, 2006 and included a schedule listing numerous assumed contracts, including P4850041. DAS expressly waived any right to claim a preference as to pre-petition transfers under P485001.[4]

**B.    TA Filed a Proof of Claim that Was Quickly Expunged Without a Dispute.**

The Delphi debtors' petition listed TA as a creditor. TA filed a Proof of Claim on or about January 25, 2006 for a $121,059.11 debt. The Delphi debtors objected to the claim and TA did not respond. The claim was expunged by Order dated July 26, 2007. (*See* Docket No. 8737).

TA had no reason to continue monitoring the bankruptcy case once its claim was expunged.

---

[2] We use the plural reference "Delphi debtors" for convenience and because, with the exception of the times we refer to DAS, it does not matter for purposes of this brief which particular Delphi company(ies) took the actions described. We do not mean to imply that all of the companies together took each action.

[3] "Docket No." references are to the documents on the docket of the main case, unless otherwise indicated.

[4] The assumption agreement is subject to certain confidentiality provisions. TA will take the necessary steps to respect such provisions in order to make a copy of the agreement available to the Court and interested parties.

C.    **The Court Allowed the Delphi Debtors to Hide Certain Preference Actions from TA and Many Others for 2 ½ Years.**

The Delphi debtors had to file all avoidance actions by October 2007 as per the two-year statute of limitations in 11 U.S.C. §546(a), and had to serve the complaints within 120 days (by March 2008) as per Fed. R. Civ. P. 4(m).  The Court agreed in August 2007 to a procedure that allowed the Delphi Debtors to (1) enter into tolling agreements with certain defendants; (2) file this and hundreds of other preference actions under seal right before the October 2007 deadline; and (3) withhold service of the sealed complaints on TA and the other defendants.  The Delphi debtors subsequently obtained from the Court three more extensions of the time to serve the complaints.  The stated reasons for the delay changed over time.  TA had no notice of any preference action until the Delphi debtors finally served the complaint in this action in April 2010, 2 ½ years after the Delphi Debtors had filed the pleading with the Court under seal.

1.    **The Court Ordered the Delphi Debtors to Notify Parties With "Particularized Interests" in Motions or Applications.**

The Court's initial Case Management Order (entered on October 14, 2005) set forth "Notice Procedures" that required the Delphi debtors to give notice of "all filings" to, among others, "parties with a particularized interest in the subject of the Filing."  (*See* Docket No. 245, ¶15).[5]  "Filings" were defined to include "motion(s)" or "application(s)" and all supporting "briefs, memoranda, affidavits, declarations, or other documents."  (*Id.* at ¶8).

2.    **The Delphi Debtors Moved for a Preservation/First Extension Order and Failed to Serve TA.**

The Delphi debtors filed an expedited "Preservation of Estate Claims Procedures Motion" in August 2007, ahead of the looming two-year deadline for filing avoidance actions.  (*See*

---

[5] The Delphi debtors also had to notify parties on a "Master Service List."  TA was not on that list.

Docket No. 8905).  The overriding goal was "to implement procedures applicable to Adversary

Proceedings that [would] permit all parties to preserve the status quo as the Debtors ...

finaliz[ed] preparations for confirming a reorganization plan by [the] year's end." (*Id.* at ¶17).

The Delphi debtors believed that "[t]he proposed treatment of claims under this reorganization

plan would generally provide that all claims be paid or satisfied in full ...." (*Id.* at ¶13).

"Accordingly, avoiding preferential transfers would provide no benefit to the Debtors' estates

because any party returning such a transfer would be entitled to a claim for the same amount, to

be paid in full under such plan." (*Id* .at ¶13).  The Delphi debtors "[did] not intend to pursue

avoidance actions in light of the[] anticipated reorganization"; however, they felt compelled "as a

precautionary measure [to] preserve these actions in some manner." (*Id.* at ¶15).  "The causes of

action would remain dormant and become relevant again only in the unlikely event that the

Debtors d[id] not timely emerge from chapter 11." (*Id.* at ¶16).

