**Hearing Date and Time:  February 17, 2011 at 10:00 a.m.**
**Reply Deadline:  January 28, 2011**

Shalom Jacob
Zachary D. Silbersher
LOCKE LORD BISSELL & LIDDELL LLP
Three World Financial Center
New York, New York 10281-2101
Tel:  (212) 415-8600
Fax: (212) 303-2754

-and-

Courtney E. Barr (CE 7768)
LOCKE LORD BISSELL & LIDDELL LLP
111 South Wacker Drive
Chicago, Illinois  60606
Tel:  (312) 443-0700
Fax: (312) 443-0336

*Counsel for Methode Electronics, Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 11 |
| DPH HOLDINGS CORP., et al., | Case No. 05-44481 [RDD] |
| Reorganized Debtors. | (Jointly Administered) |

-------------------------------------------------x
DELPHI CORPORATION, et al.,

Plaintiffs,

v.                                                          Adv. Pro. No. 07-02432 [RDD]

METHODE ELECTRONICS, INC.
Defendant.
-------------------------------------------------x

**METHODE ELECTRONICS, INC.'S OBJECTION TO THE REORGANIZED**
**DEBTORS' MOTION FOR LEAVE TO FILE AMENDED COMPLAINTS**

# TABLE OF CONTENTS

**PAGES**

I.  INTRODUCTION ...............................................................................................1

II.  THE EXTENSION ORDERS SHOULD BE VACATED AND THIS ACTION
DISMISSED FOR DEFECTIVE SERVICE ......................................................4

    A.  The Extension Orders Should Be Vacated Because They Deprived
Methode of Procedural Due Process.......................................................4

    B.  The Extension Orders Should Be Vacated Because Good Cause Did Not
Exist Under Rule 4(m) ...........................................................................6

    C.  The Extension Orders Should Be Vacated Because of the Equitable
Doctrine of Unclean Hands.....................................................................7

    D.  The Extension Orders Should Be Vacated Because They Improperly
Granted Relief Inconsistent With The Confirmed Plan...........................9

    E.  The Extension Orders Should Be Vacated Because The Orders Were
Based On Misrepresentations By The Reorganized Debtors Regarding
Notice Given To Methode of the Extension Motions.............................13

III.  LEAVE TO AMEND SHOULD BE DENIED BECAUSE THE REORGANIZED
DEBTORS WERE CHARGED WITH NOTICE OF THEIR DEFICIENTLY
PLED COMPLAINTS FROM THE DATE OF THE *IQBAL* DECISION ......................18

IV.  THE AMENDED COMPLAINTS VIOLATE THE DISMISSAL ORDER AND
FAIL TO SUFFICIENTLY PLEAD A PREFERENCE CLAIM UNDER
*IQBAL*'S ELABORATED STANDARD .........................................................20

    A.  The Amended Complaint Fails to Sufficiently Plead Facts Showing the
Alleged Transfers Were on Behalf of an Antecedent Debt ...................20

    B.  The Amended Complaint Fails to Sufficiently Plead the Alleged Transfers
Were Made on Account of Debts Specifically Owed By DAS ...............24

    C.  The Amended Complaint Alleges Inaccurate Transfers .........................26

    D.  DAS Has No Alleged Authority To Bring This Action...........................26

    E.  The Amended Complaint Fails to Sufficiently Plead DAS Was Insolvent ...........27

V.  THE PROPOSED AMENDED COMPLAINT FAILS TO PLAUSIBLY STATE
A CAUSE OF ACTION BECAUSE THE ALLEGED TRANSFERS FALL
UNDER THE ORDINARY COURSE EXCEPTION AS A MATTER OF LAW ...........28

VI.  GRANTING LEAVE TO FILE THE AMENDED COMPLAINTS WILL
PREJUDICE METHODE ...................................................................................30

VII.  INCORPORATION OF OTHER DEFENDANTS' BRIEFS ...........................................32

TABLE OF AUTHORITIES (CONTINUED)

**PAGES**

Methode hereby incorporates all of the other arguments raised by the other preference
  defendants in opposition to the reorganized debtors' motion for leave to file the
  amended complaints ...................................................................................................... 32

VIII.  CONCLUSION ............................................................................................................ 33

## TABLE OF AUTHORITIES

**PAGES**

**Cases**

*Ahern v. Neve,*
 285 F.Supp.2d 317 (E.D.N.Y. 2003) ...................................................................... 6

*Barcia v. Sitkin,*
 367 F.3d 87 (2d Cir. 2004 ................................................................................ 5, 31

*Browning v. Levy,*
 283 F.3d 761 (6th Cir. 2002) ................................................................................ 11

*Burnett v. N.Y. Cent. R.R. Co.,*
 380 U.S. 424 (1965) ............................................................................................... 7

*Corp. v. State St. Bank and Trust Co.,*
 948 F.2d 869 (2d Cir. 1991) ................................................................................. 11

*D & K Properties Crystal Lake v. Mutual Life Insurance Co. of N.Y.,*
 112 F.3d 257 (7th Cir. 1997) ............................................................................... 11

*Diversified Hospitality Group, Inc. v. Carson Pirie Scott & Co.,*
 1991 WL 35953 Mar. 8, 1991) ............................................................................... 6

*Efaw v. Williams,*
 473 F.3d 1038 (9th Cir. 2007) ............................................................................... 7

*Elsady v. Rapid Global Business Solutions, Inc.,*
 2010 WL 742900 Mich. Feb. 26, 2010) ............................................................... 19

*Fleet Nat'l Bank v. Gray (In re Bankvest Capital Corp.),*
 375 F.3d 51 (1st Cir. 2004) ................................................................................... 5

*Goldin Associates, L.L.C. v. Donaldson, Lufkin & Jenrette Securities Corp.,*
 00 Civ. 8688 WL 1119652 May 20, 2004) ........................................................... 11

*Grannis v. Ordean,*
 234 U.S. 385 (1914) ............................................................................................... 4

*In re Tennessee Chemical Co.,*
 12 F.3d 234 (6th Cir. 1997) ................................................................................. 29

*In re American Preferred Prescription, Inc.,*
 266 B.R. 273 (E.D.N.Y. 2000) ............................................................................. 11

*In re BCE West, L.P.,*
 2008 WL 565262 (Bankr. D. Ariz. 2008) ............................................................ 29

*In re Bennett Funding Group,*
 220 B.R. 739  (Bankr. 2d Cir. 1998) .................................................................... 21

*In re Caremerica, Inc.,*
 409 B.R. 346  (Bankr. E.D. N.C. 2009) ............................................................... 22

*In re Charys Holding Co., Inc.,*
 No. 10-50211 WL 2788152, (Bankr. D. Del. Jul. 14, 2010) ................................. 21

## TABLE OF AUTHORITIES (CONTINUED)

*In re C-TC 9th Avenue Partnership,*
   113 F.3d 1304 (2d Cir. 1997)......................................................................... 9

*In re Federated Dep't Stores,*
   44 F.3d 1310 (6th Cir. 1995) ...................................................................... 18

*In re Galerie Des Monnaies of Geneva, Ltd.,*
   62 B.R. 224 (S.D.N.Y. 1986)..................................................................... 13

*In re Hamilton,*
   179 B.R. 749 (Bankr. S.D. Ga. 1995) ......................................................... 5

*In re Hooker Investments, Inc.,*
   162 B.R. 426 (Bankr. S.D.N.Y. 1994) ....................................................... 12

*In re Hydrogen, L.L.C.,*
   431 B.R. 337 (Bankr. S.D.N.Y. 2010) ....................................................... 24

*In re Johnson,*
   189 B.R. 744 (Bankr. N.D. Iowa 1995) ..................................................... 28

*In re Kolstad,*
   928 F.2d 171 (5th Cir. 1991) ....................................................................... 5

*In re Meyer's Bakeries, Inc.,*
   400 B.R. 701 (Bankr. W.D. Ark. 2009)...................................................... 29

*In re Middleton Arms. Ltd. Partnership,*
   934 F.2d 723 (6th Cir. 1991) ...................................................................... 18

*In re Pembroke Development Corp.,*
   122 B.R. 610 (Bankr. S.D. Fla. 1991)........................................................ 28

*In re Planet Hollywood Int'l,*
   274 B.R. 391 (Bankr. D. Del. 2001) ......................................................... 12

*In re Roblin Industries, Inc.,*
   78 F.3d 30 (2d Cir. 1996).......................................................................... 28

*In re Tippins,*
   221 B.R. 11, (Bankr. N.D. Ala. 1998) ....................................................... 12

