MONTGOMERY, ELSNER & PARDIECK, LLP
308 West 2nd Street
Seymour, IN 47274
Telephone: (812) 522-4109
Facsimile: (812) 522-6473
wbraman@meplegal.com

**Objection Deadline: November 24, 2010**
**Reply Deadline: January 28, 2011**
**Hearing Date: February 17, 2011**

William M. Braman
(Admitted *Pro Hac Vice*)

Attorneys for Universal Tool & Engineering Company, Inc.

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| DPH HOLDINGS CORP., *et al.*, | Case No. 05-44481 (RDD) |
| Reorganized Debtors. | (Jointly Administered) |

| | |
|---|---|
| DELPHI AUTOMOTIVE SYSTEMS, LLC, | |
| Plaintiff | |
| - v - | Adversary Proceeding No. 07-02505-rdd |
| UNIVERSAL TOOL & ENGINEERING COMPANY, INC., | |
| Defendant | |

## UNIVERSAL TOOL & ENGINEERING COMPANY, INC.'S OBJECTION TO REORGANIZED DEBTORS' MOTION FOR LEAVE TO FILE AMENDED COMPLAINTS

Defendant, Universal Tool & Engineering Company, Inc., an Indiana corporation ("Universal Tool"), hereby files its Objection to Reorganized Debtors' Motion for Leave to File Amended Complaints (the "Motion to Amend"), and in support of said Objection, states as follows:

## PRELIMINARY STATEMENT

This Court should deny the Reorganized Debtors' Motion to Amend, which asks that the Court exercise its discretion to permit Delphi Automotive Systems, LLC ("Plaintiff"), to file an Amended Complaint (as hereinafter defined) against Universal Tool to recover $757,802.92 in alleged preferential transfers. Plaintiff's Amended Complaint would not withstand a motion to dismiss, as the Amended Complaint does not adequately plead the existence of an antecedent debt or that Plaintiff was insolvent at the time of the transfers identified in the Amended Complaint. Therefore, permitting the filing of the Amended Complaint would be futile. Moreover, justice militates against amendment in this case instead of requiring it, given the undue prejudice to Universal Tool in allowing this Avoidance Action (as hereinafter defined) to proceed. For all of the foregoing reasons, as well as the reasons cited by the other preference defendants in their Motions to Dismiss the original Complaints filed by the Reorganized Debtors and in their Oppositions to the Motion to Amend, this Court should exercise its discretion to deny the Motion to Amend and spare Universal Tool the further expense of opposing claims that are unlikely ever to succeed.

## BACKGROUND

1.    Delphi Corporation and certain affiliates (the "Reorganized Debtors") filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code on October 8 and 14, 2005 (the "Petition Dates").

2.    The Reorganized Debtors filed the Preservation of Estate Claims Procedural Motion on August 6, 2007, seeking (a) leave for the Reorganized Debtors to file avoidance actions under seal, (b) an extension of time beyond the 120 day period provided for in Fed. R. Civ. P. 4(m) to serve summons and complaints, and (c) a stay of avoidance actions until service

2

of process was effected (Docket No. 8905). On August 16, 2007, the Court entered an order granting an extension of time to March 31, 2008 to serve the adversary complaints and the filing of the complaints under seal. (Docket No. 9105).

3.      The Reorganized Debtors commenced the above-captioned adversary proceeding (the "Avoidance Action") against Universal Tool, under seal, on September 28, 2007 (Adversary Proceeding Docket No. 1).

4.      The Reorganized Debtors filed the Extension of Avoidance Action Service Deadline Motion on February 28, 2008 (Docket No. 12922), seeking a second extension to May 31, 2008 to serve its sealed complaints. Such Motion was filed in the Avoidance Action, without notice to Universal Tool, on February 29, 2008 (Adversary Proceeding Docket No. 2). The Court granted the requested second extension on March 28, 2008 (Docket No. 13277).

