**Hearing Date and Time:  February 17, 2011 at 10:00 a.m.**
**Reply Deadline:  January 28, 2011**

Jennifer L. Maffett
**THOMPSON HINE LLP**
2000 Courthouse Plaza, N.E.
Dayton, Ohio 45402
(937) 443-6804
(937) 443-6635 (fax)
jennifer.maffett@thompsonhine.com
*Counsel for Rieck Group, LLC nka*
*Mechanical Construction Managers, LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------x
: 
In re:                                                           :  Chapter 11
                                                                     :  Case No. 05-44481 [RDD]
DELPHI CORPORATION, *et al.*            :  Jointly Administered
                                                                     :
----------------------------------------------------------x
                                                                     :
DELPHI CORPORATION, *et al.*            :  Adv. Pro. No. 07-02750 [RDD]
                                                                     :
    Debtors,                                                  :
                                                                     :
        - against -                                          :
                                                                     :
RIECK GROUP, LLC                            :
                                                                     :
    Defendant.                                              :
                                                                     :
----------------------------------------------------------x

**OBJECTION OF RIECK GROUP, LLC nka MECHANICAL CONSTRUCTION**
**MANAGERS, LLC TO REORGANIZED DEBTORS' MOTION FOR LEAVE TO FILE**
**AMENDED COMPLAINTS**

Rieck Group, LLC nka Mechanical Construction Managers, LLC ("Rieck Group")
hereby objects to the Reorganized Debtors' Motion (A.P. Doc. No. 29, the "Motion for Leave")[1]
for Leave to File Amended Complaints pursuant to Fed. R. Civ. P. 15, as made applicable by
Fed. R. Bankr. P. 7015 ("Rule 15") and requests that this Court exercise its discretion to deny
leave to amend the Complaint filed herein (A.P. Doc. No. 7, Ex. 1, the "Complaint") on the
grounds that the proposed amendment would be futile, prejudicial to Rieck Group because of the
undue delay and contrary to justice.  The Affidavit of Michael Stemen is filed in support hereof.[2]

## I.    FACTS AND BACKGROUND

### A.    Bankruptcy Case History

1.    On October 8, 2005 and October 14, 2005 (the "Petition Date"), Delphi
Corporation and certain of its subsidiaries (the "Debtors") each filed voluntary petitions for relief
under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

<u>First Extension Motion</u>

2.    By motion dated August 6, 2007 (the "First Extension Motion"), the Debtors
sought authority to file more than 700 preference complaints under seal, to extend the 120-day
period to serve the summonses and complaints pursuant to Fed. R. Civ. P. 4(m) as incorporated
by Fed. R. Bankr. P. 7004(a) ("Rule 4(m)") and a blanket stay of the applicable adversary
proceedings until service of process was effected. (Doc. No. 8905 at ¶¶ 33-38).

3.    Debtors claimed the procedures requested in the First Extension Motion  were
necessary to "preserve the status quo" and to preserve "potentially valuable assets without
disrupting the plan process or existing business relationships prematurely or prejudicing the
rights of any defendants," and that they would "avoid having to force all potential defendants to

---

[1] "A.P. Doc. No. __" shall refer to documents filed in the Adversary Proceeding; "Doc. No. __" shall refer to
documents filed in the main bankruptcy case, Case No. 05-44481.
[2] References to Mr. Stemen's Affidavit shall be noted as "Aff. Stemen ¶ __."

retain counsel to defend against adversary proceedings when, in fact, most of them likely will be resolved by a reorganization plan and never pursued." (Id. at ¶¶ 33-34).  The Debtors also claimed filing the complaints under seal and extending the service deadline was necessary to keep the defendants from becoming aware of the complaint and claims asserted therein (a) to "avoid unnecessarily alarming potential defendants" and (b) because the defendants becoming aware of the claims being asserted them would harm Debtors when "Debtors have worked to preserve and repair their business relationship with many of the potential defendants during these cases and have negotiated or regained favorable credit terms with many suppliers and are continuing to do so." (Id. at ¶ 37).

4.      On August 16, 2007, this Court entered an order authorizing Debtors to file the complaints under seal and extending the deadline to serve them under Rule 4(m) to March 31, 2008.  (Doc. No. 9105, the "First Extension Order," at ¶¶ 7- 10).

### First Amended Plan

5.      At the time of the filing of the First Extension Motion, Debtors had proposed their first amended joint plan of reorganization (the "First Amended Plan"), which provided for payment in full of all unsecured claims. (Doc. No. 12359).

6.      On January 25, 2008, the Court entered an order (the "Confirmation Order") confirming the First Amended Plan.

### Second Extension Motion

7.      By motion dated February 28, 2008 (the "Second Extension Motion"), Debtors sought to extend for a second time the deadline under Rule 4(m) by which Debtors would be required to serve process by an additional two months to May 31, 2008.  (Doc. No. 12922 at ¶ 18).

8.      The stated purpose for this extension was to "enable the Debtors to fulfill their fiduciary responsibility to preserve valuable estate assets in a manner that would not unnecessarily disrupt the emergence process or the Debtors' current business relationships with potential defendants that are necessary to the Debtors' ongoing operations," and to "reduce the administrative and economic burdens of the adversary proceedings on the Debtors, the Court, the Clerk of Court, and the potential defendants."  (Id. at ¶ 21).

9.      In the Second Extension Motion, Debtors also stated that, of the 742 adversary proceedings commenced under seal, only the claims relating to Laneko Engineering Co., Wachovia Bank, National Association, Laneko Engineering Co. Inc., and their affiliates and subsidiaries (the "Laneko and Wachovia Parties") were subject to the Extension Orders.  (Id. at ¶17, n.4).

