JEFFREY A. WURST

RUSKIN MOSCOU FALTISCHEK, P.C.

East Tower, 15th Floor

1425 RXR Plaza

Uniondale, New York 11556-1425

(516) 663-6600

Attorneys for Wells Fargo Bank, N.A.

Hearing Date:  December 16, 2010 at 10:00 a.m.

Objection Date:  November 24, 2010

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X

In re:                                                                                          Chapter 11

DELPHI CORPORATION, *et al.*,                                        Case No. 05-44481 (RDD)

                                        Debtors.

------------------------------------------------------------------------X

DELPHI CORPORATION *et al.*,

                                        Plaintiff,                                   Adv. Pro. 07-02597 (RDD)

                -against-

WELLS FARGO BUSINESS AND WELLS
FARGO MINNESOTA,

                                        Defendants.

------------------------------------------------------------------------X

## OPPOSITION TO THE REORGANIZED DEBTORS' MOTION FOR LEAVE TO FILE AMENDED COMPLAINT AND MOTION OF WELLS FARGO BANK, N.A. TO <u>DISMISS THIS ADVERSARY PROCEEDING WITH PREJUDICE</u>

TO:     THE HONORABLE ROBERT D. DRAIN,
          UNITED STATES BANKRUPTCY JUDGE:

          Wells Fargo Bank, N.A., the defendant in the above-captioned adversary proceeding (the

"Adversary Proceeding")[1] by its attorney, Ruskin Moscou Faltischek P.C., as and for its

---

[1]     Pursuant to the Order of this Court, dated September 7, 2010 (the "Dismissal Order"), the initial complaint in this Adversary Proceeding (the "Complaint") was dismissed without prejudice to the Debtors' bringing a motion for leave to file an amended complaint (the "Proposed Amended Complaint").  The Debtors have filed such motion, and proposed a complaint using the original docket number, however the plaintiff in the Proposed Amended Complaint has been changed to "Delphi Automotive Systems, LLC" and the defendant has been changed to "Wells Fargo Bank, N.A."  This Opposition uses the caption from the Adversary Proceeding as originally filed, which matches the caption used in all prior motion practice regarding this Adversary Proceeding.

opposition (the "Opposition") to the Motion of Delphi Corporation, Seeking Leave to File Amended Complaints in Certain Adversary Proceedings (the "Motion to Amend") and in support of its instant cross motion to dismiss this action with prejudice, respectfully states as follows:

## PRELIMINARY STATEMENT

1.     Wells Fargo Bank, N.A. recognizes that in a case of this magnitude it is difficult to separate individual cases and examine the unique traits of each action.    However, this Adversary Proceeding is significantly distinct from most, if not all of the others, inasmuch as Wells Fargo Bank, N.A. was not a party to the bankruptcy proceeding.    It cannot be disputed that Wells Fargo Bank, N.A. had no business relationship with the Debtors following the commencement of the Debtors' bankruptcy cases.    Wells Fargo Bank, N.A. was not a creditor of the Debtors.    It did not contract with the Debtors to provide or receive any goods or services.    In fact, Wells Fargo Bank, N.A. was not served with process of any of the proceedings in the Debtors' Chapter 11 cases and was not named on any certificate of service identifying the parties served with notice of process of the Service Extension Orders (as defined below), the Disclosure Statement, or any other papers served and filed in the Debtors' Chapter 11 cases.    In fact, the first papers presented to Wells Fargo Bank, N.A. in these bankruptcy proceedings were the Summons and Complaint in this Adversary Proceeding, as originally commenced -- and those papers named different plaintiffs and defendants from those now sought to be made parties to this proceeding.    Thus, Wells Fargo Bank, N.A. has been caught in the web of the Debtors' "one size fits all" approach to these avoidance actions.    It is submitted that justice requires that this Court deny the Motion to Amend and dismiss this action with prejudice.

2.     As previously described in Wells Fargo Bank, N.A.'s Motion for an Order Pursuant to FRBP 7012(b)(6) Dismissing Complaint to Avoid and Recover Transfers Pursuant to 11 U.S.C. §§ 547 and 550 (Adv. Pro. Docket No. 26) and in those joined motions to dismiss and

replies in support thereof (collectively the "Motions to Dismiss"), the Debtors filed the original

Complaint (and like complaints) under seal in 2007.  Through a series of four *ex parte* Service

Extension Motions and Orders over the course of approximately **two and a half years beyond**

**the expiration of the applicable statute of limitations**, the Debtors **secretly** sought Court

approval in order to extend the time in which Debtors could serve complaints.  None of the four

Service Extension Orders was served upon Wells Fargo Bank, N.A. and, as a result, Wells Fargo

Bank, N.A. was denied its opportunity to appear and oppose the entry of each of the Service

Extension Orders.

3.      The first notice Wells Fargo Bank, N.A. received in this action was when it

received a service copy of the original Complaint against "Wells Fargo Business" and "Wells

Fargo Minnesota" on March 25, 2010 - nearly **two and a half years after the applicable statute**

**of limitations had expired on October 8, 2007 and over four and a half years after the**

**alleged preferential transfers took place**.  The Debtors and their counsel were deficient in their

due diligence and their cavalier attitude unjustifiably denied Wells Fargo Bank, N.A. (as well as

the other preference defendants) of its rights, including, but not limited to its due process rights

existing under the Fifth Amendment of the United States Constitution, without demonstrating

any cause for an extension under Rule 4(m).   The Debtors and their counsel improperly filed the

original complaints under seal, failed to state a cause of action upon which relief could be

granted, improperly named the defendants, improperly named the plaintiff and served the

original complaint nearly **two and a half years after the applicable statute of limitations had**

**expired**.

4.      This Court heard arguments on the Motions to Dismiss on July 22, 2010, a which

time this Court: (a) "DISMISSED [the original Complaint] without prejudice because the

Debtors [] failed to plead sufficient facts to state a claim, and have not complied with Rule 8 of

the Federal Rules of Civil Procedure, made applicable by Rule 7008 of the Federal Rules of Bankruptcy Procedure" (*see* Dismissal Order at ¶ 4 (emphasis in original)); and (b) directed that "[b]y no later than September 7, 2010, the Reorganized Debtors [were to] file a motion for leave to amend the complaint …[which] amended complaint …shall set forth, at a minimum, the transferor, the transferee, any known subsequent transferee against whom relief is sought, the antecedent debt and which Reorganized Debtor is the plaintiff." *Id.*  Paragraph 5 of the Dismissal Order provided: "[a]ll other arguments raised by defendants in the Adversary Proceedings that were not ruled upon at the Hearing or pursuant to this Order, and all responses thereto, are preserved." *Id.* By the time that the Debtors filed their Motion to Amend on September 7, 2010 **over five years** had passed since the alleged preferential transactions.

