**Hearing Date and Time:  February 27, 2011 at 10:00 a.m.**
**Reply Deadline: January 28, 2011**

SMITH, GAMBRELL & RUSSELL, LLP
William M. Barron
250 Park Avenue
New York, New York  10177
Tel:  (212) 907-9700
Fax:  (212) 907-9800
wbarron@sgrlaw.com
*Attorneys for Defendants*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | |
| DPH HOLDINGS CORP., et al., | Chapter 11 |
| | Case. No. 05-44481 [RDD] |
| Reorganized Debtors. | |
| | Jointly Administered |
| DELPHI AUTOMOTIVE SYSTEMS, LLC, | |
| Plaintiff, | |
| v. | Adv. Pro. No. 07-02445 [RDD] |
| HERAEUS PRECIOUS METALS, | |
| Defendant. | |
| DELPHI AUTOMOTIVE SYSTEMS, LLC, | |
| Plaintiff, | |
| v. | Adv. Pro. No. 07-02442 [RDD] |
| HERAEUS METALS PROCESSING and HERAEUS METALS PROCESSING LTD., | |
| Defendants. | |

**HERAEUS DEFENDANTS' RESPONSE IN OPPOSITION TO REORGANIZED
DEBTORS' MOTION FOR LEAVE TO FILE AMENDED COMPLAINTS**

**<u>TABLE OF CONTENTS</u>**

PROCEDURAL POSTURE ................................................................................. 2

    1.    The Case Management Orders Required Actual Notice by Overnight Mail
        to All Parties With a Particularized Interest in the Subject of a Filing ................... 3

    2.    The Procedures Motion Was Filed Without Notice to Heraeus .............................. 3

    3.    The Heraeus Adversary Proceedings Were Filed Without Notice to Heraeus ......... 4

    4.    Debtors' 100% Plan ............................................................................................ 4

    5.    The Second and Third Extension Orders Were Entered Without Notice
        to Heraeus ......................................................................................................... 4

    6.    The 100% Plan Falls Apart ................................................................................. 5

    7.    The Last Extension Order Was Entered without Notice to Heraeus ....................... 6

    8.    Heraeus Is Finally Served in 2010 ....................................................................... 7

    9.    The Motions to Dismiss ...................................................................................... 8

    10.   Debtors' Motion for Leave to File Amended Complaints ...................................... 8

LEGAL ARGUMENT ..................................................................................... 9

I.    LEAVE TO AMEND WOULD BE FUTILE BECAUSE THE HERAEUS
    ADVERSARY PROCEEDINGS MUST NECESSARILY BE DISMISSED
    PURSUANT TO FED.R.CIV.P. 4(m). *Versace* ........................................... 11

        A.    There Was No Valid Extension Of The Time For Service Of The
               Summons And Complaint. ................................................................... 11

        B.    The Extension Orders Are Void As To Heraeus On Account Of Lack|
               Of Notice. .......................................................................................... 12

        C.    No Good Cause Exists To Retroactively Extend The Time For Service
               Of The Summons And Complaints. ...................................................... 18

II.    LEAVE TO AMEND WOULD BE FUTILE BECAUSE THE PROPOSED
    AMENDED COMPLAINTS FAIL, LIKE THE ORIGINAL COMPLAINTS, TO
    STATE A PLAUSIBLE CLAIM. ............................................................... 24

III.  THIS COURT HAS DISMISSED ALL CLAIMS AGAINST FOREIGN
    SUPPLIERS LIKE HMPL (IRELAND). ..................................................... 29

IV.  HERAEUS INCORPORATES BY REFERENCE ALL ARGUMENTS MADE
BY OTHER DEFENDANTS IN THEIR RESPONSES IN OPPOSITION TO
THE MOTION TO AMEND. ...................................................................................... 30

CONCLUSION ................................................................................................................... 30

## TABLE OF AUTHORITIES

**Cases**

*American Pipe & Construction Co. v. Utah*,
    414 U.S. 538 (1974) ...............................................................17,22

*Angell v. Haven (In re Careamerica)*,
    409 B.R. 346 (Bankr. E.D.N.C. 2009) .....................................25,26, 28

*Artificial Intelligence Corp. v. Casey*,
    198 B.R. 918 (Bankr. S.D. Cal. 1996) ......................................19

*Ashcroft v. Iqbal*,
    129 S.Ct. 1937 (2009).............................................................24

*A.V. By Versace, Inc. v. Gianni Versace, S.p.A.*,
    261 F.R.D. 29 (S.D.N.Y. 2009)................................................24

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ...............................................................24,26,27

*Broitman v. Kirkland*,
    181 B.R. 563 (D. Utah 995) .....................................................19

*Brooks v. City of Winston-Salem*,
    85 F.3d 178 (4th Cir. 1996)......................................................29

*City of New York v. New York, N.H. & H. R.R. Co.*,
    344 U.S. 293 (1953) ...............................................................12

*Crown Cork & Seal Co. v. Parker*,
    462 U.S. 345 (1983) ...............................................................17

*Doe v. Roman Catholic Diocese of Jefferson City*,
    862 S.E.2d 338 (Mo. 1993).......................................................15,17 17

*Efaw v. Wiliams*,
    473 F.3d 1038 (9th Cir. 2007) ..................................................20

*Feingold v. Hankin*,
    269 F.Supp.2d 268 (S.D.N.Y. 2003).........................................21,22,23

*In re Hydrogen, LLC,*
    431 B.R. 337 (2010) ................................................................ 24,26

*In re Johns Manville Corp.,*
    ___F.3d __, 2010 WL 1007832 (2d Cir. 2010)........................................... 13

*Jones v. New York Div. of Military & Naval Affairs,*
    166 F.3d 45 (2d Cir. 1999)...................................................................... 9

*Lachance v. Erickson,*
    522 U.S. 262 (1998) ............................................................................ 12

*Mullane v. Central Hanover Bank & Trust Co.,*
    339 U.S. 306 (1950) ............................................................................ 12

*Official Committee of the Unsecured Creditors of Color*
 *Tile, Inc. v. Coopers & Lybrand, LLP,*
    322 F.3d 147 (2nd Cir. 2003) .............................................................. 28,29

*Randolph-Rand Corp. of New York v. Tidy Handbags, Inc.,*
    2001 WL 1286989 (S.D.N.Y., Oct. 24, 2001) .......................................... 9, 11

*Rule Savage & Associates, P.C. v. Williams Communications,*
    324 B.R. 467 (Bankr. S.D.N.Y. 2005)...................................................... 19

*Shannon v. GE,*
    186 F.3d 186,195 (2d Cir. 1999) ............................................................ 22

*State of Missouri, ex rel. Wade, Relator v. Frawley,*
    966 S.W.2d 405 (Mo. Ct. App. 1998) ...................................................... 15

*Stinnett v. Wilson,*
    104 B.R. 303 (Bankr. E.D. Cal. 1989)...................................................... 19

*United States v. Castro,*
    243 B.R. 380 (D. Ariz. 1990)................................................................. 13

*Webster Bank v. Cowles,*
    343 B.R. 18 (Bankr. D. Conn. 2006)........................................................ 21

*William Danzer & Co. v. Gulf & S.I.R. Co.,*
    268 U.S. 633 (1925) ............................................................................ 16

## Other Authorities

Senate Report No. 95-989, July 14, 1978 .............................................................. 25

Moore's Federal Practice 3d, § 15.15[3], (3d ed. 2002) .......................................... 9

**Statutes**

11 U.S.C. § 546 ...................................................................................... 10,15,16,17,30

11 U.S.C. § 547 ............................................................................ 4,10,15,16,24,26,28

11 U.S.C. § 550 ................................................................................... 4,10,16,17,30

**Rules**

Fed. R. Bankr. P. 7003 .................................................................................. 16

