# EXHIBIT C

05-44481-rdd   Doc 20912-3   Filed 11/24/10   Entered 11/24/10 14:56:46   Exhibit C
Pg 2 of 28
DPH HOLDINGS CORP., et al.

- 113 -

1    docket to see if there was an adversary proceeding filed.  I

2    agree with that.

3         But let me ask.  The Supreme Court this year talked

4    about notice for due process purposes in the Espinosa case.

5    And they said that actual notice of the plan was enough, even

6    though it was the plan that improperly dealt with the

7    nondischargeable student loan.  That was -- it was enough to

8    take it out of 60(b)(4) and was, you know, was sufficient due

9    process.  How is this different from that?

10        MS. SCHWEITZER:  Well, what I think is different is

11   that the concern here is that you're taking a process and

12   taking literal procedures and turning on the head the

13   expectations of all parties involved in that process.  What

14   you're saying is I'm going to file a plan on you, right, and

15   I've got my plan disclosure statement in the mail.

16        The exhibit is missing on retained actions.  Thirteen

17   days before the objection deadline, I'm going to file a notice

18   of plan supplement on the docket that lists docket numbers, not

19   actual case names, docket numbers, and if you, when you get

20   served by mail in the thirteen days before the confirmation

21   deadline, go to look up that exhibit, you're going to find a

22   link again to 177 docket numbers out of 11,000 potential

23   claims.  You're going to go to those links and you're going to

24   hit a roadblock.

25        And so in those last ten days, if you really do

05-44481-rdd   Doc 20912-3   Filed 11/24/10   Entered 11/24/10 14:56:46   Exhibit C
Pg 3 of 28
DPH HOLDINGS CORP., et al.

- 114 -

1   consider yourself on notice and you really did want to look

2   into this, you're running against the wall and you're running

3   against the wall to find out that the debtors have, in fact,

4   sued you two and a half years earlier.

5          Now, I understand there are things in bankruptcy that

6   are sometimes preferable notice, the best possible notice

7   versus minimally adequate notice, but the difference here is

8   the debtors didn't merely say, 'I want to tell -- give people

9   comfort that, look, I filed this against you, I don't really

10  mean it.'  Or, 'I don't know if I mean it.  Let's all sit

11  tight, let's all join the benefit of the breather and the

12  benefit of working through whether these are meritorious claims

13  and we can all do that together.'  The debtors, instead,

14  unilaterally, at every turn, said, 'I'm not going to tell you.'

15  And the due process cases around planned disclosure and the res

16  judicata cases around planned disclosure generally say, 'Well,

17  if the debtor preserves everything, everyone knows they're

18  affected.'  Right?  Or if was just too burdensome for the

19  debtor that they couldn't really possibly have gone through and

20  sorted out the cases so early on in their proceeding, we're

21  going to give them a little slack.

22          But here the debtors knew exactly what they were

23  preserving.  And they didn't serve that plan exhibit on anyone.

24  They didn't unseal the dockets at that point.  They didn't even

25  ask for effective relief to seal the dockets in the context of

DPH HOLDINGS CORP., et al.

- 115 -

1   the plan or to seal a schedule in the plan that would have

2   listed the peoples' names.  What they said was, 'Oh, we already

3   got that relief a year and a half earlier and we're going to

4   get it again after the plan is confirmed because it worked so

5   well.  Let's just keep doubling down', all on the principal of

6   'We're protecting ongoing business relationships.'

7          And to say to people that you, as the defendant, have

8   to be on the watch and you have to come forward when you think

9   something unjust is happening, really shifts the burden on you.

10   You're saying you don't just have a burden to defend against

11   claims; you have a burden to actively monitor dockets and

12   actively ferret out when the debtors are doing things contrary

13   to your expectations.  Not just things that they would

14   ordinarily would be entitled to do, but when they're actually

15   burying claims and putting them to the back of the road, well

16   beyond the initial purpose which was just status quo and

17   nonprejudice.  Now, you have to spend the time and money -- at

18   what point is a creditor allowed to tell their attorneys, 'Stop

19   spending money.'?

20          I mean, doing the same math they had given you, if you

21   look at the third extension that was after the plan, you get

22   over to a million dollars in monitoring the docket, spending

23   fifteen minutes a pleading; whether it's the plan or any other

24   motion, times the number of 13,000 motions.  You're talking

25   about over a million dollars -- and you're smiling because the

DPH HOLDINGS CORP., et al.

