**Hearing Date and Time:  February 17, 2011 at 10:00 a.m.**
**Reply Deadline:  January 28, 2011**

Shalom Jacob
Zachary D. Silbersher
LOCKE LORD BISSELL & LIDDELL LLP
Three World Financial Center
New York, New York 10281-2101
Tel:  (212) 415-8600
Fax: (212) 303-2754

-and-

Courtney E. Barr (CE 7768)
LOCKE LORD BISSELL & LIDDELL LLP
111 South Wacker Drive
Chicago, Illinois  60606
Tel:  (312) 443-0700
Fax: (312) 443-0336

*Counsel for D&R Technology, LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 11 |
| DPH HOLDINGS CORP., et al., | Case No. 05-44481 [RDD] |
| Reorganized Debtors. | (Jointly Administered) |

-------------------------------------------------x
DELPHI CORPORATION, et al.,

Plaintiffs,

v.                                                        Adv. Pro. No. 07-02212 [RDD]

D & R TECHNOLOGY LLC, AND
D AND R TECHNOLOGY LLC,

Defendant.

-------------------------------------------------x

**D&R TECHNOLOGY, LLC'S OBJECTION TO THE REORGANIZED**
**DEBTORS' MOTION FOR LEAVE TO FILE AMENDED COMPLAINTS**

# TABLE OF CONTENTS

**Pages**

I.      INTRODUCTION ................................................................................................1

II.     THE EXTENSION ORDERS SHOULD BE VACATED AND THIS ACTION
        DISMISSED FOR DEFECTIVE SERVICE ....................................................4

      A.    The Extension Orders Should Be Vacated Because D&R Did Not Receive
              Notice...............................................................................................................4

      B.    The Extension Orders Should Be Vacated Because They Improperly
              Granted Relief Inconsistent With The Confirmed Plan.......................................10

      C.    The Extension Orders Should Be Vacated Because They Deprived D&R
              of Procedural Due Process..................................................................................14

      D.    The Extension Orders Should Be Vacated Because Good Cause Did Not
              Exist Under Rule 4(m).......................................................................................16

      E.    The Extension Orders Should Be Vacated Because of the Equitable
              Doctrine of Unclean Hands..................................................................................18

III.    LEAVE TO AMEND SHOULD BE DENIED BECAUSE THE REORGANIZED
        DEBTORS WERE CHARGED WITH NOTICE OF THEIR DEFICIENTLY
        PLED COMPLAINTS FROM THE DATE OF THE *IQBAL* DECISION ....................19

IV.     THE AMENDED COMPLAINTS VIOLATE THE DISMISSAL ORDER AND
        FAIL TO SUFFICIENTLY PLEAD A PREFERENCE CLAIM UNDER
        *IQBAL'S* ELABORATED STANDARD ..................................................................21

      A.    The Amended Complaint Fails to Sufficiently Plead Facts Showing the
              Alleged Transfers Were on Behalf of an Antecedent Debt ...................................22

      B.    The Amended Complaint Fails to Sufficiently Plead the Alleged Transfers
              Were Made on Account of Debts Specifically Owed By DAS ............................25

      C.    DAS Has No Alleged Authority To Bring This Action.........................................26

      D.    The Amended Complaint Fails to Sufficiently Plead DAS Was Insolvent ...........27

V.      THE PROPOSED AMENDED COMPLAINT FAILS TO PLAUSIBLY STATE
        A CAUSE OF ACTION BECAUSE THE ALLEGED TRANSFERS FALL
        UNDER THE ORDINARY COURSE EXCEPTION AS A MATTER OF LAW ...........28

VI.     GRANTING LEAVE TO FILE THE AMENDED COMPLAINTS WILL
        PREJUDICE D&R.................................................................................................29

VII.    INCORPORATION OF OTHER DEFENDANTS' BRIEFS ...........................................31

D&R hereby incorporates all of the other arguments raised by the other preference
    defendants in opposition to the Reorganized Debtors' motion for leave to file the
    Amended Complaints.....................................................................................................31

VIII.     CONCLUSION.............................................................................................................32

# TABLE OF AUTHORITIES

**PAGES**

**Federal Cases**

*Ahern v. Neve*,
  285 F.Supp.2d 317 (E.D.N.Y. 2003) ................................................................ 16

*Ashcroft v. Iqbal*,
  129 S.Ct. 1936 (2009) .......................................................................... 2, 19

*Barcia v. Sitkin*,
  367 F.3d 87 (2d Cir. 2004) ........................................................................ 15

*Browning v. Levy*,
  283 F.3d 761 (6th Cir. 2002) ..................................................................... 12

*Burnett v. N.Y. Cent. R.R. Co.*,
  380 U.S. 424 (1965) ............................................................................... 17

*D & K Properties Crystal Lake v. Mutual Life Insurance Co. of N.Y.*,
  112 F.3d 257 (7th Cir. 1997) ..................................................................... 12

*Diversified Hospitality Group, Inc. v. Carson Pirie Scott & Co.*,
  1991 WL 35953 (S.D.N.Y. Mar. 8, 1991) ........................................................... 16

*Efaw v. Williams*,
  473 F.3d 1038 (9th Cir. 2007) .................................................................... 17

*Elsady v. Rapid Global Business Solutions, Inc.*,
  2010 WL 742900 (E.D. Mich. Feb. 26, 2010) ....................................................... 21

*Goldin Associates, L.L.C. v. Donaldson, Lufkin & Jenrette Securities Corp.*,
  00 Civ. 8688, 2004 WL 1119652 (S.D.N.Y. May 20, 2004) ........................................... 12

*Grannis v. Ordean*,
  234 U.S. 385 (1914) ............................................................................... 14

*In re American Preferred Prescription, Inc.*,
  266 B.R. 273 (E.D.N.Y. 2000) ...................................................................... 12

*In re BCE West, L.P.*,
  2008 WL 565262 (Bankr. D. Ariz. 2008) ............................................................ 28

*In re Bennett Funding Group*,
  220 B.R. 739 (Bankr. 2d Cir. 1998) ............................................................... 22

*In re Caremerica, Inc.*,
  409 B.R. 346, 351 (Bankr. E.D. N.C. 2009) ........................................................ 23

*In re Charys Holding Co., Inc.*,
  No. 10-50211, 2010 WL 2788152 (Bankr. D. Del. Jul. 14, 2010) ..................................... 22

*In re C-TC 9th Avenue Partnership*,
  113 F.3d 1304 (2d Cir. 1997) ..................................................................... 19

*In re Federated Dep't Stores*,
  44 F.3d 1310 (6th Cir. 1995) ..................................................................... 20

TABLE OF AUTHORITIES (CONTINUED)

**PAGES**

*In re Fleet Nat'l Bank v. Gray (In re Bankvest Capital Corp.)*,
  375 F.3d 51 (1st Cir. 2004) ................................................................................ 15

*In re Galerie Des Monnaies of Geneva, Ltd.*,
  62 B.R. 224 (S.D.N.Y. 1986) .............................................................................. 13

*In re Hamilton*,
  179 B.R. 749 (Bankr. S.D. Ga. 1995) ................................................................. 15

*In re Hooker Investments, Inc.*,
  162 B.R. 426 (Bankr. S.D.N.Y. 1994) ................................................................ 12

*In re Hydrogen, L.L.C.*,
  431 B.R. 337 (Bankr. S.D.N.Y. 2010) ................................................................ 25

*In re Johnson*,
  189 B.R. 744 (Bankr. N.D. Iowa 1995) .............................................................. 28

*In re Kolstad*,
  928 F.2d 171 (5th Cir. 1991) .............................................................................. 15

*In re Meyer's Bakeries, Inc.*,
  400 B.R. 701 (Bankr. W.D. Ark. 2009) .............................................................. 28

*In re Middleton Arms. Ltd. Partnership*,
  934 F.2d 723 (6th Cir. 1991) .............................................................................. 20

*In re Morse v. Perrotta (In re Perrotta)*,
  406 B.R. 1 (Bankr. D. N.H. 2009) ...................................................................... 16

*In re Pembroke Development Corp.*,
  122 B.R. 610 (Bankr. S.D. Fla. 1991) ................................................................ 28

*In re Planet Hollywood Int'l*,
  274 B.R. 391 (Bankr. D. Del. 2001) ................................................................... 13

*In re Roblin Industries, Inc.*,
  z8 F.3d 30 (2d Cir. 1996) .................................................................................... 28

