**Hearing Date and Time: February 17, 2011 at 10:00 a.m.**
**Reply Deadline: January 28, 2011**

Michael Schlanger, Esq.
SCHLANGER & SCHLANGER, LLP
1025 Westchester Avenue, Suite 108
White Plains, New York 10604
Tel.: 914-946-1981
Fax: 914-946-2930
Email:michael@schlangerlegal.com

Ira Rubin, Esq.
GOLDMAN, RUBIN & SHAPIRO
1340 Woodman Drive
Dayton, Ohio 45432
Tel.: 937-254-4455
Fax: 937-254-9754
Email: irarubin265@aol.com

*Attorneys for Plasco, Inc., sued herein as Plasco and Plasco, Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------- X

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | Case No. 05-44481 (RDD) |
| DELPHI CORPORATION, *et.al.,* | : | (Jointly Administered) |
| | : | |
| DELPHI CORPORATION, *et.al.,* | : | Adv. Pro. No. 07-02287 (RDD) |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| PLASCO and PLASCO, INC., | : | |
| | : | |
| Defendants. | : | |

---------------------------------------------------------------- X

**PLASCO, INC.'S BRIEF & MEMORANDUM OF LAW**
**IN OPPOSITION TO REORGANIZED DEBTORS'**
**MOTION FOR LEAVE TO FILE THE FIRST AMENDED COMPLAINT**

<u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ............................................................................................... 5

SUMMARY OF DEFENDANTS' POSITION ......................................................................... 6

BACKGROUND ..................................................................................................................... 7

ARGUMENT

   I.  THE COURT'S EXTENSION ORDERS SHOULD NOT HAVE BEEN GRANTED:
      DEFENDANT'S LACK OF NOTICE IRREPARABLY PREJUDICED DEFENDANT ......... 8

     A.  Plasco, Inc. Did Not Receive Notice of the Extension Motions and the Extension Orders
       Should Be Vacated As Against Plasco, Inc. and May Challenge Said Orders De Novo ............. 8

     B.  Plasco Was Prejudiced By The Lack of Notice ....................................................................... 9

     C.  Prejudice Is Presumed .............................................................................................................. 15

   II.  LEGAL ISSUES PRESERVED BY ORDER DATED SEPTEMBER 7, 2010 ....................... 15

   III. ANY AMENDMENT OF THE COMPLAINT IS FUTILE ..................................................... 16

     A.  Debtors' Released Plasco of Any And All Claims ................................................................... 16

   IV. PURSUANT TO THE PLEADING STANDARDS OF <u>ASHCROFT v. IQBAL</u> THE FIRST
      AMENDED COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A
      CLAIM .......................................................................................................................................... 18

     A.  The Amended Complaint Fails to Satisfy the *Iqbal* Pleading Standards With Respect to
       Debtors' Claim of Insolvency During the Preference Period ................................................. 18

     B.  The Amended Complaint Fails to Allege a Purchase Order or an "Antecedent Debt" for an
       Alleged Transfer of $1,200,000 on October 7, 2005 ............................................................ 21

     C.  The Amended Complaint Fails to Identify with Particularity the Party to Whom
       Defendant's Good were Sold ................................................................................................... 21

     D.  The Amended Complaint Fails to Show that Plaintiff Paid Plasco ....................................... 22

   V.  NO FURTHER AMENDMENT SHOULD BE PERMITTED .................................................. 22

   VI. INCORPORATION OF OTHER DEFENDANTS' BRIEFS .................................................... 23

CONCLUSION .......................................................................................................................... 23

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Anderson, Anderson v. Air West, Inc.*,
542 F.2d 522 (9th Cir. 1976) ............................................................................... 15

*Ashcroft v. Iqbal*,
__ U.S. __, 129 S. Ct. 1937 (2009) ................................................................. 18, 19

*Bank of America National Trust & Savings Assoc. v. 203 LaSalle Partnership*,
526 U.S. 434, 457 (1999) ...................................................................................... 20

*Chambers v. Time Warner, Inc*,
282 F.3d 147, 153 (2d Cir. 2002) ......................................................................... 17

*Efaw v. Williams*,
473 F.3d 1038, 1041 (9th Cir. 2007) ..................................................................... 13

*In re Caremerica, Inc.*,
409 B.R. 737, 754 (E.D.N.C. 2009) ................................................................. 18, 21

*In re BHS & B Holdings LLC*,
420 B.R. 112, 132 (Bankr. S.D.N.Y. 2009) .................................................... 12, 20

*In re Kiwi Airlines, Inc.*,
344 F.3d 311, 318 (3d Cir. 2003) .......................................................................... 14

*In re Ionosphere Clubs, Inc*,
85 F.3d 992, 999-1001 (2d Cir.1996) .................................................................... 14

*In e Orion Pictures*,
21 F.3d 24, 27(2d Cir. 1994) ................................................................................. 13

*In re Roblin Industries, Inc.*,
78 F.3d 30 (2d Cir. 1996) ................................................................................. 18, 19

*In re Superior Toy & Manufacturing, Co., Inc.*,
78 F.3d 1169, 1172 (7th Cir.1996) ........................................................................ 14

*In re The Penn Traffic Company*,
524 F.3d 373 (2d Cir.2008) ................................................................................... 14

*In re Teligent*,
325 B.R. 219, 223 (S.D.N.Y. 2003 ........................................................................ 14

