Exhibit 2

## ACCOMMODATION AGREEMENT

Plasco, Inc. ("Plasco"), National City Bank ("National City"), and Delphi Automotive Systems, LLC, for itself and on behalf of its affiliated divisions (collectively, "Delphi") enter into this Accommodation Agreement (this "Agreement") on November 17, 2005.

## RECITALS

A.    Pursuant to various purchase orders, requirements contracts and/or supply contracts issued by Delphi to Plasco prior to the date of execution of this Agreement and accepted by Plasco (the "Purchase Orders"), Plasco is obligated to manufacture and provide Delphi with component parts consisting primarily of master cylinder primary and secondary piston assemblies, booster floating control valve assemblies, booster reaction rod and disc assemblies, suspension spring seat assemblies and booster check valve assemblies as set forth in the Purchase Orders (the "Delphi Parts"). The Purchase Orders were orally amended in August, 2005 to provide for certain pricing modifications on the Delphi Parts in the form of material surcharges.

B.    Plasco is currently Delphi's sole source for the Delphi Parts. Delphi represents that it will not be able to obtain the Delphi Parts from an alternative source in a timely manner.

C.    National City provided substantially all of Plasco's working capital and term financing pursuant to various loan and security agreements and related documents (as may be amended from time to time, the "Loan Documents") between Plasco and National City. There is currently due by Plasco to National City the approximate sum of $1,653,000 (the "National City Loan") under the Loan Documents which is secured by first security interests and liens in all or substantially all of Plasco's assets. Plasco is in default under the covenants contained in the Loan

Documents and a Letter Agreement, executed July 11, 2005, between Plasco and National City and the National City Loan expired on August 31, 2005.

D.    On October 8, 2005, (the "Petition Date"), Delphi filed a petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court")(Case No. 05-44481) and currently operates and manages its assets as a debtor in possession.

E.    As of the Petition Date, Delphi's net accounts payable owing to Plasco, including material surcharges, aggregate $1,538,351.21 (the "Delphi Prepetition Payables").

F.    Plasco has advised Delphi and National City that it faces certain financial and operational problems which may impact Plasco's ability to supply the Delphi Parts.

G.    Plasco acknowledges that any failure to timely deliver conforming Delphi Parts pursuant to the Purchase Orders will cause irreparable harm to Delphi.

H.    Plasco has requested that Delphi and National City provide certain financial or other accommodations to Plasco to permit Plasco to continue its operations.

I.    Delphi and National City have each separately requested of Plasco and of each other certain assurances and acknowledgements to induce Delphi and National City to provide the requested financial accommodations and to forbear from immediately exercising their rights under the Purchase Orders and Loan Documents, respectively.

J.    Subject to the terms of this Agreement, Delphi and National City have agreed to provide certain financial and other accommodations to Plasco.

WHEREFORE, based upon the foregoing recitals and for good and valuable consideration, the receipt and adequacy of which is acknowledged, the parties agree as follows:

## TERMS AND CONDITIONS

### National City Accommodations

1.      **Forbearance.**  National City agrees through the "Production Period" (defined below) to (i) forbear from enforcing any and all of its rights against Plasco or any of Plasco's assets, including any rights arising under the Loan Documents, and (ii) sell to Delphi the National City Loan on an installment basis pursuant to an Intercreditor and Subordination Agreement as provided in Section 9 of this Agreement, provided that:

A.      Delphi fully and timely satisfies all of its obligations under Sections 7 and 9 of this Agreement and the Intercreditor and Subordination Agreement;

B.      Plasco fully pays when due all accrued interest on the principal balance of the National City Loan at any time outstanding at the current rate charged under the Loan Documents; and

C.      Plasco and Delphi comply with all other material terms and conditions of this Agreement.

2.      **Production Period.**  For purposes of this Agreement, the Production Period means a period expiring on the earlier of (a) October 31, 2006, (b) an "Event of Default" (as defined below) or (c) when Delphi exercises its access right under the "Access Agreement" (defined below).

3.      **Consent.**  Simultaneously with the execution of this Agreement, National City will consent to that certain Access and Security Agreement of even date between Plasco and Delphi (the "Access Agreement") as provided therein.

**Delphi Accommodations**

4.    **No Resourcing.**        Subject to the terms and conditions of this Agreement and presuming that no "Event of Default" (defined below) has occurred, Delphi agrees it will not resource production of the Delphi Parts or any refinements or later generations thereof under the Purchase Orders during the Production Period; provided, however, that nothing contained in this Agreement shall prohibit Delphi from taking any and all actions reasonably necessary to prepare for resourcing, should it so decide in its sole discretion to resource at the end of the Production Period, so long as such actions do not interfere with Plasco's production of Delphi Parts.

5.    <u>**Inventory Purchase.**</u>

A.    Within ten (10) days following (i) the end of the Production Period if Delphi has elected to resource production of the Delphi Parts, or (ii) the assertion by Delphi of its access rights as set forth in the Access Agreement, Delphi will purchase from Plasco or National City (if National City obtains possession of and the right to sell such inventory by way of repossession, voluntary surrender, judicial intervention or otherwise) (in either case the "Inventory Purchase Date") and Plasco or National City, as appropriate, will sell to Delphi all raw materials, work in process and finished goods inventory of Plasco related to the Delphi Parts which are "usable" (defined below) by Delphi and in a "merchantable" (defined below) condition (the "Delphi Inventory").    Payment for such Delphi Inventory will be made by Delphi to Plasco or National City on account of the National City Loan.

B.    As used in this Agreement, "usable" means usable in the production of the Delphi Parts.  As used in this Agreement, "merchantable" means merchantable as that term is described in Uniform Commercial Code Section 2-314 and that the parts are in conformance with all technical and engineering specifications reference by or contained in the Purchase Orders.

C.    Delphi will only be obligated to purchase the Delphi Inventory under this Agreement if (i) Plasco or National City, as appropriate, can sell and deliver the Delphi Inventory free and clear of all security interests including any liens senior to National City's lien and security interest, and (ii) Delphi is permitted to take immediate possession of the applicable Delphi Inventory upon payment of the appropriate purchase price.

D.    In connection with any sale of the Delphi Inventory by Plasco, (i) Plasco will acknowledge that the prices set forth below to be paid by Delphi for the Delphi Inventory constitute commercially reasonable prices and that any sale pursuant to this Agreement shall be deemed commercially reasonable in all respects, including, method, time, place, and terms, and (ii) National City will represent and warrant that (a) National City has a first priority lien and security interest in the Delphi Inventory, (b) such sale is free and clear of National City's lien and security interest, and (c) National City consents to such sale.

E.    Any sale of the Delphi Inventory by National City will be a private sale pursuant to Uniform Commercial Code Section 9-610 and, in connection with such sale, National City will represent and warrant that (i) National City has a first priority lien and security interest in the Delphi Inventory, and (ii) National City has the right to sell the Delphi Inventory.  Delphi acknowledges that National City's obligation to sell the Delphi Inventory under this Agreement is subject to and limited by National City's capacity as a secured creditor.

F.    Delphi will purchase the Delphi Inventory for the following amounts:

(i)    For raw materials – 100% of Plasco's actual cost;

(ii)    For work in process – 100% of the applicable Purchase Order price for the Component Part in question prorated on a percentage of completion basis; and

(iii)    For finished Component Parts – 100% of the applicable Purchase Order price for the Component Part in question.

