# Exhibit 3

# DELPHI

April 22, 2009

Ron Schweller, President
Plasco, Inc.
3075 Plainfield Road
Kettering, OH 45432

Re: Agreement to (i) Complete Remaining Build Requirements of Delphi Automotive Systems, LLC ("Delphi"), and (ii) Resolve Outstanding Commercial Issues between Plasco, Inc. ("Plasco") and Delphi

Dear Mr. Schweller:

Plasco manufactures and/or assembles various component parts ("Delphi Parts") for Delphi pursuant to various purchase orders, releases and/or supply contracts (collectively, the "Purchase Orders"). Plasco has advised Delphi that it is discontinuing its operations. As you know, Delphi has unfulfilled build requirements and, because Plasco is a sole source supplier of the Delphi Parts, any interruption in the supply of those parts could cause Delphi and its customer significant and irreparable harm. As you further know, Plasco is currently indebted to Delphi is the amount of $500,000 (the "Delphi Debt"). This letter memorializes the understanding and agreement reached between Plasco and Delphi regarding the completion of Delphi's remaining production requirements by Plasco and the resolution of certain commercial issues between the parties as follows:

1. Plasco acknowledges and agrees that the Delphi Debt is a valid and existing obligation of the company and that it has no defenses or counterclaims to the payment of the same.

2. Delphi acknowledges and agrees that those open invoices ("Open Invoices") issued by Plasco to Delphi for the sale of Delphi Parts in the aggregate amount of $128,806.73 and described more fully in Schedule A are due and owing by Delphi to Plasco. Plasco agrees that the Open Invoices shall be deemed paid, effective immediately, via setoff against the Delphi Debt.

3. For the period commencing with the date of this Agreement and ending no later than June 15, 2009 (the "Final Production Period"), Plasco will produce, ship and sell to Delphi in accordance with the Purchase Orders, as modified by this Agreement, those quantities of Delphi Parts at the respective piece prices set forth in Schedule A (as may be modified from time to time) to this Agreement; provided, however, that Delphi supplies to Plasco on a timely basis those additional parts not identified in Schedule A

required by Plasco for the completion of the Delphi Parts. Delphi will pay for the Delphi Parts, as they are received, via setoff against the Delphi Debt. In the event of additional delays by component suppliers that would delay the completion of the Delphi Parts beyond the end of the Final Production Period, Plasco will provide Delphi with all components and equipment required to complete the quantities. In addition, Plasco will provide a quote not to exceed $10,000 to move the equipment to complete the quantities identified in Schedule A with piston assemblies built using manual build method or whatever other process Plasco sees as economical.

4.    During the Final Production Period, Plasco will utilize in the production or assembly of the Delphi Parts those component parts ("Component Parts") described in Schedule A whose cost is not covered in the piece price of the applicable Delphi Part. Plasco shall invoice Delphi for those Component Parts as they are used at the applicable piece price set forth in Schedule A and Delphi shall pay for such Component Parts via setoff against the Delphi Debt.

5.    Effectively immediately, Plasco will reasonably cooperate with Delphi's preparation for resourcing including, without limitation, by providing Delphi, at its request, copies of tool line-ups, tool processing sheets, bill of materials, PPAP packages and tool drawings and, by providing Delphi and its agents, representatives, designees, consultants, officers, employees and potential successor suppliers, upon reasonable advance notice, access to Plasco's manufacturing facilities during normal business hours for the purpose of inspecting Delphi-owned tooling ("Delphi Tooling" as defined below) and viewing current production processes.

6.    At any time during, and in event later than the end of, the Final Production Period, Plasco shall allow Delphi prompt access to its facility to take possession of all Delphi Tooling. For purposes of this Agreement, Delphi Tooling means all tooling, dies, test and assembly fixtures, jigs, gauges, patterns, casting patterns, cavities and molds (except as to those molds described in Schedule A), together with any documentation relating thereto, including engineering specifications and test reports, and any accessions, attachments, parts, accessories, substitutions, replacements, and appurtenances, used by Plasco in connection with its manufacture of the Delphi Parts for Delphi and are being held by Plasco or, to the extent Plasco has transferred the Delphi Tooling to third parties, by such third parties, as bailees at will.

7.    Within 15 days of the end of the Final Production Period, Delphi shall purchase from Plasco, and Plasco shall sell, transfer and assign to Delphi, all of its right, title and interest in and to the equipment ("Equipment") and molds described, and at the purchase prices set forth, in Schedule A, free and clear of all liens and security interests. Delphi shall pay the purchase price for the Equipment via setoff against the Delphi Debt. Plasco acknowledges that the purchase price for the Equipment shall constitute a commercially reasonable price for the Equipment and that the sale pursuant to the foregoing will be deemed to be commercially reasonable in all respects, including method, time, place and terms.

8.    <u>Release.</u>

a. Provided Plasco satisfies Delphi's final production requirements in accordance with Schedule A (as may be modified by the parties from time to time), including the timely shipment of the Delphi Parts to Delphi, and upon the delivery of possession of the Delphi Tooling to Delphi at the end of the Final Production Period, Delphi shall be deemed to waive and forever discharge Plasco of any and all claims, demands and liabilities of any kind or nature it has or may have against Plasco. For clarity, the release shall be self executing upon satisfaction of the conditions set forth in this subparagraph (a).

b. Provided Delphi has satisfied all of its obligations under this Agreement, concurrently with the waiver of claims by Delphi in favor of Plasco, Plasco shall be deemed to waive and forever discharge Delphi of any and all claims, demands and liabilities of any kind or nature, it has or may have against Delphi. For clarity, the release shall be self executing upon satisfaction of the conditions set forth in this subparagraph (b).

