Shalom Jacob
Zachary D. Silbersher
LOCKE LORD BISSELL & LIDDELL LLP
Three World Financial Center
New York, New York 10281-2101
Tel:  (212) 415-8600
Fax: (212) 303-2754

-and-

Courtney E. Barr (CE 7768)
LOCKE LORD BISSELL & LIDDELL LLP
111 South Wacker Drive
Chicago, Illinois  60606
Tel:  (312) 443-0700
Fax: (312) 443-0336

*Counsel for D&R Technology, LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------x

| | |
|---|---|
| In re: | Chapter 11 |
| DPH HOLDINGS CORP., et al., | Case No. 05-44481 [RDD] |
| Reorganized Debtors. | (Jointly Administered) |

---------------------------------------------x

| | |
|---|---|
| DELPHI CORPORATION, et al., | |
| Plaintiffs, | |
| v. | Adv. Pro. No. 07-02212 [RDD] |
| D & R TECHNOLOGY LLC, AND D AND R TECHNOLOGY LLC, | |
| Defendant. | |

---------------------------------------------x

## DECLARATION OF ANTHONY W. URBAN IN SUPPORT OF D&R TECHNOLOGY, LLC OBJECTION TO THE REORGANIZED DEBTORS' MOTION FOR LEAVE TO FILE AMENDED COMPLAINTS

Anthony W. Urban, hereby declares, pursuant to 28 U.S.C. § 1746, that the following is true to the best of my knowledge, information and belief:

1.    My name is Anthony W. Urban.  I am of sound mind, over the age of eighteen

years, capable of making this declaration (the "Declaration") and fully competent to testify

herein. Except as otherwise indicated, all facts set forth in this Declaration are based upon my

personal knowledge, information provided to me by certain employees of D&R Technology,

LLC ("D&R") with whom I manage, my review of relevant documents, or my opinion based

upon my experience, knowledge, and information concerning the operations and financial affairs

of D&R. If I were called upon to testify, I would testify competently to the facts set forth in this

Declaration. I am authorized to submit this Declaration.[1]

2.        I submit this Declaration in connection with the above-captioned bankruptcy case

(the "Case") and adversary proceeding (the "Adversary Proceeding") and in support of D&R's

Objection to the Reorganized Debtors' Motion for Leave to File Amended Complaints (the

"Objection").

3.        D&R is a global supplier of component parts to manufacturers in the consumer

and industrial markets, including Original Equipment Manufacturers (OEMs) in the automotive

industry.

4.        Since August 1998, I have been employed by D&R. I am currently employed as

President at D&R.

5.        As President, I am familiar with the supply arrangements between D&R and

Delphi Automotive Systems, LLC, Delphi Corporation and their related affiliates and divisions

(collectively, "Delphi") and have been involved in D&R's business relationship with Delphi.

6.        D&R manufactured for Delphi certain automotive sensors, switches and

electromechanical assemblies (the "Parts") that are safety-critical components of Delphi's

Passenger Occupant Detection System ("PODS").

---

[1]  Capitalized terms used but not defined herein shall have the same meaning ascribed to them as they appear in the
Objection.

7.    Since the launch of the PODS nearly a decade ago, D&R was a sole source

supplier of the Parts, which were designed to Delphi's specifications.

8.    As of Delphi's Petition Dates in October 2005, Delphi represented 96% of D&R's

business.

9.    Generally, D&R shipped the Parts to Delphi under "MNS-2" or "second day,

second month" payment terms.  Payments from Delphi to D&R were made pursuant to Delphi's

Covisint payment system.

10.    The Covisint system is an automated invoice and payment system that Delphi

required all of its suppliers to use.  When the Parts were delivered to Delphi, the Parts were

scanned on delivery.  The scanned data would then immediately be documented in the Covisint

system, which would make an automatic notation that a payment was due to D&R for the Parts

based upon pre-programmed pricing applicable under D&R's supply terms with Delphi (as

described in Section II below).  If a notation to pay D&R was made in the Covisint system for

Parts delivered, payment for the Parts would then automatically be sent to D&R.

11.    In the weeks leading up to Delphi's Petition Dates in October 2005, the parties'

negotiated a revision to their payment terms.  On or about September 1, 2005, Delphi agreed to

pay D&R for products on "Net 30" terms in exchange for D&R's providing a 0.5% unit price

discount on the Parts.  The parties acknowledged that the purpose of the change was to leave

D&R with enough cash flow to support Delphi in meeting the accelerated requests for safety

product requested by Delphi's customers.  A true and correct copy of a purchase order denoting

this change in payment terms is attached as Exhibit A.

12.    Also in the weeks leading up to Delphi's Petition Dates in October 2005, Delphi

repeatedly went out of its way to allay any concerns that D&R had about Delphi's financial

difficulty. Several times Delphi officers and managers had conversations with D&R about the critical need that Delphi had for D&R's Parts and that they needed to rely upon D&R to help keep their production platforms up and running.

13.    After the Petition Date, on December 11, 2005, the parties entered into a Settlement Agreement, under which Delphi agreed to grant further assurance to D&R by reducing the parties' payment terms to "Net 7" in exchange for D&R granting a unit price discount of 0.25%. A true and correct copy of this Settlement Agreement is attached as <u>Exhibit B</u>.

## I.
### D&R DID NOT RECEIVE PARTICULARIZED NOTICE OF THE EXTENSION MOTIONS AND ORDERS AND RELATED PLEADINGS

14.    To my knowledge, D&R was not served with any notice whatsoever—electronic, mail, overnight delivery—of the Preservation of Estate Claims Procedure Motion and D&R did not receive notice of the First Extension Motion, the Second Extension Motion, or the Third Extension Motion by overnight delivery, as required by the Notice Procedures Order.[2]

## II.
### D&R WAS PREJUDICED BY DELPHI'S ACTIONS TO CONCEAL THE PREFERENCE CLAIMS

15.    D&R's reliance on Delphi's assurances that it should keep doing business with Delphi and the renegotiation of its payment terms with Delphi both leading up to and after the Petition Date lead D&R to believe that it would not be sued to recover the payments it received from Delphi in the days leading up to the Petition Date.

16.    Further, if D&R had been aware in September 2007 that it had been sued to recover allegedly preferential transfers totaling approximately $15 million that is the subject of

---

[2] Each of the pleadings cited in this section are defined in the Objection.

this Adversary Proceeding (the "Preference Suit"), it would have insisted upon Delphi's waiver

or release of its alleged preference liability before it agreed to continue supplying Parts to

Delphi. Given the general lack of inventory due to just-in-time manufacturing practices in the

auto industry, Delphi would have been highly motivated to reach an agreement with D&R

regarding the alleged preference liability in order to maintain an orderly supply of parts for

worldwide production. Accordingly, if D&R refused to ship Parts to Delphi, a significant

number of Delphi's product platforms would have shut down.

17.    In sum, D&R has been prejudiced by Delphi's concealment of the Preference

Suit.

I declare under the penalty of perjury and the laws of the United States of America that the foregoing is true and correct and that this declaration was executed on November 22, 2010 at Chicago, Illinois.

Anthony W. Urban
President
D&R Technology, LLC