# EXHIBIT B

## Settlement Agreement

**DELPHI**

## Settlement Agreement

This Settlement Agreement (this "Agreement") is entered into as of December 11, 2005 (the "Effective Date") by and between Delphi Corporation (together with its affiliates and subsidiaries, "Delphi") and D&R Technology ("Company").

A. Company supplies various sensors, switches and electronic components (the "Parts") to Delphi pursuant to various purchase orders and supply contracts (collectively, the "Purchase Orders").

B. Company has demanded modified terms from Delphi has not threatened to cease shipments of Parts to Delphi in connection with its demand.

C. Company is currently Delphi's sole source for the Parts, and Delphi will not be able to obtain the Parts from an alternative source in the near term. As such, even a short supply interruption is likely to result in production shut downs for both Delphi and its OEM customers.

D. Delphi and Company disagree as to their respective rights and obligations related to the Purchase Orders.

E. Delphi and Company believe it to be in their mutual best interests to resolve their dispute amicably by Delphi's provision of adequate assurance to Company under Uniform Commercial Code Section 2-609, in accordance with this Agreement in order to avoid litigation and to maintain a continuous flow of Parts from Company to Delphi.

Based upon the foregoing recitals and for good and valuable consideration, the receipt and adequacy of which is acknowledged, Delphi and Company agree as follows:

1. Subject to the provisions of paragraph 4 below, all Purchase Orders remain in full force and effect.

2. With respect to shipments of Parts to Delphi's U.S. locations only, Delphi will pay for Parts on the following terms (the "Modified Terms"): (a) net 7 days with a unit price discount of 0.25% per month based on the current unit pricing effective for shipments starting on December 11, 2005 and continuing through December 31, 2006 and (b) MNS2-2 (without any unit price discount) thereafter. Company agrees that the Modified Terms constitute adequate assurance under Uniform Commercial Code Section 2-609. The Modified Terms will not apply to shipments of Parts to Delphi's non-U.S. locations, which shipments will continue to be governed by the terms of the applicable Purchase Orders.

3. Notwithstanding any intervening change in Delphi's financial situation, Company will continue to supply products to Delphi in accordance with the Purchase Orders and this Agreement and waives any further right to seek adequate assurance or further contract modifications under the Uniform Commercial Code or other applicable laws.

4. Delphi expressly reserves all of its rights at law and in equity, including, without limitation, all of its rights as a debtor-in-possession under the United States Bankruptcy Code (11 U.S.C. §§ 101-1330, as amended). Without limiting the generality of the foregoing sentence, this Agreement, and any payment made hereunder, does not constitute (a) an admission as to the validity of any claim against Delphi, (b) a waiver of Delphi's rights (i) to dispute any claim, (ii) to reject any agreement, contract, purchase order or other document, including, without limitation, the Purchase Orders, under section 365 of the United States Bankruptcy Code, or (iii) to take, or refrain from taking any other action under any applicable section of the

United States Bankruptcy Code or any other applicable law, or (c) an approval or assumption of any agreement, contract, purchase order or other document, including, without limitation, the Purchase Orders, under section 365 of the United States Bankruptcy Code or any other applicable law, all of Delphi's rights with respect to which are expressly reserved.

5. Company will keep the terms of this Agreement together with all related settlement discussions strictly confidential. Company will disclose the terms of this Agreement only to its management personnel that need to know such information to implement the terms of this Agreement and legal counsel and other advisors with whom Company has a recognized legal privilege; provided that all such parties have been informed of the confidentiality restrictions contained herein. Company further agrees that it will be responsible and liable for any breach of the confidentiality provisions set forth in this Agreement by its management personnel, legal counsel and other advisors. Company acknowledges that failure to honor the confidentiality provisions contained herein would cause significant economic harm to Delphi. Any discussions by Company with any third parties, including the press or media or consultants, regarding this Agreement and its terms are expressly prohibited.

6. The parties hereto acknowledge that they are executing this Agreement without reliance on any representations, warranties or commitments other than those representations, warranties and commitments expressly set forth in this Agreement.

7. This Agreement constitutes the entire understanding of the parties in connection with the subject matter hereof. This Agreement may not be modified, altered, or amended except by an agreement in writing signed by Delphi and Company. Should an inconsistency or conflict exist between the express terms of the Purchase Orders and this Agreement, the terms of this Agreement shall govern and control. This Agreement is being entered into among competent persons who are experienced in business and represented by counsel, and has been reviewed by Company and its counsel. Therefore, any ambiguous language in this Agreement will not be construed against any particular party as the drafter of such language.

8. Should Delphi reject any Purchase Order under section 365 of the United States Bankruptcy Code, this Agreement shall terminate and become of no further force or effect as to such Purchase Order and, if Delphi rejects all Purchase Orders, this Agreement shall terminate and become of no further force or effect in its entirety. Company hereby acknowledges and agrees that no damages or claims shall arise against Delphi by termination of this Agreement in whole or in part pursuant to the immediately preceding sentence and, further, that Company's claims, if any, arising under any Purchase Order upon rejection by Delphi under section 365 of the United States Bankruptcy Code shall not be increased or otherwise enhanced in any way, including, without limitation, by way of entitlement to administrative priority treatment under section 503 of the United States Bankruptcy Code, by Delphi's entry into or performance under this Agreement.

9. This Agreement shall be governed by, and construed and enforced in accordance with, as appropriate, the United States Bankruptcy Code and the laws of the State of Michigan, without regard to conflicts of law principles.

EXECUTED as of the Effective Date.

Delphi Corporation

By: _____
Name: Ely Vardavas
Title: Commodity Manager

D&R Technology

By: _____
Name: David Purdie
Title: President