**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------X
In re:                                           : Chapter 11
                                                 :
                                                 : Case No. 05-44481 (RDD)
DELPHI CORPORATION, et al.,                      :
                                                 :
        Debtors.                                 :
--------------------------------------------------- X
DELPHI CORPORATION, et al.,                      :
                                                 :
        Plaintiffs,                              :
                                                 :
        -against-                                : Adv. Proc. No. 07-02714 (RDD)
                                                 :
KYOCERA, KYOCERA AMERICA INC.,                   :
KYOCERA INDUSTRIAL, KYOCERA                      :
INDUSTRIAL CERAMICS CORP. and                    :
KYOCERA MITA AMERICA INC.,                       :
                                                 :
        Defendants.                              :
---------------------------------------------------------X

## OBJECTION OF THE KYOCERA DEFENDANTS
## TO REORGANIZED DEBTORS' MOTION
## FOR LEAVE TO FILE AMENDED COMPLAINTS

Kyocera America, Inc. ("KAI"), Kyocera Industrial Ceramics Corporation ("KICC") and Kyocera Mita America, Inc. ("Kyocera Mita" and, collectively with KAI and KICC, the "Kyocera Defendants"),[1] by and through their undersigned counsel, hereby object (this "Objection") to the Reorganized Debtors' Motion for Leave to File Amended Complaints (the

---

[1] In addition to the Kyocera Defendants, the Complaint names "Kyocera" and "Kyocera Industrial" as defendants. To the best of the Kyocera Defendants' knowledge, no Kyocera-related entities with those names exist.

NY873952.3
208626-10001

"Motion").[2]   In support of this Objection, the Kyocera Defendants respectfully represent as follows.

## BACKGROUND

1. The Kyocera Defendants are affiliated under the global Kyocera "corporate umbrella" and share a common ultimate parent, Kyocera Corporation, based in Kyoto, Japan. However, the Kyocera Defendants are separate and distinct legal entities, have separate offices located in different states, have different management teams and operate in different lines of business.  Declaration of Patrick M. Cotter dated November 24, 2010 ("Cotter Dec.") at ¶ 3.

2. On October 14, 2005, this Court entered a case management order (the "Case Management Order") [ECF No. 245].  Paragraph 15 of the Case Management Order provided that "[a]ll Filings shall be served via overnight mail upon <u>all parties with a particularized interest in the subject of the Filing</u>."

3. On August 6, 2007, the Debtors filed an expedited motion authorizing the Debtors, among other things, to preserve certain causes of action and to abandon certain claims (the "Preservation Motion") [ECF No. 8905].  By the Preservation Motion, the Debtors sought authority to abandon certain preference claims, including claims of a value of $250,000 and claims against foreign suppliers. Specifically, page 10 of the Preservation Motion provided: "*Preference Claims Below $250,000 in Value.*  The Debtors request authority to abandon these preference actions."  Page 11 of the Preservation Motion went on to provide that "[t]he Debtors seek authority to abandon the following categories of preference actions: . . . (ix) payments to foreign suppliers.").  The Preservation Motion was granted by Order entered August 16, 2007.

---

[2] Capitalized terms used in this Objection but not defined in this Objection shall have the meanings ascribed to them in the Motion.

4.      On or about September 30, 2007, the Debtors filed a complaint (the "Original Complaint") against the Kyocera Defendants under seal.  No notice of the filing of the Original Complaint was provided to any of the Kyocera Defendants.  Cotter Dec. at ¶ 4.  The Original Complaint had attached to it a list of allegedly preferential transfers, totaling approximately $830,000, but it did not specify which of the Kyocera Defendants allegedly received each of the alleged transfers.  The Original Complaint similarly did not identify the transferee of such transfers or the antecedent debt on account of which the transfers allegedly were made.  Indeed, the Original Complaint could not have validly alleged any antecedent debt for at least two listed transfers totaling approximately $590,000 – (i) a $560,313 transfer received by KICC on October 7, 2005 (the "KICC Prepayment Transfer"), and (ii) an additional $30,420 transfer received by KICC on October 7, 2005 – because they were prepayments for goods shipped by KICC after those payments were received.  Cotter Dec. at ¶ 5.

