Warner Norcross & Judd LLP
900 Fifth Third Center
111 Lyon Street, NW
Grand Rapids, MI  49503-2487
(616) 752-2000 phone
(616) 222-2500 fax
gtoering@wnj.com
moneal@wnj.com

Gordon J. Toering (GT-3738)
(Admitted *Pro Hac Vice*)
Michael B. O'Neal (MO-9511)
(Admitted *Pro Hac Vice*)
Attorneys for Bosch Chassis Systems Columbia L.L.C.
f/k/a PBR Columbia L.L.C.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                                          :
     In re                              :    Chapter 11
                                                          :
DELPHI CORPORATION, et al.,                               :    Case No. 05-44481 (RDD)
                                                          :
                                                          :    (Jointly Administered)
                Debtors.   :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                                          :
DELPHI AUTOMOTIVE SYSTEMS, LLC                            :
                                                          :
          Plaintiff,                        :
                                                          :
v.                                                        :    Adv. Proc. No. 07-02572-rdd
                                                          :
PBR COLUMBIA LLC, [1]                                     :
                                                          :
          Defendant.                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**BOSCH CHASSIS SYSTEMS COLUMBIA L.L.C. F/K/A PBR COLUMBIA L.L.C.'S
MEMORANDUM OF LAW IN OPPOSITION TO REORGANIZED DEBTORS'
MOTION FOR LEAVE TO FILE AMENDED COMPLAINT**

---

[1] Although Plaintiff's proposed First Amended Complaint contains a new caption and has not been accepted yet by this Court, Bosch Chassis Systems Columbia L.L.C. uses the new caption to avoid confusion and to remain consistent with Plaintiff's pleadings in this adversary proceeding.

Defendant Bosch Chassis Systems Columbia L.L.C. f/k/a PBR Columbia L.L.C. ("**Defendant**"), by its undersigned attorneys, files this Memorandum of Law in Opposition to Reorganized Debtors' Motion for Leave to File Amended Complaints and states as follows:

## PRELIMINARY STATEMENT

The Court should deny the Debtors' motion for leave to amend their original complaint dated September 26, 2007 (the "**Original Complaint**"), which motion asks this Court to allow Debtors to permit Delphi Automotive Systems, LLC ("**DAS**") to file a proposed amended complaint (the "**Amended Complaint**") against Defendant to recover $3,672.278.80 in alleged transfers, an amount slightly more than the amount set forth in the Original Complaint. The Amended Complaint is futile, and Defendant will be severely prejudiced by DAS's undue delay if this case is permitted to proceed.

First off, in its Amended Complaint, DAS attempts to recover approximately $26,000 more than the amount sought after from the Original Complaint by way of new transfers not previously identified. It is improper and the claims regarding the newly listed transfers do relate back to the filing of the Original Complaint. Such new claims are time barred as the statute of limitations expired more than three years ago.

Second, as explained in greater detail below, Defendant was not served with, and had no notice of the Debtors' motions to extend the time to serve the Original Complaint (the "**Extension Motions**") or the orders that granted them (the "**Extension Orders**"). As this Court stated at the July 22, 2010 hearing, because Defendant had no notice of the Extension Orders, it may now challenge them. Debtors were not entitled to obtain the Extension Orders because Rule 4(m) may be used only to facilitate service (and not to authorize a delay in service), and it was not proper for Debtors to use Rule 4(m) to avoid prosecuting preference actions for more than two years while it preserved its business relationship with unsuspecting defendants and used its

resources in other areas it deemed more important. Any preference action is time-barred without the Extension Orders.

Third, DAS's proposed amended complaint fails to comply with this Court's September 7, 2010 Dismissal Order, and does not adequately plead the antecedent debt for many of the transfers.

Finally, Defendant has suffered great prejudice because of Debtors' more than two year delay in serving this action, during which time it shut down business operations, sold its assets, lost track of its knowledgeable former employees and did not preserve much of its data. Therefore, this Court should exercise its discretion to deny the motion and spare Defendant the further expense of opposing claims that are unlikely to ever succeed.

## STATEMENT OF FACTS

### The Original Complaint

The Original Complaint was filed under seal on September 26, 2007, but not unsealed and served on Defendant until February 2010. The "plaintiffs" in the Original Complaint were "Delphi Corporation ('Delphi') and all of the other "debtors and debtors-in-possession." The amount of transfers sought to be avoided was $3,646,242.82.

### Dismissal Of The Original Complaint

In response to the motions to dismiss by Defendant and other defendants in the preference actions, the Court entered its September 7, 2010 Order Granting In Part First Wave Motions to Dismiss (the "**Dismissal Order**"). The Dismissal Order dismissed with prejudice as abandoned all claims against foreign suppliers or against defendants who received less than $250,000, and dismissed the balance of the claims without prejudice because the Debtors had failed to plead sufficient facts to state a claim. The Court then permitted the Debtors to file a

motion to seek leave to file an amended complaint, and expressly ordered that the proposed amended complaint shall "set forth, *at a minimum*, the transfers, the transferee, any known subsequent transferee against whom relief is sought, the antecedent debt and which Reorganized Debtor is the Plaintiff." *Id.* (emphasis added).

