CLARK HILL PLC            **Hearing Date:  02/17/11 at 10:00 a.m. (ET)**
151 S. Old Woodward Avenue, Suite 200     **Reply Deadline:  1/28/11**
Birmingham, Michigan 48009
Robert D. Gordon
*pro hac vice admission*
Christopher M. Cahill
*pro hac vice admission*
ccahill@clarkhill.com
(248) 988-5878

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| DELPHI CORPORATION, *et al.*, | ) | Case No. 05-44481 |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| _____/ | ) | Honorable Robert D. Drain |

**OBJECTION OF DEFENDANT TO MOTION BY
REORGANIZED DEBTORS FOR LEAVE TO FILE AMENDED COMPLAINT**

ATS Automation Tooling Systems Inc. (the "**Defendant**"), defendant in the above-captioned dismissed adversary proceeding (the "**Adversary Proceeding**"), objects (the "**Objection**") to the *Reorganized Debtors' Motion for Leave to File Amended Complaints*, Docket No. 20575 (the "**Motion for Leave**") filed by the debtors and debtors-in-possession (the "**Debtors,**" "**Plaintiffs**" or "**Delphi**")[1] in the above-captioned chapter 11 cases (the "**Cases**") and states as follows:

**PRELIMINARY STATEMENT**

The Debtors should not be granted leave to amend the complaint (the "**Complaint**") originally filed in the Adversary Proceeding because amendment of the Complaint is futile and

---

[1] Through the effectuation of the Modified Plan (as defined below), the Debtors became "reorganized" Debtors. Notwithstanding any changes in identity or status, for the purposes of this Motion the Plaintiffs, the reorganized Debtors, and the Debtors shall be referred to as the "Debtors" or the "Plaintiffs" or "Delphi."

should be dismissed for reasons argued in the Motion to Dismiss[2] and because the proposed amended complaint fails to plead sufficiently their preference cause of action against Defendant.

The Motion to Dismiss and the Reply[3], together with the meritorious arguments in other First Wave Motions (as defined below), are incorporated herein. In addition, leave to amend should be denied because any amended complaint should be dismissed for laches, gross violation of due process, and a lack of notice, all of which prejudiced Defendant.

The Defendant also incorporates its argument for dismissal made in the Defendant's *Motion and Brief of Defendant for Relief from Fourth Order Extending Time to Serve Complaint*, Docket No. 31 (the "**Rule 60(b)(1) Motion**"), filed on October 22, 2010, which is additive to the Motion to Dismiss and this Objection, and which is set for hearing on the same date as the Motion for Leave (as defined below).[4]

The Motion for Leave should also be denied because Debtor Delphi Automotive Systems, LLC ("**DAS**"), which is the entity the Debtors now offer as Plaintiff in the proposed amended complaint ("**Proposed Amended Complaint**"), did not properly plead and cannot prove that it was insolvent at the time the allegedly preferential transfers were made. DAS's insolvency is an essential element of the cause of action alleged in the Proposed Amended Complaint. Because DAS is unable to prove its insolvency, amendment of the Complaint would be futile.

---

[2]  *See Motion and Brief of Defendant to: (A) Vacate Certain Orders of the Court; and (B) Dismiss the Complaint With Prejudice; or (C) in the Alternative, to Dismiss the Claims Against Certain Defendants Named in the Complaint*, Docket No. 23 (the "**Motion to Dismiss**").

[3]  *See Reply and Joiner in Further Support of Motion and Brief of Defendant to: (A) Vacate Certain Orders of this Court; and (B) Dismiss the Complaint with Prejudice; or (C) in the Alternative, to Dismiss the Claims Against Certain Defendants Named in the Complaint*, Docket No. 25 (the "**Reply**").

[4]  In summary, in the Rule 60(b)(1) Motion, Defendant argued that because of surprise, inadvertence or excusable neglect, the Defendant did not contest or appeal entry of the Fourth Extension Order (as defined below), and that such entry was error because the Civil Rule 4(m) rationale supporting such extension of service had, under precedent of this Court, impermissibly "morphed" in rationale from that on which prior extensions were based. Because the Fourth Extension Order and the service of the Complaint were thus invalid, and because no cure thereof is proposed in the Motion for Leave (or is even possible), amendment of the Complaint is futile. That Defendant received no notice of any kind of the Fourth Extension Motion strengthens Defendant's claim for relief under Civil Rule 60(b)(1).

The Motion for Leave should also be denied because the Proposed Amended Complaint fails to meet the minimum pleading standard set by the Dismissal Order (as defined below). The Proposed Amended Complaint fails to allege adequately the antecedent debt on account of which each alleged preferential transfer was made. Because this is essential to the Proposed Amended Complaint, and because the Debtors are unable to properly plead such allegation, the Motion for Leave should be denied for futility.

Even if the Motion for Leave is granted in other respects, it should be denied with respect to one alleged transfer set forth in the Proposed Amended Complaint, in the aggregate amount of $15,311,148.76, for which the Debtors fail to allege *any* specific antecedent debt.

The Debtors should no longer benefit from Defendant's assistance in identifying gaps and shortcomings in their pleadings. If the Motion for Leave is granted, the Debtors – having had five years to gather pleading data, plus a second bite at the apple of filing sufficient complaints -- should not be permitted to *further* amend their Proposed Amended Complaint. Such amendments shift the pleading burden to Defendant, contrary to the policy of the *Twombley* and *Iqbal* cases and the statements of the Court at the July 22, 2010 Hearing (as defined below). No further amendments should be permitted to square up allegations of antecedent debt, or to identify transferees, initial transferees, mediate transferees, or entities for whose benefits any alleged transfer was made. The Debtors should be bound to the allegations they have actually made at this point.

## BACKGROUND

The Cases, the Adversary Proceeding, and the Service Extension Orders

1.      On October 8 and 14, 2005 (the "**Petition Date**"), the Debtors filed their voluntary petitions for relief pursuant to chapter 11 of the Bankruptcy Code. The Debtors filed their first

amended joint plan of reorganization (Docket No. 11386) (the "**First Plan**") and related disclosure statement (Docket No. 11388, the "**Initial Disclosure Statement**") on December 10, 2007. The First Plan was confirmed on January 25, 2008.

