# EXHIBIT D

Hearing Date: December 16, 2010 at 10:00 a.m. ET
Response Deadline: November 24, 2010 at 4:00 p.m. ET

BUTZEL LONG, a professional corporation
380 Madison Avenue
22nd Floor
New York, New York 10017
Eric B. Fisher
Cynthia J. Haffey
Barry N. Seidel
Telephone: (212) 818-1110
Facsimile: (212) 818-0494
*Attorneys for Reorganized Debtors*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| DPH HOLDINGS CORP., *et al.*,<br><br>                              Reorganized Debtors. | Chapter 11<br><br>Case No. 05-44481 (RDD)<br>(Jointly Administered) |

## REORGANIZED DEBTORS' MOTION FOR LEAVE TO FILE AMENDED COMPLAINTS

TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:

DPH Holdings Corporation and certain of its affiliated reorganized debtors (the

"Reorganized Debtors"), by their counsel, Butzel Long, a professional corporation, respectfully

submit this motion pursuant to Fed. R. Civ. P. 15 for leave to file amended complaints in certain

adversary proceedings described more particularly below (the "Motion") and represent as

follows:

### BACKGROUND

1.     On October 8 and 14, 2005, the Reorganized Debtors each filed voluntary petitions

in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11

U.S.C. §§ 101-1330 (the "Bankruptcy Code"). The Reorganized Debtors continued to operate

their businesses and manage their properties as debtors-in-possession under sections 1107(a) and

1108 of the Bankruptcy Code until they emerged from chapter 11 protection on October 6, 2009. The Court ordered joint administration of these cases.

2.    On December 10, 2007, the Reorganized Debtors filed their First Amended Joint Plan of Reorganization (Docket No. 11386) and related disclosure statement (the "Disclosure Statement" or "DS") (Docket No. 11388). Also on December 10, 2007, the Court entered an order (Docket No. 11389) approving the adequacy of the information contained in the Disclosure Statement (the "December 10th Order").

3.    The Disclosure Statement estimated that the Reorganized Debtors had more than 11,000 potential preference claims totaling almost $6 billion, but added that the Reorganized Debtors did not, at that time, intend to pursue those claims in light of distributions to be made under the Plan if and when it was consummated. (DS at 149-153.) The Disclosure Statement also indicated that the Court had entered the Order Under 11 U.S.C. §§ 102(1)(A), 105(a), 107, 108(a)(2), And 546(a) And Fed. R. Bankr. P. 7004, 9006(c), And 9018 (i) Authorizing Debtors To Enter Into Stipulations Tolling Statute Of Limitations With Respect To Certain Claims, (ii) Authorizing Procedures To Identify Causes Of Action That Should Be Preserved, And (iii) Establishing Procedures For Certain Adversary Proceedings Including Those Commenced By Debtors under 11 U.S.C. § 541, 544, 545, 547, 548, Or 553, *see* Docket No. 9105 (the "Preservation Order"), which had been sought by the Reorganized Debtors to "preserve valuable estate assets in a manner that will not unnecessarily disrupt their prosecution of the Plan or their existing business relationships with potential defendants that are necessary to the Debtors' ongoing operations." (DS at 148.)

4.    The Reorganized Debtors served the Disclosure Statement upon thousands of parties in accordance with the December 10th Order. On December 13, 2007, the Reorganized

2

Debtors also filed a copy of the Disclosure Statement publicly with their Form 8-K. (*See* Docket No. 11388.)

5.    In September 2007, the Reorganized Debtors commenced 742 adversary proceedings (the "Adversary Proceedings"), including the proceedings that are the subject of this Motion, by filing complaints under seal in accord with the Preservation Order prior to the expiration of the Bankruptcy Code's two-year limitations period.

6.    On February 28, 2008, between execution of the Equity Purchase and Commitment Agreement ("EPCA"), which was the cornerstone of the Debtors' proposed emergence from chapter 11 with allowed claims paid in full, and its scheduled closing, the Debtors filed a motion (the "First Extension Motion") to extend their time to serve their preference complaints. (Docket No. 12922.) On March 28, 2008, the Court granted the First Extension Motion and extended the Reorganized Debtors' time to serve preference complaints until May 31, 2008. (Docket No. 13277.)

7.    On April 10, 2008, after the EPCA failed to close, the Reorganized Debtors sought a further extension of their time to serve preference complaints (the "Second Extension Motion") until 30 days after substantial consummation of the confirmed plan, as amended ("Confirmed Plan"), or any modified plan. The Court granted the Second Extension Motion by Order entered April 30, 2008. (Docket No. 13484.)

8.    The Reorganized Debtors' First Amended Joint Plan of Reorganization, as modified and amended, was confirmed by the Court on July 30, 2009 (Docket No. 18707, the "Modified Plan") and became effective on October 6, 2009.

9.    Pursuant to section 7.19 of the Modified Plan, the Reorganized Debtors retained the right to pursue those Adversary Proceedings that are the subject of this Motion. The

3

Reorganized Debtors also retained the right to settle, release or compromise such Adversary Proceedings without further order of the Court.

10.    On October 2, 2009, while the Reorganized Debtors' attention and resources were focused on consummating their modified plan (the "Modified Plan") and related transactions, the Reorganized Debtors filed a motion for an additional extension of time to serve preference complaints. (Docket No. 18952, the "Third Extension Motion"). The Third Extension Motion requested an extension of the deadline for serving summonses and complaints until 180 days after substantial consummation of the Modified Plan. On October 22, 2009, the Court entered an Order granting the Third Extension Motion. (Docket No. 18999.)

