Hearing Date and Time: February 17, 2011 at 10:00 a.m.
Reply Deadline: January 28, 2011

DICKINSON WRIGHT PLLC
Attorneys for Ambrake Corporation
301 East Liberty, Suite 500
Ann Arbor, Michigan 48104-2266
(734) 623-7075
Michael C. Hammer (MI-P41705) (pro hac vice)
Dawn R. Copley (MI-P53343) (pro hac vice)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- x

In re:                                    :    Chapter 11
                                          :
DPH HOLDINGS CORP., *et al*,              :    Case No. 05-44481 (RDD)
                                          :
        Reorganized Debtors.     :        :    (Jointly Administered)
                                          :
------------------------------------------------------- x
                                          :
DELPHI AUTOMOTIVE SYSTEMS, LLC,           :
                                          :
        Plaintiff,                        :    Adv. Pro. No. 07-02201-rdd
                                          :
v.                                        :
                                          :
AMBRAKE CORPORATION and                   :
AMBRAKE CORP.,                            :
                                          :
        Defendants.                       :
                                          :
------------------------------------------------------- x

## AMBRAKE CORPORATION'S BRIEF IN OPPOSITION TO REORGANIZED DEBTORS' MOTION FOR LEAVE TO FILE AMENDED COMPLAINTS

Ambrake Corporation and Ambrake Corp. ("Ambrake"), by their attorneys, Dickinson

Wright PLLC, submit this Brief in Opposition to Reorganized Debtors' Motion for Leave to File

Amended Complaints.

## I.    **INTRODUCTION**

In September 2007, unbeknownst to Ambrake, the Debtors filed a complaint against Ambrake seeking to recover **14** purported preferential transfers allegedly made by one or more unidentified Debtors totaling approximately $39 million. The Debtors then waited for over two and a half years – until March 2010 – to serve this original complaint upon Ambrake. The Debtors readily concede that they intentionally concealed the existence of this adversary proceeding from Ambrake while the Debtors were in the process of negotiating commercial terms with Ambrake regarding Ambrake's supply of parts to certain of the Debtors in order to obtain an advantage in those negotiations.

Now, three years after filing their original complaint (which was dismissed by the Court for failing to state a claim under Fed.R.Bankr.P. 7008), the Debtors request leave to file an amended complaint that seeks to recover *149* purported preferential transfers totaling in excess of *$82 million*. Importantly, <u>none</u> of the original 14 transfers included in the Debtors' original complaint are included within the 149 new transfers the Debtors now seek to avoid. In other words, the Debtors' proposed amended complaint identifies ***entirely new and different transfers that allegedly total in excess of twice the amount sought by their original complaint***. Incredibly, in their motion for leave to amend, the Debtors do not even address, much less provide a legitimate basis for, this dramatic shift in the nature and magnitude of their allegations against Ambrake.

As detailed below, the Court should deny the Debtors' motion to amend because: (1) the proposed amended complaint cannot survive a motion to dismiss and the proposed amendment is therefore futile; and (2) Ambrake will suffer undue prejudice as a result of the proposed amendment. Specifically, the Court should deny the motion to amend on the following grounds:

2

- The proposed amended complaint does not relate back to the original complaint. The allegations and claims in the proposed amended complaint are entirely distinct from and unrelated to the claims contained in the original complaint. Therefore, the amended complaint does not "relate back" to the original complaint and is barred by the two-year statute of limitations under 11 U.S.C. § 546(a);

- The proposed amended complaint fails to state a claim against Ambrake upon which relief can be granted under Fed.R.Bankr.P. 7008 and 7012. Contrary to the requirements of this Court's prior dismissal order and Fed.R.Civ.P. 8 and 12, the Debtors' amended complaint fails to: (i) properly evidence the antecedent debt(s) on account of which the 149 purported transfers, that never occurred, were allegedly made; or (ii) plead facts demonstrating that the plaintiff in this adversary proceeding, Delphi Automotive Systems LLC, was insolvent in the 90 days preceding its bankruptcy petition. As a result, the proposed amended complaint fails to state a claim against Ambrake upon which relief can be granted; and

- Ambrake will suffer undue prejudice if the amendment is allowed. Ambrake's corporate parent is a public company whose stock is traded on the Tokyo Stock Exchange. If the Court allows the Debtors to file their proposed amended complaint, Ambrake (through consolidated financial reporting) and its corporate parent will be required to publicly disclose the purported $82 million claim, thereby potentially negatively impacting Ambrake's parent's stock price and market capitalization. That alone constitutes undue prejudice sufficient to warrant denial of Defendants' motion. However, the prejudice is even more severe as the undisputed evidence makes clear that *Ambrake did not receive $82 million in transfers from any Debtor (or collection of Debtors) in the 90 days preceding the bankruptcy petitions*. Allowing the amended complaint to be filed under these circumstances, where unfounded and unsupportable allegations will trigger detrimental public disclosures by Ambrake and its corporate parent, constitutes undue prejudice.

In addition, the Court should deny the Debtors' motion to amend for the additional reasons set forth in Ambrake's Motion to: (I) Vacate Extension Orders; and (II) Dismiss Adversary Proceeding (Doc #20087).[1] Specifically, the Court should deny the Debtors' motion to amend because:

- The Court's "Extension Orders", pursuant to which the Debtors obtained multiple extensions of time of over 2 ½ years to serve the original complaint upon Ambrake should be vacated because: (i) the Debtors did not provide good cause for the extensions; (ii) grounds did not exist for discretionary extensions of time; and (iii) the Extension

---

[1] Ambrake restates and incorporates herein by this reference its Motion to: (I) Vacate Extension Orders; and (II) Dismiss Adversary Proceeding (Doc #20087), including the Brief in Support of such Motion and all exhibits thereto.

Orders deprived Ambrake of its right to due process of law. Upon vacation of the Extension Orders, the original complaint must be dismissed pursuant to Fed.R.Bankr.P. 7004(m), and the proposed amended complaint would be barred by the two-year statute of limitations under 11 U.S.C. § 546(a);

- The proposed amended complaint is barred by the doctrine of judicial estoppel. Throughout their bankruptcy proceeding, the Debtors advised the Court that they would not pursue adversary proceedings such as this proceeding against Ambrake, and the Court relied on these representations when entering the Extension Orders. The Debtors are therefore judicially estopped from acting in a manner that contradicts their prior and repeated representations to the Court;

- The proposed amended complaint is barred by the doctrine of res judicata. The Debtors did not preserve this adversary proceeding in their confirmed plan of reorganization, and this adversary proceeding is thus barred under the doctrine of res judicata; and

- The proposed amended complaint is barred by the doctrine of laches. The Debtors delayed prosecution of this adversary proceeding until well after expiration of the statute of limitations, and Ambrake did not become aware of this proceeding until more than four and half years after the transactions took place that are the subject of this proceeding. As a result, Ambrake's ability to defend itself has been prejudiced, and the Debtors' original and proposed amended complaints are barred by the doctrine of laches.

For these reasons, as set forth more fully below, Ambrake respectfully requests the Court to deny the Debtors' motion to amend and dismiss this adversary proceeding in its entirety and with prejudice.

