# EXHIBIT G

BUTZEL LONG, PC
Attorneys for the Reorganized Debtors
22nd Floor, 380 Madison Avenue
New York, New York 10017
(212) 818-1110
Eric B. Fisher
Cynthia J. Haffey

DICKINSON WRIGHT PLLC
Attorneys for Ambrake Corporation
301 East Liberty, Suite 500
Ann Arbor, Michigan 48104-2266
(734) 623-7075
Michael C. Hammer (MI-P41705) (pro hac vice)
Dawn R. Copley (MI-P53343) (pro hac vice)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| DPH HOLDINGS CORP., *et al*, | : | Case No. 05-44481 (RDD) |
| | : | |
| Reorganized Debtors. | : | (Jointly Administered) |
| | : | |

------------------------------------------------------- x

| | | |
|---|---|---|
| DELPHI CORPORATION, *et al.*, | : | |
| | : | |
| Plaintiffs, | : | Adv. Pro. No. 07-02201-rdd |
| v. | : | |
| | : | |
| AMBRAKE CORPORATION and | : | |
| AMBRAKE CORP., | : | |
| | : | |
| Defendants. | : | |
| | : | |

------------------------------------------------------- x

## AFFIDAVIT OF DOUG MORGAN IN SUPPORT OF AMBRAKE CORPORATION'S BRIEF IN OPPOSITION TO REORGANIZED DEBTORS' MOTION FOR LEAVE TO FILE AMENDED COMPLAINTS

STATE OF KENTUCKY      )
                                          )SS
COUNTY OF HARDIN       )

DOUG MORGAN, being first duly sworn, deposes and says as follows:

1.      I am currently employed as Plant Manager by Ambrake Corporation ("Ambrake"). I am a legally competent adult and I am not a party to this proceeding. I make this Affidavit based upon my personal knowledge and upon my review of documents and records maintained by Ambrake in the ordinary course of its business. If called upon to do so, I am competent to testify to the matters contained herein in open court.

### The Harm Suffered By Ambrake As A Result Of
### Not Being Aware That The Original Complaint Had Been Filed

2.      From 1989 to 2009, Ambrake conducted business with Delphi Corporation and certain of its affiliates (collectively, "Delphi"). The business that Ambrake conducted with Delphi consisted primarily of producing automotive component parts and delivering such parts to Delphi pursuant to contracts, purchase orders and supply agreements exchanged between Ambrake and Delphi.

3.      Between September, 2007 (when the Original Complaint[1] was filed), and March, 2010 (when the Original Complaint was finally served on Ambrake), the Debtors engaged in negotiations with Ambrake regarding the commercial terms that would govern the parties' business relationship. During this time, Ambrake remained completely unaware of the pending adversary proceeding that the Debtors had filed against Ambrake. This provided the Debtors with an advantage in their business dealings with Ambrake that the Debtors would not have enjoyed had Ambrake been aware of the Sealed Adversary Proceeding

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in Ambrake's Brief in Opposition to Reorganized Debtors' Motion for Leave to File Amended Complaints.

4.    In March 2010, Ambrake learned, for the first time, that it had been sued for recovery of alleged preferential transfers in excess of $39 million when it was served with the Original Complaint in Delphi's bankruptcy proceeding.

5.    Between August, 2007 and March, 2010, Ambrake made certain financial decisions and took certain actions without the benefit of knowing that it had been sued by the Debtors for over $39 million.

6.    Because it was unaware of the Debtors' $39 million claim (and now attempted $82 million claim), Ambrake made expenditures during the two and a half-year period since the Debtors' claim expired that it may not have made had this potential liability been taken into account.

7.    Because it did not know that the Original Complaint had been filed, between August, 2007 and March, 2010, Ambrake issued financial reports, including audited financial statements, to its owners, lenders and the public (through its ultimate corporate parent, Akebono Brake Industry Co., Ltd. ("Akebono")) that did not disclose the liability alleged in the Original Complaint.

8.    Ambrake employees who could offer material testimony left the employ of Ambrake between August, 2007 and March, 2010.

## Ambrake Did Not Receive The Transfers Alleged On The Amended Complaint Exhibit

9.    I have reviewed the proposed Amended Complaint (the "Amended Complaint") that is attached o the Reorganized Debtors' Motion for Leave to File Amended Complaints and Exhibit 1 (the "Amended Complaint Exhibit") that is attached to the Amended Complaint.

3

10.    None of the transfers identified on the Amended Complaint Exhibit correspond in amount to any payments received by Ambrake from any Delphi entity, or collection of entities, between July 10, 2005 and October 8, 2005 (the "Preference Period").

11.    Ambrake did not receive payments aggregating $82,134,109.82 (or any similar amount) from any Delphi entity, or collection of entities, during the Preference Period.

### Harm Suffered By Ambrake If Amended Complaint Is Filed

12.    Ambrake is a wholly owned subsidiary of Akebono Corporation (North America), which is a majority owned subsidiary of Akebono, a corporation formed and operating under the laws of Japan. Ambrake and Akebono are required to publicly disclose (via their audited financial statements and otherwise) any claim against them that exceeds a certain threshold dollar amount.

13.    The $39 million claim asserted in the Original Complaint did not reach the threshold of claims that Akebono (and Ambrake through consolidated reporting) was required to publicly disclose. However, the $82 million claim asserted in the Amended Complaint exceeds the threshold amount of claims that Akebono (and Ambrake through consolidated reporting) must publicly disclose.

14.    Because Akebono is a publicly traded company on the Tokyo Stock Exchange, the disclosure of DAS's $82 million claim may harm Akebono's stock price and market capitalization.

15.    Additionally, if Ambrake had discovered either the $39.1 million claim or $82.1 million claim in 2007 and been provided with sufficient information (which to date it has not), Ambrake may have been required to reserve the potential liability on its books and records.

4

FURTHER AFFIANT SAYETH NAUGHT

_Laura Howard, Commission expires 2-1-13_

Sworn to and subscribed before me
this 24th day of November, 2010
Laura Howard, Notary Public
State of Kentucky
Acting in Hardin County

5