# EXHIBIT J



LEXSEE 2005 US DIST LEXIS 4608

**ANTHONY SPINALE and G&T TERMINAL PACKAGING CO., INC., Plaintiffs, - against - UNITED STATES, ANN M. VENEMAN, SECRETARY OF AGRICULTURE, UNITED STATES DEPARTMENT OF AGRICULTURE, DAVID L. BALL, WILLIAM CASHIN, PAUL I. CUTLER, EDMUND R. ESPOSITO, GLENN A. JONES, ELIAS MALAVET, MICHAEL STRUSIAK, MICHAEL TSAMIS and THOMAS VINCENT, Defendants.**

03 Civ. 1704 (KMW)(JCF)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

**2005 U.S. Dist. LEXIS 4608**

**March 16, 2005, Decided**

**PRIOR HISTORY:** Spinale v. United States, 2004 U.S. Dist. LEXIS 238 (S.D.N.Y., Jan. 9, 2004)

**DISPOSITION:** Magistrate recommended that defendant's motion to dismiss be granted and plaintiff's motions for extension of time, to disqualify defendant's counsel and to amend complaint be denied.

**COUNSEL:** [*1] For ANTHONY SPINALE and G&T TERMINAL PACKAGING CO., INC., Plaintiffs: Linda Strumpf, New York, NY; Stephen E. Karsch, New York, NY.

For WILLIAM CASHIN, Defendant: Elizabeth Wolstein, U.S. Attorney's Office, SDNY, New York, NY.

For PAUL I. CUTLER, Defendant, Pro se, Bronx, NY.

For ELIAS MALAVET, Defendant: Jonathan Marks, Jonathan Marks P.C., New York, NY.

**JUDGES:** JAMES C. FRANCIS IV, UNITED STATES MAGISTRATE JUDGE. HONORABLE KIMBA M. WOOD, U.S.D.J.

**OPINION BY:** JAMES C. FRANCIS IV

**OPINION**

*REPORT AND RECOMMENDATION*

TO THE HONORABLE KIMBA M. WOOD, U.S.D.J.:

G&T Terminal Packaging Co., Inc. ("G&T") and its president, Anthony Spinale, bring this action pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* One of the named defendants, William Cashin, now moves pursuant to Rule 12(b)(5) of the Federal Rules of Civil Procedure to dismiss the claims against him on the ground that he was not served within 120 days of the filing of the complaint as required by Rule 4(m). Mr. Cashin also moves to [*2] dismiss on the basis that the claims against him are barred by sovereign immunity. The plaintiffs have opposed the motion to dismiss and have cross-moved for an order extending the time to effect service *nunc pro tunc.* The plaintiffs further request that Mr. Cashin's counsel be disqualified and that they be permitted to amend their claims against Mr. Cashin.

For the reasons set forth below, I recommend that the claims against Mr. Cashin be dismissed without prejudice for failure to make timely service and that the plaintiffs' motion to extend the time to effect service, their motion to disqualify Mr. Cashin's counsel, and their motion to amend the complaint be denied.

*Background*

The facts underlying this action are set forth in detail in my prior Report and Recommendation dated January 9, 2004 (the "R&R") and will be summarized here only to the extent necessary to address the instant motions. G&T is a produce dealer that purchases potatoes and resells them to wholesalers and retailers or packages them for sale to consumers. (Complaint ("Compl.") P 29). Mr. Spinale was its president and sole shareholder during the period relevant to this action. (Compl. P 31). G&T operates [*3] at the Hunts Point Terminal Market in the Bronx where, in the late 1990's, federal authorities conducted an investigation into the solicitation of bribes by employees of the United States Department of Agriculture (the "USDA") who were responsible for inspecting and grading produce. (Compl. P 29, Declaration of Ivan T. Barr, dated Aug. 27, 2004 ("Barr Decl."), Exh. 1). In the course of that investigation, it was determined that William Cashin, one such inspector, had been receiving bribes. Mr. Cashin subsequently became a confidential informant for the government and, in that capacity, gathered evidence against Mr. Spinale and others. As a result, Mr. Spinale was indicted and later pled guilty to bribing a public official in violation of 18 U.S.C. § 201(b)(2). (Barr Decl., Exh. 1, 2).

