Warner Norcross & Judd LLP
900 Fifth Third Center
111 Lyon Street, NW
Grand Rapids, MI  49503-2487
(616) 752-2000 phone
(616) 222-2500 fax

Gordon J. Toering (GT-3738)
(Admitted *Pro Hac Vice*)
Michael B. O'Neal (MO-9511)
(Admitted *Pro Hac Vice*)
Attorneys for Robert Bosch LLC

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                                      :
        In re                    :       Chapter 11
                                                      :
DELPHI CORPORATION, et al.,     :       Case No. 05-44481 (RDD)
                                                      :
                                                      :       (Jointly Administered)
           Reorganized Debtors,  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                                      :
DELPHI AUTOMOTIVE SYSTEMS, LLC  :
                                                      :
             Plaintiff,     :
                                                      :
v.                        :       Adv. Proc. No. 07-02800-[RDD]
                                                      :
ROBERT BOSCH CORPORATION d/b/a :
BOSCH, ROBERT BOSCH, LLC d/b/a  :
BOSCH BRAKING SYSTEMS CORP.,   :
                                                      :
           Defendants.    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - -x

# EXHIBIT F

### TO

**ROBERT BOSCH LLC'S MEMORANDUM OF LAW IN OPPOSITION TO
REORGANIZED DEBTORS' MOTION FOR LEAVE TO FILE AMENDED
COMPLAINT**

**Hearing Scheduled:  July 22, 2010 at 10:00 a.m.**
**Objection Deadline:  June 7, 2010 at 4:00 p.m.**

Warner Norcross & Judd LLP
900 Fifth Third Center
111 Lyon Street, NW
Grand Rapids, MI  49503-2487
(616) 752-2000 phone
(616) 222-2500 fax

Gordon J. Toering (GT-3738)
(Admitted *Pro Hac Vice*)
Michael B. O'Neal (MO-9511)
(*Pro Hac Vice* Pending)
Attorneys for Robert Bosch GmbH
and Robert Bosch LLC

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
|                                    :                        |
| In re                              :    Chapter 11          |
|                                    :                        |
| DELPHI CORPORATION, <u>et al.</u>, :    Case No. 05-44481 (RDD) |
|                                    :                        |
|                                    :    (Jointly Administered) |
|                        Debtors.    :                        |
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
|                                    :                        |
| DELPHI CORPORATION, et. al.        :                        |
|                                    :                        |
|                        Plaintiff,  :                        |
|                                    :                        |
| v.                                 :    Adv. Proc. No. 07-02800-rdd |
|                                    :                        |
| BOSCH and ROBERT BOSCH GMBH,       :                        |
|                                    :                        |
|                        Defendants. :                        |
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**ROBERT BOSCH GMBH AND ROBERT BOSCH LLC'S MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION TO (A) VACATE CERTAIN PRIOR ORDERS OF
THE COURT; (B) DISMISS THE ADVERSARY PROCEEDING COMPLAINT WITH
PREJUDICE; AND (C) DISMISS THE CLAIMS AGAINST A CERTAIN DEFENDANT
("BOSCH") NAMED IN THE COMPLAINT; OR (D) IN THE ALTERNATIVE,
REQUIRE PLAINTIFFS TO FILE A MORE DEFINITE STATEMENT**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES.................................................................................................iii

PRELIMINARY STATEMENT .........................................................................................1

STATEMENT OF FACTS...................................................................................................3

        A.     Debtors Failed to Provide Defendants Notice of the Preservation of Estate
             Claims Procedures Motion or Any of the Extension Motions...................4

             1.     Debtors' Preservation of Estate Claims Procedures Motion..........4

             2.     Debtors Commence an Adversary Proceeding Against Bosch
                   GmbH and "Bosch" ....................................................................5

             3.     The First Amended Joint Plan of Reorganization ........................6

             4.     Debtors' Second Extension of Avoidance Action Service Deadline
                   Motion.......................................................................................6

              5.     Debtors' Third Extension of Avoidance Action Service Deadline
                   Motion.......................................................................................7

              6.     Debtors' Fourth Extension of Avoidance Action Service Deadline
                   Motion.......................................................................................9

              7.     Debtors' Fifth Extension of Avoidance Action Service Deadline
                   Motion.....................................................................................10

         B.     Service of Process on Defendants .........................................................10

ARGUMENT ...................................................................................................................11

     I.     EACH OF THE PROCEDURES ORDER AND EXTENSION ORDERS
          SHOULD BE VACATED AS TO DEFENDANTS AS VOID ON THE
          GROUNDS THEY WERE ENTERED WITHOUT DEFENDANTS HAVING
          NOTICE AND AN OPPORTUNITY TO RESPOND IN VIOLATION OF
          DEFENDANTS' FUNDAMENTAL DUE PROCESS RIGHTS. .......................11

         A.     Standard For Vacating Interlocutory Orders ..........................................11

         B.     Enforcing the Procedure Order and Extension Orders Would Violate Due
             Process Because Defendants Were Not Given Meaningful Notice ..........13

     II.     THE COMPLAINT SHOULD BE DISMISSED BECAUSE IT IS BARRED BY
          THE TWO YEAR STATUTE OF LIMITATIONS FOR AVOIDANCE
          ACTIONS..................................................................................................17

i

III.    FOREIGN CLAIMS SHOULD BE DISMISSED AS ABANDONED. ..............21

IV.    THE COMPLAINT IS BARRED BY JUDICIAL ESTOPPEL. .........................24

V.    THE COMPLAINT IS BARRED BY RES JUDICATA. ...................................26

VI.    THE COMPLAINT IS BARRED BY LACHES. ................................................28

VII.    THE PROCEDURES ORDER AND EXTENSION ORDERS SHOULD BE
VACATED FOR ADDITIONAL REASONS. ...................................................29

    A.    The Procedures Order and Extension Orders Should Be Vacated Because
There Was No Cause To Extend The Time For Service .........................29

        1.    "Good Cause" Did Not Exist ......................................................29

        2.    The Facts Did Not Warrant A Discretionary Extension ..............31

    B.    The Extension Orders Should Be Vacated Because The Complaints Were
Improperly Sealed ..................................................................................33

VIII.    THE COMPLAINT FAILS TO PLEAD FACTS SUFFICIENT TO STATE A
CLAIM FOR RELIEF AND SHOULD BE DISMISSED. ................................36

IX.    IN THE ALTERNATIVE, DEBTORS SHOULD BE REQUIRED TO FILE A
MORE DEFINITE STATEMENT ...................................................................39

X.    THE COMPLAINT SHOULD BE DISMISSED AS TO ENTITIES WHICH DO
NOT EXIST ....................................................................................................40

CONCLUSION ....................................................................................................................40

## TABLE OF AUTHORITIES

**Federal Cases**

*Air Line Pilots Ass'n Int'l v. Am. Nat'l Bank and Trust Co. (In re Ionosphere Clubs)*,
    156 B.R. 414 n.7 (S.D.N.Y. 1993) ........................................................................ 34

*Ashcroft v. Iqbal*,
    129 S.Ct. 1937 (2009) ............................................................................... 3, 37

*Bank of Cape Verde v. Bronson*,
    167 F.R.D. 370 (S.D.N.Y. 1996) ......................................................................... 30

*Barcia v. Sitkin*,
    367 F.3d 87 (2d Cir. 2004) .................................................................................. 14

*Bd. of Regents v. Tomanio*,
    446 U.S. 478 (1980) ........................................................................................... 32

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ...................................................................................... 37, 38

*Browning v. Levy*,
    283 F.3d 761 (6th Cir. 2002) .............................................................................. 28

*Burks v. Griffith*,
    100 F.R.D. 491 (N.D.N.Y. 1984) ........................................................................ 19

*Burnett v. N.Y. Cent. R.R. Co.*,
    380 U.S. 424 (1965) ........................................................................................... 20

*In re Chartschlaa*,
    538 F.3d 116 (2d Cir. 2008) ................................................................................ 23

*City of New York v. New York, N.H. & H. R.R. Co.*,
    344 U.S. 293 (1953) ...................................................................................... 14, 16

*Conticommodity Services, Inc.*,
    122 F.R.D. 151 (S.D.N.Y. 1988) ........................................................................ 13

*Diversified Hospitality Group, Inc. v. Carson Pirie Scott & Co.*,
    No 90 CIV 2957 (WK), 1991 WL 35953 (S.D.N.Y. Mar. 8, 1991) ..................... 20

*Eastern Refractories Co. v. Forty Eight Insulations, Inc.*,
    187 F.R.D. 503 (S.D.N.Y. 1999) ......................................................... 29, 30, 31, 32

*Family Golf Ctrs., Inc. v. Acushnet Co. (In re Randall's Island Family Golf Ctrs., Inc.)*,
    288 B.R. 701 (Bankr. S.D.N.Y. 2003) ................................................................ 20

*Fleet Nat'l Bank v. Gray (In re Bankvest Capital Corp.)*,
    375 F.3d 51 n.4 (1st Cir. 2004) ........................................................................... 17

*Galerie Des Monnaies of Geneva, Ltd. v. Deutsche Bank, A.G., New York Branch (In re Galerie
    Des Monnaies of Geneva, Ltd)*,
    55 B.R. 253 (Bankr. S.D.N.Y. 1986) .............................................................. 25, 26

*Gitto v. Worcester Telegram & Gazette Corp. (In re Gitto Global Corp.)*,
    422 F.3d 1 (1st Cir. 2005) ................................................................................... 34

*In Angell v. Haven (In re Careamerica)*,
    409 B.R. 346 (Bankr. E.D.N.C. 2009) ........................................................... 37, 38

*In re Cornwall*,
    9 Blatchf. 114, 6 F. Cas. 586 (C.C.D. Conn. Sept. Term 1871) .......................... 20

*In re EPIC Associates V*,
    54 B.R. 445 (Bankr. E.D. Va. 1985) ............................................................... 35, 36

