CALFEE, HALTER & GRISWOLD LLP
JAMES M. LAWNICZAK (Ohio #0041836)
NATHAN A. WHEATLEY (Ohio #0072192)
TIIARA N. A. PATTON (TP-8803)
1400 KeyBank Center
800 Superior Avenue
Cleveland, Ohio 44114
Telephone: (216) 622-8200
Facsimile: (216) 241-0816
Email: nwheatley@calfee.com

*Attorneys for Park-Ohio Industries, Inc.*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------x
                                           )
In re:                                     )    Chapter 11
                                           )    Case No. 05-44481 (RDD)
    DPH HOLDINGS CORP, *et al.*,           )
                                           )
------------------------------------------x
                                           )
DELPHI AUTOMOTIVE SYSTEMS, LLC,            )
                                           )
    Plaintiff,                             )    Adv. Pro. No. 07-02563 [RDD]
                                           )
                                           )
v.                                         )
                                           )
PARK OHIO INDUSTRIES INC.,                 )
                                           )
    Defendant.                             )
------------------------------------------x

**BRIEF IN OPPOSITION TO REORGANIZED DEBTORS' MOTION FOR LEAVE TO
FILE AMENDED COMPLAINT**

    Defendant, Park-Ohio Industries, Inc. ("Park-Ohio"), by and through counsel, submits the

following brief in opposition to Reorganized Debtors, DPH Holdings Corporation ("Reorganized

Debtors" or "Plaintiffs"), Motion for Leave to Amend Complaint (the "Motion for Leave"). As

set forth in greater detail below, the Motion should be denied based upon the movants' failure to

{00977539.DOC;1}

establish cause in the Motion for Leave as well as the futility of Reorganized Debtors' amended statement of claims and the fact that the additional preference transfers do not relate back to Original Complaint. In support of its brief in opposition, Defendant states as follows:

## BACKGROUND

Delphi Corporation and certain of its affiliates (the "Reorganized Debtors") filed voluntary petitions for relief under chapter 11 of the U.S. Bankruptcy Code on October 8 and 14, 2005. In September 29, 2007, the Reorganized Debtors commenced over 700 adversary proceedings (the "Preference Actions"), against numerous defendants including Park-Ohio (the "Original Complaint"), under seal and without notice to Park-Ohio. The Original Complaint sought to avoid and recover $3,814,041.19 of alleged preference transfers made in late 2005 under 11 U.S.C. §§ 547 and 550.

The Reorganized Debtors filed several motions and obtained several orders of this Court allegedly to preserve estate claims and extend, pursuant to Rule 4(m) of the Federal Rules of Civil Procedure, the deadline for service in the Preference Actions. The Reorganized Debtors did not serve the summonses or complaints in the Preference Actions until late 2009 or early 2010. Park-Ohio was not served with a summons and the Complaint until on or about March 23, 2010, nearly 4½ years after the Petition Date and nearly 2½ years after the filing of the Original Complaint and expiration of the applicable statute of limitations.

Plaintiffs' Original Complaint contained broad, generic statements that failed to satisfy the pleading requirements set forth in Rule 8 of the Federal Rules of Civil Procedure. Therefore, various defendants filed motions to dismiss or joinders therein on or before May 14, 2010 (collectively, the "First Wave Dismissal Motions") as to their respective Preference Actions.

Park-Ohio also filed a First Wave Dismissal Motion in this proceeding. On June 7, 2010, Plaintiffs filed an Omnibus Response to the First Wave Dismissal Motions.

On September 7, 2010, following a hearing on July 22, 2010 (the "Dismissal Hearing"), the Court signed its Order Granting in Part First Wave Motions to Dismiss (the "Dismissal Order,"), which *inter alia,* (a) dismissed all claims in the Adversary Proceedings, and (b) ordered the Reorganized Debtors to file, no later than September 7, 2010, a Motion for Leave to Amend and attach a proposed amended complaint against the defendants that, for each alleged transfer, set forth, *at a minimum*, the transferor, the transferee, any known subsequent transferee against whom relief is sought, the antecedent debt, and a specific Reorganized Debtor as the plaintiff.

