**FOX ROTHSCHILD LLP**

75 Eisenhower Parkway, Suite 200
Roseland, New Jersey 07068
973-992-4800
- and -
100 Park Avenue, 15th Floor
New York, NY  10017
rmeth@foxrothschild.com
RICHARD M. METH, ESQ. (RM7791)(admitted *pro hac vice*)


and


**GREENEBAUM DOLL & MCDONALD PLLC**

3500 National City Tower
101 South Fifth Street
Louisville, KY 40202
C. R. BOWLES, ESQ. (*pro hac vice* pending)
502-589-4200


Attorneys For Defendants, DSSI and DSSI, LLC


**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

———————————————————— x
                                                          :
In re:                                                 :
                                                          :
DELPHI AUTOMOTIVE SYSTEMS, LLC    :         Chapter 11
                                                          :         Case No. 05-44481 (RDD)
                                  Debtors.      :
                                                          :         (Jointly Administered)
———————————————————— x
                                                          :
DELPHI CORPORATION, *et al.,*              :         Adv. Pro. No. 07-02236 (RDD)
                                                          :
                                  Plaintiffs     :
                                                          :
                     - against -                      :
                                                          :
DSSI and DSSI, LLC,                             :
                                                          :
                                  Defendants.   :
                                                          :
———————————————————— x

### OBJECTION TO DELPHI AUTOMOTIVE SYSTEMS, LLC'S
### MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT

DSSI, LLC and DSSI[1] (hereinafter, "Defendants" or "DSSI"), by and through their undersigned counsel, in support of their Objection ("Objection") to Delphi Automotive Systems, LLC's ("DAS") Motion for Leave to File an Amended Complaint ("Amendment Motion"), respectfully state:

### PRELIMINARY STATEMENT

1.      As noted by this Court at the July 22, 2010 hearing on Motions to Dismiss filed in these cases, the complaints originally filed ("Initial Complaints") by the above-captioned debtors ("Debtors") did not satisfy the pleading requirements of Rule 7008 (July 22, 2010 Transcript at p. 275, lines 12-13, hereinafter "Transcript").  Based on this determination and the related Order dismissing the Initial Complaints (Doc No. 20579, hereinafter "Dismissal Order"), which was not challenged by the Debtors, the Court dismissed the Initial Complaints and gave the Debtors until September 7, 2010 to file motions for leave to amend the complaints in Adversary Proceedings, together with proposed amended complaints that satisfied the pleading requirements of Rule 7008 (each a "Proposed Complaint," and collectively the "Proposed Complaints").  If such motions were not timely filed, the underlying Adversary Proceedings would be dismissed.

2.      Although DAS did file the Amendment Motion in this adversary proceeding, the Proposed Complaint failed to comply with both the provisions of this Court's Dismissal Order and the requirements of Rule 7008 and, therefore, this Adversary Proceeding should be dismissed with prejudice.  In addition, the Amendment Motion should be denied with respect to

---

[1] In the Debtors' preference action, the Debtors assert claims against a defendant styled "DSSI."  There is no entity known as DSSI in DSSI, LLC's corporate organization.  Therefore, no response is necessary on behalf of this non-existent entity except to prevent a default judgment being obtained against it and/or efforts to assert any such judgment against DSSI, LLC.

DSSI because the amendment is futile, as the Debtors have failed to state viable claims due to: (1) the Debtors' conceded inability to plead a plausible cause of action against the Defendants as required by *Ashcroft v. Iqbal* ___ U.S. ___, 129 S.Ct. 1937 (2009) and *Bell Atlantic Corp. v. Twormbly*, 550 U.S. 544 (2007); (2) DAS admitted inability to demonstrate that the transfers at issue were "for or on account of an antecedent debt owed by the Debtor," as required by 11 U.S.C. § 547(b)(2); (3) DAS' failure to plausibly allege that the Proposed Complaints relate back to the Initial Complaints; (4) the fact that the Initial Complaints were not timely served on the Defendants; and (5) DAS' failure to plausibly allege that it was insolvent at the time of the transfers under the facts of this case.

3.      For these and other reasons detailed below, the Amendment Motion should be denied and the Adversary Proceeding against DSSI should be dismissed with prejudice.

## STATEMENT OF FACTS

4.      The Defendant's Motion to Dismiss Adversary Proceeding (Doc. No. 23, in Adv. Pro. No. 07-02236) sets forth a detailed description of the background of the facts surrounding this Adversary Proceeding, and is incorporated herein by reference.

5.      In this case, the Debtors did not serve, and the Defendants had no actual notice of: (1) the August 6, 2007 Motion ("Preservation Motion") of the Debtors seeking to file certain Adversary Proceedings, including the one pending against the Defendants, under seal and delaying service of these complaints (Doc. No. 8905); (2) the August 16, 2007 Order approving the Preservation Motion (Doc. No. 9105); (3) the September 26, 2007 filing of the Complaint ("Initial Complaint") and related Adversary Proceeding against the Defendants; (4) the February 28, 2008 ("First Extension Motion") seeking to extend the time to serve process in the Adversary

Proceedings (Doc. No. 12922); (5) the Order approving the First Extension Motion (Doc. No.

13277); (6) the April 10, 2008 ("Second Extension Motion") seeking to further extend the time

to serve process in the Adversary Proceedings (Doc. No. 13361); (7) the Order approving the

Second Extension Motion (Doc. No. 13484); (8) the October 2, 2009 Motion ("Third Extension

Motion") seeking to further extend the time to serve process in the Adversary Proceedings (Doc.

No. 18952); and/or (9) the Order approving the Third Extension Motion (Doc. No. 18999)

(collectively "Extension Pleadings"). *See* Affidavit of Gary Miller, filed concurrently herewith

(the "Miller Affidavit").

(a)    **Initial Plan and Disclosure Statement**

6.    On or about December 10, 2007, the Debtors filed their First Amended Joint Plan

of Reorganization ("Initial Plan") (Doc. No. 11386) and a related disclosure statement ("Initial

Disclosure Statement"). The Initial Plan was ultimately confirmed by this Court on January 25,

2008 (Doc No. 12359).

7.    The Initial Disclosure Statement discussed in vague terms the Preservation

Motion and resulting Order, stating:

> On August 16, 2007, the Bankruptcy Court entered an
> order (the "Avoidance Procedures Order") authorizing the Debtors
> to enter into tolling agreements with respect to avoidance and other
> causes of action, approving procedures to identify those causes of
> action that should be preserved or abandoned, authorizing the
> Debtors to abandon certain actions, and establishing Adversary
> Proceeding procedures for preserving causes of action. The
> Debtors sought this relief so that they could take steps to fulfill
> their fiduciary duties to preserve valuable estate assets in a manner
> that will not unnecessarily disrupt their prosecution of the Plan or
> their existing business relationships with potential defendants that
> are necessary to the Debtors' ongoing operations.

Section 546(a)(1)(A) of the Bankruptcy Code provides that a debtor-in-possession may not commence a cause of action under section 544, 545, 547, 548, or 553 of the Bankruptcy Code more than two years after the Petition Date. Similarly, section 108(a)(2) of the Bankruptcy Code provides that a debtor-in-possession may not commence a cause of action under non-bankruptcy law -- for which the applicable statute of limitations, but for the chapter 11 filing, would have otherwise expired during the initial two years of a case -- more than two years after the Petition Date. Thus, to bring timely lawsuits on any of these causes of action, the Debtors needed to commence them no later than October 9, 2007 or October 15, 2007, as applicable.

Because of the Plan's treatment of unsecured creditors, the Debtors have determined that the affirmative pursuit of many if not all of these causes of action would not benefit their estates and creditors. As described in this Disclosure Statement, the Plan will pay or satisfy all allowed claims in full through distributions of common stock. As a result, avoiding preferential transfers through causes of action under section 547 of the Bankruptcy Code or similar state laws ("Preference Claims") would provide little or no benefit to the Debtors' Estates because any party returning such a transfer would be entitled to an unsecured claim for the same amount, to be paid or satisfied in fill under the Plan. For the same reasons, avoiding statutory liens under section 545 of the Bankruptcy Code or prepetition setoffs under section 553 of the Bankruptcy Code would provide little or no benefit to the Estates. In addition, under the Plan the Reorganized Debtors will not retain the Preference Claims except those specifically listed on Exhibit 7.24 to the Plan.

* * *

Although the Debtors do not intend to pursue these causes of action in light of the distributions to be made under the Plan, as a precautionary measure they must identify and preserve the causes of action in some manner. The Debtors explored various alternatives to commencing actions before the two-year deadline, such as executing tolling agreements with potential defendants. The logistical challenges of circulating and executing tolling agreements with such a large number of potential defendants, however, made that solution impractical. The Debtors, therefore, determined that to the extent they did not execute tolling agreements they needed to timely commence actions on most of these claims or risk losing them.

4

8.      While the Initial Disclosure Statement made reference to an "Avoidance Procedure Order," it failed to disclose that:  (1) neither the underlying Motion nor the Avoidance Procedure Order were served on the Defendants; and (2) the Complaints were filed under seal, so potential defendants had no actual notice of the filing of any adversary complaints.  Further, the Initial Disclosure Statement stated that the "Reorganized Debts will not retain the Preference Claims except those specifically listed on Exhibit 7.24 to the Plan."

