BARACK FERRAZZANO KIRSCHBAUM &
NAGELBERG LLP
200 W. Madison St., Suite 3900
Chicago, IL 60606
Robert D. Nachman
Telephone:    (312) 629-5175
Facsimile:    (312) 984-3150
Counsel for MJ Celco, Inc.

**Hearing Date:**
**February 17, 2011 at 10:00 a.m. (ET)**
**Response Deadline:**
**January 28, 2011 at 4:00 p.m. (ET)**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>DPH HOLDINGS CORP., et al.,<br><br>       Reorganized Debtors. | Chapter 11<br>Case No. 05-44481 [RDD] |
| DELPHI AUTOMOTIVE SYSTEMS, LLC,<br><br>       Plaintiff<br><br>    v.<br><br>MJ CELCO, INC.,<br><br>       Defendant. | Adv. Pro. No. 07-02466 [RDD] |

## RESPONSE OF MJ CELCO, INC. IN OPPOSITION TO REORGANIZED DEBTORS' MOTION FOR LEAVE TO FILE AMENDED COMPLAINTS

Defendant MJ Celco, Inc. ("Celco"), by its attorneys, for its Response (the "Response") in Opposition to Reorganized Debtors' Motion For Leave to File Amended Complaints (the "Motion"), states the following:

668697_1.DOC

1

A.     **Introduction and Summary**

Celco objected to the initial Complaint in this matter ("Complaint") on several grounds. In September 2010, the Court dismissed the Complaint without prejudice, finding that Debtors had failed to plead sufficient facts to state a claim, and had not complied with Rule 8 of the Federal Rules of Civil Procedure. "Dismissal Order", Adversary Docket 27. The Reorganized Debtors ("DPH") have filed a Motion for Leave to File Amended Complaints, and has attached a draft Amended Complaint ("Amended Complaint") as an exhibit to the Motion. Adversary Docket 26.

In allowing for the possibility that the DPH might try to amend the Complaint, the Court stated:

> [I]t's a motion for leave to amend the complaint on unusual circumstances. It's really their risk if I turn them down again, right? [I] think that the risk of being turned down on the basis [that] the complaint still isn't good enough [after amendment] is a serious enough – the consequences of that are serious enough so I assume that the plaintiffs are going to be pretty careful.

7/22/10 Tr., at p. 213.

Assumptions don't always pan out. Where the original Complaint sought a "mere" $5,394,054.68, the supposedly chastened Plaintiff ups the ante in the Amended Complaint to $9,197,034.96 – a $3.8 million increase – and never tries to explain the relationship, if any, between the transfers alleged in the Complaint and those alleged in the Amended Complaint. It's as if Plaintiff, having had approximately five years to get it right, couldn't be bothered to detect, much less explain, a 70% increase in the amount demanded. On a similar note, Exhibit 1 to the Amended Complaint, in purported compliance with the Court's dictates, dutifully lists DAS LLC ("DAS") as both the Contracting Entity and the Obligor and Transferring Entity as to each of the transfers; yet a significant percentage of Celco's business with Delphi concerned the fabrication of molds and tooling, which it performed pursuant to contracts with Delphi Electronics and

Safety ("Electronics"), not DAS, and significant sums were received during the preference period on Electronics business.

This carelessness is of a piece with the disregard for the rights of preference defendants shown by the Debtors throughout the bankruptcy. In a case in which the Court had decreed that particularized notice be given to parties whose rights may be particularly impacted, the Debtors failed to give particularized notice (in many cases, any notice) of its motion to file complaints under seal, and the several Rule 4(m) motions that followed.

Moreover, Delphi used its superior knowledge to take advantage of unsuspecting creditors. Celco was negotiating a claims objection with Debtors after the passing of the statute of limitations. As with any claims objection, Celco sought to resolve all disputes. The stipulation resolving claims, approved by this Court in January 2008, provided that "the Debtors acknowledge that they have no claim arising prior to the Petition Date against MJ Celco for payment for goods sold and/or related adjustments and reserve their right to assert a claim against MJ Celco for any defective goods sold prior to the Petition Date." DPH asserts that this provision does not apply to preference claims, because preference claims arise only as of the Petition Date, not prior to it. In negotiating the stipulation, Debtors never told Celco that they had filed a $5.3 million complaint against Celco, or even that they had filed certain complaints under seal, even though Delphi had reason to know that Celco was oblivious of these facts, since it had actively tried to conceal them. This is certainly not the conduct this Court intended to promote when it permitted the filing of complaints under seal.

