# EXHIBIT A

BARACK FERRAZZANO KIRSCHBAUM &
NAGELBERG LLP
200 W. Madison St., Suite 3900
Chicago, IL 60606
Robert D. Nachman
Telephone:    (312) 629-5175
Facsimile:    (312) 984-3150
*Counsel for MJ Celco, Inc.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>DPH HOLDINGS CORP., *et al.*,<br><br>　　　　Reorganized Debtors. | Chapter 11<br>Case No. 05-44481 [RDD] |
| DELPHI AUTOMOTIVE SYSTEMS, LLC,<br><br>　　　　Plaintiff<br><br>v.<br><br>MJ CELCO, INC.,<br><br>　　　　Defendant. | Adv. Pro. No. 07-02466 [RDD] |

### DECLARATION OF MICHAEL CIELAK IN SUPPORT OF MJ CELCO, INC.'S RESPONSE IN OPPOSITION TO REORGANIZED DEBTORS' MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

Michael Cielak, pursuant to 28 U.S.C. § 1746, declares as follows:

1.　　From 2000 to the present, I have been the President of MJ Celco, Inc. ("Celco").

2.　　I have personal knowledge of the facts set forth in this Declaration and, if called to testify, I could and would testify competently concerning these facts.

3.  Celco is a family-owned and managed metal stamping and assembly company.

### A. Celco's work for Delphi

4.  For approximately the past eighteen years, Celco has been the sole supplier of certain parts relating to products sold by Delphi Corporation and related entities (collectively, "Delphi").

5.  To provide these parts, Celco first contracted to create molds and tooling. Second, after such molds and tooling were fabricated and approved by Delphi, Celco would use such molds and tooling to manufacture the requested parts.

6.  In 2005 and years prior, Celco created molds and tooling pursuant to purchase orders from Delphi Electronics and Safety, which was obligated to pay Celco for such molds and tooling.

7.  In 2005 and years prior, Celco used the molds and tooling to manufacture parts created pursuant to purchase orders issued by DAS, LLC, which was obligated to pay Celco for such parts.

### B. Payments During the Preference Period

8.  In the ninety days prior to the filing of the bankruptcy petition, Celco received certain payments for molds and tooling, and certain payments for parts.

9.  I have reviewed the Exhibit 1 to the proposed Amended Complaint ("Amended Complaint"). With only one exception, the entries for dollar amounts of the listed transfers do not correspond to amounts actually received.

10. The only transfer identified in the Amended Complaint which corresponds to Celco's records is a wire transfer in the amount $1,591,082.00. Celco did receive this amount on or about October 7, 2005. However, Delphi later applied over $750,000 of this amount to pay

for Postpetition goods and services. At least this amount of the payment, then, was not on account of an antecedent debt, and has already, in effect, been "returned" to Delphi by means of the credit which Delphi took unilaterally.

11. On Exhibit 1, the first two entries list numbers which are identified as invoice numbers. They are not invoice numbers, but appear to be wire transfer references.

### C.  Filing Under Seal, and Prejudice

12. I was completely unaware that the Complaint had been filed until I was served with it in March of 2010.

13. In the summer of 2007, I understood that Delphi would be able to pay prepetition claims in their entirety, and was putting together a plan of reorganization which would pay creditors in full.

14. I understand that, at that time, outside entities were offering to purchase Delphi claims for face value or close to face value.

15. Had Celco been aware of the Complaint at the time it was filed, Celco could have, and likely would have, repaid in full the allegedly preferential transfers identified in the Complaint, and sold the resulting claim under §502(h) of the Bankruptcy Code. This would have eliminated any preference liability at essentially no cost to Celco. By the time Celco was served with the Complaint in 2010, however, there was no market for §502(h) claims. For this reason, among others, the filing of the Complaint under seal, coupled with the delay in serving the Complaint, greatly prejudiced Celco.

16. Had Celco been aware of the Complaint at the time it was filed, Celco would likely have negotiated differently with Delphi for future work. Celco had significant negotiating power with respect to new contracts because Celco was a sole supplier, and it would have been

IMAN_667978_2 (2).DOC                              3

difficult, time consuming, and expensive for Delphi to re-source the production to an alternative supplier. If Celco had known of the Complaint, Celco likely would have refused to accept new contracts to replace expiring contracts unless Delphi dismissed the Complaint. Moreover, I believe that Delphi would likely have dismissed the Complaint since, at the time, it was believed that the Complaint had no value. Accordingly, Celco was substantially prejudiced by the filing of the preference complaint under seal.

### D. Proof of Claim, Waiver, and Prejudice

17. On or about July 28, 2006, Celco filed a claim in the consolidated bankruptcy cases in the amount of $800,000. The claim was denominated claim number 12183 (the "Claim").

18. In 2006 and 2007, Celco worked with Delphi representatives to sort out how much was actually owed. Celco never reached an agreement with Delphi as to the true amount of claims due.

19. Delphi filed an objection to the Claim. Even though I believe that Delphi owed Celco money for the prepetition period, I agreed to withdraw Celco's claim if and only if Delphi would agree that all matters regarding prepetition claims would be settled, except for certain quality issues, should any arise. I authorized my attorney to enter into a Joint Stipulation and Agreed Order Disallowing and Expunging Proof of Claim number 12183 (the "Stipulation") because, among other things, in that document, "the Debtors acknowledge that they have no claim arising prior to the Petition Date against MJ Celco for payment for goods sold and/or related adjustments and reserve their right to assert a claim against MJ Celco for any defective goods sold prior to the Petition Date."

IMAN_667978_2 (2).DOC        4

20. The Stipulation was entered into on January 11, 2008. By this time, I knew that the statute of limitations for bringing preference actions had run. Had I known that a preference action had been filed against Celco, I would have found that contrary to the language quoted in paragraph 19 above, and would not have entered into the Stipulation.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 23rd day of November, 2010, in Schiller Park, Illinois.

_____
Michael Cielak