<u>HEARING DATE</u>: FEBRUARY 17, 2010
<u>HEARING TIME</u>:  10:00 A.M.

TODTMAN, NACHAMIE, SPIZZ & JOHNS, P.C.
425 Park Avenue
New York, New York 10022
Tel:  (212) 754-9400
Fax:  (212) 754-6262
Janice B. Grubin

and

TAFT STETTINUS & HOLLISTER LLP
425 Walnut Street, Suite 1800
Cincinnati, Ohio 45202-3957
Tel: (513) 381-2838
Fax: (513) 381-0205
W. Timothy Miller (admitted *pro hac vice*)
Paige Leigh Ellerman (admitted *pro hac vice*)

*Attorneys for Defendant Select Industries, Corp.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>DPH HOLDINGS CORP., *et al.*,<br><br>          Debtors,<br>_____<br><br>DELPHI AUTOMOTIVE SYSTEMS, LLC,<br><br>          Plaintiff,<br>  v.<br><br>SELECT INDUSTRIES, CORP.,<br><br>          Defendant. | Chapter 11<br>Case No. 05-44481 (RDD)<br>Jointly Administered<br><br><br><br>Adv. Pro. No. 07-02618 (RDD) |

**DEFENDANT'S OPPOSITION TO PLAINTIFFS'**
<u>**MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT**</u>

12005719.2

## INTRODUCTION

Select Industries, Corp., ("Select" or "Defendant"), by its undersigned attorneys, respectfully submits this opposition to the motion (the "Motion") for leave to amend their complaint (the "Amended Complaint") filed by DPH Holdings Corporation and certain of its affiliated reorganized debtors ("Plaintiffs" or "Debtors"). As set forth in detail below, Debtors' Motion should be denied and the instant adversary proceeding should be dismissed, with prejudice, because (1) Debtors' new proposed Amended Complaint violates the letter and spirit of Rule 15 of the Federal Rules of Civil Procedure, as made applicable by Rule 7015 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules), and (2) granting Debtors' Motion will be gravely prejudicial to Select.

**I.**

## STATEMENT OF FACTS

**A.    History of Business Dealings Between Select and Delphi**

1. Prior to and after the commencement of this bankruptcy case, Select had a long-standing relationship of manufacturing and supplying certain automotive parts to the Debtors, including Delphi Automotive Systems, LLC ("DAS"), which automotive parts included stamp, ship, molding and drivetrain products. In the last few years of this business relationship, the Debtors comprised the substantial majority of Select's business, which Select serviced with a dedicated team. When the Debtors ceased doing business with Select in 2009, Select's annual 2009 sales dropped by almost 50% from 2008

12005719.2

B.     **The Debtors' Bankruptcy Filing**

2.     On October 8, 2005 and October 14, 2005, (collectively, the "Filing Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (Bankr. Doc. 1) (the "Bankruptcy Code").[1]

C.     **The Procedures Motion and Order**

3.     On August 6, 2007, the Debtors filed the Expedited Motion For Order Under 11 U.S.C. Sections 102(1)(A), 105(a), 107, 108(a)(2), and 546(a) and Fed. R. Bankr. P. 7004, 9006(c), and 9018 (I) Authorizing Debtors To Enter Into Stipulations Tolling Statute of Limitations With Respect To Certain Claims, (II) Authorizing Procedures To Identify Causes of Action That Should Be Preserved, and (III) Establishing Procedures For Certain Adversary Proceedings Including Those Commenced By Debtors Under 11 U.S.C. Sections 541, 544, 545, 547, 548, or 553 (Bankr. Doc. 8905) (the "Procedures Motion").

4.     By the Procedures Motion, the Debtors sought, among other things: 1) an extension of less than 60 days to serve certain adversary summonses and complaints; 2) a stay of the applicable adversary proceedings until the Debtors completed service; and 3) permission for the Debtors to file the adversary proceeding complaints under seal. Procedures Motion ¶¶ 33-38. The Debtors did not identify any of the potential defendants who would be affected by the relief the Debtors requested in the Procedures Motion. *Id*.

5.     The Debtors argued that they sought this relief to "avoid unnecessarily alarming potential defendants when they had worked so hard to preserve the business relationship with them." *Id.* at ¶ 37. The Debtors also stated that they **fully anticipated paying creditors in full through their Plan, and that their pursuit of avoidance actions would be unnecessary**. *See,*

*e.g. id* at ¶ 13 (stating that "[t]he proposed treatment of claims under the [the proposed] reorganization plan would generally provide that all claims be paid in full…[a]ccordingly, avoiding preferential transfers would provide no benefit to the Debtors' estate"). On August 16, 2007, this Court entered an Order granting relief requested by the Procedures Motion (Bankr. Doc. 9105) (the "Procedures Order").

