**Hearing Date and Time:  February 17, 2011 at 10:00 a.m. (Eastern Daylight Time)**
**Reply Deadline:  January 28, 2011**

BRADLEY ARANT BOULT CUMMINGS LLP
T. Parker Griffin, Jr. (admitted Pro Hac Vice)
One Federal Place
1819 Fifth Avenue North
Birmingham, Alabama 35203
Telephone: (205) 521-8524
Facsimile: (205) 48-6524
Email: pgriffin@babc.com

*Attorney for Mtronics.com, Inc., successor by merger*
*to Multitronics Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------x
                                              :
In re:                                        :     Chapter 11
                                              :     Case No. 05-44481 (RDD)
        DPH HOLDINGS CORP, *et al.,*          :
                                              :
----------------------------------------------x
                                              :
DELPHI AUTOMOTIVE SYSTEMS, LLC,               :
                                              :
        Plaintiff,                            :     Adv. Pro. No. 07-02500 (RDD)
                                              :
v.                                            :
                                              :
MULTITRONICS INC., and                        :
MTRONICS.COM, INC., successor by merger,      :
                                              :
        Defendants.                           :
----------------------------------------------x

**MTRONICS.COM, INC.'S BRIEF IN OPPOSITION TO REORGANIZED DEBTORS'**
**MOTION FOR LEAVE TO FILE AMENDED COMPLAINTS**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

PROCEDURAL POSTURE ................................................................................ 2

ARGUMENT ..................................................................................................... 10

I.     MOTION FOR LEAVE TO AMEND IS DUE TO BE DENIED FOR FUTILITY ........ 10

     A.     The Amended Complaint Fails To Satisfy Federal Rule 8 And The Dismissal Order. ................................................................................................... 11

          1.     The Amended Complaint fails to set forth the transferor and the transferee. ................................................................................. 11

          2.     The Amended Complaint fails to plausibly allege a transfer of an interest of DAS in property. ..................................................... 12

          3.     The mended Complaint fails to plausibly allege that the transfers were made on account of an antecedent debt owed by DAS. ........................... 13

          4.     The Amended Complaint fails to plausibly allege that DAS was insolvent at the time of the alleged transfers. ........................... 15

          5.     The Amended Complaint fails to plausibly allege that Mtronics received more than it would have received under Chapter 7. ................... 17

     B.     DAS Is Judicially Estopped From Pursuing A Preference Action Against Mtronics. ........................................................................................... 19

     C.     DAS Is Time-Barred From Pursuing The Instant Action. ................................. 20

          1.     The Reorganized Debtors failed to abide by the Case Management Order. ................................................................................ 21

          2.     The Reorganized Debtors misrepresented to the Court that they had in fact complied with the Case Management Order. ..................................... 21

          3.     Mtronics has been deprived of substantive and procedural due process. . 22

          4.     Rule 4(m) extensions are granted to assist a diligent plaintiff with service. ................................................................................ 23

          5.     The expiration of the statute of limitations is not good cause under Rule 4(m). .............................................................................. 23

          6.     Prejudice to a defendant weighs against granting a Rule 4(m)

extension. ......................................................................................................... 24

7.    Multiple Rule 4(m) extensions must be based on the same grounds. ........ 25

D.    DAS Is Precluded From Pursuing A Preference Action Against Mtronics. ......... 26

E.    The New Transfers Do Not Relate Back Under Federal Rule 15(c). ................... 28

F.    Conclusion. ......................................................................................................... 29

II.    BAD FAITH AND UNDUE PREJUDICE .................................................................... 29

A.    DAS concealed the filing of the Original Complaint, and the Extension
Motions and Extension Orders, during settlement negotiations with Mtronics.... 29

B.    DAS is equitably estopped from pursuing the instant action given its bad faith
settlement dealings and the undue prejudice to Mtronics.................................... 30

C.    The Reorganized Debtors' arguments fail to address the notice deficiencies
and resulting prejudice. ......................................................................................... 31

III.    UNDUE DELAY AND UNDUE PREJUDICE ................................................................ 33

INCORPORATION OF ARGUMENTS RAISED BY OTHER DEFENDANTS ...................... 34

NO FURTHER AMENDMENT........................................................................................... 34

MEMORANDUM OF LAW ................................................................................................ 35

CONCLUSION.................................................................................................................... 35

CERTIFICATE OF SERVICE ............................................................................................ 36

# INTRODUCTION

Defendant Mtronics.com, Inc., successor by merger to Multitronics, Inc. ("Mtronics"), files this brief in opposition to the *Reorganized Debtors' Motion for Leave to File Amended Complaints* (the "Motion for Leave").[1] Mtronics adopts and incorporates by reference the common defenses other defendants in the Preference Actions have advanced in response to the Motion for Leave.  Without limitation of the common defenses, the Court has additional dispositive grounds for denying the Motion for Leave with respect to Mtronics.

First, the Court should deny the Reorganized Debtors' Motion for Leave because the proposed amended complaint is futile.  Without limitation:

A.   The Court dismissed the original complaint for failure to meet the basic pleading requirements of Rule 8 of the Federal Rules of Civil Procedure.  The proposed amended complaint does not correct these deficiencies.  Like the original complaint, the proposed amended complaint fails to allege specific facts establishing the plausibility of the necessary elements of a preference action under 11 U.S.C. § 547.  Thus, the amended complaint is due to be dismissed on the same grounds as the original complaint.

B.   Mtronics was not the transferee of the alleged preferences. As a purchasing agent for a third party, Mtronics was a mere conduit for most of the transfers. Delphi Automotive Systems, LLC ("DAS") relied on Mtronics' status as purchasing agent successfully to conclude prior litigation. Accordingly, DAS is judicially estopped from arguing Mtronics was the transferee.

C.   The Court's orders extending the Reorganized Debtors' time to serve the preference actions are due to be revoked with respect to Mtronics.  Without limitation, the Reorganized Debtors did not serve Mtronics with the motions to extend the time to serve the preference actions, or the Court's extension orders.  Because the Reorganized Debtors did not serve Mtronics with the original complaint in accordance with Federal Rule 4(m), the Reorganized Debtors are time-barred by the two-year statute of limitations established by Section 546(a) of the Bankruptcy Code.

D.   The Reorganized Debtors stipulated to the allowance of Mtronics' claim in the amount of $372,934.72.  The Court accepted the stipulation and Mtronics' claim became an allowed claim under Section 502 of the Bankruptcy Code.      The

---

[1] All capitalized terms used herein but not otherwise defined herein shall have the meaning ascribed to them in the Motion for Leave.

Reorganized Debtors did not raise a Section 502(d) objection to oppose Mtronics' claim. The Reorganized Debtors are now precluded from asserting a preference action against Mtronics.

E.    The proposed amended complaint includes new transfers that were not in the original complaint. These new transfers are separate and distinct transactions which do not relate back under Federal Rule 15(c), as adopted by Rule 7015 of the Bankruptcy Rules.

If the Court grants the Motion for Leave, the proposed amended complaint is due to be dismissed immediately. Accordingly, the Court should deny the Motion for Leave on the grounds of futility.

Furthermore, the circumstances of this case clearly demonstrate that the Court should deny the Motion for Leave based on the Reorganized Debtors' bad faith, undue delay, and the undue prejudice to Mtronics. Without limitation, the Reorganized Debtors did not serve Mtronics with the extension motions and extension orders, and intentionally concealed the existence of a pending preference action while entering into two separate settlement agreements with Mtronics. Because the statute of limitations had expired, Mtronics relied on the absence of a preference claim to its detriment.

## **PROCEDURAL POSTURE**

The Court may take judicial notice of the following facts and pleadings of record:[2]

On October 8 and 14, 2005, the Reorganized Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as then amended (the "Bankruptcy Code"). This Court has not appointed a trustee in the Reorganized Debtors' jointly administered case, Case No. 05-44481 (the "Bankruptcy Case"). Pursuant to the two-year statute of limitations imposed by Section 546(a) of the Bankruptcy Code, the statute of

---

[2] This Court may take judicial notice of its own orders and the documents in this case. See, e.g., Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 76 (2d Cir. 1998); In re Theatre Row Phase II Associates, 385 B.R. 511, 520 (Bankr. S.D.N.Y. 2008).

limitations period for filing a preference action ended on either October 9 or October 15, 2007, depending on the petition date of the certain Delphi entity.

On March 17, 2006, this Court entered that certain *Supplemental Order Under 11 U.S.C. §§ 102(1) and 105 and Fed. R. Bankr. P. 2002(m), 9006, 9007, and 9014 Establishing Omnibus Hearing Dates and Certain Notice, Case Management, and Administrative Procedures, entered March 20, 2006* [Docket No. 2883 of the Bankruptcy Case] (the "Case Management Order"). In the Case Management Order, this Court specifically directed: "Every filing shall be subject to the filing and notice procedures described herein (the 'Notice Procedures'). **All Filings shall be served (a) via overnight mail upon all parties with a particularized interest in the subject of the Filing**…" [See Paragraph 15] (emphasis added). "Filings" is defined therein as "every notice, motion or application (each, a 'Motion'), and all briefs, memoranda, affidavits, declarations, or other documents filed concurrently therewith in these cases." [See Paragraph 2].

