UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
In re                                                       :   Chapter 11
                                                            :
DPH HOLDINGS CORP, et al.,                                  :   Case No. 05-44481 (RDD)
                                                            :   (Jointly Administered)
                    Reorganized Debtors.                    :
------------------------------------------------------------ x
DELPHI AUTOMOTIVE SYSTEMS, LLC,                             :
                                                            :   Adv. Pro. No. 07-02688 (RDD)
                    Plaintiff,                              :
                                                            :
            -against-                                       :
                                                            :
THE TIMKEN COMPANY and THE                                  :
TIMKEN CORPORATION,                                         :
                                                            :
                    Defendants.                             :
------------------------------------------------------------ X

## DECLARATION OF MICHAEL HART IN SUPPORT OF OPPOSITION OF THE TIMKEN COMPANY AND THE TIMKEN CORPORATION TO REORGANIZED DEBTORS' MOTION FOR LEAVE TO FILE AMENDED COMPLAINTS

Michael Hart, pursuant to 28 U.S.C. § 1746, declares as follows:

1.  I am the Manager, Credit & Accounts Receivable, of The Timken Corporation. I have held this title since September 1, 2010, when the prior Manager, Robert Morris, retired. I have been employed by The Timken Corporation since January 2, 2006. I held the title of Assistant Manager, Credit & Accounts receivable from January 2, 2006 through August 31, 2010.

2.  I submit this declaration in support of the Opposition of The Timken Company and The Timken Corporation (collectively "Timken") to the Reorganized Debtors' (the "Reorganized Debtors") Motion for Leave to File Amended Complaints.

849226                                  - 1 -

3. Except as indicated herein, I have personal knowledge of the facts set forth in this Declaration and, if called to testify, I could and would testify competently concerning those facts.

4. Upon information and belief, on October 8, 2005 (the "Petition Date"), Delphi Corporation and certain of its subsidiaries and affiliates (collectively, the "Debtors"), including Delphi Automotive Systems LLC (the "DAS"), filed voluntary petitions under chapter 11 of title 11 of the United States Code.

5. Upon information and belief, Timken and/or certain affiliates provided goods and services to DAS prior to the Petition Date.

6. Timken is not a competitor of DAS.

7. After October 2009, when the Debtors sold substantially all of their businesses, DAS no longer did business with Timken.

8. On June 2, 2006, The Timken Corporation and DAS entered into an Assumption Agreement (the "Assumption Agreement"), whereby DAS agreed that it would make a payment in the amount of $1,803,986.64 (the "Cure Amount") by December 31, 2006 in connection with the assumption of that certain Life Time Contract dated September 18, 2001 (as may have been amended from time to time).

9. Paragraph 3 of the Assumption Agreement, entitled "Waiver of Avoidance Claims", provides:

> The Debtors, on behalf of themselves and their chapter 11 estates, hereby waive and release Supplier of any and all avoidance claims or causes of action under chapter 5 of the United States Bankruptcy Code relating to any transfers made by the Debtors to Supplier relating to the Supply Agreement, to the fullest extent that such waiver would have otherwise occurred by operation of law upon assumption of the Supply Agreement (the "Supply Agreement Avoidance Claims"). The Debtors, on behalf of themselves and their chapter 11 estates, hereby further waive and release Supplier of any and all avoidance claims or causes of action under section 547 of the United States Bankruptcy Code relating to any transfers made by Debtors to Supplier in the 90 days prior to October 5, 2005 relating to

goods supplied by Supplier to the Debtors in connection with the Grand Rapids Facilities other than with respect to the Supply Agreement (the "Other Avoidance Claims" and, collectively with the Supply Agreement Avoidance Claims, the "Avoidance Claims").

I have not attached a copy of the Assumption Agreement to this declaration because the Assumption Agreement contains a confidentiality provision. Timken will provide a copy of the Assumption Agreement to the Court if requested to do so.

10. On July 27, 2006, Timken and/or certain affiliates caused proof of claim number 11706 ("Claim 11706") to be filed against the Debtors.

11. On July 31, 2006, Timken and/or certain affiliates caused proof of claim number 14319 ("Claim 14319") to be filed against the Debtors.

12. On October 31, 2006, the Debtors objected to Claim 11706 and Claim 14319 (the "First Claim Objection").

13. On December 19, 2006, pursuant to that certain Assignment of Claim agreement (the "Assignment Agreement"), Timken and/or certain affiliates assigned certain general unsecured claims (the "Purchased Claims") it had against DAS at a price equal to 100% of the face amount of the claims. A copy of the Assignment Agreement is attached hereto as Exhibit A.

14. On January 23, 2007, Timken and/or certain affiliates caused proof of claim number 16499 ("Claim 16499"; and with Claim 11706 and Claim 14319, the "Timken Claims") to be filed against the Debtors.

15. On June 15, 2007, the Debtors objected to Claim 16499 (the "Second Claim Objection"; and with the First Claim Objection, the "Claim Objections").

16. On July 31, 2007, Timken and/or certain affiliates and the purchaser of the Purchased Claims (the "Purchaser") entered into that certain First Amendment to Assignment of Claim (the "First Amendment"), pursuant to which an additional claim against DAS was sold by

Timken at a price equal to 102% of the face amount of the claim. A copy of the First Amendment is attached hereto as Exhibit B.

17. Upon information and belief, the Purchaser expressed to Timken that it was willing to purchase additional claims against DAS at 102% of their face value.

18. Upon information and belief, on August 6, 2007, the Debtors sought entry of an order seeking, among other things, the establishment of procedures for certain adversary proceedings, including obtaining leave to file avoidance actions under seal, an extension of time beyond the 120-period provided for in Fed. R. Civ. P. 4(m) to serve summons and complaint, and a stay of adversary proceedings until service of process was effected (the "Preservation of Estate Claims Procedures Motion").

