**IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------X

In Re:

DELPHI CORPORATION, et al.,                                Case No. 05-44481 (RDD)

                                                           (Jointly Administered)

                                        Debtors.
--------------------------------------------------------X    Chapter 11
DELPHI CORPORATION, et al.,

                                        Plaintiff,         Adv. Pro. No. 07-02182 (RDD)

                      - against –

BARNES & ASSOCIATES,

                                        Defendant.
--------------------------------------------------------X

**OBJECTION OF DEFENDANT TO REORGANIZED DEBTOR'S MOTION
FOR LEAVE TO FILE AMENDED COMPLAINT AND JOINDER OF
BARNES & ASSOCIATES TO ALL OTHER MOTIONS FILED BY
DEFENDANTS IN AVOIDANCE ACTIONS IN THE ABOVE-
CAPTIONED BANKRUPCY PROCEEDINGS**

Defendant, BARNES & ASSOCIATES ("Barnes" or "Defendant"), by and through its

attorney, Dan Shaked, Esq., a member of Shaked & Posner, hereby objects to the Reorganized

Debtors' motion for leave to file amended complaint ("Motion to Amend") (Ct. Doc. No. 24),

and requests entry of any order denying the Motion to Amend.

I.       **Introduction**

This Court should deny the Reorganized Debtors' motion, which asks that this Court

exercise its discretion to permit Delphi Automotive Systems, LLC ("DAS") to file an amended

complaint against Barnes to recover $333,324.58 in alleged preferential transfers.  The Proposed

Amended Complaint (as defined below) is futile, and Barnes will be severely prejudiced by

DAS's undue delay if this case is permitted to proceed.  As further explained below, the

proposed amended complaint also fails to plead sufficiently a preference action against the Defendant.

## II.    <u>Background</u>

On October 8, 2005, Delphi and certain of its subsidiaries (the "Initial Filers") each filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.  On October 14, 2005, three additional U.S. subsidiaries of Delphi (together with the Initial Filers, the "Debtors") filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

By motion dated August 6, 2007 (the "First Extension Motion"), the Debtors sought entry of an order seeking, among other things, the establishment of procedures for certain adversary proceedings, including those commenced by the Debtors under Bankruptcy Code §§ 541, 544, 545, 547, 548, or 553.

On August 16, 2007, this Court entered an order granting the relief requested in the First Extension Motion.  Among other things, the order extended the Debtors' deadline to serve adversary proceeding summonses and complaints until March 31, 2008, and authorized the complaints to be filed under seal.

On October 1, 2007, the Debtors allegedly filed a complaint to initiate the above-captioned adversary proceeding (the "Original Complaint").  As permitted by the First Extension Motion, the Debtors filed the Original Complaint under seal giving no notice to Barnes of the action.

By motion dated February 28, 2008 (the "Second Extension Motion"), the Debtors sought to modify Paragraph 8 of the First Extension Motion, so as to extend for a second time the deadline under Fed. R. Civ. P. 4(m) by which the Debtors would be required to serve process by an additional two month to May 31, 2008.

By motion dated April 10. 2008 (the "Third Extension Motion"), the Debtors sought to further modify Paragraph 8 of the First Extension Motion, as modified by the Second Extension Motion, so as to extend for a third time the deadline under Fed. R. Civ. P. 4(m) by which the Debtors would have to serve process until 30 days after substantial consummation of the Plan or any modified plan.

By motion dated October 2, 2009 (the "Fourth Extension Motion"), the Debtors sought to further modify Paragraph 8 of the First Extension Motion, as modified by the Second and Third Extension Motions, so as to extend for a fourth time the deadline under Fed. R. Civ. P. 4(m) by which the Debtors were required to serve process until 180 days after substantial consummation of the Modified Plan.

Barnes did <u>not</u> receive any notice of the First, Second, Third, or Fourth Extension Motions.  Furthermore, Barnes was not served with the Complaint until on or about December 17, 2009, well over the limitations period provided by § 546(a) had expired.

On May 13, 2010, Barnes filed its Answer to the Complaint.  Thereafter, certain similarly situated defendants filed motions to dismiss their respective adversary proceedings (the "Motions to Dismiss").  A hearing was held on the Motions to Dismiss on July 22, 2010.  On September 7, 2010, in response to the arguments made in the Motions to Dismiss, this Court entered its Order Granting In Part First Wave Motions to Dismiss (the "Dismissal Order").