      The Delphi debtors specifically asked the Court for, among other things, (1) "approv[al]

[of] a form of stipulation ... which would, without further order of th[e] Court, toll the applicable

statute of limitations on claims against parties with whom the Debtors s[ought] to enter into such

stipulations" -- anticipated at the time to be "(i) GM, (ii) professional firms retained by Debtors,

and (iii) insiders who received transfers from the Debtors" (*id.* at ¶¶17 & 19)[6]; (2) "authority to

file under seal paper copies (with PDF copies on appropriate electronic media) of the complaints

in the adversary proceedings and to have the docket for such proceedings likewise sealed" (*Id.* at

¶17);  (3) a stay of the adversary proceedings filed under seal "until the earlier of  (i) service of

process and (ii) further order of th[e] Court"  (*id.* at ¶17); and (4) an extension of time to serve

---

[6] Delphi thought about seeking stipulations from all potential defendants, but dismissed
that approach as "impractical." (*Id.* at ¶15).

the complaints under Fed. R. Civ. P. 4(m) "until March 31, 2008 ..., without prejudice to the

Debtors' right to seek further extensions of the deadline." (*id.* at ¶17).

The expected 100% plan was a linchpin of the stated "basis for the [requested] relief":

> The Debtors believe that implementing the proposed procedures
> would help enable the Debtors to fulfill their fiduciary
> responsibility to preserve valuable estate assets in a manner that
> would not unnecessarily disrupt the plan process or the Debtors'
> existing business relationships with potential defendants that are
> necessary to the Debtors' ongoing operations. These procedures
> would also reduce the administrative and economic burdens of the
> Adversary Proceeding on the Debtors, this Court, and potential
> defendants. *Most if not all of the avoidance actions will likely*
> *remain unnecessary in light of the terms of the Debtors'*
> *prospective reorganization Plan.*
>
> [*Id.* at ¶18 (emphasis added).]

The Delphi debtors recognized that the likelihood of the plan's success was critical to their

argument that defendants would not be prejudiced by the delay: "The stay will not prejudice the

potential defendants. In fact, the potential defendants will benefit from the stay inasmuch as they

will not need to expend time or resources investigating the facts relating to, or defending, *a*

*lawsuit that Debtors likely will never need to pursue.*" (*Id.* at ¶48 (emphasis added)). The

Delphi debtors admitted, on the other hand, that keeping the preference actions a secret would

give them leverage over defendants in future negotiations:

> "[S]ealing the actions would avoid unnecessarily alarming
> potential defendants. The Debtors have worked to preserve and
> repair their business relationship with many of the potential
> defendants during these cases and have negotiated or regained
> favorable credit terms with many suppliers and are continuing to
> do so. The Debtors are also engaged in negotiations with some of
> the potential defendants on issues unrelated to avoidance actions.
>
> [*Id.* at ¶37.]

The Delphi debtors' motion did not name any of the potential defendants with the

exception of GM. The motion also did not reveal any details of the anticipated preference

actions, except to say, "At present, the Debtors estimate that they may have more than 11,000

potential preference claims arising from transfers totaling approximately $5.8 billion ...." (*Id.* at

¶14).

The Court granted the motion and all the requested relief in an Order dated August 16,

2007 (the "Preservation/First Extension Order."). (Docket No. 9105). "The Clerk of the Court

[wa]s directed to accept for filing, under seal, paper copies of the complaint in each Adversary

Proceeding," and was instructed to make sure "the case docket for any such Adversary

Proceeding [did] not disclose the identity of any defendant." (*Id.* at ¶7). The Court wrote, "The

Debtors shall have until March 31, 2008 to serve each defendant in the Adversary Proceedings

with summons and complaint, without prejudice to seek further extensions." (*Id.* at ¶8). The

Court allowed the Delphi debtors to hold off serving the Preservation/First Extension Order on

the defendants until it served the complaints. (*Id.* at ¶11).

TA had a "particularized interest" in this motion as a supplier the Delphi debtors planned

to name as a defendant in one of the preference complaints to be filed under seal; yet the

affidavit of service shows the Delphi debtors ***never served the motion on TA,*** and the Delphi

debtors waited to serve the Preservation/First Extension Order with the complaint. (*See* Docket

No. 9039).