*In re Wedgewood Hotel Co., American Nat. Bank & Trust Co. of Chicago,*
   125 F.2d 327 (7th Cir. 1942) ..................................................................... 12

*Morse v. Perrotta (In re Perrotta),*
   406 B.R. 1 (Bankr. D. N.H. 2009) ............................................................... 6

*Motorola Credit Corp. v. Uzan,*
   561 F.3d 123 (2d Cir. 2009)........................................................................ 9

*Mullane v. Central Hanover Bank & Trust Co.,*
   339 U.S. 306 (1950).................................................................................... 4

*Precision Instrument Mfg. Co. v. Automotive Maintenance Mach. Co.,*
   324 U.S. 806, 65 S.Ct. 993 L.Ed. 1381 (1945)........................................... 9

*Rosenshein v. Kleban,*
   918 F. Supp. 98 (S.D.N.Y. 1996) ............................................................. 13

*Stoll v. Gottlieb,*
   305 U.S. 165, 59 S.Ct. 134 L.Ed. 104 (1938)........................................... 11

*Weigner v. City of New York,*
   852 F.2d 646 (2d Cir. 1988)........................................................................ 5

**TABLE OF AUTHORITIES (CONTINUED)**

**PAGES**

*Zahra v. Town of Southold*,
   48 F.3d 674 (2d Cir. 1995)............................................................................................. 31

**Statutes**

11 U.S.C. § 327(a) ........................................................................................................ 18
11 U.S.C. § 546(a) .......................................................................................................... 4
11 U.S.C. § 547(c)(2)............................................................................................... 28, 29
28 U.S.C. § 2075 ............................................................................................................. 6

**Rules**

Fed. R. Bankr. P. 7004(a) ............................................................................................. 14
Fed. R. Bankr. P. 9024 .................................................................................................... 4
Fed. R. Civ. P. 60(b) ....................................................................................................... 4
Fed. R. Civ. P. Rule 4(m)................................................................................... 6, 7, 14, 17

Defendant Methode Electronics, Inc. ("Methode") submits this objection (the

"Objection") to the Reorganized Debtors'[1] Motion for Leave to File Amended Complaints (the

"Motion").  In support of the Objection, Methode submits the *Declaration of Timothy R.*

*Glandon in Support of Methode Electronics, Inc.'s Objection to the Reorganized Debtors'*

*Motion for Leave to File Amended Complaints*, a copy of which is attached hereto as Exhibit A

(hereinafter, the "Glandon Decl.").

## I.    INTRODUCTION

This is not a typical Rule 15 motion.  Far from it.

On July 22, 2010, this Court heard argument on the motions to dismiss some of the

Adversary Proceedings, and ruled that "the complaints as filed and served do not satisfy the

pleading requirements of Rule 7008, incorporating Rule 8 of the Federal Rules of Civil

Procedure."  (Transcript[2], p. 275).  The Reorganized Debtors now seek leave to amend the

Original Complaints.  They rely chiefly on the premise that Rule 15 is to be "liberally

construed."  (Motion, p. 14-15).  But in order for the Court to find that this is a typical Rule 15

motion and permit the filing of Amended Complaints, the Reorganized Debtors would have to

convince the Court  to ignore all the salient facts and circumstances surrounding this Adversary

Proceeding.  Specifically, the Reorganized Debtors want this Court to forget that they

.manipulated and orchestrated the bankruptcy process to their own advantage much to the

prejudice of this defendant.

The Reorganized Debtors wants the Court to ignore the fact that they are seeking leave to

amend complaints that were originally filed over three years ago and remained under seal for

---

[1]  Capitalized terms used herein but not defined shall have the same meaning given to them in the
Motion.

[2]  Citations to the transcript of the July 22, 2010 hearing will hereinafter be to ("Transcript").

most of that time.  In light of these circumstances, all doubts regarding granting the freedom to amend should be resolved in favor of Methode.

Reorganized Debtors argue that they should now be afforded the opportunity to fix their complaints (Motion, pp. 7-8) because *Ashcroft v. Iqbal*, 129 S.Ct. 1936 (2009) was decided after they filed the Original Complaints.  But they ignore the fact that they sat on the unsealed, unserved complaints for months following *Iqbal* without making any attempt to amend them in order to satisfy the elaborated pleading standard that *Iqbal* announced.

They want the Court to also ignore the significant  prejudice to Methode should the Amended Complaint be allowed.  The Reorganized Debtors claim that leave to file the proposed Amended Complaint will not prejudice Methode because "The same transactions are the basis for the Preference Claims in both the Original Complaints and the Amended Complaints." (Motion, p. 13).  They ignore that the Original Complaints were filed under seal over three years ago, that they remained under seal for most of that time, and that during that time, as demonstrated below, Methode acted in reliance—to its detriment—on the presumption that any preference liability it might have had to the Reorganized Debtors was long extinguished by the statute of limitations.

The Reorganized Debtors also want the Court to ignore that that they misrepresented the notice given to Methode.  They want the Court to forget the fact that for over three years, while the Original Complaints remained under seal, Methode never received the notice it was entitled under this Court's guidelines for effectuating notice.  The Reorganized Debtors want the Court to ignore the fact that they misrepresented to this Court—in the course of moving for no less than four extensions to serve the Original Complaints—that proper notice was given pursuant to this Court's guidelines, and based on those false representations, this Court's granted the extensions.

They also want the Court to ignore the fact that, at the time those extension orders were granted, the confirmed plan of reorganization expressly disclaimed the right to bring this action. Thus, the orders in contravention of the plan—granting extensions of time to bring actions barred by *res judicata*—were invalid.  That alone warrants denial of leave to amend and dismissal of this action with prejudice.

Finally, the Reorganized Debtors wants the Court to find that the proposed Amended Complaint satisfies Rule 8 following *Iqbal*.  But they ignore that the allegations are missing key ingredients for adequately pleading a preference claim.  This Court ruled on July 22, 2010 that "the Court must assess the factual allegations in the context of the elements of the claim to determine whether they plausibly suggest entitlement to relief."  (Transcript, p. 275-76).  The proposed Amended Complaint contains insufficient factual allegations to plausibly plead: (i) that the alleged Transfers were on account of an antecedent debt; (ii) that those Transfers were on account of a debt owed to DAS; (iii) that DAS has the authority to bring this action; and (iv) that DAS was plausibly insolvent at the time of those Transfers.  In fact, as discussed in more detail below, though the Reorganized Debtors refer to a number of specific invoices and purchase orders in their proposed Amended Complaint—those very documents contradict the conclusory allegations contained in the complaint.

Although the Reorganized Debtors try to paint this as a typical Rule 15 motion, it is not typical.  Leave to amend a complaint is ___***not***___ "freely granted" where, as here, the plaintiff concealed the action from the defendant for years – obtaining extension after extension to serve the defendants with notice of the claim.  And then, Reorganized Debtor misrepresented to the court that service had been properly effected!  This underhanded conduct unduly prejudiced the defendant who acted in reliance on the presumed repose.  But in any event, now that the

defendants have finally learned about the claim, it is apparent that the allegations are woefully

lacking in substance.

Leave to amend should be denied.

## II.    THE EXTENSION ORDERS[3] SHOULD BE VACATED AND THIS ACTION DISMISSED FOR DEFECTIVE SERVICE

Fed. R. Civ. P. 60(b), as made applicable by Fed. R. Bankr. P. 9024, provides, in relevant

part:

> On motion and just terms, the Court may relieve a party or its legal
> representative from a final judgment, order or proceeding for the
> following reasons: . . . (6) any other reason that justifies relief.

For the following reasons, the Extension Orders should be vacated, and this action

dismissed for defective service.

### A.    The Extension Orders Should Be Vacated Because They Deprived Methode of Procedural Due Process

The Reorganized Debtors deprived Methode of procedural due process by filing the

Original Complaints under seal, barring Methode from discovering that it had been sued, while

continuing to extend the time for the Reorganized Debtors to file the complaints for close to

three years past the expiration of the statute of limitations provided by 11 U.S.C. § 546(a).

Accordingly, each of the Extension Orders was inappropriately entered and should be vacated.

The "fundamental requisite of due process of law is the opportunity to be heard." *Grannis

v. Ordean*, 234 U.S. 385, 394 (1914).  This right to be heard, however, "has little reality or worth

unless one is informed that the matter is pending and can choose for himself whether to appear or

default, acquiesce or contest."  *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314

(1950).  Thus, an "elementary and fundamental requirement of due process in any proceeding

---

[3] Both the "Extension Motions" and the "Extension Orders" are defined *infra*, section __.

which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* at 314; *Barcia v. Sitkin*, 367 F.3d 87, 107 (2d Cir. 2004) (same); *Weigner v. City of New York*, 852 F.2d 646, 654 (2d Cir. 1988) (same).