5.      On April 10, 2008, the Reorganized Debtors filed the Supplemental Postconfirmation Extension of Avoidance Action Service Deadline Motion (Docket No. 13361), seeking a further extension of the deadline for serving the adversary complaints and summons to thirty (30) days after the substantial consummation of a plan of reorganization. Such motion was filed in the Avoidance Action, without notice to Universal Tool, on April 11, 2008 (Adversary Proceeding Docket No. 4). The Court granted the requested third extension on April 30, 2008 (Docket No. 13484).

6.      On October 2, 2009, the Reorganized Debtors filed a Supplemental Postconfirmation Extension of Avoidance Action Service Deadline Motion (Docket No. 18952), seeking a further extension of the deadline for serving the adversary complaints and summons until 180 days after substantial consummation of a plan of reorganization. The court granted the requested fourth extension on October 22, 2009 (Docket No. 18999).

7.    Universal Tool was not served with the summons and complaint (the "Complaint") relative to the Avoidance Action until on or about February 26, 2010 (Adversary Proceeding Docket No. 9), which is over four (4) years after the Petition Dates and approximately two and one-half (2 ½) years after the expiration of the applicable statute of limitations. 11 U.S.C. § 546(a).

8.    Universal Tool filed an Answer to the Complaint on March 22, 2010, denying the material allegations of the Complaint, and asserting, among other affirmative defenses, failure to assert a claim for which relief can be granted, the expiration of the actual statute of limitation, judicial estoppel and laches (Adversary Proceeding Docket No. 15).

9.    On May 13, 2010, Universal Tool filed its Joinder to Motions (i) to Vacate Prior Orders Establishing Procedures for Certain Adversary Proceedings, Including Those Commenced by Debtors under 11 U.S.C. §§ 541, 544, 545, 547, 548 and 549, and Extending the Time to Serve Process for Such Adversary Proceedings, and (ii) Dismissing the Adversary Proceeding with Prejudice, and (iii) in the Alternative, Dismissing the Adversary Proceeding on the Grounds of Judicial Estoppel (Docket No. 20058; Adversary Proceeding Docket No. 27) and on July 2, 2010, Universal Tool filed its Joinder to Certain Replies in Support of Motions (i) to Vacate Prior Orders Establishing Procedures for Certain Adversary Proceedings, Including Those Commenced by Debtors under 11 U.S.C. §§ 541, 544, 545, 547, 548 and 549, and Extending the Time to Serve Process for Such Adversary Proceedings, and (ii) Dismissing the Adversary Proceeding with Prejudice, and (iii) in the Alternative, Dismissing the Adversary Proceeding on the Grounds of Judicial Estoppel (Docket No. 20316).

10.    On September 7, 2010, this Court issued its Order Granting in Part First Wave Motions to Dismiss, in which the Court, among other things, dismissed the Avoidance Action

without prejudice because the Reorganized Debtors failed to plead sufficient facts to state a claim, and have not complied with Rule 8 of the Federal Rules of Civil Procedure, made applicable by Rule 7008 of the Federal Rules of Bankruptcy Procedure, and ordered the Reorganized Debtors to file a motion for leave to amend complaint in each adversary proceeding the Reorganized Debtors intend to pursue, by no later than September 7, 2010 (Docket No. 20579 and Adversary Proceeding Docket No. 31).

11.    On September 7, 2010, Reorganized Debtors filed the Motion to Amend (Docket No. 20575), which included a proposed First Amended Complaint to Avoid and Recover Transfers Pursuant to 11 U.S.C. §§ 547 and 550 in the Avoidance Action (the "Amended Complaint") (Adversary Proceeding Docket No. 30).  The Amended Complaint identifies Delphi Automotive Systems, LLC as the Plaintiff, instead of Reorganized Debtors, who were previously identified as Plaintiff in the Avoidance Action.  In its Amended Complaint, Plaintiff seeks to recover alleged preferential transfers from Universal Tool totaling $757,802.92.

## ARGUMENT

### THE REORGANIZED DEBTORS' MOTION TO AMEND SHOULD BE DENIED.

**I.    STANDARD FOR GRANTING LEAVE TO AMEND.**

12.    Leave to amend under Rule 15 of the Federal Rules of Civil Procedure is not granted automatically; instead "it is within the sound discretion of the court whether to grant leave to amend." *John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp.*, 22 F.3d 458, 462 (2d Cir. 1994).  "[C]onsiderations of undue delay, bad faith, and prejudice to the opposing party [are] all touchstones of a district court's discretionary authority to deny leave to amend." *Barrows v. Forest Laboratories, Inc.*, 742 F.2d 54, 58 (2d Cir. 1984).