10.     On March 28, 2008, the Court entered and order further extending the time under Rule 4(m) by which Debtors must serve a defendant in the adversary proceedings with a summons and complaint to May 31, 2008.  (Doc. No. 13277, the "Second Extension Order," at ¶ 2).

<u>Third Extension Motion</u>

11.     By motion dated April 10, 2008 (the "Third Extension Motion"), Debtors sought to extend for a third time the deadline under Rule 4(m) by which Debtors would be required to serve process.  (Doc. No. 13361 at ¶ 19).

12.     The stated purpose for this extension was identical to the purpose set forth in support of the Second Extension Motion, namely, to "enable the Debtors to fulfill their fiduciary responsibility to preserve valuable estate assets in a manner that would not unnecessarily disrupt the emergence process or the Debtors' current business relationships with potential defendants

-4-

that are necessary to the Debtors' ongoing operations," and to "reduce the administrative and

economic burdens of the adversary proceedings] on the Debtors, the Court, the Clerk of Court,

and the potential defendants." (Id. at ¶ 22).

13.    The Third Extension Motion again stated of the 742 adversary proceedings

commenced under seal, **only the claims relating to the Laneko and Wachovia Parties were**

**subject to the Extension Orders.** (Id. at ¶ 18 and n.4) (emphasis added).  Debtors represented to

the Court that these were the only entities affected by the Third Extension Motion, and that

"Notice of this Motion has been provided to those entities." (Id. at ¶ 18, n.4).

14.    On April 30, 2008, the Court entered an order further extending the time under

Rule 4(m) by which Debtors must serve a defendant in the adversary proceedings with a

summons and complaint until 30 days after substantial consummation of a confirmed plan. (Doc.

No. 13484, the "Third Extension Order" at ¶ 2).

Modified Plan

15.    On July 30, 2009, the Court entered an order approving certain modifications to

the Plan (Doc. No. 18707, the "Modified Plan").  The effective date of the Modified Plan

occurred on October 6, 2009.  (Doc. No. 18958).

16.    Pursuant to the Third Extension Order, Debtors had until November 5, 2009 (30

days after substantial consummation of the Modified Plan) to serve the summons on Rieck

Group herein.

Fourth Extension Motion

17.    By motion dated October 2, 2009 (the "Fourth Extension Motion," together with

the First, Second and Third Extension Motions, the "Extension Motions"), Debtors sought to

further extend for a fourth time the deadline under Rule 4(m) by which Debtors were required to

serve process until 180 days after substantial consummation of the Modified Plan. (Doc. No. 18952 at ¶ 16).

18.     Debtors stated that this further extension was necessary in light of the fact that Debtors *now* intended to retain 177 of the adversary proceedings filed under seal (the "Adversary Proceedings"). Debtors asserted that 30 days after substantial consummation of the Modified Plan (the deadline granted to Debtors per the Third Extension Order) was not sufficient time to "assess the ongoing relationship with certain defendants and whether events since initiating the [Adversary Proceedings] have impacted the Debtors' estimated recoveries," and to determine whether to pursue such retained adversary proceedings. Debtors claimed that the requested extension "would reduce the administrative and economic burdens of the [Adversary Proceedings] on the Debtors and the potential defendants." (Id. at ¶¶ 17, 19).

19.     Contrary to the Debtors' representations in the Second and Third Extension Motions that only the claims relating to the Laneko and Wachovia Parties were subject to extensions requested therein, the Fourth Extension Motion now alleges that defendants in 177 Adversary Proceedings are subject to the Extension Orders. (Id. at ¶¶ 17 and 18).

20.     On October 22, 2009, the Court entered an order further extending the time under Rule 4(m) by which Debtors must serve a defendant in the adversary proceedings with a summons and complaint to 180 days after substantial consummation of the Modified Plan. (Doc. No. 18999, the "Fourth Extension Order", at ¶ 2) (The First, Second, Third and Fourth Extension Orders shall be collectively referred to as the "Extension Orders.").

## Filing and Service of Complaint

21.    On September 29, 2007, Debtors filed the Complaint under seal, which seeks to recover, pursuant to 11 U.S.C. §§ 547 and 550, alleged preferential transfers made to Rieck Group in the aggregate amount of $713,400.00 (A.P. Doc. No. 1).[3]

22.    Pursuant to 11 U.S.C. § 546(a), the statute of limitations for commencing avoidance actions pursuant to 11 U.S.C. § 547 expired no later than October 8, 2007.

23.    On November 24, 2009, Debtors filed the Letter Requesting Issuance of Summons. (A.P. Doc. No. 7).  A copy of the Complaint was attached thereto.  Because the Complaint was filed under seal, this was the first date that Rieck Group could possibly have become aware of the filing of the Complaint (even if it had been actively looking for it on the bankruptcy docket despite the long-ago expiration of the statute of limitations).

24.    Debtors served the summons on Rieck Group on December 17, 2009. (A.P. Doc. No. 9).

25.    Rieck Group received the summons and Complaint on December 23, 2009. (A.P. Doc. No. 9), over two years after the limitations period provided by Bankruptcy Code § 546(a) expired.  This was the first notice of the Complaint and the claims alleged therein that Rieck Group received.  Aff. Stemen. ¶ 11.

26.    Rieck Group was not served with the Complaint until December 23, 2009, after the expiration of the deadline of November 5, 2009 per the terms of the Third Extension Order. Aff. Stemen. ¶ 11.