5.        The Debtors' instant motion to amend the Complaint should be denied and this adversary proceeding should be dismissed with prejudice inasmuch as (a) due to the extraordinary delay in bringing this Adversary Proceeding, Wells Fargo Bank, N.A.'s rights have been severely prejudiced since it had not received any notice that it might need to take steps to preserve its records or to assure that it retained access to those individuals who could provide litigation information; and (b) it would be futile to grant the motion because the Proposed Amended Compliant would be dismissed on a motion to dismiss.

## STATEMENT OF FACTS

6.        On October 8, 2005 (the "Petition Date"), Delphi and certain of its subsidiaries (the "Initial Filers") each filed voluntary petitions in this Court for relief pursuant to Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").  On October 14, 2005, three additional U.S. subsidiaries of Delphi (together with the Initial Filers, the "Debtors" or "Plaintiff") filed voluntary petitions in this Court for relief under Chapter 11 of the Bankruptcy Code.

500580

7.    On August 6, 2007, some two months prior to the running of the statute of limitations in which the Debtors could commence avoidance actions and in anticipation of confirming a plan of reorganization, the Debtors filed their *Expedited Motion for Order Under 11 U.S.C. §§ 102(A), 105(a), 107, 108(a)(2), and 546(a) and Fed. R. Bankr. P. 7004, 9006(c), and 9018 (i) Authorizing Debtors to Enter into Stipulations Tolling Statute of Limitations With Respect to Certain Claims, (ii) Authorizing Procedures to Identify Causes of Action That Should be Preserved, and (iii) Establishing Procedures for Certain Adversary Proceedings Including Those Commenced under 11 U.S.C. § 541, 544, 545, 547, 548, or 553* (Docket No. 8905) (the "First Extension Motion").   On August 17, 2007, this Court entered an order granting the relief requested by the Debtors (Docket No. 9105) (the "First Extension Order") which, *inter alia*, (a) permitted the filing of adversary complaints (including the Complaint) under seal, (b) directed the Clerk of Court to delay issuing summonses unless and until the Debtors notified the Clerk of their intent to prosecute such actions, (c) stayed each such adversary proceeding unless and until Debtors served process on such defendants, and (d) extended the date by which Debtors would have to serve process - which is otherwise set by Civil Rule 4(m) as incorporated by Bankruptcy Rule 7004(m) - to March 31, 2008.   The First Extension Motion did not identify any specific defendants who would be subject to the complaints to be filed under seal.

8.    The premises and rationales upon which the Debtors based the relief sought in the First Extension Motion included:

> (a)    that "the proposed treatment of claims under [the anticipated] reorganization plan would generally provide that all claims be paid or satisfied in full through distributions of cash, common stock, or both. Accordingly, avoiding preferential transfers would provide no benefit to the Debtors' estates because any party returning such a transfer would be entitled to a claim for the same amount, to be paid in full under such a plan" (¶ 13);

(b)      the actions must be preserved "as a precautionary measure" even though "the Debtors do not intend to pursue avoidance actions in light of their anticipated reorganization (¶ 15);

(c)      the proposed procedures "are designed to permit the Debtors to preserve these claims while otherwise maintaining the status quo among all parties in interest" and the "causes of action would remain dormant and become relevant again only in the unlikely event that the Debtors do not timely emerge from chapter 11" (¶ 16); and

(d)      the need to avoid disruption of "the plan process or the Debtors' existing business relationships that are necessary to the Debtors' ongoing operations" (¶ 18).

9.      Additionally, the First Extension Order envisioned that the defendants in the actions to be covered would enter into stipulations (the "Form Stipulation") in the form annexed to such order.  Wells Fargo Bank, N.A. was never asked to enter into the Form Stipulation, nor did it ever agree or consent to an extension of time in which the Debtors could commence or serve Wells Fargo Bank, N.A. with the original Complaint in this action.  In fact, Wells Fargo Bank, N.A. had no notice of the First Extension Motion or the First Extension Order, and, thus, had no opportunity to object and be heard with respect to them, let alone enter into the Form Stipulation.

10.      On September 26, 2007, the Debtors commenced the Adversary Proceeding by filing the Complaint under seal.[2]  Since the Complaint was filed under seal, no amount of due diligence could have uncovered the existence of the Complaint until it was unsealed in March 2010.

11.      On December 10, 2007, this Court issued the *Order Approving (i) Disclosure Statement, (ii) Record Date, Voting Deadline, and Procedures for Temporary Allowance of Certain Claims, (iii) Hearing Date to Consider Confirmation of Plan, (iv) Procedures for Filing*

---

[2]  Wells Fargo Bank, N.A. had no knowledge of this event until March 25, 2010, as evidenced by the Affidavit of Melody Stallings duly sworn to on May 13, 2010 and submitted in support of Wells Fargo Bank N.A.'s prior motion to dismiss.

*Objections to Plan, (v) Solicitation Procedures for Voting on Plan, (vi) Cure Claim Procedures, (vii) Procedures for Resolving Disputes Relating to Postpetition Interest, and (viii) Reclamation Claim Procedures* (Docket No. 11389) with respect to the first proposed plan of reorganization (the "First Plan") and on January 25, 2008, the First Plan was confirmed. According to the Plaintiff's Motion to Amend, "[t]he Reorganized Debtors served the Disclosure Statement upon thousands of parties in accordance with the December 10th Order." (Motion to Amend ¶ 4).