Fed. R. Bankr. P. 7004 .................................................................................. 11

Fed. R. Bankr. P. 9006 .................................................................................. 12

Fed. R. Bankr. P. 9029 .................................................................................. 12

Fed. R. Civ. P. 3 ........................................................................................... 16

Fed. R. Civ. P. 4(m) .......................................................................... 3,4,10.11,21

Fed. R. Civ. P. 8 ................................................................................... 8, 9,24,25

Fed. R. Civ. P. 12 .......................................................................................... 29

Fed. R. Civ. P. 15 ............................................................................................ 8

TO:    THE HONORABLE ROBERT D. DRAIN
       UNITED STATES BANKRUPTCY JUDGE

Heraeus Precious Metals, LLC ("HPM"), Heraeus Metals Processing ("HMP") and Heraeus Metals Processing Ltd. ("HMPL"; and together with HPM and HMP, collectively, the "Heraeus Defendants" or "Heraeus"), by and through their undersigned counsel, respectfully submit this response in opposition to the motion of DPH Holdings Corporation and certain of its affiliated reorganized debtors (the "Reorganized Debtors" and, together with their respective predecessors in interest as debtors in possession in the above-captioned cases, the "Debtors"), including Delphi Automotive Systems, LLC (as a prepetition debtor, debtor in possession and Reorganized Debtor, "Delphi"), dated September 7, 2010, to file amended complaints in certain adversary proceedings [Docket No. 20575][1] (the "Motion to Amend"), with specific reference to the two above-captioned adversary proceedings pending in the above-captioned chapter 11 case (the "Case"), i.e., *Delphi Automotive Systems, LLC v. Heraeus Precious Metals*, Adv. Pro. No. 07-02445 [RDD] (the "HPM Adversary Proceeding"), and *Delphi Automotive Systems, LLC v. Heraeus Metals Processing and Heraeus Metals Processing Ltd.*, Adv. Pro. No. 07-02442 [RDD] (the "HMP/HMPL (Ireland) Adversary Proceeding"; and together with the HPM Adversary Proceeding, collectively, the "Heraeus Adversary Proceedings"), and, in support thereof, respectfully represent as follows:

## PROCEDURAL POSTURE

On October 8, 2005, and October 14, 2005, the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

---

[1] Unless otherwise specified, all docket references correspond to the docket in *In re DPH Holdings Corp., et al*, United States Bankruptcy Court Southern District of New York, Case No. 05-4481.

2

1.    **The Case Management Orders Required Actual Notice by Overnight Mail to All Parties With a Particularized Interest in the Subject of a Filing**

On March 20, 2006, this Court entered a Case Management Order (*see* Docket No. 2883, the "March 20, 2006 Supplemental CMO"), which was amended on October 26, 2006 (*see* Docket No. 5418, the "Eighth Supplemental CMO," together with the March 20, 2006 Supplemental CMO, the "CMOs"). The CMOs specifically require as follows:

> Every Filing shall be subject to the filing and notice procedures described herein (the "Notice Procedure"). All Filings shall be served (a) via overnight mail upon all parties with a particularized interest in the subject of the Filing ….

March 20, 2006 Supplemental CMO [Docket No. 2883].

2.    **The Procedures Motion Was Filed Without Notice to Heraeus**

By motion dated August 6, 2007, the Debtors sought entry of an order seeking the establishment of procedures for avoidance proceedings to be commenced by the Debtors. (*See* Motion to Authorize Procedures, dated August 6, 2007, Docket No. 8905, the "First Extension Motion.") Heraeus was not served with notice of this motion. (*See* Affidavit of Service, Docket No. 9039.) On August 16, 2007, this Court entered the Preservation of Estate Claims Procedures Order, granting the relief requested in the Motion to Authorize Procedures, including: (i) permitting the Debtors to file avoidance complaints under seal, (ii) directing the Clerk of the Court to delay issuing summonses for complaints unless and until the Debtors notified the Clerk of their intent to prosecute such actions, (iii) staying each adversary proceeding unless and until the Debtors effectuated service of process on the respective defendants, and (iv) extending the deadline under Fed.R.Civ.P. 4(m) by which the Debtors were required to serve process until March 31, 2008. (*See* Order, dated August 16, 2007, Docket No. 9105, "First Extension Order.")

### 3.    The Heraeus Adversary Proceedings Were Filed Without Notice to Heraeus

On September 28, 2007, the Debtors filed, under seal, the complaints in the Heraeus Adversary Proceedings, seeking in each proceeding to avoid and recover alleged preferential transfers in the aggregate amount of up to $43,700,000 or more pursuant to sections 547 and 550 of the Bankruptcy Code.  The Debtors filed by mid-October, 2007 no fewer than 742 preference actions under seal.

### 4.    Debtors' 100% Plan

On September 6, 2007, the Debtors filed a plan of reorganization, which proposed the payment in full of the Debtors' unsecured creditors. (*See* Disclosure Statement With Respect to Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, the Debtors and the Debtors-In-Possession, filed on September 6, 2007, Docket No. 9264; Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, the Debtors and the Debtors-In-Possession, dated September 6, 2007, Docket No. 9263, the "First Plan.")  The Debtors filed an amendment to the First Plan on December 10, 2007. (*See* First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, the Debtors and the Debtors-In-Possession, Docket No. 11386, the "Amended Plan," together with the First Plan, the "Confirmed Plan.")  The Confirmed Plan was confirmed by order of the Court dated January 25, 2008.  (Docket No. 12359.)  Exhibit 7.24 to the Confirmed Plan, which set forth the causes of actions the Debtors sought to retain under the Confirmed Plan, notably did not contain any reference to Heraeus.  (*See*, Confirmed Plan, Exhibit 7.24.)

### 5.    The Second and Third Extension Orders Were Entered Without Notice to Heraeus

The Debtors then filed two additional motions seeking to extend the deadline under Fed.R.Civ.P. 4(m) by which the Debtors would be required to serve process.  The stated purpose

4

for the extension sought in the motions was to permit the Debtors to "preserve valuable estate assets in a manner that would not unnecessarily disrupt the emergence process," as well as to reduce the "administrative and economic burdens" of the adversary proceedings on the Debtors, the Court and the defendants when "most of the Adversary Proceedings will not be prosecuted if the Plan were to become effective and likely will not be prosecuted under any modified plan." (*See* February 2008 Extension Motion, Docket No. 12922, ¶ 21; April 2008 Extension Motion, Docket No. 13361, ¶ 22.)

Each motion was made without notice to Heraeus, (*see* Affidavit of Service, Docket No. 12970, Affidavit of Service, Docket No. 13415), and each was granted by the Court, resulting in the following Orders.

- By Order entered on March 28, 2008, the Court extended the Service Deadline to May 31, 2008. (*See* Order, dated March 28, 2008, Docket No. 13277, ¶ 2, the "Second Extension Order.")

- By Order entered on April 30, 2008, the Court extended the Service Deadline to the later of substantial consummation of the Plan or any modified Chapter 11 plan for the Debtors or December 31, 2008. (*See* Order, dated April 30, 2008, Docket No. 13484, ¶ 2, the "Third Extension Order.")