- 116 -

1    answer is no one spends a million dollars monitoring these

2    cases --

3            THE COURT:  No, I know, but no one spends fifteen

4    minutes on every pleading, either.  You know that that --

5            MS. SCHWEITZER:  Take it in half, take it in a

6    quarter, take it in a eighth; tell me my rates are outrageous

7    at 500 dollars an hour.  I'm fine with that, but you're telling

8    the clients, every one of these 11,000 transferees, that they

9    have to spend the time monitoring all 13,000 pleadings to make

10   sure there's no 'Gotcha' in there, to make sure the debtor is

11   not still holding on to a claim against them.  Because it's not

12   only the 177 that survived, in the debtors' world --

13           THE COURT:  Well, what --

14           MS. SCHWEITZER:  -- it's all 11,000 people.

15           THE COURT:  -- I guess what's missing here is the

16   ability to know whether any of these movants got actual notice.

17   I mean, I find it hard to believe that none of them was aware

18   of what was going on.

19           MS. SCHWEITZER:  Well, I think there are different

20   levels of "aware of what was going on".  I think there's a

21   level of 'I didn't know anything that was going on because I

22   didn't even know that Delphi was in bankruptcy.'  Right?  I

23   mean, there's that level.

24           THE COURT:  Right.

25           MS. SCHWEITZER:  There's 'I knew that Delphi was in

DPH HOLDINGS CORP., et al.

- 117 -

1    bankruptcy but I didn't know about the statute of limitations'

2    or 'I did know and I didn't see this motion' or 'I didn't

3    understand this motion'.  And then there are people who got the

4    motion in the mail, maybe, maybe not, but even people who got

5    the motion in the mail, did they really know that they were a

6    defendant?  And I don't think the debtors have ever suggested

7    that they voluntarily told anyone.  And I can certainly say for

8    my clients, it wasn't the typical case where you get the letter

9    in the mail warning you.

10              THE COURT:  But it's the -- for me to dismiss all of

11   these complaints on this theory, it has to apply to that last

12   group, right?  Someone that got it in the mail, maybe even put

13   two and two together and said, 'Oh, I may be at risk here.

14   Well, I'll just, you know, I'll let it go by.'  Isn't it the

15   case that to dismiss these complaints, I have to -- on these

16   motions, I have to find that?

17              MS. SCHWEITZER:  I think you have to find that the

18   debtors -- and, again, this is where it looks back to the due

19   process issues, is that the debtors' wholesale took a position

20   and created a strategy which whatever good intentions they had

21   when they first asked for it and whatever their intentions were

22   even in the spring of 2008, took you down the path where the

23   wholesale matter -- it's unfair to let these proceedings go

24   forward.  And particularly when you see the complaints that are

25   at hand because this isn't over in terms of figuring out how

DPH HOLDINGS CORP., et al.

- 118 -

1    we've been sued and what the notice is.  When you look at the

2    sufficiency of the complaints --

3              THE COURT:  Well, that's a separate issue.  I

4    understand that issue.  That's a separate issue.

5              MS. SCHWEITZER:  I think it's a separate issue, but I

6    think that -- I mean, first, my answer would be yes.  You can

7    take notice of the fact that there's a passage of time, that

8    there's been not only two things, a lack of notice -- a lack of

9    adequate notice, and not only a lack of notice but a concerted

10   effort to hide the complaints, coupled with the fact of the

11   passage of time and the things that have happened over that

12   time, the defendants didn't have an opportunity during this

13   time to use those complaints to their advantage, quite frankly.

14   That the -- whether to get information from the debtors before

15   the business were sold and, quite frankly, taking the debtors'

16   explanation at face value, 'We wanted to preserve business

17   relationships because we didn't want adverse consequences to

18   flow from the knowledge that these complaints existed.'

19             What did that mean?  People could have said, 'I'm

20   doing business with you and I don't want to keep doing business

21   with you.'  'I'm doing business with you but I want these

22   claims settled, as a part of doing business with you.'  'I'm

23   not doing business with you, but I would happily trade away

24   some of these claims for doing business with you.'  'I got a

25   plan in the mail but you know what?  Everything is going so

DPH HOLDINGS CORP., et al.

- 119 -

1    smoothly with you, I'm going to say' --

2         THE COURT:  But, again, isn't that on a case-by-case

3    basis?  I mean, I -- as far as I can see, there's one case that

4    concludes that 4(m) relief was improperly granted and that case

5    wasn't on due process grounds.  The Ninth Circuit just said,

6    'You know, we don't really set a standard for when it's

7    improperly granted, but it was improperly granted.'  So, I

8    mean, it just seems to me that it's much more of a case-by-case

9    analysis, depending on the, you know, the harm that happened to

10   people.