*In re Tippins*,
  221 B.R. 11, (Bankr. N.D. Ala. 1998) ................................................................ 13

*In re Wedgewood Hotel Co., American Nat. Bank & Trust Co. of Chicago*,
  125 F.2d 327 (7th Cir. 1942) .............................................................................. 13

*Motorola Credit Corp. v. Uzan*,
  561 F.3d 123 (2d Cir. 2009) ............................................................................... 19

*Mullane v. Central Hanover Bank & Trust Co.*,
  339 U.S. 306 (1950) ............................................................................................ 14

*Precision Instrument Mfg. Co. v. Automotive Maintenance Mach. Co.*,
  324 U.S. 806, 65 S.Ct. 993, 89 L.Ed. 1381 (1945) ........................................... 19

*Rosenshein v. Kleban*,
  918 F. Supp. 98 (S.D.N.Y. 1996) ....................................................................... 14

*Stoll v. Gottlieb*,
  305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104 (1938) ............................................. 12

**TABLE OF AUTHORITIES (CONTINUED)**

<u>**PAGES**</u>

*Sure-Snap Corp. v. State St. Bank and Trust Co.*,
   948 F.2d 869 2d Cir. 1991) ................................................................................................. 12

*Tennessee Chemical Co.*,
   112 F.3d 234 (6th Cir. 1997) ............................................................................................. 28

*Weigner v. City of New York*,
   852 F.2d 646 (2d Cir. 1988) ............................................................................................. 15

*Zahra v. Town of Southold*,
   48 F.3d 674 (2d Cir. 1995) ............................................................................................... 30

**State Cases**

11 U.S.C. § 327(a) ................................................................................................................ 20

11 U.S.C. § 546(a) ........................................................................................................... 16, 17

11 U.S.C. § 547(c)(2) ............................................................................................................ 28

28 U.S.C. § 2075 ................................................................................................................... 16

**Federal Statutes**

Fed. R. Bankr. P. 7004(a) ....................................................................................................... 5

Fed. R. Bankr. P. 9024 ........................................................................................................... 4

Fed. R. Civ. P. 60(b) .............................................................................................................. 4

Fed. R. Civ. P. Rule 4(m) ........................................................................................ 4, 9, 16, 17

Defendant D&R Technology, LLC ("D&R") submits this objection to the Reorganized Debtors'[1] Motion for Leave to File Amended Complaints (the "Motion").  In support of the Objection, D&R submits the *Declaration of Anthony W. Urban in Support of D&R Technology, LLC's Objection to the Reorganized Debtors' Motion for Leave to File Amended Complaints*, a copy of which is attached hereto as Exhibit A (hereinafter, the "Urban Decl.").

## I.    INTRODUCTION

This is not a typical Rule 15 motion.  Far from it.

At the outset, D&R never received any notice whatsoever—electronic, mail, overnight—of the Preservation of Estate Claims Procedure Motion (as defined below) and D&R did not receive notice of the motions extending time to serve the Original Complaint as required by the Notice Procedures Order (as defined below).  On this basis alone, the orders extending the time for the Reorganized Debtors' to serve the complaints were invalid and should be vacated.  And this action should be dismissed.

On July 22, 2010, this Court heard argument on the motions to dismiss some of the Adversary Proceedings, and ruled that "the complaints as filed and served do not satisfy the pleading requirements of Rule 7008, incorporating Rule 8 of the Federal Rules of Civil Procedure."  (Transcript[2], p. 275).  The Reorganized Debtors now seek leave to amend the Original Complaints.  They rely chiefly on the premise that Rule 15 is to be "liberally construed."  (Motion, p. 14-15).  But in order for the Court to find that this is a typical Rule 15 motion and permit the filing of Amended Complaints, the Reorganized Debtors would have to convince the Court  to ignore all the salient facts and circumstances surrounding this Adversary

---

[1]  Capitalized terms used herein but not defined shall have the same meaning given to them in the Motion.

[2]  Citations to the transcript of the July 22, 2010 hearing will hereinafter be to ("Transcript").

Proceeding.  Specifically, the Reorganized Debtors want this Court to forget that they

manipulated and orchestrated the bankruptcy process to their own advantage much to the

prejudice of this defendant.

The Reorganized Debtors wants the Court to ignore the fact that they are seeking leave to

amend complaints that were originally filed over three years ago and remained under seal for

most of that time.  In light of these circumstances, all doubts regarding granting the freedom to

amend should be resolved in favor of D&R..

Reorganized Debtors argue that they should now be afforded the opportunity to fix their

complaints (Motion, pp. 7-8) because *Ashcroft v. Iqbal*, 129 S.Ct. 1936 (2009) was decided after

they filed the Original Complaints.  (Motion, pp. 7-8).  But they ignore the fact that they sat on

the unsealed, unserved complaints for months following *Iqbal* without making any attempt to

amend them in order to satisfy the elaborated pleading standard that *Iqbal* announced.

They want the Court to also ignore the significant  prejudice to D&R should the

Amended Complaint be allowed.  The Reorganized Debtors claim that leave to file the proposed

Amended Complaint will not prejudice D&R because "The same transactions are the basis for

the Preference Claims in both the Original Complaints and the Amended Complaints."  (Motion,

p. 13).  They ignore that the Original Complaints were filed under seal over three years ago, that

they remained under seal for most of that time, and that during that time, as demonstrated below,

D&R acted in reliance—to its detriment—on the presumption that any preference liability it

might have had to the Reorganized Debtors was long extinguished by the statute of limitations.

The Reorganized Debtors also want the Court to ignore that that they misrepresented the

notice given to D&R.  They want the Court to forget the fact that for over three years, while the

Original Complaints remained under seal, D&R never received the notice it was entitled under

this Court's guidelines for effectuating notice. The Reorganized Debtors want the Court to

ignore the fact that they misrepresented to this Court—in the course of moving for no less than

four extensions to serve the Original Complaints—that proper notice was given pursuant to this

Court's guidelines, and based on those false representations, this Court's granted the extensions.

They also want the Court to ignore the fact that, at the time those extension orders were

granted, the confirmed plan of reorganization expressly disclaimed the right to bring this action.

Thus, the orders in contravention of the plan—granting extensions of time to bring actions barred

by *res judicata*—were invalid. That alone warrants denial of leave to amend and dismissal of

this action with prejudice.

Finally, the Reorganized Debtors wants the Court to find that the proposed Amended

Complaint satisfies Rule 8 following *Iqbal*. But they ignore that the allegations are missing key

ingredients for adequately pleading a preference claim. This Court ruled on July 22, 2010 that

"the Court must assess the factual allegations in the context of the elements of the claim to

determine whether they plausibly suggest entitlement to relief." (Transcript, p. 275-76). The

proposed Amended Complaint contains insufficient factual allegations to plausibly plead: (i) that

the alleged Transfers were on account of an antecedent debt; (ii) that the alleged Transfers were

on account of debts owed by DAS; (iii) that DAS has the authority to bring this action; and (iv)

that DAS was plausibly insolvent at the time of those Transfers.

Although the Reorganized Debtors try to paint this as a typical Rule 15 motion, it is not

typical. Leave to amend a complaint is ***not*** "freely granted" where, as here, the plaintiff

concealed the action from the defendant for years – obtaining extension after extension to serve

the defendants with notice of the claim. And then, Reorganized Debtor misrepresented to the

court that service had been properly effected! This underhanded conduct unduly prejudiced the

defendant who acted in reliance on the presumed repose.  But in any event, now that the

defendants have finally learned about the claim, it is apparent that the allegations are woefully

lacking in substance.

Leave to amend should be denied.

## II.    THE EXTENSION ORDERS SHOULD BE VACATED AND THIS ACTION DISMISSED FOR DEFECTIVE SERVICE

Fed. R. Civ. P. 60(b), as made applicable by Fed. R. Bankr. P. 9024, provides, in relevant

part:

> On motion and just terms, the Court may relieve a party or its legal
> representative from a final judgment, order or proceeding for the
> following reasons: . . . (6) any other reason that justifies relief.

For the following reasons, the Extension Orders should be vacated, and this action

dismissed for defective service.

### A.    The Extension Orders Should Be Vacated Because D&R Did Not Receive Notice

As explained in more detail below, D&R received no notice <u>whatsoever</u> of the

Reorganized Debtor's Preservation of Estate Claims Procedure Motion (as defined below) and

D&R did not receive notice of the motions to extend the time to serve the Original Complaints,

as required by the Notice Procedures Order (as defined below).