*In e 1031 Tax Group, LLC,*,
2007 WL 1836525, *2 (Bankr. S.D.N.Y. 2007) .................................................... 13

*In re Theatre Row Phase II Associates*,
385 B.R. 511 (Bankr. S.D.N.Y. 2008) ................................................................................. 20

*In re Venture Mortgage Fund, LP*,
245 B.R. 460, 470-472 (S.D.N.Y. 2000), *aff'd*, 282 F.3d 185 (2[d] Cir. 2002). ....................... 20

*International Audiotext v. AT&T Co*.,
62 F.3d 69, 72 (2d Cir. 2002) ............................................................................................... 17

*Iridium IP LLC v. Motorola, Inc.*,
373 B.R. 283 (Bankr. S.D.N.Y. 2007) (Peck, J.) ............................................................ 18, 20

*Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc.*
526 U.S. 344 (1999) ............................................................................................................. 10

*Roth v. Jennings*,
489 F.3d 499, 509-11 (2d Cir.2007) ..................................................................................... 20

*Shannon v. GE*,
186 F.3d 186 (2d Cir. 1999) ................................................................................................. 15

*Staehr v. Hartford Fin. Servs. Group*,
547 F.3d 406 (2d Cir. 2008) ................................................................................................. 10

*Troxell v. Fedders of N.A., Inc*,
160 F.3d 381, 383 (7th Cir.1998) ........................................................................................ 13

*Zapata v. New York*,
502 F.3d 192 (2d Cir. 2007) ................................................................................................. 15

## STATUTES

11 U.S.C. §547 ................................................................................................................ 18, 19

11 U.S.C. §101(32)(A). .......................................................................................................  18

## OTHER AUTHORITIES

Federal Rule of Civil Procedure 4(m) ............................................................................*Passim*
Federal Rule of Civil Procedure 60(b)(4), 60(b)(6). ............................................................. 15

Plasco and Plasco, Inc. ("Plasco"), by and through its undersigned counsel, respectfully submits the following Memorandum of Law in opposition to Debtors' motion for leave to serve a First Amended Complaint.

## **Preliminary Statement**

The general background of this case and facts surrounding the Plaintiffs' filing this and other complaints alleging preferential transfers under seal and then seeking numerous "Service Extension Orders" extending the deadline for service of the sealed complaints, all without notice to the Defendant, has been repeatedly detailed in prior Motions to Dismiss by other Adversary Defendants and need not be repeated. Likewise, the extent to which the confirmed First Amended Joint Plan (the "Amended Plan") Docket No. 12359, related Disclosure Statement and the subsequently filed Modified Plan, confirmed on July 30, 2009, Docket No. 18707, failed to preserve the Plaintiffs' claims against the Adversary Defendants and the applicable legal arguments related thereto, have also been previously briefed in motions which Defendant has joined and will not be repeated. [1] To the extent not specifically dealt with in this Court's Order, dated September 7, 2010, those arguments were preserved (¶5).

Because many of the legal grounds raised by other Adversary Defendants' challenge to the complaints against them are in many respects based on facts similar to the facts herein, and were preserved as mentioned above, Defendant incorporates herein and joins all such legal arguments and does not repeat them.

---

[1] Plasco, Inc. has joined in the following Motions to Dismiss: (1)Motion of HP Enterprise Services, LLC (Adversary No. 07-02262; Docket No.16);(2) Motion By Wagner-Smith Company (No. 05-44481; Docket No. 19401); (3) Motion by Microchip Technology Incorporated (No. 05-44481; Docket No. 19677). Plasco also joined the following Reply Motions: (1) Reply Of Wagner-Smith Company (Adv. Proc. #07-02581; Docket No.20306); (2)Reply and Joinder In Further Support Of Motion of Affinia, GKN, MSX and Valeo (Adv. Proc. #07-02198; Docket No.20304); (3) Reply of HP Enterprise Services, LLC (Adv. Proc. #07-02262; Docket No. 31);(4) Reply Motion of Johnson Controls, Johnson Controls Battery Group, et al (Adv. Proc. #07-2348; Docket No.20298).

Specifically that is: (a) this memorandum will address only those issues of law that are impacted by the unique facts of this Defendant and its relationship with the Debtors, the specific prejudice to this Defendant resulting from the Plaintiffs' tactics in keeping knowledge of this complaint from it, at a time when Defendant had extraordinary negotiating strength in its continuing dealings with Debtors; and the impact of this prejudice on the due process, statute of limitations, res judicata, judicial estoppel and other related legal issues previously made in motions and briefs which Defendant has joined; and (b) the extent to which the Amended Complaint against Plasco is still deficient and should be dismissed with prejudice.

### Summary of Defendant's Position

The Defendant was not served with the Extension Motions or the orders that granted them. Not having received notice of the Extension Orders, Plasco may challenge them de novo as this Court stated during the oral argument on July 27, 2010.

Delphi was not entitled to get the Extension Orders:

– It was a misuse of Rule 4(m) to authorize a delay in service; the purpose was to be used to facilitate service only; and
– Plasco suffered great prejudice by not getting notice of the Extension Orders and losing its right to leverage its position as the single sole source of a particular component part.

Plaintiff's claims are futile:

– As to one alleged transfer of $1,200,000, it never occurred and no antecedent debt was identified, nor were the transfers made by Plaintiff;
– The Plaintiff released all of its claims against Plasco in a written document, i.e. a letter between the parties dated 04/22/09; and
– Plaintiff is not the entity to which Plasco sold its merchandise, nor the entity that paid it.