G.    For purposes of Section 5(F) above, percentage of completion shall be based on the mutual agreement of Delphi and Plasco or National City, as applicable, or if such agreement cannot be reached within seven (7) days after assertion of Delphi's access rights, Delphi and Plasco or National City, as applicable, shall jointly select an independent accountant who shall determine the appropriate percentages of completion of the work in process Delphi Inventory. Delphi and Plasco or National City, as applicable, shall equally share the fees and costs of such independent accountant (as they relate to the services required under this Section 5).

6.    **Limitation of Setoffs**.

A.    As to Delphi's accounts payable and other amounts now or hereafter due from Delphi to Plasco (the "Delphi Accounts"), Delphi agrees to waive and not to assert any defenses, rights and claims for setoffs and/or recoupment, including in connection with any defaults under the Purchase Orders or arising under otherwise applicable law, other than to the extent of "Allowed Setoffs" (as defined below).

B.    For purposes of this Agreement and subject to Section 12 of this Agreement, "Allowed Setoffs" means (a) setoffs, recoupments or deductions for cash in advance payments, defective or nonconforming products, unordered or unreleased parts returned to Plasco, short shipments, misshipments, improper invoices, mispricing, premium freight, vendor hostage payments by Delphi (whether for component parts or tooling), raw material or component parts purchased by Delphi to be used in connection with the production of Delphi Parts, any amounts that Delphi must pay vendors on account of valid statutory liens held against tooling owned by Delphi, duplicate payments or billing error, and (b) if Delphi becomes the assignee of National

City pursuant to Section 9 of this agreement, setoff of National City's Loan at the end of the Production Period.

C.    Subject to the terms of this Section 6, which is intended for the sole benefit of National City and Plasco, Delphi expressly reserves and <u>does</u> <u>not</u> waive any rights, claims, and interests of any kind or nature, including without limitation setoffs asserted for defense purposes, it has or may have against any other party.

7.    **Payment of Delphi Prepetition Payables.**    Concurrently    with    the execution of this Agreement, Delphi, pursuant to the authorization given by the Bankruptcy Court under the Order Under 11 U.S.C. §§105(a), 363, 364, 1107 and 1108 and Fed. R. Bankr. P. 6004 and 9019 Authorizing Continuance of Vendor Rescue Program and Payment of Prepetition Claims of Financially-Distressed Sole Source Suppliers and Vendors without Contracts, dated October 13, 2005 (the "Essential Supplier Order"), Delphi shall pay the Delphi Prepetition Payables, via wire transfer, as follows: (i) to National City, the sum of $850,000.00 for immediate credit to and the reduction of the balance due by Plasco on the National City Loan, and (ii) the sum of $688,351.18 into a trust account to be established by BBK, Ltd. ("BBK")(the "BBK Trust Account") for the benefit of Plasco to be used solely by Plasco to reduce Plasco's outstanding accounts payable due vendors who supply raw material or component parts to Plasco for the Delphi Parts (the "Delphi Related Vendors"), whether pursuant to Directed Sourcing Agreements between the respective vendor and Delphi or pursuant to Delphi engineering specifications, ~~in accordance with the payment schedule attached hereto as Exhibit "A"~~; provided further, that payments to Delphi-Related Vendors shall be conditioned on their prior agreement in writing to continue to supply raw material or component parts to Plasco on COD or more

favorable terms throughout the Production Period in exchange for the initial payment to be made from the Delphi Prepetition Payables.

8.    **Payment of Delphi Postpetition Payables**. Effective as of the Petition Date and continuing during the Production Period, Delphi shall change its payment terms on all accounts payable due Plasco from Delphi arising from shipments of the Delphi Parts made on or after the Petition Date (the "Delphi Postpetition Payables") from "net 30" to "net immediate." Notwithstanding anything herein to the contrary, any Delphi Postpetition Payables due as of the date of this Agreement, net of any cash in advance payments made by Delphi to Plasco on Delphi Parts shipped after the Petition Date, shall be paid concurrently herewith.

9.    **Loan Participations.**    During the Production Period, Delphi shall purchase from National City and National City shall sell to Delphi the National City Loan on a monthly installment basis in accordance with an Intercreditor Participation and Subordination Agreement executed by Delphi and National City, and acknowledged and consented to by Plasco, concurrently herewith (together with the additional participations as provided below, the "Participations").    To the extent necessary and in Delphi's sole discretion only, Delphi may purchase additional subordinated participations in the National City Loan from time to time during the Production Period up to a maximum of $250,000 in principal which National City agrees to advance to Plasco under the Loan Documents to fund any cash needs of Plasco in excess of the unit price (including material surcharges) paid by Delphi for the Delphi Parts. The additional participations will be made available to Plasco as non-revolving loans. Delphi will fund the Participations via the BBK Trust Account and BBK will wire transfer the purchase price of the Participations to National City. All Participations shall earn interest at the current rate provided in the Loan Documents. At the end of the Production Period, provided that Delphi has

paid in full all of the monthly installments provided for in the Intercreditor Participation and Subordination Agreement, Delphi shall (i) own 100% participation of the National City Loan, and (ii) be the assignee of all of the right, title and interest of National City in the National City Loan and Loan Documents subject to the limited collateral identified in Section 10 hereof.   The National City Loan shall be due and payable by Plasco to Delphi on or before 90 days after the expiration of the Production Period.

10.   **Limitation of Security.**   At the end of the Production Period, provided (i) Plasco is not in default of this Agreement, or (ii) Delphi has not exercised its right of access under the Access Agreement, Delphi, as the assignee of National City, agrees to limit the collateral subject to the security interests and liens securing the National City Loan under the Loan Documents to (a) Delphi Inventory, (b) machinery and equipment used in the production of Delphi Parts ("Delphi-Related Equipment"), (c) Delphi Postpetition Payables, (d) real estate located at 2434 Darnell Drive, Spring Valley, Ohio 45370, (e) the equipment located in the building located at 3060 Plainfield Road, Kettering, Ohio 45429 and (f) the real estate located at 3060 Plainfield Road, Kettering, Ohio and discharge its security interests and liens in all remaining property of Plasco.  Notwithstanding anything to the contrary contained in the Loan Documents or this Agreement, Delphi agrees that payment of the National City Loan shall be satisfied first from the proceeds of the following collateral in the following order:   Delphi Postpetition Payables, Delphi Inventory and then the Delphi Related Equipment.  If the proceeds of the foregoing collateral are insufficient to pay the National City Loan, Delphi shall have the right enforce its rights and remedies as a secured creditor under the Loan Documents and applicable state law against Plasco and any of the remaining collateral in any order that it deems appropriate.

11.    **Limited Waiver of National City Loan.**    Upon the end of the Production Period and provided Plasco has satisfied all of its material obligations under the Purchase Orders and this Agreement, including, without limitation, the payment in full of all accounts payable due Delphi-Related Vendors and cooperation with Delphi in the preparation of resourcing should Delphi decide to resource, Delphi shall forgive and otherwise waive payment of $600,000 of the indebtedness due on National City Loan. In making the determination whether Plasco has satisfied its obligations under this Agreement, any delays or disruptions in the delivery of Delphi Parts to Delphi as a result of the failure of a Delphi-Related Vendor, at no fault of Plasco, to timely supply Plasco with component parts in sufficient quantities and specifications shall not be the responsibility of Plasco.