9. Except as modified by this Agreement, the Purchase Orders shall remain in full force and effect.

10. Plasco agrees that Delphi and its agents and representatives shall have reasonable access to Plasco's management and personnel, operations, and applicable and relevant books and records at reasonable times during regular business hours, or outside of business hours upon reasonable notice and request, for the purposes of monitoring Plasco's compliance with the terms of this Agreement and the Purchase Orders.

11. Plasco and Delphi each agrees to cooperate fully with the other party and to take all additional actions that may be necessary to give full force and effect to this Agreement; it being expressly understood and agreed that time is of the essence.

12. This Agreement, together with any other agreements and schedules referenced to herein, constitute the entire understanding of the parties in connection with the subject matter hereof. This Agreement may not be modified, altered, or amended except by an agreement in writing signed by Delphi and Plasco.

13. Plasco and Delphi acknowledge and agree that their rights and interests under this Agreement are intended solely for their benefit.

14. This Agreement shall be governed by, and construed and enforced with, the laws of the State of Michigan.

15. THE PARTIES ACKNOWLEDGE THAT THEY HAVE BEEN GIVEN THE OPPORTUNITY TO CONSULT WITH COUNSEL OF THEIR CHOICE BEFORE EXECUTING THIS AGREEMENT AND ARE DOING SO WITHOUT RELIANCE UPON ANY REPRESENTATIONS, WARRANTIES OR COMMITMENTS OTHER THAN THOSE SET FORTH IN THIS AGREEMENT. ANY AMBIGUOUS LANGUAGE IN THIS AGREEMENT WILL NOT BE

CONSTRUED AGAINST ANY PARTICULAR PARTY AS THE DRAFTER OF SUCH LANGUAGE.

16. THE PARTIES ACKNOWLEDGE THAT THE RIGHT TO TRIAL BY JURY IS A CONSTITUTIONAL RIGHT, BUT THAT THIS RIGHT MAY BE WAIVED. THE PARTIES EACH KNOWINGLY, VOLUNTARILY AND WITHOUT COERCION, WAIVE ALL RIGHTS TO A TRIAL BY JURY OF ALL DISPUTES ARISING OUT OF OR IN RELATION TO THIS AGREEMENT OR ANY OTHER AGREEMENTS BETWEEN THE PARTIES. NO PARTY SHALL BE DEEMED TO HAVE RELINQUISHED THE BENEFIT OF THIS WAIVER OF JURY TRIAL UNLESS SUCH RELINQUISHMENT IS IN A WRITTEN INSTRUMENT SIGNED BY THE PARTY TO WHICH SUCH RELINQUISHMENT SHALL BE CHARGED.

Please acknowledge your agreement to the foregoing by signing a copy of this letter in the space provided below and then forward a signed copy of this Agreement to me via facsimile or email. Facsimile or electronic signatures shall be deemed fully effective and enforceable.

Sincerely,
Delphi Automotive Systems, LLC
By: *Darrell Blackburn*
Its: Director Global Supply Management
4/22/09

Agreed and Accepted:

Plasco, Inc.
By: *[signature]*
Its: President

Schedule A

| Description of asset to be included in transition | Value |
|---|---|
| Plasco Invoice to Delphi #22986.2 | $38,393.00 |
| Plasco Invoice to Delphi #22985.2 | $16,588.45 |
| Plasco Invoice to Delphi #22984.1 | $2,016.91 |
| Plasco Invoice to Delphi #22804.1 | $159.62 |
| Plasco Invoice to Delphi #22856.1 | $69,982.48 |
| Plasco Invoice to Delphi #22987.1 | $1,656.27 |
| Primary piston assembly programmable vision inspection machine "a" | $25,000.00 |
| Secondary piston assembly programmable vision inspection machine "b" | $25,000.00 |
| Automatic assembly machine for primary piston 18023315 | $52,000.00 |
| Semi-Auto Secondary piston staker assembly machine | $2,000.00 |
| Future invoice for 10,000 parts of 18023315 @ $1.244 each | $12,440.00 |
| Future invoice for 10,000 parts of 18023314 @ $.5474 each | $5,474.00 |
| Future invoice for 28,405 parts of 18023315 @ $1.20249 each | $34,156.73 |
| Future invoice for 32,000 parts of 18023314 @ $.64366 each | $20,597.12 |
| Future invoice for 50,000 parts of 18019500 @ $.3879 each | $19,395.00 |
| Future invoice for 8,000 parts of 18025320 @ $.3966 each | $3,172.80 |
| Future invoice for 25,000 parts of 18019170 @ .2228 each | $5,570.00 |
| Future invoice for 21,000 parts of 22197585 @ $.4242 each | $8,908.20 |
| Inventory of 7,951 parts of the 18025321 poppet @ $.1906 each | $1,515.52 |
| Inventory of 5,509 parts of 18023253 seal @ $.1967 each (not included in bank PO price) | $1,083.62 |
| Inventory of 93 parts of 18021886 piston @ $.8256 each (not included in bank PO price) | $76.78 |
| Inventory of 3,562 parts of 18005006 seal @ $.1217 each (not included in bank PO price) | $433.50 |
| Inventory of 59 parts of 18018966 piston @ $.7072 each (not included in bank PO price) | $41.72 |
| Inventory of 16,405 parts of 2621848 screw @ $.0906 each (not included in bank PO price) | $1,486.29 |
| One mold to produce 18019774 body and 18019776 cap to make 18019500 check valve/ One mold to produce 18025459 body and 18019776 cap to make 18025320 check valve/ One mold to produce 22197585 isolator / One mold to produce 18019648 push rod retainer to make 18019170. | $152,642.00 |
| | $500,000.01 |