5.      On February 29, 2008 the Debtors filed the First Extension Motion [ECF No. 12922], which was granted by order entered March 28, 2008 [ECF No. 13277].  On April 10, 2008, the Debtors filed the Second Extension Motion [ECF No. 13361], which was granted by order entered April 30, 2008 [ECF No. 13484].  The Debtors filed the Third Extension Motion (collectively with the First Extension Motion and the Second Extension Motion, the "Initial Extension Motions") on October 2, 2009 [ECF No. 18952], and it was granted by Order dated October 22, 2009 [ECF No. 18999].

6.      Although the Initial Extension Motions directly affected the rights each of the Kyocera Defendants by enabling the Debtors to conceal and delay service of claims against the Kyocera Defendants over several years without their knowledge, KAI and Kyocera Mita did not receive notice of any kind of any the Initial Extension Motions, and KICC received, at most,

only ECF notifications, directed to its counsel, of the filing of the Initial Extension Motions, not the particularized notice to which it was entitled under the Case Management Order. See Affidavits of Service at ECF Nos. 12970, 13415, 18967; Cotter Dec. at ¶ 6; Case Management Order at ¶ 15.

7. The summons with respect to this Adversary Proceeding was not issued until March 25, 2010 [Adv. Proc. Docket No. 9], and, according to the Affidavit of Service filed with the Court, the Kyocera Defendants were not served with the summons and the Original Complaint in this Adversary Proceeding until April 2, 2010 [Adv. Proc. Docket No. 14], approximately four and a half years after the Debtors filed their chapter 11 petitions and than two and a half years after the expiration of the applicable statute of limitations. See 11 U.S.C. § 546(a).

8. The Kyocera Defendants filed an answer to the Original Complaint on April 23, 2010 [Adv. Proc. Docket No. 21], in which they asserted, among many other valid affirmative defenses, that the Adversary Proceeding is time-barred, and that the claims against it are barred by the doctrines of laches, waiver, estoppel and res judicata.

9. On March 25, 2010, the Debtors filed the Fourth Extension Motion [Adv. Proc. Docket No. 10], which sought to extend the Debtors' time to serve preference complaints upon "certain foreign defendants." See Motion at ¶ 12. The Fourth Extension Motion was granted on April 20, 2010 [Adv. Proc. Docket No. 15]. By the Fourth Extension Motion, the Debtors acknowledge that "Kyocera" (not a legal entity – presumably a shorthand trade name for the Kyocera Defendants generally) is a "foreign defendant" from the "Foreign Jurisdiction" of Japan. See Fourth Extension Motion at Exhibit C.

10. On September 7, 2010, the Court entered its Order Granting in Part First Wave Motions to Dismiss (the "First Wave Order") [ECF No. 20579], which provided, in paragraph 2, that

> The Debtors have abandoned any claim in all of the Adversary Proceedings against any Defendant that received transfers from the Debtors with an aggregate value to or for the benefit of the transferee that is less than $250,000 during the 90 days preceding their respective petition dates, and all such claims in the Adversary Proceedings are DISMISSED with prejudice.

11. The First Wave Order further provided in paragraph 3 that "[t] Debtors have abandoned any claim in all of the Adversary Proceedings against any Defendant that is a foreign supplier, and that all such claims in the Adversary Proceedings against any foreign supplier are DISMISSED with prejudice."

12. The First Wave Order also required the Debtors to file a motion to amend the complaints in each of the adversary proceedings. The Court further instructed that the amended complaints must, at a minimum, set forth for each alleged transfer "the transferor, the transferee . . . the antecedent debt and which Reorganized Debtor is the plaintiff." First Wave Order at ¶ 4.

13. On September 7, 2010, the Debtors filed the Motion. The Motion has attached to it a form of Proposed Amended Complaint. The Proposed Amended Complaint contains numerous deficiencies. However, most notably, it recites no antecedent debt at all for the KICC Prepayment Transfer.[3] Proposed Amended Complaint at Exhibit 1. Moreover, the Proposed Amended Complaint recites that KAI received just $42,050 in allegedly preferential transfers, that Kyocera Mita received just $14,033.51, and that KICC received just $214,580 (net of the KICC Prepayment Transfer) in allegedly preferential transfers – all well under the $250,000 abandonment threshold. Id.