Debtors' Motion For Leave To Amend

On September 7, 2010, the Debtors' filed their Motion for Leave to File Amended Complaints (the "Motion to Amend"), which attached the Amended Complaint. The Amended Complaint names only one Plaintiff, DAS and only the Defendant. The Amended Complaint seeks to avoid and recover $3,672,278.80 in aggregate transfers.

Defendant was Prejudiced By The Lack Of Notice

Effective December 31, 2009, Defendant sold all or substantially all of its assets to an unrelated third party, an automotive supplier called Akebono Corporation (North America). Defendant then ceased manufacturing operations. (See Declaration of David L. Foster, ¶5, attached as Exhibit A). Since January 1, 2010 and continuing through today: (a) Defendant has not had any employees, other than executive officers of the Defendant that only attend to matters related to Defendant on an as-needed basis; and (b) Defendant has not had any manufacturing operations. All paid employees of Defendant were terminated and all manufacturing operations of Defendant ceased when the sale of Defendant's assets to Akebono occurred on or about December 31, 2009. *Id.* at ¶ 6. Defendant's sale of assets occurred without any knowledge of the adversary proceeding and without any knowledge that Debtors had asserted preferential transfer claims (or any other claims) against Defendant. *Id.* at ¶ 7. In February 2010 – after the sale to Akebono occurred - Defendant learned for the very first time that Delphi had filed the

above-captioned adversary proceeding complaint in September 2007 against Defendant to recover over $3.6 million in alleged preferential transfers that occurred in 2005. *Id.* at ¶ 8. As a result of Debtors' withholding notice and service of the complaint in this action, Defendant <u>has been</u> harmed in its ability to defend this action and <u>has</u> suffered actual prejudice.

## STANDARD FOR LEAVE TO AMEND

Leave to amend under Rule 15 of the Federal Rules of Civil Procedure is not granted automatically; instead "it is within the sound discretion of the court whether to grant leave to amend." *John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp.*, 22 F.3d 458, 462 (2d Cir. 1994). "[C]onsiderations of undue delay, bad faith, and prejudice to the opposing party [are] all touchstones of a district court's discretionary authority to deny leave to amend." *Barrows v. Forest Laboratories, Inc.*, 742 F.2d 54, 58 (2d Cir. 1984).

Except within 21 days after service of a qualifying pleading, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a), incorporated by Fed. R. Bankr. P. 7015. The equities in this case strongly favor Defendant, due to the futility of allowing the Amended Complaint, the undue prejudice to Defendant that would result from doing so, and the repeated, unjustified extensions of the deadline for Debtors to serve Defendant with the Original Complaint without notice to Defendant.

**GRANTING LEAVE TO AMENDED THE ORIGINAL COMPLAINT IS FUTILE**

I.    <u>The New Transfers Set Forth in the Amended Complaint Do Not Relate Back to the Date
of the Original Complaint and the Statute of Limitations Has Expired.</u>

In its Amended Complaint, DAS increases the amount of transfers and adds new transfers

it seeks to avoid.  Since the statute of limitations for preference claims under 11 U.S.C. § 547

expired three years ago, DAS has the burden of proving the Amended Complaint relates back to

the date the Original Complaint was filed under Rule 15(c) or else any amendment would be

futile.  *See VKK Corp. v. Nat'l Football League*, 187 F.R.D. 498, 500 (S.D.N.Y. 1999) *aff'd*, 244

F.3d 114, 128 (2d Cir. 2001) (discussing the plaintiff's burden of proof under Rule 15(c)).  In

order for the Amended Complaint to relate back to the date of the Original Complaint the

transactions alleged in the Original Complaint must have put the Defendant on notice of the

claim.  Here, DAS fails to meet its burden under Rule 15(c)(1)(B) because there are new claims.

In Paragraph 37 of its motion, Plaintiff optimistically observes:  "Here, there can be no

dispute that the Amended Complaints relate back to the filing of the Original Complaints. The

Amended Complaints do not assert any new claims and are premised upon the same transactions

set forth in the Original Complaints."  But there is a dispute.

The relation back standard under Rule 15(c)(1)(B) utilized by the Second Circuit is set

forth in *Slayton v. American Express Co.*, 460 F.3d 215 (2nd Cir.2006).

> [A] relation back decision under Rule 15(c)(2)[2] does not involve an exercise of
> discretion.  A court reviewing a Rule 15(c)(2) decision performs a function
> analogous to that performed for failure to state a claim under Rule 12(b)(6).  In
> reviewing a 12(b)(6) dismissal, we ask whether the facts provable under the
> allegations of the complaint would support a valid claim for relief; in reviewing a
> Rule 15(c)(2) relation back decision, we ask whether the facts provable under the
> amended complaint arose out of conduct alleged in the original complaint.  If so,
> the amended complaint will relate back.

---

[2] Now numbered as Rule 15(c)(1)(B).