2. Section 546(a)(1) of the Bankruptcy Code provides, in relevant part, that a proceeding under Bankruptcy Code sections 544, 545, 547, 548 or 553 "may not be commenced after . . . 2 years after the entry of the order for relief[.]" 11 U.S.C. § 546(a). The limitations period for the Complaint expired on October 7 and 13, 2007. In recognition of the imminent expiration of the limitations period and in anticipation of confirmation of the First Plan, the Debtors filed their First Extension Motion August 6, 2007.[5] On August 17, 2007, the Court entered the First Extension Order, which, among other things, (a) permitted the filing of adversary complaints (including the Complaint) under seal, (b) directed the clerk of court to delay issuing summonses unless and until Debtors notified the clerk of their intent to prosecute such actions, (c) stayed each such adversary proceeding unless and until Debtors served process on such defendants, and (d) extended the date by which Debtors would have to serve process — which is otherwise set at 120 days by Civil Rule 4(m) as incorporated by Bankruptcy Rule 7004 -- to March 31, 2008.

3. On September 28, 2007, the Debtors filed the Complaint under seal. A copy of the Complaint is attached hereto as Exhibit A. As discussed below, since the Complaint was filed under seal, no amount of due diligence could have uncovered the existence of the Complaint until it was unsealed in March, 2010.

4. The First Plan, confirmed on January 25, 2008, contained Exhibit 7.24, which

---

[5] Unless otherwise defined herein, all capitalized terms will have the meanings ascribed to them in the Motion to Dismiss.

identified the actions the Debtors sought to retain under the Plan.  Exhibit 7.24 did not refer to

Defendant or the Complaint.  The First Plan was confirmed upon the premise that all unsecured

creditors would be paid in full.

5.      After confirmation of the First Plan, the Debtors filed the Second Extension

Motion on February 28, 2008.  On March 28, 2008, the Court entered the Second Extension

Order, which extended the deadline by which the Debtors were to serve the summonses and

complaints in the sealed adversary proceedings to May 31, 2008.

6.      The First Extension Motion and the Second Extension Motion were premised

upon: (a) the expectation that the First Plan would enable the Debtors to resolve all sealed

adversary proceedings upon Debtors' emergence from the Cases, so that the adversary

proceedings would never be pursued, and (b) the estimation that it would save the parties cost and

time if the adversary proceedings were sealed and stayed until such expectation was fulfilled.  *See*,

*e.g.*, Second Extension Motion, at paragraph 16.  Of course, failing to give notice to defendants

that they had been sued and sealing the avoidance complaints provided Plaintiffs with obvious

tactical advantages in negotiations with suppliers like Defendant.  *See* First Extension Motion,

paragraphs 33-34 and 37.

7.      Prior to the Debtors seeking further extensions of the deadline by which to serve

the sealed adversary proceedings, the investors in the First Plan failed to participate in a closing or

fulfill their obligations under the First Plan.  *See* Fourth Extension Motion, at paragraph 15.

8.      On April 10, 2008, the Debtors filed their Third Extension Motion, which sought to

extend the relief granted in the First and Second Extension Orders for an indefinite period.  On

April 30, 2008, the Court entered Third Extension Order, which extended the deadline by which

6817293.1 25743/103154

the Debtors were required to serve the summonses and complaints in the sealed adversary proceedings to 30 days after substantial consummation of the First Plan or any modified plan.

9.    The funding for the First Plan having evaporated, nevertheless the Debtors again offered the same justification for this third request: to avoid "unnecessarily disrupt[ing] the emergence process or the Debtors' ongoing business relationships with potential defendants that are necessary to the Debtors' ongoing operations."  *See* Third Extension Motion, paragraph 22. The Debtors also asserted that they and the parties should not be required to spend resources on the adversary proceedings when "most of the Adversary Proceedings will not be prosecuted if the Plan were to become effective and likely not be prosecuted under any modified plan."  *Id.*

10.    On June 1, 2009, the Debtors filed a motion to supplement the First Plan, and such supplemented and otherwise further modified plan (Docket No. 18707) (the "**Modified Plan**") was approved by the Court on June 30, 2009.   The Modified Plan provided for certain transactions, including a sale of substantially all of the Debtors' assets, that would result, as the Debtors described it at paragraph 12 of their Fourth Extension Motion, in "a potential distribution to holders of general unsecured claims."  The Modified Plan was substantially consummated in early October, 2009.

11.    On October 2, 2009, the Debtors filed their Fourth Extension Motion, which was granted on October 22, 2009, and which extended even further the deadline to serve the summons and sealed adversary complaints to 180 days after substantial consummation of the Modified Plan.

12.    Defendant did not receive actual notice of any of the Service Extension Motions. No documents issued by the Debtors or the Court alerted Defendant that any Service Extension Motion pertained to Defendant as a potential defendant in a preference adversary proceeding.  In fact all of the Delphi preference defendants were deliberately kept in the dark by what were

6817293.1 25743/103154

essentially *ex parte* proceedings.  Therefore, it is not surprising that neither Defendant *nor any other preference defendant* objected to the *any* of the Service Extension Motions.

13.     The Motion to Dismiss and the declaration attached thereto detailed how, over the years that Plaintiffs intentionally concealed the Complaint, Defendant took no steps to organize or preserve its records with respect to the Plaintiffs, to hold exit interviews with employees who were knowledgeable about the Delphi business relationships, or to make arrangements to remain in contact with those former employees needed to provide litigation information or to serve as witnesses.  Had Defendant known about the Adversary Proceeding when it was filed, Defendant undoubtedly would have taken such steps.

14.     After providing no notice to Defendant that a sealed complaint had been filed against it, and after providing no notice of any of the Service Extension Motions, Plaintiffs finally served the Complaint in March, 2010 – some two and a half years after the applicable limitations period had expired and four and a half years after the alleged preferential transfers were made.

15.     On May 15, 2010, the Defendant filed the Motion to Dismiss.  Many other Defendants filed similar motions on or before that date.  All such motions and the Motion to Dismiss were referred to in subsequent Court documents as "First Wave Motions."