11.    In December of 2009, the Reorganized Debtors, through their counsel, Butzel Long, began serving the summonses and complaints (the "Original Complaints") in the 165 Adversary Proceedings listed on **Exhibit 1** attached hereto (the "Preference Actions"). The Preference Actions include only those adversary proceedings in which the Reorganized Debtors are being represented by Butzel Long, as certain other adversary proceedings not listed on **Exhibit 1** are being prosecuted by the Reorganized Debtors' conflicts counsel, Togut, Segal & Segal, LLP.

12.    On March 25, 2010, the Reorganized Debtors then filed a motion to, among other things, extend their time to serve preference complaints upon certain defendants, including certain foreign defendants (the "Fourth Extension Motion"). On April 20, 2010, the Court granted the Fourth Extension Motion and, along with other relief, extended the time for the Reorganized Debtors to serve preference complaints upon foreign Defendants through and including December 1, 2010 (the "Fourth Extension Order").

13.    The Original Complaints were served within the time period afforded by the

4

extension orders, and each of the Original Complaints asserted one claim pursuant to section 547 of the Bankruptcy Code (the "Preference Claim").

14.    After the service of the Original Complaints, certain Defendants in the Preference Actions filed motions to, among other things, (A) vacate certain prior orders of the Court; (B) dismiss the respective Original Complaints filed against them with prejudice; and (C) in the alternative, require the Reorganized Debtors to file a more definite statement (the "Motions to Dismiss"). The Motions to Dismiss argued, *inter alia*, that the Original Complaints did not satisfy the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure, as set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ("*Twombly*"), and *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009) ("*Iqbal*").

15.    On July 22, 2010, the Court heard argument on the Motions to Dismiss and dismissed the following Preference Actions and/or Preference Claims of the Reorganized Debtors with prejudice:

    A.  Adversary Proceeding No. 07-02372;

    B.  Adversary Proceeding No. 07-02723;

    C.  Adversary Proceeding No. 07-02753;

    D.  Adversary Proceeding No. 07-02262, as to Defendant Electronic Data Systems LTD only (n/k/a HP Enterprise Services UK Ltd.).

16.    In its bench ruling, which has not yet been entered as an order, the Court also held that the Reorganized Debtors had abandoned the following Preference Claims:

    a.  any Preference Claim against any defendant that received transfers from the Reorganized Debtors aggregating less than $250,000 during the 90 days preceding the Reorganized Debtors' respective petition dates; and

5

B. any Preference Claim against any defendant that is determined to be a foreign supplier.

17.     With respect to the remaining Preference Actions (the "Remaining Preference Actions"), the Court directed the Reorganized Debtors to file this Motion for leave to file amended complaints (the "Amended Complaints") within forty-five days and further ruled that those Original Complaints that were not amended would be dismissed.  The Reorganized Debtors' proposed Amended Complaints are annexed hereto as **Exhibits 2** through **122.**[1]

18.     The Amended Complaints assert no new causes of action, comply with this Court's direction and Rule 8, and arise from the same transactions as those detailed in the Original Complaints (the "Transfers").

## ARGUMENT

## THE REORGANIZED DEBTORS' MOTION TO AMEND SHOULD BE GRANTED

I.    MOTIONS TO AMEND SHOULD BE FREELY GRANTED

19.     Rule 15 of the Federal Rules of Civil Procedure, made applicable here by Federal Rule of Bankruptcy Procedure 7015, provides that "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). *See Oliver Schools, Inc. v. Foley,* 930 F.2d 248, 252 (2d Cir.1991) ("permission to amend to state a claim should be freely granted") (citing *Foman v. Davis,* 371 U.S. 178, 182 (1962)). *See also Hayden v. Paterson* 594 F.3d 150, 161 n.9 (2d Cir. 2010) ("Of course, even when a complaint falls short of [the *Twombly/Iqbal*] standards, a court should freely give leave to amend before trial when justice so

---

[1] To avoid unnecessarily burdening the Court, the parties, and the electronic filing system, the Reorganized Debtors are filing this same Motion on the dockets in each of the Remaining Preference Actions, together with a copy of only the Exhibit containing the Amended Complaint relating to that particular adversary proceeding.  A complete set of the Exhibits to this Motion will be filed on the main docket (05-44481) in this chapter 11 proceeding.

requires.").

20.    A motion to amend, although "left to the sound discretion of the district court," can be denied only if there is "good reason to deny the motion." *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 55 (2d Cir. 1995). Indeed, the Second Circuit has held that, "absent evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility, Rule 15's mandate must be obeyed." *Monahan v. New York City Dept. of Corrections*, 214 F.3d 275, 283 (2d Cir. 2000)) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Here, there is no good reason to deny the Motion, and none of the concerns the Second Circuit identified in *Monahan* are present.

21.    The Reorganized Debtors filed these actions timely and served them by the deadline established by this Court. Amendment of the Reorganized Debtors' Original Complaints would not be futile because "proffering additional relevant facts [about the subject transfers will] . . . cure the above-described pleading defects with respect to all [of the Remaining Preference Actions]." *See In re Hydrogen, L.L.C.*, 2010 Bankr. LEXIS 1106, *62 (Bankr. S.D.N.Y., Apr. 20, 2010) (granting leave to replead claims where additional facts would cure pleading deficiencies and citing "the relatively liberal standard for granting such leave").