## II.    FACTUAL BACKGROUND

### A.    The Debtors' Petitions And Deadline For Avoidance Actions

On October 8, 2005, Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, including Delphi Automotive Systems LLC ("DAS"), filed voluntary petitions for relief under Title 11 of Chapter 11 of the United States Code. Under 11 U.S.C. § 546(a), DAS was required to file any avoidance action within two years -- on or before October 8, 2007.

4

### B.    The Original Complaint And Ambrake's Motion To Dismiss[2]

In March, 2010 -- two and a half years after the Original Complaint was filed under seal and over two and a half years after the statute of limitations had expired – the Debtors served the Original Complaint upon Ambrake.  The Original Complaint sought to recover 14 purported transfers allegedly made by one or more of the Debtors to Ambrake totaling $39,172,886.19. However, the Original Complaint did not identify:  (1) the specific Debtor(s) that allegedly made the purported transfers to Ambrake; (2) the alleged antecedent debts on account of which the transfers were allegedly made; or (3) whether or not there were known initial transferees and subsequent transferees.

On May 14, 2010, Ambrake filed a Motion to:  (I) Vacate Extension Orders; and (II) Dismiss Adversary Proceeding (Doc #20087) ("Motion to Dismiss").  Certain Defendants in other Sealed Adversary Proceedings (the "Unidentified Defendants") filed similar motions to vacate the Extension Orders and dismiss their respective adversary proceedings (collectively, the "First Wave Motions").  Ambrake filed a Joinder in certain of these Motions as well (Doc #20356).[3]  In its Motion and Joinder, Ambrake argued that the Original Complaint should be dismissed because:  (1) the Extension Orders should be vacated and, once vacated, the Original Complaint must be dismissed pursuant to Fed.R.Civ.P. 4(m) and cannot be re-filed or otherwise revived due to the expiration of the statute of limitations under 11 U.S.C. § 546(a); (2) the Original Complaint is barred by the doctrines of judicial estoppel, res judicata and laches; and (3)

---

[2] The facts and events leading up to the filing by Ambrake of its Motion to:  (I) Vacate Extension Order; and (II) Dismiss Adversary Proceeding (Doc #20087) are detailed in that Motion and are outlined in the summary that is attached hereto as **Exhibit A**.

[3] Ambrake restates and incorporates herein by this reference its Joinder of Ambrake Corporation to Reply Brief (Doc. #20356).

the Original Complaint failed to state a claim upon which relief could be granted under Fed.R.Civ.P. 8(a) and 12(b)(6).[4]

After conducting an extensive hearing on the First Wave Motions on July, 22, 2010 (the "July Hearing," excerpts of transcript attached as **Exhibit B**), the Court entered an Order Granting In Part First Wave Motions To Dismiss on September 7, 2010 (the "Dismissal Order," attached as **Exhibit C**). The Dismissal Order dismissed all claims in the Original Complaint because the Debtors "failed to state a claim, and have not complied with Rule 8 of the Federal Rules of Civil Procedure." The Dismissal Order further ordered that "[b]y no later than September 7, 2010, [Debtors] shall file a motion for leave to amend the [Original Complaint]" and required such motion to attach a proposed amended complaint that complied with Rule 8 and set forth, *at a minimum*, for each transfer:

- the transferor;

- the transferee;

- any known subsequent transferee against whom relief is sought;

- the antecedent debts on account of which the transfers were allegedly made; and

- which Reorganized Debtor is the plaintiff.

*See*, Exhibit C.

Finally, the Dismissal Order expressly preserved all defenses asserted by Ambrake and the other Unidentified Defendants that the Court did not rule upon (including, for example, that the Extension Orders should be vacated or that Sealed Adversary Proceedings should be dismissed on other grounds, such as judicial etoppel, res judicata and laches). *See*, Exhibit C.

---

[4] Made applicable by Fed.R.Bankr.P. 7008 and 7012.

### C.    The Amended Complaint

On September 7, 2010, the Debtors filed Reorganized Debtors' Motion for Leave to File Amended Complaints (the "Motion to Amend") which attached a proposed amended complaint against Ambrake (the "Amended Complaint," attached as **Exhibit D**).    A plain reading of the Amended Complaint demonstrates that it utterly fails to:    (1) relate back to the Original Complaint (and is therefore time-barred); or (2) meet the minimum pleading requirements set forth by the Court in its Dismissal Order.

As stated above, the Original Complaint identified 14 purported transfers totaling approximately $39 million.    *See*, Exhibit 1 to Original Complaint (the "Original Complaint Exhibit," attached as **Exhibit E**).    The Amended Complaint, however, identifies *149 entirely new and distinct transfers totaling $82,134,109.82*.    *See*, Exhibit 1 to Amended Complaint (the "Amended Complaint Exhibit," attached as **Exhibit F**).    With the exception of the alleged dates on which the transfers occurred, <u>none</u> of the information provided in the Amended Complaint relating to these 149 transfers corresponds to the 14 transfers alleged in the Original Complaint. Indeed, a comparison of the Original Complaint Exhibit and Amended Complaint Exhibit readily demonstrates that *none* of the transfers sought to be avoided in the Amended Complaint were the subject of the Original Complaint.    In other words, all 149 transfers identified in the Amended Complaint are new transfers wholly unrelated to the 14 transfers that were the subject of the Original Complaint.    The Debtors do not even address, let alone provide a legitimate basis for, this drastic change in the nature and magnitude of their allegations against Ambrake.    Clearly, therefore, the Amended Complaint fails to state a claim that "arose out of the conduct, transaction or occurrence set out" in the Original Complaint and thus fails to relate back to the

Original Complaint. As a result, the Amended Complaint is time-barred under 11 U.S.C. § 546(a).[5]

Equally important (and dispositive) is the fact that *none of the transfers identified on the Amended Complaint Exhibit correspond in amount to any payments received by Ambrake*, and *Ambrake did not receive the amount alleged in the Amended Complaint (approximately $82 million) from any Debtor or collection of Debtors in the 90 days preceding the Debtors' bankruptcy filings*. *See*, Affidavit of Doug Morgan, attached as **Exhibit G** at ¶¶ 10-11.

The Amended Complaint also fails to adhere to the requirements of the Dismissal Order and fails to state a claim upon which relief can be granted under Rules 8 and 12. For example, since none of the transfers identified on the Amended Complaint Exhibit correspond in amount to any payments received by Ambrake, the alpha-numeric codes listed under the "Antecedent Debt: Purchase Order/Invoice Number" column of the Amended Complaint Exhibit cannot possibly evidence antecedent debt(s). In other words, there can be no "antecedent debt on account of which such transfer was made" if, in fact, the transfers alleged on the Amended Complaint Exhibit **never actually occurred**. Any allegation to the contrary is implausible.

The Amended Complaint also fails to sufficiently allege that DAS was insolvent in the 90 days prior to filing its petition. To the contrary, DAS's amended schedules, of which the Court may take judicial notice, indicate that its assets exceeded its liabilities by more than $2.6 billion.

Because the proposed Amended Complaint fails to comply with Rule 8 and the Dismissal Order, it cannot survive a motion to dismiss and the Motion to Amend should be denied.

---

[5] Even if the Debtors could provide some explanation for the difference in dollar amounts sought by the Original and Amended Complaints (such as, for example, by stating that they erred in alleging the amounts set forth in the Amended Complaint), such explanation would not address the remaining dramatic differences in the number (14 vs. 149) and description of the transfers at issue in the two Complaints, the fact that the plaintiffs in the two proceedings are different, or the other stark prejudicial differences between the two pleadings.