On March 12, 2003, the plaintiffs filed the instant action against the United States, the USDA, the Secretary of Agriculture, and nine USDA inspectors, including Mr. Cashin. The individual inspector defendants are alleged to have engaged in racketeering by extorting bribes from the plaintiffs and other produce distributors in return for fair and accurate inspections.[1] By April 24, 2003, seven [*4] of the nine inspector defendants had been served with the summons and complaint. Mr. Cashin was not served until May 29, 2004, and the remaining defendant was served on June 24, 2004.

1    All claims against the governmental defendants were dismissed on March 31, 2004.

Mr. Cashin now moves to dismiss the claims against him for failure to serve the complaint in a timely fashion as required by Rule 4(m). In response, the plaintiffs claim that they made numerous attempts to serve Mr. Cashin during the 14-month period following the filing of the complaint but were unsuccessful because the government concealed Mr. Cashin's whereabouts. (Plaintiffs' Memorandum of Law in Opposition to the Motion to Dismiss of Defendant William Cashin and in Support of Plaintiffs' Cross-Motion ("Pl. Memo.") at 15-16; Plaintiffs' Reply Memorandum of Law at 2). The plaintiffs rely, for example, on transcripts of a December 2002 USDA disciplinary hearing during which an administrative law judge refused to compel [*5] disclosure of Mr. Cashin's address. (Reply Affirmation of Linda Strumpf dated Nov. 16, 2004 ("Strumpf Reply Aff."), Exh. B).

The plaintiffs also submit deposition testimony from September 2004, in which counsel for Mr. Cashin stated that his client's safety was still a matter of concern at that time. (Strumpf Reply Aff., Exh. C). The plaintiffs eventually served Mr. Cashin after finding him by means of a "people locate" software program. ("Pl. Memo. at 16). They oppose Mr. Cashin's motion and cross-move for an order retroactively extending their time to serve the complaint.

The plaintiffs also seek to disqualify the government from representing Mr. Cashin in these proceedings. Because resolution of this question could require Mr. Cashin to obtain new counsel before litigating the remaining issues, I will address it first.

*Discussion*

A. *Disqualification of Counsel*

The plaintiffs argue that the government should be disqualified from representing Mr. Cashin because he was not acting in the interests of the United States when he was engaging in the activity which gave rise to the present cause of action, namely taking bribes. (Pl. Memo. at 5-8, 22). But the determination [*6] to represent Mr. Cashin stems from his cooperation agreement with the government, and the provision of representation under such circumstances is within the government's discretion.

The Attorney General is authorized to assign an officer of the Department of Justice to attend to the interests of the United States in a state or federal court. 28 U.S.C. §§ 516-518. The Attorney General has broad discretion in defining the "interests of the United States." *See Booth v. Fletcher*, 69 App. D.C. 351, 101 F.2d 676, 681 (D.C. Cir. 1938); *see also Hall v. Clinton*, 350 U.S. App. D.C. 422, 285 F.3d 74, 79 (D.C. Cir. 2002) (holding that Attorney General's determination is binding unless arbitrary and capricious). This authority extends to representing private citizens in civil suits subsequent to criminal litigation in which the individual was a witness for the government. *Brawer v. Horowitz*, 535 F.2d 830, 834 (3d Cir. 1976). Accordingly, there is no merit to the plaintiffs' disqualification motion, and it should be denied.

B. *Service*

The Federal Rules of Civil Procedure require that a plaintiff complete [*7] service "within 120 days after the filing of the complaint[.]" Fed. R. Civ. P. 4(m). If service is not made within the 120-day time period, "the court, upon motion . . . shall dismiss the action without prejudice as to that defendant[.]" *Id.* The 120-day limit may be extended, however, if the plaintiff meets the