*In re Food Management Group, LLC*,
  359 B.R. 543 (Bankr. S.D.N.Y. 2007) .................................................... 33, 34, 35
*In re Fugazy Express, Inc.*,
  982 F.2d 769 (2d Cir. 1992) ........................................................................... 11
*In re Gitto Global Corp.*,
  No. 05-10334, 2005 WL 1027348 (D. Mass. May 2, 2005) ............................ 35
*In Re Grossinger's Associates*,
  184 B.R. 429 (Bankr. S.D.N.Y. 1995) ........................................................... 24
*In re Gucci*,
  197 Fed. Appx. 58 (2d Cir. 2006) .................................................................. 28
*In re Hamilton*,
  179 B.R. 749 (Bankr. S.D. Ga. 1995) ............................................................ 17
*In re Hooker Invs., Inc.*,
  937 F.2d 833 (2d Cir. 1991) ........................................................................... 12
*In re I. Appel Corp.*,
  300 B.R. 564 (Bankr. S.D.N.Y. 2003) ....................................................... 26, 28
*In re Johns-Manville Corp.*,
  __ F. 3d __, 2010 WL 1007832 (2d Cir. 2010) .......................................... 12, 15
*In re Kolstad*,
  928 F.2d 171 (5th Cir. 1991), reh'g denied, 936 F.2d 571 (5th Cir. 1991) ........... 17
*In re Krueger*,
  88 B.R. 238 (BAP 9th Cir. 1988) ................................................................... 15
*In re Perrotta*,
  406 B.R. 1 (Bankr. D.N.H. 2009) ................................................................... 21
*In re Premier Operations*,
  290 B.R. 33 (S.D.N.Y. 2003) ......................................................................... 12
*In re Sherman-Noyes & Prairie Apartments Real Estate*,
  59 B.R. 905 (Bankr. N.D. Ill. 1986) ............................................................... 35
*In re Venture Mortgage Fund, L.P.*,
  245 B.R. 460 (Bankr. S.D.N.Y. 2000), *aff'd*, 282 F.3d 185 (2d Cir. 2002) ........... 24, 25
*Int'l Asset Recovery Corp. v. Thomsom McKinnon Sec. Inc.*,
  335 B.R. 520 (S.D.N.Y. 2005) ....................................................................... 27
*Lachance v. Erickson*,
  522 U.S. 262 (1998) ....................................................................................... 14
*Martin v. Wilks*,
  490 U.S. 755 (1989) ....................................................................................... 16
*McCrae v. KLLM Inc.*,
  89 Fed. Appx. 361 (3d Cir. 2004) ................................................................... 32
*McKibben v. Credit Lyonnais*,
  1999 WL 604883 (S.D.N.Y. Aug. 10, 1999) ................................................... 32
*Mennonite Bd. of Missions v. Adams*,
  462 U.S. 791 (1983) ....................................................................................... 16
*Mullane v. Central Hanover Bank & Trust Co.*,
  339 U.S. 306 (1950) ....................................................................................... 14
*New Hampshire v. Maine*,
  532 U.S. 742 (2001) ....................................................................................... 24

*Order of R. Telegraphers v. Railway Express Agency,*
   Inc., 321 U.S. 342 (1944) .................................................................................. 21, 31, 32
*Prisco v. A & D Carting Corp.,*
   168 F.3d 593 ................................................................................................................ 12
*Rapf v. Suffolk Cty,*
   755 F.2d 282 (2d Cir. 1985) ........................................................................................ 28
*Richards v. Jefferson County,*
   517 U.S. 793 n.5 (1996) ............................................................................................... 16
*Rosenshein v. Kleban,*
   918 F.Supp. 98 (S.D.N.Y. 1996) ................................................................................. 24
*Spinale v. United States,*
   2005 WL 659150 (S.D.N.Y. Mar. 16, 2005) .............................................................. 29
*Textile Banking Co. v. Rentschler,*
   657 F.2d 844 (7th Cir. 1981) ....................................................................................... 13
*United States v. Castro,*
   243 B.R. 380 (D. Ariz. 1999) .................................................................................. 13, 15
*United States v. Kubrick,*
   444 U.S. 111 (1979) ................................................................................................ 21, 32
*United States v. Uccio,*
   940 F.2d 753 (2d Cir. 1991) ........................................................................................ 12
*United Student Aid Funds, Inc. v. Espinosa,*
   __ S. Ct. __, 2010 WL 1027825 (2010) ...................................................................... 15
*Video Software Dealers Ass'n v. Orion Pictures Corp. (In re Orion Pictures Corp.),*
   21 F.3d 24 (2d Cir. 1994) ....................................................................................... 34, 36
*Weigner v. City of New York,*
   852 F.2d 646 (2d Cir. 1988) ........................................................................................ 14

**Federal Statutes**
11 U.S.C. § 107(a) ........................................................................................................... 34
11 U.S.C. § 107(b) ........................................................................................................... 35
11 U.S.C. § 546(a) .......................................................................................... 2, 3, 17, 18, 20
11 U.S.C. §107 ....................................................................................................... 3, 34, 35
11 U.S.C. §502(d) ............................................................................................................ 22
28 U.S.C §158(d) ............................................................................................................. 11
28 U.S.C. § 2075 .............................................................................................................. 21
11 U.S.C. § 547 ............................................................................................ 4, 5, 36, 38, 39
11 U.S.C. § 1127(a) ........................................................................................................... 6
11 U.S.C. § 554(a) ...................................................................................................... 23, 24

**Federal Rules**
Fed. R. Bankr. P. 7004 ..................................................................................................... 29
Fed. R. Bankr. P. 7012(b) ........................................................................................... 3, 36
Fed. R. Bankr. P. 9024 ..................................................................................................... 13
Fed. R. Civ. P. 12(b) ........................................................................................................ 40
Fed. R. Civ. P. 12(b)(6) ..................................................................................................... 3
Fed. R. Civ. P. 12(e) ........................................................................................................ 39
Fed. R. Civ. P. 4(m) .................................................................................................. passim
Fed. R. Civ. P. 60(6)(4) ................................................................................................... 13

Fed. R. Civ. P. 60(b)(4), (5) and (6) .......................................................................................13
Fed. R. Civ. P. 60(b)(4), (5), (6)........................................................................................3, 13
Fed. R. Civ. P. 60(b)(5) and (6).............................................................................................13
Fed. R. Civ. P. 8(a)(2).............................................................................................................37

Defendants Robert Bosch GmbH ("**Bosch GmbH**") and Robert Bosch LLC ("**Bosch LLC**", and along with Bosch GmbH (the "**Defendants**")), by their undersigned attorneys, state as follows:

## PRELIMINARY STATEMENT

On or about October 5, 2007, plaintiffs filed a Complaint under seal against Bosch GmbH and an unknown entity named "Bosch".[1] The Complaint sought to avoid and recover over $1 million in alleged preferential transfers purportedly made in 2005. On February 23, 2010 and April 20, 2010, over four years after the alleged preferential transfers were purportedly made, the Reorganized Debtors, as successor to Delphi Corporation and its subsidiaries and affiliates (collectively "Debtors") finally served Bosch LLC and Bosch GmbH, respectively, with the sealed Complaint. Defendants were completely unaware that the Complaint had been filed against them during that four year period.

During the four year period, while Debtors intentionally hid their avoidance actions from Defendants (and other defendants),[2] the Defendants had no obligations to (and did not) take special steps to preserve their records with respect to Debtors, to hold interviews with employees who were knowledgeable about the Debtors' relationship or to make arrangements to keep in touch with former employees in case the Defendants would need them to provide information or serve as witnesses. Despite this clear prejudice, Debtors contend that they may, nonetheless,

---

[1] Bosch LLC is not named as a defendant in the Complaint, but it was served with the Complaint by the plaintiffs. Bosch LLC has informed the plaintiffs that it did not receive any of the alleged transfers, and it has asked plaintiffs for confirmation that it is not the "Bosch" entity listed as a defendant. Plaintiffs, however, have refused to confirm the "Bosch" entity is not Bosch LLC. Therefore, Bosch LLC files this motion out of an abundance of caution so that a default is not taken against it.

[2] Numerous other motions have been filed by the defendants in the various avoidance actions, including those motions filed by Affinia Group Holdings, Inc., *et. al*, Wagner-Smith, and Microchip. These motions seek the dismissal of the avoidance complaints on the same grounds set forth herein, as well as various other legal grounds. Because the facts surrounding those actions are, in many respects, similar to those found here, Defendants incorporate all applicable arguments raised by the other defendants in their dismissal motions.

proceed against Defendants – over two years after the statute of limitations has expired and four years after the alleged preference payments were made – because they obtained, again without any meaningful notice to Defendants, five extensions to serve their secretly-filed sealed Complaint (the "Extension Orders").  As described below, while Defendants had appeared on other matters in this bankruptcy case before Debtors moved for the extensions, they had no idea the Complaint had been filed against them.  Nothing led Defendants to believe that they were named as defendants in one of the 742 avoidance actions that were filed, which Debtors whittled down from the over 11,000 potential preference claims.  Thus, the Defendants were unaware they had in interest in Debtors' attempts to continually extend the statute of limitations.

The Extension Orders were obtained by Debtors without regard to the most fundamental notions of procedural due process – the right of meaningful notice and an opportunity to be heard.  Both the Supreme Court and the Second Circuit have both held that orders issued in violation of due process are void (i.e., a legal nullity).  Therefore, the Extension Orders must be vacated with respect to Defendants.

The Extension Orders must also be vacated for the reason that Debtors have, through the two-step combination of filing complaints under seal and obtaining the Extension Orders without meaningful notice to interested parties (i.e. notice that their rights were being affected), circumvented the Federal Rules of Civil Procedure in an attempt to indefinitely extend the two-year statute of limitations imposed pursuant to 11 U.S.C. § 546(a), which absolutely bars the prosecution of the above-captioned adversary proceeding.  If Debtors' improper actions are allowed to stand, Debtors will have orchestrated a process that will, for all practical purposes, eviscerate the purpose and intent of the two-year statute of limitations imposed by 11 U.S.C

§546(a), effectively extending the Congressionally-mandated statute of limitations by over two years.

Accordingly, Defendants seek an order from the Court:

o  Vacating the interlocutory Extension Orders pursuant to the Court's discretionary authority because: (a) Debtors' failure to provide Debtors with meaningful notice of the motions seeking entry of the Extension Orders violates due process and renders the Extension Orders void and unenforceable against Defendants; (b) cause did not exist to extend the time for service of the Complaint; and/or (c) the Complaint was improperly filed under seal pursuant to 11 U.S.C. §107;[3]

o  Dismissing with prejudice the Complaint against Defendants, pursuant to Fed. R. Civ. P. 12(b)(6), made applicable by Fed. R. Bankr. P. 7012(b), on the ground that it: (a) is barred by the 2-year statute of limitations; and/or (b) does not comply with the pleading requirements of *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009);

o  Dismissing defendant "Bosch" because it is not a person or entity, does not exist and, therefore, cannot be sued;

o  Dismissing the Complaint with prejudice on the grounds that it is barred by laches, judicial estoppel or res judicata;

o  In the alternative, as to any Defendant which is not dismissed, the Court should order Debtors to file a more definite statement with respect to its Complaint.

## STATEMENT OF FACTS

On October 8 and October 14, 2005, Debtors each filed voluntary petitions for relief under Title 11 of Chapter 11 of the United States Code (the "**Bankruptcy Code**"). Under 11 U.S.C. §546(a), the two-year statute of limitations for the Debtors to bring avoidance actions expired in October, 2007.

Prior to the Petition Date, Defendants were suppliers of goods and services to one or more of the Debtors. Bosch GmbH is incorporated and headquartered in Germany, while Bosch

---

[3] To the extent the Court deems the Extension Orders to be "final" orders – which they are not – the orders should be vacated for the same reasons, pursuant to Fed. R. Civ. P. 60(b)(4), (5), (6) made applicable by Fed. R. Bankr. P. 9024.

LLC is a Delaware limited liability company with headquarters in Michigan. Bosch GmbH does not maintain a place of business in the United States.