On September 7, 2010, the Reorganized Debtors filed the Motion for Leave, which included a proposed amended complaint against Park-Ohio (the "Amended Complaint"). In the Amended Complaint, Plaintiffs seek to avoid and recover $7,822,918.62 of alleged preference transfers— an increase of $4,008,877.43 from the Original Complaint. For the reasons set forth below, and within the Briefs in Opposition to the Motion for Leave filed by other defendants in the other Preference Actions, (which Park-Ohio adopts and incorporates herein), the Court should deny the Motion for Leave with respect to Park-Ohio and dismiss the Preference Action with prejudice.

**ARGUMENT**

I.    **STANDARD FOR GRANTING LEAVE TO AMEND**

Under Rule 15 of the Federal Rules of Civil Procedure, made applicable to bankruptcy proceedings by Federal Bankruptcy Rule of Proceeding 7015, leave to amend is not granted automatically; instead "it is within the sound discretion of the court whether to grant leave to amend." *John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp.*, 22 F.3d 458, 462 (2d Cir. 1994). "[C]onsiderations of undue delay, bad faith, and prejudice to the opposing party [are] all

touchstones of a district court's discretionary authority to deny leave to amend." *Barrows v. Forest Laboratories, Inc.*, 742 F.2d 54, 58 (2d Cir. 1984). Furthermore, plaintiff has the burden to establish cause for allowing amendment of its complaint. *Hunt v. Alliance N. Am. Gov't Income Trust, Inc.*, 159 F.3d 723, 728 (2d Cir. 1998).

"Where it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). For example, "it is proper to deny leave to replead where there is no merit in the proposed amendments or amendment would be futile." *Hunt,* 159 F.3d at 728. Courts thus are justified in denying leave to amend where, as here, the proposed amendment cannot withstand a motion to dismiss or fail to comply with a court's order regarding required allegations. *Ruffolo*, 987 F.2d at 131 (affirming denial of leave to amend where proposed amendment failed to allege necessary facts); *McLaughlin v. Anderson*, 962 F.2d 187, 195 (2d Cir. 1992) (affirming denial of leave to amend where proposed amendment failed to comply with court's order).

Plaintiffs are also not entitled to amend their complaint to include additional transfers when they have not met their burden of proving cause to do so. *In re 360networks (USA) inc.*, 367 B.R. 428, 432-33 (Bankr. S.D.N.Y. 2007). Although leave to amend is freely given, the plaintiff must meet its burden of proving it has proper cause to include additional defendants, claims, or preference transfers. *Coan v. O&G Indus., Inc. (In re Austin Driveway Servs., Inc.)*, 179 B.R. 390, 397, 400 (Bankr. D. Conn. 1995). As discussed in more detail below, Reorganized Debtors have not met their burden and have not demonstrated cause to be allowed to add additional transfers in the Amended Complaint, and Reorganized Debtors' Motion for Leave should be denied.

## II. LEAVE TO AMEND PLEADING SHOULD BE DENIED AS FUTILE WHEN AMENDMENT DOES NOT CORRECT PREVIOUS INADEQUACIES

### A. Reorganized Debtors' Amended Complaint Fails To Comply With The Dismissal Order By Not Setting Forth The Antecedent Debt

Amendment of a complaint is futile and leave to amend should be denied when the amended complaint would be dismissed for the same deficiencies contained in the original complaint. *Ruffolo,* 987 F.2d at 131; *Hunt,* 159 F.3d at 728. Plaintiffs' Amended Complaint fails to comply with the minimum requirements set forth in this Court's Dismissal Order. Specifically, Plaintiff's Amended Complaint once again fails adequately to plead facts regarding the antecedent debt for each alleged transfer by Delphi Automotive Systems, LLC ("DAS"). Plaintiffs' only allegations regarding the existence of an antecedent debt are bare-bones and are presented in Paragraph 22 of the Amended Complaint, where Plaintiffs allege:

> Plaintiff made, or caused to be made, each Transfer listed on Exhibit 1 for, or on account of, an antecedent debt owed to Defendant as of the date on which each Transfer was made. The documents evidencing the antecedent debt include the purchase orders and/or invoices/bills of lading identified on Exhibit 1, which purchase orders and/or invoices/bills of lading include evidence of the amount of the antecedent debt and the approximate dates the subject goods contemplated by the Agreements were ordered by Plaintiff pursuant to the Agreements and/or were provided by Defendant.