9.      Section 7.24 of the Initial Plan, governing the Debtors' retention of causes of action and claims against third parties, provides:

> 7.24    **Preservation Of Causes Of Action.**  In accordance with section 1123(b)(3) of the Bankruptcy Code and except as otherwise provided in this Plan, the Reorganized Debtors shall retain and may (but are not required to) enforce all Retained Actions and all other similar claims arising under applicable state laws, including, without limitation, fraudulent transfer claims, if any, and all other Causes of Action of a trustee and debtor-in-possession under the Bankruptcy Code.   The Debtors or the Reorganized Debtors, in their sole and absolute discretion, shall determine whether to bring, settle, release, compromise, or enforce such Retained Actions (or decline to do any of the foregoing), and shall not be required to seek further approval of the Bankruptcy Court for such action.  The Reorganized Debtors or any successors may pursue such litigation claims in accordance with the best interests of the Reorganized Debtors or any successors holding such rights of action.  **Notwithstanding the foregoing, Causes of Action against Persons arising under section 544, 545, 547, 548, or 553 of the Bankruptcy Code or similar state laws shall not be retained by the Reorganized Debtors unless specifically listed on <u>Exhibit 7.24</u> hereto.**  [(Emphasis added.)]

10.     Exhibit 7.24 to the Initial Plan was filed on December 28, 2007.  (See attached Exhibit B).  Exhibit 7.24 did not specifically list any causes of action against Defendants as being retained or the Adversary Proceeding, which was filed against Defendants asserting claims

5

under 11 U.S.C.§ 547. Therefore, the Defendants had no knowledge of the Initial Complaint. *See generally* Miller Affidavit.

11.     On December 21, 2007, three months after this Adversary Proceeding was filed against the Defendants, the Debtors, including DAS, filed their 24th Omnibus Objection to Claim (Doc No. 11588) ("Defendant Claim Objection"), in which they objected to the Proof of Claim of DSSI, Inc. filed in the DPH Holding Corp., Case No. 05-44481.

12.     In the Defendant Claim Objection, the Debtors did not seek to disallow the DSSI claim under 11 U.S.C. § 502(d) or otherwise disclose that this Adversary Proceeding had been filed against the Defendants.

13.     On January 25, 2008, the Court entered an Order confirming the Debtors' Initial Plan (Findings of Fact, Conclusions of Law, and Order under 11 U.S.C. §§ 1129(a) and (b) and Fed. R. Bankr. P. 2020 confirming First Amended Joint Plan or Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-in-Possession, as Modified, dated January 25, 2008) (the "Confirmation Order") (Doc. No. 12359).

**(b)     Entry of Modification Approval Order and Effective Date**

14.     On June 1, 2009, the Debtors filed their Supplemental Motion for Order Approving Modifications to Debtors' First Amended Plan ("Supplemental Plan Modification Motion") (Doc. No. 16646).

15.     As part of the Debtors' efforts to have the Initial Plan amended, the Debtors changed how they would preserve causes of action by (a) renumbering Section 7.24 of the Initial

Plan to Section 7.19 of the Modified Plan and (b) providing in the supplement to the First

Amended Disclosure Statement, filed June 1, 2009, that:

### 18.    *Preservation of Causes of Action*

On August 16, 2007, the Bankruptcy Court entered the Avoidance Procedures Order, authorizing the Debtors to enter into tolling agreements with respect to avoidance and other causes of action, approving procedures to identify those causes of action that should be preserved or abandoned, authorizing the Debtors to abandon certain actions, and establishing Adversary Proceeding procedures for preserving causes of action.  The Debtors sought this relief so that they could take steps to fulfill their fiduciary duties to preserve valuable estate assets in a manner that would not unnecessarily disrupt their prosecution of the Modified Plan or their existing business relationships with potential defendants that are necessary to the Debtors' ongoing operations.

With respect to preservation of causes of action, the Modified Plan provides that in accordance with section 1123(b)(3) of the Bankruptcy Code and except as otherwise provided in the Modified Plan or the Master Disposition Agreement, the Reorganized Debtors will retain and may (but are not required to) enforce all Retained Actions and all other similar claims arising under applicable state laws, including, without limitation, fraudulent transfer claims, if any, and all other Causes of Action of a trustee and debtor-in-possession under the Bankruptcy Code. The Debtors or the Reorganized Debtors, in their sole and absolute discretion, will determine whether to bring, settle, release, compromise, or enforce such Retained Actions (or decline to do any of the foregoing), and will not be required to seek further approval of the Bankruptcy Court for such action.    The Reorganized Debtors or any successors may pursue such litigation claims in accordance with the best interests of the Reorganized Debtors or any successors holding such rights of action. Notwithstanding the foregoing, Causes of Action against Persons arising under section 544, 545, 547, 548, or 553 of the Bankruptcy Code or similar state laws will not be retained by the Reorganized Debtors unless specifically listed on Exhibit 7.19 of the Modified Plan.

*See* (Doc No. 16646, Exhibit 2 Supplement to Disclosure Statement at pp. S-62—63) ("Modified

Disclosure Statement').

16.     The Modified Disclosure Statement only disclosed that the Debtors could enter into tolling agreements and that certain "Adversary Proceeding procedures" had been established to preserve certain causes of action.   The Modified Disclosure Statement, as did the Initial Disclosure Statement, failed to disclose that the Avoidance Procedure Order and the underlying Motions were not served on the Defendants and that complaints had been filed under seal against potential defendants.

17.     Exhibit 7.19 of the Modified Plan was not served with the Modified Plan or Disclosure Statement, but was only served on the limited service list set forth in the Affidavit of Service of July 8, 2009 (Doc No. 17618).  The Defendants were not served and had no notice of Exhibit 7.19 to the Modified Plan until after the complaints were unsealed and served on the Defendants.

18.     On July 30, 2009, more than a year and a half after the Plan was confirmed, the Court entered an order (the "Modification Approval Order") (Doc. No. 18707) approving certain modifications to the Plan (the "Modified Plan").   (Notice of the (a) Order Approving Modifications to First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-in-Possession, and (b) the Occurrence of Effective Date, dated October 6, 2009, at ¶ 2).  The effective date of the Modified Plan occurred on October 6, 2009. (*Id.* at ¶ 3.)

19.     Defendants were finally served with the Initial Complaint on or about March 22, 2010, well over two years after the limitations period provided by Bankruptcy Code § 546(a) expired and after the original time period for service of the Initial Complaint under Fed. R. Civ. P. 4(m) had run.

20.    Prior to the unsealing of the Initial Complaint, the Defendants had no actual, or even "inquiry," notice that the Debtors had asserted preference claims against them.  They continued to do business with the Debtors and negotiated and made concessions to them, which DSSI would not have made had the Defendants had any knowledge of the preference suits. Further, during this period, the Defendants were unable to take steps to protect their position in the litigation covered by the Initial Complaint.

21.    On May 14, 2010, the Defendants filed a Motion to Dismiss ("Motion to Dismiss") this Adversary Proceeding (A.P. Doc No. 23).

22.    On June 7, 2010, the Debtors filed a Response (A.P. Doc. No. 24), and on July 2, 2010 the Defendants filed a reply thereto (A.P. Doc No. 25).

23.    After a hearing on the Dismissal Motion held on July 22, 2010, this Court entered its Dismissal Order on September 7, 2010.

24.    On September 7, 2010, the Debtors filed their Amendment Motion and the required Proposed Complaint, a copy of which is attached hereto as Exhibit A.

25.    In the Proposed Complaint filed against the Defendants, DAS (the Plaintiff in the Proposed Complaint), stated and alleged, among other things, that:

a)    Delphi Technologies, Inc. ("DTI") and DAS entered into certain service agreements with the Defendants' Proposed Complaint at para 13 and 16;

b)    During the 90 days prior to Bankruptcy, DAS transferred $14,140,433.52 ("Transfer"), as set forth in Exhibit 1 to the Proposed Complaint, to the Defendants; and

    c)  DAS does not have any documents evidencing the antecedent debt on which the Transfers were alleged based on Proposed Complaint at para 23.

## **LEGAL ARGUMENT**

**I.    The Amended Complaint Filed by DAS Failed to Comply With This Court's September 7, 2010, Order**

26.    As a result of the "First Wave" Motions to Dismiss, the Court entered its Dismissal Order.  In Paragraph 4 of the Dismissal Order, the Court dismissed, without prejudice, the Initial Complaints in most of the Debtor's preference adversary proceedings on the grounds that:  (1) "the Debtors have failed to plead sufficient facts to state a claim;" and (2) the Debtors "have not complied with . . . Rule 7008 of the Federal Rules of Bankruptcy Proceedings."  The Debtors did not appeal the Dismissal Order.  More importantly, the Court specified in paragraph 4 of the Dismissal Order that the proposed amended complaint filed by the Debtor/Plaintiff included in, and as a required component of, any Motion for Leave to Amend was required to contain certain elements:

> By no later than September 7, 2010, the Reorganized Debtors shall file a motion for leave to amend the complaint in each Adversary Proceeding the Reorganized Debtors intend to pursue (each, a "Motion to Amend").  Each Motion to Amend shall attach a proposed amended complaint that, for each alleged transfer shall set forth, at a minimum, the transferor, the transferee, any known subsequent transferee against whom relief is sought the antecedent debt and which Reorganized Debtors is the plaintiff.