Celco's response will try not to add unnecessarily to the volume of words which have already been expended on this topic. Instead, this Response will detail the prejudice Celco has suffered by the filing of the Complaint under seal, and the insufficiency of the Amended

Complaint to comply with the Court order. It will also add an argument that, due to the Debtors' gamesmanship during the claims negotiation process, its prosecution of the Complaint is barred by the doctrine of quasi-estoppel. At the end, Celco will ask the Court to deny the Motion to Amend, and allow Delphi's preference misadventure to rest in peace.

### B. Relevant Facts

#### 1. Celco's Relationship with Debtors

Celco was the sole supplier of certain parts relating to products sold by Delphi Corporation and related entities (collectively, "Delphi"). Cielak Declaration (Ex. A) at ¶4. To provide these parts, Celco first contracted to create molds and tooling. *Id.* at ¶5. Second, after such molds and tooling were fabricated and approved by Delphi, Celco would use such molds and tooling to manufacture the requested parts. *Id.* at ¶5. In 2005 and years prior, Celco created molds and tooling pursuant to purchase orders from **Delphi Electronics and Safety**, which was obligated to pay Celco for such molds and tooling. *Id.* at ¶6. In 2005 and years prior, Celco used the molds and tooling to manufacture parts created pursuant to purchase orders issued by **DAS, LLC**, which was obligated to pay Celco for such parts. *Id.* at ¶7.

#### 2. The Motions For Extension

Debtor never served Celco with notice of the August 6, 2007 Preservation of Estate Claims Motion, Docket 8905, or the order granting it. Docket 9105. *See* Affidavit of Service, Docket 9039; Affidavit of Service, Docket 9141.

Debtor never served Celco with notice of the February 8, 2008 Extension of Avoidance Action Service Deadline Motion, Docket 12922 or the order granting it. Docket 13277. *See* Affidavit of Service, Docket 12970; See Affidavit of Service, Docket 13315.

Debtor never served Celco with notice of the April 20, 2008 Postconfirmation Extension of Avoidance Action Service Deadline Motion, Docket 13361 or the order granting it. Docket 13484. *See* Affidavit of Service. Docket 13415; Affidavit of Service, Docket 13540; and

Debtor never served Celco with notice of the October 2, 2009 Supplemental Postconfirmation Extension of Avoidance Action Service Deadline Motion, Docket 18952 or order granting it. Docket 18999. *See* Affidavit of Service. Docket 18967. Upon information and belief, DOCKET 18999 was not served until after the Original Complaint was unsealed.

More important, Debtor never served Celco with particularized notice of any of these pleadings, as required by this Court's case management orders. *See, e.g.,* Docket 2883 ("All Filings shall be served (a) via overnight mail upon all parties with a particularized interest in the subject of the Filing . . ..")

### 3.    Resolution of Celco's Proof of Claim

On or about July 28, 2006, Celco filed a claim in the consolidated bankruptcy cases in the amount of $800,000. The claim was denominated claim number 12183 (the "Claim"). On or about May 22, 2007, Delphi filed an objection to the Claim in its Fifteenth Omnibus Claim Objection. In 2006 and 2007, Celco worked with Delphi representatives to sort out how much was actually owed. Ex. A at ¶17. Celco never reached an agreement with Delphi as to the true amount of claims due. *Id.* at ¶¶'s 18-19. At the end of the reconciliation process, Celco believed that its claim was approximately $150,000. Docket 8290. On information and belief, Delphi believed that Celco may have owed Delphi money.

Celco agreed to withdraw Celco's claim if and only if Delphi would agree that all matters regarding prepetition claims would be settled, except for certain quality issues, should any arise. *Id.* at ¶ 19. To that end, Celco and the Debtors entered into a Joint Stipulation and Agreed Order

Disallowing and Expunging Proof of Claim number 12183 (the "Stipulation", Docket 12068, Ex. B hereto), which included the following provision: "the Debtors acknowledge that they have no claim arising prior to the Petition Date against MJ Celco for payment for goods sold and/or related adjustments and reserve their right to assert a claim against MJ Celco for any defective goods sold prior to the Petition Date."