6. Select did not receive particularized notice of the Procedures Motion or Procedures Order.

**D.     Commencement of the Adversary Proceeding against Select and Expiration of Statute of Limitations**

7. On September 29, 2007, unbeknownst to Select, all of the Debtors commenced this adversary proceeding against Select by filing the Complaint (Adv. P. Doc. 1) under seal. The Complaint that was sealed seeks to avoid and recover from Select the amount of $3,982,003.21, comprised of twenty-one (21) alleged preferential transfers. Complaint ¶¶ 9-16, Exhibit 1. Thereafter, on or before October 14, 2007, the statute of limitations for commencing avoidance actions in this bankruptcy case expired. 11 U.S.C. § 546(a).

**E.     First Plan of Reorganization filed by Debtors**

8. On December 10, 2007, the Debtors filed the First Amended Joint Plan of Reorganization (Bankr. Doc. 11386) (the "Plan"), which was confirmed by this Court on January 25, 2008 (Bankr. Doc. 12350). **The Plan provided, among other things, for the payment of unsecured creditors in full.**

9. In Exhibit 7.24 to the Plan, the Debtors described the limited causes of actions they sought to retain and stated that "[i]t is also in the best interests of holders of Claims and Interests

---

[1] All docket items in the main bankruptcy case are identified by "Bankr. Doc." Documents filed in the adversary proceeding against Select are identified by "Adv. P. Doc."

4

that Avoidance Actions **shall not be retained** by the Reorganized Debtors unless specifically listed on Exhibit 7.24 of the Plan." Plan at Exhibit B, p. 48 (emphasis added). The Debtors did not identify any causes of action against Select on Exhibit 7.24.

F.     **The February and April 2008 Motions to Extend the Procedures Order**

10.    In 2008, the Debtors sought and obtained two additional extensions of their deadlines to serve the adversary proceeding complaints. *See* Bankr. Doc. 12922 (the "February 2008 Extension Motion"); Bankr. Doc. 13361 (the "April 2008 Extension Motion"); Bankr. Doc. 13277 (the "March 2008 Extension Order); Bankr. Doc. 13484 (the "April 2008 Extension Order"). The Debtors argued in their Motions (and the Court found in its Orders) that the Debtors did not intend to pursue avoidance actions. February 2008 Extension Motion ¶ 21; April 2008 Extension Motion ¶ 22; March 2008 Extension Order at p. 1; April 2008 Extension Order at p. 1. The Debtors stated that they were prepared to emerge from bankruptcy but needed additional time to preserve estate assets without disrupting their business relationships with potential defendants. *Id.*

11.    Select did not receive particularized notice of the February 2008 Extension Motion, the March 2008 Extension Order, the April 2008 Extension Motion or the April 2008 Extension Order.

G.     **The Debtors' Modified Plan**

12.    On June 16, 2009, the Debtors filed the First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors, and Debtors-In-Possession (As Modified) (Bankr. Doc. 17557) (the "Modified Plan"). On July 12, 2009, the Debtors filed the exhibits to the Modified Plan, including Exhibit 7.19 which listed the causes of actions retained by the Debtors, including avoidance actions (Bankr. Doc. No. 17557) (the "Modified Plan Exhibit 7.19"). The Debtors identified the avoidance actions in the Modified Plan Exhibit 7.19 by adversary

5

proceeding number**, but the Debtors did not identify any defendants**. *Id.* Consequently, over one and one-half years after expiration of the applicable statute of limitations, Select still had no notice of the Debtors' alleged preference claims against it.

### H. The Debtors' October 2009 Motion to Extend the Procedures Order

13. On October 2, 2009, the Debtors sought and obtained a fourth extension of the deadline for service of process. *See* Bankr. Doc. 18952 (the "October 2009 Extension Motion"); Bankr. Doc. 18999 (the "October 2009 Extension Order"). The Debtors stated that this additional extension of time was necessary because, two years after filing the original adversary proceeding complaints under seal, the Debtors suddenly anticipated a need to evaluate and potentially pursue the adversary proceedings. October 2009 Extension Motion ¶¶ 17-18.[2]

14. Select did not receive particularized notice of the October 2009 Extension Motion or the October 2009 Extension Order.