On July 28, 2006, Mtronics filed a proof of claim, Claim Number 12221 (the "Mtronics Claim"), against DAS asserting an unsecured claim in the amount of $377,283.79 based on payments due for products supplied to the Reorganized Debtors by Samtech Corporation ("Samtech"), a third party supplier, and invoiced by Mtronics per a service agreement between Samtech and Mtronics. On July 31, 2006, Samtech filed a proof of claim, Claim Number 15611 (the "Samtech Claim"), against Delphi Corporation asserting a secured claim in the amount of $375,386.80 based on payments due for products it had supplied to the Reorganized Debtors. The Reorganized Debtors objected to the Samtech Claim and the Mtronics Claim pursuant to separate objections on December 8, 2006 and February 15, 2007, respectively [See Docket Nos. 6100 and 6968 in the Bankruptcy Case]. Neither of these objections raised Section 502(d) of the Bankruptcy Code as grounds for the objection.

On June 22, 2007, DAS filed a lawsuit against Shinwa International Holdings LTD f/k/a Shinwa Co. LTD ("Shinwa"), Samtech, and Mtronics in the United States District Court for the Southern District of Indiana (the "Southern District of Indiana"), styled *Delphi Automotive Systems, LLC f/k/a Delphi Delco Electronics System v. Shinwa International Holdings, Ltd. Shinwa Co. Ltd., et al*, Civil Action No. 1:07 cv 0811-SEB-JMX (the "Lawsuit"), alleging that certain CD Mechanisms supplied by the defendants were defective.    In paragraph 32 of complaint, DAS stated: "Delphi began placing orders for the Shinwa CD player in 2000. Purchase orders were not placed directly with Shinwa **but with purchasing agents** acting on behalf of Shinwa **including** Samtech, **Mutlitronics and Mtronics**."    [Docket No. 1 in the Lawsuit] (emphasis added).

On August 6, 2007, the Reorganized Debtors filed that certain *Expedited Motion For Order Under 11 U.S.C. §§ 102(1)(A), 105(a), 107, 108(a)(2), And 546(a) And Fed. R. Bankr. P. 7004, 9006(c), and 9018 (i) Authorizing Debtors to Enter Into Stipulations Tolling Statute of Limitations With Respect to Certain Claims, (ii) Authorizing Procedures to Identify Causes of Action That Should Be Preserved, And (iii) Establishing Procedures For Certain Adversary Proceedings Including Those Commenced By Debtors Under 11 U.S.C. § 541, 544, 545, 547, 548, or 553* [Docket No. 8905 of the Bankruptcy Case] (the "Preservation Motion').    In Paragraph 55 of the Preservation Motion, the Reorganized Debtors represented to the Court that notice of the Preservation Motion "has been provided in accordance with the [Case Management Order]."    However, the Reorganized Debtors did not serve the Preservation Motion on Mtronics as evidenced by the corresponding affidavit of service filed by Kurtzman Carson Consultants LLC (the "Noticing Agent") on August 10, 2007 [See Docket No. 9039 of the Bankruptcy Case].

4

By Order dated August 16, 2007 [Docket No. 9105 of the Bankruptcy Case] (the "Preservation Order"), the Court granted the Preservation Motion. Pursuant to the Preservation Order, the Reorganized Debtors filed the Adversary Proceedings under seal and with an extension of time for service until March 31, 2008. In the findings of the Preservation Order, the Court stated: "[A]nd it appearing that proper and adequate notice of the [Preservation Motion] has been given and that no other and further notice is necessary." As was the case with the Preservation Motion, the Reorganized Debtors did not serve the Preservation Order on Mtronics as evidenced by the corresponding affidavit of service filed by the Noticing Agent on August 23, 2007 [See Docket No. 9141 of the Bankruptcy Case].

On September 26, 2007, the Reorganized Debtors filed under seal that certain *Complaint To Avoid And Recover Transfers Pursuant To 11 U.S.C. §§ 547 And 550* (the "Original Complaint") [A.P. No. 07-2500, Docket No. 1], initiating the instant adversary proceeding. The Reorganized Debtors did not serve the Original Complaint on Mtronics.

On or about November 2007, and *subsequent* to the filing of the Preservation Motion, entry of the Preservation Order, and filing of the Original Complaint, Mtronics and DAS entered into that certain Settlement Agreement with respect to the Mtronics Claim (the "Mtronics Claim Settlement"). Pursuant to the Mtronics Claim Settlement, the parties agreed that (1) Mtronics would be allowed a prepetition general unsecured non-priority claim against DAS in the amount of $372,934.72 (the "Allowed Mtronics Claim"), and (2) Mtronics would release and waive any right to assert any other claim, cause of action, demand or liability which it, or any of its affiliates, might have had prior to the filing of the petition. On December 14, 2007, the Court entered that certain *Joint Stipulation And Agreed Order (I) Disallowing And Expunging Proof of Claim Number 15611 And (II) Compromising And Allowing Proof Of Claim Number 12221*

*(Samtech Corporation and Mtronics.com, Inc.)* [Docket No. 11466 of the Bankruptcy Case], memorializing the terms of the Mtronics Claim Settlement.  At the time of the Mtronics Claim Settlement and the Court's approval thereof, Mtronics had no notice of the Preservation Motion, Preservation Order, or Original Complaint.

On February 28, 2008, the Reorganized Debtors filed the First Extension Motion, asking the Court to further extend the time to serve their preference action complaints [Docket No. 12922 of the Bankruptcy Case].  In Paragraph 26 of the First Extension Motion, the Reorganized Debtors represented to the Court that notice of the First Extension Motion "has been provided in accordance with the [Case Management Order]."  The Reorganized Debtors did not serve the First Extension Motion on Mtronics as evidenced by the corresponding affidavit of service filed by the Noticing Agent on March 4, 2008 [See Docket No. 12970 of the Bankruptcy Case].

By Order dated March 28, 2008 [Docket No. 13277 of the Bankruptcy Case] (the "First Extension Order"), the Court granted the First Extension Motion, thus further extending the time for service of the sealed Adversary Proceedings until May 31, 2008.  In the findings of the First Extension Order, the Court stated: "[A]nd it appearing that proper and adequate notice of the [First Extension Motion] has been given, and it appearing that presentment of this order has been given in accordance with this Court's direction and Local Rule 9074-1 to the parties in the adversary proceeding that is subject to the [Preservation Order]."  As was the case with the First Extension Motion, the Reorganized Debtors did not serve the First Extension Order on Mtronics as evidenced by the corresponding affidavit of service filed by the Noticing Agent on April 1, 2008 [See Docket No. 13313 of the Bankruptcy Case].

On April 10, 2008, the Reorganized Debtors filed the Second Extension Motion, asking the Court to further extend their time to serve their preference action complaints [Docket No.

13361 of the Bankruptcy Case].    In Paragraph 27 of the Second Extension Motion, the Reorganized Debtors represented to the Court that notice of the Second Extension Motion "has been provided in accordance with the [Case Management Order]."  However, the Reorganized Debtors did not serve the Second Extension Motion on Mtronics as evidenced by the corresponding affidavit of service filed by the Noticing Agent on April 16, 2008 [See Docket No. 13415 of the Bankruptcy Case].

By Order dated April 30, 2008 [Docket No. 13484 of the Bankruptcy Case] (the "Second Extension Order"), the Court granted the Second Extension Motion, thus further extending the time for service of the sealed Adversary Proceedings until 30 days after substantial consummation of the Confirmed Plan.  In the findings of the Second Extension Order, the Court stated: "[A]nd it appearing that proper and adequate notice of the [Second Extension Motion] has been given, and it appearing that no other or further notice is necessary."  As was the case with the Second Extension Motion, the Reorganized Debtors did not serve the Second Extension Order on Mtronics as evidenced by the corresponding affidavit of service filed by the Noticing Agent on May 6, 2008 [See Docket No. 13540 of the Bankruptcy Case].

On September 10, 2008, Shinwa, Samtech, and DAS reached an agreement with respect to the Lawsuit initiated by DAS in the Southern District of Indiana, pursuant to which the parties agreed to the dismissal of Mtronics with prejudice on the basis of Mtronics' role as a payment conduit.  Accordingly, the parties submitted that certain *Joint Stipulation of Dismissal With Prejudice as to Multitronics, Inc. and Mtronics.com, Inc.* on September 19, 2008 [Docket No. 101 in the Lawsuit] (the "Mtronics Dismissal").