19. To the best of my knowledge, information, and belief, no notice was given to Timken that the Preservation of Estate Claims Procedures Motion included claims against Timken.

20. Upon information and belief, on September 7, 2007, the Court so ordered the Joint Stipulation and Agreed Order Disallowing and Expunging Proof of Claim Number 16499 (The Timken Company), pursuant to which the Debtors and Timken and/or certain affiliates partially resolved the Claim Objections.

21. Upon information and belief, on September 30, 2007, DAS filed an adversary proceeding against Timken and certain affiliates (the "Adversary Proceeding") under seal.

22. To the best of my knowledge, information, and belief, Timken was not aware of the Adversary Proceeding until served with it on or about April 8, 2010.

23. Upon information and belief, the statute of limitations for asserting the claims asserted in the Adversary Proceeding expired on or about October 8, 2007.

24.     Upon information and belief, on our about November 9, 2007, the Debtors, Timken and/or certain affiliates, and the Purchaser entered into a Notice of Presentment of a Joint Stipulation and Agreed Order Compromising and Allowing Proof of Claim Numbers 11706 and 14319 (the "Second Settlement Stipulation"), pursuant to which the Debtors, Timken and/or certain affiliates, and the Purchaser resolved the Claim Objections. Except for certain specified rights and obligations, which were specifically preserved, the Second Settlement Stipulation purported to be a comprehensive settlement of the claims among the parties. The Second Settlement Stipulation did not preserve any preference claims. Upon information and belief, Timken believed the statute of limitations for asserting such claims had already expired. Had Timken been aware of the Adversary Proceeding, it would have negotiated the settlement of its claims with DAS differently.

25.     Upon information and belief, the Debtors filed a notice of presentment of the Second Settlement Stipulation on November 9, 2007.

26.     Upon information and belief, on November 16, 2007, the Court so ordered the Second Settlement Stipulation.

27.     Had Timken been aware of the Adversary Proceeding at the time it was filed, Timken could have, and likely would have, repaid in full the allegedly preferential payments identified in the complaint and sold the resulting claim under section 502(h) of the Bankruptcy Code at an immediate profit of 2%. Accordingly, Timken was substantially prejudiced by the filing of the Adversary Proceeding under seal.

28.     Alternatively, in the unlikely event that Timken would not have been able to repay the alleged preference and resell the resulting 502(h) claim at a profit, Timken could have, and likely would have, moved to dismiss the Adversary Proceeding on numerous grounds, including that, given that the Debtors were proposing to pay unsecured creditors in full under its

849226                                                      - 5 -

chapter 11 plan, DAS would not have been able to show that the allegedly preferential payments were in fact preferential. Accordingly, Timken was substantially prejudiced by the filing of the Adversary Proceeding under seal.

29. Alternatively, in the unlikely event that Timken would not have been able to repay the alleged preference and resell the resulting 502(h) claim at a profit, Timken would likely have negotiated differently with DAS. In particular, Timken had significant negotiating power with respect to the new contracts to continue supplying DAS with the same parts it had been supplying under expiring contracts, because it would have been difficult, time consuming, and expensive for DAS to resource the production to an alternative supplier. If Timken had known of the Adversary Proceeding, Timken likely would have refused to accept the new contracts to replace expiring contracts unless DAS dismissed the Adversary Proceeding. Accordingly, Timken was substantially prejudiced by the filing of the Adversary Proceeding under seal.

30. In connection with DAS' chapter 11 case, DAS assumed numerous contracts and purchase orders between DAS and Timken (the "Assumed Contracts"). In their proposed Amended Complaint, however, the Reorganized Debtors do not provide the purchase order numbers for each of the alleged transfers or whether such transfers relate to the Assumption Agreement. The Reorganized Debtors' failure to do so makes it impossible to know whether those transfers relate to an Assumed Contract.

31. Upon information and belief, at least three of the allegedly preferential payments that are the subject of the Adversary Proceeding, namely the $1,000,000 payment dated September 28, 2005, the $1,100,000 payment dated October 3, 2005, and the $507,400 payment dated October 6, 2005, were prepayments DAS agreed to send to cover new purchases of goods.

32. After receiving the proposed Amended Complaint, I searched for the invoices and purchase orders referenced in Exhibit 1 of the proposed Amended Complaint and was not able to locate any of the invoices or purchase orders. The "invoice numbers" bear no resemblance to any type of record keeping number utilized by Timken.

33. Between the time when the Adversary Proceeding was filed and sealed, and the time it was served, Timken sold its needle bearing business which did a significant amount of business with DAS, and underwent significant downsizing rendering certain witnesses and documents potentially relevant to the Adversary Proceeding outside of Timken's access or control.

34. During that time, certain Timken employees with knowledge of the Timken/DAS relationship either retired or left the company, which will make it more difficult for Timken to defend this lawsuit.

35. Timken also upgraded its computer systems starting in May 2006. Accessing the old computer systems is not easy and many of the persons who had familiarity with that system have retired or are no longer employed by Timken. Accordingly, the delay resulting from DAS's decision to file and keep the Adversary Proceeding under seal for more than two years has made it very costly, if not impossible, to access the older computer records.

36. In addition, Robert Morris, who until September 1, 2010 was the General Manager of Credit at Timken, has retired from Timken. Robert Morris previously submitted a declaration in support of Timken's motion to dismiss the preference complaint. Timken no longer has control over Mr. Morris.

- 8 -

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 24th day of November, 2010 at Canton, Ohio.

*/s/ Michael Hart*
Michael Hart