Pursuant to the Dismissal Order, the Court permitted the Debtors to file a motion to seek leave to file an amended complaint, and expressly ordered that the proposed amended complaint shall "set forth, *at a minimum*, the transfers, the transferee, any known subsequent transferee against whom relief is sought, the antecedent debt and which Reorganized Debtors is the Plaintiff."  *Id.*  (emphasis added).

3

On September 7, 2010, the Debtors filed their Motion for Leave to File Amended Complaints ("Motion to Amend"), which attached the proposed First Amended Complaint ("Proposed Amended Complaint").

## III.   ARGUMENT

### A.   Standard for Granting Leave to Amend

Leave to Amend under Rule 15 of the Federal Rules of Civil Procedure is not granted Automatically; instead "it is within the sound discretion of the court whether to grant leave to amend." John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp., 22 F.3d 458, 462 (2d Cir. 1994). "[C]onsiderations of undue delay, bad faith, and prejudice to the opposing party [are] all touchstones of a district court's discretionary authority to deny leave to amend." Barrows v. Forest Laboratories, Inc., 742 F.2d 54, 58 (2d Cir. 1984).

Likewise, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend." Ruffolo v. Oppenheimer & Co., 987 F.2d 129, 131 (2d Cir. 1993). For example, "it is proper to deny leave to replead where there is no merit in the proposed amendments or amend would be futile." Hunt v. Alliance N. Am. Gov't Income Trust, Inc., 159 F.3d 723, 728 (2d Cir. 1998). Courts thus are justified in denying leave to amend where, as here, proposed amendments cannot withstand a motion to dismiss or fail to comply with a court's order regarding required allegations. Ruffolo, 987 F.2d at 131 (affirming denial of leave to amend where proposed amendment failed to alleged necessary facts): McLaughlin v. Anderson, 962 F.2d 187, 195 (2d Cir. 1992) (affirming denial of leave to amend where proposed amendment failed to comply with court's order).

As explained below, the Debtors' motion to leave to amend "is unlikely to be productive" as to Barnes and should be denied.

### B.   DAS' Proposed Amended Complaint is Futile

    **1.**    ***DAS Did Not Properly Plead And Cannot Prove It Was Insolvent At The Time Of The Disputed Transfers***

The DAS Proposed Amended Complaint pleads only the bare legal conclusion that it was Insolvent at the time of the Transfers.  The sole allegation in the Proposed Amended Complaint with respect to insolvency is at Paragraph 23 and states only that "Plaintiff is presumed to have been, and was in fact, insolvent at the time the Transfers were made."  DAD's Proposed Amended Complaint offers no facts to support this conclusory statement or to make the allegation plausible.

DAS has *admitted* that it was solvent at the time of the Transfers.  DAS' own schedules, previously filed with this Court and thus subject to judicial notice, state that, *as of its petition date, DAS had over $2.6 billion in net equity*, with total assets of $8,133,427,809 and total liabilities of $5,526,447,015.  *See* Notice of Amendments of Schedules of Assets and Liability, dated April 18, 2006 (Case No. 05-44641 Docket 10).

DAS fails to plead properly in its Proposed Amended Complaint and, cannot prove, an essential element of its avoidance claim: that DAS – the only plaintiff named in the Proposed Amended Complaint – made transfers to Barnes at a time when DAS was insolvent.  *See* 11 U.S.C. § 547(b) (authorizing a trustee to avoid a transfer only if it was, among other things, "made while the debtor was insolvent").

    **2.**    ***DAS Fails To Identify Any Debt Owed to Barnes***

Paragraph 22 of the Proposed Amended Complaint – DAS's sole antecedent debt allegation – fails to present any factual allegation establishing the existence of a debt with regard to the purported $333,324.58 in transfers to Barnes.

The Proposed Amended Complaint fails to identify any contract or other agreement giving rise to a debt to Barnes.  The Proposed Amended Complaint fails to

identify any action by Barnes, such as the delivery of goods, that would give rise to the existence of a debt under a purchase order or other agreement (even if one had been alleged). The case law is clear that an antecedent debt does not arise until DAS actually "obtained" the goods or services it contracted, and there is no such allegation here.