### 3.    The Delphi Debtors Filed the Preference Complaints Under Seal.

At some point -- presumably before the statutes of limitations period expired in October,

2007 -- the Delphi debtors filed 742 preference complaints under seal. The Clerk of the Court

designated the action against TA and several other Tyco companies Adv. Pro. No. 07-02790

(RDD).

4.    **The Delphi Debtors Filed a Reorganization Plan and Failed to Serve the Disclosure Statement on TA.**

The Delphi debtors filed their First Amended Joint Plan of Reorganization (the "Plan") on December 10, 2007.  (Docket No. 11386).  The affidavit of service shows that the Delphi debtors *never served TA with* any of the Solicitation Package documents except the Confirmation Hearing Notice, which did not refer to the Preservation/First Extension Order or to any retained cause of action.  (*See* Docket No. 11974; Docket No. 11389, Exhibit C).  Notably, the affidavit of service indicates that the Delphi debtors *never served TA with* the Plan Disclosure Statement (Docket No. 11388), which alluded to preserved claims.  (*See* Docket No. 11974).

The Court confirmed the Plan on January 25, 2008.  (Docket No. 12359).  The Plan provided for full payment to all unsecured creditors.

5.    **The Delphi Debtors Moved for a Second Extension Order and Failed to Serve TA.**

The Delphi debtors filed a motion on February 28, 2008 seeking an additional two months -- from March 31, 2008 to May 31, 2008 -- to serve the preference actions.  (Docket No. 12922).  The Delphi debtors claimed the extra time would "enable [them] to fulfill their fiduciary responsibility to preserve valuable estate assets in a manner that would not unnecessarily disrupt the emergence process or ... business relationships with potential defendants that [were] necessary to ... ongoing operations."  (*Id.* at ¶21).  The Delphi debtors added that it would not be in anyone's interest to proceed with the 742 actions given that most of them "w[ould] not be prosecuted once the Plan [became] effective."  (*Id.* at ¶21).

The Court granted the motion and the extension in an Order dated March 28, 2008 (the "Second Extension Order").  (Docket No. 13277).  Exhibit A to the order listed all the adversary proceedings by case number, including the action against TA, Adv. Pro. No. 07-02790 (RDD).

(*Id.*).  The Court allowed the Delphi debtors to hold off serving the Second Extension Order on

TA and the others until it served the complaints.  (*Id.* at ¶2).

TA had a "particularized interest" in this motion as a now named defendant in a filed

complaint; yet the affidavit of service shows the Delphi debtors ***never served the motion on TA***,

and the Delphi debtors waited to serve the Second Extension Order with the complaint. (*See*

Docket No.  12970).

### 6.    The Delphi Debtors Moved for a Third Extension Order and Failed To Serve TA.

On April 10, 2008, the Delphi debtors moved for another extension of time to serve the

preference complaints.  (Docket No. 13361).  By then the rationale for further extending the time

to serve the complaints was beginning to shift.  The Delphi debtors had to admit that they were

having problems consummating the Plan:

> On April 4, 2008, the Debtors announced that although they had
> met the conditions required to substantially consummate the Plan,
> including obtaining $6.1 billion of exit financing, Delphi's Plan
> Investors (as defined in the Plan) refused to participate in a closing
> that was commenced but not completed and refused to fund their
> Investment Agreement (as defined in the Plan) with Delphi.  The
> Debtors are prepared to pursue actions with respect to the Plan
> Investors that are in the best interests of the Debtors and their
> stakeholders and are working with their stakeholders to achieve
> their goal of emerging from chapter 11 as soon as practicable.

[*Id.* at ¶4.]

In a nod to these new uncertainties, the Delphi debtors requested that the "existing May 31, 2008

service deadline ... be extended to 30 days after substantial consummation of the Plan *or any*

*modified plan*."  (*Id.* at ¶19 (emphasis added)).