In addition, the lack of due process pursued by the Reorganized Debtors had the added effect of disenfranchising Methode and other defendants from participating in the case and voting on the Plan and Modified Plan. Indeed, under section 502(d) of the Bankruptcy Code, it is implicit that "a transferee of an avoidable transfer has an allowable claim once it turns over such property for which it is liable," and that it may file a proof of claim on account of same. *Fleet Nat'l Bank v. Gray (In re Bankvest Capital Corp.)*, 375 F.3d 51, 57 n.4 (1st Cir. 2004). That, in turn, allows it to "[participate] in the voting and distribution from the estate." *In re Hamilton*, 179 B.R. 749, 752 (Bankr. S.D. Ga. 1995) (quoting *In re Kolstad*, 928 F.2d 171, 174 (5th Cir. 1991), reh'g denied, 936 F.2d 571 (5th Cir. 1991), cert. denied, 502 U.S. 958 (1991)). The Reorganized Debtors knew that if Methode repaid an allegedly preferential transfer, it would have been entitled to file a claim, participate in the case and vote on the Plan and the Modified Plan. The justification for depriving Methode of its right to engage in the bankruptcy cases is blatantly improper and not justifiable under the Bankruptcy Code.

The due process deprivation also derives from the fact this Court—knowing these actions were pending under seal against the defendants—allowed the Reorganized Debtors to set bar dates, thus setting dates that cut off their rights and bound them to deadlines without being fairly apprised of the knowledge they had been sued.

For all of the foregoing reasons, each of the orders granted pursuant to the Extension Motions and extending the Reorganized Debtors' extensions of time to serve the Original

Complaints should be vacated on the ground that each was improvidently entered and void

against Methode.

### B.    The Extension Orders Should Be Vacated Because Good Cause Did Not Exist Under Rule 4(m)

The deadline for commencing an adversary proceeding against Methode on account of an

allegedly avoidable preference expired on October 8, 2007.  The Reorganized Debtors filed the

Original Complaint under seal on September 29, 2007, but did not serve Methode with such

Original Complaint until over three years after the statute of limitations contained in section

546(a) of the Bankruptcy Code expired.

Rule 4(m) of the Federal Rules of Civil Procedure permits courts to extend the time to

complete service for "good cause".  Good cause exists when service is not completed on a named

defendant within the required 120-day period, *Ahern v. Neve*, 285 F.Supp.2d 317, 320 (E.D.N.Y.

2003), and not when the plaintiffs know about and can serve the named defendants, but simply

choose not to do so, and where the sole purpose in seeking the extension of time is to prevent

defendants from learning that they had been sued.  The use of procedural rules to obtain a result

not contemplated by the accompanying substantive law is simply not permitted.  *See* 28 U.S.C. §

2075 (rules prescribed by the United States Supreme Court "shall not abridge, enlarge, or modify

any substantive right"); *see also Morse v. Perrotta (In re Perrotta)*, 406 B.R. 1, 8 (Bankr. D.

N.H. 2009) ("Therefore, to the extent that the Bankruptcy Rules and the Bankruptcy Code are

inconsistent, the statute controls.").

The Court's discretion to extend the time for service of process was unsupported here,

where it ran contrary to the fundamental notion of repose underlying the statute of limitations.

*See Diversified Hospitality Group, Inc. v. Carson Pirie Scott & Co.*, 1991 WL 35953, at *5

(S.D.N.Y. Mar. 8, 1991).  Indeed, the Ninth Circuit recently stated: "[n]o court has ruled that the

6

discretion [under Rule 4(m)] is limitless." *Efaw v. Williams*, 473 F.3d 1038, 1041 (9th Cir.

2007).[4]  The discretion is not warranted where, as here, the defendant "*could not have relied*

*upon the policy of repose embodied in the limitation statute, for it was aware that [the plaintiff]*

*was actively pursuing his . . . remedy*." *Id.* (quoting *Burnett v. N.Y. Cent. R.R. Co.*, 380 U.S. 424,

428-29 (1965)) (emphasis added).

Here, Methode indeed did rely upon the policy of repose embedded within section 546(a)

of the Bankruptcy Code, having received no notice for close to three years after the statute of

limitations had expired that it had been sued by the Reorganized Debtors.

The Reorganized Debtors sealed the complaints because they did not want to disrupt

existing business relationships with the defendants.  That is not the type of reasoning

contemplated by the due process constraints behind Rule 4(m).  Rather, exactly the type of due

process prejudice Rule 4(m) was intended to avoid will occur here if the leave to amend is

granted.  Methode and the other defendants will be forced to defend an action commenced five

years after the Chapter 11 petitions were filed, when the limitations period is two years.

Accordingly, leave to file the Amended Complaint should be denied.

### C.    The Extension Orders Should Be Vacated Because of the Equitable Doctrine of Unclean Hands

The Reorganized Debtors alleged reasons for sealing the Original Complaints are

meritless and plainly demonstrate that they intentionally orchestrated the bankruptcy process to

---

[4] As support for extending the time to serve process on defendants, the Reorganized Debtors
have cited *Bank of Cape Verde v. Bronson*, 167 F.R.D. 370, 371-72 (S.D.N.Y. 1996) for the
proposition that good cause existed where future events would have likely "obviated the need to
serve the [] complaint" and when the plaintiff requested the extension before the deadline
expired.  This case is inapplicable to the facts here . In *Bank of Cape Verde,* the third-party
plaintiff was pursuing good-faith settlement negotiations with the plaintiff and third-party
defendants, and had already served all or most of the parties to the action prior to the expiration
of the 120-day deadline.  That is a far cry from the situation here, where Methode was not, and
could not have been, in settlement negotiations with the Reorganized Debtors, as it did not even
know that it had been sued.

their own advantage and thus violated the doctrine of unclean hands. As such, the Reorganized Debtors motion for leave to file the Amended Complaint should be denied.

In the face of the unprecedented actions of concealing these avoidance actions for years from all the defendants and then not providing Methode any notice <u>whatsoever</u> of this action, Reorganized Debtors claim that their actions were in fact "necessary". Their claimed necessity for doing so: "sealing the actions would avoid unnecessarily alarming potential defendants" and "having to force all potential defendants to retain counsel to defend against adversary proceedings when, in fact, most of them likely will be resolved by a reorganization plan and never pursued." (Preservation of Estate of Claims Procedures Motion, ¶¶ 34, 37). Of course, retention of counsel and preparing to defend is a natural and legitimate consequence of suit but it is not a reason to hide the litigation from the defendants for years, only to spring it upon them when a 100 percent plan turns sour.

These justifications have no merit. The Reorganized Debtors had an option—sue the defendants or do not sue the defendants. Rather, they struck a heads-I-win-tails-you-lose with each of the defendants. Despite expressly disclaiming these avoidance actions within the first confirmed Plan, they intentionally moved for relief that would allow them to keep these actions within their back pocket, in contravention of the Plan, in contravention of due process, and in contravention of the economic disruption this suit has and will cause to these defendants. Years after the statute of limitations has passed, Methode has learned that it has been sued for over $19 million. The prejudice is self-evident.

"As the Supreme Court stated long ago, the 'clean hands' doctrine is far from a mere banality. It is a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however

improper may have been the behavior of the defendant.'"  *Motorola Credit Corp. v. Uzan*, 561

F.3d 123, 129 (2d Cir. 2009) (quoting *Precision Instrument Mfg. Co. v. Automotive Maintenance*

*Mach. Co.*, 324 U.S. 806, 814, 65 S.Ct. 993, 89 L.Ed. 1381 (1945).  In bankruptcy context,

courts are equipped with the statutory discretion to dismiss Chapter 11 petitions filed in bad faith

under section 1112 of the Bankruptcy Code.  *In re C-TC 9th Avenue Partnership*, 113 F.3d 1304,

1310-11 (2d Cir. 1997).

      The inequitableness of this situation is striking.  Leave to amend should be denied.

      **D.**    **The Extension Orders Should Be Vacated Because They Improperly Granted Relief Inconsistent With The Confirmed Plan**

      As discussed in more detail below, the Extension Orders should be vacated because, at

the time they were entered, they granted the Reorganized Debtors relief with respect to this

action, when the confirmed plan of reorganization at that time had expressly disclaimed retention

of this action.  Thus, because the orders violated the plan, they were invalid.