13. Likewise, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). For example, "it is proper to deny leave to replead where there is no merit in the proposed amendments or amendment would be futile." *Hunt v. Alliance N. Am. Gov't Income Trust, Inc.*, 159 F.3d 723, 728 (2d Cir. 1998). Courts thus are justified in denying leave to amend where, as here, proposed amendments cannot withstand a motion to dismiss or fail to comply with a court's order regarding required allegations. *Ruffolo*, 987 F.2d at 131 (affirming denial of leave to amend where proposed amendment failed to allege necessary facts); *McLaughlin v. Anderson*, 962 F.2d 187, 195 (2d Cir. 1992) (affirming denial of leave to amend where proposed amendment failed to comply with court's order).

## II.   THE AMENDED COMPLAINT DOES NOT SATISFY THE RULE 8 PLEADING REQUIREMENTS.

14. Rule 8(a)(2) of the Federal Rules of Civil Procedure, made applicable by Rule 7008 of the Federal Rules for Bankruptcy Procedure, provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The United States Supreme Court has recently addressed the requirements of Rule 8(a)(2) in the cases of *Ashcraft v. Iqbal*, 129 S.Ct. 1937 (2009) and *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955 (2007).

15. In *Twombly*, the Supreme Court held that, to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Twombly, supra*, at 1955. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* The plausibility standard is not akin to a probability

requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.* Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. *Id.*

16.    In *Iqbal*, the Supreme Court noted that two working principles underlie the *Twombly* decision. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. *Iqbal, supra,* at 1949. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.* Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.* at 1950. Where the well-pleaded facts do not permit the Court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief. *Id.*

17.    In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to an assumption of truth. *Id.* While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. *Id.*

18.    11 U.S.C. § 547(b) sets forth the elements which must be shown to establish the existence of a preferential transfer and provides that the trustee (or the debtor) may avoid any transfer of an interest of the debtor in property:

    (1)    to or for the benefit of a creditor;

    (2)    for or on account of an antecedent debt owed by the debtor before such transfer was made;

    (3)    made while the debtor was insolvent;

    (4)    made – (A) on or within 90 days before the date of the filing of the petition; or (B) between ninety days and one year before the date

of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5)    that enables such creditor to receive more than such creditor would receive if – (A) the case were a case under chapter 7 of this title; (B) the transfer had not been made; and (C) the creditor received payment of the debt.

*11 U.S.C. § 547(b).*

19.    Plaintiff's Amended Complaint in this Avoidance Action does not satisfy the *Iqbal* and *Twombly* pleading standards enunciated by the United States Supreme Court. As set forth below, the Amended Complaint does not contain sufficient factual allegations to support the existence of antecedent debt or that Plaintiff was insolvent at the time that the alleged preferential transfers were made. Since Plaintiff has not adequately pled at least two of the five elements necessary to establish the existence of preferential transfers, the Reorganized Debtors' Motion to Amend should be denied.

A.    ANTECEDENT DEBT

20.    The Bankruptcy Code does not define the term "antecedent debt." The Bankruptcy Appellate Panel for the Second Circuit has opined, however, that:

> The case law is clear that for purposes of Section 547(b)(2) "an antecedent debt" is a pre-existing debt that was incurred when the debtor previously obtained a property interest in the consideration provided by the creditor that gave rise to the debt. The consideration may have been a loan or the furnishing of goods or services, but when the debtor obtained the loan, goods or services, the creditor had a claim, matured or unmatured, that it could then assert against the debtor's bankruptcy estate if payment was not made at the time a petition was filed. At that point the debt was "antecedent" for purposes of Section 547(b)(2).

*In re Bennett Funding* Group, 220 B.R. 739, 742 (Bankr. 2d Cir. 1998). An antecedent debt generally arises when the debtor "***obtain[s]***" the goods or services for which it contracted. *Id.* (emphasis added).