---

[3] The Complaint itself is not available at Doc. 1 because it was filed under seal.  The Complaint itself is available at A.P. Doc. No. 7, Ex.1.

<u>Rieck Group's Notice of the Complaint, Extension Motions and Extension Orders</u>

27.    Rieck Group never filed a proof of claim in any of Debtors' bankruptcy cases.
Aff. Stemen. ¶ 7.

28.    Rieck Group never hired counsel to represent its interest in any of Debtors'
bankruptcy cases, and no notice of appearance or any other filing by counsel was made on Rieck
Group's behalf prior to its receipt of the Complaint on December 23, 2009. Aff. Stemen. ¶ 8.

29.    Thus, Rieck Group (or anyone on its behalf) was not on the ECF notice list that
Debtors used to serve the Extension Motions and the Extension Orders.

30.    According to the docket and service affidavits filed by Debtors, Debtors did not
provide any notice of any of the four Extension Motions (or Orders) to Rieck Group prior to
Rieck Group's receipt of the Complaint on or about December 23, 2009. Doc. No. 9039,
Affidavit of Service, dated August 10, 2007; Doc. No. 12970, Affidavit of Service, dated March
5, 2008; Doc. No. 13415, Affidavit of Service, dated April 16, 2008; Doc. No. 18967, Affidavit
of Service, dated October 7, 2009.

31.    Even when Debtors first asserted, in the Fourth Extension Motion, that the
Extension Motion and Orders would be applicable against Rieck Group (and the other 176
preference defendants) and not just the Laneko and Wachovia Parties, Debtors still failed to
provide notice of the motion to Rieck Group.

32.    Rieck Group did not actually receive notice of any of the Extension Motions or
Orders, by regular mail, e-mail, or ECF filing, and did not otherwise have actual notice of the
filings or the relief requested therein, at anytime prior to receiving the Complaint on or about
December 23, 2009.  Aff. Stemen ¶ 10.

### The December 2007 Disclosure Statement

33.     To the best of its knowledge, Rieck Group does not believe it ever received a

copy of the Disclosure Statement relating to the First Amended Plan (Doc. No. 11388, the

"Disclosure Statement") in December 2007 and believes that, even if it did, it would not have

read it, because it was not a creditor of Debtors and more than two years had passed since the

Petition Date.  Aff. Stemen ¶ 9.[4]

### The Motions to Dismiss and the Amended Complaint

34.     Rieck Group, and many of the other preference defendants, filed motions to

dismiss and for relief from the Extension Orders. AP Doc. No. 24.[5]

35.     At a hearing on July 22, 2010, and pursuant to a subsequent written order (A.P.

Doc. No. 30, the "Dismissal Order"), the Court found that the preference complaints failed to

adequately state claims for relief and dismissed the Complaint against Rieck Group (along with

all other preference complaints).

36.     The Court further held that Debtors could file a motion for leave to amend the

complaints, attaching as an exhibit a copy of each proposed amended complaint.

37.     Pursuant to the Dismissal Order, Debtors filed the Motion for Leave and attached

as an exhibit the proposed Amended Complaint against Rieck Group. A.P. Doc. No. 29, Ex.2

(the "Proposed Amended Complaint").

---

[4] In any event whether Rieck Group received or read the Disclosure Statement is irrelevant.  The First Amended
Plan, to which the Disclosure Statement applied, provided for payment in full to unsecured creditors, expressly
stated that there was no intention to pursue the preference actions that had been filed under seal, did not disclose that
Rieck Group had been sued and noted that one of the Extension Orders had already been entered extending Debtors
time to serve any preference complaints to February 2008.  Accordingly, even if Rieck Group did receive it and read
it, the December 2007 Disclosure Statement would not have provided notice to it that it had been sued and would
have affirmatively allowed it to believe that, if it was not sued by February 2008, there no was no longer any risk of
suit.  Further, the Disclosure Statement mailed in December 2007 could not and did provide notice of the Second,
Third and Fourth Extension Motions filed in March 2008 and after.
[5] Rieck Group incorporates the arguments it made in its Motion to Dismiss herein to the extent they are applicable.

38.     The plaintiff in the Proposed Amended Complaint is Delphi Automotive Systems, LLC ("DAS").

39.     The Proposed Amended Complaint fails to allege:

a.     that the debt the alleged preferential transfers paid was an *antecedent* debt; rather, Exhibit 1 to the proposed Amended Complaint merely lists a purchase order number without a date or any indication of when the goods or services were provided and without attaching a copy of the purchase order that would include information;

b.     that the debt the alleged preferential transfers paid was owed by Rieck Group to DAS, the named plaintiff; rather, the proposed Amended Complaint simply alleges the alleged preferential transfers were "owed to the Defendant." Proposed Amended Complaint, ¶ 22; and

c.     any facts supporting the conclusory statement that "Plaintiff is presumed to have been, and was in fact, insolvent at the time the Transfers were made." Proposed Amended Complaint, ¶ 23.

DAS was solvent

40.     Based on the Schedules and other filings by Debtors, Debtors have admitted that DAS was solvent at the time the alleged preferential transfers were made, and numerous other facts demonstrate its solvency as well.[6]

The Court's holding with respect to a *de novo* review of the Extension Motions

41.     This Court has held that preference defendants, like Rieck Group, that did not receive any notice of the Extension Motions, could challenge them *de novo*.  Specifically, this

---

[6] To avoid repetition of detailed facts, Rieck Group refers to the Affinia Group Holdings Inc.'s and Brake Parts Inc.'s Brief in Opposition to Reorganized Debtors' Motion for Leave to File Amended Complaints (Doc. No. 20841), pages 13-14 and 25-27 for the facts demonstrating DAS' insolvency as of the Petition Date and within the 90 days prior thereto.