12.    However, Wells Fargo Bank, N.A. was *not* amongst the "thousands of parties" who were "served the Disclosure Statement[.]"

13.    Following confirmation of the First Plan, on February 28, 2008, the Debtors filed the Second Extension Motion.[3] On March 28, 2008, this Court entered the order granting the relief requested by the Debtors (Docket No. 13277) (the "Second Extension Order"), which Order extended the deadline by which the Debtors were to serve the summonses and complaints in the sealed adversary proceedings until May 31, 2008. The Second Extension Motion (a) did not identify the defendants who were the subject of the sealed complaints; and (b) was not served upon Wells Fargo Bank, N.A.

14.    The First Plan failed to become effective, upon information and belief because the investors that intended to fund such plan failed to participate in a closing and fulfill their obligations thereunder. *See* Fourth Extension Motion (as defined below), at paragraph 11.

15.    On April 10, 2008, the Debtors filed the Third Extension Motion,[4] which motion sought to further extend the relief granted under the First and Second Extension Orders but, this

---

[3]    Motion Pursuant to Fed. R. Bankr. P. 7004(a) and 9006(b)(1) and Fed. R. Civ. P. 4(m) to Extend Deadline to Serve Process for Avoidance Actions Filed in Connection With Preservation of Estate Claims Procedures Order (Docket No. 12922).

[4]    Motion Pursuant to Fed. R. Bankr. P. 7004(a) and 9006(b)(1) and Fed. R. Civ. P. 4(m) to Extend Deadline to Serve Process for Avoidance Actions Filed in Connection with Preservation of Estate Claims Procedures Order (Docket No. 13361) (the "Third Extension Motion").

time, for an indefinite period.[5]  On April 30, 2008, this Court entered the order granting the relief

requested by the Debtors (Docket No. 13484) (the "Third Extension Order"), which extended the

deadline by which the Debtors were to serve the summonses and complaints in the sealed

adversary proceedings until thirty (30) days after substantial consummation of the First Plan or

any modified plan.

16.      On June 1, 2009, the Debtors filed a motion to supplement the First Plan, and

such modified plan  (the "Modified Plan", Docket No. 18707) was approved by this Court on

June 30, 2009.  The Modified Plan provided *inter alia* for a sale of substantially all of the

Debtors' assets that would result in "a potential distribution to holders of general unsecured

claims." (See paragraph 12 of the Fourth Extension Motion).   The proceeds from the proposed

sale of the Debtors' assets would be insufficient to satisfy the secured claims against the

Debtors' assets, and, thus, there was to be no cash distribution to unsecured creditors under the

Modified Plan.  The Modified Plan was substantially consummated in early October 2009 and

the treatment of creditors had diminished dramatically from the intended result under the defunct

First Plan.

17.      On October 2, 2009, the Debtors filed the Fourth Extension Motion[6] and on

October 22, 2009, this Court issued the Fourth Extension Order (collectively with the First,

Second, and Third Extension Orders, the "Service Extension Orders"), which order extended

even further the deadline to serve the summons and sealed adversary complaints until 180 days

after substantial consummation of the Modified Plan.

---

[5] The First and Second Extension Orders had been premised upon the now defunct First Plan.

[6]   Supplemental Motion Pursuant to Fed. Bankr. R. 7004(a) and 9006(b)(1) And Fed. Civ. P. 4(m) to
Extend Deadline to Serve Process for Avoidance Actions Filed in Connection with Preservations of Estate Claims
Procedures Order (Docket No. 18952).

18.    However, unlike under the First Extension Motion, the Fourth Extension Motion,

*did not* claim (i) that unsecured claims were likely to be paid in full under an anticipated plan and

that pursuit of avoidance actions would be pointless, (ii) that the actions needed to be preserved

"as a precautionary measure" in the event an anticipated plan did not in fact succeed, (iii) that the

relief would help maintain the status quo among all parties in interest, (iv) that the relief was

needed in order to avoid disruption of "the plan process or the Debtors' existing business

relationships that are necessary to the Debtors' ongoing operations."

19.    The rationale relating to the First Plan used in support of the First Extension

Motion was inapplicable to the Modified Plan which was the relevant plan at the time the Fourth

Extension Motion was brought.

20.    The premises in support of the Fourth Extension Motion included that:

(a)    the complex nature of the transactions set forth in the
Modified Plan required that significant time and resources be
devoted to effecting them (¶17);

(b)    the Modified Plan lists more causes of action than were
originally retained under the First Plan, including 177 listed
avoidance actions (including this Adversary Proceeding) (¶ 17)

(c)    the Debtors did not believe that they would have adequate
time to evaluate each retained avoidance action prior to the
expiration of the service extension afforded by the Third Extension
Order (¶ 17); and

(d)    the Debtors hoped to avoid the unnecessary cost of service
and prosecution of actions against defendants whom, given more
time, the Debtors might not need to pursue (¶ 18).

21.    Based upon this discrepancy in the justification for the Service Extension Orders

and the fact that Wells Fargo Bank, N.A. did not receive notice of any of the Service Extension

Motions, Orders or the Adversary Proceeding until service of the Complaint on March 25, 2010,

Wells Fargo Bank, N.A. joined with eighty-three (83) similarly situated preference defendants

and filed the Motions to Dismiss seeking among other things to: (i) *vacate certain prior orders of*

*the court, including the Fourth Extension Order*; and (ii) *dismiss the respective original*

*Complaints filed against them for inter alia, improperly filing the Complaints under seal; lack of*

*due process, violating the statute of limitations, failing to state a claim upon which relief could*

*be granted, having no cause for a Rule 4(m) extension and judicial estoppel.*

22.    On July 22, 2010, this Court heard argument on the Motions to Dismiss and

dismissed the original complaints without prejudice to the Debtors moving for leave to file an

amended complaint.  This Court directed the Debtors to file their motion for leave to file the

amended complaints within forty-five days and further ruled that those complaints that were not

amended would be dismissed.

23.    On September 7, 2010 the Debtors filed the instant Motion to Amend.

## ARGUMENT

### A.    Standard

24.    Federal Rule of Civil Procedure 15(a) made applicable by Bankruptcy Rule 7015

in pertinent part provides that "a party may amend its pleading only with the opposing party's

written consent or the court's leave . . . when justice so requires."