### 6.    The 100% Plan Falls Apart

On October 3, 2008, the Debtors filed a motion to modify the Confirmed Plan, which sought approval of changes to the Confirmed Plan that provided for substantially lower recoveries to the Debtors' unsecured creditors. (*See* Motion for Order (1) Approving Modifications to Debtors' First Amended Plan of Reorganization (as Modified) And Related Disclosures And Voting Procedures And (II) Setting Final Hearing Date To Consider

5

Modifications To Confirmed First Amended Plan of Reorganization, Docket No. 14310.)  On

June 16, 2009, the Debtors filed a First Amended Joint Plan of Reorganization of Delphi

Corporation and Certain Affiliates, Debtors, and Debtors-In-Possession (As Modified), Docket

No. 17030, (the "Modified Plan"), which was approved by order of the Court dated July 30,

2009. (*See* Notice of (A) Order Approving Modifications to First Amended Joint Plan of

Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-in-Possession

and (B) Occurrence of Effective Date dated October 6, 2009, Docket No. 18958.)  On July 2,

2009, the Debtors filed the Exhibits to the Modified Plan, including Exhibit 7.19, which listed

retained causes of actions.  The Exhibit did not disclose that any cause of action regarded

Heraeus.  Rather, it contained specific references to five sets of actions against specified parties

unrelated to Heraeus, and a list of adversary proceeding numbers that Debtors sought to preserve,

with reference to the First Extension Order and no reference to the defendants or the claims

under each adversary proceeding case number.  (*See*, Exhibit 7.19 to the Modified Plan, Docket

No. 17557.)  The Modified Plan became effective on October 6, 2009.[2]

 7.    **The Last Extension Order Was Entered Without Notice to Heraeus**

Even though the Debtors lost funding for the Confirmed Plan, which had previously been

used by the Debtors as justification for delaying the unsealing and service of the Adversary

Proceedings on the grounds that the Adversary Proceedings would likely not be pursued as the

Debtors contemplated paying the claims of unsecured creditors in full, the Debtors waited

another year before filing yet another motion on October 2, 2009 (two years after expiration of

the statute of limitations), to extend the deadline for service of process, despite the fact that they

---

[2] HPM and HMPL were not creditors of the Debtors and therefore were never served with copies of any plan of reorganization or any associated disclosure statement. Since the plan documents and disclosure statements failed to disclose the names of those against whom the Debtors retained causes of action, even a creditor who received copies of these documents would not be on notice that it might be a defendant in an adversary proceeding.

now intended to pursue the Adversary Proceedings. Heraeus was given no notice of the Debtors'

motion. (*See* Affidavit of Service, Docket No. 18967.) By Order entered on October 22, 2009,

the Court extended the Service Deadline to 180 days after substantial consummation of the

Modified Plan. (Order, dated October 22, 2009, Docket No. 18999, ¶ 2; together, with the

Second Extension Order and the Third Extension Order, the "Extension Orders.") The Debtors

did not seek to unseal the dockets of the 177 adversary proceedings referenced in the motion or

otherwise disclose the identity of the named defendants.

### 8.    Heraeus Is Finally Served in 2010

On March 22, 2010—2 ½ years after the statute of limitations expired on October 8,

2007—Heraeus was served with process in the Heraeus Adversary Proceedings. On April 12,

2010, Heraeus timely filed its answer in each of the Heraeus Adversary Proceedings asserting the

following affirmative defenses: (1) the alleged preferential transfers were contemporaneous

exchanges for new value; (2) the alleged preferential transfers were made in the ordinary course

of business; (3) after some or all of the alleged preferential transfers, Heraeus gave new value for

the benefit of Debtors; (4) each of the alleged preferential transfers were settlement payments or

made by, to or for the benefit of a forward contract merchant in connection with a forward

contract; (5) the Debtors are barred from pursuing the action by laches; (6) the Debtors' claims

are barred by the statute of limitations; (7) the Debtors are estopped from maintaining the actions

based on the representations in their pleadings that they did not intend to pursue the avoidance

actions in the event the Debtors consummated their plan of reorganization; (8) the Debtors have

waived or released any claims against Heraeus by virtue of the previous representations made by

the Debtors in pleadings filed in the case; and (9) the Debtors' claims are barred by accord and

satisfaction based on the Debtors' promise to release the avoidance claims to induce Heraeus to

cooperate in the confirmation of their plan and continue business relationships with the Debtors.

(Answer of HPM, Adv. Pro. No. 07-02445, Docket No. 11; Answer of HMP and HMPL, Adv.
Pro. No. 07-02442, Docket No. 17.)

### 9.    The Motions to Dismiss

Certain defendants in the 177 preference actions filed motions to, among other things,
vacate the Extension Orders and dismiss the respective complaints filed against them with
prejudice (the "Motions to Dismiss").    On July 22, 2010, the Court heard arguments on the
Motions to Dismiss.    The Court announced in bench rulings that all preference claims below
$250,000 and all preference claims against foreign suppliers had been abandoned and were
dismissed. (Transcript, July 22, 2010, pp. 270-271).    The Court also ruled that all other
preference claims were dismissed, but gave Debtors 45 days (until September 7, 2010) "to file a
motion for each complaint seeking leave to amend each complaint." (*Id.*, pp. 277-278.)    By
Order entered September 7, 2010, the Court ruled that: (1) any claim against any defendant that
received transfers from the Debtors aggregating less than $250,000 during the 90 days preceding
their respective petition dates was dismissed with prejudice; (2) any claim against any defendant
who is a foreign supplier was dismissed with prejudice; (3) all remaining claims in the adversary
proceedings were dismissed without prejudice because the Debtors failed to plead sufficient facts
to state a claim under Fed.R.Civ.P. 8; and (4) the Debtors were permitted to file a motion for
leave to amend the complaint by September 7, 2010, in any adversary proceeding that the
Debtors intended to pursue.    (Order Granting In Part First Wave Motions to Dismiss, HPM
Adversary Proceeding, Adv. Pro. No. 07-02445, Docket No. 23; HMP/HMPL (Ireland)
Adversary Proceeding, Adv. Pro. No. 07-02442, Docket No. 30, the "Dismissal Order.")

### 10.    Debtors' Motion for Leave to File Amended Complaints

As required by the Dismissal Order, the Debtors filed the Motion to Amend on
September 7, 2010.  (Docket No. 20575.)  In the Motion to Amend, the Debtors solicit the Court

to permit them to file amended complaints in the preference actions on the grounds that the

Supreme Court enhanced the pleading standards under Fed.R.Civ.P. 8 after the original

complaints were filed, and the Debtors should be given the opportunity to re-plead in accordance

with the heightened pleading standard.  (*See* Motion to Amend, ¶ 25.)

The Debtors also attempt to show the Court that the proposed amended complaints

comply with the heightened requirements of Rule 8 by setting forth a comparison of the elements

of each claim as pled in the original complaint with its proposed "enhanced" counterpart in the

amended complaint.  (*See* Motion to Amend, ¶ 31.)

## LEGAL ARGUMENT

The Debtors' Motion to Amend should be denied as futile because the proposed amended

complaints against the Heraeus Defendants are legally and factually deficient.  The general rule

in such matters is that leave to amend "be freely given when justice so requires." Fed.R.Civ.P.

15(a).  Courts should not grant leave to amend, however, where the proposed amendment is

legally insufficient and it would be futile to grant leave to amend.  Moore's Federal Practice 3d,

§15.15[3]; *see also Randolph-Rand Corp. of New York v. Tidy Handbags, Inc.,* No. 96 Civ. 1829,

2001 WL 1286989, at *5 (S.D.N.Y., Oct. 24, 2001) (An amendment is futile "if the proposed

amended complaint would be subject to 'immediate dismissal' for failure to state a claim or on

some other ground." (quoting *Jones v. New York Div. of Military & Naval Affairs,* 166 F.3d 45,

55 (2d Cir.1999)).  As discussed in greater detail below, Delphi's proposed amended complaints

against the Heraeus Defendants are demonstrably futile on multiple grounds, rendering leave to

amend futile.