11        MS. SCHWEITZER:  Right.  Well, I guess --

12        THE COURT:  With the exception -- let me stop you.

13        MS. SCHWEITZER:  Okay.

14        THE COURT:  With the exception that under Rule

15   60(b)(4), if someone really didn't get notice of the extension

16   motions, then it would seem to me they should be able to argue

17   to me as if the motions were being made right now, although

18   I'll hear the debtors on that.  But, that seems to be the way

19   to look at it.

20        MS. SCHWEITZER:  Right.  Well, Your Honor --

21        THE COURT:  And then, the notice that would trigger

22   the Rule 60(b)(4) analysis would be due process notice and

23   consistent with not only Espinosa, but Mulane and the like.

24   It's true, if -- if the notice was buried or confusing or the

25   like, then I would understand that, too, as a violation of due

DPH HOLDINGS CORP., et al.

- 120 -

1   process.  I mean, a Chapter 13 plan is probably a little easier

2   to deal with than a case that probably has a hundred docket

3   entries, than thousands.

4        MS. SCHWEITZER:  Well, I would certainly take the

5   position that you're in a position to find a per se violation

6   but I do believe that there are facts of prejudice that

7   ultimately could and would be shown.  And I've highlighted some

8   of those and I think some of those are universal but in the

9   interest of not stepping on Mr. Winsten's time and also --

10       THE COURT:  Okay.

11       MS. SCHWEITZER:  -- recognizing that there are other

12   arguments to be had, I think that if it's all right with Your

13   Honor, I'd move to the Rule 8 arguments.

14       THE COURT:  Well, who is -- okay.  But --

15       MS. SCHWEITZER:  Or would you like Mr. Winsten --

16       THE COURT:  -- I'm happy to get to those, I just --

17   who is covering Rule 4(f)?

18       MS. SCHWEITZER:  Mr. Winsten.

19       THE COURT:  Okay.  So, I'll wait for you, then.

20       MS. SCHWEITZER:  Would you like --

21       THE COURT:  So, no, no --

22       MS. SCHWEITZER:  -- I'd be happy to cede the podium --

23       THE COURT:  -- Rule 8 --

24       MS. SCHWEITZER:  I'm happy to cede the podium in any

25   order --

DPH HOLDINGS CORP., et al.

- 121 -

1        THE COURT:  I just don't -- I don't want to -- no,

2   actually, I should really hear from the debtors on this point

3   so that it doesn't get stale by the time they speak.

4        MS. SCHWEITZER:  Okay, that's fine, Your Honor.

5        THE COURT:  Okay?  Okay.  Which is, again, the due

6   process point and, as I view it, that's really two separate

7   points.  One is whether the simple fact that these complaints

8   were kept under seal and were not served until years after the

9   statute of limitations is a violation of due process.  And then

10  secondly, whether there was insufficient notice for due process

11  purposes of the extension motions and therefore they can be

12  heard as if, you know, in essence, the orders are void or they

13  should be considered brand new, on a brand new basis.

14        MR. FISHER:  Your Honor, to begin by addressing just

15  precisely those two points and then perhaps just to address

16  more broadly some of the points that Ms. Schweitzer raised.

17        THE COURT:  Okay.

18        MR. FISHER:  Your first question ,Your Honor, is

19  whether the fact that these complaints were filed under seal

20  before the statute of limitations but then not unsealed and

21  served until years later is itself some kind of per se

22  violation of due process.  Of course, our position is that that

23  is not the case.  There is no violation of due process here.

24        And the reason for that is because the right to repose

25  is simply not a recognized liberty interest, as Your Honor has

DPH HOLDINGS CORP., et al.

- 122 -

1   pointed out, under the Constitution.  And it's also the case

2   that all the movants -- the movants have not cited a single

3   case in which that kind of violation is a deprivation for

4   purposes of due process.  And as a threshold matter, in order

5   to find a due process violation, Your Honor would have to find

6   that the movants' Constitutional rights had been deprived in

7   some way as a result of this procedure.  They haven't been.

8          What we're talking about here, Your Honor, is not the

9   deprivation of a Constitutional right, but we're talking about

10  litigation prejudice.  And Courts deal with litigation

11  prejudice all the time and we don't mean in any way to minimize

12  the possibility that certain movants very well may have

13  suffered certain kinds of prejudice as a result of the

14  extensive delay here in unsealing and serving the complaints.

15         THE COURT:  Well, is it just litigation prejudice?

16  Can't it be other prejudice, too?  For example, someone that

17  bought a company in reliance on the limitations period expiring

18  if the, you know, where there's a very large claim?

19         MR. FISHER:  So, that's a fair point.  With respect to

20  the overwhelming majority of movements (sic), the kinds of

21  prejudice that are raised are witness' memories have faded or

22  documents may no longer be available.  And I would note that

23  overwhelmingly, those representations are couched in the

24  permissive:  "This may have happened."  So, in and of itself,

25  the claim of litigation prejudice at this point, in so many of

DPH HOLDINGS CORP., et al.