At the July 22, 2010 hearing on the Motions to Dismiss, this Court instructed that if a

defendant to one of the preference cases "didn't get notice, it's wide open and I should look at it

as whether . . . it was appropriate to have entered those orders."  (Transcript, p. 103).  D&R did

not receive any notice whatsoever—electronic, mail, overnight, or otherwise--of the Preservation

of Estate Claims Procedure Motion and D&R did not receive notice of the subsequent extension

motions as required by the Notice Procedures Order.  Thus, the corresponding orders were

invalid against it, service was defective, and this case should be dismissed pursuant to Rule 4(m)

of the Federal Rules of Civil Procedure, as incorporated by Federal Bankruptcy Rule 7004(a).

On this basis alone, leave to amend the Complaint against D&R should be denied.

During the above-captioned bankruptcy proceeding, the Reorganized Debtors filed four

separate motions between 2007 and 2009 for orders permitting the filing of the Original

Complaint under seal and extending the deadline to serve process in the Adversary Proceeding.

These motions included:

- Preservation of Estate Claims Procedure Motion,[3] filed August 6, 2007 [Docket No. 8905];

- Extension of Avoidance Action Service Deadline Motion, filed February 28, 2008 [Docket No. 12922], (hereinafter referred to as the "First Extension Motion"); \

- Postconfirmation Extension of Avoidance Action Service Deadline Motion, filed April 10, 2008 [Docket No. 13361] (hereinafter referred to as the "Second Extension Motion"); and

- Supplemental Postconfirmation Extension of Avoidance Action Service Deadline Motion, filed October 2, 2009 [Docket No. 18952] (hereinafter referred to as the "Third Extension Motion").

Collectively, these motions will be referred to as the "Extension Motions".  Each of the

foregoing motions resulted in an order, which, for the most part, granted the relief requested.

Those orders included:

- Preservation of Estate Claims Procedure Order, entered August 16, 2007 [Docket No. 9105].

- Extension of Avoidance Action Service Deadline Order, entered March 28, 2008 [Docket No. 13277], (hereinafter referred to as the "First Extension Order");

- Postconfirmation Extension of Avoidance Action Service Deadline Order, entered April 30, 2008 [Docket No. 13484], (hereinafter referred to as the "Second Extension Order");

- Postconfirmation Extension of Avoidance Action Service Deadline Order, entered October 22, 2009 [Docket No. 18999], (hereinafter referred to as the "Third Extension Order").

---

[3] For brevity's sake, the motions and orders are referred to by their abbreviated titles, as they appear on the cover page of each motion and order, respectively.

The foregoing orders will hereinafter be referred to collectively as the "Extension Orders".

Each of the four Extension Motions state that notice of the motion was provided in accordance with the Court's earlier order that established notice procedures (the "Notice Procedures Order").[4]

The Notice Procedures Order provides general guidance regarding when electronic notice of "Filings" is sufficient. Specifically, the order states,

> [e]very Filing and Adversary Pleading (as defined below) shall be electronically filed on this Court's Electronic Filing System . . . [and] [e]ach party who files a notice of appearance and a request for service of papers (a 'Notice Request') shall be deemed to have consented to electronic service of Filings and Adversary

---

[4] This order was titled: Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m) 9006, 9007, and 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And Administrative Procedures, entered March 20, 2006 [Docket No. 2883].

In addition to the Notice Procedure Order, each of the four motions referenced an additional order pursuant to which notice of that respective motion was made. Specifically, the Preservation of Estate Claims Procedure Motion referenced the Amended Eighth Supplemental Order Under 11 U.S.C. §§ 1021(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9006, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And Administrative Procedures, entered October 26, 2006 [Docket No. 5418], the First Extension Motion and the Second Extension Motion referenced the Tenth Supplemental Order Under 11 U.S.C. §§ 1021(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9006, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And Administrative Procedures, entered February 4, 2008 [Docket No. 12487], and the Fourth Extension Motion referenced the Fifteenth Supplemental Order Under 11 U.S.C. §§ 1021(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9006, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And Administrative Procedures, entered August 27, 2009 [Docket No. 18839].

Each of these additional orders merely confirmed that the notice guidelines provided in the Notice Procedures Order remain in effect, and none of them add any substantive amendments to the Notice Procedures Order that are relevant to service of the motions upon D&R beyond what is provided in the Notice Procedures Order.

>Proceedings, in accordance with Section II(B) of the Electronic
>Procedures.[5]

(Notice Procedures Order, ¶¶ 8-9, pp. 4-5).

The Notice Procedures Order provides specific guidance on providing notice to parties with a particularized interest in the Filing.  Specifically, the order states,

>[a]ll Filings shall be served (a) via overnight mail upon all parties
>with a particularized interest in the subject of the Filing . . . and (b)
>by electronic transmission or fax on each party who files a notice
>of appearance or request for documents in accordance with Rule
>2002 of the Federal Rules of Bankruptcy Procedure.

(Notice Procedures Order, ¶ 15, p. 8).

The Notice Procedures Order defines "Filings" to comprise "every notice, motion or application . . . and all briefs, memoranda, affidavits, declarations, or other documents filed concurrently therewith."  (Notice Procedures Order, ¶ 2, p. 2).  Accordingly, the term "Filings" includes motions.  Therefore, because the Extension Motions were motions, then the notice guidelines for "Filings" under the Notice Procedures Order applied to service of the Extension Motions.

---

[5] The Notice Procedures Order also does not define the "Electronic Procedures", but the reference is presumably to the Revised Administrative Procedures For Electronically Filed Cases, United States Bankruptcy Court for the Southern District of New York, revised August 23, 2001.  Specifically, Section II(B), which covers "Service", provides, *inter alia*,

>Consent to Electronic Service:  Whenever service is required to be
>made on a person who has requested, or is deemed to have
>requested, electronic notice in accordance with FRBP 9036 or the
>annexed order, the service may be made by serving the "Notice of
>Electronic Filing" generated by the System by hand, facsimile or e-
>mail in the first instance, or by overnight mail if service by hand,
>facsimile or e-mail service is impracticable.

Accordingly, the reference to the "Electronic Procedures" mirrors the provision within paragraph 9 of the Notice Procedures Order that provides that parties filing a notice of appearance and request for service of papers consent to service of motions through electronic notification via ECF.

D&R is a named defendant in the Adversary Proceeding, and therefore, under the Notice

Procedures Order, D&R constitutes a "part[y] with a particularized interest." Thus, to provide

notice of each of the Extension Motions in accordance with paragraph 15 of the Notice

Procedures Order, as the Reorganized Debtors represented occurred, then D&R was required to

be served with each of the Extension Motions by overnight mail.

The Notice Procedures Order also provides specific guidance on providing notice of

Adversary Pleadings, which includes Filings and initial pleadings filed in an adversary

proceeding, such as this Adversary Proceeding. Specifically, the order provides,

> [a]ll initial Filings, complaints, and other pleadings filed in any
> adversary proceeding commenced in these cases (the "Adversary
> Proceedings") shall be served by overnight mail, courier, or hand
> delivery on . . . . (f) any parties required to be served under any
> applicable Bankruptcy Rule or Local Rule.

(Notice Procedures Order, ¶ 19, p. 10).

D&R is a named defendant in the Adversary Proceeding, and therefore, under the Notice

Procedures Order, D&R was required to be served under applicable Bankruptcy Rules or Local

Rules of all extensions of the deadline for the Reorganized Debtors to serve process of the

complaint in the Adversary Proceeding. Thus, to provide notice of each of the Extension

Motions in accordance with paragraph 19 of the Notice Procedures Order, as the Reorganized

Debtors represented occurred, then D&R was required to be served with each of the Extension

Motions by overnight mail.

D&R was not served with any of the four Extension Motions as required by the Notice

Procedures Order. (Urban Decl. ¶ 14). Further, the Affidavits of Service that are available for

each of the four Extension Motions do not indicate that D&R was served with any of the

Extension Motions by any means, disregarding the Notice Procedures Order which set forth

guidelines on particularized notice.

D&R did not receive any notice, including ECF notification, of the Preservation of Estate Claims Procedure Motion. Thus, entry of the first Extension Order was invalid, should be vacated, and all the following Extension Orders were also invalid. D&R's counsel, however, may have received ECF notification following January 17, 2008, when counsel electronically filed on the docket for the above-referenced bankruptcy a response to a claim objection against two of D&R's claims. This, however, is far from the particularlized notice that a named defendant to an adversary proceeding is entitled to under the Notice Procedures Order, or for that matter, under the constraints of due process. Even assuming that cost was no object and D&R's counsel diligently scanned the multiple entries filed on the docket each day for years—where that docket currently has close to 21,000 entries—D&R still would not have known that it was sued because this avoidance action was under seal and thus hidden from D&R.