## **Background**

The attached Declaration of Ronald Schweller, Plasco's President, dated November 24, 2010, attached hereto as Exhibit 1, confirms the following: At the time of Plaintiff's filing, Plasco was the single source supplier for the assembly of Primary and Secondary Master Cylinder Pistons, with plants in Kettering and Spring Valley, Ohio and had been producing automotive parts for the debtors for some 25 years prior to the bankruptcy filing.

The Debtors were Plasco's largest customer. Because of the Debtors' well publicized financial difficulties, (see Schweller Decl. at ¶10), Plasco's lender called its loan on or about April, 2005.

This was a matter of great urgency to Debtors as well as to Plasco. The reason was that Plasco was the Debtor's only source specifically designed for the component parts being produced by it; that these parts were custom made for Debtors and deliveries by Plasco were required to be delivered, often twice a day in large quantities and sometimes on Saturdays, and could not easily or quickly be arranged to be produced elsewhere; and these parts were used in turn, system sold by Debtors to their original equipment manufacturer customers ("OEMs") in the domestic automotive industry, which included no less than 8 of the leading car manufacturers in this country. (Schweller Decl. at ¶ 9).

Plasco had been on thirty day terms with Debtors for many months before April 2005. After that when Plasco's lender called its loan, the parties continued doing business on that same basis until Debtors filed in October 2005. Both parties realized however, that Debtors had to help Plasco come up with a plan to pay off its lender before it foreclosed the loan legally after Plasco tried but could not secure other financing in order to keep Plasco producing for Debtors. (Schweller Decl. at ¶ 10); and so began to negotiate a solution.

Negotiations continued between Delphi, Plasco and Plasco's lender until 11/17/05 when the three parties entered into a series of written agreements. The net effect of the only agreement (the "Accommodation Agreement," see Exhibit 2) relevant for these purposes was that:

1. Plasco agreed to continue to produce and deliver to certain Delphi entities under all of the existing purchase orders/requirement agreements between them, for the balance of these orders as extended.[2]

2. The Plaintiff agreed to honor those purchase orders and not to resource with another supplier provided Plasco performed; and

3. Plaintiff paid off Plasco's lender on that date, in part by offsetting $850,000 of its owed on pre-petition debt owing to Plasco, and agreed to pay the balance over time; and if Plasco fully performed all of the purchase orders, it would earn a "bonus" of $600,000 at the end of the day.

By reason of the provision in (2) above of the Accommodation Agreement (¶4), Debtors effectively assumed all of the existing purchase orders between Defendant and the pre-filing Delphi entities. These purchase orders were continued between the Defendant and the Debtors until April of 2009, when parties signed a letter agreement dated 04/22/09 settling up all of their accounts, selling and transferred certain of Plasco's equipment to Debtors' new sources and released each other from all claims. (See Ex. 3, hereinafter the "04/22/09 Letter" or the "Release," and Schweller Declaration at ¶¶14, 25).

## ARGUMENT

### I.    THE COURT'S EXTENSION ORDERS SHOULD NOT HAVE BEEN GRANTED:DEFENDANT'S LACK OF NOTICE IRREPARABLY PREJUDICED DEFENDANT

### A. Plasco, Inc. Did Not Receive Notice of the Extension Motions and the Extension Orders Should Be Vacated As Against Plasco, Inc. and May Challenge Said Orders *De Novo*

---

[2] Most of Plasco's purchase orders which were assumed and continued pursuant to the Accommodation Agreement, were with "Delphi Energy & Chassis Systems," not the Plaintiff herein. Plasco did not begin to amend purchase orders in the name of Delphi Automotive Systems, LLC ("DAS") the Plaintiff herein, until 2006. All of the purchase orders between the parties were extended and completed; and in 2009 the parties executed the 04/22/09 Letter (as defined below). See Schweller Decl. ¶14.

While Plasco knew that the Debtors were reorganizing under the Bankruptcy law, it had no actual or constructive notice that:

(a) there was a complaint filed against it under seal;

(b) that there were applications made for the extension orders obtained by Debtors;

(c) that these extension orders were granted; or

(d) that Debtors retained the right to pursue the cause of action against Plasco in the Plan or the Modified Plan.[3]

As a result, the Defendant was never given notice of the complaint filed against it, nor able to determine whether it had been named even had it checked the court docket.

**B. Plasco Was Prejudiced By the Lack of Notice**

Plasco never filed a proof of claim against Delphi. Plasco did not have an attorney appear for it or file a request for notice in the Delphi case. Schweller Decl. at ¶6. Thus, Plasco was not on the Debtors' Master List or the ECF notice list (the "2002 List") that Delphi used to serve its various motions. As set forth below, it is undisputed that the Debtors failed to give particular notice or any other notice to Plasco that they filed the four Extension Motions, and as a result, Defendant was deprived of a full and fair opportunity to litigate the dispute. Specifically:

(i) Plasco did not receive actual, or any other notice, of the First Extension Motion, Docket No. 8905, or the Order granting it. Docket No. 9105. See Debtor's Affidavit of Service, dated August 10, 2007, Docket No. 9039; and Affidavit of Service, Docket No. 9141;