12.    **Modification of Purchase Orders.**    Notwithstanding any other provisions contained in this Agreement, any of the Directed Sourcing Agreements executed between Delphi and various Delphi -Related Vendors or any of the Purchase Orders executed between Delphi and Plasco, Delphi agrees that the following terms and conditions shall govern the contractual relationship between Delphi and Plasco related to the Delphi Parts. To the extent that the provisions contained in this Agreement or subsequent agreements are in conflict with any of the provisions contained in any Directed Sourcing Agreement, Requirements Contracts, the Purchase Orders, releases, requisition, work orders, shipping orders, specifications and other documents which would normally be referred to as "Contracts", the Purchase Orders and Requirements Contracts existing between Delphi and Plasco, or in the general terms and conditions published by Delphi to be incorporated by reference into its Purchase Orders, the provisions contained herein shall govern.

a.  The Purchase Orders obligating Plasco to manufacture and deliver Delphi Parts
shall terminate at the end of the Production Period unless Plasco and Delphi
agree in writing to the continuation and extension of such agreements no later
than 45 days prior to the expiration of the Production Period. In this regard,
provided Plasco is not in default under this Agreement, Plasco and Delphi shall
meet beginning 120 days before the end of the Production Period to engage in
good faith discussions whether to extend or terminate their business relationship
under the Purchase Orders. In the event that the parties shall negotiate an
extension, the terms and conditions of such negotiated extension shall be set
forth in a written agreement signed by both Plasco and Delphi.

b.  Delphi agrees that contemporaneous with the execution of this Agreement, it
will provide to Plasco a copy of each Directed Sourcing Agreement for each of
the Delphi-Related Vendors identified in Exhibit "B" selling component parts
necessary for Plasco to assemble the Delphi Parts. Such Direct Sourcing
Agreements shall be a complete copy of the fully executed agreement and shall
contain the appropriate lead times, capacities, minimum purchase quantities on
any Directed Sourcing Agreement that requires it, and prices, price effective
dates and other information required to provide Plasco with the adequate supply
of all component parts to manufacture the Delphi Parts. Any discrepancies
between the Directed Sourcing Agreements and what the Delphi-Related
Vendors communicate to Plasco will be the responsibility of Delphi to resolve
within one week of receiving notification of the discrepancy.

c.  Delphi agrees to notify Plasco of any change in the terms and conditions or pricing of the component parts to be received from the Delphi-Related Vendor no later than three days prior to the effective date of such change. To the extent that any such change in terms and conditions or pricing is contained in any written modification memorandum or other written document between Delphi and the Delphi-Related Vendor, a copy of such written modification memorandum, change order, or addendum shall be supplied to Plasco within three days of the execution of such document. Delphi agrees to amend or replace the old Directed Sourcing Agreement and provide Plasco a complete copy of the new fully executed Directed Sourcing Agreement.

d.  Plasco agrees to provide Delphi an Escalation Sheet after receiving a written modification memorandum, change order, addendum, or new fully executed Directed Sourcing Agreement. Such Escalation Sheet shall detail changes in Plasco terms and conditions or pricing caused by changes in the terms and conditions or pricing of the component parts.  Delphi agrees to accept or reject price increases or decreases, and changes to terms and conditions communicated in the Escalation Sheet within three days. If accepted, Delphi agrees to amend or replace the Purchase Order to Plasco within three days.  If rejected, Delphi agrees to notify Plasco in writing within three (3) days. If rejected, Delphi agrees to acknowledge and process material obsolescent claims caused by changes in the terms and conditions or pricing of the component parts remaining in stock or open on a Plasco purchase order to various Delphi–Related Vendors.

e.   Delphi agrees to provide Plasco with Model Year Forecasts for all Delphi Parts
and to update such Model Year Forecasts upon request by Plasco, semi-annually
in April and October.  In addition, Delphi agrees to acknowledge and submit for
processing material obsolescence claims within three days of the transmission
by Plasco of the appropriate Material Termination Forms, it being understood by
Plasco that the processing of the materials obsolescence claim should take no
longer than four weeks to complete.  In addition, once processed Delphi agrees
to pay such material obsolescent claims as submitted upon such Material
Termination Forms on a net immediate basis.

f.   The Delphi Parts are being sold by Plasco to Delphi with a limited warranty.
The responsibility of Plasco is limited to defects in assembly of the parts by
Plasco or faulty assembly of the Delphi Parts by the employees of Plasco.  Any
defect in the Delphi Parts resulting from defects in the component parts supplied
to Plasco by various Delphi-Related Vendors shall not be the responsibility of
Plasco.  Delphi's sole remedy and recourse shall be to pursue the Delphi-
Related Vendor who manufactured the component part and delivered it to
Plasco.  Notwithstanding anything to the contrary contained in section 6 of this
Agreement, Delphi waives any and all rights to set off or debit any accounts
payable due Plasco as a result of the defects in the component parts supplied to
Plasco by any of the Delphi-Related Vendors.  Any defect in the Delphi Parts
resulting from shipping and handling damage will be resolved by the mutual
agreement of Delphi and Plasco.

g.  Delphi agrees that should additional tooling be required by Plasco in order to provide Delphi with the Delphi Parts, it shall be the responsibility of Delphi to purchase and supply such additional tooling.

h.  Delphi agrees that it shall fully reimburse Plasco for any Delphi-related materials, component parts or related costs that Plasco incurs as a result of ordering or purchasing such materials or component parts from Delphi-Related Vendors, without regard to the Delphi release schedules (DELFOR).  Delphi acknowledges that such reimbursement is necessary and reasonable because of the 8-16 week lead time necessary to secure such materials or components from Delphi-Related Vendors.

i.  Delphi agrees to be responsible for all additional freight, shipping costs, packing costs and other costs incurred by Plasco as a result of changes in government packing regulations.

j.  Delphi agrees to be responsible for all additional freight charges incurred by Plasco as a result of insufficient capacity to produce the component parts by various Delphi-Related Vendors.

## Plasco Accommodations

**13.  Continue to Manufacture.**  Except as may be specifically provided herein, during the Production Period, Plasco will continue to manufacture all Delphi Parts and deliver them in accordance with releases issued by Delphi, the applicable Purchase Order, and the terms and conditions of this Agreement.  Such obligations shall be conditioned upon Delphi Related Vendors continuing to supply Plasco with component parts in sufficient quantities and specifications.

14.    **Compliance with Essential Supplier Order.**    Plasco acknowledges and agrees to be bound by the terms and conditions of the Essential Supplier Order. Further, Delphi and Plasco agree that this Agreement shall serve as a "Trade Agreement" under the Essential Supplier Order.

15.    **Budget.**    Plasco and Delphi, together with BBK, shall work in good faith to develop a mutually acceptable budget for funding Plasco's operations relating to the production and delivery of Delphi Parts during the Production Period (as from time to time modified the "Budget"). Plasco agrees that it will use (i) all funding from Delphi, generated from the purchase of Delphi Parts or otherwise, solely to timely satisfy all of Delphi's production and delivery requirements, and (ii) its reasonable efforts to manage its use of cash to minimize the use of Delphi's additional participations.

16.    **Access to Facility; Financial Statements.**    Plasco will provide Delphi and its agents, representatives, and consultants reasonable access to Plasco's operations, at reasonable times during business hours for the purposes of monitoring the production of the Delphi Parts in accordance with the Purchase Orders and Plasco's compliance with the terms of this Agreement. Plasco agrees to fully cooperate with Delphi and its agents, representatives, and consultants to accomplish the ends contemplated by this Agreement. Further, Plasco shall provide Delphi with (i) monthly income/expense statements and balance sheets, which financial statements shall be compiled statements prepared in accordance with consistent sound and accepted accounting practices, and (ii) such other periodic statements or reports as Delphi may reasonably request.