---

[3] The Kyocera Defendants do not concede that the allegations of antecedent debt (or any other allegation contained in the Proposed Amended Complaint) is adequate. The Kyocera Defendants highlight this deficiency because it is so glaring.

## THE MOTION SHOULD BE DENIED

**A.     JOINDER.**

14.    In the interest of judicial economy, the Kyocera Defendants do not separately restate each and every possible legal theory for the denial of the Motion. Rather, the Kyocera Defendants join in the following objections to the Motion as well as all additional objections to the Motion filed by similarly situated defendants (the "Defendant Objections"):

   a. Affinia Group Holdings Inc.'s and Brake Parts Inc.'s Brief in Opposition to Reorganized Debtors' Motion for Leave to File Amended Complaints [ECF No. 20841];

   b. Objection to the Reorganized Debtors' Motion for Leave to file Amended Complaints filed by Pro Tech Machine [ECF No. 20842];

   c. Objection to the Reorganized Debtors' Motion for Leave to file Amended Complaints filed by Stephenson and Sons Roofing [ECF No. 20848];

   d. Response and objection (Including Joinder of Motion by ATS Automation Tooling Systems Inc.) by A-1 Specialized Services & Supplies, Inc. to Motion by Reorganized Debtors for Leave to File Amended Complaint [ECF No. 20850];

   e. MSX International, Inc.'s Brief in Opposition to Reorganized Debtors' Motion for Leave to File Amended Complaints [ECF No. 20857];

   f. Response of RSR Corporation to Reorganized Debtors' Motion for Leave to File Amended Complaints [ECF No. 20859];

   g. Response of Eco-Bat America, LLC to Reorganized Debtors' Motion for Leave to File Amended Complaints [ECF No. 20860];

   h. Victory Packaging LP's Opposition to the Reorganized Debtors' motion for Leave to File Amended Complaints [ECF No. 20863];

   i. Objection of Defendant Carlisle Companies Incorporated to Reorganized Debtors' Motion for Leave to File Amended Complaint [ECF No. 20866];

   j. Sprimag Inc.'s Objection to Reorganized Debtors' Motion for Leave to File Amended Complaints and Requests for Entry of an Order Vacating Certain Prior Orders Pursuant to Fed. R. Civ. P. 60 and Fed. R. Bankr. P. 9024 [ECF No. 20868];

   k. Republic Engineered Products' Objection to Reorganized Debtors' Motion for Leave to File Amended Complaints and Requests for Entry of an Order Vacating

      Certain Prior Orders Pursuant to Fed. R. Civ. P. 60 and Fed. R. Bankr. P. 9024 [ECF No. 20870];

l.   Vanguard Distributors, Inc.'s Response in Opposition to Reorganized Debtors' motion for Leave to File Amended Complaints [ECF No. 20874];

m.   Response of Decatur Plastic Products, Inc. to Reorganized Debtors' Motion for Leave to File Amended Complaints and the Proposed First Amended Complaint Filed in Adversary Case No. 07-02098 [ECF No. 20879];

n.   Opposition of Defendant The Intec Group, Inc. to Reorganized Debtors' Motion for Leave to File Amended Complaints [ECF No. 20886]; and

o.   Objection of Dupont Powder Coatings USA Inc. and E I Dupont de Nemours and Company to Reorganized Debtors' Motion for Leave to File Amended Complaints [ECF No. 20895].

15.   The Kyocera Defendants adopt the arguments and authorities cited, and the requests for relief set forth, in the Defendant Objections, as applicable to the Kyocera Defendants, and incorporate those arguments, authorities and requests for relief as if they were set forth herein in their entirety, as supplemented below. The Kyocera Defendants reserve the right to supplement this Objection as necessary and to appear at any and all hearings and conferences scheduled on the Motion.