* * *

If facts provable under the amended complaint arose out of the conduct alleged in the original complaint, relation back is mandatory.

* * *

Under Rule 15, the central inquiry is whether adequate notice of the matters raised in the amended pleading has been given to the opposing party within the statute of limitations by the general fact situation alleged in the original pleading. Where the amended complaint does not allege a new claim but renders prior allegations more definite and precise, relation back occurs.

*Id.* at 227 (citations and quotations omitted).

This Court addressed the issue of relation back in the context of a preference case in *In re 360Networks (USA) Inc.*, 367 B.R. 428 (Bankr. S.D.N.Y. 2007). In *360Networks*, the plaintiff filed a complaint seeking the avoidance and recovery of preferential transfers made to the defendant of "at least $17,330,644.54." *360 Networks*, 367 B.R. at 431. After the statute of limitations had expired, the plaintiff filed a motion seeking leave to amend its complaint to add additional transfers totaling $12,350,815.69, and for a finding that the proposed amended complaint would relate back to the filing of the original complaint. The court addressed the key issue of "whether the additional transfers set forth in the amended complaint would 'relate back' under Rule 15(c)." *Id.* at 433. The court noted that if the proposed amendments did not relate back, allowing the plaintiff to amend the complaint would be futile, and the moving party bears the burden of proof with respect to relation back under Fed. R. Civ. P. 15(c). *Id.*

> "[T]he primary consideration in determining whether the proposed amendment to the Complaint should relate back is whether the Complaint put the defendant on notice that additional transfers may be pursued at a later date." *Id.* **"The principal inquiry is whether adequate notice of the matters raised in the amended pleading has been given to the opposing party."** *Id.* "If the facts in the original pleading do not provide defendant with notice of the facts out of which the time-barred claim arises then relation back is inappropriate." *Id.* at 433-434. The court examined the

> original complaint to determine whether it put the defendant
> on notice that plaintiff may challenge additional transactions.
> The court noted that the original pleading alleged only that
> "[o]n or within ninety (90) days before the Petition Date,
> *360Networks* made preferential transfers to … [defendant] in
> the aggregate sum of $17,330,644.54." *Id*. at 434.   The
> exhibit to the complaint listed specific transfers, but did not
> provide "any information from which the Defendant [could]
> glean that the Debtor intended to challenge additional
> transfers." *Id*. (emphasis supplied)

The court also noted that the fact that all of the transactions, including those proposed in

the Amended Complaint, were potentially preferential was of no consequence to the Rule

15(c)(2) analysis.   When determining whether relation back is appropriate, the court must

examine

> "each potential preferential transfer [a]s a *separate and distinct
> transaction* [because] a preference action based on one transfer
> does not put defendant on notice of claims with respect to any
> other unidentified transfers." *Id*. (emphasis added.)

The court denied *360Network's* motion to amend, finding that relation back was not appropriate

because the defendant was not put on notice that additional transfers may be pursued at a later

date by the original pleading. *Id*. at 435.

The United States Bankruptcy Court for the District of Delaware reached a similar

conclusion in *MBC Greenhouse, Co. v. CTC Direct, Inc.*, 307 B.R. 787 (Bankr. D. Del. 2004).

The plaintiff in *Greenhouse* sought to amend its complaint to add additional transactions and

defendants to its avoidance complaint after the statute of limitations had run.   The allegations in

the original complaint provided:

> "Within ninety (90) days prior to the Petition Date, one or more of
> the Debtors made transfers to Defendant in the amount of
> $2,830,141.32 (the "Transfer").   A summary of the information
> concerning the Transfer is attached hereto as Exhibit A, and
> incorporated herein by reference."

*Greenhouse*, 307 B.R. at 793. Exhibit A listed six alleged preferential transfers. The amended complaint sought to add 33 additional transfers, increasing the demand to $7,911,935.66.

The *Greenhouse* court noted that the allegations of the original complaint did not put the defendant on notice that plaintiff intended to avoid *all* transfers made within the 90 days preceding the petition date, rather the complaint only evinced plaintiff's intent to avoid those transfers listed on Exhibit A. The court further noted that the new transactions plaintiff sought to add were "a whole new set of specific transactions." *Id.* at 792. The court cited to *Slaughter Co. and Assoc., Inc. v. Slaughter*, 242 B.R. 97, 102-103 (Bankr. N.D. Ga. 1999) for the proposition that allowing a "Trustee to use the relation-back doctrine to bootstrap new transactions onto viable actions is an abuse of due process which cannot be allowed, even to maximize recovery to the estate."[3]

Here, the new set of transfers set forth in the Amended Complaint (totaling $26,035.98) do not relate back to the transfers and transactions set forth in the Original Complaint. There is no underlying unifying scheme or course of conduct that would relate the new transfers to the original transfers. Defendant could hardly been given adequate notice form the allegations in the Original Complaint listing of transfers that additional transfers would be subject to challenge. Accordingly, DAS cannot meet its burden and any amendment under Rule 15(c)(1)(B) would be futile as the statute of limitations has run.