16.     Hearing in this Court on the First Wave Motions was conducted on July 22, 2010 (the "**July 22 Hearing**").  Attached as <u>Exhibit B</u> are selected pages from the transcript of such hearing.

17.     On September 7, 2010, the Court signed the *Order Granting In Part First Wave Motions to Dismiss*, Docket No. 30 (the "**Dismissal Order**").  A copy of the Dismissal Order is attached hereto as <u>Exhibit C</u>.  On September 7, 2010, the Debtors filed the Motion for Leave, which attached to it a proposed amended complaint (the "**Proposed Amended Complaint**").  A

-7-

copy of the Motion for Leave with the Proposed Amended Complaint (omitting other documents

filed with them that are not presently relevant) is attached hereto as Exhibit D.

## ARGUMENT

I.    **The Court Has Discretion to Deny the Motion Where Proposed Amendment Would be Futile**

18.    This Court has discretion whether or not to grant leave to amend a complaint.

*Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *Evans v. Syracuse City School District*, 704 F.2d 44, 47 (2d Cir. 1983).  It is not an abuse of discretion to refuse to grant leave to

amend where amendment would be futile.  *Foman v. Davis*, 371 U.S. 178, 182 (1962) (denial not

abuse of discretion where amendment would be futile); *Leadsinger, Inc. v. BMG Music Pub.*, 512

F.3d 522, 532 (9th Cir. 2008) (amendment an exercise in futility where no amendment could save

complaint); *Acito v. Imcera Group, Inc.*, 47 F.3d 47, 55 (2d Cir. 1995) (supplementary allegations

did not cure original complaint);   *Ruffolo*, 987 F.2d at 131 (plaintiff had full opportunity for

discovery and proposed new pleading did not allege necessary facts to show fraud or complicity);

*Health-Chem Corp. v. Baker*, 915 F2d 805, 810 (2d Cir. 1990) (same).

19.    A good example of futility is where the proposed amended pleading may be

defeated by a motion for summary judgment or a motion to dismiss.  *Halpert v. Wertheim & Co.*,

81 F.R.D. 734, 735 (S.D.N.Y. 1979); *Collyard v. Washington Capitals*, 477 F. Supp. 1247, 1249

(D. Minn. 1979) (proposed amended complaint failed to state claim for which relief could be

granted).  In addition to the grounds for dismissal identified in the Motion to Dismiss, Reply, and

other pleadings joined with by Defendant, the grounds for dismissal in section II-V of this

Objection also provide grounds for denying the Motion for Leave on the ground of futility.[6] .

## II.    Amendment of the Complaint Would be Futile Because of Laches.

20.    Laches is a defense established by a defendant showing that (i) it lacked knowledge

that the claim might be asserted against it, (ii) the plaintiff delayed asserting the claim despite an

opportunity to do so, and (iii) it would be prejudiced if the claim were now allowed to go forward.

*In re Gucci*, 197 Fed. Appx. 58, 60 (2d Cir. 2006).

21.    The Motion to Dismiss and the Declaration attached thereto detailed how, over the

years that the Plaintiffs intentionally concealed the Complaint, and during which time Defendant

received no notice of the Complaint, Defendant took no steps to organize and preserve its records

with respect to the Plaintiffs, to hold exit interviews with employees who were knowledgeable

about the Delphi business relationships, or to arrange to remain in contact with those employees

Defendant might need to provide litigation information or to serve as witnesses.  Such Declaration

also stated that had Defendant known about the Adversary Proceeding when it was filed,

Defendant would have taken such steps.

22.    Another form of prejudice is raised by the healthy market for purchasing claims

against Delphi that persisted throughout 2007.  Upon information and belief, in 2006 and 2007,

parties sold unsecured claims in amounts approaching full face value.  If the Court desires, the

Defendant is prepared to file evidence in this regard with respect to its sale of claim under seal.

Had Defendant been served with the Adversary Proceeding prior to the end of the limitations

---

[6] In order to avoid needless repetition of arguments common to the defendants in these similarly situated adversary proceedings, the Defendant incorporates the argument that the Motion for Leave should be denied because amendment of the Complaint would compound the unfairness and delay that have prejudiced Defendant to this point, as such argument is presented in the *Affinia Group Holdings Inc.'s and Brake Parts Inc.'s Brief in Opposition to Reorganized Debtors' Motion for Leave to File Amended Complaints*, Docket No. 20841 (the "**Affinia Brief**") at 27-31.

period, Defendant could have elected to pay all or part of the demanded amount in satisfaction of

the avoidance action, and then sold the resultant claim under section 502(h) of the Bankruptcy

Code at or near full face value. Debtors' secrecy and delay foreclosed that avenue of relief and

value for Defendant.

23.      The prejudice to Defendant is severe, and justifies dismissal of the Complaint with

prejudice. Amendment of the Complaint being futile, the Motion for Leave should be denied.

**III.    Amendment of the Complaint Would be Futile Because the Service Extension Orders Must Be Set Aside Because the Defendant was Deprived of Constitutional Rights to Due Process.**

24.      At the July 22, 2010 Hearing, the Court raised the recent United States Supreme

Court decision in *United Student Aid Funds v. Espinosa*, ____ U.S. _____, 130 S.Ct. 167, 176

L.Ed. 2d 158 (2010) as guidance on the question of whether the notice received by defendants of

the Service Extension Motions and of the existence of potential adversary proceedings sufficed

constitutionally as due process. Exhibit B at 113-130.

25.      *Espinosa* must have its attractions to the Debtors for, in that case, the Court found

that a chapter 13 plan provided actual notice to a creditor and, therefore, rejected the creditor's

assertion that it had been deprived of due process. Similarly, Debtors would have the statements

in the Initial Disclosure Statement as regards possible pursuit of unspecified adversary

proceedings construed as adequate notice to Defendant that it was being sued.

26.      In *Espinosa,* the student loan creditor was entitled to heightened notice (in the form

of an adversary proceeding) under the Bankruptcy Rules for the hardship determination that was

contained in the chapter 13 plan. *Espinosa*, 130 S.Ct. at 1373. Because the creditor received

"actual notice" of the hardship determination in the chapter 13 plan and received notice of the plan

-10-

(and failed to object to same), the Court concluded that enforcement of the hardship determination does not constitute violation of due process. *Id.* at 1378.