22.    Accordingly, the Reorganized Debtors should be granted leave to serve and file the Amended Complaints.

## II.    LEAVE TO AMEND SHOULD BE GRANTED BECAUSE THE SUPREME COURT ENHANCED THE RULE 8 PLEADING REQUIREMENTS *AFTER* THE ORIGINAL COMPLAINTS WERE FILED

23.    The Reorganized Debtors filed the Original Complaints before the United States Supreme Court decided *Iqbal.*

24.    Accordingly, at the time the Reorganized Debtors filed their Original Complaints,

the federal pleading standard was such that the Reorganized Debtors could reasonably plead a

sufficient preference claim by specifying the legal basis for their claims, as well as the

Defendants to each adversary proceeding and the date, amount, and type of each of the subject

transfers. Thus, the Reorganized Debtors complied with the pleading standards in effect in

September 2007, when the Original Complaints were filed. *See generally In re Allou*

*Distributors, Inc.*, 387 B.R. 365, 405 (Bankr. E.D.N.Y. 2008) (preference claim that merely

"repeat[ed] the statutory language of Section 547(b)" was sufficiently pled where it "identified

each transfer by check number, date, and amount"); *In re NM Holdings Co., LLC*, 407 B.R. 232,

256 (Bankr. E.D. Mich. 2009) (rejecting heightened pleading standard in preference actions and

noting that *Twombly* and *Iqbal* do not require "detailed factual allegations").

      25.    To the extent the pleading standard for preference actions has been enhanced as a

result of *Iqbal*, the Reorganized Debtors should not be penalized. To the contrary, where

complaints filed before *Iqbal* have been held not to satisfy the new heightened pleading

standards articulated by the Supreme Court, courts have been willing to freely grant leave to

amend. *See Elsady v. Rapid Global Business Solutions, Inc.*, 2010 U.S. Dist. LEXIS 17276, *11

(E.D. Mich., Feb. 26, 2010) ("Elsady filed his complaint on May 1, 2009—18 days before the

Supreme Court clarified the pleading requirements under *FED. R. CIV. P. 8*. To hold him to

*Iqbal's* higher standard of pleading without providing an opportunity to amend would be

unjust."); *see also Kasten v. Ford Motor Co.*, 2009 U.S. Dist. LEXIS 101348, *15 (E.D. Mich.,

Oct. 30, 2009) ("Because this action [was] commenced before *Iqbal* was decided, equity justifies

allowing Plaintiffs to amend their Complaint.").

      26.    Thus, the Reorganized Debtors' Motion to amend should be granted.

8

III.    **THE AMENDED COMPLAINTS SATISFY THE REQUIREMENTS OF RULE 8**

27.    The Reorganized Debtors' Motion should also be granted because the Amended Complaints satisfy the requirements of Rule 8(a)(2). Fed. R. Civ. P. 8(a)(2). Rule 8(a)(2) requires complaints to provide only "a short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* Although the Reorganized Debtors maintain that the Original Complaints reasonably complied with Rule 8 when those Complaints were filed, the Reorganized Debtors recognize, as set forth above, that the Supreme Court has recently elaborated on Rule 8's requirements. *See Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009). In *Iqbal*, which the Supreme Court decided after the Reorganized Debtors filed the Original Complaints, the Supreme Court held as follows:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Iqbal* at 129 S. Ct. at 1949 (internal citations omitted).

28.    Applying the Supreme Court's standard to a preference complaint, Chief Judge Gonzalez has held that, "the complaint must allege enough facts with respect to each of the . . . elements of section 547(b) in order to put Defendants on notice for the preference claims." *In re Hydrogen, L.L.C.*, 2010 Bankr. LEXIS 1106, *38 (Bankr. S.D.N.Y., Apr. 20, 2010).

29.    Accordingly, at the July 22, 2010 hearing on the Motions to Dismiss, this Court instructed the Reorganized Debtors to include in their Amended Complaints, at a minimum, information showing, for each alleged transfer, the transferor, the transferee, any known subsequent transferee against whom relief is sought, the antecedent debt, and which Reorganized Debtor is the plaintiff.

9

30.    The Amended Complaints satisfy the Court's instructions and the requirements of Rule 8 because they include the information requested by this Court and allege sufficient facts concerning each element of the Preference Claims.

31.    Specifically, the Amended Complaints now contain the following factual allegations to substantiate each element of the Reorganized Debtors' preference claims:

| Elements of a Preference Claim under 11 U.S.C. § 547(b) | Facts Pleaded in the Amended Complaint |
| --- | --- |
| The transfer was a "transfer of the debtor's interest in property." | "On or within ninety (90) days prior to the Initial Filing Date, Plaintiff made, or caused to be made, the Transfers listed on Exhibit 1 to, or for the benefit of, Defendant." First Amended Complaint, ¶ 20.[2]<br><br>"Such Transfers constituted transfers of interests in Plaintiff's property because they were made by Plaintiff from Plaintiff's account." First Amended Complaint, ¶ 22.<br><br>*See also* Exhibit 1 to First Amended Complaint, identifying "Contracting Entity/Entities" and "Obligor and Transferring Entity." |
| The transfer was "to or for the benefit of a creditor." | "Plaintiff entered into certain purchase agreements (the 'Agreements') with Defendant for the supply of various parts to the Reorganized Debtors." First Amended Complaint, ¶ 13.<br><br>"Pursuant to the terms of the Agreements, Defendant was required to ship certain goods for the benefit of the Reorganized Debtors." First Amended Complaint, ¶ 15.<br><br>"During the ninety (90) days preceding the Initial Filing Date, Plaintiff made certain payments to Defendant in satisfaction of amounts due for goods previously shipped by Defendant under the Agreements (the 'Transfers'). Such Transfers are |

---

[2] While the Amended Complaints all contain allegations substantially similar to those appearing in the chart above, the paragraph numbers and exact allegations in the Amended Complaints differ based on the underlying facts at issue. For ease of reference, therefore, the above citations to the Amended Complaint are taken from **Exhibit 36**, which is the proposed First Amended Complaint against Blair Strip Steel Company, Adv. Pro. No. 07-02259.