## III.    ARGUMENT

DAS may not amend its Original Complaint without obtaining leave of Court. *See,* Fed.R.Civ.P. 15(a)(2). The denial of leave to amend under Rule 15(a) is within the sound discretion of the trial court. *Foman v. Davis,* 371 U.S. 178, 182 (1962). "Leave to amend, though liberally granted, may properly be denied for: 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of amendment, futility of amendment, etc.'" *Ruotolo v. City of New York,* 514 F.3d 184, 191 (2d Cir. 2008), quoting *Foman* at 182; *McCarthy v. Dun & Bradstreet Corp.,* 482 F.3d 184, 200 (2d Cir. 2007) (same).

Under the facts set forth above, the Court should deny DAS's Motion to Amend on the grounds of futility and undue prejudice.

### A.    The Court Should Deny DAS's Motion To Amend Because The Proposed Amendment Is Futile

An amendment is futile if the amended complaint would not survive a motion to dismiss. *Austin Driveway Services, Inc. v. Coan (In re Austin Driveway Services, Inc.),* 179 B.R. 390, 394 (Bankr.D.Conn. 1995), citing *McNally v. Yarnall,* 764 F.Supp. 853, 855 (S.D.N.Y. 1991); *Vigilant Insurance Co., v. Servco Oil, Inc.,* (D.Conn. 2010) (a court may deny a motion to amend where the amended portion of the complaint would fail to state a cause of action) (citing *Parker v. Columbia Pictures Industries,* 204 F.3d 326 (2d Cir. 2000)). DAS's proposed Amended Complaint would not survive a motion to dismiss because it: (1) does not "relate back" to the Original Complaint under Fed.R.Civ.P. 15[6] and is therefore time-barred under 11 U.S.C. § 546(a); and (2) fails to comply with the pleading requirements set forth in the Court's Dismissal Order as well as the requirements of Fed.R.Civ.P. 8 and 12.

---

[6] Made applicable by Fed.R.Bankr.P. 7015

1.    **The Amended Complaint does not "Relate Back" to the
Original Complaint and is thus Time Barred Under 11
U.S.C. § 546(a)**

An amended pleading that does not "relate back" to the original pleading under

Fed.R.Civ.P. 15 is considered time-barred if the applicable statute of limitations has expired

before the amended pleading is filed. Fed.R.Civ.P. 15(c).  *See also, Official Comm. of*

*Unsecured Creditors v. Pirelli Communications Cables and Systems USA LLC (In re*

*360Networks (USA) Inc.)*, 367 B.R. 428, 433 (Bankr.S.D.N.Y. 2007) ("[A]n amendment should

be denied where the additional claims sought to be asserted would be barred by the statute of

limitations unless the amendment relates back under Rule 15(c)").  Therefore, because the two-

year statute of limitations set forth in 11 U.S.C. § 546(a) expired on October 8, 2007, DAS's

proposed Amended Complaint is time-barred unless it is deemed to relate back to the Debtors'

Original Complaint. *Id.* DAS, as the moving party, bears the burden of proving that its proposed

amendment relates back to the Original Complaint. *Id.*

In order for an amended pleading to relate back to an original pleading, the amended

pleading must assert claims that "arose out of the conduct, transaction, or occurrence set out – or

attempted to be set out -- in the original pleading." Fed.R.Civ.P. 15(c)(1)(B).  *See also, Family*

*Golf Ctrs., Inc. v. Acushnet Co. (In re Randall's Island Family Golf Ctrs., Inc.)*, 290 B.R. 55, 65

(Bankr.S.D.N.Y. 2003) ("If the statute of limitations has run, the claims in the amended

complaint must relate back to those alleged in the timely pleading.  In other words, the re-

pleaded claims must arise out of the same 'conduct transaction or occurrence set forth or

attempted to be set forth in the original pleading.'").  In the context of preference actions, this

Court has expressly held that "each potential preferential transfer is a separate and distinct

transaction: <u>a preference action based on one transfer does not put defendant on notice of claims</u>

10

with respect to any other unidentified transfers." *360Networks*, 367 B.R. at 434, citing *In re Kam Kuo Seafood Corp.*, 67 B.R. 304, 308 (Bankr.S.D.N.Y. 1986) (emphasis added). *See also*, *Metzeler v. Bouchard Transp. Co. (In re Metzeler)*, 66 B.R. 977, 984 (Bankr.S.D.N.Y.) ("Courts have consistently treated preferential transactions as separate and distinct under Rule 15(c).")

In its omnibus Motion to Amend, DAS contends that its proposed amended complaints relate back to the Debtors' original complaints under Rule 15(c)(1)(B) because they "do not assert any new claims and are premised upon the same transactions set forth in the Original Complaints." This assertion, which the Debtors make with respect to *all preference defendants*, is simply untrue as to Ambrake because the Amended Complaint alleges **completely different transfers** than those identified in the Original Complaint.

In their Original Complaint, the Debtors alleged that one or more unidentified Debtors made 14 transfers to Ambrake totaling approximately $39 million. In stark contrast, the Amended Complaint alleges that DAS made 149 transfers to Ambrake totaling over $82 million. With the exception of the alleged dates on which the transfers occurred, none of the information provided in the Amended Complaint relating to these 149 transfers corresponds to the 14 transfers alleged in the Original Complaint. That is, *none of the 14 transfers identified in the Original Complaint are included in the Amended Complaint. Instead, the Amended Complaint identifies 149 entirely new and distinct transfers, none of which were the subject of the Debtors' claim in the Original Complaint.* In addition, the total dollar amount of transfers identified in the Amended Complaint is *more than double* the amount of transfers identified in the Original Complaint, and none of the individual dollar amounts (or any combination of such amounts) set forth in the Amended Complaint Exhibit equate to any amount set forth in the Original Complaint Exhibit.

11

The Debtors' Motion to Amend does not even address, much less provide a legitimate basis for, the total and complete lack of relation between the transfers identified in the Original and Amended Complaints, or the fact that the Amended Complaint seeks more than twice the amount sought in the Original Complaint. This is not surprising, as there is no such relation and the claims set forth in the Amended Complaint do not "relate back" to the Original Complaint.

Accordingly, this case is directly analogous to *MBC Greenhouse, Co. v. CTC Direct, Inc. (In re MBC Greenhouse, Co.)*, 307 B.R. 787 (Bankr.D.Del. 2004). In that case, the plaintiff's original complaint alleged six transactions aggregating in excess of $2 million. The plaintiff then requested leave to file an amended complaint identifying thirty-nine transactions totaling in excess of $7 million. Aside from their characterization as preferential transfers and similar payees, there was no commonality between the thirty-nine transactions alleged in the proposed amended complaint and the six transactions alleged in the original complaint (except as to one), and the two lists could not be reconciled. The court found that the proposed amended complaint "essentially [alleged] a whole new set of transactions" and held that the proposed amended complaint did not relate back to the original complaint. *Id.* at 792.

The Court should reach the same conclusion here. None of the 149 alleged transfers identified in the Amended Complaint were included in the Original Complaint and there is simply no relation (let alone correlation) between the two Complaints. As a result, DAS's Amended Complaint fails to relate back to the Original Complaint and it is thus time-barred under 11 U.S.C. § 546(a). Accordingly, the proposed amendment is futile and should be denied.