standard for a good cause extension or the court exercises its discretionary authority to extend the deadline. The language of Rule 4(m) itself establishes the authority for a good cause extension: "provided . . . the plaintiff shows good cause for the failure [to effect service within 120 days], the court shall extend the time for service for an appropriate period." *See Eastern Refractories Co. v. Forty Eight Insulations, Inc.*, 187 F.R.D. 503, 505 (S.D.N.Y. 1999); *Gordon v. Hunt*, 116 F.R.D. 313, 319 (S.D.N.Y. 1987) (interpreting predecessor to Rule 4(m)). Additional discretionary authority was created by the 1993 amendment to Rule 4(m), which authorized courts to "direct that service be effected within a specified [*8] time[.]" *See Mejia v. Castle Hotel, Inc.*, 164 F.R.D. 343, 345 (S.D.N.Y. 1996). The Advisory Committee Notes to the rule state that courts may now "relieve a plaintiff of the consequences of an application of [Rule 4(m)] even if there is no good cause shown." Fed. R. Civ. P. 4(m) advisory committee's note (1993 amendments).

*. Good Cause Extension*

In order to establish good cause for failure to effect service in a timely manner, a plaintiff must demonstrate that despite diligent attempts, service could not be made due to exceptional circumstances beyond his or her control. *See Eastern Refractories*, 187 F.R.D. at 505; *McKibben v. Credit Lyonnais*, 1999 U.S. Dist. LEXIS 12310, No. 98 Civ. 3358, 1999 WL 604883, at *3 (S.D.N.Y. Aug. 10, 1999) ("Good cause or excusable neglect is generally found only in exceptional circumstances where plaintiff's failure to serve process in a timely manner was the result of circumstances beyond his control."). Even then, the extension may be denied if it would cause undue prejudice to the defendant. *Eastern Refractories*, 187 F.R.D. at 505 [*9] .

A party seeking a good cause extension bears a heavy burden of proof. *See Geller v. Newell*, 602 F. Supp. 501, 502 (S.D.N.Y. 1984). Good cause may not be based only on a showing that the plaintiff encountered some unanticipated difficulty. *See McKibben*, 1999 U.S. Dist. LEXIS 12310, 1999 WL 604883, at *3-4 (good cause denied where plaintiff failed to notice that private process server changed name of defendant on return of service). Similarly, inadvertence or neglect is not a valid basis for a good cause extension. *See McGregor v. United States*, 933 F.2d 156, 159-60 (2d Cir. 1991) (trial court did not abuse discretion by denying good cause based on attorney neglect); *Zankel v. United States*, 921 F.2d 432, 436 (2d Cir. 1990) ("a judge is certainly not required to treat inadvertence or ignorance of the Rules as 'good cause' or 'excusable neglect' for delay in service"); *Mejia*, 164 F.R.D. at 345 (good cause denied where plaintiff's counsel inadvertently served administrative, rather than federal court, complaint).

Here, no good cause extension is warranted because the plaintiffs have not [*10] presented sufficient evidence either of their diligence or of exceptional circumstances beyond their control. Presumably as evidence of exceptional circumstances, the plaintiffs point to the fact that Mr. Cashin did not divulge his address in response to the plaintiffs' informal requests. But that argument ignores the fact that the plaintiffs could have sought his whereabouts through a formal interrogatory directed to the government defendants. Furthermore, it is noteworthy that the plaintiffs made no effort to request an extension until they responded to Mr. Cashin's motion, more than ten months after the deadline for service had passed. While the government may indeed have been reluctant to reveal Mr. Cashin's location, the plaintiffs simply made inadequate attempts to overcome that obstacle. The failure of service is due not to extraordinary circumstances, but to neglect.

To be sure, the consequence of denying an extension of the service deadline may be to preclude the plaintiffs from pursuing their claims against Mr. Cashin, since the statute of limitations may now have run. However, where the party seeking an extension has failed to meet its burden, dismissal is appropriate [*11] even if the practical effect is to bar the plaintiff's claim. *See Frasca v. United States*, 921 F.2d 450, 453 (2d Cir. 1990).

*2. Discretionary Extension*

The plaintiffs also argue that, if a good cause extension is denied, the Court should nevertheless grant a discretionary extension. In deciding whether to grant such an extension, courts balance justifiable excuses offered by the plaintiff, the length of the delay, and any prejudice to either party. *See Eastern Refractories*, 187 F.R.D. at 506 (factors to consider in granting discretionary extension include any evasive behavior by defendant, notice and prejudice to defendant, and whether claim would be barred).