    A.    <u>Debtors Failed to Provide Defendants Notice of the Preservation of Estate Claims Procedures Motion or Any of the Extension Motions</u>

    *1.    Debtors' Preservation of Estate Claims Procedures Motion*

Shortly before the two-year statute of limitations period would expire, the Debtors filed a motion on August 6, 2007, where the Debtors sought entry of an order seeking, among other things, the establishment of procedures for certain adversary proceedings, including those commenced by the Debtors under Bankruptcy Code § 547. (Preservation of Estate Claims Procedures Motion, Docket Entry 8905, at ¶ 17) (the "**First Extension Motion**"). As pertinent here, the procedures sought included (i) pursuant to Fed. R. Civ. P. 4(m), an extension of time beyond the initial 120-day period to serve certain adversary summonses and complaints, (ii) a stay of the applicable adversary proceedings until service of process was effected, and (iii) permission for the Debtors to file the complaints under seal. (*Id*. at ¶¶ 33-38).

The aforementioned procedures were purportedly intended to permit the Debtors to "preserve the status quo," and "potentially valuable assets without disrupting the plan process or existing business relationships prematurely or prejudicing the rights of any defendants," as well as to "avoid having to force all potential defendants to retain counsel to defend against adversary proceedings when, in fact, most of them likely will be resolved by a reorganization plan and never pursued." (Id. at ¶¶ 33-34).

In addition, as relates to the request to file the complaints under seal, the Debtors also sought to so act in order to "avoid unnecessarily alarming potential defendants," and because the "Debtors have worked to preserve and repair their business relationship with many of the potential defendants during these cases and have negotiated or regained favorable credit terms

with many suppliers and are continuing to do so." (*Id*. at ¶ 37). This of course provided the Debtors with the obvious tactical advantage in its negotiations with its suppliers.

No notice of the First Extension Motion was sent to Defendants. (Affidavit of Service, dated August 10, 2007, Docket Entry # 9039). Counsel for Defendants had appeared in the bankruptcy case on other matters, so they were receiving notice of the (thousands of) filings in this case at the time the First Extension Motion was filed. But Defendants had no idea their rights were being affected as neither Defendants, nor their counsel, were aware the Complaint was filed in secret under seal. Moreover, nothing led them to believe they were subject to a preference complaint as business with Debtors was done in the ordinary course and at least for Bosch GmbH, it was a foreign company not subject to the laws of this jurisdiction.

On August 16, 2007, this Court entered the Preservation of Estate Claims Procedures Order (the "**Procedures Order**"), granting the aforementioned relief requested in the First Extension Motion by (i) allowing the Debtors to file adversary proceeding complaints under seal, (ii) directing the Clerk of the Court to delay issuing summonses for complaints unless and until the Debtors notified the Clerk of their intent to prosecute such actions, (iii) staying each adversary action unless and until the Debtors effectuated service of process on the respective defendants, and (iv) extending the deadline under Fed. R. Civ. P. 4(m) by which the Debtors would have to serve process to March 31, 2008, so that the complaints would not be subject to dismissal under Fed. R. Civ. P. 4(m). (Procedures Order, Docket Entry 9105, at ¶¶ 7-10).

2.    *Debtors Commence an Adversary Proceeding Against Bosch GmbH and "Bosch"*

On October 5, 2007, Debtors purportedly commenced the Adversary Proceeding by filing the Complaint under seal with the Clerk. The Complaint seeks to recover, pursuant to Bankruptcy Code §§ 547 and 550, alleged preferential transfers made to Bosch GmbH and

5

"Bosch" in the aggregate amount of $1,087,460.49. Defendants cannot confirm the sealed

Complaint was actually filed on October 5, 2007, or that it was filed before the statute of

limitations ran on October 13, 2007.

### 3.    The First Amended Joint Plan of Reorganization

On or about December 10, 2007, the Debtors filed their First Amended Joint Plan of

Reorganization, Docket No. 11386 (the "**Confirmed Plan**"), which was confirmed by order of

the Court dated January 25, 2008. (Docket # 12359) (the "**Confirmation Order**"). The

Confirmed Plan provided for the payment in full of unsecured creditors of the Debtors. Exhibit

7.24 to the Confirmed Plan, which set forth the actions the Debtors sought to retain under the

plan, notably did not contain any reference to Defendants or the Complaint.[4]

### 4.    Debtors' Second Extension of Avoidance Action Service Deadline Motion

On February 28, 2008, the Debtors filed a motion seeking a second extension – until May

31, 2008 – to serve their sealed complaints. (Extension of Avoidance Action Service Deadline

Motion, Docket # 12922, ¶ 18) ("**Second Extension Motion**"). The asserted purpose for this

extension was to "enable the Debtors to fulfill their fiduciary responsibility to preserve valuable

estate assets in a manner that would not unnecessarily disrupt the emergence process or the

Debtors' current business relationships with potential defendants that are necessary to the

Debtors' ongoing operations," as well as to reduce the "administrative and economic burdens" of

the adversary proceedings to the Debtors, the Court, and the defendants." (*Id*. ¶ 21).

---

[4] Section 14.3 of the Confirmed Plan and Modified Plan provide that the Debtors "may alter, amend, or modify any Exhibits to this Plan under Section 1127(a) of the Bankruptcy Code at any time prior to the Confirmation Date." (Emphasis added). The Confirmation Date was January 25, 2008. Thus, after January 25, 2008, the Debtors did not have the right under the Modified Plan to amend or add to Exhibit 7.24 (renumbered as Exhibit 7.19 in the Modified Plan).

The Second Extension Motion reaffirmed that the Debtors would "not retain any causes of action asserted in the [adversary proceedings] except those specifically listed in Exhibit 7.24 of the Plan." (*Id.* ¶ 17). In fact, the Debtors stated that of the 742 adversary proceedings commenced under seal, only the claims related to Laneko Engineering Co., Wachovia Bank, National Association, Laneko Engineering Co., Inc., and their affiliates and subsidiaries (all the foregoing being the "**Laneko Defendants**"), were subject to the Procedures Order. (*Id.* ¶ 17 n.4). This fact was confirmed by the Court during an exchange with counsel for the Debtors during oral argument --the Court recognized that: "[t]he plan [only] reserve[d] or retain[ed] the ability to pursue a very small number of avoidance actions." (March 19, 2008 Tr. p. 22, attached to the Motion as Exhibit A).

Again, the Debtors gave no meaningful notice to Defendants that their rights may be affected by the Second Extension Motion. The Second Extension Motion was not sent directly to them. (Affidavit of Service, Docket # 12970). And nothing led Defendants to believe that they were named as defendants in one of the 742 avoidance actions, which Debtors whittled down from the over 11,000 potential preference claims (as set forth in the First Extension Motion). The Court granted the second extension on March 28, 2008. (Docket # 13277, ¶ 2) (the "**Second Extension Order**").

     *5.    Debtors' Third Extension of Avoidance Action Service Deadline Motion*

On April 4, 2008, the Debtors announced that the plan investors had refused to fund their investments under the Confirmed Plan so that the necessary exit financing for the plan would not close. Days later, on April 10, 2008, the Debtors filed yet another motion seeking to extend the service deadline, this time until 30 days after the substantial consummation of the Debtors' plan. (Postconfirmation Extension of Avoidance Action Service Deadline Motion, Docket # 13361, ¶

19) (the "**Third Extension Motion**"). Based on the April 4 announcement that the Confirmed
Plan would not close, this had the practical effect of extending the limitations period indefinitely.

Despite the lack of funding, the Debtors, once again, offered the same justification for
their third request – to avoid "unnecessarily disrupt[ing] the emergence process or the Debtors'
current business relationships with potential defendants that are necessary to the Debtors'
ongoing operations." (*Id.* ¶ 22). The Debtors also asserted that they and the defendants should
not be required to spend resources on the adversary proceedings when "most of the Adversary
Proceedings will not be prosecuted if the Plan were to become effective and likely not be
prosecuted under any modified plan." (*Id.*)

Once again, the Debtors gave Defendants no meaningful notice of the Third Extension
Motion. (Aff. of Service, Docket # 13415). Moreover, like the Second Extension Motion, the
Third Extension Motion provided that only the claims related to Laneko Defendants were subject
to the Procedures Order. (*Id.* ¶ 18 n.4). And, unlike Defendants, notice of the motion was
actually sent directly to the Laneko Defendants. (*Id.*; Aff. of Service, Docket # 13415). Indeed,
during oral argument, counsel for the Debtors specifically represented and admitted that "the
reason we gave specific notice to Laneko and Wachovia was because those were the only two
parties that had been identified under Exhibit 7.24 of the plan as having the avoidance actions
preserved under the plan and, therefore, we gave particularized notice to them of the relief
sought by the debtors." (April 30, 2008 Tr. pp. 11-12, attached as Exhibit B).

The Court granted the requested third extension on April 30, 2008. (Docket # 13484, ¶ 2)
(the "**Third Extension Order**").

8

6.    *Debtors' Fourth Extension of Avoidance Action Service Deadline Motion*

On October, 2, 2009 – four years after the bankruptcy petition was filed, two years after

expiration of the statute of limitations and over a year after entry of the Third Extension Order –

the Debtors filed yet another motion to extend the deadline for service of process, this time until

180 days after substantial consummation of the plan. (Supplemental Postconfirmation Extension

of Avoidance Action Service Deadline Motion, Docket # 18952, ¶ 16) ("**Fourth Extension**

**Motion**").  The Debtors stated that this further extension was necessary in light of the fact that

the Debtors now anticipated that they would retain 177 of the adversary proceedings filed under

seal. The Debtors asserted that 30 days after substantial consummation of the Modified Plan was

not sufficient time to "assess the ongoing relationship with certain defendants and whether

events since initiating the [adversary proceedings] have impacted the Debtors' estimated

recoveries," and determine whether to pursue such retained adversary proceedings.  The Debtors

thus fell back to their rote justification and stated that an extension "would reduce the

administrative and economic burdens of the [retained adversary proceedings] on the Debtors and

the potential defendants." (*Id*. at ¶¶ 17, 19).  The effective date of the plan occurred on October

6, 2009, which made the service deadline April 5, 2010 (Docket # 18958, ¶ 2).

Again, the Debtors did not send notice of the Fourth Extension Motion directly to

Defendants. (Affidavit of Service Docket # 18967).  And once again, nothing led Defendants to

believe that out of the 11,000 potential preference claims, they were included in the retained 177

avoidance actions.

The Court granted the fourth extension on October 22, 2009. ("**Fourth Extension**

**Order**," Docket # 18999, ¶ 2).  Importantly, during the October 22, 2009 hearing on the

Debtors' motion, the Court explicitly stated that the extension was without prejudice to the rights

of the defendants in the avoidance actions to argue other defenses, other than the running of the

statute of limitations. (10/22/09 Transcript p. 6, attached as <u>Exhibit C</u>).