Pursuant to Section 547(b)(2) of the Bankruptcy Code, an avoidance action requires a transfer "for or on account of an antecedent debt owed by the debtor before such transfer was made." 11 U.S.C. § 547(b)(2). The Bankruptcy Code does not define the term "antecedent debt." The Bankruptcy Appellate Panel for the Second Circuit has stated, however, that:

> The case law is clear that for purposes of Section 547(b)(2) "an antecedent debt" is a pre-existing debt that was incurred when the debtor previously obtained a property interest in the consideration provided by the creditor that gave rise to the debt. The consideration may have been a loan or ***the furnishing of goods or services***, but when the debtor ***obtained the loan, goods or services***, the creditor had a claim, matured or unmatured, that it could then assert against the debtor's bankruptcy estate if payment was not

made at the time a petition was filed. At that point the debt was "antecedent" for purposes of Section 547(b)(2).

*In re Bennett Funding* Group, 220 B.R. 739, 742 (Bankr. 2d Cir. 1998) (emphasis supplied). An antecedent debt generally arises when the debtor "obtain[s]" the goods or services for which it contracted. *Id*.

Factual allegations regarding an "antecedent debt" necessary to satisfy an avoidance action therefore must address three distinct elements: (i) a debt (evidenced by a contract and performance under that contract giving rise to an obligation to pay), (ii) which was owed by the debtor, and (iii) which was antecedent to the transfer. Plaintiffs fail to plead any of these elements in anything more than a conclusory manner, which this Court, in dismissing Delphi's original complaint, has already recognized is impermissible. *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

### B. Plaintiffs Fail To Plead An "Antecedent" Debt

Plaintiffs also fail to plead facts establishing that the alleged debts in question were actually "antecedent." Exhibit 1 to the Amended Complaint does not state when any alleged debt arose. The list of alleged preference transfers does not include purchase order dates, shipment dates, date of invoice, or any other foundation for Plaintiffs' conclusory assertions that DAS has an antecedent debt. Plaintiffs lack the factual basis necessary to support the existence of any "antecedent" debt as required to state a claim under Section 547(b)(2) of the Bankruptcy Code.

### C. DAS Fails To Identify A "Debt Owed By The Debtor"

Plaintiffs fail to make any allegation whatsoever that any of its purported transfers were made based on a "debt owed *by the debtor.*" DAS is identified as the purported Plaintiff in the

Amended Complaint, but DAS does not allege that it owed a debt to Park-Ohio that was satisfied via the transfers. Plaintiffs instead merely allege that "Defendant was required to deliver goods for the benefit of the Reorganized Debtors" and that the debt was "owed to Defendant," presumably because DAS does not know which of the Reorganized Debtors actually owed the debt. Amended Complaint ¶¶ 15, 22 (emphasis supplied). Under the plain language of Section 547(b)(2) of the Bankruptcy Code, DAS cannot maintain an avoidance action based on such third-party debts.

        D.      **Amended Complaint is Futile Because Plaintiffs Did Not Properly Plead and Cannot Prove it was Insolvent at the Time of Disputed Transfers**

Plaintiff fails to plead properly in its Amended Complaint and, cannot prove, an essential element of its avoidance claim: that DAS – the only plaintiff named in the Amended Complaint – made transfers to Park-Ohio at a time when DAS was insolvent. *See* 11 U.S.C. § 547(b) (authorizing a trustee to avoid a transfer only if it was, among other things, "made while the debtor was insolvent").