27.    While the Debtors have designated which of the Reorganized Debtors was the plaintiff in this Adversary Proceeding, *i.e.*, DAS, they have failed to comply with the other minimum requirements of the Dismissal Order for the Proposed Complaint.

**A.    The Debtors Failed to Plead Facts Related to 11 U.S.C. § 547(b)(2).**

28.    Section 547(b)(2) of the Bankruptcy Code governs the elements which a Debtor must factually allege related to the "antecedent debt" element of a preference complaint in order to have a valid complaint to avoid a transfer as a preference.  11 U.S.C. § 547(b)(2) provides that the transfer at issue must have been:

> (2) for or on account of an antecedent debt owed **by the debtor**
> before such transfer was made (emphasis added.)

29.    This provision requires the plaintiff in a preference action to allege facts that support its contentions that:  (1) the transfer was for the payment of a debt, *see In re Hydrogen L.L.C.*, 431 B.R. 337, 355 (Bkrtcy. S.D. N.Y. 2010); (2) which was owed by the plaintiff/debtor, *see, e.g.*, *Chemical Bank v. Dana*, 234 B.R. 585, 596 (D. Conn. 1999); and (3) which was antecedent (incurred before) the transfer the Debtor seeks to avoid, *see, e.g., In re Dorholt, Inc.*, 224 F.3d 871, 873 (8th Cir. 2000).  In the Proposed Complaint, the Debtor has failed to allege facts which support any of the elements of 11 U.S.C. § 547(b)(2).

*1.    DAS Did Not Allege Any Facts to Support That the Transfers Were Made On Account of a Debt.*

30.    In this Adversary Proceeding, DAS, does not allege any facts which would indicate the transfers made to DSSI were made on an account of a debt.  In fact, DAS' only allegations about the existence of a debt are found in paragraph 23 of the Proposed Complaint, where it states:

> 23.    Plaintiff made, or caused to be made, each Transfer listed on Exhibit 1 for, or on account of, an antecedent debt owed to each Defendant indicated on Exhibit 1 for, or on account of, an antecedent debt owed to each Defendant indicated on Exhibit 1 as of the date on which each Transfer was made. The documents evidencing the antecedent debt are, on

11

> information and belief, in Defendants' possession, and
> include the purchase orders and/or invoices exchanged
> between the parties, which purchase orders and/or invoices
> include evidence of the amount of the antecedent debt and
> the approximate dates the subject services contemplated by
> the Agreements were requested pursuant to the Agreements
> and/or were provided by Defendants.

31.     In this paragraph, DAS directly admits that it possesses **no evidence** which would show that it owed DSSI any debt. This allegation establishes the fact that DAS has no evidence of any kind in its possession which would support its conclusory statement that the Transfers in question were made "on account of an antecedent debt." Thus, this admission in the Proposed Complaint clearly violates the terms of the Dismissal Order and the pleading requirements of Rule 7008, as set forth in the Supreme Court decisions of *Ashcroft v. Iqbal*, ____ U.S. ____, 129 S.Ct. 1937 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.") and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ("Rule 8(a)(2) still requires a 'showing' rather than a blanket assertion, of entitlement to relief."). More importantly, DAS admits that it had no factual basis for even filing the proposed amended complaint against DSSI, as it has no documents evidencing the antecedent debt. Therefore, the Amendment Motion should be denied, with prejudice, as it pertains to DSSI.

2.     *No Factual Allegations Were Made that DAS Owed the Antecedent Debts to DSSI.*

32.     As admitted by DAS in Paragraph 13 of its proposed amended complaint, and in its sworn Statement of Financial Affairs filed in the DAS Chapter 11 case, DAS performed accounting and payment functions for other Delphi Debtors. However, the Proposed Complaint does not allege or provide any facts that DAS, the plaintiff in the proposed amended complaint

owed DSSI the antecedent debt.  Indeed, the language used in Paragraph 23 of the Proposed

Complaint is, in the words of *Iqbal*, sets forth merely "[t]hreadbare recitals of the elements of a

cause of action, supported by mere conclusory statements ..." which are insufficient to support a

preference claim under 11 U.S.C. § 547 and Bankruptcy Rule 7008.  See *In re Hydrogen, LLC*,

431 B.R. 337, 355 (Bankr S.D.N.Y. 2010) (preference claims dismissed where no allegation that

a transfer was "made on account of a specific and identifiable antecedent debt".)  Therefore, the

Amendment Motion and Proposed Complaint violate the requirements of the Dismissal Order.

> 3.    *DAS Failed to Make Any Factual Allegations that the Alleged Debts Were
>        Antecedent of the Transfers.*

33.    Finally, DAS has failed to plead any facts, whatsoever, related to the time the

alleged debts were incurred by the DAS and whether they arose prior to the transfers DAS seeks

to avoid in the proposed amended complaint.  Even if DAS' conclusory allegations in Paragraph

23 of the Proposed Complaint constituted sufficient factual allegations of the existence of a debt

which DAS owed to DSSI, other than the bare and unsupported statement that each Transfer was

made "for or on account of, an antecedent debt," there are no allegations of any kind as to when

these "debts" were incurred in relation to the Transfers.  *See In re Hydrogen, LLC,* 431 B.R. at

355-56.  In light of DAS' deliberate failure to make any factual allegations concerning when the

debts were incurred, the Amendment Motion must be denied.

**B.    DAS Failed to Identify the Transferor, Transferee, and Known Subsequent
        Transferees in the Proposed Complaint**

34.    As set forth in DAS's sworn Statement of Financial Affairs filed in its bankruptcy

case:

> Consolidated  Accounts  Payable  and  Disbursements  System.
> Certain  of  the  Debtors  use  a  consolidated  accounts  payable  and

13

disbursements system through which such Debtors pay substantially all business-related expenses. All such payments are made by Delphi Automotive Systems LLC ("DAS LLC") and are then charged to the appropriate entity through intercompany accounts. Payments made by DAS LLC to third parties on behalf of other affiliated entities are reflected as payments to creditors in Question 3a of DAS LLC's Statement of Financial Affairs.

35.    Under this payable system, DAS paid, from its bank accounts, debts owed of other Delphi debtors to third parties. Therefore, it is possible, if not likely, that in many cases that DAS was an initial transferee of a transfer for the payment of a debt of another Delphi entity. *See generally* 11 U.S.C. § 550(a).[2]

36.    Here, despite DAS's clear knowledge of the details of its own payment system, DAS did not even attempt to either determine (or allege) whether it was the initial transferee of the Transfers at issue in this case, or whether Defendants under the Proposed Complaint were initial or subsequent transferees. *See generally*, 11 U.S.C. § 550(b) (protection of subsequent transferees). This failure to make any factual allegations concerning which parties were the transferors, transferees and subsequent transferees, constitutes a clear failure to comply with the terms of the Dismissal Order. Therefore, in light of DAS's failure to set forth any allegations about the transferor, transferee and known subsequent transferees in the Proposed Complaint, as required by the Dismissal Order, the Amendment Motion should be denied with prejudice.

## II.    Amendment Of The Complaint Should Not Be Permitted, Since It Would Be Futile

37.    Alternatively, should the Court determine that DAS complied with the terms of the Dismissal Order, the Amendment Motion should still be denied as the Proposed Amendment would be futile. This Court has discretion whether or not to grant leave to amend a complaint,

---

[2] It is important to note that the Delphi Debtors were only substantively consolidated for purposes of plan voting and claim distributions, and not for any other purpose.

14

*Ruffolo v. Oppenheimer & Co*., 987 F.2d 129, 131 (2d Cir. 1993); *Evans v. Syracuse City School District*, 704 F.2d 44, 47 (2d Cir. 1983).  However, this Court should refuse to grant leave to amend where amendment would be futile.  *Foman v. Davis*, 371 U.S. 178, 182 (1962) (denial not abuse of discretion where amendment would be futile); *Leadsinger, Inc. v. BMG Music Pub*., 512 F.3d 522, 532 (9th Cir. 2008) (amendment exercise in futility where no amendment could save complaint); *Acito v. Imcera Group, Inc*., 47 F.3d 47, 55 (2d Cir. 1995) (supplementary allegations did not cure original complaint); *Health-Chem Corp. v. Baker*, 915 F2d 805, 810 (2d Cir. 1990); *Caterpillar Inc. v. Estate of Lacefield-Cole*, 520 F. Supp.2d 989, 995-996  (N.D. Ill. 2007) (estate bound by previous admissions, thus amendment to answer would be futile); *Pan American World Airways, Inc. v. Abrams*, 764 F. Supp. 864, 870  (S.D.N.Y. 1991) (intervening decisions on preemption issue made proposed amendments to answer to add counterclaims futile); *Vitabiotics, Ltd. v. Krupka*,  606 F. Supp. 779, 786 (E.D.N.Y. 1984).