The claims negotiation took place largely in November 2007. Celco knew that the statute of limitations for preference claims had run in October, and was unaware that the Debtor had filed the Complaint under seal several months earlier. For this reason, in the Stipulation, Celco did not seek to have Delphi explicitly waive preference claims -- it believed none could have existed. Celco believed that, in entering into the Stipulation, it was resolving all issues pertaining to prepetition conduct except for quality issue, which never arose. When it was served with the preference complaint, it viewed this action as inconsistent with the acknowledgment in the Stipulation. Had Celco known that a preference action had been filed against it, it would not have entered into the Stipulation. Ex. A at ¶ 20

### 4.    The Amended Complaint

The Amended Complaint's requested recovery is 70% greater than the amount requested in the original Complaint, and is far in excess of funds actually received by Celco during the preference period. Celco's records match the amounts claimed in the Amended Complaint as to only one of the hundreds of transfers listed, and as to that transfer, it includes over $750,000 that Delphi applied postpetition to postpetition provision of goods and services. *Id.* at ¶10. Moreover, as to three of the alleged transfers, totaling approximately $4.3 million, the Amended Complaint fails to allege the antecedent debt which each is supposedly paying. *Id.* at ¶11. Finally, the Amended Complaint lists all of the funds as paying debts of DAS LLC when, in fact,

much of the moneys paid in the preference period were made in payment of debt owed by Delphi Electronics and Safety. *Id.* at ¶6.

### C.    Argument:  The Motion Must Be Denied

#### 1.    Adoption of Briefs and Arguments of Other Preference Defendants

Several of Celco's similarly aggrieved preference defendants have made telling arguments supporting denial of leave to amend, and other are expected to do so shortly. Rather than burden the Court with duplicative pleadings, Celco adopts all meritorious arguments advanced by other preference defendants. The remainder of the Response makes arguments particularly tied to Celco's own factual situation.

#### 2.    The Amended Complaint Does Not Comply With The Dismissal Order.

The Amended Complaint fails to identify the antecedent debt connected with three transfers totaling approximately $4.3 million. One transfer contains no information at all. For two others, the information listed identifies the payment, not the antecedent debt. This violates the Dismissal Order's requirement that the Amended Complaint set forth the antecedent debt to which each transfer relates. The Amended Complaint also improperly lists the obligor of many transfers, and lists transfer amounts far higher than those which appear in Celco's records. Celco reasserts the general objections to the sufficiency of amended preference complaints contained in other defendants' briefs.

#### 3.    The Amendment Would Be Futile, Because, Among Other Reasons, It Is Barred by the Doctrine of Quasi-Estoppel.

As other defendants have pointed out, judicial estoppel bars prosecution of these preference actions (*see, e.g.,* Defendant Pro Tech Machine's Objection to Reorganized Debtors' Motion for Leave to File Amended Complaints, § III.C, Docket 20842). In addition, the doctrine

of quasi-estoppel also operates to preclude prosecution of the Amended Complaint.

Whenever one party has knowledge unknown to the other, as Delphi had here, the party with knowledge enjoys an advantage over the other. When this involves statements to the Court, such as Delphi's representations in its motions to extend time about which preference actions it was preserving, judicial estoppel is available to stop the party with knowledge from profiting unfairly. In other contexts, the doctrine of quasi-estoppel is available to protect the unsuspecting.

In its claim objection negotiations in November 2007, Delphi and Celco agreed on a Stipulation whereby Celco agreed to withdraw its proof of claim. Ex. B. As part of the Stipulation, "the Debtors acknowledge that they have no claim arising prior to the Petition Date against MJ Celco for payment for goods sold and/or related adjustments and reserve their right to assert a claim against MJ Celco for any defective goods sold prior to the Petition Date." In October of 2010, when counsel for Celco asserted to Plaintiff's counsel that this assertion constituted, in effect, a waiver of the preference claims, Debtor replied that it was not intended as a preference waiver, but referred to other matters, and that, in any event, preference claims arise upon the filing of the petition, and the reference to "claims arising prior to the Petition Date" should not apply to the preference claims. *See* Declaration of Robert D. Nachman, Ex. C hereto

In the negotiations, preference complaints were never mentioned by Celco, because the statute of limitations had run. Had Celco known that Debtors had filed a preference action against Celco, Celco would not have entered into the Stipulation. Celco does not know what Delphi was thinking in the course of the claims negotiation. It does know, however, that Delphi intentionally concealed from all preference defendants the fact that they had skirted the statute of limitations by filing complaints under seal. In any event, intentionally or otherwise, Delphi was