### I. Service of the Debtors' Complaint on Select

15. On February 10, 2010, Select received service of an objection to its proof of claim, in which the Debtors- **for the first time**- asserted that Select had received alleged preferential transfers. Therefore, it was not until February 2010 that Select had any knowledge that the Debtors intended to pursue Select for preference claims. On March 29, 2010- **also for the first time**- Select received particularized notice of the Debtors' fifth request to extend their deadline for serving complaints upon preference defendants. Thereafter, on April 1, 2010-- **two and a half years after the Complaint was originally filed**-- Select was served with the Summons and Complaint.

---

[2] Select will refer to the Debtors' February 2008 Extension Motion, April 2008 Extension Motion, and October 2009 Extension Motion collectively as the "Extension Motions". Select will refer to the Court's March 2008 Extension Order, April 2008 Extension Order, and October 2009 Extension Order collectively as the "Extension Orders".

6

12005719.2

**J.    Select's Motion to Vacate the Procedures Orders and Dismiss the Complaint with Prejudice and the July 22 Hearing**

16.    By motion dated May 14, 2010, Select filed a motion for an order vacating the four procedures orders and dismissing the Complaint with prejudice ("Motion to Vacate") (Adv. P. Doc. 25, 26, 27).  Over 100 similarly situated avoidance defendants also filed similar motions.

17.    After an omnibus hearing on July 22, 2010 addressing all the defendants' motions to vacate/dismiss, the Court entered an Order dated September 7, 2010, which, among other things, dismissed with prejudice certain adversary proceedings and dismissed without prejudice those complaints against Select and the other similarly situated defendants due to the Debtors' failure to plead sufficient facts to state a claim and comply with Bankruptcy Rule 7008.  (Adv. P. Doc. 34). The Order also directed the Debtors to file a motion for leave to amend the complaint in each adversary proceeding the Debtors elected to prosecute and attach a proposed amended complaint identifying for each alleged transfer the transferor, the transferee, any known subsequent transferee against whom relief is sought, the antecedent debt and the Reorganized Debtor who is the plaintiff. The September 7 Order further preserved all other arguments raised by Select and the other defendants in the motions to vacate and dismiss.

**K.    The Debtors' Motion for Leave to File Amended Complaint**

18.    By motion dated September 7, 2010, the Debtors filed and served their motion to amend the Complaint, seeking in a proposed first Amended Complaint the avoidance and recovery of some 276 "subtransfers" within the original 21 transfers, for a new aggregate amount of $4,041,012.58, and naming one plaintiff, DAS. (Adv. P. Doc. 32).

7

19. In conclusory fashion, paragraph 23 of the proposed Amended Complaint states that '[p]ursuant to Bankruptcy Code section 547(f), for purposes of this Adversary Proceeding, Plaintiff is presumed to have been, and was in fact, insolvent at the time the Transfers were made."

20. DAS' Amended and Restated Schedules list total assets of $8,133,427,809.00 against total liabilities of $5,526,447,015.00 (Case No. 05-44641 Bankr. Doc. 10). Consistent with DAS' approximately $2.6 billion of equity on the Filing Date, the Debtors proposed a 100 percent payment plan to its creditors as late as February, 2008, more than two years into the bankruptcy.

21. Between September 29, 2007 and February 10, 2010, the commencement of the adversary proceeding against Select under seal and the date upon which Select was notified that the Debtors intended to pursue it as a preference defendant, Select operated its business and dealt with the Debtors in a manner that would have been significantly different if it had known that the Complaint had been filed. Specifically, Select would have taken different positions in its contract negotiations with the Debtors during this period had it known that the Debtors had sued it for almost $4 million dollars. In addition, Select would have taken steps to preserve the documentary and testamentary evidence necessary to support its various defenses to the allegations in the Complaint, including, but not limited to, instructing its employees to preserve their recollections of the company's business dealings with Delphi dating back to July 2005, the ninety days before the Filing Date in which the challenged transfers occurred, and conducting appropriate exit interviews. Select may have also implemented a reserve for the liability it faced, considered selling its 502(h) claim to eliminate its exposure, and contemplated filing bankruptcy itself to discharge any such debt it may have been found to owe the Debtors.

12005719.2

## II.

## **ARGUMENT**

22. "All sorts of procedural stumbling blocks - - like a statute of limitations - - may preclude a court from reaching substantive issues. Usually, however, the procedural requirements are not to blame; rather the party's own choices or negligence is the real culprit."