On or about September 18, 2009, DAS, Mtronics, Shinwa, and Samtech also entered into that certain *Compromise, Settlement, Indemnity, and Release Agreement* wherein the parties

agreed to settle the claims and counterclaims of the Lawsuit (the "Lawsuit Settlement"). Pursuant to the Lawsuit Settlement, Shinwa and Samtech, as the remaining defendants in the Lawsuit, paid an undisclosed amount to DAS to settle DAS's warranty claims, and Shinwa, Samtech, and Mtronics released and waived DAS's account receivable balance of $375,386.80, which included the Allowed Mtronics Claim in the Bankruptcy Case. In accordance with the terms of the Lawsuit Settlement, Mtronics filed that certain *Notice Of Withdrawal Of Allowed Claim Of Mtronics.com, Inc.* [Docket No. 19038 of the Bankruptcy Case] (the "Withdrawal of Allowed Mtronics Claim"), whereby Mtronics withdrew its allowed general unsecured claim against DAS in the amount of $372,934.72. Mtronics participated in the Lawsuit Settlement and filed its Withdrawal of Allowed Mtronics Claim without having received notice of the Complaint, the Preservation Motion, the Preservation Order, the First Extension Motion, the First Extension Order, the Second Extension Motion, or the Second Extension Order. The statute of limitations for filing preference actions in the Bankruptcy Case had expired two years earlier.

On October 2, 2009, the Reorganized Debtors filed the Third Extension Motion (the Third Extension Motion, together with the Preservation Motion, the First Extension Motion and the Second Extension Motion, the "Extension Motions"), asking the Court to further extend their time to serve their preference action complaints [Docket No. 18952 of the Bankruptcy Case]. In Paragraph 24 of the Third Extension Motion, the Reorganized Debtors represented to the Court that notice of the Third Extension Motion "has been provided in accordance with the [Case Management Order]." However, the Reorganized Debtors did not serve the Third Extension Motion on Mtronics as evidenced by the corresponding affidavit of service filed by the Noticing Agent on October 7, 2009 [See Docket No. 18967 of the Bankruptcy Case].

By Order dated October 22, 2009 [Docket No. 18999 of the Bankruptcy Case] (the "Third Extension Order," together with the Preservation Order, the First Extension Order and the Second Extension Order, the "Extension Orders"), the Court granted the Third Extension Motion, thus extending the time for service of the sealed Adversary Proceedings until 180 days after substantial consummation of the Modified Plan, or to April 16, 2010.  In the findings of the Third Extension Order, the Court stated: "[A]nd it appearing that proper and adequate notice of the [Second Extension Motion] has been given, and it appearing that no other or further notice is necessary."  Like the previous Extension Orders, the Reorganized Debtors did not serve the Third Extension Order on Mtronics.

Despite having filed the Original Complaint on September 26, 2007, the Reorganized Debtors did not request the Clerk of Court to issue the summons (the "Summons") for the instant action until March 9, 2010 [See Docket No. 7, A.P. No. 07-02500].  The Clerk of Court issued the Summons on March 12, 2010 [See Docket No. 8, A.P. No. 07-02500], where after the Reorganized Debtors served the Summons and Original Complaint on Mtronics by certified mail on March 19, 2010, asserting a preference action in the amount of $5,046,103.44.  Upon information and belief, an agent authorized to receive service of process on behalf of Mtronics received the Summons and Original Complaint on March 29, 2010.  Accordingly, Mtronics received notice of the instant action for the first time approximately 2 ½ years after the statute of limitation had run pursuant to Section 546(a) of the Bankruptcy Code, and after entering into two separate settlement agreements with DAS.

On September 7, 2010, this Court signed that certain *Order Granting in Part First Wave Motions to Dismiss* [Docket No. 26, A.P. No. 07-2500] (the "Dismissal Order") pursuant to which the Original Complaint was *dismissed* for failure to comply with Rule 8 of the Federal

9

Rules of Civil Procedure (the "Federal Rules"), as adopted by Rule 7008 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules").  The Dismissal Order allowed the Reorganized

Debtors to file a motion for leave to amend and directed that any such motion attach an amended

complaint setting forth "at a minimum, the transferor, the transferee, any known subsequent

transferee against whom relief is sought, the antecedent debt and which Reorganized Debtor is

the plaintiff."  [Dismissal Order ¶ 4].  On September 7, 2010, the Reorganized Debtors filed the

Motion for Leave [Docket No. 20575 of the Bankruptcy Case], with an amended complaint

attached thereto (the "Amended Complaint").   The Amended Complaint includes alleged

preferential transactions not included in the Original Complaint, increasing the demand amount

from $5,046,103.44 to $5,890,271.57.

## ARGUMENT

Granting or denying a motion for leave to amend a complaint is within the Court's

discretion.  John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp., 22 F.3d 458, 462 (2d Cir.

1994).  A court may exercise its discretion to deny leave to amend on grounds of undue delay,

dilatory motive, undue prejudice, bad faith, or futility.  Foman v. Davis, 371 U.S. 178, 182

(1962).  The Court has good reason to deny the Motion for Leave.  See Acito v. IMCERA

Group, Inc., 47 F.3d 47, 55 (2d Cir. 1995).

## I.    MOTION FOR LEAVE TO AMEND IS DUE TO BE DENIED FOR FUTILITY.

The general standard for futility is whether the complaint, as amended, would be subject

to dismissal.  In re Henderson, No. 08-60255, 2010 WL 4366021, at *2 (Bankr. N.D.N.Y. Oct.

28, 2010); see e.g., Ruffolo v. Oppenheimer & Co., 987 F.2d 129, 131 (2d Cir. 1993) (affirming

denial of leave to amend where proposed amendment failed to allege necessary facts);

McLaughlin v. Anderson, 962 F.2d 187, 195 (2d Cir. 1992) (denying leave to amend because the

proposed amendment failed to comply with court's order regarding required allegations).

### A.  The Amended Complaint Fails To Satisfy Federal Rule 8 And The Dismissal Order.

In dismissing the Original Complaint for failure to comply with Federal Rule 8, the Court instructed the Reorganized Debtors that any motion for leave "shall attach a proposed amended complaint that, shall set forth at a minimum, the transferor, the transferee, any known subsequent transferee against whom relief is sought, the antecedent debt and which Reorganized Debtor is the plaintiff."  [See Dismissal Order ¶ 4].  In the Amended Complaint, the Reorganized Debtors merely designate DAS as the plaintiff but fail to comply with the other minimum requirements of the Dismissal Order.  DAS also fails to plead sufficient facts to state a preference claim under the plausibility standard established by the Supreme Court in Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009).[3]

### 1.  The Amended Complaint fails to set forth the transferor and the transferee.

The Amended Complaint contains inconsistent allegations regarding whether DAS or some other entity made the alleged transfers, and whether Mtronics, or some other entity, received the transfers.  In Paragraph 1 of the Amended Complaint, DAS alleges that it seeks to recover certain transfers "that were made by Plaintiff to Defendants."  On the other hand, in Paragraph 20 of the Amended Complaint, DAS alleges that "Plaintiff made, *or caused to be made*, each Transfer listed on Exhibit 1 *to, or for the benefit, of* Defendants."  Similarly, in paragraph 22 of the Amended Complaint, DAS alleges that "Plaintiff made, *or caused to be made*, each Transfer listed on Exhibit 1…"   The disjunctive allows the inference that an entity other than DAS made the alleged transfers, and that an entity other than Mtronics received the

---

[3] In Iqbal, the Supreme Court elaborated the standard established in Twombly: "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  129 U.S. S. Ct. at 1950.

alleged transfers.  See Neugent v. State, 340 So.2d 55, 57 (Ala. Crim. App. 1976).  Stated otherwise, an allegation of "fact A or fact B" is an allegation in the disjunctive that either A or B is true.  Id.  Here, DAS alleges that either DAS or some other entity made the alleged transfers, and that either Mtronics or some other entity received the transfers.  As with the Original Complaint, and in direct contravention of the Court's Dismissal Order, DAS has fails to set forth a specific transferee and transferor.

## 2. The Amended Complaint fails to plausibly allege a transfer of an interest of DAS in property.

DAS's only factual allegation with respect to whether the property allegedly transferred was actually DAS's property is the conclusory and wholly unsupported allegation that the funds allegedly transferred "constituted transfers of interests in Plaintiff's property because they were made by Plaintiff from Plaintiff's account." [See Amended Complaint ¶ 21].  The mere fact that DAS made a transfer does not mean that DAS owned the funds transferred or that the funds transferred were DAS's property.  The Reorganized Debtors employed a centralized cash management system, pursuant to which the Reorganized Debtors maintained various bank accounts through which all the Reorganized Debtors' deposits, transfers and payments were processed.  [See Docket Nos. 7, 24, and 882 of the Bankruptcy Case].  Each of the Reorganized Debtors' receipts and payments were commingled in this centralized cash management system, and suppliers and vendors were paid from these various commingled accounts.  Id.  The plaintiff cannot satisfy the requirements of Rule 8 by alleging that one debtor made a transfer to pay the debt of another debtor.  The plaintiff must allege each element of a preference with respect to a single debtor.  See In re Pearson Indus., 142 B.R. 831 (Bankr. C.D. Ill. 1992).