DAS also fails to plead facts establishing that the alleged debts in question were actually "antecedent." Exhibit 1 to the Proposed Amended Complaint does not state when any alleged debt arose. There is no basis, other than DAS's conclusory assertions for DAS to claim the existence of any "antecedent" debt as required to state a claim under Section 547(b)(2) of the Bankruptcy Code.

### C. The Proposed Amended Complaint Would Substantially Prejudice Barnes

In recognition of the natural prejudice resulting from a party's delay in prosecuting an action, including by delaying service of the complaint, the Second Circuit recognizes that "prejudice to defendants resulting from unreasonable delay may be presumed . . . [and] is particularly appropriate where, as here, the plaintiff's delay was prolonged. Shannon v. GE, 186 F.3d 186 (2d Cir. 1999) (internal citations and quotations omitted).

Indeed, courts regularly recognize that "[f]ailure to use reasonable diligence in serving a summons is more fraught with possibilities of unfairness and abuse than failure to diligently prosecute an action after summons is served." Richardson v. United White Shipping Co., 38 F.R.D. 494, 496 (N.D. Cal. 1965) (dismissal where service perfected 28 months after the filing of the action). This is because such delay "affects all the defendant's preparations." Anderson, Anderson v. Air West, Inc., 542 F.2d 522, 525 (9th Cir. 1976) (dismissal under Rule 41(b) based on failure to serve for a year despite entry of order extending service period.); Farhang v. Indian Inst. Of Tech., 2010 U.S. Dist.

LEXIS 53975, at *14-15 (N.D. Cal. June 1, 2010) (delayed service prejudiced defendant

"by depriving him of the opportunity to engage in earlier preparation and participation in

this suit."

In addition, where, as here, a plaintiff files its complaint immediately prior to the

running of the state of limitations and then fails to serve, prejudice is magnified:

> Once the statute [of limitations] has fun, a potential defendant who has not
> been served is entitled to expect that he will no longer have to defend
> against the claim.  If service can be delayed indefinitely once the
> complaint is filed within the statutory period, these expectations are
> defeated and the statute of limitations no longer protects defendants from
> stale claims.

Anderson, 542 F.2d at 525.

### D.    No Further Amendment Should be Permitted

This Court made clear on the record during the hearing on the "First Wave

Motions" that it would not tolerate Delphi presenting a proposed amended complaint that

failed to meet its minimal pleading requirements.  In response to a request by a

preference defendant that Delphi should be held to a higher standard of pleading

specificity given Delphi's five years to prepare for this adversary proceeding, this Court

stated:

> [I]t's a motion for leave to amend the complaint on unusual circumstances.
> ***It's really their risk if I turn them down again, right?*** [I] think that the
> risk of being turned down on the basis [that] the complaint still isn't good
> enough [after amendment] is a serious enough – ***the consequences of that
> are serious enough*** so I assume that the plaintiff are going to be pretty
> careful.

7/22/10 T., at p.213.

Despite this Court's admonition and despite having an unprecedented amount of

time to acquire the data necessary to make out its *prima facie* case, the Proposed

Amended Complaint still fails to meet the minimum pleading requirements identified in

the Dismissal Order.  Delphi has abused this process for too long and cost Bares and this

Court far too much in both time and resources.  No further amendment is warranted, and

Delphi's avoidance action against Barnes should now be dismissed with prejudice.

### E.  Joinder and Adoption of Other Defendants' Motions And Briefs

Barnes joins and adopts the motions of ATS Automation Tooling Systems, Inc.

(Docket No. 20699), Doshi Prettl International (Docket No. 20701), the Timken

Company and the Timken Corporation (Docket No. 20719) and all other meritorious

arguments raised in motions and briefs filed by the other preference defendants in

opposition to Delphi's motion for leave to amend with regard to them.

## IV.    <u>CONCLUSION</u>

For all the reasons stated in this Objection, the Debtors' Motion should be

DENIED.

Dated:  New York, New York
            November 23, 2010

SHAKED & POSNER

By: <u>/s/ Dan Shaked, Esq.      </u>
DAN SHAKED (DS-3331)
*Attorney for Defendant*
255 W. 36th St., 8th Floor
New York, NY 10018
(212) 494-0035