By Order dated April 30, 2008, the Court granted the motion and the requested extension

(the "Third Extension Order").  (Docket No. 13484).  The Third Extension Order also had an

exhibit listing all the adversary proceedings by case number.  (*Id.*).  And as it did with the

Second Extension Order, the Court allowed the Delphi debtors to hold off serving the Third

Extension Order on TA and the others until it served the complaints. (*Id.* at ¶2).

TA also had a "particularized interest" in this motion as a named defendant in a filed

complaint; yet the affidavit of service shows the Delphi debtors *never served the motion on TA*,

and the Delphi debtors waited to serve the Third Extension Order with the complaint. (*See*

Docket Nos. 13415).

### 7.     The Delphi Debtors Moved for a Fourth Extension Order and Failed to Serve TA.

By October 2, 2009, when the Delphi debtors next moved for an extension of time to

serve the preference complaints, the Plan was dead and an entirely different plan (the "Modified

Plan") was on the table that (1) would expressly retain 177 of the preference actions that had

been filed under seal, including the case against TA; and (2) would *not* reimburse unsecured

creditors in full. (*See* Docket No. 18952, ¶17). The Delphi debtors nonetheless requested that

the deadline on the retained complaints "be extended to 180 days after substantial consummation

of the Modified Plan." (*Id.* at ¶16). This time the Delphi debtors could only proffer cost and

time savings and the "complex nature of the transaction set forth in the Modified Plan" as

rationales for delaying service because it was no longer true that TA and certain of the other

defendants would not be impacted by the preference actions.

The Court granted this last extension by order dated October 22, 2009. (Docket No.

18999). Exhibit A to this order listed only the 177 preference actions that would be retained.

(*Id.*). And consistent with what it had done with the other extension orders, the Court allowed

the Delphi debtors to hold off serving the Fourth Extension Order on TA and the remaining

defendants until it served the complaints. (*Id.* at ¶2).

TA had an even stronger "particularized interest" at this point because it was clear by then that it would not escape the preference claim; yet the affidavit of service shows the Delphi Debtors *never served the motion on TA (just as they had not served any of the prior extension motions on TA)*, and the Delphi debtors waited to serve the Fourth Extension Order with the complaint. (*See* Docket No. 18967).

8.       **The Delphi Debtors Finally Served the Complaint on TA Years Late.**

The Delphi debtors did not serve the preference complaint on TA until April 2010, 4 ½ years after it had filed the bankruptcy petition and 2 ½ years after it had filed the complaint with the Court under seal. (The Delphi debtors served the defendants in the other retained preference actions around the same time.)    TA was unaware of any anticipated or actual preference action until the Delphi debtors served the complaint in April 2010.

The complaint contained bare-bones allegations that amounted to mere legal conclusions on the essential elements of the preference claim.  TA timely filed an answer and an amended answer in May 2010.

D.     **Defendants Filed First and Second Wave Dismissal Motions, and The Court Dismissed the Complaints, Gave the Delphi Debtors an Opportunity to Amend and Left Other Issues Open.**

Most of the defendants in the numerous surviving preference actions filed first or second wave motions to vacate the extension orders or dismiss the complaints.  They argued, among other things, that (1) the complaint failed to state a cause of action under the tougher pleading standards of *Iqbal* and *Twombly*; and (2) the extension orders should be vacated on the ground that defendants received no notice of the motions and thus had no opportunity to be heard.  TA joined in the first wave motions (Docket Nos. 31, 32 and 34 in this adversary proceeding), and also recently joined with many others in a motion for relief from the Fourth Extension Order (Docket No. 39 in this adversary proceeding) -- the third wave.

On July 22, 2010, the Court held a hearing on the first wave motions, and ruled on them on September 7, 2010. (Docket No. 20579). With respect to the *Iqbal* and *Twombly* pleading standard, the court dismissed all the preference complaints without prejudice "because the Debtors ... failed to plead sufficient facts to state a claim." (*Id.* at ¶4). The Court directed the Delphi debtors to file a motion for leave to amend in each adversary proceeding they "intend[ed] to pursue," and instructed, "Each Motion to Amend shall attach a proposed amended complaint that, for each alleged transfer shall set forth, at a minimum, the transferor, the transferee, any known subsequent transferee against whom relief is sought, the antecedent debt and which Reorganized Debtor is the plaintiff." (*Id.* at ¶4).