      On December 7, 2007, the Reorganized Debtors filed their First Amended Joint Plan of

Reorganization (Docket No. 11386) (the "<u>Plan</u>").  The Plan did *not* retain or preserve this

avoidance action against Methode.  On page 48, the Plan states:

> **7.24 Preservation Of Causes Of Action.** In accordance with
> section 1123(b)(3) of the Bankruptcy Code and except as
> otherwise provided in this Plan, the Reorganized Debtors
> shall retain and may (but are not required to) enforce all Retained
> Actions[5] and all other similar claims arising under applicable state
> laws, including, without limitation, fraudulent transfer claims, if

---

[5]  The definition of "Retained Actions" did not expressly cite to or refer to avoidance actions, preference claims or any relief available under Chapter 5 of the Bankruptcy Code.  Page 20 of the Plan provides:  "1.172 'Retained Actions' means all Claims, Causes of Action, rights of action, suits, and proceedings, whether in law or in equity, whether known or unknown, which any Debtor or any Debtor's Estate may hold against any Person, including, without limitation, Claims and Causes of Action brought prior to the Effective Date or identified in the Schedules, other than Claims explicitly released under this Plan or by Final Order of the Bankruptcy Court prior to the date hereof. A non-exclusive list of Retained Actions is attached hereto as Exhibit 7.24.

any, and all other Causes of Action of a trustee and debtor-in-possession under the Bankruptcy Code. . . . ***Notwithstanding the foregoing, Causes of Action against Persons arising under section 544, 545, 547, 548, or 553 of the Bankruptcy Code or similar state laws shall not be retained by the Reorganized Debtors unless specifically listed on Exhibit 7.24 hereto***.

(Emphasis added). Exhibit 7.24 fails to mention Methode, mention this action, or even mention Chapter 5 of the Bankruptcy Code.

On December 7, 2007, the Reorganized Debtors also filed the Disclosure Statement (Docket No. 11388), which provided the same thing on pages DS-200-01:

Notwithstanding the foregoing, Causes of Action against Persons arising under section 544, 545, 547, 548, or 553 of the Bankruptcy Code or similar state laws will not be retained by the Reorganized Debtors unless specifically listed on Exhibit 7.24 to the Plan. . . .

The Disclosure Statement also informed creditors that the Reorganized Debtors expected a 100 percent plan that would reap no benefit from pursuing avoidance actions:

Because of the Plan's treatment of unsecured creditors, the Debtors have determined that the affirmative pursuit of many if not all of these causes of action would not benefit their estates and creditors. As described in Section IX – Summary Of The Reorganization Plan above, the Plan will pay or satisfy all Allowed Claims in full through distributions of common stock. As a result, avoiding preferential transfers through causes of action under section 547 of the Bankruptcy Code or similar state laws would provide little or no benefit to the Debtors' Estates because any party returning such a transfer would be entitled to an unsecured claim for the same amount, to be paid or satisfied in full under the Plan. . . . As a result, under the Plan the Reorganized Debtors will not retain the Preference Claims except those specifically listed on Exhibit 7.24 to the Plan. In all other respects, the Reorganized Debtors will retain all rights, claims, and defenses, including as described immediately below.

(Disclosure Statement, pp. DS-200-01).

The Plan was confirmed on January 25, 2008 (Docket No. 12359). The first two Extension Motions were filed and ordered in August 2007 and February 2008, respectively—

thus right around the time the Plan was confirmed and the Disclosure Statement was filed. These

Extension Orders were thus invalid—they granted the Reorganized Debtors relief that was in

plain violation of the confirmed Plan and applicable law, amounting to an extension of time to

pursue an action that could <u>not</u> be brought under the terms of the confirmed Plan.

"It is well-settled that a bankruptcy court's order confirming a reorganization plan

constitutes a final judgment on the merits and is to be given preclusive effect under res judicata."

*In re American Preferred Prescription, Inc.*, 266 B.R. 273, 277 (E.D.N.Y. 2000) (citing *Stoll v.*

*Gottlieb*, 305 U.S. 165, 170-71, 59 S.Ct. 134, 83 L.Ed. 104 (1938); *see also Sure-Snap Corp. v.*

*State St. Bank and Trust Co.*, 948 F.2d 869, 872-73 (2d Cir. 1991). "Res judicata does not apply

where a claim is expressly reserved by the litigant in the earlier bankruptcy proceeding."

*Browning v. Levy*, 283 F.3d 761, 774 (6th Cir. 2002); *D & K Properties Crystal Lake v. Mutual*

*Life Insurance Co. of N.Y.*, 112 F.3d 257, 260 (7th Cir. 1997); *see also Sure-Snap*, 948 F.2d at

873 (2d Cir. 1991).

Many courts have held that a blanket reservation is insufficient to preserve post-

confirmation claims. Only expressly and specifically reserved causes of action in the plan—

including the name of the defendant and the nature of the claim—are retained. *Browning*, 283

F.3d at 775 (blanket reservation was insufficient to reserve claim against law firm because "it

neither names [law firm] nor states the factual basis for the reserved claims"); *D & K Properties*,

112 F.3d at 261 ("To avoid res judicata the reservation of a cause of action must be . . .

specifically identified"); *Goldin Associates, L.L.C. v. Donaldson, Lufkin & Jenrette Securities*

*Corp.*, 00 Civ. 8688, 2004 WL 1119652, at *5 (S.D.N.Y. May 20, 2004) ("a blanket reservation

of claims in a reorganization plan alone is insufficient to preserve a debtor's post-petition

claims"); *American Preferred*, 266 B.R. at 279 (blanket reservation was insufficient "because it

did not describe with specificity what actions are reserved for post-confirmation determination");

*In re Hooker Investments, Inc.*, 162 B.R. 426, 433-34 (Bankr. S.D.N.Y. 1994) ("whereas a

blanket reservation would not be enough to escape the *res judicata* bar, an express reservation

would").

Here, the confirmed Plan contained only a blanket reservation.  It did not mention

Methode.  It did not refer to this action.  It did not refer to the factual basis of this action.  Nor

did it even specify that it was reserving a "category" of avoidance actions.  On the contrary, it

expressly *disclaimed* retention of all avoidance actions not expressly enumerated:

> Notwithstanding the foregoing, Causes of Action against Persons
> arising under section 544, 545, 547, 548, or 553 of the Bankruptcy
> Code or similar state laws shall not be retained by the Reorganized
> Debtors unless specifically listed on Exhibit 7.24 hereto.

Accordingly, there can be no question that this very avoidance action against Methode

was <u>not</u> retained and would have been barred by res judicata *at the very time this Court*

*extended the time to serve the complaint*.  The Extension Orders were thus invalid and should be

vacated.

The orders granted relief at odds with the confirmed Plan.  This was improper.  *See In re*

*Wedgewood Hotel Co., American Nat. Bank & Trust Co. of Chicago*, 125 F.2d 327, 330 (7th Cir.

1942) (lower court was without "jurisdiction to grant relief in contravention of the finally

approved plan"); *see also In re Planet Hollywood Int'l*, 274 B.R. 391, 399-401 (Bankr. D. Del.

2001).

This is especially true where creditors and other potential defendants were expressly told

this was a 100% plan and preference claims would be futile.  To grant relief in contravention of

that was improper.  *See In re Tippins*, 221 B.R. 11, (Bankr. N.D. Ala. 1998) (blanket reservation

was insufficient to reserve claims where "the confirmed plans did not mention any specific claim

or cause of action against [defendants], but instead provided for the full payment of their debt");

*In re Galerie Des Monnaies of Geneva, Ltd.*, 62 B.R. 224, 225 (S.D.N.Y. 1986) ("The

bankruptcy court properly dismissed Galerie's attempt to recover preferential transfers after the

debtor had previously told creditors voting on the reorganization plan that it knew of no such

transfers").

Put simply, the Extension Orders allowed the Reorganized Debtors to have their cake and

eat it too—something deemed inappropriate by Courts within this District.  *See Rosenshein v.*

*Kleban*, 918 F. Supp. 98, 104-05 (S.D.N.Y. 1996) (dismissing post-confirmation debtor's claims

that were not disclosed in confirmed plan as judicially estopped because "[t]his is precisely the

sort of 'about-face' that undermines the integrity of the bankruptcy process").

Therefore, it was improper to extend the time to serve process in this action during the

very time this action was expressly disclaimed from retention by the Reorganized Debtors.  Not

having received the particularize notice required by this Court's orders, defendants were misled

to believe they were not going to be sued.  The Extension Orders were invalid and should be

vacated, and this action should be dismissed for defective service.

> **E.     The Extension Orders Should Be Vacated Because The Orders Were Based
> On Misrepresentations By The Reorganized Debtors Regarding Notice Given
> To Methode of the Extension Motions**

As explained in more detail below, Methode received insufficient notice of the

Reorganized Debtors' motions to extend the time to serve the Original Complaints.  This Court's

prior case management order required *particularized* notice—i.e., overnight mail—of motions

filed in adversary proceedings to which Methode was a party.  This did not happen.