21.    The allegations in the Amended Complaint regarding antecedent debt can be found at ¶ 22, which provides:

> Plaintiff made each Transfer listed on Exhibit 1 for, or on account of, an antecedent debt owed to Defendant as of the date on which each Transfer was made. The documents evidencing the antecedent debt include the purchase orders and/or invoices/bills of lading identified in Exhibit 1, which purchaser orders and/or invoices/bills of lading include evidence of the amount of the antecedent debt and the approximate dates the subject services contemplated by the Agreements were ordered by Plaintiff pursuant to the Agreements and/or were provided by Defendant.

22.    The allegation in ¶ 22 of the Amended Complaint concerning antecedent debt is clearly a legal conclusion. As the Supreme Court stated in *Iqbal*, threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, are not sufficient to withstand a motion to dismiss. *Iqbal, supra*, at 1949. Therefore, in the absence of factual allegations to support this legal conclusion, the Court should disregard the allegations in ¶ 22 of the Amended Complaint.

23.    None of the other allegations in the Amended Complaint offers factual support for Plaintiff's legal conclusion that the Transfers were made for or on account of antecedent debt. While Plaintiff makes reference to Agreements, purchase orders, invoices and/or bills of lading that supposedly evidence the antecedent debt (*see* ¶¶ 13 and 22 of the Amended Complaint), Plaintiff does not attach copies of these documents to the Amended Complaint or even recite their essential terms.

24.    There are absolutely no factual allegations made in the Amended Complaint to identify any action by Universal Tool, such as the delivery of goods, that would give rise to the existence of a debt under an Agreement or purchase order. ¶ 15 of the Amended Complaint mentions that Universal Tool was "required to ship certain goods" to Plaintiff, and ¶ 18 of the

Amended Complaint mentions "services previously rendered", but does not specify the delivery of goods by Universal Tool or the receipt of goods by Plaintiff. As discussed above, the case law is clear that an antecedent debt does not arise until Plaintiff actually "obtained" the goods or services for which it contracted, and there is no such allegation here. *Bennett, supra* at 742.

25.    Plaintiff also fails to plead facts establishing that the alleged debts in question were actually "antecedent." Exhibit 1 to the Amended Complaint does not state when any alleged debt arose. Therefore, there is no basis, other than Plaintiff's conclusory assertions, for Plaintiff to claim the existence of any "antecedent" debt as required to state a claim under Section 547(b)(2) of the Bankruptcy Code.

26.    Alternatively, there can be no doubt that Plaintiff has not provided the Court or Universal Tool with sufficient facts to raise a plausible claim of the existence of antecedent debt. Plaintiff has done no more than raised the possibility that antecedent debt existed, but its allegations do not rise to the level of plausibility. According to *Twombly*, the mere possibility of a claim is not sufficient to overcome a motion to dismiss. *Twombly, supra*, at 1955.

B.    INSOLVENCY

27.    In the Amended Complaint, Plaintiff makes the following allegation regarding its insolvency at the time of the Transfers: "Pursuant to Bankruptcy Code section 547(f), for purposes of this Adversary Proceeding, Plaintiff is presumed to have been, and was in fact, insolvent at the time the Transfers were made." *Amended Complaint*, ¶ 23.

28.    Plaintiff makes the conclusory allegation that it was insolvent at the time of the Transfers, without offering any factual allegations that support Plaintiff's claim of insolvency. This is exactly the "[t]hreadbare recital[] of the elements of a cause of action supported by mere conclusory statements," that the Supreme Court stated "does not suffice." *Iqbal, supra,* at 1949.

Plaintiff's claim of insolvency is a legal conclusion which should be disregarded by the Court in the absence of factual allegations to support the conclusion. *Id.*

29.    There are absolutely no factual allegations concerning Plaintiff's insolvency in the Amended Complaint.  This is because Plaintiff could offer no factual allegations to support a claim of insolvency.   The Schedule of Assets and Liabilities filed by Plaintiff in these proceedings on April 18, 2006 establishes that Plaintiff was not insolvent, as of the Petition Date, as Plaintiff's assets exceeded liabilities by approximately $2.6 billion (assets of $8,133,427,809, compared to liabilities of $5,526,447,015).  *See* Notice of Amendments of Schedules of Assets and Liability, dated April 18, 2006 (Case No. 05-44641, Docket No. 10).