Court concluded during the July 22, 2010 hearing on the preference defendants' motions to

dismiss that:

> [I]f [a Defendant] didn't get notice, it's wide open and I should look at it as whether, you know, it was appropriate to have entered those orders.  And they should have all their – you know, their rights to say the [Procedures Order and Extension Orders] shouldn't have been entered . . . .

> . . . . if someone really didn't get notice of the extension motions, then it would seem to me they should be able to argue to me as if the motions were being made right now . . . .

July 22, 2010 Tr., at pp. 103, 119 (copy attached as Exhibit "A").  The Court further stated that,

if a preference defendant had no notice of the Extension Motions, like Rieck Group, "it's a slam

dunk as far as looking at the order as brand new."  *Id*. at 107 (also attached as Exhibit "A").

## II.    LAW AND ARGUMENT

Debtors ask this Court to exercise its discretion and permit them to amend the Complaint

more than four years after the statute of limitations for filing the Complaint has passed.  Because

(i) the Proposed Amended Complaint fails to satisfy the insufficiencies already identified by the

Court and otherwise fails to state a claim for relief and amendment is, therefore, futile; (ii)

amendment would otherwise be futile because the claims are time-barred; and (iii) the undue

delay of Debtors in serving the Complaint and seeking amendment has substantially prejudiced

Rieck Group, this Court should decline to exercise its discretion to allow the amendment and

deny the Motion for Leave.

### A.    Rule 15 standard for permitting amendment

The decision of whether to grant leave to amend a complaint under Rule 15 as requested

by Debtors is left to the discretion of the court. *Acito v. IMCERA Group*, 47 F.3d 47, 55 (2d Cir.

N.Y. 1995).  A court may grant a party leave to amend a complaint when justice requires, but

when there is "'bad faith or undue delay on the part of the movant, undue prejudice to the

opposing party, or futility of the amendment,'" good cause exists to deny the motion for leave to

amend.  *ADL, LLC v. Tirakian,* 2010 U.S. Dist. LEXIS 104883 (E.D.N.Y. Sept. 29, 2010)

(quoting *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *Acito*, 47 F.3d

at 55 (denying motion for leave to amend where amendment would be futile because the

amendment did not cure the defects in the complaint).

An amendment is futile where the amended complaint fails to state a claim and would be

subject to a motion to dismiss. See *Acito*, 47 F.3d at 54-5. When the plaintiff fails to effectively

serve the complaint, the claims would not survive a motion to dismiss; in this circumstance,

permitting amendment would be futile, and the court should deny leave to amend. *Hall v. N.*

*Bellmore Union Free Sch. Dist.*, 2010 U.S. Dist. LEXIS 27448, 10-11 (E.D.N.Y. Mar. 18, 2010)

(denying leave to amend where amendment would be futile because complaint was not properly

served).

**B.    Permitting the amendment would be futile.**

1.    The Proposed Amended Complaint still fails to satisfy *Twombly* and
*Iqbal* and could not survive a motion to dismiss.

As this Court acknowledged in the Dismissal Order, Debtors must allege specific facts

supporting each element of a preference claim to state a viable claim for relief.  Dismissal Order;

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[A] plaintiff's obligation to provide the

'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a

formulaic recitation of the elements of a cause of action will not do.").  "Courts are not bound to

accept as true a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  Plaintiffs can no

longer just  recite the elements of 547(b) to state a valid preference claim.  *State Bank & Trust*

*Co. v. Spaeth (In re Motorwerks, Inc.)*, 371 B.R. 281, 293 (Bankr. S.D. Ohio 2007); *Angell v.*

*BER Care, Inc. (In re Caremerica, Inc.)*, 409 B.R. 737 (Bankr. E.D.N.C. 2009).  A complaint

must allege facts to support all elements of a preference, including *facts* showing that the transfer

paid an *antecedent* debt, that the antecedent debt was *owed to the plaintiff*, and that the debtor

was insolvent when the transfer was made.  11 U.S.C. § 547(b)(2) and (3); *Angell*, 409 B.R. at

751-753.

The Proposed Amended Complaint fails to satisfy the requirements necessary to state a

claim for relief because it still fails to allege *facts* supporting the following three elements

necessary for a preference claim: that the transfer paid an *antecedent* debt, that the antecedent

debt was *owed to the plaintiff*, and that the debtor was insolvent when the transfer was made.  11

U.S.C. § 547(b)(2) and (3).

First, the proposed Amended Complaint fails to allege the required element that the debt

the alleged preferential transfers paid was an *antecedent* debt. 11 U.S.C.§ 547(b)(2). A debt

generally arises when the debtor obtains the goods or services for which it contracted. *Breeden v.*

*L.I. Bridge Fund, L.L.C. (In re Bennett Funding Group)*, 220 B.R. 739, 742 (B.A.P. 2d Cir.

1998).  To be antecedent, the debt must arise prior to the payment of the transfer. *Id*.

Accordingly, to state a claim, the complaint must allege facts showing when the alleged transfer

was made and when the debt arose.  The Proposed Amended Complaint fails to do so.  Exhibit 1

to the Proposed Amended Complaint merely lists a purchase order number; it does not provide

any information to indicate when or what date the goods or services were provided or when the

obligation to pay otherwise arose, i.e., when the debt arose or was incurred.  While the Proposed

Amended Complaint does allege what date the alleged transfers were made, that fact is

meaningless without reference to the date the debt was incurred.  Without alleging facts that

show what date the alleged debt was incurred, it is impossible to infer whether any payment on

that debt was made before or after the debt was incurred.  Accordingly, there can be no reasonable inference that the debt paid was an *antecedent* debt.  The proposed Amended Complaint fails to state a claim for relief.