25.    Leave to amend a complaint is by no means automatic and instead is left to the

discretion of the Court.  As courts have observed, this "is not a mechanical absolute and the

circumstances and terms upon which such leave is to be 'freely given' is committed to the

informed, careful judgment and discretion of the Trial Judge as he superintends the development

of a cause toward its ultimate disposition."  *Freeman v. Continental Gin Comp.*, 381 F.2d 459

(5th Cir. 1967) (citing *Lone Star Motor Import, Inc. v. Citroen Cars Corp.*, 288 F.2d 69, 75 (5th

Cir. 1961).

26.    A district court has discretion to deny leave to amend for reasons including

"futility, bad faith, undue delay, or undue prejudice to the opposing party."  *McCarthy v. Dun &*

*Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).  The Supreme Court has stated that leave should not be freely given in the presence of any good reason for denial, such as undue delay, bad faith or dilatory motive, undue prejudice to the defendant, or futility of amendment. *Foman v. Davis,* 371 U.S. 178, 182, 83 S. Ct. 227, 9 L.Ed.2d 222 (1962).

27.     In determining whether a party should be allowed to amend its complaint, the court will examine whether there is prejudice to the nonmoving party, whether the amendment is sought in bad faith, whether the leave of court would produce an undue delay in litigation, and whether the amendment is futile. *In re Allserve Systems Corp.,* 379 B.R. 69, 73 (Bankr. D. N.J. 2007) (citing *Boileau v. Bethlehem Steel Corp.,* 730 F.2d 929, 938 (3d Cir.1984)). Further, the Second Circuit has stated that it is clear that a lack of diligence is a proper reason for refusing to permit an amendment to a complaint.  *Wheeler v. West India S.S. Co.*, 205 F.2d 354 (2d Cir. 1953).

## B.    <u>The Proposed Amended Complaint is Futile</u>

28.     The Proposed Amended Complaint is futile inasmuch it cannot withstand a motion to dismiss.  Wells Fargo Bank, N.A. was not provided with notice of any of the Service Extension Motions or Orders, a result of which was that Wells Fargo Bank, N.A. was deprived of any knowledge that it was a defendant in this Adversary Proceeding until four and half years after the commencement of the bankruptcy case and two and a half years after the applicable statute of limitations had otherwise expired on October 8, 2007.  This deprivation of Wells Fargo Bank, N.A.'s due process rights cannot survive a motion to dismiss and in the interest of justice, this Court must deny the Motion to Amend and dismiss this Adversary Proceeding with prejudice.

29.     While Fed. R. Civ. P. 15(a) states that "a party may amend the party's [complaint] … by leave of court[,]" it is well-understood that a "district court may properly deny leave when

the amendment may be futile." *Jones v. New York State Div. of Military and Naval Affairs*, 166 F.3d 45, 50 (2d Cir. 1999); *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) ("Where it appears that granting leave to amend is unlikely to be productive . . . it is not an abuse of discretion to deny leave to amend.").  As more fully explained below, the Debtors' Proposed Amended Complaint is futile and deficient as a matter of law.

30.    Allowing the Debtors to serve the Proposed Amended Complaint would be futile because it cannot withstand a motion to dismiss and fails to state a claim upon which relief could be granted.  Futility is directly intertwined with the standard for a motion to dismiss.  *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991) (stating that district judge may review a proposed amended complaint "for adequacy and need not allow its filing if it does not state a claim upon which relief can be granted." (citations omitted)); *In re LG Philipps Displays USA, Inc.,* 395 B.R. 864, 870 (Bankr. D. Del. 2008) (citing *Massarsky v. General Motors Corp.,* 706 F.2d 111, 125 (3d Cir.1983)).  A motion made pursuant to this rule challenges the legal sufficiency of a claim in order to determine whether the claim should go forward.  *In re Allserve Systems Corp.,* 379 B.R. 69, 75 (Bankr. D. N.J. 2007) (citing *Morris v. Azzi,* 866 F. Supp. 149, 152 (D. N.J. 1994)).

31.    As set forth in Wells Fargo Bank, N.A.'s Motion to Dismiss (Adv. Pro. Docket No. 26), the Debtors have failed to state a claim upon which relief can be granted and did not establish "good cause" under Fed. R. Civ. P. 4(m), made applicable by Fed. R. Bankr. P. 7004 to extend Debtors' time for service.

32.    Pursuant to Fed. R. Civ. P. 4(m) courts can only extend a plaintiff's time for service upon: (i) a showing of "good cause;" or (ii) where the court finds that a discretionary extension of service is appropriate.  *Eastern Refractories Co., Inc. v. Forty Eight Insulations, Inc.*, 187 F.R.D. 503, 505-06 (S.D.N.Y. 1999).  Under either test, it is the debtor's burden to

establish entitlement to an extension. And, where, as here, the delay in service is substantial, this burden is a heavy one to overcome. *Spinale v. United States*, 2005 WL 659150, at *3-4 (S.D.N.Y. Mar. 16, 2005), *aff'd*, 2007 WL 4115903 (S.D.N.Y. Nov. 19, 2007).

33.    Under the first test, "good cause" exists only in "exceptional circumstances where the plaintiff's failure to serve process in a timely manner was the result of circumstances beyond its control." *Eastern Refractories*, 187 F.R.D. at 505. That is not the case here. The Debtors could have easily served the Complaint at any time but, instead, made the conscious decision to seal the complaints and made no effort to serve them. In fact, Paragraph 7 of the First Extension Order expressly grants the Debtors the right "in their sole discretion" to "mak[e] a copy of a complaint or amended complaint available to [defendants]" yet the Debtors never provided Wells Fargo Bank, N.A. with a copy of the Complaint until the Service Date. Where a plaintiff fails to demonstrate good cause, "dismissal is proper even if it occurs after the expiration of the applicable statute of limitations period, and its effect is to bar the plaintiff's claim." *Frasca v. United States,* 921 F.2d 450 (2d Cir. 1990); *see also Astarita v. Urgo Butts & Co.,* 1997 WL 317028, *4-5 (S.D.N.Y. June 10, 1997).