First, as the summons and complaint in each of the Heraeus Adversary Proceedings were

served more than 120 days after the complaint was filed, dismissal of the Heraeus Adversary

9

Proceedings would be required under Rule 4(m) absent a valid extension of time for service. The Debtors obtained no such valid extension. That is, the only extensions of time the Debtors obtained were pursuant to the Extension Orders, which were obtained, together with permission to file the complaints under seal, without notice to the Heraeus Defendants as required by the applicable Case Management Orders and Constitutional Due Process. They are therefore void as to the Heraeus Defendants. Moreover, no extension of the time for service is appropriate now, almost three years after the expiration of the initial 120-day period following the filing of the complaints and more than three years after the lapse of the applicable statutes of limitation under sections 546 and 550 of the Bankruptcy Code.

Second, despite nearly five years in which to investigate the underlying facts giving rise to Delphi's claims, as well as the explicit guidance of this Court, the proposed amended complaints still fail to allege facts sufficient to survive a motion to dismiss. The proposed complaints are most notably deficient in failing to identify the specific antecedent debts on account of which Heraeus received any allegedly preferential transfers, one of the essential elements of a preference claim under section 547(b) of the Bankruptcy Code.

In addition, new allegations of each proposed amended complaint affirmatively show that each Heraeus Defendant has a complete defense under section 547(c)(2) of the Bankruptcy Code to any claim under section 547, and that no such claim is plausible. Finally, HMPL is an Irish company with its headquarters in Ireland. It is indisputably a "foreign supplier," and this Court has dismissed all claims against any such defendant with prejudice. (*See* Dismissal Order, ¶ 3.)

Where, as here, the proposed amended complaints would be subject to immediate dismissal either (1) because of untimely service of process pursuant to Fed.R.Civ.P. 4(m), (the extensions of the time for service, granted without requisite notice to the Heraeus Defendants,

would constitute a denial of their right to due process of law), or (2) because neither such pleading states a claim upon which relief can be granted, leave to amend should be denied. *Randolph-Rand Corp. of New York v. Tidy Handbags, Inc.,* No. 96 Civ. 1829, 2001 WL 1286989, at *5 (S.D.N.Y., Oct. 24, 2001).

I.    LEAVE TO AMEND WOULD BE FUTILE BECAUSE THE HERAEUS ADVERSARY PROCEEDINGS MUST NECESSARILY BE DISMISSED PURSUANT TO FED.R.CIV.P. 4(m).

    A.    There Was No Valid Extension Of The Time For Service Of The Summons And Complaint.

Rule 4(m), Federal Rules of Civil Procedure (made applicable to adversary proceedings by Rule 7004(a), Federal Rules of Bankruptcy procedure), provides in relevant part that

> [i]f a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time.

Fed.R.Civ.P. 4(m).  As discussed above, it is undisputed that Delphi filed (under seal) the initial complaints purporting to commence the Heraeus Adversary Proceedings on September 28, 2007, and did not serve the complaints until March 22, 2010, i.e., more than 120 days, indeed more than 906 days, after the complaints were filed.  It follows that absent a valid prior extension of the time for service (which, as discussed in Subpart B below, was not obtained), or a retroactive extension of the time for service (which, as discussed in Subpart C below, would be inappropriate), the Court *must* dismiss the Heraeus Adversary Proceedings.  Fed.R.Civ.P. 4(m).

B.       The Extension Orders Are Void As To Heraeus On Account Of Lack Of Notice.

It is undisputed that the Debtors did not give notice to Heraeus, as prescribed by the

CMOs[3] (*see* the March 20, 2006 Supplemental CMO, Docket No. 2883, and the Eighth

Supplemental CMO, Docket No. 5418), of their motion seeking the entry of the First Extension

Order, which purported to grant them an extension of time within which to serve the summons

and complaint, including the Heraeus Adversary Proceedings, or any of their subsequent motions

seeking additional extensions of such time.   (*See* Affidavit of Service, Docket No. 9039,

Affidavit of Service, Docket No. 12970, Affidavit of Service, Docket No. 13415, Affidavit of

Service, Docket No. 18967.)   As a result, Heraeus was not bound by the First Extension Order,

which purported to extend the time for service, or the orders granting any of the Reorganized

Debtor's requests for additional extensions.

The United States Supreme Court has held that "[t]he core of due process is the right to

notice and a meaningful opportunity to be heard."  *Lachance v. Erickson*, 522 U.S. 262, 266

(1998).  And more specifically, the Supreme Court has proclaimed that

> there can be no doubt that at a minimum [the Due Process Clause of the U.S.
> Constitution] require[s] that deprivation of life, liberty or property by
> adjudication be preceded by notice and opportunity for hearing appropriate to the
> nature of the case…. An elementary and fundamental requirement of due process
> in any proceeding which is to be accorded finality is notice reasonably calculated,
> under all the circumstances, to apprise interested parties of the action and afford
> them an opportunity to present objections.

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313-14 (1950).  Moreover, the

Court has made it clear that a party who is not afforded due process during the proceeding

leading up to the entry of an order is not bound by the order.  *City of New York v. New York,*

---

[3] Although the Extension Motions also referenced Fed. R. Bankr. P. 9006(b) (which permits the court to grant an extension ex parte prior to the expiration of the initial period) as support for the service extensions, all parties to a proceeding are entitled to rely on the procedural orders entered by the court, like the CMOs, to supplement procedure that are not inconsistent with the Federal Rules of Bankruptcy Procedure. Fed. R. Bankr. Pro. 9029.  Rule 9006(b) therefore cannot be cited to excuse the Debtors' failure to comply with the notice requirements of the CMOs.

*N.H. & H. R.R. Co.* 344 U.S. 293 (1953);  *see, also, In re Johns Manville Corp.*, __ F.3rd __,

2010 WL 1007832, at *20 (2d Cir. 2010).  Simply put, an order obtained by a motion of which

an interested party was given no notice is void as a matter of law.  *United States v. Castro*, 243

B.R. 380 (D. Ariz. 1990).

The Heraeus Defendants' mere knowledge of the pendency of the Debtors' bankruptcy

proceedings does not overcome their right to actual notice of the specific motions because they

were parties with a "particularized interest" in the subject matter of the motion as required by the

March 20, 2006 Supplemental CMO.  As the Supreme Court held in *City of New York, supra*,

> [T]he bar order against New York [cannot] be sustained because of the city's
> knowledge that reorganization of the railroad was taking place in the court.  The
> argument is that such knowledge puts a duty on creditors to inquire for
> themselves about possible court orders limiting the time for filing claims.  But
> even creditors who have knowledge of a reorganization have a right to assume
> that the statutory "reasonable notice" will be given them before their claims are
> forever barred.

344 U.S. at 297.  A potential defendant has a right to assume that he will receive reasonable

notice before he is exposed to liability years after the expiration of the applicable statute of

limitations.

Debtors could not rely on generalized electronic notice of the motions for the Extensions

Orders, even if given to HMP (which cannot be confirmed, while the non-receipt of such

generalized notice by the Heraeus Defendants other than HMP has been confirmed), to satisfy

HMP's fundamental right to due process.  The March 20, 2006 Supplemental CMO (which was

incorporated by reference by the Eighth Supplemental CMO), specifically required:

> Every Filing shall be subject to the filing and notice procedures described herein
> (the "Notice Procedure").  All Filings shall be served (a) via overnight mail upon
> all parties with a particularized interest in the subject of the Filing ….

March 20, 2006 Supplemental CMO [Docket No. 2883]. Given the assurance of the March 20, 2006 Supplemental CMO that any party with a particularized interest in the motions for the Extension Orders would have been served by overnight mail with the motions, and given the fact that no Heraeus Defendant was served with the motions, they were entitled to assume that they were not named as a defendant in any of the adversary proceedings.