- 123 -

1    the motions, is speculative.  But, of course, to the extent

2    that that kind of prejudice can be shown on a case-by-case

3    basis, the Court will need to fashion ways to deal with the

4    consequences of that prejudice and protect any particular

5    movant from the consequences of that prejudice, on a case-by-

6    case basis.

7          With regard to other claims of prejudice, again, Your

8    Honor, such as the example that you raised where an entity

9    purchased this business without knowledge and without reason to

10   know that these preference claims had been filed against the

11   purchased entity, that is a claim of prejudice that needs to be

12   addressed in its own right, on a case-by-case basis.  It's

13   certainly not a per se -- it's not a Constitutional issue, but

14   it is prejudice that would need to be addressed.

15         THE COURT:  Okay.  What about the notice of the actual

16   motions, the extension motions?

17         MR. FISHER:  So, Ms. Schweitzer described a range of

18   kinds of notice that various movants may have gotten.  And I

19   suppose that the extreme case which really puts a point on the

20   question is the case which I expect Mr. Gottfried will speak

21   to, but you know, the case of Wagner-Smith, for example, where

22   that entity was not a creditor, wasn't on the creditor matrix

23   and, as far as we know, didn't receive actual notice of the

24   preservation order.  And even in that case, Your Honor, I would

25   say that there is no Constitutional deprivation; this is not a

DPH HOLDINGS CORP., et al.

- 124 -

1    Constitutional issue.  And the reason is because --

2            THE COURT:  No, but wouldn't -- because there wasn't

3    such notice, wouldn't the order not be effective as to them?

4            MR. FISHER:  The reason I don't think so, Your Honor,

5    is because under the Rules -- and I think that these orders,

6    the first preserva -- we're talking about four orders; the

7    first preservation order, which is the only order that directed

8    sealing and then extended the 4(m) deadline for the first time,

9    and then there were three extension orders that modified that

10   first order only with respect to the 4(m) deadline and any

11   other elements of that first order remained intact.

12           With regard to sealing and with regard to 4(m),

13   there's no requirement of notice.  Typically, in the 4(m)

14   context, or often in the 4(m) context, there's no notice to the

15   named defendant; the complaint hasn't been served yet.

16   Frequently, a defendant cannot be located.  But even where a

17   defendant potentially could be located, under Rule 6, where

18   someone moves for an extension of a deadline before expiration

19   of that deadline, which is what happened here -- I mean, yes,

20   there was extensive delay with regard to the unsealing and

21   service of these complaints, but the debtors were diligent with

22   respect to making sure that the deadlines were protected and

23   for seeking relief from this Court in advance of the expiration

24   of each 4(m) deadline.  There's no notice that's required.  And

25   under Bankruptcy Rule 9018 which governs sealing, similarly,

05-44481-rdd    Doc 20912-3    Filed 11/24/10    Entered 11/24/10 14:56:46    Exhibit C
Pg 14 of 28
DPH HOLDINGS CORP., et al.

- 125 -

1   there's no notice that's required.

2         So, in the absence of a notice requirement and in the

3   absence of proof of a deprivation, I don't see how there can be

4   a due process violation.  And I don't think that movants in

5   that position should be entitled to return to these orders as

6   though they had never been entered and make new arguments with

7   respect to those orders.

8         THE COURT:  But if you know the party is affected by

9   the relief, aren't they entitled to notice under 4(m)?

10        MR. FISHER:  Well, what's curious here, Your Honor, is

11   that -- and this goes to the rationale for sealing.  What

12   was -- these complaints don't contain state secrets; they

13   contain basic information about preferential transactions with

14   a whole host of defendants, most of which who were then current

15   suppliers to Delphi.  And it is, in fact, the fact that they

16   were named as defendants in the lawsuit.  That was the kind of

17   information that Delphi intended to seal and that is -- and the

18   reason is twofold.  It wasn't just because we didn't want to

19   disrupt then-current supplier relationships; although that is a

20   very important reason, because maintaining the supplier

21   relationships was critical to the reorganization proceeding.

22        THE COURT:  I understand your argument, but since they

23   didn't have the chance to respond to it, how should they be

24   bound by that order?  Since you knew who they were.  I mean,

25   why wouldn't it be covered by 60(b)(4)?

DPH HOLDINGS CORP., et al.