Accordingly, in each of the four Extension Motions, the Reorganized Debtors' represented that notice was given in accordance with the Notice Procedures Order. Yet, as demonstrated, this was a false representation. Therefore, the corresponding orders granting the extensions were thus based on false representations by the Reorganized Debtors of notice given to D&R. Those orders should thus be deemed invalid and vacated against D&R, and this case warrants dismissal under Rule 4(m).

The lack of particularized notice was more than a technical aberration from the Notice Procedures Order—it directly misled the defendants to the non-existence of these actions. Failure to comply the level of notice that creditors expected by the Notice Procedures Order in the event they were sued for alleged preferences led them to believe that—absent that particularlized notice—they were not going to be sued. Accordingly, the Reorganized Debtors' failure to provide particularlized notice in compliance with the Notice Procedures Order is more

than merely technical.  It is at the heart of what misled defendants and resulted in their due

process deprivation.

Leave to amend should thus be denied.

**B.      The Extension Orders Should Be Vacated Because They Improperly Granted Relief Inconsistent With The Confirmed Plan**

As discussed in more detail below, the Extension Orders should be vacated because, at

the time they were entered, they granted the Reorganized Debtors relief with respect to this

action, when the confirmed plan of reorganization at that time had expressly disclaimed retention

of this action.  Thus, because the orders violated the plan, they were invalid.

On December 7, 2007, the Reorganized Debtors filed their First Amended Joint Plan of

Reorganization (Docket No. 11386) (the "Plan").  The Plan did ___**not**___ retain or preserve this

avoidance action against D&R.  On page 48, the Plan states:

> **7.24 Preservation Of Causes Of Action.** In accordance with
> section 1123(b)(3) of the Bankruptcy Code and except as
> otherwise provided in this Plan, the Reorganized Debtors
> shall retain and may (but are not required to) enforce all Retained
> Actions[6] and all other similar claims arising under applicable state
> laws, including, without limitation, fraudulent transfer claims, if
> any, and all other Causes of Action of a trustee and debtor-in-
> possession under the Bankruptcy Code. . . .  ***Notwithstanding the
> foregoing, Causes of Action against Persons arising under
> section 544, 545, 547, 548, or 553 of the Bankruptcy Code or
> similar state laws shall not be retained by the Reorganized
> Debtors unless specifically listed on Exhibit 7.24 hereto***.

---

[6]  The definition of "Retained Actions" did not expressly cite to or refer to avoidance actions, preference claims or any relief available under Chapter 5 of the Bankruptcy Code.  Page 20 of the Plan provides:  "1.172 'Retained Actions' means all Claims, Causes of Action, rights of action, suits, and proceedings, whether in law or in equity, whether known or unknown, which any Debtor or any Debtor's Estate may hold against any Person, including, without limitation, Claims and Causes of Action brought prior to the Effective Date or identified in the Schedules, other than Claims explicitly released under this Plan or by Final Order of the Bankruptcy Court prior to the date hereof. A non-exclusive list of Retained Actions is attached hereto as Exhibit 7.24.

(Emphasis added).  Exhibit 7.24 fails to mention D&R, mention this action, or even

mention Chapter 5 of the Bankruptcy Code.

On December 7, 2007, the Reorganized Debtors also filed the Disclosure Statement

(Docket No. 11388), which provided the same thing on pages DS-200-01:

> Notwithstanding the foregoing, Causes of Action against Persons
> arising under section 544, 545, 547, 548, or 553 of the Bankruptcy
> Code or similar state laws will not be retained by the Reorganized
> Debtors unless specifically listed on Exhibit 7.24 to the Plan. . . .

The Disclosure Statement also informed creditors that the Reorganized Debtors expected

a 100 percent plan that would reap no benefit from pursuing avoidance actions:

> Because of the Plan's treatment of unsecured creditors, the Debtors
> have determined that the affirmative pursuit of many if not all of
> these causes of action would not benefit their estates and creditors.
> As described in Section IX – Summary Of The Reorganization
> Plan above, the Plan will pay or satisfy all Allowed Claims in full
> through distributions of common stock. As a result, avoiding
> preferential transfers through causes of action under section 547 of
> the Bankruptcy Code or similar state laws would provide little or
> no benefit to the Debtors' Estates because any party returning such
> a transfer would be entitled to an unsecured claim for the same
> amount, to be paid or satisfied in full under the Plan. . . . As a
> result, under the Plan the Reorganized Debtors will not retain the
> Preference Claims except those specifically listed on Exhibit 7.24
> to the Plan. In all other respects, the Reorganized Debtors will
> retain all rights, claims, and defenses, including as described
> immediately below.

(Disclosure Statement, pp. DS-200-01).

The Plan was confirmed on January 25, 2008 (Docket No. 12359).  The first two

Extension Motions were filed and ordered in August 2007 and February 2008, respectively—

thus right around the time the Plan and the Disclosure Statement was filed and confirmed.  These

Extension Orders were thus invalid—they granted the Reorganized Debtors relief that was in

plain violation of the confirmed Plan and applicable law, amounting to an extension of time to

pursue an action that could <u>not</u> be brought under the terms of the confirmed Plan.

11

"It is well-settled that a bankruptcy court's order confirming a reorganization plan constitutes a final judgment on the merits and is to be given preclusive effect under res judicata." *In re American Preferred Prescription, Inc.*, 266 B.R. 273, 277 (E.D.N.Y. 2000) (citing *Stoll v. Gottlieb*, 305 U.S. 165, 170-71, 59 S.Ct. 134, 83 L.Ed. 104 (1938); *see also Sure-Snap Corp. v. State St. Bank and Trust Co.*, 948 F.2d 869, 872-73 (2d Cir. 1991). "Res judicata does not apply where a claim is expressly reserved by the litigant in the earlier bankruptcy proceeding." *Browning v. Levy*, 283 F.3d 761, 774 (6th Cir. 2002); *D & K Properties Crystal Lake v. Mutual Life Insurance Co. of N.Y.*, 112 F.3d 257, 260 (7th Cir. 1997); *see also Sure-Snap*, 948 F.2d at 873 (2d Cir. 1991).

Many courts have held that a blanket reservation is insufficient to preserve post-confirmation claims. Only expressly and specifically reserved causes of action in the plan—including the name of the defendant and the nature of the claim—are retained. *Browning*, 283 F.3d at 775 (blanket reservation was insufficient to reserve claim against law firm because "it neither names [law firm] nor states the factual basis for the reserved claims"); *D & K Properties*, 112 F.3d at 261 ("To avoid res judicata the reservation of a cause of action must be . . . specifically identified"); *Goldin Associates, L.L.C. v. Donaldson, Lufkin & Jenrette Securities Corp.*, 00 Civ. 8688, 2004 WL 1119652, at *5 (S.D.N.Y. May 20, 2004) ("a blanket reservation of claims in a reorganization plan alone is insufficient to preserve a debtor's post-petition claims"); *American Preferred*, 266 B.R. at 279 (blanket reservation was insufficient "because it did not describe with specificity what actions are reserved for post-confirmation determination"); *In re Hooker Investments, Inc.*, 162 B.R. 426, 433-34 (Bankr. S.D.N.Y. 1994) ("whereas a blanket reservation would not be enough to escape the *res judicata* bar, an express reservation would").

12

Here, the confirmed Plan contained only a blanket reservation. It did not mention D&R. It did not refer to this action. It did not refer to the factual basis of this action. Nor did it even specify that it was reserving a "category" of avoidance actions. On the contrary, it expressly *disclaimed* retention of all avoidance actions not expressly enumerated:

> Notwithstanding the foregoing, Causes of Action against Persons arising under section 544, 545, 547, 548, or 553 of the Bankruptcy Code or similar state laws shall not be retained by the Reorganized Debtors unless specifically listed on Exhibit 7.24 hereto.

Accordingly, there can be no question that this very avoidance action against D&R was not retained and would have been barred by res judicata *at the very time this Court extended the time to serve the complaint*. The Extension Orders were thus invalid and should be vacated.