(ii) The Second Extension Motion, Docket No. 12922 or the Order granting it. Docket No. 13277. See Debtor's Affidavit of Service, dated March 4, 2008, Docket No 12970; See Affidavit of Service, Docket No. 13315;

---

[3] The Adversary Defendants' argument that Debtors in the Plan and the First Amended Plan and the Modified Plan reserved the right to bring preference actions <u>only</u> against the four (4) specifically named defendants; and Debtors' opposing contentions with respect to the interpretation of 7.19 (as a "valid reservation" of these preference actions even though the defendants were not identified by names, but only by reference to sealed cases by <u>number</u>) have previously been briefed.  See Motion to Dismiss, HP Enterprises, at ¶¶ 44-55 (Docket No. 20331) and Reply in Further Support of Motion to Dismiss, Johnson Controls (Docket No. 20298), are not repeated herein and were specifically preserved in the Court's Order dated September 9, 2010 at ¶5 (Docket No.20579), awaiting each individual showing of what notice it did or did not receive, and what prejudice it suffered by reason of not receiving such notice.

     (iii)   The Third Extension Motion Docket No. 13361 or the Order granting it. Docket No. 13484. See Debtor's Affidavit of Service, dated April 16, 2008, Docket No. 13415; Affidavit of Service, Docket No. 13540; and

     (iv)   The Fourth Extension Motion Docket No.18952 or Order granting it. Docket No. 18999. See Debtor's Affidavit of Service, dated October 7, 2009, Docket No. 18967. See Schweller Decl. ¶7.

Delphi confirms this fact in Debtors' Omnibus Response in Opposition to multiple Defendants' motions to dismiss. *See* Debtors' Omnibus Response, Docket No. 20225, at p. 29, fn. 8.

This Court has stated that those preference defendants, such as Plasco, who did not receive any notice of the Extension Motions, could challenge said motions *de novo*. See July 22, 2010 Tr., at pp. 103, 119; and further, with respect to a defendant receiving no notice, this Court held, "it's a slam dunk as far as looking at the order as brand new." Id. at 107.

Likewise, Plasco was not on "inquiry notice" of the Extension Motions. There is a heavy burden on the Plaintiff to establish such notice. Staehr v. Hartford Fin. Svcs. Group, 547 F.3d 406, 427-429 (2d Cir. 2008). There are no facts Plaintiff could show that it was reasonable for Plasco to have inquired about the Extension Motions or the complaint filed against it. Indeed, Delphi admits it intended to conceal these facts from the preference Defendants sued and instead tries to justify it.

Not having been served with notice as detailed above, Plasco had the right to ignore the entire proceeding until formally served. Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 350-351 (1999).

Given the fact that Plasco was a critical sole source supplier of Debtors from 2005-2009, Plasco was in the position to exert extraordinary negotiating pressure (see Schweller Declaration at ¶¶19-24). Specifically, had Defendant known of the filing of this claim and the requests to extend time to serve, Plasco could have but were denied the opportunity to:

a.  Insist that the complaint be dismissed or the production orders that had been assumed via the Accommodation Agreement be formally assumed under the terms of the existing Order of this Court dated December 12, 2005 (Docket No. 1494); or

b.  Consider contract assumption issues and its rights to compel assumption, etc.  Schweller Decl. ¶24.

Nor can it be seriously argued that Plasco would not have negotiated for dismissal of the complaint had it known of it.  For sure, Plasco struggled to stay in business for its own benefit, but given its leverage as a critical single source supplier, even in 2007 when the complaint against it was filed and first extended, it never would have continued performing (knowing that at the end of the day it would be faced with having to defend a claim against it by Debtors for some $5,000,000) without insisting the Plaintiff dismiss the complaint or insulate itself from liability.  Since Debtors lacked any realistic choice to go elsewhere for what Defendant produced Plasco was prejudiced in not being able to use that leverage at that point in time. Schweller Decl. ¶¶19-27.

Compelling evidence of this prejudice to a critical sole source supplier like Defendant, is acknowledged by Debtors' own admission that as a practical matter, it absolutely had to have the continued supply of parts from such suppliers and the "devastating" effect any disruption of supply from them would have on Debtors' commitments to its own OEMs and the "potentially catastrophic damage claims from Debtors' OEMs. See Debtors' Motion for Order Authorizing Continuation of Vendor Rescue program and Payment of Prepetition Claims of Financially Distressed Sole Source Suppliers, dated October 8, 2005, Docket No. 0017, ¶¶16-17.

Debtors own acknowledgement of the effect non-payment of these critical sole source suppliers, applies as well to the effect notice of these claims would have had on the suppliers' negotiating position if that gave critical sole source suppliers like Plasco the negotiating leverage to

stop supplying Delphi unless the claims against it were released. This is a clear showing of the prejudice to Defendant, confirming its strong bargaining position, yet being denied notice that a suit had been filed against it when it might have been able to negotiate a resolution. Obviously, Plaintiff is precluded from denying such effect now by reason of its earlier admissions. In re BHS & B Holdings LLC, 420 B.R. 112, 132 (Bankr. S.D.N.Y. 2009). A fortiori, this applies as well to a position taken by plaintiff on a motion addressed to the complaint. As such, Delphi cannot deny these admissions to argue that even if Plasco had notice of the complaint against it, it was not so critical to Delphi, and that the loss of bargaining position described by Plasco is illusory and/or conjecture.