17.    **Access Agreement.**    Simultaneous with execution of this Agreement, Plasco will enter into an Access and Security Agreement with Delphi (the "Access Agreement"). National City will consent to the Access Agreement as provided therein.

18.    **Acknowledgment of Delphi Ownership.**

A.    Plasco and National City acknowledge and agree that, exclusive of "Unpaid Tooling" and "Supplier Owned Tooling" (as these terms are defined below), all tooling, dies, test and assembly fixtures, jigs, gauges, patterns, casting patterns, cavities, molds, and documentation including engineering specifications and test reports together with any accessions, attachments, parts, accessories, substitutions, replacements, and appurtenances used by Plasco in connection with its manufacture of the Delphi Parts for Delphi (the "Delphi Tooling") are owned by Delphi and are being held by Plasco or, to the extent Plasco has transferred the Delphi Tooling to third parties, by such third parties, as bailees at will. "Unpaid Tooling" means all items that would otherwise fall within the definition of Delphi Tooling except that Delphi has not made full payment of the applicable Purchase Order price; provided, however, that each item of Unpaid Tooling will become and be considered Delphi Tooling under the terms of this Agreement once it has been paid for in full without setoff or recoupment by Delphi in accordance with the terms of the applicable underlying Purchase Order.  Additionally, Delphi Tooling does not include any tooling manufactured by Plasco on or after the date of the execution of this Agreement under a Purchase Order for Delphi unless and until such tooling has been fully paid for by Delphi without setoff or recoupment.  "Supplier Owned Tooling" means all items that would otherwise fall within the definition of Delphi Tooling, except that such tooling is not subject to a purchase order issued by Delphi; provided however, that at Delphi's election (and subject to an agreement acceptable to National City and Plasco), Delphi may purchase any Supplier Owned Tooling, which shall become Delphi Tooling under the terms of this Agreement once it has been paid for in full without setoff or recoupment by Delphi.

Within thirty (30) days from the date of execution of this Agreement, Plasco will supply Delphi and National City a list of Unpaid Tooling and Supplier Owned Tooling. Any tooling utilized to manufacture the Delphi Parts for Delphi not included on the list of Unpaid Tooling or Supplier Owned Tooling shall be deemed Delphi Tooling unless National City objects in writing within fifteen (15) days thereafter.

Plasco will cooperate with Delphi and National City in determining which of Plasco's tooling is Unpaid Tooling, Supplier Owned Tooling, or Delphi Tooling.

B.    Plasco and National City acknowledge and agree that all machinery and equipment furnished, either directly or indirectly, to Plasco by Delphi or for which Delphi gives consideration to Plasco in whole or in part, including, without limitation, the machinery and equipment set forth on Exhibit A attached hereto (which may be amended from time to time by agreement of the parties) (the "Delphi Equipment") are owned by Delphi and are being held by Plasco or, to the extent Plasco has transferred the Delphi Equipment to third parties, by such third parties, as bailees at will.

C.    No person or entity other than Delphi has any right, title, or interest in the Delphi Tooling or the Delphi Equipment other than Plasco's right, subject to Delphi's reasonable discretion, to utilize the Delphi Tooling and the Delphi Equipment in the manufacture of Delphi Parts pursuant to the terms of the Purchase Orders (as amended by this Agreement). Subject to the terms of this Agreement, Delphi shall have the right to take immediate possession of the Delphi Tooling and the Delphi Equipment at any time without payment of any kind from Delphi to Plasco should Delphi elect to exercise such right. Plasco will cooperate with Delphi in its taking possession of the Delphi Tooling and the Delphi Equipment. Again subject to the terms of this Agreement, effective immediately upon written notice to Plasco, without further notice or

court hearings, which rights, if any, are hereby waived, Delphi shall have the right to immediately enter the premises of Plasco and take possession of any and all Delphi Tooling and Delphi Equipment, and Plasco agrees to provide Delphi with such access. National City acknowledges that it has no security interest in or lien on any of the Delphi Tooling or the Delphi Equipment and will not assert, or permit any person claiming an interest through National City to assert, any interest in the Delphi Tooling or the Delphi Equipment.

19.    **Parts Banks and Resourcing**.    Subject to available capacity and funding, Plasco agrees to produce and ship parts banks as requested by Delphi. Upon expiration of the Production Period, should Delphi decide to resource, Plasco agrees to cooperate with reasonable Delphi requests in resourcing the Delphi Parts in an orderly manner provided such requests do not disrupt the production of parts for other Plasco customers.

20.    **Payment of Delphi-Related Vendors' Accounts Payable**.    Plasco agrees to pay in full all of its accounts payable due Delphi-Related Vendors within 45 days following the expiration of the Production Period.

### General Terms

21.    **Event of Default**

The occurrence of one or more of the following shall be "Events of Default", or individually, an "Event of Default", hereunder unless a waiver or deferral thereof is agreed to in writing, in each instance, by the aggrieved party.

  a.   Plasco repudiates or breaches any Purchase Order, the consequence of which is a substantial likelihood that Delphi's production will be interrupted unless such breach or repudiation is due to the failure of a Delphi-Related Vendor to

timely supply Plasco with component parts in sufficient quantities and specifications at no fault of Plasco;

b.  Plasco fails to either (i) perform services or deliver goods in any respect; or (ii) Plasco fails to provide reasonable assurance of timely and proper completion of services or delivery of goods in any respect in accordance with any Purchase Order, and the consequence of either failure is a substantial likelihood that either Customer's production will be interrupted unless such breach or repudiation is due to the failure of a Delphi-Related Vendor to supply Plasco with component parts in sufficient quantities and specifications at no fault of Plasco;

c.  A voluntary or involuntary petition under Chapter 7 of the Bankruptcy Code is filed against Plasco and the petition is not (i) dismissed within 30 days or (ii) converted to a proceeding under Chapter 11 of the Bankruptcy Code within 30 days; or

d.  Plasco breaches any provision of this Agreement and fails to remedy such breach within five (5) days after written notice thereof.

e.  National City enforces any and all of its rights arising under the Loan Documents against Plasco or any of Plasco's assets without an Event of Default by either Plasco or Delphi;

f.  National City breaches any provision of this Agreement and fails to remedy such breach within five (5) days after written notice thereof.

g.  Delphi fails to maintain monthly payments to National City as required by Section 9 hereof;

h.  Delphi fails to pay the Delphi Prepetition Payables pursuant to Section 7 hereof;

i.  Delphi fails to pay the Delphi Postpetition Payables in accordance with Section

8 hereof; or

j.  Delphi breaches any provision of this Agreement and fails to remedy such

breach within five (5) days after written notice thereof.

22.  **Bankruptcy**.  Plasco agrees that if a bankruptcy petition is filed by or against it,

it shall exercise its best efforts in good faith to obtain the bankruptcy court's entry of a final order

ratifying, reaffirming and assuming this Agreement.

23.  **Authorization**.  The parties executing this Agreement warrant that they have the

corporate power and authority to execute this Agreement and that this Agreement has been duly

authorized by the parties.