**B.   THE CLAIMS AGAINST THE KYOCERA DEFENDANTS HAVE BEEN ABANDONED.**

      *i.   None of the Kyocera Defendants is alleged to have received more than $250,000 in potentially preferential transfers.*

16.   The Proposed Amended Complaint alleges that (i) KAI received $42,050, and that Kyocera Mita received just $14,033.51, in allegedly preferential transfers. Proposed Amended Complaint as Exhibit 1. Neither amount even approaches the relevant $250,000 threshold for abandonment. Accordingly, under the First Wave Order, the claims against KAI and Kyocera Mita have unquestionably been abandoned and can no longer be pursued. Accordingly, the Motion should, at a minimum, be denied as it relates to those entities.

17. The Proposed Amended Complaint similarly alleges that KICC received just $214,580 in allegedly preferential transfers. Id. While the Proposed Amended Complaint seeks avoidance and recovery of $774,892.63 from KICC, the Debtors acknowledge by their failure event to attempt to allege any antecedent debt in connection with the KICC Prepayment Transfer that $560,312.63 of that amount was not made on account of an antecedent debt owed by the Debtor. The Debtors therefore cannot legitimately allege that such amount is subject to avoidance as a preference and should not be permitted to do so in the Proposed Amended Complaint. See 11 U.S.C. § 547(b)(2); In re Corporate Food Management, Inc., 223 B.R. 635, 646 (Bankr. E.D.N.Y. 1998) ("element for establishment of a prima facie preferential transfer is that [transfer] was on account of an antecedent debt.").

18. In abandoning the preference actions of $250,000 and below, the Debtors clearly expressed their intention not to commence suits for the avoidance and recovery of preferences against those entities with relatively minimal potential preference exposure. KICC falls squarely within that class. While the First Wave Order does not so provide, this precise issue was not litigated head-on in connection with the dismissal motions, and there is no logical reason why the Debtors' abandonment of preference claims should not include the claims against KICC, particularly since the Debtors cannot validly allege under Rule 11 that KICC received preferential transfers of $250,000 during the preference period. Indeed, only because of a frivolous demand for the return of an admittedly non-preferential transfer can the Debtors even attempt to argue that the remaining alleged transfers can be pursued. Under these circumstances, it would be unfair and absurd to force KICC to endure litigation over the relatively modest preferential transfers it is alleged to have received. KICC thus requests that the Court find that the claims against KICC have been abandoned and deny the Motion.

### ii. *The Kyocera Defendants are foreign suppliers.*

19.   As noted above, the Debtors have admitted that "Kyocera" (presumably a shorthand trade designation for the Kyocera Defendants, who allegedly received the allegedly preferential transfers) is based in Japan and is a foreign defendant.  See Fourth Extension Motion at Exhibit C.  This admission should be binding on the Debtors for the proposition that the Kyocera Defendants are "foreign suppliers" as that term is contemplated in the First Wave Order and the Preservation Motion.  See Schott Motorcycle Supply, Inc. v. American Honda Motor Co., Inc., 976 F.2d 58, 61 (1st Cir. 1992) ("A party's assertion of fact in a pleading is a judicial admission by which it is normally bound throughout the course of the proceeding."); Keller v. U.S., 58 F.3d 1194, 1199, n. 8 (7th Cir. 1995) ("Judicial admissions are formal concessions in pleadings[,] . . . may not be controverted at trial . . . [and] have the effect of withdrawing a fact from contention.") (quotations omitted).  Accordingly, the claims against the Kyocera Defendants have been abandoned.

20.   To the extent the Court believes that this admission is not binding on the Debtors, the Kyocera Defendants note that certain if not all goods sold to the Debtors by KICC and the other Kyocera Defendants were produced in and shipped from Japan.  Cotter Dec. at ¶ 10.  The corporate headquarters for the Kyocera umbrella of companies is also located in Japan.  Id.  These facts, among others, indicate that the Kyocera Defendants are "foreign suppliers" as that term is contemplated in the Preservation Motion and the First Wave Orders and that the claims against them have thus been abandoned.

### C.   THE MOTION SHOULD BE DENIED BECAUSE THE CLAIMS ASSERTED UNDER THE PROPOSED AMENDED COMPLAINT STILL ARE NOT SUFFICIENTLY PLED UNDER RULE 8.