---

[3] In addition to the *Slaughter* case, the *Greenhouse* court relied on *Austin Driveway Serv., Inc. v. O & G Ind., Inc.*, 179 B.R. 390 (Bankr. D. Conn. 1995) and *New Bedford Capacitor, Inc. v. Sexton Can Co.*, 301 B.R. 375 (Bankr. D. Mass. 2003). The court in *Austin* held that "in the preference context, each alleged preference should be considered a distinct transaction which would not relate back to any other transaction in the absence of an underlying unifying scheme or course of conduct," and the debtor-creditor relationship alone is not such a unifying scheme. *Austin*, 179 B.R. at 399. The *Austin* court also suggested that absent such a scheme, "strict application of the statute of limitations will give trustees an incentive to pursue preferential transfers expeditiously, without prejudice to the goal of maximizing the estate." *Id.* Similarly, the *New Bedford* court, in holding that relation back was not warranted, stated "the debtor-creditor relationship alone [was] insufficient to warrant the conclusion that all payments during the preference period [were] part of the same conduct, transaction or occurrence." *New Bedford*, 301 B.R. at 380.

II.    The Proposed Amended Complaint Is Futile Because The Extension Orders Should Not
Have Been Entered And Should Be Vacated, Leaving DAS's Claims Barred By The
Statute of Limitations

For all for the reason set forth in Defendant's prior motion to dismiss and the dismissal

motions filed by the other preference defendants, which are incorporated here, the Extension

Orders were entered in violation of Federal Rule of Civil Procedure 4(m) and Defendant's due

process and other rights, and DAS may not unseal and serve preference complaints against them

years after the limitations period expires.

Moreover, this Court has already determined that anyone, like Defendant, who did not

receive notice of Debtors' Extension Motions, may now challenge *de novo* the entry of the

Extension Orders. *See* July 22, 2010 Tr. at 103, 119 (Exhibit J) ("[I]f someone really didn't get

notice of the extension motions, then it would seem to me they should be able to argue to me as

if the motions were being made right now . . . .").

A.    *Defendant Received No Actual Notice Of Debtors' Extension Motions*

The indisputable evidence, including Debtors' own admissions and documents, confirms

that Debtors failed to provide Defendant with any actual notice of its Extension Motions.  As a

result, Defendant received no notice of any of the Extension Motions.  Indeed, Debtors admitted,

in its Omnibus Response in opposition to the various defendants' dismissal motions, that it never

served Defendant.  *See* Omnibus Response at p. 29, fn. 8.

Delphi's 2007 Disclosure Statement also failed to put Defendant on actual notice that its

rights were in jeopardy.  The Disclosure Statement simply indicated that Delphi had previously

filed adversary actions against certain unspecified defendants and had already been granted its

Extension Order on August 16, 2007, which expired on March 31, 2008.  *See* Disclosure

Statement (D.I. 11388) at 193; Extension Order (D.I. 9105).  The Disclosure Statement did not

give Defendant notice and an opportunity to object to anything or alert them that they could be exposed to any litigation after early 2008.

Thus, Defendant can now challenge the entry of the Extension Orders. As explained in Defendant's prior briefs, Rule 4(m) is designed to facilitate service, not non-service. Thus the Rule 4(m) extension should not have been granted. *See Fimbres v. United States*, 833 F.2d 138, 139 (9th Cir. 1987) (rejecting Rule 4(m) extension, explaining that the notion that the plaintiff lacked the financial resources to prosecute the action amounted to nothing more than an improper intentional delay in service); *Smith v. Pennsylvania Glass Sand Corp.*, 123 F.R.D. 648, 651 (N.D. Fla. 1988) ("Plaintiff cannot deliberately or even inadvertently 'wait and see' if his financial resources improve enough to allow him to diligently prosecute his case."). Indeed, if such a "wait and see" rationale were permitted, the statute of limitations would be rendered meaningless.

### B.    *Defendant Was Not On Inquiry Notice Of Debtors' Extension Motions*

Defendant also was not on "inquiry notice" of the Extension Motions. As an initial matter, the law is clear that "[a party] bear[s] a heavy burden in establishing that [another party] was on inquiry notice as a matter of law." *Nivram Corp. v. Harcourt Brace Jovanovich, Inc.*, 840 F. Supp. 243, 249 (S.D.N.Y. 1993) (discussing "inquiry notice" in the context of fraud actions) (quoted in *Newman v. Warnaco Group, Inc.*, 335 F.3d 187, 195 (2d Cir. 2003). Moreover, "[i]nquiry notice may be found as a matter of law only when uncontroverted evidence clearly demonstrates when the plaintiff should have discovered" the conduct at issue. *Staehr v. Hartford Fin. Servs. Group*, 547 F.3d 406, 427 (2d Cir. 2008).

Here, Defendant was not on inquiry notice of the Extension Motions or even that a preference action had been filed against it. Simply put, there are no facts that show, or could

show, that it was reasonable for it to have inquired about the Extension Motions or preference action.[4]  In fact, Debtors admit that it intended to conceal from the preference defendants that they had been sued.