27.    However, *Espinosa* does not support the Debtors in this case because the notice given in the chapter 13 plan in *Espinosa* was of a strength and particularity much greater that than any notice provided to Defendant through ECF or the Initial Disclosure Statement.  In *Espinosa*, the creditor received notice of, but did not object to, a chapter 13 plan in which debt owed to the student loan creditor *was the sole debt administered*. *Id*. 1373.  In addition, the plan provided a mechanism for the creditor to file a proof of claim on the same debt, which the creditor did file. *Id.* at 1374. The creditor had participated in the case pursuant to a plan which dealt with its debt alone, and which provided for a hardship determination of such debt. *Id.*

28.    In holding that the creditor had received *actual* notice of the hardship determination, the Court expressly upheld the principle that that due process is the right to notice and a meaningful opportunity to be heard. *Id.* at 1378 (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314; 70 S. Ct. 652; 94 L. Ed. 865 (1950) (due process requires notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections")).  The *Espinosa* Court did *not* water down the requirements of due process.

29.    Despite Debtors' protestations that ECF notice and the receipt of the Initial Disclosure Statement somehow sufficed to notify Defendant that it faced preference liability, mere general awareness of a bankruptcy case does not constitute notice of everything that occurs within it.  As the Second Circuit recently held in *In re Johns-Manville Corp.*, 600 F.3d 135, 153-58 (2d Cir. 2010), that because Chubb (an insurance company that participated in the bankruptcy case) did not receive notice of the proceedings that led to approval of a certain insurance settlement

-11-

agreement, the plan, and certain orders, Chubb was not bound by the orders, because to bind Chubb would violate its due process rights. Similarly, the Supreme Court unanimously held in *City of New York v. New York, N.H. & H. R.R. Co.*, 344 U.S. 293; 73 S. Ct. 299; 97 L. Ed. 333 (1953), that constitutional due process entitles creditors to notice from a bankruptcy court before they will be bound – even where creditors knew of the bankruptcy proceedings but did not monitor them.

30.    It bears repeating that the obscurantist scheme constructed by the Service Extension Orders (for the feigned purpose of relieving actual but secret defendants of "unnecessary" costs), if replicated in other chapter 11 cases, would result in massive unnecessary expenses to each creditor that receives ECF notice of filings in the case (which Defendant's attorney stopped receiving in the Cases in April, 2008 when he withdrew). Each creditor would be required to scrutinize and object to each pleading in such cases on the basis of such pleading's potential effect on the interests of such creditor as a maybe defendant in a someday adversary proceeding. Such exactly is the level of scrutiny, with the related inequitable and largely pointless legal efforts and expenses, that would have been required to protect the rights of Defendant and of other secret defendants facing the tens of thousand pleadings hurtling through the ECF maw in the Cases. *See In re Ruehle*, 412 F.3d 679, 682-83 (6th Cir. 2004) (large creditors received "tidal waves of mail . . . the quantity of notice that is issued by the bankruptcy system is so overwhelming that it is necessary to have clear rules in order for creditors to know what notices to notice as opposed to the notices that are deafening legal background noise")

31.    It also bears repeating that there were *no responses or objections filed to any* of the Service Extension Motions, even though each such motion proposed to affect the substantial rights of hundreds of defendants in adversary proceedings to avoid and recover several hundred million

dollars, and even though the Second, Third, and Fourth Extension Motions all occurred after the supposed "notice" given to defendants by the Initial Disclosure Statement that some unspecified avoidance actions had been preserved and filed under seal..

32.    The fact that neither Defendant nor *any* of the other hundreds of defendants in the sealed adversary proceedings objected to *any* of the Service Extension Orders – even in view of the extreme and unexampled length of the extensions sought and granted – fatally undermines any suggestion that the routinely blast-emailed  ECF filings in the Cases, plus the unparticularized and indirect notification in the Initial Disclosure Statement provided constitutionally adequate notice.

33.    The Initial Disclosure Statement provided for a plan that proposed to pay unsecured creditors 100% of their allowed claims, did not disclose that Defendant had been sued, and expressly stated that Debtors did not intend to pursue the preference actions that had been filed under seal, and indicated that the service extensions already secured by Debtors would expire in February 2008.

34.    The Initial Disclosure Statement plainly failed to give Defendant actual notice or any other kind of notice that its rights were in jeopardy.  The Initial Disclosure Statement, therefore, did not give the Defendant notice and an opportunity to object to anything or alert it that it could be exposed to any litigation.

35.    As noted above, the Defendant did not receive actual notice of the Service Extension Orders and was, therefore, deprived of a full and fair opportunity to challenge the requested relief.[7]

---

[7]  Te Defendant incorporates the argument against the applicability of "inquiry notice" to the due process issue presented in the Affinia Brief at 21-24.

36.     Because any service of the Complaint should be vacated as void for failure of due process (as explained further in the Motion to Dismiss), it is futile to permit amendment of the Complaint and the Motion for Leave should be denied.

**IV.    The Motion for Leave Should be Denied Because Amendment of the Complaint Would be Futile Because DAS Did Not Properly Plead and Cannot Prove That It Was Insolvent at the Time of the Alleged Transfers**

37.     In the Proposed Amended Complaint, DAS fails to properly plead and cannot prove an essential element of its avoidance claim: that DAS – the only plaintiff named in the Proposed Amended Complaint – made transfers to the Defendants at a time when DAS was insolvent. *See* 11 U.S.C. § 547(b) (authorizing a trustee to avoid a transfer only if it was, among other things, "made while the debtor was insolvent").