| | |
|---|---|
| | identified on Exhibit 1 attached hereto." First Amended Complaint, ¶ 18.<br><br>*See also* Exhibit 1 to First Amended Complaint, identifying "Transfer Recipient(s)." |
| The transfer was made "for or on account of an antecedent debt owed by the debtors before such transfer was made." | "Plaintiff entered into certain purchase agreements (the 'Agreements') with Defendant for the supply of various parts to the Reorganized Debtors." First Amended Complaint, ¶ 13.<br><br>"Pursuant to the terms of the Agreements, Defendant was required to ship certain goods for the benefit of the Reorganized Debtors." First Amended Complaint, ¶ 15.<br><br>"During the ninety (90) days preceding the Initial Filing Date, Plaintiff made certain payments to Defendant in satisfaction of amounts due for goods previously shipped by Defendant under the Agreements (the 'Transfers'). Such Transfers are identified on Exhibit 1 attached hereto." First Amended Complaint, ¶ 18.<br><br>"Plaintiff made, or caused to be made, each Transfer listed on Exhibit 1 for, or on account of, an antecedent debt owed to Defendant as of the date on which each Transfer was made. The documents evidencing the antecedent debt include the purchase orders and/or invoices/bills of lading identified on Exhibit 1, which purchase orders and/or invoices/bills of lading include evidence of the amount of the antecedent debt and the approximate dates the subject goods contemplated by the Agreements were ordered pursuant to the Agreements and/or were provided by Defendant." First Amended Complaint, ¶ 22.<br><br>*See also* Exhibit 1 to First Amended Complaint, showing "Antecedent Debt: Purchase Order/Invoice Number" and "Purchase Order/Invoice" designation. |
| The transfer was "made while the debtor was insolvent." | "On October 8, 2005 (the 'Initial Filing Date'), Delphi Corporation ('Delphi') and certain of its subsidiaries (the 'Initial Filers') each filed voluntary petitions in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330 (the 'Bankruptcy Code')." First Amended Complaint, ¶ 2.<br><br>"On October 14, 2005, three additional U.S. subsidiaries of |

| | Delphi (together with the Initial Filers, the 'Reorganized Debtors') filed voluntary petitions in this Court for reorganization relief under chapter 11 of the Bankruptcy Code." First Amended Complaint, ¶ 3.<br><br>"On or within ninety (90) days prior to the Initial Filing Date, Plaintiff made, or caused to be made, the Transfers listed on Exhibit 1 to, or for the benefit of, Defendant." First Amended Complaint, ¶ 20.<br><br>"Pursuant to Bankruptcy Code section 547(f), for purposes of this Adversary Proceeding, Plaintiff is presumed to have been, and was in fact, insolvent at the time the Transfers were made." First Amended Complaint, ¶ 23.<br><br>*See also* Exhibit 1 to First Amended Complaint, showing "Transfer Dates," which were in fact within 90 days of the Initial Filing Date. |
|---|---|
| The transfer was made "within 90 days before the date of the filing of the petition." | "On October 8, 2005 (the 'Initial Filing Date'), Delphi Corporation ('Delphi') and certain of its subsidiaries (the 'Initial Filers') each filed voluntary petitions in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330 (the 'Bankruptcy Code')." First Amended Complaint, ¶ 2.<br><br>"On October 14, 2005, three additional U.S. subsidiaries of Delphi (together with the Initial Filers, the 'Reorganized Debtors') filed voluntary petitions in this Court for reorganization relief under chapter 11 of the Bankruptcy Code." First Amended Complaint, ¶ 3.<br><br>"On or within ninety (90) days prior to the Initial Filing Date, Plaintiff made, or caused to be made, the Transfers listed on Exhibit 1 to, or for the benefit of, Defendant." First Amended Complaint, ¶ 20.<br><br>*See also* Exhibit 1 to First Amended Complaints, showing "Transfer Dates," which were in fact within 90 days of the Initial Filing Date. |

| | |
|---|---|
| The transfer enabled the Defendant to receive more than it would have received "if the case were a case under chapter 7 of [the Bankruptcy Code]; the transfer had not been made," and the defendant "had received payment … to the extent provided by the provisions of [the Bankruptcy Code]." | "The Reorganized Debtors' First Amended Joint Plan of Reorganization, as modified and amended, was confirmed by the Court on July 30, 2009 (the 'Modified Plan') and became effective on October 6, 2009." First Amended Complaint, ¶ 4.<br><br>"Under the Modified Plan, general unsecured creditors in these chapter 11 cases will receive less than full value on account of their unsecured claims." First Amended Complaint, ¶ 5.<br><br>"Accordingly, pursuant to section 7.19 of the Modified Plan, the Reorganized Debtors retained the right to pursue the claims and causes of action asserted in this First Amended Complaint and to settle, release or compromise such claims and causes of action without further order of the Court." First Amended Complaint, ¶ 6.<br><br>"The Transfers enabled Defendant to receive more than it would have received if (i) this case was administered under chapter 7 of the Bankruptcy Code; (ii) each Transfer had not been made; and (iii) Defendant had received payment of the antecedent debt paid by each Transfer to the extent provided by the Bankruptcy Code. Specifically, Defendant was a general unsecured creditor of Plaintiff, and unsecured creditors in these chapter 11 cases will receive less than full value on account of their unsecured claims." First Amended Complaint, ¶ 24. |

## IV.    PERMITTING THE REORGANIZED DEBTORS TO FILE THE AMENDED COMPLAINTS WILL NOT PREJUDICE THE DEFENDANTS

32.    Amendment of the Original Complaints will not prejudice the Defendants. The same transactions are the basis for the Preference Claims in both the Original Complaints and the Amended Complaints. The Amended Complaints assert no new claims and name defendants who already were put on notice of the Reorganized Debtors' claims upon service of the Original Complaints (if not earlier). The additional facts alleged in the Amended Complaints do not raise new issues with respect to Defendants' defenses to the Preference Claims. As a result, instead of prejudicing the Defendants, the additional facts alleged in the Amended Complaints are likely to simplify the Defendants' defense of these actions and provide a basis for streamlining discovery.