### 2.    The Amended Complaint Fails to Comply With the Court's Dismissal Order or the Pleading Requirements of Rules 8 and 12

In the Dismissal Order, the Court ordered the Debtors to file motions to amend with attached complaints that set forth, at a minimum, as to each transfer, "the transferor, the transferee, any known subsequent transferees, the antecedent debt and the Reorganized Debtor who is the plaintiff." *See*, Exhibit C.

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court held that to survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual information to "state a claim to relief that is plausible on its face" in order to comply with the pleading requirements of Rule 8. *Id.* at 570. A pleading that only offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not suffice. *Id.* at 555.

Likewise, in *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009), the Supreme Court, elaborating on its holding in *Twombly*, held that pleadings that contain insufficient factual allegations do not plausibly state a cause of action that is entitled to relief. "In keeping with these principles [established in *Twombly*], a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assure their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950.

In the context of a preference claim, in order to comply with the Rule 8 pleading requirements as clarified in *Twombly* and *Iqbal*, a complaint must contain sufficient factual

13

allegations to show that a preferential transfer has occurred such as, for example, by specifically identifying the antecedent debt(s) on account of which the transfers were allegedly made. *Angell v. Haven (In re Careamerica)*, 409 B.R. 346, 350 (Bankr.E.D.N.C. 2009) (a preference complaint must contain sufficient factual allegations to show that a transfer of a debtor's property occurred by identifying which of the debtors made the alleged transfer, and must show that it was plausible that the alleged transfers were made on account of antecedent debt by stating the "nature and amount of the antecedent debt"); *Official Committee of Unsecured Creditors v. Blomen (In re Hydrogen, LLC)*, 431 B.R. 337, 355 (Bankr.S.D.N.Y. 2010) (complaint must allege that transfers were "made for or on account of a specific and identifiable antecedent debt owed by the debtor"); *In re McLaughlin*, 415 B.R. 23, 27 (Bankr.D.N.H. 2009) ("Iqbal requires the pleading to assert facts relating to the nature and amount of the antecedent debt").

DAS's Amended Complaint fails to adhere to the pleading requirements for preference cases because it does not identify the "nature and amount of the antecedent debt." *Id.* Because the transfers identified on the Amended Complaint Exhibit do not correspond in amount to any payments received by Ambrake, the alpha-numeric codes listed on the Amended Complaint Exhibit cannot possibly properly identify antecedent debts on account of which transfers occurred. In other words, DAS's allegation of antecedent debt is not "plausible on its face." *Twombly*, 550 U.S. at 570.

The Amended Complaint also fails to allege any facts demonstrating that DAS was "insolvent" at the time the alleged preferential transfers were made. In the case of a limited liability company, the Bankruptcy Code explicitly defines "insolvent" as a "financial condition such that the sum of such entity's debts is greater than all of such entity's property, at fair market valuation, exclusive of [fraudulently transferred property and exempt property]." 11 U.S.C. §

101(32)(A). DAS has not alleged a single fact showing that the sum of its debts were greater than all of its property at the time the alleged preferential transfers were made. Instead, DAS merely recites that "Plaintiff is presumed to have been, and was in fact, insolvent at the time the Transfers were made." *See*, Exhibit D, ¶ 23. This is the epitome of the "formulaic recitation of [an] element of a cause of action" that *Twombly* held does not satisfy the pleading requirements of Rule 8.

Moreover, DAS cannot plausibly allege that it was insolvent at the time the alleged preferential transfers were made because DAS's schedules, verified under penalty of perjury by an authorized officer, demonstrate that DAS had a book-value positive net worth of more than $2.6 billion at the time it filed for bankruptcy. This figure was confirmed in an amendment of DAS's schedules on April 18, 2006. *See*, Amended Summary of Schedules, attached as **Exhibit H**.[7] The Amended Complaint's naked assertion of insolvency is belied by sworn admissions filed by DAS in the Court's own docket.

Despite the fact that the Court warned the Debtors that the Motion to Amend was at "risk of being turned down" if the Amended Complaint "still isn't good enough," Delphi failed to heed the Court's warning. *See*, Exhibit B at p. 213. Likewise, despite the Court's statement that the

---

[7] The Court can, and should, take judicial notice of DAS's schedules in deciding whether the Amended Complaint states a plausible claim for relief. *See, Official Comm. of Unsecured Creditors v. Blomen (In re Hydrogen, LLC)*, 431 B.R. 337, 345 (Bankr.S.D.N.Y. 2010) (a court may consider matters of which judicial notice may be taken in deciding a 12(b)(6) motion), *citing Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002); *Helig-Meyers Co. v. Wachovia Bank (In re Heilig-Meyers Co.)*, 328 B.R. 471, 489 (E.D. Va. 2005) ("[T]he Court may exercise its discretion to take judicial notice of the bankrupt's schedules in an adversary case arising from the same bankruptcy case."); *LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 196 F.3d 1, 8 (1st Cir. 1999) ("The bankruptcy court appropriately took judicial notice of its own docket [in deciding a 12(b)(6) motion]"); *Cinel v. Connick*, 15 F.3d 1338, 1343 n. 6 (5th Cir. 1994) ("In deciding a 12(b)(6) motion to dismiss, a court may permissibly refer to matters of public record"); *see also, Bryant v. Avado Brands, Inc.*, 187 F.3d 1271 (11th Cir. 1999) (taking judicial notice of SEC filings in deciding a 12(b)(6) motion). Indeed, even if the Amended Complaint had alleged facts to support DAS's statement that it was insolvent when the alleged preferential transfers were made (which it does not), an inquiry under 12(b)(6) requires that "[w]hen there are well-pleaded factual allegations, a court should assure their veracity . . . ." *Iqbal*, 129 S.Ct. at 1950.

"consequences ... are serious enough so I assume that the plaintiffs are going to be pretty careful," DAS carelessly prepared the Amended Complaint (or even worse, its records do not contain sufficient information) such that it still fails to comply with the Rule 8 pleading requirements. *Id*. Because DAS has failed, on its second attempt, to properly plead its claim against Ambrake, the Motion to Amend must be denied.

**B.     The Court Should Deny DAS's Motion To Amend Because Ambrake Would Suffer Undue Prejudice**

An important factor in the Rule 15(a) analysis is whether the opposing party would be prejudiced by the proposed amendment. *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008). DAS urges the Court to focus only on the prejudice suffered by Ambrake as a result of DAS's "mere act of *amending* the Original Complaint[]," and ignore the prejudice suffered by Ambrake in relation "to the filing under seal and delayed service of the *Original Complaints*." Motion to Amend, ¶ 33 (emphasis in original). However, regardless of the point in time when the Court focuses its consideration, Ambrake will be greatly and unduly prejudiced if the Motion to Amend is granted.