As in a good cause inquiry, a discretionary extension analysis begins with an examination of exceptional circumstances that might have obstructed a plaintiff's diligent attempts at service. *See id.* at 506 ("Generally, when courts consider granting an extension of time notwithstanding a lack of good cause, they are considering motions made by plaintiffs prior to the expiration of the 120-day period."). The burden of proving exceptional circumstances is lower [*12] for discretionary extensions than for those based on good cause. Courts in this district have granted discretionary extensions where the service failure was due to inadvertence and the plaintiff otherwise displayed due diligence. *See Mejia*, 164 F.R.D. at 346 (upon return from vacation, counsel for plaintiff discovered, and quickly resolved, service defect resulting from process server error). However, courts have refused

to find justifiable excuse when the plaintiff's neglect and inadvertence are unaccompanied by a diligent effort to identify and remedy the service defect quickly. *See McKibben*, 1999 U.S. Dist. LEXIS 12310, 1999 WL 604883, at *3 ("Where it is apparent that an attorney's ignorance, inadvertence, or 'misplaced reliance' promulgated the failure to serve process, courts have shown no leniency."). Additionally, claims of justifiable excuse have been rejected when based on an error in strategy by the plaintiff's counsel. *See Eastern Refractories*, 187 F.R.D. at 504-05 (denying discretionary extension despite crediting fact that delay was due to plaintiff's difficulty in deciding where to seek contribution).

[*13] The burden of proving exceptional circumstances is higher where the delay in service is substantial. *See Buckley v. Doha Bank Ltd.*, 2002 U.S. Dist. LEXIS 13769, No. 01 Civ. 8865, 2002 WL 1751372, at *3 (S.D.N.Y. July 25, 2002) (inadvertent delay of one week "stands in stark contrast to cases in this district where judges have chosen not to exercise this discretionary remedy because plaintiff had still not served for seven or more months after filing at the time defendant moved for dismissal"). Accordingly, courts are less likely to forgive inadvertence or neglect in the face of extended delay. *Id.*; *McKibben*, 1999 U.S. Dist. LEXIS 12310, 1999 WL 604883, at *12 (extension denied where substantial delay and "plaintiff has presented no circumstances that made service difficult or that could not have been overcome by the exercise of due diligence").

In this case, the plaintiffs' negligence compels denial of any discretionary extension. While plaintiffs' counsel represents that she "employed various 'people locate' services without success" in her efforts to find Mr. Cashin (Affidavit of Linda Strumpf dated Sept. 29, 2004, P 2), she provies no details [*14] as to the specific programs utilized or when any such search was conducted. Nor has she explained how she was ultimately able to locate the defendant using just such a program. Significantly, the plaintiffs never sought the assistance of the Court or even an extension of time to effect service. In this context, the fact that the plaintiffs' claims may be barred does not tip the balance in their favor. *See Frasca*, 921 F.2d at 453; *Eastern Refractories*, 187 F.R.D. at 506 ("The fact that plaintiff's claims may be time-barred does not require us to exercise our discretion in favor of plaintiff."). And, while the fact that Mr. Cashin received actual notice of the litigation some time ago may preclude him from arguing that he would suffer prejudice, it does not militate in favor of granting an extension. *See McKibben*, 1999 U.S. Dist. LEXIS 12310, 1999 WL 604883, at *3 ("It is an established concept of law that actual notice is not curative of faulty service of process".).

*Conclusion*

For the forgoing reasons, Mr. Cashin's motion to dismiss the complaint for failure to make timely service should be granted, [2] and the plaintiffs' [*15] cross-motion for an extension of time for service, for an order disqualifying Mr. Cashin's counsel, and for leave to amend the complaint should be denied. [3] Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(e) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days to file written objections to this report and recommendation. Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Kimba M. Wood, Room 1610, and to the chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007. Failure to file timely objections will preclude appellate review.

> 2  In light of this conclusion, there is no need to address Mr. Cashin's sovereign immunity argument.
>
> 3  The cross-motion to amend the complaint is moot because the proposed amendment relates only to claims against Mr. Cashin.

Respectfully [*16] submitted,

JAMES C. FRANCIS IV

UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York

March 16, 2005