> 7.    *Debtors' Fifth Extension of Avoidance Action Service Deadline Motion*

On March 25, 2010, Debtors filed an emergency motion to again extend the deadline to

serve defendants in sixty-two (62) adversary proceedings because service was not accomplished

by the April 5, 2010 deadline.  (Debtors' Emergency Motion for Order Extending Deadline To

Serve Process for Certain Avoidance Actions, Docket # 12 in this adversary proceeding) (the

"**Fifth Extension Motion**") (and, together with the First, Second, Third and Fourth Extension

Motions, the "**Extension Motions**").  As it relates to Bosch GmbH, Debtors requested the Court

extend the deadline by an additional 240 days so that service can be made on Bosch GmbH, a

foreign entity.  On April 20, 2010, the Court granted the Fifth Extension Motion.  ("**Fifth**

**Extension Order**," Docket # 22 in this adversary proceeding) (and, together with the Procedures

Order and the Second, Third and Fourth Extension Orders, the "**Extension Orders**").

> B.    <u>Service of Process on Defendants</u>

Bosch LLC was served with the Complaint on or about February 23, 2010 and Bosch

GmbH was finally served with the Complaint on or about April 20, 2010, both well over the two

year statute of limitations provided by the Bankruptcy Code and over four years after the alleged

preferential transfers were made.  The Complaint merely recites the elements of a preferential

transfer.  As for specific facts, it provides nothing more than the alleged "transfer date," "transfer

amount" and "transfer type" for the numerous transfers that Debtors seek to avoid.  The

Complaint does not identify which of the numerous Debtors actually owed the money allegedly

transferred, or to which defendant (Bosch GmbH or "Bosch") the money was allegedly owed.

The Complaint also does not identify which Debtor actually made the alleged payments (or out

10

of which Debtor's bank account), or to which Defendant the payment was allegedly made. In fact, the Complaint even fails to set forth the identity of the actual plaintiffs making the avoidance claims (i.e., which Debtor entities are suing); instead, the Complaint only states that it is brought on behalf of "Delphi Corporation ('Delphi') and other [unnamed] above-captioned debtors and debtors in possession." (*Id*.)

Since Debtors intentionally concealed the avoidance action and did not give Defendants meaningful notice of the Extension Orders, Defendants had no obligation to (and did not) take special steps to organize and preserve their records with respect to Debtors, to hold interviews with employees who were knowledgeable about the Debtors' business relationship or to make arrangements to keep in touch with those employees in case Defendants would need them to provide litigation information or serve as witnesses. As a result, Defendants have suffered great prejudice, and will be harmed in their ability to defend this action because they did not know between 2007 and 2010 that this action had been filed.

## ARGUMENT

I. **EACH OF THE PROCEDURES ORDER AND EXTENSION ORDERS SHOULD BE VACATED AS TO DEFENDANTS AS VOID ON THE GROUNDS THEY WERE ENTERED WITHOUT DEFENDANTS HAVING NOTICE AND AN OPPORTUNITY TO RESPOND IN VIOLATION OF DEFENDANTS' FUNDAMENTAL DUE PROCESS RIGHTS.**

A.    Standard For Vacating Interlocutory Orders

The Procedures Order and the five Extension Orders are "interlocutory" orders as opposed to "final" orders.  In order for a bankruptcy court order to be "final" within the meaning of 28 U.S.C §158(d), the order "must completely resolve all of the issues pertaining to a discrete claim, including issues as to the proper relief." *In re Fugazy Express, Inc.*, 982 F.2d 769, 776 (2d Cir. 1992). This means that "'all the issues' . . . that are outstanding between particular parties,

11

that the bankruptcy court has under consideration or will be expected to rule upon, and that

potentially may become the basis for appeal" must be completely resolved by the Bankruptcy

Court's order. *In re Premier Operations*, 290 B.R. 33, 42 (S.D.N.Y. 2003) (citations omitted).

Because the Procedures Order and Extension Orders did not resolve all of the disputed issues, the

orders are not final. Indeed, courts generally deem procedural orders interlocutory because such

orders do not finally resolve the substantive issues between the parties. *In re Hooker Invs., Inc.*,

937 F.2d 833, 836-37 (2d Cir. 1991).

 Courts are free to reconsider or modify their interlocutory orders at their discretion.

*United States v. Uccio*, 940 F.2d 753, 757-58 (2d Cir. 1991). Moreover, while the law of the case

doctrine does "inform[] the court's discretion," the law of the case doctrine does not limit a

court's power and is not an inviolate rule. *Id.* at 758. The Second Circuit explained:

> the decision whether or not to apply law-of-the-case is, in turn,
> informed principally by the concern that disregard of an earlier
> ruling not be allowed to prejudice the party seeking the benefit of
> the doctrine. In this context "prejudice" does not mean harm
> resulting from the failure to adhere to the prior decision; "rather,
> it refers to a lack of sufficiency of notice" or a lack of sufficient
> "opportunity to prepare armed with the knowledge that [the prior
> ruling is not deemed controlling]."

*Id.* at 758 (internal citations omitted); *see also Prisco v. A & D Carting Corp.*, 168 F.3d 593, 607

(2d Cir. 1999). Debtors have unquestionably been provided ample notice and an opportunity to

persuade this Court that the Court should not alter it prior Orders.

 The Second Circuit has also made it clear that where, as here, a litigant was not given

notice and an opportunity to be heard (and, therefore, "battle" for the court's prior decision), the

law of the case doctrine does not foreclose, in any manner, the party's due process argument. *In

re Johns-Manville Corp.*, __ F.3d __, 2010 WL 1007832, at *13 (2d Cir. 2010). Accordingly,

this Court has unfettered discretion to vacate its Procedures and Extension Orders.

Furthermore, even if the Court were to conclude that its Extension Orders are "final," the same relief requested by Defendants would be warranted under Fed. R. Civ. P. 60(b)(4), (5) and (6). Rule 60(b)(4), made applicable by Fed. R. Bankr. P. 9024, authorizes a court to relieve a party from a final order if the order is void. Fed. R. Civ. P. 60(6)(4). A court must grant relief under this Rule if the order "is void because entry of order violates due process rights." *Fustok v. Conticommodity Services, Inc.*, 122 F.R.D. 151, 154-55 (S.D.N.Y. 1988) (citing *Textile Banking Co. v. Rentschler*, 657 F.2d 844, 850 (7th Cir. 1981)); see also *United States v. Castro*, 243 B.R. 380 (D. Ariz. 1999) (explaining that vacation of the order is mandatory, not discretionary). Fed. R. Civ. P. 60(b)(5) and (6) also provide, in relevant part:

> On motion and just terms, the Court may relieve a party or its
> legal representative from a final judgment, order or proceeding
> for the following reasons . . . . (5) applying it [the order]
> prospectively is no longer equitable; or (6) any other reason that
> justifies relief.

B.    Enforcing the Procedure Order and Extension Orders Would Violate Due Process
      Because Defendants Were Not Given Meaningful Notice

Defendants respectfully submit that the combination of permitting the Debtors to file the Complaint under seal – thereby concealing from Defendants that they had been sued – while repeatedly extending the Debtors' time to serve process for nearly two years after the expiration of the statute of limitations – all without meaningful notice to Defendants that their rights were being affected – has resulted in a proceeding completely devoid of procedural due process.

The following is undisputed: (i) the Debtors failed to give particular notice to Defendants that they filed the Procedures Motion and failed to give particular notice to Defendants that they filed the five Extension Motions; (ii) the Debtors failed to notify Defendants that they had filed a sealed Complaint; and (iii) as a result, Defendants had no reason to object with respect to these

motions (which ultimately resulted in a series of orders which, in part, extended the time to serve

the sealed Complaint until two years after expiration of the statute of limitations).

It has been long recognized that: "The core of due process is the right to notice and a

meaningful opportunity to be heard." *Lachance v. Erickson*, 522 U.S. 262, 266 (1998). For

example, in *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313-14 (1950)

(citations omitted), the Supreme Court established what Due Process requires:

> [T]here can be no doubt that at a minimum [the Due Process
> Clause] require[s] that deprivation of life, liberty or property by
> adjudication be preceded by notice and opportunity for hearing
> appropriate to the nature of the case. . . . An elementary and
> fundamental requirement of due process in any proceeding which
> is to be accorded finality is notice reasonably calculated, under all
> the circumstances, to apprise interested parties of the action and
> afford them an opportunity to present objections.

Indeed, the right to be heard "has little reality or worth unless one is informed that the matter is

pending and can choose for himself whether to appear or default, acquiesce or contest." *Mullane*,

339 U.S. at 314. Thus, an "elementary and fundamental requirement of due process in any

proceeding which is to be accorded finality is notice reasonably calculated, under all the

circumstances, to apprise interested parties of the pendency of the action and afford them an

opportunity to present their objections." *Id.* at 314; *Barcia v. Sitkin*, 367 F.3d 87, 107 (2d Cir.

2004) (same); *Weigner v. City of New York*, 852 F.2d 646, 654 (2d Cir. 1988) (same).

Accordingly, the Supreme Court and the Second Circuit both recognize that, if parties

like Defendants are not afforded due process during the proceeding that led up to entry of an

order, the parties are not bound and the order is unenforceable against those parties. For example,

in *City of New York v. New York, N.H. & H. R.R. Co.*, 344 U.S. 293 (1953), the City, a creditor

of the bankruptcy debtor, did not receive notice of the claims bar date order issued by the court

despite the fact that the debtor was required to mail notice of the order to the City. The Supreme

14

Court held that the City, whose identity and address were known, was not bound by the claims

bar date because it was not given notice by the debtor. Similarly, in *In re Johns Manville Corp.*,

__ F.3d __, 2010 WL 1007832, at *20 (2d Cir. 2010), the Second Circuit held that because

Chubb Indemnity Insurance Company did not receive notice of the proceedings that led to

approval of: (i) the 1984 Insurance Settlement Agreement and the Manville Plan; and (ii) the

1986 Orders at issue, it was not bound by the orders (because to bind Chubb would violate its

due process rights); s*ee also United Student Aid Funds, Inc. v. Espinosa*, __ S.Ct. __, 2010 WL

1027825, at *6 (2010) (where notice and an opportunity to be heard are not provided, the order is

a "legal nullity").

Likewise, in *United States v. Castro*, 243 B.R. 380 (D. Ariz. 1999), the government did

not receive notice of a motion filed by the debtor seeking a determination of tax liability or the

court's related order. Because the government received no notice, the court held the order was

void as a matter of law (in violation of due process) and was vacated as to the government. *See*

*also In re Krueger*, 88 B.R. 238 (BAP 9th Cir. 1988) (vacating order of dismissal on due process

grounds, explaining that the debtor did not receive notice of the hearing; as a result, the court

retroactively reinstated the automatic stay and held that a foreclosure sale was void in violation

of the automatic stay). This Court recognized this basic fact when recently addressing whether

the unserved foreign defendants would need to seek relief from the uniform case management

order proposed by Debtors. The Court stated:

> Well, would they even have to seek relief if they're not a party. I
> mean, it's odd to say that they'd be bound if they're not party to
> an adversary proceeding that's been . . . served yet.

(April 1, 2010 Transcript, p. 13, attached as <u>Exhibit D</u>).