Plaintiffs' only allegation of insolvency merely is a bare bones, conclusory recitation of the avoidance statute, namely that: "[p]ursuant to Bankruptcy Code section 547(f), for purposes of this Adversary Proceeding, Plaintiff is presumed to have been, and was in fact, insolvent at the time the Transfers were made." Amended Complaint ¶ 23. This is exactly the "[t]hreadbare recital[] of the elements of a cause of action supported by mere conclusory statements," that the Supreme Court stated "does not suffice." *Iqbal*, 129 S. Ct. at 1949.

Delphi's failure to properly plead facts that show DAS's insolvency is no surprise. This is because DAS was solvent. In fact, DAS's own bankruptcy schedules show DAS was solvent, and had more than $2.6 in net equity, at the time of its petition. These DAS admissions conclusively rebut any presumption of DAS's insolvency during the preference period. *See, e.g.*,

*In re Roblin Industries, Inc.*, 78 F.3d 30, 34-35 (2d Cir. 1996) (schedules showing solvency rebutted presumption so that trustee bore burden of coming forward to prove insolvency); *Akers v. Koubourlis*, 869 F.2d 1319, 1322 (9th Cir. 1989) (debtors' schedules indicating greater assets than debts rebutted presumption); *IMF Sales Associates, Inc. v. Racal-Vadic Information Systems, Inc.*, 94 B.R. 223, 225 n.3 (Bankr. D. Mass 1988) ("Racal has rebutted the [section 547(f) presumption] by offering the schedules which show the debtor was solvent."); *Fokkena v. Winston, Reuber, Byrne, P.C.*, 189 B.R. 744, 747 (Bankr. N.D. Iowa 1995) ("Debtor's schedules filed in his chapter 11 case are sufficient to support a finding of solvency at the time of the transfers. The presumption was rebutted.").

Moreover, DAS's parent, Delphi, was also solvent. During the preference period, Delphi even distributed a dividend to its shareholders – a dividend that was never returned. Then, during the first two years of its bankruptcy, Delphi represented that it expected a 100 cent plan.

Moreover, Delphi's performance in the marketplace, which many observers believe is the best indicator of enterprise value, also confirms solvency. *See, e.g., Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. La Salle P'ship*, 526 U.S. 434, 457 (1999) (acknowledging that "the best way to determine value is exposure to a market"); *VFB LLC v. Campbell Soup Co.*, 482 F.3d 624, 633 (3d. Cir. 2007) ("Absent some reason to distrust it, the market price is a more reliable measure of the stock's value than the subjective estimates of one or two expert witnesses."); *Iridium IP LLC v. Motorola, Inc.*, 373 B.R. 283, 293 (Bankr. S.D.N.Y. 2007) (Peck, J.) ("[T]he public trading market constitutes an impartial gauge of investor confidence and remains the best and most unbiased measure of fair market value and, when available to the Court, is the preferred standard of valuation."). For example, in the month leading up to Delphi's bankruptcy, Delphi was trading on the New York Stock Exchange at around $3-5 per share, suggesting a market

capitalization of between $1,122,813,802 and $3,312,353,816. Delphi Corporation also made a dividend payment from capital surplus during the preference period. Given Plaintiffs' failure properly to plead insolvency and the fact that DAS was solvent (with a $2.6 billion net equity), any amendment is futile here. DAS cannot prove a crucial element of its avoidance action.

Reorganized Debtors seek to file an Amended Complaint. But, this Court should deny their Motion for Leave since amendment would be futile. The Amended Complaint fails to comply with the Dismissal Order for the following reasons: (1) It does not setting forth the antecedent debt; (2) it fails to establish that the alleged debt is actually "antecedent"; (3) it fails to identify a "debt owned by the debtor"; and (4) it does not properly plead or establish that DAS was insolvent at time of disputed transfers. For these reasons, the Amended Complaint would be dismissed under Rule 8 of the Federal Rules of Civil Procedure, making amendment futile.