38.    A good example of futility is immunity from suit, as was the government in *Smith v. Commanding Officer, Air Force Accounting*, 555 F.2d 234, 235 (9th Cir. 1977), or where the proposed amended pleading may be defeated by a motion for summary judgment or a motion to dismiss.  *Halpert v. Wertheim & Co*., 81 F.R.D. 734, 735 (S.D.N.Y. 1979); *Collyard v. Washington Capitals*, 477 F. Supp. 1247, 1249 (D. Minn. 1979) (proposed amended complaint failed to state claim for which relief could be granted).

39.    Amendment of the Complaints here would be futile on grounds that: (a) even as amended, the Proposed Complaint does not pass muster under the *Twombly* and *Iqbal* standards; (b) the Proposed Complaint states that DAS cannot satisfy section 547(b)2, which is a required element of a preference complaint; (c) DAS fails to demonstrate that the claims asserted in the Proposed Complaint relate back to the Initial Complaint; (d) The Debtors failed to provide the

constitutionally required notice of the Extension Pleadings to, and thereby prejudiced Defendants; and (e) DAS did not properly plead, and cannot prove, that it was insolvent at the time of the alleged Transfers.

> **A.      The Proposed Complaint Fails to Plead Sufficient Facts to State a Cause for Relief and Should be Dismissed**

40.      Like the Initial Complaint, the Proposed Complaint must be dismissed because the allegations fail to plead "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, *supra* (citation and quotation marks omitted). Federal Rule of Civil Procedure 8(a)(b), made applicable through Federal Rule of Bankruptcy Procedure 7008, "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, *supra,* (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  However, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*

41.      Here, despite the recent Supreme Court decisions in *Bell Atlantic v. Twombly*, and *Ashcroft v. Iqbal*, DAS asserts that it can file a preference complaint based upon antecedent debt which it admits might be reflected by, and in, records which it does not possess, but believes are held by a third party. In the Proposed Complaint DAS admits that it has no documentation or other evidence related to whether or not the alleged Transfers were made for or on account of antecedent debt. As in *Twombly* and *Iqbal*, the Amendment Motion and Proposed Complaint therefore do not meet the minimal requirements of Bankruptcy Rule 7008.  Like the plaintiff in

*Twombly*, DAS has not and, by its own admission, cannot allege "enough facts to state a claim to relief that is plausible on its face."  550 U.S. at 570; *Iqbal*, 139 S.Ct. at 1950 ("only a complaint that states a plausible claim for relief survives a motion to dismiss").

42.    In *Twombly*, the Supreme Court granted certiorari to consider whether a complaint in an antitrust case was sufficient to withstand a Rule 12(b)(6) motion to dismiss.  The complaint alleged that certain telecommunication providers had entered into an agreement not to compete in violation of Section 1 of the Sherman Act.  *Twombly*, 550 U.S. at 551.  Section 1 of the Sherman Act requires a contract, combination or conspiracy in restraint of trade or commerce to establish liability.  The *Twombly* defendants moved to dismiss based on the lack of factual support in the complaint showing that the alleged anticompetitive conduct arose from an agreement.  550 U.S. at 553.

43.    In considering the motion to dismiss, the Court held that stating such a claim requires a complaint with enough factual matter, taken as true, "to suggest that an agreement was made."  *Twombly*, 550 U.S. at 556.  "Factual allegations must be enough to raise a right to relief above the speculative level."  *Id.* at 555.  The plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.*

44.    In the Proposed Complaint, DAS has failed to meet any of the *Twombly* or *Iqbal* standards for pleading the elements of a preference as required by 11 U.S.C. § 547.

17

       1.     *No Factual Allegations Were Made as to Whether the Transfers Were Transfers of Interests in DAS Property.*

45.     In the Proposed Complaint, DAS makes no factual allegations relating to whether the funds allegedly transferred to the Defendants were property of DAS.  In fact, DAS' only statement on this issue is found in paragraph 22 of the Proposed Complaint, where DAS states that the Transfers "constituted transfers of interests in Plaintiff's property because they were made by Plaintiff from Plaintiff's account."  Neither the Proposed Complaint nor its attached <u>Exhibit 1</u> contain a single factual statement or allegation which would support the assertion that the Transfers were made from property of DAS.

46.     In *Angell v. BER Care, Inc. (In re Careamerica, Inc.)*, 409 B.R. 737, 750 (Bankr. E.D.N.C. 2009), the Court faced a similar situation. There, the Court found insufficient facts in a preference complaint to support the trustee's contention that funds flowing through BER Care, Inc. originated with the debtors.  Instead, there was only the bare allegation that "the debtors transferred its (sic) funds into bank accounts operated by the debtors' principals."  The Court therefore found that statement to be conclusory and lacking in factual support.  *Id.*

47.     The statement made by Plaintiff here is quite similar in its lack of factual support, though it relates to a different element of a preference cause of action.  *See also Zucker v. Freeman (In re NetBank)*, 424 B.R. 568, 572 (M.D. Fla. 2010) (mere allegation that defendant was an insider of the debtor at the time the transfer was made was a legal conclusion, not a well pled fact plaintiff must allege facts establishing that at the time of the transfer Defendant wielded sufficient control over Debtor such that he was an insider).

       2.     *No Factual Allegations Were Made as to Whether the Transfers Were Made "to or for the Benefit of a Creditor" and  Constituted Debts.  11 U.S.C. §§ 547(b)(1) and (b)(2).*

18

48.     As discussed in detail in paragraphs 26 through 33 above, DAS has admitted, in its Proposed Complaint, that it has no information or documentation that would indicate the alleged Transfers were made either to a creditor or on account of n antecedent debt owed by DAS to the Defendants.

>   3.     *No Factual Allegations Were Made as to Whether the Debtor Was*
>          *Insolvent. 11 U.S.C. § 547(b)(3)*

49.     In the Proposed Complaint, DAS solely relies on the presumption, under 11 U.S.C. § 547(f), that it was insolvent in the ninety (90) days prior to the date of filing of the bankruptcy; it makes no factual allegations as to its solvency.  For the reasons set forth in section E below, this recitation of 11 U.S.C. § 547(f) is insufficient to meet the pleading requirements of Bankruptcy Rule 7008.

50.     Therefore, in light of these serious pleading deficiencies as to the Proposed Complaint, under Bankruptcy Rule 7008, the Amendment Motion should be denied with prejudice.

## B.     DAS Cannot Demonstrate the Transfers Were Made for or on Account of an Antecedent Debt Owed by DAS to Defendants

51.     As detailed in paragraphs 30-33 of this Objection, DAS admits that it has <u>no documentation or other evidence</u> that the alleged Transfers at issue were:

>   (1)    made in payment of a debt;
>
>   (2)    owed by DAS (or any other debtor for that matter);
>
>   (3)    which arose prior to the Transfer in question.

52.     The inability of DAS to allege, and ultimately prove, these elements of both 11 U.S.C. §§ 547(b)(1) and (b)(2) means that it cannot succeed on its preference complaint as a

matter of law. *See In re Roblin Industries, Inc.,* 78 F.3d 30, 33 (2nd Cir. 1996) ("To be recoverable as a preferential transfer, a payment must satisfy all the requirements of 11 U.S.C. § 547(b)"); s*ee also* 11 U.S.C. § 547(g) (debtor in possession bears the burden of proof in all elements of 11 U.S.C. § 547(b)).  Therefore, the Amendment Motion should be denied because allowing DAS to file the Proposed Complaint would be futile.

### C.    DAS Has Failed to Allege That the Proposed Complaint Relates Back to the Initial Complaint

53.    Federal Rule of Procedure Rule 15(c) governs whether an amendment of a complaint would relate back to a prior timely filed complaint. An amendment should be denied where the additional claims sought to be asserted would be barred by the statute of limitations unless the amendment relates back under Rule 15(c*). Metzeler v. Bouchard Transp. Co., Inc. (In re Metzeler)*, 66 B.R. 977, 981 (Bankr. S.D.N.Y.1986). The dispositive issue, therefore, is whether the additional alleged transfers set forth in the Proposed Complaint would "relate back" under Rule 15(c). If the additional transfers set forth in the Proposed Complaint do not relate back to the Initial Complaint, then allowing the Plaintiff to amend the Initial Complaint would be futile.

54.    Rule 15(c), made applicable by Bankruptcy Rule 7015, provides in relevant part:

> An amendment of a pleading relates back to the date of the original pleading when ...
>
> (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading....

55.    While "[t]he purpose of Rule 15 is to provide maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities," a court must not

"undermine the purpose of repose for which statutes of limitations were designed." *Enron Corp. v. J.P. Morgan Sec. Inc. (In re Enron Corp.)*, 357 B.R. 257, 263 (Bankr. S.D.N.Y.2006) (citations and quotations omitted). The moving party who asserts that an amendment relates back bears the burden of proof. *In re Enron Corp.*, 298 B.R. 513, 522 (Bankr. S.D.N.Y.2003).