able to leverage its unique knowledge about the preference actions being filed to obtain a release of claims from Celco in the Stipulation. Such a result is barred by the doctrine of quasi-estoppel and should not be countenanced by the Court. Quasi-estoppel, a form of estoppel against inconsistent positions, "applies where it would be unconscionable to allow a person to maintain a position inconsistent with one in which he acquiesced, or of which he accepted a benefit." *HSBC Bank USA, N.A. v. Adelphia Comm'ns Corp.*, 2009 U.S. Dist. LEXIS 10675, at *51 (W.D.N.Y. Feb. 12, 2009) (quoting *Erie Telecomms., Inc. v. City of Erie*, 659 F. Supp. 580 (W.D. Pa. 1987). *See Zemel v. Horowitz*, 2006 N.Y. Slip Op 50276U, at *5 (S. Ct. N.Y. March 2, 2006) ("[E]stoppel principles forbid a party from receiving the benefits of a transaction or statute, and then subsequently taking an inconsistent position to avoid the corresponding effects."). The doctrine has been applied to judicial proceedings, as well as administrative ones like the filing of tax returns, in instances where a party has attempted to take opposing positions at his convenience and to his legal advantage.

The court's discussion in *HSBC,* addressing remarkably similar facts, is illustrative. Barring preference claims on grounds of, among others, quasi-estoppel, the court in *HSBC* emphasized the inequity of allowing one to stand by idly and allow reliance on facts it alone knows not to be true. The court held a party's preference claims were barred where, "[the party seeking avoidance] had knowledge of facts putting it on notice of the possibility of avoidance claims against the Banks[, but] instead of trying to repudiate the allegedly fraudulent conveyances … chose to remain silent." *HSBC*, 2009 U.S. Dist. LEXIS 10675, at *53. Further explicating the reason for its decision, the court stated:

> [w]hen a party, with full knowledge, or at least with sufficient notice or means of knowledge, of his rights, and of all the material facts, freely does what amounts to a recognition of the transaction as existing, or acts in a manner inconsistent with its repudiation, or lies by for a considerable time, and knowingly permits the other

> party to deal with the subject-matter under the belief that the transaction has been recognized, or freely abstains for a considerable length of time from impeaching it, so that the other party is thereby reasonably induced to suppose that it is recognized, there is acquiescence; and the transaction, although originally impeachable, becomes unimpeachable in equity. Even where there has been no act nor language properly amounting to an acquiescence, a mere delay, a suffering time to elapse unreasonably, may of itself be a reason why courts of equity refuse to exercise their jurisdiction in cases of actual and constructive fraud, as well as in other instances[.]

*Id.* (quoting *Simmons v. Burlington, C.R. & N.R. Co.,* 159 U.S. 278 (1895) (quoting 2 Pom. Eq. Jur. §§ 816, 965)).

Here, the Debtor represented—knowing that it had filed a preference action to recover from Celco more than $5 million paid to Celco before the Petition Date, and that Celco had no knowledge of the Complaint—that it had "no claims arising prior the Petition Date" as an inducement to Celco to enter into a settlement with it. Such a representation, made after the statute of limitations had run, would, not only foreseeably, but inevitably, be relied upon by Celco as a waiver of all claims arising from prepetition conduct. In such circumstances, it would be inequitable in the extreme to permit the Reorganized Debtors to pursue a preference claim if, as they have claimed, preference claims arise *upon* the filing of a petition, not *prior to* it. Such a result abuses the legal process, as well as the Court's forbearance in allowing the filing of preference petitions under seal, and should not be permitted to stand.

### 4. Celco Has Been Prejudiced.

In addition to the prejudice described above, Celco has been prejudiced in other ways as well. Had Celco known about the preference action at the time it was filed, it could have paid the preference amount, sold the §502(h) claim, and recouped its payment. It could also have used its negotiating power as a sole source supplier to increase revenue to offset potential liability, or even have the Complaint dismissed. Ex. A, ¶¶'s 15-16. Indeed, Delphi sought to file

the Complaint under seal, in significant part, to preclude sole source suppliers from exercising the leverage they would have had if they'd known about the filings.

### D.     Conclusion

For all these reasons, and those meritorious arguments raised in the briefs of other preference defendants, Celco asks this Court to deny the Motion, and grant it such further relief as may be appropriate.

Dated: November 24, 2010.

>MJ CELCO, INC.
>
>By    */s/ Robert D. Nachman*
>Robert D. Nachman
>Barack Ferrazzano Kirschbaum & Nagelberg LLP
>200 W. Madison St., Suite 3900
>Chicago, IL 60606
>Telephone:    (312) 629-5175
>Facsimile:    (312) 984-3150
>Email:         robert.nachman@bfkn.com