*Toth v. Glazer*, 163 F.R.D. 549 (E.D. WI. 1995) (motion for leave to amend answer denied where defendant's own decisions and actions alone caused the failure to plead the defense).

23. Rule 15(a) (2) of the Federal Rules of Civil Procedure provides that leave to amend shall be freely granted "when justice so requires." Fed. R. Civ. P. 15(a) (2). Therefore, the "liberality of pleading or freedom of amendment, [ ], is limited when there is 'undue delay, bad faith or dilatory motive on the part of the moving party,' and prejudice to the opposing party . . ." *Evans v. Syracuse City School Dist.*, 704 F.2d 44, 46 (2d Cir. 1983) *citing Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).

24. While it is within the court's discretion to grant leave to amend, "it is proper to deny leave to replead where there is no merit in the proposed amendments or amendment would be futile." *Hunt v. Alliance N. Am. Gov't Income Trust, Inc.*, 159 F.3d 723, 728 (2d Cir. 1998). *See also John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp.*, 22 F3d 458, 462 (2d Cir. 1994).

25. The proposed Amended Complaint fails on the grounds of bad faith, undue prejudice, undue delay, failure to cure deficiencies after being given the chance to amend and futility.

**A.    Bad Faith**

26. First and foremost, the Debtors' manipulation of the avoidance action process -- through the sealing of the Complaint and extensions of service deadlines -- has stripped Select of

12005719.2

its rights in the Chapter 11 case and severely compromised its ability to mount its defenses. This multi-year intentional conduct taints the entire avoidance action process, and constitutes bad faith which cannot, and should not, be rewarded by the granting of the Debtors' Motion.

**B.    Undue Prejudice**

27    Although Select should <u>not</u> bear the burden of showing prejudice for the Court to deny the Debtors' Motion, granting the Motion would be gravely prejudicial to Select. First of all, even if Select is required to show prejudice, which it isn't, Select's burden with respect to a showing of prejudice is lowered because of the Debtors' exceptionally long delay in seeking leave to amend the Complaint. *See G.G. Survivor Creditor Corp. v. Harari (In re G.G. Survivor Corp.)*, 217 B.R. 433, 436 (Bankr. S.D.N.Y. 1998) (recognizing that the Second Circuit has held that the "longer the period of unexplained delay, the less that will be required of the nonmoving party in terms of a showing of prejudice"); *see also Kavowras v. New York Times Company*, 2004 WL 1672473*3 (S.D.N.Y) ("the greater the delay, the less is required for a showing of prejudice").

28.    Indeed, in *NAS Electronics, Inc. v. Transtech Electronics PTE Ltd.*, 262 F.Supp. 2d 134, 151 (S.D.N.Y. 2003), this Court recognized that a two year delay in seeking leave to amend, like here, is "sufficient to constitute prejudice so as to deny a motion to amend, even under the Rule 15(a) liberal 'freely given' standard." Likewise, in *Banc One Capital Partners Corp. v. Kneipper*, 67 F.3d 1187 (5th Cir. 1995), the Fifth Circuit upheld the denial of a motion to amend an answer that was filed "[c]oncurrently with a motion for summary judgment" because it was untimely. *See also Zapata v. New York*, 502 F3d 192, 198 (2d Cir. 2007) ("It is obvious that any defendant would be harmed by a generous extension of the service period beyond the limitations period for the action, especially if the defendant had no actual notice of the existence of the complaint until the service period had expired…").

10

12005719.2

29.     Here, a similar degree of prejudice would result because (i) Select has taken many actions in its business and made countless decisions which leave it exposed today, prior to being served with the initial Complaint in April 2010, and (ii) Select has not preserved many of the books and records and witness testimony critical to necessary to prove its case. Granting Debtors' Motion will also be tremendously prejudicial and unfair because Select believes it is entitled to a dismissed complaint <u>now</u>. To say, as the Debtors state in their Motion, that the damage has already occurred, by virtue of the sealing and delayed service of the original complaints, such that granting the Motion will cause "no incremental prejudice," simply misses the mark: the damage to Select's ability to defend itself, protect its business and the wasting of this Court's and all defendants' resources demand an end to the litigation <u>now</u>.