Further, DAS must allege sufficient facts to support the inference that DAS held legal title to the bank account from which the transfers were made and that DAS controlled the use of

that account.  See Nat'l Energy Prod. Corp. v. Granite Constr. Co. (In re Enron), No. 01-16034,

2006 WL 2400369, at *6-8 (Bankr. S.D.N.Y. May 11, 2006) (holding that control may be shown

where transferor holds legal ownership of the bank account and, even though the funds were

commingled, the transferor had unfettered discretion to pay creditors of its choosing, including

its own). The Amended Complaint is devoid of any facts that would support an inference that

DAS held legal title to the bank account from which the funds were allegedly transferred or that

DAS controlled the bank account such that it had unfettered discretion to use the funds therein to

pay its own creditors.

### 3. The Amended Complaint fails to plausibly allege that the transfers were made on account of an antecedent debt owed by DAS.

To have a valid preference claim, Section 547(b)(2) of the Bankruptcy Code requires that

the transfer at issue be made "for or on account of an antecedent debt owed by the debtor before

such transfer was made."  This provision requires the plaintiff in a preference action to allege

facts that support its contentions that: (1) the transfer was in connection with a debt, (2) which

was owed by the plaintiff/debtor, and (3) which was incurred before the transfer.  See In re

Hydrogen, L.L.C., 431 B.R. 337, 355 (Bankr. S.D.N.Y. 2010); In re Dorholt, Inc., 224 F.3d 871,

873 (8th Cir. 2000); Chem. Bank v. Dana, 234 B.R. 585, 596 (D. Conn. 1999).  The Amended

Complaint uses the term "antecedent," but fails to allege that DAS owed the debts alleged to be

antecedent, and fails to allege when the debts alleged to be antecedent were actually incurred.

First, the Amended Complaint alleges that DAS entered into certain unidentified

"service" agreements with Mtronics pursuant to which Mtronics was "required to render certain

services for the benefit of *the Reorganized Debtors*."  [See Amended Complaint at ¶¶ 13 and 15]

(emphasis added).  DAS provides no factual allegations that Mtronics provided services to DAS

or that DAS owed a debt to Mtronics.  Specifically, the Amended Complaint does not state when

these alleged agreements were entered into, does not state whether the other Reorganized Debtors that received the services were also parties to these alleged agreements, does not state whether under these alleged agreements DAS or the other Reorganized Debtors that received the services were considered the purchasers, and does not state whether DAS or the other Reorganized Debtors that received the services were obligated to pay for the goods. The plaintiff cannot satisfy the requirements of Rule 8 by alleging that one debtor made a transfer to pay the debt of another debtor. The plaintiff must allege each element of a preference with respect to a single debtor. See Pearson Indus., 142 B.R. at 845.

Not only does DAS fail to allege any facts to support an inference that DAS owed an antecedent debt to Mtronics, DAS makes at least one allegation that supports an inference that DAS did not owe any antecedent debt to Mtronics. According to the Amended Complaint, DAS performed "accounting and payment functions for the Reorganized Debtors" i.e., DAS paid debts owed by Reorganized Debtors other than DAS. [Amended Complaint ¶ 12]. As discussed above, the Reorganized Debtors employed a centralized cash management system where funds of all the Reorganized Debtors were commingled and deposited in one or more disbursement accounts for payment to vendors. [See Docket Nos. 7, 24, and 882 of the Bankruptcy Case]. The allegations contained in the Amended Complaint, coupled with the centralized cash management system described above, support the inference that DAS was paying debts of others rather than its own. To state a claim under Section 547(b), the plaintiff must allege each element of Section 547(b) with respect to a single debtor. See Pearson Indus., 142 B.R. at 845.

Further, the Amended Complaint carefully avoids alleging that DAS owed an antecedent debt to Mtronics. The Amended Complaint alleges that the transfers were "in satisfaction of amounts due for services previously rendered by Defendants under the Agreements." [Amended

Complaint ¶ 18].  This is merely a formulaic recitation of one element of a preference claim.  See

Twombly, 127 S.Ct. at 1964-65.  The Amended Complaint does not allege when these services

were rendered, does not allege that these services were received by DAS, and does not allege that

DAS owed Mtronics for the services.  Similarly, in Paragraph 22 of the Amended Complaint,

DAS alleges:

> Plaintiff made, or caused to be made, each Transfer listed on Exhibit 1 for, or on
> account of, an antecedent debt owed to Defendants as of the date on which each
> Transfer was made.  The documents evidencing the antecedent debt include the
> purchase orders and/or invoices/bills of lading identified on Exhibit 1, which
> purchase orders and/or invoice/bills of lading include evidence of the amount of
> the antecedent debt and the approximate dates the subject services contemplated
> by the Agreements were ordered pursuant to the Agreements and/or were
> provided by Defendants.

The referenced documents are not attached to the Amended Complaint and, therefore, whatever

information may be contained therein is simply irrelevant.  Moreover, it is impossible to decipher

what documents are referred to on Exhibit 1.  One column heading refers to "Antecedent Debt:

Purchase Order/Invoice Order," and the entries there under consist of various, internally-

generated numbers without any other explanation.  These references to invoices are especially

confusing in light of DAS's allegation in the body of the Amended Complaint that DAS did not

accept invoices from Mtronics.  [See Paragraph 16].  More importantly, these numbers provide

no factual allegations as to when the debts were incurred.  Another column heading refers to

"Purchase Order Invoice," and each entry there under merely contains "PO." Again, there are no

factual allegations as to the dates when the alleged debts were actually incurred, much less their

relation in time to the alleged transfers.

### 4. The Amended Complaint fails to plausibly allege that DAS was insolvent at the time of the alleged transfers.

A claim for relief under Section 547(b) requires that the debtor be insolvent at the time of

the alleged transfers.  11 U.S.C. § 547(b)(3).  The Amended Complaint states only that "Plaintiff

15

is presumed to have been, and was in fact, insolvent at the time the transfers were made."

[Amended Complaint ¶ 23].  This is exactly the "[t]hreadbare recital[] of the elements of a cause

of action supported by mere conclusory statements," that the Supreme Court stated "does not

suffice."  Iqbal, 129 S. Ct. at 1949.  While the presumption contained in Section 547(f) shifts the

burden of production, it does not shift the burden of persuasion.  See, e.g., Roblin Indus., Inc. v.

Ford Motor Co. (In re Roblin Indus., Inc.), 78 F.3d 30, 34 (2d Cir. 1996).   Despite this

presumption, insolvency remains an element of a claim for relief under Section 547(b) on which

DAS bears the burden of persuasion, and DAS is not excused from alleging at least some facts

that would support this essential element of its claim.

Moreover, DAS is not entitled to rely on Section 547(f) in the instant case because DAS's

summary of schedules evidences that ***DAS's assets exceeded its liabilities by more than $2***

***billion***.  See Schedules of Assets and Liabilities dated January 20, 2006 [Case No. 05-44640,

Docket No. 5]; Notice of Amendments of Schedules of Assets and Liabilities, dated April 18,

2006 [Case No. 05-44641, Docket No. 10].   Courts have long held that a debtor's schedules

showing solvency is sufficient to rebut the presumption.  See, e.g., In re Roblin Indus., Inc., 78

F.3d 30, 34-35 (2d Cir. 1996) (schedules showing solvency rebutted presumption so that trustee

bore burden of coming forward to prove insolvency); Akers v. Koubourlis (In re Koubourlis),

869 F.2d 1319, 1322 (9th Cir. 1989) (debtors' schedules indicating greater assets than debts

rebutted presumption); IMF Sales Assocs., Inc. v. Racal-Vadic Info. Sys., Inc., 94 B.R. 223, 225

n.3 (Bankr. D. Mass 1988) ("Racal has rebutted the [section 547(f) presumption] by offering the

schedules which show the debtor was solvent."); Fokkena v. Winston, Reuber, Byrne, P.C. (In re

Johnson), 189 B.R. 744, 747 (Bankr. N.D. Iowa 1995) ("Debtor's schedules filed in his chapter

16

11 case are sufficient to support a finding of solvency at the time of the transfers.  The presumption was rebutted.").

### 5. The Amended Complaint fails to plausibly allege that Mtronics received more than it would have received under Chapter 7.

A claim for relief under Section 547(b) requires that the alleged transfers enabled Mtronics to receive more than it would have received in DAS's hypothetical Chapter 7 case.  <u>See</u> 11 U.S.C. § 547(b)(5).  DAS cannot rely on the presumption contained in Section 547(f) to satisfy its pleading obligations under Section 547(b)(5).  <u>See,</u> <u>In re Goetz</u>, 120 F.3d at 268. Section 547(b)(5) requires that DAS allege sufficient facts to support the inference that Mtronics received a greater amount than Mtronics would have if the alleged transfers had not been made and there had been a hypothetical liquidation of DAS as of the petition date.  <u>See, e.g.</u>, <u>In re Smith's Home Furnishings, Inc.</u>, 265 F.3d 959, 963 (9th Cir. 2001); <u>In Re Superior Toy & Mfg. Co., Inc.</u>, 78 F.3d 1169, 1171 (7th Cir. 1996); <u>Sloan v. Zions First Nat'l Bank (In re Castletons, Inc.)</u>, 990 F.2d 551, 554 (10th Cir. 1993); <u>In re Tenna Corp.</u>, 801 F.2d 819, 821 (6th Cir. 1986); <u>In re Teligent, Inc.</u>, 380 B.R. 324, 339 (Bankr. S.D.N.Y. 2008); <u>Hassett v. Goetzmann (In re CIS Corp.)</u>, 195 B.R. 251, 262 (Bankr. S.D.N.Y.1996).  The relevant moment in time is the petition date:

> To satisfy § 547(b)(5), the plaintiff must prove that the transferee received more as a result of the preference than if the preference was never paid, and instead, the transferee received a distribution on its claim in a hypothetical chapter 7 case.  The proponent must construct a hypothetical chapter 7 case, and determine the percentage distribution that ***the defendant would have received on the petition date***.