The Court did not issue a ruling on the validity of the extension orders, stating simply that the arguments and responses were "preserved." (*Id.* at ¶5). But the Court did give its "preliminary view" at the July 22 hearing on the motions:

> My preliminary view is that people who truly did not get notice of the extension motions can argue their merits .... They can argue them as if they were being argued for the first time. But that leaves a factual issue as to who got the notice and who didn't and what did people know.
>
> [T.225:20-25.]

The court gave this example: "[I]f someone contends they didn't get notice at all, even of the disclosure statement, then I think that would be a factor in my considering whether there should be leave to amend." (T.223:19-22).

E.    **The Proposed Amended Complaint Relies Exclusively on a Presumption of Insolvency.**

DAS is the named plaintiff on the proposed amended complaint, which alleges preferential transfers to TA and other Tyco companies. "Exhibit 1" lists all the underlying contracts and the specific transfers DAS seeks to avoid as preferences. As to TA, the exhibit

shows a series of payments all under P4850041. (*See* Proposed Amended Complaint, Ex. 1).

The transfers add up to approximately $1 million. (*Id.*).

As to the critical element of proving DAS was insolvent, the Delphi Debtors' proposed

amended complaint says only: "Pursuant to Bankruptcy Code section 547(f), for purposes of this

Adversary Proceeding, [DAS] is presumed to have been, and [was] in fact, insolvent at the time

the Transfers were made." (*Id.* at ¶25).

### ARGUMENT

### POINT I

### THE DELPHI DEBTORS' MOTION TO AMEND IS FUTILE BECAUSE DAS ASSUMED THE CONTRACT WITH TA AND WAIVED THE ASSERTED PREFERENCE CLAIM.

Fed. R. Civ. P. 15(a) provides that a "court should freely give leave to amend [a pleading]

when justice so requires"; however, the decision whether to allow an amendment is "within the

sound discretion" of the judge. *See McCarthy v. Dun & Bradstreet Corp.* 482 F.3d 184, 200 (2d

Cir 2007). "A district court has discretion to deny leave for good reason, including futility, bad

faith, undue delay, or undue prejudice to the opposing party." *Id.*

The Delphi debtors' motion to amend the complaint is futile because DAS assumed the

contract with TA and waived the preference claim. Soon after it filed for bankruptcy, the Delphi

debtors followed court-approved procedures and assumed P4850041 as a sole source supplier

agreement. The assumption agreement signed by DAS was in the form of a May 10, 2006 letter,

and an attached schedule listed P4850041 as one of numerous contracts DAS assumed. DAS

expressly waived any preference claims for pre-petition transfers under P4850041.

The Delphi debtors cannot dispute that DAS assumed P4850041 and waived the

preference claim in this case related to the transfers under that contract.[7]  As such, the Court

should enforce the assumption agreement, deny the Delphi debtors' motion to amend as futile,

and dismiss the action.

## POINT II

### THE DELPHI DEBTORS' MOTION TO AMEND IS FUTILE AND UNDULY PREJUDICIAL BECAUSE THEY SERVED THE ORIGINAL COMPLAINT TOO LATE AFTER KEEPING IT A SECRET FROM TA FOR 2 ½ YEARS.

The court need not consider anything other than the assumption agreement, which is

dispositive here for the reasons stated in Point I.  But even looking beyond that agreement, the

Delphi debtors' preference claim as to TA should be dismissed as untimely because the Delphi

Debtors never served TA with the numerous motions that allowed them to keep this case a secret

for two and a half years.  TA consequently had no opportunity to be heard on the long delay and

lost opportunities to resolve the claim early on, when it had leverage as a sole source supplier

and real options to get some value in return.

The legal issues surrounding challenges to the extension orders were the subject of

extensive briefing in the first and second wave motions to vacate the extension orders or dismiss

the complaints.  The arguments were, among others, that: (1) the Delphi debtors' *ex parte*

motions and the Court's extension orders violated defendants' due process rights because they

had no notice or opportunity to be heard; (2) the Court had no authority under Fed. R. Civ. P.