At the July 22, 2010 hearing on the Motions to Dismiss, this Court instructed that if a

defendant to one of the preference cases "didn't get notice, it's wide open and I should look at it

as whether . . . it was appropriate to have entered those orders."  (Transcript, p. 103).  Methode

did not receive any particularized notice of the extension motions and thus the corresponding

orders were invalid against it and this case should be dismissed pursuant to Rule 4(m) of the

Federal Rules of Civil Procedure, as incorporated by Federal Bankruptcy Rule 7004(a) .  On this

basis alone, leave to amend the Complaint against Methode should be denied.

During the above-captioned bankruptcy proceeding, the Reorganized Debtors filed four

separate motions between 2007 and 2009 for an order extending the deadline to serve process in

the Adversary Proceeding.  These motions included:

- Preservation of Estate Claims Procedure Motion,[6] filed August 6, 2007 [Docket No. 8905];
- Extension of Avoidance Action Service Deadline Motion, filed February 28, 2008 [Docket No. 12922], (hereinafter referred to as the "First Extension Motion");
- Postconfirmation Extension of Avoidance Action Service Deadline Motion, filed April 10, 2008 [Docket No. 13361] (hereinafter referred to as the "Second Extension Motion"); and
- Supplemental Postconfirmation Extension of Avoidance Action Service Deadline Motion, filed October 2, 2009 [Docket No. 18952] (hereinafter referred to as the "Third Extension Motion").

Collectively, these motions will be referred to as the "Extension Motions".  Each of the

foregoing motions resulted in an order, which, for the most part, granted the relief requested.

Those orders included:

- Preservation of Estate Claims Procedure Order, entered August 16, 2007 [Docekt No. 9105];
- Extension of Avoidance Action Service Deadline Order, entered March 28, 2008 [Docket No. 13277], (hereinafter referred to as the "First Extension Order");
- Postconfirmation Extension of Avoidance Action Service Deadline Order, entered April 30, 2008 [Docket No. 13484], (hereinafter referred to as the "Second Extension Order");

---

[6] For brevity's sake, the motions and orders are referred to by their abbreviated titles, as they appear on the cover page of each motion and order, respectively.

- Postconfirmation Extension of Avoidance Action Service Deadline Order, entered October 22, 2009 [Docket No. 18999], (hereinafter referred to as the "Third Extension Order").

The foregoing orders will hereinafter be referred to collectively as the "Extension Orders".

Each of the four Extension Motions state that notice of the motion was provided in accordance with the Court's earlier order that established notice procedures (the "Notice Procedures Order").[7]

The Notice Procedures Order provides specific guidance on providing notice to parties with a particularized interest in the Filing.  Specifically, the order states,

> [a]ll Filings shall be served (a) via overnight mail upon all parties with a particularized interest in the subject of the Filing . . . and (b) by electronic transmission or fax on each party who files a notice

---

[7] This order was titled: Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m) 9006, 9007, and 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And Administrative Procedures, entered March 20, 2006 [Docket No. 2883].

In addition to the Notice Procedure Order, each of the four motions referenced an additional order pursuant to which notice of that respective motion was made.  Specifically, the Preservation of Estate Claims Procedure Motion referenced the Amended Eighth Supplemental Order Under 11 U.S.C. §§ 1021(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9006, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And Administrative Procedures, entered October 26, 2006 [Docket No. 5418], the First Extension Motion and the Second Extension Motion referenced the Tenth Supplemental Order Under 11 U.S.C. §§ 1021(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9006, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And Administrative Procedures, entered February 4, 2008 [Docket No. 12487], and the Fourth Extension Motion referenced the Fifteenth Supplemental Order Under 11 U.S.C. §§ 1021(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9006, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And Administrative Procedures, entered August 27, 2009 [Docket No. 18839].

Each of these additional orders merely confirmed that the notice guidelines provided in the Notice Procedures Order remain in effect, and none of them add any substantive amendments to the Notice Procedures Order that are relevant to service of the motions upon Methode beyond what is provided in the Notice Procedures Order.

of appearance or request for documents in accordance with Rule
2002 of the Federal Rules of Bankruptcy Procedure.

(Notice Procedures Order, ¶ 15, p. 8).

The Notice Procedures Order defines "Filings" to comprise "every notice, motion or

application . . . and all briefs, memoranda, affidavits, declarations, or other documents filed

concurrently therewith."  (Notice Procedures Order, ¶ 2, p. 2).  Accordingly, the term "Filings"

includes motions.  Therefore, because the Extension Motions were motions, then the notice

guidelines for "Filings" under the Notice Procedures Order applied to service of the Extension

Motions.

Methode is a named defendant in the Adversary Proceeding, and therefore, under the

Notice Procedures Order, Methode constitutes a "part[y] with a particularized interest."  Thus, to

provide notice of each of the Extension Motions in accordance with paragraph 15 of the Notice

Procedures Order, as the Reorganized Debtors represented occurred, then Methode was required

to be served with each of the Extension Motions by overnight mail.

The Notice Procedures Order also provides specific guidance on providing notice of

Adversary Pleadings, which includes Filings and initial pleadings filed in an adversary

proceeding, such as this Adversary Proceeding.  Specifically, the order provides,

> [a]ll initial Filings, complaints, and other pleadings filed in any
> adversary proceeding commenced in these cases (the "Adversary
> Proceedings") shall be served by overnight mail, courier, or hand
> delivery on . . . . (f) any parties required to be served under any
> applicable Bankruptcy Rule or Local Rule.

(Notice Procedures Order, ¶ 19, p. 10).

Methode is a named defendant in the Adversary Proceeding, and therefore, under the

Notice Procedures Order, Methode was required to be served under applicable Bankruptcy Rules

or Local Rules of all extensions of the deadline for the Reorganized Debtors to serve process of

the complaint in the Adversary Proceeding.  Thus, to provide notice of each the Extension

Motions in accordance with paragraph 19 of the Notice Procedures Order, as the Reorganized

Debtors had represented to the Court occurred, then Methode was required to be served with

each of the Extension Motions by overnight mail.

Methode was not served with any of the four Extension Motions by overnight mail,

including the Preservation of Estate Claims Procedure Motion, the First Extension Motion,  the

Second Extension Motion, or the Third Extension Motion.  (Glandon Decl. ¶ 12).  Further, the

Affidavits of Service that are available for each of the four Extension Motions do not indicate

that Methode was served with any of the Extension Motions by overnight mail.

Accordingly, in each of the four Extension Motions, the Reorganized Debtors'

represented that notice was given in accordance with the Notice Procedures Order.  Yet, as

demonstrated, this was a false representation.  Therefore, the corresponding orders granting the

extensions were thus based on false representations by the Reorganized Debtors of notice given

to Methode.  Those orders should thus be deemed invalid and vacated against Methode, and this

case warrants dismissal under Rule 4(m).

The lack of particularized notice was more than a technical aberration from the Notice

Procedures Order—it directly misled the defendants to the non-existence of these actions.

Failure to comply the level of notice that creditors expected by the Notice Procedures Order in

the event they were sued for alleged preferences led them to believe that—absent that

particularlized notice—they were not going to be sued.  Accordingly, the Reorganized Debtors'

failure to provide particularlized notice in compliance with the Notice Procedures Order is more

than merely technical.  It is at the heart of what misled defendants and resulted in their due

process deprivation.

17

Leave to amend should thus be denied.

## III.    LEAVE TO AMEND SHOULD BE DENIED BECAUSE THE REORGANIZED DEBTORS WERE CHARGED WITH NOTICE OF THEIR DEFICIENTLY PLED COMPLAINTS FROM THE DATE OF THE *IQBAL* DECISION

The Reorganized Debtors admit that the United States Supreme Court's decision in *Ashcroft v. Iqbal*, 129 S.Ct. 1936 (2009), "elaborated on Rule 8's requirements." (Motion, p. 9). They argue, however, that because they filed the Original Complaints before the United States Supreme Court decided *Iqbal*, they "should not be penalized." (Motion, p. 8). Despite knowing about *Iqbal*, and despite the Original Complaints remaining under seal and unserved, the Reorganized Debtors wish to benefit from their own recalcitrance.

On the contrary, after *Iqbal* was decided, the Reorganized Debtors must be charged with the knowledge that they were proceeding at risk of deficient pleadings in the Original Complaints. Indeed, they have been on notice of *Iqbal* for well over a year. For much of that time, though they kept the Original Complaints under seal, and even moved for an additional extension of time to serve them,[8] they made no attempt to amend the Original Complaints to comply with the elaborated pleading standards enunciated by *Iqbal*—which they admit to on page 9 of the Motion.