30.    Consistent with these facts, as late as February 2008, more than two years into the bankruptcy, the Reorganized Debtors were still proposing a 100 cent plan to their creditors.

31.    Plaintiff's schedules showing a net worth of approximately $2.6 billion as of the Petition Dates conclusively rebut any presumption of Plaintiff's insolvency during the preference period.  *See, e.g., In re Roblin Industries, Inc.*, 78 F.3d 30, 34-35 (2d Cir. 1996) (schedules showing solvency rebutted presumption so that trustee bore burden of coming forward to prove insolvency); *Akers v. Koubourlis*, 869 F.2d 1319, 1322 (9th Cir. 1989) (debtors' schedules indicating greater assets than debts rebutted presumption); *IMF Sales Associates, Inc. v. Racal-Vadic Information Systems, Inc.*, 94 B.R. 223, 225 n.3 (Bankr. D. Mass 1988) ("Racal has rebutted the [section 547(f) presumption] by offering the schedules which show the debtor was solvent."); *Fokkena v. Winston, Reuber, Byrne, P.C.*, 189 B.R. 744, 747 (Bankr. N.D. Iowa 1995) ("Debtor's schedules filed in his chapter 11 case are sufficient to support a finding of solvency at the time of the transfers.  The presumption was rebutted.").

32.    Plaintiff has failed to adequately plead at least two (2) of the five (5) necessary elements set forth at 11 U.S.C. 547(b) to establish the existence of preferential transfers. Therefore, the Amended Complaint could not withstand a motion to dismiss and permitting the Amended Complaint to be filed would be futile.  Reorganized Debtors' Motion to Amend should be denied.

III.    **PERMITTING PLAINTIFF TO FILE THE AMENDED COMPLAINT WILL PREJUDICE UNIVERSAL TOOL.**

33.    In recognition of the natural prejudice resulting from a party's delay in prosecuting an action, including by delaying service of the complaint, the Second Circuit recognizes that "prejudice to defendants resulting from unreasonable delay may be presumed . . . [and] is particularly appropriate where, as here, the plaintiff's delay was prolonged." *Shannon v. GE*, 186 F.3d 186 (2d Cir. 1999) (internal citations and quotations omitted).

34.    In addition, where, as here, a plaintiff files its complaint immediately prior to the running of the statute of limitations and then fails to serve, prejudice to defendants is magnified:

> Once the statute [of limitations] has run, a potential defendant who has not been served is entitled to expect that he will no longer have to defend against the claim. If service can be delayed indefinitely once the complaint is filed within the statutory period, these expectations are defeated and the statute of limitations no longer protects defendants from stale claims.

*Anderson*, 542 F.2d at 525; *see also Zapata v. New York,* 502 F.3d 192, 198 (2d Cir. 2007) ("It is obvious that any defendant would be harmed by a generous extension of the service period beyond the limitations period for the action, especially if the defendant had no actual notice of the existence of the complaint until the service period had expired. . .").

35.    Leaving aside the Second Circuit's presumption of prejudice, Universal Tool has presented evidence of actual prejudice.  As established by the Affidavit of Jane A. Grummann,

President of Universal Tool, attached hereto as Exhibit A (the "Grummann Affidavit"), Universal Tool has been prejudiced as a result of not being served with the original Complaint in this Avoidance Action within the two (2) year statute of limitations, because between September 28, 2007 (when the Complaint was filed under seal) and February 26, 2010 (when Universal Tool was served with the Complaint): (a) Universal Tool ceased all manufacturing operations and now exists only as the owner of certain commercial real estate located in Marion County, Indiana, (b) Universal Tool terminated all employees, except Jane Grummann, including employees with substantial knowledge of Universal Tool's business relationship with Reorganized Debtors, (c) Universal Tool has purged some of its business records and moved other business records, and it is likely that records pertinent to Universal Tool's business relationship with Reorganized Debtors and the alleged preferential transfers at issue in this Avoidance Action have been lost or destroyed, and (d) Because Universal Tool was not aware of the existence of this action until February 26, 2010, Universal Tool did not, and had no reason to, establish a reserve to cover the costs of litigation of this Avoidance Action or to cover any amounts required to be paid should this Avoidance Action be decided against Universal Tool. *Grummann Affidavit*, ¶¶ 4-7.