Second, the only plaintiff in the Proposed Amended Complaint is DAS.  The Proposed Amended Complaint fails to allege the required element that the alleged preferential transfers paid an antecedent debt that *DAS* owed to Rieck Group. 11 U.S.C. § 547(b)(2) ("for or on account of an antecedent debt *owed by the debtor*") (emphasis added).  Instead, the proposed Amended Complaint simply alleges the alleged preferential transfers paid amounts "owed to the Defendant" without stating what entity owed the amount; in other words, the Proposed Amended Complaint fails to allege that it was DAS, the named plaintiff, that owed Rieck Group. Proposed Amended Complaint, ¶ 22.  If an alleged transfer by DAS paid an amount that DAS did not owe (but perhaps some other debtor entity owed), that is not, by definition, a preference under 11 U.S.C. § 547, which is the only basis for relief set forth in the Complaint or the Proposed Amended Complaint.  Accordingly, the Proposed Amended Complaint fails to state a claim for relief.

Finally, the Proposed Amended Complaint fails to allege any facts supporting the conclusory statement that DAS "was in fact, insolvent at the time the Transfers were made."  In fact, Debtors' filings demonstrate that DAS was actually solvent at the time the alleged preferential transfers were made, and numerous other facts demonstrate its solvency as well. See fn 4, *supra*.  This failure to allege facts showing insolvency, along with the fact that DAS was actually solvent, renders the proposed amendment futile, as DAS simply cannot establish a crucial element of a preference claim.

Even with this Court's leniency providing Debtors an opportunity to attempt to correct the deficiencies the Court found in the Complaint, Debtors still have failed to submit a complaint that alleges facts supporting all of the elements of a preference claim.  Because the Proposed Amended Complaint could not survive a motion to dismiss, allowing Debtors leave to file it would be futile and the Court should, therefore, deny the Motion for Leave. *Acito*, 47 F.3d at 55; *Hall*, 2010 U.S. Dist. LEXIS 27448; *ADL,* 2010 U.S. Dist. LEXIS 104883.

        2.        The claims asserted in the Complaint and the Proposed Amended Complaint are time-barred.

It is undisputed that, without the Extension Orders extending the deadline to serve the Complaint, it was filed well-beyond the deadline to do so under Rule 4(m) and is time-barred. Because the Extension Orders are not applicable to Rieck Group, cannot be made retroactively applicable to Rieck Group and because Debtors are prohibited by judicial estoppel from asserting otherwise, the Complaint is time-barred.  Further, under a *de novo* review of the grounds for the Extension Motion, which this Court has acknowledged Rieck Group is entitled to, the Extension Motions as to Rieck Group should be denied.

        a.        *The Extension Orders are not applicable to Rieck Group, cannot be applied retroactively to Rieck Group, and the Debtors are barred by judicial estoppel from asserting otherwise.*

The opportunity to be heard and to represent one's interests is a fundamental principle of due process. *See Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652 (1950).  The Second Circuit Court of Appeals recently issued a decision holding that due process prohibits the enforcement of an order against a entity when it did not receive notice of the relief requested. *Johns-Manville Corp. v. Chubb Indemnity Ins. Co. (In re Johns-Manville Corp.)*, 2010 U.S. App. Lexis 5877, * 61-66 (2d Cir. March 22, 2010).  When an entity received no notice of

the relief requested and *there was no other party representing its interest before the court*, that

entity cannot be bound by that order. *Johns-Manville*, 2010 U.S. App. Lexis 5877, * 61-66.

Here, Rieck Group was never provided notice of any of four Extension Motions, and

there was no party representing its interest at any point in time.  Debtors' failure to serve the

Fourth Extension Motion on Rieck Group is particularly alarming because, at that time, they

knew they intended to pursue at least some of the defendants and that the relief requested therein

would actually affect and apply to at least some of defendants (as it turns out, 177 of them).  This

failure to provide Rieck Group, or any other party representing its interests, notice of the

Extension Motions renders the Extension Orders unenforceable against it. *Johns-Manville*, 2010

U.S. App. Lexis 5877.  Accordingly, Rieck Group is not bound by the Extension Orders.

Further, Rieck Group is estopped from asserting that the Extension Orders are applicable

to Rieck Group based on their prior representations to this Court to the contrary.  "'Where a party

assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he

may not thereafter, simply because his interests have changed, assume a contrary position,

especially if it be to the prejudice of the party who has acquiesced in the position formerly taken

by him.'" *In re Galerie Des Monnaies, Ltd.*, 55 B.R. 253, 260 (Bankr. S.D.N.Y. 1985) quoting

*Davis v. Wakelee*, 156 U.S. 680, 689, 39 L. Ed. 578, 15 S. Ct. 555 (1895).  "This rule, known as

judicial estoppel, 'generally prevents a party from prevailing in one phase of a case on an

argument and then relying on a contradictory argument to prevail in another phase.'" *Galerie Des*

*Monnaies, Ltd.*, 55 B.R. at 260 quoting *New Hampshire v. Maine*, 532 U.S. 742, 749 (U.S.