34.    Further, good cause cannot exist where, as here, the Debtors' failure to serve the Complaint was part of an admitted strategy to obtain a tactical advantage over the defendants when renegotiating the parties' ongoing and/or future business relationships. In the First Extension Motion, the Debtors described this as fulfilling their fiduciary responsibility "to preserve valuable estate assets *in a manner that would not unnecessarily disrupt* the plan process or *the Debtors' existing business relationships with potential defendants*." First Extension Motion ¶ 18 (emphasis added). In addition, the Debtors attempted to justify this failure of service to "avoid unnecessarily alarming potential defendants" by forcing them to retain counsel

to defend against adversary proceedings when, in fact, most of them likely will be resolved by a reorganization plan and never pursued." First Extension Motion ¶¶ 34, 37.

35.     Wells Fargo Bank, N.A. has been unable to locate any caselaw where a plaintiff was authorized to extend the 120-day service period for reasons resembling those of the Debtors in this case.

36.     The conscious decision of the Debtors to seek an indefinite extension of the time to serve the complaints and to keep the complaints a secret in order to continue to obtain a tactical advantage in their negotiations with various defendants, was not "good cause." Instead, by keeping this action secret for nearly two and a half years after the statute of limitations expired, the Debtors chose a course of action that would ensure that the evils the statute of limitations were designed to prevent would actually occur. *See Nelson v. Adams USA, Inc.,* 529 U.S. 460, 465-66 (2000) (explaining that rule allowing amendment of pleadings must comport with due process of law that the United States Constitution guarantees). The Debtors must now live with the consequences of their actions and the Motion to Amend must be dismissed in its entirety, as it is futile and cannot survive a motion to dismiss.

37.     The very purpose of a statute of limitation is to prevent overly stale claims and to provide defendants with certainty that after a set period of time, they will not be have to come to court to defend time-barred claims. *McCuskey v. Central Trailer Servs., Ltd.,* 37 F.3d 1329, 1332 (8th Cir. 1994); *In re Luria Steel and Trading Corp. v. Denbro Iron & Metal Co., Inc.,* 189 B.R. 418, 424 (N.D. Ill. 1995). A statute of limitations ensures that at some ascertainable point, there will be an end to litigation. *See United States v. Gordon,* 78 F.3d 781, 787 (2d Cir. 1996). This is done to afford an accused party a fair opportunity to find and retain evidence necessary to defend itself. *See In re Gardenhire*, 220 B.R. 376 (9th Cir. 1998), *rev'd on other grounds*, 209 F.3d 1145 (9th Cir. 2000) (recognizing that the essential purpose of a statute of limitations is to

"minimize deterioration of evidence").  Here, Wells Fargo Bank, N.A.'s ability to defend itself has been substantially impaired as it will be forced to locate evidence concerning transactions that occurred not just two and a half years after the statute of limitations expired in October 2007, but over five years since the occurrence of the actual transactions referenced in the Complaint.

38.     Although "[t]he purpose of Rule 15 is to provide maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities," (*Siegel v. Converters Transp., Inc.,* 714 F.2d 213, 216 (2d Cir. 1983)), a court must be mindful not to "undermine the purpose of repose for which statutes of limitations were designed."  *Mackensworth v. S.S. American Merchant,* 28 F.3d 246, 252 (2d Cir. 1994); *see also Ainbinder v. Kelleher,* 1997 WL 420279, at *11 (S.D.N.Y. July 25, 1997) ("It is not the purpose of Rule 15(c) to allow plaintiffs a second chance at a new group of defendants after their first claim fails and the statute of limitations has run").

39.     Additionally, the cases cited by the Debtors in support of the proposition that "[t]he court should freely give leave [to amend] when justice so requires" are based on significantly different circumstances than the instant action.  Each of the cases cited by the Debtors pertained to facts where the plaintiffs *timely* filed and served their complaints within the applicable statute of limitations and then subsequently sought leave to amend.  *Hayden v. Paterson*, 594 F.2d 150, 161 n.9 (2d Cir. 2010); *In re Hydrogen, L.L.C.*, 431 B.R. 337 (Bankr. S.D.N.Y. 2010).  This action is not under any similar set of facts.

40.     Rather, here the Debtors served "Wells Fargo Business" and "Wells Fargo Minnesota" with the original Complaint on March 25, 2010; nearly two and a half years after the applicable statute of limitations had expired. The Debtors have failed to provide any caselaw, and Wells Fargo Bank, N.A. has been unable to locate any, where a plaintiff was granted leave to

amend when the defendant was served with an improperly plead complaint *after* the applicable statue of limitations expired.  The United States Supreme Court has recognized that statutes of limitations are not "simply technicalities," but rather, "fundamental to a well-ordered judicial system." *United States v. Richardson,* 889 F.2d 37, 40 (3d Cir. 1989) (*citing Board of Regents of the Univ. of the State of N.Y. v. Tomanio,* 446 U.S. 478, 487 (1980)).  Simply stated, the purposes of the statute of limitations will be eviscerated if the Motion to Amend is granted as the Debtors have failed to establish cause to extend the Debtors' time to serve the original Complaint.  *Bd. of Regents v. Tomanio*, 446 U.S. 478, 487 (1980); *U.S. v. Kubrick*, 444 U.S. 111, 117 (1979).

41.    Moreover, federal courts of appeal have concluded that trial courts may revoke a previously granted Rule 4(m) extension where such court determines that the extension was inappropriate:

> [Rule 4(m)] does not address the authority of a district court that has granted [] an extension to revoke it if it subsequently determines that good cause has not been shown. We discern no reason why a district court should not be able to do so . . . If a district court concludes that good cause had not been shown, it is within its discretion to vacate its prior extension of time for effecting service that was based upon that erroneous foundation. *McCrae v. KLLM Inc.* 89 Fed. Appx. 361, 363 (3d Cir. 2004).