Even if HMP actually received, by any means, copies of one or more disclosure statements or plans of reorganization, including Exhibits 7.24 or 7.19 that referenced the First Extension Order and listed the adversary number of the causes of action retained by the Debtors, HMP was entitled to assume that it was not named as a defendant in any of the complaints. For even if HMP were to have received generalized electronic notice of the proceedings on the Extension Orders (which cannot be confirmed) and received copies of such disclosure statements and plans of reorganization, it certainly was entitled to assume that, having not received particularized notice of the proceedings on the motions requesting the Extension Orders, HMP was not among those defendants against which the Debtors were seeking permission to file lawsuits. In violation of this Court's Case Management Orders and Constitutional Due Process, these cases remained covert proceedings known only to the Debtors, to be disclosed to such defendants only at a time convenient to the Debtors, years after the lapse of the applicable statutes of limitations.

Is also noteworthy that the Debtors gave *none* of the defendants in the adversary proceedings particularized notice of any motion for an Extension Order, yet represented to this Court that they had in fact provided notice in accordance with the CMOs. (*See* First Extension Motion, ¶ 55.) The Debtors clearly recognized their obligation to provide such notice. Since no notice was in fact given, this Court was compelled, without its knowledge, to consider the

14

motions without the benefit of hearing arguments *against* the motion by any party with an interest in the outcome.  Indeed, the Court was apparently given to understand that it was issuing the Extension Orders *without opposition*.  (*See* Transcript, August 16, 2007, p. 11.)  This Court would surely have weighed the absence of opposition differently had it been aware that the most interested parties were not given any notice or opportunity to be heard.

Debtors' argument that defendants have not been denied due process because, upon granting the Motion to Amend, the defendants will have all the due process they can stand before trial (*see* Omnibus Response, ¶ 59), is completely meritless.  By requesting and obtaining permission from this Court without giving Heraeus notice and opportunity to be heard, to file complaints against the Heraeus Defendants, in secret, and to defer serving the Heraeus Defendants with process until years after the running of the applicable statute of limitations, 11 U.S.C. § 546(a), the Debtors effectively denied Heraeus the "right to be free from suit" after the passage of the time determined by Congress, "a right that is substantive in nature."  *Doe v. Roman Catholic Diocese of Jefferson City*, 862 S.W.2d 338, 341 (Mo. 1993) (en banc.), cited at *State of Missouri, ex rel. Wade, Relator v. Frawley*, 966 S.W.2d 405, 407 (Mo. Ct. App. 1998).

Section 546 of the Bankruptcy Code provides a "statute of limitations to the use by the trustee [or the debtor in possession] of the avoiding powers," SENATE REPORT NO. 95-989, July 14, 1978, at p. 87, which not only bars the remedy made available to the trustee or debtor in possession on account of a creditor's liability under, *inter alia*, section 547 of the Bankruptcy Code, but also, upon the running of the statute, eliminates the liability created by Section 547.  As the U.S. Supreme Court has stated with respect to statutory causes of action such as those arising under the Bankruptcy Code, where the statute of limitations set forth in one provision of a statute, i.e., 11 U.S.C. 546(a), "constitutes a part of the definition of a cause of action created

15

by … another provision [i.e., 11 U.S.C. 547], and operates as a limitation upon liability,"
*William Danzer & Co. v. Gulf & S.I.R. Co.*, 268 U.S. 633, 637 (1925), the "lapse of time not
only barred the remedy, but also destroyed the liability of defendant to plaintiff." *Id.*

The foregoing principle is also applicable to Section 550(f) of the Bankruptcy Code,
which similarly "establishes a statute of limitation on avoidance [more accurately, recovery] by
the Trustee [or debtor in possession]." SENATE REPORT NO. 95-989, July 14, 1978, at p. 90.
Section 550, where both the liability and the statute of limitations appear in the same section of
the Code, even more clearly establishes Heraeus's right to be free of liability, after the lapse of
the time period set forth therein.  11 U.S.C.

§ 550(a) and (f).  Actions which had the effect of depriving Heraeus of the benefit of
Sections 546 and 550 of the Bankruptcy Code, without notice and an opportunity to be heard,
would "deprive defendant of its property without due process of law in contravention of the Fifth
Amendment." *William Danzer & Co. v. Gulf & S.I.R. Co.*, 268 U.S. at 637.

Finally, Debtors' argument that the complaints were in fact filed before the statute of
limitations had expired [Omnibus Response ¶ 72] likewise does not either mandate or even
suggest a finding that the Heraeus Defendants would not be deprived of their due process rights
by the enforcement of the Extension Orders.  Though the Heraeus Adversary Proceedings may
have been "commenced," within the meaning of Fed.R.Civ.P 3 (made applicable to adversary
proceedings by Rule 7003, Federal Rules of Bankruptcy Procedure), permitting the complaints,
without notice to the Heraeus Defendants, to be filed under seal and deferring service of process
with respect thereto until years after the expiration of the applicable statute of limitations
nevertheless deprived the Heraeus Defendants of the substantive right, conferred by Congress

pursuant to Sections 546 and 550 of the Bankruptcy Code, "once the … statute of limitations expires … to be free from suit." *Doe v. Roman Catholic Diocese, supra.*

"Limitations periods are intended to put defendants on notice of adverse claims." *Crown Cork & Seal Co. v. Parker*, 462 U.S. 345, 352 (1983). It is unnecessary now to revisit this Court's decisions to grant the various motions to keep the complaints under seal and to defer the time to serve process, but it is timely now and without question necessary and appropriate for the Court to rule on whether the Extension Orders are binding on the Heraeus Defendants, when it is now apparent that the Extension Orders were entered without notice to the Heraeus Defendants and had the effect of denying the Heraeus Defendants' their substantial right, conferred by Due Process, Sections 546 and 550 of the Bankruptcy Code, and this Court's CMOs to be put on notice within the statutory time limits of preference claims created solely under the Bankruptcy Code.

While Debtors argue that the statutes of limitation are not even implicated, on account of the fact that it filed the complaints within the periods of limitation established by the Bankruptcy Code (Omnibus Response ¶ 72), the Heraeus Defendants respectfully submit that their rights under Sections 546 and 550 could not have been provided them by permitting Debtors to file complaints against them in a Star Chamber-type proceeding which, by Debtors' design, was *concealed from them* until years after the limitation periods had lapsed. A proceeding commenced and continued *without notice* to the defendant plainly cannot be deemed *to provide the notice* of adverse claims which the Supreme Court found essential to the "functional operation of a statute of limitations" in *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 554 (1974), the ruling of which was applied by the Court in *Parker*.

17

Debtors' argument is similarly illogical that the Heraeus Defendants were not deprived of their right to notice of the preference claims pending against them within the time period stipulated by the Bankruptcy Code because they could have, before the statute had lapsed, asked Delphi if they were being sued, and Delphi was permitted to tell them. (Omnibus Response, ¶ 2.) Or because they knew that they had received payments within 90 days before the petition date. (Omnibus Response, ¶ 2.) Suppose a seller sold and delivered goods to his buyer, his buyer failed to pay the purchase price for the goods, and the seller waited until several years after the applicable statute of limitations had expired to sue the buyer for the unpaid purchase price. The court could not seriously consider disregarding the statute of limitations on the basis that the buyer could, at any time before the period of limitations had lapsed, have asked the seller whether he intended to sue him, and that the seller was permitted to tell him, or that the buyer knew that he had not paid the purchase price and, therefore, had reason to believe that one day the seller might sue him. And yet that is exactly the argument Delphi is asking this Court to accept.

C.    <u>No Good Cause Exists To Retroactively Extend The Time For Service Of The Summons And Complaints.</u>

It would be inappropriate for the court to order, retroactively, that service may be made more than two years after the filing of the complaint and the expiration of the applicable statute of limitations.