- 126 -

1          MR. FISHER:  I return, Your Honor, to Rule 6(b) and

2    Rule 9018, which provides that notice wasn't required.  And at

3    the end of the day, what happened to those movants, even the

4    rare movant who will claim that it didn't have any notice, is

5    that they are now subject to a complaint that was timely filed

6    but not served until well after expiration of the statute of

7    limitations.  And as a technical matter that's justified under

8    the Rules, to the extent that they've suffered any kind of

9    prejudice, that prejudice can and will be addressed by the

10   Court in the future, when the case is at an appropriate

11   juncture to do so.

12          Your Honor, I'd like to return to just some of the

13   points that Ms. Schweitzer made and respond to those, unless

14   Your Honor has additional questions on these two specific

15   points.

16          THE COURT:  Well, 9006(b) requires a showing of cause,

17   right?  And I guess the issue I have there is if they are not

18   given notice of anything that would let them know that this is

19   going on, how could one say that they are bound by an order

20   that says that it's for cause?  It means that they never had

21   the right either to dispute that or to appeal it.

22          MR. FISHER:  The -- first of all, Your Honor, as Your

23   Honor's aware, 4(m) does not require a showing of cause.

24          THE COURT:  I understand --

25          MR. FISHER:  But with regard to the 6(b) question, the

DPH HOLDINGS CORP., et al.

- 127 -

1    determination of cause was independent of what any movant would

2    say.  And that dovetails with the sealing because to invite

3    particular defendants into court and to say, 'You're the

4    subject of a preference action and we're going to put these on

5    hold for a while and if you have anything to say about that,

6    you know, come to court and be heard' defeats the purpose of

7    sealing.

8           THE COURT:  But they didn't know of it for the appeal

9    purposes either, right?  Anyway, I'll hear from the defendants

10   on this one.  You can go to the other points -- when you talk

11   on the other point.

12          MR. FISHER:  I think Ms. Schweitzer began by talking

13   about the history of the case.  And I think that in some sense,

14   as between the movants and the reorganized debtor -- debtors,

15   there are dueling versions of history here.  And the movants

16   are writing a kind of revisionist history.  Of course, from

17   2005 until Delphi emerged from bankruptcy in October 2009, the

18   spotlight was on the rehabilitation of Delphi and its emergence

19   from bankruptcy.

20          And now, we're out of that, and we're looking at these

21   claims that were preserved during the course of the

22   reorganization proceedings and asking what have the practical

23   consequences of that preservation been and how do we address

24   those consequences.  But the suggestion that there was, at any

25   point, some intent to delay or some intent to cause litigation

05-44481-rdd   Doc 20912-3   Filed 11/24/10   Entered 11/24/10 14:56:46   Exhibit C
Pg 17 of 28
DPH HOLDINGS CORP., et al.

- 128 -

1   harm to any party, is misplaced.

2         And when counsel referred to this Goldilocks idea that

3   at first the debtors had so much money that it made sense to

4   keep these cases under seal and not cause people to needlessly

5   incur expenses and not impose those expenses on the debtor,

6   because they were unlikely to ever be pursued, and then later

7   the debtor had so little money that it would have been

8   impossible and threaten the reorganization to be spending time

9   and money prosecuting those cases, I think that that gives

10  short shrift to what really happened in the course of the

11  bankruptcy.  And the truth is that as a result of these sealing

12  orders, there are at least 565 named defendants who are not

13  being prosecuted, who are not incurring costs to defend

14  litigation, who are not imposing costs on the estate with

15  regard to the prosecution of the litigation.  And were it not

16  for the sealing orders, there'd be a very different picture.

17         I think that when the Court looks at each order in its

18  context, it will be clear that there was a record sufficient to

19  justify entry of each order.  And what the movants are seeking

20  today, which is essentially to go back and truly rewrite

21  history and vacate these four orders, talk about prejudice.  I

22  mean the ultimate prejudice here would be to DPH, which

23  conscientiously tried to take steps to ensure that these

24  valuable assets -- potentially valuable assets of the estate,

25  would be preserved, in the event that it became necessary to

DPH HOLDINGS CORP., et al.

- 129 -

1    prosecute those actions.

2         To now go back and rewrite history and say that those

3    orders that were properly entered and that were relied upon by

4    the debtors are going to be undone, would deprive the

5    reorganized debtors of enormously valuable claims after the

6    fact.  And I think that because we're not talking about a

7    constitutional issue here, we ought to be talking about a

8    balancing of prejudice.  And I think, on the one hand, the

9    prejudice to the reorganized debtors is extreme, because the

10   consequences would be the wholesale loss of these claims that

11   they attempted to preserve conscientiously through motions to

12   this Court and validly entered orders of this court, on the one

13   hand; and on the other hand, a host of movants who are

14   differently situated, each of them suffering particularized, or

15   claiming --

16         THE COURT:  But the response is going to be, how could

17   Delphi rely upon relief that was obtained without proper

18   notice.  I mean, that's going to be the response.  No lawyer

19   would rely on it.