The orders granted relief at odds with the confirmed Plan. This was improper. *See In re Wedgewood Hotel Co., American Nat. Bank & Trust Co. of Chicago*, 125 F.2d 327, 330 (7th Cir. 1942) (lower court was without "jurisdiction to grant relief in contravention of the finally approved plan"); *see also In re Planet Hollywood Int'l*, 274 B.R. 391, 399-401 (Bankr. D. Del. 2001).

This is especially true where creditors and other potential defendants were expressly told this was a 100% plan and preference claims would be futile. To grant relief in contravention of that was improper. *See In re Tippins*, 221 B.R. 11, (Bankr. N.D. Ala. 1998) (blanket reservation was insufficient to reserve claims where "the confirmed plans did not mention any specific claim or cause of action against [defendants], but instead provided for the full payment of their debt"); *In re Galerie Des Monnaies of Geneva, Ltd.*, 62 B.R. 224, 225 (S.D.N.Y. 1986) ("The bankruptcy court properly dismissed Galerie's attempt to recover preferential transfers after the debtor had previously told creditors voting on the reorganization plan that it knew of no such transfers").

13

Put simply, the Extension Orders allowed the Reorganized Debtors to have their cake and eat it too—something deemed inappropriate by Courts within this District. *See Rosenshein v. Kleban*, 918 F. Supp. 98, 104-05 (S.D.N.Y. 1996) (dismissing post-confirmation debtor's claims that were not disclosed in confirmed plan as judicially estopped because "[t]his is precisely the sort of 'about-face' that undermines the integrity of the bankruptcy process").

Therefore, it was improper to extend the time to serve process in this action during the very time this action was expressly disclaimed from retention by the Reorganized Debtors. Not having received the particularize notice required by this Court's orders, defendants were misled to believe they were not going to be sued. The Extension Orders were invalid, they should be vacated, and this action dismissed for defective service.

### C.     The Extension Orders Should Be Vacated Because They Deprived D&R of Procedural Due Process

D & R received no notice <u>whatsoever</u>—electronic, mail, overnight—of the Preservation of Estate Claims Procedure Motion and D&R did not receive notice of the motions extending time to serve the Original Complaint as required by the Notice Procedures Order (as defined below). Nor did any of those motions identify D & R as a potential defendant. To the contrary, the complaints—filed under seal—intentionally kept D&R in the dark as to its status as a defendant, which information was continually suppressed against the only party with an adverse interest in the matter. Such a deprivation of due process is wrong.

The "fundamental requisite of due process of law is the opportunity to be heard." *Grannis v. Ordean*, 234 U.S. 385, 394 (1914). This right to be heard, however, "has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Thus, an "elementary and fundamental requirement of due process in any proceeding

which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* at 314; *Barcia v. Sitkin*, 367 F.3d 87, 107 (2d Cir. 2004) (same); *Weigner v. City of New York*, 852 F.2d 646, 654 (2d Cir. 1988) (same).

In addition, the lack of due process pursued by the Reorganized Debtors had the added effect of disenfranchising D&R and other defendants from participating in the case and voting on the Plan and Modified Plan. Indeed, under section 502(d) of the Bankruptcy Code, it is implicit that "a transferee of an avoidable transfer has an allowable claim once it turns over such property for which it is liable," and that it may file a proof of claim on account of same. *Fleet Nat'l Bank v. Gray (In re Bankvest Capital Corp.)*, 375 F.3d 51, 57 n.4 (1st Cir. 2004). That, in turn, allows it to "[participate] in the voting and distribution from the estate." *In re Hamilton*, 179 B.R. 749, 752 (Bankr. S.D. Ga. 1995) (quoting *In re Kolstad*, 928 F.2d 171, 174 (5th Cir. 1991), reh'g denied, 936 F.2d 571 (5th Cir. 1991), cert. denied, 502 U.S. 958 (1991)). The Reorganized Debtors knew that if D&R repaid an allegedly preferential transfer, it would have been entitled to file a claim, participate in the case and vote on the Plan and the Modified Plan. The justification for depriving D&R of its right to engage in the bankruptcy cases is blatantly improper and not justifiable under the Bankruptcy Code.

The due process deprivation also derives from the fact this Court—knowing these actions were pending under seal against the defendants—allowed the Reorganized Debtors to set bar dates, thus setting dates that cut off their rights and bound them to deadlines without being fairly apprised of the knowledge they had been sued.

For all of the foregoing reasons, each of the orders granted pursuant to the Extension Motions and extending the Reorganized Debtors' extensions of time to serve the Original

Complaints should be vacated on the ground that each was improvidently entered and void against D&R.

> D.    **The Extension Orders Should Be Vacated Because Good Cause Did Not Exist Under Rule 4(m)**

The deadline for commencing an adversary proceeding against D&R on account of an allegedly avoidable preference expired on October 8, 2007.  The Reorganized Debtors filed the Original Complaint under seal on September 29, 2007, but did not serve D&R with such Original Complaint until over three years after the statute of limitations contained in section 546(a) of the Bankruptcy Code expired.

Rule 4(m) of the Federal Rules of Civil Procedure permits courts to extend the time ot complete service for "good cause".  Good cause exists when service is not completed on a named defendant within the required 120-day period, *Ahern v. Neve*, 285 F.Supp.2d 317, 320 (E.D.N.Y. 2003), and not when the plaintiffs know about and can serve the named defendants, but simply choose not to do so, and where the sole purpose in seeking the extension of time is to prevent defendants from learning that they had been sued.  The use of procedural rules to obtain a result not contemplated by the accompanying substantive law is simply not permitted.  *See* 28 U.S.C. § 2075 (rules prescribed by the United States Supreme Court "shall not abridge, enlarge, or modify any substantive right"); *see also Morse v. Perrotta (In re Perrotta)*, 406 B.R. 1, 8 (Bankr. D. N.H. 2009) ("Therefore, to the extent that the Bankruptcy Rules and the Bankruptcy Code are inconsistent, the statute controls.").

The Court's discretion to extend the time for service of process was unwarranted here, where it grossly violates the fundamental notion of repose underlying the statute of limitations. *See Diversified Hospitality Group, Inc. v. Carson Pirie Scott & Co.*, 1991 WL 35953, at *5 (S.D.N.Y. Mar. 8, 1991).  Indeed, the Ninth Circuit recently stated: "[n]o court has ruled that the

16

discretion [under Rule 4(m)] is limitless." *Efaw v. Williams*, 473 F.3d 1038, 1041 (9th Cir.

2007).[7]  The discretion is not warranted where, as here, the defendant "*could not have relied*

*upon the policy of repose embodied in the limitation statute, for it was aware that [the plaintiff]*

*was actively pursuing his . . . remedy.*" *Id.* (quoting *Burnett v. N.Y. Cent. R.R. Co.*, 380 U.S. 424,

428-29 (1965)) (emphasis added).

Here, D&R indeed did rely upon the policy of repose embedded within section 546(a) of

the Bankruptcy Code, having received no notice for close to three years after the statute of

limitations had expired that it had been sued by the Reorganized Debtors.

The Reorganized Debtors sealed the complaints because they did not want to disrupt

existing business relationships with the defendants.  That is not the type of reasoning

contemplated by the due process constraints behind Rule 4(m).  Rather, exactly the type of due

process prejudice Rule 4(m) was intended to avoid will occur here if the leave to amend is

granted.  D&R and the other defendants will be forced to defend an action commenced five years

after the Chapter 11 petitions were filed, when the limitations period is two years.

Accordingly, leave to file the Amended Complaint should be denied.

---

[7] As support for extending the time to serve process on defendants, the Reorganized Debtors
have cited *Bank of Cape Verde v. Bronson*, 167 F.R.D. 370, 371-72 (S.D.N.Y. 1996) for the
proposition that good cause existed where future events would have likely "obviated the need to
serve the [] complaint" and when the plaintiff requested the extension before the deadline
expired.  This case is inapplicable to the facts here .  In *Bank of Cape Verde,* the third-party
plaintiff was pursuing good-faith settlement negotiations with the plaintiff and third-party
defendants, and had already served all or most of the parties to the action prior to the expiration
of the 120-day deadline.  That is a far cry from the situation here, where D&R was not, and could
not have been, in settlement negotiations with the Reorganized Debtors, as it did not even know
that it had been sued.

**E.      The Extension Orders Should Be Vacated Because of the Equitable Doctrine of Unclean Hands**

It bears repeating that the Reorganized Debtors intentionally concealed these avoidance actions for years from all the defendants—this is unprecedented.  Years after it had been sued, D&R received no notice <u>whatsoever</u> of this action—also unprecedented.