Plasco's lost opportunity to negotiate for its release has been irretrievably lost. As a result, Debtors have had it both ways:

(1) On one hand, they were able to continue their relationship with Plasco, effectively getting the benefit of the Accommodation Agreement wherein both parties effectively assumed the existing purchase orders to their completion. This of course, inured to Debtor's benefit and permitted them to reorganize and/or sell and liquidate in an orderly way; and

(2) On the other hand if permitted to use Rule 4(m) as they have they will have done so without Plasco having received notice that would have enabled it to negotiate for:

    (a) a formal assumption of the purchase orders so that it would comply with the Assumption Order (so as to preclude this complaint); or

    (b) dismissal of the complaint.

The result is that now, after Plaintiff has obtained the full benefits of having Plasco perform all of the open (executory) purchase orders at the time of filing, and despite the Plaintiff having released all of its claims against Defendant, they seek to be able to pursue their preference claim against Defendant.

Debtors mistakenly invoked §107(b)(1) in their requests to file the preference actions under seal, claiming knowledge of those actions as "confidential commercial information" in need of protection so as to preserve the status quo.  Disclosing information of these adverse proceedings was never "information which would cause an unfair advantage to competitors… as to the commercial operations of the debtor" as required.  In Re Orion Pictures, 21 F.3d 24, 27 (2d Cir. 1994).  See also In Re 1031 Tax Group, LLC, 2007 WL 1836525, *2 (Bankr. S.D.N.Y. 2007).

Given the relationship between Debtors and Plasco, the impact of Plaintiff's not serving the complaint within the Rule 4(m) allowed time or any other reasonable extension illustrates the due process rationale of Rule 4(m); the legal effect of this lack of notice on claims of judicial estoppel, laches, and all of which have been previously briefed in briefs in support of motions to dismiss which Plasco has previously joined[4], need not be repeated, and were specifically preserved.  See Pt. II infra.

The Court's discretion under Rule 4(m) is not limitless.  It is meant to protect defendants from being sued without timely notice and should not be permitted to be used as an end run around the applicable statute of limitations, Efaw v. Williams, 473 F.3d 1038, 1041 (9th Cir. 2007). It is proper for this court to consider de novo the nature of the prejudice suffered by defendant not receiving notice. Troxell v. Fedders of N.A..Inc., 160 F.3d 381, 383 (7th Cir.1998).  In this case, that is, the very real and compelling economic reasons why Debtors did not want critical sole source suppliers like this Defendant to learn of the suit(s) filed against them constitute the prejudice suffered. Facts weigh heavily against the indisputable fact that Defendant was not given notice of the suit against it, the four extensions filed against it, or the Plans where the suit was allegedly "retained" by listing the case number but not the name of this defendant. Viewing the totality of Debtors' action with the benefit of

---

[4] See also Motion to Dismiss, ATS Automation Tooling Systems, p.30-31, Docket No. 20001; and footnotes 1 and 3, supra) on the issue of  Res Judicata and Laches.

hindsight, Debtors clearly went out of their way not to give this Defendant notice of the claim filed against it under seal.

It would be disingenuous for Delphi to claim that the Accommodation Agreement does not formally comply with each of the specified conditions in the Assumption Order and is thereby not effective as an assumption that precludes a preference claim under the "well-settled doctrine that a preference action may not be maintained for payments made in connection with an assumed executory contract" See In Re Teligent, 325 B.R. 219, 223 (S.D.N.Y. 2003) citing In Re Kiwi Airlines, Inc., 344 F.3d 311, 318 (3d Cir.2003) and In Re Superior Toy & Manufacturing, Co., Inc., 78 F.3d 1169, 1172 (7th Cir.1996); and the attendant principles of equitable estoppel applied in In Re Ionosphere Clubs, Inc., 85 F.3d 992, 999-1001 (2d Cir.1996).

Even if that were true (which Plasco refutes), had Plasco had notice of the claim against it, it would have availed itself of its right once the Plan was confirmed and under §365(d)(2) to move to compel Plaintiff to either assume or reject the executory purchase orders.  In Re The Penn Traffic Company, 524 F.3d 373 (2d Cir.2008).

While the choice would then have been Delphi's, given Delphi's admitted dependence on continued production from Plasco, it would have undoubtedly chosen to assume.  Even if it is not possible to know what Delphi would have done, nor to know how this Court would have decided whether assuming the contract would have been a good business decision or not, it is indisputable that the lack of notice denied Plasco the right to compel Delphi to make that choice and to have its day in court on the issue if Delphi refused.  All of this is evidence of the actual prejudice suffered by Plasco resulting from the lack of notice of the claims against it and the Extension Orders.

### C. Prejudice Is Presumed

The Second Circuit in <u>Shannon v. GE</u>, 186 F.3d 186 (2d Cir. 1999) (internal citations and quotations omitted) recognizes that prejudice from unreasonable delay in serving of a complaint may be presumed, especially when the delay was prolonged. <u>Anderson, Anderson v. Air West, Inc.</u>, 542 F.2d 522, 525 (9th Cir. 1976) (dismissal under Rule 41(b) based on failure to serve for a year despite entry of an order extending service period); and <u>Zapata v. New York</u>, 502 F.3d 192, 198 (2d Cir. 2007) (prejudice is obvious by long extension of service beyond the limitations period, especially if defendant had no actual notice of the existence of the complaint until the service period expired).