24.  **Cooperation**.  Each party agrees to cooperate fully with the other parties and to

take all additional actions that may be necessary to give full force and effect to this Agreement.

25.  **Section Headings**.  The Section headings used in this Agreement are for

convenience of reference only and are not to affect the construction hereof or be taken into

consideration in the interpretation of this Agreement.  All references to Sections, Schedules, and

Exhibits are to Sections, Schedules, and Exhibits in or to this Agreement unless otherwise

specified.

26.  **No Waiver; Cumulative Remedies; Unenforceability**.  Plasco, Delphi and

National City shall not by any act, delay, indulgence, omission, or otherwise be deemed to have

waived any right or remedy under this Agreement or of any breach of the terms and conditions of

this Agreement.  A waiver by Plasco, Delphi or National City of any right or remedy under this

Agreement on any one occasion shall not be construed as a bar to any right or remedy which

Plasco, Delphi or National City would otherwise have had on a subsequent occasion. No failure to exercise, nor any delay in exercising, on the part of Plasco, Delphi, or National City any right, power, or privilege under this Agreement, shall operate as a waiver, nor shall any single or partial exercise of any right, power or privilege under this Agreement preclude any other or future exercise thereof or the exercise of any other right, power or privilege. The rights and remedies under this Agreement are cumulative, may be exercised singly or concurrently, and are not exclusive of any rights and remedies provided by any other agreements or applicable law. Should any provision of this Agreement be held invalid or unenforceable, the remainder of this Agreement will not be affected thereby.

27.    **Waivers and Amendments; Successors and Assigns**. No term or provision of this Agreement may be waived, altered, modified, or amended except by a written instrument, duly executed by Plasco, Delphi and National City. This Agreement and all of the parties' obligations are binding upon their respective successors and assigns, and together with the rights and remedies of the parties under this Agreement, inure to the benefit of the parties and their respective successors and assigns. Plasco may not assign or transfer any right or obligation under this Agreement without the prior written consent of Delphi and the National City.

28.    **Notices**. All notices, requests, and other communications that are required or may be given under this Agreement must be in writing, and shall be deemed to have been given on the date of delivery, if delivered by hand, telecopy or courier, or three (3) days after mailing, if mailed by certified or registered mail, postage prepaid, return receipt requested, addressed as set forth below (which addresses may be changed, from time to time, by notice given in the manner provided in this Section):

| | |
|---|---|
| If given to National City: | National City Bank<br>6 North Main Street<br>Attn.: Sheila Petteruti, Special Assets<br>Dayton, OH 45412-2255<br>Facsimile: (937) 226-8576 |
| with a copy to: | Arthur Hollencamp, Esq.<br>Hollencamp & Hollencamp<br>130 West Second Street, Suite 2107<br>Dayton, OH 45402<br>Facsimile: (937) 228-1411 |
| If given to Plasco, sent to: | Ron Schweller, President<br>Plasco, Inc.<br>3075 Plainfield Road<br>Kettering, OH  45432<br>Facsimile:  (937) 254-4146 |
| with a copy to: | Thomas Martin, Esq.<br>Jablinski, Folino, Roberts & Martin<br>Historic Huffman House<br>214 W. Monument Avenue<br>P.O. Box 10068<br>Dayton, OH  45402-7068<br>Facsimile:  (937) 461-4139 |
| If given to Delphi, sent to: | Craig L. Archambault<br>Delphi Automotive Systems, LLC<br>2000 Forrer Blvd., Mail Stop 1-08<br>Kettering, OH 45420<br>Facsimile:  (937) 455-9133 |
| with a copy to: | Thomas B. Radom, Esq.<br>Butzel Long<br>100 Bloomfield Hills Parkway, Suite 200<br>Bloomfield Hills, MI  48304<br>Facsimile:  (248) 258-1439 |

29.   **No Intended Third Party Beneficiary**.  The parties hereto acknowledge and agree that the rights and interests of the parties under this Agreement are intended to benefit solely the parties to this Agreement, except as expressly set forth in this Agreement.

30.    **Counterparts**.  This Agreement may be executed in any number of counterparts and by each party hereto on separate counterparts, each of which when so executed and delivered shall be an original, but all of which together shall constitute one and the same instrument, and it shall not be necessary in making proof of this Agreement to produce or account for more than one such counterpart.  For purposes of this Agreement, facsimile signatures shall also constitute originals.

31.    **Entire Agreement; Conflicts; Ambiguous Language**.  This Agreement, together with any other agreements and schedules referenced to herein or executed in connection with this Agreement, constitutes the entire understanding of the parties in connection with the subject matter hereof.   This Agreement may not be modified, altered, or amended except by an agreement in writing signed by Delphi, National City and Plasco.   This Agreement shall be deemed to be incorporated by reference into, and shall be part of, all Purchase Orders without any specific reference to this Agreement in any such Purchase Order.   The terms and conditions of the Purchase Orders are amended to include the terms of this Agreement.   Should an inconsistency or conflict exist between the express terms of the Purchase Orders and this Agreement, the terms of this Agreement shall govern and control.   To the extent any term or condition of this Agreement is inconsistent or in conflict with the terms of any other agreements between the Plasco and Delphi, the terms of this Agreement shall govern and control.   This Agreement is being entered into among competent persons who are experienced in business and represented by counsel, and has been reviewed by Plasco and its counsel.   Therefore, any ambiguous language in this Agreement will not necessarily be construed against any particular party as the drafter of such language.

32.   <u>Governing Law</u>. This Agreement is made in the State of Michigan and shall be governed by, and construed and enforced in accordance with, the laws of the State of Michigan, without regard to conflicts of law principles.

33.   <u>WAIVER OF JURY TRIAL</u>. THE PARTIES HERETO ACKNOWLEDGE THAT THE RIGHT TO TRIAL BY JURY IS A CONSTITUTIONAL RIGHT, BUT THAT THIS RIGHT MAY BE WAIVED.   THE PARTIES EACH HEREBY KNOWINGLY, VOLUNTARILY AND WITHOUT COERCION, WAIVE ALL RIGHTS TO A TRIAL BY JURY OF ALL DISPUTES ARISING OUT OF OR IN RELATION TO THIS AGREEMENT, THE PURCHASE ORDERS, OR ANY OTHER AGREEMENTS BETWEEN THE PARTIES RELATED TO PLASCO. NO PARTY SHALL BE DEEMED TO HAVE RELINQUISHED THE BENEFIT OF THIS WAIVER OF JURY TRIAL UNLESS SUCH RELINQUISHMENT IS IN A WRITTEN INSTRUMENT SIGNED BY THE PARTY TO WHOM SUCH RELINQUISHMENT WILL BE CHARGED.

34.   <u>CONSULTATION WITH COUNSEL</u>.   THE PARTIES HERETO ACKNOWLEDGE THAT THEY HAVE BEEN GIVEN THE OPPORTUNITY TO CONSULT WITH COUNSEL BEFORE EXECUTING THIS AGREEMENT AND ARE EXECUTING SUCH AGREEMENT WITHOUT DURESS OR COERCION AND WITHOUT RELIANCE ON ANY REPRESENTATIONS, WARRANTIES OR COMMITMENTS OTHER THAN THOSE REPRESENTATIONS, WARRANTIES AND COMMITMENTS SET FORTH IN THIS AGREEMENT.

PLASCO, INC.