21.   The First Wave Order required the Debtors to identify the antecedent debt on account of which the alleged preferential transfers were made.  First Wave Order at ¶ 4;

Transcript of July 22, 2010 hearing (the "Transcript") at page 217 ("[Y]ou need [to] show the antecedent debt in the complaint."). In this regard, among others, the Proposed Amended Complaint falls short.

22. Specifically, as noted above, and in addition to the numerous deficiencies referenced in the Defendant Objections, the Proposed Amended Complaint contains no allegation of the antecedent debt on account of which the KICC Prepayment Transfer was made. Proposed Amended Complaint at Exhibit 1. The Proposed Amended Complaint therefore does not meet the pleading standards imposed on preference complaints in this and other districts.[4] See Transcript at page 276-77; In re Hydrogen, LLC, 2010 WL 1609 (Bankr. S.D.N.Y. April 20, 2010); In re Charys Holding Company, Inc. and Crochet & Borel Services, Inc., Case No. 08-10289 (Bankr. D. Del. July 14, 2010); In re McLaughlin, 415 B.R. 23 (Bankr. D.N.H. 2009); In re Careamerica Inc., 409 B.R. 737 (Bankr. E.D.N.C. 2009); See Transcript at page 204 ("If, in fact, you weren't able to show an antecedent debt . . . then, you know, there'd be a complaint that someone could move to dismiss even if, you know, I thought there was enough to let the complaint be filed."). Accordingly, the Motion should be denied.

**D. THE DEFENDANTS RECEIVED INSUFFICIENT NOTICE OF THE INITIAL EXTENSION MOTIONS.**

23. As noted above, KAI and Kyocera Mita received no notice at all of the Initial Extension Motions.[5] See Affidavits of Service at ECF Nos. 12970, 13415, 18967; Cotter Dec. at ¶ 6.. KICC's notice was similarly deficient, since the Debtors failed to serve KICC with the Initial Extension Motions by overnight mail as required under the Case Management Order and

---

[4] The Kyocera Defendants join in the more general objections to the sufficiency of the Proposed Amended Complaint raised by other, similarly situated defendants.

[5] KAI and Kyocera Mita were not represented at the time of the Initial Extension Motions by common counsel with KICC. Thus, to the extent the Court finds that KICC did have adequate notice, there can be no argument that such notice can be imputed on KAI and Kyocera Mita.

05-44481-rdd    Doc 20920    Filed 11/24/10    Entered 11/24/10 15:09:35    Main Document
Pg 11 of 14

expected by KICC's counsel of any pleading that would particularly affect KICC's rights. Id. While determining the identity of the parties whose rights would be particularly affected by any given pleading in bankruptcy cases may, in certain circumstances, be difficult, here those parties were easily identifiable – they were the defendants to the very adversary proceedings the Debtors were seeking to conceal. However, rather than providing KICC and other defendants who were on the general ECF service list with particularized notice, the Debtors served the Initial Extension Motions on such parties, including KICC, by ECF transmission alone – three transmissions of the more than 20,000 such transmissions received by KICC's counsel to date. Id.; Case Management Order at ¶ 15.

24.     Aside from being technically deficient under the Case Management Order, the notice received by KICC was also grossly insufficient to afford KICC actual notice of the relief sought by the Debtors or of the potential prejudicial effect it could have on KICC's rights. Indeed, absent effective, particularized notice, the Kyocera Defendants had no way of knowing or discovering that the Initial Extension Motions affected any of their particular rights, because neither the Initial Extension Motions, nor Exhibit 7.24 of the plan (the exhibit by which the Debtors purported to preserve claims against the various adversary defendants) identified any of the Kyocera Defendants as a named defendant. Cotter Dec. at ¶ 8. Moreover, the claims against the Kyocera Defendants had been abandoned under the Abandonment Order, since, among other things, the value of potential prima facie preferences each of them received was far less than the $250,000 abandonment threshold.