In *EBS Litigation LLC v. Barclays Global Investors, N.A.*, 304 F.3d 302 (3rd Cir. 2002), the court rejected the notion that "an objectively-reasonable shareholder" should have been on inquiry notice that a debtor may have a claim against it for return of a distribution, even though the debtor's bankruptcy petition should have alerted him to the fact that the debtor's earlier pronouncements regarding its solvency may have been incorrect, and especially where the debtor continued to misrepresent its financial condition while in bankruptcy.  *Id*. at 306.  As the court emphasized:

> [W]e must not lose sight of the practical realities of the situation. We suspect it would not occur to an objectively-reasonable stockholder with full knowledge of the applicable law, even if he or she suspected that the distribution of D&B stock might be vulnerable to a challenge, to do anything about it unless such a challenge became a reality.

*Id*.  *EBS* thus refutes any suggestion that Defendant should have been on inquiry notice.

1.    Even if Defendant Was On Inquiry Notice, It Was Reasonable For It to Do Nothing – Just Like The Other 11,000 Potential Preference Defendants

Even if Defendant was on inquiry notice that DAS might assert a preference claim against it, it was reasonable for them to do nothing.  After all, none of the 11,000 potential preference defendants objected to any of the Extension Motions.  Certainly, if 11,000 other potential preference defendants did not object, then it was reasonable for the Defendant not to do

---

[4] As the Second Circuit explained, albeit in the context of a fraud action, "the critical factor for purposes of inquiry notice in any case is when the circumstances would suggest to an investor of ordinary intelligence the probability that she has been defrauded."  *Id*. at 429 (emphasis in original) (internal quotations omitted); *see also Newman v. Warnaco Group, Inc.*, 335 F.3d 187, 193 (2d Cir. 2003) ("[T]he information provided must trigger notice with sufficient storm warnings to alert a reasonable person to the probability that there were either misleading statements or significant omissions involved") (quoting *Morin v. Trupin*, 809 F. Supp. 1081, 1097 (S.D.N.Y. 1993)).

so as well. This especially is true where the Defendant had no obligation to monitor Debtors'
bankruptcy proceeding, even if they were aware of it. *City of New York v. New York, N.H. & H.
R.R. Co.*, 344 U.S. 293, 297 (1953) ("[E]ven creditors who have knowledge of a reorganization
have a right to assume that the statutory 'reasonable notice' will be given them before their
claims are forever barred" and have no obligation to monitor the proceedings before they receive
formal notice).

### 2.    Debtors Misled Defendant To Believe That No Preference Action Had Been Filed, Or Would Be Pursued, Against It

The fact that no defendant actually objected to the Extension Motions is unsurprising
given that Debtors' actions and representations specifically were intended to dissuade any such
inquiry. Indeed, Debtors assured defendants that avoidance actions would be limited only to a
few named parties that did not include Defendant. *See* 2/28/08 Extension Motion (D.I. 12922), ¶
17 (Delphi would "not retain any causes of action asserted in the [adversary proceedings] except
those specifically listed in Exhibit 7.24 of the Plan" (claims related to third parties)); March 19,
2008 Tr., at p. 22 (the Court stated that "[t]he plan [only] reserve[d] or retain[ed] the ability to
pursue a very small number of avoidance actions."). Based on Debtors' statements, Defendant
had no reasonable basis to inquire further. *See Staehr*, 547 F.3d at 414 (holding that a party's
"seemingly benign explanation" of actions that suggested fraud made it "reasonable for Plaintiffs
not to inquire" further).

Even Delphi's Disclosure Statement suggested that no inquiry was necessary. Indeed, the
Disclosure Statement gave the Defendant every reason to believe that, as of March 31, 2008, the
avoidance actions had been dropped. Specifically, the Disclosure Statement stated that "[t]he
Debtors have until March 31, 2008 to serve each defendant with the summons and complaint,
without prejudice to the Debtors' right to seek further extensions of the deadline." Disclosure

13

Statement (D.I. 11388) at 196.  Thus, immediately after March 31, 2008, having not been served

with a summons and complaint or any notice of a motion to further extend the service deadline,

Defendant would have had no reason to believe that they were still the subject of a preference

action.

C.    *Defendant Was Not Required To Do Anything Even If It Was On Actual Notice*

It is also undisputed that the Defendant was never served with process in the sealed

preference action until February 2010 – years after the first Extension Orders were entered

starting in 2007.  As such, Defendant had the right to entirely ignore the entire proceeding until

they were formerly served.  *Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc.* 526 U.S. 344,

350 (1999).