38.     DAS's only allegation of insolvency is a bare bones, conclusory recitation of the avoidance statute, namely that: "[p]ursuant to Bankruptcy Code section 547(f), for purposes of this Adversary Proceeding, Plaintiff is presumed to have been, and was in fact, insolvent at the time the Transfers were made." Exhibit E at ¶ 23. This is exactly the "[t]hreadbare recital[] of the elements of a cause of action supported by mere conclusory statements," that the Supreme Court stated "does not suffice." *Ashcroft v. Iqbal*, ____ U.S. ____ 129 S.Ct. 1937, 1949 (2009)

39.     DAS's failure to properly plead facts that show DAS's insolvency is no surprise. This is because prior to its bankruptcy filing DAS was solvent.[8]  In fact, DAS's own bankruptcy schedules show that at the time of its bankruptcy filing DAS was solvent and had more than $2.6 billion in net equity..  These DAS admissions conclusively rebut any presumption of DAS's insolvency during the preference period. *See e.g., In re Roblin Industries, Inc.*, 78 F.3d 30, 34-35

---

[8] The Defendant incorporates the more thorough factual and legal discussion of this issue presented in the Affinia Brief at 13-14 and 25-27.

(2d Cir. 1996) (schedules showing solvency rebutted presumption so that trustee bore burden of coming forward to prove insolvency); *Akers v. Koubourlis*, 869 F.2d 1319, 1322 (9th Cir. 1989) (debtors' schedules indicating greater assets than debts rebutted presumption); *IMF Sales Associates, Inc. v. Racal-Vadic Information Systems, Inc.*, 94 B.R. 223, 225 n.3 (Bankr. D. Mass 1988) ("Racal has rebutted the [section 547(f) presumption] by offering the schedules which show the debtor was solvent."); *Fokkena v. Winston, Reuber, Byrne, P.C.*, 189 B.R. 744, 747 (Bankr. N.D. Iowa 1995) ("Debtor's schedules filed in his chapter 11 case are sufficient to support a finding of solvency at the time of the transfers. The presumption was rebutted.").

40.    Moreover, during the first two years of its bankruptcy, the Debtors represented that they would file and ultimately did file and confirmed a plan that was to pay unsecured creditors in full for their allowed claims. If the complaints initiating the adversary proceedings, including the Complaint, had been timely served, they would have been dismissed on solvency grounds.

41.    Based on DAS's failure properly to plead insolvency, and the fact that DAS has stated under oath that it was solvent, with an approximate $2.6 billion net equity, any amendment here is futile as DAS cannot prove a crucial element of its avoidance action.

## V.    Amendment of the Complaint Would be Futile Because the Proposed Amended Complaint Fails to Plead Adequately the Antecedent Debtor for Each Alleged Transfer

42.    The Proposed Amended Complaint does not provide the antecedent debt information required by the Dismissal Order. There is no basis, other than DAS's conclusory statements, for DAS to claim it pled the existence of any antecedent debt as required to state a claim under section 547(b)(2) of the Bankruptcy Code.

43.    In paragraph 4 to the Dismissal Order, the Court ordered as follows:

> By no later than September 7, 2010, the Reorganized Debtors shall file a motion for leave to amend the complaint in each Adversary Proceeding the Reorganized Debtors intend to pursue (each a "Motion to Amend"). *Each Motion to Amend shall attach a proposed amended complaint that, for each alleged transfer shall set forth, at a minimum*, the transferor, the transferee, any known subsequent transferee against whom relief is sought, *the antecedent debt* and which Reorganized Debtor is the plaintiff.

Exhibit C (emphasis added).

44.    Section 547(b)(2) of the Bankruptcy Code sets forth the "antecedent debt" element of a preference avoidance cause of action, and provides that the transfer at issue must have been made "for or on account of an antecedent debt owed by the debtor before such transfer was made." 11 U.S.C. §547(b)(2).

45.    Section 547(b)(2) requires the plaintiff to allege facts that support its contentions that: (1) the transfer was in connection with a debt, *see In re Hydrogen L.L.C.*, 431 B.R. 337, 355 (Bkrtcy. S.D. N.Y. 2010); (2) was owed by the plaintiff/debtor, *see, e.g., Chemical Bank v. Dana*, 234 B.R. 585, 596 (D. Conn. 1999); and (3) was antecedent (incurred before) to the transfer. *See, e.g., In re Dorholt, Inc.*, 224 F.3d 871, 873 (8th Cir. 2000). In the Proposed Amended Complaint, the Debtor has failed to allege facts which support the antecedent debt element.

46.    In the Proposed Amended Complaint, the putative plaintiff DAS does not allege any facts which would indicate the transfers to Defendant were made on an account of a debt. In fact, DAS' only allegations about the existence of a debt are found in paragraph 22 which states:

> Plaintiff made, or caused to be made, each Transfer listed on Exhibit 1 for, or on account of, an antecedent debt owed to Defendant as of the date on which each Transfer was made. The documents evidencing the antecedent debt include *the purchase orders and /or invoices/bills of lading* identified on Exhibit 1, which purchase orders and/or invoices/bills of lading include evidence of the amount of the antecedent debt and the approximate dates the subject

-16-

> services contemplated by the Agreements were requested pursuant
> to the Agreements and/or were provided by Defendants.

Exhibit D at par. 22 (emphasis added).

47.    This allegation evidences that DAS cannot allege an antecedent debt on a better

basis than the multiple choice formula of "purchase orders and/or invoices/bills of lading."  This

lack of specificity violates not only the terms of the Dismissal Order, but also the pleading

requirements of Civil Rule 7008 as set forth in the Supreme Court decisions of *Bell Atlantic Corp.*

*v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbul*, ____ U.S. ____ 129 S.Ct. 1937 (2009)

("While legal conclusions can provide the framework of a complaint, they must be supported by

factual allegations.  When there are well-pleaded factual allegations, a court should assume their

veracity and then determine whether they plausibly give rise to an entitlement to relief.").

48.    Aside from the foregoing deficiencies applying to *all* alleged transfers, for one

alleged transfer in the amount of $15,311,148.76, which is set forth on the exhibit to the Proposed

Amended Complaint as having been made on the "transfer date" of October 7, 2005, *no data*

*regarding antecedent debt is supplied at all*.  Exhibit D.  There is a blank space in the exhibit

where antecedent debt was to be identified.  Thus, DAS *admits* that it *cannot* plead any antecedent

debt with respect to such alleged transfers.  At a minimum, the Motion for Leave should be denied

with respect to that alleged transfers.