13

33.    Notwithstanding these realities, the Defendants in the Remaining Preference Actions will likely oppose this Motion based on the alleged prejudice the Defendants will suffer in defending against the Amended Complaints.   In truth, however, the Reorganized Debtors' mere act of *amending* the Original Complaints will not prejudice the Defendants.  As the Defendants themselves argued in their Motions to Dismiss, any alleged prejudice the Defendants have suffered in these Preference Actions relates to the filing under seal and delayed service of the *Original Complaints.*  Moreover, as of the date of this Motion, the Court has neither accepted nor rejected the Defendants' prejudice arguments, and to the extent the Defendants' arguments are valid (which the Reorganized Debtors strongly deny for the reasons set forth in their Omnibus Response to the Motions to Dismiss (Docket No. 20225), the Court can still consider them after granting the Reorganized Debtors leave to amend.

34.    In summary, the Reorganized Debtors' Motion to Amend should be granted because the Amended Complaints will cause no incremental prejudice to the Defendants.

## V.    THE AMENDED COMPLAINT RELATES BACK TO THE FILING OF THE ORIGINAL COMPLAINT

35.    The Amended Complaints relate back to the date the Original Complaints were filed.  Rule 15(c)(1)(B) provides that an amended complaint relates back when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B).  This rule also applies when an earlier complaint has been dismissed. *See In re Randall's Island Family Golf Centers, Inc.,* 290 B.R. 55, 65 (Bankr. S.D.N.Y. 2003) ("[A]n amended pleading may relate back under Fed. R. Civ. P. 15(c) to an earlier pleading that was dismissed for failure to satisfy Rule 8(a).").

36.    Like Rule 15(a), Rule 15(c) is "to be liberally construed, particularly where an

amendment does not allege a new cause of action but merely . . . make[s] defective allegations more definite and precise." *Siegel v. Converters Transp., Inc.*, 714 F.2d 213, 216 (2d Cir. 1983) (internal citations omitted). *See Stevelman v. Alias Research Inc.*, 174 F.3d 79, 87 (2d Cir. 1999) (finding that complaint related back because it did not allege a new claim but rendered prior allegations more definite and precise). Indeed, "relation back is mandatory" if "facts provable under the amended complaint arose out of the conduct alleged in the original complaint." *Slayton v. American Exp. Co.*, 460 F.3d 215, 227 (2d Cir. 2006).

37.    Here, there can be no dispute that the Amended Complaints relate back to the filing of the Original Complaints. The Amended Complaints do not assert any new claims and are premised upon the same transactions set forth in the Original Complaints. Any argument to the contrary, consequently, should be rejected. The Motion should be granted.

## CONCLUSION

38.    For the reasons set forth above, the Reorganized Debtors respectfully request entry of an order granting this Motion for leave to file the Amended Complaints, and granting such other relief as the Court deems just and proper.

15

Dated: New York, New York
      September 7, 2010

                      Respectfully submitted,

                      BUTZEL LONG,
                      a professional corporation

                      By:  /s/ Eric B. Fisher
                            Barry N. Seidel
                            Eric B. Fisher
                            Cynthia J. Haffey
                      380 Madison Avenue
                      22nd Floor
                      New York, New York 10017
                      Telephone:  (212) 374-5359
                      Facsimile:  (212) 818-0494
                      fishere@butzel.com

BUTZEL LONG, a professional corporation
380 Madison Avenue
22nd Floor
New York, New York 10017
Barry N. Seidel
Eric B. Fisher
Cynthia J. Haffey
Telephone: (212) 818-1110
Facsimile: (212) 818-0494
*Counsel for Plaintiff*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
                                          :
In re:                                    :        Chapter 11
                                          :        Case No. 05-44481 [RDD]
         DPH HOLDINGS CORP, *et al.*,     :
                                          :
                   Reorganized Debtors,   :
                                          :
------------------------------------------------------------x
                                          :
DELPHI AUTOMOTIVE SYSTEMS, LLC,           :        Adv. Pro. No. 07-02125[RDD]
                                          :
                   Plaintiff,             :
                                          :
v.                                        :
                                          :
ATS AUTOMATION TOOLING SYSTEMS, INC.      :
                                          :
                   Defendant.             :
------------------------------------------------------------x

## FIRST AMENDED COMPLAINT TO AVOID AND RECOVER TRANSFERS PURSUANT TO 11 U.S.C. §§ 547 AND 550

Plaintiff, Delphi Automotive Systems, LLC ("Plaintiff"), by its counsel, Butzel Long, a professional corporation, as and for its First Amended Complaint (the "First Amended Complaint") against Defendant, ATS Automation Tooling Systems, Inc. ("Defendant"), alleges the following:

1

## INTRODUCTION

1.      Plaintiff brings this adversary proceeding (the "Adversary Proceeding") pursuant to, *inter alia*, sections 547 and 550 of the Bankruptcy Code and Rules 3007 and 7001(1) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for an Order and Judgment from this Court against Defendant to direct the return of certain transfers that were made by Plaintiff to Defendant as identified on Exhibit 1 attached hereto.

2.      On October 8, 2005 (the "Initial Filing Date"), Delphi Corporation ("Delphi") and certain of its subsidiaries (the "Initial Filers") each filed voluntary petitions in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330 (the "Bankruptcy Code").

3.      On October 14, 2005, three additional U.S. subsidiaries of Delphi (together with the Initial Filers, the "Reorganized Debtors") filed voluntary petitions in this Court for reorganization relief under chapter 11 of the Bankruptcy Code.

4.      The Reorganized Debtors' First Amended Joint Plan of Reorganization, as modified and amended, was confirmed by the Court on July 30, 2009 (the "Modified Plan") and became effective on October 6, 2009.

5.      Under the Modified Plan, general unsecured creditors in these chapter 11 cases will receive less than full value on account of their unsecured claims.