Ambrake is a wholly owned subsidiary of Akebono Corporation (North America), which is a majority owned subsidiary of Akebono Brake Industry Co., Ltd. ("Akebono"), a corporation formed and operating under the laws of Japan. *See*, Exhibit G, ¶ 12. Akebono is a public company whose stock is traded on the Tokyo Stock Exchange. *Id*., ¶ 14. Ambrake, through Akebono, is required to publicly disclose (via audited financial statements and otherwise) any claim against that exceeds a certain dollar threshold. *Id*. The $39 million claim asserted in the Original Complaint did not reach the threshold of claims that Ambrake and Akebono were required to publicly disclose. *Id*., ¶ 13. However, the $82 million claim asserted in the Amended Complaint exceeds the threshold amount of claims that Ambrake and Akebono must disclose in

16

their audited financial statements and otherwise. *Id.* Therefore, if DAS is granted leave to file the Amended Complaint, Akebono and Ambrake will be required to publicly disclose the claim in excess of $82 million, thereby potentially negatively impacting Akebono's stock price and market capitalization. *Id.,* ¶ 14. This is true despite the fact that the undisputed evidence demonstrates that ***Ambrake did not receive payments from DAS (or any other Delphi entity) aggregating $82 million within the 90-day preference period as alleged in the Amended Complaint.*** *Id.,* ¶¶ 10-11. Additionally, if sense could ever be made of the additional $43 million of new alleged transfers, the additional sum may warrant Ambrake creating a "reserve" on its books to account for the increased amount. Clearly, therefore, Ambrake will suffer undue prejudice from the "mere act of amending the Original Complaint." As a result, the Court should deny the Motion to Amend.

Moreover, and as detailed in Ambrake's Motion to Dismiss, Ambrake has been prejudiced, and will continue to suffer prejudice, as a result of the manner in which the Debtors obtained the Extension Orders and initiated the prosecution of this adversary proceeding.

The Debtors waited 2 ½ years after they filed the Original Complaint, and 4 ½ years after the transactions took place that are the subject of this proceeding, to provide Ambrake with notice of this proceeding via service of the Original Complaint. Between September, 2007 (when the Original Complaint was filed), and March, 2010 (when the Original Complaint was finally served on Ambrake), the Debtors engaged in negotiations with Ambrake regarding the commercial terms that would govern the parties' business relationship. *See,* Exhibit G, ¶ 3. During this time, Ambrake remained completely unaware of the pending Sealed Adversary Proceeding.[8] *Id.* In short, concealment of the Sealed Adversary Proceeding provided the

---

[8] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in Ambrake's Motion to Dismiss.

Debtors with an advantage in their business dealings with Ambrake that the Debtors would not have enjoyed had Ambrake been aware of the Sealed Adversary Proceeding. *Id*. The Debtors continued to exercise this advantage by maintaining concealment of the Sealed Adversary Proceeding until such time that it was more beneficial to the Debtors to pursue the proceeding (because they no longer needed to continue business negotiations with Ambrake) than to conceal its existence.

Moreover, when Ambrake was not served with the Complaint within the 120-day period after the statute of limitations expired, Ambrake was entitled to expect that no claim would be, or had been, filed against it. Yet, the Debtors then sued Ambrake for over $39 million and are now attempting to sue Ambrake for over $82 million. Ambrake has suffered significant prejudice as a result of justifiably relying upon the fact that the statute of limitations had expired and that the Debtors could not pursue any avoidance actions against it. Such prejudice includes, but is not limited to, the following:

- Ambrake was entitled to consider its potential exposure to liability in making financial decisions. The Debtors' delay deprived Ambrake of that opportunity. *See*, Exhibit G, ¶ 6.

- Because it was unaware of the Debtors' $39 million claim (and now attempted $82 million claim), Ambrake made expenditures during the two and a half-year period since the Debtors' claim expired that it may not have made had this potential liability been taken into account. *See*, Exhibit G, ¶ 6.

- Ambrake also issued financial reports (including audited financial reports) to its owners, lenders, and through Akebono, to the public, that did not disclose this alleged liability because it was unaware of the alleged liability. *See*, Exhibit G, ¶ 7.

- Ambrake did not reserve any of this liability on its books and records. *See*, Exhibit G, ¶ 15.

Furthermore, Ambrake's ability to mount a defense to the Debtors' $39 million claim (and now attempted $82 million claim) has been prejudiced by the Debtors' delay. The Debtors have only one remaining employee – a fact readily admitted by the Debtors in the First Extension

Motion. Thus, some or all of the Debtors' employees that could possibly have had knowledge relating to the purported preferential transfers allegedly received by Ambrake – transfers that allegedly occurred five years ago – are no longer employed by the Debtors. As a result, the Debtors will be unable to produce these former employees for deposition. Moreover, some Ambrake employees who could offer material testimony left the employ of Ambrake between August, 2007 and March, 2010. *See*, Exhibit G, ¶ 8. As courts have recognized, "[e]vidence deteriorates or disappears, memories fade, and witnesses die or move away" imposing a great burden, and constituting extreme prejudice, to defendants such as Ambrake. *Sealed Plaintiff v. Sealed Defendant*, 452 F.3d 415, 418 (5th Cir. 2006).

Indeed, courts regularly recognize that "[f]ailure to use reasonable diligence in serving a summons is more fraught with possibilities of unfairness and abuse than failure to diligently prosecute an action after summons is served." *Richardson v. United White Shipping Co.*, 38 F.R.D. 494, 495-96 (N.D. Cal. 1965) (dismissal where service perfected 28 months after the filing of the action). This is because such delay "affects all the defendant's preparations." *Anderson v. Air West, Inc.*, 542 F.2d 522, 525 (9th Cir. 1976) (dismissal under Rule 41(b) for failure to prosecute because plaintiff failed to serve summons for a year despite entry of order extending service period); *Farhang v. Indian Inst. of Tech.*, 2010 U.S. Dist. LEXIS 53975, at *14-15 (N.D. Cal. 2010) (**Exhibit I**) (delayed service prejudiced defendant "by depriving him of the opportunity to engage in earlier preparation and participation in the suit"); *see also*, *Veazey v. Young's Yacht Sale & Service, Inc.*, 644 F.2d 475, 478 (5th Cir. 1981) (dismissal under Rule 41(b) for failure to serve for nearly 21 months).

In addition, where, as here, a plaintiff files its complaint immediately prior to the running of the statute of limitations and then fails to serve, prejudice to defendants is magnified:

> Once the statute [of limitations] has run, a potential defendant who has not been
> served is entitled to expect that he will no longer have to defend against the claim.
> If service can be delayed indefinitely once the complaint is filed within the
> statutory period, these expectations are defeated and the statute of limitations no
> longer protects defendants from stale claims.

*Anderson*, 542 F.2d at 525; *see also Zapata v. New York,* 502 F.3d 192, 198 (2d Cir. 2007) ("It is

obvious that any defendant would be harmed by a generous extension of the service period

beyond the limitations period for the action, especially if the defendant had no actual notice of

the existence of the complaint until the service period had expired"); *Redding v. Essex Crane*

*Rental Corp. of Alabama*, 752 F.2d 1077, 1078 (5th Cir. 1985) (holding that it was an "obvious

misuse of the judicial process" for a plaintiff to intentionally keep an action secret from the

defendant by choosing to delay service of process).

DAS's actions here are reminiscent of the plaintiff's failure to serve process in *Anderson,*

*supra.* In *Anderson*, the plaintiff filed suit the day before the statute of limitations was due to

run. 542 F.2d at 524. The plaintiff then obtained an *ex parte* order extending indefinitely the

time for serving defendants until he could obtain their addresses through discovery. *Id.* Rather

than proceed with this discovery and diligently pursue service, however, the plaintiff delayed.