Moreover, Defendants' due process rights are not affected by the fact that Defendants

knew of the Debtors' bankruptcy proceeding or that their counsel received general notice of the

Extension Motions (as part of receiving notice of all thousands of filings in the case).

Defendants were entitled to specific and particularized notice since Debtors knew Defendants

had interests at stake.  In *City of New York*, the Supreme Court expressly declared that the Due

Process Clause entitles creditors to reasonable notice from a bankruptcy court before they will be

bound -- even where the creditor knew of the bankruptcy proceedings but did not monitor them.

The Court stated:

> Nor can the bar order against New York be sustained because of
> the city's knowledge that reorganization of the railroad was
> taking place in the court. The argument is that such knowledge
> puts a duty on creditors to inquire for themselves about possible
> court orders limiting the time for filing claims. But even creditors
> who have knowledge of a reorganization have a right to assume
> that the statutory 'reasonable notice' will be given them before
> their claims are forever barred.

344 U.S. at 297. The Supreme Court has never wavered from this reasoning. *See*, *e.g.*, *Richards*

*v. Jefferson County*, *Richards v. Jefferson County*, 517 U.S. 793, 800 n.5 (1996) (no duty to

intervene in suit in which the party is a stranger); *Martin v. Wilks*, 490 U.S. 755, 763 (1989) (no

duty to intervene where a party is entitled to notice and a hearing before its rights are affected);

*Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 799 (1983) ("a party's ability to take steps to

safeguard its interests does not relieve the State of its constitutional obligation" to serve notice).

The Debtors attempted to justify this lack of procedural due process on the grounds that it

"avoid[ed] unnecessarily alarming potential defendants" and "having to force all potential

defendants to retain counsel to defend against adversary proceedings when, in fact, most of them

likely will be resolved by a reorganization plan and never pursued." (The First Extension

Motion, at ¶¶ 34, 37).  These justifications have no merit. The Debtors had an option – sue the

16

Defendants or do not sue the Defendants. Importantly, Defendants would have had notice that they were being sued, and they would have had the ability to oppose the motions seeking the Procedures Order and the Extension Orders.

The lack of due process pursued by the Debtors also had the effect of disenfranchising of Defendants and other defendants from participating in the case and voting on the Plan and Modified Plan. Indeed, under Section 502(d), it is implicit that "a transferee of an avoidable transfer has an allowable claim once it turns over such property for which it is liable," and that it may file a proof of claim on account of same. *Fleet Nat'l Bank v. Gray (In re Bankvest Capital Corp.),* 375 F.3d 51, 57 n.4 (1st Cir. 2004). That, in turn, allows it to "[participate] in the voting and distribution from the estate." *In re Hamilton*, 179 B.R. 749, 752 (Bankr. S.D. Ga. 1995) (quoting *In re Kolstad*, 928 F.2d 171, 174 (5th Cir. 1991), *reh'g denied*, 936 F.2d 571 (5th Cir. 1991), *cert. denied*, 502 U.S. 958 (1991)). The Debtors knew that if Defendants repaid an allegedly preferential transfer, they would have been entitled to file a claim, participate in the case and vote on the Plan and the Modified Plan to the extent of their claim. The justification for depriving Defendants and the other defendants of their right to engage in the bankruptcy cases merely so the Debtors could avoid looking bad to the avoidance action defendants is patently improper and not justifiable under the Bankruptcy Code.

Accordingly, the Procedures Order and the Extension Orders must be vacated.

**II.     THE COMPLAINT SHOULD BE DISMISSED BECAUSE IT IS BARRED BY THE TWO YEAR STATUTE OF LIMITATIONS FOR AVOIDANCE ACTIONS.**

Section 546(a) of the Bankruptcy Code sets forth a statute of limitations for bringing avoidance claims:

> An action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of—

17

(1) the later of--

(A) 2 years after the entry of the order for relief; or

(B) 1 year after the appointment or election of the first trustee under section 702, 1104, 1163, 1202, or 1302 of this title if such appointment or such election occurs before the expiration of the period specified in subparagraph (A); or

(2) the time the case is closed or dismissed.

11 U.S.C. § 546(a). The statute of limitations began to run upon the Debtors' respective petition dates (October 8 and 14, 2005) and expired, at the latest, on October 13, 2007, two years ago.

Debtors filed the Complaint under seal on October 5, 2007, but did not serve Bosch GmbH and Bosch LLC with such Complaint until April 20, 2010 and February 23, 2010, respectively, over two years after the statute of limitations contained in Section 546(a) expired. Debtors rely on the Extension Orders to bridge the gap between the time the summons should have been served with the Complaint and the date on which the Complaint was actually served. But once some or all of the Extension Orders are vacated and/or modified, the service extensions contained therein will, correspondingly, be eliminated and, as a result, the claims asserted in the Complaint will have now become time-barred.

The Debtors brought such a result upon themselves. The Debtors decided to keep the preference actions a secret in order to negotiate the best deals it could with the defendants. The Debtors likely would not have been able to negotiate as favorable contract terms if the defendants were aware of the preference avoidance actions. Having made this election, the Debtors clearly undertook a risk that when the defendants were finally served, the avoidance actions would be dismissed for any number of reasons, including the statute of limitations. This risk was not unknown. The Court, for example, when granting the Fourth Extension Motion, specifically reminded the Debtors that the extensions granted by the Court were without

prejudice to the rights of the defendants in the avoidance actions to argue defenses other than statute of limitations. (10/22/09 Transcript p. 6, attached as Exhibit D).

Defendants are doing precisely what the Court warned the Debtors defendants might do based on the strategic decisions made by the Debtors. The fact that a dismissal here has the effect of the Debtors not being able to pursue the claims due to the statute of limitations does warrant a denial of this motion. Courts regularly recognize that the Rule 4(m) requirement that a case be dismissed (and then re-filed) must be followed even where the passage of time will result in the re-filed complaint being barred by the statute of limitations. *Burks v. Griffith*, 100 F.R.D. 491, 493 (N.D.N.Y. 1984); Wright & Miller, *Federal Practice & Procedure*, § 1137, p. 386-87 (3d ed. 2002) ("The dismissal-without-prejudice provision allows a plaintiff to re-file the complaint as if it never had been filed, but it does not provide relief from defenses based on the passage of time, such as the statute of limitations."). This Court informed the Debtors that their actions were subject to the defendants' defenses and, accordingly, the dismissal is the result of the Debtors' own making. Allowing the Debtors to profit, to the defendants' detriment, at both ends, is inequitable and unfair.

Furthermore, because Defendants had no notice of the sealed Complaint (or that the Debtors' motions and the resulting orders would affect their rights), allowing Debtors to prosecute their claims now, two years after the statute of limitations expired and four years after the alleged preference payments were made, would result in unfair prejudice to Defendants and would eviscerate the purpose of the statute of limitations. Accordingly, the appropriate remedy is to bar Debtors' claims.

Additionally, even if the Court refuses to vacate some or all of the orders, Debtors' avoidance claims still must be dismissed because it would be inappropriate to permit the Debtors

to bypass the statute of limitations through their efforts to delay service of the Complaint, particularly where, as here, the delay brought about by the Debtors would effectively increase the Congressionally-mandated statute of limitations by more than two years, all for the convenience of the Debtors and at the expense of the defendants. A statute of limitations, such as the two year limitations period found in Section 546(a), is a statute of repose " 'enacted upon the presumption, that one having a well-founded claim will not delay enforcing it beyond a reasonable time, if he has the power to sue.' " *In re Cornwall*, 9 Blatchf. 114, 6 F. Cas. 586, 591 (C.C.D. Conn. Sept. Term 1871). "Statutes of repose are intended to give plaintiffs notice of the time within which they may prosecute legal claims and to alert potential defendants of the time beyond which their exposure to liability ceases." *Diversified Hospitality Group, Inc. v. Carson Pirie Scott & Co.*, No 90 CIV 2957 (WK), 1991 WL 35953, at *5 (S.D.N.Y. Mar. 8, 1991). Statutes of repose are only to be outweighed where "the interests of justice require vindication of the plaintiff's rights." *Family Golf Ctrs., Inc. v. Acushnet Co. (In re Randall's Island Family Golf Ctrs., Inc.)*, 288 B.R. 701, 705 (Bankr. S.D.N.Y. 2003). Such circumstances occur where the plaintiff has not slept on its rights, has commenced a timely state court action in a court of competent jurisdiction, the particular defect in the complaint is waivable and frequently waived, and the defendant "*could not have relied upon the policy of repose embodied in the limitation statute, for it was aware that [the plaintiff] was actively pursuing his . . . remedy.*" *Id.* (quoting *Burnett v. N.Y. Cent. R.R. Co.*, 380 U.S. 424, 428-29 (1965)) (emphasis added).

By keeping this action a secret for well over two years after the statute of limitations expired, the Debtors deliberately chose a course of action that will guarantee that the evils the statute of limitations were designed to prevent will actually occur – evidence has likely been lost, memories have faded and witnesses have disappeared. *Order of R. Telegraphers v. Railway*

20

*Express Agency, Inc.*, 321 U.S. 342, 348-49 (1944); *United States v. Kubrick*, 444 U.S. 111, 117

(1979) (statutes of limitation "protect defendants and the courts from having to deal with cases in

which the search for truth may be seriously impaired by the loss of evidence, whether by death or

disappearance of witnesses, fading memories, disappearance of documents, or otherwise"). As a

result, Defendants' ability to defend themselves has been substantially impaired. Sealing the

complaint and waiting two years to serve it on Defendants is, in fact, no different than if the

Debtors filed the Complaint long past the expiration of the statute of limitations. And, of course,

it is black-letter law that procedural rules, such as Rule 4(m) cannot "abridge, enlarge, or modify

any substantive right." 28 U.S.C. § 2075; *In re Perrotta*, 406 B.R. 1, 8 (Bankr. D.N.H. 2009)

("Therefore, to the extent that the Bankruptcy Rules and the Bankruptcy Code are inconsistent,

the statute controls.").

Accordingly, Defendants submit that Debtors' claims are barred by the statute of

limitations and should be dismissed.

### III.   FOREIGN CLAIMS SHOULD BE DISMISSED AS ABANDONED.

The preference claim against Bosch GmbH is barred by Debtors' abandonment of claims

against foreign suppliers in August 2007.  In the First Extension Motion (Docket # 8905),

Debtors sought authority to file certain preference complaints under seal, to extend the time to

serve the complaints, and to abandon other claims.  Debtors divided the claims it was seeking

authority to abandon into two categories: claims it had already exercised its discretion and

decided to abandon, and claims it might decide to abandon in the future. The categories it had

already decided to abandon included claims against foreign suppliers (the "**Foreign Claims**").