### III.    REORGANIZED DEBTORS' ARGUMENT THAT HIGHER PLEADING STANDARD IN *IQBAL* ALLOWS AMENDMENT IS IRRELEVANT

Since the Original Complaints did not satisfy the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure, as set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ("*Twombly*"), and *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009) ("*Iqbal*"), Reorganized Debtors assert that leave should be freely given since the Original Complaint was filed before the Supreme Court decided *Iqbal*. In the instant case, the Original Complaint was filed two years prior to *Iqbal* but was not served on the Defendant until after that case was published. The Reorganized Debtors could have motioned the Court to amend, prior to service, what were clearly defective complaints. Moreover, the Reorganized Debtors ignore that the Court's holding in *Iqbal* did not alter a court's ability to deny amendment based on futility. When there is no merit in the proposed amendment or amendment would be futile, it is proper for the court to deny

leave to amend complaint. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Hunt v. Alliance N. Am. Gov't Income Trust, Inc.*, 159 F.3d 723, 728 (2d Cir. 1998).

IV.   **PREFERENCE TRANSFERS ADDED IN AMENDED COMPLAINT DO NOT RELATE BACK TO THE FILING OF ORIGINAL COMPLAINT**

Reorganized Debtors' Motion for Leave should be denied because the Amended Complaint contains additional preference transfers that do not relate back to the Original Complaint. Reorganized Debtors rely on Rule 15(a)(2) of the Federal Rules of Civil Procedure, made applicable herein by Rule 7015 of the Federal Rules of Bankruptcy Procedure, to support their request to file the Amended Complaint. Rule 15(a)(2) provides that leave to amend should be freely granted. However, leave must be denied if, *inter alia*, the amendment would be futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962). A proposed amendment is futile when the plaintiff seeks to assert additional claims that would be barred by the statute of limitations and the proposed amendment does not relate back to the original pleading under Rule 15(c) of the Federal Rules of Civil Procedure. *In re 360networks (USA) inc.*, 367 B.R. 428, 432-33 (Bankr. S.D.N.Y. 2007).

Under 11 U.S.C. § 546(a), there is a 2-year statute of limitations for the Debtors to bring avoidance actions from the filing of bankruptcy action. Reorganized Debtors filed their chapter 11 petition on October 8, 2005. Accordingly, the statute of limitations with respect to any preference claim asserted by Reorganized Debtors pursuant to 11 U.S.C. §§ 547 expired in October 2007. Thus, the new, clearly time-barred, additional transfers listed in Plaintiffs' Amended Complaint must relate back to the Original Complaint to avoid dismissal.

Plaintiffs' Amended Complaint does not and cannot relate back to the Original Complaint under Rule 15(c). Rule 15(c) provides, in relevant part, that "[a]n amendment of a pleading relates back to the date of the original pleading when … the amendment asserts a claim or

defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading ….” Fed. R. Civ. P. 15(c). Rule 15(c) cannot "undermine the purpose of repose for which statutes of limitations were designed." *In re Enron Corp.*, 357 B.R. 257, 263 (Bankr. S.D.N.Y. 2006).

The primary consideration in a "relation back" inquiry is "whether adequate notice of the matters raised in the amended pleading has been given to the opposing party within the statute of limitations 'by the general fact situation alleged in the original pleading.'" *Stevelman v. Alias Research, Inc.,* 174 F.3d 79, 86-87 (2d Cir. 1999) (citation omitted). Courts do not consider the parties' subjective state of mind, but will only objectively consider whether the fact allegations in the original complaint gave the defendant notice of additional claims asserted in the amended complaint. *In re Kam Kuo Seafood Corp.*, 67 B.R. 304, 306 (Bankr. S.D.N.Y. 1986). While Rule 15(c) does not require the original complaint to give the defendant notice of new or additional legal theories the plaintiff seek to assert, it must inform the defendant of the facts that support any new, additional claims. *In re Everfresh Beverages, Inc.*, 238 B.R. 558, 573-74 (Bankr. S.D.N.Y. 1999).