56.    The primary consideration in determining whether the proposed amendments to the Initial Complaint should relate back is whether the Initial Complaint put the Defendants on notice that additional transfers may be pursued at a later date.  In this regard, courts will not consider the subjective state of mind of what one party was thinking when it filed its original complaint, but will instead objectively consider whether the original complaint put the other party on notice as to the cause of action being asserted against it. *Enron Corp.* and *Nat'l Energy Prod. Corp. v. Granite Constr. Co. (In re Enron Corp.)*, No. 03-93172, 2006 WL 2400369, * 10 (Bankr. S.D.N.Y. May 11, 2006) (citing *In re Kam Kuo Seafood Corp.*, 67 B.R. 304, 306 (Bankr.S.D.N.Y.1986)).

57.    Under Rule 15(c)(2), an amended pleading relates back to an earlier pleading if the amended pleading sets forth claims arising out of the same conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading. "The principal inquiry is whether adequate notice of the matters raised in the amended pleading has been given to the opposing party by the general fact situation alleged in the original pleading." *Id.* (citing *Weiss v. Alicea (In re Alicea)*, 230 B.R. 492, 498-99 (Bankr. S.D.N.Y.1999)); *Stevelman v. Alias Research Inc.*, 174 F.3d 79, 86-87 (2d Cir. 1999) ("Under Fed.R.Civ.P. 15(c), the central inquiry is whether adequate notice of the matters raised in the amended pleading has been given to the opposing party within the statute of limitations 'by the general fact situation alleged in the original pleading.'") (quotations and citations omitted); *Rosenberg v. Martin*, 478 F.2d 520 (2d Cir.

21

1973) ("[T]he inquiry in a determination of whether a claim should relate back will focus on the notice given by the general fact situation set forth in the original pleading.") (*citing Snoqualmie Tribe v. United States*, 178 Ct. Cl. 570, 372 F.2d 951, 960 (1967)) (quotations omitted). "If the facts in the original pleading do not provide defendant with notice of facts out of which the time-barred claim arises then relation back is inappropriate." *MBC Greenhouse Co. v. CTC Direct, Inc.*, 307 B.R. 787 (Bankr. D. Del. 2004). *106 Mile Transp. Associates v. Koch*, 656 F.Supp. 1474, 1487 (S.D.N.Y. 1987).

58.    "One test that many courts have employed in order to determine whether an amendment to pleadings will relate back is to determine whether the initial complaint put the defendants ... on notice of what must be defended against in the amended pleadings. This test does not require that the prior complaint put the defendants on notice of new or additional legal theories that the plaintiffs seek to assert against the defendants, but it must inform the defendants of the facts that support those new claims." *Barr v. Charterhouse Group Int'l, Inc. (In re Everfresh Beverages, Inc.)*, 238 B.R. 558, 573-74 (Bankr. S.D.N.Y. 1999) (citations omitted).

59.    Here, DAS, without any explanation, changed the transfers asserted in the Initial Complaint from $7,070,216.76 to the Transfers asserted in the Proposed Complaint totaling $14,140,433.52.   As noted in the Miller Affidavit, the Defendants never received any of the alleged Transfers set forth in the Proposed Complaint.  Indeed, DAS' only statement on the Rule 7015 issue is found in paragraph 37 of the Amendment Motion, where DAS states, without any factual support, that "[t]here can be no dispute that the Amended Complaint relates back to the filing of the Original Complaints."  Such a cavalier pronouncement does not meet either the test of Bankruptcy Rule 7015 or the *Twombly* and *Iqbal* pleading requirements.  Therefore, the

22

Amendment Motion should be denied with prejudice, as the Initial Complaint has already been

dismissed and DAS has failed to plead the original transfers set forth in the Initial Complaint.

### D. The Proposed Amended Complaint Is Futile Because The Extension Orders Were Improvidently Entered And Should Be Vacated, Leaving DAS's Claims Barred By The Statute of Limitations

60.    For all for the reason set forth in the Defendant's Motion to Dismiss Adversary

Proceeding (Doc. No. 23, in Adv. Pro. No. 07-02236) and the dismissal motions filed by the

other preference defendants, which are incorporated herein by reference, the Extension Orders

were entered in violation of Fed. R. Civ. Proc. 4(m) and the Defendants' due process and other

rights.  Therefore, DAS may not unseal and serve preference complaints against them years after

the limitations period expired.

61.    Moreover, this Court has already determined that any party, like the Defendants,

who did not receive notice of the Debtor's Extension Motions may now challenge *de novo* the

entry of the Extension Orders.  *See* Transcript at 103, 119 ("[I]f someone really didn't get notice

of the extension motions, then it would seem to me they should be able to argue to me as if the

motions were being made right now . . . .").

### 1. *The Defendants Received No Actual Notice Of Extension Pleadings*

62.    The indisputable evidence (including DAS's own admissions and documents),

confirms that Delphi failed to provide the Defendants with **any** actual notice of the Extension

Pleadings.  Specifically, (x) the Defendants never filed a Proof of Claim against DAS; (y) the

Defendants never appeared in the Debtors' bankruptcy cases, except to file an answer to the

Debtors' Claims Objection; and (z) the Defendants never requested, nor received, any ECF

notice.  *See* the Miller Affidavit.  As a result, the Defendants received no notice of any of the

Extension Motions.  Indeed, the Debtors admitted, in their Omnibus Response in opposition to the various defendants' dismissal motions, that they never served the Defendants with notice of any of the Extension Pleadings  *See* Adv Proc. Doc. No. 25, Omnibus Response, at p. 29, fn. 8.

63.    The Initial Disclosure Statement also failed to give the Defendants actual notice that their rights were in jeopardy.  The Initial Disclosure Statement simply indicated that the Debtors had **previously** filed adversary actions against certain **unspecified** defendants, and **had already been granted** the Extension Order on August 16, 2007, which expired on March 31, 2008. It did not disclose that the Preservation Motion had not been served on potential defendants, or that the Adversary Proceeding had been filed under seal and had not been served on the defendants.  *See* Initial Disclosure Statement (Doc. No. 11388) at 193; Extension Order (Doc. No. 9105).  The Initial Disclosure Statement, therefore, did not give the Defendants notice and an opportunity to object to anything, or alert them that they could be exposed to any litigation after early 2008.

64.    Thus, the Defendants can now challenge *de novo* the entry of the Extension Orders, including the April 2008 Extension Order that was granted, after Debtor's EPCA funding fell through, on the new basis that Delphi purportedly needed more time to determine how it wished to proceed in light of the loss of its buyer's 100 percent plan.  As explained in the defendants' prior briefs, Rule 4(m) is designed to facilitate service, not non-service.  Thus, the Rule 4(m) extensions in these cases should not have been granted, especially without notice to the Defendants. *See Fimbres v. United States*, 833 F.2d 138, 139 (9th Cir. 1987) (rejecting Rule 4(m) extension, explaining the notion that the plaintiff lacked the financial resources to prosecute the action amounted to nothing more than an improper intentional delay in service); *Smith v. Pennsylvania Glass Sand Corp.*, 123 F.R.D. 648, 651 (N.D. Fla. 1988) ("Plaintiff cannot

deliberately or even inadvertently 'wait and see' if his financial resources improve enough to allow him to diligently prosecute his case.").  Indeed, if such a "wait and see" rationale were permitted, all statutes of limitations would be rendered meaningless.

2.    *The Defendants Were Not On  Inquiry Notice Of the Debtors' Extension Motions*

65.    The Defendants also were not on "inquiry notice" of the Extension Pleadings.  As an initial matter, the law is clear that "[a party] bear[s] a heavy burden in establishing that [another party] was on inquiry notice as a matter of law."  *Nivram Corp. v. Harcourt Brace Jovanovich, Inc.*, 840 F. Supp. 243, 249 (S.D.N.Y. 1993) (discussing "inquiry notice" in the context of fraud actions) (quoted in *Newman v. Warnaco Group, Inc*., 335 F.3d 187, 195 (2d Cir. 2003).  Moreover, "[i]nquiry notice may be found as a matter of law only when uncontroverted evidence clearly demonstrates when the plaintiff should have discovered" the conduct at issue. *Staehr v. Hartford Fin. Servs. Group*, 547 F.3d 406, 427 (2d Cir. 2008).

66.    Here, the Defendants were not on inquiry notice of the Extension Motions or even that a preference action had been filed against them.  Simply put, there are no facts that show, or could show, that it was reasonable for them to have inquired about the Extension Motions or preference action.[3]  In fact, the Debtors admit that they intended to conceal the Preference Actions for their own benefit.  In the Preservation Motion, the Debtors admitted that the reason for filing the Adversary Proceedings under seal was to "avoid unnecessarily alarming potential defendants" because the "Debtors have worked to preserve and repair their business relationship

---

[3] As the Second Circuit explained, albeit in the context of a fraud action, "the critical factor for purposes of inquiry notice in *any* case is when the circumstances would suggest to an investor of ordinary intelligence the probability that she has been defrauded."  *Id.* at 429 (emphasis in original) (internal quotations omitted); *see also Newman v. Warnaco Group, Inc*., 335 F.3d 187, 193 (2d Cir. 2003) ("[T]he information provided must trigger notice with sufficient storm warnings to alert a reasonable person to the probability that there were either misleading statements or significant omissions involved") (quoting *Morin v. Trupin*, 809 F. Supp. 1081, 1097 (S.D.N.Y. 1993)).

with many of the potential defendants during these cases and have negotiated or regained favorable credit terms with many suppliers and are continuing to do so. The Debtors are also engaged in negotiations with some of the potential defendants on issues unrelated to avoidance actions." Presentation Motion at ¶37.