30.     Moreover, Select did not receive any notice of the alleged preference claims against it until February 10, 2010, when the Debtors served it with a claim objection based upon alleged preferential transfers. Due to the passage of time, Select does not know whether or not it received particularized notice of the Debtors' First Amended Disclosure Statement With Respect To First Amended Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession (Bankr. Doc. No. 11388) (the "Disclosure Statement") or Plan; however, this is of no consequence.

31.     The Debtors' Disclosure Statement and Plan provided for a 100 percent payment Plan, did not disclose that Select had been sued, provided that the Debtors did not intend to pursue the preference actions that had been filed under seal, and provided that the deadline to serve the sealed preference complaint expired in February 2008. *See, e.g.,* Disclosure Statement, pp. xiii, xvi, xxiv, and 151. Consequently, in addition to Select not receiving particularized notice that it had been sued by the Debtors, even if Select had reviewed the Disclosure Statement and Plan, it

11

would not have provided Select with notice that it had been sued and, in fact, would not have elicited any action on Select's part based on the representations made by the Debtors.

32. The Debtors' representations in their Disclosure Statement and Plan, as well as their Extension Motions and Extension Orders, even if received and reviewed by Select, would have suggested that Select had no reason to inquire further or take any action. The Debtors actively and intentionally concealed from Select that it had been sued. Due to the Debtors' actions, not a single preference defendant took any action until they received actual notice of claims against them. Select took no action in response to the Disclosure Statement, Plan and Extension Motions because it had no reason or obligation to do so. *Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999). Select is now suffering the consequences of the conduct of the Debtors, and its rights- procedural and substantive- have been lost, to its great prejudice.

33. In short, the Debtors' Motion should not be granted because the Debtors' "own actions place[d] [them] in [their] current position" (*Toth v. Glazer*, 163 F.R.D. 549 (E.D.WI. 1995)) and they have no valid explanation or excuse for not having properly served and plead their avoidance Complaint years ago.

**C.    Undue Delay**

34. Indeed, where the delay is considerable, like it was here, "courts have shifted the burden to the movant to show valid reasons for his [or her] neglect and delay." *G.G. Survivor Creditor Corp. v. Harari (In re G.G. Survivor Corp.)*, 217 B.R. 433, 436 (Bankr. S.D.N.Y. 1998). *Id.* (citations omitted); *see also Sanders v. Thrall Car Manufacturing Co.,* 582 F.Supp. 945, 952 (S.D.N.Y. 1983) ("where a considerable amount of time has passed between the filing of a complaint and the motion to amend, courts have placed the burden on the movant to show some valid reasons for his neglect and delay"); *Phaneuf v. Tenneco, Inc.*, 938 F.Supp. 112, 116

(N.D.N.Y. 1996) ("[a]s noted above, if a lengthy delay exists before a motion to amend is made; it is incumbent upon the movant to offer a valid explanation for the delay"); *Hayes v. New England Millwork Distributors, Inc.*, 602 F.2d 15, 19-20 (1st Cir. 1979) (same); *Little v. Liquid Air Corp.*, 952 F.2d 841, 846 (5th Cir. 1992) (same).

35. It should be beyond dispute that the delay here was considerable, if not egregious, and sufficient to shift the burden onto the Debtors. In any event, in both *Little,* 952 F.2d at 841 and *Kleinhans v. Lisle Savings Profit Sharing Trust,* 810 F.2d 618 (7th Cir. 1987), the movants on motions to amend were required to justify eighteen (18) month delays between the filing of their initial pleadings and their motions for leave to amend where, during the interim, the discovery deadlines had passed and the non-movants had filed summary judgment motions. In *Little,* the delay was characterized as "particularly egregious," and in both cases, the motions to amend were denied because the movants were unable to meet their burdens of showing that its delays were excusable. *See also Cruz v. Root*, 932 F.Supp. 66, 68 (W.D.N.Y. 1996) (stating that a three year delay in seeking to amend an answer to assert an affirmative defense, without any explanation for the delay, "alone provides a sufficient basis to deny the motion"); *Phaneuf,* 938 F.Supp. at 116 (motion for leave to amend complaint denied where "[p]laintiff's attorney had all the information that was necessary to bring a cause of action upon N.Y. Labor Law §240(1) in the original complaint or within a reasonable time after"); *Kleinhans*, 810 F. 2d at 618 (affirming denial of motion for leave to amend complaint where "[t]he proposed amendment [was] not based on any information that was unknown to [plaintiff] eighteen months earlier when he filed his original complaint"); *Amcast Indust. Detrex Corp.*, 132 F.R.D. 213, 220 (N.D. IN. 1990) ("[u]nder the circumstances presented here, the plaintiffs' motion for leave to amend must be denied under Rule 15(a), based upon their unexplained delay and the untimeliness of their motion").