<u>Teligent</u>, 380 B.R. at 339 (emphasis added); <u>Castletons</u>, 990 F.2d at 554; <u>Superior Toy & Mfg. Co.</u>, 78 F.3d at 1171; <u>Tenna Corp.</u>, 801 F.2d at 821; <u>CIS Corp.</u>, 195 B.R. at 262.

The Amended Complaint simply tracks the language contained in Section 547(b)(5) and then adds that "unsecured creditors in these chapter 11 cases will receive less than full value on account of their unsecured claims." [See Amended Complaint ¶ 24]. What unsecured creditors will receive in these Chapter 11 cases under the Modified Plan that became effective on October 6, 2009, is irrelevant with respect to whether, as the result of the alleged transfers, Mtronics received more that it would have in a Chapter 7 case. The relevant moment in time is not October 6, 2009, when the Modified Plan became effective. Instead, the relevant moment in time is October 8, 2005, when DAS filed its petition. Moreover, what unsecured creditors will receive under the Modified Plan is irrelevant because DAS was substantively consolidated with other Debtors for purposes of distribution. Section 547(b)(5) requires that DAS allege facts relevant to what Mtronics would have received in DAS's Chapter 7 liquidation without regard to substantive consolidation.

The Amended Complaint does not allege a single fact that would give rise to an inference, let alone support the conclusion, that Mtronics would not have received payment in full had DAS been liquidated in a Chapter 7 on October 8, 2005. In Angell v. Haveri (In re Caremerica), 409 B.R. 346, 352 (Bankr. E.D.N.C. 2009), the bankruptcy court explained that to state a claim under Section 547, the plaintiff "is obligated to support his § 547 claims for relief with facts showing that it is plausible that creditors would receive less than a 100% payout in a liquidation." The bankruptcy court permitted the plaintiff to rely on the debtors' summary of schedules, which reflected assets far greater than liabilities. Id. Unlike Caremerica, DAS cannot rely on its summary of schedules because they reflect that, on October 8, 2005, DAS's assets exceeded its liabilities by more than $2 billion. [See Case No. 05-44640, Docket No. 5].

18

**B. <u>DAS Is Judicially Estopped From Pursuing A Preference Action Against Mtronics.</u>**

The Reorganized Debtors already have concluded litigation regarding the transfers set forth in the Amended Complaint.  In the Lawsuit in the Southern District of Indiana, DAS sued Shinwa, Samtech, and Mtronics for warranty claims related to Shinwa's product.   In the complaint, DAS alleged that Mtronics was a "purchasing agent" through which it would place its purchase orders for Shinwa's product.   [See Doc. No. 1 of the Lawsuit, ¶ 32].   Based on Mtronics' role as a mere "purchasing agent," DAS agreed to a joint stipulation of dismissal with prejudice as to Mtronics.  The Court dismissed Mtronics on September 19, 2008.  [See Doc. No. 101 of the Lawsuit].  DAS later settled the Lawsuit in return for a cash payment from Samtech and Shinwa, and the release of claims for unpaid goods.  As the "purchasing agent," Mtronics withdrew its allowed claim in the Bankruptcy Case. [See Docket No. 19038].

Section 550(a) of the Bankruptcy Code permits recovery of preferential transfers only from the "initial transferee" or "any immediate or mediate transferee of such transferee." A party who acts merely as a conduit to facilitate the transfer of payment from the debtor to a third party is not a "transferee." <u>In re Kinley</u>, 130 F.3d 52, 58 (2d Cir. 1997).  To be a "transferee," the party must exercise dominion over the money, or have the right to use the money for that party's own purposes.  <u>Id.</u>  A business that acts as a mere conduit for funds and performs that role consistent with its contractual undertaking in respect to the challenged transfers is not an "initial transferee" from which the trustee may recover an avoided transfer.  <u>Id.</u> at 59.

Judicial estoppel protects the integrity of the judicial process by forbidding a party from advancing contradictory factual positions in separate legal proceedings.  <u>Bates v. Long Island R.R.</u>, 997 F.2d 1028, 1037 (2d Cir. 1993), <u>cert. denied</u>, 510 U.S. 992 (1993).  A party is judicially estopped from asserting a position when (1) the party advanced an inconsistent factual

position in a prior proceeding, and (2) the first court in the prior proceeding adopted the party's inconsistent position in some manner. Id. at 1038.

In the Lawsuit, DAS relied on Mtronics' status as a "purchasing agent" to reach a successful conclusion of its claims against Mtronics' principal, Shinwa. The Mtronics Dismissal, the Lawsuit Settlement, and the Withdrawal of Mtronics Allowed Claim were based on the premise that Mtronics was a mere conduit for DAS's payments to Shinwa for Shinwa products. DAS's prior position that Mtronics was a "purchasing agent" is inconsistent with its current position that Mtronics is the transferee of the alleged preferences. Accordingly, DAS is judicially estopped from arguing that Mtronics is a transferee in the instant action.

### C. DAS Is Time-Barred From Pursuing The Instant Action.

At the July 22, 2010 hearing on the First Wave Dismissal Motions, the Court suggested that it was inclined to review the Extension Orders *de novo* with respect to those parties that did not receive notice of the Extension Motions at the time they were filed and heard. [See July 22, 2010 Transcript at 103, 107, 119]. As evidenced by the Reorganized Debtors' affidavits of service, the Reorganized Debtors did not serve Mtronics with the Extension Motions and Extension Orders. [See Docket Nos. 9039, 9141, 12970, 13313, 13415, 13540, and 18967]. Mtronics was not on the Rule 2002 List and also did not receive ECF notice.

Upon revocation of the Extension Orders, the Original Complaint is due to be dismissed for insufficient service of process under Federal Rule 12(b)(5), as adopted by Bankruptcy Rule 7012, because the Reorganized Debtors failed to serve Mtronics within 120 days as required by Rule 4(m). The Reorganized Debtors are barred from filing the Amended Complaint because the two-year statute of limitations for filing a preference action expired on October 9, 2007. See Burks v. Griffith, 100 F.R.D. 491 (N.D. N.Y. 1984); Pardazi v. Cullman Med. Ctr., 702 F. Supp. 852, 868-69 (N.D. Ala. 1988) (overruled on other grounds) (holding that the filing of a complaint

only provisionally tolls the statute of limitations if service is not made within 120 days as

required by Rule 4(m); and if the statute of limitations expires during that period and the action

is dismissed, the action will be time-barred upon attempted re-institution).

> Trial courts may revoke a Rule 4(m) extension for lack of cause:

> [Rule 4(m)] does not address the authority of a district court that has granted [] an
> extension to revoke it if it subsequently determines that good cause has not been
> shown.  We discern no reason why a district court should not be able to do so . . .
> If a district court concludes that good cause had not been shown, it is within its
> discretion to vacate its prior extension of time for effecting service that was based
> upon that erroneous foundation.

McCrae v. KLLM Inc., 89 Fed. Appx. 361, 363 (3d Cir. 2004).  Because Mtronics received no

notice, the Court should revoke the Extension Orders with respect to Mtronics.

### 1.  The Reorganized Debtors failed to abide by the Case Management Order.

Each of the Extension Motions was a "Filing," and was required to be served on "all

parties with a particularized interest" as directed by the Court in the Case Management Order.

[See Docket No. 2883 of the Bankruptcy Case].  Mtronics was a party with a particularized

interest in the Extension Motions, given that the Reorganized Debtors filed a complaint under

seal against Mtronics alleging preferences in the aggregate of $5,046,103.44.  Nevertheless, in

direct contravention of this Court's order, the Reorganized Debtors failed to serve Mtronics with

any of the Extension Motions, as verified by the affidavits of service filed with respect to each.

[See Docket Nos. 9039, 12970, 13415, and 18967 of the Bankruptcy Case].

### 2.  The Reorganized Debtors misrepresented to the Court that they had in fact complied with the Case Management Order.

In each of the Extension Motions, the Reorganized Debtors represented to this Court that

notice "has been provided in accordance with the [Case Management Order]," and that in light of

such, no other or further notice was necessary.  [See Preservation Motion ¶ 55, First Extension

Motion ¶ 26, Second Extension Motion ¶27, Third Extension Motion ¶ 24].  In relying on such

representations, this Court entered each of the Extension Orders (which had been proposed and submitted by the Reorganized Debtors), and each of which stated that it appeared that "proper and adequate notice of the [Extension Motion] has been given" and that no other or further notice was necessary. The Reorganized Debtors failed to abide by the directives of this Court's Case Management Order, and obtained the extensions by representing otherwise to this Court.