4(m) to allow the Delphi debtors to hide the preference actions from defendants for over 2 years

(the Court's discretion to extend the 120-day service deadline under the rule was reserved for

---

[7] Counsel to TA and counsel to the Delphi debtors have conferred about this defense based on assumption and waiver but were unable to resolve their differences prior to the time for TA to file this Opposition.

situations where a plaintiff tried to serve a defendant but had difficulty, *not* where a plaintiff could effect service but chose not to); and (3) the Court's extension orders impermissibly extended the two-year statute of limitations in 11 U.S.C. § 546(a) for filing avoidance actions -- they effectively more than doubled the period from 2 to 4 ½ years.

The third wave motions focused on a challenge to the Fourth Extension Order under *Global Crossing Estate Representative v. Alta Partners Holding LDC,* 385 B.R. 52 (Bankr. S.D.N.Y. 2008) on the grounds that the Delphi debtors' reasons for delaying service of the complaint on TA and the others had changed dramatically. More precisely, the Delphi debtors knew by then that they would not be able to pay all unsecured creditors in full and therefore had to retain many of the preference actions, which meant the Delphi debtors could no longer give any assurances that defendants would not be prejudiced. The Delphi debtors could only point to cost and time savings and the "complex nature of the transaction set forth in the Modified Plan" when they asked for the Fourth Extension Order: hardly anything unique and certainly not a good reason to further delay service on TA and the other defendants.

TA incorporates all these prior arguments, which the Court deemed "preserved" in its September 2010 Order, and will not repeat them here. TA also incorporates -- to the extent applicable -- the briefs and arguments of other defendants in opposition to the Delphi debtors' motion to amend. Accordingly, TA will focus below on the two factual issues the court identified at the July 22 hearing: (1) whether the Delphi debtors served defendants with the extension motions or the Disclosure Statement with respect to the Plan; and (2) whether defendants were harmed by the years-delayed service of the complaints.

1.    **The Delphi Debtors Did Not Serve any of the Extension Motions or the Disclosure Statement on TA, and thus TA Had No Opportunity to be Heard.**

This action was a complete surprise to TA when the Delphi debtors served the complaint in April 2010, 4 ½ years after it had filed its petition and 2 ½ years after it had submitted the complaint to the court under seal (*not* 120 days as required by Fed. R. Civ. P. 4(m)).  TA was *not served with anything* on the delay in the interim, and had no reason to monitor the bankruptcy on its own once its one claim was expunged very early on, well before the Delphi debtors filed the preference complaint under seal and moved for numerous extensions of time to serve it.

Despite this Court's clear directive to the Delphi debtors that they must serve anyone with a "particularized interest" in any motion, the Delphi Debtors failed to serve TA with any of the four motions that resulted in the Preservation/First Extension Order, the Second Extension Order, the Third Extension Order or the Fourth Extension Order.  The Delphi debtors also failed to serve TA with the Disclosure Statement with respect to the Plan.

TA was kept in the dark for years.  It had no reason to suspect that it would be sued, and no opportunity at any time to plead its interests to the Court.  This was certainly offensive to any notion of due process.

2.    **TA Was Harmed.**

The delayed service was not a non-issue to the Delphi debtors or TA; that is why the Delphi debtors went to such great lengths to keep the preference actions a secret.  The Delphi debtors had to admit that they sought (and gained) an advantage over TA as a result; but they figured TA would not be harmed because, ultimately, the Delphi debtors would not pursue the action or they would adopt a 100% plan.  Neither came to pass.

The harm to TA was real.  Had TA known about the preference claim 2 ½ years ago it could have used its leverage as a sole source supplier to press the Delphi debtors for a fair

resolution of the claim. TA also could have sold its 502(h) claim when there was a market for it

in light of the anticipated 100% plan. TA now has no leverage and no opportunity to sell the

claim.