In *In re Federated Dep't Stores*, 44 F.3d 1310 (6th Cir. 1995), Lehman Brothers continued to provide financial advisory services to the debtor-in-possession despite the U.S. Trustee's persistent objection that Lehman should be disqualified because it was not a "disinterested" person under § 327(a). The debtors' reorganization plan was approved before the Trustee's objection reached the Sixth Circuit. In the interim, the Sixth Circuit decided, *In re Middleton Arms. Ltd. Partnership*, 934 F.2d 723 (6th Cir. 1991), which was a "definitive

---

[8] *See* Supplemental Postconfirmation Extension of Avoidance Action Service Deadline Motion, filed October 2, 2009 [Docket No. 18952].

appellate court decision . . . that determined the question of Lehman Brothers' qualifications to serve as [debtor's] financial advisor despite its interested status." *Id.* at 19-20. For that very reason, when the Sixth Circuit finally addressed the Trustee's objection to Lehman's retention, the Court ruled that Lehman must disgorge all of the fees incurred after the date of the *Middle Arms* decision. The Court held, "[a]fter that date on which *Middleton Arms* was decided, Lehman Brothers is charged with the knowledge that it was proceeding at risk." *Id.* at 20.

*A fortiori*, the same reasoning applies here. Precisely *because* the Reorganized Debtors filed the Original Complaints before *Iqbal*, from that date forward they were charged with knowledge that they were proceeding at risk of deficiently pled complaints. Clearly, *Iqbal*, a definitive decision by the United States Supreme Court, put the Reorganized Debtors on notice as to the required pleading standards. Despite all the liberties that it took in these avoidance actions, and its underhanded approach with Methode and other defendants, the Reorganized Debtors completely ignored the United States Supreme Court's admonition and failed to amend the Original Complaints.

In any case, this is not a normal Rule 15 motion. This is a case where the Reorganized Debtors contributed to the delay by failing to attempt to amend the Original Complaints, despite making a comparable effort to extend the time to serve them.

The cases cited by the Reorganized Debtors bear this out. For example, in *Elsady v. Rapid Global Business Solutions, Inc.*, 2010 WL 742900, at *5 (E.D. Mich. Feb. 26, 2010), the court held that defendant "bears equal responsibility" for its delay in waiting to raise the issue of plaintiff's deficient allegations. Here, the complaints were filed under seal, where they remained months after *Iqbal*. Defendants—including Methode—were incapable of questioning the deficiencies in the pleadings during that time. Any delay in remedying the Original Complaints

lies solely with the Reorganized Debtors, and in this instance, the Reorganized Debtors'

recalcitrance warrants denying them the opportunity to repair what they had months to fix.

The motion for leave to file the proposed Amended Complaint should be denied.

## IV.    THE AMENDED COMPLAINTS VIOLATE THE DISMISSAL ORDER AND FAIL TO SUFFICIENTLY PLEAD A PREFERENCE CLAIM UNDER *IQBAL'S* ELABORATED STANDARD

Following Defendants' First Wave Motion to Dismiss, and the July 22, 2010 hearing on

those motions, this Court dismissed this adversary proceeding without prejudice "because the

Debtors have failed to plead sufficient facts to state a claim, and have not complied with Rule 8 .

. . .". *See* Order Granting In Part First Wave Motions to Dismiss, September 7, 2010 [Docket

No. 31, Adv. Pro. No. 07-02432] (hereinafter, the "Dismissal Order").  Paragraph 4 of the

Dismissal Order provided:

By no later than September 7, 2010, the Reorganized Debtors shall file a motion for leave

to amend the complaint in each Adversary Proceeding the Reorganized Debtors intend to pursue

(each, a "Motion to Amend").  Each Motion to Amend shall attach a proposed amended

complaint that, for each alleged transfer shall set forth, at a minimum, the transferor, the

transferee, any known subsequent transferee against whom relief is sought, the antecedent debt

and which Reorganized Debtor is the plaintiff.

The proposed Amended Complaint fails to satisfy this order because it does not

sufficiently set forth the minimum requirements it provides for, and as discussed below, it fails to

comply with the elaborated pleading standards for a preference claim enunciated by *Iqbal*.

### A.    The Amended Complaint Fails to Sufficiently Plead Facts Showing the Alleged Transfers Were on Behalf of an Antecedent Debt

The proposed Amended Complaint fails to sufficiently allege that the Transfers were on

account of an antecedent debt.  At the July 22, 2010 hearing on the Motions to Dismiss, this

Court instructed that, to satisfy Rule 8 following *Iqbal*, the debtor must allege "a particular antecedent debt on which the transfer was on account." (Transcript, p. 276). This Court explained that, whereas it might be reasonable to infer that payments are made on behalf of an antecedent debt, "the thing is it may not be antecedent, they may be paying in advance, they may be paying that day; COD." (Transcript, p. 206).[9]

Courts have emphasized that to adequately allege that preferential transfers were on account of an antecedent debt, they must plausibly show the goods were shipped before the payment was made. *In re Bennett Funding Group*, 220 B.R. 739, 742 (Bankr. 2d Cir. 1998). For instance, following *Iqbal*, in *In re Charys Holding Co., Inc.*, No. 10-50211, 2010 WL 2788152, at *5 (Bankr. D. Del. Jul. 14, 2010), the complaint alleged facts identifying the transfer by date, amount and transferor/transferee, yet it failed to "provide sufficient facts showing an antecedent debt owed by [plaintiff] to [defendant]"—in other words, "earlier; preexisting; previous". *Id.* Specifically, the complaint did "not specifically allege that services were rendered prior to [the] date [of the transfer]." *Id.*

Exhibit 1 to the proposed Amended Complaint merely lists alleged invoice numbers and purchase order numbers—that's it. It says nothing of when shipment was made. There are no dates listed for any of the invoices or purchase orders, no dates indicating when they became due and owing, nor any dates indicating when the goods actually shipped. In other words, there is no context that can be drawn from the face of the Amended Complaint indicating that the Transfers were antecedent to shipment. This Court previously instructed: "you have to give some context to show that there's a debt owing." (Transcript, p. 208). Listing invoice numbers by themselves does not do that.

---

[9] Later in the hearing, this Court reiterated this: "Debtors may pay COD or in advance." (Transcript, p. 277).

The Reorganized Debtors may argue that invoices and purchase orders, *presumably*, only issued for goods before they are shipped—thus they must be antecedent.  Yet, this is the exact type of inference this Court instructed against reading into a preference complaint:[10]

> [W]hile it may seem at first glance that anyone receiving money has to receive it for some purpose and therefore it's reasonable to infer in the context that that purpose is to pay an antecedent debt, that is not always the case.

(Transcript, p. 277).

The Reorganized Debtors may also argue that the proposed Amended Complaint does allege that the payments were made for goods previously shipped.  The Amended Complaint states that the payments were "for, or on account of, an antecedent debt."  This is not enough. Courts following *Iqbal* have emphasized that conclusory allegations as to the antecedence of the debt will not suffice.  *See e.g., In re Caremerica, Inc.*, 409 B.R. 346, 351 (Bankr. E.D. N.C. 2009) (recitation in complaint that payment was made "for, or on account of, an antecedent debt" "fails to assert any facts showing the existence of an antecedent debt").  This Court concurred: there is a "need to say something about the antecedent debt, other than the conclusory statement that there's [sic] antecedent debt."  (Transcript, p. 206).

The Reorganized Debtors may also point out that the Amended Complaint also alleges: "Plaintiff made certain payments to Defendant in satisfaction of amounts due for goods previously shipped." (Complaint, ¶ 18).  This is also not enough.  A conclusory recitation that "certain" payments were for goods "previously shipped" fails to recite particularlized facts creating a plausible context that *each* alleged transfer was on account of a debt antecedent to that

---

[10] Counsel for Reorganized Debtors stated at the hearing:  "The strange thing about applying *Twombly* and *Iqbal* to a preference case is that what does it mean to say that a preference claim is plausible?  I mean, it's plausible that Delphi paid these defendants the amounts that are indicated on the [Original Complaints] on the dates that are indicated.  ***And it's plausible that those payments were on account of an antecedent debt***."  (Transcript, p. 205, emphasis added.)

transfer. *Charys Holding Co.*, 2010 WL 2788152 at *4 (following *Iqbal*, stating "complaints asserting preferential transfer claims must contain particularized facts including: (i) an identification of the nature and amount of each antecedent debt").