36.    Having no notice that it had been sued or that the time for service of the secret Complaint had been extended multiple times, Universal Tool ceased operations and terminated employees who had worked with Reorganized Debtors without taking any steps to organize or preserve information. *Id.*, ¶ 8.

37.    In addition, Universal Tool did not hold exit interviews with departing employees who were knowledgeable about Universal Tool's business relationship with Reorganized Debtors or make arrangements to keep in touch with them. *Id.*, ¶ 9.

38.    If Universal Tool had known that the Reorganized Debtors were suing Universal Tool (despite the passage of the statute of limitations), it would have taken special steps to organize and preserve its records with respect to Reorganized Debtors, and would have held exit interviews with terminated employees, who were knowledgeable about Universal Tool's business relationship with Reorganized Debtors. *Id.*, ¶ 10.

39.    Universal Tool has been unduly prejudiced and will be at a severe disadvantage in its ability to defend this Avoidance Action by Reorganized Debtors' delay in serving the Complaint.

## IV. THE MOTION TO AMEND SHOULD BE DENIED FOR ALL OF THE REASONS SET FORTH IN THE PREFERENCE DEFENDANTS' ORIGINAL MOTIONS TO DISMISS THE ADVERSARY PROCEEDINGS.

40.    The Reorganized Debtors' Motion to Amend should also be denied for all of the reasons set forth by the preference defendants in their respective Motions to Vacate Prior Orders Establishing Procedures for Certain Adversary Proceedings and Extending the Time to Serve Process for Such Adversary Proceedings, Motions to Dismiss Adversary Proceedings and the Joinders thereto (all of which are incorporated herein), including, but not limited to, the following:

    (a)    enforcement of the Extension Orders against Universal Tool and the other preference defendants violate their due process rights;

    (b)    cause did not exist to extend the time for service of the Complaint;

    (c)    the Complaint was improperly filed under seal pursuant to 11 U.S.C. 107;

    (d)    the Complaint and Amended Complaint against Universal Tool are barred by the statute of limitations at 11 U.S.C. § 546(a); and

    (e)    the Complaint and Amended Complaint are barred by laches, judicial estoppel and/or res judicata.

## V.   PLAINTIFF'S CLAIM FOR ATTORNEYS FEES SHOULD BE DISMISSED

41.   Even if the Court grants the Reorganized Debtors leave to amend the Complaints in their avoidance actions, the Court should dismiss the Plaintiff's request for attorneys' fees in its Amended Complaint.   Reorganized Debtors and Plaintiff have cited no authority supporting an award of attorneys' fees to a prevailing party in these avoidance actions.   There is no authority in the Bankruptcy Code, the Bankruptcy Rules or at common law which would permit the award of attorneys' fees in this Avoidance Action.   Therefore, Plaintiff's request for attorneys' fees should be dismissed.

## VI.   INCORPORATION OF OTHER DEFENDANTS' BRIEFS

Universal Tool incorporates all of the other arguments raised by the other preference defendants in opposition to Reorganized Debtors' Motion to Amend.

## VII.   MEMORANDUM OF LAW

The legal points and authorities upon which this Objection relies are incorporated herein. Universal Tool, therefore, respectfully requests that the requirements of filing a separate memorandum of law under Local Rule 9013-2(b) be deemed satisfied.

## VIII.   CONCLUSION

For all of the foregoing reasons, the Reorganized Debtors' Motion to Amend should be denied, and this Avoidance Action should be dismissed with prejudice.

Respectfully submitted,

___/s/  William M. Braman_____

William M. Braman
Montgomery, Elsner & Pardieck, LLP
308 West 2nd Street
Seymour, IN 47274
(812) 522-4109

Attorney for Universal Tool & Engineering  Company, Inc.