2001).  "In this circuit, a litigant invoking judicial estoppel must show that (1) the party against

whom estoppel is asserted took an inconsistent position in a prior proceeding, and (2) the first

tribunal adopted the inconsistent position in some manner, such as by rendering a favorable

-16-

judgment." *In re Venture Mortg. Fund, L.P.*, 245 B.R. 460, 472 (Bankr. S.D.N.Y. 2000).  "The

doctrine does not depend upon prejudice to the party invoking it." *Galerie Des Monnaies, Ltd.*,

55 B.R. 253 at 260.

Here, Debtors are barred by judicial estoppel from asserting that the Extension Orders are

applicable to Rieck Group.  In the Second and Third Extension Motions, Debtors expressly

represent to the Court that only the Laneko and Wachovia Parties would be subject to the

Extension Orders.  Even after the First Amended Plan had failed and Debtors knew unsecured

creditors would not be paid in full, they continued to represent in the Third Extension Motion

that the Extension Orders would only be applicable to those specific parties and that notice of the

motion had been provided to those parties.  Certainly the Court relied on that representation –

that all parties that would be subject to the relief requested had been served with notice – in

granting the Third Extension Motion.

Now, the Debtors are attempting to take the completely opposite position – that the

Extension Orders apply to more parties, including Rieck Group (which implicitly makes their

representation to the Court that all parties subject to the relief requested were served with notice

false).  This switcheroo is precisely what is prohibited by judicial estoppel.  Debtors' conflicting

prior position is clear, and the Court necessarily relied on those representations in granting the

Extension Motions.  Further, even though prejudice is not required for the application of judicial

estoppel, Rieck Group was prejudiced by the flip-flopping positions because Debtors' prior "flip"

position prohibited Rieck Group from having notice of, and an opportunity to contest, the

Extension Motions, which under Debtors' new "flop" position now apply to Rieck Group.

Without the relief requested in any one of Extension Motions, there is no question the Complaint

was not served in accordance with Rule 4(m), and the Complaint must be dismissed.  Because

judicial estoppel applies to prohibit application of the Extension Orders to Rieck Group now, and

because the Extension Orders are otherwise not applicable to Rieck Group, the proposed

amended to the Complaint is futile because the claims are time-barred.

> b.    *Under a de novo review of the Extension Motions, the Court
> should deny the Extension Motions as to Rieck Group.*[7]

Even if the Extension Orders could be applied retroactively to Rieck Group (which they

cannot), this Court has already found that it must at least undertake a  *de novo* review of the

Extension Motions as they apply to the preference defendants that did not receive notice of those

motions. July 22, 2010 Tr., at pp. 103, 107 and 119.  It is undisputed that Debtors did not serve

Rieck Group with notice, and that Rieck Group did not otherwise have notice (actual, ECF, or

otherwise) of the Extension Motions.

Because of Debtors' decision not to provide notice of the Extension Motions to the parties

they now seek to apply them against (which was a necessary element of their scheme to keep the

preference defendants in the dark for their own business reasons), the only party the Court heard

from on the merits of the Extension Motions at the time they were was filed was Debtors.

Because Debtors represented to the Court that all parties that the Extension Motions would be

applicable to were served with notice, the lack of objections should not have been, and

apparently was not, any cause for concern or consideration by the Court.  It was Debtors' actions

that precluded the Court from hearing, until now, the multiple reasons why the Extension

Motions are improper and should not be granted, particularly as to Rieck Group; Debtors have

nothing to blame for the consequences of a *de novo* review of the Extension Motions but their

---

[7] Alternatively, the Court can revoke the Extension Orders as to Rieck Group or any other preference defendant if it
subsequently determines that good cause for the extension was not shown. *McCrae v. KLLM Inc.*, 89 Fed. Appx.
361, 363 (3d Cir. 2004).  This would be particularly appropriate here, where it was Debtors' intentional failure to
serve Rieck Group the Extension Motions, and their representations to the Court that all parties affected by the relief
requested had been served, that resulted in no objections being filed to the Extension Motions prohibiting the Court
from considering issues that otherwise may have been raised at that time.

own decisions.  Now that the Court has been made aware of the misrepresentations and has

concluded that a *de novo* review of the Extension Motions is appropriate, it is clear that the

Extension Motions are improper and should be denied as to Rieck Group.

Each of the Extension Motions seek authority to extend the deadline to serve the

preference complaints under Rule 4(m).  Good cause for extending the service deadline under

Rule 4(m) is "generally found only in exceptional circumstances where the Debtor's failure to

serve process in a timely manner was the result of circumstances beyond its control." *Nat'l*

*Union Fire Ins. Co. v. Sun*, 1994 U.S. Dist. LEXIS 11934 *8 (S.D.N.Y. Aug. 25, 1994).

Examples of good cause include a failure of service where the defendant is actively avoiding

service or gives the false impression that service has been perfected by his bad faith participation

in settlement discussions.  *See, e.g., United States v. Ayer*, 857 F.2d 881, 886 (1st Cir. 1988).  In

short, a basis exists for extending the time to serve a complaint, despite the delay in notice of

claims to the defendant as required by due process,  when, after due diligence and effort, the

plaintiff is still unable to timely effect service.

These decisions demonstrate that the purpose of an extension under Rule 4(m) is to

facilitate service, not to delay it for the purpose of keeping the defendant unaware of the pending

claims against it.  Rule 4(m) is not a sword to be used by plaintiffs to keep defendants in the dark

to gain a tactical negotiating advantage in future business dealings between the parties.