42.    In *Global Crossing Estate Representative v. Alta Partners Holdings LDC (In re Global Crossing, Ltd)*, 385 B.R. 52 (Bankr. S.D.N.Y. 2008), the Court found that it was inappropriate to enforce a prior order in the case which had extended the time to serve under Rule 4(m) because such order was based upon different reasons than its predecessor service extension orders.  The same error was committed in this case because the First Extension Order is based upon categorically distinct premises from the Fourth Extension Order.

43.    In *Global Crossing*, the plaintiff Estate Representative sought and obtained successive orders extending the time to serve complaints. *Id.* at 57.  The order which extended the Estate Representative's time to serve certain unnamed and unidentified defendants beyond the

time the Estate Representative originally had to serve the original defendant, EquiServe, was ultimately overturned. *Id.* The "unnamed and unidentified defendants" asked the Court to vacate (or at least regard as ineffective for statute of limitations purposes) such order. The Court remarked that:

> As counsel for one of the Dividend Recipients pointed out, the first extension motion sought a Rule 4(m) extension for a very specific purpose--to complete service on approximately 455 complaints that could not yet be effected. It "morphed" into an undertaking for a quite different purpose, to address EquiServe's conduit defense and to "identify, locate and then serve all new defendants." *Id.* at 84-85.

44.     The Court concluded that the first Rule 4(m) order was appropriately entered for the purposes for which it was sought, but "had neither the purpose nor effect of extending the statute of limitations for claims against then-unnamed and unidentified Dividend Recipients." *Id.* at 77.

45.     The Court ruled that:

> that the purpose and effect of the first Rule 4(m) order was to address the needs that had been articulated in the first Rule 4(m) motion, all of which were variants of a common theme--difficulties in effecting service. The Court did not then have occasion to consider, and did not consider, the extent, if any, to which Rule 4(m) could be used to address different needs, such as the ones now before the Court. Addressing such different needs was not the purpose of the first Rule 4(m) order. Nor should (or does) the Court rule that it nevertheless had that effect. *Id.* at 84

46.     The Court reflected that a contrary ruling would raise serious concerns of separation of powers "because it would enable a court to subvert the legislatively declared policies of finality and repose underlying the statutes of limitations solely on the basis of a plaintiff's *ex parte* submission." *Id.* at 89, n.116.

47.     As described above, the First Extension Motion and the Fourth Extension Motion were filed in starkly different contexts and based upon categorically distinct rationales. Like

*Global Crossing*, here the rationales "morphed" and thus, this Court should revoke its previously granted Rule 4(m) extension. Further, the *sub rosa* manner in which the Debtors brought the Service Extension Motions is clearly at odds with the "public interest in openness of court proceedings" (*In re Food Management Group, LLC*, 359 B.R. 543, 553 (Bankr. S.D.N.Y. 2007)) and the Debtors' failure to provide notice to Wells Fargo Bank, N.A. was an express violation of the Fifth Amendment. The Proposed Amended Complaint is futile and will not survive a motion to dismiss. Accordingly, the Motion to Amend must be denied and this Adversary Proceeding must be dismissed with prejudice.

**C.**     **The Motion to Amend Came After Undue Delay and Severely Prejudices Wells Fargo Bank, N.A.**

48.     In the exercise of its discretion under Rule 15(a), this Court should deny the Motion to Amend on the basis of undue delay and prejudice. *See A.V. by Versace, Inc. v. Gianni Versace S.P.A.,* 87 F. Supp.2d 281, 298 (S.D.N.Y.2000) (citation omitted); *see also Chan v. Reno,* 916 F. Supp. 1289, 1302 (S.D.N.Y.1996).

49.     As described above, "At some point [in seeking to amend a complaint], the delay will become 'undue,' placing an unwarranted burden on the court, or will become 'prejudicial,' placing an unfair burden on the opposing party." Delay may become undue when a movant has had previous opportunities to amend a complaint. *See Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir.1993) (three year lapse between filing of complaint and proposed amendment was "unreasonable" delay where plaintiff had "numerous opportunities" to amend); *see also Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644, 654-55 (3d Cir.1998) (rejecting proposed second amended complaint where plaintiffs were repleading facts that could have been pled earlier).

50.     A court should deny a motion to amend where all of the facts relevant to the proposed amendment were known to the plaintiff at the time of filing the original complaint. *See*

*Reese v. Herbert,* 527 F.3d 1253, 1263-64 (11th Cir. 2008); *Reliford v. City of Tampa Hous. Auth.,* 190 Fed. Appx. 928, 928 (11th Cir. 2006) (affirming denial of leave to amend based on a finding of bad faith on the grounds that the proposed amendment was "a transparent attempt to get around the immunity problem raised by the motion to dismiss").

51.    Here, the Debtors were aware of (and had at their disposal) the information relating to the alleged preferential actions far in advance of the September 7, 2010 deadline to file the amended complaints.  The Debtors' failure to file properly pled complaints is particularly inexcusable given that the Debtors admit that the documents required to draft adequate complaints were "routine documents" and that they "retained such basic information" but **elected** not to plead fully.  Debtors' Omnibus Response ¶ 62 (Doc. No. 20225).  It is well-established that a court shall deny leave to amend when the applicable party proposes an amendment that would "replead the facts and arguments that could have been pled much earlier in the proceedings." *Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644, 654-55 (3d Cir. 1998).

52.    Further, delay in amending a complaint rises to the level of prejudicial when it "plac[es] an unfair burden on the opposing party."  *Cureton,* 252 F.3d at 273; *A. Cherney Disposal Co. v. Chi. & Suburban Refuse Disposal Corp.,* 68 F.R.D. 383, 385-86 (N.D.Ill.1975) (finding prejudice and denying amendment where the proposed amendment was requested five years after the case was filed, and required further discovery).  "Specifically, [courts] have considered whether allowing an amendment would result in additional discovery [and] cost." *Cureton,* 252 F.3d at 273 (3d Cir. 2001).

53.    Here, there is an "irrefutable presumption" of prejudice from the delay in unsealing and serving.  *United States v. Marion*, 404 U.S. 307, 322 & n.14 (1971).