The courts have observed that

[t]he longstanding practice under the Federal Rules of Civil Procedure, and under pre-1938 equity practice, was that the tolling of the statute of limitations is conditional upon the timely completion of service of process. Thus, failure to be diligent in serving process could nullify the tolling. In enacting Rule 4[(m)], the Congress in effect created a (presumably rebuttable) statutory presumption that completion of service within 120 days constitutes diligence. Longer periods might suffice without dismissal, but only upon a showing of good cause [or pursuant to later amendments, in the court's discretion].

18

*Stinnett v. Wilson*, 104 B.R. 303, 305 (Bankr. E.D. Cal. 1989) (citations omitted). "A plaintiff bears the burden of proving good cause for its failure to timely serve a defendant. As a general rule, good cause is measured against '(1) the plaintiff's reasonable efforts to effect service and (2) the prejudice to the defendant from delay.'" *Rule Savage & Associates, P.C. v. Williams Communications*, 324 B.R. 467, 472 (Bankr. S.D.N.Y. 2005) (citations omitted).

As a policy consideration, "in construing and applying Rule 4[(m)] …'the rule is intended to force parties and their attorneys to be diligent in prosecuting their causes of action.'" *Broitman v. Kirkland*, 181 B.R. 563, 568 (D.Utah 1995). For this reason, courts have routinely held that a plaintiff cannot show good cause for any purposeful delay in effectuating service. *See Id.* (finding that a plaintiff failed to prove good cause when she purposefully delayed service of an adversary proceeding because she hoped that a state court proceeding against the debtor's affiliates might make the adversary proceeding unnecessary); *Artificial Intelligence Corp. v. Casey*, 198 B.R. 918 (Bankr. S.D. Cal. 1996) (plaintiff failed to show good cause when service of adversary proceeding was intentionally delayed for 151 days owing to plaintiff's hope that a motion to dismiss the debtor's bankruptcy proceeding would be successful, which would render the adversary proceeding moot, and the parties would avoid unnecessary expenditures).

Although Delphi may suggest that its failure to serve the Heraeus Defendants was owing to its good faith reliance on the Extension Orders (Omnibus Response, ¶ 73), any such reliance was unfounded. First, it was the failure of the Debtors to give due notice to the Heraeus Defendants that renders the Extension Orders invalid as to the Heraeus Defendants. Second, if the Debtors relied on the Extension Orders in delaying service of process, the Heraeus Defendants, through no fault of their own, have relied on the expiration of the statute of

19

limitations for over two years in considering themselves free of exposure to suit on account of preferential transfers.

Furthermore, a court's discretion to extend the time for service beyond the 120-day period stipulated in Rule 4(m) "is [not] limitless," *Efaw v. Williams*, 473 F.3d 1038, 1041 (9th Cir. 2007). In *Efaw* the Ninth Circuit reversed a district court that had allowed a plaintiff to serve a complaint seven years after it was filed. *Efaw*, 473 F.3d at 1041. The Circuit Court reasoned that the extraordinary length of delay (notwithstanding the fact that the plaintiff sought and obtained an extension under Rule 4(m) during the interim period), coupled with the fact that the defendant had no knowledge of the complaint and suffered prejudice owing to the impact of time on the availability of witnesses, necessitated reversal even though the defendant admitted at trial the truth of certain allegations made in the plaintiff's complaint, and the plaintiff was time-barred from refiling the action. *Id.* at 1041.

The circumstances favoring the delay in service in *Efaw* were more compelling than those favoring the extensions Delphi would need here. The plaintiff was a prisoner, acting to a significant degree without counsel, who suffered a series of beatings over the course of a day in the Navajo County jail. *Id.* at 1042. Indeed, after hearing the defendant's testimony at trial admitting to the commission of various forms of abuse as alleged in Efaw's complaint, the jury awarded him $100,000 in damages. Yet the Court of Appeals ruled that service was unduly deferred, even though the plaintiff was left without recourse because the statute of limitations had elapsed. The message from the Ninth Circuit is clear—the discretion of a trial judge under Rule 4(m) is necessarily constrained by a defendant's right to timely service and by the prejudice suffered as a result of extraordinary delay.

This Court has enumerated the following four-factor test to govern the exercise of discretion to grant extensions of the time for service under Rule 4(m):

> 1) whether the statute of limitations would bar a refiled action, 2) whether the defendant attempted to conceal the defect in service, 3) whether the defendant would be prejudiced by excusing the plaintiff from the time constraints of the provision, and 4) whether the defendant had actual notice of the claims asserted in the complaint.

*Feingold v. Hankin*, 269 F.Supp.2d 268, 277 (S.D.N.Y. 2003). In the cases at bar, each of these factors mandates denial of Debtors' motion and dismissal of the Heraeus Defendants. Delphi certainly may not claim it is prejudiced by dismissal, "where, as here in the present proceeding, such prejudice to the plaintiff arises from its own failure to act, and is outweighed by the prejudice to the defendant *for whose benefit statutes of limitation are intended*." *Webster Bank v. Cowles*, 343 B.R. 18, 21 (Bankr. D. Conn. 2006) (emphasis added). In the case at bar there was certainly no misconduct on the part of the Heraeus Defendants that might have made service burdensome for the Debtors, while any prejudice to the Debtors is the result of their own intentional strategy of secretly deferring service and, intentional or not, failing to notify the Heraeus Defendants that a delay in service was sought. *See Efaw*, 473 F.3d at 1041 (pointing out that "[t]here was no evidence that the defendant attempted to evade service, that she left the state or that she took any other action that contributed to Plaintiff's delay").

As for the second factor enunciated by the *Feingold* court, there is no suggestion that the Heraeus Defendants concealed the defect in service. To the contrary, the Debtors knew, while the Heraeus Defendants did not know, that there were lawsuits pending against the Heraeus Defendants with respect to which service was required, and the Heraeus Defendants could hardly have evaded or concealed a defect in service of which they were unaware.

21

<u>Prejudice to Heraeus</u>: With regard to the third *Feingold* factor, it goes without saying that Heraeus suffered prejudice by its discovery, more than two years after the secret filing of the actions and the expiration of the statute of limitations, that it would have to marshal a defense to allegations dating back five years.   Indeed, prejudice to the Heraeus Defendants must be presumed where the delay in service, combined with the filing of the complaints under seal, had the effect of depriving the Heraeus Defendants of the entire intended benefit of the statute of limitations established by Congress, including, importantly, the "right to be free of stale claims," especially when the Heraeus Defendants were given none of the "essential information necessary to determine both the subject matter and size of the prospective litigation." *American Pipe*, 414 U.S. at 545.  *See Shannon v. GE,* 186 F.3d 186,195 (2d Cir. 1999) ("prejudice to defendants resulting from unreasonable delay may be presumed.")  In any event, the Heraeus Defendants suffered actual prejudice due to the delay in service. In the intervening years between the time the complaints were filed and the time of actual service, email exchanges with Delphi concerning the transfers at issue have been lost or destroyed.  (See Declaration of David Gallagher, ¶ 13, 14, and 15, annexed hereto as Exhibit "A".)  Furthermore, the Defendants were left to operate their businesses and to make all of their decisions, including short-term and strategic planning decisions, without knowledge of any potential loss on account of claims the Debtors now seek to pursue against them (indeed with every reason to believe that such claims, if any, were time-barred), and without establishing reserves on their financial statements for loss contingencies of as much as $43 million or more in the aggregate, or even having the benefit of considering whether the establishment of such loss contingencies might have been necessary or appropriate. (*See* Exhibit A, ¶¶ 13, 14; Declaration of Diane Carrillo-Mireles, ¶¶ 9, 10, annexed hereto as Exhibit "B".)