20         MR. FISHER:  Well, Your Honor, as to the vast majority

21   of these cases, I don't think that there's a serious question

22   as to notice.  I mean, these -- the motions were served to the

23   entire creditor matrix.  They were entered on the docket.  The

24   plan and disclosure statement, it didn't require monitoring the

25   docket.  It was a public filing attached to Delphi's 8-K in

- 130 -

1    December 2007.  The preservation order provided that Delphi

2    could disclose the name of any particular defendant, if that

3    defendant inquired.

4         And so there was a fair amount of notice here to the

5    parties.  Also it was noted on the record with regard to the

6    first preservation motion and thereafter, that this entire

7    procedure was reviewed by both statutory committees, which is

8    an important thing to remember, because, of course, we're

9    talking in the first instance, about a context in which there's

10   an equity committee, and there's an expectation that everyone's

11   going to be paid in full and that all of these cases are going

12   to go away.

13        THE COURT:  Well, the equity committee reviews really

14   doesn't help at all.  But the creditors' committee review has

15   some -- helps your case somewhat.

16        MR. FISHER:  The creditors' committee reviewed it.

17   They have fiduciary duties to all of the unsecured creditors.

18   They did not object.  They approved the procedures.  And notice

19   was disseminated to the entire creditor matrix.  It was very

20   widespread notice.  There may be -- I'm aware of Wagner-Smith,

21   and we'll hear from Mr. Gottfried.  There may be a defendant

22   that received no notice.  But even there, as I've already

23   argued, I don't think that notice was required under the rules

24   with respect to the relief that was being sought, which is

25   sealing and a 4(m) extension.

DPH HOLDINGS CORP., et al.

- 131 -

1        THE COURT:  Sealing of the complaints?

2        MR. FISHER:  Yes, sealing of the complaints.

3        THE COURT:  All right.  Okay.  I'm assuming your

4    response to the point that the committee wants to maximize the

5    value of this estate is that, in fact, creditors' committees

6    very often look out for vendors who've received potential

7    preferences, and often bargain on their behalf too, right?

8        MR. FISHER:  Yes.  But the rationale for the -- in

9    terms of the costs that were saved as a result of the sealing,

10   it's enormous costs to the estate, because hundreds of

11   defendants who never ended up getting sued would have retained

12   counsel, would have engaged in 26(f) conferences, would have

13   begun to litigate preference cases that ultimately never saw

14   the light of day.

15       And Ms. Schweitzer refers to how much it would cost to

16   monitor the docket to find out whether there was an order that

17   could potentially be of interest to a party that received a

18   payment during the ninety days before Delphi filed for

19   bankruptcy.  Well, think about how much more it would cost in

20   expenses, both to defendants and to the estate, if 742 cases

21   that weren't going to get prosecuted were filed, served,

22   counsel was retained, and litigation was begun.

23       THE COURT:  Okay.

24       MR. FISHER:  Unless Your Honor has further questions,

25   I'll --

DPH HOLDINGS CORP., et al.

- 202 -

1        The movants' complaint that we haven't identified the

2    specific debtor entity that made the transfer, and we haven't

3    identified the specific transferee.  And --

4        THE COURT:  And that there's an antecedent debt.

5        MR. FISHER:  An antecedent debt.  And I think that the

6    debtors have no choice but to concede that under Twombly and

7    Iqbal, more detailed pleading would be required, at least

8    according to some of the more recent cases, although, I don't

9    know that there's a controlling case in this circuit yet

10    describing exactly what that standard would entail.

11        And what we've attempted to do, and what we suggested

12    in our opposition brief, was a practical way of cutting through

13    this, and, essentially treating it as similar to a 12(e) motion

14    and saying that to the extent that there's any defendant who

15    cannot prepare its answer to this complaint, because knowing

16    the date and the amount of the transfer is insufficient to

17    allow it to track down the relevant information, we will

18    supplement that and provide whatever additional information is

19    needed in order to put them in a position to be able to respond

20    to the complaint, which, at the end of the day, is what Rule 8,

21    even after Twombly and Iqbal, is all about.

22        And so we're simply trying to be practical here.

23        THE COURT:  Well, is there any -- two things.  Is

24    there any authority for the notion and -- I guess Twombly was

25    after these were filed, too?

DPH HOLDINGS CORP., et al.

- 203 -

1        MR. FISHER:  Yes.

2        THE COURT:  Is there anything in the notion that you

3    don't have to comply with them because it was filed beforehand?