The Reorganized Debtors reasons behind sealing the Original Complaints demonstrate that they orchestrated the bankruptcy process to their own advantage.  Their claimed necessity for doing so: "sealing the actions would avoid unnecessarily alarming potential defendants" and "having to force all potential defendants to retain counsel to defend against adversary proceedings when, in fact, most of them likely will be resolved by a reorganization plan and never pursued."  (Preservation of Estate of Claims Procedures Motion, ¶¶ 34, 37).  That is a natural and legitimate consequence of suing someone—not a reason to hide the litigation from them for years, only to spring it upon them when a 100 percent plan turns sour.

These justifications have no merit.  The Reorganized Debtors had an option—sue the defendants or do not sue the defendants.  Rather, they struck a heads-I-win-tails-you-lose with each of the defendants.  Despite expressly disclaiming these avoidance actions within the first confirmed Plan, they intentionally moved for relief that would allow them to keep these actions within their back pocket, in contravention of the Plan, in contravention of due process, and in contravention of the economic disruption this suit has and will cause to these defendants.  Years after the statute of limitations has passed, D&R has learned that it has been sued for over $15 million.  This is a prejudicial sum to a company of its size.

"As the Supreme Court stated long ago, the 'clean hands' doctrine is far from a mere banality.  It is a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however

improper may have been the behavior of the defendant.'"  *Motorola Credit Corp. v. Uzan*, 561

F.3d 123, 129 (2d Cir. 2009) (quoting *Precision Instrument Mfg. Co. v. Automotive Maintenance*

*Mach. Co.*, 324 U.S. 806, 814, 65 S.Ct. 993, 89 L.Ed. 1381 (1945).  In bankruptcy context,

courts are equipped with the statutory discretion to dismiss Chapter 11 petitions filed in bad faith

under section 1112 of the Bankruptcy Code.  *In re C-TC 9th Avenue Partnership*, 113 F.3d 1304,

1310-11 (2d Cir. 1997).

     The inequitableness of this situation is striking.  Leave to amend should be denied.

## III.    LEAVE TO AMEND SHOULD BE DENIED BECAUSE THE REORGANIZED DEBTORS WERE CHARGED WITH NOTICE OF THEIR DEFICIENTLY PLED COMPLAINTS FROM THE DATE OF THE *IQBAL* DECISION

     The Reorganized Debtors admit that the United States Supreme Court's decision in

*Ashcroft v. Iqbal*, 129 S.Ct. 1936 (2009), "elaborated on Rule 8's requirements."  (Motion, p. 9).

They argue, however, that because they filed the Original Complaints before the United States

Supreme Court decided *Iqbal*, they "should not be penalized."  (Motion, p. 8).  Despite knowing

about *Iqbal*, and despite the Original Complaints remaining under seal and unserved, the

Reorganized Debtors wish to benefit from their own recalcitrance.

     On the contrary, after *Iqbal* was decided, the Reorganized Debtors must be charged with

the knowledge that they were proceeding at risk of deficient pleadings in the Original

Complaints.  Indeed, they have been on notice of *Iqbal* for well over a year.  For much of that

time, though they kept the Original Complaints under seal, and even moved for an additional

extension of time to serve them,[8] they made no attempt to amend the Original Complaints to

comply with the elaborated pleading standards enunciated by *Iqbal*—which they admit to.

---

[8] *See* Supplemental Postconfirmation Extension of Avoidance Action Service Deadline Motion, filed October 2, 2009 [Docket No. 18952].

In *In re Federated Dep't Stores*, 44 F.3d 1310 (6th Cir. 1995), Lehman Brothers continued to provide financial advisory services to the debtor-in-possession despite the U.S. Trustee's persistent objection that Lehman should be disqualified because it was not a "disinterested" person under § 327(a).  The debtors' reorganization plan was approved before the Trustee's objection reached the Sixth Circuit.  In the interim, the Sixth Circuit decided, *In re Middleton Arms. Ltd. Partnership*, 934 F.2d 723 (6th Cir. 1991), which was a "definitive appellate court decision . . . that determined the question of Lehman Brothers' qualifications to serve as [debtor's] financial advisor despite its interested status." *Id.* at 19-20.  For that very reason, when the Sixth Circuit finally addressed the Trustee's objection to Lehman's retention, the Court ruled that Lehman must disgorge all of the fees incurred after the date of the *Middle Arms* decision.  The Court held, "[a]fter that date on which *Middleton Arms* was decided, Lehman Brothers is charged with the knowledge that it was proceeding at risk." *Id.* at 20.

*A fortiori*, the same reasoning applies here.  Precisely *because* the Reorganized Debtors filed the Original Complaints before *Iqbal*, from that date forward they were charged with knowledge that they were proceeding at risk of deficiently pled complaints.  Clearly, *Iqbal*, a definitive decision by the United States Supreme Court, put the Reorganized Debtors on notice as tto the required pleading standards.  Despite all the liberties that it took in these avoidance actions, the Reorganized Debtors completely ignored the United States Supreme Court's admonition and failed to amend the Original Complaints.

In any case, this is not a normal Rule 15 motion.  This is a case where the Reorganized Debtors contributed to the delay by failing to attempt to amend the Original Complaints, despite making a comparable effort to extend the time to serve them.

The cases cited by the Reorganized Debtors bear this out.  For example, in *Elsady v. Rapid Global Business Solutions, Inc.*, 2010 WL 742900, at *5 (E.D. Mich. Feb. 26, 2010), the court held that defendant "bears equal responsibility" for its delay in waiting to raise the issue of plaintiff's deficient allegations.  Here, the complaints were filed under seal, where they remained months after *Iqbal*.  Defendants—including D&R—were incapable of questioning the deficiencies to the pleadings during that time.  Any delay in remedying the Original Complaints lies solely with the Reorganized Debtors, and in this instance, the Reorganized Debtors' recalcitrance warrants denying them the opportunity to repair what they had months to fix.

The motion for leave to file the proposed Amended Complaint should be denied.

## IV.    THE AMENDED COMPLAINTS VIOLATE THE DISMISSAL ORDER AND FAIL TO SUFFICIENTLY PLEAD A PREFERENCE CLAIM UNDER *IQBAL'S* ELABORATED STANDARD

Following Defendants' First Wave Motion to Dismiss, and the July 22, 2010 hearing on those motions, this Court dismissed this adversary proceeding without prejudice "because the Debtors have failed to plead sufficient facts to state a claim, and have not complied with Rule 8 . . . .".  *See* Order Granting In Part First Wave Motions to Dismiss, September 7, 2010 [Docket No. 31, Adv. Pro. No. 07-02432] (hereinafter, the "<u>Dismissal Order</u>").  Paragraph 4 of the Dismissal Order provided:

By no later than September 7, 2010, the Reorganized Debtors shall file a motion for leave to amend the complaint in each Adversary Proceeding the Reorganized Debtors intend to pursue (each, a "Motion to Amend").  Each Motion to Amend shall attach a proposed amended complaint that, for each alleged transfer shall set forth, at a minimum, the transferor, the transferee, any known subsequent transferee against whom relief is sought, the antecedent debt and which Reorganized Debtor is the plaintiff.

The proposed Amended Complaint fails to satisfy this order because it does sufficiently set forth the minimum requirements it provides for, and as discussed below, it fails to comply with the elaborated pleading standards for a preference claim enunciated by *Iqbal*.