## II.    LEGAL ISSUES PRESERVED BY ORDER DATED SEPTEMBER 7, 2010

The facts surrounding the particular prejudice to this Defendant as discussed above support the legal arguments contained in many of the briefs previously filed in the "First Wave" of motions to dismiss, all of which were preserved, including but not limited to the Motion to Dismiss filed by ATS Automation Tooling Systems, p.30-31, Docket No. 20001, pages 21-32. These arguments which are summarized below, were preserved, and need not be repeated and are incorporated herein:

(1) The Service Extension Orders Must be Set Aside Pursuant to Civil Rule 60(b)(4) As They Are Void Because the Defendant was Deprived of Constitutional Rights to Due Process;

(2) The Service Extension Orders Must be Set Aside Pursuant to Civil Rule 60(b)(6) Because of the Exceptional Circumstances and Extreme Prejudice Suffered By Defendant;

(3) The Service Extension Orders Must be Set Aside Because No Proper Cause Existed for the Extensions;

(4) The First Service Extension Order Should Be Vacated Because it Improperly Authorized Filing the Complaint Under Seal;

(5) The Service Extension Orders being Vacated, the Amended Complaint Must Be
    Dismissed With Prejudice;

(6) The Amended Complaint is Barred By Judicial Estoppel;

(7) The Amended Complaint is Barred By Res Judicata; and

(8) The Amended Complaint is Barred By Laches.

### III.    ANY AMENDMENT OF THE COMPLAINT IS FUTILE

#### A.  Debtors Released Plasco Of Any And All Claims

The First Amended Joint Plan ("Amended Plan") (Docket No. 11386) submitted by the

Debtors on December 10, 2007, and confirmed by Court Order on January 25, 2008, Docket No.

12359, specifically authorized the Debtors, in their sole discretion and without further Court

approval, to "determine whether to bring, settle, release companies or enforce such Retained

Actions…" (See Amended Plan, Docket 11390, Section 7.19; Debtors' Omnibus Response to

Motions to Dismiss, ¶77, Docket No. 20225).[5]

In fact, the Plaintiff and this Defendant did just that: The April 22, 2009 Letter between them

(Exhibit 3 attached to Schweller Declaration, and hereinafter the "Release") provided in relevant part:

> 8(a). Provided Plasco satisfies Delphi's final production requirements in accordance with
> Schedule A (as may be modified by the parties from time to time) including the timely
> shipment of the Delphi Parts to Delphi, and upon the delivery of possession of the Delphi
> Tooling to Delphi at the end of the Final Production Period, <u>Delphi shall be deemed to waive
> and forever discharge Plasco of any and all claims, demands and liabilities of any kind or
> nature it has or may have against Plasco</u>. For clarity, the release shall be self executing upon
> satisfaction of the conditions set forth in this subparagraph (a).(emphasis added).

Even though the Release is a document extrinsic to the Amended Complaint and not

specifically "incorporated by reference," the Court may nonetheless consider it on a motion for leave

to amend (as on a Rule 12(b)(6) motion) where the complaint "relies heavily upon its terms and

---

[5] The Amended Plan was later modified and confirmed by Court Order on July 30, 2009 ("the Modified Plan"), Docket
No. 18707.

effect." That is, in such instances the document is integral to the complaint. <u>Chambers v. Time</u> <u>Warner, Inc</u>., 282 F.3d 147, 153 (2d Cir. 2002), *quoting* <u>International Audiotext v. AT&T Co</u>., 62 F.3d 69, 72 (2d Cir. 2002).

Therefore, an extrinsic document such as the Release may be considered as part of the pleadings for purposes of deciding this motion for leave to amend if it is attached to the Amended Complaint, incorporated by reference, or in this case, integral to the complaint. <u>Chambers</u> instructs us that to be integral to a pleading, the plaintiff must have (i) "actual notice" of the extraneous document; and (ii) relied upon the documents in framing the pleading. <u>Chambers</u>, 282 F.3d at 153.

Plaintiff obviously had "actual notice" of the Amended Plan and the Release; and the Amended Complaint relies heavily upon the Confirmed Amended Plan, its terms and effects. Indeed, that Plan is the Debtors' basis for their claim that they have the right under that very document, to bring these adversary pleadings, having purportedly reserved them as "Retained Actions" even though the "reservation" was without mentioning their names. See Reorganized Debtors' Omnibus Response to Motions Seeking to Vacate and Dismiss the Extension Orders, dated June 7, 2010 (Docket No. 20225, ¶¶75-81). Likewise, Delphi's right to release the Retained Actions, as well as its right to bring them, arises from the same Amended Plan. Plaintiff's Amended Complaint implicitly relies on its denial that it released the Retained Action which it purportedly reserved in the same way it implicitly relies upon its claim that it reserved its right to bring these actions against the Adversary Defendants.

This makes the issue of the Release, its terms and effect, an integral part of the Amended Complaint and the issue properly considered on the issue of the futility of the Amended Complaint. Just as Plaintiff argues its position on this Motion based on provisions in the Amended Plan, Defendant has the right, in opposition to Debtors' Motion for leave to Amend, to claim that the

Debtors right to release Retained Actions without further court approval, "expressly" given to Debtors in the Amended Plan, was in the particular instance of this Defendant, actually so released, and as such, the proposed Amended Complaint is futile and should be dismissed with prejudice.