By: _____
      Its: _____

**PLASCO, INC.**

By: _____

Its: _____

**NATIONAL CITY BANK**

By:_____

Its:_____

**DELPHI AUTOMOTIVE SYSTEMS, LLC**

By:_____

Its:_____

**NATIONAL CITY BANK**

By: _Sheila J Pettoruti_
    Its:  _VICE PRESIDENT_

**DELPHI AUTOMOTIVE SYSTEMS, LLC**

By:_____
    Its:_____

000115900/0097/656400-3            25

**NATIONAL CITY BANK**

By:_____

    Its:_____


**DELPHI AUTOMOTIVE SYSTEMS, LLC**

By: _____

    Its: _____

**EXHIBIT A**
**PAYMENT PLAN FOR DELPHI-RELATED VENDORS**

Exhibit B
Delphi Equipment
Parts Produced

Description

1) Vacuum Booster Check Valve Automatic Assembly Machine #1
18019500, 18019800, 18023909, 18025320, 18040283
2) Vacuum Booster Check Valve Automatic Assembly Machine #2
18019500
3) Vacuum Booster molded Air Valve Automatic De-Gate Machine #1
18025668, 18027702, 18047171, 18077251
4) Vacuum Booster molded Air Valve Automatic De-Gate Machine #2
18025668, 18027702, 18047171, 18077251
5) Vacuum Booster molded Air Valve Crush Force Tester
18019121, 18019122, 18019123, 18025668, 18027702,
18047171, 18077251
6) Air Valve Insert Automatic Assembly Machine
18019170
7) Vacuum Booster Check Valve Hand Assembly Table
18013995
8) Suspension Spring Seat Hand De-Gate Machine
22119701, 22129811
9) Suspension Spring Seat Force Test Inspection Gage
22119701, 22129811
10) Suspension Spring Seat Deflector Ring Hand Installation Machine
22227434
11) Master Cylinder Secondary Piston Automatic Assembly Machine #1
18012602, 18016622
12) Master Cylinder Secondary Piston Automatic Assembly Machine #2
18025501
13) Master Cylinder Secondary Piston Automatic Assembly Machine #3
18046931, 18046758
14) Master Cylinder Secondary Piston Automatic Assembly Machine #4
18077466
15) Master Cylinder Secondary Piston Automatic Assembly Machine #5
18023314
16) Master Cylinder Primary Piston Hand Build Table #1
18084547, 18077468, 18004835, 18007313, 18008151,
18008563, 18008660, 18008674, 18010024, 18012124,
18012604, 18012627, 18012751, 18012761, 18012989,
18012997, 18013852, 18015804, 18018967, 18019464,
18020910, 18021655, 18021667, 18021854, 18022471,
18023169, 18023201, 18023315, 18024035, 18024948,
18025299, 18025498, 18025595, 18025603, 18026146,
18026544, 18041797, 18045662, 18045897, 18045990,
18046445, 18046804, 18077922
17) Master Cylinder Primary Piston Hand Build Table #2
18084547, 18077468, 18004835, 18007313, 18008151,
18008563, 18008660, 18008674, 18010024, 18012124,
18012604, 18012627, 18012751, 18012761, 18012989,
18012997, 18013852, 18015804, 18018967, 18019464,
18020910, 18021655, 18021667, 18021854, 18022471,
18023169, 18023201, 18023315, 18024035, 18024948,
18025299, 18025498, 18025595, 18025603, 18026146,
18026544, 18041797, 18045662, 18045897, 18045990,
18046445, 18046804, 18077922
18) Master Cylinder Primary Piston Hand Build Table #3
18084547, 18077468, 18004835, 18007313, 18008151,
18008563, 18008660, 18008674, 18010024, 18012124,
18012604, 18012627, 18012751, 18012761, 18012989,

Exhibit B

Delphi Equipment

| Description | Parts Produced | Page 2 of 3 Pages 11/28/05 |

18012997, 18013852, 18015804, 18018967, 18019464,
18020910, 18021655, 18021667, 18021854, 18022471,
18023169, 18023201, 18023315, 18024035, 18024948,
18025299, 18025498, 18025595, 18025603, 18026146,
18026544, 18041797, 18045662, 18045897, 18045990,
18046445, 18046804, 18077922

19) Master Cylinder Primary Piston Hand Build Table #4

18004835, 18007313, 18008151, 18008563, 18008660,
18008674, 18010024, 18012124, 18012604, 18012627,
18012751, 18012761, 18012989, 18012997, 18013852,
18015804, 18018967, 18019464, 18020910, 18021655,
18021667, 18021854, 18022471, 18023169, 18023201,
18023315, 18024035, 18025299, 18025498, 18025595,
18025603, 18026146, 18026544, 18041797, 18045662,
18045897, 18046445, 18046804, 18077922

20) Master Cylinder Primary Piston Hand Build Table #5

18004835, 18007313, 18008151, 18008563, 18008660,
18008674, 18010024, 18012124, 18012604, 18012627,
18012751, 18012761, 18012989, 18012997, 18013852,
18015804, 18017388, 18018967, 18019464, 18020910,
18021655, 18021667, 18021854, 18022471, 18023169,
18023201, 18023315, 18024035, 18025299, 18025498,
18025595, 18025603, 18026146, 18026544, 18041797,
18045662, 18045897, 18046445, 18046804, 18077922

21) Master Cylinder Primary Piston Hand Build Table #6

18004835, 18007313, 18008151, 18008563, 18008660,
18008674, 18010024, 18012124, 18012604, 18012627,
18012751, 18012761, 18012989, 18012997, 18013852,
18015804, 18017388, 18018967, 18019464, 18020910,
18021655, 18021667, 18021854, 18022471, 18023169,
18023201, 18023315, 18024035, 18025299, 18025498,
18025595, 18025603, 18026146, 18026544, 18041797,
18045662, 18045897, 18046445, 18046804, 18077922

22) Master Cylinder Primary Piston Hand Build Table #7

18084547, 18004835, 18007313, 18008151, 18008563,
18008660, 18008674, 18010024, 18012124, 18012604,
18012627, 18012751, 18012761, 18012989, 18012997,
18013852, 18015804, 18018967, 18019464, 18020910,
18021655, 18021667, 18021854, 18022471, 18023169,
18023201, 18023315, 18024035, 18024948, 18025299,
18025498, 18025595, 18025603, 18026146, 18026544,
18041797, 18045662, 18045897, 18045990, 18046445,
18046804, 18077922

23) Master Cylinder Primary Piston Hand Build Table #8

18084547, 18004835, 18007313, 18008151, 18008563,
18008660, 18008674, 18010024, 18012124, 18012604,
18012627, 18012751, 18012761, 18012989, 18012997,
18013852, 18015804, 18018967, 18019464, 18020910,
18021655, 18021667, 18021854, 18022471, 18023169,
18023201, 18023315, 18024035, 18024948, 18025299,
18025498, 18025595, 18025603, 18026146, 18026544,
18041797, 18045662, 18045897, 18045990, 18046445,
18046804, 18077922