25.     Finally, because KICC understood the Case Management Order to require that KICC be provided with overnight delivery of hard copies of all documents particularly affecting its rights, KICC justifiably relied on this lack of service, among several other things discussed

NY873952.3
208626-10001

11

above, to form a belief that the Initial Extension Motions <u>did not</u> particularly affect its rights [Cotter Dec. at ¶ 9], a belief that the Debtors encouraged in order to conceal their claims against KICC, but which unfortunately for KICC and dozens of similarly situated defendants was incorrect.

26.    The failure of the Debtors to provide the Kyocera Defendants with adequate (or any, as the case may be) notice of the Initial Extension Motions violated the Kyocera Defendants' rights to due process under the 14th Amendment of the United States Constitution and renders the orders granting the Initial Extension Motions invalid as to the Kyocera Defendants.  As a result, the Debtors failed timely to effectuate service of the Original Complaint as required under Rule 4 of the Federal Rules of Civil Procedure, and the claims are barred by the statute of limitations set forth in Section 546(a) of the Bankruptcy Code.  Accordingly, and for the reasons relating to lack of notice referenced in the Defendant Objections, the Motion should be denied.

E.    **THE KYOCERA DEFENDANTS HAVE BEEN PREJUDICED.**[6]

27.    Discovery has not yet begun in this adversary proceeding.  Thus, the true measure of the prejudice to KICC and the other Kyocera Defendants from the Debtors' actions in connection with this adversary proceeding is not yet known.  Cotter Dec. at ¶ 11.  What is known, however, is that the Debtors actively concealed the existence of their claims against the Kyocera Debtors by filing the claims under seal, by announcing that claims of the type asserted against the Kyocera Defendants had been abandoned and by failing to provide any notice (in the case of KAI and Kyocera Mita) or effective, required notice (in the case of KICC) of the potential looming threat of suit for a period of more than two and a half years.

---

[6] KAI and Kyocera Mita reserve the right to supplement this Objection to set forth the prejudice they have faced in connection with, among other things, the Debtors' delay in serving the Original Complaint upon them.

28.  As a result of that concealment and delay in serving the Original Complaint, KICC has faced significant, immediately-recognizable prejudice (likely in addition to other, yet undiscovered prejudice).  Id.  For example, the Manager of Credit and Collections of KICC, who worked on the Delphi account and was involved in the transactions giving rise to the KICC Prepayment Transfer and the alleged preferential transfers to KICC, has left KICC's employ since the filing under seal of the Original Complaint and the expiration of the statute of limitations.  Id.  With him went relevant knowledge, which KICC did not know to preserve as a result of the Debtors' concealment of the action pending against it.  Id.  Other employees have also left the employ of the Kyocera Defendants during that period, and the memories of those who remain have naturally faded as a result of the passage of years.  Id.  Moreover, KICC has experienced difficulty in its efforts to obtain documents internally and from its vendors that are necessary to establishing its defenses, including shipping and other records, which records would have been easily obtainable had the Original Complaint been timely served.  Id.

29.  Additionally, KICC did not know to (and therefore was not able to) reserve adequate funds to pay its defense costs or to satisfy any judgment that might be obtained against it, because it was misled to believe that it would not be facing litigation regarding the amounts at issue in this adversary proceeding.  Cotter Dec. at ¶ 12.  Finally, KICC was unable to disclose the existence of the Debtors claims in its financial statements or to incorporate those potential claims into its budgets and financial projections, again because the Debtors' claims were concealed from KICC.  Id.  As a result of the foregoing prejudice, the motion should be denied.

## **CONCLUSION**

WHEREFORE, for the foregoing reasons, and the reasons set forth in the Defendant Objections joined by the Kyocera Defendants and incorporated by reference herein, the Kyocera Defendants respectfully request that the Court deny the Motion and grant such other and further relief as the Court may determine to be just and proper.

Dated: New York, New York
       November 24, 2010

**LOEB & LOEB LLP**

*/s/ Daniel B. Besikof*
William M. Hawkins
Daniel B. Besikof
345 Park Avenue
New York, New York  10154
Telephone:  212-407-4000
Facsimile:  212-407-4990
whawkins@loeb.com
dbesikof@loeb.com

*Counsel to Kyocera America, Inc., Kyocera Industrial Ceramics Corporation and Kyocera Mita America, Inc.*