In *Murphy Brothers*, the defendant had actual notice of the lawsuit after it was provided a

courtesy copy of the complaint by plaintiff's counsel.  Despite having the complaint, the

defendant ignored the lawsuit and took no action to remove it within the limited 30 day period

mandated by 28 U.S.C. § 1446.  When the defendant was later formally served with the

complaint, it attempted to remove the action to federal court.  The plaintiff argued that the

defendant had waived its removal right because it had actual notice of the lawsuit (through the

courtesy copy) and did not timely seek to remove.  In bluntly rejecting the plaintiff's contention

and endorsing the defendant's right to ignore the lawsuit until it was formally served, the Court

declared:

> Service of process, under longstanding tradition in our system of
> justice, is fundamental to **any procedural imposition** on a named
> defendant.
>
> * * *
>
> In the absence of service of process (or waiver of service by the
> defendant), a court ordinarily may not exercise power over a party

14

the complaint names as defendant. . . . ***Accordingly, one becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure*** stating the time within which the party served must appear and defend. . . . Unless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights.

*Id*. at 350-51 (internal citations omitted) (emphasis added). The Court thus emphatically declared that a defendant's "procedural rights [do not] slip away before service of a summons." *Id*. at 356. Here, no summons having been served on the Defendant, there can be no contention that Defendant's procedural rights, including its right to challenge *de novo* the Extension Orders, was ever lost.

III.   DAS's Proposed Amended Complaint Fails To Comply With The Dismissal Order By Not Setting Forth The Antecedent Debt

The Amended Complaint fails to comply with the minimum requirements set forth in the Dismissal Order.  Specifically, the Amended Complaint once again fails adequately to plead facts regarding the antecedent debt for each transfer alleged by DAS.  DAS's only allegations regarding the existence of an antecedent debt are bare-bones and are presented in Paragraph 23 of the Amended Complaint, where DAS alleges:

> Plaintiff made, or caused to be made, each Transfer listed on Exhibit 1 for, or on account of, an antecedent debt owed to Defendants as of the date on which each Transfer was made.  The documents evidencing the antecedent debt include the purchase orders and/or invoices/bills of lading identified on Exhibit 1, which purchase orders and/or invoices/bills of lading include evidence of the amount of the antecedent debt and the approximate dates the subject goods contemplated by the Agreements were ordered by Plaintiff pursuant to the Agreements and/or were provided by Defendants.

Pursuant to Section 547(b)(2) of the Bankruptcy Code, an avoidance action requires a transfer "for or on account of an antecedent debt owed by the debtor before such transfer was made."  11 U.S.C. § 547(b)(2).  The Bankruptcy Code does not define the term "antecedent debt."  The Bankruptcy Appellate Panel for the Second Circuit has opined, however, that:

> The case law is clear that for purposes of Section 547(b)(2) "an antecedent debt" is a pre-existing debt that was incurred when the debtor previously obtained a property interest in the consideration provided by the creditor that gave rise to the debt. The consideration may have been a loan or ***the furnishing of goods or services***, but when the debtor ***obtained the loan, goods or services***, the creditor had a claim, matured or unmatured, that it could then assert against the debtor's bankruptcy estate if payment was not made at the time a petition was filed. At that point the debt was "antecedent" for purposes of Section 547(b)(2).

*In re Bennett Funding* Group, 220 B.R. 739, 742 (Bankr. 2d Cir. 1998) (emphasis added).  An antecedent debt generally arises when the debtor "obtain[s]" the goods or services for which it contracted. *Id*.

16

Factual allegations regarding an "antecedent debt" necessary to satisfy an avoidance action therefore must address three distinct elements: (i) a debt (evidenced by a contract and performance under that contract giving rise to an obligation to pay), (ii) which was owed by the debtor, and (iii) which was antecedent to the transfer.  DAS fails to plead any of these elements in anything more than a conclusory manner, which this Court, in dismissing Debtors's original complaint, has already recognized is impermissible.  *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

A.      *DAS Fails To Identify A "Debt Owed By The Debtor"*

DAS fails to make any allegation whatsoever that any of its purported transfers were made based on a "debt owed *by the debtor*" – by DAS, not Debtors – as required to satisfy Section 547(b)(2) of the Bankruptcy Code.  DAS instead merely alleges that the debt was "owed *to Defendant*," presumably because DAS does not know which of the Debtors actually owed the debt.  Amended Complaint ¶ 22 (emphasis supplied).  Under the plain language of Section 547(b)(2) of the Bankruptcy Code, DAS cannot maintain an avoidance action based on such third-party debts.

B.      *DAS Fails To Plead An "Antecedent" Debt*

DAS also fails to plead facts establishing that the alleged debts in question were actually "antecedent."  Exhibit 1 to the Amended Complaint does not state when any alleged debt arose.  There is no basis, other than DAS's conclusory assertions, for DAS to claim the existence of any "antecedent" debt as required to state a claim under Section 547(b)(2) of the Bankruptcy Code.

IV.    THE AMENDED COMPLAINT SUBSTANTIALLY PREJUDICES DEFENDANT

    A.    *Prejudice Is Presumed As A Matter Of Law*

In recognition of the natural prejudice resulting from a party's delay in prosecuting an action, including by delaying service of the complaint, the Second Circuit recognizes that "prejudice to defendants resulting from unreasonable delay may be presumed . . . [and] is particularly appropriate where, as here, the plaintiff's delay was prolonged." *Shannon v. GE*, 186 F.3d 186 (2d Cir. 1999) (internal citations and quotations omitted).