49.    Finally, in the Proposed Amended Complaint, DAS has failed to plead any facts

whatsoever related to *when* the alleged debts were incurred by the DAS and whether they arose

prior to the transfers DAS seeks to avoid in the proposed amended complaint.  Even if DAS'

conclusory allegations in paragraph 22 of the Proposed Amended Complaint that relate to the

"purchase orders and/or invoices/bills of lading" constitute sufficient factual allegations of the

-17-

existence of a transaction between DAS and Defendant, other than the bare and unsupported

statement that each Transfer was made "for or on account of, an antecedent debt," there are no

allegations of any kind as to *when* these debts were incurred in relation to the listed transfers.  In

light of DAS' failure to make any factual allegations concerning when the debts were incurred, the

Motion for Leave must be denied.

**VI.     The Motion for Leave to Amend should be Denied In Part Because the Additional
Transfers Cannot Relate Back to Date the Complaint was Filed.**

50.     When a complaint limits itself to seeking avoidance of certain specific transfers,

other transfers cannot be added later and then be deemed, pursuant to Civil Rule 15(c), to relate

back to the date such complaint was filed.  This is the situation in the Adversary Proceeding.  The

Complaint limits itself to seeking avoidance and recovery of certain specific transfers and,

therefore, any new transfers alleged in the Proposed Amended Complaint cannot relate back to the

date the Complaint was filed.

51.     In the Complaint, the Debtors allege that they seek "to direct the return of certain

avoidable transfers (the "Transfers") that were made by Plaintiffs to Defendants as more fully and

particularly identified in Exhibit 1 annexed hereto."  Exhibit A at ¶ 3.  The term "Transfers" is

defined as a delimited set of transactions, as set forth on the attached Exhibit 1.  In paragraphs 10-

16 of the Complaint, the Debtors refer each time to "***the*** Transfers" (emphasis added) as they

plead elements of the avoidance action and pray for relief.  Nowhere in the Complaint do the

Debtors qualify "the Transfers" with reference to other transfers to be added, or to a body of

transfers of which "the Transfers" is only a subset.

52.     This Court previously addressed this issue in *In re 360Networks (USA) Inc.*, 367

B.R. 428 (Bankr. S.D.N.Y. 2007).  In *360*, the plaintiff filed a complaint seeking the avoidance

and recovery of preferential transfers made to the defendant of "at least $17,330,644.54." *360 Networks*, 367 B.R. at 431.  After the limitations period had expired, the plaintiff filed a motion seeking leave to amend its complaint to add additional transfers totaling $12,350,815.69 and for a finding that the proposed amended complaint related back to the filing of the original complaint. *Id.* at 430.

53.     After dismissing plaintiff's argument that the "at least" language in the complaint obviated the need for it to amend the complaint to assert the additional preference claims, the court addressed the key issue of "whether the additional transfers set forth in the amended Complaint would 'relate back' under Rule 15(c)." *Id.* at 433.  The Court noted that if the proposed amendments did not relate back, allowing the plaintiff to amend the complaint would be futile, and, further, that the moving party bears the burden of proof with respect to relation back under Fed. R. Civ. P. 15(c). *Id.*

54.     As stated by the Court, "the primary consideration in determining whether the proposed amendment to the Complaint should relate back is whether the Complaint put the defendant on notice that additional transfers may be pursued at a later date." *Id.*  "The principal inquiry is whether adequate notice of the matters raised in the amended pleading has been given to the opposing party." *Id.*  "If the facts in the original pleading do not provide defendant with notice of the facts out of which the time-barred claim arises then relation back is inappropriate." *Id.* at 433-434.

55.     The court examined the original complaint to determine whether it put the defendant on notice that plaintiff may challenge additional transactions.  *Id.* at 434.  The court noted that the original pleading alleged only that "[o]n or within ninety (90) days before the Petition Date, *360* made preferential transfers to … [defendant] in the aggregate sum of

$17,330,644.54." *Id.*  The exhibit to the complaint listed specific transfers, but did not provide

"any information from which the Defendant [could] glean that the Debtor intended to challenge

additional transfers." *Id.*

56.    The fact that all of the transactions, including those proposed in the amended

complaint, were potentially preferential was of no consequence to the Court's Rule 15(c)(2)

analysis.   Rather, when determining whether relation back is appropriate, the court must examine

> [E]ach potential preferential transfer [a]s a *separate and distinct
> transaction* [because] a preference action based on one transfer
> does not put defendant on notice of claims with respect to any
> other unidentified transfers. *Id.* (emphasis added.)

*Id.*

57.    The court denied *360's* motion to amend, finding that relation back was not

appropriate because the defendant was not put on notice that additional transfers may be pursued

at a later date by the original pleading.  *Id.*; s*ee also MBC Greenhouse, Co. v. CTC Direct, Inc.*,

307 B.R. 787 (Bankr. D. Del. 2004) (noting that the allegations of the original complaint did not

put the defendant on notice that plaintiff intended to avoid *all* transfers made within the 90 days

preceding the petition date, rather the complaint only evinced plaintiff's intent to avoid those

transfers listed on Exhibit A).

58.    The instant Complaint seeks avoidance and recovery of only a narrowly defined set

of alleged transfers.  The Complaint did not put the Defendant on notice that additional transfers

may be pursued later.  Accordingly, if the Motion for Leave is otherwise granted, the holding of

*360* squarely applies to the Present Amended Complaint with respect to the New October 4

Transfers and relation back, pursuant to Civil Rule 15(c) should be denied with respect thereto.

-20-

**VII.    If Motion for Leave to Amend is Granted, the Debtors Should Have No Further Opportunities to Amend the Complaint.**

59.    No amendment of the Complaint is warranted, and the Complaint should be dismissed with prejudice.  The language of the Dismissal Order fairly indicates that no further amendment of Proposed Amended Complaints is permissible.  Such a reading of the Dismissal Order is consistent with the Court's concern with burden-shifting in the unusual circumstances of the Cases and Adversary Proceedings.  Therefore, if the Motion for Leave is otherwise granted, no *further* amendments of any complaint should be permitted.