6.      Accordingly, pursuant to section 7.19 of the Modified Plan, the Reorganized Debtors retained the right to pursue the claims and causes of action asserted in this First Amended Complaint and to settle, release or compromise such claims and causes of action without further order of the Court.

2

## JURISDICTION AND VENUE

7.    This Adversary Proceeding is a "core" proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (F) and (O).

8.    Subject-matter jurisdiction exists in this Court pursuant to 28 U.S.C. § 1334.

9.    Personal jurisdiction exists in this Court because Defendant conducted business in the United States and/or directed activities toward Plaintiff in the United States.

10.    Venue of this Adversary Proceeding is proper in this Court pursuant to 28 U.S.C. § 1409(a).

11.    Defendant was a creditor of Plaintiff prior to the filing of the Reorganized Debtors' chapter 11 cases.

## PARTIES AND BACKGROUND

12.    Plaintiff was the operating subsidiary of Delphi in North America that performed, among other things, accounting and payment functions for the Reorganized Debtors in connection with their manufacture of automotive parts, components, modules and assemblies through various divisions.

13.    Plaintiff entered into certain tooling agreements (the "Agreements") with Defendant for the supply of certain tooling to the Reorganized Debtors.

14.    Defendant is a corporation whose registered agent is The Corporation Trust Company located at Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801.

15.    Pursuant to the terms of the Agreements, Defendant was required to ship certain goods for the benefit of the Reorganized Debtors.

16.    Plaintiff did not accept physical invoices from Defendant in connection with Defendant's shipment of goods under the Agreements.

3

17.     Rather, Plaintiff used its accounts payable system to make payments to Defendant.

18.     During the ninety (90) days preceding the Initial Filing Date, Plaintiff made certain payments to Defendant in satisfaction of amounts due for goods previously shipped by Defendant under the Agreements (the "Transfers"). Such Transfers are identified on Exhibit 1 attached hereto.

## CLAIM FOR RELIEF

### Avoidance and Recovery of Preferential Transfers

19.     Plaintiff incorporates by reference the preceding allegations.

20.     On or within ninety (90) days prior to the Initial Filing Date, Plaintiff made, or caused to be made, the Transfers listed on Exhibit 1 to, or for the benefit of, Defendant.

21.     Such Transfers constituted transfers of interests in Plaintiff's property because they were made by Plaintiff from Plaintiff's account.

22.     Plaintiff made, or caused to be made, each Transfer listed on Exhibit 1 for, or on account of, an antecedent debt owed to Defendant as of the date on which each Transfer was made. The documents evidencing the antecedent debt include the purchase orders and/or invoices/bills of lading identified on Exhibit 1, which purchase orders and/or invoices/bills of lading include evidence of the amount of the antecedent debt and the approximate dates the subject goods contemplated by the Agreements were ordered pursuant to the Agreements and/or were provided by Defendant.

23.     Pursuant to Bankruptcy Code section 547(f), for purposes of this Adversary Proceeding, Plaintiff is presumed to have been, and was in fact, insolvent at the time the Transfers were made.

4

24.     The Transfers enabled Defendant to receive more than it would have received if (i) this case was administered under chapter 7 of the Bankruptcy Code; (ii) each Transfer had not been made; and (iii) Defendant had received payment of the antecedent debt paid by each Transfer to the extent provided by the Bankruptcy Code.  Specifically, Defendant was a general unsecured creditor of Plaintiff and unsecured creditors in these chapter 11 cases will receive less than full value on account of their unsecured claims.

25.     Based upon the foregoing, the Transfers constitute avoidable preferential transfers pursuant to section 547(b) of the Bankruptcy Code.

26.     Pursuant to section 550(a) of the Bankruptcy Code, the Court should enter an Order granting judgment in favor of Plaintiff and against Defendant (i) avoiding the Transfers Defendant received, pursuant to section 547(b) of the Bankruptcy Code; (ii) holding Defendant liable in an amount not less than the amount of the Transfers it received, plus interest from the date hereof and the costs and expenses of this action including, without limitation, attorneys' fees; and (iii) ordering Defendant to pay to Plaintiff the amount of the Transfers it received, pursuant to sections 547(b) and 550(a) of the Bankruptcy Code.

**WHEREFORE**, Plaintiff respectfully requests that the Court:

a.     Enter judgment in favor of Plaintiff and against Defendant in an amount not less than the amount of the Transfers Defendant received, plus costs, interest and attorneys fees as allowed by law;

b.     Order Defendant to pay to Plaintiff the amount of the Transfers it received, pursuant to sections 547(b) and 550(a) of the Bankruptcy Code; and

c.     grant such other and further relief as this Court may deem just and proper.

5

DATED:    New York, New York
          September 7, 2010

                              BUTZEL LONG, a professional corporation


                              By:/s/ Cynthia J. Haffey
                                   Cynthia J. Haffey
                              380 Madison Avenue
                              22nd Floor
                              New York, New York 10017
                              Telephone: (212) 818-1110
                              Facsimile: (212) 818-0494
                              fishere@butzel.com
                              Counsel for Plaintiff

1229714


6

EXHIBIT 1

Delphi Automotive Systems, LLC v. ATS Automation Tooling Systems Inc., ATS Automation Tooling Sys., ATS Automation Tooling Systems and Automation Tooling Systems