*Id.*

When the plaintiff in *Anderson* ultimately did effectuate service – one year later – the trial

court dismissed the action under Fed.R.Civ.P. 41(b), holding that the plaintiff's attorney, like

DAS here, "deliberately delayed, trying to decide whether he really wanted to serve the

[Defendants]." *Id.* at 525. The Ninth Circuit affirmed, stating that:

> The importance of personal service in triggering defense preparation is
> demonstrated by this case, where the defendants did not get together to plan their
> defense until after they had all been served. Plaintiff's assertion that they could,
> and should, have been planning earlier is an attempt to switch the burden of going
> forward with the action to the defendants. The plaintiff cannot in this manner
> escape her responsibility to diligently prosecute the action.

*Id.* at 525.

Here, as in *Anderson*, DAS chose to keep this action a secret for well over two years *after* the statute of limitations expired, adopting a course of action that guaranteed the specific prejudices that statutes of limitations were designed to prevent. DAS should not now be permitted to compound the prejudice already caused by its failure to serve and prosecute the Original Complaint by filing an amended complaint seeking an additional $43 million in damages.

Finally, and again as stated in Ambrake's Motion to Dismiss, the Debtors' prosecution of this adversary proceeding has deprived Ambrake of its due process rights causing Ambrake to suffer undue prejudice. The United States Supreme Court has held that "[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). A "reasonably calculated" notice must "convey the required information" such that a party is put on notice that the relief sought is applicable to *that party. Id.*

By sealing the Original Complaint, the Debtors prevented Ambrake from knowing or discovering that it was a named party in the Sealed Adversary Proceedings. In addition, none of the Debtors' papers reasonably apprised Ambrake of the "pendency of the action" asserted against Ambrake, or otherwise conveyed the "required information" to put Ambrake on notice that its rights may be affected by any one of the Extension Motions. Consequently, the notice provided by the Extension Motions fell woefully short of the notice required by the due process clause of the Fifth Amendment and deprived Ambrake of its due process rights. *Mullane*, 339

21

U.S. at 314.  As a result, Ambrake has been unduly prejudiced by the Debtors' prosecution of the Original Complaint and Ambrake will continue to suffer undue prejudice if the Court allows the filing of the Amended Complaint.  Accordingly, the Court should deny the Debtors' Motion to Amend.

### C.    The Court Should Deny The Motion To Amend For The Reasons Set Forth In Ambrake's Motion To Dismiss

The Court should also deny the Motion to Amend for the additional reasons set forth in Ambrake's Motion to Dismiss, namely:  (1) the Extension Orders should be vacated and, once vacated, the Original Complaint must be dismissed under Fed.R.Civ.P. 4(m) and the Amended Complaint would be barred by the two year statute of limitations set forth at 11 U.S.C. § 546(a); and (2) the proposed Amended Complaint is barred by the doctrines of judicial estoppel, res judicata and laches.

### 1.    The Extension Orders Should be Vacated, Resulting in the Dismissal of the Original Complaint and the Expiration of the Statute of Limitations.

As stated in Ambrake's Motion to Dismiss, the Extension Orders should be vacated because:  (a) the Debtors did not provide "good cause" supporting the Extension Orders; (b) the factors supporting discretionary extension were not present; and (c) the Extension Orders violated Ambrake's right to due process of law.

### a.    The Debtors did not Provide Good Cause Supporting the Extension Orders

Under Fed.R.Civ.P 4(m), courts are authorized to extend the time for service of a summons *only*: (i) upon a showing of "good cause" by plaintiff; or (ii) where the court finds that a discretionary extension of service is appropriate.  *Eastern Refactories Co. v. Forty Eight Insulations, Inc.*, 187 F.R.D. 503, 505-506 (S.D.N.Y. 1999).  Under either alternative, it was the

22

Debtors' burden to establish entitlement to the extensions and where, as here, the delay in service is substantial, this burden is a heavy one to overcome. *Spinale v. United States*, 2005 U.S.Dist.LEXIS 4608 (S.D.N.Y. 2005) **(Exhibit J)**.

A showing of good cause "requires a demonstration of good faith on the part of the party seeking an enlargement and some reasonable basis for noncompliance within the time specified in the rules." *Chiang v. Unites States Small Business Administration*, 331 Fed. Appx. 113, 115 (3d Cir. 2009) (quoting *MCI Telecommunications Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1097 (3d Cir. 1995)). Good cause exists only in "exceptional circumstances where the plaintiff's failure to serve process in a timely manner was the result of circumstances beyond its control." *Eastern Refractories*, 187 F.R.D. at 505. In the event a court should subsequently determine good cause did not exist for an extension of time granted under a previous order, the court may vacate the prior order. *McCrae v. KLLM, Inc.*, 89 Fed. Appx. 361, 363 (3d Cir. 2004).[9]

The Debtors' failure to serve Ambrake within 120 days from the filing of the original Complaint (under seal) was not the result of circumstances beyond its control, such as difficulty in locating Ambrake despite diligent attempts to effect service. Rather, this failure resulted from the Debtors' intentional and strategic decision to conceal the Original Complaint from Ambrake

---

[9] Because the Extension Orders were procedural in nature and did not resolve all of the issues relating to the Adversary Proceeding, they are interlocutory, rather than final, and the Court possesses the discretion to vacate the Extension Orders. *See, In re Hooker Invs., Inc.*, 937 F.2d 833 (2d Cir. 1991); *In re Johns-Manville Corp.*, 824 F.2d 176 (2d Cir. 1987); *In re Adelphia Comms. Corp.*, 333 B.R. 649 (S.D.N.Y. 2005); *United States v. Uccio*, 940 F.2d 753 (2d Cir. 1991); *In re Fugazy Express, Inc.*, 982 F.2d 769, 776 (2d Cir. 1992). However, even if the Extension Orders are deemed to be final rather than interlocutory, the Court must vacate these orders under Fed.R.Civ.P. 60(b) because, as demonstrated in Ambrake's Motion to Dismiss and herein, the Extension Orders violate Ambrake's due process rights. *See, Fustok v. Conticommodity Services, Inc.*, 122 F.R.D. 151, 155 (S.D.N.Y.1988); *Green v. Phillips*, 2010 U.S.App.LEXIS 6130, *2 (2d Cir. 2010) **(Exhibit K)**; *Grace v. Bank Leumi Trust Co. of N.Y.*, 443 F.3d 180, 193 (2d Cir. 2006); *United States v. Castro*, 243 B.R. 380, 383 (D. Ariz. 1999). The Court's statements at the July Hearing that defendants who did not receive notice of the Extension Motions "can argue them as if they were being argued for the first time" is consistent with the fact that previous orders may be vacated upon a subsequent determination that good cause did not exist. *See*, Exhibit B, p. 225.

in order to gain an advantage during the parties' negotiations regarding their ongoing and potential future business relationship.

The Debtors' other stated basis for the extensions – that they did not want to "force all potential defendants to retain counsel to defend against adversary proceedings" – is simply not credible. Had that really been the Debtors' goal, it could have been accomplished without depriving Ambrake of its due process rights by publicly filing the Original Complaint, serving the Original Complaint upon Ambrake, then requesting the Court to stay the proceeding until the proposed plan was confirmed. Ambrake would not have been required to immediately "retain counsel to defend against [the] adversary proceeding" because the proceeding would have been stayed. However, Ambrake would have at least been made aware that it had been sued and it would have had the opportunity to: (1) take steps to preserve evidence, and, more importantly, (2) use this knowledge in any way it saw fit in its negotiations with the Debtors on other matters.