Paragraph 26 of the First Extension Motion stated:

> 26.   **In addition, the Debtors seek authority to abandon the
> following categories of potential preference actions which the**

21

**Debtors, in their business judgment, have decided should not
be pursued:** (i) payments to parties with a secured or priority
interest in such payment, (ii) union dues, (iii) pension plan
contributions, (iv) payments required under the terms of
collective bargaining agreements, (v) payments to reimburse
employee business expenses, (vi) ordinary course wages, salaries,
and benefits to employees (vii) payments required by a
garnishment to satisfy third-party judgments and obligations,
(viii) contributions to charitable organizations, (ix) **payments to
foreign suppliers**, (x) payments to the Debtors' shippers, (xi)
payments to the Debits' insurance providers, and (xii) payments
to the Debtors' utilities. (emphasis added)

In contrast, there were categories where Debtors had not yet exercised their discretion to
decide to abandon claims. For example, where a preference action was under $250,000 but
against an insider or member or person associated with the SEC investigation, Debtors reserved
the right to decide at a later date to abandon such claims, after notice to the Statutory Committee.
First Extension Motion ¶ 25. Similarly, "[w]ith respect to other categories of causes of action,
the Debtors anticipate that during their review they may identify additional causes of action
which, in the exercise of their reasonable business judgment, should not be pursued". *Id.* ¶ 30.
Debtors sought authority to abandon such claims in the future based on a procedure of giving
notice to the Statutory Committee.

No objections were filed to the First Extension Motion. At the August 16, 2007 hearing
on the Motion, the Court indicated that some changes in the proposed order should be made to
avoid ambiguity in the procedure for future abandonment and to preserve Delphi's rights under
11 U.S.C. §502(d) notwithstanding the abandonment of the preference claims. *See* Transcript
8/16/07 at pages 9-11 (excerpted pages 1 through 11 of the Transcript are attached as <u>Exhibit E</u>).
No changes were made in the Order with respect to the categories of claims Debtors had already
decided to abandon, such as the Foreign Claims.

22

The Procedures Order maintains the differing treatment of claims, such as the Foreign Claims, which Debtors had already decided to abandon, and the categories of claims Debtors might, in its discretion, choose to abandon in the future. The Procedures Order provides in Paragraph 5:

> The procedures set forth in the Motion to identify causes of action that should be preserved are approved. **The Debtors are authorized, without the need for any further order or any further notice under Bankruptcy Rule 6007(a), to abandon those causes of action or categories of cause of action that debtors propose in the Motion to abandon.** Subject to the procedures set forth in the Motion, the Debtors are further authorized to abandon certain causes of action not specifically identified in the Motion that they determine should not be pursued, including the categories of actions set forth in the Motion, without the need for any further order or any further notice under Bankruptcy Rule 6007(a). The Debtors may abandon additional causes of action after giving notice to the Statutory Committees. If a Statutory Committee objects within 10 days after service of the notice, the Debtors may bring the matter before this Court for a ruling on whether the proposed abandonment satisfies section 554(a) of the Bankruptcy Code. (emphasis added).

Debtors expressed their intent to abandon the Foreign Claims. Debtors filed the First Extension Motion for authority to abandon such claims, representing that they had already exercised their business judgment and decided to abandon the Foreign Claims. Debtors moved forward with the abandonment at the August 16, 2007 hearing on the motion. Debtors obtained entry of the Procedures Order authorizing the abandonment. *Cf. In Re Chartschlaa,* 538 F.3d 116, 123-124 (2d Cir. 2008) (intent to abandon ambiguous when motion was filed, but at hearing, trustee specifically requested court to take no action on the abandonment issue).

As a consequence of the abandonment, the Debtors' estates were divested of any interest in or control over the Foreign Claims:

'[A]bandonment constitutes a divestiture of all interests in property that were property of the estate . . . Abandonment once accomplished is irrevocable, regardless of any subsequent discovery that the property had greater value than previously believed.' Abandonment under section 554 removes the property in question from the bankruptcy estate and causes the trustee to lose all interest, rights and control with respect to the abandoned property.

*In Re Grossinger's Associates*, 184 B.R. 429, 432 (Bankr. S.D.N.Y. 1995).

Debtors' later filing of the Complaint asserting Foreign Claims did not reinstate such claims as property of the estate. The Foreign Claims were irrevocably abandoned and must be dismissed.

## IV.    THE COMPLAINT IS BARRED BY JUDICIAL ESTOPPEL.

The doctrine of judicial estoppel "prevents a party from asserting a factual position in a legal proceeding that is contrary to a position previously taken by [that party] in a prior legal proceeding." *In re Venture Mortgage Fund, L.P.*, 245 B.R. 460, 471 (Bankr. S.D.N.Y. 2000), *aff'd*, 282 F.3d 185 (2d Cir. 2002). The purpose of judicial estoppel is to "protect the integrity of the judicial process . . . by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001). Judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001); *see also Rosenshein v. Kleban*, 918 F.Supp. 98, 104 (S.D.N.Y. 1996) ("Judicial estoppel is invoked . . . to prevent the party from playing fast and loose with the courts, and to protect the essential integrity of the judicial process."). The *New Hampshire* court observed that "the circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle." *New Hampshire*, 532 U.S. at 750 (internal citations omitted).

24

Courts in the Second Circuit require the following two factors be satisfied to invoke the doctrine of judicial estoppel: (i) the party against whom estoppel is asserted took an inconsistent position in a prior proceeding, and (ii) the first tribunal adopted the inconsistent position in some manner, such as by rendering a favorable judgment. *In re Venture Mortgage Fund, L.P.*, 245 B.R. at 472.  "The doctrine does not depend upon prejudice to the party invoking it." *Galerie Des Monnaies of Geneva, Ltd. v. Deutsche Bank, A.G., New York Branch (In re Galerie Des Monnaies of Geneva, Ltd)*, 55 B.R. 253, 260 (Bankr. S.D.N.Y. 1986).

Both factors are satisfied here.  As set forth above, the Debtors repeatedly represented to the Court both at hearings and in their motions that, with respect to avoidance actions that they intended to preserve and pursue, they only intended to pursue claims against certain, specific entities – the Laneko Defendants.  The other 700 plus avoidance actions would not be pursued. The Debtors took this position in Exhibit 7.24 to the Confirmed Plan, confirmed this position in their Second Extension Motion and reaffirmed this position in their Third Extension Motion. The Court, in turn, accepted Debtors' position that they intended to pursue only four avoidance claims when it entered orders granting the relief sought by the Debtors in their motions and requiring notice of such motions be served upon only the four Laneko Defendants.

By bringing the Complaint against Defendants and the defendants in the 176 other avoidance actions, Debtors now take the opposite position than that: (i) advanced in the prior motions; and (ii) adopted by the Court. Based upon the doctrine of judicial estoppel, this Court should not sanction the Debtors' attempt to "play fast and loose with the court" and allow Debtors to pursue 177 avoidance claims after the Debtors previously, and consistently, stated they intended to pursue no more than four claims. Defendants question whether the Court would have permitted the Debtors to file their actions under seal and repeatedly extend the statute of

limitations by over two years, all without providing any meaningful, particularized notice to

Defendants (and the other defendants), had the Court known, when ruling on the motions, that

the Debtors would actually file 177 (rather than 4) avoidance actions.  Indeed, when ruling on the

motions, the Court ensured that the Laneko Defendants – the 4 preserved defendants – received

particularized notice of the Debtors' motions.

Debtors' actions are impermissible and, accordingly, the Complaint against Defendants

should be dismissed.  *See Galerie Des Monnaies of Geneva, Ltd.*, 55 B.R. at 260 (granting

defendant's motion to dismiss where debtor who stated in its disclosure statement that it has no

preference actions "may not thereafter reverse its field and commence a preference action for its

own benefit.").

Accordingly, Defendants request that the Court exercise its discretion and apply the

doctrine of judicial estoppel to prevent the Debtors from pursing their claims against Defendants,

which the Debtors had repeatedly indicated they would not pursue.

## V.    THE COMPLAINT IS BARRED BY RES JUDICATA.

The Debtors lack standing to pursue the avoidance actions because they did not retain

those actions in the Modified Plan, other than their claims against the Lenako Defendants, and

did not have the authority under the Modified Plan to amend Exhibit 7.19/7.24 to preserve causes

of action not listed in Exhibit 7.19/7.24.  In addition, the Debtors' claims should be barred by *res*

*judicata* because the Debtors did not adequately describe the preserved causes of action in the

Modified Plan so as to preserve the avoidance actions for the benefit of the estate.

"The confirmation of a bankruptcy plan of reorganization must be accorded res judicata

effect … [and] prevents the subsequent assertion of any claim not preserved in the plan as

required by § 1123(b)(3)." *In re I. Appel Corp.*, 300 B.R. 564, 568 (Bankr. S.D.N.Y. 2003).

"[T]he general rule is that, absent an express plan provision to the contrary, the debtor loses the

right to bring bankruptcy causes of action, such as to recover a preference or for turnover, after

the confirmed plan's effective date." Hon. William L. Norton, Jr. & William L. Norton III,

Norton Bankruptcy Law and Practice §109:16 (3d. ed. 2009) (citing *Int'l Asset Recovery Corp. v.

Thomsom McKinnon Sec. Inc.*, 335 B.R. 520, 525 (S.D.N.Y. 2005)).

    As discussed above, on December 27, 2007, the Debtors listed the causes of action they

intended to preserve in Exhibit 7.19/7.24 to the Confirmed Plan. Article 7.24 of the Confirmed

Plan and Article 7.19 Modified Plan (Docket # 18707) state that "Causes of Action against

Persons arising under section 544, 545, 547, 548, or 553 of the Bankruptcy Code or similar state

laws shall not be retained by the reorganized Debtors unless specifically listed on Exhibit 7.24

[7.19 in the Modified Plan]." Upon entry of the Confirmation Order, the Debtors lost the ability

to amend Exhibit 7.19/7.24. Accordingly, the Debtors are barred by application of *res judicata*

from pursuing any causes of action other than those specifically preserved in Exhibit 7.19/7.24.

    Additionally, even if the Court finds that the Debtors had the right to amend Exhibit

7.19/7.24, the Debtors have not adequately described the avoidance actions in order to preserve

them under the Modified Plan. Exhibit 7.19/7.24 provided no information on the avoidance

causes of action to be retained -- it did not disclose the identity of the defendant or, more

importantly, the value of the claims. Indeed, because all of the complaints were filed under seal,

neither the creditors nor the potential defendants could review the preserved causes of action to

glean this information. Moreover, neither the Amended Disclosure Statement [Docket # 17071]

nor the Modified Plan included any discussion of the Debtors' reversal of their position with

respect to pursuing claims only against the Lenako Defendants. In short, the Debtors only

provided a blanket reservation, which is insufficient to avoid the *res judicata* effect of a

27

confirmed plan. *Browning v. Levy,* 283 F.3d 761, 764 (6th Cir. 2002). The Sixth Circuit

explained:

> NW's blanket reservation was of little value to the bankruptcy
> court and the other parties to the bankruptcy proceeding because
> it did not enable the value of NW's claims to be taken into
> account in the disposition of the debtor's estate. Significantly, it
> neither names SSD nor states the factual basis for the reserved
> claims. We therefore conclude that NW's blanket reservation
> does not defeat the application of res judicata to its claims against
> SSD.