In the context of preference claims, relation back "is the exception rather than the rule" because "[e]ach transfer between the debtor and a potential preference defendant is an isolated event." *Coan v. O&G Indus., Inc. (In re Austin Driveway Servs., Inc.)*, 179 B.R. 390, 397, 400 (Bankr. D. Conn. 1995) (denying proposed amendment that asserted an additional preference amount not asserted in prior complaint; permitting trustee to freely amend complaint to allege any other transfers "would create marketplace chaos"). "A preference action based on one transfer does not put [a] defendant on notice of claims with respect to any other unidentified

transfers." *360networks (USA) inc.*, 367 B.R. at 434 (denying "relation back" amendment to preference complaint to add additional transfers totaling $12.5 million).

Here, as the Original Complaint identified "Transfer Amount[s]" totaling $3,814,041.19 that Plaintiffs alleged to be avoidable transfers. Original Complaint, Exh. 1. Those transfers were in widely varying amounts and were allegedly made on different days at varying intervals. In contrast, in the proposed Amended Complaint, Plaintiffs seek to recover allegedly avoidable transfers that total $7,822,918.62. Thus, Plaintiffs seek to add $4,008,877.43 in additional transfers to the Amended Complaint that were not identified, or even hinted at, in the Original Complaint.

The Original Complaint was a threadbare, form pleading. It was narrowly circumscribed and pertained only to "*certain* avoidable transfers" that were "*particularly identified* in Exhibit '1' annexed [t]hereto." Original Complaint, ¶ 3 (emphasis added). Thus, "the plain language of the [Original] Complaint reflects that no other claims were being asserted or contemplated." *360networks (USA) inc.*, 367 B.R. at 434 (denying relation back even when original complaint sought "at least" amount specified therein, which plaintiff argued put defendant on notice of potential additional amounts); *Golden v. The Guardian (In re Lenox Healthcare, Inc.)*, 343 B.R. 96, 106 (Bankr. D. Del. 2006) (rejecting amended complaint because original complaint simply listed dates and amounts of payments and did not set forth any facts that could have encompassed additional transfers). Further, the Original Complaint does not mention any agreement between Park-Ohio and any of the Reorganized Debtors; nor does it even describe generally the relationship among the parties. *360networks (USA) inc.*, 367 B.R. at 434; *Lenox Healthcare*, 343 B.R. at 106. The Original Complaint does not include any facts that would put Park-Ohio on notice that any transfers other than those in Exhibit 1 thereto might later be

challenged. Finally, the additional transfers, like the transfers alleged in the Original Complaint, are widely divergent in amount and of varying frequency.

The Original Complaint and the transfers alleged therein did not put Park-Ohio on notice of any potential scheme of identical or systematic payments that the Plaintiffs might rely on later to include any of the additional transfers alleged in the Amended Complaint. *Lenox Healthcare*, 343 B.R. at 106 (denying relation back because transfers varied in amount and frequency); *Peltz v. CTC Direct, Inc. (In re MBC Greenhouse Co.)*, 307 B.R. 787, 792-93 (Bankr. D. Del. 2004) (rejecting amended preference complaint that would add "a whole new set of specific transactions" – i.e., 33 new transactions totaling $5.1 million – that were, with one exception, distinct from those in original complaint); *cf. Brandt v. Gerardo (In re Gerardo Leasing, Inc.)*, 173 B.R. 379, 390-92 (Bankr. N.D. Ill. 1994) (allowing additional transfers in amended complaint to relate back because they were continuation of "systematic" payments made in the identical amount and with same weekly frequency as those asserted in original complaint). Consequently, Park-Ohio requests that the Court deny the Motion for Leave to the extent it seeks to include additional transfers in the Amended Complaint.

V. **THE PROPOSED AMENDED COMPLAINT WOULD SUBSTANTIALLY PREJUDICE PARK OHIO**

In recognition of the natural prejudice resulting from a party's delay in prosecuting an action, including by delaying service of the complaint, the Second Circuit recognizes that "prejudice to defendants resulting from unreasonable delay may be presumed . . . [and] is particularly appropriate where, as here, the plaintiff's delay was prolonged." *Shannon v. GE*, 186 F.3d 186 (2d Cir. 1999) (internal citations and quotations omitted).