67. In a similar case, *EBS Litigation LLC v. Barclays Global Investors, N.A.*, 304 F.3d 302 (3rd Cir. 2002), the Court rejected the notion that "an objectively-reasonable shareholder" should have been on inquiry notice that a debtor may have a claim against it for return of a distribution, even though the debtor's bankruptcy petition should have alerted him to the fact that the debtor's earlier pronouncements regarding its solvency may have been incorrect, and especially where the debtor continued to misrepresent its financial condition while in bankruptcy. *Id.* at 306. As the Court emphasized:

> [W]e must not lose sight of the practical realities of the situation. We suspect it would not occur to an objectively-reasonable stockholder with full knowledge of the applicable law, even if he or she suspected that the distribution of D&B stock might be vulnerable to a challenge, to do anything about it unless such a challenge became a reality. [*Id.*]

*EBS* thus refutes any suggestion that the Defendants should have been on inquiry notice from any disclosures made in either the Initial Plan and Disclosure Statement, or the Modified Plan or Disclosure Statement.

**(a)    Even if the Defendants Were On Inquiry Notice,
It Was Reasonable For Them Do Nothing**

68. Even if the Defendants were on inquiry notice that DAS might assert a preference claim against them after the statute of limitations had run, it was reasonable for them to do nothing. Both Plans and Disclosure Statements gave no indication that no service of the Extension Pleadings had been provided, or that the Adversary Proceedings were filed under seal.

At the time of these pleadings, the time for filing any preference actions had long since passed. Therefore, even if there is a requirement of inquiry notice, it would have been impossible, under the sealing procedures adopted in these cases, to determine whether a party had been sued. The lack of inquiry notice is also demonstrated as the Defendants had no obligation to monitor the Debtors' bankruptcy cases, even if they were aware of them. *City of New York v. New York, N.H. & H. R.R. Co.*, 344 U.S. 293, 297 (1953) ("[E]ven creditors who have knowledge of a reorganization have a right to assume that the statutory 'reasonable notice' will be given them before their claims are forever barred" and have no obligation to monitor the proceedings before they receive formal notice).

        **(b)      Delphi Misled The Defendants To Believe That No Preference
                 Action Had Been Filed, Or Would Be Pursued, Against Them**

69.     The fact that no defendant actually objected to the Extension Motions is not surprising, given that the Debtors' actions and representations specifically were intended to dissuade any such inquiry. Indeed, Delphi repeated its "no adversary proceedings" mantra throughout much of the bankruptcy proceedings, assuring defendants that avoidance actions would be limited only to a few named parties that did not include the Defendants. See 2/28/08 Extension Motion (D.I. 12922), ¶ 17 (Delphi would "not retain any causes of action asserted in the [adversary proceedings] except those specifically listed in Exhibit 7.24 of the Plan" (claims related to third parties)); March 19, 2008 Tr., at p. 22 (the Court stated that "[t]he plan [only] reserve[d] or retain[ed] the ability to pursue a very small number of avoidance actions.").

70.     Further, in this case the Debtors objected to the Defendants timely filed proof of claim, after the preference adversary was filed against the Defendants, and yet chose not to assert that their claims were to be disallowed under 11 U.S.C. §502(d) due to the existence of this

Adversary Proceeding. Given the quality of the Debtors' legal representation, this appears to be a tactical choice rather than an oversight. Based on Delphi's statements and actions in these cases, the Defendants would have no reasonable basis to inquire further. *See Staehr*, 547 F.3d at 414 (holding that a party's "seemingly benign explanation" of actions that suggested fraud made it "reasonable for Plaintiffs not to inquire" further).

71.    Even the Debtor's Initial Disclosure Statement suggested that no inquiry was necessary. Indeed, the Initial Disclosure Statement gave the Defendants every reason to believe that, as of March 31, 2008, the avoidance actions had been dropped or would simply not be pursued. Specifically, the Disclosure Statement stated that "[t]he Debtors have until March 31, 2008 to serve each defendant with the summons and complaint, without prejudice to the Debtors' right to seek further extensions of the deadline." Initial Disclosure Statement (Doc.No. 11388) at 196. Thus, immediately after March 31, 2008, having not been served with a summons and complaint or any notice of a motion to further extend the service deadline, the Defendants would have had no reason to believe that they were still the subject of a preference action.

72.    This was particularly true here because DAS's schedules showed that it was solvent, with more than $2.6 in net equity at the time of its petition. *See* Section II E below. Thus, no party, including the Defendants, could have reasonably had grounds to believe that they could be sued by DAS to avoid an alleged preference.

**E.    The Proposed Amended Complaint Is Futile Because DAS Did Not Properly Plead, And Cannot Prove, It Was Insolvent At The Time Of The Disputed Transfers**

73.    DAS failed to properly plead in its Proposed Complaint and, by its own admission, cannot prove, an essential element of its avoidance claim *i.e.*, that DAS – the only

plaintiff named in the Proposed Complaint – made transfers to the Defendants at a time when DAS was insolvent. *See* 11 U.S.C. § 547(b) (authorizing a trustee to avoid a transfer only if it was, among other things, "made while the debtor was insolvent").

74.    DAS's only allegation of insolvency merely is a bare bones, conclusory recitation of the avoidance statute, namely that, "[p]ursuant to Bankruptcy Code section 547(f), for purposes of this Adversary Proceeding, Plaintiff is presumed to have been, and was in fact, insolvent at the time the Transfers were made." Proposed Complaint ¶ 24. This is exactly the "[t]hreadbare recital[] of the elements of a cause of action supported by mere conclusory statements," that the Supreme Court stated "does not suffice." *Iqbal*, 129 S. Ct. at 1949.

75.    DAS's failure to properly plead facts that show DAS's insolvency is, however, no surprise. This is because, prior to its bankruptcy filing, DAS was solvent. In fact, DAS's own bankruptcy schedules show DAS was solvent, and had more than $2.6 billion in net equity, at the time of its petition. These DAS admissions conclusively rebut any presumption of DAS's insolvency during the preference period. *See, e.g., In re Roblin Industries, Inc.*, 78 F.3d 30, 34-35 (2d Cir. 1996) (schedules showing solvency rebutted presumption so that trustee bore burden of coming forward to prove insolvency); *Akers v. Koubourlis*, 869 F.2d 1319, 1322 (9th Cir. 1989) (debtors' schedules indicating greater assets than debts rebutted presumption); *IMF Sales Associates, Inc. v. Racal-Vadic Information Systems, Inc.*, 94 B.R. 223, 225 n.3 (Bankr. D. Mass 1988) ("Racal has rebutted the [section 547(f) presumption] by offering the schedules which show the debtor was solvent."); *Fokkena v. Winston, Reuber, Byrne, P.C.*, 189 B.R. 744, 747 (Bankr. N.D. Iowa 1995) ("Debtor's schedules filed in his chapter 11 case are sufficient to support a finding of solvency at the time of the transfers. The presumption was rebutted.").

76.    Moreover, during the first two years of their bankruptcy, the Debtors represented that they would file, and ultimately did file and confirm, a 100% Plan. If the Preference Actions, including the one against the Defendants, had been timely served, they would have been subject to dismissal on solvency grounds.

77.    Based on DAS's failure to properly plead insolvency, and the fact that DAS has stated under oath that it was solvent, with an approximate $2.6 billion net equity, any amendment here is futile, as DAS cannot prove a crucial element of its avoidance action.

## III.    The Proposed Amended Complaint Would Substantially Prejudice The Defendants

### A.    Prejudice Is Presumed As A Matter Of Law

78.    In recognition of the natural prejudice resulting from a party's delay in prosecuting an action, including by delaying service of the complaint, the Second Circuit recognizes that "prejudice to defendants resulting from unreasonable delay may be presumed . . . [and] is particularly appropriate where, as here, the plaintiff's delay was prolonged." *Shannon v. GE*, 186 F.3d 186 (2d Cir. 1999) (internal citations and quotations omitted).

79.    Indeed, courts regularly recognize that "[f]ailure to use reasonable diligence in serving a summons is more fraught with possibilities of unfairness and abuse than failure to diligently prosecute an action after summons is served." *Richardson v. United White Shipping Co.,* 38 F.R.D. 494, 496 (N.D. Cal. 1965) (dismissal where service perfected 28 months after the filing of the action). This is because such delay "affects all the defendant's preparations." *Anderson v. Air West, Inc.*, 542 F.2d 522, 525 (9th Cir. 1976) (dismissal under Rule 41(b) based on failure to serve for a year despite entry of order extending service period); *Farhang v. Indian Inst. of Tech.*, 2010 U.S. Dist. LEXIS 53975, at *14-15 (N.D. Cal. June 1, 2010)  (delayed

service prejudiced defendant "by depriving him of the opportunity to engage in earlier preparation and participation in the suit."). Indeed, "[d]elay alone can infuse an adverse element into the proper flow of litigation: evidence deteriorates or disappears, memories fade, and witnesses die or move away." *See also Veazey v. Young's Yacht Sale & Service, Inc.*, 644 F.2d 475, 478 (5th Cir. 1981) (dismissal under Rule 41(b) for failure to serve complaint for nearly 21 months).