13

36. Here, there has been an even more egregious almost three year plus delay -- between the filing of the Complaint (on September 29, 2007) and the filing of Debtors' Motion (on September 7, 2010) – compounded by the unusual circumstances of the amendment being sought at the beginning of the action **five years after the case was filed and approximately three years after the statute of limitations ran**. The burden is squarely on the Debtors to show a valid explanation for their delay in seeking leave to amend their Complaint. This is a burden the Debtors cannot meet since they rely on the "deadline established by this Court" without having provided adequate and particularized notice to the preference action defendants as required by the Bankruptcy Code, the national and local bankruptcy rules and various orders entered in these cases.

37. Based on the foregoing, it is clear that the Debtors have the burden to justify their delay in seeking leave to amend the Complaint. It is equally clear that the Debtors cannot meet their burden because all of the information that was necessary to properly assert the proposed Amended Complaint was in their possession when they filed the Complaint in September 2007, if not sooner. The Debtors were required to make use of their own information prior to filing their Complaint in September 2007, or promptly thereafter. The Debtors were certainly required to make use of their own information before the expiration of the statute of limitations in October 2007. Accordingly, there is simply no valid reason or justification for the Debtors to wait thirty-nine months before they moved for leave to amend their Complaint, and at the direction of the Court, no less.

D.   **Failure To Cure**

38. After being given the chance, five years later, to amend their legally unsupportable bare-bones Complaint, the Debtors are still unable to properly plead their alleged case, as required under the standards enunciated by the United States Supreme Court in *Bell Atlantic Corp. v.*

14

*Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, ___ U.S. ___, 129 U.S. 1937 (2009) and their progeny.

40. Specifically, the Debtors' failure to properly plead insolvency and their threadbare recitals of antecedent debt – two preference requirements -- warrant denial, with prejudice, of the Motion.

**E.    Futility of Amendment**

40. For all of the reasons discussed above and given the fact that (i) the Extension Orders were improvidently granted under Rule 4(m) and should be vacated, thereby resulting in the Debtors' asserted claims being barred by the statute of limitations, (ii) the Debtors' inability to disprove solvency at the time of the challenged transfers, and (iii) Select's significant affirmative defenses, an amendment of the Complaint would be unproductive, and, hence, futile, and the Motion should be denied.

### III.

### RESERVATION OF RIGHTS, JOINDER AND NO FURTHER AMENDMENTS

41. Select expressly reserves all of its rights to assert any objection at the December 17, 2010 status conference and the February 17, 2011 hearing. Nothing contained herein shall be deemed or construed as a waiver or admission against interest by Select with respect to the Debtors' Motion, or otherwise, all of which are hereby expressly reserved in all respects and in their entirety.

42. Many other objections have been filed by defendants in similarly situated avoidance actions containing much of the same background facts. These motions seek the denial of the Debtors' Motion on a range of legal grounds. Select adopts and incorporates all applicable

arguments interposed by all other avoidance defendants in their objections as if fully restated herein. Select further incorporates its Motion to Vacate, as well as its July 2, 2010 Joinder to other defendants' reply memorandum to the Debtors' Omnibus Objection.

43. In the interest of justice, the Debtors should not be permitted to further amend the Complaint.

**WHEREFORE**, Defendant Select respectfully requests entry of an Order denying Debtors' Motion For Leave To File Amended Complaint and dismissing their avoidance action against Select with prejudice, together with such other and further relief as may be just and proper.

Dated: New York, New York
November 24, 2010

|  |  |
|---|---|
|  | TODTMAN, NACHAMIE, SPIZZ & JOHNS, P.C.<br>Janice B. Grubin<br>425 Park Avenue<br>New York, New York 10022<br>Tel: (212) 874-9400<br>Fax: (212) 754-6262 |
|  | and |
|  | TAFT STETTINUS & HOLLISTER LLP |
|  | By:/s/ W. Timothy Miller<br>W. Timothy Miller (admitted *pro hac vice*)<br>Paige Leigh Ellerman (admitted *pro hac vice*)<br>425 Walnut Street, Suite 1800<br>Cincinnati, Ohio 45202-3957<br>Tel: (513) 381-2838<br>Fax: (513) 381-0205 |
|  | *Attorneys for Defendant Select Industries, Corp.* |

12005719.2