### 3. Mtronics has been deprived of substantive and procedural due process.

In addition to the Reorganized Debtors' failure to abide by the Court's Case Management Order, Mtronics has been deprived of both its substantive and procedural due process rights as guaranteed by the Fifth Amendment of the Constitution of the United States of America. As established by the United States Supreme Court, due process is meant to ensure the requirement of fundamental fairness, and thus mandates certain procedural protections. Matthews v. Eldridge, 96 S. Ct. 893 (1976). One of these protections, and at the very core of due process, is the fundamental right to notice and the opportunity to be heard at a meaningful time and in a meaningful manner. Id.; see also Brody v. Vill. of Port Chester, 434 F.3d 121, 129 (2nd Cir. 2005) (quoting Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950) ("[W]here a person has a right to be heard, that right 'has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest.'")).

Mtronics had no notice of the Extension Motions and had no opportunity to be heard prior to the entry of the Extension Orders. Most importantly, Mtronics' rights were substantially affected as the Preservation Orders enabled the Reorganized Debtors to conceal the instant action from Mtronics, and at the same time negotiate two separate settlement agreements to their benefit, as described in further detail in Section II below. As established by the Supreme Court, due process forbids the exercise of judicial power substantially affecting a defendant's rights

22

without notice. See Griffin v. Griffin, 66 S. Ct. 556 (1946). Additionally, the Extension Motions effectively extended the two-year statute of limitations imposed by Section 546(a) of the Bankruptcy Code for an additional two and half years. Section 546(a)'s two-year statute of limitations is itself a substantive right. See Kilner v. Flocar, 212 F.R.D. 66, 70 (N.D.N.Y. 2002) ("Statutes of Limitation are substantive laws…").

### 4.  Rule 4(m) extensions are granted to assist a diligent plaintiff with service.

The purpose of a Rule 4(m) extension is to assist an otherwise diligent plaintiff in perfecting service. The facts of this case do not match the circumstances courts generally accept as providing good cause for allowing service past the 120 day limit. Sidney v. Wilson, 228 F.R.D. 517, 522 (S.D.N.Y. 2005). For example, pro se plaintiffs are often accorded extensions from the 120 day limit. See, e.g., Bender v. General Svcs. Admin., 539 F. Supp. 2d 702, 705 (S.D.N.Y. 2008). Additionally, relief from the 120 day limit is often allowed when a plaintiff has been diligent in attempting to perfect service, or has been unable to perfect service due to third party conduct or the defendant's evasion. See, e.g., In re Am. Int'l Group, Inc. Sec. Litig., 240 F.R.D. 608, 610 (good cause shown "in light of plaintiffs' persistent attempts to serve defendant through a variety of methods"); Geller v. Newell, 602 F. Supp. 501, 502 (S.D.N.Y. 1984) (holding under Rule 4(m)'s predecessor that "[w]here plaintiff has made a reasonable effort to serve defendant, Congress intended that the 120 day deadline be extended"). Extending the Rule 4(m) deadline to enable a plaintiff to actually avoid service of the defendant for its own benefit, and to the detriment of the defendant, as the Reorganized Debtors have done in the instant action is not a valid basis for a Rule 4(m) extension.

### 5.  The expiration of the statute of limitations is not good cause under Rule 4(m).

The Reorganized Debtors recognized that the two-year statute of limitations was about to expire, and filed the original Preservation Motion to "preserve [the Adversary Proceedings]

while otherwise maintaining the status quo among all parties in interest." [See Preservation Motion, Paragraph 16]. However, courts have held that the fact that a plaintiff's claim may be barred by the applicable statute of limitations is not "good cause" for a Rule 4(m) extension. See, e.g., Zapata v. City of N.Y., 502 F.3d 192, 197 (2d Cir. 2007); Teligent Servs., Inc. v. Williams Commc'ns (In re Teligent Servs., Inc.), 372 B.R. 594, 601 (Bankr. S.D.N.Y. 2007). Courts have further held that prejudice to a plaintiff from the statute of limitations running does not necessarily outweigh the prejudice to the defendant in being forced to defend a time-barred complaint. See Zapata, 502 F.3d at 196; In re Teligent Servs., Inc., 372 B.R. at 601; Shaw v. Rolex Watch U.S.A., Inc., 745 F. Supp. 982, 988 (S.D.N.Y. 1990). Accordingly, the Reorganized Debtors' attempt to toll the statute of limitations for an additional 2 ½ years through ex parte extension orders does not satisfy good cause under Rule 4(m).

**6.    Prejudice to a defendant weighs against granting a Rule 4(m) extension.**

The Reorganized Debtors based the original extension motions on a desire to conceal preference litigation to preserve business relationships with suppliers. Specifically, the Reorganized Debtors stated in the original Preservation Motion:

> The Debtors have worked to preserve and repair their business relationship with many of the potential defendants during these cases and have negotiated or regained favorable credit terms with many suppliers and are continuing to do so. The Debtors are also engaged in negotiations with some of the potential defendants on issues unrelated to avoidance actions.

[See Paragraph 37]. The Reorganized Debtors stated similar rationales in the First and Second Extension Motions. [See Paragraphs 16 and 17, respectively].

Concealing litigation may benefit a plaintiff, but under Rule 4(m) courts also consider the prejudice to a defendant and the impairment of the defendant's ability to defend the claims. See e.g., Bender, 539 F. Supp. 2d at 705; Geller, 602 F. Supp. at 502; In re Teligent Servs., Inc., 372 B.R. at 601; Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Barney Assocs., 130 F.R.D. 291, 294

(S.D.N.Y. 1990) (ruling on Rule 4(m)'s predecessor). The Reorganized Debtor's concealment of preference claims severely prejudiced Mtronics in its ability to defend the instant action and in otherwise unrelated business dealings and negotiations with the Reorganized Debtors. In addition to the obvious prejudice of having to defend a cause of action based on alleged transfers that occurred in 2005, Mtronics entered into two settlement agreements with DAS without any knowledge of the pending instant action as discussed in Section II below.

### 7. Multiple Rule 4(m) extensions must be based on the same reason.

In Global Crossing Estate Representative v. Alta Partners Holdings LDC (In re Global Crossing, Ltd), 385 B.R. 52, 84 (Bankr. S.D.N.Y. 2008), the Bankruptcy Court for the Southern District of New York refused to enforce an extension order under Rule 4(m) because the order was based upon different grounds than prior extension orders. The Global Crossings Court held that the grounds from one extension to the next cannot "morph" into distinct rationales. Id. at 85.

The rationale for extension in the original Preservation Order is distinct from the rationale for extension granted in the Third Extension Order. The original Preservation Order was based upon a proposed plan that would pay unsecured creditors in full. The Reorganized Debtors purported to toll the statute of limitations "to preserve the status quo" and otherwise maintain business relationships with suppliers because preference litigation might be unnecessary. By the time of the Third Extension Order in October of 2009, funding for the original plan had failed. Unsecured creditors would not be paid in full. The rationale for further extensions shifted from preserving the status quo for the benefit of supplier relationships to preserving the Reorganized Debtors' untimely efforts to pursue collection. At the very least, the Court should revoke the Third Extension Order because the premises and reasons for extension were different from those presented for the original Preservation Order.

**D.  DAS Is Precluded From Pursuing A Preference Action Against Mtronics.**

The Mtronics Claim was filed on July 28, 2006.  The Reorganized Debtors objected to the Mtronics Claim on February 15, 2006 [Docket No. 6968 in the Bankruptcy Case].  The objection did not raise Section 502(d) as grounds for disallowing the Mtronics Claim.  On September 26, 2007, Delphi filed the Original Complaint under seal.  In November 2007, DAS stipulated that Mtronics would be allowed a general unsecured claim in the amount of $372,934.72.  Based upon the Mtronics Claims Settlement, the Court entered an order on December 14, 2007 [Docket No. 11466 of the Bankruptcy Case] providing for the Allowed Mtronics Claim.

Section 502(d) of the Bankruptcy Code provides that a claim against a debtor will not be allowed if the entity pursuing such claim holds property resulting from an avoidable transfer.  Courts have construed this section as precluding a trustee or debtor in possession from bringing or continuing a preference action if it fails to raise a preference objection under Section 502(d) during the claims-allowance process.  See Caliolo v. Azdel, Inc. (In re Cambridge Indus. Holdings, Inc.), No. 00-1919, 2003 WL 21697190, at *5 (Bankr. D. Del. July 18, 2003) (emphasis added) [hereinafter "Cambridge II"]; Caliolo v. TKA Fabco Corp. (In re Cambridge Indus. Holdings, Inc.), No. 00-1919, 2003 WL 1818177, at *2 (Bankr. D. Del. Apr. 2, 2003) [hereinafter "Cambridge I"]; LaRoche Indus. v. Gen. Am. Transp. Corp. (In re LaRoche Indus.), 284 B.R. 406, 410 (Bankr. D. Del. 2002); but see Caliolo v. Saginaw Bay Plastics (In re In re Cambridge Indus. Holdings, Inc.), No. 00-1919, 2006 WL 516764, at * (D. Del. Mar. 2, 2006); TWA Inc. Post Confirmation Estate v. City & County of S.F. Airports Comm'n (In re TWA Inc. Post Confirmation Estate), 305 B.R. 221 (Bankr. D. Del. 2004); Homeplace of Am., Inc. v. Salton, Inc. (In re Waccamaw's Homeplace), 325 B.R. 524, 535 (Bankr. D. Del. 2005).