The Delphi debtors may claim that they will be prejudiced if the case is dismissed, but

they have no right to complain because they, unlike TA, were in control throughout and made the

choices that led to the current situation. The Delphi debtors could have served the complaint on

time. They elected not to do so to gain leverage in negotiations with TA and others. This was a

risky strategy that banked on an ideal reorganization plan for creditors that proved to be

impossible. The Delphi debtors should bear the burden of their choices, *not* TA, which was

totally excluded from the decision-making process and was left with no good options.

* * *

In sum, TA was **not served with** any of the extension motions or the Disclosure Statement

and had no opportunity to object to the delayed service of the complaint; and it was harmed

because it lost any chance to resolve the claim on favorable terms. The Court should vacate the

extension orders -- the Fourth Extension Order at a minimum -- and rule that no amendment can

relate back to a timely claim against TA.

**POINT III**

**THE DELPHI DEBTORS' PROPOSED AMENDED
PLEADING FAILS TO STATE A CLAIM UNDER *IQBAL*
AND *TWOMBLY* BECAUSE IT RELIES SOLELY ON THE
PRESUMPTION OF INSOLVENCY AND IT APPEARS DAS
WAS, IN FACT, SOLVENT AT THE TIME OF THE
CLAIMED PREFERENCE PAYMENTS.**

A plaintiff must plead more than legal conclusions to state a cause of action. *See* Fed. R.

Civil. P. 8; *Iqbal,* 129 S.Ct. at 1949-50; *Twombly,* 550 U.S. at 555. "[L]abels and conclusions"

and "formulaic recitation[s] of the elements of a cause action" are not enough. *Twombly,* 550

U.S. at 555. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 129 S.Ct. at 1950.

The Delphi debtors' proposed amended complaint falls short under this standard inasmuch as it relies solely on the Rule 547(f) presumption of insolvency and pleads *no facts* to demonstrate that DAS was actually insolvent when it made the challenged transfers. Indeed, it appears DAS was, in fact, solvent at the time, as evidenced by the reported $2 billion-plus book value and the initial plan to re-pay unsecured creditors in full. If the presumption is ever enough, it should not be enough where, as here, there is every reason to believe that it will be proven wrong. The Delphi debtors should not be able to force TA and hundreds of other defendants to defend old preference claims on such a slender reed.

The Delphi Debtors have thus failed to cure all the deficiencies in their original complaint. The court should not give the Delphi debtors a second chance to amend, especially given the likelihood that they simply have no claim. *See Burch v. Pioneer Credit Recovery,* 551 F.3d 122, 126 (2d Cir. 2009) ("repeated failure to cure deficiencies by amendments previously allowed" is a valid reason to deny motions to amend); *Cellular Technical Services Co. v. Trueposition,* 609 F. Supp. 2d 223, 246 (D. Conn. 2009) (court saw "no reason" to give plaintiffs yet another chance to plead an essential element "[s]ince [they] ha[d] already had an opportunity to replead and ... did not take advantage of that opportunity"). The proposed amended complaint is insufficient and the court should dismiss the case.

## CONCLUSION

For all these reasons, and those stated in the incorporated first and third waive dismissal motions, the Court should deny the Delphi debtors' motion to amend their complaint and dismiss this adversary proceeding with prejudice with respect to TA.

Dated: New York, New York
November 24, 2010

WINDELS MARX LANE & MITTENDORF LLP

BY:    /s/ Howard L. Simon
Howard L. Simon (hsimon@windelsmarx.com)
Leslie S. Barr (lbarr@windelsmarx.com)
Antonio J. Casas (acasas@windelsmarx.com)
156 West 56th Street
New York, New York 10019
Telephone (212) 237-1034
Facsimile (212) 262-1215

Dated: Boston, Massachusetts
November 24, 2010

NUTTER MCCLENNEN & FISH LLP

BY:    /s/ Peter Nils Baylor
Peter Nils Baylor (pbaylor@nutter.com)
Seaport West
155 Seaport Boulevard
Boston, Massachusetts 02210
Telephone (617) 439-2390
Facsimile (617) 310-9390

*Attorneys for Tyco Adhesives LP*