The additional allegations in the proposed Amended Complaint fail to remedy this defect. They state:

> The documents evidencing the antecedent debt include the purchase orders and/or invoice/bills of lading identified in Exhibit 1, which purchase orders and/or invoice/bills of lading include evidence of the amount of the antecedent debt and the approximate dates the subject goods contemplated by the Agreements were ordered pursuant to the Agreements and/or were provided by Defendant.

(Amended Complaint, ¶ 22). This allegation boils down to: "purchase orders . . . include evidence of the . . . approximate dates the subject goods . . . were ordered . . . and/or provided." Therefore, the Reorganized Debtors effectively admit that facts of those dates are not alleged in the Amended Complaint. Indeed, the foregoing allegation is just a legal conclusion supported by no allegations of facts. It thus fails *Iqbal*'s prescription: "legal conclusions can provide the framework of a complaint, [but] they must be supported by factual allegations." 129 S.Ct. at 1949. Rather, the Amended Complaint's allegation that the transfers were plausibly *antecedent* to the debt remains at best a reasonable inference—indeed, the very inference this Court ruled cannot form the basis of a preference complaint. (Transcript, p. 277).

Thus, the proposed Amended Complaint flounders before the United States Supreme Court's admonishment as to Rule 8's heightened requirements: "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Leave to amend should be denied.

23

**B.      The Amended Complaint Fails to Sufficiently Plead the Alleged Transfers Were Made on Account of Debts Specifically Owed By DAS**

The Bankruptcy Court for the Southern District of New York recently held—after

*Iqbal*—that to satisfy Rule 8, a preference complaint must allege facts that each transfer was

made on account of "a specific and identifiable antecedent debt *owed by the Debtor*."  *In re*

*Hydrogen, L.L.C.*, 431 B.R. 337, 355 (Bankr. S.D.N.Y. 2010) (AJG) (emphasis added).  In

*Hydrogen*, despite alleging the amount and type of transfer, the Court dismissed the amended

complaint because it failed to allege that it was on account of a specific debt "owed by the

Debtor."  *Id.*

The same holds true here.  Nowhere within the proposed Amended Complaint does DAS

allege that any of the alleged transfers were made on account of a debt *owed by DAS*.  On the

contrary, the sum of the allegations counter this conclusion.

The proposed Amended Complaint alleges that Methode supplied goods "for the benefit

of the Reorganized Debtors"—not specifically for the benefit of DAS.  (Amended Complaint, ¶

15).  The Amended Complaint even fails to recite that DAS is one of the Reorganized Debtors,

and so on its face, there is no allegation that the goods were even shipped for the benefit of DAS.

*See supra*, section III(C) for additional discussion.)  Though the Amended Complaint alleges that

"Plaintiff entered into certain purchase agreements (the 'Agreements') with [Methode] for the

supply of various parts to the Reorganized Debtors," (Amended Complaint, ¶ 13), it also states

that DAS "performed, among other things, accounting and payment functions for the

Reorganized Debtors . . . ."  (Amended Complaint, ¶ 12).  Combined, these allegations plausibly

suggest that DAS accounted for payment of debts owed by the Reorganized Debtors—not that

the alleged Transfers were for debts owed specifically by DAS.  Thus, the sum of these

allegations run afoul of Rule 8 by failing to plausibly allege the debts were owed by DAS.  *See*

*Hydrogen*, 431 B.R. at 355.

More than the allegations themselves, however, many of the very documents referred to

in Exhibit 1 actually contradict the allegation that the alleged Transfers were on account of debts

owed by DAS.  Attached as Exhibit B to the Glandon Decl. are a sample of true and correct

copies purchase orders that are listed in Exhibit 1 to DAS's proposed Amended Complaint

against Methode.  As is evident from the purchase orders attached to the Glandon Decl., none of

these documents list the "Buyer" of the goods as DAS.  (Glandon Decl. ¶ 17).  Indeed, none of

them even mention or refer to DAS whatsoever within the document.  If other Debtors were the

actual buyers of the goods, and the debts were actually owed by other debtors, then for those

alleged Transfers, the proposed Amended Complaint fails to *plausibly*  plead that they were on

account of debts owed by DAS.[11]  Methode has identified at least 103 Non-DAS Purchase

Orders.  (Glandon Decl. ¶ 17).

Because DAS's own allegations contradicts its own claim, no factual enhancement could

save its proposed Amended Complaint from surviving a motion to dismiss.  *See Hydrogen*, 431

B.R. at 363 (denying leave to amend because "further amendment would be futile because no

amount of additional factual enhancement can alter the legal conclusion that the cause of action .

. . is not recognized [by law]").

---

[11]  These purchase orders would be admissible to deny a motion to dismiss because they were
referred to in the Amended Complaint.  *Yak v. Bank Brussels Lambert*, 252 F.3d 127, 130 (2d
Cir. 2001); *DeSouza v. Plusfunds Group, Inc.*, 05 Civ. 5990 (JCF), 2007 WL 4287745, *2
(S.D.N.Y. Dec 7, 2007).

In total, purchase orders that fail to list DAS as the "Buyer" fail to account for $15,571,461.07 of the total alleged Transfers.  (Glandon Decl. ¶ 17).  At the very least, DAS's claim for relief should be reduced by this amount..

### C.    The Amended Complaint Alleges Inaccurate Transfers

An additional basis for inaccuracies contained in Exhibit 1 to the proposed Amended Complaint is the fact that a substantial number of the alleged antecedent debts/transfers listed in Exhibit 1 consist of: (i) purchase orders and invoices that the Debtors list as the basis for an antecedent debt, of which Methode has no record (collectively, the "No Record Purchase Orders"); and (ii) purchase orders and invoices that the Debtors allege as relating to a larger amount paid to Methode than what Methode's records show as being received (the "Inaccurate Amount Purchase Orders").  (Glandon Decl. ¶ 18).  A chart that summarizes a sampling of the No Record Purchase Orders is attached to the Glandon Decl. as Exhibit C.  A chart that summarizes a list of the Inaccurate Amount Purchase Orders is attached to the Glandon Decl. as Exhibit D.[12]

### D.    DAS Has No Alleged Authority To Bring This Action

The Dismissal Order required that the proposed amended complaint attached to each Motion to Amend "shall set forth, at a minimum, . . . which Reorganized Debtor is the plaintiff." (Dismissal Order, ¶ 4).  In this case, the proposed Amended Complaint states that: "the Reorganized Debtors retained the right to pursue the claims and causes of action asserted in this First Amended Complaint . . . ." (Amended Complaint, ¶ 6).  Presumably, on that basis, DAS has the authority to sue Methode in this action for the alleged avoidable preferences.  The proposed Amended Complaint, however, fails to identify or even allege that DAS is one of the

---

[12]  Exhibits C and D represent some of the inaccuracies contained in Exhibit 1 and Methode reserves the right to supplement or otherwise amend its listing of inaccuracies.

Reorganized Debtors.  Thus, on its face, the proposed Amended Complaint runs afoul of this Court's Dismissal Order, because it does not identify DAS as one of the Reorganized Debtors capable of pursuing this action.  Failure to comply with the Dismissal Order warrants denying leave to file the Amended Complaint.

Yet, the omission is more than technical.  It runs to the core of the United States Supreme Court's reasoning behind elaborating the pleading requirements in *Iqbal*.  The Supreme Court stated: "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 129 S.Ct. at 1940.

The Reorganized Debtors might hope this Court would safely presume that DAS is one of the Reorganized Debtors without needing to expressly articulate that in its proposed Amended Complaint.  And they might hope that because that fact may be articulated elsewhere, there is no need to spell it out in the proposed Amended Complaint.  But to do so would be contrary to the very reasoning behind the United States Supreme Court's holding—especially for one of the requirements expressly stated by this Court in its Dismissal Order.

The proposed Amended Complaint is thus insufficient under *Iqbal* as well as this Court's Dismissal Order.  Leave to file it should be denied.

### E.    The Amended Complaint Fails to Sufficiently Plead DAS Was Insolvent

The Reorganized Debtors admit that the United States Supreme Court's decision in *Iqbal*, "elaborated on Rule 8's requirements."  (Motion, p. 9).  Yet, to plead that DAS was insolvent at

27

the time of the alleged Transfers, they rely on the presumption contained in section 547(f).[13]

(Amended Complaint, ¶ 23).  This is insufficient to satisfy *Iqbal*.

For one thing, DAS's insolvency allegation is nothing more than a legal conclusion, naked of any supporting factual allegations.  *Iqbal*, 129 S.Ct. at 1949 ("legal conclusions can provide the framework of a complaint, [but] they must be supported by factual allegations").