Additionally, Rule 4(m) should not be used to provide additional time for the plaintiff to

decide whether to proceed with the claim or not or to proceed at a time better-suited to the

plaintiff's workload or business strategy.  *See Fimbres v. United States*, 833 F.2d 138, 139 (9th

Cir. 1987) (Plaintiff's claim that it lacked the financial resources to prosecute the action was an

improper basis to delay service); *Smith v. Pennsylvania Glass Sand Corp.*, 123 F.R.D. 648, 651

(N.D. Fla. 1988) ("Plaintiff cannot deliberately or even inadvertently 'wait and see' if his financial resources improve enough to allow him to diligently prosecute his case.").  The statute of limitations and Rule 4(m) are meaningless if they can just be extended to suit the plaintiff's preferred timing.

Here, not only are the purposes for which Debtors seek to extend their time to serve under Rule 4(m) both insufficient to show good cause for an extension and improper, but they are simply not applicable to Rieck Group, who had no ongoing business relationship with Debtors.  Debtors have wholly failed to show good cause for extension of their time to serve the Complaint against Rieck Group for more than 2 years after the statute of limitations expired.

First, the asserted bases for the extension are insufficient and improper.  In the First Extension Motion, Debtors requested a Rule 4(m) extension because (i) they had proposed a plan that paid creditors in full, rendering the preference claims moot in the event that the First Amended Plan was confirmed and substantially consummated and (ii) "Debtors have worked to preserve and repair their business relationship with many of the potential defendants during these cases and have negotiated or regained favorable credit terms with many suppliers and are continuing to do so," and making these customers aware that Debtors were preserving claims against would harm Debtors' business position and relationships.  (Id. at ¶ 37).

In the Second Extension Motion, Debtors offer essentially the same rationale – (i) the claims will likely be moot and (ii) making the preference defendants aware of the claims (and that they were being preserved against them) would be bad for business because that would "disrupt . . . the Debtors' current business relationships with potential defendants that are necessary to the Debtors' ongoing operations."

By the time the Third Extension Motion was filed, the "moot" argument was no longer applicable because Debtors knew a 100% plan was not going to be consummated, but they nevertheless continued to assert that rationale.  They also continued with the "bad for business" mantra included in the Second Extension Motion.

The Fourth Extension Motion now claimed that the current deadline was not sufficient time to "assess the ongoing relationship with certain defendants" to determine whether the pursuit of certain adversary proceedings could harm ongoing business relationships with certain defendants and claimed that the requested extension "would reduce the administrative and economic burdens of the [Adversary Proceedings] on the Debtors and the potential defendants." As it turned out, for the 177 preference defendants that Debtors are pursuing, including Rieck Group, the extension in no way did or could have *reduced* any economic burden on any party, rather it just delayed them and (surely from the Court and Rieck Group's perspective) significantly increased them.

Because the Complaint was not served on Rieck Group until after the deadline set by the Third Extension Order, which was dependent upon each of the prior orders, if any of the four Extension Motions are denied, the Complaint was not timely served and must be dismissed. None of the reasons proffered by Debtors in the Extension Motions are good cause for granting an extension under Rule 4(m) and, in fact, are improper and contrary to the purpose of a Rule 4(m) extension.  Even if the initial primary basis for an extension (the existence of a plan that would pay unsecured creditors in full) was valid, the subsequent reasons (and the morphing of these reasons from one basis to the next through the remaining Extensions Motions) are fatal to Debtors' position.[8]

---

[8] As other preference defendants argue, regardless of whether any one of the stated bases for an extension is valid, the multiple extensions, based on different bases, even if those bases are individually valid, is not permitted. *See*

First, the Rule 4(m) service deadline cannot, and more importantly should not, be extended to keep the defendant in the dark so the plaintiff may gain a tactical or negotiation advantage or benefit, which is precisely what Debtors schemed to do here.  As Debtors' explained to the Court, having preference defendants that were customers and vendors aware of the existence of these claims would have "disrupted" their business relationships they had worked so hard to rebuild.  While bankruptcy does provide a debtor many benefits, abusing the bankruptcy court process to keep potential defendants in the dark about claims to give the debtor a leg up in business negotiations should not be one of them.  Not only is this an unfair abuse of the bankruptcy laws, but it turns the purpose of a statute of limitations coupled with the Rule 4(m) service deadline on its head.

Further, this improper rationale *does not even apply to Rieck Group*.  Since February 2006, more than a year before any of the Extension Motions were filed, Rieck Group had completed all work for Debtors and was no longer a creditor (pre-petition or post-petition). Rieck Group has done no work for Debtors since then nor have the parties had any negotiations regarding any future work.  Accordingly, serving notice of the Complaint upon Rieck Group could have had no impact whatsoever upon Debtors' business or business relationships, and no additional time would be needed to determine whether pursuing the preference claim against Rieck Group would be bad for business.  As to Rieck Group, that asserted basis for an extension, whether improper under Rule 4(m) or not, is simply false.  As to Rieck Group, the Extension Motions, particularly the Third and Fourth Extension Motions, should not be granted.

---

*Global Crossing Estate Representative v. Alta Partners Holdings LDC (In re Global Crossing, Ltd.)*, 385 B.R. 52 (Bankr. S.D.N.Y. 2008).  Rule 4(m) does not permit a party to offer an initial basis for an extension and then later, because of factual developments, add other bases that did not exist and were not the proffered bases for the original extension.  That is precisely what happened here – the primary rationale for the first extension (that the claims would be moot because of the 100% plan) no longer existed by the Third, and at the very least the Fourth Extension Motion, and had been replaced with other bases now relevant to Debtors' business strategy.  For this reason alone, at least the Third and Fourth Motions for Extension should be denied as to Rieck Group.