54.    Granting the Motion to Amend and allowing the Debtors to file and serve the Proposed Amended Complaint would significantly prejudice Wells Fargo Bank, N.A. as it

expands the scope of discovery, further delays resolution of this case, and forces Wells Fargo Bank, N.A. to identify and locate present and former employees and factored clients (including factored clients that have also become chapter 11 debtors) to testify as to transactions that occurred **over five years ago**.

55.    Moreover, under the Supreme Court precedent in *Foman,* "a party's dilatory motive is a legitimate basis for a court's denying that party's motion to amend a pleading." *Am. Med. Assoc. v. United Healthcare Corp.,* 2006 WL 3833440, at *5 (S.D.N.Y. Dec. 29, 2006) (citing *Foman,* 371 U.S. at 182). "When it appears that leave to amend is sought in anticipation of an adverse ruling on the original claims, the court is free to deny leave to amend." *See PI, Inc. v. Quality Prods., Inc.,* 907 F. Supp. 752, 764 (S.D.N.Y. 1995). The Debtors' dilatory motives can be established due to the fact that the Debtors sought leave to amend their complaints solely based upon the arguments raised in the Motions to Dismiss.

56.    The Second Circuit has stated that "perhaps [the] most important [reason for denying a motion to amend] is the resulting prejudice to the opposing party[.]" *Richardson Greenshields Sec., Inc. v. Lau,* 825 F.2d 647, 653 n.6 (2d Cir.1987).

57.    The Debtors attempt to disparage the prejudice that Wells Fargo Bank, N.A. will suffer by claiming that the "mere act of *amending* the Original Complaints will not prejudice [Wells Fargo Bank, N.A.]" as "any alleged prejudice [Wells Fargo Bank, N.A. has] suffered in these Preference Actions relates to the filing under seal and delayed service of the Original Complaints"  Motion to Amend ¶ 33 (emphasis in original). However, the Debtors fail to consider that "[o]ne of the most important considerations in determining whether an amendment would be prejudicial is the degree to which it would delay the final disposition of the action." *Krumme v. WestPoint Stevens Inc.,* 143 F.3d 71, 88 (2d Cir.1998).

58.    If this Court were to grant the Motion to Amend, it would significantly prolong the "final disposition of [this] action" as it would require the Debtors to re-file and re-serve the amended complaints, and (once again) go through motion practice.  It is imperative that this Court consider that the subject transactions occurred **over five years ago, and the statute of limitations expired over three years ago**, key discovery has likely been lost over that time period and Wells Fargo Bank, N.A. would be at a decided disadvantage in seeking to prove the merits of its case.

**D.**    **The Proposed Amended Complaint Does Not Relate Back to the Time of the Filing of the Original Complaint as it Asserts Claims Against New Parties**

59.    Rule 15(c) provides, in pertinent part, that:

> (1)    An amendment of a pleading relates back to the date of the original pleading when
>
> (2)    the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or
>
> (3)    the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment (a) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (b) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

60.    "Rule 15(c) is the only vehicle to add a new party after the statute of limitations has run." *Korn v. Royal Caribbean Cruise Line, Inc.,* 724 F.2d 1397, 1399 (9th Cir. 1984); *In re Randall's Island Family Golf Ctrs. v. Acushnet Co.,* 2002 WL 31496229, at *2 (Bankr. S.D.N.Y. Nov. 8, 2002).  Its purpose is "to prevent parties against whom claims are made from taking unjust advantage of otherwise inconsequential pleading errors to sustain a limitations defense." *Advanced Magnetics, Inc., v. Bayfront Partners, Inc.,* 106 F.3d 11, 19 (2d Cir. 1997).

61.     The party seeking to have the claim relate back bears the burden of proof and must show the following: (1) both claims arose out of the same transaction or occurrence; (2) the new party received adequate notice of the plaintiff's claims, within the time limits specified in Fed. R. Civ. P. 4(m), and will not be prejudiced by the amendment; (3) the new party knew or should have known that but for a mistake concerning its identity, the new party would have been named in the earlier, timely pleading; and (4) the second and third factors must be satisfied within the prescribed limitations period.  *Schiavone v. Fortune,* 477 U.S. 21, 29 (1986); *Childs v. City of Phila.,* 2000 WL 567240, at *3 (E.D. Pa. May 9, 2000).

62.     Here, the Debtors fail to satisfy factors (2), (3) and (4) of the test provided by *Schiavone*.  The Debtors' failure to include "Wells Fargo Bank, N.A." was not a "mistake" under Rule 15(c) but rather a conscious action.  The rule does not allow an amendment to a complaint that adds defendants who were not named originally due to a lack of knowledge.

63.     The Debtors did not mistakenly name "Wells Fargo Business" and "Wells Fargo Minnesota" instead of Wells Fargo Bank, N.A.  Rather, upon information and belief, the Debtors failed to name Wells Fargo Bank, N.A. in the original Complaint because they believed the original defendants were entities operating under these trade names.  *See Anderson v. Allstate Ins. Co.*, 630 F.2d 677, 682 (9th Cir. 1980) (denying motion to amend where plaintiff "allege[d] no reason that [additional party] could not have been named as a defendant in the initial complaint"); *Unicure, Inc. v. Thurman*, 97 F.R.D. 1, 6 (W.D.N.Y. 1982) ("Rule 15(c) was not drafted to encourage piecemeal litigation wherein a party could pursuer one tack comforted by the knowledge that he could amend if his efforts failed." (citations omitted)).  Although the corporate umbrella of Wells Fargo Bank, N.A. may encompass other entities using Wells Fargo in their names, not all companies named "Wells Fargo" are affiliated with the bank.

64.     Further, the third and fourth factors set forth above are not satisfied as Wells Fargo Bank, N.A. could not have plausibly known that it would have been named in the earlier pleading as "Wells Fargo Bank, N.A." nor did it ever receive notice of the Service Extension Motions or the Disclosure Statement.  Finally, regarding the fourth factor, good cause did not exist in 2007 to extend the time to serve process as a matter of law, and accordingly the Proposed Amended Complaint fails to relate back to the time of filing of the original Complaint as the Original Complaint was not properly commenced within the applicable statute of limitations.