Lastly, with regard to the fourth *Feingold* factor, the Heraeus Defendants were not only unaware of Delphi's claims against them, they were victims of a calculated attempt by the Debtors to keep them completely uninformed of the actions against them. The fact that Heraeus' lack of knowledge was the result of the Debtors' asking for extraordinary relief, i.e., sealing of the complaints and indefinite extension of time to serve, without providing the Heraeus Defendants' any notice, makes this factor especially compelling. The Debtors' argument that the Heraeus Defendants should have known that there were potential claims against them owing merely to the fact that they received payments from a Debtor within 90 days before the petition (Omnibus Response ¶ 70) is particularly bold. Heraeus can assume only that when making the argument the Debtors forgot (perhaps understandably, considering it was more than five years ago) that the primary grounds the Debtors put forward to support their request for permission to file the complaints under seal and to defer indefinitely service of process was that pursuing the cases against them would unnecessarily interfere with the Debtors' reorganization efforts and require the defendants to engage counsel, prepare defenses and suffer unnecessary expense. (*See* February 28, 2008 Extension Motion, Docket No. 12922, ¶ 21, and April 2008 Extension Motion, Docket No. 13361, ¶ 22.) Heraeus respectfully submits that the Reorganized Debtors should now at the very least be estopped from taking the position that the Heraeus Defendants had knowledge of lawsuits that the Debtors went to such extraordinary lengths to enlist this Court's unwitting help to conceal.

The Extension Orders were void as to Heraeus and the time within which the Debtors were required to serve the summonses and complaints on Heraeus therefore expired almost three years ago, on January 26, 2008. Even if leave to amend the complaints were granted, the Heraeus Adversary Proceedings would be necessarily dismissed upon motion by Heraeus. It

follows that granting the Reorganized Debtors leave to amend the complaints against Heraeus would be futile, and the Motion to Amend should be denied.

II.    LEAVE TO AMEND WOULD BE FUTILE BECAUSE THE PROPOSED AMENDED COMPLAINTS FAIL, LIKE THE ORIGINAL COMPLAINTS, TO STATE A PLAUSIBLE CLAIM.

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the U.S. Supreme Court established the standard by which federal courts are to determine motions to dismiss, which is, by virtue of the court's ruling in *A.V. By Versace, Inc. v. Gianni Versace, S.p.A.*, 261 F.R.D.29 (S.D.N.Y. 2009), likewise applicable to a federal court's determination of whether leave to amend a complaint should be denied as futile. The Court in *Twombly* held that to survive a motion to dismiss, a complaint must set out "enough facts to state a claim to relief that is plausible on its face, [where the claim has been] nudged … across the line from conceivable to plausible." *Id.* at 570. The Court further explained that the rules of pleading require from the plaintiff "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. As the Supreme Court held in *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937 (2009), "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," __ U.S. at __; 129 S.Ct. at 1949, and "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." __ U.S. at __; 129 S.Ct. at 1950. Moreover, a complaint may be deficient not only for lack of specificity, but also where the complaint "fails *in toto* to render plaintiffs' entitlement to relief plausible." *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 569, n. 14.

This Court in *In re Hydrogen, L.L.C.*, 431 B.R. 337 (2010), held that in order for a preference claim to satisfy the standard announced in *Twombly* and required under Rule 8, the complaint "must allege enough facts with respect to each of the … elements of section 547(b) [of

the Bankruptcy Code] in order to put Defendants on notice for the preference claims." *Id.* at 355.

Specifically, this Court found that the complaint under consideration in *Hydrogen* was deficient

on account of, *inter alia*, the absence of "a single relevant detail such as date, amount or type of

transfer" and any allegation "that any transfer was made for or on account of a *specific and*

*identifiable antecedent debt* owed by the Debtor." *Id.* (emphasis added.)  Similarly, the court in

*Angell v. Haven (In re Careamerica)*, 409 B.R. 346 (Bankr. E.D.N.C. 2009), held that in order to

state a preference claim in compliance with the pleading requirements set out in *Twombly*, the

plaintiff "must allege facts regarding the nature and amount of the antecedent debt which, if true,

would render plausible the assertion that a transfer was made for or on account of such

antecedent debt." *Id.* at 351.

Of course, in order to meet the burden of satisfying the pleading requirements for a

preference claim, Delphi had the benefit not only of Rule 8 and the rulings in *Twombly*, *Iqbal*,

*Careamerica* and other relevant cases, but also of applicable provisions of the Dismissal Order

[Docket No. 20579].  Specifically, this Court ordered the Reorganized Debtors as follows:

> By no later than September 7, 2010, the Reorganized Debtors shall file a motion
> for leave to amend the complaint in each Adversary Proceeding the Reorganized
> Debtors intend to pursue (each, a "Motion to Amend").  Each Motion to Amend
> shall attach a proposed amended complaint that, for each alleged transfer shall set
> forth, at a minimum, the transferor, the transferee, any known subsequent
> transferee against whom relief is sought, the antecedent debt and which
> Reorganized Debtor is the plaintiff.

Dismissal Order, ¶ 4.  The amended complaints proposed for the HPM Adversary Proceeding

(the "HPM Complaint") and for the HMP/HMPL (Ireland) Adversary Proceeding (the "HMP

Complaint") fail, as did the original complaints, to satisfy the requirements of Rule 8, or the

standards set forth in *Twombly*, *Iqbal* and the lower court decisions following such cases, and

also fail to comply with the above-quoted provision of the Dismissal Order.

Most importantly, the amended complaints fail to allege sufficient facts to identify the specific antecedent debt on account of which any Heraeus Defendant made any allegedly preferential transfer, one of the essential elements of a preference claim under section 547(b) of the Bankruptcy Code. 11 U.S.C. § 547(b)(2). Delphi only alleges, in each amended complaint, that "Plaintiff made certain payments to Defendants in satisfaction of amounts due for goods previously shipped by Defendants under the Agreements (the "Transfers")" and that "[s]uch Transfers are identified on Exhibit 1 attached … [to the complaint]." HPM Complaint ¶ 18; HMP Complaint ¶ 20. This allegation constitutes exactly the kind of "formulaic recitation of the elements" of a cause of action that the courts have ruled is insufficient. *See Bell Atlantic Corp. v. Twombly, supra; In re Hydrogen, L.L.C., supra; Angell v. Haven (In re Careamerica), supra.*

Delphi does not remedy its inadequate identification of any antecedent debt by alleging that the "documents evidencing the antecedent debt include the purchase orders and/or invoices/bills of lading identified on Exhibit 1 [Exhibit 1 identifies each such document as an "Invoice"], which purchase orders and/or invoices/bills of lading include evidence of the amount of the antecedent debt and the approximate dates the goods contemplated by the Agreements were ordered by Plaintiff pursuant to the Agreements and/or were provided by Defendants." HPM Complaint ¶ 22; HMP Complaint ¶ 24. As a preliminary matter, the Heraeus Defendants must overcome the difficulty of assessing just what notice they are supposed to have been given by Delphi's allegation that evidence of a date is included in an "Invoice," when Delphi also alleges that "Plaintiff did not accept physical invoices from Defendants in connection with Defendants' shipment of goods under the Agreements." HPM Complaint ¶ 16; HMP Complaint ¶ 18.

Even if the Heraeus Defendants could rely on the allegations to the effect that the invoices identified by number on Exhibit 1 to the complaints include evidence of antecedent debt and the approximate dates the Heraeus Defendants ordered or delivered goods pursuant to agreements with Delphi (and ASEC General Partnership), the allegations still do not come close to setting forth the antecedent debt as required by the Dismissal Order (beyond merely alleging that the debt was antecedent).  The proposed amended complaints give the Heraeus Defendants absolutely no notice whatsoever of the amount of any antecedent debt, nor even approximate dates that any such debt was incurred.