4        MR. FISHER:  I don't think that there's a case

5    directly on point.  Because, again, we have a situation where

6    the case was filed before Twombly and Iqbal and then served

7    after.  I'm not aware of a case that's directly on point.  So

8    the question is how to bring these cases up to --

9        THE COURT:  So then --

10        MR. FISHER:  -- date with the new pleading standards.

11        THE COURT:  Well, and on that, shouldn't there be a

12    motion to amend?  I mean, is there any authority for the

13    mechanism you're proposing?  I mean, if there's merit to the

14    argument that you had filed these complaints under the laws

15    that existed at the time, and there's, certainly, you know, the

16    case law in the Southern District, was probably more on your

17    side on that than not.  As far as what you needed to show back

18    then, wouldn't that just be a factor I'd take into account

19    among other factors in your motion to amend?  And then we'd

20    have an amended complaint and everyone would know the complaint

21    that they were looking to.

22        You know, if, in fact, you weren't able to show an

23    antecedent debt, or you weren't able to show which debtor made

24    the transfer, then, you know, there'd be a complaint that

25    someone could move to dismiss even if, you know, I thought

05-44481-rdd   Doc 20912-3   Filed 11/24/10   Entered 11/24/10 14:56:46   Exhibit C
Pg 23 of 28
DPH HOLDINGS CORP., et al.

- 204 -

1    there was enough to let the complaint be filed.  But at least

2    they'd see it as a -- and that could be one of their factors in

3    objecting to the motion to amend, is that this complaint has no

4    chance of succeeding because they still haven't identified the

5    transferor, for example.

6         MR. FISHER:  We think that's there's something very

7    technical about the argument that's being made here.  And that

8    as a practical matter, based on the information that is

9    supplied in the complaint, the movants are in an adequate

10   position to respond intelligently to the complaint.

11        Sure, we could bring a motion seeking leave to amend

12   these complaints.  Alternatively, if the Court is going to rule

13   that the complaints need to be repled to comply with the

14   Twombly/Iqbal standard, we could do that.

15        THE COURT:  Well, I guess I want to go back to my

16   earlier question.  I haven't seen a solution like the one

17   you've proposed; do you have authority for that?

18        MR. FISHER:  I don't have a case, Your Honor --

19        THE COURT:  Okay.

20        MR. FISHER:  -- that essentially converts a 12(b)(6)

21   motion to a 12(e) motion.  But conceptually that is what we had

22   in mind.  But if the problem is if 12(e) requires more

23   information than what had been --

24        THE COURT:  I think it's more than just having the

25   defendant come to you and say I'm puzzled, I don't know how to

- 205 -

1   defend.  I think it is an affirmative requirement to state a

2   claim.  And under Iqbal and Twombly and the cases, including

3   Judge Gonzalez' case on preferences, there's certain key

4   elements of the claim that require more than just the -- a

5   recitation of the elements of the claim.  I mean, that's really

6   the -- that's really Twombly as opposed to Iqbal.

7           MR. FISHER:  Right.

8           THE COURT:  And that's, you know, basically, who made

9   the transfer, and what was the antecedent debt?  Something,

10  other than just saying it was for antecedent debt.  I mean, I

11  think by listing the amount and the date, I think it was

12  implicit that you're saying its defendant.  But maybe I'm wrong

13  about that.  If you're asserting against some of the people 550

14  relief then you probably should say how they got it.

15          MR. FISHER:  Well, I think that it's just that --

16          THE COURT:  Not immediate -- not the transferee but

17  subsequent transferee relief.

18          MR. FISHER:  The strange thing about applying Twombly

19  and Iqbal to a preference case is that what does it mean to say

20  that a preference claim is plausible?  I mean, it's plausible

21  that Delphi paid these defendants the amounts that are

22  indicated on the complaint on the dates that are indicated.

23  And it's plausible that those payments were on account of

24  antecedent debt.

25          THE COURT:  First of all, it's not Delphi, there's

05-44481-rdd    Doc 20912-3    Filed 11/24/10    Entered 11/24/10 14:56:46    Exhibit C
Pg 25 of 28
DPH HOLDINGS CORP., et al.

- 206 -

1    like forty-two debtors here.  So it's not listed who did this.

2    I think that's important.  And that leaves the issue of

3    antecedent debt.

4         I'm somewhat sympathetic to your point on that,

5    although, the three judges that have considered this, including

6    Judge Gonzalez, aren't.  They all emphasize the need to say

7    something about the antecedent debt, other than the conclusory

8    statement that there's antecedent debt.  Your point is well,

9    why would any of the debtors be paying anyone unless there was

10   an antecedent debt?

11        Well, the thing is it may not be antecedent, they may

12   be paying in advance, they may be paying that day; COD.  You

13   know, that's the response I think.