### A.    The Amended Complaint Fails to Sufficiently Plead Facts Showing the Alleged Transfers Were on Behalf of an Antecedent Debt

The proposed Amended Complaint fails to sufficiently allege that the Transfers were on account of an antecedent debt.  At the July 22, 2010 hearing on the Motions to Dismiss, this Court instructed that, to satisfy Rule 8 following *Iqbal*, the debtor must allege "a particular antecedent debt on which the transfer was on account."  (Transcript, p. 276).  This Court explained that, whereas it might be reasonable to infer that payments are made on behalf of an antecedent debt, "the thing is it may not be antecedent, they may be paying in advance, they may be paying that day; COD."  (Transcript, p. 206).[9]

Courts have emphasized that to adequately allege that preferential transfers were on account of an antecedent debt, they must plausibly show the goods were shipped before the payment was made.  *In re Bennett Funding Group*, 220 B.R. 739, 742 (Bankr. 2d Cir. 1998). For instance, following *Iqbal*, in *In re Charys Holding Co., Inc.*, No. 10-50211, 2010 WL 2788152, at *5 (Bankr. D. Del. Jul. 14, 2010), the complaint alleged facts identifying the transfer by date, amount and transferor/transferee, yet it failed to "provide sufficient facts showing an antecedent debt owed by [plaintiff] to [defendant]"—in other words, "earlier; preexisting; previous".  *Id.*  Specifically, the complaint did "not specifically allege that services were rendered prior to [the] date [of the transfer]."  *Id.*

Exhibit 1 to the proposed Amended Complaint merely lists alleged invoice numbers and purchase order numbers—that's it.  It says nothing of when shipment was made.  There are no

---

[9] Later in the hearing, this Court reiterated this:  "Debtors may pay COD or in advance." (Transcript, p. 277).

dates listed for any of the invoices or purchase orders, no dates indicating when they became due

and owing, nor any dates indicating when the goods actually shipped.  In other words, there is no

context that can be drawn from the face of the Amended Complaint indicating that the Transfers

were antecedent to shipment.  This Court previously instructed: "you have to give some context

to show that there's a debt owing."  (Transcript, p. 208).  Listing invoice numbers by themselves

does not do that.

      The Reorganized Debtors may argue that invoices and purchase orders, *presumably*, only

issued for goods before they are shipped—thus they must be antecedent.  Yet, this is the exact

type of inference this Court instructed against reading into a preference complaint:[10]

> [W]hile it may seem at first glance that anyone receiving money
> has to receive it for some purpose and therefore it's reasonable to
> infer in the context that that purpose is to pay an antecedent debt,
> that is not always the case.

(Transcript, p. 277).

      The Reorganized Debtors may also argue that the proposed Amended Complaint does

allege that the payments were made for goods previously shipped.  The Amended Complaint

states that the payments were "for, or on account of, an antecedent debt."  This is not enough.

Courts following *Iqbal* have emphasized that conclusory allegations as to the antecedence of the

debt will not suffice.  *See e.g., In re Caremerica, Inc.*, 409 B.R. 346, 351 (Bankr. E.D. N.C.

2009) (recitation in complaint that payment was made "for, or on account of, an antecedent debt"

"fails to assert any facts showing the existence of an antecedent debt").  This Court concurred:

---

[10] Counsel for Reorganized Debtors stated at the hearing:  "The strange thing about applying
*Twombly* and *Iqbal* to a preference case is that what does it mean to say that a preference claim is
plausible?  I mean, it's plausible that Delphi paid these defendants the amounts that are indicated
on the [Original Complaints] on the dates that are indicated.  ***And it's plausible that those
payments were on account of an antecedent debt***."  (Transcript, p. 205, emphasis added.)

there is a "need to say something about the antecedent debt, other than the conclusory statement

that there's [sic] antecedent debt."  (Transcript, p. 206).

The Reorganized Debtors may also point out that the Amended Complaint also alleges:

"Plaintiff made certain payments to Defendant in satisfaction of amounts due for goods

previously shipped."  (Complaint, ¶ 18).  This is also not enough.  A conclusory recitation that

"certain" payments were for goods "previously shipped" fails to recite particularlized facts

creating a plausible context that *each* alleged transfer was on account of a debt antecedent to that

transfer.  *Charys Holding Co.*, 2010 WL 2788152 at *4 (following *Iqbal*, stating "complaints

asserting preferential transfer claims must contain particularized facts including: (i) an

identification of the nature and amount of each antecedent debt").

The additional allegations in the proposed Amended Complaint fail to remedy this defect.

They state:

> The documents evidencing the antecedent debt include the
> purchase orders and/or invoice/bills of lading identified in Exhibit
> 1, which purchase orders and/or invoice/bills of lading include
> evidence of the amount of the antecedent debt and the approximate
> dates the subject goods contemplated by the Agreements were
> ordered pursuant to the Agreements and/or were provided by
> Defendant.

(Amended Complaint, ¶ 22).  This allegation boils down to: "purchase orders . . . include

evidence of the . . . approximate dates the subject goods . . . were ordered . . . and/or provided."

Therefore, the Reorganized Debtors effectively admit that facts of those dates are not alleged in

the Amended Complaint.  Indeed, the foregoing allegation allegation is just a legal conclusion

supported by no allegations of facts.  It thus fails *Iqbal*'s prescription: "legal conclusions can

provide the framework of a complaint, [but] they must be supported by factual allegations."  129

S.Ct. at 1949.  Rather, the Amended Complaint's allegation that the transfers were plausibly

*antecedent* to the debt remains at best a reasonable inference—indeed, the very inference this Court ruled cannot form the basis of a preference complaint.  (Transcript, p. 277).

Thus, the proposed Amended Complaint founders before the United States Supreme Court's admonishment as to Rule 8's heightened requirements:  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*

Leave to amend should be denied.

### B.    The Amended Complaint Fails to Sufficiently Plead the Alleged Transfers Were Made on Account of Debts Specifically Owed By DAS

The Bankruptcy Court for the Southern District of New York recently held—after *Iqbal*—that to satisfy Rule 8, a preference complaint must allege facts that each transfer was made on account of "a specific and identifiable antecedent debt ***owed by the Debtor***."  *In re Hydrogen, L.L.C.*, 431 B.R. 337, 355 (Bankr. S.D.N.Y. 2010) (AJG) (emphasis added).  In *Hydrogen*, despite alleging the amount and type of transfer, the Court dismissed the amended complaint because it failed to allege that it was on account of a specific debt "owed by the Debtor."  *Id.*

The same holds true here.  Nowhere within the proposed Amended Complaint does DAS allege that any of the alleged transfers were made on account of a debt ***owed by DAS***.  On the contrary, the sum of the allegations counter this conclusion.

The proposed Amended Complaint alleges that D&R supplied goods "for the benefit of the Reorganized Debtors"—not specifically for the benefit of DAS.  (Amended Complaint, ¶ 15). The Amended Complaint even fails to recite that DAS is one of the Reorganized Debtors, and so on its face, there is no allegation that the goods were even shipped for the benefit of DAS.  *See supra*, section III(C) for additional discussion.)  Though the Amended Complaint alleges that "Plaintiff entered into certain purchase agreements (the 'Agreements') with [D&R] for the

supply of various parts to the Reorganized Debtors," (Amended Complaint, ¶ 13), it also states

that DAS "performed, among other things, accounting and payment functions for the

Reorganized Debtors . . . ."  (Amended Complaint, ¶ 12).  Combined, these allegations plausibly

suggest that DAS accounted for payment of debts owed by the Reorganized Debtors—not that

the alleged Transfers were for debts owed specifically by DAS.  Thus, the sum of these

allegations run afoul of Rule 8 by failing to plausibly allege the debts were owed by DAS.  *See*

*Hydrogen*, 431 B.R. at 355.

### C.    DAS Has No Alleged Authority To Bring This Action

The Dismissal Order required that the proposed amended complaint attached to each

Motion to Amend "shall set forth, at a minimum, . . . which Reorganized Debtor is the plaintiff."

(Dismissal Order, ¶ 4).  In this case, the proposed Amended Complaint states that: "the

Reorganized Debtors retained the right to pursue the claims and causes of action asserted in this

First Amended Complaint . . . ." (Amended Complaint, ¶ 6).  Presumably, on that basis, DAS has

the authority to sue D&R in this action for the alleged avoidable preferences.  The proposed

Amended Complaint, however, fails to identify or even allege that DAS is one of the

Reorganized Debtors.  Thus, on its face, the proposed Amended Complaint runs afoul of this

Court's Dismissal Order, because it does not identify DAS as one of the Reorganized Debtors

capable of pursuing this action.  Failure to comply with the Dismissal Order warrants denying

leave to file the Amended Complaint.

Yet, the omission is more than technical.  It runs to the core of the United States Supreme

Court's reasoning behind elaborating the pleading requirements in *Iqbal*.  The Supreme Court

stated: "the tenet that a court must accept a complaint's allegations as true is inapplicable to

threadbare recitals of a cause of action's elements, supported by mere conclusory statements."

*Iqbal*, 129 S.Ct. at 1940.

The Reorganized Debtors might hope this Court would safely presume that DAS is one of the Reorganized Debtors without needing to expressly articulate that in its proposed Amended Complaint.  And they might hope that because that fact may be articulated elsewhere, there is no need to spell it out in the proposed Amended Complaint.  But to do so would be contrary to the very reasoning behind the United States Supreme Court's holding—especially for one of the requirements expressly stated by this Court in its Dismissal Order.