### IV.    PURSUANT TO THE PLEADING STANDARDS OF *ASHCROFT v. IQBAL* THE FIRST AMENDED COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM

#### A.  The Amended Complaint Fails to Satisfy the *Iqbal* Pleading Standards With Respect to Debtors' Claim of Insolvency During the Preference Period

The avoidance of a preferential transfer is contingent on the debtor being insolvent on the date of the transfer. See 11 U.S.C. §547(b)(3). Further, under §101(32)(A) of the Bankruptcy Code, a debtor is insolvent when "the sum of such entity's debts is greater than all of such entity's property, at a fair valuation...." 11 U.S.C. §101(32)(A).

Section §547(f) provides a debtor with a presumption of insolvency during the 90 days preceding bankruptcy. But schedules showing solvency rebutted that presumption so that the trustee bore the burden to come forward and prove insolvency.  See In re Roblin Industries, Inc., 78 F.3d 30, 34-35 (2d Cir.1996); and Iridium IP, LLC v. Motorola, Inc., 373 B.R. 283 (Bankr. S.D.N.Y. 2007).

The court in In re Caremerica, Inc., 409 B.R. 737, 754 (E.D.N.C. 2009) considered the issue of insolvency post Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009). Specifically, it held:

> "in light of the heightened pleading standard expressed in Iqbal, the trustee is obligated to support his allegation with facts showing that it is plausible that creditors would receive less than a 100% payout in a liquidation. The court finds that the debtors' summary of schedules, reflecting liabilities far greater than assets, is sufficient to satisfy the trustee's pleading requirement. See also Precision Walls, Inc. v. Crampton, 196 B.R. 299, 303 (E.D.N.C.1996) (summary of schedules demonstrating that liabilities exceeded assets was sufficient to support the bankruptcy court's finding that unsecured creditors would receive less than 100% on their claims) (emphasis added)."

Id. at 754.  In response to the Trustee's argument that Iqbal standards create an "undue burden" the court in Caremerica responded:

"the court admits that claims for relief are more difficult to plead sufficiently following <u>Twombly</u> and <u>Iqbal.</u> However, the trustee is certainly more likely to have access to this information than the antitrust plaintiffs in <u>Twombly</u> or the Pakistani detainee in <u>Iqbal</u>. If these claimants were held to a heightened pleading standard, so too can a trustee in bankruptcy. After all, the trustee has theoretically had all of the books and records of the debtors for up to two years prior to bringing these causes of action, with the full discovery powers of the court through 2004 exams and other means available during that time." <u>Id</u>.

Thus, under <u>Iqbal</u> and <u>Roblin</u>, while Debtors have a presumption of insolvency on and during the 90 days immediately preceding the date of the filing of the petition pursuant to §547(f), Debtors have the heavy burden to rebut their own scheduled and also are now bound by heightened requirements to show facts that plausibly support its legal conclusions.

Applying this interpretation of <u>Iqbal</u> to the allegation of "insolvency" herein, the First Amended Complaint in this action merely sets forth the formulaic claims that "[p]ursuant to Bankruptcy Code 547(f), for purposes of this Adversary Proceeding, Plaintiff is presumed to have been, and was in fact, insolvent at the time the Transfers were made." Such a bare bones allegation is insufficient under <u>Iqbal</u>.

Specifically, the following documents filed by Debtors themselves in Proceeding No. 05-44481 in close proximity to the Debtor's initial bankruptcy petition, demonstrate that Delphi was in fact solvent during the 90 day prepetition period and at the time of filing and preclude them from satisfying <u>Iqbal</u>'s requirements as to "insolvency":

1. Delphi Corporation, Schedules of Assets & Liabilities, filed 1-20-06, Docket No. 1854;

2. Delphi Corporation, Statement of Financial Affairs, filed 1-20-06, Docket No. 1855.

These documents show that Delphi had a book-value positive net worth, specifically, that Delphi had a positive book value net worth of over 2 billion dollars. This fact was subsequently further reaffirmed by Delphi in multiple Amendments to its Schedules of Assets & Liabilities (see Docket No. 1999, filed 2-01-06; Docket No. 3268, filed 4-18-06; Docket No. 10575, filed 10-12-07; Docket

No. 14325, filed 10-10-08). All of the documents were sworn to under the penalty of perjury by John D. Sheehan, Vice President and CFO of Delphi Corporation and belie the conclusory allegation of insolvency in the Amended Complaint. Given that Debtors' own schedules have been filed with the Court, these documents are thus subject to judicial notice. *See* <u>In re Theatre Row Phase II Associates</u>, 385 B.R. 511, 520 (Bankr. S.D.N.Y. 2008) (holding that a court may take judicial notice of all documents filed in a case); <u>In re BH S & B Holdings LLC,</u> 420 B.R. 112, 132 (Bankr. S.D.N.Y. 2009)(dismissing claims with prejudice and holding that where "documents contain statements that contradict allegations in a complaint, the documents control and the court need not accept as true the allegations in the complaint," *citing* <u>Roth v. Jennings</u>, 489 F.3d 499, 509-11 (2d Cir. 2007).

Given that Debtors cannot undo or change their own schedules or the affidavits of their own officers which attested to their solvency, the dismissal should be with prejudice.  Nor can the Debtors change the position now from the one they took in their early Extension of Avoidance Action Service Deadline Motions which was based on their solvency and that there would be a "100% Plan."