24) Master Cylinder Primary Piston Automatic O-Ring Installation Machine

18077922

25) Vacuum Booster Reaction Rod and Disk Hand Assembly Machine

Exhibit B
Delphi Equipment

| Description | Parts Produced | Page 3 of 3 Pages 11/28/05 |
|---|---|---|
| | 18048530, 18048531, 18048532, 18077578 | |
| 26) Master Cylinder Secondary Piston Hand Build Table (Snap Piston) | | |
| | 18043593 | |
| 27) Vacuum Booster Floating Control Valve Hand Build Assembly Machine  OP 21 | | |
| | 18084134, 18043391, 18085576, 18086056, 18090174, 18090138, 18047960 | |
| 28) Vacuum Booster Floating Control Valve Hand Build Assembly Machine  OP 35 | | |
| | 18084134, 18043391, 18085576 | |
| 29) Vacuum Booster Floating Control Valve Hand Build Assembly Machine  OP 40 | | |
| | 18084134, 18043391, 18085576, 18086056, 18090174, 18090138, 18047960 | |
| 30) Vacuum Booster Floating Control Valve Assembly End Play Test Machine | | |
| | 18084134, 18043391, 18085576, 18086056, 18090174, 18090138, 18047960 | |
| 31) Vacuum Booster Floating Control Valve Assembly Pull Out Force Test Machine | | |
| | 18084134, 18043391, 18085576, 18086056, 18090174, 18090138, 18047960 | |
| 32) Vacuum Booster Floating Control Valve Disassembly Re-operation Machine | | |
| | 18084134, 18043391, 18085576, 18086056, 18090174, 18090138, 18047960 | |
| 33) Traction Control Piston Hand Assembly Fixture | | |
| | 18020362 | |
| 34) Vacuum Booster Floating Control Valve Rod Guide Installation Machine | | |
| | 18086056, 18090174, 18090138 | |

## EXHIBIT C
### LIST OF DELPHI-RELATED VENDORS

Exhibit C

Delphi-Related Vendors and Delphi-Related materials

| Vendor | Delphi # | Part name | |
|---|---|---|---|
| | | | Page 1 of 6 pages 11/18/05 |

**ATF, Inc.**

| | Delphi # | Part name |
|---|---|---|
| | 18041576 | Air Valve |
| | 18047962 | Air Valve |
| | 18048157 | Air Valve |
| | 18086055 | Air Valve |
| | 18090137 | Air Valve |

**Autocam Corp.**

| | 18044400 | Push Rod |
|---|---|---|

**C&J Industries, Inc.**

| | 22208032 | Ring, Deflector |
|---|---|---|

**Charlevoix Manufacturing Co.**

| | Delphi # | Part name |
|---|---|---|
| | 18001230 | Piston, Primary |
| | 18006051 | Piston, Secondary |
| | 18006063 | Piston, Secondary |
| | 18006832 | Piston, Secondary |
| | 18007226 | Piston, Primary |
| | 18007231 | Piston, Primary |
| | 18007991 | Piston, Primary |
| | 18008367 | Piston, Secondary |
| | 18009390 | Piston, Secondary |
| | 18010025 | Piston, Primary |
| | 18011145 | Piston, Secondary |
| | 18011798 | Piston, Primary |
| | 18011801 | Piston, Secondary |
| | 18012125 | Piston, Primary |
| | 18012605 | Piston, Primary |
| | 18012628 | Piston, Primary |
| | 18012810 | Piston, Primary |
| | 18012987 | Piston, Secondary |
| | 18012990 | Piston, Primary |
| | 18013842 | Piston, Secondary |
| | 18014366 | Piston, Secondary |
| | 18014647 | Piston, Secondary |
| | 18015803 | Piston, Secondary |
| | 18016575 | Piston, Secondary |
| | 18017383 | Piston, Secondary |
| | 18017389 | Piston, Primary |
| | 18018968 | Piston, Primary |
| | 18019463 | Piston, Secondary |
| | 18020909 | Piston, Primary |
| | 18021653 | Piston, Secondary |
| | 18021657 | Piston, Primary |
| | 18021664 | Piston, Secondary |
| | 18021666 | Piston, Secondary |
| | 18021671 | Piston, Secondary |
| | 18021673 | Piston, Secondary |
| | 18021819 | Piston, Secondary |
| | 18021852 | Piston, Secondary |
| | 18021855 | Piston, Primary |
| | 18025592 | Piston, Secondary |
| | 18025596 | Piston, Primary |

Exhibit C
Delphi-Related Vendors and Delphi-Related materials

| Vendor | Delphi # | Part name | Page 2 of 6 pages 11/18/05 |
|---|---|---|---|
| | 18025600 | Piston, Secondary | |
| | 18025604 | Piston, Primary | |
| | 18026545 | Piston, Primary | |
| | 18041329 | Piston, Secondary | |
| | 18041798 | Piston, Primary | |
| | 18045898 | Piston, Primary | |
| | 18045989 | Piston, Secondary | |
| | 18045991 | Piston, Primary | |
| | 18046803 | Piston, Secondary | |
| | 18046932 | Piston, Secondary | |
| | 18077467 | Piston, Secondary | |
| | 18077469 | Piston, Primary | |

Danice Manufacturing

| | 18084943 | Push Rod |
|---|---|---|

Dayton Tool Co., Inc.

| | 18006676 | Retainer, Spring |
|---|---|---|
| | 18007227 | Retainer, Spring |
| | 18007900 | Retainer, Spring |
| | 18012607 | Stop, Piston |
| | 18040170 | Retainer, Spring, Piston |
| | 2623557 | Retainer, Spring |

Drawn Metal Products

| | 18041556 | Support, Control, Valve |
|---|---|---|
| | 18046577 | Retainer, Spring |

Driv-Loc

| | 18016618 | Pin, Spring |
|---|---|---|

FAG Automotive, Inc.

| | 908363 | Bearing, Spring Seat |
|---|---|---|

FCMP, Inc.

| | 18046761 | Push Rod |
|---|---|---|
| | 18048054 | Rod, Reaction |
| | 18048055 | Rod, Reaction |
| | 18048524 | Rod, Reaction |
| | 18076448 | Rod, Reaction |

Fairway Spring Co., Inc.

| | 18024577 | Spring, Piston Return |
|---|---|---|
| | 18025597 | Spring |
| | 18025605 | Spring |
| | 18041025 | Spring, Primary Piston |
| | 18041557 | Spring, Floating, Control |
| | 18041558 | Spring |
| | 18041799 | Spring, Seal Return |
| | 18045899 | Spring |
| | 18045992 | Spring |
| | 18046443 | Spring |
| | 18047965 | Spring |
| | 18048205 | Spring, Air Valve |
| | 18077470 | Spring, Primary Piston |