Indeed, courts regularly recognize that "[f]ailure to use reasonable diligence in serving a summons is more fraught with possibilities of unfairness and abuse than failure to diligently prosecute an action after summons is served." *Richardson v. United White Shipping Co.*, 38 F.R.D. 494, 496 (N.D. Cal. 1965) (dismissal where service perfected 28 months after the filing of the action). This is because such delay "affects all the defendant's preparations." *Anderson*, *Anderson v. Air West, Inc.*, 542 F.2d 522, 525 (9th Cir. 1976) (dismissal under Rule 41(b) based on failure to serve for a year despite entry of order extending service period); *Farhang v. Indian Inst. of Tech.*, 2010 U.S. Dist. LEXIS 53975, at *14-15 (N.D. Cal. June 1, 2010) (delayed service prejudiced defendant "by depriving him of the opportunity to engage in earlier preparation and participation in the suit."). Indeed, "[d]elay alone can infuse an adverse element into the proper flow of litigation: evidence deteriorates or disappears, memories fade, and witnesses die or move away." *Veazey v. Young's Yacht Sale & Service, Inc.*, 644 F.2d 475, 478 (5th Cir. 1981) (dismissal under Rule 41(b) for failure to serve for nearly 21 months).[5]

---

[5] Unfortunately, based on Debtors' decision to delay prosecution of this action for five years, this action presents the unusual circumstance where amendment is sought at the beginning of the action, but years after the action was filed. To fully understand and analyze Defendant's prejudice, resulting here from Debtors' failure timely to effectuate service compounded by Debtors' attempt to amend, this Court should instead look to the more closely analogous context of dismissals for failure to prosecute under Fed. R. Civ. P. 41(b) – more specifically, where courts have

In addition, where, as here, a plaintiff files its complaint immediately prior to the running of the statute of limitations and then fails to serve, prejudice to defendants is magnified:

> Once the statute [of limitations] has run, a potential defendant who has not been served is entitled to expect that he will no longer have to defend against the claim. If service can be delayed indefinitely once the complaint is filed within the statutory period, these expectations are defeated and the statute of limitations no longer protects defendants from stale claims.

*Anderson*, 542 F.2d at 525; *see also Zapata v. New York,* 502 F.3d 192, 198 (2d Cir. 2007) ("It is obvious that any defendant would be harmed by a generous extension of the service period beyond the limitations period for the action, especially if the defendant had no actual notice of the existence of the complaint until the service period had expired. . ."); *Redding v. Essex Crane Rental Corp. of Alabama*, 752 F.2d 1077, 1078 (5th Cir. 1985) (holding that it was an "obvious misuse of the judicial process" to prevent defendant from learning of action by failing to serve).

    B.    *Defendant Would Suffer Actual Prejudice From Amendment*

Leaving aside the Second Circuit's presumption of prejudice, Defendant has presented evidence of actual prejudice. This harm and prejudice includes without limitation the following:

    a.    As part of the sale to Akebono, Defendant transferred to Akebono all or substantially all of Defendant's books and records relating to its business operations, including the paper and electronic records that would support Defendant's defenses to the preference claim. These records include payment, shipment and invoice information. Now Defendant cannot rely on its own records and documents anymore (because it has none), but must rely on Debtors' records (and hope they are accurate) to prove up its defenses.

---

considered the prejudice caused by failure to timely serve defendants. Indeed, had this court not already dismissed Debtors' Complaint, Rule 41(b) would have provided yet another basis for dismissal.

b.  The primary persons at Defendant's operations that were involved with the Debtors' account and that would be familiar with the factual background that would be relevant to this action are no longer employed by Defendant. Those persons may be employed at Akebono or elsewhere. Some may be totally unavailable. Since Defendant no longer employs such persons, Defendant has lost the ability to make sure that such persons will be available to testify at trial. Defendant cannot compel the witnesses, who are probably in South Carolina where Defendant's former office was, to attend trial in New York. Defendant also cannot direct or compel its former employees, who are now third parties, to work on the defense of the $3.6 million claim. It cannot make them spend time on researching and analyzing the facts.

c.  If Defendant had known about Debtors' complaint when it was filed in September 2007, or even if it had known about the complaint in the two years between the time the complaint was filed and when Defendant sold its assets, Defendant would likely have taken steps to organize and preserve its books and records with respect to matters involving Debtors. Moreover, Defendant likely would have interviewed employees who were knowledgeable about the Debtors' business relationship before such employees left the employment of Defendant. Defendant also would likely have made arrangements to keep in contact with those former employees in the event that Defendant would need them to provide information or serve as witnesses.

*Id.* at ¶ 10.