**A.    The Dismissal Order Requires Timely Filing of A Motion to Amend That Attaches a Conforming Proposed Amended Complaint.**

60.    The Dismissal Order requires timely the filing of the Motion to Amend.  The Dismissal Order requires that the each "Motion to Amend" (the Motion for Leave is a "Motion to Amend" within the meaning of the Dismissal Order) have attached to it a Proposed Amended Complaint that is strictly defined as containing an express minimum of information with respect to each alleged transfer.  The fair implication of the language used by the Court is that the failure to timely file the Motion to Amend will result in dismissal with prejudice of the related adversary proceeding.  Likewise, the fair implication of the language used by the Court is that the Debtors will not be able to amend further any Motions to Amend that attach non-compliant Proposed Amended Complaints.

61.    In paragraph 4 to the Dismissal Order, the Court ordered as follows:

> By no later than September 7, 2010, the Reorganized Debtors shall file a motion for leave to amend the complaint in each Adversary Proceeding the Reorganized Debtors intend to pursue (each a "Motion to Amend").  *Each Motion to Amend shall attach a proposed amended complaint that, for each alleged transfer shall set forth, at a minimum*, the transferor, the transferee, any known

subsequent transferee against whom relief is sought, the antecedent
debt and which Reorganized Debtor is the plaintiff.

Exhibit C (emphasis added).

62.    The date requirement set forth in the first two clauses of this passage implies that

failure to file such motion on or before September 7, 2010 will result in dismissal with prejudice

of every adversary proceeding in which such default occurred.  The Reorganized Debtors "shall

file" such motion by such date, or else.  Such a reading is consistent with the Court's comments at

the July Hearing.  Exhibit B at 277.

63.    As a matter of grammar, the "or else" consequence bars further amendment of a

timely filed Motions to Amend which, for one or more of the transfers it alleges, fail to meet the

express "minimum" of information provision required by the quoted passage from the Dismissal

Order.  The emphasized language indicates that "each" Motion to Amend "shall attach a proposed

amended complaint that" – with the "that" initiating a long restrictive clause.  Thus, "each"

Motion to Amend, in addition to being timely-filed, must attach a proposed amended complaint

with the following characteristics, the Dismissal Order expressing each characteristic with a

definite article or a strictly-limiting adjective:

for *each* transfer, it must set forth *at a minimum*:

--*the* transferor,

--*the* transferee,

--*any* known subsequent transferee against whom relief is sought,

--*the* antecedent debt, and

-22-

*--which* Reorganized Debtor is the plaintiff.[9]

64.    Thus, a Motion to Amend does not comply with the Dismissal Order if it attached a Proposed Amended Complaint that fails to include any of these items, and such Proposed Amended Complaint must include all such items for each alleged transfer.   It follows that such Motions will be denied at least with respect to each transfer alleged that is not supported by recitation of each of these items.   If a Proposed Amended Complaint alleges 10 transfers (numbered 1-10 in this hypothetical) and it fails to identify an antecedent debt for Transfer 1, the Motion to Amend must be denied at least with respect to Transfer 1.   If the Proposed Amended Complaint for Transfer 6 identifies only the subsequent transferee against whom relief is sought, but not the transferee, the Motion to Amend must be denied at least with respect to Transfer 6.

65.    Such denials should be with prejudice for failure to meet the "minimum" expressly set forth in the Dismissal Order.   Just as a tardy Motion to Amend would be denied and the adversary proceeding to which it pertained dismissed with prejudice, so too a non-compliant Motion to Amend should be denied and the adversary proceeding to which it pertains dismissed with prejudice at least with respect to alleged transfers not supported by the minimum requirements set forth in the Dismissal Order.   The language of the Dismissal Order does not permit second chance, or in this case, *third* chances.

**B.    Holding Plaintiff to Meeting Such Minimum Requirements Without Further Amendment Is Consistent With Court Concerns With Burden-Shifting as Well as The "Unusual Circumstances" of the Cases and the Adversary Proceedings**.

66.    Not permitting such second (or third) chances is also consistent with the Court's suggestion to a defendant's counsel at the July 22 Hearing that "it's a motion for leave to amend

---

[9] At paragraph 29 of the Motion for Leave, the Debtors state that they understood the Court to instruct them at the July Hearing to include in the Proposed Amended Complaints the items set forth in the Dismissal Order, "at a minimum."  Exhibit D.

the complaint on unusual circumstances.  It's really their risk if I turn them down again, isn't it?"

*Id.* at 213.  Within the same discussion, the Court observed as follows:

> But I think that the risk of being turned down on the basis of the
> complaint still isn't good enough is a serious enough – the
> consequences of that are serious enough so I assume that the
> plaintiffs are going to be pretty careful.

*Id.*

67.    Imposition of such risk is consistent with the Court's concern about burden-shifting

and the "unusual circumstances" of the Cases and adversary proceedings.  At the July Hearing, in

a colloquy concerning the *Twombly* and *Iqbal* infirmities of the original complaints, the Court

rejected the Debtors' attempts to suggest remedies short of that ultimately required by the Court.

*Id.* at 202-207.  On behalf of the Debtors, Mr. Fisher protested that, "as a practical matter, based

on the information that is supplied in the complaint, the movants are in an adequate position to

respond intelligently to the complaint," *Id.* at 204, and argued that, "[w]hat we are trying to avoid,

your Honor, is a situation where we now go back and correct these complaints by identifying the

specific entities where we think, as a practical matter, the movants know full well by checking

their own records . . . "  *Id.* at 207.  The Court responded that Mr. Fischer's suggested remedy

improperly "shifts the burden" to the Defendants.  *Id*.  As the Court observed, "it seems to me the

problem with what you are proposing is that you may not have a basis to say in your books and

records that – at least for the face of the complaint, that defendant X was owed a debt, that this

was a payment on account of you may not have it.  And I think your method basically sort of puts

the onus on them to make that part of your case for you."  *Id.* at 206-07.

68.    The Debtors have had five years to figure out, for each transfer, the identity of the

transferor, the identity of the transferee, the identity of any known subsequent transferee against

whom relief is sought, and the antecedent debt.  In issuing its Dismissal Order, the Court justly required that the Plaintiff show *at a minimum* that it has or has not sufficient data to make the lesser *Twombley* an *Iqbal* showing, or else.