Adv. Pro. No. 07-02125 [RDD]

| Adversary Proceeding | Transfer Recipient(s) | Contracting Entity/Entities | Obligor and Transferring Entity | Transfer Date | Transfer Amounts | Purchase Order/Invoice Number/Antecedent Debt | Purchase Order/Invoice | Transfer Type |
|---|---|---|---|---|---|---|---|---|
| 07-02125 | ATS AUTOMATION TOOLING SYS INC | DAS LLC | DAS LLC | 8/2/2005 | $ 27,900.00 | AIS48493 | PO | EFT |
| 07-02125 | ATS AUTOMATION TOOLING SYS INC | DAS LLC | DAS LLC | 8/2/2005 | $ 9,970.00 | AIS48506 | PO | EFT |
| 07-02125 | ATS AUTOMATION TOOLING SYS INC | DAS LLC | DAS LLC | 8/2/2005 | $ 20,494.00 | AIS48588 | PO | EFT |
| 07-02125 | ATS AUTOMATION TOOLING SYS INC | DAS LLC | DAS LLC | 8/2/2005 | $ 1,900.00 | CVS40593 | PO | EFT |
| 07-02125 | ATS AUTOMATION TOOLING SYS INC | DAS LLC | DAS LLC | 8/2/2005 | $ 340.00 | JMS39643 | PO | EFT |
| 07-02125 | ATS AUTOMATION TOOLING SYS INC | DAS LLC | DAS LLC | 8/24/2005 | $ 4,845.00 | AIM10384 | PO | EFT |
| 07-02125 | ATS AUTOMATION TOOLING SYS INC | DAS LLC | DAS LLC | 9/2/2005 | $ 134,726.50 | AIS48240 | PO | EFT |
| 07-02125 | ATS AUTOMATION TOOLING SYS INC | DAS LLC | DAS LLC | 9/2/2005 | $ 9,970.00 | AIS48506 | PO | EFT |
| 07-02125 | ATS AUTOMATION TOOLING SYS INC | DAS LLC | DAS LLC | 9/2/2005 | $ 52,529.00 | DCS01358 | PO | EFT |
| 07-02125 | ATS AUTOMATION TOOLING SYS INC | DAS LLC | DAS LLC | 9/13/2005 | $ 18,287.00 | AIS48538 | PO | EFT |
| 07-02125 | ATS AUTOMATION TOOLING SYS INC | DAS LLC | DAS LLC | 9/13/2005 | $ 1,954.00 | CVS39474 | PO | EFT |
| 07-02125 | ATS AUTOMATION TOOLING SYS INC | DAS LLC | DAS LLC | 10/4/2005 | $ 6,045.00 | AIS49413 | PO | EFT |
| 07-02125 | ATS AUTOMATION TOOLING SYS INC | DAS LLC | DAS LLC | 10/4/2005 | $ 23,157.75 | CVS40585 | PO | EFT |
| 07-02125 | ATS AUTOMATION TOOLING SYS INC | DAS LLC | DAS LLC | 10/4/2005 | $ 4,112.00 | CVS40953 | PO | EFT |
| 07-02125 | ATS AUTOMATION TOOLING SYS INC | DAS LLC | DAS LLC | 7/14/2005 | $ 2,218.97 | HT0250049334494001 | INVOICE | CHECK |
| 07-02125 | ATS AUTOMATION TOOLING SYS INC | DAS LLC | DAS LLC | 7/14/2005 | $ 3,131.87 | HT0250049334497001 | INVOICE | CHECK |
| 07-02125 | ATS AUTOMATION TOOLING SYS INC | DAS LLC | DAS LLC | 7/14/2005 | $ 4,868.69 | HT0250049376100 | INVOICE | CHECK |
| 07-02125 | ATS AUTOMATION TOOLING SYS INC | DAS LLC | DAS LLC | 7/14/2005 | $ 2,443.74 | HT0250049436400 | INVOICE | CHECK |
| 07-02125 | ATS AUTOMATION TOOLING SYS INC | DAS LLC | DAS LLC | 7/14/2005 | $ 2,427.69 | HT0250049589500 | INVOICE | CHECK |
| 07-02125 | ATS AUTOMATION TOOLING SYS INC | DAS LLC | DAS LLC | 7/14/2005 | $ 4,937.34 | HT0250050047320 | INVOICE | CHECK |
| 07-02125 | ATS AUTOMATION TOOLING SYS INC | DAS LLC | DAS LLC | 7/14/2005 | $ 1,774.50 | HT0250050650100 | INVOICE | CHECK |
| 07-02125 | ATS AUTOMATION TOOLING SYS INC | DAS LLC | DAS LLC | 7/14/2005 | $ 1,774.50 | HT0250050323380 | INVOICE | CHECK |
| 07-02125 | ATS AUTOMATION TOOLING SYS INC | DAS LLC | DAS LLC | 7/14/2005 | $ 1,656.20 | HT0250050250340 | INVOICE | CHECK |
| 07-02125 | ATS AUTOMATION TOOLING SYS INC | DAS LLC | DAS LLC | 7/14/2005 | $ 1,656.20 | HT0250050415290 | INVOICE | CHECK |
| 07-02125 | ATS AUTOMATION TOOLING SYS INC | DAS LLC | DAS LLC | 7/14/2005 | $ 1,656.20 | HT0250050492830 | INVOICE | CHECK |
| 07-02125 | ATS AUTOMATION TOOLING SYS INC | DAS LLC | DAS LLC | 7/14/2005 | $ 1,656.20 | HT0250050684870 | INVOICE | CHECK |
| 07-02125 | ATS AUTOMATION TOOLING SYS INC | DAS LLC | DAS LLC | 7/14/2005 | $ 1,656.20 | HT0250050684800 | INVOICE | CHECK |
| 07-02125 | ATS AUTOMATION TOOLING SYS INC | DAS LLC | DAS LLC | 7/14/2005 | $ 2,839.20 | HT0250050774310 | INVOICE | CHECK |
| 07-02125 | ATS AUTOMATION TOOLING SYS INC | DAS LLC | DAS LLC | 7/14/2005 | $ 3,667.30 | HT0250050774320 | INVOICE | CHECK |
| 07-02125 | ATS AUTOMATION TOOLING SYS INC | DAS LLC | DAS LLC | 7/14/2005 | $ 1,656.20 | HT0250050844360 | INVOICE | CHECK |
| 07-02125 | ATS AUTOMATION TOOLING SYS INC | DAS LLC | DAS LLC | 8/2/2005 | $ 39,641.28 | D0550005209 | PO | EFT |
| 07-02125 | ATS AUTOMATION TOOLING SYS INC | DAS LLC | DAS LLC | 8/11/2005 | $ 178.88 | D0550004200 | PO | CHECK |
| 07-02125 | ATS AUTOMATION TOOLING SYS INC | DAS LLC | DAS LLC | 8/11/2005 | $ 30,407.35 | D0550025423 | PO | CHECK |
| 07-02125 | ATS AUTOMATION TOOLING SYS INC | DAS LLC | DAS LLC | 8/15/2005 | $ 147.73 | D0550005209 | PO | EFT |
| 07-02125 | ATS AUTOMATION TOOLING SYS INC | DAS LLC | DAS LLC | 9/2/2005 | $ 30,693.99 | D0550005209 | PO | EFT |
| 07-02125 | ATS AUTOMATION TOOLING SYS INC | DAS LLC | DAS LLC | 9/15/2005 | $ 24,209.25 | D0550025423 | PO | CHECK |
| 07-02125 | ATS AUTOMATION TOOLING SYS INC | DAS LLC | DAS LLC | 7/18/2005 | $ 150.00 | S2M81487 | PO | CHECK |
| 07-02125 | ATS AUTOMATION TOOLING SYS INC | DAS LLC | DAS LLC | 8/4/2005 | $ 54,282.24 | VS56774 | PO | CHECK |
| 07-02125 | ATS AUTOMATION TOOLING SYS INC | DAS LLC | DAS LLC | 8/4/2005 | $ 1,639.80 | VS57042 | PO | CHECK |
| 07-02125 | ATS AUTOMATION TOOLING SYS INC | DAS LLC | DAS LLC | 8/4/2005 | $ 3,698.10 | VS57043 | PO | CHECK |
| 07-02125 | ATS AUTOMATION TOOLING SYS INC | DAS LLC | DAS LLC | 8/8/2005 | $ 600,922.80 | VS56773 | PO | CHECK |
| 07-02125 | ATS AUTOMATION TOOLING SYS INC | DAS LLC | DAS LLC | 8/8/2005 | $ 488,540.16 | VS56774 | PO | CHECK |
| 07-02125 | ATS AUTOMATION TOOLING SYS INC | DAS LLC | DAS LLC | 8/8/2005 | $ 36,757.80 | VS56775 | PO | CHECK |
| 07-02125 | ATS AUTOMATION TOOLING SYS INC | DAS LLC | DAS LLC | 8/8/2005 | $ 178,774.30 | VS56776 | PO | CHECK |
| 07-02125 | ATS AUTOMATION TOOLING SYS INC | DAS LLC | DAS LLC | 8/8/2005 | $ 14,758.20 | VS67042 | PO | CHECK |
| 07-02125 | ATS AUTOMATION TOOLING SYS INC | DAS LLC | DAS LLC | 8/8/2005 | $ 33,282.90 | VS67043 | PO | CHECK |
| 07-02125 | ATS AUTOMATION TOOLING SYS INC | DAS LLC | DAS LLC | 8/15/2005 | $ 4,084.20 | NS56775 | PO | CHECK |
| 07-02125 | ATS AUTOMATION TOOLING SYS INC | DAS LLC | DAS LLC | 8/15/2005 | $ 19,863.81 | VS66775 | PO | CHECK |
| 07-02125 | ATS AUTOMATION TOOLING SYS INC | DAS LLC | DAS LLC | 8/24/2005 | $ 1,126.70 | CVS40443 | PO | CHECK |