In short, the Debtors failed to establish that good cause – namely, circumstances beyond their control preventing them from serving the Original Complaint on Ambrake within the 120-day period required under Rule 4(m) – ever existed. For this reason, this Court should vacate the Extension Orders. *McCrae*, 89 Fed. Appx. at 363. Once vacated, the Original Complaint must be dismissed pursuant to Fed.R.Civ.P. 4(m), and the filing of the Amended Complaint would be time-barred under 11 U.S.C. § 546(a).

### b. The Factors Supporting Discretionary Extension Were not Present

In the absence of good cause, the Court could exercise its discretion to extend the time for service only upon the consideration of four factors:

(1) whether the statute of limitations would bar the refiled action; (2) whether the defendant had actual notice of the claims asserted in the complaint; (3) whether the defendant had attempted to conceal the defect in service; and (4) whether the

> defendant would be prejudiced by the granting of plaintiff's request for relief from
> the provision.

*Eastern Refractories*, 187 F.R.D. at 506. The Court's discretion is not unlimited and the Court

must weigh these factors before granting the requested extension. *Efaw v. Williams*, 473 F.3d

1038 (9th Cir. 2007) (involving a seven-year delay in effectuating service).

An examination of these factors demonstrates that the time for service should not have

been extended. As demonstrated herein and in its Motion to Dismiss, Ambrake did not have

actual notice of the claims contained in the Original Complaint at the time the Debtors filed their

Extension Motion, and Ambrake has suffered (and will continue to suffer) prejudice as a result of

the Extension Motions and Extension Orders. In addition, Ambrake did not conceal the defect in

the Debtors' service of the Extension Motions. Thus, all three of these factors weigh heavily in

favor of vacating the Extension Orders.

While the fourth factor -- expiration of the statute of limitations – should be considered in

deciding whether to grant an discretionary extension, Rule 4(m) "does not *require* the district

court to extend time for service of process." *Chaing v. United States SBA*, 331 Fed. Appx. 113,

116 quoting *Petrucelli v. Bohringer and Ratzinger*, 46 F.3d 1298, 1306 (3d Cir. 1995). Instead,

a district court may "still dismiss the case, even after considering that the statute of limitations

has run and the refiling of an action is barred." *Id.* Indeed, the delay in effecting service until

after the statute of limitations has expired, in itself, results in actual prejudice to the defendant,

and a delay such as the Debtors' two and a half-year delay "is extremely prejudicial because it

affects all the defendant's preparations." *Sealed Plaintiff*, 452 F.3d at 418. This is because a

defendant, such as Ambrake "is not put on formal notice and allowed a full opportunity to

discover and preserve relevant evidence when the matter is still relatively fresh and the evidence

is intact and available." *Id.*

25

Moreover, "if the statute has run, a potential defendant that has not been served is entitled to expect that it will no longer be required to defend the claim. If service can be delayed indefinitely once the complaint is filed within the statutory period, these expectations are defeated and the statute of limitations no longer protects defendants from stale claims. *Sealed Plaintiff*, 452 F.3d at 418. As demonstrated above, Ambrake was entitled to rely upon, and did rely upon, the fact that the statute of limitations had run in operating its business and making financial, operational and reporting decisions. *See*, Exhibit G, ¶¶ 3-7, 15. Moreover, and also as demonstrated above, Ambrake's ability to mount a defense to DAS's claims has been significantly compromised by the Debtors' delay tactics. To allow the Amended Complaint to proceed in these circumstances would cause Ambrake to suffer extraordinary prejudice.

Simply put, it was the Debtors' burden to establish entitlement to the extensions and this burden was a heavy one due to the very substantial two and a half-year delay in service. Because the Debtors failed to meet this burden, the discretionary grant of extension under Rule 4(m) was inappropriate. As a result, the Extension Orders should be vacated and the Original Complaint dismissed pursuant to Fed.R.Civ.P. 4(m). In this event, the Amended Complaint is time-barred under 11 U.S.C. § 546(a) and DAS's proposed amendment is futile.

### c.  The Extension Orders Violated Ambrake's Right to Due Process of Law

The Extension Orders substantially affected Ambrake's legal rights, as they allowed the Debtors to pursue a preference action two and a half years after Ambrake believed such action was extinguished under the governing statute of limitations. Yet the Extension Orders were entered without adequate notice to Ambrake that its rights would be affected. Consequently, the Extension Orders violate Ambrake's due process rights under the Fifth Amendment to the United States Constitution and must be vacated. *See* U.S. Const. amend. V.

26

As several courts have held, *Mullane*'s "reasonably calculated" standard requires that the notice provided to a party must provide information sufficient to put the party on notice that *its* rights and interests are being affected. In *In re Takeout Taxi Holdings, Inc.*, 307 B.R. 525 (Bankr.E.D.Va. 2004), for example, the chapter 7 trustee filed a motion to sell substantially all property of the bankruptcy estate free and clear of liens pursuant to 11 U.S.C. § 363(f). Williamson, a secured creditor, asserted that he possessed a lien on some of this property. The trustee failed to serve the sale motion on Williamson and, instead, served only the notice of hearing for the motion. The court held that the motion was fatally flawed because of the lack of service on Williamson and other secured creditors.

The *Takeout Taxi* court went on to hold that, even if the motion *had* been served on Williamson, the motion itself did not provide Williamson constitutionally adequate notice that his rights were being affected. *Id.* at 532-533. Notably, the court stated: "***Constitutional due process is not simply satisfied by properly placing a piece of paper in the hands of the respondent. ... The person whose interests are sought to be affected should be identified.***" *Id.* (emphasis added). The court held that a motion "designed for the general creditor body" did not suffice where "[t]he liens in jeopardy were not identified." *Id.*[10]

The Extension Motions failed to provide Ambrake with adequate notice that the relief requested therein implicated Ambrake's rights and failed to provide Ambrake with a meaningful opportunity to defend itself against the Debtors' requested relief. The Due Process Clause "does not create a right to *win* litigation; it creates a right *not to lose* without a fair opportunity to defend oneself." *Lane Hollow Coal Co. v. Director, Office of Workers' Compensation Programs,*

---

[10] *See also In re Hanson*, 58 F.3d 89, 93 (4th Cir. 1995) ("boilerplate language" in a plan was not conspicuous enough, did not identify the secured creditor, and did not alert the secured creditor that it had or may have a lien on the debtor's property, and therefore, did not properly apprise the secured creditor of the "nature of the threat it faced.").

27

137 F.3d 799, 807 (4th Cir. 1998). Under the due process clause, and as demonstrated by authorities such as *Takeout Taxi* and *Lane Hollow*, Ambrake cannot be deprived of its legal rights in this fashion. The Extension Orders must be vacated and, once vacated, the Original Complaint must be dismissed under Fed.R.Civ.P. 4(m) and the Amended Complaint is time-barred under 11 U.S.C. § 546(a).

## 2.   The Amended Complaint is Barred by the Doctrines of Judicial Estoppel, Res Judicata and Laches

Finally, DAS's proposed amendment is also futile because the Amended Complaint is barred by the doctrines of judicial estoppel, res judicata and laches.