*Id.* at 775.[5]

Accordingly, the Debtors' claims against Defendants should be dismissed.

## VI.    THE COMPLAINT IS BARRED BY LACHES.

Debtors' Complaint should also be barred by laches. A defendant may prevail on a laches

defense if it establishes: (1) that it lacked knowledge that the claim might be asserted against it;

(2) that the plaintiff delayed asserting the claim despite an opportunity to do so; and (3) that it

would be prejudiced if the claim were now allowed to go forward. *In re Gucci*, 197 Fed. Appx.

58, 60 (2d Cir. 2006); *Rapf v. Suffolk Cty*, 755 F.2d 282, 292 (2d Cir. 1985).

As was described above, Defendants had absolutely no knowledge that a claim would be

asserted against them.

Second, the Debtors had numerous opportunities to assert their claim against Defendants,

particularly after the Debtors knew that their creditors would no longer be paid 100 percent and

that certain avoidance actions would be prosecuted (there was no justification for keeping the

complaints a secret after this date). Instead, the Debtors chose to conceal the claim for two years

---

[5] While other courts have held that a general reservation of claims is sufficient, they have done so in the context of reorganizations where the debtors have not had time to identify and evaluate potential claims. For example, in *In re I. Appel Corp,* 300 B.R. 564 (S.D.N.Y. 2003), the court found that "mandating a specific description of every claim the debtor intends to pursue could entail months or years of investigation and a corresponding delay in the confirmation of the plan of reorganization." *Id.* at 569. There was no risk of delay in Debtors' case.

after the statute of limitations expired and four years after the purported preferential transfers
were made.

Finally, as detailed above, Defendants would be severely prejudiced if the action is
allowed to go forward.  Records have been dealt with without efforts to organize and preserve
them as to Debtors, employees have left, etc. The only parties to benefit from the secrecy is
Debtors, all to Defendants' detriment.

Accordingly, the Complaint should be dismissed for laches.

**VII.    THE PROCEDURES ORDER AND EXTENSION ORDERS SHOULD BE
VACATED FOR ADDITIONAL REASONS.**

A.    The Procedures Order and Extension Orders Should Be Vacated Because There
Was No Cause To Extend The Time For Service

Even in the absence of Debtors' due process violations – which alone mandate that the
Extension Orders be vacated – the orders should be vacated on several additional grounds. First,
cause simply did not exist for the repeated extension requests made by Debtors.  Pursuant to Fed.
R. Civ. P. 4(m), made applicable by Fed. R. Bankr. P. 7004, courts can only extend a plaintiff's
time for service upon: (i) a showing of "good cause;" or (ii) where the court finds that a
discretionary extension of service is appropriate. *Eastern Refractories Co. v. Forty Eight
Insulations, Inc.*, 187 F.R.D. 503, 505-06 (S.D.N.Y. 1999).  Under either test, it was Debtors'
burden to establish entitlement to an extension. And, where, as here, the delay in service is
substantial, this burden is a heavy one to overcome. *Spinale v. United States*, 2005 WL 659150,
at *3 & *4 (S.D.N.Y. Mar. 16, 2005).

1.    *"Good Cause" Did Not Exist*

Under the first test, "good cause" exists only in "exceptional circumstances where the
plaintiff's failure to serve process in a timely manner was the result of circumstances beyond its

control." *Eastern Refractories*, 187 F.R.D. at 505. It does not exist in situations where the plaintiffs know and can serve the named defendants, but simply choose not to do so, and where the sole purpose in seeking the extension of time is to prevent defendants from learning that they had been sued. The latter situation is the case here. The Debtors could have easily served the avoidance complaints at any time; instead, the Debtors made the conscious decision to seal the complaints and make no effort to serve them.

In fact, good cause cannot exist where, as here, the Debtors' failure to serve the complaints was part of an admitted strategy to obtain a tactical advantage over the defendants when renegotiating the parties' ongoing and/or future business relationships. The dynamics of the negotiations between the Debtors and various defendants would likely have changed had the defendants known, when they were negotiating with the Debtors, that they were going to be sued for the return of millions of dollars.

In support of their Extension Motions, the Debtors claimed that good cause existed because: (i) future events would have likely "obviated the need to serve the [] complaint;" and (ii) it had requested the extension before the deadline expired, citing *Bank of Cape Verde v. Bronson*, 167 F.R.D. 370 (S.D.N.Y. 1996). *Bank of Cape Verde* is, however, inapplicable. In *Bank of Cape Verde*, the third-party plaintiff was pursuing good faith settlement negotiations with the plaintiff and the third-party defendants knew of the plaintiff's complaint (the plaintiff having already served all or most of the parties to the action prior to the expiration of the 120-day deadline). This is a far cry from the situation here, where Defendants were not, and could not have been in settlement negotiations with the Debtors -- because they did not know they had been sued (and, thus, could not take action to preserve evidence or protect themselves). Moreover, as discussed below, the idea that future events would "obviate the need to serve the []

30

complaint" ended (to the extent it ever existed in the first place) when the plan investors refused

to provide funding in April 2008, before entry of the Third and Fourth Extension Orders.

2.    <em>The Facts Did Not Warrant A Discretionary Extension</em>

Notwithstanding the lack of good cause, a court may still conclude that a discretionary

extension is appropriate. Four factors are to be considered in this regard:

> (1) whether the applicable statute of limitations would bar the
> refiled action; (2) whether the defendant had actual notice of the
> claims asserted in the complaint; (3) whether the defendant had
> attempted to conceal the defect in service; and (4) whether the
> defendant would be prejudiced by the granting of plaintiff's
> request for relief from the provision. *Eastern Refractories*, 187
> F.R.D. at 506.

Here, Defendants did not have notice of the claims asserted in the complaint (factor 2)

and, of course, never attempted to conceal that it had not been served (factor 3).

Moreover, there can be no doubt that Defendants has been prejudiced by the multiple

extensions (factor 4). The alleged preferential payments occurred four years ago and the statute

of limitations expired two years ago. During this time, because they had no meaningful notice

(which the Debtors unquestionably withheld), Defendants took no special steps to preserve their

records, to hold interviews with those who were knowledgeable about the Debtors' business

relationship or to make arrangements to keep in touch with those who could provide litigation

information, necessitating obtaining pertinent documents from Debtors instead of their own

records.  Defendants' ability to defend themselves has been substantially impaired.

Indeed, by keeping this action a secret for over two years after the statute of limitations

expired, the Debtors intentionally choose a course of action that will, as discussed above, ensure

the evils the statute of limitations were designed to prevent will actually occur. *Order of R.*

*Telegraphers*, 321 U.S. at 348-49.  Simply stated, the purposes of the statute of limitations will

31

be eviscerated if cause is found to have existed. *Bd. of Regents v. Tomanio*, 446 U.S. 478, 487 (1980); *Kubrick*, 444 U.S. at 117 (1979).

While it is clear that vacation of all or some of the Extension Orders will result in Debtors' claims being barred by the statute of limitations (factor 1), this fact, standing alone, did not warrant the granting of an extension. Courts have repeatedly recognized that "[t]he fact that plaintiff's claims may be time-barred does not require us to exercise our discretion in favor of plaintiff." *Eastern Refractories*, 187 F.R.D. at 506; *McKibben v. Credit Lyonnais*, 1999 WL 604883, at *4 (S.D.N.Y. Aug. 10, 1999) (denial of an extension "is still proper if it occurs after the expiration of the applicable statute of limitations period, and its effect is to bar the plaintiff's claims"). As the Supreme Court explained: "[E]ven if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and the right to be free from stale claims in time comes to prevail over the right to prosecute them." *Order of R. Telegraphers*, 321 U.S. at 349. Federal courts of appeals have, in fact, concluded that trial courts may revoke a previously granted Rule 4(m) extension if the court later determines that the extension was inappropriate (particularly where, as here, the defendant was not given notice or an opportunity to be heard in the first instance):

> [Rule 4(m)] does not address the authority of a district court that has granted [] an extension to revoke it if it subsequently determines that good cause had not been shown. We discern no reason why a district court should not be able to do so, especially were (as here) the party to be served was initially not given notice of the motions to extend or given a formal opportunity to respond to them. . . . If a district court concludes that good cause had not been shown, it is within its discretion to vacate its prior extension of time for effecting service that was based upon that erroneous foundation.

*McCrae v. KLLM Inc.*, 89 Fed. Appx. 361, 363 (3d Cir. 2004).

32

The statute of limitations issue Debtors now face is entirely the result of Debtors' own making. After the plan funding fell through in early 2008, the Debtors could no longer argue that they would not have to proceed with some or all of the preference actions. Indeed, as the facts changed, the original alleged motivation for the extension, a 100 cent plan, completely fell away. By that time, the Debtors also knew (or should have known) that it had been three years since the preference payments had purportedly been made, that the statute of limitations period had expired. The Debtors, nevertheless, made a conscious decision to seek an indefinite extension of the time to serve the complaints and to keep the complaints a secret (in order to continue to obtain a tactical advantage in their negotiations with various defendants). The Debtors must now live with the consequences of their actions. Simply, the Debtors' decision to conceal the avoidance actions in order to secure a better negotiating position (a decision that worked) should not have also been cause, good or otherwise, to allow the Debtors to benefit, again at the expense of the Defendants, by allowing them to avoid service of the Complaint and indefinitely extend the statute of limitations.

Accordingly, the Extension Orders should be vacated because there was no cause to extend (or continue to extend) the time for service.

### B.      The Extension Orders Should Be Vacated Because The Complaints Were Improperly Sealed

Finally, the Extension Orders should be vacated because Debtors improperly obtained leave to file their avoidance complaints under seal.

There "is a strong presumption and public policy in favor of public access to court records," which is "rooted in the public's First Amendment right to know about the administration of justice." *In re Food Management Group, LLC*, 359 B.R. 543, 553 (Bankr. S.D.N.Y. 2007) (internal citations and quotations omitted). In fact, the "public interest in

33

openness of court proceedings is at its zenith when issues concerning the integrity and transparency of bankruptcy court proceedings are involved." *Id.*; *see also Gitto v. Worcester Telegram & Gazette Corp. (In re Gitto Global Corp.)*, 422 F.3d 1, 7 (1st Cir. 2005) ("This governmental interest is of special importance in the bankruptcy arena, as unrestricted access to judicial records fosters confidence among creditors regarding the fairness of the bankruptcy system.").

Section 107(a) of the Bankruptcy Code codified the common law right of public access in the bankruptcy setting and provides, in relevant part, that "a paper filed in a case under this title and the dockets of a bankruptcy court are public records and open to examination by an entity at reasonable times without charge." 11 U.S.C. § 107(a); *In re Food Management Group, LLC*, 359 B.R. at 553. The "plain meaning of §107(a) mandates that all papers filed with the bankruptcy court are 'public records' unless the bankruptcy court 'decides to protect the information pursuant to the standards set forth in [§] 107(b).'" *In re Food Management Group, LLC*, 359 B.R. at 553 (quoting *Air Line Pilots Ass'n Int'l v. Am. Nat'l Bank and Trust Co. (In re Ionosphere Clubs)*, 156 B.R. 414, 433 n.7 (S.D.N.Y. 1993)).