Indeed, courts regularly recognize that "[f]ailure to use reasonable diligence in serving a summons is more fraught with possibilities of unfairness and abuse than failure to diligently

prosecute an action after summons is served." *Richardson v. United White Shipping Co.*, 38 F.R.D. 494, 496 (N.D. Cal. 1965) (dismissal where service perfected 28 months after the filing of the action). This is because such delay "affects all the defendant's preparations." *Anderson, Anderson v. Air West, Inc.*, 542 F.2d 522, 525 (9th Cir. 1976) (dismissal under Rule 41(b) based on failure to serve for a year despite entry of order extending service period); *Farhang v. Indian Inst. of Tech.*, 2010 U.S. Dist. LEXIS 53975, at *14-15 (N.D. Cal. June 1, 2010) (delayed service prejudiced defendant "by depriving him of the opportunity to engage in earlier preparation and participation in the suit."). Indeed, "[d]elay alone can infuse an adverse element into the proper flow of litigation: evidence deteriorates or disappears, memories fade, and witnesses die or move away." *Veazey v. Young's Yacht Sale & Service, Inc.*, 644 F.2d 475, 478 (5th Cir. 1981) (dismissal under Rule 41(b) for failure to serve for nearly 21 months).

In addition, where, as here, a plaintiff files its complaint immediately prior to the running of the statute of limitations and then fails to serve, prejudice to defendants is magnified:

> Once the statute [of limitations] has run, a potential defendant who has not been served is entitled to expect that he will no longer have to defend against the claim. If service can be delayed indefinitely once the complaint is filed within the statutory period, these expectations are defeated and the statute of limitations no longer protects defendants from stale claims.

*Anderson*, 542 F.2d at 525; *see also Zapata v. New York,* 502 F.3d 192, 198 (2d Cir. 2007) ("It is obvious that any defendant would be harmed by a generous extension of the service period beyond the limitations period for the action, especially if the defendant had no actual notice of the existence of the complaint until the service period had expired. . ."); *Redding v. Essex Crane Rental Corp. of Alabama,* 752 F.2d 1077, 1078 (5th Cir. 1985) (holding that it was an "obvious misuse of the judicial process" to prevent defendant from learning of action by failing to serve).

### A.  Reorganized Debtors' Undue Delay Should Bar Amendment

This Court did not order Reorganized Debtors to delay service on Park-Ohio or suggest that Reorganized Debtors should do so.  Rather, this Court merely extended the deadline by which Reorganized Debtors had to complete service.  It was the Debtor that made the election to keep its avoidance action from Park-Ohio in order to negotiate more favorable contract terms than it otherwise would have been able to had the defendants known about the avoidance actions. Having made this election, Reorganized Debtors clearly undertook a risk that, when the defendants were finally served, the avoidance actions would be dismissed for any number of reasons, including the statute of limitations.  This risk certainly was not unknown.  Indeed, this Court specifically reminded Reorganized Debtors that the extensions granted by the Court were without prejudice to the rights of the defendants in the avoidance actions to argue defenses other than statute of limitations.  10/22/09 Tr., at p. 6 excerpts attached as Exhibit A.

Reorganized Debtors' actions here are reminiscent of the plaintiff's failure to serve process in *Anderson v. Air West,* 542 F.2d 522 (9th Cir. 1976), which is instructive.  In *Anderson*, the plaintiff filed suit the day before the statute of limitations was due to run. *Id.* at 524.  The plaintiff then obtained an *ex parte* order extending indefinitely the time for serving

{00977539.DOC;1 }   15

defendants until he could obtain their addresses through discovery. *Id.* Rather than proceed with this discovery and diligently pursue service, however, the plaintiff delayed. *Id.*