80.    In addition, where, as here, a plaintiff files its complaint immediately prior to the running of the statute of limitations and then chooses not to serve it, prejudice to defendants is magnified:

> Once the statute [of limitations] has run, a potential defendant who has not been served is entitled to expect that he will no longer have to defend against the claim. If service can be delayed indefinitely once the complaint is filed within the statutory period, these expectations are defeated and the statute of limitations no longer protects defendants from stale claims.

*Anderson*, 542 F.2d at 525; *see also Zapata v. New York*, 502 F.3d 192, 198 (2d Cir. 2007) ("It is obvious that any defendant would be harmed by a generous extension of the service period beyond the limitations period for the action, especially if the defendant had no actual notice of the existence of the complaint until the service period had expired. . ."); *Redding v. Essex Crane Rental Corp. of Alabama*, 752 F.2d 1077, 1078 (5th Cir. 1985) (holding that it was an "obvious misuse of the judicial process" to prevent defendant from learning of action by failing to serve)

### B.    The Defendants Would Suffer Actual Prejudice From Amendment

81.    Even assuming the Second Circuit's presumption of prejudice would not apply in this case, the Defendants have presented evidence of actual prejudice. *See* generally, Miller Affidavit.    Specifically, lacking knowledge of DAS's preference action, prevented the

31

Defendants from exercising their economic rights in their dealing with the Debtors or using their business connections with the Debtors to resolve the Debtors suit.  More importantly in this case, had the Defendants been served with the Initial Complaint 3 years ago The Defendants may have been able to obtain documents from the Debtors concerning their defense of this Adversary Proceeding.  As noted above, DAS has stated, as a matter of fact in the Proposed Complaint, that it has no documentation relating to the alleged Transfers or the underlying debts.  While the Defendants believe that DAS's causes of action have no merit, the admitted lack of any documentation in the hands of the Debtors on these matters is clearly prejudicial to the Defendants.

## IV.    NO FURTHER AMENDMENT SHOULD BE PERMITTED

82.    Finally, it is clear that DAS should not be allowed a third bite at the apple by being allowed yet another attempt to comply with the requirements of the Court's Dismissal Order and Bankruptcy Rule 7015.  Both the extreme facts of this case and the language of the Dismissal Order fairly indicate that no further amendment of Proposed Complaint is permissible.

83.    The Dismissal Order requires timely filing of the Motion to Amend.  In paragraph 4 to the Dismissal Order, the Court ordered as follows:

> By no later than September 7, 2010, the Reorganized Debtors shall file a motion for leave to amend the complaint in each Adversary Proceeding the Reorganized Debtors intend to pursue (each a "Motion to Amend").  *Each Motion to Amend shall attach a proposed amended complaint that, for each alleged transfer, shall set forth, at a minimum*, the transferor, the transferee, any known subsequent transferee against whom relief is sought, the antecedent debt and which Reorganized Debtor is the plaintiff.  [(Emphasis added.)]

84.    The date requirement set forth in the first two clauses of this paragraph 4 implies that failure to file such motion on or before September 7, 2010, will result in dismissal with prejudice of every adversary proceeding in which such default occurred.  The Reorganized Debtors "shall file" such motion by such date, or the Adversary Proceeding will be dismissed with prejudice.  Such a reading is consistent with the Court's comments at the July Hearing. Transcript at 277.

85.    Therefore, the overruling of the Amendment Motion should be with prejudice for failure to meet the "minimum" expressly set forth in the Dismissal Order.  Just as a tardy motion to amend would be denied and the adversary proceeding to which it pertained dismissed with prejudice, so should the non-compliant Amendment Motion be denied and the adversary proceeding to which it pertains be dismissed with prejudice.

86.    As the Court noted in the July 22, 2010, hearing:  "[I]t's a motion for leave to amend the complaint on unusual circumstances.  It's really their risk if I turn them down again, isn't it?" *Id.* at 213.  Within the same discussion, the Court also observed as follows:

> But I think that the risk of being turned down on the basis of the complaint still isn't good enough is a serious enough – the consequences of that are serious enough so I assume that the plaintiffs are going to be pretty careful. [*Id.*]

87.    The Court's imposition of such risk upon the Debtors is consistent with its concern about burden-shifting and the "unusual circumstances" of the Cases and adversary proceedings.  At the July 22, 2010, hearing, in a colloquy concerning the *Twombly* and *Iqbal* infirmities of the original Complaints, the Court rejected the Debtors' attempts to suggest remedies short of that ultimately required by the Court.  *Id.* at 202-207.  On behalf of the Debtors, Mr. Fisher protested that, "as a practical matter, based on the information that is

33

supplied in the complaint, the movants are in an adequate position to respond intelligently to the complaint," *Id.* at 204. He further argued that, "[w]hat we are trying to avoid, your Honor, is a situation where we now go back and correct these complaints by identifying the specific entities where we think, as a practical matter, the movants know full well by checking their own records..." *Id.* at 207. The Court responded that Mr. Fisher's suggested remedy "shifts the burden" properly placed upon the plaintiffs to the Defendants. *Id.* As the Court observed: "[I]t seems to me the problem with what you are proposing is that you may not have a basis to say in your books and records that – at least for the face of the complaint, that defendant X was owed a debt, that this was a payment on account of you may not have it. And I think your method basically sort of puts the onus on them to make that part of your case for you." *Id.* at 206-07.

88.    Further, the unusual circumstances of this case strongly indicate that DAS should have no further chance to amend their Proposed Complaint. Throughout these cases, Debtors have been represented by one of the leading bankruptcy law firms in the world, other highly-respected law firms, as well as highly-regarded financial advisors and other professionals. Since no later than the Petition Dates of October 8 and 14, 2005, the Debtors and some or all of the law firms and other professionals (collectively, the "Professionals"), have had the duty to prepare for preference litigation. The Proposed Complaint was filed almost five years after such duty attached to the Debtors and the Professionals. Further, the Proposed Complaint was filed about three years after the Original Complaints were filed, and nearly three years after the expiration of the applicable limitations period for filing preference actions.

89.    DAS has had enviable resources and unprecedented time for acquiring the data necessary to make out *prima facie* cases against the Defendants. While the *Twombly* and *Iqbal* cases raised pleading standards, they did not raise standards of proof for debtors in making a

*prima facie* case that one or more preferential transfers was received by a Defendant.  DAS has had five years to assemble such data, which includes, at a minimum, all the data required by the Dismissal Order to be included in the Proposed Complaint.  DAS has had five years to determine, for each transfer, the identity of the transferor, the identity of the transferee, the identity of any known subsequent transferee against whom relief is sought, and the antecedent debt.  In issuing its Dismissal Order, the Court justly required that the Plaintiff show, at a minimum, that it has sufficient data to make the *Twombley* and *Iqbal* showing.

90.     To now permit the Debtors to extend, yet again, the already world-record pleading process for preference complaints is not justifiable.  To place onto the Defendants the burden of assisting the Debtors by pointing out gaps in the Proposed Amended Complaints, to be cured by further amendment, would violate the letter and spirit of the Dismissal Order.

## V.    INCORPORATION OF OTHER DEFENDANTS' BRIEFS

91.     The Defendants incorporate all of the other meritorious arguments raised by the other preference defendants in opposition to Debtors' Motions for leave to amend with regard to them.

[Balance of page intentionally left blank.]

## **CONCLUSION**

For all of the reasons set forth above, the Amendment Motion should be DENIED WITH

PREJUDICE.