Similar to the facts in this action, in <u>Cambridge II</u>, a creditor filed a proof of claim that was ultimately resolved by stipulated order. 2003 WL 21697190, at *1. The liquidating trustee sued the creditor for a preference before the claim was allowed. <u>Id.</u> The Court dismissed the preference action, noting "several problems" that can arise when preference actions are brought independently of objections to the claims of the preference defendant. <u>Id.</u> at *4. These problems include the unfair surprise to a defendant following the allowance of its claim against the debtor, and the inefficiency of separate actions. <u>Id.</u> The court concluded: "Where there is a court order resolving a dispute over the amount of a creditor's claim, the entry of that order precludes, pursuant to Section 502(d), the commencement or continuation of litigation for the recovery from the creditor of allegedly avoidable transfers." <u>Id.</u> at *5.

While the Second Circuit has not addressed the import of a debtor's failure to combine claim objections and avoidance actions under Section 502(d), the Bankruptcy Court for the Southern District of New York reached a similar conclusion based on distinguishable facts. <u>See</u> <u>Rhythms NetConnections Inc. v. Cisco Sys., Inc. (In re Rhythms NetConnections Inc.</u>), 300 B.R. 404 (Bankr. S.D.N.Y. 2003). In <u>Rhythms</u>, the debtor stipulated to the allowance of the preference defendant's  claim less than two months after the petition date. In distinguishing the <u>Cambridge II</u> line of cases, the <u>Rhythms</u> court held that the debtor could not have been expected to commence preference analysis or claims review within 2 months of the petition date. <u>Id.</u> at 409. The distinguishing factor in Rhythms does not apply. The Reorganized Debtors intentionally concealed from Mtronics the sealed preference action, while simultaneously entering into a settlement agreement allowing Mtronics' claim two years after the petition date. Accordingly, the Court should apply the reasoning of Cambridge II and preclude the Amended Complaint under Section 502(d).

**E.  The New Transfers Do Not Relate Back Under Federal Rule 15(c).**

In the Original Complaint, the Reorganized Debtors allege that Mtronics received preferential transfers in the aggregate amount of $5,046,103.44.  In the Amended Complaint, DAS alleges Mtronics received preferential transfers in the aggregate amount of $5,890,271.57. Specifically, DAS alleges new transfers on September 15, 2005 and October 4, 2005, each in the amount of $421,809.68 (the "New Transfers").[4]

Generally, an amendment relates back to the original pleading under Federal Rule 15(c) only if the facts provable under the amended complaint arose out of conduct alleged in the original complaint.  Slayton v. Am. Express Co., 460 F.3d 215 (2d Cir. 2006).  With respect to alleged preferential transfers, each alleged preference is a distinct transaction that does not relate back to any other transaction in the absence of an underlying unifying scheme or course of conduct.  See Austin Driveway Servs., Inc. v. Coan (In re Austin Driveway Servs., Inc.), 179 B.R. 390, 399 (Bankr. D. Conn. 1995).  The debtor-creditor relationship alone is insufficient to warrant the conclusion that all payments during the preference period were part of the same conduct, transaction or occurrence.  Id.; see also New Bedford Capacitor, Inc. v. Sexton Can Co. (In re New Bedford Capacitor, Inc.), 301 B.R. 375 (Bankr. D. Mass. 2003).

In the event this Court grants the Motion for Leave, the New Transfers are due to be stricken from the Amended Complaint because the New Transfers are separate and distinct transactions which do not relate back under Federal Rule 15(c), as adopted by Bankruptcy Rule 7015.  See, e.g., 360 Networks (USA) Inc., 367 B.R. 428 (Bankr. S.D.N.Y. 2007); MBC Greenhouse, Co. v. CTC Direct, Inc., 307 B.R. 787 (Bankr. D. Del. 2004).  Accordingly, in

---

[4] To the extent the New Transfers are duplicative of other alleged transfers, Mtronics reserves all rights, claims, and defenses.

addition to the arguments set forth above, any claims for the New Transfers are time-barred

because the statute of limitation expired in October 2007.

### F. Conclusion.

For the foregoing reasons, if the Court grants the Motion for Leave, the Amended

Complaint should be subject to immediate dismissal. Accordingly, under futility as set forth in

Foman, the Motion for Leave is to be denied. 371 U.S. at 182.

## II.    BAD FAITH AND UNDUE PREJUDICE

### A. DAS concealed the filing of the Original Complaint, and the Extension Motions and Extension Orders, during settlement negotiations with Mtronics.

"Prejudice to the opposing party is 'the most important factor' in determining whether

leave to amend should be granted or denied." Taberna Capital Mgmt., LLC, 2010 U.S. Dist.

LEXIS 35347, at 4 (quoting Ruotolo v. City of N.Y., 514 F.3d 184, 191 (2d Cir. 2008)). The

Reorganized Debtors did not provide Mtronics with notice of the Original Complaint, the

Extension Motions, or the Extension Orders until March 2010. In 2007 and 2009, Mtronics

entered into two separate settlement agreements with DAS without notice of the multi-million

dollar preference action that the Reorganized Debtors had already filed and concealed from

Mtronics for nearly two and a half years beyond the applicable statute of limitations. In both

settlement agreements, Mtronics released valuable claims and interests, relying, among other

things, on its understanding that the statute of limitations had run with no preference action by

the Reorganized Debtors. The Reorganized Debtors' actions in this case simply do not pass the

smell test. The Reorganized Debtors intentionally concealed pending preference claims that

related directly to Mtronics' rights as a creditor. At the same time, the Reorganized Debtors

induced Mtronics into settlements that, among other things, resulted in the release of the Allowed

Mtronics Claim in the amount of $372,934.72 (that, at the time, the Reorganized Debtors were

29

proposing to pay in full).   The Reorganized Debtors' actions are fundamentally unfair and unduly prejudiced Mtronics.   The Court has ample grounds to deny the Motion for Leave for bad faith and undue prejudice.  See Foman, 371 U.S. at 182.

**B.  DAS is equitably estopped from pursuing the instant action given its bad faith settlement dealings and the undue prejudice to Mtronics.**

Equitable estoppel bars a party from asserting a claim where (1) the party makes a definite misrepresentation, including a misrepresentation by silence, with reason to believe the other party would rely on it (regardless of whether the person making the misrepresentation intended to deceive), and (2) the other party relies on the misrepresentation to its detriment.  See Kosakow v. New Rochelle Radiology Assocs., P.C., 274 F.3d 706, 726 (2d Cir. 2001); Heckler v. Cmty. Health Servs. of Crawford Cnty., Inc., 467 U.S. 51, 59 (1984).  Courts should apply equitable estoppel where enforcement of the rights of one party would work an injustice upon the other due to the latter's justifiable reliance upon the former's words or conduct.  See, e.g., In re Ionosphere Clubs, Inc., 85 F.3d 992, 999 (2d Cir. 1996).

DAS deliberately concealed the existence of its preference action from Mtronics during two separate settlement negotiations.  DAS's failure to provide any sort of notice to Mtronics of the pending action during these settlement negotiations constitutes a misrepresentation.  Relying on the apparent absence of a preference claim, Mtronics agreed to withdraw its allowed claim in the amount of $372,934.72 and released DAS from any other claim, cause of action, demand or liability which it, or any of its affiliates, might have had prior to the filing of the petition. Mtronics clearly relied on the Reorganized Debtors' misrepresentation to its detriment. Accordingly, DAS is equitably estopped from pursuing the preference action it chose to conceal during settlement negotiations.  See Kosakow, 274 F.3d at 726.

30

**C.** **Plaintiff's arguments fail to address the notice deficiencies and resulting prejudice.**

The Court should reject the Reorganized Debtors' unavailing efforts to disguise their failure to provide notice and failure to comply with fundamental notion of due process. For example, in their Omnibus Response [Docket No. 20, AP No. 07-2500], the Reorganized Debtors state: "At a recent hearing, this Court specifically noted that ***many*** potential defendants understood, at least at the time the Orders were entered, that they benefit from those Orders." [See Omnibus Response ¶ 3] (emphasis added). The Court, with respect to the Preservation Motion, had stated: "And it was on very wide notice … ***there were lots and lots*** of potential recipients of [p]references who got actual notice of it." [See Transcript, April 1, 2010 at 28, attached to the Fisher Declaration as Ex. D] (emphasis added). The Reorganized Debtors also argue: "***Several*** Movants or their affiliates were served with the Preservation Motion and subsequent Extension Motions." [See Omnibus Response ¶ 69] (emphasis added). While "many" or "lots and lots" or "several" of the other potential defendants might have received notice of the Extension Motions, the fact remains that Mtronics did not. The affidavits of service with respect to each of the Extension Motions show that Mtronics was not served. General averments of service on other defendants does not show adequate service on Mtronics.