More importantly, the record contradicts, rather than supports this allegation.  DAS's schedules, which were verified under penalty of perjury, demonstrate that DAS clearly was not insolvent—but had an approximate $2.6 billion positive net-worth book value.  *See* Notice of Amendments of Schedules and Assets and Liability, dated April 18, 2006 (Case No. 05-44641 D.I. 10).

DAS's schedules clearly shift the presumption of showing insolvency away from Methode.  *See In re Roblin Industries, Inc.*, 78 F.3d 30, 334-35 (2d Cir. 1996): *In re Johnson*, 189 B.R. 744, 747 (Bankr. N.D. Iowa 1995); *In re Pembroke Development Corp.*, 122 B.R. 610, 612 (Bankr. S.D. Fla. 1991).  Because the burden to show insolvency now lies with DAS, before the Amended Complaint has even been filed, *Iqbal* requires that allowing DAS to plead mere conclusory allegations of insolvency—that are evidently false—should be insufficient to let this action proceed.  Leave to amend should thus be denied.

## V.    THE PROPOSED AMENDED COMPLAINT FAILS TO PLAUSIBLY STATE A CAUSE OF ACTION BECAUSE THE ALLEGED TRANSFERS FALL UNDER THE ORDINARY COURSE EXCEPTION AS A MATTER OF LAW

The alleged Transfers listed in Exhibit 1 of the proposed Amended Complaint—as the Reorganized Debtors have alleged them—show that, as a matter of law, they are exempt from avoidance under the ordinary course exception set forth in § 547(c)(2).

---

[13]  Section 547(f) of the Bankruptcy Code provides:  "For the purposes of this section, the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition."

The ordinary course exception under § 547(c)(2) considers "the history of the parties' dealings with each other, timing, amount at issue, and the circumstances of the transaction. Generally, the entire course of dealing is considered." *In re Tennessee Chemical Co.*, 112 F.3d 234, 237 (6th Cir. 1997) (citations omitted). Payments made according to a payment program where it was ordinary for the debtor to pay multiple invoices at once have fallen within the exception. *See e.g.*, *In re Meyer's Bakeries, Inc.*, 400 B.R. 701, 707 (Bankr. W.D. Ark. 2009) (payments were within ordinary course "where it was typical in the industry to pay multiple invoices" simultaneously); *In re BCE West, L.P.*, 2008 WL 565262 (Bankr. D. Ariz. 2008) ("batch payments" was "ordinary" for the creditor, and thus subject to the exception); .[14]

Out of the alleged Transfers set forth in Exhibit 1, almost all of them were paid in batches, on the same given day. As a matter of law they were thus made in the ordinary course.

The United States Supreme Court has stated: "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 129 S.Ct. at 1950. On the face of the Amended Complaint, at least 2089 of the alleged Transfers are exempt from avoidance as ordinary course transfers. Accordingly, no *plausible* claim for relief can be alleged for at least those transfers. Leave to amend should denied, or at the very least, this action should be dismissed as to those transfers.

---

[14] *See also In re Tennessee Chemical Co.*, 112 F.3d 234, 237 (6th Cir. 1997) (two payments made sixteen and seventeen days late were made within ordinary course where debtor "had a pattern of paying several invoices [at once]"); *In re Elrod Holdings Corp.*, 426 B.R. 106, 112 (Bankr. D. Del. 2010) (payments were within ordinary course where they were made according to a payment method between the parties where "Debtors consistently and regularly . . . paid multiple invoices [at the same time]"); *In re J. Allan Steel Co.*, 321 B.R. 764, 772 (Bankr. W.D. Pa. 2005) (holding that allegedly preferential payments were ordinary course, which comprised of payment of multiple invoices at once, because this practice was "common" and thus not a departure from the ordinary course between the parties).

VI.    GRANTING LEAVE TO FILE THE AMENDED COMPLAINTS WILL
       PREJUDICE METHODE

As set forth in the Glandon Decl., Methode acted to its detriment in reliance upon its

presumption that it faced no further preference liability in the above-captioned bankruptcy

proceeding.

Specifically, had Methode been aware of this action, it would not have been stripped of

its bargaining power and entered into the 2008 supply agreement with Delphi at least on the

terms that it did, and it would have avoided the substantial damage to its business.  (Glandon

Decl. ¶¶ 19-35).  If Methode had been aware of the Preference Action when Delphi filed it in

2007, Methode would not have entered into the 2008 Agreement, and in light of Methode's

exclusive supplier status and Delphi's need to obtain the parts, Methode would have been in the

position to seek a release from Delphi of any preference liability in exchange for continuing to

do business with Delphi, which would have wholly nullified the "impairment" claim that is the

subject of the Blue Angel Action.  (Glandon Decl. ¶ 41).  Further, Methode's reliance upon

Delphi's assurances to continue doing business with it and the parties' postpetition negotiations

over pricing, (see Glandon Decl. ¶¶ 13-15), during which Delphi never mentioned the Preference

Suit, justifiably led Methode to believe that it was not going to be sued for the recovery of

preferential transfers.  (Glandon Decl. ¶ 42).  If Methode had any indication that it would be the

subject of the Preference Action, Methode would never have agreed to the repurchase obligations

contained in the Transfer Agreement.  (Glandon Decl. ¶ 42).  If the Preference Action was

disclosed in September 2007, at a time when the plan of reorganization was expected to yield

100 cents on the dollar for unsecured creditors' claims, Methode would have had the ability to

purchase back and sell its Proofs of Claim at a high price and without the type of repurchase

obligations contained in the Transfer Agreement.  Methode would not have incurred the

substantial legal fees that it now faces in connection with the Blue Angel Action had Delphi not concealed the filing of the Preference Action until 2010.    (Glandon Decl. ¶ 43).

The Reorganized Debtors argue that the "mere act of *amending* the Original Complaints will not prejudice the Defendants."  (Motion, ¶ 33).  They suggest: "this Court can still consider [Methode's prejudice] after granting the Reorganized Debtors leave to amend."  (Motion, p. 14).

The Reorganized Debtors' miss the point.  The prejudice courts rely upon to deny leave to amend does not originate from the mere act of amending the Original Complaints.  *See Zahra v. Town of Southold*, 48 F.3d 674, 686 (2d Cir. 1995) (two-and-half year delay between commencement of action and motion to amend constituted prejudice warranting denial of leave). Taken to the extreme, no prejudice would then ever warrant denying leave to amend a complaint because the mere act of amending a complaint will never be sufficient.

Rather, the prejudice stems from the three year delay between the expiration of the statute of limitations and the time the motion was made.  *Zahra,* 48 F.3d at 686 (2d Cir. 1995).  The prejudice also stems from the amount of the alleged Transfers in the Amended Complaint as well.  The very size of the amount demanded in the Amended Complaint skews former forecasts, estimates, projections and budgeting for the company.  This is compounded by its loss of bargaining power and Business Damage resulting from entering the 2008 Agreement on the terms that it did.  For these reasons, Methode should not bear the burden of proving prejudice— the burden to refute prejudice should begin with the Reorganized Debtors.

The prejudice also derives from the fact this Court—knowing these actions were pending under seal against the defendants—allowed the Reorganized Debtors to set bar dates, thus setting dates that cut off their rights and bound them to deadlines without being fairly apprised of the knowledge they had been sued.

Discovery in this case has not closed, but the significant length of the delay, the aggregate amount of the alleged Transfers and intervening detrimental reliance by Methode, as set forth in the Glandon Decl., together results in material prejudice that warrants denying motion for leave to file the Amended Complaint.

## VII.    INCORPORATION OF OTHER DEFENDANTS' BRIEFS

Methode hereby incorporates all of the other arguments raised by the other preference defendants in opposition to the reorganized debtors' motion for leave to file the amended complaints.

## VIII.  CONCLUSION

For the foregoing reasons, the Reorganized Debtors' motion for leave to file the

Amended Complaints should be denied.

Dated:  November 24, 2010          Shalom Jacob
New York, New York                 Zachary D. Silbersher
                                   LOCKE LORD BISSELL & LIDDELL LLP
                                   Three World Financial Center
                                   New York, New York 10281-2101
                                   Tel:  (212) 415-8600
                                   Fax: (212) 303-2754

                                   -and-

                                   /s/ Courtney Engelbrecht Barr
                                   Courtney Engelbrecht. Barr (CE 7768)
                                   LOCKE LORD BISSELL & LIDDELL LLP
                                   111 S. Wacker Dr.
                                   Chicago, IL  60606
                                   Tel: (312) 443-0700
                                   Fax: (312) 443-0336

                                   *Counsel for Methode Electronics, Inc.*