Debtors do not allege that they were unable to serve Rieck Group within the allotted time under Rule 4(m), and they had no trouble serving Rieck Group when they did decide to do so in December 2009.  The fact that Debtors chose to file a large amount of preference complaints that created a substantial amount of work for Debtors and their counsel as a whole is not a basis to trample on Rieck Group's right to be timely notified of any claims against it.

There is simply no reason or basis justifying Debtors' failure to serve notice of at least the Third, and particularly the Fourth, Extension Motions to Rieck Group, and it is undisputed Rieck Group had no notice of any of the Extension Motions.  Because of the lack of notice to Rieck Group and because of Debtors' prior representations to the Court that the Extension Orders would not apply to Rieck Group, it cannot be bound by them.  In any event, under a *de novo* review of the Extension Motions, they should not be granted as to Rieck Group.  Without the extension of the Rule 4(m) deadline as provided in the Extension Orders, the Complaint was not timely filed, and any amendment would be futile. Accordingly, this Court should exercise its discretion and deny the Motion for Leave.

**C.      Debtors' undue delay in serving the Complaint and seeking amendment more than four years after the expiration of the applicable statute of limitations has caused Rieck Group substantial prejudice and permitting the amendment would be contrary to justice.**

Rieck Group has been significantly prejudiced by the undue delay in service of the Complaint.  As the Second Circuit Court of Appeals has stated, "[i]It is obvious that any defendant would be harmed by a generous extension of the service period beyond the limitations period for the action, *especially if the defendant had no actual notice of the existence of the complaint until the service period had expired*." *Zapata v. City of New York*, 502 F.3d 192, 198 (2d Cir. 2007) (emphasis added).  *PH Int'l Trading Corp. v. Nordstrom, Inc.*, 2009 U.S. Dist. LEXIS 27110 *15-16 (S.D.N.Y. Mar. 31, 2009) (holding that an unusual amount of delay in

service of a complaint ordinarily weighs in favor of a defendant, unless untimely service was beyond the plaintiff's control).  Accordingly, prejudice caused by a delay in service is presumed as a matter of law.  *Shannon v. GE*, 186 F.3d 186 (2d Cir. 1999); *Veazey v. Young's Yacht Sale & Service, Inc.*, 644 F.2d 475, 478 (5th Cir. 1981) ("Delay alone can infuse an adverse element into the proper flow of litigation: evidence deteriorates or disappears, memories fade, and witnesses die or move away.").  Plaintiffs should be aware that the "[f]ailure to use reasonable diligence in serving a summons is more fraught with possibilities of unfairness and abuse than failure to diligently prosecute an action after summons is served."  *Richardson v. United White Shipping Co.*, 38 F.R.D. 494, 496 (N.D. Cal. 1965).

In addition, where, as here, a plaintiff files its complaint immediately prior to the running of the statute of limitations and then fails to serve, prejudice to defendants is magnified:

> Once the statute [of limitations] has run, a potential defendant who has not been served is entitled to expect that he will no longer have to defend against the claim. If service can be delayed indefinitely once the complaint is filed within the statutory period, these expectations are defeated and the statute of limitations no longer protects defendants from stale claims.

*Anderson*, 542 F.2d at 525; *see also Zapata v. New York,* 502 F.3d 192, 198 (2d Cir. 2007) ("It is obvious that any defendant would be harmed by a generous extension of the service period beyond the limitations period for the action, especially if the defendant had no actual notice of the existence of the complaint until the service period had expired. . ."); *Redding v. Essex Crane Rental Corp. of Alabama*, 752 F.2d 1077, 1078 (5th Cir. 1985) (holding that it was an "obvious misuse of the judicial process" to prevent defendant from learning of the action by failing to serve).

Prejudice caused by a delay in service or prosecution - here, more than two years after the expiration of the statute of limitations - is presumed.  Additionally, the extraordinary length of

the extension here cuts against granting the requested amendment, particularly when it was

Debtors' specific intention to delay service for its own benefit to gain a business advantage over

the preference defendants, an underhanded rationale that did not even apply to Rieck Group.

Granting Debtors' leave to amend under these circumstances would be contrary to justice and,

therefore, the Court should exercise its discretion to deny the Motion for Leave.

## III.    INCORPORATION OF OTHER DEFENDANTS' ARGUMENTS

Rieck Group incorporates all of the other meritorious arguments raised by the other

preference defendants in opposition to the Motion for Leave as they would be applicable to

Rieck Group.

## IV.    CONCLUSION

Rule 15 speaks of justice.  There is nothing just about how Debtors have proceeded in

these preference cases, from their attempted use of *ex parte* motions to extend the time in which

they could keep the preference defendants in the dark, to their misrepresentations to the Court

about who Debtors would apply the Extension Orders to and who had been served with notice of

the Extension Motions.  Debtors have proceed at their own risk here and they, not the Court,

have created the morass in which they find themselves.  For all of the foregoing reasons, Rieck

Group respectfully requests that the Court exercise its discretion to deny Debtors' Motion for

Leave so that the Complaint against Rieck Group remains dismissed and grant Rieck Group such

other and further relief as this Court may deem appropriate.

**Date:  November 24, 2010**
       **Dayton, Ohio**

                           **THOMPSON HINE LLP**

                           /s/ Jennifer L. Maffett
                           Jennifer L. Maffett (OH #0075334)
                           2000 Courthouse Plaza N.E.
                           10 West Second Street
                           Dayton, Ohio 45402
                           937.443.6804
                           937.443.6635 (facsimile)
                           jennifer.maffett@thompsonhine.com
                           *Counsel for Rieck Group, LLC nka*
                           *Mechanical Construction Managers, LLC*

636761