65.     Additionally, the filing of the Debtors' original Complaint, which failed to include Wells Fargo Bank, N.A. as a defendant, does not determine the timeliness of claims against Wells Fargo Bank, N.A.  *See Cornwell v. Robinson*, 23 F.3d 694, 704 (2d Cir. 1994) ("The timeliness of the original complaint does not resolve the statute-of-limitations question with respect to the individual appellants, however for the original complaint did not name them as defendants."); *see also* Fed. R. Civ. P. 15(c) (claim against a new defendant can relate back only if there was a mistaken identity); *Soto v. Brooklyn Corr. Facility*, 80 F.3d 34, 35 (2d Cir. 1996); *Tapia-Ortiz v. Doe*, 171 F.3d 150 (2d Cir. 1999).  Instead, the claims are deemed filed as of the date of filing of the amended complaint.  *Cornwell,* 23 F.3d at 704.

66.     For these reasons, in the exercise of its discretion under Rule 15(c), this Court should deny the Debtors' Motion to Amend as it is untimely and does not relate back to the time of the filing of the original Complaint since it asserts claims against new parties and violates the applicable two-year statute of limitations for avoidance actions.  In addition, this Adversary Proceeding should be dismissed with prejudice.

**E.     The Debtors were Solvent at the Time of the Subject Transactions and Therefore Fail to Satisfy the Pleading Standards Under *Iqbal* and *Twombly***

67.     Section 547 of the Code authorizes the avoidance of "any transfer of an interest of the debtor in property" if five conditions enumerated in subsection (b) are satisfied, subject to

one of seven defenses available under subsection (c).  *See Pereira v. United Jersey Bank, N.A.,*

201 B.R. 644, 656 (S.D.N.Y. 1996).  Specifically, the trustee (or a party who has stepped into the

trustee's shoes, as is the case here) may avoid any transfer of an interest of the debtor in property-

> (1)    to or for the benefit of a creditor;
>
> (2)    for or on account of an antecedent debt owed by the debtor
>         before such transfer was made;
>
> (3)    *made while the debtor was insolvent*;
>
> (4)    made-
>
>> (A)    on or within 90 days before the date of the filing of
>>        the petition; or
>>
>> (B)    between ninety days and one year before the date of
>>        the filing of the petition, if such creditor at the time
>>        of such transfer was an insider; and
>
> (5)    that enables such creditor to receive more than such
>        creditor would receive if-
>
>> (A)    the case were a case under chapter 7 of this title;
>>
>> (B)    the transfer had not been made; and
>>
>> (C)    such creditor received payment of such debt to the
>>        extent provided by the provisions of this title.  11
>>        U.S.C. § 547(b) (emphasis added).

68.    The Debtors have proffered a Proposed Amended Complaint that they contend

meets the pleading requirements of Fed. R. Civ. P. 8, made applicable by Fed. R. Bankr. P. 7008,

and argue that the Proposed Amended Complaint contains all of the elements needed to make out

a preference avoidance action under 11 U.S.C. 547(b).

69.    As enunciated in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), "the complaint

must allege enough facts with respect to each of the . . . elements of section 547(b) in order to

put Defendants on notice for the preference claims."  It follows that "[a] pleading that offers

'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not

do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement." *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009).

70.    In its Proposed Amended Complaint, the Debtors now submit that Delphi Automotive Systems, LLC ("DAS") was the transferor/plaintiff at time of the subject transactions without establishing any basis as to how the transferor in the initial Complaint, "Delphi Corporation *et al.*" morphed into DAS.

71.    Even more egregious is that the Debtors fail to satisfy Section 547(b)(3)'s requirement that the subject transfer was "made while the debtor was insolvent."  As to this essential element, the Debtors' Proposed Amended Complaint merely states: "[p]ursuant to Bankruptcy Code section 547(f), for purposes of this Adversary Proceeding, Plaintiff is presumed to have been, and was in fact, insolvent at the time the Transfers were made."

72.    On its face, this "allegation" runs afoul of both the *Iqbal/Twombly* tests.  First, it makes only a "formulaic recitation" of a legal conclusion about the Section 547(b) insolvency element.  This is a functional nullity because, as a legal conclusion, it is not to be taken as true. Second, this "allegation" makes only "naked assertions" of insolvency as it fails to set forth facts which show that DAS' financial condition was such that the sum of its debts was greater than all of its property, *exclusive* of property that was fraudulently transferred, as defined in 11 U.S.C. 101(32)(A).

73.    Further, DAS' allegations of insolvency are underscored by the fact that DAS' schedules filed on January 20, 2006 (in bankruptcy case number 05-44640) reveal that DAS valued its assets at $8,129,515,432, while its liabilities were valued at $6,059,642,099.

74.    Although a debtor is "presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition" under section 547(f), this presumption is overcome by the fact that DAS represented that it had a positive net worth of

more than $2 billion at the time of its bankruptcy filing. As the Debtors failed to allege any additional facts in support of DAS' insolvency, the Proposed Amended Complaint fails as a matter of law and the Motion to Amend must be denied.

75.    Accordingly, the Debtors fail to satisfy the pleading requirements under *Iqbal/Twombly* and the Motion to Amend must be denied in its entirety and this Adversary Proceeding must be dismissed with prejudice.

## INCORPORATION OF BRIEFS OF OTHER DEFENDANTS

Wells Fargo Bank, N.A. incorporates by reference those meritorious arguments by other defendants to these preference actions submitted in opposition to the Debtors' motion for leave to amend their complaints.

## CONCLUSION

**WHEREFORE**, for the reasons set forth herein, the Motion to Amend the Complaint as against Wells Fargo Bank, N.A. must be denied and this adversary proceeding must be dismissed with prejudice, together with the costs and disbursement of this action and such other and further relief as this Court may deem appropriate.

Dated:    Uniondale, New York
          November 24, 2010

                                        Respectfully submitted,

                                        RUSKIN MOSCOU FALTISCHEK, P.C.
                                        Attorneys for Wells Fargo Bank, N.A.

                              By:    _____
                                        Jeffrey A. Wurst
                                        Michael Rozea
                                        East Tower, 15th Floor
                                        1425 RXR Plaza
                                        Uniondale, New York 11556-1425
                                        (516) 663-6600