Other than the mere conclusory allegations of the proposed amended complaints to the effect that the relevant debts, in unspecified amounts, were antecedent, the proposed amended complaints give the Heraeus Defendants no notice of the antecedent debt on account of which they are alleged to have received preferential transfers.  The dates of such debts, whatever their amounts, as they might be demonstrated by the evidence but which are not disclosed in the proposed amended complaints, could be contemporaneous with the allegedly preferential transfers, for all the Heraeus Defendants can know from an examination of the proposed amended complaints.  Heraeus respectfully submits that alleging the existence of evidence of the elements of a claim cannot substitute for actually alleging sufficient facts to put the Heraeus Defendants on notice of each of such elements.

Each proposed amended complaint would also be subject to dismissal because it "fails *in toto* to render plaintiffs' entitlement to relief plausible." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569 n. 14 (2007).  That is, neither proposed amended complaint, taken as a whole, states a claim for avoidance of a preference under section 547 of the Bankruptcy Code.  Even if each proposed amended complaint had included specific facts giving sufficient notice to the

Heraeus Defendants of each element of a preference claim under section 547 (which the Heraeus Defendants dispute), each such document also includes allegations that establish that the Heraeus Defendants each have a complete defense under section 547(c)(2) of the Bankruptcy Code to the claims Delphi has attempted to state.

Section 547(c)(2) of the Bankruptcy Code (as in effect on the petition date) provided in relevant part:

> The trustee may not avoid under this section a transfer—
>
> (2) to the extent that such transfer was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee, and such transfer was—
>> (A) made in the ordinary course of business or financial affairs of the debtor and the transferee; and
>> (B) made according to ordinary business terms.

11 U.S.C. § 547(c)(2).  The allegations of each proposed amended complaint, taken as a whole, show that the alleged debts were "incurred by the debtor in the ordinary course of business or financial affairs of the debtor" and the applicable Heraeus Defendant.  *See, e.g.*, HPM Complaint ¶ 12, 13, 15 and 17; HMP Complaint ¶¶ 13, 14, 16, 17 and 19.  In each proposed amended complaint Delphi alleges specifically that "Plaintiff's accounts payable system was used to generate payment on a date certain based upon the payment terms associated with the Defendant(s)."  HPM Complaint ¶ 17; HMP Complaint ¶ 19.  Taking this above-quoted allegation as true, it can only be inferred that each payment, generated by Delphi's own accounts payable system for a date certain based upon agreed payment terms, was made in the ordinary course of business of Delphi and HPM, HMP or HMPL, as the case may be, and according to ordinary business terms.  Because the foregoing establishes that each Heraeus Defendant has a complete defense to any claim under section 547 of the Bankruptcy Code, it is apparent that the preference claims Delphi now seeks to assert are simply not plausible.  *See Official Committee of*

*the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 158 (2nd

Cir. 2003) ("A complaint can be dismissed for failure to state a claim pursuant to a Rule 12(b)(6)

motion raising an affirmative defense if the defense appears on the face of the complaint.");

*Brooks v. City of Winston-Salem*, 85, F.3d 178, 181 (4th Cir. 1996) ("dismissal [under Rule

12(b)(6)] is appropriate when the face of the complaint clearly reveals the existence of a

meritorious affirmative defense").

Accordingly, it would be futile to permit Delphi to file the proposed amended

complaints, as Delphi has failed to state a claim upon which relief can be granted.

III.   THIS COURT HAS DISMISSED ALL CLAIMS AGAINST FOREIGN SUPPLIERS
       LIKE HMPL (IRELAND).

In the Dismissal Order, the Court dismissed with prejudice all claims of the Debtors

against a "foreign supplier."   (Dismissal Order, ¶ 3.)   The Debtors attempt to circumvent this

Court's ruling in the amended complaint in the HMP/HMPL (Ireland) Adversary Proceeding and

assert claims against HMPL, an Irish corporation.   The Debtors would allege for the first time

that HMPL is located in Santa Fe Springs, CA, at codefendant HMP's address, but HMPL is an

Irish company with its headquarters in Ireland and has no office in the United States.   *See* Exhibit

B, ¶ 5; Declaration of Andrew Walsh, ¶ 4, annexed hereto as Exhibit "C".   HMPL is indisputably

a "foreign supplier," and this Court has dismissed all claims against foreign suppliers with

prejudice.   (*See* Dismissal Order, ¶ 3.).   For this reason alone, the Debtors are barred from

pursuing claims against HMPL.

IV.     HERAEUS INCORPORATES BY REFERENCE ALL ARGUMENTS MADE BY
        OTHER DEFENDANTS IN THEIR RESPONSES IN OPPOSITION TO THE MOTION
        TO AMEND.

The defendants in the large number of other adversary proceedings subject to the Motion

to Amend have submitted their own responses in opposition to the Motion to Amend, based, in

many cases, on arguments similar to or in addition to the arguments made herein.  Because the

facts and circumstances involved in such other adversary proceedings, in many respects

(including the filing of initial complaints under seal and the deferral of service or process), are

substantially similar to the facts and circumstances in the cases at bar, to avoid unnecessary

duplication, the Heraeus Defendants incorporate herein by reference those arguments made in

such responses to the extent applicable to these cases.

## CONCLUSION

The Debtors obtained from this Court, without complying with applicable Case

Management Orders and otherwise without due notice to the Heraeus Defendants, permission to

file the initial complaints in connection with the Heraeus Adversary Proceedings under seal and

to defer service of the summons and complaints for over two years after the expiration of the

initial 120-day period after the filing of the complaints and almost three years after the lapse of

the applicable statutes of limitation under sections 546 and 550 of the Bankruptcy Code.

After serving the complaints and as a result of this Court's Dismissal Order, requiring the

Debtors to file a motion for leave to amend such complaints, indicating specific provisions that

each proposed amended complaint must include in order to satisfy the mandated pleading

requirements, Delphi filed the Motion to Amend and attached the proposed amended complaints.

Knowing that the Heraeus Defendants would raise arguments based on the secret filing under

seal and long-delayed service of the original complaints, the Debtors recommend another

30

procedural delay, that the Court defer consideration of their Constitutionally questionable conduct until *after* the Debtors are given the opportunity to amend. (*See* Motion to Amend, ¶ 33.)  But the Debtors have been afforded ample opportunity to prosecute the Heraeus Adversary Proceedings, while making a calculated effort to deprive the Heraeus Defendants of the opportunity to advocate their position.  The Debtors should not be further permitted to proceed in this action without a determination of important threshold issues.

Upon the foregoing, Heraeus respectfully submits that the Motion to Amend should be denied with respect to the Heraeus Adversary Proceedings, on the basis that permitting the adversary proceedings to proceed against the Heraeus Defendants would deprive them of the right to be free from such suits after the expiration of the applicable statutes of limitation without due process of law, and that even if such adversary proceedings were permitted to go forward, the amended complaints proposed for the Heraeus Adversary Proceedings would be subject to dismissal for failure to state a claim upon which relief can be granted and, accordingly, permitting leave to file such complaints would be futile.  In addition, Heraeus submits that HMPL is indisputably a "foreign supplier," and the HMP/HMPL (Ireland) Adversary Proceeding should be dismissed.

WHEREFORE, the Heraeus Defendants respectfully request that this Court enter an order denying the Motion to Amend as it pertains to the Heraeus Adversary Proceedings, dismissing the Heraeus Adversary Proceedings, and granting the Heraeus Defendants such other and further relief as may be just and proper.


Dated: New York, New York
      November 24, 2010

**SMITH, GAMBRELL & RUSSELL, LLP**


By:  /s/ William M. Barron
    William M. Barron
    David Webster Barron
    250 Park Avenue
    New York, New York 10177
    (212) 907-9700
    wbarron@sgrlaw.com

    and

**SMITH, GAMBRELL & RUSSELL, LLP**
    Ronald E. Barab
    Megan K. Johnson
    1230 Peachtree Street, NE
    Atlanta, GA 30309
    (404) 815-3500

    *Attorneys for Defendants*