14        MR. FISHER:  And, Your Honor, it is important to say

15   which debtor entity we're talking about.  It is important to

16   say exactly which transferee we're talking about.  As a

17   practical matter --

18        THE COURT:  Let me say -- I'm going to cut you short.

19        MR. FISHER:  Yes.

20        THE COURT:  As a -- it seems to me the problem with

21   what you're proposing is that you may not have a basis to say

22   in your books and records that -- at least for the face of the

23   complaint, that defendant X was owed a debt, that this was a

24   payment on account of you may not have it.  And I think your

25   method basically sort of puts the onus on them to make that

DPH HOLDINGS CORP., et al.

- 207 -

1    part of your case for you.

2        MR. FISHER:  What we're trying to avoid, Your Honor,

3    is a situation where we now go back and correct these

4    complaints by identifying the specific entities where we think,

5    as a practical matter, the movants know full well by checking

6    their own records --

7        THE COURT:  But that's not -- that's not -- I don't

8    think that's the test, because, again, that shifts the burden

9    of proof.  You know, you basically force them to show we don't

10   know.

11       MR. FISHER:  Well, then, we go back and we provide

12   them with this information.  We could provide it to them in

13   documentary form under 12(e), or we could provide it to them in

14   the form of an amended complaint.

15       THE COURT:  To me that's --

16       MR. FISHER:  And then say it's a new motion to

17   dismiss.

18       THE COURT:  To me that's part of the merits of a

19   motion to amend.  If, in fact, they knew and it's no big deal

20   and they know -- they've always known this, then that's a fact

21   in your favor as well as the fact that the law changed.  You

22   know, but I think it should all be viewed in the context of a

23   motion to amend.

24       Now, I have not reviewed every complaint.  But as I --

25   I've reviewed enough to see that I think they're form

DPH HOLDINGS CORP., et al.

- 213 -

1          Requiring for them to do all those things seems to me

2    to be the minimum of fairness --

3          THE COURT:  Well, look, it's a motion for leave to

4    amend the complaint on unusual circumstances.  It's really

5    their risk if I turn them down again, right?  So --

6          MR. WINSTEN:  My only point was that it should be

7    Iqbal plus, not Iqbal minus.

8          THE COURT:  Well, I don't know what that means.  And,

9    frankly, I think the Supreme Court's been pretty careful not to

10   turn Iqbal into a plus.

11         MR. WINSTEN:  Right.

12         THE COURT:  So --

13         MR. WINSTEN:  But these are our --

14         THE COURT:  But I think that the risk of being turned

15   down on the basis of the complaint still isn't good enough is a

16   serious enough -- the consequences of that are serious enough

17   so I assume that the plaintiffs are going to be pretty careful.

18         MR. WINSTEN:  A suggestion when we get there is that

19   they ought to attach a draft --

20         THE COURT:  Well, you have to do that.

21         MR. WINSTEN:  Yes.  So we know --

22         THE COURT:  Yeah, absolutely.

23         MR. WINSTEN:  -- what the form's going to be.

24         THE COURT:  Got to do that.

25         MR. WINSTEN:  Let me move to assumed contracts.  This

DPH HOLDINGS CORP., et al.

- 277 -

1   re Hydrogen, LLC, 2010 WL 1609, 536 (Bankr. S.D.N.Y., April 20,

2   2010).  In re McLaughlin, 415 B.R. 23 (Bankr. D.N.H. 2009)

3   In re Caremerica Inc., 409 B.R. 737 (Bankr. E.D.N.C. 2009).

4           I've stated during oral argument why I believe all

5   three of these elements of the claim need to be pled with more

6   clarity in the context.  In particular, while it may seem at

7   first glance that anyone receiving money has to receive it for

8   some purpose and therefore it's reasonable to infer in the

9   context that that purpose is to pay an antecedent debt, that is

10  not always the case.  Debtors may pay COD or in advance.  And

11  in addition, in identifying the debt, a complaint may therefore

12  also enable a debtor to show that the creditor, or the

13  transferee, rather, received more than it would otherwise in a

14  Chapter 7 case which would, in the case of a contract that had

15  been subsequently assumed, be a basis for dismissing the claim.

16          So I concluded that the complaints need to be

17  dismissed, and I've given DPH Holdings forty-five days from

18  today to file a motion for each complaint seeking leave to

19  amend each complaint.  That motion should attach the form of

20  complaint -- or must attach the form of complaint that would be

21  proposed to be filed as an amended complaint.  And if such a

22  motion is not filed for any particular complaint, that

23  complaint will be dismissed upon the movant submitting to me a

24  proposed order dismissing the complaint, CC'ing on the e-mail

25  counsel for DPH and stating that in fact notwithstanding my