The proposed Amended Complaint is thus insufficient under *Iqbal* as well as this Court's Dismissal Order.  Leave to file it should be denied.

### D.    The Amended Complaint Fails to Sufficiently Plead DAS Was Insolvent

The Reorganized Debtors admit that the United States Supreme Court's decision in *Iqbal*, "elaborated on Rule 8's requirements."  (Motion, p. 9).  Yet, to plead that DAS was insolvent at the time of the alleged Transfers, they rely on the presumption contained in section 547(f).[11] (Amended Complaint, ¶ 23).  This is insufficient to satisfy *Iqbal*.

For one thing, DAS's insolvency allegation is nothing more than a legal conclusion, naked of any supporting factual allegations.  *Iqbal*, 129 S.Ct. at 1949 ("legal conclusions can provide the framework of a complaint, [but] they must be supported by factual allegations").

More importantly, the record contradicts, rather than supports this allegation.  DAS's schedules, which were verified under penalty of perjury, demonstrate that DAS clearly was not insolvent—but had an approximate $2.6 billion positive net-worth book value.  *See* Notice of Amendments of Schedules and Assets and Liability, dated April 18, 2006 (Case No. 05-44641 D.I. 10).

---

[11]  Section 547(f) of the Bankruptcy Code provides:  "For the purposes of this section, the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition."

DAS's schedules clearly shift the presumption of showing insolvency away from D&R. *See In re Roblin Industries, Inc.*, 78 F.3d 30, 334-35 (2d Cir. 1996): *In re Johnson*, 189 B.R. 744, 747 (Bankr. N.D. Iowa 1995); *In re Pembroke Development Corp.*, 122 B.R. 610, 612 (Bankr. S.D. Fla. 1991). Because the burden to show insolvency now lies with DAS, before the Amended Complaint has even been filed, *Iqbal* requires that allowing DAS to plead mere conslusory allegations of insolvency—that are evidently false—should be insufficient to let this action proceed. Leave to amend should thus be denied.

## V.    THE PROPOSED AMENDED COMPLAINT FAILS TO PLAUSIBLY STATE A CAUSE OF ACTION BECAUSE THE ALLEGED TRANSFERS FALL UNDER THE ORDINARY COURSE EXCEPTION AS A MATTER OF LAW

The alleged Transfers listed in Exhibit 1 of the proposed Amended Complaint—as the Reorganized Debtors have alleged them—show that, as a matter of law, they are exempt from avoidance under the ordinary course exception set forth in § 547(c)(2).

The ordinary course exception under § 547(c)(2) considers "the history of the parties' dealings with each other, timing, amount at issue, and the circumstances of the transaction. Generally, the entire course of dealing is considered." *In  re Tennessee Chemical Co.*, 112 F.3d 234, 237 (6th Cir. 1997) (citations omitted). Payments made according to a payment program where it was ordinary for the debtor to pay multiple invoices at once have fallen within the exception. *See e.g.*, *In re Meyer's Bakeries, Inc.*, 400 B.R. 701, 707 (Bankr. W.D. Ark. 2009) (payments were within ordinary course "where it was typical in the industry to pay multiple invoices" simultaneously); *In re BCE West, L.P.*, 2008 WL 565262 (Bankr. D. Ariz. 2008) ("batch payments" was "ordinary" for the creditor, and thus subject to the exception); .[12]

---

[12] *See also In  re Tennessee Chemical Co*, 112 F.3d 234, 237 (6th Cir. 1997) (two payments made sixteen and seventeen days late were made within ordinary course where debtor "had a pattern of paying several invoices [at once]"); *In re Elrod Holdings Corp.*, 426 B.R. 106, 112 (Bankr. D. Del. 2010) (payments were within ordinary course where they were made according

Out of the alleged Transfers set forth in Exhibit 1, almost all of them were paid in batches, on the same given day.  As a matter of law they were thus made in the ordinary course.

The United States Supreme Court has stated: "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 129 S.Ct. at 1950.  On the face of the Amended Complaint, at least 2089 of the alleged Transfers are exempt from avoidance as ordinary course transfers.  Accordingly, no *plausible* claim for relief can be alleged for at least those transfers.  Leave to amend should denied, or at the very least, this action should be dismissed as to those transfers.

## VI.    GRANTING LEAVE TO FILE THE AMENDED COMPLAINTS WILL PREJUDICE D&R

As set forth in the Urban Decl., D&R acted to its detriment in reliance upon its presumption that it faced no further preference liability in the above-captioned bankruptcy proceeding.

Specifically, had D&R been aware of this action for approximately $15 million that is the subject this action, it would have insisted upon the Reorganized Debtors' waiver or release of its alleged preference liability before it agreed to continue supplying Parts to Delphi.  (Urban Decl. ¶16).  Given the general lack of inventory due to just-in-time manufacturing practices in the auto industry, Delphi also would have been highly motivated to reach an agreement with D&R regarding the alleged preference liability in order to maintain an orderly supply of parts for worldwide production.  (Urban Decl. ¶16).

---

to a payment method between the parties where "Debtors consistently and regularly . . . paid multiple invoices [at the same time]"); *In re J. Allan Steel Co.*, 321 B.R. 764, 772 (Bankr. W.D. Pa. 2005) (holding that allegedly preferential payments were ordinary course, which comprised of payment of multiple invoices at once, because this practice was "common" and thus not a departure from the ordinary course between the parties).

The Reorganized Debtors argue that the "mere act of *amending* the Original Complaints will not prejudice the Defendants." (Motion, ¶ 33). They suggest: "this Court can still consider [D&R's prejudice] after granting the Reorganized Debtors leave to amend." (Motion, p. 14).

The Reorganized Debtors' miss the point. The prejudice courts rely upon to deny leave to amend does not originate from the mere act of amending the Original Complaints. Taken to the extreme, no prejudice would then ever warrant denying leave to amend a complaint because the mere act of amending a complaint will never be sufficient.

Rather, the prejudice stems from the three year delay between the expiration of the statute of limitations and the time this motion was made. *Zahra v. Town of Southold*, 48 F.3d 674, 686 (2d Cir. 1995) (two-and-half year delay between commencement of action and motion to amend constituted prejudice warranting denial of leave). The prejudice also stems from the amount of the alleged Transfers in the Amended Complaint as well. Years after the statute of limitations has passed, D&R has learned that it has been sued for over $15 million. This is a prejudicial sum to a company of its size. The very size of the amount demanded in the Amended Complaint skews former forecasts, estimates, projections and budgeting for the company. The prejudice is self-evident in the value of the relief sought in the Amended Complaint, and exacerbated by the fact that the transfers occurred years ago. For these reasons, D&R should not bear the burden of proving prejudice—the burden to refute prejudice should begin with the Reorganized Debtors.

The prejudice also derives from the fact this Court—knowing these actions were pending under seal against the defendants—allowed the Reorganized Debtors to set bar dates, thus setting dates that cut off their rights and bound them to deadlines without being fairly apprised of the knowledge they had been sued.

Discovery in this case has not closed, but the significant length of the delay, the aggregate amount of the alleged Transfers and intervening detrimental reliance by D&R, as set forth in the Urban Decl., together results in material prejudice that warrants denying motion for leave to file the Amended Complaint.

## VII.    INCORPORATION OF OTHER DEFENDANTS' BRIEFS

D&R hereby incorporates all of the other arguments raised by the other preference defendants in opposition to the Reorganized Debtors' motion for leave to file the Amended Complaints.

## VIII.    CONCLUSION

For the foregoing reasons, D&R respectfully requests that the Reorganized Debtors'

motion for leave to file the amended complaints should be denied.

Dated:  November 24, 2010          Shalom Jacob
       New York, New York            Zachary D. Silbersher
                                       LOCKE LORD BISSELL & LIDDELL LLP
                                       Three World Financial Center
                                       New York, New York 10281-2101
                                       Tel:  (212) 415-8600
                                       Fax: (212) 303-2754

                                       -and-

                                       /s/ Courtney Engelbrecht Barr
                                       Courtney Engelbrecht. Barr (CE 7768)
                                       LOCKE LORD BISSELL & LIDDELL LLP
                                       111 S. Wacker Dr.
                                       Chicago, IL  60606
                                       Tel: (312) 443-0700
                                       Fax: (312) 443-0336


                                     *Counsel for D&R Technology, LLC*