Since the above positions were adopted by this Court by virtue of its granting the Motion, judicial estoppel precludes Debtors from taking a contrary position.  <u>In Re Venture Mortgage Fund, LP</u>, 245 B.R. 460, 470-472 (S.D.N.Y. 2000), *aff'd*, 282 F.3d 185 (2$^d$ Cir. 2002).

In addition, Delphi's value in the marketplace is further evidence of its solvency that precludes it from overcoming its burden; and market price is often the best measure of value.  See, e.g., <u>Bank of America National Trust & Savings Assoc. v. 203 LaSalle Partnership</u>, 526 U.S. 434, 457 (1999); and <u>Iridium IP, LLC v. Motorola, Inc.</u>, 373 BR at 393.  Delphi was trading on the New York Stock Exchange at around $3-5/share in the month leading up to its filing suggesting a market capitalization of between $1,122,000 and $3,312,000.

**B. The Amended Complaint Fails to Allege a Purchase Order or an "Antecedent Debt" for an Alleged Transfer of $1,200,000 on October 7, 2005**

The first preferential transfer of $1,200,000 allegedly made by Plaintiff to Defendant on Exhibit I of the First Amended Complaint on October 7, 2005, expressly fails to identify a purchase order or the nature of an antecedent debt.  As such, this alleged transfer is insufficient on its face. §547(b)(2); In re Caremerica, Inc., 409 B.R. 737, 750-751 (Bankr. E.D.N.C. 2009).  This deficiency and the advice that Plasco never received the $1,200,000 as alleged, was pointed out to Plaintiff's counsel in a safe harbor letter and counsel has done nothing to remove it.

**C. The Amended Complaint Fails to Identify with Particularity the Party to Whom Defendant's Good were Sold**

The "plaintiffs" in the Original Complaint were "Delphi Corporation ('Delphi') and all of the other "debtors and debtors-in-possession." The Proposed Amended Complaint names only one Plaintiff, "DAS." The Reorganized Debtors did not seek leave to pursue an amended complaint on behalf of any plaintiff, other than DAS. The Amended Complaint further alleges that *"Plaintiff entered into certain purchase agreements (the "Agreement") with the Defendant for the performance of services to Plaintiff and the Reorganized Debtors."* at ¶13 (emphasis added). This is demonstrably not true. See Schweller Decl. ¶31.

Most of Plasco's purchase orders that were assumed and continued pursuant to the Accommodation Agreement were with Delphi Energy & Chassis Systems. Plasco did not start to amend purchase orders to be in the name of Delphi Automotive Systems, LLC ("DAS") until 2006. See Schweller Decl. ¶32. Likewise, the specific purchase orders that Plaintiff lists on Exhibit I to the First Amended Complaint, were not with Plaintiff and contradict Plaintiff's conclusory allegation in ¶22 of the First Amended Complaint.  See Schweller Decl. ¶32.  Thus, the First Amended Complaint has failed to "plausibly establish" that DAS, listed as the transferor in the First Amended Complaint,

was the Plaintiff or party to whom the merchandise was (sold).  As such, Plaintiff has not alleged a required element of a preferential transfer and its First Amended Complaint should be dismissed.

### D.  The Amended Complaint Fails to Show that Plaintiff Paid Plasco

The First Amended Complaint, alleges in conclusory fashion, contrary to <u>Iqbal</u> that the "Plaintiff paid" the challenged transfer.  It fails to recite facts to support this.  Given that work was performed for subsidiaries of Plaintiff and payments came from the subsidiary plants, Delphi has not shown that Plaintiff was the entity that paid Plasco and in fact, it did not.  See Schweller Decl. ¶31-32.

### V.    NO FURTHER AMENDMENT SHOULD BE PERMITTED

This Court made clear on the record during the hearing on the "First Wave Motions" that it would show no tolerance if Delphi presenting a proposed amended complaint that failed to meet its minimal pleading requirements.  Specifically, responding to one counsel's request that Delphi should be held to a higher standard of pleading specificity given Delphi's five years to prepare for this adversary proceeding, this Court stated:

> [I]t's a motion for leave to amend the complaint on unusual circumstances.  *It's really their risk if I turn them down again, right*?  [I] think that the risk of being turned down on the basis [that] the complaint still isn't good enough [after amendment] is a serious enough – *the consequences of that are serious enough* so I assume that the plaintiffs are going to be pretty careful.

7/22/10 Tr., at p. 213.

Delphi's Proposed Amended Complaint fails to meet the minimum pleading requirements identified in the Dismissal Order. Accordingly, no further amendment is warranted, and Delphi's avoidance action against Plasco should be dismissed with prejudice.

## VI.    INCORPORATION OF OTHER DEFENDANTS' BRIEFS

Plasco incorporates all of the other meritorious arguments raised by the other preference defendants in opposition to Delphi's motions for leave to amend with regard to them.

## CONCLUSION

For all of the reasons set forth above, Delphi's Motion should be DENIED.


Dated: White Plains, New York
        November 24, 2010

                            SCHLANGER & SCHLANGER, LLP


                            By:  /s/ Michael Schlanger, Esq.
                                 Michael Schlanger, Esq. (MS-1493)
                                 1025 Westchester Avenue, Suite 108
                                 White Plains, New York 10604
                                 Tel. 914-946-1981
                                 Fax: 914-946-2930
                                 Email: michael@schlangerlegal.com
                                 *Attorneys for Plasco, Inc.*