Exhibit C
Delphi-Related Vendors and Delphi-Related materials

| Vendor | Delphi # | Part name | |
|--------|----------|-----------|--|
| | | | |
| **Freudenberg NOK** | | | |
| | 18001441 | Seal, Primary | |
| | 18001442 | Seal, Secondary | |
| | 18001478 | Seal, Primary | |
| | 18001822 | Seal, Primary | |
| | 18001824 | Seal, Secondary | |
| | 18005006 | Seal, Secondary | |
| | 18006259 | Seal, Secondary | |
| | 18008281 | Seal, Secondary | |
| | 18008287 | Seal, O-Ring | |
| | 18017384 | Seal, Primary | |
| | 18017386 | Seal, Secondary | |
| | 18019775 | Poppet | |
| | 18023253 | Seal, Primary | |
| | 18025321 | Poppet | |
| | 18025387 | Seal, Primary | |
| | 18025593 | Seal | |
| | 18025594 | Seal | |
| | 18026543 | Seal, Double Lip | |
| | 18041554 | Valve, Floating, Control | |
| | 18044934 | Seal, Primary | |
| | 18045017 | Seal, Primary | |
| | 18045982 | Seal, Secondary | |
| | 2620794 | Seal, O'ring | |
| | 2622029 | Seal, Secondary | |
| | 2623168 | Seal, Primary | |
| | 5472262 | Seal, Secondary | |
| | 5472269 | Seal, Primary | |
| | | | |
| **Freudenburg Troy** | | | |
| | 18017994 | Washer, Piston | |
| | | | |
| **Fulton Industries** | | | |
| | 5451070 | Retainer, Spring | |
| | 5472011 | Retainer, Spring | |
| | 5472019 | Stop, Piston | |
| | | | |
| **Hutchinson Seal Corp.** | | | |
| | 18001829 | Seal, O'ring | |
| | 18006260 | Seal, O'ring | |
| | 18006261 | Seal, O'ring | |
| | 18016091 | Seal, O'ring | |
| | 18021499 | Seal | |
| | 18026887 | Seal, O'ring | |
| | 18026888 | Seal, O'ring | |
| | 2621655 | Seal, Oring | |
| | 2622033 | Seal, O'ring | |
| | 2623308 | Seal, O'ring | |
| | | | |
| **ITW Highland** | | | |
| | 18008671 | Stop, Piston | |
| | 18020034 | Stop, Piston | |
| | 18020364 | Retainer, Spring | |

Exhibit C
Delphi-Related Vendors and Delphi-Related materials

| Vendor | Delphi # | Part name | Page 4 of 6 pages 11/18/05 |
|---|---|---|---|
| KL Industries, Inc. | | | |
| | 18021659 | Spring, Primary Piston | |
| | 18021668 | Spring, Primary Piston | |
| | | | |
| Kendale Industries, Inc. | | | |
| | 18017385 | Retainer, Spring | |
| | 18017390 | Retainer, Spring | |
| | | | |
| Metal Seal & Products, Inc. | | | |
| | 18006833 | Piston, Secondary | |
| | 18011147 | Piston, Secondary | |
| | 18012122 | Piston, Secondary | |
| | 18012603 | Piston, Secondary | |
| | 18012626 | Piston, Secondary | |
| | 18012760 | Piston, Secondary | |
| | 18013870 | Piston, Secondary | |
| | 18016623 | Piston, Secondary | |
| | 18018966 | Piston, Secondary | |
| | 18020363 | Piston, Traction Control | |
| | 18020366 | Poppet, Traction Control | |
| | 18020972 | Piston Secondary | |
| | 18021886 | Piston, Primary | |
| | 18021887 | Piston, Secondary | |
| | 18022472 | Piston, Secondary | |
| | 18022894 | Piston, Secondary | |
| | 18023168 | Piston, Secondary | |
| | 18023170 | Piston, Primary | |
| | 18024034 | Piston, Secondary | |
| | 18024036 | Piston, Primary | |
| | 18024946 | Piston, Primary | |
| | 18024947 | Piston, Secondary | |
| | 18025300 | Piston, Primary | |
| | 18025302 | Piston, Secondary | |
| | 18025497 | Piston, Primary | |
| | 18025500 | Piston, Secondary | |
| | 18026113 | Piston, Secondary | |
| | 18026256 | Piston, Secondary | |
| | 18043594 | Piston, Secondary | |
| | 18045661 | Piston, Primary | |
| | 18046441 | Piston, Primary | |
| | 18046759 | Piston, Secondary | |
| | 18077923 | Piston, Primary | |
| | 18084504 | Piston, Secondary | |
| | 18084506 | Piston, Primary | |
| | 18084548 | Piston, Primary | |
| | 18084550 | Piston Secondary | |
| | | | |
| Michigan Spring & Stamping | | | |
| | 18006071 | Stop, Piston | |
| | 18025287 | Retainer, Spring | |
| | | | |
| Omiotek Coil Spring Co. | | | |
| | 18021307 | Spring, Primary Piston | |
| | | | |
| Palmer Engineering Co. | | | |

Exhibit C
Delphi-Related Vendors and Delphi-Related materials

| Vendor | Delphi # | Part name | |
|---|---|---|---|
| | 18016080 | Retainer, Spring | Page 5 of 6 pages 11/18/05 |
| Par Foam Products, Inc. | | | |
| | 18084783 | Silencer | |
| | 18087119 | Silencer | |
| Quality Synthetic Rubber, Inc. | | | |
| | 18020367 | Seal | |
| | 18040120 | Disc, Reaction | |
| RPS Technologies, Inc. | | | |
| | 18025601 | Seal | |
| | 18025602 | Seal | |
| S & Z Tool & Die Co., Inc. | | | |
| | 18010846 | Stop, Piston | |
| | 18015055 | Stop | |
| | 18017392 | Stop, Piston | |
| Semblex Corporation | | | |
| | 18024951 | Screw, Piston Extension | |
| Solar Spring & Wire Forms | | | |
| | 18024580 | Spring, Primary Piston | |
| | 18025303 | Spring, Primary Piston | |
| | 18026255 | Spring | |
| Stewart EFI Connecticut, LLC | | | |
| | 18043595 | Retainer, Spring | |
| T&T Graphics, Inc. | | | |
| | 15770192 | DOT 3 Label | |
| | 18012000 | Dot 5 Label | |
| | 18022223 | DOT 3 Label, 2223 | |
| | 18046875 | DOT 3 Label | |
| TFS Automotive | | | |
| | 18001841 | Screw, Piston Extension | |
| | 18003336 | Screw, Piston Extension | |
| | 18004836 | Screw, Piston Extension | |
| | 18005385 | Screw, Piston Extension | |
| | 18007229 | Screw, Piston Extension | |
| | 18021669 | Screw, Piston Extension | |
| | 18045900 | Screw, Extension | |
| | 2621848 | Screw, Piston Extension | |
| Twist, Inc. | | | |
| | 18000270 | Spring, Primary Piston | |
| | 18003369 | Spring, Primary Piston | |
| | 18008261 | Spring, Primary Piston | |
| | 18008670 | Spring, Primary Piston | |
| | 18012126 | Spring | |
| | 18012606 | Spring, Primary Piston | |
| | 18012749 | Spring, Primary Piston | |
| | 18012994 | Spring, Primary Piston | |

### Exhibit C
#### Delphi-Related Vendors and Delphi-Related materials

| Vendor | Delphi # | Part name | |
|--------|----------|-----------|---|
| | | | Page 6 of 6 pages 11/18/05 |
| | 18012998 | Spring, Primary Piston | |
| | 18016079 | Spring | |
| | 18016087 | Spring | |
| | 18017391 | Spring, Primary Piston | |
| | 18019465 | Spring, Primary Piston | |
| | 18025499 | Spring, Primary Piston | |
| | 18084507 | Spring, Primary, Piston | |
| | 18084726 | Spring, Primary, Piston | |
| | 5452520 | Spring, Primary Piston | |
| | 5472017 | Spring, Primary Piston | |
| | 5472267 | Spring, Piston | |

Variety Die and Stamping Co.

| | 5472016 | Retainer, Spring |
|--|---------|------------------|
| | 5472270 | Seal |

Whirlaway Corp.

| | 18016090 | Piston |
|--|----------|--------|
| | 18016092 | Piston, Apply |
| | 18048050 | Push Rod |

Wire Products Company

| | 18021144 | Spring, Primary Piston |
|--|----------|------------------------|
| | 18021856 | Spring, Primary Piston |