As summarized above, Defendant has already been actually prejudiced in its ability to defend this adversary proceeding by the delay in receiving knowledge and service of the complaint against it. A defendant is inherently worse off when it can no longer manage and coordinate work with its witnesses in connection with the preparation of its defenses, like it could with its own employees; it cannot direct or compel its former employees to work on the defense of the $3.6 million claim; it cannot make former employees spend time on researching and analyzing the facts. Defendant also cannot rely on its own records and documents anymore (because it has none). Moreover, Defendant has no means to compel key witnesses, who are probably in South Carolina where Defendant's former office was, to attend trial in New York unless they happen to be within the Court's jurisdiction. These are just of few of the obvious examples of how Defendant has been put at an unfair advantage by Debtors' delay in serving the complaint.

C.    *Delphi's Undue Delay Should Bar Amendment*

This Court did not order Debtors to delay service on Defendant or suggest that Debtors should do so. Rather, this Court merely extended the deadline by which Debtors had to complete service. Debtors made the election to keep its avoidance action from the Defendant in order to negotiate more favorable contract terms than it otherwise would have been able to had the defendants known about the avoidance actions. Having made this election, Debtors clearly undertook a risk that, when the defendants were finally served, the avoidance actions would be dismissed for any number of reasons, including the statute of limitations. This risk certainly was not unknown. Indeed, this Court specifically reminded Debtors that the extensions granted by the Court were without prejudice to the rights of the defendants in the avoidance actions to argue defenses other than statute of limitations. 10/22/09 Tr., at p. 6, excepts attached as Exhibit L.

Debtors' actions here are similar to plaintiff's failure to serve process in *Anderson v. Air West,* 542 F.2d 522 (9th Cir. 1976), which is instructive.  In *Anderson*, the plaintiff filed suit the day before the statute of limitations was due to run.  *Id.* at 524.  The plaintiff then obtained an *ex parte* order extending indefinitely the time for serving defendants until he could obtain their addresses through discovery.  *Id.*  Rather than proceed with this discovery and diligently pursue service, however, the plaintiff delayed.  *Id.*

When the plaintiff in *Anderson* ultimately did effectuate service – one year later – the trial court dismissed the action under Fed. R. Civ. P. 41(b), holding that the plaintiff, like Delphi here, "deliberately delayed, trying to decide whether he really wanted to serve the [Defendants]."  *Id.* at 525.  The Ninth Circuit then affirmed, stating that:

> The importance of personal service in triggering defense preparation is demonstrated by this case, where the defendants did not get together to plan their defense until after they had all been served.  Plaintiff's assertion that they could, and should, have been planning earlier is an attempt to switch the burden of going forward with the action to the defendants.  The plaintiff cannot in this manner escape her responsibility to diligently prosecute the action.

*Id*. at 525.

Here, as in *Anderson*, Debtors chose to keep this action a secret for well over two years *after* the statute of limitations expired, adopting a course of action that guaranteed the evils that the statutes of limitations were designed to prevent would actually occur – evidence has been lost, memories have faded and witnesses have disappeared.  Debtors should not be allowed to take further advantage of the prejudice resulting from its undue delay by amending now.

V.    NO FURTHER AMENDMENT SHOULD BE PERMITTED

This Court made clear on the record during the hearing on the "First Wave Motions" that it would not tolerate Debtors' presenting a proposed amended complaint that failed to meet its minimal pleading requirements.  Specifically, this Court stated:

> [I]t's a motion for leave to amend the complaint on unusual circumstances. *It's really their risk if I turn them down again, right*?  [I] think that the risk of being turned down on the basis [that] the complaint still isn't good enough [after amendment] is a serious enough – *the consequences of that are serious enough* so I assume that the plaintiffs are going to be pretty careful.

7/22/10 Tr., at p. 213, excepts attached as Exhibit J (emphasis added).

Despite this Court's admonition and despite having an unprecedented amount of time to acquire the data necessary to make out its *prima facie* case, the Amended Complaint still fails even to meet the minimum pleading requirements identified in the Dismissal Order.  Debtors have abused this process for too long and cost the Defendant and this Court far too much in both time and resources.  No further amendment is warranted, and Debtors' avoidance action against Defendant should now be dismissed with prejudice.

VI.    INCORPORATION OF OTHER DEFENDANTS' BRIEFS

Defendant incorporates all of the other meritorious arguments raised by the other preference defendants in opposition to Debtors' motions for leave to amend with regard to them.

**CONCLUSION**

For all of the reasons set forth above, Debtors' Motion should be DENIED.

WARNER NORCROSS & JUDD LLP
Attorneys for Defendant

Dated: November 24, 2010          By____/s/ Michael B. O'Neal_____
                                   Gordon J. Toering (GT-3738)
                                   (Admitted *Pro Hac Vice*)

Michael B. O'Neal (MO-9511)
(Admitted *Pro Hac Vice*)
Warner Norcross & Judd LLP
900 Fifth Third Center
111 Lyon Street, NW
Grand Rapids, MI  49503-2487
Ph:  (616) 752-2000
Fax:  (616) 222-2500
gtoering@wnj.com
moneal@wnj.com
Attorneys for Bosch Chassis Systems Columbia
L.L.C. f/k/a PBR Columbia L.L.C.

4941725