69.    The Proposed Amended Complaint alleges that DAS "made, or caused to be made, the Transfers . . . to, or for the benefit of, Defendant."  Exhibit D.  The formula refers implicitly to section 550(a)(1) of the Bankruptcy Code, which provides in relevant part that "to the extent a transfer is avoided under section  . . . 547 of this title, the trustee may recover . . . the property transferred . . .  from (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made[.]"  11 U.S.C § 550(a)(1).

70.    However, the "for the benefit of" aspect of DAS's allegation is inconsistent with pleading specificity required by the Dismissal Order and should be barred.  As noted above, the Dismissal Order requires the Debtors, for *each* transfer, to set forth *at a minimum*: *the* transferor, *the* transferee, and *any* known subsequent transferee against whom relief is sought.  At this point, DAS should have reviewed checks and wire transfer records, as well as transactional records, to determine whom it was paying for what, or whom it was paying for the benefit of a third party. The Dismissal Order requires clarity and not cleverness in this regard.

71.    By retaining the ability to recover transfers made to a non-Defendant if "for the benefit of" Defendant, DAS utterly undermines the definiteness and specificity called for in the Dismissal Order.  Worse, the Dismissal Order could be thus evaded in that regard.  For example, DAS could fail to identify the initial transferee of an alleged transfer, but still argue that the "transferee" it identifies on the Proposed Amended Complaint is the entity "for the benefit of" which the transfer was made.

-25-

72.      Where the Proposed Amended Complaint identifies a defendant and no other party as *the* transferee (as the Complaint and the Proposed Amended Complaint so identify the Defendant), the Debtors should be limited to proving that such defendant was *the* transferee and should be barred from alleging or proving that such defendant was the "entity for whose benefit such transfer was made" (within the meaning of section 550(a)(1)) to *another* unpled transferee.

## VIII.   Defendant Incorporates All Applicable Arguments Raised by Other Defendants in The First Wave Motions, Replies To Responses Thereto, and Objections to the Motion for Leave

73.      Numerous other motions seeking dismissal of complaints and opposing motions for leave to amend have been filed by other defendants in these avoidance actions.  Due to the similarity of the issues presented, Defendant incorporates by reference herein all meritorious arguments raised by such other defendants.

## Conclusion

74.      For the reasons set forth herein, the Motion for Leave should be denied in full and the Complaint should be dismissed with prejudice.  In the alternative, the Motion for Leave should be denied in part as argued above, and the Debtors should be denied any further opportunity to amend the Proposed Amended Complaint.  In particular, the Debtors should be expressly barred from seeking avoidance of any transfer to any party identified as the "transferee" in the Proposed

6817293.1 25743/103154

Amended Complaint on the basis of such entity being a party "for whose benefit such transfer was

made" (within the meaning of section 550(a)(1) of the Bankruptcy Code.) to another entity.

CLARK HILL PLC

*/s/ Christopher M. Cahill*
Robert D. Gordon (*pro hac vice*)
Christopher M. Cahill (*pro hac vice*)
151 South Old Woodward Avenue, Suite 200
Birmingham, Michigan 48009
(313) 965-8300

Attorneys for Defendant

Dated: November 24, 2010

6817293.1 25743/103154

## CERTIFICATE OF SERVICE

I hereby certify that on the 24th day of November, 2010, a copy of the foregoing was electronically filed with the Clerk of the Court using the ECF system which will send notification of such filing to all counsel of record.

I further certify that on the 24th day of November, 2010, a copy of the foregoing was sent via Federal Express overnight delivery on the following:

| | |
|---|---|
| DPH Holdings Corp.<br>Attn:  John Brooks<br>5725 Delphi Drive<br>Troy, Michigan 48098 | Butzel Long<br>Attn:  Donald Orlandoni<br>150 W. Jefferson Avenue<br>Suite 100<br>Detroit, Michigan 48226 |
| Butzel Long<br>Attn:  Eric Fisher<br>380 Madison Avenue, 22nd Floor<br>New York, New York 10017 | Latham & Watkins<br>Attn:  Mark A. Broude/Robert J. Rosenberg<br>885 Third Avenue<br>New York, New York 10022 |
| Warner Stevens, L.L.P.<br>Attn:  Michael D. Warner<br>301 Commerce Street<br>Suite 1700<br>Fort Worth, Texas 76102 | Office of the U.S. Trustee<br>Attn:  Brian Masumoto<br>33 Whitehall Street, 21st Floor<br>New York, New York  10004 |
| Barnes & Thornburg LLP<br>Attn:  D. Thome/K. Matsoukas<br>One N. Wacker Drive<br>Suite 4400<br>Chicago, IL  60606 | Delphi Automotive Systems LLP<br>Attn:  S. Corcoran, K. Craft, D. Sherbin<br>5725 Delphi Drive<br>Troy, Michigan 48098 |
| Honigman Miller Schwartz and Cohn LLP<br>Attn:  F. Gorman/R. Weiss<br>2290 First National Building<br>660 Woodward Avenue<br>Detroit, MI 48226-3583 | Ruskin Moscou Faltischek PC<br>Attn:  J. Wurst<br>1425 RXR Plaza<br>15th Floor<br>Uniondale, NY  11556 |
| Skadden Arps Slate Meagher & Flom LLP<br>Attn:  Ron Meisler<br>155 N. Wacker Drive<br>Suite 2700<br>Chicago, IL  60606-1720 | Weil, Gotshal & Manges LLP<br>Attn:  H. Miller/R. Lemons<br>767 Fifth Avenue<br>New York, NY 10153 |

*/s/ Christopher M. Cahill*
Christopher M. Cahill
Clark Hill PLC

I further certify that on the 24th day of November, 2010, a copy of the foregoing was sent via Federal Express overnight delivery upon the Honorable Robert D. Drain, U.S. Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, White Plains, New York 10601-4140.

*/s/ Christopher M. Cahill*
Christopher M. Cahill
Clark Hill PLC

6817293.1 25743/103154