EXHIBIT 1

*Delphi Automotive Systems, LLC v. ATS Automation Tooling Systems Inc., ATS Automation Tooling Sys., ATS Automation Tooling Systems and Automation Tooling Systems*

Adv. Pro. No. 07-02125 [RDD]

| Adversary Proceeding No. | Transfer Recipient(s) | Contracting Entity/Entities | Obligor and Transferring Entity | Transfer Dates | Transfer Amounts | Purchase Order/Invoice Number/Antecedent Debt | Purchase Order/Invoice | Transfer Type |
|---|---|---|---|---|---|---|---|---|
| 07-02125 | ATS AUTOMATION TOOLING SYS INC | DAS LLC | DAS LLC | 9/8/2005 | $ 43,350.00 | AIS49064 | PO | CHECK |
| 07-02125 | ATS AUTOMATION TOOLING SYS INC | DAS LLC | DAS LLC | 9/8/2005 | $ 29,200.00 | AIS49078 | PO | CHECK |
| 07-02125 | ATS AUTOMATION TOOLING SYS INC | DAS LLC | DAS LLC | 9/8/2005 | $ 5,634.00 | IVS66774 | PO | CHECK |
| 07-02125 | ATS AUTOMATION TOOLING SYS INC | DAS LLC | DAS LLC | 9/8/2005 | $ 3,698.00 | S2M81353 | PO | CHECK |
| 07-02125 | ATS AUTOMATION TOOLING SYS INC | DAS LLC | DAS LLC | 9/23/2005 | $ 1,462.41 | 10842002 | PO | CHECK |
| 07-02125 | ATS AUTOMATION TOOLING SYS INC | DAS LLC | DAS LLC | 9/23/2005 | $ 1,256.40 | 10842003 | PO | CHECK |
| 07-02125 | ATS AUTOMATION TOOLING SYS INC | DAS LLC | DAS LLC | 10/7/2005 | $ 15,311,148.76 | | | WIRE |

Total Amount of Claim=     $ 17,327,170.21