### a.   The Amended Complaint is Barred by Judicial Estoppel

The doctrine of judicial estoppel "prevents a party from asserting a factual position in a legal proceeding that is contrary to a position previously taken by [that party] in a prior legal proceeding." *In re Venture Mortgage Fund, L.P.*, 245 B.R. 460, 471 (Bankr.S.D.N.Y.2000), aff'd, 282 F.3d 185 (2d Cir. 2002) (quoting *Bates v. Long Island R.R. Co.*, 997 F.2d 1028, 1037 (2d Cir. 1993)). "The doctrine does not depend upon prejudice to the party invoking it[,]" *Galerie Des Monnaies of Geneva, Ltd. v. Deutsche Bank, A.G.*, 55 B.R. 253, 260 (Bankr.S.D.N.Y. 1986) but is "invoked ... to prevent the party from playing fast and loose with the courts, and to protect the essential integrity of the judicial process." *Rosenshein v. Kleban*, 918 F.Supp. 98, 104 (S.D.N.Y. 1996).

The Second Circuit has made clear that judicial estoppel is properly applied when:  (1) the party against whom estoppel is asserted took an inconsistent position in a prior proceeding; and (2) the first tribunal adopted the inconsistent position in some manner. *Venture Mortgage Fund*, 245 B.R. at 472.

28

In their bankruptcy proceeding, the Debtors repeatedly stated that: (1) they intended to only pursue claims against the Laneko Defendants; and (2) future events would obviate the need to serve the Sealed Adversary Proceedings complaints. The Debtors took this position in Exhibit 7.24 to the Confirmed Plan and reaffirmed this position in the Second and Third Extension Motions. The Court accepted and relied upon these representations when it entered the Extension Orders.

By pursuing its action against Ambrake, the Debtors have taken a position exactly opposite of that which they took in prior motions and which was adopted by the Court when it entered the Extension Orders. Certainly, had the Court known that the Debtors intended to pursue the Sealed Adversary Proceedings even though none of the Unidentified Defendants had been given notice of the sealed complaints nor given adequate notice of the Extension Motions, the Court would not have entered the Extension Orders. The Court should not now allow the Debtors to "play fast and loose" by pursuing claims that they had previously informed the Court they had no intention of pursuing and which they repeatedly affirmed were not subject to the First Extension Order. If judicial estoppel applies anywhere, it applies here.

### b. The Amended Complaint is Barred by Res Judicata

The Amended Complaint is barred by *res judicata* because the Debtors did not adequately describe the adversary proceeding against Ambrake in the Modified Plan so as to preserve such action for the benefit of the estate.

"The confirmation of a bankruptcy plan of reorganization must be accorded res judicata effect … [and] prevents the subsequent assertion of any claim not preserved in the plan as required by § 1123(b)(3)." *In re I. Appel Corp.*, 300 B.R. 564, 568 (Bankr.S.D.N.Y. 2003).

Thus, res judicata ordinarily bars actions that arose prior to confirmation unless such actions are expressly preserved in the confirmed plan.

In order to preserve a claim for pursuit after confirmation, "[t]he identification [of the claim] must not only be express, but also the claim must be specific. A blanket reservation that seeks to reserve all causes of action reserves nothing. To hold otherwise would eviscerate the finality of a bankruptcy plan containing such a reservation, a result at odds with the very purpose of a confirmed bankruptcy plan." *D&K Properties Crystal Lake v. Mutual Life Insurance Co. of New York*, 112 F.3d 257, 260 (7th Cir. 1997).

On Exhibit 7.24 to the Confirmed Plan, the Debtors identified only the claims against the Laneko Defendants as causes of action they intended to preserve for the benefit of the bankruptcy estate. Thus, the Debtors did not preserve the Sealed Adversary Proceeding against Ambrake under the provisions of the Confirmed Plan. It was not until the Debtors filed the Supplement To Plan Modification Approval Motion on July 2, 2009, and attached Exhibit 7.19 (which purportedly replaced Exhibit 7.24 to the Confirmed Plan) that the Debtors first attempted to disclose that they intended to pursue preference avoidance actions. However, Exhibit 7.19 did not identify the particular Unidentified Defendants against whom adversary proceedings would be pursued or the magnitude of the purported claims that would be asserted against them. Instead, it consisted of nothing more than a list of proceeding numbers. However, because all pleadings relating to the Sealed Adversary Proceedings had been sealed, it was impossible for Ambrake to ascertain any information except the adversary proceeding numbers. The only information provided, in other words, was meaningless.

The type of blanket reservation of causes of action that the Debtors attempted in the Supplement to Plan Modification Approval Motion is insufficient to avoid the *res judicata* effect

30

of the Confirmed Plan. In *Browning v. Levy*, 283 F.3d 761, 764 (6th Cir. 2002), the Sixth Circuit explained that "a blanket reservation was of little value to the bankruptcy court and the other parties to the bankruptcy proceeding because it did not enable the value of [the debtor's] claims to be taken into account in the disposition of the debtor's estate." Therefore, the *Browning* court held that res judicata applied and prohibited the pursuit of actions that were neither specifically named nor described in a blanket reservation. *Id.* The Court should reach the same result here.

### c.    The Amended Complaint is Barred by Laches

A complaint is barred by laches if: (1) the defendant lacked knowledge that the claim might be asserted against it; (2) plaintiff delayed in asserting the claim despite an opportunity to do so; and (3) defendant will be prejudiced if the claim is now allowed to go forward. *In re Gucci,* 197 Fed.Appx. 58, 60 (2d Cir. 2006); *Rapf v. Suffolk City*, 755 F.2d 282, 292 (2d Cir. 1985).

As shown above, the Complaint was concealed from Ambrake well beyond the expiration of the statute of limitations and Ambrake had no knowledge that the Debtors would assert a claim against it. Further, despite having numerous opportunities to openly assert their claim, the Debtors intentionally delayed service of the Complaint for 2 ½ years after it was filed. Indeed, by the time they filed the Third Extension Motion, the Debtors knew that they would pursue the Sealed Adversary Proceedings because the Plan would not be funded and the Confirmed Plan would not become effective. Nonetheless, instead of specifically identifying Ambrake and the other Unidentified Defendants by name in Exhibit 7.19 to the Third Extension Motion, the Modified Plan and the Fourth Extension Motion, the Debtors "delayed in asserting [their] claim" by continuing to keep the identities of the defendants secret.

Finally, as demonstrated above and in its Motion to Dismiss, Ambrake has been severely prejudiced by the Debtors' concealment of the Adversary Proceeding. Accordingly, the Amended Complaint is barred by the equitable doctrine of laches and the Motion to Amend should be denied.

**D.     Ambrake Incorporates Other Defendants' Briefs**

Ambrake incorporates all meritorious legal arguments raised by the other preference defendants in opposition to the Motion to Amend.

## IV.     CONCLUSION

For the foregoing reasons, Ambrake respectfully requests the Court to deny the Debtors' Motion to Amend.

Respectfully submitted,

DICKINSON WRIGHT PLLC

By: /s/ Michael C. Hammer
Michael C. Hammer (*pro hac vice*)
Dawn R. Copley (*pro hac vice*)
301 East Liberty, Suite 500
Ann Arbor, Michigan 48104-2266
(734) 623-7075
Attorneys for Ambrake Corporation

Dated:  November 24, 2010

DETROIT 22441-59 1180226v12

32