Section 107(b) of the Bankruptcy Code establishes two exceptions to the general right of access where under "compelling or extraordinary circumstances" an exception is necessary. *Video Software Dealers Ass'n v. Orion Pictures Corp. (In re Orion Pictures Corp.)*, 21 F.3d 24, 27 (2d Cir. 1994). Because the statute reflects strong policy considerations, section 107 sets forth only two narrowly-defined exceptions:

> On request of a party in interest, the bankruptcy court shall, and on the bankruptcy court's own motion, the bankruptcy court may – (1) protect an entity with respect to a trade secret or confidential research, development, or commercial information; or (2) protect a person with respect to scandalous or defamatory matter contained in a paper filed in a case under this title.

34

11 U.S.C. § 107(b).  However, "a judge must carefully and skeptically review sealing requests to insure that there really is an extraordinary circumstance or compelling need" to keep the material private. *In re Food Management Group, LLC*, 359 B.R. at 554 (internal citation and quotation omitted).

Motions to seal documents are "disfavored" and, as a general rule "should be entered only when actually necessary to protect a party from harm." *In re Gitto Global Corp.*, No. 05-10334, 2005 WL 1027348, at *7 (D. Mass. May 2, 2005) (citing *In re Sherman-Noyes & Prairie Apartments Real Estate*, 59 B.R. 905, 909 (Bankr. N.D. Ill. 1986)). Another court explained: "It is a highly unusual and extraordinary remedy for the Court to seal the records in any case because of the generally-recognized rule of law that the public has a right to know." *In re EPIC Associates V*, 54 B.R. 445, 448 (Bankr. E.D. Va. 1985).

Here, the Debtors claimed that they needed special protection in order to preserve both the "status quo" and their "existing business relationships" and that this amounted to "commercial information" under the statute. (First Extension Motion, ¶ 33-34). In so doing, the Debtors claimed that they had "worked to preserve and repair their business relationship with many of the potential defendants during these cases and h[ad] negotiated or regained favorable credit terms with may suppliers and [were] continuing to do so." (*Id.* ¶37). This rationale, however, cannot possibly rise to the "exceptional circumstances" envisioned by Congress. The need to protect one's business operations and supplier relationships exists in every corporate reorganization. This garden-variety concern is not "unusual" or "exceptional" in any sense, and to so hold would eviscerate section 107's clear protections. Indeed, because the motivation advanced by the Debtors exists in nearly every case, bankruptcy courts recognize that: "Protective orders have been denied when they were sought merely to facilitate the debtors'

35

reorganization, or to assuage a defendant's fears that disclosure of the allegations in an adversary complaint would adversely affect its business activities." *EPIC Associates,* 54 B.R. at 449. The *EPIC Associates* court specifically stated that records cannot be sealed to "facilitate the rehabilitation of the debtors" alone. *Id.* at 448-49.[6]

"Commercial information" has never been defined by the Courts so broadly as to protect information that would be prejudicial to the Debtors vis-à-vis their own creditors. Rather, commercial information has been defined by the Second Circuit "as information which would cause an *unfair advantage to competitors* by providing them information as to the commercial operations of the debtor." *In re Orion Pictures Corp.*, 21 F.3d at 27 (emphasis added). The fact that the Debtors are seeking to avoid allegedly preferential payments to Defendants was, therefore, not "commercial information" that needed to be kept or should have been kept confidential. Nothing in the Debtors' sealed Complaint involves information that would give an "unfair advantage to competitors" – none of the information in the sealed Complaint has anything to do with confidential "commercial operations of the debtor."[7]

Accordingly, the Extension Orders should also be vacated on this ground.

## VIII.   THE COMPLAINT FAILS TO PLEAD FACTS SUFFICIENT TO STATE A CLAIM FOR RELIEF AND SHOULD BE DISMISSED.

Finally, Debtors' Complaint does not state a claim for relief under 11 U.S.C. § 547, and, therefore, must be dismissed pursuant to Rule 7012(b)(6).

---

[6] In any event, any claimed rationale for sealing the Complaint disappeared before entry of the Third and Fourth Extension Orders -- the plan had already been confirmed and the Reorganized Debtors had long ceased to have ongoing business relationships with Defendants.

[7] In support of their proposition that maintenance of ongoing business relationships was "commercial information" entitled to protection, the Debtors cited *In re Service Merchandise, et al.*, Case No. 399-02649 (Bankr. M.D. Tenn. Feb. 27, 2001). There, the court granted the debtors authority to seal certain adversary proceedings so that they could continue negotiations with the defendants, who were also the debtor's business partners. Even if the ruling were correct as a matter of law, which Defendants strongly dispute, the unpublished case is inapposite to the situation here as Defendants were not a business partner of the Debtors.

In *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court established the standard by which federal courts are to determine motions to dismiss.  Under *Twombly*, to survive a motion to dismiss, the complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Id*. at 570. A pleading that only offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not suffice. *Id*. at 555.  The Supreme Court recently elaborated on its holding in *Twombly*:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action supported by mere conclusory statements, do not suffice. Rule 8 marks a notable and generous departure from the hyper-technical, codepleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949, 1950 (2009) (emphasis added; internal citations to *Twombly* and corresponding quotation marks omitted).

In *Angell v. Haven (In re Careamerica)*, 409 B.R. 346 (Bankr. E.D.N.C. 2009), the bankruptcy court applied the Supreme Court's holding in *Twombly* to a preference action. The

defendant filed a motion to dismiss the trustee's claims to avoid alleged preferential and

fraudulent transfers. The bankruptcy court concluded that, based on the Supreme Court's

holdings in *Twombly*, the trustee's complaint must plead sufficient factual allegations to establish

that a preference cause of action is plausible. *Id.* at 350. The bankruptcy court then analyzed each

element of the preference statute to determine if sufficient factual allegations were pleaded.

The bankruptcy court held that the trustee's complaint did not contain sufficient factual

allegations to show it was plausible that a transfer of an interest of the debtor in property had

occurred because the complaint failed to identify which of the debtors made the alleged transfers.

*Id.* Moreover, the bankruptcy court held that the trustee's complaint did not contain sufficient

factual allegations to show it was plausible that the alleged transfers were made on account of an

antecedent debt. The bankruptcy court explained that "the trustee must assert the nature and

amount of the antecedent debt in order to allege a plausible claim for relief." *Id.* at 351. The

trustee's complaint merely recited the statutory element that the transfer was made "for, or on

account of, an antecedent debt owed by the Debtors to the Defendant before the transfers were

made." *Id.* The complaint lacked any facts showing the existence of an antecedent debt. The

bankruptcy court explained that in order to satisfy the pleading requirements under *Twombly* "the

trustee must allege facts regarding the nature and amount of the antecedent debt which, if true,

would render plausible the assertion that a transfer was made for or on account of such

antecedent debt." *Id.*

Like the complaint at issue in *Careamerica*, the Complaint in the instant case does not

contain sufficient factual matter to state a claim for relief under Section 547 that is plausible on

its face. The Complaint contains nothing more than a formulaic recitation of the elements of a

claim for relief under 11 U.S.C. § 547. The Complaint contains no factual allegations other than a list of alleged transfers contained in Exhibit 1 to the Complaint. *Id.*

First, the Debtors do not allege that they actually made the alleged transfers listed on Exhibit 1. Instead, the Debtors allege that they "made, or caused to be made," the alleged transfers. *Id.* ¶¶ 10, 12 and 13.

Second, like the complaint dismissed by the court in *Careamerica*, the Complaint here does not identify the Debtor(s) that are alleged to have made the transfers listed on Exhibit 1. Instead, the Complaint alleges that the alleged transfers were made by "Plaintiffs" which are defined to include "all of the Debtors in the above-captioned chapter 11 cases." *Id.* p.2 n.1.

Third, the Complaint does not identify the recipient of any alleged transfer. The Complaint names two defendants that allegedly received transfers but fails to identify the transfers allegedly received by each such entity. *Id.* ¶¶ 3, 10, 12 and 13. Moreover, the Complaint alleges that the transfers were made "to, or for the benefit of Defendants" leaving open the possibility that the transfers were made to some unidentified third party. *Id.* ¶ 12. Finally, like the trustee's complaint in *Careamerica*, the Complaint in the instant case does not allege any facts regarding the nature or amount of the antecedent debt.

Accordingly, the Court should dismiss the Complaint under *Iqbal* and *Twombly* .

## IX.    IN THE ALTERNATIVE, DEBTORS SHOULD BE REQUIRED TO FILE A MORE DEFINITE STATEMENT

In any event, to the extent the Court concludes that the Complaint should not be dismissed under *Iqbal* and *Twombly*, Defendants respectfully request that the Court order Debtors, pursuant to Fed. R. Civ. P. 12(e), to file a more definite statement, addressing the deficiencies outlined above.

39

**X.    THE COMPLAINT SHOULD BE DISMISSED AS TO ENTITIES WHICH DO NOT EXIST**

Debtors have named an entity that is not a legal entity, "Bosch." Defendants, therefore, move to have that entity struck from the Complaint and the case dismissed as against it and Bosch LLC.

## <u>CONCLUSION</u>

Debtors have engaged in conduct that violates core tenets of American jurisprudence in seeking to conceal from Defendants that they had been sued for over a two year period of time. Debtors' failure to serve meaningful notices of the Extension Motions has unduly prejudiced Defendants and violates Defendants' basic legal rights, including under the Due Process Clause. The Complaint was not served on Defendants until well after the expiration of the statute of limitations and four years after the alleged preferential transfers were made and, therefore, should be dismissed to prevent Debtors from impermissibly using the procedural rules to expand the Congressionally-mandated two-year statute of limitations. The claims are also barred by judicial estoppel, laches and res judicata. Moreover, the Debtors abandoned the claim against Bosch GmbH as Bosch GmbH is a foreign supplier. The Complaint must also be dismissed under Fed. R. Civ. P. 12(b) due to Debtors' failure to satisfy the pleading requirements of Rule 8 (or, in the alternative, a more definite statement should be ordered). Finally, the Complaint should be dismissed because there was no cause to extend the time for service, because the Complaint was improperly served, and because the Complaint names a non-existent entity as a defendant.

WARNER NORCROSS & JUDD LLP

Dated: May 14, 2010                    By____/s/ Michael B. O'Neal_____
                                          Gordon J. Toering (GT-3738)
                                          (Admitted *Pro Hac Vice*)
                                          Michael B. O'Neal (MO-9511)
                                          (*Pro Hac Vice* Pending)
                                          Warner Norcross & Judd LLP
                                          900 Fifth Third Center
                                          111 Lyon Street, NW
                                          Grand Rapids, MI  49503-2487
                                          Ph:  (616) 752-2000
                                          Fax:  (616) 222-2500
                                          gtoering@wnj.com
                                          moneal@wnj.com
                                             Attorneys for Robert Bosch GmbH and
                                             Robert Bosch LLC

1784340

41