When the plaintiff in *Anderson* ultimately did effectuate service – one year later – the trial court dismissed the action under Fed. R. Civ. P. 41(b), holding that the plaintiff, like Reorganized Debtors here, "deliberately delayed, trying to decide whether he really wanted to serve the [Defendants]." *Id.* at 525. The Ninth Circuit then affirmed, stating that:

> The importance of personal service in triggering defense preparation is demonstrated by this case, where the defendants did not get together to plan their defense until after they had all been served. Plaintiff's assertion that they could, and should, have been planning earlier is an attempt to switch the burden of going forward with the action to the defendants. The plaintiff cannot in this manner escape her responsibility to diligently prosecute the action.

*Id.* at 525.

Here, as in *Anderson*, Reorganized Debtors chose to keep this action a secret for well over two years ***after*** the statute of limitations expired, adopting a course of action that guaranteed the evils that the statutes of limitations were designed to prevent would actually occur – evidence has been lost, memories have faded and witnesses have disappeared. Reorganized Debtors should not be allowed to take further advantage of the prejudice resulting from its undue delay by amending now.

### B.   No Further Amendment Should be Permitted

This Court made clear on the record during the hearing on the "First Wave Motions" that it would not tolerate Delphi presenting a proposed amended complaint that failed to meet its minimal pleading requirements. Specifically, responding to a request that Reorganized Defendants should be held to a higher standard of pleading specificity given Reorganized Defendants' five years to prepare for this adversary proceeding, this Court stated:

> [I]t's a motion for leave to amend the complaint on unusual circumstances. ***It's really their risk if I turn them down again, right***? [I] think that the risk of being turned down on the basis [that] the complaint still isn't good enough [after amendment] is a serious enough – ***the consequences of that are serious enough*** so I assume that the plaintiffs are going to be pretty careful.

7/22/10 Tr., at p. 213, excepts attached as Exhibit B (emphasis supplied).

Despite this Court's admonition and despite having an unprecedented amount of time to acquire the data necessary to make out its *prima facie* case, Reorganized Debtors' Amended Complaint still fails even to meet the minimum pleading requirements identified in the Dismissal Order. Delphi has abused this process for too long and cost Park-Ohio and this Court far too much in both time and resources. No further amendment is warranted, and Reorganized Debtors' avoidance action against Park-Ohio should now be dismissed with prejudice.

## VI. THE DEFENDANT INCORPORATES ALL APPLICABLE ARGUMENTS RAISED BY OTHER DEFENDANTS IN THEIR OBJECTIONS TO MOTION FOR LEAVE

Numerous other objections to the Motion for Leave are being filed by the defendants in the other adversary proceedings who are similarly-situated to this Defendant. Because the facts surrounding those actions are, in many respects, similar to those found here, the Defendant incorporates all applicable arguments raised by the other defendants in their objections to the Motion for Leave.

## CONCLUSION

Based on the objections to the Motion for Leave set forth above and incorporated herein, Park-Ohio requests that the Court deny the Reorganized Debtors' Motion for Leave in its entirety and order that the Preference Action be dismissed with prejudice.

Dated: November 24, 2010                                  Respectfully submitted,


                                */s/ Tiiara Patton*
TIIARA N. A. PATTON (TP-8803)
JAMES M. LAWNICZAK (Ohio #0041836)
NATHAN A. WHEATLEY (Ohio #0072192)
CALFEE, HALTER & GRISWOLD LLP
1400 KeyBank Center
800 Superior Avenue
Cleveland, Ohio  44114-2688
216-622-8200
216-241-0816 (fax)
jlawniczak@calfee.com
nwheatley@calfee.com

Attorneys for Defendant, Park-Ohio Industries

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing *Brief In Opposition to Reorganized Debtors' Motion for Leave to File Amended Complaint* was served through electronic transmission via the Court's CM/ECF system to all parties who are listed on the Court's Electronic Mail Notice List on November 24, 2010.

                                          */s/ Tiiara N. A. Patton*
                                          Tiiara N. A. Patton (TP-8803)