Dated: November 24, 2010          FOX ROTHSCHILD LLP
       Roseland, New Jersey
                                  By:   /s/Richard M. Meth
                                        RICHARD M. METH (RM7791)
                                        75 Eisenhower Parkway, Suite 200
                                        Roseland, New Jersey 07068
                                        973-992-4800
                                        - and -
                                        100 Park Avenue, 15th Floor
                                        New York, NY  10017
                                        rmeth@foxrothschild.com

                                        and
                                        GREENEBAUM DOLL & MCDONALD PLLC
                                        C. R. Bowles (*pro hac vice* pending)
                                        crb@gdm.com
                                        3500 National City Tower
                                        101 South Fifth Street
                                        Louisville, KY 40202
                                        (502) 589-4200  (T)
                                        (502) 540-2274  (F)

                                        Attorneys for Defendants DSSI and DSSI, LLC

*4153907_1.doc*

36

# EXHIBIT "A"

BUTZEL LONG, a professional corporation
380 Madison Avenue
22nd Floor
New York, New York 10017
Barry N. Seidel
Eric B. Fisher
Cynthia J. Haffey
Telephone: (212) 818-1110
Facsimile: (212) 818-0494
*Counsel for Plaintiff*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
                       :

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | Case No. 05-44481 [RDD] |
| DPH HOLDINGS CORP, *et al.*, | : | |
| | : | |
| Reorganized Debtors, | : | |
| | : | |

------------------------------------------------------------x
                       :

| | | |
|---|---|---|
| DELPHI AUTOMOTIVE SYSTEMS, LLC | : | Adv. Pro. No. 07-02236 [RDD] |
| | : | |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| DSSI and DSSI, LLC, | : | |
| | : | |
| Defendants. | : | |

------------------------------------------------------------x

## FIRST AMENDED COMPLAINT TO AVOID AND
## RECOVER TRANSFERS PURSUANT TO 11 U.S.C. §§ 547 AND 550

Plaintiff, and Delphi Automotive Systems, LLC ("Plaintiff"), by its counsel, Butzel Long,

a professional corporation, as and for its first amended complaint (the "First Amended

Complaint") against Defendants, DSSI and DSSI, LLC (collectively, "Defendants"), alleges the

following:

### INTRODUCTION

1.      Plaintiff brings this adversary proceeding (the "Adversary Proceeding") pursuant

to, *inter alia*, sections 547 and 550 of the Bankruptcy Code and Rules 3007 and 7001(1) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for an Order and Judgment from this Court against Defendants to direct the return of certain transfers (the "Transfers") that were made by Plaintiff to Defendants as identified on Exhibit 1 attached hereto.

2.      On October 8, 2005 (the "Initial Filing Date"), Delphi Corporation ("Delphi") and certain of its subsidiaries (the "Initial Filers") each filed voluntary petitions in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330 (the "Bankruptcy Code").

3.      On October 14, 2005, three additional U.S. subsidiaries of Delphi (together with the Initial Filers, the "Reorganized Debtors") filed voluntary petitions in this Court for reorganization relief under chapter 11 of the Bankruptcy Code.

4.      The Reorganized Debtors' First Amended Joint Plan of Reorganization, as modified and amended, was confirmed by the Court on July 30, 2009 (the "Modified Plan") and became effective on October 6, 2009.

5.      Under the Modified Plan, general unsecured creditors in these chapter 11 cases will receive less than full value on account of their unsecured claims.

6.      Accordingly, pursuant to section 7.19 of the Modified Plan, the Reorganized Debtors retained the right to pursue the claims and causes of action asserted in this First Amended Complaint and to settle, release or compromise such claims and causes of action without further order of the Court.

## JURISDICTION AND VENUE

7.      This Adversary Proceeding is a "core" proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (F) and (O).

2

8.      Subject-matter jurisdiction exists in this Court pursuant to 28 U.S.C. § 1334.

9.      Personal jurisdiction exists in this Court because Defendants conducted business in the United States and/or directed activities toward Plaintiff in the United States.

10.     Venue of this Adversary Proceeding is proper in this Court pursuant to 28 U.S.C. § 1409(a).

11.     Defendants were creditors of Plaintiff prior to the filing of the Reorganized Debtors' chapter 11 cases.

## PARTIES AND BACKGROUND

12.     Delphi Technologies, Inc. ("DTI") was a subsidiary or affiliate of Delphi, and one of the Reorganized Debtors in these chapter 11 proceedings.

13.     Plaintiff was the operating subsidiary of Delphi in North America that performed, among other things, accounting and payment functions for the Reorganized Debtors in connection with their manufacture of automotive parts, components, modules and assemblies through various divisions.

14.     DTI and Plaintiff entered into certain service agreements (the "Agreements") with Defendants for the performance of various services to the Reorganized Debtors, and Plaintiff assumed or otherwise became obligated for all payment obligations thereunder.

15.     Defendants are domestic entities located at 26261 Evergreen Road, Southfield, Michigan 48076.

16.     Pursuant to the terms of the Agreements, Defendants were required to perform certain services for the benefit of the Reorganized Debtors.

17.     Plaintiff did not accept physical invoices from Defendants in connection with Defendants' performance of services under the Agreements.

3

18.     Rather, Plaintiff used its accounts payable system to make payment to Defendants.

19.     During the ninety (90) days preceding the Initial Filing Date, Plaintiff made certain payments to Defendants in satisfaction of amounts due for the services previously rendered by Defendants under the Agreements (the "Transfers").  Such Transfers are identified on Exhibit 1 attached hereto.

## CLAIM FOR RELIEF

## Avoidance and Recovery of Preferential Transfers

20.     Plaintiff incorporates by reference the preceding allegations.

21.     On or within ninety (90) days prior to the Initial Filing Date, Plaintiff made, or caused to be made, the Transfers listed on Exhibit 1 to, or for the benefit of, Defendants.

22.     Such Transfers constituted transfers of interests in Plaintiff's property because they were made by Plaintiff from Plaintiff's account.

23.     Plaintiff made, or caused to be made, each Transfer listed on Exhibit 1 for, or on account of, an antecedent debt owed to each Defendant indicated on Exhibit 1 as of the date on which each Transfer was made.  The documents evidencing the antecedent debt are, on information and belief, in Defendants' possession, and include the purchase orders and/or invoices exchanged between the parties, which purchase orders and/or invoices include evidence of the amount of the antecedent debt and the approximate dates the subject services contemplated by the Agreements were requested pursuant to the Agreements and/or were provided by Defendants.

24.     Pursuant to Bankruptcy Code section 547(f), for purposes of this Adversary Proceeding, Plaintiff is presumed to have been, and was in fact, insolvent at the time the

Transfers were made.

25.     The Transfers enabled Defendants to receive more than they would have received if (i) this case was administered under chapter 7 of the Bankruptcy Code; (ii) each Transfer had not been made; and (iii) Defendants had received payment of the antecedent debt paid by each Transfer to the extent provided by the Bankruptcy Code.  Specifically, Defendants were general unsecured creditors of Plaintiff, and unsecured creditors in these chapter 11 cases will receive less than full value on account of their unsecured claims.

26.     Based upon the foregoing, the Transfers constitute avoidable preferential transfers pursuant to section 547(b) of the Bankruptcy Code.

27.     Pursuant to section 550(a) of the Bankruptcy Code, the Court should enter an Order granting judgment in favor of Plaintiff and against each Defendant (i) avoiding the Transfers each Defendant received, pursuant to section 547(b) of the Bankruptcy Code; (ii) holding each Defendant liable in an amount not less than the amount of the Transfers it received, plus interest from the date hereof and the costs and expenses of this action including, without limitation, attorneys' fees; and (iii) ordering each Defendant to pay to Plaintiff the amount of the Transfers it received, pursuant to sections 547(b) and 550(a) of the Bankruptcy Code.

**WHEREFORE**, Plaintiff respectfully requests that the Court:

a.     enter judgment in favor of Plaintiff and against each Defendant in an amount not less than the amount of the Transfers each Defendant received, plus costs, interest and attorneys fees as allowed by law;

b.     order each Defendant to pay to Plaintiff the amount of the Transfers it received, pursuant to sections 547(b) and 550(a) of the Bankruptcy Code; and

c.     grant such other and further relief as this Court may deem just and proper.

DATED:     New York, New York
            September 7, 2010

                                BUTZEL LONG, a professional corporation


                                By:/s/Eric B.Fisher
                                    Eric B. Fisher (EF-1209)
                                380 Madison Avenue
                                22nd Floor
                                New York, New York 10017
                                Telephone: (212) 818-1110
                                Facsimile: (212) 818-0494
                                fishere@butzel.com
                                Attorneys for Plaintiff


1230151

6

EXHIBIT A
*Delphi Automotive Systems, LLC v. DSSI, LLC*
Adv. Pro. No. 07-02236 [RDD]

| Adversary Proceeding No. | Transfer Recipient(s) | Contracting Entity/Entities | Obligor and Transferring Entity | Transfer Dates | Transfer Amounts | Transfer Type |
|---|---|---|---|---|---|---|
| 07-02236 | DSSI | DAS LLC, Delphi Technologies | DAS LLC | 8/15/2005 | $  1,312,400.48 | WIRE |
| 07-02236 | DSSI | DAS LLC, Delphi Technologies | DAS LLC | 9/30/2005 | $  441,076.50 | WIRE |
| 07-02236 | DSSI | DAS LLC, Delphi Technologies | DAS LLC | 10/4/2005 | $  1,025,771.16 | WIRE |
| 07-02236 | DSSI | DAS LLC, Delphi Technologies | DAS LLC | 10/6/2005 | $  2,434,357.50 | WIRE |
| 07-02236 | DSSI | DAS LLC, Delphi Technologies | DAS LLC | 10/7/2005 | $  1,093,981.40 | WIRE |
| 07-02236 | DSSI LLC | DAS LLC, Delphi Technologies | DAS LLC | 9/19/2005 | $  5,232,374.64 | WIRE |
| 07-02236 | DSSI LLC | DAS LLC, Delphi Technologies | DAS LLC | 9/28/2005 | $  2,600,471.84 | WIRE |

Total Amount of Claims =     $   14,140,433.52