The Reorganized Debtors also rely upon their Disclosure Statement as another argument that Mtronics received notice of the preservation procedures and thus should have known of the instant action. In the Disclosure Statement, the Reorganized Debtors provided a summary of the procedures set forth in the Preservation Order. [See pgs. 149-153]. Service of the Disclosure Statement does not cure the Reorganized Debtors' failure to provide notice of the Extension Motions in accordance with the Case Management Order, nor does it excuse the Reorganized Debtors' misrepresentation to this Court that they had in fact complied with the Case Management Order notice provisions, as discussed in Section I(C), *supra*.

31

Moreover, the Disclosure Statement was filed on December 10, 2007, and served on December 14, 2007, roughly four months after the filing of the Preservation Motion and subsequent entry of the Preservation Order.[5]  The deprivation of due process to Mtronics in not having an opportunity to be heard with respect to the Preservation Motion had already occurred.  Additionally, Mtronics had already been prejudiced as Mtronics had entered into the Mtronics Claim Settlement with DAS LLC in November 2007, without any notice of the original Preservation Motion and Preservation Order (and Original Complaint) and prior to the service of the Disclosure Statement.  Finally, the Disclosure Statement did not give Mtronics notice of the First Extension Motion, the Second Extension Motion, or the Third Extension Motion, and the orders thereto, which subsequently extended the time for service from March 31, 2008 until 180 days after substantial consummation of the Modified Plan, or April 16, 2010.  Without timely notice of the Extension Motions, Mtronics had no opportunity to be heard at a meaningful time.  See Matthews v. Eldridge, 96 S. Ct. 893 (1976).

Finally, a disclosure statement is simply not an adequate means of providing notice of a lawsuit.  The Federal Rules of Civil Procedure, as incorporated by the Bankruptcy Rules, provide entirely different mechanisms for notice and service of adversary proceedings and motions.  The suggestion that a disclosure statement can in any sense supersede the rules is patently absurd.  The summary contained in the Disclosure Statement and relied upon by the Reorganized Debtors does not provide Mtronics with proper and particularized notice that it was subject to the procedures established by the Preservation Order (and the Original Complaint which had already been filed).  See Mickey's Enters., Inc. v. Saturday Sales, Inc. (In re Mickey's Enters., Inc.), 165 B.R. 188 (Bankr. W.D. Tex. 1994).  The Disclosure Statement does nothing to remedy the due

---

[5]  The Preservation Motion was filed August 6, 2007, and the Preservation Order was entered August 16, 2007.  Thus, the Preservation Motion had already been filed and heard, and the Preservation Order granted, roughly four months prior to the service of the Disclosure Statement.

process deficiencies resulting from the Reorganized Debtors' failure to serve the Extension Motions and Extension Orders upon Mtronics, and the resulting prejudice to Mtronics in entering into to two settlement agreements with DAS.[6]

## III.    UNDUE DELAY AND UNDUE PREJUDICE

The Court may presume prejudice to Mtronics from the unreasonable delay in this case. Shannon v. Gen. Elec., Co., 186 F.3d 186 (2d Cir. 1999) (internal citations and quotations omitted).  Since the statue of limitations ran over 3 years ago, evidence has been lost, memories have faded, and Mtronics is an entirely different company post-merger.  Moreover, where, as here, the plaintiff files its complaint immediately prior to the running of the statute of limitations and then delays service, prejudice to the defendant is obvious.  "It is obvious that any defendant would be harmed by a generous extension of the service period beyond the limitations period for the action, especially if the defendant had no actual notice of the existence of the complaint until the service period had expired."  Zapata, 502 F.3d at 198.  In the instant case, the Reorganized Debtors did not serve Mtronics with the Original Complaint, and Mtronics did not have any notice of this Adversary Proceeding, until March 2010 – 2 ½ years after expiration of the statute of limitations and 4 ½ years after the alleged transfers were made.   These circumstances are so egregious that they go beyond undue prejudice and bad faith and actually constitute a denial of due process.  See Section I(C)(3), *supra*.

DAS argues that it should be permitted to amend the Original Compliant more than 3 years after it was filed because, at the time the Original Complaint was filed, the Supreme Court had not yet rendered its decision in Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009).  However, the

---

[6] The Reorganized Debtors have also referenced the fact that they filed the Disclosure Statement with their Form 8-K.  A Form 8-K, which is filed with the Securities and Exchange Commission for the benefit of shareholders, does not constitute service of process under the Federal Rules of Civil Procedure, nor the does it satisfy the Case Management Order or the procedural requirements of due process as guaranteed by the Fifth Amendment of the Constitution.

Reorganized Debtors filed the Original Complaint well after the Supreme Court's decision in

Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007).  In Twombly, the Supreme Court made it

abundantly clear that a complaint must contain sufficient factual matter to "state a claim to relief

that is plausible on its face," 550 U.S. at 570, 127 S. Ct. at 1974, and that the complaint will be

dismissed if it only offers "labels and conclusions" or "a formulaic recitation of the elements of a

cause of action, " 550 U.S. at 555, 127 S. Ct. at 1965.  Despite the Supreme Court's admonition

in Twombly, the Reorganized Debtors nevertheless filed the Original Complaint containing

nothing more than a conclusory recitation of the elements of a preference under 11 U.S.C. §

547(b).

Moreover, even if the Supreme Court's decision in Twombly was somehow unclear, the

Supreme Court rendered its decision in Iqbal on May 18, 2009.  On May 18, 2009, the

Reorganized Debtors certainly knew that the Original Complaint failed to allege facts sufficient

to state a claim under Section 547(b).  Under Rule 15(a)(1), the Reorganized Debtors could have

amended the Original Complaint at any prior to its service in March 2010.  The Reorganized

Debtors had 10 months within which to amend the Original Complaint but failed to do so.

Having failed to avail themselves of this opportunity to amend the Original Complaint, the

Reorganized Debtors should not be permitted to amend the Original Complaint now.

## INCORPORATION OF ARGUMENTS RAISED BY OTHER DEFENDANTS

Mtronics incorporates by reference all applicable arguments raised by the other

defendants to the Preference Actions in their objections to the Motion for Leave.

## NO FURTHER AMENDMENT

This Court made clear during the hearing on the "First Wave Motions" that this

Adversary Proceeding may be dismissed with prejudice if the Reorganized Debtors filed a

proposed amended complaint that does not satisfy the minimal pleading requirements established by the Supreme Court in <u>Twombly</u>.  Despite this Court's admonition, the Reorganized Debtors filed an Amended Complaint that repeats the deficiencies of the original complaint.  The Reorganized Debtors clearly cannot make sufficient allegations to state a preference claim because they cannot prove the elements of Section 547(b) of the Bankruptcy Code.  This adversary proceeding has been pending in a compromised procedural posture based on a defective and inadequate complaint for over 3 years past the statute of limitations, two years of which the Reorganized Debtors actively hid the complaint from Mtronics.  It is time for this lawsuit to end.  No further amendment is warranted, and this Adversary Proceeding is due to be dismissed with prejudice.

## **MEMORANDUM OF LAW**

The legal points and authorities upon which this motion relies are incorporated herein. Mtronics, therefore, respectfully requests that the requirement of filing a separate memorandum of law under Local Rule 9013-2(b) be deemed satisfied.

## **CONCLUSION**

DAS's proposed claims are substantively and procedurally defective, violate Mtronics' due process rights, repeat the defects that forced dismissal of the prior claims, and are pursued in bad faith.  Mtronics prays that this Court deny the Motion for Leave and grant such other and further relief as this Court may deem appropriate.

Respectfully submitted this the 24th day of November, 2010.

\s\ T. Parker Griffin, Jr.
T. Parker Griffin, Jr.   (pro hac)
*Attorneys for Mtronics.com, Inc.*

**OF COUNSEL:**

Bradley Arant Boult Cummings LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL  35203
Telephone: (205) 521-8000
pgriffin@babc.com

## CERTIFICATE OF SERVICE

I hereby certify that on this the 24th day of November, 2010, a copy of the above and foregoing was served electronically through the Court's CM/ECF system to all parties consenting to such service, and via electronic email and/or United States first class mail, properly addressed and postage prepaid, upon the following:

> Clerk of the Court
> United States Bankruptcy Court
> Southern District of New York
> One Bowling Green
> New York, New York 10004-1408
>
> Eric B. Fisher
> Barry N. Seidel
> Butzel Long, a professional corporation
> 380 Madison Avenue, 22nd Floor
> New York, New York 10017
> fishere@butzel.com
> seidelb@butzel.com
>
> Cynthia J. Haffey
> Butzel Long, a professional corporation
> 150 West Jefferson, Suite 100
> Detroit, Michigan 48226
> haffey@butzel.com
>
> Neil Berger
> Scott E. Ratner
> Togut, Segal and Segal LLP
> One Penn Plaza, Suite 3335
> New York, New York 10119

\s\ T. Parker Griffin, Jr.
OF COUNSEL